IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: October 1, 2010 by 4:00 p.m.** |
| | ) | **Hearing Date: October 18, 2010 at 10:00 a.m.** |

## DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN W. R. GRACE & CO. AND THE HARTFORD PARTIES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order approving the Settlement Agreement (the "Agreement") by and between W. R. Grace & Co., on its own behalf and on behalf of the Grace Parties (collectively, "Grace"), and Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, New England Insurance Company, Hartford Fire Insurance Company, London & Edinburgh General Insurance

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Company of Canada, Excess Insurance Company Limited, and London & Edinburgh General Insurance Company Limited, in its own right and as successor to London & Edinburgh General Insurance Company Limited (collectively, "the Hartford Parties"), as further identified and defined in the Agreement.[2]  A copy of the Agreement is attached as <u>Exhibit A</u>.  In support of the Motion, the Debtors respectfully represent as follows:

<b><u>Jurisdiction</u></b>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this Motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

<b><u>Background</u></b>

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      The Hartford Parties issued certain policies of excess liability insurance (defined in the Agreement as the "Subject Policies") that provide, or are alleged to provide, insurance coverage to Grace.  With the exception of one policy issued by First State Insurance

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement or in the First Amended Joint Plan of Reorganization, as modified through March 19, 2010, as applicable.

2

Company, the policies issued by Hartford Accident and Indemnity Company, First State

Insurance Company ("First State"), Twin City Fire Insurance Company, and New England

Insurance Company attach at $20 million or higher.  The single exception is a First State policy

that attaches at $5 million, but that policy's aggregate limit for products/completed operations

has already been exhausted through payment pursuant to the 1998 Agreement described below.

Grace has incurred and may incur in the future certain liabilities, expenses and losses arising out

of asbestos-related claims, for which Grace seeks coverage under the Subject Policies.  Disputes

have arisen between Grace and the Hartford Parties regarding their respective rights and

obligations under the Subject Policies with respect to coverage for asbestos-related claims.

   5.  Prior to the Petition Date, Grace and certain of the Hartford Parties entered

into an Asbestos Insurance Reimbursement Agreement dated October 8, 1998 (the "1998

Agreement"), that provided a mechanism for reimbursement by certain of the Hartford Parties to

Grace for Defense Costs and Indemnity Payments with respect to Asbestos-Related Claims as

defined in the 1998 Agreement and for non-asbestos products liability claims under some of the

Subject Policies.  In the 1998 Agreement, Asbestos-Related Claims included non-products

bodily injury claims.  Under that agreement, reimbursement payments by Hartford were limited

to the amounts set forth in Attachment B, which were the then remaining products/completed

operations aggregate limits of the relevant Hartford policies.

   6.  In addition, London & Edinburgh Insurance Company Limited ("L&E")

and Excess Insurance Company ("Excess") subscribed to certain excess liability insurance

policies that provide, or are alleged to provide, insurance coverage to Grace.  Policies subscribed

to by L&E and Excess and issued to Grace are also among the Subject Policies.  The policies to

which Excess subscribed, and one of those to which L&E subscribed, are liability policies for the

3

period October 20, 1959 to October 20, 1962. These policies have previously been adjudicated to be inapplicable to Grace's asbestos-related liabilities. The two remaining policies to which L&E subscribed – attaching at $20 million – are also the subject of a prior agreement between Grace and London Market Insurers, dated August 10, 2009, which was approved by this Court on September 9, 2009 (the "London Agreement"). The London Agreement expressly contemplates that individual insurance company parties to that agreement may negotiate separate settlement agreements with Grace, like the Agreement at issue here.

7.      The Plan of Reorganization proposed by the Plan Proponents contemplates that Asbestos PI Claims will be enjoined and channeled to the Asbestos PI Trust (the "Trust"). *See* First Amended Joint Plan of Reorganization, as it has been and may be amended, supplemented or modified from time to time (the "Plan"), Art. 8.2.1. If established as proposed, the Trust will process and resolve Asbestos PI Claims pursuant to the Asbestos PI Trust Distribution Procedures.

8.      The Plan further contemplates that Asbestos Insurance Rights, including without limitation, rights to proceeds under Asbestos Insurance Reimbursement Agreements and coverage under the Subject Policies, are to be transferred to the Trust, to be used to fund payment of Asbestos PI Claims. *See* Plan, Art. 7.2.2(d)(ii) and (iv); Plan Ex. 6 – Asbestos Insurance Transfer Agreement. The 1998 Agreement is such an Asbestos Insurance Reimbursement Agreement.

9.      The Hartford Parties have filed objections to the Plan on various grounds. The proposed settlement would resolve those objections in full.

10.      The Agreement confers the following principal benefits upon the Debtors' estate, among others:

4

(a)     The Agreement provides for the payment by the Hartford Parties to the Trust of the sum of Twenty-Five Million U.S. Dollars ($25,000,000.00) (the "Settlement Amount") upon the Trigger Date as provided for in the Agreement.

(b)     The Agreement will result in the payment of the substantial sum set forth in subparagraph (a) above without need for litigation to enforce the transfer by Grace to the Trust of rights under the Subject Policies and the 1998 Agreement or the specific terms of the 1998 Agreement.

(c)     The Agreement represents a compromise of defenses that the Hartford Parties might have with respect to any individual Asbestos PI Claim.

(d)     Upon this Court's order approving the Agreement becoming a Final Order, the Hartford Parties will withdraw all objections to confirmation of the Plan.

11.     The Agreement includes a mutual release of all Asbestos-Related Claims and Product Claims under the Subject Policies and a release of Asbestos-Related Claims under Other Hartford Policies and is structured as a sale of property with respect to Released Claims, as defined in the Agreement, pursuant to Bankruptcy Code section 363.

12.     The Agreement calls for the Hartford Parties to be designated as Settled Asbestos Insurance Companies, entitled to the protection of Bankruptcy Code section 524(g) in accordance with the Joint Plan of Reorganization.  The Agreement also calls for the Hartford-Related Parties, as defined in the Agreement, to be designated as Settled Asbestos Insurance Companies, to the extent, but only to the extent, they provided insurance to any of the Debtors, consistent with the requirements of section 524(g).

13.     The Agreement further provides that if the Plan is confirmed, the Trust, at its own expense, will enforce the Asbestos PI Channeling Injunction with respect to Asbestos PI Claims subject to the Asbestos PI Channeling Injunction that are asserted against the Hartford Parties under the Subject Policies; provided, however, that the Trust's obligation in this respect ceases after it has spent a sum equivalent to the Settlement Amount.

## Relief Requested

14.     By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

## Basis for Relief

15.     This Court has statutory authority to authorize and approve the Debtors' entry into the Agreement pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

16.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination,

6

courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

17.    The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established.  This standard includes consideration of the following four factors:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The standards set forth above are plainly met in this case.

18.    The Agreement is in the best interests of the Debtors, their estates and their creditors because it resolves all existing and potential future disputes between the parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policies and the 1998 Agreement with respect to asbestos-related claims and all other claims, and provides substantial monies to fund the payment by the Trust of Asbestos PI Claims. If the Agreement were not approved, the Trust likely would face challenges by the Hartford Parties to the Trust's entitlement to coverage under the Subject Policies, and additional burden

and cost in seeking to obtain the benefits of, and enforcing Grace's rights under, the Subject

Policies.  Finally, the Agreement removes the Hartford Parties as objectors to Plan confirmation.

19.     Furthermore, the Hartford Parties are purchasing the Subject Policies and

the Other Hartford Policies with respect to the Released Claims in good faith and are good faith

buyers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled

to the full protections of that provision, and otherwise have proceeded in good faith in all

respects in connection with this proceeding.  The negotiation and execution of the Agreement,

including the transaction contemplated thereby, was at arms' length and in good faith.  The

Debtors and the Hartford Parties have not engaged in any conduct that would permit the

Agreement or the sale of the Subject Policies and the Other Hartford Policies or the transaction

contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.  The

consideration provided by the Hartford Parties pursuant to the Agreement is fair and adequate

and constitutes reasonably equivalent value and fair consideration.

