## E<small>XHIBIT</small> B

**Engagement Letter**

Case 01-01139-AMC    Doc 25405-3    Filed 09/13/10    Page 1 of 6

**Seale & Associates**

950 N. Glebe Road, Suite 950
Arlington, Virginia 22203
Office: 703 294 6770
Fax: 703 294 6790

*Re: Acquisition Advisory Services Agreement*

July 20, 2010

George W. Young
Vice President Business Development
Grace Davison
W. R. Grace & Co. – Conn.
7500 Grace Drive
Columbia, MD 21044

Dear George:

This letter sets forth our agreement authorizing Seale & Associates, Inc. ("Seale") to serve as a strategic finder in assisting W. R. Grace & Co.-Conn. ("Grace") in the acquisition of potential candidates under the following terms:

**1.    Services**—Grace appoints Seale to assist as a strategic finder in the identification and acquisition of candidates in the Functional Packaging business sector (the "Project"), all or a substantial part of the assets or stock of which may be acquired by Grace or its subsidiaries or affiliates by purchase, entry into a joint venture, or exclusive license (a "Transaction"). In providing its services as a strategic finder, Seale shall perform the following activities:

- Complete a strategic business assessment of the Functional Packaging business sector and work with Grace to develop criteria for identifying and prioritizing acquisition opportunities;
- Identify and deliver to Grace a list comprising the universe of specific acquisition opportunities that are within the scope of the Project and meet the target criteria (the "Preliminary Universe List");
- Meet with Grace to present and discuss the Preliminary Universe List;
- Based on the results of this meeting and subsequent meetings, perform research and analysis of specific Transaction opportunities including gathering intelligence on potential targets and evaluating and ranking each target based on Grace's acquisition criteria;
- Meet with Grace to review results of comprehensive study and refine prioritization of acquisition alternatives into a potential target list (the "Target List");
- Arrange for Grace to meet with the key decision makers of the companies on the Target List, as prioritized; and
- Provide appropriate consulting advice as may be requested by Grace, including valuation and acquisition analyses, deal structuring advisory services, and consultation during negotiations.

At Grace's exclusive option, Grace and Seale shall execute one or more addenda to this Agreement giving Seale the right to approach Transaction candidates on Grace's behalf,



W. R. Grace & Co.-Conn.
July 20, 2010
Page 2

and Seale shall approach only those candidates whose names appear in an addendum.

2. **Contingent Fees** - In consideration of Seale's services hereunder, upon the consummation, during the term of this Agreement (including any extension thereof) or within one year after its termination, of any Transaction with a company on the Target List, Grace will pay to Seale an amount in cash (the "Fee"), equal to ▓▓▓▓▓ of the value of the consideration paid by Grace for such Transaction up to and including $100,000,000 of combined Transaction value, plus ▓▓▓▓▓ of such value between $100,000,000 and $125,000,000, plus ▓▓▓▓▓ of such value in excess of $125,000,000; provided, however, that the first Transaction completed shall carry a minimum fee ▓▓▓▓▓. Notwithstanding the foregoing, no Fee shall be paid with respect to a Transaction with Multisorb Technologies, Inc., CSP Technologies, Inc. (or any member of CV Holding Group), or NanoPack, Inc.

3. **Work Study Fee**— Grace shall pay to Seale a non-refundable work study fee in the amount of ▓▓▓▓▓ per month beginning upon the date of execution of this Agreement and on each of the three subsequent monthly anniversaries of such date. The amount of fees payable to Seale upon closing of each Transaction in the Project shall be reduced by the amount of the work study fees paid to Seale and not previously credited to a Fee.

4. **Expenses**— Grace will reimburse Seale for reasonable out-of-pocket expenses incurred in connection with Seale's services under this Agreement. The parties agree that such expenses shall include, but not be limited to, both domestic and international travel (including transportation, room, board, and related expenses), long-distance telephone, telefax, postage, private delivery service, research materials, translators and consultants where necessary, administrative costs, and all similar costs. Travel to be undertaken in connection with this Agreement is subject to the prior approval of Grace.

5. **Services Not Being Provided**— Grace understands and agrees that Seale shall not provide the services of a securities "broker" or "dealer," or an "investment advisor," as such terms are defined under, respectively, the federal Securities Act of 1934 and the Investment Advisers Act, and under relevant state securities laws. Grace will not look to Seale for advice on (i) the value of any securities which may be involved in a Transaction or (ii) sources of financing of a Transaction. To the extent that this transaction is deemed a "transaction in securities" or a "share deal", then Seale will assign all rights and responsibilities of this agreement to Seale Capital, Inc. a broker/dealer affiliate and member of FINRA.

6. **Indemnification**—If Seale becomes involved in any action or legal proceeding in connection with any services or matters which are the subject of this Agreement, Grace agrees to indemnify and hold Seale harmless from any liability or claims and reasonable attorneys' fees and other expenses incurred with respect to preparing for or defending against such action or legal proceeding, provided that Grace shall not be liable under the provisions of this paragraph for any liability, claims, reasonable attorneys' fees, or other expenses to the extent that a court having jurisdiction shall have determined by a final judgment that the liability or claim resulted from Seale's breach of its obligations under this Agreement, willful misconduct or negligence. The agreements of Grace in this paragraph shall, upon the same terms and conditions, extend to and inure to the benefit



W. R. Grace & Co.-Conn.
July 20, 2010
Page 3

of each person, if any, who is employed by, or who controls Seale. If Seale becomes aware of any claim against it in connection with such matters or services, it shall give Grace prompt notice of such claim, and Grace shall have the right to assume the defense of such claim; provided that without Seale's consent, Grace shall not enter into any settlement requiring Seale to pay money or be subject to non-monetary relief.

7. **Confidentiality** — Without Grace's prior written approval, all information given to Seale by Grace (including the existence of this engagement and this Agreement and Seale's engagement hereunder), unless publicly available will be held by Seale in confidence and will not be disclosed to anyone other than Seale's officers and employees (that are covered by an agreement of confidentiality and for whose compliance with this Agreement Seale will be responsible) or used for any purpose other than those referred to in this letter. Upon termination of this Agreement, Seale, at the request of Grace, will promptly deliver to Grace all materials specifically produced for it and will return to Grace all Confidential Information provided to Seale during the course of its engagement. In the event of the actual or threatened breach of the provisions in Paragraph 7, Grace shall be entitled to an injunction restraining Seale therefrom and Seale does hereby consent to the jurisdiction of a court of equity. The remedies described herein shall be in addition to and not in limitation of any other rights or remedies to which Grace is or may be entitled at law or in equity or under this Agreement. The terms of this Paragraph 7 are intended to survive the completion or termination of this Agreement and shall continue to bind all parties.

8. **Information**—Although Seale has or will endeavor to provide information or materials to Grace which Seale believes to be relevant for the purpose of Grace's investigation and evaluation of various acquisition candidates, Seale does not make any representation or warranty as to the accuracy or completeness of the information thus provided. Grace understands that the information provided by Seale may be obtained from one or more of the following sources or other sources which Seale may, in its discretion, select: acquisition candidates (including their shareholders, directors, officers, agents, employees, and other representatives); industry sources; standard reference sources and other information generally available to the public; and analyses of personnel in the industry or industries in which acquisitions are sought. Grace understands that such information is not subject to any independent verification or due diligence investigation by Seale, and Grace agrees that neither Seale nor any of its employees, representatives, or controlling persons shall have any liability to Grace or any of Grace's shareholders, officers, directors, employees, or representatives resulting directly or indirectly from their use of the information or materials provided to Grace by Seale or from unintentional errors in or omissions from such information or materials by Seale.

9. **Terms of a Transaction**— Grace agrees that neither Seale nor any of its employees, representatives, or controlling persons shall have any liability to Grace, its shareholders, officers, directors, employees, or representatives as a result of any of the terms or conditions of a Transaction. Grace will seek the advice and assistance of its own attorneys in establishing and negotiating the terms of any Transaction hereunder.

10. **Termination**— Unless sooner terminated by Grace by notice to Seale, this



W. R. Grace & Co.-Conn.
July 20, 2010
Page 4

Agreement will automatically terminate one year after the date on which it is executed by Grace, unless extended by mutual written consent of Grace and Seale. Grace may not terminate this Agreement prior to six months from the date of execution by Grace of this Agreement.

**11.    Governing Law**—This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws thereof.

The provisions regarding Indemnification in paragraph 6, Confidentiality in paragraph 7, Information in paragraph 8, Terms of a Transaction in paragraph 9, and Governing Law in paragraph 11 shall survive the termination of this Agreement.

This writing contains the entire agreement of Seale and Grace; there are no promises, understandings, or agreements of any kind which relate to this contract other than those stated above. This Agreement may not be changed except in writing signed by both parties.

Please indicate your consent to the foregoing terms by signing where indicated below and returning this Agreement to us. A facsimile of this Agreement bearing the signatures of the parties hereto and transmitted by telefax or similar technology shall be as binding on the parties as an original executed agreement.



W. R. Grace & Co.-Conn.<br>
July 20, 2010<br>
Page 5

We are pleased to continue working with you.

Sincerely yours,

**Seale & Associates, Inc.**

By: _____
James A. Seale
President

*Accepted and Agreed to on July ___, 2010:*

**W. R. Grace & Co.-Conn.**

By: _____
George W. Young
Vice President Business Development
Grace Davison

