## E<small>XHIBIT</small> C

**Affidavit of Robert Whitney, Vice President of Seale & Associates, Inc., in Support of Debtors' Application for Order Authorizing Debtors to (a) Enter into Financial Advisor Engagement Letter; (b) Pay Certain Fees and Expenses in Connection Therewith; and (c) File the Engagement Letter Under Seal**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: October 18, 2010, at 10:30 a.m. |
| | ) | Objection Deadline: October 1, 2010 |

**AFFIDAVIT OF ROBERT WHITNEY, VICE PRESIDENT OF SEALE & ASSOCIATES, INC., IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER AUTHORIZING DEBTORS TO (A) ENTER INTO FINANCIAL ADVISOR ENGAGEMENT LETTER; (B) PAY CERTAIN FEES AND EXPENSES IN CONNECTION THEREWITH; AND (C) FILE THE ENGAGEMENT LETTER UNDER SEAL**

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA | ) |
| | ) ss. |
| COUNTY OF ARLINGTON | ) |

Robert Whitney being duly sworn, deposes and states:[2]

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Application or the *First Amended Joint Plan of Reorganization* in these chapter 11 cases, as amended, Docket nos. 19579, 20666, 20872, 20873, 21594 and 24657 (the "Plan").

1. I am Robert Whitney, Vice President of Seale & Associates, Inc., Seale & Associates, Inc. ("Seale"), a financial advisory firm with its principal office located at 4301 N. Fairfax Drive, Suite 305, Arlington, Virginia 22203. I am duly authorized to make this affidavit (the "Affidavit") on behalf of Seale. I have acted as an investment advisor in strategic acquisitions in the specialty chemical business and related fields for 6 years. My bachelor's degree is in the field of Accounting from University of Richmond.

2. I submit this Affidavit in support of the *Debtors' Application for Order Authorizing Debtors to (a) Enter into Financial Advisor Engagement Letter; (b) Pay Certain Fees and Expenses in Connection Therewith; and (c) File the Engagement Letter Under Seal* (the "Application"). Unless otherwise stated herein, I have personal knowledge of the facts set forth in this Affidavit.

### SEALE & ASSOCIATES PROFESSIONAL QUALIFICATION

3. Seale's professionals have extensive expertise in evaluating prospective acquisitions, divestitures, joint ventures, carve-outs, strategic alliances and spin-offs. In particular, Seale has extensive experience in advising its clients in the evaluation and acquisition of businesses similar to those that are the targets of the Functional Packaging Project. As such, the services provided by Seale will allow the Debtors to most efficiently consider and evaluate prospective acquisitions for the Project in order to maximize the value of the acquisitions for the Debtors' estates. Seale will provide the services under the terms and conditions described in the Engagement Letter with Grace-Conn.

### DISINTERESTEDNESS

4. The Debtors have numerous creditors, stakeholders and other parties with whom they maintain business relationships. In connection with the Debtors' proposed retention of Seale, Seale undertook to determine whether it had any conflicts or other relationships that might

cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. To check and clear potential conflicts of interest in the chapter 11 cases, Seale reviewed a list of significant creditors and parties-in-interest in these chapter 11 cases (collectively, the "Potential Parties-in-Interest") to determine whether it had any relationships with entities of the following types:

    a. The Debtors and certain of their affiliates;

    b. The Debtors present and former officers and directors;

    c. The Debtors largest trade creditors;

    d. Significant secured lenders;

    e. Preferred stockholders and other equity holders;

    f. Counterparties to significant leases or executor contracts;

    g. The attorneys and other professionals that the Debtors have identified for employment in these chapter 11 cases;

    h. Parties to significant litigation with the Debtors; and

    i. Other significant parties-in-interest.

5. Seale provided the identities of the Potential Parties-in-Interest to the Debtors.

6. As part of its diverse practice, Seale appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, brokers and financial consultants, some of whom may represent claimants and parties-in-interest in these chapter 11 cases. Further, Seale has in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or against other professionals involved in these chapter 11 cases. Based on our current knowledge of the professionals involved in these chapter

11 cases, and to the best of my knowledge, none of these business relations constitute interests adverse to the Debtors.

       7.       To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, Seale nor any of its professional employees has any connection with the Debtors, their creditors, the U.S. Trustee or any other Potential Parties-in-Interest.

       8.       To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Seale has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the chapter 11 cases. If Seale's proposed retention by the Debtors is approved by the Court, Seale will not accept any engagement or perform any service for any entity or person other than the Debtors in the chapter 11 cases. Seale will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or parties-in-interest in the chapter 11 cases, provided that such services do not relate to, or have any direct connection with, the chapter 11 cases or the Debtors.

       9.       Insofar as I have been able to determine after reasonable inquiry, Seale and the employees of Seale who will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and Seale is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1l07(b) of the Bankruptcy Code, in that Seale, its professionals and employees:

    a.    are not creditors, equity security holders or insiders of the Debtors;

    b.    were not, within two years before the date of filing of the Debtors' chapter 11 petitions, directors, officers, or employees of the Debtors; and

    c.    do not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or

4

indirect relationship to, connection with;' or interest in the Debtors, or for any other reason.

10. I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of Seale who will work on this engagement is related or connected to, the United States Bankruptcy Court handling the chapter 11 cases, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District Delaware who handle bankruptcy cases, the United States Trustee for this Region, or any employee in the Office of the United States Trustee for this Region.

11. If Seale discovers any additional information that requires disclosure, Seale will promptly me a supplemental affidavit with the Court.

## SCOPE OF PROPOSED RETENTION

12. Pursuant to the terms of the Engagement Letter, Seale has agreed to provide the following services (the "Transaction Services"):[3]

- Complete a strategic business assessment of the Functional Packaging business sector and work with Grace to develop criteria for identifying and prioritizing acquisition opportunities;

- Identify and deliver to Grace a list comprising the universe of specific acquisition opportunities that are within the scope of the Project and meet the target criteria (the "Preliminary Universe List");

- Meet with Grace to present and discuss the Preliminary Universe List;

- Based on the results of this meeting and subsequent meetings, perform research and analysis of specific Transaction opportunities including gathering intelligence on potential targets and evaluating and ranking each target based on Grace's acquisition criteria;

- Meet with Grace to review results of comprehensive study and refine prioritization of acquisition alternatives into a potential target list (the "Target List");

---

[3] The following summary of the Engagement Letter is provided solely for the convenience of the Court and parties in interest. To the extent that there are any discrepancies between this summary and the Engagement Letter, the terms and language of the Engagement Letter shall govern. Capitalized terms used but not defined herein are used with the meanings assigned to them in the Engagement Letter.

5

- Arrange for Grace to meet with the key decision makers of the companies on the Target List, as prioritized; and

- Provide appropriate consulting advice as may be requested by Grace, including valuation and acquisition analyses, deal structuring advisory services, and consultation during negotiations.

13. The Debtors propose that, at Grace's exclusive option, and without further order of this Court, Grace and Seale shall execute one or more addenda to the Engagement Letter giving Seale the right to approach Transaction candidates on Grace's behalf, and Seale shall approach only those candidates whose names appear in an addendum.

14. The Transaction Services that Seale will provide to the Debtors are necessary to enable the Debtors to effectively conduct the Functional Packaging Project. The Debtors believe that the Transaction Services will not duplicate the services that The Blackstone Group L.P. ("Blackstone"), the Debtors' financial advisors, or the Debtors' other professionals will be providing to the Debtors in these chapter 11 cases. Seale will carry out distinct functions in these cases relating only to the Project.

## COMPENSATION

15. The terms of Seale's proposed compensation (the "Fee Structure") are fully set forth in the Engagement Letter. In summary, under the terms of the Engagement Letter and subject to the Court's approval, Seale will receive:

- During the term of the Engagement Letter (including any extension thereof) or within one year after its termination, of any Transaction with a company on the Target List, Grace will pay to Seale an amount in cash (the "Fee"), equal to a specified percentage of the value of the consideration paid by Grace for such Transaction, which percentages shall vary depending on the amount of the consideration, and subject to a minimum fee in the case of the first Transaction.

- Grace shall pay Seale a non-refundable monthly work study fee beginning on the date of execution of the Engagement Letter and on each of the three subsequent monthly anniversaries of that date. The amount of fees payable to Seale upon closing of each Transaction in the Project shall be reduced by the amount of the work study fees paid to Seale and not previously credited to a Fee.

6

- Grace will reimburse Seale for reasonable out-of-pocket expenses incurred in connection with the Services. Such expenses shall include, but not be limited to, both domestic and international travel (including transportation, room, board, and related expenses), long-distance telephone, telefax, postage, private delivery service, research materials, translators and consultants where necessary, administrative costs, and all similar costs. Travel to be undertaken in connection with the Engagement Letter is subject to the prior approval of Grace.

16. Seale's compensation and expenses in the chapter 11 cases shall be subject only to the standard of review set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review set forth in section 330 of the Bankruptcy Code.

17. The Debtors are seeking approval of the Fee Structure set forth above pursuant to section 328(a) of the Bankruptcy Code, which provides in pertinent part that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 … [of the Bankruptcy Code] … on any reasonable terms and conditions of employment, including … on a contingency fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) permits the Court to approve the Fee Structure outlined above.

18. The Debtors believe that the Fee Structure appropriately reflects the nature and scope of the Transaction Services, and Seale's substantial experience with respect to these types of services. The Debtors further believe that the Fee Structure is (a) reasonable; (b) market-based; (c) well within the range of comparable transactions; and (d) merited by Seale's level of experience and expertise. Similar contingency fee arrangements have been approved and implemented in other chapter 11 cases in this District and elsewhere.

19. As of the Petition Date, Seale did not hold a prepetition claim against the Debtors for services rendered.

20. To the best of my knowledge, Seale has no agreement with any other entity to share with such entity any compensation received by Seale in connection with the chapter 11 cases other than as permitted by section 504 of the Bankruptcy Code.

## **INDEMNIFICATION PROVISIONS**

21.     Seale requests that the indemnification provisions of the Engagement Letter be approved subject to the following:

(a)     subject to the provisions of subparagraph (c) below, the Debtors are authorized to indemnify, and shall indemnify, Seale in accordance with the Engagement Letter, for any claim arising from, related to or in connection with the Transaction Services;

(b)     notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify Seale, or to provide contribution or reimbursement to Seale, to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are determined by a court of competent jurisdiction (the determination having become final) to have primarily resulted from the bad faith, gross negligence or willful misconduct of Seale; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan or plans in the chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 cases, Seale believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter, including without limitation, the advancement of defense costs, Seale must file an application therefor in the Court, and the Debtors may not pay any such amount to Seale before the entry of an order by the Court approving such payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for fees and expenses by Seale for indemnification, contribution or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify Seale.

22.     The preceding indemnification provisions are substantially similar to those approved by this Court when it entered its Prior Seale Retention Order.

Pursuant to 28 D.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Robert Whitney

SWORN AND SUBSCRIBED
before me this 13th day of September 2010

_____
Notary Public
My Commission Expires: Dec, 3, 2013

```
DAYSI M. FIORILO
Notary Public
Commonwealth of Virginia
360995
My Commission Expires Dec 31, 2013
```