IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hearing Date: October 18, 2010, at 10:30 a.m. |
| | ) Objection Deadline: October 1, 2010 |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO AGREEMENTS TO PURCHASE SYNTHETECH, INC., CONSUMMATING THE TRANSACTIONS CONTEMPLATED THEREBY AND MERGING THE ACQUIRING ENTITY INTO W. R. GRACE & CO.-CONN.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion"), requesting the Court enter an order substantially in the form attached hereto as Exhibit 1 (the "Acquisition Order") authorizing the Debtors to: (i) purchase the ongoing business and assets of Synthetech, Inc., an Oregon corporation (the "Seller") pursuant to the following agreements: (a) *Agreement and Plan of Merger* among

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Mallard Acquisition Corp. ("Mallard" or "MergerCo."), Seller and W. R. Grace & Co.-Conn. ("Grace-Conn."), dated as of September 13, 2010 (the "Merger Agreement"); and (b) *Voting Agreements* by and among Seller, Grace-Conn. and each of the directors and executive officers of Seller, each dated as of September 13, 2010 (the "Voting Agreements"; together with the Merger Agreement, the "Merger Documents", each substantially in the form attached to the "Acquisition Order"); (ii) consummate the transactions contemplated by the Merger Documents (the "Transaction"); and (iii) at their sole discretion, merge Mallard into Grace-Conn. on or after the date on which the Transaction is consummated.[2]

In support of the Motion, the Debtors state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Fed.R.Bankr.P. 2002 and 6004.

## BACKGROUND

### I.    GENESIS OF THE TRANSACTION

3. The Debtors conduct a Specialty Chemical business that operates through two operating units of Grace-Conn., Grace Davison and Grace Construction Products. Grace Davison is seeking to acquire Seller to augment its Specialty Technologies Business in the manufacture of single site and polypropylene catalysts for polyolefin plastics production and to

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Merger Documents or the *First Amended Joint Plan of Reorganization* in these Chapter 11 Cases, as amended, Docket nos. 19579, 20666, 20872, 20873, 21594 and 24657 (the "Plan").

expand its offerings to the pharmaceutical markets. Seller is a chemicals company specializing in organic synthesis, biocatalysis and chiral technologies. Grace-Conn. and Seller have a strong, ongoing working relationship, and Grace-Conn. believes that acquiring Seller's manufacturing assets, workforce, and on-going business significantly benefit Grace-Conn.'s strategic business objectives. Seller also manufactures polypropylene catalyst components for Grace-Conn.

4. In June 2010, Seller publicly announced that it was exploring strategic alternatives, including the potential sale of the business, and it engaged an investment banker to run a formal auction process. On June 29, 2010, Grace-Conn. and Seller entered into formal discussions regarding Grace-Conn.'s potential acquisition of Seller. Seller and Grace-Conn. entered into an exclusivity agreement. Grace-Conn. conducted its due diligence, and the parties began negotiating the Merger Documents.

5. Seller is a publicly traded company (OTCBB: NYZM). Substantially contemporaneously with the filing of this Motion, Seller and Grace-Conn. will issue a joint press release announcing the Transaction and will also make the appropriate SEC filings.

A. **Rationale Supporting the Transaction**

6. The Debtors have determined in their business judgment that entering into the Transaction will benefit their businesses and redound to the benefit of their creditor and equity constituencies for the following reasons:

- The Transaction accelerates Grace-Conn. strategic objectives to further its advanced catalyst technologies and discovery science businesses by:
  - Acquiring manufacturing capacity and know-how to advance the polyolefin catalyst business;
  - Acquiring existing fine chemicals expertise in chiral and peptide intermediate synthesis to expand discovery science offerings to the pharmaceutical market;
  - Eliminating reliance on outsourced manufacturing in line with long-term strategic goals;

3

- Reducing risk and capital expenditures associated with expansion or green field development; and

- Producing significant value as compared to alternative solutions.

## II. DEAL SUMMARY

7. The salient terms of the Transaction, as set forth in more detail in the Merger Documents, include:

- Acquisition of 100% of Seller's fully diluted shares, after acceleration and cash-out of all outstanding and unexercised stock options, through a merger with Mallard, a newly formed and wholly-owned Grace-Conn. subsidiary;

- The Transaction contemplates an all-cash, net purchase price of of approximately $19 million;

- The Transaction is subject to customary representations and warranties and covenants for a public company merger; and

- The Debtors anticipate consummating the Transaction during the 4th quarter of 2010.

The Debtors and Seller will consummate the Transaction once the Bankruptcy Court has entered the Acquisition Order, Seller's shareholders have approved the Transaction by a simple majority vote and all closing conditions set forth in the Merger Agreement have been satisfied or waived.

## III. CONTEMPLATED POST-TRANSACTION MERGER

8. The Debtors, at their sole discretion, intend to merge the surviving entity, Mallard, into Grace-Conn. in order for the acquired assets to be within the same corporate vehicle as all other Davison operating assets.

## RELIEF REQUESTED

9. The Debtors seek authority to consummate the Transaction substantially on the terms and conditions set forth in the Merger Documents

## ANALYSIS

A.  **Legal Analysis**

10.     Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 US.C. § 363(b). A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also Fulton State Bank v. Schipper*, 933 F.2d 513,515 (7th Cir. 1991) ("a debtor's decision must be supported by an articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386,390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

11.     Under section 363(b) of the Bankruptcy Code, a debtor must establish that it has a valid business purpose for using the estate's property outside the ordinary course of business. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. DeL. 1999); *see also Delaware & Hudson*, 124 B.R. at 178-79, In re Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656

5

(S.D.N.Y. 1992). A party-in-interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

12. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See Lionel Com.*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the *Lionel* standard and adding the "good faith" requirement); *Delaware & Hudson*, 124 B.R. at 176 (adopting *Lionel* in this district).

**B.    There Is Sound Business Justification for the Transaction**

13. The proposed transaction meets each of the foregoing requirements.

14. *Sound Business Reason*. Consummating the Transaction on the terms proposed in the Merger Agreement will permit the Debtors to: (i) acquire a business with considerable future potential; and (ii) avoid having to make a significant capital investment in manufacturing capabilities which Seller already possesses.

15. *Fair and Reasonable Consideration*. The total purchase price of approximately $19 million for Seller's ongoing business and assets is fair and reasonable within the context of Grace's strategic goal of augmenting its Specialty Technologies Business.

16. *Good Faith*. The negotiations were engaged in by both Grace and Seller in good faith. Seller is a publicly traded company. Prior to entering into negotiations with Grace, Seller announced that it was exploring strategic alternatives. Seller retained an investment banker to advise it. Both Grace and Seller are represented by sophisticated counsel. All negotiations were carried out at arms-length.

17. *Notice*.  The Debtors have been consulting with advisors to the statutory committees appointed in these chapter 11 cases, and notice of this Motion has been given to the parties listed in ¶ 22, below.  Seller issued a joint press release with Grace-Conn. and made the requisite public filings with the SEC substantially contemporaneously with the filing of this Motion.

18. In light of the foregoing, the Debtors have determined in their business judgment that Transaction is fair and reasonable.  The Debtors believe that the Transaction is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

## C.  The Proposed Post-Transaction Merger Is in the Best Interests of the Debtors and Their Estates

19. The Debtors intend, at their sole discretion, to merge Mallard (the acquisition vehicle) into Grace-Conn. at the appropriate time.  This merger will bring the assets acquired in the Transaction under the aegis of Grace-Conn., a Debtor, which will redound to the benefit of the Debtors' estates and the interests of their various creditor and equity constituencies.

### NO PREVIOUS MOTION

20. No previous motion for the relief sought herein has been made to this or any other court.

### NO BRIEFING SCHEDULE

21. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the

Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

## NOTICE

22.     Notice of this Motion has been given to: (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (vii) the Securities and Exchange Commission; and (viii) counsel to Seller. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[nothing further on this page]**

The Debtors respectfully request the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>: (a) approving the Merger Documents attached to the order; (b) authorizing, but not requiring the Debtors to consummate the Transaction; (c) consummate the contemplated merger of Mallard into Grace-Conn. at the Debtors' sole discretion; and (d) granting such other relief as may be appropriate.

Dated: September 13, 2010

KIRKLAND & ELLIS LLP
Theodore L. Freedman
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP


___/s/ James E. O'Neill_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100
(302) 652-4400
Co-Counsel for the Debtors and Debtors-in-Possession