# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co. (hereinafter referred to as "Grace") and Federal Insurance Company (hereinafter referred to as "Federal") (collectively "the Parties").

### WITNESSED THAT:

WHEREAS, Federal issued certain policies of insurance that provide, or are alleged to provide, liability insurance coverage to Grace (the "Subject Policies," as defined below); and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials ("Asbestos-Related Claims") and Grace has incurred certain liabilities, expenses and losses arising out of such Asbestos-Related Claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to the Subject Policies, and disputes have arisen between Grace and Federal regarding the Parties' respective rights and obligations under the Subject Policies; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co.-Conn. and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-01139 (JKF), *et seq.* (collectively, the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by the Bankruptcy Court in the Bankruptcy Case and that the plan will provide for the establishment of one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, a full and final settlement that releases and terminates all rights, obligations and liabilities (if any) that the Parties may owe one another under the Subject Policies.

<strong>AGREEMENTS:</strong>

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

**I.     Definitions**

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Capitalized terms in the prefatory paragraph, recitals, this Definitions section and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization (as defined below). Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.  <u>1997 Agreement</u>.  "1997 Agreement" means the Settlement Agreement between Grace and Federal dated November 18, 1997.

B.  <u>Affiliate</u>:  An "Affiliate" of an Entity means another Entity that is directly or indirectly (through one or more intermediaries) controlled by the first Entity.

C.  <u>Approval Order</u>:  "Approval Order" means an order of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein between the Parties.

D.  <u>Asbestos Claims</u>:  "Asbestos Claims" has the meaning set forth in the Joint Plan of Reorganization.

E.  <u>Asbestos PI Claims</u>:  "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

F.  <u>Bankruptcy Court</u>:  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

G.  <u>Claim</u>: "Claim" means:

1.  "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 101(5);

2.  "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 524(g)(5); and

3.  any claim (whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential,

and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien and any other assertion of liability of any kind.

H.   Committee: "Committee" means the Official Committee of Asbestos Personal Injury Claimants in the Bankruptcy Case.

I.   Confirmation Order: "Confirmation Order" means an order confirming the Joint Plan of Reorganization, when (and only when) issued or affirmed by the District Court in accordance with Section 524(g)(3)(A) of the Bankruptcy Code.

J.   Debtors: "Debtors" has the meaning set forth in the Joint Plan of Reorganization.

K.   District Court: "District Court" means the United States District Court for the District of Delaware.

L.   Effective Date: "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

M.   Entity: "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

N.   Execution Date: "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

O.    <u>Extra-Contractual Claim</u>: The term "Extra-Contractual Claim" means any Claim against any Party, seeking any type of relief, including compensatory, exemplary or punitive damages, on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act, unfair trade practices act or similar statute, regulation or code, or any other similar type of alleged misconduct or omission. "Extra-Contractual Claim" does not mean Claims for insurance coverage and/or benefits under any insurance policy.

P.    <u>Final Order</u>: "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

Q.    <u>Futures Representative</u>:  "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

R.    Grace: "Grace" means W. R. Grace & Co.

S.    Grace Parties: The term "Grace Parties" means:

    1.    Grace;

    2.    W. R. Grace & Co.-Conn., a Connecticut corporation;

    3.    All other Debtors in the Bankruptcy Case;

    4.    All Subsidiaries, divisions and Affiliates of the foregoing, including any Entity in which any of the Debtors has an ownership interest of fifty percent (50%) or more;

    5.    Any Entity on whose behalf Grace or W. R. Grace & Co.-Conn. has the power to release Claims under the Subject Policies; and

    6.    The directors, officers, agents and employees of the foregoing Entities, solely in their respective capacities as such.

T.    Joint Plan of Reorganization: "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders as modified through March 19, 2010, including all exhibits thereto, and as such plan may be further modified from time to time.

U.    Subject Policies: "Subject Policies" means the liability insurance policies listed on Attachment A hereto.

V.  Subsidiary:  A "Subsidiary" of an Entity means a corporation as to which the Entity owns shares of common stock and exercises control through the voting power of such stock.

W.  Trigger Date:  "Trigger Date" means the first date upon which all of the conditions precedent to Federal's payment obligation have been met, as provided in Section II. of this Agreement.

X.  Trust:  "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee and the Futures Representative.

## II.  Conditions Precedent to Federal's Payment Obligations

A.  Federal's obligation to pay the "Settlement Amount" (as defined below) as set forth in Section III. of this Agreement is conditioned upon the occurrence of all of the following conditions precedent:

1.  The receipt by Federal of written approval of the terms of this Agreement and the releases contained herein from the authorized representatives of the Committee and the Futures Representative; and

2.  The Approval Order having been entered by the Court and having become a Final Order; and

3.  The occurrence of the Effective Date.

B.  Federal shall have the right, in its absolute and sole discretion, to waive any one or more of the conditions precedent set forth in this Section II.

III.    **Payment of the Settlement Amount**

A.    Within thirty (30) days after (1) the Trigger Date has occurred or (2) Grace or the Trust has notified Federal that the Trigger Date has occurred, whichever is later, Federal shall pay to the Trust the sum of Thirty-Two Million United States Dollars ($32,000,000.00) (the "Settlement Amount") in immediately available funds.    The Parties agree that payment of the Settlement Amount to the Trust represents a reasonable compromise of the net present value of the limits of the Subject Policies that would otherwise be paid out for Asbestos PI Claims, and fully and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits of the Subject Policies.

B.    Payment of the Settlement Amount to the Trust shall be made in accordance with written instructions provided to Federal by the Trust.

IV.    **Releases**

A.    Release by Grace and the Trust

1.    Upon the Trust's receipt of the Settlement Amount in accordance with Section III. of this Agreement, the Trust and Grace (on behalf of itself, the Debtors, and, to the extent it has the power to bind them, the Grace Parties) hereby release, remise, covenant not to sue and forever discharge Federal along with its predecessors, successors, parents, subsidiaries, divisions and affiliates solely in their capacities as such, and the directors, officers, agents, representatives, attorneys and employees of Federal solely in their capacities as such, with respect to:

a.    any and all Claims for insurance coverage and/or other obligations under, based on or arising out of the Subject Policies, including,

but not limited to, Claims based on or arising out of Asbestos Claims; and

b.    any and all Extra-Contractual Claims based on or arising out of any Claims released pursuant to Section IV.A.1. above.

2.    GRACE AND THE TRUST ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  GRACE AND THE TRUST EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

B.    <u>Release by Federal</u>

1.    Upon payment of the Settlement Amount in accordance with Section III. of this Agreement, Federal hereby releases, remises, covenants not to sue and forever discharges the Debtors, the Grace Parties and the Trust, and

the trustees, officers, agents and employees of the Trust in their capacities as such with respect to:

a.      any and all Claims and/or other obligations under, based on or arising out of the Subject Policies; and

b.      any and all Claims based on or arising out of any alleged act, omission, representation or conduct of any sort by Grace or the Trust in connection with the Subject Policies.

2.      FEDERAL ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  FEDERAL EXPRESSLY ASSUMES THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT IT DOES NOT KNOW OR DOES NOT SUSPECT TO EXIST.

C.    No Release of Obligations Under This Agreement

The releases set forth in this Section IV.A. and B. do not relieve the Parties of any of their obligations under this Agreement.

D.    Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section III. of this Agreement, the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Policies, and any and all rights, duties, responsibilities and obligations of the Parties created by or in connection with the Subject Policies are terminated. Payment of the Settlement Amount to the Trust by Federal shall be deemed by the Parties to fully and properly exhaust all limits of liability, including without limitation all per-occurrence and aggregate limits under the Subject Policies. The releases contained in this Section IV. are intended to operate as if the Subject Policies had never been issued by Federal.

E.    The Parties understand and acknowledge that (1) Claims that have been or may be asserted against Grace and/or the Trust may increase or decrease in amount or in severity over time and may include progressive, cumulative, unknown and/or unforeseen elements, and (2) there may be hidden, unknown and unknowable damages, defense expenses or other costs related to such Claims. Each of the Parties acknowledges and agrees that it nevertheless willingly enters into this Agreement, including the releases set forth in this Section IV.

**V.    Release of Subrogation and Contribution Claims and Judgment Reduction Clause**

A.    Payments Made Under This Agreement

Federal shall not seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification or otherwise, from anyone other than Federal's reinsurers or retrocessionaires in their capacities as such.

Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against Federal relating to the Subject Policies, then Federal shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent that Federal recovers any amount from such third party, the net proceeds of such recovery (after any payment made by Federal to such third party on its Claim and after Federal is reimbursed from such proceeds for its fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by Federal promptly to the Trust. Grace and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section V.A.

> B.     <u>Payments Received From Other Insurers</u>
>
> Following the Trust's receipt of the Settlement Amount in accordance with Section III. of this Agreement, in the event that:

>> 1.     Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than Federal for any Claims that have been remised, released, acquitted and forever discharged as against Federal pursuant to this Agreement, and

>> 2.     As a result of such other insurer's obligation to pay described in Section V.B.1. above, such insurer either:

>>> a.     enters into a settlement with Federal, which settlement has been consented to by Grace or the Trust, as applicable, and any other Entity (as applicable), requiring Federal to reimburse some or all of the payment made or to be made by such insurer; or

b.      obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from Federal for contribution, subrogation or indemnification or other similar Claim, against Federal for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section V.B.1. above,

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section V.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination or award against Federal (referred to in Section V.B.2. above).

To ensure that such a reduction is accomplished, Federal shall be entitled to assert this Section V. as a defense to any action against it for any such portion of the determination or award against Federal (referred to in Section V.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Federal from any liability for the determination or award.  Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a Claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section V.B.1. above, it will provide notice to Federal of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against Federal and shall consent to Federal's intervention in any such proceeding to the extent that Federal seeks to intervene to effectuate the intent of this Section V.

VI.    **Bankruptcy-Related Obligations**

A.    Committee and Futures Representative Approval

In executing this Agreement, Federal acknowledges receipt of written consent to the Agreement and the releases contained herein from the authorized representatives of the Committee and the Futures Representative, in form and substance satisfactory to Federal. A form of written consent satisfactory to Federal is attached to this Agreement as Attachment B.

B.    Approval Motion

Promptly following the Execution Date, Grace will prepare and file a motion to approve this Agreement with the Bankruptcy Court, which motion shall be in form and substance reasonably satisfactory to the Parties. Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a Final Order. Federal, at its own expense, will cooperate with Grace in obtaining the Approval Order.

C.    Approval Order

Grace will use its reasonable best efforts to cause the Court to enter an order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.    That this Agreement shall be designated as an Asbestos Insurance Settlement Agreement, and that Federal shall be designated as a Settled Asbestos Insurance Company, with respect to Asbestos Claims under the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

3.    That, upon the Trust's receipt of payment by Federal of the Settlement Amount in accordance with Section III. of this Agreement, the Debtors shall be deemed to have sold, conveyed, assigned, transferred and delivered to Federal, and Federal shall be deemed to have purchased from the Debtors, all rights, title and interests of the Debtors in and under the Subject Policies, free and clear of liens, encumbrances and/or interests of any kind or nature whatsoever, under Section 363(f) of the Bankruptcy Code, and that Federal shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.    That the Trust, upon the Effective Date, will be bound to this Agreement as if a Party to this Agreement from the Execution Date.

D.    <u>Designation of Federal as a Settled Asbestos Insurance Company</u>

Following the Approval Order becoming a Final Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and Federal as a Settled Asbestos Insurance Company, with respect to Asbestos Claims under the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization. Should Grace propose modifications or amendments to the Joint Plan of Reorganization after entry of the Approval Order but before entry of the Confirmation Order, the designations set forth in the preceding sentence shall be made at the same time as such modifications or amendments. The amendment may set forth as conditions subsequent to such designation that: (1) the Approval Order and Confirmation Order have become Final Orders, and (2) the Trust shall have received the Settlement Amount in accordance with Section III. of this Agreement.

E.     Sale Pursuant to Section 363(f)

Upon the Trust's receipt of payment by Federal of the Settlement Amount as provided in Section III. of this Agreement, and without need for further action, the Debtors shall be deemed to have sold, conveyed, assigned, transferred and delivered to Federal, and Federal shall be deemed to have purchased from the Debtors, all rights, title and interests of the Debtors in and under the Subject Policies, free and clear of all liens, encumbrances and/or interests of any kind or nature whatsoever, to the extent permitted under Section 363(f) of the Bankruptcy Code. The Settlement Amount represents the full purchase price of the Subject Policies, and reflects payment for amounts that Grace and/or the Trust are or may be legally obligated to pay on account of liability for Asbestos Claims. The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policies.

F.     Trust Bound by Agreement

Upon the Effective Date, the Trust shall automatically be bound by this Agreement, without further action required, as if it had been a Party hereto as of the Execution Date.

G.     No Bankruptcy-Related Activities

Effective upon the Execution Date, Federal (1) shall suspend prosecution of all of its objections to the Joint Plan of Reorganization or plan-related documents, to confirmation of the Joint Plan of Reorganization and to the Debtors', Committee's or Future Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case); (2) shall take no further actions of any nature (including filing new objections to the Joint Plan of Reorganization, initiating or taking discovery, or filing or joining in any appeals) that may hinder, delay or oppose actions of Debtors, the Committee or the Futures Representative in the Bankruptcy Case; and (3) shall not oppose the entry of a

Confirmation Order; *provided, however,* that in the event that the Bankruptcy Court does not issue an Approval Order or the Approval Order does not become a Final Order, Federal may renew prosecution of its objections to the Joint Plan of Reorganization consistent with the Court's scheduling orders.

>   H.      Withdrawal of Objections

Upon the Approval Order becoming a Final Order, Federal (1) shall withdraw all of its objections to the Joint Plan of Reorganization and plan-related documents, to confirmation of the Joint Plan of Reorganization and to the Debtors', Committee's or Futures Representative's motions or applications pending in the Bankruptcy Case (including any appeals of decisions in the Bankruptcy Case), and (2) expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

**VII.    Termination of Agreement**

>   A.      Automatic Termination

After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

>   1.      The Parties, despite their reasonable best efforts working together, fail to obtain an Approval Order that becomes a Final Order;
>
>   2.      The failure of the Effective Date to occur, coupled with circumstances that make it clear that the Effective Date will never be reached; or
>
>   3.      The entry of an order by the Bankruptcy Court that becomes a Final Order dismissing the Bankruptcy Case or converting it into a Chapter 7 case.

B.    Termination by Federal

After the Execution Date, Federal, at its sole option, may terminate this Agreement and render this Agreement null and void by providing written notice of termination to Grace, the Committee and the Futures Representative within forty-five (45) days of the occurrence of any of the following events:

1.    The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and Federal as a Settled Asbestos Insurance Company, with respect to Asbestos Claims under the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section VI.D.;

2.    The confirmation of a Chapter 11 plan of reorganization other than the Joint Plan of Reorganization that materially and adversely affects the interests of Federal under this Agreement; or

3.    Entry by the Bankruptcy Court of one or more orders that denies Federal the protections of the Asbestos PI Channeling Injunction with respect to one or more Asbestos PI Claims.

Failure by Federal to give timely written notice of termination pursuant to this Section VII.B. shall be deemed a permanent waiver of such condition by Federal.

C.    Effect of Termination

Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective and/or is rendered null and void pursuant to this Section VII.:

1.  This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section X.;

2.  None of the Parties shall be bound by the terms of any Approval Order;

3.  This Agreement shall no longer be designated an Asbestos Insurance Settlement Agreement, and Federal will no longer be designated a Settled Asbestos Insurance Company, with respect to Asbestos Claims under the Subject Insurance Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

4.  The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policies, the 1997 Agreement and any other agreement between the Parties relating to the Subject Policies that may have been in effect at the time of the Execution Date that they would have had absent this Agreement; and

5.  The releases provided in Section IV. shall become null and void *ab initio*.

## VIII.  Defense of the Asbestos PI Channeling Injunction

A.  Following the Trust's receipt of payment of the Settlement Amount in accordance with Section III. of this Agreement, if any Entity asserts against Federal an Asbestos PI Claim based on or arising under the Subject Policies ("Federal Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to such Federal Channeling Injunction Claim and to obtain a ruling that such Federal Channeling Injunction Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).  In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying

out its obligation under this Section VIII.A. When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Federal Channeling Injunction Claims, the Trust shall have no further obligation under this Section VIII.A. For the avoidance of doubt, this Section VIII.A. shall not obligate the Trust to retain counsel to represent Federal or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting or expert representation as Federal may choose to engage in connection with any Claim against Federal.

      B.     Within thirty (30) days of Federal's receipt of any Claim, demand, notice, summons or other process received by Federal that Federal reasonably believes is a Federal Channeling Injunction Claim, Federal shall forward such Claim, demand, notice, summons or other process to the Trust. The Trust shall notify Federal in writing within fifteen (15) business days of its receipt of notice of such Claim as to whether the Trust agrees that such Claim is a Federal Channeling Injunction Claim. If the Trust determines that a Claim presented by Federal is not a Federal Channeling Injunction Claim, the Trust shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim. In the event of a dispute as to whether a Claim triggers the Trust's obligations under Section VIII.A., the Trust and Federal shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by Federal, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI

Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

## IX.    **Right of Review**

A.    Following the Trust's receipt of payment of the Settlement Amount as provided in Section III., Federal shall have the right, at its own expense, upon reasonable notice, at a time and place convenient to the Trust, to review records relating to Asbestos PI Claims paid by the Trust solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount. The Trust shall have no obligation to create any new documents or to collect any information in connection with any such review beyond the documents or information ordinarily created or maintained by the Trust, and Federal shall not be permitted to challenge the review, determination or payment of any Asbestos PI Claims by the Trust or the payment of any expenses or costs of the Trust.  Notwithstanding any of the foregoing, the Trust shall not be obligated to provide the Social Security Identification Number of any Asbestos PI Claimant beyond the last four digits.

B.    Federal shall not provide any information, documents, notes or other results of any review undertaken pursuant to Section IX.A. (the "Material") to any other Entity and shall keep any and all such Material confidential, except that Federal may provide such Material to its reinsurers or reinsurance arbitrators solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount, provided that Federal first obtains from such reinsurers or reinsurance arbitrators a written pledge to maintain the confidentiality of the Material and not to disclose such Material to any other Entity other than such reinsurers' retrocessionaires who have likewise provided such a written pledge.  In the event that disclosure of any Material in Federal's possession is sought pursuant to subpoena or other legal process, Federal shall immediately notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective

order regarding the Material.   Upon resolution of all reinsurance issues, Federal shall, at the Trust's option, return or destroy all Material.

**X.    Confidentiality**

A.    Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Information") are confidential, shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, and shall not be disclosed by any Party except as permitted in Section X.B. and C. below.

B.    The Parties may disclose Information as follows:

1.    The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.    The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3.    The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.    The Information may be disclosed by Federal to its reinsurers, directly or through intermediaries;

5.    Grace or the Trust may disclose the Information to other insurers and their representatives;

6.    The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.    A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.    The Information may be disclosed in any action brought to enforce the terms of this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

C.    A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government, governmental agency or other authority.

D.    In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Section X., the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

## XI.    Non-Prejudice and Construction of Agreement

A.    This Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage, liability or responsibility under the Subject Policies, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policies.

B.    This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Federal with regard to other insureds, and without prejudice to positions taken by Grace with regard to other insurers. The Parties and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement except as expressly provided herein.

C.    Neither the terms of this Agreement nor its negotiation, execution or any act in performance of this Agreement shall be invoked by Federal, Grace or the Trust, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by Federal, Grace or the Trust of any particular interpretation of any insurance policy with respect to any Claim.

D.    The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, and shall not be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.    This Agreement is the jointly drafted product of arm's-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in the interpretation of any ambiguities against insurers. No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement

shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

## XII.    Modification

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

## XIII.    Integration

A.    Entire Agreement

This Agreement, together with its attachments, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, between the Parties with respect hereto. It is expressly understood and agreed that this Agreement supersedes the 1997 Agreement, unless this Agreement is terminated pursuant to Section VII. Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms.

B.    Titles and Captions

Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

## XIV.    Governing Law

This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules. Nothing in this Section XIV. shall affect what law would govern the interpretation or application of the Subject Policies.

## XV.    Representations

Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation (subject, in the case of Grace, to the entry of an Approval Order). Each Party represents and warrants that the person signing this Agreement on its behalf is authorized to execute this Agreement (subject, in the case of Grace, to the entry of an Approval Order).

## XVI.    Execution

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

## XVII.    Notices

Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class

postage prepaid or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
Attn: General Counsel
Fax: (410) 531-4545

with a copy to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022-4611
Attn: Theodore L. Freedman
Fax: (212) 446-4900

If to Federal:

Federal Insurance Company
15 Mountain View Rd.
Warren, NJ 07061-1615
Attn: Thomas R. Kerr
Vice President, Chubb Group of Insurance
Companies, a Division of Federal Insurance
Company
Fax: (908) 903-3404

with a copy to:

Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Attn: William P. Shelley
Fax: (215) 701-2442

If to the Committee:

    Caplin & Drysdale Chartered
    One Thomas Circle, NW
    Washington, DC  20005
    Attn:  Peter Lockwood
    Fax:  (202) 429-3301

    and

    Caplin & Drysdale Chartered
    375 Park Avenue, 35th Floor
    New York, NY  10152
    Attn:  Elihu Inselbuch
    Fax:  (212) 644-6755

    with a copy to:

    Anderson Kill & Olick, PC
    1251 Avenue of the Americas
    New York, NY  10020
    Attn:  Robert Horkovich
    Fax:  (212) 278-1733

If to the Futures Representative:

    David T. Austern
    Asbestos PI Future Claimants'
      Representative
    c/o Claims Resolution Management
      Corporation
    3110 Fairview Park Drive, Suite 200
    Falls Church, VA  22042-0683
    Fax:  (703) 205-6249

    with a copy to:

    Orrick, Herrington & Sutcliffe LLP
    1152 Fifteenth Street, NW
    Washington, DC  20005
    Attn:  Roger Frankel
    Fax:  (202) 339-8500

## XVI.   <u>Binding Effect</u>

       This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _Richard C. Finke_

Name: Richard C. Finke

Title: Assistant General Counsel

Date: 9-28-2010

**FEDERAL INSURANCE COMPANY**

By: _____

Name: Thomas R. Kerr

Title: Vice President, Home Office Special Risk Casualty Claims, Chubb Group of Insurance Companies, a Division of Federal Insurance Company

Date: _____

29 of 29

09/27/2010 15:02 FAX  908 903 3030        HOME OFFICE CLAIMS                      ☑001/001

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _____

Name:  Richard C. Finke _____

Title:  Assistant General Counsel _____

Date: _____


**FEDERAL INSURANCE COMPANY**

By: _____

Name:  Thomas R. Kerr _____

Title:  Vice President, Home Office Special Risk
Casualty Claims, Chubb Group of Insurance
Companies, a Division of Federal Insurance
Company _____

Date: _____ 9/27/2010 _____

## ATTACHMENT A

### Subject Policies

| Policy Number | Policy Period | Underlying Limit | Policy Limit |
|---|---|---|---|
| 79221530 | 7/14/1974-6/30/1975 | $100,000,000 | $5,000,000 |
| 79221530 | 6/30/1975-6/30/1976 | $100,000,000 | $5,000,000 |
| 79221530 | 6/30/1976-6/30/1977 | $100,000,000 | $5,000,000 |
| (78) 79221530 | 6/30/1977-6/30/1978 | $100,000,000 | $5,000,000 |
| (79) 79227260 | 6/30/1978-6/30/1979 | $100,000,000 | $5,000,000 |
| (80) 79227260 | 6/30/1979-6/30/1980 | $100,000,000 | $5,000,000 |
| (80) 79227298 | 6/30/1979-6/30/1980 | $150,000,000 | $5,000,000 |
| (81) 79227260 | 6/30/1980-6/30/1981 | $100,000,000 | $5,000,000 |
| (81) 79227298 | 6/30/1980-6/30/1981 | $150,000,000 | $5,000,000 |
| (82) 79227260 | 6/30/1981-6/30/1982 | $100,000,000 | $5,000,000 |
| (82) 79227298 | 6/30/1981-6/30/1982 | $150,000,000 | $5,000,000 |
| 79282620 | 6/30/1984-6/30/1985 | $25,000,000 | $500,000 |
| 79282620 | 6/30/1984-6/30/1985 | $150,000,000 | $2,000,000 |

## ATTACHMENT B

Pursuant to Section VI.A. of the Agreement, the form of consent acceptable to Federal is as follows:

"The Asbestos PI Committee (or the Asbestos PI Future Claimants' Representative, as appropriate) hereby consents to the Settlement Agreement between the Grace Parties and Federal and to the releases and the other terms and conditions contained therein."

Transmission of electronic mail messages in the foregoing form by the authorized representatives of the Committee and Futures Representative to William P. Shelley, Esq., Cozen O'Connor, counsel for Federal, shall constitute written consent for the purposes of Section VI.A of the Agreement.