## EXHIBIT A

**Form of *Stipulation Resolving Claims of Richard C. Rowe, Donna M. Rowe, Indmar Products Co., Inc. and Hoffman Products Co., Inc. (Claim nos. 1641 and 14037))***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W. R. Grace & Co., et al.[3] | Case No. 01-01139 (JKF) (Jointly Administered) |
| Debtors. | |

## STIPULATION RESOLVING CLAIMS OF RICHARD C. ROWE, DONNA M. ROWE, INDMAR PRODUCTS CO., INC. AND HOFFMAN PRODUCTS CO., INC. (CLAIM NOS. 1641 and 14037)

This stipulation ("Stipulation") is entered into as of the last date set forth in the signature page of this Stipulation, between W. R. Grace & Co. and its affiliates (collectively, the "Debtors") and Richard C. Rowe, Sr., Richard C. Rowe, Jr., Kathy Marie Tidwell and Indmar Properties LLC (collectively, the "Claimants").[4]

---

[3]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[4]  Capitalized terms not defined in this Stipulation shall have the meanings ascribed to them, as the case may be, in the Settlement Agreement, the Settlement Agreement or the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., Et Al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009,* as thereafter amended (the "Plan").

## STATEMENT OF FACTS

WHEREAS, on April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

WHEREAS, on April 22, 2002, the Bankruptcy Court issued *its Order as to all Non-asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms and (III) Approving Notice Program* (the "Bar Date Order"), which established March 31, 2003 as the Bar Date for the filing of certain pre petition (a) non asbestos, (b) asbestos property damage, and (c) medical monitoring claims. [Docket No. 1963].

WHEREAS, on or about July 7, 1997, the Debtors and Richard C. Rowe, Donna M. Rowe, Indmar Products Co., Inc. and Hoffman Products Co., Inc. (collectively, the "Prior Claimaints") entered into a *Settlement and Indemnity Agreement* (the "Settlement Agreement"), a copy of which is attached hereto as part of Exhibit I, in connection with certain real property identified therein (the "Rowe Property") setting forth certain responsibilities for the Debtors and the Prior Claimants with respect to environmental remediation at the Rowe Property.

WHEREAS, on or about June 30, 2003, the Debtors and the Prior Claimants entered into *Amendment No. 1 to Settlement and Indemnity Agreement* (the "Settlement Agreement Amendment"), which is attached hereto as part of Exhibit I.

WHEREAS, performance of the Debtors' obligations under the Settlement Agreement and the Settlement Agreement Amendment is secured by a declining-balance letter of credit issued by Wachovia Bank, N.A. (the "Letter of Credit"), a copy of which is included in Exhibit I.

**WHEREAS**, on or about July 30, 2002, Prior Claimants filed a proof of claim ("Claim No. 1641") against the Debtors asserting a secured claim for contingent and unliquidated damages arising from potential environmental remediation at the Rowe Property pursuant to the Settlement Agreement.

**WHEREAS**, on or about March 31, 2003, Prior Claimants filed a proof of claim ("Claim No. 14037" and together with Claim No. 1641 the "Proofs of Claim") against the Debtors asserting an unsecured claim for unliquidated damages arising from environmental statutory and common law liability with respect to the Rowe Property and damages suffered by an alleged material revision and modification of the Letter of Credit.

**WHEREAS**, on or about August 25, 2008, the Debtors objected to the Proofs of Claim in the *Debtors' Twenty-Fifth Omnibus Objection to Claims (Substantive and Non-Substantive)* (Docket no. 19639), as amended and superseded (Docket no. 19378) (the "Claim Objection"), on the basis of no liability because the Proofs of Claim were contingent and the Debtors had performed—and were continuing to perform—their obligations under the Settlement Agreement and the Settlement Agreement Amendment.

**WHEREAS**, in September 2007, the ownership of the Rowe Property was transferred from Richard C. Rowe, Sr. and Donna M. Rowe to Richard C. Rowe, Sr., Richard C. Rowe, Jr. and Kathy Marie Tidwell.

**WHEREAS**, the benefits and burdens of Donna M. Rowe under the Settlement Agreement and the Settlement Agreement Amendment have been assigned to Richard C. Rowe, Jr. and Kathy Marie Tidwell, and Richard C. Rowe, Jr. and Kathy Marie Tidwell have now succeeded to the interests of Donna M. Rowe in the Proofs of Claim, the Settlement Agreement and the Settlement Agreement Amendment.

**WHEREAS**, the benefits and burdens of Indmar Products Co., Inc. and Hoffman Products Co., Inc. under the Settlement Agreement and the Settlement Agreement Amendment have been assigned to Indmar Properties LLC, and Indmar Properties LLC has now succeeded to the interests of Indmar Products Co., Inc. and Hoffman Products Co., Inc. in the Proofs of Claim, the Settlement Agreement and the Settlement Agreement Amendment.

**WHEREAS**, the Debtors and Claimant have now agreed to settle the Proofs of Claim on the terms and conditions set forth herein.

**NOW, THEREFORE**, after a thorough review of the Proofs of Claim, discussion and negotiations, for good and valuable consideration, the parties hereby stipulate and agree that, as of the date on which the Settlement Order becomes final and non-appealable:

## THE SETTLEMENT

1.      The Claim Objection is resolved on the terms and conditions set forth in this Stipulation.

2.      The Debtors—and on and after the date (the "Effective Date") on which Debtors substantially consummate a chapter 11 plan of reorganization confirmed in these chapter 11 cases (the "Plan"), the Debtors, as reorganized pursuant to the terms of the Plan (the "Reorganized Debtors"), shall continue to perform all obligations and otherwise fulfill the terms and conditions of the Settlement Agreement and Settlement Agreement Amendment, which are incorporated into this Stipulation by reference.

3.      Claim No. 14037 shall be Allowed as a General Unsecured Claim (the "Allowed Claim") as those terms are defined by the Plan, *provided that*:

   a.  The Claimant shall not be entitled to any recovery from the Debtors or Reorganized Debtors under Claim No. 14037 other than the Debtors' performance of their obligations set forth in this Stipulation, the Settlement Agreement and the Settlement Agreement Amendment;

4

b. The Debtors shall not seek any estimation of the Allowed Claim pursuant to section 502(c)(1) of the Bankruptcy Code;

c. Claim No. 14037 shall be deemed Allowed as of the Effective Date in the amount of $0 and deemed discharged (except as otherwise provided herein) pursuant to the Plan and section 1141 of the Bankruptcy Code, as the case may be; *provided, however*, that, in the event of any alleged breach occurring prior to the Effective Date by the Debtors of their obligations set forth in this Stipulation, the Settlement Agreement and the Settlement Agreement Amendment, regardless of whether such breach is discovered prior to or after the Effective Date, the Claimant shall be entitled to file a motion for an order of this Court authorizing the Claimant to: (i) enforce the Debtors' specific performance under the Settlement Agreement, the Settlement Agreement Amendment and the Allowed Claim; and (ii) recover money damages (if applicable) under the Settlement Agreement, the Settlement Agreement Amendment and the Allowed Claim for any required environmental remediation, and the Debtors shall be entitled to assert any and all applicable defenses to any such motion; 

d. The Plan shall provide that, on the Effective Date, the Settlement Agreement, the Settlement Agreement Amendment and this Stipulation shall be assumed pursuant to section 365 of the Bankruptcy Code. The terms of the Settlement Agreement and the Settlement Agreement Amendment shall govern in the event of any breach or alleged breach of those agreements by the Reorganized Debtors occurring on or after the Effective Date, and Claimant shall be entitled to bring any claim or take any action to enforce its rights as permitted thereunder or under applicable law, including to: (i) enforce the Reorganized Debtors' specific performance under the Settlement Agreement and the Settlement Agreement Amendment; and (ii) recover money damages (if applicable) under the Settlement Agreement or the Settlement Agreement Amendment for any required environmental remediation; and the Reorganized Debtors shall be entitled to assert any and all applicable defenses to any such claims or actions. 

4.    The Debtors' and Reorganized Debtors' obligations set forth in this Stipulation, the Settlement Agreement and the Settlement Agreement Amendment shall survive consummation of the Plan on the terms and conditions set forth above in ¶ 3.c.

5.    The Debtors and Reorganized Debtors acknowledge and agree to the transfers of ownership and assignments of interests set forth in the Statement of Facts herein, and agree, without further consideration, to execute and deliver such further documents or instruments and

5

to take such other actions as may be reasonably necessary to reflect such assignments and transfers.

      6.     The Debtors and Reorganized Debtors acknowledge and agree that any notices to be sent to the Rowe Entities under the Settlement Agreement or the Settlement Agreement Amendment shall, in addition to the entities identified in Section 7.9 of the Settlement Agreement, also be sent to:

> Indmar Properties LLC
> Attn: Richard C. Rowe, Jr.
> 5400 Old Millington Road
> Millington, Tennessee 38053

      7.     Claim No. 1641 shall be deemed disallowed and expunged for all purposes.

## INJUNCTION

      8.     The Claimant shall be forever barred, estopped, and enjoined from asserting against the Debtors other than on the terms and conditions forth in this Stipulation and in the Settlement Agreement any other or additional claims, liabilities or causes of action arising from or related to the Rowe Property of any nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise.

## NECESSARY ACTIONS

      9.     Upon execution of this Stipulation, the Debtors shall timely file a motion seeking entry of an order (the "Settlement Order") approving the terms of this Stipulation and authorizing the Debtors' execution of the Stipulation.

      10.     After entry of the Settlement Order, the Debtors shall direct the claims agent to record the Allowed Claim (Claim no. 14037) as an allowed, contingent and unliquidated claim and to record Claim No. 1641 as disallowed and expunged for all purposes, each on the terms and conditions set forth in this Stipulation.

6

## MISCELLANEOUS

11.    **Court Approval**.    Notwithstanding the foregoing, this Stipulation and the Debtors' signature hereon shall not become effective and binding until the Bankruptcy Court enters the Settlement Order.

12.    **Integration**.    This Stipulation and any other documents to be executed in connection herewith shall constitute the sole and complete agreement of the parties hereto with respect to the matters addressed herein.

13.    **Amendment**.    This Stipulation may not be amended except by a writing signed by all parties to this Stipulation.

14.    **Counterparts**.    This Stipulation may be executed in counterparts each of which shall constitute an original and all of which shall constitute one and the same agreement.

15.    **Full Power and Authority**.    Each party executing this Stipulation represents that such party has the full authority and legal power to do so.    This Stipulation may be executed in counterparts and each such counterpart together with the others shall constitute one and the same instrument.    The parties further agree that facsimile signatures hereon shall be deemed to be original signatures.    This Stipulation shall be binding upon and inure to the benefit of each of the parties, and upon their respective assignees, successors and/or partners, including, but not limited to any trustee(s) appointed in the Bankruptcy Cases.

16.    **No Admissions**.    This Stipulation is being entered into solely as a settlement of issues and does not represent an admission by any of the parties of the validity of any liability or defense with respect to the matters set forth herein.

17.    **Headings**.    Headings in this Stipulation are descriptive only, and shall have no legal force or effect.

18.    **Retention of Jurisdiction**.   The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and all matters relating thereto for the duration of the performance of the terms and provisions of this Stipulation for the purpose of enabling any of the parties to apply to the Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Stipulation or to effectuate or enforce compliance with its terms.

**[Nothing further on this Page – Signatures to Follow]**

8

**The following Parties enter into this Stipulation on behalf of:**

| | |
|---|---|
| **Richard C. Rowe, Sr., Richard C. Rowe, Jr., Kathy Marie Tidwell & Indmar Properties LLC** | **W. R. Grace & Co., et al., Debtors** |
| By: _____/s/_____ | By: _____/s/_____ |
| Counsel for the Claimants | William M. Corcoran |
| | Vice President, Public and Regulatory Affairs |
| Stephen R. Tetro | W.R. Grace & Co. |
| Latham & Watkins | 7500 Grace Drive |
| 233 S. Wacker Drive | Columbia, Maryland  21044 |
| Suite 5800 | |
| Chicago, IL 60606 | |
| Telephone: (312) 876-7700 | |
| | |
| Date:  October 1, 2010 | Date:  October 27, 2010 |

# EXHIBIT I

## Settlement Agreement & Amendment

# SETTLEMENT AND INDEMNITY AGREEMENT

## BETWEEN

## W.R. GRACE AND CO.-CONN

## AND

## RICHARD C. ROWE and DONNA M. ROWE, INDMAR PRODUCTS CO., INC., AND HOFFMAN PRODUCTS CO., INC.

### DATED AS OF JUNE 24, 1997

10169AF4
12063311

## SETTLEMENT AND INDEMNITY AGREEMENT

This Settlement and Indemnity agreement (the "Agreement") is made and entered into as of this 24ᵗʰ day of June, 1997, by and between W. R. Grace & Co.-Conn ("Grace"), on the one hand, and Richard C. and Donna M. Rowe, as individuals and as husband and wife (the "Rowes"), Indmar Products Co., Inc., and Hoffman Products Co., Inc. (collectively, the "Rowe Entities"), on the other.  Grace and the Rowe Entities, collectively, are the "Parties" hereto, and each of the Parties is referred to from time to time herein as a "Party".

## RECITALS

A.    The Rowes are the fee simple owners of approximately 40.61 acres of real property located in Shelby County, Tennessee as more particularly described as Parcels 204, 205 and 173 (the "Rowe Property").

B.    Grace is the fee simple owner of approximately 181.586 acres of contiguous real property located in Shelby County, Tennessee as Parcel 211 and, as more particularly described in Exhibit 1 to this Agreement (the "Grace Site").

C.    Investigations of the Rowe Property and the Grace Site demonstrate that there has been a release of tetrachloroethylene ("PCE"), trichloroethylene ("TCE"), and their degradation compounds to soil and ground water.  Except to the extent limited by Article 2.1.1 of this Agreement, all PCE, TCE, and their degradation compounds currently in soil and ground water on the Rowe Property (or migrating from the Rowe Property), as well as such PCE, TCE,

-2-

10169AF4
12063311

and their degradation compounds that migrate there in the future, shall be referred to herein as "Contaminants of Concern".

D.    On or about February 5, 1996, the Rowe Entities mailed notice to Grace (the "Notice Letter") of the Rowe Entities intent to file an action in the U.S. District Court for the Western District of Tennessee (the "Action"). The Notice Letter alleged that Grace was the source of the Contaminants of Concern on both the Rowe Property and the Grace Site, and that absent an agreement among the parties the Rowe Entities would seek an injunction pursuant to the Resource Conservation and Recovery act, 42 U.S.C. §6901, et seq., as well as damages under common law and response costs under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S. C. §9601, et seq. Grace does not dispute that Contaminants of Concern have migrated from the Grace Site to the Rowe Property but denies liability.

E.    The Rowes represent that no solvents or other substances containing any Contaminants of Concern were utilized on the Rowe Property by the Rowe Entities since the Rowes acquired the Rowe Property or, to the best of the Rowes' knowledge, by any other person prior to the Rowes' ownership of the Rowe Property.

F.    The Parties wish to resolve all claims and counterclaims related to the Contaminants of Concern which they could have asserted against one another in the Action without the cost and diversion of resources that litigation would entail.

NOW, THEREFORE, in consideration of the agreements and mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties mutually warrant and agree as follows:

## AGREEMENT

ARTICLE 1: CASH PAYMENT

1.1    Within fourteen (14) days of execution of this Agreement, Grace shall pay the Rowes the sum of $410,000.

ARTICLE 2: INDEMNIFICATION AND RELEASE

2.1    Indemnity.  Except as set forth below in Section 2.1.1 and Section 2.3, Grace shall indemnify, protect, and hold harmless the Rowe Entities from any liability, claims, demands, damages, loss, costs and/or expenses, including without limitation attorneys' fees and technical fees, incurred by the Rowe Entities in connection with, or as a result of, (i) the Contaminants of Concern, and (ii) any breach of or failure fully to perform any obligations of Grace pursuant to this Agreement.  The Rowe Entities shall indemnify and hold harmless Grace from any liability, claims, demands, damages, loss, costs and/or expenses, including without limitation attorneys' fees and technical fees, incurred by Grace in connection with, or as a result of, any breach of or failure fully to perform any obligations of the Rowe Entities pursuant to this Agreement.  The indemnification obligations of the Parties under this Section shall survive indefinitely and shall be unlimited as to amount.

-4-

10169AF4
12063311

2.1.1  Limitations on Grace Indemnity.  Grace's obligation to indemnify, protect, and hold harmless the Rowe Entities as set forth above in Section 2.1 shall not extend to liability, claims, demands, damages, loss, costs and/or expenses incurred by the Rowe Entities as a result of Contaminants of Concern discovered on the Rowe Property after the record decision ("ROD") for the Grace Site is issued by the Tennessee Department of Environment and Conservation, Division of Superfund ("TDEC/DSF") to the extent Grace is not the source of such Contaminants of Concern.  In addition, to the extent the cost of the Response Action (defined below) is increased in an amount exceeding $100,000 (the "Response Action Excess") as a result of the usage, storage, release, or disposal of a Contaminant of Concern on the Rowe Property between January 1, 1964, and (i) June 9, 1987 (for the Indmar facility) or (ii) April 7, 1989 (for the Hoffman facility), Grace's obligation to indemnify, protect, and hold harmless the Rowe Entities as set forth above in Section 2.1 shall not extend to liability, claims, demands, damages, loss, costs and/or expenses incurred by the Rowe Entities for the Response Action Excess.  Grace's responsibility to implement the Response Action is similarly limited in Article 3.1.1 of this Agreement.

2.2  Notice and Right to Defend.  Any Party seeking indemnification ("Indemnitee") shall promptly inform the indemnifying Party of its claim after obtaining knowledge of facts supporting such claim.  Failure to provide prompt notice shall defeat an indemnification claim solely to the extent the late notice prejudices the rights of the indemnifying party.  After a claim for indemnification is made pursuant to this subparagraph, the indemnifying party shall either accept or reject the claim within 15 days of receipt.  If the indemnifying party

-5-

agrees to indemnify the claim, the indemnifying party shall have the right to defend the claim with competent counsel of its choice, subject to the Indemnitee's approval (such approval not to be unreasonably withheld). The Indemnitee shall cooperate fully with the indemnifying party's defense of the asserted claim, and shall provide reasonable assistance, including but not limited to the production of records and the provision of access to any property, to the indemnifying party's claim.

2.3    Mutual Release. Except as provided in this Agreement, each Party, as well as its parents, subsidiaries, and affiliates, do hereby forego, release and forever discharge the other Party, its past and present principals, employees, associates, owners, stockholders, affiliates, parents, subsidiaries, divisions, branches, departments, agencies, predecessors, successors, heirs, assigns, devisees, agents, directors, officers, representatives, lawyers, predecessors in interest and all persons acting by, through, under or in concert with them (collectively, the "Releasees") of and from any and all actions, grounds for complaint, causes of action, in law or in equity, in contract, in tort or otherwise, suits, contracts, agreements, promises, liability, claims, demands, damages, loss, cost, expense, defenses, setoffs, or recoupments, of any nature whatsoever, known or unknown, matured or unmatured, which each releasing Party now has or may have in the future against any of the Releasees relating to the Contaminants of Concern, including without limitation any claim relating to the Contaminants of Concern that was asserted or that could have been asserted in the Action, and claims that are not now in the contemplation of the Parties or that arise following the execution of this Agreement. Notwithstanding the foregoing, (i) nothing herein shall constitute a release by any

10169AF4
12063311

Party of any person other than the Releasees from any claims whatsoever, and each Party hereby expressly reserves any and all rights it may have against any such persons; and (ii) nothing herein shall constitute a release by any Party of and from any future claims which are not covered by Grace's indemnity obligation (§ 2.1) or Grace's Response Action obligation (§ 3.1), except that the Parties expressly release any claims against the Releasees for diminution of their property values resulting from the continued presence of Constituents of Concern on the Grace Site or the Rowe Property after completion of the Response Action.

## ARTICLE 3:   RESPONSE ACTION

3.1   Response Action.   The "Response Action" shall mean all actions reasonably necessary to investigate, monitor, remove and/or remediate (if necessary) Contaminants of Concern in accordance with the standards set by those Oversight Agencies that, now or in the future, assert jurisdiction over all or a portion of the Rowe Property or the Contaminants of Concern.   Without limitation, the "Response Action" shall include the use of attorneys and consultants for negotiating the parameters of any investigation, monitoring, removal, or remediation, and includes a "No Further Action" (defined below) letter from TDEC/DSF.

3.1.1  Response Action Limitation.  In addition to the indemnification limitation in Article 2.1.1, to the extent the cost of the Response Action is increased in an amount exceeding $100,000 (the "Response Action Excess") as a result of the usage, storage, release, or disposal of a Contaminant of Concern on the Rowe Property between January 1, 1964, and (i)June 9, 1987 (for the Indmar facility) or (ii) April 7, 1989 (for the Hoffman facility), Grace's

obligation to implement the Response Action as set forth below in Section 3.4 shall not extend to the Response Action Excess.

3.2   Oversight Agency/Agencies. "Oversight Agency" or "Oversight Agencies" shall mean any federal, state, regional or local public agency or agencies or subdivisions thereof with jurisdiction over environmental matters related to the Rowe Property, including, without limitation, TDEC/DSF and the U.S. EPA. The term may include more than one agency.

3.3   Consultants. "Consultants" shall mean Woodward-Clyde, or such other consultants or technical assistants as Grace may utilize in connection with the Response Action.

3.4   Responsibility and Control. Grace will undertake and shall have the sole obligation and responsibility for the Response Action, the decision-making regarding the Response Action, and the relationship with all Oversight Agencies, including without limitation control of all submissions to such agencies and control of what removal or remedy, if any, to propose to such agencies. Such control shall include the right of Grace to contest any decisions of an Oversight Agency to the extent permitted by law so long as such actions are not frivolous.

3.5   Participation Consistent with Control. Grace agrees that the Rowe Entities shall receive copies of all communications with the Consultants or the Oversight Agencies, as well as access to all information generated by the Consultants in connection with the Response Action. The Rowe Entities may not, directly or indirectly, lobby or communicate with Oversight Agencies regarding the Rowe Property in any way that is inconsistent with any position taken by Grace. This bar on direct or indirect lobbying of the Oversight Activities includes but is not limited to a bar on the Rowe Entities participation adverse to Grace's position

-8-

10169AF4
12063311

in any public comment process established by TDEC/DSF in connection with the ROD approval process.

      3.6    <u>Additional Site Work</u>.  Notwithstanding anything herein to the contrary, the Rowe Entities retain the right and authority to undertake at solely their own cost additional remedial or investigative activities at the Rowe Property beyond the Response Action, so long as the additional activities do not directly or indirectly influence, damage, or interfere with the implementation of the Response Action.

      3.7    <u>Government Permits/Authorizations</u>.  Grace shall be responsible for and obtain at Grace's expense all governmental permits and authorizations required by any Oversight Agencies or by law in order to perform the Response Action under this Agreement.  The Rowe Entities shall reasonably cooperate with Grace in applying for an obtaining such permits and authorizations, to the extent the consent of the Rowe Entities or information or materials known to or in the possession of the Rowe Entities are necessary or required in order to obtain such permits or authorizations.  Furthermore, the Rowe Entities shall reasonably cooperate with Grace in implementing reasonable institutional controls on the Rowe Property, to the extent the consent of the Rowe Entities is required.

      3.8    <u>Agency Administrative Orders</u>.  In the event any Oversight Agency issues an administrative order pertaining to investigation or remediation of any Contaminant of Concern which names any of the Rowe Entities, the Rowe Entities may communicate with such agency to the extent necessary to contend that the Rowe Entities are not a proper respondent to the order and should be removed.  Such communication by the Rowe Entities shall not constitute a breach

10169AF4
12063311

of this Agreement. To the extent such order is co-extensive with Grace's obligations under this Agreement with regard to the Response Action, then Grace agrees to support the Rowe Entities' position that they are not a proper respondent to such an order and should be removed. The rights of the Rowe Entities pursuant to this sub-paragraph are without prejudice to their indemnification rights as set forth above in Article 2. Nothing herein shall limit Grace's right to contest a decision of an Oversight Agency as set forth in Section 3.4 above.

## ARTICLE 4: LETTER OF CREDIT

4.1    Amount and Purpose.   In order to ensure the funds are available to complete the Response Action, a letter of credit to benefit the Rowes in the amount of $1,500,000 (the "Letter of Credit") and in the form attached hereto as Exhibit 2 shall be established at The Chase Manhattan Bank, or any substitute bank (the "Bank"), within 30 days of execution of the Agreement. The form of the Letter of Credit is subject to review and approval by the Bank. Grace may request modification of the form from the Rowes. The Rowes shall not unreasonably withhold permission for the requested modifications. Grace shall have the right to request from the Rowe Entities a reduction in the amount of Letter of Credit based on cost estimates of the probable cost of likely future activities on the Rowe Property. Said request shall be forwarded to the Rowe Entities within 30 days after the anniversary of the execution of this Agreement. Rowes' approval of the request shall be in writing and shall not be unreasonably withheld. Any disputes regarding the Letter of Credit, drawings upon the Letter of Credit, or any requested reduction of the amount of the Letter of Credit shall be subject to arbitration pursuant to Section 5.1 below; however, such disputes shall be resolved

-10-

by arbitrators within 45 days after the date on which the last arbitrator is selected. The Letter of Credit shall expire on the date a "No Further Action" letter from TDEC is issued regarding the Contaminants of Concern. "No Further Action" means any written determination by TDEC/DSF that further investigative and/or remedial activities are not necessary for the Constituents of Concern or that groundwater monitoring is the sole and final remedial activity required for the Site. A reservation of rights by TDEC/DSF associated with future investigative or remedial activities shall not be considered a request for further action.

4.2    Conditions Precedent to Draws on the Letter of Credit.

4.2.1  The following shall constitute events of default by Grace for the purpose of making funds available to the Rowes under the Letter of Credit:

(i)    failure of Grace to implement and complete the Response Action pursuant to Article 3 of this Agreement; or

(ii)   receipt by the Rowes of notice from the Bank that the Letter of Credit will expire prior to the issuance of a "No Further Action" letter from TDEC and where no replacement Letter of Credit has been obtained; or

(iii)  the occurrence of an Act of Bankruptcy (as defined below) regarding Grace.

The term "Act of Bankruptcy" means the filing of a petition in, or other commencement of, (a) a bankruptcy or similar proceeding by or against Grace (or any successor or assign thereof) as debtor under Title 7 or Title 11 of the United States Bankruptcy Code or any other applicable federal or state bankruptcy, insolvency or similar law, or (b) any such

-11-

bankruptcy or similar proceeding which subjects the assets of Grace or any such successor or assign to the jurisdiction of the court before which such bankruptcy or similar proceeding is pending. The date of such Act of Bankruptcy is the date such petition was filed or such proceeding was otherwise commenced, as the case may be.

4.2.2 In any event, prior to presenting a draft to the Bank under the Letter of Credit pursuant to Section 4.2.1(i), the Rowes shall deliver to Grace a notice (a "Notice of Claim") in accordance with Section 7.9 of this Agreement (i) certifying that the conditions precedent for utilization of the Letter of Credit have been met; (ii) setting forth in reasonable detail the nature of the claim, the obligation of Grace that has not been fulfilled under Article 3 of the Agreement, including a statement of the elements Response Action that the Rowes believe Grace is obligated to take; and (iii) containing a detailed, itemized estimate of the cost of the Response Action that the Rowes believe that Grace is obligated to take or for which the Rowes believe they are entitled to be paid pursuant to this Agreement.

4.2.3 Grace shall have 30 days from the receipt of such Notice of Claim to: (i) cure the alleged default, provided however, if the default cannot reasonably be cured with 30 days, then Grace shall submit within 30 days a plan acceptable to the Rowes for cure of the default within a reasonable time; or (ii) enter into a written settlement with the Rowes regarding the claim; or (iii) send the Rowes an Arbitration Notice pursuant to Section 5.1 of the Agreement. If Grace fails to cure the default, submit an acceptable plan for cure of the default, send an Arbitration Notice or negotiate a written settlement with the Rowes within such 30 day period, then the Rowes may issue a draft against the Letter of Credit accompanied by the

10169AF4
12063311

required documents. The Rowes shall deliver to Grace a copy of the draft on the Letter of Credit and support documents prior to delivery of same to the Bank.

    4.3   <u>Accounting for Draws Under the Letter of Credit</u>. The Rowes shall maintain a detailed accounting of any amounts drawn under the Letter of Credit and submit a quarterly report of expenditures of such funds to Grace. If the amounts drawn by the Rowes under the Letter of Credit exceed the actual cost of the Response Action, the Rowes shall return such excess amount to Grace within 10 days of receipt of a "No Further Action" letter from TDEC/DSF.

<u>ARTICLE 5: DISPUTE RESOLUTION</u>

    5.1   <u>Arbitration</u>. The Parties shall submit disputes regarding this Agreement to binding arbitration; <u>provided</u> that any such disputes shall first be the subject of informal negotiation between the parties. If such negotiation fails to achieve agreement between the parties, either Party may send written notice (an "Arbitration Notice") to the other party of such Party's intent to submit the issue to arbitration. Upon receipt of an Arbitration Notice, one of the Parties shall promptly refer the matter to an arbitrator mutually agreeable to Grace and the Rowes. If the Parties fail to agree upon an arbitrator within 30 days of receipt of an Arbitration Notice, such arbitration will be undertaken by three arbitrators, one of whom will be selected by Grace, one selected by the Rowe Entities, and the third by the two arbitrators so selected, with the decision to be made by a majority of the arbitrators. Such arbitration will be conducted in Memphis, Tennessee in accordance with the rules and regulations of the American Arbitration Association and otherwise in such manner as the arbitrator(s) will determine, with the benefit

10169AF4
12063311

of such independent investigation of the facts as the arbitrator(s) may undertake. The arbitrator(s) will designate the Party (or Parties) to bear the expense of such arbitration. The arbitrator(s) will render his (their) written decision within 120 days after the date on which the arbitrator is selected by mutual agreement of the Parties or, if three arbitrators are used, within 120 days after the date on which the last arbitrator is selected. The determination of the arbitrator(s) as to any matter submitted to arbitration pursuant to this Agreement will be final, binding, non-appealable, and subject to enforcement in the Chancery Court of Shelby County, Tennessee, or in United States District Court for the Western District of Tennessee, Western Division.

ARTICLE 6:  SITE ACCESS

6.1    License.  The Rowe Entities hereby grant to Grace and its employees, agents, consultants, attorneys, engineers, contractors and subcontractors (collectively, "Grace's Representatives") a non-exclusive license to enter upon, in and below the surface of the Rowe Property to complete any necessary Response Action. Grace shall provide reasonable compensation to the Rowes associated with physical damage to the Rowe Property. Physical damage shall not include impacts to the Rowe Property which are known to be associated with the performance of the Response Action. Grace shall also provide reasonable compensation to the Rowes for the fair market value for the use of above-ground space, and reasonable compensation if the implementation of the Response Action interferes with the current use of the Rowe Property. No compensation will be due if the Response Action includes a restriction of

10169AF4
12063311.

future use of the Rowe Property to non-residential use. In the event of a dispute regarding compensation due, the dispute shall be subject to arbitration pursuant to Section 5.1 above.

6.2    Term of License. The term of the license granted herein shall commence upon the execution of this Agreement by all parties and shall continue until all of the activities required to complete the Response Action are completed.

6.3    Notice of Entry. Grace shall advise the Rowe Entities of the anticipated schedule for activities at the Site and of Grace's Consultants' intention to enter the Site to conduct work at least five (5) business days before beginning such activities. Such notification must be written and, except for routine or ongoing activities, shall include the approximate number, categories and affiliations or Grace's Representatives expected to be on the Site and the dates of such work. Grace's Representatives shall "log in" and "log out" at the reception desk of Indmar Products Co. and shall enter the Site only during the term of this license agreement and only during normal business hours unless other arrangements have been made in advance with the Rowe Entities. The Rowe Entities reserve the right to require that work be done at times other than normal business hours, if in the Rowe Entities' reasonable discretion, the work will unduly disrupt plant operations if conducted during normal business hours. All those who enter the Site shall do so at their own risk and shall execute a waiver and release which waives and releases the Rowe Entities from any and all liability resulting from personal injuries and/or property damages sustained while on Site. It shall be the responsibility of Grace to maintain the waivers and releases on file for periodic inspection by the Rowe Entities or their designated representative from time to time during the execution of the Response Action and upon request

10169AF4
12063311

to provide copies of any and all waivers and releases. Grace shall indemnify, protect, and hold harmless the Rowe Entities from any liability, claims, demands, damages, loss, costs and/or expenses, including without limitation attorneys' fees and technical fees, incurred by the Rowe Entities in connection with, or as a result of, Grace's failure to obtain and/or maintain the required waivers and releases.

6.4.    The Rowe Entities' Right To Attend Sampling and Other Activities. The Rowe Entities shall have the right to be present or have its agents and/or representatives present during any or all of the execution of the work at the Rowe Property, including, without limitation, the right to observe sampling and other activities and to obtain split samples (at the Rowe Entities' expense); provided, however, that in no event shall such present, review and/or audit unreasonably delay, obstruct or otherwise unreasonably interfere with Grace's timely performance of the Response Action under this Agreement.

6.5.    Removal of Equipment and Restoration of Property. Grace shall have present on the Rowe Property only such equipment, materials and personnel as are reasonably necessary for conducting the Response Action under this Agreement. At such time as the Response Action or any portion thereof is completed, then Grace shall promptly remove any and all equipment and materials used in conducting the Response Action or portion thereof. Grace shall, to the extent practicable, restore the Site to the same condition as existed a the time of the commencement of the work, including, without limitation, the filling of any borings with proper material, removal or all samples, waste, soil cuttings and other contaminated soil, water or other hazardous materials, repairs of any damaged buildings, curbs, walkways, and regrading or

resurfacing of any holes, ditches or other indentations, as well as mounds or inclines caused by drilling.

6.6    Standard of Work Performed/Compliance with Laws.    Grace warrants, represents and agrees that the methods of performing the Response Action under this Agreement will conform to professional standards generally applied by environmental and other appropriate consulting firms involved in similar environmental work in the Memphis, Tennessee area.    Grace shall comply with, and shall cause all of their Consultants to comply with, all applicable State, Federal and local laws, regulations and requirements.

6.7    Insurance.    Grace agrees to cause the Consultants to carry and keep in force during the performance of the Response Action the following insurance and all insurance that may be required under the applicable laws, ordinances and regulations of any governmental authority.    If any employee of Grace (as distinguished from Consultants) seeks access to the Rowe Property, Grace also agrees to carry and to keep in force during the performance of the Response Action the following insurance and all insurance that may be required under the applicable laws, ordinances and regulations of any governmental authority.

(i)    Worker's Compensation insurance is statutory limits as prescribed by applicable law covering all liabilities owed for compensation and other benefits under the relevant state and federal worker's compensation laws, and Coverage B Employer's Lability Insurance in the amount of $1,000,000, both the aforementioned statutory coverage and Coverage B containing endorsements naming the Rowe Entities as Alternate Employer, providing for voluntary compensation coverage and for occupational disease coverage.

-17-