(ii)   Comprehensive General Liability/Bodily Injury and Property Damage Insurance covering all activities under the Agreement including the following supplementary coverage: (a) Contractual Liability to cover the liability assumed under this Agreement including the indemnity obligation included herein; (b) broad form Property Damage Liability Insurance; (c) coverage for explosion, collapse and underground hazards, for work performed by the consultant involving equipment or materials of a volatile incendiary or explosive nature or involving excavation, drilling or subsurface activity; and (d) sudden and accidental pollution insurance.  The limit of liability for such insurance shall not be less than $1,000,000 combined single limit per occurrence.

(iii)   Automobile Bodily Injury and Property Damage Liability Insurance covering all owned, non-owned, and hired automobiles used in the performance of this Agreement.  The limits of liability of such insurance shall be not less that $1,000,000 per person/$1,000,000 per occurrence of Bodily Injury and $300,000 per occurrence of Property Damage.

(iv)   Umbrella liability insurance which is as broad as the primary policies outlined above providing $5,000,000 per occurrence in the aggregate with the coverages listed above.

All policies referred to above shall include an endorsement waiving the underwriters' rights of subrogation against the Rowe Entities, shall be endorsed to provide that the coverage afforded is primary irrespective of other applicable insurance, shall provide that all deductibles shall be for the account of Grace and/or the Consultant.  Should any of the policies referred to in this Section 6.7 be canceled prior to the expiration date of said policy, the

-18-

10169AF4
12063311

insurer will endeavor to mail written notice to the certificate holders, including the Rowe Entities, thirty (30) days prior to the cancellation, and shall provide that said insurance shall not be canceled or coverage changed unless thirty (30) days' prior written notice shall have been given to Rowe Entities. All policies referred to above except (i) and shall include the Rowe Entities as an additional insured.

Grace shall deliver certificates of each such insurance policy or policies to the Rowe Entities on or before five (5) business days prior to commencing the Response Action or any other work at the Site pursuant to this Agreement.

## ARTICLE 7: MISCELLANEOUS PROVISIONS

7.1     Confidentiality of Agreement. The existence and terms of this Agreement shall remain confidential; however, nothing herein shall prevent either Party from sharing the terms of the Agreement, except for the amount of the Cash Payment in Article 1, with other persons (such as lenders, potential lenders, purchasers, prospective purchasers, lessees, prospective lessees) with a legitimate business need to know, provide that such persons agree in writing to maintain the Agreement as confidential. Should any Party receive a demand to disclose information related to or provided in connection with this Agreement, the Party receiving the demand (the "Producing Party") shall notify the other Party (the "Objecting Party") within seven (7) days. The Objecting Party shall have seven (7) days to either allow the information to be disclosed or to choose to assume at solely its own cost responsibility for opposing the information request. In the latter case, the Objecting Party shall indemnify, protect, and hold harmless the Producing Party from any liability, claims, demands, damages,

loss, costs, expenses, including without limitation attorneys' fees and technical fees, incurred by the Producing Party in connection with the demand for confidential information.

7.2    No Admission.  Nothing in this Agreement shall be construed as an admission by any Party as to any wrongdoing or liability.

7.3    Entire Agreement.  This Agreement contains the entire agreement between the Parties relating to the transactions contemplated hereby.  All prior or contemporaneous agreements, understandings, representations and statements regarding such transactions, oral or written, are merged herein.

7.4    Incorporation of Recitals.  The recitals set forth above are true and correct and are by this reference incorporated herein.

7.5    No Reliance on Prior Representations.  In entering into this Agreement, the Parties do not rely upon any previous oral, written or implied representations, endorsement, agreement or understanding of any kind.

7.6    Voluntary Execution of Agreement.  The Parties expressly acknowledge and represent that they have voluntarily executed this Agreement and that they have been represented and advised by counsel concerning the negotiation of the terms and conditions of this Agreement.  This Agreement shall not be construed or interpreted against any Party on the basis that such Party drafted a particular provision, parts thereof, or the entirety of this Agreement.

7.7    No Modification or Waiver.  This Agreement may not be altered, amended, changed, terminated, or modified in any respect except in writing.  No waiver by any

-20-

party hereto of any breach or default hereunder shall be deemed a waiver of any other or subsequent breach or default.

      7.8    Authority: No Conflict: Enforceability. Each of the Parties represents and warrants that the person who has executed this Agreement on its behalf has full right, power, authority and capacity to execute this Agreement on that party's behalf; that this Agreement does not conflict with the Articles of Incorporation or other organizational documents, By-laws or other governing documents, other material agreements of such Party, or rules, regulations or laws applicable to such Party; and that this Agreement is enforceable against such Party in accordance with its terms.

      7.9    Notices. All notices required or permitted pursuant to this Agreement shall be in writing and sent both by facsimile and either by personal service, overnight mail or certified mail and addressed to the party for whom it is intended as follows:

**TO ROWE ENTITIES:**

Richard C. Rowe
Indmar Products Co., Inc.
P.O. Box 27184
Memphis, TN 38127

With copies to:

Russell J. Hensley, Esq.
G. Patrick Arnoult, Esq.
The Bogatin Law Firm
860 Ridge Lake Blvd., Ste. 360
Memphis, Tennessee 38120

Cary R. Perlman, Esq.
Latham & Watkins
5800 Sears Tower
Chicago, Illinois 60606

101169AF4
12063311

**TO GRACE:**

Robert J. Medler
W. R. Grace & Co. - Conn
6401 Poplar Avenue
Suite 301
Memphis, TN  38119-4840

With copies to:

James M. Weaver, Esq.
Waller Lansden Dortch & Davis
a Professional Limited Liability Company
511 Union Street, Suite 2100
P. O. Box 198966
Nashville, TN  37219-1760

Any Party may change the address provided in this Section by notice in writing in accordance with this Section to the other Party signed by the appropriate officer of the Party requesting the change.

    7.10  No Assignment of Released Claims.  The Parties hereby represent and warrant that they have not assigned or pledged any claims that were asserted or could have been asserted in the Action or any other claims released herein.  Grace shall not assign any of its obligations pursuant to this Agreement without the written consent of the Rowe Entities.

    7.11  Assignment of Third-Party Claims.  The Rowe Entities hereby transfer, convey and assign to Grace all claims that they may now have regarding the Constituents of Concern and all claims that they may accrue in the future to recover costs or damages related to the Constituents of Concern.  To the extent they are covered by the indemnity in Article 2.1 of this Agreement, Grace shall indemnify, defend and protect the Rowe Entities against any and all claims made against the Rowe Entities regarding the Constituents of Concern by any party

10169AF4
12063311

against whom Grace asserts an assigned claim. Notwithstanding the above, the Rowe Entities do not transfer any present or future claims against third-parties to the extent the liability, claims, demands, damages, loss, costs, expenses, including without limitation attorneys' fees and technical fees, contemplated by such claim falls outside the scope of Grace's indemnity obligations (§ 2.1) and/or Grace's Response Action obligations (§ 3.1) – e.g., claims against third-parties allegedly responsible for limiting Grace's obligations pursuant to Sections 2.1.1 or 3.1.1.

  7.12 <u>Assignment and Binding Nature of Agreement</u>. This benefits and burdens of this Agreement shall be freely assignable by the Rowe Entities. The benefits of this Agreement shall be freely assignable by Grace; however, Grace's duties under this Agreement shall be assignable only with the prior written consent of the Rowes (such consent not to be unreasonably withheld). When assigned or otherwise transferred as a matter of law, this Agreement shall be binding upon an inure to the benefit of the Parties and their respective heirs, legal representatives, successors and assigns, including but not limited to any purchaser of some or all of the Rowe Property. Nothing in this Agreement in intended or shall be construed to confer upon any person other than the Parties hereto and their successors and permitted assigns, any right, remedies or claims under or by reason of the Agreement or any provision contained herein.

  7.13 <u>Further Documents</u>. The Parties hereto, without further consideration, agree to execute and deliver such further documents or instruments and to take such other

actions as may be reasonably necessary to carry out and effectuate the purposes of this Agreement.

7.14   Severability.  In the event that any non-material term, covenant, condition or provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or against public policy, the remaining provisions shall continue in full force and effect.

7.15   No Agency.  Nothing in this Agreement shall be construed to constitute the Parties hereto as partners, joint venturers, or agents of each other.

7.16   Counterparts.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same agreement.

7.17   Applicable Law.  This Agreement shall be construed in accordance with and its validity and effect (including any claims of breach of any of the terms hereof) shall be governed by, laws of the State of Tennessee (without regard to Tennessee law regarding choice of law).

7.18   Captions Not Part of Agreement.  The captions and headings of Articles, Sections, and Subsection in this Agreement are provided for convenience of reference only and are not part of the agreement among the Parties. Such captions and headings shall not affect the application or interpretation of the provisions of this Agreement.

10169AF4
12063311

RICHARD C. ROWE

Date: 6-24-97

Subscribed and sworn to
before me this 24 day
of June, 1997.

(seal)

_____
Notary Public

State of Tennessee

DONNA M. ROWE

Date: 6-24-97

Subscribed and sworn to
before me this 24 day
of June, 1997.

(seal)

_____
Notary Public

State of Tennessee

-25-

10169AF4
12063311

INDMAR PRODUCTS CO., INC.

By Its: _President_

Date: 6-24-97

Subscribed and sworn to
before me this 24 day
of June , 1997.

(seal)

_Notary Public_

State of Tennessee


HOFFMAN PRODUCTS CO., INC.

By Its: _President_

Date: 6-24-97

Subscribed and sworn to
before me this 24 day
of June , 1997.

(seal)

_Notary Public_

State of Tennessee

10169AF4
09063311

-26-

W. R. GRACE & CO. - CONN.

By Its: _ASSISTANT VP_

Date: _7/7/97_

Subscribed and sworn to
before me this _7_ day
of _July_ , 1997.

(seal)

TONI L. DEE
COMMISSION # CC 460457
EXPIRES AUG 21, 1999
BONDED THRU
ATLANTIC BONDING CO., INC.

Sworn to and subscribed before me this _7th_
day of _July_ , 19 _97_
_Toni L. Dee_
(Signature of Officer Administering Oath or of Notary Public • State of Florida)
_Toni L. Dee_
(Print, Type, or Stamp Commissioned Name of Notary Public)
Personally Known ☑ or Produced Identification ☐
Type of Identification Produced _____

_Toni L. Dee_
_Toni L. Dee_
Notary Public

State of _Florida_
County of _Palm Beach_

10169AP4
12063311

-27-



EXHIBIT 1

W.R. GRACE
SITE LOCATION

REFERENCE:
USGS 7.5' TOPOGRAPHIC MAP OF
MILLINGTON QUADRANGLE, TENNESSEE-SHELBY CO.
DATED: 1971, PHOTOREVISED; 1983.

0        2000        4000
SCALE IN FEET

REFERENCE: U.S.G.S. 7.5 Topographic Map of
Millington Quadrangle, Tennessee-
Shelby County, 1971, Revised 1983.

# AMENDMENT NO. 1 TO SETTLEMENT AND INDEMNITY AGREEMENT

This Amendment No. 1 to Settlement and Indemnity Agreement (the "Amendment") is made and entered into as of the 30th day of June, 2003, by and between W. R. Grace & Co.-Conn. ("Grace") and Richard C. and Donna M. Rowe, as individuals and as husband and wife (the "Rowes"), Indmar Products Co., Inc. and Hoffman Products Co., Inc. (collectively, the "Rowe Entities"). Grace and the Rowe Entities, collectively, are the "Parties" hereto, and each of the Parties is referred to from time to time herein as a "Party".

## RECITALS

WHEREAS, the Parties are parties to a Settlement and Indemnity Agreement (the "Settlement Agreement") entered into on or about July 7, 1997;

WHEREAS, Section 4.1 of the Settlement Agreement provides for a Letter of Credit (in the form attached as Exhibit 2 to the Settlement Agreement) (the "LOC") to benefit the Rowes and which shall expire "on the date a 'No Further Action' letter from TDEC/DSF is issued regarding the Contaminants of Concern";

WHEREAS, on or about March 9, 2000, TDEC issued a Record of Decision (the "ROD") requiring Grace to conduct annual groundwater sampling ("sampling") with evaluation of natural bioattenuation parameters every 5 years ("5 year evaluation") (such sampling and 5 year evaluation being referred to herein collectively as the "Response Action");

WHEREAS, the Parties disagree as to whether the ROD constitutes a "No Further Action" letter as defined in Section 4.1 of the Settlement Agreement;

894294.1

WHEREAS, the Parties also disagree as to the proper form of the LOC;

WHEREAS, on or about April 2, 2001, Grace filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101 through 1330 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the Bankruptcy Court"), thereby commencing chapter 11 bankruptcy proceedings in the Bankruptcy Court (the "Bankruptcy Case");

WHEREAS, the Parties disagree as to whether the commencement and continuation of the Bankruptcy Case entitles the Rowes to draw on the LOC unless an acceptable resolution to the Parties' disputes is reached; and

WHEREAS, the Parties wish to resolve these disputes without the cost and diversion of resources that arbitration would entail.

NOW THEREFORE, in consideration of the agreements and mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Section 4.1 of the Settlement Agreement is hereby amended and restated in its entirety to read as follows:

4.1    Amount and Purpose

(a)    For purposes of this Section 4.1, but not for purposes of the other Sections of this Agreement, (i) "ROD" shall mean the Record of Decision issued by the TDEC/DSF on or about March 9, 2000, requiring Grace to conduct annual groundwater sampling ("sampling") with evaluation of natural bioattenuation parameters every 5 years ("5

year evaluation"), as modified; and (ii) "Response Action" means such sampling and 5 year evaluation, as modified by any modification of the ROD.

(b)    In order to ensure that the funds are available to complete the Response Action, a letter(s) of credit in favor of the Rowes (the "Letter of Credit") issued by Wachovia Bank, National Association, f/k/a Wachovia Bank, N.A., or another bank reasonably acceptable to the Rowes (the "Bank") shall be maintained as provided in this Section. The Letter of Credit shall contain the terms and conditions set forth in Irrevocable Standby Letter of Credit No. LC870-090133 dated September 8, 1997, and issued by Wachovia Bank, National Association, f/k/a Wachovia Bank, N.A., as amended to reduce the amount thereof to $460,000 and incorporate the other items set forth in Exhibit 1 attached hereto.  The form of the Letter of Credit is subject to review and approval by the Bank.  Grace may request modification of the form from the Rowes.  The Rowes shall not unreasonably withhold permission for the requested modification.  The amount of the Letter of Credit shall be reduced on July 1 of each year commencing July 1, 2003, as set forth in the Schedule 1 attached to Exhibit 1 hereto, which reductions reflect Grace's good faith estimates of the cost of sampling and evaluation required by the ROD.  In addition, after the submission of the results of the sampling and 5 year

evaluation in 2003, or at any subsequent 5 year evaluation, the parties shall terminate the Letter of Credit if TDEC/DSF does not require additional sampling or evaluation or other action that increases the estimated costs of the Response Action beyond the estimated cost of the Response Action in effect at the time of the 5 year evaluation. If, in response to the 2003 sampling and evaluation results, or in response to any subsequent 5 year evaluation, TDEC/DSF requires action that results in an increased estimated cost for the Response Action, then, unless the Letter of Credit already shall have expired: (i) Grace shall provide a revised good faith estimate of the amount of the unpaid cost for the Response Action; (ii) the existing Letter of Credit shall be increased to an amount equal to the lesser of (A) the amount of such revised estimate or (B) $460,000 (less any draws theretofore made); (iii) if the amount of such revised estimate is in excess of $460,000 (less any draws theretofore made), Grace shall provide a Letter of Credit to cover the amount of such excess; and (iv) the  annual reduction schedule shall be recalculated based on such revised estimate.  Any disputes regarding the Letter of Credit, drawing upon the Letter of Credit, or this Agreement shall be subject to arbitration pursuant to Section 5.1 of this Agreement; however, such disputes shall be resolved by arbitrator(s) within 45 days after the date on which the last arbitrator is selected.  The Parties shall also terminate the Letter of

894294.14

Credit if TDEC/DSF issues a letter that eliminates Grace's obligations to conduct any further Response Action. A reservation of rights by TDEC/DSF associated with future investigative or remedial activities shall not be considered a Response Action.

2.    Section 4.2.1 of the Settlement Agreement is hereby amended to add the following sentence immediately following existing Section 4.2.1(iii):

Notwithstanding item (iii) above, Grace's voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101 through 1330) filed April 2, 2001 in the United States Bankruptcy Court for the District of Delaware and the continuation of the proceedings commenced by such filing (the "Pending Bankruptcy") shall not constitute an event of default hereunder for purposes of making funds available under the Letter of Credit or otherwise unless and until Grace seeks court approval to reject this Amendment or the Settlement Agreement as amended by this Amendment pursuant to section 365 of the Bankruptcy Code, in which case the Pending Bankruptcy shall constitute an event of default hereunder for purposes of making funds available under the Letter of Credit or otherwise.

3.    The Settlement Agreement is hereby amended to add a new Section 4.2.4 as follows:

4.2.4  In the event of a draw on the Letter of Credit by means of certificate in the form of Annex B or C thereto, the Rowes shall deposit the proceeds of the draw in a separate, interest-bearing account, and the interest

shall be paid to Grace on a quarterly basis. The Rowes shall withdraw money from the account only for purposes of completing the Response Action in accordance with the terms of this Agreement and the ROD. The Rowes shall account to Grace on an annual basis for such withdrawals, and pay over to the Bank issuing the Letter of Credit (or, if all of Grace's obligations to the Bank in respect of draws on the Letter of Credit have been paid in full, to Grace) all amounts in the account that were drawn on the Letter of Credit (including interest on such amounts) within ten (10) days after receipt of a letter from TDEC that eliminates Grace's obligations to conduct any further Response Action.

4.    The initial word of Section 4.3 ("The") is hereby deleted and replaced by the following words: "Except as otherwise provided in Section 4.2.4, the ".

5.    The Rowes agree that the pre-petition nature of their claims in the Bankruptcy Case will remain unchanged by the execution of this Amendment and that any claims under the Settlement Agreement as amended by this Amendment shall be treated as general unsecured claims. Grace hereby represents that it has no present intention to reject this Amendment or the Settlement Agreement as amended by this Amendment. Grace acknowledges and agrees that in the event that Grace does seek court approval to reject this Amendment or the Settlement Agreement as amended by this Amendment, the automatic stay shall not prevent the Rowes from drawing on the Letter of Credit in accordance with Annex C thereto (as amended by this Amendment). The Rowes agree that as soon as reasonably

practicable, and in any event within sixty days after the date of this Amendment, they will amend the proofs of claim that they have filed in the Pending Bankruptcy to reflect the provisions of this Amendment.

6.    As modified hereby, the Settlement Agreement shall remain in full force and effect.

7.    This Agreement may be signed in counterparts.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

RICHARD C. ROWE

Subscribed and sworn to before me this _10_ day of _December_ 2003.

(seal)

Notary Public _Barbara S. Downing_
State of _TN_____



DONNA M. ROWE

Subscribed and sworn to before me this _10th_ day of _DEC_, 2003.

(seal)

Notary Public _Barbara S. Downing_
State of _TN_____

894294.17

INDMAR PRODUCTS CO., INC.

By its _Chairman Chief_

Subscribed and sworn to before me this _12_ day of _December_ 2003.

(seal)

Notary Public _Barbara S. Downing_
State of _TN_

HOFFMAN PRODUCTS CO., INC.

By its _President_

Subscribed and sworn to before me this _12_ day of _Dec_, 2003.

(seal)

Notary Public _Barbara S. Downing_
State of _TN_

W. R. GRACE & CO. - CONN.

By its_____

Subscribed and sworn to before me this ____ day of _____, 2003.

(seal)

Notary Public _____
State of _____

894294.18

INDMAR PRODUCTS CO., INC.

_____

By its_____

Subscribed and sworn to before me this ___ day of _____, 2003.

      (seal)

Notary Public _____
State of _____


HOFFMAN PRODUCTS CO., INC.

_____

By its_____

Subscribed and sworn to before me this ___ day of _____, 2003.

      (seal)

Notary Public _____
State of _____


W. R. GRACE & CO. - CONN.

*Robert M. Tarola*

By its _SR. VP - CFO_

Subscribed and sworn to before me this _21st_ day of _November_, 2003.

      (seal)

Notary Public _V. BRIDGET SARIKAS_ / *V. Bridget Sarikas*
State of _MARYLAND_____
_Commission Expires on Feb. 1, 2007_

894294.18

EXHIBIT 1

<u>Amendments to Irrevocable Standby Letter of Credit
No. LC870-090133 dated September 8, 1997,
and issued by Wachovia Bank, National Association,
f/k/a Wachovia Bank, N.A. (the "LOC")</u>

1.  The heading and first paragraph of the LOC shall be amended to read as follows:

IRREVOCABLE STANDBY LETTER OF CREDIT NO.: LC870-090133

SEPTEMBER 8, 1997

| | |
|---|---|
| **BENEFICIARY:**<br>RICHARD C. ROWE & DONNA M. ROWE<br>5400 OLD MILLINGTON ROAD<br>MILLINGTON, TN 38127 | **APPLICANT:**<br>W. R. GRACE & CO.-CONN.<br>7500 GRACE DRIVE<br>COLUMBIA, MD 21044 |
| | AMOUNT: EXACTLY 460,000.00<br>EXACTLY FOUR HUNDRED SIXTY<br>THOUSAND AND 00/100'S ONLY US<br>DOLLARS |
| THIS LETTER OF CREDIT BECAME<br>EFFECTIVE JUNE 30, 1997 | EXPIRATION: JUNE 30, 1998<br>OR ANY FUTURE EXTENDED DATE<br>AS PROVIDED HEREIN<br>AT OUR COUNTERS FOR PAYMENT |

WE, WACHOVIA BANK, NATIONAL ASSOCIATION, F/K/A WACHOVIA BANK, N.A. (THE "BANK"), HEREBY ESTABLISH OUR IRREVOCABLE LETTER OF CREDIT, NUMBERED AS INDICATED ABOVE, FOR AMOUNTS NOT TO EXCEED IN THE AGGREGATE OF FOUR HUNDRED SIXTY THOUSAND DOLLARS ($460,000.00), IN YOUR FAVOR, AT THE REQUEST AND FOR THE ACCOUNT OF W. R. GRACE & CO.-CONN. ("GRACE") IN SATISFACTIONS OF CERTAIN OBLIGATIONS TO YOU UNDER THAT CERTAIN SETTLEMENT AND INDEMNITY AGREEMENT, DATED AS OF JUNE __, 1997, AS AMENDED BY AMENDMENT NO. 1 DATED JUNE 30, 2003 (THE "SETTLEMENT AGREEMENT"), BY AND BETWEEN YOU AND GRACE. THIS LETTER OF CREDIT IS IN THE AMOUNT OF FOUR HUNDRED SIXTY THOUSAND DOLLARS ($460,000.00) AND IS AVAILABLE TO YOU BY SIGHT DRAFT OR SIGHT DRAFTS DRAWN UPON US FOR SAID AMOUNT OR LESS, EFFECTIVE IMMEDIATELY, SUBJECT TO THE TERMS AND CONDITIONS SET FORTH HEREIN.

2. After the first paragraph of the LOC, a new second paragraph shall be added to read as follows:

THE AMOUNT OF THE LETTER OF CREDIT SHALL BE REDUCED ON JULY 1 OF EACH YEAR COMMENCING JULY 1, 2003, AS SET FORTH IN SCHEDULE I ATTACHED HERETO.

REFERENCE IS HEREBY MADE TO ACTION REQUIRED TO BE TAKEN (THE "RESPONSE ACTION") UNDER THE RECORD OF DECISION ISSUED BY THE TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION, DIVISION OF SUPERFUND ("TDEC/DSF") ON OR ABOUT MARCH 9, 2000, REQUIRING GRACE TO CONDUCT ANNUAL GROUNDWATER SAMPLING ("SAMPLING") WITH EVALUATION OF NATURAL BIOATTENUATION PARAMETERS EVERY 5 YEARS, AS MODIFIED (THE "ROD"). IF YOU AND GRACE NOTIFY THE BANK IN WRITING THAT IN RESPONSE TO THE 2003 SAMPLING AND EVALUATION RESULTS UNDER THE ROD, OR IN RESPONSE TO ANY SUBSEQUENT 5 YEAR EVALUATION UNDER THE ROD, TDEC/DSF REQUIRES ACTION THAT RESULTS IN AN INCREASED ESTIMATED COST FOR THE RESPONSE ACTION, THEN, UNLESS THIS LETTER OF CREDIT SHALL HAVE EXPIRED BEFORE RECEIPT OF SUCH NOTICE, THIS LETTER OF CREDIT SHALL INCREASE TO AN AMOUNT SPECIFIED BY GRACE AND THE BENEFICIARY NOT TO EXCEED $460,000 (LESS ANY DRAWS THERETOFORE MADE HEREUNDER).

3. Annex B to the LOC shall be amended as follows:

(a) Paragraphs (4) and (5) shall be deleted in their entirety,

(b) Paragraph (3) shall be renumbered as paragraph (4).

(c) After paragraph (2), a new paragraph (3) shall be added to read as follows:

(3) NO REPLACEMENT LETTER OF CREDIT HAS BEEN PROVIDED.

(d) Paragraph (6) shall be renumbered as paragraph (5) and further amended to read as follows:

(5) THE UNDERSIGNED HAVE DELIVERED TO GRACE A COPY OF THE DRAFT AND SUPPORTING DOCUMENTS AT LEAST FIVE BUSINESS DAYS PRIOR TO DELIVERY OF SAME TO THE BANK.

(e) Paragraph (7) shall be renumbered as paragraph (6).

(f)  Paragraph (8) shall be renumbered as paragraph (7).

4.  Annex C to the LOC shall be amended as follows:

(a)  Paragraph (4) shall be amended and restated in its entirety to read as follows:

        (4)     AN EVENT OF DEFAULT UNDER SECTION 4.2.1(iii) OF THE SETTLEMENT AGREEMENT HAS OCCURRED AND IS CONTINUING.

(b)  Paragraphs (5) and (6) shall be deleted in their entirety.

(c)  Paragraph (7) shall be renumbered as paragraph (5) and further amended to read as follows:

        (5) THE UNDERSIGNED HAVE DELIVERED TO GRACE A COPY OF THE DRAFT AND SUPPORTING DOCUMENTS AT LEAST FIVE BUSINESS DAYS PRIOR TODELIVERY OF SAME TO THE BANK.

(d)  Paragraph (8) shall be renumbered as paragraph (6).

(e)  Paragraph (9) shall be renumbered as paragraph (7).

(f)  Paragraph (10) shall be renumbered as paragraph (8).

## ·SCHEDULE  1

### (Schedule for Reduction of Letter of Credit)

| Year | Reduction in Letter of Credit |
|------|-------------------------------|
| *July 1,* 2003 | *460,000* $40,000 |
| 2004 | $20,000 *400,001)* |
| 2005 | $20,000 |
| 2006 | $20,000 |
| 2007 | $20,000 |
| 2008 | $40,000 |
| 2009 | $20,000 |
| 2010 | $20,000 |
| 2011 | $20,200 |
| 2012 | $20,000 |
| 2013 | $40,000 |
| 2014 | $20,000 |
| 2015 | $20,000 |
| 2016 | $20,000 |
| 2017 | $20,000 |
| 2018 | $40,000 |

894294.112

**GRACE**

John A. McFarland
Senior Corporate Counsel

W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

Tel.: 410/531-4222
Fax: 410/531-4783
john.mcfarland@grace.com

February 9, 2004

**BY AIRBORNE EXPRESS**
Wachovia Bank, N.A.
401 Linden Street, First Floor
Winston-Salem, NC 27101

<u>Amendment to Standby Letter of Credit No. LC870-090133</u>
<u>Consent by W. R. Grace & Co.-Conn.</u>

Ladies and Gentlemen,

    I am enclosing a copy of the captioned Amendment, with the consent thereto signed on behalf of W. R. Grace & Co.-Conn.  It is my understanding that you have already received a consent signed by or on behalf of Richard C. Rowe and Donna M. Rowe.

    If you have any questions, please call me or send an e-mail.

Sincerely,

*John A. McFarland*

Copies (by e-mail) to:

    Jill Akre
    Renato Lapidario
    Stephen R. Tetro II
    David Tucker

# WACHOVIA

DECEMBER 17, 2003

## AMENDMENT TO IRREVOCABLE STANDBY LETTER OF CREDIT NO. LC870-090133 DATED SEPTEMBER 8, 1997, AND ISSUED BY WACHOVIA BANK, NATIONAL ASSOCIATION, F/K/A WACHOVIA BANK, N.A. (THE "LOC")

1. THE HEADING AND FIRST PARAGRAPH OF THE LETTER OF CREDIT SHALL BE AMENDED TO READ AS FOLLOWS:

IRREVOCABLE STANDBY LETTER OF CREDIT NO.: LC870-090133

SEPTEMBER 8, 1997

BENEFICIARY:
RICHARD C. ROWE & DONNA M. ROWE
5400 OLD MILLINGTON ROAD
MILLINGTON, TN 38127

APPLICANT:
W.R. GRACE & CO.-CONN.
7500 GRACE DRIVE
COLUMBIA, MD 21044

AMOUNT: EXACTLY $460,000.00 EXACTLY FOUR HUNDRED SIXTY THOUSAND AND 00/100'S ONLY UNITED STATES DOLLARS

THIS LETTER OF CREDIT BECAME EFFECTIVE JUNE 30, 1997

EXPIRATION: JUNE 30, 1998, OR ANY FUTURE EXTENDED DATE AS PROVIDED HEREIN AT OUR COUNTERS FOR PAYMENT

WE, WACHOVIA BANK, NATIONAL ASSOCIATION, D/K/A WACHOVIA BANK, N.A. (THE "BANK") HEREBY ESTABLISH OUR IRREVOCABLE LETTER OF CREDIT, NUMBERED AS INDICATED ABOVE, FOR AMOUNTS NOT TO EXCEED IN THE AGGREGATE OF FOUR HUNDRED SIXTY THOUSAND DOLLARS ($460,000.00), IN YOUR FAVOR AT THE REQUEST AND FOR THE ACCOUNT OF W.R. GRACE &CO.-CONN. ("GRACE"), IN SATISFACTION OF CERTAIN OBLIGATION TO YOU UNDER THAT CERTAIN SETTLEMENT AND INDEMNITY AGREEMENT DATED AS OF JUNE 24, 1997, AS AMENDED BY AMENDMENT NO. 1 DATED JUNE 30, 2003 (THE "SETTLEMENT AGREEMENT"), BY AND BETWEEN YOU AND GRACE. THIS LETTER OF CREDIT IS IN THE AMOUNT OF FOUR HUNDRED SIXTY THOUSAND DOLLARS ($460,000.00) AND IS AVAILABLE TO YOU BY SIGHT DRAFT OR SIGHT DRAFTS DRAWN ON US FOR SAID AMOUNT OR LESS, EFFECTIVE IMMEDIATELY, SUBJECT TO THE TERMS AND CONDITIONS SET FORTH HEREIN.

2. AFTER THE FIRST PARAGRAPH OF THE LETTER OF CREDIT, A NEW SECOND PARAGRAPH SHALL BE ADDED TO READ AS FOLLOWS:

THE AMOUNT OF THE LETTER OF CREDIT SHALL BE REDUCED ON JULY 1 OF EACH YEAR COMMENCING JULY 1, 2005, AS SET FORTH IN SCHEDULE 1 ATTACHED HERETO.

This is a True Copy of the original instrument issued by Wachovia Bank, N.A. on the date noted

CONTINUED ON NEXT PAGE WHICH FORMS AN INTEGRAL PART OF THIS LETTER OF CREDIT AMENDMENT

# WACHOVIA

AMENDMENT TO IRREVOCABLE STANDBY LETTER OF CREDIT NO. LC870-090133      PAGE NO. 2

REFERENCE IS HEREBY MADE TO ACTION REQUIRED TO BE TAKEN (THE "RESPONSE ACTION") UNDER THE RECORD OF DECISION ISSUED BY THE TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION, DIVISION OF SUPERFUND ("TDEC/DSF") ON OR ABOUT MARCH 9, 2000, REQUIRING GRACE TO CONDUCT ANNUAL GROUNDWATER SAMPLING ("SAMPLING") WITH EVALUATION OF NATURAL BIOATTENUATION PARAMETERS EVERY 5 YEARS, AS MODIFIED (THE "ROD"). IF YOU AND GRACE NOTIFY THE BANK IN WRITING THAT IN RESPONSE TO THE 2003 SAMPLING AND EVALUATION RESULTS UNDER THE ROD, OR IN RESPONSE TO ANY SUBSEQUENT 5 YEAR EVALUATION UNDER THE ROD, TDEC/DSF REQUIRES ACTION THAT RESULTS IN AN INCREASED ESTIMATED COST FOR THE RESPONSE ACTION, THEN, UNLESS THIS LETTER OF CREDIT SHALL HAVE EXPIRED BEFORE RECEIPT OF SUCH NOTICE, THIS LETTER OF CREDIT SHALL INCREASE TO AN AMOUNT SPECIFIED BY GRACE AND THE BENEFICIARY NOT TO EXCEED $460,000.00 (LESS ANY DRAWS THERETOFORE MADE HEREUNDER).

2.      ANNEX B TO THE LETTER OF CREDIT SHALL BE AMENDED AS FOLLOWS:

(A)     PARAGRAPHS (4) AND (5) SHALL BE DELETED IN THEIR ENTIRETY.

(B)     PARAGRAPH (3) SHALL BE RENUMBERED AS PARAGRAPH (4).

(C)     AFTER PARAGRAPH (2), A NEW PARAGRAPH (3) SHALL BE ADDED TO READ AS FOLLOWS:

        (3)      NO REPLACEMENT LETTER OF CREDIT HAS BEEN PROVIDED.

(D)     PARAGRAPH (6) SHALL BE RENUMBERED AS PARAGRAPH (5) AND FURTHER AMENDED TO READ AS FOLLOWS:

        (5)      THE UNDERSIGNED HAVE DELIVERED TO GRACE A COPY OF THE DRAFT AND SUPPORTING DOCUMENTS AT LEAST FIVE BUSINESS DAYS PRIOR TO DELIVERY OF SAME TO THE BANK.

(E)     PARAGRAPH (7) SHALL BE RENUMBERED AS PARAGRAPH (6).

(F)     PARAGRAPH (8) SHALL BE RENUMBERED AS PARAGRAPH (7).

3.      ANNEX C TO THE LETTER OF CREDIT SHALL BE AMENDED AS FOLLOWS:

(A)     PARAGRAPH (4) SHALL BE AMENDED AND RESTATED IN ITS ENTIRETY TO READ AS FOLLOWS:

        (4)      AN EVENT OF DEFAULT UNDER SECTION 4.2.1(iii) OF THE SETTLEMENT AGREEMENT HAS OCCURRED AND IS CONTINUING.

(B)     PARAGRAPHS (5) AND (6) SHALL BE DELETED IN THEIR ENTIRETY.

(C)     PARAGRAPH (7) SHALL BE RENUMBERED AS PARAGRAPH (5) AND FURTHER AMENDED TO READ AS FOLLOWS:

        (5)      THE UNDERSIGNED HAVE DELIVERED TO GRACE A COPY OF THE DRAFT AND SUPPORTING DOCUMENTS AT LEAST FIVE BUSINESS DAYS PRIOR TO DELIVERY OF SAME TO THE BANK.

CONTINUED ON NEXT PAGE WHICH FORMS AN INTEGRAL PART OF THIS LETTER OF CREDIT AMENDMENT.

# WACHOVIA

AMENDMENT TO IRREVOCABLE STANDBY LETTER OF CREDIT NO. LC870-090133      PAGE NO. 3

(D)      PARAGRAPH (8) SHALL BE RENUMBERED AS PARAGRAPH (6).

(E)      PARAGRAPH (9) SHALL BE RENUMBERED AS PARAGRAPH (7).

(F)      PARAGRAPH (10) SHALL BE RENUMBERED AS PARAGRAPH (8).

SINCERELY,

_____
AUTHORIZED SIGNATURE
WACHOVIA BANK, NATIONAL ASSOCIATION
LC870-090133
TKP

YOUR CONSENT TO THIS AMENDMENT IS REQUIRED FOR IT TO BECOME EFFECTIVE.  PLEASE SIGN
AND DATE BELOW AND RETURN A COPY TO US AT 401 LINDEN STREET, 1ST FLOOR, WINSTON-SALEM,
NC  27101, ATTENTION STANDBY LETTER OF CREDIT UNIT.

_____          DATE _____
AUTHORIZED SIGNATURE
RICHARD C. ROWE & DONNA M. ROWE

_____          DATE  9 FEB 2004
AUTHORIZED SIGNATURE
WR GRACE & CO CONN



**WACHOVIA**

**SCHEDULE 1**

(SCHEDULE FOR REDUCTION OF LETTER OF CREDIT)

| YEAR | REDUCTION IN LETTER OF CREDIT |
|---|---|
| 2003 | $40,000 |
| 2004 | $20,000 |
| 2005 | $20,000 |
| 2006 | $20,000 |
| 2007 | $20,000 |
| 2008 | $40,000 |
| 2009 | $20,000 |
| 2010 | $20,000 |
| 2011 | $20,200 |
| 2012 | $20,000 |
| 2013 | $40,000 |
| 2014 | $20,000 |
| 2015 | $20,000 |
| 2016 | $20,000 |
| 2017 | $20,000 |
| 2018 | $40,000 |