IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: November 26, 2010 by 4:00 p.m. |
| | ) | Hearing Date: December 13, 2010 at 10:00 a.m. |

## DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN W. R. GRACE & CO. AND ASSOCIATED INTERNATIONAL INSURANCE COMPANY

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order approving the Settlement Agreement and Mutual Release (the "Agreement") by and between W. R. Grace & Co. ("Grace") and Associated International Insurance Company ("Associated"), as further identified

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

and defined in the Agreement.[2] A copy of the Agreement is attached as <u>Exhibit A</u>. In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. Associated issued a single policy of excess liability insurance (defined in the Agreement as the "Subject Policy") that provides, or is alleged to provide, insurance coverage to Grace. The Subject Policy was issued for the period from June 30, 1979 to June 30, 1982. The Subject Policy provides coverage in the amount of $5 million part of a quota share layer of $50 million per occurrence and in the aggregate for each annual period for products and completed operations hazards, all in excess of $100 million underlying limits.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement or in the First Amended Joint Plan of Reorganization, as modified through March 19, 2010, as applicable.

5. Grace has incurred and may incur in the future certain liabilities, expenses and losses arising out of asbestos-related claims, for which Grace seeks coverage under the Subject Policy. Disputes have arisen between Grace and Associated regarding their respective rights and obligations under the Subject Policy with respect to coverage for asbestos-related claims.

6. The First Amended Joint Plan of Reorganization proposed by the Plan Proponents contemplates that Asbestos PI Claims will be enjoined and channeled to the Asbestos PI Trust (the "Trust"). *See* First Amended Joint Plan of Reorganization, as it may be amended, supplemented, or modified from time to time (the "Plan"), Art. 8.2.1. If established as proposed, the Trust will process and resolve Asbestos PI Claims pursuant to the Asbestos PI Trust Distribution Procedures.

7. The Plan further contemplates that Asbestos Insurance Rights, including rights to coverage under the Subject Policy, are to be transferred to the Trust, to be used to fund payment of Asbestos PI Claims. *See* Plan, Art. 7.2.2(d)(ii) and (iv); Plan Ex. 6 – Asbestos Insurance Transfer Agreement.

8. The Agreement confers the following principal benefits upon the Debtors' estate, among others:[3]

(a) The payment by Associated to the Trust of the sum of Nine Million Five Hundred Thousand U.S. Dollars ($9,500,000.00) (the "Settlement Amount") in four equal quarterly installments, beginning within thirty days of the Trigger Date as provided for in the Agreement.

---

[3] The following is only a summary of the most significant terms of the Agreement and is subject in all respects to the provisions of the Agreement itself, attached as Exhibit A, which shall control in the event of any conflict. Interested parties are referred to the Agreement for a more complete understanding of its terms.

DOCS_DE:165185.1

(b) The payment of the substantial sum set forth in subparagraph (a) above without need for litigation to enforce the assignment by Grace to the Trust of rights under the Subject Policy.

(c) A compromise of defenses that Associated might have with respect to coverage for any individual Asbestos PI Claim.

9. The Agreement includes a complete, mutual release of all claims under the Subject Policy and is structured as a sale of property pursuant to Bankruptcy Code section 363.

10. The Agreement further provides that if the Plan is confirmed, the Trust, at its own expense, will enforce the Asbestos PI Channeling Injunction with respect to Asbestos PI Claims subject to the Asbestos PI Channeling Injunction that are asserted against Associated under the Subject Insurance Policy, provided, however, that the Trust's obligation in this respect is limited to expending a sum not to exceed the amount received by the Trust in settlement.

### Relief Requested

11. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

### Basis for Relief

12. This Court has statutory authority to authorize and approve the Debtors' entry into the Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of

claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

13.   Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

14.   The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of

5

reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

15. The Agreement is in the best interests of the Debtors, their estates and their creditors because it resolves all existing and potential future disputes between the parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policy with respect to asbestos-related claims and other claims, and provides substantial monies to fund the payment by the Trust of Asbestos PI Claims. If the Agreement were not approved, the Trust likely would face challenges by Associated to the Trust's entitlement to coverage under the Subject Policy, and additional burden and cost in seeking to obtain the benefits of, and enforcing Grace's rights under, the Subject Policy.

16. Furthermore, Associated is purchasing the Subject Policy in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protections of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding. The negotiation and execution of the Agreement, including the transaction contemplated thereby, was at arm's length and in good faith. The Debtors and Associated have not engaged in any conduct that would permit the Agreement or the sale of the Subject Policy or the transaction contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code. The consideration provided by Associated pursuant to the Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration.

DOCS_DE:165185.1

17.     For all of the foregoing reasons, the Debtors submit that the Agreement is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Agreement.

### Notice

18.     Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative; and (v) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[Remainder of Page Intentionally Left Blank]*

8

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: November 5, 2010

KIRKLAND & ELLIS LLP
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

PACHULSKI, STANG, ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession