# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co. (hereinafter referred to as "Grace") and Associated International Insurance Company (hereinafter referred to as "Associated") (collectively "the Parties").

### WITNESSED THAT:

WHEREAS, Associated issued a policy of insurance that provides, or is alleged to provide, liability insurance coverage to Grace (the "Subject Policy," as defined below); and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials ("Asbestos-Related Claims") and Grace has incurred certain liabilities, expenses and losses arising out of such Asbestos-Related Claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos-Related Claims pursuant to the Subject Policy, and disputes have arisen between Grace and Associated regarding the Parties' respective rights and obligations under the Subject Policy; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co.-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-01139 (JKF), *et seq.* (collectively, the "Bankruptcy Case"), and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, Grace anticipates that a plan of reorganization will be confirmed by the Bankruptcy Court in the Bankruptcy Case and that the plan will provide for the establishment

of one or more trusts pursuant to Section 524(g) of the Bankruptcy Code to process and pay Asbestos-Related Claims involving Grace; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, a full and final settlement that releases and terminates all rights, obligations and liabilities (if any) that the Parties may owe one another under the Subject Policy.

**AGREEMENTS:**

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

**I.**    **Definitions**

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement. Capitalized terms in the prefatory paragraph, recitals, this Definitions section and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization. Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.    <u>Approval Order</u>:  "Approval Order" means an order of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in form and

substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein between the Parties.

B.    <u>Asbestos PI Claims</u>:  "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

C.    <u>Bankruptcy Court</u>:  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

D.    <u>Claim</u>:  "Claim" means:

    1.    "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 101(5);

    2.    "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 524(g)(5); and

    3.    any claim (whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien and any other assertion of liability of any kind.

E.    <u>Committee</u>:  "Committee" means the Official Committee of Asbestos Personal Injury Claimants in the Bankruptcy Case.

F.  <u>Confirmation Order</u>: "Confirmation Order" means an order entered by the Bankruptcy Court in the Bankruptcy Case confirming the Joint Plan of Reorganization, together with any order of the District Court issued pursuant to Section 524(g)(3)(A) of the Bankruptcy Code confirming or affirming such order.

G.  <u>Debtors</u>: "Debtors" has the meaning set forth in the Joint Plan of Reorganization.

H.  <u>District Court</u>: The term "District Court" means the United States District Court for the District of Delaware.

I.  <u>Effective Date</u>: The term "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

J.  <u>Entity</u>: The term "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

K.  <u>Execution Date</u>: The term "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

L.  <u>Final Order</u>: "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed

has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

M.    Futures Representative:  "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

N.    Grace: "Grace" means W. R. Grace & Co.

O.    Grace Group:  "Grace Group" means Grace, the past and present subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents and employees of Grace and of such subsidiaries and affiliates, and any other Entity that was insured under the Subject Policy and on whose behalf Grace has the power to release Claims under the Subject Policy.

P.    Joint Plan of Reorganization:  "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders as modified through March 19, 2010, including all exhibits thereto, and as such plan may be further modified from time to time.

Q.    Settlement Amount:  "Settlement Amount" means the total sum of Nine Million Five Hundred Thousand United States Dollars ($9,500,000.00).

R.    Subject Policy:  "Subject Policy" means the liability insurance policy number AEL 00208 C issued by Associated to W. R. Grace & Co. for the period June 30, 1979 to June 30, 1982.

S.    Trigger Date.  "Trigger Date" means the last date upon which all of the following have occurred, provided that this Agreement has not previously become null and void pursuant to its terms:

    1.    The Approval Order becomes a Final Order;

    2.    The Confirmation Order becomes a Final Order; and

    3.    The Effective Date occurs.

T.    Trust:  "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee and the Futures Representative.

## II.    Payment of the Settlement Amount

A.    Associated shall pay the Settlement Amount to the Trust in four quarterly installments as follows:

    1.    Within thirty (30) days after the Trigger Date, Associated shall pay to the Trust the sum of Two Million Three Hundred Seventy-Five Thousand United States Dollars ($2,375,000.00) in immediately available funds (the "Initial Payment").  The date upon which Associated makes the payment called for in this Section II.A.1. shall be referred to hereinafter as the "Initial Payment Date."  The Trust will notify Associated in writing that the Trigger Date has occurred within five (5) business days of the Trigger Date.

2.      On or before the three-month anniversary of the Initial Payment Date, Associated shall pay to the Trust the sum of Two Million Three Hundred Seventy-Five Thousand United States Dollars ($2,375,000.00) in immediately available funds.

3.      On or before the six-month anniversary of the Initial Payment Date, Associated shall pay to the Trust the sum of Two Million Three Hundred Seventy-Five Thousand United States Dollars ($2,375,000.00) in immediately available funds.

4.      On or before the nine-month anniversary of the Initial Payment Date, Associated shall pay to the Trust the sum of Two Million Three Hundred Seventy-Five Thousand United States Dollars ($2,375,000.00) in immediately available funds.

B.      Payment of the Settlement Amount to the Trust shall be made in accordance with written instructions to be provided to Associated by the Trust within ten (10) days of the Trigger Date.

C.      Time is of the essence with respect to each and every installment payment set forth above.  If Associated fails timely to make payment in accordance with the foregoing schedule, and fails to cure that failure within ten (10) days of written notice of such failure by the Trust, then Associated shall pay interest to the Trust on the unpaid amount, with interest commencing on the fifth business day after payment is due and ending on the date of payment at the rate of interest per annum announced from time to time during such period by the main office of Citibank, N.A. in New York, N.Y as its "prime rate" plus three percentage points.

D.    The Parties agree that payment of the Settlement Amount to the Trust represents a reasonable compromise of the limits of the Subject Policy that would otherwise be paid out for Asbestos PI Claims, and fully and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits of the Subject Policy.

**III.    Releases**

A.    Release by Grace and the Trust

1.    Upon the Trust's receipt of the Initial Payment in accordance with Section II.A.1. of this Amended Agreement, but subject to the Trust's receiving the entire Settlement Amount in accordance with Section II.A., the Trust and Grace (on behalf of itself, the Debtors, and, to the extent it has the power to bind them, the Grace Group) hereby release, remise, covenant not to sue and forever discharge Associated and its claims service manager, Markel Service, Incorporated, along with their respective predecessors, successors, parents, subsidiaries, divisions, affiliates and assigns solely in their capacities as such, and the shareholders, directors, officers, agents, attorneys, representatives and employees of Associated and Markel Service, Incorporated, solely in their capacities as such, with respect to:

a.    all Claims for insurance coverage and/or other obligations under, based on or arising out of the Subject Policy; and

b.    any Claim based on or arising out of any act, omission, representation or conduct of any sort, including alleged bad faith, breach of an implied warranty of good faith and fair dealing or

unfair claims practice, whether under statute or common law, in connection with the Subject Policy.

2.    GRACE AND THE TRUST ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  GRACE AND THE TRUST EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

B.    Release by Associated

1.    Concurrently upon the Release by Grace and the Trust, as set forth in Section III.A., Associated hereby releases, remises, covenants not to sue and forever discharges the Debtors, the Grace Group and the Trust, and the trustees, officers, agents and employees of the Trust in their capacities as such with respect to:

a.     any Claim and/or other obligations under, based on or arising out of the Subject Policy; and

b.     any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort by Grace or the Trust in connection with the Subject Policy.

2.     ASSOCIATED ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  ASSOCIATED EXPRESSLY ASSUMES THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT IT DOES NOT KNOW OR DOES NOT SUSPECT TO EXIST.

C.     <u>No Release of Obligations Under This Agreement</u>

The releases set forth in Section III.A. and B. do not relieve the Parties of any of their obligations under this Agreement.

D.    Upon the Trust's receipt of the Initial Payment in accordance with Section II.A. of this Amended Agreement, but subject to the Trust's receiving the entire Settlement Amount in accordance with Section II.A., the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Policy, and any and all rights, duties, responsibilities and obligations of the Parties created by or in connection with the Subject Policy are terminated.   The releases contained in this Section III., together with the sale described in Section V.E., are intended to operate as if the Subject Policy had never been issued by Associated.

IV.    **Release of Subrogation and Contribution Claims and Judgment Reduction Clause**

A.    Payments Made Under This Agreement

Associated shall not seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification or otherwise, from anyone other than Associated's reinsurers or retrocessionaires in their capacities as such. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against Associated relating to the Subject Policy, then Associated shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization.   To the extent that Associated recovers any amount from such third party, the net proceeds of such recovery (after any payment made by Associated to such third party on its Claim and after Associated is reimbursed from such proceeds for its fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by Associated promptly to the Trust.   Grace and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

B.      Payments Received From Other Insurers

Following the Trust's receipt of the Initial Payment in accordance with Section II.

of this Agreement, in the event that:

1.      Grace or the Trust, as applicable, and/or any other Entity becomes entitled

to receive a payment from one or more of the insurers other than

Associated for any Claims that have been remised, released, acquitted and

forever discharged as against Associated pursuant to this Agreement, and

2.      As a result of such other insurer's obligation to pay described in Section

IV.B.1. above, such insurer either:

a.      enters into a settlement with Associated, which settlement has been

consented to by Grace or the Trust, as applicable, and any other

Entity (as applicable), requiring Associated to reimburse some or

all of the payment made or to be made by such insurer; or

b.      obtains  a  final,  non-appealable  judicial  or  quasi-judicial

determination or award entitling such insurer to obtain a sum

certain  from  Associated  for  contribution,  subrogation  or

indemnification or other similar Claim, against Associated for its

alleged share or equitable share, or to enforce subrogation rights, if

any, relating to such payment referenced in Section IV.B.1. above,

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be

received by it (referred to in Section IV.B.1. above) by the amount necessary to reduce or

eliminate such settlement, determination or award against Associated (referred to in Section

IV.B.2. above).

To ensure that such a reduction is accomplished, Associated shall be entitled to assert this Section IV. as a defense to any action against it for any such portion of the determination or award against Associated (referred to in Section IV.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Associated from any liability for the determination or award.  Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a Claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section IV.B.1. above, it shall provide notice to Associated of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against Associated and shall consent to Associated's intervention in any such proceeding to the extent that Associated seeks to intervene to effectuate the intent of this Section IV.

## V.    **Bankruptcy-Related Obligations**

### A.    Committee and Futures Representative Approval

Grace shall make a good faith effort to obtain written approval of this Agreement and the releases contained herein from the Committee and the Futures Representative within thirty (30) days of the Execution Date.

### B.    Approval Motion

Promptly following the Execution Date, Grace shall prepare and file a motion to approve this Agreement with the Bankruptcy Court, which motion shall be in form and substance reasonably satisfactory to Associated.  Grace shall use its reasonable best efforts promptly to obtain entry of the Approval Order, and promptly to obtain entry of the Approval Order as a

Final Order. Associated, at its own expense, shall cooperate with Grace in obtaining the Approval Order.

C.    <u>Approval Order</u>

Grace shall use its reasonable best efforts to cause the Court to enter an order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.    That the Agreement shall be designated an Asbestos Insurance Settlement Agreement, and that Associated shall be designated as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

3.    That, upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, the Debtors shall be deemed to have sold, conveyed, assigned, transferred and delivered to Associated, and Associated shall be deemed to have purchased from the Debtors, all rights, title and interests of the Debtors in and under the Subject Policy, free and clear of liens, encumbrances and/or interests of any kind or nature whatsoever, under Section 363(f) of the Bankruptcy Code, and that Associated shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.    That the Trust, upon its creation, shall be bound to the provisions of this Agreement with the same force and effect as if the Trust was a Party to this Agreement from the Execution Date.

D.    <u>Designation as Settled Asbestos Insurance Company</u>

Upon the Approval Order becoming a Final Order, the Debtors shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and Associated as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

E.    <u>Sale Pursuant to Section 363(f)</u>

Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, and without further need for action, the Debtors shall be deemed to have sold, conveyed, assigned, transferred and delivered to Associated, and Associated shall be deemed to have purchased from the Debtors, all rights, title and interests of the Debtors in and under the Subject Policy, free and clear of all liens, encumbrances and/or interests of any kind or nature whatsoever, to the extent permitted under Section 363(f) of the Bankruptcy Code. The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policy.

F.    <u>Withdrawal of Designation of Associated as a Settled Asbestos Insurance Company</u>

In the event that Associated fails timely to make any of the payments to the Trust required by Section II.A. and fails to cure that failure within ten (10) days of written notice of such failure by the Trust, then the Trust may, in its sole discretion, withdraw the designation of this Agreement as an Asbestos Insurance Settlement Agreement, and Associated as a Settled Asbestos Insurance Company eligible for protection under Bankruptcy Code Section 524(g), on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization. In the event that the Trust exercises its discretion to withdraw the designation of Associated as a Settled Asbestos Insurance Company pursuant to this Section V.F., the Trust shall reinstate such designation upon payment

by Associated of the amount due under Section II.A., together with any interest due under Section II.C.

G.    Trust Bound by Agreement

Upon the Effective Date, the Trust shall be bound by this Agreement as if it had been a Party hereto as of the Execution Date.

H.    No Bankruptcy-Related Activities

Effective upon the Execution Date, Associated (1) shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization and initiating or taking discovery) that may hinder, delay or oppose actions of the Debtors, the Committee and/or the Futures Representative in the Bankruptcy Case; and (2) shall not oppose the entry of a Confirmation Order. Upon the Approval Order becoming a Final Order, Associated expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

VI.    **Termination of Agreement**

A.    Automatic Termination

After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.    The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case;

2.    The entry of an order by the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court reversing the Approval Order;

3.    The failure of a Grace plan of reorganization to be confirmed, the failure of the Confirmation Order to become a Final Order or the failure of the

Effective Date to occur, coupled with circumstances that make clear that such events will never occur;

4. The entry of a Confirmation Order that becomes a Final Order that fails to extend protection to Associated as a Settled Asbestos Insurance Company with respect to the Subject Policy pursuant to the Asbestos PI Channeling Injunction;

5. The failure of the Committee or the Futures Representative to consent to the Agreement within thirty (30) days of the Execution Date; or

6. The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and Associated as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section V.D. prior to the Confirmation Order becoming a Final Order.

B. <u>Termination by Associated</u>

Associated, at its sole option, may terminate this Agreement and render this Agreement null and void by providing written notice of termination to Grace, the Committee and the Futures Representative within thirty (30) days of the occurrence of any of the below described conditions of termination:

1. Notice to Associated by Grace, the Committee or the Futures Representative of the entry of an Approval Order that becomes a Final Order that fails to approve the sale of the Subject Policy free and clear of all liens, encumbrances or interests of any kind or nature whatsoever pursuant to Section 363(f) of the Bankruptcy Code; or

2.     The entry of an order by the Bankruptcy Court confirming a Chapter 11 plan of reorganization for the Debtors other than the Joint Plan of Reorganization that materially and adversely affects the interests of Associated under this Agreement.

Failure by Associated to give timely written notice of termination pursuant to this Section VI.B. following the occurrence of one of either of the above conditions of termination shall be deemed a permanent waiver of such condition by Associated.

C.     <u>Effect of Termination</u>

Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective and/or is rendered null and void pursuant to this Section VI.:

1.     This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section VIII.;

2.     None of the Parties shall be bound by the terms of any Approval Order;

3.     This Agreement shall no longer be designated an Asbestos Insurance Settlement Agreement, and Associated shall no longer be designated as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

4.     The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policy, or any other agreement between the Parties relating to the Subject Policy that may have been in effect at the time of the Execution Date, that they would have had absent this Agreement; and

5.    The releases provided in Section III. shall become null and void *ab initio*.

## VII.    Defense of the Asbestos PI Channeling Injunction

A.    Following the Trust's receipt of the Initial Payment, and subject to Section V.F., if any Entity asserts against Associated an Asbestos PI Claim based on or arising under the Subject Policy ("Associated Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to the Associated Channeling Injunction Claim and to obtain a ruling that such Associated Channeling Injunction Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g).    In no event, however, shall the Trust be required to expend an amount greater than that portion of the Settlement Amount that has then been received by the Trust in carrying out its obligation under this Section VII.A.    When the Trust has expended an amount equal to that portion of the Settlement Amount that has then been received by the Trust in defending the application of the Asbestos PI Channeling Injunction to Associated Channeling Injunction Claims, the Trust shall have no further obligation under this Section VII.A.    For the avoidance of doubt, this Section VII.A. shall not obligate the Trust to retain counsel to represent Associated or to pay the costs and expenses, including attorneys' fees, associated with such legal, consulting or expert representation as Associated may choose to engage in connection with any Claim against Associated.

B.    Associated shall promptly notify the Trust in writing of any demand, notice, summons or other process received by Associated that Associated reasonably believes is a Associated Channeling Injunction Claim.    If the Trust determines that a Claim presented by Associated is not an Associated Channeling Injunction Claim, the Trust shall promptly notify Associated and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim.    In the event of a dispute as to whether a Claim triggers

the Trust's obligations under Section VII.A., the Trust and Associated shall meet and confer to attempt to resolve any such dispute. If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction. If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by Associated, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

C.      In the event that Associated fails timely to make any of the payments required by Section II.A. of this Agreement, and fails to cure that failure within ten (10) days of notice of such failure by the Trust, the Trust shall have no further obligation pursuant to this Section VII.

## VIII.  Confidentiality

A.      Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Information") are confidential, shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, and shall not be disclosed by any Party except as permitted in Section VIII.B. and C. below.

B.      The Parties may disclose Information as follows:

1.      The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.      The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3. The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4. The Information may be disclosed by Associated to its reinsurers, directly or through intermediaries;

5. Grace or the Trust may disclose the Information to other insurers and their representatives;

6. The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7. A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8. The Information may be disclosed in any action brought to enforce the terms of this Agreement;

*provided, however,* that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

C. A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government, governmental agency or other authority.

D. In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Section VIII., the Party from whom disclosure is sought shall

immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

## IX.    **Right of Review**

A.    Following the Trust's receipt of the Initial Payment of the Settlement Amount in accordance with Section II.A.1., Associated shall have the right, at its own expense, upon reasonable notice, at a time and place convenient to the Trust, to review records relating to Asbestos PI Claims paid by the Trust solely for the purpose of obtaining reinsurance for any portion of the Settlement Amount, or for compliance with applicable law and regulations. The Trust shall have no obligation to create any new documents or to collect any information in connection with any such review beyond the documents or information ordinarily created or maintained by the Trust, and Associated shall not be permitted to challenge the review, determination or payment of any Asbestos PI Claims by the Trust or the payment of any expenses or costs of the Trust; *provided, however,* that the determination or payment of any Asbestos PI Claim by the Trust shall have no collateral estoppel effect as to Associated with respect to Asbestos PI Claims asserted against Associated by Entities not parties to this Agreement. Notwithstanding any of the foregoing, the Trust shall not be obligated to provide the Social Security Identification Number of any Asbestos PI Claimant beyond the last four digits unless Associated needs the full Social Security Identification Number of particular Asbestos PI Claimants in order to comply with reporting obligations under applicable federal law.

B.    Associated shall not provide any information, documents, notes, or other results of any review undertaken pursuant to Section IX.A. (the "Material") to any other Entity and shall keep any and all such Material confidential. Notwithstanding the foregoing, Associated may provide such Material to its reinsurers, reinsurance intermediaries or reinsurance arbitrators solely for the purpose of collecting reinsurance for any portion of the Settlement Amount;

*provided, however,* that (1) Associated may furnish summaries or reports based on any review undertaken pursuant to Section IX.A. only if it first obtains from such reinsurer, reinsurance intermediaries or reinsurance arbitrators reasonable assurances that they will maintain the confidentiality of the Material and that the reinsurer or reinsurance intermediary will not disclose such Material to any Entity other than such reinsurers' retrocessionaires who have likewise provided such assurances, and (2) Associated may furnish copies of records reviewed pursuant to Section IX.A. only if it first obtains from such reinsurers, reinsurance intermediaries or reinsurance arbitrators a written pledge (which requirement may be satisfied by transmission of an electronic mail message) to maintain the confidentiality of the Material and not disclose such Material to any Entity other than such reinsurers' retrocessionaires who have likewise provided such written pledge. In the event that disclosure of any Material in Associated's possession is sought pursuant to subpoena or other legal process, Associated shall immediately notify the Trust of the request for disclosure and cooperate with the Trust in seeking a protective order regarding the Material. Upon resolution of all reinsurance issues, Associated shall, at the Trust's option, return or destroy all Material.

**X.**    **Non-Prejudice and Construction of Agreement**

A.    This Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage, liability or responsibility under the Subject Policy, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policy.

B.    This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Entities

outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Associated with regard to other insureds, and without prejudice to positions taken by Grace with regard to other insurers, and each Party expressly reserves all of its respective rights with respect to other insureds and insurers except as otherwise expressly provided in this Agreement. The Parties and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement except as expressly provided herein.

C.    Neither the terms of this Agreement nor its negotiation, execution or any act in performance of this Agreement shall be invoked by Associated, Grace or the Trust, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by Associated, Grace or the Trust of any particular interpretation of any insurance policy with respect to any Claim.

D.    The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, and shall not be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another. However, evidence of the existence, terms or negotiation of this Agreement may be offered in an action between the Parties seeking to enforce the terms of this Agreement, or in connection with any litigation, action or other proceeding between Associated and any reinsurer, subject to the provisions of Section VIII.

E.    This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in

the interpretation of any ambiguities against insurers. No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

## XI.   Modification

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

## XII.   Integration

### A.   Entire Agreement

This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, between the Parties with respect hereto. Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms.

B.    Titles and Captions

Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only.  Such titles and captions are intended in no way to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

## XIII.  Governing Law

This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules.  Nothing in this Section XII. shall affect what law would govern the interpretation or application of the Subject Policy.

## XIV.  Representations

Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation (subject, in the case of Grace, to the entry of an Approval Order).  Each Party represents and warrants that the person signing this Agreement on its behalf is authorized to execute this Agreement (subject, in the case of Grace, to the entry of an Approval Order).

## XV.    Execution and Authority

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

## XVI.  Notices

Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class

postage prepaid or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

W. R. Grace & Co.
7500 Grace Drive
Columbia, Maryland  21044
Attn:  General Counsel
Fax:  (410) 531-4545

with a copy to:

Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL  60654
Attn:  Lisa G. Esayian and John Donley
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

If to Associated:

Associated International Insurance Company
c/o Markel Claims Service Center
Markel West Insurance Services
21600 Oxnard Street, Suite 400
Woodland Hills, CA  91367
Attn:  Joseph G. Feely
Fax:  (818) 316-0375

with a copy to:

Traub Lieberman Straus & Shrewsberry LLP
Mid-Westchester Executive Park
7 Skyline Drive
Hawthorne, NY  10532
Attn:  Robert P. Siegel
Fax:  (914) 347-8898

| | |
|---|---|
| If to the Committee: | Caplin & Drysdale Chartered<br>One Thomas Circle, NW<br>Washington, DC 20005<br>Attn: Peter Lockwood<br>Fax: (202) 429-3301 |
| | and |
| | Caplin & Drysdale Chartered<br>375 Park Avenue, 35th Floor<br>New York, New York 10152<br>Attn: Elihu Inselbuch<br>Fax: (212) 644-6755 |
| | with a copy to: |
| | Anderson Kill & Olick, PC<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Attn: Robert Horkovich<br>Fax: (212) 278-1733 |
| If to the Futures Representative: | David T. Austern<br>Asbestos PI Future Claimants'<br>Representative<br>c/o Claims Resolution Management<br>Corporation<br>3110 Fairview Park Drive, Suite 200<br>Falls Church, Virginia 22042-0683<br>Fax: (703) 205-6249 |
| | with a copy to: |
| | Orrick, Herrington & Sutcliffe LLP<br>1152 Fifteenth Street, NW<br>Washington, DC 20005<br>Attn: Roger Frankel<br>Fax: (202) 339-8500 |

## XVI.   **Binding Effect**

This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _Richard C. Finke_

Name: RICHARD C. FINKE

Title: ASSISTANT GENERAL COUNSEL

Date: 11-3-2010

**ASSOCIATED INTERNATIONAL INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

29 of 29

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _____

Name: _____

Title: _____

Date: _____


**ASSOCIATED INTERNATIONAL INSURANCE COMPANY**

By: _____

Name: _____Joseph G Feely_____

Title: _____Supervisor Claims_____

Date: _____11/5/10_____