IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: November 26, 2010** |
| | ) | **Hearing Date: December 13, 2010 at 10:00 a.m.** |

## MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO ACQUIRE ASSETS OF SELLER , INCLUDING LIMITED LIABILITY COMPANY INTEREST IN GR 2008 LLC

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby request authority to acquire all or substantially all the assets of a small start-up technology company ("Seller").[2] Seller's assets include its 50% limited liability company interest in GR 2008 LLC, an Ohio limited liability company ("GR 2008"), of which Debtor W.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Grace has withheld the name of the Seller in order to protect the confidentiality of the proposed transaction. The Seller's name, the identity of its shareholders, key employees and two of its customers has also been redacted in the APA attached hereto. This information will be provided to the Official Committees and FCRs under the appropriate confidentiality protections and to the Court in camera upon request.

R. Grace & Co.-Conn. ("Grace") owns the other 50% limited liability company interest. The aggregate purchase price for the assets is $7,500,000 plus certain contingent payments, pursuant to the Asset Purchase Agreement attached hereto as <u>Exhibit A</u> (the "APA").[3] Grace and Seller formed GR 2008 to exploit the Seller's technology and develop and market products for the concrete industry. The Debtors now wish to obtain exclusive ownership of that technology and the technology developed by and for GR 2008. In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper under 28 U.S.C. § 1408 and 1409.

2. The statutory predicates for this Motion are sections 105(a) and 363(b) of Title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background and Description of the Proposed Transaction

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

---

[3] The APA attached hereto is substantially in final form although redacted as explained herein. The final redacted form of the APA and the Ancillary Agreements will be filed upon their completion. Capitalized terms used but not defined herein are used with the definitions given them in the APA.

*A.*     *Formation and Purpose of Joint Venture*

4.     Pursuant to order of the Court dated October 1, 2008 [Docket Nos. 19373 and 19675], Grace and Seller organized GR 2008 as a joint venture vehicle.

5.     Grace entered into the GR 2008 joint venture because it believed that Seller's technology, on which Seller had filed a number of patents, could be used to develop equipment and software applications of significant value for the concrete industry. Grace is a major supplier of chemical admixtures to the concrete industry, and believed that GR 2008's equipment and software applications would facilitate automated monitoring and control of the concrete mix in concrete mixing devices.

6.     Grace believed that the developed equipment and associated software applications would generate significant revenues for GR 2008 and would also expand the market for admixture chemicals thereby generating significant new revenues and margin for Grace as a leading manufacturer of admixture chemicals. The GR 2008 operating agreement provided that admixture revenues and profits would belong solely to Grace and were specifically excluded from the field of operation contemplated by GR 2008.

7.     Grace also believed that the equipment and software will enable concrete producers to make more efficient use of raw materials in producing more consistent, high value, differentiated, admixture intensive concrete mix designs.

8.     Therefore, Seller provided the basic technology as its chief contribution to the capital of GR 2008, and Grace provided funds for development of the technology and various products, as well as Grace's own technology, expertise and laboratory facilities related to admixtures and management of the physical properties of concrete.

9.     As part of the 2008 transaction, Grace, Seller and GR 2008 entered into a joint development agreement (the "Joint Development Agreement"), under which each of the two

owners provided technology and product development services to GR 2008, and a services agreement (the "Services Agreement"), under which each of the two owners supplied administrative and other services to GR 2008. The Joint Development Agreement provided that the technology developed by GR 2008 and by its owners thereunder would be the property of GR 2008.

10. GR 2008 since has developed novel and valuable proprietary technology related to the sensing and control of concrete properties while the concrete is in ready mix concrete trucks. Grace believes that this technology will enable productivity improvements in the production and delivery of ready mix concrete, and improve the quality and performance of that concrete once it is in place. However, in order to commercialize this technology and capture its value potential, Grace now believes that it is preferable to combine into a single commercial entity, Seller's background technology, the technology developed by and for GR 2008, and Grace's market access and concrete material science expertise.

11. As Grace's traditional admixture technologies become more mature and tend to command less premium pricing in the marketplace, Grace is seeking to expand its technology offerings and value creation potential by commercializing concrete admixtures that utilize process control systems and services in order to offer dramatically improved productivity for ready mix producers, and performance improvement in the installed concrete. In order to implement this strategy, Grace entered into negotiations with Seller to obtain exclusive control of all of the elements necessary to the implementation of the strategy.

B.  *Summary of Terms of Transaction*

12. Grace and/or GR 2008 (collectively, "Buyers") will purchase substantially all of the assets of Seller (the "Subject Assets"), including Seller's 50% interest in GR 2008 and

Seller's 100% interest in its finance subsidiary ( "Finance LLC"). Sellers will also assign to Buyers and Buyers will assume the lease of Seller's facility near Cincinnati, Ohio (the "Lease").

13. Buyers will assume trade payables and other ordinary course current liabilities. Buyers will be indemnified by Sellers against claims arising with respect to non-assumed liabilities of the Subject Assets, including all liabilities of Finance LLC.

14. The purchase price for the Subject Assets will be (a) $7,000,000, subject to a potential downward purchase price adjustment with respect to working capital as outlined in paragraph 2.02(b) of the APA, payable at the Closing; (b) $500,000 payable eighteen months after the Closing Date, subject to deduction for amounts indemnified by Seller under the APA; and (c) up to a maximum of $12,000,000 in contingent payments payable annually as described in the following paragraph 15 herein.

15. For the calendar years ending on each December 31 from December 31, 2011 through the year ending December 31, 2020 (collectively, the "Earnout Period"), Grace and/or GR 2008 will make the following annual payments (collectively, the "Earnout Payments") to the Seller, but in no event will the total Earnout Payments exceed $12,000,000 in the aggregate:

(i)  (A) for each of the calendar years ending December 31, 2011 through December 31, 2015, $200 multiplied by the number of Systems (as defined in the APA) shipped by Grace during that year; and (B) for each of the calendar years ending December 31, 2016 through December 31, 2020, $100 multiplied by the number of Systems shipped by Grace during that year;

(ii) for each of the calendar years ending December 31, 2012 through December 31, 2020, an amount equal to $25 multiplied by the cumulative

number of Systems shipped by Purchaser after December 31, 2011 (excluding the year for which the amount is computed); and

(iii) an amount equal to $50 multiplied by the number of Slump Meters (as defined in the APA) shipped by Purchaser during that year.

16. GR 2008 currently owes Grace approximately $600,000 for deferred payment of Grace's services under the Joint Development Agreement and the Services Agreement. As a condition to the Closing of the transaction, Seller and Grace will each contribute to GR 2008 half the amount of this obligation and GR 2008 will then pay Grace the full amount owing to it under the Joint Development Agreement and the Services Agreement

17. Other conditions to and deliverables for the Closing include the following:

(a) delivery of non-competition agreements by Seller and Seller Major Equity Interest Holders and representatives specified in the APA;

(b) employment agreements with Key Employees;

(c) notification of the transaction by Seller to third parties claiming rights in the proceeds of the transaction;

(d) Grace shall have determined in its sole discretion that there are no intellectual property issues that could have a material adverse effect on the Subject Business or prospects thereof;

(e) Buyers shall have obtained the consent of the Landlord to taking the assignment of the Lease and Court approval for the assumption of the Lease and any other agreements material to the Subject Business;

(f) Buyers shall have obtained from the Landlord an extension of the Lease which otherwise expires on April 30, 2011 on a monthly-by-month basis and allowing for termination at 6 months notice; and

(g) the relevant boards of the Buyers and Seller shall have approved the transaction contemplated by the APA.

## Relief Requested

18. By this Motion, the Debtors seek authority to purchase all or substantially all the assets of Seller, including Seller's interest in GR 2008, on substantially the same terms set forth in the APA.

## Analysis

19. Section 105(a) of the Bankruptcy Code authorizes the court to issue any order "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Additionally, section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

20. A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

21. Under section 363(b) of the Bankruptcy Code, a debtor must establish that it has a valid business purpose for using the estate's property outside the ordinary course of business.

7

See In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); see also Delaware & Hudson Ry. Co., 124 B.R. at 178-79; In re Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

22. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson Ry. Co., 124 B.R. at 176 (adopting Lionel in this district). The proposed transaction meets each of these requirements.

23. *Sound Business Reasons.* Combining Seller's background technology, the technology developed by and for GR 2008, and Grace's concrete material science expertise and market access into a single commercial entity will enable Grace to create new value in the market by significantly expanding its ability to drive improved productivity for ready mix producers, and improved performance in the installed concrete by incorporating automatic process control systems in ready mix concrete trucks. Grace believes that the new process control systems will also expand the overall market for chemical admixtures by enabling the

routine production and, therefore, enhanced market penetration of admixture intensive high performance concrete mix designs.

24. *Fair and Reasonable Consideration.* The proposed purchase price and other terms of the transaction are economically attractive to the Debtors. The potential value creation for the technology in the concrete market is substantial, and Grace has great experience, expertise and ability in developing products for that market.

25. *Good Faith.* The Debtors and Seller have negotiated the terms of the proposed transaction at arm's-length and in good faith. As outlined above, the Debtors believe that the terms of the proposed transaction are fair to the Debtors, their creditors, and their estates.

26. *Adequate and Sufficient Notice.* In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion in accordance with the process described in the "Notice" section below.

## Conclusion

27. In light of the foregoing, the Debtors have determined in their business judgment that the purchase of Seller's assets is fair and reasonable. The Debtors believe that the proposed transaction is in the best interest of their estates, grounded in sound business reasoning and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

## No Previous Motion

28. No previous motion for the relief sought herein has been made to this or any other court.

**No Briefing Schedule**

30. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

**Notice**

28. Notice of this Motion has been given to: (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A., as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed by the United States Trustee in these chapter 11 cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property DamageFuture Claimants' Representatives, (vi) counsel for the Seller, GR 2008 and the Seller's landlord; and (vii) all those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the requested relief, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, (i) authorizing, but not requiring the Debtors consummate the transaction outlined herein and in the APA on substantially the terms and conditions described in this Motion and the APA and (ii) granting such other and further relief as the Court deems just and proper.

Dated: November 8, 2010

Respectfully submitted,

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle
Chicago, Illionois 60654
Telephone: 312-862-2000

**and**

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, Illinois 60602-4253
Telephone: (312) 641-2162

**and**

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100
Telephone: (303) 652-4100

Co-Counsel for the Debtors and Debtors in Possession