IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline:  December 23, 2010 at 4:00 p.m.**
**Hearing Date:  January 10, 2011 at 9:00 a.m.**

## DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107, AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014, AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN W. R. GRACE & CO. AND THE CNA COMPANIES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

hereby submit this motion (the "Motion") for entry of an order approving the Settlement

Agreement (the "Agreement") by and between W. R. Grace & Co. ("Grace"), on behalf of itself

and the Grace Parties,[2] on the one hand, and Continental Casualty Company ("CCC") and

Continental Insurance Company ("CIC"), on their own behalf and on behalf of the CNA

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms used herein but not defined herein shall have the meanings ascribed to them in the Agreement, or if not defined in the Agreement, in the Plan (as defined herein).

Companies, and in CIC's capacity as successor by merger to Pacific Insurance Company and Boston Old Colony Insurance Company, and as successor-in-interest to certain alleged policies issued by Harbor Insurance Company, Buffalo Insurance Company, Buffalo Reinsurance Company, and London Guarantee & Accident Company of New York (collectively, the "CNA Companies"), on the other hand. A copy of the Agreement is attached as <u>Exhibit A</u>. In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this Motion is proper under 28 U.S.C. § 1408.

2.        The statutory predicates for this Motion are Sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure.

## Background

3.        On April 2, 2001, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.        The Debtors' and other Plan Proponents' request for confirmation of the First Amended Joint Plan of Reorganization, as modified through March 19, 2010 (as may be further modified, the "Plan") is pending before the Court.

5.      The CNA Companies issued to one or more of the Grace Parties certain policies of insurance (identified on Attachment A to the Agreement) that provide, or are alleged to provide, insurance coverage for Asbestos-Related Claims (as defined in the Agreement). These policies include three primary liability policies and 16 high-level excess policies. The excess policies provide a total of approximately $158 million in aggregate limits for products/completed operations. All 16 high-level excess policies attach at or above $75 million in excess of primary coverage, and the vast bulk of the coverage provided by these excess policies ($123 million of the $158 million in limits) attaches at or above the $150 million level.

6.      The CNA Companies and the Grace Parties have been engaged in multiple coverage litigations over the past twenty-five years and have previously entered into five separate settlement agreements (referred to as the "Prior Agreements" in the Agreement) that address certain disputes regarding certain aspects of various of the policies.[3] Significant coverage issues, however, remain in dispute between the Parties. In addition, the CNA Companies have filed numerous proofs of claim in the Chapter 11 Cases and have objected to confirmation of the Plan.

## The Settlement

7.      Following extensive negotiations lasting well over a year, the CNA Companies and the Grace Parties, with the support of the Asbestos PI FCR and the Asbestos PI Committee, have entered into the Agreement to effectuate both a comprehensive resolution of all remaining disputes with respect to the Subject Policies (as described in paragraph 9 below) and

---

[3] The CNA Companies have previously resolved with Grace in the Prior Agreements coverage disputes with respect to certain other, lower-level, excess policies issued by certain of the CNA Companies. The CNA Companies have already been designated as Settled Asbestos Insurance Companies with respect to those settled policies on Exhibit 5 of the Exhibit Book to the Plan.

the withdrawal of the CNA Companies' objections to confirmation of the Plan. The essential terms of this settlement are summarized in paragraphs 8 through 12 below.[4]

        8.       **The Settlement Amount**. The CNA Companies agree to pay $84 million to the Asbestos PI Trust in seven annual installments. The first payment is due within 30 days of the Effective Date of the Plan, with the remaining six payments due on the first through sixth anniversary dates of the Effective Date. *See* Section II.A of the Agreement.[5]

        9.       **Scope of the Agreement and Releases.**

        a.       The Agreement resolves all disputes relating to any alleged remaining coverage and other obligations of the CNA Companies, as well as any alleged obligations (including any obligations for retrospective premiums) of the Grace Parties, under the "Subject Policies." The Subject Policies covered by the Agreement include all known and unknown policies, or portions of policies, issued to a Grace Party by any of the CNA Companies with a policy period incepting prior to June 30, 1985, that actually or potentially provide insurance coverage for any Asbestos-Related Claims, except that the Subject Policies do not include any rights or obligations under an insurance policy to the extent that such rights or obligations pertain solely to coverage for Workers' Compensation Claims.

        b.       The Agreement also resolves disputes relating to coverage for Asbestos-Related Claims. For purposes of the Agreement, "Asbestos-Related Claims" include

---

[4] These paragraphs contain only a summary of terms, which is qualified in its entirety by the Agreement. All parties should refer to the Agreement for the full statement of all terms and conditions thereof.

[5] If the Effective Date occurs before the date the Confirmation Order is a Final Order, then the CNA Companies can defer making any payments until the date that is 30 days after the Confirmation Order becomes a Final Order. *See* Section II.I of the Agreement. On that date, the CNA Companies would be obligated to make all payments that would already have come due had the Confirmation Order been a Final Order on the Effective Date. *Id.*

DOCS_DE:165501.1

any claims made against the Grace Parties or the Asbestos PI Trust, or any claims made against

the CNA Companies by reason of the CNA Companies' provision of insurance or insurance

services to the Grace Parties, based upon or arising out of the presence of or exposure to asbestos

or asbestos-containing vermiculite, or any products, materials, or wastes containing asbestos or

asbestos-containing vermiculite for which any of the Grace Parties is alleged to be liable.

Asbestos-Related Claims do not, however, include Workers' Compensation Claims. *See*

Sections I.I, I.J, and I.K of the Agreement.

        c.     In addition, the Agreement resolves any potential disputes relating

to coverage for Asbestos-Related Claims under one 1984-85 policy and all post-June 30, 1985

insurance policies issued by the CNA Companies to any of the Grace Parties (not including

coverage for Workers' Compensation Claims).  The Parties agree that these policies exclude

coverage for asbestos claims.

        d.     The CNA Companies also release any rights they have against the

Grace Parties, under the Prior Agreements or otherwise, to defense and indemnity for Asbestos-

Related Claims asserted against the CNA Companies.  The CNA Companies also relinquish any

rights they have to make Indirect PI Trust Claims against the Asbestos PI Trust should the CNA

Companies be held liable to a third party for injuries caused by that third party's exposure to

asbestos or asbestos-containing vermiculite for which any of the Grace Parties are alleged to be

liable.

        10.     **The Asbestos PI Trust's Defense of the Asbestos PI Channeling**

**Injunction and Indemnification of the CNA Companies.**  Under the Agreement, the Asbestos

PI Trust, under certain circumstances, will seek to enforce the application of the Asbestos PI

Channeling Injunction against any Asbestos-Related Bodily Injury Claims that may be made

against the CNA Companies by third parties, up to a limit of $1 million in litigation costs.
Should any such claims not be enjoined or if they are resolved under certain circumstances, then
the Asbestos PI Trust will indemnify the CNA Companies for any settlements entered into by the
CNA Companies or judgments entered against them with respect to Asbestos-Related Bodily
Injury Claims, up to a maximum amount of $13 million (less the costs that have been incurred by
the Asbestos PI Trust in seeking to enforce the Asbestos PI Channeling Injunction).  Thus, the
maximum amount that the Asbestos PI Trust could incur in respect of such obligations is $13
million.

11.      **Withdrawal of Objections and Proofs of Claim**.  Pursuant to the
Agreement, the CNA Companies will immediately suspend prosecution of their objections to the
Plan, to Confirmation of the Plan, and to the Debtors', the Asbestos PI Committee's, or the
Asbestos PI FCR's motions or applications pending in the bankruptcy case, and will suspend
prosecution of Proofs of Claim Nos. 13966 - 14027 to the extent that they relate to Asbestos-
Related Claims.  Upon the Approval Order becoming a Final Order, the CNA Companies will
withdraw all of their objections to the Plan and consent to the assignment of Asbestos Insurance
Rights to the Asbestos PI Trust.  Upon the Approval Order and the Confirmation Order
becoming Final Orders, the CNA Companies' Proofs of Claim Nos. 13966 – 14027 will be
deemed withdrawn with prejudice to the extent they relate to Asbestos-Related Claims.

12.      **Section 363 Sale**.  The Agreement provides that, upon the Asbestos PI
Trust's receipt of the Initial Payment, the Subject Policies will be sold to the CNA Companies
free and clear of all liens, claims, encumbrances, and/or interests of any kind or nature
whatsoever, to the extent permitted by Section 363(f) of the Bankruptcy Code.  Neither the
Debtors nor the CNA Companies believe that any person or entity holds such an interest in the

6

Subject Policies, or that any person or entity is entitled to adequate protection under Section 363(e) of the Bankruptcy Code in connection with this sale.

### Benefits to the Debtors' Estates

13.     The Agreement confers the following principal benefits upon the Debtors' estates, among others:

a.     The Agreement will result in the infusion of up to $84 million to the Asbestos PI Trust.

b.     The Agreement will eliminate the CNA Companies' objections to confirmation of the Plan, including their objection that Asbestos Insurance Rights under the Subject Policies cannot be assigned to the Asbestos PI Trust without the CNA Companies' consent.

c.     The Agreement resolves what has proven to be, and what, if not resolved, likely would continue to be, protracted litigation between the Parties over the nature and extent of coverage provided by the Subject Policies. The Agreement also resolves disputes as to whether or when the high-level excess policies that are included within the Subject Policies might ever be triggered, and resolves all defenses to coverage.

d.     The Agreement resolves any claims by the CNA Companies against the Grace Parties for retrospective premiums under all pre-June 30, 1985 policies. The CNA Companies' Proofs of Claim Nos. 13966 - 14027 will be deemed withdrawn with prejudice to the extent they relate to Asbestos-Related Claims, avoiding the need for litigation over those Proofs of Claim.

e.     The CNA Companies will release their claims to defense and indemnity for certain Asbestos-Related Claims under the Prior Agreements, and also release the

right to assert any Indirect PI Trust Claims against the Asbestos PI Trust should the CNA

Companies be held liable to any third parties for personal injuries caused by exposure to asbestos

or asbestos-containing products for which any of the Grace Parties is alleged to be liable.

    f.  While the Agreement requires the Asbestos PI Trust to seek to

enforce the Asbestos PI Channeling Injunction with respect to any Asbestos-Related Bodily

Injury Claims asserted against CNA Companies, the Asbestos PI Trust's total obligation for

defense and indemnification is capped at $13 million.  Thus, even in the event that the full

indemnity obligations provided by the Agreement were triggered, the Asbestos PI Trust would

receive $71 million, an amount the Debtors believe constitutes a reasonable resolution of these

disputes under the terms of the Agreement.

    14.  By this Motion, the Debtors respectfully seek the entry of an order

pursuant to Sections 105, 363(b), and 363(f) of the Bankruptcy Code and Bankruptcy Rules 6004

and 9019 approving the Agreement.

### Basis for Relief

    15.  This Court has statutory authority to authorize and approve the

Debtors' entry into the Agreement pursuant to Sections 105, 363(b)(l), and 363(f)(4) of the

Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he

court may issue any order, process or judgment that is necessary or appropriate to carry out the

provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy

Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or

lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. §

363(b)(1).  A settlement of claims and causes of action by a debtor in possession constitutes a

use of property of the estate.  *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d

8

346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the

debtor, it requires approval of the bankruptcy court pursuant to Section 363(b) of the Bankruptcy

Code. *See id*. Section 363(f) of the Bankruptcy Code permits the Debtors to sell property free

and clear of any interest in such property of an entity other than the estates if any such interest is

in bona fide dispute. The Debtors and the CNA Companies believe that no person or entity holds

any such interest in the Subject Policies and that no person or entity is entitled to adequate

protection in connection with this sale under Section 363(e) of the Bankruptcy Code.

          16.        Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion

by the [debtor-in-possession] and after notice and a hearing, the court may approve a

compromise or settlement." Fed. R. Bankr. P. 9019(a). Before approving a settlement under

Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best

interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir.

1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry

is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this

determination, courts assess the value of the claim that is being settled and balance it against the

value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

          17.        The standard by which courts evaluate the reasonableness of a proposed

compromise and settlement is well established. This standard includes consideration of the

following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in

collection; (3) the complexity of the litigation involved, and the expense, inconvenience and

delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also*

*Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order

approving a compromise and settlement of claims against the estate where it was "unlikely" that

the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

18.     The Agreement is in the best interests of the Debtors, their estates, and their creditors because it resolves all existing and potential future disputes between the Parties regarding their respective rights and obligations with respect to insurance coverage for Asbestos-Related Claims and other claims under the Subject Policies, and provides substantial monies to the Asbestos PI Trust. If the Agreement were not approved, the Asbestos PI Trust likely would face challenges by the CNA Companies to the Asbestos PI Trust's entitlement to coverage under the Subject Policies, and additional burdens and costs in seeking to obtain the benefits of, and enforcing Grace's rights under, the Subject Policies. Finally, the Agreement removes the CNA Companies as objectors to confirmation of the Plan.

19.     Furthermore, the CNA Companies are purchasing the Subject Policies in good faith and are good faith buyers within the meaning of Section 363(m) of the Bankruptcy Code, and are therefore entitled to the full protections of that provision, and otherwise have proceeded in good faith in all respects in connection with this matter. The negotiation and execution of the Agreement, including the transaction contemplated thereby, was at arm's length and in good faith. The Debtors and the CNA Companies have not engaged in any conduct that would permit the Agreement, the sale of the Subject Policies, or the transaction contemplated thereby to be avoided under Section 363(n) of the Bankruptcy Code. The consideration provided

10

by the CNA Companies pursuant to the Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration.

20.    For all of the foregoing reasons, the Debtors submit that the Agreement is fair and reasonable and in the best interest of the Debtors, their creditors, and their estates, and thus the Debtors should be authorized to enter into the Agreement.

## Notice

21.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative; and (v) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[Remainder of Page Intentionally Left Blank]*

11

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: November 18, 2010

KIRKLAND & ELLIS LLP

Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

PACHULSKI STANG ZIEHL & JONES LLP

/s/Kathleen P. Makowski
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*

DOCS_DE:165501.1