Date of Service of De Minimis Sale Notice: December 1, 2010
Opposition/Response Due: December 13, 2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

# NOTICE OF PROPOSED SALE OF CERTAIN REAL PROPERTY IN GREENVILLE COUNTY, SOUTH CAROLINA PURSUANT TO ORDER ESTABLISHING PROCEDURES FOR THE SALE OF DE MINIMIS ASSETS

**PLEASE TAKE NOTICE** that the Debtors propose to sell certain unused real property located in Greenville County, South Carolina, comprising a former production facility of the Debtors (the "Sale"), for $778,100. Pursuant to that certain *Order Establishing Procedures for the Sale or Abandonment of De Minimis Assets* dated August 2, 2001 (the "Procedures Order") (Docket No. 833), the Debtors may sell assets with a de minimis value up to $5 million, which in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

the Debtors' judgment, are no longer necessary to the operation of their businesses. In accordance with the Procedures Order, the Debtors provide the following information in connection with the Sale:

1. ***Description of the Property.*** The property to be sold (the "Property") consist of an approximately 40.80 acre tract of land located along U.S. Highway 25 Bypass (White Horse Road) and S.C. Road S-88 (Roe Ford Road) in the County of Greenville, South Carolina, which tract is more particularly depicted on Exhibit A to the Original Sales Agreement (as defined below).

2. ***Proposed Purchaser; Purchase Price; Salient Terms.*** The Debtors propose to sell the Property pursuant to that certain *Agreement for Purchase and Sale of Real Estate* dated May 20, 2009 (the "Original Sales Agreement") with The Furman University Foundation, Inc. (the "Purchaser"), as amended by (i) *Amendment to Agreement for Purchase and Sale of Real Property*, dated July 8, 2009 (the "First Amendment"); (ii) *Second Amendment to Agreement for Purchase and Sale of Real Property*, dated June 17, 2010 (the "Second Amendment"); and (iii) *Third Amendment to Agreement for Purchase and Sale of Real Property*, dated August 31, 2010 (the "Third Amendment") (collectively, the Original Sales Agreement, the First Amendment, the Second Amendment and the Third Amendment are identified herein as the "Sales Agreement", a copy of which is attached as Exhibit A hereto). The purchase price is $778,100 payable in cash on the closing date.

3. The Property being sold consist of a vacant piece of excess real estate that was the former site of a Grace plant for the production of vermiculite-based horticultural growing media, vermiculite based concrete products, and the storage of vermiculite ore. In that regard, the

Property formerly received shipments of vermiculite ore/concentrate from Grace's mining operations in Enoree, South Carolina. The Property also contains a retention pond and dam/dike.

4. When the parties executed the Original Sales Agreement in May 2009, the Purchaser agreed to purchase the Property in an "AS IS" environmental condition. Subsequent to entry by the parties into the Original Sales Agreement, however, Grace received notification that the United States Environmental Protection Agency Region IV (the "EPA") intended to conduct testing and sampling for asbestos-containing materials at the Property (the "Inspection Period"). The Purchaser was unwilling to undertake any surveys or investigations of the Property or to proceed with its purchase of the Property pursuant to the Original Sales Agreement pending the outcome of the testing and sampling of the Property by the EPA.

5. As a result, the parties entered into the First Amendment and Second Amendment, whereby the Inspection Period of the Original Sales Agreement was extended to accommodate the EPA investigation and testing.

6. Pursuant to the Original Sales Agreement, the Purchase Price took into account the projected costs to the Purchaser to remove and demolish the existing improvements upon the Property subsequent to Closing. Subsequently, however, Grace experienced security concerns at the Property and decided that prior to selling the Property to the Purchaser, it would undertake to remove and demolish all of the improvements on the Property. The parties then entered into the Third Amendment whereby the Purchaser agreed to permit Grace to remove and demolish the improvements on the Property prior to the Closing of the Sale and to adjust the Purchase Price accordingly.

7. Grace is approaching completion of the removal and demolition of the improvements agreed to by the parties as outlined in detail in the Third Amendment. Upon

completion of this work and receipt of the EPA testing and sampling results and report, the Purchaser is then willing to undertake its surveys and investigations during the pendency of the extended Inspection Period and, assuming it does not elect to terminate the Sales Agreement on account of any objectionable condition, complete the purchase of the Property on an "AS IS-WHERE IS" basis.

8. *Marketing Efforts*. In 2004, the Debtors sold a nearby property containing 9.112 acres, also fronting S.C. Highway S-88 (Roe Ford Road) to the Purchaser (Furman University's campus being in the immediate vicinity of the Property.) At that time, the Purchaser expressed its interest in purchasing the subject Property, if and when it ever became available for sale. Over the following years, counsel for the Purchaser kept in touch with counsel for the Debtors to express the Purchaser's continued interest in acquiring the Property. The Property, however, was one of the package of properties to be conveyed to Environmental Liability Transfer, Inc. ("ELT") as part of a transfer of liabilities and conveyance of properties pursuant to that certain Liability Transfer Agreement dated as of February 22, 2008. The Liability Transfer Agreement, however, was terminated by ELT prior to closing. After it was terminated by ELT, counsel to the Purchaser again expressed to the Debtors the interest of the Purchaser in acquiring the Property and, in June, 2008, negotiations between Purchaser and Debtors commenced. In January, 2009, Debtors obtained an appraisal of the value of the Property, and the purchase price was negotiated and agreed upon based on that value. The Debtors decided, based upon their reasoned business judgment, to proceed with a sale to the Purchaser without marketing the Property for sale on an open market due to a number of factors, including among them the fact that the purchase price was fair based on the appraised value and could be realized without having to incur a sizeable broker's commission.

9.  *The Sale is in the Best Interest of the Debtors' Estates.* Based on the limited value of the Property and the limited prospects of selling the Property to anyone else in an AS IS-WHERE IS basis given the environmental history of the Property, the Debtors believe, in the reasonable exercise of their business judgment, that the Sale of the Property to the Purchaser is in the best interest of the estates.

10. Based on the foregoing, which is supported by the Affidavit of William Corcoran, attached as <u>Exhibit B</u> hereto, the Debtors believe that the Sale is in the best interests of their estates.

**PLEASE TAKE FURTHER NOTICE** that this notice has been served on: (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) the Purchaser.

PLEASE TAKE FURTHER NOTICE THAT any party wishing to submit an alternative bid for the Property must serve its bid in writing upon Debtors' counsel and the Sale Notice Parties listed below *such that it is received by December 7, 2010.*

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Sale must be in writing and served upon Debtors' Counsel *such that it is received by December 13, 2010.* In the event that the Debtors do not receive any written objections to the Sale on or before such date, the Debtors are authorized to proceed with the Sale without further approval of the Court.

91100-001\DOCS_DE:165762.1

## SALE NOTICE PARTIES

### *COUNSEL TO THE DEBTORS*

Kirkland & Ellis LLP                          FAX: (312) 862-2200
300 N. LaSalle Street
Chicago, Illinois 60654
Attn:  Adam Paul
       John Donley

The Law Offices Of Janet S. Baer, P.C.        FAX: (312) 641-2165
70 W. Madison St., Suite 2100
Chicago, Illinois 60602-4253
Attn:  Janet S. Baer, P.C.
       Roger J. Higgins

Pachulski Stang Ziehl & Jones LLP             FAX: (302) 652-4400
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Attn:   James O'Neill, Esq.

### *OFFICE OF UNITED STATES TRUSTEE*

United States Trustee's Office                FAX: (302) 573-6497
844 King Street, Suite 2207
Lock Box 35
Wilmington, DE  19801
Attn: David M. Klauder

### *COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*

Stroock & Stroock & Lavan LLP                 FAX: (212) 806-6006
180 Maiden Lane
New York, NY 10038-4982
Attn: Arlene G. Krieger, Esq.

### *COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS*

Caplin & Drysdale                             FAX: (212) 644-6755
375 Park Avenue, 35th Floor
New York, NY  10152
Attn: Elihu Inselbuch

Caplin & Drysdale                             FAX: (202) 429-3301

91100-001\DOCS_DE:165762.1

One Thomas Circle, N.W., Suite 1100
Washington, DC 20005
Attn: Peter Van N. Lockwood

Campbell & Levine                                    FAX: (302) 426-9947
800 North King Street, Suite 300
Wilmington, DE 19801
Attn: Mark T. Hurford

*COUNSEL TO THE OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS*

Bilzin Sumberg Baena Price & Axelrod LLP    FAX: (305) 374-7593
First Union Financial Center
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
Attn: Scott L. Baena

*COUNSEL TO THE LC FACILITY AGENT AND LC ISSUERS*

Latham & Watkins                                    FAX: (312) 993-9767
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Attn:   Douglas Bacon

*COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS*

Kramer Levin Naftalis & Frankel LLP          FAX: (212) 715-8000
1177 Avenue of the Americas
New York, NY 10036
Attn:   Philip Bentley
        David Blabey

**[Remainder of Page Intentionally Left Blank]**

91100-001\DOCS_DE:165762.1