# **Exhibit A**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | GRACE NON-ASBESTOS PROOF OF CLAIM FORM |
|---|---|

**Name of Debtor:** W. R. GRACE + Co., ET AL

**Case Number**

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. These claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

**Name of Creditor (The person or other entity to whom the Debtor owes money or property):**

N. Y. HILLSIDE, INC

**Name and address where notices should be sent:**

16547 ACADEMIA DRIVE

ENCINO CA 91436

- ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
- ☐ Check box if you have never received any notices from the bankruptcy court in this case.
- ☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

**Account or other number by which creditor identifies Debtor:**

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated:_____

**Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:**

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Environmental liability
- ☐ Money loaned
- ☐ Non-asbestos personal injury/wrongful death
- ☐ Taxes
- ☒ Other   SEE ATTACHED

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

Your SS #:_____
Unpaid compensation for services performed
from_____ to_____ (date)

**2. Date debt was incurred:** SEE ATTACHED

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 25,000.00

If all or part of your claim is secured or entitled to priority, also complete Item 5 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:

☐ Real Estate        ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

Attach evidence of perfection of security interest

☒ UNSECURED NONPRIORITY CLAIM

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Acknowledgement:** Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self-addressed envelope and copy of this proof of claim form.

This Space is for Court Use Only

**Date** 9/26/02

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

Charles F. Juergens, President, N Y Hillside, Inc.

REC'D SEP 3 0 2002

WR Grace    BF.10.39.1935
00002114
SR=178

See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors.

## SPECIFIC INSTRUCTIONS FOR COMPLETING
## GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

This Proof of Claim form is for Creditors who have Non-Asbestos Claims against any of the Debtors. Non-Asbestos Claims are any claims against the Debtors as of a time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically, Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.  **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.  **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.  **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.  **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 5. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5.  **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

    **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.  **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.  **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

Claims Processing Agent
Re: W. R. Grace & Co. Bankruptcy
P.O. Box 1620
Faribault, MN 55021-1620
The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.

Attachment to Proof of Claim in the matter of W. R. Grace & Co.

Statement of Facts giving rise to claim:

Grace Petroleum Company a wholly owned subsidiary of W. R. Grace & Co was sued for environmental and other damages as a result of Grace's operations on an oil property in California.  The other parties to the suit and others operators on the property in question entered into a Settlement Agreement with the N Y Hillside, Inc., under which each of the parties paid N Y Hillside, Inc. $25,000 to settle all issues related to the suit.  A copy of the Settlement Agreement is attached herewith.  The fact that W. R. Grace & Co filed for bankruptcy prevented Grace from entering into the Ageement.  Therefore this claim is filed in order settle the unresolved claims against W. R. Grace & Co.

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (hereafter referred to as the "Agreement") is by and between N.Y. Hillside, Inc. ("NYHI"), International Petroleum Management, Inc. ("IPM"), Charles Jurgens ("Jurgens") and Mahguib El Arabi ("El Arabi"), on the one hand, and OXY USA INC. ("OXY"), Berry Petroleum Company, for itself and as successor-in-interest to TEORCO ("Berry"), and Samson Investment Company and Samson Hydrocarbons Company (collectively, "Samson") on the other hand. NYHI, IPM, Jurgens and El Arabi are referred to collectively as "the Hillside Parties." OXY, Berry, Samson, NYHI, IPM, Jurgens and El Arabi are referred to collectively as "the Parties." Petro Resources, Inc. ("PRI"), Kent Riley ("Riley"), and Joe Rose ("Rose") are referred to collectively as "the PRI Parties." The latest date on which the Agreement has been signed by any party to this Agreement (excluding the signing date of any Party's attorney) shall be deemed the execution date of the Agreement. The Agreement shall be deemed effective as of the Hillside Parties' Dismissal, as that term is defined in Section 1.1 herein.

## RECITALS

WHEREAS, the Parties have been engaged in litigation captioned Petro Resources, Inc. v. N.Y. Hillside, Inc., et al., and Related Cross-Actions, Case No. BC222456, in the Superior Court of the State of California for the County of Los Angeles ("the Action"). The term "the Action" shall include, without limitation, all Complaints and Cross-Complaints and amendments thereto in Case No. BC222456. The Action relates to those properties described in Exhibit "1" hereto. The term "Parties' Litigation" shall mean the Cross-Complaint and the First and Second Amended Cross-Complaints, including any and all amendments thereto, filed in the

Action by the Hillside Parties against OXY, Berry and Samson, and the Cross-Complaint and First Amended Cross-Complaint filed in the Action by Berry against the PRI Parties and the Hillside Parties;

WHEREAS, from 1989 until 1998, Hillside Oil Partners ("HOP"), and thereafter N.Y. Hillside ("NYHI"), occupied and/or leased certain properties owned by PRI;

WHEREAS, the Hillside Parties conducted oil operations on properties owned by PRI and commonly referred to as the York Property, Poco-Vagabond Acreage, PRI Fee Property, York Tank and Storage Area (collectively "the PRI Properties"), more particularly described in Exhibit "1" hereto;

WHEREAS, between 1989 and 1998, HOP and thereafter NYHI leased and conducted oil operations on property not owned by PRI, commonly referred to as the Pfahler-Schisler Property ("the Pfahler-Schisler Property"), more particularly described in Exhibit "2" hereto;

WHEREAS, the PRI Properties and the Pfahler-Schisler Property are collectively referred to herein as the "Subject Properties;"

WHEREAS, PRI has filed a Complaint and First Amended Complaint against the Hillside Parties in the Action seeking compensation for, *inter alia*, alleged contamination of the PRI Properties as a result of oil operations;

WHEREAS, the Hillside Parties have denied the material allegations of PRI's Complaint and First Amended Complaint in the Action, disputed the right of PRI to the relief sought in said Complaints and in the Action and asserted cross-claims against PRI;

WHEREAS, the Cross-Complaint and First and Second Amended Cross-Complaints and amendments thereto filed by the Hillside Parties included tort claims and claims alleging equitable contribution, equitable indemnity, and/or declaratory relief against the PRI Parties and against Grace Energy Corporation, W.R. Grace & Co., TOSCO Refining Company, TOSCO Corporation, TEORCO, Berry, OXY, Chevron U.S.A. Inc., Samson Investment Company and Samson Hydrocarbons Company (collectively "the Oil Company Parties") as prior owners and/or oil operators on all or some of the Subject Properties;

WHEREAS, Grace Energy Corporation and W.R. Grace & Co. are both presently in bankruptcy with a stay barring further involvement in the Action;

WHEREAS, Grace Energy Corporation and W.R. Grace & Co. have both asserted under oath in response to interrogatories propounded by the Hillside Parties that their only involvement as an oil operator on the Subject Properties was through a subsidiary named Grace Petroleum Corporation;

WHEREAS, all of the capital stock of Grace Petroleum Corporation was sold to Samson Investment Company, an unrelated corporation, in 1993, and after that time, the name of the entity known as Grace Petroleum Corporation was ultimately changed to Samson Hydrocarbons Company;

WHEREAS, the Parties and the PRI Parties, concurrently with or prior to the Hillside Parties' Dismissal, will have executed a Settlement Agreement and Mutual Release with the legal and beneficial owners of the Pfahler-Schisler Property ("Pfahler-Schisler Owners"), which said Agreement shall hereafter be referred to herein as the "Pfahler-Schisler Agreement," and wherein in exchange for payment by the Parties and the PRI Parties totaling Forty Thousand

Dollars ($40,000) to the Pfahler-Schisler Owners, the Pfahler-Schisler Owners, and each of them, release the Parties and the PRI Parties from all potential claims by the Pfahler-Schisler Owners associated with the Parties' and the PRI Parties' activities on the Pfahler-Schisler Property, and indemnify the Parties and the PRI Parties from all claims that may be brought by third parties against the Parties and the PRI Parties associated with the Parties' and the PRI Parties' activities on the Pfahler-Schisler Property;

WHEREAS, OXY, Berry and Samson deny the material allegations of the Hillside Parties' Cross-Complaint and First and Second Amended Cross-Complaints brought against them and dispute the relief sought in said Cross-Complaint and First and Second Amended Cross-Complaints;

WHEREAS, Berry has filed a Cross-Complaint and a First Amended Cross-Complaint against the PRI Parties and the Hillside Parties for equitable contribution and equitable indemnity;

WHEREAS, the Hillside Parties have denied the material allegations of Berry's Cross-Complaint and the First Amended Cross-Complaint and have disputed the relief sought in said Cross-Complaints;

WHEREAS, the Hillside Parties and the PRI Parties have entered into a Settlement Agreement and Mutual Release dated June 22, 2001 ("Hillside-PRI Settlement Agreement"), in which they have settled the Action among themselves and as part of such Agreement, PRI has assigned to the Hillside Parties, without warranty or guaranty of any kind, all claims and causes of action that PRI has or may have against Oil Company Parties (other than

Chevron USA Inc.) and their respective parents, subsidiaries, officers, directors, members, shareholders, assigns, successors, employees, indemnitors, insurers, attorneys, and each of them;

WHEREAS, to avoid the expense and uncertainty of litigation, the Parties desire to settle their existing and potential disputes concerning, pertaining and relating to the Subject Properties and the Parties' Litigation in accordance with the terms and conditions of this Agreement, without any admission of any fact, allegation, liability, cause of action or claim asserted in the Action.

## AGREEMENT

In consideration of the mutual promises, agreements, releases, covenants, conditions and recitals contained herein, the sufficiency of such consideration being hereby acknowledged, the Parties agree to settle their claims and disputes pursuant to the terms stated below.

## ARTICLE 1

## PAYMENTS AND OTHER CONSIDERATION

1.1    Within ten (10) days following the later to occur of (a) the date upon which an order approving this Agreement as a good faith settlement under California Code of Civil Procedure Section 877.6 (the "Good Faith Settlement Order") has become final under Section 1.2.3 hereto, and (b) the date upon which fully executed originals of the Pfahler-Schisler Agreement are delivered to counsel for the Hillside Parties and counsel for OXY, Berry and Samson, and each of them, the Hillside Parties shall file a dismissal with prejudice of the Hillside Parties' Second Amended Cross-Complaint against OXY, Berry and Samson ("Hillside Parties' Dismissal").  In consideration thereof, OXY, Berry and Samson each agree to pay NYHI the

total sum of Twenty-Five Thousand Dollars ($25,000.00), payable by cashier's check or wire transfer. Such payment shall be made within ten (10) days after the receipt of a conformed copy of the Hillside Parties' Dismissal. If payment is not made on the date specified, the amount due shall bear simple interest at the rate of ten percent (10%) per annum from the due date. In addition, Berry shall file a dismissal, with prejudice, of its First Amended Cross-Complaint in this Action against the Hillside Parties and without prejudice as to the PRI Parties ("Berry's Dismissal"), concurrently with such payment.

1.2     OXY, Berry and Samson, at their sole expense, shall prepare, file and prosecute a Motion(s) or Application(s) for a Good Faith Settlement Order ("Motion(s)"), as follows:

1.2.1    The Hillside Parties, at their cost, may review the Motion(s) before such Motion(s) is/are filed and/or served. The Hillside Parties shall provide reasonable comments thereto within five (5) days of their receipt of said Motion(s).

1.2.2    The Hillside Parties agree to file and serve Cross-Complaints against any other party identified by OXY, Berry or Samson as a necessary party prior to the filing and/or service of the Motion(s). It shall not be the Hillside Parties' responsibility to identify parties other than the Oil Company Parties and the PRI Parties for inclusion in the Motion(s). No person other those included in the Oil Company Parties has been identified as a necessary party as of the date of this Agreement.

1.2.3    The Parties shall have no obligations under this Agreement until:  (1) a Good Faith Settlement Order approving the settlement set forth in this Agreement unconditionally has been entered by the Court in this Action and has become final; and (2) fully executed originals of the Pfahler-Schisler Agreement have been delivered to counsel for the

Hillside Parties and counsel for OXY, Berry and Samson as provided in Section 1.1. hereof. The Good Faith Settlement Order shall become final after the time for filing a writ of mandate to set aside a Good Faith Settlement Order under California Code of Civil Procedure Section 877.6(e) has expired, or after all appellate proceedings, if any, relating to the Motion(s) have concluded.

      1.2.4 The Hillside Parties shall have the right, but not the obligation, to prepare and file, at their cost, responses or briefs in support of the Motion(s).

      1.2.5 This Agreement shall be void and of no further force or effect in either of the following circumstances:

      a.    Any order denying the Motion(s) should become final; or

      b.    An executed original of the Pfahler-Schisler Agreement has not been delivered to counsel for OXY, Berry and Samson and counsel for the Hillside Parties, and each of them, within ten (10) days following the date upon which an order approving this Agreement as a Good Faith Settlement under California Code of Civil Procedure Section 877.6 has become final pursuant to Section 1.2.3 hereto.

      1.3 Each of the Party's payments of the Twenty-five Thousand Dollars ($25,000.00) will be allocated as follows: (1) Twenty Thousand Dollars ($20,000.00) as compensation and/or indemnification/contribution in relation to the PRI Properties; and (2) Five Thousand Dollars ($5,000) as a part of the compensation and/or indemnification/contribution in relation to the Pfahler-Schisler Property. The Hillside Parties shall pay any remaining amounts owed under the Pfahler-Schisler Agreement to settle with the Pfahler-Schisler owners.

## ARTICLE 2

## RELEASES

2.1    Except as provided herein, and particularly including without limitation of the rights established or reserved in Articles 1, 3, and 4 hereof, the Hillside Parties, their predecessors, successors, partners, parents, subsidiaries and affiliates, and their present and former officers, directors, employees, representatives, agents, attorneys, assigns, nominees, shareholders, members, and each of them ("Hillside and Related Parties"), do hereby fully and forever release and discharge OXY, Berry and/or TEORCO, and Samson, as well as their predecessors-in-interest, successors-in-interest, partners, subsidiaries and affiliates, and their present and former officers, directors, employees, representatives, agents, attorneys, assigns, nominees, shareholders, and each of them ("OXY, Berry and/or TEORCO, Samson and Related Parties"), from any and all claims, debts, obligations, lawsuits, demands, causes of action, liens, judgments, losses, liabilities, set-offs, recoupments, penalties, fines, damages, rights, covenants, warranties, suits, costs or expenses of any nature or kind, including attorneys' fees and consultants' fees/experts' fees, and causes of action of whatever nature, whether known or unknown, anticipated or unanticipated, fixed or contingent, which pertain, refer or relate to: (1) the facts, matters, events and/or theories of relief that were, or could have been, alleged in the Action against the OXY, Berry and/or TEORCO, Samson and Related Parties; (2) past operations on the Subject Properties, whether asserted in the Action or not; and (3) any environmental conditions on the Subject Properties. Nothing in this release shall be construed as waiving any right to seek enforcement of any term, condition or provision of this Agreement.

2.2    In furtherance of the intention of the Hillside Parties, and each of them, to forever release and discharge OXY, Berry and/or TEORCO, Samson and Related Parties, as set forth in

Section 2.1, except as specifically provided herein, the Hillside and Related Parties, and each of them, hereby expressly waive any and all rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO  EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

If and to the extent that California Civil Code Section 1542, or a similar law or statute in any other state or jurisdiction, may otherwise apply to this Agreement, and specifically the specified release and discharge of rights asserted herein, the Hillside and Related Parties, and each of them, hereby waive and relinquish all rights which they have or may have had under Section 1542 or under the law of this or any other state or jurisdiction to the same or similar effect. Nothing in this waiver shall be construed as waiving any right to seek enforcement of any term, condition or provision of this Agreement.

## ARTICLE 3

### INCLUSION OF OXY, BERRY AND SAMSON IN AGREEMENTS TO CLEAN UP THE SUBJECT PROPERTIES

3.1     In Section 5.1 of the Hillside-PRI Settlement Agreement attached as Exhibit "3" hereto, PRI assumes responsibility for: (a) the plugging and abandonment of all wells on the PRI Properties and for the investigation, clean-up, remediation and closure of the PRI Properties as may be required by the Regional Water Quality Control Board, Los Angeles Region ("Water Board"), the Division of Oil, Gas & Geothermal Resources of the State of California ("DOGGR") and/or any other federal, state and/or local regulatory agencies having oversight

responsibility for the PRI Properties; (b) the obligation to investigate, clean-up, remediate and close any condition that has been alleged by PRI in the Action to be a nuisance, trespass and/or dangerous condition on the Subject Properties; and (c) the obligations referred to in Section 1.5 of said Hillside-PRI Settlement Agreement. The Hillside Parties' agreement to enforce the obligations that the PRI Parties have undertaken in Article 5 and Section 1.5 of the Hillside-PRI Settlement Agreement is a significant and material part of the consideration to OXY, Berry, and Samson in entering into this Agreement. Accordingly, the Hillside Parties, jointly and severally, represent and agree that they will faithfully, diligently and at their sole expense: (a) fulfill and perform all of their obligations to the PRI Parties under the Hillside-PRI Settlement Agreement; and (b) take all reasonable measures to enforce the performance of each and all of the obligations the PRI Parties have agreed to and assumed under the terms of the Hillside-PRI Settlement Agreement.

3.1.1    If the Hillside Parties, or any of them, fail or refuse to take reasonable action to enforce the Hillside-PRI Settlement Agreement as agreed herein, then the Hillside Parties, individually and collectively, upon demand by OXY, Berry or Samson, will assign their causes of action for breaches by the PRI Parties under the Hillside-PRI Settlement Agreement to OXY, Berry, and Samson, and any of the other Oil Company Parties who join with OXY, Berry and Samson in such demand ("Assignee Parties"). The Hillside Parties hereby authorize the Assignee Parties to initiate action in the name of the Hillside Parties against PRI for performance of all or any of PRI's obligations under the Hillside-PRI Settlement Agreement, or to initiate action in the names of the Assignee Parties for the same objective, as the Assignee Parties choose. Election by OXY, Berry or Samson to proceed as provided in this Section 3.1.1 shall

be without prejudice to any rights or remedies that it/they may have under other provisions of this Agreement.

3.1.2   If the Hillside Parties, or any of them, fail or refuse to take reasonable action to enforce the Hillside-PRI Settlement Agreement as agreed herein, then as an alternative to assignment of causes of action for breaches by the PRI Parties as provided in Section 3.1.1 hereof, at the option of OXY, Berry and/or Samson, the Hillside Parties, individually and collectively, upon demand by OXY, Berry and/or Samson, hereby authorize the prosecution of action in the names of the Hillside Parties, or any of them, to enforce the Hillside Parties' rights under the Hillside-PRI Settlement Agreement.   Election by OXY, Berry or Samson to proceed as provided in this Section 3.1.2 shall be without prejudice to any rights or remedies that it/they may have under other provisions of this Agreement.

3.2   If and to the extent that the Hillside Parties, or any of them, may reach or enter into a settlement, compromise or other agreement with any Oil Company Party, present or future, or the owners or other parties holding an interest in one or more of the Subject Properties ("Other Parties"), which either: (a) includes an assumption of responsibility by the Other Parties that they will be responsible for the abandonment, remediation, cleanup or closure of Subject Properties; or (b) includes a release of liability of the Hillside Parties for any further abandonment, remediation, cleanup or closure of the Subject Properties, then and in such event the Hillside Parties will ensure that OXY, Berry and/or TEORCO, Samson and Related Parties, and each of them, is named as an additional party for whose benefit such assumption of responsibility or release of liability is made, and the Hillside Parties shall provide OXY, Berry and Samson with a copy of such agreement within twenty (20) days after the agreement is final; provided, however,

that such agreement shall not release the Hillside Parties from their responsibilities to OXY, Berry and Samson under this Agreement.

## ARTICLE 4

## GENERAL PROVISIONS

4.1    No Admission. Nothing in this Agreement shall be construed as an admission by the Parties of any wrongdoing or liability. This Agreement shall not be admissible as evidence in any action except an action to interpret or enforce this Agreement. Further, this Agreement is not evidence of any violation of, or noncompliance with, any statute, law, ordinance or regulation. This Agreement is made solely to avoid future disputes and controversies among the Parties related to the matters addressed in this Agreement, and to avoid the costs and inconvenience of further litigation.

4.2    Entire Agreement. This Agreement constitutes the entire agreement between the Parties relating to the Subject Properties, and supersedes all prior or other contemporaneous agreements, understandings, representations and statements regarding such matters, whether oral or written.

4.3    No Reliance on Prior Representations. In entering into this Agreement, the Parties do not rely upon any previous oral, written or implied representation, endorsement, agreement or understanding of any kind.

4.4    Voluntary Execution of Agreement. The Parties expressly acknowledge and represent that they have voluntarily executed this Agreement and that they have been represented and advised by counsel of their own choosing concerning the terms and conditions of this

Agreement. This Agreement shall not be construed or interpreted against any Party on the basis that such Party drafted a particular provision, or part thereof, or the entirety of this Agreement.

4.5    No Modification or Waiver. This Agreement may not be altered, amended, changed, terminated or modified in any respect except in writing. No waiver by any Party hereto of any breach or default hereunder shall be deemed a waiver of any other or subsequent breach or default.

4.6    Good Standing of Corporate Parties/Authority/Enforceability. OXY, Berry, Samson, NYHI and IPM each represent that it is a corporation duly organized, validly existing, and in good standing under the laws of the party's respective state of incorporation.

4.7    Authority To Execute. OXY, Berry, Samson and the Hillside Parties each represent and warrant that the person who has executed this Agreement on its behalf has full right, power, authority and capacity to execute this Agreement on its behalf; that this Agreement does not conflict with the Articles of Incorporation or other organizational documents, by-laws or other governing documents, other material agreements of any Party, or rules, regulations or laws applicable to any Party; and that this Agreement is enforceable against the Party in accordance with the Agreement's terms.

4.8    Ownership of Causes of Action. The Hillside Parties, OXY, Berry and Samson each hereby represent and warrant that they presently own and that they have not assigned, pledged, encumbered or otherwise transferred: (a) any claims or causes of action that were asserted or could have been asserted in the Action; or (b) any other claims released herein. The Hillside Parties hereby represent and warrant that they currently own and that they have not

assigned, pledged, encumbered or otherwise transferred any claims or causes of action that were assigned to them under the Hillside-PRI Settlement Agreement.

4.9    <u>Written Notice</u>.  All documents or notices required pursuant to this Agreement shall be in writing and sent by facsimile and/or overnight delivery to the attorney of record in the Action for the Party to whom the document or notice is required.  The Parties may change the addressee provided in this paragraph with notice in writing.

4.10    <u>Binding Nature of Agreement</u>.  This Agreement shall be binding upon and shall inure to the benefit and burden of the Parties and their respective heirs, legal representatives, successors-in-interest and assigns.

4.11    <u>Further Documents</u>.  The Parties hereto, without further consideration, agree to execute and deliver such further documents or instruments and to take such other actions as may be reasonably necessary to carry out and effectuate the purposes of this Agreement.

4.12    <u>Severability</u>.  In the event that any non-material term, covenant, condition or provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or against public policy, the remaining provisions shall continue in full force and effect.

4.13    <u>No Agency</u>.  Nothing in this Agreement shall be construed to constitute the Parties hereto as partners, joint venturers or agents of each other.

4.14    <u>No Third Party Beneficiaries</u>.  Nothing in this Agreement is intended or shall be construed to confer upon any person other than the Parties and their respective heirs, legal representatives, successors-in-interest, and permitted assigns, any rights, remedies or claims under or by reason of this Agreement, or any provision contained herein.

4.15    Applicable Law.  This Agreement shall be construed in accordance with, and its validity and effect (including any claims of breach of any of the terms hereof) shall be governed by the laws of the State of California.

4.16    Captions Not Part of Agreement.   The captions and headings of any term, condition and/or provision in this Agreement are provided for convenience of reference only and are not part of this Agreement.  Such captions and headings shall not affect the application or interpretation of the terms, conditions and/or provisions of this Agreement.

4.17    Fees.  In the event of any claim, dispute or controversy arising out of or relating to this Agreement, including an action for declaratory relief, the prevailing party in such action or proceeding shall be entitled to recover its court costs and reasonable out-of-pocket expenses not limited to taxable costs, including but not limited to telephone calls, photocopies, consultants' fees/experts' fees, travel, etc., and reasonable attorneys' fees to be fixed by the Court.  Such recovery shall include court costs, out-of-pocket expenses and attorneys' fees on appeal, if any. The Court shall determine who is the "prevailing party," whether or not the dispute or controversy proceeds to final judgment.  If any Party is reasonably required to incur such out-of-pocket expenses and attorneys' fees as a result of any claim arising out of or concerning this Agreement or any right or obligation derived hereunder, then the prevailing party shall be entitled to recover such reasonable out-of-pocket expenses and attorneys' fees whether or not an action is filed.

4.18    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same agreement.

5104430535        T-247   P.002/002   F-752

**N.Y. HILLSIDE, INC.**

By: _____
Its: _____
Dated: _____

**INTERNATIONAL PETROLEUM
MANAGEMENT, INC.**

By: _____
Its: _____
Dated: _____

**CHARLES JURGENS**

_____
　　Charles Jurgens
Dated: _____

**MAHGUIB EL-ARABI**

_____
　　Mahguib El-Arabi
Dated: _____

**OXY USA INC.**

By: _~~_____
Its: _~~_____
Dated: _____

**BERRY PETROLEUM COMPANY**

By: _____
Its: _____
Dated: _____

[11/28/01 [09399 D90 10102507.DOC] .

16

N.Y. HILLSIDE, INC.

By: _____
Its: _____
Dated: _____

INTERNATIONAL PETROLEUM
MANAGEMENT, INC.

By: _____
Its: _____President_____
Dated: ____Dec 4, 2001____

CHARLES JURGENS

_____
    Charles Jurgens
Dated: _____

MAHGUIB EL-ARABI

_____
    Mahguib El-Arabi
Dated: __Dec. 4, 2001__

OXY USA INC.

By: _____
Its: _____
Dated: _____

BERRY PETROLEUM COMPANY

By: _____
Its: _____
Dated: _____

**N.Y. HILLSIDE, INC.**

By: _Charles F. Jurgens_
Its: _Pres._
Dated: _12/7/01_

**INTERNATIONAL PETROLEUM
MANAGEMENT, INC.**

By: _____
Its: _____
Dated: _____

**CHARLES JURGENS**

_Charles Jurgens_
_____
Charles Jurgens
Dated: _12/4/01_

**MAHGUIB EL-ARABI**

_____
Mahguib El-Arabi
Dated: _____

**OXY USA INC.**

By: _____
Its: _____
Dated: _____

**BERRY PETROLEUM COMPANY**

By: _____
Its: _____
Dated: _____

**N.Y. HILLSIDE, INC.**

By: _____
Its: _____
Dated: _____

**INTERNATIONAL PETROLEUM MANAGEMENT, INC.**

By: _____
Its: _____
Dated: _____

**CHARLES JURGENS**

_____
Charles Jurgens
Dated: _____

**MAHGUIB EL-ARABI**

_____
Mahguib El-Arabi
Dated: _____

**OXY USA INC.**

By: _____
Its: _____
Dated: _____

**BERRY PETROLEUM COMPANY**

By: _____
Its: RALPH J. GOEHRING
Senior Vice President
and Chief Financial Officer
Dated: DEC. 12, 2001

11/28/01 (09599.090 10102507.DOC)

16

**SAMSON INVESTMENT COMPANY**

By: _____

Its: Jack A. Canon
Senior Vice President-General Counsel

Dated: December 14, 2001

**SAMSON HYDROCARBONS COMPANY**

By: _____

Its: Dennis R. Neill
President

Dated: December 14, 2001

APPROVED AS TO FORM:

McCUTCHEN, DOYLE, BROWN & ENERSEN
LLP

Jill C. Teraoka                                    Dated: _____
Attorneys for OXY USA INC.

NORDMAN, CORMANY, HAIR & COMPTON

Robert L. Compton

Attorneys for BERRY PETROLEUM COMPANY

                                                   Dated: _____

LOCKE, LIDDELL & SAPP, LLP

Elizabeth E. Mack

Attorneys for SAMSON INVESTMENT         Dated: _____
COMPANY and SAMSON HYDROCARBONS
COMPANY

PARKER, MILLIKEN, CLARK & O'HARA &
SAMUELIAN

Attorneys for Hillside Parties                     Dated: _____

11/28/01(09599.090 10102507.DOC)                   17

**SAMSON INVESTMENT COMPANY**

By: _____
Its: _____

Dated: _____

**SAMSON HYDROCARBONS COMPANY**

By: _____
Its: _____

Dated: _____

---

APPROVED AS TO FORM:

McCUTCHEN, DOYLE, BROWN & ENERSEN
LLP

*Jill C. Teraoka*
Jill C. Teraoka
Attorneys for OXY USA INC.                    Dated: _____

NORDMAN, CORMANY, HAIR & COMPTON

*Robert L. Compton*
Robert L. Compton

Attorneys for BERRY PETROLEUM COMPANY

                                              Dated: *December 18, 2001*

---

LOCKE, LIDDELL & SAPP, LLP


Elizabeth E. Mack

Attorneys for SAMSON INVESTMENT
COMPANY and SAMSON HYDROCARBONS       Dated: _____
COMPANY

---

PARKER, MILLIKEN, CLARK & O'HARA &
SAMUELIAN



Attorneys for Hillside Parties         Dated: _____

**SAMSON INVESTMENT COMPANY**

By: _____
Its: _____
Dated: _____

**SAMSON HYDROCARBONS COMPANY**

By: _____
Its: _____
Dated: _____

APPROVED AS TO FORM:

McCUTCHEN, DOYLE, BROWN & ENERSEN
LLP

Jill C. Teraoka                          Dated: _____
Attorneys for OXY USA INC.

NORDMAN, CORMANY, HAIR & COMPTON

Robert L. Compton

Attorneys for BERRY PETROLEUM COMPANY

Dated: _____

LOCKE, LIDDELL & SAPP, LLP

Elizabeth E. Mack

Attorneys for SAMSON INVESTMENT
COMPANY and SAMSON HYDROCARBONS
COMPANY                                  Dated: _____

PARKER, MILLIKEN, CLARK & O'HARA &
SAMUELIAN

Scott J. Leipzig
Attorneys for Hillside Parties           Dated: 1-9-02

11/28/01{09599.090 10102507.DOC}                    17