# Exhibit D

1  GARY A. MEYER (Bar No. 094144)
   SCOTT J. LEIPZIG (Bar No. 192005)
2  PEDRAM MAZGANI (Bar No. 204808)
   PARKER, MILLIKEN, CLARK, O'HARA & SAMUELIAN
3  A Professional Corporation
   333 South Hope Street - 27th Floor
4  Los Angeles, CA 90071-1488
   Telephone: (213) 683-6500
5  Facsimile: (213) 683-6669

**ORIGINAL FILED**

APR 1 2 2000

LOS ANGELES
SUPERIOR COURT

6  Attorneys for Defendants and Cross-Complainants
   N.Y. HILLSIDE, INC., a California corporation;
7  INTERNATIONAL PETROLEUM MANAGEMENT, INC.,
   a California corporation; CHARLES JURGENS and MAHGUIB
8  EL-ARABI

9

          SUPERIOR COURT OF THE STATE OF CALIFORNIA
10

             FOR THE COUNTY OF LOS ANGELES
11

| | |
|---|---|
| 12  PETRO RESOURCES, INC., a Texas corporation, | Case No.  BC 222456 |
| 13        Plaintiff, | Complaint Filed:  December 29, 1999 |
| 14      vs. | CROSS-COMPLAINT OF N.Y. HILLSIDE, INC.; INTERNATIONAL PETROLEUM |
| 15  N.Y. HILLSIDE, INC., a California corporation, also known as NY (HILLSIDE) | MANAGEMENT, INC.; CHARLES JURGENS AND MAHGUIB EL-ARABI |
| 16  INC., a California corporation, and NY (HILLSIDE) INC., a New York corporation; | FOR:  BREACH OF CONTRACT; ACCOUNT STATED; BREACH OF |
| 17  INTERNATIONAL PETROLEUM MANAGEMENT, INC., a California | IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; QUANTUM |
| 18  corporation; CHARLES JURGENS, an individual; MAHGUIB EL-ARABI, an | MERUIT; FRAUD; INTENTIONAL INTERFERENCE WITH ECONOMIC |
| 19  individual; and DOES 1-100, inclusive, | RELATIONS; NEGLIGENT INTERFERENCE WITH ECONOMIC |
| 20       Defendants. | RELATIONS; CONVERSION; BREACH OF LEASE; NEGLIGENCE; DECLARATORY |
| 21 | RELIEF; CONTINUING TRESPASS; CONTINUING NUISANCE; EQUITABLE |
| 22  N.Y. HILLSIDE, INC., a California corporation; INTERNATIONAL | CONTRIBUTION; AND EQUITABLE INDEMNITY. |
| 23  PETROLEUM MANAGEMENT, INC., a California corporation; CHARLES | TRIAL DATE:  None |
| 24  JURGENS, an individual; and MAHGUIB EL-ARABI, an individual, | |
| 25      Cross-Complainants, | |
| 26      vs. | |
| 27  PETRO RESOURCES, INC., a Texas corporation; KENT RILEY, an individual; | |
| 28 | |

1  JOE ROSE, an individual; GRACE )
   ENERGY CORPORATION, a Delaware )
2  corporation; W.R. GRACE & CO., a )
   Delaware corporation; TOSCO REFINING )
3  COMPANY, a Nevada corporation; TOSCO )
   CORPORATION, a Nevada corporation; )
4  TEORCO, a Delaware corporation; BERRY )
   PETROLEUM COMPANY, a Delaware )
5  corporation; and ROES 1 through 10, )
   inclusive, )
6  )
   )
7  

         Cross-Defendants. )

8

9

10      COMES NOW, the Cross-Complainants N.Y. HILLSIDE, INC., a corporation;

11  INTERNATIONAL PETROLEUM MANAGEMENT, INC., a corporation; CHARLES

12  JURGENS and MAHGUIB EL-ARABI (hereinafter "Cross-Complainants") and for causes of

13  action against Cross-Defendants PETRO RESOURCES, INC., a Texas corporation; KENT

14  RILEY, an individual; JOE ROSE, an individual; GRACE ENERGY CORPORATION, a

15  Delaware corporation; W.R. GRACE & CO., a Delaware corporation; TOSCO REFINING

16  COMPANY, a Nevada corporation; TOSCO CORPORATION, a Nevada corporation;

17  TEORCO, a Delaware corporation; BERRY PETROLEUM COMPANY, a Delaware

18  corporation; and ROES 1 through 10, inclusive, (hereinafter "Cross-Defendants"), and each of

19  them, complains and alleges as follows:

20

21                    **PARTIES**

22      1.    Cross-Complainant N.Y. HILLSIDE, INC. (hereinafter "NYHI") is, and at all

23  times mentioned herein, was a corporation duly existing under the laws of the State of California

24  and doing business in the State of California, County of Los Angeles.

25      2.    Cross-Complainant INTERNATIONAL PETROLEUM MANAGEMENT, INC.

26  (hereinafter "IPM") is, and at all times mentioned herein, was a corporation duly existing under

27  the laws of the State of California and doing business in the State of California, County of Los

28  Angeles.

3.     Cross-Complainant CHARLES JURGENS (hereinafter "JURGENS") is, and at all times mentioned herein, was a resident of the County of Los Angeles, State of California.

4.     Cross-Complainant MAHGUIB EL-ARABI (hereinafter "EL-ARABI") is, and at all times mentioned herein, was a resident of the County of Los Angeles, State of California.

5.     Cross-Complainants are informed and believe, and on that basis allege, that Cross-Defendant PETRO RESOURCES, INC. (hereinafter "PRI") is, and at all times herein mentioned was, a Texas corporation, doing business in the State of California, County of Los Angeles.

6.     Cross-Complainants are informed and believe, and on that basis allege, that Cross-Defendant KENT RILEY (hereinafter "RILEY") is an individual residing in Fulton, Texas, and an officer and director of PRI.

7.     Cross-Complainants are informed and believe, and on that basis allege, that Cross-Defendant JOE ROSE (hereinafter "ROSE") is an individual residing in Bakersfield, California, and an officer and director of PRI.

8.     Cross-Complainants are informed and believe, and on that basis allege, that at all times herein mentioned, PRI was undercapitalized and further that RILEY and ROSE so influenced and governed PRI that there became such a unity of interest and ownership that the individuality and separateness of, on the one hand, PRI and, on the other hand, RILEY and ROSE, has ceased, and as a result, adherence to the fiction of the separate existence of the corporation would sanction fraud and promote injustice in that it would permit RILEY and ROSE to escape the consequences of their bad faith, fraudulent conduct taken in the name of the corporation, as hereinbelow alleged.

9.     Cross-Defendant GRACE ENERGY CORPORATION (hereinafter "GRACE ENERGY") is, and at all times herein mentioned was, a Delaware corporation, doing business in the State of California, County of Los Angeles.

10.     Cross-Complainants are informed and believe, and on that basis allege, that Cross-Defendant W. R. GRACE & CO. (hereinafter "W.R. GRACE") is, and at all times herein mentioned was, a Delaware corporation, doing business in the State of California, County of Los

1  Angeles.

2      11.    Cross-Complainants are informed and believe and thereon allege that GRACE

3  ENERGY is, and at all times mentioned herein was, an agent of W.R. GRACE and a mere shell,

4  instrumentality and conduit through which W.R. GRACE has carried on its business in the

5  corporation name, exercising control and dominance of such business to such an extent that any

6  individuality or separateness between GRACE ENERGY and W.R. GRACE does not, and at all

7  relevant times did not, exist.  Cross-Complainants are further informed and believe and based

8  thereon allege that adherence to the fiction of the separate existence between GRACE ENERGY

9  and W.R. GRACE would sanction fraud and promote injustice, in that if the corporate entity of

10  GRACE ENERGY were not disregarded, W.R. GRACE would be effectively insulated from

11  liability for its legal obligations.  (GRACE ENERGY and W.R. GRACE are at time collectively

12  referred to as the "W.R. GRACE Cross-Defendants".)

13      12.    Cross-Complainants are informed and believe, and on that basis allege,  that

14  Cross-Defendant TOSCO REFINING COMPANY (hereinafter "TOSCO REFINING") is, and at

15  all times herein mentioned was, a Nevada corporation, doing business in the State of California,

16  County of Los Angeles.

17      13.    Cross-Complainants are informed and believe, and on that basis allege,  that

18  Cross-Defendant TOSCO CORPORATION (hereinafter "TOSCO") is, and at all times herein

19  mentioned was, a Nevada corporation, doing business in the State of California, County of Los

20  Angeles.

21      14.    Cross-Complainants are informed and believe, and on that basis allege, that

22  Cross-Defendant TEORCO, a division of TOSCO, is, and at all times herein mentioned was, a

23  Delaware corporation, doing business in the State of California, County of Los Angeles.

24      15.    Cross-Complainants are informed and believe and thereon allege that TEORCO, a

25  wholly owned subsidiary of TOSCO, is, and at all times mentioned herein was, an agent of

26  TOSCO and a mere shell, instrumentality and conduit through which TOSCO has carried on its

27  business in the corporation name, exercising control and dominance of such business to such an

28  extent that any individuality or separateness between TEORCO and TOSCO does not, and at all

1   relevant times did not, exist.  Cross-Complainants are further informed and believe and based

2   thereon allege that adherence to the fiction of the separate existence between TEORCO and

3   TOSCO would sanction fraud and promote injustice, in that if the corporate entity of TEORCO

4   were not disregarded, TOSCO would be effectively insulated from liability for its legal

5   obligations.  (TEORCO and TOSCO are at times collectively referred to as the "TOSCO Cross-

6   Defendants".)

7       16.     Cross-Complainants are informed and believe, and on that basis allege,  that

8   Cross-Defendant BERRY PETROLEUM COMPANY, formerly known as TOSCO

9   ENHANCED OIL RECOVERY CORPORATION, (hereinafter "BERRY") is, and at all times

10  herein mentioned was, a Delaware corporation, doing business in the State of California, County

11  of Los Angeles.

12

13                  **JURISDICTION AND VENUE**

14      17.     This Cross-Complaint alleges causes of action against the Plaintiff, known third

15  parties, and unknown third parties arising out of the events, transactions and occurrences alleged

16  in the Complaint.

17      18.     Venue is proper in this Court because (a) this Cross-Complaint is related to an

18  action already on file in this Court; (b) the events, transactions and occurrences that are the

19  subject of this Cross-Complaint, including the commission of the tortious acts and breaches

20  described herein, occurred in part within the County of Los Angeles; and (c) Cross-Defendants

21  engaged in business within the County of Los Angeles.

22

23                  **GENERAL ALLEGATIONS**

24      19.     Cross-Complainants are ignorant of the names and capacities, whether individual,

25  corporate, associate, partnership, agency or otherwise, of Cross-Defendants ROES 1 to 20 and,

26  therefore, sues those Cross-Defendants by fictitious names pursuant to Code of Civil Procedure

27  section 474.  Cross-Complainants allege that the ROE Cross-Defendants participated in, or are

28  otherwise in some manner responsible for the damages to Cross-Complainants resulting from the

1  facts and occurrences alleged in this Cross-Complaint. Cross-Complainants will seek leave of

2  Court to amend this Cross-Complaint to show the true names, capacities and relationships when

3  the same have been ascertained.

4      20.    Cross-Complainants are informed and believe, and thereupon allege that at all

5  times herein mentioned, Cross-Defendants, and each of them, reside in or were authorized to and

6  are doing business in one of the states of the United States.

7      21.    At all times herein mentioned, each of the Cross-Defendants were the agents and

8  employees of each remaining Cross-Defendant and was at all times acting within the purpose and

9  scope of said agency and employment.

10

11 **The PRI Complaint:**

12     22.    On or about December 29, 1999, Cross-Defendant PRI herein filed a Complaint

13 for Declaratory Relief, Specific Performance, Imposition of an Equitable Lien, Injunctive Relief,

14 Damage (And/Or Treble or Punitive Damages), Breach of Lease, Breach of Contract,

15 Negligence, Nuisance, Waste, Trespass, Fraud, Negligent Misrepresentation, Slander of Title and

16 Conversion against Cross-Complainants, which Complaint is part of this action and is

17 incorporated herein by this reference, the same as set forth hereat.

18     23.    Cross-Complainants have filed a Demurrer to Plaintiff's Complaint and Motion to

19 Strike Portions of Plaintiff's Complaint denying any and all liability, and hereby expressly deny

20 any wrongdoing, negligence or other actionable conduct giving rise to any liability whatsoever.

21 However, despite such denial, in the event that damages are awarded against Cross-

22 Complainants, Cross-Complainants allege that all or some portion of Cross-Defendants' damages

23 were proximately caused by the wrongdoing, negligence or other actionable conduct on the part

24 of the Cross-Defendants, and each of them.

25

26 **History of the Subject Property:**

27     24.    On or about May 1, 1989, PRI, as Lessor, entered into a written Oil and Gas Lease

28 with Hillside Oil Partners, as Lessee. Said Lease which will hereinafter be referred to as the

1 "York Lease" recites that Hillside Oil Partners is a partnership composed of AES Sierra, Inc. and

2 NY Oil, Inc., which is the predecessor in interest to NY Hillside. The York Lease, in conjunction

3 with subsequent agreements by and between NYHI and PRI established a lessee - lessor

4 relationship between NYHI and PRI on certain properties on which NYHI and IPM operated oil

5 field facilities under a leasehold agreement with PRI (hereinafter referred to as the "Subject

6 Property").

7      25.    Prior to NYHI's occupation of the Subject Property in 1989, many other entities,

8 including but not limited to GRACE ENERGY, W.R. GRACE, TOSCO REFINING, TOSCO,

9 TEORCO, and BERRY operated oil wells on the Subject Property.  Based upon information and

10 belief, the Subject Property has been utilized solely as an oil field property at least since the

11 1950's.

12

13 **AES Placerita Suit:**

14      26.    Prior to the institution of the instant lawsuit, PRI and NYHI were involved in a

15 lawsuit as co-plaintiffs against AES Placerita, Inc.  This previous lawsuit was necessitated due to

16 AES Placerita's failure to fulfill its contractual obligations to produce steam for the Subject

17 Property.

18      27.    In order to produce oil from the wells on the Subject Property, it was necessary to

19 utilize steam. Prior to 1989, AES Placerita, Inc. (hereinafter "AESPI") had constructed a facility

20 to produce steam on a site centrally located in the Placerita Oil Fields.  Commencing in or

21 around May, 1989, Placerita Oil Company, Inc. (hereinafter "POCI"), a subsidiary of AESPI,

22 provided steam to Hillside Oil Partners (hereinafter "HOP"), and, after July 1, 1994, to NYHI,

23 for use in the operations on the properties, *inter alia*, which were the subject of the York Lease,

24 as amended.

25      28.    Sometime thereafter, POCI ceased to provide steam to NYHI, and some of the

26 wells on the aforesaid properties could no longer produce oil in commercially viable amounts,

27 and a lawsuit was instituted in or around September 1995, seeking damages for the failure to

28 deliver the steam.  Said lawsuit was entitled *Petro Resources, Inc. v. AES, Corp, et al.*, Case No.

1    LC033934, Los Angeles Superior Court (hereinafter "AES Action).

2

3    **Fee Splitting Agreement:**

4         29.    Although NYHI and PRI were co-plaintiffs in the AES Action, and were jointly

5    represented by John Gaims of the Los Angeles law firm of Gaims, Weil, West & Epstein L.L.P.

6    (hereinafter "Gaims") , NYHI paid all attorneys' fees and costs incurred on behalf of both co-

7    plaintiffs for the period in or about August 1995 through on or about June 30, 1997. The amount

8    of attorneys' fees and costs paid by NYHI during this period totaled approximately $200,539.35,

9    as evidenced by the summary of fees prepared by JURGENS based upon the invoices received

10   from Gaims, a true and correct copy of which is contained herein as **Exhibit "A."**

11         30.    In light of the fact that NYHI paid all attorneys' fees and costs incurred on behalf

12   of both co-plaintiffs for the period between in or about August 1995 through on or about June 30,

13   1997, NYHI and PRI entered into an agreement, memorialized by a writing dated September 12,

14   1997, wherein, upon the settlement of the AES Action, PRI agreed to pay its equal share of the

15   legal fees and costs incurred between in or about August 1995 and on or about June 30, 1997, a

16   total of approximately $100,269.67.  A true and correct copy of this written agreement is

17   attached as **Exhibit "B"** to this Cross-Complaint.

18         31.    As of the date of the filing of this Cross-Complaint, and despite demand made by

19   NYHI to PRI and RILEY, neither PRI, RILEY nor ROSE, nor any of their agents or

20   representatives, have made payment pursuant to this written contract referenced in paragraph 28

21   of this Cross-Complaint, a true and correct copy of which is attached as **Exhibit "B"** to this

22   Cross-Complaint.

23

24   **AES Placerita Settlement and Establishment of Clean-Up Fund:**

25         32.    On or about August 26, 1998, the AES Action was settled through mediation

26   (hereinafter "AES Settlement").  The pertinent terms (as far as the present action is concerned)

27   were as follows:  The Defendants therein, including AESPI and POCI, agreed to pay the sum of

28   Eight Million Dollars ($8,000,000.00) to be evenly divided between PRI and NYHI.  From the

1  Four Million Dollar ($4,000,000.00) payment to NYHI, NYHI agreed to set aside One Million

2  Dollars ($1,000,000.00) as a clean-up fund (hereinafter referred to as "the Clean-Up Fund").  It

3  was agreed by and among NYHI, on the one hand, and PRI, ROSE and RILEY on the other

4  hand, that the Clean-Up Fund was to be used to pay for: (1) the oil well abandonment, including

5  but not limited to the plugging of the oil wells, the decommissioning of oil well operations, and

6  the removal of equipment from the Subject Property(hereinafter referred to as "the Abandonment

7  Activities"), and (2) the remediation and/or removal of contaminants which NYHI may have

8  contributed to or caused during its operations on the Subject Property, as required and approved

9  by the governmental agency having jurisdiction for said remediation and/or removal (the

10  California Regional Water Quality Control Board - Los Angeles Region).  The above-described

11  Abandonment Activities and remediation activities are hereinafter collectively referred to as "the

12  Clean-Up Activities").

13      33.    To the extent the entire Clean-Up Fund was not used for the Clean-Up Activities,

14  it was agreed by and among NYHI, on the one hand, and PRI, ROSE and RILEY on the other

15  hand, and as memorialized in the Settlement Agreement, that "the remaining funds [were to] be

16  divided equally between [PRI] and [NYHI]".  Gaims was selected by the parties as the agreed-

17  upon holder of the Clean-Up Fund and the One Million Dollars ($1,000,000.00) was placed in a

18  trust account of that firm.

19      34.    The agreement establishing the Clean-Up Fund (hereinafter referred to as the

20  "Clean-Up Fund Agreement") was put on official record by Gaims in the presence of the

21  mediator, retired Judge Weinstein, RILEY, JURGENS, EL-ARABI and ROSE on or about

22  August 26, 1998.  This Agreement was memorialized by a stenographer, a true and correct copy

23  of which is attached hereto as **Exhibit "C."**

24      35.    Nowhere in said Clean-Up Fund Agreement does PRI and/or RILEY retain any

25  right to control the release or non-release of funds from the Clean-Up Fund.

26      36.    Prior to entering into the AES Settlement, PRI, RILEY and ROSE was each

27  fully aware of Cross-Complainant EL-ARABI's reluctance to enter into the AES Settlement

28  based on the following facts:  To effectuate the AES Settlement, EL-ARABI's participation and

1 approval was required based upon his status as a corporate officer and director of NYHI. In

2 addition, EL-ARABI was the President of IPM, which was the operator of the oil fields on the

3 Subject Property pursuant to a contract with NYHI. As operator of the Subject Property oil

4 fields, prior to the AES Settlement, EL-ARABI's sole source of income was IPM's operations on

5 the Subject Property. Pursuant to the Settlement Agreement, AES terminated its steam

6 production for the Subject Property, thus effectively precluding further operations on the Subject

7 Property, and thereby making obsolete IPM's role as operator of the Subject Property oil fields,

8 and precluding EL-ARABI's ability to generate any further income based upon operations at the

9 Subject Property.

10        37.    So as to entice EL-ARABI to consent to the AES Settlement, PRI, RILEY and

11 ROSE each represented to and assured EL-ARABI that: (1) IPM would be able to continue

12 generating income by conducting all or a portion of the Abandonment and/or Clean-Up

13 Activities on the Subject Property, and (2) that the monies expended on the Abandonment and/or

14 Clean-Up Activities on the Subject Property would come from the Clean-Up Fund and not from

15 any other portion of IPM or EL-ARABI's AES Settlement proceeds.

16        38.    But for the above-described representations and assurances made by PRI, RILEY

17 and ROSE, EL-ARABI would not have entered into the AES Settlement.

18

19 **Abandonment of the York Lease and Waiver of Royalties:**

20        39.    NYHI provided PRI and RILEY with written notice that effective August 31,

21 1998, NYHI was terminating and surrendering the York Lease, one of several leases that forms

22 the basis of the lessee-lessor relationship between NYHI and PRI. A true and correct copy of

23 this notice is attached as **Exhibit "D"** to this Cross-Complaint.

24        40.    As a consequence of said termination of the York Lease, and pursuant to

25 paragraph 29 of the York Lease, NYHI was relieved of its obligation to pay Minimum Royalty

26 Payments. Even prior to NYHI's termination of the York Lease, on or about August 26, 1998,

27 RILEY made representations to NYHI and JURGENS that PRI had waived future royalty

28 payments as of that date. This agreement was confirmed in a March 16, 1999 letter from RILEY,

1    a true and correct copy of which is attached as **Exhibit "E"** hereto.

2        41.    In or about October of 1998, despite the fact that the Clean-Up Fund had yet to be

3    funded by AES, Cross-Complainants began Abandonment Activities based upon representations

4    made by ROSE and RILEY that the Clean-Up Fund would be funded and that funds from the

5    Clean-Up Fund would be released for all Clean-Up Activities conducted prior to and after the

6    Clean-Up Fund's funding. As of October 1998, AES had yet to deposit funds into the Clean-Up

7    Fund.

8        42.    But for the representations and assurances made by RILEY and ROSE that the

9    Clean-Up Fund would be funded and that funds from the Clean-Up Fund would be reimbursed

10   and/or released for all Clean-Up Activities conducted prior to and after the Clean-Up Fund's

11   funding, NYHI would not have commenced Clean-Up Activities, nor would it have paid for such

12   Clean-Up Activities with its own funds.

13       43.    In or about February, 1999, the Clean-Up Fund was funded. Upon notification of

14   this funding, NYHI provided Gaims and PRI with documentation of the costs incurred by NYHI

15   in abandonment of the York Lease as of that date. Despite the aforesaid notification and proper

16   documentation, PRI, RILEY and ROSE refused to release funds pursuant to the Clean-Up Fund

17   Agreement, a true and correct copy of which is attached as **Exhibit "C"** hereto.

18       44.    While waiting for the funds to be released from the Clean-Up Fund, and upon

19   making subsequent demands for the release of said funds, NYHI continued the Clean-Up

20   Activities under the good faith understanding and based upon representations made by PRI,

21   RILEY and ROSE, that PRI, RILEY and ROSE would authorize the release of funds from the

22   Clean-Up Fund. From October 1998 through April 1999, NY Hillside conducted Clean-Up

23   Activities based upon the above-referenced good faith understanding and representations by PRI,

24   RILEY and ROSE.

25       45.    At no point during the Abandonment Activities conducted prior to in or about

26   March 1999, did PRI, RILEY or ROSE object to NYHI's Abandonment Activities, and during

27   this period, removed equipment from the Subject Property owned by PRI. Nor did PRI, RILEY

28   or ROSE during the aforementioned period state that an environmental assessment, including a

1   remedial action plan, need be done prior to, or as a condition precedent to NYHI performing any

2   Abandonment Activities, or as a condition precedent to having funds released from the Clean-Up

3   Fund.

4        46.    Between in or about February 1999 and April 1999, NYHI continued the

5   Abandonment Activities and continued to make demands on PRI and RILEY for the release of

6   funds pursuant to the Clean-Up Fund Agreement.  In or around April 1999, PRI once again

7   informed NYHI that it would not authorize the release of funds for NYHI's Clean-Up Activities.

8   PRI further stated that it was PRI's position that the preparation of an environmental assessment

9   need be done prior to the performance of any Abandonment Activities, and as a condition

10   precedent to having funds released from the Clean-Up Fund.  At this point, NYHI was forced to

11   cease Abandonment Activities, as there was no longer a good faith belief that funds would be

12   released by PRI, RILEY and ROSE pursuant to the Clean-Up Fund Agreement.

13        47.    PRI's position that NYHI improperly conducted Abandonment Activities by not

14   first conducting an environmental assessment is wholly without merit, and unsupported by the

15   facts.  In fact, the Clean-Up Fund Agreement, the York Lease, and the position taken by the

16   Regional Water Quality Control Board each support the propriety of commencing Abandonment

17   Activities prior to performing remediation of the Subject Property.  Further, as the entity which

18   in good faith commenced conducting Clean-Up Activities NYHI maintains discretion as to how

19   to most effectively and economically perform said Clean-Up Activities.  Notwithstanding the

20   aforesaid facts, subsequent to the AES Settlement, the establishment of the Clean-Up Fund, and

21   NYHI's commencement of Abandonment Activities, PRI, RILEY and Rose unilaterally and

22   without substantive support therefor, insisted that they would not approve the release of any

23   funds from the Clean-Up Fund for Abandonment Activities done prior to an environmental

24   assessment.

25        48.    From October 1998, when Abandonment Activities began, until April 1999, when

26   abandonment was terminated as a result of PRI's refusal to release funds from the Clean-Up

27   Fund and PRI's refusal to enter into an access agreement regarding the Subject Property, NYHI

28   expended approximately $151,062.89 for Abandonment Activities on the York Lease.  These

1  costs are summarized in **Exhibit "F"** attached hereto, and are more fully detailed in **Exhibit "G"**

2  attached hereto. The aforementioned documentation of abandonment costs was provided to PRI

3  and RILEY in support of NYHI's numerous demands for reimbursement of said costs between in

4  or about February 1999 and April 1999.

5       49.    At the time of the filing of this Cross-Complaint, PRI, RILEY and ROSE had not

6  authorized the release of any funds to reimburse NYHI for its Clean-Up efforts as agreed to by

7  the parties pursuant to the Clean-Up Fund Agreement, except for a release of funds in or around

8  November 1999, after PRI had already taken possession of the Subject Property, in the amount of

9  $10,000.00, in order that Cross-Complainants could provide partial payment to their

10  environmental consultant, Alaska Petroleum, to prepare a Remedial Action Plan.

11

12  **PRI's Denial of Access to the Premises:**

13       50.    In or about April 1999, PRI took control of the Subject Property by placing said

14  property under lock and key, and despite the requests of NYHI and IPM, by refusing to enter into

15  an access agreement with either NYHI or IPM which access agreement would have to enable NY

16  Hillside to continue Clean-Up Activities on the Subject Property.

17       51.    Prior to PRI placing the Subject Property under lock and key and refusing to enter

18  into an access agreement, IPM, pursuant to its operating agreement with NYHI, employed a staff

19  which was utilized to conduct the Abandonment Activities on the York Lease. Subsequent to

20  PRI's locking of the premises, its refusal to enter into an access agreement, and upon PRI,

21  RILEY and ROSE's continued refusal to release funds from the Clean-Up Fund, IPM was forced

22  to release its staff, thus complicating and adding expense to potential future abandonment efforts

23  by NYHI.

24       52.    PRI's unreasonable actions, as described herein, prevented IPM and EL-ARABI

25  from continuing to earn income from conducting Abandonment and/or Clean-Up Activities at the

26  Subject Property. As discussed hereinabove, EL-ARABI consented to the AES Settlement

27  under the reasonable belief and assurances by PRI, RILEY and ROSE that IPM would be able to

28  continue to generate income by and through conducting said Abandonment and/or Clean-Up

1  Activities.

2      53.    As a result of PRI placing said premises under lock and key and refusing to enter

3  into an access agreement, NYHI and IPM have been unable to recover equipment belonging to

4  NYHI and IPM which still remains on the property.

5

6  **FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

7  (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

8

9      54.    Cross-Complainants hereby refer to and incorporate herein by this reference each

10  and every allegation of Paragraphs 1-53 of this Cross-Complaint as though fully set forth hereat.

11      55.    Cross-Complainants have performed all of their obligations and satisfied all

12  conditions necessary to enforce the written agreement, dated September 12, 1997, wherein PRI

13  agreed upon the settlement of the AES Placerita lawsuit, to pay its equal share of the legal fees

14  and costs incurred between in or about August 1995 and on or about June 30, 1997, in the

15  amount of $100,269.67.   A true and correct copy of this written agreement is attached as **Exhibit**

16  **"B"** to this Cross-Complaint.

17      56.    PRI, RILEY and ROSE have breached said written agreement by failing and

18  refusing, despite repeated demands by NYHI, to pay its equal share of the legal fees and costs

19  incurred between in or about August 1995 and or about June 30, 1997.

20      57.    As a direct and proximate result of said breach, Cross-Complainants have

21  sustained damages, and will continue to sustain damages in the amount of $100,269.67 plus

22  interest on said sum from February 9, 1999, the date the AES funds became available,  to the

23  present.

24  ///

25  ///

26  ///

27  ///

28  ///

## SECOND CAUSE OF ACTION FOR ACCOUNT STATED

### (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

58.    Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-57 of this Cross-Complaint as though fully set forth hereat.

59.    On or about September 12, 1997, an account was stated in writing by and between NYHI and PRI and on such statement a balance of $100,269.67 was found due to NYHI from PRI. PRI agreed to pay to the NYHI said balance. A true and correct copy of the account is attached hereto as **Exhibit "B"** hereto and is made a part hereof.

60.    Although demanded by NYHI from PRI, neither all nor any part of the agreed balance has been paid.

61.    There is now due, owing, and unpaid from PRI to NYHI the sum of $100,269.67, together with interest from and after February 9, 1999.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

### (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

62.    Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-61 of this Cross-Complaint as though fully set forth hereat.

63.    In or about August, 1998, NYHI agreed to set aside One Million Dollars ($1,000,000.00) as a clean-up fund to be used to pay for any abandonment and/or remediation costs associated with the subject properties. The Los Angeles law firm of Gaims, Weil, West & Epstein L.L.P. was selected by the parties as the agreed-upon holder of the Clean-Up Fund and the One Million Dollars ($1,000,000.00) was placed in a trust account of that firm.

64.    This agreement establishing the Clean-Up Fund was put on official record by Gaims in the presence of the mediator, retired Judge Weinstein, RILEY, JURGENS, EL-ARABI and ROSE on or about August 26, 1998. This agreement was memorialized by a stenographer and a true and correct copy is attached hereto as **Exhibit "C."**

65.     Cross-Complainants have performed all of their obligations and satisfied all conditions necessary to enforce said contract by effectuating Abandonment Activities, providing PRI, RILEY and ROSE with a detailed accounting of said activities, and making demands on PRI, RILEY and ROSE to authorize release of funds from the Clean-Up Fund to compensate Cross-Complainants for monies spent on Abandonment Activities.

66.     Since February 1999, Cross-Complainants have repeatedly made demands on PRI, RILEY and ROSE to approve release of monies from the Clean-Up Fund in an amount equal to the monies spent on Abandonment Activities by Cross-Complainants between in or about October 1998 and in or about April 1999.  Said sum totals $151,062.89 and is summarized and detailed in **Exhibits "F" and "G"**, respectively.

67.     PRI, RILEY and ROSE have breached said agreement by unreasonably failing and refusing to approve the release of monies from the Clean-Up Fund in an amount equal to the monies spent on Abandonment Activities by Cross-Complainants between in or about October 1998 and in or about April 1999.

68.     As a direct and proximate result of said breach, Cross-Complainants have sustained damages, and will continue to sustain damages in the amount of $151,062.89 plus interest on said sum.

## FOURTH CAUSE OF ACTION FOR BREACH OF IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING
### (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

69.     Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-69 of this Cross-Complaint as though fully set forth hereat.

70.     The agreement entered into by and between NYHI and PRI on or about August 26, 1998, in which NYHI agreed to set aside One Million Dollars ($1,000,000.00) as a clean-up fund to be used to pay for any Clean-Up Activities associated with the Subject Property, contained implied covenants of good faith and fair dealing by which the parties promised to

1   refrain from doing any act which would prevent or impede any other party's enjoyment of the

2   fruits of the agreement.  Among other implied covenants, this agreement necessarily contained

3   implied covenants that PRI, RILEY and ROSE would not unreasonably withhold their approval

4   for the release of clean-up funds to be used to pay for any abandonment and/or remediation costs.

5        71.    Cross-Complainants are informed and believe, and therefore allege, that PRI,

6   RILEY and ROSE violated and breached the contract implied covenants with Cross-

7   Complainants by unreasonably failing and refusing to authorize the release of monies from the

8   Clean-Up Fund despite Cross-Complainants having completed portions of the Abandonment

9   Activities, provided documentation thereof, and making written demands for the release of funds

10  associated therewith.

11       72.    As a direct and proximate result of said breach, Cross-Complainants have

12  sustained damages, and will continue to sustain damages in the amount of $151,062.89 plus

13  interest on said sum.

14

15              **FIFTH CAUSE OF ACTION FOR QUANTUM MERUIT**

16            (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

17

18       73.    Cross-Complainants hereby refer to and incorporate herein by this reference each

19  and every allegation of Paragraphs 1-72 of this Cross-Complaint as though fully set forth hereat.

20       74.    From October 1998, when Abandonment Activities began, until April 1999, when

21  Abandonment Activities were ceased due to PRI, RILEY and ROSE's refusal to authorize the

22  release of funds from the Clean-Up Fund, NYHI expended a total of $151,062.89 in

23  Abandonment Activities on the York Lease property.

24       75.    On several occasions, Cross-Complainants formally demanded reimbursement of

25  said abandonment expenditures, however, PRI, RILEY and ROSE unreasonably withheld their

26  approval of said funds in direct contravention of the Clean-Up Fund Agreement.

27       76.    As the owner of the York Lease property, PRI, RILEY and ROSE were the

28  ultimate beneficiaries of the expenditures by Cross-Complainant's to abandon the York Lease

1   property. As of the date of the filing of this Cross-Complaint, PRI, RILEY and ROSE have not

2   given their consent for the release of the funds and as such have been unjustly enriched.

3         77.   As a result, Cross-Complainants have been damaged in an amount above this

4   Court's jurisdictional minimum. Cross-Complainants' damages include, but are not limited to,

5   an amount to be proven at trial, plus interest from the date the services and benefits were

6   rendered to the date of the judgment herein.

7

8                   **SIXTH CAUSE OF ACTION FOR FRAUD**

9        (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

10

11         78.   Cross-Complainants hereby refer to and incorporate herein by this reference each

12   and every allegation of Paragraphs 1-77 of this Cross-Complaint as though fully set forth hereat.

13         79.   As alleged hereinabove, PRI, RILEY and ROSE represented to Cross-

14   Complainants by and through the Clean-Up Fund, as well as through oral and written

15   communications after the establishment of the Fund, that all monies expended by Cross-

16   Complainants for Clean-Up Activities would be reimbursed from the Clean-Up Fund.

17         80.   At the time said Cross-Defendants made such agreement and representations, they

18   knew them to be false, and as such, had no intention of compensating monies expended by

19   Cross-Complainants for Clean-Up Activities from the Clean-Up Fund. They nevertheless made

20   such representations intending that Cross-Complainants rely thereon in agreeing to the AES

21   Settlement, the formation of the Clean-Up Fund, and in moving forward with the Clean-Up

22   Activities.

23         81.   Having no reason to believe the representations to be false or inaccurate, Cross-

24   Complainants did reasonably rely thereon in agreeing to the AES Settlement, the formation of

25   the Clean-Up Fund, and in moving forward with the Clean-Up Activities.

26         82.   At all times during the aforementioned Clean-Up Activities undertaken by NYHI

27   between October 1998 and April 1999, PRI, RILEY and ROSE consented to said Clean-Up

28   Activities. At no point during this initial abandonment of the York Lease did PRI, RILEY or

1  ROSE object to NYHI's Abandonment Activities on the Subject Property. Rather, PRI, RILEY

2  and ROSE sat by for seven months and watched Cross-Complainants expend large sums of their

3  own funds in abandoning PRI's property, with no intention of releasing funds to compensate

4  Cross-Complainants for said expenditures.

5       83.    Had Cross-Complainants known that PRI, RILEY and ROSE had no intention of

6  releasing funds to compensate Cross-Complainants for said expenditures, Cross-Complainants

7  would not have agreed to the formation of the Clean-Up Fund, nor would they have began

8  Abandonment Activities on the York Lease, incurring $151,062.89 worth of expenditures never

9  to be reimbursed from the Clean-Up Fund.

10      84.    As a direct and proximate result of the aforesaid conduct by said Cross-

11  Defendants, Cross-Complainants have sustained damages, and will continue to sustain damage,

12  in an amount which cannot yet be fully ascertained, but which exceeds the minimum

13  jurisdictional amount for this court. Cross-Complainants will seek leave of court to amend this

14  Cross-Complaint to set forth the full amount of the damage when the same has been ascertained.

15      85.    In performing the aforesaid acts and undertaking such conduct, said Cross-

16  Defendants acted with Fraud, Malice and oppression toward Cross-Complainants and in

17  conscious disregard of the rights of Cross-Complainants. Said conduct was outrageous and

18  despicable within the meaning of Civil Code section 3294. Thus, Cross-Complainants are

19  entitled to an award of punitive and/or exemplary damages from each and all named Cross-

20  Defendants.

21

22  <u>SEVENTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE</u>

23  <u>WITH ECONOMIC RELATIONS</u>

24  (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

25

26      86.    Cross-Complainants hereby refer to and incorporate herein by this reference each

27  and every allegation of Paragraphs 1-85 of this Cross-Complaint as though fully set forth hereat.

28  ///

87. Under the terms of the Clean-Up Fund Agreement, NYHI was to expend monies for the Abandonment and/or Clean-Up Activities on the Subject Property and Gaims was to reimburse said monies to NYHI from the Clean-Up Fund. Nowhere in said Clean-Up Fund Agreement does PRI and/or RILEY retain any right to control the release or non-release of funds from the Clean-Up Fund.

88. This agreement establishing the Clean-Up Fund was put on official record by Gaims in the presence of the mediator, retired Judge Weinstein, RILEY, JURGENS, EL-ARABI and ROSE on or about August 26, 1998.

89. As such, PRI, RILEY and ROSE knew of the existence of the economic relationship between NYHI and Gaims described above.

90. PRI, RILEY and ROSE intentionally disrupted the above-described relationship by unreasonably failing and refusing to authorize release of monies from the Clean-Up Fund.

91. As a direct and proximate result of said intentional acts, Cross-Complainants have sustained damages, and will continue to sustain damages in the amount of $151,062.89 plus interest on said sum.

92. In performing the aforesaid acts and undertaking such conduct, said Cross-Defendants acted with Fraud, Malice and oppression toward Cross-Complainants and in conscious disregard of the rights of Cross-Complainants. Said conduct was outrageous and despicable within the meaning of Civil Code section 3294. Thus, Cross-Complainants are entitled to an award of punitive and/or exemplary damages from each and all named Cross-Defendants.

## EIGHTH CAUSE OF ACTION FOR NEGLIGENT INTERFERENCE
## WITH ECONOMIC RELATIONS
### (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

93. Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-92 of this Cross-Complaint as though fully set forth hereat.

94.     In light of Gaims' policy of refusing to release funds from the Clean-Up Fund unless approval for such release is given by all parties, it was foreseeable by PRI, RILEY and ROSE that their lack of approval for the release of funds would ultimately cause a risk of harm to the economic relationship between NYHI and Gaims.  In particular, it was foreseeable that their lack of approval for the release of funds would cause Gaims to refuse to release funds that were due to NYHI pursuant to the Clean-Up Fund Agreement.

95.     PRI, RILEY and ROSE negligently and unreasonably withheld their approval of Gaims' release of monies from the Clean-Up Fund despite Cross-Complainants having completed portions of the Abandonment Activities, provided documentation thereof, and making written demands for the release of funds associated therewith.

96.     As a direct and proximate result of said negligent acts, Cross-Complainants have sustained damages, and will continue to sustain damages in the amount of $151,062.89 plus interest on said sum.

## NINTH CAUSE OF ACTION FOR FRAUD

### (BY IPM AND EL-ARABI AGAINST PRI, RILEY AND ROSE)

97.     Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-96 of this Cross-Complaint as though fully set forth hereat.

98.     On or about August 26, 1998, the AES Action was settled through mediation. The terms of said agreement are discussed hereinabove.

99.     Prior to entering into the AES Settlement, PRI, RILEY and ROSE was each fully aware of Cross-Complainant EL-ARABI's reluctance to enter into the AES Settlement based on the following facts:  To effectuate the AES Settlement, EL-ARABI's participation and approval was required based upon his status as a corporate officer and director of NYHI.  In addition, EL-ARABI was the President of IPM, which was the operator of the oil fields on the Subject Property pursuant to a contract with NYHI.  As operator of the Subject Property oil fields, prior to the AES Settlement, EL-ARABI's sole source of income was IPM's operations on

1  the Subject Property.  Pursuant to the Settlement Agreement, AES terminated its steam

2  production for the Subject Property, thus effectively precluding further operations on the Subject

3  Property, and thereby making obsolete IPM's role as operator of the Subject Property oil fields,

4  and precluding EL-ARABI's ability to generate any further income based upon operations at the

5  Subject Property.

6      100.    So as to entice EL-ARABI to consent to the AES Settlement, PRI, RILEY and

7  ROSE each represented to and assured EL-ARABI that:  (1) IPM would be able to continue

8  generating income by conducting all or a portion of the Abandonment and/or Clean-Up

9  Activities on the Subject Property, and (2) that the monies expended on the Abandonment and/or

10  Clean-Up Activities on the Subject Property would come from the Clean-Up Fund and not from

11  any other portion of IPM or EL-ARABI's AES Settlement proceeds.

12      101.    At the time said Cross-Defendants made such representations, they knew them to

13  be false, and as such, had no intention of allowing EL-ARABI and IPM to protect their proceeds

14  from the settlement of the AES Action from future expense associated with the Subject

15  Properties, and they had no intention of allowing IPM to continue to generate income through

16  Abandonment Activities.  They nevertheless made such representations intending that IPM and

17  EL-ARABI rely thereon in agreeing to the AES Settlement and the formation of the Clean-Up

18  Fund, and the commencement of the Clean-Up Activities.

19      102.    Having no reason to believe the representations to be false or inaccurate, Cross-

20  Complainants did reasonably rely thereon in agreeing to the settlement of the AES Action and

21  the formation of the Clean-Up Fund.

22      103.    But for the representations made by PRI, RILEY and ROSE that EL-ARABI's

23  Settlement proceeds would be protected, and exclusive from any funds needed to abandon and

24  remediate the Subject Property, as well as his reasonable belief that IPM would continue to

25  generate income by conducting the Clean-Up Activities on the Subject Property, EL-ARABI

26  would not have entered into said Settlement Agreement.  Certainly, had EL-ARABI known about

27  PRI, RILEY and ROSE's intention to thwart all efforts by IPM and EL-ARABI to recover

28  monies spent on abandonment from the Clean-Up Fund, and to intentionally stand in the way of

1   IPM and EL-ARABI's Clean-Up Activities, ultimately causing a significant depletion of

2   settlement proceeds and a loss of revenue from Abandonment Activities, EL-ARABI would not

3   have entered into said Settlement Agreement.

4        104.  As a direct and proximate result of the aforesaid conduct by said Cross-

5   Defendants, IPM and EL-ARABI have sustained damages, and will continue to sustain damage,

6   in an amount which cannot yet be fully ascertained, but which exceeds the minimum

7   jurisdictional amount for this court.  IPM and EL-ARABI will seek leave of court to amend this

8   Cross-Complaint to set forth the full amount of the damage when the same has been ascertained.

9        105.  In performing the aforesaid acts and undertaking such conduct, said Cross-

10   Defendants acted with Fraud, Malice and oppression toward IPM and EL-ARABI and in

11   conscious disregard of the rights of IPM and EL-ARABI.  Said conduct was outrageous and

12   despicable within the meaning of Civil Code section 3294.  Thus, IPM and EL-ARABI are

13   entitled to an award of punitive and/or exemplary damages from each and all named Cross-

14   Defendants.

15

16         **TENTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE**

17             **WITH ECONOMIC RELATIONS**

18        (BY IPM AND EL-ARABI AGAINST PRI, RILEY AND ROSE)

19

20        106.  Cross-Complainants hereby refer to and incorporate herein by this reference each

21   and every allegation of Paragraphs 1-105 of this Cross-Complaint as though fully set forth

22   hereat.

23        107.  Prior to entering into the AES Settlement, PRI, RILEY and ROSE was each

24   fully aware of Cross-Complainant EL-ARABI's reluctance to enter into the AES Settlement

25   based on the following facts:  To effectuate the AES Settlement, EL-ARABI's participation and

26   approval was required based upon his status as a corporate officer and director of NYHI.  In

27   addition, EL-ARABI was the President of IPM, which was the operator of the oil fields on the

28   Subject Property pursuant to a contract with NYHI.  As operator of the Subject Property oil

1  fields, prior to the AES Settlement, EL-ARABI's sole source of income was IPM's operations on

2  the Subject Property.  Pursuant to the Settlement Agreement, AES terminated its steam

3  production for the Subject Property, thus effectively precluding further operations on the Subject

4  Property, and thereby making obsolete IPM's role as operator of the Subject Property oil fields,

5  and precluding EL-ARABI's ability to generate any further income based upon operations at the

6  Subject Property.

7      108.    EL-ARABI ultimately agreed to the AES Settlement based upon, *inter alia*,

8  IPM's ability to continue to generate income by and through its conducting the Abandonment

9  and/or Clean-Up Activities on the Subject Property.  PRI, RILEY and ROSE were at all times

10  aware of EL-ARABI's expectations, and were at all times aware of IPM's operating agreement

11  with NYHI by which IPM would be compensated for Abandonment and/or Clean-Up Activities

12  on the Subject Property.

13      109.    PRI, RILEY and ROSE intentionally disrupted the above-described business

14  arrangement between IPM and NYHI under which IPM would be compensated for Abandonment

15  and/or Clean-Up Activities on the Subject Property, by unreasonably failing and refusing to

16  authorize release of monies from the Clean-Up Fund, and thereby forcing the termination of

17  Abandonment and/or Clean-Up Activities on the Subject Property.

18      110.    As a direct and proximate result of said intentional acts, IPM and EL-ARABI

19  have sustained damages, and will continue to sustain damages in an amount which cannot yet be

20  fully ascertained, but which exceeds the minimum jurisdictional amount for this court.  IPM and

21  EL-ARABI will seek leave of court to amend this Cross-Complaint to set forth the full amount of

22  the damage when the same has been ascertained.

23      111.    In performing the aforesaid acts and undertaking such conduct, said Cross-

24  Defendants acted with Fraud, Malice and oppression toward Cross-Complainants and in

25  conscious disregard of the rights of Cross-Complainants.  Said conduct was outrageous and

26  despicable within the meaning of Civil Code section 3294.  Thus, Cross-Complainants are

27  entitled to an award of punitive and/or exemplary damages from each and all named Cross-

28  Defendants.

## ELEVENTH CAUSE OF ACTION FOR NEGLIGENT INTERFERENCE

## WITH ECONOMIC RELATIONS

### (BY IPM AND EL-ARABI AGAINST PRI, RILEY AND ROSE)

112.    Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-111 of this Cross-Complaint as though fully set forth hereat.

113.    Prior to entering into the AES Settlement, PRI, RILEY and ROSE was each fully aware of Cross-Complainant EL-ARABI's reluctance to enter into the AES Settlement based on the following facts: To effectuate the AES Settlement, EL-ARABI's participation and approval was required based upon his status as a corporate officer and director of NYHI. In addition, EL-ARABI was the President of IPM, which was the operator of the oil fields on the Subject Property pursuant to a contract with NYHI. As operator of the Subject Property oil fields, prior to the AES Settlement, EL-ARABI's sole source of income was IPM's operations on the Subject Property. Pursuant to the Settlement Agreement, AES terminated its steam production for the Subject Property, thus effectively precluding further operations on the Subject Property, and thereby making obsolete IPM's role as operator of the Subject Property oil fields, and precluding EL-ARABI's ability to generate any further income based upon operations at the Subject Property.

114.    EL-ARABI ultimately agreed to the AES Settlement based upon, *inter alia*, IPM's ability to continue to generate income by and through its conducting the Abandonment and/or Clean-Up Activities on the Subject Property. PRI, RILEY and ROSE were at all times aware of EL-ARABI's expectations, and were at all times aware of IPM's operating agreement with NYHI by which IPM would be compensated for Abandonment and/or Clean-Up Activities on the Subject Property.

115.    PRI, RILEY and ROSE negligently and unreasonably withheld their approval of Gaims' release of monies from the Clean-Up Fund despite Cross-Complainants having completed portions of the Abandonment Activities, provided documentation thereof, and making

1  written demands for the release of funds associated therewith.

2      116.    It was reasonably foreseeable by PRI, RILEY and ROSE that their lack of

3  approval for the release of funds would ultimately cause a risk of harm to the economic

4  relationship between NYHI and IPM.  In particular, it was foreseeable that their lack of approval

5  for the release of funds would cause the termination of Abandonment and Clean-Up Activities on

6  the Subject Property, in turn, ending EL-ARABI and IPM's ability to generate income based

7  upon their operating agreement with NYHI to conduct Abandonment and Clean-Up Activities on

8  the Subject Property

9      117.    As a direct and proximate result of said intentional acts, IPM and EL-ARABI

10 have sustained damages, and will continue to sustain damages in an amount which cannot yet be

11 fully ascertained, but which exceeds the minimum jurisdictional amount for this court.  IPM and

12 EL-ARABI will seek leave of court to amend this Cross-Complaint to set forth the full amount of

13 the damage when the same has been ascertained.

14

15                **TWELFTH CAUSE OF ACTION FOR CONVERSION**

16          (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

17

18      118.    Cross-Complainants hereby refer to and incorporate herein by this reference each

19 and every allegation of Paragraphs 1-117 of this Cross-Complaint as though fully set forth

20 hereat.

21      119.    In or around April 1999, PRI took control of the Subject Property by putting said

22 premises under lock and key and refusing to grant NYHI or IPM an access agreement.

23      120.    As a result of PRI placing said premises under lock and key and denying NYHI

24 access to said premises, NYHI has been unable to recover equipment belonging to NYHI which

25 still remains on the property.  As such PRI, RILEY and ROSE have deprived Cross-

26 Complainants of the equipment and converted the same for their own use.

27      121.    As a direct and proximate result of the aforesaid conduct by said Cross-

28 Defendants, Cross-Complainants have sustained damages, and will continue to sustain damage,

1  in an amount which cannot yet be fully ascertained, but which exceeds the minimum

2  jurisdictional amount for this court.  Cross-Complainants will seek leave of the court to amend

3  this Complaint to set forth the full amount of the damage when the same has been ascertained.

4      122.   In performing the aforesaid acts and undertaking such conduct, said Cross-

5  Defendants acted with fraud, malice and oppression toward Cross-Complainants and in

6  conscious disregard of the rights of Cross-Complainants.  Said conduct was outrageous and

7  despicable within the meaning of Civil Code section 3294.  Thus, Cross-Complainants are

8  entitled to an award of punitive and/or exemplary damages from each and all of said Cross-

9  Defendants.

10

11              **THIRTEENTH CAUSE OF ACTION FOR BREACH OF LEASE**

12          (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

13

14      123.   Cross-Complainants hereby refer to and incorporate herein by this reference each

15  and every allegation of Paragraphs 1-122 of this Cross-Complaint as though fully set forth

16  hereat.

17      124.   Paragraph 30 of the York Oil and Gas Lease between PRI and HOP (predecessor

18  in interest to NYHI), dated May 1, 1989, a true and correct copy of which is attached hereto as

19  Exhibit "H", specifically permits the Lessee (NYHI) to remove the production facilities placed

20  on the leased property by Lessee upon termination of the lease.

21      125.   As a result of PRI placing the Subject Property under lock and key and denying

22  Cross-Complainants access to the Subject Property, Cross-Complainants have been unable to

23  recover equipment owned by Cross-Complainants which they have a contractual right to remove

24  under the York Lease.

25      126.   As a direct and proximate result of the aforesaid conduct by said Cross-

26  Defendants, Cross-Complainants have sustained damages, and will continue to sustain damage,

27  in an amount which cannot yet be fully ascertained, but which exceeds the minimum

28  jurisdictional amount for this court.  Cross-Complainants will seek leave of the court to amend

1  this Complaint to set forth the full amount of the damage when the same has been ascertained.

2      127.    Paragraph 18 of the York Lease, as amended, provides for recovery of attorney's

3  fees and costs of suit (and other expenses of litigation and clearing of title) by the prevailing

4  party in any action at law or in equity to enforce the provisions of the Lease or on account of any

5  breach in the performance or observance of the Lease.

6

7              **FOURTEENTH CAUSE OF ACTION FOR NEGLIGENCE**

8          (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

9

10      128.    Cross-Complainants hereby refer to and incorporate herein by this reference each

11  and every allegation of Paragraphs 1-127 of this Cross-Complaint as though fully set forth

12  hereat.

13      129.    In or about April 1999, PRI took control of the Subject Property by placing said

14  premises under lock and key and refusing NYHI access to the Subject Property. Further, in or

15  around this time, PRI, RILEY and ROSE unreasonably withheld their approval for the release of

16  remediation funds.

17      130.    It was reasonably foreseeable to PRI, RILEY and ROSE that each of these

18  conditions instituted by PRI, RILEY and ROSE would impede Cross-Complainants' efforts to

19  complete Abandonment and Clean-Up Activities on the Subject Property, and could foreseeably

20  cause increased deterioration of the property through migration of the alleged contaminants.

21      131.    As a direct and proximate result of the aforementioned conditions instituted by

22  PRI, RILEY and ROSE, any alleged contamination present on the property has migrated and

23  continues to migrate to previously uncontaminated portions of said property, thus increasing both

24  the damage to said property and future clean-up costs.

25      132.    In or about October 1998, PRI, RILEY and ROSE, without the knowledge or

26  consent of Cross-Complaints, retained an out-of-state environmental engineering firm, Southwest

27  Associates, to conduct environmental testing on the Subject Property. In connection with its

28  activities on the Subject Property, Southwest Associates, under the direction and control of PRI,

1  RILEY and ROSE, drilled over one-hundred borings throughout the Subject Property, and

2  moved equipment and/or allegedly contaminated materials and soils on the Subject Property,

3  thereby facilitating the migration of the contamination to previously uncontaminated portions of

.4  the Subject Property, exacerbating the condition of the Subject Property, and increasing both the

5  damage to said property and future clean-up costs.  Moreover, in connection with its activities on

6  the Subject Property, Southwest Associates:  (1) failed to utilize California certified laboratories

7  to analyze the samples taken, (2) utilized analytical methods that are not consistent with the

8  requirements of the State or Regional Water Quality Control Board, and (3) entirely failed to

9  present an evaluation of its analytical results in its remedial action plan.

10      133.    As a direct and proximate result of the aforesaid conduct by said Cross-

11  Defendants, Cross-Complainants have sustained damages, and will continue to sustain damage,

12  in an amount which cannot yet be fully ascertained, but which exceeds the minimum

13  jurisdictional amount for this court.  Cross-Complainants will seek leave of the court to amend

14  this Complaint to set forth the full amount of the damage when the same has been ascertained.

15

16      **FIFTEENTH CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION**

17          (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

18

19      134.    Cross-Complainants hereby refer to and incorporate herein by this reference each

20  and every allegation of Paragraphs 1-133 of this Cross-Complaint as though fully set forth

21  hereat.

22      135.    As described more fully hereinabove, as a direct and proximate result of PRI,

23  RILEY and ROSE's termination of Clean-Up Activities as well as their commissioning of

24  Southwest Associates, who drilled over one-hundred borings throughout the Subject Property,

25  and moved equipment and/or allegedly contaminated materials and soils on the Subject Property,

26  thereby facilitating the migration of the contamination to previously uncontaminated portions of

27  the Subject Property, exacerbating the condition of the Subject Property, and increasing both the

28  damage to said property and future clean-up costs.

136.   Cross-Complainants deny all liability for all the matters alleged in PRI's Complaint. If Cross-Complainants are found responsible under law or equity based on the allegations in PRI's Complaint, the allegations of a third party, or by and through the mandates of a government agency, then the acts, deliberate and otherwise, and omissions of each and every Cross-Defendant caused or contributed to damage on the Subject Property.

137.   If Cross-Complainants are found responsible under law or equity based on the allegations in PRI's Complaint, the allegations of a third party, or by and through the mandates of a government agency, such a liability would be purely secondary, imputed or vicarious. The liability of each and every Cross-Defendant is primary and attributable to their acts, deliberate and otherwise, and/or their omissions in causing damage to the Subject Property.

138.   As between Cross-Complainants on the one hand and Cross-Defendants on the other hand, the responsibility for such a liability rests primarily or exclusively on Cross-Defendants. Cross-Complainants are, therefore, entitled to equitable contribution from each and every Cross-Defendant in an amount equal to Cross-Defendant's proportionate share of liability for all the damages, costs, fees, expenses and interest which have been incurred or will be incurred in remediating the Subject Property.

## SIXTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (BY ALL CROSS-COMPLAINANTS AGAINST PRI, RILEY AND ROSE)

139.   Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-138 of this Cross-Complaint as though fully set forth hereat.

140.   An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that under the terms of the York Lease, the terms of the Clean-Up Fund Agreement, and the position taken by the Regional water Quality Control Board, the Subject Property should be abandoned prior to an environmental assessment and remediation of the property.

141. An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that under the terms of the York Lease, attached hereto as **Exhibit "H"** to this Cross-Complaint and incorporated herein by reference, and based upon industry practice, Cross-Complainants are only obligated to remediate the Subject Property so as to bring the Subject Property back to the condition it was in prior to Cross-Complainants' occupation of said Property. Despite the fact that the Subject Property has had no other historic use other than as an oil field, and that many other entities operated the Subject Property as an oil field for many years before Cross-Complainants' occupation, PRI, RILEY and ROSE contend that the Subject Property should be remediated to a more stringent standard so that PRI can develop the site for an exclusive residential development.

142. An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that under the terms of the York Lease, attached hereto as **Exhibit "H"** to this Cross-Complaint and incorporated herein by reference, and pursuant to oral and written representations by RILEY, that NYHI was relieved of its obligation to pay Minimum Royalties to PRI effective on or about August 26, 1998.

143. An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that they are obligated to pay its equal share of the legal fees and costs incurred during the AES Action, between in or around August 1995, and on or about June 30, 1997, in the amount of $100,269.67.

144. An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that Cross-Complainants are due and owing a sum of $151,062.89, plus interest on said sum, or an amount commensurate with the reasonable value of the services rendered, for their Abandonment Activities on the Subject Property.

145. An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that certain equipment belonging to Cross-Complainants has been converted by PRI, RILEY and ROSE in the course of their placing the Subject Property under lock and key, and such equipment should be returned or Cross-Complainants should be compensated for their loss.

146. An actual controversy exists, in that Cross-Complainants contend, and PRI, RILEY and ROSE deny, that as a direct and proximate result of PRI, RILEY and ROSE's termination of Clean-Up Activities as well as their commissioning of Southwest Associates, who drilled over one-hundred borings throughout the Subject Property, and moved equipment and/or allegedly contaminated materials and soils on the Subject Property, thereby facilitating the migration of the contamination to previously uncontaminated portions of the Subject Property, exacerbating the condition of the Subject Property, and increasing both the damage to said property and future clean-up costs.

147. Cross-Complainants desire a judicial determination of its right and duties and a declaration as to their contentions as set forth in Paragraphs 140 through 146 hereof.

148. A judicial declaration is necessary and appropriate at this time in order that Cross-Complainants may ascertain its rights and duties and the rights and duties of PRI, RILEY and ROSE with respect to the matters in controversy so that the parties may conduct themselves in accordance therewith.

## SEVENTEENTH CAUSE OF ACTION FOR CONTINUING TRESPASS

(BY ALL CROSS-COMPLAINANTS AGAINST GRACE ENERGY, W.R. GRACE, TOSCO REFINING, TOSCO, TEORCO, BERRY AND ROES 1 THROUGH 10)

149. Cross-Complainants hereby refer to and incorporate herein by this reference each and every allegation of Paragraphs 1-148 of this Cross-Complaint as though fully set forth hereat.

150. Cross-Complainants are informed and believe that at all relevant times herein PRI was the owner in fee of the Subject Property.

151. Cross-Complainants are informed and believe that prior to 1983, PRI sold its oil and gas rights to the properties which form the basis of the instant action to the W.R. GRACE Cross-Defendants.

///

152.  Cross-Complainants are informed and believe that in or about 1983 the W.R. GRACE Cross-Defendants leased their oil and gas rights to Subject Property to the TOSCO Cross-Defendants.

153.  Cross-Complainants are informed and believe that in or about 1987 TOSCO sold its subsidiary, TEORCO, to BERRY.  By and through this transaction, BERRY acquired the rights and obligations of the oil and gas lease in question.

154.  Cross-Complainants are informed and believe that shortly thereafter BERRY canceled its oil and gas lease with the W.R. GRACE Cross-Defendants.

155  Cross-Complainants are informed and believe that shortly thereafter the W.R. GRACE Cross-Defendants sold their oil and gas rights on the Subject Property back to PRI.

156.  As such, Cross-Complainants are informed and believe that the W.R. GRACE Cross-Defendants, the TOSCO Cross-Defendants and BERRY operated on the Subject Property prior to NYHI.

157.  Cross-Complainants are informed and believe and thereon allege that GRACE ENERGY, W.R. GRACE, TOSCO REFINING, TOSCO, TEORCO and BERRY have caused or permitted the presence of hydrocarbons in the soil on the Subject Property, and that this hydrocarbon-impacted soil has created a private nuisance in that such impacted soil substantially and unreasonably interfered with and continued to interfere with Cross-Complainants' free use and enjoyment of the Subject Property during Cross-Complainants' tenancy.

158.  Cross-Complainants are informed and believe and thereon allege that the hydrocarbons in the soil on the Subject Property migrated, spread continuously or otherwise changed its impact and that this private nuisance continues to create increasing damage and injury to the property and to Cross-Complainants.

159.  The hydrocarbon-impacted soil on the property was an obstruction to the free use of Cross-Complainants' possessory interest in the Subject Property and interfered with its quiet enjoyment of property, and thus constituted a continuing trespass.

160.  As a result of this Cross-Defendants' continuing trespass, Cross-Complainants has been damaged in an amount above this Court's jurisdictional minimum.

1    **EIGHTEENTH CAUSE OF ACTION FOR CONTINUING NUISANCE**

2    (BY ALL CROSS-COMPLAINANTS AGAINST GRACE ENERGY, W.R. GRACE, TOSCO

3    REFINING, TOSCO, TEORCO, BERRY AND ROES 1 THROUGH 10)

4

5        161.    Cross-Complainants hereby refer to and incorporate herein by this reference each

6    and every allegation of Paragraphs 1-160 of this Cross-Complaint as though fully set forth

7    hereat.

8        162.    Cross-Complainants held a leasehold interest in the property and, as such, had a

9    right to exclusive possession of the premises.

10       163.    Cross-Complainants are informed and believe and thereon allege that during the

11   time GRACE ENERGY, W.R. GRACE, TOSCO REFINING, TOSCO, TEORCO and BERRY

12   operated on, owned or leased the Subject Property, these Cross-Defendants either intentionally or

13   negligently controlled and managed the operations at the Subject Property so as to cause the

14   release of hydrocarbons into the property's soil, and to permit such materials to remain on the

15   Subject Property.

16       164.    Cross-Complainants are informed and believe and thereon allege that the conduct

17   of these Cross-Defendants was such that they knew that such conduct would, to a substantial

18   certainty, result in the release of hydrocarbons on the Subject Property, and that such materials

19   would remain thereon.  Such conduct and its consequences constituted and continued to

20   constitute nuisance against Cross-Complainants' interest in the Subject Property.

21       165.    Cross-Complainants are informed and believe and thereon allege that the

22   hydrocarbon-impacted soil at the Subject Property migrated, spread continuously or otherwise

23   changed its impact during the time these Cross-Defendants operated on and/or owned the

24   Subject Property.  Cross-Complainants are further informed and believe and thereon allege that

25   this nuisance continues to create increasing damage and injury on, under and about the Subject

26   Property.

27       166.    As a direct and foreseeable cause of this continuing nuisance, Cross-Complainants

28   have been injured in that they incurred substantial costs in investigating and characterizing the

1  hydrocarbon-impacted soil on the property.

2      167.    Cross-Complainants, thus, have been damaged in an amount which exceeds this

3  Court's jurisdictional minimum, and for which Cross-Complainants seek recovery according to

4  proof at trial.

5

6  **NINETEENTH CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION**

7  (BY ALL CROSS-COMPLAINANTS AGAINST GRACE ENERGY, W.R. GRACE, TOSCO

8      REFINING, TOSCO, TEORCO, BERRY AND ROES 1 THROUGH 10)

9

10      168.    Cross-Complainants hereby refer to and incorporate herein by this reference each

11  and every allegation of Paragraphs 1-167 of this Cross-Complaint as though fully set forth hereat.

12      169.    Cross-Complainants deny all liability for all the matters alleged in PRI's

13  Complaint.  If Cross-Complainants are found responsible under law or equity based on the

14  allegations in PRI's Complaint, then the acts, deliberate and otherwise, and omissions of each and

15  every Cross-Defendant as prior owners, lessees and/or operators, caused or contributed to their

16  alleged damages.

17      170.    If Cross-Complainants are found liable under law or equity, such a liability would

18  be purely secondary, imputed or vicarious.  The liability of each and every Cross-Defendant is

19  primary and attributable to their acts, deliberate and otherwise, and/or their omissions in causing

20  any of PRI's alleged damages.

21      171.    If PRI obtains a judgment against Cross-Complainants under PRI's Complaint,

22  then as between Cross-Complainants on the one hand and Cross-Defendants on the other hand,

23  the responsibility for such a liability rests primarily or exclusively on Cross-Defendants.  Cross-

24  Complainants are, therefore, entitled to equitable contribution from each and every Cross-

25  Defendant in an amount equal to each Cross-Defendant's proportionate share of liability for all

26  the damages, costs, fees, expenses and interest alleged in the Complaint which have been incurred

27  or will be incurred.  Cross-Complainants also are entitled to equitable contribution from Cross-

28  Defendants for all expenses and costs which Cross-Complainants have incurred and will incur in

1  defending against PRI's claims and in prosecuting Cross-Complainants' cross-claims against

2  Cross-Defendants, as permitted by law.

3

4  ## TWENTIETH CAUSE OF ACTION FOR EQUITABLE INDEMNITY

5  (BY ALL CROSS-COMPLAINANTS AGAINST GRACE ENERGY, W.R. GRACE, TOSCO

6  REFINING, TOSCO, TEORCO, BERRY AND ROES 1 THROUGH 10)

7

8      172.    Cross-Complainants hereby refer to and incorporate herein by this reference each

9  and every allegation of Paragraphs 1-171 of this Cross-Complaint as though fully set forth hereat.

10     173.    Cross-Complainants deny all liability alleged in the Complaint. If, however, there

11 have been any damages to the property, then each and every Cross-Defendant, based on their acts,

12 deliberate and otherwise, and/or omissions and on equitable considerations, are liable for any and

13 all resulting damages.

14     174.    If Cross-Complainants are found responsible under law or equity based on the

15 allegations in PRI's Complaint, then each and every Cross-Defendant, based on their acts,

16 deliberate and otherwise, and/or omissions as prior owners, lessees and/or operators, caused or

17 contributed to such responsibility and any resulting damages.

18     175.    If Cross-Complainants are found liable under law or equity, such a liability would

19 be purely secondary, imputed or vicarious. The liability of each and every Cross-Defendant is

20 primary and attributable to their acts, deliberate and otherwise, and/or their omissions in causing

21 any of PRI's alleged damages.

22     176.    If PRI obtains a judgment against Cross-Complainants under PRI's Complaint,

23 then as between Cross-Complainants on the one hand and Cross-Defendants on the other hand,

24 the responsibility for such a liability rests primarily or exclusively on Cross-Defendants. Cross-

25 Complainants are, therefore, entitled to equitable indemnity from each and every Cross-Defendant

26 in an amount equal to each Cross-Defendant's proportionate share of liability for all the damages,

27 costs, fees, expenses and interest alleged in the Complaint which have been incurred or will be

28 incurred. Cross-Complainants also are entitled to equitable indemnity form Cross-Defendants for

1  all expenses and costs which Cross-Complainants have incurred and will incur in defending

2  against PRI's claims and in prosecuting Cross-Complainants' cross-claims against Cross-

3  Defendants, as permitted by law.

4

5      WHEREFORE, Cross-Complainants, and each of them, pray for judgment against Cross-

6  Defendants, and each of them, as follows:

7

8  **A.    ON THE FIRST AND SECOND CAUSES OF ACTION**

9      1.    For monetary damages in the amount of $100,269.67.

10     2.    For interest on said sum at the maximum legal rate of interest permitted by law

11           from and after February 9, 1999.

12     3.    For costs of suit incurred herein.

13     4.    For such other and further relief the Court may deem just and proper under the

14           circumstances.

15

16  **B.    ON THE THIRD AND FOURTH CAUSES OF ACTION**

17     1.    For monetary damages in the amount of $151,062.89.

18     2.    For interest on said sum at the maximum legal rate of interest permitted by law.

19     3.    For costs of suit incurred herein.

20     4.    For such other and further relief the Court may deem just and proper under the

21           circumstances.

22

23  **C.    ON THE FIFTH CAUSE OF ACTION**

24     1.    For monetary damages in an amount as yet unascertained.

25     2.    For such additional costs ans expenses that have been incurred by Cross-

26           Complainants based on quantum meruit.

27     3.    For interest on all monies expended by Cross-Complainants through and including

28           the date of judgment at the maximum legal rate of interest permitted by law.

4.    For such other and further relief the Court may deem just and proper under the circumstances.

D.    **ON THE EIGHTH  AND ELEVENTH CAUSES OF ACTION**

1.    For monetary damages in an amount as yet unascertained.

2.    For interest on said sum at the maximum legal rate of interest permitted by law.

3.    For costs of suit incurred herein.

4.    For such other and further relief the Court may deem just and proper under the circumstances.

E.    **ON THE SIXTH,  SEVENTH, NINTH AND TWELFTH CAUSES OF ACTION**

1.    For general damages in an amount according to proof.

2.    For punitive damages according to proof.

3.    For costs of suit incurred herein.

4.    For such other and further relief the Court may deem just and proper under the circumstances.

F.    **ON THE THIRTEENTH CAUSE OF ACTION**

1.    For general damages in an amount according to proof.

2.    For reasonable attorneys' fees and costs of suit herein incurred.

3.    For such other and further relief the Court may deem just and proper under the circumstances.

G.    **ON THE FOURTEENTH CAUSE OF ACTION**

1.    For monetary damages in an amount according to proof.

2.    For such other and further relief the Court may deem just and proper under the circumstances.

**H.    ON THE FIFTEENTH CAUSE OF ACTION**

1.    For contribution from PRI, RILEY and ROSE for the entirety of, or their share of, any liability that may be lawfully imputed to Cross-Complainants as a result of the allegations in the Complaint, and for any liability that may be imputed to the Cross-Complainants from a third party or governmental agency.

**I.    ON THE SIXTEENTH CAUSE OF ACTION**

1.    For declarations in accordance with the contentions of Cross-Complainants as set forth in Paragraphs 140-146, hereof.

2.    For such other and further relief the Court may deem just and proper under the circumstances.

**J.    ON THE SEVENTEENTH CAUSE OF ACTION**

1.    For monetary damages in an amount as yet unascertained.

2.    For additional costs and expenses that have been incurred by Cross-Complainants based on continuing trespass.

3.    For interest on all monies expended by Cross-Complainants through and including the date of judgment at the maximum legal rate of interest permitted by law.

4.    For such other and further relief the Court may deem just and proper under the circumstances.

**K.    ON THE EIGHTEENTH CAUSE OF ACTION**

1.    For monetary damages in an amount as yet unascertained.

2.    For additional costs and expenses that have been incurred by Cross-Complainants based on continuing nuisance.

3.    For interest on all monies expended by Cross-Complainants through and including the date of judgment at the maximum legal rate of interest permitted by law.

///

1    4.    For such other and further relief the Court may deem just and proper under the

2          circumstances.

3

4    L.    **ON THE NINETEENTH CAUSE OF ACTION**

5    1.    For contribution from Grace Energy, W.R. Grace, TOSCO Refining, TOSCO,

6          TEORCO, and Berry for the entirety of, or their share of, any liability that may be

7          lawfully imputed to Cross-Complainants as a result of the allegations in the

8          Complaint, and for any liability that may be imputed to the Cross-Complainants as

9          to any third party based on such allegations.

10

11   M.    **ON THE TWENTIETH CAUSE OF ACTION**

12   1.    For indemnity from Grace Energy, W.R. Grace, TOSCO Refining, TOSCO,

13         TEORCO, and Berry for the entirety of, or their share of, any liability that may be

14         lawfully imputed to Cross-Complainants as a result of the allegations in the

15         Complaint, and for any liability that may be imputed to the Cross-Complainants as

16         to any third party based on such allegations.

17

18   DATED: April 12, 2000                 PARKER, MILLIKEN, CLARK,
19                                         O'HARA & SAMUELIAN
                                           A professional Corporation
20                                         GARY A. MEYER
                                           SCOTT J. LEIPZIG
21                                         PEDRAM MAZGANI

22                                    By: _____
23                                         GARY A. MEYER
                                           Attorneys for Defendants and Cross-Complainants
24                                         N.Y. HILLSIDE, INC., a California corporation;
                                           INTERNATIONAL PETROLEUM
25                                         MANAGEMENT, INC., a California corporation;
                                           CHARLES JURGENS; MAHGUIB EL-ARABI
26

Cross-Complaint of N.Y. Hillside/International Petroleum Management/Charles Jurgens/Mahguib El-Arabi