## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W. R. GRACE & CO., et al.[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 01-01139 (JKF)<br>) (Jointly Administered)<br>)<br>) **Hearing Date: January 10, 2011, at 9:00 a.m.**<br>) **Objection Deadline: December 23, 2010 at 4:00**<br>) **p.m.** |

### MOTION FOR AN ORDER APPROVING: (I) SETTLEMENT OF MASSACHUSETTS TAX CLAIMS; AND (II) PAYMENT OF AMOUNTS OWED UPON ENTRY OF ORDER

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion"), requesting the Court enter an order substantially in the form attached hereto as Exhibit A (the "Order") authorizing the Debtors: (i) to enter into the *Settlement Agreement Resolving Claims of the Commissioner of Revenue of the Commonwealth of Massachusetts* (the "Settlement Agreement", the form of which is attached as Exhibit 1 to the form of Order), which allows the Commissioner of Revenue (the "Commissioner") an allowed

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn. ("Grace-Conn."), A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

priority tax claim (the "<u>Allowed Massachusetts Priority Tax Claim</u>") in the amount of $15,001,905.82, comprising the Settled Tax Amount and Prepetition Interest (as each term is defined herein, hereinafter the "<u>Allowed Massachusetts Priority Tax Claim Amount</u>"); and (ii) prior to January 31, 2011, to pay that amount to the Commonwealth of Massachusetts (the "<u>Commonwealth</u>") in exchange for the Commissioner agreeing to a postpetition interest amount of $0 (*provided* that if the Order is entered on or after January 25, 2011, the Debtors shall have five business days thereafter to make that payment; and *provided* further that if the Order is not final and nonappealable on or before March 15, 2011, the Debtors or the Commissioner thereafter may in their discretion rescind the Settlement Agreement).[2] The Debtors estimate that paying the Allowed Massachusetts Priority Tax Claim Amount upon entry of the Order instead of on or after the Plan's Effective Date will save their estates more than approximately $7 million in postpetition interest (calculated as of December 31, 2010) and such additional postpetition interest that would otherwise accrue (at an annual rate of approximately $630,000) between year's end and the date on which the Allowed Massachusetts Priority Tax Claim Amount is ultimately paid.

In support of this Motion, the Debtors state as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Settlement Agreement, the Objection (as defined herein) or the *First Amended Joint Plan of Reorganization* in these Chapter 11 Cases, as amended, Docket nos. 19579, 20666, 20872, 20873, 21594 and 24657 (the "<u>Plan</u>").

2.    The predicates for this Motion are sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 9019.

### BACKGROUND

3.    During the relevant tax years prior to the Petition Date, Grace-Conn. was a Massachusetts taxpayer that elected to file a Massachusetts combined corporate tax return together with the Combined Group (as that term is defined in the Settlement Agreement). As a taxable member of the Combined Group, Grace-Conn. is jointly and severally liable for tax owed to the Commonwealth.

4.    As set forth in Exhibit B and Exhibit C to the Settlement Agreement, the Commissioner timely filed approximately 36 claims for prepetition corporate taxes, associated penalties and prepetition interest in the aggregate amount of approximately $111,317,351.60. As of the date hereof, the Debtors and the Commissioner have already resolved 26 of those claims, as set forth in Exhibit B to the Settlement Agreement. Ten claims set forth in Exhibit C, in the aggregate amount of $35,797,490.08 (including associated prepetition interest and penalties) remain unresolved.

5.    On March 27, 2007, the Debtors filed an objection (the "Objection", filed at docket no. 15013) to Claim no. 15370 (the "Claim"), objecting to approximately $34,805,361.23 in tax, associated penalties and prepetition interest. In the Objection, the Debtors requested the Court adjudicate the Claim in two parts:  (i) approximately $4,060,414 in corporate tax deficiencies (including associated prepetition interest and penalties) at issue for tax years 1991-93, the controversy concerning which was then before the Massachusetts Appellate Tax Board (the "Tax Appeal"); and (ii) the remaining approximately $30,744,947 of withholding and corporate taxes (including associated prepetition interest and penalties) asserted for the 1994-2000 tax years, which were the subject of a pending audit.

6.  Since then, the Commissioner has concluded its audit, and the Tax Appeal has been concluded. The Debtors and the Commissioner therefore have resolved the Claim and the other nine remaining Unresolved Claims on the terms summarized below and as set forth in the Settlement Agreement (the "Settlement").

*Principal Terms of the Settlement Agreement*

7.  As set forth in the Settlement Agreement, the Debtors and the Commissioner have agreed that the Allowed Massachusetts Priority Tax Claim shall be a priority tax claim allowed in the amount of approximately $15,001,905.82.[3] This Allowed Massachusetts Priority Tax Claim Amount comprises the Settled Tax Amount of approximately $9,632,566.00 and Prepetition Interest of approximately $5,369,339.82.

8.  The Settled Tax Amount is subject to adjustment pursuant to M.G.L. c. 62C, § 30 (2010) in the event of a change in the amount of federal income tax owed by the Debtors pursuant to a federal change report. Notwithstanding this provision of the Settlement Agreement, which is required as a matter of Massachusetts law, the Debtors believe that each of the tax years at issue with the Commissioner are closed tax years for federal income tax purposes, and will thus not be subject to any potential Federal Change Report.

9.  Approximately $49,881.00 of the Settled Tax Amount is attributable to taxes owed arising from the stock sale to Parker Hannifin Corporation ("Parker Hannifin") consummated on or about September 30, 1994, which was documented by the Chomerics Sales Agreement (the "Chomerics Transaction"). The Commissioner has agreed that the Settlement

---

[3] The Motion purports to summarize the principal terms of the settlement between the Commissioner and the Debtors regarding the Unresolved Claims as documented in the Settlement Agreement. In the unlikely event of a conflict between the Settlement Agreement and the summary of the terms thereof set forth in this Motion, the Settlement Agreement shall govern.

resolves all amounts in dispute that the Commissioner could assert against Parker Hannifin as a result of the Chomerics Transaction.

10. Approximately $369,039.00 of the Settled Tax Amount is attributable to entities divested by Grace-Conn. pursuant to the transactions described in the agreement entered into by Fresenius and the Debtors on or about February 26, 2003, and approved by an order of the District Court (docket no. 19) dated June 25, 2003 ("Fresenius Settlement Agreement"). FCMH shall pay that amount plus the Prepetition Interest allocable thereto to the Debtors pursuant to the terms of the Fresenius Settlement Agreement.

11. The Settlement Agreement also states that the Commissioner has agreed to waive all postpetition interest in exchange for the Debtors agreeing to pay the Settled Tax Amount and Prepetition Interest prior to January 31, 2011 (*provided, however*, that if the Order becomes final and nonappealable on or after January 25, 2011, the Debtors shall have five business days thereafter in which to make the payment; and *provided* further that if the Order is not final and nonappealable on or before March 15, 2011, the Debtors or the Commissioner thereafter may in their discretion rescind the Settlement Agreement). As discussed above, this early payment will save the Debtors in excess of $7 million as of the hearing date (at 4.19% pursuant to the Plan) plus all postpetition interest that would otherwise accrue until the Settled Tax Amount and Prepetition Interest are paid in full (at an annual rate of approximately $630,000).

## RELIEF REQUESTED

12. The Debtors respectfully request the Court enter an order pursuant to its authority under sections 105(a) and 363(b) of the Bankruptcy Code and Fed.R.Bankr.P. 9019: (i) approving the terms and authorizing the Debtors' execution of the Settlement Agreement; (ii) allowing the Allowed Massachusetts Priority Tax Claim Amount of approximately $15,001,905.82; and (iii) authorizing the Debtors to pay the Allowed Massachusetts Priority Tax

Claim Amount prior to January 31, 2011 (*provided, however*, that if the Order becomes final and nonappealable on or after January 25, 2011, the Debtors shall have five business days thereafter in which to make the payment), in exchange for which the Commissioner has agreed that it shall not receive any postpetition interest and the parties have agreed that if the Order is not final and nonappealable on or before March 15, 2011, the Debtors and the Commissioner may at any time thereafter in their discretion rescind the Agreement, and the Agreement shall become null and void; and (iv) granting such other relief as may be appropriate.

## ANALYSIS

### I.   THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

#### A.   Section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019(a) Favor Settlements

13.   Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Fed. R. Bankr. P. 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

14.   Courts generally favor minimizing litigation and expediting bankruptcy case administration. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2, 2006). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

15. Before approving a settlement under Fed. R. Bankr. P. 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate'."). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

16. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

17. It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." In re Capmark Fin. Group Inc., 2010 Bankr. LEXIS 3737 (Bankr. D. Del. 2010) (quoting In re Key3Media Grp., 336 B.R. 87, 92-93 (Bankr. D. Del. 2005) (internal citations omitted)); Official Unsecured Creditors' Comm. of Pa. Truck Lines, Inc. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.), 150 B.R. 595, 598 (E.D. Pa. 1992), In re Grant Broad. of Phila., Inc., 71 B.R. 390, 396 (Bankr. E.D. Pa. 1987). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)).

**B.      The Facts and Circumstances Support Approving the Settlement Agreement**

18.     The Settlement Agreement resolves approximately ten remaining claims filed by the Commissioner in the approximate amount of $35,797,490.08 (excluding pre- and postpetition interest) for the Settled Tax Amount of approximately $9,632,566 plus Prepetition Interest of approximately $5,369,339.82, which is a reduction of more than $20 million.  The Debtors believe that the Settled Tax Amount is a fair settlement with the Commissioner, particularly since protracted, complex and expensive litigation would be required to achieve what would likely be at best marginal additional reductions in tax owed.  The Debtors would also be at risk of an adverse outcome, which could result in a higher tax amount owed than the Settled Tax Amount.

19.     In addition, the Commissioner's agreement to waive all postpetition interest in return for payment of the Allowed Massachusetts Priority Tax Claim Amount prior to January 31, 2011, will save the Debtors more than $7 million in postpetition interest accrued as of year's end as well as, in light of the uncertain timing of the Debtors' exit from chapter 11, interest that will continue to accrue at 4.19% (which is $630,000 per annum) until the Plan's Effective Date. As discussed in more detail below, this waiver of postpetition interest makes eminent business sense.

20.     These facts and circumstances more than satisfy the Martin standard.  The Debtors therefore respectfully request the Court the Order authorizing the Debtors to enter into the Settlement Agreement and pay the Allowed Massachusetts Priority Tax Claim Amount on the terms and conditions set forth in the Settlement Agreement.

II. **THE COURT SHOULD APPROVE PAYMENT OF THE SETTLED TAX AMOUNT AND PREPETITION INTEREST UPON ENTRY OF THE ORDER**

21.     Paying the Allowed Massachusetts Priority Tax Claim Amount in January 2011 will redound to the benefit of the Debtors and their creditor and other constituencies because it will save the Debtors more than $7 million in postpetition interest under the Plan. This Court has the authority to approve such a use of estate assets as an exercise of the Debtors' business judgment when there is for a sound business purpose and the use of property is proposed in good faith. 11 US.C. § 363(b) (use authorized after notice and hearing); see also In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); see also Fulton State Bank v. Schipper, 933 F.2d 513,515 (7th Cir. 1991) ("a debtor's decision must be supported by an articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386,390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

22.     Under section 363(b) of the Bankruptcy Code, a debtor must establish that it has a valid business purpose for using the estate's property outside the ordinary course of business. See In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); see also Delaware & Hudson, 124 B.R. at 178-79, Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party-in-interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

23. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting the Lionel standard in this district).

24. Here, each of those four factors has been more than abundantly satisfied. The Debtors therefore submit that there is abundant business justification for the Debtors to satisfy the Allowed Massachusetts Priority Tax Claim prior to the Effective Date by paying over the Settled Tax Amount and Prepetition Interest on the terms set forth in the Settlement Agreement.

25. *Sound Business Reason.* As a matter of pure business judgment, paying the Allowed Massachusetts Priority Tax Claim Amount as quickly as possible after this Court approves the Settlement is all but a foregone conclusion. Doing so will save the Debtors well more than $7 million of interest accrued as of the end of the year plus additional interest accruing (at 4.19%, or approximately $630,000 per annum) until at least the Plan's Effective Date. Moreover, the Debtors' current rate of return on their cash deposits is much lower than the Plan's 4.19% interest rate, and so the cost of carrying the unpaid Allowed Massachusetts Priority Tax Claim will continue to increase until it is satisfied in full.

26. *Fair and Reasonable Consideration.* For the reasons set forth above, the Debtors' payment of the Allowed Massachusetts Priority Tax Claim Amount upon entry of the proposed

Order is fair and reasonable consideration for the Commissioner's waiving of well more than $7 million in postpetition interest.

27.   *Good Faith.*   The Debtors negotiated the Settlement Agreement at arms' length with the Commissioner.

28.   *Notice.*   Prior to filing this Motion, the Debtors informed the statutory committees of the proposed settlement and briefed their respective financial and legal advisors regarding the legal and business reasons for entering into the Settlement Agreement.  The Debtors also provided notice of this Motion as set forth below in ¶ 31 hereof.

## NO PREVIOUS MOTION

29.   No previous motion for the relief sought herein has been made to this or any other court.

## NO BRIEFING SCHEDULE

30.   The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

## NOTICE

31.   Notice of this Motion has been given to:  (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested

service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) the Commissioner. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

The Debtors respectfully request the Court enter the proposed Order: (i) approving the Settlement Agreement and allowing the Allowed Massachusetts Priority Tax Claim in the amount of approximately $15,001,905.82; (ii) authorizing the Debtors to pay the Allowed Massachusetts Priority Tax Claim Amount prior to January 31, 2011 on the terms set forth in the Settlement Agreement; and (iii) granting such other relief as may be appropriate.

Dated: December 6, 2010

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, IL 60602-4253
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession