**1.2**    **OTHER TERMS/INTERPRETATION**

(a)    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

(b)    Subject to Section 1.2(n), any reference in a Plan Document to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.

(c)    Any reference in a Plan Document to an existing document or exhibit in the Exhibit Book filed or to be filed shall mean the document or exhibit as it may have been or may be amended, modified or supplemented.

(d)    Any reference to an Entity as a Holder of a Claim or Plan Claim shall include that Entity's successors, assigns and affiliates.

(f)    The words "herein," "hereof," "hereto," "hereunder," and others of similar import when used in a Plan Document refer to such Plan Document as a whole and not to any particular section, subsection, or clause contained in such Plan Document.

(g)    The word "including" (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word; and the words "shall" and "will" are used interchangeably and have the same meaning.

(h)    All references to dollars are to United States dollars.

(i)    An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

(j)    The descriptive headings contained in Plan Documents are included for convenience of reference only and are not intended to be a part of and shall not affect in any way the meaning or interpretation of Plan Documents.

(k)    All references in a particular Plan Document to sections, articles, and exhibits are references to sections, articles and exhibits of or to such Plan Document unless otherwise specified.

(l)    In computing any period of time prescribed or allowed by a Plan Document, the provisions of Bankruptcy Rule 9006(a) shall apply.

42

(m)    The rules of construction set forth in Bankruptcy Code § 102 shall apply.

(n)    Nothing in the Plan or any other Plan Document shall be deemed to alter, modify, amend, or otherwise change, in any way, (i) the Sealed Air Settlement Agreement, except to the extent that each of the Sealed Air Corporation and Cryovac, Inc. expressly consents to such alteration, modification, amendment, or change in writing in its absolute discretion or (ii) the Fresenius Settlement Agreement, except to the extent that Fresenius consents to such alteration, modification, amendment, or change in writing in its absolute discretion.

## 1.3    THE PLAN DOCUMENTS

The Plan Documents, once Filed, shall also be available for review in the office of the clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Plan Claims and Equity Interests may also obtain a copy of the Plan Documents following their Filing with the clerk of the Court by contacting the Debtors' voting agent, BMC Group, Inc. by a written request sent to:

| **If by hand delivery/courier:** | **If by U.S. mail:** |
|---|---|
| BMC Group, Inc. | BMC Group, Inc. |
| 444 N. Nash Street | P.O. Box 913 |
| El Segundo, CA  90245-2822 | El Segundo, CA  90245-0913 |
| Attn:  Grace Voting Agent | Attn:  Grace Voting Agent |

or by telephone at (888) 909-0100 or email to wrgrace@bmcgroup.com.  Copies of the Plan Documents also will be available for review on the Debtors' website at www.grace.com and on the website of BMC Group, Inc. at www.bmcgroup.com/wrgrace.

## 1.4    ANCILLARY DOCUMENTS

Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

**ARTICLE 2**
**PROVISIONS FOR PAYMENT OF ADMINISTRATIVE**
**EXPENSES AND PRIORITY TAX CLAIMS**

## 2.1    UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims are not classified and are excluded from the Classes set forth in Article 3 of this Plan.

### 2.1.1   PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

(a)   *Treatment.*  Subject to the provisions of Bankruptcy Code §§ 330(a), 331, and 503, each Holder of an Allowed Administrative Expense Claim shall be paid the Allowed Amount of its Administrative Expense Claim either (i) in full, in Cash, by the Reorganized Debtors, on the Effective Date or as soon as practicable thereafter, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed Administrative Expense Claim and the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court; *provided, however,* that (A) Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors in Possession on or after the Petition Date or assumed by the Debtors in Possession pursuant to this Plan or an order of the Bankruptcy Court shall be paid by the Reorganized Debtors in accordance with the terms and conditions of the particular transactions and any agreements relating thereto or any order of the Bankruptcy Court and (B) Allowed Administrative Expense Claims of Professionals shall be paid pursuant to an order of the Bankruptcy Court.

(b)   *Deadline For Filing Applications for Compensation and Administrative Expenses.*

(1)   *Professionals' Fees.*  All final applications for compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date, and any other request for compensation by any Entity for making a substantial contribution (as described in Bankruptcy Code § 503(b)(3)(D)) in the Chapter 11 Cases (except only for Claims under 28 U.S.C. § 1930 and for fees incurred by the clerk's office), shall be Filed no later than ninety (90) days after the Effective Date ("**Professionals' Fees**"). Objections to any Administrative Expense Claims for Professionals' Fees must be filed within sixty (60) days after the applications have been Filed.  Any Professional or Entity with an Administrative Expense Claim that does not File an application for payment of such Administrative Expense Claim by the deadline set forth herein shall be forever barred from asserting such Administrative Expense Claim and shall receive no Distribution under this Plan or otherwise on account of such Administrative Expense Claim.  Compensation of Professionals for services rendered and for reimbursement of expenses incurred after the Effective Date shall be paid by the Reorganized Debtors in accordance with any such Professional's invoice(s) and to the extent undisputed without any action or order of the Court.

(2)   *Other Administrative Expense Claims.*  Unless a request for the payment of an Administrative Expense Claim previously was filed with the Court, all requests or applications for payment of Administrative Expense Claims other than Professionals' Fees described in Section 2.1.1(b)(1) ("**Other Administrative Expense Claims**") must be filed with the Court and served on the Reorganized Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 90 days after the Effective Date (the "**Administrative Claims Bar Date**").  Any Holder of an Administrative Expense Claim that is required to file and serve a request for payment of such Administrative Expense Claim and that does not file and serve such a request within the time established by this Section 2.1.1(b)(2) will be forever barred from asserting such Administrative Expense Claim against the Debtors, the Reorganized Debtors or their respective property and such

Administrative Expense Claim will be deemed discharged as of the Effective Date. Objections to Other Administrative Expense Claims must be filed with the Court and served on the requesting party within 270 days after the Effective Date; *provided, however,* that such objection deadline may be extended by the Court upon request of the Reorganized Debtors.

### 2.1.2 PRIORITY TAX CLAIMS

Each Holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Priority Tax Claim, at the option of the Reorganized Debtors, either (i) in full, in Cash, by the Reorganized Debtors, on the Effective Date or as soon as practicable thereafter, or (ii) upon such other terms as may be agreed upon by the Holder of an Allowed Priority Tax Claim and approved by the Bankruptcy Court, or (iii) in equal quarterly Cash payments commencing on the Initial Tax Distribution Date and, thereafter, on each Quarterly Tax Distribution Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at 4.19% per annum, over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim, or upon such other terms (including such other rate of interest) determined by the Bankruptcy Court, which will provide the Holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; *provided, however,* that each Holder of a Priority Tax Claim which by operation of the Fresenius Settlement Agreement is an obligation for Fresenius Indemnified Taxes promptly shall be paid in full in Cash as such Fresenius Indemnified Taxes become due and payable.

**ARTICLE 3**
**CLASSIFICATION AND TREATMENT**
**OF CLAIMS AND EQUITY INTERESTS**

### 3.1 SUMMARY

Claims and Equity Interests are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Plan and pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1), as follows:

|  | CLASSIFICATION | IMPAIRMENT AND VOTING |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 2 | Secured Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 3 | Employee Benefit Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 4 | Workers' Compensation Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 5 | Intercompany Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 6 | Asbestos PI Claims | Impaired -- vote being solicited. |

45

| Class 7 | *Class 7A.* Asbestos PD Claims (excluding US ZAI PD Claims) | Unimpaired -- vote being solicited for purposes of § 524(g) of the Bankruptcy Code. |
| | *Class 7B.* US ZAI PD Claims | Impaired -- vote being solicited. |
| Class 8 | CDN ZAI PD Claims | Impaired -- vote being solicited. |
| Class 9 | General Unsecured Claims | Unimpaired -- deemed to have voted to accept the Plan; provisional vote being solicited. |
| Class 10 | Equity Interests in the Parent | Impaired -- vote being solicited. |
| Class 11 | Equity Interests in Debtors Other than the Parent | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |

### 3.1.1   Class 1.   Priority Claims

(a)   <u>Classification</u>

Class 1 consists of all Priority Claims against the Debtors.

(b)   <u>Treatment</u>

Each Holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim plus interest at 4.19%, from the Petition Date, compounded annually, or if pursuant to an existing contract, interest at the non-default contract rate, at the option of the Reorganized Debtors, either (i) in full, in Cash, on the later of (A) the Effective Date or as soon as practicable thereafter or (B) the date such Priority Claim becomes an Allowed Priority Claim, or as soon as practicable thereafter, or (ii) upon such other less favorable terms as may be agreed upon by the Holder of an Allowed Priority Claim.

(c)   <u>Impairment and Voting</u>

Class 1 is unimpaired.  The Holders of the Allowed Priority Claims in Class 1 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.2   Class 2.   Secured Claims

(a)   <u>Classification</u>

Class 2 consists of all Secured Claims against the Debtors.

(b)   <u>Treatment</u>

Each Holder of an Allowed Secured Claim shall be paid the Allowed Amount of its Allowed Secured Claim plus interest at 4.19%, from the Petition Date, compounded annually, or

if pursuant to an existing contract, interest at the non-default contract rate, at the option of the Reorganized Debtors, either (i) in full, in Cash, on the later of (A) the Effective Date or as soon as practicable thereafter or (B) the date such Secured Claim becomes an Allowed Secured Claim, or as soon as practicable thereafter; (ii) upon such other less favorable terms as may be agreed upon by the Holder of an Allowed Secured Claim; (iii) by the surrender to the Holder or Holders of any Allowed Secured Claim of the property securing such Secured Claim; or (iv) notwithstanding any contractual provision or applicable law that entitles the Holder of a Secured Claim to demand or receive payment thereof prior to the stated maturity from and after the occurrence of a default, by reinstatement in accordance with Bankruptcy Code § 1124(2)(A)-(D).

(c)     Impairment and Voting

Class 2 is unimpaired.  The Holders of the Allowed Secured Claims in Class 2 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.3   Class 3.        Employee Benefit Claims

(a)     Classification

Class 3 consists of all Employee Benefit Claims.

(b)     Treatment

Employee Benefit Claims shall be reinstated and paid pursuant to the written benefit plan or plans that the Debtors intend to continue pursuant to Section 9.3.1 of this Plan, subject to the terms and conditions of such plans. Thus, this Plan leaves unaltered the legal, equitable and contractual rights to which each such Claim entitles the Holder of such Claim.

(c)     Impairment and Voting

Class 3 is unimpaired.  The Holders of the Employee Benefit Claims in Class 3 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.4   Class 4.        Workers' Compensation Claims

(a)     Classification

Class 4 consists of all Workers' Compensation Claims against the Debtors.

(b)     Treatment

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Workers' Compensation Claim entitles the Holder of such Workers' Compensation Claim.  For the avoidance of doubt, in no event shall any of the Sealed Air Indemnified Parties or the

Fresenius Indemnified Parties have any liability with respect to any Workers' Compensation Claim.

(c)    Impairment and Voting

Class 4 is unimpaired.  The Holders of the Workers' Compensation Claims in Class 4 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

**3.1.5    Class 5.        Intercompany Claims**

(a)    Classification

Class 5 consists of all Intercompany Claims.

(b)    Treatment

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Intercompany Claim entitles the Holder of such Intercompany Claim.

(c)    Impairment and Voting

Class 5 is unimpaired.  The Holders of Intercompany Claims in Class 5 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

**3.1.6    Class 6.        Asbestos PI Claims**

(a)    Classification

Class 6 consists of all Asbestos PI Claims against the Debtors.

(b)    Treatment

(i)    All Asbestos PI Claims shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos PI Trust Agreement and the Asbestos PI TDP (unless previously allowed pursuant to an Order of the Court or agreement of the parties).

(ii)    All Asbestos PI Claims shall be paid by the Asbestos PI Trust solely from the Asbestos PI Trust Assets as and to the extent provided in the Asbestos PI TDP.  Asbestos PI Claims shall not be deemed Allowed or Disallowed (unless an order or agreement approved by the Court allowing the Claim has been previously entered), but rather shall be resolved by the Asbestos PI Trust pursuant to the terms of the Asbestos PI TDP.

48

(c)     Asbestos PI Channeling Injunction

The sole recourse of the Holder of an Asbestos PI Claim on account of such Asbestos PI Claim (whether or not such Asbestos PI Claim has been previously allowed pursuant to an Order of the Court or agreement of the parties) shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction, the Asbestos PI Trust Agreement, and the Asbestos PI TDP.

(d)     Impairment and Voting

Class 6 is impaired.  The Debtors are soliciting the votes of Holders of the Asbestos PI Claims in Class 6 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.7   Class 7.     Asbestos PD Claims

(a)     Classification

Class 7 consists of all Asbestos PD Claims against the Debtors.

Class 7A consists of all Asbestos PD Claims (except US ZAI PD Claims) against the Debtors.

Class 7B consists of all US ZAI PD Claims against the Debtors.

(b)     Treatment

(i)     *Treatment of Claims in Class 7A.*  Each Holder of an Asbestos PD Claim in Class 7A that is Allowed as of the Effective Date pursuant to a PD Settlement Agreement, or other stipulation, order, or agreement, shall be paid the Allowed Amount of its Allowed Asbestos PD Claim in Cash in full by the Asbestos PD Trust as and when due, without any deduction, proration, reduction, setoff or discount, pursuant to the terms of the respective PD Settlement Agreements, or other stipulation, order, or agreement, and the terms of the Asbestos PD Trust Agreement (which Asbestos PD Trust shall be deemed by this Plan, the Confirmation Order, and the Asbestos PD Trust Agreement to have assumed the obligations of such PD Settlement Agreements).   Unresolved Asbestos PD Claims shall be paid pursuant to the following procedures:

(A)     In connection with confirmation of the Plan, the Court shall enter the Class 7A CMO; and

(B)     Allowed Unresolved Asbestos PD Claims shall be paid in full, in Cash, by the Asbestos PD Trust pursuant to the terms of the Asbestos PD Trust Agreement.

(C)     All Allowed Asbestos PD Claims in Class 7A shall be paid in full by the Asbestos PD Trust solely from the Asbestos PD Trust Assets that are designated for Class 7A Claims.

(D)     The inclusion of Demands as Asbestos PD Claims in Class 7A and any reference to Demands related to Asbestos PD Claims in Class 7A in the Plan does not constitute an admission by the Debtors and the other Plan Proponents that an Entity which did not have an allowable Asbestos PD Claim in Class 7A against the Debtors as of the Effective Date could assert a valid claim against the Asbestos PD Trust contemplated under the Plan, and all rights and defenses to the allowance of such a claim by the Asbestos PD Trust are expressly reserved pursuant to the Plan.

(ii)     _Treatment of Claims in Class 7B._  All Asbestos PD Claims in Class 7B shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos PD Trust Agreement and the ZAI TDP (unless previously allowed pursuant to an Order of the Court or agreement of the parties).

(A)     All Asbestos PD Claims in Class 7B shall be paid by the Asbestos PD Trust solely from the Asbestos PD Trust Assets that are designated for Class 7B Claims under the Asbestos PD Trust Agreement and as provided in the ZAI TDP.  Asbestos PD Claims in Class 7B shall not be deemed Allowed or Disallowed (unless an order or agreement approved by the Court allowing the Claim has been previously entered), but rather shall be resolved by the Asbestos PD Trust pursuant to the terms of the ZAI TDP.

(B)     The inclusion of Demands as US ZAI PD Claims in Class 7B and any reference to Demands related to US ZAI PD Claims in Class 7B in the Plan does not constitute an admission by the Debtors and the other Plan Proponents that an Entity which did not have an allowable US ZAI PD Claim in Class 7B against the Debtors as of the Effective Date could assert a valid claim against the Asbestos PD Trust contemplated under the Plan, and all rights and defenses to the allowance of such a claim by the Asbestos PD Trust shall be treated as provided for in the ZAI TDP.

(c)     Impairment and Voting

(i)     _Voting for Class 7._  The votes of all Claimants in Class 7 will be solicited and tabulated as one class for purposes of § 524(g) of the Bankruptcy Code in the manner and to the extent provided in the Confirmation Procedures Order.

(ii)     _Impairment and Voting for Class 7A._  Class 7A is unimpaired; however, the Debtors have agreed to solicit the votes of Holders of the Asbestos PD Claims in Class 7A to accept or reject this Plan solely for purposes of § 524(g) of the Bankruptcy Code.

(iii)     _Impairment and Voting for Class 7B._  Class 7B is impaired.  The Debtors are soliciting the votes of Holders of the Asbestos PD Claims in Class 7B to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order both for

purposes of § 524(g) and for all other purposes contemplated by §§ 1126(c) and 1129(a) of the Bankruptcy Code.

(d)    Asbestos PD Channeling Injunction

The sole recourse of the Holder of an Asbestos PD Claim in Class 7A on account of such Asbestos PD Claim (whether or not such Asbestos PD Claim is Allowed as of the Effective Date) shall be to the Asbestos PD Trust pursuant to the provisions of the Asbestos PD Channeling Injunction, the Asbestos PD Trust Agreement, the Class 7A CMO, and any orders entered by the Bankruptcy Court allowing such Asbestos PD Claims.

The sole recourse of the Holder of an Asbestos PD Claim in Class 7B on account of such Asbestos PD Claim (whether or not such Asbestos PD Claim is Allowed as of the Effective Date) shall be to the Asbestos PD Trust pursuant to the provisions of the Asbestos PD Channeling Injunction, the Asbestos PD Trust Agreement, and the ZAI TDP.

### 3.1.8    Class 8.    CDN ZAI PD Claims

(a)    Classification

Class 8 consists of all CDN ZAI PD Claims against the Debtors.

(b)    Treatment

(i)    All CDN ZAI PD Claims shall be resolved in accordance with the terms, provisions, and procedures outlined in the CDN ZAI Minutes of Settlement.

(ii)    All CDN ZAI PD Claims shall be paid solely from the CDN ZAI PD Claims Fund in the manner set out in the CDN ZAI Minutes of Settlement. CDN ZAI PD Claims shall not be deemed Allowed or Disallowed, but rather shall be resolved as set forth in the CDN ZAI Minutes of Settlement. Confirmation of this Plan shall constitute approval by this Court of the settlement reflected in the CDN ZAI Minutes of Settlement for all purposes including to the extent required by Bankruptcy Rule 9019.

(c)    Asbestos PD Channeling Injunction

The sole recourse of the Holder of a CDN ZAI PD Claim on account of such CDN ZAI PD Claim shall be to the CDN ZAI PD Claims Fund pursuant to the provisions of the CDN ZAI Minutes of Settlement, the Asbestos PD Channeling Injunction, and any orders by the Canadian Court allowing such CDN ZAI PD Claims.

(d)    Impairment and Voting

Class 8 is impaired. The CCAA Representative Counsel shall be entitled to vote to accept or reject this Plan on behalf of holders of CDN ZAI PD Claims in the manner and to the extent provided in the CDN ZAI Minutes of Settlement and the Canadian Settlement Approval Order.

### 3.1.9   Class 9.        General Unsecured Claims

(a)      <u>Classification</u>

Class 9 consists of all General Unsecured Claims against the Debtors.

(b)      <u>Treatment</u>

Each Holder of an Allowed General Unsecured Claim shall be paid the Allowed Amount of its Allowed General Unsecured Claim plus post-petition interest on such Claim either (i) in Cash in full on the later of (A) the Effective Date or (B) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or (ii) on such other less favorable terms as have been agreed upon by the Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors. The Plan leaves unaltered the legal, equitable, and contractual rights to which each such General Unsecured Claim entitles the Holder of each such General Unsecured Claim subject to the preemptory effect of bankruptcy law. Subject to Section 3.1.9(d) of this Plan, post-petition interest on Allowed General Unsecured Claims shall be calculated as follows: (i) either

(A)      for General Unsecured Claims arising from the Pre-petition Credit Facilities, post-petition interest shall be calculated at the rate of 6.09% from the Petition Date through December 31, 2005 and thereafter at floating prime, in each case compounded quarterly through the Effective Date;

(B)      for General Unsecured Claims arising from Environmental Claims that include a liquidated amount for post-petition or future cleanup liability, post-petition interest shall be calculated at the rate of 4.19% from the date specified in any order allowing the Environmental Claim in such liquidated amount, compounded annually through the Effective Date or the date of payment of the General Unsecured Claim if it becomes an Allowed General Unsecured Claim after the Effective Date;

(C)      for General Unsecured Claims arising from an existing contract that specifies payment of interest at a non-default rate of interest, post-petition interest shall be calculated at the non-default rate of interest provided in such contract from the Petition Date, compounded annually through the Effective Date or the date of payment of the General Unsecured Claim if it becomes an Allowed General Unsecured Claim after the Effective Date; or

(D)      for all other General Unsecured Claims, post-petition interest shall be calculated at the rate of 4.19% from the Petition Date, compounded annually through the Effective Date or the date of payment of the General Unsecured Claim if it becomes an Allowed General Unsecured Claim after the Effective Date; or

(ii) on such other less favorable terms as have been agreed upon by the Holder of an Allowed General Unsecured Claim and the Debtors or Reorganized Debtors, including an agreement

whereby no post-petition interest is paid on the Claim or post-petition interest begins to accrue on the Claim on a date other than the Petition Date.

     (c)    <u>EPA Multi-Site Agreement Obligations</u>

The Debtors' obligations under the Multi-Site Settlement Agreement approved by the Bankruptcy Court on June 3, 2008 (Dkt. No. 18847) constitute Claims in Class 9, except for those obligations specifically identified therein as Allowed Administrative Expense Claims. The Multi-Site Settlement Agreement is incorporated into the Plan, and the rights of the Settling Federal Agencies (as defined in the Multi-Site Settlement Agreement) and the Debtors with respect to "Debtor-Owned Sites," "Additional Sites," "Work Consent Decrees" and "Work Administrative Orders" (as defined in the Multi-Site Settlement Agreement), shall be governed by the Multi-Site Settlement Agreement notwithstanding any other provision of the Plan or the Confirmation Order to the contrary.

     (d)    <u>Procedures for Resolution of Post-Petition Interest Disputes</u>

     (i)    If any Holder of a General Unsecured Claim, other than a Holder of a General Unsecured Claim arising from the Pre-petition Credit Facilities (which Claims are subject to a pending objection and litigation concerning the amount of post-petition interest to which the Holders are entitled) believes that it is entitled to post-petition interest at a rate or calculation other than the treatment set forth in Section 3.1.9(b) of the Plan, such Holder may File with the Bankruptcy Court a **"Post-Petition Interest Determination Notice"** by no later than the deadline established by the Bankruptcy Court for Claimants to vote to accept or reject the Plan. Any Post-Petition Interest Determination Notice that is Filed shall (A) identify the Claim and the requested rate of post-petition interest applicable to such Claim and (B) attach documentation supporting the payment of such rate of interest for the Claim. Failure to timely File a Post-Petition Interest Determination Notice with the required information and supporting documentation will be deemed an agreement to accept the post-petition interest treatment provided for in Section 3.1.9(b) of the Plan. The Debtors shall provide notice of the deadline to File a Post-Petition Interest Determination Notice in the manner and to the extent provided in the Confirmation Procedures Order.

     (ii)    The Debtors or Reorganized Debtors, as applicable, may dispute any Post-Petition Interest Determination Notice by Filing an objection thereto by no later than 60 days after the Effective Date. In objecting to a Post-Petition Interest Determination Notice, the Debtors or Reorganized Debtors, as applicable, may assert that the Holder of the General Unsecured Claim that Filed the Post-petition Interest Determination Notice is entitled to no post-petition interest under applicable law or that an amount of post-petition interest less than the amount provided for in Section 3.1.9(b) of the Plan should be paid on account of such Claim, and the Bankruptcy Court may so find in accordance with any such objection asserted by the Debtors or the Reorganized Debtors. If the Debtors or Reorganized Debtors, as applicable, object to a Post-Petition Interest Determination Notice, then they shall also assert any and all objections that they may have to the underlying General Unsecured Claim within the same objection notwithstanding the time to file such other objections set forth in Section 5.1 of the Plan.

(iii)    The Debtors shall pay the principal amount of any Allowed General Unsecured Claim to which a Post-Petition Interest Determination Notice relates on the Effective Date or on the date on which such Claim becomes an Allowed General Unsecured Claim in accordance with the applicable provisions of the Plan, *provided, however*, that no payment of post-petition interest will be made with respect to any General Unsecured Claim for which a Post-Petition Interest Determination Notice has been Filed until the Post-Petition Interest Determination Notice has been resolved in accordance with this Section 3.1.9(d).  In addition, the Debtors shall pay the principal amount of the General Unsecured Claims arising from the Pre-petition Credit Facilities on the Effective Date, *provided, however*, that no payment of post-petition interest will be made with respect to such General Unsecured Claims until the Debtors' objection in relation thereto has been resolved by a Final Order.  Post-petition interest shall not accrue with respect to any General Unsecured Claim after the Debtors have paid the principal amount of such Claim.

(iv)    At any time, if the Debtors or Reorganized Debtors, as applicable, determine that the post-petition interest rate or calculation asserted in a Post-Petition Interest Determination Notice is appropriate, the Debtors or Reorganized Debtors, as applicable, may File a certificate of no objection with respect to such notice (without prejudice to their rights in relation to any other Post-Petition Interest Determination Notice).  No hearing is required by the Bankruptcy Court with respect to any Post-Petition Interest Determination Notice for which a certificate of no objection is Filed or to which the Debtors or Reorganized Debtors, as applicable, do not timely File an objection, and the respective amount of post-petition interest shall be paid on the Post-Effective Distribution Date with respect thereto.

(v)    If the Debtors or Reorganized Debtors, as applicable, object to a Post-Petition Interest Determination Notice and no stipulation or agreement is reached with respect to the rate or calculation of post-petition interest for such General Unsecured Claim, the Debtors or Reorganized Debtors, as applicable, will ask the Bankruptcy Court to schedule a hearing on the particular Post-Petition Interest Determination Notice and the related objection at an appropriate time and shall pay the amount of post-petition interest determined by a Final Order in relation to such Post-Petition Interest Determination Notice on the Post-Effective Distribution Date in relation thereto.  All litigation with respect to a disputed Post-Petition Interest Determination Notice shall be conducted in the Bankruptcy Court as claims allowance litigation, subject to the same bankruptcy rules and procedures that would have applied had the litigation been conducted before the Effective Date.

(vi)    The Debtors or Reorganized Debtors, as applicable, and the Holder of the General Unsecured Claim that Filed the Post-Petition Interest Determination Notice at any time may enter into a stipulation or agreement as to the appropriate rate or calculation of post-petition interest with respect to such General Unsecured Claim without further action of the Bankruptcy Court and without any prejudice to the Debtors' or the Reorganized Debtors' objections to any other Post-Petition Interest Determination Notice.

(e)    <u>Procedures for Determining Non-Default Contract Rate of Post-Petition Interest</u>

(i)    Any Holder of a General Unsecured Claim, other than a Holder of a General Unsecured Claim arising from the Pre-petition Credit Facilities, who does not dispute the manner

in which post-petition interest shall be calculated as provided for in Section 3.1.9(b)(i)(C) of the Plan, but who wishes to substantiate the existence of an existing contract that specifies payment of interest at a non-default rate of interest as contemplated by Section 3.1.9(b)(i)(C), shall submit a "**Notice of Non-Default Contract Rate of Interest**" to the Debtors' voting and claims reconciliation agent, BMC Group, Inc., by no later than the deadline established by the Bankruptcy Court for Claimants to vote to accept or reject the Plan. Any Notice of Non-Default Contract Rate of Interest shall (A) identify the Claim and the non-default contractual rate of interest applicable to such Claim, (B) attach a copy of the contract relating to such Claim and (C) be signed by the Holder of the Claim or its authorized representative under penalty of perjury. A Notice of Non-Default Contract Rate of Interest does not need to be Filed with the Bankruptcy Court. Provided that a Holder of a General Unsecured Claim or its authorized representative has not Filed a Post-Petition Interest Determination Notice, failure by a Holder of a General Unsecured Claim or its authorized representative to timely submit a Notice of Non-Default Contract Rate of Interest will be deemed an admission that no non-default contract rate of interest exists with respect to such Holder's General Unsecured Claim, and said Holder of the General Unsecured Claim shall receive interest as set forth in Section 3.1.9(b)(i)(D) above. The Debtors shall provide notice of the deadline to submit a Notice of Non-Default Contract Rate of Interest in the manner and to the extent provided in the Confirmation Procedures Order.

(ii)    The Debtors may dispute any Notice of Non-Default Contract Rate of Interest by serving a written objection at any time before the Effective Date upon the Holder of a General Unsecured Claim who has submitted a Notice of Non-Default Contract Rate of Interest. After a written objection to a Notice of Non-Default Contract Rate of Interest has been served, the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable General Unsecured Claim shall negotiate to resolve the objection. If a resolution is not reached, the Holder of the General Unsecured Claim may request a hearing before the Bankruptcy Court to resolve the objection to its Notice of Non-Default Contract Rate of Interest, *provided, however,* that such request must be made no later than 60 days after the Effective Date and that the only issue to be determined by the Bankruptcy Court at such a hearing shall be the appropriate amount of non-default contract interest with respect to the General Unsecured Claim, which shall be paid on the Post-Effective Distribution Date in relation to a Final Order making such determination. If the Debtors do not dispute a Notice of Non-Default Contract Rate of Interest by serving a written objection upon the Holder of a General Unsecured Claim who has submitted a Notice of Non-Default Contract Rate of Interest, then the interest rate contained in the Notice of Non-Default Contract Rate of Interest shall govern and be paid.

(iii)    To the extent that a Notice of Non-Default Contract Rate of Interest relates to an Allowed General Unsecured Claim and does not relate to a Claim that is also subject to a Post-Petition Interest Determination Notice, the Debtors shall pay, on the Effective Date or on the date on which such Claim becomes an Allowed General Unsecured Claim, the principal amount of the Allowed General Unsecured Claim to which such notice relates plus post-petition interest at the rate of 4.19% from the Petition Date or, if applicable, the non-default contract rate of interest according to the Debtors' books and records, compounded annually, in accordance with the applicable provisions of the Plan pending resolution of any dispute concerning the amount of non-default contract rate of interest asserted in the Notice of Non-Default Contract Rate of

Interest.  Post-petition interest shall not accrue with respect to any General Unsecured Claim after the Debtors have paid the principal amount of such Claim.

 (f) <u>Impairment and Voting</u>

 Class 9 is unimpaired.  The Holders of General Unsecured Claims in Class 9 are deemed to have voted to accept this Plan.  Notwithstanding the foregoing, the Debtors have agreed to provisionally solicit the votes of Holders of General Unsecured Claims in Class 9 in the manner and to the extent provided in the Confirmation Procedures Order.

 **3.1.10  Class 10.** **Equity Interests in the Parent**

 (a) <u>Classification</u>

Class 10 consists of Equity Interests in the Parent.

 (b) <u>Treatment</u>

 On the Effective Date, Class 10 Equity Interests in the Parent shall be retained, subject to the issuance of the Warrant, the terms of the Share Issuance Agreement, and the Stock Trading Restrictions Term Sheet.

 (c) <u>Impairment and Voting</u>

 Class 10 is impaired.  The Debtors are soliciting the votes of Holders of the Equity Interests in the Parent in Class 10 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

 **3.1.11  Class 11.** **Equity Interests in the Debtors other than the Parent**

 (a) <u>Classification</u>

Class 11 consists of Equity Interests in the Debtors other than the Parent.

 (b) <u>Treatment</u>

 This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest.

 (c) <u>Impairment and Voting</u>

 Class 11 is unimpaired.  The Holders of the Equity Interests in the Debtors other than the Parent in Class 11 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

# ARTICLE 4
# MODIFICATION OR WITHDRAWAL OF THIS PLAN

## 4.1    MODIFICATION OF THE PLAN; AMENDMENT OF PLAN DOCUMENTS

### 4.1.1    Modification of the Plan

The Plan Proponents, acting together, may alter, amend, or modify this Plan, or any other Plan Document, under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of Bankruptcy Code §§ 1122 and 1123. After the Confirmation Date, the Plan Proponents, acting together, may alter, amend, or modify this Plan but only before its substantial consummation in accordance with Bankruptcy Code § 1127(b). Notwithstanding the foregoing, in no event may the Plan Proponents alter, amend, or modify this Plan or any other Plan Document in a manner that (a) conflicts with the Sealed Air Settlement Agreement except to the extent that such alteration, amendment, or modification is expressly consented to, in writing, by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion or (b) conflicts with the Fresenius Settlement Agreement except to the extent that such alteration, amendment, or modification is expressly consented to, in writing, by Fresenius in its absolute discretion. In no event shall either Sealed Air Corporation or Cryovac, Inc. have any obligation with respect to the Cryovac Payment (including the Asbestos PD Initial Payment) unless the terms of the Plan and/or any alteration, amendment, or modification thereto comply fully with the Sealed Air Settlement Agreement except to the extent that any and every non-compliance with the Sealed Air Settlement Agreement has been expressly consented to, in writing, by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion. In no event shall Fresenius have any obligation with respect to the Fresenius Payment (including the Asbestos PD Initial Payment) unless the terms of the Plan and/or any alteration, amendment, or modification thereto comply fully with the Fresenius Settlement Agreement except to the extent that any and every non-compliance with the Fresenius Settlement Agreement has been expressly consented to, in writing, by Fresenius in its absolute discretion.

### 4.1.2    Post-Effective Date Amendment of Other Plan Documents

From and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents, other than the Plan, will be as provided in such Plan Documents. Notwithstanding the foregoing, in no event may the Plan Proponents or any other party amend, modify, or supplement any Plan Document in a manner that (a) conflicts with the Sealed Air Settlement Agreement except to the extent that such amendment, modification or supplement is expressly consented to, in writing, by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion or (b) conflicts with the Fresenius Settlement Agreement except to the extent that such amendment, modification, or supplement is expressly consented to, in writing, by Fresenius in its absolute discretion.

**4.2    WITHDRAWAL OF THIS PLAN**

### 4.2.1    Right to Withdraw this Plan

This Plan may be withdrawn by the Plan Proponents, acting together, prior to the Confirmation Date.

### 4.2.2    Effect of Withdrawal

If this Plan is withdrawn prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein or in any of the Plan Documents shall be deemed to constitute a waiver or release of any claims or defenses of, or an admission or statement against interest by, any of the Plan Proponents or any other Entity or to prejudice in any manner the rights of any of the Plan Proponents or any Entity in any further proceedings involving the Debtors.

**ARTICLE 5**
**PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS**
**AND ASBESTOS CLAIMS GENERALLY**

**5.1    OBJECTION TO CLAIMS (OTHER THAN ASBESTOS PI CLAIMS, ASBESTOS PD CLAIMS, AND CDN ZAI PD CLAIMS); PROSECUTION OF DISPUTED CLAIMS**

Subject to the treatment provisions of this Plan, the Debtors or Reorganized Debtors, as applicable, and the United States Trustee, may object to the allowance of any Plan Claims (other than Asbestos PI Claims, Asbestos PD Claims (except as provided for pursuant to the Asbestos PD Trust Agreement and this Plan), and CDN ZAI PD Claims)) Filed with the Bankruptcy Court or to be otherwise resolved pursuant to any provisions of this Plan with respect to which they dispute liability, in whole or in part. Subject to the treatment provisions of this Plan, the Debtors' pending objections to any Plan Claims not channeled to and assumed by the Asbestos PI Trust or the Asbestos PD Trust shall be transferred to the Reorganized Debtors on the Effective Date for final resolution.

Not later than ten (10) days before the Effective Date, the Debtors shall File with the Bankruptcy Court an exhibit listing all Plan Claims (other than Asbestos PI Claims, Asbestos PD Claims, and CDN ZAI PD Claims) that the Debtors have already analyzed and to which the Debtors have no objection (the "**Undisputed Claims Exhibit**"). Plan Claims listed on the Undisputed Claims Exhibit shall be Allowed Claims as set forth in Section 1.1.4 of the Plan. The Debtors or the Reorganized Debtors, as applicable, may File additional Undisputed Claims Exhibits with the Court at any time after the Filing of the initial Undisputed Claims Exhibit with respect to any remaining Plan Claims (other than Asbestos PI Claims, Asbestos PD Claims, and CDN ZAI PD Claims) if they have determined not to object to any of such Claims.

After the Effective Date, all objections that are Filed and prosecuted by the Reorganized Debtors as provided herein may be: (i) compromised and settled in accordance with the business judgment of the Reorganized Debtors without approval of the Bankruptcy Court, or (ii) litigated to Final Order by the Reorganized Debtors. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Plan Claims (other than Asbestos PI Claims, Asbestos PD Claims, and CDN ZAI PD Claims, all of which have no objection deadline) shall be served and Filed no later than 180 days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court. Such further order may be obtained by the Reorganized Debtors upon notice to all Holders of Plan Claims (other than Asbestos PI Claims, Asbestos PD Claims, and CDN ZAI PD Claims) that are still pending allowance and are not subject to a pending objection.

## 5.2    RESOLUTION OF ASBESTOS PI CLAIMS

Asbestos PI Claims shall be resolved in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.

## 5.3    RESOLUTION OF ASBESTOS PD CLAIMS

Asbestos PD Claims shall be resolved in accordance with the Asbestos PD Trust Agreement and (a) in the case of Asbestos PD Claims in Class 7A, the Class 7A Case Management Order setting forth procedures for determining the allowance or disallowance of the Unresolved Asbestos PD Claims; and (b) in the case of Asbestos PD Claims in Class 7B, the ZAI TDP setting forth procedures for resolving the US ZAI PD Claims in Class 7B.

## 5.4    RESOLUTION OF CDN ZAI PD CLAIMS

CDN ZAI PD Claims shall be resolved in accordance with the terms, provisions, and procedures outlined in the CDN ZAI Minutes of Settlement.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THIS PLAN

## 6.1    IMPAIRED CLASSES TO VOTE

Each Holder of a Plan Claim or Equity Interest in an impaired Class is entitled to vote to accept or reject this Plan to the extent and in the manner provided herein or in the Confirmation Procedures Order. In addition, the Debtors have agreed to solicit the votes of Holders of the Asbestos PD Claims in Class 7A to accept or reject this Plan for purposes of section 524(g) of the Bankruptcy Code as described in Section 3.1.7(c). Further, the Debtors have agreed to solicit and tabulate the votes of the Holders of General Unsecured Claims in Class 9. Whether those votes will be given effect, is subject to it being determined that Class 9 is an impaired Class.

## 6.2    ACCEPTANCE BY IMPAIRED CLASSES OF CLAIMS

Acceptance of this Plan by any impaired Class of Plan Claims shall be determined in accordance with the Confirmation Procedures Order and the Bankruptcy Code.

### 6.3    PRESUMED ACCEPTANCE OF THIS PLAN

Classes 1, 2, 3, 4, 5, 7A, 9, and 11 of Plan Claims and Equity Interests in Debtors other than the Parent are unimpaired. Under Bankruptcy Code § 1126(f), the Holders of Plan Claims and Equity Interests in such Classes (except for Class 7A with respect to section 524(g) of the Bankruptcy Code) are conclusively presumed to have voted to accept this Plan.

### 6.4    ACCEPTANCE PURSUANT TO SECTION 524(g) OF THE BANKRUPTCY CODE.

This Plan shall have been voted upon favorably as required by section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code to the extent that at least 75% of those voting in Classes 6, 7, and 8 vote to accept this Plan.

### 6.5    NONCONSENSUAL CONFIRMATION

#### 6.5.1    Cram Down

With respect to impaired Equity Interests in the Parent, and subject to Section 6.4 of this Plan, with respect to any impaired Class of Plan Claims that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief.

#### 6.5.2    General Reservation of Rights

Should this Plan fail to be accepted by the requisite number and amount of the Holders of Plan Claims and Equity Interests required to satisfy Bankruptcy Code §§ 524(g) and 1129, then, notwithstanding any other provision of this Plan to the contrary, the Plan Proponents reserve the right to amend this Plan. Notwithstanding the foregoing, in no event may the Plan Proponents amend, modify, or supplement this Plan in a manner that (a) conflicts with the Sealed Air Settlement Agreement except to the extent that such amendment, modification, or supplement is expressly consented to, in writing, by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion or (b) conflicts with the Fresenius Settlement Agreement except to the extent that such amendment, modification, or supplement is expressly consented to, in writing, by Fresenius in its absolute discretion. In no event shall either Sealed Air Corporation or Cryovac, Inc. have any obligation with respect to the Cryovac Payment (including the Asbestos PD Initial Payment) unless the terms of the Plan and/or any amendment, modification, or supplement thereto comply fully with the Sealed Air Settlement Agreement except to the extent that any and every non-compliance with the Sealed Air Settlement Agreement has been expressly consented to, in writing, by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion. In no event shall Fresenius have any obligation with respect to the Fresenius Payment (including the Asbestos PD Initial Payment) unless the terms of the Plan and/or any amendment, modification, or supplement thereto comply fully with the Fresenius Settlement Agreement

except to the extent that any and every non-compliance with the Fresenius Settlement Agreement has been expressly consented to, in writing, by Fresenius in its absolute discretion.

## ARTICLE 7
## IMPLEMENTATION OF THIS PLAN

### 7.1    CORPORATE GOVERNANCE

#### 7.1.1    Amendment of Certificates of Incorporation of the Debtors

The Certificates of Incorporation of each of the Debtors that is a corporation shall be amended as of the Effective Date. The amended Certificates of Incorporation of the Debtors shall, among other things: (i) prohibit the issuance of nonvoting equity securities (A) as required by Bankruptcy Code § 1123(a)(6) and (B) subject to further amendment as permitted by applicable law, (ii) as to any classes of securities possessing voting power, provide for an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in payment of such dividends, and (iii) effectuate any other provisions of this Plan. The amended Certificates of Incorporation shall be filed with the Secretary of State or equivalent official in their respective jurisdictions of incorporation on or prior to the Effective Date and be in full force and effect without any further amendment as of the Effective Date.

#### 7.1.2    Amendment of By-Laws of the Parent

The By-Laws of the Parent shall be amended as of the Effective Date to read in their entirety substantially in the form set forth in the Plan Supplement to, among other things, effectuate the provisions of this Plan.

#### 7.1.3    Precedence of Share Issuance Obligations

The covenants and agreements of Parent (for purposes of this Section 7.1.3, as defined in the Share Issuance Agreement) under Section 5(d) of the Share Issuance Agreement shall take precedence and prevail over any inconsistent or contrary provision contained in the certificate of incorporation or by-laws of Parent or any of its subsidiaries or in any contract, agreement or other instrument to which Parent or any of its subsidiaries is a party or otherwise bound (other than provisions, if any, that are inconsistent with, or contrary to, provisions of the Sealed Air Settlement Agreement or the Fresenius Settlement Agreement), and, to the fullest extent permitted by applicable law, any such inconsistent or contrary provision shall be nugatory and of no force and effect and shall not dilute, restrict or impair the value or ownership rights of the shares issued to the Asbestos PI Trust or the Asbestos PD Trust thereunder. The issuance of stock to the Trusts' Representative, on behalf of the Asbestos PI Trust and the Asbestos PD Trust pursuant to the Share Issuance Agreement, shall not be subject to or trigger any "poison pill," shareholder or stockholder rights plan, or other anti-takeover or takeover defense plan, contract, agreement, instrument, or provision adopted or implemented by the Parent.

### 7.1.4   Warrants

The Board of Directors of Reorganized Parent shall take all actions necessary so that the Asbestos PI Trust shall not be an "Acquiring Person" within the meaning of the Amended and Restated Rights Agreement, dated as of March 25, 2008, by and between the Reorganized Parent and Mellon Investor Services, LLC, as rights agent (as amended from time to time, the "**Rights Agreement**"). The Reorganized Parent shall not lower the Beneficial Ownership (as defined in the Rights Agreement) percentage in the Rights Agreement's definition of "Acquiring Person" until such time as the Asbestos PI Trust no longer owns the Warrant (either because of its transfer or expiration) or any shares of Parent Common Stock issued to the Asbestos PI Trust upon exercise of the Warrant. No "poison pill", shareholder or stockholder rights plan, or other anti-takeover or takeover defense plan, contract, agreement, instrument, or provision adopted or implemented by the Reorganized Parent shall apply to or be triggered by the issuance of the Warrant to, or the purchase of, Parent Common Stock upon exercise of the Warrant by the Asbestos PI Trust.

If, prior to issuance of the Warrant to the Asbestos PI Trust, the Reorganized Parent shall issue or sell any shares of Parent Common Stock, other than Excluded Stock (defined below), or any rights to purchase or acquire, or securities convertible into or exchangeable for, shares of Parent Common Stock (including any (x) options (other than Excluded Options, as defined below), warrants or other rights (whether or not at the time exercisable) to purchase or acquire Parent Common Stock, other than Excluded Stock, (y) securities by their terms convertible into or exchangeable (whether at the time so convertible or exchangeable) for Parent Common Stock, other than Excluded Stock or (z) options (other than Excluded Options), warrants or rights to purchase such convertible or exchangeable securities), for no consideration or for a consideration per share that is less than the securities exchange average closing price per share of Parent Common Stock for the twenty consecutive trading days preceding (and not including) the last trading day immediately prior to the day of such issuance or sale (the "**Market Price**"), then and in each such case (a "**Trigger Issuance**") the per share exercise price of the Warrant (initially, $17.00) shall be reduced, immediately upon such Trigger Issuance, to the price determined by multiplying such exercise price by a fraction, (1) the numerator of which shall be (x) the number of shares of Parent Common Stock outstanding immediately prior to such issuance or sale plus (y) the number of shares of Parent Common Stock which the aggregate consideration received (or to be received) by the Reorganized Parent for the total number of such additional shares of Parent Common Stock so issued or sold (or issuable upon exercise, conversion or exchange) would purchase at the Market Price and (2) the denominator of which shall be the number of shares of Parent Common Stock outstanding (or issuable upon exercise, conversion or exchange) immediately after such Trigger Issuance. In the event of such an adjustment of such exercise price, the number of shares of Parent Common Stock issuable upon the exercise of the Warrant (initially, 10,000,000 shares of Parent Common Stock) shall be increased to a number obtained by dividing (1) the product of (x) the number of shares of Parent Common Stock issuable upon the exercise of the Warrant before such adjustment, and (y) the exercise price thereof in effect immediately prior to the Trigger Issuance by (2) the new exercise price determined in accordance with the immediately preceding sentence. Such adjustments shall be made whenever such shares of Common Stock or such rights, options (other than Excluded Options) or warrants or convertible securities are issued or sold . "**Excluded Stock**" means shares of Parent Common

Stock issued and sold in a registered firm commitment underwritten public offering pursuant to a registration statement declared effective in accordance with the Securities Act, or any successor statute thereto. Excluded Stock shall not include a private placement of shares, including one which is followed by a public offering thereof. "**Excluded Options**" means options to purchase shares of Parent Common Stock issued to directors, officers, employees and consultants of any Reorganized Debtor (i) pursuant to an option plan or arrangement approved by either the stockholders of Parent or Reorganized Parent or the Bankruptcy Court and (ii) with an exercise price equal to the average of the high and the low trading prices of Parent Common Stock on the New York Stock Exchange (or if Parent Common Stock is not traded on the New York Stock Exchange, on the principal stock exchange on which it trades) on the date of grant of the option.

At the time of issuance, the exercise price of, and number of shares issuable pursuant to, the Warrant shall reflect any adjustment made pursuant to the preceding paragraph.

## 7.2    THE ASBESTOS PI TRUST

### 7.2.1    Creation of the Asbestos PI Trust

Upon the entry of the Confirmation Order, effective as of the Effective Date, the Asbestos PI Trust shall be created pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan Documents. The Asbestos PI Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC.

The purpose of the Asbestos PI Trust shall be to, among other things: (i) assume the liabilities of the Debtors with respect to all Asbestos PI Claims; (ii) process, liquidate, pay and satisfy all Asbestos PI Claims in accordance, as applicable, with this Plan, the Asbestos PI Trust Agreement and the Asbestos PI TDP and in such a way that provides reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present and future Asbestos PI Claims (including Demands that involve similar claims) in substantially the same manner and to otherwise comply with Bankruptcy Code § 524(g)(2)(B)(i); (iii) preserve, hold, manage, and maximize the assets of the Asbestos PI Trust for use in paying and satisfying Asbestos PI Claims entitled to payment; (iv) qualify at all times as a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC; and (v) otherwise carry out the provisions of the Asbestos PI Trust Agreement and any other agreements into which the Asbestos PI Trustees have entered or will enter in connection with this Plan.

### 7.2.2    Funding of the Asbestos PI Trust

(a)    On the Effective Date, Grace-Conn or Parent shall transfer to the Asbestos PI Trust (i) the sum of $250 million in Cash that is part of the Asbestos PI Trust Assets, plus interest thereon from January 1, 2009 until (and including) the Effective Date at the same rate applicable to the Debtors' senior debt and (ii) an amount in Cash equal to the Asbestos PD Initial Payment. In addition to the foregoing, on the Effective Date, Grace-Conn or Parent shall transfer, or cause the transfer of, on behalf of the Reorganized Debtors and the Non-Debtor

Affiliates, all other Asbestos PI Trust Assets that are not otherwise identified, transferred, or assigned in this Section 7.2.2 and Section 7.2.4 hereof to the Asbestos PI Trust.

(b)    On the Effective Date, Cryovac, Inc. shall transfer the Cryovac Payment (reduced by the total aggregate amount of Cryovac, Inc.'s transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment) directly to the Asbestos PI Trust. Simultaneously with, and in exchange for such direct transfer and payment to the Asbestos PI Trust and Cryovac Inc.'s transfers to the Asbestos PD Trust described in Sections 7.3.2(a) and 7.3.2(b) of the Plan, the Plaintiffs shall deliver to Sealed Air: (i) the "Release" (as defined in the Sealed Air Settlement Agreement) duly executed by each of the Plaintiffs and the SA Debtors; (ii) a copy of the Plan, (iii) a copy of the Confirmation Order, (iv) a duly executed Stipulation of Dismissal With Prejudice of the Sealed Air Action in the form annexed as Exhibit 4 to the Sealed Air Settlement Agreement, denying any other recovery against the Sealed Air Indemnified Parties, and (v) the Registration Rights Agreement, in the form annexed as Exhibit 1 to the Sealed Air Settlement Agreement, with appropriate insertions therein, duly executed by the "Initial Holders" (as defined in the Sealed Air Settlement Agreement).

(c)    On the Effective Date, Fresenius shall transfer the Fresenius Payment (reduced by the total aggregate amount of Fresenius' transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment) to the Asbestos PI Trust.

(d)    (i)    On the Effective Date, the Insurance Contributors shall execute and deliver the Asbestos Insurance Transfer Agreement to the Asbestos PI Trust.

(ii)    All Asbestos Insurance Rights, and all claims and causes of action asserted or to be asserted in furtherance of or connection therewith, shall be preserved for the benefit of the Asbestos PI Trust, for prosecution either by the applicable Insurance Contributor or the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement. Upon execution and delivery of the Asbestos Insurance Transfer Agreement, all Asbestos Insurance Rights shall be irrevocably transferred to and vested in the Asbestos PI Trust in accordance with the Asbestos Insurance Transfer Agreement, without any further action by the Debtors, the other Insurance Contributors, the Asbestos PI Trust, or the Bankruptcy Court. Asbestos Insurance Rights shall be so vested free and clear of all Encumbrances, liens, security interests, and other Claims or causes of action, except as expressly provided in Section 7.15 of the Plan.

(iii)    Upon its execution and delivery, the Asbestos Insurance Transfer Agreement shall be valid, binding, and enforceable. However, if a court of competent jurisdiction determines the Asbestos Insurance Transfer Agreement to be invalid, non-binding, or unenforceable, in whole or in part, then each Insurance Contributor shall (1) upon request by the Asbestos PI Trust and at the reasonable expense of the Asbestos PI Trust, take all reasonable actions to pursue any of the Asbestos Insurance Rights for the benefit of, and to the extent requested by, the Asbestos PI Trust and (2) immediately transfer any amounts recovered under or on account of any of the Asbestos Insurance Rights to the Asbestos PI Trust; *provided, however,* that while any such amounts are held by or under the control of any Insurance Contributor, such amounts shall be held in trust for the benefit of the Asbestos PI Trust.

(iv)    On the Effective Date, the Asbestos PI Trust shall be the successor to all rights of the Debtors and Non-Debtor Affiliates under each Asbestos Insurance Reimbursement Agreement. The Asbestos PI Trust's payment of an Asbestos PI Claim under the PI TDP shall be deemed to constitute settlement and payment of such claim by or on behalf of the Debtors or Non-Debtor Affiliates within the meaning of, and in full compliance with, each Asbestos Insurance Reimbursement Agreement.

### 7.2.3    Transfer of Claims and Demands to the Asbestos PI Trust

On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party with respect to all Asbestos PI Claims shall be channeled to and assumed by the Asbestos PI Trust. This Section 7.2.3 is intended to further effect the Asbestos PI Channeling Injunction described in Section 8.2 of this Plan, and the discharge described in Section 8.1 of this Plan. This Section 7.2.3 is not intended to, and it shall not, serve as a waiver of any defense to any claim the Debtors, the Asbestos PI Trust, or any other Asbestos Protected Party would otherwise have.

### 7.2.4    Assignment and Enforcement of Asbestos PI Trust Causes of Action

On the Effective Date, by virtue of the confirmation of this Plan, without further notice, action, or deed, the Asbestos PI Trust Causes of Action shall be automatically transferred and assigned to, and indefeasibly vested in, the Asbestos PI Trust, and the Asbestos PI Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Asbestos PI Trust Causes of Action, with the exclusive right to enforce the Asbestos PI Trust Causes of Action against any Entity, and the proceeds of the recoveries of such Asbestos PI Trust Causes of Action shall be deposited in and shall become the property of the Asbestos PI Trust; *provided, however,* that nothing herein shall alter, amend, or modify the injunctions and/or releases provided under this Plan including the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and the Asbestos Insurance Entity Injunction.

### 7.2.5    Appointment and Termination of Asbestos PI Trustees

The three initial Asbestos PI Trustees of the Asbestos PI Trust shall be the persons identified in the Asbestos PI Trust Agreement. All successor Asbestos PI Trustees shall be appointed in accordance with the terms of the Asbestos PI Trust Agreement. Upon termination of the Asbestos PI Trust, the Asbestos PI Trustees' employment shall be deemed terminated and the Asbestos PI Trustees shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.2.6    Creation and Termination of the Asbestos PI TAC

The Asbestos PI Trust Advisory Committee shall be established pursuant to the Asbestos PI Trust Agreement. The Asbestos PI TAC shall have four members and shall have the functions, duties and rights provided in the Asbestos PI Trust Agreement. On or before the Confirmation Date, the initial members of the Asbestos PI TAC shall be selected by the Asbestos

PI Committee.  Upon termination of the Asbestos PI Trust, the Asbestos PI TAC shall be deemed dissolved and the Asbestos PI TAC shall be released and discharged of and from all further authority, duties, responsibilities  and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.2.7    Cooperation Agreement

On the Effective Date, the Reorganized Debtors and the Asbestos PI Trust shall enter into a cooperation agreement substantially in the form included as Exhibit 10 in the Exhibit Book.

### 7.2.8    Institution and Maintenance of Legal and other Proceedings

As of the Effective Date, without any further action of the Court or any Entity, the Asbestos PI Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos PI Trust, including the Asbestos PI Trust Causes of Action.

### 7.2.9    Authority of Asbestos PI Trust to Extend Asbestos PI Channeling Injunction to Asbestos Insurance Entities After the Effective Date

From and after the Effective Date, the Asbestos PI Trust may, at any time, in its sole and absolute discretion, move the District Court to extend the Asbestos PI Channeling Injunction to any Asbestos Insurance Entity, for good cause shown, after notice and a hearing (within the meaning of section 102(1) of the Bankruptcy Code).  Such motion shall be served in accordance with Section 11.12 of the Plan and upon the parties entitled to notice pursuant to applicable order(s) of the Court (including any such order(s) issued after the Effective Date), and shall disclose, to the extent necessary, the terms of any Asbestos Insurance Settlement Agreement with respect to such Asbestos Insurance Entity.

## 7.3    THE ASBESTOS PD TRUST

### 7.3.1    Creation of the Asbestos PD Trust

Upon the entry of the Confirmation Order, effective as of the Effective Date, the Asbestos PD Trust shall be created pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan Documents.  The Asbestos PD Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC.

The purpose of the Asbestos PD Trust shall be to, among other things, (i) assume the liabilities of the Debtors with respect to all Asbestos PD Claims, (ii) pay and satisfy all Allowed Asbestos PD Claims in Class 7A in accordance, as applicable, with this Plan, the Asbestos PD Trust Agreement, the PD Settlement Agreements, the Class 7A CMO, and Final Orders determining the Allowed Amount of such Asbestos PD Claims pursuant to the Class 7A CMO in such a way that provides reasonable assurance that the Asbestos PD Trust will value, and be in a financial position to pay, present and future Asbestos PD Claims in Class 7A (including

Demands, if any, that involve similar claims) in substantially the same manner and to otherwise comply with Bankruptcy Code § 524(g)(2)(B)(i); (iii) pay and satisfy all US ZAI PD Claims in Class 7B in accordance, as applicable, with this Plan, the Asbestos PD Trust Agreement and the ZAI TDP in such a way that provides reasonable assurance that the Asbestos PD Trust will value, and be in a financial position to pay, present and future US ZAI PD Claims in Class 7B (including Demands, if any, that involve similar claims) in substantially the same manner and to otherwise comply with Bankruptcy Code § 524(g)(2)(B)(i); (iv) preserve, hold, manage, and maximize the assets of the Asbestos PD Trust for use in paying and satisfying Asbestos PD Claims entitled to payment; (v) qualify at all times as a "qualified settlement fund" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC; and (vi) otherwise carry out the provisions of the Asbestos PD Trust Agreement, the ZAI TDP, and any other agreements into which the Asbestos PD Trustees have entered or will enter in connection with this Plan.

### 7.3.2    Funding of the Asbestos PD Trust

(a)    On the Effective Date, Cryovac, Inc. shall transfer directly to the Asbestos PD Trust its share of the amount of the Class 7A Initial Payment and Fresenius shall transfer directly to the Asbestos PD Trust its share of the amount of the Class 7A Initial Payment. The Class 7A Initial Payment shall remain segregated from (i) the Class 7B Initial Payment pursuant to the terms of the Asbestos PD Trust Agreement and (ii) any payments made to the Asbestos PD Trust on account of CDN ZAI PD Claims.

(b)    On the Effective Date, the Asbestos PD Trust shall assume, or shall be deemed to have assumed, the PD Settlement Agreements and shall immediately reserve and segregate from the Class 7A Initial Payment all amounts required to be paid upon the occurrence of the Effective Date pursuant to PD Settlement Agreements that require such payment, and shall provide for the payment of such amounts in the manner and at the time set forth in such PD Settlement Agreements.

(c)    On the Effective Date, Cryovac, Inc. shall transfer directly to the Asbestos PD Trust its share of the amount of the Class 7B Initial Payment and Fresenius shall transfer directly to the Asbestos PD Trust its share of the amount of the Class 7B Initial Payment. The Class 7B Initial Payment shall remain segregated from (i) the Class 7A Initial Payment pursuant to the terms of the Asbestos PD Trust Agreement and (ii) any payments made to the Asbestos PD Trust on account of CDN ZAI PD Claims.

(d)    On the Effective Date, Grace-Conn or Parent shall, on behalf of the Reorganized Debtors and the Non-Debtor Affiliates, transfer to the Asbestos PD Trust all funds as set forth in the CDN ZAI Minutes of Settlement. The Asbestos PD Trust shall immediately transfer the amounts set forth in the CDN ZAI Minutes of Settlement to the CDN ZAI PD Claims Fund to be used in the manner set forth in the CDN ZAI Minutes of Settlement. In no event shall the Asbestos PD Initial Payment (or any portion thereof) be transferred to the CDN ZAI PD Claims Fund.

(e)    After the Effective Date, Grace-Conn or Parent shall, on behalf of the Reorganized Debtors and the Non-Debtor Affiliates, transfer to the Asbestos PD Trust all funds as set forth in the Class 7A Asbestos PD Deferred Payment Agreement and the Class 7B Asbestos PD Deferred Payment Agreement.    Funds transferred pursuant to the Class 7A Asbestos PD Deferred Payment Agreement shall remain segregated from funds transferred pursuant to the Class 7B Asbestos PD Deferred Payment Agreement pursuant to the terms of the Asbestos PD Trust Agreement.

### 7.3.3    Transfer of Claims and Demands to the Asbestos PD Trust

On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party with respect to all Asbestos PD Claims shall be channeled to and assumed by the Asbestos PD Trust. This Section 7.3.3 is intended to further effect the Asbestos PD Channeling Injunction described in Section 8.3 of the Plan, and the discharge described in Section 8.1 of this Plan. This Section 7.3.3 is not intended to, and it shall not, serve as a waiver of any defense to any claim the Debtors, the Asbestos PD Trust or any other Asbestos Protected Party would otherwise have.

### 7.3.4    Assignment and Enforcement of Asbestos PD Trust Causes of Action

On the Effective Date, by virtue of the confirmation of this Plan, without further notice, action, or deed, the Asbestos PD Trust Causes of Action shall be automatically transferred and assigned to, and indefeasibly vested in, the Asbestos PD Trust, and the Asbestos PD Trust shall thereby become the estate representative pursuant to § 1123(b)(3)(B) of the Bankruptcy Code with respect to the Asbestos PD Trust Causes of Action, with the exclusive right to enforce the Asbestos PD Trust Causes of Action, against any Entity, except those related to Claims and Demands in Class 7A, which shall be enforced by the Reorganized Debtors on behalf of the Asbestos PD Trust, and the proceeds of the recoveries of such Asbestos PD Trust Causes of Action shall be deposited in and shall become the property of the Asbestos PD Trust; *provided, however*, that nothing herein shall alter, amend or modify the injunctions and/or releases provided under this Plan including the Asbestos PD Channeling Injunction, the Asbestos PI Channeling Injunction, the Successor Claims Injunction, and the Asbestos Insurance Entity Injunction.

### 7.3.5    Appointment and Termination of Asbestos PD Trustees

The initial Class 7A Trustee (as defined in the Asbestos PD Trust Agreement) of the Asbestos PD Trust shall be the person identified in the Asbestos PD Trust Agreement, and the initial Class 7B Trustee (as defined in the Asbestos PD Trust Agreement) of the Asbestos PD Trust shall be the person identified in the Asbestos PD Trust Agreement. Their functions are set forth more fully in the Asbestos PD Trust Agreement. All successor Asbestos PD Trustees shall be appointed in accordance with the terms of the Asbestos PD Trust Agreement.    Upon termination of the Asbestos PD Trust, the Asbestos PD Trustees' employment shall be deemed terminated and the Asbestos PD Trustees shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.3.6    Creation and Termination of the Zonolite Attic Insulation TAC

The Zonolite Attic Insulation Trust Advisory Committee or ZTAC shall be established pursuant to the Asbestos PD Trust Agreement.  The ZTAC shall have three members that will have the functions, duties and rights provided in the Asbestos PD Trust Agreement, and ZAI TDP.  Initial members of the ZTAC shall be those three individuals named in the Asbestos PD Trust Agreement and the ZAI TDP.  Upon termination of the Asbestos PD Trust, the ZTAC shall be deemed dissolved and the ZTAC shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

## 7.4    PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN

### 7.4.1    Asbestos PI Trust Payments, Asbestos PD Trust Payments and Plan Distributions

Payments to Holders of Asbestos PI Claims shall be made by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.  Payments to Holders of Asbestos PD Claims shall be made by the Asbestos PD Trust as and when due in accordance with the Asbestos PD Trust Agreement, PD Settlement Agreements, the Class 7A CMO, any Final Orders of the Bankruptcy Court allowing Claims in Class 7A, and the ZAI TDP for Claims in Class 7B.  Payments to Holders of CDN ZAI PD Claims shall be made pursuant to the CDN ZAI Minutes of Settlement by the CDN ZAI PD Claims Fund.  All other Distributions or payments required or permitted to be made under this Plan (other than to Professionals) shall be made by the Reorganized Debtors or, in their discretion, a disbursing agent employed by the Reorganized Debtors, in accordance with the treatment specified for each such Holder as specified herein (unless otherwise ordered by the Bankruptcy Court).  Distributions to be made on the Effective Date, the Initial Tax Distribution Date or the Quarterly Tax Distribution Date shall be deemed actually made on such distribution date if made either (i) on the Effective Date, the Initial Tax Distribution Date or the Quarterly Tax Distribution Date or (ii) as soon as practicable thereafter, but not more than 10 days thereafter; *provided, however,* that Distributions and transfers to the Asbestos PI Trust of the Asbestos PI Trust Assets shall be made on the Effective Date, and Distributions and transfers to the Asbestos PD Trust of the Asbestos PD Trust Assets and the funds set forth in the CDN ZAI Minutes of Settlement payable to the CDN ZAI PD Claims Fund shall be made on the Effective Date.  Distributions to be made on the date that a Plan Claim becomes an Allowed Claim, rather than on the Effective Date, shall be deemed actually made on such date if made on or before the Post-Effective Distribution Date with respect to such Claim.  Notwithstanding that Distributions to Allowed Claims may be deemed made on the date that a Plan Claim becomes an Allowed Claim as per the preceding sentence, nothing in this Section shall modify the calculation of post-petition interest through the date of payment for General Unsecured Claims that become Allowed General Unsecured Claims after the Effective Date as set forth in Section 3.1.9(b) of the Plan.  Except as otherwise provided herein, Professionals shall be paid pursuant to orders of the Bankruptcy Court.

69

Under no circumstances shall any fractional shares of Sealed Air Common Stock be transferred pursuant to the Asbestos PI Trust Agreement such that any Entity shall be the transferee of less than one thousand shares of Sealed Air Common Stock, *provided, however*, that in no event shall the Asbestos PI Trust incur any costs or expenses associated with such one thousand share limitation.

### 7.4.2   Timing of Plan Distributions

Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without the accrual of any additional interest (if interest is accruing pursuant to this Plan), on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

## 7.5   DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS.

### 7.5.1   Delivery by the Reorganized Debtors of Distributions in General

Payments by the Asbestos PI Trust to Holders of Asbestos PI Claims shall be made in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP. Payments to Holders of Asbestos PD Claims shall be made by the Asbestos PD Trust as and when due in accordance with the Asbestos PD Trust Agreement, PD Settlement Agreements, any Final Orders of the Bankruptcy Court allowing Claims in Class 7A, and the ZAI TDP for Claims in Class 7B. Payments to Holders of CDN ZAI PD Claims shall be made by the CDN ZAI PD Claims Fund in accordance with the procedures set forth in the CDN ZAI Minutes of Settlement. All Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Allowed Claim as set forth on the Schedules, unless superseded by a new address set forth (i) on a proof of claim Filed by a Holder of an Allowed Claim, (ii) in another writing notifying the Reorganized Debtors of a change of address prior to the date of Distribution, or (iii) in a request for payment of an Administrative Expense Claim.

### 7.5.2   Undeliverable Distributions by the Reorganized Debtors

Any Cash, assets, and other properties to be distributed by the Reorganized Debtors under this Plan to Holders of Plan Claims, other than Asbestos PI Claims and Asbestos PD Claims, that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto one year after Distribution shall become vested in, and shall be transferred and delivered to, the Reorganized Debtors. In such event, such Entity's Plan Claim shall no longer be deemed to be Allowed or payable by the Reorganized Debtors, and such Entity shall be deemed to have waived its rights to such payments or Distributions under this Plan pursuant to Bankruptcy Code § 1143, shall have no further Claim in respect of such Distribution, and shall not participate in any further Distributions under this Plan with respect to such Claim.

**7.6    PAYMENTS UNDER THIS PLAN**

### 7.6.1    Manner of Cash Payments under this Plan

Unless the Entity receiving a Distribution or payment agrees otherwise, any such Distribution or payment to be made by the Reorganized Debtors, the Asbestos PI Trust, or the Asbestos PD Trust in Cash shall be made, at the election of the Reorganized Debtors, the Asbestos PI Trust, or the Asbestos PD Trust as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank; *provided, however,* that Distributions of Cash to the Asbestos PI Trust and the Asbestos PD Trust shall be by wire transfer.

### 7.6.2    Fractional Payments under this Plan

Notwithstanding any other provision of this Plan, payments of fractions of dollars or of fractional shares shall not be made. Whenever, under this Plan, any payment of a fraction of a dollar or a fractional share of Parent Common Stock would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar or nearest whole share of Parent Common Stock, as applicable, (up or down), with half dollars or half shares being rounded up.

**7.7    CONDITIONS TO OCCURRENCE OF THE CONFIRMATION DATE**

The Court shall have made the following findings of fact, conclusions of law, orders, and/or decrees among others, substantially to the effect as follows, in connection with the confirmation of this Plan, each of which shall be expressly set forth in the Confirmation Order:

(a)    The Plan satisfies all applicable sections of the Bankruptcy Code, including Bankruptcy Code § 524(g);

(b)    Claimants in Classes 6, 7 (including both sub-classes 7A and 7B), and 8 have voted to accept the Plan in the requisite numbers and amounts required by Bankruptcy Code §§ 524(g), 1126, and 1129;

(c)    As of the Petition Date, the Debtors have been named as defendants in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(d)    Effective as of the Effective Date, the Asbestos PI Trust shall be created and the Asbestos PD Trust shall be created pursuant to Bankruptcy Code § 524(g) and in accordance with the Plan Documents;

(e)    The Asbestos PI Trust and the Asbestos PD Trust shall be "qualified settlement funds" for federal income tax purposes within the meaning of the treasury regulations issued pursuant to section 468B of the IRC and shall be subject to the continuing jurisdiction of the Bankruptcy Court;

(f)    On the Effective Date, the Asbestos PI Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims, the Asbestos PD Trust shall assume the liabilities of the Debtors with respect to all Asbestos PD Claims, and the CDN ZAI PD Claims Fund contemplated by the CDN ZAI Minutes of Settlement shall assume the liabilities of the Debtors with respect to all CDN ZAI PD Claims;

(g)    The Asbestos PI Trust and the Asbestos PD Trust are to be funded in part by securities of the Reorganized Parent and by the obligations of the Reorganized Parent to make future payments, including dividends;

(h)    The Asbestos PI Trust and the Asbestos PD Trust are to own, or by the exercise of rights granted under the Plan would be entitled to own if specified contingencies occur, a majority of the voting shares of the Reorganized Parent;

(i)    The Asbestos PI Trust is to use the Asbestos PI Trust Assets to pay Asbestos PI Claims (including Demands) and Asbestos PI Trust Expenses, and the Asbestos PD Trust is to use the Asbestos PD Trust Assets to pay Asbestos PD Claims (including Demands, if any) and Asbestos PD Trust Expenses, and the CDN ZAI PD Claims Fund is to use the funds identified in the CDN ZAI Minutes of Settlement to pay CDN ZAI PD Claims and the expenses outlined in the CDN ZAI Minutes of Settlement;

(j)    The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PI Claims, which Demands are addressed by the Asbestos PI Channeling Injunction, and the Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PD Claims, which Demands, if any, are addressed by the Asbestos PD Channeling Injunction;

(k)    The actual amounts, numbers, and timing of such future Demands cannot be determined;

(l)    Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with the Asbestos PI Claims, the Asbestos PD Claims, and the CDN ZAI PD Claims;

(m)    The terms of the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and the Asbestos Insurance Entity Injunction, and any provisions barring actions against third parties, are set out in the Plan and the Disclosure Statement, and each of the Plan and the Disclosure Statement adequately describes such injunctions and provisions (and the acts and entities to which they apply)

72

in specific and conspicuous language in accordance with the requirements of Bankruptcy Rule 3016(c));

(n)     Pursuant to Court orders or otherwise, the Asbestos PI Trust, the Asbestos PD Trust, and CDN ZAI PD Claims Fund shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of (1) Asbestos PI Claims (including Demands) in the case of the Asbestos PI Trust, (2) Asbestos PD Claims (including Demands, if any) in the case of the Asbestos PD Trust, or (3) CDN ZAI PD Claims (including Demands, if any) in the case of the CDN ZAI PD Claims Fund, or other comparable mechanisms that provide reasonable assurance that the Asbestos PI Trust shall value, and be in a financial position to pay, Asbestos PI Claims (including Demands that involve similar claims) in substantially the same manner, that the Asbestos PD Trust shall value, and be in a financial position to pay Asbestos PD Claims (including Demands, if any, that involve similar claims) in substantially the same manner, and that the CDN ZAI PD Claims Fund shall value, and be in a financial position to pay CDN ZAI PD Claims (including Demands, if any, that involve similar claims) in substantially the same manner;

(o)     The Asbestos PI FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos PI Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands of the kind that are addressed in the Asbestos PI Channeling Injunction and transferred to the Asbestos PI Trust;

(p)     The Asbestos PD FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos PD Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands, if any, of the kind that are addressed in the Asbestos PD Channeling Injunction and transferred to the Asbestos PD Trust;

(q)     CCAA Representative Counsel has been appointed by the Canadian Court as part of proceedings leading to the issuance of the Asbestos PD Channeling Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands, if any, of the kind that are addressed in the Asbestos PD Channeling Injunction and transferred to the CDN ZAI PD Claims Fund;

(r)     The Court has jurisdiction over each of the Claims, SA Claims, Grace-Related Claims, and Demands that is subject to any of (i) the Asbestos PI Channeling Injunction described in Section 8.2 of the Plan, (ii) the Asbestos PD Channeling Injunction described in Section 8.3 of the Plan,

73

(iii) the Successor Claims Injunction described in Section 8.5 of the Plan, and (iv) the releases described in the Plan;

(s)    In light of the benefits provided, or to be provided, to the Asbestos PI Trust and the Asbestos PD Trust by, or on behalf of, each Asbestos Protected Party (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), (i) the Asbestos PI Channeling Injunction is fair and equitable (including with respect to the Entities that might subsequently assert Demands against any Asbestos Protected Party) and is supported by reasonable consideration, (ii) the Asbestos PD Channeling Injunction is fair and equitable (including with respect to the Entities that might subsequently assert Demands, if any, against any Asbestos Protected Party) and is supported by reasonable consideration, (iii) the Successor Claims Injunction is fair and equitable and is supported by reasonable consideration, and (iv) the releases in favor of the Asbestos Protected Parties described in the Plan are fair and equitable and are supported by reasonable consideration;

(t)    The Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, the Asbestos Insurance Entity Injunction, and the releases in favor of the Asbestos Protected Parties described in the Plan are to be implemented and granted in connection with the Plan and the Plan Documents;

(u)    The Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and the releases in favor of the Asbestos Protected Parties described in the Plan (i) are essential to the Debtors' reorganization efforts and the feasibility of the Plan, (ii) provide necessary funding to the Plan that otherwise would be unavailable absent the injunctions and releases, (iii) are necessary to induce the Asbestos Protected Parties (including Sealed Air and Fresenius) to enter into the settlements and agreements described in the Plan and to otherwise settle their disputes, and (iv) are necessary to resolve finally all claims of the Debtors, the Non-Debtor Affiliates, and the Debtors' creditors against the other Asbestos Protected Parties (including the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties);

(v)    An identity of interests exists among the Debtors and the Asbestos Protected Parties such that an Asbestos PI Claim (including a Successor Claim based upon an Asbestos PI Claim and/or a Successor Claim based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction) asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity (contractual or otherwise) and/or contribution; and an Asbestos PD Claim or CDN ZAI PD Claim (including a Successor Claim based upon an Asbestos PD Claim or CDN ZAI PD Claim and/or a Successor Claim based on or

arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction) asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity (contractual or otherwise) and/or contribution;

(w)     The Sealed Air Settlement Agreement is essential and integral to the Plan, and the payment of the Cryovac Payment to the Asbestos PI Trust and the Asbestos PD Trust in accordance with the Sealed Air Settlement Agreement and the terms of the Plan, together with the other Asbestos PI Trust Assets and the Asbestos PD Trust Assets to be transferred to the Asbestos PI Trust and the Asbestos PD Trust, respectively, pursuant to the Plan, constitute both (i) substantial assets of the Plan and the reorganization, and (ii) a fair, reasonable, and equitable settlement of all claims, potential claims, and Demands against the Asbestos Protected Parties (including, with respect to the Sealed Air Indemnified Parties, all Asbestos-Related Claims and any other claims, potential claims, and Demands for which the Sealed Air Settlement Agreement contemplates a release or injunction in favor of the Sealed Air Indemnified Parties) that are subject to the injunctions and releases described in the Plan, and the only unsatisfied conditions precedent to payment of the Cryovac Payment are the satisfaction or waiver of the conditions to the Effective Date in accordance with Section 7.8 of this Plan;

(x)     The Fresenius Settlement Agreement is essential and integral to the Plan, and the payment of the Fresenius Payment to the Asbestos PI Trust and the Asbestos PD Trust in accordance with the Plan, together with the other Asbestos PI Trust Assets to be transferred to the Asbestos PI Trust pursuant to the Plan, constitute both (i) substantial assets of the Plan and the reorganization, and (ii) a fair, reasonable, and equitable settlement of all claims, potential claims, and Demands against the Asbestos Protected Parties (including, with respect to the Fresenius Indemnified Parties, the Grace-Related Claims, all Asbestos-Related Claims and Demands related thereto and any other claims, potential claims, and Demands for which the Fresenius Settlement Agreement contemplates a release or injunction in favor of the Fresenius Indemnified Parties) that are subject to the injunctions and releases described in the Plan, and the only unsatisfied conditions to payment of the Fresenius Payment are the satisfaction or waiver of the conditions to the Effective Date in accordance with Section 7.8 of this Plan;

(y)     The SA Debtors, the Plaintiffs, and the SA Non-Debtor Affiliates understand and agree, and the Court so finds, that Sealed Air has entered into the Sealed Air Settlement Agreement in order to settle, release, extinguish, and terminate fully, finally, and forever any and all further controversy respecting any and all Asbestos-Related Claims and any and all Demands related thereto against the Sealed Air Indemnified Parties.

The SA Debtors, the Plaintiffs, and the SA Non-Debtor Affiliates have acknowledged and agreed that this provision is an essential and material term of the Sealed Air Settlement Agreement and the compromise settlement leading to the Sealed Air Settlement Agreement, and that, without such provision, neither Sealed Air Corporation nor Cryovac, Inc. would have executed the Sealed Air Settlement Agreement and the compromise settlement would not have been accomplished;

(z) The Debtors, the Plaintiffs, and the Non-Debtor Affiliates understand and agree, and the Court so finds, that Fresenius has entered into the Fresenius Settlement Agreement in order to settle, release, extinguish, and terminate fully, finally, and forever any and all further controversy respecting any and all Asbestos-Related Claims against the Fresenius Indemnified Parties. The Debtors, the Plaintiffs, and the Non-Debtor Affiliates have acknowledged and agreed that this provision is an essential and material term of the Fresenius Settlement Agreement, and that, without such provision, Fresenius would not have executed the Fresenius Settlement Agreement and the compromise settlement would not have been accomplished;

(aa) The settlements, compromises, releases, and injunctions in favor of the Asbestos Protected Parties described in the Plan (including those described in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement) are approved in all respects;

(bb) In approving the settlements, compromises, releases, and injunctions with respect to the Asbestos Protected Parties (including the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, and the releases and injunctions in favor of the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties), the Court has considered, among other things: (i) the nature of the claims asserted or potentially asserted by the Debtors, the Non-Debtor Affiliates, the Plaintiffs (on behalf of the Debtors' creditors, stakeholders, and estates), and/or the Debtors' creditors against the Asbestos Protected Parties, and the claims asserted or potentially assertable by the Asbestos Protected Parties against the Debtors and the Non-Debtor Affiliates, (ii) the balance of the likelihood of success of claims which might be asserted by the Debtors or other claimants against the Asbestos Protected Parties against the likelihood of success of the defenses or counterclaims possessed by the Asbestos Protected Parties, (iii) the complexity, cost, and delay of litigation that would result in the absence of these settlements, compromises, releases, and injunctions, (iv) the lack of objections by, or the overruling of objections of any creditor or party-in-interest to the settlements, compromises, releases and injunctions, (v) that the Asbestos PI Claims will be channeled to the Asbestos PI Trust rather than extinguished, (vi) that the Estate Parties and the Asbestos PI Trust will receive substantial consideration from the Asbestos Protected Parties described in the Plan,

(vii) that the Asbestos PD Claims will be channeled to the Asbestos PD Trust rather than extinguished, and the CDN ZAI PD Claims will be channeled to the CDN ZAI PD Claims Fund rather than extinguished, (viii) that the Estate Parties and the Asbestos PD Trust will receive substantial consideration from or on behalf of the Asbestos Protected Parties described in the Plan, (ix) that the Asbestos Protected Parties that will benefit from the releases and injunctions share an identity of interest with the Debtors, (x) that the enjoined claims against the Asbestos Protected Parties would otherwise indirectly impact the Debtors' reorganization by way of indemnity or contribution, and (xi) the Plan and the settlements, compromises, releases, and injunctions described in the Plan are the product of extensive arms' length negotiations among the Debtors, the Asbestos PI Committee, the Asbestos PI FCR, the Asbestos PD FCR, and the Asbestos Protected Parties, among others;

(cc)     As of the Effective Date, the Reorganized Debtors will have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities, including any and all indemnification obligations to the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties with respect to present and future Asbestos-Related Claims and Demands related thereto, SA Indemnified Taxes, Fresenius Indemnified Taxes, and all other obligations set forth in the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement;

(dd)     Upon the transfer of the Sealed Air Common Stock to the Asbestos PI Trust, the Asbestos PI Trustees shall represent and warrant to and agree with (on behalf of the Asbestos PI Trust) Sealed Air, that the Asbestos PI Trust is acquiring the Sealed Air Common Stock for its own account for investment and not with a view toward distribution in a manner which would violate the Securities Act and the Asbestos PI Trust and its transferees will comply with all filing and other reporting obligations under all applicable laws which shall be applicable to such Asbestos PI Trust with respect to the Sealed Air Common Stock;

(ee)     On or before the Effective Date, (i) the SA Debtors, the Asbestos PD Committee, and the Asbestos PI Committee shall have executed and delivered the "Release" (as defined in the Sealed Air Settlement Agreement), (ii) the "Government Plaintiff" (as defined in the Sealed Air Settlement Agreement) shall have executed and delivered the "Government Release" (as defined in the Sealed Air Settlement Agreement), and (iii) the Asbestos PI Committee and the Asbestos PD Committee shall have delivered the "Fresenius Release" (as defined in the Sealed Air Settlement Agreement), all as provided for in the Sealed Air Settlement Agreement.  In addition, in consideration for the Cryovac Payment, (i) each of the SA Non-Debtor Affiliates shall irrevocably release, acquit, and forever discharge the Sealed Air Indemnified Parties from any and all (A) present and future Asbestos-Related Claims and

Demands relating thereto and (B) present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction that have accrued or been asserted or that hereafter might accrue or be asserted against the Sealed Air Indemnified Parties and (ii) each SA Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Sealed Air Indemnified Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other Entity, any and all present and future Asbestos-Related Claims and/or Demands relating thereto, and any and all present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction;

(ff)    The Asbestos Protected Parties shall receive the full benefit of the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction under Bankruptcy Code § 524(g) and the Successor Claims Injunction under Bankruptcy Code § 105(a), which Asbestos PI Channeling Injunction, Asbestos PD Channeling Injunction, and Successor Claims Injunction (1) shall be in form and substance reasonably acceptable to Sealed Air Corporation, Cryovac Inc., and Fresenius, and (2) as applicable, include provisions enjoining any and all Entities from taking any and all legal or other actions (including the continued prosecution of pending "Actions" or the commencement of future "Actions" as such term is used in paragraph II(c)(vi) of the Sealed Air Settlement Agreement) or making any Demand for the purpose of, directly or indirectly, claiming, collecting, recovering, or receiving any payment, recovery, or any other relief whatsoever from any and all of the Asbestos Protected Parties with respect to any and all Asbestos PI Claims, Asbestos PD Claims, CDN ZAI PD Claims, and/or Successor Claims based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction or the Fresenius Transaction;

(gg)    Each of the SA Debtors and the Plaintiffs have acknowledged and agreed that the Sealed Air Common Stock to be transferred to the Asbestos PI Trust has not been and, upon delivery of such Sealed Air Common Stock to the Asbestos PI Trust, shall not be registered under the Securities Act and that the certificates for such Sealed Air Common Stock shall bear a legend to that effect. Each of the SA Debtors and the Plaintiffs understand and have acknowledged that any transfer by Cryovac, Inc. of Sealed Air Common Stock to the Asbestos PI Trust is being made pursuant to an exemption from registration contained in the Securities Act based in part upon the foregoing representation and the representations contained in the Sealed Air Settlement Agreement;

(hh)    The SA Debtors shall, jointly and severally, at their sole expense, indemnify, defend, and hold harmless the Sealed Air Indemnified Parties

from and against (1) any and all present and future Asbestos-Related Claims and Demands related thereto and all SA Indemnified Taxes, (2) any and all losses costs, and expenses incurred as a result of any breach of any of the SA Debtors' or SA Non-Debtor Affiliates' obligations, covenants, and agreements set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtors or SA Non-Debtor Affiliates set forth in the Plan or Confirmation Order, (3) if any SA Non-Debtor Affiliate has not executed and delivered a "Release" (as defined in the Sealed Air Settlement Agreement), any and all Asbestos-Related Claims and Demands related thereto based on, arising out of, or attributable to, directly or indirectly, in whole or in part, such SA Non-Debtor Affiliate and (4) any and all attorneys' fees or costs and expenses attributable to any "SA Indemnity Claim" (as defined below), provided, however, that in each case such indemnification shall not apply to "Excluded Fees" (as defined in the Sealed Air Settlement Agreement) such indemnity obligations, collectively, the "SA Debtors' Indemnity Obligation"; and any and all SA Claims, SA Debts, or SA Damages that could be asserted by any of the Sealed Air Indemnified Parties under the SA Debtors' Indemnity Obligation, the "SA Indemnity Claims"), and provided, further, that nothing in the Sealed Air Settlement Agreement shall adversely affect any rights of any Entity to file and pursue, or object to, a proof of claim for "Excluded Fees" (as defined in the Sealed Air Settlement Agreement) in the Chapter 11 Cases;

(ii)     Each SA Debtor shall execute and deliver an indemnity agreement in favor of the Sealed Air Indemnified Parties in the form annexed as Exhibit 6 to the Sealed Air Settlement Agreement;

(jj)     The SA Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall not be discharged, expunged, estimated, or otherwise adversely affected in the Chapter 11 Cases or by the confirmation of the Plan;

(kk)     The SA Debtors' Indemnity Obligation (and the obligations, covenants, and agreements of each of the SA Debtors and SA Non-Debtor Affiliates set forth or referred to in the Sealed Air Settlement Agreement, including any such obligation, covenant, or agreement of any SA Debtor or SA Non-Debtor Affiliate set forth in the Plan or Confirmation Order) shall continue unaffected as a post-confirmation obligation of each of the Reorganized Debtors;

(ll)     The Debtors, the Asbestos PI Committee, the Asbestos PI FCR, the Asbestos PI TAC, and the Asbestos PI Trustees have (i) promptly

provided to Cryovac, Inc. and Fresenius all "Material Drafts" (as defined in the Sealed Air Settlement Agreement) of the Asbestos PI Trust Agreement and each related "Trust Document" (as defined in the Sealed Air Settlement Agreement) (but excluding or redacting drafts of the Asbestos PI TDP), and (ii) incorporated promptly (if it was the party drafting such document), or if otherwise, urged the party drafting such document promptly to incorporate, into any such document each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi) paragraph VI(g), clauses (i)(A) through (D), and paragraph VI(c) of the Sealed Air Settlement Agreement that were reasonably requested by Cryovac, Inc. or Fresenius;

(mm)   The Debtors, the Asbestos PD Committee, and the Asbestos PD FCR have (i) promptly provided to Cryovac, Inc. and Fresenius all "Material Drafts" (as defined in the Sealed Air Settlement Agreement) of the Asbestos PD Trust Agreement and each related "Trust Document" (as defined in the Sealed Air Settlement Agreement) (but excluding or redacting drafts of the ZAI TDP), and (ii) incorporated promptly (if it was the party drafting such document), or if otherwise, urged the party drafting such document promptly to incorporate, into any such document each provision with respect to the subject matter set forth or referred to in paragraphs II(c)(ix), (x), and (xi) paragraph VI(g), clauses (i)(A) through (D), and paragraph VI(c) of the Sealed Air Settlement Agreement that were reasonably requested by Cryovac, Inc. or Fresenius;

(nn)   SA Debtors and SA Non-Debtor Affiliates shall take all actions required or requested by Sealed Air as contemplated in the Sealed Air Settlement Agreement and shall be prohibited from taking any actions prohibited by Sealed Air as provided by the Sealed Air Settlement Agreement with respect to tax matters, including those set forth in Annex I hereto and those set forth in paragraphs II(c)(x), IV, and VI of the Sealed Air Settlement Agreement and those provisions of the Sealed Air Settlement Agreement are incorporated herein as if fully set forth herein and shall likewise be incorporated into the Confirmation Order as if fully set forth therein;

(oo)   The Plaintiffs, Asbestos PI Trust and Asbestos PD Trust shall take all actions required or requested by Sealed Air as provided by the Sealed Air Settlement Agreement and shall be prohibited from taking any actions prohibited by Sealed Air as contemplated in the Sealed Air Settlement Agreement with respect to tax matters, including those set forth in Annex II hereto and those set forth in paragraphs II(c)(ix), II(c)(x) and II(c)(xi) of the Sealed Air Settlement Agreement and those provisions of the Sealed Air Settlement Agreement are incorporated herein as if fully set forth and shall likewise be incorporated into the Confirmation Order as if fully set forth therein;

(pp)    Each of the SA Debtors acknowledge and agree that (i) to the extent that any SA Debtor is required, pursuant to generally accepted accounting principles, to accrue a liability for asbestos which liabilities are satisfied by Cryovac, Inc. by a transfer made by Cryovac, Inc. directly to the Asbestos PI Trust or Asbestos PD Trust pursuant to this Plan or the Confirmation Order and such SA Debtor is required pursuant to generally accepted accounting principles to reverse such accrual, to the extent that there is more than one methodology under generally accepted accounting principles pursuant to which the SA Debtors are allowed to reverse any such accrual, such SA Debtor shall adopt the methodology, if any, not inconsistent with the provisions of paragraphs VI(b) and VI(g) of the Sealed Air Settlement Agreement, (ii) any payment or transfer by Cryovac, Inc. directly to the Asbestos PI Trust or Asbestos PD Trust shall not be treated, for financial accounting purposes, as resulting in an expense or deduction of any SA Debtor or SA Non-Debtor Affiliate and (iii) to the extent that any payment or transfer by Cryovac, Inc. directly to the Asbestos PI Trust or Asbestos PD Trust results, for financial accounting purposes, in income to any SA Debtor, the SA Debtors shall treat such income as income from the cancellation of indebtedness or liabilities of the SA Debtors;

(qq)    The Debtors and Estate Parties shall take all actions required or requested by Fresenius as contemplated in the Fresenius Settlement Agreement and be prohibited from taking any actions prohibited by Fresenius as contemplated in the Fresenius Settlement Agreement with respect to tax matters, including those outlined in Article III of the Fresenius Settlement Agreement and those provisions of the Fresenius Settlement Agreement are incorporated herein as if fully set forth and shall likewise be incorporated into the Confirmation Order as if fully set forth therein;

(rr)    The 1998 Tax Sharing Agreement shall be an assumed agreement of each of the SA Debtors (including Grace New York and Grace-Conn) pursuant to section 365 of the Bankruptcy Code, and nothing contained in or contemplated by the Sealed Air Settlement Agreement, the Plan, or the Confirmation Order shall adversely affect the rights of the Debtors, Sealed Air Corporation or any of their respective Affiliates under the 1998 Tax Sharing Agreement;

(ss)    Upon confirmation, each of the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement and the Fresenius Settlement Order shall be in full force and effect;

(tt)    Subject to Section 7.7(uu) below, the duties and obligations of the Asbestos Insurance Entities under the Asbestos Insurance Policies, Asbestos Insurance Settlement Agreements, Asbestos In-Place Insurance Coverage, and Asbestos Insurance Reimbursement Agreements are not diminished, reduced or eliminated by (1) the discharge of the obligations

and liabilities of the Debtors and the Reorganized Debtors for and in respect of all Asbestos PI Claims or (2) the assumption by the Asbestos PI Trust of responsibility and liability for all Asbestos PI Claims;

(uu)  As of the Effective Date, the Asbestos Insurance Transfer Agreement shall be a valid and binding obligation of each the parties thereto, shall be in full force and effect and shall be valid and enforceable in accordance with its terms, in each case notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy, Asbestos Insurance Settlement Agreement, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement, or under applicable non-bankruptcy law;

(vv)  As of the Effective Date, each of the Asbestos PI Deferred Payment Agreement, the Class 7A Asbestos PD Deferred Payment Agreement, the Class 7B Asbestos PD Deferred Payment Agreement, the Share Issuance Agreement, the Grace PI Guaranty, the Grace PD Guarantee Agreement for Class 7A, the Grace PD Guarantee Agreement for Class 7B, the Plan Registration Rights Agreement, the Asbestos PI/PD Inter-Creditor Agreement, the Warrant, and the Warrant Agreement shall be a valid and binding obligation of each of the parties thereto and shall be in full force and effect and enforceable in accordance with its terms;

(ww)  All Asbestos PI Claims shall be resolved by and channeled to the Asbestos PI Trust, all Asbestos PD Claims shall be resolved by and channeled to the Asbestos PD Trust, and all CDN ZAI PD Claims shall be resolved by and channeled to the CDN ZAI PD Claims Fund in the manner set forth in the CDN ZAI Minutes of Settlement;

(xx)  The Court shall have entered a Final Order allowing claims for post-petition interest on account of the General Unsecured Claims arising from the Pre-petition Credit Facilities in amounts that are not in excess of the rates set forth in Section 3.1.9(b) of this Plan;

(yy)  The Canadian Settlement Approval Order shall have been entered; and

(zz)  As of the Effective Date, pursuant to Section 3.1(a) of the Asbestos PD Trust Agreement, the Class 7B Trustee (as defined in the Asbestos PD Trust Agreement) shall keep segregated the ZAI Trust Assets (as defined in the Asbestos PD Trust Agreement) from the other Asbestos PD Trust Assets at all times, and no non-US ZAI PD Claim or liability of any kind shall ever be satisfied, either voluntarily or involuntarily, with ZAI Trust Assets.

The Confirmation Order shall be in form and substance acceptable to (a) each of the Plan Proponents, (b) with respect to any and all findings of fact, conclusions of law, orders, decrees, provisions, and terms required to be included in the Confirmation Order by, or relating to, the

Sealed Air Settlement Agreement, Sealed Air (*provided, however*, that any specific findings, conclusions, orders, decrees, provisions, and terms required to be included in the Confirmation Order by the Sealed Air Settlement Agreement shall be included in the Confirmation Order as they appear in the Sealed Air Settlement Agreement) and (c) with respect to any and all findings of fact, conclusions of law, orders, decrees, provisions, and terms required to be included in the Confirmation Order by, or relating to, the Fresenius Settlement Agreement, Fresenius (*provided, however*, that any specific findings, conclusions, orders, decrees, provisions, and terms required to be included in the Confirmation Order by the Fresenius Settlement Agreement shall be included in the Confirmation Order as they appear in the Fresenius Settlement Agreement). This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived by each of the Plan Proponents with the consent of each of Sealed Air Corporation, Cryovac, Inc., and Fresenius, with the exception of the following: (1) Sections 7.7(w) and (nn) shall be waiveable by each of the Plan Proponents with the consent of each of Sealed Air Corporation and Cryovac, Inc., and without the consent of Fresenius; (2) Sections 7.7(x) and (qq) shall be waiveable by each of the Plan Proponents with the consent of Fresenius and without the consent of Sealed Air; (3) Sections 7.7(tt), (uu), and (vv) shall be waiveable by each of the Plan Proponents without the consent of Sealed Air and Fresenius, and (4) Section 7.7(xx) shall be waiveable only by each of the Debtors and the Equity Committee without the consent of the other Plan Proponents, Sealed Air, and Fresenius.

## 7.8    CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

The "effective date of the plan," as used in Bankruptcy Code § 1129, shall not occur, and this Plan shall be of no force and effect, until the Effective Date. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)    The Court shall have entered the Confirmation Order granting the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, and the Asbestos Insurance Entity Injunction to take effect as of the Effective Date, and the Confirmation Order shall have become a Final Order and shall have been a Final Order for a minimum of ten Business Days;

(b)    The District Court shall have entered, issued, or affirmed an order(s) approving each of the Asbestos PI Channeling Injunction, the Asbestos Insurance Entity Injunction, the Successor Claims Injunction, the Asbestos PD Channeling Injunction, and all releases in favor of the Asbestos Protected Parties, in its entirety, and such order(s) shall have become Final Orders;

(c)    The District Court shall have entered, issued, or affirmed the Confirmation Order, and such order shall have become a Final Order;

(d)    The Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Successor Claims Injunction, the Asbestos Insurance Entity

Injunction, and all releases in favor of the Asbestos Protected Parties shall be in full force and effect;

(e)     Each of the Plan Documents, including each of the exhibits and attachments to the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, shall have been (i) executed or otherwise finalized, as the case may be, in a form acceptable to each of the Plan Proponents, Sealed Air, and Fresenius, *provided, however*, that the exhibits and attachments to the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement shall be executed or otherwise finalized in the form attached to the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement (as the case may be), (ii) delivered to Sealed Air and Fresenius, and (iii) where applicable, filed with the appropriate governmental or supervisory authorities;

(f)     On or before the Effective Date, (i) the SA Debtors, the Asbestos PD Committee and the Asbestos PI Committee shall have executed and delivered the "Release" (as defined in the Sealed Air Settlement Agreement); (ii) the "Government Plaintiff" (as defined in the Sealed Air Settlement Agreement) shall have executed and delivered the "Government Release" (as defined in the Sealed Air Settlement Agreement); and (iii) the Asbestos PI Committee and the Asbestos PD Committee shall have delivered the "Fresenius Release" (as defined in the Sealed Air Settlement Agreement), all as provided for in the Sealed Air Settlement Agreement.  In addition, in consideration for the Cryovac Payment, (i) each of the SA Non-Debtor Affiliates shall irrevocably release, acquit, and forever discharge the Sealed Air Indemnified Parties from any and all (A) present and future Asbestos-Related Claims and/or Demands relating thereto and (B) present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, and arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction that have accrued or been asserted or that hereafter might accrue or be asserted against the Sealed Air Indemnified Parties, and (ii) each SA Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Sealed Air Indemnified Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other Entity, any and all present and future Asbestos-Related Claims and/or Demands relating thereto, and any and all present and future SA Claims, Canadian Claims, SA Debts, and SA Damages on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction;

(g)     The Certificate of Incorporation of each of the Debtors, as amended in accordance with this Plan, shall have been filed with the secretary of state or equivalent agency of its jurisdiction of incorporation;

84

(h)     The Exit Financing, in an amount and on such terms satisfactory to the Debtors, shall be in full force and effect and available immediately upon the occurrence of the Effective Date and after all necessary parties have executed the documentation relating thereto;

(i)     The Debtors shall have obtained either (i) private letter rulings establishing that the Asbestos PI Trust and the Asbestos PD Trust are "qualified settlement funds" pursuant to section 468B of the IRC, or (ii) an opinion of counsel regarding the tax classification of the Asbestos PI Trust satisfactory to the Debtors and the Asbestos PI Trust, and an opinion of counsel regarding the tax classification of the Asbestos PD Trust satisfactory to the Debtors and the Asbestos PD Trust;

(j)     The Canadian Order shall have been issued by the Canadian Court and the time for any appeal with respect to the Canadian Order shall have expired and no appeal shall be pending or outstanding;

(k)     Each of the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement, and the Fresenius Settlement Order shall be in full force and effect and all of the terms and conditions thereunder have been satisfied;

(l)     The injunctions, releases, and indemnifications set forth in the Fresenius Settlement Agreement shall be approved and effected through one or more Final Orders subject only to the transfer of the Fresenius Payment;

(m)     The Asbestos PI Trust Assets shall have been transferred to the Asbestos PI Trust and the Asbestos PD Trust Assets shall have been transferred to the Asbestos PD Trust;

(n)     In addition to the Asbestos PI Trust Assets, the Asbestos PI Trust shall have received from the Parent or other Debtors: (A) an amount in Cash equal to the difference, if any, between (1) five hundred twelve million five hundred thousand dollars ($512,500,000), plus interest thereon from December 21, 2002 until the Effective Date at a rate of 5.5% per annum compounded annually (reduced by the total aggregate amount of Cryovac, Inc.'s transfers to the Asbestos PD Trust as part of the Class 7A Initial Payment and the Class 7B Initial Payment), and (2) the amount of Cash delivered to the Asbestos PI Trust as part of the Cryovac Payment, plus (B) the difference, if any, between (i) eighteen million (18,000,000) shares of Sealed Air Common Stock (as adjusted for a two-for-one stock split on March 16, 2007, and subject to further adjustment to the extent provided in the Sealed Air Settlement Agreement) and (ii) the number of such shares delivered to the Asbestos PI Trust as part of the Cryovac Payment. Upon transfer to the Asbestos PI Trust, such assets shall be treated as Asbestos PI Trust Assets for all purposes, and shall be indefeasibly vested

85

in the Asbestos PI Trust free and clear of all claims, equity interests, Encumbrances, and other interests of any Entity.

(o)    The Asbestos Insurance Transfer Agreement, the Asbestos PI Deferred Payment Agreement, the Class 7A Asbestos PD Deferred Payment Agreement, the Class 7B Asbestos PD Deferred Payment Agreement, the Grace PI Guaranty, the Grace PD Guarantee Agreement for Class 7A, the Grace PD Guarantee Agreement for Class 7B, the Plan Registration Rights Agreement, the Share Issuance Agreement, the Asbestos PD/PI Inter-Creditor Agreement, the Warrant, and the Warrant Agreement shall have been executed and delivered by each of the parties thereto and shall be binding, enforceable and in full force and effect;

(p)    The Sealed Air Action and Fresenius Action shall be dismissed with prejudice;

(q)    The following actions against Fresenius shall have been dismissed with prejudice: (1) *Mesquita v. W. R. Grace & Co. et al.*, amended as *Abner v. W. R. Grace & Co. et al.*, No. 315465, Superior Court of California, County of San Francisco (since transferred to the Bankruptcy Court as Adv. Pro. No. 01-08883); (2) *Woodward v. Sealed Air Corporation (US) et al.*, No. 01-10547 PBS, U.S. District Court, District of Massachusetts (since transferred to the Bankruptcy Court as Case No. 01-CV-412); and (3) *Lewis v. W. R. Grace & Co. et al.*, U.S. Bankruptcy Court, District of Delaware, Bankruptcy Case No. 01-1139/Adv. Case No. 01-08810; and

(r)    All payments required under the CDN ZAI Minutes of Settlement (other than any payments, if any, to be made by the Asbestos PI Trust) shall have been made.

(s)    The Court shall not have entered any order on or before the Effective Date, including as part of the Confirmation Order, which holds that any Claim or any right which may give rise to a Demand, which is included in the definition of either Indirect PD Trust Claim or Indirect PI Trust Claim, is not properly classified as an Asbestos PD Claim or Asbestos PI Claim or is not subject to the Asbestos PD Channeling Injunction or the Asbestos PI Channeling Injunction.

The Effective Date shall not occur unless and until each of the foregoing conditions is either satisfied or waived by each of the Plan Proponents and expressly waived in writing by each of the Sealed Air Corporation, Cryovac, Inc., and Fresenius (subject to the absolute discretion of each). In no event shall the Effective Date occur nor shall Sealed Air Corporation or Cryovac, Inc. have any obligation to make the Cryovac Payment (including the Asbestos PD Initial Payment) at any time prior to the satisfaction of each and every one of the conditions specified in this Section 7.8 without such express written consent by each of Sealed Air Corporation and Cryovac, Inc. in its absolute discretion. In no event shall the Effective Date occur nor shall Fresenius have any obligation to make the Fresenius Payment (including the Asbestos PD Initial

Payment) at any time prior to the satisfaction of each and every one of the conditions specified in this Section 7.8 without such express written consent by Fresenius in its absolute discretion. Notice of the occurrence of the Effective Date reflecting that the foregoing conditions have been satisfied or waived shall: (i) be signed by each of the Plan Proponents and, in the case of a waiver, by each of Sealed Air Corporation, Cryovac, Inc. and Fresenius, (ii) state the date of the Effective Date, and (iii) be Filed with the Bankruptcy Court by counsel to the Debtors.  No waiver shall be effective unless it complies with the requirements of this provision.

## 7.9    MANAGEMENT OF THE REORGANIZED DEBTORS

On and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by their respective Boards of Directors or equivalent thereof.  Upon the Effective Date, the Board of Directors of the Reorganized Parent shall be composed of at least five (5) directors.  The members of the Board of Directors of the Reorganized Parent shall be persons identified to the Court prior to the Confirmation Hearing.

## 7.10    CORPORATE ACTION

On the Effective Date, the approval and effectiveness of matters provided under this Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred and to have been authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including any action by the stockholders or directors of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

## 7.11    EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS

Each of the officers of the Debtors and the Reorganized Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan, the transactions contemplated by this Plan, and any securities issued pursuant to this Plan.

## 7.12    ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST

To the extent that any Allowed Plan Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated first to the principal amount of the Plan Claim and then, to the extent the Distribution exceeds the principal amount of the Plan Claim, to the accrued but unpaid interest.

**7.13   NO SUCCESSOR LIABILITY**

Except as otherwise expressly provided in this Plan, the Debtors, the Reorganized Debtors, the Asbestos PI Committee, the Asbestos PD Committee, the Asbestos PI FCR, the Asbestos PD FCR, the CCAA Representative Counsel, and the Asbestos Protected Parties will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Affiliates, as such liabilities or obligations may relate to or arise out of the operations of or assets of the Debtors or any of the Debtors' past or present Affiliates or any of their respective successors, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date.    Neither the Asbestos Protected Parties, the Reorganized Debtors, the Asbestos PI Trust, the Asbestos PD Trust, nor the CDN ZAI PD Claims Fund is, or shall be, a successor to the Debtors or any of the Debtors' past or present Affiliates by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Reorganized Debtors, the Asbestos PI Trust, the Asbestos PD Trust, and the CDN ZAI PD Claims Fund shall assume the obligations specified in this Plan and the Confirmation Order.

Except as otherwise expressly provided in this Plan, effective automatically on the Effective Date, the Asbestos Protected Parties shall be unconditionally, irrevocably and fully released from (a) any and all Asbestos-Related Claims, including (i) any and all Successor Claims based on or arising from, in whole or in part, directly or indirectly, or related to the Cryovac Transaction and (ii) any and all Asbestos Claims, (b) any and all SA Claims, SA Debts, SA Damages, including Successor Claims, based on, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction, and (c) any other claims and causes of action arising under Chapter 5 of the Bankruptcy Code or similar claims or causes of action arising under state or any other law, including, if applicable, claims in the nature of fraudulent transfer, successor liability, corporate veil piercing, or alter ego-type claims, as a consequence of transactions, events, or circumstances involving or affecting the Debtors (or any of their predecessors) or any of their respective businesses or operations that occurred or existed prior to the Effective Date.   Notwithstanding the foregoing, nothing herein shall release any Asbestos Insurance Entity from its obligations under any Asbestos Insurance Settlement Agreement or Asbestos In-Place Insurance Coverage or Asbestos Insurance Reimbursement Agreement.    For the avoidance of doubt, and without limiting any defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the injunctions and releases in the Plan), this Section 7.13 of the Plan does not release the Sealed Air Indemnified Parties from any direct contractual indemnification obligation that they may have to OneBeacon America Insurance Company under the 1996 CU Agreement with respect to environmental claims asserted against the policies covered by that agreement except where any such obligation is, gives rise to, is based on, arises out of, or otherwise relates to any Asbestos Claim.   For the avoidance of doubt, and without limiting any other defense, counterclaim, or other right of any of the Sealed Air Indemnified Parties or the application of any other provision of the Plan (including each of the other injunctions and releases in the Plan), this Section 7.13 of the Plan does not release the Sealed Air Indemnified Parties from any contractual indemnification and hold harmless obligations for which the Sealed Air Indemnified Parties are directly obligated to CNA and that arise directly under (or are directly based on) the CNA/Old Grace Delaware 5/30/97 Settlement Agreement except to the extent that any such obligation is,

gives rise to, is based on, arises out of, or otherwise relates to any Asbestos Claim. For the further avoidance of doubt, CNA's claims against the Sealed Air Indemnified Parties under or based on any of the CNA/Old Grace Delaware Settlement Agreements that are Asbestos PI Claims or Asbestos PD Claims shall be subject to the Asbestos PI Channeling Injunction or the Asbestos PD Injunction and shall be treated as Class 6 Claims or Class 7A Claims under the Joint Plan.

This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.

## 7.14    DEEMED CONSOLIDATION OF THE DEBTORS FOR PLAN PURPOSES ONLY

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under this Plan for Plan purposes only. Each and every Claim Filed or to be Filed against any of the Debtors shall be deemed Filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding Distributions under this Plan and as set forth above in this Section 7.14) affect: (i) the legal and organizational structure of the Debtors; (ii) any Encumbrances that are required to be maintained under this Plan (A) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed, (B) pursuant to this Plan, or (C) in connection with any Exit Financing; (iii) the Sealed Air Settlement Agreement; and (iv) the Fresenius Settlement Agreement.

Notwithstanding anything contained in this Plan to the contrary, the deemed consolidation of the Debtors shall not have any effect on any of the Plan Claims being reinstated and left unimpaired under this Plan, and the legal, equitable, and contractual rights to which the Holders of any such Plan Claims are entitled shall be left unaltered by this Plan.

## 7.15    INSURANCE NEUTRALITY

(a)    Notwithstanding anything to the contrary in the Plan or any of the Plan Documents, except as provided in Sections 7.15(b) through 7.15(j) of the Plan: (i) nothing in the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect; and (ii) the rights of each Asbestos Insurance Entity shall be determined under the applicable Asbestos Insurance Policies, Asbestos In-Place Insurance Coverages, Asbestos Insurance Reimbursement Agreements, or Asbestos Insurance Settlement Agreements.

(b)    The Plan, the Plan Documents, and the Confirmation Order shall be binding on the Debtors, the Reorganized Debtors, the Asbestos PI Trust and the holders of Class 6 Asbestos PI Claims; provided, however, that to the extent that an Asbestos Insurance Entity is or may be a holder of a Class 6 Asbestos PI Claim, the portions of the Plan and the Plan Documents addressing holders of Class 6 Asbestos PI Claims shall be binding on such Asbestos Insurance

Entity only in its capacity as a holder of a Class 6 Asbestos PI Claim. The obligations, if any, of the Asbestos PI Trust to pay holders of Asbestos PI Claims shall be determined pursuant to the Plan, the Plan Documents and the Confirmation Order. Except as provided in Sections 7.15(e), 7.15(h) and 7.15(j), none of (I) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (II) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, (III) any judgment, order, finding of fact, conclusion of law, determination or statement (written or oral, made on or off the record) made by the Bankruptcy Court or issued or affirmed by the District Court pursuant to 11 U.S.C. § 524(g)(3), or (IV) any estimation or valuation of Asbestos PI Claims, either individually or in the aggregate (including any agreement as to the valuation of Asbestos PI Claims or any value attributed to the Asbestos PI Trust Assets) in the Chapter 11 Cases or otherwise, shall, with respect to any Asbestos Insurance Entity, constitute a trial or hearing on the merits or an adjudication or judgment; or accelerate (on the basis of the decision in or principles espoused in *UNR Industries, Inc. v. Continental Casualty Co.,* 942 F.2d 1101 (7th Cir. 1991) or otherwise) the obligations, if any, of any Asbestos Insurance Entity under its Asbestos Insurance Policies or Asbestos In-Place Insurance Coverage, as applicable; or be used as evidence or argument in any forum to prove or claim:

(i)    that any of the Debtors, the Reorganized Debtors, the Asbestos PI Trust, or any Asbestos Insurance Entity is liable for, or otherwise obligated to indemnify or pay with respect to, any individual Asbestos PI Claim or Demand;

(ii)    that the procedures established by the Plan, including the Asbestos PI Trust Distribution Procedures, for evaluating and paying Asbestos PI Claims and Demands (including the medical, causation or exposure criteria and disease values) are reasonable or appropriate;

(iii)    that the procedures established by the Plan, including the Asbestos PI Trust Distribution Procedures, for evaluating and paying Asbestos PI Claims and Demands (including the medical, causation or exposure criteria and disease values) are consistent with any procedures that were used to evaluate or settle Asbestos PI Claims against the Debtors before the Petition Date;

(iv)    that the settlement of, or the value assigned to, any individual Asbestos PI Claim pursuant to the Asbestos PI Trust Distribution Procedures was, is or will be reasonable and/or otherwise appropriate;

(v)    that any of the Asbestos Insurance Entities participated in the negotiation of and/or consented to the Plan or any of the Plan Documents, including the Asbestos PI Trust Distribution Procedures;

(vi)    that any of the Debtors or the Asbestos PI Trust has suffered an insured loss with respect to any Asbestos PI Claim or Demand; or

(vii)    (A) the liability of the Debtors, the Reorganized Debtors or the Asbestos PI Trust for Asbestos PI Claims or Demands, whether such Asbestos PI Claims or Demands are

90

considered individually or on an aggregate basis; or (B) the value of such Asbestos PI Claims or Demands, individually or in the aggregate.

For the avoidance of any doubt, nothing in this Section 7.15 of the Plan shall preclude the Asbestos PI Trust from asserting in any subsequent coverage litigation:

> (i)    that the Asbestos PI Trust has assumed the liabilities and responsibilities for all Asbestos PI Claims;

> (ii)    that the Plan or any of the Plan Documents, including the Asbestos PI Trust Distribution Procedures, constitute a mechanism setting out a procedure for determination of the approval/disapproval and valuation of Asbestos PI Claims which would result in settlements that trigger coverage; or

> (iii)    that the Asbestos PI Trust's liability for which the Asbestos PI Trust is entitled to coverage under the Asbestos Insurance Policies is the full value for which a claim is resolved by the Asbestos PI Trust and is not limited to just the amount that the Asbestos PI Trust is able to pay on the claim.

Nothing in this Section 7.15 of the Plan shall preclude the Asbestos Insurance Entities from disputing the assertions by the Asbestos PI Trust set forth in subsections (i) through (iii) immediately above in any subsequent coverage litigation, but this Section 7.15 of the Plan likewise shall not be used by the Asbestos Insurance Entities as evidence that the Asbestos PI Trust has acceded to the Asbestos Insurance Entities' positions on those points.

> (c)    Nothing in this Section 7.15 of the Plan shall affect or limit, or be construed as affecting or limiting, the protection afforded to any Settled Asbestos Insurance Company by the Asbestos PI Channeling Injunction or the Asbestos PD Channeling Injunction.

> (d)    Nothing in the Plan or Plan Documents is intended, nor shall it be construed, to preclude otherwise applicable principles of *res judicata* or collateral estoppels from being applied against any Asbestos Insurance Entity with respect to any issue that has not been withdrawn by the Asbestos Insurance Entity prior to issuance of the Confirmation Order and that is actually litigated by such Asbestos Insurance Entity as part of its objections, if any, to confirmation of the Plan or as part of any contested matter or adversary proceeding filed in conjunction with or related to confirmation of the Plan.

> (e)    Each Asbestos Insurance Entity shall be bound by any Final Order, and related Court findings and conclusions that, under the Bankruptcy Code, the transfer of Asbestos Insurance Rights under the Asbestos Insurance Transfer Agreement is valid and enforceable against each Asbestos Insurance Entity notwithstanding applicable non-bankruptcy law or any anti-assignment provision in or incorporated into any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement.

(f)    Each Asbestos Insurance Entity shall be bound by any Final Order that the releases and injunctions as provided in the Plan are valid and enforceable against each Asbestos Insurance Entity, and this Section 7.15 of the Plan is not intended, nor shall it be construed, to limit the protections afforded to the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties by any Final Order approving such releases and injunctions in the Plan or to allow the Asbestos Insurance Entities to undertake any action against any of the Sealed Air Indemnified Parties or the Fresenius Indemnified Parties that is contrary to any such Final Order.

(g)    If an Asbestos Insurance Entity that is not a Settled Asbestos Insurance Company asserts that it has rights of contribution, indemnity, reimbursement, subrogation or other similar claims (collectively, for purposes of this Section 7.15(g), "Contribution Claims") against a Settled Asbestos Insurance Company, (i) such Contribution Claims may be asserted as a defense or offset against the Asbestos PI Trust or the Reorganized Debtors (as applicable) in any Asbestos Insurance Action including such Asbestos Insurance Entity that is not a Settled Asbestos Insurance Company, and the Asbestos PI Trust or the Reorganized Debtors (as applicable) may assert the legal or equitable rights, if any, of the Settled Asbestos Insurance Entity, and (ii) to the extent such Contribution Claim is determined to be valid, pursuant to a Final Order, the liability (if any) of such Asbestos Insurance Entity that is not a Settled Asbestos Insurance Company to the Asbestos PI Trust or the Reorganized Debtors (as applicable) shall be reduced by the amount of such Contribution Claim.

(h)    Each Asbestos Insurance Entity that is a party to an Asbestos Insurance Reimbursement Agreement shall be bound by any Final Order that the provisions of Section 7.2.2(d)(iv) of the Plan are applicable to such Asbestos Insurance Reimbursement Agreement.

(i)    Notwithstanding anything to the contrary in the Plan or the Plan Documents: (i) any Entity (including the Asbestos PI Trust, any Reorganized Debtor and any non-Debtor Affiliate) that tenders a claim for defense, indemnity or coverage under an Asbestos Insurance Policy to an Asbestos Insurance Entity shall be responsible, for purposes of such claim, for any retrospective insurance premium, self-insured retention, deductible or similar obligation of the insured under the Asbestos Insurance Policies with respect to such claim; (ii) with respect to any self-insured retention, deductible or similar obligation, any Asbestos Insurance Entity to which such claim is tendered may assert, as a coverage defense, that such tendering Entity has not fulfilled the obligations of the insured under the Asbestos Insurance Policies in respect of which such claim was tendered; and (iii) with respect to any retrospective insurance premium or similar obligation, any Asbestos Insurance Entity to which such claim is tendered may offset the amount of such retrospective insurance premium or similar obligation against any amount otherwise payable by such Asbestos Insurance Entity to the Asbestos PI Trust on account of that or any other claim tendered by the Asbestos PI Trust to that Asbestos Insurance Entity.

(j)    The duties and obligations of an Asbestos Insurance Entity under any Asbestos Insurance Policy, Asbestos In-Place Insurance Coverage, Asbestos Insurance Reimbursement Agreement or Asbestos Insurance Settlement Agreement are not diminished, reduced or eliminated by (1) the discharge of the obligations and liabilities of the Debtors and Reorganized Debtors for and in respect of all Asbestos PI Claims or (2) the assumption by the Asbestos PI Trust of responsibility and liability for all Asbestos PI Claims.  Except as provided in Sections