## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: February 14, 2011, at 9:00 a.m.** |
| | ) **Objection Deadline: January 28, 2011** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING ENTRY INTO A STIPULATION RESOLVING CLAIMS OF THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION

The above captioned debtors and debtors in possession (the "Debtors") hereby submit this Motion ("Motion") for entry of an order authorizing their entry into a Stipulation (the "2010 Stipulation," a copy of which is attached to the proposed Order filed herewith as Exhibit A) resolving the claims of the Massachusetts Department of Environmental Protection (the "MassDEP" or "Claimant") relating to several environmental sites located in Massachusetts (the "Sites"). In support of the Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this Motion are sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      This Court issued its Bar Date Order[2] on April 22, 2002, which established March 31, 2003 as the Bar Date for the filing of certain pre-petition (a) non-asbestos, (b) asbestos property damage and (c) medical monitoring claims.

4.      On March 31, 2003, MassDEP filed timely proofs of claim against each of the following Debtors: (a) W. R. Grace & Co.; (b) W.R. Grace & Co-Conn.; and (c) Grace Energy Corporation regarding alleged liability of such debtors to the Commonwealth of Massachusetts in connection with environmental contamination at numerous sites throughout the Commonwealth, pursuant to federal and state laws and regulations, including the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606, et seq. ("CERCLA"), the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. G. L. c. 21E, the Massachusetts Contingency Plan ("MCP"), 310 C.M.R. §§ 40.0000, et seq., and the Timely Action Schedule and Fee Provisions, 310 C.M.R. §§ 4.00, et seq., which

---

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the 2010 Stipulation or the *First Amended Joint Plan of Reorganization in these Chapter 11 Cases*, as amended, Docket nos. 19579, 20666, 20872, 2087, 21594 and 24657.

the Debtors' claims agent designated as Claim No. 12848, 12849 and 13487, respectively (collectively, "MassDEP Claims").

5.     The MassDEP Claims set forth alleged general unsecured pre-petition liquidated claims in a total amount of $799,418.84, and also provided notice of other contingent, unliquidated, and/or estimated environmental liability that the MassDEP alleged that the Debtors already had, or may come to have, to the Commonwealth. The Debtors objected to the MassDEP Claims on various grounds.

6.     On May 16, 2005, the Court entered a Stipulation and Order (Docket No. 8447), attached hereto as Exhibit B, ordering that: (a) the liquidated, general unsecured pre-petition claims set forth in Claim No. 12849 were allowed as an unsecured, pre-petition, non-priority claims in the amount of $700,298. (the "Allowed Pre-Petition Claim"); (b) Claim No. 12848 and Claim No. 13847 were withdrawn; (c) all other contingent, unliquidated, or estimated pre-petition or post-petition claims or amounts included in Claim No. 12849 remained unresolved (the "Reserved Claims"); (d) all rights of MassDEP to seek recovery of the Reserved Claims were expressly reserved; and (e) all rights of Debtors to object to MassDEP's exercise of its rights with regard to the Reserved Claims were expressly reserved.

7.     On January 22, 2009, Claimant filed an amendment to Claim No. 12849 asserting newly-discovered environmental liability of Debtors to the Commonwealth in connection with the Sutton Brook Superfund Site, in Tewksbury, Massachusetts, which the Debtors' claims agent designated Claim No. 18511, and which the Parties resolved in a Consent Decree entered by the United States District Court for the District of Massachusetts on November 9 and 10, 2010 ("Sutton Brook CD"). *See United States v. Ausimont Indus., Inc.* (No. 09-12169) (Docket No.

DOCS_DE:166206.1

10), consolidated with *Commonwealth of Massachusetts v. Ausimont Indus., Inc.* (No. 09-12172) (Docket No. 6) (D. Mass.).

8.    The Debtors dispute Claim No. 18511, and continue to dispute the Reserved Claims. In addition, but for the Sutton Brook CD and the 2010 Stipulation, the Debtors would object to Claim No. 18511 and renew their objections to the Reserved Claims. Pursuant to the 2010 Stipulation, however, the parties now agree to resolve all remaining issues among them, including the Reserved Claims with a full and final settlement to the maximum extent possible under the terms and provisions of the 2010 Stipulation.

### THE 2010 STIPULATION[3]

9.    The Parties agree that the Reserved Claims shall be allowed against the chapter 11 estates of the Debtors in the amounts of $90,437.08 as administrative expense claims ("Allowed Administrative Expense Claims") and $15,145.89 as general unsecured claims ("Allowed General Unsecured Claims), for a combined total of $105,582.97, as set forth specifically below and in the 2010 Stipulation.

10.    The Debtors agree that MassDEP's Reserved Claims shall be resolved and allowed in the following manner and amounts:

    a.    Former Zonolite Plant, Easthampton. MassDEP shall have an Allowed General Unsecured Claim of $1,863.21 for costs incurred post-petition through May 25, 2010.

    b.    Daramic Plant Site, Acton. MassDEP shall have an Allowed Administrative Expense Claim of $5,200 for costs incurred post-petition.

---

[3]    The terms and conditions outlined herein are a summary of the key terms and conditions of the 2010 Stipulation. For a complete understanding of the terms and conditions, see the 2010 Stipulation filed herewith as part of Exhibit A. To the extent there is a conflict between this summary and the 2010 Stipulation, the 2010 Stipulation controls.

c. <u>Cambridge Plant Site, Cambridge</u>. MassDEP shall have an Allowed Administrative Expense Claim of $3,900 for costs incurred post-petition through May 25, 2010.

d. <u>Knox Trail Site, Acton and Concord</u>. MassDEP agrees that no costs are outstanding and no amount shall be allowed.

e. <u>MMR Pipeline Site, Sandwich</u>. MassDEP shall have an Allowed General Unsecured Claim of $8,543 for costs incurred post-petition.

f. <u>Acton Superfund Site</u>.   Mass DEP shall have:

(i)     an Allowed Administrative Expense Claim of $81,337.08 for costs incurred post-petition through May 25, 2010; and

(ii)    an Allowed Administrative Expense Claim for 100% of all Unreimbursed response costs incurred by Claimant, if any, after May 25, 2010.

g. <u>Wells G & H Superfund Site, Woburn</u>. MassDEP shall have:

(i)     an Allowed General Unsecured Claim of $1,836.19 for costs incurred post-petition through May 25, 2010;

(ii)    an Allowed Administrative Expense Claim for 100% of all Unreimbursed response costs incurred by Claimant, if any, after May 25, 2010, related to the Debtor's Source Area (OU1); and

(iii)   an Allowed General Unsecured Claim for 25% of all Unreimbursed response costs incurred by Claimant related to the Central Area (OU2).

h. <u>Blackburn & Union Privileges Superfund Site, Walpole</u>. MassDEP shall have:

(i)     an Allowed General Unsecured Claim of $2,903.49 for costs incurred post-petition through May 25, 2010; and

5

(ii)    an Allowed General Unsecured Claim for 50% of Unreimbursed response

costs incurred by Claimant, if any, incurred after May 25, 2010,

11.    The Debtors have agreed to comply with applicable environmental laws and

regulations with respect to the following sites that are Debtor-owned: Cambridge Plant Site

(including regulations related to the Activity Use Limitation on the Site), Daramic Plant Site,

Acton Superfund Site, and Wells G&H Superfund Site.

12.    The Debtors have agreed to comply with all of their obligations to perform

response actions as provided in the Work Consent Decrees at the Acton Superfund Site, Wells

G&H Superfund Site, and Blackburn & Union Privileges Site; and all such obligations shall not

be impaired in any way by these Bankruptcy Cases or confirmation of a Plan of Reorganization.

13.    The Debtors have agreed that actions or claims against the Debtors by the

Commonwealth under Mass. G.L. c.21.E for recovery of natural resource damage arising as a

result of post-petition releases or ongoing releases of hazardous substances or materials at or

which migrate or leach from the Acton Superfund Site, the Wells G&H Superfund Site, or the

Blackburn & Union Privileges Superfund Site shall not be discharged under the Bankruptcy

Code, by confirmation of a Plan of Reorganization, nor shall such actions, claims or underlying

obligations be impaired in any way by these Bankruptcy Cases or confirmation of a Plan of

Reorganization.

14.    At any time, including after the Effective Date of the Plan, the Commonwealth

may pursue enforcement actions or proceedings with respect to claims and obligations of the

Debtors described in Paragraph 13 of this Motion in the administrative or judicial tribunals in

which the Commonwealth could have pursued enforcement actions or proceedings if these

Bankruptcy Cases had never been commenced.  The Debtors reserve the right to assert any and

all defenses and counterclaims available to them under applicable law with respect to any such alleged claims and obligations of the Debtors to the Commonwealth, except the alleged defense of discharge of liabilities under the Bankruptcy Code, under a plan of reorganization or order of confirmation. The Commonwealth reserves all rights with respect to any defenses or counterclaims asserted by the Debtors under this paragraph.

15.     In the event that the Plan of Reorganization confirmed by the Bankruptcy Court provides for payment of interest to holders of Allowed General Unsecured Claims and Allowed Administrative Expense Claims, with respect to such claims held by MassDEP, interest shall be calculated at the rate provided for and compounded as provided for the holders of such claims under the Plan of Reorganization (this rate is currently proposed to be 4.19% per annum), which for all amounts allowed under the 2010 Stipulation shall begin to accrue on May 25, 2010, and shall continue to accrue, for the same duration as provided for other such claims in accordance with terms of the Plan of Reorganization. The total amount allowed in the 2010 Stipulation, pre-interest, is $105,582.97.

16.     The portions of Claim No. 12849 allowed under the 2010 Stipulation and the portions of Claim No. 12849 allowed under the 2005 Stipulation as Allowed Pre-Petition Claims shall be paid in the same manner as all other similarly situated claims pursuant to the Plan. While the 2005 Stipulation reserved the right of MassDEP to seek to set-off the Allowed Pre-Petition Claim against a tax refund owed to the Debtors by the Massachusetts Department of Revenue ("MDOR"), and reserved the Debtors' right to oppose the exercise of that right, on June 3, 2005, MassDEP withdrew its set-off motion (Docket No. 8547) and shortly thereafter MDOR paid the tax refund in full to the Debtors. See 2005 Stipulation, ¶ 4. Therefore, the Allowed Pre-Petition Claims under the 2005 Stipulation shall be paid on the Effective Date of the Debtors'

Chapter 11 Plan in the same manner as other allowed general unsecured claims, with interest accruing thereon from June 3, 2005. The amounts resolved pursuant to the Sutton Brook CD shall be paid pursuant to the terms set forth in the Sutton Brook CD and are not affected by the 2010 Stipulation.

17.    Claimant agrees that Claim No. 18511 shall be withdrawn.

18.    The Allowed General Unsecured Claims and Allowed Administrative Expense Claims set forth in the 2010 Stipulation, subject to the rights reserved therein, address all past, present and future claims by MassDEP with respect to response costs or natural resource damage related to the Reserved Claims, whether to address matters known or unknown, for which a Claim of any kind or nature has been or could be asserted against the Debtors by Claimant pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607(a)(1)-(4), or Mass. G.L.c. 21E, the MCP, or 310 C.M.R. §§4.00 et seq. by Claimant.

19.    MassDEP agrees that it is forever barred, estopped, and enjoined from asserting any additional claims against the Debtors with respect to any costs relating to the sites at issue in the 2010 Stipulation, other than enforcement of the obligations of the Debtors (a) set forth in the 2010 Stipulation or the May 2005 Stipulation; (b) arising from post-May 25, 2010 conduct of the Debtors at the Acton Superfund Site, Wells G&H Superfund Site, or the Cambridge Plant Site, (c) arising from post-May 25, 2010 oversight and remediation activities of Claimant at the Zonolite Plant Site in Easthampton, or (d) arising from conduct of Debtors after confirmation of a Plan of Reorganization. The Claimant further agrees that any and all other liabilities and obligations for the sites at issue herein that have been or ever could be asserted by the Claimant against the Debtors are discharged and fully and finally satisfied as provided for in the 2010 Stipulation.

## RELIEF REQUESTED

20.     By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving the Debtors' execution of the 2010 Stipulation, (b) resolving the Reserved Claims as outlined in the 2010 Stipulation, (c) permitting withdrawal of Claim No. 18511, and (d) granting such other relief as may be appropriate.

## ANALYSIS

21.     This Court has the statutory authority to authorize and approve the Debtors' entry into the 2010 Stipulation and the incurrence of costs and expenses contemplated therein, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

22.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

23.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtors' sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound

DOCS_DE:166206.1

business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery

Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc.,

209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

24.    A settlement of claims and causes of action by a debtor in possession constitutes a

use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d

346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor,

it requires the approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy

Code.

25.    Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the

trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed.

R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of

reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in

bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case.

See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No.

03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2, 2006).

26.    Before approving a settlement under Bankruptcy Rule 9019, however, a court

must determine that the proposed settlement is in the best interests of the debtor's estate. See

Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998)

("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of

the estate.'") (citation omitted). To reach this determination, the court must assess the value of

the claim that is being settled and balance it against the value to the estate of the approval of the

settlement. See Martin, 91 F.3d at 393.

10

27.     The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

28.     It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

29.     The Debtors have determined that entry into the 2010 Stipulation is in the best interests of the Debtors and their estates. The 2010 Stipulation was the process of a rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.

30.     The 2010 Stipulation is in the best interests of the estates for a number of reasons. First, the 2010 Stipulation prevents the incurrence of significant transaction and litigation costs and cost-effectively allocates the responsibility for and resolves significant remaining environmental liabilities of the Debtors. Approving the 2010 Stipulation will finally and fully resolve MassDEP's Claims and the Debtors' responsibility for several environmental sites,

and provide assurance to the creditors that environmental liabilities associated with the Sites will be fully addressed and permanently resolved.

31.     <u>Second</u>, the 2010 Stipulation is consistent with the goals of CERCLA and Massachusetts's various environmental laws and benefits the public interest. The 2010 Stipulation provides for compensation to the MassDEP for its past out-of-pockets costs incurred at the Sites for which the Debtors are responsible as outlined herein and assures that any continued costs incurred at the Sites will be paid for by the appropriate parties. Such approval benefits the public by allocating costs of any work related to the Sites to the appropriate parties and assures that future work may proceed.

32.     <u>Third</u>, the 2010 Stipulation does not provide for any payment by Debtors prior to the effective date of a confirmed Plan of Reorganization of the Debtors.

33.     For the reasons stated above, the proposed 2010 Stipulation is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances. In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the 2010 Stipulation.

<b><u>No Previous Motion</u></b>

34.     No previous motion for the relief sought herein has been made to this or any other court, except pursuant to the May 2005 Stipulation which involved some of the same Sites but not the same portions of the MassDEP Claims.

### NO BRIEFING SCHEDULE

35.     The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

### NOTICE

36.     Notice of this Motion has been given to:  (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel for the MassDEP.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, the Debtors respectfully request entry of an order (i) authorizing the Debtors' entry into the 2010 Stipulation with MassDEP resolving MassDEP's remaining claims on several environmental sites located in Massachusetts; (ii) allowing the Reserved Claims' portion of Claim No. 12849 as outlined in the 2010 Stipulation; and (iii) permitting the withdrawal of Claim No. 18511.

Dated: December 15, 2010

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 N. LaSalle St.
Chicago, Illinois 60654
(312) 862-2000

and

THE LAW OFFICES OF JANET S. BAER, P.C.
Janet S. Baer, P.C.
Roger J. Higgins
70 W. Madison St., Suite 2100
Chicago, Illinois 60602
(312) 641-2162

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession