```
              UNITED STATES BANKRUPTCY COURT
                  DISTRICT OF DELAWARE

IN RE:                        .  Case No.  01-1139 (JKF)
                              .
W.R. GRACE & CO.,             .
et al.,                       .  USX Tower - 54th Floor
                              .  600 Grant Street
                              .  Pittsburgh, PA 15219
          Debtors.            .
                              .  January 4, 2010
. . . . . . . . . . . . . .      9:01 a.m.


        TRANSCRIPT OF PLAN CONFIRMATION HEARING
          BEFORE HONORABLE JUDITH K. FITZGERALD
          UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:         Kirkland & Ellis, LLP
                         By:  DAVID BERNICK, ESQ.
                              LISA G. ESAYIAN, ESQ.
                              JANET BAER, ESQ.
                         200 East Randolph Drive
                         Chicago, IL  60601

For the Debtors:         Kirkland & Ellis, LLP
                         By:  THEODORE FREEDMAN, ESQ.
                              DEANNA D. BOLL, ESQ.
                         Citigroup Center, 153 East 53rd St.
                         New York, NY  10022

For the Asbestos         Caplin & Drysdale, Chartered
Creditors Committee:     By:  PETER LOCKWOOD, ESQ.
                              NATHAN FINCH, ESQ.
                         One Thomas Circle, NW
                         Washington, D.C.  20005

Audio Operator:          Cathy Younker

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.
```

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail: jjcourt@optonline.net

(609)586-2311     Fax No. (609) 587-3599

1  insurance, unfortunately.  I wish there were, Your Honor.  But
2  unfortunately there isn't nearly enough insurance for the
3  products claims.  But for non-products claims such as the Libby
4  claimants have there is no restriction of aggregate limits on
5  the claims that we can assert.  And of course, insurers always
6  assert defenses.  Nobody wanted to turn this into a coverage
7  litigation, I don't think -- and from previous comments of the
8  Court there was indication that you would not be particularly
9  favorable toward turning the confirmation hearing into a
10 coverage litigation.
11         THE COURT:  No.
12         MR. COHN:  So, really, what you do have in the record
13 is the policies themselves, which establish the basic
14 availability of these claims under the policy, and we can take
15 it for granted that the insurers will fight quite a bit before
16 they allow any claims.  But that's true of products and non-
17 products claims alike.
18         So, turning -- that ends discrimination, Your Honor.
19 Turning to the releases and the injunctions under the plan, let
20 me make some brief observations.  One is, Your Honor, the plan
21 channeling injunction is unclear about whether it would enjoin
22 our independent claims that we have alleged that we have
23 against parties such as Maryland Casualty Company for their own
24 allegedly tortious conduct in relation to the Libby claimants.
25 The injunction is unclear as to whether those claims are within

1  its ambit.  The <u>Travelers</u> decision that was handed down by the
2  Supreme Court has basically just had the effect of putting us
3  all on notice.  And if there's any ambiguity in an injunction
4  we'd darn well better straighten it out at this level, Your
5  Honor, and not find out 20 years from now that it means
6  something different than at least some people in the courtroom
7  think it means.  And so, we would ask you to include a
8  clarification that says that.  To the extent that there's any
9  independent tortious conduct as opposed to, you know, the
10 issuance of insurance policies which obviously is enjoined, but
11 if there's any independent tortious conduct by any party,
12 including an insurer, it is not -- the pursuit of those claims
13 are not enjoined by the channeling injunction.
14           All right.  The next issue also -- unfortunately I
15 seem to picking on Maryland Casualty Company a lot, but the
16 next issue relates to Maryland Casualty again, which is that
17 Maryland Casualty is not making any post-petition financial
18 contribution under this plan and yet is being -- it is a so-
19 called asbestos protected party which is getting the benefit of
20 the channeling injunction.  And this is a violation of the fair
21 and equitable requirement of Section 524(g), which has been
22 held in the <u>Congoleum</u> case, for example, to require that there
23 has to be a financial contribution by an insurer in order to --
24 really it's by any party in order to be the beneficiary of an
25 injunction under Section 524(g).  The fact that Maryland

151

1 Casualty -- I'm just speaking on Maryland Casualty because
2 that's where the objection was raised, okay -- and this
3 preliminary injunction would stop that action from going
4 forward until the effective date. What happens after the
5 effective date as to those claims?
6       MR. BERNICK: Well, to the extent that those claims -
7 - you then get into the question of what the -- how to
8 interpret the injunction that is in the plan, vis-a-vis
9 Maryland Casualty, given the nature of claims that are made
10 against it. And there may well be an issue about what that
11 actually means.
12       THE COURT: Right. Which is what Mr. Cohn is saying
13 Traveler's requires me to figure out now. And, frankly, if
14 there's going to be that kind of an issue, Travelers does
15 require me to figure it out now. So, what is the meaning of
16 the injunction?
17       MR. BERNICK: Well, I don't know that Travelers --
18       (Laughter)
19       MR. LOCKWOOD: Sorry, Your Honor. I'm pouncing.
20       Your Honor, the starting point of this issue is the
21 plan itself, and the definition in the plan from Section 1.201
22 of settled asbestos insurance company, because that's what the
23 capacity in which Maryland Casualty is being protected by the
24 injunction. And, in particular, the language of that says at
25 the end of it, "and further provided for the avoidance of

1  doubt, that an asbestos insurance entity is a settled asbestos
2  insurance company to the fullest extent, but only to the extent
3  provided by Section 524(g) in respect of any claim that arises
4  by reason of one of the activities enumerated in Section
5  524(g)(4)(a)(2)," that being the four by reason ofs, one of
6  which is by reason of provision of insurance to the debtor or
7  predecessor.
8       Now, the Libby claimants have filed lawsuits against
9  Maryland Casualty in the State of Montana.  What Mr. Cohn is
10 talking about is that lawsuit which charges, in effect,
11 Maryland Casualty of reaching an independent duty arising out
12 of its undertaking to perform industrial hygiene services, vis-
13 a-vis Grace and its employees.  Maryland Casualty also and
14 separately settled with Grace its insurance policy obligations,
15 and Mr. Cohn is not talking about the settlement of the policy
16 obligations --
17      THE COURT:  Right, I understand.
18      MR. LOCKWOOD:  -- in the point he was making.  He was
19 talking about the so-called independent tort action.
20      THE COURT:  Right.  That's what I thought I asked
21 about.
22      MR. LOCKWOOD:  Right.  This Court is being asked, as
23 I hear it, by Mr. Cohn, to look at the allegations of the
24 complaint, to look at his versions of what Montana law does or
25 does not say about the viability of those allegations as a

153

cause of action, and to determine whether or not, depending on what facts they might or might not be able to prove, the Libby claimants could get a verdict against Maryland Casualty Company which would be -- which they could argue did not arise by reason of Maryland Casualty's provision of insurance to the debtor, because if it did it could be channeled, but rather arose out of this independent duty, negligence.

The plan says, it will be whatever it will be when it gets litigated. In other words, we're not going to have a trial as part of the confirmation process as to what allegations Libby can prove and how they would fit under 524(g). Instead, once the effective date occurs, and the injunction is in place, Libby can say, okay, we want to crank up our suit in Montana against Maryland Casualty. Maryland Casualty Company at that point could say, wait a minute, that suit's enjoined under the plan and come to this Court and ask for some kind of a ruling on that point.

At that point this Court will be in a position, at its leisure, to determine whether or not the claim does arise by reason of the provision of insurance under 524(g) and is therefore enjoined, or it doesn't. And the plan accommodates either result. The plan is agnostic as to whether Libby claimants are correct in their view or Maryland Casualty is correct in its view. And reserves for a later date, just like any other person who would come in after the effective date and

Case 01-01139-AMC    Doc 25955-1    Filed 12/23/10    Page 7 of 9

try and sue an asbestos-protected party on some theory of facts of law that says my claim isn't covered by the injunction.

One could hypothesize, you know, enumerable instances of people trying to somehow or another get around the injunction. And in each and every case where that occurred, this Court would look at the language in the plan, and the language in the injunction and the facts of the law associated with the claim being pressed, and would determine, is it covered by the injunction or isn't it?

But, the idea that Your Honor is in a position sitting here today -- let me back up one step. In the confirmation hearing process, other than putting in the complaint, which is just a piece of paper with allegations in it and doesn't really establish either the facts or the law, it's just allegations, the Libby claimants have not herefore put on their case against Maryland Casualty. So, they're basically asking you to sort of make a decision on the basis of allegations of a complaint that's sitting in a court file in Montana as to whether or not this plan properly does or doesn't enjoin that case if and when the plan becomes effective. And there's no reason that Your Honor should have to do that anymore than Your Honor should have to decide coverage issues or any other dispute involving claims or scopes of injunction or anything else.

The critical point, as I said before, is the plan

1  itself accommodates either outcome. It doesn't purport to say
2  Maryland Casualty wins, and it doesn't purport to say Libby
3  claimants win.
4         THE COURT: Okay, that's fine. What I'm trying to
5  find -- that's what I was trying to find out, what the effect
6  is under the plan. Because to the extent the plan has some
7  provision of which I'm not aware -- but I'm not sure I'm aware
8  of them all -- that says that there is some reference back to
9  the tort system of any direct, alleged direct action, then I
10 wanted to know what the consequence is.
11        MR. LOCKWOOD: If Your Honor decides that the Libby
12 claimants are right and Maryland Casualty Company is wrong,
13 then the plan permits the Libby claimants to continue that
14 lawsuit in the State Court in Montana.
15        THE COURT: Okay. So, that the injunction is only
16 intended to cover Maryland Casualty to the extent that its
17 provision of insurance to the debtor would somehow or other
18 prohibit this claim from going forward, and I guess the theory
19 is because of the indemnity rights that Maryland then may have
20 back against the estate.
21        MR. LOCKWOOD: Well, just to illustrate the point
22 hypothetically, Your Honor. Maryland Casualty Company could
23 come in and argue and say, look, we don't hire ourselves out as
24 industrial hygiene consultants. We're an insurance company.
25 Why were we doing this industrial hygiene activity up here?

156

Well, we were the workers' compensation employer for Grace. One of the things we do for our insureds is try and help them avoid workplace injuries. That's part of what we do. But, we only do it as an adjunct of our providing insurance and we have a common interest with the insured because if the industrial hygiene is better, we have fewer claims.

THE COURT: Okay, Mr. Lockwood --

MR. LOCKWOOD: That could very well -- do you see the point?

THE COURT: Yes. I heard that argument once before, as I recall, already.

MR. LOCKWOOD: Right, right.

THE COURT: So, yes, okay.

MR. LOCKWOOD: So the bottom line is, it's for a later day.

The other part of the argument that you are hearing that's related to that doesn't involve independent torts, it involves the protection of Maryland Casualty as a settlement insurer on its settled policies. Mr. Cohn wants to say we should be permitted to go and sue on settled policies on some theory that the settlement is invalid or it doesn't cover direct action, claims for non-products or whatever theory. And he says, giving Maryland Casualty Company protection from my claims, my client's claims against that settled insurance, is a violation of 524(g), not because the statute doesn't permit