# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | **Hearing Date:  January 10, 2011 at 9:00 a.m.** |
| | ) | **Objection Deadline:  December 23, 2010 4:00 p.m.** |
| | ) | **Agenda No. 6** |
| | ) | **Dkt. Nos. 25776,  25954, 25955** |

## DEBTORS' REPLY TO OBJECTIONS OF THE LIBBY CLAIMANTS AND OF BNSF RAILWAY TO DEBTORS' MOTION FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE WITH THE CNA COMPANIES

The Libby Claimants' objection to the $84 million CNA[1] settlement seeks to confuse two wholly distinct matters:  (1) Plan confirmation; and (2) the approval of the Debtors' insurance settlement with the CNA Companies as reasonable.  The confirmability of the Plan and satisfaction of Section 524(g) of the Bankruptcy Code among other legal requirements have been more than thoroughly briefed and presented to the Court, and the record is closed.  Approval of the CNA settlement is a different matter, governed by the four-part *In re Martin* test[2], which is fully satisfied.

Libby Claimants' Objection is essentially a re-hash of their Plan objections.  The Libby Claimants admit as much, even purporting to "incorporate by reference herein their objections, briefs and arguments in opposition to confirmation of the Plan, and . . . incorporate this Objection into their arguments against confirmation of the Plan, which remains *sub judice*."

---

[1] The Settlement Agreement is Exhibit A to the Debtors' Motion for Approval, filed at Dkt. No. 25776 on November 18, 2010.

[2] *In re Martin*, 91 F.3d 389 (3rd Cir. 1996) provides the standards for approving a settlement under Bankruptcy Rule 9019, as discussed more fully in the Debtors' Motion at ¶¶ 16-17.

Libby Obj. at 8 n. 7. This Court should not be distracted by the Libby Claimants' belated attempt to use a settlement approval motion to re-argue positions that the Section 524(g) injunction is improper for settling insurers. The Asbestos PI Channeling Injunction is provided for in the Plan, not in the Settlement Agreement, and the Settlement Agreement does not alter the language of that Injunction. Nor does the Agreement alter the Plan language that makes clear that the Asbestos PI Channeling Injunction as applied to a Settled Asbestos Insurance Company is by definition no more extensive than what section 524(g) of the Bankruptcy Code allows. This is spelled out in the Plan's definition of Settled Asbestos Insurance Company, which states ". . . and *further provided*, for the avoidance of doubt, that an Asbestos Insurance Entity is a Settled Asbestos Insurance Company to the fullest extent, **but only to the extent, provided by section 524(g)** in respect of any claim that arises by reason of one of the activities enumerated in section 524(g)(4)(A)(ii)." Plan Section 1.1.209 (italics in original) (bold added).

With regard to the fraction of the Libby Claimants' Objection that does not re-hash Plan arguments, this Court has already rejected the assertion that the Libby Claimants have direct rights to Grace's insurance, and the Libby Claimants have submitted no evidence that provides a basis for the Court to reconsider that decision. Absent any such evidence, Libby Claimants simply lack valid grounds to raise the vast majority of their objections.

BNSF's objections also fail. Several of their objections address issues that the Debtors worked hard to resolve with BNSF during the confirmation process, and those resolutions are embodied in Plan modifications to BNSF's benefit -- and to which BNSF agreed. The rest of BNSF's objections raise phantom issues that simply do not exist under the language of the Settlement Agreement or applicable state law.

- 2 -

For these reasons as set forth in more detail below, the Court should deny the objections, grant the Motion and enter the proposed Order provided by the Debtors with the Motion.[3]

## ARGUMENT

### I.    THE LIBBY CLAIMANTS' OBJECTIONS FAIL.

1.    The Libby Claimants concede that their objections do not necessarily require rejection of the settlement. Libby Obj. at ¶ 13. Grace agrees. At most, the Libby Claimants' objections amount to critiques of specific elements of the settlement. Each of these critiques is without merit, for the following reasons.

### A.    This Court has Already Rejected Libby Claimants' Vested Rights Argument, With Good Reason.

2.    In July 2009, this Court rejected the assertion that a settlement of Grace insurance proceeds would deprive Libby Claimants of any rights. When Libby Claimants made this same argument in opposition to the Debtors' motion for approval of their settlement with Arrowood Insurance Company f/k/a Royal Insurance Company ("Royal"), this Court found:

> I think everybody's argument that indicates that the beneficiary of the policy, or the insured, pardon me, under the policy can't settle its own policies, and then figure out how to deal with who would have been the beneficiaries in another context, is not correct.

> The insurance stands for the insured. Yes, it is there for beneficiaries in that it gives certain entities a right to pursue insurance coverage, but the insured is the debtor. The debtor's the one who determines whether or not to continue that insurance, not the beneficiaries under that policy

> To the extent there may be vested rights, maybe there are. I don't have any way of knowing that there are or are not. But I don't think that's the basis for this determination.

---

[3] Although the Debtors have not provided declarations in support of the Motion, the Debtors will provide such declarations should the Court so request. The Debtors note that to date virtually all motions for approval of insurance settlements in Grace's Chapter 11 cases have been approved based on representations in the motions. It should also be noted that the Libby Claimants and BNSF have provided no declarations or other evidence in support of their objections, and that CNA is providing a declaration in support of the Settlement Agreement.

I'm not aware of, but for a very, I think, odd on its facts case that was cited, any indication by courts that say that the insureds are not permitted to settle policies with the insurance companies. I'm just simply not aware of it, and I can't understand how that could be the case, after all, they're the contracting parties.

So if they want to settle their own liability, it seems to me they've got the right to do that. Particularly in a bankruptcy case, where the proceeds of those policies are property of the estate.

(7/27/09 Tr. at 136-138).

3.     The Libby Claimants have provided no evidence and established no facts to support a reversal of this Court's July 2009 ruling.

4.     This Court's July 2009 ruling is in accord with well-established Third Circuit law. When Grace filed for bankruptcy, its rights to proceeds under its liability insurance policies became property of the estate. *See* 11 U.S.C. § 541; *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) ("It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate."); *In re Nutraquest, Inc.*, 434 F.3d 639, 647 n. 4 (3rd Cir. 2006) ("Nutraquest's right to its insurance-policy proceeds is property of the estate under 11 U.S.C. § 541(a).") (citations omitted); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) ("When an insurance policy provides coverage only to the debtor, courts will generally rule that the proceeds are property of the estate.").

5.     Because of this well-established principle of bankruptcy law, particularly in mass tort bankruptcies, courts have recognized the long-accepted rule that an insured has the power to settle coverage disputes. For example, in the asbestos context, one court found that "tort claimants have no 'legal or equitable interest' in the insurance policy in the first place, any more than they do in other property of the estate, so that their property rights are not impaired by a settlement of the debtor's claim to coverage." *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 978 (Bankr. N.D. Ill. 1991). Other courts have similarly rejected attacks on coverage settlements

- 4 -

in the mass torts context. *See, e.g., In re A.H. Robins Co.*, 88 B.R. 755, 762 (E.D. Va. 1988) (rejecting tort plaintiffs' claim that debtor and its insurer improperly settled coverage litigation and that the tort claimants were third party beneficiaries to that settlement).  And for this reason, the Libby Claimants' reliance on *Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Memorial Corp.)*, 382 B.R. 652 (Bankr. D. Del. 2008), is misplaced.  The *Santa Fe* court specifically recognized that a debtor facing mass tort liabilities in excess of available liability insurance coverage has an equitable interest in the proceeds, while a liquidating debtor in a case where the proceeds will be sufficient to satisfy all claims does not.  *Id.* at 688.

6.     Moreover, the Libby Claimants' "vested rights" theory is particularly suspect in bankruptcy cases involving mass tort claims. *See In re Dow Corning Corp.*, 198 B.R. 214 (Bankr. E.D. Mich. 1996).  In *Dow Corning*, a mass tort case, the court rejected almost the identical argument advanced by the Libby Claimants here, holding that a debtor may settle its insurance policies even if third parties assert claims to the policy proceeds.

7.     In *Dow Corning*, a tort claimants group objected to a debtor's proposed insurance settlement on the ground that "each one of its constituents [had] a property interest in the Debtor's insurance policies." *Id.* at 233.  While *Dow Corning* was decided under Michigan law, Michigan recognizes the same category of third-party insurance rights identified in *McLane*. *Id.* at 236-37.  The court noted that those rights have two aspects: "one which is derivative of the rights of the Debtor in its insurance policies and another which is independent and superior to the Debtor's rights." *Id.* at 242.  The court found, however, that "enforcement of both the derivative aspect and the independent aspect" was foreclosed by the court's determination "that the settlement of the Debtor's rights in the policies was fair and equitable and made in good faith."

K&E 18142018

*Id.* Moreover, the court found that the "interest amounts to no more than a mere expectation and does not rise to the level of a constitutionally protected property right." *Id.*

8.      Importantly, the *Dow Corning* court recognized the unacceptable consequences of accepting this type of "vested rights" theory in the mass tort context:

> ***To grant an injured party more than an expectation before receipt of judgment would inhibit legitimate settlements. An insurer would never be able to settle a coverage suit with its insured without impleading the known injured party.*** It is axiomatic that the more parties involved, the more difficult it is to settle. Even more troubling is the situation, which exists here, where at the time of the proposed settlement there are injured party claimants who are not yet known. ***If each unknown claimant could later sue the insurer and not be estopped by a fully litigated judgment against its insured or by a fair and equitable settlement, there would be no finality to litigation and no realistic likelihood of settlement.*** Therefore, it is not surprising that there appears to be no case where a fair and reasonable settlement entered into in good faith between an insurer and insured was subsequently undone by a court.

*Id.* at 242 (emphasis added).  In so holding, the *Dow Corning* court echoed the previous holding of the Second Circuit in *MacArthur Co. v. Johns-Manville Corp.* to the effect that a purported beneficiary of insurance proceeds cannot stand in the way of a debtor's reasonable settlement. 837 F.2d 89, 93 (2nd Cir. 1988).

9.      And, if the Libby Claimants were correct that the insurance proceeds are not property of the estate and cannot be resolved as between the debtor and the insurer, every section 524(g) plan of reorganization that transfers insurance rights to a trust would be improper.  In the asbestos claims context, section 524(g) further establishes the debtor's rights to settle its open liability insurance, as had previously been established by *MacArthur* and *Dow Corning* in analogous contexts, by permitting a section 524(g) injunction to extend to an insurer who may have direct liability to third parties where the insurer makes a contribution that is fair and equitable.  The beneficiary of the insurer's contribution must be the Trust, as the Trust is the entity prescribed by section 524(g) as responsible for paying Asbestos PI claims.

- 6 -

10.     Both the core right of a debtor to settle its insurance, and the framework of asbestos liability resolution created by section 524(g), would be rendered unworkable if a single claimant or constituency of claimants were able to demand that they be allocated a disproportionate portion of settlement funds.  Requiring segregation of the proceeds of products and non-products coverage, so that each tranche of coverage can be dedicated to specific claimants, would fly in the face of what section 524(g) was designed to achieve.

11.     Moreover, section 524(g) preempts any possible state law rights that claimants may have.  As this Court has recognized, "[i]nsurance policies covering asbestos liabilities are assets held by a debtor." *In re Federal-Mogul Global, Inc.*, 385 B.R. 560, 573-74 (Bankr. D. Del. 2008).  As insured asbestos liabilities are transferred to the trust, so should be the corresponding rights under the insurance policies that cover those liabilities. *Id.* at 574; *see also In re Babcock & Wilcox Co.*, 2004 WL 4945985, at *18 (Bankr. E.D. La. Nov. 9, 2004) ("The implementation of Section 524(g) provides support for the argument that Congress intended to permit the transfers contemplated by the Plan in asbestos cases . . .".  Not allowing the transfer of insurance proceeds to the trust would "gut the reorganization and channeling injunction provisions specifically provided for in § 524(g).") *Id.*  If the Bankruptcy Code recognized restrictions on the transfer of insurance rights to a section 524(g) trust, premised on those rights somehow not being within the debtor's estate, it would be exceedingly difficult for a debtor with substantial insurance assets to *ever* use section 524(g) or otherwise establish a trust.

12.     For this reason, where there have been challenges to the jurisdiction of bankruptcy courts to adjudicate issues relating to assignment of policy proceeds to section 524(g) trusts, it has consistently been found that the bankruptcy courts have *in rem* subject matter jurisdiction to adjudicate assignment issues because the proceeds of such policies are property of

- 7 -

the estate pursuant to Section 541 of the Bankruptcy Code. *See, e.g.*, *In re Kaiser Aluminum Corp.*, 343 B.R. 88, 94 (D. Del. 2006) (also noting that most cases that have found insurance policies to not be property of the estate have involved directors' and officers' liability policies, where there is an "issue of whether those policies truly benefit the estate, a debate which does not exist in the context of general or product liability insurance policies."). The same holds true here -- the policy proceeds are property of the estate and Grace has the right to enter into a settlement with regard to those proceeds.

13.    The Libby Claimants' notion that the proceeds of the CNA policies are not property of the estate would turn these insurance policies on their head. Grace has entered into five previous settlement agreements with CNA. Grace and Grace alone has obtained payments from CNA (and other Grace liability insurers). Grace has entered into dozens of settlements with other insurance carriers, all of which were properly entered into by Grace.

14.    Although the Libby Claimants have not demonstrated that Montana law governs, they suggest that under Montana law, they would be entitled to a direct right of action against CNA, which somehow gives them a right to object to the settlement. Again they are wrong. Montana law recognizes a right of direct action against a defendant's insurance carrier only in very limited circumstances, none of which applies to the Libby claims. As a general rule in Montana, "a direct action against an insurer does not lie until the liability of the insured has been established," unless the direct action has been "expressly sanctioned by the legislature and not merely inferentially deduced." *Ulrigg v. Jones*, 907 P.2d 937, 943 (Mont. 1995) (citations omitted). Here, the Libby Claimants have not "established" Grace's liability to them on their claims. There is no judgment against Grace fixing the amount of the Libby Claimants' claims.

K&E 18142018

15.     The Montana automobile accident cases on which the Libby Claimants rely do not support a right of direct action here.[4] In *McLane v. Farmers Ins. Exch.*, 432 P.2d 98 (Mont. 1967), the plaintiff obtained a judgment against the defendant-policyholder and sought to collect on that judgment from the policyholder's insurance. The insurance carrier claimed that the insurance policy had been rescinded because of policyholder misrepresentations on the insurance application. But the Montana Supreme Court found that the carrier had waived its right to rescind the policy *ab initio* because it had not immediately exercised that right upon discovery of the policyholder's untruths and had accepted the policyholder's premiums. Alternatively, if the policy was voidable, the Montana Supreme Court determined that the plaintiff still prevailed because his "rights" had "vested either at the time of the accident or at the time of the implied waiver of the right to rescind." *Id.* at 100. "Exactly which of the two possible times" the rights vested, "this court need not decide." *Id.*

16.     The *McLane* decision cannot be read to support the Libby Claimants' assertion of "vested" or direct action rights. *McLane*, after all, was an auto accident case, and the rights of auto accident victims vis-à-vis auto insurance policies are based on a "public policy," drawn from the Montana Code, to protect innocent victims of auto accidents. *See DuBray v. Farmers Ins. Exch.*, 36 P.3d 897, 900 (Mont. 2001) (citing *Ridley v. Guaranty Nat'l Ins. Co.*, 951 P.2d 987, 993 (Mont. 1997)). Moreover, since *McLane*, no subsequent decision of the Montana Supreme Court has ever held that a victim's right to insurance proceeds "vests" at the time of the

---

[4] The Libby Claimants fare no better with their non-Montana cases. In *Baez v. Medical Liability Mutual Ins. Co.*, 136 B.R. 65 (S.D.N.Y. 1992), the plaintiff obtained a judgment against a doctor on a medical malpractice claim and the court held that the plaintiff had a right to the proceeds of the doctor's medical malpractice insurance policy to the extent necessary to satisfy the judgment. *See id.* at 68. And in *In re Allied Products Corp.*, 288 B.R. 533 (N.D. Ill. 2003), the Court's ruling was premised on an Illinois statute permitting an injured party to proceed directly against an insurance carrier if the insured is insolvent and the injured party has obtained a judgment against the insured. *See id.* at 537. Thus in both cases, the key point is that an injured party has a right to proceeds of a tortfeasor's insurance policy *only* if the injured party's claim has matured to a *judgment* against the insured debtor.

- 9 -

accident -- rather than at the time the victim obtains a judgment against the tortfeasor. Indeed, the Montana Supreme Court likely abrogated that part of the *McLane* opinion when it stated in *Ulrigg* that, absent legislative sanction, a direct action against a carrier arises when the liability of the policyholder is established, not at the time of the accident. *See Ulrigg*, 907 P.2d at 943.

17.    *J.G. Link & Co. v. Cont'l Cas. Co.*, 470 F.2d 1133 (9th Cir. 1972), also does not support the Libby Claimants' "vested right" theory. In *Link*, the Ninth Circuit, interpreting Montana law, allowed a third-party claimant direct recovery based on language in the policy that permitted a direct action once the policyholder's liability had been fixed by a post-trial judgment or written agreement. *See id.* at 1138-39. *Link* does not apply here because the Libby Claimants have no post-trial judgment or written agreement establishing Grace's liability to them.

18.    In sum, the Libby Claimants have provided no evidence and can find no basis under the law that should cause this Court to re-examine its prior ruling that the Libby Claimants have no "vested right" in the non-products coverage or a right of direct action against Grace's carriers entitling them to defeat Grace's settlement of CNA's coverage.

**B.    The Libby Claimants' Objections to the Section 524(g) Injunction Have Already Been Extensively Litigated in the Confirmation Hearing.**

19.    In Sections B and C of their Objection, the Libby Claimants re-argue objections to the scope of the Asbestos PI Channeling Injunction that they already extensively litigated during the confirmation hearing. Specifically, at the January 4, 2010 oral argument, the Libby Claimants asserted precisely the same argument that they seek to litigate again now -- specifically arguing that the Asbestos PI Channeling Injunction in the Plan is "unclear" about whether it would enjoin the Libby Claimants' "independent claims" against Grace's insurers "for their own allegedly tortious conduct in relation to the Libby claimants." January 4, 2010 Conf. Hrg. Tr. at 81 (Ex. A to Libby Claimants' Obj.). According to the Libby Claimants on January

- 10 -

4, 2010, because the Asbestos PI Channeling Injunction does not spell out whether the allegedly independent claims are within the injunction's scope, "we would ask you to include a clarification that says that. To the extent that there's any independent tortious conduct as opposed to the issuance of insurance policies which is obviously enjoined, but if there's any independent tortious conduct by any party, including an insurer, the pursuit of those claims are not enjoined by the channeling injunction." *Id.* at 81-82 (Ex. A to Libby Claimants' Obj.)

20.    There is simply no basis to re-litigate these issues now. The language of the Asbestos PI Channeling Injunction is set forth in the Plan, not in the Settlement Agreement. Any issues about the clarity of that language were issues for confirmation, not for approval of this Motion. The Settlement Agreement does not change the language of the Asbestos PI Channeling Injunction; it simply states that after entry of the settlement approval order, "Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and the CNA Companies as Settled Asbestos Insurance Companies, with respect to the Subject Policies on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization." Settlement Agreement ¶ V.C.

21.    Further, the Plan's definition of Settled Asbestos Insurance Companies fully forecloses the Libby Claimants' purported concerns. The Plan makes clear that the protection of the Asbestos PI Channeling Injunction granted to CNA (and other settling insurers) is co-extensive with the reach of section 524(g) and no further. This is made clear in the last phrase of the Plan's definition of Settled Asbestos Insurance Company, which provides ". . . and *further provided*, for the avoidance of doubt, that an Asbestos Insurance Entity is a Settled Asbestos Insurance Company to the fullest extent, but only to the extent, provided by section 524(g) in

- 11 -

respect of any claim that arises by reason of one of the activities enumerated in section 524(g)(4)(A)(ii)." Plan section 1.1.209 (italics in original).

22.    In the future, claims with a wide variety of fact patterns that the Libby Claimants categorize as "Insurer Wrong-Doing Claims" might be asserted against CNA, including their hypothetical claim about a CNA employee flipping a fan switch and spraying asbestos. The Plan does not seek to identify and ask the Court to rule on every conceivable hypothetical now. Rather, the Plan provides for an injunction precisely consistent with the language of section 524(g) of the Bankruptcy Code and defers the necessity for a ruling on the scope of the statute as applied to any specific claim until a later date, when such a ruling can be based upon a concrete set of facts and a full evidentiary record -- all of which fully preserves Libby Claimants' due process rights and all of which are fully consistent with myriad other section 524(g) plans confirmed by this Court and others.

23.    *Travelers v. Bailey*, 129 S. Ct. 2195 (2009), on which the Libby Claimants rely (*see* Libby Claimants' Obj. at 26) is distinguishable. In *Travelers*, the non-settled insurer that asserted an "independent" claim against Travelers had not participated in the 1986 Manville injunction proceedings or known of its potential future claims against Travelers at that time. *In re Johns-Manville Corp.*, 600 F.3d 135, 143 (2nd Cir. 2010). In contrast, the Libby Claimants are well aware of their claims, fully participated in the confirmation proceedings, and exhaustively litigated their objections to the Asbestos PI Channeling Injunction.

24.    The Libby Claimants also assert that each component of the consideration provided by CNA in exchange for the Asbestos PI Channeling Injunction's protection must be itemized and separately valued. *See* Libby Claimants' Obj. at 20-24. The Debtors submit that this is not and never has been the standard for approval of a settlement in a Chapter 11 case,

- 12 -

much less a case such as this one that implicates section 524(g).  In particular, it is simply not possible to place values on individual components of this highly complex settlement.  Rather, the settlement must be viewed in the same light in which it was negotiated:  as a whole package.

25.      In addition to contributing $84 million, CNA is relinquishing (a) all objections to confirmation of the Plan, (b) all claims against Grace for retrospective premiums under all pre-June 30, 1985 policies, (c) all claims for defense and indemnity for Asbestos-Related Claims under pre-petition settlement agreements with Grace and (d) all rights to assert any Indirect PI Trust Claims against the Asbestos PI Trust should CNA be held liable to any third parties for personal injuries caused by exposure to asbestos-containing products for which Grace is alleged to be liable.  Each of these components is highly valuable to the Debtors' estates -- and yet it is neither feasible, nor legally required, that each element of consideration be "priced" separately, as Libby Claimants suggest.  *See Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th. Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) (When evaluating the fairness of a settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

26.      Moreover, CNA and Grace have litigated extensively for decades, and the five prior settlement agreements between Grace and CNA resolved some, but not all, of their disputes.  At the time of Grace's bankruptcy filing in 2001, a dispute was pending between Grace and CNA in the United States District Court for the Southern District of New York captioned *Continental Casualty Co. v. W. R. Grace & Co., et al.*, 00 CIV 4524, in which Grace asserted and CNA disputed that coverage under the 1973-1985 primary policies was available for premises asbestos bodily injury claims.  Although portions of the *Continental Casualty* action were settled in 2004, that settlement agreement did not resolve Grace's assertions of coverage for

- 13 -

Libby personal injury claims under the premises coverage of the primary policies and indeed specifically noted that the parties reserved rights to dispute whether coverage is available for the Libby personal injury claims under the 1973-1985 primary policies. In light of the many years of litigation between Grace and CNA and still-unresolved issues, a resolution of all disputes between Grace and CNA is, in and of itself, highly valuable to both parties.

27.     In this factual context, the *Congoleum* and *Quigley* opinions cited by the Libby Claimants (*see* Obj. at 20-21) do not support the notion that CNA's $84 million in cash and substantial non-monetary contributions are inadequate.   In *In re Congoleum Corp.*, 362 B.R. 167 (Bankr. D.N.J. 2007), the bankruptcy court specifically recognized that courts have not defined what "fair and equitable" means in the Section 524(g) context, and then further noted that finding that an injunction is fair and equitable is closely tied to the overall value being contributed to the plan by debtors and other contributors. *Id.* at 179-80. *Congoleum* says nothing about the appropriate way to evaluate a settlement contribution being made by a single non-debtor, let alone an insurer in the context where all insurance proceeds are being transferred to the trust. *In re Quigley Co.,* 437 B.R. 102 (Bankr. S.D.N.Y. 2010) more directly addresses the contributions of a single non-debtor. The *Quigley* court was concerned, however, with the contributions of the debtor's parent, Pfizer, and engaged in a complex analysis, unique to the facts related to Quigley and Pfizer, of Pfizer's likely asbestos liability outside of a Quigley bankruptcy (*id.* at 134-140) -- an analysis that simply does not apply to evaluating the monetary and non-monetary contributions of an insurer pursuant to a heavily negotiated settlement agreement.

**C.     The Settlement's Sale Provisions Are Appropriate and the Motion Complies with  Applicable Local Rules.**

28.     The Libby Claimants' objection to the Debtors' request to "sell" the policies to CNA is a red herring.  The sale provisions in the Settlement are not a "sham."  Rather, the sale of

- 14 -

the CNA policies by Grace to CNA adds another layer of protection for both Grace and CNA to ensure that CNA does not receive any additional coverage claims after the Settlement is approved and implemented and Grace does not face any consequences (in the form of retrospective premiums or otherwise) from such post-settlement claims.

29.    While the Motion may not be structured as a traditional sale motion under Local Rule 6004-1, sales of insurance policies are both permissible and non-traditional, as bankruptcy courts have recognized. *See, e.g., Dow Corning*, 198 B.R. at 245 (bankruptcy court has power to order releases of tort claimants' alleged interests in order to effectuate a sale of insurance policies free and clear of their interests); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2nd Cir. 1988) (recognizing bankruptcy court statutory and equitable authority to permit sale of debtor's insurance policies free and clear of any interest other than the estate's). The key is that the Motion clearly states the terms of the sale that are applicable to this transaction, and the Libby Claimants plainly received notice of the proposed settlement and sale.

30.    The sale request therefore complies with the applicable provisions of Section 6004-1 of the Local Rules. The Motion plainly states that the settlement for which approval is requested also constitutes a sale of the policies upon the Asbestos PI Trust's receipt of the Initial Payment. As required by the Local Rules, the Settlement Agreement which constitutes the proposed sale agreement and the form of Order approving such sale are attached to the Motion.

31.    While the Motion does not contain a specific laundry list of the Local Rule 6004-1 requirements, the Motion outlines the key terms of the sale as contemplated by the Local Rule. For example, the Motion explicitly describes the terms of a private settlement with CNA, rather than stating whether "an auction is contemplated" -- which would make no sense for a settlement and sale of insurance policies, where the only potential buyer is the insurance company in the

- 15 -

context of a settlement and release. Likewise, although the Motion does not state that the Debtors "agreed not to solicit competing offers" or agreed to "otherwise limit shopping of the property," those facts are obvious. This is a settlement by the Debtors with CNA regarding the latter's obligations under CNA Insurance Policies owned by the Debtors. As part of that agreement, the Policies owned by the Debtors will be sold back to CNA. CNA is clearly the only party with whom the Debtors did or could negotiate this settlement and sale. As for the deadlines with respect to closing and a "good faith deposit," the Motion clearly provides that the sale will occur upon the Asbestos PI Trust's receipt of the Initial Payment and the Motion outlines the consideration to be paid and the timing of same.

32.     Because the Libby Claimants have not identified any plausible purchaser (including themselves) other than CNA, requiring bidding procedures and an auction would be meaningless acts.

C.     **The Settlement Does Not Release the Libby Claimants' Purported Claims Against CNA.**

33.     The Libby Claimants' final objection is that a settlement agreement between two parties -- Grace and CNA -- somehow releases the Libby Claimants' own claims against CNA.

34.     The Settlement Agreement plainly releases only claims of Grace (on behalf of itself and to the extent that it has the power to bind them, the Grace Parties, as defined in ¶ I.FF) and the Trust, and not claims of the Libby Claimants, whom Grace has no power to bind. See Releases, Section III.A and III.B of Settlement Agreement.

35.     Nevertheless, if the Court finds that it would be helpful to add to the Approval Order the language requested by the Libby Claimants in paragraph 64 of their Objection, the Debtors would have no objection.

II.     **BNSF'S OBJECTIONS FAIL.**

- 16 -

36.    Each of BNSF's four objections to the Settlement Agreement is without merit.

37.    *First*, BNSF complains that the Settlement Agreement somehow eliminates BNSF's rights to policies for which BNSF (not Grace) is the named insured. The Settlement Agreement could not be clearer on this score. It specifically provides that the term Subject Policies "does not include policies, or portions of policies, issued to BNSF by any of the CNA Companies, or issued to BNSF and subscribed to by any of the CNA Companies." Settlement Agreement ¶ I.PP. And, as BNSF well knows, in October 2009 the Debtors specifically agreed to Plan modifications that were requested by BNSF to clarify that BNSF's rights to its own policies are preserved. *See* Modified Sections 8.2.2 (Reservations from Asbestos PI Channeling Injunction) and 8.4.1 (Asbestos Insurance Entity Injunction), set forth in Notice of Second Set of Modifications to Joint Plan of Reorganization, filed October 12, 2009 (Dkt. No. 23474). The modification to the Asbestos PI Channeling Injunction provides:

> Notwithstanding anything to the contrary in Section 8.2.1 above, the Asbestos PI Channeling Injunction issued pursuant to Section 8.2.1 shall not enjoin:
>
> . . .
>
> (e)    BNSF from asserting any claim (as that term is defined in Bankruptcy Code § 101(5)) for insurance coverage as an insured or an additional insured against a Settled Asbestos Insurance Company under and only under an insurance policy (or part of a policy) that is not identified as being the subject of an Asbestos Insurance Settlement Agreement in Exhibit 5 of the Exhibit Book or is not subject to protection under the terms of the Debtors' Settlement Agreement with the Royal Parties, dated June 17, 2009 (the "Arrowood Rule 9019 Settlement Agreement"). To avoid any doubt, BNSF shall be enjoined from asserting any claim against any of the policies identified in Exhibits 2 and 3 of the Arrowood Rule 9019 Settlement Agreement.

*Id.* at 8.2.2(e).

38.    The modification to the Asbestos Insurance Entity Injunction similarly made it clear that BNSF is not enjoined from asserting claims for insurance coverage "as an insured or an

- 17 -

additional insured against any Asbestos Insurance Entity that is not identified on Exhibit 5 of the Exhibit Book." *Id.* at 8.4.1.3(a).

39.     BNSF not only requested these modifications, it also stated on the record that the above-described Plan modifications resolved BNSF's objections to the scope of the Asbestos PI Channeling Injunction and to "the propriety of entering the injunction on behalf of the entities who were getting the protection." January 5, 2010 Conf. Hrg. Tr. at 76-77 ("BNSF does not object to the Plan as modified in October of 2009 with relation to the 524(g) injunction.")

40.     Nonetheless, if BNSF truly believes that the Debtors need to state this already crystal clear proposition for a *third* time, the Debtors have no objection to identifying the specific BNSF policies in the Approval Order and stating that the Settlement Agreement in no way affects BNSF's rights to such policies.

41.     *Second*, BNSF has no standing to complain about the scope of the protection afforded to CNA pursuant to the Asbestos PI Channeling Injunction.  BNSF has no claims against CNA (save potential claims for proceeds of its own policies -- which are specifically carved out of the Asbestos PI Channeling Injunction).

42.     *Third*, BNSF has no basis to complain about the impact of a co-defendant's settlement of tort liability.  A defendant is free to settle its liability to a plaintiff and a co-defendant has no right to complain about the amount of the settlement or the impact of the settlement on the apportionment of fault.  Tellingly, BNSF has provided no Montana case law or case law from any other jurisdictions in support of its arguments.

43.     *Fourth*, BNSF and Grace have already resolved BNSF's assertion of rights to Grace's insurance policies.  BNSF conceded such rights, in exchange for the Plan modifications described above that preserved BNSF's rights to its own policies.  Because these issues have

already been resolved, BNSF's putative objection on this score must be nothing more than a protective objection designed to preserve its positions in the event that the Plan modifications provided by Grace to BNSF are not approved.

44.     On the merits, BNSF has provided no evidence showing that it is an additional insured under Grace's policies -- with good reason.  There is no language in Grace's policies that make BNSF an additional insured.  The policies merely provide that Grace will be indemnified for certain contractually assumed liabilities.  In the context of ruling on the Debtors' motion to approve the Royal Insurance settlement, this Court rejected BNSF's contentions that such provisions make BNSF an additional insured under Grace's policies.[5]

WHEREFORE, for the reasons set forth in this Reply and in the Debtors' Motion, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

---

[5] As the Court recognized at the July 27, 2009 hearing:

> Well, what the endorsements do is say that the insurance company will pick up the debtors' indemnity.  It doesn't give BNSF any rights under the policies. (7/27/09 Hrg. Tr. at 82).

> I don't see how BNSF has rights under these insurance policies.  It has is a collection action that could be brought against the Debtor [under the indemnity agreement between the Debtor and BNSF], and the debtor in turn can present its claims over to Royal. (*Id.* at 128).

> To the extent that BNSF is contending that it is an additional insured, I cannot see that it's an additional insured. . . . The additional insurance that the debtor purchased was for the benefit of the debtor, to the extent that it ever faced a contractual obligation to BNSF. (*Id.* at 138).

- 19 -

Dated:  January 3, 2011          KIRKLAND & ELLIS LLP
John Donley
Lisa G. Esayian
Adam Paul
300 N. LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession