# EXHIBIT Q

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| ACandS, Inc. | * | Case No: 02-12687 (JKF) |
| | * | |
| In re: | * | |
| Specialty Products Holding Corporation | * | Case No:  10-11780 (JKF) |
| | * | |
| In re: | * | |
| Kaiser Aluminum Corporation | * | Case No:  02-10429 (JKF) |
| | * | |
| In re: | * | |
| Owens Corning | * | Case No:  00-03837 (JKF) |
| | * | |
| In re: | * | |
| USG Corporation | * | Case No:  01-02094 (JKF) |
| | * | |
| ACandS ASBESTOS SETTLEMENT TRUST; KAISER ALUMINUM & CHEMICAL CORPORATION ASBESTOS PERSONAL INJURY TRUST; OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST; and UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST (the "**Trusts**"); | * * * * * | |
| and | * | |
| TRUST ADVISORY COMMITTEE FOR THE ACANDS ASBESTOS SETTLEMENT TRUST; TRUST ADVISORY COMMITTEE FOR THE KAISER ALUMINUM & CHEMICAL CORPORATION ASBESTOS PERSONAL | * * * | |

{D0188987.1 }

INJURY TRUST; TRUST ADVISORY
COMMITTEE FOR THE OWENS                              *
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and TRUST                     *
ADVISORY COMMITTEE FOR THE
UNITED STATES GYPSUM ASBESTOS                        *
PERSONAL INJURY SETTLEMENT
TRUST (the "**TACs**");                              *

and                                                  *

HON. DEAN M. TRAFELET (RET.), THE                    *
LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS AGAINST THE                         *
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT                           *
TRUST (the "**Futures Representative**")             *          Adv. Pro. No:

     Plaintiffs                          *

v.                                                   *

HARTFORD ACCIDENT AND                                *
INDEMNITY CO., FIRST STATE
INSURANCE CO., NEW ENGLAND                           *
INSURANCE COMPANY, NATIONAL
UNION FIRE COMPANY OF                                *
PITTSBURGH, PA, AMERICAN HOME
ASSURANCE CO., GARLOCK SEALING                       *
TECHNOLOGIES, LLC., SPECIALTY
PRODUCTS HOLDING CORP.,                              *
DELAWARE CLAIMS PROCESSING
FACILITY, LLC, and VERUS CLAIMS                      *
SERVICES, LLC                                        *

     Defendants                          *

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

    The ACandS Asbestos Settlement Trust, the Kaiser Aluminum & Chemical Corporation

Asbestos Personal Injury Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust,

and the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**Trusts**"); the

Trust Advisory Committees for the ACandS Asbestos Settlement Trust, the Kaiser Aluminum &

Chemical Corporation Asbestos Personal Injury Trust, the Owens Corning/Fibreboard Asbestos

Personal Injury Trust, and the United States Gypsum Asbestos Personal Injury Settlement Trust

(the "**TACs**"); and Hon. Dean M. Trafelet (Ret.), the Legal Representative for Future Claimants

Against the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**Futures**

**Representative**") (collectively, "**Plaintiffs**") by and through their undersigned counsel, state:

## SUMMARY OF ACTION

1.      This is an action for declaratory and injunctive relief pursuant to Rules 7001(7),

7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and

11 U.S.C. § 105, seeking construction and interpretation of the Plans of Reorganization in the

captioned cases (the "**Plans**") and the corresponding Trust Distribution Procedures ("**TDP**")

pursuant to which the Trusts operate, and seeking also an injunction barring Defendants from

seeking certain discovery from the Trusts in excess of that permitted by the Plans and TDPs.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to hear the matters set forth in this Adversary

Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

3.      In addition, pursuant to its Orders confirming the Plans and provisions in the

Plans themselves, this Court has retained exclusive jurisdiction post-confirmation to "[i]ssue

injunctions, enforce the injunctions contained in the Plan and Confirmation Order, enter and

implement other orders or take such other actions as may be necessary or appropriate to restrain

interference by any Entity with consummation, implementation, or enforcement of the Plan or

Confirmation Order",[1] and to "[d]etermine any other matters that may arise in connection with or

relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument,

---

[1] Joint Plan of Reorganization of USG Corp. at Art. X.A.9, *In re USG Corp.*, No. 01-2094
(Bankr. D. Del. Mar. 27, 2006) [Dkt. No. 10709].

release or other agreement or document entered into or delivered in connection with the Plan, the

Disclosure Statement, or the Confirmation Order."[2]

4.      This Adversary Proceeding constitutes a core proceeding under 28 U.S.C.

§ 157(b)(2)(A), (L), and (O).

5.      This Adversary Proceeding has been brought in accordance with Bankruptcy

Rules 7001(7), 7001(9) and 7065.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

## PARTIES

7.      Plaintiff ACandS Asbestos Settlement Trust is a Delaware statutory trust with its

principal place of business located in New Jersey.

8.      Plaintiff Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury

Trust is a Delaware statutory trust with its principal place of business located in Delaware.

9.      Plaintiff Owens Corning Fibreboard/Asbestos Personal Injury Trust is a Delaware

statutory trust with its principal place of business located in Delaware.

10.     Plaintiff United States Gypsum Asbestos Personal Injury Settlement Trust is a

Delaware statutory trust with its principal place of business located in Delaware.

---

[2] Second Amended Joint Plan of Reorganization at Art. XIII.l & XIII.n, *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Sept. 7, 2005) [Dkt. No. 7312]. *See also* Order Confirming ACandS's Second Plan of Reorganization, *In re ACandS, Inc.*, No. 02-12637 (Bankr. D. Del. May 8, 2008) [Dkt. No. 3309] and Second Plan of Reorganization of ACandS Inc. at 13.3(d) & 13.3(e), *In re ACandS, Inc.*, No. 02-12637 (Bankr. D. Del. Nov. 19, 2007) [Dkt. No. 3109]; Order Confirming the Sixth Amended Joint Plan of Reorganization at 57-58, *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. Sept. 26, 2006) [Dkt. No. 19366] and Sixth Amended Joint Plan of Reorganization at 13.1(a) & (l), *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. July 10, 2006) [Dkt. No. 18339, Appendix A]; Order Confirming the First Amended Joint Plan of Reorganization at 27-28, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. June 15, 2006) [Dkt. No. 11688] and First Amended Chapter 11 Plan of Reorganization of USG Corp. at Art. X.A.9, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. Mar. 27, 2006) [Dkt. No. 10810].

11.     Plaintiff Trust Advisory Committee for the ACandS Asbestos Settlement Trust is a committee created pursuant to the trust agreement in that case.

12.     Plaintiff Trust Advisory Committee for the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust is a committee created pursuant to the trust agreement in that case.

13.     Plaintiff Trust Advisory Committee for the Owens Corning/Fibreboard Asbestos Personal Injury Trust is a committee created pursuant to the trust agreement in that case.

14.     Plaintiff Trust Advisory Committee for the United States Gypsum Asbestos Personal Injury Settlement Trust is a committee created pursuant to the trust agreement in that case.

15.     Plaintiff Hon. Dean M. Trafelet (Ret.) is the Legal Representative for Future Claimants Against the United States Gypsum Asbestos Personal Injury Settlement Trust.

16.     Defendant Hartford Accident and Indemnity Company is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

17.     Defendant First State Insurance Company is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in the Commonwealth of Massachusetts.

18.     Defendant New England Insurance Company is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in the Commonwealth of Massachusetts.

19.    Defendant National Union Fire Company of Pittsburgh, Pennsylvania is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the State of New York.

20.    Defendant American Home Assurance Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York.

21.    Defendant Garlock Sealing Technologies, LLC ("**Garlock**") is a limited liability company organized and existing under the laws of North Carolina with its principal place of business in the State of New York. On or about June 5, 2010, Garlock filed a petition for chapter 11 bankruptcy in the Bankruptcy Court for the Western District of North Carolina.

22.    Defendant Specialty Products Holding Corporation ("**Specialty Products**") is a corporation organized and existing under the laws of Ohio with its principal place of business in the State of Ohio. On or about May 31, 2010, Specialty Products filed a petition for chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware.

23.    Defendant Delaware Claims Processing Facility, LLC ("**DCPF**") is a limited liability corporation organized and existing under the laws of Delaware with a principal place of business in Delaware. DCPF is the claims processing facility for the Owens Corning Fibreboard Asbestos Personal Injury Trust and the United States Gypsum Asbestos Personal Injury Settlement Trust.

24.    Defendant Verus Claims Services, LLC ("**Verus**") is a limited liability company organized and existing under the laws of New Jersey with a principal place of business in New Jersey. Verus is the claims processing facility for the ACandS Asbestos Settlement Trust and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust.

**BACKGROUND**

25.     Over the past several months, and in separate actions around the country, insurers and certain asbestos defendants that have recently filed for chapter 11 bankruptcy have launched massive and intrusive discovery efforts against asbestos personal injury trusts, including the Plaintiff Trusts here, seeking vast amounts of information concerning claims submissions made by claimants to the trusts. Some of these discovery requests seek the complete records for hundreds of thousands of claimants, demanding every scrap of electronic information maintained by dozens of asbestos personal injury trusts. Not only are these discovery requests extraordinarily burdensome and overbroad, they are part of an improper and concerted effort to use the trusts to obtain discovery that no tort system participant would have access to, distorting the tort system rights and obligations that the Trusts were carefully designed to leave intact as closely as possible.

26.     In this action, the Plaintiff Trusts, all of whom are subject to the continuing jurisdiction of this Court, together with the TACs and the FCR, seek to resolve in one jurisdiction, in one action, the proper scope of discovery of their claimant information and data that the Defendants have sought, and the protections that the Trusts may properly and consistently invoke in the event of future discovery efforts.

**I.      The Trusts Were Created to Pay Asbestos Claims Against Specific Bankrupt Entities While Affecting the Tort System as Little as Possible**

27.     This Court presided over the bankruptcies that resulted in the creation of each of the Plaintiff Trusts, and reviewed and confirmed the Plans and related documents that established and govern them. The Court is intimately familiar with the legal framework within which the Trusts were created and well-versed in the background and rationale that supports each of the

carefully crafted provisions included in the TDP that govern the Trusts after they begin functioning. A summary is presented here.

28.    Each of the Trusts was created pursuant to section 524(g) of the Bankruptcy Code, a provision enacted by Congress specifically to deal with the complex and unique issues raised by asbestos-driven bankruptcies. When a section 524(g) plan is confirmed, present and future asbestos claims against the reorganized debtor are channeled to a post-confirmation trust that considers and resolves the claims pursuant to settlement criteria approved by the Court as part of a plan of reorganization. In return for being freed of such claims, the debtors and others fund the trust, and the asbestos claimants have recourse to the assets of the trust.

29.    The Trusts exist solely to resolve the asbestos liabilities that are channeled to them. The TDP effectuate the resolution of the debtors' asbestos liability by providing a mechanism for paying channeled asbestos claims. The primary objective of the TDP is to distribute money fairly and equitably to all claimants, present and future.

30.    To achieve this objective, the TDP resolve those claims that satisfy the TDP's medical and exposure criteria in lieu of litigating them to judgment in the tort system. The criteria are designed to approximate the settlement process of the debtor and asbestos defendants generally in the tort system.

31.    The TDP were designed and intended to leave state tort law where they found it, affecting state tort law rights as little as possible while accomplishing the goals of the Plans.

32.    The TDP do not alter the ordinary discovery practices applicable in individual asbestos claims in the tort system.

33.    The TDP, for example, do not prohibit an asbestos defendant in the tort system from deposing a plaintiff and asking the plaintiff whether it has filed a claim against any Trust, and what evidence he or she submitted in support of that claim.

34.    The TDP also do not prohibit an asbestos defendant from obtaining such evidence from a Trust, but contain provisions intended to preserve the confidentiality of the submissions. *See* ACandS, Inc. Asbestos Settlement TDP § 6.5 (Aug. 19, 2008); Kaiser Aluminum & Chemical Corporation Third Amended Asbestos TDP § 6.5 (Nov. 20, 2007); Owens Corning/Fibreboard Asbestos Personal Injury TDP § 6.5 (Feb. 2, 2010); United States Gypsum Asbestos Personal Injury Settlement TDP § 6.5 (Mar. 29, 2010). Although these provisions contain some minor variations, they are largely uniform.

35.    For example, the confidentiality provision included in the Owens Corning TDP provides as follows:

> **6.5 Confidentiality of Claimants' Submissions.** All submissions to the PI Trust by a holder of a PI Trust Claim or a proof of claim form and materials related thereto shall be treated as made in the course of settlement discussions between the holder and the PI Trust and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions. The PI Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only, with the permission of the holder, to another trust established for the benefit of asbestos personal injury claimants pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or other applicable law, to such other persons as authorized by the holder, or in response to a valid subpoena of such materials issued by the Bankruptcy Court. Furthermore, the PI Trust shall provide counsel for the holder a copy of any such subpoena immediately upon being served. The PI Trust shall on its own initiative or upon request of the claimant in question take all necessary and appropriate steps to preserve said privilege before the Bankruptcy Court and before those courts having appellate jurisdiction related thereto. Notwithstanding anything in the foregoing to the contrary, with the consent of the TAC and the Future Claimants' Representative, the PI Trust may, in specific limited instances, disclose information, documents, or other materials reasonably necessary in the PI Trust's judgment to preserve, litigate, resolve, or settle coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement within the OC Asbestos Personal Injury Liability

Insurance Assets; provided, however, that the PI Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents and materials, and prior to the disclosure of such information, documents or materials to a third party, the PI Trust shall receive from such third party a written agreement of confidentiality that (a) ensures that the information, documents and materials provided by the PI Trust shall be used solely by the receiving party for the purpose stated in the agreement and (b) prohibits any other use or further dissemination of the information, documents and materials by the third party.

Owens Corning Asbestos Personal Injury TDP § 6.5 (Feb. 2, 2010 rev.).

36.     Consistent with the overall objective of the TDP to minimize any impact on state tort law rights and obligations, the TDP's confidentiality provisions were expressly designed to treat claimant submissions in the same manner as a solvent settling co-defendant would treat settlement information, and to provide the same protections for those materials as such a settling co-defendant would expect.

## II.     *The Trusts Are Being Subjected to Improper and Abusive Discovery That Violates the Purpose of the Trusts and the Confidentiality Provisions of the TDP*

37.     As set forth below, attempts to obtain massive quantities of claimant information from the Trusts have become increasingly frequent over the past several months, threatening the purpose for which the Trusts were created, contravening the provisions that control the Trusts' functions and consuming Trust resources that should be directed to paying claimants.

38.     These requests are made by, among others, other insolvent asbestos defendants that are attempting to reorganize, creditors' committees in such asbestos bankruptcies, and insurers. These requests aim to turn the Trusts into clearing houses for information regarding the hundreds of thousands of claimants that submit claims to the Trusts.

39.     In May of 2010, in connection with insurance coverage litigation between Federal-Mogul Products, Inc./Federal-Mogul U.S. Asbestos Bodily Injury Trust and several

insurers in New Jersey state court,[3] the insurers served a subpoena on Verus, the claims

processing facility for several asbestos trusts, including the ACandS Asbestos Settlement Trust

and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust.    The

subpoena noticed a deposition and sought all documents submitted to Verus or any section

524(g) trust by more than 100,000 asbestos claimants, including all documents and

communications regarding the resolution and/or allowance decision regarding those asbestos

claims, including any documents identifying a claim deficiency, and any printable claims forms,

computer data and/or databases identifying, reflecting, or in any way relating, to a claim

submitted to Verus or any trust by those asbestos claimants.    The insurers contend that this

information would allow them to uncover information regarding claims for which the insured is

seeking coverage, and would permit them to locate inconsistent claims.

    40.    In July of 2010, the Official Committee of Unsecured Creditors in the *Motors Liquidation Co.* bankruptcy case moved for leave to serve subpoenas compelling the production

of documents by the claims processing facilities for seven asbestos trusts, including "any and all

claims forms and other filings submitted to each of the trusts by the plaintiffs in each of the pre-

petition asbestos personal injury actions against Old GM in which the plaintiffs alleged they

suffered from mesothelioma" and "the amounts paid by each of the Trusts to the plaintiffs in the

Mesothelioma Cases."[4]    The request encompassed the seven trusts' claim files and settlement

---

[3] Subpoena, *Federal-Mogul Prods., Inc. v AIG*, No. MRS-L-2535-06 (N. J. Sup. Ct. May 25, 2010).

[4] Motion of the Official Committee of Unsecured Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents By (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors at 9-10, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. July 20, 2010) [Dkt. No. 6383] ("**GM Motion**").

payment history for more than 7,000 individuals,[5] potentially encompassing hundreds of thousands of pages of individuals' detailed medical files and evidence of exposure to asbestos-containing products of other companies. The creditors' committee claimed this information was necessary to fill in certain alleged "gaps" in the debtors' claims database, and to show that the actual values at which the debtor historically resolved its claims were wrong.[6]

41.     On October 1, 2010, several insurers served a subpoena on Verus in connection with insurance coverage litigation between Porter Hayden and several of its insurers pending in the federal district court in Maryland.[7] The subpoena noticed a deposition and sought production of all information that as many as 20,000 claimants had submitted in claims forms (including any attachments or other documents appended thereto) to any section 524(g) trust, all amounts paid to a claimant by any trust, and the claim status of any claim which had not yet been paid. The insurers contend that this information is necessary in order for them to determine whether any Porter Hayden Trust claimants have filed claims for compensation with other trusts, to compare the information submitted to the trusts, and to determine the levels of total compensation that such claimants are receiving from all the trusts and the tort system.

42.     On October 11, 2010, in the *In re Specialty Products Holding Corp.* bankruptcy case currently pending before this Court, the debtors, Specialty Products Holding Corp. and Bondex International, Inc., requested leave to issue subpoenas to several claims processing

---

[5] *See* Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors and from General Motors LLC, Its Subsidiaries and Affiliated Companies, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. July 20, 2010) [Dkt. No. 6382]. Ultimately, the request was narrowed.

[6] GM Motion at 13-14.

[7] Notice of Subpoena, *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, No. 03-3414 (D. Md. Oct. 1, 2010).

facilities, including the Delaware Claims Processing Facility, Trust Services, Inc., and Verus.[8]

The debtors request that they be permitted to seek all information supplied on the claim forms

submitted by each claimant to each trust, the amounts each of the trusts paid, if any, to each

claimant, and the status of every claim against every trust that has been submitted but not

resolved.  The debtors also seek an order that would compel the trusts and claims facilities to

produce all of the requested discovery, and the debtors seek to have this order issue before the

discovery is even served.  The debtors claim to need this information in order to take into

account the trusts' claimants' history of exposure to other asbestos defendants' products as well

as the availability of other sources to compensate the claimants for their alleged harm, and to

obtain information about recoveries plaintiffs have obtained or could obtain from the trusts that

has been obscured by plaintiffs' alleged, but undemonstrated, delay and concealment.

43.    Two days later, the debtors in the *In re Garlock Sealing Technologies LLC*

bankruptcy case, presently pending in the Bankruptcy Court for the Western District of North

Carolina, filed a similar motion seeking leave to serve discovery on numerous claims processing

facilities and dozens of trusts, including virtually every major asbestos trust.[9]  The scope of

discovery sought in *Garlock* is astounding.  The debtors ask that the claims processing facilities

and trusts be ordered to provide a "complete electronic copy of the Trust's[s'] database[s] of

asbestos claims, often described as 'individual level claims data' or 'claimant and claim level

database'", and a "complete electronic copy of any database relating to asbestos claims filed

---

[8] Motion of the Debtors for an Order, Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Directing Production of Information by Claims Processing Facilities for Certain Asbestos Personal Injury Trusts, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Oct. 11, 2010) [Dkt. No. 437].

[9] Motion of Debtors for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Data by Claims Processing Facilities and Asbestos Trusts, *In re Garlock Sealing Techs., LLC*, No. 10-31607 (Bankr. W.D.N.C. Oct. 13, 2010) [Dkt. No. 601] ("**Garlock Motion**").

against any Debtor prior to the date the respective Debtor petitioned for relief under the Bankruptcy Code."[10]  The debtors made no attempt whatsoever to tailor or focus this discovery to information pertaining to the debtors' claimants.  They seek every section 524(g) trusts' entire claims files/records for every single claimant; the information of hundreds of thousands of claimants.  And, as in *Bondex*, the debtors also seek an order that would compel the trusts and claims facilities to produce all of the requested discovery, and they would have this order issue before the discovery is even served.  The justification offered by the debtors for this wholesale demand for the Trusts' information is that the information is required in order to investigate the degree to which Garlock claimants have provided evidence of exposure to other asbestos products when making claims against other parties and denied such exposure when making claims against Garlock and to accurately calculate the shared responsibility of asbestos co-defendants given Garlock claimants' access to the "tens of billions of dollars available from wealthy asbestos trusts."

44.    In several cases, the discovery has been directed in whole or in part to the Trusts' claims processing facilities, Verus and DCPF.   The claimant information in the hands of those entities, which are service providers and vendors to the Trusts, remains the property of the Trusts.  Verus and DCPF have been named here as nominal defendants so that the declaratory and injunctive relief sought in this action may be directed to and binding upon such claims processors.

---

[10]  Garlock Motion at Ex. B.

**III.    The Discovery Violates the Confidentiality Provisions of the TDP and the Purpose of the Trusts**

45.    To ensure that the functioning of the Trusts leaves the tort system as they found it, the TDP include provisions designed to permit discovery akin to discovery that might be permitted of a co-defendant in the tort system.

46.    To that end, the TDP include confidentiality provisions substantially similar to the one contained in the Owens Corning TDP, the text of which is provided in paragraph 35. *See ACandS, Inc Asbestos Settlement Trust Distribution Procedures*, § 6.5 (Aug. 19, 2008); Kaiser Aluminum & Chemical Corporation Third Amended Asbestos Trust Distribution Procedures, § 6.5 (Nov. 20, 2007); Owens Corning/Fibreboard Asbestos Personal Injury Trust Distribution Procedures § 6.5 (Feb. 2, 2010); United States Gypsum Asbestos Personal Injury Settlement Trust Distribution Procedures, § 6.5 (Mar. 29, 2010).

47.    These confidentiality provisions provide that submissions claimants made to the Trusts shall be treated as confidential settlement communications, and will be protected by "all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions."

48.    The confidentiality provisions also require the Trusts to preserve the confidentiality of the submissions.

49.    The confidentiality provisions are carefully crafted to ensure that the Trusts are not forced to produce information beyond the limited, individual, claimant-specific information the asbestos defendants who preceded the Trusts could have been required to produce in the tort system in individual cases.

50.    The confidentiality provisions do not contemplate and do not authorize the production of the Trusts' claimants' submissions, information, or settlements in bulk, or for purposes beyond discovery in an individual asbestos personal injury action.

51.    Requiring the Trusts to produce information regarding their claimants *en masse* ignores the limitations placed on proper discovery in the tort system, violates the letter and spirit of the TDP, and is antithetical to the spirit of the Trusts' charge to protect and guard their claimants' information.

52.    The discovery, moreover, improperly subjects the Trusts to the cost of defending against such attempts.  Should such discovery be authorized, the Trusts would bear the burden of complying with the discovery.

53.    Resources diverted to defending against third-party discovery requests and providing third-parties information they are not entitled to in the tort system would thus not be available for the primary purposes of the Trusts, to compensate asbestos victims.

## IV.    The Discovery Sought is Far Beyond What a Participant in the Tort System could Expect

54.    In the tort system, an asbestos defendant's ability to obtain discovery of co-defendants' settlements is very limited.  Although it varies from state to state, in general such discovery is permitted only after the defendant has suffered a verdict and is seeking set-off for settlement payments made to the plaintiff by co-defendants.

55.    Certainly no asbestos defendant in the tort system could expect to obtain through discovery in an individual asbestos personal injury case settlements between a co-defendant and thousands of other claimants, nor would an asbestos plaintiff expect to obtain discovery of any and all settlements a defendant has made with other plaintiffs.

56.    In the tort system, asbestos defendants were able to obtain information regarding the claims their claimants had filed and could file against the Trusts and other defendants only on an individual, case-by-case basis.

## V.    *The Purposes for Which the Proponents of the Discovery Claim to Need the Information Fail to Justify Abuse of the Trusts*

57.    The parties seeking the discovery of hundreds of thousands of claimants' settlement information justify their requests in several ways. None of the justifications, however, warrant permitting such massive discovery.

58.    A recurring argument made by parties seeking information from the Trusts is that claimants make inconsistent claims to trusts and in the tort system. Similarly, they argue that claimants withhold evidence of exposures to insolvent defendants in their tort-system actions, by fraud or strategic claiming. No meaningful evidence of this alleged fraud or inconsistent claiming has ever been produced, however.

59.    The TDP themselves do not operate to "conceal" claims. As seen above, the TDP do not prohibit the Trusts from responding to subpoenas pursuant to applicable non-bankruptcy law on a case-by-case basis.

60.    Moreover, state courts are capable of policing discovery in the tort system and of fashioning the appropriate remedy for any failure to provide complete and correct discovery responses, should evidence of such an occurrence emerge. The Trusts should not be subject to massive and intrusive discovery of thousands of claims in an effort to troll for inconsistencies.

61.    Reorganizing debtors seeking massive discovery from the Trusts have also contended that information from the Trusts is necessary in order for them to accurately estimate the value of their aggregate asbestos liability because it will allow them to somehow "correct"

their historical settlement values to account for the impact the insolvency of other asbestos defendants had upon their trial risks and claims resolution decisions.

62.    The debtors claim that after several top tier asbestos defendants became insolvent, their risk of their being held accountable for liability properly attributed to the insolvents increased if they went to judgment because claimants withheld evidence of their exposures to the insolvents.  The debtors further assert that, after the Trusts began functioning, their trial risks increased because claimants could wait to allege claims against the Trusts until after the debtor resolved the claimant's claim, thereby depriving the debtor of its right to set-off for compensation paid by the Trust.  But any "trial risk" of a verdict holding a solvent defendant responsible for liability properly attributable to an asbestos bankrupt or a Trust was certainly not created by the bankruptcies of other defendants or the allegedly fraudulent conduct of the defendant' claimants, however.  Such trial risks are the direct result of how judgments are rendered and molded, an exclusive function of state law that varies from state to state.

63.    The debtors' argument that claimants could conceal evidence of exposure to the asbestos-containing products of other tortfeasors ignores the fact that many states permit the finder of fact to apportion fault among bankrupt entities, and numerous jurisdictions allow named defendants to join responsible third-parties in tort actions, provided that the defendant establishes that the party is a joint tortfeasor.  Moreover, issues of discovery in tort cases are particularly within the purview of state courts.

64.    The debtors' contention that claimants could wait to file claims against the Trusts, thereby depriving them of their right to set-off, is overstated.  Several states require claimants to produce in discovery all the proofs of claim forms they have submitted, and to file all potential claims against the Trusts promptly.  Moreover, the debtors do not have the right to offset a

settled joint tortfeasor's payment to a plaintiff in those states that have adopted pure "several" liability, where each joint tortfeasor can only be subjected to a judgment reflecting its own "share" of liability.  Nor do the debtors have a right to set-off in jurisdictions where the trial courts permit the listing of all potentially responsible parties on the verdict sheet, and no liability is attributed to the settling party.  Numerous joint and several liability jurisdictions permit non-settling defendants to set-off a judgment for compensation paid by the Trusts, and some states have even allowed trial courts to retain jurisdiction post-verdict to provide credit for post-verdict compensation received from the Trusts.

65.    These state-by-state variations certainly had a profound impact on the defendants' case resolution decisions, and are already reflected in the defendants' settlement data.  The debtors' arguments are truly complaints about the tort system, and provide insufficient justification for burdening the Trusts and overriding the TDP's confidentiality provisions.

66.    The data that can be extracted from an asbestos defendant's own individual history in the tort system provides the only realistic starting point for deriving a reasonable estimate of that defendant's remaining asbestos-related liability.  In most asbestos bankruptcy cases featuring a contested estimation, courts have recognized that the debtor's settlement history provides the best data for use in estimating liability, and have relied on that data as the starting point for estimation.

67.    The vast majority of asbestos cases in the tort system are resolved by settlement in which the settling party undertakes to resolve only its own share of liability.  The historical settlement values of debtors therefore already reflect those debtors' own assessment, developed through whatever tort system discovery they sought, of the likelihood that other parties were responsible for any given claimant's injury.

VI.    *Turning the Trusts Into Information Clearing Houses to Change the Tort System, or to Alter a Debtor's Settlement History, Threaten the Purpose and Goals of the Trust, and Impair Their Ability to Function*

68.    The Trusts collect information pursuant to the TDP in order to resolve claims. This information was not intended to be used to alter the tort system, or to allow a reorganizing debtor to back away from its own claims resolution history.  Improper attempts to treat the Trusts as a virtual well of information that can be drawn on to support debtors,' solvent defendants,' and insurers' various arguments that their past and future liability should be reduced contravene the very purpose of the Trusts, and should not stand.

## COUNT I

## DECLARATORY RELIEF

69.    The Plaintiffs incorporate by reference each of the foregoing averments as though fully set forth herein.

70.    This action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Bankruptcy Rule 7001(9), and there is an actual controversy among the parties.

71.    Plaintiffs are entitled to a declaration of the Trusts' rights and obligations under the Plans and TDPs as follows:

72.    The TDP permit discovery of an individual claimant's submissions to the Trust only to a party in an actual personal injury lawsuit brought by that claimant and only pursuant to a subpoena issued in compliance with the TDP and subject to state or other applicable non-bankruptcy law.

73.    No single subpoena may seek the submission of more than one claimant to the Trust.  No party or entity may obtain multiple claimant submissions from a Trust for any purpose, except as specifically authorized by this Court.

## COUNT II

### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

74.     The Plaintiffs incorporate by reference each of the foregoing averments as though fully set forth herein.

75.     Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 authorize and empower this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code.

76.     The issuance of an injunction pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 is necessary and appropriate here.

77.     Plaintiffs are likely to succeed on the underlying merits of this action.

78.     Continued prosecution of the discovery against the Trusts will result in irreparable harm to the Trusts and to present and future claimants of the Trusts, because such discovery violates the TDP, and because claimant information, once produced, may not be recalled.

79.     The likelihood of irreparable harm to the Trusts in the absence of the injunctive relief sought herein far outweighs any harm to the Defendants.

80.     The requested injunctive relief will serve the public interest by avoiding distortions of the tort system and preserving the Trusts in the form in which they were approved by the Court.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants and pray that the Court grant each of the following remedies:

a.      A declaration that the discovery sought by the Defendants from the Trusts is beyond the scope of proper discovery from the Trusts, and that the Trusts need not and may not provide individual claimant information except pursuant to subpoenas issued in connection with an asbestos personal injury lawsuit relating

to a single claimant subject to the relevant confidentiality provisions of the Trusts and in conformance with the relevant state or other applicable non-bankruptcy law;

b.       A preliminary and permanent injunction barring Defendants from having, continuing, or otherwise obtaining the discovery sought from the Trusts, or any section 524(g) trust similarly situated, by any means, including by subpoena to DCPF, Verus or any other claims processing facility;

c.       A preliminary and permanent injunction barring DCPF or Verus from providing discovery sought from the Trusts except in conformance with the declaration sought above;

d.       Such other and further relief as may be necessary or appropriate.


Dated: October 27, 2010                              Respectfully submitted,


                                                     CAMPBELL & LEVINE, LLC


                                                     */s/Bernard Conaway*
                                                     Bernard Conaway (2856)
                                                     Kathleen Campbell Davis (4229)
                                                     800 N. King Street, Suite 300
                                                     Wilmington, Delaware 19801
                                                     Telephone:  (302) 426-1900
                                                     Facsimile:  (302) 426-9947

                                                     Douglas A. Campbell
                                                     Philip E. Milch
                                                     Stanley E. Levine
                                                     1700 Grant Building
                                                     Pittsburgh, Pennsylvania 15219
                                                     Telephone:  (412) 261-0310
                                                     Facsimile:  (412) 261-5066

                                                     *Counsel for the Owens Corning/Fibreboard*
                                                     *Asbestos Personal Injury Trust and the*
                                                     *United States Gypsum Asbestos Personal*
                                                     *Injury Settlement Trust*

KEATING MUETHING & KLEKAMP
PLL
Robert G. Sanker
Kevin E. Irwin
Jennifer Morales
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone: (513) 579-6400
Facsimile: (513) 579-6457

*Counsel for ACandS Asbestos Settlement
Trust*


FRANK GECKER, LLP
Joseph Frank
Frances Gecker
325 N. LaSalle, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035

*Counsel for Kaiser Aluminum & Chemical
Corporation Asbestos Personal Injury Trust*


CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
Rita C. Tobin
375 Park Avenue, 35th Floor
New York, New York 10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Ann C. McMillan
James P. Wehner
One Thomas Circle, N.W., Suite 1100
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Counsel to the Trust Advisory Committees
for the ACandS Asbestos Settlement Trust,
the Kaiser Aluminum & Chemical
Corporation Asbestos Personal Injury Trust,*

*the Owens Corning/Fibreboard Asbestos*
*Personal Injury Trust, and the Trust*
*Advisory Committee for the United States*
*Gypsum Asbestos Personal Injury Settlement*
*Trust*

KAYE SCHOLER, LLP
Andrew Kress
425 Park Avenue
New York, New York 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

*Counsel for Hon. Dean M. Trafelet (Ret.),*
*Legal Representative for Future Claimants*
*Against the United States Gypsum Asbestos*
*Personal Injury Settlement Trust*

LANDIS RATH & COBB, LLP
Adam G. Landis
Kerri K. Mumford
Rebecca L. Butcher
919 Market Street, Suite 1800
P.O. Box 2087
Wilmington, DE 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Counsel for the Kaiser Aluminum &*
*Chemical Corporation Asbestos Personal*
*Injury Trust*

## VERIFICATION

I, Marla Rosoff Eskin, having been first duly sworn, depose and state that I am one of counsel for the Owens Corning/Fibreboard Asbestos Personal Injury Trust and the United States Gypsum Asbestos Personal Injury Settlement Trust, that I have read the foregoing Verified Complaint, and that the allegations made therein are true to the best of my knowledge, and that allegations made upon information and belief are believed by me to be true.

I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is correct.

Executed on October 27, 2010