## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| IN RE: | |
|---|---|
| ACandS, Inc. | Case No.: 02-12687 |
| Armstrong World Industries, Inc. | Case No.: 00-4471 |
| Combustion Engineering, Inc. | Case No.: 03-10495 |
| The Flintkote Company | Case No. 04-11300 |
| Kaiser Aluminum Corp. | Case No.: 02-10429 |
| Owens Corning | Case No.: 00-3837 |
| US Mineral Products Company | Case No. 01-2471 |
| USG Corp. | Case No. 01-2094 |
| W.R. Grace & Co. | Case No. 01-1139 |
| Debtors | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IN RE: | |
|---|---|
| Mid-Valley, Inc. | Case No.: 03-35592 |
| North American Refractories Co. | Case No.: 02-20198 |
| Pittsburgh Corning Corp. | Case No. 00-22876 |
| Debtors | |

**RESPONSE OF THE LAW OFFICES OF PETER G. ANGELOS, P.C., BARON & BUDD, P.C., BRAYTON PURCELL, LLP, HISSEY KIENTZ, LLP, THE LIPMAN LAW FIRM, REAUD, MORGAN & QUINN, INC., THORNTON & NAUMES, LLP, WATERS & KRAUS, LLP, AND WILLIAMS KHERKHER HART BOUNDAS, LLP, TO THE MOTION OF GARLOCK SEALING TECHNOLOGIES LLC FOR ORDERS AUTHORIZING ACCESS TO 2019 STATEMENTS FILED IN THIS COURT AND FOR RELATED RELIEF.**

The Law Offices of Peter G. Angelos, P.C., Baron & Budd, P.C., Brayton Purcell, LLP, Hissey Kientz, LLP, The Lipman Law Firm, Reaud, Morgan & Quinn, Inc., Thornton & Naumes, LLP, Waters & Kraus, LLP, and Williams Kherkher Hart Boundas, LLP (collectively, the "Law Firms") file this response opposing the Motion of Garlock Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in this Court and for Related Relief (the "Motion") and respectfully submit as follows.

## I. INTRODUCTION

Garlock seeks access to the confidential exhibits to all 2019 Statements filed in these 12 bankruptcy cases pending before this Court in Pittsburgh and Delaware, 7 of which are already closed. Garlock proposes, almost as an afterthought, reopening the closed cases and intervening in all of the cases despite being neither a creditor nor cognizable party in interest. As a mere bystander with no discernible stake in any of these cases, Garlock should not be permitted to re-open long closed cases or intervene in those that remain open.

As to the substance of Garlock's request, the Court's heard it—and lived it—all before. The Court will recall entering a common order in the 12 cases almost 7 years ago requiring Rule 2019 Statements to be filed in the normal manner on the electronic docket but providing for the submission of certain confidential information—exhibits to 2019 Statements—to the clerk, the respective debtors, and the U.S. Trustee. This confidential material is accessible by others only upon motion to and order from this Court. Appellate courts have commended the Court's efforts in appeals from several of the 2019 Orders, and the court presiding over Garlock's own chapter 11 proceeding in North Carolina entered a 2019 Order nearly identical to the template fashioned by this Court.

Garlock claims entitlement to access the confidential 2019 materials in these 12 cases for use its own bankruptcy, and not for any purpose even tangentially related to the purpose for Rule 2019 disclosure:  the vetting of agency by counsel representing multiple clients. Garlock insists that it need show no cause to access these materials, brandishing 11 U.S.C. § 107 as if it were a one-size-fits-all incantation in the nature of "open sesame," which it is not. Garlock displays total disregard for concerns the Court has voiced many times about the sensitivity of some of the information disclosed and its potential for abuse—concerns that even Congress undertook to address with the passage of 11 U.S.C. § 107(c) mere months after the Court entered its 2019 Orders in the cases.  Garlock should be denied all the relief that it seeks.

Indeed, it has ***already*** been denied some of the relief it seeks in one of the 12 cases— *Pittsburgh Corning*—less than a year ago.  In March 2010, this Court entered an order denying Garlock access to 2019 materials it sought subject to a limited right to seek access in the future to information contained in specific 2019 statement as to a particular named individual if Garlock could demonstrate a specific instance of need or cause.  Ignoring the Court's parameters, Garlock returns with a peremptory demand for confidential material disclosed by all firms in a dozen cases.  Garlock should be reminded of the Court's prior ruling and held to its terms.  There is no principled reason why the Pittsburgh Corning order should not apply in all 12 cases.

Garlock provides no adequate reason why this Court should permit it, a stranger to these cases, to intervene in them, reopen most of them, revisit longstanding orders governing compliance with Rule 2019 in these cases, or ignore its own clear ruling on a

similar (if narrower) request entered less than a year ago in the *Pittsburgh Corning* case.

Garlock's Motion should be denied in its entirety.

## II. ARGUMENT

**A.    Garlock may not seek general access to Rule 2019 Statements without proving individual need or cause pursuant to prior orders entered in these Cases.**

By the Motion, Garlock seeks access to all "exhibits to 2019 statements filed in these cases, but omitted from the electronic docket pursuant to orders of the Court requiring a motion to obtain access."[1]  The Court will recall that in 2004, upon careful consideration of how best to administer Rule 2019 compliance in these 12 mass tort cases (collectively, "Cases" with each being a "Case"), it entered substantively identical orders in all the Cases ("2019 Orders").[2]  The 2019 Orders required "2019 Statements" to be filed and placed on the electronic docket, but directed that certain exhibits thereto containing sensitive information ("Confidential 2019 Materials") be submitted to the clerk on CD's and served only on the respective debtors and U.S. Trustee.  Per the 2019 Orders, the Confidential 2019 Materials were not to be placed on the electronic docket and anyone seeking to access them was required to obtain a court order authorizing access.

Garlock litigated the *precise* issue raised in the Motion over a year ago in *In re Pittsburgh Corning Corp.*, Case No. 00-22876 ("Pittsburgh Corning").  In late 2009, Garlock sought broad access to some of the Confidential 2019 Materials accompanying 2019 Statements filed by 32 law firms in that Case.  Garlock was entirely, and properly, rebuffed in that effort.

---

[1]    Motion at 1-2.

[2]    Garlock cites to each order in the Motion.  *Id.* at  2 n. 1.

Now, taking little account of its prior failed effort in one Case, Garlock returns seeking access to *all* Confidential 2019 Materials in all 12 Cases.

Although the Court's *Pittsburgh Corning* ruling early last year denied Garlock broad access, the Court did indicate Garlock could still seek limited access to Confidential 2019 Materials—materials specific to individuals Garlock might identify—*if* Garlock could show a particularized need for them.  In its renewed push for broad access via the Motion, Garlock hasn't attempted such a showing.  Having chosen to ignore the Court's clear directive in *Pittsburgh Corning*, the Motion should be denied.  As functionally identical 2019 Orders were entered in the Cases, the Court's determination in 2010 of Garlock's right to access Confidential 2019 Materials in *Pittsburgh Corning* should properly be extended to the other Cases, most of which are now closed or dormant.

> 1. **Garlock has already been denied broad access to Confidential 2019 Materials in *Pittsburgh Corning*.**

In November 2009, Garlock filed a motion in *Pittsburgh Corning* (the "*Pittsburgh Corning* Access Motion") seeking access to certain Confidential 2019 Materials in that Case.[3] Garlock did not serve most of the firms whose disclosures it sought with a copy of its motion.[4]  A kerfuffle predictably ensued, whereupon the Court ordered Garlock to effect

---

[3]    Garlock requested access to Confidential 2019 Materials submitted in connection with 32 firms' 2019 Statements, exclusive of information "regarding economic and other details of the attorney-client relationships between law firms and their clients …."  Expedited Motion of Garlock Sealing Technologies LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case (*Pittsburgh Corning*, Case No. 00-22876, Dkt. No. 7187) at 7.

[4]    Garlock's laxity in serving the *Pittsburgh Corning* Access Motion was especially troublesome since Garlock sought an expedited hearing on less than 2 weeks' notice.  *Pittsburgh Corning* Access Motion at 6 ("The exigencies in this case justify hearing the Motion … on shortened notice to allow the Motion to be considered at the December 3, 2009 Hearing").  Counsel for some of the affected firms noted Garlock's stealth filing on the docket, however, and objected on due

proper service and afford interested parties sufficient time to respond.[5]  Meanwhile, Garlock was permitted to access master ballots cast in *Pittsburgh Corning*, subject to confidentiality safeguards.[6]

At a hearing in January 2010, Garlock made its case for access to the limited subset of Confidential 2019 Materials it sought, raising the same issues it does again and at length in the Motion.  The Court carefully considered and rejected Garlock's *Pittsburgh Corning* Access Motion.  Responding to Garlock's insistence that it needed Confidential 2019 Materials for its *Pittsburgh Corning* plan objection, the Court stated:

> The purpose for filing the 2019 Statements is essentially to make sure that the Court understands what the parties who—that the attorneys who purport to represent particular parties actually do represent those parties and therefore have the right to participate in the significant events in the case.  They are not there for the purpose of allowing another party to use them in some litigation context outside the confines of this case.[7]

The Court concluded:  "I don't see a basis for Garlock getting these 2019 statements."[8]

Counsel's urging that Garlock needed Confidential 2019 Materials to prove alleged inconsistencies between participation in the *Pittsburgh Corning* Case and claimants' dealings with Garlock in the tort system—allegations repeated at length in the Motion—were met with skepticism from the Court:

---

process and substantive grounds.  *See Pittsburgh Corning*, Case No. 00-2876, Dkt. Nos. 7277, 7279 & 7282).

[5]    Transcript of Hrg. held on Dec. 3, 2009 (*Pittsburgh Corning*, Case No. 00-22876) (the "Dec. 3, 2009 Transcr.") ("[by the Court] you need to be served and you need to be served promptly").

[6]    *See* Stipulation Regarding Confidential Material executed by counsel for Garlock and the Debtors on Dec. 23, 2009 (*Pittsburgh Corning*, Case No. 00-22876, Dkt. No. 7352).

[7]    Transcript of Hrg. held on Jan. 13, 2010 (*Pittsburgh Corning*, Case No. 00-22876) (the "Jan. 13, 2010 Transcr.") at 40.

[8]    *Id.* at 41.

> When you provide evidence to me of that then maybe I'll reconsider this 2019 issue.  Even then the fact that somebody has listed an individual as a client on a 2019 statement is not evidence that they are going to submit a claim against the trust in the future.  So I don't even see how it's relevant at this point.[9]

But the Court did leave the door open just a crack, noting that:

> It may be relevant … when a piece of litigation takes place in the state tort system against Garlock and at that point Garlock thinks somehow that because it's a codefendant with PCC that it may have some access or need to access a specific 2019 statement as to a particular client.  But giving you mass discovery as to everyone who every law firm represents I think has no basis in law or in fact.  It is not—those statements are not for that purpose and I don't see a basis to grant this relief.[10]

Astutely noting that Garlock was seeking Confidential 2019 Materials for use outside the *Pittsburgh Corning* case for purposes wholly unrelated to the rationale for Rule 2019 disclosure in the first instance—the vetting of agency, about which more will be said below—the Court denied Garlock's request for broad access.  Only in a specific case of identified need might Garlock arguably be entitled to limited access to Confidential 2019 Materials.[11]

There the matter was left.  The Court requested a form of order to implement its ruling.  *Id.* at 66 ("I will take an order that denies this motion without prejudice to being raised regarding specific instances of need or cause for the reasons I've stated on the this record.").  Efforts to memorialize the Court's ruling afforded an early glimpse of Garlock's dogged refusal to accept the Court's ruling.  Though counsel for some of the firms attempted a faithful memorialization of the Courts' ruling, Garlock wouldn't have it.  By

---

[9]    *Id.* at 44.

[10]   *Id.* at 44-45.

[11]   Jan. 13, 2010 Transcr. at 50 ("if you get a specific case like that in the tort system, you can seek relief from this Court.").

motion, Garlock ultimately asked the Court to enter an order simply denying the *Pittsburgh Corning* Access Motion without prejudice.[12]  The Court declined, choosing instead to enter the following "*Pittsburgh Corning* Order," which closely tracks what counsel for various firms had proposed:[13]

> For the reasons stated on the record at the hearing on January 13, 2010, it is ORDERED that the Motion is DENIED without prejudice to a request for access to information contained in a specific 2019 Statement as to a particular client in specific instances of need or cause.[14]

**2.      The *Pittsburgh Corning* Order specified the extent to which Garlock might appropriately seek limited access to Confidential 2019 Materials in the future.**

The *Pittsburgh Corning* Order is clear in its categorical rejection "for the reasons stated on the record" of Garlock's request to access Confidential 2019 Materials *en masse.*  But, as noted, despite its skepticism as to whether Garlock could appropriately be afforded even limited access to Confidential 2019 Materials, the Court left open the possibility and spelled out what Garlock needed to do in a subsequent motion seeking access:

- identify a specific 2019 Statement;
- identify a specific client; and
- identify a specific instance of need or cause.

---

[12]    *See* Motion for Entry of Order Denying Expedited Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case (*Pittsburgh Corning*, Case No. 00-22876, Dkt. No. 7462).

[13]    The various law firms submitted a proposed order that would have read "[t]he Motion is Denied without prejudice to a request for access to information contained in a specific 2019 statement as a particular client in specific instances related to discrete pieces of litigation upon proof of need or cause of the kind and nature set forth on the record at the hearing on January 13, 2010." *See* Certification of Counsel, *Pittsburgh Corning*, Case No. 00-22876, Dkt. No 7453.

[14]    Order Denying Expedited Motion of Garlock Sealing Technologies for Order Authorizing Access to Certain 2019 Statements Filed in this Case (*Pittsburgh Corning*, Case No. 00-22876, Dkt. No. 7579).

Even so, the Court's doubt about whether Garlock could ever be afforded even limited access to Confidential 2019 Materials was clear on the record.[15]  Nevertheless, the Court did not quite close the door.  "You have to be able to make an allegation that tort plaintiff A has essentially lied and when you make that allegation under oath or as certification in a specific case, I will be happy to consider whatever disclosure is appropriate to attempt to prove that it's either true or not true."[16]  Fishing expeditions, however, were out:

> THE COURT:  [...]  It's not a wholesale fishing expedition proposition. You've got to relate it to a –
>
> MR. CASSADA:  I'm not on a fishing expedition.
>
> THE COURT: —but you are, Mr. Cassada.
>
> MR. CASSADA:  I'll show you at the confirmation hearing why the state law discovery remedies are not sufficient to cover—
>
> THE COURT:  That is wholesale fishing.  You need it in connection with a specific case.  You have to be able to make an allegation that tort plaintiff A has essentially lied and when you make that allegation under oath or as certification in a specific case, I will be happy to consider whatever disclosure is appropriate to attempt to prove that it's either true or not true.  But then you do it subject to Rule 9011 and with all of the sanctions that go along with it in the event that it is an inaccurate statement.  It is not a wholesale fishing expedition.  So when that case arises in the tort system, you bring in the evidence.

*Id.*  Thus, in mid-January 2010, Garlock's counsel was on notice that future requests for Confidential 2019 Materials would need to be carefully tailored and supported by a specific need for defined information with regard to a particular claimant.

---

[15]   Jan. 13, 2010 Transcr. at 40 ("[2019 Statements] are not there for the purpose of allowing another party to use them in some litigation context outside the confines of this case.").

[16]   *Id.* at 51.  In fact, Garlock's own bankruptcy filing means that that the scenario envisioned by the Court as a basis for affording Garlock some disclosure can no longer occur.

Against this backdrop, the Motion can be seen for what it is.  Having been denied a bite of the 2019 apple in one Case, Garlock now seeks to devour a dozen different 2019 apples in as many Cases—while relying on the same tired arguments the Court considered and rejected last year.  The rationale for denying Garlock its requested relief *then* applies with even greater force to the Motion *now*.  Garlock's asserted need for Confidential 2019 Materials is as it has always been:  speculative and totally divorced from any purpose rooted in either Rule 2019 or the Cases themselves.  The only difference between a year ago and now is that Garlock proposes to fish with a vastly bigger net.

**3.      Garlock's attempted end run around the *Pittsburgh Corning* Order should be rebuffed.**

The proceedings in *Pittsburgh Corning* fully addressed the issue of Garlock's access to Confidential 2019 Materials in that Case.  They culminated in the *Pittsburgh Corning* Order denying Garlock broad access but leaving open the possibility of limited access, with the Court telling Garlock what it needed to muster if and when it were to seek limited access.  Garlock didn't appeal the *Pittsburgh Corning* Order but, in its current Motion, essentially ignores the prior proceedings.  Garlock has chosen—again—not to address its asserted need for Confidential 2019 Materials in anything but the broadest terms, and hasn't heeded the Court's guidance with respect to the parameters of a request for access.  Its Motion is little more than a naked demand for Confidential 2019 Materials in 12 Cases—many of which are now closed.[17]

---

[17]   Motion at ¶ 81 ("The law does not require Garlock to show cause to access the 2019 statements filed on the docket of this Court.  Rather, Garlock as a member of the public has a presumptive right to access, which can be denied only if parties imposing access can provide a clear and particularized account of serious injury that will occur if Garlock receives access.").

The now-final *Pittsburgh Corning* Order, which adjudicated the legal issues surrounding Garlock's request for broad access to Confidential 2019 Materials in that Case, cannot be ignored. It represents, at least as to *Pittsburgh Corning*, the law of the Case. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[18] Having once settled the matter of Garlock's non-entitlement to broadly access Confidential 2019 Materials, the Court ought not revisit the issue.

4.   **There is no principled distinction between *Pittsburgh Corning* and the other Cases that supports a different ruling in those Cases.**

The Court's reasoning in *Pittsburgh Corning* applies with equal or greater force to the other Cases. The 2019 Orders are substantively identical, requiring the same regime of compliance.[19] Application of a different analysis in the other Cases would be arbitrary. Garlock's near-total indifference to the *Pittsburgh Corning* Order is telling. The Motion barely acknowledges it, notes Garlock's own subsequent chapter 11 filing, and peremptorily declares that "Garlock now requires the 2019 statements and exhibits for use in its own bankruptcy case."[20]

---

[18]   *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n. 21 (3d Cir. 2010) (*quoting Arizona v. California,* 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983)).

[19]   To the extent there are differences between the Rule 2019 Order in *Combustion Engineering, Inc.,* Case No. 03-10495 ("*C-E*") and Rule 2019 Orders in the other Cases, they are due to the circumstances prevailing in the *C-E* at the time. There is no difference in principle, however, and any Confidential 2019 Materials that might have been submitted in *C-E* should be protected on the same basis as in the other Cases. Moreover, *C-E* was closed in June 2007, **over three-and-a-half years ago**, and, for the reasons set forth in Section C(1) below, Garlock should not be permitted to reopen it.

[20]   Motion at ¶ 23.

Garlock says it needs Confidential 2019 Materials from the 12 Cases for estimation purposes in its own bankruptcy case and possibly in connection with "damages actions" against law firms or claimants the firms represent.[21] But Garlock doesn't explain how it, alone among asbestos debtors, "needs" this information. Of the more than 50 asbestos debtors that have sought relief to date pursuant to Section 524(g), Garlock is alone in seeking access to Confidential 2019 Materials in any of the Cases. History thus strongly suggests that third-party asbestos debtors like Garlock have no legitimate interest in accessing Confidential 2019 Materials in other asbestos debtors' cases.

Garlock's new status as a debtor itself weakens, rather than enhances, its standing to access Confidential 2019 Materials. At least in *Pittsburgh Corning*, Garlock was a putative plan objector whose tenuous claim to standing was based on its status as a non-bankrupt co-defendant in the tort system. Garlock's bankruptcy filing, of course, moots its asserted basis for participating in *Pittsburgh Corning*[22] where its questionable "need" for Confidential 2019 Materials was perhaps most plausible but still did not carry the day.

---

[21]   *Id.*

[22]   Garlock's plan objection in *Pittsburgh Corning* was never creditable in any event, especially after it filed for bankruptcy. As Mr. Peter Lockwood, counsel for the Asbestos Claimants Committee, noted at the conclusion of the confirmation hearing, "at the end of the day Garlock is simply not harmed by this plan and as such its arguments which might have had some merit when they were originally tendered before it filed for bankruptcy, have essentially been mooted by the filing of the bankruptcy case." Transcript of Hrg. held on Oct. 29, 2010 (*Pittsburgh Corning*, Case No. 00-22876) (the "Oct. 29, 2010 Transcr.") at 115. This Court expressed its agreement throughout Garlock's closing argument *See, e.g., Id.* at 125 ("How are you going to be prejudiced to that effect? You're in bankruptcy."); *Id.* at 175 ("you're not going to be in the tort system because you filed bankruptcy"); *Id.* at 129 ("as to Garlock that's moot"); *Id.* at 135 ("none of this at this point is relevant to Garlock because Garlock isn't in the tort system); and *Id.* at 143 ("Garlock isn't in the tort system and neither is *Pittsburgh Corning* so I don't see how a right that doesn't any longer exist is impaired").

Nor have there been any other intervening developments that might prompt the Court to revisit the now-final *Pittsburgh Corning* Order.  Garlock references allegations of purported inconsistencies between ballots cast in *Pittsburgh Corning* and state-court discovery materials in Garlock's possession as a basis for its need to access the Confidential 2019 Materials.[23]  This is hardly new; it was the centerpiece of Garlock's failed efforts in *Pittsburgh Corning*.[24]

**B.    Garlock refuses to acknowledge that the 2019 Orders strike an appropriate balance between public access and the confidentiality rights of tort claimants—a balance that has stood the test of time.**

Garlock takes insufficient account of the considerable water under the bridge since the Court's entry of the 2019 Orders in the Cases.  As with the *Pittsburgh Corning* Order, Garlock's *modus operandi* is simply to ignore—or feign ignorance of—

- facts it regards as inconvenient (*e.g.*, the pendency of the Cases, at least until recently);
- the narrow purpose and application of Rule 2019 in the first instance;
- concerns it doesn't share or respect (*e.g.*, the potential for abuse, in an era of identity theft and sophisticated confidence schemes) associated with broad dissemination of rosters of vulnerable claimants' names and addresses appearing among the Confidential 2019 Materials; and
- the thoughtful, deliberative context in which the 2019 Orders arose.

**1.    Garlock's professed unawareness of the Cases until recently is too implausible to be credited and belied its parent's public disclosures.**

Garlock refers portentously to a "Bankruptcy Wave" from 2000 to 2004[25] "when the most prominent defendants in asbestos litigation began to file for

---

[23]    *See* Motion at ¶¶ 20-22.

[24]    *See, e.g.,* Jan. 13, 2010 Transcr. at 35-37 & 47.

[25]    In a footnote, Garlock lists several dozen bankruptcies that comprised this "wave," but a number of the companies it lists did not file until 2005 or 2006.  Motion at n. 3.

bankruptcy."[26]  Yet despite the significance Garlock ascribes to this "Bankruptcy

Wave," it told the Court a year ago that it had only just learned of *Pittsburgh Corning's*

decade-old chapter 11 Case and had scrambled to figure out what was going on.  In

Garlock's own words:

> Garlock was not involved with this Chapter 11 Case nor has it been served
> with any filings, including notice of the 2019 Order or those filings relevant to
> the scheduling of omnibus hearings.  Garlock only heard about this case
> through third parties.  Garlock scanned the docket and scrambled to file and
> serve its Objection on November 6, 2009.[27]

> Garlock concedes that *Pittsburgh Corning*, prepetition, was its co-defendant in

"thousands of asbestos cases annually."[28]  It acknowledges that the "Bankruptcy Wave"

resulted in "the exit of the bankrupts" from asbestos personal injury suits.[29]  It follows that

Garlock knew precisely when *Pittsburgh Corning* sought refuge in chapter 11.[30]  The public

disclosures of Garlock's parent company, EnPro Industries, Inc., lay bare the absurdity of

any suggestion that Garlock lacked real-time awareness of its erstwhile co-defendants' fates.

Its 2003, 2004, and 2005 10-K's explicitly reference, in narratives about Garlock's asbestos

litigation, the "recent bankruptcies of other defendants[.]"[31]  Garlock simply chose to ignore

the Cases for a very long time.

---

[26]  Motion at ¶ 6.

[27]  *Pittsburgh Corning* Access Motion at  3.

[28]  *Id.* at 2.

[29]  Motion at ¶ 7.

[30]  Dec. 3, 2009 Transcr. at 97.

[31]  2003 10-K at 28 & 31; 2004 10-K at 30 & 33; and 2005 10-K at 29.  These documents may be
viewed at the following internet address at no charge:  http://www.getfilings.com/.

**2.      The manner of compliance with Rule 2019 in the Cases was adjudicated in 2004; the Court's thoughtfully reasoned determination in such regard has been upheld in appeals from some of the 2019 Orders.**

Rule 2019 serves an avowedly narrow purpose, underscored by the fact that it expressly applies in but a single percent of bankruptcies:  only reorganization cases under chapters 9 and 11 of the United State Bankruptcy Code (the "Code").[32]  In chapter 7 cases (two-thirds of all bankruptcies commenced in 2009) and chapter 13 cases (accounting for almost all the rest), Rule 2019 has no application whatsoever.[33]

In the few cases where it does apply, Rule 2019 requires limited disclosure by "entities"—which include law firms representing multiple creditors—to verify that that the entity's principals (*i.e.*, clients where the entity is a law firm) have authorized the entity to act on their collective behalves.  Stated simply, Rule 2019 "requires agents to explain the circumstances of their agency."[34]  Rule 2019's non-applicability in chapter 7 and chapter 13 cases—98.9% of bankruptcy cases commenced in 2009[35]—debunks any notion that it is intended to further any public interest broader than vetting agency in reorganization cases.

Rule 2019 compliance in chapter 11 cases involving mass torts, as the Court knows, presents a couple of unique challenges.  One is logistical.  It is not uncommon for law firms

---

[32]   Part (a) of Rule 2019 leads off with "[i]n a chapter 9 municipality or chapter 11 reorganization case, … ."  Fed. R. Bankr. P. 2019(a).  The Advisory Committee Notes state that the "rule is a comprehensive regulation of representation in chapter 9 municipality and in chapter 11 reorganization cases."  11 U.S.C. § 2019 n. (1987) (Advisory Comm.).  As to the number of cases in which the rule applies, there were 1,473,675 bankruptcy cases commenced in 2009; 15,189 were made pursuant to chapter 11 and only 12 pursuant to chapter 9.  Thus, Rule 2019 applies to barely 1% of all cases filed in 2009.  *See* http://www.uscourts.gov/Statistics/BankruptcyStatistics.aspx.

[33]   *Id.*

[34]   *In re American Reserve Corp.*, 840 F.2d 487, 493 n. 6 (7th Cir. 1988).

[35]   Of the 1,473,675 bankruptcies commenced in 2009, 1,050,832 were pursuant to chapter 7 and 406,962 pursuant to chapter 13.  *See* http://www.uscourts.gov/Statistics/BankruptcyStatistics.aspx.

to represent hundreds or even thousands of a mass tort debtor's potential creditors. How are such entities to comply with the rule? Efficiency is a related concern, and not only for the disclosing entities. Literal compliance with the rule in mass tort cases would deluge clerk's offices with paper or data.

The second challenge relates to privacy concerns stemming from the possibility that information disclosed by law firms about hundreds or thousands of their clients for the narrow purpose of 2019 compliance—clients who are ill and, for the most part, elderly and vulnerable—could be marshaled for nefarious purposes entirely unrelated to Rule 2019.

The logistical question—how Rule 2019 should be applied—has been around for awhile and lingers today. Collier's cautioned in 2004, as it still does, against impractical applications of Rule 2019.[36] Then, as now, there was a paucity of decisional law on the subject.[37] But, as this Court undertook in 2004 to grapple with the question of Rule 2019 compliance, it was in esteemed company. No less eminent a jurist that Justice Ruth Bader Ginsberg had observed, while still with the D.C. Circuit, that "Courts have taken different views of how literal compliance with Rule 2019 must be."[38]

---

[36]  9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.04 (15th ed. 2004) & (15th ed. rev. 2008). Strict compliance with the literal terms of Rule 2019 is often impractical and can be varied. The practical problems of compliance have influenced courts where the strict application of the rule would not serve its purpose and would work to prejudice the creditors to whom the rule would apply. *See, e.g., Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309 (Bankr. E.D. La. 1992) (attorney representing thousands of class members not required to file 2019 statement).

[37]  *Colliers.* at § 2109.04[4] (15th ed. rev. 2008).

[38]  *Office & Prof. Employees Intl. Union v. FDIC*, 962 F.2d 63, 69 n. 10 (D.C. Cir. 1992) (citations omitted).

With no definitive trail in the context of mass tort cases having yet been blazed, the Court struck a sensible and well-reasoned balance in 2004 when it entered the 2019 Orders.[39] As the Third Circuit concisely summarized in affirming the district court's denial of an appeal from the 2019 Order in *Pittsburgh Corning*:

> The Bankruptcy Court fashioned an order that allowed law firms to file "exemplars" of their empowering documents and required anyone who wished to view the Rule 2019 submissions to file a motion with the court to gain permission.[40]

More precisely, the Court's 2019 Orders provided that 2019 Statements would be filed and supplemented at regular intervals. These would be posted on the electronic docket. The substance of what was to be disclosed—including Confidential 2019 Materials—would not be electronically filed but, instead, submitted to the clerk, the debtor, and the U.S. Trustee on CD's. All recipients were directed to maintain confidentiality subject to further order of the Court. And, per the Court's 2019 Orders, the docket entry for each 2019 Statement would advise that the exhibits could be "accessed by parties who obtain Court order authorizing access."

---

[39] Honorable George R. Hodges of the United States Bankruptcy Court for the Western District of North Carolina, who is presiding over Garlock's chapter 11 case followed with near exactitude the approach to Rule 2019 compliance taken in the Cases by this Court. *See* Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 (*In re Garlock Sealing Technologies LLC, et al.*, Case No. 10-31607, Dkt. No. 631). Further, he did so despite Garlock's urgings that he diverge in at least one respect by permitting access to Confidential 2019 Information on motion unless the entity that submitted it made a showing under 11 U.S.C. § 107. Submission of the Official Committee of Asbestos Personal Injury Claimants with Respect to the Appropriate Form of Order Pursuant to Fed. R. Bankr. P. 2019 (*Garlock*, Case No. 10-31607, Dkt. No. 598) at ¶¶ 6-7. At a hearing addressing 2019 compliance in August 2010, Judge Hodges reportedly stated "[M]y inclination would be to enter an order similar to what Judge Fitzgerald has done, which has received the approval of superior courts, courts superior to us, and to do something along those lines." *Id.* at ¶ 1 (*quoting* Transcr. of Hrg. held on Aug. 26, 2010 (*Garlock*, Case No. 10-31607) at 41-42.

[40] *In Re Pittsburgh Corning Corp.*, 260 Fed.Appx. 463, 465 (3d Cir., Jan. 10, 2008).

As this Court articulated in October 2004:

> This order, in my view, does everything and probably more than it needs to do. *It provides for protection of the parties' rights to ask us [for] this information by simply filing a motion with this Court telling me why you want it.* And I don't think that's inappropriate. The problem that the Courts wrestle with electronic case filing is just that. Everything gets spread on the public docket and that is not appropriate. That's not what the electronic case filing system was intended to do where privacy concerns are involved. It was intended to make access to relevant information more widely available to parties.[41]

In a consolidated appeal that concerned two of the 2019 Orders, District Judge John J. Farnan, Jr., concurred with the balance stuck by this Court:

> In the Court's view, Judge Fitzgerald's Rule 2019 Orders strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused. Accordingly, the Court concludes that the Bankruptcy Court did not err in declining to post the Rule 2019 information on the electronic docket and in permitting access to that information by motion of the parties and order of the Court.[42]

3.    **Against the accumulated record of proceedings in the Cases, Garlock cannot perfunctorily demand unfettered access to the Confidential 2019 Materials under Section 107 of the Code, any notion of public right of access or the First Amendment.**

When Garlock sought access to Confidential 2019 Materials in *Pittsburgh Corning* a year ago, its indifference to the sensitivity of asbestos claimants' personal information was palpable. Garlock's nonchalance persists in the Motion, where it dismissively refers to "the

---

[41] Owens Corning 2019 Order (*In re Owens Corning, et al.,* Case Nos. 00-3837-3854, Dkt. No. 12968) at 55 (emphasis added).

[42] *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005). Garlock evidently disagrees with Judge Farnan and finds the decision a few months earlier in *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147 (D.N.J. 2005), which Judge Farnan noted in *In re Kaiser Aluminum*, more to its liking. See Motion at ¶¶ 59-61. That decision simply affirmed the exercise by a different bankruptcy court sitting within the Third Circuit of its discretion in construing Rule 2019 more expansively than had this Court had in the exercise of its discretion. The Third Circuit, as noted, affirmed an appeal from one of this Court's 2019 Orders in *Pittsburgh Corning*, 260 Fed.Appx. at 465,

complete lack of sensitivity" associated with the names, home addresses, and possibly partial

social security numbers of legions of tort victims appearing in the Confidential 2019

Materials in these Cases.[43]

It is Garlock—not compilations of personal information about tort victims—that is

devoid of sensitivity.  While Garlock points out, correctly, that the information contained in

the Confidential 2019 Materials may appear in public documents elsewhere, such as pre-

petition lawsuit papers filed in the tort system, it is far more diffuse in that context.

Information about John Doe may appear in Mr. Doe's complaint in the court records of a

particular county in a particular state.  Information about Sally Snow may appear in court

records in a county of a different state.  But the Confidential 2019 Materials submitted in

connection with just one 2019 Statement may have the names and addresses of John Doe,

Sally Snow, and hundreds or thousands of others, assuming they were all represented by the

same counsel in the chapter 11 case to which the 2019 Statement appertains.  Unlike discrete

litigation papers widely dispersed in court files across entire states or even nationwide, the

Confidential 2019 Materials of the Law Firms in these Cases are a concentrated store of

information about many people.[44]  For anyone exploitatively or nefariously minded—

identity thieves, investment schemers, dubious marketers, scam artists—they represent a

veritable bonanza.[45]

---

[43]    Motion at ¶ 71.

[44]    Garlock refuses to acknowledge that privacy concerns are legitimately heightened in the context
of concentrated information (the Confidential 2019 Materials) as opposed to lawsuit papers
scattered hither and yon in the tort system.  *See* Motion at 21 n. 9.

[45]    Garlock states that it "will not steal the claimants' identities or cause them any unlawful injury."
Motion at ¶ 58.  It coyly states, however, that it "does not plan to disclose the information

In the same way the *Pittsburgh Corning* Order represents the law of that Case (*see* Section A.3 above), the balance struck in 2004 between Rule 2019's disclosure requirements and Section 107 of the Code ("Section 107") should continue to inform requests for access to Confidential 2019 Materials, whether from Garlock or others.  Garlock cannot just march into court years later and insist on access to Confidential 2019 Materials while ignoring the water under the bridge.

And what of Garlock's insistence that 11 U.S.C. § 107 and the Third Circuit's decision in *Goldstein v. Forbes (In re Cendant Corp.)*[46] entitle it to access Confidential 2019 Materials?  Garlock seems put out that the 2019 Orders require it to file a motion seeking access.  The Court, however, will recall that it was hardly indifferent or inattentive to Section 107 concerns when crafting the 2019 Orders in 2004:

> … I think under [11 U.S.C. §] 105 although [Section] 107 talks in terms of scandalous or defamatory matter 107 was written at a time where the privacy concerns were not as realistic, where identity theft was not the most prevalent crime in the United States.  And it seems to me that 105 gives me sufficient authority under these circumstances to protect privacy of a party, i.e., a creditor as well.

> So to the extent that 107 might provide for—or does, in fact provide for public access I think the Court has the ability to control that access in reasonable ways.  I think if it's necessary to list a creditor's name I might be willing to go that far.  I'm not going to require anything else to be spread on the public docket.[47]

---

except as necessary to serve [its partisan] purposes."  *Id.*, at ¶ 75.  Trust us as stewards of this information, Garlock is telling the Court, even as it scoffs at the sensitive, confidential nature of the information.

[46]    260 F.3d 183 (3d Cir. 2001).

[47]    Owens Corning 2019 Order (*In re Owens Corning ,et al.,* Case Nos. 00-3837-3854, Dkt. No. 12968) at 31.

Nor was Judge Farnan indifferent to Section 107 when two of the 2019 Orders were before him on appeal:

> Although Section 107(a) evidences a strong desire by Congress to preserve the public's right to access judicial records, that right is not absolute. *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24 (2d Cir. 1994). Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose. *Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 597-598, n. 8, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978). In this case, the Bankruptcy Court did not seal the Rule 2019 information as Appellants contend, rather, the Bankruptcy Court is regulating access to the information because of privacy concerns related to the electronic case filing system.[48]

Garlock's reliance on Section 107 and *Goldstein*, more complacent than reasoned, doesn't withstand scrutiny. Judge Farnan appropriately cited the decision in *Orion Pictures Corp.*[49] for the important proposition that the right to public access of court documents is not absolute.[50] Where appropriate, "courts must deny access to judicial documents—generally where open inspection may be used as a vehicle for improper purposes."[51] Indeed, the very existence of the exceptions to access articulated in Section 107(b) and (c)

---

[48] *Kaiser Aluminum*, 327 B.R. at 560. Moreover, when Judge Farnan commended this Court in July 2005 for striking an "appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused," he had the benefit of a more recent expression of congressional will than this Court had in October 2004 when it fashioned the 2019 Orders. That April, Congress added Section 107(c) to the Bankruptcy Code with the passage of the—aptly entitled—Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 107(c) expressly empowered a bankruptcy court to protect the basic tools of identity theft like "means of identification" where it found "that disclosure of such information would create undue risk of identity theft or other unlawful injury … ." 11 U.S.C. § 107(c). The Court's prescient concerns about the sensitivity of Confidential 2019 Materials and its potential for abuse were categorically and almost contemporaneously validated by Congress.

[49] 21 F.3d 24.

[50] *Kaiser Aluminum*, 327 B.R. at 560; *see Orion Pictures Corp.*, 21 F.3d at 27.

[51] *Orion Pictures Corp.*, 21 F.3d at 27.

"demonstrates Congress' anticipation that the administration of bankruptcy cases might, by their very nature, require special intervention to protect some kinds of information from dissemination to the world."[52]

> As a bankruptcy court has noted:
>
> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal . . . . Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption . . . or as sources of business information that might harm a litigant's competitive standing.[53]

The *Goldstein* case, where the Third Circuit concluded that "the test for overriding the right of access should be applied ***in this case*** with particular strictness"[54] arose in a context very different from these Cases. *Goldstein* involved the disclosure to class members of sealed bids in an auction conducted to select lead counsel for their class action claims.[55] The court had propagated a process for selecting class counsel that required prospective counsel to submit bids under seal.[56] When one prospective counsel disclosed to the media certain information about the bid process, the court sanctioned the attorney, who appealed the sanction to the Third Circuit. On appeal, the Third Circuit applied a "particularly strict" standard for overriding the right of access "***because of the peculiar posture of class***

---

[52]   *In re 50-Off Stores, Inc.*, 213 B.R. 646, 654 (Bankr. W.D. Tex. 1997).

[53]   *Id.* at 650 n. 7 (*quoting Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 598 (1978)).

[54]   260 F.3d at 194 (emphasis added).

[55]   *Id.* at 188.

[56]   *Id.*

***actions*** whereby some members of the public are also parties to the class action, and because of the importance of selection of lead counsel to class action plaintiffs ….[57]

*Goldstein*'s "particular strictness" favoring access has no application here. As an initial matter, *Goldstein* was decided under non-bankruptcy law and did not apply (or even consider) Section 107, which "provides a broader mandate in favor of sealing documents than applies in non-bankruptcy cases."[58] But, more significantly, Garlock is not a class plaintiff. It is a stranger in the Cases, a bystander intent on intermeddling. The considerations articulated by the Third Circuit in *Goldstein* as to why access was proper there do not remotely apply to Garlock.[59]

The facts here are more analogous to those of *50-Off Stores*, where a creditor sought access to evidence placed under seal by the bankruptcy court during hearings relating to the debtor's retention of a law firm, Akin Gump, as its bankruptcy counsel. The creditor believed the evidence might be relevant in its suit against the debtor and Akin Gump relating

---

[57]  *Id.* at 194 (emphasis added).

[58]  *In re Northwest Airlines Corporation*, 363 B.R. 704, 707 (Bankr. S.D.N.Y. 2007). While the *Northwest Airlines* court ultimately required disclosure of the 2019 statements of counsel for an equity committee in that case, it did so only because the sole stated reason for sealing them was an effort to preserve the members' individual financial advantage and because there were issues concerning whether certain committee members were acting for the benefit of their committee or for the benefit of other stakeholder groups of which they were a part. This made the identity of the committee members highly relevant ***to that bankruptcy case***. *Id.* at *704*. Here, Garlock does not raise any such concerns, and its reasons for requesting the Confidential 2019 Materials in these Cases are for reasons unrelated to the Cases.

[59]  Garlock is not represented in these bankruptcies by the counsel who made the 2019 disclosures; nor was Garlock represented by those attorneys at the time of the bankruptcies. Furthermore, Garlock is not even a creditor in these bankruptcies, nor has it stated any cognizable interest in the administration of these bankruptcies—most of which are closed. Garlock's only stated reason for the access it requests speaks to abuse, not the protection of a class member in a class action.

to a pre-petition stock transaction.  The bankruptcy court denied access, in part because the creditor hadn't availed itself of discovery prerogatives.[60]

The *50-Off Stores* Court reasoned that bankruptcy proceedings, more than any other type of proceeding, require disclosure to the court of "a wide scope of information which, in a nonbankruptcy context, would normally be thought to enjoy a certain expectation of privacy" and it is precisely this extraordinary exposure "that compels the occasional protective intervention of the court."[61]  As aptly articulated by the *50-Off Stores* Court:

> The Supreme Court in *Nixon* noted that the discretion to bar access to judicial records "is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Nixon*, 435 U.S., at 598, 98 S.Ct. at 1312-13.  It recognized that what constitutes an "improper purpose" would have to be left to development of the case law, as unique factual scenarios arose.  Under the facts of this particular case, this Court believes that a litigant's seeking to obtain information from a retention hearing involving the litigant's opposing counsel is an "improper purpose" within the meaning of that term used in *Nixon*, so that access should be denied.[62]

Thus, it logically follows that information required by a bankruptcy court for specific bankruptcy purposes need not be disclosed to a third party for litigious purposes especially where the information might be obtained through the discovery process.

---

[60]  "[T]his court's order sealing the record does not bar the movants from seeking anything they may legitimately obtain via discovery."  *50-Off Stores*, 213 B.R. at 654; *see also Martindell v. Intl. Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979) where the government was denied access to protected court documents on the basis that alternative avenues existed to the government to obtain precisely the same information).

[61]  *50-Off Stores,* 213 at 654.

[62]  *Id.* at 659-660.

**4.  Rule 2019 is about vetting agency in reorganization cases; Garlock's quest for access to Confidential 2019 Materials has nothing to do with agency.**

Even Garlock doesn't suggest that its interest in accessing Confidential 2019 Materials has anything whatsoever to do with Rule 2019's purpose—the vetting of agency in reorganization cases.  Garlock wants to access them for its own partisan, avowedly litigious ends.  Garlock persists in postulating that discrepancies exist between Confidential 2019 Materials and responses it obtained from some asbestos claimants in tort system discovery, specifically, denials of having been exposed to other asbestos defendants' products.  Say, for example, a firm had listed Richard Roe as one of its clients in the Confidential 2019 Materials submitted in *Pittsburgh Corning* (or cast a ballot on behalf of Mr. Roe in *Pittsburgh Corning*'s plan balloting).  Assume, further, that Mr. Roe had earlier denied having been exposed to *Pittsburgh Corning* asbestos in tort system discovery propounded by Garlock.  Garlock maintains such a discrepancy is categorically a "lie."[63]  It also allows its self-interested conviction to inflame its rhetoric past the point of civility:

> By comparing these 2019 exhibits … to the discovery Garlock was simultaneously receiving in the tort system, Garlock can determine whether lawyers and claimants were lying in one (or both) forums.[64]

---

[63]  Almost precisely one year ago, the Court admonished Garlock's counsel for the hubris underlying its litigation position:  "But you can't make a wholesale assertion that every person who is listed on a 2019 statement is abusing either the bankruptcy or the tort system process by naming Garlock and Pittsburgh Corning in the same suit."  Jan. 13, 2010 Transcr. at 50.

[64]  Motion at ¶ 16.  Garlock's "when did you stop beating your wife" rhetorical sanctimony is curious inasmuch as Garlock persists in asking the Court to believe it didn't learn of its erstwhile co-defendant *Pittsburgh Corning*'s bankruptcy until the Case was a decade old.  *See Pittsburgh Corning* Access Motion at 3.

Mr. Peter Lockwood, asbestos committee counsel and thus an estate fiduciary, dispelled Garlock's too-pat reasoning with common sense and clarity at the January 2010 hearing in *Pittsburgh Corning*:

> A 2019 statement is a statement by a lawyer and it says these are the people I represent in this case. That's it. It's [sic] doesn't give you any information about what evidence the clients have in support of their claims and it doesn't tell you whether the lawyer actually is ultimately even going to file a claim in the case or is going to file a ballot in the case.
>
> So let's assume some lawyer has a list of clients wanting to make sure that he doesn't get faulted for being under inclusive, but he hasn't made any decisions at all as to whether those claimants will ever do anything in this case, much less file a proof of claim or anything else, and then the only decision that claimants have made, the clients and the lawyer for those clients, is whether or not they have enough of a claim in this case that they want to vote and that's in the ballot material.
>
> But I don't know how Mr. Cassada is going to prove that let's assume somebody after the ballot date filed a supplemental 2019 statement and the clients of the firm—there are two possibilities about the ballots. One is that they were individual ballots of law firms, the other is that they were master ballots.
>
> If they're individual ballots you'd have to go through and add up all the individual ballots and identify the law firms and come up with a list of law firms. A master ballot by definition does that.
>
> So you compare the people who voted with the people who are named on the 2019 statements as being clients of the firm that are represented in the case. And let's assume there are a lot of people who are listed on the 2019s that didn't vote. What does that show you about whether they've been exposed to Pittsburgh Corning asbestos? I don't think it shows anything.[65]

---

[65] Jan. 13, 2010 Transcr. at 38-39.

**C.    Garlock's summary request to intervene in the 12 Cases, stretching two jurisdictions, is defective and should be denied.**

Garlock's summary request (apparently added as an afterthought) to intervene in the Cases, is defective, misleading, and appropriately denied.  This is especially true as to the 7 Cases already closed, since the permissible grounds for re-opening a bankruptcy case are extremely limited.  Garlock seeks to intervene in these Cases for purposes that have nothing to do with the administration of the Cases themselves or any economic interest Garlock might have therein.  Instead, Garlock would intervene solely in furtherance of a discovery agenda related to its own bankruptcy case.

Garlock implausibly seeks to buttress its standing to intervene by suggesting that it is a party-in-interest or a "likely" creditor in the Cases.  Garlock does not assert, however, that it has filed a proof of claim in any of them,[66] nor does it make a cognizable claim to any right to any manner of distribution from these estates.  Garlock doesn't point to any right it claims to have, or interest it asserts, under the Bankruptcy Code relating to administration of these Cases.  Garlock has never even appeared in most of the Case,[67] and has not exhibited any interest in the administration of most of the Cases.[68]  Garlock is little more than a stranger in

---

[66]    Indeed, from a review of the records available to the Law Firms as of the filing of this response, Garlock has not filed a proof of claim in any of the Cases.

[67]    As the Court is aware, Garlock filed plan objections in the *Pittsburgh Corning* and *W.R. Grace* Cases predicated on its status as a co-defendant of those debtors that remained subject to litigation in the tort system.  Its objections, already rather speculative in nature, were effectively mooted when Garlock filed bankruptcy itself.

[68]    This is true for *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del.); *In re Combustion Engineering, Inc.*, No. 03-10495 (Bankr. D. Del.); *In re Flintkote Co.*, No. 04-11300 (Bankr. D. Del.); *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del.); *In re U.S. Mineral Products Co.*, No. 01-2471 (Bankr. D. Del.); *In re Mid-Valley, Inc.*, No. 03-35592 (Bankr. W.D. Pa.); and *In re North American Refractories Co.*, No. 02-20198 (Bankr. W.D. Pa.).

these Cases; consequently, it lacks standing to intervene for the dubious purpose of pursuing a discovery agenda that cannot possibly affect these debtors or the administration of their Cases, most of which are already closed.

    1.    **Garlock, as a matter of law, lacks sufficient standing to urge the Court to re-open the Cases already closed.**

Garlock's request to intervene for purposes of re-opening the 7 Cases that have already been closed by order of this Court (the "Closed Cases")[69] is, as a matter of law, improper.  The Tenth Circuit has recognized that standing to re-open a closed bankruptcy case is "implicitly confined to debtors, creditors, or trustees, each *with a particular and direct stake in reopening cognizable under the Bankruptcy Code.*"[70]  Clearly, Garlock is not the debtor or a trustee in any of the Closed Cases.  Garlock's contrived status as a "likely" creditor is an empty attempt to whitewash its failure to file a proof of claim in any of the Cases let alone the Closed Cases.

Nor has Garlock articulated a "particular and direct stake in reopening cognizable under the Bankruptcy Code."  Its request to reopen the Closed Cases has nothing to do with their administration, which has been concluded.  Garlock's only stated reason for seeking to reopen the Closed Cases (*i.e.*, to "to access documents filed in the Court") is not a sufficient ground because it would not benefit the debtors in those bankruptcy cases or the creditors.  "[T]he court will not grant a motion to reopen when no clear benefit is shown to

---

[69]    The Closed Cases are:  *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del.); *In re Armstrong World Industries, Inc.*, No. 00-4471 (Bankr. D. Del); *In re Combustion Engineering, Inc.*, No. 03-10495 (Bankr. D. Del.); *In re Owens Corning*, No. 00-0837 (Bankr. D. Del.); *In re U.S. Mineral Products*, No. 01-02471 (Bankr. D. Del.); *In re USG Corp.*, No. 01-2094 (Bankr. D. Del.); *In re Mid-Valley*, No. 03-35592 (Bankr. W.D. Pa.).

[70]    *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995) (emphasis added).

creditors."[71]  All reopening the Closed Cases would do is facilitate improper and ill-conceived discovery pertaining to litigation wholly unrelated to the Closed Cases.  As the Tenth Circuit ruled in *Alpex*, such an agenda does not confer standing.

In *Alpex*, the debtor's confirmed Chapter 11 plan authorized a liquidating trustee to pursue a patent infringement claim against Nintendo.  Nintendo filed a motion to reopen the bankruptcy case to obtain an order interpreting the confirmed plan so as to limit the amount the trustee could recover in the patent infringement lawsuit.  Nintendo claimed it had standing to seek such an order because the amount of its potential liability would be adversely affected depending on how the liquidating trustee decided to enforce the plan and that its potential liability to Alpex gave it standing to challenge the plan.  The Tenth Circuit disagreed.  It found that the obligation of Nintendo to Alpex was affected not by the bankruptcy, but by the course of the separate lawsuit, and that, "Nintendo's status as a defendant in a civil suit does not create standing here."[72]

Here, as in *Alpex,* the movant seeking to reopen the Closed Cases (*i.e.*, Garlock) has not articulated any particular and direct stake relating to the Closed Cases.  Garlock's aspiration to circumvent the discovery process in the tort system (and now in its own bankruptcy case) does not make it a party-in-interest with standing to seek to reopen the Closed Cases.

---

[71]   *In re Antonious*, 373 B.R. 400, 406 (Bankr. E.D. Pa. 2007) (*quoting In re Nelson*, 100 B.R. 905, 907 (Bankr. N.D. Ohio 1989)).

[72]   *In re Alpex*, 71 F.3d at 358.

**2.    Garlock is not a creditor and its discovery agenda does not vest it with standing to intervene in the Cases that are still open.**

Despite its wishful assertions to the contrary, Garlock is not a party-in-interest in the Cases, nor does it otherwise enjoy standing to intervene in them.  As discussed above, the disclosures required under Rule 2019 are for a limited purpose pertaining directly to the administration of the Cases.  Rule 2019 disclosure is not—and was never intended to be—a discovery mechanism at the disposal of opportunistic strangers to a bankruptcy case.  Garlock's desire to avoid conducting discovery in its own bankruptcy case is not a nexus enough to these Cases sufficient to confer standing.

As has been noted, Garlock repeatedly asserts in the Motion that it "was likely a party-in-interest in all the bankruptcy cases."  It attempts to bolster this equivocal assertion by claiming that "[i]n several of the bankruptcy cases, Garlock is a creditor or potential creditor of the debtors by reason of, among other things, rights of indemnity or contribution it may have against such debtors."[73]  This argument only flags for the Court how defective and improper Garlock's summary pleading is.

First, Garlock has made absolutely no showing that it is a creditor in these Cases. The bar dates in all 12 Cases passed long ago, and Garlock has not claimed—nor does the record bear out—that it filed a proof of claim in any of them.  Generalized assertions about illusory rights of indemnity or contribution[74] (for which Garlock has not provided an ounce

---

[73]  Motion at ¶ 87.

[74]  Notably, Garlock's purported claims for contribution and indemnity would have already been disallowed to the extent they remained contingent in those Cases in which the time for allowance under Section 502(e) has already passed.  *See, e.g., In re Touch Am. Holdings, Inc.*, 409 B.R. 712, 716 (Bankr. D. Del. 2009); *In re Fox*, 64 B.R. 148, 150 (Bankr. N.D. Ohio 1986).

of evidence or argument to substantiate) do not constitute claims within a bankruptcy.  This

Court has already admonished Garlock on at least one occasion in this respect:

> THE COURT:  Well, even if it did that, Garlock isn't going to be making any
> payments and Garlock hasn't filed a present proof of claim so there's no
> contribution or setoff right, right now and it isn't going to have any in the
> future because it's not going to be paying any of these claims for Pittsburgh
> Corning because I'm sure no matter what judge has the case that it's not going
> to afford Garlock the opportunity to form a trust to pay some other debtor's
> liabilities when it's got I'm sure they must be huge asbestos liabilities of its
> own, or at least it thinks so, or it wouldn't have filed the bankruptcy.
>
> . . . . .
>
> As to present claims if Garlock had them they should have filed them.  As to
> future claims Garlock isn't going to be liable for any because it's not in the
> tort system.  So, you can't have future claims, you don't have present claims,
> therefore I'm at a loss.[75]

Garlock simply cannot, long after the applicable bar dates, retroactively assert contingent

contribution claims in bankruptcies as a means to bootstrap itself into party-in-interest

status.

Second, absent a claim pending in the bankruptcy, Garlock has no economic interest

in these cases upon which it may rely to intervene in the cases.  "Although 11 U.S.C.

§ 1109(b) broadly defines a 'party in interest,' the phrase invites interpretation and 'is

generally understood to include all persons whose pecuniary interests are, *directly affected* by

the bankruptcy proceedings.'"[76]  Similarly, permissive intervention under Fed. R. Bankr. P.

---

[75]    Oct. 29, 2010 Transcr. at 155-157.

[76]    *In re Alpex*, 71 F.3d at 356 *(quoting, in part, Yadkin Valley Bank & Trust Co. v. McGee*, 5 F.3d 750, 756 (4th Cir. 1993))(emphasis added).

2018(a)[77] may only be permitted upon a showing of cause.  "The cause is an economic or similar interest in the case or one of its aspects."[78]

The "cause" asserted by Garlock is not economic or pecuniary in nature.  By Garlock's own admission, its interest in these cases is limited to a desire to "access documents filed in the Court."[79]  As discussed above, however, Rule 2019 is not a discovery tool for strangers to a bankruptcy case to marshal in furtherance of partisan ends.  The Court has repeatedly recognized this and requires parties seeking to access the Confidential 2019 materials to show a particularized need for the information therein.  Garlock has not— and cannot—show such a particularized need that would affect its economic interests in these Cases.  Indeed, Garlock has no economic interest in these Cases at all.

Third, even if Garlock had standing in some Cases—it does not—that would not vest it with standing in all 12 Cases.  But it needn't come down to that.  As shown above, Garlock lacks standing with respect to the Closed Cases and isn't the debtor, a trustee, or a creditor in any of the Cases.  Garlock's generalized claim of standing in all 12 cases is misleading at best but tends more toward wilfull subterfuge.

---

[77]    Rule 2018(a) provides for permissive intervention as follows:

> In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

Fed. R. Bankr. P. 2018(a).

[78]    *In re Public Serv. Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr. D.N.H. 1988) (*quoting* 8 Collier on Bankruptcy ¶ 2018.03[3] at 2018-7 (15th ed. 1988)); *In re Stephenson*, 415 B.R. 436, 441 (Bankr. D. Idaho, 2009) ("'Cause' under Rule 2018(a) may be shown by establishing 'an economic interest [in the pending matter] or the fact that no other entity exists to adequately protect the interested entity's position.'").

[79]    Motion at ¶ 86.

### III. Conclusion

For the foregoing reasons, the Law Firms respectfully requests that this Court (i) deny the Motion in its entirety, with prejudice; (ii) deny Garlock permission to intervene in the Bankruptcy Cases; (iii) decline to reopen the Closed Bankruptcy Cases; (iv) enter an order preventing Garlock from seeking access to the Rule 2019 Statements filed in the Bankruptcy Cases; and (v) grant the Law Firms such other and further relief to which they may be entitled.

Dated:  January 28, 2011          /s/ Daniel K. Hogan

Daniel K. Hogan (De. Bar No. 2814)

The Hogan Firm
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599


/s/ Peter J. Ashcroft

Peter J. Ashcroft (PA I.D. #87317)

**BERNSTEIN LAW FIRM, P.C.**
Suite 2200 Gulf Tower
Pittsburgh, PA 15219
pashcroft@bernsteinlaw.com
(412) 456-8107
(412) 456-8255 (facsimile)

-and-

**STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A Professional Corporation**
Sander L. Esserman TX Bar No. 06671500
David A. Klingler TX Bar No. 11574300
David J. Parsons TX Bar No. 24037238
Cliff I. Taylor TX Bar No. 24042007
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900
(214) 969-4999 (facsimile)


**ATTORNEYS FOR THE LAW FIRMS**