**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

IN RE:

| | |
|---|---|
| ACandS, Inc. | Case No.: 02-12687 |
| Armstrong World Industries, Inc. | Case No.: 00-4471 |
| Combustion Engineering, Inc. | Case No.: 03-10495 |
| The Flintkote Company | Case No.: 04-11300 |
| Kaiser Aluminum Corp. | Case No.: 02-10429 |
| Owens Corning | Case No.: 00-3837 |
| US Mineral Products Company | Case No.: 01-2471 |
| USG Corp. | Case No.: 01-2094 |
| W.R. Grace & Co. | Case No.: 01-1139 |

Debtors.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | |
|---|---|
| Mid-Valley, Inc. | Case No.: 03-35592 |
| North American Refractories Co. | Case No.: 02-20198 |
| Pittsburgh Corning Corp. | Case No.: 00-22876 |

Debtors.

**BRIEF OF KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY,
WATERS & KRAUS LLP, STANLEY, MANDEL & IOLA, L.L.P.,
SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC,
BERGMAN, DRAPER & FROCKT, GORI JULIAN, & ASSOCIATES, P.C.,
EARLY, LUCARELLI, SWEENEY & STRAUSS, COONEY & CONWAY,
GEORGE & SIPES LLP, LIPSITZ & PONTERIO, LLC, BIFFERATO LLC,
AND MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP,
IN OPPOSITION  TO THE MOTION OF
GARLOCK SEALING TECHNOLOGIES, LLC
FOR ORDER AUTHORIZING ACCESS TO 2019 STATEMENTS
FILED IN THIS COURT AND FOR RELATED RELIEF**

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ................................................................... 2

II.   ARGUMENT ......................................................................................... 5

    A.    This Court's 2019 Orders Represent An Appropriate Protection of the Privacy Rights of the Claimants Whose Names Appear on the Exhibits, and the Protection of that Confidential Information was Important to the Certain Law Firms ............................................................................ 5

    B.    Garlock Misapprehends the Purposes of Bankruptcy Rule 2019 ......... 9

    C.    Garlock's Motion is Based on a Multitude of Inaccurate Facts and Premises .......................................................................................... 13

        1.    The results of Garlock's represented 'random sampling' provides no support for its accusations ................................................. 13

        2.    Garlock's settlement history does not reflect individual assessment of claims ....................................................................... 14

        3.    Garlock's contention that there are or may be dishonest plaintiffs in the tort system is not a proper justification for access to the 2019 Statements. ................................................................. 15

        4.    Even where a claimant omitted a defendant which he or she ultimately pursued for payment, Garlock, as a sophisticated defendant, could identify other potential sources of recovery from the work history provided by a claimant ................................... 16

    D.    Garlock's Purported Rationale For Discovery Is Addressed By Access To Balloting Records ....................................................................... 16

    E.    Garlock's Efforts to Impugn the Integrity of All Asbestos Plaintiffs and All Asbestos Law Firms is Outrageous and Should Not be Countenanced By This Court ...................................................................................... 18

    F.    Garlock's Request to Open and Intervene in these Cases Should be Denied ...... 19

III.  JOINDER ............................................................................................ 19

IV.   CONCLUSION AND PRAYER FOR RELIEF ........................................... 20

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

**CASES**

*In re 50-Off Stores, Inc.*, 213 B.R. 646, 650 n.7 (Bankr. W.D. Tex. 1997)................................... 6

*In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) .......................................... 11

*In re Handy Andy Home Improvement*, 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996) ..................... 7

*In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005)............................................ 8, 10

*In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990)...... 11, 14, 15

*In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2nd Cir. 1994)................................................. 5, 7, 17

*In re Phar-Mor, Inc.*, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995)............................................. 6

*In re Vertientes, Ltd.*, 845 F.2d 57, 58-59 (3d Cir. 1988) ........................................................... 6

**STATUTES**

11 U.S.C. §107.................................................................................................................... 5, 7, 8

11 U.S.C. §107(b) ............................................................................................................... 3, 6, 7

11 U.S.C. §107(c) ............................................................................................................... 3, 6, 7

11 U.S.C. §1125(b) ................................................................................................................... 12

**FEDERAL RULES**

Rule 2019 of the Federal Rules of Bankruptcy Procedure .............................. 9, 10, 11, 13, 14, 17

Rule 7026(c) of the Federal Rules of Bankruptcy Procedure ....................................................... 3

Rule 9018 of the Federal Rules of Bankruptcy Procedure ....................................................... 6, 7

Rule 2019(a) of the Federal Rules of Bankruptcy Procedure ................................................ 10, 11

Rule 2019(b) of the Federal Rules of Bankruptcy Procedure ...................................................... 11

Rule 26(c) of the Federal Rules of Civil Procedure ..................................................................... 7

-ii-

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ACandS, Inc. | : | Case No.: 02-12687 |
| | : | |
| Armstrong World Industries, Inc. | : | Case No.: 00-4471 |
| | : | |
| Combustion Engineering, Inc. | : | Case No.: 03-10495 |
| | : | |
| The Flintkote Company | : | Case No.: 04-11300 |
| | : | |
| Kaiser Aluminum Corp. | : | Case No.: 02-10429 |
| | : | |
| Owens Corning | : | Case No.: 00-3837 |
| | : | |
| US Mineral Products Company | : | Case No.: 01-2471 |
| | : | |
| USG Corp. | : | Case No.: 01-2094 |
| | : | |
| W.R. Grace & Co. | : | Case No.: 01-1139 |
| | : | |
| Debtors. | : | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| Mid-Valley, Inc. | : | Case No.: 03-35592 |
| | : | |
| North American Refractories Co. | : | Case No.: 02-20198 |
| | : | |
| Pittsburgh Corning Corp. | : | Case No.: 00-22876 |
| | : | |
| Debtors. | : | |

**BRIEF OF KAZAN, MCCLAIN, LYONS, GREENWOOD & HARLEY,
WATERS & KRAUS LLP, STANLEY, MANDEL & IOLA, L.L.P.,
SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC,
BERGMAN, DRAPER & FROCKT, GORI JULIAN, & ASSOCIATES, P.C.,
EARLY, LUCARELLI, SWEENEY & STRAUSS, COONEY & CONWAY,
GEORGE & SIPES LLP, LIPSITZ & PONTERIO, LLC, BIFFERATO LLC,
AND MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP,
IN OPPOSITION  TO THE MOTION OF
GARLOCK SEALING TECHNOLOGIES, LLC
FOR ORDER AUTHORIZING ACCESS TO 2019 STATEMENTS
FILED IN THIS COURT AND FOR RELATED RELIEF**

Kazan, McClain, Lyons, Greenwood & Harley, Waters & Kraus LLP, Stanley, Mandel &

Iola, L.L.P., Simmons Browder Gianaris Angelides & Barnerd LLC, Bergman, Draper & Frockt,

Gori Julian & Associates, P.C., Early, Lucarelli, Sweeney & Strauss, Cooney & Conway, George

& Sipes LLP, Lipsitz & Ponterio, LLC, Bifferato LLC, and Montgomery, McCracken, Walker &

Rhoads, LLP, and on their own behalf and on behalf of their respective predecessors ("Certain

Law Firm Objectors") file this Brief in Opposition to the Motion of Garlock Sealing

Technologies LLC ("Garlock") for Orders Authorizing Access to 2019 Statements Filed in This

Court and For Related Relief (the "Access Motion"), and respectfully state as follows:


I.      **SUMMARY OF ARGUMENT**

Garlock asks this Court to permit it to access the sealed exhibits to Rule 2019 Statements

in the above cases so that it may embark on a widespread fishing expedition in search of proof of

"***fraud and abuse***" in the tort system.  Access Motion, ¶24 (emphasis supplied).  Garlock

contends, through sweeping, unsupported and inflammatory allegations, that asbestos claimants

and their counsel routinely "lie" in both this and other courts.  Because Garlock misapprehends

the purpose and meaning of the 2019 Statements in asbestos bankruptcy cases, the discovery

sought fails the most basic requirement of any discovery initiative—namely that it be reasonably

calculated to lead to admissible evidence.  Garlock's Motion must therefore be denied.

-2-

Garlock's position is based on multiple inaccurate, misleading, mischaracterized and entirely unsupported factual allegations. Reduced to its essentials, Garlock contends: (1) that the Rule 2019 Statements represent a sworn declaration by an attorney that the identified clients will pursue a right to payment from the respective debtor; (2) that there is rampant fraud in the tort system and plaintiffs (and their counsel) commonly intentionally file false sworn statements; and (3) that Garlock and its army of sophisticated defense counsel were regularly fooled by dishonest plaintiffs into settling individual cases for inflated values.[1]

In its zeal, Garlock seeks to unseal thousands of pages of highly confidential information contained the attachments to the 2019 Statements, which rightly merited the protection from public eyes originally afforded by the Court. The respective 2019 Orders entered in each of the above cases represents an appropriate exercise under §107(b) (and now §107(c) as well) of the Bankruptcy Code and Bankruptcy Rule 7026(c) and were relied on by the Certain Law Firms in filing Rule 2019 Statements in these cases.

In support of this extreme position, Garlock declares that the 2019 statements filed by lawyers representing asbestos claimants in the *Pittsburgh Corning* bankruptcy case are inconsistent with discovery provided by the same claimants in state tort cases, in which Pittsburgh Corning was not named as a source of injury. However, the Rule 2019 Statements do not, as Garlock contends, represent irrevocable proof that represented asbestos claimants will ultimately pursue a right to payment from the respective debtor. As this Court well knows, the 2019 statements are not equivalent to a factual assertion of a valid claim, but instead are used to disclose, in a bankruptcy reorganization, which firms represent which claimants.

---

[1] Garlock's impertinent and contemptuous allegations against both asbestos claimants and their representatives, including Certain Law Firms, without a substantial – let alone any – factual support, itself justifies denial of the Access Motion.

In fact, this Court has expressly recognized the role that 2019 Statements play in the unique context of asbestos bankruptcy cases.  Given the nature of asbestos injury and the possible multiple exposures from which it may emanate, the 2019 statements are designed to include any claimant that might pursue a claim against the debtor, to assure that, as the cases proceed, individual plaintiffs' are not excluded from their future rights to seek payment.  *See*, Transcript from December 3, 2009 Hearing, *In re Pittsburgh Corning Corporation*, No. 00-22876-JKF, (PCC Tr. 12/3/09), p. 120, lines 2-3 (The Court:  "To the extent that they're on a 2019 statement, they may or may not be claiming a stake in the case.")

Garlock's entire argument hinges on its misguided effort to convert a 2019 Statement into a claim form.  While the 2019 statements were verified, and, in some cases, do include attorneys' statements of "personal knowledge" it was clear to all that this knowledge related to the disclosure of the relationship between the plaintiffs and their attorney, and could not be fairly, or even possibly, construed as an attorney having personal knowledge of the source of his clients' injuries.  In the face of these well-known facts of bankruptcy and asbestos life, Garlock's insistence that these statements have evidentiary value that could be used to support a determination that attorneys "were ***lying*** in one (or both) forums" is disingenuous.  This language which, in most cases, tracks the language of 2019 is designed only to disclose and verify representation of the individuals listed, and not to express an opinion about the future determination of the validity or value of their claims.

Garlock's incorrect characterization of the 2019 statements as a verification of the merits of each claim is the basis for its flawed conclusion that its review of a "sampling" of the voting records has revealed the inconsistencies it foretold would exist.  Access Motion ¶21.  From that unsound position, Garlock jumps to the conclusion that the vast majority of asbestos claimants

-4-

have misrepresented to Garlock, in state court discovery, whether they had claims against other potential asbestos defendants.  Garlock's theory also relies on the assumption that its settlement values were based on the list of defendants that plaintiffs provided, an assumption that has little validity.

Lastly, Garlock has an alternative to the wide ranging and intrusive discovery sought here.  Garlock has or can be provided access to the ballots cast in connection with the plans in these cases.  Those ballots provide a public source by which Garlock may pursue its theory without implicating the privacy concerns of the asbestos plaintiffs represented by the law firms which filed the 2019 statements.  The ballots (unlike the 2019 Statements), although again not determinative of whether a claimant will in fact ultimately pursue a claim against an asbestos trust, is at least an affirmative action by a claimant in the case.

For all of these reasons, the Access Motion should be denied.

## II.   ARGUMENT

### A.   This Court's 2019 Orders Represent An Appropriate Protection of the Privacy Rights of the Claimants Whose Names Appear on the Exhibits, and the Protection of that Confidential Information was Important to the Certain Law Firms

Public access by the public to bankruptcy court proceedings and documents is specifically addressed in §107 of the Bankruptcy Code.  Because Congress enacted an express statutory scheme, issues concerning public disclosure of documents in bankruptcy cases are to be resolved under §107.  *In re Continental Airlines,* 150 B.R. at 337 (D. Del. 1993).

Even absent specific statutory authority to protect private information, the public's right of access to court records is not absolute.  *In re Orion Pictures Corp.,* 21 F.3d 24, 27 (2nd Cir. 1994).  Every court has supervisory power over its own records and files, and access may be denied where court filings might be used in furtherance of improper purposes.  *In re Phar-Mor,*

*Inc.,* 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995) *(quoting Nixon v. Warner Comm., Inc.,* 435

U.S. 589, 597-98 n.8 (1978)).  The decision as to access is one best left to the sound discretion

of the trial court, discretion to be exercised in light of the relevant facts and circumstances of the

particular case.  *In re 50-Off Stores, Inc.,* 213 B.R. 646, 650 n.7 (Bankr. W.D. Tex. 1997).

Thus, a court's decision affecting access to court documents constitutes an exercise of

discretion and may only be reversed in instances where the court abuses its discretion.  *In re*

*Continental Airlines,* 150 B.R. at 336; *see also, In re Vertientes, Ltd.,* 845 F.2d 57, 58-59 (3d

Cir. 1988).

In bankruptcy proceedings, section 107(b) specifically provides for courts to control

access to their dockets as follows:

> (b)     On request of a party in interest, the bankruptcy court **shall**,
> and on the bankruptcy court's own motion may—
>
>                                    …
>
> (2)     protect a person with respect to scandalous or
> defamatory matter contained in a paper filed in a case under
> this title.

11 U.S.C. §107(b) (emphasis added).

As amended in 2005, the Bankruptcy Code also provides for protection of any means of

identification "to the extent that the court finds that disclosure of such information would create

undue risk of identity theft or other unlawful injury to the person".  11 U.S.C. §107(c).

Bankruptcy Rule 9018 provides further elucidation:

> On motion or on its own initiative, with or without notice, the
> court may make any order which justice requires (1) to protect
> the estate or any entity in respect of a trade secret or other
> confidential research, development, or commercial information,
> (2) to protect any entity against scandalous or defamatory matter
> contained in any paper filed in a case under the Code, or (3) to
> protect governmental matters that are made confidential by
> statute or regulation.  If an order is entered under this rule

> without notice, any entity affected thereby may move to vacate or
> modify the order, and after a hearing on notice the court shall
> determine the motion.

FED. R. BANKR. P. 9018.  Both section 107 and Rule 9018 conform with Rule 26(c) of the

Federal Rules of Civil Procedure, which provides that a court may "make any order which justice

so requires to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense, including … that a trade secret or other confidential research, development,

or commercial information not be revealed or be revealed only in a designated way."

If the information for which protection is sought fits into any of the categories

specified in section 107(b) (and presumably also 107(c)), "the court is required to protect a

requesting interested party, and has no discretion to deny the application [for a protective

order]".  *In re Handy Andy Home Improvement,* 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996)

*(quoting in part In re Orion Pictures,* 21 F.3d at 27).  "Good cause" does not figure into the

analysis.  *In re Orion Pictures,* 21 F.3d at 28.

Here, this Court fashioned a thoughtful and well considered solution to achieving the dual

interests of ensuring authorization for a law firm to act on behalf of multiple claimants while at

the same time protecting the sensitive personal information of the claimant victims.  As observed

by the District Court for the District of Delaware:

> Courts have supervisory power over their records and files and
> may deny access to those records and files to prevent them from
> being used for an improper purpose … In the Court's view, ***Judge
> Fitzgerald's Rule 2019 Orders strike the appropriate balance
> between maintaining the public's right to access the Rule 2019
> information and ensuring that the information is not misused.***
> Accordingly, the Court concludes that the Bankruptcy Court did
> not err in declining to post the Rule 2019 information on the
> electronic docket and in permitting access to that information by
> motion of the parties and order of the Court.

*In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005) (internal citations omitted) (emphasis added).

Garlock devotes a substantial portion of its Access Motion to challenging the propriety of the entry of the Rule 2019 Orders in the first instance, strongly contending that there is no proper legal basis for the protection that the Court has provided to the information under seal. *See* Access Motion, ¶¶53-71. Garlock relies on the Rule 2019 Order entered by the Bankruptcy Court for the District of New Jersey in *Congoleum*, where the Court did not provide for exhibits to be filed under seal. [2] While the Certain Law Firms respectfully disagree with the *Congoleum* court, this Court's Rule 2019 Orders are directly at odds with that ruling and Garlock offers little reason for this Court to abandon its well reasoned stance. This Court has previously recognized that the personal information about these claimants could be misused in a variety of ways posing threats to the plaintiffs and this Court's sensitivity to the interests of the individuals who have been injured by exposure to asbestos falls squarely within the authority provided under §107. [3]

Garlock's request should be denied for several additional reasons, including that it does not seek access to plaintiffs' 2019 information for the proper purpose of assuring itself that there are no disqualifying conflicts or duplicative claims. Indeed, it is telling to note that while Garlock's purported reason for seeking access suggests that a simple comparison of names

---

[2] Garlock attaches, at exhibit K to its Access Motion, a 2019 Statement filed by Waters & Kraus, one of the Certain Law Firms, and argues that the fact that Waters & Kraus complied with the orders in the Congoleum case demonstrate that it is not concerned with the confidentiality of its client's information contained on that form. To the contrary, Waters & Kraus did not agree with, but was forced to comply with, the Congoleum order so that it could preserve the interests of those same clients. As this Court will recall, Waters & Kraus has been a strong advocate in multiple proceedings before this Court to maintain the confidentiality of its clients' personal information.

[3] The 2019 Orders entered by this Court in the cases at issue require law firms representing multiple asbestos claimants to file their 2019 Statements on the bankruptcy court's electronic docket. The Orders also require that exhibits to the 2019 Statements are to be supplied to the clerk, Debtors, and the United States Trustee on compact disk. All other parties may access the exhibits only upon motion to and order of the Court.

would provide it with the information it allegedly seeks, the Access Motion makes clear that

Garlock wants *all* of the information filed under seal – including the exemplars of the retention

agreements – documents that have no bearing on any alleged gaming of the system.  Access

Motion, ¶56.  Garlock's desire for access to all of the information filed under seal calls into

question whether its articulated reason is the real reason for seeking the information contained on

the Rule 2019 exhibits.

     Whatever its reasons for seeking the exhibits, any use outside the purposes of the

particular needs of the case in which a Rule 2019 Order was entered would pervert the purposes

of Rule 2019 and adversely affect the reorganization efforts of debtors seeking to resolve their

asbestos liabilities. In light of the relevant facts and circumstances, the 2019 Orders in the cases

at issue all properly govern access to the confidential and personal information contained in the

2019 statements, and it is well within the Court's discretion to deny Garlock's request for access

to these statements now.

     **B.**     **Garlock Misapprehends the Purposes of Bankruptcy Rule 2019**

     A Rule 2019 Statement is not the functional equivalent of a sworn statement by a

claimant of an intention to pursue payment from a debtor.  Instead, a Rule 2019 Statement is a

statement by counsel of who that counsel represents in a reorganization case.  And, in an

asbestos case, because of the nature of asbestos claims, many law firms list all claimants who

may ultimately pursue a right to payment from a debtor or an asbestos trust to be created in its

reorganization.

     Rule 2019 requires every entity representing more than one creditor or equity security

holder in a chapter 11 reorganization case to file a verified statement setting forth (1) the name

and address of the creditor or equity security holder; (2) the nature and amount of the claim or

interest and the time of acquisition thereof; (3) a recital of the pertinent facts and circumstances

in connection with the employment of the representative entity; (4) with reference to the time of

the employment of the representative entity, the amounts of claims or interests owned by the

entity, when they were acquired, the appoints paid therefore, and any sales or other dispositions

thereof. *See* Fed. R. Bankr. P. 2019(a).  The statement must also include a copy of the

instrument whereby an entity is empowered to act on behalf of the creditors.  *Id.*

      Rule 2019 deals with a class of professionals whose fiduciary duty is owed only to their

clients and whose relationship with those clients is neither a matter of public import nor a proper

subject for public concern or discussion.  Rule 2019 requires disclosure of specific, strictly

enumerated information, and applies only in the few cases where a plan process is involved.  In

such a case, Rule 2019 requires limited disclosure by "entities," typically law firms, representing

more than one creditor.  Its purpose is to confirm that these entities are authorized to act in the

reorganization case on behalf of their respective principals (*i.e.*, clients).  More specifically, the

rule exists to assure that plans of reorganization are negotiated by people authorized to negotiate

them (or resist them, or vote for or against them), acting on behalf of the real parties in interest,

and to prevent duplicate claims from eroding the bankruptcy trust funds out of which creditors

are paid.  Its scope is thus limited and its purpose narrow.  If a bankruptcy court has sufficient

information to make the necessary authorization determination, the rationale for Rule 2019 is

satisfied.

      In chapter 11 cases involving mass torts, it is not uncommon for law firms to represent

hundreds or even thousands of a debtor's tort creditors.  This raises the question of how Rule

2019 should be applied, as a logistical matter, in mass tort cases.  Collier's warns against

impractical applications of Rule 2019.  9 Lawrence P. King, *et al.* COLLIER ON BANKRUPTCY

§2019.04 (15th ed. 2004). It is a tool of specific, rather than general, disclosure, providing relevant information concerning the creditors or interests an attorney appearing before a bankruptcy court represents. "[T]he purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process." *In re CF Holding Corp.,* 145 B.R. 124, 126 (Bankr. D. Conn. 1992).

Rule 2019 is not a weapon for disgruntled peripheral parties in mass tort reorganizations to use against tort victims seeking compensation or their counsel. It is not intended as an arbitrary and burdensome hurdle for creditors to surmount in order to participate in bankruptcy reorganization. "[Rule 2019] is part of the disclosure scheme of the Bankruptcy Code. It is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly." *In re Oklahoma P.A.C. First Ltd. P'ship,* 122 B.R. 387, 391 (Bankr. D. Ariz. 1990).

An examination of the text of the Rule itself demonstrates the fallacy of Garlock's position. Rule 2019(b) suggests the limited nature of the disclosure contemplated by Rule 2019(a). The rule is carefully written. There are no "sanctions" for noncompliance, only "effects." Each effect listed is in furtherance of the goal stated by Collier of assuring that the "true party" is being properly represented and that the representation was "properly obtained." 9 Lawrence P. King, *et al.,* COLLIER ON BANKRUPTCY §2019.05[2] (15th ed. 2004) (citations omitted). Thus, Rule 2019(b) states how a bankruptcy court may be assured that a "true party" is being fairly represented and if the "representation was properly obtained." *Id.* The bankruptcy court may *"examine any representation provision* of a deposit agreement, proxy, trust mortgage, trust indenture or deed of trust, or committee or other authorization, *and* any claim

-11-

or interest acquired by any entity or committee in contemplation or in the course of a case

under the Code and grant appropriate relief[.]" (emphasis added).

It is precisely so that the debtor and other parties to an asbestos case know who represents

which claimants or potential claimants that this Court has made clear that every potential claimant

be identified.  Indeed, this Court has recently again admonished firms to be certain to include

claimants that may take action in a case in the future:

> they should put it into the 2019 statement, because they are going
> to be showing up in this case, that's the whole purpose.  If they're
> not going to represent that client in the case -- if, in fact, client's
> not going to vote and never make a claim against the Trust, they
> don't have to list that client.  But I don't want to hear down the
> road that they then filed a ballot or list the claim against the Trust,
> because I will consider that a fraud on the Court.

Transcript from *In re Specialty Products Holding Corp.* ("Bondex Tr."), Case No. 10-11780,

October 18, 2010, page 21, lines 14-22, attached hereto as Exhibit B.

It is also important to note that the while a bankruptcy court has the power to "determine

whether there has been a failure to comply" and has the power to hold invalid any "authority,

acceptance, rejection, or objection given, procured, or received by an entity or committee who

has not complied with this rule or with §1125(b) of the Code," it is clear from two discrete

phrases in the rule's text that the bankruptcy court's inquiry is directed to the

reorganization itself, and not to the extra-bankruptcy relationship of the non-debtor.  First,

the bankruptcy court is empowered to look only at *"any representation provision"* within the

non-debtor instrument or agreement - not the instrument or agreement itself, but only a discrete

*provision* thereof.  Then, if the "representation provision" does not establish the entity's

authority, the court may "hold invalid *any authority, acceptance, rejection, or objection given,*

*procured or received by* an entity or committee who has not complied with this rule …"

(emphasis added).  The limited inquiry contemplated by the rule is consistent with the circumscribed power of the bankruptcy courts over non-debtor contractual relationships.

The 2019 Orders fashioned by the Court in these cases require detail not specifically required by the language of Rule 2019 itself.  The Court tailored the form to the particular needs of an asbestos bankruptcy case.  As such, the exhibits filed under seal contain information that generally would not be disclosed by a claimant in a public filing.

In sum, the Rule and the disclosures made pursuant to it, were never intended as an alternative to a verified statement of right to payment by a claimant, and were never intended to provide the public at large with access to confidential, sensitive information that the Court required to be filed separately, but in conjunction with the statements themselves.

## C.   Garlock's Motion is Based on a Multitude of Inaccurate Facts and Premises

Garlock's asserted basis for needing the confidential information contained in the exhibits to Rule 2019 Statements is summarized in paragraph 16 of the Access Motion:

> By comparing these 2019 exhibits verifying known exposures to the debtors' products, to the discovery Garlock was simultaneously receiving in the tort system, Garlock can determine whether *lawyers and claimants* were *lying* in one (or both) forums.

Access Motion, ¶16.

Garlock then contends that it *requires* this proof for its own estimation case because "If Garlock's past settlements were inflated by fraud and abuse, they present an unreliable guide to its current and future liability for asbestos claims…."  Access Motion, ¶23.

### 1.   The results of Garlock's represented 'random sampling' provides no support for its accusations.

In addition to its improper attempt to characterize the Rule 2019 Statements as verified statements by law firms that their clients will have a right to payment from a particular debtor

-13-

(under trust distribution procedures not determined at the time that the Rule 2019 Statements are filed), Garlock asserts that it has "evidence" of fraud obtained by "compare[ing] a random sample of discovery materials, gathered by its local counsel to the Pittsburgh Corning ballots." Access Motion ¶21.  Garlock fails to reveal what the size or methodology of its sampling was but maintains that "of the mesothelioma plaintiffs in the sample who had sued Garlock, 255 had also voted in Pittsburgh Corning …." *Id.*  Without knowing more, the value of this exercise is impossible to measure, especially given the fact that well over 100,000 claims are pending in the Garlock bankruptcy and some 350,000 votes were cast in Pittsburgh Corning.

Garlock provides no detail as to which claimants or law firms it accuses of fraud, and therefore provides no ability to respond to its accusation.  To date, Certain Law Firms have had no response to their request for any alleged evidence concerning them or their clients.  *See* Exhibit C, January 28, 2011 email from N. Ramsey to G. Cassada and R. Worf.

Notwithstanding the lack of support offered for its highly inflammatory allegation, Garlock uses this assertion to justify its request to examine Rule 2019 exhibits without explanation of why or how such exhibits could possibly lead to the discovery of admissible evidence as regards its estimation protocol.

## 2.    Garlock's settlement history does not reflect individual assessment of claims.

Garlock states that the information in the 2019 statements is "highly relevant to estimation in Garlock's pending bankruptcy case."  Access Motion, ¶82.  A premise of this argument must be that Garlock examines each pending case and analyzes it independently to determine whether there is a defense to either its full or partial liability.  However, Garlock provides no support for this premise, for instance, in the form of an Affidavit verifying that its settlements were based, at least in substantial part, on its knowledge of which entities a plaintiff

-14-

identified as other possible sources of recovery, and what percentage of liability these other entities would bear towards each plaintiff

This evidence is lacking because it does not exist.  In practice, an independent analysis of each claim is inefficient and unfeasible, given the number of claims that Garlock is facing, and has faced.  *See* Exhibit D, Garlock's June 5, 2010 Press Statement re: Permanent Resolution of Asbestos Litigation (stating that Garlock had, prior to bankruptcy, resolved 900,000 claims).  As the Garlock asbestos committee's expert, Dr. Mark Peterson explained in a recent hearing, the firms representing the plaintiffs and the firms representing the defendants have processed so many claims prior to and during bankruptcy that they classify claims at certain "market" levels and settle them on a wholesale basis at these levels.  *See* Exhibit E, Transcript of November 18, 2010 Hearing in *In re Garlock Sealing Technologies, LLC, et al.*, Case No. 10-31607, Testimony of Dr. Mark Peterson, and accompanying Exhibits.  Dr. Peterson testified that his conclusion was based both on his knowledge of the industry and his analysis of the distribution of payments to claimants by Garlock.  *Id.* at p.1031.  Accordingly, it is clear that Garlock's settlement of cases has been a matter of volume and negotiation, not individualized risk and liability assessment.

> **3.  Garlock's contention that there are or may be dishonest plaintiffs in the tort system is not a proper justification for access to the 2019 Statements.**

As the Court recognized at the *Pittsburgh Corning* hearing on December 3rd, there may well be some percentage of the population who are dishonest, and therefore, by extrapolation, some percentage of plaintiffs who are dishonest.  *See* PCC Tr. 12/3/09, p. 106, lines 11-14.  However, such a proposition cannot properly be used to suggest fraud by the entire plaintiff population – or indeed on any plaintiff as to whom there is no evidence of impropriety or reason to suspect impropriety.  The same principle applies to counsel.  Put another way, the potential for, or even the existence of, such dishonest individuals in the system does not justify opening up

the personal information of all personal injury claimants to Garlock.  Turned around, the

possibility or potential that some percentage of asbestos defendants are dishonest in the

information that they provide to plaintiffs would justify providing the plaintiffs with each

defendant's database and files and permit the plaintiffs to conduct a fishing exhibition for any

evidence of dishonesty.[4]


       **4.**      **Even where a claimant omitted a defendant which he or she
ultimately pursued for payment, Garlock, as a sophisticated
defendant, could identify other potential sources of recovery from the
work history provided by a claimant.**

It is standard in depositions taken of, and in interrogatories served on, an asbestos

plaintiff that he or she is asked for a work and exposure history.  Some examples of the types of

responses provided by plaintiffs are attached hereto at Exhibits F and G.  These work histories

are detailed, and include such key facts as occupation and work location.  Any asbestos

defendant who is routinely named, and any asbestos defense counsel with experience can review

these work histories and identify possible sources of recovery by an injured plaintiff.  The

suggestion that Garlock was duped by plaintiffs who do not identify a particular defendant, but

provided an accurate and complete work history is not credible.

       **D.**      **Garlock's Purported Rationale For Discovery Is Addressed By Access To
Balloting Records**

As discussed above, the information to which Garlock seeks access is neither necessary

or even helpful to the argument it wishes to make.  Garlock's alleged rationale for access is its

desire to use the Rule 2019 Statements to prove that plaintiffs are claiming a debtor's liability in

one forum and denying it in another.  The Rule 2019 Statements do not address this issue and

---

[4] Moreover, as Garlock itself suggests, if one assumes a dishonest plaintiff, one must then determine in which forum the plaintiff has been dishonest – in claiming against Garlock or in claiming against an asbestos debtor.

cannot be properly used as an evidentiary basis for that argument.  Such use is neither contemplated by the Bankruptcy Rules nor by this Court.

In the present case, the 2019 Statements contain precisely the kind of information required by Rule 2019 and serve only to verify for the Court that the law firms representing certain asbestos claimants are authorized to do so in fact.  Yet, Garlock does not seek the information for this narrow Rule 2019 purpose.  The information Garlock purportedly seeks (*i.e.*, information identifying other debtors' claimants which Garlock hopes to compare with information about plaintiffs who have sued it in the tort system) is more readily, and more reliably available in the form of ballots from the vote taken on the Plan.

The Court's previous grant of access to the ballots in *Pittsburgh Corning* was a sensible and adequate answer to Garlock's request:

> [I]f you're suggesting that because they vote they…purport to have a claim against the debtor, I believe that the ballots are with the ballot agent, are they not?  And they're not under seal, so if you want to know who the claimants are who voted in this case I'll give you access to the ballots.  That should satisfy the problem because that will not then put before the public anything about the information that has been kept confidential, *and it will tell you who actually is asserting a claim against the estate because they will be the people who voted.*

PCC Tr. 12/3/09, p. 118, lines 3-13 (emphasis added).

Balloting information not only provides what Garlock with the ability to make the argument that its settlement history is an inaccurate basis for estimating its future liability, but does so more reliably.  Claimant information obtained from the ballots is a more reliable measure of which claimants might bring claims against an eventual trust because the parties identified on in 2019 Statements may or may not ever submit their claims.  While those that vote also may not ever bring claims, they have at least taken the affirmative step of identifying themselves as creditors.  *See* Transcript of December 3, 2009 Hearing ("December 3rd Transcript") at 118, lines

-17-

3-13.  For this reason, identifying information of the claimants in the balloting is therefore significantly more probative of which claimants are likely to submit claims to an eventual trust than that contained in the 2019 Statements.

> ### E.    Garlock's Efforts to Impugn the Integrity of All Asbestos Plaintiffs and All Asbestos Law Firms is Outrageous and Should Not be Countenanced By This Court

Garlock's motion accuses the entire plaintiff's bar of a conspiracy to inflate settlements by hiding information about multiple sources of exposure.  Without restraint, and certainly without respect or discretion, Garlock accuses the lawyers and their clients of "lying," "concealing," "fraud" and "abuse."  Garlock's lack of professional civility would be shocking under ordinary circumstances, but here the circumstances are exacerbated by the fact that it is based on *no evidence at all*.  No affidavit has been submitted and nothing tangible has been offered in support of these charges against lawyer and client alike except a statistically insignificant and poorly described sampling dealing with a minute percentage of claims.

Of course, like other most conspiracy theories, Garlock's theory makes no sense. Plaintiffs who have mesothelioma aren't lying about the fact that their disease was caused by access to asbestos.  They are also not lying about their work histories or other exposures, as these are facts which can be objectively proven.  These individuals, who are injured, dying or facing uncertain futures, are now accused of lying to "inflate" Garlock's liability.  And these charges are similarly leveled at their lawyers, licensed professionals, bound by codes of professional responsibility and ethics to uphold the law.

While tensions between claimants and debtors have arisen before, and understandably so given the high stakes, Garlock's motion sets a new precedent for both a heightened level of rhetoric and a lowered level of proof.  The Court should reject Garlock's motion, and its tactics,

thereby preserving both the integrity of this process and the confidentiality of the claimants' personal information.

**F.    Garlock's Request to Open and Intervene in these Cases Should be Denied**

Garlock's request to open and/or intervene in these cases is procedurally defective and not supported by the facts.  Garlock argues that it has standing to makes these requests as a party in interest or a "likely" creditor in these cases.  However, Garlock does not assert that it has entered its appearance or filed a claim in any of these cases other than *Pittsburgh Corning* and *W.R. Grace*.  As a result, Garlock has not demonstrated its standing.  Its effort to open and/or intervene to pursue its extraordinary discovery effort should be not be countenanced.

**III.    JOINDER**

To the extent appropriate, the Law Firms hereby join in the arguments advanced by any other party in opposition to the Access Motion and incorporate those arguments, by reference, as if fully set forth herein.

IV.      **CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the Law Firm Objectors respectfully urge this Court to deny the Access Motion and order the Debtor to maintain the confidentiality of the Rule 2019 Statements, and grant such other and further relief as to which the Law Firm Objectors may be entitled.


Dated:  January 28, 2011

/s/ Natalie D. Ramsey
Natalie D. Ramsey (DE 5378)
/s/ Laurie A. Krepto
Laurie A. Krepto (DE 4109)
MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
1105 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone:     (302-504-7830)
Facsimile:      (302-504-7820)


/s/ Natalie D. Ramsey
Natalie D. Ramsey (PA 41412)
/s/ Laurie A. Krepto
Laurie A. Krepto (PA 76313)
MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
123 S. Broad Street
Philadelphia, PA  19109
Telephone:     (215-772-1500)
Facsimile:      (215-772-7620)

*Counsel to the above-named firms*


Of Counsel:  Ellen C. Brotman
             Montgomery, McCracken, Walker & Rhoads, LLP
             123 South Broad Street
             Avenue of the Arts
             Philadelphia, PA 19109

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | | |
| ACandS, Inc. | : | Case No.: 02-12687 |
| Armstrong World Industries, Inc. | : | Case No.: 00-4471 |
| Combustion Engineering, Inc. | : | Case No.: 03-10495 |
| The Flintkote Company | : | Case No.: 04-11300 |
| Kaiser Aluminum Corp. | : | Case No.: 02-10429 |
| Owens Corning | : | Case No.: 00-3837 |
| US Mineral Products Company | : | Case No.: 01-2471 |
| USG Corp. | : | Case No.: 01-2094 |
| W.R. Grace & Co.      Debtors. | : | Case No.: 01-1139 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | | |
| Mid-Valley, Inc. | : | Case No.: 03-35592 |
| North American Refractories Co. | : | Case No.: 02-20198 |
| Pittsburgh Corning Corp. | : | Case No.: 00-22876 |
| Debtors. | | |

**EXHIBIT LIST TO BRIEF OF KAZAN, MCCLAIN, LYONS,
GREENWOOD & HARLEY,
WATERS & KRAUS LLP, STANLEY, MANDEL & IOLA, L.L.P.,
SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC,
BERGMAN, DRAPER & FROCKT, GORI JULIAN, & ASSOCIATES, P.C.,
EARLY, LUCARELLI, SWEENEY & STRAUSS, COONEY & CONWAY,
GEORGE & SIPES LLP, LIPSITZ & PONTERIO, LLC, BIFFERATO LLC,
AND MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP,
IN OPPOSITION  TO THE MOTION OF
GARLOCK SEALING TECHNOLOGIES, LLC
FOR ORDER AUTHORIZING ACCESS TO 2019 STATEMENTS
FILED IN THIS COURT AND FOR RELATED RELIEF**

| Exhibit | Description |
|---|---|
| A | Excerpts from December 3, 2009 Hearing Transcript<br>*In re Pittsburgh Corning Company,* Case No. 00-22876 (JKF) |
| B | Excerpts from October 18, 2010 Hearing Transcript<br>*In re Specialty Products Holding Corp.,* Case No. 10-11780 (JKF) |
| C | January 28, 2011 email from N. Ramsey to G. Cassada and R. Worf |
| D | Press Release dated June 5, 2010:  Garlock Sealing Technologies Moves Toward a Permanent Resolution of Asbestos Litigation |
| E | Excerpts from November 18, 2010 Hearing Transcript, with accompanying exhibits<br>*In re Garlock Sealing Technologies, LLC, et al*., Case No. 10-31607 |
| F | Affidavit of Drewry William Carter, dated October 28, 2008 |
| G | Affidavit of John H. Schumacher, dated August 22, 2009 |

2673560v2