**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| IN RE:<br><br>ACandS, Inc.<br>Armstrong World Industries, Inc.<br>Combustion Engineering, Inc.<br>The Flintkote Company<br>Kaiser Aluminum Corp.<br>Owens Corning<br>US Mineral Products Company<br>USG Corp.<br>W.R. Grace & Co.<br><br>Debtors. | Case No.: 02-12687 (Rel. Dkt. No. 3639)<br>Case No.: 00-4471 (Rel. Dkt. No. 10698)<br>Case No.: 03-10495 (Rel. Dkt. No. 3380)<br>Case No.: 04-11300 (Rel. Dkt. No. 5606)<br>Case No.: 02-10429 (Rel. Dkt. No. 10009)<br>Case No.: 00-3837 (Rel. Dkt. No. 20954)<br>Case No.: 01-2471 (Rel. Dkt. No. 3878)<br>Case No.: 01-2094 (Rel. Dkt. No. 12596)<br>Case No.: 01-1139 (Rel. Dkt. No. 26053) |
|---|---|

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| IN RE:<br><br>Mid-Valley, Inc.<br>North American Refractories Co.<br>Pittsburgh Corning Corp.<br><br>Debtors. | Case No.: 03-35592 (Rel. Dkt. No. 2770)<br>Case No.:02-20198 (Rel. Dkt. No. 6944)<br>Case No.:00-22876 (Rel. Dkt. No. 8096)<br><br>**Hearing Date: February 14, 2011 @ 8:30 a.m.** |
|---|---|

**JOINDER AND OBJECTION OF THE OFFICIAL COMMITTEES OF ASBESTOS
CLAIMANTS IN THE FLINTKOTE, GRACE, NARCO AND PITTSBURGH CORNING
BANKRUPTCIES TO GARLOCK'S MOTION FOR ORDERS AUTHORIZING
<u>ACCESS TO 2019 STATEMENTS AND RELATED RELIEF</u>**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.   Garlock Seeks the Rule 2019 Exhibits for Improper Purposes ........................... 3

    A.   This Court May Deny Access to Documents to Prevent Them from Being Used for Improper Purposes ........................................................ 3

    B.   Garlock Acknowledges Its Purposes in Seeking the Rule 2019 Exhibits ............... 4

    C.   Garlock's Purposes for Seeking the Rule 2019 Exhibits are Improper ................. 5

II.  The Law Does Not Support Garlock's Attempt to Gather All Rule 2019 Exhibits from Twelve Bankruptcies ........................................................................ 7

    A.   There is Cause to Withhold the Rule 2019 Exhibits ............................... 7

    B.   Garlock Has Not Shown Cause to Be Provided with the Rule 2019 Exhibits ..................................................................................................... 10

CONCLUSION .................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re 50-Off Stores, Inc.*,
   213 B.R. 646 (Bankr. W. D. Tex. 1997)........................................................2, 3, 4, 7, 8, 9, 10

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
   321 B.R. 147 (D.N.J. 2005)............................................................................................11

*In re Cendant Corp.*,
   260 F.3d 183 (3d Cir. 2001).............................................................................................3

*In re Congoleum Corp.*,
   426 F.3d 675 (3d Cir. 2005)......................................................................................11, 12

*In re JMS Automotive Rebuilders, Inc.*,
   No. 01-05600DDP, 2002 WL 32817517 (C.D. Cal. Jan. 15, 2002).......................................10

*In re Kaiser Aluminum Corp.*,
   327 B.R. 554 (D. Del. 2005)..........................................................................................3, 6

*Littlejohn v. BIC Corp.*,
   851 F.2d 673 (3d Cir. 1988).............................................................................................3

*Nixon v. Warner Commc'n, Inc.*,
   435 U.S. 589 (1978)..................................................................................................3, 4, 7

*In re Orion Pictures Corp.*,
   21 F.3d 24 (2d Cir. 1994) ..............................................................................................3, 9

*In re Pittsburgh Corning Corp.*,
   260 F. App'x 463 (3d Cir. 2008) .............................................................................7, 11, 12

*In re Pittsburgh Corning Corp.*,
   No. 04-1814 , 2005 WL 6128987(W.D. Pa. Sept. 27, 2005).......................................................7

*In re Premier Int'l Holdings, Inc.*,
   423 B.R. 58 (Bankr. D. Del. 2010) .................................................................................6, 7

**DOCKETED CASES**

*In re Pittsburgh Corning Corp.*,
   No. 00-22876 (Bankr. W.D. Pa.) ................................................................1, 2, 5, 6, 7, 12, 13

**STATUTES AND RULES**

11 U.S.C. § 107 ................................................................................................................2

11 U.S.C. § 107(a) ...........................................................................................................3

11 U.S.C. § 107(b) ......................................................................................................9, 10

11 U.S.C. § 107(c) ........................................................................................................8, 9

18 U.S.C. § 1028(d) ..........................................................................................................9

18 U.S.C. § 1029(e) ..........................................................................................................9

Fed. R. Bankr. P. 2019 ............................................................................................. *passim*

Fed. R. Bankr. P. 9018 ....................................................................................................10

The Official Committees of Asbestos Claimants in the Flintkote, Grace, NARCO and Pittsburgh Corning bankruptcy cases (the "ACCs") hereby join in the relief requested in the oppositions filed by the Peter Angelos et al. Law Firms ("Angelos Opposition")[1] and the Kazan, McClain, Lyons, Greenwood & Harley et al. Certain Law Firm Objectors ("Kazan Opposition")[2] (collectively, the "Law Firm Oppositions") to the Motion of Garlock Sealing Technologies LLC ("Garlock") for Orders Authorizing Access to 2019 Statements Filed in This Court and For Related Relief (the "Motion"),[3] and likewise oppose the Motion by filing this Joinder and Objection (the "Objection"). In support of the Objection, the ACCs respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Garlock, a stranger to these bankruptcy cases, is attempting to misuse Rule 2019 for purposes it was never intended to serve — fishing-expedition discovery premised on unsupported allegations of widespread fraud and divorced from any connection with the purposes of Rule 2019 or of the above-captioned cases in general. During all of the many years of asbestos bankruptcies and related litigation, the ACCs do not believe that anyone other than Garlock has ever sought such Rule 2019 Exhibits from *other* cases, much less done so with respect to twelve such cases at once. No relevant precedent supports such an attempt, and protecting against the disclosure of the 2019 Exhibits to Garlock is well within this Court's discretion.

2. To the contrary, this Court already addressed Garlock's arguments when Garlock previously made them in *Pittsburgh Corning*, and Garlock provides no reason for this Court to

---

[1] *See, e.g., In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 28, 2011) [Dkt. No. 8118].

[2] *See, e.g., In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 28, 2011) [Dkt. No. 8121].

[3] *See, e.g., In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 10, 2011) [Dkt. No. 8096].

change its earlier analysis.  That analysis made clear that the seeking of wholesale discovery of Rule 2019 Exhibits for use in other cases was inappropriate and would not be permitted by this Court.

3. The Garlock ACC has authorized the ACCs to inform the Court that it disputes whether the 2019 Exhibits are within the reasonable scope of discovery in the aggregate estimation proceeding in the Garlock bankruptcy, and will press those arguments before Judge Hodges in the Garlock case.  As Judge Hodges is best positioned to resolve that issue, and as, for the reasons set forth herein, Garlock is not entitled to the Rule 2019 Exhibits regardless of its purported use for them in the Garlock bankruptcy, this Court need not address it.

## ARGUMENT

4. Because it is unable to defend its unprecedented demand for all Rule 2019 exhibits in twelve separate cases (some of which are closed) on the merits, Garlock's Motion almost entirely relies on the general principle that members of the public have a presumptive right to publicly-filed documents.  In so doing, Garlock ignores or misstates previous rulings regarding Rule 2019, misstates the law under Section 107, and fails to acknowledge that it is well within this Court's authority to quash attempts to gather such information for improper purposes.

5. When Garlock does bother to address its purported need for the voluminous and confidential information it seeks, it does so in a way that both acknowledges its improper attempts to use such information as discovery materials in other cases, and fails to acknowledge that the Rule 2019 exhibits, by their very nature, could not establish what Garlock purports to be attempting to establish.

6. Moreover, the decision to restrict access to such materials is well within this Court's discretion.  *See, e.g.*, *In re 50-Off Stores, Inc.*, 213 B.R. 646, 659 (Bankr. W. D. Tex.

{D0195755.1 }

- 2 -

1997) (following Supreme Court's guidance that "bar[ring] access to judicial records is [] best left to the sound discretion of the trial court") (internal quotations and citations omitted).

## I. Garlock Seeks the Rule 2019 Exhibits for Improper Purposes

### A. This Court May Deny Access to Documents to Prevent Them from Being Used for Improper Purposes

7. As the District Court noted while addressing the confidentiality of Rule 2019 submissions in *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005), "[a]lthough Section 107(a) evidences a strong desire by Congress to preserve the public's right to access judicial records, that right is not absolute." To the contrary, "[c]ourts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose." *Id.* The Supreme Court itself has recognized that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 598 (1978).

8. Indeed, Garlock's own cited cases recognize that "[i]n limited circumstances, courts must deny access to judicial documents-generally where open inspection may be used as a vehicle for improper purposes." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (citations omitted); *see also In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) ("access has been denied where court files might have become a vehicle for improper purposes") (quoting *Nixon*, 435 U.S. at 598); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (same).

9. Accordingly, where a Court determines that otherwise public records are sought for an improper purpose, it will protect such records from disclosure. *See, e.g.*, *50-Off,* 213 B.R. at 659-60 (refusing to unseal a retention hearing where, among other things, "the record in this

matter seems at least to suggest an 'improper purpose' as that term was used by the Supreme Court in the *Nixon* case").

### B. Garlock Acknowledges Its Purposes in Seeking the Rule 2019 Exhibits

10. Garlock makes clear that it seeks the Rule 2019 Exhibits to support far-fetched claims of fraud in other cases. For example, Garlock now claims it "requires the 2019 statements and exhibits for use in its own bankruptcy case," allegedly because "[b]y comparing these verified statements to discovery Garlock received over the past decade, Garlock can prove the extent to which plaintiffs' firms were concealing evidence of alternative exposures in order to inflate Garlock's settlement values." Motion at 11. Garlock also baldly asserts that it seeks the 2019 Statements because "Garlock is investigating the possibility of damages actions against plaintiffs' firms or claimants to recoup settlements obtained through the concealment of exposure evidence." Motion at 11.

11. Indeed, the only other potential purpose identified by Garlock is even more inappropriate. Garlock claims that "[b]y comparing these 2019 exhibits verifying known exposures to the debtors' products, to the discovery Garlock was simultaneously receiving in the tort system, Garlock can determine whether lawyers and claimants were lying in one (or both) forums." Motion at 8. Putting aside the issue of whether the exhibits could in fact serve that purpose (they could not) or whether Garlock has a sufficient evidentiary basis to engage in such an exercise (it does not), Garlock possesses no roving commission to uncover alleged misstatements in various bankruptcies in which it was not a party and many of which are now closed. It certainly cites no authority for such a ridiculous proposition, and such a purpose likewise would be illegitimate.

### C. Garlock's Purposes for Seeking the Rule 2019 Exhibits are Improper

12. This Court has already made clear that attempts to seek Rule 2019 Statements for use in other cases violate the purpose of the Rule, and are inappropriate. "[T]he purpose for filing the 2019 statements is essentially to make sure that the Court understands that the parties who – that the attorneys who purport to represent particular parties actually do represent those parties and therefore have the right to participate in the significant events in the case. *They are not there for the purpose of allowing another party to use them in some litigation context outside the confines of this case.*" Hearing Transcript at 40, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 13, 2010) (emphasis added) (excerpts attached as Ex. A). As noted above, in the current Motion Garlock acknowledges that its primary purpose for seeking the Rule 2019 Exhibits is to attempt to use them in other cases.

13. Similarly, if Garlock had a basis for believing such misstatements existed as to certain claimants or counsel in tort cases, it could seek discovery (to the extent permitted) from the makers of such misstatements in the relevant state court fora. As this Court has noted, "If they've taken an inconsistent position in the tort system, go complain to the state court judge about the fact that they've taken an inconsistent position." *Id.* at 43.

14. In fact, the Court specifically noted the inappropriateness of the mass discovery aspect of Garlock's request for the 2019 Statements, stating that "giving you mass discovery as to everybody who every law firm represents I think has no basis in law or in fact." *Id.* at 44-45. As the Court noted, "[t]hat is wholesale fishing." *Id.* at 51. As the Court also noted, "[y]ou need it in connection with a specific case. You have to be able to make an allegation that tort plaintiff A has essentially lied and when you make that allegation under oath or as a certification in a specific case, I will be happy to consider whatever disclosure is appropriate to attempt to prove

that it's either true or not true." *Id.* Garlock has not complied with this Court's prior Rule 2019 ruling, a ruling from which it did not appeal.

15. Not only is Garlock not bringing its request in connection with a specific tort plaintiff, but it is now doing so with respect to *twelve* bankruptcy cases, including in *Pittsburgh Corning* where its request was previously denied. Its attempt to misuse Rule 2019 as a discovery fishing expedition should once again be rejected.

16. When a statement under Rule 2019 is required, the Rule itself instructs that the statement should contain:

> (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity * * *; and (4) with reference to the time of the employment of the entity, the organization or formation of the committee, * * * the amounts of claims or interests owned by the entity, * * * the times when acquired, the amounts paid therefor, and any sales or other disposition thereof. * * * The statement shall include a copy of the instrument, if any, whereby the entity is empowered to act on behalf of creditors or equity security holders.

Fed. R. Bankr. P. 2019. "The purpose of Rule 2019 is to ensure that plans of reorganization are negotiated and voted upon by people who are authorized to act on behalf of the real parties in interest." *Kaiser*, 327 B.R. at 559 (citing 9 Lawrence P. King, et al., Collier on Bankruptcy § 2019.05[2] (15th ed. 2004)).

17. As is apparent from its text and purpose, Rule 2019 is not meant as a weapon for debtors to use in inflicting costs and burdens on creditors, nor as a one-sided discovery device. Accordingly, a Motion and proposed order that invoke the Rule for such improper purposes should be summarily rejected. *See In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 75 (Bankr. D. Del. 2010) (denying a motion to compel performance of Rule 2019 obligations and stating "the Official Committee, by filing its motion, is clearly engaged in a litigation tactic to apply pressure

on it[s] current adversary, the Informal Committee of SFO Noteholders, as well as attempting to make an 'end run' around a previous ruling denying the Official Committee's request for discovery seeking virtually the same information"); *50-Off*, 213 B.R. at 659-60 ("[u]nder the facts of this particular case, this Court believes that a litigant's seeking to obtain information from a retention hearing involving the litigant's opposing counsel is an 'improper purpose' within the meaning of that term as used in *Nixon*, so that access should be denied").

18.  Garlock's Motion seeks information for use in other cases as an end run around properly-limited discovery. As supported by the above precedent, and consistently with its prior rulings in *Pittsburgh Corning*, this Court should therefore deny Garlock's Motion.

**II.  The Law Does Not Support Garlock's Attempt to Gather All Rule 2019 Exhibits from Twelve Bankruptcies**

19.  Even if Garlock's purposes for gathering the Rule 2019 Exhibits were not improper, it still would not be entitled to the Rule 2019 Exhibits, because those Exhibits contain confidential information and are deserving of protection. As the District Court ruled in *Pittsburgh Corning*, in response to a request for the Rule 2019 Exhibits this Court is free to hold that "countervailing concerns justify the continued protection of the information," a ruling that was affirmed by the Third Circuit. *In re Pittsburgh Corning Corp.*, No. 04-1814, 2005 WL 6128987, at *10 (W.D. Pa. Sept. 27, 2005), *aff'd*, 260 F. App'x 463 (3d. Cir. 2008).

20.  Moreover, Garlock has not shown any entitlement to the Rule 2019 Exhibits as a party or for any other reason.

**A.  There is Cause to Withhold the Rule 2019 Exhibits**

21.  As demonstrated in Part I, above, the purpose of Rule 2019 is to inform the Court who represents whom. That purpose is not furthered by the production of the Rule 2019 Exhibits to Garlock, but would be hindered by it. If tort victims thought that the submission of Rule 2019

Statements could lead to the ultimate production of their confidential medical disease types, names, addresses, and in some cases, social security numbers, into the indefinite future for the purposes of *other* cases involving unknown issues and parties, they would be less inclined to provide such Statements voluntarily, and more likely to litigate such submissions and their exhibits earlier and more vigorously. This would likely lead to an unwelcome proliferation of satellite litigation that could only distract this Court and others from the purposes of both Rule 2019 specifically and Chapter 11 generally. There is no justification in Rule 2019 for such an outcome, and it should be avoided. *Cf. 50-Off Stores*, 213 B.R. at 659 (stating, with reference to the retention of professionals, "[t]he statute and its implementing rules require disclosures of a sort that would make any adversary's mouth water. Due administration of a bankruptcy estate requires that a court be able to inquire into these important issues without, in the process, jeopardizing the value of the very litigation sought to be pursued").

22. Also, the fact that an individual has been diagnosed with an asbestos disease is highly personal. There is no justification to release such information to Garlock or others, especially when such individuals or their estates may never even decide to press a claim against Garlock or any asbestos trust that may ultimately be formed as a result of Garlock's bankruptcy proceeding. More generally, as Garlock primarily relies on its alleged rights as a member of the general public, its logic naturally leads to such individuals' personal medical information being made public. Again, there is no basis for such an intrusion merely because an individual's tort counsel included them in a 2019 Exhibit, which, for example, could have been done solely as a protective measure before their case was worked up.

23. Also, as subsequently recognized by Congress in its enactment of Section 107(c) of the Bankruptcy Code, the public disclosure of personally identifiable information can harm

{D0195755.1}

- 8 -

individuals.[4] Such information includes names, addresses and social security numbers.[5] The harms of disclosure are both thus sufficiently clear and specific to justify the protection of the information, as this Court recognized when it issued the Rule 2019 Order keeping the Rule 2019 Exhibits from the public docket in the first place, and as logically supported by the subsequent statutory codification of the protectibility of personally-identifiable information in Section 107(c).

24.     The Rule 2019 Exhibits also fall with Section 107(b)'s protection for "confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1). Those Exhibits contain information that would be useful to competitors of the submitting law firms, such as client identification and information, and the exemplars of their retention agreements and the confidential terms therein. *Orion*, 21 F.3d at 27-28 (affirming lower court's holding that commercial information included information that could give competitors "an unfair advantage").

25.     The Rule 2019 Exhibits also contain information that could properly be characterized as work product, such as the pre-litigation or preliminary determinations that the listed individuals might have exposure to the debtors' products, as well as confidential commercial information, which some courts have likewise fairly held to be within Section 107(b). *See 50-Off*, 213 B.R. at 655-56 ("Certainly, a lawyer's work product is one type of

---

[4]    "The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property: (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title" or "(B) Other information contained in a paper described in subparagraph (A)." 11 U.S.C. §107(c)(1)).

[5]    "[T]he term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any-- (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number; (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation; (C) unique electronic identification number, address, or routing code; or (D) telecommunication identifying information or access device (as defined in section 1029(e))." 18 U.S.C. §1028(d)(7).

'confidential research' that falls within the plain language of the statute's protection. And certainly a client's disclosures made in confidence to its attorneys is one kind of 'confidential * * * commercial information.'"); *In re JMS Auto. Rebuilders, Inc.*, No. 01-05600 DDP, 2002 WL 32817517, *3 (C.D. Cal. Jan. 15, 2002) (affirming bankruptcy court decision where "bankruptcy court, therefore, ordered the materials sealed as confidential research and work product pursuant to §107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure"). Given the "deference accorded to the bankruptcy court in deciding § 107(b) exceptions," *JMS*, 2002 WL 32817517, at *3, such information is fully protectable under Section 107(b) here as well.

26. Finally, the number of the Exhibits and the information contained therein is vast even for one case, let alone for twelve. To allow such vast quantities of information to be copied and provided to anyone who asks for it will impose significant burdens of time and money on the Court and on parties, and such a process would potentially have to be repeated *ad infinitum* as more people could, and presumably would, come forward seeking access to the Rule 2019 Exhibits. Again, such abuse of Rule 2019 has never been contemplated or carried out, and this Court should not set such an unwarranted precedent.

27. Countervailing considerations to public disclosure thus amply justify the continued protection of the Rule 2019 Exhibits, and such protection is well within this Court's discretion.

**B.      Garlock Has Not Shown Cause to Be Provided with the Rule 2019 Exhibits**

28. Notably, Garlock fails to cite a single case in which any entity has ever been held entitled to Rule 2019 Exhibits filed in a bankruptcy to which they were not a party, much less in

multiple bankruptcies for use in yet other cases. Regardless of its attempt to suggest the contrary through inapposite cases, Garlock's attempt here is simply without precedent.[6]

29. Instead, Garlock relies on the fact that, in the *Congoleum* bankruptcy, the bankruptcy court entered a Rule 2019 order that was affirmed and that did not provide for keeping 2019 exhibits off the public docket. But the fact that the order there had different provisions from the Rule 2019 orders used in the twelve above-captioned bankruptcies, which *did* provide for such protection, is of course unhelpful to Garlock's cause. So too is the fact that the Third Circuit expressly distinguished that outcome in *Congoleum* from *Pittsburgh Corning's* contrary holding, as set forth below.

30. In the *Congoleum* bankruptcy, the Third Circuit affirmed the disqualification of a law firm for an actual conflict of interest, and it was the disqualification dispute and the resulting evidentiary record that led to the Rule 2019 order. Because of the unique factual background and record in that case, it is not persuasive precedent as to the proper contours or interpretation of Rule 2019 generally. Indeed, the bankruptcy judge there "described the factual basis for ordering these disclosures as 'unprecedented.'" *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 166 (D.N.J. 2005).

31. In the *Pittsburgh Corning* case, by contrast, the Third Circuit upheld this Court's Rule 2019 order that (1) authorized the filing of exemplars, as opposed to actual copies, of the relevant empowering documents, and (2) permitted access to the Rule 2019 submissions only upon motion and order of the court. *In re Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008). In so doing, and in response to an argument by insurers that access to the Rule 2019 disclosures might enable them to reveal conflicts of interest on the part of asbestos plaintiffs'

---

[6] Similarly, Garlock has not demonstrated cause to reopen the closed bankruptcy cases, nor demonstrated that it has standing to seek such relief.

counsel, the Third Circuit expressly distinguished its earlier decision in *In re Congoleum Corp.*, 426 F.3d 675 (3d Cir. 2005), because in *Congoleum* "the facts necessary to find that an actual conflict of interest existed had already been developed and left no room for speculation." *Pittsburgh Corning*, 260 F. App'x at 466 n.6.

32.  As in *Pittsburgh Corning*, there is no factual record in the cases before this Court that could support the relief Garlock has requested. To the contrary, as shown by the Third Circuit's decision in *Pittsburgh Corning* above, speculative fishing expeditions such as that sought by Garlock here do not justify requests for Rule 2019 disclosures. "Though they vaguely argue that the Rule 2019 Order limits their rights 'by preventing them from obtaining information that could reveal unethical procedures or conflicts of interests on the part of plaintiffs' lawyers' (Appellants' Br. 36), Appellants merely speculate that there are any unethical procedures or conflicts of interest to reveal. They do not point us to even one actual ethical violation or conflict of interest extant in the filings and have failed to investigate these issues so as to support their contention." *Id.* at 466. Garlock's speculative and conclusory assertions regarding alleged wide-spread fraud fail for the same reasons.

33.  In its "factual background" section, Garlock baldy asserts that ballots it received in the *Pittsburgh Corning* case allegedly revealed "widespread inconsistency" with materials submitted to Garlock in the tort system. Motion at 10. But such assertions are not evidence: to the contrary, this Court ruled most of Garlock's proposed "evidence" at the *Pittsburgh Corning* confirmation hearing inadmissible, Garlock's witness acknowledged that it was not offered as a "sample" or "anything representative," and most of the responses provided at the *Pittsburgh Corning* confirmation hearing were not shown to be inconsistent, but, for example, incorporated objections and other discovery documents that were not themselves provided. *See* Plan

Proponents' and Plan Supporters' Post-Trial Brief in Support of Confirmation of Modified Third Amended Plan of Reorganization for Pittsburgh Corning Corporation at 34 n.49, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 19, 2010) [Dkt. No. 7904]. As this Court has also noted, "saying 14 out of 312,000 people who filed ballots in a case either made a mistake or somehow or another didn't report or filed a claim in the wrong place, frankly that's so de minimis I can't consider that to be a substantial portion." Hr'g Tr. 175-76, Dec. 2, 2010 (excerpts attached as Ex. B). Garlock's *ipse dixit* assertions provide no basis for the relief it seeks.

34.    The Rule 2019 statements also cannot prove inconsistency with tort discovery submissions, because, contrary to Garlock's assertions, Rule 2019 exhibits are not evidence that the listed claimants in fact definitely can prove exposure to the products in the relevant bankruptcy cases or will ultimately seek recovery from the subsequently-formed asbestos trusts. As this Court has noted, "the fact that somebody has listed an individual as a client on a 2019 statement *is not evidence* that they are going to submit a claim against the trust in the future." Hearing Transcript at 44, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 13, 2010) (emphasis added).

35.    Accordingly, Garlock's rationale for seeking such exhibits is on its face insufficient to justify its receipt of them, and certainly is insufficient to overcome the valid cause to protect those exhibits shown above.

**CONCLUSION**

For the foregoing reasons, the ACCs respectfully request that Garlock's Motion be denied.

Dated: February 7, 2011                                        Respectfully submitted,

| **CAMPBELL & LEVINE, LLC** | **CAMPBELL & LEVINE, LLC** |
|---|---|
| */s/ David B. Salzman* | */s/ Mark T. Hurford* |
| Philip E. Milch (PA I.D. No. 53519) | Marla R. Eskin (Bar No. 2989) |
| David B. Salzman (PA I.D. No. 39360) | Mark T. Hurford (Bar No. 3299) |
| 1700 Grant Building | 800 N. King Street, Suite 300 |
| Pittsburgh, PA  15219 | Wilmington, DE 19801 |
| Telephone:  (412) 261-0310 | Telephone:  (302) 426-1900 |
| Facsimile:  (412) 261-5066 | Facsimile:  (302) 426-9947 |
| dbs@camlev.com | meskin@camlev.com |
| pem@camlev.com | mhurford@camlev.com |
| **CAPLIN & DRYSDALE, CHARTERED** | **CAPLIN & DRYSDALE, CHARTERED** |
| Peter Van N. Lockwood | Elihu Inselbuch |
| Trevor W. Swett | 375 Park Avenue, 35th Floor |
| Kevin C. Maclay | New York, NY  10152-3500 |
| One Thomas Circle, NW | Telephone:  (212) 319-7125 |
| Suite 1100 | Facsimile:  (212) 644-6755 |
| Washington, DC  20005 | E-mail: ei@capdale.com |
| Telephone:  (202) 862-5000 | |
| Facsimile:  (202) 429-3301 | |
| E-mail: tws@capdale.com; pvnl@capdale.com | |
| kcm@capdale.com | |

*Counsel for the Official Committees of Asbestos Claimants*