# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | . | Case No. 00-22876 (JKF) |
| | . | |
| | . | |
| | . | |
| PITTSBURGH CORNING | . | |
| CORPORATION, | . | |
| | . | 5414 USX Tower Building |
| | . | Pittsburgh, PA 15219 |
| | . | |
| Debtor. | . | January 13, 2010 |
| . . . . . . . . . . . . . . . . | . | 9:04 a.m. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Reed Smith LLP |
| | By:  DOUGLAS E. CAMERON, ESQ. |
| |      JAMES J. RESTIVO, JR., ESQ. |
| | 435 Sixth Avenue |
| | Pittsburgh, PA 15219 |
| | |
| For ACC: | Caplin & Drysdale, Chartered |
| | By:  PETER VAN N. LOCKWOOD, ESQ. |
| | One Thomas Circle, N.W. |
| | Washington, DC 20005 |
| | |
| | Campbell & Levine |
| | By:  DAVID SALZMAN, ESQ. |
| | 1700 Grant Building |
| | Pittsburgh, PA 15219 |
| | |
| Audio Operator: | Janet Heller |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599

2

APPEARANCES (cont'd.):

For Various Claimant    Stutzman, Bromberg, Esserman
Firms:    By:  DAVID J. PARSONS, ESQ.
    2323 Bryan Street, Suite 2200
    Dallas, TX 75201-2689

For Century Ins. Co.:    O'Melveny & Myers, LLP
    By:  TANCRED SCHIAVONI, ESQ.
    Times Square Tower
    Seven Times Square
    New York, NY

For Certain Pittsburgh    Montgomery, McCracken, Walker
Corning Cancer      & Rhoads, LLP
Claimants:    By:  NATALIE D. RAMSEY, ESQ.
    123 South Broad Street
    Philadelphia, PA 19109

For Future Claims Rep:    Dinsmore & Shohl, LLP
    By:  JOEL HELMRICH, ESQ.
    One Oxford Centre
    301 Grant Street, Suite 2800
    Pittsburgh, PA 15219

For PPG:    Kirkpatrick & Lockhart
    By:  DAVID MURDOCH, ESQ.
       DAVID McGONIGLE, ESQ.
       MICHAEL NELSON, ESQ.
       DAVID ACETO, ESQ.
    535 Smithfield Street
    Pittsburgh, PA

For Committee of    Leech, Tishman, Fuscaldo & Lampl
Unsecured Trade    By:  DAVID LAMPL, ESQ.
Creditors:       CRYSTAL THORNTON-ILLAR, ESQ.
    1800 Frick Building
    Pittsburgh, PA 15219

For Corning Inc.:    Thorp, Reed & Armstrong
    By:  KIMBERLY LUFF WAKIM, ESQ.
       ELENE MOUNTIS MORAN, ESQ.
    301 Grant Street, 14th Floor
    Pittsburgh, PA 15219

For Lumbermens:    Fox Rothschild
    By:  JOHN GOTASKIE, ESQ.
    625 Liberty Avenue, 29th Floor
    Pittsburgh, PA 15222-3115

APPEARANCES (cont'd.):

| | |
|---|---|
| For Garlock Sealing<br>Technologies: | Del, Sole, Cavanaugh & Stroyd<br>By:  ART STROYD, ESQ.<br>The Waterfront Building<br>200 First Avenue, Suite 300<br>Pittsburgh, PA 15222 |
| For Continental<br>Casualty: | Stonecipher, Cunningham, Beard<br>  & Schmitt, P.C.<br>By:  GEORGE T. SNYDER, ESQ.<br>125 First Avenue<br>Pittsburgh, PA 15222 |
| For Garlock Sealing<br>Technologies: | Robinson, Bradshaw & Hinson<br>By:  GARLAND S. CASSADA, ESQ.<br>     RICHARD C. WORF, ESQ.<br>101 North Tryon Street, Suite 1900<br>Charlotte, NC 28246 |

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For Debtor: | Ward, Norris, Heller & Reidy<br>By:  CHERYL HELLER, ESQ.<br>300 State Street<br>Rochester, NY |
| For James Dennis: | Zeichner, Ellman & Krause LLP<br>By:  MICHAEL DAVIS, ESQ.<br>575 Lexington Avenue<br>New York, NY 10022 |
| For Travelers<br>Casualty: | Debevoise & Plimpton, LLP<br>By:  ROBERT D. GOODMAN, ESQ.<br>913 3rd Avenue<br>New York, NY 10022-3916 |
| For Everest Insurance: | Walker, Wilcox & Matousek<br>By:  FRED ALVAREZ, ESQ.<br>225 West Washington Street, Suite 2400<br>Chicago, IL 60606 |
| For NorthStar<br>Reinsurance Corp.: | Skadden, Arps, Slale, Meagher<br>  & Flom, LLP<br>By:  MICHAEL J. BALCH, ESQ.<br>Four Times Square<br>New York, NY 10036 |

4

TELEPHONIC APPEARANCES (cont'd.):

| | |
|---|---|
| For Travelers Casualty: | Travelers Casualty and Surety<br>By:  LEONARD BIERINGER, ESQ. |
| For AIG: | Lynberg & Watkins<br>By:  R. JEFF CARLISLE, ESQ.<br>888 S. Figueroa St., 16th Floor<br>Los Angeles, CA 90017 |
| For Employee Insurance<br>of Wausau: | Dorsey & Whitney, LLP<br>By:  JOSHUA COLANGELO-BRYAN, ESQ. |
| For AIG: | Mound, Cotton, Wollan & Greengrass<br>By:  JAMES DENNIS, ESQ.<br>24 Whitehall Street<br>New York, NY 10004-1416 |
| For Various Claimant<br>Firms: | Stutzman, Bromberg, Esserman<br>By:  SANDER L. ESSERMAN, ESQ.<br>2323 Bryan Street, Suite 2200<br>Dallas, TX 75201-2689 |
| For Continental: | Carroll, Burdick & McDonough<br>By:  RODNEY L. ESHELMAN, ESQ.<br>44 Montgomery Street, Suite 400<br>San Francisco, CA 94104 |
| For All the Future<br>Claimants: | By:  LAWRENCE FITZPATRICK, ESQ. |
| For Insurance<br>Counsel to ACC: | Anderson, Kill & Olick<br>By:  ROBERT M. HORKOVICH, ESQ. |
| For Debtor: | Corning Incorporated<br>By:  LINDA E. JOLLY, ESQ.<br>One Riverfront Plaza<br>Corning, NY |
| For Berkshire Hathaway: | Graham Curtin<br>By:  ROBERT MAURIELLO, ESQ. |
| For Official Committee<br>of Unsecured Asbestos<br>Creditors: | Campbell & Levine<br>By:  PHILLIP MILCH, ESQ.<br>1700 Grant Building<br>Pittsburgh, PA 15219 |
| For Sherrard, German<br>& Kelly: | Sherrard, German & Kelly PC<br>By:  GARY PHILLIP NELSON, ESQ. |

**J&J COURT TRANSCRIBERS, INC.**

5

TELEPHONIC APPEARANCES (cont'd.):

| | |
|---|---|
| For Debtor: | Pittsburgh Corning Corporation<br>By:  JOSEPH NESE, ESQ. |
| For Royal Alliance: | Wilson, Elser, Moskowitz, Edelman<br>By:  CARL PERNICONE, ESQ. |
| For Federal Insurance: | Cozen O'Connor<br>By:  WILLIAM SHELLEY, ESQ.<br>1900 Market Street<br>Philadelphia, PA 19103 |
| For Lumbermens Mutual: | Charlston, Revich & Wollitz, LLP<br>By:  STEPHEN P. SOSKIN, ESQ.<br>1925 Century Park East, Suite 1250<br>Los Angeles, CA 90067-2746 |

39

1 ballot by definition does that.

2        So you compare the people who voted with the people

3 who are named on the 2019 statements as being clients of the

4 firm that are represented in the case.  And let's assume there

5 are a lot of people who are listed on the 2019s that didn't

6 vote.  What does that show you about whether they've been

7 exposed to Pittsburgh Corning asbestos?  I don't think it shows

8 anything.

9        And the one thing that the 2019s do that the ballot

10 doesn't do is it contains information about the fee

11 arrangements with the lawyers.

12        And I don't understand what legitimate interest

13 Garlock has given the objections that it's filed in this case

14 to that.  But even if they got that information it's still not

15 going to show whether they have exposure to Pittsburgh Corning

16 products or anything else.

17        So I think Your Honor asked the right question, but I

18 don't think you really got an answer from Mr. Cassada that

19 legitimately explained what it is that he thinks these 2019s

20 are going to do for his objection.

21        MR. CASSADA:  Your Honor, we --

22        THE COURT:  Just a minute.  Let me look at the rule

23 for a minute please.  Okay.  First of all the 2019 statements

24 don't have to include a date of exposure to the extent that the

25 facts and circumstances that gave rise to the claim or interest

1  had been acquired more than a year prior to the filing of the

2  petition.

3          So what Garlock expects to get out of the 2019

4  statements is not necessarily going to be there unless it's a

5  nature of a claim or amount of a claim or interest that accrued

6  within the year pre-petition.

7          So first of all the 2019 statements don't have that

8  type of information.

9          Number two, the purpose for filing the 2019

10 statements is essentially to make sure that the Court

11 understands that the parties who -- that the attorneys who

12 purport to represent particular parties actually do represent

13 those parties and therefore have the right to participate in

14 the significant events in the case.

15         They are not there for the purpose of allowing

16 another party to use them in some litigation context outside

17 the confines of this case.

18         It is the ballots that determine whether or not a

19 person has come forward with information that indicates that

20 they have a claim against this estate at this time.

21         To the extent there's a futures claim out there -- we

22 went through this I know in a different context, in slightly

23 different context in the W.R. Grace argument, but the comments

24 are the same -- to the extent there's a futures claim out

25 there, that entity isn't going to vote and that information to

J&J COURT TRANSCRIBERS, INC.

41

1  the extent it is or isn't included in the 2019 statements can't

2  be ascertained at this time.

3          I don't see a basis for Garlock getting these 2019

4  statements.  I'm happy to defer this for a week to see, or

5  however long, to see whether you folks can come to some

6  resolution, but I don't see a basis for it.  Especially since

7  the information I think you're looking for is on the ballots.

8          MR. CASSADA:  Yes, Your Honor, thank you.  First of

9  all the information we're seeking doesn't contain any of the

10  fee arrangement.

11          Your Honor, the 2019 statements are the only time in

12  a case when the parties who these lawyers appear and represent

13  in a case identify themselves and --

14          THE COURT:  No, they identify themselves in the

15  ballots, on the master ballots.

16          MR. CASSADA:  Yeah, they identify themselves later in

17  the ballots.

18          THE COURT:  Yes.

19          MR. CASSADA:  But 2019 statements tend to show when

20  they first had exposure to --

21          THE COURT:  They don't.

22          MR. CASSADA:  Yes.

23          THE COURT:  They don't even have to say that.

24          MR. CASSADA:  Your Honor, okay, Your Honor, let me

25  read you what the typical 2019 statement in this case and

1 others say.

2          It's prepared by a law firm, Mr. Lockwood is correct,

3 the lawyer says I have personal knowledge of the facts set

4 forth herein.  As of the date of this amended statement the

5 firm represents thousands of personal injury claimants who have

6 been injured by asbestos containing products manufactured,

7 marketed, distributed, sold or produced by debtor and others

8 and thus hold claims against the debtor.  And then it attaches

9 who those claimants are.

10          In this case, Your Honor, we're not seeking this

11 information for the purpose of using it outside of the

12 bankruptcy case.  It's relevant to our plan objections.

13          The ballots show which of these 2019 filers

14 subsequently voted their claims.

15          THE COURT:  Yes.

16          MR. CASSADA:  And in voting their claims there is a

17 certification under penalty of perjury that these folks have

18 bona fide claims which includes, and the master ballot

19 instruction says, that it has to include Pittsburgh Corning

20 exposure which is credible and meaningful evidence of exposure.

21          THE COURT:  Exactly.

22          MR. CASSADA:  Right.  So when we provide that

23 evidence and we show that these claimants in the tort system

24 have taken just the opposite position, then --

25          THE COURT:  First of all I haven't heard any evidence

1  yet, evidence, that indicates that the plaintiffs in the tort

2  system have taken a different position with respect to this

3  debtor.

4          MR. CASSADA:  Yes.

5          THE COURT:  So the ballots are there and you've got

6  them.  If they've taken an inconsistent position in the tort

7  system, go complain to the state court judge about the fact

8  that they've taken an inconsistent position.

9          That has nothing to do with the legitimacy of their

10  vote in this case.  They're taking a position here that says

11  they have a legitimate claim, they've sworn to that fact under

12  penalty of perjury, and the ballot is what determines that.

13          To the extent that Garlock is a codefendant as to any

14  of those folks who have voted, then you're a codefendant.  That

15  proves the point that you're trying to make.  You don't need

16  the 2019 statements to bolster that argument, you've got them

17  in the form of the ballots.

18          MR. CASSADA:  No, Your Honor, the point that we were

19  trying to make is that the plan is not fair and equitable to

20  Garlock.

21          THE COURT:  All right.

22          MR. CASSADA:  And the reason it's not fair and

23  equitable is because it confers on the claimants a privacy

24  right, a right to hold onto their claim and then file it in

25  privacy and secrecy from the defendants.  And this --

1          THE COURT:  But you've already got the ballots so
2  you'll know whether or not they choose to file a claim against
3  the trust because you've got the ballots.  They voted.
4          MR. CASSADA:  That's right.
5          THE COURT:  Okay.
6          MR. CASSADA:  And the ballots will show that what
7  happens, the danger, to Garlock and why it would be unfair in
8  the future to allow claimants to file in secrecy because they
9  take inconsistent positions.
10          Now when we provide evidence to you of that, then I
11  would expect --
12          THE COURT:  When you provide evidence to me of that
13  then maybe I'll reconsider this 2019 issue.  Even then the fact
14  that somebody has listed an individual as a client on a 2019
15  statement is not evidence that they are going to submit a claim
16  against the trust in the future.
17          So I don't even see how it's relevant at this point.
18  It may be relevant --
19          MR. CASSADA:  Yes, Your Honor.
20          THE COURT:  -- when a piece of litigation takes place
21  in the state tort system against Garlock and at that point
22  Garlock thinks somehow that because it's a codefendant with PCC
23  that it may have some access or need to access a specific 2019
24  statement as to a particular client.
25          But giving you mass discovery as to everybody who

Case 01-01139-AMC   Doc 26211-1   Filed 02/07/11   Page 13 of 20

1 every law firm represents I think has no basis in law or in

2 fact.  It is not -- those statements are not for that purpose

3 and I don't see a basis to grant this relief.

4 　　　　MR. CASSADA:  Your Honor, the statements would

5 normally be filed under the light of day so that all the

6 parties in the case could see them.  In this particular case --

7 　　　　THE COURT:  That fact that they haven't has been

8 upheld by the Third Circuit.

9 　　　　MR. CASSADA:  Right.  But the Third Circuit has never

10 heard a question of when a party in interest in a bankruptcy

11 case is entitled to access that information.

12 　　　　Your Honor stated when you decided that the

13 plaintiffs could file these 2019 statements and effectively put

14 the identities of their clients and the particulars of their

15 claim under seal, that the reason for that was not to protect

16 them from disclosure to the parties in interest in the case who

17 might need that information in connection with protecting their

18 interest in the case but it was to protect them --

19 　　　　THE COURT:  That's right.  Who might need the

20 information.  That's crucial.

21 　　　　MR. CASSADA:  -- it was to protect them from the

22 public because Your Honor said --

23 　　　　THE COURT:  That's right.  And well, no, you are part

24 of the public.  Your client's part of the public.

25 　　　　MR. CASSADA:  We are a party --

J&J COURT TRANSCRIBERS, INC.

1          THE COURT:  Your client may be a party in interest in

2    this case.

3          MR. CASSADA:  -- we are a party in interest.

4          THE COURT:  That is not what you're attempting to use

5    these ballots for.  You're attempting to use them in state

6    court litigation that has nothing to do with this case and that

7    is not what the purpose of the 2019s is.

8          MR. CASSADA:  I'm trying to use --

9          THE COURT:  The purpose is to make sure that the

10   entities who vote in this case have actually been identified

11   and somebody makes the comparison to determine that in fact the

12   law firm that purports to represent that party represents that

13   party.  And the ballots give you the same information, it tells

14   you who votes.

15         To the extent that there is a discreet piece of

16   litigation that at some point in the future means that Garlock

17   needs access, this is without prejudice, you're raising that in

18   that litigation at that time because you may file a motion for

19   access regarding a particular discreet piece of litigation.

20         But to fashion some wholesale idea that there is

21   large, I'll use the word fraud because I think that's

22   essentially what you're suggesting, fraud in either the tort

23   system or here without any evidence of that in this case, is

24   simply uncalled for and you've got to prove it.

25         So you show me on the ballots or a ballot where an

1 individual is filing a claim here and has made a representation

2 in the tort system that they have no such claim here and then

3 I'll reconsider.

4       But I see no basis for disclosing the 2019 statements

5 for the purpose Garlock is advancing that it needs them, i.e.

6 to substantiate that it has a claim as a codefendant in the

7 tort system here because the ballots tell you that same

8 information and you've gotten access to the ballots.

9       MR. CASSADA:  Yes.  The ballots give you that

10 information but timing is key and that's what the 2019

11 statements.

12       THE COURT:  But they don't.

13       MR. CASSADA:  And just to be clear, Your Honor, we

14 are not --

15       THE COURT:  They don't even have to say that, Mr.

16 Cassada.

17       MR. CASSADA:  But they do, Your Honor.

18       THE COURT:  Well --

19       MR. CASSADA:  They do.

20       THE COURT:  -- in this case they indicate when the

21 claim arose?  That's one of the fields that I ordered?  I don't

22 think so.

23       MR. CASSADA:  Actually I believe you did order that,

24 for them to state when their claim arose.  But they in fact do

25 state in them, at least some of them do, the ones I've looked

1  at do, that these claimants have Grace exposure.

2          THE COURT:  Okay.

3          MR. CASSADA:  That's what they --

4          THE COURT:  You've got 2019 statements in this case

5  that indicate that they have PPG -- Pittsburgh Corning

6  exposure.

7          MR. CASSADA:  I'm sorry.  I said Grace exposure.

8          THE COURT:  You've got 2019 statements in this case

9  that say that the debtors have at a particular time because

10 that's what you said that they indicated, when their claim

11 arose, not that they have a claim but when the claim arose.

12         MR. CASSADA:  I have statements that say that as of

13 the date of the statements they have Pittsburgh Corning

14 exposure.

15         THE COURT:  I think what you read was that the firm

16 represents clients who have exposure in the asbestos, to

17 asbestos manufactured or distributed by the debtor and others.

18         MR. CASSADA:  Yes.

19         THE COURT:  Okay.

20         MR. CASSADA:  Yes.  That's evidence of exposure to

21 the debtor.

22         THE COURT:  Not necessarily.

23         MR. CASSADA:  Well I have a hard time seeing how it

24 isn't, Your Honor.  You've got a lawyer saying I know what I'm

25 talking about, I've got knowledge of this, and these people who

**J&J COURT TRANSCRIBERS, INC.**

1 I'm attaching to this statement have exposure to products of

2 the debtor and others.  That's our point.

3            THE COURT:  Okay.  The ballots I think are sufficient

4 at this time because they provide the same information.  If I

5 am incorrect, folks, in what I ordered because I have had a

6 number of cases and to the extent that I'm incorrect, please

7 straighten me out.

8            I have not gone back to look at the 2019 statements.

9 Did I order a date of exposure to Pittsburgh Corning asbestos

10 products in these 2019 statements?

11            MR. LOCKWOOD:  No, Your Honor, you ordered people to

12 comply with the rule and you read the rule early which says

13 that if the acquisition of the claim occurs more than one year

14 prior to the date of filing you don't have to provide the date

15 on which "the claim was acquired."

16            THE COURT:  Okay.

17            MR. CASSADA:  Yeah, and let me suggest this, Your

18 Honor.  Then if we continue this hearing then I will provide

19 you the evidence that you're talking about and I will show you

20 that the reason we need the 2019 statements is to rebut an

21 argument of subsequent discovery.

22            And if we show you the evidence exists of the

23 inconsistent positions --

24            THE COURT:  That has nothing to do with your claim in

25 this case, an argument about subsequent discovery.  That's

1  related to a case in the tort system --

2           MR. CASSADA:  It has, yeah.

3           THE COURT:  -- by a specific individual who's

4  claiming, apparently claiming, that they had exposure to

5  something that Garlock did and/or to something that Pittsburgh

6  Corning did, but has earlier denied that exposure.

7           If you get a specific case like that in the tort

8  system, you can seek relief from this Court.  But you can't

9  make a wholesale assertion that every person who is listed on a

10 2019 statement is abusing either the bankruptcy or the tort

11 system process by naming Garlock and Pittsburgh Corning in the

12 same suit.  Those suits aren't even going to go forward against

13 Pittsburgh Corning in the future.

14          MR. CASSADA:  Yes.  I'm going to try to offer

15 evidence to Your Honor at the confirmation hearing that the

16 trust distribution procedures are unfair to Garlock because

17 they allow the claimants to conceal evidence.

18          THE COURT:  I know that's Garlock's position.  The

19 reality is --

20          MR. CASSADA:  So this is relevant to that.

21          THE COURT:  -- it is not related to that -- the

22 reality is that Garlock has the same right to seek discovery

23 against the trust in the event that it gets a claim in the tort

24 system from somebody else that it has for relief from this

25 Court with respect to the 2019 statements.  It's not a

1 wholesale fishing expedition proposition.  You've got to relate

2 it to a --

3 　　　　　MR. CASSADA:  I'm not on a fishing expedition.

4 　　　　　THE COURT:  -- but you are, Mr. Cassada.

5 　　　　　MR. CASSADA:  I'll show you at the confirmation

6 hearing why the state law discovery remedies are not sufficient

7 to cover --

8 　　　　　THE COURT:  That is wholesale fishing.  You need it

9 in connection with a specific case.  You have to be able to

10 make an allegation that tort plaintiff A has essentially lied

11 and when you make that allegation under oath or as a

12 certification in a specific case, I will be happy to consider

13 whatever disclosure is appropriate to attempt to prove that

14 it's either true or not true.

15 　　　　　But then you do it subject to Rule 9011 and with all

16 of the sanctions that go along with it in the event that it is

17 an inaccurate statement.  It is not a wholesale fishing

18 expedition.

19 　　　　　So when that case arises in the tort system, you

20 bring in that evidence.  Otherwise you have the same remedy

21 against the trust.  You're permitted to issue subpoenas and get

22 documentation from the trust and nothing in this provision of

23 this plan or in any order this Court signs is going to do away

24 with that.

25 　　　　　MR. CASSADA:  Okay.  I understand your position, Your

　　　　　　　　　J&J COURT TRANSCRIBERS, INC.

52

1   Honor, but just to be clear again, the 2019 statements sought

2   in this case are to aid Garlock in protecting its rights in

3   this case.

4           THE COURT:  I understand but that's duplicative.

5   Actually it's not.  It doesn't even do what the ballots do.

6   The ballots are what protect Garlock's position in this case

7   because it identifies whoever the actual individuals are who

8   have voted in this case, asserted that they have a claim

9   against Pittsburgh Corning, and Garlock now has the identity of

10  every single one of those people.

11          So if Garlock in the tort system is faced with a

12  claim by one of those people who have somehow said that they

13  had no exposure to Pittsburgh Corning products in the past and

14  now they're saying they do or vice versa, some inconsistent

15  position, Garlock has a remedy here.

16          MR. CASSADA:  Yeah, I'll bring that to Your Honor and

17  then you will inevitably hear the subsequent discovery argument

18  and then the 2019 statement would come into play.

19          THE COURT:  Well at that time it might be ripe.  It's

20  not ripe now.

21          MR. CASSADA:  Okay.  Are you going to enter an order

22  denying our motion today?

23          THE COURT:  I thought you folks had some agreement

24  that you were trying to work out things.

25          MR. CASSADA:  Okay.  I heard Your Honor, but I don't

**J&J COURT TRANSCRIBERS, INC.**