UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| KAISER ALUMINUM CORPORATION, | . | Case No. 02-10429(JKF) |
| ACandS, INC. | . | Case No. 02-12687(JKF) |
| OWENS CORNING | . | Case No. 00-3837(JKF) |
| USG CORPORATION | . | Case No. 01-2094(JKF) |
| W.R. GRACE & CO. | . | Case No. 01-1139(JKF) |
| PITTSBURGH CORNING CORP. | . | Case No. 00-22876(JKF) |
| NORTH AMERICAN REFRACTORIES CO | . | Case No. 02-20198(JKF) |
| | . | |
| Debtors. | . | Feb. 14, 2011 (8:40 a.m.) |
| | . | (Wilmington) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| ACandS Asbestos Settlement | . |
| Trust, *et al.*, | . |
| | . |
| Plaintiffs, | . |
| | . |
| vs. | . Adv.Pro.No. 10-53719(JKF) |
| | . |
| Hartford Accident and | . |
| Indemnity Co., *et al.,* | . |
| | . |
| Defendants. | . |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

<u>Appearances</u>:

| | |
|---|---|
| For Garlock: | Gregory Werkheiser, Esq. |
| | Matthew B. Harvey, Esq. |
| | Morris, Nichols, Arsht & Tunnell |
| | Garland Cassada, Esq. |
| | Richard Worf, Esq. |
| | Robinson Bradshaw |
| | |
| For Various Law Firms: | Sander L. Esserman, Esq. |
| | Stutzman, Bromberg, Esserman & Plifka |

2

| For Various Law Firm Objectors: | Natalie Ramsey, Esq. Montgomery, McCracken |
| For Asbestos Claimants Committees: | Peter Lockwood, Esq. Caplin & Drysdale |
| For Owens Corning: | Adam Isenberg, Esq. Lucian Murley, Esq. Saul Ewing, LLP |
| For the U.S. Trustee: | Richard Schepacarter, Esq. U.S. Trustee's Office |
| For Pittsburgh Corning and NARCO: | James J. Restivo, Esq. Reed, Smith, Shaw & McClay |

| Audio Operator: | Brandon McCarthy |
| Transcriber: | Elaine M. Ryan (302) 683-0221 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

| <u>Garlock's Exhibits</u>: | | <u>Marked</u> | <u>Received</u> |
|---|---|---|---|
| 1 | Examples of 2019 Statements | 36 | |
| 2 | Summary of Statements | 37 | |
| 3 | Examples of 2019 Statements Filed on Public Dockets | 37 | |
| 4 | Excerpt of FED Report | 37 | |
| 5 | Chapter 13 Petition | 38 | |
| 6 | Extract from Claims Register | 39 | |
| 7 | Copy of New Article | 39 | |
| 8 | List of Pending Cases | 40 | |
| 9 | List of Pending Texas Cases | 41 | |
| 10 | Master Ballot | 41 | |
| 11 | Five Documents | 41 | |
| A | Article from Dallas Observer | 42 | |
| B | Article from the Wall Street Journal | 42 | |
| C | Letter from Congressman | 43 | |
| D | Article from Forbes | 43 | |
| E | Copy of Article | 43 | |
| D | Baron & Budd 2019 Statement | 43 | |
| E | Waters & Kraus 2019 Statement | 43 | |
| I | Order Granting Access | 44 | |
| J | 2019 Order | 44 | |
| K | 2019 Statement | 44 | |
| L | Complaint | 44 | |
| M | Interrogatory Response | 44 | |
| N | Voting Procedures | 45 | |
| O | 2019 Statement | 45 | |
| B | Reply to Order Unsealing | 45 | |

1            THE CLERK: All rise.

2            THE COURT: Good morning.  Please be seated.   The

3    first matter is a motion by Garlock Sealing Technologies for

4    a certain 2019 application in the cases of ACandS, Bankruptcy

5    No. 02-12687; Armstrong World Industries, 00-4471; Combustion

6    Engineering, 03-10495; Flintkote, 04-11300; Kaiser, 02-10429;

7    Owens, 00-3837; US Mineral, 01-2471; USG Corporation, 01-

8    2094; W.R. Grace, 01-1139, and in several Pittsburgh cases,

9    Pittsburgh Corning, 00-22876; North American Refractories,

10   02-20198; and Mid-Valley, 03-35592.  I have a list of

11   participants by phone: Michael Balch, Leonard Bieringer, John

12   Demmy, Dennis Dolan, Rodney Eshelman, Robert Goodman, Cheryl

13   Heller, Robert Horkovich, Nicolas Koch, Elene Moran, Joseph

14   Nese, Edward Parks, James Restivo, Crystal Thorton-Illar,

15   Britt Walther, David Ziegler, Elisa Alcabes, Scott Baena,

16   Janet Baer, Deanna Boll, Thomas Brandi, Claire Burke,

17   Elizabeth Cabraser, Kellie Cairns, Linda Casey, Richard Cobb,

18   George Coles, Leslie Davis, Martin Dies, John Donley, Michael

19   Duggan, Terrance Edwards, Lisa Esayian, Debra Felder, Roger

20   Frankel, James Green, Steven Gutman, Sarah Hargrove, Sarah

21   Hamett, Douglas Herrmann, Roger Higgins, Robert Horkovich,

22   Christina Kang, Brian Kasprzak, David Klingler, Matthew

23   Kramer, Arlene Krieger, Richard Levy, Nancy Manzer, Phillip

24   Mitch, Charles Nerko, David Parsons, Kenneth Pasquale, Adam

25   Paul, Margaret Phillips, John Phillips, Mark Plevin, Francine

1    Rabinovitz, Joseph Radecki, James Restivo, Alan Rich, Andrew

2    Rosenberg, Alan Runyan, Jay Sakalo - there must be some

3    lawyers left in the country who aren't - David Salzman,

4    Alexander Sanders, Tancred Schiavoni, Adam Schlesinger,

5    Darrel Scott, Stephen Shimshak, Michael Shiner, Jason

6    Solganick, Gibson Solomons, Daniel Speights, Gary Svirsky,

7    Theodore Tacconnelli, Cliff Taylor, David Turetsky, Edward

8    Westbrook, Richard Wyron, Rebecca Zubaty, David Christian,

9    Michael Davis, Joseph Frank, Phillip Milch, David Salzman,

10   James Wehner, Richard Swanson, Michael Davis - I'm starting

11   to get repeats here - Sally Edison, Beverly Manne, Gary

12   Philip Nelson, Kevin Lantry, Ronald Reinsel, and then I

13   believe after that, these are parties for specific cases.

14   Okay, the rest are parties for specific cases, I believe.

15   I'll take entries in Court, good morning.

16          MR. WERKHEISER: Good morning, Your Honor.  For the

17   record, Gregory Werkheiser, Morris, Nichols, Arsht & Tunnell,

18   LLP, Delaware co-counsel for Garlock Sealing Technologies

19   LLC.  Your Honor, just a couple of administrative matters,

20   and I know that the nature of our motion bridging as it does

21   several cases has created some administrative challenges for

22   the Court.  We had contact from debtors' counsel in the

23   Kaiser Aluminum case which is one of the cases that our

24   motion was filed in, and they asked me as a courtesy to

25   advise the Court that they would not be attending today

1   although their agenda is the agenda that controls for

2   purposes of the adversary proceeding that was also scheduled

3   prior to Your Honor's entry of an order cancelling the

4   pretrial status conference today, and they had one other

5   matter on for calendar today which they indicated in their

6   amended agenda filed on February 7th was resolved.  The sole

7   matter they had was our motion as to which they'd taken no

8   position.  Your Honor, before we get started, I did have one

9   or two housekeeping matters, if I could.  Late last week we

10  filed *pro hac vice* motions on behalf of Garland Cassada and

11  Richard Worf of our co-counsel Robinson Bradshaw & Hinson,

12  P.A., and last week we consulted -

13          THE COURT: I haven't seen them, and I've been

14  having some problems in some of these dockets with pleadings

15  being filed and they're not either being transmitted to the

16  JKF box or not linked to various things, not specifically

17  this case.  I just haven't seen them, so, I'll be happy to

18  enter them.  I'm familiar with Mr. Cassada and Mr. Worf and

19  I'll be happy to enter them, but I haven't seen them yet.

20          MR. WERKHEISER: Thank you, Your Honor, we

21  appreciate that courtesy.  I do have copies I can hand up -

22          THE COURT: No, they'll be entered electronically,

23  thank you.

24          MR. WERKHEISER: Very good, Your Honor, thank you

25  very much.  Your Honor, with that then, I'll cede the podium

1    to Mr. Casssada and he can present our motion.

2         THE COURT: Well, could I get entries of appearances

3    first, please.

4         MR. WERKHEISER: Yes, Your Honor.

5         THE COURT: Okay, thank you.  Good morning.

6         MR. CASSADA: Good morning, Your Honor.  Garland

7    Cassada.  I'm here with Rich Worf and we represent Garlock

8    Sealing Technologies.

9         THE COURT: Thank you.

10        MR. CASSADA: Thank you.

11        MR. ESSERMAN: Good morning, Your Honor.  Sander

12   Esserman on behalf of various law firms.  Thank you

13        MS. RAMSEY: Good morning, Your Honor.  Natalie

14   Ramsey, Montgomery, McCraken, Walker & Rhoads on behalf of

15   certain law firm objectors.

16        MR. LOCKWOOD: Good morning, Your Honor.  Peter

17   Lockwood on behalf of the Asbestos Claimants Committees in

18   Grace, NARCO, Pittsburgh Corning, and Flintkote.

19        THE COURT: Good morning.

20        MR. ISENBERG: Good morning, Your Honor.  Adam

21   Isenberg, Saul Ewing on behalf of Reorganized Ownes Corning

22   and I'm here with Luke Murley of our Delaware office as well.

23        THE COURT: I'm sorry, you're here with whom?

24        MR. ISENBERG: Luke Murley of our Delaware office.

25        THE COURT: Thank you.

1          MR. ISENBERG: Thank you.

2          MR. MURLEY: Good morning, Your Honor.  I'm Luke

3  Murley.  I'm Mr. Isenberg's local counsel.  We are also

4  counsel to Herd who is a personal injury claimant in the

5  Kaiser Aluminum case, and we would like to be heard on an

6  issue either nor or later in that case.

7          THE COURT: If it's not on my agenda today, I'm

8  sorry, file something.  I really have a very, very full

9  agenda today.

10          MR. MURLEY: I understand, Your Honor.   We had

11  filed something a week ago, we're just asking for the Court's

12  ruling on it.  It's a motion to shorten notice on a motion

13  for relief.

14          THE COURT: I haven't seen it.  Was it sent to the

15  JKF box?

16          MR. MURLEY: It was sent to Your Honor's chambers in

17  Wilmington.

18          THE COURT: I don't sit in Wilmington.  You need to

19  post things in the JKF box.  My procedure orders are very

20  clear.  Otherwise they don't come to my attention.  If you

21  please do that, I will address it.

22          MR. MURLEY: Very well, Your Honor, we understood

23  that we were precluded from sending it to Pittsburgh, but

24  we'll send it as soon as we can.

25          THE COURT: Precluded from sending it to Pittsburgh?

1          UNIDENTIFIED SPEAKER: (Indiscernible)

2          MR. MURLEY: Correct, Your Honor.  We read your

3     chamber procedures to only limit certain motions that are

4     filed in Delaware cases to be filed with Pittsburgh, but if

5     we know that Your Honor would like that, we could get it to

6     you as soon as possible.

7          THE COURT: There's a miscommunication.  Deal with

8     my law clerks.  They'll explain to you how to do it after

9     this hearing, please.  I will be happy to address anything

10    you send but unless you send it to the correct email address,

11    I simply don't see it.  It just doesn't come to my attention.

12    So if you just talk to Ms. Baker after this hearing is over

13    for a minute and get it done then I'll be happy to address

14    it.

15         MR. MURLEY: Thank you, Your Honor.

16         THE COURT: All right.  Good morning.

17         MR. SCHEPACARTER: Good morning, Your Honor.

18    Richard Schepacarter for the United States Trustee.

19         THE COURT: Anyone else for these hearings?  Mr.

20    Cassada.

21         MR. CASSADA: Thank you, Your Honor, and thank you

22    for allowing us to be heard here today.  Your Honor, I will

23    present our argument.  Mr Worf will then stand up and

24    introduce our exhibits, and we'll try to be as efficient as

25    possible understanding the Court's calendar is full today.

1    Your Honor, Garlock is here today seeking access to exhibits

2    to Rule 2019 statements filed by law firms in 12 bankruptcy

3    cases.  The statements state that the exhibits that we're

4    seeking identify creditors of the respective debtors.  More

5    specifically, the exhibits contain lists of thousands of

6    individuals who the law firms identify as their clients who

7    hold asbestos personal injury claims against 12 subject

8    bankrupt asbestos defendants.  The disc include the names of

9    the creditors, the addresses, the amounts of claims if

10   applicable, dates of acquisition of claims if within one

11   year, and disease types.  The exhibits, Your Honor, also

12   include a blank but unredacted exemplar instrument whereby

13   the law firms were empowered to act for the identified

14   claimants in the particular Chapter 11 cases.  As the Court

15   knows, normally the names of persons identified as creditors

16   and 2019 statements are available to the public.  In these

17   cases the exhibits were not placed on the electronic docket

18   but filed with a clerk on compact discs.  The Court ruled in

19   each of the cases that the exhibits are subject to access

20   upon motion and order.  Garlock has filed such a motion in

21   these 12 cases and contends that it is entitled to access the

22   exhibits because they are public judicial records to which

23   Garlock as a member of the public has a right to access under

24   Code § 107, the first amendment to the United States

25   Constitution -

1           THE COURT: You know, Mr. Cassada, that really

2   bothers me because that's really disingenuous.  Garlock isn't

3   seeking these to vindicate an public right.  Garlock's own

4   motions indicate that they are attempting to access these

5   documents for use in attempting to prove that somebody lied.

6   Now, I don't know what can be more scandalous and hazardous

7   to an individual or a law firm's reputation than to seek

8   access to a document for purposes of proving that someone

9   lied even if the document doesn't in any way support that or

10  if it does support it.  That doesn't seem to me to be

11  vindicating a public interest.  That is Garlock's agenda and

12  it may be a legitimate agenda in its own case.  I'm not

13  attempting to cast aspersions but the purpose of Rule 2019 is

14  not that, and in half of these cases, these cases are closed,

15  and Rule 2019 specifically says that it's for the purpose of

16  determining in the case.  Well, there is no case in the cases

17  that are closed.  Those cases are over, and even as to the

18  cases that are open, almost all of them have already been

19  through the plan confirmation process and Rule 2019, the

20  purpose for it as articulated in every case that I could find

21  and in the legal documents, the publications that address it

22  are all for purposes of assisting in the reorganization to

23  make sure that it's a fair and open process for the creditors

24  in that case, one of which did not include Garlock.  So, I

25  have closed cases on the one hand.  I've got confirmed plans

1   on the other, and I have an agenda by somebody who purports

2   to want access for vindication of some unstated public right

3   when that isn't the purpose.  Now, let's get to why it is

4   that Garlock wants this information and whether or not

5   Garlock is really entitled to it under these circumstances

6   because I'm having some difficulty, particularly in the

7   closed cases.  I don't have motions to reopen.  I don't have

8   a party in interest because Garlock didn't even appear in

9   those cases, so I don't know how Garlock could reopen, but

10  maybe there's a way, but I don't have that motion before me.

11  So, let's talk about the closed cases first.

12          MR. CASSADA: Okay, Your Honor.  You said a lot

13  there.  Fortunately -

14          THE COURT: Yes, I have.  I've read the documents,

15  I've read the cases, I've read the pleadings, I've looked at

16  the exhibits - some of the exhibits, not all of the exhibits.

17  I simply don't see a basis for this as to the closed cases.

18          MR. CASSADA: Okay, but just to be clear.  We

19  believe the Third Circuit has provided a wealth of case law

20  that addresses every issue that you've raised.

21          THE COURT: Indeed it has, in a fashion that I just

22  articulated.

23          MR. CASSADA: First, Your Honor, I would submit that

24  Garlock's purpose is not relevant nor is the purpose of the

25  Rule 2019 statements.

1          THE COURT: Oh, but it is, it is for this reason,

2    because public access, even under the constitution, in civil

3    cases is limited when the purpose for the access is improper.

4    That's the word the cases use.  The statute sometimes uses

5    the word "illegal", but the cases use the word "improper".  I

6    don't see how this is proper on behalf of Garlock to do a

7    wide fishing expedition through 2019 statements that have a

8    lot of private information.  You know, somebody's health

9    status is not something that is generally available on the

10   public record to anyone, and that's the reason why these

11   documents were sealed.  You want creditor names and

12   addresses, okay.  What good they're going to do; I don't

13   know.  But the disease level that somebody has, how is

14   Garlock entitled to that information when you're not even a

15   party in interest in the case?

16         MR. CASSADA: Your Honor, I believe you're looking

17   at it from the wrong perspective.  Under the right of public

18   access, Your Honor, there is a presumptive right to access to

19   public documents.

20         THE COURT: There is.

21         MR. CASSADA: And that presumption, it's a very

22   strong presumption, and it can only be overcome if you have

23   evidence before you that shows - that meets the standard, and

24   the standard is that the information is the type of

25   information that Courts protect and second that disclosure of

1    the information would render a clearly defined and serious

2    injury.  Now let's look at the type of information, what Your

3    Honor has called product information, but I'd submit that

4    that kind of perspective turns the rule on its head.  The

5    information here is information about creditors to a

6    bankruptcy case.

7         THE COURT: No, actually it's not because the Rule

8    2019 statement is not a statement by a creditor.  It's a

9    statement by a law firm that says, I represent X-people and

10   in my view those people may have a claim.  The purpose then

11   is to true-up whether that entity has the right to represent

12   that creditor who may then vote in the case later on, and

13   it's the vote in the case later on that substantiates whether

14   the creditor thinks it has a claim, and I've already told

15   you, you can have the ballots.

16        MR. CASSADA: Well, Your Honor, let's look at Rule

17   2019.  Rule 2019 says that lawyers who represent more than

18   one creditor file a statement disclosing their

19   creditor/clients and in this particular case -

20        THE COURT: Mona, can you get me a Bankruptcy Code.

21   I don't have a Bankruptcy Code here, please.

22        MR. CASSADA: And in this particular case, Your

23   Honor, we look at the 2019 statements that were filed, which

24   on their face say that these are creditors to these cases who

25   we represent, and in fact, most of them are signed under oath

1    and they say, I have knowledge of the facts set forth herein,

2    and the people on this list were exposed to and injured by

3    the products of the debtor.  So, Your Honor, the Rule 2019

4    statements, they say what they say.  We're not here to say

5    that they say something they don't say, and nothing you can

6    do here today changes that.  The question is whether we're

7    entitled to access to them.  Let me address Your Honor's

8    question about the fact that we're dealing in bankruptcy

9    cases that are closed.  You may have read the Third Circuit's

10   decision in Pansy v. Borough of Stroudsburg and in that case

11   the Court made clear that a party, a member of the public can

12   intervene long after a case is closed -

13          THE COURT: But you haven't.  There's no motion to

14   intervene.  There's no motion to reopen.  I simply have this

15   motion in these cases.  I don't even think I have

16   jurisdiction over this motion in those cases because the

17   cases are closed.  I don't have a motion to intervene or a

18   motion to reopen.

19          MR. CASSADA: Your Honor, if you read our motion, we

20   moved to intervene.

21          THE COURT: No, you haven't.  That's a separate

22   motion that has to be filed.  You have asked for access to

23   2019 statements, and somewhere buried in these documents is

24   the fact that maybe you've got the right to reopen and maybe

25   you've got the right to intervene.  I don't have a motion to

1   reopen and I don't have a motion to intervene, and if you

2   want to file one, you know how to do that, Mr. Cassada.

3         MR. CASSADA: Well, I suggest, Your Honor, if you

4   read our papers you'll see that we moved to intervene and

5   that we moved to open and that some of the parties even

6   responded to those particular things.

7         THE COURT: Some have responded because it's buried

8   in the document.  It is not a motion to reopen, and it is not

9   a motion to intervene.  I'm not aware that you paid the

10  reopening filing fees for a motion to reopen, and until the

11  case is reopened, I don't now how you intervene.  So I don't

12  see anything procedurally correct, Mr. Cassada, and I don't

13  think I have jurisdiction over those motions because those

14  cases are closed, and until you move to reopen, pay the

15  filing fee, and then move to intervene, I don't think you've

16  got even standing to raise the issue in the closed cases.

17  I'm talking about the closed ones.

18        MR. CASSADA: Okay, Your Honor.  Let me remind you

19  of proceedings that are before the Court now where the

20  Delaware trust had sued Garlock in several cases that were

21  not opened, and in those cases, Your Honor, you determined

22  that you did not need to open those cases.  You said, I think

23  the jurisdiction is either there or it's not and the

24  reopening in my view doesn't facilitate or un-facilitate that

25  process, so those -

1          THE COURT: That wasn't a 2019 issue.  That was an

2     issue about a -

3          MR. CASSADA: But it was more than that.  It as an

4     adversary proceeding suing Garlock for relief.

5          THE COURT: Yes.  The alleged theory there is that

6     it's an aid of execution of the plan over which I kept

7     jurisdiction in the orders.  I have not kept jurisdiction

8     over a Rule 2019 motion in a closed case.  There's no purpose

9     any longer to 2019 in a closed case.  You need to move to

10    reopen those cases, if that's what you intend to do.

11         MR. CASSADA: Your Honor, I would submit to you

12    Garlock is here to vindicate a constitutional right, a right

13    of public access -

14         THE COURT: You may be, but you have to do it the

15    right way.

16         MR. CASSADA: And Garlock is entitled to the same

17    treatment as the trust.

18         THE COURT: You'll get the same treatment as the

19    trust.  If they want to access the 2019 statements, they're

20    going to have to move to reopen the closed cases too.

21         MR. CASSADA: We did file a motion to reopen, Your

22    Honor, and that's before the Court today.

23         THE COURT: I haven't seen a motion to reopen.

24    Where is it?

25         MR. CASSADA: Your Honor, it's in our papers.

1          THE COURT: No, Mr. Cassada.  You have to pay a fee

2    to reopen a case.  You have to file a motion to reopen a case

3    and pay the filing fee and then move to intervene.  You don't

4    do it in a request to give me access to a pleading in a

5    closed case.  It's not procedurally correct.  That portion of

6    this, I don't have jurisdiction over.  I didn't keep

7    jurisdiction over this issue in the plan.  So you need to

8    reopen the case if that's what you intend to do.

9          MR. CASSADA: Okay.  So, I have to pay the fee

10   before you enter an order reopening?

11         THE COURT: I think that's the way it works.  I

12   don't deal with the fees, but I believe when you file a

13   motion to reopen there's a fee that's charged, I think.

14         MR. CASSADA: Your Honor, several of the cases are

15   not closed.

16         THE COURT: That's right.

17         MR. CASSADA: And we have moved to intervene in

18   those cases.

19         THE COURT: You have moved?  I haven't seen a motion

20   to intervene.

21         MR. CASSADA: Well, Your Honor, it's in our - We

22   moved to intervene.

23         THE COURT: No, Mr. Cassada, that's not how it's

24   done.  You do it the right way.  There is no motion to

25   intervene.  You've asked for access to Rule 2019 statements.

1    You have not moved to intervene.

2          MR. CASSADA: Okay.

3          THE COURT: But that's a different issue in the open

4    cases anyway.  It's a significant issue in the closed cases.

5    I don't know if it's so significant in the open cases.

6          MR. CASSADA: Okay.  Your Honor, let me talk about,

7    for a moment, the rules that apply on Garlock's motion for

8    access, and then I'll address some of the other issues that

9    the Court raised.  As the Court knows, the public's right to

10    access has been recognized as a fundamental and essential

11    feature of our judicial system.  The Third Circuit has

12    concluded that public access is a constitutional and common

13    law right and has explained that public access promotes

14    public confidence in the judicial system by enhancing

15    testimonial trustworthiness and a quality of justice

16    dispensed.  It diminishes the possibility of perjury and

17    fraud.  It provides the public with a more complete

18    understanding of the judicial system and a better perception

19    of its fairness, and it helps to insure that judges perform

20    their duties in an honest and informed way.  So what are the

21    public access rules?  As we've stated, there's a common law

22    and first amendment presumptive right to access, and this can

23    only be overcome, says the Third Circuit, if the person

24    seeking closure meets the burden of showing two things: that

25    the record contains the kind of material courts will protect

1  and two, that disclosure of that material will work a clearly

2  defined and serious injury to such person.  In meeting the

3  standard, the Third Circuit has explained, specificity is

4  essential.  Broad allegations of harm, breadth of specific

5  examples or articulated reasoning are insufficient.  And

6  moreover, in any order denying public access the Court must

7  articulate specific injuries that justified a non-public

8  access and make specific findings supported by specific

9  evidence.  Bankruptcy Code § 107 also is codified in the

10  Bankruptcy Code, the public's right to access.  That section

11  says that a paper found in a case under this title in the

12  dockets of a Bankruptcy Court are public records and open to

13  examination by an entity at reasonable times without charge.

14  Now the Code sets forth some specified limited exceptions to

15  that which are likewise quite narrow.  The Court is familiar

16  with these.  The Court can order closure to protect an entity

17  with respect to a trade secret or confidential research,

18  development, or commercial information, protect a person with

19  respect to scandalous or defamatory matter contained in a

20  paper filed in a case, and protect an individual from an

21  undue risk of identity theft or other unlawful injury.  Of

22  course any determination under § 107 must not run roughshod

23  over Garlock's first amendment rights.  Again, broad

24  allegations of harm, lack of specificity, and failure to

25  offer articulated reasons are insufficient and any order must

1    be supported by specific findings and specific evidence.  And

2    finally, the Third Circuit has ruled that any order limiting

3    public access must be narrowly tailored to protect only

4    information that meets the standard.  Your Honor, we're not

5    here to complain about the orders that you've entered in the

6    cases.  Those orders do nothing more.  The Third Circuit has

7    explained and set up a procedure for exercising the right of

8    public access, and in fact, in that case the appeals of

9    insurers were rejected because they never asked for the

10   documents and the Superior Court said that in order to

11   determine - their appeal would not be ripe until they had

12   asked for documents.  There had been -

13          THE COURT: I think that was the District Court.

14          MR. CASSADA: And then later the Third Circuit on

15   appeal, Your Honor.

16          THE COURT: Not the Superior - I was just referring

17   to the correct court.

18          MR. CASSADA: Okay, I'm sorry, I misspoke.  There's

19   no dispute, Your Honor, that the Rule 2019 statements and

20   their exhibits are judicial records to which the first

21   amendment, common law, and § 107 rights of public access

22   apply.  Indeed, as Your Honor knows, Rule 2019 is a

23   disclosure rule that require the lawyers in these cases to

24   disclose in a public record the identity of creditors they

25   represented and the bases for their claims.  Garlock clearly

1   has a presumptive right of access.  The sole question is

2   whether the objectors have met or can meet their burden of

3   showing that one of the narrow exceptions to public access

4   applies.  Only a person threatened with a qualifying injury

5   has standing to object, the Committees in these cases, Your

6   Honor, who filed a spirited objection, they have and are

7   threatened with no injury at all.  So they're not persons

8   aggrieved.  They had no standing and the same would be true

9   for the debtor Pittsburgh Corning, which has filed an

10  objection.  But in considering this, Your Honor, remember

11  we're talking about the identities of creditors in bankruptcy

12  cases.  It is inconceivable that any exception to the

13  constitutional right of public access could ever be shown in

14  a bankruptcy case that would shield from public view the

15  names of creditors and the bases for their claims.  Now, the

16  objecting law firms have spilled a lot of ink that barely

17  hints at a possible injury.  They've not even come close to

18  properly alleging much less offering evidence to meet the

19  burden of showing a clearly defined and serious injury or

20  that the information they seek to protect from public view is

21  the kind of information that courts would do that, would

22  protect.  They begin by asserting a general right to privacy.

23  Your Court mentioned this.  Their leading premise is that

24  these folks had a right to privacy and that burden is on

25  Garlock to establish need under the federal discovery rules.

1   This completely misses the mark, Your Honor, and it's wrong,

2   at least in two ways.  First, the law is clear that the

3   burden is on the law firms and the claimant clients to

4   demonstrate a basis for denying public access.  As explained,

5   they must show a clearly defined and serious injury and they

6   have to show that this is the kind of information the courts

7   will protect.  So Garlock has no burden.  Instead it has a

8   presumptive right to access.  And second, persons who pursue

9   claims in federal courts have no right to shield their

10  identities and their injuries from the public, just the

11  opposite.  They must assert their claims in the light of day.

12  Tort claimants are no exception to this rule.  They must

13  identify themselves and their grievances and injuries in open

14  court.  So the fact that some of these folks have diseases

15  allegedly caused by exposure to asbestos, that gives them no

16  right to privacy, Your Honor.  They file complaints in public

17  courts all over the country identifying their names,

18  identifying their injuries, and seeking relief.  So the

19  general privacy argument, Your Honor, it completely fails.

20  There's no merit to it at all.  Now § 107(b) states that a

21  court may protect the disclosure of means of identification,

22  a defined term, upon a showing that disclosure would create

23  an undue risk of identity theft.  Now remember to meet this

24  standard, specificity is essential.  Broad allegations,

25  breadth of harm, breadth of specific examples are

1   insufficient.  Again, the objectors only hint at this

2   argument and none is offered or can offer any evidence that

3   public access creates a risk of identity theft.  First, the

4   rule doesn't shield the names of creditors and the bases for

5   their claims in bankruptcy cases.  Creditors in bankruptcy

6   cases are required to publicly identify themselves and the

7   bases for their claims.  Indeed, they file form proofs of

8   claims on claims registers that are open to the public and

9   the forms, they require names, addresses, amount of claims

10  and bases of claims even if the -

11          THE COURT: But, of course, that's not true in these

12  asbestos cases, there are no proofs of claim filed on behalf

13  of the personal injury creditors.  You know, that's really

14  the problem between 107 and Rule 2019.  In looking at 2019,

15  Congress was really, it appears, attempting to address

16  commercial enterprises and the whole rule is written that way

17  and 107 isn't.  So when we try to meld the purpose of 2019

18  into a personal injury action, because the rule's mandatory

19  and you've got to file the information that's required, it

20  doesn't work very well, and Congress, unfortunately, hasn't

21  fixed that problem.  The problem, I think, Mr. Cassada - I

22  agree, the names of creditors are disclose-able, and to a

23  certain extent their addresses may be disclose-able if that's

24  not somehow or other going to cause some identity problem or

25  other problem for a creditor.  I don't disagree with that,

1   but the nature of their injury, that's not something that

2   would be on the public record because there are no tort

3   claims filed here and to the extent someone's filed a

4   complaint in another system that identifies that, then you

5   have access to it from the complaints that they filed in the

6   other system, but I don't even know in terms of the 2019

7   statements if the creditors themselves, and I'm using that

8   term in quotes, "creditors", know that their names are on

9   these 2019 statements or the nature of their injury.  They're

10   not filed by creditors under oath, they're filed by a law

11   firm that says, I represent more than one entity and the

12   purpose, as articulated in the rule for a noncompliance with

13   the rule, is penalties against the law firm not against the

14   creditor.  The law firm may not be able to file a master

15   ballot but the creditor's still entitled to vote.  So, there

16   is no penalty for an inappropriate 2019 statement on behalf

17   of the creditor.  The penalty is on the entity who filed the

18   statement.  So, I'm a little bit, I guess, confused as to

19   what public information is available in the 2019 statements

20   that's not available in the ballots where people actually do

21   come forward and say I'm a creditor because they voted in the

22   case.  And you have access to the ballots.  I've already said

23   you can access the ballots, because they're public.

24        MR. CASSADA: And there's no new need for any

25   confusion there, Your Honor, and really the two don't really

1   have anything to do with one another.

2          THE COURT: Well, they sure do.

3          MR. CASSADA:  The point of mentioning the proofs of

4   claim is to demonstrate that the kind of information in these

5   2019 statements is not the kind of information that courts

6   typically protect, just the opposite.

7          THE COURT: There is no proof of claim.

8          MR. CASSADA: I'm sorry?

9          THE COURT: There is no proof of claim which

10  demonstrates that it is the type of information the courts

11  will protect.  That's one reason why you don't have people

12  file proofs of claim in that circumstance.  They're going to

13  be dealt with, their claims to the extent they have them are

14  going to be dealt with in a non-bankruptcy - again, using

15  that term loosely, mechanism.  That is through a trust that

16  is formed with resources through the bankruptcy that it is

17  administered separately.

18         MR. CASSADA: But that has nothing to do with

19  Garlock or the public's right to access to a judicial record

20  and the point of comparing the proof of claim, Your Honor, is

21  to show that this is not information that would subject these

22  people to risk of identity theft because it's the kind of

23  information that Bankruptcy Courts require to be filed in

24  public including for tort claimants their injury.

25         THE COURT: Bankruptcy Courts don't require proofs

1  of claim in these cases.

2           MR. CASSADA: Some -

3           THE COURT: So, the analogy doesn't work.  There is

4  no proof of claim filed by these entities.

5           MR. CASSADA: I think we're not connecting on this

6  point, Your Honor.  The point is that the information in the

7  2019 statements does not impose any risk of identity theft as

8  evidenced by the fact that creditors who are required to file

9  proofs of claim provide the same information in proofs of

10 claim.

11          THE COURT: Creditors who are required to file

12 proofs of claim identify their names and addresses and

13 whatever the basis for their claim is, that's correct.

14 That's what you do in a proof of claim.

15          MR. CASSADA: That's correct, exactly, and there's

16 no basis for finding that in a 2019 statement when that same

17 information exists that it creates a risk of identity theft.

18 That's the issue that we're addressing right now.

19          THE COURT: All right.

20          MR. CASSADA: And, I mean, to get to your point

21 about the ballots, Your Honor, the ballots are judicial

22 documents too.

23          THE COURT: Yes.

24          MR. CASSADA: And we're entitled to those as well.

25          THE COURT: That's what I said.

1      MR. CASSADA: And there's no reason for Garlock to

2   bargain away one right of access to be able to exercise a

3   different right of access.  We are entitled to both.

4      THE COURT: The problem is that the case law is

5   clear that the courts can prevent access to documents that

6   are under seal when the purpose for the request to get the

7   access is itself improper, and Garlock isn't here alleging

8   that it's going to vindicate some public interest or - I

9   don't know you do with a 2019 statement on a public record,

10  but whatever it is, that's not what Garlock's intended

11  purpose is.  Garlock wants to be able to access these

12  statements for the specific purpose of then suing a law firm

13  saying that in another proceeding, unrelated to the

14  bankruptcy, that law firm lied.  And that's Garlock's word,

15  lied.  That's the information that is in Garlock's motion.

16  We're going to prove that somebody lied.  I don't know how

17  much more scandalous something could be.  There's no

18  allegation by Garlock that someone in fact lied and that

19  these statements are going to verify that lie.  The statement

20  by Garlock is, We want to use these statements to prove that

21  someone lied.  We don't have any evidence that there was a

22  lie, but our theory is, they lied and therefore we're going

23  to access these document and harass somebody, bring a law

24  suit, whatever the words are, by then proving that they lied.

25  That is not the purpose for disclosure of a 2019 or any other

1    type of information.

2            MR. CASSADA: I think some of the concepts, Your

3    Honor, are a little misdirected there.  The purpose of the

4    2019 statements has no bearing on whether there's a public

5    right to access, and Garlock's purpose -

6            THE COURT: I don't disagree.

7            MR. CASSADA:  - if you read the motion, it was that

8    Garlock seeks this to determine whether people - we use the

9    word lie, impeach works, the purpose is to look at the 2019

10   statements to see if they impeach statements made elsewhere.

11   Your Honor, the possibility that Garlock might use the

12   statements as evidence against the interest of claimants,

13   it's not a harm that would prohibit public access.  It's just

14   the opposite, Your Honor.

15           THE COURT: But, Mr. Cassada -

16           MR. CASSADA: The fact that Garlock or any member of

17   the public would look at a public record and might be able to

18   impeach the people who filed those public records, Your

19   Honor, that is a public good.

20           THE COURT: Mr. Cassada, you're assuming, you make,

21   I think, an invalid assumption, that the Rule 2019 statements

22   are the equivalent of a proof of claim, and they're not.

23   They're not signed by a creditor.  They're not signed by a

24   lawyer on behalf of the creditor.  They're signed by the

25   lawyer on behalf of the law firm.  It says, We represent X-

1    people.  The creditors, in order to show that they have a

2    claim in the case have to do something affirmatively in these

3    cases that happened to vote, they had to submit a ballot.

4    These statements, the 2019 statements aren't evidence that a

5    creditor has filed a false claim against Garlock.  They're a

6    statement by a lawyer that says we represent these folks.

7            MR. CASSADA: That's correct, Your Honor.

8            THE COURT: Okay.

9            MR. CASSADA: And we're not saying otherwise, and it

10   doesn't matter how we interpret them.  They say what they

11   say.

12           THE COURT: I agree, they say what they say, but

13   Garlock's express purpose is to use this as a tool to prove

14   that someone lied when you have no evidence that's submitted

15   to say that someone did lie or to show me how these

16   statements are going to advance that action.  The ballots,

17   maybe they do, they're statements by the creditor.  These

18   2019 statements are not statements by the creditor.

19           MR. CASSADA: Well, Your Honor, the statements are

20   statements by law firms that the people listed are creditors.

21           THE COURT: That they represent them.

22           MR. CASSADA: Many of them are much more specific

23   about that.  There are statements by law firms stating, I

24   have personal knowledge that these folks were exposed to and

25   injured by the products of their respective debtors.

1          THE COURT: That's what the ballots say.

2          MR. CASSADA: That's what the 2019 statements say.

3          THE COURT: That I have personal knowledge that

4     these creditors were exposed to a product - that a lawyer is

5     going to say, I have personal knowledge that my client was

6     exposed to a product?

7          MR. CASSADA: That's what a lot of the 2019

8     statements say, Your Honor.

9          THE COURT: Okay.

10          MR. CASSADA: In tort system discovery it's the law

11     firms themselves answer discovery as well.  Now, I might

12     remind the Court that also included among the exhibits filed

13     are forms of exemplars.

14          THE COURT: Yes, there are.

15          MR. CASSADA: And in these exemplars these are

16     statements that their clients have authorized them to appear

17     in the bankruptcy case.

18          THE COURT: Yes.

19          MR. CASSADA: Okay.  So, Your Honor, again, the way

20     that Garlock might use the 2019 statements and the way that

21     you suggest is not an improper purpose recognized by any

22     court in fact it's just the opposite.  If a member of the

23     public were to come in and to look at judicial records and

24     find that they can impeach those records from other sources,

25     again, that's a public good, that means that when law firms

1    and people file court records, they're going to be more

2    careful to make sure that the records are accurate and

3    honest.  Again, that's the whole purpose for public access.

4    So to brand that as an improper purpose is, Your Honor, we

5    would submit that that's just not correct.  It's completely

6    wrong.

7            THE COURT: There are too many assumptions open, Mr.

8    Cassada.  That's the problem.  In terms of vindicating the

9    fact that somebody lied or impeached you have to look at what

10   it is you're impeaching.  The statement that you would be

11   impeaching by access to the 2019 statement is that the law

12   firm didn't represent the creditor.  That's all these 2019

13   statements say.

14           MR. CASSADA: Well, Your Honor, you can read the

15   2019 statements for yourself and you can see what they say,

16   but that doesn't matter here.  We will use the 2019

17   statements only in the way that we can use them and based

18   only on what they say.  That's all we can do, Your Honor, and

19   I don't think that that's a concern of the Court.

20           THE COURT: It is.  To the extent that there is an

21   alleged improper use, this Court should not be providing

22   access to records that contain, what I still believe is

23   private information.  Heck, even your doctor can't disclose

24   to somebody else what the nature of your injury or your

25   disease is under certain laws, and we've required the

1    creditor to state the nature of that or - not the creditor,

2    pardon me, the law firm to state the nature of the disease

3    simply to show that in fact they're potentially a creditor in

4    the case.  That information is not, I believe, available on

5    the public record unless the creditor voluntarily puts it on

6    the public record, and these statements are not statements by

7    the creditor.  They're statements by the law firm.

8          MR. CASSADA: They're statements by the law firms

9    authorized by the creditors, Your Honor, and when creditors

10   or tort claimants, whatever the nature of their claim might

11   be, when they appear in public courts, they're required, Your

12   Honor, to state their names and to describe the basis for

13   their injuries.

14         THE COURT: Yes, they are.

15         MR. CASSADA: And these statements talk about the

16   disease type.  That's not private information, Your Honor.

17   That's information that is on public records all over the

18   country.  Indeed it's required to be in public records all

19   over the country.  There's no diagnosis or -

20         THE COURT: No, Mr. Cassada, as to a specific

21   individual, individual A files a lawsuit in a state court and

22   says, I have mesothelioma; yes, that individual has filed a

23   suit and put that at issue.  The 2019 statements don't put

24   the nature of the disease at issue.  They true-up the fact

25   that the law firm has the ability to appear on behalf of that

1    creditor who can then vote on the plan, and it's the vote on

2    the plan that substantiates whether or not there's a creditor

3    and what the nature of the injury is.  It's simply a

4    procedural tool to make sure that the entity who's voting the

5    claim has the authority to do it and the ballot agents have

6    been ordered by the courts to look at the 2019 authorization

7    to make sure it impacts the creditor, who is being

8    represented by a firm, gave that authorization.  That's what

9    the purpose is.

10             MR. CASSADA: Sure, Your Honor, but the purpose has

11    nothing to do with whether the public is entitled to access.

12    The question is, is there any reason not to give the public

13    right to access and Your Honor has stated that the type of

14    disease is private information and we've demonstrated that

15    it's not.

16             THE COURT: No, you haven't demonstrated that it's

17    not.  You've demonstrated -

18             MR. CASSADA: There is no basis law for saying that

19    that's private information.  I know the Court -

20             THE COURT: Well, certainly there's a basis in law.

21    People don't have to disclose the fact that they're sick to

22    anybody unless they voluntarily choose to do it, and they

23    haven't voluntarily submitted a 2019 statement, the law firm

24    has.

25             MR. CASSADA: Well, they've asked law firms to come

1   into a bankruptcy case and represent them, Your Honor.

2           THE COURT: They have done that.

3           MR. CASSADA: Okay.  So they're in federal court and

4   there's no basis for them saying that a member of the public

5   doesn't have access to understand who they are and what the

6   basis for their claims is.  There's no law at all supporting

7   that and the purpose that Your Honor's concerned about is not

8   the type of purpose that courts have called improper and

9   refused to allow access for them.  The fact is that the

10  burden is on the law firms and the creditor clients to show

11  that there's a basis under the law and there's -

12          THE COURT: Well then I need to hear from them to

13  see whether there is because I understand your argument, Mr.

14  Cassada.

15          MR. CASSADA: Okay, I'll yield - I don't know if we

16  want to wait until the conclusion to have Mr. Worf move to

17  admit our exhibits or whether you'd rather hear from the

18  objectors first.

19          THE COURT: No, I think if you're going to offer

20  exhibits, you should do it now.

21          MR. CASSADA: Okay, thank you, Your Honor.

22          THE COURT:  Mr. Worf.

23          MR. WORF: Good morning, Your Honor.  Richard Worf

24  for Garlock Sealing Technologies.  We distributed binders

25  with the exhibits that we're going to offer and may Mr.

1    Werkheiser approach the Court?

2            THE COURT: Yes, please.

3            MR. ESSERMAN: Your Honor, this is Sandy Esserman

4    for some of the firms.  I don't know whether these are the

5    exhibits on this desk or not, but nothing was tendered to us

6    prior to this hearing and we haven't seen any of this.

7            THE COURT: All right.  Well, let me have Mr. Worf

8    identify and offer them and I will not admit them now.  We'll

9    let everyone have a chance to see what they are before, I

10   guess, we can rule because with three binders there are a lot

11   of pages that may have to be looked through, but go ahead,

12   Mr. Worf.

13           MR. WORF: Thank you, Your Honor.  These are

14   exhibits that we offer to support the points that Mr. Cassada

15   raised, that the kind of information Garlock is seeking here

16   is not the kind that is protected by courts, nor is it the

17   kind of information that would lead to a clearly defined

18   serious injury or would fit within one of the other

19   exceptions to 107 as the case law requires.  First of all,

20   Exhibit 1, these are examples of 2019 statements that were

21   filed by the law firms that have appeared and objected.

22   These are simply pulled from the public docket and are

23   offered to support the point that Mr. Cassada said that the

24   exhibits say what they say and here's what they say.

25           THE COURT: All right.  What case are they from?

1          MR. WORF: Exhibit No. 2 is a summary of the

2     statements and it summarizes which cases they are from and

3     which law firms filed them and also contains a summary of

4     some statements that are made therein.  Exhibit 3 are

5     examples of 2019 statements filed on public dockets by the

6     Kazan, McClain; Brayton Purcell; and Waters & Kraus firms,

7     which are three of the firms that have objected here.

8     They're from the Plant Insulation and Thorpe Insulation cases

9     and were filed recently.  I believe some were filed in 2011,

10    some were filed in, I believe, 2008, but their dates are

11    indicated on the fillings.

12          THE COURT: All right.

13          MR. WORF:  They contain detailed information

14    regarding the creditors, those firms represented in those

15    cases, in some cases contain the home addresses of those

16    creditors and contain the claimed disease type of those

17    creditors.  The next few exhibits are offered for the purpose

18    of showing that the information is not the kind that courts

19    protect.  Exhibit 4 is an excerpt, 5 out of 37,194 pages of

20    the FEC report filed by - the Federal Elections Commission

21    report filed by Obama for America.  These excerpts show the

22    names of individual donors, their addresses, their, in some

23    cases, occupations, and in some cases their employers.

24          THE COURT: I'm sorry, they're pages from what?

25          MR. WORF: The FEC report for Obama for America,

1    which is filed publicly and is a public record which I

2    obtained from the internet and is something that the

3    disclosure rules require Obama for America to file and which

4    showed the information contained therein.

5            THE COURT: And how's this relevant to a 2019

6    motion?

7            MR. WORF: It shows that the information that is in

8    the 2019 exhibits is not the kind that is protected or that

9    would lead to any undue risk of identity theft.

10           THE COURT: Okay, the fact that a political action

11   committee has to file a specific report that identifies

12   donors is a little bit different in my mind from a Rule 2019

13   statement, but okay.

14           MR. WORF: Exhibit 5 is an individual's Chapter 13

15   bankruptcy petition.  I typed in a common name, William

16   Smith.  This one happened to be filed on February 4th, 2011 in

17   this Court, the Delaware Bankruptcy Court.  As the Court is

18   well aware, these petitions show an individual's name, home

19   address, detailed -

20           THE COURT: This is a debtor's bankruptcy filing

21   petition?

22           MR. WORF: Yes, Your Honor.

23           THE COURT: Okay.  And that's relevant to a 2019

24   statement because?

25           MR. WORF: It again shows that the information

1   contained in the exhibits is not the kind the courts will

2   protect and is not going to lead to any undue risk of

3   identity theft.  If the Court were to so find, individual

4   debtors in cases like Mr. Smith's who would no doubt have a

5   strong interest in protecting these documents from public

6   view.  A bankruptcy petition is, as the Court knows, a

7   weighty matter that contains personal information and is

8   something that many individuals would like to conceal.

9   They're not - I pulled it from the public docket.  Exhibit 6,

10  this is a - I apologize for the length of this one, but I

11  believe the length is important.  It makes an important

12  point.  It is an 869 page extract from the Claims Register in

13  In Re: American Business Financial Services, Inc., 05-10203,

14  Bankruptcy District of Delaware.  This shows the names and

15  addresses of, I believe, thousands of individual creditors as

16  well as, I believe, in many cases the amount of their claim,

17  the other information that they were required to provide.

18  This is also public and shows that the information in the

19  2019 exhibits is not the kind that courts protect and not the

20  kind that would lead to any undue risk of identity theft.

21  Exhibit 7 is a news article that describes the American

22  Business Financial Services' bankruptcy and describes some of

23  the claimants in that bankruptcy and notes that many of the

24  investors were individual investors in that case and were

25  required to file proofs of claim and many were elderly.  We

1    offer this for the fact that these were characteristics of

2    those claimants and also to show that the public has an

3    interest in knowing who claimants are in bankruptcy cases and

4    this is a customary topic of public interest.

5         THE COURT: And this was something that Garlock got

6    this information and did the news article or some news

7    article, or news person representing a public interest got

8    this information for publication purposes?  How was it

9    obtained?

10        MR. WORF: Your Honor, this news article is a public

11   news article.  I don't recall the publication.  I believe it

12   was a publication from Philadelphia.

13        THE COURT: All right.

14        MR. WORF: Exhibit 8 is a list pulled from the

15   internet also of pending cases in the federal Mardock

16   proceeding which is an MDL in the Eastern District of

17   Pennsylvania concerning maritime asbestos cases and this

18   shows the names of thousands of asbestos personal injury

19   claimants on that docket.  This is also publicly available

20   and again shows that this information about personal injury

21   claimants' names is not the kind that is protected or the

22   kind that leads to an undue risk of identity theft.

23        THE COURT: And are the diseases listed?

24        MR. WORF: They are not in this particular document,

25   but of course, every one of the complaints in that proceeding

1    is, I believe, also public and would customarily contain

2    allegations regarding disease.

3            THE COURT: So there are complaints that have been

4    filed.

5            MR. WORF: Yes, Your Honor.

6            THE COURT: All right.

7            MR. WORF: That's how the cases got to the Mardock

8    proceeding.

9            THE COURT: Okay.

10           MR. WORF: Exhibit 9 is a list of pending cases in

11   the Texas MDL, also pulled from the internet showing the

12   names of thousands of asbestos personal injury claimants.

13           THE COURT: Okay.

14           MR. WORF: Offered for the same purpose.  We mention

15   in our motion that the objecting law firms concede that

16   Garlock should have access to the ballots and just for the

17   completeness of the record we wish to offer the master

18   ballot, the Thornton & Naumes firm filed in In Re: Pittsburgh

19   Corning.  This shows the names of the claimants and their

20   claimed asbestos-related disease.

21           THE COURT: This is Exhibit 10?

22           MR. WORF: Yes, Your Honor.

23           THE COURT: All right.

24           MR. WORF: This also goes to the same points I've

25   been discussing.  Exhibit 11 is a collection of five

1    documents which are documents that show the public interest

2    and concern regarding the suppression of evidence about

3    exposure to bankrupt products.  They are offered for that

4    purpose of demonstrating that this is a topic of intense

5    public concern and is one that the public is entitled to

6    investigate and vindicate.  Exhibit A is an article entitled

7    Toxic Justice.

8           THE COURT: These are articles written and submitted

9    by Garlock?

10          MR. WORF: No, Your Honor, these are articles that

11   are written by various publications as indicated on the

12   exhibit.

13          THE COURT: All right.

14          MR. WORF: Exhibit A is from the Dallas Observer.

15   It was published a number of years ago and the publication

16   quoted a former Baron & Budd product identification paralegal

17   who, quote, "Insists that for certain periods of time when

18   tactical reasons dictated, it was better not to have exposure

19   to a bankrupt company's products.  Identification of those

20   products was discouraged."  Again offered not for its truth

21   but for the public concern in this issue.  Exhibit B, article

22   is Trust Busted and Kiahoga Comeuppance from the Wall Street

23   Journal recounting the discovery of inconsistent exposure

24   stories told by the Brayton Purcell and Early Lucarelli firms

25   in the tort system and to asbestos personal injury trusts.

1    Again, offered to demonstrate the public interest in this

2    topic not for their truth.  Exhibit C, a letter from

3    Congressman Lamar Smith to the GAO requesting an inquiry into

4    the transparency of asbestos trusts in part because of

5    concern regarding inconsistent exposure stories.  It's hard

6    to think of a greater sign of public interest than a high-

7    ranking congressman saying that the topic deserves studying.

8    Exhibit D, Double Dippers, this is a story from Forbes

9    recounting the case from Cleveland and also another case

10   where the case was dismissed because of failure to disclose

11   trust claims that contained unfavorable exposure evidence,

12   again showing public concern.  And finally, Exhibit E, New

13   Generation of Asbestos Trusts Encourages Double Dipping.

14   This is an article by Mr. Cohn, and I believe the title

15   speaks for itself.  We also had a number of exhibits attached

16   to our motion and reply that we'd like to offer, many of

17   which are similar to the ones I've discussed.  We offer

18   Exhibit D, which is the -

19          THE COURT: I'm sorry, these were attached to what?

20   I'm sorry.

21          MR. WORF: These were attached to our motion and

22   reply and they are also in the binders in Binder 3 of 3.

23          THE COURT: All right.  And what was the first one?

24          MR. WORF: Exhibit D.

25          THE COURT: Are you saying "B" as in boy?

1          MR. WORF: D as in dog.

2          THE COURT: Thank you.

3          MR. WORF: This is the Baron & Budd 2019 statement

4     in Pittsburgh Corning offered to show that it says what it

5     says.  Exhibit E, the Waters & Kraus 2019 statement in

6     Pittsburgh Corning, offered for the same purpose.  Exhibit I,

7     as in igloo, this is the order granting access to 2019

8     statements in the Owens Corning case.  Exhibit J is the 2019

9     order from In Re: Congoleum.  Exhibit K is the Waters & Kraus

10    2019 statement in the Congoleum case, again putting on the

11    public record more than the information contained in the

12    exhibits Garlock is seeking today.  Exhibit L is the

13    complaint in Polar v. ACandS showing that among other things,

14    asbestos personal injury claimants are required to put their

15    disease allegations on the public docket in cases that they

16    file, and it is something that is not protected in asbestos

17    litigation.  Exhibit M is an interrogatory response in -

18          THE COURT: M as in Mary?

19          MR. WORF: Yes, Your Honor.

20          THE COURT: Okay.

21          MR. WORF: This is an interrogatory response in

22    Foster v. Kantora (phonetical) containing detailed

23    disclosures.

24          THE COURT: What is that case?

25          MR. WORF: Foster v. Kantora.

1              THE COURT: Yes, but where is it pending?

2              MR. WORF: I believe this was a Texas case.

3              MR. WORF: A state court case?

4              MR. WORF: Yes, Your Honor.

5              THE COURT: All right.

6              MR. WORF: Again showing all the information that is

7    contained in the 2019 exhibits disclosed in a state court

8    asbestos case.  Exhibit N, as in no, the voting procedures in

9    Pittsburgh Corning.  Then Exhibit O, the Motley Rice firm's

10   2019 statement in the Quigley case, and finally, Exhibit B to

11   our reply is the order unsealing 2019 statements in the

12   Accuride case in the Delaware court.  Thank you, Your Honor.

13             THE COURT: All right.  How much time, folks, will

14   you need to take a look at these exhibits and determine

15   whether you have any objection to the admission and whether

16   you're going to be submitting something supplemental?

17             MR. ESSERMAN: Sandy Esserman.  I'm just one person

18   among others, but most of these exhibits seem to me to be

19   improper, I'm not sure they're probative of anything.  To the

20   extent that they're public documents that are filed within

21   this Court, I think the Court can just take judicial notice

22   of them.  I'm not sure what's been filed under seal and what

23   hasn't been filed under seal.  If they're public documents,

24   it's one thing, nevertheless, I'm not sure they're probative

25   of anything in connection with this motion especially some of

1    these articles which are just rank hearsay and allegations

2    that someone is writing, someone with an agenda similar to

3    Garlock is writing various articles on various things.  I'm

4    not sure that's proper evidence or probative of anything

5    other than someone's got an agenda that Garlock likes.  So, I

6    guess the proper answer to Your Honor's question is, I would

7    think we'd need some time to confer among ourselves before we

8    would have a specific rendition, but I do think it's improper

9    that these things are sort of dumped on us at the hearing the

10   day of the hearing.

11          THE COURT: All right.  I think what I'll do is hear

12   the arguments in response and then perhaps work out a time

13   frame on which objection and if you're going to submit

14   anything of your own by way of exhibits, they can be

15   submitted, and Garlock, if it has any objections to those can

16   be addressed and maybe we'll just continue the matter till

17   the next hearing to give time to have all that happen, but

18   let me hear the rest of your arguments in response and you

19   folks, we'll take a short recess after that to talk to see

20   whether that process may work.

21          MR. ESSERMAN: Thank you, Your Honor.  This is Sandy

22   Esserman.  I think there's going to be several people that

23   are going to be speaking in opposition to the motion so, I

24   guess I might as well kick it off, but I know Ms. Ramsey and

25   Mr. Lockwood also have various things to say.  We, of course,

1    oppose the motion.  We've stated so in our papers.  I'm not

2    going to address the closed cases issues.  Those are closed.

3    I don't think they've moved to properly open them.  I also

4    think that there's a standing issue as to what standing

5    Garlock has to come in here and to seek what they're seeking.

6    I know Your Honor sort of went through this a year ago and

7    entered a very specific order in the Pittsburgh Corning case

8    in which Garlock sought access to 2019 and it was - Your

9    Honor's words were very specific and Your Honor stated the

10   motion was denied without prejudice to a request for access

11   to information contained in a specific 2019 statement as to a

12   particular client in specific instances or of need or cause.

13   I don't think we've heard anything of need or cause here

14   other than the fact that Garlock wants to continue engaged in

15   either a fishing expedition in which they are seeking

16   information to sue people in their case.  None of this

17   information they're seeking has anything to do with the cases

18   in which the information was filed, that is in Pittsburgh

19   Corning, in Owens Corning, and any of the cases Garlock has

20   no standing as a creditor.  Garlock isn't seeking to object

21   to a plan.  In the last go-round where Garlock wanted access

22   to the 2019 statements, they were allegedly seeking an

23   objection to a plan and they thought they might have standing

24   to file an objection.  It appears that they've now completely

25   abandoned the issue that they actually have standing to do

1   anything and are not strictly going under some sort of public

2   right, public access statement.  I think Garlock completely

3   misunderstands what Your Honor did with 2019 and what they're

4   trying to do is recreate 2019 in their image and what they

5   want it to read and what they'd like it to read.  Your Honor

6   recalls that we had many, many hearings over many days over

7   what is really, one could argue, a collateral rule to the

8   reorganization of 2019 and Your Honor forged, listened to

9   lots of argument, days of arguments in which we'd come back

10  and Your Honor finally crafted an order after thinking about

11  it very carefully as to what to do and how to balance the

12  rights of people with personal and private information to put

13  on the public record versus 2019, and Your Honor's order, I

14  think, has been frankly given legs.  It's been given legs by

15  the Appellate Courts, the District Courts and the Courts of

16  Appeals that have approved Your Honor's order.  Interestingly

17  enough, the order was entered in by the Judge sitting in

18  Garlock's bankruptcy, it was the same exact order that Your

19  Honor has entered in which Your Honor is trying to balance

20  the rights of parties to have access versus the purpose of

21  the rule, and the purpose of the rule really is, as Your

22  Honor stated early, it's an agency rule, it's, Does a lawyer

23  have the right to represent this client in a case.  2019 is

24  not a specific order, not a specific rule which is absolutely

25  fixed.  2019 really doesn't fit in a mass tort concept text.

1    Justice Ruth Bader Ginsburg, when she sat on the appellate

2    courts, when she was still serving as a Judge in the Court of

3    Appeals for the DC Circuit noted that, quote, "Courts have

4    taken different views of how literal compliance with Rule

5    2019 must be."  And some courts have taken a view that 2019

6    in a mass tort context doesn't fit and doesn't necessarily

7    need to be complied with.  Other courts have taken different

8    views of that, and frankly, I think, the courts are trending

9    towards an order that Your Honor has entered in the various

10   cases, most of which, as Your Honor noted, cases are done and

11   over with.  Garlock of course wants what information it can

12   to create whatever mischief it wants to try and create and

13   can create, of that we have no doubt.  So, not only do we

14   know that Garlock is here not as a vindicator of public

15   rights.  We know from their own papers that Garlock has an

16   agenda.  Looking at the exhibits that Garlock is trying to

17   introduce as evidence, evidence of what one can only guess,

18   but I think Garlock is back into the days of asbestos is good

19   for you.  It should be eaten at breakfast, lunch, and dinner.

20   There is nothing wrong with this thing.  It's just a fraud

21   being committed by plaintiffs' lawyers and democrats and

22   people that donate to the Obama campaign and that this whole

23   thing is just a big fat lie, and that's really what this

24   whole thing is about.  It is about a subterranean agenda that

25   has nothing to do with the rules that Your Honor has stated

1  very carefully and cautiously in this Court and the rules

2  that are governed and frankly the rules of privacy and

3  getting someone's name on the public record as to whether

4  someone has a disease or not, they could care less about.

5  What they'll tell you is, Well, this information is already

6  out there.  It's out there somewhere else and therefore, it's

7  not to be protected.  Well, if it's out there, it's out

8  there.  There's nothing that anyone can do about that and if

9  Garlock wants to go search all the public cases, all the

10 other public cases then they've got the records that they

11 need, and I don't know why they would necessarily have a need

12 for this.  What they're trying to do is they're trying to

13 have it all neatly wrapped up so they don't have to go

14 anywhere else, so they can have a nice searchable database

15 that they can use for their own purposes and their own

16 mischief.

17          THE COURT: Well, but do they have that right?  I

18 mean, that's the problem with the decisions.  It seems to me

19 that there is a pretty strong presumption, and frankly there

20 should be of a right to public access for information in

21 civil cases and bankruptcy cases.  There's really no reason

22 to keep most information hidden or secret.  Bankruptcy abhors

23 things that are not disclosed for the general proposition.

24          MR. ESSERMAN: Agreed, agreed.

25          THE COURT: But in this instance, I think this - not

1    just this Court but many courts have looked at this 2019

2    issue and it seems in my view, as you know, to be mandatory.

3    So trying to meld it to fit in a mass tort context isn't

4    easy.  So, I thought that there was some basis for what I had

5    done.  I think the appellate courts say - I'm not sure they

6    really looked at the 2019 information itself.  They looked at

7    the process and felt that the process was all right, but now

8    Garlock's here saying they're a member of the public and they

9    want this information because they're a member of the public

10   not for anything, supposedly, just because they're a member

11   of the public.  Well, how do I deny public access to a member

12   of the public?

13          MR. ESSERMAN: Well, for one thing, Your Honor

14   provides in your prior orders in this exact same circumstance

15   that access can be granted to a specific 2019 statement, as

16   to a particular client in specific instances of need or cause

17   and what Garlock's trying to do is they're trying to turn

18   that on its head and say it is on the head of the victim to

19   prove that its public record information need not be

20   disclosed rather than Garlock setting forth as to a

21   particular client in a particular instance of need or cause

22   as Your Honor has stated in the order.  So, what they're

23   trying to do is they're trying to recreate the orders of Your

24   Honor in their own vision to provide for something that is

25   not there and they're trying to redraft Your Honor's orders

1    that have already been entered in these cases and in this

2    particular case.  So I think just on the orders that have

3    been entered in this Court there has not been any kind of -

4    number one, they haven't asked for a specific 2019 statement

5    as to a particular client and they haven't shown a need or a

6    cause.  Now, if Your Honor says you want to rewrite that

7    order, I guess that's your right, but that's what the order

8    says that Your Honor has already entered, and once again, we

9    went through the issues of whether or not access should be

10   granted - really what Garlock's arguing is, it's not a

11   question of access, it's that these 2019 statements with the

12   sensitive information that is contained therein needs to be

13   on a public record.  They're really trying to reargue Your

14   Honor's order that is already in place in the case.  They're

15   really trying to say that needs to be public.  That needs to

16   be put on the public record, and I think we've already gone

17   through that argument, and I think that there is some *stari*

18   *decisis* here.  I think that the Court has ruled.  I think the

19   appellate courts have looked at the issue and they certainly

20   didn't find anything necessarily wrong with the procedures

21   that Your Honor has undertaken, but what Garlock really is

22   saying is, We want these 2019 statements on the public

23   record.  We want the order that Your Honor entered in all

24   these cases to be stricken after the order has not only been

25   filed but been complied with and we want that order to be

1    changed.  We don't like that order and I think that there are

2    certain standing issues that Garlock has and has not

3    overcome.  Garlock is not a creditor.  Garlock doesn't

4    purport to be a creditor.  Garlock hasn't filed a proof of

5    claim.  Garlock has shown no interest but an interest to file

6    lawsuits and to try and catch people in lies, and I think

7    they're trying to recreate orders that this Court has entered

8    after extensive notice to many, many people and many firms

9    and many claimants over the past, I think, five or six years.

10   So I think they're trying to engage in not only revisionist

11   history but they're trying to rewrite history here and as

12   long as the orders of this Court have stood, I think they've

13   stood for a proper purpose, and that Your Honor has tried to

14   balance those rights and I think that that balancing in those

15   orders should continue.  2019 is, frankly, much ado about

16   nothing.  2019 is not, as Your Honor pointed out in previous

17   hearings, whether someone's even going to file a claim with a

18   trust.  2019 is not whether or not someone is even going to

19   vote.  2019 is something that was created by this Court, the

20   interpretation of 2019, to try and fit into a mass tort

21   context in an individualized basis and it's strictly a rule

22   of agency.  It's almost a rule of convenience that says, This

23   law firm has a right to act and potentially vote for these

24   people.  And Your Honor required certain information to be

25   put on that 2019 which is relatively sensitive information,

1    disease information.  Whether someone is publicly recognized

2    in a convenient searchable database for telemarketers, for

3    whoever, for insurance salesmen, or for Garlock it was not

4    the purpose of Your Honor.  Your Honor could just as easily,

5    if Your Honor's going to redo the 2019 orders and make them a

6    public access, order all that information put on the public

7    record, but strike certain information that is sensitive.

8    Say, okay, we're going to put the 2019s of record, but we're

9    going to strike all the information about who's got what

10   diseases and that sort of thing, and we're not going to have

11   any kind of sensitive personal information, any kind of

12   addresses, any kind of social security numbers.  Your Honor

13   has the power and had the power back when those orders were

14   entered, at least had the power then to provide for a 2019

15   order that did that, but Your Honor was trying to forge a

16   compromise to get certain information on the record if

17   needed.  So, frankly, if anything, if the 2019 orders are re-

18   struck, I think that they would be re-struck in a completely

19   different way to eliminate any kind of that type information.

20   Then filed on the public record, who cares, but that's not

21   what Your Honor did.  I think we need to respect people's

22   privacy.  I think that the appellate courts would and I think

23   the courts around the country have seen how Your Honor's

24   handled these cases, has respected that, and has followed it.

25   And I'll let my other colleagues respond.

1              THE COURT: All right, and thank you.  Ms. Ramsey.

2              MS. RAMSEY: Good morning, Your Honor.  I will try

3    to not reargue the points that Mr. Esserman made, but I do

4    want to adopt them.  The Third Circuit is clear that the

5    right to public access is not absolute and that the

6    presumption can be balanced and should be balanced against

7    litigating factors.  The Court asked, How does the Court rule

8    against the presumption in this case?  There are four reasons

9    that we contend that you should rule against it.  The first

10   is that some of the individuals who are listed on the

11   exhibits to the Rule 2019 statements are not parties in the

12   case and never were parties in the case, never took any

13   action to become parties in the case, and their rights never

14   were adjudicated in the case.  This is part of the hybrid

15   unusual compromise that the Court reached with respect to the

16   difficulty between Rule 2019 and the peculiar truth of an

17   asbestos bankruptcy case which is that many of the claimants

18   are still at a point in their case where they're evaluating

19   whether or not they have a claim and which defendants they're

20   going to pursue, and so, this Court's orders and the dialogue

21   that the parties had with the Court at the time the orders

22   were entered made clear that the exhibits are going to be

23   over-inclusive.  They are going to reflect any individual

24   represented by a law firm that that law firm believes might

25   have a claim against that debtor in the future or the trust

1   to be created under that bankruptcy plan, and as a result, as

2   time goes on, these Rule 2019 statements are amended and

3   modified to reflect both individuals who drop off that list

4   and individuals who are added to that list, but it's a

5   preservation pleading.  Those individuals, because they are

6   listed, the ones that do not take further action, are

7   entitled to a heightened level of protection, we contend, and

8   their information should not be out there because it wouldn't

9   have been filed in a public proceeding in the first place but

10  for the unusual nature of this kind of case.  So, in the

11  first instance, our argument is that because there are a

12  significant number of non-parties on that list, that

13  information should be protected.  The second is the purposes

14  of Rule 2019 themselves.  As the Court has said, Rule 2019

15  has a very specific purpose and that is to make the parties

16  in the case aware of who a law firm represents so that they

17  can deal with that law firm on that basis.  The request that

18  Garlock has made has nothing to do with the purposes of 2019.

19  It has nothing to do with the representation by a law firm of

20  certain claimants in the underlying cases, and as a result

21  the request should be viewed as different in kind than the

22  kind of request that is made for public access when there are

23  in fact public concerns, policy concerns at issue.  A related

24  point is the use that the Court makes of that information.

25  In the Second Circuit's decisions in the leading case of

1   <u>Amodeo</u> 71 F3d 1044, the Court stated that the weight to be

2   given the presumption of access has to be governed by the

3   role that the material issue plays in the proceeding itself

4   and in the <u>U.S. vs. Cushner</u> case out of the District of New

5   Jersey, 349 F2d 892, the Court discussed the continuum

6   between those documents that are crucial in the Court's

7   exercise of its duties and those documents that don't have a

8   material role in the case, and the District Court found that

9   the strength of the presumption as to those documents that

10  have less relevance to the Court's functioning should fall

11  toward the weaker end of the continuum until at some point

12  they're not judicial documents at all.  And with respect to

13  the 2019, it is precisely that type of document.  It has a

14  very limited role in the functioning of an asbestos

15  proceeding, and as a result, it should not be given the same

16  type of material weight that a document or a pleading that

17  has an effect on the outcome of a case would be provided.

18  The third reason, Your Honor, is that there is a very strong

19  countervailing presumption of privacy of personal interests

20  in the Third Circuit jurisprudence.  In the Court's decision

21  in <u>United States vs. Smith</u> at 776 F2d 1104, the Third Circuit

22  upheld the District Court's sealing of a bill of particulars

23  which listed the names of unindicted individuals who in the

24  opinion of the U.S. Attorney conceivably may have been co-

25  conspirators, but in light of the less exacting standard for

1   being named a co-conspirator on such a list, the Court

2   acknowledged that the public disclosure had the potential to

3   destroy the careers of innocent individuals and viewed

4   countervailing privacy and reputational interests as

5   sufficient to overcome the presumption of right to access.

6   Here, Garlock has volunteered, as the Court has recognized,

7   what use it intends to make of this information.  It intends

8   to take a statement by a law firm, which is made following

9   the language of Rule 2019 which is not ideal in this

10  circumstance and use it to try to challenge or portray as a

11  lie statements made by claimants in interrogatory answers and

12  other discovery and in so doing it intends to accuse those

13  claimants of fraud or lying or misrepresentations and the

14  reputational and privacy interests of those individuals

15  should overcome the presumption of right of access,

16  especially given the improper use that Garlock intends to

17  make of the information, and that also would be the standard

18  under Kaiser, and furthermore, the intended use is relevant

19  when it clearly suggests an improper motive and use.

20  Finally, Your Honor, the fourth point that I would make is

21  that there are alternatives.  As the Court recognized in

22  Pittsburgh Corning about a year ago when a creditor files a

23  ballot or now when a trust plan is made, when there is some

24  affirmative action by the creditor which reflects an

25  intention to act in the case, that information perhaps can be

1   used by Garlock to make the kinds of arguments that it makes

2   if it can find inconsistencies and positions, but that

3   information is on the public record.  It is an alternative

4   and Garlock is not deprived of its opportunity to look

5   through the information and assess whether or not it can make

6   such an argument based upon information that has not been

7   protected by the same kinds of protections as your 2019

8   orders.  For those four reasons, Your Honor, we believe that

9   the presumption of access is overcome under these specific

10  factual circumstances and that Garlock's motion should be

11  denied.  Thank you.

12          THE COURT: Mr. Lockwood.

13          MR. LOCKWOOD: Just a few brief points.  I think Mr.

14  Esserman and Ms. Ramsey have pretty much covered most of the

15  legal aspects of the case, Your Honor, and I don't want to

16  repeat that.  A couple points specifically.  Mr. Cassada

17  indicated that he didn't think the Committees that I

18  represent have standing to oppose this.  The Committees I

19  represent are in four open cases that he's made motions in.

20  They are statutory parties in interest in all of those cases

21  and although Mr. Esserman and Ms. Ramsey more than

22  competently represent the interests of the individual law

23  firms and their clients that they represent there are large

24  numbers of law firms and clients who they do not represent in

25  those cases, and the Committee is the official committee to

1    represent the interests of present asbestos claimants who are

2    precisely the people whose 2019 statements' access is being

3    sought with respect to.  So I submit there really isn't any

4    reasonable doubt that the Committee has standing to appear

5    and be heard and support the oppositions of Messrs. Esserman

6    and Ramsey.  As Your Honor noted to Mr. Cassada in a number

7    of occasions, virtually all of the arguments about why the

8    information that they seek here should be open to the public

9    because that information is routinely provided in other

10   contexts depend on two propositions.  One is an analogy to

11   the filing of a 2019 statement by a lawyer as to who his

12   clients are to the filing of a proof of claim or a master

13   ballot or a complaint in a civil lawsuit or in somewhat more

14   far-reaching analogies, the giving of political contributions

15   subject to the Federal Election Commission Rules, but that

16   premise really is false because in those instances the client

17   has in effect decided to waive what privacy the client might

18   otherwise be entitled to with respect to whatever the

19   information it's disclosed in a complaint as if you will

20   overridden by the client's need to obtain redress through the

21   judicial system.  The client is affirmatively trying to

22   invoke the rules of our legal system and in so doing has got

23   to disclose who the client is and in some instances where the

24   client lives, et cetera.  But the filing of a 2019 statement,

25   as Your Honor has noted and as my co-counsel have pointed out

1    here, is an entirely category of animal.  It's done for the

2    purpose of allowing the parties to an active bankruptcy case

3    to know when a lawyer gets up in front of the Court and says,

4    I represent clients here, who the clients are and it is not -

5    Mr. Cassada made a great deal out of the language in the rule

6    that talks about creditors, but what the lawyer is doing is

7    not making sort of a backdoor proof of claim to be a creditor

8    when he identifies his clients.  He's just trying to make

9    sure that everybody has full disclosure of all the people

10   that he represents who might file claims and I think it's

11   beyond dispute if one actually compared 2019 statements with

12   ballots that not all of the people who are identified in the

13   2019 statements ultimately proved to actually appear in the

14   case.  Indeed, as I think Your Honor is aware, it has been

15   the practice of many lawyers in many cases, both mass torts

16   and otherwise, to file requests to be put on the Rule 2002

17   notice list, and they do that simply because they have an

18   interest in knowing what's going on in the case because it

19   might affect their clients in some way or another, and the

20   way Rule 2019 is written, the mere fact of filing a request

21   for 2002 notice could be read as entering an appearance on

22   behalf of the clients that you're wanting to get notice for.

23   Well, that's a far cry from voting or filing a proof of claim

24   and yet when Your Honor, as Mr. Esserman pointed out earlier,

25   was grappling with the issue of how to make 2019, which on

1    its face talks about committees and ad hoc committees and it

2    doesn't really focus on lawyers.  I mean the only reason we

3    get in here is because a law firm is an, quote, "entity",

4    close quote, and therefore, under the literal reading of the

5    rule, if an entity represents more than one creditor it's

6    presumptively required to file a 2019 statement.  There was

7    an interesting case that we cite in our papers from the

8    District of Delaware that goes through the history of the

9    origin of Rule 2019 in which the Bankruptcy Court decided

10   that an ad hoc committee didn't even have to file a 2019

11   statement.  Presumably that ad hoc committee was represented

12   by a lawyer, and therefore, if being represented by a lawyer

13   who had more than one client, i.e., the members of the ad hoc

14   committee, was enough to require a filing of a 2019

15   statement, then that decision was presumptively wrong, and I

16   think Mr. Esserman is correct asking Your Honor to consider

17   Garlock's motion is in effect an effort to have a redo of the

18   original hearing because while it's true that Your Honor

19   said, You can make a motion and I'll consider it, if the rule

20   was that any member of the public had a right to see a 2019

21   statement, then Your Honor essentially is being said that all

22   the motion has to say is one word, "gimme", because otherwise

23   why would they have to file a motion.  Presumably you have to

24   file a motion to make some kind of a pitch, if you will, to

25   the Court as to why the relief that you're seeking by a

1    motion is appropriate and Garlock's essentially making the

2    argument that no motion should be necessary because there's

3    nothing in the 2019s that by any stretch of the imagination

4    could possibly be regarded as confidential.  And that leads

5    me to the second premise that Garlock has been operating on

6    here which is that all we're talking about is names and

7    addresses.  What Mr. Cassada accurately described at the

8    beginning of his argument was how the 2019 statements were

9    set up.  There's a statement, but all the information with

10   respect to the clients is on the exhibits and the exhibits

11   are spreadsheets and while it's true they contain the names

12   and addresses which is what Mr. Cassada's argument was

13   focusing on, the very same spreadsheets also contain disease

14   information and copies of the retention agreements, albeit in

15   exemplar form, but the fact of the matter is that in the

16   normal course of events, certainly nobody who has chosen not

17   to file a proof of claim or who's decided not to vote on the

18   case would be required simply because Garlock was inquisitive

19   to tell Garlock what disease they might be suffering from and

20   keeping in mind that Garlock, unlike some other movants that

21   you've had before yourself is not asking for 2019 statements

22   for an identifiable group of people that have filed claims

23   against Garlock.  They're not limiting it.  They're asking

24   for 2019 statements for every law firm and client that has

25   appeared in 12 bankruptcy cases which amount to probably

1    hundreds of thousands of people, and by no stretch of the

2    imagination, hundreds of thousands of people have ever filed

3    claims against Garlock.  So, to that extent they're going way

4    beyond anything that other people, such as in the Bondex case

5    have attempted to have a more focused approach to this, and

6    the retention agreements, I would urge, come under 107(b).

7    I mean, a lawyer's practice in the type of retention

8    agreement that he enters into with a client could even be,

9    under some circumstances, attorney/client privilege but in

10   any event -

11         THE COURT: You have a tough argument with that one

12   in the Third Circuit.

13         MR. LOCKWOOD: I understand that, Your Honor, but at

14   a minimum that information is not available in the tort

15   system when you file a complaint.  Your opponent doesn't get

16   to ask his adversary for their retention agreement, and the

17   law firms are all competitors to one another in competing for

18   clients and presumably the terms of their retention

19   agreements might or might not be used amongst themselves for

20   competitive reasons and once Garlock gets ahold of the

21   information, there's no restrictions on what Garlock can do

22   with it.  One rather suspects that it will wind up on

23   somebody's database that will be used in Garlock's bankruptcy

24   in some way or another.  So, there's been no effort to do

25   that, to eliminate that, so, what we wind up having to do, if

1    I'm right in this argument, is redact the exhibits that are

2    attached to the 2019 statements, to segregate the names and

3    addresses which Garlock urges, you know, are like the white

4    pages of the telephone directory, although even in the white

5    pages you don't have to actually agree to be listed, from the

6    other information which is not readily available to people in

7    the tort system who file claims.  It's not readily available

8    to people who file proofs of claims in a bankruptcy case.

9    It's not readily available even to people who vote in a

10   bankruptcy case.  The retention agreement thing is only for

11   the purpose of 2019 and it's only for the purpose of showing

12   your authority to act for that client in that bankruptcy

13   case, and so, I would urge the Court to consider in the

14   public access argument that you really - they're asking for a

15   unitary document that contains stuff that is confidential and

16   that it would be a gross imposition on the debtors and maybe

17   the Court, I'm not sure at this point who would go about

18   redacting the CDs that, as I understand it, are in the

19   Clerk's Office to differentiate between names and addresses,

20   which are sort of tossed off as non-private and the other

21   information which is private.  And, let me see, that may be

22   all I have, Your Honor.  Oh, the only other point I would

23   make is that, as Your Honor has said, they have access to the

24   ballots.  So if they're really interested in finding out

25   people who have voluntarily decided to assert - the client

1    has voluntarily decided, By golly, I really am a creditor

2    here as opposed to, Gee, I'm represented by this lawyer and

3    it's okay for him to say so.  That would be the place to look

4    and would give Garlock - I don't know, certainly a large

5    percentage of what it appears to be seeking and would have

6    certainly potentially somewhat more probative value, I guess,

7    because at least there somebody is saying that they have

8    enough of a claim that they think they're entitled to vote

9    even though they might not have enough of a claim that

10   ultimately they would file a proof of claim.  Thank you, Your

11   Honor.

12           THE COURT: Anyone else?  Mr. Cassada?

13           MR. RESTIVO (TELEPHONIC): Your Honor, it's James

14   Restivo in the Pittsburgh Corning case, 00-22876, and in the

15   North American Refractories case, 02-20198.  I just want to

16   make four quick points.  As to the debtor, Pittsburgh

17   Corning, this has already been litigated and adjudicated.  It

18   is contained in Your Honor's order in that case at Docket No.

19   7579.  If Garlock wants specific 2019 statements as to

20   particular clients, there is a method for them to ask the

21   Court for specific statements and why they need it and so in

22   Pittsburgh Corning this is already *res judicata*, *stari*

23   *decisis*, collateral estoppel, and law of the case.

24           THE COURT: Did you miss anything, Mr. Restivo?

25           MR. RESTIVO (TELEPHONIC): I don't think so, Your

1    Honor.  Secondly, Your Honor, there's a suggestion in

2    Garlock's brief at page 10 that whatever happened in

3    Pittsburgh Corning needs to be tempered by the fact that Your

4    Honor limited Garlock to a single witness in that case, and

5    Your Honor, the record should be clear that that is not

6    accurate.  The Court will recall, Garlock did not comply with

7    the pretrial rules, did not list witnesses.  We took the

8    position that as a result of that, Garlock could not put any

9    witnesses on.  Garlock represented to Your Honor they only

10   had one witness, John Turlick (phonetical) and that witness

11   would limit his testimony to his declaration, and Your Honor

12   then said, Okay, you can put him on.  Your Honor did not

13   limit them, that was their proffer.  Third, Your Honor, in

14   both cases, there is a declaration by Paul Grant dated

15   September 23, 2010, three and a half months before Garlock's

16   motion in which he says at different times the theory of so-

17   called friable products and so-called thermal insulation and

18   friable products being the key to the Garlock need for this

19   information.  And as to NARCO, Your Honor, we represent that

20   you cannot pulverize by hand pressure into a powder a

21   refractory brick and we further represent that unibestos in

22   the Pittsburgh Corning case is similarly non-friable and so

23   if there's any chance that the Court thinks there is some

24   merit to Garlock's motion based upon an affidavit that is

25   rife with errors, we want the ability to depose Mr. Grant

1    before there is a ruling.  And fourth, Your Honor,

2    telephonically it was a little bit difficult to fully

3    understand the exhibits that we had never seen before.  When

4    the parties talk about timing, Garlock should be required to

5    circulate all of those exhibits in a package to all of the

6    objectors in all of the cases.  Thank you, Your Honor

7            THE COURT: Anyone else?  Mr. Cassada.

8            MR. CASSADA: Thank you, Your Honor.  Your Honor,

9    I'd like to begin by revisiting the first issue we dealt with

10   and that was the question of whether Garlock had moved to

11   intervene and reopen the cases, and I want to point out for

12   Your Honor that those motion are indeed included in our

13   motion and then there was a short form of notice that went

14   out to all of the parties required by the Court.  I think

15   that notice cost some $13,000, and that short notice

16   highlighted the relief that was being sought, which included

17   not only access to the 2019 exhibits but also intervention in

18   the cases as well as reopening of the closed cases.

19           THE COURT: Mr. Garlock - I'm sorry, Mr. Cassada -

20           MR. CASSADA: I get that a lot.

21           THE COURT:  I apologize.  It hasn't been done

22   properly.  You need to file a motion to reopen the cases.

23   You have to pay the filing fee, and you have to move to

24   intervene in the closed cases, and I am not asserting

25   jurisdiction over closed cases on a motion when the cases are

1    closed, and I have not retained jurisdiction for that

2    purpose.  As to the closed cases, I have no jurisdiction.

3    I'm not either granting or denying the motion, I'm simply not

4    adjudicating it.  I can't.  If you want access in those cases

5    then you've got to do it procedurally correctly.

6         MR. CASSADA: Okay.

7         THE COURT:  As to the open cases, go ahead, you can

8    proceed.

9         MR. CASSADA: Okay, thank you, Your Honor.  Your

10   Honor, just to briefly address arguments that Mr. Esserman

11   raised only briefly.  We've shown in our motion authority

12   showing that we clearly do have standing to appear and seek

13   public access.  Also to address the argument that we're

14   essentially seeking a redo of the Court's orders where the

15   Court required a motion before access could be granted, we

16   refer the Court to the District Court opinion and the Third

17   Circuit affirmance thereof where those Courts said that all

18   you had done was set forth a procedure and directed the

19   insurers if they wanted to challenge whether they were

20   entitled to access to file a motion for access and to see if

21   the parties seeking closure could demonstrate that there was

22   a basis for overcoming the first amendment and common law

23   right of access.

24        THE COURT: No, that's not what those opinions say.

25   They do say that I set out a process and indeed I did, and I

1    believe Mr. Esserman and Mr. Restivo set out what that

2    process was, and that process, as I understand it, was

3    affirmed.

4            MR. CASSADA: Yes, but the Court also said, Your

5    Honor - I've got a quote here, if the Court will bear with

6    me.  The District Court explained, "The parties rather than

7    appealing should have filed a motion and permitted the

8    Bankruptcy Court to develop a record with respect to whether

9    § 107 of the Bankruptcy Code and the first amendment and

10   common law rights of public access mandate a right of public

11   access or whether countervailing concerns justify the

12   continued protection of the information."

13           THE COURT: Yes, sir.

14           MR. CASSADA: So the District Court was recognizing

15   that that record had never been made.

16           THE COURT: That's right.

17           MR. CASSADA: Those issues were never before the

18   Court.

19           THE COURT: That's right.

20           MR. CASSADA: Now, those issues are before the

21   Court.

22           THE COURT: They are.

23           MR. CASSADA: And it was incumbent upon the

24   objectors to show that there's a basis for overcoming the

25   right of public access, and, Your Honor, we don't believe

1    that any objector has come even close to doing that.  Mr.

2    Esserman didn't really offer a reason but instead went into

3    the history of the Court's proceedings before the Court

4    entered an order saying that parties who wanted access could

5    file a motion to seek access.  Ms. Ramsey offered four

6    reasons, none of those reasons apply in this situation and

7    none of them found any support in the case law.  First she

8    said that some of the individuals who were identified were

9    not parties to the case, never took any action in the case.

10   Their rights were never adjudicated, and therefore, they've

11   got this right to privacy.  Well, Your Honor, we don't know

12   that, and I don't think the Court knows that.  I'm not even

13   sure whether Ms. Ramsey knows that or whether they're just

14   asserting that.  No one's compared, as far as we know, the

15   2019 statements to the ballots to see if that's even true in

16   the first place, but even if it were, it still makes no

17   difference, Your Honor.  These are judicial records and

18   there's a right of public access unless it could be shown by

19   the person who's seeking to close it that that person will

20   suffer clearly defined and serious injury, and no one has

21   offered that today.  There's also the argument that the

22   request for access has nothing to do with the purpose of the

23   Rule 2019 statement.  There's no case law or other support

24   for that.  The purpose has no relevance at all unless Your

25   Honor believes that there is an improper purpose, and we've

1    heard a lot here, a lot of statements to the effect that

2    Garlock's interest and looking at these statements to see if

3    they impeach are inconsistent with statements made elsewhere

4    is somehow an improper purpose, but clearly it's not.  In

5    fact that's one of the purposes for having transparency and

6    making sure that court records are open to the public is so

7    the public can look at them and possibly see if parties are

8    taking -

9         THE COURT: Mr. Cassada, I think we're talking at

10    angles to each other.  The reason I think that this is an

11    improper purpose, to the extent that it is an improper

12    purpose, I'm not trying to make a finding, I'm trying to

13    articulate why I am concerned by Garlock's request.

14         MR. CASSADA: Okay.

15         THE COURT: Okay.  These particular documents can't

16    stand for the proposition of impeaching a creditor who has

17    filed a complaint in another jurisdiction.  These are not

18    documents filed under oath by a creditor.  They're documents

19    filed by a lawyer who says, in essence, I represent A.

20    That's what the purpose is.  Now, did they contain other

21    information?  Yes, but that's the purpose and that's why

22    they're filed and that's how they're filed.  They aren't

23    filed by a creditor who says, My lawyer is A or I have a

24    claim against whoever, Garlock, SPHC, anyone.  It's not a

25    creditor's document that's being filed.  It's filed by a law

1   firm.  The only impeachment purpose they could possibly have

2   is to say that on - at the time frame when the lawyer filed

3   the 2019 statement, the lawyer didn't in fact represent that

4   creditor and never corrected that fact.  That's it.  That's

5   what the impeachment would be, and that's not what Garlock's

6   saying you want to use it for.  So, I don't see the relevance

7   in that sense, and yes, does that weigh in favor of keeping

8   privacy rights private, and yes, I do think medical

9   information to the extent it's not volunteered by a creditor

10   is private.  I do hold that view, yes.  I don't see why it's

11   available on the public record unless it's voluntarily

12   produced in that fashion.  This information was not

13   voluntarily produced by the creditors in the case.  So, does

14   that weigh, does the, in quotes, and again, I'm not making

15   findings, I'm trying to use a word that's in the cases, the,

16   in quotes, "improper use" by Garlock because it's not

17   relevant to the use that Garlock professes it wants to make;

18   does that weigh in favor of keeping the information private?

19   Yes.  The other thing that weighs in favor of that is the

20   fact that there are publicly available documents that are

21   filed by the creditor or by a law firm on behalf of the

22   creditor that do show that a claim exists in a particular

23   case.  If that's what Garlock is looking at by way of

24   impeachment, that may be relevant but those are the ballots.

25   That's not the 2019 statements.

1          MR. CASSADA: Yes, Your Honor, Garlock, obviously,

2    is not going to and can't use these documents to impeach a

3    statement that they don't impeach, but I would encourage the

4    Court before the Court reaches any conclusions about what the

5    documents say and what they can be used for to the extent

6    that that's somehow relevant to the decision here to actually

7    read the 2019 statements and see what they say because they

8    say something entirely different from the premise of the

9    Court's statement about what they could be used for, and I

10   would encourage the Court to read Rule 2019 and see that that

11   requires law firms to identify their clients who are

12   creditors when there's more than one.  Now it's possible that

13   these creditors have disputed claims, but normally when law

14   firms appear in a case and identify their creditors, they're

15   not the ones disputing the claims, and here we're in the

16   unusual circumstance where they're saying that these might

17   not be creditors after all, but at this point -

18          THE COURT: And that was made clear when the law

19   firms agreed to file the 2019 statements.  In some instances

20   they represent potentially future claimants, people who know

21   they've been exposed but have no injury, demand holders and

22   yet those people may never have a demand because their injury

23   may never manifest and so, the statements don't necessarily

24   show that there is a, quote, "present creditor" involved.

25   That's the difficulty with 2019 in a mass tort context.  So

1    they don't always show that there is a creditor.  What shows

2    that there is a creditor in a case is the ballot that was

3    voted.

4              MR. CASSADA: Your Honor, the 2019 statements, they

5    show what they state.

6              THE COURT: That's right, they do.

7              MR. CASSADA: So they state what they state and I

8    would encourage the Court before it draws any conclusion that

9    it thinks is important to read the 2019 statements and see

10   what they say.

11             THE COURT: I will look at some of them.  I'm not

12   going back to look at every 2019 statement, I can assure you.

13             MR. CASSADA: Well, we've provided Your Honor with a

14   very helpful exhibit that actually quotes language out of the

15   2019 statements.

16             THE COURT: I'll look at the ones that were before

17   me.

18             MR. CASSADA: Okay.  Now with respect to this idea

19   that these folks didn't volunteer to appear in these cases.

20   Recall, Your Honor, there's an exemplar instrument whereby

21   the law firms had been authorized by their clients who were

22   identified to appear and to vindicate the rights of those

23   clients in the case, and those law firms did that.  I mean,

24   they're doing it here today.

25             THE COURT: Actually, most of the exemplars do not

1   say you've got the authority to - I'll just pick a case to

2   represent the . . . (indiscernible).  They say you've got the

3   authority to represent me and it's the lawyer who decides

4   where to file that exemplar, usually.

5         MR. CASSADA: Well, Your Honor has seen the

6   exemplars.

7         THE COURT: I have.

8         MR. CASSADA:  I don't have the benefit of having

9   seen them, so I can't dispute what they might say.

10        THE COURT: Well, I don't know what all of them say,

11  Mr. Cassada.  I'm not attempting to say that I know what all

12  of them say, but I can say that that's a fair recitation of

13  many of them.

14        MR. CASSADA: Okay.  Mr. Lockwood brought up the

15  idea of the retention agreement being protect-able under

16  § 107(b) as commercial information or trade secret.  I don't

17  know why the 20-plus law firms who appeared and objected

18  didn't raise that if that were the case.  It seems like they

19  would be in a better position than Mr. Lockwood who

20  represents a committee to know if that argument existed and

21  actually does exist, but they didn't bring it.  On the other

22  hand, that's the one exhibit that we don't have a particular

23  interest in.  We'd be happy for the Court to order access to

24  the exhibits that identify the names and all of the

25  information of the persons who are creditors in the case as

1   well as to produce the exemplars stating that the lawyers are

2   authorized to appear for them whether they stay in this case

3   or not, that's yet to be seen by us anyway, but that's

4   information that we're interested in.  Now, again, there's

5   also this assumption of -

6            THE COURT: What public interest is there to be

7   generated by the fact that firm A represents client B; what's

8   the public interest in that fact?  What public right is

9   Garlock going to vindicate by knowing that firm A represents

10  person B?

11           MR. CASSADA: The public interest, Your Honor, is

12  the interest of access.  So let's be clear about that.  It's

13  not what Garlock's purpose is, but, yes, the identity of

14  claimants, and here we've got 12 different bankruptcy cases

15  and so this information identifies, if I understand what I'm

16  hearing from the objectors here, every person who claims to

17  have an asbestos claim during a certain period of time, and

18  certainly there's a big and significant public interest in

19  knowing who these people are who are out there asserting

20  claims in the bankruptcy cases.  But in addition to that,

21  Your Honor, we have an interest in seeing who these people

22  are, who the plaintiffs' firms say are creditors in these

23  bankruptcy cases, who most of or many of the plaintiffs'

24  firms say were exposed to and injured by the products of

25  these debtors.  Garlock, of course, has an interest in that

1  because most, if not many of these claimants, were also

2  asserting claims against Garlock saying that Garlock caused

3  their injuries.  So, certainly there's a, you know, Garlock

4  has a specific interest and there's a huge public interest in

5  knowing who the persons are who are asserting claims in

6  bankruptcy cases.

7       THE COURT: Then the ballots are the things that

8  tell you that, not the 2019 statements.  If that's the public

9  interest, in knowing who the creditors of the case are who

10 say they're creditors, that's what the ballots provide, and

11 they're a public record.

12      MR. CASSADA: Yes, and ballots also have the same

13 information, as I understand it, that's been claimed to be

14 private here and that's the -

15      THE COURT: Well, then as to those creditors who

16 have voluntarily filed a ballot, they put that information on

17 the public record and you can get it.

18      MR. CASSADA: Well, the claimants have also

19 voluntarily appeared in the cases through their lawyers and

20 have been authorized by their lawyer to identify them on 2019

21 statements.  But that doesn't matter, Your Honor, these are

22 judicial records.  They're open to the public and there is no

23 privacy right and in any tort claimant and having to disclose

24 the basis for their tort claim.

25      THE COURT: They aren't necessarily tort claimants,

1    that's the problem - that's a problem.

2          MR. CASSADA: Well, the statements say that they're

3    tort claimants.

4          THE COURT: The statements say that the law firm

5    represents this particular person, yes, that's what they say.

6          MR. CASSADA: And that this person was - in many

7    cases that this person has been exposed to and injured by the

8    asbestos products manufactured, marketed, distributed, sold,

9    or produced by - in this case, we cite here Pittsburgh

10   Corning Corporation.  Many of the statements say that or that

11   these folks are creditors of these debtors.  There's no

12   equivocation in that at all, Your Honor.  These statements

13   say what they say, and we can only guess, and we're told that

14   these people didn't or maybe didn't vote or maybe some of

15   them voted and some of them filed claims later against the

16   trust, we can only guess on that.  The difference between the

17   2019 statements and the ballots is one of timing, when did

18   the law firms first have a basis for believing that these

19   persons were creditors in this case.  That's what the 2019

20   statement show that the ballots don't show.  Your Honor, I

21   should have stated at the beginning that Garlock would have

22   no objection if the Court provided access to Garlock with the

23   agreement that Garlock wouldn't provide access to other

24   purposes or use the information for any purpose not permitted

25   in Garlock's bankruptcy case, where Garlock itself is

1  litigating some of these issues.  If Your Honor is going to

2  schedule a hearing in the future on that, we will be filing a

3  motion to reopen all the cases or perfecting the motion that

4  we already filed by paying the filing fee.

5       THE COURT: It's not a motion you filed, Mr.

6  Cassada, I can't be more clear.  If you want to file a motion

7  reopening a case, please, file a motion in the specific case

8  to reopen, do what you need to do and if you're also going to

9  file a motion to intervene then you need to do that as well

10  because I don't - I need these in a procedurally correct

11  posture otherwise I don't have jurisdiction over this issue.

12  Those cases are closed.  There are no cases anymore, and Rule

13  2019 itself says that the purpose in the statement is for use

14  in the case.  There isn't a case when it's closed.

15       MR. CASSADA: I see.  Well, just so the Court

16  understand and I understand, we filed a separate motion in

17  each case.

18       THE COURT: Yes, you did.

19       MR. CASSADA: And in that motion we asked that the

20  Court in a closed case, reopen the case and we moved to

21  intervene.  So that there's a motion filed - now, Your Honor

22  said that we hadn't paid the fee.

23       THE COURT: I'm saying it's not procedurally correct

24  and it's going to be dismissed without prejudice because

25  they're not procedurally correct in the closed cases.  I am

1   not going to adjudicate anything except for the fact that the

2   cases are closed, the motions haven't been filed in open

3   cases.  The Clerk should have stricken them because they were

4   closed, and I'm going to have the Clerk dismiss them without

5   prejudice because the cases are closed and haven't been

6   reopened, and they have to be reopened before you can file

7   anything in those cases.

8         MR. CASSADA: So what Your Honor is saying is that

9   the motion to open the case should have been filed separately

10   and not requested in any other way.

11         THE COURT: It has to be otherwise the Clerk doesn't

12   know that you're asking to reopen the case to charge the fee.

13   There's nothing on this docket except a phrase in your motion

14   that indicates that you want to the case reopened, Mr.

15   Cassada.  There's no docketed entry that says this is a

16   motion to reopen the case.  There's nothing called a motion

17   to intervene, if that's what you're intending to do.  There's

18   only this motion that shouldn't have been accepted in those

19   cases because they're closed.  It's procedurally incorrect.

20   I have no jurisdiction.  I don't know how else to say it.

21         MR. CASSADA: Okay, well, no, I appreciate that

22   clarification.  We did call the Clerk's Office to get

23   guidance on how to proceed, Your Honor.  I don't want to

24   suggest that we were misled or anything but we were very

25   careful to make sure that we were filing this in a way that

1    the Court would have us file it and to make sure that we gave

2    notice to the person.

3         THE COURT: Well, I can only apologize for whoever

4    gave you the incorrect information.  You were given incorrect

5    information.  I'm going to have them stricken because they're

6    not supposed to be giving legal advice, and to the extent it

7    was legal advice, it was improper in the first place.  To the

8    extent that it was procedural, it was just wrong.  So do it

9    correctly.

10        MR. CASSADA: I'm not trying to cast blame on anyone

11   in the Clerk's Office, Your Honor, I just wanted the Court to

12   know we didn't do this cavalierly.

13        THE COURT: All right.  Okay, what I need is to know

14   how much time you folks want to look at these exhibits and do

15   you intend to produce anything on your own, and Mr. Restivo,

16   I know you're not here.  I'd like to know your view about

17   that too.

18        MR. RESTIVO (TELEPHONIC): It appeared there were 12

19   or 15 exhibits -

20        THE COURT: There are three binders, Mr. Restivo.

21   One three inch and two smaller binders, like two two-inch

22   binders.

23        MR. RESTIVO (TELEPHONIC): Assuming Garlock would

24   air express that to us, it seems to me on the exhibits,

25   within a week, you know, we could read them and determine

1    whether or not they're relevant or hearsay or whatever and so

2    I guess we would ask for a week, Your Honor.

3            THE COURT: All right, then Garlock is to make sure

4    that, let's say within the next week, that the exhibits can

5    be produced to everyone and everyone who's filed objections

6    or requests in this case, and then, folks, is a week after

7    you get them - let me just say two weeks from today to make

8    it clear so we have dates.  Is the time sufficient time?

9            MR. RESTIVO (TELEPHONIC): It's sufficient for

10   Pittsburgh Corning, Your Honor, and for NARCO.

11           THE COURT: All right.  Will the folks here in

12   court, I guess, have the exhibits today?

13           MR. ESSERMAN: Well, we just got them today.

14           THE COURT: Yes, so is two weeks from today

15   sufficient?

16           MR. ESSERMAN: We have one set for three of us.

17           THE COURT: Oh, well, no.  You each need sets.

18           MR. WERKHEISER: Your Honor, we're happy to provide

19   them.  We would ask that we be able to provide them by disc.

20   They are rather large.

21           MR. ESSERMAN: That's fine.

22           THE COURT: Is that agreeable?

23           MR. ESSERMAN: Yes.

24           THE COURT: Mr. Restivo, is a disc okay?

25           MR. RESTIVO (TELEPHONIC): Yes, Your Honor.

1          THE COURT: All right, that's fine.

2          MR. WORF: Your Honor, I just wanted to clarify one

3    point about the manner of service.  I was the one who oversaw

4    the service and I wanted to be exactly clear what we did.  We

5    served all the law firms that we can identify as law firms

6    with the entire motion as filed with exhibits.  Then to the

7    other parties on the 2002 list, the Court required us to

8    provide notice to, we provided a short form of notice that

9    set out the relief Garlock was seeking, including -

10          THE COURT: It's not a service issue as far as I

11    know unless you're talking about the exhibits.

12          MR. WORF: Right, and I just want to make clear that

13    that short notice also contained the fact that we were

14    seeking to intervene and reopen the cases.

15          THE COURT: Mr. Worf, I understand that.  I can't

16    help that fact that you put that in a notice.  It's not done

17    correctly.  I don't have jurisdiction.  The cases aren't

18    open.  The motion should have been stricken.  I've said this

19    at least 15 times.  I don't know what else to tell you.  I'm

20    going to dismiss the motions without prejudice because

21    they're filed in closed cases and there is no case.  There is

22    nothing to be adjudicated in those cases.  There is no case.

23    If you want a case, you have to reopen the case.

24          MR. WORF: Well, I would refer the Court to the

25    cases arising under 1334 that told them where the - there's

1   1334 jurisdiction.  The Court has jurisdiction and -

2           THE COURT: Mr. Worf, I've stated it the way I

3   understand it, that's what I'm going to do.  If you don't

4   like it, appeal it, that's all I can tell you.  The Third

5   Circuit's very clear about jurisdiction in the Bankruptcy

6   Courts in closed cases, and I don't even see an nexus between

7   your request for the 2019 statements in closed cases and what

8   the purpose is.  So, I can't determine on my own that there

9   is that nexus.  If you want that determination, do it right,

10  that's all I can tell you.  I'm not going to adjudicate them

11  in the closed cases.  I will continue these issues, as we

12  discussed, for the open cases.  If you move to reopen and

13  move to intervene, then, you know, I'll deal with what I have

14  to in the open cases too, but right now, they're closed.

15          MR. WORF: Thank you, Your Honor.

16          THE COURT: And there are rules that talk about

17  motions to reopen and bankruptcy rules and motions to

18  intervene.  You may want to read them.

19          MR. WERKHEISER: Your Honor, for the record again,

20  it's Gregory Werkheiser.  In light of Your Honor's ruling,

21  we're just trying to think through the logistics of this to

22  place the least burden possible on the Court and expedite

23  resolving these issues, so our thought was that we would file

24  formal motions to intervene and reopen, pay the filing fee on

25  the motions to reopen electronically pursuant to the CBCF, by

1   the end of the week, and then would propose to have - and

2   Your Honor, just so we're clear, you want us to re-file the

3   actual motions requesting access to the 2019 information?

4           THE COURT: In those -

5           MR. WERKHEISER: In those cases, yes, Your Honor.

6           THE COURT: You need to file all the documents

7   together.  The parties already, as I understand it, have the

8   notice, and I don't think there are going to be any issues if

9   in fact the cases are reopened, but somebody may be objecting

10  to reopening the cases.  The reorganized debtors may have

11  significant issues about reopening cases when they then have

12  to start paying U.S. Trustee fees on all their distributions

13  again.  There are reasons why cases are closed.

14          MR. WERKHEISER: I understood, Your Honor, and I

15  know in other cases the Courts have been willing to enter

16  orders that absolve the debtor from the requirement, paying

17  no trustee fees.

18          THE COURT: Talk to the U.S. Trustee.  If I can do

19  it, I'm willing to, but don't forget, I was the one who wrote

20  the Griffin at the Stone Mansion case where the Third Circuit

21  said you've got to pay those fees even though they were in

22  the 11th hour admonition by Congress and even though it was in

23  a case in which the debtor was already making plan

24  confirmation payments and had dedicated all its assets to the

25  case.  So, give me some authority.

1          MR. WERKHEISER: Yes, Your Honor.  Your Honor, what

2    we propose then is, I think we could be in a position to file

3    those motions and re-file the motion for our 2019 relief by

4    the end of this week.

5          THE COURT: All right.

6          MR. WERKHEISER: And then we propose to have all of

7    that heard together with any objections to the exhibits a few

8    weeks from now.

9          THE COURT: That's fine.

10         MR. WERKHEISER: Thank you, Your Honor.

11         THE COURT: All right.  I'm still back on how much

12   time.  Let's assume that you get the exhibits within a week.

13   Is a week sufficient time to look at them?

14         MR. ESSERMAN: Yes, Your Honor.

15         THE COURT: All right.  So - I'm sorry.  Does

16   someone have a calendar.  What's a date that's two weeks from

17   today?

18         UNIDENTIFIED SPEAKER: 28th.

19         THE COURT: 28th?  Oh, Happy Valentine's Day,

20   everyone.  Okay.  So the motions to reopen, the motion to

21   intervene, and the motion for the 2019 access will be filed

22   by the 19th?  Does that make the next omnibus agenda; whoever

23   knows the dates?  I'm sorry?  It is number 35, okay.  All

24   right -

25         MR. WERKHEISER: Your Honor, I think you said the

1    19th, the 18th is actually Friday.

2            THE COURT: 18th, okay, thank you.

3            MR. WERKHEISER: Thank you.

4            THE COURT: Is that sufficient time?

5            MR. WERKHEISER: I think we can do that, yes, Your

6    Honor.

7            THE COURT: All right.  Then all of the exhibits on

8    discs is fine, are also to be submitted to the parties,

9    whoever they may be, the objecting parties by February 18,

10   and the parties have until, I guess I need two weeks from

11   that Friday, not from today, so, 25 - that's a date in March.

12   March 4th to object to exhibits.  The motions to reopen, the

13   motions to intervene and so forth will just go on the normal

14   omnibus calendar for objections.  Folks who are looking at

15   the exhibits, are you going to be submitting your own

16   exhibits.  If so, how much time do you need for that?

17           MR. ESSERMAN: Either the 11th or the 18th of March,

18   Your Honor, would be fine.

19           THE COURT: When's the next hearing?  March 28th?  If

20   you can do it by the 11th, that would give -

21           MR. ESSERMAN: That's fine.

22           THE COURT: All right.  And then Garlock can have

23   any objection that it has to those exhibits by March 18th?

24   Okay, and this hearing on the 2019s is continued to March

25   28th.  I guess we'll start at - there are a couple of cases

1   already scheduled at 8:30.  Why don't we start at 9 o'clock.

2   We may have to juggle this schedule.  All right, so we'll

3   start this hearing at 9 so that hopefully I can take care of

4   any issues that will take less time at 8:30.  All right,

5   anything else on the 2019 issues?

6         MR. WERKHEISER: Your Honor, I think that concludes

7   everything for today.  So, we will see Your Honor again on

8   March 28th at 9 o'clock -

9         THE COURT: Okay.

10        MR. WERKHEISER: - with respect to all of that.

11  Your Honor, may we be excused from the further proceedings

12  today?

13        THE COURT: Yes.  Anyone who's here only for the

14  2019 issues is excused.  Thank you.

15        MR. WERKHEISER: Thank you, Your Honor.

16        MR. ESSERMAN: Thank you, Your Honor.

17        THE COURT: We'll take a 10-minute recess so that

18  parties can juggle.  I'm going to take the Grace case next.

19        (The remainder of this page is intentionally left

20  blank.)

21

22

23

24

25

1    I think that will be the least time-consuming issue.

2              (Whereupon at 10:50 a.m., the hearing in this

3    matter was concluded for this date.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18              I, Elaine M. Ryan, approved transcriber for the

19   United States Courts, certify that the foregoing is a correct

20   transcript from the electronic sound recording of the

21   proceedings in the above-entitled matter.

22

23   /s/ Elaine M. Ryan_____February 16, 2011
     Elaine M. Ryan
     2801 Faulkland Road
     Wilmington, DE 19808
     (302) 683-0221