# EXHIBIT H

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 00-22876-JKF |
| PITTSBURGH CORNING CORPORATION | Chapter 11 |
| Debtor | Document No. 7187 |
| GARLOCK SEALING TECHNOLOGIES, LLC, | |
| Movant | Hearing Date: 1/13/2010 at 9:00 a.m. Response Date: 12/29/2009 |
| vs. | |
| PITTSBURGH CORNING CORPORATION, THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST TO ORDER DATED OCTOBER 22, 2004 | |
| Respondents | |

**OBJECTION OF BARON & BUDD, THE LAW OFFICES OF PETER G. ANGELOS, REAUD MORGAN & QUINN, THORNTON & NAUMES, WEITZ & LUXENBERG AND WILLIAMS KHERKHER TO THE EXPEDITED MOTION OF GARLOCK SEALING TECHNOLOGIES, LLC FOR ORDER AUTHORIZING ACCESS TO CERTAIN 2019 STATEMENTS FILED IN CASE**

Baron & Budd, P.C.,[1] The Law Offices of Peter G. Angelos, P.C., Reaud

Morgan & Quinn, Inc., Thornton & Naumes, LLP, Weitz & Luxenberg, P.C. and

Williams Kherkher L.L.P.[2] (the "Law Firms") file this Objection to the Expedited

Motion of Garlock Sealing Technologies LLC ("Garlock") for Order Authorizing

---

[1]    On its own behalf and on behalf of Silber Pearlman and LeBlanc & Waddell, law firms named in the Access Motion (as defined below) to which Baron & Budd is successor-in-interest.

[2]    Formerly Williams Bailey, the law firm named in the Access Motion.

1

Access to Certain 2019 Statements Filed in Case (Docket No. 7187; the "Access Motion") and respectfully state as follows:

## I. INTRODUCTION

Garlock seeks access to sensitive, private information compiled under the auspices of this Court pursuant to Rule 2019 and held in strict confidence by order of this Court. The Court standardized application of Rule 2019 in the asbestos-related bankruptcies before it some 5 years ago. Its "global" Rule 2019 Order entered in these cases recognizes the delicate balance between Rule 2019's limited purpose and protection of privacy rights of asbestos victims. The "global" Rule 2019 Order has been upheld in several appeals, and has been written of approvingly as a fair exercise of this Court's discretion in implementing Rule 2019.

Garlock files the Access Motion not in furtherance of Rule 2019's discrete purpose—vetting counsel's agency to represent multiple creditors—but to buttress its eleventh-hour objection to the Plan. As the relevant case management deadlines have passed, the Court appropriately barred Garlock from taking discovery on its Plan objection. Garlock claims it did not learn of Pittsburgh Corning's reorganization case until recently and "scrambled" to file an objection to the plan. But Garlock concedes it was a co-defendant with the Debtor in thousands of lawsuits pre-petition. As such, Garlock would have received notice of Debtor's bankruptcy at its inception, but was indifferent to its duty to inform itself on a timely basis of matters herein that might impact its interests. Garlock exhibited blind indifference to these proceedings for the better part of a decade. It should not

2

be rewarded with access to confidential documents it should have sought—had it legitimate cause, which it did not—over five years ago.

Advancement of Garlock's plan objections—tenuous, barely articulated allegations that Garlock's interests as a potential indirect asbestos claimant are impacted by the Plan's proposed treatment of direct personal injury claimants—is not consistent with Rule 2019's purpose. Rule 2019 addresses one specific concern: does an entity appearing in court and claiming to represent multiple creditors actually have the authority to do so. The rule is crafted to vet the propriety of multiple creditor representation while minimally impacting the rights of aggrieved personal injury claimants to maintain the privacy of their medical and other sensitive information. Rule 2019 disclosures in these cases were tendered confidentially, and the Court has yet to disseminate such information to a wider audience; a sufficiently compelling rationale for doing so has yet to be asserted.

Despite Garlock's insistence that it is entitled to know the identities and medical details of asbestos claimants, the Court's longstanding and measured determination of the proper balance between Rule 2019's purpose and claimants' privacy rights was and remains entirely correct. Garlock's self-serving, inappropriate, and tardy attempt to piggyback upon the Court's supervision of multiple creditor representation in furtherance of its parochial interests unrelated to Rule 2019 should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2004, the Court entered its Revised Order Requiring Filing of

Statements Pursuant to Rule 2019 (Docket No. 3667, the "Rule 2019 Order") in all

then pending asbestos-related bankruptcies under its supervision. The Rule 2019

Order created an ongoing requirement for entities representing multiple claimants

to file and keep updated a Rule 2019 Statement with the Court, but specifically

ordered that "exhibits required to be filed ... shall **not** be electronically filed but

shall be submitted to the Clerk on compact disk." Rule 2019 Order at 2 (emphasis

in original). The required exhibits (the "Confidential Exhibits") consisted of two

items: a "blank, but unredacted, exemplar or actual copy, of each form of agreement

or instrument, if any, whereby such entity is empowered to act on behalf of

creditors" and an Excel spreadsheet containing specified data, which included

sensitive personal identification and medical information (for example, the personal

address and, for asbestos claimants, "the type of disease giving rise to the claim").

*Id.* at 2-3. The Confidential Exhibits were to be made available to other parties only

upon order of this Court after the requesting party made a showing of cause that

outweighed the privacy rights of the claimants. The only entities to be provided

access to the Confidential Exhibits at the outset were the Debtor and the U.S.

Trustee who "shall keep such exhibits confidential and shall not release the exhibits

to any party without further Order of Court." *Id.* at 3. The Rule 2019 Order has

4

been upheld numerous times on appeal,[3] and some five years after its entry, no one until now has requested access to the Confidential Exhibits in this case.

On November 6, 2009, more than 9 years after the Debtor filed bankruptcy, Garlock appeared in this case for the first time and filed a cursory objection to confirmation, having missed prior deadlines for preliminary objections and discovery. Despite having sat alongside Pittsburgh Corning at numerous counsel tables in the tort system prior to Debtor's bankruptcy filing, Garlock ignored this case for almost a full decade.[4]

On November 23, 2009, Garlock filed the Access Motion, seeking an order requiring the Debtor to provide copies of all 2019 Statements filed by 32 law firms representing personal injury claimants in this bankruptcy case and the Confidential Exhibits. The Access Motion made clear that Garlock sought the Confidential Exhibits to support its fledgling Plan objections.[5] On November 24, 2009, Garlock filed an affidavit of service in respect of the Access Motion certifying that it had

---

[3]  Various appeals were taken from the Rule 2019 Orders entered in the various cases. In this case, the District Court affirmed the Rule 2019 Order. *In re Pittsburgh Corning Corp.*, No. 04-1814, 2005 WL 6128987 (W.D. Pa. Sep. 27, 2005). The Third Circuit affirmed. *In re Pittsburgh Corning Corp.*, Case No. 05-4781, 260 Fed. Appx. 463, 2008 WL 101747 (3d Cir., Jan. 10, 2008). An appeal was also perfected in *Owens Corning* (Delaware Bankruptcy Case No. 00-03837) at District Court Case No. 04-01467 but, pursuant to the parties' Agreement of Dismissal, was dismissed as moot by Order of Dismissal entered March 27, 2007. Appeals were perfected in *Flintkote* and *Kaiser Aluminum*, consolidated before the District Court on appeal, and affirmed. *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 561 (D. Del. 2005)

[4]  "Prior to the Chapter 11 Case, asbestos bodily injury plaintiffs routinely named PCC and Garlock together in thousands of asbestos cases annually." Access Motion at 2-3. Garlock implausibly claims to have "only heard about this case through third parties." *Id.* at 3.

[5]  Access Motion at 7 ("because the identities of the asbestos claimants are directly relevant to its confirmation objection, Garlock requests the Court to direct the Debtor to provide to Garlock all 2019 Statements, with exhibits").

served, by facsimile, an extremely limited group of parties. The Law Firms, despite being specifically named in the Access Motion, were not properly served.[6]

On November 25, 2009, this Court granted Garlock's request to expedite the Access Motion and entered an order setting the matter for hearing on Thursday, December 3, with a deadline for objections of noon on December 1, 2009 (the "Order to Expedite"). The Court instructed Garlock to serve a copy of the Order to Expedite upon, *inter alia*, parties listed on the Official Service List, but Garlock again failed to effect proper service.

The Plan Proponents filed a motion to strike Garlock's Plan objection as untimely and sought an order precluding Garlock from obtaining relief from the expired deadlines to conduct discovery in this case. Docket No. 7169. The Plan Proponents also objected to Garlock's attempt to procure the Confidential Exhibits in an attempt to circumvent the restrictions on untimely discovery. Docket No. 7278. The Law Firms objected to the Access Motion on the grounds that they had not been properly served and that fairness and due process required that the "targets" of the Access Motion be given a proper opportunity to contest the disclosure of their Confidential Exhibits to Garlock. Docket No. 7277. While declining to strike Garlock's objection, this Court held that it would entertain only Garlock's objections on legal grounds. The Court also expressly declined to reopen

---

[6]    Three of the Law Firms were not served at all, while, for Weitz & Luxenberg, facsimile service was attempted upon C. Sanders McNew, a lawyer formerly with Weitz & Luxenberg who has not been associated with the firm for some years.

6

discovery.[7]  The Court ordered that Garlock serve notice of the Access Motion upon the law firms whose Confidential Exhibits it sought, and set the matter for hearing after appropriate briefing.  December Transcript at 127.  Service was, at last, properly undertaken.

### III. ARGUMENT

1.    **Affording Garlock access to the Rule 2019 Materials is inappropriate and unnecessary.**

Garlock feigns unawareness of the proceedings before this Court, asserting that it "scrambled" to file its Plan objection when it "heard about this case through third parties" and "scanned the docket" to ascertain details about the case.  Access Motion at 3.  This is insupportable.  As noted, Garlock was Pittsburgh Corning's prepetition co-defendant in "thousands of asbestos cases annually."  Access Motion at 2.  It knew when Debtor filed bankruptcy.[8]

Would-be bankruptcy participants who, knowing of a bankruptcy case stick their heads in the sand, are given appropriately short shrift.  The Ninth Circuit has held that when a creditor receives "notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Zidell Inc. v. Forsch (In re Coastal Alaska Lines, Inc.)*, 920 F2d. 1428, 1431 (9th Cir. 1990) (quoting *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705

---

[7]    Hrg. Transcr. Pp. 107-108 (Dec. 3, 2009) (the "December Transcript").

[8]    The Plan Proponents made this point in their Emergency Motion to Strike Objection of Garlock Dealing Technologies, LLC, to Confirmation of Modified Third Amended Plan.  (Docket No. 7169 at 2; the "Motion to Strike").

F.2d 1118, 1123 (9th Cir. 1983)). As the creditor "actually received information about the bankruptcy proceedings that was sufficient to put it on inquiry notice," the Ninth Circuit held that its due process arguments must fail. *Zidell*, 920 F.2d at 1431.[9]

The Supreme Court notes that "even in cases where the direct issue of fraud is involved, knowledge may be imputed where one wilfully closes his eyes to information within his reach." *Wecker v. Natl. Enameling & Stamping Co.*, 204 U.S. 176, 185 (1907). Heeding this admonition, a district court concluded that notice could be

> inferred from the fact that a person had the means of knowledge and the duty to use them but did not. It is based on the premise that a person has no right to shut his eyes or ears to avoid information and then say he had no notice; it will not suffice the law to remain willfully ignorant of a thing readily ascertainable when the means of knowledge is at hand.

*Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. v. Boyer (In re U.S.A. Diversified Products, Inc.)*, 196 B.R. 801, 814-815 (N.D. Ind. 1996) (quoting *Symans v. St. of Fla., Dept. of Banking and Fin.*, 490 So. 2d 1322 (Fla. App. 1986).[10]

---

[9]   Garlock's suggestion that it has not been notified of precise developments in this bankruptcy does not excuse its failure to ascertain the ongoing status of the case. As one court noted in a similar situation, "[d]espite its purported lack of official notice of the dischargeability bar date, Central concedes that it had actual knowledge of Debtor's Chapter 7 case and attended the first meeting of creditors. Where a creditor has actual knowledge of a bankruptcy case such knowledge imposes on the creditor the obligation to make reasonable inquiry regarding the relevant bankruptcy bar dates and deadlines." *In re Cover*, 97 B.R. 375, 379 (Bankr. S.D. Ohio 1989). Just as the creditor in *Cover* could not object to the passing of bar dates when it had actual knowledge of the bankruptcy and a duty to inquire further, Garlock cannot claim to escape the deadlines imposed in this case by—while knowing for 10 years that the Debtor was in bankruptcy—by studiously avoiding being in position to acquire specific details of the bankruptcy.

[10]   *See also Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495, 498 (9th Cir. B.A.P. 1987) ("Appellant knew of the ongoing bankruptcy case and was thereby placed on inquiry notice as to the impending meetings and deadlines in bankruptcy proceedings. Had inquiry been seasonably

The following exchange between Garlock's counsel and the Court at the

December 3, 2009 hearing is illuminating:

> THE COURT: Garlock was in the case. It had been served by the debtor with other things. Garlock's name's on certificates of service.
>
> MR. CASSADA: But, Garlock --
>
> THE COURT: If you didn't ask to get on to the 2002 list you don't get notices.
>
> MR. CASSADA: Well, but Garlock never received notice of any case management order and the solicitation --
>
> THE COURT: Didn't ask for it.
>
> MR. CASSADA: Okay.
>
> THE COURT: Had you asked for it and you had notice of the bankruptcy, you would have gotten it.
>
> MR. CASSADA: Well, the solicitation order and the disclosure statement did not say that the right to file an objection was subject to any other order that had been entered.
>
> THE COURT: Did anybody check the docket?

December Transcript at 97.

Garlock's asserted lack of knowledge about the scheduling orders associated

with confirmation proceedings rings hollow. Garlock knew about the bankruptcy at

inception and chose not to keep itself informed. As this Court noted, the simple

expedient of requesting notice would have ensured that Garlock received service of

---

made he would have discovered the bar date"); *In re Sudano, Inc.*, 391 B.R. 678, 689 (Bankr. E.D.N.Y. 2008) ("knowledge may be imputed where one willfully closes his eyes to information within his reach") (internal citations and quotations omitted); *In re Cover*, 97 B.R. at 379 ("Equity aids the vigilant, not those who sleep on their rights. Moreover, creditors have a responsibility to act timely on their rights and not subject debtors to the uncertainties of excusable neglect in failing to timely object to discharge of a claim") (internal quotations and citations omitted).

all proceedings in this case. Regular reviews of the docket would likewise have provided a clear picture of ongoing matters. When a party "willfully closes his eyes to information within his reach" he cannot be heard to complain of any consequences springing out of that purported lack of knowledge.

This Court, after hearing the Plan Proponents' Motion to Strike and Garlock's proffered explanation for its late arrival on the scene, limited Garlock's right to participate in the case, noting:

> I don't see a need for discovery on these points. If this is the nature of the objection and it's going to be restricted to a legal argument, you can make that objection. You can file your brief and I'll consider it in the context of the plan as opposed to this hypothetical discussion that we're having now ... I think that would be appropriate, but with respect to discovery, Garlock hasn't complied with a single part of the case management order. Garlock had notice of this bankruptcy right from the very beginning. It was served with notice of the bankruptcy. It hasn't participated. It acts at its peril, and I'm not opening up discovery to a broad panoply simply because Garlock has filed a late objection to the plan.

December Transcript at 107-108.

While the Court has yet to decide the merits of the Access Motion, the same principles apply where the information now sought—the Confidential Exhibits— could have been sought years ago. Garlock's willful blindness should not be rewarded and, in any event (as explained below), the Confidential Exhibits are irrelevant to the matter for which Garlock claims to need them.

2.    **The Rule 2019 Materials were provided for a singular purpose, and Garlock's attempt to access them is not in furtherance of that purpose.**

Rule 2019 is not a tool for discovery. It is not a mechanism by which an entity seeking to inject itself into a bankruptcy proceeding may obtain confidential

information of others in furtherance of its parochial agenda. The Court undoubtedly recalls that, in entering the Rule 2019 Order, it rebuffed attempts by various insurers to employ Rule 2019 as a tactical weapon against law firms representing personal injury claimants. The Court required all counsel representing multiple claimants to file a Rule 2019 Statement containing information appropriate to the vetting of their agency.

Garlock simplistically asserts that it "as a party to these proceedings is surely entitled to learn the identity of other parties in the case, and should therefore be allowed to examine the 2019 statements." Access Motion at 5. The Rule 2019 Order strikes a balance between claimants' privacy interests and the desire of other parties to have access to personal information. More than a simple demand for the materials is required. Garlock must articulate a legitimate need for the information that outweighs claimants' privacy concerns. It has not done that.

Rule 2019 specifies no precise manner of compliance with its requirements, which is entrusted to the sound discretion of bankruptcy judges and can be modified and shaped to suit the requirements and needs of individual cases. As Judge Farnan held in reviewing another of this Court's "global" Rule 2019 Orders:

> Rule 2019 need not always be strictly applied. In the Court's view, the [Rule 2019 Orders] comport with the requirements of Rule 2019 while taking into consideration the complexities of mass tort litigation ... Rule 2019(b) vests the Bankruptcy Court with the discretion to determine whether there has been a failure to comply with the Rule 2019(a) requirements.

*In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559 (D. Del. 2005) (internal citations and quotations omitted).

Indeed, disclosure requirements in bankruptcy are not uniform; each rule mandating disclosure has its own purpose and scope. The limited disclosures required by Rule 2019 are very different, and much less intrusive, than the distinctive requirements imposed upon trustees, debtors-in-possession, and court-authorized professionals by Bankruptcy Rules 2014, 2015, and 2016.[11] These disclosures must be public and extensive, as befits estate-employed professionals.

Rule 2019 deals with wholly different kinds of professionals whose fiduciary duties are owed only to their clients and whose client relationships are neither a matter of public import nor a proper subject for public inquiry or discussion. Rule 2019 avoids generalities and requires disclosure—for an expressly limited purpose—of specific, strictly enumerated information. Unlike disclosure rules applicable in all bankruptcy cases, Rule 2019 applies only in the relatively few bankruptcy cases involving a plan process. It exists to assure that reorganization plans are negotiated by people authorized to negotiate them (or resist them, or vote for or against them), acting on behalf of the real parties in interest. Its scope is limited and its purpose narrow. If a bankruptcy court has sufficient information to vet counsel's agency to act on behalf of multiple creditors, the rationale for Rule 2019 is satisfied.

---

[11] The disclosures required of court-approved professionals are sweeping, requiring detailed information regarding every possible connection that a party has with the estate or any of its creditors (Rule 2014) and of its financial dealings with relevant parties (Rule 2016). This is as it should be. Estate professionals may owe a fiduciary duty to the debtor's creditors, and full disclosure ensures that these professionals are able to fully discharge those duties without conflict or hidden motivation.

Garlock seeks to obtain the Confidential Exhibits covering thousands of claimants on little more than its say-so. It acknowledges that it does not seek to verify that the law firms purporting to represent multiple claimants actually possess the authority to do so. According to the Access Motion, Garlock seeks to help prove its standing to object to the plan, by "comparing the names of the asbestos claimants against the names of persons who have sued Garlock" in an attempt to "show that countless PCC claimants have sued or are currently suing Garlock, thus giving Garlock contribution claims and demands against PCC." Access Motion at 5-6. Additionally, it claims that "the identities are relevant to Garlock's allegation that tort system plaintiffs are concealing the existence of PCC's several share from the tort system." *Id.* at 6.

Thus, Garlock itself concedes that its reasons for seeking the Confidential Exhibits are entirely divorced from Rule 2019. It would piggyback its narrow concerns—concerns so important that it waited years to raise them—onto Rule 2019's narrow purpose. Garlock seeks what amounts to backdoor discovery after the Court has already barred the front door. The Confidential Exhibits were gathered for one purpose, and rigorously guarded, and Garlock may not obtain this sensitive information pursuant to Rule 2019 to further its own ends. Garlock can seek this discovery in the underlying tort litigation, which is where this type of discovery should proceed if at all.

Moreover, information contained in the Confidential Exhibits is not even relevant to Garlock's stated purposes. The Rule 2019 Statements sought by Garlock

are filed by law firms purporting to represent multiple asbestos claimants who have potential claims against Pittsburgh Corning and who have appeared in this bankruptcy case to be ready to protect those interests as and when they arise. Until claims are filed against the § 524(g) trust, claimants are not expressly asserting or presenting for payment any claims they might have against Pittsburgh Corning. The entire point of the trust and channeling injunction mechanism of § 524(g) is to defer until after the bankruptcy case the issue of whether a given claimant is entitled to payment under the terms of the TDP. That is why there are no bar dates for such claims or any attempt to litigate the validity of any claims within the context of the bankruptcy. The Confidential Exhibits contain lists of individuals represented by the firms filing the applicable Rule 2019 Statements, and do not purport to be complete lists of those claimants who will ultimately file claims against the trust. As such, the Confidential Exhibits are irrelevant to the issue at hand and may even be misleading. Until a claimant files a claim against the trust, he or she is not actually asserting a claim against Pittsburgh Corning and the information contained in the Confidential Exhibits is—at best—incomplete, preliminary and imprecise. No appropriate purpose can be served if Garlock were to obtain the Confidential Exhibits.

3.    **Privacy concerns require that the Rule 2019 Materials, including medical information, be kept confidential.**

This Court, when entering the Rule 2019 Order, took pains to protect the privacy interests of the claimants in respect of whom Rule 2019 Statements were filed. As Judge Farnan noted in an appeal mentioned above:

14

> Although Section 107(a) evidences a strong desire by Congress to preserve the public's right to access judicial records, that right is not absolute. Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose ... *In the Court's view, Judge Fitzgerald's Rule 2019 Orders strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused.* Accordingly, the Court concludes that the Bankruptcy Court did not err in declining to post the Rule 2019 information on the electronic docket and in permitting access to that information by motion of the parties and order of the Court.

*In re Kaiser Aluminum Corp.*, 327 B.R. at 560 (internal citations and quotations omitted) (emphasis added). The Confidential Exhibits contain claimants' medical information that Garlock has no legitimate need or basis for accessing.

Garlock contends that it is entitled to learn the identities of the other parties in this case and that, therefore, the Confidential Exhibits should be provided for its review. Garlock paints the issue as partly one of fairness (a party knowing the identities of other parties) and partly as a matter of public monitoring of open judicial proceedings. Access Motion at 5. This is a mischaracterization of the purposes of Rule 2019 and, in any event, Garlock is not high-mindedly seeking to monitor judicial proceedings. By its own admission, Garlock wants discovery to bolster its own late-filed objections. *See* Access Motion at 5-6. This desire for information does not begin to outweigh the privacy concerns articulated by this Court and upheld on appeal. The public's right of access to court records is by no means absolute. *Video Software Dealers v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2nd Cir. 1994). Every court has supervisory power over its own records and files, and access may be denied where court files might be

15

used in furtherance of improper purposes. *Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995). The decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. *In re 50-Off Stores, Inc.*, 213 B.R. 646, 650 n.7 (Bankr. W.D. Tex. 1997).

This Court, in entering the Rule 2019 Order, struck a fair balance between the need for the Court to ascertain whether entities contending to represent multiple creditors were, in fact, authorized to do so, and the privacy rights of those individuals suffering as a result of asbestos-related disease who may ultimately seek recovery from the 524(g) trust and whose counsel seek to represent their interests in this bankruptcy case as appropriate and necessary. In balancing those interests, the Court permitted a party who sought access to the Confidential Exhibits to move this Court to permit such access upon a requisite showing of need that outweighs such concerns. Garlock exhibits something of a cavalier disregard for the delicate balance struck by this Court. At the December hearing, Garlock's counsel, expressing unfamiliarity with the extensive work that went into crafting the Rule 2019 Order and the careful review undertaken in several appeals, contended:

> for someone who's not been involved in this case, it was extraordinary news to me that a claimant can come in and the identity and disease of these claimants who are suing people in the tort system would be considered to be a matter of privacy.

December Transcript at 120. But these details are the very essence of that which properly belongs in the private sphere. This Court carefully crafted a means to enable the proper inquiry under Rule 2019 to take place while protecting these sensitive and confidential details from public disclosure. Garlock's desire for the Confidential Exhibits—it has failed to establish any need—does not rise nearly to a level where it outweighs the interests of the victims of asbestos-related torts in keeping their sensitive medical and personal information private.

### IV. JOINDER

To the extent appropriate, the Law Firms hereby join in the arguments advanced by any other party in opposition to the Access Motion and incorporate those arguments, by reference, as if fully set forth herein.

### V. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, The Law Firms respectfully urge this Court to deny the Access Motion and order the Debtor to maintain the confidentiality of the Rule 2019 Materials and grant such other relief to which the Law Firms may be justly entitled.

[This Space Intentionally Left Blank;
Signature Block Appears on the Following Page]

17

Dated: December 29, 2009

/s/ Peter J. Ashcroft
Peter J. Ashcroft (PA I.D. #87317)

**BERNSTEIN LAW FIRM, P.C.**
Suite 2200 Gulf Tower
Pittsburgh, Pennsylvania 15219
pashcroft@bernsteinlaw.com
(412) 456-8107
(412) 456-8255 (facsimile)


**STUTZMAN, BROMBERG, ESSERMAN &**
**PLIFKA, A Professional Corporation**
Sander L. Esserman
Texas Bar No. 06671500
David J. Parsons
Texas Bar No. 24037238
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900
(214) 969-4999 (facsimile)

**ATTORNEYS FOR THE LAW FIRMS**

18

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>PITTSBURGH CORNING CORPORATION<br><br>                Debtor<br>_____<br><br>GARLOCK SEALING<br>TECHNOLOGIES, LLC,<br><br>                Movant<br><br>     vs.<br><br>PITTSBURGH CORNING<br>CORPORATION, THE UNITED STATES<br>TRUSTEE AND OTHER PARTIES-IN-<br>INTEREST TO ORDER DATED<br>OCTOBER 22, 2004<br><br>             Respondents | Bankruptcy No. 00-22876-JKF<br><br>Chapter 11<br><br>Related to Doc. Nos. 7187 and 7277<br><br><br><br>Hearing Date: 1/13/2010 at 9:00 a.m.<br>Response Date: 12/29/2010 at 12:00<br>p.m. |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of:

THE OBJECTION OF BARON & BUDD, THE LAW OFFICES OF PETER G. ANGELOS, REAUD
MORGAN & QUINN, THORNTON & NAUMES, WEITZ & LUXENBERG AND WILLIAMS
KHERKHER TO THE EXPEDITED MOTION OF GARLOCK SEALING TECHNOLOGIES, LLC
FOR ORDER AUTHORIZING ACCESS TO CERTAIN 2019 STATEMENTS FILED IN CASE

was served on the following parties and upon each person on the Official Service

Lists attached hereto by email or first-class mail on the 29th Day of December 2009:

| | |
|---|---|
| Eric J. Monzo Esquire<br>Morris James LLP<br>500 Delaware Avenue, STE 1500<br>Wilmington DE 19801<br>emonzo@morrisjames.com<br>Counsel to Garlock Sealing<br>Technologies, Inc. | Garland S. Cassada Esquire<br>Robinson, Bradshaw & Hinson<br>101 North Tryon Street, STE 1900<br>Charlotte NC 28246<br>gcassada@rbh.com<br>Counsel to Garlock Sealing<br>Technologies, Inc. |

Dated: December 29, 2009  /s/ Peter J. Ashcroft
             Peter J. Ashcroft (PA I.D. #87317)

             **BERNSTEIN LAW FIRM, P.C.**
             Suite 2200 Gulf Tower
             Pittsburgh, PA 15219
             pashcroft@bernsteinlaw.com
             (412) 456-8107
             (412) 456-8255 (facsimile)


             **STUTZMAN, BROMBERG, ESSERMAN &**
             **PLIFKA, A Professional Corporation**
             Sander L. Esserman
             Texas Bar No. 06671500
             David J. Parsons
             Texas Bar No. 24037238
             2323 Bryan Street, Suite 2200
             Dallas, Texas 75201
             (214) 969-4900
             (214) 969-4999 (facsimile)

             **ATTORNEYS FOR THE LAW FIRMS**