# EXHIBIT N

# EXHIBIT B

## VOTING PROCEDURES

PITTSBURGH CORNING CORPORATION
BALLOT SOLICITATION AND TABULATION PROCEDURES
FOR THE MODIFIED THIRD AMENDED PLAN OF REORGANIZATION FOR PITTSBURGH CORNING CORPORATION DATED JANUARY 29, 2009 JOINTLY PROPOSED BY PITTSBURGH CORNING CORPORATION, THE OFFICIAL COMMITTEE OF ASBESTOS CREDITORS AND THE FUTURE CLAIMANTS' REPRESENTATIVE

## TABLE OF CONTENTS

**Page**

1.  Publication of Notice ................................................................................................................ 2

2.  Availability of Plan Documents on the Internet ........................................................................ 2

3.  Distribution of Certain Documents on CD-ROM ..................................................................... 2

4.  Distribution of Solicitation Packages ........................................................................................ 2

5.  Distribution of Solicitation Packages to, and Special Procedures For, Holders of Channeled Asbestos PI Trust Claims ......................................................................................... 3

6.  Indirect Asbestos Claims and PCC/PPG Insurance Practices Claims ....................................... 9

7.  Return of Ballots ........................................................................................................................ 9

8.  Tabulation of Ballots – Determination of Amount of Claims Voted ...................................... 10

9.  Tabulation of Votes – Holders of Multiple General Unsecured Claims for Voting, Classification, And Treatment Under the Plan ....................................................................... 12

10. Tabulation of Votes – Ballots Excluded .................................................................................. 12

11. Tabulation of Votes – General Voting Procedures and Standard Assumptions ...................... 12

## VOTING PROCEDURES

### PITTSBURGH CORNING CORPORATION
### BALLOT SOLICITATION AND TABULATION PROCEDURES

The following procedures (the "Voting Procedures") govern the distribution of solicitation materials with respect to the Modified Third Amended Plan of Reorganization for Pittsburgh Corning Corporation dated January 29, 2009 Jointly Proposed by Pittsburgh Corning Corporation ("PCC" or "Debtor"), debtor and debtor-in-possession, the Official Committee of Asbestos Creditors and the Future Claimants' Representative for Pittsburgh Corning Corporation (as it may be from time to time amended, supplemented or modified, "the Plan") and the return and tabulation of Ballots and Master Ballots with respect to the Plan.

Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan or the Motion.

1. **Publication of Notice:** The Debtor will cause a notice of the confirmation hearing and the opportunity to obtain a Solicitation Package to be published one time in a weekday edition of the national editions of *The New York Times*, *The Wall Street Journal* and *USA Today*, and one time in an edition of the national publications of *Parade*, *USA Weekend*, *Reader's Digest*, *American Legion*, *Popular Mechanics*, and *VFW Magazine*. Publications shall occur on a date not less than thirty (30) calendar days before the Voting Deadline.

2. **Availability of Plan Documents on the Internet:** The Plan, the Disclosure Statement and all Exhibits to the Plan are or will be available on the internet on the Bankruptcy Court's docket at **http://www.pawb.uscourts.gov**; the Debtor's website at **www.asbestos-pcc.com**; and on the website of Logan & Company, Inc. (the "Voting Agent") at **www.loganandco.com**.

3. **Distribution of Certain Documents on CD-Rom:** The Solicitation Package will include a CD-Rom containing the Disclosure Statement and the exhibits thereto, including the Plan. If service by CD-ROM imposes a hardship for any creditor, such creditor may obtain a paper copy of the Disclosure Statement and Plan by sending a request, in writing, to the Voting Agent: Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043 (Attn: PCC Voting Department).

4. **Distribution of Solicitation Packages:**

    a. **Contents of the Solicitation Package:** Each holder of a Claim in the classes entitled to vote for whom the Debtor has an address (in the case of an individual holder of Channeled Asbestos PI Trust Claims, the known attorney for such holders) will be sent a package by the Voting Agent that contains (i) the notice of the time fixed for filing objections and the hearing on confirmation ("Confirmation Hearing Notice"), (ii) the order approving the Disclosure Statement, (iii) the Disclosure Statement and Plan, (iv) one or more appropriate ballots, substantially in the form attached hereto in Exhibits C-2 through C-5, together with voting instructions and information relative to the return of the ballots, (v) a pre-addressed return envelope, (vi) a solicitation letter from the ACC and the Future Claimants' Representative recommending acceptance of the Plan, and (vii) any other material ordered or authorized by this Court to be included (collectively the "Solicitation Package"). Attorneys

for holders of Channeled Asbestos PI Trust Claims may provide a letter to be included in the Solicitation Package sent to their clients, provided that the letter is submitted to the Voting Agent within a reasonable amount of time to allow for mailing.

b. **Scheduled Claims:** The Voting Agent will cause a Solicitation Package to be served upon each holder of a Claim against PCC listed in its Schedules of Assets and Liabilities (the "Schedules") as of the Record Date as liquidated, undisputed and noncontingent and with a Claim amount in excess of $0.00.

c. **Filed Claims:** Except as otherwise provided for herein, the Voting Agent will cause a Solicitation Package to be served upon each holder of a Claim represented by a proof of claim filed against the Debtor that has not been withdrawn or disallowed or expunged by an order of the Bankruptcy Court entered on or before the Record Date, other than a proof of claim asserting a Channeled Asbestos PI Trust Claim, which shall be dealt with as described below, and Claims in the amount of $0.00. If the relevant proof of claim does not indicate the appropriate classification of a Claim, such Claim shall be treated as a General Unsecured Claim.

d. **Parties to Executory Contracts and Unexpired Leases:** Each Entity that is listed on the Schedules or is otherwise known to be a party to an executory contract or an unexpired lease with the Debtor, irrespective of whether, pursuant to section 365(a) of the Bankruptcy Code, such contract is, in fact, an "executory contract" or such lease is, in fact, an "unexpired lease," will be sent a Solicitation Package.

e. **Parties Not Entitled to Vote:** A Notification of Non-Voting Status, substantially in the form attached to the Motion as Exhibit C-1, will be sent to holders of Claims and Interests in classes not entitled to vote. Holders of Claims in unimpaired classes will not be sent a Solicitation Package. Interest holders will be sent Solicitation Packages without Ballots.

f. **Other Parties:** All other known holders of Claims against the Debtor will receive a Solicitation Package, including, but not limited to, individual holders of Channeled Asbestos PI Trust Claims who cast a ballot on the Second Amended Plan and are not identified in a 2019 statement filed by counsel, any person or entity that has filed with the Court a notice of the transfer or assignment of a Claim under Bankruptcy Rule 3001(e), but not including individual holders of Channeled Asbestos Personal Injury Claims who are identified in a 2019 statement filed by counsel.

g. **Affidavits of Service:** Following distribution of the Solicitation Package and Notices of Non-Voting Status, the Voting Agent shall file one or more affidavits of service with the Bankruptcy Court setting forth the name, address, date and manner of service effected with respect to each person entitled to notice under these procedures.

5. **Distribution of Solicitation Packages to, and Special Procedures for, Holders of Channeled Asbestos PI Trust Claims**

   a. **Distribution of Solicitation Packages:** The Voting Agent will cause Solicitation Packages to be served with respect to Channeled Asbestos PI Trust Claims as follows:

      (i) **To Attorneys Representing Holders of Channeled Asbestos PI Trust Claims:**

         (1) the Debtor or the Voting Agent will mail copies of the Certified Plan Solicitation Directive (the "Directive"), substantially in the form attached hereto

as Exhibit D, by first class mail or electronic mail, if it has been provided, to all attorneys who have filed a Bankruptcy Rule 2019 statement indicating that they represent more than one holder of a Channeled Asbestos PI Trust Claim (collectively, the "PI Attorneys"). The PI Solicitation Notice will explain the options for soliciting and casting votes related to Channeled Asbestos PI Trust Claims; and will direct PI Attorneys to complete and return a Directive to the Voting Agent on or before _____.

(2)  Each PI Attorney is required to direct the Voting Agent to provide solicitation and balloting materials to holders of Channeled Asbestos PI Trust Claims in one of the following ways:

> (A)  **Master Ballot**. If a PI Attorney certifies that he or she has the authority under applicable law to vote on behalf of his or her clients, the PI Attorney may direct the Voting Agent to serve the PI Attorney with one Solicitation Package and one Master Ballot. Solicitation Packages, without Ballots, may also be served on individual claimants at the option of the PI Attorney;
>
> (B)  **Direct Solicitation**. If a PI Attorney does not have authority to vote for his or her clients, or prefers to have his or her clients cast their own votes, he or she may direct the Voting Agent to serve Solicitation Packages and Ballots directly on his or her clients;
>
> (C)  **Indirect Solicitation**. If a PI Attorney does not have authority to vote for his or her clients or if he or she prefers to have clients cast their own votes, he or she may direct the Voting Agent to deliver Solicitation Packages and Ballots to the PI Attorney, who will assume responsibility for delivering Solicitation Packages and Ballots directly to his or her clients;
>
> (D)  **Hybrid Solicitation**. If a PI Attorney certifies that he or she has authority under applicable law to vote, and decides to exercise that power for some, but not all, of his or her clients, the PI Attorney may direct the Voting Agent to serve the PI Attorney with one Solicitation Package and one Master Ballot. The PI Attorney may also request that a Solicitation Package without Ballot be served on each of the clients for whom he or she will vote. With respect to such attorney's other clients with Channeled Asbestos PI Trust Claims, the attorney must elect one of the solicitation methods set forth in subparagraphs (B) or (C) above.

(3)  Directives must be submitted to the Voting Agent by _____. PI Attorneys shall also submit to the Voting Agent a list of the names and last four digits of the social security numbers of all clients with Channeled Asbestos PI Trust Claims. For those clients who are to be served with a Solicitation Package, the PI Attorney shall also submit a list of addresses. Such lists must be in EXCEL™ format on either a 3.5" floppy disk or CD-ROM.

(ii) **To Individuals Who Hold or Assert Channeled Asbestos PI Trust Claims:**

(1) If a holder of a Channeled Asbestos PI Trust Claim requests a Solicitation Package from the Voting Agent, the Voting Agent will cause to be mailed (by first-class, U.S. mail) a Solicitation Package, together with a Ballot, directly to each applicable holder of a Channeled Asbestos PI Trust Claim within five (5) business days or as soon as practicable after receiving such request.

(2) If an individual who holds or asserts a Channeled Asbestos PI Trust Claim signs and files a proof of claim asserting a Channeled Asbestos PI Trust Claim prior to the Record Date, **and their attorney's address is unknown**, the Voting Agent will cause to be mailed a Solicitation Package, together with a Ballot, directly to each such individual at the address listed on his or her proof of claim.

b. **Calculation of Votes With Respect to Channeled Asbestos PI Trust Claims:**

(i) **Holders of Channeled Asbestos PI Trust Claims:** Each holder of a Channeled Asbestos PI Trust Claim will have a single vote in Class 5, in an amount that will be based upon the designated disease level (as described below) that forms the basis for such holder's asserted Channeled Asbestos PI Trust Claim, whether or not such Claim is liquidated or unliquidated.

The designation of the disease level by the holder of a Channeled Asbestos PI Trust Claim or his or her attorney will be for voting purposes only and not be binding upon the holder, the Debtor or the Asbestos PI Trust for any purpose other than for voting on the Plan. Only one disease level may be selected for each holder of a Channeled Asbestos PI Trust Claim. In the event more than one disease level is selected by or on behalf of a holder of a Channeled Asbestos PI Trust Claim, the Voting Agent shall count solely the selected disease level with the highest value for voting purposes. In the event no disease level is selected by or on behalf of a holder of a Channeled Asbestos PI Trust Claim, the Voting Agent shall designate Disease Level I for voting purposes only.

The amount of a Channeled Asbestos PI Trust Claim, for voting purposes only, is as follows:

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $175,000 | (1) Diagnosis of mesothelioma; and (2) credible evidence of exposure to Unibestos [1] during the period July 1, 1962-December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982. |
| Lung Cancer 1 (Level VII) | $47,500 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[2], (2) six months exposure to Unibestos during the period July 1, 1962-December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure[3], and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level VI) | $20,000 | (1) Diagnosis of a primary lung cancer; (2) exposure to Unibestos during the period July 1, 1962-December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question.<br><br>Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer 1 (Level VII) claims. |

---

[1] The term "exposure to Unibestos" means exposure to an asbestos-containing product manufactured, marketed, sold or distributed by PCC under the "Unibestos" or other label for which PCC, any PPG Entity or any Corning Entity has direct or indirect liability; however, the Asbestos PI Trust shall be free to contest whether a particular Unibestos product was in fact manufactured, marketed, sold or distributed by PCC.

[2] Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT scan read by a Qualified Physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Evidence submitted to demonstrate (i) or (ii) above must be in the form of a written report stating the results (e.g., an ILO report, a written radiology report or a pathology report). Solely for asbestos claims filed against PCC, any PPG Entity, any Corning Entity, or another defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a Qualified Physician, or (ii) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V and VII. Pathological evidence of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982). For all purposes of this TDP, a "Qualified Physician" is a physician who is board-certified (or in the case of Canadian Claims or Foreign Claims, a physician who is certified or qualified under comparable medical standards or criteria of the jurisdiction in question) in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; provided, however, subject to the provisions of Section 5.8, that the requirement for board certification in this provision shall not apply to otherwise qualified physicians whose X-ray and/or CT scan readings are submitted for deceased holders of Channeled Asbestos PI Trust Claims.

[3] "Significant Occupational Exposure" means employment for a cumulative period of at least five years, with a minimum of two years prior to December 31, 1982, in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

| | | |
|---|---|---|
| Other Cancer (Level V) | $27,500 | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months exposure to Unibestos during the period July 1, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level IV) | $47,500 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestosis, plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months exposure to Unibestos during the period July 31, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level III) | $11,750 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months exposure to Unibestos during the period July 31, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $5,500 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months exposure to Unibestos during July 31, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Level I - Cash Discount Payment) | $400 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy (other than mesothelioma), and (2) exposure to Unibestos during the period July 31, 1962 – December 31, 1972, or to another asbestos containing-product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982. |

(ii) **Required Certifications Regarding Channeled Asbestos PI Trust Claims:** No vote for or against the Plan by or on behalf of a holder of a Channeled Asbestos PI Trust Claim shall be counted by the Voting Agent unless the Ballot or Master Ballot reflecting such vote is submitted to the Voting Agent with written certifications, in the form contained on the Ballot and/or Master Ballot, under penalty of perjury in accordance with 28 U.S.C. §1746.

(iii) **Certification by Attorney of Authority to Vote:** The Master Ballot will contain a certification to be completed by the attorney preparing and signing the

Master Ballot pursuant to which such attorney will certify, under penalty of perjury in accordance with 28 U.S.C. §1746, that such attorney represents the holders and has the authority under applicable law to cast such Master Ballot on the Plan on behalf of the holders of each of the Channeled Asbestos PI Trust Claims listed on the exhibit attached to the Master Ballot. If the attorney is unable to make such certification on behalf of any holder of a Channeled Asbestos PI Trust Claim whom he or she represents, the attorney may not cast a vote on behalf of such Claimant and must timely send the information relating to the names, addresses and social security numbers of the clients for whom he or she may not vote to the Voting Agent in accordance with section 5 hereof.

c. **Completion and Return of Master Ballots by Attorneys for Holders of Channeled Asbestos PI Trust Claims**: PI Attorneys shall be permitted to cast Ballots for such holders, but only to the extent such attorneys have the authority from their clients to do so and so certify in the manner set forth on the Master Ballots.

Each attorney voting on behalf of the individuals who hold or assert Channeled Asbestos PI Trust Claims shall complete a Master Ballot, which will set forth the votes cast by such attorney on behalf of any such clients, with requisite certifications in accordance with section 5b(ii) and (iii) above.

The following procedures will govern the completion and return of a Master Ballot:

(i) **Summarizing Votes on the Master Ballot:**

The Master Ballot shall contain the following options for voting, one of which shall be marked by the attorney:

(a) "All claimants listed on the Exhibit accompanying this Master Ballot **ACCEPT** the Plan."

(b) "All claimants listed on the Exhibit accompanying this Master Ballot **REJECT** the Plan."

(c) "All claimants listed on the Exhibit accompanying this Master Ballot **ACCEPT** the Plan, **except as marked on the exhibit.**"

(d) "All claimants listed on the Exhibit accompanying this Master Ballot **REJECT** the Plan, **except as marked on the exhibit.**"

The attorney completing the Master Ballot will also have to complete the following summary of votes on the Plan for each disease category of Channeled Asbestos PI Trust Claims for which the attorney is voting on the Plan:

**SUMMARY OF VOTES FOR ASBESTOS CLAIMANTS DISEASE CATEGORIES**

| Number of Channeled Asbestos PI Trust Claimants Voting | Disease Category | Votes **Accepting** Plan | Votes **Rejecting** Plan |
|---|---|---|---|
|  | **MESOTHELIOMA (LEVEL VIII)** |  |  |

|  | LUNG CANCER 1 (LEVEL VII) |  |  |
|  | LUNG CANCER 2 (LEVEL VI) |  |  |
|  | OTHER CANCER (LEVEL V) |  |  |
|  | SEVERE ASBESTOSIS (LEVEL IV) |  |  |
|  | ASBESTOSIS/PLEURAL DISEASE (LEVEL III) |  |  |
|  | ASBESTOSIS/PLEURAL DISEASE (LEVEL II) |  |  |
|  | OTHER ASBESTOS DISEASE (LEVEL I) |  |  |

    (ii)    **Exhibit to the Master Ballot:**

        (a) Each attorney shall prepare a Client List and attach it to the Master Ballot. This list will become an Exhibit to the Master Ballot and will list each individual holder of a Channeled Asbestos PI Trust Claim represented by such attorney and on whose behalf the attorney is voting on the Plan by name, the last four digits of the social security number, Disease Level (i.e., Mesothelioma, Lung Cancer 1, etc., address where any notices should be sent, whether that holder's vote is to accept or reject the Plan, and whether the holder is voting to accept or reject the Plan).

        (b) The entire Client List must be attached as an Exhibit to the Master Ballot, and the completed Master Ballot and Exhibit must be returned to the Voting Agent in accordance with sections 7b and 7c of these Voting Procedures.

        (c) The Exhibit to the Master Ballot should be submitted in EXCEL™ format on either a 3.5" floppy disk or CD-ROM.

6. **Indirect Asbestos Claims and PCC/PPG Insurance Practices Claims:**

The Debtor is using a separate ballot for Indirect Asbestos Claims and PCC/PPG Insurance Practices Claims. The Debtor further intends to object for voting purposes to any such Claims that may be asserted. Any holder of an Indirect Asbestos Claim or a PCC/PPG Insurance Practices Claim will be required to seek allowance of the Claim for voting purposes as described in section 8c below and in the Class 5 Ballots.

7. **Return of the Ballots:**

    a.    **Claimants that are Entitled to Vote:** Except as provided herein, each claimant that has a Claim (a) for which a Claim amount may be determined pursuant to section 8 hereof as of the Voting Deadline, (b) which Claim is not treated as unimpaired under the Plan, (c) which Claim is not in a class that is deemed to have rejected the Plan, and (d) which

Claim is not the subject of an objection that is pending as of the Record Date unless an order is entered by the Bankruptcy Court allowing such Claim by the Voting Deadline, is entitled to vote to accept or reject the Plan. The assignee of a transferred and assigned Claim (whether a filed or scheduled Claim) shall be permitted to vote such Claim only if the transfer and assignment has been noted on the Bankruptcy Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Record Date.

b. **Place to Send Completed Ballots and Master Ballots:**

All Ballots and Master Ballots should be returned so that they are received by the Voting Agent before 4:00 pm on the Voting Deadline at the following address:

| By U. S. Mail, Hand Delivery or Courier |
|---|
| Pittsburgh Corning Corporation<br>c/o Logan & Company, Inc.<br>546 Valley Road<br>Upper Montclair, NJ  07043 |

c. **Deadline for Receiving Completed Ballots and Master Ballots:**

(1) All Ballots and Master Ballots must be actually received by the Voting Agent (Logan & Company) by the Voting Deadline. The Voting Agent **will not accept Ballots or Master Ballots submitted by facsimile or electronic transmission.**

(2) The Voting Agent will date and time-stamp all Ballots and Master Ballots when received. In addition, the Voting Agent will retain a copy of such Ballots and Master Ballots for a period of one (1) year after the Effective Date of the Plan, unless otherwise instructed by the Debtor, in writing, or otherwise ordered by the Bankruptcy Court.

8. **Tabulation of Ballots – Determination of Amount of Claims Voted:**

a. **Claims Other than Channeled Asbestos PI Trust Claims:** With respect to the tabulation of Ballots for all Claims other than Channeled Asbestos PI Trust Claims, for purposes of voting, the amount to be used to tabulate acceptance or rejection of the Plan is as follows:

(1) If, prior to the Voting Deadline, (i) the Bankruptcy Court enters an order fully or partially allowing a Claim, whether for all purposes or for voting purposes only, or (ii) the Debtor and the holder of a Claim agree to fully or partially allow such Claim for voting purposes only and no objection to such allowance is received by the Debtor within seven (7) calendar days after service by first-class mail of notice of such agreement to the parties upon whom notice is required, the amount allowed thereunder.

(2) The liquidated amount specified in a proof of claim timely filed in accordance with the Bar Date Orders, so long as such Claim has not been

        disallowed or expunged by the Bankruptcy Court and is not the subject of an objection pending as of the Record Date.

    (3) The Claim amount listed in the Schedules as liquidated, undisputed and noncontingent.

    (4) If a Claim is recorded on a proof of claim as unliquidated, contingent and/or undetermined as to amount only in part, the holder of the Claim shall be entitled to vote that portion of the Claim that is liquidated, noncontingent and undisputed in the liquidated, noncontingent and undisputed amount, subject to any limitations set forth herein and unless otherwise ordered by the Court.

b. **Channeled Asbestos Personal Injury Claims**: With respect to the tabulation of Ballots and Master Ballots for Channeled Asbestos Personal Injury Claims, for voting purposes only, the amount to be used to tabulate acceptance or rejection of the Plan will be as described in section 5b hereof.

c. **Allowance Motions.**

    (1) Any holder of a Claim that is not entitled to vote because its Claim is the subject of an objection pending before the Bankruptcy Court, or is entitled to vote but seeks to challenge the allowed amount of the Claim for voting purposes, may file a Claimant's Allowance Motion. A Claimant's Allowance Motion must be filed by a holder of a Claim on or before the fifteenth (15th) calendar day after the later of (i) service of the Solicitation Package, or (ii) service of notice of an objection, if any, to such Claim, or (iii) receipt of notice by publication. As to any creditor filing such a motion, such creditor's Ballot will not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing.

    (2) PCC Intends to object for voting purposes to all Channeled Asbestos PI Trust Claims that are not individual personal injury asbestos claims. If you assert a Claim in Class 5 which is not an individual Asbestos Personal Injury Claim, you must file a motion with the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a), requesting temporary allowance of such Claim in an amount which the court deems proper solely for the purpose of casting a vote to accept or reject the Plan (an "Allowance Motion"). A Claimant's Allowance Motion must be filed within fifteen (15) calendar days after the later of (i) service of the Confirmation Hearing Notice, or (ii) service of the notice of an objection, if any, to such Claim, or (iii) receipt of notice by publication. The Allowance Motion must accompany your Ballot to the Voting Agent and must be served upon the Official Service List. A copy of the Official Service List may be obtained from the website of the Bankruptcy Court at **http://www.pawb.uscourts.gov** or the website of the Debtor at **http://www.asbestos-pcc.com**.

9. **Tabulation of Votes – Holders of Multiple General Unsecured Claims for Voting, Classification, and Treatment Under the Plan:**

   **Specific Rules Relating to Transfers of General Unsecured Claims:** For purposes of voting, classification, and treatment under the Plan, the number and amount of General Unsecured Claims held by an Entity to which any General Unsecured Claim is transferred and which transfer is effective pursuant to Bankruptcy Rule 3001 (e) on or before the close of business on the Record Date shall be determined based upon the <u>identity</u> of the original holder of such General Unsecured Claim.

10. **Tabulation of Votes – Ballots Excluded:**

    A Ballot or Master Ballot will not be counted if any of the following, without limitation, applies to such Ballot:

    a. The holder submitting the Ballot or Master Ballot is not entitled to vote pursuant to section 7a hereof.

    b. The Ballot or Master Ballot is not actually received by the Voting Agent in the manner set forth in section 7 hereof by the Voting Deadline, unless otherwise ordered by the Bankruptcy Court.

    c. The Ballot or Master Ballot is returned to the Voting Agent indicating acceptance or rejection of the Plan but is unsigned.

    d. The Ballot or Master Ballot is received after the Voting Deadline, regardless when it is postmarked.

    e. The Ballot or Master Ballot is illegible or contains insufficient information (such as social security numbers for holders of Channeled Asbestos PI Trust Claims) to permit the identification of the claimant or interest holder.

    f. The Ballot or Master Ballot is transmitted to the Voting Agent by facsimile.

    g. The Ballot or Master Ballot is submitted in a form that is not appropriate for such claim.

    h. A Ballot or Master Ballot that is not completed, including without limitation a Master Ballot with respect to a Channeled Asbestos PI Trust Claim on which the attorney fails to make the required certifications.

11. **Tabulation of Votes -- General Voting Procedures and Standard Assumptions:**

    In addition to the foregoing, the following voting procedures and standard assumptions will be used in tabulating Ballots and Master Ballots:

    a. A creditor may not split his, her, or its vote or votes. Accordingly, except as provided in section 9 hereof, (i) each creditor shall have a single vote within a particular class, (ii) the full amount of all such creditor's Claims (calculated in accordance with these procedures) within a particular class shall be deemed to have been voted either to accept or reject the Plan, and (iii) any Ballot that partially rejects and partially accepts the Plan shall not be counted.

b.     The Voting Agent, in its discretion, may contact voters to cure any defects in a Ballot or Master Ballot.

c.     Subject to section 11d, if multiple Ballots are received on or prior to the Voting Deadline on account of the same Claim, in the absence of contrary information establishing which <u>claimant</u> held such Claim as of the Record Date, the last Ballot that is received by the Voting Agent prior to the Voting Deadline will be the Ballot that is counted. In the event multiple conflicting Ballots are received on account of the same Claim on the same day, such Ballots will be disregarded.

d.     If multiple Ballots are received prior to the Voting Deadline from both a holder of a Claim and someone purporting to be his, her, or its attorney or agent, the Ballot received from the holder of the Claim will be the Ballot that is counted, and the vote of the purported attorney or agent will not be counted.

e.     If multiple Master Ballots are received prior to the Voting Deadline from attorneys representing holders of Channeled Asbestos PI Trust Claims, and such Master Ballots contain supplemental votes on the Plan, such Master Ballot shall be clearly marked as a "Supplemental Master Ballot" and clearly note the changes to the Master Ballot it supersedes.

f.     There shall be rebuttable presumption that any claimant who submits a properly completed superseding Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a) to change or withdraw such claimant's acceptance or rejection of the Plan.

g.     A Ballot that is completed, but on which the claimant did not note whether to accept or reject the Plan, shall not be counted as a vote to accept or reject the Plan.