IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |

EXHIBIT 33 TO EXHIBIT BOOK
ZAI PD TRUST DISTRIBUTION PROCEDURES (ZAI TDP)

EXHIBIT 33

Attached.

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**WRG**
**UNITED STATES ZONOLITE ATTIC INSULATION ("US ZAI") PROPERTY**
**DAMAGE SETTLEMENT TRUST DISTRIBUTION PROCEDURES**

The WRG US ZAI Settlement Trust Distribution Procedures (the "ZAI
TDP") contained herein provide for resolving all US ZAI PD Claims as defined in
the Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of
W. R. Grace & Co., et al. dated February 27, 2009 (as it may be amended or
modified, the "Plan"), including, without limitation, all "Zonolite Attic Insulation
Claims" as defined in the General Instructions For Completing the W. R. Grace &
Co. ZAI Proof of Claim, attached to the Certification of Counsel regarding order:
(a) establishing October 31, 2008 as the proof of claim Bar Date for Zonolite
Attic Insulation claims; and (b) approving the related proof of claim form, Bar
Date notices and notice program. (Dkt. No. 18920, June 13, 2008). The Plan and
the Asbestos Property Damage Settlement Trust Agreement ("PD Trust
Agreement") establish the WRG Asbestos PD Trust (the "PD Trust"). The PD
Trust will have a separate ZAI Trustee who will administer the ZAI Trust Assets,
the ZAI claims process, the ZAI educational program and all related ZAI matters.
The ZAI Trustee shall implement and administer this ZAI TDP in accordance
with the ZAI Class Settlement Agreement and the PD Trust Agreement.

## SECTION I

### Introduction

1.1    **Purpose.** This ZAI TDP has been adopted pursuant to the PD Trust Agreement
and the Plan. It is designed to provide fair, equitable and substantially similar

1

treatment for all US ZAI PD Claims that may presently exist or may arise in the

future in compliance with Section 524(g) of the Bankruptcy Code.

1.2 **Interpretation.** Except as may otherwise be provided below, nothing in this ZAI

TDP shall be deemed to create a substantive right for any Claimant. The rights

and benefits provided herein to holders of US ZAI PD Claims shall vest in such

holders as of the Effective Date of the Plan.

## SECTION II

### Overview

2.1 **US ZAI Trust Distribution Goals.** The purpose of the US ZAI TDP is to treat

Claimants equitably and to provide a low transaction cost method for resolving

US ZAI PD Claims. The ZAI Trustee shall operate the ZAI aspects of the PD

Trust in accordance with this purpose, and limit PD Trust administrative

expenditures for ZAI matters to reasonable amounts required to carry out this

purpose. At no time may the ZAI Trustee waste ZAI Trust Assets. The ZAI

Trustee will only pay legitimate US ZAI PD Claims as verified by compliance

with the evidentiary requirements of this ZAI TDP. This ZAI TDP may be

interpreted by the ZAI Trustee only when an ambiguity exists. The interpretation

shall be consistent with the purposes set forth herein, including providing

payment in a cost-effective manner. Claimants may, but need not, be represented

by counsel when making a Claim under this ZAI TDP. If a Claimant hires

counsel, any fee agreement is a matter of private contract between the Claimant

and counsel.

2

**2.2    Claims Liquidation Procedures.** US ZAI PD Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1.1 below. The ZAI Trustee shall take all reasonable steps to resolve US ZAI PD Claims as efficiently and expeditiously as possible at each stage of claims processing and dispute resolution, including, in the ZAI Trustee's sole discretion, conducting settlement discussions with Claimants or their representatives. The ZAI Trustee shall make every effort to resolve each year all US ZAI PD Claims filed by October 1st of that year and as many of the US ZAI PD Claims filed thereafter as feasible.

**2.3    Application of the Payment Percentage.** After the Allowed Value of a US ZAI PD Claim is determined by the ZAI Trustee using the information provided by the Claimant in accordance with Sections 5.4 (Evidentiary Requirements), 6.1 (Claims Materials), and 7.1 (Showing Required), and a percentage of 55% is applied to the Allowed Value to produce an Allowed Amount, the Claimant shall receive 100% of the Allowed Amount (the "Initial Payment Percentage") unless there are insufficient funds available, based on the ZAI Trustee's determination, to pay all Claimants 100% of their Allowed Amount in a given year. In such case, unless the ZAI Trustee chooses, in conjunction with the ZTAC and the PD FCR, to invoke the provision of Section 4.4 of this ZAI TDP, the Initial Payment Percentage may be adjusted by the ZAI Trustee with the consent of the ZTAC and the PD FCR, to reflect then-current estimates of the ZAI Trust Assets and its liabilities, as well as the then-estimated value of pending and future claims. Any adjustment to the Initial Payment Percentage shall be made only pursuant to

3

Section 4.2 below, and it is the intention of this ZAI TDP that all claims be paid at 100% of their Allowed Amount as quickly as feasible. If the Initial Payment Percentage is decreased at any time below 100% and then increased, or if the provisions of Section 4.4 below have been invoked, Claimants whose claims were liquidated and paid at less than 100% of their Allowed Amount in prior periods under the ZAI TDP shall receive additional payments as provided in Sections 4.3 and 4.4 below. Because there is uncertainty with respect to both the number and size of future US ZAI PD Claims, and the amount of the ZAI Trust Assets, no guarantee can be made of any particular Payment Percentage of a US ZAI PD Claim's Allowed Amount.

2.4    **ZAI Trustee's Determination of the Maximum Annual Payment.** The ZAI Trustee shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds shall be available to treat all present and future holders of US ZAI PD Claims as similarly as possible. In each year, the ZAI Trustee shall be empowered to pay out all of the income earned during the year (net of taxes payable with respect thereto), together with as much of its principal (including 100% where applicable), calculated so that the application of ZAI Trust Assets funds over the PD Trust's life shall correspond with the initial and estimated anticipated future flow of claims (the **"Maximum Annual Payment"**), taking into account the Payment Percentage provisions set forth in Sections 2.3, 4.2 and 4.3. The ZAI Trustee's distributions to all Claimants for a given year shall not exceed the Maximum Annual Payment determined for that year.

4

## SECTION III

### TDP Administration

3.1 **ZAI Trust Advisory Committee (ZTAC).** This ZAI TDP shall be administered by the ZAI Trustee in consultation with the ZTAC. The ZAI Trustee shall obtain the consent of the ZTAC and the PD FCR on any amendments to this ZAI TDP pursuant to Section 8.1 below, and on such other matters as are otherwise required by the PD Trust Agreement, the Plan or this ZAI TDP. The initial members of the ZTAC are Edward J. Westbrook, Esq., Darrell W. Scott, Esq. and, serving *ex officio*, The Honorable Alexander M. Sanders. **Individual ZTAC members** shall choose their successor, unless a ZTAC member should die or become incapacitated, in which case the remaining ZTAC member and the PD FCR shall choose the successor to the deceased or incapacitated member; provided, that if for any reason the remaining ZTAC member and the PD FCR are unable to choose a successor for a deceased or incapacitated ZTAC member, application shall be made to the Bankruptcy Court by any remaining ZTAC member, the PD FCR, or the ZAI Trustee seeking appointment of a successor ZTAC member or members. While solely an *ex officio* member of the ZTAC, the PD FCR shall be entitled to all rights and privileges of regular members of the ZTAC; *provided, however,* that the PD FCR shall vote on issues put to the ZTAC only in the event that there is a tie vote by the ZTAC members. The PD FCR shall nominate his successor, unless he is unable to do so, in which case the successor shall be nominated by the ZTAC. A nominated successor to the PD FCR must be confirmed by the Bankruptcy Court.

5

3.2 **Consent and Consultation Procedures.** In those circumstances in which consultation or consent is required, the ZAI Trustee shall provide written notice to the ZTAC, the PD FCR, and W. R. Grace of the specific amendment or other action that is proposed. The ZAI Trustee shall not implement such amendment, nor take such action, unless and until the parties consult.

### SECTION IV

### Payment Percentage; Periodic Estimates

4.1 **Uncertainty of Grace's US ZAI PD Asbestos Liabilities.** To ensure substantially equivalent treatment of all present and future US ZAI PD Claims, the ZAI Trustee shall determine from time to time the percentage of the full liquidated value of the Allowed Amount that holders of present and future US ZAI PD Claims shall be likely to receive, *i.e.*, the "Payment Percentage" described in Sections 2.3 and 4.2.

4.2 **Computation of Payment Percentage.** As provided in Section 2.3, the Initial Payment Percentage shall be 100% unless decreased by the ZAI Trustee as provided herein after consultation with the ZTAC and the PD FCR. In making any such adjustment, the ZAI Trustee, the PD FCR, and the ZTAC shall take into account the fact that the holders of US ZAI Voting Claims voted on the Plan relying on the fact that the Initial Payment Percentage for all Allowed US ZAI PD Claims would be 100%. This percentage is based on the number of US ZAI Claimants who had filed claims by the US ZAI Bar Date and had undertaken some remedial action that would qualify for reimbursement from the ZAI Trust Assets under the ZAI Term Sheet and Class Settlement Agreement.

6

The Payment Percentage shall be subject to change pursuant to the terms of this ZAI TDP and the PD Trust Agreement if the ZAI Trustee, with the consent of the ZTAC and the PD FCR, determines that an adjustment is required; provided, however, that the Payment Percentage shall not exceed 100%. No less frequently than once every three (3) years, commencing with the first day of January occurring after the Effective Date, the ZAI Trustee shall evaluate the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the ZTAC and the PD FCR. The ZAI Trustee shall also evaluate whether the then-applicable Payment Percentage should be reconsidered at shorter intervals if appropriate or if requested to do so by the ZTAC or the PD FCR.

The ZAI Trustee must base its determination of the Payment Percentage on current estimates of the number and size of present and future compensable US ZAI PD Claims, the value of the ZAI Trust Assets available for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of US ZAI PD Claims. When making these determinations, the ZAI Trustee shall exercise common sense and flexibly evaluate all relevant factors.

4.3     **Applicability of the Payment Percentage.** If a redetermination of the Payment Percentage has been proposed in writing by the ZAI Trustee to the ZTAC and the PD FCR, but has not yet been adopted, all claims in process shall receive the

lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the Claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

If the ZAI Trustee, with the consent of the ZTAC and the PD FCR, makes a determination to increase a Payment Percentage that has been below 100% due to a material change in the estimates of the ZAI Trust Assets and/or liabilities or for any other reason, the ZAI Trustee shall also make supplemental payments to all Claimants who previously liquidated their claims and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated amount of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid to the Claimant with respect to the claim, plus interest on that amount at the rate prevailing for federal court judgments from the time of the initial payment until the supplemental payment.

4.4    **Temporary Cash-Flow Adjustments to Payments.** Since W. R. Grace has obligations to fund the ZAI Trust Assets in the PD Trust on an ongoing, periodic basis as set forth in the ZAI Term Sheet, ZAI Class Action Settlement Agreement and applicable reorganization documents, the ZAI Trustee may determine, with the consent of the ZTAC and the PD FCR, that it is not feasible at the then present time to pay ZAI Claimants 100% of the Allowed Amount due to cash flow issues

8

arising from the timing of payments to the PD Trust by W. R. Grace, and that an adjustment to the Payment Percentage is necessary. In such an event, and notwithstanding any other provision of this ZAI TDP, the ZAI Trustee may pay a US ZAI Claimant less than 100% of the Allowed Amount of an approved claim, and instead may pay that claim and all other claims during the period of insufficient cash flow at a lower rate determined by the ZAI Trustee so as to allow all approved claims to be paid ratably during the entire period of predicted decreased cash flow. The lower percentage payment provided for by this Section shall apply only until the receipt of the next scheduled payment from W. R. Grace. Thereafter, any Claimant who received a payment made at a lower rate pursuant to this provision shall be entitled to a supplemental payment, prior to any other claimants in any FIFO queue, equal to the difference, if any, between the payment already received and the payment that would have been made at the current Payment Percentage, plus interest at the then prevailing federal judgment rate, from the date of the initial payment until the supplemental payment is made.

## SECTION V

### Resolution of US ZAI PD Claims

5.1    **Ordering, Processing and Payment of Claims.**

**5.1.1 Establishment of the FIFO Processing Queue.** The ZAI Trustee shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the **"FIFO Processing Queue"**). The Claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the PD Trust. Claims filed on the

9

same date shall receive the same FIFO number and an identifying subscript (*e.g.* Claim 331(a), Claim 331(b).

**5.1.2 Inapplicability of Tort System Defenses.** It is the intention of this ZAI TDP that valid US ZAI PD Claims will be paid without regard to any defenses that could have been asserted in the tort system except for those requirements set forth in this ZAI TDP: product identification (Section 5.4.1(a) or 5.4.2), verified expenditures (Section 5.4.1.(b)), and ownership interest (Section 5.4.1(c)). No other defenses, affirmative or otherwise, shall be considered in processing a claim, except for fraud or misrepresentation which will result in a claim being denied and the claim referred for future proceedings pursuant to Section 5.6.

**5.1.3 Processing and Payment of Claims.** US ZAI PD Claims that have been allowed shall be paid in FIFO order based on the date their allowance became final (the "**FIFO Payment Queue**"), all such payments being subject to the applicable Payment Percentage, and the Maximum Annual Payment.

5.2     **ZAI Resolution Procedures.** As soon as feasible following establishment of the PD Trust, the ZAI Trustee, with the consent of the ZTAC and the PD FCR, shall adopt procedures for reviewing and liquidating all US ZAI PD Claims. Such procedures shall require that Claimants seeking resolution of US ZAI PD Claims shall first file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 5.4, 6.1 and 6.2 below. Upon filing of a valid proof of claim form with the required supporting documentation, the Claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1.1 above.

10

### 5.3    ZAI Educational Program.

1.    The ZAI Trustee may, in his or her discretion, expend up to $2 million over the first three years after the Effective Date, and up to $500,000 for each three-year period thereafter, to fund an educational program about ZAI, to be developed with the advice and consent of the ZTAC and the PD FCR, and subject to the provisions of Section 5.3.2.

2.    Initially, the content of any such educational program shall be consistent with published EPA guidance concerning ZAI and with the Debtors' US ZAI bar date notice program; provided, however, that the educational program's content shall reflect any material scientific or regulatory changes or developments that pertain to ZAI, in terms and in a manner of publication acceptable to the Reorganized Grace.  In the event the ZAI Trustee and the Reorganized Grace disagree on any matter set forth in this paragraph, the parties shall submit such disagreement to the alternative dispute resolution procedure of Section 5.7.

### 5.4    Evidentiary Requirements.  The US ZAI PD Claim Form will inform prospective Claimants that they must meet the following evidentiary requirements for their claim to be allowed:

1.    For ZAI remedial action taken before the date on which this ZAI TDP is approved and published on the Trust website, a Claimant must submit the information set forth below:

11

(a)     the following documentary or other evidence sufficient to demonstrate that ZAI is or was installed in the structure which is the subject of the claim:

(1)     a receipt or invoice reflecting the purchase of ZAI for the structure; or

(2)     an affidavit from a Claimant who timely filed a US ZAI Proof of Claim and who has direct personal knowledge of events surrounding the installation of ZAI in the structure: (i) attesting that ZAI was installed in the structure; and (ii) attesting to facts establishing his or her direct personal knowledge; or

(3)     a ZAI bag, portion of a ZAI bag, or photograph of a ZAI bag in the structure, with an affidavit from the homeowner or abatement contractor verifying that the bag was found in the structure's attic or other area in question; or

(4)     a certification that vermiculite attic insulation was present in the structure, attested to by a licensed or certified asbestos abatement contractor who removed vermiculite from the structure; or

(5)     a sample of the vermiculite attic insulation (minimum 2 tbsps. of material) with an affidavit by the homeowner or contractor that the insulation came from the structure in question; or

(6)    before and after photographs of the attic or other area in

question depicting the presence of and removal of

vermiculite attic insulation accompanied by an affidavit by

the homeowner or contractor verifying that the material

depicted in the photographs was vermiculite that was

present in that structure; or

(7)    a laboratory report showing the presence of vermiculite in

an attic insulation sample taken from the structure.

(b)    the following documentary evidence to establish the funds

expended by the Claimant to remove, abate or contain ZAI:

(1)    (i) a copy of the contract or invoice specifying the cost of

removing, abating or containing ZAI, and (ii) cancelled

checks or credit card statements reflecting payment of the

specific cost of removing, abating or containing ZAI; or

(2)    where any payment by the PD Trust will be

made directly to the contractor which removed, abated or

contained ZAI: (i) cancelled checks or credit card

statements reflecting payment of the applicable non-

reimbursable portion of the specific cost for removal,

abatement or containment of ZAI, consistent with section

5.4(b)(1); (ii) a copy of the contract or invoice for such

work; and (iii) a certification from the contractor that the

work reflected in such contract or invoice was performed to
completion.

(c)        an affidavit establishing that the Claimant is or was an owner or
tenant of the structure.

2.    For ZAI remedial action taken after the date on which this ZAI TDP is
approved and published on the PD Trust website, and providing that the
testing procedure described below is implemented, a Claimant, in addition
to establishing its costs under Section 5.4.1(b), and its property interest
under Section 5.4.1(c) must comply with Section 5.4.1(a)(1) or
5.4.1(a)(3), or the following:

(a)        If the ZAI Trustee and Reorganized Grace agree that there exists a
feasible, reliable and economical test to distinguish ZAI from non-
ZAI vermiculite attic insulation, a Claimant must submit a sample
of the vermiculite attic insulation (of a size to be determined)
either to a laboratory approved by the PD Trust to conduct such a
test or as otherwise directed by the PD Trust. The PD Trust will
pay for the Claimant's remedial action pursuant to the ZAI TDP
unless the material is determined not to be ZAI. The cost of the
test will be paid by the PD Trust and will not reduce a Claimant's
recovery.

(b)        If the procedure in Section 5.4.2(a) is implemented, and the ZAI
Trustee and Reorganized Grace agree after two years of experience
with the test that the benefits of such a testing program are

14

insufficient to justify its continued use, the ZAI Trustee may discontinue the testing requirement of Section 5.4.2(a) and the procedure set forth in Section 5.4.1 will be reinstated for all Claimants.

(c)   In the event the ZAI Trustee and Reorganized Grace disagree on the determinations in Section 5.4.2(a) or Section 5.4.2(b), the parties shall submit such disagreement to the alternative dispute resolution procedure of Section 5.7.

3.   If the testing procedure outlined in Section 5.4.2(a) is not implemented, then a Claimant must comply with the criteria in Section 5.4.1 for ZAI remedial action taken after the date this ZAI TDP is approved and published on the PD Trust website.

4.   Subject to Section 5.4.5., claims that qualify for payment from the PD Trust in accordance with the ZAI TDP shall be paid 55% of the Allowed Value (provided the 100% payment percentage of Section 2.3 is in effect), but in no event shall the PD Trust pay more than 55% of $7,500 (the latter figure is hereafter referred to as the "Maximum Claim Amount") on any claim; *provided, however,* that (a) commencing on the fifth anniversary of the Effective Date, the Maximum Allowed Value shall be increased by the increase in the Consumer Price Index for the preceding 12 months, and (b) the Maximum Allowed Value shall be increased every year thereafter on the anniversary of the Effective Date by the increase in the Consumer

15

Price Index for the 12 months immediately preceding each such anniversary date.

5.      The ZAI Trustee shall only pay claims that are in compliance with the requirements of the Plan, the ZAI TDP and the ZAI claim form. Notwithstanding the foregoing, the ZAI Trustee may liquidate and pay up to 5 claims per year that, in the ZAI Trustee's discretion, qualify as Extraordinary Claims, but in no event shall the ZAI Trustee pay more than $100,000 cumulatively in any year with respect to such Extraordinary Claims. In addition, the ZAI Trustee may pay up to $25,000 each to the two class representatives in the Barbanti class action (Barbanti and Busch) in recognition of the time, effort and commitment those individuals expended in the ZAI litigation and thereby contributed to the resolution embodied in the ZAI Term Sheet and Class Settlement Agreement.

5.5    **Claims Audit Program.** W. R. Grace, with the input of the ZTAC and the PD FCR, may develop methods for auditing the reliability of the claims and evidence submitted to the ZAI Trustee and the ZAI Trustee's processing of claims to ensure compliance with the ZAI TDP and the PD Trust Agreement. W. R. Grace shall have the right to conduct annual audits of the books, records and claim processing procedures of the PD Trust to:

1.      examine the sufficiency of the documentary and other evidence submitted by any Claimant relating to the installation of ZAI in the house or other building which is the subject of a claim, and the ZAI-related costs incurred by said Claimant; and

16

2.      confirm that PD Trust expenditures have complied with the terms of the

ZAI Term Sheet, the ZAI Class Settlement Agreement, the Plan, the PD

Trust Agreement and the ZAI TDP;

provided, however, that in the event of unusual claiming and/or payment activity,

the Reorganized Grace may, upon reasonable notice to the ZAI Trustee, conduct

audits in addition to its annual audit.

5.6     **Improper or Fraudulent Claims Activity.**  To the extent the ZAI Trustee and

the Reorganized Grace determine that one or more payments made by the ZAI

Trustee to US ZAI Claimants were made in violation of the terms of the ZAI

Term Sheet, the ZAI Class Settlement Agreement, the Plan, the PD Trust

Agreement or the ZAI TDP:

1.      the amounts of such PD Trust payments shall be added to the ZAI Trust

Assets for purposes of calculating the $10 million trigger relating to

deferred contingent payment obligations as set forth in the ZAI Term

Sheet and PD Trust Agreement; and

2.      the PD Trust shall review its claim review and payment procedures.

In the event the ZAI Trustee and the Reorganized Grace disagree over

whether one or more payments were made in violation of the ZAI Term

Sheet, ZAI Class Settlement Agreement, the Plan, the PD Trust

Agreement or the ZAI TDP, the parties shall submit such disagreement to

the alternative dispute resolution procedure of Section 5.7.

3.      To the extent any noncompliant payments were made as the result of

fraudulent conduct on the part of a contractor, Claimant or other person,

the ZAI Trustee shall notify the Bankruptcy Court and the United States

Attorney for the District of Delaware of such fraud and shall provide all

information those entities may request in connection with any

investigation, civil proceedings or criminal proceedings. The PD Trust

may also initiate litigation against the responsible party or parties to

recover such noncompliant payments.

**5.7    Arbitration.**

**5.7.1 Establishment of ADR Procedures.** The ZAI Trustee, with the consent of

the ZTAC and the PD FCR, shall institute non-binding mediation and binding

arbitration procedures for resolving disputes: (1) between the ZAI Trustee and W.

R. Grace or the ZTAC or the PD FCR concerning the operation of the ZAI TDP;

(2) between the ZAI Trustee and a Claimant who contests any matter involving

the ZAI Trustee's decision on a US ZAI PD Claim.

Mediation shall precede arbitration and be conducted informally before a

single mediator chosen by the parties or, failing agreement, by the American

Arbitration Association.

Arbitration shall be conducted by a single arbitrator chosen either by

agreement of the parties or, absent agreement, by an arbitrator selected by the

American Arbitration Association. The arbitration shall be conducted in a cost

effective and efficient manner. The costs (excluding attorneys' fees) of

arbitration shall be borne by the losing party, provided that if the losing party is a

Claimant, and there is a finding by the arbitrator that the Claimant's position was

unreasonable, the costs of the arbitration will be deducted, to the extent possible,

from the Claimant's award.

**5.7.2 US ZAI PD Claims Eligible for ADR.** In order to be eligible for ADR of

a US ZAI PD Claim, the Claimant must first request reconsideration within thirty

(30) days of notification of the ZAI Trustee's decision. The ZAI Trustee will

reconsider its decision and any additional information the Claimant submits and

render a decision within thirty (30) days. If the Claimant is still dissatisfied, the

Claimant must participate in a mediation before a single mediator chosen by

agreement or, failing agreement, by the American Arbitration Association. The

ZAI Trustee and Claimant may submit written statements to the mediator not to

exceed ten (10) pages, and any party may attend mediation by conference call.

**5.7.3 Limitations on and Payment of Arbitration Awards.** The arbitrator shall

not return an award in excess of the then-applicable Payment Percentage

multiplied by the Allowed Amount of a claim, which must be computed in

accordance with the ZAI TDP. A Claimant who submits to arbitration and who

accepts the arbitral award shall receive payments in the same manner as one who

accepts the ZAI Trustee's original valuation of the claim. No interest will be paid

on any award on reconsideration, mediation, or arbitration due to the passage of

time required by the process.

**SECTION VI**

**Claims Materials**

6.1    **Claims Materials.** The ZAI Trustee shall prepare suitable and efficient claims

materials ("**Claims Materials**") for all US ZAI Claimants, and shall provide such

19

Claims Materials on a website for US ZAI PD Claims, as well as in hard copy upon request. The proof of claim form shall also include a certification by the Claimant or his or her attorney sufficient to meet the requirements of Rule 11 of the Federal Rules of Civil Procedure. In developing its claim filing procedures, the ZAI Trustee shall make every effort to provide Claimants with the opportunity to utilize currently available technology at their discretion, including filing claims and supporting documentation over the Internet or in electronic form. The proof of claim form and instructions to be used by the ZAI Trustee shall be developed by the ZAI Trustee with the consent of the ZTAC and the PD FCR after consulting with W. R. Grace and may be changed by the ZAI Trustee with the consent of the ZTAC and the PD FCR after consulting with W. R. Grace.

6.2    **Content of Claims Materials.** The Claims Materials shall include a copy of this ZAI TDP, such instructions as the ZAI Trustee shall approve, and a readily understandable proof of claim form written in simple English. If requested by the Claimant, the ZAI Trustee shall accept information provided electronically.

6.3    **Withdrawal of Claims.** A Claimant can withdraw a US ZAI PD Claim at any time upon written notice to the ZAI Trustee and file a subsequent claim, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of such subsequent filing.

6.4    **Confidentiality of Claimant's Submissions.** All submissions to the ZAI Trustee by a holder of a US ZAI PD Claim, including a proof of claim form and materials related thereto, shall be treated as made in the course of settlement discussions between the Claimant and the ZAI Trustee, and intended by the parties to be

20

confidential and to be protected by all applicable state and federal privileges,

including, but not limited to, those directly applicable to settlement discussions.

The ZAI Trustee will preserve the confidentiality of such Claimant submissions,

and shall disclose the contents thereof only to (a) W. R. Grace as part of the

Claims Audit Program described in Section 5.5 above or (b) only with the

permission of the Claimant, to such other persons as authorized by the Claimant,

in response to a valid subpoena of such materials issued by a Court of competent

jurisdiction, or pursuant to the ZAI Trustee's duty to notify the Bankruptcy Court

or US Attorney of suspected fraudulent activity.  Furthermore, the ZAI Trustee

shall provide the Claimant or counsel for the Claimant notice of any submission

concerning suspected fraudulent activity, and a copy of any subpoena

immediately upon being served.  Nothing in this ZAI TDP, the Plan or the PD

Trust Agreement expands, limits or impairs the obligation under applicable law of

a Claimant to respond fully to lawful discovery in an underlying civil action

regarding his or her submission of factual information to the ZAI Trustee for the

purpose of obtaining compensation for US ZAI PD Claims.

### SECTION VII

### General Guidelines for Liquidating and Paying Claims

7.1    **Showing Required.**  To establish a valid US ZAI PD Claim, a Claimant must

meet the requirements set forth in this ZAI TDP.

7.2    **Transaction Costs to be Minimal.**  Notwithstanding any provisions of this ZAI

TDP to the contrary, the ZAI Trustee shall always give appropriate consideration

to the overall goal of the ZAI TDP to effectuate the processing and payment of

US ZAI PD Claims in a cost-effective manner so that the maximum amount of

ZAI Trust Assets is preserved for payment of claims. The ZAI Trustee shall have

discretion regarding the amount of transaction costs to be expended to ensure that

all valid US ZAI PD Claims are compensated while invalid claims are not.

Nothing herein shall prevent the ZAI Trustee, in appropriate circumstances, from

contesting the validity of any claim against the ZAI Trust Assets in order to

ensure that invalid claims do not deplete the funds reserved for valid claims.

7.3    **Discretion to Vary or Suspend Payments in Event of Limited Liquidity.**

Consistent with the provisions hereof and subject to the FIFO Processing and

Payment Queues, the Maximum Annual Payment, and the Percentage Payment

requirements set forth herein, the ZAI Trustee shall proceed as quickly as possible

to liquidate valid US ZAI PD Claims, and shall make payments to holders of such

claims in accordance with this ZAI TDP promptly as funds become available and

as claims are liquidated, while maintaining sufficient resources in light of the

contingent payments to be made by W. R. Grace as set forth in the ZAI Term

Sheet and PD Trust Agreement, to pay future valid claims in substantially the

same manner.

Because the ZAI Trust Assets and income over time remain uncertain, and

decisions about payments must be based on estimates that cannot be done

precisely, decisions about the Payment Percentage may have to be revised in light

of experiences over time, and there can be no guarantee of any specific level of

payment to Claimants. However, the ZAI Trustee shall use its best efforts to treat

similar claims in substantially the same manner, consistent with its duties as

22

Trustee, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the ZAI Trust Assets face temporary periods of limited liquidity, the ZAI Trustee may, with the consent of the ZTAC and the PD FCR, temporarily limit or suspend payments altogether. In extreme situations, the ZAI Trustee may also, with the consent of the ZTAC and the PD FCR, continue to receive, but suspend processing of claims to conserve resources.

7.4     **Releases.** The ZAI Trustee shall have the discretion to determine the form and substance of the releases to be provided to the PD Trust. As a condition to making any payment to a Claimant, the ZAI Trustee shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a Claimant may, in the discretion of the ZAI Trustee, constitute such a release.

7.5     **ZAI Trustee Disclosure of Information.** Periodically, but not less often than once a year, the ZAI Trustee shall make available to W. R. Grace, Claimants and other interested parties a summary of the number of claims that have been resolved, indicating the total amounts of the awards, the range of the awards and the average award. The ZAI Trustee shall also make available annually to W. R. Grace, the PD FCR, and the ZTAC an audited financial statement. The PD Trust shall file with the Bankruptcy Court an annual report containing its financial statements audited by independent registered public accounts.

23

## SECTION VIII

### Miscellaneous

**8.1    Amendments.**  Except as otherwise provided herein, the ZAI Trustee may amend, modify, delete, or add to any provisions of this ZAI TDP (including without limitation, amendments to conform this ZAI TDP to advances in scientific or medical knowledge or other changes in circumstances), provided it first obtains the consent of the ZTAC and the PD FCR, except that consent must also be obtained from Grace as to any changes to Section 5.3 (ZAI Educational Program); Section 5.4 (Evidentiary Requirements); Section 5.5 (Claims Audit Program); or Section 5.6 (Improper or Fraudulent Claims Activity).  The ZAI Trustee's right to amend shall not apply to the W. R. Grace funding obligations or the payment percentage of 55% as they are set forth in the ZAI Term Sheet and Class Settlement Agreement.  Nothing herein is intended to preclude the ZTAC or the PD FCR from proposing to the ZAI Trustee, in writing, amendments to this ZAI TDP.

**8.2    Severability.**  Should any provision of this ZAI TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this ZAI TDP.  Should any provision contained in this ZAI TDP be determined to be inconsistent with or contrary to W. R. Grace's obligations under the ZAI Term Sheet, Class Settlement Agreement, the Plan or the PD Trust Agreement, the ZAI Trustee with the consent of the ZTAC and the PD FCR may amend this ZAI TDP

24

to make the provisions of the ZAI TDP consistent with the duties and obligations of W. R. Grace as set forth in those documents.

8.3     **Governing Law.**  Administration of this ZAI TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware.