## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139(JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| _____ | ) | **Hearing Date: 3/2/11 @ 9 a.m.** |

**Related Docket Nos.: 26154, 26155,
26241, 26261, 26262, and 26381**

### REPLY IN SUPPORT OF MOTION OF
### BNSF RAILWAY COMPANY FOR RECONSIDERATION
### OF THE MEMORANDUM OPINION REGARDING OBJECTIONS TO
### CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION
### AND RECOMMENDED SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS
### OF LAW  AND THE RECOMMENDED FINDINGS OF FACT, CONCLUSIONS OF
### LAW AND ORDER REGARDING CONFIRMATION OF FIRST AMENDED JOINT
### <u>PLAN OF REORGANIZATION AS MODIFIED THROUGH DECEMBER 23, 2010</u>

BNSF Railway Company ("BNSF") files this reply in support of its Motion to

Reconsider The Memorandum Opinion Regarding Objections To Confirmation (the Memorandum

Opinion) [Docket No. 26154] as well as The Recommended Findings Of Fact, Conclusions Of Law

And Order Regarding Confirmation (the Findings) [Docket No. 26155].

## INTRODUCTION

Although the Plan Proponents now assert that BNSF has not established any

"clear error" that warrants reconsideration, they nevertheless concede that the Memorandum

Opinion contains three errors that need correction.  The Plan Proponents' responsive concessions

corroborate the fundamental need for this Court to revise the Memorandum Opinion and the

Findings.

Specifically, correction is indicated for two express misstatements in the

Memorandum Opinion.  Further, judicial analysis regarding BNSF's *actual* objection, which the

#13919247 v2

Court previously misconstrued (and which the Plan Proponents, perhaps inadvertently, have mischaracterized) is needed.

## RECONSIDERATION ISSUES

### A.    The CNA Settlement Agreement

The Plan Proponents now concede [*see* Joint Opposition at p. 4] that BNSF's objection to the CNA Settlement Agreement (that the Settlement Agreement was impermissibly ambiguous as to whether three BNSF insurance policies were being compromised) was <u>not</u> overruled, although the Court erroneously found otherwise.  *See* Memorandum Opinion, at p. 40, n. 46.

Despite arguing that no "clear error" occurred, the Plan Proponents nevertheless cryptically state that they would "not object" if this Court either deleted footnote 46 in its entirety, or alternatively amended the footnote to state that BNSF's objections were "*overruled, to the extent not resolved.*"  Neither notion is acceptable.

BNSF cannot concur in simply deleting the footnote.  The Memorandum Opinion – a promulgated Opinion of this Court – contains a misstatement concerning treatment of BNSF's objection to the CNA settlement agreement.  Deleting the footnote does not correct this misstatement.  Another court, well into the future, may be examining these confirmation orders.  It should not be left to speculate as to the intention of the Grace reorganization court as to this issue.

BNSF also disagrees that the objection was "consensually" resolved.  This is simply not what occurred.

Rather, the Debtors, in their reply brief regarding the motion to approve the CNA Settlement Agreement, ostensibly offered to provide additional provisions to the Settlement

#13919247 v2

Agreement, but did not actually do so.  (*See* Reply Brief at p. 18, Docket No. 26039).  Further, the assertion contained in their reply brief was insufficient.

At the Settlement Motion hearing, no agreement was reached between BNSF and the Debtors regarding this issue.  As a result, BNSF was constrained to press this objection. After hearing BNSF's position, the Court agreed with BNSF and directed the Plan Proponents to include the additional protections for BNSF.  *See* Transcript of 1/10/11 hearing, at pp. 52-54, p. 87, & pp. 104-105:

> THE COURT:  . . . I will approve it, but I think I do need a different order that incorporates the couple of things that have been put on record. Do I need to go over those again or -- Ms. Baer, are you comfortable with what **I've ruled so far**?
>
> MS. BAER: We understand, Your Honor.

Emphasis added.

However, the various proposals provided by the Debtors after the hearing did not reflect the Court's ruling.  Rather, the Debtors' proposed provisions retained the ambiguity, which would have resulted in a situation where, if a future coverage court found certain facts, the three BNSF policies could be included within the channeling injunction.  The Court's ruling unequivocally required that the order clarify that the three BNSF policies were not included within the settlement agreement or channeling injunction.

Failing to reach agreement, the Debtors unilaterally provided the Court with a proposed order – never circulated to BNSF before its filing – that simply reflected the Court's ruling.  The Debtors' Certification of Counsel expressly acknowledges that the changed to the order were requested by the Court, and that the parties had failed to reach agreement.  *See* Certification of Counsel [Docket No. 26088] at ¶¶ 2, 3 & 11:

On January 10, 2011, the Court heard arguments and granted the Motion for Approval, and the Court requested several modifications to the Debtors' Proposed Order . . . The modifications were to clarify . . . that three insurance policies specifically identified by BNSF are not Subject Policies for purposes of the Settlement Agreement.

Once it had the opportunity to review the proposed order actually presented to the Court, BNSF filed a certificate of counsel stating that it did not object to the proposed form of order, since this version accurately reflected the Court's ruling.

Thus, this objection was *neither overruled nor resolved by agreement of the parties.* The court ruled in favor of BNSF and required the Debtors to amend the order to reflect its ruling. Thus, the statement in footnote 46 on page 40 of the Memorandum Opinion, that BNSF's objections were *overruled* is clearly erroneous and must be corrected.

### B.    BNSF's Contractual Right to Attorneys' Fees

The Plan Proponents concede that an amendment to the Joint Plan resolved the objection discussed by the Court at page 40 of the Memorandum Opinion. Thus, the Court's analysis, at best, creates an inconsistency. For the reasons set forth in BNSF's Reconsideration Motion, it is also erroneous.

The Plan Proponents indicate that they would "not object" to the deletion of these three sentences, but urge that, with the deletion, footnote 46 must also be deleted. As discussed above, footnote 46 must be corrected – not deleted. Whether the Court adopts the Plan Proponents' suggested introductory language to the new paragraph, or writes its own, footnote 46 must be corrected.

### C.    The Joint Plan's Treatment of BNSF State Law Contribution Claims

The District Court requires this Court's analysis on each of the objections interposed by the parties. One of BNSF's objections – that the TDP discriminates against

-4-

holders of Indirect Claims in situations where the Debtors were the sole (or nearly the sole) asbestos actor – has not been addressed and analyzed by the Court. The Plan Proponents concede as much, by recognizing that BNSF's argument focused on the maximum amount of the *award* that could be granted, not on the *payment* that was made. Merely, however, changing the words "paid" to "awarded" does not resolve the issue: if the Court misconstrued the argument, it must provide its analysis of the actual objection interposed by BNSF.

The Plan Proponents themselves confuse BNSF's position, by arguing that the Court addressed this argument when it discussed the objection raised by Montana (and joined in by BNSF) that there should be *no cap* to the award given to an Indirect Claimant. The Court did address the opponents' objection that there should be *no cap*, but did not address the objection that, if a cap is applicable, then, for Indirect Claimants where the Direct Claimant's exposure was 95% or more to Grace asbestos, the cap must be set at the Extraordinary Claims Value:

> And my point is, Your Honor, that capping us to the maximum value is not sufficient to protect our claims that we would have been allowed to. If a cap is appropriate, the cap should be the extraordinary value.

*See* Transcript 1/5/10 hearing, at p. 211. Accordingly, the analysis regarding whether *any* cap should apply is not applicable to the assertion for which BNSF seeks reconsideration, namely that all Indirect Claimants must be entitled to recover an award equal to Grace's several share of liability that the Railroad initially paid to the Direct Claimant.

The Plan Proponents then pronounce that BNSF conceded that the Joint Plan is non-discriminatory because BNSF agreed it should stand in the "shoes" of the Direct Claimant, but then, according to the Plan Proponents, BNSF seeks to stand not in the shoes of the Direct Claimant to whom BNSF provided payment, bur rather in those of a "*fictitious* Direct Claimant

#13919247 v2

who cannot show that there is little likelihood of substantial recovery elsewhere." Reply Brief at p. 7.

This also misstates BNSF's argument.

Having made the *payment* to the Direct Claimant that eliminates the Direct Claimants' claim against the estate, BNSF must have the right to receive an *award* that reflects the payment it made on behalf of Grace's several share of liability. It can not be limited to an *award* that is reduced *solely on the basis that BNSF made payment of Grace's liability in the first instance.* Otherwise, the Joint Plan is discriminatory. The Plan Proponents' own evidence values that several share of liability at the Extraordinary Claim Value.

BNSF's objection, which was misconstrued by the Court and therefore not analyzed, must be addressed: if the Plan Proponents' own expert values the Debtors' several share of liability in cases where 95% or more of the asbestos to which the Direct Claimant is exposed arose from the Debtors at the Extraordinary Claim Value, it is discriminatory to *limit* an Indirect Claimant [such as BNSF] who is required to pay, in the first instance, the Debtors' several share of liability, to an *award* no greater than 25% (and in most instances, only 12.5%) of the Extraordinary Claim Value, where *all* other claimants in Class 6 are entitled to an *award* equal to what the Plan Proponents' experts testified was *100%* of the Debtors' several share of liability. This result is fundamentally discriminatory.

Accordingly, the Court must reconsider its Memorandum Opinion and Proposed Order and (a) correct footnote 46 to reflect that the Court *sustained* BNSF's objection; (b) correct the finding at page 40 of the Memorandum Opinion concerning BNSF's contractual right to attorneys' fees, to reflect that BNSF established such right resulting in the amendment to the

Joint Plan to indicate this entitlement; and (c) sustain BNSF's objection to the Joint Plan on the

basis that the treatment of its Indirect Claims is fundamentally discriminatory.

Dated: February 28, 2011
      Wilmington, Delaware

PEPPER HAMILTON LLP

/s/ James C. Carignan
James C. Carignan (DE No. 4230)
Hercules Plaza, Suite 5100
1313 North Market Street
P.O. Box 1709

Of Counsel:

Wilmington, DE 19899-1709
(Courier No. 19801)

Edward C. Toole, Jr.
Linda J. Casey
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Tel: (215) 981-4000
Fax: (215) 981-4750

Telephone: (302) 777-6500
Facsimile:  (302) 421-8390

Counsel for BNSF Railway Company

Counsel for BNSF Railway Company

#13919247 v2