## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

W.R. Grace & Co., *et al*.                    Bankruptcy No. 01-1139 (JKF)
      Debtor(s)                              Chapter 11
                                    (Jointly Administered)

                                      **Related to Doc. No. 26241, Motion of BNSF Railway Company for Reconsideration of Memorandum Opinion Regarding Objections to Confirmation of First Amended Joint Plan and Recommended Supplemental Findings of Fact and Conclusions of Law and Recommended Findings of Fact and Conclusions of Law and Order Regarding Confirmation of Joint Plan as Modified Through December 23, 2010**

## MEMORANDUM OPINION[1]

      Before the court is the motion of BNSF Railway Company ("BNSF") seeking reconsideration of our opinion and order confirming Debtors' First Amended Joint Plan of Reorganization.[2]  The motion is granted in part (parts (1) and (2) below) and denied in part (part (3) below).

**(1)**      *__Granting reconsideration regarding BNSF's objection concerning contractual right to attorneys' fees__*

      Page 40 of the Opinion, Doc. No. 26154, states that

> There is nothing in the Bankruptcy Code, and BNSF has pointed to
> no case law, that indicates that a plan must pay attorneys' fees
> incurred in connection with the underlying tort claims or the

---

[1]The court's jurisdiction was not at issue.  This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2]Joinders were filed by the State of Montana and the Her Majesty the Queen in Right of Canada.

indemnity or contribution claims arising from those torts.

Preconfirmation, Debtors amended the Joint Plan to address BNSF's contractual right to

attorneys' fees by adding Section 5.14 to the Trust Distribution Procedures ("TDP").  *See* Doc.

No. 24477, Notice of Fourth Set of Modifications to Joint Plan of Reorganization, at Exhibit E,

W.R. GRACE Asbestos PI Trust Distribution Procedures.  We therefore amend the opinion to

add at the end of the sentence quoted above the following new sentence:

> BNSF's objection concerning its contractual right to attorneys fees
> was resolved by the addition of Section 5.14 to the TDP.[3]

The Plan Proponents and counsel for BNSF agreed to this addition at the hearing on the motion

for reconsideration held on March 2, 2011.

**(2)**      ***Granting Reconsideration with Respect to Certain Insurance Policies and Exhibit 5 to
the Joint Plan***

> Footnote 46 on page 40 of the Opinion provides that

> > BNSF filed an objection, Doc. No. 25954, to Debtors' motion to
> > approve a settlement with CNA, Doc. No. 25776, asserting, *inter
> > alia*, that the settlement is ambiguous as to whether policies under
> > which BNSF claims rights as a named insured are covered by the
> > channeling injunction.  A hearing on Debtors' motion to approve
> > the settlement with CNA was held on January 10, 2011, and
> > BNSF's objections were overruled.

Upon consideration of arguments at the March 2, 2011, hearing and again with the agreement of

the Plan Proponents, footnote 46 of the Opinion is amended as follows:

> > BNSF filed an objection, Doc. No. 25954, to Debtors' motion to
> > approve a settlement with CNA, Doc. No. 25776, asserting, inter
> > alia, that the settlement is ambiguous as to whether policies under
> > which BNSF claims rights as a named insured are covered by the

---

[3]We note that the reference to the addition of Section 5.14 is also in footnote 37 of the
Opinion.  *See* Doc. No. 26154 at 31, n.37.

channeling injunction.  A hearing on Debtors' motion to approve
the settlement with CNA was held on January 10, 2011, and, <u>but
for the issue concerning the three insurance policies, which was
resolved by an amendment to Exhibit 5 to the Joint Plan and in the
order approving the CNA settlement, Doc. No. 26106,</u> BNSF's
<u>remaining</u> objections were overruled.

**(3)**    ***Denying Reconsideration with Respect to the Joint Plan's Treatment of BNSF's State
Law Contribution Claims***

BNSF uses alternate terms to describe its claims: contractual indemnity, state law

contribution, common law contribution and, at the March 2, 2011, hearing, common law

indemnity.  BNSF's concern regarding its contractual indemnity was resolved, as noted in

section (1) above, by the addition of Section 5.14 to the TDP.  Regarding its assertion of some

common law right, although BNSF stated in its objection to confirmation of the Joint Plan, Doc.

No. 21769, and in its trial brief, Doc. No. 22410 (filed under seal) that, in addition to contractual

indemnification rights, it was asserting a common law right to contribution,[4] BNSF cited no law

---

[4]In its Plan objection the right to contribution was asserted "as authorized by applicable
state common law for claims asserted against BNSF arising out of Grace's operation of the
Libby mine together with the transportation of its vermiculite over the BNSF rail network."
Doc. No. 21769 at 3, ¶ 7.  In its trial brief, BNSF makes only one reference to a right to
contribution as follows:

> In addition to BNSF's contractual indemnification rights, BNSF
> also asserts a right to contribution from Grace as authorized by
> applicable state common law (principally, Montana) for claims
> asserted against BNSF arising out of Grace's operation of the
> Libby mine and the transportation of its vermiculite over the BNSF
> rail network.

Doc. No. 22410 at 9-10.  However, this sentence follows BNSF's assertion that

> [all of the present and future claims asserted against BNSF arising
> from asbestos-related diseases in Libby, Montana, are subject to
> the indemnification agreement between it and Grace . . . .

(continued...)

3

in support of such a right, and did not mention it in its post-trial brief, Doc. No. 23648, or its

pretrial statement, Doc. No. 22526.  Furthermore, BNSF did not argue or address the issue of a

common law right to contribution at the confirmation hearing.  To the extent any references it

made to "state law rights" is intended to include common law rights, the issue of the effect on

Indirect Claimants' state law rights was addressed in full in the Memorandum Opinion and

Recommendation.  If BNSF is an Indirect Claimant, it will be paid as such.  BNSF alleges that

the Plan discriminates against because BNSF might suffer and pay a judgment (or a settlement)

in state court on theories such as strict or vicarious liability and cannot recover from the Trust

more than what is provided for in the TDP.  We find that there is no unfair discriminatory

treatment of its claim.

Regardless of the label BNSF attaches to its assertion of rights, its contention is that the

Plan is not confirmable because it discriminates against Indirect Claimants in general and BNSF

in particular because most Class 6 Claimants are awarded the full nonbankruptcy value of their

claims Indirect Claimants, including BNSF, cannot receive an award of the full value of their

own claims.[5]  Doc. No. 26241 at 2.  BNSF asserts that the court misconstrued its objection as one

---

[4](...continued)

*Id*. at 9.  Although BNSF's trial brief was filed under seal, the arguments quoted were spread on the record by BNSF.

[5]At the hearing on March 2, 2011, BNSF referred to a "common law indemnity claim." This was the first mention by BNSF of a common law indemnity claim and to the extent BNSF meant "indemnity" in this statement as opposed to "contribution," its motion for reconsideration is denied as it never raised the issue before.  To the extent BNSF meant to refer to a common law contribution claim, it has not pursued this.  It presented no evidence or argument at the confirmation hearing as to such a claim.  We also note that in a footnote to its reference to common law indemnity claim, BNSF referred to "contractual indemnification and contribution" claims.  Doc. No. 21769 at 3, n.2.  BNSF concedes that its contractual claims are addressed in

(continued...)

regarding payment of its claim rather than allowance of its claim.[6]  BNSF states that its plan

objection actually was that most Class 6 Claimants are awarded the full nonbankruptcy value of

their claims but Indirect Claimants, including BNSF, cannot receive an award of the full value of

their claims, including the "extraordinary value" as defined in Section 5.4(a) of the TDP.[7]

_____

[5](...continued)
Section 5.14 of the TDP and that its objections based on contractual indemnity were resolved by
the addition of Section 5.14.

[6]To a certain extent, this is a distinction without a difference.  Regardless of the amount
of its "award" or "allowed claim" (in bankruptcy parlance), its payment is subject to the same
cap applicable to Direct Claimants.

[7]Section 5.4(a) defines "Extraordinary Claims" as

> . . . a PI Trust Claim that otherwise satisfies the Medical Criteria
> for  Disease Levels II-VIII, and that is held by a claimant whose
> exposure to asbestos (i) occurred predominantly as a result of
> working in a manufacturing facility of Grace during a period in
> which Grace was manufacturing asbestos-containing products at
> that facility, or (ii) was at least 75% the result of exposure to
> asbestos or an asbestos-containing product or to conduct for which
> Grace has legal responsibility, and in either case there is little
> likelihood of a substantial recovery elsewhere.  All such
> Extraordinary Claims shall be presented for Individual Review
> and, if valid, shall be entitled to an award of up to a maximum
> extraordinary value of five (5) times the Scheduled Value set forth
> in Section 5.3(b)(3) for claims qualifying for Disease Levels II-V,
> VII and VIII, and five (5) times the Average Value for claims in
> Disease Level VI, multiplied by the applicable Payment
> Percentage; provided, however, that if the claimant's exposure to
> asbestos was 95% the result of exposure to an asbestos-containing
> product or to conduct for which Grace has legal responsibility, the
> maximum extraordinary value shall be eight (8) times the
> Scheduled Value set forth in Section 5.3(b)(3) for claims
> qualifying for Disease Levels II-V, VII and VIII and eight (8)
> times the Average Value for claims in Disease Level VI,
> multiplied by the applicable Payment Percentage.
>
> Any dispute as to Extraordinary Claim status shall be
> submitted to a special Extraordinary Claims Panel established by

(continued...)

BNSF's contention is not well founded.

First, Section 5.4 covers only Direct Claimants.  Section 5.6 covers Indirect Claimants.

Regardless, it is hard to imagine a scenario where an Indirect Claimant would even qualify under

the Extraordinary Claim standard because, to be eligible in that category, at a minimum,

exposure must have "occurred predominantly as a result of working in a manufacturing facility

of Grace during a period in which Grace was manufacturing asbestos-containing products at that

facility, or (ii) was at least 75% the result of exposure to asbestos or an asbestos-containing

product or to conduct for which Grace has legal responsibility."  Doc. No. 24477, Exhibit E, at

34.  Section 5.6 provides a mechanism for an Indirect Claimant to establish its claim if it cannot

meet the "presumptively valid" criteria, as explained in our Memorandum Opinion of January

31, 2011, Doc. No. 26154 at 25-27 and n.30; *id*. at 32, .38; *id*. At 42, n.48.[8]

Next, BNSF argues that there is improper discrimination because, in the tort system, it

might suffer a judgment or enter into a settlement requiring it to pay a Direct Claimant more than

---

[7](...continued)
   the PI Trust with the consent of the TAC and the Futures
   Representative.  All decisions of the Extraordinary Claims Panel
   shall be final and not subject to any further administrative or
   judicial review.  An Extraordinary Claim, following its liquidation,
   shall be placed in the FIFO Payment Queue ahead of all other PI
   Trust Claims except Pre-Petition Liquidated Claims, Disease Level
   I Claims, Existing Claims and Exigent Hardship Claims, which
   shall be paid first, based on its date of liquidation, subject to the
   Maximum Available Payment and Claims Payment Ratio
   described above.

Doc. No. 24477 at Exhibit E, at 34-45.

[8]Common law contribution claims are included in Section 5.6.  *See* Memorandum
Opinion, Doc. No. 26154 at 42, n.48.

what BNSF can recover from the Trust.  However, the Joint Plan is designed to cap payments regarding Grace's liability (regardless of Grace's "share" of the liability) and, if a third party pays Grace's share, to reimburse it in accordance with the terms of the Plan and TDP and in an amount that does not exceed the cap.  To the extent that a Direct Claimant's recovery against Grace is limited as provided in the TDP, any third party that pays the Direct Claimant is subrogated to the interests of the Direct Claimant and can recover no more than the Direct Claimant could have recovered.  This result is not discriminatory, let alone unfairly discriminatory.  11 U.S.C. §1129(b)(1).  Section 1129(b) of the Bankruptcy Code does not prohibit discrimination under a plan, only discrimination that is unfair.  *In re Aleris Intern., Inc.*, 2010 WL 3492554 *31 (Bankr.D.Del. 2010).  *See also In re Bashas' Inc.,* 437 B.R. 874 (Bankr.D.Ariz. 2010); *In re Genesis health Ventures, Inc.*, 280 B.R. 339, 346 (D.Del.2002). Under the Joint Plan in this bankruptcy case, all Indirect Claimants are treated similarly and all Direct Claimants are treated similarly.

The Plan <u>would</u> unfairly discriminate if it were structured as BNSF suggests because, then, Direct Claimants would recover less from the Trust than would Indirect Claimants.  That is, as the Plan is crafted, with respect to payment by the Trust of any Indirect Claim, BNSF is in a position no different from any other Indirect Claimant.[9]  In our view, to accept BNSF's argument that it should be able to recover more from the Trust than the Trust would be required to pay to a Direct Claimant with respect to Grace's liability would defeat the purpose of §524(g) and nullify its effect.  The purpose of §524(g) in asbestos cases is to ensure that a debtor's tort liability,

---

[9]In this regard we are excluding consideration of Section 5.14 which resolved another issue.

present and future, will be satisfied and that both present and future claims will be paid substantially the same amount in substantially the same manner under the same criteria.  If an Indirect Claimant such as BNSF is permitted to recover more than even the Direct Claimant could, the purpose of §524(g) to pay the injured tort asbestos claimants would be defeated and funds that should be reserved for future demand holders will be dissipated.  The Joint Plan confirmed in this case assures that the requirements of §524(g) are met and that its purpose will be fulfilled.

We note that, under a plan of reorganization, a debtor has to pay unsecured creditors what they would receive in a chapter 7.  BNSF's claims in this case are contingent and unliquidated (and possibly disputed if and when they are actually raised) and would not be paid in a Chapter 7.[10]  For purposes of this Chapter 11, its claims were estimated at one dollar for voting purposes only because, as BNSF, concedes, "the total value of its claim is unliquidated." Doc. No. 21769 at 3, n.2.  However, the Joint Plan meets the confirmation standards of the Bankruptcy Code because, if BNSF's claim becomes fixed, it will be paid, if allowed, according to the terms of the TDP.  That is, the TDP provides a mechanism for payment of BNSF's claim if and when it is established that (1) there is a Direct Claim against Grace and (2) BNSF paid the Direct Claim.

BNSF's argument that it seeks to pursue in the motion for reconsideration is that it is

---

[10]BNSF conceded in its objection to the Joint Plan that its claim is unliquidated.  Doc. No. 21769 at 3, n.2.  In its pretrial brief filed under seal, Doc. No. 22410, it states some settlements were reached and payments of the settlements made before a stay of litigation was imposed by this court but the subject matter of the settlements (i.e., whether or not they concerned asbestos claims) was never at issue.  Further, the pretrial brief focused on BNSF's rights under insurance policies.  BNSF's insurance rights are not the subject of the motion for reconsideration.

discriminated against because it will never be paid 100 percent of any claim it may eventually

have.  However, no other creditor in BNSF's class will be paid 100 percent either.  It is, or will

be if its claims ever become liquidated, an Indirect Asbestos PI Claimant in Class 6.  As such, it

is subject to the TDP[11] and is in no position different from any other Indirect Claimant.

DATE:  March 4, 2011                              *Judith K. Fitzgerald*                            rmab

                                                 Judith K. Fitzgerald
                                                 United States Bankruptcy Judge

---

[11]Various objectors raised arguments about what they would be entitled to under state
law.  However, the fact that the Plan limits their recovery against the Trust is not discriminatory.
Section 524(g) replaces state law provisions for recovery for asbestos liability.  The same
analysis applies to the State of Montana and the Her Majesty the Queen in Right of Canada.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

| | |
|---|---|
| W.R. Grace & Co., *et al.* | Bankruptcy No. 01-1139 (JKF) |
| Debtor(s) | Chapter 11 |
| | (Jointly Administered) |

**Related to Doc. No. 26241, Motion of BNSF Railway Company for Reconsideration**

### ORDER

    **AND NOW,** this **4th** day of **March, 2011,** for the reasons expressed in the foregoing Memorandum Opinion it is **ORDERED** that BNSF's Motion for Reconsideration is **GRANTED in part** and **DENIED** in part.

    The Motion for Reconsideration is **granted** and the Memorandum Opinion is amended to add a sentence on page 40 thereof clarifying that BNSF's objection to the Joint Plan with respect to its contractual right to attorneys fees was resolved by the addition of §5.14 to the TDP.

    The Motion for Reconsideration is **granted** and the Memorandum Opinion is further amended to modify footnote 46 thereof to clarify that but for the issue concerning three insurance policies, which was resolved by an amendment to Exhibit 5 to the Joint Plan and in the order approving the CNA settlement, Doc. No. 26106, BNSF's objections to the Joint Plan and to the settlement between Debtors and the CNA companies were overruled.

    The Motion for Reconsideration is **denied** to the extent it seeks a ruling that the Joint Plan is unconfirmable as discriminatory in violation of the Bankruptcy Code.

*Judith K. Fitzgerald*                    **rmab**
Judith K. Fitzgerald
United States Bankruptcy Judge

1