## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| IN RE: | |
|---|---|
| ACandS, Inc. | Case No.: 02-12687 |
| Armstrong World Industries, Inc. | Case No.: 00-4471 |
| Combustion Engineering, Inc. | Case No.: 03-10495 |
| The Flintkote Company | Case No. 04-11300 |
| Kaiser Aluminum Corp. | Case No.: 02-10429 |
| Owens Corning | Case No.: 00-3837 |
| US Mineral Products Company | Case No. 01-2471 |
| USG Corp. | Case No. 01-2094 |
| W.R. Grace & Co. | Case No. 01-1139 |
| Debtors | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IN RE: | |
|---|---|
| Mid-Valley, Inc. | Case No.: 03-35592 |
| North American Refractories Co. | Case No.: 02-20198 |
| Pittsburgh Corning Corp. | Case No. 00-22876 |
| Debtors | |

**OBJECTIONS OF THE LAW OFFICES OF PETER G. ANGELOS, P.C.; BARON & BUDD, P.C.; BRAYTON PURCELL, LLP; HISSEY KIENTZ, LLP; THE LIPMAN LAW FIRM; REAUD, MORGAN & QUINN, INC.; THORNTON & NAUMES, LLP; WATERS & KRAUS, LLP; WEITZ & LUXENBERG P.C.; AND WILLIAMS KHERKHER HART BOUNDAS, LLP; TO DOCUMENTS GARLOCK SEALING TECHNOLOGIES LLC WOULD INTRODUCE IN CONNECTION <u>WITH ITS MOTION SEEKING ACCESS TO RULE 2019 STATEMENTS</u>.**

The Law Offices of Peter G. Angelos, P.C.; Baron & Budd, P.C.; Brayton Purcell, LLP; Hissey Kientz, LLP; The Lipman Law Firm; Reaud, Morgan & Quinn, Inc.; Thornton & Naumes, LLP; Waters & Kraus, LLP; Weitz & Luxenberg, P.C.; and Williams Kherkher Hart Boundas, LLP (collectively, the "Law Firms" with each being a "Law Firm") object as follows to the documents that Garlock Sealing Technologies LLC ("Garlock") proposes to introduce in connection with its Motion[1] seeking access to Rule 2019 Statements in the above-captioned cases ("Cases").

Garlock's counsel showed up at the February 14, 2011 hearing on the Motion (the "February 14th Hearing") with 3 large binders brimming with documents nominally designated by Garlock as Exhibits 1 through 11 (though many of these exhibits consisted of multiple documents). Counsel for the Law Firms first learned of these documents at the February 14th Hearing; it was only after the hearing that Garlock, at the Court's insistence,[2] facilitated review of this large group of documents by interested parties. Another substantial grouping of documents (designated by Garlock as Exhibits A through Q) was attached to Garlock's Motion filed January 10, 2011. Finally, a further document was attached as Exhibit 1 to Garlock's reply in support of the Motion. Garlock's reply was submitted to the Court on February 4, 2011, and leave for Garlock to file it was granted on February 7, 2011.[3]

---

[1]   Motion of Garlock Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in this Court and for Related Relief (Dkt. No. 8096 in *In re Pittsburgh Corning Corp.*).

[2]   Transcript of Hrg. held on February 14, 2011 (*In re Kaiser Aluminum Corp., et al.*, Case No. 02-10429) (the "Feb. 14, 2011 Transcr.") at 36.

[3]   Reply of Garlock Sealing Technologies LLC in Support of Motion for Orders Authorizing Access to 2019 Statements Filed in this Court and for Related Relief (Exhibit A to Dkt. No. 8136 in *In re Pittsburgh Corning Corp.*) (the "Reply").

The Law Firms' objections to Garlock's proposed exhibits are organized below into three groups:  objections to the documents in the binders that first surfaced at the February 14th Hearing, followed by objections to the documents attached to the Motion, and finally, objections to the sole document attached to Garlock's Reply.

## I.    Objections to Documents First Mentioned at the February 14th Hearing.

### A.    Exhibit 1.

Exhibit 1 purportedly consists of twenty 2019 Statements filed in some of the Cases, predominantly *Pittsburgh Corning Corp.* and *W.R. Grace*, by various law firms. Included within the exhibit are 2019 Statements filed by most of the Law Firms, as well as other law firms. Most of the 2019 Statements that comprise the exhibit were filed in late 2004 on the heels of the Court's 2019 Order issued in the Cases. The Law Firms do not object to admission of their 2019 Statements, filed in cases that are currently pending, that are included within Exhibit 1. They do object, however, to the admission of 2019 Statements filed by the Law Firms, or any other law firm, in Cases that are already closed (the "Closed Cases" with each being a "Closed Case").[4]  The Motion is procedurally premature to the extent it purports to seek exhibits to 2019 Statements submitted to the clerk in any of the Closed Cases.[5]

Further, 2019 Statements filed in Closed Cases are neither relevant nor likely to lead to the discovery of admissible evidence as the Closed Cases are closed. Rule 2019 is

---

[4]    The Closed Cases are:  *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del.); *In re Armstrong World Industries, Inc.*, No. 00-4471 (Bankr. D. Del); *In re Combustion Engineering, Inc.*, No. 03-10495 (Bankr. D. Del.); *In re Owens Corning*, No. 00-0837 (Bankr. D. Del.); *In re U.S. Mineral Products Co.*, No. 01-02471 (Bankr. D. Del.); *In re USG Corp.*, No. 01-2094 (Bankr. D. Del.); *In re Mid-Valley, Inc.*, No. 03-35592 (Bankr. W.D. Pa.).

[5]    The Law Firms thus specifically object to the 2019 Statement purportedly filed by Brayton Purcell, LLP, in *Armstrong World Indus.* as this is a Closed Case. The Law Firms' objection also includes the 2019 Statement purportedly filed by another law firm, Early Lucarelli, in *USG Corp.*, also a Closed Case.

inextricably tied to the administration of reorganization cases, administration that ends upon the closure of a case. Given that Garlock has conceded the absence of any interest in the administration of the Closed Cases, 2019 Statements filed in any of them have no possible relevance. Indeed, even in the 5 Cases that are not Closed Cases, all are sufficiently advanced that Garlock could have no plausible interest in any of the Law Firms' compliance therein with Rule 2019.

The Law Firms take no position with respect to the admissibility of the 2019 Statements included within Exhibit 1 filed by other law firms in Cases that remain pending. The Law Firms also note that the purported 2019 Statement filed by Stanley Mandel in *W.R. Grace* appears to be a faulty copy with portions of the text thereon obscured.

**B.    Exhibit 2.**

At the February 14th Hearing, Garlock's counsel described Exhibit 2 as "a summary of the [2019 S]tatements and it summarizes which cases they are from and which law firms filed them and also contains a summary of some statements that are made therein."[6]  The Law Firms object to Exhibit 2 based on their objections to portions of Exhibit 1 (which objections are specifically incorporated) as set forth above. Additionally, the Law Firms object to Exhibit 2 in that the documents it purportedly summarizes represent only a tiny cross-section of the 2019 Statements filed in the Cases and, as noted, most are drawn from just two of the Cases:  *W.R. Grace* and *Pittsburgh Corning Corp.* Furthermore, the 2019 Statements filed of record and electronically docketed say whatever they say and speak for themselves without the selective excerpting Garlock has undertaken in Exhibit 2.

---

[6]    Feb. 14, 2011 Transcr. at 37.

C.  **Exhibit 3**.

This exhibit includes what purports to be four 2019 Statements filed in bankruptcy cases pending in California. Two appear to have been filed in the *Plant Insulation Co.* reorganization, with one of the statements appearing to have been filed by a Law Firm, Brayton Purcell, LLP, and the other by Kazan, McClain, Lyons, Greenwood & Harley ("Kazan McClain"), a law firm represented herein by Ms. Natalie Ramsey and her firm. The other two 2019 Statements included in this exhibit appear to have been filed in the *Thorpe Insulation Co.* reorganization by Kazan McClain and Waters & Kraus LLP, the latter being a Law Firm.

The Law Firms object to the admission of Exhibit 3 in its entirety. A proper foundation is lacking as to the documents that comprise Exhibit 3, and they are neither relevant nor likely to lead to the discovery of admissible evidence—especially since they were submitted in other cases and not pursuant to the 2019 Orders entered in the Cases almost 7 years ago. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 3, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Garlock's counsel noted at the February 14th Hearing that the documents comprising Exhibit 3 "contain detailed information regarding the creditors, those firms represented in those cases, in some cases contain the home addresses of those creditors and contain the

claimed disease type of those creditors." [7]    In point of fact, the home addresses of a

relatively small percentage of the apparent claimants whose names are listed within Exhibit 3

are included within the exhibit. Most claimants' addresses are specified as that of their law

firm. Claimants' disease categories are listed within Exhibit 3, but that simply goes to the fact

that some courts are less vigilant than this Court about keeping concentrated stores of

sensitive personal information off electronic dockets. In such regard, it should be recalled

that the bankruptcy court presiding over Garlock's own chapter 11 is not one of those

courts. Judge Hodges purposefully entered a 2019 Order almost identical to the template

fashioned by this Court.[8]

### D.    Exhibit 4.

Exhibit 4 purports to be Reports of Receipts and Disbursements to the Federal

Election Commission by Obama for America. Garlock's counsel told the Court on February

14th that the exhibit includes 5 out of 37,194 pages of a report filed by filed with the Federal

Elections Commission by Obama for America showing names of individual donors, their

addresses, and in some cases, their occupations and/or employers.[9]  Anticipating the Law

Firms' objection, the Court pointedly asked how that could be relevant to a 2019 motion,

---

[7]    Feb. 14, 2011 Transcr. at 37.

[8]    Honorable George R. Hodges of the United States Bankruptcy Court for the Western District of North
Carolina adhered with near exactitude the approach to Rule 2019 compliance taken in the above-
captioned cases by this Court. *See* Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P.
2019 (*In re Garlock Sealing Technologies LLC, et al.*, Case No. 10-31607, Dkt. No. 631). At a hearing
addressing 2019 compliance in August 2010, Judge Hodges reportedly stated "[M]y inclination would be
to enter an order similar to what Judge Fitzgerald has done, which has received the approval of superior
courts, courts superior to us, and to do something along those lines."  Submission of the Official
Committee of Asbestos Personal Injury Claimants with Respect to the Appropriate Form of Order
Pursuant to Fed. R. Bankr. P. 2019 (*Garlock*, Case No. 10-31607, Dkt. No. 598) at ¶ 1 (*quoting* Transcr. of
Hrg. held on Aug. 26, 2010 (*Garlock*, Case No. 10-31607) at 41-42).

[9]    Feb. 14, 2011 Transcr. at 37.

whereupon counsel said "[i]t shows that the information that is in the 2019 exhibits is not the kind that is protected or that would lead to any undue risk of identity theft."[10]

The Court was entirely correct in understatedly noting that a political action committee's report identifying donors "is a little bit different … from a Rule 2019 statement."[11]  The Law Firms object to Exhibit 4 as not being properly authenticated, lacking a proper foundation, and as being neither relevant nor likely to lead to the discovery of admissible evidence. It is probative of nothing. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 4, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

E.    **Exhibit 5.**

As if an excerpted report on political contributions were not sufficiently random and attenuated with respect to the Motion—seeking, it must be remembered, disclosures made pursuant to Rule 2019—Garlock designated as Exhibit 5 what purports to be the recent Chapter 13 filing in Delaware by one William F. Smith. Garlock's counsel has stated that he zeroed in on this particular petition because of the commonness of the debtor's name.[12]  At the February 14th Hearing, the Court astutely asked "[a]nd that's relevant to a 2019

---

[10]    *Id.* at 38.

[11]    *Id.*

[12]    *Id.*

statement because?[13]  Again, Garlock's counsel responded with the empty observation that "[i]t again shows that the information contained in the exhibits is not the kind the courts will protect and is not going to lead to any undue risk of identity theft."[14]

It would be far too generous to characterize a random individual's Chapter 13 petition and the exhibits to the 2019 Statements in the Cases (with their concentrated stores of sensitive claimant information on CD's) as an "apples and oranges" situation:

- a chapter 13 petition contains information about a solitary debtor. The CD's Garlock covets contain information about tens of thousands of personal injury victims;

- a petition is signed by a debtor who is submitting to the jurisdiction of the Court, while a 2019 Statement is signed by a lawyer to disclose information about the clients his or her firm represents; and

- a petition generally does not include information about a debtor's medical condition or any disease from which he may be suffering—Mr. Smith's petition, for example, does not—while the 2019 Statement exhibits on CD's filed in the Cases most decidedly do.

The Law Firms object to Exhibit 5 as lacking a proper foundation and as being neither relevant nor likely to lead to the discovery of admissible evidence. It, like much of the other "evidence" Garlock proposes to adduce, is probative of nothing. But again, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 5, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the

---

[13]  *Id.*

[14]  *Id.* at 38-39.

issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

    F.    **Exhibit 6.**

    According to Garlock's counsel, Exhibit 6 is an 869-page extract from the Claims Register in *In re American Business Financial Services, Inc.*, 05-10203, Bankruptcy District of Delaware.[15]  According to counsel, it shows the names and addresses of thousands of individual creditors, in many cases the amounts of their respective claims, and other information they were required to provide.[16]  Counsel's belabored and attenuated point is once again to show that a claims registry associated with one case that does not appear to involve mass torts includes creditor information,[17] but counsel persists in ignoring a critical distinction:  an individual creditor's information gets onto claims registries when he or she asserts a claim against the bankrupt's estate, while information about a law firm's clients gets onto a 2019 Statement simply because multiple clients have engaged the firm to represent them. In the latter instance, it's the law firm—not the clients—doing the disclosing. Bar dates, moreover, are not typically set with respect to mass tort claimants in mass tort bankruptcies. None were set in any of the Cases. The vast difference between affirmatively asserting a claim against a bankrupt's estate, on the one hand, and one's counsel complying with an administrative obligation imposed by Rule 2019 in a Chapter 11 case, on the other, is difficult to overstate.

---

[15]    *Id.* at 39

[16]    *Id.*

[17]    *Id.* at 39-40.

The Law Firms object to Exhibit 6 as not being properly authenticated, as lacking a proper foundation, and as being neither relevant nor likely to lead to the discovery of admissible evidence. But again, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 6, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**G.**    **Exhibit 7.**

Not content with larding the record with a claims registry taking up almost two entire reams of paper from a wholly extraneous Chapter 11 case, Garlock also designates, as Exhibit 7, a purported "news article" about the same extraneous case. Counsel has told the Court that the article describes some of the claimants in the case, noting that many were elderly and required to file proofs of claim.[18]  To the extent that one can be discerned, that seems to be counsel's obscure point.

Counsel persists with the faulty analogy that Rule 2019 disclosure by a law firm somehow equates to proofs of claim by the law firm's clients, which is patently outrageous since asbestos claimants were not required to file proofs of claim in any of the Cases.[19] Unlike the  financial—one presumes—creditors in *American Business Financial Services* who

---

[18]    *Id.*

[19]    *Id.* at 24.

apparently filed proofs of claim, claims of asbestos victims in all of the Cases have been

reserved for post-confirmation submission to 524(g) trusts or are provisionally slated to be.

The Law Firms object to Exhibit 7 as hearsay, as lacking a proper foundation, and as

being neither relevant nor likely to lead to the discovery of admissible evidence. And,

assuming solely for the sake of argument that there is some attenuated relevance associated

with Exhibit 7, the Law Firms object to its admission on the basis of Rule 403 of the Federal

Rules of Evidence since its probative value, indulging the generous assumption that there is

any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

by considerations of undue delay, waste of time, or needless presentation of cumulative

evidence.

**H.**     **Exhibit 8**.

Garlock's Exhibit 8 is a 116-page document that, according to counsel, was pulled

from the internet and lists pending cases in the federal *Mardock* proceeding.[20]  Garlock's

counsel has stated that *Mardock* is an MDL proceeding in the Eastern District of

Pennsylvania that concerns maritime asbestos cases. Counsel asserts that the names of

thousands of asbestos personal injury claimants appear on the docket of that proceeding, but

concedes that disease information does not appear on the docket.[21]

The Law Firms object to Exhibit 8 as being not even arguably authenticated, as

lacking a proper foundation, and as being neither relevant nor likely to lead to the discovery

of admissible evidence. And, assuming solely for the sake of argument that there is some

---

[20]    *Id.* at 40.

[21]    *Id.*

attenuated relevance associated with Exhibit 8, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## I.    **Exhibit 9**.

Garlock's Exhibit 9 is a 250-page document that, according to counsel, was pulled from the internet and lists pending cases in the "Texas MDL."[22]  Counsel asserts that the names of thousands of asbestos personal injury claimants appear on the exhibit;[23] as with Exhibit 8, however, disease information is absent.

The Law Firms object to Exhibit 9 as being not even arguably authenticated, as lacking a proper foundation, and as being neither relevant nor likely to lead to the discovery of admissible evidence. And, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 9, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

---

[22]    *Id.* at 41.

[23]    *Id.*

**J.**    **Exhibit 10**.

According to Garlock's counsel, Exhibit 10 is the master ballot cast by Thornton & Naumes, LLP, one of the Law Firms, in *Pittsburgh Corning Corp.*[24]  Counsel notes that it lists claimants on whose behalves the firm cast ballots and includes disease category information with respect to such claimants.[25]

The Law Firms object to Exhibit 10 as lacking a proper foundation and as being neither relevant nor likely to lead to the discovery of admissible evidence. And, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 10, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**K.**    **Exhibit 11**.

Garlock's counsel misleadingly characterizes  Exhibit 11 as "a collection of five documents … that show the public interest and concern regarding the suppression of evidence about exposure to bankrupt products" that are purportedly reflective of "intense public concern."[26]  However, most of the documents comprising the exhibit are notably stale and dated—one even harkens back to 1998—and cannot show anything about any concerns or interest the public at large may harbor. Further, all the documents that

---

[24]    *Id.*

[25]    *Id.*

[26]    *Id.* at 42. Exhibit 11 actually has six components, not five. In the copies of its exhibits that Garlock provided, they are broken down as Exhibit 11(a) through 11(e), with 11(b) consisting of two parts: 11(b)(1) and 11(b)(2).

collectively comprise Exhibit 11 spring from a narrow, partisan constituency hardly representative of the general public.

Exhibit 11(a) is a 12-year-old article about one of the Law Firms pejoratively titled "Toxic Justice" from *The Dallas Observer*, a free, alternative weekly newspaper distributed in and around Dallas, Texas. This article, more than a decade old and from an obscure publication, is not probative of anything with respect to the Motion.

Nor is *The Dallas Observer* article the only component of Exhibit 11 that is significantly dated and tendentious. Exhibits 11(b)(1) and (2) appeared in the *Wall Street Journal* in late 2006 and early 2007, respectively. Disparagingly entitled "Trusts Busted" and "Cuyahoga Comeuppance," respectively, the former was authored by a member of the paper's editorial board, and the latter bears the notation "REVIEW AND OUTLOOK editorial."  For years, the *Wall Street Journal* has been an outspoken antagonist of the plaintiffs' bar. *Forbes*, too, has established itself as a media adversary to the plaintiff's bar. Four-and-a-half years ago it published Exhibit 11(d), an "article" entitled "Double-Dippers" that mentions a few of the Law Firms in passing and indulges in a lot of editorializing.

Of more recent vintage but hardly unbiased is Exhibit 11(e), an essay purportedly published in 2009 by *The Daily Journal Corporation*. Entitled "New Generation of Asbestos Trusts Encourages Double-Dipping," its lead author, Jacob C. Cohn, is a Cozen O'Connor partner who practices, according to his bio appearing in the essay, with Cozen's

"global insurance group and represents insurers in many asbestos-related bankruptcy proceedings as well as in major asbestos and mass tort coverage cases."[27]  The authors' parochial orientation could not be much clearer.

Thus, two-thirds of the 6 components of Exhibit 11 are highly dated—at least four years old—and two-thirds spring from publications long known for pursuing agendas adverse to the plaintiffs' bar and/or from the pens of insurance lawyers whose practices and livelihoods routinely put them at odds with the plaintiffs' bar. They are also clearly in the nature of editorial pieces rather than serious, objective journalism.

The remaining component to the exhibit, Exhibit 11(c), consists of an April 2010 letter to the Acting Comptroller of the United States from the then-ranking minority member of the House Judiciary Committee requesting that the General Accounting Office conduct a study reviewing the transparency of asbestos trusts created under Section 524(g). In his letter, Congressman Lamar Smith references, among other things, articles from *Forbes* and the *Wall Street Journal*, as prompting his request. A letter requesting a study, however— even from a congressman widely recognized as being no friend of the plaintiffs' bar—is not probative of much else.

The Law Firms object to Exhibit 11 in its entirety as hearsay, as lacking proper foundations, and as being neither relevant nor likely to lead to the discovery of admissible evidence.[28]  And, assuming solely for the sake of argument that there is some attenuated

---

[27]   The co-author, according to his bio, is a Cozen O'Connor associate.

[28]   Printed matters purporting to be newspapers or periodicals are self-authenticating pursuant to Fed. R. Evid. 902. Exhibit 11(c), the letter from Congressman Smith, without more, is not. The Law Firms therefore specifically object to Exhibit 11(c) based on the absence of proper authentication.

relevance associated with Exhibit 11 or any of its constituent parts, the Law Firms object to the admission of any portion of Exhibit 11 on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## II.    **Objections to Exhibits Attached to the Motion.**

### A.    **Exhibit A.**

Exhibit A to the Motion is a 19-page affidavit purportedly by Paul Grant, who testifies that he is the President of Garrison Litigation Management Group, Inc., one of Garlock's co-debtors in its jointly-administered reorganization proceeding. According to a footnote in the Motion, the facts set forth in the Motion's background section, which generally purports to summarize Garlock and its asbestos litigation history, are contained in Mr. Grant's affidavit.[29]  The affidavit goes quite a bit further afield, however, discussing what the affiant describes as "the Bankruptcy Wave" that occurred when numerous asbestos defendants sought bankruptcy protection in the first half of the last decade and seems to culminate in a disjointed narrative about changes in state law and a hodgepodge of alleged misconduct in mass tort litigation generally.

As a threshold matter, the Law Firms object to Exhibit A in its entirety, as lacking a proper foundation, as being neither relevant nor likely to lead to the discovery of admissible evidence, and as being replete with hearsay. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit A, the Law Firms

---

[29]    Motion at 4, n.2.

object to the admission of any portion of Exhibit A on the basis of Rule 403 of the Federal

Rules of Evidence since its probative value, if any, is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence.

By way of further objection, the Law Firms note the recital in Exhibit A, at ¶ 2

thereof, that it "is based on personal knowledge and information learned in the course of

[the witness's] corporate duties." This is tantamount to an acknowledgement that the

witness lacks personal knowledge as to some matters that are the subject of his testimony.[30]

The Law Firms object to the exhibit to the extent it is not based on personal knowledge and

to the extent that it embodies statements of opinion or improperly conclusory statements.

### B.    Exhibit B.

Exhibit B purports to be in the nature of a scheduling order issued in Garlock's

bankruptcy case. The Motion states that "[o]n December 9, 2010, Judge Hodges entered an

order directing the parties to 'conduct preliminary discovery related to estimation, for

purposes of formulating a plan of reorganization, of the Debtors' liability for pending and

future asbestos-related claims for personal injury and wrongful death.'"[31]

The Law Firms object to Exhibit B in its entirety as being neither relevant nor likely

to lead to the discovery of admissible evidence. Assuming solely for the sake of argument

---

[30]  By way of example and not limitation, the witness testifies that "[t]he vast majority of Garlock's pre-2000 asbestos-related payments were associated with Asbestos Claims generated through mass assembly-line screenings of workers suspected to have had work-related exposures to products containing asbestos." Motion at 5, ¶ 14. No explanation is given as to how the witness could have personal knowledge of this conclusory averment. Similarly, the witness testifies that "Garrison's local defense counsel reported that many Asbestos Claimants testified that they had no evidence of exposure to products of some or all of the Bankrupts … ." *Id.* at 8, ¶ 20. This, of course, is rank hearsay.

[31]  Motion at ¶ 12 (*quoting* Exhibit B at 2, ¶ 3).

that there is some attenuated relevance associated with Exhibit B, the Law Firms object to the admission of any portion of Exhibit B on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### C.    Exhibit C.

The Law Firms do not object to the admission of Exhibit C, the 2019 Order of this Court entered in *Pittsburgh Corning Corp.* in October 2004.

### D.    Exhibit D & E.

The Law Firms object to the admission of Exhibits D and E, amended 2019 Statements filed in *Pittsburgh Corning Corp.* by Baron & Budd, P.C., and Waters & Kraus, LLP, respectively—each being one of the Law Firms—in December 2004. These exhibits are cumulative, as the identical documents are included in Exhibit 1 addressed above, as to which the Law Firms incorporate by reference their objections and comments set forth above.

### E.    Exhibit F.

The Law Firms do not object to the admission of Exhibit F, which is that certain Order Denying Expedited Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case entered in *Pittsburgh Corning Corp.* on March 25, 2010.

**F.**     **Exhibit G**.

The Law Firms do not object to the admission of the entirety of that certain transcript of proceedings before this Court in *Pittsburgh Corning Corp.* on January 13, 2010. However, they do object to Garlock's selective excerpting from that transcript, and note that Exhibit G includes but a single page of the actual proceedings before the Court recorded in a 69-page transcript. The Law Firms request, pursuant to Rule 106 of the Federal Rules of Evidence, that the Court take judicial notice of the entire transcript.

**G.**     **Exhibit H**.

The Law Firms do not object to the admission of Exhibit H, an objection filed by a half-dozen of the Law Firms to Garlock's expedited motion, in late 2009, seeking access to certain 2019 Statements filed in *Pittsburgh Corning Corp.*[32]

**H.**     **Exhibit I**.

Exhibit I purports to be an Order Granting Motion of Credit Suisse First Boston, as Agent, for Access to Examine Statements Filed Pursuant to Bankruptcy Rule 2019(a) signed by the Court and entered in *Owens Corning*, a Closed Case, more than 6 years ago.

The Law Firms object to the admission of Exhibit I as being neither relevant nor likely to lead to the discovery of admissible evidence. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit I, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, if any, is substantially outweighed by the danger of unfair prejudice,

---

[32]   Dkt. No. 7363.

confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**I.      Exhibit J**.

Exhibit J purports to be an Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other Relief entered in *In re Congoleum Corp.* in September 2004. The Law Firms object to the admission of Exhibit J as being neither relevant nor likely to lead to the discovery of admissible evidence. Another court's directive regarding 2019 compliance in a different case (*i.e.*, not one of the Cases) is simply not relevant where this Court's own directives regarding such compliance in the Cases, its 2019 Orders, are years-old and have been validated by numerous courts, both on appeal and otherwise (as in Garlock's own bankruptcy case). Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit J, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**J.      Exhibit K**.

This exhibit includes what purports to be a 2019 Statement filed by one of the Law Firms in *In re Congoleum Corp.* The Law Firms object to the admission of Exhibit K in its entirety. A proper foundation is lacking with respect to Exhibit K, and it is neither relevant nor likely to lead to the discovery of admissible evidence. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit K, the Law

Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**K.      Exhibit L**.

Exhibit L purports to be a "short form complaint" prepared by one of the Law Firms on behalf of two individual plaintiffs ostensibly for filing in a Maryland state court. Nothing appearing on the face of the exhibit indicates that it was filed or served, though it may well have been. In the Motion, Garlock cites this exhibit for the facile proposition that a personal injury claimant's name and claimed disease must be set out in a complaint filed in the tort system.[33]

The Law Firms object to the admission of Exhibit L in its entirety. Exhibit L has not been properly authenticated, a proper foundation is lacking, and it is neither relevant nor likely to lead to the discovery of admissible evidence. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit L, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

---

[33]    Motion at ¶ 69.

L.    **Exhibit M**.

Exhibit M purports to be responses to written discovery served in 2006 on behalf of two plaintiffs to "Defendants' Master Set of Harris County MDL Interrogatories and Request for Production."  The Plaintiffs in the cases, which according to the case style on the face of the exhibits are pending in two Texas state courts, appear to have been represented in the litigation by a law firm that is not one of the Law Firms. Garlock references this exhibit in the Motion for the proposition that, if not in the complaint, a personal injury claimant's name and claimed disease must be provided in responses to initial discovery requests.[34]

The Law Firms object to the admission of Exhibit M in its entirety. Exhibit M has not been properly authenticated and a proper foundation is lacking. Further, purported discovery responses that may have been served years ago in a case outside of bankruptcy by plaintiffs then represented by a firm that is not one of the Law Firms, it is neither relevant nor likely to lead to the discovery of admissible evidence. Finally, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit M, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

---

[34]    Motion at ¶ 69.

### M.    Exhibit N.

Exhibit N purports to be the voting procedures effectuated and applied in *Pittsburgh Corning Corp.* While *Pittsburgh Corning Corp.* is one of the Cases, voting procedures with respect to a plan of reorganization are quite a bit removed from disclosure pursuant to Rule 2019. The Law Firms object to the admission of Exhibit N in its entirety. A proper foundation is lacking with respect to Exhibit N, which is neither relevant nor likely to lead to the discovery of admissible evidence. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit N, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### N.    Exhibit O.

Exhibit O purports to be a 2019 Statement filed by Motley Rice LLC, which is not one of the Law Firms, in the *Quigley* case, which is not one of the Cases. The Law Firms object to the admission of Exhibit O in its entirety. A proper foundation is lacking with respect to Exhibit O, which is neither relevant nor likely to lead to the discovery of admissible evidence—especially since it was purportedly submitted in another case. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit O, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**O.      Exhibit P**.

Exhibit P purports to be an excerpt from the Trust Distribution Procedures (TDPs) pertaining to the Section 524(g) trust established upon confirmation of a plan in *USG Corp.*, one of the Closed Cases. The excerpt in question appears to include the provision of the TDP that addresses the confidentiality of claimants' submissions.

The Law Firms object to Exhibit P in that a proper foundation is lacking and because the exhibit is neither relevant nor likely to lead to the discovery of admissible evidence. It is probative of nothing with respect to the Motion. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit P, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**P.      Exhibit Q**.

Exhibit Q purports to be a Verified Complaint for Declaratory and Injunctive Relief brought by several trusts established under Section 524(g), together with their respective Trust Advisory Committees and Futures Representatives against, among others, Garlock, certain insurers, and others seeking, among other things, construction and interpretation of the plans of reorganization and associated TDPs in certain cases and injunctive relief barring

discovery from the trusts in excess of that permitted by the plans and TDPs. The complaint in question has been almost entirely dismissed.

The Law Firms object to Exhibit Q as lacking a proper foundation and being neither relevant nor likely to lead to the discovery of admissible evidence. It is probative of nothing with respect to the Motion. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit Q, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### III.   Objections to Exhibit Attached to Garlock's Reply in Support of the Motion.

#### A.   Exhibit 1

Exhibit 1 to Garlock's Reply in support of the Motion purports to be an order issued last December in the *In re Accuride Corp.* bankruptcy pending in the bankruptcy court for the district of Delaware. There, the Court apparently permitted Dow Jones to intervene for the purpose of accessing 2019 statement(s) filed under seal by an ad hoc noteholder group. The Court, it appears, had permitted the group's 2019 disclosure to be filed under seal so that the group could meaningfully appeal from the Court's decision directive that it comply with Rule 2019. A plan was subsequently confirmed in the case, and the group dropped its appeal. Dow Jones sought to intervene, leading to the apparent ruling embodied in Exhibit 1.

The Law Firms object to Exhibit 1 as lacking a proper foundation and as being neither relevant nor likely to lead to the discovery of admissible evidence. As an order issued

by a different court in a different case—not, apparently, a mass tort case—it is probative of nothing with respect to the Motion. The confidentiality provided for in *Accuride* appears to have been intended to be temporary, in the nature of a stay pending appeal, rather than a principled attempt to balance competing disclosure and privacy interests as the Court's 2019 Orders clearly were. Further, assuming solely for the sake of argument that there is some attenuated relevance associated with Exhibit 1, the Law Firms object to its admission on the basis of Rule 403 of the Federal Rules of Evidence since its probative value, indulging the generous assumption that there is any at all, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

WHEREFORE, the Law Firms respectfully pray that their above and foregoing objections to Garlock's exhibits be, in all things, sustained.

Dated:  March 4, 2011

/s/ Peter J. Ashcroft
Peter J. Ashcroft (PA I.D. #87317)

**BERNSTEIN LAW FIRM, P.C.**
Suite 2200 Gulf Tower
Pittsburgh, PA 15219
pashcroft@bernsteinlaw.com
(412) 456-8107
(412) 456-8255 (facsimile)

/s/ Daniel K. Hogan
Daniel K. Hogan (De. Bar No. 2814)

**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599

-and-

**STUTZMAN, BROMBERG, ESSERMAN &**
**PLIFKA, A Professional Corporation**
Sander L. Esserman TX Bar No. 06671500
David A. Klingler TX Bar No. 11574300
David J. Parsons TX Bar No. 24037238
Cliff I. Taylor TX Bar No. 24042007
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900
(214) 969-4999 (facsimile)

**ATTORNEYS FOR THE LAW FIRMS**