## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| IN RE: | |
|---|---|
| ACandS, Inc. | Case No.: 02-12687 |
| Armstrong World Industries, Inc. | Case No.: 00-4471 |
| Combustion Engineering, Inc. | Case No.: 03-10495 |
| The Flintkote Company | Case No. 04-11300 |
| Kaiser Aluminum Corp. | Case No.: 02-10429 |
| Owens Corning | Case No.: 00-3837 |
| US Mineral Products Company | Case No. 01-2471 |
| USG Corp. | Case No. 01-2094 |
| W.R. Grace & Co. | Case No. 01-1139 |
| Debtors | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IN RE: | |
|---|---|
| Mid-Valley, Inc. | Case No.: 03-35592 |
| North American Refractories Co. | Case No.: 02-20198 |
| Pittsburgh Corning Corp. | Case No. 00-22876 |
| Debtors | |

**RESPONSE OF THE LAW OFFICES OF PETER G. ANGELOS, P.C.;
BARON & BUDD, P.C.; BRAYTON PURCELL, LLP; HISSEY KIENTZ, LLP;
THE LIPMAN LAW FIRM; REAUD, MORGAN & QUINN, INC.;
THORNTON & NAUMES, LLP; WATERS & KRAUS, LLP;
WEITZ & LUXENBERG P.C.; AND WILLIAMS KHERKHER HART BOUNDAS, LLP,
TO THE MOTION OF GARLOCK SEALING TECHNOLOGIES TO INTERVENE
<u>FOR THE LIMITED PURPOSE OF SEEKING ACCESS TO JUDICIAL RECORDS</u>**

The Law Offices of Peter G. Angelos, P.C.; Baron & Budd, P.C.; Brayton Purcell, LLP; Hissey Kientz, LLP; The Lipman Law Firm; Reaud, Morgan & Quinn, Inc.; Thornton & Naumes, LLP; Waters & Kraus, LLP; Weitz & Luxenberg P.C.; and Williams Kherkher Hart Boundas, LLP (collectively, the "Law Firms" with each being a "Law Firm") hereby file this response opposing the Motion of Garlock Sealing Technologies LLC to Intervene for the Limited Purpose of Seeking Access to Judicial Records (the "Motion to Intervene")[1] and respectfully submit as follows.

# I.
# INTRODUCTION

Garlock, despite failing to articulate any actual financial or legal interest in the Bankruptcy Cases, seeks to intervene in a dozen cases to "vindicate" illusory "First Amendment, common law and statutory rights of access" to materials provided in compliance with Rule 2019 in those cases under orders requiring that those materials be kept confidential (the "Confidential 2019 Materials"). Although this Court should—ultimately—find on the merits that Garlock may not prevail on its motion seeking access to the Confidential 2019 Materials,[2] Garlock must first either: 1) establish that it is a party in interest in these Bankruptcy Cases, with standing under § 1109(b) to appear and be heard, or 2) establish cause sufficient for this Court to grant permissive intervention under Rule 2018(a). Garlock is clearly not a party in interest, and makes no showing of cause that would persuade this

---

[1] Garlock filed identical Motions to Intervene in all twelve of the above-captioned cases (the "Bankruptcy Cases", with each being a "Bankruptcy Case") at the following docket numbers *In re ACandS, Inc.* at Dkt. No. 3659, *In re Armstrong World Industries, Inc.* at Dkt. No. 10720, *In re Combustion Engineering, Inc.* at Dkt. No. 3399, *In re The Flintkote Company* at Dkt. No. 5692, *In re Kaiser Aluminum Corp.* at Dkt. No. 10043, *In re Owens Corning* at Dkt. No. 20980, *In re US Mineral Products Company* at Dkt. No. 3896, *In re USG Corp.* at Dkt. No. 12616, *In re W.R. Grace & Co.* at Dkt. No. 26356, *In re Mid-Valley, Inc.* at Dkt. No. 2790, *In re North American Refractories Co.* at Dkt. No. 6997 and *In re Pittsburgh Corning Corp.* at Dkt. No. 8161.

[2] Motion of Garlock Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in the Court and for Related Relief (the "2019 Access Motion"), filed on January 10, 2011, in these Bankruptcy Cases.

Court to permit it to intervene[3] in the Bankruptcy Cases for the purpose of litigating whether it is entitled to the relief sought by its 2019 Access Motion. Garlock's attempt to co-opt the indulgence sometimes paid to the press in intervening to seek access to judicial records is particularly inappropriate for a private litigant with a partisan agenda. This Court should not put the debtors, other estate fiduciaries and creditors in the Bankruptcy Cases (particularly the Closed Cases) to the burden of responding to Garlock's repeated attempts to access the Confidential 2019 Materials.

## II.
## RESPONSE

**A.  Garlock lacks standing to participate in the Bankruptcy Cases in general, and to gain access to the Confidential 2019 Materials in particular as it is not a party in interest under § 1109(b).**

Garlock initially suggests that it need not seek this Court's permission to intervene in the Bankruptcy Cases and that it has standing to demand access to the Confidential 2019 Materials without seeking leave of this Court. Garlock Motion to Intervene at 4 ("formal intervention is not necessary to grant Garlock the relief it seeks pursuant to the 2019 Access Motions"). Garlock must, by necessary implication, be suggesting that it has standing as a party in interest under the Bankruptcy Code to seek access to the Confidential 2019 Materials. The Bankruptcy Code confers a broad grant of standing to a party in interest in a Bankruptcy Case:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity

---

[3] This is separate and distinct from Garlock's request that this Court reopen the seven cases that are currently closed at Garlock's request. Garlock filed identical Motions to Reopen in seven of the above captioned cases (the "Closed Cases") at the following docket numbers: *In re ACandS, Inc.* at Dkt. No. 3658, *In re Armstrong World Industries, Inc.* at Dkt. No. 10719, *In re Combustion Engineering, Inc.* at Dkt. No. 3398, *In re Owens Corning* at Dkt. No. 20979, *In re US Mineral Products Company* at Dkt. No. 3895, *In re USG Corp.* at Dkt. No. 12615, *and In re Mid-Valley, Inc.* at Dkt. No. 2789 (collectively the "Motion to Reopen"). Substantially contemporaneously with this response in opposition to the Motion to Intervene, the Law Firms have filed a response in opposition to the Motions to Reopen.

-3-

> security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter

11 U.S.C. § 1109(b). Granted a right to be heard on issues in the case, a party in interest need not seek to intervene in a bankruptcy case. As one Court has noted:

> Rule 2018(a) provides for intervention by entities not otherwise having a right to participate in the bankruptcy case under § 1109 or other provisions … [c]onsequently, an entity given the right to be heard under § 1109 need not seek leave under Rule 2018(a) to intervene in a case.

*In re Addison Community Hospital Authority*, 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994). An entity lacking party in interest standing must seek intervention under Rule 2018(a).

From where might Garlock's supposed § 1109(b) standing spring? This Court already indicated that Garlock is not a party in interest in the Bankruptcy Cases, stating at the initial hearing on the 2019 Access Motion that "I don't have a party in interest because Garlock didn't even appear in those cases." Feb. 14, 2011 Hrg. Transcr. at 12. In another context, this Court has ruled that it lacks standing to object to confirmation of a plan in one of the Bankruptcy Cases.[4] In the 2019 Access Motion, Garlock repeatedly asserted that it "was likely a party-in-interest in all the bankruptcy cases," claiming that "[i]n several of the bankruptcy cases, Garlock is a creditor or potential creditor of the debtors by reason of, among other things, rights of indemnity or contribution it may have against such debtors." 2019 Access Motion at ¶¶ 65 and 87. In the face of the inescapable fact that it had never filed a proof of claim in any of the bankruptcy cases and was most certainly not a creditor (and given that *potential creditors*—whatever they might be—clearly lack party

---

[4] *See* Memorandum Opinion Regarding Objections to Confirmation of First Amended Joint Plan of Reorganization and Recommended Supplemental Findings of Fact and Conclusions of Law (entered in the *W.R. Grace* case on January 31, 2011 at Dkt. No. 26154) at 37 ("[Garlock] has not established party-in-interest standing in Grace's case").

in interest standing), Garlock backed off this claim at the February 14, 2011 hearing on its Motion for Access, resting on a simple, conclusory assertion that "we clearly do have standing to appear and seek public access." *See* Feb. 14, 2011 Hrg. Transcr. at 69. Garlock, then, appears to base its claim of standing on a bald assertion of a right to "public access." The Motion to Intervene does nothing other than repeat the erroneous assertion that Garlock has standing without elaborating as to why it might be a party in interest in any of the Bankruptcy Cases.

Party in interest status in bankruptcy requires much more than a bare assertion that one has it. As *Colliers* notes:

> A "party in interest" under section 1109(b) is any person with a direct financial stake in the outcome of the case, including the debtor, any creditor, and any equity participant. In addition, certain representatives of persons with direct financial interests may also qualify as a "party in interest," including a chapter 11 trustee, creditors' committee, equity security holders' committee or indenture trustee … a person not expressly enumerated in section 1109(b) may also qualify as a "party in interest" if the person possesses a significant legal (as opposed to financial) stake in the outcome of the case.

9 Lawrence P. King, *et al.,* COLLIER ON BANKRUPTCY § 1109.02[1] (15th ed. rev. 2008). In the Motion to Intervene, Garlock invokes its constitutional rights as if their mere incantation were sufficient to confer party in interest standing in a dozen reorganizations, many already closed. Motion to Intervene at 3 ("Garlock has invoked its First Amendment, common law and statutory rights of access to the Rule 2019 statement exhibits, which are judicial records of this Court, because of its compelling need to access the information contained in the 2019 Exhibits."). The clear implication is that Garlock believes it has standing as a party in interest to appear and seek the Confidential 2019 Materials based purely on its status as a "member of the public." This is a baseless assertion, and provides absolutely no standard to guide the grant of party in interest standing: if Garlock has standing

under these circumstances, each and every member of the public has such standing, and the imposition of a standard governing the right to appear and be heard in a bankruptcy case is rendered meaningless. This Court should find that Garlock lacks standing to appear in the Bankruptcy Cases under the auspices of § 1109(b) and require it, if it can, to establish due cause to intervene under Rule 2018(a).

**B.    Permissive intervention under Bankruptcy Rule 2018(a) is committed to the sound discretion of the bankruptcy courts, and this Court should deny Garlock's Motion to Intervene as it has proven no cause to intervene.**

As it is not a party in interest in any of the Bankruptcy Cases, Garlock must move this Court for permission to intervene in the Bankruptcy Cases before it may, by motion, seek access the Confidential 2019 Materials under the Rule 2019 Orders. With the same cavalier disregard for rules and procedures it displayed with regard to reopening the Closed Cases, Garlock included a sparse paragraph requesting this relief as an afterthought in its 2019 Access Motions. This procedurally improper treatment was—rightly—rejected by this Court, which demanded that Garlock seek to intervene in the Bankruptcy Cases before its request for access to the Confidential 2019 Materials could be considered.

Permissive intervention is governed by Rule 2018 which provides, in relevant part:

> In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

Fed. R. Bankr. P. 2018(a). A grant of permissive intervention is entrusted to the sound discretion of the bankruptcy court. *See*, e.g., *In re Hyde Park Partnership*, 73 B.R. 194, 196 (Bankr. N.D. Ohio 1986) ("[T]he granting of permissive intervention is within the court's discretion."); *Addison Community Hospital*, 175 B.R. at 651 ("Granting permissive intervention is within the court's discretion."); *In re Stephenson*,

415 B.R. 436, 441 (Bankr. D. Idaho 2009) ("[Rule 2018(a)'s] language (*i.e.*, "may permit") gives the Court discretion in deciding whether to grant leave to intervene."). Garlock bears the burden of proof to establish cause to intervene. *Stephenson*, 415 B.R. at 441 ("The movant bears the burden of setting forth sufficient grounds for intervention").

Garlock makes only the most cursory of attempts to articulate cause for intervention in the Bankruptcy Cases. Garlock begins with a bare assertion of "need" for information it claims is relevant to its reorganization:

> In its bankruptcy case, Garlock is seeking to address its asbestos liabilities and reorganize, which necessitates that Garlock obtain an accurate picture of its current and future asbestos-related liabilities. The Rule 2019 statement exhibits are relevant to an assessment of those liabilities

Motion to Intervene at 3. Garlock contends that it has sought access to the Confidential 2019 Exhibits because of its compelling need to access the information." *Id.* Garlock asserts it has a right to intervene simply because it cannot have access to the Confidential 2019 Exhibits:

> Garlock, in particular has a right to intervene because its access to the 2019 Exhibits is being impeded and it needs the information contained therein for its own bankruptcy reorganization

*Id.* at 4. Finally, Garlock concludes that:

> by virtue of the fact that Garlock cannot obtain access to the 2019 Exhibits without an order from this Court, Garlock has established cause to intervene in the Bankruptcy Cases—both open and closed— to seek access to the 2019 Exhibits.

*Id.* at 10.

Cause, however, requires a concrete and tangible interest as opposed to a mere assertion of need or the suggestion that one is prevented from doing as one pleases by a court order in a case to which one is a stranger. As another court has

observed: "Cause constitutes an economic interest in the case or one of its aspects or a concern with its precedential ramifications." *Addison Community Hospital*, 175 B.R. at 651. *See also*, *Stephenson*, 415 B.R. at 441 ("'Cause' under Rule 2018(a) may be shown by establishing an 'economic interest [in the pending matter]'"). In the *Addison Community Hospital* case, a group of concerned citizens was denied permission to intervene in the Chapter 9 bankruptcy of the Hospital Authority, lacking the necessary concrete interests to warrant the court to permit intervention. *See also*, *In re Morris Publishing Group LLC*, 2010 WL 599393 (Bankr. S.D. Ga. Feb. 10, 2010) (a group of individuals who described themselves as community activists or readers of a newspaper published by the Debtors were denied permission to intervene to object to Debtor's Plan, lacking the necessary economic or other cognizable interests).

One court in this Circuit has provided a useful list of factors to be considered in determining whether a party has established cause to intervene under Rule 2018(a):

> Courts have looked to various factors to allow intervention including 1) whether the moving party has an economic or similar interest in the matter; 2) whether the interest of the moving party are adequately represented by the existing parties; 3) whether the intervention will cause undue delay to the proceedings; and 4) whether the denial of the movant's request will adversely affect their interest.

*In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997). Several of these factors are instructive here. Garlock has no economic or similar interest in the Bankruptcy Cases: it is a debtor in its own bankruptcy pending in another district within another circuit, and there are no financial or other ties between Garlock and the debtors in the Bankruptcy Cases. Indeed, in the seven Closed Cases, the debtors have long since reorganized, leaving in their place § 524(g) trusts to compensate for the respective debtor's asbestos liabilities. Garlock has no legitimate interest in the

Bankruptcy Cases that requires intervention to vindicate. Moreover, Garlock's multiple filings in the Bankruptcy Cases have already caused, and will continue to cause, delay and disruption to the debtors, estate fiduciaries, creditors of the estates and, not least, this Court, which has to rule upon Garlock's seemingly unending stream of pleadings (not to mention the strain that providing Garlock the Confidential 2019 Materials might place upon the respective Clerks' offices).

Other courts have also considered the existence of undue delay or prejudice to actual parties of paramount importance when deciding whether to permit a third party to intervene. *See*, e.g., *Hyde Park*, 73 B.R. at 197 ("In deciding whether the grant of intervention is proper, the court must consider if undue delay or prejudice to the original parties would result."). In *Hyde Park*, the court denied the motion of the unsecured creditors' committee in an individual partner's bankruptcy case to intervene as party in interest in the partnership's bankruptcy, holding that:

> Both undue delay and significant unnecessary increases in costs would result if movant were permitted to intervene. The estate would be burdened by the added delay brought by the addition of another party to the proceedings and the extra expense of another law firm's fees to pay without the benefit of a new approach to the problems in the case.

*Id.* This concern is multiplied many times over here. Garlock freely admits that it intends no benefit to the estates of the Bankruptcy Cases but rather seeks the information for use in its own case. Motion to Intervene at 4 ("it needs the information contained therein for its own bankruptcy reorganization"). Only Garlock would reap any benefit from access to the Confidential 2019 Materials, while the actual parties in interest in the Bankruptcy Cases are subjected to only delay, disruption and—in the case of the creditors in respect of whose information the Confidential 2019 Materials are sought—a marked danger of prejudice from the

release of their sensitive and confidential information to an adversary.[5] Garlock's alleged need for the Confidential 2019 Materials bears absolutely no relation to the purpose for which the materials were collected: the verification of agency in the Bankruptcy Cases.

Garlock bears the burden of establishing cause to intervene in the Bankruptcy Cases for the purpose of seeking access to the Confidential 2019 Materials. However, it has not squarely attempted to address the issue of cause, relying instead on bare assertions of need for its bankruptcy case and a contention that it might obtain relevant information after gaining access to the Confidential 2019 Materials. Garlock attempts to bypass a required showing of cause by invoking an allegedly unfettered right of public access to any materials that fall under the control of a Bankruptcy Court. But the grant of permission to intervene in the Bankruptcy Cases resides squarely in this Court's sound discretion. Given the lack of a legitimate rationale for affording Garlock access, and the attendant burden,

---

[5] Garlock is dismissive of the notion that granting access to the Confidential 2019 Exhibits would prejudice any party "whose interests are required to be considered," noting that courts in other circumstances have held that "allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents is insufficient to justify judicial endorsement of an umbrella confidentiality agreement" and contending that "there is simply no record that has been made or could be made" to deny Garlock's right to intervene. Motion to Intervene at 11. The prejudice is evident, as firms submitted the Confidential 2019 Materials with the understanding that they would be kept private and released only upon a showing of cause by an appropriate party with a legitimate interest in the materials. Indeed, Garlock's counsel, in describing the 2019 Orders entered by this Court to the Judge in its own bankruptcy case, contrasted the 2019 Order contemplated in the *Garlock* case with those entered here, noting that: "In Judge Fitzgerald's case, it is important for you to know that she didn't enter the order until the law firms came in and they attempted to make some showing on why the language should be protected. In fact, the original order that she entered required that all of the information be on the public record. So law firms came in, they provided evidence, they made a showing. She entered an order based on that." Transcript of Hearing in *In re Garlock Sealing Technologies, Inc., et al.*, (Bankruptcy Court for the Western District of North Carolina, Case No. 10-31607) (Dkt. No. 633) at 16-17. Garlock's counsel also contended that the showing of cause to keep information confidential under § 107 was made in this Court, noting that: "Apparently, you know, there were appeals and appellate courts got to review her order in the context of the evidence that supported that relief." *Id.* at 18. A true and correct copy of the relevant portions of this transcript is attached hereto as Exhibit A.

expense and prejudice to actual parties in interest in the Bankruptcy Cases, this Court should decline Garlock's request to intervene.

**C.    Garlock is disingenuous in couching its actions in the Bankruptcy Cases as a pursuit of First Amendment goals; Garlock is merely a private litigant seeking to embark upon a massive fishing expedition.**

Garlock misleadingly cites a number of cases in support of its intervention where members of the press were granted permission to intervene in cases to seek judicial records. Garlock states: "The Third Circuit has routinely found, as have other courts, that third parties have standing to vindicate the rights of access to judicial records." Motion to Intervene at 8 (internal quotations omitted). The showing required is conveniently slender, according to Garlock, and "there need only be an obstacle to access to judicial records and an injury that a decision to provide access to those records would address." *Id.* Garlock, accordingly, asserts standing because it wants the Confidential 2019 Materials, it cannot have them without order of this Court, and its "injury" would be redressed by providing access to Garlock. *Id.* at 8-9. This, insists Garlock, is sufficient for this Court to permit Garlock to intervene to seek access to the Confidential 2019 Materials.

Garlock fails to make clear, however, that the two cases it cites for the notion that the Third Circuit "routinely" grants access to judicial records to third parties involved requests from members of the press seeking to vindicate a public right of access *on behalf of the public at large*.[6] Garlock leans heavily on the decisions in

---

[6] Not that members of the press would necessarily be granted access to the Confidential 2019 Materials if they were to seek to intervene for those purposes. There are many good reasons why the Confidential 2019 Materials should stay confidential even if asked for by an entity other than Garlock and regardless of the reason why access may be sought. The decision to keep the Confidential 2019 Materials was entered into to balance the privacy rights of the sick and infirm with the limited need for disclosure to verify agency in bankruptcy cases. Even the press is not always granted access to sealed materials they might seek. *See, e.g.*, *In re Thow*, 392 B.R. 860 (W.D. Wash. 2007) (member of the press was permitted to bring motions for access to Rule 2004 examination of debtor in a Chapter 15 proceeding because the public interest of the media in access was sufficient cause, but was not entitled to access on the merits). Garlock cannot even pass the

-11-

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) and *In re Alterra Healthcare Corporation*, 353 B.R. 66 (Bankr. D. Del. 2006) as support for its assertion of a right to intervene in the Bankruptcy Cases. Yet the third parties seeking access in both *Pansy* and *Alterra* were newspapers with a legitimate claim to represent the public interest, not private litigants bent on combing through Confidential 2019 Materials in search of evidentiary support for outlandish theories of estimation in its own Chapter 11 case. Garlock reaches in vain for cases involving private litigants successful in intervening in cases in which they lack interest, finding only dicta in two cases permitting parties with some such interest to seek access by means other than Rule 2018(a).[7]

While the question of cause to intervene is separate and distinct from the merits of Garlock's request for access (which has been thoroughly debunked in prior pleadings), this Court should not allow Garlock to cloak itself in the garb of

---

hurdle of showing cause to seek access by permissive intervention, lacking any semblance of a public interest in the materials.

[7] Garlock cites the case of *Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Associates*, 800 F.2d 339 (3d Cir. 1986) as authority for the proposition that the Third Circuit makes no distinction between media outlets and private litigants when it comes to intervening to seek sealed documents. Motion to Intervene at 9. *Rittenhouse* is readily distinguishable from the instant case. The case is not about intervention, and the Third Circuit did not consider whether the entity seeking to unseal the documents at question in the case had a right to intervene as the applicant was a party to other, related litigation involving the same parties. *Id.* at 341 n. 2 ("[N]o motion to intervene was made here because FAB III was already a party in one of the two cases in which the motion was filed. It would be a needless formality to require FAB III to return to the district court to file a motion to intervene in the Bank-HRA suit at this late date"). Garlock is not a party to any of the Bankruptcy Cases (indeed, this Court has specifically held it *lacks* standing in the *WR Grace* case), and proving cause to intervene is no "needless formality" here. Similarly, the other case cited by Garlock, *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157 (3d Cir. 1993) also does not appear to squarely address the issue of intervention. *Id.* at 161 n. 5 ("Although AET has not contested the procedure by which Burstein sought to gain access to the sealed records, we note that a district court may properly consider a motion to intervene permissively for the limited purpose of modifying a protective order"). In both cases, however, the parties seeking to access sealed records had some relationship to the case in which intervention was sought, either as a subcontractor with a financial interest in the case (*Rittenhouse*) or a shareholder of one of the settling parties suing the company whose shares he owned for securities fraud (*Leucadia*). Garlock is a stranger to the Bankruptcy Cases with no tangible connection and relies merely upon the rights of the "public" (and an unsubstantiated claim that it "needs" the Confidential 2019 Exhibits).

public interest in moving for permission to intervene. Garlock seeks a tactical advantage in the estimation process in its own bankruptcy case. It believes that such an advantage lies somewhere within the Confidential 2019 Materials, and it seeks access for that reason alone. This Court recognizes that Garlock is driven by its own agenda[8] and should require it to prove the requisite cause to intervene, as required under Rule 2018(a).

**D.    Garlock suggests that, as a fiduciary in its own bankruptcy case, its need for the Confidential 2019 Materials is enhanced. Garlock should mind its own business, literally, and concentrate on its own reorganization rather than embarking on fishing expeditions at considerable cost to its own estate.**

As this Court will well recall and as the Law Firms describe at length in their Opposition to the 2019 Access Motion, Garlock's request for access to a limited subset of the Confidential 2019 Materials was denied last year in *Pittsburgh Corning* when Garlock was a self-proclaimed *likely creditor* (albeit one that had neglected to file a proof of claim in a case that had been pending for a decade). Garlock—having lost any claim to participate in the Bankruptcy Cases as a putative creditor by virtue of its own Chapter 11 filing last year—seems to suggest that its status as a bankruptcy debtor somehow enhances its right to intervene in the cases of unrelated debtors. Garlock claims that:

> As a debtor-in-possession, Garlock is now a fiduciary that has duties to conserve its resources and maximize its estate as effectively and expeditiously as possible for the benefit its creditors and parties in interest in its *own* bankruptcy case. It, therefore, would be contrary to the policy goals driving Garlock's actions in furtherance of its own reorganization to deny it the opportunity to gain access to the 2019 Exhibits.

---

[8] *See* Feb. 14, 2011 Hrg. Transcr. at 28 ("courts can prevent access to documents that are under seal when the purpose for the request to get the access is itself improper, and Garlock isn't here alleging that it's going to vindicate some public interest").

Motion to Intervene at 9-10. It is rather surprising that Garlock claims its fiduciary duties as a debtor in possession support its intervention in twelve unrelated bankruptcy cases—seven of which are closed. Of course, Garlock does not explain why the Confidential 2019 Materials might provide even an incidental benefit to its own reorganization case, nor how the fiduciary duties of an unrelated bankrupt trump the interests of the debtors in *these* Bankruptcy Cases (or their creditors and other estate fiduciaries) in continuing with their reorganizations (or, in the Closed Cases, enjoying their well-earned respite).

Garlock has already caused significant disruption in the Bankruptcy Cases, and the incurrence of corresponding expense to oppose its meritless motions.[9] Garlock has filed nearly 70 papers in the Bankruptcy Cases, littering the dockets with over a thousand pages of pleadings. This is in pursuit of Confidential 2019 Materials provided by hundreds of law firms in each case: an endeavor after which, should Garlock prevail, the Bankruptcy Clerks' offices for these districts will be required to expend considerable time and resources supplying. Garlock's supposed discharge of its own fiduciary duties should not impose such vast burdens on the courts presiding over unrelated cases, nor the debtors or estate fiduciaries in those

---

[9] It filed twelve identical 2019 Access Motions to the Confidential 2019 Materials in twelve cases (and twelve identical revised 2019 Access Motions which appear to be identical both to each other and to the initial Access Motions) along with twelve identical motions for leave to file replies and twelve identical replies. This required dozens of law firms and several estate fiduciaries in the Bankruptcy Cases to expend substantial time and funds in opposition to this unwarranted request. To compound this offense, the 2019 Access Motions were procedurally defective: Garlock mentioned, as an afterthought, that this Court might want to consider reopening the Closed Cases and granting Garlock the right to intervene in the Bankruptcy Cases, without first establishing the cause required to do either. After the hearing before this Court on February 14, 2011, Garlock belatedly—and only at this Court's insistence—filed a further 19 motions (7 Motions to Reopen and 12 Motions to Intervene). Each of these motions has required a response. In support of the 2019 Access Motions, Garlock offered three binders full of so-called *evidence* most of which is wholly objectionable and of not even passing relevance to the issue at hand (and that which was not was already available to this Court on the dockets of its cases). All of this so-called *evidence* required the preparation and filing of objections.

cases, nor the creditors with legitimate interests in need of protection (especially as Garlock expects us to take it at its word that those duties mandate such a frolic).

It is not for this Court to police Garlock's exercise of its fiduciary duties, but one would think that Garlock's creditors would be far better served by a debtor in possession refraining from spending vast estate resources in a fanciful quest for information of dubious value. This fishing expedition of unparalleled scale appears to be a gigantic waste of scarce estate resources, with significant funds expended in the pursuit of information completely unrelated to Garlock's own asbestos liability.

It seems that the pursuit of unnecessary and unwarranted discovery has become a habit with Garlock. Recently, the court presiding over Garlock's own bankruptcy case entered two orders denying discovery sought by Garlock.[10] In the Order Quashing Deposition Notices, the *Garlock* Court excoriated Garlock for its service upon numerous non-party asbestos personal injury trusts of notices seeking "procedurally improper" and "premature" depositions of third parties. These depositions were noticed (when they should have been subpoenaed) in purported furtherance of litigation over 2004 examinations of asbestos personal injury trusts (in respect of which the *Garlock* Court ruled that Garlock had "substantial showings to make as to the propriety and necessity of the 2004 examinations" before any such discovery was proper). Order Quashing Deposition Notices at 1-2. The *Garlock* Court noted that "the timing of the notices and the breadth of their scope are indicative of an erosion of civility and common courtesy" on Garlock's part. *Id.* at 3.

---

[10] *See* Order Quashing Debtors' Notices of Deposition Pursuant to Rule 30(b)(6) and Denying Motions to Compel, entered on February 25, 2011 on the docket of the Garlock bankruptcy case (Bankruptcy Court for the Western District of North Carolina, Case No. 10-31607) at Dkt. No. 1187 (a true and correct copy of which is attached hereto as Exhibit B)(the "Order Quashing Deposition Notices") and Order Denying Motion For Production of Information From Counsel Representing Garlock Claimants entered on March 4, 2011 on the docket of the Garlock bankruptcy case (Bankruptcy Court for the Western District of North Carolina, Case No. 10-31607) at Dkt. No. 1201 (a true and correct copy of which is attached hereto as Exhibit C) (the "Order Denying Counsel Production").

In the Order Denying Counsel Production, the Court rejected Garlock's attempt to require counsel for claimants in the *Garlock* bankruptcy to divulge data contained in their files concerning aggregate recoveries claimants had received from Garlock's co-defendants. The *Garlock* Court rebuffed this discovery and characterized it as "an unprecedented intrusion into attorneys' practices and files" in respect of "information that is generally and traditionally held secret" and which "is not available to the debtors outside of bankruptcy." Order Denying Counsel Production at 2-3.

The 2019 Access Motion represents another strand of Garlock's seemingly insatiable quest—conducted without any regard for the rules governing discovery—for any information it can lay its hands on that it believes might contain (or might lead to) evidence it decides it wants for purposes of its own estimation. This Court has the discretion to deny Garlock's Motion to Intervene in the Bankruptcy Cases and prevent Garlock from further burdening the actual parties in interest in the Bankruptcy Cases with the consequences of another Garlock folly. This Court should exercise that discretion, leaving Garlock to explain to its own Bankruptcy Court how this unprecedented fishing expedition (costly as it must be to Garlock's estate) might be consistent with its obligations as a "fiduciary that has duties to conserve its resources and maximize its estate as effectively and expeditiously as possible for the benefit its creditors." Motion to Intervene at 9-10.

## III.
## CONCLUSION

For the foregoing reasons, the Law Firms respectfully requests that this Court deny the Motion to Intervene in its entirety, with prejudice, deny Garlock permission to intervene in the Bankruptcy Cases, and grant the Law Firms such other and further relief to which they may be entitled.

Dated:  March 11, 2011			/s/ Peter J. Ashcroft

Peter J. Ashcroft (PA I.D. #87317)

**BERNSTEIN LAW FIRM, P.C.**
Suite 2200 Gulf Tower
Pittsburgh, PA 15219
pashcroft@bernsteinlaw.com
(412) 456-8107
(412) 456-8255 (facsimile)


/s/ Daniel K. Hogan

Daniel K. Hogan (De. Bar No. 2814)

The Hogan Firm
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599


-and-


**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation**
Sander L. Esserman TX Bar No. 06671500
David A. Klingler TX Bar No. 11574300
David J. Parsons TX Bar No. 24037238
Cliff I. Taylor TX Bar No. 24042007
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900
(214) 969-4999 (facsimile)


**ATTORNEYS FOR THE LAW FIRMS**