# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In the matter of:                  )
                                   )
GARLOCK SEALING TECHNOLOGIES, LLC, ) No. 10-31607
et al.,                            ) Jointly Administered
                                   ) Charlotte, NC
     Debtors.                      ) Oct. 14, 2010, 9:30 a.m.


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GEORGE R. HODGES
UNITED STATES BANKRUPTCY JUDGE

Vol. I, Pages 1 to 245


APPEARANCES:


Garland S. Cassada
Jonathan C. Krisko
Richard C. Worf, Jr.
Robinson, Bradshaw & Hinson
101 North Tryon Street, Suite 1900
Charlotte, NC 28246

John R. Miller, Jr.
C. Richard Rayburn, Jr.
Rayburn, Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte NC, 28202-1672


Electronic Recorder
Operator:                    Barbara J. Sifford

Transcriber:                 Patricia Basham
                             6411 Quail Ridge Drive
                             Bartlett, TN  38135
                             901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES:

Travis W. Moon
Hamilton Moon Stephens Steele Martin
2020 Charlotte Plaza
201 S. College Street
Charlotte, NC 28244-2020

Trevor W. Swett III
Leslie M. Kelleher
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., Suite 1100
Washington, DC 20005

Daniel G. Clodfelter
Moore & Van Allen
100 North Tryon Street
Suite 4700
Charlotte, NC  28202-4003

Linda Simpson
U.S. Bankruptcy Administrator
402 W. Trade St., Suite 200
Charlotte, NC 28202

Jonathan P. Guy
Orrick, Herrington & Sutcliffe LLP
Columbia Center, 1152 15th Street, N.W.
Washington, DC

Michael P. Cascino (Telephonically)
Cascino Vaughan Law Offices Ltd.
220 S. Ashland Ave.
Chicago, IL 60607

1   been entered against Garlock, but the invoice is a total of
2   about thirty-seven hundred dollars.  It covers a very brief
3   stub period, prepetition stub period.  It is from May 26, 2010,
4   through May 26, 2011.
5           The prepetition period comes to ninety-three dollars
6   and change but, just out of an abundance of caution, we wanted
7   to make sure that the court was okay with us paying that
8   prepetition claim because we didn't have any other – couldn't
9   find any authority in any other orders that we have gotten so
10  far to pay that invoice. And so we would ask for authorization
11  to go ahead and pay that.  No objections have been filed on
12  that one either.
13          THE COURT: We will approve that, as well.
14          MR. MILLER: Your Honor, from there we go in the
15  proposed agenda to the contested matters and as we have them
16  set out in the agenda.
17          The first matter is the debtor's motion for an order
18  requiring the Rule 2019 statements, and I am not sure exactly
19  what the status of that is.  It looks like there may be one
20  issue on that.
21          And then, from there, we have got the debtor's bar
22  date motion, asbestos bar date motion and the committee's
23  motion for a scheduling order and, with that, I think I will
24  hand the ball off to Mr. Cassada.
25          THE COURT: Okay.

Case 10-31607   Doc 833   Filed 10/26/10   Entered 10/26/10 14:07:03   Desc Main
Case 01-01139-AMC   Doc 26540-1   Filed 03/16/11   Page 5 of 15
Document      Page 11 of 245

11

1   MR. CASSADA: Your Honor, I believe we can dispose of
2   the 2019 motion fairly quickly.  We have exchanged drafts of
3   proposed orders on the motion, and it appears that we are in
4   accord on all of the language of the orders except for one
5   provision, and that is the provision that addresses what
6   happens to the information once it's filed and the burden that
7   any party-in-interest who wants to get the information included
8   must meet and the burden that the law firm that made the filing
9   must meet to avoid disclosure.

10   By way of background, Your Honor may recall when we
11   argued about this issue a month and a half ago, you asked us to
12   attempt to negotiate an order and you suggested that we
13   reference orders filed in other cases.  And I believe both the
14   committee and the debtors focused on orders entered by Judge
15   Fitzgerald and there were two of those orders.  There was an
16   order initially entered and then a later order supplementing
17   that order.  We have combined those two orders to create one
18   order and, again, it appears that we have substantial agreement
19   on that.

20   The only place where we are apart, I believe, has to
21   do with the issue I just raised.  Under the order, the lawyers
22   who made appearances and who represent asbestos claimants filed
23   a notice to that effect and they filed the information
24   regarding the names of their clients and other information on
25   a disk that will be provided to the clerk but won't be

12

1   available on the docket and won't be available for public
2   inspection.  However, they will give the disk to the debtor.
3           If a party-in-interest appears and asks to have access
4   to the disk, then the order that we provided says that a party-
5   in-interest would be entitled to have access unless the party
6   who filed the 2019 statement appears and makes the required
7   showing under section 107 of the Bankruptcy Code that there is
8   a basis for protecting the information from disclosure.
9           And as the court knows, section 105 says that all
10  documents, pleadings, papers, filed in a Bankruptcy Court are
11  public records subject to public exceptions, and section 105
12  lists exceptions to that rule and permit parties who file
13  papers to demonstrate that the papers they filed meet those
14  exceptions.
15          So we believe that the order as we propose it complies
16  with the law and we propose that the court enter the order as
17  drafted by the debtor.
18          THE COURT: Mr. Swett.
19          MR. SWETT: Yes, Your Honor.  Where this debate began
20  was with the debtors propounding a request modeled on the
21  *Congoleum* case under which all of the information acquired
22  under its interpretation of 2019 would be spread on the public
23  record from the outset.
24          We objected.  We made our various arguments.  We
25  pointed you to a model devised by Judge Fitzgerald.  We then

13

1   proceeded to use that model in several different asbestos
2   bankruptcies which resulted in a couple of different district
3   courts, and the Third Circuit in one instance, passing on it on
4   appeal.
5       Now, the outcome of those appeals addressed the
6   question raised by objecting insurance companies whether it was
7   appropriate for Judge Fitzgerald to include in her order a
8   provision that the clerk would hold the attachments in which
9   the details, the information, the substance actually provided,
10  would be held off the docket and out of public view pending
11  motion on notice and a further ruling by the court. And both
12  the District Court in Delaware and the District Court in the
13  Western District of Pennsylvania found that that condition or
14  that restriction on public access to that kind of information
15  in that particular setting was appropriate.
16      The one court treated it as a regulation of public
17  access, simply the judge reaching out to control the process
18  and to require somebody who wanted to gain access to come in
19  and state a good reason, hear objections and then rule, without
20  prejudice to what the burdens would be in that eventual
21  contest, if any came to pass. I am not aware that any did but
22  I speak speculatively there. I am just not sure.
23      But in the other case, the District Court held that it
24  was an appropriate balancing of the needs of public access and
25  the practical administration of a large cumbersome asbestos

bankruptcy with novel issues pertaining to the extent of the information the claimants would be required to go forward with. Both courts upheld the restriction, and one of those cases went to the Third Circuit which also did not upset Judge Fitzgerald's ruling.

At the end of the last hearing, you suggested that, subject to further argument, you would be inclined to follow Judge Fitzgerald's model since it had been tested in the appellate courts. We therefore devised a form strictly conforming to what Judge Fitzgerald did. That would be acceptable to the committee. It is not where we wanted to end up but it is an outcome that will not, I think, stimulate a lot of controversy in the constituency that will have to comply, and it will put Your Honor in the posture of not anticipating disputes that may or may not arise.

If somebody comes forward and says we want access to the details of the 2019, you are entitled to inquire why; is it a matter of prurient interest; is it a co-defendant seeking advantage in another case; is it some expert in some other case who is doing in effect research and development for purposes having nothing to do with this particular bankruptcy; is it somehow collusive between the debtor and a third person. The debtor obviously, and this will be a through line in the various matters you will have to address in this stage of the case, the debtor wishes to impose burdens and inconveniences on

15

1  the creditor constituency while saving itself from all burdens
2  and inconveniences.
3       This is an example of the debtor reaching out to
4  impose burdens and inconveniences that are not necessary in the
5  current posture of the case and asking you to, in effect, give
6  an advisory view as to what the appropriate allocation of
7  burden would be in the event of such a contest.
8       You need to hear from the law firm who has put the
9  data forward about whether or not it ought to be protected and
10 how the burdens should be distributed in that showing.  You
11 shouldn't be resting on the competing views of the debtor which
12 will have the information, although subject to confidentiality,
13 and the committee which represents the entire constituency, no
14 particular individual or law firm.
15      So we submit that the prudent thing to do and the
16 appropriate incremental decision-making process for the court
17 is to order the form that Judge Fitzgerald propounded and to
18 reserve all questions regarding what will happen if and when
19 somebody comes forward to demand the data.
20      Thank you.
21      THE COURT: Let's hear from Mr. Guy.
22      MR. GUY: Thank you, Your Honor.  In our papers, we
23 didn't take a position on the 2019 motion other than to say the
24 Rule is clear and it seems the parties have gone over what they
25 are  required  to  disclose.   Now  the  question  is  just

16

1  confidentiality.

2        The only reason I rise is to say that I think, and the

3  parties hopefully would agree, is the FCR would have access to

4  that information and wouldn't have to go to the court to seek

5  access and we would, of course, keep it confidential.

6        MR. SWETT: That's acceptable to the committee.

7        MR. CASSADA: Your Honor, I will be brief about this

8  because there are a lot of other issues before the court. I

9  mean, let's be clear what we are talking about here. Rule 2019

10 requires the filing of a notice with a Bankruptcy Court.

11 Section 107 says that all papers filed with the court are

12 public records. So if there is going to be an exception made

13 to that, there is a requirement that a party come in and show

14 that there should be an exception to Section 107.

15       Now, entering the order that's been proposed by the

16 parties here automatically grants an exception to section 107,

17 and the reason it does is because the document won't be on the

18 public record.

19       In Judge Fitzgerald's case, it is important for you to

20 know that she didn't enter the order until the law firms came

21 in and they attempted to make some showing on why the language

22 should be protected. In fact, the original order that she

23 entered required that all of the information be on the public

24 record. So law firms came in, they provided evidence, they

25 made a showing. She entered an order based on that. That has

17

1  not happened in this case. All you have here is a request to
2  require compliance with 2019 and, in order for you to enter an
3  order saying that there won't be public access to this, there
4  has to be a showing that hasn't been made.
5       Now, let's examine some of the reasons. Mr. Swett, he
6  is afraid that the co-defendants who might come in here and
7  they have a prurient interest in this information and they
8  might use it to their advantage in litigation. Let's be clear
9  about what that means. The debtor receives several hundred
10 mesothelioma claims a year. These same claims are filed
11 against other co-defendants all within the tort system, and the
12 question about how many defendants a claimant can claim a
13 remedy against is very important to the value of a claim.
14      And what the plaintiff's bar wants to do is they want
15 to be able to file claims in secret here, and they think it is
16 somehow improper for co-defendants who, by the way, are
17 parties-in-interest in this case. They are – they fall within
18 the definition of an asbestos claim. They will be bound by the
19 confirmation order that will be entered in this case. That
20 those co-defendants should not have access, automatic access to
21 this information because they might improperly use it in their
22 defense in state court. So that the suggestion is that it
23 would be improper for them to know that the people who have
24 filed lawsuits on the public record, identifying their names
25 and identifying their disease, against them can come here in

18

1  private and it would be unfair for co-defendants to have that
2  information. That is patently absurd.
3  So the debtor's position, Your Honor, is that once the
4  order is entered requiring filings of the papers, before the
5  court bypasses section 107, there has to be a showing, and our
6  proposed language gives the court the basis for doing that by
7  postponing the showing until someone comes and asks for the
8  information.
9  But to-date, the showing hasn't been made. It was
10 made before Judge Fitzgerald. Apparently, you know, there were
11 appeals and appellate courts got to review her order in the
12 context of the evidence that supported that relief. None of
13 that has happened here.
14 MR. SWETT: Your Honor, a couple of brief points.
15 Recall that the debtor's position was that anybody who came in
16 to oppose his 2019 motion would thereby subject itself to a
17 2019 file. The debtor has actively deterred law firms from
18 coming in to express their views on those issues at this stage
19 by threatening them with the not inconsiderable burdens of
20 preparing these 2019 statements. Some of these law firms have
21 thousands of claims. That's number one.
22 Number two, whether a co-defendant wants to come in
23 and gain access to information about claimants against Garlock
24 is between that co-defendant and that claimant and, if they
25 want to come here and do that, you can hear them and you can

19

1  decide then whose burden it is and what the right answer is.
2  It is not for the debtor to be, in effect, an officious inter-
3  meddler in that.
4      Third, the showing has been made.  We are talking
5  about the identities and other particularized information about
6  a very large number of individuals.  The statute itself
7  recognizes that an individual is protectable under section 107
8  with regard to personally identifying detail.  That showing is
9  implicit in the nature of the information that is elicited by
10 the form and by the statute itself.  We would rest on that and
11 urge you not to anticipate disputes that may or may not come
12 down the pike.
13     Thank you.
14     THE COURT: Well, I think for that last reason and
15 because it seems to be a pretty minimal restriction to ask
16 somebody to let us know when they want to look at this
17 information, that I ought to go with the form as Judge
18 Fitzgerald had done it and as the committee has recommended.
19 So that will be my ruling if you all can – if you have language
20 that does that from her order, I suppose –
21     MR. SWETT: Your Honor, we submitted a proposed form of
22 order with the statement we filed on the 12th of October.
23     THE COURT: All right.
24     MR. CASSADA: I believe that form order took our
25 language.  We just changed the one provision.

20

1       MR. SWETT: That's correct.

2       MR. CASSADA: Well, that's agreeable, Your Honor, if
3  that's Your Honor's ruling and we agree that that order
4  properly reflects –

5       THE COURT: Okay. Well, that's the order that I will
6  – if you all will upload that, I will sign that order. And we
7  will just see. We may revisit this if we have a flood of
8  requests, but we will see where it goes. We will at least have
9  some idea of who wants to see what. Okay.

10      MR. CASSADA: Your Honor, we are prepared to present
11 our case on our motion for bar date and other relief. We have
12 four witnesses. We have, as Your Honor knows, a number of
13 affidavits that previously have been filed in support of the
14 motion and then there is documentary evidence that we would
15 propose to admit after our witnesses, and we would move for
16 admission of that evidence with an explanation to the court as
17 to its relevance as we do that.

18      So the way I would suggest we proceed is that I will
19 make an opening statement. Our first witness will be Dr.
20 Charles Bates. It would be important, if we could, to complete
21 his testimony and allow him to travel today. He learned
22 yesterday that he has an ill father-in-law and his wife is
23 attending to him in their home in San Diego, and he would like
24 to get back to assist with that situation.

25      THE COURT: All right. Well, we will try to

245

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Patricia Basham

Patricia Basham, Transcriber

Date: October 19, 2010