IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**AFFIDAVIT OF PAUL W. HANLON WITH RESPECT TO
PROPOSED SALE OF CERTAIN INVESTMENT
AND OTHER ASSETS OF DEBTORS'
GRACE CONSTRUCTION PRODUCTS BUSINESS UNIT**

| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETSS | ) | |
| | ) | ss |
| MIDDLESEX COUNTY | ) | |

Paul W. Hanlon, being duly sworn, deposes and says:

1.     I am a Vice President of Grace Construction Products, a business unit of W.R.

Grace & Co.- Conn. ("Grace"), one of the above captioned debtors and debtors in possession

---

1 The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

(collectively, the "Debtors"). All facts set forth in this Affidavit are based on my personal knowledge, upon information supplied to me by employees of the Debtors or upon my opinion based upon my experience and knowledge of Grace's businesses.

2.    Further, I am generally familiar with the operations and ordinary course of business of Grace and the other Debtors.

3.    I have reviewed the Debtors' Notice of Proposed Sale of Certain Investment and other Assets of Debtors' Grace Construction Products Business Unit (the "Notice") Pursuant to Order Establishing Procedures for the Sale of De Minimis Assets (the "Order") and attest that all facts and conclusions set forth therein are true and accurate.

4.    The Debtors propose to sell the assets being sold to CeraTech, Inc. (the "Technology Company"), with a principal address at 1500 N Beauregard St # 320, Alexandria, VA 22311-1715.

5.    The assets being sold consist of the option to buy up to 112,500 shares of the Class C Convertible Redeemable Preferred Stock of the Technology Company owned by Grace (the "Shares"), and Grace's exclusive distribution, license and other rights respecting purchase and sale of certain products related to the production of concrete under the Exclusive Sales, Market and Distribution Agreement (the "SMD Agreement") and the Supply Agreement (the "Supply Agreement") between the Technology Company and Grace. The agreement for the sale of these assets (the "Sale") will become effective when the relevant notice periods under the Order shall have expired without objection or competing bid, or any such objection or competing bid shall have been resolved in a manner consistent with the Order. If the agreement does not become effective on or before April 15, 2011, it will automatically terminate.

6.    I have determined that sound business reasons justify the Sale. The investment in the Shares and Grace's entry into the SMD Agreement and the Supply Agreement were made

pursuant to an order of this Court dated February 1, 2008 [Docket No.18086]. The investment was made in order to develop and commercialize products utilizing the Technology Company's intellectual property, which Debtors would sell under the SMD Agreement. However, further work on the intellectual property determined that its successful development and commercialization would require significantly more time and expense than anticipated, and Debtors concluded that any additional investment by Grace, and/or payment of annual minimum fees in order to maintain its rights under the SMD Agreement, were not in the Debtors' best interests. They further concluded that the best interests of the Debtors lie in the sale of the Shares and of Grace's rights under the SMD Agreement and the Supply Agreement. If the Technology Company purchases all the Shares, the $4.5 million proceeds will equal the amount of Debtors' original investment in the Shares. Debtors believe that if the Technology Company is able to obtain financing to continue development and commercialization of its intellectual property, it is likely to exercise its option in order to eliminate concerns of the new investors related to Grace's rights and involvement. In addition, Grace will have an option to sell the Shares to the Technology Company if the Technology Company obtains certain additional investment pursuant to exercise of an option whose exercise will be no later than June 26, 2011.

7.      No person or entity other than the Technology Company has expressed an interest in purchasing the Shares. It is uncertain whether the Technology Company will be able to find additional investments to enable it to continue development and commercialization of its intellectual property; or whether in any event it will succeed in its efforts. In addition, the Shares amount to less than 15% of the voting power of the Technology Company stock, and have no class vote or protective rights except those provided by Delaware law. Furthermore, Grace's rights under the SMD Agreement and the Supply Agreement are not assignable without the Technology Company's consent.

-4-

8.    The Debtors therefore concluded that it was futile to attempt to pursue the Sale with another party. The Debtors engaged in arm's-length, good faith negotiations with the Technology Company on the terms of the Sale over the course of nine months, and have concluded that the terms and conditions available from the Technology Company are reasonable.

9.    (a)    Based upon the limitations on the value of the assets described in paragraph 7, my experience in the construction products business, and the information that is available to me regarding the current situation and future prospects of the Technology Company, I believe that the sale price will provide fair value to the Debtors for the assets being sold.

(b)    The Sale complies with Debtors' internal management policies.

*[Signature page follows]*

I declare under penalty of perjury that the foregoing is true and correct.

Paul W. Hanlon
Vice President
Grace Construction Products


SWORN and SUBSCRIBED
before me on this __11th__ day
of March, 2011.

Notary Public

MONA M. TALANIAN
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires
November 26, 2015