1

2                  UNITED STATES BANKRUPTCY COURT

3                      DISTRICT OF DELAWARE

4

5     - - - - - - - - - - - - - - - - - -x

6     In the Matters of:                )

7     ACandS, INC.,                     )Case No. 02-12687(JKF)

8     ARMSTRONG WORLD INDUSTRIES, INC.  )Case No. 00-4471(JKF)

9     COMBUSTION ENGINEERING, INC.      )Case No. 03-10495(JKF)

10    THE FLINTKOTE COMPANY             )Case No. 04-11300(JKF)

11    KAISER ALUMINUM CORP.             )Case No. 02-10429(JKF)

12    OWENS CORNING                     )Case No. 00-03837(JKF)

13    US MINERAL PRODUCTS COMPANY       )Case No. 01-02471(JKF)

14    USG CORP.                         )Case No. 01-02094(JKF)

15    W.R. GRACE & CO.,                 )Case No. 01-01139(JKF)

16         Debtors or Reorganized Debtors.)

17    - - - - - - - - - - - - - - - - - -x

18

19

20

21

22                  (Continued on next page)

23

24

25

1

2                    UNITED STATES BANKRUPTCY COURT

3                    WESTERN DISTRICT OF PENNSYLVANIA

4

5    - - - - - - - - - - - - - - - - - -x

6    In the Matters of:                    )

7    MID-VALLEY, INC.,                      )Case No. 03-35592

8    NORTH AMERICAN REFRACTORIES CO.        )Case No. 02-20198

9    PITTSBURGH CORNING CORP.               )Case No. 00-22876

10           Debtors or Reorganized Debtors.)

11    - - - - - - - - - - - - - - - - - - -x

12

13                    United States Bankruptcy Court

14                    824 North Market Street

15                    Wilmington, Delaware

16

17                    March 28, 2011

18                    11:05 AM

19

20    B E F O R E:

21    HON. JUDITH K. FITZGERALD

22    U.S. BANKRUPTCY JUDGE

23    DISTRICT OF DELAWARE

24

25

1

2    HEARING re Motion of Garlock Sealing Technologies LLC for Entry

3    of an Order, Pursuant to 11 U.S.C. § 350(b), Fed. R. Bankr. P.

4    3020(d), 3022 And 5010, Reopening Chapter 11 Bankruptcy Cases

5    for the Limited Purpose of Seeking Access to 2019 Statement

6

7    HEARING re Motion of Garlock Sealing Technologies LLC to

8    Intervene for Limited Purpose of Seeking Access to Judicial

9    Records

10

11   HEARING re Amended Motion of Garlock Sealing Technologies LLC

12   for Order Authorizing Access to 2019 Statements Filed in This

13   Court and for Related Relief

14

15   HEARING re Garlock Sealing Technologies LLC's Hearing Exhibits

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

1

2  A P P E A R A N C E S :

3  MORRIS, NICHOLS, ARSHT & TUNNELL LLP

4       Attorneys for Garlock Sealing Technologies, LLC

5       1201 North Market Street

6       Wilmington, DE 19899

7

8  BY:   GREGORY W. WERKHEISER, ESQ.

9       MATTHEW B. HARVEY, ESQ.

10

11  ROBINSON, BRADSHAW & HINSON

12       Attorneys for Garlock Sealing Technologies, LLC

13       101 North Tryon Street

14       Suite 1900

15       Charlotte, NC 28246

16

17  BY:   GARLAND S. CASSADA, ESQ.

18       RICHARD C. WORF, JR., ESQ.

19

20

21

22

23

24

25

Page 5

1

2    CAPLIN & DRYSDALE, CHARTERED

3         Attorneys for the Official Committee of Asbestos Personal

4          Injury Claimants

5         One Thomas Circle N.W.

6         Suite 1100

7         Washington, DC 20005

8

9    BY:   PETER VAN N. LOCKWOOD, ESQ.

10

11   GIBSON, DUNN & CRUTCHER LLP

12         Attorneys for DII Industries, LLC Asbestos PI Trust

13         2100 McKinney Avenue

14         Suite 1100

15         Dallas, TX 75201

16

17   BY:   MICHAEL A. ROSENTHAL, ESQ.

18

19

20

21

22

23

24

25

```
                                                    Page 6

1

2    KEATING MUETHING & KLEKAMP PLL

3         Attorneys for US Mineral Products Company and ACandS,

4          Inc.

5         One East Fourth Street

6         Suite 1400

7         Cincinnati OH 45202

8

9    BY:   KEVIN E. IRWIN, ESQ.

10

11   MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

12        Attorneys for Kazan, McClain, Lyons, Greenwood & Harley;

13         Waters & Kraus LLP; Stanley, Mandel & Iola, L.L.P.,

14         Simmons Browder Gianaris Angelides & Barnerd LLC;

15         Bergman, Draper & Frockt; Gori Julian & Associates,

16         P.C., Early, Lucarelli, Sweeney & Strauss; Cooney &

17         Conway; George & Sipes LLP; Lipsitz & Ponterio, LLC;

18         Bifferato LLC, and Montgomery, McCracken, Walker &

19         Rhoads, LLP

20         1105 North Market Street

21         Suite 1500

22         Wilmington, DE 19801

23

24   BY:   NATALIE D. RAMSEY, ESQ.

25
```

1

2    MOTLEY RICE LLC

3          Attorneys for Asbestos Claimants Represented by Motley

4           Rice LLC and affiliated Co-Counsel

5          1000 Potomac St. NW

6          Suite 150

7          Washington, DC 20007

8

9    BY:   NATHAN D. FINCH, ESQ.

10

11   RICHARDS LAYTON & FINGER, P.A.

12          Attorneys for Armstrong World Industries, Inc.

13          One Rodney Square

14          920 North King Street

15          Wilmington, DE 19801

16

17   BY:   JASON M. MADRON, ESQ.

18

19   SAUL EWING LLP

20          Attorneys for Owens Corning

21          Centre Square West

22          1500 Market Street, 38th Floor

23          Philadelphia, PA 19102

24

25   BY:   ADAM H. ISENBERG, ESQ.

```
 1

 2    SAUL EWING LLP

 3          Attorneys for Owens Corning

 4          222 Delaware Avenue

 5          Suite 1200

 6          Wilmington, DE 19899

 7

 8    BY:   MARK MINUTI, ESQ.

 9

10    STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

11          Attorneys for The Law Offices of Peter G. Angelos, P.C.;

12           Baron & Budd,  P.C.; Brayton Purcell, LLP; Hissey

13           Kientz, LLP; The Lipman Law Firm; Reaud, Morgan & Quinn,

14           Inc.; Thornton & Naumes, LLP; Waters & Kraus, LLP; Weitz

15           & Luxenberg, P.C.; and Williams Kherkher Hart Boundas,

16           LLP

17          2323 Bryan Street

18          Suite 2200

19          Dallas, TX 75201

20

21    BY:   SANDER L. ESSERMAN, ESQ.

22          DAVID A. KLINGLER, ESQ. (TELEPHONICALLY)

23          DAVID J. PARSONS, ESQ. (TELEPHONICALLY)

24          CLIFF I. TAYLOR, ESQ. (TELEPHONICALLY)

25
```

Page 9

1

2    THE HOGAN FIRM

3          Attorneys for The Law Offices of Peter G. Angelos, P.C.;

4           Baron & Budd, P.C.; Brayton Purcell, LLP; Hissey

5           Kientz, LLP; The Lipman Law Firm; Reaud, Morgan & Quinn,

6           Inc.; Thornton & Naumes, LLP; Waters & Kraus, LLP; Weitz

7           & Luxenberg, P.C.; and Williams Kherkher Hart Boundas,

8           LLP

9          1311 Delaware Avenue

10         Wilmington, DE 19806

11

12   BY:   W. WADE W. SCOTT, ESQ.

13

14   THE ROSNER LAW GROUP LLC

15         Attorneys for US Mineral Products Company and ACandS,

16          Inc.

17         824 Market Street

18         Suite 810

19         Wilmington, DE 19801

20

21   BY:   SCOTT J. LEONHARDT, ESQ.

22

23

24

25

1

2  U.S. DEPARTMENT OF JUSTICE

3        Office of the United States Trustee

4        844 King Street

5        J. Caleb Boggs Federal Building

6        Room 2207

7        Lockbox #35

8        Wilmington, DE 19899

9

10  BY:   RICHARD L. SCHEPACARTER, TRIAL ATTORNEY

11

12  WEIL GOTSHAL & MANGES LLP

13        Attorneys for Armstrong World Industries, Inc.

14        767 Fifth Avenue

15        New York, NY 10153

16

17  BY:   DEBRA A. DANDENEAU, ESQ.

18        ABIGAIL L. ZIGMAN, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

1

2    WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

3          Attorneys for Fuller-Austin Asbestos Trust, U. Texas

4           Asbestos Trust, NGEC, State of Montana Department of

5           Environmental Quality & Her Majesty the Queen In

6           Right of Canada

7          222 Delaware Avenue

8          Suite 1501

9          Wilmington, DE 19801

10

11   BY:   THOMAS M. HORAN, ESQ.

12         KEVIN J. MANGAN, ESQ. (TELEPHONICALLY)

13         FRANCIS MONACO, ESQ. (TELEPHONICALLY)

14

15   YOUNG CONAWAY STARGATT & TAYLOR LLP

16         Attorneys For Futures Claimants' Representative

17         The Brandywine Building

18         1000 West Street

19         17th Floor

20         Wilmington, DE 19801

21

22   BY:   SHARON M. ZIEG, ESQ.

23

24

25

1

2    APPEARANCES, CONT'D (TELEPHONIC):

3

4    PITTSBURGH CORNING CORPORATION (00-22876):

5    CARROLL, BURDICK & MCDONOUGH

6         Attorneys for Continental Casualty

7

8    BY:   RODNEY L. ESHELMAN, ESQ.

9         (TELEPHONICALLY)

10

11   CHARLSTON, REVICH & WOLLITZ LLP

12        Attorneys for Lumbermens Mutual

13

14   BY:   STEPHEN P. SOSKIN, ESQ.

15        (TELEPHONICALLY)

16

17   DEBEVOISE & PLIMPTON LLP

18        Attorneys for Travelers Casualty and Surety Company

19

20   BY:   LEONARD M. BIERINGER, ESQ.

21        (TELEPHONICALLY)

22

23

24

25

1

2    DEBEVOISE & PLIMPTON LLP

3         Attorneys for Travelers Casualty and Surety Company

4

5    BY:   ROBERT D. GOODMAN, ESQ.

6         (TELEPHONICALLY)

7

8    DORSEY & WHITNEY LLP

9         Attorneys for Nationwide Indemnity

10

11   BY:   JOSHUA COLANGELO-BRYAN, ESQ.

12        (TELEPHONICALLY)

13

14   FOX ROTHSCHILD LLP

15        Attorneys for Lumbermens Mutual

16

17   BY:   JOHN R. GOTASKIE, JR., ESQ.

18        (TELEPHONICALLY)

19

20   FRANK GECKER LLP

21        Attorneys for Frank Gecker LLP

22

23   BY:   JOSEPH FRANK, ESQ.

24        (TELEPHONICALLY)

25

1

2    LEECH, TISHMAN, FUSCALDO & LAMPL

3          Attorneys for Trade Creditors Committee

4

5    BY:   CRYSTAL THORNTON-ILLAR, ESQ.

6          (TELEPHONICALLY)

7

8    LITCHFIELD CAVO LLP

9          Attorneys for Argonaut Insurance Company

10

11   BY:   DENNIS DOLAN, ESQ.

12         (TELEPHONICALLY)

13

14   LYNBERG & WATKINS

15         Attorneys for AIG Member Companies

16

17   BY:   R. JEFF CARLISLE, ESQ.

18         (TELEPHONICALLY)

19

20   O'MELVENY & MYERS LLP

21         Attorneys for Century Indemnity Co.

22

23   BY:   CHARLES NERKO, ESQ.

24         (TELEPHONICALLY)

25

1

2  O'MELVENY & MYERS LLP

3       Attorneys for Century Indemnity Co.

4

5  BY:   TANCRED V. SCHIAVONI, ESQ.

6       (TELEPHONICALLY)

7

8  REED SMITH LLP

9       Attorneys for Reed Smith LLP

10

11 BY:   DAVID ZIEGLER, ESQ.

12       (TELEPHONICALLY)

13

14 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15       Attorneys for NorthStar Reinsurance Corporation

16

17 BY:   MICHAEL J. BALCH, ESQ.

18       (TELEPHONICALLY)

19

20 THE HOGAN FIRM

21       Attorneys for various law firm objectors

22

23 BY:   DANIEL K. HOGAN, ESQ. (TELEPHONICALLY)

24

25

1

2   THORP REED & ARMSTRONG

3        Attorneys for Corning Inc.

4

5   BY:   ELENE M. MORAN, ESQ.

6        (TELEPHONICALLY)

7

8   TUCKER ARENSBERG LLP

9        Attorneys for Certain Underwriters

10

11  BY:   MICHAEL SHINER, ESQ.

12       (TELEPHONICALLY)

13

14  WARD, GREENBERG, HELLER & REIDY LLP

15       Attorneys for Corning Inc.

16

17  BY:   CHERYL HELLER, ESQ.

18       (TELEPHONICALLY)

19

20  WILMER CUTLER PICKERING HALE & DORR LLP

21       Attorneys for Hartford Insurance Company

22

23  BY:   NANCY MANZER, ESQ.

24       (TELEPHONICALLY)

25

1

2    OWENS CORNING (00-3837):

3    FRANK GECKER LLP

4         Attorneys for Frank Gecker LLP

5

6    BY:   JOSEPH FRANK, ESQ.

7         (TELEPHONICALLY)

8

9    THE HOGAN FIRM

10        Attorneys for Various Law Firm Objectors

11

12   BY:   DANIEL K. HOGAN, ESQ.

13        (TELEPHONICALLY)

14

15   W.R. GRACE & CO., et al. (01-01139):

16   ANDERSON KILL & CLICK

17        Attorneys for Official Committee of Asbestos Property

18         Damage Claimants

19

20   BY:   ROBERT M. HORKOVICH, ESQ.

21        (TELEPHONICALLY)

22

23

24

25

1

2   BAER HIGGINS FRUCHTMAN LLC

3        Attorneys for Debtor, W.R. Grace & Co.

4

5   BY:   JANET BAER, ESQ.

6        ROGER HIGGINS, ESQ.

7        (TELEPHONICALLY)

8

9   BILZIN, SUMBERG, BAENA, PRICE & AXELROD LLP

10        Attorneys for Official Committee of Asbestos Property

11         Damage Claimants

12

13   BY:   SCOTT BAENA, ESQ.

14        TERRANCE EDWARDS, ESQ.

15        MATTHEW KRAMER, ESQ.

16        JAY SAKALO, ESQ.

17        (TELEPHONICALLY)

18

19   BY:   JACOB C. COHN, ESQ.

20        (TELEPHONICALLY)

21

22

23

24

25

1

2    COZEN O'CONNOR

3         Attorneys for Federal Insurance Company

4

5    BY:   JACOB C. COHN, ESQ.

6          ILAN ROSENBERG, ESQ.

7          (TELEPHONICALLY)

8

9    CROWELL & MORING LLP

10        Attorneys for Everest Reinsurance Company, et al.

11

12   BY:   LESLIE A. DAVIS, ESQ.

13         MARK PLEVIN, ESQ.

14         (TELEPHONICALLY)

15

16   DEWEY & LEBOEUF LLP

17        Attorneys for Jennifer Whitener

18

19   BY:   JENNIFER WHITENER, ESQ.

20         (TELEPHONICALLY)

21

22

23

24

25

1

2   DIES & HILE LLP

3        Attorneys for Official Committee of Asbestos Property

4         Damage Claimants

5

6   BY:   MARTIN DIES, ESQ.

7         (TELEPHONICALLY)

8

9   DRINKER BIDDLE & REATH LLP

10        Attorneys for One Beacon & Seaton Insurance

11

12   BY:   MICHAEL F. BROWN, ESQ.

13         (TELEPHONICALLY)

14

15   ECKERT, SEAMANS, CHERIN & MELLOTT, LLC

16        Attorneys for Maryland Casualty Company

17

18   BY:   GABRIELLA CELLAROSI, ESQ.

19         EDWARD LONGOSZ, ESQ.

20         (TELEPHONICALLY)

21

22

23

24

25

Page 21

1

2    FERRY JOSEPH & PEARCE P.A.

3          Attorneys for Official Committee of Asbestos Property

4           Damage Claimants

5

6    BY:    THEODORE J. TACCONELLI, ESQ.

7           (TELEPHONICALLY)

8

9    FORD MARRIN ESPOSITO WITMEYER & GLESER, LLP

10          Attorneys for Ford Marrin Esposito Witmeyer & Gleser, LLP

11

12    BY:    ELIZABETH DECRISTOFARO, ESQ.

13           SHAYNE SPENCER, ESQ.

14           (TELEPHONICALLY)

15

16    FRANK GECKER LLP

17          Attorneys for Frank Gecker LLP

18

19    BY:    JOSEPH FRANK, ESQ.

20           (TELEPHONICALLY)

21

22

23

24

25

Page 22

```
 1

 2   GOODWIN PROCTER LLP

 3        Attorneys for CAN

 4

 5   BY:   DANIEL M. GLOSBAND, ESQ.

 6         (TELEPHONICALLY)

 7

 8   HAMILTON, RABINOVITZ & ALSHULER

 9        Attorneys for Official Committee of Asbestos Property

10         Damage Claimants

11

12   BY:   FRANCINE RABINOVITZ, ESQ.

13         (TELEPHONICALLY)

14

15   KIRKLAND & ELLIS LLP

16        Attorneys for Debtor, W.R. Grace & Co.

17

18   BY:   DEANNA BOLL, ESQ.

19         JOHN DONLEY, ESQ.

20         ADAM PAUL, ESQ.

21         (TELEPHONICALLY)

22

23

24

25
```

Page 23

```
 1

 2   KOZYAK, TROPIN & THROCKMORTON, PA

 3        Attorneys for Anderson Memorial Hospital

 4

 5   BY:   DAVID L. ROSENDORF, ESQ.

 6        (TELEPHONICALLY)

 7

 8   KRAMER LEVIN NAFTALIS & FRANKEL, LLP

 9        Attorneys for Official Committee of Equity Holders

10

11   BY:   DAVID E. BLABEY, JR.

12        (TELEPHONICALLY)

13

14   LANDIS RATH & COBB LLP

15        Attorneys for Federal Insurance Company

16

17   BY:   RICHARD S. COBB, ESQ.

18        JAMES S. GREEN, JR., ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25
```

Page 24

```
 1

 2   LAW OFFICES OF ALAN B. RICH

 3        Attorneys for Property Damage Future Claimants'

 4         Representative

 5

 6   BY:   ALAN B. RICH, ESQ.

 7         (TELEPHONICALLY)

 8

 9   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

10        Attorneys for Official Committee of Asbestos Property

11         Damage Claimants

12

13   BY:   ELIZABETH J. CABRASER, ESQ.

14         (TELEPHONICALLY)

15

16   LINCOLN INTERNATIONAL LLC

17        Attorneys for Other Prof., David T. Austern, Future

18         Claimants Representative

19

20   BY:   CLAIRE BURKE, ESQ.

21         GEORGE COLES, ESQ.

22         JOSEPH RADECKI, ESQ.

23         JASON SOGLANICK, ESQ.

24         (TELEPHONICALLY)

25
```

1

2   MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.

3        Attorneys for Everett Reinsurance Company, et al.

4

5   BY:   MICHAEL F. DUGGAN, ESQ.

6        BRIAN L. KASPRZAK, ESQ.

7        (TELEPHONICALLY)

8

9   ORRICK HERRINGTON & SUTCLIFFE

10        Attorneys for Other Prof., David T. Austern, Future

11         Claimants Representative

12

13   BY:   DEBRA FELDER, ESQ.

14        ROGER FRANKEL, ESQ.

15        RICHARD H. WYRON, ESQ.

16        (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

1

2   PAUL WEISS RIFKIND WHARTON & GARRISON LLP

3        Attorneys for Bank Lender Group

4

5   BY:   SARAH HARNETT, ESQ.

6         MARGARET A. PHILLIPS, ESQ.

7         ANDREW N. ROSENBERG, ESQ.

8         STEPHEN SHIMSHAK, ESQ.

9         REBECCA ZUBATY, ESQ.

10        (TELEPHONICALLY)

11

12  PEPPER HAMILTON LLP

13        Attorneys for Burlington Northern Santa Fe Railway

14

15  BY:   LINDA J. CASEY, ESQ.

16        (TELEPHONICALLY)

17

18  PHILLIPS, GOLDMAN & SPENCE, P.A.

19        Attorneys for Other Prof., David T. Austern, Future

20         Claimants Representative

21

22  BY:   JOHN C. PHILLIPS, JR., ESQ.

23        (TELEPHONICALLY)

24

25

1

2   RICHARDSON PATRICK WESTBROOK &

3         Attorneys for Official Committee of Asbestos Property

4          Damage Claimants

5

6   BY:   EDWARD J. WESTBROOK, ESQ.

7         (TELEPHONICALLY)

8

9   RIKER, DANZIG, SCHERER, HYLAND &

10        Attorneys for Official Committee of Asbestos Property

11         Damage Claimants

12

13  BY:   TARA MONDELLI, ESQ.

14        (TELEPHONICALLY)

15

16  SCOTT LAW GROUP

17        Attorneys for Official Committee of Asbestos Property

18         Damage Claimants

19

20  BY:   DARREL SCOTT, ESQ.

21        (TELEPHONICALLY)

22

23

24

25

1

2    SIMPSON THACHER & BARTLETT LLP

3         Attorneys for Travelers Casualty and Surety Co.

4

5    BY:   ELISA ALCABES, ESQ.

6         (TELEPHONICALLY)

7

8    SKADDEN ARPS SLATE MEAGHER & FLOM LLP

9         Attorneys for Sealed Air Corp.

10

11   BY:   DOUGLAS HERMANN, ESQ.

12         DAVID M. TURETSKY, ESQ.

13         (TELEPHONICALLY)

14

15   SPEIGHTS & RUNYAN

16         Attorneys for Official Committee of Asbestos Property

17          Damage Claimants

18

19   BY:   ALAN RUNYAN, ESQ.

20         DANIEL SPEIGHTS, ESQ.

21         GIBSON SOLOMONS, ESQ.

22         (TELEPHONICALLY)

23

24

25

Page 29

```
 1

 2   STROOCK & STROOCK & LAVAN LLP

 3        Attorneys for Official Committee of Asbestos Property

 4         Damage Claimants

 5

 6   BY:   ARLENE G. KRIEGER, ESQ.

 7         (TELEPHONICALLY)

 8

 9   THE BRANDI LAW FIRM

10        Attorneys for Official Committee of Asbestos Property

11         Damage Claimants

12

13   BY:   THOMAS J. BRANDI, ESQ.

14         (TELEPHONICALLY)

15

16   THE HOGAN FIRM

17        Attorneys for Candian ZAI Claimants & Various Law Firms

18

19   BY:   DANIEL K. HOGAN, ESQ.

20         (TELEPHONICALLY)

21

22

23

24

25
```

1

2    WARREN H. SMITH & ASSOCIATES

3          Attorneys for Warren H. Smith

4

5    BY:   WARREN H. SMITH, ESQ.

6          (TELEPHONICALLY)

7

8    WINDELS MARX LANE & MITTENDORF LLP

9          Attorneys for Allstate Insurance Company

10

11   BY:   ANDREW K. CRAIG, ESQ.

12         (TELEPHONICALLY)

13

14   USG CORPORATION (01-02094):

15   FRANK GECKER LLP

16         Attorneys for Frank Gecker LLP

17

18   BY:   JOSEPH FRANK, ESQ.

19         (TELEPHONICALLY)

20

21   THE HOGAN FIRM

22         Attorneys for Various Law Firms

23

24   BY:   DANIEL K. HOGAN, ESQ.

25         (TELEPHONICALLY)

1

2    UNITED STATES MINERAL PRODUCTS COMPANY (01-02471):

3    FRANK GECKER LLP

4         Attorneys for Frank Gecker LLP

5

6    BY:   JOSEPH FRANK, ESQ.

7         (TELEPHONICALLY)

8

9    THE HOGAN FIRM

10        Attorneys for Various Law Firms

11

12   BY:   DANIEL K. HOGAN, ESQ.

13        (TELEPHONICALLY)

14

15   ACandS, INC. (02-12687):

16   FRANK GECKER LLP

17        Attorneys for Frank Gecker LLP

18

19   BY:   JOSEPH FRANK, ESQ.

20        (TELEPHONICALLY)

21

22

23

24

25

1

2  THE HOGAN FIRM

3       Attorneys for Various Law Firms

4

5  BY:   DANIEL K. HOGAN, ESQ.

6       (TELEPHONICALLY)

7

8  DEL SOLE CAVANAUGH STROYD, LLC

9       Attorneys for Garlock Sealing Technologies, LLC

10

11 BY:   RICHARD A. SWANSON, ESQ.

12       (TELEPHONICALLY)

13

14 NORTH AMERICAN REFACTORIES COMPANY (02-20198):

15 CAMPBELL & LEVINE

16       Attorneys for Committee of Asbestos Creditors

17

18 BY:   PHILLIP MILCH, ESQ.

19       DAVID SALZMAN, ESQ.

20       (TELEPHONICALLY)

21

22

23

24

25

Page 33

```
 1
 2   REED, SMITH, SHAW & MCCLAY
 3        Attorneys for Debtor, North American Refactories Company
 4
 5   BY:   JAMES J. RESTIVO, ESQ.
 6         (TELEPHONICALLY)
 7
 8   SHERRARD, GERMAN & KELLY, P.C.
 9        Attorneys for Mr. Pahigian
10
11   BY:   GARY P. NELSON, ESQ.
12         (TELEPHONICALLY)
13
14   WILMER CUTLER PICKERING HALE & DORR
15        Attorneys for Hartford Insurance Company
16
17   BY:   NANCY MANZER, ESQ.
18         (TELEPHONICALLY)
19
20   COMBUSTION ENGINEERING, INC. (03-10495):
21   FRANK GECKER LLP
22        Attorneys for Trust Advisory Committee
23
24   BY:   JOSEPH FRANK, ESQ.
25         (TELEPHONICALLY)
```

1

2    THE HOGAN FIRM

3         Attorneys for Various Law Firms

4

5    BY:   DANIEL K. HOGAN, ESQ.

6         (TELEPHONICALLY)

7

8    MID-VALLEY, INC. (03-35592):

9    K&L GATES LLP

10        Attorneys for Debtor, Mid-Valley, Inc.

11

12   BY:   JEFFREY N. RICH, ESQ.

13        (TELEPHONICALLY)

14

15   THE FLINTKOTE COMPANY AND FLINTKOTE MINES LIMITED (04-11300):

16   CROWELL & MORNING LLP

17        Attorneys for Aviva Insurance Company of Canada

18

19   BY:   LESLIE A. DAVIS, ESQ.

20        MARK PLEVIN, ESQ.

21        (TELEPHONICALLY)

22

23

24

25

```
1

2    FOX ROTHSCHILD LLP

3          Attorneys for 8 Frederick Place, LLC

4

5    BY:   NICHOLAS KONDRASCHOW, ESQ.

6          (TELEPHONICALLY)

7

8    FRANK GECKER LLP

9          Attorneys for Frank Gecker LLP

10

11   BY:   JOSEPH FRANK, ESQ.

12         (TELEPHONICALLY)

13

14   KING & SPALDING LLP

15         Attorneys for Imperial Tobacco Canada Limited

16

17   BY:   MARK MALONEY, ESQ.

18         JAMES A. PARDO, JR., ESQ.

19         THAD WILSON, ESQ.

20         (TELEPHONICALLY)

21

22

23

24

25
```

1

2    MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.

3         Attorneys for Aviva Insurance Company of Canada

4

5    BY:   MICHAEL F. DUGGAN, ESQ.

6          BRIAN L. KASPRZAK, ESQ.

7          (TELEPHONICALLY)

8

9    PACHULSKI STANG ZIEHL & JONES

10        Attorneys for Debtor, The Flintkote Company and Flintkote

11         Mines Limited

12

13   BY:   JAMES E. O'NEILL, ESQ.

14         (TELEPHONICALLY)

15

16   SIDLEY AUSTIN LLP

17        Attorneys for Debtor, The Flintkote Company

18

19   BY:   JEFFREY BJORK, ESQ.

20         CHRISTINA M. CRAIGE, ESQ.

21         KEVIN LANTRY, ESQ.

22         (TELEPHONICALLY)

23

24

25

Page 37

```
 1

 2   THE HOGAN FIRM

 3        Attorneys for Various Law Firms

 4

 5   BY:   DANIEL K. HOGAN, ESQ.

 6        (TELEPHONICALLY)

 7

 8   TUCKER ARENSBERG

 9        Attorneys for Certain London Market Insurance Companies

10

11   BY:   MICHAEL SHINER, ESQ.

12        (TELEPHONICALLY)

13

14   WALKER WILCOX MATOUSEK LLP

15        Attorneys for Mount McCainley & Everest Insurance Co.

16

17   BY:   BRITT WALTHER, ESQ.

18        (TELEPHONICALLY)

19

20   WARREN H. SMITH & ASSOCIATES, P.C.

21        Attorneys for Warren H. Smith

22

23   BY:   WARREN H. SMITH, ESQ.

24        (TELEPHONICALLY)

25
```

1                    P R O C E E D I N G S

2            THE COURT:  Just for the record, in Kaiser Aluminum,

3   I've signed the order that Mr. Minuti handed me with respect to

4   the heard matter.  And so let me give it --

5            Okay.  I think what we'll do is start with the Garlock

6   matters that have been filed in ACandS, Armstrong World

7   Industries, Combustion Engineering, Flintkote, Kaiser Aluminum,

8   Owens Corning, US Mineral Products, USG Corporation and W.R.

9   Grace.

10           I don't think I've got entries of appearance in court,

11  though.  I better do that first, please.  Good morning.

12           MR. WERKHEISER:  Good morning, Your Honor.  Morris

13  Nichols Arsht & Tunnell LLP, Delaware counsel for Garlock

14  Sealing.  I'm joined at counsel's table by my colleague,

15  Matthew Harvey from our firm, and then our co-counsel, Mssrs.

16  Garland Cassada and Richard Worf.

17           THE COURT:  All right.  Thank you.

18           MR. WERKHEISER:  Thank you, Your Honor.

19           MR. ESSERMAN:  Good morning, Your Honor.  Sandy

20  Esserman on behalf of various law firms.

21           MS. RAMSEY:  Good morning, Your Honor.  Natalie

22  Ramsey, Montgomery, McCracken, Walker & Rhoads on behalf of

23  various law firm objectors.

24           MR. SCHEPACARTER:  Good morning, Your Honor.  Richard

25  Schepacarter for the United States trustee.

1          MR. LOCKWOOD:  Good morning, Your Honor.  Peter

2    Lockwood on behalf of the Trust Advisory Committees of the

3    Grace, Flintkote, Pittsburgh Corning and NARCO Trust.

4          MR. MADRON:  Good morning, Your Honor.  Jason

5    Madron --

6          MR. LOCKWOOD:  Excuse me.  I apologize.

7          MR. MADRON:  That's okay.

8          MR. LOCKWOOD:  I misspoke, Your Honor.  On behalf of

9    the Asbestos Claimants' Committee.  It's not the Trust Advisory

10   Committee.  I apologize, Your Honor.

11         THE COURT:  All right.

12         MR. LOCKWOOD:  Sorry.

13         MR. MADRON:  That's quite all right.  Again, Your

14   Honor, Jason Madron of Richards Layton & Finger on behalf of

15   Armstrong World Industries.  I'm also joined on the telephone

16   by Ms. Dandeneau and Ms. Zigman of Weil Gotshal, my co-counsel.

17         MR. LEONHARDT:  Good morning, Your Honor.  Scott

18   Leonhardt, The Rosner Law Group.  I'm here on behalf of the

19   reorganized debtors of U.S. Minerals and ACandS.  I'm also

20   joined by my co-counsel, Kevin Irwin, from Keating Muething &

21   Klekamp.  Thank you.

22         MS. ZIEG:  Good morning, Your Honor.  Sharon Zieg of

23   Young Conaway Stargatt & Taylor on behalf of the futures

24   representative in ACandS, Flintkote and Pittsburgh Corning.

25         MR. ISENBERG:  Good morning, Your Honor.  Adam

Page 40

1    Isenberg, Saul Ewing, on behalf of reorganized Owens Corning.

2    I'm here with Mark Minuti of our Wilmington office.  Thank you.

3         MR. FINCH:  Good morning, Your Honor.  Nate Finch of

4    Motley Rice on behalf of certain Motley Rice clients in the

5    various bankruptcy cases.

6         THE COURT:  Good morning.

7         MR. HORAN:  Good morning, Your Honor.  Thomas Horan of

8    Womble Carlyle Sandridge & Rice along with Michael Rosenthal of

9    Gibson Dunn & Crutcher for the Fuller-Austin Asbestos Trust, U.

10   Texas Asbestos Trust, NGEC and one other, Your Honor.  Thank

11   you.

12        THE COURT:  Anyone else?  Mr. Cassada, are you

13   presenting the argument?

14        MR. CASSADA:  Yes, Your Honor.  Thank you.  Good

15   morning.  Thank you again.  Your Honor, on behalf of Garlock

16   Sealing Technologies, there are several motions pending before

17   you in twelve different bankruptcy cases.  There are motions to

18   intervene in twelve cases, motions to reopen cases in seven of

19   the twelve.  And then in all of the cases, Your Honor, Garlock

20   has renewed its motions for access to Rule 2019 statements.

21        I will briefly address the legal issues.  Mr. Worf,

22   again, will address the exhibits.  We'll move to admit the same

23   exhibits that we moved for last time plus the affidavit that

24   was submitted with our original motion.  And then we'll sit

25   down.

Page 41

1        I'm not going to rehash all of the arguments that were

2   made in support of the motion to -- for access unless the Court

3   has questions about it because that was thoroughly argued

4   before.

5        THE COURT:  Before we get to the substance, Mr.

6   Cassada, could I just ask how I'm supposed to be getting the

7   binders because I didn't get everything that was filed.  We

8   found some things on the docket.  I'm not sure I've seen

9   everything because I don't know if everything's been filed.  So

10  is Garlock taking the responsibility for putting the binders

11  together so that I make sure that I have everything that is

12  filed in all these cases?

13        MR. CASSADA:  Thank you, Your Honor.  Let me let Mr.

14  Werkheiser address that.

15        THE COURT:  All right.  Thank you.  Mr. Werkheiser?

16        MR. WERKHEISER:  Good morning, Your Honor.  We did get

17  a communication from your chambers, I think, shortly before the

18  deadline for the preliminary binder to be submitted indicating

19  that Your Honor wanted us to prepare binders.  So we did make

20  an effort to do that.  If there was something that was omitted,

21  I apologize.  I'm not sure what didn't get included.

22        THE COURT:  Well, I didn't get anything from Owens,

23  Owens Corning, at all --

24        MR. MINUTI:  Your Honor, sorry to stand up.

25        THE COURT:  -- in this binder.

1          MR. MINUTI:  We did --

2          MR. ISENBERG:  We did send a binder over also, Your

3    Honor.

4          THE COURT:  Yes.  I'm sorry.  I'm addressing Garlock's

5    pleadings.

6          MR. MINUTI:  That's fine.  Thank you.

7          UNIDENTIFIED SPEAKER:  Your Honor, can I say

8    something?  It is my understanding that someone at Garlock was

9    going to take care of all the 2019 cases.  Some counsel for

10   some of the other cases were unaware of that.  What we got from

11   Garlock did not include everything that was filed in all the

12   cases.  The preliminary agenda, I don't think, has any of the

13   Pittsburgh cases identified and tabbed.  So --

14         THE COURT:  Okay.  We just --

15         UNIDENTIFIED SPEAKER:  -- we want --

16         THE COURT:  Yeah.  I need to know who's going to take

17   the responsibility -- I don't think I've issued any orders but

18   perhaps I need to because I do need to get everything that's

19   filed so that I can be prepared for hearings.  And I'm not sure

20   that I have everything.  Hopefully I do but I just don't know.

21   So is Garlock going to take the responsibility for these series

22   of motions that have been commenced by Garlock for putting the

23   binders together.

24         MR. WERKHEISER:  And, Your Honor, we'll proceed in

25   whatever manner the Court prefers or directs.  We did receive

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 43

1    the communication from your chambers saying that we should do

2    it for this hearing.  We attempted to do so and if we did it

3    imperfectly, I apologize.

4            THE COURT:  Okay.  Well, yes, if you would please --

5    everyone who's filing anything, make sure -- Mr. Werkheiser, is

6    it your firm that's putting the materials together?

7            MR. WERKHEISER:  Yes, Your Honor.

8            THE COURT:  Okay.  Send a copy of everything to Mr.

9    Werkheiser so that he can put everything in the preliminary

10   binders.  And if you would do it, please, in the traditional

11   format:  your motions separately tabbed items and the responses

12   separately tabbed.  And then if there are replies or sur-

13   replies, which I am going to be very loathe to grant leave to

14   file in these cases because there's been so much done already.

15   If we even another round, I don't know.  We'll see -- then

16   those separately tabbed as well.  And then if you'd just do an

17   index so I have some clue as to what is included in the

18   binders, that would be helpful.

19           MR. WERKHEISER:  And, Your Honor, just so we

20   understand from a formatting point, if there is further agendas

21   necessary -- I mean, what we tried to do was have sort of a

22   global one main agenda that would cross all of the cases.  Do

23   you want separate agendas prepared --

24           THE COURT:  No, no.

25           MR. WERKHEISER:  -- for each individual case?

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 44

1           THE COURT:  One agenda is fine.  I just want one

2    consolidated agenda that tells me what's behind what tabs so

3    that I can find them.  That's all.

4           MR. WERKHEISER:  Okay.  And we'll item index if we're

5    doing a further agenda.

6           THE COURT:  All right.

7           MR. WERKHEISER:  Thank you, Your Honor.

8           THE COURT:  Thank you.  Oh, yes, Mr. Werkheiser, if

9    you'd -- include all of the cases in which anybody's filed

10   anything, including the Pittsburgh cases because I'm hearing

11   all these hearings in a consolidated fashion.  So the

12   Pittsburgh cases are on today's agenda to the extent that

13   they're Garlock motions.

14          MR. WERKHEISER:  Understood, Your Honor.  We'll make

15   sure that happens.  And in the future, I know Garlock is

16   separately represented by local counsel in Pittsburgh but we

17   will coordinate with them.

18          THE COURT:  All right.

19          MR. WERKHEISER:  Thank you.

20          MR. LEONHARDT:  Sorry, Your Honor.  Just very briefly

21   -- Scott Leonhardt at The Rosner Law Group, local counsel to US

22   Minerals and ACandS, the reorganized debtors.  Just wanted to

23   state for the record that we did reach out to Garlock's local

24   counsel and they had agreed to prepare the binders.  So to the

25   extent they weren't done correctly, we certainly apologize.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 45

1           THE COURT:  Okay.

2           MR. LEONHARDT:  Just wanted to say on the record that

3    we've reached out.

4           THE COURT:  That's fine.  I just want to make sure I

5    have everything.  This issue is only just to make sure that my

6    staff and I have an opportunity to read the things that are

7    filed.  That's all.  So, perhaps, Mr. Werkheiser, after this

8    hearing, if you could just go through the binder, copy the

9    binder that you have and make sure that, in fact, I do have

10   everything.  I do have Owens.  They filed a separate binder.

11   But except for that, to make sure that what you included

12   includes everything.  And I don't know -- we printed the

13   Pittsburgh case binders?

14          MR. WERKHEISER:  Yes, Your Honor.  And I do believe

15   the Owens material did make it into our binder as well.

16          THE COURT:  Oh, okay.  It may be.  I saw it --

17          MR. WERKHEISER:  But it may be that some of the

18   Pittsburgh materials didn't get in there and we will

19   certainly --

20          THE COURT:  Include those.

21          MR. WERKHEISER:  -- provide those to chambers if, for

22   some reason, they were omitted.

23          THE COURT:  All right.

24          UNIDENTIFIED SPEAKER:  I have Mid-Valley's.

25          THE COURT:  He's adding Mid-Valley.

1           MR. WERKHEISER:  I'm sorry?  Which --

2           UNIDENTIFIED SPEAKER:  Mid-Valley's.

3           MR. WERKHEISER:  Mid-Valley's?

4           THE COURT:  I have Mid-Valley's response.  It was --

5    that was printed separately.  But I think it would be helpful

6    to have everything in the set of binders so that we can refer

7    to the documents.  That's all I'm asking.  Just go through it.

8    Make sure that whatever was filed, we got some kind of copy

9    somewhere.

10          MR. WERKHEISER:  We will do that, Your Honor --

11          THE COURT:  Okay.

12          MR. WERKHEISER:  -- and notify chambers if we run

13   across anything that wasn't included in our materials.

14          THE COURT:  All right.  Thank you.  Okay, Mr. Cassada.

15          MR. CASSADA:  Thank you.

16          THE COURT:  Thank you.

17          MR. CASSADA:  Thank you, Your Honor.  Your Honor, very

18   brief background statement.  Garlock moved for access to

19   Exhibits to Rule 2019 statements filed by law firms in these

20   twelve bankruptcy cases.  Consistent with Rule 2019, the

21   statements state that the exhibits identify personal injury

22   creditors of the respective debtors.  Now some of these would

23   be claimants with disputed unliquidated claims.  Others would

24   be claimants whose claims have been resolved subject to a

25   settlement agreement.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 47

1       Rule 2019 statements and exhibits are judicial records

2    required under the law to be opened to public exception unless

3    some -- excuse me -- public inspection unless some exception

4    exists.  In these twelve cases, the exhibits were not placed on

5    the electronic docket but filed with the clerk on compact

6    disks.  The Court entered orders in each of the twelve cases

7    that the exhibits are subject to access upon motion and order.

8    And those orders remain in effect.  The Court also ordered that

9    when a case is closed, the clerk shall archive the 2019

10   statements and supplements with the case filed.

11       It's important to note than when challenged by certain

12   insurance companies in the case, the district court and the

13   Third court on appeal explained that the orders do nothing more

14   than establish procedures for parties and members of the public

15   to obtain access.  There has been no findings or rulings to the

16   effect that any reason exists to restrict the public's access -

17   - right of access to the exhibits.  Garlock contends it is

18   entitled to the exhibits; in fact, has a presumptive right to

19   access the exhibits because they are judicial records to which

20   Garlock, as a member of public, has a right under Code section

21   107, the First Amendment to the United States Constitution and

22   common law.

23       The Court, on February 14, ruled from the bench that

24   Garlock's were procedurally defective because Garlock had not

25   properly moved to intervene in the twelve cases or to reopen

1    seven cases that have been closed.  Since February 14, Garlock

2    has filed motions to intervene in all the cases and motions to

3    reopen in the seven closed cases.  And we're fortunate, Your

4    Honor, in that there is extensive case law in the Third Circuit

5    regarding the public's right to access judicial records and, in

6    fact, addressing the very issues before the Court today.  We

7    believe, at the end of the day, the law is clear that Garlock

8    has a right to intervene in the cases to seek access to the

9    Rule 2019 statements and even in the seven cases that have been

10   closed.

11            Your Honor, I'll begin with our motion to intervene.

12   And we have cited and discussed extensively several cases

13   including the case Pansy v. Borough of Stroudsburg.  And I'll

14   refer to that case in connection with both of our motions.  But

15   in Pansy, the Third Circuit reaffirmed that the procedural

16   device of permissive intervention is an appropriate way, but

17   not necessarily the only way, for a litigant who is not an

18   original party to an action to challenge a protective or

19   confidentiality order.

20            There are two questions associated with intervention.

21   First is standing.  And in these cases, it's clear, under

22   Pansy, that Garlock has standing.  The Third Circuit has

23   repeatedly recognized that third parties have standing to

24   obtain access to judicial records.  For standing, the parties

25   seeking access need only show that there is an order presenting

1    an obstacle to access of a judicial record.  A ruling giving

2    Garlock access would redress that obstacle.  Again, this is in

3    Pansy.

4           And in this Court, Judge Walrath, in the Alterra case,

5    ruled as well that that's all that need be shown to establish

6    standing.  So there's an injury in fact that is redressable by

7    a ruling from this Court.  Garlock has standing.

8           Now, contrary to arguments that have been raised by

9    the objectors, it doesn't matter that Garlock is not a media

10   outlet but a private litigant advancing litigation goals.  The

11   Third Circuit in several cases have recognized that private

12   litigants have rights to access under the public access rules.

13   Specifically, in Bank of America v. Hotel Rittenhouse, the

14   Third Circuit rules that the applicability and importance of

15   the public right of access is not lessened because it is

16   asserted by a private party to advance its own interest in

17   pursuing lawsuits.  In Bank of America, the applicant was a

18   subcontractor seeking a confidentiality -- a confidential

19   settlement agreement between a developer and its lender.  The

20   subcontractor was suing the lender and claiming that the lender

21   was guilty of a conspiracy and that the settlement agreement

22   would somehow support that claim.

23          Likewise, in the case of Leucadia v. Applied Extrusion

24   Technologies, the Third Circuit ruled that a private litigant

25   had standing to intervene to seek public access to judicial

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 50

1   records in a case where shareholders of a corporation who were

2   not parties to the original case sought documents that had been

3   filed in discovery in trade secret litigation.  The Court --

4   Third Circuit likewise said that they had standing to seek

5   public access.

6          So, Your Honor, the idea that Garlock cannot be

7   regarded as a member of the public has been thoroughly rejected

8   by the Third Circuit.

9          As to intervention itself, Your Honor, we submit that

10  cause exists under Bankruptcy Rule 2018 and Rule 24(b) of the

11  federal rules.  Again, Pansy v. Stroudsburg is on point here as

12  well as the Alterra case.  Under Bankruptcy Rule 2018(a), the

13  Court, for cause shown, may permit any interested party to

14  intervene generally or with respect to any specified matter.

15  It's a very broad standard.  Judge Walrath ruled that Rule

16  24(b)(2) regarding permissive intervention is made applicable

17  to the motion to intervene by Rule 2018(a).  Under Rule

18  24(b)(2), intervention should be authorized when an applicant's

19  claim or defense in the main action have a question of law or

20  fact in common.  Now, under Pansy, the Third Circuit ruled that

21  this requirement is met when intervention is sought to

22  vindicate the right of public access to judicial records.

23          Now, that the intervenor for public access does not

24  assert a claim involving the same legal theory is not a

25  consequence when the applicant is not trying to become a party

Page 51

1    to the action.  The Third Circuit explained in Pansy that such

2    a strong nexus is not required when the applicant seeks

3    intervention to obtain public access to judicial records.

4    Cause to intervene is established simply by the fact that

5    Garlock cannot obtain public access without the order it seeks

6    from the Court.

7         Now the objecting firms have suggested that Pansy's

8    ruling on standing doesn't apply because this is a bankruptcy

9    case.  And Rule 2018 not Federal Rule 24(b) applies.  Well,

10   this is wrong.  First, as Judge Walrath recognized in Alterra,

11   Rule 2018 and Rule 24(b) applies.  But, second, Rule 2018 is

12   broader than Rule 24(b).  24(b) is much more restrictive.

13        Finally, Your Honor, the motion is timely and

14   prejudices no party.  As the Court pointed out in Pansy,

15   there's no time requirement under Rule 24 to seek to intervene

16   by a certain deadline.  When intervention is sought to

17   challenge an order to access public records, intervention has

18   been permitted long after cases have been terminated, even

19   dismissed with prejudice which is what happened in the Leucadia

20   case.  The Third Circuit in Pansy recognized that there's a

21   growing consensus that intervention to challenge a protective

22   order may take place after a case is terminated.

23        In Leucadia, the district court considered a motion to

24   intervene for purpose of challenging in order to gain public

25   access and denied it.  The Third Circuit reversed in Leucadia.

1    And then in the Pansy case, point out "This recognition in

2    Leucadia in combination with a forming consensus of other

3    courts of appeals provide strong reason to allow a district

4    court to grant permissive intervention in order to litigate

5    ancillary issues such as public access even after a case has

6    been concluded.

7         And there's no argument that intervention could result

8    in any prejudice of any kind.  The cases concluded -- some of

9    these cases have concluded - most of them, even the open

10   ones -- there are many issues that have been decided.  Garlock

11   doesn't seek to intervene as a party to change any result just

12   to gain access to judicial records.  There's no prejudice.

13        Now moving, Your Honor, to the motion to reopen the

14   cases, Bankruptcy Code Section 350(b) is very broad.  It says a

15   case can be reopened in the court in which the case was closed

16   to administer assets, to record relief to the debtor or for

17   other cause.  Now the Third Circuit has held that the cause

18   standard is very broad.  And the bankruptcy court has broad

19   discretion to reopen cases if it's necessary and if it's

20   necessary in this case.  And we believe that, if it is

21   necessary, that a request for access to judicial records

22   establishes cause.

23        There's only one decision on point.  That decision's

24   been briefed by us and the objectors.  And that's the North Bay

25   General Hospital case out of the Southern District of Texas.

1    But in that case, the bankruptcy court easily concluded that

2    the case could be reopened to consider an application for

3    access to judicial records.  Its reasoning was that the

4    applicant seeks to access judicial records where public access

5    was restricted.  And in that particular case, the Court had

6    never ruled whether restricting access was necessary or proper.

7            And, Judge, also I stated that the Court stated in the

8    order that it would retain jurisdiction over the order.  We

9    think this reasoning applies as well in this case, in all of

10   these twelve cases.  The exhibits have remained off the docket

11   subject to the order notwithstanding the cases being closed.

12   If the public wants access to them, the only way they can get

13   them under the order is to apply with the court.

14           We believe that the Court did retain jurisdictions in

15   the orders.  And we think at least in four of the seven closed

16   cases that if a retention of jurisdiction was necessary in four

17   of the seven closed cases, the Court did precisely that in the

18   orders closing the cases.  And there's never been a finding as

19   the district court has found that a basis exists to overcome

20   the presumptive right of public access.

21           And finally, Your Honor, there is no prejudice.  And

22   there's no expense to the estate or to any party.  Garlock will

23   pay the cost of copying the exhibits.  No relief that's been

24   entered by the Court in any of the cases will be altered.  And

25   we don't believe that there's any need for the payment of U.S.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 54

1    trustee's fees if the cases are opened for the purpose of

2    permitting access.  And, in fact, we believe that there's ample

3    precedent in this court to open cases for limited purposes and

4    close them without the payment of a fee.

5            Your Honor, we also don't believe that there's a need

6    to reopen the cases.  We know the Court has ruled in this.  But

7    I'd like to address it briefly.  The Supreme Court in the Nixon

8    case ruled that the Court hasn't had jurisdiction in power to

9    supervise its records and to hear motions regarding records.

10   Specifically, in the context of a bankruptcy case, the advisory

11   notes to Rule 3022 state that after a case is closed, the

12   bankruptcy court continues to have jurisdiction to interpret

13   and enforce orders entered in the cases.

14           In Leucadia and Pansy, two decisions I've spoken

15   about, the Third Circuit ruled that the Court could exercise

16   jurisdiction after cases were terminated.  In Pansy, in

17   particular, the Court ruled that an independent jurisdictional

18   basis is not required because the interveners did not seek to

19   litigate a claim on the merits.  And where they seek merely to

20   gain access to documents under a Court order, jurisdiction's

21   based on the fact that the Court already has power to interpret

22   its own orders and to provide relief under protective orders.

23           And finally, Your Honor, we believe that in at least

24   four of the cases, the Court retained jurisdiction to hear

25   these motions just as it retained jurisdiction in the ACandS

1   case to consider the Trust complaint.  Specifically, for

2   example, in the Armstrong case, the plan said that "The Court

3   shall retain and shall have exclusive jurisdiction over any

4   matter arising under the Bankruptcy Code, arising in or related

5   to the Chapter 11 case of the plan or to perform any of the

6   following acts."  So there's a very broad retention of

7   jurisdiction there.  And in the order closing the case, the

8   Court ordered that it would retain jurisdiction as provided for

9   in the plan.

10          And in some cases, such as the Combustion Engineering,

11   the retention of jurisdiction was much more specific.  Not only

12   did it include the broad language that I just described, Your

13   Honor, but it also included language to the effect that the

14   Court retain jurisdiction here and determine any other matters

15   related hereto including the implementation and enforcement of

16   all orders entered by the bankruptcy court in the Chapter 11

17   case.  So this is an implicit recognition of what the advisory

18   rules to -- Advisory Note's rule 3022 states and that is that

19   the Court, even after cases close, retains jurisdiction to

20   interpret and enforce its orders.

21          There's similarly specific language like that, Your

22   Honor, in other cases -- in other orders closing cases.  In

23   Owens Corning, for example, and there's a more specific

24   retention of jurisdiction and the confirmation order that is

25   specifically reserved in the order closing the case.  And in

1    USG, there's a general or broad retention of all jurisdiction

2    to the fullest extent provided under the jurisdictional

3    statutes.

4         So, Your Honor, we believe that the Court, if it's

5    necessary to have a retention of jurisdiction provision in

6    order to hear a matter without reopening the case -- we believe

7    that the Court has done that in these cases.

8         Your Honor, I'd like to briefly address one point that

9    was raised by the Court on February 14 when we were here and

10   that's been raised in some of the pleadings and that is

11   Garlock's purpose.  Your Honor, we don't believe that Garlock's

12   purpose is relevant except that the Court has stated a concern

13   that maybe the purpose isn't a proper purpose which some of the

14   cases say that if a purpose is not proper then that might be a

15   basis for denying a right of public access.  But Garlock seeks

16   the document, these exhibits, for use in its own bankruptcy

17   case.  And that can be used in a number of manners.

18        One of those is to determine whether claimants were

19   consistent in the stories they were telling about whether they

20   had a claim against one of the four bankrupt co-defendants.

21   And these are claims that Garlock faced in the tort system.

22   And we believe that the statements will show that there's a

23   substantial overlap between the claims that are pursued in

24   bankruptcy cases not only overlap between the cases Garlock

25   received in bankruptcy but Your Honor is essentially receiving

1    the same claims in every bankruptcy case.  We believe that the

2    claims will show that Garlock's liabilities -- it's the cost to

3    resolve claims were temporarily inflated by the bankruptcy

4    cases.  And in fact, I don't believe there's much of a dispute

5    there.  But it's important for us to be able to show the extent

6    to which there was an overlap between the claims against

7    Garlock and claims against multiple co-defendants.  We believe

8    these documents would be helpful in showing that.

9           Your Honor, the 2019 statements also provide a

10   database showing aggregate claims filed against the twelve

11   defendants.  There's good reason to believe that the claims

12   filed against these defendants represent all or virtually all

13   of the claims asserted against defendants in the tort system.

14   That evidence would be helpful in our case for a number of

15   reasons.  Among others, it will assist the parties and the

16   Court in determining the voracity of different incidence models

17   that the experts will use to predict incidents of disease.

18          THE COURT:  Wait.  I'm sorry.  Would you state that

19   one for me -- you believe that this will show that -- the

20   aggregate claims database will show that the claims against,

21   essentially, the trust represent the claims that would have

22   been filed in the tort system?

23          MR. CASSADA:  Yes.

24          THE COURT:  Yes.  Well, isn't that kind of a foregone

25   conclusion?  They're not in the tort system.  So, in order to

1    show they had a claim against the defendant, they have to

2    assert it in bankruptcy if there is no tort system defendant to

3    assert it against and they have a claim against the --

4              MR. CASSADA:  Correct.

5              THE COURT:  -- trust.

6              MR. CASSADA:  What we believe is that, taken together,

7    the Rule 2019 statements will show the universe of all claims

8    filed in the tort system, the universe of all people who were

9    injured or claimed to have been injured by asbestos during the

10   last decade and who actually sought a remedy in the tort

11   system.

12             THE COURT:  Well, it will show all of the claims that

13   were filed against the defendants that would have been

14   defendants in the tort system but for the fact that they filed

15   bankruptcy and are now in a trust over the period of time that

16   you seek, yes --

17             MR. CASSADA:  Yes.

18             THE COURT:  -- 'cause they didn't have another place

19   to file.

20             MR. CASSADA:  Yes.

21             THE COURT:  So, I mean, that's a foregone conclusion.

22   It is what it is.  It's going to show the claims that were

23   filed against the trust, yes.

24             MR. CASSADA:  Yes.  And we believe that given the

25   industry's cover that it will show all of the ca -- it'll be a

1   good proxy for the universe of claims.  Period.  Not just

2   against the company.

3           And, of course, as I've indicated, it'll show the

4   overlap between claimants who pursue the remedy as the debtors

5   in our cases and the debtors in these cases.

6           THE COURT:  The creditors?  You said that -- I'm

7   sorry.  It'll show the incidents of overlap --

8           MR. CASSADA:  Show the overlap --

9           THE COURT:  -- between --

10          MR. CASSADA:  -- between claimants who pursue a remedy

11  against the debtors in these twelve cases.

12          THE COURT:  Okay.

13          MR. CASSADA:  And the debtors --

14          THE COURT:  And against Garlock.

15          MR. CASSADA:  And the debtors in our cases.

16          THE COURT:  Well, then why don't you give them the

17  list of claims that are filed against Garlock and have people

18  search and see whether or not those claims are filed against

19  Garlock.  That would show whether or not they filed claims

20  against some other entity.  But that's something Judge Hodges

21  ought to be ruling about in your claims against the trust not

22  me with respect to the 2019 statements.

23          MR. CASSADA:  But all -- yes --

24          THE COURT:  See, the problem is, Mr. Cassada -- I

25  still go back to this.  What you're really asking for is

1   information either that's in the ballots to the extent that

2   it's a claim against the debtor before confirmation or the

3   trust information to the extent that it's a claim against the

4   trust after confirmation.  The 2019 statements don't show any

5   of this.

6          MR. CASSADA:  The --

7          THE COURT:  They're not claims.

8          MR. CASSADA:  Yeah.  The 2019 statements -- consistent

9   with the rule and consistent with the language in the 2019

10  statements show people who hold claims against the debtors.

11         THE COURT:  No.  They show lawyers in -- let's just

12  limit it for the moment to lawyers.  They show lawyers who

13  represent more than one entity who may have a claim against the

14  debtor.  That "may" is a significant issue because they haven't

15  filed claims yet.  So, yes, the lawyers are saying I represent

16  A, B, C and D and A, B, C and D may have claims against the

17  debtor.  But until they either vote or file a claim against the

18  trust, they haven't pursued a claim against the debtor unless,

19  of course, they've already filed --

20         MR. CASSADA:  Sure.

21         THE COURT:  -- something in the tort system.  I'm

22  excluding --

23         MR. CASSADA:  Yes.

24         THE COURT:  -- that possibility 'cause that's kind of

25  irrelevant to the 2019 issue.

1          MR. CASSADA:  Sure.  Well, I mean, to begin with, Your

2     Honor, I don't believe what they say affects our entitlement to

3     the -- to public access.

4          THE COURT:  But --

5          MR. CASSADA:  And that's --

6          THE COURT:  -- you're suggesting, though, that you

7     want a right to public access for a private purpose which is to

8     prove that these entities have claims against Garlock and have

9     also filed claims against another entity.  That's not a public

10    purpose.  That's a private purpose.  It may be a legitimate

11    private purpose but it's not a public purpose.  It's private.

12    So, number one, I don't see that that's a right to public

13    access.  It's discovery in your own case.  That's what it is.

14    So I don't think it fits that public access mold.

15         But to the extent that somehow it is looking for

16    public information, your intended purpose is to compare claims.

17    And the 2019 statements don't compare claims or don't provide

18    claims.  So the purpose isn't proper because what you're trying

19    to do with the information isn't supported by the information

20    itself.  These aren't claims.  So --

21         MR. CASSADA:  Here's --

22         THE COURT:  -- I'm --

23         MR. CASSADA:  Well --

24         THE COURT:  -- I'm still --

25         MR. CASSADA:  Let me --

1          THE COURT:  -- lost.

2          MR. CASSADA:  Let me address -- there are several

3    points I want -- I mean, to begin with, the Third Circuit

4    disagrees with your statement about the standard being somehow

5    different for a private litigant versus someone -- some other

6    member of the public.  In fact --

7          THE COURT:  Actually, I don't think it did.  The cases

8    that you talked about all involved an entity that had a need

9    for the information related to litigation against a party to

10   one of those agreements.  There aren't really parties in the

11   2019 statements.  There are lawyers who are filing a statement

12   in compliance with the national rule that says they have to

13   identify who they represent if they represent more than one

14   entity.  So it isn't a party in a litigation.  And the need

15   isn't related to that litigation.  So the cases in the circuit

16   do say if you're a private entity and there is something

17   filed -- almost all of these issues involve settlement

18   agreements, not all, but almost all.  There's something in the

19   settlement agreement that may advance your specific cause

20   because those entities alleged a specific cause.  The

21   subcontractor was suing the contractor.  I can't remember what

22   happened in Pansy but it was also another specific

23   allegation --

24          MR. CASSADA:  Well, that was a newspaper in Pansy.

25          THE COURT:  Oh, that was a newspaper.

Page 63

1          MR. CASSADA:  You're thinking of Leucadia.  They were

2     derivatives, yeah.

3          THE COURT:  Yeah, that's right.  But -- and that's a

4     different issue with respect to public access.  I mean -- so I

5     don't think that the Third Circuit has addressed this specific

6     issue at all.

7          MR. CASSADA:  Well, I'm not so sure that's right, Your

8     Honor.  If you read those cases, the Third Circuit doesn't do

9     much more than state why these litigants wanted the records.

10    It doesn't analyze them.  In fact, in the Bank of America case,

11    it states plainly that the fact that these are private

12    litigants seeking private litigation goals doesn't lessen in

13    any way the right to public access.  So I think the Third

14    Circuit -- I think it's very much on point there.

15          So I don't believe that it would be proper for this

16    Court to analyze why we need them and find them to be improper

17    in that respect.

18          Now, the other thing the Court is doing is it seems to

19    be looking down the road as if you were the judge in our case

20    and deciding whether these dockets are going to be admissible

21    or useful to us at all.  And that's not the way you analyze a

22    right to public access.

23          THE COURT:  No.  And that's actually not what I'm

24    trying to do.  That's -- Judge Hodges can take those issues on

25    in Garlock's own bankruptcy case.  That's not what I'm

1    attempting to do.  When I'm looking at the purpose, I'm

2    analyzing -- I am accepting what you tell me your alleged

3    purpose is which is --

4              MR. CASSADA:  One of our purposes.

5              THE COURT:  Well, what are the rest of them then?

6              MR. CASSADA:  I told you that we want to identify the

7    universe of claimants against all of these bankruptcy --

8    bankrupt co-defendants which, we believe, will equate to the

9    universe of claimants against everyone.

10             THE COURT:  Okay.  But you're still talking in terms

11   of the word "claimants".  And the 2019s don't identify claims.

12   The ballots will or the claims against the trust will.

13             MR. CASSADA:  Well, let's --

14             THE COURT:  But the 2019s don't.

15             MR. CASSADA:  Well, let's be clear about one thing.

16   These are all claimants.  Now what Your Honor is suggesting is

17   maybe they don't want claims against the debtors where the

18   cases were filed.  But I don't believe anyone disputes that the

19   people listed are claimants.  They have asbestos-related

20   injuries and they've engaged law firms to represent them in

21   that.  So they are claimants.

22             Now --

23             THE COURT:  Well, no one would dispute the fact that a

24   lawyer said I represent A who may have a claim against the

25   debtor.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 65

1          MR. CASSADA:  Well, that's -- and that's the other

2     difference I have with Your Honor.  I think that the language

3     that you're using doesn't square with the rule, the order you

4     entered or the 2019 statements.  There's no equivocating in

5     these 2019 statements.  Nor is there in the rule.  The rule is

6     for a purpose, correct, to show that a law firm has authority

7     to represent the parties he represents.

8          THE COURT:  Right.

9          MR. CASSADA:  But Rule 2019 requires certain

10    information to be provided.  And that requirement is a

11    disclosure requirement so it's available to the public.  And

12    what it requires is the identity of a creditor, the basis for

13    the creditor's claim and other information including evidence

14    that you're authorized to represent the creditor.  And that's

15    what Your Honor's order required.  The rule doesn't require you

16    to put down anyone out there who you represent who might have a

17    claim.  It says you identify creditors.  The rule says that.

18    In the 2019 statements, they don't have many in them, Your

19    Honor.  If you read them --

20         THE COURT:  That's true.  What I --

21         MR. CASSADA:  If you read them, they're all very

22    clear.  And the majority of them are very specific.  And they

23    say that I represent these people and these people were injured

24    by products of these defendants.

25         THE COURT:  I --

1          MR. CASSADA:  There's no --

2          THE COURT:  I don't think that's what they say.

3          MR. CASSADA:  That is what they say, Your Honor.  They

4    say what they say.  But --

5          THE COURT:  They do say what they say.

6          MR. CASSADA:  -- it doesn't --

7          THE COURT:  But I agree with you.

8          MR. CASSADA:  You know, it doesn't matter.

9          THE COURT:  When I was using the word "may" --

10          MR. CASSADA:  If we want them, we can use them --

11          THE COURT:  Mr. Cassada, when I was using the word

12    "may", I wasn't attempting to say that that's what the statute

13    says.  I was attempting to say that the rule is broad enough to

14    encompass creditors, claimants, potential entities that a law

15    firm use right now when it files the 2019 statement that may

16    have a claim against the debtor.  That's what I was attempting

17    to get to.  It's not saying this is a ballot in favor of

18    creditor.  This is not a proof of claim filed on behalf of a

19    creditor.  This is simply a recognition by a law firm that it,

20    and nobody else, has the authority to represent A, B, C and D

21    in this case.  That's what it is.

22          MR. CASSADA:  That's the purpose of it, Your Honor,

23    but that's not what the information is that's covered.  And

24    that's not the information that's required to be covered by the

25    rule.

1          THE COURT:  Okay.

2          MR. CASSADA:  So I just don't think that you are

3    fairly giving effect to the language of the 2019 statements we

4    seek.  We've provided to you copies of 2019 statements from all

5    of the law firms that are objecting in this case.  And they're

6    all very specific, Your Honor.  And they all support the idea.

7    They all say I have personal knowledge.  I represent these

8    people.  These people have injury caused in part by exposure to

9    products of these -- of this defendant debtor.  That's what

10   they say.

11         So, I mean, to the extent that we're -- that you can

12   look down the road and determine whether we can use them for

13   any particular purpose, I don't think you can say that we can't

14   use them as evidence that these people have made a statement in

15   the case that they have claims or at least their lawyers have

16   made that statement.  And the exemplars will show that the

17   claimants authorized them to make those statements.

18         We also think, Your Honor, that all of the goals of --

19   public policy goals of public access are at play in Chapter 11

20   cases.  There is intense public interest in understanding the

21   dimensions of asbestos claims and changing trends and claiming

22   practices.  And also, the role that bankruptcies have and that

23   emerging trusts will have in the future in compensating for

24   asbestos-related injuries.

25         THE COURT:  Well, well has that intense interest shown

1    up, Mr. Cassada?  'Cause the only place I get it, frankly, is

2    Garlock.  And I've had probably more than any other judge in

3    the country in terms of bankruptcy cases that have come up.  So

4    where is this intense interest?

5            MR. CASSADA:  We have -- Your Honor, we have provided,

6    among our exhibits, articles --

7            THE COURT:  Yes, you did.  Most of them are -- I don't

8    know, ten, fifteen, twenty years old.  But you're saying

9    there's a current public interest --

10           MR. CASSADA:  Well, some of them --

11           THE COURT:  -- that you want to defend.  So where is

12   that public interest?

13           MR. CASSADA:  We had our -- there's an interest in

14   claims -- who the claimants are who appear and are compensated

15   in these cases.  And there's a -- I think, one and a half years

16   ago, a congressman wrote asking for a hearing on the claiming

17   practices and whether claimants were filing multiple claims in

18   different places based on -- in consistent positions.  I think

19   that the record is pretty clear that there is an intense

20   interest and that, obviously, bankruptcy is supposed to be a

21   very transparent process.  And surely, the identities of

22   claimants, the most significant constituency in a bankruptcy

23   case, these asbestos claimants, their identity is a matter of

24   public interest.

25           THE COURT:  It may be.  It's also a matter of public

1    record in the ballots.

2         MR. CASSADA:  Well, I did want to bring up the ballots

3    with Your Honor because they're not so easily obtained as

4    you've suggested.  They're not -- likewise, they're not on the

5    public docket.

6         THE COURT:  No.  But they're by claims agents that

7    have been authorized on behalf of the clerk of court to hold

8    the claims.  And this Court can easily make them available.

9    The ballots can be obtained and they are matters of public

10   record.

11        MR. CASSADA:  Are the ballots obtained similarly by

12   application and Court order?

13        THE COURT:  I've never actually -- except for Garlock,

14   had anybody ask for them.  But I think, yeah.  If you can't get

15   them from the claims agent then you file a motion.  But they're

16   public records.  I don't see why -- I told you before in one of

17   the other cases you could get the ballots and, in fact, you

18   did.  Now I don't know how complicated it was.  I didn't hear

19   from you that it was a cumbersome process.  Maybe it was and I

20   just --

21        MR. CASSADA:  No.  It was very easy.  The debtor's

22   counsel provided them to us.

23        THE COURT:  Okay.  So then the debtor's counsel can

24   provide them.

25        MR. CASSADA:  Well, we would -- I mean, you have

1    mentioned that those are available to us --

2            THE COURT:  Yes.

3            MR. CASSADA:  -- in a way that -- as if we could just

4    get them.  We've tried to do that and we haven't been able to

5    do that.  And if the Court would direct the debtors or the

6    claims agents to provide access to the ballots, that would be

7    helpful to us.

8            THE COURT:  Well, if you want those instead of this

9    2019 issue then maybe that's someplace to go.  I don't see how

10   this 2019 issue advances what you're looking for.  I can see

11   how the ballots may.

12           MR. CASSADA:  Well, they're both judicial records,

13   Your Honor.  We think we're entitled to both.  And they show --

14   in a lot of ways, they show the same thing.  But they show very

15   different things, too.  And I explained this, and I won't

16   belabor it today, but it's a matter of timing.  And that is

17   when claimants' lawyers at least first stated that these people

18   have claims then --

19           THE COURT:  Well, they have to first state it when

20   they file their 2019 statements.  That doesn't mean that's when

21   the claim accrued.  It just means that's when they filed the

22   statement.

23           MR. CASSADA:  Well, the claim would have accrued

24   before that.  It's not --

25           THE COURT:  Right.  That's what I mean.

1          MR. CASSADA:  Correct.

2          THE COURT:  So it doesn't show when the claim accrued.

3          MR. CASSADA:  But it's important -- it's important to

4     Garlock to know when the claimant and the claimant's lawyer

5     knew that the claim existed.

6          THE COURT:  But you won't necessarily -- well, you

7     may.  But you don't necessarily know that from the 2019

8     statement either.  But --

9          MR. CASSADA:  Well, we --

10          THE COURT:  You know as of the date they filed the

11     claim -- pardon.  You know it as of the date they filed the

12     e2019 statement.

13          MR. CASSADA:  Yes.  And that's important information.

14     Yeah.  And that's information that's not included in the

15     ballot.

16          So, Your Honor, I'll sit down now.  I'm sure we'll

17     have a lot to hear from the objectors and we'll raise any

18     issues there.  We do have -- I don't know if we need to go

19     through our exhibits again, Your Honor, since we did -- we

20     haven't added to our exhibits.

21          THE COURT:  All right.

22          MR. CASSADA:  So we've moved to admit the exhibits and

23     the affidavit -- the declaration that was filed with our

24     motion.  And there have been papers filed objecting to those

25     exhibits.  I don't know how much you want to get into that here

1    today.

2           THE COURT:  I think I'll let the objectors speak

3    because you did identify them on the record at the last

4    hearing.  I'm not sure I brought that identification but it's

5    in my notes and in the transcript as well, Mr. Cassada.  So to

6    the extent someone has a specific objection, I think I can hear

7    it as they go on and then rule later.  If anybody needs them

8    specifically identified again now, tell me so that I can have

9    that process done now.  Okay.  Mr. Esserman?

10          MR. ESSERMAN:  Your Honor, I'm just unsure how you

11   want to proceed on the exhibits.

12          THE COURT:  Mr. Cassada identified the exhibits at the

13   last hearing.  If you want -- maybe I should just have them

14   reidentified again so that we all know we're dealing with the

15   same exhibit numbers.  And then, as you're making your

16   argument, if you have an objection to any specific exhibit, I

17   think you should raise it then.

18          MR. ESSERMAN:  Okay.

19          THE COURT:  So let's just have them identified now and

20   then I'll hear objections as each entity argues.

21          MR. ESSERMAN:  That's fine.  Thank you.

22          THE COURT:  Mr. Worf?

23          MR. WORF:  Good morning, Your Honor.  I will simply

24   identify them and then reserve any argument as necessary.

25          THE COURT:  All right.

1          MR. WORF:  Like Mr. Cassada said, we are moving to

2    admit the same ones that we moved to admit at the last hearing.

3    Plus, I don't believe we moved to admit at the last hearing the

4    Exhibit A to our motion which is the affidavit of Paul Grant.

5          THE COURT:  I'm sorry.  Affidavit of --

6          MR. WORF:  Paul Grant.

7          THE COURT:  Okay.

8          MR. WORF:  G-R-A-N-T.

9          THE COURT:  Thank you.

10          MR. WORF:  That's the one additional one.  We think it

11    provides background for the motion that is helpful to the

12    Court.

13          THE COURT:  All right.

14          MR. WORF:  The exhibits we offered are Exhibit 1, 2019

15    statements filed by objecting law firms.  Exhibit 2 was a

16    summary of statements made in Exhibit 1.  Exhibit 3, 2019

17    statements filed by Kazan McClain, Brayton Purcell and Waters &

18    Kraus in the plant insulation and Thorpe insulation cases.

19    Exhibit 4 was an excerpt from the Federal Election Commission

20    Report for Obama for America.  Exhibit 5 was --

21          THE COURT:  Wait, wait.  One second, please.

22      (Pause)

23          THE COURT:  Okay.  Thank you.

24          MR. WORF:  Exhibit 5 was an individual's Chapter 13

25    bankruptcy petition.

1          THE COURT:  Okay.

2          MR. WORF:  Exhibit 6 was an extract from the claims --

3      (Audio ends mid-sentence)

4      (Recess from 11:51 a.m. until 12:06 p.m.)

5          THE COURT:  Please be seated.  Okay.  Mr. Worf,

6      starting with Exhibit 7, please --

7          MR. WORF:  Exhibit 7 is a news article related to the

8      American Business Financial Services case.

9          THE COURT:  All right.

10         MR. WORF:  Exhibit 8, a list of pending cases in the

11     federal Mardoc proceeding.  That's M-A-R-D-O-C.

12         THE COURT:  Okay.

13         MR. WORF:  Exhibit 9, a list of pending cases in the

14     Texas MDL.

15         THE COURT:  All right.

16         MR. WORF:  Exhibit 10, the master ballot of a certain

17     law firm in the Pittsburgh Corning case.

18         THE COURT:  Okay.  And then Exhibit 11 is the

19     collection of newspaper and other documents demonstrating the

20     public interest and concern regarding asbestos claiming

21     practices implicated by this motion.  And I would note here

22     that most of these articles are quite recent just to follow up

23     on the point Mr. Cassada was making.  Only one is from more

24     than a decade ago, Exhibit A -- or Exhibit 11A -- I'm sorry.

25     The others are from 2006 and after.  We also had moved to admit

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 75

1    the -- certain exhibits attached to our motion.  Exhibit A, the

2    affidavit of Paul Grant.

3            THE COURT:  All right.

4            MR. WORF:  Exhibits D and E, 2019 statements filed in

5    the Pittsburgh Corning case.

6            THE COURT:  Okay.

7            MR. WORF:  Exhibit I, an order granting access to 2019

8    statements in the Owens Corning case.

9            THE COURT:  All right.

10           MR. WORF:  Exhibit J, the 2019 order in the Congoleum

11   bankruptcy case.

12           THE COURT:  Okay.

13           MR. WORF:  Exhibit K, a 2019 statement filed in the

14   Congoleum case.

15           THE COURT:  All right.

16           MR. WORF:  Exhibit L is a complaint in a state court

17   asbestos action.

18           THE COURT:  All right.

19           MR. WORF:  Exhibit M --

20           THE COURT:  I'm sorry.  M or N?

21           MR. WORF:  M as in --

22           THE COURT:  Mom.

23           MR. WORF:  -- Mom -- is an interrogatory response in a

24   state court asbestos action.

25           THE COURT:  Okay.

1        MR. WORF:  Exhibit O is a law firm's 2019 statement in

2   the Quigley case.

3        THE COURT:  Okay.  Thank you.

4        MR. WORF:  And then Exhibit -- the exhibit that was

5   attached to our reply which, I believe, we're calling Exhibit B

6   to -- which was the order unsealing 2019 statements in the

7   Accuride bankruptcy case.

8        THE COURT:  All right.

9        MR. WORF:  And those are our exhibits and we move to

10  admit those.

11        THE COURT:  All right.  They've been admitted (sic) so

12  I'll hear the objections as the parties are arguing.

13        MR. WORF:  Thank you, Your Honor.

14        THE COURT:  They've been offered.  I'm sorry.  I said

15  admitted.  I meant offered.

16        THE COURT:  Mr. Esserman?

17        MR. ESSERMAN:  Yes.  Just as a matter of procedure,

18  Your Honor, I think we'd like to take argument on the motion to

19  intervene and the motion to reopen first.  Then we'll do the

20  exhibits afterwards.  And what I think we'd like to do is I'd

21  like to say a few words on the motion to intervene and the

22  motion to reopen.  Then others that have comments on those

23  motions will talk.  Then we'll come back to the objection on

24  the exhibits if that's okay with Your Honor.

25        THE COURT:  That's fine.

1          MR. ESSERMAN:  Just a few comments, Your Honor.  We've

2     of course briefed the issues on the motion to intervene.  And I

3     think Your Honor has a very good handle on, number one, what

4     exactly we're talking about here in the 2019s, what they are

5     and what they are not, how they were created, what is required

6     under 2019 and what is not.  We've gone through this so many

7     times.  2019 is not fixed in stone.  It can be crafted by case

8     by case.  And Your Honor's crafted it.  And, frankly, Your

9     Honor has set the standard for a 2019 statement that's been

10    followed in almost every court, not every court, but certainly

11    in Garlock's own bankruptcy.  The judge went out of his way to

12    see what you were doing in your court and take a look at your

13    court orders.  And Garlock didn't want to proceed that way.

14    Frankly, I'm not surprised but the judge ruled, in fact, it

15    worked in this court and it was going to work in his court and

16    others.  So he was going to proceed that way.

17          I think Garlock's overall theme to both their motion

18    to intervene, their motion to reopen and their motion for

19    authority is kind of -- it doesn't matter what their cause or

20    purpose for needing this material is.  And I think that that's

21    contrary to what the -- what this Court has set out previously.

22    We've briefed this.  I'm not going to go over it.  I think

23    cause or purpose is important.  For example, could someone just

24    come in here and say I want all this information because it,

25    number one, sets forth out a bunch of names, a bunch of

1    addresses and a bunch of people with disease.  And I want to

2    sell people certain products that implicate that.  Is that

3    important?  Or, I want to engage in a telemarketing aspect.

4    Or, I'm an insurance company.  I want to see if any of these

5    people have insurance that I need to cancel.  Are those proper

6    causes?  Well, under Mr. Cassada's argument, you need not be

7    concerned about those types of causes or purpose.  I think

8    cause or purpose is important.  I think Mr. Cassada has laid

9    out a litigation agenda and I think that that's an important

10   feature.  Your Honor set forth very clearly if 2019 was needed

11   for specific reasons and a specific 2019 that they could bring

12   it forth and you would consider it.

13          Let's take the motion to intervene.  First, there's an

14   issue of standing.  We've briefed a lot of this so I'm not

15   going to go over it in detail.  There's an issue of standing.

16   We've already had rulings from this Court in the W.R. Grace

17   case, for example, that Garlock has lacked standing to object

18   to confirmation.  Garlock has no financial interest here.

19   Garlock doesn't have a claim here.  Garlock has its own

20   litigation agenda.  We think that that's important.  Garlock is

21   a private litigant seeking to embark on a fishing expedition

22   which may or may not bear fruit and may or may not be barking

23   up the wrong tree.  I think a lot of the cases that Garlock

24   talks about and we talked about it in our papers involve people

25   that were in the zone of dispute trying to get involved in the

1    action.  Specifically, the Leucadia case involves shareholders

2    where settlement discussions involving the corporation were

3    involved.  There was cause to intervene.  There were litigants

4    involved.  These things -- we think that that's a very

5    important feature here.  We think Garlock cannot show any of

6    those issues.

7           On a motion to reopen a case, we think these cases are

8    closed.  To the extent that Garlock does move to reopen, which

9    I think they have to do, they have to show standing, first of

10   all.  We think that there's an issue as to whether or not they

11   have standing, whether or not they have a direct stake in the

12   case, whether or not they have an economic interest that needs

13   to be justified.  Whether or not cases are reopened, Courts

14   traditionally look at why they're being reopened.  Is there

15   assets to be administered?  Is there some sort of a state

16   interest that needs to be adjusted.  Clearly, that is not the

17   case.  So we think Garlock has neither standing nor proper

18   purpose nor motive.  And we think that the cases they cite are

19   inapposite.

20          We'll address the exhibits later.  We do have

21   objections to the exhibits and we'd like to reserve some time

22   to talk about that.

23          THE COURT:  All right.

24          MR. ESSERMAN:  Thank you.

25          MS. RAMSEY:  Good afternoon, Your Honor.  I'd like to

1    start with Garlock's motion to open.  As a principle of

2    statutory construction under Section 350 of the Code, it's

3    clear that the statute does not support Garlock's motion to

4    open.  The purpose of this statute is to allow cases to be

5    reopened for a purpose that arises in connection with that

6    bankruptcy case.  And that language is clear.  It's subsection

7    (b).  "A case may be reopened in the court in which such case

8    was closed to administer assets, to accord relief to the debtor

9    or for other cause."  And as a principle of statutory

10   construction, the other cause must relate to a matter relating

11   to that estate.

12          Garlock also does not support its position with

13   respect to case law.  There are a no cases that we have located

14   on point and no cases that have been cited by Garlock there on

15   point.  In the Zinchiak case that's cited by Garlock, the case

16   was reopened for the purpose of determining whether a Court's

17   lifting of the automatic stay was appropriate.  It was a matter

18   related to that case.  In contrast, Garlock's reasons for

19   seeking to reopen the case have no basis for involvement in

20   this estate.  In these estates, they don't seek to administer

21   assets, they don't seek to pursue rights of Garlock in these

22   particular cases other than the alleged general right of public

23   access.

24          That right itself, Your Honor, we do not believe is a

25   right related to this case, especially as articulated by

Page 81

1    Garlock because they have disclosed and volunteered that their

2    purposes are not related to this case but instead are related

3    to their own bankruptcy case and purposes outside the scope of

4    these Chapter 11 proceedings.

5            Similarly, Garlock relies very extensively on North

6    Bay General Hospital.  But that case was also very

7    distinguishable.  First of all, it is a bankruptcy decision out

8    of the Southern District of Texas.  It is not binding on this

9    Court.  It was under a specific fact scenario where there was a

10   fee dispute between lawyers for various committees.  There was

11   a settlement of that fee dispute.  There was no determination

12   by the Court in advance with respect to the sealing.  It was

13   sealed by agreement of the parties.  The Court did not go

14   through the extensive consideration that this Court did in

15   crafting the order to place the exhibits to the 2019 statements

16   under seal -- or off the public record.

17           The Court also had specifically maintained

18   jurisdiction over that agreed order.  There was not a

19   generalized retention of jurisdiction provision to assess and

20   enforce orders of the Court as Garlock relies upon here.  The

21   plaintiff alleged in the adversary proceeding that one of the

22   law firms to the agreement had engaged in a pattern of

23   wrongdoing and this agreement, the plaintiff believed, would

24   demonstrate that pattern.  The Court expressly found that there

25   was a relationship between the claims that were being made and

1    the agreed order and, accordingly, reopened the case for the

2    purpose of unsealing -- or determining whether to unseal that

3    agreed order.

4         This case is entirely different on the facts for the

5    reasons that we have articulated.  Because Garlock hasn't

6    demonstrated cause within the meaning of the statute, for

7    purposes related to these cases, and there is no case law

8    support for it, we do not believe that the closed cases should

9    be reopened.

10        Turning to Garlock's motion to intervene, Garlock is

11   not a creditor and is not the debtor in these cases.  So if the

12   standard is permissive intervention -- and with respect to

13   permissive intervention, the Court has a lot of discretion.  In

14   exercising its discretion, clearly the purposes that Garlock

15   intends to use the information for is important.  And I won't

16   belabor the point.  The Court has heard argument on that at the

17   last hearing on February 14th and Mr. Esserman addressed it

18   today.  But it is clear that Garlock's intention is to misuse

19   the 2019s.  As the Court has said, the 2019 statements are

20   statements by counsel.  And they are statements of

21   representation.  To permit any party to misuse those in the

22   ways that Garlock has said that it intends to by identifying

23   individuals that are listed on those 2019s who have never taken

24   action against these debtors, who never even went as far as to

25   file a ballot, let alone make a claim against the ultimate

1    trust, but who simply appeared on that, to have them challenged

2    as liars -- and that is Garlock's word -- because they appeared

3    on a statement that was designed by the lawyer to identify

4    those that the lawyer might represent in this case -- did

5    represent in this case who might pursue claims.

6            The Court knows, but for purposes of the record, it's

7    important to recognize that the 2019s in these cases were

8    constructed after a lot of argument, after a lot of

9    consideration, and they are an unusual hybrid.  They don't

10   really fit squarely into the standard Rule 2019 construct where

11   a law firm represents two creditors or more and identifies

12   those two creditors who are active in the case.  The Court has

13   made clear in numerous statements and various proceedings that

14   an asbestos law firm coming into an asbestos bankruptcy case

15   should include all of those individuals who may later take

16   action in the case and, as a result and in reliance on that,

17   the law firms go out of their way to be overinclusive on the

18   2019s.  That is what those statements are.  They are statements

19   of the counsel of representation of individual clients.  They

20   are not statements despite the potential inart forwarding that

21   tracks the statute that a lawyer might have tracked too

22   carefully and without sufficient attention or expectation that

23   someday someone would try to use that statement in that way.

24   It is a verification of representation and nothing more.

25            THE COURT:  Mr. Cassada made a point that I think I

ACandS, INC. & MULTIPLE OTHER DEBTORS

1    let slip by me at the time.  With respect to the acquisition of

2    the claim date; isn't the case that 2019 only requires the

3    acquisition of the claim date to be stated if it's within a

4    year of the filing of the bankruptcy?

5         MS. RAMSEY:  I believe that's correct, Your Honor,

6    although I can't tell you, standing here, that I know precisely

7    what's in all the 2019 orders.

8         THE COURT:  The nature and amount of the claim or

9    interest or the time of acquisition thereof unless it is

10   alleged to have been acquired more than one year prior to the

11   filing of the petition.

12        Okay.  All right.  Thank you.

13        MS. RAMSEY:  Those claim dates, Your Honor; I believe

14   are routinely completed by law firms as dates that the injured

15   claimant learned of their injury.  And I believe that that is

16   the date or sometimes the first date of filing of suit.  I

17   believe that those are generally the way that law firms

18   understand that field to be completed.  And there's no basis to

19   question whether or not that -- I haven't heard Garlock

20   articulate why that might be relevant.

21        Garlock's interest seems to be to demonstrate that

22   when a particular claimant answered interrogatories or was

23   deposed and said they had no knowledge of, for example,

24   Pittsburgh Corning exposure that they were previously or

25   simultaneously or some close date later identified on a 2019

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 85

1   statement.  And that is truly comparing apples and oranges and

2   there is no benefit to that except potential mischief,

3   especially for those individuals who, as the Court observed

4   before, may not even be aware that they're on the 2019.  They

5   may have given a general authorization to their law firm to

6   represent them generally in bankruptcy matters, you know, and

7   pursue their rights in appropriate forums and -- and in those

8   situations the person may not have a specific knowledge of

9   appearing there if they're never -- there's no reason for them

10  to, if they never take further action of the case, if they're

11  ultimately determined not to have a claim.  It is a reservation

12  of rights and nothing more.

13          With respect to Pansy, just briefly, and I think this

14  is fairly well address in the pleadings, but Pansy acknowledges

15  that although there is a presumptive right of access it can be

16  overcome and there are balancing tests that apply and one of

17  those balancing tests is whether there are privacy interests or

18  whether disclosure could cause embarrassment.  Here our

19  contention is, particularly with respect to those people who

20  never take action further against that debtor, against a trust

21  created in the bankruptcy, they deserve a heightened right of

22  privacy.  They did not, voluntarily, come into court and seek

23  to pursue any rights or claims.  It is purely a function of

24  2019 and the unique circumstances of an asbestos case that they

25  appeared in a 2019 in the first place.

1          With respect to Pansy also, it is clear that purpose

2     is important and we do contend that it is an improper purpose

3     to use the form in that way that Garlock has articulated it

4     intends to.

5          Also, Your Honor, there is, in the Third Circuit, a

6     clear test that applies a continuum so that orders and actions

7     that are more important in disposing of issues in the case are

8     more likely to be subject to a right of public access, there's

9     a greater weight afforded to those than those orders that deal

10    with ministerial types of issues and this is more of a

11    ministerial issue.  It only becomes important if there is a

12    question about representation.  It is not key in the case.  It

13    does not determine any rights or interests and therefore it

14    should be accorded lesser interest by the public and by the

15    press and the other interests of privacy and countervailing

16    reasons and proper purpose therefore clearly weigh against the

17    disclosure.

18          THE COURT:  Well, the cases also talk about the

19    commercial interest and I think on the 14th of February someone

20    started to argue this but I'm not really sure that it was

21    articulated explicitly.

22          The law firms have a client database and I don't --

23    and obviously filing the 2019 statements indicates a part of

24    that client database.  Is that commercial information, the

25    client database?

ACandS, INC. & MULTIPLE OTHER DEBTORS

1        MS. RAMSEY:  Your Honor, the law firms contend that it

2    is absolutely commercial information.  In part, because I think

3    the commercial information the Court is thinking about is there

4    was a question about commercial information being their -- the

5    terms of their engagement with their clients.

6        THE COURT:  Yes.

7        MS. RAMSEY:  And the relationships that they have with

8    other law firms.

9        THE COURT:  Yes.

10       MS. RAMSEY:  And those relationships clearly fall

11   within commercial protections of the law firms.

12       THE COURT:  So the exemplars that were there would

13   show the agreement with the client but not necessarily the

14   agreement with another firm?

15       MS. RAMSEY:  It may or may not, Your Honor.  Sometimes

16   they do and I don't think they always do.  But there are

17   circumstances where there are co-counsel relationships that are

18   disclosed as part of the 2019s.

19       THE COURT:  Okay.

20       MS. RAMSEY:  Your Honor on the merits, again I don't

21   want to belabor the record, we do incorporate the arguments

22   that were made on February 14th but I think, just to recap the

23   purposes of 2019 when considered against the purposes for use

24   here, clearly demonstrate that on the merits this motion also

25   should be denied.  This is a litigation tactic.  It is an

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 88

1    after-the-fact attempt at a gotcha, of a pleading that was

2    never intended to be used for this purpose and to permit it to

3    be now opened for these purposes would create significant

4    question and disruption in these 2019 statements going forward

5    and with respect to law firms in the past with respect to how

6    to deal with these issues going forward and there would have to

7    be some other way to deal with them in terms of the lawyers

8    disclosing who they represent.  But it would not further the

9    policies of asbestos Chapter 11 proceedings to have law firms

10   be careful, overly careful, about making sure that the only

11   people who appeared on that list were people who they could

12   proceed with trial with today or people who had filed a

13   complaint because the Court's going to be faced with constant

14   and continuous amendment and there's going to be a significant

15   delay in the ability of professionals to talk about these cases

16   and identify which professionals the debtor should be dealing

17   with as it goes through the negotiation process.

18           THE COURT:  All right.

19           MS. RAMSEY:  Thank you, Your Honor.

20           THE COURT:  Mr. Lockwood?

21           MR. LOCKWOOD:  Your Honor, I first want to say that I

22   agree with everything Ms. Ramsey said.  I thought she gave a

23   very eloquent and persuasive description of the law here.  My

24   only contribution to this is I think it would be helpful to

25   back up a little bit to sort of talk about how we got into the

1    2019s in the first place which was a long, long time ago, far,

2    far away.

3         As Your Honor will undoubtedly recall, it was a

4    considerable dispute at the beginning of the case over whether

5    2019s should have to be filed at all in these cases, as some of

6    the briefs that were put in at the time pointed out, the

7    purpose for Rule 2019 originated back in the '30s with ad hoc

8    creditor committees taking control of the bankruptcy cases

9    under the old, pre-code, practice.  And there was a great

10   concern that, which the SEC was a significant proponent of, of

11   wanting to make sure that the parties in a bankruptcy case and

12   the courts knew exactly who were being represented by whom when

13   lawyers showed up and actually started doing things in cases.

14        And Rule 2019, one of the problems with the rule is

15   it's not terribly precise on when a Rule 2019 statement is

16   required because it talks about in connection with the

17   representation and it doesn't say what it is that causes a

18   lawyer to commence representing a client.  And we were

19   confronted in these cases with law firms who represented

20   thousands of claimants and that law firm would, in most

21   instances, not have filed a proof of claim or a ballot so they

22   wouldn't have taken any affirmative step.  They wouldn't be --

23   they wouldn't have filed -- it wouldn't be involved in claims

24   litigation, they wouldn't be doing anything except observing

25   the case.

1          On the other hand, a lot of them wanted to be kept

2     abreast so they would file requests to be put on a 2002 list,

3     which they regarded as a fairly, sort of, innocuous way of

4     wanting to be kept abreast of what was going on.  But because

5     of that and because some of them had actually went so far as to

6     enter an appearance, even though they weren't doing anything,

7     there was no motion that they were pressing or claim that they

8     were pressing, the court found itself in a position in which

9     there were these tort lawyers with thousands of claimants out

10    there who, on the face of them, may or may not have done

11    something that could be regarded as representing the clients in

12    the case.  And so the court felt like those lawyers should, if

13    they wanted to represent themselves or had already represented

14    that they had clients in the case, to file 2019s.

15         But the court recognized, at the time, that this was

16    a, I think the term Ms. Ramsey used, hybrid situation which I

17    think is a good term to describe it because what the -- from

18    the lawyers' perspective and their clients' perspective the

19    concern was what would happen if you guessed wrong and didn't

20    file the 2019 statement.  Well for one thing, the rule itself

21    says you can't vote, potentially, on the plan.  Well, that

22    would be unfortunate for a lot of clients.  Moreover, you

23    never -- people never knew whether or not, as we saw in W.R.

24    Grace, the debtor or insurers or whoever might demand that

25    proofs of claim be filed and would you be able to file a proof

1    of claim if you had, earlier on, filed a Rule 2002 notice and

2    you hadn't filed a 2019, would that be a potential sanction for

3    failing to file the Rule 2019.

4          So we had all this argument and the upshot of the

5    Court was that the Court rendered what I think could fairly be

6    described as sort of a compromised solution to this which was

7    yeah, you've got to go ahead and file the 2019s but you don't

8    have to file them on the public record, i.e., they're not

9    public records.  And you're going to have to make a motion and

10   you're going to have to describe, on an individual basis, why

11   you need the information.

12         Now that order is not the same thing, technically, as

13   a sealing order but it has, as a practical matter, the same

14   effect, which is it's not readily available to the public.  A

15   lot of Mr. Cassada's arguments about the public's right of

16   access, et cetera, sort of almost blow off the notion that this

17   is similar to if not the same as a confidentiality order.  But

18   courts, and Your Honor yourself, has in many instances in

19   bankruptcy cases issued confident -- sealing orders with

20   respect to things that, as Mr. Cassada argued in his

21   presentation, were required under the Bankruptcy Code.

22   Motions, for example, for KERPS, motions for exit financing,

23   motions for business transactions where the motion needed --

24   involved something that court approval was required for under

25   the Bankruptcy Code, but it was acknowledged by people that the

1    underlying materials that formed the basis of the motion, some

2    or all of them might contain sensitive information, information

3    that was otherwise not required to be put on the public record

4    and so it is sealed.

5         And I would submit, Your Honor, that we're in a very

6    similar situation to that right here, which is we should

7    analyze this from the perspective of as though Garlock were

8    attempting to obtain access to sealed documents.  And then

9    question comes up, if that's true, in the motion to intervene

10   Rule 2018 talks about cause.  It doesn't say open sesame.

11        And what is cause to intervene?  I would submit, at an

12   absolute minimum, it would be at least as restrictive as the

13   proper purpose requirement that the non-bankruptcy cases, such

14   as Pansy and the others have talked about in the Third Circuit

15   for -- and going all the way back to the Supreme Court's

16   decision in Nixon was required.  And so what is the proper

17   purpose here?

18        Well, Garlock -- if Garlock gets what it's asking for

19   it's going to get a whole lot of stuff.  It's not just going to

20   get a list of names.  It's going to get medical information,

21   it's going to get potentially what it believes equates to

22   exposure information and it's going to be getting it in the

23   form not in which the party that sought to be -- is sought to

24   be used against generated, i.e. the claimant, it's going to be

25   getting it from the claimant's lawyer in terms of an

1    allegation, I guess, that I represent you as a creditor and

2    therefore you have a claim and it's going to seek to then have

3    that treated as some sort of an admission by the claimant

4    through the, I don't know, de facto attorney in fact or

5    attorney at law, whatever legal rational Garlock thinks it can

6    articulate in support of that.

7              Well, how is it proper for somebody that has -- wants

8    to take information that was put under seal for a particular

9    purpose for use in a particular bankruptcy case for advising

10   the people in that bankruptcy case, who were the parties in

11   interest, who were going to be the people that were voting and

12   making claims and to take that information and attempt to use

13   it in another bankruptcy case to, in effect, impeach people on

14   the notion that because their lawyer had filed this 2019 with

15   their name on it, that that showed that some discovery response

16   that they gave in the Garlock litigation at some later point in

17   time was false.

18             That's really what this comes down to.  And I -- while

19   the parties have discussed a variety of cases involving these

20   principals, I don't think there's any case that's particularly

21   closely on point in this regard.  The only case, frankly, that

22   is in point is Your Honor's prior decision in the Pittsburgh

23   Corning case where you said specifically, to Garlock in respect

24   of a very similar motion, you've got to show me your need on a

25   one-by-one basis.  You've got to identify the claimant that you

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 94

1    think is lying and you've got to then tell me I want that

2    claimant's lawyer's 2019 to find out -- to help me show that

3    that claimant's lying as opposed to, well I have this

4    undifferentiated assertion that I want to make that lots of

5    people are lying out there and I'm not going to tell you who

6    they are, I just want the entire universe of 2019 forms in a

7    case so that I can paw through them and find out which ones I

8    think I might be able to craft the argument for.  In other

9    words, facts in search of an argument.  And I would

10   respectfully submit that the motion to intervene should be

11   denied for the same grounds, really, that the motion should be

12   denied on the merits.  Thank you.

13          THE COURT:  Mr. Schepacarter?

14          MR. SCHEPACARTER:  Thank you, Your Honor.  For the

15   record, Richard Schepacarter for the United States trustee.

16   Your Honor, our objection is not limited.  I shouldn't say it's

17   limited, but it's really only to the motion for the re-opening

18   of the case and the objection is basically that if the cases

19   are re-opened that the entities, the debtors or reorganized

20   debtors, will be responsible for the payment of quarterly feels

21   under Section 1930(a)(6) and also for reporting under Rule

22   2015.

23          Counsel for Garlock indicated that there's some

24   precedent going the other way and I would assert that based on

25   the pleadings that we filed that the precedent's really that

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 95

1   when the case is opened or the case is reopened, in any event,

2   until it's -- like the statute says, converted or dismissed,

3   that there's an obligation there to pay the quarterly fees for

4   whatever period of time that it's opened and for whatever

5   disbursements that are made during that period of time.

6         For some of these cases it'll be a minimal fee because

7   I believe, for example, Combustion Engineering doesn't operate

8   and I'm not sure who would pay that fee.  For another case,

9   such as Owens Corning, I think somebody -- I don't know if it

10  was Owens or Armstrong, filed a response indicating that

11  there's five billion dollars in gross revenues.  I imagine if

12  that case is open for a day or for a month that the maximum fee

13  is going to be incurred in those cases, just like what happened

14  when they had to reopen the case.  These entities, Garlock,

15  somebody, had to pay the reopening fee of whatever, I think

16  it's 1,000 dollars a case, had to pay -- that fee had to be

17  paid, the statute's clear, 1930(a)(6) says in addition to that

18  fee there's another fee that's due and that's the fee that's

19  due to the U.S. Trustee's office and I think that's by statute.

20        Does Your Honor have anything else?

21        THE COURT:  No.

22        MR. SCHEPACARTER:  Any questions?

23        THE COURT:  I tried to limit U.S. trustee fees once

24  before, the Third Circuit didn't like it much so I don't know

25  how I'm going to be able to argue with the hand slapping that I

1    got from by the Third Circuit to try and limit these before.

2    So I guess that's a little unfair, they weren't really hand

3    slapping but nonetheless, they were pretty adamant about the

4    fact that when Congress imposes a statute that even though at

5    that point it applied to a plan that was already post-

6    confirmation and as to which all of the money was already

7    dedicated elsewhere, that they were going to have to figure out

8    how to pay the fee.

9            So they're going to do it in that kind of a

10   circumstances, I can't imagine that they're not going to say it

11   has to be paid if the case is reopened.  What discretion do I

12   have.

13           MR. SCHEPACARTER:  Understood, Your Honor.

14           THE COURT:  What discretion do I have?  Do I have some

15   discretion?

16           MR. SCHEPACARTER:  With all due respect, I don't think

17   so.

18           THE COURT:  Does the U.S. trustee's office have

19   discretion to waive fees?

20           MR. SCHEPACARTER:  Frankly, no.  That's a statute and

21   it has to be enforced and that's part of our duties, to enforce

22   the Bankruptcy Code and any bankruptcy law and the statutes and

23   the like.  So, we have no discretion.

24           For example, if we wanted to say you don't have to pay

25   this fee, just make it half, we can't do that.  So understood,

1    Your Honor.  Thank you.

2              THE COURT:  All right.  Thanks.

3              MR. RICH (TELEPHONICALLY):  Your Honor, this is Jeff

4    Rich.  I don't know if you can hear me, I'm representing

5    Combustion and Mid-Valley.

6              THE COURT:  I can hear you, Mr. Rich.  Go ahead.

7              MR. RICH:  The only point we wanted to make in this is

8    that if Your Honor decides to reopen these cases, that the fees

9    should be -- the 1930 fees should be imposed on Garlock and not

10   on Mid-Valley and Combustion as obviously these cases aren't

11   being opened for any purpose having to do with the debtors as

12   much as it is for Garlock's purposes, whatever they may be.

13             THE COURT:  Well what about the reports?  I mean, do I

14   have the discretion to say you don't have to file the reports

15   that generate the fees?

16             MR. RICH:  Well, that's an interesting question.  I

17   suppose they could prepare the report and we could look at it

18   and then file it.  You know, I suspect it's not going to take a

19   lot of time to file these pretty simple reports since there's

20   no operations going on.  But I think that if we wind up having

21   to pay the fees, that doesn't seem to be logical in light of

22   the purposes for which Garlock wants this information.

23             THE COURT:  Okay.  So neither of these cases are

24   operating and so fees might be minimal and reports would be

25   pretty much and no moment, but is an operating debtor going to

1    give Garlock access to its financial statements so that Garlock

2    can prepare the reports that generate the fees?

3              MR. RICH:  That is a question which we haven't yet

4    confronted but I suspect that the clients would not want to

5    give any reports of any kind of information to Garlock,

6    although I think that in the case of Mid-Valley and Combustion

7    those statements, if they are existing at all, would be

8    minimal.  I would expect someone would have to prepare them

9    since Combustion essentially, if I recall, still a landlord and

10   Mid-Valley is really not operational.

11             THE COURT:  All right, Mr. Rich.  Thank you.

12             MR. RICH:  Thank you, Your Honor.

13             THE COURT:  Anyone else on the phone wish to speak?

14             MS. DANDENEAU (TELEPHONICALLY):  Your Honor, this is

15   Debra Dandeneau from Weil Gotshal & Manges on behalf of

16   Armstrong.  We filed a response.  I'm not going to go through

17   all the points made in our response.  And frankly Armstrong is

18   agnostic about whether Garlock obtains a 2019 materials.

19   We're -- one thing that's different from the 2019 versus the

20   ballot is that, and I recognize that we're a little late to

21   this party, but it strikes me that that's the kind of thing

22   that Garlock could easily have sought with respect to discovery

23   in its own case.  There was nothing in the 2019 orders that

24   prevented them from going and serving discovery on the law

25   firms and getting that same information in its own case,

1   whereas the ballots are something that are property of the

2   debtors.

3          Now frankly, it's been almost five years since

4   Armstrong's confirmation hearing.  I have no idea where the

5   ballots are.  I don't know if we were required to retain them

6   for a certain period of time, but I just note that.  And we did

7   raise, in our response, that this Court has to independently

8   determine that it has subject matter jurisdiction over

9   Garlock's request.

10         And I just note that Garlock went through a nice

11  little litany of all the different retention of jurisdiction

12  provisions in the various plans but that's frankly, as Your

13  Honor knows, irrelevant to the issue of whether the Court has

14  subject matter jurisdiction.  It may be necessary but it's

15  certainly not sufficient.  And at the end of the day, the issue

16  of subject matter jurisdiction is an issue of whether this is a

17  matter that affects the debtor, the reorganized debtor's

18  estate.

19         And in the recent case of Kaiser, the court ruled that

20  it lacked subject matter jurisdiction to preside over a

21  discovery dispute involving a trust created under the plan

22  because it did not have an affect on the debtor's estate.

23         But the one thing I -- the final thing is I certainly

24  agree with Mr. Rich, that if for some reason the Court is

25  inclined to grant access to the 2019 materials and feels that

1    it needs to reopen the cases to do so, what I would suggest

2    certainly the reorganized debtors and Armstrong is an operating

3    entity with substantial operations, should not be exposed to

4    any liability or any cost as a result of that decision to

5    reopen.

6         What we did when we had to reopen the cases, in order

7    to approve the trust settlement with Liberty Mutual Insurance

8    Company is the very same order that opened the cases closed the

9    cases.  It essentially opened the cases and then simultaneously

10   closed the cases and we did not prepare a report and we did not

11   pay U.S. Trustee fees in connection with that.  So again,

12   although we find the request strange coming up in our case, we

13   certainly believe that Armstrong should not have to bear any

14   financial responsibility for this.

15        THE COURT:  All right.  Anyone else on the phone?  I

16   guess not.  Okay.

17        MR. ISENBERG:  Good afternoon, Your Honor.

18        THE COURT:  Good afternoon.

19        MR. ISENBERG:  Adam Isenberg, Saul Ewing, on behalf of

20   the Owens Corning entities, Your Honor.  We did file a brief

21   response to this and as set forth in our response, we have --

22   we are indifferent on the issue as to whether Garlock should be

23   given access to these 2019 statements or whether it should not.

24   That's not our fight; we don't have a dog in that fight, Your

25   Honor.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 101

1      We are concerned, however, with the reopening or the

2  potential reopening of the cases for the reasons that ought to

3  be obvious, Your Honor.  But before I get to those let me raise

4  a couple that may not be so obvious.

5      First of all, Owens Corning was in bankruptcy for ten

6  years, it filed on October 5th, 2000.  The last of the Owens

7  Corning cases was closed August 4th, 2010, just within six

8  months ago.  That's a long time, Your Honor, to be in

9  bankruptcy.

10      Even before that, Your Honor, as you know because you

11  handled those cases, Owens Corning was plagued by the asbestos

12  problem for many, many, many years.  So the closing, the final

13  closing, of the Owens Corning cases was actually a big deal for

14  Owens Corning in terms of closure, in terms of internal moral

15  and all of that.  Reopening the cases is not helpful in those

16  respects, at all, and would be viewed detrimental internally

17  for those reasons.

18      Beyond that, Your Honor, we get into the issues that

19  we've just raised.  Owens Corning is a sizeable operating

20  company, revenues, ballpark, five billion dollars a year.  It's

21  also a publicly reporting company, Your Honor, so the idea that

22  was floated a few minutes ago about having Garlock look at our

23  books and records and prepare reports has to fail for a whole

24  bunch of reasons, Your Honor.

25      First of all, we can't have a third party looking at

1    our information, from an SEC perspective.  And in any event,

2    Your Honor, we have to have somebody sign operating -- post-

3    confirmation operating reports and we can't have somebody else

4    prepare it and have us sign it, Your Honor, we would not be

5    comfortable with that.

6           The SEC interplay should not be understated, Your

7    Honor, because OC cares very deeply, for obvious reasons, about

8    making sure that it doesn't overstep any regulatory bounds from

9    an SEC perspective.  So filing post-confirmation operating

10   reports has that level as well, that dimension I should say, as

11   well.

12          Separate and part, of course, is the cost.  OC will

13   max out; I haven't done the math exactly but would max out

14   pretty quickly if its cases were reopened.  And what we have

15   here, Your Honor, is we have a dispute between folks over here

16   and folks over here.  It doesn't involve OC.  It doesn't

17   involve OC's operations, its case.  It really doesn't involve

18   us and yet we're stuck, literally, in the middle with potential

19   costs if these cases are reopened with the administrative task.

20   And besides the sort of moral and internal issues that this

21   would cause.

22          We suggested in our pleading, but Your Honor may have

23   already de facto ruled on this, that perhaps there's a way to

24   do this -- open the cases, close the cases and declare that we

25   don't have to file any post-confirmation reports or pay any

1    fees.  I think Mr. Schepacarter has spoken on that and I think,

2    Your Honor, you spoke on that a moment ago.  That would be our,

3    sort of, practical solution here if Your Honor's inclined to go

4    that way.

5            But from an OC perspective, Your Honor, we are

6    concerned by this.  This does cause us harm and prejudice and

7    that is one of the factors, as we understand the case law under

8    Section 350(b) in determining whether there's cause, one of the

9    things the Court has to look at is whether there's prejudice to

10   the parties and there would be prejudice here for Owens

11   Corning.

12           THE COURT:  All right.  Thank you.  Anyone else wish

13   to speak in opposition to the motions to intervene or for

14   access to the 2019s or to reopen?  Okay.  Then let's deal with

15   the exhibits.  Mr. Esserman?

16           MR. ESSERMAN:  Your Honor, Sandy Esserman. I would

17   also point out that of course everyone knows that Garlock is in

18   bankruptcy itself.  So in position of any kind of fees or costs

19   to Garlock and their estate is, sort of -- I'm not sure that

20   Garlock is authorized or their lawyers are authorized to incur

21   any expenses out of the ordinary course of business.  I guess I

22   would let them determine whether, to the extent they were

23   liable for any costs here in reopening, whether that was in the

24   ordinary course of business or not.  But I would suspect that

25   this isn't some place that some of the creditors or their judge

1    might want them to go to but that's a different --

2            THE COURT:  So Garlock's -- are you just suggesting,

3    when we're talking about the consequences of reopening the U.S.

4    trustee fees or are you talking about Garlock's offer to pay

5    for the costs of obtaining whatever the 2019 information is at

6    all would have to be --

7            MR. ESSERMAN:  Well, if it's a nominal amount that's

8    one thing.  I'm really referring to any kind of substantial

9    costs or fees being incurred, although we don't know that in

10   fact Garlock is authorized to pay any fee to do anything other

11   than to have their lawyers appear here today, which I'm just

12   assuming that they're authorized to do and they consider this

13   ordinary course of business.

14           THE COURT:  All right.

15           MR. ESSERMAN:  With regard to the exhibits, we do have

16   objections.  We filed written objections.  Once again, I don't

17   want to repeat them here but I will summarize them very

18   briefly, to the exhibits.  Our filed papers, like our

19   arguments, set forth the exhibits but we have with regard to

20   Exhibit 1, which was 2019 statements filed by certain firms --

21   which, if they were on the public record, we don't have any

22   objection to something that's on the public record.  We don't

23   think that there's any need for them to be an exhibit and we do

24   think you can take judicial notice of them if they're on the

25   record.

1          The exhibit 2, which is a summary --

2          MS. RAMSEY:  Excuse me.  Mr. Esserman, may I

3    interrupt?

4          MR. ESSERMAN:  Yeah.

5          MS. RAMSEY:  Do you want to hear from all the

6    objectors on Exhibit 1, Your Honor, or would you prefer to go

7    through the entire list per objector?

8          THE COURT:  It may be easier just to deal with exhibit

9    by exhibit so I can make rulings on each one, if that's

10   agreeable.

11         MR. ESSERMAN:  Okay.  Why don't we do that?

12         MS. RAMSEY:  May I address the Court from here, Your

13   Honor?

14         THE COURT:  Yes.

15         MR. LOCKWOOD:  One procedural question, Your Honor,

16   related to your earlier statement about the agenda binder and

17   everything.  Pittsburgh Corning filed an objection to certain

18   exhibits that doesn't appear on the agenda.  I don't know

19   whether PC has counsel on the phone here today or not.  Since

20   I'm representing the PC committee, at a minimum, I thought I

21   should make sure that Your Honor is aware that there is such an

22   objection and hopefully has a copy of it before --

23         THE COURT:  Do you have the docket number, by any

24   chance?

25         MR. LOCKWOOD:  It appears to be docket number 8196.

1          THE COURT:  All right.  I haven't seen it, Mr.

2     Lockwood but I will.  Thank you.

3          MR. LOCKWOOD:  Sorry, Ms. Ramsey.

4          MR. ESSERMAN:  Let's go exhibit by exhibit and let me

5     give a quick summary, then, of all the objections we've raised.

6          As to the open cases, if it's on a public record, we

7     don't have a problem.  If the case has been closed on a 2019,

8     obviously, until those cases have been opened we do have -- we

9     would have an objection.  We don't think the statements filed

10    in the closed cases are relevant or calculated to lead to

11    discovery of admissible evidence as the cases are closed and

12    the Rule 2019 is going to the case administration.  That's, in

13    summary, what we've said in our written papers.

14         THE COURT:  All right.  Ms. Ramsey?

15         MS. RAMSEY:  Your Honor, we likewise object to the

16    exhibits to the extent that they have been offered in the

17    closed cases.  We also object to the extent that they are

18    proposed to be exhibits in what has been a non-evidentiary

19    hearing.

20         With respect to the 2019s that were filed in the open

21    cases, we do not object to their consideration in the

22    particular case in which they were filed.  But we do object to

23    the relevance in any other case as to which Garlock has filed a

24    motion for access.

25         We also object, Your Honor, to the Rule 2019 statement

Page 107

1    that was attached as purportedly filed by the law firm Stanley

2    Mandel in the W.R. Grace case because it appears to be an

3    incomplete copy.

4            THE COURT:  Can you tell me what exhibit that is?

5            MS. RAMSEY:  It is part of Exhibit 1, Your Honor.  I

6    don't believe that there's a separate designation for that

7    2019.

8            THE COURT:  Anyone else with respect to Exhibit 1?

9            MR. LOCKWOOD:  Your Honor, the committees did not file

10   separate sets of objections to these.  I would just, in order

11   to save time, say that we join in the objections of Messieurs

12   Esserman -- Mr. Esserman and Ms. Ramsey.

13           THE COURT:  All right.  Mr. Worf, are you responding

14   to exhibit objections?

15           MR. WORF:  I'd be happy to, Your Honor.

16           THE COURT:  All right.

17           MR. WORF:  How ever these come in, we're indifferent

18   to how they come in, whether by judicial notice or as evidence

19   that we've offered.  But they should come in one of those two

20   ways.  These are 2019 statements that were filed by firms that

21   have objected to Garlock's motion, as Mr. Cassada explained.

22   It's relevant what they say, that's a significant issue that we

23   have relied on in our argument, do they say what they say and

24   we've, I think, been over that and why it's relevant to our

25   motion.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 108

1           THE COURT:  Okay.  So the objection to part of Exhibit

2   1 with respect to W.R. Grace that it's not a complete copy, was

3   this filed on the public record?

4           MR. WORF:  Yes, Your Honor.  And if that's an

5   incomplete copy that was unintentional and I believe the Court

6   can take judicial notice of whatever the complete copy is of

7   the docket, or perhaps it was incomplete when filed, I just

8   don't know.  But we put in what we pulled from the docket.

9           THE COURT:  I'm sorry.  You put in what you pulled --

10          MR. WORF:  What we pulled off of the docket in W.R.

11  Grace.

12          MR. ESSERMAN:  Yes.  I think the statements that

13  they've referenced were filed on the public record.  The

14  exhibits that go with the statements are what's under seal or

15  what's subject to a restrictive order.

16          THE COURT:  Okay.  Well, with respect to open cases,

17  documents that were pulled off the docket, I will take judicial

18  notice of those statements.  That is not a determination of

19  relevance, I'll simply take judicial notice of the fact that

20  they were filed and that they are part of the public record.  I

21  think I can do that without a problem.

22          With respect to relevance, I'm not sure what the

23  relevance is with respect to this motion because these are

24  different 2019 statements and I don't think it's a foregone

25  conclusion that because a particular 2019 statement says A, B,

1    C that every 2019 statement will say A, B, C.  But clearly

2    these statements do say what they purport to say and I will

3    take judicial notice of those.

4          So if you can identify which exhibits in your list

5    were from open cases in which documents were pulled off the

6    public record, I will take judicial notice of those.

7          As to closed cases, to the extent that the exhibits

8    were pulled off the public docket, again I will take judicial

9    notice of those because even though the cases are closed, the

10   dockets are there and it seems to me that to the extent that

11   you get a document from a docket that still exists, it's

12   appropriate for the Court to take judicial notice.  So I will

13   do so if you can give me a list of which exhibits those are.

14         MR. WORF:  Okay.  Thank you.  Your Honor, can we ask

15   more generally just for judicial notice of all 2019 statements

16   that were filed in the twelve cases?  That might be the

17   cleanest way to do it and -- because our point is that they say

18   what they say and, you know, we tried to provide these as

19   illustrations, a sample.  You know, we didn't think it was --

20         THE COURT:  I don't understand.  I mean, I can take

21   judicial notice of the pleadings that are filed in the court

22   record.  So to the extent there's a docket entry that says

23   there's a 2019 statement, I can take judicial notice of that

24   fact.  But I don't think that gets to the sealing, unsealing

25   issue because I sealed these documents for a reason and that is

1    because I think the individuals have come forth with

2    information that is very private and sensitive and need not be

3    disclosed absent compelling need.

4         In addition, I am not convinced, at this point in

5    time, that there isn't commercial privacy information involved

6    by the identification of the firms of their client base and in

7    some instances their agreements with their clients, which is

8    part of the exemplars in some cases and agreements that they

9    may have with codefendant law firms which has no bearing on

10   anything that Garlock is even purporting to ask for at this

11   point in time.

12        So I'm concerned about the privacy and the commercial

13   impact in the 2019 statements.  To the extent that they're

14   filed, they're filed and I don't have any problem taking

15   judicial notice of the fact that they're filed.  But I don't

16   know that that advances what you're trying to --

17        MR. WORF:  Okay.  Yeah, just to be clear for making

18   our record, will the Court take judicial notice of all the 2019

19   statements that have been filed in the twelve cases?

20        THE COURT:  Well, I will but you're going to have to

21   tell me what it is that they are.  I mean, I'm willing to take

22   judicial notice of documents that are on my docket, if that's

23   what you're asking me to do.  Yes, I can do it.  But I can't

24   sit here and tell you that in all these twelve cases, you know,

25   docket entry number 4659 is a 2019 statement of, you know, Ms.

1     Ramsey's law firm.  I can't do that.  I don't have that kind of

2     recall of these 2019 statements and there are hundreds of them,

3     if not thousands, that are filed.  So, yes, I will do it but --

4              MR. WORF:  I just want to make sure for our record

5     that we have the statements as part of the record because it is

6     important.

7              THE COURT:  You don't have them as --

8              MR. WORF:  And just to make sure that that's in the

9     record and to have the Court take judicial notice of that.

10             THE COURT:  I'll take judicial notice of the fact that

11    2019 statements have been filed by the various entities that

12    have filed them, that they say whatever they purport to say.

13    That is not a determination that the information contained

14    therein is correct or accurate, that's not the purpose of

15    judicial notice.  But I will take judicial notice of the filing

16    of those statements to the extent they're filed of record in

17    bankruptcy cases that are on my docket.

18             MR. WORF:  Okay.  And of the contents of the

19    statements, whatever they may say.  Not that they -- not a

20    finding that they say what they say but that they are on the

21    docket and that they have the content that they have.

22             THE COURT:  Sure.  They have the content that they

23    have, whatever that content is, they have it.

24             MR. WORF:  Okay.

25             THE COURT:  But that is not a determination that it's

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 112

1   (a)truthful; or (b)a lie; or (c)anything other than the fact

2   that it has information in it and whatever the information is

3   that's what it is.

4           MR. WORF:  Okay.  Thank you, Your Honor.

5           THE COURT:  Okay.  But back to your exhibits because

6   those aren't exhibits -- so I'm not sure what I'm taking

7   judicial notice of the 2019s for because they're not offered as

8   part of the exhibits for any reason.  I thought you were

9   offering exhibits to illustrate your argument as to what

10  information you thought would be in them.  So now I'm confused

11  about what you're asking me to do because the 2019s aren't

12  exhibits here and I'm not making them exhibits here.  That's

13  not my function.

14          MR. WORF:  Well, I think if we go to number 2, and I

15  know the objectors haven't addressed it yet, Exhibit 2 is a

16  summary of certain statements in certain 2019 statements that

17  were filed on the docket.  And we offered that as a summary for

18  the Court's use of what are admittedly voluminous documents,

19  which we think are illustrative and helpful to the Court.  And

20  that's why we offered that as an exhibit.

21          As to number 1, which are the actual examples, I think

22  we can treat those as -- just like Exhibit 2, as essentially a

23  summary of voluminous information that the Court has now taken

24  judicial notice of, which is the content of the statements on

25  the docket.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 113

1        THE COURT:  No.  Exhibit 1 isn't the summary.  Exhibit

2   1 are examples of 2019 statements that have been filed in

3   various cases and I don't recall offhand, from that exhibit,

4   whether all of them were on my docket or not, I just don't

5   recall.

6        MR. WORF:  All the ones in that are.  These are the

7   ones that we drew for the objecting law firms in these twelve

8   cases.

9        THE COURT:  Okay.  All right.  Then they're not

10  summaries though, they're copies, as I understand it, of what

11  you got off the docket as the 2019 statements.  So I can take

12  judicial notice of what's in Exhibit 1.  To the extent an

13  exhibit isn't complete, I'll take judicial notice of the entire

14  exhibit but somebody -- if you're concerned about what has been

15  printed as a summary, should supplement to make sure that the

16  exhibit is complete.  I don't have recollection of whether any

17  specific exhibit is or isn't complete.

18        So I'll take judicial notice of Exhibit 1 but not as a

19  summary; that's not what it is.

20        MR. WORF:  And I think that's sufficient, Your Honor.

21  Once the Court has taken judicial notice of what had been filed

22  in the cases that allows us to refer to them, and that is

23  sufficient.

24        MR. ESSERMAN:  Your Honor, Exhibit 2 is a summary

25  prepared by Garlock and we do object to that summary because

1    it's a selected -- it's some alleged selected statements from

2    some of the 2019s.  If you're going to look at the 2019s you've

3    got the full 2019 to look at not an incomplete -- what really

4    is an incomplete and unhelpful summary.  So we would -- we do

5    object to that Exhibit 2, which is a summary of statements made

6    in Exhibit 1 as it only purports to represent a portion of the

7    2019 statements.  It's not useful and the 2019s that are filed

8    on the docket speak for themselves without the selected

9    excerpting undertaken by Garlock.

10           THE COURT:  Well, I agree with respect to Exhibit 2.

11   It appears to be a summary of Exhibit 1 and I've taken judicial

12   notice of Exhibit 1, so I don't know what I need the summary

13   for to the extent that it is somebody else's interpretation of

14   the information or -- interpretation's not the right word --

15   condensation of the information that's in Exhibit 1.  So I'm

16   not sure of the purpose of Exhibit 2.

17           MR. WORF:  I don't know if anyone else wants to

18   address this but there's no indication that anything on this

19   exhibit is inaccurate in any way.  They haven't mentioned it

20   and I think it's a proper summary of documents that are

21   admittedly voluminous and is therefore proper.

22           THE COURT:  I'm going to sustain the objection to

23   Exhibit 2.  I guess, you know, it's the beauty is in the eye of

24   the beholder issue, whether something is or isn't helpful.

25   Since I'm taking judicial notice of Exhibit 1 and you've

1    printed Exhibit 1 and I've accepted Exhibit 1, I don't need

2    Exhibit 2.  So I will take Exhibit 1 and sustain the objection

3    to Exhibit 2.  So Exhibit 1, I take judicial notice of.

4    Exhibit 2, the objection is sustained.

5         MR. ESSERMAN:  Okay.  Exhibit 3 are 2019 statements

6    filed by Kazan McClain, Brayton Purcell and Waters & Kraus in a

7    couple bankruptcy cases pending in California.  We object to

8    these -- Exhibit 3 on the basis of, number one, lack of

9    foundation.  These documents appear to have been filed in two

10   different cases, the plant insulation and thorp insulation; we

11   don't believe they're relevant nor calculated to lead to

12   discovery of admissible evidence.

13        For -- we also object on 403 grounds, any probative

14   value is outweighed by the danger of unfair prejudice,

15   confusion, the issues of consideration, undue delay, waste of

16   time, needless presentation of cumulative evidence.

17   Furthermore, the 2019s, as we've discussed many, many times are

18   fashioned by Courts, different courts fashion different 2019

19   orders.  What someone may do in response to some other court's

20   requirements or requests is not -- it may be interesting but

21   frankly this Court has set the standard for 2019 and the --

22   what's been filed in other courts we don't think is of any

23   probative value for Garlock.

24        THE COURT:  All right.  Well, with respect to this

25   one, if these are exhibits that were filed in another

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 116

1   bankruptcy case is there some reason I shouldn't just take

2   judicial notice of these?  I'm not sure of the relevance,

3   frankly, but nonetheless to the extent that they're out there

4   and they're on the public record in a bankruptcy case, it seems

5   to me that I can take judicial notice of those.

6          MR. ESSERMAN:  I understand that, Your Honor, but we

7   have to make the relevance objection now or there's an

8   argument, anyway, that we've waived it.  So we have made that

9   relevance argument.

10         THE COURT:  All right.  Well, I'm not sure what the

11  purpose of these is.  Mr. Worf?

12         MR. WORF:  Well, the relevance of these, Your Honor,

13  is these are statements that were actually filed by two firms

14  that have showed up and objected here.  They were filed not

15  just on the docket and in those courts, they were filed on the

16  electronic docket in those courts and they are statements that

17  contain the full exhibit to the statement with the names of the

18  claimants, their alleged disease and other information.  I

19  think in one case it also includes the claimants' home

20  addresses.  And the purpose of this is to show that it's just

21  not possible to reach the showing the Third Circuit requires of

22  a clearly defined and serious injury.  And that the information

23  on these exhibits is of the kind that the Court will protest

24  when in another court they have been filed on the public

25  docket, on the electronic docket, by these same firms and

1    there's no showing that anything untoward has happened.  And

2    for that reason Garlock's access to these exhibits cannot be

3    improper in any way.

4              MS. RAMSEY:  Your Honor, may I respond?

5              THE COURT:  Yes.

6              MS. RAMSEY:  In addition to adopting all of the

7    objections that Mr. Esserman raised, this is context specific

8    and without a copy of the court's 2019 orders in those

9    proceedings and without an understanding of the directions that

10   were made by the Court to counsel with respect to what

11   information was to be contained on those 2019 statements, it is

12   impossible to evaluate the similarity or lack of similarity or

13   the arguments that have been raised for or against with respect

14   to these 2019s.

15             And while the Court can take judicial notice, our

16   position continues to be that not only are they irrelevant but

17   they are potentially -- the potential for prejudice and undue

18   prejudice without a complete record and without the foundation

19   does counter against that and weigh to excluding these on this

20   record.

21             MR. WORF:  I think if Your Honor would look at the --

22   we also included the text of the actual cover page or the

23   statement, if you want to call it that, and the language is

24   quite similar to the statements that have been filed with this

25   Court.  Garlock was not a party to these cases, it does not

1   know what the debate concerning the 2019 statements was in that

2   case and I don't think that's necessary to know.

3          They say -- like the statements in this case, they say

4   what they say.  They were intended to comply with the rule and

5   they list all the names of the claimants and their addresses

6   and everything else and they're filed electronically.

7          THE COURT:  Well, to the extent that in another

8   circuit a court has determined that information may not be --

9   I'm not sure what the right word is, private, protectable, I

10  don't know because I don't know what the language of the court

11  was in making this ruling.  I don't think means that that is

12  something that this court is found to do.  It seems to me that

13  there is private information in the nature of the disease.  I

14  don't think the names of the entities are necessarily private

15  but they may be private as commercial information with respect

16  to any particular law firm, that's a different issue.

17         Who is filing claims, I think is not private

18  information.  That's why I think you're entitled to the

19  ballots.  Those people have voted and asserted a claim, but

20  they have not done anything with respect to the 2019 statement,

21  it's the law firms that filed them and I am concerned about

22  that fact.

23         I don't really see the relevance to what's happened in

24  another proceeding with respect to these 2019s.  If you're

25  offering them as something illustrative, I will -- I can accept

1    them as illustrative exhibits.  I can take judicial notice of

2    the fact that they were filed but I don't see the relevance

3    directly to the issue at hand.  So I'm willing to take a look

4    at them as illustrative of what some courts have required in

5    the way of 2019 statements and what the firms did to comply.

6    I'm willing to do that but I don't see the relevance to this

7    particular motion to reopen that isn't related to those cases,

8    and those 2019 cases aren't filed in the cases you're seeking

9    to reopen.

10           With respect to the request for access, as I said,

11   I'll take them as illustrative of what some 2019 statements say

12   but not as a given that that's what the 2019 statements that

13   you're looking for would say.

14           MR. ESSERMAN:  Further, Your Honor, I would point out

15   that I'm not so sure how illustrative or probative they are of

16   anything because of the 2019 statements.  Two is the address of

17   the law firm, is the address of the client and one lists -- one

18   appears that it could list, potentially, the names of the

19   individual claimants.  So it's unclear what the Court was

20   requiring as to addressing, whether it was the claimant's

21   address or the law firm's address.  So, you know, to me that

22   just heaps on confusion rather than clarity.

23           MR. WORF:  I would note, Your Honor, that they all

24   list the alleged diagnosis and that is available

25   electronically.  Garlock pulled it off the electronic document.

1          THE COURT:  Yeah.  I don't have any doubt that they

2     list what they purport to list, Mr. Worf.  That's not the

3     issue.  The issue is what's the relevance to the motions that

4     are pending before me, and it seems to me you're making a case

5     for why you need this particular information.  You're not

6     really making a case for why you need it, I shouldn't state

7     that.  You're making a case for the fact that you're a member

8     of the public and therefore you're entitled to it and that

9     seems to be the whole sum and substance of it.  My question

10    was, what do you want to use it for and the answer to that

11    question seems to be that you want to use it for litigation

12    purposes.

13          That puts me back into the order that I issued, which

14    is then tell me specifically who you're alleging is making a

15    false statement somewhere.  And then I can understand in

16    connection with that entity or that law firm, whichever it

17    happens to be, that you may need access to a particular

18    statement in the course of that litigation.  But I don't think

19    the 2019s are there just for fishing expeditions for private

20    litigants and that's what I get the semblance that this is,

21    that you're putting this under the gloss of public access but

22    that really isn't what this is.  You're not trying to

23    disseminate this information to the general public for any

24    purpose; you're using it in a private case.  And I think the

25    private discovery rules are the applicable rules, not a

Page 121

1    question where you're saying as a member of the public I have a

2    right to access to determine whether or not -- I'm not sure

3    what, that the judicial process is cleaned out, I don't think

4    that's it because the court doesn't do anything with this

5    information unless somebody makes a motion that says that a

6    particular law firm didn't have the authority to represent a

7    particular plaintiff.  And if that were the case and that

8    motion were made, certainly, I think, at that point there would

9    be some public interest but there is no such allegation, there

10   is no such motion and that's the only purpose for the 2019

11   statement.

12            So I think there's a mix of information and matters

13   going on that is really not directly related to public interest

14   and really is related to private litigation.  And although the

15   circuit has made some statements that say that private

16   litigants are entitled to access and the standards for making a

17   determination as to whether a document should be accessible,

18   are not conclusively determined by whether you're a member of

19   the public or not.  If you're a member of a private entity, not

20   a public entity, the circuit does say, in some cases, that the

21   purpose for which you're seeking the information is relevant

22   and that's my concern.  It seems to me that you're looking at

23   it for reasons that are related to Garlock's litigation

24   strategy and not for dissemination to the public.  But I need

25   to think about this some more after I see it.

1         With respect to this specific exhibit, though, that is

2     all relevant to whether or not this exhibit has anything to do

3     with the motions that you filed and I don't see the relevance

4     to it, except as a sample of what some 2019 statement, filed

5     somewhere else, may say.  And I will take judicial notice of

6     it, as filed, for the purpose of showing that, in another case,

7     a 2019 statement was put on the public record and this is what

8     it said.  And so I will admit it for that limited purpose, as

9     illustrative, that's all.  Okay.

10    (Exhibit 3, 2019 statements filed by Kazan McClain, Brayton

11    Purcell and Waters & Kraus in the Plant Insulation and Thorpe

12    Insulation cases, was hereby received into evidence for the

13    limited purpose of being illustrative as of this date.)

14         MR. ESSERMAN:  Exhibit 4 was an excerpt of five of

15    37,194 pages from the Federal Election Commission Report for

16    Obama for America showing individual donors with addresses.  We

17    would object to this purported evidence.  Besides

18    authentication issues, which is it was not authenticated, is

19    neither relevant nor calculated to lead to discovery of

20    admissible evidence.

21         It was filed by -- for very different purposes under a

22    federal mandate.  It's probative of nothing other than these

23    people are donors to the Obama campaign and that they've

24    complied with applicable law or the Obama campaign has applied

25    with applicable law and has filed what Congress has set forth

1    that they need to do.  Even if it's got some attenuated

2    relevance, we think it's inadmissible, once again, under 403

3    Federal Rules of Evidence, that any probative value is

4    substantially outweighed by the danger of unfair prejudice,

5    confusion of the issues, waste of time, needless presentation

6    of cumulative evidence and relevance.

7              THE COURT:  Mr. Worf?

8              MS. RAMSEY:  Your Honor, may I just put on the record

9    just that we join in that objection --

10             THE COURT:  Ms. Ramsey --

11             MS. RAMSEY:  -- just for the record.

12             THE COURT:  -- I don't see where joining in the

13   objections if that's acceptable --

14             MS. RAMSEY:  That's acceptable, Your Honor.

15             THE COURT:  -- or otherwise.

16             MS. RAMSEY:  Thank you very much.

17             MR. ESSERMAN:  And Mr. Lockwood also.

18             THE COURT:  Well, he's already said he does.

19             MR. ESSERMAN:  Yes.

20             THE COURT:  Mr. Worf?

21             MR. WORF:  First of all, on the authentication point,

22   there's no reasonable dispute that this is what it says it is.

23   It is on the Internet and it's a publicly filed document.

24             THE COURT:  Well, what does it have to do with 2019

25   statements?

1          MR. WORF:  Well, on the relevance point, I would urge

2     the Court to again look at the Goldstein case from the Third

3     Circuit and one of the prongs for the finding a Court must make

4     in order to seal documents and prevent a member of the public

5     from having access, is that information is of the kind that is

6     protected by courts.  And this argument applies also to the

7     exhibits we were discussing under Exhibit 3 of the 2019

8     exhibits filed publicly in the Plant and Thorpe cases where

9     this kind of information is not of a kind that is protected by

10    courts.  Same argument applies here.  These are individuals and

11    their addresses are disclosed here as required by the law just

12    like Rule 2019 requires creditors' addresses to be disclosed

13    and this Court required their addresses to be disclosed.  And

14    that is not the kind of information that would be sealed by a

15    Court.

16         THE COURT:  All right.  I don't see the relevance

17    to -- court to report in any way as connected with 2019

18    statements.  It's an entirely different statute for different

19    purpose.  And the fact that someone voluntarily makes a

20    donation understanding that by doing so it's name and address

21    is going to be put on a report that will be filed publicly I

22    think is entirely different for the purpose of 2019.  I just

23    don't see the relevance.  Exhibit 4, the objection is

24    sustained.

25         MR. ESSERMAN:  This similar -- we've got an objection

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 125

1    to Exhibit 5 which is an individual Chapter 13 petition of

2    William F. Smith which was filed on February 4th, 2011 in

3    Delaware.  It's from this district.  It may even be pending

4    before this Court; I don't know.  And it's his voluntary

5    Chapter 13 petition.  We have similar objections as we just

6    made for the Federal Election Commission.

7            THE COURT:  Yes.  Mr. Esserman, honestly, I don't

8    see -- I have the same ruling with respect to this.  This is a

9    voluntary filing by a person who's required to put this

10   information on the public record and it's just not equivalent

11   to a 2019 statement.  So, yes, I don't know whose case it is.

12   As far as I know, it's not assigned to me.  I've never had any

13   proceedings in it that I know of.  So, I don't believe it's a

14   case assigned to me.  But even if it were, I can take judicial

15   notice of the fact that the petition's there and that it

16   contains what it contains but it has nothing to do with 2019

17   statements.  So, I just don't see the relevance.  Mr. Worf.

18           MR. WORF:  Well, Your Honor, this is an example of how

19   parties do bankruptcy cases.  Here it's a debtor are required

20   when the law requires disclosure to put this information on the

21   public docket and for people to have access to again

22   demonstrating that it's -- this is not the kind of information

23   that court's protect.  And --

24           THE COURT:  I agree that the name and address of the

25   debtor who voluntarily files a Chapter 13 is not the kind of

1    information that the court protects generally.  I have seen in

2    some instances information sealed for various reasons but

3    generally speaking that is not protectable information.  You

4    know by filing a petition in bankruptcy just like you know by

5    filing a complaint in state court that certain information is

6    going to be required to be disclosed.  That has nothing to do

7    with what information appears by a law firm submitting a list

8    of clients in a 2019 statement.  So, the objection is

9    sustained.  It's simply not relevant.

10          MR. ESSERMAN:  The next exhibit is of similar

11   objection.  It's an 869-page extract from the claims register

12   in Judge Walrath's case In re American Business Financial

13   Services showing the names and addresses of thousands of

14   individual creditors on the claims register.  We don't -- same

15   objection that I just made.  We just don't see that this has

16   anything to do with 2019.

17          THE COURT:  Well, I'm sort of in the same position

18   with this one, Mr. Worf.  This is a proof of claim register.

19          MR. WORF:  I -- yes, and here, I mean, this one is

20   even closer to the situation we have here because here we have

21   creditors.  Individuals who are identical for purposes of this

22   motion to the creditors listed on the 2019 statements.

23          THE COURT:  In American Business Financial Creditors

24   people who have claims against a financial entity are the same

25   as individual tort claimants?

1          MR. WORF:  In the relevance sense they're creditors in

2     a case and the names of creditors in a case are not the kind of

3     information that is protected --

4          THE COURT:  I agree --

5          MR. WORF:  -- by courts.

6          THE COURT:  -- if they were creditors in the case.

7     That's why you can get the ballots but they are not creditors

8     in the 2019 statement.  They are a list of clients that law

9     firms represent that may or may not, it turns out, have claims

10    in the case.

11         That this extract is simply not relevant to 2019.  It

12    is what it is.  The law requires certain disclosure.  I don't

13    have any doubt about that.  I don't have any doubt about what

14    2019 requires.  The issue is whether or not in the particular

15    circumstances of the filing of the pleading and fault, there is

16    reason to keep it out of the public scrutiny.  That's the

17    issue.  Not whether generally speaking information is available

18    to the public.  So, the relevance of this document to what

19    you're trying to do is just not there.  So, I sustain the

20    objection of Exhibit 6.

21         MR. ESSERMAN:  Okay.  Exhibit 7 is a news article

22    describing the American Business Financial Services bankruptcy

23    noting that many of the investors required to file proofs of

24    claim reflected in Exhibit 6 were elderly, that's the exhibit

25    we just discussed.  We have the same objection to that.  In

1   addition, it's hearsay, it's lack of proper foundation, it's

2   being asked to be admitted as evidence here.  We don't think

3   it's evidence of anything.  It's an extract of a newspaper

4   article and we just don't see the relevance.  We have 403

5   arguments.

6           THE COURT:  Mr. Worf?

7           MR. WORF:  Again, Your Honor, this was offered to show

8   the nature of the creditors in the American Business Financial

9   case for which we offer the claims register.  There was an

10  argument made by the other side that the reason why the names

11  of creditors in these twelve cases are protected when they

12  ordinarily are not is because they are in their words "elderly

13  and potentially vulnerable."  This is to rebut that.  The

14  newspaper article says that many of the claimants in this

15  bankruptcy case were also elderly and then we provided the

16  extract from the claims register showing the thousands of

17  creditors whose names were on the public document.

18          THE COURT:  This is clearly hearsay.  I don't know who

19  the newspaper person who wrote the article is or what relevance

20  he has to the case or what access to information he had.  A

21  news article is probably one of the most unreliable methods of

22  establishing the truth of the matter asserted in this

23  particular type of contract -- text.  And I'm sorry if there

24  are newspaper people here.  I'm not attempting to cast

25  aspersions on you.  I'm simply saying that as a matter of

1    evidence, it takes a percipient witness and newscasters are not

2    percipient witnesses in most instances.  That's all.  I'm not

3    attacking credibility of the press in any way.  So, from what I

4    know, this is not authenticated.  It is not shown to be by a

5    percipient witness and the objection is sustained.

6           MR. ESSERMAN:  I think it's probably double hearsay.

7    But anyway, moving onto Exhibit 8, it's a list of pending cases

8    in the Mardoc proceeding showing the names of certain asbestos

9    claimants.  We have objection that there is no foundation for

10   it.  It wasn't authenticated.  It's not relevant or calculated

11   to lead to discovery of admissible evidence.  No suggestion

12   between the commonality between a Mardoc proceeding which is a

13   federal lawsuit.  In this case, it's very different situations

14   where people have actually filed claims versus a 2019

15   statement.  Actually, this is a purported list of -- of names

16   of people that have filed the claims, that's all, if you look

17   at it.  It's just a name, the district they filed in, the case

18   number and something called EDPA Colon, I'm not sure what that

19   means.  I've never seen that before.  But we don't think this

20   is probative of anything.  We have the same 403 objections.

21           THE COURT:  Mr. Worf?

22           MR. WORF:  Again, Your Honor, I believe the Court

23   could take judicial notice of this document.  This is simply a

24   list of the pending cases in the Federal Maritime Asbestos MDL.

25   This one happened to be obtained from the Internet.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 130

1           Again, this shows that asbestos claimants are not

2    permitted to file claims or participating cases anonymously or

3    pseudonymously.  Here are their names.  They're publically

4    available.  It again shows that the information contained in

5    the 2019 exhibits is not the kind that a Court will protect.

6    And it's relevant for that reason.

7           On the voluntariness point, this is a point that we

8    hear and we've heard Your Honor on this, the distinction is

9    that these are individuals who filed claims and that the

10   persons who appear on the 2019 exhibits did not do so

11   voluntarily.

12          The evidence in the record, we believe, does not

13   support the involuntariness of those claimants appearing on

14   those exhibits.  The text of the 2019 statements says that the

15   attorney who files a statement represents the individuals on

16   the exhibit and that the individuals on the exhibit have

17   authorized the law firm to participate in the case on their

18   behalf.  And the statement attaches an exemplar to which we

19   have not had access because it was filed off the electronic

20   document showing the exact terms of that representation.

21          Now, it would certainly be helpful to see that

22   exemplar and to see the terms of the representation.  But the

23   other side has not offered, as they could have, an example of

24   such exemplars showing that the persons listed on those

25   exhibits had some sort of reservation not authorizing the

1    attorney to file the statements and put their name on the

2    ballot as a person they were representing in that case.  So, we

3    are a little bit puzzled, Your Honor, by the assertion of a

4    lack of voluntariness.

5            THE COURT:  The voluntariness I was speaking about

6    was, I think, a different issue, Mr. Worf.  I hope I didn't

7    confuse things.  I was speaking about the distinction between

8    the debtor who submits to the jurisdiction of the court for

9    purposes of obtaining bankruptcy relief and a client of a law

10   firm whose name appears on the list because the law firm is

11   required by Rule 2019 to file that list of creditors.  Did the

12   law firm file it voluntarily?  Yes, absolutely.  And does it

13   purport to say that they have duly represented clients?  Yes.

14   That's the whole purpose of 2019.  But there's a distinction

15   between the law firm filing it because the statute tells them

16   to and the client whose name appears on that list which may or

17   may not even know their names are on the list.  But I don't

18   think the purpose is the same.  That's all.  I'm -- I feel

19   you're looking at me like I've got three heads so I guess I'm

20   not articulating this very well.

21           MR. WORF:  I didn't mean to do that, Your Honor,

22   but --

23           MR. ESSERMAN:  Makes sense to me.

24           MR. WORF:  The -- I guess our point is that the law

25   firm they're in the case, they -- an obligation to file the

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 132

1    2019 statement accrues for whatever reason.  They're in the

2    case doing something and they're doing it on behalf of these

3    individuals who the statement says are creditors.  So, we see

4    it as indistinguishable from a creditor who's filing a proof of

5    claim or voting a ballot or any other participation in the case

6    and our exhibits of which, you know, we've mentioned in some

7    detail show the creditors are -- their names are not kept

8    confidential.

9             MR. LOCKWOOD:  Your Honor, I'm going to break my

10   promise not to speak.  The representation that is described in

11   the Rule 2019 that Mr. Worf referred to was authorized to

12   represent them in the case.  As we've discussed earlier, that

13   doesn't say represent them in the case when.  It's an authorize

14   to represent them in the case when it comes times to file a

15   ballot in the future, an authorization to represent them in the

16   case when it comes time to file a proof claim in the future.

17   It certainly isn't talking about authorizing them to file a

18   2019 statement because that's circular.  And there's -- so, it

19   just -- asking -- allowing a lawyer, for example, to file a

20   Rule 2002 notice so he can get information about the bankruptcy

21   because you're status as a claimant might be effected by what's

22   going on in the bankruptcy or might not, is not the same thing

23   as filing a proof of claim.  And I think that's where you're

24   correct in responding to Mr. Worf about the difference between

25   representation and a proof of claim or a ballot.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 133

1          THE COURT:  Well, this Rule 2019 starts off, if I can

2     get to the relevant part, "Every entity or committee

3     representing more than one creditor or equity security

4     holder" -- blah, blah, blah -- "shall file a verified

5     statement."  It is not a requirement that a client file a

6     verified statement.  It's a requirement that the lawyer do it.

7     So, the lawyer may very well have the authority to represent

8     the creditors who are listed but that doesn't mean it's a

9     voluntary filing by the creditor.  It's a voluntary filing by

10    the lawyer who's appearing on behalf of certain entities in the

11    case.  That's the distinction I'm trying to make.

12          In any event, I'm not sure that it's really a material

13    distinction at this point because the law requires certain

14    actions to be undertaken and they've been undertaken.  I don't

15    think there's any doubt about the fact that they've been

16    undertaken.  That's why we're even here arguing about this.

17    So, I think it may be a distinction without much of a

18    difference.  I'm trying to get to the relevance of the other

19    information other than the 2019s that you're submitting.  And

20    that's the context in which I'm trying to bring up these

21    differences.

22          With respect to lists of claims of asbestos creditors,

23    I don't know what this Mardoc document is.  I don't even know

24    where it's filed or what it purports to do.  So, the objection

25    to the fact that this is not authenticated and that there is no

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 134

1   commonality between a Maritime -- Federal Maritime suit even

2   though it may have asbestos creditors in it and this type of a

3   bankruptcy proceeding is sustained.  I just don't see the

4   relevance.  I see the relevance to eds (ph.) and bars of 2019

5   statements that you say that you want to get.

6           To the extent that the issue is that people comply

7   with the law and at certain times the law requires the names

8   and addresses to be filed, I recognize that.  I don't need

9   exhibits to tell me that.  I agree.

10          MR. WORF:  Could we ask Your Honor to take judicial

11  notice of the fact that asbestos claims are customarily filed

12  in public?

13          THE COURT:  No.  I don't agree that they are.  In

14  fact, I think they're customarily not filed at all in the

15  bankruptcy cases.

16          MR. WORF:  I should have clarified.  In the state tort

17  system.  That's where this is filed.

18          THE COURT:  If somebody has filed a complaint, a

19  verified complaint, and the state tort system is the complaint

20  of record, yes, I agree.  The complaints of record if

21  somebody's filed a verified complaint in the state tort system

22  but that doesn't -- that doesn't get you anywhere because the

23  content of the complaint doesn't necessarily have the

24  information that a 2019 statement would have.  It may have it

25  but it doesn't necessarily.  But yes, I agree.  If you file a

Page 135

1    complaint, you filed a complaint.

2         MR. WORF:  And we'll get to that.  We have a complaint

3    and it's in evidence and we'll get to that.

4         THE COURT:  All right.  The objection to Exhibit 8 is

5    sustained.

6         MR. ESSERMAN:  Okay.  Similar we've got a similar

7    objection to Exhibit 9 which is a list of pending cases in a

8    Texas MDL allegedly showing thousands of names of asbestos

9    personal injury claimants.  I'm not sure where this came from.

10   It gives the case number.  It gives the style plaintiff.  It

11   gives a style defendant.  The one page I've got just lists one

12   defendant, I suspect it's inaccurate.  I suspect that there's

13   several defendants but I don't know.  I'm not sure what this

14   does.  It's the same objection.  We got authentication,

15   foundation, 403 relevance, probative value, not calculated,

16   admissible evidence, same reasons as Exhibit A.

17        THE COURT:  Okay.  Mr. Worf?

18        MR. WORF:  Again, I think there's no reasonable

19   dispute that this is what it says it is which is a summary of

20   the cases in the Texas MDL.

21        The -- I guess the point of these aggregate listings

22   of numbers of asbestos cases, many asbestos cases, are probably

23   thousands on this list, although I have not counted them, but

24   there's been an allegation made on the other side that the

25   special harm that would be caused by disclosure of the exhibits

1    here is that they are aggregate and this shows that that is not

2    harmed that leads to any injury.  These are aggregated.  These

3    are asbestos claimants.  The public is able to inspect them and

4    to see them and to see who these claimants are.  They're

5    similarly no serious injury that would occur to Garlock being

6    able to see these exhibits containing the names of asbestos

7    creditors.

8             THE COURT:  Okay.  I can't figure out what this one

9    is.  I don't know what it is.  I don't know where it came from.

10   It purports to be some summary but I don't know how it's been

11   put together and what it summarizes.  I don't see that this one

12   is authenticated.

13            To the extent that what it purports to be is a list of

14   people who have filed a complaint in a court somewhere, then I

15   don't know whether it's accurate.  I don't know what it

16   summarizes.  I just don't know.  I cannot figure out what this

17   exhibit purports to be.

18            MR. ESSERMAN:  Or where it even came from.

19            MR. WORF:  Well, we could represent we got it from the

20   Internet, Your Honor, but because -- as I said, this is not an

21   evidentiary hearing.  Our --

22            MR. ESSERMAN:  This is an evidentiary hearing.

23            THE COURT:  It is an evidentiary hearing.  That's why

24   I'm going over exhibits.  Otherwise, I don't need exhibits.

25            MR. WORF:  Again, we think there's no real reasonable

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 137

1    dispute that this is what it says it is.

2         THE COURT:  Well, it has to -- this has to be

3    authenticated.  I have no idea what it is, where it came from,

4    and I can't take judicial notice of something that I can't

5    identify.  I don't think this is a court document.  It doesn't

6    look like one.  If it is one, then this one has to give me more

7    information.  I simply --

8         (Audio ends mid-sentence)

9         (Recess from 1:42 p.m. until 1:59 p.m.)

10         THE CLERK:  All rise.

11         THE COURT:  Please be seated.  Okay.  Mr. Worf you

12    were explaining where you got Exhibit 9.

13         MR. WORF:  Oh, yes.  Exhibit 9 we did get from the

14    court's website and for that reason we think it's a -- it's

15    authenticated for that reason.

16         THE COURT:  Okay.  Well, what is it?

17         MR. WORF:  A list of impending asbestos cases by

18    plaintiff.

19         MR. ESSERMAN:  I would just add that I think one look

20    at this exhibit and you know it's inaccurate because it shows

21    the case number which let's assume right now is accurate.  The

22    style plaintiff is probably accurate but the style defendant

23    and I don't know whether this purports just to list the first

24    defendant or all the defendants or --

25         THE COURT:  Yes.  I don't think this is the type of

1    court record that I can take judicial notice of and that can't

2    be verified, I think, without some authentication behind it.

3    It's possible it may be verified but I don't think it is right

4    now so I'll sustain the objection simply because I don't think

5    the exhibit is authenticated and I don't know what it is.  I

6    don't know the accuracy and I don't know what it purports to

7    summarize except that it indicates that it's a summary of cases

8    but I don't know what cases.  So, it's not a judicial record in

9    that sense.  It's simply an administration function of some

10   sort.  So, the objection is sustained for that reason.

11           MR. ESSERMAN:  Number 10 is a list of master -- a

12   master ballot of Thornton & Naumes showing names of claimants

13   in the Pittsburgh Corning and their disease.  We would object

14   to this as not being relevant to the issues which are presented

15   to the Court on the 2019s.  These are the master ballots.

16   These may give certain information on number of claimants who

17   are filing -- who have voted by disease level and it does.  It

18   shows the various breakdowns by disease of Thornton & Naumes

19   clients.  It's an acceptance of the Pittsburgh Corning plan but

20   how this relates to the 2019 issues we think is irrelevant and

21   we have our 403 objection to it.

22           THE COURT:  Mr. Worf?

23           MR. WORF:  This is information, the ballots, that the

24   objectors have conceded that Garlock should have access to.

25   And it include -- and it's relevant because it includes most of

1    the very same information that's in the exhibits that Garlock

2    is attempting to obtain; the names of creditors and the disease

3    level that the creditor claims.  And for that reason, it

4    demonstrates that the 2019 exhibits are not the kind of

5    information that a court will protect.

6              MR. ESSERMAN:  I don't know that it necessarily

7    connects the disease level with the vote or the ballot.  It

8    lists the last four digits of the Social Security number and a

9    disease level but doesn't necessarily connect it to a name.

10   And it's sort of broken down by 148 mesos, 260 lungs, 124 other

11   cancers, all properly done in the ballot itself but once again

12   I don't know if this is probative of anything on the issues

13   that the Court's being asked to decide today.

14             MR. WORF:  But again, by ballot, I mean the master

15   ballot that was cast by the law firm as well as the exhibit

16   which does list every claimant covered by the ballot and the

17   particular disease level for that claimant.  So, if you look in

18   the second column from the right, it's got disease level and

19   it's got everything ranging from asbestos level 2, so on and so

20   forth, lunch cancer, Mesothelioma, other cancer and it is

21   associated with particular claimants.

22             MR. ESSERMAN:  Broken down by the last four digits of

23   their Social Security number.  The ballots are the ballots.  I

24   mean --

25             THE COURT:  Yes, I think I can take judicial notice of

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 140

1   these ballots, number one and number two.  Again, I'm not sure

2   how probative they are of the 2019 information but they

3   certainly show that the information that you're looking at can

4   be obtained from the ballots.  So, I don't see any reason not

5   to admit Exhibit 10.  I think they're probative of what the

6   ballots in these particular cases say.  I don't know the

7   relevance to 2019.  I'll have to think about that.  But I'm

8   going to at least conditionally admit Exhibit 10.

9   (Movant's Exhibit 10, master ballot of a certain law firm in

10  the Pittsburgh Corning case, was hereby received into evidence

11  as of this date.)

12          MR. ESSERMAN:  Okay.  We've discussed a little bit the

13  newspaper articles which is Exhibit 11.  There's a bunch of

14  newspaper articles here and a letter from a congressman --

15          THE COURT:  But Mr. Esserman, I have the same problem

16  with the newspaper exhibits.  Those -- newspaper articles are

17  simply not done by percipient witnesses so I don't -- they're

18  hearsay.  I don't see any probative value in that sense.

19          MR. ESSERMAN:  I agree.

20          THE COURT:  So --

21          MR. WORF:  Your Honor, if you let me address that real

22  quickly.

23          These, unlike the previous newspaper article, are not

24  offered for their truth but for the fact that people are

25  writing articles about the topic that we have raised here which

Page 141

1    is inconsistent exposure allegations between bankruptcy forums

2    and tort forums.  We're not offering them for the accuracy of

3    what they say but for the fact that the public has an interest

4    in it and, therefore, Garlock in its pursuit of this motion

5    admittedly for its own private interest is also serving the

6    public interest in advancing knowledge about this topic and

7    which is interest of which is demonstrated by these documents.

8            I believe the authentication objections are without

9    merit because these documents that purport to be newspaper

10   articles are self-authenticating.  There's also an

11   authentication objection raised in the congressman's letter but

12   it is also self-authenticating as a publication purporting to

13   be issued by public authority in this case the office of a

14   congressman who's a -- who at the time was a ranking minority

15   member of the House Judiciary Committee.  And for that reason,

16   all of these documents are admissible.

17           MR. ESSERMAN:  I would just add quickly that while

18   these articles were opinion pieces by insurance company

19   lawyers, lawyers that appear before this Court who were

20   probably done at the behest of defendants perhaps even Garlock,

21   I don't know that they're probative of anything other than

22   they've got a good media man out there beating the bushes

23   trying to make their points.

24           MS. RAMSEY:  Your Honor, and I can -- if I could just

25   also add to the record that I would like to make an objection,

1    generally, to the suggestion or implication that is contained

2    in Garlock's statements that somehow by -- if they could

3    discover this that, in fact, they would disclose evidence of

4    such double-claiming and inappropriate conduct and false claims

5    that we keep hearing this theme of from Garlock.

6              MR. ESSERMAN:  Exactly.  They're prejudice pieces is

7    what they are.  They're not based on any evidence.

8              MR. WORF:  Well, none of that, Your Honor, is of

9    record the motives of these pieces.  They are what they say.

10   Some are from the Wall Street Journal.  One is from Forbes.

11   One is from a congressman and another one is from a newspaper,

12   The Dallas Observer.

13             THE COURT:  Well, they're clearly hearsay.  They're

14   clearly not admissible for the truth of what they purport to

15   say.  To show that there is some public interest from time to

16   time in these issues, they say whatever they say and they're

17   admissible for that purpose.  So, I will admit them for the

18   limited purpose of showing that on whatever dates and whatever

19   publications these pieces appear, they were written and they

20   say what they say but not for the truth of the content because

21   they are clearly hearsay with respect to the truth.  So, one

22   second.

23   (Movant's Exhibit 11, collection of newspaper and other

24   documents demonstrating the public interest and concern

25   regarding asbestos claiming practices implicated by this

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 143

1      motion, was hereby received into evidence as of this date.)

2              And with respect to the congressman's letter, it's a

3      letter that purports to say what it says.  I have no idea what

4      the follow-up, if any, was with respect to this letter.  That

5      doesn't appear in the document.  So, to the extent that a

6      congressman suggested that it might be appropriate to take a

7      look at what the trusts are doing and the claiming behavior, I

8      think the letter says what it says but that's what it does.

9      So, again, I'll take it for the fact that the letter was

10     written and for no other purpose.

11             MR. LOCKWOOD:  I think it would be fair to assume,

12     Your Honor, that if the letter had produced a hearing we'd have

13     heard from Garlock about it.

14             THE COURT:  Well, in any event, it is what it is.

15     There was a letter written and I will take it for that purpose

16     and for no other.

17             All right, next?

18             MR. ESSERMAN:  Okay.  Next, I think is the last

19     numbered Exhibit which is the affidavit of Paul Grant.  Clearly

20     hearsay.  We don't think there's a foundation objection.  We

21     don't think it's relevant nor calculated to lead to discuss --

22         (Audio ends mid-sentence)

23         (Recess from 2:09 p.m. until 2:24: p.m.)

24             THE COURT:  Please be seated.  We're going to be

25     moving to Judge Gross's courtroom as soon as they have

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 144

1    everything set up up there but apparently we're okay to work

2    here for another ten or fifteen minutes until they set up up

3    there.  So, hopefully, maybe, we can get this case concluded

4    and start with SPHC upstairs.

5         But okay.  We were -- Mr. Esserman, affidavit of Mr.

6    Grant, Exhibit 12, clearly hearsay and no foundation and that's

7    where I lost you.

8         MR. ESSERMAN:  Okay.  We also think it's a question of

9    relevance.  I would note that notwithstanding the fact it's

10   clearly hearsay, it's an affidavit that evidentially has been

11   put forth by Garlock in connection with certain -- in support

12   of their motion in their bankruptcy, in Garlock's bankruptcy,

13   for establishment of a bar date, proofs of claim, forms of

14   notice, estimation of claims, approval of case management

15   schedule and their response to the personal injury committee's

16   motions.  I don't see that this is probative evidence of

17   necessarily anything other than Garlock's clear hearsay story

18   on how they see the world.

19        MR. WORF:  Your Honor, we're not offering this for the

20   truth either.  We're offering this to show that the needs that

21   Mr. Cassada ran through have been raised in Garlock's

22   bankruptcy case in one form through the filing of this

23   affidavit and to show that those issues are occurring in

24   Garlock's bankruptcy case and we're not offering it for the

25   truth of what it says but simply for that purpose.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 145

1       THE COURT:  All right.  I don't think I need the

2    affidavit for that purpose.  I have counsel's representation on

3    this record and at this point I think that's enough.  I don't

4    think this is really substantive evidence for that point.  So,

5    I accept counsel's representation that these issues are of

6    significance in Garlock's bankruptcy case.  I don't think that

7    really at this point is determinative.  So, I'll sustain the

8    objection to Exhibit 12.

9       MR. ESSERMAN:  I actually think it's Exhibit A.

10       THE COURT:  Oh, it is Exhibit A.  I'm sorry.

11       MR. WORF:  It was, yes.

12       THE COURT:  Yes.

13       MR. ESSERMAN:  If it's 12 I missed it.

14       THE COURT:  No, it's A.

15       MR. ESSERMAN:  Okay.  Next is Exhibit B which is a

16    Court order on the motion of the official committee of asbestos

17    personal injury claimants for entry of a scheduling order and

18    debtors' motion for estimate -- establishment of asbestos

19    claims bar date.  You know, it's a Court order or it's being

20    represented as a Court order.  It's unsigned but it's

21    represented that it has been signed.  It looks like it was

22    pulled from the docket.  Actually, it was signed on the first

23    page; I'm sorry.  We have the same 403 argument as to whether

24    it's probative of anything, whether it's calculated or lead to

25    discovery of admissible evidence and whether it's proof of

1    anything in this matter.

2         THE COURT:  Mr. Worf?

3         MR. WORF:  This is again to show that there's pending

4    litigation in Garlock's bankruptcy case or at least pending

5    discovery in Garlock's bankruptcy case to which statements in

6    Garlock seeking for that purpose.  And it's also a publicly

7    filed record.

8         THE COURT:  Well, yes, if it's a Court order in

9    Garlock's own bankruptcy case, again, I can take judicial

10   notice of it.  I'm not really sure of the relevance but I also

11   don't see any harm in admitting the fact that this Court order

12   is there that establishes -- or that is a request, I should

13   say, for the order that has been signed.  So, Exhibit B will be

14   admitted.

15   (Movant's Exhibit B, court order on the motion of the official

16   committee of asbestos personal injury claimants for entry of a

17   scheduling order of bar date, was hereby received into evidence

18   as of this date.)

19        MR. ESSERMAN:  Okay.  Exhibit C is the 2019 order that

20   Your Honor entered.  It appears to be Your Honor's signature.

21   We think it's fine.  If Your Honor will authenticate it for us.

22   Please take the stand.

23        UNIDENTIFIED SPEAKER:  I want an authentication

24   objection unless we swear in the judge.

25        MR. ESSERMAN:  I know your signature.  This is it.

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 147

1        THE COURT:  Which 2019 order?  I'm sorry?

2        MR. ESSERMAN:  This is Pittsburgh Corning.

3        THE COURT:  All right.  Again, I've taken judicial

4    notice.  I can take judicial notice of this and it is what it

5    is.  So, I don't see any problem of the admission of this

6    order.  So, I'll admit Exhibit C.

7    (Movant's Exhibit C, 2019 order for Pittsburgh Corning by Judge

8    Fitzgerald, was hereby received into evidence as of this date.)

9        MR. ESSERMAN:  Exhibit D is a 2019 statement filed in

10   Pittsburg Corning.  It's three pages.  It's sort of the same

11   objection in that I'm not sure necessarily what probative value

12   it has but it is what it is.  Your Honor can take judicial

13   notice of it.  It's a pleading in Pittsburgh Corning of a 2019

14   statement.  We think it's sort of cumulative but if Your Honor

15   wants to look at all these 2019 statements, have at it.

16       THE COURT:  I'll take judicial notice of Exhibit D.

17       MR. WORF:  E is the same kind of document just to

18   moves things along.

19       THE COURT:  Which case is E in, please?

20       MR. WORF:  This recording.

21       THE COURT:  Same.  Okay.  I'll take judicial notice of

22   that too.

23       MR. WORF:  And then, Mr. Esserman, we have not offered

24   F, G or H.

25       MR. ESSERMAN:  Okay.

1          MR. WORF:  They're attached to our motion but we have

2     not offered them here.

3          MR. ESSERMAN:  Okay.  For the record I have no

4     objection to those exhibits.  I is order granting access to the

5     2019 statements in Owens Corning.  We're not sure that this is

6     necessarily -- well, it is what it is.  Your Honor can take

7     judicial notice of it but we're not sure it's probative of any

8     issue in this case and that there's anything that it will offer

9     to Your Honor other than it's an order entered in a closed case

10    six years ago.  But it is what it is.

11         THE COURT:  Well, I'll take judicial notice of Exhibit

12    I but the circumstances in Owens Corning and the circumstances

13    here are much different.  So, I don't see the relevance to that

14    particular word of it.  It's there and I did permit that access

15    but it wasn't for the same alleged purposes as here and I don't

16    see the relevance of the document.  So, I'll take judicial

17    notice of it but as to relevance the objection is sustained.

18         MR. ESSERMAN:  Okay.

19         MR. WORF:  And we offer, just to note, we thought it

20    was particularly illustrative because the order provided that

21    "Nothing in this order shall be deemed to prohibit the use of

22    the information contained in the 2019 statements on an

23    aggregate basis in connection with the estimation proceeding

24    currently scheduled to commence in the district court."

25         THE COURT:  Right.  Well, that was why I say it's a

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 149

1   whole different basis from what Garlock is attempting to submit

2   here.

3            MR. WORF:  Well, I think it shows -- we offered it to

4   show that these documents have been used in estimation -- or

5   oversaw it for use in an estimation proceeding just like Judge

6   Hodges has ordered discovery to commence on estimation of

7   Garlock's liabilities.  We offered it for that purpose.

8            THE COURT:  Isn't this -- was this order via or in the

9   Owens Corning case?

10           MR. WORF:  Yes, Your Honor.  I believe this was

11  entered in the Owens Corning case.

12           THE COURT:  Right.  So, doesn't it make sense that

13  you'd use the information in your own case and the 2019s were

14  given access to certain entities that were going to do with

15  things in comparison between ballots to make sure that certain

16  parties had authority to represent it.  It was and order

17  entered in the case for the use in the case.  So, I don't see

18  the relevance.

19           I take judicial notice of Exhibit I but the relevance

20  is not there and I sustain the objection with the relevance.

21           MR. ESSERMAN:  Your Honor, the only thing I would note

22  for the exhibit is that it is not signed, it is dated January

23  blank 2005, and the pleading attached to it is not signed

24  either so I don't know if this is a draft or not.

25           MR. WORF:  I'm not sure what copy you got.  The copy

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 150

1    that we have is signed and dated January 11th of 2005.

2                MR. ESSERMAN:  I got what you gave me.

3                MR. WORF:  It might be a situation where the pdf when

4    it was saved didn't save this image or something like that.

5                MR. ESSERMAN:  Well, Garland just verified that ours

6    is not signed.

7                MR. WORF:  Okay.  We'd be happy to provide you with a

8    signed one.

9                THE COURT:  I'm sure I signed an order to that effect.

10               MR. ESSERMAN:  I'm sure you did too.

11               THE COURT:  Whatever the order is, I have no objection

12   taking judicial notice to.  I did it for the reasons that were

13   expressed in that case for use in that case and I think that's

14   appropriate.  This is a whole different request by a third

15   party for information not in the specific case in which they

16   want to use it.

17               MR. ESSERMAN:  Right.

18               THE COURT:  Okay.  Next.

19               MR. ESSERMAN:  Okay.  So, we'll have a sustained

20   relevance objection there.

21               Exhibit J is the next one which is the order in

22   Congoleum, the 2019 order in Congoleum.  We object to this

23   order in Congoleum.  It is a -- I believe it's a signed order

24   from Judge Ferguson in which Judge Ferguson decided to go a

25   different way.  There's been some discussions of the Congoleum

1    2019, the type of case and why that case was different than

2    this case already.

3            In this case but I'm not sure what probative evidence

4    this is of anything other than the one judge that I'm aware of

5    that didn't file the 2019 orders in -- that Your Honor has set

6    forth.

7            THE COURT:  Mr. Worf?

8            MR. WORF:  This is another situation where, and we did

9    see earlier the Plant and Thorpe cases where they -- exhibits

10   to the statements were filed on the docket.  This is an example

11   of another case where that was provided for.  It is,

12   therefore, precedent for court's finding that the information

13   contained in the 2019 exhibits is not the kind that a court

14   will protect.

15           And I would mention again that this Court has not made

16   findings to that effect.  Those are the findings that this

17   Court would have to make now in order to deny Garlock access.

18   As Mr. Cassada explained, the 2019 orders here were not sealing

19   orders, they were procedural orders.  These are examples of

20   judges who considered a sealing argument and found it to have

21   no merit and put the documents on the electronic docket.

22           MR. ESSERMAN:  I mean it is what it is.  It's one

23   judge that's decided to go a different way in a failed pre-pack

24   case.

25           THE COURT:  Well, I think Judge Ferguson was dealing

1    with a whole series of different issues in Congoleum than he's

2    facing a number of courts in bankruptcy cases.  Nonetheless,

3    she ruled a certain way.  I don't see any problem in taking

4    judicial notice of her order.  It is what it is.  And people

5    either followed or didn't follow, I don't know.  But the order

6    is clearly there.  It is an example of a 2019 statement that's

7    been approved and I'll admit it for that purpose.

8    (Movant's Exhibit J, 2019 order in the Congoleum bankruptcy

9    case, was hereby received into evidence as of this date.)

10          MR. ESSERMAN:  Okay.  Exhibit K is a Waters & Kraus

11   2019.  It was filed in Congoleum.  We'll assume that it is --

12   although I'm not sure that it has proper foundation, we'll

13   assume that it was pulled from the Internet which I guess is a

14   great source but does have some indication that it was pulled

15   from the docket, or copied from the docket.  We'd have the same

16   objection to this Waters & Kraus 2019 that we have for the

17   order that was just entered in -- or order that was just

18   admitted for the limited purposes of the Congoleum 2019.  That

19   is, this is a law firm that filed a 2019 statement in response

20   to the Congoleum 2019 order which is what I think they proposed

21   to introduce it for.  We object to its relevance on 403 grounds

22   as not probative of anything in connection with their motion.

23   Whatever Your Honor wants to do with it.

24          THE COURT:  Mr. Worf?

25          MR. WORF:  Again.  Same purpose to show that the

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 153

1    information is not the kind that a court will protect.  I would

2    note that this is even more fulsome than the exhibits that were

3    filed in these twelve cases in addition to the claimants' name

4    four digits -- in addition to the claimants' name and claim

5    disease, there are also co-counsel relationships on this

6    statement and there are the last four digits of Social Security

7    numbers as well as what appears to be a home address.  So, if

8    anything, these are more fulsome than the ones that are filed

9    in these cases.  And this again, was filed on the electronic

10   docket as it says.

11            MR. ESSERMAN:  This was a whole different -- Congoleum

12   is a whole different facts and circumstances type of case as

13   we've discussed here many, many times and Your Honor can do

14   with it what she wants but we don't see the relevance to 2019

15   here.

16            THE COURT:  Well, it was clearly a different kind of

17   case.  And again, it's just -- it's an example of a 2019 filed

18   in response to a Court order that an order that it be filed.

19   So, to the extent that it's a lesser of two but the fact the

20   parties are complying with the Court orders is what they're

21   including, I don't see that that it is not admissible for that

22   purpose.  It's probative here, I guess, to the extent that it's

23   suggested -- at least one court hasn't found it necessary to

24   protect this type of information.  So, I'll admit it or that

25   purpose.

Page 154

1    (Movant's Exhibit K, 2019 statement filed in the Congoleum

2    case, was hereby received into evidence as of this date.)

3             MR. ESSERMAN:  In the context of that case?

4             THE COURT:  Well, obviously, it has to be admitted in

5    the context of the case.

6             MR. ESSERMAN:  Okay.  Exhibit L is a complaint, Puller

7    v. ACandS and others that was purport -- it's purported to be a

8    complaint.  It's not authenticated and we did make that

9    objection as well as improper foundation.  We don't think it's

10   relevant of similar to the other types of public complaints

11   that Garlock sought to introduce in connection with this

12   motion.  We don't think that this is particularly illustrative

13   of anything other than a complaint filed by an asbestos

14   creditor against a bunch of defendants in the City of

15   Baltimore.

16            THE COURT:  Mr. Worf?

17            MR. WORF:  This is a publicly filed complaint that

18   contains the claimants' name and claim disease and is

19   probative, again, of the fact that such information, the

20   information on these 2019 exhibits is not the kind that courts

21   protect asbestos claimants routinely when they participate in

22   litigation, disclose their identity that claim disease.

23            On the authentication point, I would note that first

24   of all it was a court filed document.  Second, the law firm

25   that filed this complain is one of the objectors here and has

1    not put forward any evidence showing that it's not what it says

2    it is.

3              MR. ESSERMAN:  It's further hearsay, Your Honor, but

4    it's represented to be a complaint.  It is what it is.  I'm not

5    sure it's probative of anything other than someone decided it'd

6    make an affirmative filing in a judicial proceeding.  This is

7    not a lawyer filing an agency certificate which a 2019

8    statement is.  So, I'm not sure it's relevant to any issue

9    before the Court.

10             THE COURT:  Well, I'm not either.  I think this is in

11   the same category as the Chapter 13 bankruptcy petition,

12   whatever that particular exhibit was, that somebody filing a

13   complaint in state court system does what the state court

14   system requires it to do.  And to the extent there's a name and

15   address on it, there's a name and address on it and I don't

16   think anybody's challenging the fact that there are pleadings

17   filed in various cases that contain names and addresses.  So, I

18   don't think it's a major issue one way or the other.

19             I don't think because -- that it is relevant to the

20   2019 issue because it's not filed in the same fashion and for

21   the same purpose.  But I don't think anybody's challenging the

22   underlying premise that in some instances people put their

23   names and addresses on the public record.  So, I'm not going to

24   admit Exhibit L.  The objection is sustained.  But the point

25   that it purports to represent has been made by counsel and I

1    accept that point.

2        MR. ESSERMAN:  Exhibit M is some interrogatory

3    responses in some Harris County litigation by a client of The

4    Lanier Law Firm and, frankly, I don't know the circumstances of

5    how Garlock came in contact with these responses because in

6    Texas under the state procedural laws and this is asserted to

7    be a state court document, discovery responses are not filed on

8    the public record.  They are not filed with the courts.

9    They're filed only between the attorneys unless somehow this

10   was -- this got filed in the public records.  But, if anything,

11   Texas rules specifically provide that no discovery is supposed

12   to be filed in a public record.  So, I don't know where they

13   got this.  I don't know -- I'm not sure what it is.  We have

14   the same 403 relevance objections that we had to the other

15   pleadings.  But this one is a little more accentuated because

16   of the public rules in Texas.

17        THE COURT:  Mr. Worf?

18        MR. WORF:  Yes.  And I have no knowledge about whether

19   this was filed or not.  This was in the possession of Garlock's

20   counsel and beyond that I don't know anything.  But it is --

21   there's no real dispute that it is interrogatory responses and

22   that it contains information about the plaintiffs name,

23   address, claims, condition and Social Security number.

24        THE COURT:  Well, if it's not filed, it's clearly not

25   probative of the fact that the information isn't protected

1    because the whole point that you're making, I think, is that it

2    shouldn't be protected because it's filed in the public record.

3    If it's not filed in the public record it's not something

4    that's been disclosed.  So, how you came about it and whether

5    it is properly authenticated is something that has to be

6    proven.  I can't take judicial notice of a document that

7    doesn't even appear in the filing.  And if you can't tell me

8    that it is then I -- there's nothing I can do with this one in

9    the current state.  So, the objection to the Exhibit M is

10   sustained.

11          MR. ESSERMAN:  Exhibit N is the voting procedures for

12   Pittsburgh Corning.  At least it's asserted --

13          MR. WORF:  And that's another one I don't believe we

14   offered.

15          MR. ESSERMAN:  Okay.  All right.

16          THE COURT:  O?

17          MR. ESSERMAN:  N was not offered.

18          THE COURT:  Yes.

19          MR. ESSERMAN:  Okay.  Was O offered?  That was --

20          MR. WORF:  Yes.

21          MR. ESSERMAN:  Okay.  O is the state -- 2019 statement

22   of the Motley Rice firm in the Quigley case.  We have the same

23   objection that we had to the other 2019 statements that were

24   filed in other cases.  This particular statement looks like

25   they did not put the addresses for most -- I don't know; maybe

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 158

1    they did, maybe they didn't but it's hard to read.  But

2    regardless, I'm not sure it's relevant in any way to the access

3    motion of Garlock in this case as to what Motley Rice did or

4    did not file in response to what order we don't know, and what

5    circumstances we don't know.  What the court required and

6    clearly I don't know.  So, I'm not sure it's probative of

7    anything.

8         MR. WORF:  This is yet another court that did not seal

9    this information and it has the claimants' name, what appears

10   to be a home address.

11        MR. ESSERMAN:  Are you making that representation or

12   do we know that?

13        MR. WORF:  Well, I'm not making that representation

14   but -- unless the Motley Rice firm as what appears to be

15   hundreds of different address, I would think that's the

16   claimants' address but I can't represent that.  It may say in

17   the exhibit which I have not read right now but -- and it has a

18   claimants' claimed disease and certain other information.  So,

19   again, it goes to the same point we've been making on several

20   occasions today.

21        THE COURT:  Okay.  Again, I think this is the

22   equivalent of someone filing a 2019 statement in connection

23   with an order.  The difference is in Congoleum I have the

24   order.  Here, I don't know what the order requires.  But

25   nonetheless if it's on the public record I take judicial notice

1    of the fact that it's on the public record and it says what it

2    says so I will admit Exhibit O for that purpose.

3    (Movant's Exhibit O, 2019 statement in the Quigley case, was

4    hereby received into evidence as of this date.)

5              MR. ESSERMAN:  Okay.  Exhibit P is -- did you offer

6    Exhibit P?

7              MR. WORF:  No.

8              MR. ESSERMAN:  Okay.  So, I won't comment.  How about

9    Q?

10             THE COURT:  I think -- I thought it was the end.

11             MR. ESSERMAN:  Am I done?

12             MR. WORF:  There's the order that was attached to our

13   reply brief and it's the order in the Accuride case.  This

14   might be more in the nature of unpublished authority than of

15   actual evidence.  But regardless of which one of those two is

16   the proper category, we do intend to use it.

17             THE COURT:  Well, Accuride is a different case.  These

18   are my asbestos creditors, were they?  These didn't have

19   diseases and name levels.  This is a whole different category

20   of claimants filed -- of not claimants but information that's

21   in the 2019 statement, isn't it?

22             MR. WORF:  That's right.  But it's -- we think it's

23   very illustrative, first of all, because it's 2019 statements

24   and they were originally sealed for some purpose and when the

25   Dow Jones came in and saw it accessed, they were permitted to

1    have access and the statements were unsealed and Dow Jones had

2    an interest in analyzing the statements to examine certain

3    trading behavior and they were allowed to do so in statements

4    probative and they were given access.  It shows that the right

5    applies to the statements and that a similar result should

6    occur here.

7              MR. ESSERMAN:  We don't think this is probative

8    evidence of their motion.

9              THE COURT:  It's not.  I think there is an opinion of

10   the Court which itself would be hearsay but nonetheless

11   explains why the Court has permitted the access to the

12   statements.  So, although the Court's opinion itself is hearsay

13   I think to the extent that there is any indication that there

14   is some authority by virtue of the cases that 2019 statements

15   can be disclosed under some circumstances, I don't have any

16   dispute with that proposition to start with.  The issue still

17   is whether these ought to be disclosed and under what

18   circumstances.  So, I don't see that Exhibit O is -- or I'm

19   sorry; this is B-2, I think, you called this?

20             MR. WORF:  Yes.

21             THE COURT:  Okay.  Exhibit B-2 I don't think is

22   probative and I'll sustain the objection to the exhibit.

23             MR. ESSERMAN:  And I may be mistaken but I think that

24   that's the last -- is that the last exhibit?

25             MR. WORF:  I believe so.  And again, we intended to

ACandS, INC. & MULTIPLE OTHER DEBTORS

Page 161

1   use this more in the nature of unpublished authority than as an

2   exhibit and we would still like to use it for that purpose.

3          THE COURT:  No.  I've not admitted this exhibit.  I

4   don't see it's probative, that it has any probative merit

5   whatsoever and it's clearly not relevant for a 2019 statement

6   that deals with asbestos parties revealing personal information

7   when this is a financial issue which is really what Rule 2019

8   was designed to have disclosed in the first place.  So, the big

9   problem with Rule 2019 in the asbestos context is as I've said

10  before, it doesn't fit very well.  It's there saying that

11  creditors' committees and entities have to file these

12  statements but it's really never been intended to apply in this

13  kind of context.  Section 524(g) and the other asbestos

14  provisions weren't even enacted at the time that Rule 2019 was

15  put in place.  So, it just doesn't fit on all fours.

16         I have ordered the parties to file the 2019 statements

17  for the reasons I've gone into and don't need to repeat now.

18  But I think some of the information that is included therein

19  really is private in the sense that 2019 really didn't intend

20  to have revealed.  The ballots?  Yes.  The 2019 statements?

21  No.  So, I don't see that this exhibit is probative.  It's not

22  an asbestos case.  It meets 2019 in a different fashion in an

23  issue that involves financial aspects of things and not disease

24  and estimations of disease claims in many different ways.  It's

25  not relevant.  The objection is sustained.

1        MR. ESSERMAN:  And since they are not seeking

2    admission of any other document, we rest, Your Honor.  Thank

3    you.

4        THE COURT:  Okay.  Is there anything other than my --

5    oh, I need to give you a chance to reply, Mr. Cassada.

6        MR. CASSADA:  Your Honor, I believe the Court's been

7    very patient and indulgent and we've taken enough of the

8    Court's time.  Mr. Esserman just closed.  Obviously, we've

9    offered all the evidence we're going to offer.  We would move

10   to close the record subject to our reservation of rights with

11   respect to the exhibits that were not admitted and urge the

12   Court to rule on the motions.

13       THE COURT:  All right.  Does anyone else have any

14   other argument or evidence that they're presenting?  Has

15   everybody who has made any presentation or filed any objection

16   rested to the extent that there is this evidentiary issue?  All

17   right.  I'm hearing nothing from anyone.  I take that as an

18   affirmative yes, everybody has rested.  If that's not correct,

19   speak now.  Okay.  Thank you.  I will take this matter under

20   advisement and get you some orders.  Thank you.

21       MR. ESSERMAN:  Thank you, Your Honor.

22       THE COURT:  We're moving to Judge Gross's courtroom on

23   the sixth floor.

24       THE CLERK:  I've been told that it's not ready.

25       THE COURT:  Not ready.  Okay.  We're going to start

1    SPHC and I believe we'll do it on the sixth floor so that we

2    eliminate this computer issue, hopefully.  Mr. Werkheiser?

3            MR. WERKHEISER:  Your Honor, I just wanted to ask on

4    behalf of the Garlock counsel if we've been excused from the

5    further hearing?

6            THE COURT:  Oh, yes.  Anybody's excused who's not

7    interested in SPHC matters because I think I've addressed

8    everything that was on file.  Thank you.

9            (Whereupon these proceedings were concluded at 2:52 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 164

1

2                        **I N D E X**

3

4                     **E X H I B I T S**

5

6    **MOVANT    DESCRIPTION                        JUDICIAL        EVID.**

                                                **NOTICE**

7    1         2019 statements filed by           115

8              certain firms

9    3         2019 statements filed by Kazan                     122

10             McClain, Brayton Purcell and

11             Waters & Kraus in the Plant

12             Insulation and Thorpe Insulation

13             Cases

14   10        Master ballot of a certain law                     140

15             firm in the Pittsburgh Corning

16             case

17   11        Collection of newspaper and                        142

18             other documents demonstrating

19             the public interest and concern

20             regarding asbestos claiming

21             practices implicated by this

22             motion

23

24

25

1

2                          I N D E X, cont'd

3

4                          E X H I B I T S

5

6    MOVANT      DESCRIPTION                        JUDICIAL      EVID.
                                                    NOTICE

7    B           Court order on the motion of the                 146

8                official committee of asbestos

9                personal injury claimants for

10               entry of a scheduling order of

11               bar date

12   C           2019 order for Pittsburgh                        147

13               Corning by Judge Fitzgerald

14   D           2019 statements filed in the       147

15               Pittsburgh Corning case

16   E           2019 statements filed in the       147

17               Pittsburgh Corning case

18   I           Order granting access to 2019      148

19               statements in the Owens Corning

20               case

21   J           2019 order in the Congoleum                      152

22               bankruptcy case

23   K           2019 statement filed in the                      154

24               Congoleum case

25

Page 166

1

2                    I N D E X, cont'd

3

4                    E X H I B I T S

5

6    MOVANT      DESCRIPTION                    JUDICIAL      EVID.
                                                NOTICE

7    O           A law firm's 2019 statement                  159

8                in the Quigley case

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8    _____

9    LISA BAR-LEIB (CET**D-486)

10   AAERT Certified Electronic Transcriber

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date: April 4, 2011

18

19

20

21

22

23

24

25