IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W. R. GRACE & CO., et al.[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 01-01139 (JKF)<br>) (Jointly Administered)<br>)<br>) Hearing Date: May 23, 2011 at 9:00 a.m.<br>) Objection Deadline: May 6, 2011 at 4:00 p.m. |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THEIR ENTRY INTO CONSENT ORDER WITH THE UNITED STATES REGARDING THE ZONOLITE ROAD SITE IN ATLANTA, DEKALB COUNTY, GEORGIA

The Debtors respectfully request entry of an order (substantially in the form attached hereto as Exhibit A (the "Order") authorizing their entry into an Administrative Settlement Agreement and Order on Consent for Removal Action ("Consent Order") with the United States of America (the "United States")resolving the United States' claims with respect to the Zonolite Road Site in Atlanta, DeKalb County, Georgia (the "Site") and providing for environmental remediation of the Site. The Site is an Additional Site within the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company (collectively, "Debtors" or "Grace.").

DOCS_DE:169310.1

Additional Site within the meaning of the *Settlement Agreement Resolving the United States' Proof of Claim Regarding Certain Environmental Matters* (the "Multi-Site Agreement"), entered by this Court by Order dated June 2, 2008 (Docket No. 18847). In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### BACKGROUND

3. The Site is comprised of approximately 16 acres in Atlanta, DeKalb County, Georgia. In 1950, Southern Zonolite Company built a vermiculite expansion plant at the Site. In 1957, Southern Zonolite Company merged with the Zonolite Company. In 1963, the assets of the Zonolite Company were acquired by Grace. Grace continued to operate the expansion plant at the Site until 1970. The Site was deeded to R.W. Sterrett in 1983. Since then, DeKalb County has assumed ownership of a large part of the original property while other entities own the other parts.

4. The eastern portion of the Site is occupied by the Atlanta Soto Zen Center. The Site is bordered by light-industrial and commercial businesses to the north and to the east. Peachtree Creek runs along the south and west sides of the Site. Residential communities are located to the south, west and north sides of the Site.

5. The United States Environmental Protection Agency (the "EPA") conducted a removal site evaluation at the Site in response to an initiative to investigate

2

DOCS_DE:169310.1

vermiculite facilities that received vermiculite ore from the Debtors' vermiculite mine in Libby, Montana. The EPA alleges that the Site received between 499 and 1,225 tons of vermiculite concentrate from the Debtors' vermiculite mine in Libby, Montana.

6.  In the spring of 2010, the EPA and EPA's Superfund Technical Assistance and Response Team (START) contractor conducted activity-based air sampling and bulk material sampling at the Site. On November 12, 2010, EPA and START conducted a site visit to determine the presence of vermiculite below the ground surface.

7.  The EPA alleges that the activity-based air sampling detected asbestos in the air above an elevated area on the Site. They alleged that the preliminary analytical results for the bulk sampling also reported low percentage levels of Libby amphibole asbestos in the same elevated area. The November 2010 site visit confirmed the presence of vermiculite in the elevated area at depths between six inches and twelve inches below the surface.

8.  On or about March 1, 2011, the EPA notified the Debtors, under the Additional Sites provision of the EPA Multi-Site Agreement, that they were making a claim against the Debtors with respect to environmental remediation response costs at the Site and any and all other claims, liabilities or obligations of the Debtors to the Settling Federal Agencies under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 & 607, and Section 7003 of RCRA, 42 U.S.C. § 6973 arising from any and all acts, omissions or conduct of the Debtors, including without limitation, any and all such claims, liabilities and obligations arising from: (a) prepetition generation, transportation, disposal or release of hazardous wastes or materials; or (b) prepetition ownership or operation of hazardous waste facilities.

9. Since receiving the March 1, 2011 notice, Grace and the EPA have cooperated in preparing an *Administrative Settlement Agreement and Order on Consent for Removal Action* (the "Consent Order", the form of which is attached as Exhibit I to the Order).

10. Grace and the United States now desire, without any admission of fact, law or liability, to proceed with a remedy for the environmental remediation of the Site and resolve the EPA's claims and demands relating to the Site as described in more detail below.

## THE CONSENT ORDER

11. The Consent Order specifically resolves: (a) the EPA's claims for the Site as an Additional Site under the Multi-Site Agreement; and (b) the demands for performance of or payment of costs associated with, the proposed Work as set forth in the Consent Order.

12. In particular, the Consent Order requires the Debtors to perform and manage remediation at the Site based on parameters defined in the Consent Order and the EPA's Action Memorandum attached as Appendix A to the Consent Order. The Consent Order and Action Memorandum call for, among other things, excavation and removal of asbestos-containing soils to native soil in the vicinity of the "plateau area" with disposal offsite at an approved facility.

13. EPA's cost estimate for EPA to perform the remedial actions at the Site is approximately $2.1 million. The Debtors' cost estimate for the same work is in the range of $1.0 to $1.5 million. Remediation and Site restoration will take approximately 8 to 10 weeks to complete.

14. With respect to the EPA's Past Response Costs, the Debtors agree under the Consent Order to pay $184,627.20 to the EPA for costs incurred through March 16, 2011. Consistent with the Multi-Site Agreement, the Debtors' obligation to pay the Past Response Costs is in the form of an allowed general unsecured claim against the Debtors' chapter 11 estates (the "<u>Allowed Past Response Cost Claim</u>"). The Allowed Past Response Cost Claim will be paid within 30 days after the effective date of the Plan of Reorganization[2] for the Debtors in the same manner as all other allowed general unsecured claims. Notwithstanding what the Plan of Reorganization may provide, however, interest on the Allowed Past Response Cost Claim will not accrue until 30 days after the Effective Date of the Consent Order, at which point, interest will accrue on the Allowed Past Response Cost Claim at the rate established by 26 U.S.C. § 9507.

15. Under the Consent Order, the Debtors also agree that they will pay EPA's Future Response Costs. These costs shall be payable within 30 days of the Debtors' receipt of each bill requiring payment or within 30 days of the effective date of the Plan of Reorganization, whichever is later.

16. In return for the obligations to be assumed by the Debtors under the Consent Order, the United States will provide the Debtors with a covenant not to sue for matters addressed under the Consent Order. Those matters include implementation of the Action Memorandum.

### RELIEF REQUESTED

17. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019: (a)

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Consent Order.

authorizing the Debtors' entry into the Consent Order permitting the Debtors to remediate the Site and compensate the EPA for its Past Response Costs and Future Response Costs related to the Site; (b) granting the Debtors authority to consummate the transactions contemplated in the Consent Order, including the use of the Debtors' estate property and resources necessary to undertake the performance of the work set forth in the Consent Order; and (c) granting such other relief as may be appropriate.

## ANALYSIS

### Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)

18. This Court has the statutory authority to authorize and approve the Debtors' entry into the Consent Order and the incurrence of costs and expenses contemplated therein, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

19. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

20. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the Debtors' sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated

business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

21. A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.

22. Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct 2, 2006).

23. Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See Martin, 91 F.3d at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must

assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

24. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.; see also, In re Nutraquest, Inc., 434 F.3d 639, 644-45 (3d Cir. 2006).

25. It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval of a Settlement to the Facts of This Case**

26. The Debtors have determined that entry into the Consent Order is in the best interests of the Debtors and their estates. The Consent Order was the process of a rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.

27. The Consent Order is in the best interests of the estate for a number of reasons. First, the Consent Order prevents the incurrence of significant transaction and litigation costs and cost-effectively resolves significant environmental liabilities of the

8

Debtors. Approving entry into the Consent Order will allow the Debtors to implement a removal action for a fraction of the estimated cost if EPA were to perform the remedy, will provide assurance to the creditors that environmental liabilities associated with the Site are fully addressed and permanently resolved and will resolve claims for Past Response Costs and Future Response Costs.

28. Second, the Consent Order is consistent with CERCLA's goals and benefits the public interest because the Consent Order will result in the implementation of a final clean-up remedy at the Site. Such approval benefits the public by assuring that the clean-up work will proceed.

29. Third, as discussed above, EPA designated the Site as an Additional Site pursuant to the Multi-Site Agreement, which permits the EPA to assert additional general unsecured claims against the Debtors for environmental remediation costs associated with the Site. Resolution of the EPA's claims on the terms and conditions set forth in the Consent Order is consistent with the treatment for Additional Sites outlined in the Multi-Site Agreement and resolves the Debtors' liability for Site remediation costs and other associated liabilities on terms and in amounts favorable to the Debtors.

30. Thus, for the reasons stated above, the proposed Consent Order is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances. In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the Consent Order.

## NO PREVIOUS MOTION

31. No previous motion for the relief sought herein has been made to this or any other court.

## NO BRIEFING SCHEDULE

32. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

## NOTICE

33. Notice of this Motion has been given to: (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the United States. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit A hereto, (1) approving the Debtors' execution of (i) the Consent Order attached as Exhibit I to the form of order;(2)

authorizing the Debtors to consummate the transaction contemplated in the Consent Order; and (3) granting such other relief as may be just or proper.

Dated: April ___, 2011

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer, P.C.
Roger J. Higgins, P.C.
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4022

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors-in-Possession