<u>**EXHIBIT A**</u>

**Form of Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Re docket no. _____ |
| | ) Hearing Agenda item no. _____ |

## ORDER AUTHORIZING DEBTORS' ENTRY INTO CONSENT ORDER WITH THE UNITED STATES REGARDING THE ZONOLITE ROAD SITE IN ATLANTA, DEKALB COUNTY, GEORGIA

Upon consideration of the *Motion of Debtors for Entry of an Order Authorizing Their Entry Into Consent Order with the United States Regarding the Zonolite Road Site in Atlanta, DeKalb County, Georgia* (the "Motion"); and due and proper notice of the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

Motion having been given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors,[2] their estates and creditors, it is hereby ORDERED that:

1.    The Motion is granted in its entirety.

2.    The Debtors are authorized to enter into the Consent Order, which is attached to this Order as Exhibit I.

3.    The Debtors are authorized to take all actions necessary to consummate the transactions contemplated in the Consent Order, including but not limited to the use of the Debtors' estate property and resources necessary to undertake the performance of the work set forth in the Consent Order.

4.    The EPAshall have an allowed unsecured claim for Past Response Costs in the amount of $184,627.20. The Allowed Past Response Cost Claim will be paid within 30 days after the effective date of the Plan of Reorganization for the Debtorsin the same manner as all other allowed general unsecured claims. Notwithstanding what the Plan of Reorganization may provide, however, Interest will not accrue on the Allowed Past Response Cost Claim until 30 days after the Effective Date of the Consent Order, at which point, Interest will accrue on the Allowed Past Response Cost Claimat the rate established by 26 U.S.C. § 9507.

5.    Grace is authorized to pay EPA's Future Response Costs. These costs shall be payable within 30 days of Grace's receipt of each bill requiring payment or within 30 days of the effective date of the Plan of Reorganization, whichever is later.

6.    The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order and the Consent Order.

---

[2]    Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Motion or the Consent Order.

7.    This Order shall be effective and enforceable immediately upon its entry and its provisions shall be self-executing and shall not be stayed, notwithstanding Fed. R. Bankr. P. 6004(h).

Dated: _____, 2011


_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

**EXHIBIT I**

# UNITED STATES
# ENVIRONMENTAL PROTECTION AGENCY
# REGION 4

| | |
|---|---|
| IN THE MATTER OF:<br>Zonolite Road Site,<br>Atlanta, Dekalb County, Georgia<br><br>W.R. Grace & Co.,<br>Respondent | ADMINISTRATIVE SETTLEMENT<br>AGREEMENT AND ORDER ON<br>CONSENT FOR REMOVAL ACTION<br><br>U.S. EPA Region 4<br>Docket No.  XXX-XXX-XXX<br><br>Proceeding Under Sections 104, 106(a), 107<br>and 122 of the Comprehensive<br>Environmental Response, Compensation,<br>and Liability Act, as amended, 42 U.S.C. §<br>9604, 9606(a), 9607 and 9622 |

I.  JURISDICTION AND GENERAL PROVISIONS.................................................... 1

II.  PARTIES BOUND............................................................................................. 1

III.  DEFINITIONS ................................................................................................. 2

IV.  FINDINGS OF FACT ....................................................................................... 4

V.  CONCLUSIONS OF LAW AND DETERMINATIONS ....................................... 5

VI.  ORDER ........................................................................................................... 5

VII.  DESIGNATION OF CONTRACTOR, PROJECT COORDINATOR, AND ON-
       SCENE COORDINATOR ................................................................................ 6

VIII.  WORK TO BE PERFORMED ......................................................................... 7

IX.  SITE ACCESS ................................................................................................. 11

X.  ACCESS TO INFORMATION ........................................................................... 12

XI.  RECORD RETENTION..................................................................................... 12

XII.  COMPLIANCE WITH OTHER LAWS .............................................................. 13

XIII. EMERGENCY RESPONSE AND NOTIFICATION RELEASES........................ 13

XIV.  AUTHORITY OF THE EPA ON-SCENE COORDINATOR .............................. 14

XV. PAYMENT OF RESPONSE COSTS ................................................................ 14

XVI. DISPUTE RESOLUTION ................................................................................ 16

XVII. FORCE MAJEURE ......................................................................................... 16

XVIII.  STIPULATED  PENALTIES .......................................................................... 17

XIX.  COVENANT NOT TO SUE BY EPA ............................................................... 19

i

XX. RESERVATIONS OF RIGHTS BY EPA .................................................................. 19

XXI. COVENANT NOT TO SUE BY RESPONDENT ...................................................... 20

XXII. OTHER CLAIMS ........................................................................................ 21

XXIII. CONTRIBUTION ........................................................................................ 22

XXIV. INDEMNIFICATION ................................................................................... 23

XXV. INSURANCE .............................................................................................. 23

XXVI. MODIFICATIONS ....................................................................................... 24

XXVII. ADDITIONAL REMOVAL ACTIONS .............................................................. 24

XXVIII. NOTICE OF COMPLETION OF WORK .......................................................... 25

XXIX. SEVERABILITY/INTEGRATION/APPENDICES ................................................. 25

XXX. EFFECTIVE DATE ...................................................................................... 25

Appendix A – Action Memorandum

Appendix B – Cost Summary

ii

## I.  JURISDICTION AND GENERAL PROVISIONS

1.  This Administrative Settlement Agreement and Order on Consent (Settlement Agreement) is entered into voluntarily by the United States Environmental Protection Agency (EPA), and W. R. Grace & Co., (Grace, or Respondent).  This Settlement Agreement provides for the performance of a removal action by Respondent and the reimbursement of response costs incurred by the United States in connection with the Zonolite Road Site, Atlanta, DeKalb County, Georgia (the Site).

2.  This Settlement Agreement is issued under the authority vested in the President of the United States by Sections 104, 106(a), 107, and 122 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9604, 9606(a), 9607, and 9622, as amended (CERCLA).

3.  EPA has notified the Georgia Environmental Protection Division (EPD) of this action pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a).

4.  EPA and Respondent recognize that this Settlement Agreement has been negotiated in good faith and that the actions undertaken by Respondent in accordance with this Settlement Agreement do not constitute an admission of any liability.  Respondent does not admit, and retains the right to controvert in any subsequent proceedings other than proceedings to implement or enforce this Settlement Agreement, the validity of the findings of facts, conclusions of law, and determinations of Section IV and V of this Settlement Agreement.  Respondent agrees to comply with and be bound by the terms of this Settlement Agreement and further agrees that it will not contest the basis or validity of this Settlement Agreement or its terms.

5.  Respondent Grace has filed for protection under Chapter 11 of the United Stated Bankruptcy code in the United Stated Bankruptcy Court for the District of Delaware (Bankruptcy Court), In re W.R. Grace & Co., et al., No. 01-01139 (JKF).  In connection with its reorganization, Grace has entered into a Multi-Site Settlement Agreement with EPA.  The Zonolite Road Site is an "Additional Site" under that Agreement, and, following completion of the Work required by this Order, and any Additional Removal Actions required under Paragraph 87, this Site will be a "Liquidated Site" and subject to the terms and conditions pursuant to the Multi-Site Agreement.

## II.  PARTIES BOUND

6.  This Settlement Agreement applies to and is binding upon EPA, and upon Respondent and Respondent's successors and assigns.  Any change in ownership or corporate status of Respondent including, but not limited to, any transfer of assets or real or personal property shall not alter Respondent's responsibilities under this Settlement Agreement.

1

7. Respondent shall ensure that its contractors, subcontractors, and representatives receive a copy of this Settlement Agreement and comply with this Settlement Agreement. Respondent shall be responsible for any noncompliance with this Settlement Agreement.

## III. DEFINITIONS

8. Unless noted to the contrary, the terms of this Settlement Agreement shall have the meaning assigned to those terms pursuant to CERCLA or any regulation promulgated under CERCLA. Whenever the terms listed below are used in this Settlement Agreement and Appendices attached hereto, the following definitions shall apply:

    a. "Action Memorandum" shall mean the EPA Action Memorandum relating to the Site signed on 4/8/2011, by the Regional Administrator, EPA Region 4, or her delegate, and all attachments thereto. The "Action Memorandum" is attached as Appendix A.

    b. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

    c. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et. seq.

    d. "Day" shall mean a calendar day. In computing any period of time under this Settlement Agreement, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the end of the next working day.

    e. "Effective Date" shall be the effective date of this Settlement Agreement as provided in Section XXX.

    f. "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

    g. "EPD" shall mean the Georgia Environmental Protection Division of the Department of Natural Resources.

    h. "Future Response Costs" shall mean all costs, direct and indirect costs, that the United States incurs in connection with the Site not included in the Cost Summary dated March 16, 2011, attached hereto as Appendix B.

    i. "Hazardous Substance" shall mean any substance meeting the definition provided in Section 101 (14) of CERCLA, 42 U.S.C. § 9601(14).

    j. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest

2

shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

k.  "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including any amendments thereto.

l.  "Paragraph" shall mean a portion of this Settlement Agreement identified by an Arabic numeral.

m.  "Parties" shall mean EPA and Respondent.

n.  "Past Response Costs" shall mean all costs, including but not limited to direct and indirect costs, included in the Cost Summary (Appendix B).  Interest on past costs shall begin to accrue thirty (30) days after the Effective Date.

o.  "Plan of Reorganization" shall mean any plan of reorganization under Chapter 11 of the United States Bankruptcy Code that is confirmed and becomes effective in the Grace bankruptcy case.

p.  "Respondent" shall mean W.R. Grace & Co.

q.  "Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Settlement Agreement, verifying the Work, or otherwise implementing, overseeing, or enforcing this Settlement Agreement, including but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 34 (costs and attorneys fees and any monies paid to secure access, including the amount of just compensation).  "Response Costs" shall also include all costs, including but not limited to direct and indirect costs that the United States paid or incurred at or in connection with the Site through the effective date of this Settlement Agreement, plus interest if applicable.

r.  "Section" shall mean a portion of this Settlement Agreement identified by a roman numeral.

s.  "Settlement Agreement" shall mean this Administrative Settlement Agreement and Order on Consent and all appendices attached hereto (listed in Section XXIX).  In the event of conflict between this Settlement Agreement and any appendix, this Settlement Agreement shall control.

t.  "Site" shall mean the site of the former vermiculite expansion facility on Zonolite Road, in Atlanta, DeKalb County, Georgia.  Notwithstanding the Site boundaries, the Site includes the areal extent of hazardous substances contamination, and all areas in close proximity to the contamination that are necessary for implementation of the Work.

3

u.  "State" shall mean the State of Georgia as represented by GA EPD.

v.  "Waste Material" shall mean: 1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); 2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); and 3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

w.  "Work" shall mean all activities Respondent is required to perform under this Settlement Agreement.

## IV. FINDINGS OF FACT

For the purposes of this Settlement Agreement, EPA finds that:

9. The Site is comprised of approximately 16 acres in Atlanta, DeKalb County, Georgia.

10. The eastern portion of the Site is occupied by the Atlanta Soto Zen Center. The Site is bordered by light-industrial and commercial businesses to the north and to the east. Peachtree Creek runs along the south and west sides of the Site. Residential communities are located to the south, west and north sides of the Site.

11. In 1950, Southern Zonolite Company built the former vermiculite expansion plant at the Site. In 1957, Southern Zonolite Company merged with the Zonolite Company. In 1963, the assets of the Zonolite Company were acquired by W.R. Grace. W.R. Grace continued to operate the expansion plant at the Site until 1970. According to W.R. Grace, the parcel was deeded to R.W. Sterrett in 1983. Since then, DeKalb County has assumed ownership of a large part of the original property while other entities own the other parts.

12. The EPA conducted a removal site evaluation at the Site in response to an initiative to investigate vermiculite facilities that received vermiculite ore from the W.R. Grace vermiculite mine in Libby, Montana. The Site received between 499 and 1,225 tons of vermiculite concentrate from the W.R. Grace vermiculite mine in Libby, Montana.

13. In the spring of 2010, EPA and EPA's Superfund Technical Assistance and Response Team (START) contractor conducted activity-based air sampling and bulk material sampling at the Site. On November 12, 2010, EPA and START conducted a site visit to determine the presence of vermiculite below the ground surface.

14. The activity-based air sampling detected asbestos in the air above an elevated area on the Site. The preliminary analytical results for the bulk sampling also reported low percentage levels of Libby amphibole asbestos in the same elevated area. The November site visit confirmed the presence of vermiculite in the elevated area at depths between six inches and twelve inches below the surface.

4

15. The levels of asbestos detected in the soil and in the air at the Site, if not addressed by implementation of the Work pursuant to this Settlement Agreement, may pose an imminent and substantial threat to the users of the Site (see Action Memorandum, Appendix A).

## V.  CONCLUSIONS OF LAW AND DETERMINATIONS

16. Based on the Findings of Fact set forth above, and the Administrative Record supporting this removal action, EPA has determined that:

   a.  The Site is a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

   b.  The contamination found at the Site, as identified in the Findings of Fact above, include "hazardous substance(s)" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

   c.  Respondent is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

   d.  Respondent is a responsible party under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  Respondent, W.R. Grace and Co., was the "owner" and "operator" of the Site at the time of disposal of hazardous substances at the Site, as defined by Section 101(20) of CERCLA, 42 U.S.C. § 9601(20), and within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

   e.  The conditions described in the Findings of Fact above constitute an actual or threatened "release" of a hazardous substance from the Site as defined by Sections 101(22) of CERCLA, 42 U.S.C. § 9601(22).

   f.  The removal actions required by this Settlement Agreement are necessary to protect the public health, welfare, or the environment, and if carried out in compliance with the terms of this Settlement Agreement, will be considered consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

## VI.  ORDER

17. Based upon the foregoing Findings of Fact, Conclusions of Law and Determinations, and the Administrative Record for this Site, it is hereby ordered and agreed that Respondent shall comply with the following provisions, including but not limited to all attachments to this Settlement Agreement, and all documents incorporated by reference into this Settlement Agreement.

## VII.  DESIGNATION OF CONTRACTOR, PROJECT COORDINATOR, AND ON-SCENE COORDINATOR

18.  Respondent shall retain one or more contractors to perform the Work and shall notify EPA of the name(s) and qualifications of such contractor(s) within fourteen (14) days of the Effective Date.  Respondent shall also notify EPA of the name(s) and qualification(s) of any other contractor(s) or subcontractor(s) retained to perform the Work at least fourteen (14) days prior to commencement of such Work.  EPA retains the right to disapprove of any or all of the contractors and/or subcontractors retained by Respondent.  If EPA disapproves of a selected contractor, Respondent shall retain a different contractor and shall notify EPA of that contractor's name and qualifications within fourteen (14) days of EPA's disapproval.  The proposed contractor must demonstrate compliance with ANSI/ASQC E-4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B0-1/002), or equivalent documentation as required by EPA.

19.  Within fourteen (14) days after the Effective Date, Respondent shall designate a Project Coordinator who shall be responsible for administration of all actions by Respondent required by this Settlement Agreement and shall submit to EPA the designated Project Coordinator's name, address, telephone number, and qualifications.  To the greatest extent possible, the Project Coordinator shall be present on Site or readily available during Site work.  EPA retains the right to disapprove of the designated Project Coordinator.  If EPA disapproves of the designated Project Coordinator, Respondent shall retain a different Project Coordinator and shall notify EPA of that person's name, address, telephone number, and qualifications within fourteen (14) days following EPA's disapproval.  Receipt by Respondent's Project Coordinator of any notice or communication from EPA relating to this Settlement Agreement shall constitute receipt by Respondent.

20.  EPA has designated Terry Stilman of the EPA Region 4 Emergency Response and Removal Branch as its On-Scene Coordinator (OSC).  Except as otherwise provided in this Settlement Agreement, Respondent shall direct all submissions required by this Settlement Agreement to the OSC at 61 Forsyth St., S.W., Atlanta, Georgia 30303.

21.  EPA and Respondent shall have the right, subject to the immediately preceding paragraphs, to change their designated OSC or Project Coordinator.  Respondent shall notify EPA, fourteen (14) days before such a change is made.  The initial notification may be orally made but it shall be promptly followed by a written notice.

6

## VIII.  WORK TO BE PERFORMED

22.  Respondent shall perform, at a minimum, all actions necessary to implement the Action Memorandum.  The actions to be implemented generally include but are not limited to, the following:

    a.  Coordinate with OSC to assess layout of Site and determine required Site activities, equipment, personnel and logistics and develop a Plateau Removal Action Workplan that details plans for the excavation.

    b.  Excavate and remove areas of asbestos contaminated soils in the plateau area (elevated waste pile, approximately 175 feet by 250 feet) to native soil with confirmatory sampling.

    c.  Backfill excavated areas with clean fill material, if necessary.  In areas where asbestos is present at depths greater than two feet below the natural grade, place an appropriate warning barrier and cover such areas with clean soil to prevent direct contact with contaminated soils.

    d.  Dispose of contaminated soils at an approved facility.

    e.  Suppress dust and control erosion during the removal action.

    f.  Monitor and sample as necessary personal and ambient air during the removal activities.

23.  Respondent shall restore disturbed areas in a manner that prevents flooding of adjacent properties and is consistent with future land-use.  Restoration shall be coordinated with the landowner.  Upon EPA's approval for the Work Plan, Respondent shall implement the Work Plan in accordance with the schedule of activities provided therein.  Soil used for backfill shall be sampled to screen for hazardous substance contamination.  A vegetative cover shall be installed to prevent the erosion of the soil backfill where appropriate.  During the response action, Respondent shall erect warning signs and fencing to prevent access to contaminated areas.

24.  Work Plan and Implementation

    a.  Within thirty (30) days after the Effective Date, Respondent shall submit to EPA for approval a draft Work Plan for performing the removal action generally described in Paragraph 22 above.  The draft Work Plan shall provide a description of, and an expeditious schedule for, the actions required by this Settlement Agreement.  A Quality Assurance Project Plan (QAPP) will be prepared for this site.  The QAPP will be prepared in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R-5)" (EPA/240/B-01/003, March 2001), and "EPA Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002).

b. EPA may approve, disapprove, require revisions to, or modify the draft Work Plan in whole or in part. If EPA requires revisions, Respondent shall submit a revised draft Work Plan within twenty (20) days of receipt of EPA's notification of the required revisions. Respondent shall implement the Work Plan as approved in writing by EPA in accordance with the schedule approved by EPA. Once approved, or approved with modifications, the Work Plan, the schedule, and any subsequent modifications shall be incorporated into and become fully enforceable under this Settlement Agreement.

c. Respondent shall not commence any Work except in conformance with the terms of this Settlement Agreement. Respondent shall not commence implementation of the Work Plan developed hereunder until receiving written EPA approval pursuant to Paragraph 24(b).

25. Health and Safety Plan. Respondent shall submit for EPA review and comment a plan that ensures the protection of the public health and safety during performance of on-Site work under this Settlement Agreement in accordance with the schedule in the Work Plan. This plan shall be prepared in accordance with EPA's Standard Operating Safety Guide (PUB 9285.1-03, PB 92-963414, June 1992). In addition, the plan shall comply with all currently applicable Occupational Safety and Health Administration (OSHA) regulations found at 29 C.F.R. Part 1910. If EPA determines that it is appropriate, the plan shall also include contingency planning. Respondent shall incorporate all changes to the plan recommended by EPA and shall implement the plan during the pendency of the removal action.

26. Quality Assurance and Sampling

a. All sampling and analyses performed pursuant to this Settlement Agreement shall conform to EPA direction, approval, and guidance regarding sampling, quality assurance/quality control (QA/QC), data validation, and chain of custody procedures. Respondent shall ensure that the laboratory used to perform the analyses participates in a QA/QC program that complies with the appropriate EPA guidance. Respondent shall follow, as appropriate, "Quality Assurance/Quality Control Guidance for Removal Activities: Sampling QA/QC Plan and Data Validation Procedures" (OSWER Directive No. 9360.4-01, April 1, 1990), as guidance for QA/QC and sampling. In addition, the plan shall comply with all currently applicable Quality System that complies with ANSI/ASQC E-4 1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), "EPA Requirements for Quality Management Plans (QA/R-2) (EPA/240/B-01/002, March 2001)," and the U.S. EPA Region 4 Standard Operating Procedures and Quality Assurance Manual (May 1996), or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.

8

b. Upon request by EPA, Respondent shall have such a laboratory analyze samples submitted by EPA for QA monitoring. Respondent shall provide to EPA the QA/QC procedures followed by all sampling teams and laboratories performing data collection and/or analysis.

c. Upon request by EPA, Respondent shall allow EPA or its authorized representatives to take split and/or duplicate samples. Respondent shall notify EPA not less than ten (10) days in advance of any sample collection activity, unless shorter notice is agreed to by EPA. EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow Respondent to take split or duplicate samples of any samples it takes as part of its oversight of Respondent's implementation of the Work.

27. Post-Removal Site Control. In accordance with the Work Plan schedule, or as otherwise directed by EPA, Respondent shall, in cooperation with the Owner, submit a proposal for post-removal Site control consistent with Section 300.415(k) of the National Contingency Plan (NCP) and OSWER Directive 9360.2-02. Upon EPA approval, Respondent shall implement such controls and shall provide EPA with documentation of all post-removal Site control arrangements.

28. Reporting

a. Respondent shall submit a written progress report to EPA concerning actions undertaken pursuant to this Settlement Agreement every two (2) weeks after the date of receipt of EPA's approval of the Work Plan until termination of this Settlement Agreement, unless otherwise directed by the OSC in writing. These reports shall describe all significant developments during the preceding period, including the actions performed and any problems encountered, analytical data received during the reporting period, and the developments anticipated during the next reporting period, including a schedule of actions to be performed, anticipated problems, and planned resolutions of past or anticipated problems.

b. Respondent shall submit all plans, reports or other submissions required by this Settlement Agreement, or any approved work plan in electronic format. Upon request by EPA, Respondent shall submit paper copies.

29. Final Report. Within sixty (60) days after completion of all removal actions required under this Settlement Agreement, the Respondent shall submit for EPA review and approval a final report summarizing the actions taken to comply with this Settlement Agreement. The final report shall conform, at a minimum, with the requirements set forth in Section 300.165 of the NCP entitled "OSC Reports". The final report shall include a good faith estimate of total costs or a statement of actual costs incurred in complying with the Settlement Agreement, a listing of quantities and types of materials removed off-Site or handled on-Site, a discussion of removal and disposal options considered for those materials, a listing of the ultimate destination of those materials, a presentation of the analytical results of all sampling and analyses performed, and

9

accompanying appendices containing all relevant documentation generated during the removal action (e.g., manifests, invoices, bills, contracts, and permits). The final report shall also include the following certification signed by a person who supervised or directed the preparation of that report:

> Under penalty of law, I certify that to the best of my knowledge, after appropriate inquiries of all relevant persons involved in the preparation of the report, the information submitted is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

30. Off-Site Shipments

a. Respondent shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification of such shipment of Waste Material to the appropriate state environmental official in the receiving facility's state and to the OSC. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

i. Respondent shall include in the written notification the following information: 1) the name and location of the facility to which the Waste Material is to be shipped; 2) the type and quantity of the Waste Material to be shipped; 3) the expected schedule for the shipment of the Waste Material; and 4) the method of transportation. Respondent shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

ii. The identity of the receiving facility and state will be determined by Respondent following the award of the contract for the removal action. Respondent shall provide the information required by Paragraph 30(a) and 30(b) as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b. Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-Site location, Respondent shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3), 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440. Respondent shall only send hazardous substances, pollutants, or contaminants from the Site to an off-Site facility that complies with the requirements of the statutory provision and regulation cited in the preceding sentence.

## IX.  SITE ACCESS

31.  Where any action under this Settlement Agreement is to be performed in areas owned by or in possession of someone other than Respondent, Respondent shall use its best efforts to obtain all necessary access agreements within thirty (30) days after the Effective Date, or as otherwise specified in writing by the OSC.  Respondent shall immediately notify EPA if after using its best efforts it is unable to obtain such agreements.

32.  If the EPA determines that to implement this Settlement Agreement, land and/or water use restrictions are needed on property owned or controlled by persons other than Respondent, Respondent shall use best efforts to secure from such persons an agreement, enforceable by Respondent, EPA, and EPD, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the removal measures to be performed pursuant to this Settlement Agreement.

33.  If directed by EPA, Respondent in cooperation with Owner, shall execute and record the easement, or land/water use restrictions in the DeKalb County land records office, as an easement, running with the land, that grants the right to enforce the land/ water use restrictions, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the removal measures to be performed pursuant to this Settlement Agreement.  The rights to enforce land/water use restrictions shall be granted to (i) EPA, and its representatives, (ii) the State and its representatives, and/or (iii) other appropriate grantees.

34.  If any access or land/water use restriction agreements are not obtained within 45 days of the date of EPA's request for such a restriction, Respondent shall promptly notify EPA in writing, and shall include in that notification a summary of the steps that Respondent has taken to attempt to comply with this Settlement Agreement.  EPA may, as it deems appropriate, assist Respondent in obtaining land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Respondent shall reimburse EPA in accordance with the procedures in Section XV (Payment of Response Costs), for all costs incurred, direct or indirect, by EPA in obtaining such land/water use restrictions including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

35.  Notwithstanding any provision of this Settlement Agreement, EPA retains all of its access authorities and rights, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

11

## X.  ACCESS TO INFORMATION

36.  Respondent shall provide to EPA and EPD, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Settlement Agreement, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Respondent shall also make available to EPA and EPD, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

37.  Respondent may assert business confidentiality claims covering part or all of the documents or information submitted to EPA and EPD under this Settlement Agreement to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, and EPD, or if EPA has notified Respondent that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Respondent.

38.  Respondent may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Respondent asserts such a privilege in lieu of providing documents, it shall provide EPA and EPD with the following:  1) the title of the document, record, or information; 2) the date of the document, record, or information; 3) the name and title of the author of the document, record, or information; 4) the name and title of each addressee and recipient; 5) a description of the contents of the document, record, or information; and 6) the privilege asserted by Respondent.  However, no documents, reports or other information created or generated as required by this Settlement Agreement shall be withheld on the grounds that they are privileged.

39.  No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XI.  RECORD RETENTION

40.  Until 10 years after Respondent's receipt of EPA's notification pursuant to Section XXVIII (Notice of Completion of Work), Respondent shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work or the liability of any person under CERCLA with respect to the Site,

12

regardless of any corporate retention policy to the contrary. Until 10 years after Respondent's receipt of EPA's notification pursuant to Section XXVIII (Notice of Completion of Work), Respondent shall also instruct its contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to performance of the Work.

41. At the conclusion of this document retention period, Respondent shall notify EPA, and EPD, at least 90 days prior to the destruction of any such records or documents, and, upon request by EPA, or EPD, Respondent shall deliver any such records or documents to EPA or EPD. Respondent may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Respondent asserts such a privilege, it shall provide EPA or EPD with the following: 1) the title of the document, record, or information; 2) the date of the document, record, or information; 3) the name and title of the author of the document, record, or information; 4) the name and title of each addressee and recipient; 5) a description of the subject of the document, record, or information; and 6) the privilege asserted by Respondent. However, no documents, reports or other information created or generated as required by this Settlement Agreement shall be withheld on the grounds that they are privileged.

42. Respondent hereby certifies individually that to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by EPA or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XII.  COMPLIANCE WITH OTHER LAWS

43. Respondent shall perform all actions required pursuant to this Settlement Agreement in accordance with all applicable local, state, and federal laws and regulations except as provided in Section 121(e) of CERCLA, 42 U.S.C. § 6921(e), and 40 C.F.R. §§ 300.400(e) and 300.415(j). In accordance with 40 C.F.R. § 300.415(j), all on-Site actions required pursuant to this Settlement Agreement shall, to the extent practicable, as determined by EPA, considering the exigencies of the situation, attain applicable or relevant and appropriate requirements (ARARs) under federal environmental or state environmental or facility siting laws. Respondent shall identify ARARs in the Work Plan subject to EPA approval.

## XIII. EMERGENCY RESPONSE AND NOTIFICATION RELEASES

44. In the event of any action or occurrence during performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Respondent shall

13

immediately take all appropriate action. Respondent shall take these actions in accordance with all applicable provisions of this Settlement Agreement, including, but not limited to, the Health and Safety Plan, in order to prevent, abate or minimize such release or endangerment caused or threatened by the release. Respondent shall also immediately notify the OSC at 404-562-8796 or, in the event of his/her unavailability, shall notify the Regional Duty Officer, Emergency Response and Removal Branch, EPA Region 4 at 404-562-8700 of the incident or Site conditions. In the event that Respondent fails to take appropriate response action as required by this Paragraph, and EPA takes such action instead, Respondent shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XV (Payment of Response Costs).

45. In addition, in the event of any release of a hazardous substance from the Site, Respondent shall immediately notify the OSC at 404-562-8796 and the National Response Center at (800) 424-8802. Respondent shall submit a written report to EPA within 7 days after each release, setting forth the events that occurred and the measures taken or to be taken to mitigate any release or endangerment caused or threatened by the release and to prevent the reoccurrence of such a release. This reporting requirement is in addition to, and not in lieu of, reporting under Section 103(c) of CERCLA, 42 U.S.C. § 9603(c), and Section 304 of the Emergency Planning and Community Right-To-Know Act of 1986, 42 U.S.C. § 11004, et seq.

## XIV.  AUTHORITY OF THE EPA ON-SCENE COORDINATOR

46. The OSC shall be responsible for overseeing the Respondent's implementation of this Settlement Agreement. The OSC shall have the authority vested in an OSC by the NCP, including the authority to halt, conduct, or direct any Work required by this Settlement Agreement, or to direct any other removal action undertaken at the Site. Absence of the OSC from the Site shall not be cause for stoppage of work unless specifically directed by the OSC.

## XV.  PAYMENT OF RESPONSE COSTS

47. Payments for Response Costs

a. Respondent shall pay EPA Response Costs not inconsistent with the NCP. On a periodic basis, EPA will send Respondent a bill requiring payment that includes a cost summary. Respondent shall make all payments within 30 days of receipt of each bill requiring payment, except as otherwise provided in Paragraph 48 or Section XVI of this Settlement Agreement.

b. Respondent shall make all payments required by this Paragraph by check(s) made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making payment and EPA Site/Spill Number B407 Respondent shall send the check(s) to:

14

US Environmental Protection Agency
Superfund Payments-Region 4
Cincinnati Finance Center
P.O. Box 979076
St. Louis, MO 63197-9000

c. At the time of payment, Respondent shall send notice that payment has been made to Terry Stilman and Ms. Paula Painter, U.S. EPA Region 4, 61 Forsyth St., S.W., Atlanta, GA 30303.

d. The total amount to be paid by Respondent pursuant to Paragraph 47(a) shall be deposited in the EPA Hazardous Substance Superfund.

48. Subject to paragraph 91, in the event that the payment for Response Costs is not made within thirty (30) days after the effective date of the Plan of Reorganization, (as defined in the Plan of Reorganization) or the payment of Future Response Costs is not made within thirty (30) days of Respondent's receipt of a bill, Respondent shall pay Interest on the unpaid balance. The Interest on Past Response Costs shall begin to accrue thirty (30) days after the Effective Date, and shall continue to accrue until the date of payment. The interest on Future Response Costs shall begin to accrue thirty (30) days after the date of the bill, and shall continue to accrue until the date of payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Respondent's failure to make timely payments under this Section, including but not limited to, payment of stipulated penalties pursuant to Section XVIII.

49. Respondent may dispute all or part of a bill for Response Costs submitted under this Settlement Agreement, if Respondent alleges that EPA has made an accounting error, or if Respondent alleges that a cost item is inconsistent with the NCP. If any dispute over costs is resolved before payment is due, the amount due will be adjusted as necessary. If the dispute is not resolved before payment is due, Respondent shall pay the full amount of the uncontested costs to EPA as specified in Paragraph 47 on or before the due date. Within the same time period, Respondent shall pay the full amount of the contested costs into an interest-bearing escrow account. Respondent shall simultaneously transmit a copy of both checks to the persons listed in Paragraph 47(c) above. Respondent shall ensure that the prevailing party or parties in the dispute shall receive the amount upon which they prevailed from the escrow funds plus interest within ten (10) days after the dispute is resolved.

50. Effective upon the execution of this Agreement by a Settling Party, such Settling Party agrees that the time period after the date of its execution shall not be included in computing the running of any statute of limitations potentially applicable to any action brought by the United States related to the "matters addressed" as defined in Paragraph 76 of this Agreement, and that,

15

in any action brought by the United States related to the "matters addressed" as defined in Paragraph 76 of this Agreement, the Settling Party will not assert, and may not maintain, any defense or claim based upon principles of statute of limitations, waiver, laches, estoppel, or other defense based on the passage of time after its execution of this Agreement. If EPA gives notice to a Settling Party that it will not make this Agreement effective, the statute of limitations shall begin to run again commencing ninety days after the date such notice is sent by EPA.

## XVI. DISPUTE RESOLUTION

51. Unless otherwise expressly provided for in this Settlement Agreement, the dispute resolution procedures of this Section shall be the exclusive mechanism for resolving disputes arising under this Settlement Agreement. The Parties shall attempt to resolve any disagreements concerning this Settlement Agreement expeditiously and informally.

52. If Respondent objects to any EPA action taken pursuant to this Settlement Agreement, including billings for Response Costs, it shall notify EPA in writing of the objection within ten (10) days of such action, unless the objection has been resolved informally. EPA and Respondent shall have ten (10) days from EPA's receipt of Respondent's written objection to resolve the dispute through formal negotiations (the Negotiation Period). The Negotiation Period may be extended at the sole discretion of EPA.

53. Any agreement reached by the parties pursuant to this Section shall be in writing and shall, upon signature by both parties, be incorporated into and become an enforceable part of this Settlement Agreement. If the Parties are unable to reach an agreement within the Negotiation Period, the EPA Superfund Division Director will issue a written decision on the dispute to Respondent. EPA's decision shall be incorporated into and become an enforceable part of this Settlement Agreement. Respondent's obligations under this Settlement Agreement shall not be tolled by submission of any objection for dispute resolution under this Section. Following resolution of the dispute, as provided by this Section, Respondent shall fulfill the requirement that was the subject of the dispute in accordance with the agreement reached or with EPA's decision, whichever occurs.

## XVII. FORCE MAJEURE

54. Respondent agrees to perform all requirements of this Settlement Agreement within the time limits established under this Settlement Agreement, unless the performance is delayed by a force majeure. For purposes of this Settlement Agreement, a force majeure is defined as any event arising from causes beyond the control of Respondent, or of any entity controlled by Respondent, including but not limited to its contractors and subcontractors, which delays or prevents performance of any obligation under this Settlement Agreement despite Respondent's best efforts to fulfill the obligation. Force majeure does not include financial inability to complete the Work,

16

or increased cost of performance, or a failure to attain performance standards/action levels set forth in the Action Memorandum.

55. If any event occurs or has occurred that may delay the performance of any obligation under this Settlement Agreement, whether or not caused by a force majeure event, Respondent shall notify EPA orally within forty-eight (48) hours of when Respondent first knew that the event might cause a delay. Within five (5) days thereafter, Respondent shall provide to EPA in writing an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Respondent's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Respondent, such event may cause or contribute to an endangerment to public health, welfare or the environment. Failure to comply with the above requirements shall preclude Respondent from asserting any claim of force majeure for that event for the period of time of such failure to comply and for any additional delay caused by such failure.

56. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Settlement Agreement that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Respondent in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify Respondent in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

## XVIII.  STIPULATED PENALTIES

57. Respondent shall be liable to EPA for stipulated penalties in the amounts set forth in Paragraph 58 for failure to comply with the requirements of this Settlement Agreement specified below, unless excused under Section XVII (Force Majeure). "Compliance" by Respondent shall include completion of the activities under this Settlement Agreement or any work plan or other plan approved under this Settlement Agreement identified below in accordance with all applicable requirements of law, this Settlement Agreement, and any plans or other documents approved by EPA pursuant to this Settlement Agreement and within the specified time schedules established by and approved under this Settlement Agreement.

58. Stipulated Penalty Amounts. For each day, or portion thereof, that Respondent fails to perform, fully, any requirement of this Settlement Agreement in accordance with the schedule established pursuant to this Settlement Agreement after receipt of written notice from EPA of such non-compliance, Respondent shall be liable as follows:

17