# Exhibit B

## Matter 88 - Acton Site OU3

During this Twenty-third Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Grace Acton Site. On September 30, 2005, the federal Environmental Protection Agency issued the Record of Decision, or ROD, for the cleanup of the so-called Operable Unit 3 (OU-3) at the Site. The ROD identified a remedy for the Site, which EPA will expect the Debtor to implement pursuant to the terms of a consent decree entered into between the Debtor and the United States in 1980.

Although the ROD states the general outline of the remedy, substantial work is required to determine what flexibility the Debtor may have in implementing the remedy. The next step in this process was the issuance by EPA of a scope of work (SOW), to be performed by the Debtor, to implement the remedy described in the ROD. Following issuance of the SOW, and during the Twenty-third Application Period, the Firm worked with the Debtor on issues related to plans for the cleanup of groundwater at the Site, including review of the landfill Area Groundwater Design report. The Firm also assisted with the development of the plan for institutional controls at the Site.

This work is complex and requires an in-depth knowledge of the history of the Debtor's cleanup of the Grace Acton Site, the terms of the 1980 Consent Decree, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the 1980 Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $650.00 | 7.5 | $ 4,875.00 |
| TOTAL | | | | 7.5 | $ 4,875.00 |

## Matter 93 - Concord Landfill Closure

During this Twenty-third Application Period, the Firm assisted the Debtor in matters related to the cleanup of certain land owned by the Debtor in Concord, Massachusetts. The land abuts the property in Acton, Massachusetts, that is a federal Superfund site known as the Grace Acton Site. However, the Concord property is not being cleaned up as part of the Superfund Site. Instead, it is being cleaned up pursuant to Mass. G.L. ch. 21E and its implementing regulations, the Massachusetts Contingency Plan (MCP). The MCP prescribes a detailed pathway that must be followed to achieve cleanup of contaminated sites. During the Twenty-third Application Period, the Firm advised the Debtor with respect to the final closure documentation and related obligations associated with the potential transfer of land subject to closure requirements

The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to ensuring that the cleanup

complies with applicable regulations and can be completed in a timely and cost-effective manner.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $650.00 | 1.6 | $ 1,040.00 |
| TOTAL | | | | 1.6 | $1,040.00 |

## Matter 101 - Bankruptcy Matters

This matter covers preparation of monthly and interim fee applications, as well as the Firm's efforts to obtain Court cost authorization for the Firm to serve as special environmental counsel to Debtor. Foley Hoag's ordinary practice is to exercise billing discretion prior to submitting invoices, and it has done so with respect to each of the invoices it submitted during the Interim Period. To date, none of the interested parties objected to payment on account of any portion of any of those invoices, although they were entitled to do so.

The Firm's application-preparation fee is reasonable in light of the nature and magnitude of the effort involved. For each of those matters, as required by the Local Rules, the Firm submitted detailed billing summaries, and its attorneys prepared narrative descriptions of the work performed.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $650.00 | 1.5 | $ 975.00 |
| Adam P. Kahn | Partner | Environmental | $635.00 | 0.4 | $ 254.00 |
| Malcolm G. Henderson | Partner | Business | $595.00 | 0.5 | $ 297.50 |
| TOTAL | | | | 2.4 | $ 1,526.50 |

## Matter 102 - Blackburn and Union Privileges Superfund Site, Walpole, Mass

During this Twenty-third Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Blackburn and Union Privileges Superfund Site, in Walpole, Massachusetts. The site has been in industrial use for several hundred years. From approximately 1915 to 1935, it was operated by Multibestos Company, which manufactured products containing asbestos. The stock of Multibestos was purchased by Dewey & Almy in or about 1930. The Debtor purchased the stock of Dewey & Almy in 1954.

The Debtor and other potentially responsible parties have been working with EPA and MassDEP since 1988. In 1992 and 1993, the Debtor performed a cleanup at the Site with respect to asbestos, though other contamination remained. The Site was added to the federal National

Priorities List in 1994. the Debtor received a Notice of Potential Liability from EPA in 1998 and a "Special Notice of Responsibility" in 1999. Also in 1999, the Debtor entered into an administrative order with EPA and the Kendall Company, another potentially responsible party. In the order, the Debtor and Kendall each agreed to pay 50% of the costs for performance of the Remedial Investigation / Feasibility Study ("RI/FS") for the Site. After the Debtor filed for reorganization, the Kendall Company continued the RI/FS work without financial participation from the Debtor.

In 2006, EPA announced that it was revisiting the potential risks posed by the presence of asbestos as the Site, including areas with concentrations of asbestos greater than 0.25%, even though the original cleanup was based on a concentration of 1%. EPA has recently indicated that there may be several additional areas of the Site that require remediation for asbestos.

On September 30, 2008, EPA issued the Record of Decision (ROD) for the Site, which identifies the elements of the cleanup plan EPA has selected. The remedy contains several different components, the estimated cost of which in the ROD is approximately $13,000,000, and also identifies certain other issues which may require yet additional work. After issuing the ROD, EPA then issued what is known as "special notice" letters pursuant to section 122 of CERCLA, triggering a period of negotiations with EPA concerning implementation of the remedy selected in the ROD. In December 2008, Debtor and Kendall reached a further agreement, ratified by this Court, pursuant to which Debtor and Kendall each agreed to pay 50% of costs incurred in implementing the remedy selected by EPA in the ROD.

The Debtor, Kendall, and the Shaffers, who are the owners of the Site, reached agreement with EPA on settlement to pay certain of EPA's past costs and to implement the remedy selected in the ROD. The consent decree was lodged with the Court on July 28, 2010 and entered by the Court on December 21, 2010.

During this period, we assisted the Debtor with respect to implementation of the terms of the consent decree, including assistance regarding the required scope of work downstream of the currently known boundary of the Site. We also assisted the Debtor in negotiating with the United States and the Commonwealth of Massachusetts concerning a potential settlement of government claims that there have been damages to natural resources resulting from releases of hazardous substances at the Site.

This work is complex and requires an in-depth knowledge of the Superfund law. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to an effective response to EPA's potential request that more cleanup be performed with respect to asbestos and to overall minimization of the cleanup cost.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $650.00 | 21.6 | $ 14,040.00 |
| | | | | | |
| **TOTAL** | | | | **21.6** | **$14,040.00** |

## Matter 103 – Wells G&H Superfund Site

During this Twenty-third Application Period, the Firm assisted the Debtor in matters related to response actions that may be required by EPA in connection with the Wells G&H Superfund Site, in Woburn, Massachusetts. The Debtor owns certain property located at Washington Street in Woburn, Massachusetts. The property is part of the Wells G&H Superfund Site and the Debtor previously entered into a consent decree with EPA pursuant to which the Debtor is performing certain response actions. By letter dated May 14, 2009, EPA provided comments to the Debtor concerning certain reports submitted to EPA by the Debtor. That letter asked the Debtor to coordinate further investigation with the Operable Unit 2 Central Area Aquifer RI/FS being performed with respect to the Site and further requested certain additional investigation with respect to the Debtor property.

During this period, the Firm advised the Debtor concerning how to respond to EPA. Specifically, the Firm assisted the Debtor in preparing a response to EPA concerning a request by EPA for additional information concerning what is known as the Central Area of the Site. The firm also assisted the Debtor in responding to concerns about potential vapor intrusion into residences and commercial buildings near the Site of contamination allegedly migrating from the UniFirst and Grace properties. This work involved negotiations with UniFirst, consultation with consultants, meetings and other communications with EPA, and consideration of related issues, such as the need for access to properties for sampling related to vapor intrusion concerns. The Firm also advised the Debtor concerning related questions concerning other potentially responsible parties with respect to the vapor intrusion issues. Finally, the Firm advised the Debtor concerning enhancements to the treatment system currently operating at the Debtor's property.

This work is complex and requires an in-depth knowledge of the history of the Debtor's response actions in connection with the Site, the terms of the existing Consent Decree, negotiations with UniFirst Corporation, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $650.00 | 25.5 | $ 16,575.00 |
| **TOTAL** | | | | **25.5** | **$ 16,575.00** |