## EXHIBIT A

Consent Agreement and Final Order, issued by the United States Environmental Protection Agency, Region III and agreed to by Debtors, dated April 29, 2011.

BEFORE THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION III

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | |
| | : | |
| W.R. Grace & Co. – Conn. | : | |
| 5500 Chemical Road | : | U.S. EPA Docket # RCRA-03-2011-0086 |
| Baltimore, Maryland 21226 | : | |
| | : | |
| Respondent, | : | |
| | : | |
| | : | |
| | : | |
| W.R. Grace & Co.-Conn. | : | |
| Curtis Bay Works | : | Proceeding under Section 3008(a) and |
| 5500 Chemical Road | : | (g) of the Resource Conservation and |
| Baltimore, Maryland 21226 | : | Recovery Act, as amended, 42 U.S.C. |
| EPA Facility ID # MDD001710227 | : | Section 6928(a) and (g) |
| | : | |
| Facility. | : | |

## <u>CONSENT AGREEMENT</u>

This Consent Agreement is entered into by the Director, Land and Chemicals Division, U.S. Environmental Protection Agency, Region III ("EPA", "Agency" or "Complainant") and W.R. Grace & Co. - Conn., ("Respondent") pursuant to Section 3008(a) of the Solid Waste Disposal Act, commonly known as the Resource Conservation and Recovery Act ("RCRA") of 1976, as amended by *inter alia*, the Hazardous and Solid Waste Amendments ("HSWA") of 1984 (collectively referred to hereinafter as "RCRA"), 42 U.S.C. § 6928(a), and the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties, and the Revocation/Termination or Suspension of Permits ("Consolidated Rules of Practice"), 40 C.F.R. Part 22, including, specifically, 40 C.F.R. §§ 22.13(b) and 22.18(b)(2) and (3).

This Consent Agreement ("CA") and the accompanying Final Order ("FO") address alleged violations by Respondent of Subtitle C of RCRA and the State of Maryland Hazardous Waste Management Regulations ("MdHWMR"), set forth at the Code of Maryland Regulations ("COMAR"), Title 26, Subtitle 13 <u>et seq.</u> in connection with Respondent's facility located at 5500 Chemical Road, Baltimore, Maryland 21226 (the "Facility"). The MdHWMR were originally authorized by EPA on February 11, 1985, pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b). Revisions to the MdHWMR set forth at COMAR, Title 26, Subtitle 13 were authorized by EPA effective July 31, 2001 and September 24, 2004. The provisions of the revised authorized program are enforceable by EPA pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

# I.  GENERAL PROVISIONS

1. Pursuant to § 22.13(b) of the Consolidated Rules of Practice, this CA and the attached FO (hereinafter jointly referred to as this "CAFO") simultaneously commence and conclude an administrative proceeding against Respondent, brought under Sections 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (g), to resolve alleged violations of RCRA at Respondent's Facility.

2. For purposes of this proceeding only, Respondent admits the jurisdictional allegations set forth in this CAFO.

3. Respondent neither admits nor denies the specific factual allegations and conclusions of law set forth in this CA, except as provided in Paragraph 2, above.

4. For the purposes of this proceeding only, Respondent agrees not to contest EPA's jurisdiction with respect to the execution and issuance of this CAFO, or the enforcement of the CAFO.

5. For purposes of this proceeding only, Respondent hereby expressly waives its right to contest the allegations set forth in this CA and any right to appeal the accompanying FO.

6. Respondent consents to the issuance of this CAFO and agrees to comply with its terms.

7. Each party shall bear its own costs and attorney's fees in connection with this proceeding.

### Notice of Action to the State of Maryland

8. EPA has given the State of Maryland, through the Maryland Department of the Environment ("MDE"), prior notice of the initiation of this action in accordance with Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

## II.  FINDINGS OF FACT AND CONCLUSION SOF LAW

9. In accordance with 40 C.F.R. §§ 22.13(b) and 22.18(b)(2) and (3), Complainant alleges the following findings of fact and conclusions of law:

10. The United States Environmental Protection Agency's Office of Administrative Law Judges has jurisdiction over this matter pursuant to RCRA Section 3008(a) and (g), 42 U.S.C. § 6928(a) and (g), and 40 C.F.R. § 22.1(a)(4) and .4(c).

11. Respondent, W.R. Grace & Co. - Conn. is a Connecticut corporation and is a "person" as defined by RCRA Section 1004(15), 42 U.S.C. § 6903(15), and COMAR 26.13.01.03B.

12. Respondent is and has been through the period of the violations alleged herein, the "owner" and "operator"of a "facility" located at 5500 Chemical Road, Baltimore,

Maryland as these terms are defined by COMAR 26.13.01.03B.  Such facility is hereinafter referred to as the "Facility".

13.     Respondent is and has been through the period of the violations alleged herein, a "generator" of, and has engaged in the "storage" of, materials that are "solid wastes" and "hazardous waste" at the Facility as those terms are defined by COMAR 26.13.01.03B, as described below.

14.     Respondent is and, at all times relevant to the violations in this CAFO, has been a large quantity generator who generates hazardous waste in an amount equal to or greater than 1,000 kilograms per month.

15.     On September 23 and 24, 2008, EPA representatives conducted a Compliance Evaluation Inspection ("CEI") of the Facility.

16.     On December 29, 2008, April 6, 2009, and January 20, 2010, EPA sent Respondent information request letters ("IRL") pursuant to Section 3007(a) of RCRA, 42 U.S.C. § 6927(a), regarding generation and management of hazardous wastes at the Facility.

<u>**COUNT I**</u>
(Operating a hazardous waste storage facility without a permit or interim status)

17.     The preceding paragraphs are incorporated by reference.

18.     Section 3005(a) and (e) of RCRA, 42 U.S.C. § 6925(a) and (e), and COMAR 26.13.07.01A, provide, with certain exceptions not relevant here, that a person may not operate a hazardous waste storage, treatment or disposal facility unless such person has first obtained a permit for the facility.

19.     RCRA § 3005(e), 42 U.S.C. § 6925(e), provides, in pertinent part, that any person who owns or operates a facility required to have a permit under RCRA § 3005, which facility was in existence on November 19, 1980, or is in existence on the effective date of statutory or regulatory provisions that render the facility subject to the requirement to have a permit, has complied with the notification requirements of RCRA § 3010(a), 42 U.S.C. § 6930(a), and has applied for a permit under RCRA § 3005, shall be treated as having been issued such permit (*i.e,* "interim status") until such time as final administrative disposition of such application is made.

20.     Respondent has never had "interim status" pursuant to RCRA Section 3005(e) or a permit issued pursuant to RCRA Section 3005(a) for the treatment, storage, or disposal of hazardous waste at the Facility.

21.     Pursuant to COMAR 26.13.03.05E, generators of hazardous waste who accumulate hazardous waste on-site for less than 90 days are exempt from the requirement to obtain a permit for such accumulation, so long as the hazardous waste is stored in accordance with

3

a number of conditions set forth in that section, including, *inter alia*:

a.      Pursuant to COMAR 26.13.03.05E(1)(b), the generator must accumulate the waste in certain specified hazardous waste units, including containers and tanks.

b.      Pursuant to COMAR 26.13.03.05E(1)(f)(ii) the generator must properly label or mark clearly each container of hazardous waste with the words "Hazardous Waste" while accumulating hazardous waste on site.

c.      Pursuant to COMAR 26.13.03.05E(1)(e), the date upon which each period of accumulation begins must be clearly marked and visible for inspection on each container of hazardous waste.

d.      Pursuant to COMAR 26.13.03.05E(1)(d), the generator must accumulate any hazardous waste stored in containers in accordance with COMAR 26.13.05.09D, specifically, the containers must be closed during storage of hazardous waste except when it is necessary to add or remove waste.

e.      Pursuant to COMAR 26.13.03.05E(1)(h)(i), the generator, in accumulating waste in tanks, as that term is used in COMAR 26.13.01.03(55 – 1), must comply with the requirements of, *inter alia,* COMAR 26.13.05.10-3A, specifically, that for "new tanks," the generator must demonstrate, through a written assessment reviewed and certified by an independent, qualified, registered, professional engineer that the tank system has sufficient structural integrity and is acceptable for the management of hazardous waste.

f.      Pursuant to COMAR 26.13.03.05E(1)(h)(i), the generator, in accumulating waste in new tanks, must comply with the requirements of COMAR 26.13.05.10D, specifically, the generator must inspect, at least once each operating day, data gathered from monitoring and leak detection equipment to ensure that the tank system is being operated according to design (COMAR 26.13.05.10D(2)(a)), and to document in the operating record of the Facility inspections of the items required to be made in COMAR 26.13.05.10D(1) – (4) (COMAR 26.13.05.10D(5)).

g.      Pursuant to COMAR 26.13.03.05E(1)(d), the generator must accumulate any hazardous waste stored in containers in accordance with COMAR 26.13.05.09E, specifically, the generator must inspect areas where containers are stored at least weekly.

h.      Pursuant to COMAR 26.13.03.05E(1)(g), the generator accumulating waste in containers and tanks must comply with the requirements of COMAR 26.13.05.04B(1), specifically, the generator must have a contingency plan designed to minimize hazards to human health or the environment from fires, explosions, or any unplanned sudden or non-sudden release of a hazardous waste or hazardous waste constituents to air, soil or surface water.

i.      Pursuant to COMAR 26.13.03.05E(1)(g), which references COMAR 26.13.05.04

4

*et seq.*, the contingency plan must be amended when, *inter alia,* the Facility changes its design, construction, maintenance, or other circumstances in way that materially increases the potential for fires, explosions, or releases of hazardous waste or hazardous waste constituents, or changes the response to an emergency, or the list of emergency coordinators changes.

      j.      Pursuant to COMAR 26.13.03.05E(1), the hazardous waste is accumulated on site for no longer than 90 days.

22.      Pursuant to COMAR 26.13.03.05E(3), the generator may accumulate as much as 55 gallons of hazardous waste or 1 quart of acutely hazardous waste listed in COMAR 26.13.02.19E in containers in a satellite accumulation area at or near any point of generation where wastes initially accumulate, which is under the control of the operator of the process generating the waste, without a permit and without complying with COMAR 26.13.03.05E(1), provided, *inter alia,* the generator marks such containers with the words "Hazardous Waste" or with other words that identify the contents of the containers.

23.      From March 1, 2006 until the date of this CAFO, Respondent was not eligible for the exemptions under COMAR 26.13.03.05E(1) and (3) with respect to the on-site storage of the hazardous waste because it did not meet the following conditions for those exemptions:

      a.      On the date of the CEI, Respondent failed to properly label and mark each container of hazardous waste being stored on site with the words "Hazardous Waste" as required by COMAR 26.13.03.05E(1)(f)(ii). Specifically, at the Facility, one supersack of hazardous waste chrome and silica in the Polyolefin less-than-90 day storage area; four drums of hazardous waste chrome and silica in the Lab/Tech Center less-than-90 day storage area; and several bags of spent aerosol cans at the Main Shops accumulation area; were not labeled with the words "Hazardous Waste" while being stored on site as required by COMAR 26.13.03.05E(1)(f)(ii).

      b.      On the date of the CEI, Respondent did not date each container of hazardous waste as required by COMAR 26.13.03.05E(1)(e). Specifically, at the Facility, eight drums of hazardous waste filter cartridges in the Building 193 less-than-90 day storage area; four drums of hazardous waste chrome and silica in the Lab/Tech Center less-than-90 day storage area; and several bags of spent aerosol cans at the Main Shops accumulation area were not dated as required by COMAR 26.13.03.05E(1)(e).

      c.      On the date of the CEI, Respondent did not keep containers closed during storage of hazardous waste except when it is necessary to add or remove waste as required by COMAR 26.13.03.05E(1)(d), which references COMAR 26.13.05.09D. Specifically, at the Facility, four buckets of hazardous waste chloroform in the Lab/Tech Center Area less-than-90 day storage area and several bags of spent aerosol cans outside the Main Shops accumulation area were not kept closed except when it is necessary to add or

5

remove waste as required by COMAR 26.13.03.05E(1)(d), which references COMAR 26.13.05.09D.

    d.    From March 1, 2006 until the date of this CAFO, Respondent did not obtain a written assessment reviewed and certified by an independent, qualified, registered, professional engineer stating that a new tank system used to accumulate hazardous waste, known at the Facility as "Accumulation Pot 36121," has sufficient structural integrity and is acceptable for the management of hazardous waste, as required by COMAR 26.13.03.05E(1)(h)(i), which references COMAR 26.13.05.10-3B(1).

    e.    From March 1, 2006 until September 24, 2008, Respondent did not inspect, at least once each operating day, data gathered from monitoring and leak detection equipment to ensure that the Accumulation Pot 36121 tank system is being operated according to design, and to document in the operating record of the Facility inspections of the items required to be made in COMAR 26.13.05.10D(1) – (4), as required by COMAR 26.13.03.05E(1)(h)(i), which references COMAR 26.13.05.10D.

    f.    From January 4, 2008 until September 15, 2008, Respondent did not inspect areas where containers are stored at least weekly as required by COMAR 26.13.03.05E(1)(d), which references COMAR 26.13.05.09E. Specifically, Respondent did not inspect the Magnapore, Tech Center and the Polyolefin 90 day storage areas as required by COMAR 26.13.03.05E(1)(d), which references COMAR 26.13.05.09E.

    g.    On the date of the CEI , Respondent had not amended its contingency plan when the Facility changed design, construction and maintenance in a way that materially increased the potential for fires, explosions or releases of hazardous waste or hazardous waste constituents as required by COMAR 26.13.03.05E(1)(g), which references COMAR 26.13.05.04E. Specifically, the black fine hazardous waste stream release responses were not included in the Contingency Plan as required by COMAR 26.13.03.05E(1)(g), which references, *inter alia*, COMAR 26.13.05.04E.

    h.    On the date of the CEI, Respondent had not amended its contingency plan when the list of emergency coordinators changed as required by COMAR 26.13.03.05E(1)(g), which references, *inter alia*, COMAR 26.13.05.04E.

    i.    From June 26, 2008 until October 4, 2008 Respondent accumulated hazardous waste on site for longer than 90 days in violation of COMAR 26.13.03.05E(1). Specifically, three drums of D007 hazardous waste were stored for a period of ninety-three days and five drums of D007 hazardous waste were stored for ninety-nine days in the Lab Tech Center.

    j.    From March 1, 2006 until the date of this CAFO , Respondent accumulated hazardous waste in containers in a satellite accumulation area with in the meaning of COMAR 26.13.03.05E(3), without marking such containers with the words : "Hazardous Waste" or with other words that identify the contents of the containers. Specifically, at

the Facility, Respondent did not mark containers with the words "Hazardous Waste" or with other words that identify the contents of the containers at the Magnapore black fines satellite accumulation area and the Lab Room 203 satellite accumulation area.

24.   From March 1, 2006 until the date of this CAFO, Respondent did not meet the requirements for an exemption under COMAR 26.13.03.05E and therefore violated COMAR 26.13.07.01A and Section 3005(a) of RCRA, 42 U.S.C. § 6925(a), by operating a hazardous waste storage facility without a permit or interim status.

**COUNT II**
(Failure to keep containers closed during storage)

25.   The preceding paragraphs are incorporated by reference.

26.   COMAR 26.13.05.09D provides that a container holding hazardous waste shall always be closed during storage, except when it is necessary to add or remove waste.

27.   On September 24, 2008, Respondent was storing several containers of hazardous waste, as described in Paragraph 23(c), above at the Facility that were not closed as required by COMAR 26.13.05.09D.

28.   Respondent's acts and/or omissions as alleged in Paragraph 27 above, constitute violations of COMAR 26.13.05.09D.

**COUNT III**
(Failure to perform weekly inspections)

29.   The preceding paragraphs are incorporated by reference.

30.   COMAR 26.13.05.09E provides that the owner or operator shall inspect areas where hazardous waste containers are stored, at least weekly, looking for leaks and for deterioration of containers and the containment system caused by corrosion or other factors.

31.   Between January 4, 2008 and September 15, 2008, Respondent failed to conduct weekly inspections of the Magnapore, Tech Center and the Polyolefin 90 day storage areas at the Facility where hazardous waste containers are stored on fourteen occasions.

32.   Respondent's acts and/or omissions as alleged in Paragraph 31, above, constitutes violations of COMAR 26.13.05.09E.

**COUNT IV**
(Failure to obtain a written assessment for new tank systems)

33.   The preceding paragraphs are incorporated by reference.

7

34.    COMAR 26.13.05.10-3B(1) requires owners or operators of new tank systems or components to demonstrate, through a written assessment reviewed and certified by an independent, qualified, registered professional engineer, in accordance with COMAR 26.13.07.03D, that the tank system has sufficient structural integrity and is acceptable for the management of hazardous waste.

35.    From March 1, 2006 to the date of this CAFO, Respondent has used the Accumulation Pot, a new tank system, to store hazardous waste at the Facility.

36.    From March 1, 2006 to September 24, 2008, Respondent did not demonstrate, through written assessments reviewed and certified by an independent, qualified, registered professional engineer, in accordance with COMAR 26.13.07.03D, that the tank system referred to in Paragraph 35, above, has sufficient structural integrity and is acceptable for the management of hazardous waste.

37.    Respondent's acts and/or omissions as alleged in Paragraph 36, above, constitute violations of COMAR 26.13.05.10 - 3B(1).

## COUNT V
(Failure to conduct and document daily inspections of a hazardous waste storage tank system)

38.    The preceding paragraphs are incorporated by reference.

39.    COMAR 26.13.05.10D(2)(a) and (5) requires that the owner or operator of a facility to inspect, at least once each operating day, data gathered from monitoring and leak detection equipment to ensure that the tank system used to store hazardous waste is being operated according to design, and to document in the operating record of the Facility inspections of the items required to be made in COMAR 26.13.05.10D(1) – (4).

40.    From March 1, 2006 to September 24, 2008, Respondent failed to inspect, at least once each operating day, data gathered from monitoring and leak detection equipment associated with the Accumulation Pot tank system and to document such inspection in the operating record of the Facility inspections of the items required to be made in COMAR 26.13.05.10D(1) – (4).

41.    Respondent's acts and/or omissions as alleged in Paragraph 40, above, constitute violations of COMAR 26.13.05.10D.

## COUNT VI
(Failure to Amend Contingency Plan)

42.    The preceding paragraphs are incorporated by reference.

43.    COMAR 26.13.05.04B(1) requires the owner or operator of a facility to have a

8

contingency plan designed to minimize hazards to human health or the environment from fires, explosions or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water.

44. COMAR 26.13.05.04E requires that the contingency plan be amended when, *inter alia,* the Facility changes its design , construction, maintenance, or other circumstances in way that materially increases the potential for fires, explosions, or releases of hazardous waste or hazardous waste constituents, or changes the response to an emergency, or the list of emergency coordinators changes.

45. On September 24, 2008, the Facility contingency plan had not been amended to include the "black fines" hazardous waste stream in release responses at the Facility

46. On September 24, 2008, the Facility contingency plan had not been amended to include the current names, addresses, and phone numbers of all persons qualified to act as emergency coordinator.

47. Respondent's acts and/or omissions as alleged in Paragraphs 45 and 46, above, constitute violations of COMAR 26.13.05.04B(1) and COMAR 26.13.05.04E.

## COUNT VII
(Failure to mark equipment)

48. The preceding paragraphs are incorporated by reference.

49. Pursuant to 40 C.F.R. § 264.1050(a), the requirements of 40 C.F.R. Part 264, Subpart BB [entitled "Air Emissions Standards for Equipment Leaks"] are applicable to owners and operators of facilities that treat, store or dispose of hazardous waste.  40 C.F.R. Part 264, Subpart BB is applicable to equipment that contains or contacts hazardous wastes with organic concentrations of at least 10 percent by weight that is managed in a unit that is subject to the permitting requirements of 40 C.F.R. Part 270, or a unit (including a hazardous waste recycling unit) that is not exempt from permitting under the provisions 40 C.F.R. § 262.34(a) (i.e., a hazardous waste recycling unit that is not a "90-day" tank or container) and that is located at a hazardous waste management facility otherwise subject to the permitting requirements of 40 C.F.R. Part 270 or a unit that is exempt from permitting under the provisions of 40 C.F.R. § 262.34(a) (i.e., a "90-day" tank or container) and is not a recycling unit under the provisions of 40 C.F.R. § 261.1.

50. Pursuant to 40 C.F.R. § 264.1050(d), each piece of equipment to which 40 C.F.R. Part 264, Subpart BB is applicable shall be marked in such a manner that it can be distinguished readily from other pieces of equipment.

51. From March 1, 2006 to September 24, 2008, Respondent has operated equipment that contains or contacts hazardous wastes with organic concentrations of at least 10 percent by weight that are or have been subject to the requirements of Subpart BB of 40 C.F.R.

9

Part 264 with regard to certain tank systems, specifically the waste solvent transfer equipment associated with Accumulation Pot 36121 and the equipment associated with Reactors 36701 and C1980. Accumulation Pot 36121 and Reactors 36701 and C1980 are units subject to 40 C.F.R. Part 264, Subpart BB.

52.    The ancillary equipment associated with Accumulation Pot 36121 and Reactor 36701 and C1980 has not been in vacuum service and has contained and contacted hazardous wastes with organic concentrations that equal or exceed ten percent by weight for periods in excess of 300 hours per calendar year, and thus are not excluded from regulation under 40 C.F.R. § 264.1052 – .1060.

53.    From March 1, 2006 to September 24, 2008, with respect to the ancillary equipment associated with each of the above-referenced solvent systems, Respondent failed to mark each piece of equipment in such a manner that it could be distinguished readily from other pieces of equipment.

54.    Respondent's acts and/or omissions as alleged in Paragraph 53, above, constitute violations of 40 C.F.R. § 264.1050(d).


## COUNT VIII
(Failure to monitor valves in light liquid service)

55.    The preceding paragraphs are incorporated by reference.

56.    40 C.F.R. § 264.1057(a) requires that each valve in gas/vapor or light liquid service shall be monitored monthly to detect leaks by the methods specified in 40 C.F.R. § 264.1063(b), with exceptions not relevant to this matter.

57.    From March 1, 2006 until the date of this CAFO, there have been valves in light liquid service associated with Accumulation Pot 36121 and Reactor 36701 and C1980 at the Facility.

58.    From March 1, 2006 to September 24, 2008, Respondent failed to conduct monthly monitoring of the valves identified Paragraph 57, above, to detect leaks by the methods specified in 40 C.F.R. 264.1063(b).

59.    Respondent's acts and/or omissions as alleged in Paragraph 58, above, constitute violations of 40 C.F.R. § 264.1057(a).

## COUNT IX
(Failure to keep records)

60.    The preceding paragraphs are incorporated by reference.

10

61.   40 C.F.R. § 264.1064(a)(1) requires that an owner or operator subject to the provisions of Subpart BB shall comply with the record keeping requirements of 40 C.F.R. § 264.1064. 40 C.F.R. § 264.1064(b)(1) requires that owners and operators must record information for each piece of equipment to which Subpart BB of 40 C.F. R. Part 264 applies, in the facility operating record, including:

    (1)   Equipment identification number and hazardous waste management unit identification;

    (2)   Approximate locations within the facility (e.g., identify the hazardous waste management unit on a facility plot plan);

    (3)   Type of equipment (e.g.. a pump or pipeline valve);

    (4)   Percent-by-weight total organics in the hazardous waste stream at the equipment;

    (5)   Hazardous waste state at the equipment (e.g., gas/vapor or liquid); and

    (6)   Method of compliance with the standard (e.g., "monthly leak detection and repair" or "equipped with dual mechanical seals").

62.   From March 1, 2006 to September 24, 2008, Respondent failed to maintain in the facility operating record the information described in 40 C.F.R. § 264.1064(b)(1) for Accumulation Pot 36121 and Reactor 36701 and C1980, which equipment is at the Facility is subject to Subpart BB of 40 C.F.R. Part 264.

63.   Respondent's acts and/or omissions as alleged in Paragraph 62, above, constitute violations of 40 C.F.R. § 264.1064(a)(1).

**COUNT X**
(Failure to Inspect Solvent Waste Tank System Annually)

64.   The preceding paragraphs are incorporated by reference.

65.   40 C.F.R. § 264.1084(g) requires owners and operators of hazardous waste tank systems subject to Subpart CC of 40 C.F.R. Part 264 who control air pollutant emissions from a tank by venting the tank to a control device shall meet the requirements of 40 C.F.R. § 264.1084(g)(1) – (g)(3).

66.   Accumulation Pot 36121 is a tank system subject to the requirements of Subpart CC of 40 C.F.R. Part 264 and air pollutant emissions from such tank are controlled by venting the tank to a control device.

67.   40 C.F.R. § 264.1084(g)(3)(iii) requires owners and operators to perform an initial inspection of the air emission control equipment on or before the tank becomes subject to the requirements of 40 C.F.R.§ 264.1084 and at least once a year thereafter, except for special conditions not applicable herein.

68.   From March 1, 2006 to September 24, 2008, Respondent failed to inspect the air emission control equipment, including the fixed roof and its closure devices, associated with

11

Accumulation Pot 36121 on or before the date that the tank became subject to 40 C.F.R. § 264.1084 and at least once every year thereafter.

69.     Respondent's acts and/or omissions as alleged in Paragraph 68, above, constitute violations of 40 C.F.R. § 264.1084(g)(3)(iii).

## COUNT XI
### (Failure to Maintain Documentation of Organic Vapor Pressure for Subpart CC Tank)

70.     The preceding paragraphs are incorporated by reference.

71.     40 C.F.R. § 264.1089(b)(2)(i) requires an owner or operator of hazardous waste tank systems subject to Subpart CC of 40 C.F.R. Part 264 who is using a fixed roof to comply with the Tank Level 1 control requirements specified in 40 C.F.R. § 264.1084(c) to prepare and maintain records for each determination for the maximum organic vapor pressure performed of the hazardous waste in the hazardous waste tank performed in accordance with requirements of 40 C.F.R. § 264.1084(c).

72.     From March 1, 2006 to September 24, 2008 Respondent used a fixed roof to comply with the Tank Level 1 control requirements specified in 40 C.F.R. § 264.1084(1) for Accumulation Pot 36121, but failed to prepare and maintain records for each determination for the maximum organic vapor pressure performed of the hazardous waste in Accumulation Pot 36121 performed in accordance with requirements of 40 C.F.R. § 264.1084(c).

73.     Respondent's acts and/or omissions as alleged in Paragraph 72, above constitute violations of 40 C.F.R. § 264.1089(b)(2)(i).

## III. CIVIL PENALTY

74.     In settlement of EPA's claims for civil monetary penalties assessable for the violations alleged in this Consent Agreement, Respondent consents to the assessment of a civil penalty of **$150,000**, which Respondent agrees to pay in accordance with the terms set forth below. The civil penalty shall become due and payable immediately upon Respondent's receipt of a true and correct copy of the final effective CAFO. In order to avoid the assessment of interest, administrative costs and late payment penalties in connection with such civil penalty, Respondent must pay such civil penalty no later than sixty (60) calendar days after the date on which this CAFO is mailed or hand-delivered to Respondent.

75.     The aforesaid settlement amount was based upon Complainant's consideration of a number of factors, including, but not limited to, the statutory factors set forth in RCRA § 3008(a)(3) and (g), 42 U.S.C. § 6928(a)(3) and (g), and EPA's RCRA Civil Penalty

Policy (June 2003) ("Penalty Policy").

76.    Pursuant to 31 U.S.C. § 3717 and 40 C.F.R. § 13.11, EPA is entitled to assess interest, administrative costs and late payment penalties on outstanding debts owed to the United States and a charge to cover the costs of processing and handling a delinquent claim, as more fully described below.

77.    In accordance with 40 C.F.R. § 13.11(a), interest on any civil penalty assessed in a Consent Agreement and Final Order begins to accrue on the date that a copy of the Consent Agreement and Final Order is mailed or hand-delivered to the Respondent. However, EPA will not seek to recover interest on any amount of such civil penalty that is paid within thirty (30) calendar days after the date on which such interest begins to accrue.  Interest will be assessed at the rate of the United States Treasury tax and loan rate in accordance with 40 C.F.R. § 13.11(a).

78.    The costs of the Agency's administrative handling of overdue debts will be charged and assessed monthly throughout the period a debt is overdue.  40 C.F.R. § 13.11(b). Pursuant to Appendix 2 of EPA's *Resources Management Directives - Cash Management*, Chapter 9, EPA will assess a $15.00 administrative handling charge for administrative costs on unpaid penalties for the first thirty (30) day period after the payment is due and an additional $15.00 for each subsequent thirty (30) days the penalty remains unpaid.

79.    A late payment penalty of six percent per year will be assessed monthly on any portion of a civil penalty which remains delinquent more than ninety (90) calendar days.  40 C.F.R. § 13.11(c).  Should assessment of the penalty charge on a debt be required, it shall accrue from the first day payment is delinquent.  31 C.F.R. § 901.9(d).

80.    If Respondent pays the entire civil penalty within thirty (30) calendar days of the   date on which this CAFO is mailed or hand-delivered to Respondent, no interest will be assessed against Respondent pursuant to 40 C.F.R. § 13.11(a)(1).

81.    Respondent shall remit the payment for the civil penalty specified in **Paragraph 74,** above, payable to United States Treasury, using one of the payment methods set forth below:

   a.    All payments by a Respondent shall reference such Respondent's name and address and the Docket Number of this action (RCRA-03-2011-0086).

   b.    All checks shall be made payable to "United States Treasury";

   c.    All payments made by check and sent by regular mail shall be addressed and mailed to:

   U.S. Environmental Protection Agency
   Fines and Penalties

13

Cincinnati Finance Center
P.O. Box 979077
St. Louis, MO 63197-9000

Contact:  Eric Volck 513-487-2105

d.    All payments made by check and sent by overnight delivery service shall be
addressed and mailed to:

U.S. Bank
Government Lockbox 979077
U.S. EPA, Fines & Penalties
1005 Convention Plaza
Mail Station SL-MO-C2-GL
St. Louis, MO 63101

Contact:  314-418-1028

e.    All payments made by check in any currency drawn on banks with no USA
branches shall be addressed for delivery to:

Cincinnati Finance
US EPA, MS-NWD
26 W. M.L. King Drive
Cincinnati, OH 45268-0001

f.    All payments made by electronic wire transfer shall be directed to:

Federal Reserve Bank of New York
ABA = 021030004
Account No. = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York, NY 10045

Field Tag 4200 of the Fedwire message should read:
"D 68010727 Environmental Protection Agency"

g.    All electronic payments made through the automated clearinghouse (ACH), also
known as Remittance Express (REX), shall be directed to:

US Treasury REX / Cashlink ACH Receiver
ABA = 051036706
Account No.:  310006, Environmental Protection Agency
CTX Format Transaction Code 22 - Checking

14

Physical location of U.S. Treasury facility:
5700 Rivertech Court
Riverdale, MD 20737
Contact: Jesse White 301-887-6548 or REX, 1-866-234-5681

h.    On-Line Payment Option:

WWW.PAY.GOV

Enter sfo 1.1 in the search field.  Open and complete the form.

i.    Additional payment guidance is available at:

http://www.epa.gov/ocfo/finservices/make_a_payment_.htm

j.    A copy of Respondent's check or a copy of Respondent's electronic fund transfer
shall be sent simultaneously to:

Joyce A. Howell
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region III (Mail Code 3RC30)
1650 Arch Street
Philadelphia, PA  19103-2029

and

Ms. Lydia Guy
Regional Hearing Clerk
U.S. Environmental Protection Agency
Region III (Mail Code 3RC00)
1650 Arch Street
Philadelphia, PA  19103-2029

83.    Respondent shall not deduct for civil taxation purposes the civil penalty specified in this
CAFO.

## IV. FULL AND FINAL SATISFACTION

84.    This CAFO constitutes a settlement by EPA of its claims for civil penalties pursuant to
Section 3008(a) and (g) of RCRA, 42 U.S.C. §6928(a) and (g), for the violations alleged
in this CAFO.  Nothing in this Consent Agreement requires Respondent to perform any
compliance tasks.

## V. CERTIFICATION OF COMPLIANCE

85.    Respondent certifies to EPA, upon investigation, to the best of its knowledge and belief, that it currently is complying with the provisions of Subtitle C of RCRA and the State of Maryland Hazardous Waste Management Regulations ("MdHWMR"), set forth at the Code of Maryland Regulations ("COMAR"), Title 26, Subtitle 13 et seq. that are referenced in this Consent Agreement.

## VI. RESERVATION OF RIGHTS

86.    EPA reserves the right to commence action against any person, including Respondent, in response to any condition which EPA determines may present an imminent and substantial endangerment to the public health, public welfare, or the environment. In addition, this settlement is subject to all limitations on the scope of resolution and to the reservation of rights set forth in Section 22.18(c) of the Consolidated Rules of Practice. Further, EPA reserves any rights and remedies available to it under RCRA, the regulations promulgated thereunder, and any other federal laws or regulations for which EPA has jurisdiction, to enforce the provisions of this CAFO, following its filing with the Regional Hearing Clerk.

## VII. OTHER APPLICABLE LAWS

87.    Nothing in this CAFO shall relieve Respondent of any duties otherwise imposed on it by applicable federal, state or local law and/or regulations.

## VIII. AUTHORITY TO BIND THE PARTIES

88.    The undersigned representative of Respondent certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Agreement and bind Respondent hereto. By his/her signature hereto, Respondent certifies that he/she is fully authorized to enter into the terms and conditions set forth in this CA and to bind the Respondent hereto.

## IX. ENTIRE AGREEMENT

89.    This Consent Agreement and the attached Final Order constitute the entire agreement and understanding of the parties concerning settlement of the above-captioned action and there are no representations, warranties, covenants, terms or conditions agreed upon between the parties other than those expressed in this Consent Agreement and the attached Final Order.

## X. EFFECTIVE DATE

90.    This CAFO shall become effective upon filing with the Regional Hearing Clerk.

91.    Notwithstanding the foregoing, this Consent Agreement and the signatures hereon by EPA and Respondent (the "Parties") shall not become effective and binding until (i) the Respondent has filed and served the Notice of Settlement provided for in paragraph (f) of the *Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding*, dated September 18, 2001 (the "Negative Notice") filed in the action captioned In re: W.R. Grace and CO., *et al.*, Case No. 01-1139(JJF); and (ii) the time periods provided for therein have passed without objection or any objection that was made has been resolved or overruled by the Bankruptcy Court. Within thirty (30) days of execution of this Consent Agreement by the Parties, Respondent shall prepare and file the Negative Notice. The Parties agree that the signed Consent Agreement will not be submitted to the Regional Judicial Officer until after the time periods provided for in the Negative Notice have passed without objection or any objection that was made has been resolved or overruled by the Bankruptcy Court.

For Respondent:                                         W.R. Grace & Co.-Conn

_April 29, 2011_
Date

by: Jonathon L. Kimmel
        Site Operations Director

17

For Complainant:                         U.S. Environmental Protection Agency,
                                         Region III

_5/11/2011_                              _____
Date                                     by   Joyce A. Howell


        After reviewing the foregoing Consent Agreement and other pertinent information, the
Land and Chemicals Division, EPA Region III, recommends that the Regional Administrator or
the Regional Judicial Officer issue the Final Order attached hereto.


_5/11/2011_                              _____
Date                                     Abraham Ferdas, Director,
                                         Land and Chemicals Division
                                         EPA Region III

18

BEFORE THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION III

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | |
| **W.R. Grace & Co. – Conn.** | : | |
| **101. North Charles Street** | : | **U.S. EPA Docket # RCRA-03-2011-0086** |
| **Baltimore, Maryland 21044** | : | |
| | : | |
| **Respondent,** | : | |
| | : | |
| | : | |
| | : | |
| **W.R. Grace & Co.-Conn.** | : | |
| **Curtis Bay Works** | : | **Proceeding under Section 3008(a) and** |
| **5500 Chemical Road** | : | **(g) of the Resource Conservation and** |
| **Baltimore, Maryland 21226** | : | **Recovery Act, as amended, 42 U.S.C.** |
| **EPA Facility ID # MDD001710227** | : | **Section 6928(a) and (g)** |
| | : | |
| **Facility.** | : | |

## FINAL ORDER

Complainant, the Director, Land and Chemical Division, U.S. Environmental Protection

Agency - Region III, and Respondent, W.R. Grace & Co.-Conn., have executed a document

entitled "Consent Agreement" which I hereby ratify as a Consent Agreement in accordance with

the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties

and the Revocation/Termination or Suspension of Permits ("Consolidated Rules of Practice"), 40

C.F.R. Part 22.  The terms of the foregoing Consent Agreement are accepted by the undersigned

and incorporated herein as if set forth at length.

NOW, THEREFORE, PURSUANT TO Section 22.18(b)(3) of the Consolidated Rules of

Practice and Section 3008(a) and (g) of the Resource Conservation and Recovery Act, 42 U.S.C.

§ 6928(a) and (g) ("RCRA"), and having determined, based on the representations of the parties

in the attached Consent Agreement, that the civil penalty agreed to therein was based upon a consideration of the factors set forth in Section § 3008(a)(3) and (g), 42 U.S.C. § 6928(a)(3) and (g), IT IS HEREBY ORDERED that Respondent pay a civil penalty of **$150,000**, and comply with each of the additional terms and conditions as specified in the attached Consent Agreement.

The effective date of this Final Order and the accompanying Consent Agreement is the date on which the Final Order, signed by the Regional Administrator of U.S. EPA Region III or the Regional Judicial Officer, is filed with the Regional Hearing Clerk of U.S. EPA - Region III.


Date: _____                    _____
                                         Renée Sarajian
                                         Regional Judicial Officer
                                         U.S. EPA, Region III

20