# EXHIBIT A

## Settlement Agreement

## SETTLEMENT AGREEMENT
*(Global Resolution of FOSROC-GRACE TIPA PATENT Litigations; with Paid-up License)*

This AGREEMENT is entered into and made effective as of the EFFECTIVE DATE by and among:

### THE FIRST PARTY ("FOSROC"):

**FOSROC INTERNATIONAL LIMITED**, a corporation having an office at 40a Dover Street, London W1S 4NW UK (hereinafter "**FOSROC-INTL**") (CEO: André Ladurelli), and acting through its subsidiaries:

> **FOSROC EUCO S.A.**, Gasteiz Bidea, 11, 48213 Izurtza (Bizkaia) [Tax Identification Code Number A-48058812] (hereinafter "**FOSROC-EUCO**"); and

> **FOSROC (MALAYSIA) SDN BHD** [Company No. 15482-A], Lot 8, Jalan Trompet 33/8, Section 33 Shah Alam 40400, Selangor, Malaysia (hereinafter "**FOSROC-MY**"); and

### THE SECOND PARTY ("GRACE"):

**W. R. GRACE & CO.-CONN.**, a Connecticut Corporation, having an office at 7500 Grace Drive Columbia, Maryland 21044 USA, acting through its Grace Construction Products business unit ("**GCP**"), having an office at 62 Whittemore Avenue, Cambridge, Massachusetts 02140 USA (hereinafter "**GRACE-CONN**") (President GCP: Andrew Bonham), and acting through its subsidiaries:

> **GRACE S.A.**, Riera del Fonollar 12, Sant Boi del Llobregat, Barcelona, Spain (hereinafter "**GRACE-SA**");

> **GRACE CONSTRUCTION PRODUCTS LIMITED**, 635 Ajax Avenue, Slough, Berkshire SL1 4BH (hereinafter "**GRACE-UK**"); and

> **W. R. GRACE (MALAYSIA) SDN BHD** [Company No. 14049-K], 7 Lorong CJ 1/1A, Off Jalan Balakong, Cheras Jaya 43200, Selangor, Malaysia (hereinafter "**GRACE-MY**").

**WHEREAS**, the PARTIES have been, and/or are currently engaged in, one or more patent litigations in three different countries under the TIPA PATENTS (hereinafter defined), namely, in Spain, the UK and Malaysia (herein collectively or individually, as the context in which the term is used implies, referred to as the TIPA PATENT ACTIONS, as hereinafter defined);

**WHEREAS**, each PARTY has asserted SUBJECT CLAIMS (as hereinafter defined) in the TIPA PATENT ACTIONS and may have future CLAIMS (as hereinafter defined) arising in connection therewith;

**WHEREAS**, by this AGREEMENT, the PARTIES intend to adopt, by way of compromise, without further trial or adjudication of any issues of fact or law, a full and final settlement that releases and terminates all rights, obligations and liabilities

of the PARTIES with respect to such SUBJECT CLAIMS or any other CLAIMS regarding the TIPA PATENTS, and, further without prejudice to any CLAIM against any person not a party to this AGREEMENT;

**WHEREAS,** this AGREEMENT is strictly a business accommodation, subject to a complete reservation of rights as to matters not specifically resolved thereby;

**WHEREAS,** the PARTIES acknowledge that this AGREEMENT is not intended to govern any and all CLAIMS for which either PARTY may in the future seek, except as to the SUBJECT CLAIMS and other CLAIMS relative to the TIPA PATENTS; and

**WHEREAS,** GRACE-CONN filed a voluntary petition for reorganization relief pursuant to Chapter 11 of Title 11, of the United States Code, in the United States Bankruptcy Court for the District of Delaware on April 2, 2001 ("Filing Date"), and has operated its businesses as a debtor-in-possession since the Filing Date.

**NOW THEREFORE,** for and in consideration of the complexity of the issues to be litigated and the substantial risks and uncertainties enumerated above, the promises contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the PARTIES agree as follows.

1. **Definitions.**

    The following capitalized terms shall have the respective meanings whenever used in this AGREEMENT, as set forth below:

    **"AFFILIATE(S)"** shall mean any company, partnership or other business entity which directly or indirectly controls, is controlled by, or is under common control with a PARTY hereto, either (1) by direct or indirect ownership of fifty (50) percent or more of the outstanding shares of the entity, or (2) by directly or indirectly having the right to designate fifty percent (50%) or more of its directors, or, in the case of any entity other than a corporation, persons exercising similar authority. "Control" of a specified entity shall mean the possession of the power to direct or cause the direction of the management and policies of such entity, whether through the ownership of voting securities, by contract, or otherwise, and in any event shall include ownership of voting securities of such entity having a majority of the voting power of the voting securities of such entity.

    **"AGREEMENT"** means this settlement agreement including (unless context requires otherwise) any and all Exhibits and other attachments incorporated by reference in this agreement. The recitals shall be included in the terms of this settlement agreement.

    **"CLAIM"** shall mean any and all known or unknown, past, existing, potential or future claims, demands, defenses, cross-complaints, counterclaims, third, party claims, suits, administrative proceedings, arbitrations, orders, actions, or requests for relief or action or forbearance of any kind or description by any entity (e.g., person, PARTY) whatsoever.



"EFFECTIVE DATE" shall mean the date on which the last PARTY signs this AGREEMENT (and shall be presumed to be the indicated date of signature where both PARTIES sign but only one PARTY remembers to insert the date of signature). This AGREEMENT shall be effective once duplicate originals are signed by duly authorized representatives of the PARTIES and exchanged between the PARTIES (and once approval or clearance is otherwise obtained from the Bankruptcy Court for GRACE to enter into this AGREEMENT).

"FOSROC" shall mean and refer to one, some, or all of The First PARTY, namely, FOSROC-INTL, FOSROC-EUCO, FOSROC-MY, or its/their AFFILIATES, depending on context in which the term appears.

"GRACE" shall mean and refer to one, some, or all of The Second PARTY, namely, GRACE-CONN, GRACE-SA, GRACE-UK, GRACE-MY, or its/their AFFILIATES, depending on the context in which the term appears.

"PARTIES" shall refer to both the First and Second Parties, or subsets thereof, while "PARTY" refers to either the First Party or the Second Party or a subset thereof, depending on the contexts in this AGREEMENT in which these terms appear.

"PRODUCT(S)" shall mean CEMAX products which contain TIPA or other products which contain TIPA whose use for enhancing late strength in cement would otherwise constitute an infringement or indirect/imminent infringement of the TIPA PATENTS.

"RETAINED SPANISH FUNDS" shall mean funds paid by FOSROC to the Court of Bilbao in connection with preliminary assessments by the Court (e.g., interest and costs) and retained by the Court pending final resolution of judgment as described in Exhibit 1.

"SUBJECT CLAIMS" means any CLAIM asserted in any of the TIPA PATENT ACTIONS by a party thereto and any CLAIMS that could have been submitted by a PARTY hereto against the other PARTY arising in connection with the TIPA PATENTS worldwide, including without limitation the enforcement, defense, negotiation, and settling of CLAIMS in connection therewith.

"TIPA" means triisopropanolamine.

"TIPA PATENT(S)" means and refers to Spanish Patent No. ES 0415799, United Kingdom Patent No. GB(EP)0415799, Malaysian Patent No. MY-109490-A, and all foreign counterparts, continuations, divisionals, reexaminations, and re-issuances thereof. A list of the patents is provided hereinafter for convenient reference.

| Country | TIPA PATENT No. | Expiration (DD-Mo-YY) |
|---|---|---|
| Argentina | 243487 | 05-Oct-2010 |
| Australia | 624735 | 01-Oct-2010 |
| Austria | E115102 | 05-Oct-2010 |
| Belgium | BE0415799 | 05-Oct-2010 |
| Denmark | DK0415799 | 05-Oct-2010 |
| European | EP0415799 | converted |

| | | |
|---|---|---|
| France | 9012337 | 15-Oct-2010 |
| France (2) | FR1415799 | 05-Oct-2010 |
| Germany | P69014778.3 | 05-Oct-2010 |
| Hong Kong | 1015/95 | 05-Oct-2010 |
| Italy | IT0415799 | 05-Oct-2010 |
| Japan | 2865149 | 04-Oct-2010 |
| Korea, Republic of | 10-150209 | 06-Oct-2010 |
| Malaysia | MY-109490-A | 28-Feb-2012 |
| Mexico | 166092 | 26-Sept-2010 |
| Netherlands | NL0415799 | 05-Oct-2010 |
| New Zealand | 235347 | 17-Sept-2010 |
| Philippines | 28458 | 21-Sept-2011 |
| Philippines | 1-1994-47743 | 23-Oct-2019 |
| Singapore | 9590960-2 | 05-Oct-2010 |
| South Africa | 90/7720 | 27-Sept-2010 |
| Spain | (EP)0415799/(ES)2039334 | 05-Oct-2010 |
| Sweden | SE0415799 | 05-Oct-2010 |
| Switzerland | P0415799 | 05-Oct-2010 |
| Taiwan | NI49425 | 27-Sept-2010 |
| Thailand | (Appl. 011964) | -- |
| United Kingdom | GB(EP)0415799 | 05-Oct-2010 |
| United States | 4943323 | 06-Oct-2009 |
| United States | 5017234 | 06-Oct-2009 |
| United States | 4990190 | 06-Oct-2009 |
| United States | 5084103 | 06-Oct-2009 |
| Venezuela | 54967 | 26-Sept-2010 |

"TIPA PATENT ACTIONS" refers to the lawsuits summarized in Exhibit 1 attached hereto.

2. **Background Summary of TIPA PATENT Litigations (Spain, United Kingdom, Malaysia).**

GRACE-CONN is the owner of the TIPA PATENTS, and GRACE-SA, GRACE-UK, and GRACE-MY are licensees under the same. Through the Grace Construction Products business, the GRACE entities sell cement additives containing TIPA for uses covered by the TIPA PATENTS.

FOSROC is engaged in selling "CEMAX" cement additives in at least Spain and Malaysia, and these additives contain TIPA.

The PARTIES have been, and/or are currently engaged in patent litigation in three different countries under the TIPA PATENTS, namely, in Spain, the UK and Malaysia (herein collectively or individually referred to as the TIPA PATENT ACTIONS or just "ACTIONS" as the context in which the term is used implies). A more detailed summary of these ACTIONS and their current status is set forth in Exhibit 1.

More specifically, the liability portion of the Spanish ACTION is essentially completed, and a final determination of post judgment damages, costs, fees, and expenses remains.

The same applies to the UK litigation, with certain costs, fees, and expenses still in dispute.



In Malaysian the ACTION is pending. The Court was informed that the Parties are discussing settlement, but has not yet made any ruling on validity, infringement liability, or damages.

Notwithstanding the fact that all non-litigated TIPA PATENTS in countries other than Malaysia have expired, liability for past infringement under such expired, non-litigated, TIPA PATENTS may still exist, and thus the Parties intend to settle any such liability and potential CLAIMS between the Parties with respect to any such liability as well.

3. **Purpose of this Settlement Agreement.**

   Without further trial or adjudication of any issues of fact or law, the PARTIES each desire to avoid the expense, uncertainties and distraction of the ACTIONS, and, therefore, through their authorized representatives, have agreed to a full and final settlement that releases and terminates all rights, obligations and liabilities of the PARTIES with respect thereto, in accordance with the terms and conditions, and subject to the exceptions, set forth herein, without prejudice to any other actions, and, further without prejudice to any CLAIM against any person not a PARTY to this AGREEMENT.

   The PARTIES desire further to settle completely all past CLAIMS under the TIPA PATENTS that pertain to the manufacture, use, sale, and distribution of PRODUCTS in countries where a TIPA PATENT not the subject of an ACTION existed but is now expired.

   The PARTIES desire also to provide for the grant of a fully paid up worldwide license by GRACE to FOSROC under the TIPA PATENTS for future exploitation after the EFFECTIVE DATE of this AGREEMENT and until expiration of the same.

4. **Resolution of TIPA PATENT Litigations: Next Steps**

   4.01 Within 30 days after the PARTIES execute this AGREEMENT, GRACE shall file a petition or notice to the Bankruptcy Court (as determined by GRACE Bankruptcy Counsel to be most appropriate and expedient) along with a copy of this AGREEMENT to obtain clearance and/or permission to enter into this AGREEMENT. After obtaining clearance or permission, the PARTIES shall undertake immediately and agree hereby to undertake immediately, the following steps:

   (a) FOSROC shall sign any stipulation, writs, or other documents or instruments as may be required by GRACE or its legal counsel in connection with the Spanish TIPA PATENT ACTIONS to authorize/request the Court of Bilbao to release to GRACE-SA the RETAINED SPANISH FUNDS.

   (b) FOSROC and GRACE shall take all necessary steps to dismiss all pending TIPA PATENT ACTIONS with prejudice to FOSROC as to all CLAIMS raised therein.



    (c)    FOSROC and GRACE hereby agree to execute any documents or instruments as may be reasonably necessary or appropriate to carry out the intentions of this AGREEMENT.

Each PARTY shall bear its own costs and legal fees with respect to resolving the TIPA PATENT ACTIONS as provided in this Article 4.

5. **Payment by FOSROC**

    5.01    In consideration for the settlement by GRACE (including GRACE-CONN, GRACE-SA, GRACE-UK, GRACE-MY, and AFFILIATES) of:

        (a)    all CLAIMS, anywhere in the world under the TIPA PATENTS, including those which are the subject of the TIPA PATENT ACTIONS, and those which could have been brought in countries not involved in the TIPA PATENT ACTIONS; and

        (b)    The license granted by GRACE to FOSROC pursuant to Section 8 below;

FOSROC shall make a non-refundable payment to GRACE of the total amount of **ONE MILLION ONE HUNDRED THOUSAND DOLLARS (USD 1,100,000.00)** payable in installments as follows:

        (c)    The amount of SIX HUNDRED THOUSAND DOLLARS (USD 600,000.00) immediately upon execution of this AGREEMENT; and

        (d)    The amount of FIVE HUNDRED THOUSAND DOLLARS (USD 500,000.00) by or before March 31, 2012.

    5.02    The payments specified at Section 5.01 (c) and (d) shall be made in the form of checks or wire transfers by FOSROC to the accounts of the following GRACE entities (and if no wire transfer instructions are provided by GRACE, then to the addresses of the GRACE entities as set forth above in this document), as follows:

| Payable To | EFFECTIVE DATE | By 31 March 2012 |
|---|---|---|
| **GRACE-SA (Spain)** | $132,727 | $117,273 |
| **GRACE-UK (United Kingdom)** | $27,273 | $22,727 |
| **GRACE-MY (Malaysia)** | $220,000 | $180,000 |
| **GRACE-CONN** | $220,000 | $180,000 |
| Subtotal: | USD 600,000.00 | USD 500,000.00 |



5.03    The non-refundable settlement payments described above in this Article 5 are deemed to be in addition to and separate and apart from the RETAINED SPANISH FUNDS which are to be released to GRACE-SA as provided in Section 4.01(a).

6. **Mutual Releases**

    6.01    In consideration of the above described payment by FOSCROC and resolution of the TIPA PATENT ACTIONS as provided for in Article 4, GRACE hereby releases, discharges, and covenants not to sue FOSROC (including FOSROC-INTL, FOSROC-SA, FOSROC-MY, and any other FOSROC AFFILIATES) and/or its/their customers under any CLAIM it may have on account of any infringement or alleged infringement of any TIPA PATENTS by the manufacture, use, lease, sale, offer for sale, import, shipment, or other disposition of PRODUCTS that, prior to the EFFECTIVE DATE of this AGREEMENT, were manufactured, used, sold, offered for sale, imported, or otherwise disposed of by FOSROC or its AFFILIATES.

    6.02    In consideration of the resolution of the TIPA PATENT ACTIONS as provided for herein, FOSROC hereby releases, discharges, and covenants not to sue GRACE (including GRACE-CONN, GRACE-SA, GRACE-UK, GRACE-MY, and other AFFILIATES) relative to the TIPA PATENTS, or relative to the TIPA PATENT ACTIONS as summarized above, or relative to any other CLAIMS, of any kind or nature arising in connection with the TIPA PATENTS world-wide, including without limitation the enforcement, defense, negotiation, and settling of claims in connection therewith.

    6.03    The releases herein extend to the officers, directors, shareholders, attorneys, representatives, agents, and employees of the respective PARTIES.

    6.04    The releases herein extend only to the TIPA PATENT family and not to any other patents or patent families or other intellectual property owned or controlled by GRACE entities or its/their AFFILIATES.

7. **License Grant under TIPA PATENTS**

    7.01    FOSROC (including FOSROC-SA, FOSROC-MY, and other FOSROC AFFILIATES) is hereby granted a fully paid-up, worldwide, non-exclusive, non-transferable license to make and have made, use and have used, sell and have sold products under the TIPA PATENTS, including the right to sublicense customers to use PRODUCTS sold by FOSROC; but FOSROC may not otherwise assign or sublicense any other rights except as specifically provided by this AGREEMENT.

7.02 This grant of license/sublicense rights does not extend to any other patents or patent families owned or controlled by GRACE and which may involve TIPA.

7.03 In Malaysia and any other country in which the TIPA PATENT is not expired and in which FOSROC exercises the rights granted herein, FOSROC shall acknowledge to customers and potential customers that its CEMAX products (and any other TIPA-containing product whose use is claimed within the TIPA PATENTS) are being supplied under license from W. R. Grace & Co.-Conn.

8. **Acknowledgements and Admissions and other Settlement Terms and Conditions**

    8.01 FOSROC, acting through FOSROC-INTL, FOSROC-SA, FOSROC-MY, and other AFFILIATES, hereby acknowledges, admits, and agrees to the following:

    (a) that GRACE owns all the right, title, and interest in and controls the TIPA PATENTS for purposes of pursuing and settling the TIPA PATENT litigations and for purposes of granting the license under this AGREEMENT;

    (b) that GRACE'S TIPA PATENTS were, are, and will continue to be, valid, enforceable, and subsisting at all material and relevant times of their patent lives (i.e., prior to the relevant country patent expiration date);

    (c) that, in Malaysia, FOSROC was and is infringing or making it likely that the MY TIPA PATENT would be infringed or making it imminently infringed by FOSROC'S importation, manufacture, offering for sale, and/or selling CEMAX products containing TIPA (regardless of intent to sell as grinding enhancer);

    (d) that, in Spain and other countries wherein a TIPA PATENT is (now) expired, FOSROC was infringing or had made it likely that the TIPA PATENT would have been infringed or imminently infringed by FOSROC'S importation, manufacture, offering for sale, and/or selling CEMAX products containing TIPA (regardless of any intent to sell as grinding enhancer);

    (e) that the settlement of all CLAIMS asserted or arising in and/or from the TIPA PATENT ACTIONS, including without limitation pending Spanish Case #2 and pending Malaysia Case #2, shall be and are finally concluded with prejudice to FOSROC;

    (f) that any breach by FOSROC under this AGREEMENT, such as non-payment by FOSROC of settlement amounts or non-performance of litigation resolution actions as described herein, may be resolved under contract law in the US, Malaysia, Spain, or United Kingdom, against any one, some, or all of the FOSROC entities, as may be deemed appropriate by GRACE; and



(g) that GRACE may terminate this AGREEMENT if it is not approved by or cannot be cleared through the Bankruptcy Court.

8.02 FOSROC further agrees that if it commits any breach of its duties, promises, or obligations under this AGREEMENT, such as any failure or refusal to resolve any of the TIPA PATENT ACTIONS or to make any of the settlement payments described in Article 5, or such as filing a challenge or revocation action against any of the TIPA PATENTS, that FOSROC shall pay all costs and legal fees to GRACE resulting from GRACE'S response to such breach regardless of the outcome of any such response.

8.03 If FOSROC fails to make any of the settlement payments required under this AGREEMENT, and GRACE files an action to enforce payment, FOSROC shall pay GRACE'S costs and legal fees incurred in any such action as well as interest of 10% (or otherwise the highest interest legally allowed if such 10% is not allowable) on the outstanding settlement payment as from the EFFECTIVE DATE of this AGREEMENT.

8.04 The execution of this AGREEMENT is in settlement of the TIPA PATENT ACTIONS and the fact of this AGREEMENT execution may be disclosed by either PARTY to a third party. The terms and conditions of this AGREEMENT, however, shall be kept confidential except that such terms and conditions may be disclosed (i) as may be required by law or administrative or judicial court order; (ii) by GRACE to the Bankruptcy Court in the attempt to obtain its approval or otherwise provide notice necessary to obtain clearance; (iii) if GRACE needs to enforce payments or litigation resolution terms or conditions under this AGREEMENT; (iv) if a PARTY needs to provide a copy of this AGREEMENT to tax authorities with respect to payments paid or received under this AGREEMENT or in connection with a tax audit; or (v) to the purchaser of all, or substantially all, of the business of a PARTY hereto or to which this AGREEMENT pertains.

8.05 Notwithstanding the foregoing, the PARTIES agree to a joint release (the wording of which shall be agreed in advance by the PARTIES) to the public after execution of this AGREEMENT (and after obtaining any approval/clearance from the Bankruptcy Court).

9. **Notice**

9.01 Notices and demands, and communications related thereto, shall be given or sent in writing transmitted and delivered (1) personally, (2) deposited in the United States or United Kingdom Postal Service prepaid, by certified mail, (3) by overnight courier, (4) by receipt confirmed by facsimile, or (5) electronically transmitted or communicated by E-mail, cable, or telex. Notices shall be deemed delivered on the date actually received by the addressee, and all E-mail or fax notices shall be deemed to be received when sent and acknowledgement of delivery is received. Notices shall be addressed as follows:



    **(a)**    *If to FOSROC, then addressed to:*
        André Ladurelli, CEO
        Fosroc International Limited
        40a Dover Street, London W1S 4NW UK
        Telecopier: +44 (0)207 307 0501
        Email: Andre.Ladurelli@fosroc.com
        With copy to: Jonathan Brown
        Email: Jonathan_Brown@JMHFzco.com

    **(b)**    *If to GRACE, then addressed to:*
        Andrew Bonham, President
        Grace Construction Products
        62 Whittemore Avenue, Cambridge, Mass. 02140 USA
        Telecopier: 617-491-2029
        Email: Andrew.bonham@grace.com
        With copy to: Craig K. Leon, Senior Patent Counsel
        Email: Craig.K.Leon@grace.com

9.02    For purposes of working together to sign documents and to perform other actions necessary for resolving and settling the TIPA PATENT ACTIONS as provided herein, the PARTIES may communicate by telephone, email, mail, or otherwise as agreed upon.

## 10. General Provisions

10.01    This AGREEMENT constitutes the entire understanding and agreement between the PARTIES hereto with respect to the subject matter hereof, and there are no representations, understandings, or agreements, oral or written, which are not included herein. The PARTIES affirm that the discussion negotiations leading up to this AGREEMENT are covered by a prior confidentiality (letter) agreement dated April 14, 2011, and signed by FOSROC (A. Ladurelli) and GRACE (A. Bonham); but such prior agreement does not operate to prevent GRACE from disclosing this AGREEMENT for purposes of seeking Bankruptcy Court approval or clearance (See Article 6), nor to prevent GRACE from filing an action to protect or enforce its rights under this AGREEMENT in the event of breach by FOSROC of a provision of this AGREEMENT (*See e.g.*, Articles 5 and 6 payment, resolution of ACTIONS).

10.02    No amendment, modification, waiver, or extension of the terms and conditions of this AGREEMENT is binding unless approved in writing signed by duly authorized representatives of the PARTIES.

10.03    The invalidity or unenforceability of an Article or any portion of this AGREEMENT in any jurisdiction shall not cause or support the invalidity of the entire AGREEMENT in such jurisdiction, and shall not affect the validity or enforceability of such Article or portion of an Article in any other jurisdiction. The PARTIES will replace such Article or portion thereof found invalid or



unenforceable by alternative language which should be as similar as possible in its conditions with regard to its financial effects.

10.04 Nothing contained in this AGREEMENT shall be construed as creating any obligation to enter any further business relationship with respect to the subject matter of this AGREEMENT.

10.05 Assignability. The rights and obligations under this AGREEMENT may be signed by a PARTY to the purchaser of all, or substantially all, of the business of the PARTY hereto or to which this AGREEMENT pertains, provided that the assignee agrees to be bound by its terms and assignor remains ultimately responsible in the event that assignee fails to comply. No other assignments of rights or obligations under this AGREEMENT may be undertaken without the prior written consent of the PARTIES.

10.06 The PARTIES acknowledge and agree that the PARTIES may be irreparably damaged if any of the provisions of this AGREEMENT are not performed in accordance with their specific terms or are otherwise breached and that any non-performance or breach of this AGREEMENT by any PARTY may not be adequately compensated by monetary damages alone and that the PARTIES might not have any adequate remedy at law. Accordingly, in addition to any other right or remedy to which any PARTY may be entitled, at law or in equity (including monetary damages), such PARTY upon a proper showing shall be entitled to enforce any provision of this AGREEMENT by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of any of the provisions of this AGREEMENT.

10.07 If either PARTY shall default in fulfilling any of its obligations as herein stated, and such default is material to this AGREEMENT as a whole and is not cured within thirty (30) days after notice to the defaulting PARTY specifying the nature of the default, the other PARTY shall have the right to terminate this AGREEMENT by giving written notice of termination to the defaulting PARTY. Any termination of this AGREEMENT pursuant to this Section 10.07 shall be in addition to, and shall not be exclusive of or prejudicial to, any other rights or remedies at law which either PARTY may have on account of the default of the other PARTY. Any indulgence by a PARTY shall not be construed as a waiver by such PARTY of its rights under this Article either with respect to such default or to any subsequent default. Any termination by GRACE for default by FOSROC, shall terminate all licenses granted hereunder, all sub-licenses granted by FOSROC, and all releases and covenants not sue granted by GRACE to FOSROC, and shall not require a refund of money already paid to GRACE. Termination of this AGREEMENT under this Section 10.07, shall not affect the obligations or rights of the PARTIES accrued prior to such termination concerning confidentiality, fee payments, disclaimers, and controlling law.

10.08 The validity and interpretation of this AGREEMENT and the legal relations of the PARTIES hereto shall be governed by the laws of the internal substantive laws of the State of Delaware, USA, exclusive of its conflicts of law provisions.

**This AGREEMENT** is executed by duly authorized representatives of the PARTIES in duplicate, each of which shall be deemed an original.

| W. R. GRACE & CO.- CONN.<br>GRACE S.A.<br>GRACE CONSTRUCTION PRODUCTS LIMITED<br>W. R. GRACE (MALAYSIA) SDN BHD | FOSROC INTERNATIONAL LIMITED<br>FOSROC EUCO S.A.<br>FOSROC (MALAYSIA) SDN BHD |
|---|---|
| By: _____<br>Andrew Bonham | By: _____<br>André Ladurelli |
| Title: President<br>Grace Construction Products<br>and<br>VP W. R. Grace & Co.-Conn. | Title: Chief Executive Officer |
| Date: _____ | Date: _____ |



## Exhibit 1

*(Summary of TIPA PATENT ACTIONS)*

<u>Spain</u>

**Spanish Case #1.** In or about January of 2007, GRACE-CONN and GRACE-SA filed an action in Madrid against FOSROC-EUCO asserting that the supply by FOSROC-EUCO of certain FOSROC "CEMAX" products constituted an unauthorized use of GRACE'S Spanish TIPA PATENT (No. 0415799/2039334). <u>*W. R. GRACE & CO.-CONN. and GRACE S.A. v. FOSROC EUCO, S.A.*</u>, Mercantile Court No. 6 of Madrid, Ordinary Proceedings 1279/2007. This case was transferred to Bilbao Court, and subsequently on June 29, 2007 (hereinafter the "Case #1 Filing Date"), GRACE-CONN and GRACE-SA filed their infringement case against FOSROC-EUCO in Bilbao Court based on a lost profits theory. FOSROC-EUCO filed a defense and counter-claim alleging that its supply of CEMAX products did not lead to infringement of the patent and that the patent was invalid in view of prior art. <u>*W. R. Grace & Co.-Conn. and Grace S.A. v. Fosroc Euco, S.A.*</u>, Commercial Court No. 2 of Bilbao, Ordinary Proceeding No. 1143-J. The Court scheduled trial hearing for October 23, 2008.

On or about October 31, 2008, the Court of Bilbao issued judgment in favor of GRACE and made certain specific findings as follows:

- That GRACE'S Spanish TIPA PATENT was valid and that FOSROC-EUCO sale of CEMAX products constituted an activity leading to infringement;

- That FOSROC-EUCO should cease promoting, delivering, or offering to any person not authorized to exploit the patent such products as would lead to infringement of the patent; and

- That FOSROC-EUCO should pay damages, interests, and costs to GRACE.

Pursuant to the Court's order and review by a court-appointed damages expert, FOSROC-EUCO deposited a check with the Court corresponding to damages, interest, and costs. Subsequently, the Court delivered to GRACE-SA the damages principal and retained the interest and costs in the Court's account pending final resolution.

In or about December of 2008, FOSROC-EUCO filed an appeal to the Court of Appeals of Bilbao seeking to overturn the judgment. The Appeals Court rejected the appeal in or about April of 2010, confirming the judgment of infringement and validity of the patent, and awarding costs of the appeal in favor of GRACE.



Subsequently, FOSROC-EUCO filed an appeal to the Supreme Court, but later withdrew this appeal.

In or about February of 2011, therefore, GRACE filed a writ to the Court of Bilbao to obtain the interest and costs under the finalized judgment, in addition to costs for enforcing judgment and for costs of the appeal. GRACE'S writ for the awarded interest and costs is pending and expected to be taken up shortly by the Court for finalization of the award (which GRACE expects to exceed the amount that was retained in the Bilbao Court's account).

**Spanish Case #2.** In or about January 2011, GRACE-CONN and GRACE-SA filed a second action in the Court of Bilbao against FOSROC-EUCO to recover infringement damages for the period after the Spanish Case #1 Filing Date; and FOSROC-EUCO filed its defense and counter-claims. *W. R. Grace & Co.-Conn. and Grace S.A. v. Fosroc Euco, S.A.*, Commercial Court No. 2 of Bilbao, Ordinary Proceeding No. 281/11-M. Thus, GRACE believes that it is entitled to receive damages corresponding to sales of CEMAX products by FOSROC-EUCO occurring after June 29, 2007, and up to the patent expiration.

As of this date, the Court of Bilbao has not yet scheduled a hearing for Case #2.

### United Kingdom

In or about April of 2009, FOSROC-INTL filed a claim in London Court against GRACE-CONN seeking revocation of TIPA PATENT No. GB(EP)0415799 in view of prior art and a declaration of non-infringement. *Fosroc International Limited and W. R. Grace & Co.-Conn.*, High Court of Justice, Chancery Division, Patents Court, Claim No. HC 09 C010435.

As FOSROC did not sell CEMAX products into the UK but otherwise admitted that its CEMAX 615, 618, 675, and 675-2 products contained TIPA as well as triethanolamine ("TEA"), GRACE amended its UK TIPA PATENT to cover combinations of TIPA and TEA, thereby attempting to expedite the proceedings and to reduce its costs.

In or about May of 2010, the London Court issued judgment in favor of GRACE. *Fosroc International Limited and W. R. Grace & Co.-Conn.*, High Court of Justice, Chancery Division, Patents Court, Citation No. 120101 EWHC 1290 (Pat). Fosroc chose not to appeal the judgment, was required to pay costs to GRACE.

To date, FOSROC made two payments for costs to GRACE-SA, which has borne the costs of litigation. GRACE-SA believes that its allowable legal costs are not fully compensated by payments in the UK, however; and FOSROC-INTL disagrees.



<u>Malaysia</u>

**Malaysian Case #1.** In or about May of 2009, FOSROC-MY filed an action against GRACE-CONN and GRACE-MY asserting that the TIPA PATENT (MY-109490-A) was invalid in view of prior art, and that FOSROC'S supply of CEMAX products did not lead to infringement. <u>Fosroc SDN BHD v. W. R. Grace & Co.-Conn.</u>, High Court of Kuala Lumpur, Suit No. D (IP) 22-15-2009.

In or about December of 2009, FOSROC withdrew its action and paid to GRACE-MY a check in settlement of costs for Case #1.

**Malaysian Case #2.** In or about December 8 of 2010, GRACE-CONN and GRACE-MY filed an action against FOSROC-MY under the TIPA PATENT (MY-109490-A) and seeking damages under a lost profits theory, and, alternatively, that FOSROC unlawfully interfered with the trade and/or contractual relations of GRACE. GRACE believes that it is entitled to receive lost profit damages for the preceding five-year period. <u>W. R. Grace & Co.-Conn. and W. R. Grace (Malaysia) SDN BHD v. Fosroc SDN BHD,</u> High Court of Kuala Lumpur, Suit No. D-22OIP-79-2010. FOSROC-MY filed a defense and counterclaim in this case.

The Court of Kuala Lumpur is expected to schedule a hearing later in 2011.

\* \* \*