## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: July 25, 2011, at 9:00 a.m.** |
| | ) **Objection Deadline: July 8, 2011, at 4:00 p.m.** |
| | ) |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING ENTRY INTO A CONSENT DECREE WITH THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS REGARDING THE BLACKBURN AND UNION PRIVILEGES SUPERFUND SITE - WALPOLE, MA

### INTRODUCTION

The Debtors respectfully request entry of an order authorizing their entry into a consent

decree (the "NRD Consent Decree," a copy of which is attached hereto as Exhibit I to the form

of order attached hereto as Exhibit A) with the United States of America (the "United States")

and the Commonwealth of Massachusetts ("Massachusetts") addressing their claims with

respect to alleged natural resources damage ("NRD") at the Blackburn and Union Privileges

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

Superfund Site, in Walpole, Massachusetts (the "Site"). The Site is an Additional Site within the meaning of the *Settlement Agreement Resolving the United States Proof of Claim Regarding Certain Environmental Matters* (the "Multi-Site Agreement"), entered by this court by Order dated June 2, 2008 (Docket No. 18847). In support of the Motion, the Debtors respectfully state as follows:[2]

## JURISDICTION

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

3.     The Site is designated as a Superfund Site by the United States Environmental Protection Agency ("U.S. EPA"), which alleges that one of the Debtors is a former owner and operator of manufacturing operations at the Site, dating back to the early 20th century.

4.     The U.S. EPA has asserted a claim against the Debtors with respect to the Site (the "U.S. EPA Claim"). The U.S. EPA Claim is for one of the sites included in the U.S.'s proof of claim filed in these chapter 11 cases and designated Claim No. 9634 by the claims agent.

5.     On June 2, 2008, the Court approved the Multi-Site Agreement. (Docket No. 18847). While the Multi-Site Agreement resolved most of Claim No. 9634, it contained a

---

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the RD/RA Consent Decree, the NRD Consent Decree or the *First Amended Joint Plan of Reorganization* in these Chapter 11 Cases, as amended, Docket Nos. 19579, 20666, 20872, 20873, 21594, 24657, 25881 & 26368 (the "Plan").

DOCS_DE:170824.1

reservation of certain portions of the United States' claim, and of the Debtors' right to object to such portion of the U.S. EPA Claim in connection with the Site.

6.      On or about September 30, 2008, the U.S. EPA completed a remedial investigation and feasibility study with respect to the Site and issued a Record of Decision (the "ROD") selecting remedial alternatives to be performed at the Site.

7.      On December 10, 2008, this Court entered an *Order Approving Stipulation Resolving Proof of Claim No. 12789* ("the Stipulation") (Docket No. 20241). The Stipulation provided for an allocation of certain costs with respect to the Site between the Debtors and Tyco Healthcare Group LP ("Tyco"), pursuant to which Debtors and Tyco would each pay 50% of Past Response Costs and costs to implement the ROD remedy.

8.      On or about February 18, 2009, the United States sent letters to the Debtors, BIM Investment Corporation and Shaffer Realty Nominee Trust ( collectively, the "Shaffers") and Tyco (all collectively, the "Settling Defendants") requesting that the Settling Defendants agree to perform the cleanup specified in the ROD and pay the U.S. EPA's past and future costs (including Past Response Costs, Future Response Costs, and Future Oversight Costs (collectively, the "Response Costs")) with respect to the Site.

9.      On or about November 5, 2009, the United States sent letters to the Settling Defendants on behalf of the U.S. Department of the Interior and the Massachusetts Executive Office of Energy and Environmental Affairs, transmitting a natural resource damages claim ("NRD Claim") regarding the Site for consideration. This NRD Claim included performance of the ROD remedy and a request for compensation for alleged injury to natural resources. The United States alleges total NRD for the Site in the amount of $1,723,282.34 for both groundwater and non-groundwater NRD, including assessment costs.

10.     On July 3, 2010, this Court approved a consent decree with respect to the Settling Defendants' performance of remedial design and remedial action work as well as reimbursement of Response Costs incurred by the United States, in *United States v. BIM Inv. Corp. et. al.*, No1:10-cv-11263-NG, (the "RD/RA Consent Decree")(Docket No. 25043), which reserved the issue of NRD recoverable under Section 107(a)(4)(C) of CERCLA, 42 U.S.C. §9607(a)(4)(C), at Article IX, Paragraph 24.

11.     On February 4, 2011, this Court approved a *Stipulation Resolving Claims of the Massachusetts Department of Environmental Protection*(Docket Number 24926) (the "Massachusetts Agreement") with respect to the Debtors' environmental liabilities throughout the Commonwealth of Massachusetts, which contained a reservation allowing Massachusetts to assert NRD claims for ongoing releases at three specific sites, including the Site, recoverable under Mass.GL.c.21.E, at Paragraph 8.

12.     Since the November 5, 2009 letter from the United States, the Settling Defendants, including the Debtors, have negotiated with the United States and Massachusetts to reach a settlement concerning the NRD claim reserved in the RD/RA Consent Decree and the Massachusetts Agreement.   The Debtors, the United States and Massachusetts now desire, together with the other Settling Defendants, and without any admission of fact, law or liability, to resolve the NRD claims and demands relating to the Site on the terms set forth in the NRD Consent Decree and described in more detail below.

## The NRD Consent Decree

13.     The NRD Consent Decree resolves: (a) the United States' NRD claim as outlined in Claim No. 9634 insofar as it relates to the Site, to the extent, if any, that such claim has not been resolved by the Multi-Site Agreement and RD/RA Consent Decree; and (b) Massachusetts'

NRD claim as outlined in Claim 12849 insofar as it relates to the Site, to the extent, if any, that such claim has not been resolved by the Massachusetts Agreement.

14.     The NRD Consent Decree requires that the Settling Defendants compensate the United States and Massachusetts for these NRD claims. However, unlike other consent decrees typically entered into by the United States under CERCLA, the Debtors' obligations under the NRD Consent Decree are not stated to be joint and several with the other Settling Defendants. (The obligations of the *other* Settling Defendants *are* stated to be joint and several *among* the other Settling Defendants but exclude the Debtors).

15.     With respect to NRD, the Debtors agree under the NRD Consent Decree to pay $358,745.67 to the United States Department of the Interior, on behalf of the federal and state Natural Resources Trustees, which is approximately 47.5% of the total amount that the Trustees agreed to accept in payment for ecological and groundwater NRD from all of the Settling Defendants. The Debtors' obligation to pay this claim is in the form of an allowed general unsecured claim against the Debtors' chapter 11 estates (the "Allowed U.S. NRD Claim"), which will be paid in the same manner as all other allowed general unsecured claims within 30 days of the Effective Date of the NRD Consent Decree or within 30 days of the effective date of a confirmed chapter 11 plan of reorganization for the Debtors, whichever is later. Notwithstanding what the Debtors' plan may provide, however, Interest will not accrue on the Allowed U.S. NRD Claim until 30 days after the Effective Date of the NRD Consent Decree. At that point, Interest will accrue on the Allowed U.S. NRD Claim at the rate established by 26 U.S.C. § 9507, which has historically and consistently been less than the interest rate provided for in the Debtors' Plan of 4.19%. Approximately 47.5% of the total U.S. NRD claim for this Site will be paid by Tyco and approximately 5% of the total U.S. NRD claim for this Site will be paid by the Shaffers.

16.    In addition, the Debtors' agree under the NRD Consent Decree to pay $168,339.11 to Massachusetts, which is 50% of the total amount that Massachusetts agreed to accept in payment of groundwater NRD from all of the Settling Defendants.    The Debtors' obligation to pay compensation for NRD is in the form of an allowed general unsecured claim against the Debtors' chapter 11 estates (the "Allowed Massachusetts NRD Claim"), which will be paid in the same manner as all other allowed general unsecured claims within 30 days of the Effective Date of the NRD Consent Decree or within 30 days of the effective date of a confirmed chapter 11 plan of reorganization for the Debtors, whichever is later.    Notwithstanding what the Debtors' plan may provide, however, Interest will not accrue on the Allowed Massachusetts NRD Claim until 30 days after the Effective Date of the NRD Consent Decree.    At that point, Interest will accrue on the Allowed Massachusetts NRD Claim at the rate established by 26 U.S.C. §9507, which has  historically and consistently been less than the interest rate provided for in the Debtors' Plan of 4.19%.    The other 50% of the total Massachusetts NRD claim for this Site will be paid by Tyco.

17.    In return for the obligations to be assumed by the Settling Defendants under the NRD Consent Decree, the United States and Massachusetts will provide to the Settling Defendants a covenant not to sue for matters addressed under the NRD Consent Decree.    Those matters include compensation for alleged injury to groundwater and non-groundwater natural resources, and assessment costs.

18.    In entering the NRD Consent Decree, the Settling Defendants anticipate that payments for the Allowed U.S. NRD claim and the Allowed Massachusetts NRD Claim will be made by the Settling Defendants as outlined herein. That allocation is consistent with the cost

6

allocation between the Debtors and Tyco already approved by this Court in the RD/RA Consent Decree, with an additional payment by the Shaffers.

<u>**RELIEF REQUESTED**</u>

19.     By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving the Debtors' execution of the NRD Consent Decree, (b) resolving the balance of Claim No. 9634 insofar as it relates to NRD at the Site and to the extent, if any, that the Multi-Site Agreement and the RD/RA Consent Decree, do not resolve the Claim; (c) resolving the balance of Claim No. 12849 insofar as its relates to NRD at the Site and to the extent, if any, that the Massachusetts Agreement does not resolve the Claim; (d) granting the Debtors authority to consummate the transactions contemplated in the NRD Consent Decree, including the use of the Debtors' estate property and resources necessary to comply with the terms of the NRD Consent Decree, and (e) granting such other relief as may be appropriate.

<u>**ANALYSIS**</u>

**Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

20.     This Court has the statutory authority to authorize and approve the Debtors' entry into the NRD Consent Decree, and the incurrence of costs and expenses contemplated therein, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

21.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

22.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors

7

to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the Debtors' sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re LionelCorp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

23.    A settlement of claims and causes of action by a debtor in possession constitutes a use of the property of the estate. See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 350 (3d Cir. 1999). If a settlement is outside the ordinary course of business of the debtor, it requires the approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.

24.    Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. See In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).

25.     Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtors' estate. <u>See</u> <u>Martin</u>, 91 F.3d at 394; <u>In re Marvel Entm't Group, Inc.</u>, 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. <u>See Martin</u>, 91 F.3d at 393.

26.     The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>Id.</u>; <u>see also In re</u> <u>Nutraquest, Inc.</u>, 434 F.3d 639, 644-45 (3d Cir. 2006).

27.     It is also well settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." <u>Key3Media Group</u>, 2006 WL 2842462, at *3; <u>In re World Health Alternatives,</u> <u>Inc.</u>, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing <u>In re Penn Cent. Transp. Co.</u>, 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." <u>World Health Alternatives</u>, 344 B.R. at 296 (citations omitted); <u>see also In re Neshaminy Office</u> <u>Bldg. Assocs.</u>, 62 B.R. 798, 803 (E.D. Pa. 1986).

**Application of Standards for Approval of a Settlement to the Facts of This Case**

28.     The Debtors have determined that entry into the NRD Consent Decree is in the best interests of the Debtors and their estates. The NRD Consent Decree was the result of a

9

rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.

29.     The NRD Consent Decree is in the best interests of the estates for a number of reasons. First, the NRD Consent Decree prevents the incurrence of significant transaction and litigation costs and cost-effectively allocates the responsibility for and resolves significant environmental liabilities of the Debtors. Approving the NRD Consent Decree will resolve claims for more than $1.7 million in alleged injury to natural resources and related assessment costs through payment of $527,084.78 plus applicable interest by Grace for its share and will provide assurance to the creditors that NRD environmental liabilities associated with the Site are fully addressed and permanently resolved. The Debtors' shared responsibility for the Site has been a responsibility of the Debtors since before the commencement of these chapter 11 cases, as recognized in the Multi-Site Agreement, the Stipulation between Debtors and Tyco, the RD/RA Consent Decree, and the Massachusetts Agreement.

30.     Second, the NRD Consent Decree is consistent with CERCLA's goals and benefits the public interest because the NRD Consent Decree will result in the compensation to government entities on behalf of the public for alleged injury to natural resources at the Site. Such approval also benefits the public by allocating alleged damages and assessment costs amongst the Settling Defendants.

31.     Third, the NRD Consent Decree does not provide for any payment by the Debtors prior to the effective date of any confirmed plan of reorganization.

32.     Fourth, the NRD Consent Decree allocates the costs with respect to the Site in essentially the same manner as has already been approved by this Court in the Stipulation between Debtors and Tyco, and the RD/RA Consent Decree.

33.     Fifth, the Site is an "Additional Site" under the Multi-Site Agreement. This means that the Site has remained a potential liability for the Debtors and their estates. Resolution of the United States' claims as provided in the NRD Consent Decree would be consistent with the treatment for Additional Sites outlined in the Multi-Site Agreement and would resolve this otherwise outstanding environmental liability of the Debtors.

34.     Sixth, potential natural resources injury at the Site was contemplated under the recently settled Massachusetts Agreement. This means that NRD at the Site has remained a potential environmental liability for the Debtors and their estates. Resolution of Massachusetts' claims as provided in the NRD Consent Decree would be consistent with the Massachusetts Agreement already approved by the Court and would resolve this otherwise outstanding liability of the Debtors.

35.     Thus, for the reasons stated above, the proposed NRD Consent Decree is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest because it is the best settlement attainable given all the facts and circumstances. In the absence of a resolution by settlement, the Debtors will likely incur substantial legal fees and expenses litigating this matter to final judgment. Accordingly, the Debtors have demonstrated a sound business justification and best interest for the execution and consummation of the NRD Consent Decree.

## NO PREVIOUS MOTION

36.     No previous motion for the relief sought herein has been made to this or any other court.

## NO BRIEFING SCHEDULE

37.     The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing.  Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil

11

Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules

<u>NOTICE</u>

38.     Notice of this Motion has been given to:  (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the United States and the Settling Defendants. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page left intentionally blank]**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit A hereto, (i) approving the Debtors' execution of the NRD Consent Decree attached as Exhibit I to the form of order, (ii) resolving Claim No. 9634 as it relates to the Site, to the extent not resolved by the Multi-Site Agreement; (iii) resolving Claim No. 12849 as it relates to the Site, to the extent not resolved by the Massachusetts Agreement, (iv) authorizing the Debtors to consummate the transactions contemplated in the NRD Consent Decree, and (v) granting such other relief as may be just or proper.

**[signature page to follow]**

DOCS_DE:170824.1

Dated:  June 20, 2011

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession

14