IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

## MOTION FOR ENTRY OF A PROTECTIVE ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL THEIR MOTION FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE DEBTORS TO PARTICIPATE IN A COMPETITIVE AUCTION, AND IF SELECTED AS THE WINNING BIDDER THEREAFTER CONSUMMATE A PROPOSED ACQUISITION

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>" or "<u>Grace</u>") file this motion (the "<u>Seal Motion</u>") requesting the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Seal Order</u>") authorizing the Debtors to file the following materials under seal, such that only the Court, the statutory committees (the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

"Committees") and the future claimants' representatives (the "FCRs") in these cases shall be permitted to view such materials:[2]

- The Debtors' *Motion for Entry of an Order Authorizing, but not Requiring, the Debtors to Participate in a Competitive Auction, and if Selected as the Winning Bidder, Thereafter Consummate a Proposed Transaction* (the "Proposed Transaction Motion") for the purchase from Seller (if Seller selects Grace as the winning bidder) certain assets (the "Proposed Transaction");

- The form transaction agreement attached as an exhibit to the Proposed Transaction Motion (the "TA") and the associated agreements and other transaction documentation (the "Transaction Documentation"), which Transaction Documentation shall be filed only upon Seller's selection of Grace as the winning bidder in the Auction;

- Two declarations in support of the Proposed Transaction, the first of which is from Jeremy Francis Rohen (the "Rohen Declaration") and the second of which is from John James O'Connell III (the "O'Connell Declaration", together with the Rohen Declaration, the "Declarations"); and

- Any further documentation filed in support of the Proposed Transaction Motion on or before entry of an order authorizing the relief sought in the Proposed Transaction Motion (the "Supplemental Filings").

As discussed below, the heightened need for confidentiality on both the part of Seller and the Debtors makes it impossible to meaningfully redact confidential portions of the above-described documents without running the risk of inadvertently revealing confidential commercial information. The Debtors have nonetheless gone to great lengths, as also discussed below, to engage and inform important constituencies such as the Committees and FCRs in the ongoing transaction process by sharing information with them regarding the Proposed Transaction and putting into place procedures for other parties-in-interest to be given access to the Proposed Transaction Motion pursuant to appropriate confidentiality arrangements and Seller's consent.

In support of this Seal Motion, the Debtors respectfully state as follows:

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Asset Transaction Motion, the TA or the *First Amended Joint Plan of Reorganization* in these Chapter 11 Cases, as amended, Docket nos. 19579, 20666, 20872, 20873, 21594, 24657, 25881 & 26368 (the "Plan").

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are sections 105(a) and 107(b) of the Bankruptcy Code, Fed. R. Bankr. P. 9018 and Del. Bankr. L.R. 9018-1.

## BACKGROUND

3. In May 2011, the Debtors' board of directors approved Debtors' commencing due diligence regarding the Proposed Transaction, a highly confidential potential strategic transaction with Seller. The board determined in its business judgment that this Proposed Transaction would significantly enhance Grace's business plan and growth strategy in coming years.

4. In conjunction with its due diligence regarding the Proposed Transaction, Seller required Grace to enter into a restrictive confidentiality arrangement (the "Confidentiality Agreement"). Seller further required the Debtors to obtain acknowledgments from the FCRs and counsel to the Committees, that the FCRs, the Committees, the Committees' members and the retained professionals of each of the foregoing would be bound by and would adhere to the terms of the Confidentiality Agreement before the Committees and FCRs could receive confidential information regarding the Proposed Transaction. The Confidentiality Agreement also requires the Debtors to obtain Seller's written permission to disclose certain materials to the Committees and FCRs prior to making any such disclosures. Seller is likewise requiring the Debtors to file (after having obtained Seller's written consent to do so) the Proposed Transaction Motion, Declarations, Transaction Documentation and Supplemental Filings (if any) under seal.

5.  Seller has required this heightened level of confidentiality in order to protect its confidential business information relating to the Proposed Transaction from the marketplace and Seller's competitors.

6.  The Debtors are including additional business information in the Proposed Transaction Motion that they must keep confidential both from Seller and the broader marketplace. This confidential business information necessary to form the factual basis for the relief requested in the Proposed Transaction Motion includes a range of highly sensitive subjects that would cause the Debtors great harm if it were disclosed to Seller or otherwise made public.

7.  The Debtors are therefore seeking to file (after having obtained Seller's written consent to do so) the Proposed Transaction Motion, the Transaction Documentation, the Declarations and the Supplemental Filings (if any) under seal pursuant to section 107(b) of the Bankruptcy Code in order to comply with the Confidentiality Agreement and to protect the Debtors' own confidential business information.[3]

## RELIEF REQUESTED

8.  By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Fed. R. Bankr. P. 9018 and Del. Bankr. L.R. 9018-1, authorizing them to file the Proposed Transaction Motion, the Transaction Documentation, the Declarations and the Supplemental Filings (if any) under seal in order to maintain the confidentiality of the information described therein and attached thereto.

---

[3] Prior to filing, the Debtors provided Seller with a draft of the Proposed Transaction Motion that has been redacted of the Debtors' confidential business information.

9. The Debtors are filing this Motion pursuant to Fed. R. Bankr. P. 9018 and Local Rule 9018-1 (b), which provides, in relevant part, that "[a]ny Any party who seeks to file documents under seal must file a motion to that effect." Del Bankr. L.R. 9018-1 (b).[4]

## ANALYSIS

### I. SECTION 107(B) REQUIRES A COURT PROTECT AN ENTITY'S COMMERCIAL AND OTHER BUSINESS SENSITIVE INFORMATION

10. Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information. This section provides, in relevant part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may:
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C § 107(b). Section 107(b)(1) thus *requires* courts to protect confidential commercial information. *In re Frontier Group, LLC*, 256 RR. 771, 773 (Bankr. E.D. Tenn. 2000).

11. Indeed, unlike its Fed. R. Civ. P. 26 counterpart, section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause." *See, e.g., Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 28 (2d Cir. 1994); *Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*, 191

---

[4] Fed. R. Bankr. P. 9018 defines the procedures by which a party may move for relief under section 107(b) of the Bankruptcy Code, providing in relevant part that:

> [o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information ...

Fed. R. Bankr. P. 9018.

5

B.R. 675, 679 (Bankr. N.D. Ohio 1995). Rather, if the material sought to be protected satisfies one of the categories identified in section 107(b), "the court is required to protect a requesting party and has no discretion to deny the application." *In re Orion Pictures Corp.*, 21 F.3d at 27. Finally, granting a sealing order is well within this Court's power - and discretion - as long as the requirements set forth in section 107(b) have been met. *In re Ionosphere Clubs Inc.*, 156 B.R. 414, 434 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

12. Under the plain language of section 107(b) of the Bankruptcy Code and Fed. R. Bankr. P. 9018, and in light of the Court's broad equitable powers under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," the requested relief should be granted for the reasons articulated below.

## II. THE MOTION AND RELATED DOCUMENTS CONTAIN COMMERCIAL INFORMATION

13. This Court defines commercial information as "information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor'." *In re Alterra Healthcare Corp.*, 35 RR 66, 75 (Bankr. D. Del. 2006) (quoting *In re Orion Pictures Corp.*, 21 F.3d at 27-28). Additionally, "disclosure of [the] information [must] reasonably be expected to cause the entity commercial injury." *Alterra*, 353 B.R. at 76 (internal quotations and citations omitted). The Court must also find that information contained in the sealed documents "is so crucial to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors." *Alterra*, 353 B.R. at 75-76 (quoting *In re Barney's, Inc.*, 201 B.R. 703, 708-09 (Bankr. S.DN.Y. 1996)); *see also Orion Pictures*, 21 F.3d at 27-28 (holding that a license agreement authorizing a licensee "to reproduce, manufacture, distribute, and sell videocassettes of three films" contained confidential commercial information); *Northstar Energy*, 315 B.R. at 430-31 (holding that a list of investors

6

in the debtor's oil and gas business was confidential commercial information); *In re Farmland Indus.*, 290 B.R. 364, 369-70 (Bankr. W.D. Mo. 2003) (holding time lines for marketing and selling assets established in a financing agreement between the debtor and prepetition lenders were confidential and commercial); *Frontier Group*, 256 B.R. at 773-74 (finding that a list of physicians, who were placed in temporary places of employment by the debtor placement agency, was commercial in nature); *Barney's*, 201 B.R. at 709 (concluding that for a retailer, confidential commercial "information might include, without limitation, pricing formulae, short and long term marketing strategies and the terms of agreements with suppliers").

14. Here, the information which the Debtors seeks to file under seal as confidential commercial information falls into two categories:

- Grace's own business information, which the Debtors must keep confidential from Seller because its disclosure could cause commercial injury to the Debtors; and

- Seller's business information, the disclosure of which could cause harm to the integrity of the Potential Transaction process and commercial injury to Seller.

The Debtors have determined in their business judgment that consummating the Proposed Transaction will redound to their benefit (and that of their estates and stakeholder constituencies). Grace would suffer significant harm if business information relating to its analysis of the benefits of the Proposed Transaction and other confidential subjects were to be disclosed to Seller or otherwise to be made public. Such significant harm clearly constitutes a commercial injury. *Alterra*, 353 B.R. at 76.

15. By the same token, Seller has determined in its business judgment that any identifying information regarding the Proposed Transaction (including but not limited to Seller's identity) becoming public prior to any public announcements regarding the Proposed Transaction would significantly harm Seller itself by undermining the competitive auction process with

respect to the Proposed Transaction and otherwise giving an unfair competitive advantage to Seller's competitors. *Id.*

16. The Debtors therefore submit that both Grace's confidential business information and Seller's confidential business information constitute commercial information for purposes of section 107(b) of the Bankruptcy Code. Since this information is contained throughout the Proposed Transaction Motion, the Transaction Documentation and the Supplemental Filings (if any), it cannot be meaningfully redacted from any of those documents. The Debtors therefore submit that each of the Proposed Transaction Motion, the Transaction Documentation and the Supplemental Filings (if any) should be filed under seal in their entirety.

### III. STATUTORY COMMITTEES AND FCRs HAVE BEEN FULLY APPRISED OF THE PROPOSED TRANSACTION

17. On or about June 2, 2011, Seller consented to the Debtors' request that each of the FCRs and counsel to each of the Committees execute acknowledgments of the Confidentiality Agreement in order to receive any confidential commercial information regarding the Proposed Transaction. In the days that followed, counsel for each of the Committees and the FCRs executed acknowledgments on behalf of their respective clients. Since then, the Debtors and Blackstone have provided certain written materials (with Seller's prior written consent) and made presentations to counsel and financial advisors to the Committees and FCRs. The Debtors and Blackstone have also provided further information and analysis (with Seller's prior written consent) in response to queries from the Committees and FCRs. Finally, the Debtors and their advisors are continuing to provide updates on the transaction process to the Committees' and FCRs' advisors as circumstances warrant.

18. The Committees and FCRs were served with the filed Proposed Transaction Motion and the Declarations. The Debtors will provide summaries of the Transaction

Documentation to the Committees and FCRs in due course and will serve any Subsequent Filings on them if any are made.

IV. **PROCEDURES REGARDING OTHER POTENTIAL PARTIES-IN-INTEREST**

19. In the event that a party-in-interest in these chapter 11 cases, other than the Committees and the FCRs, request to review any of the Proposed Transaction Motion, the Transaction Documentation or the Supplemental Filings (if any), the Debtors propose the following procedures:

- The Debtors will identify the party-in-interest to Seller;

- Seller will determine whether to consent to the party-in-interest executing an acknowledgment of and becoming bound by the Confidentiality Agreement (if Seller does not consent, then neither the Debtors, any Committee, the FCRs or any other person or entity that has received the Proposed Transaction Motion, the Transaction Documentation and/or the Supplemental Filings (if any) or any other materials sealed by the Seal Order shall disclose any of such materials);

- If Seller does so consent, the Debtors will furnish the party-in-interest with a form of the Confidentiality Agreement redacted of Seller's name and a redacted (if necessary) form of acknowledgment thereof;

- When the party-in-interest agrees in writing to execute the acknowledgment to and to be bound by the Confidentiality Agreement, the Debtors will furnish the unredacted Confidentiality Agreement and a form of acknowledgment thereof;

- The party-in-interest shall execute the acknowledgment and furnish same to the Debtors (who will furnish an electronic copy of same to Seller);

- In any such acknowledgment, the party-in-interest shall agree to file any pleading in this matter (if any) under seal pursuant to the terms of the Order;

- The Debtors then will serve the Proposed Transaction Motion, the Transaction Documentation and the Supplemental Filings (if any) on the party-in-interest to the extent that such documents have already been filed. The Debtors also will serve on the party-in-interest all such documents that are subsequently filed; and

- Any further information requests from the party-in-interest shall be dealt with pursuant to the terms of the Confidentiality Agreement.

20. The Debtors will discuss this Motion and the relief requested herein with the Office of the United States Trustee upon the filing of this Motion.

## NO PREVIOUS MOTION

21. No previous motion for the relief sought herein has been made to this or any other court.

## NO BRIEFING SCHEDULE

22. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

## NOTICE

23. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the Committees; (v) counsel to the FCRs; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) Seller. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request entry of an Order: (a) authorizing the Debtors to file (i) the Proposed Transaction Motion, (ii) the Transaction Documentation, (iii) the Declarations, and (iv) the Supplemental Filings (if any) under seal, such that only the Court, the Committees and the FCRs in these chapter 11 cases and any other party-in-interest who with Seller's consent acknowledges the Confidentiality Agreement shall be permitted to view such materials; and (b) granting such other relief as may be appropriate.

Dated: June 20, 2011

KIRKLAND & ELLIS LLP
James H. M. Sprayregen
Adam Paul
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

**[remainder of signature page to follow]**

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession