IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: August 29, 2011, at 9:00 a.m. |
| ) | Objection Deadline: August 22, 2011, at 4:00 p.m. |
| ) | |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
SETTLEMENT OF ASBESTOS PROPERTY DAMAGE CLAIMS FILED BY THE
STATE OF CALIFORNIA, DEPARTMENT OF GENERAL SERVICES**

The Debtors have negotiated an agreement (the "Settlement") with the State of California, Department of General Services (the "Claimant"), an asbestos property damage claimant represented by Steven J. Mandelsberg, Hahn & Hessen LLP (the "Claimant's Counsel"), which will settle the Claimant's asbestos property damage claims against the Debtors on the terms and conditions set forth in the Settlement. A copy of the Settlement is attached hereto as part of Exhibit 1, and includes an identification of the 16 settled claims, including claim

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company (collectively, "Debtors" or "Grace").

numbers, on Exhibit A to the Settlement (the "Claims"). Debtors and Claimant negotiated in good faith to reach the Settlement, and submit that it is in the best interest of the Debtors' estates for the Court to approve the Settlement in an order substantially in the form attached hereto as Exhibit 2 (the "Order").

By this motion the Debtors respectfully move this Court, pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019, for the entry of the Order approving the terms of the Settlement, and authorizing the settling parties to perform in accordance with the terms of the Settlement. In support of this motion (the "Motion"), the Debtors respectfully represent as follows:[2]

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicate for this Motion is Bankruptcy Code section 105 and Bankruptcy Rule 9019.

## BACKGROUND

3. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4. By order dated April 25, 2002, this Court set March 31, 2003, as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement or the *First Amended Joint Plan of Reorganization* in these Chapter 11 Cases, as amended, Docket nos. 19579, 20666, 20872, 20873, 21594, 24657, 25881 & 26368 (the "Plan").

asbestos claims (including all governmental claims), and medical monitoring claims [Docket No. 1960] (the "Bar Date").

5. The Claimant is a governmental entity. On March 28, 2003, prior to the Bar Date, Claimant, directly or through Claimant's Counsel, filed the Claims against the Debtors using the approved W. R. Grace & Co. Asbestos Property Damage Proof of Claim Form.

6. On September 1, 2005, the Debtors filed their *15th Omnibus Objection (Substantive)* [Docket No. 9315], in which the Debtors objected to the Claims on various grounds (collectively, "the Claims Objections"). Claimant filed responses to the Claims Objections in October 2005. After various litigation proceedings relating to the Claims Objections, Debtors and Claimant engaged in extensive negotiations regarding final resolution of the Claims. As a result of those lengthy negotiations, the Parties reached the agreements memorialized in the Settlement, which liquidates and resolves all outstanding issues related to the Claims on the terms and conditions of the Settlement.

## SETTLEMENT

7. After good faith negotiations, the Debtors and the Claimant agreed on the terms and conditions of the Settlement, which represents compromises that are in the best interest of the estates. The salient terms of the Settlement are:[3]

- Subject to Court approval of the Settlement, and the Parties' respective rights of termination, the Settlement Amount represents a final liquidation and allowance of the Claims. *See* Settlement, ¶ 1.

- The Settlement is predicated on Grace's intention for the Settlement Amount to be paid in full, in cash, without any deduction, proration, condition or offset, not later than 30 days after the Effective Date of the Chapter 11 plan, with such payment to be made, as the case may be, by an asbestos trust (including a qualified settlement trust) established by

---

[3] This summary and the terms and conditions of the Settlement are qualified in their entirety by the actual terms and conditions of the Settlement, a copy of which is attached as part of Exhibit 1. Capitalized terms used in the summary but not defined therein have the meanings ascribed to them in the Settlement.

the plan, the Reorganized Debtors, or a paying agent designated or appointed under the plan. This treatment of the Claims, as further detailed in the Settlement, is defined in the Settlement as "Claimant's Recovery." *See* Settlement, ¶ 2.

- The Claims Objections asserted against Claimant are held in suspense, without prejudice, subject to termination of the Settlement, if ever, according to its terms. *See* Settlement, ¶ 4.

- The Claimant and the Debtors release all asbestos-related claims against each other. In addition, with the exceptions set forth in Paragraph 6 of the Settlement, the Debtors, on behalf of their bankruptcy estates, release all claims that could be asserted against the Claimant under Sections 542-553 of the Bankruptcy Code. *See* Settlement, ¶¶ 5-6.

- The Settlement will terminate if it is not ultimately approved by the Court, or either party exercises its right of termination. *See* Settlement, ¶ 13.

- Claimant may terminate the Settlement and reassert the Claims as presently filed as if the Settlement had never been entered into in the event that either: (a) the Chapter 11 plan ultimately confirmed in the Bankruptcy does not provide Claimant with Claimant's Recovery; (b) the Bankruptcy is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (c) the Court approves the solicitation of acceptances of any Chapter 11 plan pursuant to Section 1125 of the Bankruptcy Code where (i) such plan does not provide Claimant with the Claimant's Recovery, or (ii) the Claimant reasonably concludes that such plan will not provide Claimant with the Claimant's Recovery; or (d) Debtors breach the Settlement. *See* Settlement, ¶ 14.

- The Debtors may terminate the Settlement in the event that: (a) the Chapter 11 plan of reorganization ultimately confirmed in the Bankruptcy: (i) is not proposed, supported or otherwise endorsed by Grace, *and* (ii) provides Claimant with treatment of its Claims that is materially more favorable than the Claimant's Recovery; or (b) the Court approves the solicitation of acceptances of any Chapter 11 plan pursuant to section 1125 of the Bankruptcy Code where: (i) the Debtors formally oppose or file an objection to confirmation of such plan, and (ii) the Debtors reasonably conclude that such plan will provide Claimant with treatment of the Claims that is materially more favorable than the Claimant's Recovery; or (c) Claimant breaches the Settlement. *See* Settlement, ¶ 15.

- If the Settlement is terminated according to its terms: (a) the Settlement thereupon will be null and void and have no further force and effect for any purpose (except as stated in the Settlement with respect to the survival of certain terms and rights of the Parties following termination); (b) the Settlement, its contents, and all negotiations and proceedings of any nature connected therewith shall be without prejudice to the rights of the Parties which accrued on or before February 22, 2011; (c) Claimant may take any and all actions in the Bankruptcy to allow and enforce the Claims (including the estimation or adjudication of the Claims in amounts greater than the Settlement Amount), and Grace may renew its prosecution of the Claims Objections (or may prosecute an estimation proceeding respecting the Claims), in each case as if the Settlement never existed; and (d) the Settlement shall not constitute or be admissible as evidence in any respect, in any action

or proceeding in the Bankruptcy or in any forum, of the allowable amount or the maximum amount of the Claims. Upon termination of the Settlement, neither Party shall be deemed in any way to have waived, released, compromised, discontinued, dismissed or otherwise settled any claims, rights, entitlements or defenses of any nature relating to the Claims or the Claims Objections as they existed on February 22, 2011. In any further litigation in the Bankruptcy between the Parties relating to the Claims or the Claims Objections, the Parties will confer regarding the necessary pre-trial procedures. *See* Settlement, ¶ 16.

- The Settlement (whether or not consummated), and any actions taken pursuant to the Settlement shall not be construed, offered or received by anyone for any purpose whatsoever, including, but not limited to:

  - in an estimation proceeding under section 502(c) of the Bankruptcy Code;

  - as, or deemed to be, evidence of a presumption, concession or an admission concerning, or as evidence of, any point of fact or law, of any alleged fault, wrongdoing or liability whatsoever, or of the truth of any allegations or statements made in the Claims Objections filed by the Debtors, responses filed by the Claimant, or in any other pleadings, papers or documents filed with respect to the Claims, any objections to the Claims, or any other claims asserted against Grace or objections thereto; or

  - as, or deemed to be, a presumption, concession or admission by Grace, or as evidence, that Grace's products are to be found or have been identified as present in the Claimant's building or other facilities.

8. In addition, as stated in the Order, notwithstanding the provisions of Paragraph 22 of the Settlement, neither the Asbestos Personal Injury Future Claimants' Representative ("PI FCR"), nor the Asbestos Property Damage Future Claimant's Representative ("PD FCR"), nor the Official Committee of Asbestos Personal Injury Claimants ("ACC"), nor the Official Committee of Asbestos Property Damage Claimants ("PD Committee") shall be limited or restricted in its rights to use, construe, offer or receive the Settlement for any purpose permitted by applicable law and/or rule, with the PI FCR, the PD FCR, the ACC, the PD Committee and the Parties preserving all rights and objections with respect thereto; provided, however, that, in the event the Settlement is terminated in accordance with its terms, neither the PI FCR, nor the PD FCR, nor the ACC, nor the PD Committee may use the Settlement, the agreements provided

for therein, or any actions taken by any of the Parties pursuant to or in connection with the Settlement to negotiate, effectuate, consummate or carry out the Settlement, or to prosecute the Motion and obtain entry of the Order, in or in connection with any proceeding to determine the allowed amount of the Claims (including, without limitation any estimation proceeding for allowance or distribution purposes).

## RELIEF REQUESTED

9. By this Motion, the Debtors seek authority, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a), to enter into and perform the Settlement and thereby settle and resolve all issues pertaining to the Claims on the terms and conditions set forth in the Settlement.

10. Claimant is a governmental unit which is subject to certain statutory requirements and/or administrative procedures respecting approval of the Settlement. The Debtors understand from Claimant that all such procedures and requirements have been completed and fulfilled such that Claimant will be able to perform the Settlement according to its terms upon approval by the Court.

## ANALYSIS

### I. BANKRUPTCY RULE 9019

11. Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Compromises and settlements are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).

12. The standard for approval of a settlement is whether the settlement is in the best interests of the estate. In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997); In re Genesis

Health Ventures, Inc., 266 B.R. 591, 620 (Bankr. D. Del. 2001). The Third Circuit has adopted a balancing test of four enumerated factors that the Court should consider in determining whether to approve a particular compromise or settlement: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). These factors apply in considering the settlement of claims against the debtor's estate as well as claims held by the estate. In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) ("[Objector's] primary argument is that Martin is only useful when analyzing a settlement of a claim belonging to the debtor, not a claim against the debtor. We disagree.").

13. In determining if a compromise or settlement is in the best interests of the estate, bankruptcy courts defer to the debtor's business judgment and approve the settlement as long as it falls above the lowest point in the range of reasonableness. In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005); In re Eastwind Group, Inc., 303 B.R. 743, 750 (Bankr. E.D. Pa. 2004); In re Neshaminy Office Building Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). The rationale for deference to the debtor's business judgment is, as formulated by Third Circuit: "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [because] '[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F.3d at 393 (quoting 9 COLLIER ON BANKRUPTCY 9019.03[1] (15th ed. 1993)).

## II. THE SETTLEMENT IS IN THE BEST INTERESTS OF THE ESTATES

14. The Martin standards are met in this case. Accordingly, the Court should approve the Settlement as being in the best interests of the estates.

A.   **Probability of Success**

15.   The Debtors believe that they have meritorious defenses that could result in disallowance or reduction of the Claims if they were adjudicated. However, litigation always involves risks and there is the possibility that adjudicating the Claims would result in decisions adverse to the Debtors, and allowance of the Claims in an amount significantly greater than the Settlement Amount.

16.   Additionally, the contested adjudication of the Claims involves a large number of complicated legal and factual issues, and Claimant strenuously contests each issue, thereby making the final outcome uncertain and unpredictable.

B.   **Complexity and Expense of Litigation**

17.   Litigation surrounding PD Claims tends to be complex and driven by a "war of experts" that is costly and lengthy. The continued litigation of the Claims would involve a variety of disputes regarding both the applicable legal standards and the factual issues, at considerable further expense to the parties and with a substantial likelihood of an appeal by either party from any future determination by this Court.

18.   Indeed, the complex legal issues involving property damage claims have already required extensive motion practice and discovery in these cases. Certain factual issues require extensive discovery that has been costly and time consuming. Such issues may include the Debtors' affirmative defense that Claimant's claims are barred by the applicable statute of limitations, expert evaluation of the alleged hazards, and *Daubert* hearings on expert testimony.

19.   Prior to entering into the Settlement, Claimant and the Debtors conducted an informal investigation into the facts of the Claims and the Claims Objections. The Debtors have had an opportunity to review, analyze and assess the Claims, and Claimant has provided the Debtors with information and documents regarding the Claims. Claimant contends, and the

Debtors deny, that the monetary value of the Claims far exceeds the Settlement Amount. The Debtors recognize, however, that the aggregate allowed amount of the Claims, if liquidated by contested proceedings before the Bankruptcy Court, could significantly exceed the Settlement Amount.

20.     Additionally, litigating the Claims would further burden the resources of the Court, the Debtors and various creditors, and could potentially result in additional, costly legal proceedings on appeal or in further Bankruptcy Court estimation or adjudication proceedings.

### C.     Paramount Interests of the Creditors

21.     The resolution of the Claims is, as the Court knows, part of an ongoing effort by the Debtors either to settle or disallow PD Claims and thereby to resolve a contentious body of claims litigation. Dealing with all of those claims, either by dismissal, adjudicated liquidation, or settlement, is necessary to complete the reorganization process. Therefore, settling the Claims is in the interest of all creditors.

22.     In light of the Debtors' experience in litigating and resolving PD Claims, the Settlement is fair and reasonable and in the estates' best interests given the expected litigation costs and the risks that the Claims would or would not be disallowed if adjudicated. For these reasons, the Settlement should be approved.

### CONCLUSION

23.     The Settlement was negotiated in good faith. In the Debtors' business judgment, the Settlement is a fair and full resolution of the Claims on the terms and conditions of the parties' agreement. Therefore, the Settlement should be approved as being in the best interests of the estates.

### NO PREVIOUS MOTION

24. No previous motion for the relief sought herein has been made to this or any other court.

### NO BRIEFING SCHEDULE

25. The Debtors respectfully submit that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference in Del. Bankr. L.R. 1001-1(b), the Debtors respectfully request that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Rules.

### NOTICE

26. Notice of this Motion has been given to: (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the Claimant. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit 2, approving the terms of the Settlement and granting such other relief as may be appropriate.

Dated: July 6, 2011

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

REED SMITH LLP
James J. Restivo, Jr., Esq.
Traci S. Rea, Esq.
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors

DOCS_DE:171319.1