**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| IN RE: | |
|---|---|
| ACandS, Inc. | Case No.: 02-12687 (JKF) |
| | **Re: D.I. 3660** |
| Armstrong World Industries, Inc. | Case No.: 00-4471 (JKF) |
| | **Re: D.I. 10721** |
| Combustion Engineering, Inc. | Case No.: 03-10495 (JKF) |
| | **Re: D.I. 3400** |
| The Flintkote Company | Case No.: 04-11300 (JKF) |
| | **Re: D.I. 5693** |
| Kaiser Aluminum Corp. | Case No.: 02-10429 (JKF) |
| | **Re: D.I. 10044** |
| Owens Corning | Case No.: 00-3837 (JKF) |
| | **Re: D.I. 20981** |
| US Mineral Products Company | Case No.: 01-2471 (JKF) |
| | **Re: D.I. 3897** |
| USG Corp. | Case No.: 01-2094 (JKF) |
| | **Re: D.I. 12617** |
| W.R. Grace & Co. | Case No.: 01-1139 (JKF) |
| | **Re: D.I. 26357** |
| Debtors. | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| IN RE: | |
|---|---|
| Mid-Valley, Inc. | Case No.: 03-35592 (JKF) |
| | **Re: D.I. 2792** |
| North American Refractories Co. | Case No.: 02-20198 (JKF) |
| | **Re: D.I. 6998** |
| Pittsburgh Corning Corp. | Case No.: 00-22876 (JKF) |
| | **Re: D.I. 8162** |
| Debtors. | |

**REQUEST OF GARLOCK SEALING TECHNOLOGIES LLC FOR**
**STATUS CONFERENCE PURSUANT TO 11 U.S.C. § 105(d)**

Garlock Sealing Technologies LLC ("Garlock") hereby respectfully requests, pursuant to section 105(d) of title 11 of the United States Code (the "Bankruptcy Code"), that this Court schedule and conduct a status conference in the chapter 11 cases (the "Bankruptcy Cases") of the above-captioned debtors (the "Debtors") to address matters relating to the: (i) *Motion of Garlock*

*Sealing Technologies LLC For Entry Of An Order, Pursuant to 11 U.S.C. § 350(b), Fed.R. Bankr. P. 3020(d), 3022, And 5010, Reopening Chapter 11 Bankruptcy Cases For The Limited Purpose Of Seeking Access To 2019 Statements* (Case No. 02-12687, D.I. 3658) (the "Motion to Reopen");[1] (ii) *Motion of Garlock Sealing Technologies LLC To Intervene For Limited Purpose Of Seeking Access To Judicial Records* (Case No. 02-12687, D.I. 3659) (the "Motion to Intervene");[2] and (iii) *Motion of Garlock Sealing Technologies LLC For Orders Authorizing Access To 2019 Statements Filed In This Court And For Related Relief* (Case No. 02-12687, D.I. 3639 and 3660) (as amended, the "2019 Motion" and together with the Motion to Reopen and Motion to Intervene, the "Garlock Motions").[3] In support of its request, Garlock respectfully states as follows:

## PRELIMINARY STATEMENT

1. Garlock filed the Garlock Motions approximately seven months ago, and a hearing on the Garlock Motions was held approximately six months ago. Since then, Garlock's need to access the 2019 Exhibits (defined below) has only become more urgent. Garlock's

---

[1] Garlock filed an identical copy of the Motion to Reopen in each of the following cases pending before the Honorable Judith K. Fitzgerald (a) in the United States Bankruptcy Court for the District of Delaware: (i) ACandS, Inc. ("ACandS") (Case No. 02-12687), (ii) Armstrong World Industries, Inc. ("Armstrong") Case No. 00-4471), (iii) Combustion Engineering, Inc. ("CEI") (Case No. 03-10495), (iv) Owens Corning ("Owens") (Case No. 00-3837), (v) US Mineral Products Company ("US Mineral") (Case No. 01-2471), and (vi) USG Corp. ("USG") (Case No. 01-2094); and (b) in the United States Bankruptcy Court for the Western District of Pennsylvania: Mid-Valley, Inc. ("Mid-Valley") (Case No. 03-35592).

[2] Garlock filed an identical copy of the Motion to Intervene in each of the following cases pending before the Honorable Judith K. Fitzgerald (a) in the United States Bankruptcy Court for the District of Delaware: (i) ACandS, (ii) Armstrong, (iii) CEI, (iv) The Flintkote Company ("Flintkote") (Case No. 04-11300), (v) Kaiser Aluminum Corp. ("Kaiser") (Case No. 02-10429), (vi) Owens, (vii) US Mineral, (viii) USG, and (ix) W.R. Grace & Co. ("W.R. Grace") (Case No. 01-1139); and (b) in the United States Bankruptcy Court for the Western District of Pennsylvania: (i) Mid-Valley, (ii) North American Refractories Co. ("North American Refractories") (Case No. 02-20198), and (iii) Pittsburgh Corning Corp. ("Pittsburgh Corning") (Case No. 00-22876).

[3] Garlock filed an identical copy of the 2019 Motion in each of the following cases pending before the Honorable Judith K. Fitzgerald (a) in the United States Bankruptcy Court for the District of Delaware: (i) ACandS, (ii) Armstrong, (iii) CEI, (iv) Flintkote, (v) Kaiser, (vi) Owens, (vii) US Mineral, (viii) USG, and (ix) W.R. Grace; and (b) in the United States Bankruptcy Court for the Western District of Pennsylvania: (i) Mid-Valley, (ii) North American Refractories, and (iii) Pittsburgh Corning.

statutory plan exclusivity period in its own chapter 11 bankruptcy cases will run in November 2011, and is not subject to further extension. Before exclusivity ends, Garlock intends to file both a plan of reorganization and a proposal for pre-trial proceedings leading to an estimation of asbestos claims. Further delay in the resolution of the Garlock Motions is likely to introduce delay and instability into this schedule and Garlock's reorganization process, which Garlock wishes to avoid.

2.   Garlock is not the only one harmed by delay in its bankruptcy case. The carrying and administration costs of Garlock's bankruptcy cases are substantial. These costs will be born, in part, by Garlock's creditors, whose distributions may diminish as the costs of administration increase. Further, potential distributions to Garlock's creditors, including asbestos personal injury and property claimants, will necessarily be delayed if Garlock cannot proceed with its plan process because the Garlock Motions remain unresolved.

3.   It also is appropriate to revisit the Motions at this time because, since the Hearing, public interest has intensified concerning potential inconsistencies between plaintiffs' exposure allegations in tort system discovery and their exposure allegations when pursuing bankruptcy law remedies. On September 9, 2011, the Subcommittee on the Constitution in the Judiciary Committee of the U.S. House of Representatives convened a hearing (the "Congressional Hearing") titled "How Fraud and Abuse in the Asbestos Compensation System Affect Victims, Jobs, the Economy, and the Legal System." One of the topics aired at this hearing was whether asbestos claimants are taking advantage of confidentiality provisions in trust distribution procedures ("TDP") for 524(g) trusts ("Trusts") to make inconsistent representations in the tort system and before Trusts concerning their exposure history.

4.     James L. Stengel, Esq., from Orrick, Herrington & Sutcliffe LLP, submitted a written statement in which he recounted three incidents where asbestos claimants failed to disclose in response to proper tort system discovery exposure evidence that they had already submitted to Trusts and that was inconsistent with positions they were taking in the tort litigation.  Statement at 16-18 (attached hereto as **Exhibit A**).  Such practices, according to Mr. Stengel, harm defendants' ability to allocate liability to Trusts at verdict, obtain credit for settlements with Trusts, and use evidence of Trust exposure to prove alternative causation and avoid liability altogether.  *Id.* at 20-21.

5.     The Garlock Motions do not seek exposure evidence submitted to Trusts, but rather documents filed in this Court containing evidence of claimants' claims and exposures. But the underlying issue is ultimately the same one aired in the Congressional Hearing and in Mr. Stengel's written statement: are claimants taking inconsistent positions concerning their exposures when pursuing their tort and bankruptcy law remedies, and to what extent?

6.     As of the date hereof, this Court has not entered orders granting or denying the Garlock Motions. As a result and to advance the expeditious consideration of matters critical to the administration of Garlock's bankruptcy case, Garlock has filed this request for a status conference.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue for this proceeding and this Request is proper in each respective district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 105(d) of the Bankruptcy Code.

## BACKGROUND

8. Garlock is a manufacturer of sealing products, headquartered in Palmyra, New York. The company formerly manufactured asbestos-containing products, principally gaskets and packing containing encapsulated asbestos, and has been a defendant in lawsuits alleging asbestos-related personal injury for over 35 years.[4]

9. In 2000, Garlock's position in asbestos litigation changed significantly, when the most prominent defendants in asbestos litigation began to file for bankruptcy. Between 2000 and 2004, dozens of companies filed (the "Bankruptcy Wave").[5]

10. The consequences of the Bankruptcy Wave eventually pushed Garlock into bankruptcy. Garlock filed its own petition under chapter 11 of the Bankruptcy Code on June 5, 2010. The case is currently pending in the United States Bankruptcy Court for the Western District of North Carolina before the Honorable George R. Hodges.

11. As a result of Garlock's need to obtain information related to estimation and other matters in its bankruptcy case, on January 10, 2011, Garlock filed the 2019 Motion

---

[4] Additional facts related to Garlock, its bankruptcy filing and its relationship to the Debtors' cases are provided in the Garlock Motions and the attachments thereto.

[5] The companies included Babcock & Wilcox Co. (2000); Pittsburgh Corning Corp. (2000); Owens Corning Fiberglas/Fibreboard (2000); Armstrong World Industries (2000); W.R. Grace & Co. (2001); USG Corp. (2001); Turner & Newell, PLC/Federal-Mogul Corp. (2001); GAF (2001); Skinner Engine Co. (2001); E.J. Bartells (2001); United States Minerals Products (2001); Murphy Marine Services (2001); Insul Co. (2001); Swan Transportation (2001); North American Refractories Corp. (2002); Kaiser Aluminum (2002); Harbison-Walker (2002) ; A.P. Green (2002); Plibrico Co. (2002); Shook & Fletcher (2002); Porter-Hayden Co. (2002); Artra Group, Inc. (2002); Special Metals Corp. (2002); Asbestos Claims Management Corp. (2002); ACandS (2002); JT Thorpe Co. (2002); A-Best Products (2002); Western MacArthur/Western Asbestos (2002); C.E. Thurston (2003); Combustion Engineering (2003); Congoleum Corp. (2003); Mid-Valley (Halliburton subsidiaries) (2003); Muralo Co. (2003); Flintkote Co. (2004); Oglebay Norton Co. (ONCO) (2004); Special Electric (2004); Quigley Co. (2004); Utex Industries (2004); API, Inc. (2005); Asarco (2005); Brauer Supply Co. (2005); Dana Corporation (2006); ABB Lummus Global (2006); and Lloyd E. Mitchell Co. (2006).

which seeks to obtain access to exhibits to statements filed pursuant to Bankruptcy Rule 2019 ("2019 Exhibits"), but kept off the public docket pursuant to court order.[6]

12.     For the several reasons described in the 2019 Motion and at the hearings on the 2019 Motion, Garlock requires the 2019 Exhibits for use in its own bankruptcy case. The 2019 Exhibits are relevant to show the extent to which claimants against Garlock may have been taking inconsistent positions concerning their exposures to the Debtors' products during tort system discovery and in these cases. As required by Rule 2019, in the 2019 statements the law firms certify explicitly that certain of their clients (identified on the 2019 Exhibits) are creditors of the Debtor and that such clients have authorized the law firms to appear in the cases for them. Many of the 2019 statements explicitly state that the claimants on the 2019 Exhibits were exposed to the Debtors' products. To the extent claimants may have been taking inconsistent positions concerning their exposures in violation of applicable discovery rules, settlements they received should not be used to estimate Garlock's current and future asbestos liability, as the Official Committee of Asbestos Personal Injury Claimants (the "Committee") in Garlock's bankruptcy case has maintained.[7]

13.     The 2019 Exhibits are also relevant to estimation for other reasons. For example, the 2019 Exhibits will help Garlock's experts better understand the total number of asbestos claims over time. The Debtors in these twelve cases were the most prominent defendants in asbestos litigation for many years, and together probably received all or almost all of the claims asserted in the litigation. Thus, the names of the individuals who authorized their

---

[6]   The 2019 Motion was later refiled on February 18, 2011, following an initial hearing on the motion out of an abundance of caution.

[7]   Garlock contends that its past settlements are not admissible at estimation (pursuant to Federal Rule of Evidence 408 and other applicable law) and will object to their admission. But until Garlock's objection has been sustained, Garlock has an intense interest in accessing evidence concerning whether its past settlements were inflated, and thus rebutting the Committee's position.

6

lawyers to represent them in these cases on account of alleged asbestos claims would help the experts in Garlock's case better understand the total number of asbestos claims asserted in various disease categories during the years covered by the bankruptcy cases.

14.     Various objections and responses to the Garlock Motions were submitted, and, on March 28, 2011, this Court held a lengthy evidentiary hearing (the "Hearing") on the Garlock Motions and the objections thereto. At the conclusion of the Hearing, the Court closed the record and took the Garlock Motions under advisement.

## RELIEF REQUESTED

15.     Pursuant to section 105(d) of the Bankruptcy Code, Garlock respectfully requests that this Court schedule and convene a status conference at its earliest opportunity to address matters relating to the Garlock Motions. Garlock believes a status conference would be helpful to address the manner and timing of this Court's issuance of its disposition with respect to the Garlock Motions and to address any further questions the Court may have with respect to such motions.

## BASIS FOR RELIEF

16.     Section 105(d) of the Bankruptcy Code provides for this Court to hold status conferences as necessary and appropriate to the administration of Bankruptcy Cases and states, in pertinent part, as follows:

> The court, on its own motion or on the request of a party in interest –
>
> (1)     shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and
>
> (2)     unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate

>to ensure that the case is handled expeditiously and economically . . . .

11 U.S.C. § 105(d).

17. Garlock submits that a status conference pursuant to Bankruptcy Code section 105(d) is warranted to ensure adjudication of Garlock's right of access to the 2019 Exhibits without delay. As explained above, Garlock's need to access the 2019 Exhibits has deepened since the date of the Hearing.

18. As set forth in the 2019 Motion, the public's right to access documents filed in court is a well-recognized and fundamental principle of Anglo-American justice. The publicity of court filings serves important purposes and is "inherent in the nature of our democratic form of government." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1069 (3d Cir. 1984). It "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court"; "diminishes possibilities for injustice, incompetence, perjury, and fraud"; "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness"; and "helps assure that judges perform their duties in an honest and informed manner." *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001).

19. In addition, the monitoring function of the public right of access requires prompt action by the courts because "[t]he public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 127 (2d Cir. 2006). Accordingly, the public right of access to documents filed in court inherently calls for a prompt adjudication to properly vindicate the underlying purposes of the doctrine.

20. Garlock believes that it made a convincing record at the Hearing to support its access to these documents. The parties opposing access bear the burden of proof, but failed to introduce any evidence at all to show that "the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Goldstein*, 260 F.3d at 194 (punctuation and citation omitted).

21. Further, events that have transpired since the Hearing have continued to demonstrate the intense public interest in the information currently shielded from public view. As noted above, within the last month, a Congressional Hearing was held concerning, among other things, allegations of inconsistencies between statements asbestos claimants make when pursuing tort remedies and when pursuing bankruptcy remedies.

22. Garlock is sensitive to the Court's busy docket. However, this Court took the Garlock Motions under advisement six months ago after the completion of extensive motion practice and vigorous oral argument. Since that time, Garlock's need to access the 2019 Exhibits has increased and further delay in adjudication of the Garlock Motions undermines not only Garlock's ability to successfully reorganize, but the public right of access in general. In this context, the adage that justice delayed is justice denied rings true.

23. Based on the foregoing, Garlock submits that a status conference is warranted to address the manner and timing of this Court's issuance of its disposition with respect to Garlock Motions and to address any further questions the Court may have with respect to such motions.

WHEREFORE, Garlock respectfully requests that the Court: (a) schedule and conduct a status conference at its earliest opportunity; and (b) grant such other and further relief as this Court deems just and proper.

Dated: October 3, 2011

MORRIS, NICHOLS, ARSHT & TUNNELL LP

*/s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (DE Bar No. 3553)
Erin R. Fay (DE Bar No. 5268)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Tel: 302-658-9200
Fax: 302-658-3989

- and -

DEL SOLE CAVANAUGH STROYD LLC

*/s/ Matthew T. Logue*
Arthur H. Stroyd, Jr. (PA ID No. 15910)
Matthew T. Logue (PA ID No. 87416)
The Waterfront Building
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: 412-261-2393
Fax: 412-261-2110

- and –

ROBINSON, BRADSHAW & HINSON, P.A.
Garland S. Cassada
Richard C. Worf, Jr.
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Tel: 704-377-8317
Fax: 704-373-3917

**Attorneys for Garlock Sealing Technologies, LLC**