# IN THE UNITED STATES BANKRUPTCY COURT
## FOR DISTRICT OF DELAWARE

IN RE:

| | |
|---|---|
| AcandS, Inc.<br>        Debtor(s) | Bankruptcy No. 02-12687-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 3639, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 3658, Motion to Reopen**<br>**Related to Doc. No. 3659, Motion to Intervene**<br>**Related to Doc. No. 3660, Amended Motion for**<br>**Access to 2019 Statements** |
| Armstrong World Industries, Inc.<br>        Debtor(s) | Bankruptcy No. 00-4471-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 10698, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 10719, Motion to Reopen**<br>**Related to Doc. No. 10720, Motion to Intervene**<br>**Related to Doc. No. 10721, Amended Motion for**<br>**Access to 2019 Statements** |
| Combustion Engineering, Inc.<br>        Debtor(s) | Bankruptcy No. 03-10495-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 3380, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 3398, Motion to Reopen**<br>**Related to Doc. No. 3399, Motion to Intervene**<br>**Related to Doc. No. 3400, Amended Motion for**<br>**Access to 2019 Statements** |
| The Flintkote Company, *et al.*<br>        Debtor(s) | Bankruptcy No. 04-11300-JKF<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 5606, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 5692, Motion to Intervene**<br>**Related to Doc. No. 5693, Amended Motion for**<br>**Access to 2019 Statements** |

1

| | |
|---|---|
| Kaiser Aluminum Corp., *et al.*<br>Debtor(s) | Bankruptcy No. 02-10429-JKF<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 10009, Motion for Access to 2019 Statements**<br>**Related to Doc. No. 10041, Motion to Intervene**<br>**Related to Doc. No. 10044, Amended Motion for Access to 2019 Statements** |
| Owens Corning<br>Debtor(s) | Bankruptcy No. 00-3837-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 20954, Motion for Access to 2019 Statements**<br>**Related to Doc. No. 20979, Motion to Reopen**<br>**Related to Doc. No. 20980, Motion to Intervene**<br>**Related to Doc. No. 20981, Amended Motion for Access to 2019 Statements** |
| United States Mineral Products Company<br>Debtor(s) | Bankruptcy No. 01-2471-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 3878, Motion for Access to 2019 Statements**<br>**Related to Doc. No. 3895, Motion to Reopen**<br>**Related to Doc. No. 3896, Motion to Intervene**<br>**Related to Doc. No. 3897, Amended Motion for Access to 2019 Statements** |
| USG Corp., *et al.*<br>Debtor(s) | Bankruptcy No. 01-2094-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 12596, Motion for Access to 2019 Statements**<br>**Related to Doc. No. 12615, Motion to Reopen**<br>**Related to Doc. No. 12616, Motion to Intervene**<br>**Related to Doc. No. 12617, Amended Motion for Access to 2019 Statements** |
| W.R. Grace &. Co., *et al.*<br>Debtor(s) | Bankruptcy No. 01-1139-JKF<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 26053, Motion for Access to** |

2

**2019 Statements**
**Related to Doc. No. 26356, Motion to Intervene**
**Related to Doc. No. 26357, Amended Motion for**
**Access to 2019 Statements**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| Pittsburgh Corning Corporation<br>Debtor(s) | Bankruptcy No. 00-22876-JKF<br>Chapter 11<br>**Related to Doc. No. 8096, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 8161, Motion to Intervene**<br>**Related to Doc. No. 8162, Amended Motion for**<br>**Access to 2019 Statements** |
| North American Refractories Company<br>Debtor(s) | Bankruptcy No.  02-20198-JKF<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 6944, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 6997, Motion to Intervene**<br>**Related to Doc. No. 6998, Amended Motion for**<br>**Access to 2019 Statements** |
| Mid-Valley, Inc., et al.<br>Debtor(s) | Bankruptcy No. 03-35592-JKF (CLOSED)<br>Chapter 11<br>(Jointly Administered)<br>**Related to Doc. No. 2770, Motion for Access to**<br>**2019 Statements**<br>**Related to Doc. No. 2789, Motion to Reopen**<br>**Related to Doc. No. 2790, Motion to Intervene**<br>**Related to Doc. No. 2792, Amended Motion for**<br>**Access to 2019 Statements** |

## MEMORANDUM OPINION[1]

---

[1]The court's jurisdiction was not at issue.  This Memorandum Opinion constitutes our

(continued...)

3

Before the Court are three motions filed by Garlock Sealing Technologies, Inc., (a Chapter 11 debtor in the Western District of North Carolina, Case No. 10-31607), related to statements filed under Fed.R.Bankr.P. 2019 in the above-captioned cases. Garlock filed motions for access to Rule 2019 statements and motions to intervene in each of the above cases.[2] In the cases that are closed it also filed motions to reopen.[3] Under the circumstances of this case, we find that Garlock is not entitled to intervene in these cases or to access the 2019 statements at this time. Therefore, it is not appropriate to reopen the cases that are closed. All three motions, therefore, will be denied.

Before we address the substance of the 2019 motion, we first examine whether Garlock has standing to intervene in these cases. To satisfy Article III (constitutional) standing[4] "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228

---

[1](...continued)
findings of fact and conclusions of law.

[2]Garlock initially included the requests to intervene and reopen in its motion for access to the 2019s. This court required that separate motions to intervene and to reopen be filed as they are separate requests for affirmative relief.

[3]Seven of the ten cases are closed, as identified in the caption: ACandS, Armstrong World Industries, Inc., Combustion Engineering, Inc., Owens Corning, USG Corporation, United States Mineral Products Company, (all filed in the District of Delaware) and Mid-Valley, Inc. (filed in the Western District of Pennsylvania).

[4]Bankruptcy Standing is "at least" as broad as Article III standing. *In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 211 at n.25 (3d Cir. 2011).

4

(3d Cir. 2010), *cert. denied* __ U.S. __, 131 S.Ct. 1808 (2011), citing *Friends of the Earth, Inc. v.*

*Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders*

*of Wildlife,* 504 U.S. 555, 560-61 (1992). *See also Freeman v. Corzine,* 629 F.3d 146, 153 (3d

Cir. 2010). The injury must be "palpable and distinct" and "must affect the plaintiff in a personal

and individual way," even if the injury is "widely shared." 629 F.3d at 153  (citations omitted).

There must be a "substantial likelihood" that the injury can be remedied by a judicial decision.

*Id.*

In addition, prudential standing must be established. Prudential standing requires (1) that

a litigant assert its own interests, (2) that courts refrain from adjudicating abstract questions

amounting to generalized grievances and (3) that the litigant's interests are "arguably within the

zone of interests intended to be protected." *Id.* at 154.

## STANDING

### *Harm*

As noted, Garlock has filed its own bankruptcy case. Garlock asserts that it "likely is or

was a party in interest in" these bankruptcy cases and "likely is or was a party" or party in interest

to personal injury cases in the tort system in which various debtors were sued because it "was

routinely sued in asbestos personal injury cases with the debtors." Amended Motion of Garlock

Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in This

Court and for Related Relief at unnumbered page 3 (hereafter "2019 Motion"), at unnumbered

page 3 and ¶¶ 63, 65, 80. Garlock is no longer a defendant in the tort system and has never filed

a claim in any of the bankruptcy cases.[5] Thus, it has never established that it is or was a party or

a party in interest in these bankruptcy cases.

*Injury*

The first factor the court must analyze is injury. Garlock has not shown that it has

suffered any injury, much less a concrete or particularized harm or injury that is imminent. In

fact, its allegations of harm are entirely a matter of conjecture and speculation. That is, Garlock

contends that it needs the information to be able to prove that asbestos plaintiffs' law firms were

concealing clients' exposure to the asbestos products of other bankruptcy debtors for the purpose

of inflating settlement values against Garlock in the tort system, *id*. at ¶ 10, and that the 2019s

show the law firms' knowledge of which clients were exposed to which debtor's products and

constitute verification under penalty of perjury that the law firms' clients were creditors in these

cases, not against Garlock. *Id*. at ¶ 14.[6] In other words, Garlock raises the specter of a

nationwide conspiracy by every law firm involved in each of these bankruptcy cases, every

attorney who represents asbestos tort victims in those firms, and every asbestos personal injury

victim (whether or not that victim was exposed to Garlock's products) to defraud Garlock,

---

[5]Garlock previously filed a 2019 motion in *Pittsburgh Corning Corporation*, Bankr. No. 00-22876, W.D. Pa., at Doc. No. 7159, and a motion for expedited hearing at Doc. No. 7187. Garlock's motion was denied by order dated March 24, 2010, Doc. No. 7579, for reasons substantially similar to those explained *infra*.
    Garlock also objected (Doc. No. 7045) to the Third Amended Plan (Doc. No. 6412) filed in *Pittsburgh Corning* and to the First Amended Joint Plan as Modified Through December 23, 2010 (Doc. No. 24657), filed in *W.R. Grace & Co., et al.*, Bankr. No. 01-1139 (D.Del.) (objection at Doc. No. 21795). Prior to filing the 2019 motion and the plan objections, Garlock was not involved in any of the cases in which it has filed the current motions.

[6]We note that the mere inclusion of a client on a 2019 in an asbestos case does not necessarily mean that the client filed or will file a claim or that any claim will be allowed once presented to the trust.

without identifying even one of its creditors whose 2019 information it seeks.

Garlock says it needs the information with respect to causes of action it "may have" under RICO (Racketeer Influenced and Corrupt Organizations, 18 U.S.C. §1961 *et seq.*). By its own terms, the alleged action it "may have" is speculative. Garlock does not assert that it <u>has</u> suffered from racketeering activities. Significantly, no such actions have been filed. Garlock is no stranger to the tort system as to asbestos claims, as it admitted having been a co-defendant for many years. Thus, by virtue of its alleged status as a "co-defendant," it has been aware of who the claimants against it were, that the claimants were also suing other asbestos defendants, and the identity of those co-defendants. Garlock settled cases while in the tort system and those settlements obviously resolved what it determined was in its own best interests and what the opposing litigants would accept. Garlock now wants to revisit its past practices in dealing with asbestos tort plaintiffs who asserted claims against it; it has made clear that its intent is to "prove" that it would not have made the settlement payments it actually made if it had known that those it settled with were asserting claims against other asbestos defendants/bankruptcy debtors. This argument is disingenuous. Garlock's settlement decisions were not made in a vacuum or in ignorance of the tort litigation or the bankruptcy landscape. *See, e.g.,* Garlock's Amended Motion for Access to 2019 Statements (Doc. No. 5693 in *Flintkote*) at ¶ 24 ("Garlock is investigating the possibility of damages actions against plaintiffs' firms or claimants to recoup settlements obtained through the concealment of exposure evidence"); ¶ 82 (the 2019 statements "will help show the extent to which plaintiffs' firms concealed exposure evidence in order to inflate Garlock's settlement values").

Garlock has not alleged an injury at all.  It cannot undo or modify decades of settlements

by seeking to extract information which, as a non-party to these cases, it would not have had access to in the tort system.[7] As we explained on the record in *Pittsburgh Corning*,

> To the extent that there is a discreet [*sic*] piece of litigation that at some point in the future means that Garlock needs access, this is without prejudice, you're raising that in that litigation at that time because you may file a motion for access regarding a particular discreet [*sic*] piece of litigation. But to fashion some wholesale idea that there is large, I'll use the word fraud because I think that's essentially what you're suggesting, fraud in either the tort system or here without any evidence of that in this case, is simply uncalled for and you've got to prove it. So you show me on the ballots or a ballot where an individual is filing a claim here and has made a representation in the tort system that they have no such claim here and then I'll reconsider.

Bankr. No. 00-22876, Doc. No. 7422, Tr. 1/13/2010, at 46-47. This court further concluded that if Garlock could identify a specific individual who is claiming exposure to asbestos related to Garlock and/or Pittsburgh Corning and had earlier denied such exposure, Garlock could seek relief from this court. *Id.* at 50. At the time, the court was referring to actions against Garlock in the tort system but the same rationale applies to a claimant against Garlock in Garlock's bankruptcy.

*Injury Redressable by Judicial Decision*

Assuming, *arguendo*, that Garlock has an actual injury, permitting access to the 2019 statements will not redress the harm or even lead to redress because 2019 statements are representations by counsel to a court as to who their clients are. The statements are not claims,

---

[7]Moreover, Garlock's use of the word "likely" to describe its status is misleading. It either is a party in interest or party or it is not. We find it is not a party or a party in interest in any of the cases. Although it objected to plan confirmation in *Pittsburgh Corning*, and *W.R. Grace* based on its status as an alleged co-defendant with these entities in the tort system, it has not filed a proof of claim in those or any of the other cases.

nor are they ballots cast with respect to a plan of reorganization, which are assertions of claims. Permitting access to the statements by strangers to the bankruptcy cases in which they were filed will not redress anything. If Garlock has grounds with respect to specific creditors or their law firms in its own bankruptcy case, it can file a new motion setting forth the facts. To date it has not identified a creditor in its case who also was a creditor in one of these bankruptcy cases and whose exposure evidence was allegedly concealed. Garlock simply surmises it "likely is or was" a party or party in interest in these bankruptcy cases where the facts of the cases clearly establish that it was not, inasmuch as it never filed a claim in any of them.

### *Prudential Standing*

In light of the foregoing, we find that Garlock does not have prudential standing here. Although it asserts its own interests, it has not alleged other than an imagined harm and does not meet the "zone of interest" test for prudential standing. That test denies relief if the interest asserted is "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010). The purpose of requiring statements to be filed under Rule 2019 is completely alien to what Garlock is attempting to achieve here, as we explain below. Further, Garlock's action to examine the 2019 statements filed by every law firm, whether or not the firm's clients have claims against Garlock, is as generalized a grievance as can be asserted in these circumstances.

For these reasons we find that Garlock does not have standing to intervene in these cases.

## **MOTION TO REOPEN**

We further note that the consequences to the debtors of reopening the closed cases, some

having emerged from bankruptcy after nearly a decade, would be enormous. The negative

publicity with the likely effect on stock and bond prices for those publicly traded entities,

employee morale, resulting management issues and administrative burdens in complying with

Bankruptcy Code filing requirements regarding operating reports and disclosure of information,

and U.S. Trustee fees and expenses attendant to the bankruptcy system, cannot be justified in

these circumstances where Garlock did not appear or participate while the cases were open and

active and did not seek access to the 2019s during the life of the cases. Similarly, the cases that

are still open are nearing the end of their bankruptcy adventures with plans either already

confirmed or confirmation pending (the debtor in *Pittsburgh Corning* still has an opportunity to

file an amended plan and the plan confirmation hearing in *Flintkote* has concluded with post-trial

briefing pending). For these reasons, and because Garlock has no standing, there is no basis to

reopen the closed cases and the motion to reopen is denied.

**THE 2019 MOTION**

*Right of Access*

        We turn now to the 2019 Motion itself. We find that Garlock is not entitled to access the

2019 statements at this time under the circumstances, or for the reasons it seeks access.

        Rule 2019 of the Federal Rules of Bankruptcy Procedure provides that, except with

respect to a committee appointed under §1102 or §1114 of the Bankruptcy Code,

> (a) ... every entity or committee representing more than one
> creditor ... shall file a verified statement setting forth (1) the name
> and address of the creditor ...; (2) the nature and amount of the
> claim or interest and the time of acquisition thereof unless it is
> alleged to have been acquired more than one year prior to the filing
> of the petition; (3) a recital of the pertinent facts and circumstances
> in connection with the employment of the entity ..., and (4)  with

reference to the time of the employment of the entity, ... the
amounts of claims or interests owned by the entity, ... the times
when acquired, the amounts paid therefor, and any sales or other
disposition thereof. The statement shall include a copy of the
instrument, if any, whereby the entity . . . is empowered to act on
behalf of creditors ...

Rule 2019 is derived from §§209 to 213[8] of the Bankruptcy Act of 1898 ("the Act"),

which were in effect nearly a century before §524(g) of the Bankruptcy Code was adopted. The

Rule was designed to apply to financial transactions as a "comprehensive regulation of

representation in Chapter X cases" (corporate reorganizations under the Bankruptcy Act of

1898). 13A Collier on Bankruptcy, ¶ 10-211.01 (14th ed. 1976). Under the Bankruptcy Act of

1898 the rule was directed to individual security holders, many of whom were "perhaps far

removed from the reorganization court . . . and large numbers of the security holders may be

persons of small means holding securities in small amounts." 6 Collier on Bankruptcy, at 1727,

¶ 9.28 (14th ed. 1977). The implementation of the rule recognized that many such creditors and

stockholders would find it difficult to protect their interests on their own and could not afford to

hire counsel. For that reason, "Chapter X permits unlimited creditor and stockholder

representation by authorized persons or committees." *Id.* at 1727-28. However, in order to guard

---

[8]These sections were replaced by Rule 10-211 of the Act. Collier on Bankruptcy, Volume
6, at 1730, ¶9.28. The rule was "a comprehensive regulation of representation in a Chapter X
case" and gave the court not only "extensive control over representative action in Chapter X
cases, but ... also furnished the essential information with which to exercise that control." *Id.*
The "scheme of Chapter X [was] to provide 'a routine method of advising the court and all
parties in interest of the actual economic interest of all persons participating in the proceedings.'"
*Id.* at 1734, ¶9.29 (citation and footnote omitted). Garlock was not a participant in any of the
cases and attempted to appear in only two of them. As noted, its 2019 motion in *Pittsburgh
Corning* and its objections to the plans in *Pittsburgh Corning* and *W.R. Grace* were rejected.
Under the rules of the 1898 Act, as today, the purpose of the rule is to advise the court that
counsel is participating in the case and has the authority of its multiple clients to do so.

against "many undesirable practices which often flourished," *id.* at 1728, the rule provided for judicial control over those representatives and required the filing of what are now called 2019 statements. *Id.* at 1729.

In the context of bankruptcy asbestos personal injury cases, when a 2019 is filed, a lawyer typically has a number of clients who have been, or assert that they have been, exposed to asbestos and who often may have sustained those exposures in multiple contexts. For example, an employee of one company may have worked with products of multiple asbestos manufacturers, producers, or distributors or may have worked for more than one asbestos company. In addition, individuals will often seek legal advice notwithstanding the absence of disease or symptoms, simply because of the possibility of exposure and because the latency period for certain asbestos diseases can be decades. Thus, notwithstanding the use of the word "creditor" in Rule 2019, individuals seeking legal counsel with respect to asbestos exposure may or may not have current claims and may or may not ever qualify as a claimant under§524(g). Nonetheless, they are represented by an attorney who is required to file a 2019 statement listing all those he represents who are or may be claimants, even if the claims are never allowable or allowed.

Statements under 2019 are <u>attorney</u> statements of authority to represent multiple clients as listed thereon. They are not claims and are not affirmative statements by the clients themselves.[9]

_____

[9]Garlock also insists that the 2019s will show when the law firms' clients had been exposed to asbestos-containing products and therefore will show the extent to which the firms were concealing evidence of exposure for the purpose of inflating Garlock's settlement values. 2019 Motion at ¶ 23. The date of acquisition of a "claim" is not required to be stated on a 2019 unless acquired within one year prepetition and, even then, the date is the date of the claim against the <u>debtor</u>, not the date of a claim against any other entity, including Garlock.

Counsel are in a predicament.  If they fail to file the statements (or exclude a client who has not yet but eventually does assert a claim against the debtor, or neglect to amend a 2019 when taking on a new client or losing a client), counsel may face substantial penalties that could prejudice their clients.  For example, Rule 2019 provides that if the court finds a failure to comply with Rule 2019(a) "or with any other applicable law regulating the activities and personnel of any entity . . . the court may refuse to permit that entity . . . to be heard further. . . ."  The court may also "hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity" that has not complied.  Even from the enumerated penalties, it is clear that the Rule applies to regulate conduct in the specific bankruptcy case and no other.

Rule 2019 is not a discovery tool but is to ensure that plans are negotiated and voted on by those authorized to act on behalf of real parties in interest in a case.  *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559 (D.Del. 2005); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 167 (D.N.J. 2005).  The 2019 statements are not, and do not substitute for, proofs of claim or ballots of creditors who vote on a plan of reorganization.  In the *Pittsburgh Corning* case[10] this court heard a similar 2019 motion filed by Garlock before the current 2019 motions were filed.  We explained:

> A 2019 statement is a statement by a lawyer and it says these are the people I represent in this case.  That's it.  It's doesn't give you any information about what evidence the clients have in support of their claims and it doesn't tell you whether the lawyer actually is ultimately even going to file a claim in the case or is going to file a ballot in the case.  So let's assume some lawyer has a list of clients wanting to make sure that he doesn't get faulted for being under inclusive, but he hasn't made any decisions at all as to whether those claimants will ever do anything in this case, much less file a

---

[10]*In re Pittsburgh Corning Corporation*, Bankr. No. 00-22876.

> proof of claim or anything else, and then the only decision that
> claimants have made, the clients and the lawyer for those clients, is
> whether or not they have enough of a claim in this case that they
> want to vote and that's in the ballot material.

*In re Pittsburgh Corning Corporation*, Bankr. No. 00-22876, Doc. No. 7422, Tr. 1/13/2010, at

38. In *Pittsburgh Corning*, Garlock's motion was denied without prejudice so that if and when

Garlock identified a specific creditor of Garlock's and established a need for information in the

2019 statements about that creditor, this court could consider any motion by Garlock for access

to the information in the applicable 2019(s).[11]

Garlock has, in essence, repeated what it sought in *Pittsburgh Corning* against all of the

debtors captioned herein, yet failed to identify even one of its creditors for which it seeks

information. Rather, Garlock demands production of hundreds, if not thousands, of 2019s filed

by every lawyer in each of these cases, even though it has never entered an appearance or

participated in those cases. Many are now closed and some have been closed for years.

Moreover, because a claim held by an asbestos personal injury victim is highly intimate in nature

and would not be disclosed unless and until, at the earliest, a complaint is filed in the tort system

---

[11]In denying Garlock's motion in *Pittsburgh Corning* the court said at the January 13,
2010, hearing:

> The purpose [of requiring 2019 statements] is to make sure that
> the entities who vote in this case have actually been identified and
> somebody makes the comparison to determine that in fact the law
> firm that purports to represent that party represents that party. And
> the ballots give you the same information, it tells you who votes.

Bankr. No. 00-22876, Doc. No. 7422, Tr. 1/13/2010, at 46.

14

(or, in the bankruptcy arena, unless and until a proof of claim is filed),[12] or a ballot is filed with respect to the plan of reorganization,[13] the details of the putative creditor's interests have been kept from general public view to retain and protect privacy. That is, because of the purpose of the 2019 statement, it is filed of record but the details of any specific personal entry are kept confidential.

In some cases over which this court has presided, access to 2019s was provided for comparison with ballots cast to ensure that those voting actually represented claimants. This access was provided to parties in the case itself, not to strangers to the case who appeared years after the fact to demand access. *See In re USG Corporation*, Bankr. No. 01-2094 (Del.), Doc. No. 10345, Tr. of 2/21/06 at 22, 122-23 (to the extent counsel for the property damage committee may want to investigate votes, he could examine the 2019s upon execution of a proper confidentiality agreement).[14]

Garlock contends that as a member of the public it is presumptively entitled to the information on the exhibits to the 2019 statements. The right of the public to access judicial records is "to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993), cited by *U.S. v. Holy Land Foundation for Relief and Development*, 624 F.3d 685, 690 (5th Cir. 2010).

---

[12]Usually in asbestos cases proofs of claim regarding asbestos personal injury are not required.

[13]When submitting a vote on the plan the nature of the claim must be attested to.

[14]In *USG* this court also declared that if a 2019 was not filed, counsel could not cast a vote at plan confirmation. Tr. lf 2/21/06 at 45.

The requirement that counsel establish their authority to represent clients they list in their 2019s serves that purpose in the particular bankruptcy case. That access to the individuals' personal details is restricted is not inconsistent with the public's right of access. It is well established that the right of access is not absolute or unlimited and these limitations are applicable here. *See "Limitations on the Right of Access," infra.*

Thus, the restrictions on viewing 2019s do not intrude on any right of access. In *In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001), the court discussed the right of public access in class action cases where members of the public are also plaintiffs in the class action. The court noted that "the right of access diminishes the possibility that 'injustice, incompetence, perjury, [or] fraud' will be perpetrated against those class members who have *some stake in the case* but are not at the forefront of the litigation." 260 F.3d at 193 (emphasis added). In these cases Garlock has no stake. Its request is not related to anything in the cases themselves.

*11 U.S.C. §107*

Garlock argues that the information on the 2019s is not protected from disclosure under 11 U.S.C. §107 because it is not commercial information. Section 107 is not limited solely to commercial information. Rather, it permits the court "for cause, [to] protect an individual, with respect to [certain] types of information to the extent the court finds that disclosure . . . would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c). This court previously made the determination, in *In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D.Del. 2005), affirmed on appeal, that disclosure would risk

injury to the privacy[15] interests of those listed in the 2019s when it decided that the 2019s

themselves would not be placed on the public docket.[16]  *See In re Kaiser Aluminum Corp.*, 327

B.R. 554 (D.Del. 2005).

Garlock's reliance on *In re Alterra Healthcare Corp.*, 353 B.R. 66 (Bankr.D.Del. 2006),

in support of its motion is misplaced. *Alterra* involved a challenge by a newspaper on First

Amendment grounds to a seal order regarding nine tort settlements. Three settlements previously

had been filed not under seal. The newspapers asserted the importance of the public knowing

about the extent of abuse and neglect at a nursing home because the knowledge would aid the

public in its evaluation of the effectiveness of government regulation of such facilities. They

contended that information in the settlements would show the impact of the debtor's financial

condition on the alleged neglect of its residents and would permit the public to gauge the merits

of the settled claims. The court found that the newspapers had no constitutional right of access to

the sealed statements because the allegations of abuse and neglect were contained in the

complaints filed of record. Moreover, the court recognized that because parties settle cases for

many reasons, the merits of different claims cannot be assessed by the difference in settlement

amounts. The court permitted access under §107 of the Bankruptcy Code, however, rejecting the

debtor's argument that information was confidential commercial information that was protectable

---

[15]We recognize that challenges to confidentiality orders can be made "long after a case
has been terminated," *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994), but one
asserting a right to access is not entitled to it if the purpose for which access is sought is
improper. *Id.* at 782, n.10.

[16]We determined that the information would be filed with the Clerk but not placed on the
public electronic docket system because of the great potential for abuse of personal (medical)
information and identity theft (because of the identifying information included on the 2019s).

under §107.

The §107 analysis of *Alterra* does not apply here inasmuch as *Alterra* relied on §107(a)

and (b) and it is subsection (c) that is operative in the cases before us. Here, the 2019s are not

sealed, they simply are not placed on the public dockets based in part on §107(c) which permits

the court to protect an individual with respect to "[a]ny means of identification"[17] if such

---

[17]Section 107(c)(1) provides that

> The bankruptcy court, for cause, may protect an individual, with
> respect to the following types of information to the extent the court
> finds that disclosure of such information would create undue risk
> of identity theft or other unlawful injury to the individual or the
> individual's property:
>
> (A) Any means of identification (as defined in section
> 1028(d) of title 18) contained in a paper filed, or to be filed, in a
> case under this title.

Section 1028(d)(7) defines "Any means of identification" as

> any name or number that may be used, alone or in conjunction with
> any other information, to identify a specific individual, including
> any--
>
> (A) name, social security number, date of birth, official State or
> government issued driver's license or identification number, alien
> registration number, government passport number, employer or
> taxpayer identification number;
>
> (B) unique biometric data, such as fingerprint, voice print, retina or
> iris image, or other unique physical representation;
>
> (C) unique electronic identification number, address, or routing
> code; or
>
> (D) telecommunication identifying information or access device (as
> defined in section 1029(e));

(continued...)

18

information "would create undue risk of identity theft or other unlawful injury to the individual

or the individual's property." *See also In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D.Del.

2005)(2019s were not sealed; rather access was regulated because of privacy concerns related to

electronic filing).[18]

*Private Purpose*

Garlock's assertion of a right of access has been acknowledged by it to be for its private

―――――――――――――

[17](...continued)
Section 1029(e) of title 18 provides:

> (e) As used in this section--
>
> (1) the term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument);

"Telecommunication identifying information," not applicable here, "means electronic serial number or any other number or signal that identifies a specific telecommunications instrument or account, or a specific communication transmitted from a telecommunications instrument." 18 U.S.C. §1029(e)(11).

[18]Garlock argues that because 2019s in other jurisdictions are filed on the public docket there is no reason to keep those in these cases from public view. We cannot speak to why 2019s in cases in other courts are or are not on the public docket but note that what occurred in those cases has no applicability here. To the extent information is on the public docket in other cases, Garlock has access to that information.
    With respect to the 2019s in the cases at bench, this court expressed its reasons for entering the 2019 orders when those orders were entered and the decisions were affirmed when appealed. *See, e.g., In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D.Del. 2005). *Cf. In re Pittsburgh Corning Corp.*, 260 Fed.Appx. 463, 466 (3d Cir. 2008)(bankruptcy court order denying access to 2019s by the insurers upheld; insurers' assertion that they were aggrieved because the order prevented them from "obtaining information that could reveal unethical procedures or conflicts of interests on the part of plaintiffs' lawyers" was rejected).

purpose to establish that lawyers and their clients lied in the tort system and so to enable Garlock

to consider whether to file RICO and other causes of action against plaintiffs' firms and their

clients.  Garlock seeks this broad-based, pre-complaint discovery as a fishing expedition casting

the widest possible net in separate asbestos bankruptcy cases, without naming one attorney, one

firm, or one creditor of Garlock's who allegedly so lied.  Whether its purpose in seeking access is

as a member of the public or a private purpose, the purpose must be a proper one.  Clearly, this is

not a proper, focused discovery request.

Garlock avers that it need not show cause but nonetheless has an "urgent need" for the

full 2019s to use as evidence in its own bankruptcy case with respect to estimation of its asbestos

liability.  As noted, *supra*, Garlock contends that the asbestos plaintiffs' law firms were

concealing their clients' exposure to the asbestos products of other bankruptcy debtors for the

purpose of inflating settlement values against Garlock in the tort system, 2019 Motion at ¶ 10,

that the 2019s show the law firms' knowledge of which clients were exposed to which debtor's

products and constitute verification under penalty of perjury that the law firms' clients were

creditors.  *Id*. at ¶14.[19]

Garlock insists that if it compares the 2019 statements to discovery it received over the

past decade it can prove the extent to which evidence was concealed and that the purpose of

concealment was to inflate Garlock's settlement values in the tort system.  2019 Motion at ¶¶ 16,

23, 24.  We agree with the Asbestos Creditors Committees that objected to Garlock's motion on

---

[19]In its 2019 Motion, Garlock asserts that disclosure of the retention agreements is
required by Rule 2019(a).  The District Court for the District of Delaware has concluded that we
did not err in requiring exemplars to be filed, *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560
(D.Del. 2005), and that the 2019 orders struck "the appropriate balance between maintaining the
public's right to access . . . and ensuring that the information is not misused." *Id*.

the basis that Garlock has "no roving commission to uncover alleged misstatements in various

bankruptcies in which it was not party and many of which are now closed." Joinder and

Objection of the Official Committees of Asbestos Claimants in the Flintkote, Grace, NARCO

and Pittsburgh Corning Bankruptcies to Garlock's Motion for Orders Authorizing Access to

2019 Statements and Related Relief at 4 (hereafter "ACC Objection").[20] Furthermore, the

reasons a party decides to settle are as varied as there are disputes in the world. As the court said

in *Alterra,*

> Some claimants who want to avoid the time and expense of a
> lengthy trial may consider settlement a more favorable option.
> Additionally, because the Debtor's insurance is not unlimited and
> the amount placed in reserve is capped, tort claimants may seek an
> early settlement to ensure they receive a significant share of the
> shrinking pie.

*Alterra, supra*, 353 B.R. at 72-73. The court also could not

> conceive of any positive role access to the settlements could play in
> enabling the public to gauge the effectiveness of government
> regulation of the facilities. The Court also disagrees with the
> Newspaper's argument that comparison of the amounts of two
> separate settlements would show the relative value or merits of the
> two claims. Parties settle disputes for many reasons, not solely
> because of the merits.

*Id.* at 74.

Garlock cites *Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates,*

800 F.2d 339 (3d Cir. 1986), in support of its argument that the right of access is not lessened

because it is asserted by a private party. *Hotel Rittenhouse* involved a settlement agreement

pertaining to a single dispute among a small group of parties in that case. The district court

---

[20]In *Flintkote*, Bankr. No. 04-11300, Bankr. D. Del., *see* Doc. No. 5668.

entered a seal order relying only on the general interest in encouraging settlement.  The party

moving to unseal the settlement documents had claims against the parties to the sealed

documents and its request to unseal was directly related to those claims.  The Court of Appeals

determined that the generalized interest articulated by the District Court as a basis for sealing the

documents was insufficient to outweigh the public's common law right of access,[21] even

---

[21]Section 107 "diverges from [ ] the common law right of judicial access."  *In re Roman Catholic Archbishop of Portland in Oregon*, ___ F.3d ___, 2011 WL 4375678 (9th Cir. 2011), at *10.  The court said:

> First, the common law rule distinguishes between dispositive and non-dispositive motions, while §107 covers all papers filed in a bankruptcy case.  Second, the common law rule gives courts the discretion to create exceptions to the general rule of disclosure to the public. . . .  By contrast, §107 has only three exceptions: confidential business information, 11 U.S.C. § 107(b)(1), "scandalous or defamatory matter," id. § 107(b)(2), and "means of identification," *id.* § 107(c)(1)(A).  Third, the common law rule gives courts discretion to determine whether to protect or disclose documents, while §107 eliminates a court's discretion by making it mandatory for a court to protect documents falling into one of the enumerated exceptions.  *See* 11 U.S.C. § 107(b) (specifying that "the bankruptcy court shall " provide specified protections on "request of a party in interest" (emphasis added)).  Because §107(b) imposes this mandatory requirement, it eliminates the balancing of public and private interests required by the common law rule if a document is scandalous or defamatory.  Under §107, the strength of the public's interest in a particular judicial record is irrelevant; if the exception pertains, the bankruptcy court must issue a protective order on a motion by the affected person or party.
>
> Because §107 speaks directly to and conflicts with significant aspects of the common law right of access, we join our sister circuits in holding that §107 preempts the common law right of access in bankruptcy proceedings. *See Gitto Global*, 422 F.3d at 7–8 ("Because § 107 speaks directly to the question of public access . . . it supplants the common law for purposes of determining public access to papers filed in a bankruptcy case"); *In re Neal*, 461 F.3d at 1053.  Therefore, we conclude that the

(continued...)

22

assuming that some settlements would not be effectuated if their confidentiality was not assured.

Garlock's position in the matter before us is nothing like that of the party seeking to unseal

documents in *Rittenhouse*.  First, the documents here are not sealed.  Second, Garlock is not and

was not a party and has no claims in any of the cases.  It seeks access to the 2019s, not for any

---

[21](...continued)
> bankruptcy court correctly held that §107 supplanted the common
> law right of access in bankruptcy proceedings.

In *In re Gitto Global Corp.*, 422 F.3d 1 (1st Cir. 2005), the court noted that

> Because §107 speaks directly to the question of public access,
> however, it supplants the common law for purposes of determining
> public access to papers filed in a bankruptcy case.  *See United
> States v. Texas*, 507 U.S. 529 [ ] (1993) ("In order to abrogate a
> common-law principle, the statute must speak directly to the
> question addressed by the common law" . . . .

*Id.* at 8.  Further,

> . . . if material does come within one of the statutory exceptions to
> public access, §107 requires a court to act at the request of an
> interested party - and permits a court to act *sua sponte* - to protect
> the affected party. . . .
>     As we have already discussed, §107 limits the discretion of
> courts regarding public access to papers filed in a bankruptcy case
> by providing that all papers filed are public records (and therefore
> not subject to protective orders) unless material contained therein
> falls within one of the statutory exceptions, in which case the court
> "shall," on request of a party in interest, or "may," on its own
> motion, protect the affected party.  This arrangement reflects
> Congress's intent to cabin the courts' authority over their records
> and files with regard to public access issues in bankruptcy cases.

*Id.* at 9 - 10.

> . . . It is . . . left to the courts to determine the specific contours of
> the exception.

*Id.* at 11.

reason related to the cases in which the 2019s were filed, but for a speculative injury resulting

from settlements it made with respect to its own claims years ago when it was a co-defendant,

knew who the other defendants were and knew who the claimants were. Its argument that it

would have made different (or no) settlements if it had known what it had every opportunity to

know at the time of its settlements is an effort to re-write its history while at the same time

ignoring the fact that it was only one-half of the settlement equation. Garlock and the other half

of the settlement equation, i.e., the settling tort plaintiff, had an equal say in what the appropriate

settlement was and what each party would agree to so as to settle. Garlock does not allege or

purport to show how its after-the-fact reassessment of its own settlement strategy would have

resulted in any different outcome in what the tort plaintiffs would have accepted.

The other cases Garlock relies on similarly involved parties <u>to the cases</u> in which access

or unsealing was sought.[22] Even if it otherwise would have a right of access, party or not, its

---

[22]*In re Pittsburgh Corning Corp.*, 260 Fed.Appx. 463 (3d Cir. 2008) (insurers <u>in the case</u> lacked standing to access 2019 statements); *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001) (the information that was sealed "was of the utmost importance in the administration of the case" and was directly relevant to an issue in that case); *In re Orion Pictures Corp.*, 21 F.3d 24 (2nd Cir. 1994) (in a case concerning § 107(b), debtor did not have to show cause for issuance of seal order with respect to confidential commercial information); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) (in the context of a civil rights suit against a municipality in considering a newspaper's right to access a settlement agreement, the court found strong presumption against granting confidentiality order if it is likely that information is available under the Freedom of Information Act but noted that <u>interest in privacy is a factor</u>); *Littlejohn v. Bic Corp.*, 851 F.2d 673 (3d Cir. 1988) (court did not retain supervisory power over confidential documents that were returned to the submitting party in a case which had been terminated); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) (the public was properly excluded from a hearing to determine whether certain information should be kept confidential by a court order); *In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D.Del. 2005) (insurers did not have standing to appeal a 2019 order as they were not "persons aggrieved" by the order; the bankruptcy court had not erred in permitting exemplars to be filed or in restricting access to the 2019 information); *In re Peregrine Systems, Inc.*, 311 B.R. 679, 691 n.11 (D.Del.

(continued...)

purpose is not a permissible one and therefore the limitation on the right of access is applicable here.

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee (In re Congoleum Corporation)*, 321 B.R. 147, 167-68 (D.N.J. 2005), does not help Garlock's position. There, a law firm appealed an order requiring it to comply with Rule 2019. The court stated that it agreed

> with Judge Ferguson's reasoning-based on the facts before the bankruptcy court-that the information sought in the Rule 2019 disclosures, does indeed bear on the overall fairness of this Plan, it is clear that Insurers have standing to raise these Rule 2019 compliance issues . . . Of particular relevance, is evidence that the Motley Rice and Weitz & Luxenberg firms, which together purport to "speak for" over 75 percent of all asbestos claimants against Congoleum, may not in fact "represent" individual claimants in the traditional sense of an attorney-client relationship, but rather, they represent other attorneys who, in turn, represent individual claimants . . . The totality of the facts before the bankruptcy court suggest the opportunity for abuse of fee sharing relationships, involving attorneys in connection with the prepetition process, to the end of conferring preferential security interests on Appellants' clients. To the extent that these relationships are inextricable from the overall fairness of the reorganization plan, the Insurers are parties-in-interest under §1109 with respect to Rule 2019 disclosure.

321 B.R. at 160 (citations and footnote omitted). Thus, the issue was one of representation with respect to formulation of a plan of reorganization. Noncompliance with Rule 2019 would have affected solicitation and voting methods in connection with the plan. The fee sharing concern and the question of who the law firms actually represented are not issues in the cases before us.

---

[22](...continued)
2004) (bankruptcy court's striking a document filed under seal from the record was improper based on the public's right to access and court was directed to undertake a balancing analysis as to whether the document should remain under seal; nonetheless, the court noted that "[i]t should not be assumed that [the entity seeking access] will actually get any part of" the document).

The issue here is the private medical and other information of individuals who may or may not be creditors in the particular bankruptcy cases but whose creditor status was or will be made known in connection with voting on the plans of reorganization.

### *Limitations on the Right of Access*

Garlock asserts that it need not state any purpose to obtain access to the 2019s because as a member of the public it is presumptively entitled to the access and that the objecting parties must show cause to deny access. Even if Garlock has properly assessed the burden, Garlock is incorrect in its assumption that its purpose in seeking access is irrelevant. *See In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D.Del. 2005) (concerning §107 - the right of access is not absolute and courts have supervisory power over their records and files to prevent their being used for improper purposes). *See also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978) (access to records denied where files might become a vehicle for improper purposes). As we have explained, Garlock has not stated a proper purpose to access the 2019s in these cases to which it was not a party and is not a creditor.

We also note that Garlock's Rule 2004 motion in its own case,[23] seeking much the same information sought in the matter at bench, was denied.[24] Garlock's motion was directed against 70 law firms representing thousands of claimants, seeking aggregate tort and trust recoveries against Garlock's co-defendants by mesothelioma plaintiffs who made claims against Garlock during the period 1995 to 2010. The court denied the motion because

---

[23] *See* Case No. 10-31607, Bankr.W.D.N.C., Doc. No.1087 (Motion of Debtors for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Information from Counsel Representing Garlock Claimants).

[24] Case No. 10-31607, Bankr.W.D.N.C., Doc. No. 1201, Order of March 4, 2011.

1. First, the discovery would be an unprecedented intrusion into attorneys' practices and files. The subjects of the discovery are the attorneys who represented claimants against co-defendants of the debtors. They are not parties to this proceeding and were not parties to those proceedings. They are the professionals who represented those parties, and as such, their records are protected from this discovery.

2. Second, the discovery seeks information that is generally and traditionally held secret. The information sought is settlement data from third parties. That information is protected by those parties and subject to confidentiality agreements.

3. Finally, the information sought is not available to the debtors outside of bankruptcy. Except in rare circumstances, co-defendant settlement information is not available to the debtors in the tort system. The existence of this proceeding should not change that.

The court believes that these reasons alone require denial of the debtors' Motion.

Case No. 10-31607, Bankr.W.D.N.C., Doc. No. 1201, Order of March 4, 2011.

We agree with the Bankruptcy Court in Garlock's case. Therefore, Garlock's motion is denied, as are its motions to intervene and to reopen.

An appropriate order will be entered.

DATE:  October 7, 2011

_Judith K. Fitzgerald_
_____
Judith K. Fitzgerald
United States Bankruptcy Judge

27