# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hearing Date: November 28, 2011, at 9:00 a.m. |
| | ) Objection Deadline: November 4, 2011 |

## DECLARATION OF ELYSE FILON SUPPORTING THE MOTION FOR ENTRY OF AN ORDER: (I) APPROVING AGREEMENT; (II) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO MERGE CERTAIN NON-OPERATING DEBTOR SUBSIDIARIES INTO W. R. GRACE & CO,-CONN.; (III) EXPUNGING CERTAIN ACTIVE CLAIMS, CONDITIONALLY EXPUNGED CLAIMS AND INTERCOMPANY CLAIMS ; AND (IV) TRANSFERRING CERTAIN ACTIVE AND INTERCOMPANY CLAIMS TO W. R. GRACE & CO,-CONN.

STATE OF MARYLAND )
                               ) ss.
COUNTY OF HOWARD )

Elyse Filon, after being duly sworn according to law, deposes and says:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

I am over the age of 18 and competent to testify. I am Vice-President & Treasurer with W. R. Grace & Co.-Conn. ("Grace-Conn."), one of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the captioned cases.[2]

I am generally familiar with the Debtors' business affairs and restructuring. I have served as Vice-President-Finance with Grace-Conn. since 2000. Prior to that, I was Director of Taxes from 1996 to 2000. I commenced my employment with the company in 1994. This Declaration is based on my personal knowledge, relevant documents that I have reviewed, information that has been supplied to me by the Debtors' employees and advisors to the Debtors. If called upon to testify, I could and would testify competently to the facts and opinions contained in this Declaration.

## I. GRACE-CONN. IS THE DEBTOR ENTITY THAT CONDUCTS ALL OF GRACE'S DOMESTIC BUSINESS AFFAIRS

1. As set forth in more detail in the Disclosure Statement, Parent is a publicly traded global holding company that conducts substantially all of its business through Grace-Conn., its direct wholly-owned subsidiary. Grace-Conn owns substantially all of Grace's United States assets, properties, and rights directly or through subsidiaries.

2. Parent and 61 of its direct or indirect U.S. subsidiaries, including Grace-Conn. and the Merging Subsidiaries, are Debtors in these chapter 11 cases. None of the Merging

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, *Motion for Entry of An Order: (i) Approving Agreement; (ii) Authorizing, but not Directing, the Debtors to Merge Certain Non-Operating Debtor Subsidiaries into W. R. Grace & Co,-Conn.; (iii) Expunging Certain Active Claims, Conditionally Expunged Claims and Intercompany Claims; and (iv) Transferring Certain Active and Intercompany Claims to W. R. Grace & Co,-Conn.* (the "Motion"), filed contemporaneously herewith, the *Debtors' Disclosure Statement for the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated As of February 27, 2009*, Docket no. 20873 (the "Disclosure Statement"), or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases*, Docket no. 25881, as it may be further amended, supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

Subsidiaries conducted any material business operations with any third party for at least several years prior to the Petition Date, and in most cases since the sale or termination of their businesses in the 1980's and 1990's. None of the Merging Subsidiaries has conducted any material business operations since the Petition Date.

3. Grace's two major U.S. operating segments, Grace Davison and Grace Construction Products ("GCP"), are owned and operated by Grace-Conn. Grace-Conn. employs substantially all of the Debtors' approximately 2,600 U.S. employees. Grace-Conn. also owns or leases substantially all of GCP's and Grace Davison's approximately 30 U.S. operating facilities and other real property. In addition, Grace-Conn. is the only Debtor that is party to the L/C Facility.

4. The Plan consolidates all of the Claims against the Debtors into a single set of Classes, with all similarly situated Claims receiving the same treatment, regardless of Debtor. The Plan likewise contemplates using Grace-Conn.'s assets to satisfy all such Claims, whether prepetition or Administrative Expense Claims. Plan at 43-56 (Plan classification and distribution schemata). As discussed below, none of the Merging Subsidiaries has any significant assets; and in any event, such assets will be transferred to Grace-Conn. in the Merger. *See also*, Exhibit II.

## II. THE PROPOSED MERGERS WILL BENEFIT THE DEBTORS' ESTATES

5. Eliminating the Merging Subsidiaries will benefit the Debtors' ongoing business operations in several ways. Such benefits include:

- *Reducing Administrative Burden and Expense.*

6. The Debtors must allocate resources and funds to managing the Merging Subsidiaries. For example, Grace must annually file more than 100 tax and other returns, reports and other filings for the Merging Subsidiaries, including more than sixty state and federal tax returns. Each Merging Subsidiary that is a corporation must file annual or other periodic reports

3

and pay related fees in its state of incorporation, and a number of Merging Subsidiaries must pay franchise taxes in their states of incorporation even though they conduct no business and have no income. There are also a number of Merging Subsidiaries that are qualified to transact business as foreign corporations in other states, which requires them to file periodic reports and pay filing fees. Although the Debtors do not believe that any of these Merging Subsidiaries is legally required to maintain their respective qualifications as foreign corporation, the relevant states have not to date permitted them to withdraw their qualifications because they are chapter 11 debtors.

7. The proposed Merger is also part of a worldwide Grace initiative to simplify its corporate structure and eliminate unnecessary complication and expense.

- *Optimizing Corporate Structure in Preparation for Exit Financing.*

8. The Debtors anticipate entering into financing arrangements at exit in order to provide a source of funding for Claims payment under the Plan. Eliminating the Merging Subsidiaries prior to negotiating the exit financing will enable the Debtors and their lenders to structure the financing based upon a greatly simplified corporate structure. The Debtors anticipate that failing to eliminate the Merging Subsidiaries before commencing exit financing negotiations will only complicate those negotiations and further complicate the concomitant exit financing documentation. If the Debtors were to wait until after emergence to merge the Merging Subsidiaries out of existence, they would have to amend the exit financing documentation, which could entail needless additional time and costs  Eliminating the Merging Subsidiaries now would avoid such complications, costs and delays.

**III. CREDITORS WILL NOT BE PREJUDICED BY THE PROPOSED MERGERS**

9. The *Schedule of Merging Subsidiaries*, attached as <u>Exhibit II</u> to the Order, summarizes for each Merging Subsidiary:

- The total number and amount of Intercompany Claims that each such entity has against other Debtors and non-Debtor Grace entities;

- Intercompany Claims that other Debtor entities have against the Merging Subsidiary;

- The total number and amount of other scheduled and Filed Claims against the entity;

- The total number of Asbestos Personal Injury and Property Damage Claims against the entity; and

- Whether that entity has any assets other than Intercompany Claims, and if so, the nature of those assets.

The Schedule shows that only three Merging Subsidiaries that have assets other than Intercompany Claims. None of those assets has any significant value.[3] In each case, Grace-Conn. will hold the assets of the Merging Subsidiary after the Merger.

10. Grace has also ascertained (based on lien searches, review of books and records or otherwise):

- That there are no known liens asserted against any of the Merging Subsidiaries other than those previously disclosed concomitant with the commencement of these chapter 11 cases; and

- There are no known post-petition lawsuits or other post-petition claims against the Merging Subsidiaries.

11. Grace and its advisors also performed a detailed analysis of all of the Filed and scheduled third-party Claims against each Merging Subsidiary. In particular, Grace and its advisors analyzed whether there were any third-party Claims or other issues that would prevent these Merging Subsidiaries from being eliminated prior to the Debtors exiting from their chapter 11 cases. The scheduled Intercompany Claims have also been analyzed to determine whether

---

[3] One entity, CC Partners, has a minor amount of cash in its corporate bank account. The Debtors do not believe that eliminating CC Partners and moving the cash to Grace-Conn. will measurably affect Claimants' rights under any foreseeable process of exiting from these chapter 11 cases.

5

there are any issues that would prejudice one Debtor over another as a result of eliminating the Merging Subsidiaries.[4]

12. In particular:

- ***Third Party Claims.***

  - *Tax Claims.*

    - Most Tax Claims have been made jointly and severally against both Grace-Conn. and the Merging Subsidiary against which the Claim was Filed. Therefore, eliminating the Merging Subsidiary will not alter the tax Claimants' rights to recovery.

    - Grace-Conn. is not jointly and severally liable for certain other Tax Claims. In each such case, the Merging Subsidiary has no assets from which such Tax Claims may be satisfied. Under the Plan, such claims are being satisfied from Grace-Conn. assets. In alternative scenarios, such claims would also be satisfied by Grace-Conn., which likely enhances the Tax Claimant's recoveries. The number and amount of such Claims is *de minimis* in comparison to the number and amount of Claims against Grace-Conn, which means that Grace-Conn. creditors are not materially prejudiced by the Tax Claims being transferred to Grace-Conn.

  - *Protective Claims.* A small number of Claimants with substantive Claims against Grace-Conn. Filed protective Claims against one or more of the Merging Subsidiaries. Most such Claims have been conditionally expunged. Others still remain open. In each case, Claimant's rights to recovery will not be prejudiced by eliminating the Merging Subsidiary, because the substantive Claim is against Grace-Conn., which holds all of the assets to be used to fund creditor recoveries.

  - *Other Claims With Recourse Against Grace-Conn.* In a very few cases, the Claimant may have a Claim against a particular Merging Subsidiary based upon grounds independent of its parallel Claim against Grace-Conn. In each such case, the Claimant has a parallel Claim against Grace-Conn. Under the Plan, Claimants' recoveries will come entirely from Grace-Conn. assets. In other scenarios, the Merging Subsidiary will have no assets with which to satisfy such Claims, and Claimants will again look to Grace-Conn. as their only source of recovery, based upon their Claims against Grace-Conn.

  - *De Minimis Claims.* There are a number of *de minimis* Claims (mostly trade and Tax Claims) that are for $10,000 or less. The total amount of these Claims is so small that

---

[4] The Debtors will be providing further information to those professionals, including copies of the detailed third-party and intercompany claim analyses.

6

transferring them to Grace-Conn. will make no material difference to Claimants that look to Grace-Conn. for recovery.

- *Scheduled Intercompany Claims*.

    - Most scheduled Intercompany Claims will be eliminated because either: (a) the Claim is held by the Merging Subsidiary at issue against Grace-Conn., or vice versa, and will as a result be eliminated by the entity consolidation; or (b) the Claim is held by the Merging Subsidiary against another Merging Subsidiary that is also being eliminated, or vice versa, and as a result of the assets and liabilities of both entities being merged into Grace-Conn.; and

    - For those Intercompany Claims of a Merging Subsidiary against another Debtor that is not being eliminated and vice-versa, Grace-Conn. will step into the shoes of the Merging Subsidiary being eliminated by assuming those Intercompany Claims and the benefits and burdens thereof.

13. Based upon the foregoing analysis, I have concluded that none of the Merging Subsidiaries have any third-party Claims or Intercompany Claims against them that would preclude their being merged into Grace-Conn.

IV. **GRACE INTENDS TO MERGE CERTAIN NON-DEBTOR SUBSIDIARIES INTO GRACE-CONN.**

14. Exhibit VII to the Order lists certain non-Debtor subsidiaries that Grace also intends to merge into Grace-Conn. as part of Grace's ongoing global initiative to simplify its corporate structure. As set forth in Exhibit VII, and similar to the Merging Subsidiaries, none of these non-Debtor entities has any assets, nor do they have any liabilities other than a single intercompany claim held by Grace-Conn. against a single entity. Grace will eliminate this intercompany claim for accounting purposes upon merger.

**[remainder of page left intentionally blank]**

15. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Elyse Filon*
Name
Elyse Filon
Vice President-Finance
W. R. Grace & Co.-Conn.

SWORN AND SUBSCRIBED before me,
this 17th day of October 2011

*Diane E. Borowy*
Notary Public

My Commission Expires: September 18, 2012

DIANE Z. BOROWY
Notary Public, State of Maryland
County of Howard
My Commission Expires September 18, 2012