IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: November 28, 2011, at 9:00 a.m. |
| ) | Objection Deadline: November 4, 2011 |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER: (I) APPROVING AGREEMENT; (II) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO MERGE CERTAIN NON-OPERATING DEBTOR SUBSIDIARIES INTO W. R. GRACE & CO.-CONN.; (III) EXPUNGING CERTAIN ACTIVE CLAIMS, CONDITIONALLY EXPUNGED CLAIMS AND INTERCOMPANY CLAIMS; AND (IV) TRANSFERRING CERTAIN ACTIVE AND INTERCOMPANY CLAIMS TO W. R. GRACE & CO.-CONN.**

The above-captioned debtors and debtors in possession (the "Debtors") respectfully request the Court (the "Motion") enter an order substantially in the form attached hereto as Exhibit A (the "Order"):[2]

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, *Declaration of Elyse Filon Supporting the Debtors' Motion for Entry of An Order: (i) Approving Agreement; (ii) Authorizing, but not Directing, the Debtors to Merge Certain Non-Operating Debtor Subsidiaries into W. R. Grace & Co.-Conn.; (iii) Expunging Certain Active Claims, Conditionally Expunged Claims and Intercompany*

- Authorizing, but not requiring, the Debtors to enter into the Agreement and Plan of Merger (the "Agreement"), the form of which is attached hereto as Exhibit I to the Order. The Agreement provides for merging certain Debtors set forth in the *Schedule of Merging Subsidiaries* (the "Merging Subsidiaries"), attached hereto as Exhibit II to the Order, into Debtor Grace-Conn. on the terms and conditions set forth in the Agreement, and consummate the transactions contemplated thereby (the "Merger");[3]

- Approving the Merger and authorizing, but not requiring, the Debtors to take all actions necessary or advisable to consummate the Merger;

- Authorizing and directing the Claims Agent to expunge certain of the Claims (as defined in the Plan) listed by the Claims Agent as active on the claims register (the "Active Claims") Filed against each of the Merging Subsidiaries as set forth in Exhibit III to the Order (the "Expunged Claims") with the proviso that the rights afforded each Claimant (as defined in the Plan) in its respective Claim shall be preserved in the surviving Claim (each, a "Surviving Claim") against Grace-Conn. or such other Debtor as is listed in Exhibit III to the Order, and with the further proviso that such preservation shall not affect the rights of the Debtors to object to any such Surviving Claim to the extent that it has not already been Allowed;

- Authorizing and directing the Claims Agent to expunge each of the conditionally expunged Claims (the "Conditionally Expunged Claims") Filed against each of the Merging Subsidiaries as set forth in Exhibit IV to the Order, with the proviso that the rights afforded each Claimant in its respective Claim shall be preserved in the corresponding Surviving Claim against Grace-Conn. or such other Debtor as is listed in Exhibit IV to the Order, and with the further proviso that such preservation of Claimants' rights shall not affect the rights of the Debtors to object to any such Surviving Claim to the extent that it has not already been Allowed;[4]

- Authorizing and directing the Claims Agent to expunge each of the scheduled intercompany claims set forth in Exhibit V to the Order (the "Expunged Intercompany

---

*Claims; and (iv) Transferring Certain Active and Intercompany Claims to W. R. Grace & Co.-Conn.* (the "Declaration"), filed contemporaneously herewith, the *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010*, Docket no. 26155 (the "Confirmation Order"), the *Debtors' Disclosure Statement for the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated As of February 27, 2009*, Docket no. 20873 (the "Disclosure Statement"), or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases*, Docket no. 25881, as it may be further amended, supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

[3] When W. R. Grace & Co. is referred to individually, it is referred to as the "Parent." When W R. Grace & Co.-Conn is referred to individually, it is referred to as "Grace-Conn." The Debtors may collectively be referred to as "Grace" in the context of their entire businesses.

[4] As discussed below in n. 8, the Court entered orders conditionally expunging each of these Claims.

Claims," which together with the Surviving Intercompany Claims (as defined below) are the "Intercompany Claims").

- Authorizing and directing the Claims Agent to list Grace-Conn. as having assumed: (a) the benefit of surviving Intercompany Claims (the "Surviving Intercompany Claims") that Merging Subsidiaries hold against other, non-merging Debtors; and (b) the burden of Surviving Intercompany Claims against Merging Subsidiaries; each of which Surviving Intercompany Claims is listed in Exhibit VI to the Order.

In view of the pending appeal of the Confirmation Order, the Debtors respectfully request, however, that the chapter 11 cases of each of the Merging Subsidiaries remain open until after the Effective Date.[5]

Finally, Exhibit VII to the Order lists certain non-Debtor subsidiaries that Grace also intends to merge into Grace-Conn. as part of Grace's ongoing global initiative to simplify its corporate structure. As set forth in Exhibit VII, and similar to the Merging Subsidiaries, none of these non-Debtor entities has any assets, nor do they have any liabilities other than a single intercompany claim held by Grace-Conn. against a single entity. Grace will eliminate this intercompany claim for accounting purposes upon merger. *See also* Filon Declaration at ¶ 14.

In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are Bankruptcy Code sections 105, 363, 502 and Fed. R. Bankr. P. 1015, 3007, 6004, 7062 and 9014 and Del. Bankr. L. R. 3007-1.

---

[5] The Debtors will be providing further information to the professionals retained by the Committees and FCRs, including copies of the detailed third-party and intercompany claim analyses.

## BACKGROUND

**I.    The Proposed Merger**

3.    The form of Agreement is attached to the Order as <u>Exhibit I</u>. The Agreement contemplates merging each of the Merging Subsidiaries into Grace-Conn. Under relevant state law, Grace-Conn. will acquire all assets and liabilities of the Merging Subsidiaries. As permitted by applicable law, the Agreement:

- Cancels the stock and partnership interests of the Merging Subsidiaries; and

- Will not affect Grace-Conn.'s stock, certificate of incorporation and board of directors and officers as a result of the Merger.

4.    The Debtors request, however, that the Order provide them with the authority to revise, amend or otherwise change the Agreement to the extent necessary to meet the requirements of the jurisdictions in which the Merging Subsidiaries were incorporated or otherwise formed. These changes may include effecting the Merger by one or more similar, but separate, merger agreements for particular jurisdictions, in which event such merger agreements taken as a whole shall be deemed to be the "Agreement" for all purposes of this Motion.

**II.    Grace-Conn. Is The Chief Operating Company For Grace's Domestic Business**

5.    As set forth in more detail in the Disclosure Statement and in the Filon Declaration (¶¶ 1-4), Parent is a publicly traded global holding company that conducts substantially all of its business through Grace-Conn., its direct wholly-owned subsidiary. Grace-Conn owns substantially all of Grace's United States assets, properties, and rights directly or through subsidiaries.

6.    Parent and 61 of its direct or indirect U.S. subsidiaries, including Grace-Conn. and the Merging Subsidiaries, are Debtors in these chapter 11 cases. None of the Merging Subsidiaries conducted any material business operations with any third party for at least several

years prior to the Petition Date, and in most cases since the sale or termination of their businesses in the 1980's and 1990's. None of the Merging Subsidiaries has conducted any material business operations since the Petition Date.

7. Grace's two major U.S. operating segments, Grace Davison and Grace Construction Products ("GCP"), are owned and operated by Grace-Conn. Grace-Conn. employs substantially all of the Debtors' approximately 2,600 U.S. employees. Grace-Conn. also owns or leases substantially all of GCP's and Grace Davison's approximately 30 U.S. operating facilities and other real property. In addition, Grace-Conn. is the only Debtor that is party to the L/C Facility.

8. The Plan consolidates all of the Claims against the Debtors into a single set of Classes, with all similarly situated Claims receiving the same treatment, regardless of Debtor. The Plan likewise contemplates using Grace-Conn.'s assets to satisfy all such Claims, whether prepetition or Administrative Expense Claims. Plan at 43-56 (Plan classification and distribution schemata). As discussed below, none of the Merging Subsidiaries has any significant assets; and in any event, such assets will be transferred to Grace-Conn. in the Merger. *See also*, Exhibit II; Motion, § IV, *infra*.

### III. The Proposed Merger Will Benefit the Debtors' Estates

9. Eliminating the Merging Subsidiaries will benefit the Debtors' ongoing business operations in several ways. Filon Declaration at ¶¶ 5-7. Such benefits include:

- ***Reducing Administrative Burden and Expense***.

10. The Debtors must allocate resources and funds to managing the Merging Subsidiaries. For example, Grace must annually file more than 100 tax and other returns, reports and other filings for the Merging Subsidiaries, including more than sixty state and federal tax returns. Each Merging Subsidiary that is a corporation must file annual or other periodic reports

5

and pay related fees in its state of incorporation, and a number of Merging Subsidiaries must pay franchise taxes in their states of incorporation even though they conduct no business and have no income. There are also a number of Merging Subsidiaries that are qualified to transact business as foreign corporations in other states, which requires them to file periodic reports and pay filing fees. Although the Debtors do not believe that any of these Merging Subsidiaries is legally required to maintain their respective qualifications as foreign corporation, the relevant states have not to date permitted them to withdraw their qualifications because they are chapter 11 debtors.

11.  The proposed Merger is also part of a worldwide Grace initiative to simplify its corporate structure and eliminate unnecessary complication and expense..

- *Optimizing Corporate Structure in Preparation for Exit Financing.*

12.  The Debtors anticipate entering into financing arrangements at exit in order to provide a source of funding for Claims payment under the Plan. Eliminating the Merging Subsidiaries prior to negotiating the exit financing will enable the Debtors and their lenders to structure the financing based upon a greatly simplified corporate structure. The Debtors anticipate that failing to eliminate the Merging Subsidiaries before commencing exit financing negotiations will only complicate those negotiations and further complicate the concomitant exit financing documentation. If the Debtors were to wait until after emergence to merge the Merging Subsidiaries out of existence, they would have to amend the exit financing documentation, which could entail needless additional time and costs  Eliminating the Merging Subsidiaries now would avoid such complications, costs and delays.

IV.   **Creditors Will Not Be Prejudiced By the Proposed Merger**

13.  As discussed in the Filon Declaration (at ¶¶ 8-9), and as summarized for each Merging Subsidiary in the *Schedule of Merging Subsidiaries*, attached as <u>Exhibit II</u> to the Order:

6

- The total number and amount of Intercompany Claims that each such entity has against other Debtors and non-Debtor Grace entities;

- Intercompany Claims that other Debtor entities have against the Merging Subsidiary;

- The total number and amount of other scheduled and Filed Claims against the entity;

- The total number of Asbestos Personal Injury and Property Damage Claims against the entity; and

- Whether that entity has any assets other than Intercompany Claims, and if so, the nature of those assets.

The Schedule shows that only three Merging Subsidiaries have assets other than Intercompany Claims. None of those assets has any significant value.[6] In each case, Grace-Conn. will hold the assets of the Merging Subsidiary after the Merger.

14. Grace has also ascertained (based on lien searches, review of books and records or otherwise):

- That there are no known liens asserted against any of the Merging Subsidiaries other than those previously disclosed concomitant with the commencement of these chapter 11 cases; and

- There are no known post-petition lawsuits or other post-petition claims against the Merging Subsidiaries.

## V. Expunging Claims Filed Against Merging Subsidiaries and Specifying Surviving Claims Against Grace-Conn. or Another Debtor

15. As discussed in the Filon Declaration (at ¶¶ 10-12), Grace and its advisors performed a detailed analysis of every third-party Claim Filed or scheduled against each Merging Subsidiary. In particular, Grace and its advisors analyzed whether there were any third-party Claims or other issues that would preclude the Merging Subsidiaries from merging into Grace-Conn. as contemplated by this Motion.

---

[6] One entity, CC Partners, has a minor amount of cash in its corporate bank account. The Debtors do not believe that eliminating CC Partners and moving the cash to Grace-Conn. will measurably affect Claimants' rights under any foreseeable process of exiting from these chapter 11 cases.

7

16. Based upon that analysis, the Debtors have concluded that none of the Merging Subsidiaries have any third-party Claims against them that would preclude their being eliminated by merger into Grace-Conn. Many such third-party Claims will, however, become redundant as a result of the proposed Merger. The Debtors therefore request the Court expunge all such redundant Claims on the terms set forth below.

17. Grace and its advisors also analyzed all Intercompany Claims to determine whether there are any issues that would prejudice one Debtor over another as a result of eliminating the Merging Subsidiaries. The Expunged Intercompany Claims will become redundant by function of the proposed Merger, because each Intercompany Claim either is between Grace-Conn. and the Merging Subsidiary being merged into Grace-Conn., or between two Debtor Subsidiaries which both are being merged into Grace-Conn. The Surviving Intercompany Claims will remain in place, because either the Surviving Intercompany Claim is held by a Merging Subsidiary against a Debtor that is not being merged into Grace-Conn. (or in a rarer case, against a non-Debtor subsidiary of Grace-Conn.), or because a surviving Debtor holds that Intercompany Claim against a Merging Subsidiary. In either case, Grace-Conn. will assume the benefit or burden, as the case may be, of the Surviving Intercompany Claim.

18. The treatment of each affected Claim is set forth in one of the exhibits to the Order:

- <u>Exhibit III</u> to the Order lists the Active Claims against various Merging Subsidiaries that will become Expunged Claims and the corresponding Surviving Claim. The Order preserves the rights of the Claimants through the Surviving Claims.

- <u>Exhibit III</u> to the Order also lists Active Claims against various Merging Subsidiaries that are "Active Claims" on the claims register for which there is no corresponding Claim against Grace-Conn. or another Debtor. The Order states that each such Claim shall be deemed to have been Filed against Grace-Conn., which will result in no change to the Claimant's rights pursuant to that Claim.

- <u>Exhibit IV</u> to the Order lists the Conditionally Expunged Claims, each of which will become redundant as a result of the proposed Merger, and therefore permanently expunged. Each such Conditionally Expunged Claim has a corresponding Surviving Claim listed in <u>Exhibit IV</u>.[7]

- <u>Exhibit V</u> to the Order lists the Expunged Intercompany Claims, all of which will become redundant as a result of the proposed Merger.

- <u>Exhibit VI</u> to the Order lists the Surviving Intercompany Claims, each of which Grace-Conn. will assume.

19.  The Debtors submit that the foregoing mechanism to expunge redundant Claims and transfer certain other Claims to Grace-Conn. satisfies the requirements of Fed. R. Bankr. P. 3007 and Del. Bankr. L. R. 3007-1 regarding the expunging of claims from a debtor's claims register. The Debtors further submit that the notice requirements of the foregoing rules have been satisfied by the notice given to Claimants holding the Claims listed in each of <u>Exhibits III & IV</u> to the Order.

## RELIEF REQUESTED

20.  The Debtors respectfully request the Court enter the Order:

- Authorizing, but not requiring, the Debtors to, enter into the Agreement, and consummate the transactions contemplated thereby, and directing the Debtors to undertake all actions necessary to consummate the foregoing;

- Approving the elimination of the Merging Subsidiaries;

- Expunging or transferring Active Claims on <u>Exhibit III</u> to the Order, with the proviso that the rights afforded each Claimant in its Expunged Claim shall be preserved in the

---

[7] The current status of the Conditionally Expunged Claims is set forth in the following documents: *Order Disallowing and Expunging Certain of the Claims of G-I Holdings, Inc. and Its Affiliates*, entered at docket number 15075 on April 3, 2007; *Stipulation Consolidating Claims of the CNA Companies*, entered at docket number 12248 on April 17, 2006; *Stipulation Resolving Certain Claims of JPMorgan Chase Bank*, entered at docket number 14455 on January 31, 2007; *Order Disallowing and Expunging Certain of the Claims of Fresenius Medical Care Holdings, Inc. and Its Affiliates*, entered at docket number 14892 on March 19, 2007; *Order Approving Stipulation Resolving Certain of the Claims of Century Indemnity Company, et al.*, entered at docket number 15077 on April 3, 2007; *Order Disallowing and Expunging Certain of the Claims of Seaton Insurance Company and OneBeacon America Insurance Company*, entered at docket 15503 on May 3, 2007; and *Order Disallowing and Expunging Certain Claims and Reducing Certain Other Claims of the Internal Revenue Service*, entered at docket 16366 on July 24, 2007.

corresponding Surviving Claim against Grace-Conn. or such other Debtor as is listed in <u>Exhibit III</u> to the Order;

- Permanently expunging the Conditionally Expunged Claims on <u>Exhibit IV</u> to the Order, with the proviso that the rights afforded each Claimant in its Expunged Claim shall be preserved in the corresponding Surviving Claim against Grace-Conn. or such other Debtor as is listed in <u>Exhibit IV</u> to the Order

- Expunging each of the Expunged Intercompany Claims set forth in <u>Exhibit V</u>; and

- Transferring the Surviving Intercompany Claims (listed in <u>Exhibit VI</u> to the Order) to Grace-Conn.

## ANALYSIS

### I.  ELIMINATING THE MERGING SUBSIDIARIES BENEFITS THE DEBTORS AND THEIR ESTATES

21.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts in this jurisdiction may approve such use of estate property outside the ordinary course of business if the debtor establishes that:

> (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) buyer has acted in good faith.

*In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, 7-8 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test'."); *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("a debtor's decision must be supported by an articulated business justification"); *Stephen Indus., Inc. v.*

*McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)).

22. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). A party-in-interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

23. As set forth in the Filon Declaration, consummating the transactions contemplated by the Agreement and merging the Merging Subsidiaries into Grace-Conn. will:

- Reduce operating expenses and administrative burdens by reducing tax and other reporting requirements; and
- Materially aid in optimizing Grace's corporate structure in preparation for entering into exit financing arrangements.

The Debtors submit that these benefits more than adequately demonstrate that the Debtors have a valid business purpose in eliminating the Merging Subsidiaries prior to the Effective Date.

## II. THE COURT MAY APPROVE THE AGREEMENT AND THE MERGER CONTEMPLATED THEREBY

24. It is axiomatic that a court may approve a chapter 11 plan's proposed substantive consolidation without further inquiry if the affected creditors consent to such relief. *In re Owens Corning*, 419 F.3d 195, 210 (3rd Cir. 2005) (noting the debtors were required to prove substantive consolidation only "absent consent"). It is equally axiomatic that this Court may approve the Agreement and the transactions contemplated thereby because the Plan provides for classifying Claims and making Distributions to creditors on a consolidated basis, and each voting

class consented to the Plan. Confirmation Order at 3-4 (Plan acceptance by each voting class); Plan at 43-56 (Plan classification and distribution schemata).

25. Moreover, and equally as important, merging the Merging Subsidiaries into Grace-Conn. will not substantively affect the rights to recovery of any Claimants—whether those with Claims against Grace-Conn. or those with Claims against one or more of the Merging Subsidiaries. As set forth in the Filon Declaration, the Debtors undertook a detailed, Claim-by-Claim analysis. As the Filon Declaration concludes, no creditor of any Merging Subsidiary is prejudiced by the proposed Merger. Likewise, creditors of Grace-Conn. are not materially prejudiced by the proposed entity elimination under any scenario, whether when the Plan is consummated or otherwise. Filon Declaration at ¶¶ 8-12.

26. The Debtors therefore request the Court enter the Order approving the Agreement, merging the Merging Subsidiaries into Grace-Conn., expunging redundant Claims and transferring other Claims to Grace-Conn.

## No Previous Motion

27. No previous motion for the relief sought herein has been made to this or any other court.

## Notice

28. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (vii) each secretary of state, taxing authority, environmental agency and other governmental agency for each

jurisdiction in which it is known that the Merging Subsidiaries are incorporated, operated in the past or currently own assets such as land; and (viii) each party having one or more Claims listed in the Exhibits. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request the Court enter the Order: (i) approving the Agreement and the merger of the Merging Subsidiaries into Grace-Conn.; (ii) expunging certain Active Claims, Conditionally Expunged Claims and Expunged Intercompany Claims; (iii) transferring certain Active Claims and Surviving Intercompany Claims to Grace-Conn.; and (vi) granting such other relief as may be appropriate.

Dated: October 17, 2011

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession