IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: November 28, 2011, at 9:00 a.m. |
| ) | Objection Deadline: November 4, 2011 |

**MOTION TO AMEND THE OCP ORDERS TO (1) INCREASE THE TOTAL EXPENDITURE CAP, AND (2) CONTINUE TO PERMIT APPROPRATE OCPS TO SEEK COMPENSATION FOR FEES AND EXPENSES IN EXCESS OF THE MONTHLY CAP**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") requesting the Court enter an order, substantially in the form attached hereto as Exhibit A (the "Order") further amending the OCP Orders[2] to (i) increase the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

[2] The OCP Orders include that certain *Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business* dated May 3, 2001 (the "Original Order") (Docket No. 197) which was further amended on December 10, 2002 (Docket No. 3126), July 24, 2006 (Docket No. 12855) and September 24, 2007 (Docket No.16913).

Total Expenditure Cap (as defined below) to $1,600,000 and (ii) continue to permit certain OCPs (as defined below) to exceed the $50,000 monthly OCP cap from time to time as appropriate and seek compensation for fees and expenses in excess thereof. In support of this Motion, the Debtors respectfully state as follows:[3]

## JURISDICTION

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408.

2.  The statutory predicates for this Motion are section 363(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.  On May 3, 2001, this Court entered the Original Order authorizing the Debtors to continue to utilize certain professionals, including attorneys, accountants, actuaries and consultants, in their day-to-day business operations (collectively, the "OCPs"). The Original Order authorized the Debtors to pay OCPs up to $50,000 per month (the "Monthly Cap") but states that "[t]he Debtors cannot pay more than [the Monthly Cap] for services rendered without an order of this Court authorizing such higher amount." (Original Order at 2.)

4.  The Original Order also authorized the Debtors to pay OCP's up to $300,000 in total per professional during these Chapter 11 Cases (the "Total Expenditure Cap"). Due to the length of these Chapter 11 Cases, the Total Expenditure Cap was increased to $600,000 by the

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases,* (Docket No. 25881), as it may be further amended, supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

Court's December 10, 2002 Order, to $800,000 by the Court's July 24, 2006 Order and to $1,200,000 by the Court's September 24, 2007 Order. Contemplating that further increases in the Total Expenditure Cap may become necessary, each of the orders provided that they "shall be without prejudice to the Debtors' rights to seek additional increases to the amounts they are authorized to pay Ordinary Course Professionals in the future...."

5.   On January 31, 2011, the Court confirmed the Plan in these Chapter 11 Cases. However, several parties appealed this Court's order confirming the Plan. Those appeals have been consolidated and are presently pending before the District Court. Oral argument was completed in late June, 2011 and the matter has been taken under advisement by the District Court. As a result of the pending appeals, the Effective Date under the Plan has not occurred.

6.   Presently, it is unclear when the District Court may rule on the appeals of the Confirmation Order, whether further appeals will be taken to the Court of Appeals for the Third Circuit and when the Effective Date under the Plan may occur, thereby allowing the Debtors to exit Chapter 11. In the meantime, due to the further passage of time, several more of the Debtors OCPs have total expenditures that may exceed the Total Expenditure Cap in the near future.

### RELIEF REQUESTED

7.   The Debtors respectfully request entry of an order (i) increasing the Total Expenditure Cap from $1,200,000 to $1,600,000 and (ii) continuing to permit OCPs, when appropriate, to seek compensation for fees and expenses which exceed the Monthly Cap (the "Excess OCP Fees") in accordance with the Court's interim compensation order requirements,[4]

---

[4] *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members* (Docket No. 198) and *Amended Administrative Order under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement for Professionals and Official Committee Members* (Docket No. 1949).

including review by the committees and audit by the fee auditor appointed in these Chapter 11 Cases, and other applicable rules and orders of the Court.

## ANALYSIS

8. The uninterrupted continuing services of the OCPs are vital to the Debtors' continued operations. The operations of the Debtors' businesses and these Chapter 11 Cases would be hindered if the OCPs were either (a) unable to be paid for their services or (b) required to submit to the Court formal applications for employment as professionals and subsequent monthly and quarterly fee applications for all fees and expenses billed. Requiring additional professionals to file retention pleadings and follow the usual fee application process simply because the Debtors remain in Chapter 11 longer than anticipated when the Total Expenditure Cap was set, makes no practical sense. Further, doing so could flood the Clerk's office, the Court, the U.S. Trustee and the fee examiner with unnecessary fee applications from professionals who bill modest amounts. Moreover, the unnecessary costs associated with these retention and fee applications would ultimately be borne by the Debtors' estates.

9. The Debtors hereby request an increase of the Total Expenditure Cap to $1,600,000. As reflected in the Debtors' Statement of Amounts Paid to Ordinary Course Professionals from April 1, 2011 through June 30, 2011 (Docket No. 27237), certain OCPs are nearing the current Total Expenditure Cap.

10. As outlined above, an increase of the Total Expenditure Cap is necessary due to the length of these Chapter 11 Cases. The need for the increase is neither the result of increases in the OCPs' monthly fees nor generally of any OCP's increased activity. As the Court is well aware, the Debtors have been in Chapter 11 and operating under the Total Expenditure Cap for over ten and half years. Applied over that extended period of time, the payment of $1,200,000 in fees to an OCP amounts to an average monthly expenditure of approximately $9,500. An average

4

per month this low was never comtemplated, as is clear from the fact that the Monthly Cap was set at $50,000 per month. However, by virtue of the unexpected length of these Chapter 11 Cases, this has turned out to be the case. As a result, there is a need once again to increase the Total Expenditure Cap to preserve the OCP character of numerous professionals billing very modest amounts to the Debtors.

11. Increasing the Total Expenditure Cap will not eliminate the oversight function of the Court and other parties-in-interest. Pursuant to the Original Order, the Debtors will still be required to file quarterly statements disclosing how much they pay each OCP.

12. The Court's Order of September 27, 2007 also made a slight change in the procedure for OCPs who exceed the $50,000 per month cap and how such OCPs may seek compensation. Pursuant to the Original Order, OCPs seeking fees which exceed the $50,000 Monthly Cap (the "Excess OCP Fees") were required to first seek permission to file and then to actually file monthly fee applications for the months in which they incurred Excess OCP Fees. By the Court's September 27, 2007 Order, the procedure was simplified to eliminate the need for advance permission to file such monthly applications.

13. By this Motion, the Debtors request that the Court continue to permit OCPs who seek compensation for their Excess OCP Fees to do so by simply filing fee applications for any month in which this occurs. The Debtors believe that continuing such authority will save the Debtors, their estates and all parties-in-interest time and expenses. Further, again, permitting applicable OCPs to file fee applications for Excess OCP Fees will not eliminate the oversight function of the Court and other parties-in-interest. Such fee applications will be subject to the Court's interim compensation orders which provide for the Court, the fee examiner and other

parties-in-interest an opportunity to object and be heard on the reasonableness of such fees and expenses.

## RESERVATION OF RIGHTS

14. The Debtors reserve the right to request authority to increase the amounts that they are authorized to pay OCP's in the future if necessary.

## NO PREVIOUS MOTION

15. No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

16. Notice of this Motion has been given to: (i) the office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; and (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) increasing the Total Expenditure Cap to $1,500,000, (ii) continuing to permit OCPs in appropriate circumstances who exceed the Monthly Cap to seek compensation for fees and expenses in excess thereof by filing fee applications, and (iii) granting such other and further relief as the Court deems appropriate.

Dated: October 17, 2011

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

_/s/ Laura Davis Jones_
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession