**EXHIBIT B**

**Original Application**

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: January 30, 2002 (negative notice)
Hearing Date: February 25, 2002 (if necessary)

### APPLICATION OF THE DEBTORS FOR THE ENTRY OF AN ORDER (i) APPROVING THE PAYMENT OF PROFESSIONAL FEES AND EXPENSES AND (ii) AUTHORIZING THE EMPLOYMENT AND RETENTION OF PRICEWATERHOUSECOOPERS LLP AS INDEPENDENT ACCOUNTANTS AND AUDITORS TO THE DEBTORS AND DEBTORS IN POSSESSION

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this application (the "Application") for the entry of an order (i) approving the payment

of professional fees and expenses pursuant to 11 U.S.C. § 501(b) of title 11 of the United States

Code (as amended, the "Bankruptcy Code") and (ii) authorizing the employment and retention of

PricewaterhouseCoopers LLP ("PwC") in the ordinary course of business, as independent

accountants and auditors to the Debtors. In support of this Application, the Debtors state as follows:

---

[1] Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory bases for the relief requested herein are sections 105(a), 363, 503, 1107 and 1108 of the Bankruptcy Code.

### Background

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.      Since the Petition Date, PwC has been actively involved aiding the Debtors with the administration of their estates, including aiding the Debtors' compliance with their reporting requirements under the United States securities laws (the "Securities Laws"), the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules of this Court (the "Local Rules"). Examples of PwC's contributions include:

- reviewing the Debtors' interim consolidated financial statements filed in connection with the Debtors' Forms 10-Q;
- auditing the Debtors' employee benefit plans;
- preparing the creditor matrix used to notify each potential party-in-interest of the commencement of these Chapter 11 Cases;
- aiding in the mailing of the notice of commencement of, and the temporary restraining order issued in, these Chapter 11 Cases;
- aiding in the Debtors' organization and preparation of their initial monthly operating reports; and
- preparing the Debtors' voluminous Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules").

2

5.    PwC performed this work prior to being retained by the Debtors due to a

potential conflict of interest relating to PwC's oversea's representation of one of the Debtors' foreign

subsidiaries. Although negotiations between PwC and the Debtors have been ongoing to resolve this

potential conflict, an acceptable resolution to both parties has not been found.[2]  Therefore, the

Debtors and PwC have agreed that PwC will not perform any additional bankruptcy related services

during these Chapter 11 Cases, but will remain engaged as the Debtors' long standing, ordinary

course, independent accountants and auditors.

6.    Due to the Debtors' and PwC's diligent work to resolve this potential conflict,

each party believed a workable resolution would expeditiously be reached.  Therefore, in an effort

to protect the Debtors' estates from potential damage, and because the parties were actively pursuing

a resolution, PwC continued to work and provide the Debtors' estates with significant value by

aiding the Debtors' compliance with their reporting requirements under the Securities Laws, the

Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Further, PwC's substantial experience

working as the Debtors' independent accountants and auditors since 1906, nearly 100 years, has been

invaluable throughout these Chapter 11 Cases, as well as with respect to the Debtors' compliance

with the Securities Laws and various tax planning and compliance matters. The Debtors anticipate

that PwC's retention in these Chapter 11 Cases with respect to such accounting and audit matters

will also continue to be important in the future as the Debtors require the services of independent

accountants and auditors in the ordinary course of their businesses. Therefore, the Debtors are filing

this application requesting (i) that PwC be reimbursed for its postpetition fees and expenses incurred

to date as a substantial contribution to the Debtors' estates and (ii) that the Court approve PwC's

retention, in the ordinary course, as the Debtors' independent accountants and auditors.

---

[2]A description of this potential conflict of interest is more fully set forth in the affidavit of Philip N. Seamon,
a principal in PwC, attached hereto as Exhibit A.

3

## Relief Requested

7.    By this Application, the Debtors seek authority to compensate PwC for its substantial contribution to the Debtors' estates of (i) $574,743 related to PwC's bankruptcy related services, (ii) $324,000[3] related to PwC's audit services and (iii) $200,000[4] for PwC's tax services for the period from the Petition Date through the date hereof (the "Fee Period") and $39,893.54 for PwC's actual and necessary expenses incurred while rendering such services during the Fee Period. Attached hereto as Exhibit B is a detailed itemization and description of the bankruptcy related services and expenses that PwC rendered during the Fee Period. By this application, the Debtors also seek authority to employ and retain PwC in the ordinary course of business, pursuant to section 363 of the Bankruptcy Code, as independent accountants and auditors during these Chapter 11 Cases.

### Basis for Relief

Substantial Contribution

8.    PwC's fees and expenses incurred to date satisfy the tenets of section 503(b) of the Bankruptcy Code and qualify as a substantial contribution to the Debtors' estates. Under section 503(b)(3)(D) of the Bankruptcy Code, the actual, necessary expenses incurred by a creditor in making a substantial contribution in a case under chapter 11 shall be allowed as administrative expenses. 11 U.S.C. § 503(b)(3)(D). "The applicable test to determine whether a party has made

---

[3] In accordance with the terms of its retention with the Debtors, PwC is reimbursed for audit and review services of the Debtors' consolidated financial statements based upon a fixed annual fee of $700,000. PwC's request for reimbursement herein of $324,000, however, is based upon the proportionate value of PwC's audit and review services provided to the Debtors since the Petition Date. The balance of the $700,000 would be billed to the Debtors concurrent with the performance of audit and review services performed December 2001 to March 2002.

[4] In accordance with the terms of its retention with the Debtors, PwC is reimbursed for its tax compliance services based upon a fixed monthly fee of $25,000 per month. The tax compliance retention agreement between the parties expired, however, in October of 2001. PwC is also reimbursed by the Debtors for its tax consulting services. PwC's fees for tax compliance and consulting services provided to the Debtors incurred since the Petition Date is $200,000 ($175,000 compliance and $25,000 consulting).

a "substantial contribution" entitling it to administrative expenses pursuant to section 503(b)(3)(D)

is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's

estate and the creditors." In re AM International, Inc., 203 B.R. 898, 904 (D. Del. 1996), *citing*

Lebron v. Mechem Financial, Inc., 27 F.2d 937, 944 (3d Cir. 1994). Under the standard of the Third

Circuit set forth in Lebron, "services which substantially contribute to the case are those which foster

and enhance . . . the progress of reorganization." Lebron, 27 F.2d at 944, *quoting* Matter of Consol.

Bancshares, Inc., 785 F.2d 1249, 1253 (5th Cir. 1986).

9.      In addition to qualifying for administrative priority under section

503(b)(3)(D), PwC's fees and expenses also qualify under section 503(b)(1)(A) of the Bankruptcy

Code. Under section 503(b)(1)(A) of the Bankruptcy Code, the actual, necessary costs and expenses

of preserving the estate shall be allowed as administrative expenses. 11 U.S.C § 503 (b)(1)(A). This

section is designed to grant administrative priority for expenses that arise out of postpetition

transactions with the debtor in possession and that directly and substantially benefit the estate. In

re Mid-American Waste System, Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999).

10.     The professional fees and expenses requested herein directly arose out of the

postpetition work performed by PwC. Furthermore, the work performed by PwC provided a clear

and substantial benefit to the Debtors and their estates. Without PwC's efforts, the Debtors would

not have been able to mail the notice of commencement of these Chapter 11 Cases or the notice of

the temporary restraining order issued on the Petition Date. Without PwC's efforts, the Debtors

would not have been able to complete their initial monthly operating report in accordance with the

Local Rules. In fact, the 14,000 plus pages of the Schedules prepared by the Debtors could not have

been completed without PwC's extensive work in these Chapter 11 Cases. Clearly, without PwC's

support, the Debtors would not have been able to comply with their reporting requirements under

~~the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The amount of the fees requested,~~ therefore, is fair and reasonable considering: (a) the complexity of these Chapter 11 Cases, (b) the time PwC expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

11.     Furthermore, in accordance with section 503(b)(3)(D) and the Third Circuit's holding in <u>Lebron</u>, PwC and its professionals have helped foster and enhance the progress of reorganization by aiding the Debtors' (i) mailing of the notice of commencement of these Chapter 11 Cases, (ii) filing of the initial monthly operating report and (iii) filing of the Schedules. Therefore, pursuant to Third Circuit law, PwC's fees and expenses merit administrative expense priority.

12.     In addition, considering PwC's past experience working as the Debtors' independent accountants and auditors for nearly 100 years, its knowledge and understanding of the Debtors' operations allowed it to provide a significant benefit to the Debtors' compilation and preparation of the information necessary to complete the creditor matrix and the Schedules. PwC's services were also required in order for the Debtors to comply with the Securities Laws and timely file their Forms 10-Q. Thus, by using the services of PwC, the Debtors avoided the strategic business interruption and the duplicative costs associated with obtaining substitute professionals to replace PwC. This, in turn, increased the funds available for the Debtors' creditors. Accordingly, PwC's fees and expenses incurred to date warrant administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code. Consequently, the Debtors respectfully request that PwC's reasonable postpetition fees and expenses be entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

6

Employment and Retention

13.    PwC has a wealth of experience in providing accounting, audit, tax and data-management services to public companies and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Furthermore, PwC has been providing independent accounting and audit services to the Debtors since 1906, nearly 100 years.

14.    In light of PwC's extensive experience representing the Debtors, the Debtors' management believes that PwC is well qualified to perform the requested services, given their extensive knowledge and expertise in accounting, audit, tax and data-management services, as well as their familiarity with the Debtors' operations. In addition, PwC will only provide those traditional services PwC has provided to the Debtors for nearly 100 years, and will not provide any bankruptcy or business recovery services during these Chapter 11 Cases.

15.    Such accounting and audit services are necessary to enable the Debtors to comply with the Securities Laws. Indeed, the Debtors must engage independent accountants and auditors in the ordinary course of their businesses in order to comply with the Securities Laws. Further, by using the services of PwC, the Debtors will avoid the strategic business interruption and the duplicative costs associated with obtaining substitute professionals to replace PwC. Therefore, it is in the best interests of the Debtors' estates and creditors that PwC is retained, in the ordinary course, as the Debtors' independent accountants and auditors.

Legal Basis for Employment and Retention

16.    The phrase "professional person" as used in 11 U.S.C. § 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of debtor's estate. In

7

re Johns-Manville Corp., 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986). Upon review of section 327(a)

of the Bankruptcy Code, the Court in Manville went on to find that:

> The catch all language "or other professional persons" cannot be considered other than in the context of the intimate relationship of the player to services peculiar to the administration of the reorganization process. To hold otherwise opens the door to unnecessary court involvement in potentially absurd hiring situations…[T]he whole spectrum of known specialty occupations from sanitation engineer to the company physician easily could become the subject of retention orders. The penumbra of the s 327(a) term "other professional persons" is quite obviously not intended to cover without limitation all those persons of education, ability and accomplishment in any calling who may be regarded as professionals based upon considerations of societal, governmental or academic accreditation, or their own self-esteem…[P]ersons with such a tangential relationship to the…estate do not fall within the rubric of "professional persons."

Id. at 620; see also In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D. N.Y. 1981) (Maritime

engineers hired as consultants were not "professional persons" since their retention, while important

in the mechanics of debtor's operation, did not affect the administration of debtor's reorganization).

17.     Some courts have adopted a "qualitative analysis," under which a

"professional person" is defined as an employee that is given discretion and autonomy in some part

of the administration of the debtor's estate. In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989)

("[A]pproval must be sought for the employment of a person with a relatively small task but a large

measure of discretion in performing it but not sought for a person who is to perform an important

but nondiscretionary task."); In re Nedig Corp., 117 B.R. 625 (Bankr. D. Colo. 1990).

18.     Other courts have adopted a quantitative analysis, under which the definition

of "professional person is limited to persons in those occupations which play a central role in the

administration of the debtor proceeding" and not those occupations which are involved in the day-to-

day mechanics of the debtor's business. In re Seatrain Lines, Inc., 13 B.R. at 981 (Bankr. S.D. N.Y.

1981).

19.    Therefore, if a person's status as a "professional" is not determinative; the inquiry of whether they are a "professional person" must focus on that person's duties. Accordingly, "if the duties involved are central to the administration of the estate such duties are professional in nature." In re Sieling Associates Ltd. Partnership, 128 B.R. 721, 723 (Bankr. E.D.Va. 1991) (Recognizing various duties as being central to the administration of the estate including: assisting in the negotiation of the debtor's plan of reorganization; assisting in the adjustment of the debtor/creditor relationship; and disposing of assets of the estate and acquiring assets on behalf of the estate.)

20.    Factors to be considered in determining whether an employee is a professional within the meaning of section 327 "include the following: (1) whether the employee controls, manages, administers invests purchases or sells assets that are significant to the debtors reorganization, (2) whether the employee is involved in negotiating the terms of a plan of reorganization, (3) whether the employee is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the debtor's estate, i.e. the qualitative approach, (5) to the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a 'professional' within the ordinary meaning of the term." In re First Merchants Acceptance Corporation, 1997 WL 873551, *3 (D. Del. 1997). No one factor above is dispositive and each should be weighed against the others. Id.

21.    Although accountants are commonly considered professionals under section 327 of the Bankruptcy Code, it is an accountant's role in bankruptcy, rather than its status

~~as an accountant, that controls. In re That's Entertainment Marketing Group, Inc., 168 B.R. 226.~~

(N.D. Cal. 1994). (Accounting firm held not to be a "professional person" under 11 U.S.C. 327(a) where accounting firm employed as an expert witness did not participate in the formulation of strategy or management of estate or its liabilities, and played only a tangential role in acquiring assets on behalf of estate pursuant to litigation). Thus, the Debtors are not required to retain PwC simply because of its status as an accountant.

22.    As described below, PwC will only provide the Debtors with those accounting, audit and tax services PwC has traditionally provided to the Debtors in the ordinary course. PwC will not provide the Debtors will any bankruptcy or business recovery services, and PwC will not play a central role in the Debtors' reorganization. Indeed, PwC will not have any input with respect to the Debtors' disposition or acquisition of assets, the operation of their business or the negotiation of the ultimate plan of reorganization proposed in these Chapter 11 Cases. Clearly, PwC is a "professional" within the ordinary meaning of the word, but PwC is not a professional within the meaning of section 327(a) of the Bankruptcy Code. Therefore, PwC's retention, in the ordinary course, as the Debtors' longstanding independent accountants and auditors should be approved, as in the best interests of the Debtors, their estates and creditors.

### Scope of Services

23.    PwC will provide such accounting, audit, tax and other business services as PwC and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these Chapter 11 Cases, including but not limited to the following:

a.    **Accounting and Auditing Services.**

i.    Audit the financial statements of the Debtors as may be required from time to time, and advise and assist in the preparation and filing of financial statements and disclosure documents required by the Securities and Exchange

Commission including Forms 10-Q as required by applicable law or as requested by the Debtors;

  ii. Audit any benefit plans as may be required by the Department of Labor or the Employee Retirement Income Security Act, as amended;

  iii. Review the unaudited quarterly financial statements of the Debtors as required by applicable law or as requested by the Debtors; and

  iv. Perform other audit related services for the Debtors as may be necessary or desirable.

 b. **Tax Services**.

  i. Review and assist in preparing and filing tax returns;

  ii. Advise and assist the Debtors regarding tax planning issues, including calculating net operating loss carry forwards and the tax consequences of any proposed plans of reorganization, and assist in preparing any Internal Revenue Service ("IRS") ruling requests regarding the future tax consequences of alternative reorganization structures;

  iii. Assist the Debtors in preparing for and undergoing existing and future IRS examinations; and

  iv. Rendering any and all other tax assistance as may be requested from time to time.

 24. PwC, at the request of the Debtors, also may render additional general business consulting and other related accounting and support deemed appropriate and necessary by the Debtors. PwC will not, however, provide any bankruptcy or business recovery services to the Debtors during these Chapter 11 Cases. The accounting and business services enumerated above are necessary to enable the Debtors to comply with the Securities Laws. The Debtors believe that PwC's accounting, audit, tax and related services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other professionals may provide to the Debtors

11

~~during these Chapter 11 Cases. PwC will use reasonable efforts to coordinate with the Debtors'~~
other retained professionals to avoid the unnecessary duplication of services.

### Terms of Retention

25.     PwC has agreed to represent the Debtors pursuant to a fixed fee arrangement. PwC's fees in connection with this engagement will be based upon the estimated time that PwC will necessarily spend in providing its accounting, audit, tax and business services to the Debtors. The fixed fee for the audit of the Debtors' financial statements is $700,000, which was reviewed with the Audit Committee of the Debtors' Board of Directors, and approved in July of 2001. In addition, PwC audits certain benefit plans sponsored by the Debtors. The fixed fees associated with such audits, in the aggregate, are $100,000, but the Debtors are reimbursed for such fees by the specific benefit plan trust. PwC had also agreed to provide the Debtors with tax compliance services for a fixed fee of $25,000 per month under an agreement which expired in October of 2001. These compliance services included assistance with any reviews of the Debtors' tax returns instituted by the Internal Revenue Service. Although the Debtors' management now performs most tax compliance matters in-house, the Debtors may request that PwC perform certain tax compliance matters in the future. In the event the Debtors request PwC perform any tax related services, it is anticipated by the parties that such services would be performed upon terms similar to those set forth in the October, 2001 agreement, or upon such other terms as the parties may agree. These fees are adjusted from time to time.

26.     In addition to the fees outlined above, PwC will bill the Debtors for reasonable expenses which are likely to include long distance telephone charges, hand delivery and other delivery charges, travel expenses, computerized research, transcription costs, and third-party photocopying charges.

27.     As a professional employed by the Debtors in the ordinary course, PwC will

not seek compensation and reimbursement of expenses in accordance with the Bankruptcy Code.

28.     PwC will, however, maintain reasonably detailed records of its fees and any

actual and necessary costs and expenses incurred in connection with the aforementioned services

29.     PwC has received $250,000 in retainers for services related to the Chapter 11

Cases and has been paid $506,029.56 for prepetition bankruptcy related services rendered.  The

payments have been applied to outstanding balances for prepetition services related to the filing of

the bankruptcy petitions.  The Debtors have agreed that any portion of the retainer not used to

compensate PwC for its prepetition services and expenses ultimately will be used by PwC to apply

against its postpetition billings and will not be placed in a separate account.

## Notice

30.     Notice of this Application has been given to: (i) the United States Trustee,

(ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors'

prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee and

(v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P.

2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is

required.

## No Prior Request

31.     No prior Application for the relief requested herein has been made to this or

any other Court.

13

WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto, authorizing the Debtors to (i) pay the reasonable fees and expenses of PwC incurred during the Fee Period as a substantial contribution to the Debtors' estates, (ii) employ and retain PwC as independent accountants, auditors, tax and business consultants in the ordinary course and (iii) grant such further relief as is just and proper.

Dated: January 10, 2002

KIRKLAND & ELLIS
James H.M. Sprayregen
James W. Kapp III
Samuel A. Schwartz
Roger J. Higgins
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.

Laura Davis Jones (#2436)
David W. Carickhoff, Jr. (#3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**AFFIDAVIT OF PHILIP N. SEAMON IN SUPPORT OF THE APPLICATION OF THE
DEBTORS FOR THE ENTRY OF AN ORDER (i) APPROVING THE PAYMENT OF
PROFESSIONAL FEES AND EXPENSES AND (ii) AUTHORIZING THE EMPLOYMENT
AND RETENTION OF PRICEWATERHOUSECOOPERS LLP AS INDEPENDENT
ACCOUNTANTS AND AUDITORS TO THE DEBTORS AND DEBTORS IN POSSESSION**

| | | |
|---|---|---|
| STATE OF MARYLAND | ) | |
| | ) | ss. |
| COUNTY OF HOWARD | ) | |

PHILIP N. SEAMON, being duly sworn, deposes and says:

1.    I am a Principal in PricewaterhouseCoopers LLP ("PwC"), an accounting and

financial services firm that maintains offices at numerous locations around the world, and I make this

Affidavit on behalf of PwC (the "Affidavit"). I submit this Affidavit in support of the application

(the "Application") of the above-captioned debtors and debtors in possession (collectively, the

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace &
Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a
Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico,
Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston
Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa
Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace
Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II
Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace
Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures
Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,
Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos
Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings
Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association,
Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming,
Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross
Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

"Debtors") for the entry of an order (the "Order") (i) approving the payment of professional fees and expenses pursuant to 11 U.S.C. § 503(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and (ii) authorizing the employment and retention of PwC in the ordinary course of business, as independent accountants and auditors to the Debtors in these chapter 11 cases (collectively, the "Chapter 11 Cases"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## PwC's Qualifications

1.      PwC is recognized for its expertise as accountants and auditors, as well as advising debtors, creditors and other constituents in chapter 11 proceedings.

2.      I have previously worked on many chapter 11 restructurings, advising both debtors and creditors in various cases and have vast experience working on companies in distressed situations.

3.      Since 1906 through the date hereof, nearly 100 years, PwC has provided the Debtors with accounting, audit and tax services related to the operation of their businesses and in connection with the Debtors' reporting requirements under the United States' securities laws, including (i) reviewing the Debtors' interim consolidated financial statements filed in connection with the Debtors' Forms 10-Q and (ii) auditing the Debtors' employee benefit plans. From October, 2000, through June, 2001, PwC rendered business recovery services to the Debtors in connection with their restructuring efforts, including (a) preparing the creditor matrix used to notify each potential party-in-interest of the commencement of these Chapter 11 Cases, (b) aiding in the mailing of the notice of commencement of, and the temporary restraining order issued in, these Chapter 11 Cases, (c) aiding the Debtors' organization and preparation of their initial monthly operating

2

~~reports and (d) preparing the information necessary to complete the Debtors' voluminous Schedules~~

of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules"). As of

the date hereof, PwC is currently owed (i) $574,743 related to its bankruptcy services, (ii) $324,000[2]

related to its audit services and (iii) $200,000[3] for its tax services for the period from the Petition

Date through the date hereof (the "Fee Period") and $39,893.54 for its actual and necessary expenses

incurred while rendering such services during the Fee Period. The amount of the fees requested is

also fair and reasonable given: (a) the complexity of these cases, (b) the time expended, (c) the nature

and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable

services other than in a case under the Bankruptcy Code. Further, although PwC does not intend to

continue representing the Debtors with respect to its restructuring efforts, PwC is extremely familiar

with the Debtors' businesses and affairs and is well qualified to represent the Debtors as independent

accountants and auditors in a cost-effective and efficient manner.

---

[2] In accordance with the terms of its retention with the Debtors, PwC is reimbursed for audit and review services of the Debtors' consolidated financial statements based upon a fixed annual fee of $700,000. PwC's request for reimbursement herein of $324,000, however, is based upon the proportionate value of PwC's audit and review services provided to the Debtors since the Petition Date. The balance of the $700,000 would be billed to the Debtors concurrent with the performance of audit and review services performed December 2001 to March 2002.

[3] In accordance with the terms of its retention with the Debtors, PwC is reimbursed for its tax compliance services based upon a fixed monthly fee of $25,000 per month. The tax compliance retention agreement between the parties expired, however, in October of 2001. PwC is also reimbursed by the Debtors for its tax consulting services. PwC's fees for tax compliance and consulting services provided to the Debtors incurred since the Petition Date is $200,000 ($175,000 compliance and $25,000 consulting).

## Disinterestedness Of Professionals

4.    In connection with a 1997 corporate restructuring, the Debtors determined it was necessary to liquidate W. R. Grace Limited, a wholly owned United Kingdom non-debtor foreign subsidiary of the Debtors ("Grace-UK"). Under British law, a liquidator was needed to effectuate this restructuring. Accordingly, two PwC United Kingdom partners were appointed to serve as the liquidators of Grace-UK and they continue to serve in that capacity as of the date hereof.

5.    In connection with fulfilling their roles as liquidators, the PwC United Kingdom partners obtained personal protection from liability in two forms from the Debtors — a deed of indemnity and a letter of credit agreement. Both of those documents created potential, contingent obligations from the Debtors to the two PwC partners should certain events occur in connection with the liquidation.

6.    Recognizing that the continued existence of these obligations from the Debtors to the two PwC United Kingdom partners created potential claims of the PwC partners against the Debtors, the Debtors and PwC entered into extensive negotiations in search of a means to mitigate these potential claims. As of the date hereof, a suitable solution to both parties has not been reached. Therefore, the Debtors and PwC have agreed that PwC will not perform any additional bankruptcy related services during these Chapter 11 Cases, but will remain engaged as the Debtors' long standing, ordinary course, independent accountants and auditors. Both the Debtors and PwC believe, however, that the Debtors' may retain PwC in the ordinary course of the Debtors' business as independent accountants and auditors.

## Professional Services Compensation

4

7.    PwC will provide such accounting, audit, tax and other business services as

PwC and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course

of these Chapter 11 Cases, including but not limited to the following:

      1.    **Accounting and Audit Services**.

            1.    Audit the financial statements of the Debtors as may be required from time to time, and advise and assist in the preparation and filing of financial statements and disclosure documents required by the Securities and Exchange Commission including Forms 10-Q as required by applicable law or as requested by the Debtors;

            2.    Audit any benefit plans as may be required by the Department of Labor or the Employee Retirement Income Security Act, as amended;

            3.    Review the unaudited quarterly financial statements of the Debtors as required by applicable law or as requested by the Debtors; and

            4.    Perform other audit related services for the Debtors as may be necessary or desirable.

      2.    **Tax Services**.

            1.    Review and assist in preparing and filing tax returns;

            2.    Advise and assist the Debtors regarding tax planning issues, including calculating net operating loss carry forwards and the tax consequences of any proposed plans of reorganization, and assist in preparing any Internal Revenue Service ("IRS") ruling requests regarding the future tax consequences of alternative reorganization structures;

            3.    Assist the Debtors in preparing for and undergoing existing and future IRS examinations; and

            4.    Rendering any and all other tax assistance as may be

requested from time to time.

5

8.     PwC, at the request of the Debtors, also may render additional general business consulting and other related accounting support deemed appropriate and necessary to the benefit of the Debtors' estates. PwC will not, however, render any bankruptcy or business recovery services to the Debtors during these Chapter 11 Cases. The accounting, audit and tax services enumerated above are necessary to enable the Debtors to comply with their requirements under the United States securities laws. The Debtors believe that PwC's accounting, audit, tax and other business services will not duplicate the services that, subject to this Court entering or having entered appropriate orders, other professionals may provide to the Debtors during the Chapter 11 Cases. PwC will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

9.     PwC has agreed to represent the Debtors pursuant to a fixed fee arrangement. PwC's fees in connection with this engagement will be based upon the estimated time that PwC will necessarily spend in providing its accounting, audit, tax and business services to the Debtors. The fixed fee for the audit of the Debtors' financial statements is $700,000, which was reviewed with the Audit Committee of the Debtors' Board of Directors, and approved in July of 2001. In addition, PwC audits certain benefit plans sponsored by the Debtors. The fixed fees associated with such audits, in the aggregate, are $100,000, but the Debtors are reimbursed for such fees by the specific benefit plan trust. PwC has also agreed to provide the Debtors with tax compliance services for a fixed fee of $25,000 per month under an agreement which expired in October of 2001. These compliance services included assistance with any reviews of the Debtors' tax returns instituted by the Internal Revenue Service. These fees are adjusted from time to time.

6

10.    In addition to the fees outlined above, PwC will bill the Debtors for reasonable expenses which are likely to include long distance telephone charges, hand delivery and other delivery charges, travel expenses, computerized research, transcription costs, and third-party photocopying charges.

11.    PwC will not seek compensation and reimbursement of its fees and expenses in accordance with the Bankruptcy Code, but anticipates being reimbursed by the Debtors for its fees and expenses in the ordinary course.

12.    PwC will maintain reasonably detailed records of its fees and any actual and necessary costs and expenses incurred in connection with the aforementioned services.

13.    PwC has received $250,000 as a retainer for services related to the bankruptcy and has been paid $506,029.56 for prepetition bankruptcy related services rendered. The payments have been applied to outstanding balances for prepetition services related to the filing of the bankruptcy petitions. The Debtors have agreed that any portion of the retainer not used to compensate PwC for its prepetition services and expenses ultimately will be used by PwC to apply against its postpetition billings and will not be placed in a separate account.

14.    No commitments have been made or received by PwC, nor any partner or associate thereof, as to compensation or payment in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code. PwC has no agreement with any other entity to share with such entity any compensation received by PwC in connection with the Chapter 11 Cases.

7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is
true and correct.

Executed on Jan. 9 , 2001.

Philip N. Seamon

Subscribed and Sworn to before me
this 9th day of January 2002

Dorothy A. McShane

Notary Public
My Commission expires: July 22, 2003

Notarial Seal
Dorothy A. McShane, Notary Public
Philadelphia, Philadelphia County
My Commission Expires July 22, 2003
Member, Pennsylvania Association of Notaries

8

# Exhibit B

## *Table of Contents*

*W. R. Grace & Co.*
*Statement of Fees and Expenses*

*Tab A — Month ending April 30, 2001*
    *Current period and cumulative total*

*Tab B — Month ending May 31, 2001*
    *Current period and cumulative total*

*Tab C — Month ending June 30, 2001*
    *Current period and cumulative total*

*Tab A – Month ending April 30, 2001*
*Current period and cumulative total*

**W. R. Grace & Co.**
*Engagement Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit I
Page 1 of 1

| Professional | Title | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|---|
| | | | Hours | Fees | Hours | Fees |
| Alcock, Michael | Project Assistant | $ 160 | 4.0 | $ 640.00 | 4.0 | $ 640.00 |
| Hansen, Paul | Manager | 430 | 79.3 | 34,099.00 | 79.3 | 34,099.00 |
| MacCahery, Barbara | Administrative Assistant | 85 | 2.1 | 178.50 | 2.1 | 178.50 |
| Puschaver, Timothy | Associate | 210 | 104.0 | 21,840.00 | 104.0 | 21,840.00 |
| Saunders, Stephen | Associate | 210 | 87.2 | 18,312.00 | 87.2 | 18,312.00 |
| Seamon, Philip | Partner | 570 | 4.1 | 2,337.00 | 4.1 | 2,337.00 |
| Zambrano, Ivelise | Associate | 210 | 6.0 | 1,260.00 | 6.0 | 1,260.00 |
| **Total BRS** | | | 286.7 | $ 78,666.50 | 286.7 | $ 78,666.50 |
| Andersen, Sarah | Associate | 165 | 114.5 | $ 18,892.50 | 114.5 | $ 18,892.50 |
| Behnke, Tom | Director | 375 | 102.8 | 38,550.00 | 102.8 | 38,550.00 |
| Bushing, Jodi | Associate | 165 | 99.5 | 16,417.50 | 99.5 | 16,417.50 |
| Busse, Carl | Associate | 165 | 4.0 | 660.00 | 4.0 | 660.00 |
| Kuhn, Lisa | Manager | 290 | 124.5 | 36,105.00 | 124.5 | 36,105.00 |
| Leigh, Amy T. | Associate | 165 | 13.0 | 2,145.00 | 13.0 | 2,145.00 |
| Turissini, David | Associate | 165 | 4.0 | 660.00 | 4.0 | 660.00 |
| Ubelhor, Julia | Associate | 165 | 161.0 | 26,565.00 | 161.0 | 26,565.00 |
| Vallerie, James E. | Manager | 290 | 8.6 | 2,494.00 | 8.6 | 2,494.00 |
| **Total Claims Management ("CM")** | | | 631.9 | $ 142,489.00 | 631.9 | $ 142,489.00 |
| **Total BRS and CM Fees** | | | 918.6 | $ 221,155.50 | 918.6 | $ 221,155.50 |
| Less: Travel Time Adjustment | | | | (11,922.00) | | (11,922.00) |
| **Total Adjusted Fees** | | | 918.6 | $ 209,233.50 | 918.6 | $ 209,233.50 |
| Expenses | | | | $ 15,915.10 | | $ 15,915.10 |
| Less: Travel Expense Adjustment | | | | (5,468.79) | | (5,468.79) |
| Total Adjusted Expenses | | | | $ 10,446.32 | | $ 10,446.32 |
| **TOTAL FEES AND EXPENSES** | | | | $ 219,679.82 | | $ 219,679.82 |

W. R. Grace & Co.                                                                        Exhibit II
*Engagement Summary by Task Code*                                                        Page 1 of 1
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

## SUMMARY OF PROFESSIONAL FEES - CURRENT PERIOD

| TASK | Hours | Fees | Voluntary Reductions | Net Fees |
|---|---|---|---|---|
| DM - Document Management | 6.6 | $ 1,453.50 | $ - | $ 1,453.50 |
| FA - Preparation of Fee Application | 15.0 | 3,436.00 | - | 3,436.00 |
| FD - First Day Related Issues | 36.3 | 8,899.00 | - | 8,899.00 |
| GD - General Duties | 8.6 | 1,806.00 | - | 1,806.00 |
| IR - Respond to Information Requests | 0.5 | 105.00 | - | 105.00 |
| MOR - Monthly Operating Reports | 1.1 | 473.00 | - | 473.00 |
| NO - Notice Processing and Correspondence | 332.8 | 60,161.50 | - | 60,161.50 |
| SS - Schedules and Statements of Financial Affairs | 439.8 | 120,977.50 | - | 120,977.50 |
| TRA - Travel | 77.9 | 23,844.00 | (11,922.00) | 11,922.00 |
| TOTALS: | 918.6 | $ 221,155.50 | $ (11,922.00) | $ 209,233.50 |

## SUMMARY OF PROFESSIONAL FEES - CUMULATIVE TOTALS

| TASK | Hours | Fees | Voluntary Reductions | Net Fees |
|---|---|---|---|---|
| DM - Document Management | 6.6 | $ 1,453.50 | $ - | $ 1,453.50 |
| FA - Preparation of Fee Application | 15.0 | 3,436.00 | - | 3,436.00 |
| FD - First Day Related Issues | 36.3 | 8,899.00 | - | 8,899.00 |
| GD - General Duties | 8.6 | 1,806.00 | - | 1,806.00 |
| IR - Respond to Information Requests | 0.5 | 105.00 | - | 105.00 |
| MOR - Monthly Operating Reports | 1.1 | 473.00 | - | 473.00 |
| NO - Notice Processing and Correspondence | 332.8 | 60,161.50 | - | 60,161.50 |
| SS - Schedules and Statements of Financial Affairs | 439.8 | 120,977.50 | - | 120,977.50 |
| TRA - Travel | 77.9 | 23,844.00 | (11,922.00) | 11,922.00 |
| TOTALS: | 918.6 | $ 221,155.50 | $ (11,922.00) | $ 209,233.50 |

W. R. Grace & Co.                                                          Exhibit III
*Task Code Summary by Professional*                                       Page 1 of 9
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

DM – Document Management – Retention, organization and consolidation of pertinent documents generated by parties in this Chapter 11 case.

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Hansen, Paul | $ 430 | 1.5 | $ 645.00 | 1.5 | $ 645.00 |
| MacCahery, Barbara | 85 | 2.1 | 178.50 | 2.1 | 178.50 |
| Puschaver, Timothy | 210 | 3.0 | 630.00 | 3.0 | 630.00 |
| Net Professional Fees and Hours: | | 6.6 | $ 1,453.50 | 6.6 | $ 1,453.50 |

**W. R. Grace & Co.**
*Task Code Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

**Exhibit III**
Page 2 of 9

FA – Preparation of Fee Application – Preparation of monthly interim fee applications for submission to the Court to facilitate payment of fees and expenses incurred throughput this Chapter 11 case.

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Hansen, Paul | $ 430 | 1.3 | $ 559.00 | 1.3 | $ 559.00 |
| Puschaver, Timothy | 210 | 13.7 | 2,877.00 | 13.7 | 2,877.00 |
| Net Professional Fees and Hours: | | 15.0 | $ 3,436.00 | 15.0 | $ 3,436.00 |

W. R. Grace & Co.
*Task Code Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit III
Page 3 of 9

| FD – First Day Related Issues - Follow-up and provide additional information related to First Day filings. |
|---|

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Alcock, Michael | $ 160 | 4.0 | $ 640.00 | 4.0 | $ 640.00 |
| Puschaver, Timothy | 210 | 4.1 | 861.00 | 4.1 | 861.00 |
| Saunders, Stephen | 210 | 18.1 | 3,801.00 | 18.1 | 3,801.00 |
| Seamon, Philip | 570 | 4.1 | 2,337.00 | 4.1 | 2,337.00 |
| Zambrano, Ivelise | 210 | 6.0 | 1,260.00 | 6.0 | 1,260.00 |
| Net Professional Fees and Hours: | | 36.3 | $ 8,899.00 | 36.3 | $ 8,899.00 |

**W. R. Grace & Co.**
*Task Code Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit III
Page 4 of 9

GD - General Duties – General organizational, administrative and operational matters required and necessary in providing services to the Debtors in this Chapter 11 case not specifically defined in other categories.

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Puschaver, Timothy | $ 210 | 6.5 | $ 1,365.00 | 6.5 | $ 1,365.00 |
| Saunders, Stephen | 210 | 2.1 | 441.00 | 2.1 | 441.00 |
| Net Professional Fees and Hours: | | 8.6 | $ 1,806.00 | 8.6 | $ 1,806.00 |

**W. R. Grace & Co.**                                    Exhibit III
*Task Code Summary by Professional*                      Page 5 of 9
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

| IR - Respond to Information Requests - Accumulate, coordinate and distribute at the direction of Debtor personnel information requested by interested parties to the Chapter 11 case. |
| --- |

|  |  | | Current Period | | | Cumulative Totals | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Professional | Rate | | Hours | Fees | | Hours | Fees |
| Puschaver, Timothy | $ 210 | | 0.5 | $ 105.00 | | 0.5 | $ 105.00 |
| Net Professional Fees and Hours: | | | 0.5 | $ 105.00 | | 0.5 | $ 105.00 |

W. R. Grace & Co.                                                      Exhibit III
*Task Code Summary by Professional*                                   Page 6 of 9
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

MOR - Monthly Operating Reports - Advise in the preparation of Debtors' Monthly Operating Reports to be filed with the Court in accordance with bankruptcy guidelines.

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Hansen, Paul | $ 430 | 1.1 | $ 473.00 | 1.1 | $ 473.00 |
| Net Professional Fees and Hours: | | 1.1 | $ 473.00 | 1.1 | $ 473.00 |

W. R. Grace & Co.
*Task Code Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit III
Page 7 of 9

NO - Notice Processing and Correspondence - Develop computer programs to accumulate creditors for bankruptcy notice purposes. Includes running programs, eventing creditors, creating service lists and preparation of mailing specifications for the notice agent. Additionally, the Applicant assists counsel in developing notice requirements and assists the notice agent in meeting mailing time deadlines. Assistance is provided for significant mailings, such as the notice of creditors of commencement, and for smaller notice mailings.

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Andersen, Sarah | $ 165 | 56.1 | $ 9,256.50 | 56.1 | $ 9,256.50 |
| Behnke, Tom | 375 | 24.7 | 9,262.50 | 24.7 | 9,262.50 |
| Bushing, Jodi | 165 | 97.0 | 16,005.00 | 97.0 | 16,005.00 |
| Busse, Carl | 165 | 4.0 | 660.00 | 4.0 | 660.00 |
| Kuhn, Lisa | 290 | 0.5 | 145.00 | 0.5 | 145.00 |
| Leigh, Amy T. | 165 | 13.0 | 2,145.00 | 13.0 | 2,145.00 |
| Ubelhor, Julia | 165 | 137.5 | 22,687.50 | 137.5 | 22,687.50 |
| Net Professional Fees and Hours: | | 332.8 | $ 60,161.50 | 332.8 | $ 60,161.50 |

W. R. Grace & Co.
*Task Code Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit III
Page 8 of 9

SS - Schedules and Statements of Financial Affairs - Assistance in the preparation of Debtors' Schedules of Assets and Liabilities, and Statement of Financial Affairs for submission to the Court following inception of this Chapter 11 case and in accordance with bankruptcy guidelines.

| Professional | Rate | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| | | Hours | Fees | Hours | Fees |
| Andersen, Sarah | $ 165 | 58.4 | $ 9,636.00 | 58.4 | $ 9,636.00 |
| Behnke, Tom | 375 | 63.1 | 23,662.50 | 63.1 | 23,662.50 |
| Bushing, Jodi | 165 | 2.5 | 412.50 | 2.5 | 412.50 |
| Hansen, Paul | 430 | 57.9 | 24,897.00 | 57.9 | 24,897.00 |
| Kuhn, Lisa | 290 | 109.5 | 31,755.00 | 109.5 | 31,755.00 |
| Puschaver, Timothy | 210 | 51.7 | 10,857.00 | 51.7 | 10,857.00 |
| Saunders, Stephen | 210 | 60.6 | 12,726.00 | 60.6 | 12,726.00 |
| Turissini, David | 165 | 4.0 | 660.00 | 4.0 | 660.00 |
| Ubelhor, Julia | 165 | 23.5 | 3,877.50 | 23.5 | 3,877.50 |
| Vallerie, James E. | 290 | 8.6 | 2,494.00 | 8.6 | 2,494.00 |
| Net Professional Fees and Hours: | | 439.8 | $ 120,977.50 | 439.8 | $ 120,977.50 |

**W. R. Grace & Co.**
*Task Code Summary by Professional*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit III
Page 9 of 9

| TRA - Travel - Travel time to and from client location in excess of normal daily commute (non-working). |
|---|

|  |  | Current Period | | Cumulative Totals | |
|---|---|---|---|---|---|
| Professional | Rate | Hours | Fees | Hours | Fees |
| Behnke, Tom | $   375 | 15.0 | $   5,625.00 | 15.0 | $   5,625.00 |
| Hansen, Paul | 430 | 17.5 | 7,525.00 | 17.5 | 7,525.00 |
| Kuhn, Lisa | 290 | 14.5 | 4,205.00 | 14.5 | 4,205.00 |
| Puschaver, Timothy | 210 | 24.5 | 5,145.00 | 24.5 | 5,145.00 |
| Saunders, Stephen | 210 | 6.4 | 1,344.00 | 6.4 | 1,344.00 |
| **Total:** |  | 77.9 | $   23,844.00 | 77.9 | $   23,844.00 |
| Less: Voluntary Reduction* |  |  | (11,922.00) |  | (11,922.00) |
| **Net Professional Fees and Hours:** |  | 77.9 | $   11,922.00 | 77.9 | $   11,922.00 |

*\* Reimbursement sought for for fees related to travel time has been reduced by 50%*

W. R. Grace & Co.
*Expense Summary*
*For the Month Ended April 30, 2001 & Post-Petition Cumulative*

Exhibit IV
Page 1 of 1

| Category | Total Expenses |
|---|---|
| Airline | $    9,234.06 |
| Hotel | 3,068.75 |
| Meals | 1,172.69 |
| Other Transportation | 1,703.51 |
| Sundry | 736.09 |
| Total All Expenses | $    15,915.10 |
| Less: Voluntary Reduction* | (5,468.79) |
| Net Expenses: | $    10,446.32 |

*\* Reimbursement sought for for expenses related to travel has been reduced by 50%*

Exhibit V
Page 1 of 3

W. R. Grace & Co.
*Expense Detail by Category*
*For the Month Ended April 30, 2001*

| Professional | Date | Category | Expense Description | | Amount |
|---|---|---|---|---|---|
| **AIRLINE** | | | | | |
| Behnke, Tom | 4/3/2001 | Airline | Airfare Hartford to Baltimore | $ | 72.75 |
| Behnke, Tom | 4/5/2001 | Airline | Airfare Baltimore to Chicago | | 468.62 |
| Behnke, Tom | 4/16/2001 | Airline | Airfare Chicago to West Palm Beach | | 552.16 |
| Behnke, Tom | 4/17/2001 | Airline | Airfare Chicago to West Palm Beach | | 469.28 |
| Hansen, Paul | 4/16/2001 | Airline | Denver/Baltimore/Denver | | 1,068.10 |
| Hansen, Paul | 4/23/2001 | Airline | Denver/Baltimore/Denver | | 1,185.22 |
| Kuhn, Lisa | 4/5/2001 | Airline | United ORD to BWI round trip | | 648.07 |
| Kuhn, Lisa | 4/17/2001 | Airline | US Air - PBI to BWI | | 281.75 |
| Kuhn, Lisa | 4/18/2001 | Airline | United - BWI to ORD | | 320.78 |
| Kuhn, Lisa | 04/1620/01 | Airline | American - ORD to PBI | | 585.65 |
| Puschaver, Timothy | 4/1/2001 | Airline | Denver-Baltimore | | 688.86 |
| Puschaver, Timothy | 4/4/2001 | Airline | Baltimore-Denver | | 622.86 |
| Puschaver, Timothy | 4/16/2001 | Airline | Denver-Baltimore-Denver | | 1,201.86 |
| Puschaver, Timothy | 4/23/2001 | Airline | Denver-Baltimore-Denver | | 1,068.10 |
| **Total Airline** | | | | $ | 9,234.06 |
| | | | | | |
| **HOTEL** | | | | | |
| Behnke, Tom | 4/5/2001 | Hotel | Hotel in Columbia, MD | $ | 291.20 |
| Behnke, Tom | 4/16/2001 | Hotel | Hotel in Boca Raton, FL | | 97.90 |
| Hansen, Paul | 4/16/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/17/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/18/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/19/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/23/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/24/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/25/2001 | Hotel | Columbia | | 133.10 |
| Hansen, Paul | 4/26/2001 | Hotel | Columbia | | 133.10 |
| Kuhn, Lisa | 4/5/2001 | Hotel | Sheraton Columbia | | 327.80 |
| Kuhn, Lisa | 4/18/2001 | Hotel | Sheraton Columbia | | 132.40 |
| Kuhn, Lisa | 04/1720/01 | Hotel | Sheraton Boca | | 97.90 |
| Puschaver, Timothy | 4/4/2001 | Hotel | Sheraton Columbia | | 524.35 |
| Puschaver, Timothy | 4/27/2001 | Hotel | Hilton Columbia | | 532.40 |
| **Total Hotel** | | | | $ | 3,068.75 |
| | | | | | |
| **MEALS** | | | | | |
| Behnke, Tom | 4/4/2001 | Meals | Out-of-town lunch | $ | 5.60 |
| Behnke, Tom | 4/4/2001 | Meals | Breakfast | | 4.87 |
| Behnke, Tom | 4/4/2001 | Meals | Dinner with L Kuhn | | 39.21 |
| Behnke, Tom | 4/5/2001 | Meals | Out-of-town lunch | | 6.75 |
| Behnke, Tom | 4/5/2001 | Meals | Breakfast | | 4.30 |
| Behnke, Tom | 4/17/2001 | Meals | Dinner | | 6.00 |
| Behnke, Tom | 4/17/2001 | Meals | Breakfast | | 12.00 |
| Behnke, Tom | 4/17/2001 | Meals | Lunch at airport | | 7.90 |
| Hansen, Paul | 4/16/2001 | Meals | Breakfast | | 7.84 |
| Hansen, Paul | 4/16/2001 | Meals | Dinner w/T. Puschaver & S. Saunders | | 95.37 |
| Hansen, Paul | 4/16/2001 | Meals | Dinner w/T. Puschaver & S. Saunders | | 23.00 |
| Hansen, Paul | 4/17/2001 | Meals | Breakfast | | 7.10 |
| Hansen, Paul | 4/18/2001 | Meals | Breakfast | | 5.00 |
| Hansen, Paul | 4/18/2001 | Meals | Food at baseball game for J. Forgach, M.Piergrossi, T. Pushcaver | | 38.50 |
| Hansen, Paul | 4/19/2001 | Meals | Breakfast | | 6.50 |
| Hansen, Paul | 4/19/2001 | Meals | Dinner w/T. Puschaver | | 5.50 |
| Hansen, Paul | 4/20/2001 | Meals | Breakfast | | 17.60 |
| Hansen, Paul | 4/20/2001 | Meals | Dinner w/T. Puschaver | | 13.50 |
| Hansen, Paul | 4/24/2001 | Meals | Breakfast | | 7.00 |
| Hansen, Paul | 4/24/2001 | Meals | Dinner w/T. Puschaver & S. Saunders | | 131.80 |
| Hansen, Paul | 4/25/2001 | Meals | Breakfast | | 6.00 |
| Hansen, Paul | 4/26/2001 | Meals | Breakfast | | 7.00 |
| Hansen, Paul | 4/26/2001 | Meals | Dinner w/T. Puschaver & J. Forgach | | 89.58 |
| Hansen, Paul | 4/27/2001 | Meals | Breakfast | | 17.60 |