IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: February 27, 2012, at 9:00 a.m. |
| ) | Objection Deadline: February 10, 2012 at 4:00 |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE DEBTORS TO MAKE CONTRIBUTIONS DURING 2012 TO THE GRACE RETIREMENT PLANS**

The Debtors respectfully move this Court for the entry of an order substantially in the form attached hereto as <u>Exhibit A</u> (the "Order"), authorizing but not requiring them to contribute in 2012 up to approximately $109.3 million (the "2012 Contribution") to the trust (the "Plan Trust") holding and investing assets for the benefit of the Debtors' U.S. defined benefit employee retirement plans (the "Grace Retirement Plans" or the "Plans").[2]

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, *Motion for Entry of an Order Authorizing, but not Requiring, the Debtors to Make Contributions to the Grace Retirement Plans*, dated February 18, 2011 [Docket no. 26344] (the "2011 Pension Contribution Motion"), the *Order*

The 2012 Contribution comprises two components:

- A $36.4 million contribution (the "Planned 2012 Pension Contribution") that the Debtors have contemplated making during 2012, of which approximately $25.9 million is required by statute (the "2012 Statutory Minimum Contribution");[3] and

- An additional contribution of up to $72.9 million (the "2012 Additional Contribution").

For the reasons outlined in the 2011 Pension Contribution Motion, contributing the Planned 2012 Pension Contribution and the amounts set forth in Exhibit B during the 2013 – 2015 years to the Plan Trust will help maintain Grace Retirement Plans funding levels through 2015 and beyond. These contributions also will help the Debtors avoid the risk of sharp increases in future minimum required contributions.

The 2012 Additional Contribution is integral to accomplishing those goals. In addition, the Debtors will accrue a number of other tangible benefits from making the 2012 Additional Contribution, including:

- Generating cash tax savings in 2012 of up to approximately $25.5 million;[4]

- Reducing, over the 2012 – 2015 time period, estimated cash pension contributions by approximately $24.5 million;

- Generating an internal rate of return ("IRR") of up to 65% over the 2012 – 2015 time period based upon the foregoing cash savings of up to approximately $50 million;

- Continuing to reduce volatility in future pension benefit obligations ("PBO"); and

---

*Authorizing, but not Requiring, the Debtors to Make Contributions to the Grace Retirement Plans*, dated March 25, 2011 [Docket no. 26628] (the "2011 Pension Contribution Order") or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases* [Docket no. 25881], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Chapter 11 Plan").

[3] Exhibit B to the 2011 Pension Contribution Motion forecast the Planned 2012 Pension Contribution to be approximately $39.5 million. That amount decreased to $36.4 million as a function of the actual (as of December 31, 2011) versus anticipated (in February 2011) performance of Grace Retirement Plans assets and a number of other factors, including changes in assumptions made in producing the underlying forecasts in March 2011 and January 2012.

[4] Such cash tax savings are premised in part upon the Debtors paying the 2012 Contribution to the Plan Trust on or before March 31, 2012.

- Further optimizing the Reorganized Debtors' capital structure at exit and in the years following by exchanging volatile and uncertain unfunded pension benefit obligations for a fixed amount of debt at a contractual interest rate.

Based upon the foregoing, the Debtors have determined in their sound business judgment that it is in the best interests of their estates and all their stakeholders to make the 2012 Contribution on the terms and conditions set forth in this Motion.

The 2012 Contribution may require the Debtors to increase the anticipated size of their exit financing needs. But the Debtors, in consultation with their advisors (as further discussed in the O'Connell Declaration), have concluded that they have more than ample liquidity and debt capacity to pay all allowed claims contemplated by the Chapter 11 Plan, regardless of whether their exit financing needs increase as a result of having made the 2012 Contribution.[5]

On January 13, 2012, the Debtors contributed $12.1 million in required contributions (the "January 2012 Contribution") to the Plan Trust as part of their strategy to secure an additional $1.6 million reduction in their PBGC premiums. The Debtors were able to avail themselves of this premium decrease by adjusting the allocation of credit for the 2011 Additional Contribution from 2011 to 2010. This adjustment created a statutory requirement for the Debtors to make the $12.1 million payment on or before January 15, 2012. As part of the relief requested in this Motion, the Debtors are requesting the Court retroactively approve the January 2012 Contribution.

The Debtors intend to contribute the remaining $97.2 million balance of the 2012 Contribution to the Plan Trust on or before March 31, 2012, which will allow the Debtors to reap

---

[5] John James O'Connell III, a managing director of Blackstone Advisory Partners, L.P., financial advisors to the Debtors, has submitted a declaration in support of this Motion (the "O'Connell Declaration"), which is attached hereto as Exhibit C and it is incorporated herein by reference.

certain cash tax savings in 2012 and to begin generating returns on the investments made with those funds.

On January 19, 2012, the Debtors provided a written overview of the 2012 Contribution to representatives of each of the official committees (collectively, the "Committees") and the future claimants' representatives for asbestos personal injury and asbestos property damage claims (the "FCRs"). On January 20, 2012, the Debtors' management and professionals discussed the 2012 Contribution and this Motion with the Committees' and FCRs' professionals.

In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 6004(h).

## BACKGROUND

### I. THE 2011 PENSION CONTRIBUTION MOTION

3. On March 31, 2011, for the reasons set forth in the 2011 Pension Contribution Motion and pursuant to the 2011 Pension Contribution Order, the Debtors contributed $180 million (the "2011 Additional Contribution") to the Plan Trust in addition to the approximately $65.6 million 2011 statutory minimum required contribution for 2011. The 2011 Additional Contribution yielded several tangible benefits, including:

- Realizing in 2011 cash tax savings of $63 million;
- Reducing PBGC premiums by $1.6 million;

- Reducing estimated cash contributions over the 2012 – 2015 time period by approximately 49%, from approximately $97 million per year to approximately $49 million per year;

- Avoiding more than $50 million in previously unforecast increases in unfunded PBOs; and

- Generating an IRR of approximately 24.2% on the 2011 Additional Contribution as a result of the foregoing benefits.

## II. THE 2012 CONTRIBUTION HAS A SOUND BUSINESS PURPOSE, AND WILL BENEFIT ALL STAKEHOLDERS

4. The Debtors have determined that it is in the best interests of their estates to make the 2012 Contribution for the reasons set forth below. In order to maximize the benefits set forth below, the Debtors intend to pay the entire 2012 Contribution to the Plan Trust on or before March 31, 2012, as compared to making piecemeal payments over the course of 2012.

### A. The 2012 Contribution Will Produce Significant Cash Benefits

*Cash Tax Savings of Up to $ 38.3 Million*:

5. The 2012 Contribution will reduce the Debtors' 2012 cash tax outlays by approximately $38.3 million, of which approximately $25.5 million will be attributable to the 2012 Additional Contribution. Such cash tax savings are premised in part upon the Debtors paying the 2012 Contribution to the Plan Trust on or before March 31, 2012.

*The 2012 Additional Contribution Is Projected to Generate Additional Cash Savings of $24.5 Million*:

6. As illustrated in Exhibit B, making the 2012 Additional Contribution will reduce cash pension contributions during the 2012 – 2015 time period by approximately $24.5 million, as compared to making only the Planned 2012 Pension Contribution. This forecast reduction is based upon, among other factors, returns during the 2012 – 2015 time period that the Plan Trust is forecast to earn from the investments made with the 2012 Additional Contribution proceeds.

*The 2012 Additional Contribution Will Generate an Internal IRR of up to 65%:*

7.     The combination of making the 2012 Additional Contribution and contributing the entire 2012 Contribution (including the 2012 Additional Contribution) to the Plan Trust on or before March 31, 2012, will produce a projected IRR of approximately 65% as compared to making the Planned 2012 Contribution over the course of 2012. This IRR arises from the combination of recovering the 2012 cash tax savings, which are more than 1/3 of the 2012 Additional Contribution, and second, reducing out-year cash contributions to the Plan Trust by a similar amount in the 2013 – 2015 period.

**B.     The 2012 Contribution Will Further Reduce Both PBO Volatility and Unfunded Liabilities:**

8.     As of December 31, 2011, the Grace Retirement Plans unfunded PBO is approximately $215.5 million, as compared to $367.4 million a year earlier. Had the Debtors not made the 2011 Additional Contribution, the Debtors' obligation as to the unfunded PBO as of December 31, 2011, would have increased by more than $50 million. The 2011 Additional Contribution avoided that increase by permitting the Debtors to implement their Glide Path strategy, and shifting their equity/fixed income asset allocation during 2011 from 58% equity and 42% fixed income as of December 31, 2010, to 30% equity and 70% fixed income as of December 31, 2011. Moreover, the Debtors increased their liability duration match from 9% to 44%, which reduced interest rate volatility risk to the liability discount rate. As a result, as of December 31, 2011, the Plans' performance, as measured by return on investment, was in the top quartile of similarly-sized pension plans.

9.     Finally, making the 2012 Contribution will mean that the Debtors will not be statutorily obligated to make any pension contributions until April 2013, at the earliest.

### III. THE DEBTORS HAVE MORE THAN AMPLE LIQUIDITY AND DEBT CAPACITY TO MAKE THE ADDITIONAL CONTRIBUTION

10. As of December 31, 2011, the Debtors had on hand approximately $1.2 billion of cash on a consolidated basis. Pursuant to the terms of the Plan, the Debtors would have paid approximately $1.6 billion of allowed claims on a pro forma basis assuming they emerged from bankruptcy on December 31, 2011. As such, the Debtors have estimated, on a pro forma basis assuming a December 31, 2011, exit from bankruptcy, that in addition to then-existing cash balances, they would have needed an exit financing credit facility ("Exit Facility") in the amount of approximately $570 million to fund such projected emergence payments.

11. The 2012 Contribution may require the Debtors to increase the Exit Facility's size. Any such increase would depend upon a number of factors, including the timing of their exit from bankruptcy. The Debtors have more than ample liquidity and debt capacity to support any additional borrowing that the Debtors determine in their business judgment would be necessary as a result of the 2012 Additional Contribution being made. Regardless of whether the 2012 Contribution is made, the Debtors' capital structure, based upon relevant credit statistics, will remain conservative.

12. Moreover, the major credit rating agencies Moody's and Standard & Poor's treat after-tax underfunded pension obligations as debt for purposes of their credit analysis.[6] Thus, even if the size of the Exit Facility were to increase as a result of the Debtors having made the 2012 Additional Contribution, such an increase would not be viewed as an increase in the Reorganized Debtors' overall debt level. Instead, to the extent that the Exit Facility does increase in size, the Debtors and their advisors believe that the 2012 Additional Contribution

---

[6] See Standard & Poor's *Pension Deficits Pose Risks to Corporate Credit, Despite Funding-Relief Measures*, June 2010 and Moody's *Managing Ratings with Increased Pension Liability,* March 2009.

would be better viewed as an exchange of highly volatile and uncertain unfunded pension benefit obligations for a fixed amount of debt at a contractual interest rate.

### RELIEF REQUESTED

13.     The Debtors respectfully request the Court enter the Order, authorizing but not requiring them to make the 2012 Contribution on the terms and conditions set forth in this Motion.

### ANALYSIS

14.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Courts in this jurisdiction may approve such use of estate property outside the ordinary course of business if the debtor establishes that:

> (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith.

*In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, 7-8 (D. Del. May 20, 2002), citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). *See also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test'."); *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("a debtor's decision must be supported by an articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)).

15. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). A party-in-interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

16. It is a matter of sound business judgment for the Debtors to make both components of the 2012 Contribution for the reasons set forth in this Motion. Moreover, the 2012 Additional Contribution accrues additional benefits (as compared to only paying over the Planned 2012 Pension Contribution). In particular, it will:

- Generate cash tax savings in 2012 of up to approximately $25.5 million;

- Reduce, over the 2012 – 2015 time period, estimated cash pension contributions by approximately $24.5 million;

- Generate an internal rate of return ("IRR") of up to 65% over the 2012 – 2015 time period based upon the foregoing cash savings of up to approximately $50 million;

- Continue to reduce volatility in future pension benefit obligations ("PBO"); and

- Further optimize the Reorganized Debtors' capital structure at exit and in the years following by exchanging a volatile and uncertain unfunded pension benefit obligations for a fixed amount of debt at a contractual interest rate.

## CONCLUSION

17. In light of the foregoing, the Debtors submit that the Court should enter the Order authorizing the Debtors to make the 2012 Contribution, because doing so is in the best interest of the Debtors' estates and satisfies the "sound business judgment" test for the use of estate assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

## NO PREVIOUS MOTION

18. No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

19. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) the Pension Benefit Guaranty Corporation. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request the Court enter the Order authorizing but not requiring the Debtors to make the 2012 Contribution and granting such other relief as may be appropriate.

Dated: January 23, 2012

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

BAER HIGGINS FRUCHTMAN LLC
Janet S. Baer
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession