# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hearing Date: February 27, 2012, at 9:00 a.m. |
| | ) Objection Deadline: February 10, 2012 |
| | ) |
| | Re: Docket No. 25864 |

## SUPPLEMENTAL OBJECTION SEEKING DISALLOWANCE OF CLAIM NO. 2114 OF NY HILLSIDE, INC.

This objection (the "Supplemental Objection") supplements the Debtors' *Objection Seeking Disallowance of Claim No. 2114 of NY Hillside Inc* dated December 3, 2010 [Docket no. 25864] (the "Original Objection"). For the reasons set forth herein and in the Original Objection, the Debtors request the Court enter an order substantially in the form attached hereto as Exhibit A (the "Order"), disallowing Claim no. 2114 (the "Claim") in its entirety.[2] NY

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Original Objection, the *Affidavit of Michael G. Daniel Regarding Debtors' Objection Seeking Disallowance of*

Hillside, Inc. ("NY Hillside") filed the Claim and subsequently transferred it to Mr. Charles Jurgens ("Mr. Jurgens") and Mr. Mahguib El Arabi ("Mr. El Arabi") (Messrs. Jurgens, El Arabi and NY Hillside are collectively referred to herein as "Claimant").

Claimant is asking the Court to allow its Claim in the amount of $25,000. But Claimant is not entitled to any allowed claim. In December 2001, Samson Hydrocarbons Corporation ("Samson"), formerly Grace Petroleum Corporation ("GPC"), paid Claimant that same amount ($25,000) to discharge the very same liabilities at issue in the Claim. In exchange for that payment, Claimant agreed to a general release, which is documented in Art. 2.1 of the Samson-NY Hillside settlement agreement dated December 2001 (the "2001 Settlement Agreement," attached to the Claim, which is Exhibit A to the Original Objection). The release is very clear: Claimant and the other Hillside Parties (as defined in the 2001 Settlement Agreement) *"fully and forever release[d] and discharge[d]"* all possible interested parties, including GPC and Samson, *as well as their respective shareholders and affiliates*:

> from any and all claims, debts, obligations, lawsuits, demands, causes of action, liens, *judgments, losses, liabilities, setoffs, recoupments, penalties, fines, damages, rights, covenants, warranties, suits, costs or expenses of any nature or kind*, ... which pertain, refer or relate to: (1) *the facts, matters, events and/or theories of relief* ... alleged in the Action against ... Samson and Related Parties; (2) *past operations on the Subject Properties, whether asserted in the Action or not*; and (3) *any environmental conditions on the Subject Properties* ...

2001 Settlement Agreement at 2.1 (emphasis added). Thus not only was GPC explicitly released from *any and all liability* asserted in the Claim, *regardless of time period*, but so too were Debtor Grace Energy Corporation ("GEC") and Debtor W. R. Grace & Co. ("Grace"). During

---

*Claim No. 2114 of NY Hillside, Inc.*, January 3, 2011, attached as Exhibit A to the Certificate of Counsel, filed on January 5, 2011 [Docket no. 26025] (the "Daniel Affidavit") or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases* [Docket no. 25881], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

the time period at issue in Claimant's Claim, GEC was the direct shareholder of GPC and Grace was and continues to be GEC's direct shareholder (and therefore GPC's affiliate prior to December 30, 1992).

Claimant's Response ignores the above-quoted plain language of the 2001 Settlement Agreement—even though Claimant attached the agreement to the Claim. Claimant instead asserts that Samson did not compensate Claimant for the period prior to December, 30, 1992, which was the date on which GEC sold GPC's stock to Samson Investment Company (Samson's parent). In other words, Claimant argues that Samson compensated Claimant only for the period after that date. Claimant is therefore entitled to additional compensation for the period prior to that date. This argument cannot stand in the face of the 2001 Settlement Agreement.

Moreover, Claimant's assertion directly contradicts the facts of the matter. Indeed, the only possible operations at, and environmental conditions of, the Subject Properties for which Claimant could be compensated by Samson—or GPC, the Debtors or any of the other parties released in the 2001 Settlement Agreement—occurred prior to December 30, 1992.

- As a threshold matter, Samson never operated the Subject Properties at any time:

  - GPC operated the Subject Properties until 1989, when it leased them to Petro, Resources, Inc. ("Petro"); and

  - Effective December 30, 1992, GEC sold the stock of GPC to Samson Investment Company, which later changed GPC's name to Samson. Thus, Samson never had control over the Subject Properties at any time.

- Moreover, Samson has since filed a proof of claim (the "Indemnification POC") against the Debtors for reimbursement of the $25,000 it paid to Claimant pursuant to the 2001 Settlement Agreement. In the Indemnification POC, Samson asserts the indemnification provisions of the Sale Agreement (Exhibit C to the Original Objection), which provide in relevant part that the Debtors are to indemnify Samson for "the *environmental condition* of any oil, gas and mineral leases and any other properties." *That indemnification clearly relates to environmental conditions existing prior to December 30, 1992*, the date of the Sale Agreement—which is *exactly the same time period for which Claimant is asserting its Claim* against the Debtors.

There is only one, ineluctable conclusion to be drawn from the facts adduced above and in the Original Objection: Claimant has already been compensated for any possible liability asserted in the Claim, and in exchange for that compensation, "fully and forever released" the Debtors (and other parties) from all such liability. In other words, to allow the Claim would be to compensate Claimant twice—a result that is contrary to both the law and the facts of this matter. The Debtors therefore respectfully request the Court to disallow and expunge the Claim.

### RELEVANT DOCKET ENTRIES AND PROCEDURAL HISTORY[3]

1. On September 30, 2002, Claimant timely filed the Claim.

2. On December 3, 2010, the Debtors filed the Original Objection [Docket no. 25864].

3. On December 22, 2010, the Court received *Claimant's Response to Objection Seeking Disallowance of Claim No. 2114 of NY Hillside. Inc.* [Docket no. 25695] (the "Claimant's Response"). Claimant asserts in the Claimant's Response that:

> GPC acknowledges it entered into an Assignment of Oil and Gas Leases to Petro Resources on April 30, 1989. Prior to that date it operated on the Leases …

> *****

> The fact that Grace Energy sold the stock of GPC to Samson Investment in 1993 does not change the fact that they operated on the Leases prior to the sale. In addition Samson did not assume any liability with respect to Grace's operations before their acquisition date.

> *****

> At no time did attorneys representing Grace at the time of the Settlement Agreement deny that Grace operated on the property or should not be a party to the Settlement Agreement.

---

[3] Copies of the relevant pleadings and other documents referred to herein will be provided to the Court in the hearing binder to be supplied by the Debtors with the Preliminary Hearing Agenda on February 13, 2012.

Claimant also asserts that the Claim "relates to a different time period" than the one relating to Samson's payment to NY Hillside pursuant to the 2001 Settlement Agreement. This assertion is without merit and directly contradicts the facts of this matter. Samson made the payment partly in exchange for the *specific release* by NY Hillside and the other Hillside Parties (as the 2001 Settlement Agreement defines that term) of GPC *and its shareholders and affiliates from any further liability* whatsoever relating to *past operations* and *any environmental conditions* on the Subject Properties for *any time period,* whether prior to the date of the 2001 Settlement Agreement or subsequent thereto.[4] Claimant's Response does not articulate any other legal or factual basis under which GEC and Grace could have or did have any independent liability to Claimant.

4.      On January 3, 2011, the Debtors filed a certificate of counsel with the Daniel Affidavit attached thereto as <u>Exhibit A</u> [Docket no. 26025]. The Daniel Affidavit establishes that Claimant's Response is incorrect in asserting that Samson's payment to NY Hillside "relates to a different time period." The affidavit states in relevant part:

> At the time Samson Investment Company purchased the stock of GPC from Grace Energy, *GPC had no operations at or ownership in the real properties located in Los Angeles County,* California which are the subject of the case captioned *Petro Resources. Inc. vs. N. Y. Hillside. Inc., et al.*, Case No. BC 222456. in the Superior Court of California, Los Angeles County (the "<u>Petro Suit</u>").
>
> \*\*\*\*\*
>
> GPC had assigned all of its interest in the Subject Properties, including its Oil and Gas Leases to Petro Resources, Inc., and *divested itself of any interest in operations on the Subject Properties no later than April 1989*, approximately 3 years before Samson Investment Company purchased the stock of GPC.

---

[4] Settlement Agreement § 2.2 also provides that the Hillside Parties specifically relinquished all rights to claims that were unknown as of the date thereof. Claimant therefore cannot argue that the Claim is for claims that were "unknown" as of the date of the Settlement Agreement.

> At no time did Samson own the Subject Property or participate in any operations on the Subject Property.

Daniel Affidavit at 2. In other words, the *only* time period for which GPC and its successor, Samson, could possibly be liable to Claimant for environmental conditions on the Subject Properties was prior to December 30, 1992—a fact confirmed by Samson's Indemnification POC, which seeks indemnification from the Debtors for the $25,000 payment to NY Hillside on the ground that the payment was on account of "environmental conditions" at the Subject Properties that were in existence prior to December 30, 1992.

5.  On January 13, 2011, the Debtors filed a Certificate of Counsel with a form of order attached thereto proposing to disallow the Claim [Docket no. 26073].

6.  On January 14, 2011, due in large part to the fact that Mr. Jurgens, a non-lawyer, attempted to represent NY Hillside, a corporation, in defending the Original Objection, the Court entered its *Modified Order Disallowing Claim No. 2114 of N Y Hillside, Inc.* [Docket no. 26074] (the "January 2011 Order"). The January 2011 Order disallowed Claim no. 2114 and provided in relevant part that:

> The disallowance of Claim 2114 of NY Hillside is without prejudice to NY Hillside's right to re-assert the claim upon a proper motion being brought by counsel for NY Hillside.

January 2011 Order at ¶ 3.

7.  On January 14, 2011, Mr. Jurgens filed a request to reinstate the Claim [Docket no. 26094]. In that request, Mr. Jurgens alleged that he and Mr. El Arabi were the transferees to whom NY Hillside had transferred the Claim.

8.  On May 3, 2011, Mr. Jurgens filed a further request to reinstate the Claim [Docket no. 27034].

9.      On June 7, 2011, the Court entered *An Order Regarding Claim no. 2114 Of NY Hillside, Inc.* [Docket no. 27039] (the "Reinstatement Order"), which provided in relevant part that Mr. Jurgens shall:

> [o]n or before 4:00 p.m. Eastern on July 7, 2011, ... file and serve a transfer of claim from NY Hillside, Inc. to the person(s) or entit(y)(ies) now asserted to hold the claim as required by and in compliance with Fed.R.Bankr.P. 3001(e).

Reinstatement Order at ¶ 1. The Reinstatement Order also provided that a failure to comply with this deadline—either with respect to filing a transfer of claim (the "Claims Transfer Notice") or serving Debtors' counsel—would result in the Claim being disallowed without any further action. The Debtors did not receive service of the Claims Transfer Notice prior to the 4:00 p.m., July 7, 2011, deadline set forth in the Reinstatement Order.

10.     In fact, Debtors' counsel did not receive a copy of the Claims Transfer Notice from Mr. Jurgens until the late summer of 2011, several weeks after the Reinstatement Order's deadline, when Mr. Jurgens sent a copy of that notice to Debtors' counsel. Mr. Jurgens did so only after he called Debtors' counsel, who advised him that she had not been served with the Claims Transfer Notice, despite the requirement in the Reinstatement Order that Mr. Jurgens serve Debtors' counsel with that notice. During that telephone conference, Mr. Jurgens advised Debtors' counsel that he was attempting to file the Claims Transfer Notice, and he further advised Debtors' counsel that he was requesting the Court place the matter of the Claim's allowance or disallowance on the hearing agenda.

11.     Mr. Jurgens subsequently filed with the Court a statement, dated November 14, 2011, alleging that he had submitted the Claim Transfer Notice to the Court on June 17, 2011 (the "Jurgens Statement"). On or about November 30, 2011, the Bankruptcy Court Clerk's office entered the Jurgens Statement on the docket in an entry dated November 14, 2011 [Docket

no. 28052]. The Jurgens Statement also requested the Court enter an order setting a hearing date regarding the allowance or disallowance of the Claim.

12. On or about November 30, 2011, the Bankruptcy Court Clerk's office also entered the Claim Transfer Notice onto the docket in an entry dated as of June 17, 2011 [Docket no. 28051].

13. On January 9, 2012, the Court entered an order [Docket no. 28338] (the "Hearing Order"):

- Setting February 27, 2012, as the hearing date regarding whether to allow the Claim;
- Setting February 10, 2012, as the deadline by which to file any objections; and
- Requiring Mr. Jurgens to serve notice of the Hearing Order on Mr. El Arabi on or before January 17, 2012.

14. On the date hereof, the Debtors filed this Supplemental Objection.

## Conclusion

15. The record is clear. Samson satisfied Claimant's claims more than ten years ago. Claimant is entitled to no further payments. The Claim should therefore be disallowed.

16. Claimant has nonetheless asserted in his Claimant's Response that Samson's payment was for a "different time period" than the period for which Samson compensated Claimant. It appears that Claimant is asserting that Samson compensated it for post-December 30, 1992, events, and it is now seeking compensation from the Debtors for the period ending on that date. This assertion contradicts the plain language of the 2001 Settlement Agreement. Samson's payment to Claimant pursuant to the 2001 Settlement Agreement resolved ***all possible claims*** against ***all possible parties*** (including but not limited to Grace, GEC and all the other Debtors) that Claimant could have for environmental conditions at the Subject Property—***regardless of when*** such environmental conditions could have arisen.

17. Moreover, Samson never owned or operated the Subject Properties—which means that Samson's payment could relate only to the pre-December 30, 1992 timeframe, when Samson's predecessor, GPC, had operations on the Subject Property in the 1980s. GPC then leased the properties to Petro in 1989, more than three years before Samson purchased GPC's stock from GEC on December 30, 1992. In addition, Samson's assertion of its right under the Sale Agreement to indemnification from the Debtors for the $25,000 paid to Claimant is entirely consistent with the fact that its payment to Claimant was for the pre-December 30, 1992 timeframe. Indeed, Samson could not assert a valid right to indemnification against the Debtors for environmental conditions arising after that date.

18. There is only one conclusion to be drawn, based upon these facts: By seeking to have the Court allow the Claim, Claimant is seeking to collect twice for the same alleged liability, and this cannot be allowed under any circumstances. The Debtors therefore respectfully request the Court enter the Order, disallowing and expunging the Claim for all purposes, and specifically barring Claimant from asserting further claims against the Debtors and Reorganized Debtors for any matter arising from the Claim.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request the Court enter the Order disallowing the Claim in its entirety and granting such other relief as may be appropriate.

| | |
|---|---|
| Dated: February 9, 2012 | KIRKLAND & ELLIS LLP<br>Adam Paul<br>John Donley<br>300 North LaSalle Street<br>Chicago, IL 60654<br>(312) 862-2000<br><br>and<br><br>BAER HIGGINS FRUCHTMAN LLC<br>Janet S. Baer<br>Roger J. Higgins<br>111 East Wacker Drive<br>Suite 2800<br>Chicago, IL 60601<br>(312) 836-4047<br><br>and<br><br>PACHULSKI STANG ZIEHL & JONES LLP<br><br>_____<br>Laura Davis Jones (Bar No. 2436)<br>James E. O'Neill (Bar No. 4042)<br>Kathleen P. Makowski (Bar No. 3648)<br>Timothy P. Cairns (Bar No. 4228)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>(302) 652-4100<br>(302) 652-4400<br><br>Co-Counsel for the Debtors and Debtors-in-Possession |