**Exhibit A**

**Consent Decree**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | No. |
| | ) | |
| NUSTAR TERMINALS SERVICES, INC. and | ) | |
| SGH ENTERPRISES, INC., f/k/a | ) | |
| SAMSON HYDROCARBONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT DECREE**

2

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 3 |
| II. | JURISDICTION | 5 |
| III. | PARTIES BOUND | 5 |
| IV. | DEFINITIONS | 5 |
| V. | STATEMENT OF PURPOSE | 9 |
| VI. | PAYMENTS | 10 |
| VII. | FAILURE TO COMPLY WITH CONSENT DECREE | 15 |
| VIII. | COVENANT NOT TO SUE BY PLAINTIFF | 17 |
| IX. | RESERVATION OF RIGHTS BY PLAINTIFF | 18 |
| X. | COVENANT NOT TO SUE BY SETTLING DEFENDANTS AND OTHER SETTLING PARTY | 19 |
| XI. | EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION | 20 |
| XII. | RETENTION OF RECORDS | 21 |
| XIII. | NOTICES AND SUBMISSIONS | 22 |
| XIV. | RETENTION OF JURISDICTION | 24 |
| XV. | INTEGRATION | 24 |
| XVI. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 24 |
| XVII. | SIGNATORIES/SERVICE | 25 |
| XVIII. | FINAL JUDGMENT | 25 |

3

## I. BACKGROUND

A.   The United States of America (the "Plaintiff" or the "United States"), on behalf of the Secretaries of the Army and Air Force and the Administrator of the Environmental Protection Agency ("EPA"), has filed a complaint in this matter pursuant to Massachusetts General Laws Chapter 21E and the federal Declaratory Judgment Act, 28 U.S.C. § 2201 (the "Complaint"), against NuStar Terminals Services, Inc. ("NuStar TS"), and SGH Enterprises, Inc., formerly known as Samson Hydrocarbons Company, seeking to recover costs that it has incurred and a declaratory judgment with respect to costs it will incur in responding to contamination resulting from the alleged release of liquid fuel from a section of a pipeline located on the Massachusetts Military Reservation ("MMR"). Both the alleged release from this section of pipeline and the alleged resultant contamination are referred to and defined herein as Fuel Spill-12 ("FS-12"). SGH Enterprises, Inc. is referred to herein as "Samson Hydrocarbons."

B.   The Complaint alleges that:

      i.      the pipeline, referred to therein as the "Pipeline," extends from the Cape Cod Canal through the Town of Sandwich to the former Otis Air Force Base ("Otis AFB") within the MMR;

      ii.     the Pipeline was owned and operated by Standard Transmission Corporation ("Standard Transmission");

      iii.    the Pipeline was used to transfer fuel from the Standard Transmission terminal at the Cape Cod Canal to Otis AFB between 1965 and 1973;

      iv.    after construction of the Pipeline, fuel leaked from a section of the Pipeline at a location along Greenway Road north of Snake Pond on the MMR ("FS-12");

      v.     NuStar Terminals Services, Inc. and Samson Hydrocarbons are successors to Standard Transmission;

      vi.    the United States has incurred and will incur response costs relating to FS-12; and

      vii.   NuStar Terminals Services, Inc. and Samson Hydrocarbons are liable to the United States for FS-12 response costs under M.G.L. Chapter 21E, Section 4.

C.   The pipeline referred to in the Complaint is also referred to and defined herein as the "Pipeline." In addition to the costs the United States has incurred with respect to FS-12, the United States has also incurred costs with respect to contamination allegedly resulting from leakage of liquid fuel from a different section of the Pipeline at the MMR, referred to and defined herein as FS-13. Although the Complaint does not include a claim with respect to FS-13, the settlement embodied in this Consent Decree, including the United States' covenant not to sue, also includes claims or potential claims related to FS-13 as specified herein.

D.   NuStar TS and Samson Hydrocarbons do not agree with the allegations and do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the Complaint, and, absent the settlement set forth in this Consent Decree, NuStar TS and Samson Hydrocarbons would deny liability, would file counterclaims and/or affirmative defenses against the United States relating to the subject matter of the Complaint, including, but not limited to

4

asserting that the statute on which the Plaintiff's claims are based was not in effect at the time of the alleged occurrence or occurrences and has no retroactive effect, and that even if it were in effect, the Plaintiff could not sustain its burden of proof under the statute, and would also defend the amount of response costs sought as excessive, unnecessary, and not reasonably incurred. The United States does not admit any liability to NuStar TS and Samson Hydrocarbons regarding the subject matter of the Complaint or any potential counterclaims.

E.   Samson Hydrocarbons is a former subsidiary or remote subsidiary of W.R. Grace & Co.-Conn. ("Grace-Conn.") and Grace Energy Corporation ("GEC") (collectively, "Grace"). On April 2, 2001, W. R. Grace & Co. and certain of its affiliates, including Grace, each filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") commencing respective bankruptcy cases under Chapter 11 of the United States Bankruptcy Code, and such respective bankruptcy cases are jointly administered under the caption:  W. R. Grace & Co., et al., Case No. 01-01139 in the Bankruptcy Court (collectively, such jointly administered bankruptcy cases are referred to herein as the "Grace Bankruptcy Proceeding").

F.   Samson Hydrocarbons filed Proofs of Claim (claim nos. 00013946 and 00013947) and amended Proofs of Claim (claim nos. 00018518, 00018520, 00018521, 00018526, and 00018527) in connection with the Grace Bankruptcy Proceeding, including amended Proofs of Claim dated August 6, 2009, in the bankruptcy case of GEC and the bankruptcy case of Grace-Conn. (such Proofs of Claim and amended Proofs of Claim, along with any further amendments thereto, are, collectively, referred to as the "Samson Hydrocarbons Proofs of Claim"). The Samson Hydrocarbons Proofs of Claim assert claims alleging GEC's and Grace-Conn.'s agreement, under various agreements, to indemnify and hold harmless Samson Hydrocarbons in connection with various claims, events, and matters, including but not limited to:  (i) claims related to the Pipeline, and (ii) claims, events and matters that are not related to the Pipeline. The portion of the claims asserted by Samson Hydrocarbons against Grace in the Samson Hydrocarbons Proofs of Claim that solely arise out of or relate to the Pipeline are referred to herein as the "Samson Hydrocarbons Otis Pipeline Related Claims." The claims, obligations, agreements, and basis for claims asserted or described by Samson Hydrocarbons in the Samson Hydrocarbons Proofs of Claim that do not arise out of or do not relate to the Pipeline are referred to herein as the "Samson Hydrocarbons Remaining Claims." Grace reserves any and all objections to the Samson Hydrocarbons Proofs of Claim, except as provided in and limited by the Private Parties Agreement. Samson Hydrocarbons will not amend the Samson Hydrocarbons Proofs of Claim in any manner affecting the Samson Hydrocarbons Otis Pipeline Related Claims.

G.   Grace and other proponents have filed a First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated February 27, 2009, in the Grace Bankruptcy Proceeding (as amended from time to time, the "First Amended Plan"). On January 31, 2011, the Bankruptcy Court entered an order confirming the First Amended Plan and recommending that the United States District Court for the District of Delaware enter an order affirming the confirmation order.

5

H. The Plaintiff, Settling Defendants (as defined herein), and the Other Settling Party (as defined herein) (collectively, the "Parties") agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.  JURISDICTION

1.  This Court has jurisdiction over this action pursuant to U.S. CONST. art. III, § 2, cl. 1 and 28 U.S.C. §1345. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants and the Other Settling Party waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants and the Other Settling Party shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.  This Consent Decree is binding upon the Plaintiff and upon Settling Defendants and the Other Settling Party and their successors and assigns. Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants or the Other Settling Party under this Consent Decree.

## IV.  DEFINITIONS

3.  Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

a.  "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

b.  "Chapter 21E" or "Ch. 21E" shall mean Massachusetts General Laws ("M.G.L.") Chapter 21E as currently codified, and including any prior codifications or future amendments thereto. In the event of any conflict between the current codification and any prior codification, Chapter 21E shall refer to the current codification.

c.  "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

d.  "Consent Decree" shall mean this Consent Decree.

6

e.  "Consent Decree Effective Date" shall mean the date the entry of the Consent Decree by the Court becomes a Final Order.

f.  "Contracts" shall mean (1) the Agreement dated April 8, 1963, by and between the Department of Air Force and Standard Transmission Corp. relating to the Pipeline; (2) the Department of the Air Force Consent Agreement relating to the easement at the MMR for the Pipeline, signed on behalf of the Department of the Air Force on May 4, 1965, and signed on behalf of Standard Transmission Corporation on May 10, 1965; and (3) the Department of Air Force Revocation of Consent on Otis Air Force Base, Massachusetts, dated April 9, 1994.

g.  "Court" shall mean the United States District Court for the District of Massachusetts.

h.  "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

i.  "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

j.  "Final Order" shall mean an order, the operation or effect of which has not been stayed, reversed, or amended and as to which order the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all persons or entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

k.  "First Amended Plan" shall mean the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated February 27, 2009, filed by Grace and other proponents in the Grace Bankruptcy Proceeding, as amended from time to time.

l.  "Fuel Spill 12" or "FS-12" refers to the alleged release of fuel, fuel constituents and/or fuel additives from the Pipeline that occurred after construction of the Pipeline from a location adjacent to Greenway Road at the MMR and to the alleged contamination and any alleged migration of contamination resulting therefrom.

7

m.  "Fuel Spill 13" or "FS-13" refers to the alleged release of fuel, fuel constituents and/or fuel additives from the Pipeline that occurred after construction of the Pipeline near the Connery Avenue rotary on the then Otis Air Force Base at the MMR and to the alleged contamination and any alleged migration of contamination resulting therefrom.

n.  "Grace" shall mean W.R. Grace & Co.-Conn. ("Grace-Conn.") and Grace Energy Corporation ("GEC"), collectively.

o.  "Grace Bankruptcy Proceeding" shall mean the bankruptcy cases jointly administered under the caption:  W. R. Grace & Co., et al., Case No. 01-01139 in the Bankruptcy Court.

p.  "Interest" with respect to payments to be made by NuStar and Samson Hydrocarbons shall mean interest at the rate of 4.19% per annum, compounded annually. "Interest" with respect to a payment to be made by Grace shall mean the rate of interest that is paid on account of the Samson Hydrocarbons Allowed Otis Claim by Grace as provided for, and compounded annually as provided for, the holders of Allowed General Unsecured Claims under the Plan of Reorganization who do not have an interest rate defined by contract (this rate is currently proposed to be 4.19% per annum, compounded annually).

q.  "Massachusetts Military Reservation" or "MMR" shall mean the Massachusetts Military Reservation, a 21,000 acre facility located on Cape Cod in the towns of Bourne, Falmouth, Mashpee and Sandwich in Barnstable County, Massachusetts.

r.  "Natural Resource Damages" or "NRD" shall mean damages for injury to, the destruction of, or loss of natural resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States resulting from any release of fuel, fuel constituents and/or fuel additives from the Pipeline at the Massachusetts Military Reservation, including releases on the MMR and in areas outside the MMR to which fuel, fuel constituents and/or fuel additives released at the MMR from the Pipeline have migrated, and shall include the costs of assessing such injury, destruction, or loss of natural resources.  Fuel constituents and/or fuel additives include, but are not limited to, benzene, toluene, ethylbenzene, and xylene ("BTEX"), lead, and ethylene dibromide ("EDB").  For the purposes of the first sentence of this definition, the phrase "any release of fuel, fuel constituents and/or fuel additives from the Pipeline at the Massachusetts Military Reservation" includes, without limitation, Fuel Spill 12 and Fuel Spill 13, and any other spills or releases of fuel, fuel constituents and/or fuel additives from the Pipeline at the Massachusetts Military Reservation.

s.  "Other Settling Party" shall mean W. R. Grace & Co.-Conn. and Grace Energy Corporation (collectively, "Grace") and the successors, officers, and directors of W.R. Grace & Co.- Conn. and Grace Energy Corporation (each in its, his or her capacity as such) and shall also include W. R. Grace & Co., in its status and capacity as parent or remote parent corporation to W.R. Grace & Co.-Conn. and Grace Energy Corporation.

8

   t. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

   u. "Parties" shall mean the United States of America, the Settling Defendants, and the Other Settling Party.

   v. "Person" shall mean an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body.

   w. "Pipeline" shall mean the pipeline constructed by Standard Transmission Corporation in 1965 which transported aviation fuel to Otis Air Force Base between 1965 and 1973. The Pipeline starts at a terminal on the Cape Cod Canal, traverses a portion of the Town of Sandwich, and then traverses a portion of the MMR terminating at a location that is part of the former Otis AFB. The Pipeline has been closed in place.

   x. "Plaintiff" shall mean the United States.

   y. "Plan Effective Date" shall mean the first Business Day after the date on which all of the conditions precedent to the effectiveness of a Plan of Reorganization (currently these conditions are specified in Section 7.8 of the First Amended Plan) have been satisfied or waived or, if a stay of the order of confirmation of the Plan of Reorganization is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay. "Business Day" in this definition refers to any day other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

   z. "Plan of Reorganization" shall mean any plan of reorganization or liquidation in Chapter 11 that is confirmed and becomes effective in the Chapter 11 bankruptcy cases captioned *In re W.R. Grace & Co., et al.*, Case No. 01-00139 (JKF) (Bankr. D. Del.). Such a Plan of Reorganization may be the First Amended Plan (if it is confirmed and becomes effective), but is not limited to the First Amended Plan.

   aa. "Private Parties Agreement" shall mean the Private Parties Settlement Agreement between Grace, NuStar, and Samson Hydrocarbons, which resolves additional issues vis a vis each other relating to the Pipeline, approved by the Bankruptcy Court.

   bb. "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, *et seq.* (also known as the Resource Conservation and Recovery Act).

   cc. "Response Costs" shall mean all costs the United States has paid or will pay for actions taken or that will be taken by the United States in response to the release or threatened release of fuel, fuel constituents and/or fuel additives from or allegedly from the Pipeline at the Massachusetts Military Reservation, including actions taken on the MMR and actions taken outside the MMR in areas to which fuel, fuel constituents and/or fuel additives

9

released or allegedly released at the MMR from the Pipeline have migrated, including oversight costs. Fuel constituents and/or fuel additives include, but are not limited to, benzene, toluene, ethylbenzene, and xylene ("BTEX"), lead, and ethylene dibromide ("EDB"). For the purposes of the first sentence of this definition, the phrase "release or threatened release of fuel, fuel constituents and/or fuel additives from or allegedly from the Pipeline at the Massachusetts Military Reservation" includes, without limitation, Fuel Spill 12 and Fuel Spill 13.

dd. "Response Work" shall mean actions taken in response to the release or threatened release of fuel, fuel constituents and/or fuel additives from or allegedly from the Pipeline at the Massachusetts Military Reservation, including actions taken on the MMR and actions taken outside the MMR in areas to which fuel, fuel constituents and/or fuel additives released or allegedly released at the MMR from the Pipeline have migrated. For the purposes of the first sentence of this definition, the phrase "release or threatened release of fuel, fuel constituents and/or fuel additives from or allegedly from the Pipeline at the Massachusetts Military Reservation" includes, without limitation, Fuel Spill 12 and Fuel Spill 13.

ee. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

ff. "Settling Defendants" shall mean:

i. NuStar Terminals Services, Inc., NuStar Pipeline Operating Partnership, L.P., and NuStar Terminals Operations Partnership, L.P. (collectively, "NuStar") and their successors, officers, and directors (each in its, his, or her capacity as such) and shall also include NuStar Energy L.P., in its status and capacity as a parent or remote parent entity of NuStar Terminals Services, Inc., NuStar Pipeline Operating Partnership, L.P., and NuStar Terminals Operations Partnership, L.P. (collectively, "NuStar Settling Defendants"), and

ii. Samson Hydrocarbons (SGH Enterprises, Inc.) and its successors, officers, and directors (each in its, his or her capacity as such) and shall also include Samson Investment Company, in its status and capacity as parent corporation of Samson Hydrocarbons (collectively, "Samson Settling Defendants").

gg. "United States" shall mean the United States of America, including all of its departments, agencies and instrumentalities.

## V. STATEMENT OF PURPOSE

4. By entering into this Consent Decree, the primary mutual objectives of the Parties, as more precisely described in the terms of this Consent Decree, are to:

a. reach a settlement among the Settling Defendants, the Other Settling Party, and the United States with respect to the United States' claim for Response Costs, by providing

10

for cash payments to the United States by NuStar, on behalf of NuStar TS, and Grace and Samson Hydrocarbons, on behalf of Samson Hydrocarbons;

  b. resolve any potential counterclaims of the Settling Defendants or the Other Settling Party with respect to the United States' claim for Response Costs and potential claim for Natural Resource Damages;

  c. provide a covenant by the United States not to sue the Settling Defendants and the Other Settling Party for the claims or potential claims arising from or related to the Pipeline specified in Paragraph 14;

  d. provide for contribution protection for the Settling Defendants and the Other Settling Party with respect to matters addressed by this Consent Decree as set forth in Paragraph 20.

## VI. PAYMENTS

 5. Payment by NuStar

  a. Within thirty (30) days after the Consent Decree Effective Date, NuStar shall pay $11.7 million, plus Interest from November 15, 2009 through the date of payment, to the United States.

  b. The payment referred to in Paragraph 5.a. above shall be made in two parts (one pertaining to the Army and one pertaining to EPA) in the following manner:

   i. NuStar shall make a payment of $11,296,456, plus Interest from November 15, 2009 through the date of payment, to the "Environmental Restoration, Army" account of the United States. The payment shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer) in accordance with current EFT procedures. Payment shall be made in accordance with instructions to be provided to NuStar by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts and shall reference the party making payment, MMR FS-12, the D. Mass. civil action number, and DOJ File Number 90-11-2-975. On the date of payment, NuStar shall send written notice and confirmation that such payment has been made to the United States at the five U.S. addresses specified in Paragraph 26; and

   ii. NuStar shall make a payment of $403,544, plus Interest from November 15, 2009 through the date of payment, at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to NuStar by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts. The payment instructions provided by the Financial Litigation Unit for this payment pertaining to EPA shall include a Consolidated Debt Collection System ("CDCS") number, which shall be

11

used to identify the payments required to be made in accordance with this Consent Decree pertaining to EPA. The total amount to be paid by NuStar pursuant to this Paragraph 5.b.ii. shall be deposited into the Impact Area and Training Ranges Special Account within the EPA Hazardous Substances Superfund ("MMR Special Account") to be retained and used to conduct or finance response actions at or in connection with the MMR, or to be transferred by EPA to the EPA Hazardous Substances Superfund. At the time of payment, NuStar shall send written notice and confirmation that such payment has been made to the United States at the five U.S. addresses specified in Paragraph 26, and to the EPA Cincinnati Finance Office by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268, and by email at acctsreceivable.cinwd@epa.gov. Such notice shall reference the CDCS Number, Site/Spill ID Number 01F1, and DOJ case number 90-11-2-975/1.

    iii. The Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts shall provide the payment instructions referred to in Paragraph 5.b.i. and Paragraph 5.b.ii. above to:

> Karen M. Thompson
> Vice President and Assistant General Counsel
> NuStar Energy L.P.
> 2330 North Loop 1604 West
> San Antonio, TX 78248
> (210) 918-2973
> Karen.thompson@nustarenergy.com

on behalf of NuStar. NuStar may change the individual to receive payment instructions on its behalf by providing notice of such change in accordance with Section XIII (Notices and Submissions).

  6. <u>Settlement With Samson Hydrocarbons</u> Effective on the Consent Decree Effective Date, the United States' claim against Samson Hydrocarbons for the matters addressed in this Consent Decree is resolved and settled in exchange for the following: (a) $1.86 million, plus Interest from November 15, 2009 through the date of payment, to be paid by Samson Hydrocarbons as provided in Paragraph 8 below, and (b) the assignment to the United States of the Samson Hydrocarbons Allowed Otis Claim (as defined below in Paragraph 7.a), to be paid by Grace as provided in Paragraph 7 below.

  7. <u>Assignment by Samson Hydrocarbons and Payment by Grace</u>

    a. With respect to and in settlement of that portion of the Samson Hydrocarbons Otis Pipeline Related Claims arising out of the matters addressed in this Consent Decree as set forth in Paragraph 20 hereof: (i) effective on the Consent Decree Effective Date, Samson Hydrocarbons shall have an allowed, non-subordinated, unsecured claim in the amount of $7.44 million plus Interest in the Grace Bankruptcy Proceeding (including against, and in the respective bankruptcy cases of, Grace), which allowed claim shall not be subordinated to any

12

others in the same class and which shall be allowed for all purposes, including for purposes of distribution under the First Amended Plan, and which shall bear Interest from November 15, 2009 through the date of payment in full (such claim, with such accrued interest, referred to herein as the "Samson Hydrocarbons Allowed Otis Claim"); and (ii) Samson Hydrocarbons and Grace shall have such other rights and obligations vis a vis each other as agreed by them in writing and approved by the Bankruptcy Court in connection with the Grace Bankruptcy Proceeding. Effective on the Consent Decree Effective Date, without further action on the part of Samson Hydrocarbons, the Samson Hydrocarbons Allowed Otis Claim is assigned to the United States (the "Assignment"). With respect to the Assignment, the United States expressly agrees that the Samson Hydrocarbons Remaining Claims and the agreements described in the Samson Hydrocarbons Proofs of Claim that are the basis of or relate to the Samson Hydrocarbons Remaining Claims are not assigned to the United States. Samson Hydrocarbons expressly warrants that no assignment of the Samson Hydrocarbons Allowed Otis Claim to any person other than the United States has occurred. Effective on the Consent Decree Effective Date, Samson Hydrocarbons waives its right to file an objection under Bankruptcy Rule 3001(e) to the Assignment of the Samson Hydrocarbons Allowed Otis Claim to the United States. Within 7 business days after the Consent Decree Effective Date, Samson Hydrocarbons and the United States shall sign and file in the Bankruptcy Court, pursuant to Bankruptcy Rule 3001(e), an appropriate notice of the transfer of the Samson Hydrocarbons Allowed Otis Claim to the United States, attaching, without limitation, the Consent Decree, as evidence of the transfer.

  b.  Grace and/or its successors shall pay the Samson Hydrocarbons Allowed Otis Claim amount of $7.44 million, plus Interest from November 15, 2009 through the date of payment, to the United States within thirty (30) days after the later of the following dates to occur: (i) the Consent Decree Effective Date or (ii) the Plan Effective Date.

  c.  The payment referred to in Paragraph 7.b. above shall be made in two parts (one pertaining to the Army and one pertaining to EPA) in the following manner:

  i.  Grace and/or its successors shall make a payment of $7,183,387, plus Interest from November 15, 2009 through the date of payment, to the "Environmental Restoration, Army" account of the United States. The payment shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer) in accordance with current EFT procedures. Payment shall be made in accordance with instructions to be provided to Grace by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts and shall reference the party making payment, MMR FS-12, the D. Mass. civil action number, and DOJ File Number 90-11-2-975. On the date of payment, Grace shall send written notice and confirmation that such payment has been made to the United States at the five U.S. addresses specified in Paragraph 26.

  ii.  Grace and/or its successors shall make a payment of $256,613, plus Interest from November 15, 2009 through the date of payment, at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Grace by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts.

13

The payment instructions provided by the Financial Litigation Unit for this payment pertaining to EPA shall include a CDCS number, which shall be used to identify the payments required to be made in accordance with this Consent Decree pertaining to EPA. The total amount to be paid by Grace pursuant to this Paragraph 7.c.ii. shall be deposited into the Impact Area and Training Ranges Special Account within the EPA Hazardous Substances Superfund ("MMR Special Account") to be retained and used to conduct or finance response actions at or in connection with the MMR, or to be transferred by EPA to the EPA Hazardous Substances Superfund. At the time of payment, Grace shall send written notice and confirmation that such payment has been made to the United States at the five U.S. addresses specified in Paragraph 26, and to the EPA Cincinnati Finance Office by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268, and by email at acctsreceivable.cinwd@epa.gov. Such notice shall reference the CDCS Number, Site/Spill ID Number 01F1, and DOJ case number 90-11-2-975/1.

      iii. The Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts shall provide the payment instructions referred to in Paragraph 7.c.i. and Paragraph 7.c.ii. above to:

> Richard C. Finke
> Legal Services Group
> W.R. Grace & Co.
> 7500 Grace Drive
> Columbia, MD 21044
> 410-531-4355
> *Email:* richard.finke@grace.com

on behalf of Grace. Grace may change the individual to receive payment instructions on its behalf by providing notice of such change in accordance with Section XIII (Notices and Submissions).

      d. For purposes of the First Amended Plan, the Samson Hydrocarbons Allowed Otis Claim referenced in Paragraph 7.a. above shall receive the same treatment under the First Amended Plan, without discrimination, as other "Allowed" "General Unsecured Claims" (as those terms are defined in the First Amended Plan) with all attendant rights provided by the Bankruptcy Code and other applicable law. In no event shall the Samson Hydrocarbons Allowed Otis Claim referenced in Paragraph 7.a. above be subordinated to any other allowed unsecured claims in the Grace Bankruptcy Proceeding or any bankruptcy cases and debtors consolidated with Grace or Grace's bankruptcy cases pursuant to any provision of the Bankruptcy Code or other applicable law that authorizes or provides for subordination of allowed claims. Samson Hydrocarbons agrees that payment by Grace to the United States of the $7.44 million plus Interest required in Paragraph 7.b. above, along with the other obligations of Grace vis a vis Samson Hydrocarbons as agreed by Samson Hydrocarbons and Grace in writing and approved by the Bankruptcy Court in connection with the Grace Bankruptcy Proceeding, shall be deemed full satisfaction and payment in full of the Samson Hydrocarbons Allowed Otis Claim.

14

    e.  With respect to the payment referenced in Paragraph 7.b. above, Grace and/or its successors shall include Grace and the Reorganized Debtors within the meaning of the Plan of Reorganization.

    f.  Effective on the Consent Decree Effective Date, Samson Hydrocarbons consents to Grace making payment on account of the Samson Hydrocarbons Allowed Otis Claim in the amount of $7.44 million plus Interest directly to the United States as provided above rather than to Samson Hydrocarbons.

    g.  Samson Hydrocarbons retains the Samson Hydrocarbons Remaining Claims and all agreements described in the Samson Hydrocarbons Proofs of Claim that are the basis of or relate to such claims.  This Consent Decree, the Assignment of the Samson Hydrocarbons Allowed Otis Claim, and the covenant not to sue by Samson Hydrocarbons in Section X do not allow, disallow, fix, estop, adjudicate, determine, estimate, waive, or prejudice any Samson Hydrocarbons Remaining Claims nor any of Grace's defenses or counterclaims thereto.  The Other Settling Party consents to the Assignment of the Samson Hydrocarbons Allowed Otis Claim.  The Assignment of the Samson Hydrocarbons Allowed Otis Claim to the United States pursuant to this Consent Decree does not create a defense to, affect, release, or impair the Samson Hydrocarbons Remaining Claims or the agreements that are the basis of or relate to the Samson Hydrocarbons Remaining Claims (including without limitation, any defense based on claim-splitting or the terms of the underlying agreements).

8.  Payment by Samson Hydrocarbons

    a.  Within thirty (30) days after the Consent Decree Effective Date, Samson Hydrocarbons shall pay $1.86 million, plus Interest from November 15, 2009 through the date of payment, to the United States.

    b.  The payment referred to in Paragraph 8.a above shall be made in two parts (one pertaining to the Army and one pertaining to EPA) in the following manner:

    i.  Samson Hydrocarbons shall make a payment of $1,795,847, plus Interest from November 15, 2009 through the date of payment, to the "Environmental Restoration, Army" account of the United States.  The payment shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer) in accordance with current EFT procedures.  Payment shall be made in accordance with instructions to be provided to Samson Hydrocarbons by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts and shall reference the party making payment, MMR FS-12, the D. Mass. civil action number, and DOJ File Number 90-11-2-975.  On the date of payment, Samson Hydrocarbons shall send written notice and confirmation that such payment has been made to the United States at the five U.S. addresses specified in Paragraph 26; and

    ii.  Samson Hydrocarbons shall make a payment of $64,153, plus Interest from November 15, 2009 through the date of payment, at https://www.pay.gov to

15

the U.S. Department of Justice account, in accordance with instructions provided to Samson Hydrocarbons by the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts. The payment instructions provided by the Financial Litigation Unit for this payment pertaining to EPA shall include a CDCS number, which shall be used to identify the payments required to be made in accordance with this Consent Decree pertaining to EPA. The total amount to be paid by Samson Hydrocarbons pursuant to this Paragraph 8.b.ii. shall be deposited into the Impact Area and Training Ranges Special Account within the EPA Hazardous Substances Superfund ("MMR Special Account") to be retained and used to conduct or finance response actions at or in connection with the MMR, or to be transferred by EPA to the EPA Hazardous Substances Superfund. At the time of payment, Samson Hydrocarbons shall send written notice and confirmation that such payment has been made to the United States at the five U.S. addresses specified in Paragraph 26, and to the EPA Cincinnati Finance Office by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268, and by email at acctsreceivable.cinwd@epa.gov. Such notice shall reference the CDCS Number, Site/Spill ID Number 01F1, and DOJ case number 90-11-2-975/1.

             iii. The Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts shall provide the payment instructions referred to in Paragraph 8.b.i. and Paragraph 8.b.ii. above to:

        Michael G. Daniel
        SGH Enterprises, Inc.
        Two West Second Street
        Tulsa, OK 74103
        918-591-1007
        mdaniel@samson.com

on behalf of Samson Hydrocarbons. Samson Hydrocarbons may change the individual to receive payment instructions on its behalf by providing notice of such change in accordance with Section XIII (Notices and Submissions).

## VII. <u>FAILURE TO COMPLY WITH CONSENT DECREE</u>

    9.  <u>Interest on Late Payments</u>. If NuStar, Grace, or Samson Hydrocarbons fails to make any payment under Section VI (Payment of Response Costs) by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

    10.  <u>Stipulated Penalty</u>.

        a. If any amounts due the United States by NuStar, Grace, or Samson Hydrocarbons is not paid by the required date, the pertinent breaching party shall be in violation of this Consent Decree and shall pay to the United States, as a stipulated penalty, in addition to the Interest required by Paragraph 9, the following penalty per violation per day that such payment is late:

16

| Penalty Per violation Per day | Period of Noncompliance |
|---|---|
| $2,500 | 1st-14th Day |
| $5,000 | 15th-30th Day |
| $10,000 | 31st Day and beyond |

b. Stipulated penalties are due and payable as follows:

      i. Stipulated penalties to be paid to the United States on behalf of the U.S. Army and/or U.S. Air Force are due and payable to the United States Treasury within thirty (30) days of the date of the demand for payment of the penalties by the United States. All payments to the United States under this Paragraph 10.b.i. shall be identified as "stipulated penalties" and shall be made by certified or cashier's check payable to "United States Treasury." The check, or a letter accompanying the check, shall identify the name and address of the party making payment and shall refer to MMR FS-12, the DOJ Case Number 90-11-2-975, and the D. Mass. civil action number, and shall be sent to:

      United States Attorney's Office
      Attn: Financial Litigation Unit
      United States Courthouse, Suite 9200
      1 Courthouse Way
      Boston, MA 02210

      ii. Stipulated penalties to be paid to the United States on behalf of EPA are due and payable within thirty (30) days of the date of the demand for payment of the penalties by EPA. All payments to the United States on behalf of EPA under this Paragraph 10.b.ii. shall be identified as "stipulated penalties" and shall be made by Fedwire Electronic Funds Transfer to:

      Federal Reserve Bank of New York
      ABA = 021030004
      Account = 68010727
      SWIFT address = FRNYUS33
      33 Liberty Street
      New York, NY 10045
      Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

      and shall reference the CDCS Number, Site/Spill ID Number 01F1, and DOJ Case Number 90-11-2-975/1.

      c. On the date of each payment under subparagraph b. above, the pertinent breaching party shall also send copies of check(s) and/or EFT notice(s), and any accompanying

transmittal letter(s), to the Army, the EPA, and the Department of Justice at the addresses listed under "United States" in Section XIII (Notices and Submissions). With respect to any payment under subparagraph b.ii. above, the pertinent party shall also send copies of the EFT notice(s) to the EPA Cincinnati Finance Office by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268, and by email at acctsreceivable.cinwd@epa.gov.

      d. Penalties shall accrue as provided in this Paragraph regardless of whether the United States has notified the pertinent party of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Decree.

      11. If the United States brings an action to enforce this Consent Decree against NuStar, Grace, or Samson Hydrocarbons, the pertinent party found to have breached its obligations herein shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

      12. Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States by virtue of the failure of the pertinent party to comply with the requirements of this Consent Decree.

      13. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse NuStar, Grace, or Samson Hydrocarbons from payment as required by Section VI or from performance of any other requirements of this Consent Decree. If any of NuStar, Grace, or Samson Hydrocarbons fails to make payment as required under this Consent Decree, the United States' sole remedy shall be against the breaching party, and the other parties' rights shall not be affected and this Consent Decree shall remain in full force and effect as to the complying parties (or party). In no event shall either Settling Defendant or the Other Settling Party be liable or responsible for the obligations of any Party other than itself under this Consent Decree.

## VIII. COVENANT NOT TO SUE BY PLAINTIFF

      14. Covenant Not to Sue by United States. Except as specifically provided in Section IX (Reservations of Rights by Plaintiff), the United States covenants not to sue and agrees not to assert any claims or causes of action against the Settling Defendants and the Other Settling Party pursuant to M.G.L. Chapter 21E, Sections 106 and 107 of CERCLA, and Section 7003(a) of RCRA for recovery of Response Costs and Natural Resource Damages and for performance of Response Work, and the United States, on behalf of the Air Force and the Army, covenants not to sue and agrees not to assert any claims or causes of action against the Settling Defendants and the Other Settling Party pursuant to the Contracts for recovery of Response Costs and Natural Resource Damages and for performance of Response Work. With respect to the NuStar Settling

18

Defendants, this covenant not to sue shall take effect upon, and is conditioned upon, receipt by the United States of the funds referenced in Paragraph 5 and any amount due from NuStar under Section VII. With respect to the Other Settling Party, this covenant not to sue shall take effect upon, and is conditioned upon, receipt by the United States of the funds referenced in Paragraph 7 and any amount due from Grace under Section VII. With respect to the Samson Hydrocarbons Settling Defendants, this covenant not to sue shall take effect upon, and is conditioned upon, receipt by the United States of the funds referenced in Paragraph 8 and any amounts due from Samson Hydrocarbons under Section VII. This covenant not to sue extends only to the Settling Defendants and the Other Settling Party and does not extend to any other person.

## IX.  RESERVATION OF RIGHTS BY PLAINTIFF

15.  The United States reserves, and this Consent Decree is without prejudice to, all rights against the Settling Defendants and the Other Settling Party with respect to all matters not expressly included within the Covenant Not to Sue by Plaintiff in Section VIII. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against the Settling Defendants and the Other Settling Party with respect to subparagraphs a. through f. below, as follows:

a.  liability of each of the Settling Defendants and the Other Settling Party for failure to meet a requirement applicable to it under this Consent Decree;

b.  criminal liability;

c.  liability (i) based upon future ownership or operation of facilities (not including the Pipeline) at or in connection with the MMR by the respective individual Settling Defendant(s) or Other Settling Party, where "future" refers to ownership or operation of such facilities arising after the date of signature of this Consent Decree by the respective Settling Defendant or Other Settling Party, or (ii) arising from future transportation, treatment, storage, or disposal, or the future arrangement for transportation, treatment, storage, or disposal, of fuel, fuel constituents, fuel additives, hazardous substances, solid wastes, pollutants or contaminants, at or in connection with the MMR, by the respective individual Settling Defendant(s) or Other Settling Party, where "future" refers to transportation, treatment, storage, or disposal activities (or arrangement therefor) by the respective individual Settling Defendant(s) or Other Settling Party after the date of signature of this Consent Decree by the respective Settling Defendant or Other Settling Party but, for purposes of this clause (ii), such activities do not include passive or inactive migration of fuel, fuel constituents, fuel additives, hazardous substances, solid wastes, pollutants or contaminants released to the environment from the Pipeline prior to the date of signature of this Consent Decree by the respective Settling Defendant or Other Settling Party;

d.  liability arising from the past, present, or future disposal, release, or threat of release of fuel, fuel constituents, fuel additives, hazardous substances, solid wastes, pollutants or contaminants outside of the MMR, with the exception of the releases and threatened releases of

19

fuel, fuel constituents and/or fuel additives outside the MMR from the Pipeline in the areas to which fuel, fuel constituents and/or fuel additives released at the MMR from the Pipeline have migrated;

   e.  liability for costs incurred or to be incurred by the United States that are not within the definition of Response Costs or Natural Resource Damages;

   f.  liability for performance of response actions that are not within the definition of Response Work.

  16.  Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the United States may have against any person, firm, corporation or other entity other than the Settling Defendants and the Other Settling Party.

  17.  Nothing in this Consent Decree shall be deemed to limit the authority of the United States to take any and all response actions authorized under law.

## X. COVENANT NOT TO SUE BY SETTLING DEFENDANTS AND THE OTHER SETTLING PARTY

  18.  The Settling Defendants and the Other Settling Party covenant not to sue and agree not to assert any claims or causes of action against the United States or its contractors or employees, with respect to the Response Costs, Natural Resource Damages, Response Work, any costs incurred by any of the Settling Defendants or the Other Settling Party relating to the Pipeline at the MMR, and/or the Consent Decree, including but not limited to:

   a.  any direct or indirect claim for reimbursement from or against any fund held, operated, or supervised by the United States or any federal agency, based upon any provision of law, including but not limited to any direct or indirect claim for reimbursement from the Hazardous Substances Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. Section 9507) through Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA;

   b.  any claim against the United States arising out of response actions at or in connection with the releases and threatened releases of fuel, fuel constituents and/or fuel additives from the Pipeline at the MMR (including releases on the MMR and in areas outside the MMR to which fuel, fuel constituents and/or fuel additives released at the MMR from the Pipeline have migrated), including any claim under the United States Constitution, the Massachusetts Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

   c.  any claim against the United States pursuant to M.G.L. Chapter 21E relating to

20

releases and threatened releases of fuel, fuel constituents and/or fuel additives from the Pipeline
at the MMR (including releases on the MMR and in areas outside the MMR to which fuel, fuel
constituents and/or fuel additives released at the MMR from the Pipeline have migrated).

## XI. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

19. Nothing in this Consent Decree shall be construed to create any rights in, or grant
any cause of action to, any person not a Party to this Consent Decree. The Parties expressly
reserve any and all rights (including, but not limited to, any right to contribution), defenses,
claims, demands, and causes of action that they may have with respect to any matter, transaction,
or occurrence relating in any way to the Pipeline at the MMR against any person not a Party
hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to
Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2) and (3), to pursue any such
persons to obtain additional response costs or response action and to enter into settlements that
give rise to contribution protection pursuant to Section 113(f)(2). Nothing in this Consent
Decree shall be construed in any way to affect the rights of the Commonwealth of
Massachusetts.

20. The Parties agree, and by entering this Consent Decree this Court finds, that this
Consent Decree constitutes a judicial settlement for purposes of M.G.L. Chapter 21E and Section
113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the Settling Defendants and the Other
Settling Party are entitled, as of the dates referenced below, to protection from contribution
actions or claims as provided by M.G.L. Chapter 21E and M.G.L. Chapter 231B and Section
113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this
Consent Decree. The "matters addressed" in this Consent Decree are: Response Costs, any
claim of the United States for Natural Resource Damages, any claims of the United States for
performance of Response Work, and any costs incurred by any of the Settling Defendants or the
Other Settling Party relating to the Pipeline at the MMR. The NuStar Settling Defendants are
entitled to contribution protection for the matters addressed in this Consent Decree as of the date
NuStar makes or causes to be made its full payment pursuant to Paragraph 5. The Other Settling
Party is entitled to contribution protection for the matters addressed in this Consent Decree as of
the date Grace makes or causes to be made its full payment pursuant to Paragraph 7. The
Samson Settling Defendants are entitled to contribution protection for the matters addressed in
this Consent Decree as of the date Samson Hydrocarbons makes or causes to be made its full
payment pursuant to Paragraph 8.

21. Each Settling Defendant and the Other Settling Party agree that, with respect to any
suit or claim for contribution brought by it for matters related to this Consent Decree, it will
notify the United States in writing no later than 60 days prior to the initiation of such suit or
claim. Each Settling Defendant and the Other Settling Party also agree that, with respect to any
suit or claim for contribution brought against it for matters related to this Consent Decree, it will
notify the United States in writing within 30 days of service of the complaint or claim upon it. In
addition, each Settling Defendant or the Other Settling Party shall notify the United States within

20 days of service or receipt of any Motion for Summary Judgment, and within 20 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

22. In any subsequent administrative or judicial proceeding initiated by the United States for relief relating to any matters other than the "matters addressed" in this Consent Decree, Settling Defendants or the Other Settling Party shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; *provided*, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in Section VIII. Settling Defendants or the Other Settling Party can assert defenses or claims based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting or other defenses to the extent they can show that the subsequent administrative or judicial proceeding initiated by the United States seeks relief relating to "matters addressed" in this Consent Decree, except that no such defenses or claims shall be asserted in defense to a proceeding to enforce the provisions of this Consent Decree.

## XII.  RETENTION OF RECORDS

23. Until three years after the United States has received all three of the payments referenced in Paragraphs 5, 7, and 8, the United States, Settling Defendants and the Other Settling Party shall each preserve and retain (a) all records, reports, or information (hereinafter referred to as "records") now in its possession or control, or which come into its possession or control, that relate in any manner to the activities of Standard Transmission Corporation, Cleary Petroleum Corporation, their successors or other corporations relating to the Pipeline and/or to the liability or potential liability of any person under Chapter 21E with respect to the Pipeline, regardless of any corporate retention policy to the contrary, and (b) all documents with KPOP or GEC labeling or numbering now in its possession or control, or which come into its possession or control, regardless of any corporate retention policy to the contrary.  KPOP refers to Kaneb Pipeline Operating Partnership, L.P, the former name of NuStar Pipeline Operating Partnership, L.P. GEC refers to Grace Energy Corporation.

24. The United States shall notify the Settling Defendants and the Other Settling Party within thirty (30) days after it has received all three of the payments referenced in Paragraphs 5, 7, and 8.

25. a. In the event that any of the Settling Defendants or the Other Settling Party does not make payment to the United States in accordance with Paragraphs 5, 7, or 8 of this Consent Decree, the Settling Defendants and the Other Settling Party shall make available for review and copying to the United States, upon request, copies of the records referred to in Paragraph 23 above which have not previously been provided to Plaintiff, at the Plaintiff's expense; except that any records for which privilege is asserted in accordance with Paragraph

22

25.b. are not required to be produced unless the United States disputes the privilege as to that record and prevails on the dispute.

    b. Any Settling Defendant or the Other Settling Party may assert that certain records in its possession or control are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If any Settling Defendant or the Other Settling Party asserts such a privilege, it shall provide Plaintiff with the following:  1) the title of the record; 2) the date of the record; 3) the name, title, affiliation (*e.g.*, company or firm), and, to the extent known, the address of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted.  If a claim of privilege applies only to a portion of a record, the record shall be provided to Plaintiff in redacted form to mask the privileged information only.  The Settling Defendant or Other Settling Party asserting the privilege shall retain all records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the favor of the Settling Defendant or Other Settling Party asserting the privilege.

### XIII. NOTICES AND SUBMISSIONS

    26. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, Settling Defendants, and the Other Settling Party, respectively.

**As to the United States:**

    Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
    United States Department of Justice (DOJ # 90-11-2-975)
    Post Office Box 7611
    Washington, D.C.  20044-7611

    Chief, Army Environmental Law Division
    Department of the Army
    9275 Gunston Rd., Suite 4300
    Fort Belvoir, VA 22060-5546

    Office of the United States Attorney
    Attn:  Financial Litigation Unit
    United States Courthouse, Suite 9200
    1 Courthouse Way
    Boston, MA 02210

23

United States Environmental Protection Agency
Mail Code OSRR 07-3
Region 1, New England
5 Post Office Square, Suite 100
Boston, MA 02109
Attn: Lynne Jennings

Regional Financial Management Officer
United States Environmental Protection Agency
Mail Code OARM 16-1
Region 1, New England
5 Post Office Square, Suite 100
Boston, MA 02109

**As to NuStar Terminals Services, Inc./NuStar Settling Defendants:**

ATTN: General Counsel
NuStar Energy L.P.
2330 North Loop 1604 West
San Antonio, TX 78248

and

Karen M. Thompson
Assistant General Counsel
NuStar Energy L.P.
2330 North Loop 1604 West
San Antonio, TX 78248

**As to Samson Hydrocarbons/Samson Settling Defendants:**

Michael G. Daniel
General Counsel
Samson Investment Company
Two West Second Street
Tulsa, OK 74103

and

C. Philip Tholen
The Samson Companies
Two West Second Street
Tulsa, OK 74103

24

**As to Grace/Other Settling Party:**

> Richard C. Finke
> Legal Services Group
> W.R. Grace & Co.
> 7500 Grace Drive
> Columbia, MD 21044
> 410-531-4355
> *Email:* richard.finke@grace.com

> and

> Office of the General Counsel
> W.R. Grace & Co.-Conn.
> Corporate Headquarters
> 7500 Grace Drive
> Columbia, MD 21044
> Tel.: +1 410.531.4000
> Fax: +1 410.531.4367

## XIV. RETENTION OF JURISDICTION

27.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XV. INTEGRATION

28.    This Consent Decree constitutes the final, complete and exclusive agreement and understanding between (a) the United States and (b) the Settling Defendants and/or Other Settling Party with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings between (a) the United States and (b) the Settling Defendants and/or Other Settling Party relating to the settlement other than those expressly contained in this Consent Decree.

## XVI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

29.    The entry into and performance of this Consent Decree must be approved by the Bankruptcy Court by entry of an order (the "Approval Order"), and such order must become a Final Order, prior to the lodging of the Consent Decree with the Court.  The form and substance of the Approval Order shall have been previously agreed upon by all Parties.  Upon signature of this Consent Decree on behalf of all of the Parties, Grace shall promptly seek approval of this

25

Consent Decree under Bankruptcy Rule 9019 or other applicable provisions of the Bankruptcy Code.

30.  Once the Approval Order has become a Final Order, the United States shall lodge this Consent Decree with the Court for a period of not less than 30 days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants and the Other Settling Party consent to the entry of this Consent Decree without further notice.

31.  If for any reason this Court or the Bankruptcy Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVII.  SIGNATORIES/SERVICE

32.  Each undersigned representative of a Settling Defendant and the Other Settling Party to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

33.  Each Settling Defendant and the Other Settling Party hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants and the Other Settling Party in writing that the United States no longer supports entry of the Consent Decree.

34.  Each Settling Defendant and the Other Settling Party shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants and the Other Settling Party hereby agree to accept service in that manner.  NuStar TS and Samson Hydrocarbons waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.  NuStar TS and Samson Hydrocarbons need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XVIII.  FINAL JUDGMENT

35.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, Settling Defendants, and

26

the Other Settling Party.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS ___ DAY OF _____, 20__.


_____
United States District Judge

27

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>NuStar Terminals Services, Inc. and SGH Enterprises, Inc.,</u> relating to the Standard Transmission Pipeline at the Massachusetts Military Reservation

**FOR THE UNITED STATES OF AMERICA**

11/15/11
Date

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

2/13/12
Date

Elizabeth Yu
Attorney
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044

Carmen M. Ortiz
United States Attorney
District of Massachusetts

George B. Henderson II
Assistant United States Attorney
District of Massachusetts
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

28

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. NuStar Terminals Services, Inc. and SGH Enterprises, Inc.</u>, relating to the Standard Transmission Pipeline at the Massachusetts Military Reservation

February 13 2012
Date

Kenneth J. Tozzi, Colonel
Chief, Environmental Law Division
United States Army
9275 Gunston Rd., Suite 4300
Fort Belvoir, VA 22060-5546

13 February 2012
Date

Maria Doucettperry, Major
Environmental Law Division
United States Army
9275 Gunston Rd., Suite 4300
Fort Belvoir, VA 22060-5546

29

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>NuStar Terminals Services, Inc. and SGH Enterprises, Inc.,</u> relating to the Standard Transmission Pipeline at the Massachusetts Military Reservation

_11/9/11_
Date

H. Curtis Spalding
Regional Administrator, Region 1
· U.S. Environmental Protection Agency
5 Post Office Square, Suite 100
Boston, MA 02109

_10/27/11_
Date

Timothy M. Conway
Senior Enforcement Counsel
U.S. Environmental Protection Agency
5 Post Office Square, Suite 100
Mail Code OES04-3
Boston, MA 02109

30

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. NuStar Terminals Services, Inc. and SGH Enterprises, Inc.</u>, relating to the Standard Transmission Pipeline at the Massachusetts Military Reservation

**FOR NUSTAR TERMINALS SERVICES, INC./NUSTAR SETTLING DEFENDANTS**

Date: _October 13, 2011_

Bradley C. Barron
Senior Vice President and General Counsel
2330 North Loop 1604 West
San Antonio, Texas 78248

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:    Bradley C. Barron

Title:    Senior Vice President and General Counsel

Address: 2330 North Loop 1604 West, San Antonio, Texas 78248

31

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>NuStar Terminals Services, Inc. and SGH Enterprises, Inc.</u>, relating to the Standard Transmission Pipeline at the Massachusetts Military Reservation

## FOR SGH ENTERPRISES, INC. ("SAMSON HYDROCARBONS")/SAMSON SETTLING DEFENDANTS

Date: _____

C. Philip Tholen
Attorney-in Fact, SGH Enterprises, Inc.
Samson Plaza
Two West Second Street
Tulsa, OK 74103-3103

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:    Michael G. Daniel

Title:    General Counsel, Samson Investment Company

Address: Samson Plaza
Two West Second Street
Tulsa, OK 74103-3103

32

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u>
<u>NuStar Terminals Services, Inc. and SGH Enterprises, Inc.</u>, relating to the Standard Transmission
Pipeline at the Massachusetts Military Reservation

**FOR W.R. GRACE & CO.-CONN. & GRACE ENERGY CORPORATION
("GRACE")/OTHER SETTLING PARTY**

Date: 10/14/2011

Mark Shelnitz
Vice President, General Counsel and Secretary
7500 Grace Drive
Columbia, Maryland 21044

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:       Corporation Service Company

Title:       agent for service of process

Address:   2711 Centerville Road, Suite 400
           Wilmington, Delaware 19808