**Exhibit B**

**Private Parties Agreement**

PRIVATE PARTIES SETTLEMENT AGREEMENT

This PRIVATE PARTIES SETTLEMENT AGREEMENT ("Agreement") is entered into by and among W. R. Grace & Co. ("W. R. Grace"), W. R. Grace & Co. – Conn. ("Grace – Conn") and Grace Energy Corporation ("GEC") (W. R. Grace, Grace – Conn, and GEC will be collectively referred to herein as "Grace"); Samson Investment Company and SGH Enterprises, Inc. f/k/a Samson Hydrocarbons Company (Samson Investment Company and SGH Enterprises, Inc. f/k/a Samson Hydrocarbons Company will be collectively referred to herein as "Samson Hydrocarbons"); NuStar Pipeline Operating Partnership L.P. (f/k/a Kaneb Pipeline Operating Partnership); NuStar Terminals Operations Partnership, L.P. (f/k/a Support Terminals Operating Partnership, L.P.); NuStar Energy L.P. and NuStar Terminals Services, Inc. (f/k/a Support Terminal Services, Inc.) (NuStar Pipeline Operating Partnership L.P., NuStar Terminals Operations Partnership, L.P., NuStar Energy L.P. and NuStar Terminals Services, Inc. will be collectively referred to herein as "NuStar"). The parties to this Agreement are sometimes referred to herein collectively as the "Private Parties" or individually as a "Private Party."

I.      DEFINITIONS, BACKGROUND, AND GENERAL TERMS

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Each defined term stated in a singular form includes the plural form and each defined term stated in the plural form includes the singular form.

1.1.    "Approval Order" means an order in the Grace Bankruptcy Proceeding, substantially in the form of Exhibit A, approving Grace's entering into and performing under this Agreement and the Consent Decree.

1.2.    "Confirmation Order" means an order confirming a Plan of Reorganization, including the Plan, pursuant to 11 U.S.C. § 1129.

1.3.    "Consent Decree" means that certain Consent Decree with the United States of America (the "U.S.") to be lodged in the District Court between and among the Private Parties and the U.S. related to the Otis Pipeline, in substantially the form attached hereto as Exhibit B. Defined terms used in the Consent Decree shall have the meaning therein ascribed to such terms when used in this Agreement unless otherwise stated herein or dictated by the context.

1.4.    "District Court" means the United States District Court for the District of Massachusetts.

1.5.    "Effective Date of the Plan of Reorganization" means the first Business Day after the date on which all of the conditions precedent to the effectiveness of the Plan as specified in Section 7.8 of the Plan (or, as applicable, the conditions precedent to the effectiveness of a confirmed Plan of Reorganization other than the Plan) have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day

after expiration, dissolution, or lifting of such stay. Plan of Reorganization is defined in Paragraph 1.16, below.

**1.6.** **"Execution Date"** shall mean the last date on which all Private Parties have executed this Agreement as reflected opposite such Private Party's signature hereto.

**1.7.** **"Final Order"** means an order or judgment, the operation or effect of which has not been stayed, reversed, or amended and as to which order the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing by all persons or entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.8.** **"Related Parties"** shall mean the parent companies, subsidiaries, partners and affiliates of the Private Parties, and each of their respective officers, directors, owners, partners, employees, representatives and agents.

**1.9.** The **"Otis Pipeline"** shall mean an approximately 11-mile pipeline known as the Otis Pipeline and which is located, in part, on a portion of the Massachusetts Military Reservation. The U.S. has made claims against the Private Parties that in general terms relate to (i) the construction, installation and operation of the Otis Pipeline; (ii) alleged releases from the Otis Pipeline; and (iii) remediation of the releases that the U.S. attributes to the Otis Pipeline (collectively, the **"Otis Pipeline Claims"**). These claims are set forth in the Consent Decree and the Complaint that will be filed in connection with the Consent Decree. The Consent Decree and Complaint allegations, the Otis Pipeline Claims, as well as all U.S. natural resource damage claims related to the Otis Pipeline, are referred to hereafter as the **"U.S. Claims."**

**1.10.** In June 1997, Grace Energy Corporation filed suit against Kaneb Pipeline Operating Partnership, L.P., Support Terminal Services, Inc., and Support Terminals Operating Partnership, L.P., alleging causes of action related to the Otis Pipeline. The lawsuit was assigned to the 191st District Court of Dallas County, Texas, assigned Cause No. 97-05135-J and was styled Grace Energy Corporation v. Kaneb Pipe Line Operating Partnership, L.P., Support Terminal Services, Inc. and Support Terminal Operating Partnership, L.P. and NSTS, Inc. (the **"Dallas Litigation"**).

**1.11.** On August 30, 2000 an Amended Final Judgment was entered in the Dallas Litigation (the Amended Final Judgment and all interim rulings, including all summary judgment rulings, and jury findings are collectively referred to as the **"Dallas Judgment"**).

**1.12.** In October 2000 all parties to the Dallas Judgment filed notices of appeal, appealing the Dallas Judgment to the Court of Appeals for the Fifth District at Dallas, Texas (No. 05-00-01592-CV) (the "**Dallas Appeal**").

**1.13.** On April 2, 2001, W. R. Grace and certain of its affiliates, including GEC, a party to the Dallas Judgment, and Grace-Conn, each filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") commencing respective bankruptcy cases under Chapter 11 of the United States Bankruptcy Code and such respective bankruptcy cases are jointly administered under the caption: W. R. Grace & Co., et al., Case No. 01-01139 in the Bankruptcy Court (collectively, such jointly administered bankruptcy cases are referred to herein as the "**Grace Bankruptcy Proceeding**") On May 7, 2001, the Dallas Court of Appeals entered an order abating the Dallas Appeal pursuant to the automatic stay arising in the Grace Bankruptcy Proceeding ("**Abatement Order**").

**1.14.** On December 31, 2009, a Stipulation Concerning Kaneb Pipe Line Operating Partnership L.P. and Support Terminal Services, Inc.'s Objection to Confirmation of Plan of Reorganization (Docket No. 24096) was filed in the Grace Bankruptcy Proceeding ("**Plan Stipulation**"). In Docket #24283, on February 12, 2010, an Amended Stipulation Concerning Kaneb Pipe Line Operating Partnership L.P. and Support Terminal Services, Inc.'s Objection to Confirmation of Plan of Reorganization was filed ("**Amended Plan Stipulation**") (collectively herein, the Plan Stipulation and the Amended Plan Stipulation are referred to as the "**Plan Stipulation.**"). The Plan Stipulation was independent of this Agreement, executed before this Agreement, did not resolve any of the matters addressed in this Agreement and had no effect on this Agreement. Thus, to the extent of any conflict between this Agreement and the Plan Stipulation, this Agreement controls; provided, however, that the order confirming the Plan must contain the language from the Amended Plan Stipulation required to be in the order confirming the Plan.

**1.15.** Samson Hydrocarbons filed Proofs of Claim and amended Proofs of Claim in connection with the Grace Bankruptcy Proceeding, including amended Proofs of Claim dated August 6, 2009, filed in the bankruptcy case of GEC and the bankruptcy case of Grace-Conn. (such Proofs of Claim and amended Proofs of Claim, along with any further amendments thereto, are, collectively, referred to as the "**Samson Hydrocarbons Proofs of Claim**"). The Samson Hydrocarbons Proofs of Claim assert claims based in part on allegations of GEC's and Grace-Conn's agreement, under various agreements, to indemnify and hold harmless Samson Hydrocarbons in connection with various events, claims and circumstances. In this Agreement, the term "**Samson Hydrocarbons Otis Pipeline Related Claims**" means, collectively, the portion of the claims asserted by Samson Hydrocarbons against Grace in the Samson Hydrocarbons Proofs of Claim that arise out of or relate to the Otis Pipeline or the U.S. Claims. In this Agreement, the term "**Samson Hydrocarbons Remaining Claims**" means, collectively, those claims asserted by Samson Hydrocarbons against Grace, and any obligations, amounts, events, matters, or basis for claims asserted, subject to assertion, or described in the Samson Hydrocarbons Proofs of Claim, that do not arise out of or do not relate to the U.S. Claims or the Otis Pipeline. Grace reserves any and all objections to the Samson Hydrocarbons Proofs of Claim, except as provided in and limited by this Agreement. Samson Hydrocarbons will not amend the Samson Hydrocarbons Proofs of Claim in any manner affecting the Samson Hydrocarbons Otis Pipeline Related Claims.

1.16.    Grace and other proponents have filed their First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et. al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders dated February 27, 2009, in the Grace Bankruptcy Proceeding (as amended and modified from time to time, the "**Plan**"). "**Plan of Reorganization**" shall mean any plan of reorganization or liquidation under Chapter 11 of the United States Bankruptcy Code that is confirmed and becomes effective in the Grace Bankruptcy Proceeding, including the Plan. On January 31, 2011, the Bankruptcy Court entered an order confirming the Plan.

1.17.    The Private Parties have agreed to settle and compromise the U.S. Claims and enter into the Consent Decree with the U.S., Grace and Samson Hydrocarbons have also agreed to settle and compromise the Samson Hydrocarbons Proofs of Claim relating only to the Samson Hydrocarbons Otis Pipeline Related Claims. And, Grace and NuStar have agreed to settle the Dallas Litigation and to file joint motions to effect a vacatur of the Dallas Judgment. This Agreement sets forth the terms and conditions of the settlement as between the Private Parties as well as the obligations of each Private Party necessary to implement the settlement of the U.S. Claims, the Samson Hydrocarbons Otis Pipeline Related Claims and the Dallas Litigation, including the vacatur of the Dallas Judgment. In consideration of the mutual covenants and agreements of the Private Parties set forth herein, the Private Parties hereby stipulate and agree as follows:

## II. TERMINATION OF THIS AGREEMENT

2.1.    This Agreement requires and is subject to: (i) entry of the Approval Order and the Approval Order becoming a Final Order, and (ii) entry of the Consent Decree and the Consent Decree becoming a Final Order. "**Approval Order Failure**" means the Bankruptcy Court denies entry of the Approval Order; or the Approval Order is reversed, vacated or materially modified without the consent of all Private Parties by the Bankruptcy Court or another court of competent jurisdiction to which an appeal or request for review of the Approval Order is filed or made.    "**Consent Decree Failure**" means the U.S. withdraws its approval of the Consent Decree prior to entry, the District Court denies entry of Consent Decree, the District Court modifies the Consent Decree prior to entry without the consent of all Private Parties, or the Consent Decree is vacated reversed or materially modified without the consent of all Private Parties by the District Court or another court of competent jurisdiction to which an appeal or request for review of the Consent Decree is filed or made. This Agreement terminates in the event of either Approval Order Failure or Consent Decree Failure, provided, however, the Private Parties may agree, in a writing executed by all Private Parties, to waive or modify this Article II or a modification of the terms Approval Order Failure or Consent Decree Failure. In the event of termination under this Article II, without limitation: (i) the Private Parties retain and reserve all rights, claims, defenses and remedies as they existed before the Execution Date, (ii) the obligations of the Private Parties to abate actions related to allowance of the Samson Hydrocarbons Otis Pipeline Related Claims as described in Article III shall terminate; (iii) Samson Hydrocarbons shall not have, and shall not assign to the U. S., the Samson Hydrocarbons Allowed Otis Claim as defined in Paragraph 6.1, and (iv) the Samson Hydrocarbons Otis Pipeline Related Claims shall be reinstated and Samson Hydrocarbons shall

-4-

be entitled to assert the Samson Hydrocarbons Otis Pipeline Related Claims in the Grace Bankruptcy Proceeding and otherwise, and Grace shall be entitled to assert all objections, offsets, and counterclaims thereto.

## III.  COVENANTS EFFECTIVE UPON EXECUTION OF THIS AGREEMENT

**3.1.**    The covenants and obligations in this Article III become effective on the Execution Date.

**3.2.**    No later than ten (10) days after the Execution Date, Grace shall file in the Grace Bankruptcy Proceeding a Motion to Approve Compromise and Settlement in substantially the form of **Exhibit C** attached hereto ("**Settlement Motion**"). Such Settlement Motion shall seek entry of the Approval Order approving Grace's entering into and performing under this Agreement and the Consent Decree. Grace shall use its reasonable best efforts to: (i) obtain entry of the Approval Order, and (ii) defend any appeal or motion by any party seeking to reverse, impair, amend, vacate or set aside the Approval Order. The Private Parties will not do anything to hinder Grace's efforts to defend entry of the Approval Order and the Private Parties, each at their own expense, will reasonably cooperate, in defending any appeal.

**3.3.**    The "**Interim Period**" shall begin on the Execution Date and shall end on the occurrence of any of the following events: (a) termination of this Agreement pursuant to Article II, or (b) each of NuStar and Samson Hydrocarbons make the payments required by Article IV (regarding Payments By The Private Parties to the U.S.) after entry of the Consent Decree by the District Court and the Consent Decree becoming a Final Order.

**3.4.**    During the Interim Period:

(a).    Neither party to the Dallas Appeal will attempt to further prosecute the Dallas Appeal unless a lifting of the automatic stay in the Grace Bankruptcy Proceeding requires such parties to prosecute the Dallas Appeal. If the automatic stay in the Grace Bankruptcy Proceeding applicable to the Dallas Appeal is lifted or if the Dallas Court of Appeals takes any action to lift the stay or cease the abatement of the Dallas Appeal during the Interim Period, Grace and NuStar agree-that-that-they-will, if requested by the other, file a joint motion in the Dallas Appeal (1) notifying the Court of Appeals that the automatic stay has been lifted, and (2) requesting that the Dallas Appeal be abated (and/or that the existing abatement be continued) so as to allow the Private Parties to finalize their settlement in accordance with the terms of this Agreement. Such joint motion will recite that in the event the Private Parties determine that the settlement cannot be accomplished in accordance with this Agreement that they will promptly notify the Dallas Court of Appeals so that the case can be reinstated.

(b).    The Private Parties will not take any action in the Grace Bankruptcy Proceeding inconsistent with the terms of this Agreement or the Consent Decree, including the filing of a Plan or the seeking of entry of the Confirmation Order inconsistent with the terms of this Agreement or the Consent Decree.

-5-

(c)     Neither NuStar nor any of its affiliates, subsidiaries, predecessors, successors, or Related Parties will seek recovery of costs incurred by NuStar in connection with the U.S. Claims, or any other claims relating to the Otis Pipeline against insurance policies issued to (i) Grace, (ii) Grace's current or former subsidiaries, affiliates and Related Parties provided however, that this provision will not apply to an insurance policy issued to a person or entity that had been a Grace parent company, subsidiary, partner or affiliate if such insurance policy was issued after the date on which such person or entity ceased to be a Grace parent company, subsidiary, partner or affiliate and such insurance was not purchased by a person or entity that was a Grace parent company, subsidiary, partner or affiliate (other than Samson Hydrocarbons or its predecessors, successors or assigns) at the time of purchase, or (iii) Samson Hydrocarbons or its predecessors, successors or assigns. However, Grace and NuStar do not intend for any rights NuStar may otherwise have to pursue insurance coverage for the Otis Pipeline or the U.S. Claims to be adversely affected as a result of the standstill agreed to during the Interim Period. Therefore, provided that the automatic stay of 11 U.S.C. § 362 is no longer in effect in the Grace Bankruptcy Proceeding, and provided further that NuStar agrees to provide Grace with simultaneous copies of any actions taken by NuStar under this Paragraph 3.4(c), NuStar may take actions that it reasonably deems necessary to preserve such insurance claims and ensure that such rights and/or claims are not adversely affected. Further, during the pendency of the automatic stay, if not prohibited by the automatic stay, NuStar may communicate with insurers regarding existing claims as may be necessary to preserve such claims and ensure that such rights and/or claims are not adversely affected and NuStar shall provide Grace with simultaneous copies of any such communications. NuStar will not assert any new objection to the Plan or oppose the entry of the Confirmation Order so long as the language required under the Plan Stipulation is included in the Confirmation Order and so long as the Confirmation Order and the Plan do not in any way impact or infringe on NuStar's rights as described in this Agreement and the Consent Decree.

3.5.     Unless this Agreement is terminated under Section 2.1 hereof, Grace will not file or prosecute an objection to, or file or pursue any pleading or action seeking disallowance or estimation of, the Samson Hydrocarbons Otis Pipeline Related Claims; provided however, upon termination of this Agreement under Section 2.1 hereof, Grace retains and does not waive its objections and rights with respect to the Samson Hydrocarbons Otis Pipeline Related Claims. Any applicable deadline for Grace to object to the Samson Hydrocarbons Otis Pipeline Related Claims that expires prior to the termination of this Agreement pursuant to section 2.1 hereof is hereby extended until 30 days after the termination of this Agreement under Section 2.1 hereof (for avoidance of doubt, this sentence is not applicable to the Samson Hydrocarbons Allowed Otis Claim to be assigned to the United States). If any person or entity shall file an objection to, or move or seek to disallow or estimate the Samson Hydrocarbons Otis Pipeline Related Claims: (i) Samson Hydrocarbons may file such pleadings and otherwise take such actions as it deems necessary in response thereto, and (ii) prior to termination of this Agreement under Section 2.1 hereof, Grace and Samson Hydrocarbons shall oppose and move the Bankruptcy Court to abate or deny such filing and shall support in the Bankruptcy Court the allowance of the Samson Hydrocarbons Allowed Otis Claim as provided herein, subject to the provisions of Section 2.1.

3.6.     Nothing in this Agreement shall impair the Samson Hydrocarbons Remaining Claims or Grace's defenses or counterclaims thereto.

3.7.     The effectiveness of any deadline or the running of any statute of limitations or any equitable limitations argument, such as laches, shall be tolled as to the Private Parties during the Interim Period and for thirty (30) days thereafter.

## IV.    PAYMENTS BY THE PRIVATE PARTIES TO THE U.S.

4.1.     Subject to entry of the Consent Decree and the Consent Decree becoming a Final Order and subject to the entry of the Approval Order and the Approval Order becoming a Final Order, the Private Parties have agreed to pay the U.S. a total of $21 million (the "Settlement Amount") in full and complete settlement of the U.S. Claims and the U.S. has agreed to accept the Settlement Amount in full and complete settlement of the U.S. Claims.  The Private Parties agree that their respective contributions to the Settlement Amount shall be as follows:

(a).     Grace shall pay the U.S. $7,440,000, plus any interest on its contribution that may accrue pursuant to the terms of the Consent Decree.

(b).     Samson Hydrocarbons shall pay the U.S. $1,860,000, plus any interest on its contribution that may accrue pursuant to the terms of the Consent Decree, and Samson Hydrocarbons shall assign the Samson Hydrocarbons Allowed Otis Claim to the U.S. in accordance with the Consent Decree.

(c).     NuStar shall pay the U.S. $11,700,000, plus any interest on its contribution that may accrue pursuant to the terms of the Consent Decree.

4.2.     The payments set forth in Paragraph 4.1(a) through (c) shall be made as provided in the Consent Decree.

## V.    VACATUR OF THE DALLAS JUDGMENT

5.1.     Grace and NuStar agree and stipulate that they shall jointly file the following documents in connection with the Dallas Appeal no later than thirty (30) days following the last to occur of the following: (i) the date when the Approval Order becomes a Final Order, (ii) the date the Consent Decree becomes a Final Order, and (iii) the date that is ten (10) days after NuStar has made its payment to the U.S. as required by the Consent Decree:

(a).     Joint Motion to Reinstate Appeal as provided by Tex. R. App. P. 8.3(a) in the form of **Exhibit D** attached hereto; and

(b).     Joint Motion to Vacate and Set Aside the Dallas Judgment, as provided by Local Rule 8 and Tex. R. App. P. 42.1(a)(2) and 43.2(e) with motion

stating that each party is to pay its own appellate costs in the form of **Exhibit E** attached hereto.

(c).   Joint Motion for Immediate Issuance of Mandate, pursuant to Tex. R. App. P. 18.1(c) in the form of **Exhibit F** attached hereto.

**5.2.**   Grace and NuStar agree and stipulate that they shall jointly file the following documents with the trial court in which the Dallas Judgment was entered, no later than five (5) days following the issuance of the mandate granted by the Dallas Court of Appeals:

(a).   Joint Motion for Release of Surety on Supersedeas Bond in the form of **Exhibit G** attached hereto; and

(b).   Agreed Order Releasing Surety on Supersedeas Bond in the form of **Exhibit H** attached hereto.

**5.3.**   Grace and NuStar agree to take all other reasonable measures, including the filing of additional motions and pleadings, in order to effectuate a vacatur of the Dallas Judgment.

## VI. COVENANTS AFFECTING SAMSON HYDROCARBONS' CLAIMS

**6.1.**   When the Approval Order has been entered and has become a Final Order, and subject only to and effective upon the Consent Decree having been entered by the District Court and having become a Final Order, with respect to the Samson Hydrocarbons Otis Pipeline Related Claims: (i) Samson Hydrocarbons shall have an allowed, general unsecured claim (including for purposes of distribution under the Plan of Reorganization) in the Grace Bankruptcy Proceeding (including against, and in the respective bankruptcy cases of, Grace, their bankruptcy estates, and any bankruptcy cases and debtors consolidated with Grace or Graces' bankruptcy cases) equal to U.S. $7,440,000, plus interest compounded annually on such $7,440,000 accruing from November 15, 2009 through the date of payment in full of such allowed claim at the per annum interest rate required to be paid by Grace under the Consent Decree (such aggregate claim, including the allowed and accrued post-petition interest, shall be called herein the "**Samson Hydrocarbons Allowed Otis Claim**"), and (ii) Grace and Samson Hydrocarbons shall undertake and perform their obligations under Paragraph 7.2 of this Agreement.   Subject to entry of the Consent Decree and the Consent Decree becoming a Final Order and subject to the entry of the Approval Order and the Approval Order becoming a Final Order: (i) the Samson Hydrocarbons Allowed Otis Claim shall be assigned to the U.S. pursuant to the Consent Decree, and (ii) payment of the Samson Hydrocarbons Allowed Otis Claim shall be made not to Samson Hydrocarbons but instead to the U.S. pursuant to the terms of the Consent Decree, the Plan of Reorganization and this Agreement (and Samson Hydrocarbons agrees that payment by Grace to the U.S. of the $7,440,000 plus interest thereon as required in the Consent Decree and Grace's obligations in Paragraph 7.2 hereof shall be deemed full satisfaction and payment in full of the Samson Hydrocarbons Allowed Otis Claim).

**6.2.**   Notwithstanding any contrary provision herein: (i) this Agreement, the release by Samson Hydrocarbons in Paragraph 8.2 herein, the Consent Decree and the Approval Order, and

-8-

the assignment of the Samson Hydrocarbons Allowed Otis Claim to the U. S. do not allow, disallow, fix, estop, release, discharge, acquit, adjudicate, determine, estimate, waive, or prejudice any Samson Hydrocarbons Remaining Claims, the facts or agreements giving rise to any Samson Hydrocarbons Remaining Claims or the claims and defenses of Grace with respect to the Samson Hydrocarbons Remaining Claims and Grace and Samson Hydrocarbons reserve and retain all rights and assertions with respect thereto, and (ii) Samson Hydrocarbons may take such actions as it deems necessary in the Grace Bankruptcy Proceeding or otherwise to assert, prosecute and preserve its Samson Hydrocarbons Remaining Claims.   Grace consents to the assignment of the Samson Hydrocarbons Allowed Otis Claim to the U. S. pursuant to the Consent Decree and agrees that such assignment does not create a defense to, affect, release or impair the Samson Hydrocarbons Remaining Claims or the agreements that are the basis of or relate to the Samson Hydrocarbons Remaining Claims (including without limitation, any defense based on claim- splitting or the terms of the underlying agreements as they relate to the Samson Hydrocarbons Remaining Claims).

6.3.    When the Approval Order has been entered and has become a Final Order and the Consent Decree has been entered and has become a Final Order, and subject solely to Section 2.1 of this Agreement, the Samson Hydrocarbons Allowed Otis Claim: (i) shall not be subject to objection, subordination, disallowance, estimation or avoidance, (ii) shall not be subordinated in priority to any other unsecured claims asserted in the Grace Bankruptcy Proceeding or in the bankruptcy cases of Grace notwithstanding any provision of the Bankruptcy Code or any other applicable law that authorizes or provides for subordination of claims, and (iii) shall have all rights attendant thereto provided by the Bankruptcy Code, the respective agreements of the parties and applicable law.  Unless this Agreement is terminated under Section 2.1 hereof, Grace and its affiliates and subsidiaries shall not file or assert in the Grace Bankruptcy Proceeding or otherwise any pleading or request objecting to or contesting the allowance, amount, validity or priority of, or seeking disallowance or estimation of, the Samson Hydrocarbons Allowed Otis Claim.

6.4.    For purposes of the Plan, the Samson Hydrocarbons Allowed Otis Claim shall: (i) be an "**Allowed**" "**General Unsecured Claim**" (as those terms are defined in the Plan), entitled to post- petition interest as provided herein, and (ii) be paid in full in cash within 30 days of the Effective Date of the Plan.

6.5.    Grace agrees, and the Approval Order shall provide, that this Agreement and the Consent Decree, which, among other things, allow the Samson Hydrocarbons Allowed Otis Claim in the amount of $7.44 million and provide for the sharing of future obligations, if any, as provided in Paragraph 7.2 hereunder, shall not be discharged, released, enjoined or impaired by any Plan of Reorganization that may be confirmed in the Grace Bankruptcy Proceeding or by any Confirmation Order.  The Approval Order, among other things, shall authorize Grace and Reorganized Debtors  to comply with and perform, both before and after the Effective Date of the Plan of Reorganization, this Agreement and the Consent Decree and all obligations therein.  "**Reorganized Debtors**" means Grace, as Reorganized Debtors (as defined in the Plan), upon and after confirmation and the Effective Date of the Plan of Reorganization with respect to the Plan of Reorganization and, with respect to any other Plan of Reorganization other than the Plan, as Grace exists after the effectiveness of any such other Plan of Reorganization.

-9-

## VII.    ADDITIONAL AGREEMENTS OF PARTIES

7.1.    Subject to the entry of the Consent Decree and the Consent Decree becoming a Final Order, and the Approval Order becoming a Final Order, and Samson Hydrocarbons making the payment to the U. S. required by the Consent Decree, NuStar agrees that for good and valuable consideration received, including payment of $1,500,000 more towards the settlement with the U.S. by Grace / Samson Hydrocarbons than would otherwise have been paid, neither NuStar nor any of its affiliates, subsidiaries, predecessors, successors, or Related Parties will seek recovery of costs incurred by NuStar in connection with the U.S. Claims or any other claims relating to the Otis Pipeline against insurance policies issued to (i) Grace, (ii) Grace's current or former subsidiaries, affiliates, or Related Parties provided however, that this provision will not apply to an insurance policy issued to a person or entity that had been a Grace parent company, subsidiary, partner or affiliate if such insurance policy was issued after the date on which such person or entity ceased to be a Grace parent company, subsidiary, partner or affiliate and such insurance was not purchased by a person or entity that was a Grace parent company, subsidiary, partner or affiliate (other than Samson Hydrocarbons or its predecessors, successors or assigns) at the time of purchase, or (iii) Samson Hydrocarbons or its predecessors, successors or assigns, and NuStar will withdraw any claims or demands it has made on any such liability policy described in this sentence.

7.2.



-10-

7.3.    Subject to the Consent Decree becoming a Final Order, the Approval Order becoming a Final Order, and NuStar making the payment to the U. S. required by the Consent Decree, the Dallas Judgment shall not have and shall not be given preclusive, res judicata, or collateral estoppel effect, and the Dallas Judgment shall have no force or effect in connection with any dispute or controversy between or among any of the Private Parties or their subsidiary organizations, parent organizations, successor corporations, affiliates, or their respective officers, partners, directors, employees, agents, representatives, insurance carriers, and assigns or between or among one, some or all such entities or persons and any third parties.

## VIII.   MUTUAL RELEASES

### 8.1.    <u>Release by Grace:</u>

(a) Subject to the Approval Order becoming a Final Order, the Consent Decree becoming a Final Order, and NuStar making the payment to the U. S. required by the Consent Decree, and without waiving or releasing Grace's rights and obligations set forth in Paragraph 7.2 above concerning Future Otis Pipeline Claims, Grace (including on behalf of the respective bankruptcy estates of the debtors in the Grace Bankruptcy Proceeding) hereby releases, acquits and discharges NuStar, and its subsidiary organizations, parent organizations, partners, affiliates and each of their respective officers, partners, directors, employees, agents, representatives, successor corporations, insurers, and assigns, from all claims, demands, charges, costs of court, including but not limited to attorneys' fees and causes of action of whatever nature, on any legal theory that relate to the Otis Pipeline or that arise out of the U.S. Claims, the Dallas Litigation, the Dallas Judgment or the Dallas Appeal.

(b) Subject to the Approval Order becoming a Final Order, the Consent Decree becoming a Final Order, and Samson Hydrocarbons making the payment to the U. S. required by the Consent Decree, and without waiving or releasing Grace's rights and obligations set forth in Paragraph 7.2 above concerning Future Otis Pipeline Claims, Grace (including on behalf of the respective bankruptcy estates of the debtors in the Grace Bankruptcy Proceeding) hereby releases, acquits and discharges Samson Hydrocarbons and its subsidiary organizations, parent organizations, partners, affiliates and each of their respective officers, partners, directors, employees, agents, representatives, successor corporations, insurers, and assigns, from all claims, demands, charges, costs of court, including but not limited to attorneys' fees and causes of action of whatever nature, on any legal theory that relate to the Otis Pipeline or that arise out of the U.S. Claims, the Dallas Litigation, the Dallas Judgment or the Dallas Appeal.

### 8.2.    <u>Release by Samson Hydrocarbons</u>. Subject to the Approval Order becoming a Final Order, the Consent Decree becoming a Final Order, and NuStar making the payment to the U. S. required by the Consent Decree, and without waiving or releasing (a) the Samson Hydrocarbons Remaining Claims or the Samson Hydrocarbons Allowed Otis Claim assigned to the U.S., or (b) Grace's or Samson Hydrocarbons' rights and obligations set forth in Paragraph 7.2, Samson Hydrocarbons hereby releases acquits and discharges Grace and NuStar, and their

-11-

subsidiary organizations, parent organizations, partners, affiliates and each of their respective officers, partners, directors, employees, agents, representatives, successor corporations, insurers, and assigns, from all claims, demands, charges, costs of court (including but not limited to attorneys' fees) and causes of action of whatever nature, on any legal theory, that relate to the Otis Pipeline or that arise out of the U.S. Claims, the Dallas Litigation, the Dallas Judgment, or the Dallas Appeal.

8.3.    **Release by NuStar**.  Subject to the Approval Order becoming a Final Order, the Consent Decree becoming a Final Order, and Samson Hydrocarbons making the payment to the U. S. required by the Consent Decree, and without waiving or releasing NuStar's rights and obligations set forth in Paragraph 7.2 above concerning Future Otis Pipeline Claims, NuStar hereby releases acquits and discharges Grace and Samson Hydrocarbons and their subsidiary organizations, parent organizations, partners, affiliates and each of their respective officers, partners, directors, employees, agents, representatives, successor corporations, insurers, and assigns, from all claims, demands, charges, costs of court, including but not limited to attorneys' fees and causes of action of whatever nature, on any legal theory that relate to the Otis Pipeline or that arise out of the U.S. Claims, the Dallas Litigation, the Dallas Judgment or the Dallas Appeal.

8.4.    Notwithstanding anything to the contrary in the Consent Decree, including but not limited to provisions in the Consent Decree granting contribution protection, the Private Parties agree that the restrictions on the mutual releases set forth in Paragraphs 8.1, 8.2, and 8.3 above are binding on each of the Private Parties.  No Private Party releases any other Private Party from such other Private Party's obligations in this Agreement and in the Consent Decree.

## IX.  NOTICES

9.1.    Whenever, under the terms of this Agreement notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.   Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Agreement.

As to NuStar Pipeline Operating Partnership L.P., NuStar Energy L.P. and NuStar Terminals Services, Inc.:

    ATTN:  General Counsel
    NuStar Energy L.P.
    2330 North Loop 1604 West
    San Antonio, TX 78248

    And

    Karen M. Thompson
    Assistant General Counsel

NuStar Energy L.P.
2330 North Loop 1604 West
San Antonio, TX 78248

As to Samson Investment Company and Samson Hydrocarbons Company

Michael G. Daniel
General Counsel
Samson Investment Company
Two West Second Street
Tulsa, OK 74103

And

C. Philip Tholen
Samson Investment Company
Two West Second Street
Tulsa, OK 74103

As to W. R. Grace & Co., W. R. Grace & Co. – Conn. and Grace Energy Corporation

Richard C. Finke
Legal Services Group
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044
Email:  richard.finke@grace.com

And

Office of the General Counsel
W.R. Grace & Co.-Conn.
_Corporate Headquarters
7500 Grace Drive
Columbia, MD 21044
Tel.: +1 410.531.4000
Fax: +1 410.531.4367

## X.    MISCELLANEOUS

10.1.    This Agreement shall be construed, and the rights and obligations of the Private Parties hereunder shall be determined, in accordance with the laws of the State of Texas applicable to contracts made in and to be performed in Texas and, to the extent applicable, the federal laws of the United States of America, excluding any principle of conflict of laws that would require application of the laws of any other jurisdiction.

-13-

10.2.    This Agreement shall be binding upon and shall inure to the benefit of Grace, Samson Hydrocarbons, and NuStar and their respective Related Parties, but neither this Agreement nor any rights, interests or obligations hereunder shall be assigned or transferred by any of the Parties hereto without the prior written consent of the other Parties (which consent shall not be withheld or delayed unreasonably). Except as expressly provided for herein with respect to Related Parties and affiliates of the Private Parties, this Agreement is not intended to and shall not inure to the benefit of or be enforceable by anyone other than Grace, Samson Hydrocarbons and NuStar.

10.3.    This Agreement may not be modified or amended except by an agreement in writing signed by Grace, Samson Hydrocarbons and NuStar, which writing expressly refers to this Agreement. However, any such modifications or amendments shall not be inconsistent with the Consent Decree.

10.4.    The waiver by any Private Party of any breach or violation of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach or violation of this Agreement.

10.5.    The Private Parties agree and stipulate that this Agreement is not intended by them, nor is it to be interpreted in any way by any person, as an admission of any liability, fault or responsibility whatsoever by any Private Party; and all Private Parties expressly deny any and all such alleged liability, fault or responsibility. This Agreement and any documents prepared to give effect to this Agreement are for settlement purposes only and shall not be used as evidence in any proceeding, other than a proceeding to enforce the terms of this Agreement.

10.6.    Prior to entering into this Agreement, each of the Private Parties has conducted such investigations and made such determinations as to facts or circumstances deemed relevant by such Private Party as are deemed necessary or appropriate by such Private Party. No promise or statement or representation of any kind other than as expressly stated in this Agreement has been made to any Private Party by anyone acting for any of the other Private Parties to this Agreement. No Private Party is relying on any promise or statement or representation of any kind that is not expressly stated in this Agreement that has been made to such Private Party by anyone acting for any of the other Private Parties to this Agreement; and each of the Private Parties is entering into this Agreement relying on its own judgment after having had the benefit of being represented by legal counsel of its own choosing. The Private Parties intend that this Agreement shall effect a final and conclusive resolution of their disputes and controversies regarding the U.S. Claims, the Dallas Litigation, the Dallas Judgment or the Dallas Appeal.

10.7.    This Agreement and the Consent Decree contain the entire agreement with regard to the matters set forth in such documents and they fully supersede any and all prior agreements and understandings between and among the Private Parties.

10.8.    Notwithstanding any other provision of this Agreement, in the event that it becomes necessary for any Private Party to file suit or institute judicial proceedings to enforce this Agreement against any other Private Party, the prevailing Private Party shall be entitled to recover, in addition to all remedies or damages, reasonable attorneys' fees and costs of court incurred in such suit or judicial proceeding.

-14-

10.9.  This Agreement shall be construed without respect to its drafter, and shall be construed as if the Private Parties each participated equally and fully in the drafting of this Agreement.

10.10.  Each Person executing this Agreement on behalf of or as a representative of a Private Party warrants and represents that such Person is duly authorized and empowered to execute and deliver this Agreement on behalf of and as the act and deed of such Private Party.

10.11.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute but one Agreement.

10.12.  Except as expressly provided herein or expressly provided in the Consent Decree, the Private Parties represent and warrant that they have not assigned, pledged, or transferred, or purported to assign, pledge, or transfer, voluntarily or involuntarily, any claims that are the subject of releases in Article VIII.

## XI. CONFIDENTIALITY.

11.1.  The terms and negotiations of this Agreement and all references to the Settlement Amount (collectively **"Settlement Information"**) shall be kept confidential and shall be disclosed only to the Private Parties, their counsel, their tax advisors, their securities law advisors, their auditors, or in connection with any disclosures required by law, or as necessary to obtain approval of this Agreement in the Grace Bankruptcy Proceeding.  Settlement Information may also only be disclosed as follows:

(a).  The fact that the Private Parties have entered into this Agreement may be disclosed to any Person;

(b).  The Settlement Information may be disclosed as necessary to obtain the Approval Order from the Bankruptcy Court and the Private Parties agree that this Agreement will be filed with the Bankruptcy Court with only Paragraph 7.2 redacted, provided, however, the Private Parties may agree to waive this provision in whole or in part in order to comply with applicable law or court order or to obtain the Approval Order;

(c).  The Settlement Information may be disclosed by order of Court;

(d).  The Settlement Information may be disclosed to outside auditors or accountants of any Private Party or to the Internal Revenue Service;

(e).  A Private Party may disclose the Settlement Information to its accountant, to its counsel, to underwriters in connection with offerings of securities to be issued by such Private Party and to counsel for such underwriters; and

(f).  The Settlement Information may be disclosed in any action brought to enforce the terms of this Agreement;

-15-

**11.2.**    Provided, however, that a Private Party making disclosure of any Settlement Information pursuant to one of the exceptions set forth in Paragraph 11.1 (c) through (e) above shall inform any person to which such disclosure is made of the confidential nature of the Settlement Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such person to hold the Settlement Information in confidence.

**11.3.**    A Private Party may describe and/or make reference to this Agreement, including Paragraph 7.2, to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government or governmental agency or other authority. Without limiting the foregoing, the Private Parties agree that Grace and NuStar may describe and or make reference to this Agreement in a Current Report on Form 8-K, a Quarterly Report on Form 10-Q, an Annual Report on Form 10-K or any other report or filing that, on advice of counsel, Grace or NuStar is required to make pursuant to the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and in any financial statement and/or related notes included or incorporated by reference in any such report or filing.

**11.4.**    In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Article XI, the Private Party from whom disclosure is sought shall immediately give written notice to the other Private Parties in order to allow each Private Party to take such protective steps as may be appropriate.  The Parties may agree to disclose this Agreement to the U.S. in whole or in part as reasonably necessary to obtain approval and entry of the Consent Decree.

**11.5.**    Material protected by this Article XI shall be deemed to fall within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

**11.6.**    This Article XI is effective immediately upon the Execution Date.  This Article XI survives termination of this Agreement.


[REST OF PAGE INTENTIONALLY LEFT BLANK]

-16-

WITNESS the execution hereof by the respective Private Parties on the date set out opposite their signature below.

**W. R. GRACE & CO.**

Date: _____10/14/2011_____    By _____Mark A. Shelnitz_____
                                   Name: MARK A. SHELNITZ
                                   Title: VICE PRESIDENT, GENERAL COUNSEL
                                                + SECRETARY

**W. R. GRACE & CO. – CONN.**

Date: _____10/14/2011_____    By _____Mark A. Shelnitz_____
                                   Name: MARK A. SHELNITZ
                                   Title: VICE PRESIDENT, GENERAL COUNSEL
                                                + SECRETARY

**GRACE ENERGY CORPORATION**

Date: _____10/14/2011_____    By _____Mark A. Shelnitz_____
                                   Name: MARK A. SHELNITZ
                                   Title: ____GENERAL COUNSEL____

-17-

**SAMSON HYDROCARBONS COMPANY**
**n/k/a SGH ENTERPRISES, INC.**

Date: _____

By _____
Name:  C. Philip Tholen
Title:  Attorney-in-Fact

**SAMSON INVESTMENT COMPANY**

Date: _____

By _____
Name:  C. Philip Tholen
Title:  Executive Vice President

**NUSTAR PIPELINE OPERATING**
**PARTNERSHIP L.P. (by its General**
**Partner NuStar Pipeline Company, LLC)**

Date: October 13, 2011

By _____
Name: Bradley C. Barron
Title: Senior Vice President

**NUSTAR TERMINALS SERVICES, INC.**

Date: October 13, 2011

By _____
Name: Bradley C. Barron
Title: Senior Vice President

**NUSTAR ENERGY LP**
by Riverwalk Logistics, LP its GP
by NuStar GP LLC, its GP

Date: October 13, 2011

By _____
Name: Bradley C. Barron
Title: Senior Vice President
and General Counsel

**NUSTAR TERMINALS OPERATIONS**
**PARTNERSHIP, L.P. (by its General**
**Partner NuStar Terminals Services, Inc.)**

Date: October 13, 2011

By _____
Name: Bradley C. Barron
Title: Senior Vice President

## LIST OF EXHIBITS TO PRIVATE PARTIES AGREEMENT

Exhibit A      Approval Order – see Motion for Entry of Order Approving Settlement ("Motion") Exhibit D.

Exhibit B      Consent Decree – see Motion Exhibit A.

Exhibit C      Motion for Entry of Order Approving Settlement – see Motion to which this Private Parties Agreement is Exhibit B.

Exhibit D      Joint Motion to Reinstate Appeal

Exhibit E      Joint Motion to Vacate and Set Aside the Dallas Judgment

Exhibit F      Joint Motion for Immediate Issuance of Mandate

Exhibit G      Joint Motion for Release of Surety on Supersedeas Bond

Exhibit H      Agreed Order Releasing Surety on Supersedeas Bond

Exhibit I      Bill of Sale of Personal Property from Cleary Petroleum Corporation to Northeast Petroleum Corporation of Cape Code

No. 05-00-01592-CV

## IN THE FIFTH COURT OF APPEALS
## DALLAS, TEXAS

### KANEB PIPE LINE OPERATING PARTNERSHIP, L.P.
### AND SUPPORT TERMINAL SERVICES, INC.,

*Appellants and*
*Cross-Appellees,*

v.

### GRACE ENERGY CORPORATION,

*Appellee and*
*Cross-Appellant.*

## JOINT MOTION TO REINSTATE THE APPEAL

Appeal from Cause No. 97-05135-J
191st District Court
Dallas County, Texas
Honorable Catharina Haynes, Presiding

| SNOW, FOGEL, SPENCE LLP | FULBRIGHT & JAWORSKI L.L.P. |
|---|---|
| W. Ross Spence | Joy M. Soloway |
| State Bar No. 18918400 | State Bar No. 18838700 |
| 2929 Allen Parkway, Suite 4100 | 1301 McKinney, Suite 5100 |
| Houston, TX 77019 | Houston, TX 77010-3095 |
| Telephone: (713) 335-4800 | Telephone: (713) 651-5151 |
| Telecopier: (713) 335-4848 | Telecopier: (713) 651-5246 |
| | |
| *Attorneys for Appellee and* | *Attorneys for Appellants and* |
| *Cross-Appellant* | *Cross-Appellees* |
| *Grace Energy Corporation* | *Kaneb Pipe Line Operating* |
| | *Partnership and Support* |
| | *Terminal Services, Inc.* |


EXHIBIT
D

Exhibit A

**TO THE HONORABLE COURT OF APPEALS:**

Pursuant to Rule 8.3(a) of the Texas Rules of Appellate Procedure, Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively "Kaneb"), and Appellee and Cross-Appellant Grace Energy Corporation ("Grace"), file this **Joint** Motion to Reinstate the Appeal. In support of this motion, they show the Court as follows:

## BACKGROUND

1. On August 30, 2000, the trial court signed an Amended Final Judgment.

2. On October 2, 2000, Kaneb filed a notice of appeal.

3. On October 16, 2000, Grace filed a notice of appeal.

4. On or about April 30, 2001, Grace filed a Notice of Bankruptcy.

5. On May 7, 2001, the Court issued an Order abating the appeal.

6. Thereafter, Kaneb and Grace reached an agreement regarding the underlying dispute and a stipulation was entered in the bankruptcy proceeding.

## RELIEF REQUESTED

7. Accordingly, Kaneb and Grace jointly request that the Court reinstate the appeal. By separate motion, Kaneb and Grace are asking the Court to vacate the trial court's Amended Final Judgment Consistent with Parties' Agreement.

## PRAYER

Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc., and Appellee and Cross-Appellant Grace Energy Corporation request that the Court reinstate the appeal. They ask for all other relief to

which they may be justly entitled.

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: _____

Joy M. Soloway
State Bar No. 18838700
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

*Attorneys for Appellants and Cross-Appellees*
*Kaneb Pipe Line Operating Partnership, L.P.*
*and Support Terminal Services, Inc.*

SNOW, FOGEL, SPENCE LLP

By: _____

W. Ross Spence
State Bar No. 18918400
2929 Allen Parkway, Suite 4100
Houston, TX 77019
Telephone: (713) 335-4800
Telecopier: (713) 335-4848

*Attorneys for Appellee and Cross-Appellant*
*Grace Energy Corporation*

## CERTIFICATE OF SERVICE

On the _____ day of _____, 2012, I served a copy of this **Joint Motion to Reinstate the Appeal** in compliance with Rule 9.5 of the Texas Rules of Appellate Procedure, by Certified Mail, Return Receipt Requested, upon the following counsel of record:

Mr. W. Ross Spence
Snow, Fogel, Spence LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
*Counsel for Appellee and Cross-Appellant*
*Grace Energy Corporation*

_____
Joy M. Soloway

No. 05-00-01592-CV

---

## IN THE FIFTH COURT OF APPEALS
## DALLAS, TEXAS

---

**KANEB PIPE LINE OPERATING PARTNERSHIP, L.P.
AND SUPPORT TERMINAL SERVICES, INC.,**

*Appellants and
Cross-Appellees,*

v.

**GRACE ENERGY CORPORATION,**

*Appellee and
Cross-Appellant.*

---

## JOINT MOTION TO VACATE THE TRIAL COURT'S
## JUDGMENT CONSISTENT WITH PARTIES' AGREEMENT

---

Appeal from Cause No. 97-05135-J
191st District Court
Dallas County, Texas
Honorable Catharina Haynes, Presiding

---

SNOW, FOGEL, SPENCE LLP
W. Ross Spence
State Bar No. 18918400
2929 Allen Parkway, Suite 4100
Houston, TX 77019
Telephone: (713) 335-4800
Telecopier: (713) 335-4848
*Attorneys for Appellee and
Cross-Appellant
Grace Energy Corporation*

FULBRIGHT & JAWORSKI L.L.P.
Joy M. Soloway
State Bar No. 18838700
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246
*Attorneys for Appellants and
Cross-Appellees
Kaneb Pipe Line Operating
Partnership and Support
Terminal Services, Inc.*



EXHIBIT
E

Exhibit B

**TO THE HONORABLE COURT OF APPEALS:**

Pursuant to Rules 42.1(a)(2) and 43.2 of the Texas Rules of Appellate Procedure and Local Rule 8, Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively "Kaneb"), and Appellee and Cross-Appellant Grace Energy Corporation ("Grace"), file this **Joint** Motion to Vacate the Trial Court's Judgment Consistent with the Parties' Agreement and dismiss the case. Kaneb and Grace would show the Court as follows:

## BACKGROUND

1.    On August 30, 2000, the trial court signed an Amended Final Judgment.

2.    On October 2, 2000, Kaneb filed a notice of appeal.

3.    On October 16, 2000, Grace filed a notice of appeal.

4.    On or about April 30, 2001, Grace filed a Notice of Bankruptcy.

5.    On May 7, 2001, the Court issued an Order abating the appeal.

6.    Thereafter, Kaneb and Grace reached an agreement regarding the dispute underlying this appeal and a stipulation was entered in the bankruptcy proceeding.

7.    Thereafter, Kaneb and Grace filed a Motion to Reinstate the Appeal.

8.    No briefs have been filed in this cause and no opinion has issued.

## RELIEF REQUESTED

9.    Kaneb and Grace have reached an agreement relating to disputes underlying this appeal. Consistent with that agreement, they jointly request the Court to vacate the trial court's Amended Final Judgment and dismiss the case.

10.    Attached at **Exhibit A** is the Agreement of the parties for purposes of Rule 42.1(a)(2).

11.    Kaneb and Grace will each be responsible for their own appellate costs.

## PRAYER

Accordingly, Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc., and Appellee and Cross-Appellant Grace Energy Corporation, ask the Court to vacate the trial court's Amended Final Judgment and dismiss the case. They further ask for all other relief to which they may be justly entitled.

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By:    _____
           Joy M. Soloway
           State Bar No. 18838700
      1301 McKinney, Suite 5100
      Houston, TX  77010-3095
      Telephone:    (713) 651-5151
      Telecopier:    (713) 651-5246

*Attorneys for Appellants and Cross-Appellees*
*Kaneb Pipe Line Operating Partnership, L.P.*
*and Support Terminal Services, Inc.*

60202537

2

SNOW, FOGEL, SPENCE LLP

By: _____
     W. Ross Spence
      State Bar No. 18918400
2929 Allen Parkway, Suite 4100
Houston, TX 77019
Telephone:   (713) 335-4800
Telecopier:   (713) 335-4848

*Attorneys for Appellee and Cross-Appellant*
*Grace Energy Corporation*

## CERTIFICATE OF SERVICE

On the _____ day of _____, 2012, I served a copy of this **Joint Motion** in compliance with Rule 9.5 of the Texas Rules of Appellate Procedure, by Certified Mail, Return Receipt Requested, upon the following counsel of record:

Mr. W. Ross Spence
Snow, Fogel, Spence, LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
*Counsel for Appellee and Cross-Appellant*
*Grace Energy Corporation*

_____
Joy M. Soloway

## AGREEMENT

Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc., and Appellee and Cross-Appellant Grace Energy Corporation agree to ask the Court of Appeals to vacate the trial court's Amended Final Judgment and dismiss the case. They further agree to be responsible for their own costs on appeal.

KANEB PIPE LINE OPERATING
PARTNERSHIP, L.P.

By: _____

SUPPORT TERMINAL SERVICES, INC.

By: _____

GRACE ENERGY CORPORATION

By: _____

60202537

5

No. 05-00-01592-CV

---

## IN THE FIFTH COURT OF APPEALS
## DALLAS, TEXAS

---

### KANEB PIPE LINE OPERATING PARTNERSHIP, L.P.
### AND SUPPORT TERMINAL SERVICES, INC.,

*Appellants and*
*Cross-Appellees,*

v.

### GRACE ENERGY CORPORATION,

*Appellee and*
*Cross-Appellant.*

---

## JOINT MOTION FOR IMMEDIATE ISSUANCE OF MANDATE

---

**Appeal from Cause No. 97-05135-J**
**191st District Court**
**Dallas County, Texas**
**Honorable Catharina Haynes, Presiding**

---

| SNOW, FOGEL, SPENCE LLP | FULBRIGHT & JAWORSKI L.L.P. |
|---|---|
| W. Ross Spence | Joy M. Soloway |
| State Bar No. 18918400 | State Bar No. 18838700 |
| 2929 Allen Parkway, Suite 4100 | 1301 McKinney, Suite 5100 |
| Houston, TX  77019 | Houston, TX  77010-3095 |
| Telephone:  (713) 335-4800 | Telephone:  (713) 651-5151 |
| Telecopier:  (713) 335-4848 | Telecopier:  (713) 651-5246 |
| | |
| *Attorneys for Appellee and* | *Attorneys for Appellants and* |
| *Cross-Appellant* | *Cross-Appellees* |
| *Grace Energy Corporation* | *Kaneb Pipe Line Operating* |
| | *Partnership and Support* |
| | *Terminal Services, Inc.* |



**EXHIBIT**
**F**

Exhibit C

**TO THE HONORABLE COURT OF APPEALS:**

Pursuant to Rule 18.1(c) of the Texas Rules of Appellate Procedure, Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively "Kaneb"), and Appellee and Cross-Appellant Grace Energy Corporation ("Grace") file this Joint Motion for Immediate Issuance of Mandate. In support of this Motion, they show as follows:

## BACKGROUND

1.      On August 30, 2000, the trial court signed an Amended Final Judgment.

2.      On October 2, 2000, Kaneb filed a notice of appeal.

3.      On October 16, 2000, Grace filed a notice of appeal.

4.      On or about April 30, 2001, Grace filed a Notice of Bankruptcy.

5.      On May 7, 2001, the Court issued an Order abating the appeal.

6.      Thereafter, Kaneb and Grace reached an agreement regarding the underlying dispute.

## PRAYER FOR RELIEF

Appellants and Cross-Appellees Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. (collectively "Kaneb"), and Appellee and Cross-Appellant Grace Energy Corporation request that the Court immediately issue the mandate. They ask for all other relief to which they may be justly entitled.

60202550

1

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.


By: _____

    Joy M. Soloway
    State Bar No. 18838700
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:   (713) 651-5151
Telecopier:   (713) 651-5246

*Attorneys for Appellants and Cross-Appellees*
*Kaneb Pipe Line Operating Partnership, L.P.*
*and Support Terminal Services, Inc.*

SNOW, FOGEL, SPENCE LLP


By: _____

    W. Ross Spence
    State Bar No. 18918400
2929 Allen Parkway, Suite 4100
Houston, TX  77019
Telephone:   (713) 335-4800
Telecopier:   (713) 335-4848

*Attorneys for Appellee and Cross-Appellant*
*Grace Energy Corporation*

2

## CERTIFICATE OF SERVICE

On the _____ day of _____, 2012, I served a copy of this **Joint Motion for Immediate Issuance of Mandate** in compliance with Rule 9.5 of the Texas Rules of Appellate Procedure, by Certified Mail, Return Receipt Requested, upon the following counsel of record:

Mr. W. Ross Spence
Snow, Fogel, Spence LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
*Counsel for Appellee and Cross-Appellant*
*Grace Energy Corporation*


Joy M. Soloway

60202550                                    3

NO. 97-05135-J

| | | |
|---|---|---|
| GRACE ENERGY CORPORATION,<br>    Plaintiff, | §<br>§ | IN THE DISTRICT COURT |
| | § | |
| V. | §<br>§ | |
| | § | |
| KANEB PIPE LINE OPERATING | § | DALLAS COUNTY, TEXAS |
| PARTNERSHIP, L.P.; SUPPORT | § | |
| TERMINAL SERVICES, INC.; AND | § | |
| SUPPORT TERMINAL OPERATING | § | |
| PARTNERSHIP, L.P., | § | |
|     Defendants. | § | 191ST JUDICIAL DISTRICT |

## JOINT MOTION FOR RELEASE OF SURETY ON SUPERSEDEAS BOND

### TO THE HONORABLE JUDGE OF SAID COURT:

On October 10, 2000, Defendants Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. filed a supersedeas bond in the amount up to $2,146,886 to stay execution of this Court's judgment pending appeal to the Texas Fifth Court of Appeals.  Thereafter, Defendants and the Plaintiff resolved their dispute, the judgment was vacated by the Court of Appeals.

Accordingly, the parties hereby jointly request that the Court sign the attached order releasing the surety, National Fire Insurance Company of Hartford, and to order the clerk to return the original bond to the Defendants' counsel at the following address:

> Joy M. Soloway
> Fulbright & Jaworski L.L.P.
> Fulbright Tower
> 1301 McKinney, Suite 5100
> Houston, TX  77010-3095



EXHIBIT
G

60202572

Exhibit D

WHEREFORE, PREMISES CONSIDERED, Defendants Kaneb Pipe Line Operating Partnership, L.P., Support Terminal Services, Inc., and Plaintiff Grace Energy Corporation respectfully request that this Court enter an order releasing the surety and ordering the Clerk to return the original supersedeas bond to the Defendants' counsel at this Court's earliest convenience.

FULBRIGHT & JAWORSKI L.L.P.

By: _____
     Joy M. Soloway
     State Bar No. 18838700
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

Attorneys for Kaneb Pipe Line Operating
Partnership, L.P., and Support Terminal
Services, Inc.

SNOW, FOGEL, SPENCE LLP

By: _____
     W. Ross Spence
     State Bar No. 18918400
2929 Allen Parkway, Suite 4100
Houston, TX 77019
Telephone:  (713) 335-4800
Facsimile:  (713) 335-4848

Attorneys for Grace Energy Corporation

60202572

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on _____, 2012.

W. Ross Spence
Snow, Fogel, Spence LLP
2929 Allen Parkway, Suite 4100
Houston, Texas  77019


_____
Joy M. Soloway

60202572                                  - 3 -

NO. 97-05135-J

| | | |
|---|---|---|
| GRACE ENERGY CORPORATION,<br>    Plaintiff, | § <br> § <br> § | IN THE DISTRICT COURT |
| V. | § <br> § <br> § | |
| KANEB PIPE LINE OPERATING<br>PARTNERSHIP, L.P.; SUPPORT<br>TERMINAL SERVICES, INC.; AND<br>SUPPORT TERMINAL OPERATING<br>PARTNERSHIP, L.P.,<br>    Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § | DALLAS COUNTY, TEXAS<br><br><br><br>191ST JUDICIAL DISTRICT |

## <u>AGREED ORDER RELEASING SURETY ON SUPERSEDEAS BOND</u>

On this day came on to be heard the joint motion of Defendants Kaneb Pipe Line Operating Partnership, L.P. and Support Terminal Services, Inc. ("Kaneb") and Plaintiff Grace Energy Corporation for Release of Surety on Supersedeas Bond, which bond was filed in this case to stay execution of this Court's judgment pending Defendants' appeal to the Dallas Court of Appeals. The Court finds that the motion is well-taken and should be, in all things, GRANTED. It is therefore:

ORDERED that the surety, National Fire Insurance Company of Hartford is hereby released; and it is further

ORDERED that the supersedeas bond in the amount of up to $2,146,886, filed with this Court be returned to Defendants' counsel of record, Joy M. Soloway, Fulbright & Jaworski L.L.P., Fulbright Tower, 1301 McKinney, Suite 5100, Houston, Texas 77010-3095; and it is further



EXHIBIT
H

60202584

Exhibit H

ORDERED that the Clerk of this Court be and hereby is directed to return said supersedeas bond to Defendants' counsel of record as recited above.

SIGNED this _____ day of _____, 2012.


_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

FULBRIGHT & JAWORSKI L.L.P.


By: _____
      Joy M. Soloway
      State Bar No. 18838700
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Attorneys for Kaneb Pipe Line Operating
Partnership, L.P., and Support Terminal
Services, Inc.

SNOW, FOGEL, SPENCE LLP


By: _____
      W. Ross Spence
      State Bar No. 18918400
2929 Allen Parkway, Suite 4100
Houston, TX 77019
Telephone: (713) 335-4800
Facsimile: (713) 335-4848

Attorneys for Grace Energy Corporation

60202584

- 2 -

# Know all men by these presents

that the CLEARY PETROLEUM CORPORATION with which Standard Transmission Corporation has merged, a corporation duly established under the laws of Delaware and having its usual place of business at Oklahoma City, Oklahoma in consideration of ONE DOLLAR ($1.00)

paid by NORTHEAST PETROLEUM CORPORATION of CAPE COD a corporation duly established under the laws of Massachusetts and having its usual place of business at 295 Eastern Avenue, Chelsea, Massachusetts the receipt whereof is hereby acknowledged, do hereby grant, sell, transfer and deliver unto the said NORTHEAST PETROLEUM CORPORATION of CAPE COD    the following goods and chattels, namely:

1. One (1) frame house with all fixtures and appliances therein as of September 1, 1976;

2. Two (2) oil tanks, each of a capacity of approximately thirty thousand (30,000) barrels including, without limitation, the suction, inlet, and water drawoff valves for each tank.

3. The metal building used as an office and pump building with the general office furniture contained therein as of September 1, 1976;

4. One Jacuzzi discharge deepwell pump with all valves and controls incidental thereto.

5. Miscellaneous items on or about the property as of September 1, 1976 including without limitation, the following:

    (a). One (1) water pump (drawoff) with valves and controls
    (b). Two (2) eight inch steel valves (from bulkhead)
    (c). One (1) ten inch steel valve
    (d). Approximately twenty-five to fifty feet of eight inch steel pipe not currently being used

To have and to hold all and singular the said goods and chattels to the said

NORTHEAST PETROLEUM CORPORATION    and its

successors, administrators and assigns, to their own use and behoof forever.

And    it    hereby covenant with the vendee    that    it is    the lawful owner of the said goods and chattels; that they are free from all encumbrances.

that it has good right to sell the same as aforesaid; and that    it    will warrant and defend the same against the lawful claims and demands of all persons

In witness whereof    the said CLEARY PETROLEUM CORPORATION with which STANDARD TRANSMISSION CORPORATION has merged has hereunto caused this Bill of Sale to be executed by its duly authorized officer and its corporate seal to be affixed hereto.    this    ____ day of ____ in the year one thousand nine hundred and seventy-six

Signed and sealed in the presence of    CLEARY PETROLEUM CORPORATION

BY

Subscribed and sworn to before me by Fred T. Johnson on behalf of Cleary Petroleum Corporation this ____ day of ____ 1976.    Fred T. Johnson, Vice President



EXHIBIT
I

002900



From.... Cleary Petroleum Corp., with which
Standard Transmission Corp., has
merged

To.... Northeast Petroleum Corp.

Date                           19......

WARRANTY

## Bill of Sale
### of
### Personal Property

*From the Office of*

John F. McCoy, Esq.

8 MacArthur Boulevard

Bourne, Massachusetts 02532

THE BLAKE PRESS, INC., PUBLISHERS
BOSTON, MASS.
FORM 118-B

002470

KPOP 1487