**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.**, *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S COMBINED FINAL REPORT REGARDING**
**THOSE FEE APPLICATIONS WITH *DE MINIMIS* OR NO FEE OR EXPENSE**
**ISSUES FOR THE FORTY-SECOND INTERIM PERIOD**

This is the combined final report of Warren H. Smith & Associates, P.C., acting in its

capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding all the Interim Fee

Applications of those firms for which we have *de minimis*[1] or no fee or expense issues for the Forty-

Second Interim Period (collectively referred to hereafter as the "Applications").[2]

**BACKGROUND**

1.      Anderson Kill & Olick, P.C. ("AKO"), was retained as special insurance counsel to

the Official Committee of Asbestos Personal Injury Claimants. AKO seeks approval of fees totaling

$226,658.50 and expenses totaling $426.29 for its services during the Application Period.

2.      David T. Austern ("Austern") was retained as the Legal Representative for Asbestos

Personal Injury Future Claimants. Austern seeks approval of fees totaling $3,150.00 and no

---

[1]For purposes of this report, applications with *de minimis* issues are those for which: (1) our recommended reductions total less than $300, *and* (2) the applicant has agreed to our recommended reductions.

[2]The Forty-Second Interim Period encompasses July 1, 2011 through September 30, 2011 (the "Application Period"). All Applications are for the Forty-Second Interim Period, unless otherwise specified.

expenses for his services during the Application Period.

3.      Baer Higgins Fruchtman LLC ("BHF") was retained as co-counsel to the Debtors and Debtors-in-Possession.  BHF seeks approval of fees totaling $359,307.50 and expenses totaling $7,656.14 for its services during the Application Period.

4.      Baker Donelson Bearman Caldwell & Berkowitz, P. C. ("Baker Donelson"), was retained as advisor for legislative affairs to the Debtors.  Baker Donelson seeks approval of flat fees totaling $57,000.00[3] and expenses totaling $9.68 for its services during the Application Period.

5.      Beveridge & Diamond, P.C. ("Beveridge & Diamond"), was retained as special counsel to the Debtors.  Beveridge & Diamond seeks approval of fees totaling $49,575.00 and expenses totaling $704.83 for its services during the Application Period.

6.      Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants.  Bilzin Sumberg seeks approval of fees totaling $22,765.50 and expenses totaling $2,052.77 for its services during the Application Period.

7.      Blackstone Advisory Services L.P. ("Blackstone") was retained as financial advisor to the Debtors.  Blackstone seeks approval of a flat fee totaling $375,000.00[4] and expenses totaling $1,881.26 for its services during the Application Period.

8.      BMC Group ("BMC") was retained as Claims Reconciliation and Solicitation Consultant to the Debtors.  BMC seeks approval of fees totaling $125,136.50 and expenses totaling

---

[3]For the Application Period, Baker Donelson lists 26 hours worked, which computes to an effective hourly rate of $2,192.31.

[4]For the Application Period, Blackstone lists 545.20 hours worked, which computes to an effective hourly rate of $687.82.

$6,536.14 for its services during the Application Period.

9.      Campbell & Levine, LLC ("Campbell & Levine"), was retained as Delaware and associated counsel to the Official Committee of Asbestos Personal Injury Claimants.  Campbell & Levine seeks approval of fees totaling $37,207.00 and expenses totaling $4,345.79 for its services during the Application Period.

10.      Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as counsel to the Official Committee of Asbestos Personal Injury Claimants.  Caplin & Drysdale seeks approval of fees totaling $77,203.50 and expenses totaling $2,990.56 for its services during the Application Period.[5]

11.      Capstone Advisory Group, LLC ("Capstone"), was retained as financial advisor to the Official Committee of Unsecured Creditors.  Capstone seeks approval of fees totaling $192,770.50 and expenses totaling $369.08 for its services during the Application Period.

12.      Casner & Edwards, LLP ("Casner"), was retained as special litigation counsel to the Debtors.  Casner seeks approval of fees totaling $36,336.50 and expenses totaling $30,705.22 for its services during the Application Period.

13.      Charter Oak Financial Consultants, LLC ("Charter Oak"), was retained as financial advisor to the Official Committee of Asbestos Personal Injury Claimants.  Charter Oak seeks approval of fees totaling $91,455.50 and expenses totaling $251.00 for its services during the

--------

[5]We note for informational purposes that Caplin & Drysdale billed the time of attorney Elihu Inselbuch at $1,000.00 per hour.  During the current Application Period, Mr. Inselbuch billed 10.80 hours at the $1,000 per hour rate, for $10,800.00 in fees.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

Application Period.

14.     Day Pitney LLP ("Day Pitney") was retained as special counsel to the Debtors.  Day Pitney seeks approval of fees totaling $3,834.00 and no expenses for its services during the Application Period.

15.     Deloitte Tax LLP ("Deloitte Tax") was retained to provide tax services to the Debtors and Debtors-in-Possession.  Deloitte Tax seeks approval of fees totaling $43,513.00 and expenses totaling $27.54 for its services from April 1, 2011 through June 30, 2011 (the "Forty-First Interim Period").

16.     Duane Morris LLP ("Duane Morris") was retained as co-counsel to the Official Committee of Unsecured Creditors.  Duane Morris seeks approval of fees totaling $16,836.00 and expenses totaling $813.77 for its services during the Application Period.

17.     Ferry, Joseph & Pearce, P.A. ("Ferry Joseph"), was retained as counsel to the Official Committee of Asbestos Property Damage Claimants.  Ferry Joseph seeks approval of fees totaling $19,075.00 and expenses totaling $560.88 for its services during the Application Period.

18.     Foley Hoag LLP ("Foley Hoag") was retained as special environmental counsel to the Debtors.  Foley Hoag seeks approval of fees totaling $47,463.00 and expenses totaling $244.69 for its services during the Application Period.

19.     Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen") was retained as immigration counsel to the Debtors.  Fragomen seeks approval of fees totaling $7,075.00 and expenses totaling $5,642.58 for its services during the Application Period.

20.     Hamilton, Rabinovitz & Alschuler, Inc. ("HRA"), was retained as consultant to the Official Committee of Asbestos Property Damage Claimants.  HRA seeks approval of fees totaling

$700.00 and no expenses for its services during the Application Period.

21.    The Hogan Firm ("Hogan") was retained as Delaware counsel to the Canadian Zonolite Attic Insulation ("ZAI") Claimants.  Hogan seeks approval of fees totaling $34,274.00 and expenses totaling $705.37[6] for its services during the Application Period.

22.    Kirkland & Ellis LLP ("Kirkland & Ellis") was retained as counsel to the Debtors. Kirkland & Ellis seeks approval of fees totaling $847,526.50 and expenses totaling $32,343.05 for its services during the Application Period.

23.    Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") was retained as co-counsel to the Official Committee of Equity Holders.  Kramer Levin seeks approval of fees totaling $49,894.00 and expenses totaling $2,308.18 for its services during the Application Period.

24.    Lauzon Bélanger Lespérance ("Lauzon Bélanger) was retained as Canadian counsel to the Canadian ZAI Claimants.  Lauzon Bélanger seeks approval of fees totaling CDN $9,137.10 and expenses totaling CDN $1,306.42 for its services during the Application Period.

25.    Lincoln Partners Advisors LLC ("Lincoln") was retained as financial advisor to David T. Austern, the Asbestos Personal Injury Future Claimants' Representative.  Lincoln seeks approval of flat fees totaling $170,000.00[7] and expenses totaling $988.86 for its services during the Application Period.

26.    Norton Rose OR LLP ("Norton Rose"), formerly known as Ogilvy Renault LLP, was

---

[6]Hogan's expense request of $705.37 reflects a write-down of $195.00 from its monthly fee applications.  The write-down was for wire transfer fees which Hogan chose not to charge the estate.

[7]For the current Application Period, Lincoln recorded 242.40 hours worked, which computes to an effective hourly rate of $701.32.

retained as special counsel to the Debtors and Debtors-in-Possession in Canada.  Norton Rose seeks approval of fees totaling CDN $14,873.00 and expenses totaling CDN $457.29 for its services during the Application Period.[8]

27.     Orrick, Herrington & Sutcliffe LLP ("Orrick") was retained as bankruptcy counsel to David T. Austern, Future Claimants' Representative.  Orrick seeks approval of fees totaling $486,275.25 and expenses totaling $7,381.60 for its services during the Application Period.

28.     Pachulski Stang Ziehl & Jones LLP ("Pachulski") was retained as counsel to the Debtors.  Pachulski seeks approval of fees totaling $101,206.50 and expenses totaling $54,179.47 for its services during the Application Period.

29.     Phillips, Goldman & Spence, P.A. ("PG&S"),  was retained as local counsel to David T. Austern, Future Claimants' Representative.  PG&S seeks approval of fees totaling $7,384.00 and expenses totaling $212.76 for its services during the Application Period.

30.     PricewaterhouseCoopers LLP ("PwC") was retained as auditors and tax consultants to the Debtors and Debtors-in-Possession.  PwC seeks approval of fees totaling $682,597.42 and expenses totaling $11,036.74 for its services during the Application Period.  Also, in the Application, PwC seeks approval of the following special project applications:

- 2010 Darex Puerto Rico Audit (for the Period of May through July 2011) in which PwC seeks fees totaling $24,039.11 and expenses totaling $94.80;

- Global Restructuring Project (for the Period of April through July 2011) in which

---

[8]We note for informational purposes that Norton Rose billed the time of attorney Derrick Tay at CDN $1,100.00 per hour.  During the current Application Period, Mr. Tay billed 0.20 hours at the CDN $1,100 per hour rate, for CDN $220.00 in fees.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

PwC seeks fees totaling $74,967.85[9] and no expenses; and

- Global Restructuring Project (for the Period of August through September 2011) in which PwC seeks fees totaling $206,388.60 and no expenses.

31.    Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  Reed Smith seeks approval of fees totaling $32,156.00 and expenses totaling $1,289.01 for its services during the Application Period.

32.    Alan B. Rich ("Alan Rich") was retained as counsel to the Honorable Alexander M. Sanders, Jr., Legal Representative for Future Asbestos-Related Property Damage Claimants.  Alan Rich seeks approval of fees totaling $29,120.00 and expenses totaling $20.88 for his services during the Application Period.

33.    The Honorable Alexander M. Sanders, Jr. ("Judge Sanders"), was retained as the Legal Representative for Future Asbestos-Related Property Damage Claimants.  Judge Sanders seeks approval of fees totaling $6,975.00 and no expenses for his services during the Application Period.

34.    Saul Ewing LLP ("Saul Ewing") was retained as co-counsel to the Official Committee of Equity Holders.  Saul Ewing seeks approval of fees totaling $29,770.00 and expenses totaling $359.80 for its services during the Application Period.

35.    Scarfone Hawkins LLP ("Scarfone Hawkins") was retained as Canadian counsel to the Canadian ZAI Claimants.  Scarfone Hawkins seeks approval of fees totaling CDN $29,185.89 and expenses totaling CDN $6,445.48 for its services during the Application Period.

36.    Steptoe & Johnson LLP ("Steptoe") was retained as special tax counsel to the

---

[9]This amount also includes fees of $5,160.65 sought in a Supplemental application for July 2011.

Debtors.  Steptoe seeks approval of fees totaling $5,773.00 and expenses totaling $18.80 for its services during the Application Period.

37.    Stroock & Stroock & Lavan LLP ("Stroock") was retained as counsel to the Official Committee of Unsecured Creditors.  Stroock seeks approval of fees totaling $188,534.00 and expenses totaling $3,532.88 for its services during the Application Period.

38.    Towers Watson was retained as actuarial consultant to David T. Austern, Future Claimants' Representative.  Towers Watson seeks approval of fees totaling $8,675.50 and no expenses for its services during the Application Period.

39.    Woodcock Washburn LLP ("Woodcock Washburn") was retained as special litigation counsel to the Debtors.  Woodcock Washburn seeks approval of fees totaling $3,527.50 and expenses totaling $2,030.00 for its services during the Application Period.

40.    In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Applications in their entirety, including each of the time and expense entries included in the exhibits to the Applications, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2011, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

**DISCUSSION**

41.     We have no issues with or objections to any of the Applications.[10]

**CONCLUSION**

42.     In summary, for the Application Period, we recommend approval of the following fees and expenses for these Applicants:

a.     AKO - $226,658.50 in fees and $426.29 in expenses;

b.     Austern - $3,150.00 in fees;

c.     BHF - $359,307.50 in fees and $7,656.14 in expenses;

d.     Baker Donelson - $57,000.00 in fees and $9.68 in expenses;

e.     Beveridge & Diamond - $49,575.00 in fees and $704.83 in expenses;

f.     Bilzin Sumberg - $22,745.50 in fees ($22,765.50 minus $20.00[11]) and $2,052.77 in expenses;

g.     Blackstone - $375,000.00 in fees and $1,881.26 in expenses;

h.     BMC - $125,136.50 in fees and $6,536.14 in expenses;

i.     Campbell & Levine - $37,207.00 in fees and $4,345.79 in expenses;

j.     Caplin & Drysdale - $77,203.50 in fees and $2,990.56 in expenses;

k.     Capstone - $192,770.50 in fees and $369.08 in expenses;

l.     Casner - $36,336.50 in fees and $30,705.22 in expenses;

---

[10]We sent initial reports to Bilzin Sumberg, Casner & Edwards, Kirkland & Ellis, PwC, and Orrick, and the issues raised therein were resolved to our satisfaction.  *See* Appendices A through E.

[11]This $20.00 reduction is for a time entry in which there was a mathematical error.  Bilzin Sumberg agreed to the reduction.  *See* Appendix A, Paragraph 1.

m.    Charter Oak - $91,455.50 in fees and $251.00 in expenses;

n.    Day Pitney - $3,834.00 in fees;

o.    Deloitte Tax - $43,513.00 in fees and $27.54 in expenses for the Forty-First

Interim Period;

p.    Duane Morris - $16,836.00 in fees and $813.77 in expenses;

q.    Ferry Joseph - $19,075.00 in fees and $560.88 in expenses;

r.    Foley Hoag - $47,463.00 in fees and $244.69 in expenses;

s.    Fragomen - $7,075.00 in fees and $5,642.58 in expenses;

t.    HRA - $700.00 in fees;

u.    Hogan - $34,274.00 in fees and $705.37 in expenses;

v.    Kirkland & Ellis - $847,526.50 in fees and $32,343.05 in expenses;

w.    Kramer Levin - $49,894.00 in fees and $2,308.18 in expenses;

x.    Lauzon Bélanger - CDN $9,137.10 in fees and CDN $1,306.42 in expenses;

y.    Lincoln Partners - $170,000.00 in fees and $988.86 in expenses;

z.    Norton Rose - CDN $14,873.00 in fees and CDN $457.29 in expenses;

aa.    Orrick - $486,275.25 in fees and $7,227.60 in expenses ($7,381.60 minus

$154.00[12]);

bb.    Pachulski - $101,206.50 in fees and $54,179.47 in expenses;

cc.    PG&S - $7,384.00 in fees and $212.76 in expenses;

dd.    PwC - $682,597.42 in fees and $11,036.74 in expenses for the current

---

[12]This $154.00 reduction was made for a train fare which Orrick mistakenly billed at first class rates.  *See* <u>Appendix E</u>, Paragraph 3.d.  Orrick agreed to the reduction.

Application Period, plus $24,039.11 in fees and $94.80 in expenses for the 2010 Darex Puerto Rico

Audit (May--June 2011), $74,967.85 in fees for the Global Restructuring Project (April--July 2011),

and $206,388.60 in fees for the Global Restructuring Project (August--September 2011);

ee. Reed Smith - $32,156.00 in fees and $1,289.01 in expenses;

ff. Alan Rich - $29,120.00 in fees and $20.88 in expenses;

gg. Judge Sanders - $6,840.00 in fees ($6,975.00 minus $135.00)[13];

hh. Saul Ewing - $29,770.00 in fees and $359.80 in expenses;

ii. Scarfone Hawkins - CDN $29,185.89 in fees and CDN $6,445.48 in expenses;

jj. Steptoe & Johnson - $5,521.00 in fees ($5,773.00 minus $252.00[14]) and $18.80 in expenses;

kk. Stroock - $188,534.00 in fees and $3,532.88 in expenses;

ll. Towers Watson - $8,675.50 in fees; and

mm. Woodcock Washburn - $3,527.50 in fees and $2,030.00 in expenses.

---

[13]This $135.00 reduction was made to correct a mathematical error in Judge Sanders' July 2011 monthly fee application. Judge Sanders, through his counsel, Alan Rich, agreed to the reduction.

[14]This $252.00 reduction was made to correct a mathematical error in Steptoe's August 2011 monthly fee application. Steptoe agreed to the reduction.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

Republic Center
325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

        I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 20th day of February, 2012.


_____
Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicants**

Robert Y. Chung
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182

David T. Austern
Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA 22042-0683

Janet S. Baer
Baer Higgins Fruchtman LLC
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

E. Franklin Childress, Jr.
Baker, Donelson, Bearman, Caldwell & Berkowitz,
P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Pamela D. Marks
Beveridge & Diamond, P.C.
201 N. Charles Street, Suite 2210
Baltimore, MD 21201

Scott L. Baena
Jay M. Sakalo
Matthew I. Kramer
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

John James O'Connell III
Managing Director
Blackstone Advisory Services L.P.
345 Park Avenue
New York, NY 10154

Myrtle H. John
BMC Group
600 1st Avenue, Suite 300
Seattle, Washington 98104

Marla R. Eskin
Mark T. Hurford
Kathleen Campbell Davis
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19899

Elihu Inselbuch
Rita Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Edwin N. Ordway, Jr.
Capstone Advisory Group, LLC
Park 80 West
250 Pehle Avenue, Suite 105
Saddle Brook, NJ  07663

Robert A. Murphy
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

James P. Sinclair
Charter Oak Financial Consultants, LLC
430 Center Avenue
Mamaroneck, NY 10543

Anthony J. Marchetta
Day Pitney LLP
One Jefferson Road
Parsippany, NJ  07054

Jared Gordon, Principal
Deloitte Tax LLP
1700 Market Street
Philadelphia, PA 19103

Michael R. Lastowski
Richard W. Riley
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

.

Michael B. Joseph
Theodore J. Tacconelli
Lisa L. Coggins
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 1000
P. O. Box 1351
Wilmington, DE 19899

Adam P. Kahn
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600

Scott E. Bettridge
Fragomen, Del Rey, Bernsen & Loewy LLP
One Alhambra Plaza, Suite 600
Coral Gables, FL 33134

Paul J. Silvern
Hamilton, Rabinovitz & Alschuler, Inc.
P. O. Box 222681
Carmel, CA   93922

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

John Donley
Adam C. Paul
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Philip Bentley
David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10022

Jason Solganick
Lincoln Partners Advisors LLC
360 Madison Avenue, 21st Floor
New York, NY 10017

Teresa J. Walsh
Norton Rose OR LLP
200 Bay Street, Suite 3800
Royal Bank Plaza, South Tower
Toronto, ON   M5J 2Z4

James E. O'Neill
Laura Davis Jones
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

John C. Phillips, Jr.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Kathleen M. Miller
Stephanie S. Habelow
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

Kurt F. Gwynne
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Teresa K. D. Currier
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899

Anne E. Moran
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036

Lewis Kruger
Kenneth Pasquale
Arlene Krieger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Jennifer L. Biggs
Towers Watson
101 S. Hanley Rd.
St. Louis, MO 63105

Gary H. Levin
Woodcock Washburn LLP
Cira Centre – 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

**The Debtors**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

## APPENDIX A

### Bilzin Sumberg

1.      We noted the following time entry in which it appeared there was an overbilling of

0.10 hours, or $20.00:

08/24/11   ACV   0.20     40.00         Review and analyze docket activity review pleadings and
                                        email Jay Sakalo thereon. (.1)

In response to our inquiry, Bilzin stated: "We agree to the fee reduction due to the error in the time

recorded."  We appreciate Bilzin's response and recommend a reduction of $20.00 in fees.

2.      We noted the following hotel charge for which more information was needed:

06/28/11   $884.32    Lodging - VENDOR: JAY M. SAKALO;  INVOICE#:
                      6/29/2011- JMS; DATE 6/29/2011 - Clients-15537

In response to our inquiry, Bilzin provided the following information:

> [T]hat charge related to a hotel room in Philadelphia during the oral argument on the
> appeal of the confirmation order.  Until the day of the hearing, everyone understood
> that this hearing was to be for only one day.  Thus, I was booked on a flight in and
> out the same day.  However, at the commencement of the hearing, Judge Buckwalter
> announced for the first time that the hearing would be on June 28 and June 29.  As
> soon as we learned that, I immediately asked my office to find me accommodations
> in Philadelphia.  Apparently, there were a number of events and conferences taking
> place in Philadelphia that day and there were virtually no rooms available in
> Philadelphia that night, with the only rooms available being one at the Rittenhouse
> and one at the Ritz Carlton.  I informed my assistant to book whichever was
> available and by the time she called back, the Rittenhouse was no longer available
> and only the room at the Ritz Carlton was available.  When this occurred, I
> immediately emailed Mr. Smith to inform him of the issue and have attached that
> email to this response.

> As for the particular charges, the room charge was $759, taxes were $115 and
> internet access was $10.

We note that we consider the Ritz-Carlton in Philadelphia to be a luxury hotel.[15]  However, based

on the circumstances set forth in Bilzin Sumberg's response, we have no objection to this expense.

---

[15]It is rated five stars on the Expedia travel website.

## APPENDIX B

### Casner & Edwards

1.     We noted that attorney ARA billed 5.90 hours on 8/26/11 for an activity described only as "Quality control billing registers." We asked Casner & Edwards to explain the nature of this work and how it benefited the estate, and Casner & Edwards responded:

> The billing registers are WR Grace documents which have been in the Winthrop Square repository for many years and which have been produced to various parties from time to time. They are bound pages of computer printouts. Ms. Anderson is the Casner and Edwards paralegal who is responsible for the production and maintenance of Grace's documents at the repository. Usually, a plaintiff's attorney wants copies of only portions or specific pages of documents that he/she reviewed. Ms. Anderson makes those arrangements with a copy service and when the documents are returned by the copy service, she reviews them and restores the collection of documents to their original condition and sequence. That is what she was doing with Grace's billing registers on 8/26/11.

We accept Casner & Edwards' response and have no objection to these fees.

2.     We noted that Casner & Edwards sought reimbursement for $29,326.01 in rent for the Winthrop Square document repository in Boston. As this has been a recurring expense for several years, we inquired as to the status of the lease and whether termination of the lease was anticipated in the near future. Casner & Edwards responded:

> You ask a few questions concerning rent at Winthrop Square and whether Georgia Pacific was interested in using the repository. Georgia Pacific has no interest in using the repository. That company's attorney spoke to an in-house Grace lawyer about the possibility of reviewing some documents at Winthrop Square in connection with litigation concerning Georgia Pacific. Their question or questions were answered and Georgia Pacific did not subsequently visit Winthrop Square to review documents. The lease for Winthrop Square has been renewed for one year, effective February 1, 2012, at the same rate. That decision was made by WR Grace. This firm has been told by Grace to maintain the repository until Grace emerges from bankruptcy, a Trust is established and Trustees appointed. The Trustees will then decide what happens to the documents in the repository.

We accept Casner & Edwards' response and have no objection to this expense.

# APPENDIX C

## Kirkland & Ellis

1.      We noted the following time entries of professionals who billed only a *de minimis*

amount of time on the case:

| 7/8/2011 | Susan Engel | .20 | Review summary of appellate rules and procedure. |
|---|---|---|---|
| 7/11/2011 | Susan Engel | .80 | Review appellate rules and procedure (.5); review Third Circuit docket for bankruptcy appeal (.3). |
| 7/21/2011 | Susan Engel | .20 | Review draft memorandum re lenders' issue. |
| | | **1.20** | |
| 7/15/2011 | Patrick J King | 1.50 | Correspond with T. Mace re location of documents subject to document subpoena (.6); conduct research to identify documents re same (.9). |
| | | **1.50** | |
| 8/21/2011 | Joshua Kogan | .80 | Review plan and disclosure statement. |
| 8/30/2011 | Joshua Kogan | 1.20 | Confer with A. Paul re closing documents (.6); review exhibits to plan (.6). |
| | | **2.00** | |
| 9/5/2011 | Daniel E Wolf | .50 | Analyze potential corporate transactions. |
| 9/6/2011 | Daniel E Wolf | .70 | Analyze potential corporate transactions. |
| | | **1.20** | |

The foregoing professionals performed no other work on the case during the Application Period.

We scrutinize more closely the work of professionals who appear to have only fleeting involvement

with the case.[16]  We asked K&E to explain how this work benefited the estate, and K&E responded:

> Paragraph 3 of the Initial Report requests further information concerning certain *de minimis* time entries that were included in the Fee Application.  Specifically, Ms. Engel specializes in appellate litigation and assisted the Debtors in their analysis of the appropriateness of certain requests that may be made if there is an appeal of the confirmation order entered in these Chapter 11 Cases to the United States Court of Appeals for the Third Circuit.  Given Ms. Engel's appellate expertise, it was much more efficient for Ms. Engel to analyze this issue.  Mr. King is the associate with the most knowledge regarding the previous criminal case involving the Debtors and, therefore, responded to the Debtors' request for certain documents related to the criminal case.  Again, Mr. King's involvement was much more efficient than involving someone else who works on the Chapter 11 Cases more often given Mr. King's knowledge of the criminal cases.  Mr. Kogan's involvement in the Chapter 11 Cases is related to the finalization of the myriad plan documents that are required in connection with any future effective date of the plan.  Mr. Kogan has been tasked with this responsibility given Mr. Kogan's corporate expertise and it is likely that Mr. Kogan will be more involved in the Chapter 11 Cases as the Debtors move closer to a future effective date.  Finally, Mr. Wolf is an expert in mergers and acquisitions, along with Delaware corporate law generally.  Mr. Wolf assisted the Debtors in analyzing a possible corporate transaction involving Delaware corporate law, and given Mr. Wolf's expertise, it made it much more efficient to involve Mr. Wolf than to engage outside Delaware counsel to assist the Debtors with their analysis of the effect of Delaware law upon the Debtors' possible corporate transaction.

We accept K&E's response and have no objection to these fees.

---

[16]As stated by the court in *In re Jefsaba, Inc.,* 172 B.R. 786, 800 n. 9 (Bankr.E.D.Pa. 1994):

> Requests to compensate for services of professionals whose time is *de minimis* raises a red flag in our review.  Other than professionals with a special expertise, the fleeting involvement of bankruptcy attorneys in a case often results from a staffing inefficiency.  Given the itinerant attorney's lack of knowledge of the case, the attorney's time may be less productive than attorneys regularly assigned to the case.  When this occurs, we would expect an appropriate deduction be made to the time charged.

# APPENDIX D

## PwC

1.      We note for informational purposes that PwC billed the time of Audit Partner, Robert Eydt, at $1,052.83 per hour. Mr. Eydt billed 2.0 hours during the Application Period, for a total of $2,105.66 in fees.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.  PwC offered the following information in support of Mr. Eydt's hourly rate:

> We understand that the Court requires disclosure of hourly rates of $1,000 or more for informational purposes.  However, PwC wanted to provide additional context for the hourly rate of Robert Eydt.  This individual is a PwC partner at the National Office and possesses high levels of technical knowledge, skill and experience. Therefore, the hourly rate exceeds $1,000/hour.

2.      We noted two meetings attended by several PwC professionals.  See Exhibit 1. Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  We asked PwC to explain why it was necessary for each professional to attend these meetings, and PwC's response is attached as Response Exhibit 1.  We accept PwC's response and have no objection to these fees.

## APPENDIX D (Continued)

## Exhibit 1

a.      We noted that on August 16, 2011, MFU ($858) (Tax Partner), MC-D ($918.50) (Tax

Partner), RSG ($748) (Tax Partner), JBU ($434.50) (Tax Director), BV ($654.50) (Tax Director),

TSC ($330) (Tax Manager), and VSDP ($253) (Tax Sr. Associate), attended a meeting.  The total

time spent was 54.80 hours for total fees of $33,343.75.

| | | | | |
|---|---|---|---|---|
| 08/16/11 | MFU | 8.3 | 7,121.40 | Implementation meeting at WR Grace with Client R. Gale, M Dumani, T Chesla, S Diaz B. Vandepitte, J Underhill (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |
| 08/16/11 | MC-D | 8.1 | 7,439.85 | Implementation meeting at WR Grace with Client R. Gale, T. Chesla, S Diaz, M. Urse, B. Vandepitte, J Underhill (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |
| 08/16/11 | RSG | 7.9 | 5,909.20 | Implementation meeting at WR Grace with Client B. Vandepitte, T. Chesla, S Diaz M. Urse, J Underhill, M.Dumani (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |
| 08/16/11 | JBU | 7.5 | 3,258.75 | Implementation meeting at WR Grace with Client R. Gale, M Dumani, T Chesla, S Diaz, B. Vandepitte, M. Urse (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |
| 08/16/11 | BV | 7.9 | 5,170.55 | Implementation meeting at WR Grace with Client R. Gale, T. Chesla, S Diaz, M. Urse, M. Dumani, J Underhill (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |
| 08/16/11 | TSC | 8.1 | 2,673.00 | Implementation meeting at WR Grace with Client R. Gale, M Dumani, M. Urse, B. Vandepitte, J.Underhill, S.Diaz (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |
| 08/16/11 | VSDP | 7 | 1,771.00 | Implementation meeting at WR Grace with client R. Gale, M Dumani, M. Urse, B. Vandepitte, J.Underhill, T.Chesla (All PwC) E. Filon, D Poole, D Libow, (All GRACE) |

b.       We noted that on September 22, 2011, TES ($796.29) (Audit Partner), EG ($436.88), JBU ($410.80) (Tax Director), PK ($257.81) (Audit Sr. Assoc.), ALS[17] ($241.30) (Audit Sr. Assoc.), and KEB ($180.34) (Audit Exper. Assoc.) attended a meeting. The total time spent, including travel time, was 28.70 hours for total fees of $10,607.25.

| | | | | |
|---|---|---|---|---|
| 09/22/11 | TES | 3.5 | 2,787.01 | Planning meeting with PwC team, E. Gonokhin, P. Katsiak, A. Schmidt, K. Bradley (all PwC) |
| 09/21/11 | EG | 3.6 | 1,572.77 | Attending W.R. Grace Account Planning Workshop (A. Schmidt, T. Smith, P. Katsiak, (all PwC), H. La Force, B. Dockman (both Grace). |
| 09/22/11 | JBU | 3.6 | 1,478.88 | Meeting with H.La Force, G.Poling, D. Van Inwegen, B.Dockman (all Grace), D.Sands, D.Newstead, T.Smith, E.Gonokhin, P.Katsiak, A.Schmidt, K.Bradley (all PwC) regarding audit planning for 2011. |
| 09/22/11 | JBU | 2.1 | 862.68 | 50% of travel time from Tampa, FL to Baltimore, MD due to meeting with client at Columbia headquarters |
| 09/22/11 | JBU | 2.2 | 903.76 | 50% of travel time from Baltimore, MD to Tampa, FL due to meeting with client at Columbia headquarters |
| 09/22/11 | PK | 4.5 | 1,160.14 | Attending account planning workshop. Present from Grace: H. LaForce, D. Pate, B. Dockman, from PwC: E. Gonokhin, T. Smith and A. Schmidt |
| 09/21/11 | ALS | 0.5 | 120.65 | Participating in the account planning workshop for Grace with T Smith, P Katsiak, E Gonokhin, J Newstead, D Sands, K Bradley (all PwC) and B Dockman, D Pate, D Van Inugen, H La Force (all Grace) |
| 09/21/11 | ALS | 1.3 | 313.69 | Participating in the account planning workshop for GCP with T Smith, P Katsiak, E Gonokhin, J Newstead, D Sands, K Bradley (all PwC) and B Dockman, D Pate, D Van Inugen (all Grace) |
| 09/21/11 | ALS | 1.2 | 289.56 | Participating in the account planning workshop for Davison with T Smith, P Katsiak, E Gonokhin, J Newstead, D Sands, K Bradley (all PwC) and B |

[17]The time billed by this firm member is dated September 21, 2011, but we believe it was supposed to have been dated September 22, 2011.

|          |     |     |        | Dockman, D Pate, D Van Inugen (all Grace) |
|----------|-----|-----|--------|-------------------------------------------|
| 09/21/11 | KEB | 3   | 541.02 | 50% of travel time - billable |
| 09/21/11 | KEB | 3.2 | 577.09 | Meeting with P.Katsiak, E.Gonokhin, T.Smith, A. Schmidt, J.Newstead, J.Underhill, D.Sands (all PwC), H.LaForce, D.Pate, D.Van Inwegen (all Grace) about WR Grace financial situation and future plans and goals |

**APPENDIX D (Continued)**

**Response Exhibit 1**

August 16, 2011 meeting:

The purpose of the meeting was to discuss the implementation plan and progress of the global tax restructuring project.  As a result, multiple PwC professionals were required to attend in order to provide a point of view in their area of their expertise.  Specifically, we note that M. Urse, M. Dumani, and B. Vandepitte are International Tax Specialists with focus on Europe, Switzerland and Belgium.  R. Gale & T. Chesla are the lead engagement partner and manager for this project.  J. Underhill is a member of the Grace audit team with responsibility for the audit of the income tax accounts and is providing insight to the client on the potential impact of these actions on the global tax provision and year end audit.  Finally, V. Diaz is part of the International Tax Services team who was in the meeting to take notes and manage all follow up and action items that resulted.

September 22, 2011 meeting:

The purpose of the meeting was to discuss the Company's current and planned activities for 2011 and 2012, such as acquisitions, divestments, service center implementation, market conditions, etc.  As a result, multiple PwC professionals were required to attend in order to provide a point of view in the area of their expertise and to assess any impact of these activities on the audit.  This meeting was attended by the core audit team (T. Smith - engagement partner, E. Gonokhin - engagement manager, P. Katsiak - engagement senior associate, A. Schmidt - engagement senior associate and K. Bradley - engagement experienced associate) as well as a PwC specialist (J. Underhill - Tax Director).

## APPENDIX E

### Orrick

1.      We noted that the expense detail was missing from Orrick's Application.  Orrick

supplied its expense detail in response to our request.  See Response Exhibit 2.

2.      We noted the following meal charges for which more information was needed:

| 6/7/2011 | BUSML | $92.96 | VENDOR: Flik Compass Group USA; Invoice #: X1999940911; Date: 6/30/2011 - DC-DC/id# 137773\mkm-period 9 '11 ended June 30, 2011 cust. #F199940000 |
| 8/8/2011 | BUSML | $169.76 | VENDOR: Flik Compass Group USA; Invoice #: X199941111; Date: 8/31/2011 - DC-DC/id#140585\mkm-meals cust no. F199940000 period 11 '11 ended August 31, 2011 |

In response to our request, Orrick provided the following information concerning these charges:

6/7/11 – Lunch Meeting - 7 people at Orrick's Washington, DC office - $92.96

8/8/11 – Lunch Meeting - 12 people at Orrick's Washington, DC office - $169.76

We accept Orrick's response[18] and have no objection to these expenses.

3.      We noted the following travel expenses for which more information was needed:

| 6/28/2011 | LTRV | $306.00 | VENDOR: Felder, Debra; Invoice #: 062911; Date: 7/6/2011 - dc/dd/#136686/myp - oral argument, Phila 6/28/11 |
| 6/28/2011 | LTRV | $236.00 | VENDOR: Wyron, Richard H.; Invoice #:062811; Date: 7/6/2011 - dc/dd/#136686/myp - oral argument, Phila 6/28/11 |
| 6/28/2011 | LTRV | $44.00 | VENDOR: Wyron, Richard H.; Invoice#: 062811; Date: 7/6/2011 - dc/dd/#136686/myp - oral argument, Phila 6/28/11 |

---

[18]During the Application Period, we were utilizing a meal cap of $40 for lunch in Washington, DC.  Neither of the charges exceed that cap.

| 6/29/2011 | LTRV | $426.00 | VENDOR: Wyron, Richard H.; invoice #: 063011; Date: 7/6/2011 - dc/dd/#136686/myp - travel to and from hearing, Phila 6/29/11 |
| 8/4/2011 | LTRV | $33.18 | VENDOR: Wyron, Richard H.; Invoice #: 080811; Date: 8/15/2011 - dc/dd/#138419/myp - mtg w/ ACC, NYC 8/4-5/11 |
| 8/4/2011 | TRV | $357.61 | VENDOR: Wyron, Richard H.; Invoice #: 080811; Date: 8/15/2011 - dc/dd/#138519/myp - mtg w/ ACC, NYC 8/4-5/11 |
| 9/7/2011 | TRV | $137.34 | VENDOR: Wyron, Richard H.; Invoice #: 090811; Date: 9/15/2011 - dc/dd/#139891/myp - mtg w/ FCRs and Trustee NYC 9/7/11 |

In response to our request, Orrick provided the following information:

    a.    6/28/11 – $306.00 - Debra Felder round-trip business[19] class train travel from Washington, DC to Philadelphia, PA to attend oral argument at the Third Circuit;

    b.    6/28/11 – $236.00 - Richard Wyron round-trip business class train travel from Baltimore, MD to Philadelphia, PA to attend oral argument at the Third Circuit;

    c.    6/28/11 – $44.00 - Richard Wyron round-trip car mileage to/from BWI Amtrak Rail Station in connection with travel to attend oral argument;

    d.    6/29/11 – $426.00 – Richard Wyron round-trip train travel from Washington, DC to Philadelphia, PA to attend the second day of oral argument at the Third Circuit.  This travel was billed in error at first class rates.  The business class fare was $136 each way; the add-on for first class was $77 each way.  Orrick will reduce its expense request by $154 ($77 each way) for this expense item;

    e.    8/4/11 - $33.18 – Richard Wyron round-trip car mileage to/from BWI Amtrak Rail Station in connection with travel for a meeting with the ACC on August 5;

    f.    8/4/11 - $357.61 – Richard Wyron hotel charge of $348.61, plus $9.00 in tips, at The London NYC Hotel, New York City - 1 night stay - $299 standard room (plus taxes); and

_____

[19]As you may know, Amtrak has two classes of service on its Acela trains in the Northeast Corridor – "Business" and "First Class."  The references in this letter to business class are to the lower class of service on Amtrak Acela trains.

      g.     9/7/11 - $137.34 – Richard Wyron.  This amount is the portion allocated to the W. R. Grace case for train travel, parking and mileage, incurred in connection with travel to NY for a meeting of FCRs and their counsel.  Travel expenses for this one-day trip were allocated evenly among Grace and four other clients.

We appreciate Orrick's response and, consistent with that response, recommend a reduction of $154.00 in expenses.

      4.     We noted the following air fare for which more information was needed:

| 8/4/2011 | AIR | $334.00 | VENDOR: Wyron, Richard H.; Invoice #: 080811; Date: 8/15/2011 - dc/dd/#138519/myp - mtg w/ ACC, NYC 8/4-5/11 |
|---|---|---|---|

In response to our request, Orrick provided the following information:

      The additional detail requested for air fare travel expenses is set forth below.  This expense was for train travel, but was mis-coded as "air fare" in our accounting system.

      8/4-5/11 - $334.00 – Richard Wyron round trip business class train travel from Baltimore, MD to New York, NY to attend meeting with ACC on August 5.

We accept Orrick's response and have no objection to this expense.