```
                IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE


IN RE:                          .    Chapter 11
                                .
W.R. GRACE & CO.,               .    Case No. 01-01139(JKF)
et al.,                         .    Jointly Administered
                                .
        Debtors.                .    Feb. 27, 2012 (9:01 a.m.)
                                .    (Wilmington)

                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDITH K. FITZGERALD
                 UNITED STATES BANKRUPTCY COURT JUDGE
```

Appearances:

| | |
|---|---|
| For the Debtors: | Kathleen P. Makowski, Esq. |
| | Pachulski, Stang, Ziehl & Jones |
| | Janet S. Baer, Esq. |
| | Roger Higgins, Esq. |
| | Baer, Higgins, Fruchtman, LLP |
| | Adam Paul, Esq. |
| | Kirkland & Ellis |
| | Richard Finke, Esq. |
| | W.R. Grace & Co. |
| For the Creditors Committee: | Michael R. Lastowski, Esq. |
| | Duane Morris |
| | Arlene G. Krieger, Esq. |
| | Stroock & Stroock & Lavan LLP |
| For the Canadian??  | Daniel K. Hogan |
| | The Hogan Firm |
| For Maryland Casualty Company: | Jeffrey Wisler, Esq. |
| | Connolly Bove |
| For the ACC: | Mark T. Hurford, Esq. |
| | Campbell & Levine |
| For the Equity Holders: | David J. Blabey, Jr., Esq. |
| | Kramer, Levin, Neftalis & Frankel |
| For Burlington: | Linda J. Casey, Esq. |
| | Pepper, Hamilton LLP |

| | |
|---|---|
| For the FCR: | Richard H. Wyron, Esq. |
| | Roger Frankel, Esq. |
| | Orrick, Herrington & Sutcliffe LLP |
| | John C. Phillips, Jr., Esq. |
| | Phillips, Goldman & Spence, P.A. |
| | Joseph Radecki, Esq. |
| | Jason Solganick, Esq. |
| | Lincoln International LLC |
| For Interested Parties: | Elizabeth DeCristofaro, Esq. |
| | Shayne Spencer, Esq. |
| | Ford Martin Esposito Witmeyer |
| | Charles Jurgens |
| | Pro Se |
| | David J. Parsons, Esq. |
| | Stutzman, Bromberg, Esserman |
| | Alan B. Rich, Esq. |
| | Law Office of Alan B. Rich |
| | Alexander Sanders, Jr. |
| | Pro Se |
| | Jennifer Whitener, Esq. |
| | Dewey & LeBouef LLP |
| For the Committee of Asbestos Property: | Scott Baena, Esq. |
| | Terrance Edwards, Esq. |
| | Jay Sakalo, Esq. |
| | Bitzin, Sumberg, Baena, Price |
| | Martin Dies, Esq. |
| | Dies & Hile LLP |
| | Alan Runyan, Esq. |
| | Gibson Solomons, Esq. |
| | Daniel Speights, Esq. |
| | Speights & Runyan |
| | Darrel Scott, Esq. |
| | Scott Law Group |
| | Theodore J. Tacconelli, Esq. |
| | Ferry, Joseph & Pearce P.A. |
| | Edward J. Westbrook, Esq. |
| | Richardson Patrick Westbrook |
| | Thomas Brandi, Esq. |
| | The Brandi Law Firm |
| | Elizabeth J. Cabraser, Esq. |
| | Lieff, Cabraser, Heimann & Bernstein |
| | Francine Rabinovitz, Esq. |
| | Hamilton, Rabinovitz & Alshuler |

3

| | |
|---|---|
| For the Committee of Personal Injury Claimants: | Robert M. Horkovich, Esq. Anderson, Kill & Orlick, P.C. Peter Lockwood, Esq. Caplin & Drysdale |

| | |
|---|---|
| <u>Audio Operator</u>: | Michael Miller |
| <u>Transcriber</u>: | Elaine M. Ryan (302) 683-0221 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Case 01-01139-AMC    Doc 28602    Filed 03/01/12    Page 3 of 19

1          THE CLERK: All rise.

2          THE COURT: Good morning, please be seated.  The

3    first matter is W.R. Grace, Bankruptcy No. 01-1139.  I have

4    participants listed by phone: Scott Baena, Janet Baer, David

5    Blabey, Thomas Brandi, Elizabeth Cabraser, Linda Casey,

6    Elizabeth DeCristofaro, Martin Dies, Terence Edwards, Richard

7    Fink, Roger Frankel, Roger Higgins, Robert Horkovich, and

8    Charles Jurgens, Arlene Krieger, Peter Lockwood, David

9    Parsons, Adam Paul, John Phillips, Francine Rabinovitz,

10   Joseph Radecki, Alan Rich, Alan Runyan, Jay Sakalo, Alexander

11   Sanders, Darrell Scott, Jason Solganick, Gibson Solomons,

12   Daniel Speights, Shayne Spencer, Theodore Tacconelli, Edward

13   Westbrook, Jennifer Whitener, and Richard Wyron.

14         MS. BAER (TELEPHONIC): Good morning, Your Honor.

15   It's Janet Baer on behalf of . . . (indiscernible) in the

16   courtroom today . . . to proceed?

17         THE COURT: No, Ms. Baer they are, I'm sorry, I was

18   just having a computer issue so just give me one second,

19   please, and I'll take entries here in court.

20         MS. BAER (TELEPHONIC): Okay.

21         THE COURT: Okay, thank you, good morning.

22         MS. MAKOWSKI: Good moring, Your Honor.  Kathleen

23   Makowski from Pachulski, Stang, Ziehl & Jones on behalf of

24   the debtors.

25         THE COURT: Good morning.

1          MR. HURFORD: Good morning, Your Honor.  Mark
2   Hurford, Campbell & Levine, on behalf of the ACC.
3          THE COURT: Good morning.
4          MR. WISLER: Good morning, Your Honor.  Jeffrey
5   Wisler on behalf of Maryland Casualty Company.
6          MR. HOGAN: Good morning, Your Honor.  Daniel Hogan
7   on behalf of the Canadian . . . (indiscernible) claimants.
8          THE COURT: Okay, now, Ms. Baer, I'm ready for you,
9   thank you.
10         MS. BAER (TELEPHONIC): Thank you, Your Honor.  Your
11  Honor, there's only one matter left on the agenda today which
12  is matter number 5 with respect to N.Y. Hillside, but prior
13  to taking up that matter, I just wanted to give the Court a
14  status on a few things which will be relevant as time goes on
15  in this case.  First of all, I'm sure you're very well aware
16  District Judge . . . (indiscernible) ruled on January 31st of
17  this year . . . Since that time, Garlock Sealing
18  Technologies has filed a motion to alter and amend . . . has
19  filed what I would call a motion to ask the Judge to change a
20  few of his findings which were . . . filed a similar motion .
21  . . filed a motion asking for an extension of time with
22  respect to the . . . appeal . . . and then finally, the bank
23  lenders have in fact filed a notice of appeal . . . we don't
24  know if there will be an appeal.  It becomes somewhat
25  relevant, Your Honor, because of . . . then ask . . . what

1  are outstanding issues they have with respect to the

2  confirmation order and that would, of course, help in the

3  situation in terms of . . . on appeal.  The . . . have . . .

4  with the plan from . . . Those documents, based on agreements

5  that are being documented now.  We hope the final . . . and

6  then we would anticipate filing 9019 motions with the Court's

7  approval of those settlements.  Approval of those settlements

8  will resolve all confirmation objections with both parties

9  and make the record a lot . . .  Your Honor, with that status

10 report, I'd then like to take up the one contested matter on

11 the Court's agenda which is matter number 5, the matter of

12 N.Y. Hillside.

13         THE COURT: All right.

14         MS. BAER (TELEPHONIC): And, Your Honor, I am going

15 to ask that my partner Roger Higgins . . . that contested

16 matter . . . turn the podium over to him for this one.

17         THE COURT: All right, thank you.  Mr. Higgins?

18         MR. HIGGINS (TELEPHONIC): Yes, good morning, Your

19 Honor.  Roger Higgins for the debtors.  The matter is the

20 debtors' objection to claim number 2114 of N.Y. Hillside.

21 Claimant is seeking payment of $25,000 from the debtors.

22 This is an amount that, as we briefed in our objection and

23 supplemental objection, is an amount that -

24         THE COURT: Hello?

25         MR. HIGGINS (TELEPHONIC):  - by a party called

1   Samson Hydrocarbon.

2           THE COURT: I'm sorry, I'm sorry, we're losing you.
3   Just a minute, please.  Do we have a problem with the
4   speaker?  Are you on a speaker phone, Mr. Higgins?

5           MR. HIGGINS (TELEPHONIC): I am not, Your Honor.

6           THE COURT: Okay.  I think we're having a problem
7   here.  Okay, if you could start again with the 25,000 claim
8   is what?

9           MR. HIGGINS (TELEPHONIC): N.Y. Hillside filed a
10  claim for payment of $25,000 for alleged environmental
11  damages to certain properties.  It has been already paid that
12  amount and by filing this claim by a non-debtor third party,
13  and by filing this claim N.Y. Hillside and its principal Mr.
14  Jurgens is seeking payment for a second time.  The history of
15  this claim is a little bit tortured.  In December of 2010,
16  the debtors filed an objection to the claim.  Mr. Jurgens
17  responded to that objection and at the hearing of January 14,
18  the Court entered an order disallowing the claim, not on the
19  merits, on the basis that Mr. Jurgens, a non-lawyer, was
20  attempting to represent the corporation.  The Court did give
21  Mr. Jurgens leave to file a claim transfer.  It took quite a
22  few months, as we set forth in our supplemental objection, it
23  took quite a few months for Mr. Jurgens to comply with the
24  terms of Your Honor's order and with considerable assistance
25  from the debtors, and that led us to the Court entering an

1    order setting the matter for hearing for today.  This is

2    really at its base an issue of Mr. Jurgens attempting to have

3    his cake and to eat it too.  He received his $25,000 on

4    behalf of Grace Petroleum Company and Grace Energy Company in

5    December 2001, an amount paid by Samson Hydrocarbons.  Mr.

6    Jurgens has asserted that since he is entitled to payment not

7    only from Samson Hydrocarbons, which paid on behalf of the

8    debtors and Grace Petroleum Corporation, but also from the

9    debtors themselves, and that simply doesn't comport with the

10   facts which are fairly straightforward.  At issue are certain

11   oil and gas leaks, which have been referred to as the subject

12   properties.  These were once held by a former subsidiary of

13   Grace Energy called Grace Petroleum Corporation, or GPC.  Mr.

14   Jurgens and N.Y. Hillside asserted in litigation that they

15   were owed for certain contamination on those subject

16   properties.  GPC held those subject properties until April 30

17   of 1989 when it assigned them to an entity called Petro

18   Resources.  At no time prior to that period did GPC's then

19   parent, Grace Energy, or its ultimate affiliate, W.R. Grace,

20   or any of the other debtors or non-debtor Grace affiliates

21   hold any interest in those subject properties.  And after the

22   date, April 30th, 1989, GPC did not -

23           THE COURT:  I'm sorry, we've lost you again.  Hello?

24           MR. HIGGINS (TELEPHONIC):  Yes, Your Honor?

25           THE COURT:  I'm sorry, yes, every once in awhile for

1  whatever reason we're just losing the sound.  After -

2          MR. HIGGINS (TELEPHONIC): Okay, let me - Is this

3  better, Your Honor?

4          THE COURT: I don't know.  What happens is you just

5  - your voice just stops talking.  So, I'm not sure what the

6  issue is.  Where I lost you was, after April 30th, no debtor

7  had an interest in the properties and then you said that

8  after April 30 - and those were the last words I got.

9          MR. HIGGINS (TELEPHONIC): Yeah.  Well, on the next

10 critical date to take note of, the December 30th, 1992, when

11 Grace Energy sold the stock of GPC or Grace Petroleum to an

12 entity called Samson Investments.  GPC was subsequently

13 renamed Samson Hydrocarbons.  The sale agreement, the stock

14 sale agreement included an indemnification clause which read

15 in relevant part that the debtors are to indemnify Samson

16 for, quote, "the environmental condition of any oil, gas, in

17 mineral leases and any other properties", end quote.  That

18 indemnification, of course, was only for periods prior to

19 December 30th of 1992 because after that, obviously, neither

20 Grace Energy or Grace owned any of the stock of GPC.  The

21 next relevant period starts in 1999 with Petro Resources,

22 which was the entity that purchased the subject properties

23 from GPC ten years earlier, filed a complaint against N.Y.

24 Hillside.  In April of 2000, N.Y. Hillside filed a cross-

25 complaint against Grace and Grace Energy as well as several

1   other codefendants.  On March 15, 2001, Grace and Grace

2   Energy filed joint responses to certain interrogatories

3   served by N.Y. Hillside.  In relevant part, those responses

4   stated that neither Grace nor Grace Energy had ever owned,

5   operated, used, or held any property interest in the subject

6   properties.  Of course, less than a month later, the Chapter

7   11 cases commenced.  A suggestion of bankruptcy was sent to

8   N.Y. Hillside and then on July 15th, 2001, N.Y. Hillside added

9   Samson Investment as an additional codefendant on the basis

10  that it had purchased GPC's stock.  This litigation was ended

11  in December of 2001 based upon a settlement whereby Samson,

12  Samson Investment and Samson Hydrocarbon paid $25,000 to N.Y.

13  Hillside as compensation for the subject properties, and this

14  payment was in exchange for a release and this release is

15  pretty clear as we set forth in both our objection and our

16  supplemental objection.  Claimant and other Hillside parties

17  fully and forever released and discharged all possible

18  interested parties from any and all claims, judgments,

19  losses, that pertained or referred to the past operations on

20  the subject properties, and that can only refer to operations

21  on the subject properties that occurred prior to April 30th,

22  1989 because after that time, either GPC, Samson Hydrocarbon,

23  Samson Investment, Grace Energy, or Grace itself had anything

24  to do with those subject properties.  GPC and Grace Energy

25  and Grace were explicitly released as part of that release

1   from any and all liability.  So on two bases, therefore,

2   Samson, by paying that $25,000 to N.Y. Hillside took care of

3   any obligation whatsoever that the debtors could have had

4   whether it's Grace Energy, Grace, any other debtor, or GPC

5   itself could have had to Mr. Jurgens and N.Y. Hillside.  But

6   Mr. Jurgens has ignored the settlement agreement's language

7   and also the facts of this matter to somehow assert that

8   Samson paid N.Y. Hillside for some time period other than the

9   one that he is seeking compensation from Grace Energy and

10  Grace for, but in fact, those time periods are exactly the

11  same time periods.  So, therefore, Your Honor, we would ask

12  that the claim 2114 of N.Y. Hillside and Mr. Jurgens be

13  disallowed in its entirety.

14            THE COURT: All right.  Mr. Jurgens?

15            MR. JURGENS (TELEPHONIC): This is Mr. Jurgens.

16            THE COURT: Yes, sir.

17            MR. JURGENS (TELEPHONIC): Good morning, Judge.

18            THE COURT: Good morning.

19            MR. JURGENS (TELEPHONIC): Unfortunately, Mr.

20  Higgins has facts not quite straight.  The claim we had

21  against -

22            THE COURT: Can you turn that up, please.

23            MR. JURGENS (TELEPHONIC):  - W.R. Grace's

24  activities on that property.  They did not sign the release .

25  . . (indiscernible) the agreement, and they were not

1  released.  The fact of the matter is that . . . several
2  companies and each of the other companies paid me the 25,000.
3  It's not as if one payment covers the entire obligation with
4  everybody.  W.R. Grace, of course, was . . . because they
5  operated on the property and recognized that . . . relying on
6  a cleanup really affects every company that had any
7  involvement with the property.  The release, of course, was
8  given to those who signed the agreement.  Now, with respect
9  to trying to charge everybody, that is standard operations in
10 resolving environmental cleanup on properties.  Now, in the
11 objections and my response to the supplemental objections, I
12 point out again that we're not trying to collect . . . we're
13 not trying to collect 25,000 . . . against W.R. Grace because
14 of what they've done on the property.  Now, with respect to
15 the claim that Samson paid for Grace, there's absolute no
16 evidence of that all.  There's nothing in the settlement
17 agreement, at the time of the settlement agreement, all the
18 parties were there, Samson never raised the issue of payment
19 to Grace, and in fact they shouldn't because they had not
20 assumed any obligations of Grace.  Counsel just pointed that
21 out in the purchase agreement they took on no obligations.
22 They . . . coverage there.  So that claim doesn't make any
23 sense.  In addition, I think the document, document number
24 26025 where Samson responds to this issue in their affidavit
25 by Mr. Daniels (phonetical), he points out that Samson

1  participated in the settlement agreement for the purpose of

2  resolving any liability with cancer.  Now the fact that he

3  added later on that . . . covers Grace, that is academic and

4  has nothing to do with Grace's obligation.  This is an

5  obligation that Grace has for their operations on the

6  property and Samson acknowledges they entered into the

7  settlement agreement . . . obligations.  So, that's perfectly

8  clear.  I can't understand counsel's position.  We're not

9  trying to collect . . . from the same parties.  We're talking

10 25,000 from each party, and the fact of the matter is that in

11 the closing agreements and given the releases, no release was

12 given to W.R. Grace.  It was only given to those who paid the

13 25,000 and obviously there were two or three companies that

14 paid the 25,000.  So, we're not trying to collect, you know,

15 twice from the same people . . . And I think that's clear.  I

16 don't understand Mr. Higgins' position on this at all, and

17 I'm sure that he's knowledgeable on cleanup matters that each

18 company that operated on or had any ownership on the property

19 settled those issues . . . in the future and that's what this

20 settlement agreement is about.  The fact that Grace could not

21 participate in it because of their bankruptcy, that doesn't

22 take away their liability.  So, I think it's clear, and I

23 ask the Judge to honor our claim and -

24             THE COURT: Mr. Jurgens?

25             MR. JURGENS (TELEPHONIC): Yes, I'm still here.  I'm

1   looking at something for a minute.

2           THE COURT: Oh, okay.

3           MR. JURGENS (TELEPHONIC): Based on my facts I
4   request the claim for the 25,000 be approved.

5           THE COURT: Okay.  Well, I have the settlement
6   agreement and the settlement agreement is pretty clear that
7   the stock of Grace Petroleum was sold to Samson Investment
8   and it also refers to the fact that Grace Energy and W.R.
9   Grace are both in bankruptcy, but that they have both
10  asserted under oath in the interrogatories that they had no
11  involvement in the subject properties other than through the
12  subsidiary of Grace Petroleum.  The document goes on to say
13  that only one $25,000 payment is necessary.  In paragraph
14  (1.3), it indicates that each of the parties' payments of
15  25,000 are going to be allocated as follows, and then it sets
16  out the allocation schedule.  In paragraph (2.1), which are
17  the releases, it says that Samson as well as their
18  predecessors in interest, successors in interest, partners,
19  subsidiaries, and affiliates, their present and former
20  officers, directors, employees' representatives, agents,
21  attorneys, assigns, nominees, shareholders, and all the
22  Samson-related parties are released from any and all claims
23  and obligations whether known or unknown, any causes of
24  action, anything anticipated or unanticipated, fixed or
25  contingent, which for retainer refer to any of the facts or

1   theories of relief that were or could have been alleged in
2   the cause of the action, and the document is signed on behalf
3   of New York Hillside and individually by you, Mr. Jurgens,
4   and also by Mr. Elrobie (phonetical), who was a partner.  It
5   is clear to me that this document, the settlement agreement,
6   released Grace from all liability, released Grace Petroleum
7   and Grace Energy, and that Samson's payment was in fact on
8   behalf of itself and its predecessors and successors in
9   interest and that the release governs, and there is no
10  additional claim that can be sought from any of the Grace
11  entities as a result.  Therefore, I'm going to sustain the
12  objection to the proof of claim and enter an order that will
13  indicate that the claim is disallowed.
14          MR. JURGENS (TELEPHONIC): Judge, Charles Jurgens.
15  I have to point out W.R. Grace is not a party of the
16  agreement.  They did not sign that agreement and they've
17  never been released.
18          THE COURT: They have been, Mr. Jurgens.  I'm sorry,
19  you're just incorrect.  The settlement agreement indicates
20  that Samson was the successor in interest to these entities
21  and that in fact the payment by Samson was a release for all
22  of these entities including the entities who signed.  This
23  document itself, which is part of the settlement indicates
24  that in fact W.R. Grace had no interest and no operations on
25  this property except through Grace Petroleum which was then

1  sold to Samson Energy, and you signed it, Mr. Jurgens,

2  individually and on behalf of the company.

3             MR. JURGENS (TELEPHONIC): Charles Jurgens, speaking

4  again.  Excuse me, Judge.  Yes, I did sign that, but W.R.

5  Grace did not sign that and I refer to the agreement in the

6  whereas's on page 3, Whereas W.R. Grace Corporation and W.R.

7  Grace are both presently in bankruptcy with a stay barring

8  further involvement in this action.

9             THE COURT: Yes, and the next paragraph - and the

10 next - Mr. Jurgens, I'm sorry.  I'm not going to argue with

11 you.  I've made my ruling.  The next paragraph indicates that

12 Grace Energy Corporation and W.R. Grace have both asserted

13 under oath in response to interrogatories propounded by the

14 Hillside parties that their only involvement as an oil

15 operator on the subject property was through its subsidiary

16 named Grace Petroleum Corporation and the next paragraph

17 says, All of the capital stock of Grace Petroleum was sold to

18 Samson Investment, an unrelated corporation, in 1993 and then

19 explains the name change.  It is clear to me that this

20 document governs all of the litigation and in fact, a

21 paragraph before the one you started reading indicates that

22 Grace Energy and W.R. Grace were part of the defendants in

23 the action.  So the action was and could have been brought

24 against Grace to the extent that a proof of claim could have

25 been filed here and this claim was filed on behalf of New

1   York Hillside.  I disallowed it earlier because of the

2   procedural issue.  I'm disallowing it now on the merits based

3   on the fact that I have seen the settlement agreement.  Ms.

4   Baer, do I have - can somebody submit an order that I can

5   use, please, for the reasons expressed on this record to

6   sustain the objection?

7           MS. BAER (TELEPHONIC): Yes, Your Honor, we will

8   submit an order to Your Honor in the next couple of days.

9           THE COURT: All right, thank you.  Run it by Mr.

10  Jurgens, please.  I believe you have contact information for

11  him; correct?

12          MS. BAER (TELEPHONIC): We do, Your Honor, and we

13  will send a draft to him before we send it to the Court for

14  entry.

15          THE COURT: All right, thank you.  Okay that is, I

16  believe everything in Grace?

17          MS. BAER (TELEPHONIC): Your Honor, just one final

18  note.  I just wanted to note that . . . (indiscernible) this

19  is my last appearance for W.R. Grace.  I will be taking the

20  bench in Chicago on March 5th.  I wanted to thank Your Honor

21  for your time and extreme patience over these last 10-12

22  years in this case.  It's been really an incredible

23  experience and you've been an extraordinary judge.  I hope I

24  can be half the judge that you in fact . . . in this case.  I

25  also want to thank all of the counsel in the case.  It has

1   been sometimes a very, very difficult case, but counsel has

2   always been the utmost of professional.  My adversaries here

3   have become my colleagues and friends, and I wish everybody

4   the best of luck in completing this case.  I will be watching

5   it very closely from Chicago and we just invite anybody to

6   come see us in Chicago at sometime.  We do have a Bankruptcy

7   Court there, and we'd love to see everybody.  And thank you

8   to everybody.

9            THE COURT: Well, I think congratulations are in

10  order for you, Ms. Baer, but I know for certain that my staff

11  is going to miss your good offices.  You've done a fabulous

12  job just keeping all the parties aligned, if nothing else in

13  this case, and certainly everything you've done went far

14  beyond that and Mr. Higgins will have big shoes to fill.  So,

15  congratulations.  I'm glad to know that you'll be a colleague

16  in a different capacity in the future, and I'm sure that this

17  case will continue to be of interest to you as it goes

18  forward.  All right, thank you.

19           MS. BAER (TELEPHONIC): (Indiscernible)

20           (The remainder of this page is intentionally left

21  blank.)

22

23

24

25

1          THE COURT: All right, this case is adjourned, thank
2   you.
3          MS. BAER (TELEPHONIC): Thank you.
4          (Whereupon at 9:25 a.m., the hearing in this matter
5   was concluded for this date.)
6
7
8
9
10
11
12
13
14
15
16
17
18          I, Elaine M. Ryan, approved transcriber for
19   the United States Courts, certify that the foregoing is a
20   correct transcript from the electronic sound recording of the
21   proceedings in the above-entitled matter.
22

/s/ Elaine M. Ryan                          February 29, 2012
Elaine M. Ryan
2801 Faulkland Rd.
Wilmington, DE 19808
(302) 683-0221