## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: April 23, 2012, at 9:00 a.m.** |
| | ) **Objection Deadline: April 6, 2012, at 4:00 p.m.** |
| | ) |

## MOTION FOR AN ORDER AUTHORIZING DEBTORS TO ENTER INTO AN ADMINISTRATIVE SETTLEMENT AGREEMENT AND ORDER ON CONSENT FOR REMOVAL ACTION FOR THE HIGH POINT, NORTH CAROLINA SITE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this motion (this "Motion") requesting the Court enter an order, substantially in the form attached hereto as Exhibit A (the "Order"), authorizing the Debtors to enter into the *Administrative Settlement Agreement and Order on Consent for Removal Action for the High Point, North Carolina Site* (the "AOC"), a copy of which is attached to the Order as Exhibit I, resolving the claims of the United States (the "United States" or the "Claimant") related to the

---

[1]   The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

High Point Site, as the AOC defines that term.  In support of this Motion, the Debtors state the following:[2]

## JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

## BACKGROUND

### A.    Resolving Additional Sites Under the EPA Multi-Site Agreement

3.    Pursuant to the *Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding* (the "Amended Order") Docket no. 936), the Debtors are authorized to settle claims that exceed $1,000,000 only upon a motion of the Debtors for entry of a separate order.

4.    On or about March 23, 2003, the Claimant filed Proofs of Claim Nos. 9634 and 9635 against the Debtor W. R. Grace & Co. and the Debtor Kootenai Development Company. The Proofs of Claim expressly reserved Claimant's right to amend them for any "subsequently discovered liabilities."

5.    On or about June 2, 2008, the Court entered its *Order Authorizing EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental*

---

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the AOC or the *First Amended Joint Plan of Reorganization in Their Chapter 11 Cases* (Docket no. 25881), as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

*Matters* (Docket no. 18847) (the "EPA Multi-Site Agreement Order"). Attached to that order as Exhibit A was the *EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters*, dated May 14, 2008, (the "EPA Multi-Site Agreement").

      **B.**      **The High Point Site**

      6.      The High Point Site located at High Point, North Carolina, comprises approximately 2.65 acres. Available information indicates that Zonolite operated a vermiculite exfoliation plant at the High Point Site as early as 1955. The Debtors operated the facility from 1963 until 1989.

      7.      On November 30 and December 1, 2009, the EPA and the EPA's Superfund Technical Assistance and Response Team contractor conducted aggressive air sampling, activity-based air sampling, and bulk material sampling at the High Point Site. Additional bulk soil sampling was conducted on March 21, 2011. On or about November 29, 2011, the EPA notified the Debtors that the EPA considered the Debtors to be potentially responsible parties with respect to removal activities and response costs at the High Point Site, as well as potentially responsible parties for any and all other claims, liabilities or obligations of the Debtors to the Claimant under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6873. The EPA also notified the Debtors that it considered the High Point Site to be an Additional Site, as that term is defined in the EPA Multi-Site Agreement.

      8.      Since receiving the 29 November 2011 notice, the Debtors and the EPA have cooperated in preparing the AOC. The AOC anticipates that the Debtors will perform such removal actions on the terms specified therein, commencing on the AOC's effective date, which is the date on which the Court enters the Order.

9.      The Debtors and the EPA now desire, without any admission of fact, law or liability, to proceed with a remedy for environmental remediation of the High Point Site and resolve the EPA's claims and demands relating to the High Point Site as described in more detail below.  The AOC specifically resolves: (a) the EPA's claims for the High Point Site as an Additional Site under the Multi-Site Agreement; and (b) the demands for performance of or, alternatively payment of costs associated with, the proposed Work as set forth in the AOC.

10.     In particular, the AOC requires the Debtors perform and manage removal activities at the High Point Site based on parameters defined in the AOC and the EPA's Action Memorandum attached as Appendix A to the AOC.  The AOC and Action Memorandum call for, among other things, excavation and removal of asbestos-containing soils at the High Point Site with disposal offsite at an approved facility.

11.     The EPA estimates its cost to perform the remedial actions at the High Point Site to be approximately $1.7 million.  The Debtors' cost estimate for the same work is estimated to be less than $1 million.

12.     The Debtors have also agreed under the AOC to pay $131,825.66 to the EPA for the EPA's Past Response Costs incurred through January 13, 2012.  Consistent with the Multi-Site Agreement, the Debtors' obligation to pay the EPA's Past Response Costs is in the form of an Allowed General Unsecured Claim, as the Plan defines that term (the "High Point Allowed Past Response Cost Claim").  The Debtors shall pay the High Point Allowed Past Response Cost Claim on the terms and conditions set forth in the AOC, which provides that the claim will be paid within thirty days after the Plan's Effective Date in the same manner as all other Allowed General Unsecured Claims.  Interest shall commence accruing thirty days after the AOC's Effective Date at the rate established by 26 U.S.C. § 9507.

13.    The AOC further provides that the Debtors will pay EPA's Future Response Costs (as the AOC defines that term).  The Debtors shall pay such Future Response Costs as they become due, within thirty days of their having received a bill for such Future Response Costs. To the extent that the Debtors do not timely pay Future Response Costs, interest shall begin accruing thirty days after the date of the bill at the rate established by 26 U.S.C. § 9507, and such interest shall continue to accrue until the date of payment.

14.    In return for the obligations to be assumed by the Debtors under the AOC, the United States will provide the Debtors with a covenant not to sue for matters addressed under the AOC.    Additionally, and also pursuant to the terms of the AOC and the EPA Multi-Site Agreement, once the EPA issues a Notice of Completion of Work and the Debtors pay all Response Costs and other amounts required to be paid under the AOC, the High Point Site removal action will be considered a general unsecured claim that has been liquidated in the amount of $0, and to which the Bankruptcy Code section 1141 discharge will apply (the "High Point Site Claim").

### RELIEF REQUESTED

15.    The Debtors respectfully request the Court enter the Order pursuant to section 105 of the Bankruptcy Code, Fed. R. Bankr. P. 9019 and the Amended Order: (i) authorizing the Debtors to enter into the AOC and perform all their obligations arising thereunder; and (ii) liquidating the High Point Site Claim at $0 on the terms and conditions set forth in the AOC and the EPA Multi-Site Agreement.

### ANALYSIS

16.    Section 105(a) of the Bankruptcy Code provides in pertinent part that "(t)he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Fed. R. Bankr. P. 9019(a) provides in

pertinent part that "(o)n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

17.    Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2, 2006).    Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

18.    Before approving a settlement under Fed. R. Bankr. P. 9019(a), however, a court must determine whether the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate") (internal quotation marks and citations omitted).    To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

19.    The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established.    This standard includes consideration of the following four factors:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

20.     It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)).   Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

## The Court Should Approve the High Point AOC

21.     The Debtors have determined that it is in their best interests and those of their estates to enter into the AOC.  The AOC is fair and reasonable, and is within the reasonable range of litigation possibilities.   In particular, the AOC permits the Debtors to conduct the removal actions at the High Point Site at their own expense, which will permit the Debtors to minimize the costs by conducting the removal actions as efficiently as possible.  The EPA has estimated that it will cost approximately $1.7 million to conduct the AOC's contemplated removal activities.  The Debtors have determined that they can conduct such removal activities at for less than $1 million.

22.     The AOC also effectuates the claim resolution process regarding Additional Sites that was established when this Court approved the EPA Multi-Site Agreement.  This means that, once the EPA has issued its Notice of Completion of Work and the Debtors have paid the EPA any Response Costs due under the AOC, the High Point Site Claim will be liquidated at $0 and will become subject to the Bankruptcy Code section 1141 and Plan discharges.

23.     The AOC concomitantly states that the United States, in consideration for the work to be performed and the payments made by the Debtors under the AOC, will covenant not to sue or to take administrative action against Respondent pursuant to Sections 106 and 107(a) of

CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for the Work and Response Costs. The AOC conditions the covenant not to sue upon the Debtors' complete and satisfactory performance of their obligations under the AOC.

24.     Finally, the AOC benefits and serves the public interest, because it will support Site remediation, as well as reimburse the Claimant for both past and future expenses it has incurred regarding High Point Site remediation.

25.     For the above reasons, the Debtors believe that the AOC represents a reasonable settlement of the High Point Site Claim. The AOC is fair and equitable and in the best interests of the Debtors, their estates, and their creditors. The AOC is also in the public interest. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the AOC. The Court should enter the Order substantially in the form attached hereto as Exhibit A, approving the AOC.

## NO PREVIOUS MOTION

26.     No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

27.     Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel for the United States. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully seek the entry of an order, pursuant to Bankruptcy Code section 105 and Fed. R. Bankr. P. 9019: (i) authorizing the Debtors' entry into the High Point AOC; (ii) authorizing the Debtors to make all payments and incur all costs as set forth in the AOC; (iii) allowing the High Point Allowed Past Response Cost Claim in the amount of $131,825.66; (iv) liquidating the High Point Site Claim at $0 pursuant to the terms of the AOC and the EPA Multi-Site Agreement; and (v) granting such other relief as may be appropriate.

Dated: March 19, 2012

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

BAER HIGGINS FRUCHTMAN LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession