## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:** [_____], 2012, at [__]:00 a.m. |
| | ) | **Objection Deadline:** [_____], 2012, at 4:00 p.m. |
| _____ | ) | |

## MOTION OF W. R. GRACE & CO. FOR ENTRY OF AN ORDER APPROVING (A) THE SETTLEMENT BETWEEN W. R. GRACE & CO. AND THE LIBBY CLAIMANTS, (B) THE TRANSITION OF THE LIBBY MEDICAL PROGRAM, AND (C) THE SETTLEMENT BETWEEN W. R. GRACE & CO. AND BNSF RAILWAY COMPANY

The above-captioned debtors and debtors in possession (collectively, "Grace" or the

"Debtors")[2] hereby move the Court, pursuant to this motion (the "Motion"), for the entry of an

---

[1]       The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

order, substantially in the form attached hereto as **Exhibit A**, approving (a) the settlement by and between Grace, the Asbestos PI Committee, and the Libby Claimants (as defined herein), as memorialized by that certain term sheet (the "Libby Settlement Term Sheet"), attached hereto as **Exhibit B**; (b) the transition of the Libby Medical Program to the LMP Trust (as defined herein); and (c) the settlement agreement by and between Grace and BNSF Railway Company ("BNSF"), attached hereto as **Exhibit C** (the "BNSF Settlement" and together with the Libby Settlement Term Sheet, the "Settlements").

This Motion is part of a comprehensive, global resolution among the Debtors (with the support of the Asbestos PI Committee and the Asbestos PI FCR), the Libby Claimants, BNSF, and certain insurers. Among other things, the global resolution will result in the Libby Claimants and BNSF withdrawing their objections to the Joint Plan and appeals of the Confirmation Order, as well as their appeals of the orders approving the insurance settlements with the CNA Companies ("CNA") and Arrowood Indemnity Company ("Arrowood").

There are four separate settlements which comprise the global deal:

- The settlement among the Debtors, the Asbestos PI Committee, and the Libby Claimants, as outlined in the Libby Settlement Term Sheet, which provides for the consensual transition of the Libby Medical Program to the LMP Trust, and the termination of the Debtors' funding and operational obligations for that program through a single lump-sum payment of $19.5 million (the "Trust Funding Amount"). In addition, the Libby Claimants will withdraw their appeal of the Confirmation Order and their objections to the Joint Plan;

- The settlement between the Debtors and BNSF, which resolves BNSF's current indemnity claims (as more particularly defined in the BNSF Settlement) in consideration of the payment of $8 million by the Asbestos PI Trust to be made following the Effective Date of the Joint Plan. As part of this resolution, BNSF will withdraw its appeals of and

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Joint Plan (as defined herein).

objections to the Joint Plan, the Confirmation Order, and the Debtors' insurance settlements with CNA and Arrowood;

- The settlement among the Libby Claimants, BNSF, and certain of BNSF's insurers (including CNA, Maryland Casualty Company ("MCC"), and Arrowood), which resolves the Libby Claimants' claims against BNSF and those insurers in consideration of a settlement payment to those Libby Claimants who provide releases under the terms of that agreement. As part of this resolution, which is funded in part by CNA, MCC, and Arrowood, the Libby Claimants will withdraw their appeals of and objections to the Joint Plan and the Debtors' insurance settlements with CNA and Arrowood; and

- The settlement among the Libby Claimants and certain of the Debtors' insurers, which resolves certain so-called "insurer wrong-doing" claims.

These agreements resolve myriad claims among the parties, and each is an essential component of the comprehensive global settlement. Only the first two of these settlements, however, involve the Debtors – the Debtors' settlement with the Libby Claimants and the Debtors' settlement with BNSF – and thus only those two settlements memorialized in the Libby Settlement Term Sheet and the BNSF Settlement (copies of which are attached hereto as **Exhibits B** and **C**) are the subjects of this Motion.

In support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.    From 1963 until 1990, Grace operated a mine in Libby, Montana ("Libby") from which it mined vermiculite, which contained a number of impurities, including tremolite asbestos.

5.    As early as 1942, pursuant to various contracts and leases, BNSF loaded vermiculite mined by Grace and its predecessors at the Libby mine into railroad cars and transported it over BNSF's rail network.

6.    Thousands of claims have been brought against Grace and BNSF alleging damages stemming from asbestos-based illnesses caused as a result of the mining and transportation of vermiculite from the Libby mine.  BNSF asserts that it is entitled to indemnity under its contracts with Grace for any asbestos-related personal injury damages it incurs as a result of these claims.

7.    On April 3, 2000, the Debtors voluntarily instituted a self-funded health care program (the "Libby Medical Program") providing coverage for certain asbestos-related illnesses and made it available to qualifying individuals connected with the Libby vermiculite operations.

8.    On April 2, 2001 (the "Petition Date"), in the wake of drastically increasing asbestos-related liabilities, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

9.    On May 3, 2001, the Court entered a preliminary injunction barring the commencement of new actions against certain third parties, including insurers of the Debtors (the "Preliminary Injunction").

4

10.     On April 14, 2008, the Court entered its *Order Expanding the Preliminary Injunction to Include Actions Against Burlington Northern and Santa Fe Railroad* [Docket No. 498, entered in *W. R. Grace v. Chakarian,* et al., Adv. Pro. 01-771 (JFK)] (the "Preliminary Injunction Order").

11.     On February 27, 2009, the Debtors filed their *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace and Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009* [Docket No. 20872] (as modified and amended from time to time, the "Joint Plan").

12.     On May 20, 2009, the Libby Claimants (as defined in the Libby Settlement Term Sheet) filed their *Objections to First Amended Joint Plan of Reorganization* [Docket No. 21811]. On that same date, BNSF filed its *Objection of BNSF Railway Company to Confirmation of the First Amended Chapter 11 Plan of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 3, 2009* [Docket No. 21769].

13.     On June 17, 2009, the Debtors filed their *Debtors' Motion for an Order Approving Settlement Agreement and Mutual Release with the Royal Parties* [Docket No. 22153] (the "Grace-Arrowood Settlement").

14.     On July 10, 2009, the Libby Claimants filed their *Objection to Debtors' Motion to Approve Settlement with Royal Parties* [Docket No. 22397] and on July 13, 2009, BNSF filed its *Objection of BNSF Railway Company to the Motion for an Order Approving Settlement Agreement and Mutual Releases with the Royal Parties* [Docket No. 22411].

5

15.    On August 19, 2009, the Court entered its *Order Pursuant to Sections 105, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Fed. R. Bankr. P. Authorizing and Approving the Debtors Entering into the Settlement Agreement with the Royal Parties and Denying Libby Claimants' Motions to Defer Consideration and Compel Discovery* [Docket No. 22859].

16.    On November 18, 2010, the Debtors filed their *Motion Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure for an Order Approving the Settlement Agreement Between W. R. Grace & Co. and the CNA Companies* [Docket No. 25776] (the "Grace-CNA Settlement").

17.    On December 23, 2010, BNSF filed its *Objection of BNSF Railway Company to Debtors' Motion Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure for an Order Approving the Settlement Between W. R. Grace & Co. and the CNA Companies* [Docket No. 25954]. On that same date the Libby Claimants filed their *Objection to Debtors' Motion to Approve Settlement with the CNA Companies* [Docket No. 25955].

18.    On January 22, 2011, the Court issued its *Order Pursuant to Sections 105, 363, 1107, and 1108 of the Bankruptcy Code and Rules 2002, 6004, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Settlement Agreement Between W. R. Grace & Co. and the CNA Companies* [Docket No. 26106].

19.    On January 31, 2011, the Court issued its *Memorandum Opinion Regarding Objections to Confirmation of First Amended Joint Plan of Reorganization and Recommended Supplemental Findings of Fact and Conclusions of Law* [Docket No. 26154] and *Recommended*

*Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010* [Docket No. 26155].  On February 15, 2011, the Court issued its *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010* [Docket No. 26289] (collectively with Docket Nos. 26154 and 26155, the "Confirmation Order").

20.    The Libby Claimants and BNSF appealed the Confirmation Order to the District Court for the District of Delaware, Case No. 11-199 (lead case), and reasserted their objections to the Joint Plan and the Grace-CNA Settlement.  On January 30, 2012, the District Court issued its *Memorandum Opinion* [Docket No. 165] and *Order* [Docket No. 166] denying or overruling all objections, affirming the Grace-CNA Settlement, and confirming the Joint Plan in its entirety.

21.    During this long and tortuous process, the Debtors have engaged both BNSF and the Libby Claimants in discussions aimed at achieving a consensual resolution to all of the issues underlying these objections and appeals.  Recently, following lengthy formal and informal mediations among the parties, these negotiations culminated in the global settlement arrangement described above.  These settlements will resolve the protracted litigation among the Debtors, BNSF, and the Libby Claimants, as well as certain outstanding disputes between the Libby Claimants and the insurers.  After more than a decade of bankruptcy litigation, the consummation of this significant, global settlement constitutes a major step on the Debtors' path to successful emergence from chapter 11.

### The Libby Medical Program and the Libby Settlement

22.    Beginning in April, 2000, the Debtors voluntarily created the Libby Medical Program in order to provide certain health care benefits for the treatment of asbestos-related conditions to eligible individuals who enrolled in the program.  The program covers former employees of the Debtors who worked in the Debtors' mine operations in Libby, and certain

7

other individuals who reside (or formerly resided) in the area surrounding the mine operations. The Libby Medical Program was instituted by the Debtors prior to, and independent of, the Chapter 11 Cases. As authorized by the Court's "first day" order permitting the Debtors to pay prepetition wages and benefits,[3] the Debtors have continued to operate the Libby Medical Program in the ordinary course during the pendency of the Chapter 11 Cases. During the Debtors' operation of the program there have been complaints by some individuals who claim injury from Grace asbestos — the validity of which the Debtors dispute — that they have not been permitted to participate in the Libby Medical Program.

23.    The cost of funding the Libby Medical Program has increased significantly since the program became effective. The Debtors' estates currently incur more than $2,000,000 annually in health care expenses for the Libby Medical Program. If the program were to be maintained in its current form, there is no reason to believe that the cost of operating the Libby Medical Program will decrease in the near term and the ongoing cost to the Debtors and their estates would be substantial and would continue for the foreseeable future.

24.    The Debtors have determined in their business judgment that continuation of the Libby Medical Program in its current form is not in the best interest of the Debtors or their estates. However, while the Debtors believe they have the right simply to terminate the Libby Medical Program, the Debtors seek the Court's approval to transition the Libby Medical Program

---

[3]    *See Order (a) Authorizing, But Not Requiring, the Debtors to Pay Certain Prepetition (i) Wages, Salaries, Incentive Pay, Bonus Plans and Other Compensation and Amounts Withheld from Such Compensation, (ii) Employee Medical, Pension and Similar Benefits, (iii) Employee Severance Pay, (iv) Workers' Compensation Benefits, (v) Amounts Relating to Retiree Health Benefits and (vi) Reimbursable Employee Expenses, (b) Authorizing & Approving Certain Key Employee Retention Programs on an Interim Basis and (c) Authorizing Applicable Banks and Other Financial Institutions to Receive, Process, Honor and Pay All Checks Presented for Payment and to Honor All Electronic Payment Requests Made by the Debtors Relating to the Foregoing* [Docket No. 20].

K&E 21326472

to a trust created pursuant to the global settlement arrangement (the "LMP Trust"), and to avoid

any potential disputes with respect to termination of or criteria for participation in the program.

All current participants in the Libby Medical Program will be beneficiaries of the LMP Trust, as

will other persons whom the LMP Trustee (as defined herein) determines were exposed to

asbestos from the Libby mine operations and have asbestos-related disease. The LMP Trust will

be established as a trust under Montana law, and will be reviewed and approved by the District

Court of the 19th Judicial District for the State of Montana (the "Montana Court"), which will

retain exclusive jurisdiction over the LMP Trust and will monitor the LMP Trust in the future.[4]

The LMP Trustee will consult with a Trust Advisory Committee elected by the beneficiaries of

the LMP Trust. Thus, the beneficiaries will have a voice in determining key issues concerning

administration of the LMP Trust, including the criteria and amounts for disbursements therefrom.

After the transition, the Debtors will be relieved of any ongoing responsibility for administering

and providing benefits under the Libby Medical Program.

      25.     Once the Libby Medical Program is transitioned to the LMP Trust and upon the

Libby Settlement Effective Date (as defined herein), any person or entity that operated or

administered the Libby Medical Program prior to its transition, including Grace and Health

Network America, Inc., will be relieved of any ongoing responsibility or liability resulting from

the Libby Medical Program. Upon payment of the Trust Funding Amount into the LMP Trust,

Grace shall have no further obligations whatsoever to the Libby Medical Program, and all

persons or entities shall be forever barred from asserting any claim against the Debtors or Health

Network of America, Inc. with respect to any claims that had not accrued as of the Libby

---

[4]   *See* Libby Settlement Term Sheet at paragraphs I.Q and II.F, attached hereto as **Exhibit B**.

Settlement Effective date relating to the Libby Medical Program. Rather, following payment of the Libby Settlement amount into the LMP Trust, participants will look to the LMP Trust for compensation and/or continued benefits.

26.   As the result of the Libby Medical Program being transitioned to the LMP Trust, rather than the program being terminated outright, beneficiaries of the Libby Medical Program will immediately become beneficiaries of the LMP Trust. At the same time, this transition will also allow the Debtors to avoid the potential long-term financial burden of funding the program year after year, by limiting their financial obligations to the single, lump-sum payment of $19.5 million. Based upon their sound business judgment, and in order to avoid any potential claims that might arise from the outright termination of the Libby Medical Program, the Debtors believe that transitioning the Libby Medical Program to the LMP Trust, and eliminating their future financial and operational obligations under the circumstances and conditions set forth in the Libby Settlement Term Sheet, is in the best interest of the Debtors and their estates, as well as the beneficiaries and participants of the Libby Medical Program and the LMP Trust, respectively.

27.   The Libby Settlement Term Sheet also provides for settlement of all appeals filed by the Libby Claimants with regard to the Chapter 11 Cases (the "Libby Appeals") and all pending objections by the Libby Claimants to the Joint Plan (including all documents related to implementation of the Joint Plan), to confirmation of the Joint Plan, to approval of the Grace-CNA Settlement, and to approval of the Grace-Arrowood Settlement (the "Libby Objections").

28.   The Debtors believe in their sound business judgment that the settlement provided for in the Libby Settlement Term Sheet is reasonable, the product of an arms-length negotiation,

10

and, given the complexity and expense of continued litigation, in the best interest of the Debtors and their estates. The Asbestos PI Committee and the Asbestos PI FCR agree with the Debtors and support this settlement.

29.    The essential features of the settlement as outlined in the Libby Settlement Term Sheet are as follows[5]:

- The Libby Claimants shall establish the LMP Trust, of which all current participants in the Libby Medical Program will be beneficiaries, in substitution for any future claims in any way relating to the Libby Medical Program. The LMP Trust will be administered by a trustee (the "LMP Trustee") and shall be authorized and approved by the Montana Court. Upon the Libby Settlement Effective Date, the Debtors shall pay $19.5 million (the "Trust Funding Amount") to the LMP Trust.

- Upon the execution and effectiveness of the Libby Settlement Term Sheet (the "Libby Settlement Effective Date"), the Libby Claimants shall withdraw with prejudice and without costs, all of the Libby Appeals and Libby Objections.

- No disbursement of the Libby Settlement Amount by the LMP Trust (or by the Libby Medical Program during the period of its existence) shall be considered by the Asbestos PI Trust for any purpose whatsoever, including to determine the availability, amount, or timing of any LMP Beneficiary's recovery from the Asbestos PI Trust.

## The BNSF Settlement

30.    Like the Debtors, BNSF has been the target of numerous lawsuits brought by residents of Libby for asbestos-related injuries allegedly caused by BNSF's operations in and around Libby. BNSF in turn has asserted that it is entitled to complete indemnity, including

---

[5]    The description of the terms of the Libby Settlement Term Sheet set forth herein is a summary. To the extent that this summary and the terms of the Libby Settlement Term Sheet are inconsistent, the terms of the Libby Settlement Term Sheet, attached hereto as **Exhibit B**, shall control in all respects. The Libby Settlement Term Sheet provides that it is subject to definitive documentation, but if no definitive documentation is completed, the parties have agreed that this Motion, the Order, and the Libby Settlement Term Sheet shall constitute the definitive documentation; *provided, however,* that the Order shall not constitute definitive documentation unless subsequent modifications, if any, to the form of order attached hereto as **Exhibit A** are in form and substance satisfactory to all parties.

11

reimbursement of all defense costs it has incurred, under the contractual indemnity provisions in its historical agreements with Grace.[6] Although the Joint Plan channels claims such as BNSF's to the Asbestos PI Trust, BNSF has asserted at times that its claims may not be channeled. As a result, BNSF has filed numerous objections and appeals in connection with the Chapter 11 Cases.

31.    In settlement of BNSF's current claims (as more particularly described in the BNSF Settlement) against Grace and the Asbestos PI Trust, including its claims for contractual indemnity, and in exchange for BNSF's release of those claims, the Asbestos PI Trust will pay BNSF the liquidated sum of $8 million, as provided in the BNSF Settlement. The BNSF Settlement also provides for withdrawal of all appeals filed by BNSF with regard to the Chapter 11 Cases, the Grace-CNA Settlement, and the Grace-Arrowood Settlement (the "BNSF Appeals" and, together with the Libby Appeals, the "Appeals"), and all pending objections by BNSF to the Joint Plan (including all documents related to implementation of the Joint Plan), confirmation of the Joint Plan, the Grace-CNA Settlement, the Grace-Arrowood Settlement, and any of the motions or applications filed by the Debtors, Asbestos PI Committee, or the Asbestos PI FCR pending in the Chapter 11 Cases (the "BNSF Objections" and, together with the Libby Objections, the "Objections").

32.    The Debtors believe in their sound business judgment that the BNSF Settlement is reasonable, the product of an arms-length negotiation, and, given the complexity and expense and uncertainty of continued litigation, in the best interest of the Debtors and their estates. The

---

[6]    In addition, and alternatively, BNSF asserts that its claims against Grace and the Asbestos PI Trust are compensable under theories of common law indemnity and contribution.

Asbestos PI Committee and the Asbestos PI FCR agree with the Debtors and support this settlement.

33.     The essential features of the BNSF Settlement are as follows[7]:

- In consideration for the release of BNSF's current claims (as described in the BNSF Settlement) the Asbestos PI Trust shall pay to BNSF, by wire transfer of immediately available funds, the sum of $8,000,000 (the "BNSF Settlement Amount"), not later than thirty days after the last to occur of (a) the Effective Date of the Joint Plan, (b) the Global Settlement Effective Date (as defined in the BNSF Settlement), and (c) the Asbestos PI Trust's receipt of the $250 million payment described in section 1.1.47 of the Joint Plan.

- Upon the Global Settlement Effective date (as defined in the BNSF Settlement), BNSF shall withdraw, with prejudice and without costs, all of the BNSF Appeals and BNSF Objections.

### Relief Requested

34.     By this Motion the Debtors respectfully seek entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019(a), (a) authorizing the Debtors to enter into (i) the Libby Settlement Term Sheet and (ii) the BNSF Settlement, (b) approving the Debtors' transition of the Libby Medical Program, (c) granting the Debtors authority to consummate the transactions contemplated in the Settlements, (d) modifying the Preliminary Injunction if and to the extent necessary, but only to the extent necessary, to permit BNSF to enter into and consummate the global settlement agreements, and (e) granting such other relief as may be appropriate.

---

[7]     The description of the terms of the BNSF Settlement set forth herein is a summary. To the extent that this summary and the terms of the BNSF Settlement are inconsistent, the terms of the BNSF Settlement, attached hereto as **Exhibit C**, shall control in all respects.

K&E 21326472

**Basis for Relief**

A.    **Approval of the Transition of the Libby Medical Program is Warranted Under Section 105(a) of the Bankruptcy Code**

35.    Section 105(a) of the Bankruptcy Code permits the Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Debtors have the right to transition the Libby Medical Program to the LMP Trust and no consents or approvals from any other entity are necessary to effect the transition. However, by approving the Debtors' transition of the Libby Medical Program, the Court will allow the Debtors to avoid any unnecessary litigation that might arise concerning termination of or criteria for participation in the Libby Medical Program, thus preserving value for the Debtors' estates and creditors. Further, transition of the Libby Medical Program to the LMP Trust and termination of the Debtors' obligations thereunder is an essential element of the settlement with the Libby Claimants, as well as the global settlement, and is inextricably intertwined therewith.

B.    **Approval of the Settlements Is Warranted Under Bankruptcy Rule 9019**

36.    Compromises and settlements are "'a normal part of the process of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Pursuant to Bankruptcy Rule 9019, bankruptcy courts should approve a compromise or settlement if it is in the best interests of the debtor's estate. Specifically, Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. The decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *See Will v. Next Proteins, Inc. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644-45

14

(3d Cir. 2006); *Law Debenture Trust Company v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006).

37.    The Third Circuit has enumerated the following four-factor test to determine whether a settlement is fair and reasonable and should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Nutraquest, Inc.*, 434 F.3d at 644 (internal citation omitted); *see also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002). This four-factor test applies to settlements regardless of whether the claims at issue belong to the debtor or are made against the debtor. *In re Nutraquest, Inc.* 434 F.3d at 644-45. No one factor is dispositive. Instead, the Court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). In this case, the proposed Settlements satisfy these factors.

38.    In addition, in exercising its discretion, the Court must make an independent determination that the settlement is fair and equitable and "[t]he extent to which the settlement is truly the product of 'arms-length' bargaining, and not of fraud or collusion." *See In re Exide Techs.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003).

39.    In this case, the Debtors have determined that the Settlements constitute a fair and reasonable compromise. Moreover, the Debtors believe that the Settlements' timely resolution of further litigation (including the Appeals), the certainty provided with respect to potential future indemnification claims and any amounts owed under existing claims, the preservation of beneficiaries' ability to receive compensation and/or benefits from the LMP Trust following the

15

transition from the Libby Medical Program, and the elimination of the Debtors' future obligations with respect to the Libby Medical Program are in the best interest of the Debtors' estates and their creditors.   The benefits of settling the Appeals and Objections are manifest, while further litigation of these issues would be highly complex and fact intensive, necessarily incurring substantial costs for the Debtors' estates.  What is more, pursuing litigation would not likely result in additional benefits to the Debtors or their estates.  However, consummation of the Settlements will resolve ongoing disputes, avoid the ongoing expense and risk of future litigation regarding the Appeals and Objections, and enhance the Debtors' ability to emerge from bankruptcy.

40.     Moreover, the Settlements are the product of arms-length negotiations, proposed in good faith, and without collusion.   Accordingly, the Debtors respectfully submit that the Settlements satisfy the standards for approval pursuant to Bankruptcy Rule 9019.

**C.      Payment of the Settlement Amount is Warranted Under Section 363 of the Bankruptcy Code**

41.     Section 363 of the Bankruptcy Code is the statutory vehicle for considering approval of the Settlements under Bankruptcy Rule 9019. *See In re Martin*, 91 F.3d at 395 n.2. Section 363 provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   It is well established in this jurisdiction that a debtor may dispose of assets outside of a plan of reorganization pursuant to section 363(b) of the Bankruptcy Code if there is a good business reason for doing so. *See, e.g., Martin*, 91 F.3d at 394-95; *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056 (PJW), 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

42.    Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

43.    Here, the Debtors have a clear business justification for entering into the Settlements. The primary purpose of the Settlements is to eliminate the measure of uncertainty and financial expense inherent in what would be complex, protracted litigation. The Settlements allow the Debtors to avoid the cost, risk, and distraction associated with ongoing and future litigation with the Libby Claimants and BNSF concerning the Appeals and Objections, thereby preserving value for the Debtors' estates to the benefit of all stakeholders and expediting the Debtors' emergence from bankruptcy. Further, the settlement with the Libby Claimants will fix the Debtors' obligations to the Libby Medical Program while allowing participants in that program to receive compensation and/or benefits from the LMP Trust. Finally, the BNSF Settlement resolves a potentially large and certainly complex set of claims against the Debtors and the Asbestos PI Trust related to BNSF's alleged contractual indemnification rights and other

claims. The Debtors believe that the Trust Funding Amount and BNSF Settlement Amount, in conjunction with the other elements of consideration provided in the global settlement arrangement, are fair and reasonable consideration for the withdrawal of the Appeals and Objections. Accordingly, the Debtors believe entering into the Settlements is a sound and proper exercise of their business judgment and that the Court should authorize the Debtors to enter into the Settlements and allow the Trust Funding Amount and BNSF Settlement Amount to be paid.

### No Prior Request

44.     No prior motion for the relief requested herein has been made to this or any other court.

### Notice

45.     Notice of this Motion has been given to: (i) the office of the U.S. Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (vii) counsel for the Libby Claimants; (viii) counsel for BNSF; and (ix) the current beneficiaries under the Libby Medical Program. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[Remainder of Page Intentionally Left Blank]*

18

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A,** granting the relief requested herein.


Dated: April 20, 2012
       Wilmington, Delaware

KIRKLAND & ELLIS LLP
Adam Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW FIRM OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*

19