# Exhibit C

## BNSF Settlement

For Execution

## SETTLEMENT AGREEMENT
## BETWEEN BNSF AND THE DEBTORS
### (BNSF Indemnity Claims)

This SETTLEMENT AGREEMENT (this "Agreement") is entered into as of April 20, 2012 (the "Execution Date"), by and among BNSF and the Debtors. Each of BNSF and each of the Debtors are referred to herein as a "Party" and collectively as the "Parties." Capitalized terms used herein are defined in Article I below.

## RECITALS

WHEREAS, on or about April 2, 2001, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, In re W. R. Grace & Co., et al., No. 01-1139 (JKF), and they continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, the Debtors, the Committee, the FCR and the Official Committee of Equity Security Holders appointed in the Bankruptcy Case, as co-proponents, proposed the Plan, which the Bankruptcy Court confirmed by Order entered in the Bankruptcy Case on January 31, 2011 [Docket No. 28445], as clarified by Order entered on February 15, 2011 [Docket No. 26289] (collectively, the "Confirmation Order"); and

WHEREAS, the District Court affirmed the Confirmation Order, affirmed the CNA Settlement Approval Order, and issued the injunctions provided for in the Plan in an Order dated January 30, 2012, and entered on January 31, 2012 [Docket No. 165], in Case No. 11-199 (RLB), et al. (the "District Court Affirmance Order"); and

WHEREAS, BNSF asserted certain Claims against the Debtors, raised certain objections in the Bankruptcy Case to confirmation of the Plan and other matters, and filed and has pursued certain Appeals; and

WHEREAS, the Parties, subject to the terms and conditions of this Agreement, now wish fully and finally to compromise and resolve the disputes among them, in accordance with this Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements and covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

**1.01   Certain Definitions.**  As used in this Agreement, the following terms have the following meanings:

"Affiliate" has the meaning given to such term in the Plan.

"Agreement" has the meaning set forth in the preamble.

*Page 1 of 14*

For Execution

"Appeals" means BNSF's appeals of (i) the Confirmation Order, noticed in the Bankruptcy Court on March 18, 2011 [Docket No. 26590] and docketed in the District Court as Case No. 11-531 (RLB) (consolidated into lead Case No. 11-199 (RLB)), (ii) the CNA Settlement Approval Order, noticed in the Bankruptcy Court on February 1, 2011 [Docket No. 26168] and docketed in the District Court as Case No. 11-207 (RLB), (iii) the Arrowood Settlement Approval Order, noticed in the Bankruptcy Court on August 28, 2009 [Docket No. 23002] and docketed in the District Court as Case No. 09-763 (RLB), and (iv) any further appeals noted or filed by BNSF relating to confirmation of the Plan or approval of the Insurance Settlements, including any appeal of the District Court Affirmance Order, and all proceedings with respect to all such appeals.

"Approval Motion" has the meaning set forth in Section 4.01.

"Approval Order" means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, substantially in the form attached hereto as Exhibit A, with only such modifications as to which the Parties have consented in writing, which order shall, among other things, approve this Agreement and the compromise and settlement memorialized herein, authorize the Debtors and the Trust to perform under this Agreement in accordance with its terms, and modify the Preliminary Injunction, only to the extent necessary, to permit BNSF to execute, deliver and perform its obligations under this Agreement and the Libby/BNSF Settlement.

"Arrowood Settlement Approval Order" means the Order of the Bankruptcy Court entered in the Bankruptcy Case August 19, 2009 [Docket No. 22859], approving the insurance settlement agreement entered into by the Debtors and Arrowood Indemnity Company (as defined therein) on or about June 17, 2009.

"Asbestos Protected Party" has the meaning given to such term in the Plan.

"Bankruptcy Case" means In re W. R. Grace & Co., et al., Case No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-1139, including any appeals of decisions in the Bankruptcy Case.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"BNSF" means each of BNSF Railway Company, The Great Northern Railway Company, Burlington Northern Railroad Company, Burlington Northern, Inc. and The Burlington Northern & Santa Fe Railway Company, and their past, present and future Affiliates, subsidiaries, agents, representatives, insurers, predecessors, successors and assigns, and any Person claiming through or under any of the foregoing.

For Execution

"BNSF Policies" means the following insurance policies:

    i.    The CNA Companies: Policy No. 2483440 (but not including policies with the identical number issued to Grace), Policy No. CCP 3227361 and Policy No. 9060456;

    ii.    Arrowood Indemnity Company: Policy No. RLH578320, Policy No. RLH703154, Policy No. RLH838467, Policy No. RLH021669, and Policy No. RLH141383; and

    iii.    Maryland Casualty Company: Policy No. 50-523812, Policy No. 50-511902, and Policy No. 50-695902.

"Claim" means any claim (whether past, present, or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, direct action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien, and any other assertion of rights or liability of any kind or subject matter whatsoever.

"Committee" means the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

"CNA Settlement Approval Order" means the Order of the Bankruptcy Court entered January 22, 2011 [Docket No. 26106], approving the insurance settlement agreement entered into by the Debtors and the CNA Companies (as defined therein) on or about November 18, 2010.

"Confirmation Order" has the meaning set forth in the Recitals.

"Debtors" has the meaning given to such term in the Plan.

"Demand" has the meaning given to such term in the Plan.

"District Court" means the United States District Court for the District of Delaware.

"District Court Affirmance Order" has the meaning set forth in the Recitals.

"Effective Date" means the Effective Date, as defined in the Plan.

"Execution Date" has the meaning set forth in the preamble.

"Final Order" has the meaning given to such term in the Plan.

"FCR" means David Austern, the Asbestos PI Future Claimants' Representative appointed for each Debtor by order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

For Execution

"Global Settlement Effective Date" means the date on which the later of the following events occurs: (i) the Approval Order becomes a Final Order, and (ii) the conditions set out in Section II.C. (1) through (4) of the Libby/BNSF Settlement have been satisfied or waived.

"Insurance Contributor" has the meaning given to such term in the Plan.

"Insurance Settlements" means the settlement entered into by the Debtors and the CNA Companies as approved by the CNA Settlement Approval Order and the settlement entered into by the Debtors and Arrowood Indemnity Company as approved by the Arrowood Settlement Approval Order.

"Libby/BNSF Claimant" means any person who (i) (x) asserted any asbestos-related Claim against BNSF (or against any of its insurers in its capacity as such) based upon, arising out of or relating to alleged exposure to asbestos or vermiculite, for which BNSF alleges any of the Debtors has any liability (including any Claim based upon loss or impairment of the marital relationship, or loss of support, aid, protection, society and/or consortium of any allegedly exposed person), and (y) resolved such Claim with BNSF by way of settlement, judgment or otherwise on or before the Execution Date, or (ii) is included within the definition of "Released BNSF Claimant" in the Libby/BNSF Settlement.

"Libby/BNSF Settlement" means the settlement agreement dated as of April 20, 2012, among Settlement Counsel, BNSF, CNA, Arrowood and MCC (all as defined in such agreement) in the form approved in writing by the Parties and either (i) prior to the Effective Date, approved by the Committee and the FCR, or (ii) after the Effective Date, approved by the Trust.

"Libby/Grace Settlement" means the settlement set forth in the Term Sheet among W. R. Grace & Co., the Asbestos Claimants' Committee, and the Libby Claimants (as defined therein), executed on or about January 10, 2012, which provides, among other things, for termination of the Libby Medical Program as described therein.

"New Plan" has the meaning set forth in Section 4.03.

"Party" and "Parties" have the meanings set forth in the preamble.

"Person" means any individual, corporation, limited liability company, general partnership, limited partnership, venture, trust, business trust, unincorporated association, estate or other entity.

"Plan" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders As Modified Through December 23, 2010, including all exhibits and schedules thereto, as the same may be amended from time to time.

"Preliminary Injunction" means that certain Order Expanding the Preliminary Injunction to Include Actions Against Burlington Northern and Santa Fe Railroad dated April 11, 2008, and entered on April 14, 2008, in Grace v. Chakarian, et al., Adv. Pro. No. 01-771 (JKF) [Docket No. 498].

For Execution

"Released Claims" has the meaning set forth in Section 3.01(a).

"Released Policies" has the meaning set forth in Section 3.01(b).

"Reorganized Debtors" has the meaning given to such term in the Plan.

"Settlement Payment" has the meaning set forth in Section 2.01.

"TDP" means the Asbestos PI Trust Distribution Procedures, as defined in the Plan.

"Trust" means the Asbestos PI Trust, as defined in the Plan.

**1.02    Construction.**

Whenever the context requires, the gender of all words used in this Agreement includes the masculine, feminine, and neuter. Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular. Unless otherwise specified herein, all references to Articles and Sections refer to articles and sections of this Agreement. Where any provision in this Agreement refers to action to be taken by any Person, or which such Person is prohibited from taking, such provision will be applicable whether such action is taken directly or indirectly by such Person, including actions taken by or on behalf of any Affiliate of such Person. The words "includes" or "including" shall mean "including without limitation."

## ARTICLE II
## TRUST PAYMENT AND OBLIGATIONS

**2.01    Payment by the Trust.**

Not later than thirty days after the last to occur of (i) the Effective Date, (ii) the Global Settlement Effective Date, and (iii) the Trust's receipt of the $250 million payment described in Section 1.1.47(a) of the Plan, the Trust shall pay to BNSF, by wire transfer of immediately available funds, the sum of Eight Million Dollars (US $8,000,000.00) (the "Settlement Payment"). The Settlement Payment shall be made to the account set forth on Exhibit B attached to this Agreement (or to such other account as BNSF instructs in a written notice delivered to the Trust). The Trust shall send written notice to BNSF in accordance with Section 7.09 that the Settlement Payment has been made; such notice shall also be sent to the person(s) listed on Exhibit C attached to this Agreement.

**2.02    Trust Bound.**

Upon the occurrence of the Effective Date, the Trust shall be bound by, and entitled to enforce, this Agreement as if a party hereto, without any further action of any Party, and the Approval Order shall so provide. This Agreement does not trigger the last sentence of the third paragraph of Section 5.6 of the TDP.

For Execution

## ARTICLE III
## RELEASES

**3.01    Releases by BNSF.**

(a)    Effective as of BNSF's receipt of the Settlement Payment, BNSF irrevocably releases, acquits and forever discharges each of the Debtors, the Asbestos Protected Parties (in their capacities as such) and the Trust from any and all present and future Claims, Demands, obligations and liabilities of any nature whatsoever (including any Claim for contractual or common law indemnity or contribution, or for attorneys fees, costs of litigation, defense costs or similar expenses) based upon, arising out of or arising with respect to (i) any Claim of any Libby/BNSF Claimant, or (ii) any other Claim, Demand, obligation or liability resolved or released pursuant to the Libby/BNSF Settlement (collectively, the "Released Claims").  For the avoidance of doubt, BNSF does not purport to release any Claim or Demand, if any, that any Libby/BNSF Claimant may have in his or her own right directly against the Debtors or the Trust.

(b)    Effective as of BNSF's receipt of the Settlement Payment, BNSF forever terminates, waives, releases and otherwise relinquishes: (i) any and all right, title or interest in or to any insurance policy or insurance coverage (including the proceeds thereof) under which any Insurance Contributor is an insured, including the insurance policies identified in Exhibit 5 or Exhibit 6 to the Plan (including the schedules thereto) (collectively, the "Released Policies"); and (ii) all past, present and future claims, demands, and causes of action of any nature whatsoever, including past, present or future claims or demands for defense costs and expenses (including attorneys fees), whether based in contract, tort, statutory or other legal or equitable theories of recovery, whether known or unknown, suspected or claimed, under, related to or based upon any of the Released Policies, against any insurer under a Released Policy (but only with respect to any such Released Policy).  Notwithstanding the foregoing, the term "Released Policies" as used in this Agreement does not include the BNSF Policies.

**3.02    Waiver under State Statutory Laws.**

BNSF knowingly and intentionally waives any protection afforded to it by California Civil Code §1542, or any similar law of any other jurisdiction, which California Civil Code provision provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

BNSF agrees that this Agreement is intended to cover all claims or possible claims arising out of or related to those matters referenced or impliedly covered in the releases set forth in Section 3.01, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of California Civil Code §1542 (or any other similar applicable state or federal statute or common law principle) are hereby expressly waived.  BNSF expressly acknowledges that it has been advised by its counsel of the contents and effect of any such provisions, and with

For Execution

such knowledge it hereby expressly waives whatever benefits it may have pursuant to any such provisions.

**3.03    Representations and Warranties regarding Released Claims.**

BNSF represents and warrants to the other Parties that it is the sole and lawful owner of all right, title and interest in and to every Claim, demand, cause of action, objection and liability that it purports to release in Section 3.01 of this Agreement and that it has not previously assigned or transferred, either by act or operation of law or otherwise, to any Person, any such Claim, demand, cause of action, objection or liability purported to be released by it under Section 3.01 of this Agreement.

**ARTICLE IV**
**BANKRUPTCY-RELATED OBLIGATIONS**

**4.01    Approval Order.**

As soon as practicable after the Execution Date, the Debtors will file a motion (the "Approval Motion") seeking (i) entry of the Approval Order, and (ii) modification of the Preliminary Injunction only to the extent necessary to permit BNSF to execute, deliver and perform its obligations under this Agreement and the Libby/BNSF Settlement. The Parties agree to use their reasonable best efforts to obtain entry of the Approval Order, and to have the Approval Order become a Final Order, as soon as reasonably possible. BNSF, at its own expense, will cooperate with the Debtors in obtaining the Approval Order and having the Approval Order become a Final Order.

**4.02    Withdrawal.**

Upon the Global Settlement Effective Date, BNSF shall withdraw all of the Appeals, and all of its pending objections to the Plan (including all documents related to the implementation of the Plan), to confirmation of the Plan, to approval of the Insurance Settlements or to any of the Debtors', Committee's or FCR's other motions or applications filed in the Bankruptcy Case as of the Execution Date. BNSF further agrees not to object or oppose (or if filed, to withdraw any objection or opposition to) any other motion or application filed by the Debtors, the Committee or the FCR on or after the Execution Date that (i) relates to Claims resolved by virtue of this Agreement, and (ii) does not materially and adversely affect the settlement embodied in this Agreement.

**4.03    No Plan Objections.**

If the Plan is not confirmed, or if for any reason the Debtors, the Committee or the FCR propose a plan of reorganization that is not the Plan, BNSF agrees that it will not object to such new plan so long as such plan (i) provides for treatment of BNSF's Claims and Demands in a manner that is not materially and adversely different than the treatment of BNSF's Claims and Demands under the Plan, and (ii) does not materially and adversely affect the settlement embodied in this Agreement (apart from any delay in achieving confirmation and effectiveness of such plan). A plan of reorganization which satisfies the requirements of subparts (i) and (ii) of this Section 4.03 is referred to herein as a "New Plan." BNSF shall be entitled to file any

objection or opposition to any proposed plan of reorganization which is not the Plan or a New Plan.

**4.04    Reservation of Rights.**

BNSF reserves its rights, notwithstanding any other provision of this Agreement to object and be heard in the Bankruptcy Case in response to any opposition to entry or affirmation of the Approval Order.

**ARTICLE V**
**TERMINATION OF AGREEMENT**

**5.01    Termination.**

Either (i) the Debtors (with the consent of the Committee and the FCR), or after the Effective Date, the Trust or (ii) BNSF may, by written notice in accordance with <u>Section 7.09</u>, terminate this Agreement upon the occurrence of any of the following events:

> (a)    The entry of an order by the Bankruptcy Court denying approval of this Agreement;
>
> (b)    The entry of an order dismissing the Bankruptcy Case prior to the Effective Date of the Plan;
>
> (c)    The entry of an order by the Bankruptcy Court converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;
>
> (d)    The Debtors, the Committee or the FCR propose a plan of reorganization that is not the Plan or a New Plan;
>
> (e)    The Libby/BNSF Settlement is terminated for any reason;
>
> (f)    The Libby/Grace Settlement is terminated for any reason; or
>
> (g)    Any of the "Settlement Payments" as defined in the Libby/BNSF Settlement is reduced for any reason;

<u>provided</u>, <u>however</u>, that, prior to terminating this Agreement pursuant to §5.01(g), the Debtors (with the consent of the Committee and the FCR), or after the Effective Date, the Trust, and BNSF shall negotiate in good faith for a reasonable time to attempt to reach a resolution that does not require termination of this Agreement.

**5.02    Effect of Termination.**

Upon the termination of this Agreement, no Party shall have any further obligation hereunder; *provided however* that termination shall not relieve any Party then in breach of this Agreement from liability in respect of such breach; and *provided further* that this <u>Section 5.02</u>, <u>Section 6.02</u> and <u>Section 7.07</u> shall survive such termination.

For Execution

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES; SETTLEMENT

**6.01    Representations and Warranties of Each Party**.

Each Party hereby represents and warrants to each other Party that:

(a)    such Party has full power and authority to enter into this Agreement and to perform its obligations hereunder (subject to Bankruptcy Court approval as to the Debtors);

(b)    the execution, delivery and performance of this Agreement do not conflict with such Party's organizational documents or any other agreement or arrangement to which such Party is a party or by which it is or its assets are bound or any law, regulation or order to which such Party is subject;

(c)    the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of such Party, and by all other necessary actions of such Party; and

(d)    each individual executing this Agreement has full authority to act for and to bind the Party on whose behalf he or she is signing.

**6.02    Settlement**.

Each Party agrees and acknowledges that this Agreement was negotiated at arm's length and in good faith, and is a fair and reasonable compromise of each Party's disputed claims, and that the Settlement Payment constitutes fair consideration for the release of the Released Claims and the other promises and undertakings in this Agreement.  The agreements and covenants given as consideration in this Agreement, as well as the execution of this Agreement, shall not be construed to be an admission of liability on the part of any Party with respect to the disputed matters set forth above nor shall this Agreement be deemed an admission or concession by any Party of liability, culpability, or wrongdoing.  Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions.  Except as necessary with respect to the Approval Motion, any evidence of the terms of this Agreement or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (i) an action or proceeding to enforce the terms of this Agreement, or (ii) as otherwise directed by any court of competent jurisdiction.

For Execution

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

**7.01    Parties to Bear Own Costs and Attorneys' Fees.**

Each Party will bear its own costs and expenses, including attorneys' fees, incurred by it in the negotiation of this Agreement and the transactions and other agreements contemplated hereby.

**7.02    Entire Agreement.**

This Agreement represents and contains the entire agreement and understanding among the Parties with respect to the subject matter of this Agreement, and supersedes any and all prior oral and written agreements and understandings relating thereto.  No Person other than the Parties, the Committee, the FCR and the Trust shall have any legally enforceable rights or benefits under this Agreement.  The Committee, the FCR, and the Trust are intended third-party beneficiaries of this Agreement.  This Agreement may not be amended or modified, and no provision hereof may be waived, except by a written agreement (i) signed by each Party and (ii)(x) prior to the Effective Date, consented to by the Committee and the FCR, or (y) after the Effective Date, consented to by the Trust.

**7.03    Advice of Counsel.**

Each Party acknowledges and represents that it has sought and obtained the legal advice of its own chosen attorneys and that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by it.

**7.04    Counterparts.**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.

**7.05    Binding Effect.**

This Agreement will be binding on and inure to the benefit of the Parties and their respective Affiliates, heirs, legal representatives, successors and permitted assigns, including, after the Effective Date, the Reorganized Debtors, the Asbestos Protected Parties (in their capacities as such) and the Trust.  This Agreement may not be assigned by any Party (i) prior to the Effective Date, without the prior written consent of the other Party, the Committee and the FCR, or (ii) after the Effective Date, without the prior written consent of the other Party and the Trust.

**7.06    Governing Law.**

This Agreement is governed by and will be construed in accordance with the laws of the State of Delaware, excluding any conflict-of-laws rule or principle (whether under the laws of Delaware or any other jurisdiction) that might refer the governance or the construction of this Agreement to the law of another jurisdiction.

*Page 10 of 14*

For Execution

7.07    **Submission to Jurisdiction.**

(a)    The Parties agree to submit all disputes relating to this Agreement to the Bankruptcy Court.

(b)    If the Bankruptcy Court refuses to exercise jurisdiction over any such dispute, the Parties may submit such dispute to any court of competent jurisdiction and, in such case, the Parties hereby irrevocably submit to the non-exclusive jurisdiction of any county, federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby and each Party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action or proceeding related thereto may be heard and determined in such courts. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

7.08    **Construction.**

This Agreement was negotiated among the Parties hereto at arm's length and in good faith, with each Party receiving advice from independent legal counsel. It is the intent of the Parties that no part of this Agreement be construed against any of the Parties hereto because of the identity of the drafter.

7.09    **Notices.**

All notices, demands, or other communications that any Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, faxed, emailed (as a .pdf attachment), or if mailed by United States first-class mail, postage prepaid, to the Persons, and at the addresses, noted below, or such other address as any such Person may designate in writing from time to time:

If to the Debtors:                          W. R. Grace & Co.
                                            7500 Grace Drive
                                            Columbia, MD  21044
                                            Attn: Mark A. Shelnitz
                                                General Counsel
                                            Telephone:  (410) 531-4000
                                            Facsimile:  (410) 531-4545

*Page 11 of 14*

For Execution

| | |
|---|---|
| With a copy to: | Kirkland & Ellis LLP |
| | 300 North LaSalle |
| | Chicago, IL 60654 |
| | Attn: Adam Paul |
| | Telephone: (312) 861-3120 |
| | Facsimile: (312) 862-2200 |

and

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Attn: Laura Davis Jones/James E. O'Neill
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

If to BNSF:

James Roberts
Robert Attridge
2500 Lou Menk Drive, AOB 3
Fort Worth, TX 76131
Telephone: 817-352-2330
Robert.Attridge@bnsf.com
james.roberts3@bnsf.com

Edward C. Toole, Jr.
Linda J. Casey
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
caseyl@pepperlaw.com
toolee@pepperlaw.com

Robert J. Phillips
Phillips Haffey P.C.
P.O. Box 8569
Missoula, Montana 59807
Telephone: (406) 721-7880
rjphillips@phillipsmontana.com

For Execution

If to the Committee:                            Caplin & Drysdale, Chartered
                                                One Thomas Circle, NW, Suite 1100
                                                Washington, DC  20005
                                                Attn:  Peter Lockwood
                                                Telephone:  (202) 862-5000
                                                Facsimile:  (202) 862-3301

                                                and

                                                Caplin & Drysdale, Chartered
                                                375 Park Avenue, 35th Floor
                                                New York, NY  10152
                                                Attn:  Elihu Inselbuch
                                                Telephone:  (212) 319-7125
                                                Facsimile:  (212) 644-6755

If to the FCR :                                 David T. Austern
                                                3110 Fairview Park Drive
                                                Suite 200
                                                Falls Church, VA 22042-0683
                                                Telephone:  (703) 205-0835
                                                Facsimile:  (703) 205-6249

With a copy to:                                 Orrick, Herrington & Sutcliffe LLP
                                                1152 15th Street, N.W.
                                                Washington, D.C. 20005-1706
                                                Attn:  Roger Frankel
                                                       Richard H. Wyron
                                                Telephone:  (202) 339-8400
                                                Facsimile:  (202) 339-8500

**7.10    Further Assurances.**

        In connection with this Agreement and the transactions contemplated thereby, each Party will execute and deliver any additional documents and instruments and perform any additional acts that may be reasonably necessary or appropriate to effectuate and perform the provisions of this Agreement and such transactions.

**7.11    Consent by the Committee and the FCR.**

        The Committee and the FCR consent to this Agreement, as evidenced by the signatures of their counsel below.

*Page 13 of 14*

For Execution

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement as of the Execution Date.

**THE DEBTORS (conditioned upon the entry of the Approval Order):**

By: _____

Name: _____

Title: _____


**BNSF (as defined in this Agreement):**

By: _____

Name: _____

Title: _____


Consented to:


The Committee (as defined in this Agreement)

By: _____
     Counsel to the Committee


The FCR (as defined in this Agreement)

By: _____
     Counsel to the FCR


*Page 14 of 14*

For Execution

**<u>Exhibit A</u>**

**Form of Approval Order**

For Execution

## **Exhibit B**

**BNSF's Wiring Instructions**

Phillips Haffey  P.C. Trust Account
Routing Number 092901683
Account Number 1400985105

For Execution

## Exhibit C

**Additional Parties to Receive Notice of the Settlement Payment under Section 2.01**

McGarvey, Heberling, Sullivan
& McGarvey, P.C.
745 South Main
Kalispell, MO 59904-5399
Attn: Jon L. Heberling
Telephone: (406) 752-5566
Facsimile: (406) 752-7124
Email:  jheberling@mcgarveylaw.com


Lewis, Slovak, Kovacich & Marr, P.C.
725 Third Avenue North
P.O. Box 2325
Great Falls, MO 59403
Attn:  Tom L. Lewis
Telephone:  (406) 761-5595
Facsimile: (406) 761-5805
Email:  tom@lsklaw.net


Murtha Cullina LLP
99 High Street
Boston, MA  02110
Attn: Daniel C. Cohn
Telephone: (617) 457-4155
Facsimile: (617) 210-7058
Email: dcohn@murthalaw.com