IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date: 6/18/12 at 9:00 a.m.** |
| | ) | **Objection Deadline: 5/25/12 at 4:00 p.m.** |
| | ) | |

------------------------------------------------------x

**FORTY-FIRST INTERIM AND FINAL VERIFIED APPLICATION OF BRYAN CAVE HRO (FORMERLY HOLME ROBERTS & OWEN LLP) FOR (I) FINAL APPROVAL OF INTERIM FEE AND EXPENSE APPLICATIONS FROM APRIL 2, 2001 THROUGH MARCH 31, 2011; (II) FINAL APPROVAL OF INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FROM APRIL 1, 2011 THROUGH APRIL 15, 2012; AND (III) FINAL APPROVAL OF THE DEBTORS' PAYMENT OF ALL ALLOWED FEES AND EXPENSES**

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Pursuant to Sections 327, 330 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Fed.R.Bankr.P. 2016, the Applicant Retention Order (as defined below), the Amended Administrative Order Under 11 U.S.C. §§105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members (the "Amended Interim Compensation Order") [D.I. 1949] and Del.Bankr.LR 2016-2, the law firm of Bryan Cave HRO (formerly Holme Roberts & Owen LLP) ("Applicant"), special environmental counsel for the above-captioned debtors and debtors in possession (collectively, the "Debtors") in their above-captioned Chapter 11 cases (collectively, the "Chapter 11 Cases"), hereby files this Forty-First Interim and Final Verified Application for (a) Final Approval of all Interim Fee Applications filed by Applicant for the period from April 2, 2001 through March 31, 2011; (b) Final Approval of Interim Compensation and Reimbursement of Expenses for the period from April 1, 2011 through April 15, 2012 ; and (c) Approval of the Debtors' payment to Applicant of all allowed fees and expenses.

By this Application, Applicant seeks specifically:  (i) final approval of all amounts previously approved by this Court in Applicant's prior interim fee applications, totaling $9,591,220.94 (comprising allowed fees of $8,713,602.75 plus allowed expenses of $877,618.19); (ii) final approval of compensation in the amount of $33,977.50 and reimbursement of actual and necessary expenses in the amount of $11,285.32,  for a total of $45,262.82, or 100% of all compensation and expense reimbursement requests for the period April 1, 2011 through April 15, 2012 (the "41st Interim Period"), including an estimated amount of $2,792.50 for applicant plus $1,500.00 for local counsel (payable only for the actual amount of services rendered and expenses incurred) for future services of Applicant and local counsel subsequent to April 15, 2012 rendered to file, serve and prosecute this Application; and (iii) for

2

approval of the Debtors' payment to Applicant of all amounts of allowed and unpaid fees and expenses.  In support of this Application, Applicant respectfully represents as follows:

### Jurisdiction

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

### Background

2.    On April 2, 2001 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On the Petition Date, the Court entered an order procedurally consolidating the Chapter 11 Cases for administrative purposes only. Following the Petition Date, and prior to the confirmation of their plan of reorganization, the Debtors continued to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On April 3, 2001, an Application of the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business was filed in the Chapter 11 Cases.  On May 3, 2001, this Court entered an Order granting the Application of the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business (the "OCP Order").  Initially, Applicant was included among the professionals the Debtors sought to employ under the OCP Order.  Upon further review, the Debtors determined that it would be in the best interest of the bankruptcy estates of the Chapter 11 Cases to file a separate application regarding its proposed retention of Applicant.  By this Court's Order dated July 18, 2001, *nunc pro tunc* April 2, 2001 [D.I. 694 and 706[1]], the Debtors were authorized to employ Applicant as special environmental counsel ("Applicant Retention Order").

---

[1] Apparently, the same Order was signed by the Court on different dates, and entered on the docket as different docket entries.

4690580/1

The Applicant Retention Order authorizes the Debtors to pay Applicant at hourly rates charged by Applicant for its professional services as special environmental counsel and to be reimbursed for actual and necessary out-of-pocket expenses that it incurs, subject to application to this Court in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and applicable local rules and orders of this Court.

4.     The Applicant Retention Order authorized the Debtors to employ the firm of Holme Roberts & Owen LLP ("HRO") as special environmental counsel, pursuant to 11 U.S.C. §327(e).  As set forth in that certain Supplemental Disclosure Affidavit of Eric E. Johnson, on Behalf of Bryan Cave HRO (Formerly Holme Roberts & Owen LLP), Regarding Employment as Special Environmental Counsel for the Debtors, Pursuant to 11 U.S.C. § 327(e), filed on March 21, 2012 [D.I. 28695] (the "Supplemental Declaration"), on January 1, 2012, the lawyers of HRO combined (the "Combination") with Bryan Cave LLP ("BCLLP") to form Bryan Cave HRO ("BCHRO") in Colorado.  The non-Colorado offices of former HRO, along with BCLLP's preexisting offices, have conducted business after the Combination under the name of BCLLP.  As of the date of the Combination, HRO no longer engaged in the practice of law, and all of HRO's client relationships were transferred to BCHRO or BCLLP, as applicable.  Only lawyers and paralegals employed by BCHRO in Colorado have provided professional services to the Debtors following the Combination.

5.     Pursuant to the Amended Interim Compensation Order, professionals were to file and serve upon the notice parties a quarterly request for interim Court approval and allowance of the  monthly fee applications filed during the quarter covered by a quarterly fee application.  If the Court grants the relief requested by a professional in its quarterly fee application, the Debtors are authorized and directed to pay the professional 100% of the fees and expenses requested in

the monthly fee applications covered by any given quarterly fee application, less any amounts
previously paid in connection with a monthly fee application.

6.      To date, Applicant has (i) submitted monthly fee applications for the months of
October, November, December, 2001; January, February, March, April, May, June, July, August,
September, October, November, December 2002; January, February, March, April, May, June,
July, August, September, October, November, December, 2003; January, February, March,
April, May, June, July, August, September, October, November, December, 2004; January,
February,  March, April, May, June, July, August, September, October, November, December,
2005; January, February, March, April, June, July, August, September, October, November,
December, 2006; January, February, March, April, May, June, July, August, September,
October, November, December, 2007; January, February, March, April, May, June, July, August,
September, October, November, December, 2008; January, February, March, April, May, June,
July, August, September, October, November and December, 2009; January, February, March,
April, May, June,  (no application was submitted for July, 2010 as no fees or expenses were
billed in that month) August, September, October, November and December, 2010; January,
February, March  and April, 2011; and  (ii) submitted its First interim fee application, covering
the period of April 2, 2001 through September 30, 2001 (application combined for the first two
quarterly periods), its Third interim fee application, covering the period of October 1, 2001
through December 31, 2001, its Fourth interim fee application, covering the period of January 1,
2002 through March 31, 2002, its Fifth interim fee application, covering the period of April 1,
2002 through June 30, 2002, its Sixth interim fee application, covering the period of July 1, 2002
through September 30, 2002,  its Seventh interim fee application, covering the period of October
1, 2002 through December 31, 2002, its  Eighth interim fee application, covering the period of

January 1, 2003 through March 31, 2003, its Ninth interim fee application, covering the period of

April 1, 2003 through June 30, 2003, its Tenth interim fee application, covering the period of

July 1, 2003 through September 30, 2003; its Eleventh interim fee application, covering the

period of October 1, 2003 through December 31, 2003, its Twelfth interim fee application,

covering the period of January 1, 2004 through March 31, 2004, its Thirteenth interim fee

application, covering the period of April 1, 2004 through June 30, 2004; its Fourteenth interim

fee application, covering the period of July 1, 2004 through September 30, 2004; its Fifteenth

interim fee application, covering the period of October 1, 2004 through December 31, 2004; its

Sixteenth interim fee application, covering the period of January 1, 2005 through March 31,

2005; its Seventeenth interim fee application, covering the period of April 1, 2005 through June

30, 2005 and its Eighteenth interim fee application, covering the period of July 1, 2005 to

September 30, 2005;  and its Nineteenth interim fee application, covering the period of October

1, 2005 to December 31, 2005;  its Twentieth interim fee application, covering the period of

January 1, 2006 to March 31, 2006; its Twenty-First interim fee application, covering the period

of April 1, 2006 to June 30, 2006; its Twenty-Second interim fee application, covering the period

of July 1, 2006 to September 30, 2006;  its Twenty-Third interim fee application, covering the

period of October 1, 2006 to December 31, 2006; its Twenty-Fourth interim fee application,

covering the period of January 1, 2007 to March 31, 2007; its Twenty-Fifth interim fee

application, covering the period of April 1, 2007 to June 30, 2007, its Twenty-Sixth interim fee

application, covering the period of July 1, 2007 to September 30, 2007; its Twenty-Seventh

interim fee application, covering the period of October 1, 2007 to December 31, 2007; its

Twenty-Eighth interim fee application, covering the period of January 1, 2008 to March 31,

2008; its Twenty-Ninth interim fee application, covering the period of April 1, 2008 to June 30,

2008; its Thirtieth interim fee application, covering the period of July 1, 2008 to September 30, 2008; its Thirty-First interim fee application, covering the period of October 1, 2008 to December 31, 2008; its Thirty-Second interim fee application, covering the period of January 1, 2009 to March 31, 2009; its Thirty-Third interim fee application, covering the period of April 1, 2009 to June 30, 2009; its Thirty-Fourth interim fee application, covering the period of July 1, 2009 to September 30, 2009; its Thirty-Fifth interim fee application, covering the period of October 1, 2009 to December 31, 2009; its Thirty-Sixth interim fee application covering the period of January 1, 2010 to March 31, 2010; its Thirty-Seventh interim fee application covering the period of April 1, 2010 to June 30, 2010; its Thirty-Eighth interim fee application covering the period of July 1, 2010 to September 30, 2010; its Thirty-Ninth interim fee application covering the period of October 1, 2010 to December 31, 2010 and its Fortieth Interim Fee Application covering the period of January 1, 2011 to March 31, 2011.

7.    According to the prior Orders entered by this Court, Applicant applied for approval of fees and expenses for the period from April 2, 2001 to March 31, 2011 in the amount of $9,656,467.94 (fees of $8,771,119.75  plus expenses of $885,348.19).  This Court has entered Interim Orders approving Applicant's fees and expenses totaling $9,591,220.94 (fees of $8,713,602.75 plus expenses of $877,618.19).  In conjunction with preparing the final accounting for over ten years of payments required by this Application, Applicant discovered that the Debtors, over the period from April 2, 2001 through the date of this Application, have paid Applicant a total of $9,604,760.03, resulting in an apparent inadvertent overpayment by Debtors to Applicant of $13,539.09 relative to amounts previously approved by the Court.  This overpayment will be credited against any amounts awarded to Applicant for the 41st Interim Period, which amounts exceed the apparent overpayment, such that the Debtors will not be

required to pay the credited amount and will be authorized to pay only the net unpaid amount ultimately awarded by the Court.  Annexed as **Exhibit A** is a spreadsheet showing the interim amounts applied for and approved in prior Orders as well as the amounts from April 1, 2011 to April 15, 2012 being applied for in this Application, and the net amount of compensation that Applicant proposes to be paid by the Debtors.

## FINAL APPROVAL OF INTERIM FEE APPLICATIONS

8.      For the period from April 2, 2001 to March 31, 2011 Applicant submitted Interim Fee and Expense Applications which were reviewed by the auditors and then by this Court.  As reflected on Exhibit A, this Court entered prior Orders giving Interim Approval of fees and expenses of Applicant in the total amount of $9,591,220.94 (fees of $8,713,602.75 plus expenses of $877,618.19), finding these fees and expenses to be reasonable and necessary.  Applicant seeks Final approval of all fees and expenses previously approved on an interim basis.

### Reasonable and Necessary Services Rendered by Applicant

9.      Applicant seeks approval of the reasonable fees and expenses incurred during the period April 1, 2011 to April 15, 2012, the "41st Interim Period".

10.      The Applicant's attorneys who rendered professional services during the 41st Interim Period are as follows:

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Eric E. Johnson | Partner/ | Bankruptcy | $450.00 | 10.1 | $4,545.00 |
|  | Counsel |  | $465.00 | 22.9 | $10,648.50 |

8

| Katheryn Coggon | Special Counsel | Environmental | $425.00 | 2.0 | $850.00 |
|---|---|---|---|---|---|
| **TOTAL** | | | | **35.0** | **$16,043.50** |

The paraprofessionals of Applicant who rendered professional services during the Fee Period are as follows:

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Stanley Friedman | Paralegal | Litigation | $165.00 $175.00 | 43.7 16.3 | $7,210.50 $2,852.50 |
| Bill Payne | Prac. Support | Litigation | $190.00 | 17.1 | $3,249.00 |
| Joan L. Sherman | Paralegal | Environmental | $195.00 $200.00 | 11.6 11.8 | $2,262.00 $2,360.00 |
| **TOTAL** | | | | **100.5** | **$17,934.00** |

11.     Applicant has advised and represented the Debtors in connection with certain environmental litigation and environmental matters or proceedings.  These matters, by corresponding matter number, are as follows:

| Matter Number | Description |
|---|---|
| 00000 | General Counsel and Advice |
| 00290 | Fort Peck Indian Reservation - Defense of Administrative Order, in the Tenth Circuit Court of Appeals, concerning alleged groundwater contamination in and around the East Poplar Oil Field within the Fort Peck Indian Reservation |
| 00300 | Defense of *United States of America v. W.R. Grace & Co. - Conn. and Kootenai Development Corporation*, Case No. 01-72-M-DWM,  which concerns remedial activities in and around Libby, Montana |
| 00301 | Libby Access Case - Defense of EPA's demand for access and to add penalties for denial of access to mine site.  *United State of America v. W.R. Grace & Company and Kootenai Development Corporation*, Case No. CV-00-167-M-DWM |
| 00302 | Defense of Cost Recovery case regarding clean up of the Libby, Montana mine and mine site. |
| 00310 | Casmalia Superfund Site - Defense CERCLA liability associated with the former Casmalia Disposal Site in California. |
| 00320 | Kootenai Development- Complete Corporate Transactions |
| 00330 | Defense of Cost Recovery Claims *Samson Investment Company and Samson Hydrocarbons Company v. W.R. Grace & Co. - Conn. and Grace Energy Corporation*, Case No. 01-769, District Court, 95th Judicial District |
| 00340 | NY Hillside Litigation - Defense of Third Part Claims of Superfund Site in Los Angeles.  *United States of America v. W.R. Grace & Co. - Conn. and Kootenai Development Corporation*, Case No. 01-72-M-DWM |
| 00350 | Freedom of Information Act Request - Requests for information to the EPA and other federal agencies concerning certain of W.R. Grace's general state and federal actions. |
| 00370 | Defense of CERCLA § 104(e) requests regarding information concerning the facilities in Libby, Montana as well as current and former expanding plants, along with responses concerning Attic Insulation |
| 00380 | Coloway Coal Bonds - Negotiation and investigation regarding the release of W.R. Grace from reclamation and lease bonds. |
| 00390 | Bankruptcy Matters - Aspects pertaining to the bankruptcy case, including preparation of monthly and quarterly fee applications. |
| 00400 | Boulder Attic - Document production and review relating to the attic insulation litigation |

| 00410 | CBI Project - Confidential Business Information document review |
| 00420 | Ninth Circuit Appeal |
| 00430 | New England States 104(e) Request |
| 00440 | Indictment |
| 00450 | EPA Request for Information re: California Plants |

12.     The rates described in the above list of attorneys and paraprofessionals are Applicant's hourly rates for services of this type.  Attached as **Exhibit B**, and arranged by subject matters, is a detailed summary of the professional time and expenses for each matter, together with a detailed itemization and description of the services that Applicant rendered on each subject matter during this 41st Interim Period.  Based on these rates and the services performed by each individual, the reasonable value of such services is $33,977.50.  The Applicant's attorneys and paraprofessionals expended a total of 135.50 hours for these cases during the 41st Interim Period.  In accordance with the factors enumerated in Section 330 of the Bankruptcy Code, the amount of fees requested is fair and reasonable given:  (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

13.     Further, **Exhibit B** (a) summarizes the time spent by each individual and the value of those services for each month of the 41st Interim Period, (b) summarizes the expenses incurred for each subject matter for each month of the 41st Interim Period, (c) identifies the individuals that rendered services in each subject matter, as defined and described herein, (d) describes each activity or services that each individual performed, and (e) states the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.

4690580/1

The matters addressed in this Application are merely those for which services were rendered during this 41st Interim Period. This is the final application of Applicant for fees and expenses in this matter. Applicant seeks final approval for all fees incurred during the 41st Interim Period, in the amount of $33,977.50.

### Actual and Necessary Expenses

14.     It is Applicant's policy to charge its clients in all areas of practice for identifiable non-overhead expenses incurred in connection with the client's case that would not have been incurred except for the representation of that particular client. It is Applicant's policy to charge its clients only the amount actually incurred by Applicant in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer assisted legal research, photocopying, out-going facsimile transmissions, airfare, meals and lodging. With respect to airfare expenses, all travel by individuals is billed at the coach rate with allowances for class upgrades.

15.     A summary of expenses by type and amount incurred by Applicant on the Debtors' behalf during the 41st Interim Period is attached hereto as **Exhibit C**. All of these disbursements comprise the requested sum for Applicant's out-of-pocket expenses, totaling $11,285.32, for which Applicant seeks final approval. Included in **Exhibit D** are copies of the bills rendered to Applicant that are considered consulting fees or fees for professional services.

16.     In addition Morris James LLP ("Morris"), the local counsel handling review, filing and service of these applications will be reviewing, filing and serving this Application. Morris estimates that its fees and expenses in connection therewith will be $1,500.00, and Applicant estimates an additional $2,792.50 in professional fees required to finalize this Application, respond to requests for information and otherwise to prosecute this Application.

Applicant seeks approval of the total estimated amount of $4,292.50, which amount has been added to Applicant's fees and expenses incurred during the 41st Interim Period, on a final basis (with actual compensation to be paid by Debtors being limited to actual fees and expenses incurred). To the extent that the amount billed may differ slightly from the estimated amount, Applicant will remit any balance overpaid or apply any prior overpayments by the Debtors to any amounts billed and awarded, though unpaid by the Debtors.

17.     Applicant has determined that its fees billed for preparing this Application total approximately $8,246.00 as reflected in the invoices attached as part of **Exhibit B**. The actual amount of time spent far exceeds the amount billed to the Debtors. Applicant, in preparing this Application, went through more than 10 years of billings, payments and approvals in order to be as accurate as possible. To the extent that work was done merely to determine what was paid by the Debtors and what had been billed, many thousands of dollars worth of time were expended by Applicant's professionals which was not billed and for which compensation is not being sought.

## CREDIT FOR DEBTORS' PRIOR OVERPAYMENTS

18.     The total amount of prior Interim approvals for which Final approval is sought is $9,591,220.94. In addition, Applicant seeks final approval of fees and expenses during the 41st Interim Period, totaling $45,262.82, covering the period from April 2, 2011 to April 15, 2012. Thus, Applicant seeks approval for total compensation in the amount of $9,636,483.76 for the full period from April 2, 2001 through April 15, 2012. In preparing this Application, Applicant reviewed all of its payment records and determined that the Debtors had, apparently inadvertently, paid more to Applicant during the past ten years than had been approved by the Court. The debtor has paid Applicant a total of 9,604,760.03, which exceeds the total amount of

fees awarded by the Court in Applicant's earlier Interim Applications by $13,539.09.  Applicant

will credit any such prior overpayments by the Debtors against amounts awarded, but unpaid by

the Debtors, such that Debtors will be authorized to pay Applicant only the total amount awarded

by the Court, net of any prior payments by the Debtors including any overpayments.

### Representations

19.     Applicant believes that the Application is in compliance with the requirements of

Del.Bankr.LR 2016-2.

### Requested Relief

20.     By this Application, Applicant requests: (a) final approval of all interim fees and

expenses previously approved by this Court totaling $9,591,220.94 (fees of $8,713,602.75 plus

expenses of $877,618.19) (b) final approval for interim fees and expenses incurred during the

41st Interim Period in the total amount of $45,262.82, consisting of  $33,977.50 for reasonable

and necessary professional services rendered, and  $11,285.32 for actual and necessary costs and

expenses incurred, from April 1, 2011 to April 15, 2012, which amounts include the estimated

fees totaling $1,500.00 for Morris James LLP for its work as local counsel in connection with the

filing and service of this Application, which amount is being paid as an expense by Applicant,

and $2,792.50 for Applicant's services in prosecuting this Application (limited to actual fees and

expenses incurred); and (c) approval of the Debtors' payment of any amounts awarded to

Applicant in this Application, including a credit for Debtors' earlier overpayment to Applicant,

such that the Debtors shall be authorized and directed to pay Applicant all outstanding and

unpaid amounts of fees and expenses awarded hereunder totaling $31,723.73.

21.     At all relevant times, Applicant has been a disinterested person as that term is

defined in section 101(14) of the Bankruptcy Code and has not represented or held an interest

adverse to the interest of the Debtors in the matter for which Applicant has been employed, as set forth in the Supplemental Declaration.

22.     All services for which compensation is requested by Applicant were performed for or on behalf of the Debtors and not on behalf of any committee, creditor or other person.

23.     Except as set forth below, Applicant has not received payment of its fees or reimbursement of expenses other than as permitted under the Amended Interim Compensation Order and other Orders of this Court.  Applicant received an unsolicited and, Applicant believes, mistaken payment from the Debtors of $4,297.45 for April, 2011 – apparently resulting from the Debtors' misunderstanding as the invoice for that period submitted to the Debtors was marked for informational purposes only.  Applicant's receipt of such payment is subject to this Court's Order on this Application, and Applicant subsequently clarified with the Debtors that its invoices were purely for informational purposes, and Applicant has not received any payment thereafter. That payment is subject to being credited to the Debtors against amounts awarded to Applicant, as set forth above and requested herein.

24.     Pursuant to Fed.R.Bankr.P. 2016(b), Applicant has not shared, nor agreed to share, any compensation it may receive from the Debtors and/or their estates with any other party or person other than partners, counsel, associates, paralegals and employees of Applicant.

25.     This is the Forty-First Interim and the Final Application for compensation for services rendered that Applicant has filed with the Bankruptcy Court in connection with the Chapter 11 Cases.

WHEREFORE, Applicant respectfully requests that this Court enter an Order, substantially in the form attached hereto, for the relief set forth in Paragraph 20 hereof, and for such other and further relief as this Court deems proper.

4690580/1

Dated this **25** day of April, 2012.

BRYAN CAVE HRO

By:

Eric E. Johnson (Colo. Bar No. 019364)
Bryan Cave HRO
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200
E-mail: eric.johnson@bryancave.com