**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et. al.* | : | Case No. 01-1139 (JKF) |
| | : | |
| Debtors | : | (Jointly Administered) |
| | : | **Hearing Date:  September 24, 2012 at 9:00 a.m.** |
| | : | **Objection Deadline:   September 7, 2012 at 4:00 p.m.** |

**FORTY-FOURTH QUARTERLY FEE APPLICATION OF
PRICEWATERHOUSECOOPERS LLP, AUDITORS AND TAX
CONSULTANTS FOR DEBTORS, FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE INTERIM
PERIOD OF JANUARY 1, 2012 THROUGH MARCH 31, 2012**

PricewaterhouseCoopers LLP ("PwC"), auditors and tax consultants for W.R. Grace & Co., and the other above-captioned debtors (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits its *Forty-Fourth Quarterly Fee Application for Allowance of Compensation and Reimbursement of Expenses* (the "Application") incurred during the period of January 1, 2012 through March 31, 2012 (the "Quarterly Period").  In support of this Application, PwC respectfully represents as follows:

**I.     COMPENSATION REQUESTED**

1.     As set forth below, Applicant is requesting a quarterly allowance of fees in the aggregate amount of $848,400.01 (plus $3,538.85 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $24,348.93. This amount represents the fees generated and expenses incurred by PwC during the Forty-Fourth Quarterly Period, as defined in the Court's *Amended Administrative Order Under 11 U.S.C. §§ 105(a) And 331 Establishing Revised Procedures For Quarterly*

*Compensation And Reimbursement Of Expenses For Professionals And Official Committee Members* (the "Amended Quarterly Procedures Order") and for the monthly applications that were not previously included in the quarterly applications.

2.  As explained more fully below, the Debtors filed their *Application of the Debtors for the Entry of an Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors and Debtors in Possession* on January 10, 2002 (the "Original Retention Application").

3.  The Original Retention Application was contested, and it was not until June 18, 2002 that the Court entered its Order Pursuant to 11 U.S.C. §§ 327(a) and Fed. R. Bankr. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP As Auditors and Tax Consultants to the Debtors and Debtors in Possession Nunc Pro Tunc to January 10, 2002 (the "Retention Order").

4.  PwC herein requests allowance of compensation and reimbursement of expenses for the Forty-Fourth Quarterly Period. The amounts billed in connection with this application are

|  | Fees | Expenses |
|---|---|---|
| W. R. Grace Audit Services: | | |
| January 1 – March 31, 2012: | $694,399.70 | $20,265.21 |
| January 1 – March 31, 2012 Fee App: | $3,538.85 | |
| W.R. Grace Global Restructuring Project | | |
| January 1 – March 31, 2012: | $154,000.31 | $4,083.72 |
| January 1 – March 31, 2012 Fee App: | n/a | |

A table showing the names of all professionals and paraprofessionals who rendered services during the period covered by the applications, together with the billing rates of such persons and the number of hours charged by such persons, is set forth on the cover sheet to these Applications.

II.     **INTRODUCTION AND PROCEDURAL BACKGROUND**

5.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties and assets as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On January 10, 2002, the Debtors filed the Original Retention Application, seeking to retain PwC as their independent accountants and auditors.  The United States Trustee filed its Amended Objection to the Debtors' Application for Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors (the "Objection to the Original Retention Application") on January 31, 2002.

7.      On April 15, 2002, the Debtors filed the Amended Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§327(a) and 328 and the Fed. R. Bank. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Auditors and Tax Consultants to the Debtors and Debtors in Possession Nunc Pro Tunc to November 11, 2001 (the "Amended Retention Application").  The United States Trustee filed his Objection to the Amended Application for Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as

Auditors and Tax Consultants Nunc Pro Tunc to November 11, 2001 (the "Objection to the Amended Retention Application") on May 3, 2002.

8.  On June 8, 2002, the Court entered the Retention Order.

Relief Requested.

9.  By this Application, PwC respectfully requests the entry of an Order, substantially in the form attached as Exhibit "A," allowing on a quarterly basis $848,400.01 (plus $3,538.85 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $24,348.93 for the Quarterly Period.

10.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these proceedings and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

11.  All of the services for which compensation is sought were rendered by Applicant to the Debtors solely in connection with this case and in furtherance of the duties and responsibilities of the Debtors and not on behalf of any creditor or other person.

12.  Applicant's hourly rates for its auditors and other professionals charged in connection with Applicant's services for the Debtors were the rates Applicant customarily charged its clients (whether corporate or individual) in both bankruptcy and non-bankruptcy matters at the time the services were rendered.  In July 2004, Applicant changed its time and expense management system and revised its standard billing rates.

These new rates, effective with the filing of PwC's previous monthly application for July 2005, have been discussed with, and agreed to, by management of the Debtor, and have not dramatically impacted the overall fees charged to the Debtor as compared to previous fee applications.

13. By order dated April 17, 2002 (the "Amended Administrative Order"), the Court has adopted procedures (the "Procedures") for all applications for Quarterly compensation and reimbursement of expenses in this bankruptcy proceeding. In accordance with the Procedures, Applicant has submitted a cumulative summary of fees by project category and a cumulative summary of expenses by category.

14. Applicant is not seeking reimbursement for internal charges, including costs associated with airline ticketing and general office services such as computer usage, telephone charges, facsimile transmissions, postage, and photocopying.

15. No payments have been promised to Applicant for services rendered or to be rendered in any capacity in connection with the Debtors' Chapter 11 cases. No agreement exists between Applicant and any other person or entity to share any compensation in connection with the Debtors' Chapter 11 cases.

16. Pursuant to the Amended Administrative Order, PwC served copies of this Application upon (a) David B. Siegel, W.R. Grace & Co.; (b) co-counsel for the Debtors; (c) co-counsel to the debtor-in-possession lender; (d) counsel to the Committees, including counsel for the Official Committee of Unsecured Creditors; counsel to the Official Committee of Asbestos Property Damage Claimants; counsel to the Official Committee of Personal Injury Claimants; and the Official Committee of Equity Holders; (e) the Fee Auditor; and (f) the United States Trustee.

## III.   SERVICES RENDERED DURING THE QUARTERLY PERIODS

17.   The nature of the work performed by PwC during the Quarterly Period included the following.

   a. Performed audit work for the annual financial statement audit, including detailed audit procedures performed over the WR Grace Balance Sheet and Income Statement, such as cash confirmations, accounts receivable confirmations, detailed testing of revenue, property, plant, and equipment, accounts payable, other accruals, other assets, and incentive compensation accruals. This work also included testing of management's estimates regarding legal and environmental reserves, assessment of management's goodwill impairment analysis, finalization of testing over the De Neef acquisition, tie out of the fourth quarter of 2011 earnings press release and the Form 10-K, journal entry testing performed to assess fraud risk and review of management's equity rollforward, among other procedures (performed over the course of two months).
   b. Audit work performed by the PwC tax team to obtain comfort over the effective tax rate, income tax provision, and income taxes payable included in the WR Grace 2011 financial statements. This work included testing related to transfer pricing adjustments, uncertain tax positions, review of support for management's indefinite reinvestment assertion, review of the realizability of deferred tax assets, and detailed testing of deferred tax assets and liabilities (performed over the course of two months).
   c. Update and completion audit procedures performed by the PwC Risk Assurance team to finalize work performed over the WR Grace information technology systems and reports, including audit procedures related to Information Technology General Controls, automated controls, and key reports (performed over the course of two months).
   d. Audit work performed by PwC specialists to gain comfort over the following: assumptions used in pension estimates, valuation of foreign exchange hedges, valuation of De Neef, valuation of the fair value of WR Grace used in the goodwill impairment analysis, review of the environmental liability accrued for the former expansion plants, and review of self-insurance accruals.
   e. Preparation for and attendance at the audit committee meetings in January 2012 and February 2012.
   f. Update and completion audit procedures performed to finalize our audit work over internal controls required under section 404 of the Sarbanes-Oxley Act. This work included update procedures to ensure operation of controls through the balance sheet date, meetings with management and internal audit to analyze and assess control deficiencies identified, documentation of direct entity level controls, final completion and review

of documentation of the testing and of the summary of aggregated deficiencies (performed over the course of two months).

g. Performed audit work for the annual financial statement audit, including preparation of the 2012 engagement letter, review and updates to the 2012 international component team instructions, meetings with members of management and finance to discuss entity level controls and review of monthly sales numbers, meetings with Grace Internal Audit to discuss plan for 2012 audits and Sarbanes-Oxley procedures, and coordination with statutory audit teams regarding 2011 audits and approval for procedures to be performed in 2012.

h. Planning procedures performed in regards to the Q1 2012 interim review, which included preparation of a client request list, preparation of Q1 2012 analytics in order to reflect Grace's new reporting segments, and meetings with management regarding Q1 2012 events and business activities.

i. Audit procedures performed with respect to the 8-Ks filed in April 2012 discussing the Grace business segment realignment and disclosure of the new liquidity measure of adjusted free cash flow. Procedures performed included tie out of restated segment information, and adjusted free cash flow calculation, and discussions with management regarding the business realignment and 8-K information.

j. Preparation of outline and draft opinion addressing the U.S. federal income tax considerations of the acquisition of the DeNeef group and of the reorganization of WR Grace's operations in Europe. This also included the preparation of a draft representation letter that will be signed and provided by WR Grace.

k. Participation and coordination of weekly project status meetings with WR Grace.

l. Preparation of templates and review of various forms in connection with FIRPTA filling and Treas. Reg. section 301.7701-3 ("check- the box") elections for various WR Grace entities.

m. Assisted in the analysis and discussions in connection with the integration of the Grace Sweden and DeNeef Sweden operations, the conversion of DeNeef Belgium and the conversion of DeNeef SwissCo.

n. PwC Luxembourg tax comments of the envisaged acquisition by Grace Luxembourg S.à r.l. of an Abu Dhabi entity, assistance with the assessment of the Luxembourg net wealth tax and review of various documents including the review of legal documentation related to the sale of Grace Belgium to LuxCo.

o. Preparation of an updated IGS structuring workplan and review by PwC Luxembourg, Italy and Belgium of updated steps.

18. <u>Retention and Fee Matters</u>.    Applicant also seeks compensation and reimbursement of expenses for the preparation of these Applications.

## IV. ALLOWANCE OF COMPENSATION

19. Under the Bankruptcy Code, professionals performing services in a bankruptcy case are entitled to "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1)(A).

20. In determining if the amount of compensation is "reasonable", the courts consider the "nature, the extent, and the value" of the services rendered, taking into account the following factors: the time spent on the services; the rates charged for the services; whether the services were necessary or beneficial to the administration of the case; whether the services were performed in a reasonable amount of time commensurate with the complexity, importance, and nature of the services; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under Chapter 11. 11 U.S.C. § 330(a)(3)(A). As described throughout these Applications, PwC has satisfied the relevant criteria to support the requested award of compensation.

21. In general, the "baseline rule is for firms to receive their customary rates." Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 259 (3d Cir. 1995). The compensation sought herein is based on PwC's customary rates, which are in line with the customary rates charged by comparably skilled practitioners in cases other than cases under Chapter 11.

22. Applicant's services have been rendered in an efficient manner by accountants and auditors who are experts in their fields. PwC is one of the largest and most well-respected audit firms in the country, and its rates are commensurate with its level of expertise.

23. The time and effort dedicated to the preparation of a fee application is also an actual and necessary service compensable under the Bankruptcy Code. See, e.g., In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002); Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 272 B.R. 830 (Bankr. D. Vt. 2002); In re Gillett Holdings, Inc., 137 B.R. 475 (Bankr. D. Colo. 1992); In re Kreidle, 85 B.R. 573 (Bankr. D. Colo. 1988). Applicant, therefore, requests compensation for the time and effort it dedicated to the preparation of these Applications.

24. No prior application for the relief requested herein as been made.

**WHEREFORE**, PwC respectfully requests Quarterly allowance of compensation in the amount $848,400.01 (plus $3,538.85 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $24,348.93, together with such other and further relief as this Court deems just and proper.

Dated: May 8, 2012                              SMITH KATZENSTEIN & JENKINS LLP

/s/ Kathleen M. Miller
Kathleen Miller (I.D. No.2898)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Telecopy: 302-652-8405
Email: kmiller@skfdelaware.com

Attorneys for PricewaterhouseCoopers LLP