## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.,** *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S COMBINED FINAL REPORT REGARDING THOSE FEE APPLICATIONS WITH *DE MINIMIS* OR NO FEE OR EXPENSE ISSUES FOR THE FORTY-THIRD INTERIM PERIOD

This is the combined final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding all the Interim Fee Applications of those firms for which we have *de minimis*[1] or no fee or expense issues for the Forty-Third Interim Period (collectively referred to hereafter as the "Applications").[2]

### BACKGROUND

1.      Anderson Kill & Olick, P.C. ("Anderson Kill & Olick"), was retained as special insurance counsel to the Official Committee of Asbestos Personal Injury Claimants. Anderson Kill & Olick seeks approval of fees totaling $233,851.00 and expenses totaling $6,479.80 for its services during the Application Period.

2.      David T. Austern ("Austern") was retained as the Legal Representative for Asbestos

---

[1]For purposes of this report, applications with *de minimis* issues are those for which: (1) our recommended reductions total less than $1,000.00, *and* (2) the applicant has agreed to our recommended reductions.

[2]The Forty-Third Interim Period encompasses October 1, 2011 through December 31, 2011 (the "Application Period"). All Applications are for the Forty-Third Interim Period, unless otherwise specified.

Personal Injury Future Claimants. Austern seeks approval of fees totaling $1,750.00 and no expenses for his services during the Application Period.

3.    Baer Higgins Fruchtman LLC ("Baer Higgins Fruchtman") was retained as co-counsel to the Debtors and Debtors-in-Possession. Baer Higgins Fruchtman seeks approval of fees totaling $307,117.50 and expenses totaling $5,955.81 for its services during the Application Period.

4.    Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants. Bilzin Sumberg seeks approval of fees totaling $4,842.50 and expenses totaling $237.64 for its services during the Application Period.

5.    Blackstone Advisory Services L.P. ("Blackstone") was retained as financial advisor to the Debtors. Blackstone seeks approval of a flat fee totaling $150,000.00[3] and expenses totaling $1,565.95 for its services during the Application Period.

6.    BMC Group ("BMC") was retained as Claims Reconciliation and Solicitation Consultant to the Debtors. BMC seeks approval of fees totaling $102,084.50 and expenses totaling $12,935.73 for its services during the Application Period.

7.    Campbell & Levine, LLC ("Campbell & Levine"), was retained as Delaware and associated counsel to the Official Committee of Asbestos Personal Injury Claimants. Campbell & Levine seeks approval of fees totaling $42,808.00 and expenses totaling $6,599.31 for its services during the Application Period.

8.    Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as counsel to the

---

[3]For the Application Period, Blackstone lists 169.40 hours worked, which computes to an effective hourly rate of $885.48.

Official Committee of Asbestos Personal Injury Claimants.  Caplin & Drysdale seeks approval of fees totaling $105,965.00 and expenses totaling $4,914.17 for its services during the Application Period.[4]

9.     Capstone Advisory Group, LLC ("Capstone"), was retained as financial advisor to the Official Committee of Unsecured Creditors.  Capstone seeks approval of fees totaling $119,863.00 and expenses totaling $323.67 for its services during the Application Period.

10.     Casner & Edwards, LLP ("Casner"), was retained as special litigation counsel to the Debtors.  Casner seeks approval of fees totaling $40,181.50 and expenses totaling $37,046.43 for its services during the Application Period.

11.     Charter Oak Financial Consultants, LLC ("Charter Oak"), was retained as financial advisor to the Official Committee of Asbestos Personal Injury Claimants.  Charter Oak seeks approval of fees totaling $43,074.00 and expenses totaling $2.08 for its services during the Application Period.

12.     Duane Morris LLP ("Duane Morris") was retained as co-counsel to the Official Committee of Unsecured Creditors.  Duane Morris seeks approval of fees totaling 14,999.00 and expenses totaling $556.06 for its services during the Application Period.

13.     Ferry, Joseph & Pearce, P.A. ("Ferry Joseph"), was retained as counsel to the Official Committee of Asbestos Property Damage Claimants.  Ferry Joseph seeks approval of fees totaling

---

[4]We note for informational purposes that Caplin & Drysdale billed the time of attorney Elihu Inselbuch at $1,000.00 per hour.  During the current Application Period, Mr. Inselbuch billed 5.0 hours at the $1,000 per hour rate, for $5,000.00 in fees.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

$19,938.00 and expenses totaling $1,267.30 for its services during the Application Period.

14.      Foley Hoag LLP ("Foley Hoag") was retained as special environmental counsel to the Debtors. Foley Hoag seeks approval of fees totaling $28,718.00 and expenses totaling $3,147.64 for its services during the Application Period.

15.      Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen") was retained as immigration counsel to the Debtors. Fragomen seeks approval of fees totaling $18,750.00 and expenses totaling $11,619.95 for its services during the Application Period.

16.      The Hogan Firm ("Hogan") was retained as Delaware counsel to the Canadian Zonolite Attic Insulation ("ZAI") Claimants. Hogan seeks approval of fees totaling $33,539.00 and expenses totaling $1,267.70[5] for its services during the Application Period.

17.      Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors. K&E seeks approval of fees totaling $483,607.50 and expenses totaling $11,495.65 for its services during the Application Period.

18.      Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") was retained as co-counsel to the Official Committee of Equity Holders. Kramer Levin seeks approval of fees totaling $13,989.00 and expenses totaling $93.02 for its services during the Application Period.

19.      Lincoln Partners Advisors LLC ("Lincoln") was retained as financial advisor to David T. Austern, the Asbestos Personal Injury Future Claimants' Representative. Lincoln seeks approval of flat fees totaling $185,000.00[6] and expenses totaling $3,517.90 for its services during

---

[5]Hogan's expense request of $1,267.70 reflects a write-down of $30.00 for wire transfer fees which Hogan chose not to charge the estate.

[6]For the current Application Period, Lincoln recorded 253.8 hours worked, which computes to an effective hourly rate of $728.92.

the Application Period.

20.    Norton Rose OR LLP ("Norton Rose"), formerly known as Ogilvy Renault LLP, was retained as special counsel to the Debtors and Debtors-in-Possession in Canada. Norton Rose seeks approval of fees totaling CDN $4,465.00 and expenses totaling CDN $183.96 for its services during the Application Period.

21.    Pachulski Stang Ziehl & Jones LLP ("Pachulski") was retained as counsel to the Debtors. Pachulski seeks approval of fees totaling $73,932.00 and expenses totaling $63,473.99 for its services during the Application Period.

22.    Phillips, Goldman & Spence, P.A. ("PG&S"), was retained as local counsel to David T. Austern, Future Claimants' Representative. PG&S seeks approval of fees totaling $21,194.00 and expenses totaling $7,615.34[7] for its services during the Application Period.

23.    PricewaterhouseCoopers LLP ("PwC") was retained as auditors and tax consultants to the Debtors and Debtors-in-Possession. PwC seeks approval of fees totaling $624,259.22[8] and expenses totaling $23,359.11 for its services during the Application Period. Also, in the Application, PwC seeks approval of the following special project application:

•    Global Restructuring Project (for the Period of October through December 2011)

---

[7]The cover sheet of PG&S' Application incorrectly lists its expenses as $7,615.35. However, the expense request is correctly listed as $7,615.34 on the Notice, as well as elsewhere within the Application.

[8]We note for informational purposes that PwC billed the time of Audit Partners, Robert Eydt, Douglas Parker, and Cody Smith at $1,052.83 per hour. During the Application Period, Mr. Eydt billed 2.0 hours for fees of $2,105.66, Mr. Parker billed 1.0 hour for fees of $1,052.83, and Mr. Smith billed 0.5 hour for fees of $526.42. In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

in which PwC seeks fees totaling $95,701.10 and no expenses.

24.    Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  Reed Smith seeks approval of fees totaling $66,750.00 and expenses totaling $5,297.95 for its services during the Application Period.

25.    Alan B. Rich ("Alan Rich") was retained as counsel to the Honorable Alexander M. Sanders, Jr., Legal Representative for Future Asbestos-Related Property Damage Claimants.  Alan Rich seeks approval of fees totaling $19,955.00 and expenses totaling $30.00 for his services during the Application Period.

26.    The Honorable Alexander M. Sanders, Jr. ("Judge Sanders"), was retained as the Legal Representative for Future Asbestos-Related Property Damage Claimants.  Judge Sanders seeks approval of fees totaling $2,745.00 and expenses totaling $30.00 for his services during the Application Period.

27.    Saul Ewing LLP ("Saul Ewing") was retained as co-counsel to the Official Committee of Equity Holders.  Saul Ewing seeks approval of fees totaling $30,010.50 and expenses totaling $283.15 for its services during the Application Period.

28.    Steptoe & Johnson LLP ("Steptoe") was retained as special tax counsel to the Debtors.  Steptoe seeks approval of fees totaling $28,462.50 and expenses totaling $29.78 for its services during the Application Period.

29.    Strook & Stroock & Lavan LLP ("Stroock") was retained as counsel to the Official Committee of Unsecured Creditors.  Stroock seeks approval of fees totaling $92,483.50 and expenses totaling $817.49 for its services during the Application Period.

30.    Woodcock Washburn LLP ("Woodcock Washburn") was retained as special litigation counsel to the Debtors.  Woodcock Washburn seeks approval of fees totaling $2,325.00 and no expenses for its services during the Application Period.

31.    In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Applications in their entirety, including each of the time and expense entries included in the exhibits to the Applications, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2012, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

## DISCUSSION

32.    We have no issues with or objections to any of the Applications.[9]

## CONCLUSION

33.    In summary, for the Application Period, we recommend approval of the following fees and expenses for these Applicants:

    a.    Anderson Kill & Olick - $233,851.00 in fees and $6,479.80 in expenses;

    b.    Austern - $1,750.00 in fees;

---

[9]We sent initial reports or informal inquiries to Anderson Kill & Olick, Baer Higgins Fruchtman, Campbell & Levine, Caplin & Drysdale, The Hogan Firm, Kirkland & Ellis, Kramer Levin, Lincoln Partners, and PwC, and the issues raised therein were resolved to our satisfaction, with reductions agreed to by Baer Higgins Fruchtman, Campbell & Levine, The Hogan Firm, Lincoln Partners, and PwC.  *See* Appendices A through I.

   c.    Baer Higgins Fruchtman - $307,055.00 in fees ($307,117.50 minus $62.50[10]) and $5,955.81 in expenses;

   d.    Bilzin Sumberg - $4,842.50 in fees and $237.64 in expenses;

   e.    Blackstone - $150,000.00 in fees and $1,565.95 in expenses;

   f.    BMC - $102,084.50 in fees and $12,935.73 in expenses;

   g.    Campbell & Levine - $42,258.00 in fees ($42,808.00 minus $550.00[11]) and $6,599.31 in expenses;

   h.    Caplin & Drysdale - $105,965.00 in fees and $4,914.17 in expenses;

   i.    Capstone - $119,863.00 in fees and $323.67 in expenses;

   j.    Casner - $40,181.50 in fees and $37,046.43 in expenses;

   k.    Charter Oak - $43,074.00 in fees and $2.08 in expenses

   l.    Duane Morris - $14,999.00 in fees and $556.06 in expenses;

   m.    Ferry Joseph - $19,938.00 in fees and $1,267.30 in expenses;

   n.    Foley Hoag - $28,718.00 in fees and $3,147.64 in expenses;

   o.    Fragomen - $18,750.00 in fees and $11,619.95 in expenses;

   p.    Hogan - $32,851.00 in fees ($33,539.00 minus $688.00[12]) and $1,267.70 in expenses;

   q.    Kirkland & Ellis - $483,607.50 in fees and $11,495.65 in expenses;

---

[10]This agreed $62.50 reduction is for a time entry in which there was a mathematical error. *See* Appendix B, Paragraph 2.

[11]This agreed $550.00 reduction is for duplicate time entries. *See* Appendix C, Paragraph 1.

[12]This agreed $688.00 reduction is for time pertaining to the receipt and processing of fee payments from the Debtors. *See* Appendix E, Paragraph 1.

r.      Kramer Levin - $13,989.00 in fees and $93.02 in expenses;

s.      Lincoln Partners - $185,000.00 in fees and $3,480.90 in expenses ($3,517.90

minus $37.00[13]);

t.      Norton Rose - CDN $4,465.00 in fees and CDN $183.96 in expenses;

u.      Pachulski - $73,932.00 in fees and $63,473.99 in expenses;

v.      PG&S - $21,194.00 in fees and $7,615.34 in expenses;

w.      PwC - $624,115.33 in fees ($624,259.22 minus $143.89[14]) and $23,359.11

in expenses for the current Application Period, plus $95,701.10 in fees for the Global Restructuring

Project (October through December 2011);

x.      Reed Smith - $66,750.00 in fees and $5,297.95 in expenses;

y.      Alan Rich - $19,955.00 in fees and $30.00 in expenses;

z.      Judge Sanders - $2,745.00 in fees and $30.00 in expenses;

aa.     Saul Ewing - $30,010.50 in fees and $283.15 in expenses;

bb.     Steptoe & Johnson - $28,462.50 in fees and $29.78 in expenses;

cc.     Stroock - $92,483.50 in fees and $817.49 in expenses; and

dd.     Woodcock Washburn - $2,325.00 in fees.

---

[13]This agreed $37.00 reduction was to correct a mathematical error in Lincoln Partners' expense request. *See* <u>Appendix H</u>, Paragraph 2.

[14]This agreed reduction of $143.89 was for time billed by an audit associate making travel arrangements for an audit trip. *See* <u>Appendix I</u>.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
       Warren H. Smith
       Texas State Bar No. 18757050

Republic Center
325 N. St. Paul Street, Suite 1250
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 9th day of May, 2012.

_____
Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicants**

Robert Y. Chung
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182

David T. Austern
Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA 22042-0683

Roger J. Higgins
Baer Higgins Fruchtman LLC
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Scott L. Baena
Jay M. Sakalo
Matthew I. Kramer
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

John James O'Connell III
Managing Director
Blackstone Advisory Services L.P.
345 Park Avenue
New York, NY 10154

Myrtle H. John
BMC Group
600 1st Avenue, Suite 300
Seattle, Washington 98104

Marla R. Eskin
Mark T. Hurford
Kathleen Campbell Davis
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19899

Elihu Inselbuch
Rita Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Edwin N. Ordway, Jr.
Capstone Advisory Group, LLC
Park 80 West
250 Pehle Avenue, Suite 105
Saddle Brook, NJ 07663

Robert A. Murphy
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

James P. Sinclair
Charter Oak Financial Consultants, LLC
430 Center Avenue
Mamaroneck, NY 10543

Michael R. Lastowski
Richard W. Riley
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

Michael B. Joseph
Theodore J. Tacconelli
Lisa L. Coggins
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 1000
P. O. Box 1351
Wilmington, DE 19899

Adam P. Kahn
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600

Scott E. Bettridge
Fragomen, Del Rey, Bernsen & Loewy LLP
One Alhambra Plaza, Suite 600
Coral Gables, FL 33134

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

John Donley
Adam C. Paul
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Philip Bentley
David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10022

Jason Solganick
Lincoln Partners Advisors LLC
360 Madison Avenue, 21st Floor
New York, NY 10017

Teresa J. Walsh
Norton Rose OR LLP
200 Bay Street, Suite 3800
Royal Bank Plaza, South Tower
Toronto, ON   M5J 2Z4

James E. O'Neill
Laura Davis Jones
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

John C. Phillips, Jr.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Kathleen M. Miller
Stephanie S. Habelow
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

Kurt F. Gwynne
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Teresa K. D. Currier
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899

Anne E. Moran
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036

Lewis Kruger
Kenneth Pasquale
Arlene Krieger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Gary H. Levin
Woodcock Washburn LLP
Cira Centre – 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

**The Debtors**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

# APPENDIX A

## Anderson Kill & Olick

1.        We noted that on October 14, 2011, MG ($590), RYC ($595), IF ($295), and HEG

($275) attended a meeting.  The total time spent was 8.6 hours for total fees of $2,905.50.

| | |
|---|---|
| 10/14/11 | Prepare for and attend settlement meeting with insolvent insurance company. |
| | HEG    1.20          $330.00 |

| | |
|---|---|
| 10/14/11 | Preparation and meeting with insolvent insurance company. |
| | IF      1.10          $324.50 |

| | |
|---|---|
| 10/14/11 | Negotiating session with insolvent scheme representatives and preparation for same. |
| | MG      2.00          $1,180.00 |

| | |
|---|---|
| 10/14/11 | ..............;  Participate in meeting with insolvent insurance carrier regarding potential settlement and follow-up review of outstanding issues (1.80). |
| | RYC    4.30          $1,071.00 |

Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the

applicant firm attends a hearing or conference, the applicant should explain the need for multiple

attendees."  We asked Anderson Kill & Olick to explain why it was necessary for each professional

and paraprofessional to attend this meeting.  Anderson Kill & Olick responded as follows:

> ... Anderson Kill confirms that it was necessary for each professional and paraprofessional to attend the meeting with English & American, a London Market insolvent/scheme insurance company.  The meeting was a settlement negotiation addressing all potential insurance coverage issues and impediments in connection with W. R. Grace's scheme claim.  English & American attended the meeting with a team of six professionals including attorneys, claims/allocation analysts, and insurance policy analysts.  Mr. Garbowski attended the meeting as the lead negotiator for W. R. Grace and was the sole party responsible for handling complex insurance allocation matters.  Mr. Gershman[15] is Anderson Kill's point person for all insolvent matters, has direct knowledge of the scheme company operations, and handled all preliminary contact with English & American professionals.  Mr. Feldgreber is our policy analyst and provided information regarding Grace's extensive insurance portfolio and history.  Mr. Chung is the attorney with knowledge

---

[15]Anderson Kill & Olick mistakenly identified this individual as Mr. Harris in its response, but
subsequently advised that it was Mr. Gershman.

of insurance litigation issues, including legal responses to English & American's defenses to coverage. Due to the complexity and variety of the components to the settlement negotiations, each Anderson Kill professional was necessary to contribute their personal knowledge during the negotiations. In addition, having all of the professionals present was more cost efficient rather than having multiple meetings so that one professional could learn, address, and follow-up on each distinct issue raised by English & American during the negotiations.

We accept Anderson Kill & Olick's response and have no objection to these fees.

2.    We noted the following expense for which more information was needed:

| | | |
|---|---|---|
| 11/30/11 | $5,960.00 | Professional Services - Vendor: Brown & Connery, LLP: Fee for former New Jersey Supreme Court Justice to review and prepare Anderson Kill for oral argument before the New Jersey Appellate Division. |

In response to our request, Anderson Kill & Olick provided us with a copy of the itemized invoice for this professional, and we have attached it as <u>Response Exhibit 1</u>. We have reviewed the invoice and have no objection to this expense.

## APPENDIX B

### Baer Higgins Fruchtman

1.       We noted a discrepancy of $1,687.50 between the amount of fees billed in Baer

Higgins Fruchtman's December 2011 monthly fee and the amount of fees supported by the fee

detail.  In response to our inquiry, Baer Higgins Fruchtman supplied the missing fee detail totaling

$1,687.50, and we attached it as Response Exhibit 2.  We have reviewed the fee detail and have no

objection to these fees.

2.       We noted the following time entry in which the amount of time billed exceeds the

amount of time recorded within the work description:

| | | | | |
|---|---|---|---|---|
| 12/6/11 | JSB | 1.70 | 1,062.50 | Confer with R. Higgins and review correspondence re various issues on pending transactions (.40); review comments from counsel on potential joint venture transaction and prepare response re same (.50); confer with C. Finke, J. McFarland and D. Lebow re Project Treadstone issues (.40); review correspondence re same (.30). |

Although 1.70 hours were billed, the subparts of the time entry total only 1.60 hours, creating an

overbilling of $62.50 in fees.  When asked about this discrepancy, Baer Higgins Fruchtman agreed

to a $62.50 reduction.  We appreciate Baer Higgins Fruchtman's cooperation, and recommend a

reduction of $62.50 in fees.

**APPENDIX C**

**Campbell & Levine**

1.      We noted several sets of identical time entries.  See <u>Appendix C-1</u>.  We asked

Campbell & Levine whether any of these time entries were duplicates.  Campbell & Levine

responded:

> Upon review, Campbell & Levine does not believe that the first six entries are
> duplicative.  Each of these entries did include a typographical error, which provided
> an incorrect year for the filings that were reviewed. Attached hereto are corrected
> entries, along with a citation to the docket entry of the filing that was reviewed.  The
> remainder of the entries do appear to be duplicates and Campbell & Levine agrees
> to a reduction in the amount of $550.00.

We have attached the corrected time entries as <u>Response Exhibit 3</u>.  We appreciate Campbell &

Levine's response and recommend a reduction of $550.00 in fees.

# APPENDIX D

## Caplin & Drysdale

1.      We noted that during December 2011, associate Todd E. Phillips ("TEP"), billing at an hourly rate of $340.00, spent 24.70 hours for $8,398.00 in fees reviewing and conducting research regarding the committee.

| | | | | |
|---|---|---|---|---|
| 12/07/11 | TEP | 340.00 | 6.80 | Review research and conduct research re: committee (6.6); confer with KGH re: same (0.2). |
| 12/08/11 | TEP | 340.00 | 2.20 | Review research and conduct research re: committee (1.8); prepare memo re: same (0.4). |
| 12/09/11 | TEP | 340.00 | 1.20 | Review research and conduct research re: committee (0.5); prepare memo re: same (0.7). |
| 12/12/11 | TEP | 340.00 | 6.30 | Review research and conduct research re: committee (2.3); prepare memo re: same (4.0). |
| 12/13/11 | TEP | 340.00 | 8.20 | Review research and conduct research re committee (7.5); prepare memo re same (.7). |

We asked Caplin & Drysdale to provide more details concerning the subject of this research and how it benefited the Committee.  Caplin & Drysdale responded:

> Mr. Phillips researched and drafted a memorandum of law regarding a recent court decision with respect to an asbestos committee's attorney-client privilege.  The information related to a privilege issue that had arisen regarding the post-confirmation process.

We accept Caplin & Drysdale's response and have no objection to these fees.

## APPENDIX E

## The Hogan Firm

1.      We noted several time entries pertaining to the receipt of payments from W. R. Grace.  See Appendix E-1.   It appears to us that the processing of payments is a bookkeeping function and, therefore, the cost of doing business.   We asked The Hogan Firm to explain why the bankruptcy estate should be charged for this work.   The Hogan Firm's response is attached as Response Exhibit 4.  We appreciate The Hogan Firm's response and agree that time spent on fee application preparation, as well as the Quarterly Project Category Summary, is compensable.  We excluded from our calculations any time entries pertaining to fee applications, invoices, CNOs, the Quarterly Project Category Summary, etc.  Based upon The Hogan Firm's response, we revisited the time entries listed on Appendix E-1 and noted in bold print those time entries pertaining to the payment spreadsheet mentioned in The Hogan Firm's response or to reconciliation of amounts owed to the parties, as they might reasonably be presumed to have an impact on the parties' fee applications.  However, there is no indication that the remaining time entries listed on Appendix E-1 pertain to fee application preparation or to the Quarterly Project Category Summary.  The remaining time entries on Appendix E-1 pertain to receiving payments, making or receiving wire transfers, and correspondence with W.R. Grace and co-counsel concerning amounts due to The Hogan Firm and to co-counsel.  We maintain that time spent on making sure oneself and one's co-counsel are paid is a bookkeeping function which would have to be performed regardless of whether or not this was a bankruptcy case.  Thus, while we have no objection to the bolded time entries (totaling $1,083.00 in fees), we advised The Hogan Firm of our intention to recommend disallowance of the remaining time entries totaling $688.00 in fees.  The Hogan Firm informed us that it did not object to the reduction.  We appreciate The Hogan Firm's cooperation in this regard and recommend a reduction

of $688.00 in fees.

# APPENDIX E-1

## The Hogan Firm (Cont'd.)

| 10/03/2011 | KEH | **E-mail correspondence with Grace Accounts Payable re: payment for February 2011 and March 2011 Fee Applications (80% Fees); review and update to WRG spreadsheet.** | **0.40** | **190.00** | **76.00** |
|---|---|---|---|---|---|
| 10/04/2011 | KEH | E-mail correspondence with Careen Hannouche - LBL holdback for January 1st through March 31st, 2011, has not been received. | 0.10 | 190.00 | 19.00 |
| 10/04/2011 | DKH | E-mail correspondence with Careen Hannouche concerning the status of holdback for January 1st through March 31st, 2011. | 0.20 | 400.00 | 80.00 |
| 10/04/2011 | KEH | E-mail correspondence with 'Careen Hannouche'; 'Cindy Yates' regarding receipt of holdback payments for January through March 2011 | 0.10 | 190.00 | 19.00 |
| 10/04/2011 | KEH | E-mail correspondence with Cindy Yates - Scarfone Hawkins has not received holdback payments for January, February or March, 2011. | 0.10 | 190.00 | 19.00 |
| 10/04/2011 | KEH | E-mail correspondence with Daniel Hogan regarding confirmation of payment from WR Grace in the amount of $5,871.80 for February and March 2011 THF Fee Applications. | 0.20 | 190.00 | 38.00 |
| 10/04/2011 | KEH | E-mail correspondence with Daniel Hogan regarding deposit received from WR Grace. | 0.10 | 190.00 | 19.00 |
| 10/04/2011 | KEH | Prepare and send payment to Scarfone Hawkins LLP in the amount of $9,410.60. | 0.20 | 190.00 | 38.00 |

| 10/05/2011 | KEH | **E-mail correspondence from Daniel Hogan confirming deposit to account; review and revise spreadsheet.** | **0.30** | **190.00** | **57.00** |
|---|---|---|---|---|---|
| **10/05/2011** | **KEH** | **E-mail correspondence with Careen Hannouche wire transfer from Grace in the amount of $2,937.88 on October 5, 2011 - confirm what this payment is for?** | **0.10** | **190.00** | **19.00** |
| **10/05/2011** | **KEH** | **Review spreadsheet for amounts due to Lauzon Belanger Lesperance; E-mail correspondence to 'Careen Hannouche' re: payment is holdback for January – March 2011 applications.  It should be in the amount of $2,952.88; $15.00 discrepancy is bank charge.** | **0.10** | **190.00** | **19.00** |
| 10/06/2011 | KEH | E-mail correspondence with Grace Accounts Payable regarding wire in the amount of $9,532.45 for THF's July 2011 Fee application. | 0.10 | 190.00 | 19.00 |
| 10/11/2011 | KEH | E-mail correspondence with Daniel Hogan regarding need for confirmation of deposit for $9,532.45. | 0.10 | 190.00 | 19.00 |
| **10/18/2011** | **KEH** | **E-mail correspondence with Cindy Yates re: 2 wire transfers from Grace, both in the amount of $8,298.00; Pursuant to the No Order Required Certificate of No Objection dated September 22, 2011, we should have received $7,067.49 in payment for the July account; holdback from January, February, March, 2011 accounts should be $7,488.75; review same.** | **0.30** | **190.00** | **57.00** |

| 10/19/2011 | KEH | **E-mail correspondence with Cindy Yates - heard from Grace – the $8,298.00 is in payment of SH holdback for January, February and March, 2011; They are still looking into why it was sent twice; review and post to WR Grace payment spreadsheet.** | 0.50 | 190.00 | 95.00 |
|---|---|---|---|---|---|
| 10/19/2011 | KEH | **E-mail correspondence with Cindy Yates $7,067.49 received from Grace today is in payment of SH account of July, 2011; review and post to WR Grace payment spreadsheet.** | 0.40 | 190.00 | 76.00 |
| 10/24/2011 | KEH | E-mail correspondence with Careen Hannouche regarding payment from Grace. | 0.10 | 190.00 | 19.00 |
| 10/24/2011 | KEH | **E-mail correspondence with Careen Hannouche re: wire transfer received October 12, 2011 in the amount of $950.92.  Can you confirm what this payment is for?** | 0.10 | 190.00 | 19.00 |
| 10/24/2011 | KEH | **E-mail correspondence with Cindy Yates, re: received $8,298.00 from Grace in payment of SH holdback for January, February and March, 2011.  The next day Grace forwarded to us a second wire transfer for $8,298.00.  We are holding this second wire transfer in our trust account as we believe it is an over-payment by Grace; received $7,067.49 from Grace in payment of our July, 2011 account; reviewed payments and posted same to WR Grace payment spreadsheet.** | 0.50 | 190.00 | 95.00 |
| 10/24/2011 | KEH | **Review payment information from LBL and SH and update WR Grace Payment Spreadsheet.** | 0.50 | 190.00 | 95.00 |

| 10/24/2011 | KEH | Review WR Grace payment spreadsheet regarding payment received by LBL from Grace; E-mail correspondence with 'Careen Hannouche' - wire is payment for LBL's July Fee Application: $789.36 Fees and $161.56 Expenses | 0.30 | 190.00 | 57.00 |
|---|---|---|---|---|---|
| 11/03/2011 | KEH | E-mail correspondence from Grace Accounts Payable transmitting Remittance Advice regarding wire in the amount of $12,361.16 for THF's August 2011 fee application; review same and post to spreadsheet. | 0.30 | 190.00 | 57.00 |
| 11/04/2011 | KEH | E-mail correspondence to/from DK Hogan regarding confirmation of wire from WR Grace for THF's August 2011 fee application prepare check for transmittal of funds to Scarfone Hawkins LLP - mail same. | 0.40 | 190.00 | 76.00 |
| 11/11/2011 | KEH | E-mail correspondence from Careen Hannouche regarding receipt of payment in the amount of $907.74 on November 4th for LBL's August 2011 fee application; post same to spreadsheet. | 0.20 | 190.00 | 38.00 |
| 11/11/2011 | KEH | E-mail correspondence from Cindy Yates with confirmation of payment in the amount of $6,038.59 from WRG for SH's August 2011 fee application; post same to spreadsheet. | 0.20 | 190.00 | 38.00 |
| 11/11/2011 | KEH | E-mail correspondence to Careen Hannouche & Cindy Yates regarding payment from WRG for August fee application. | 0.10 | 190.00 | 19.00 |
| 12/16/2011 | KEH | E-mail correspondence from Grace Accounts Payable regarding payment of The Hogan Firm's September 2011 fee application on 12/10/2011 | 0.10 | 190.00 | 19.00 |

| 12/19/2011 | KEH | **Receive and review wire advice from W.R. Grace; email from DK Hogan to confirm same; update payment spreadsheet regarding payment of holdback from April, May & June 2011.** | 0.70 | 190.00 | 133.00 |
|---|---|---|---|---|---|
| 12/20/2011 | KEH | **E-mail correspondence with Careen Hannouche, Michel Belanger, David Thompson, Matt Moloci and Cindy Yates re: payment from W.R. Grace for September fee application and holdback on April, May and June applications; request for time/expense statements for November.** | 0.30 | 190.00 | 57.00 |
| 12/20/2011 | KEH | **E-mail correspondence with Cindy Yates regarding the receipt of funds for payment of SH September 2011 monthly fee application; holdback of SH April, 2011 monthly fee application; holdback of SH May, 2011 monthly fee application; holdback of SH June, 2011 monthly fee application; revise WR Grace payment spreadsheet with same.** | 0.50 | 190.00 | 95.00 |
| 12/20/2011 | KEH | E-mail correspondence with Daniel Hogan regarding confirmation of payment from WR Grace in the amount of $8,307.40. | 0.20 | 190.00 | 38.00 |
| 12/20/2011 | KEH | E-mail correspondence with Daniel Hogan regarding WR Grace payment in the amount of $6,425.96 for THF September fee application. | 0.20 | 190.00 | 38.00 |
| 12/20/2011 | KEH | Receive and review wire advice from W.R. Grace for payment of THF's September fee application; email to DK Hogan for confirmation of same. | 0.30 | 190.00 | 57.00 |

| 12/22/2011 | KEH | E-mail correspondence with Careen Hannouche regarding wire transfer from WR Grace in the amount of $9,134.13 on December 20, 2011 - need confirmation for application of payment. | 0.10 | 190.00 | 19.00 |
|---|---|---|---|---|---|
| 12/22/2011 | KEH | Review payment spreadsheet and advise Careen Hannouche regarding wire transfer in the amount of $9,134.13. | 0.20 | 190.00 | 38.00 |
| 12/29/2011 | KEH | Review WR Grace payment information for Scarfone Hawkins and Lauzon Belanger Lesperance; prepare for transfer of funds to Scarfone Hawkins for payment of April-June 2011 holdback and September 2011 fee application; E-mail correspondence with 'Cindy Yates' regarding same. | 0.50 | 190.00 | 95.00 |
| | | | **9.10** | | **$1,771.00** |

## APPENDIX F

## Kirkland & Ellis

1.        We noted that during the month of December 2011, attorney Brian T. Stansbury, billing at an hourly rate of $665.00, spent 1.7 hours for $1,130.50 in fees on work pertaining to an x-ray study.

| 12/2/2011 | Brian T. Stansbury | .30 | Confer with J. Hughes re Henry x-ray study and Cascino Vaughn x-ray review. |
|---|---|---|---|
| 12/5/2011 | Brian T. Stansbury | .60 | Confer with M. Cascino re Henry x-ray study (.3); draft and revise note to M. Cascino (.2); confer with L. Freyder of Tulane re Henry x-ray study (.1). |
| 12/14/2011 | Brian T. Stansbury | .80 | Confer with J. Hughes re discussions between Exponent and attorney for CDC (.2); analyze and provide comments to draft letter (.3); confer with counsel for Exponent re letter to CDC counsel (.3). |
| | | 1.70 | |

We asked K&E to confirm that these fees were not billed to the W.R. Grace estate in error, and K&E responded:

> In response K&E represents that these amounts were billed in connection with a discovery demand made to the Debtors to turnover certain documents and medical records that were produced during the estimation trial in the Chapter 11 Cases and subject to a protective order entered at the time of the estimation trial.  Thus, these amounts were not billed to the Debtors' estates in error.

We appreciate K&E's explanation and have no objection to these fees.

## APPENDIX G

## Kramer Levin

1.    We noted the following time entry in which the amount of time billed exceeded the

amount of time recorded within the work description:

| 11/03/11 | BENTLEY, PHILIP | Committee conf call (0.8); discs T. Weschler, DB, T. Currier, RS and D. Klauder re committee membership change (.4), and prepare letter to D. Klauder re same (.2) | 3.20 | 2,656.00 |
|---|---|---|---|---|

The subparts of the time entry total 1.4 hours, however, 3.2 hours were billed.  We asked Kramer

Levin whether a fee adjustment was appropriate for this time entry.  Kramer Levin responded: "We

have checked our records and the (.2) was supposed to have been (2). I apologize for the

inconvenience."  We accept Kramer Levin's response and have no objection to these fees.

## APPENDIX H

### Lincoln Partners

1.      We noted that Lincoln Partners' November 2011 monthly fee application had not been filed with the Court.  Lincoln Partners has since filed the November 2011 application, and a copy is attached as  Response Exhibit 5.  We have reviewed same and have no objection to these fees and expenses.

2.      We noted a $37.00 discrepancy between Lincoln Partners' expense request and the sum of the expenses listed in its monthly fee applications.  When we asked Lincoln Partners about this discrepancy, Lincoln Partners agreed to a $37.00 reduction to correct the error.  We appreciate Lincoln Partners' response and recommend a reduction of $37.00 in expenses.

3.      We noted the following expenses in Lincoln Partner's December 2011 monthly fee application for which more information was needed:

| | |
|---|---|
| Airfare | $2,033.20 |
| Transportation | $887.01 |
| Meals | $45.17 |

Pursuant to our request, Lincoln Partners provided an itemization of these expenses, which we reviewed.  *See* Response Exhibit  6.  We appreciate this information and have no objection to the expenses.

**APPENDIX I**

**PwC**

1.      We noted the following time entry by Drew Levy for making travel arrangements:

11/22/11      1.1      Working out travel logistics, booking flight, hotel, rental car for Mt. Pleasant. We take the position that such work is administrative in nature and therefore noncompensable. We asked PwC to explain why the estate should compensate these fees and PwC responded: "The 11/22 entry was for booking travel to Mt. Pleasant to participate in the physical inventory. We understand the auditor's position on this."  We appreciate PwC's response and recommend disallowance of this time, for a reduction of $143.89 in fees.

# RESPONSE EXHIBITS 1 THROUGH 3

*(See PDF attachments.)*

**RESPONSE EXHIBIT 4**

**(The Hogan Firm)**

The Hogan Firm has been asked to explain why the bankruptcy estate should be charged for the time entries that appear to the bankruptcy estate to be a bookkeeping function. The time entries in question are for time expended in the preparation of the fee applications for The Hogan Firm, Scarfone Hawkins, and Lauzon Bélanger Lespérance.  The time entries were not for services performed during the ordinary course of business for The Hogan Firm, but were for services performed on behalf of Representative Counsel (Scarfone Hawkins, and Lauzon Bélanger Lespérance) and the Canadian ZAI Claimants pursuant to the ***Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members***, dated April 17, 2002.  The Hogan Firm is solely responsible for the preparation of monthly and quarterly fee applications for The Hogan Firm, Scarfone Hawkins, and Lauzon Bélanger Lespérance.  Hence, the time spent on the "bookkeeping" is actual, necessary, accounting for the preparation of the monthly and quarterly fee applications and, therefore, The Hogan Firm should be compensated for such services.  In re Worldwide Direct Inc., 334 B.R. 108 (D.Del. 2005); *See also* In re Nucorp Energy, Inc., 765 F.2d 655, 662 (9th Cir. 1985) (stating that denying counsel fees associated with preparation of fee applications would be "inconsistent with the express policy of the Bankruptcy Reform Act and fundamentally inequitable to impose substantial requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements.  The preparation and presentation of the detailed fee applications required by the bankruptcy court necessarily involve substantial investments of time and effort from both counsel and their staffs.  To require counsel to devote

considerable time to the preparation of fee applications, but to demand that they absorb the substantial cost associated therewith, would be to ignore the direct mandate of section 330(a) [*11 U.S.C. § 330(a)*] that reasonable compensation be provided for all 'actual, necessary' services rendered by bankruptcy counsel.").

The Hogan Firm has an obligation to certify the accuracy of the applications as well as the veracity of the funds which relate to them.  The Hogan Firm maintains copious records on behalf of Representative Counsel and the Canadian ZAI Claimants to facilitate in preparation of monthly and quarterly fee applications.  These records include, but are not limited to, an Excel spreadsheet delineating the details of each application, each holdback, and each payment.  The Hogan Firm must frequently correspond with Representative Counsel, as well as in-house correspondence, to gather the information necessary for the preparation of the fee applications.  The Hogan Firm recently demonstrated our obligation to gather, maintain and monitor funds, when we found discrepancies in the cumulative totals between the 42nd Quarter Project Category Summary and The Hogan Firm's records.  Accordingly, the time entries in question are directly related to preparation of fee applications and in compliance with the ***Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members***, dated April 17, 2002, and, therefore, should be paid by the bankruptcy estate.

**RESPONSE EXHIBIT 5**

**(Lincoln Partners)**

*(See PDF attachment.)*

**RESPONSE EXHIBIT 6**

**(Lincoln Partners)**

Here is the additional information on Lincoln's expenses from the December 2011 monthly fee application:

Airfare of $2,033.20:

On December 6, 2011, Joe Radecki, Jason Solganick and Claire Burke traveled from New York to Washington, D.C. (round trip) for a meeting with David Austern (the Future Claimants Representative) and Orrick (FCR's legal counsel). The charges break down as follows:

Joe Radecki - $694.40 — Coach class, La Guardia (NY) to DC National, round trip
Jason Solganick - $694.40 — Coach class, La Guardia (NY) to DC National, round trip
Claire Burke - $644.40 — Coach class, La Guardia (NY) to DC National, round trip

Transportation of $887.01:

Joe Radecki — Total of $369.00 breaks down as follows (all of the charges relate to travel for the December 6, 2011 meeting):
$170.00 for car service from Joe's home in New Canaan, CT to La Guardia Airport
$20.00 for taxi for Joe Radecki, Jason Solganick and Claire Burke from DC National airport to Orrick's offices in Washington, DC
$179.00 for car service from La Guardia Airport to Joe's home in New Canaan, CT

Jason Solganick — Total of $382.39 breaks down as follows (all of the charges relate to travel for the December 6, 2011 meeting):
$20 for taxi for Joe Radecki and Jason Solganick from Orrick's offices in Washington, DC to DC National airport
$164.99 for car service from Jason's home in Ossining, NY to La Guardia Airport
$197.40 for car service from La Guardia Airport to Jason's home in Ossining, NY

Claire Burke — Total of $135.63 breaks down as follows:
$20 for taxi for Claire Burke from Orrick's offices in Washington, DC to DC National airport (12/6/11 meeting)
$28.70 for taxi for Claire Burke from La Guardia to her home in New York City (12/6/11 meeting)

$74.62 for car service for Claire Burke from her home in New York City to La Guardia airport (12/6/11 meeting)

$12.30 for taxi for Claire Burke from Lincoln's New York Office to her home in New York City on 12/5/11; the travel was necessitated by late night work in preparation for the 12/6/11 meeting

Meals of $45.17:

Joe Radecki - $9.55 — Breakfast at La Guardia airport (New York City) during travel to Washington DC for 12/6/11 meeting

Jason Solganick - $2.28 — Breakfast at La Guardia airport (New York City) during travel to Washington DC for 12/6/11 meeting

Claire Burke:

$22.42 — Dinner on 12/5/11 in New York City necessitated by late night work in preparation for the 12/6/11 meeting

$8.02 — Breakfast at La Guardia airport (New York City) during travel to Washington DC for 12/6/11 meeting

$2.90 — Afternoon snack at DC National airport during travel for the 12/6/11 meeting