## EXHIBIT B

## BNSF Settlement

For Execution

## SETTLEMENT AGREEMENT
## BETWEEN BNSF AND THE DEBTORS
### (BNSF Indemnity Claims)

This SETTLEMENT AGREEMENT (this "Agreement") is entered into as of April 20, 2012 (the "Execution Date"), by and among BNSF and the Debtors. Each of BNSF and each of the Debtors are referred to herein as a "Party" and collectively as the "Parties." Capitalized terms used herein are defined in Article I below.

## RECITALS

WHEREAS, on or about April 2, 2001, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, In re W. R. Grace & Co., et al., No. 01-1139 (JKF), and they continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, the Debtors, the Committee, the FCR and the Official Committee of Equity Security Holders appointed in the Bankruptcy Case, as co-proponents, proposed the Plan, which the Bankruptcy Court confirmed by Order entered in the Bankruptcy Case on January 31, 2011 [Docket No. 28445], as clarified by Order entered on February 15, 2011 [Docket No. 26289] (collectively, the "Confirmation Order"); and

WHEREAS, the District Court affirmed the Confirmation Order, affirmed the CNA Settlement Approval Order, and issued the injunctions provided for in the Plan in an Order dated January 30, 2012, and entered on January 31, 2012 [Docket No. 165], in Case No. 11-199 (RLB), et al. (the "District Court Affirmance Order"); and

WHEREAS, BNSF asserted certain Claims against the Debtors, raised certain objections in the Bankruptcy Case to confirmation of the Plan and other matters, and filed and has pursued certain Appeals; and

WHEREAS, the Parties, subject to the terms and conditions of this Agreement, now wish fully and finally to compromise and resolve the disputes among them, in accordance with this Agreement;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements and covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

**1.01    Certain Definitions.**  As used in this Agreement, the following terms have the following meanings:

"Affiliate" has the meaning given to such term in the Plan.

"Agreement" has the meaning set forth in the preamble.

*Page 1 of 14*

For Execution

"Appeals" means BNSF's appeals of (i) the Confirmation Order, noticed in the Bankruptcy Court on March 18, 2011 [Docket No. 26590] and docketed in the District Court as Case No. 11-531 (RLB) (consolidated into lead Case No. 11-199 (RLB)), (ii) the CNA Settlement Approval Order, noticed in the Bankruptcy Court on February 1, 2011 [Docket No. 26168] and docketed in the District Court as Case No. 11-207 (RLB), (iii) the Arrowood Settlement Approval Order, noticed in the Bankruptcy Court on August 28, 2009 [Docket No. 23002] and docketed in the District Court as Case No. 09-763 (RLB), and (iv) any further appeals noted or filed by BNSF relating to confirmation of the Plan or approval of the Insurance Settlements, including any appeal of the District Court Affirmance Order, and all proceedings with respect to all such appeals.

"Approval Motion" has the meaning set forth in Section 4.01.

"Approval Order" means an order of the Bankruptcy Court, to be entered in the Bankruptcy Case, substantially in the form attached hereto as Exhibit A, with only such modifications as to which the Parties have consented in writing, which order shall, among other things, approve this Agreement and the compromise and settlement memorialized herein, authorize the Debtors and the Trust to perform under this Agreement in accordance with its terms, and modify the Preliminary Injunction, only to the extent necessary, to permit BNSF to execute, deliver and perform its obligations under this Agreement and the Libby/BNSF Settlement.

"Arrowood Settlement Approval Order" means the Order of the Bankruptcy Court entered in the Bankruptcy Case August 19, 2009 [Docket No. 22859], approving the insurance settlement agreement entered into by the Debtors and Arrowood Indemnity Company (as defined therein) on or about June 17, 2009.

"Asbestos Protected Party" has the meaning given to such term in the Plan.

"Bankruptcy Case" means In re W. R. Grace & Co., et al., Case No. 01-1139 (JKF) and the other bankruptcy cases that are jointly administered under Case No. 01-1139, including any appeals of decisions in the Bankruptcy Case.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"BNSF" means each of BNSF Railway Company, The Great Northern Railway Company, Burlington Northern Railroad Company, Burlington Northern, Inc. and The Burlington Northern & Santa Fe Railway Company, and their past, present and future Affiliates, subsidiaries, agents, representatives, insurers, predecessors, successors and assigns, and any Person claiming through or under any of the foregoing.

For Execution

"BNSF Policies" means the following insurance policies:

    i.    The CNA Companies: Policy No. 2483440 (but not including policies with the identical number issued to Grace), Policy No. CCP 3227361 and Policy No. 9060456;

    ii.    Arrowood Indemnity Company: Policy No. RLH578320, Policy No. RLH703154, Policy No. RLH838467, Policy No. RLH021669, and Policy No. RLH141383; and

    iii.    Maryland Casualty Company: Policy No. 50-523812, Policy No. 50-511902, and Policy No. 50-695902.

"Claim" means any claim (whether past, present, or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, direct or consequential, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit, action, direct action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien, and any other assertion of rights or liability of any kind or subject matter whatsoever.

"Committee" means the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

"CNA Settlement Approval Order" means the Order of the Bankruptcy Court entered January 22, 2011 [Docket No. 26106], approving the insurance settlement agreement entered into by the Debtors and the CNA Companies (as defined therein) on or about November 18, 2010.

"Confirmation Order" has the meaning set forth in the Recitals.

"Debtors" has the meaning given to such term in the Plan.

"Demand" has the meaning given to such term in the Plan.

"District Court" means the United States District Court for the District of Delaware.

"District Court Affirmance Order" has the meaning set forth in the Recitals.

"Effective Date" means the Effective Date, as defined in the Plan.

"Execution Date" has the meaning set forth in the preamble.

"Final Order" has the meaning given to such term in the Plan.

"FCR" means David Austern, the Asbestos PI Future Claimants' Representative appointed for each Debtor by order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

For Execution

"Global Settlement Effective Date" means the date on which the later of the following events occurs: (i) the Approval Order becomes a Final Order, and (ii) the conditions set out in Section II.C. (1) through (4) of the Libby/BNSF Settlement have been satisfied or waived.

"Insurance Contributor" has the meaning given to such term in the Plan.

"Insurance Settlements" means the settlement entered into by the Debtors and the CNA Companies as approved by the CNA Settlement Approval Order and the settlement entered into by the Debtors and Arrowood Indemnity Company as approved by the Arrowood Settlement Approval Order.

"Libby/BNSF Claimant" means any person who (i) (x) asserted any asbestos-related Claim against BNSF (or against any of its insurers in its capacity as such) based upon, arising out of or relating to alleged exposure to asbestos or vermiculite, for which BNSF alleges any of the Debtors has any liability (including any Claim based upon loss or impairment of the marital relationship, or loss of support, aid, protection, society and/or consortium of any allegedly exposed person), and (y) resolved such Claim with BNSF by way of settlement, judgment or otherwise on or before the Execution Date, or (ii) is included within the definition of "Released BNSF Claimant" in the Libby/BNSF Settlement.

"Libby/BNSF Settlement" means the settlement agreement dated as of April 20, 2012, among Settlement Counsel, BNSF, CNA, Arrowood and MCC (all as defined in such agreement) in the form approved in writing by the Parties and either (i) prior to the Effective Date, approved by the Committee and the FCR, or (ii) after the Effective Date, approved by the Trust.

"Libby/Grace Settlement" means the settlement set forth in the Term Sheet among W. R. Grace & Co., the Asbestos Claimants' Committee, and the Libby Claimants (as defined therein), executed on or about January 10, 2012, which provides, among other things, for termination of the Libby Medical Program as described therein.

"New Plan" has the meaning set forth in Section 4.03.

"Party" and "Parties" have the meanings set forth in the preamble.

"Person" means any individual, corporation, limited liability company, general partnership, limited partnership, venture, trust, business trust, unincorporated association, estate or other entity.

"Plan" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representative, and the Official Committee of Equity Security Holders As Modified Through December 23, 2010, including all exhibits and schedules thereto, as the same may be amended from time to time.

"Preliminary Injunction" means that certain Order Expanding the Preliminary Injunction to Include Actions Against Burlington Northern and Santa Fe Railroad dated April 11, 2008, and entered on April 14, 2008, in Grace v. Chakarian, et al., Adv. Pro. No. 01-771 (JKF) [Docket No. 498].

"Released Claims" has the meaning set forth in Section 3.01(a).

"Released Policies" has the meaning set forth in Section 3.01(b).

"Reorganized Debtors" has the meaning given to such term in the Plan.

"Settlement Payment" has the meaning set forth in Section 2.01.

"TDP" means the Asbestos PI Trust Distribution Procedures, as defined in the Plan.

"Trust" means the Asbestos PI Trust, as defined in the Plan.

**1.02    Construction.**

Whenever the context requires, the gender of all words used in this Agreement includes the masculine, feminine, and neuter. Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular. Unless otherwise specified herein, all references to Articles and Sections refer to articles and sections of this Agreement. Where any provision in this Agreement refers to action to be taken by any Person, or which such Person is prohibited from taking, such provision will be applicable whether such action is taken directly or indirectly by such Person, including actions taken by or on behalf of any Affiliate of such Person. The words "includes" or "including" shall mean "including without limitation."

**ARTICLE II**
**TRUST PAYMENT AND OBLIGATIONS**

**2.01    Payment by the Trust.**

Not later than thirty days after the last to occur of (i) the Effective Date, (ii) the Global Settlement Effective Date, and (iii) the Trust's receipt of the $250 million payment described in Section 1.1.47(a) of the Plan, the Trust shall pay to BNSF, by wire transfer of immediately available funds, the sum of Eight Million Dollars (US $8,000,000.00) (the "Settlement Payment"). The Settlement Payment shall be made to the account set forth on Exhibit B attached to this Agreement (or to such other account as BNSF instructs in a written notice delivered to the Trust). The Trust shall send written notice to BNSF in accordance with Section 7.09 that the Settlement Payment has been made; such notice shall also be sent to the person(s) listed on Exhibit C attached to this Agreement.

**2.02    Trust Bound.**

Upon the occurrence of the Effective Date, the Trust shall be bound by, and entitled to enforce, this Agreement as if a party hereto, without any further action of any Party, and the Approval Order shall so provide. This Agreement does not trigger the last sentence of the third paragraph of Section 5.6 of the TDP.

For Execution

## ARTICLE III
## RELEASES

### 3.01    Releases by BNSF.

(a)    Effective as of BNSF's receipt of the Settlement Payment, BNSF irrevocably releases, acquits and forever discharges each of the Debtors, the Asbestos Protected Parties (in their capacities as such) and the Trust from any and all present and future Claims, Demands, obligations and liabilities of any nature whatsoever (including any Claim for contractual or common law indemnity or contribution, or for attorneys fees, costs of litigation, defense costs or similar expenses) based upon, arising out of or arising with respect to (i) any Claim of any Libby/BNSF Claimant, or (ii) any other Claim, Demand, obligation or liability resolved or released pursuant to the Libby/BNSF Settlement (collectively, the "Released Claims"). For the avoidance of doubt, BNSF does not purport to release any Claim or Demand, if any, that any Libby/BNSF Claimant may have in his or her own right directly against the Debtors or the Trust.

(b)    Effective as of BNSF's receipt of the Settlement Payment, BNSF forever terminates, waives, releases and otherwise relinquishes: (i) any and all right, title or interest in or to any insurance policy or insurance coverage (including the proceeds thereof) under which any Insurance Contributor is an insured, including the insurance policies identified in Exhibit 5 or Exhibit 6 to the Plan (including the schedules thereto) (collectively, the "Released Policies"); and (ii) all past, present and future claims, demands, and causes of action of any nature whatsoever, including past, present or future claims or demands for defense costs and expenses (including attorneys fees), whether based in contract, tort, statutory or other legal or equitable theories of recovery, whether known or unknown, suspected or claimed, under, related to or based upon any of the Released Policies, against any insurer under a Released Policy (but only with respect to any such Released Policy). Notwithstanding the foregoing, the term "Released Policies" as used in this Agreement does not include the BNSF Policies.

### 3.02    Waiver under State Statutory Laws.

BNSF knowingly and intentionally waives any protection afforded to it by California Civil Code §1542, or any similar law of any other jurisdiction, which California Civil Code provision provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

BNSF agrees that this Agreement is intended to cover all claims or possible claims arising out of or related to those matters referenced or impliedly covered in the releases set forth in Section 3.01, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of California Civil Code §1542 (or any other similar applicable state or federal statute or common law principle) are hereby expressly waived. BNSF expressly acknowledges that it has been advised by its counsel of the contents and effect of any such provisions, and with

*Page 6 of 14*

For Execution

such knowledge it hereby expressly waives whatever benefits it may have pursuant to any such provisions.

### 3.03   Representations and Warranties regarding Released Claims.

BNSF represents and warrants to the other Parties that it is the sole and lawful owner of all right, title and interest in and to every Claim, demand, cause of action, objection and liability that it purports to release in <u>Section 3.01</u> of this Agreement and that it has not previously assigned or transferred, either by act or operation of law or otherwise, to any Person, any such Claim, demand, cause of action, objection or liability purported to be released by it under <u>Section 3.01</u> of this Agreement.

### ARTICLE IV
### BANKRUPTCY-RELATED OBLIGATIONS

### 4.01   Approval Order.

As soon as practicable after the Execution Date, the Debtors will file a motion (the "<u>Approval Motion</u>") seeking (i) entry of the Approval Order, and (ii) modification of the Preliminary Injunction only to the extent necessary to permit BNSF to execute, deliver and perform its obligations under this Agreement and the Libby/BNSF Settlement. The Parties agree to use their reasonable best efforts to obtain entry of the Approval Order, and to have the Approval Order become a Final Order, as soon as reasonably possible. BNSF, at its own expense, will cooperate with the Debtors in obtaining the Approval Order and having the Approval Order become a Final Order.

### 4.02   Withdrawal.

Upon the Global Settlement Effective Date, BNSF shall withdraw all of the Appeals, and all of its pending objections to the Plan (including all documents related to the implementation of the Plan), to confirmation of the Plan, to approval of the Insurance Settlements or to any of the Debtors', Committee's or FCR's other motions or applications filed in the Bankruptcy Case as of the Execution Date. BNSF further agrees not to object or oppose (or if filed, to withdraw any objection or opposition to) any other motion or application filed by the Debtors, the Committee or the FCR on or after the Execution Date that (i) relates to Claims resolved by virtue of this Agreement, and (ii) does not materially and adversely affect the settlement embodied in this Agreement.

### 4.03   No Plan Objections.

If the Plan is not confirmed, or if for any reason the Debtors, the Committee or the FCR propose a plan of reorganization that is not the Plan, BNSF agrees that it will not object to such new plan so long as such plan (i) provides for treatment of BNSF's Claims and Demands in a manner that is not materially and adversely different than the treatment of BNSF's Claims and Demands under the Plan, and (ii) does not materially and adversely affect the settlement embodied in this Agreement (apart from any delay in achieving confirmation and effectiveness of such plan). A plan of reorganization which satisfies the requirements of subparts (i) and (ii) of this <u>Section 4.03</u> is referred to herein as a "<u>New Plan</u>." BNSF shall be entitled to file any

For Execution

objection or opposition to any proposed plan of reorganization which is not the Plan or a New Plan.

### 4.04   Reservation of Rights.

BNSF reserves its rights, notwithstanding any other provision of this Agreement to object and be heard in the Bankruptcy Case in response to any opposition to entry or affirmation of the Approval Order.

## ARTICLE V
## TERMINATION OF AGREEMENT

### 5.01   Termination.

Either (i) the Debtors (with the consent of the Committee and the FCR), or after the Effective Date, the Trust or (ii) BNSF may, by written notice in accordance with Section 7.09, terminate this Agreement upon the occurrence of any of the following events:

(a)   The entry of an order by the Bankruptcy Court denying approval of this Agreement;

(b)   The entry of an order dismissing the Bankruptcy Case prior to the Effective Date of the Plan;

(c)   The entry of an order by the Bankruptcy Court converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

(d)   The Debtors, the Committee or the FCR propose a plan of reorganization that is not the Plan or a New Plan;

(e)   The Libby/BNSF Settlement is terminated for any reason;

(f)   The Libby/Grace Settlement is terminated for any reason; or

(g)   Any of the "Settlement Payments" as defined in the Libby/BNSF Settlement is reduced for any reason;

provided, however, that, prior to terminating this Agreement pursuant to §5.01(g), the Debtors (with the consent of the Committee and the FCR), or after the Effective Date, the Trust, and BNSF shall negotiate in good faith for a reasonable time to attempt to reach a resolution that does not require termination of this Agreement.

### 5.02   Effect of Termination.

Upon the termination of this Agreement, no Party shall have any further obligation hereunder; *provided however* that termination shall not relieve any Party then in breach of this Agreement from liability in respect of such breach; and *provided further* that this Section 5.02, Section 6.02 and Section 7.07 shall survive such termination.

For Execution

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES; SETTLEMENT

**6.01    Representations and Warranties of Each Party.**

Each Party hereby represents and warrants to each other Party that:

(a)    such Party has full power and authority to enter into this Agreement and to perform its obligations hereunder (subject to Bankruptcy Court approval as to the Debtors);

(b)    the execution, delivery and performance of this Agreement do not conflict with such Party's organizational documents or any other agreement or arrangement to which such Party is a party or by which it is or its assets are bound or any law, regulation or order to which such Party is subject;

(c)    the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of such Party, and by all other necessary actions of such Party; and

(d)    each individual executing this Agreement has full authority to act for and to bind the Party on whose behalf he or she is signing.

**6.02    Settlement.**

Each Party agrees and acknowledges that this Agreement was negotiated at arm's length and in good faith, and is a fair and reasonable compromise of each Party's disputed claims, and that the Settlement Payment constitutes fair consideration for the release of the Released Claims and the other promises and undertakings in this Agreement. The agreements and covenants given as consideration in this Agreement, as well as the execution of this Agreement, shall not be construed to be an admission of liability on the part of any Party with respect to the disputed matters set forth above nor shall this Agreement be deemed an admission or concession by any Party of liability, culpability, or wrongdoing. Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Except as necessary with respect to the Approval Motion, any evidence of the terms of this Agreement or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (i) an action or proceeding to enforce the terms of this Agreement, or (ii) as otherwise directed by any court of competent jurisdiction.

For Execution

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

### 7.01    Parties to Bear Own Costs and Attorneys' Fees.

Each Party will bear its own costs and expenses, including attorneys' fees, incurred by it in the negotiation of this Agreement and the transactions and other agreements contemplated hereby.

### 7.02    Entire Agreement.

This Agreement represents and contains the entire agreement and understanding among the Parties with respect to the subject matter of this Agreement, and supersedes any and all prior oral and written agreements and understandings relating thereto. No Person other than the Parties, the Committee, the FCR and the Trust shall have any legally enforceable rights or benefits under this Agreement. The Committee, the FCR, and the Trust are intended third-party beneficiaries of this Agreement. This Agreement may not be amended or modified, and no provision hereof may be waived, except by a written agreement (i) signed by each Party and (ii)(x) prior to the Effective Date, consented to by the Committee and the FCR, or (y) after the Effective Date, consented to by the Trust.

### 7.03    Advice of Counsel.

Each Party acknowledges and represents that it has sought and obtained the legal advice of its own chosen attorneys and that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by it.

### 7.04    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.

### 7.05    Binding Effect.

This Agreement will be binding on and inure to the benefit of the Parties and their respective Affiliates, heirs, legal representatives, successors and permitted assigns, including, after the Effective Date, the Reorganized Debtors, the Asbestos Protected Parties (in their capacities as such) and the Trust. This Agreement may not be assigned by any Party (i) prior to the Effective Date, without the prior written consent of the other Party, the Committee and the FCR, or (ii) after the Effective Date, without the prior written consent of the other Party and the Trust.

### 7.06    Governing Law.

This Agreement is governed by and will be construed in accordance with the laws of the State of Delaware, excluding any conflict-of-laws rule or principle (whether under the laws of Delaware or any other jurisdiction) that might refer the governance or the construction of this Agreement to the law of another jurisdiction.

*Page 10 of 14*

For Execution

**7.07    Submission to Jurisdiction.**

(a)    The Parties agree to submit all disputes relating to this Agreement to the Bankruptcy Court.

(b)    If the Bankruptcy Court refuses to exercise jurisdiction over any such dispute, the Parties may submit such dispute to any court of competent jurisdiction and, in such case, the Parties hereby irrevocably submit to the non-exclusive jurisdiction of any county, federal or state court located within the State of Delaware over any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby and each Party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action or proceeding related thereto may be heard and determined in such courts.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

**7.08    Construction.**

This Agreement was negotiated among the Parties hereto at arm's length and in good faith, with each Party receiving advice from independent legal counsel.  It is the intent of the Parties that no part of this Agreement be construed against any of the Parties hereto because of the identity of the drafter.

**7.09    Notices.**

All notices, demands, or other communications that any Party desires or is required to give shall be given in writing and shall be deemed to have been given if hand delivered, faxed, emailed (as a .pdf attachment), or if mailed by United States first-class mail, postage prepaid, to the Persons, and at the addresses, noted below, or such other address as any such Person may designate in writing from time to time:

If to the Debtors:                        W. R. Grace & Co.
                                          7500 Grace Drive
                                          Columbia, MD 21044
                                          Attn: Mark A. Shelnitz
                                                General Counsel
                                          Telephone:  (410) 531-4000
                                          Facsimile:  (410) 531-4545

*Page 11 of 14*

For Execution

With a copy to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Adam Paul
Telephone: (312) 861-3120
Facsimile: (312) 862-2200

and

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Attn: Laura Davis Jones/James E. O'Neill
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

If to BNSF:

James Roberts
Robert Attridge
2500 Lou Menk Drive, AOB 3
Fort Worth, TX 76131
Telephone: 817-352-2330
Robert.Attridge@bnsf.com
james.roberts3@bnsf.com

Edward C. Toole, Jr.
Linda J. Casey
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
caseyl@pepperlaw.com
toolee@pepperlaw.com

Robert J. Phillips
Phillips Haffey P.C.
P.O. Box 8569
Missoula, Montana 59807
Telephone: (406) 721-7880
rjphillips@phillipsmontana.com

For Execution

If to the Committee:                    Caplin & Drysdale, Chartered
                                        One Thomas Circle, NW, Suite 1100
                                        Washington, DC  20005
                                        Attn:  Peter Lockwood
                                        Telephone:  (202) 862-5000
                                        Facsimile:  (202) 862-3301

                                        and

                                        Caplin & Drysdale, Chartered
                                        375 Park Avenue, 35th Floor
                                        New York, NY  10152
                                        Attn:  Elihu Inselbuch
                                        Telephone:  (212) 319-7125
                                        Facsimile:  (212) 644-6755

If to the FCR :                         David T. Austern
                                        3110 Fairview Park Drive
                                        Suite 200
                                        Falls Church, VA 22042-0683
                                        Telephone:  (703) 205-0835
                                        Facsimile:  (703) 205-6249

With a copy to:                         Orrick, Herrington & Sutcliffe LLP
                                        1152 15th Street, N.W.
                                        Washington, D.C. 20005-1706
                                        Attn:  Roger Frankel
                                              Richard H. Wyron
                                        Telephone:  (202) 339-8400
                                        Facsimile:  (202) 339-8500

### 7.10    Further Assurances.

In connection with this Agreement and the transactions contemplated thereby, each Party will execute and deliver any additional documents and instruments and perform any additional acts that may be reasonably necessary or appropriate to effectuate and perform the provisions of this Agreement and such transactions.

### 7.11    Consent by the Committee and the FCR.

The Committee and the FCR consent to this Agreement, as evidenced by the signatures of their counsel below.

*Page 13 of 14*

For Execution

IN WITNESS WHEREOF, the undersigned Parties have executed this Settlement Agreement as of the Execution Date.

**THE DEBTORS (conditioned upon the entry of the Approval Order):**

By: _____

Name: _____

Title: _____

**BNSF (as defined in this Agreement):**

By: _____

Name: _____

Title: _____

Consented to:

The Committee (as defined in this Agreement)

By: _____
        Counsel to the Committee

The FCR (as defined in this Agreement)

By: _____
        Counsel to the FCR

*Page 14 of 14*

For Execution

**Exhibit A**

**Form of Approval Order**

For Execution

## Exhibit B

**BNSF's Wiring Instructions**

Phillips Haffey  P.C. Trust Account
Routing Number 092901683
Account Number 1400985105

For Execution

**Exhibit C**

**Additional Parties to Receive Notice of the Settlement Payment under Section 2.01**

McGarvey, Heberling, Sullivan
& McGarvey, P.C.
745 South Main
Kalispell, MO 59904-5399
Attn: Jon L. Heberling
Telephone: (406) 752-5566
Facsimile: (406) 752-7124
Email: jheberling@mcgarveylaw.com

Lewis, Slovak, Kovacich & Marr, P.C.
725 Third Avenue North
P.O. Box 2325
Great Falls, MO 59403
Attn: Tom L. Lewis
Telephone: (406) 761-5595
Facsimile: (406) 761-5805
Email: tom@lsklaw.net

Murtha Cullina LLP
99 High Street
Boston, MA 02110
Attn: Daniel C. Cohn
Telephone: (617) 457-4155
Facsimile: (617) 210-7058
Email: dcohn@murthalaw.com

## EXHIBIT C

**Libby Notice of Withdrawal**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| W. R. GRACE & CO., et al., | ) |
| | ) Civil Action Nos. 11-530 (Consolidated into lead Case |
| | ) No. 11-199 (RLB)); 11-208 (RLB); and 09-766 (RLB) |
| Debtors. | ) |
| | ) Bankruptcy Case No. 01-01139 (JKF) |
| | ) |

### LIBBY CLAIMANTS' WITHDRAWAL OF ALL OBJECTIONS AND APPEALS CONCERNING THE JOINT PLAN, THE GRACE-CNA SETTLEMENT, AND THE GRACE-ARROWOOD SETTLEMENT

Pursuant to section II.A. of the *Term Sheet among W. R. Grace & Co., the Asbestos Claimants' Committee, and the Libby Claimants* (the "Libby Settlement Term Sheet"), the Libby Claimants hereby withdraw their appeals of (i) the Bankruptcy Court's January 31, 2011 Order and Memorandum Opinion confirming the Joint Plan of Reorganization (the "Plan"), as clarified on February 15, 2011 [Dkt. Nos. 26154, 26155, 26289], docketed in the District Court as Case No. 11-530 (RLB) (consolidated into lead Case No. 11-199 (RLB)); (ii) the Bankruptcy Court's January 22, 2011 order approving Grace's insurance settlement with the CNA Companies, *et al.* [Dkt No. 26106] ("CNA"), docketed in the District Court as Case No. 11-208 (RLB); and (iii) the Bankruptcy Court's August 19, 2009 order approving Grace's insurance settlement with Arrowood Indemnity Company, *et al.* [Dkt. No. 22859] ("Arrowood"), docketed in the District Court as Case No. 09-766 (RLB); and all other pending appeals and objections relating to the Plan, Plan-related documents, confirmation of the Plan, and Grace's insurance settlements with CNA and Arrowood.

In accordance with the terms and conditions of the Libby Settlement Term Sheet, the withdrawal of the appeals and objections provided for herein shall be with prejudice and without costs.

Dated: May _____, 2012
       Wilmington, Delaware

Respectfully submitted,

LANDIS RATH & COBB LLP

_____

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400

and

Daniel C. Cohn
MURTHA CULLINA LLP
99 High Street, 20th Floor
Boston, Massachusetts 02110
Telephone (617) 457-4000

## EXHIBIT D

**BNSF Notice of Withdrawal**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| W. R. GRACE & CO., et al., | ) |
| | ) Civil Action Nos. 11-531(RLB) |
| | ) (Consolidated into lead Case No. 11-199 (RLB)); |
| | ) 11-207 (RLB); and 09-763 (RLB) |
| Debtors. | ) |
| | ) Bankruptcy Case No. 01-01139 (JKF) |
| | ) |

**BNSF RAILWAY COMPANY'S WITHDRAWAL OF ALL OBJECTIONS AND
APPEALS CONCERNING THE JOINT PLAN, THE GRACE-CNA SETTLEMENT,
AND THE GRACE-ARROWOOD SETTLEMENT**

Pursuant to section 4.02 of the *Settlement Agreement between BNSF and the Debtors* (the "BNSF Settlement"), BNSF Railway Company hereby withdraws its appeals of (i) the Bankruptcy Court's January 31, 2011 Order and Memorandum Opinion confirming the Joint Plan of Reorganization (the "Plan"), as clarified on February 15, 2011 [Dkt. Nos. 26154, 26155, 26289], docketed in the District Court as Case No. 11-531 (RLB) (consolidated into lead Case No. 11-199 (RLB)); (ii) the Bankruptcy Court's January 22, 2011 order approving the Debtors' insurance settlement with the CNA Companies, *et al.* [Dkt No. 26106] ("CNA"), docketed in the District Court as Case No. 11-207 (RLB); and (iii) the Bankruptcy Court's August 19, 2009 order approving the Debtors' insurance settlement with Arrowood Indemnity Company, *et al.* [Dkt. No. 22859] ("Arrowood"), docketed in the District Court as Case No. 09-763 (RLB); and all other pending appeals and objections relating to the Plan, Plan-related documents, confirmation of the Plan, the Debtors' insurance settlements with CNA and Arrowood, and any motions or applications filed by the Debtors, the Asbestos Claimants' Committee, or the Asbestos Personal Injury Future Claimants' Representative.

The withdrawal of the appeals and objections provided for herein shall be with prejudice and without costs.

Dated: May _____, 2012                    Respectfully submitted,

_____

PEPPER HAMILTON LLP
Edward C. Toole, Jr.
Linda J. Casey
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Tel: (215) 981-4000
Fax: (215) 981-4750

and

James C. Carignan (DE No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6500

*Counsel for Appellant BNSF Railway Company*

## EXHIBIT B

**Blackline of Revised Order against Original Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | [____], 2012 Hearing Agenda Item No. [__] |
| | ) | Objection Deadline: [____], 2012 by 4:00 p.m. |
| | ) | Re: Docket Nos. [____] |

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND
RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING (A) THE SETTLEMENT BETWEEN W. R. GRACE & CO. AND THE
LIBBY CLAIMANTS, (B) THE TRANSITION OF THE LIBBY MEDICAL PROGRAM,
AND (C) THE SETTLEMENT BETWEEN W. R. GRACE & CO.
AND BNSF RAILWAY COMPANY**

---

[1] THE DEBTORS CONSIST OF THE FOLLOWING 62 ENTITIES: W. R. GRACE & CO. (F/K/A GRACE SPECIALTY CHEMICALS, INC.), W. R. GRACE & CO.-CONN., A-1 BIT & TOOL CO., INC., ALEWIFE BOSTON LTD., ALEWIFE LAND CORPORATION, AMICON, INC., CB BIOMEDICAL, INC. (F/K/A CIRCE BIOMEDICAL, INC.), CCHP, INC., COALGRACE, INC., COALGRACE II, INC., CREATIVE FOOD 'N FUN COMPANY, DAREX PUERTO RICO, INC., DEL TACO RESTAURANTS, INC., DEWEY AND ALMY, LLC (F/K/A DEWEY AND ALMY COMPANY), ECARG, INC., FIVE ALEWIFE BOSTON LTD., G C LIMITED PARTNERS I, INC. (F/K/A GRACE COCOA LIMITED PARTNERS I, INC.), G C MANAGEMENT, INC. (F/K/A GRACE COCOA MANAGEMENT, INC.), GEC MANAGEMENT CORPORATION, GN HOLDINGS, INC., GPC THOMASVILLE CORP., GLOUCESTER NEW COMMUNITIES COMPANY, INC., GRACE A-B INC., GRACE A-B II INC., GRACE CHEMICAL COMPANY OF CUBA, GRACE CULINARY SYSTEMS, INC., GRACE DRILLING COMPANY, GRACE ENERGY CORPORATION, GRACE ENVIRONMENTAL, INC., GRACE EUROPE, INC., GRACE H-G INC., GRACE H-G II INC., GRACE HOTEL SERVICES CORPORATION, GRACE INTERNATIONAL HOLDINGS, INC. (F/K/A DEARBORN INTERNATIONAL HOLDINGS, INC.), GRACE OFFSHORE COMPANY, GRACE PAR CORPORATION, GRACE PETROLEUM LIBYA INCORPORATED, GRACE TARPON INVESTORS, INC., GRACE VENTURES CORP., GRACE WASHINGTON, INC., W. R. GRACE CAPITAL CORPORATION, W. R. GRACE LAND CORPORATION, GRACOAL, INC., GRACOAL II, INC., GUANICA-CARIBE LAND DEVELOPMENT CORPORATION, HANOVER SQUARE CORPORATION, HOMCO INTERNATIONAL, INC., KOOTENAI DEVELOPMENT COMPANY, L B REALTY, INC., LITIGATION MANAGEMENT, INC. (F/K/A GHSC HOLDING, INC., GRACE JVH, INC., ASBESTOS MANAGEMENT, INC.), MONOLITH ENTERPRISES, INCORPORATED, MONROE STREET, INC., MRA HOLDINGS CORP. (F/K/A NESTOR-BNA HOLDINGS CORPORATION), MRA INTERMEDCO, INC. (F/K/A NESTOR-BNA, INC.), MRA STAFFING SYSTEMS, INC. (F/K/A BRITISH NURSING ASSOCIATION, INC.), REMEDIUM GROUP, INC. (F/K/A ENVIRONMENTAL LIABILITY MANAGEMENT, INC., E&C LIQUIDATING CORP., EMERSON & CUMING, INC.), SOUTHERN OIL, RESIN & FIBERGLASS, INC., WATER STREET CORPORATION, AXIAL BASIN RANCH COMPANY, CC PARTNERS (F/K/A CROSS COUNTRY STAFFING), HAYDEN-GULCH WEST COAL COMPANY, AND H-G COAL COMPANY.

This matter having come before the Court on the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion") requesting that the Court issue an Order approving (a) the settlement by and between W. R. Grace & Co., on its own behalf and on behalf its debtor affiliates (collectively, "Grace"), the Asbestos PI Committee,[2] and the Libby Claimants, as memorialized by that certain term sheet (the "Libby Settlement Term Sheet"), attached hereto as Exhibit A, (b) the transition of the Libby Medical Program, and (c) the settlement agreement by and between Grace and BNSF Railway Company ("BNSF"), attached hereto as Exhibit B (the "BNSF Settlement" and together with the Libby Settlement Term Sheet, the "Settlements"); and the Court having conducted a hearing on the Motion in open court on [_____], 2012 (the "Hearing"); and having noted the appearances of all interested parties and all responses and objections to the Motion in the record of the Hearing; and after due deliberation and sufficient cause appearing for the entry of this Order (the "Approval Order"); the Court hereby makes the following:

---

[2]     Capitalized terms used but not defined herein shall having the meanings ascribed to them in the Motion or, if not defined in the Motion, in the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as modified through December 23, 2010 [Docket No. 26368] (the "Joint Plan").

2

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction, Final Order, and Statutory Predicates

A.      The findings and conclusions set forth herein and on the record at the Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.      This Approval Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

E.      The statutory predicates for the relief sought in the Motion include sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

### Notice of the Motion

F.      The Debtors have provided due and adequate notice of the Motion and the subject matter thereof to all parties in interest, including, among others, the LMP Beneficiaries at their last known address according to the Debtors' books and records, and through publication notice pursuant to Bankruptcy Rules 2002 and 6004. Notice was sufficient and proper and complied with all applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Local Rules of this Court. No additional notice of the Motion or this Approval Order is required. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested parties and entities. This Court hereby further finds that

3

notice to an attorney of record for the holder of a Claim constitutes notice to such holder for purposes of notice of the Motion, the Hearing, the Settlements and this Approval Order.

G.    To the extent that any Person (i) either (a) received proper notice of these matters (or is represented by a Person that received such notice) or (b) having had notice of these Chapter 11 Cases, elected not to request notices regarding these Chapter 11 Cases, and (ii) failed to object to the Motion or the entry of this Approval Order, then such Persons hereby shall have no right to file or prosecute an appeal of this Approval Order.

### The Libby Medical Program

H.    The Libby Medical Program first became effective on April 3, 2000.  The Debtors voluntarily created the Libby Medical Program prior to, and independent of, the Chapter 11 Cases. Since then the Debtors have voluntarily maintained the Libby Medical Program.  Through the Libby Medical Program, the Debtors have provided certain health care benefits related to the treatment of asbestos-related conditions to eligible individuals who enrolled in the program.  The Libby Medical Program provided that certain individuals would be eligible for coverage, including former employees of the Debtors who worked in the Debtors' mine operations in Libby, Montana, and certain other individuals who reside (or formerly resided) in the area surrounding the mine.

I.    The Debtors' estates currently incur more than $2,000,000 annually in health care expenses for the Libby Medical Program.  If maintained in its current form, the cost to the Debtors and their estates would be substantial.

### Transfer of the Libby Medical Program

J.    The Debtors have the right to terminate the Libby Medical Program, including its transfer to a third party.  No consents or approvals, other than this Approval Order, are required for the Debtors to transition the Libby Medical Program, as provided in the Libby Settlement Term Sheet.  Transition of the Libby Medical Program by the Debtors does not conflict, contravene, or

4

cause a breach, default, or violation of any law, rule, regulation, contractual obligation, or organizational or formation document.

      K.     Transition of the Libby Medical Program under the circumstances and conditions set forth in the Libby Settlement Term Sheet is in the best interests of the Debtors' bankruptcy estates, their creditors, the Libby Claimants and other stakeholders and parties-in-interest.  The Debtors have demonstrated (i) good, sufficient and sound business purpose and justification, and (ii) compelling circumstances for such transition of the Libby Medical Program pursuant to section 363(b) of the Bankruptcy Code.

5

## The Libby Settlement

L.    The Debtors have the right to enter into the Libby Settlement Term Sheet and perform all of their obligations thereunder.  No consents or approvals, other than this Approval Order, are required for the Debtors to perform all of their obligations thereunder.  Consummation of the Libby Settlement Term Sheet by the Debtors does not conflict, contravene, or cause a breach, default, or violation of any law, rule, regulation, contractual obligation, or organizational or formation document.

M.    Nothing in the Preliminary Injunction Order impairs the Debtors' or the Libby Claimants' authority to enter into the Libby Settlement Term Sheet or this Court from approving the Libby Settlement Term Sheet, as provided herein.  Further, nothing in the Preliminary Injunction Order impairs the ability of BNSF to enter into the related settlements with the Libby Claimants contemplated in the Libby-BNSF Settlement, and, if so, the Preliminary Injunction Order is hereby modified and amended to the extent, but only to the extent, necessary to allow the parties to the Libby-BNSF Settlement to enter into and consummate the settlement set forth therein.

N.    Entry into the Libby Settlement Term Sheet is in the best interests of the Debtors' bankruptcy estates, their creditors, the Libby Claimants, the LMP Beneficiaries, and other stakeholders and parties-in-interest.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for entering into the Libby Settlement Term Sheet.  The Libby Claimants would not have agreed to (i) the Libby Settlement Term Sheet, (ii) any of the compromises and settlements contained therein, or (iii) withdraw their Appeals and Objections without the consideration provided in the Libby Settlement Term Sheet.

O.    The compromises and settlements memorialized in the Libby Settlement Term Sheet are the product of arm's-length, good faith negotiations by and between Grace and the Libby

6

Claimants and are not the product of fraud or collusion.  The Libby Settlement Term Sheet meets the standard established by the United States Court of Appeals for the Third Circuit for approval of settlements, which requires consideration of the following factors: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors.

### The BNSF Settlement

P.    The Debtors have the right to enter into the BNSF Settlement and perform all of their obligations thereunder.  No consents or approvals, other than this Approval Order, are required for the Debtors to perform all of their obligations thereunder.  Consummation of the BNSF Settlement by the Debtors does not conflict, contravene, or cause a breach, default, or violation of any law, rule, regulation, contractual obligation, or organizational or formation document.

Q.    Nothing in the Preliminary Injunction Order, which, pursuant to section 8.7.1 of the Plan, ceases to exist once the injunctions set forth in the Plan become effective, impairs the Debtors' or BSNF's authority to enter into the BNSF Settlement or this Court from approving the BNSF Settlement, as provided herein.

R.    Entry into the BNSF Settlement is in the best interests of the Debtors' bankruptcy estates, their creditors, the Libby Claimants, and other stakeholders and parties-in-interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entering into the BNSF Settlement.  BNSF would not have agreed to (i) the BNSF Settlement, (ii) any of the compromises and settlements contained therein, or (iii) withdraw its Appeals and Objections without the consideration provided in the BNSF Settlement.

S.    The compromises and settlements memorialized in the BNSF Settlement are the product of arm's-length, good faith negotiations by and between Grace, BNSF, the Asbestos PI

7

Committee and the Asbestos PI FCR, and are not the product of fraud or collusion. The BNSF

Settlement meets the standard established by the United States Court of Appeals for the Third

Circuit for approval of settlements.

### Effect on Joint Plan

    T.    The settlement set forth in the Libby Settlement Term Sheet shall be independent of

the Joint Plan, shall have no effect on the Joint Plan, and shall have no effect on distributions under

the Joint Plan.

### Retention of Jurisdiction

    U.    It is necessary and appropriate for the Court to retain jurisdiction, among other

things, to interpret and enforce the terms and provisions of this Approval Order and the

Settlements, and to adjudicate, if necessary, any and all disputes arising under or relating in any

way to, or affecting any of the transactions contemplated under, the Settlements, except as

otherwise expressly provided in the Libby Settlement Term Sheet.

    For all of the foregoing reasons and after due deliberation, pursuant to sections 105(a), 363,

1107, and 1108 of Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9014, and 9019(a), it is:

**ORDERED, ADJUDGED, AND DECREED THAT:**

    1.    The Motion is GRANTED and APPROVED in all respects.

    2.    For the reasons set forth herein and on the record at the hearing, all objections to the

Motion and the relief requested therein or granted in this Approval Order that have not been

withdrawn, waived or settled, and all reservations of rights included in such objections, are denied

and overruled on the merits with prejudice.

### Transition of the Libby Medical Program

    3.    On the Libby Settlement Effective Date, all rights and duties whatsoever of Grace

and Health Network of America, Inc. ("HNA") (including any affiliates, successors and assigns of

such parties) under the Libby Medical Program from and after the Libby Settlement Effective Date shall be transferred to the LMP Trustee. Grace shall remain responsible for any expenses (including covered medical expenses of the LMP Beneficiaries) of the Libby Medical Program incurred prior to the Libby Settlement Effective Date, and such expenses shall not be assumed by the LMP Trustee. Except as set forth in the preceding sentence, Grace, upon payment of the Trust Funding Amount into the LMP Trust, shall have no further liabilities, obligations, duties, or role whatsoever in the Libby Medical Program, shall have no further obligation to the LMP Trust, and shall have no responsibility or liability for any obligations that the LMP Trust might choose to assume or undertake. Likewise, the LMP Trust shall have no liabilities, obligations, duties, or role whatsoever in Grace's terminated Libby Medical Program, shall have no obligation to Grace in respect of such program (or otherwise), and shall have sole responsibility and liability for such obligations as the LMP Trust might choose to assume or undertake. Subject to the remainder of this paragraph, nothing in this Order shall be construed to require the Libby Medical Program or the LMP Trustee to assume or undertake any contractual obligation or to approve, allow, pay, or commit to pay the medical expenses or other claims of any particular claimant or group of claimants. Such matters shall be governed, prior to the Libby Settlement Effective date, solely by the terms of the Libby Medical Program, as it has been and may be amended from time to time. Such matters shall be governed, from and after the Libby Settlement Effective Date, solely by the terms of the LMP Trust, as it may be amended from time to time.

4.    The Debtors shall be, and hereby are, authorized to transition the Libby Medical Program to the LMP Trust, and the Debtors are authorized to and shall pay the Trust Funding Amount to the LMP Trust following the establishment of the LMP Trust on the Libby Settlement Effective Date.

K&E 21271708.2521271708.26

5.      Subject to the preceding paragraph, effective upon the occurrence of the Libby Settlement Effective Date, all persons and entities, including any successors, assigns or designees of such persons or entities, shall be, and hereby are, forever banned, estopped, prohibited and permanently enjoined from asserting, commencing or continuing in any manner any claim, action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Debtors, HNA, their successors and assigns, and their property, with respect to any claims arising under, out of, in connection with or in any way relating to the Libby Medical Program, whether or not such person or entities were "Eligible Individuals" within the meaning of the Libby Medical Program in the past or in the future, or were or were not enrolled in, or receiving benefits from, the Libby Medical Program in the past; **provided that with respect to any and all claims of the State of Montana arising out of payments or care from the Libby Medical Program through and including the Libby Settlement Effective Date are reserved against the Debtors, and any and all claims of the State of Montana arising out of payments or care from the LMP Trust from and after the Libby Settlement Effective Date are reserved against the LMP Trust, and all parties in interest reserve all rights, defenses, and arguments on appeal with respect to such claims and to any other claims, causes of action, or requests by the State of Montana, including but not limited to contribution, indemnification, personal injury, and setoff**.

6.      In accordance with Health Insurance Portability and Accountability Act (HIPAA) Privacy Regulations, 45 CFR § 164.512, it is hereby ordered that the Debtors and HNA, the third party administrator for the Libby Medical Program, are authorized to produce the Libby Medical Program's medical and claims records concerning any and all treatment received by the Libby Medical Program's members and subsequent payment or non-payment of providers.   Libby

10

Medical Program members' medical and claim records are confidential pursuant to HIPAA and,

therefore, the disclosure will be conducted pursuant to the following terms, restrictions and

conditions:

   (a) Information contained in Libby Medical Program members' medical and
claim records shall be disclosed only to counsel of record in this action, the Court
appointed Trustee for the Libby Medical Program, or only to individuals certified by such
counsel as employed by or assisting counsel in this action.

   (b) Any such documents or information shall be used only for the purpose of
administration of the Libby Medical Program and the LMP Trust.

   (c) The production of such documents or information concerning the medical
records of the Libby Medical Program shall not constitute a waiver of any privilege or
other claim or right of withholding or confidentiality which a member may have.

### The Libby Settlement

7. The Libby Settlement Term Sheet, a copy of which is attached hereto as <u>Exhibit A</u>,

and all terms therein, are approved in their entirety.

8. The Debtors shall be, and hereby are, authorized to enter into the Libby Settlement

Term Sheet, and are authorized to execute, deliver, implement and fully perform any and all

obligations, to execute any instruments, documents and papers, and to take any and all actions

reasonably necessary or appropriate to consummate the Libby Settlement Term Sheet and perform

any and all obligations contemplated therein.

9. The Libby Claimants shall withdraw with prejudice and without costs, all of their

Appeals, and all of their pending Objections to the Joint Plan (including all documents related to

implementation of the Joint Plan), to confirmation of the Joint Plan, to approval of the Grace-CNA

Settlement, and to approval of the Grace-Arrowood Settlement, on the Libby Settlement Effective

Date and in accordance with the terms of the Libby Settlement Term Sheet, utilizing the form

attached hereto as <u>Exhibit C</u>.

10.     Notwithstanding the terms of the Libby Settlement Term Sheet, (a) occurrence of the Global Settlement Effective Date (as defined in the BNSF Settlement Agreement) shall be an additional condition to occurrence of the Libby Settlement Effective Date, and (b) Grace may, in its sole discretion (but provided that the Libby Claimants, through their counsel, assent), waive such condition and any and all other conditions to the Libby Settlement Effective Date so as to accelerate its occurrence.

11.     No disbursement of the Trust Funding Amount by the LMP Trust (or by the Libby Medical Program during the period of its existence) shall be considered by the Asbestos PI Trust for any purpose whatsoever, including to determine, whether positively or negatively, directly or indirectly, the availability, amount or timing of any claimant's recovery from the Asbestos PI Trust.

### The BNSF Settlement

12.     The BNSF Settlement Agreement, a copy of which is attached hereto as Exhibit B, and all terms therein, are approved in their entirety.

13.     The Debtors shall be, and hereby are, authorized to enter into the BNSF Settlement Agreement, and are authorized to execute, deliver, implement and fully perform any and all obligations, to execute any instruments, documents and papers, and to take any and all actions reasonably necessary or appropriate to consummate the BNSF Settlement Agreement and perform any and all obligations contemplated therein.

14.     Not later than thirty days after the last to occur of (a) the Effective Date of the Joint Plan, (b) the Global Settlement Effective Date, and (c) the Asbestos PI Trust's receipt of the $250 million payment described in section 1.1.47 of the Joint Plan, the Asbestos PI Trust shall pay to BNSF, by wire transfer of immediately available funds, the sum of $8,000,000 (the "BNSF Settlement Amount"), in accordance with the terms of the BNSF Settlement.

K&E 21271708.2521271708.26

15.     BNSF shall withdraw all of its Appeals, and all of its pending Objections to the Joint Plan (including all documents related to implementation of the Joint Plan), to confirmation of the Joint Plan, to the Grace-CNA Settlement, to the Grace-Arrowood Settlement, and to any of the motions or applications filed by the Debtors, Asbestos PI Committee, or the Asbestos PI FCR pending in these Chapter 11 Cases, in accordance with the terms of the BNSF Settlement Agreement, utilizing the form attached hereto as Exhibit D.

16.     Effective as of BNSF's receipt of the BNSF Settlement Amount, BNSF will grant the releases set forth in Article III of the BNSF Settlement Agreement.

17.     Upon the Effective Date of the Joint Plan, the Asbestos PI Trust shall be bound by, and entitled to enforce, the BNSF Settlement as if a party thereto, without any further action by the Debtors, BNSF, or the Court.

18.     The BNSF Settlement Agreement does not trigger the last sentence of the third paragraph of Section 5.6 of the *WRG Asbestos PI Trust Distribution Procedures* (included as Exhibit 4 to the Plan).

## Miscellaneous

19.     This Approval Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(h) or any other Bankruptcy Rule.

20.     This Order is and shall be binding in all respects upon the Debtors and their estates, creditors, officers, directors, advisors, members, managers and shareholders and all other interested parties, and their respective successors and assigns, and each of the Libby Claimants and LMP Beneficiaries, and BNSF, and their officers, directors, advisors, members, managers and shareholders and their respective successors and assigns.

13

21.    The settlement set forth in the Libby Settlement Term Sheet shall be independent of the Joint Plan, shall have no effect on the Joint Plan, and shall have no effect on distributions under the Joint Plan.

22.    The failure specifically to include or refer to any particular term or provision of the Settlements in this Approval Order, shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Settlements be authorized and approved in their entirety.

23.    This Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Approval Order subject to the terms of the Settlements.

Dated: _____, 2012

_____
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

14

**EXHIBIT A**

**Libby Settlement Term Sheet**

**<u>EXHIBIT B</u>**

**<u>BNSF Settlement</u>**

## EXHIBIT C

**Libby Notice of Withdrawal**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| W. R. GRACE & CO., et al., | ) |
| | ) Civil Action Nos. 11-530 (Consolidated into lead Case |
| | ) No. 11-199 (RLB)); 11-208 (RLB); and 09-766 (RLB) |
| Debtors. | ) |
| | ) Bankruptcy Case No. 01-01139 (JKF) |
| | ) |

### LIBBY CLAIMANTS' WITHDRAWAL OF ALL OBJECTIONS AND APPEALS CONCERNING THE JOINT PLAN, THE GRACE-CNA SETTLEMENT, AND THE GRACE-ARROWOOD SETTLEMENT

Pursuant to section II.A. of the *Term Sheet among W. R. Grace & Co., the Asbestos Claimants' Committee, and the Libby Claimants* (the "Libby Settlement Term Sheet"), the Libby Claimants hereby withdraw their appeals of (i) the Bankruptcy Court's January 31, 2011 Order and Memorandum Opinion confirming the Joint Plan of Reorganization (the "Plan"), as clarified on February 15, 2011 [Dkt. Nos. 26154, 26155, 26289], docketed in the District Court as Case No. 11-530 (RLB) (consolidated into lead Case No. 11-199 (RLB)); (ii) the Bankruptcy Court's January 22, 2011 order approving Grace's insurance settlement with the CNA Companies, *et al.* [Dkt No. 26106] ("CNA"), docketed in the District Court as Case No. 11-208 (RLB); and (iii) the Bankruptcy Court's August 19, 2009 order approving Grace's insurance settlement with Arrowood Indemnity Company, *et al.* [Dkt. No. 22859] ("Arrowood"), docketed in the District Court as Case No. 09-766 (RLB); and all other pending appeals and objections relating to the Plan, Plan-related documents, confirmation of the Plan, and Grace's insurance settlements with CNA and Arrowood.

In accordance with the terms and conditions of the Libby Settlement Term Sheet, the withdrawal of the appeals and objections provided for herein shall be with prejudice and without costs.

Dated: May ____, 2012          Respectfully submitted,
       Wilmington, Delaware

                                          LANDIS RATH & COBB LLP

                                        _____

                                        Adam G. Landis (No. 3407)
                                        Kerri K. Mumford (No. 4186)
                                        919 Market Street, Suite 1800
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 467-4400

                                        and

                                        Daniel C. Cohn
                                        MURTHA CULLINA LLP
                                        99 High Street, 20th Floor
                                        Boston, Massachusetts 02110
                                        Telephone (617) 457-4000

## EXHIBIT D

**BNSF Notice of Withdrawal**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| W. R. GRACE & CO., <u>et al.</u>, | ) |
|  | ) Civil Action Nos. 11-531(RLB) |
|  | ) (Consolidated into lead Case No. 11-199 (RLB)); |
|  | ) 11-207 (RLB); and 09-763 (RLB) |
| Debtors. | ) |
|  | ) Bankruptcy Case No. 01-01139 (JKF) |
|  | ) |

## BNSF RAILWAY COMPANY'S WITHDRAWAL OF ALL OBJECTIONS AND APPEALS CONCERNING THE JOINT PLAN, THE GRACE-CNA SETTLEMENT, <u>AND THE GRACE-ARROWOOD SETTLEMENT</u>

Pursuant to section 4.02 of the *Settlement Agreement between BNSF and the Debtors* (the "BNSF Settlement"), BNSF Railway Company hereby withdraws its appeals of (i) the Bankruptcy Court's January 31, 2011 Order and Memorandum Opinion confirming the Joint Plan of Reorganization (the "Plan"), as clarified on February 15, 2011 [Dkt. Nos. 26154, 26155, 26289], docketed in the District Court as Case No. 11-531 (RLB) (consolidated into lead Case No. 11-199 (RLB)); (ii) the Bankruptcy Court's January 22, 2011 order approving the Debtors' insurance settlement with the CNA Companies, *et al.* [Dkt No. 26106] ("CNA"), docketed in the District Court as Case No. 11-207 (RLB); and (iii) the Bankruptcy Court's August 19, 2009 order approving the Debtors' insurance settlement with Arrowood Indemnity Company, *et al.* [Dkt. No. 22859] ("Arrowood"), docketed in the District Court as Case No. 09-763 (RLB); and all other pending appeals and objections relating to the Plan, Plan-related documents, confirmation of the Plan, the Debtors' insurance settlements with CNA and Arrowood, and any motions or applications filed by the Debtors, the Asbestos Claimants' Committee, or the Asbestos Personal Injury Future Claimants' Representative.

The withdrawal of the appeals and objections provided for herein shall be with prejudice and without costs.

Dated: May ____, 2012                    Respectfully submitted,

_____

PEPPER HAMILTON LLP
Edward C. Toole, Jr.
Linda J. Casey
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
Tel: (215) 981-4000
Fax: (215) 981-4750

and

James C. Carignan (DE No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6500

*Counsel for Appellant BNSF Railway Company*