IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Docket Nos.: 28779 and 28885** & 28992 |

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING (A) THE SETTLEMENT BETWEEN W. R. GRACE & CO. AND THE LIBBY CLAIMANTS, (B) THE TRANSITION OF THE LIBBY MEDICAL PROGRAM, AND (C) THE SETTLEMENT BETWEEN W. R. GRACE & CO. AND BNSF RAILWAY COMPANY**

This matter having come before the Court on the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion") requesting that the Court issue an Order approving (a) the settlement by and between W. R. Grace & Co., on its own behalf and on behalf its debtor

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

affiliates (collectively, "Grace"), the Asbestos PI Committee,[2] and the Libby Claimants, as memorialized by that certain term sheet (the "Libby Settlement Term Sheet"), attached hereto as Exhibit A, (b) the transition of the Libby Medical Program, and (c) the settlement agreement by and between Grace and BNSF Railway Company ("BNSF"), attached hereto as Exhibit B (the "BNSF Settlement" and together with the Libby Settlement Term Sheet, the "Settlements"); and the Court having conducted a hearing on the Motion in open court on [_______], 2012 (the "Hearing"); and having noted the appearances of all interested parties and all responses and objections to the Motion in the record of the Hearing; and after due deliberation and sufficient cause appearing for the entry of this Order (the "Approval Order"); the Court hereby makes the following:

[2] Capitalized terms used but not defined herein shall having the meanings ascribed to them in the Motion or, if not defined in the Motion, in the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as modified through December 23, 2010 [Docket No. 26368] (the "Joint Plan").

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction, Final Order, and Statutory Predicates

A. The findings and conclusions set forth herein and on the record at the Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D. This Approval Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

E. The statutory predicates for the relief sought in the Motion include sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

### Notice of the Motion

F. The Debtors have provided due and adequate notice of the Motion and the subject matter thereof to all parties in interest, including, among others, the LMP Beneficiaries at their last known address according to the Debtors' books and records, and through publication notice pursuant to Bankruptcy Rules 2002 and 6004. Notice was sufficient and proper and complied with all applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Local Rules of this Court. No additional notice of the Motion or this Approval Order is required. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested parties and entities. This Court

hereby further finds that notice to an attorney of record for the holder of a Claim constitutes notice to such holder for purposes of notice of the Motion, the Hearing, the Settlements and this Approval Order.

G. To the extent that any Person (i) either (a) received proper notice of these matters (or is represented by a Person that received such notice) or (b) having had notice of these Chapter 11 Cases, elected not to request notices regarding these Chapter 11 Cases, and (ii) failed to object to the Motion or the entry of this Approval Order, then such Persons hereby shall have no right to file or prosecute an appeal of this Approval Order.

**The Libby Medical Program**

H. The Libby Medical Program first became effective on April 3, 2000. The Debtors voluntarily created the Libby Medical Program prior to, and independent of, the Chapter 11 Cases. Since then the Debtors have voluntarily maintained the Libby Medical Program. Through the Libby Medical Program, the Debtors have provided certain health care benefits related to the treatment of asbestos-related conditions to eligible individuals who enrolled in the program. The Libby Medical Program provided that certain individuals would be eligible for coverage, including former employees of the Debtors who worked in the Debtors' mine operations in Libby, Montana, and certain other individuals who reside (or formerly resided) in the area surrounding the mine.

I. The Debtors' estates currently incur more than $2,000,000 annually in health care expenses for the Libby Medical Program. If maintained in its current form, the cost to the Debtors and their estates would be substantial.

**Transfer of the Libby Medical Program**

J. The Debtors have the right to terminate the Libby Medical Program, including its transfer to a third party. No consents or approvals, other than this Approval Order, are required

for the Debtors to transition the Libby Medical Program, as provided in the Libby Settlement Term Sheet. Transition of the Libby Medical Program by the Debtors does not conflict, contravene, or cause a breach, default, or violation of any law, rule, regulation, contractual obligation, or organizational or formation document.

K. Transition of the Libby Medical Program under the circumstances and conditions set forth in the Libby Settlement Term Sheet is in the best interests of the Debtors' bankruptcy estates, their creditors, the Libby Claimants and other stakeholders and parties-in-interest. The Debtors have demonstrated (i) good, sufficient and sound business purpose and justification, and (ii) compelling circumstances for such transition of the Libby Medical Program pursuant to section 363(b) of the Bankruptcy Code.

**The Libby Settlement**

L. The Debtors have the right to enter into the Libby Settlement Term Sheet and perform all of their obligations thereunder. No consents or approvals, other than this Approval Order, are required for the Debtors to perform all of their obligations thereunder. Consummation of the Libby Settlement Term Sheet by the Debtors does not conflict, contravene, or cause a breach, default, or violation of any law, rule, regulation, contractual obligation, or organizational or formation document.

M. Nothing in the Preliminary Injunction Order impairs the Debtors' or the Libby Claimants' authority to enter into the Libby Settlement Term Sheet or this Court from approving the Libby Settlement Term Sheet, as provided herein. Further, nothing in the Preliminary Injunction Order impairs the ability of BNSF to enter into the related settlements with the Libby Claimants contemplated in the Libby-BNSF Settlement, and, if so, the Preliminary Injunction Order is hereby modified and amended to the extent, but only to the extent, necessary to allow

the parties to the Libby-BNSF Settlement to enter into and consummate the settlement set forth therein.

N. Entry into the Libby Settlement Term Sheet is in the best interests of the Debtors' bankruptcy estates, their creditors, the Libby Claimants, the LMP Beneficiaries, and other stakeholders and parties-in-interest. The Debtors have demonstrated good, sufficient and sound business purposes and justifications for entering into the Libby Settlement Term Sheet. The Libby Claimants would not have agreed to (i) the Libby Settlement Term Sheet, (ii) any of the compromises and settlements contained therein, or (iii) withdraw their Appeals and Objections without the consideration provided in the Libby Settlement Term Sheet.

O. The compromises and settlements memorialized in the Libby Settlement Term Sheet are the product of arm's-length, good faith negotiations by and between Grace and the Libby Claimants and are not the product of fraud or collusion. The Libby Settlement Term Sheet meets the standard established by the United States Court of Appeals for the Third Circuit for approval of settlements, which requires consideration of the following factors: (1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and related expense and inconvenience; and (4) the interests of the creditors.

**The BNSF Settlement**

P. The Debtors have the right to enter into the BNSF Settlement and perform all of their obligations thereunder. No consents or approvals, other than this Approval Order, are required for the Debtors to perform all of their obligations thereunder. Consummation of the BNSF Settlement by the Debtors does not conflict, contravene, or cause a breach, default, or violation of any law, rule, regulation, contractual obligation, or organizational or formation document.

Q. Nothing in the Preliminary Injunction Order, which, pursuant to section 8.7.1 of the Plan, ceases to exist once the injunctions set forth in the Plan become effective, impairs the Debtors' or BSNF's authority to enter into the BNSF Settlement or this Court from approving the BNSF Settlement, as provided herein.

R. Entry into the BNSF Settlement is in the best interests of the Debtors' bankruptcy estates, their creditors, the Libby Claimants, and other stakeholders and parties-in-interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entering into the BNSF Settlement. BNSF would not have agreed to (i) the BNSF Settlement, (ii) any of the compromises and settlements contained therein, or (iii) withdraw its Appeals and Objections without the consideration provided in the BNSF Settlement.

S. The compromises and settlements memorialized in the BNSF Settlement are the product of arm's-length, good faith negotiations by and between Grace, BNSF, the Asbestos PI Committee and the Asbestos PI FCR, and are not the product of fraud or collusion. The BNSF Settlement meets the standard established by the United States Court of Appeals for the Third Circuit for approval of settlements.

**Effect on Joint Plan**

T. The settlement set forth in the Libby Settlement Term Sheet shall be independent of the Joint Plan, shall have no effect on the Joint Plan, and shall have no effect on distributions under the Joint Plan.

**Retention of Jurisdiction**

U. It is necessary and appropriate for the Court to retain jurisdiction, among other things, to interpret and enforce the terms and provisions of this Approval Order and the Settlements, and to adjudicate, if necessary, any and all disputes arising under or relating in any

way to, or affecting any of the transactions contemplated under, the Settlements, except as otherwise expressly provided in the Libby Settlement Term Sheet.

For all of the foregoing reasons and after due deliberation, pursuant to sections 105(a), 363, 1107, and 1108 of Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9014, and 9019(a), it is:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED and APPROVED in all respects.

2. For the reasons set forth herein and on the record at the hearing, all objections to the Motion and the relief requested therein or granted in this Approval Order that have not been withdrawn, waived or settled, and all reservations of rights included in such objections, are denied and overruled on the merits with prejudice.

**Transition of the Libby Medical Program**

3. On the Libby Settlement Effective Date, all rights and duties whatsoever of Grace and Health Network of America, Inc. ("HNA") (including any affiliates, successors and assigns of such parties) under the Libby Medical Program from and after the Libby Settlement Effective Date shall be transferred to the LMP Trustee. Grace shall remain responsible for any expenses (including covered medical expenses of the LMP Beneficiaries) of the Libby Medical Program incurred prior to the Libby Settlement Effective Date, and such expenses shall not be assumed by the LMP Trustee. Except as set forth in the preceding sentence, Grace, upon payment of the Trust Funding Amount into the LMP Trust, shall have no further liabilities, obligations, duties, or role whatsoever in the Libby Medical Program, shall have no further obligation to the LMP Trust, and shall have no responsibility or liability for any obligations that the LMP Trust might choose to assume or undertake. Likewise, the LMP Trust shall have no liabilities, obligations, duties, or role whatsoever in Grace's terminated Libby Medical Program, shall have no

obligation to Grace in respect of such program (or otherwise), and shall have sole responsibility and liability for such obligations as the LMP Trust might choose to assume or undertake. Subject to the remainder of this paragraph, nothing in this Order shall be construed to require the Libby Medical Program or the LMP Trustee to assume or undertake any contractual obligation or to approve, allow, pay, or commit to pay the medical expenses or other claims of any particular claimant or group of claimants. Such matters shall be governed, prior to the Libby Settlement Effective date, solely by the terms of the Libby Medical Program, as it has been and may be amended from time to time. Such matters shall be governed, from and after the Libby Settlement Effective Date, solely by the terms of the LMP Trust, as it may be amended from time to time.

4. The Debtors shall be, and hereby are, authorized to transition the Libby Medical Program to the LMP Trust, and the Debtors are authorized to and shall pay the Trust Funding Amount to the LMP Trust following the establishment of the LMP Trust on the Libby Settlement Effective Date.

5. Subject to the preceding paragraph, effective upon the occurrence of the Libby Settlement Effective Date, all persons and entities, including any successors, assigns or designees of such persons or entities, shall be, and hereby are, forever banned, estopped, prohibited and permanently enjoined from asserting, commencing or continuing in any manner any claim, action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Debtors, HNA, their successors and assigns, and their property, with respect to any claims arising under, out of, in connection with or in any way relating to the Libby Medical Program, whether or not such person or entities were "Eligible Individuals" within the meaning of the Libby Medical Program in the past or in the future, or were or were not enrolled in, or receiving benefits from, the Libby Medical Program in the past;

provided that with respect to any and all claims of the State of Montana arising out of payments or care from the Libby Medical Program through and including the Libby Settlement Effective Date are reserved against the Debtors, and any and all claims of the State of Montana arising out of payments or care from the LMP Trust from and after the Libby Settlement Effective Date are reserved against the LMP Trust, and all parties in interest reserve all rights, defenses, and arguments on appeal with respect to such claims and to any other claims, causes of action, or requests by the State of Montana, including but not limited to contribution, indemnification, personal injury, and setoff.

6. In accordance with Health Insurance Portability and Accountability Act (HIPAA) Privacy Regulations, 45 CFR § 164.512, it is hereby ordered that the Debtors and HNA, the third party administrator for the Libby Medical Program, are authorized to produce the Libby Medical Program's medical and claims records concerning any and all treatment received by the Libby Medical Program's members and subsequent payment or non-payment of providers. Libby Medical Program members' medical and claim records are confidential pursuant to HIPAA and, therefore, the disclosure will be conducted pursuant to the following terms, restrictions and conditions:

    (a) Information contained in Libby Medical Program members' medical and claim records shall be disclosed only to counsel of record in this action, the Court appointed Trustee for the Libby Medical Program, or only to individuals certified by such counsel as employed by or assisting counsel in this action.

    (b) Any such documents or information shall be used only for the purpose of administration of the Libby Medical Program and the LMP Trust.

    (c) The production of such documents or information concerning the medical records of the Libby Medical Program shall not constitute a waiver of any privilege or other claim or right of withholding or confidentiality which a member may have.

**The Libby Settlement**

7. The Libby Settlement Term Sheet, a copy of which is attached hereto as Exhibit A, and all terms therein, are approved in their entirety.

8. The Debtors shall be, and hereby are, authorized to enter into the Libby Settlement Term Sheet, and are authorized to execute, deliver, implement and fully perform any and all obligations, to execute any instruments, documents and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Libby Settlement Term Sheet and perform any and all obligations contemplated therein.

9. The Libby Claimants shall withdraw with prejudice and without costs, all of their Appeals, and all of their pending Objections to the Joint Plan (including all documents related to implementation of the Joint Plan), to confirmation of the Joint Plan, to approval of the Grace-CNA Settlement, and to approval of the Grace-Arrowood Settlement, on the Libby Settlement Effective Date and in accordance with the terms of the Libby Settlement Term Sheet, utilizing the form attached hereto as Exhibit C.

10. Notwithstanding the terms of the Libby Settlement Term Sheet, (a) occurrence of the Global Settlement Effective Date (as defined in the BNSF Settlement Agreement) shall be an additional condition to occurrence of the Libby Settlement Effective Date, and (b) Grace may, in its sole discretion (but provided that the Libby Claimants, through their counsel, assent), waive such condition and any and all other conditions to the Libby Settlement Effective Date so as to accelerate its occurrence.

11. No disbursement of the Trust Funding Amount by the LMP Trust (or by the Libby Medical Program during the period of its existence) shall be considered by the Asbestos PI Trust for any purpose whatsoever, including to determine, whether positively or negatively, directly or

indirectly, the availability, amount or timing of any claimant's recovery from the Asbestos PI Trust.

**The BNSF Settlement**

12. The BNSF Settlement Agreement, a copy of which is attached hereto as Exhibit B, and all terms therein, are approved in their entirety.

13. The Debtors shall be, and hereby are, authorized to enter into the BNSF Settlement Agreement, and are authorized to execute, deliver, implement and fully perform any and all obligations, to execute any instruments, documents and papers, and to take any and all actions reasonably necessary or appropriate to consummate the BNSF Settlement Agreement and perform any and all obligations contemplated therein.

14. Not later than thirty days after the last to occur of (a) the Effective Date of the Joint Plan, (b) the Global Settlement Effective Date, and (c) the Asbestos PI Trust's receipt of the $250 million payment described in section 1.1.47 of the Joint Plan, the Asbestos PI Trust shall pay to BNSF, by wire transfer of immediately available funds, the sum of $8,000,000 (the "BNSF Settlement Amount"), in accordance with the terms of the BNSF Settlement.

15. BNSF shall withdraw all of its Appeals, and all of its pending Objections to the Joint Plan (including all documents related to implementation of the Joint Plan), to confirmation of the Joint Plan, to the Grace-CNA Settlement, to the Grace-Arrowood Settlement, and to any of the motions or applications filed by the Debtors, Asbestos PI Committee, or the Asbestos PI FCR pending in these Chapter 11 Cases, in accordance with the terms of the BNSF Settlement Agreement, utilizing the form attached hereto as Exhibit D.

16. Effective as of BNSF's receipt of the BNSF Settlement Amount, BNSF will grant the releases set forth in Article III of the BNSF Settlement Agreement.

17. Upon the Effective Date of the Joint Plan, the Asbestos PI Trust shall be bound by, and entitled to enforce, the BNSF Settlement as if a party thereto, without any further action by the Debtors, BNSF, or the Court.

18. The BNSF Settlement Agreement does not trigger the last sentence of the third paragraph of Section 5.6 of the *WRG Asbestos PI Trust Distribution Procedures* (included as Exhibit 4 to the Plan).

**Miscellaneous**

19. This Approval Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(h) or any other Bankruptcy Rule.

20. This Order is and shall be binding in all respects upon the Debtors and their estates, creditors, officers, directors, advisors, members, managers and shareholders and all other interested parties, and their respective successors and assigns, and each of the Libby Claimants and LMP Beneficiaries, and BNSF, and their officers, directors, advisors, members, managers and shareholders and their respective successors and assigns.

21. The settlement set forth in the Libby Settlement Term Sheet shall be independent of the Joint Plan, shall have no effect on the Joint Plan, and shall have no effect on distributions under the Joint Plan.

22. The failure specifically to include or refer to any particular term or provision of the Settlements in this Approval Order, shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Settlements be authorized and approved in their entirety.

23. This Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Approval Order subject to the terms of the Settlements.

Dated: June 6th, 2012

Judith K. Fitzgerald

The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

SJS