20.     For all of the foregoing reasons, the Debtors submit that the Agreement is

fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and

thus the Debtors should be authorized to enter into the Agreement.

<u>**Notice**</u>

21.     Notice of this Motion has been given to (i) the Office of the United States

Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee

appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants'

Representative and counsel to the Asbestos PD Future Claimants' Representative; and (v) those

parties that requested papers under Bankruptcy Rule 2002.  Notice shall also be published in the

national editions of <u>USA Today</u> and the <u>Wall Street Journal</u>, as called for in the Agreement.  In

light of the nature of the relief requested, the Debtors submit that no further notice is required.

8

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: August 26, 2010

KIRKLAND & ELLIS LLP
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

and

Theodore Freedman
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

- and -

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and among W. R. Grace & Co. ("Grace"), on behalf of itself and the Grace-Related Parties (as defined below), and the Hartford Parties (as defined below).  Grace and the Hartford Parties shall be referred to collectively herein as the "Parties."

## RECITALS

WHEREAS, the Hartford Parties issued certain policies of insurance that provide, or are alleged to provide, liability insurance coverage to certain Grace-Related Parties; and

WHEREAS, Claims have been asserted against Grace alleging injury due to exposure to asbestos and/or asbestos-containing materials and Grace has incurred certain liabilities, expenses, and losses arising out of such claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to the Subject Policies, and disputes have arisen between Grace and the Hartford Parties regarding the Parties' respective rights and obligations under those policies; and

WHEREAS, on or about October 8, 1998, Grace entered into a settlement agreement with certain of the Hartford Parties resolving disputes with respect to certain obligations under certain of the Subject Policies; and

WHEREAS, on or about April 2, 2001, Grace, W. R. Grace & Co.-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Bankruptcy Case No. 01-1139 (JKF), *et seq.* (the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

1

WHEREAS, certain of the Hartford Parties have filed objections in the Bankruptcy Case to confirmation of the Joint Plan of Reorganization; and

WHEREAS, in consideration of monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, without prejudice to or waiver of their respective positions on policy wording or coverage pursuant to the Subject Policies or the Other Hartford Policies, and subject to a complete reservation of rights as to matters not specifically resolved in this Agreement, a full and final settlement that, among other things, releases and terminates all rights, obligations, and liabilities (if any) that the Parties may owe one another based on or arising under the Subject Policies or the Other Hartford Policies with respect to Released Claims, as more fully set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

## AGREEMENT

## I.    DEFINITIONS

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement (including the foregoing recitals) or in any attachments hereto. Capitalized terms in this Definitions Section shall have the meanings ascribed to them herein. Capitalized terms that are defined in the prefatory paragraph, the preceding recitals, and in the sections below have the meanings ascribed to them therein. Capitalized terms not otherwise defined in this Agreement have the meanings set forth in the Joint Plan of Reorganization. Each defined term stated in a singular form includes the plural form, each defined term stated in a plural form includes the singular form, and each defined term stated in the masculine, feminine, or neuter form includes each of the masculine, feminine, and neuter forms. The word "including" means "including but not limited to."

2

A.     1998 Agreement: "1998 Agreement" means the Asbestos Settlement and Release among W. R. Grace & Co., a Delaware corporation, W. R. Grace and Co.-Conn., a Connecticut corporation, W. R. Grace & Co., a New York corporation, which has changed its name to Fresenius National Medical Care Holdings, Inc., Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and New England Insurance Company, executed on or about October 8, 1998.

B.     Affiliate: An "Affiliate" of an Entity means (i) another Entity that is directly or indirectly (through one or more intermediaries) controlled by the first Entity, or (ii) another Entity that directly or indirectly (through one or more intermediaries) controls the first Entity.

C.     Approval Date: "Approval Date" means the date upon which the Approval Order becomes a Final Order.

D.     Approval Order: "Approval Order" means an order in the form attached hereto as Exhibit 2, or some other form agreed to in writing by the Parties, entered by the Court that (a) approves this Agreement, (b) authorizes the Parties to undertake the settlement and the sale of the Subject Policies and the Other Hartford Policies as set forth in this Agreement, and (c) approves the sale of the Subject Policies and the Other Hartford Policies as set forth in this Agreement.

E.     Asbestos Claims: "Asbestos Claims" has the meaning set forth in the Joint Plan of Reorganization.

F.     Asbestos Insurance Policy. "Asbestos Insurance Policy" has the meaning set forth in the Joint Plan of Reorganization.

G.     Asbestos Insurance Settlement Agreement: "Asbestos Insurance Settlement Agreement" has the meaning set forth in the Joint Plan of Reorganization.

3

H.      Asbestos PD Claims: "Asbestos PD Claims" has the meaning set forth in the

Joint Plan of Reorganization.

I.      Asbestos PI Channeling Injunction: "Asbestos PI Channeling Injunction" has the

meaning set forth in the Joint Plan of Reorganization.

J.      Asbestos PI Claims: "Asbestos PI Claims" has the meaning set forth in the Joint

Plan of Reorganization.

K.      Asbestos-Related Claims: "Asbestos-Related Claims" means any and all Claims

based on, arising out of, related to, resulting from, or attributable to, directly or indirectly, any of

the Debtors' (or their respective predecessors') manufacture, sale, distribution, installation,

handling, operation, or use of asbestos and/or asbestos-containing products, substances, or

materials, alone or in combination with any other dust, mineral, fiber, substance, or material.

The term "Asbestos-Related Claims" also includes Asbestos Claims, as that term is defined in

the Joint Plan of Reorganization.  Notwithstanding the foregoing, the term "Asbestos-Related

Claims" does not include Workers' Compensation Claims, as that term is defined in the Joint

Plan of Reorganization.

L.      Bankruptcy Court: "Bankruptcy Court" means the United States Bankruptcy

Court for the District of Delaware.

M.      Claim: "Claim" means:

     1.      "Claim" as that term is defined in the United States Bankruptcy Code, 11

        U.S.C. § 101(5);

     2.      "Demand" as that term is defined in the United States Bankruptcy Code,

        11 U.S.C. § 524(g)(5); and

4

3.    Any claim (whether past, present, or future, known or unknown, asserted

or unasserted, foreseen or unforeseen, fixed or contingent, direct or

indirect, matured or unmatured, liquidated or unliquidated, direct or

consequential, and whether in law, equity, admiralty, or otherwise),

assertion of right, complaint, cross-complaint, counterclaim, affirmative

defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit,

action, direct action, cause of action, administrative proceeding,

governmental claim or action, order, judgment, settlement, mediation,

arbitration, lien, and any other assertion of liability of any kind or subject

matter whatsoever.

N.    Confirmation Order:  "Confirmation Order" means an order of the Bankruptcy

Court confirming the Joint Plan of Reorganization that provides for, and designates the Hartford

Parties, and the Hartford-Related Parties to the extent, but only to the extent, the Hartford-

Related Parties provided insurance to any of the Debtors, as Settled Asbestos Insurance

Companies with respect to Asbestos PI Claims under the Subject Policies entitled to the

protections of, the Asbestos PI Channeling Injunction.

O.    Court:  "Court" means the Bankruptcy Court or the District Court, as appropriate.

P.    Debtors:  "Debtors" has the meaning set forth in the Joint Plan of Reorganization.

Q.    District Court:  "District Court" means the United States District Court for the

District of Delaware.

R.    Effective Date:  "Effective Date" has the meaning set forth in the Joint Plan of

Reorganization.

S.    Entity: "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, federal, state, local, or foreign government, or any political subdivision thereof, or other person or entity.

T.    Execution Date: "Execution Date" means the earliest date on which this Agreement has been signed by all of the Hartford Parties and Grace.

U.    Extra-Contractual Claim: "Extra-Contractual Claim" means any Claim seeking any type of relief, including compensatory, exemplary, or punitive damages, on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act, unfair trade practices act, or similar statute, regulation, or code, or any other similar type of alleged misconduct or omission. "Extra-Contractual Claim" does not include Claims for insurance coverage and/or benefits under any insurance policy.

V.    Final Order: "Final Order" has the meaning set forth in the Joint Plan of Reorganization.

W.    Grace PI Committees: "Grace PI Committees" means the Asbestos PI Committee and the Asbestos PI Future Claimants' Representative in the Bankruptcy Case.

X.    Grace-Related Parties: "Grace-Related Parties" means:

1.    Grace;

2.    W. R. Grace & Co.-Conn., a Connecticut corporation;

3.    W. R. Grace & Co., a New York corporation, which has changed its name to Fresenius National Medical Care Holdings, Inc.;

4.    All other Debtors in the Bankruptcy Case;

6

5.      All Subsidiaries, divisions, and Affiliates of the foregoing, including any

Entity in which any of the Debtors has an ownership interest of fifty

percent (50%) or more;

6.      Any Entity on whose behalf Grace or W. R. Grace & Co.-Conn. has the

right, power, or authority to release Claims under the Subject Policies or

the Other Hartford Policies; and

7.      The directors, officers, agents, and employees of the foregoing Entities,

solely in their respective capacities as such.

Y.      Hartford Parties:  "Hartford Parties" means Hartford Accident and Indemnity

Company, First State Insurance Company, Twin City Fire Insurance Company, New England

Insurance Company, Hartford Fire Insurance Company, London & Edinburgh General Insurance

Company of Canada, Excess Insurance Company Limited, and London & Edinburgh General

Insurance Company Limited, in its own right and as successor to London & Edinburgh Insurance

Company Limited.

Z.      Hartford-Related Parties:  "Hartford-Related Parties" means (i) The Hartford

Financial Services Group, Inc. and each of the Hartford Parties; (ii) each of the respective past,

present, and future parents, direct and indirect Subsidiaries, Affiliates, divisions, holding

companies, merged companies, acquired companies, predecessors-in-interest, successors-in-

interest, and assigns of the Hartford Parties and The Hartford Financial Services Group, Inc.,

solely in their capacities as such; and (iii) each of the past, present, and future directors, officers,

shareholders, agents, attorneys, principals, representatives, and employees of each of the Entities

described in Section I.Z(i) and (ii) above, solely in their capacities as such.

AA.    <u>Interests</u>: "Interests" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity.

BB.    <u>Joint Plan of Reorganization</u>: "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders as modified through March 19, 2010, including all exhibits thereto, as such plan may be further modified from time to time.

CC.    <u>London Agreement</u>: "London Agreement" means the Amended and Restated Settlement Agreement between W. R. Grace & Co. and Certain London Market Companies executed as of August 10, 2009, solely as it relates to London & Edinburgh General Insurance Company Limited, in its own right, and as successor to London & Edinburgh Insurance Company Limited.

DD.    <u>Other Hartford Policies</u>. "Other Hartford Policies" means all policies of insurance (whether primary, umbrella or excess), known or unknown, issued or allegedly issued as of the Execution Date by a Hartford-Related Party to a Grace-Related Party, other than the Subject Policies, that actually or potentially provide coverage for any Asbestos-Related Claim, but only to the extent of any Debtors' Interests in such policies; *provided, however,* that Other Hartford Policies do not include any workers' compensation policies, including the employers' liability portions thereof. To the best of their knowledge as of the Execution Date, neither the Hartford Parties nor Grace is aware of any insurance policies that fall within the definition of Other Hartford Policies.

EE.    <u>Prior CIP Agreements</u>: "Prior CIP Agreements" means the 1998 Agreement and the London Agreement.

FF.    <u>Products Claims</u>: "Products Claims" means any and all Claims for bodily injury or property damage within the products/completed operations hazard definitions (or their substantial equivalents) in the Subject Policies.

GG.    <u>Released Claims</u>: "Released Claims" shall have the meaning set forth in Section III.A of this Agreement.

HH.    <u>Settlement Amount</u>: "Settlement Amount" means the sum of Twenty-Five Million United States Dollars ($25,000,000.00).

II.    <u>Settled Asbestos Insurance Company</u>: "Settled Asbestos Insurance Company" has the meaning set forth in the Joint Plan of Reorganization.

JJ.    <u>Subject Policies</u>: "Subject Policies" means (i) the policies of insurance listed on Exhibit 1 hereto; and (ii) any other policy (whether primary, umbrella, or excess), known or unknown, issued or allegedly issued by a Hartford-Related Party that qualifies as an Asbestos Insurance Policy.

KK.    <u>Subsidiary</u>: A "Subsidiary" of an Entity means a corporation as to which the Entity owns shares of common stock and exercises control through the voting power of such stock.

LL.    <u>Trust</u>: The term "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace and the Grace PI Committees.

9

MM.   <u>Workers' Compensation Claims</u>.  "Workers' Compensation Claims" has the meaning set forth in the Joint Plan of Reorganization.

## II.   PAYMENT OF SETTLEMENT AMOUNT

A.   Within twenty (20) days after (1) the Approval Date, or (2) the date the Confirmation Order becomes a Final Order, whichever is later, the Hartford Parties shall pay to the Trust the Settlement Amount in immediately available funds.

B.   The Hartford Parties shall have the exclusive right to waive the occurrence of either or both of the payment-triggering conditions set forth in Section II.A above, in which event the Hartford Parties shall irrevocably make such payment within thirty (30) days after providing notice of such waiver in writing to the other Parties.

C.   If the Hartford Parties elect to make payment as set forth in Section II.B above, and the Effective Date has occurred prior to the time of payment, then the Hartford Parties shall pay the Settlement Amount in immediately available funds to the Trust.  If the Hartford Parties elect to make payment as set forth in Section II.B above, and the Effective Date has not occurred prior to the time of payment, then the Hartford Parties shall pay the Settlement Amount in immediately available funds to Grace, which shall hold the Settlement Amount in escrow for the benefit of the Trust and, immediately upon the Effective Date, will pay the Settlement Amount, plus interest accrued thereon, to the Trust.  In the event that the Hartford Parties make payment to Grace in accordance with this Section II.C and the Bankruptcy Case is thereafter dismissed or converted into a Chapter 7 case, such Settlement Amount shall be used by Grace only in connection with the defense against or payment of Asbestos-Related Claims.

D.   Any payment of the Settlement Amount to the Trust shall be made in accordance with written instructions to be provided to the Hartford Parties by the Trust.  Any payment of the

Settlement Amount to Grace shall be made in accordance with written instructions to be provided to the Hartford Parties by Grace.

E.        The Settlement Amount represents the full and fair purchase price of the Subject Policies with respect to the Released Claims.  Upon the Hartford Parties' payment of the Settlement Amount, the Debtors shall be deemed to have sold to the Hartford Parties, and shall deem the Hartford Parties to own, the Subject Policies with respect to the Released Claims free and clear of all Interests of any Entity with respect to Released Claims, to the extent permitted by Bankruptcy Code Section 363(f).  Upon the Hartford Parties' payment of the Settlement Amount, the Hartford Parties shall have no further obligation under the Subject Policies for Released Claims.

## III.    RELEASES

A.        <u>Release of the Hartford Parties and the Hartford-Related Parties by the Grace-Related Parties and the Trust</u>.  Upon the Hartford Parties' payment of the Settlement Amount in accordance with Section II of this Agreement, Grace, on behalf of itself, the Debtors, and, to the extent it has the right, power, or authority to bind them, the Grace-Related Parties, and the Trust irrevocably and forever remise, release, covenant not to sue, and discharge each of the Hartford Parties and the Hartford-Related Parties from and with respect to:

1.        Asbestos-Related Claims;

2.        All Claims for insurance coverage and/or other obligations based on or arising out of the Subject Policies with respect to Asbestos-Related Claims and Products Claims;

11

3.      All Claims for insurance coverage for Asbestos-Related Claims and/or

other obligations for Asbestos-Related Claims that are based on or arise

out of the Other Hartford Policies;

4.      All obligations based on or arising out of the Prior CIP Agreements; and

5.      All Extra-Contractual Claims based on or arising out of the Claims

released pursuant to Sections III.A.1, III.A.2, and III.A.3 above.

The Claims released pursuant to Sections III.A.1, III.A.2, III.A.3, III.A.4, and III.A.5 are referred

to in this Agreement as the "Released Claims."

B.      Release of the Grace-Related Parties and the Trust by the Hartford Parties and

Hartford-Related Parties.  Upon the Hartford Parties' payment of the Settlement Amount in

accordance with Section II of this Agreement, the Hartford Parties and, to the extent the Hartford

Parties have the right, power, or authority to bind them, the Hartford-Related Parties remise,

release, and forever discharge the Grace-Related Parties and the Trust from and with respect to:

1.      Asbestos-Related Claims;

2.      All obligations based on or arising out of the Subject Policies, including

obligations to pay any premiums, deductibles, self-insured retentions,

retrospective premiums, or other similar charges, with respect to Asbestos-

Related Claims and Products Claims;

3.      All obligations based on or arising out of the Other Hartford Policies,

including obligations to pay any premiums, deductibles, self-insured

retentions, retrospective premiums, or other similar charges, with respect

to Asbestos-Related Claims;

4.      All obligations based on or arising out of the Prior CIP Agreements; and

5.      All Extra-Contractual Claims based on or arising out of the Claims

released pursuant to Sections III.B.1, III.B.2, and III.B.3 above.

C.      The Parties understand and acknowledge that (1) Claims that have been or may be asserted against Grace and/or the Trust may increase or decrease in amount or in severity over time and may include progressive, cumulative, unknown, and/or unforeseen elements, and (2) there may be hidden, unknown, and unknowable damages, defense expenses, or other costs related to such Claims. Each of the Parties acknowledges and agrees that it nevertheless willingly enters into this Agreement, including the releases set forth in this Section III.

D.      THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT. THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

E.      Nothing in this Section III is intended to release, waive, or otherwise affect the Parties' rights and obligations under this Agreement.

13

IV.    **RELEASE OF SUBROGATION AND CONTRIBUTION CLAIMS AND JUDGMENT REDUCTION CLAUSE**

A.    <u>Settlement Amount</u>.  None of the Hartford Parties shall seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification, or otherwise, from anyone other than the Hartford Parties' reinsurers or retrocessionaires in their capacity as such.  Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification, or similar Claim against any of the Hartford Parties relating to the subject matter of this Agreement, then that Hartford Party shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization.  To the extent that any Hartford Party recovers any amount from such third party, the net proceeds of such recovery (after any payment made by the Hartford Party to such third party on its Claim and after the Hartford Party has been reimbursed from such proceeds for its actually billed and paid fees, costs, and expenses incurred in prosecuting or defending such Claim) shall be paid by the Hartford Party promptly to the Trust.  The Parties and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

B.    <u>Payments Received From Other Insurers</u>.  Following payment by the Hartford Parties of the Settlement Amount as provided in Section II of this Agreement, in the event that any insurer (or representative thereof vested with the rights and obligations of such insurer) of one or more of the Debtors obtains a final judicial determination or final binding arbitration award that it is entitled to obtain a sum certain from a Hartford-Related Party as a result of a Claim for contribution, subrogation, indemnification, or other similar Claim against a Hartford-Related Party for the Hartford-Related Party's alleged share or equitable share of the defense and/or indemnity of any Debtor for any Released Claims based on or in connection with a

14

Subject Policy, such Debtor shall voluntarily reduce its final judgment or award against such

other insurer(s) to the extent necessary to eliminate such contribution, subrogation, or

indemnification Claims against the Hartford-Related Party. To ensure that such a reduction is

accomplished, the Hartford-Related Party shall be entitled to assert this Section IV.B as a

defense to any action against it for any such portion of the judgment or Claim and shall be

entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate

the reduction to protect the Hartford Party from any liability for the judgment or Claim.

## V.    BANKRUPTCY OBLIGATIONS

A.    <u>Approval Motion</u>. Promptly following the Execution Date, Grace shall prepare

and file a motion seeking entry of the Approval Order with the Court, which motion shall be in

form and substance satisfactory to the Parties and the Grace PI Committees. To ensure the

broadest notice possible, Grace shall publish notice of the motion and the hearing in the national

editions of <u>USA Today</u> and the <u>Wall Street Journal</u> at the Hartford Parties' expense. The

publication notice shall be in the form attached as Exhibit 3 or in a form and substance otherwise

acceptable to the Hartford Parties and Grace. Grace shall use its reasonable best efforts promptly

to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a

Final Order. The Hartford Parties, at their own expense, shall cooperate with Grace in obtaining

the Approval Order.

B.    <u>Designation of the Hartford Parties as Settled Asbestos Insurance Companies</u>.

Following the Approval Date, Grace shall designate this Agreement as an Asbestos Insurance

Settlement Agreement, and the Hartford Parties, and the Hartford-Related Parties to the extent,

but only to the extent, the Hartford-Related Parties provided insurance to any of the Debtors, as

Settled Asbestos Insurance Companies, with respect to the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

C.   Sale Pursuant to Section 363(f).  Upon payment by the Hartford Parties of the Settlement Amount as provided in Section II of this Agreement, and without need for further action, the Debtors shall be deemed to have sold, conveyed, assigned, transferred, and delivered to the Hartford Parties, and the Hartford Parties shall be deemed to have purchased from the Debtors, all Interests of the Debtors in and under the Subject Policies and the Other Hartford Policies with respect to the Released Claims, free and clear of all Interests of any kind or nature whatsoever with respect to the Released Claims, to the fullest extent permitted under Section 363(f) of the Bankruptcy Code.  The Settlement Amount represents the full purchase price of the Subject Policies with respect to the Released Claims, and reflects amounts that Grace and/or the Trust are or may be legally obligated to pay on account of liability for Released Claims.  The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policies and the Other Hartford Policies with respect to the Released Claims.

D.   Trust as Party.  Upon the Effective Date, the Trust automatically and without need for further action shall become a Party to this Agreement.

E.   Suspension of Bankruptcy-Related Activities.  Effective upon the Execution Date, the Hartford Parties:  (1) shall suspend prosecution of all of their objections to the Joint Plan of Reorganization or plan-related documents, to confirmation of the Joint Plan of Reorganization, and to the Debtors' or Grace PI Committees' motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (2) shall take no further actions of any nature (including filing new objections to the Joint Plan of Reorganization, initiating or taking discovery, or filing or joining in any appeals) that may hinder, delay, or

16

oppose actions of Debtors or the Grace PI Committees in the Bankruptcy Case; and (3) shall not

oppose the entry of a Confirmation Order; *provided, however,* that in the event that the

Bankruptcy Court does not issue an Approval Order or the Approval Order does not become a

Final Order, the Hartford Parties may renew prosecution of their objections to the Joint Plan of

Reorganization consistent with the Court's scheduling orders.

      F.     <u>Withdrawal of Objections</u>.  Upon the Approval Date, the Hartford Parties shall

withdraw all of their objections to the Joint Plan of Reorganization or plan-related documents, to

confirmation of the Joint Plan of Reorganization, and to the Debtors' or Grace PI Committees'

motions or applications pending in the Bankruptcy Case (including any appeals of decisions in

the Bankruptcy Case).

## VI.    TERMINATION

      A.     If for any reason (i) the Approval Order is not entered by the Bankruptcy Court on

or before December 31, 2010, or (ii) a Final Order is entered either dismissing the Bankruptcy

Case or converting it to a case under Chapter 7 of the Bankruptcy Code, then the Hartford Parties

shall have the right to declare this Agreement null and void provided that they have not already

paid, or provided notice of their intention to pay, the Settlement Amount pursuant to the second

sentence of Section II.  In the event that the Hartford Parties have paid the Settlement Amount

and a Final Order is thereafter entered either dismissing the Bankruptcy Case or converting it to a

case under Chapter 7 of the Bankruptcy Code, then this Agreement shall remain in place, but the

Parties shall be excused from performing any obligations provided herein which cannot be

performed absent the pendency of a case under Chapter 11 of the Bankruptcy Code.

      B.     If this Agreement becomes null and void pursuant to this Section VI, then:  (i) the

Agreement, except for Sections I, IX and XI-XIV, which shall remain in full force and effect,

shall be vitiated and shall be a nullity; (ii) the Parties shall have all of the rights, defenses, and

obligations under or with respect to any and all Subject Policies and the Other Hartford Policies

that they would have had absent this Agreement; (iii) none of the Hartford-Related Parties and of

the Grace-Related Parties shall be bound by the terms of the Approval Order; (iv) the Hartford

Parties shall not be entitled to claim the benefit of any injunctive provisions in the Approval

Order, the Confirmation Order, or the Joint Plan of Reorganization; (v) any otherwise applicable

statutes of limitation or repose, or other time-related limitation, shall be deemed to have been

tolled for the period from the Execution Date through the date the Agreement becomes null and

void; and (vi) the Prior CIP Agreements will remain in force and effect as if this Agreement had

never existed.

## VII.   DEFENSE OF ASBESTOS CHANNELING INJUNCTIONS

A.   Following the payment of the Settlement Amount by the Hartford Parties in

accordance with Section II of this Agreement, if any Entity asserts against any of the Hartford

Parties a Claim based on or arising out of the Subject Policies and based on or arising out of an

Asbestos-Related Claim that is an Asbestos PI Claim subject to the Asbestos PI Channeling

Injunction (a "Hartford Channeling Injunction Claim"), the Trust shall expend reasonable best

efforts, at its own expense, to establish that such Hartford Channeling Injunction Claim is

enjoined as to the Hartford Parties and channeled to the Trust pursuant to the Asbestos PI

Channeling Injunction and Section 524(g) of the Bankruptcy Code.  In no event, however, shall

the Trust be required to expend an amount greater than the Settlement Amount in carrying out its

obligation under this Section VII.A.  When the Trust has expended an amount equal to the

Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to

Hartford Channeling Injunction Claims, the Trust shall have no further obligation under this

Section VII.A. For the avoidance of doubt, this Section VII.A shall not obligate the Trust to retain counsel to represent the Hartford Parties or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting, or expert representation as the Hartford Parties may choose to engage in connection with any Claim against the Hartford Parties.

   B.    Within thirty (30) days of the Hartford Parties' receipt of any Claim, demand, notice, summons, or other process that the Hartford Parties reasonably believe is a Hartford Channeling Injunction Claim, the Hartford Parties shall forward such Claim, demand, notice, summons, or other process to the Trust. If the Trust determines that a Claim presented by the Hartford Parties is not a Hartford Channeling Injunction Claim, the Trust, subject to its obligation to reimburse the Hartford Parties in full for reasonable costs they incur in defending against a Claim later determined to be a Hartford Channeling Injunction Claim, shall not be obligated to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim. In the event of a dispute as to whether a Claim triggers the Trust's obligations under Section VII.A, the Trust and the Hartford Parties shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by the Hartford Parties, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

19

## VIII.   RIGHT OF REVIEW

After the Confirmation Order becomes a Final Order, the Trust shall cooperate, at the sole expense of the Hartford Parties, in the Hartford Parties' reasonable requests for information as follows:  the Hartford Parties shall have the right, at their own expense, upon reasonable request and notice, and at a time and place convenient to the Trust, to review records relating to payments by the Trust of Asbestos PI Claims solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount or complying with applicable regulations or requests for information made by regulators, auditors, tax consultants, or reinsurers.  Notwithstanding the foregoing, the Trust shall not be obligated to provide the Social Security Identification Number of any Asbestos PI Claimant beyond the last four digits.  Neither the Trust nor any trustee shall have any obligation to create any new documents or to collect any information in connection with any such review beyond those ordinarily created or maintained by the Trust, and the Hartford Parties shall not be permitted to challenge the allowance or payment of Asbestos PI Claims by the Trust, or any administrative payments or costs of the Trust.  This Section VIII and any results of such a review contemplated hereunder shall not affect the Hartford Parties' payment obligations under this Agreement.  The Hartford Parties shall not disclose (i) any information or documents obtained during the course of a review conducted pursuant to this Section VIII, or (ii) notes, summaries, reports, or other results of such review (collectively, the "Material") to any other Entity and shall keep any and all such Material confidential, except that the Hartford Parties may provide Material to any of their auditors, tax consultants, regulators, or reinsurers for the purpose of obtaining reinsurance for any portion of the Settlement Amount or complying with applicable regulations, provided that, prior to such disclosure, the Hartford Parties shall advise such Entities in writing of the confidentiality provisions of this Section VIII

and shall use their best efforts to secure such Entities' agreement to maintain the confidentiality of the Material and not to disclose such Material to any other Entity (which agreement may be indicated by transmission of an electronic mail message). In the event that disclosure of any Material in the Hartford Parties' possession is sought pursuant to subpoena or other legal process, the Hartford Parties shall as soon as practicable notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective order regarding the Material. Upon resolution of all reinsurance issues or upon the expiration of time periods set by regulation for maintaining such documents, whichever is later, the Hartford Parties shall, at the Trust's option, return or destroy all Material.

## IX.    REPRESENTATIONS AND WARRANTIES BY THE PARTIES

Grace (subject to approval by the Court) and the Hartford Parties each represents to the other:

A.    It has the requisite right, power, or authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement;

B.    The execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly its authorized representatives, and by all other necessary actions;

C.    It has expressly authorized its undersigned representative to execute this Agreement on its behalf as its duly authorized agent; and

D.    This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's-length negotiations, and for value and valuable consideration.

## X.   ENTIRE AGREEMENT

This Agreement, along with its exhibits, constitutes a single integrated written contract that expresses the entire agreement and understanding among the Parties. This Agreement supersedes all prior communications and understandings among the Parties and their representatives regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises, or inducements made by any Party or any agents of any Party that are not contained in this Agreement shall not be valid or binding. This Agreement supersedes the Prior CIP Agreements, which shall be of no further force or effect, unless this Agreement is terminated pursuant to Section VI, in which case the Prior CIP Agreements shall remain in full force and effect as if this Agreement had never existed.

## XI.   NON-PREJUDICE AND CONSTRUCTION OF AGREEMENT

A.     This Agreement is intended to be and is a commercial accommodation among the Parties and shall not be construed as an admission of coverage under the Subject Policies, the Other Hartford Policies, or any other policies issued by the Hartford Parties or Hartford-Related Parties. Neither this Agreement nor any provision hereof shall be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policies or the Other Hartford Policies, although the Parties shall nonetheless abide by the terms of this compromise Agreement.

B.     This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, nothing contained in

22

this Agreement or in any document exchanged by the Parties in the negotiation or furtherance of this Agreement shall be construed as an admission or concession by the Hartford Parties, Grace, or the Trust that any particular theory with respect to coverage or absence of coverage is valid. This Agreement is without prejudice to the positions taken by the Hartford Parties with regard to other insureds and without prejudice to positions taken by Grace, the Asbestos PI Committees, or the Trust with regard to other insurers. The Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement, except as expressly provided herein.

C.      Neither the terms of this Agreement nor the facts of its negotiation, its execution, or any act in performance of this Agreement shall be invoked by the Parties, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by the Parties of any particular interpretation of any insurance policy with respect to any Claim.

D.      The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, and shall not be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage or absence of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.      This Agreement is the jointly drafted product of arm's-length negotiations between the Parties with the benefit of advice from counsel and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principles of <u>contra proferentem</u> or other principles that would result in the interpretation of any ambiguities against insurers. No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall

be construed against any Party on the basis of that Party's identity as an insurance company or as the drafter of any part of this Agreement.

F.      The Hartford Parties' entry into this Agreement does not constitute an endorsement of any plan of reorganization for the Debtors or any related Trust Distribution Procedures or a statement of position of any kind as to whether any such plan of reorganization as proposed or confirmed is lawful.

## XII.    HEADINGS

The Section headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

## XIII.   CONFIDENTIALITY

A.      The Parties agree that all information relating to the negotiation of this Agreement (collectively referred to as "Information") shall be confidential and is not to be disclosed except as follows:

1.  The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.  The Agreement and additional Information may be disclosed as necessary to obtain the Approval Order;

3.  The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.  The Information may be disclosed by the Hartford Parties to their reinsurers and retrocessionaires solely in their capacities as such, directly or through intermediaries;

24

5.      Grace or the Trust may disclose the Agreement to other insurers and their representatives;

6.      The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.      A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party, and to counsel for such underwriters; and

8.      The Information may be disclosed in any action by any Party to enforce the terms of, or its rights under, this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

B.      A Party may describe and/or make reference to Information to the extent that such disclosure is required to comply with any statute, rule, or other requirement of any government or governmental agency or other authority.

C.      In the event a court, litigant, or governmental body requests or requires disclosure of any Information protected by this Section XIII, the Party from whom disclosure is sought shall give written notice to the other Party as soon as practicable in order to allow each Party to take such protective steps as may be appropriate.

D.      Information protected by this Section shall be deemed to fall within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## XIV.  NOTICES

A.      All notices, requests, demands, and other communications required or permitted to be given under this Agreement shall be deemed to have been duly given if in writing and delivered personally, or by registered or certified mail, return receipt requested, or by Federal Express with signature required, or by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD  21044
Attn: General Counsel
Telephone:  (410) 531-4000
Facsimile:  (410) 531-4545

With a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
Attn:  Theodore L. Freedman
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

If to Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, New England Insurance Company, Hartford Fire Insurance Company, and London & Edinburgh General Insurance Company of Canada:

Complex Claim Group
The Hartford
One Hartford Plaza
690 Asylum Avenue
Hartford, CT  06115
Attn:  Matthew J. Scott
Telephone:  (860) 547-8727
Facsimile:  (860) 547-8700

26

With a copy to:

Shipman & Goodwin LLP
1133 Connecticut Avenue, NW
Washington, DC  20036
Attn:  James P. Ruggeri
Telephone:  (202) 469-7752
Facsimile:  (202) 469-7751

If to Excess Insurance Company Limited and
London & Edinburgh General Insurance
Company Limited, in its own right and as
successor to London & Edinburgh Insurance
Company Limited:

Downlands Liability Management Limited
DLM House
Downlands Business Park
Lyons Way
Worthing
West Sussex
BN149RX
England
Attn:  Legal Counsel and Company Secretary
Telephone:  +44 (0) (01903) 836800
Facsimile:  +44 (0) (01903) 836810

If to the Asbestos PI Committee:

Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC  20005
Attn:  Peter Lockwood
Telephone:  (202) 862-5000
Facsimile:  (202) 862-3301

and

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY  10152
Attn:  Elihu Inselbuch
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755

With a copy to:

Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, NY  10020
Attn:  Robert M. Horkovich
Telephone:  (212) 278-1322
Facsimile:  (212) 278-1733

27

If to the Asbestos PI Future Claimants'  David T. Austern
Representative:  3110 Fairview Park Drive
 Suite 200
 Falls Church, VA 22042-0683
 Telephone: (703) 205-0835
 Facsimile: (703) 205-6249

With a copy to:  Orrick, Herrington & Sutcliffe LLP
 1152 15th Street, N.W.
 Washington, D.C. 20005-1706
 Attn: Roger Frankel
 Telephone: (202) 339-8400
 Facsimile: (202) 339-8500

B.   Notice shall be provided to the Trust as the Trust may designate in writing.

C.   Any Party may change the address to which such communications are to be directed to it by giving notice to the others, in the manner provided in this Section.

## XV.   MODIFICATION

This Agreement may be amended, modified, superseded, or canceled, and any of the terms hereof may be waived, only by a written instrument that specifically states that it amends, modifies, supersedes, or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation, or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant, or warranty.

28

## XVI.  EXECUTION

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  This Agreement shall become effective as to each Party from and after the Execution Date.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their authorized officers or representatives.

Date: _8/10/2010_____

W. R. GRACE & CO.

Signed: _Richard C. Finke_____

Name: _RICHARD C. FINKE_____

Title: _ASSISTANT GENERAL COUNSEL_

Date: _____

HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, NEW ENGLAND INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY, and LONDON & EDINBURGH GENERAL INSURANCE COMPANY OF CANADA

Signed: _____

Name: _____

Title: _____

Date: _____

EXCESS INSURANCE COMPANY LIMITED and LONDON & EDINBURGH GENERAL INSURANCE COMPANY LIMITED, IN ITS OWN RIGHT AND AS SUCCESSOR TO LONDON & EDINBURGH INSURANCE COMPANY LIMITED

Signed: _____

Name: _____

Title: _____

30

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their authorized officers or representatives.

Date: _____     W. R. GRACE & CO.

                                             Signed: _____

                                             Name: _____

                                             Title: _____

Date: _____8/11/10_____     HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, NEW ENGLAND INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY, and LONDON & EDINBURGH GENERAL INSURANCE COMPANY OF CANADA

                                             Signed: _Frederick W. Zurick_

                                             Name: _Frederick P. Zurick_

                                             Title: _Assistant Vice President, CCG_

Date: _____     EXCESS INSURANCE COMPANY LIMITED and LONDON & EDINBURGH GENERAL INSURANCE COMPANY LIMITED, IN ITS OWN RIGHT AND AS SUCCESSOR TO LONDON & EDINBURGH INSURANCE COMPANY LIMITED

                                             Signed: _____

                                             Name: _____

                                             Title: _____

30

**IN WITNESS WHEREOF,** the Parties have executed this Agreement by their authorized officers or representatives.

Date: _____      W. R. GRACE & CO.

                                          Signed: _____

                                          Name: _____

                                          Title: _____


Date: _____      HARTFORD ACCIDENT AND INDEMNITY
                                          COMPANY, FIRST STATE INSURANCE
                                          COMPANY, TWIN CITY FIRE INSURANCE
                                          COMPANY, NEW ENGLAND INSURANCE
                                          COMPANY, HARTFORD FIRE INSURANCE
                                          COMPANY, and LONDON & EDINBURGH
                                          GENERAL INSURANCE COMPANY OF
                                          CANADA

                                          Signed: _____

                                          Name: _____

                                          Title: _____


Date: _August 11, 2010_                   EXCESS INSURANCE COMPANY LIMITED
                                          and LONDON & EDINBURGH GENERAL
                                          INSURANCE COMPANY LIMITED, IN ITS
                                          OWN RIGHT AND AS SUCCESSOR TO
                                          LONDON & EDINBURGH INSURANCE
                                          COMPANY LIMITED

                                          Signed: _____

                                          Name: _Brent L. Hoffman_

                                          Title: _Director - Excess/Asst MD - Downlands_

30

## EXHIBIT 1

| Insurer | Policy No. | Policy Period |
|---|---|---|
| Hartford | 10XS100043 | 6/30/76 – 6/30/77 |
| Hartford | 10XS100044 | 6/30/76 – 6/30/77 |
| Hartford | 10XS100176 | 6/30/77 – 6/30/78 |
| Hartford | 10XS100181 | 6/30/77 – 6/30/78 |
| Hartford | 10XS100666 | 6/30/78 – 6/30/79 |
| Hartford | 10XS100665 | 6/30/78 – 6/30/79 |
| Hartford | 10XS100842 | 6/30/79 – 6/30/80 |
| Hartford | 10XS100841 | 6/30/79 – 6/30/80 |
| Hartford | 10XS100843 | 6/30/79 – 6/30/80 |
| Hartford | 10XS100990 | 6/30/80 – 6/30/81 |
| Hartford | 10XS100988 | 6/30/80 – 6/30/81 |
| Hartford | 10XS100989 | 6/30/80 – 6/30/81 |
| Hartford | 10XS102369 | 6/30/81 – 6/30/84 |
| Hartford | 10XS102370 | 6/30/81 – 6/30/84 |
| Hartford | 10XS102371 | 6/30/81 – 6/30/82 |
| Hartford | 10XS103326 | 6/30/84 – 6/30/85 |
| First State | 922099 | 6/30/75 – 6/30/76 |
| First State | 923099 | 6/30/76 – 6/30/77 |
| First State | 923100 | 6/30/76 – 6/30/77 |
| First State | EU001538 | 6/30/84 – 6/30/85 |
| Twin City | 97CXS10005 | 6/30/83 – 6/30/84 |
| New England | NE000081 | 6/30/84 – 6/30/85 |

1

| | | |
|---|---|---|
| New England | NE000082 | 6/30/84 – 6/30/85 |
| Excess Insurance | 59/2209/2 | 10/20/59 – 10/20/62 |
| Excess Insurance | 59/2209/3 | 10/20/59 – 10/20/62 |
| Excess Insurance | 59/2209/4 | 10/20/59 – 10/20/62 |
| Excess Insurance | 59/2209/5 | 10/20/59 – 10/20/62 |
| London & Edinburgh, Hartford Fire, and London & Edinburgh of Canada | 59/2209/2 | 10/20/59 – 10/20/62 |
| London & Edinburgh | 74DD662 | 6/30/74 - 6/30/77 |
| London & Edinburgh | 74DD663 | 7/17/74 – 6/30/77 |

**EXHIBIT 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:** |
| | ) | **Objection Deadline:** |
| | ) | Agenda No. _____ |

**ORDER PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF
THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
THE SETTLEMENT AGREEMENT BETWEEN
W. R. GRACE & CO. AND THE HARTFORD PARTIES**

This matter having come before the Court on the Debtors' Motion (the "Motion") for an

order approving the Settlement Agreement ("Agreement") by and between W. R. Grace & Co.,

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

on its own behalf and on behalf of the Grace-Related Parties[2] (collectively, "Grace"), and

Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire

Insurance Company, New England Insurance Company, Hartford Fire Insurance Company,

London & Edinburgh General Insurance Company of Canada, Excess Insurance Company

Limited, and London & Edinburgh General Insurance Company Limited, in its own right and as

successor to London & Edinburgh Insurance Company Limited (collectively, "the Hartford

Parties"), and the Court having reviewed the Motion and any objection thereto, the Court hereby

finds that:

    a.     the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

    b.     this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

    c.     notice of the Motion was adequate under the circumstances;

    d.     the compromise and settlement memorialized in the Agreement are the product of arm's-length, good faith negotiations by and between W. R. Grace & Co., on its own behalf and on behalf of the Grace-Related Parties (as defined in the Agreement), and the Hartford Parties, and are not the product of fraud or collusion; and the settlement meets the standard established by the United States Court of Appeals for the Third Circuit for approval of settlements, which requires consideration of the following factors: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002);

    e.     the consideration to be paid by the Hartford Parties under the Agreement is fair and reasonable and constitutes reasonably equivalent value;

    f.     the transaction set forth in the Agreement pursuant to which the Hartford Parties are to acquire all rights, title, and interests of the Debtors in and

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Agreement or the First Amended Joint Plan of Reorganization, as modified through March 19, 2010, as applicable.

under the Subject Policies and Other Hartford Policies with respect to the Released Claims (as defined in the Agreement) constitutes a sale of property pursuant to Bankruptcy Code Section 363(b) and subject to the terms of Bankruptcy Code Sections 363(f) and 363(m), and the Hartford Parties are good faith buyers within the meaning of Section 363(m);

g.   the transaction contemplated by the Agreement is at arm's length and in good faith, and the consideration to be paid by the Hartford Parties is fair and adequate and constitutes reasonably equivalent value and fair consideration, such that the Agreement and sale of the Subject Policies and Other Hartford Policies with respect to the Released Claims is not subject to avoidance under Bankruptcy Code Section 363(n), and the Hartford Parties are entitled to the full protections of Section 363(m);

h.   the relief requested in the Motion is in the best interests of the bankruptcy estate; and

i.   the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

NOW, THEREFORE, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 363, 1107 AND 1108, AND RULES 2002, 6004, 9014 AND 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, IT IS HEREBY ORDERED THAT:

1.   The Motion is GRANTED.

2.   For the reasons set forth herein, all objections (if any) to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived or settled, and all reservations of rights included in such objections are overruled on the merits.  By this Order, however, the Court is not deciding at this time whether a Bankruptcy Code Section 524(g) injunction should be issued with respect to the Hartford Parties.  Questions relating to Section 524(g) are reserved for the Court's ruling on plan confirmation.

3.   The Agreement, a copy of which is attached to the Motion as <u>Exhibit A</u>, is approved in its entirety.

4.     The Debtors shall be, and hereby are, authorized to enter into the Agreement, and are authorized to execute, deliver, implement and fully perform any and all obligations, to execute any instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Agreement and perform any and all obligations contemplated therein, including designating the Agreement as an Asbestos Insurance Settlement Agreement, and the Hartford Parties, and the Hartford-Related Parties to the extent, but only to the extent, the Hartford-Related Parties provided insurance coverage to any of the Debtors, as Settled Asbestos Insurance Companies, with respect to the Subject Policies and the Released Claims that are Asbestos PI Claims, on Exhibit 5 of the Exhibit Book to the First Amended Joint Plan of Reorganization.   If such a plan is confirmed, following the plan Effective Date, the Asbestos PI Trust, upon its creation, will be bound to the terms of the Agreement as if it were a signatory to the Agreement as of its Execution Date.

5.     Upon the Hartford Parties' payment of the Settlement Amount as provided in the Agreement, the Debtors shall be deemed to have sold, conveyed, assigned, transferred and delivered, and the Hartford Parties shall be deemed to have purchased from the Debtors, in good faith and as a good faith purchaser, all rights, title and interest of the Debtors in and under the Subject Policies with respect to the Released Claims, free and clear of all liens, claims, encumbrances and/or interests of any kind or nature whatsoever with respect to the Released Claims, pursuant to Section 363(f) of the Bankruptcy Code.  The Hartford Parties shall thereafter be entitled to the protections of Sections 363(m) of the Bankruptcy Code.  The holders of all liens, claims, encumbrances and/or interests of any kind with respect to the Released Claims shall be and hereby are barred, estopped and permanently enjoined from asserting any such liens, claims, encumbrances and/or interests against any of the Hartford Parties or against the Subject

Policies or the Other Hartford Policies, and from continuing, commencing or otherwise proceeding or taking any action against the Hartford Parties to enforce such liens, claims, encumbrances and/or interests for the purpose of directly or indirectly collecting, recovering or receiving payments from any Hartford Party with respect to any such lien, claim, encumbrance and/or interest.

6.    This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(h).

7.    This Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Order subject to the terms of the Agreement.

Dated: _____, 2010          _____
                                   The Honorable Judith K. Fitzgerald
                                   United States Bankruptcy Judge

**EXHIBIT 3**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:** |
| | ) | **Objection Deadline:** |
| | ) | **Agenda No.** _____ |

**NOTICE OF SETTLEMENT**

Please be advised:

On August __, 2010, the Debtors moved the United States Bankruptcy Court for the District of Delaware, for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and §§ 363 and 105(a) of the Bankruptcy Code authorizing and approving a settlement agreement (the "Settlement Agreement") between Grace (on behalf of itself and the Grace-Related Parties[3]), on the one hand, and Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, New England Insurance Company, Hartford Fire Insurance Company, London & Edinburgh General Insurance Company of Canada, Excess Insurance Company Limited, and London & Edinburgh General Insurance Company Limited, in its own right and as successor to London & Edinburgh Insurance Company Limited (collectively, "Hartford"), on the other hand, with respect to all outstanding disputes among the settling parties concerning insurance coverage for asbestos personal injury claims.

The Settlement Agreement is structured as a buy-back agreement pursuant to Bankruptcy Code § 363 of the Subject Policies with respect to Released Claims. The general terms of the Settlement Agreement include: (i) the Debtors' sale of its interests in the Subject Policies with respect to Released Claims to Hartford free and clear of all interests and claims of any and all persons; (ii) Hartford's payment of the Settlement Amount ($25 million); and (iii) entry of an injunction in Hartford's favor barring all claims, known and unknown, brought by any person or entity against Hartford or against the Subject Policies relating to Released Claims.

Opposition papers, if any, to the Motion must be made in writing and filed with the Bankruptcy Court in accordance with the Local Rules and served on the Settling Parties through their counsel no later than _____.

---

[3]     Unless otherwise specified, all capitalized terms shall have the meaning provided to them in the Settlement Agreement.

8

A hearing on the Motion will take place at _____ **a.m. (EST)** on _____, **2010** in _____.

Copies of the Motion and the Settlement Agreements may be obtained from _____.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: October 18, 2010** |
| | ) | **Objection Deadline: October 1, 2010** |
| | ) | **Agenda No. _____** |

**ORDER PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF
THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING
THE SETTLEMENT AGREEMENT BETWEEN
W. R. GRACE & CO. AND THE HARTFORD PARTIES**

This matter having come before the Court on the Debtors' Motion (the "Motion")

for an order approving the Settlement Agreement ("Agreement") by and between W. R.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Grace & Co., on its own behalf and on behalf of the Grace-Related Parties[2] (collectively, "Grace"), and Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, New England Insurance Company, Hartford Fire Insurance Company, London & Edinburgh General Insurance Company of Canada, Excess Insurance Company Limited, and London & Edinburgh General Insurance Company Limited, in its own right and as successor to London & Edinburgh Insurance Company Limited (collectively, "the Hartford Parties"), and the Court having reviewed the Motion and any objection thereto, the Court hereby finds that:

a.  the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

b.  this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

c.  notice of the Motion was adequate under the circumstances;

d.  the compromise and settlement memorialized in the Agreement are the product of arm's-length, good faith negotiations by and between W. R. Grace & Co., on its own behalf and on behalf of the Grace-Related Parties (as defined in the Agreement), and the Hartford Parties, and are not the product of fraud or collusion; and the settlement meets the standard established by the United States Court of Appeals for the Third Circuit for approval of settlements, which requires consideration of the following factors: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002);

e.  the consideration to be paid by the Hartford Parties under the Agreement is fair and reasonable and constitutes reasonably equivalent value;

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Agreement or the First Amended Joint Plan of Reorganization, as modified through March 19, 2010, as applicable.

f. the transaction set forth in the Agreement pursuant to which the Hartford Parties are to acquire all rights, title, and interests of the Debtors in and under the Subject Policies and Other Hartford Policies with respect to the Released Claims (as defined in the Agreement) constitutes a sale of property pursuant to Bankruptcy Code Section 363(b) and subject to the terms of Bankruptcy Code Sections 363(f) and 363(m), and the Hartford Parties are good faith buyers within the meaning of Section 363(m);

g. the transaction contemplated by the Agreement is at arm's length and in good faith, and the consideration to be paid by the Hartford Parties is fair and adequate and constitutes reasonably equivalent value and fair consideration, such that the Agreement and sale of the Subject Policies and Other Hartford Policies with respect to the Released Claims is not subject to avoidance under Bankruptcy Code Section 363(n), and the Hartford Parties are entitled to the full protections of Section 363(m);

h. the relief requested in the Motion is in the best interests of the bankruptcy estate; and

i. the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

NOW, THEREFORE, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 363, 1107 AND 1108, AND RULES 2002, 6004, 9014 AND 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. For the reasons set forth herein, all objections (if any) to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived or settled, and all reservations of rights included in such objections are overruled on the merits. By this Order, however, the Court is not deciding at this time whether a Bankruptcy Code Section 524(g) injunction should be issued with respect to the Hartford

Parties.  Questions relating to Section 524(g) are reserved for the Court's ruling on plan confirmation.

3.     The Agreement, a copy of which is attached to the Motion as <u>Exhibit A</u>, is approved in its entirety.

4.     The Debtors shall be, and hereby are, authorized to enter into the Agreement, and are authorized to execute, deliver, implement and fully perform any and all obligations, to execute any instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Agreement and perform any and all obligations contemplated therein, including designating the Agreement as an Asbestos Insurance Settlement Agreement, and the Hartford Parties, and the Hartford-Related Parties to the extent, but only to the extent, the Hartford-Related Parties provided insurance coverage to any of the Debtors, as Settled Asbestos Insurance Companies, with respect to the Subject Policies and the Released Claims that are Asbestos PI Claims, on Exhibit 5 of the Exhibit Book to the First Amended Joint Plan of Reorganization.  If such a plan is confirmed, following the plan Effective Date, the Asbestos PI Trust, upon its creation, will be bound to the terms of the Agreement as if it were a signatory to the Agreement as of its Execution Date.

5.     Upon the Hartford Parties' payment of the Settlement Amount as provided in the Agreement, the Debtors shall be deemed to have sold, conveyed, assigned, transferred and delivered, and the Hartford Parties shall be deemed to have purchased from the Debtors, in good faith and as a good faith purchaser, all rights, title and interest of the Debtors in and under the Subject Policies with respect to the Released Claims, free and clear of all liens, claims, encumbrances and/or interests of any kind or nature

whatsoever with respect to the Released Claims, pursuant to Section 363(f) of the Bankruptcy Code.  The Hartford Parties shall thereafter be entitled to the protections of Sections 363(m) of the Bankruptcy Code.  The holders of all liens, claims, encumbrances and/or interests of any kind with respect to the Released Claims shall be and hereby are barred, estopped and permanently enjoined from asserting any such liens, claims, encumbrances and/or interests against any of the Hartford Parties or against the Subject Policies or the Other Hartford Policies, and from continuing, commencing or otherwise proceeding or taking any action against the Hartford Parties to enforce such liens, claims, encumbrances and/or interests for the purpose of directly or indirectly collecting, recovering or receiving payments from any Hartford Party with respect to any such lien, claim, encumbrance and/or interest.

6.      This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(h).

7.      This Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Order subject to the terms of the Agreement.


Dated: _____, 2010      _____

The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge