## EXHIBIT A

## Libby Settlement Term Sheet

# TERM SHEET

among

### W. R. GRACE & CO.,

### THE ASBESTOS CLAIMANTS' COMMITTEE,

and

### THE LIBBY CLAIMANTS

K&E 20383610.11

**TERM SHEET FOR GLOBAL SETTLEMENT BY AND BETWEEN THE LIBBY CLAIMANTS, ON THE ONE HAND, AND W. R. GRACE & CO. AND THE ASBESTOS CLAIMANTS' COMMITTEE, ON THE OTHER HAND**

WHEREAS, since April 3, 2000, Grace has funded its Libby Medical Program (the "LMP"), which in its current form dated as of July 1, 2005 is attached hereto as Exhibit A;

WHEREAS, as of June 2011, Grace had spent over $22 million meeting certain health care needs of over 1,100 patients through the LMP; however, there have been disputes concerning operation of the LMP;

WHEREAS, Grace has, and has always had, the ability and right to modify and terminate the LMP; and such right is not affected or addressed by Grace's confirmed Chapter 11 plan;

WHEREAS, the Libby Claimants have appealed the Bankruptcy Court's orders confirming the Plan (the "Confirmation Order"), approving a settlement between Grace and CNA Insurance (the "CNA Insurance Settlement Order"), and approving a settlement between Grace and Arrowood Insurance (the "Arrowood Insurance Settlement Order") (together, the "Appeals");

WHEREAS, Grace and the Libby Claimants are attempting to resolve amongst themselves and with other parties all outstanding issues concerning the Libby Claimants, or, if that cannot be accomplished promptly, a settlement of as many such issues as possible; and

BASED ON THE FOREGOING, Grace (with the concurrence of the other proponents of the Plan) and the Libby Claimants hereby agree on the following terms of settlement, subject to the conditions specified in section V.B below:

| I. | DEFINITIONS |
|---|---|
| A. | "Asbestos Claimants' Committee" shall mean the Official Committee of Asbestos Personal Injury Claimants appointed in the Chapter 11 Cases. |
| B. | "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware. |
| C. | "Beneficiary" shall mean a beneficiary of the LMP prior to the Settlement Effective Date or of the LMP Trust from or after the Settlement Effective Date. |
| D. | "Chapter 11 Cases" shall mean the bankruptcy cases of W. R. Grace & Co. and certain of its subsidiaries and affiliates whose chapter 11 cases are being jointly administered in the District of Delaware, Case Number 01-1139 (JKF). |

E. **"Final Order"** shall mean shall mean an order, the operation or effect of which has not been stayed, reversed, or amended and as to which order the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order shall not cause such order not to be a Final Order.

F. **"Grace"** shall mean W. R. Grace & Co. and its affiliates as debtors and debtors in possession in the Chapter 11 Cases.

G. **"Libby Claimants"** shall mean, at any particular time, the clients of the McGarvey, Heberling, Sullivan & McGarvey, P.C. ("MHSM"), Lewis, Slovak, Kovacich & Marr, P.C. ("LSKM"), and Murtha Cullins, LLP ("MC") law firms who assert personal injury claims in the Chapter 11 Cases, as identified in the most recent statement filed by MHSM, LSKM and MC under Fed. R. Bankr. P. 2019.

H. **"LMP"** shall mean the Libby Medical Program dated July 1, 2005.

I. **"LMP Trust"** shall mean the trust established under Montana law, pursuant to this Term Sheet, the LMP Trust Instrument and any related settlement agreements.

J. **"LMP Trust Approval Order"** shall mean a Final Order of the Montana Court approving the formation of the LMP Trust and related LMP Trust Instrument.

K. **"LMP Trust Instrument"** shall mean an instrument substantially in the form annexed hereto as **Exhibit B** and as may be amended from time to time.

L. **"LMP Trustee"** shall mean the trustee of the LMP Trust, solely in such capacity, including the initial trustee specified in the LMP Trust and any other person or persons who serve in such capacity pursuant to the terms of the LMP Trust.

M. **"Montana Court"** shall mean the District Court of the 19th Judicial District, State of Montana.

N. **"Parties"** shall mean, collectively, each of Grace, the Libby Claimants, the Asbestos Claimants' Committee (each, a "Party").

O.    **"Plan"** shall mean the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants Representatives, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010 (Bk. Dkt. No. 26368).

P.    **"Settlement Approval Order"** shall mean an order of the Bankruptcy Court approving the settlement outlined in this Term Sheet and embodied in any future settlement agreement, including the LMP Modification provided for herein.

Q.    **"Settlement Effective Date"** shall mean the third business day after the latest to occur of entry of the Settlement Approval Order by the Bankruptcy Court, and entry of the Trust Approval Order by the Montana Court, provided that all such orders have become Final Orders unless the Parties waive in writing the requirement that such orders have become Final Orders and provided further that the settlement set forth herein and including any future settlement agreement has not been terminated in accordance with its terms, provided further, however, that if the Settlement Effective Date does not occur on the 21st day following entry of the Settlement Approval Order by the Bankruptcy Court, then interest shall accrue at the rate of 5.5% per annum on the lump sum payment referenced in II.B below until such time as the payment is made.

| II. | LMP Trust and the Settlement Effective Date | |
|---|---|---|
| A. | Settlement Effective Date | On the Settlement Effective Date, (i) Grace shall effectuate the LMP Modification as provided in section II.B below, and (ii) the Libby Claimants shall deliver to Grace's counsel, and Grace shall file in the appropriate fora, such documents as Grace has requested to dismiss the Appeals, with prejudice and without costs. |
| B. | LMP Modification | On the Settlement Effective Date, (a) all rights, and duties whatsoever of Grace, the Claims Administrator and Health Network of America (including any affiliates, etc. of such parties) under the LMP from and after the Settlement Effective Date shall be transferred to and assumed by the LMP Trustee (no additional documents shall be necessary to effect this transfer), provided, however, that Grace shall be responsible for any ongoing payment obligations of the Libby Medical Program incurred prior to the Settlement Effective |

| | | |
|---|---|---|
| | | Date, (b) in lieu of continued annual contributions to the LMP, Grace shall fund the LMP Trust with a one-time payment of $19.5 million in immediately available funds to the LMP Trustee, (c) upon such payment, Grace shall have no further liabilities, duties, or role whatsoever in the LMP except that, within 10 days after the Settlement Effective Date, Grace shall deliver to the LMP Trustee a full listing of all Covered Individuals as of the Settlement Effective Date, together with their names, addresses, telephone numbers, and all files and records related to each (the "Settlement Effective Date Covered Individuals"), provided, however, that Grace not be required to deliver any confidential information related to the Settlement Effective Date Covered Individuals in violation of any relevant privacy laws, and (d) the LMP Trustee shall begin administration of the LMP in accordance with the terms of the LMP Trust Instrument. |
| C. | LMP Trustee | The initial LMP Trustee shall be Francis McGovern. In performing his duties, the LMP Trustee shall consult with an advisory committee consisting of three individuals elected by vote of the beneficiaries of the LMP Trust (the "Trust Advisory Committee"). If the LMP Trustee resigns or becomes unable to perform his duties, his successor shall be designated by the Trust Advisory Committee and approved by the Montana Court. If a member of the Trust Advisory Committee resigns or becomes unable to perform his duties, his successor shall be designated by the remaining members of the Trust Advisory Committee. |
| D. | Beneficiaries of the LMP Trust | Beneficiaries of the LMP Trust shall consist of all Settlement Effective Date Covered Individuals and each individual who, in accordance with procedures and deadlines established by the LMP Trustee upon consultation with the Trust Advisory Committee, files with the LMP Trustee evidence satisfactory to the LMP Trustee that such claimant (a) suffers from mesothelioma, asbestos-related cancer, or asbestos-related disease as defined in American Thoracic Society, Official Statement (2004), and (b) suffered exposure in Lincoln |

4

| | | |
|---|---|---|
| | | County, Montana to asbestos generated by Grace's operations. |
| E. | LMP Trust Instrument | The LMP Trust Instrument shall set forth the provisions governing the terms of the LMP Trust, which may be modified by the LMP Trustee in consultation with the Trust Advisory Committee. |
| F. | Jurisdiction of the LMP Trust | The LMP Trust shall be subject to the supervision and exclusive jurisdiction of the Montana Court; for the avoidance of doubt, such exclusive jurisdiction shall commence upon entry of the Settlement Approval Order, provided, however, that the Bankruptcy Court shall have exclusive jurisdiction over any disputes that arise between the LMP Trust and Grace. |

| III. | REPRESENTATIONS | |
|---|---|---|
| A. | Covered Individuals | Grace represents that the number of covered individuals as defined in the LMP ("Covered Individuals") as of December 31, 2011 is approximately _____.  Grace further represents, to the best of its knowledge and belief, that the number of Covered Individuals who do not appear on the most recent statement filed by MHSM, LSKM and MC under Fed. R. Bankr. P. 2019 dated _____ is approximately _____ and the number of Covered Individuals who appear on the foregoing statement is approximately _____.[1] |
| B. | Obligations to Update Representations | Through the Settlement Effective Date, Grace shall update the number of Covered Individuals as of the end of each calendar quarter, within 30 days thereafter. |
| C. | Libby Claimants as of the Settlement Effective Date | Concurrent with the filing of the motion to approve the settlement set forth herein, MHSM, LSKM and MC shall file a statement under Fed. R. Bankr. P. 2019 listing all Libby Claimants and |

---

[1]  Figures to be supplied in final settlement agreement.

5

| | |
|---|---|
| | in connection with the motion to approve the settlement set forth herein, shall represent to the satisfaction of Grace, that MHSM, LSKM and MC have (either individually, or collectively) the power and authority to bind all Libby Claimants to agree to withdraw all appeals, consent to the settlement approval motion, and consent to the terms and conditions of this term sheet and settlement agreement related to the Chapter 11 Cases. Further, within 30 days after the Settlement Effective Date, MHSM, LSKM and MC shall file a statement under Fed. R. Bankr. P. 2019 listing all Libby Claimants as of the Settlement Effective Date. |

| IV. | PARTIES' OBLIGATIONS | |
|---|---|---|
| A. | Parties' Obligations prior to Settlement Effective Date | Prior to the Settlement Effective Date, and regardless of whether the Settlement Approval Order has been entered (provided only that the Bankruptcy Court has not entered an order denying approval of the Settlement Agreement), (i) Grace shall in good faith use its commercially reasonable efforts to obtain, and the other Parties shall support, entry of the Settlement Approval Order at the earliest possible date in light of notice requirements, (ii) the Libby Claimants in good faith use their commercially reasonable efforts to obtain entry of the Trust Approval Order prior to the date scheduled by the Bankruptcy Court to consider entry of the Settlement Approval Order, and (iii) Grace shall continue the LMP in the ordinary course and in accordance with its current terms, policies and procedures (subject to the provisions of V.B). |
| B. | Defense of Court Orders | Grace shall in good faith use its commercially reasonable efforts to defend any appeal from the Settlement Approval Order and none of the Parties shall seek to obtain, and all Parties shall not support any attempt by any person or entity to obtain, an injunction against the Libby Claimants' pursuit of any claims not now barred by the Preliminary Injunction so long as the settlement set forth in this Term Sheet remains in effect and |

K&E 20883610.11

| | | |
|---|---|---|
| | | through the date the Preliminary Injunction remains in effect. |
| C. | Cooperation | The Parties shall cooperate with each other in good faith in all respects to effectuate the purposes of this term sheet, the settlement agreement and the LMP Modification. |
| D. | Support of Confirmation of a Plan of Reorganization | If, following the Settlement Effective Date and notwithstanding the Parties' performance of their obligations on such date including termination of the Appeals, the Effective Date of the Plan does not occur for any reason, the Libby Claimants shall support confirmation of any other plan proposed by Grace that provides for treatment in a manner materially consistent with and no less beneficial in any material way (apart from the delay inherent in achieving confirmation and effectiveness of such other plan) to the Libby Claimants than the treatment contemplated in the Plan. |

| V. | **MISCELLANEOUS** | |
|---|---|---|
| A. | No Effect on Plan | The Settlement Agreement shall be independent of the Plan, shall have no effect on the Plan, and shall have no effect on distributions under the Plan. For the avoidance of doubt, the Settlement Approval Order shall specify that no disbursement by the LMP Trust (nor by the LMP during the period of its existence) shall be considered by the Asbestos PI Trust for any purpose whatsoever, including to determine, whether positively or negatively, directly or indirectly, the availability, amount or timing of any Beneficiary's recovery from the Asbestos PI Trust. |
| B. | Conditions | The settlement embodied in this term sheet is subject to (a) definitive documentation, which the Parties will proceed to prepare and agree upon in good faith as expeditiously as possible, (b) in the case of Grace, approval by the Bankruptcy Court pursuant to the Settlement Approval Order, except as to IV.A (i) (which shall be immediately binding), and IV.A(iii) (which shall be |

7

K&E 20883440.11

|  | immediately binding, unless and until Grace provides written notice that it shall no longer be bound by IV.A(ii), such notice not to be given earlier than six months following the execution of this Term Sheet), and (c) in the case of the Libby Claimants, approval by the Libby Claimants, which their counsel shall obtain promptly after signature of this term sheet and before Grace files its motion seeking entry of the Settlement Approval Order. |
|---|---|
| **C.     Termination** | The Settlement Agreement may not be terminated unless the Bankruptcy Court enters an order denying entry of the Settlement Approval Order, in which event any Party may terminate the Settlement Agreement by written notice to the other Parties, provided, however, that the Parties shall confer within 30 days after entry of any such order, and no termination notice may be given until after such conference has occurred. |

|  | W. R. GRACE & CO. |
|---|---|
| Dated: January 10, 2012 | By _Mark A. Shelnitz_<br>Name: Mark A. Shelnitz<br>Title: Vice President, General Counsel and Secretary |
| Dated: _____ | ASBESTOS CLAIMANTS' COMMITTEE<br><br>By_____<br>Name:_____<br>Title:_____ |

8

| | | |
|---|---|---|
| | | immediately binding, unless and until Grace provides written notice that it shall no longer be bound by IV.A.(iii), such notice not to be given earlier than six months following the execution of this Term Sheet), and (c) in the case of the Libby Claimants, approval by the Libby Claimants, which their counsel shall obtain promptly after signature of this term sheet and before Grace files its motion seeking entry of the Settlement Approval Order. |
| C. | Termination | The Settlement Agreement may not be terminated unless the Bankruptcy Court enters an order denying entry of the Settlement Approval Order, in which event any Party may terminate the Settlement Agreement by written notice to the other Parties, provided, however, that the Parties shall confer within 30 days after entry of any such order, and no termination notice may be given until after such conference has occurred. |

| | |
|---|---|
| | W. R. GRACE & CO. |
| Dated: _____ | By_____<br>Name:_____<br>Title:_____ |
| | ASBESTOS CLAIMANTS' COMMITTEE |
| Dated: 1/17/12 | By _Peter Van N. Lockwood_<br>Name: _Peter Van N. Lockwood_<br>Title: _Counsel to the ACC_ |

KAE 2083410.11

LIBBY CLAIMANTS

Dated: _____

By: _____
McGARVEY, HEBERLING, SULLIVAN &
McGARVEY, P.C.

Dated: _____

By: _____
LEWIS, SLOVAK, KOVACICH & MARR, P.C.

Dated: _____

By: _____
MURTHA CULLINA, LLP

9

K&E 20883410.11

Exhibit A

# GRACE

Libby Medical Program as of July 1, 2005

# *Table of Contents*

Introduction ...................................................3

Purpose of the Libby Medical Program ...................................3

Covered Medical Expenses.................................................3

Eligibility and Enrollment................................................4
Who Is Eligible?.........................................................4
Eligible Individual.......................................................4
Asbestos-Related Qualifying Medical Condition or Illness ..........5
Examination of Lung Tissue ..............................................6
Diagnosis by Intra-Operative Surgical Findings...................6
Latency Period ...........................................................7
Enrollment and Coverage.................................................7
Cost .....................................................................8
A Few Words About the Libby Medical Program .......................9

Covered Conditions......................................................10
ICD-9 Code (Covered Condition)..............................................10
Brief Description of Condition ...........................................10
Covered Conditions For Those Diagnosed With Asbestosis ........11
ICD-9 Code (Covered Condition)..............................................11
Brief Description of Condition ...........................................11
What Else You Should Know About Covered Conditions ...........12

Pulmonary Function Testing and Pulse Oximetry ..................12

Chest X-Rays and Chest CT Scans .........................................13

What Is An ICD-9 Code? ................................................13

Prescription Drugs ......................................................14
At the Pharmacy.........................................................15
Participating Pharmacies ................................................16
The Mail Service Program ...............................................17
Coverage For Smoking Deterrents.........................................17
Prescription Drugs Not Covered ........................................18

Durable Medical Equipment ..............................................19

Coverage for Home Health and Hospice Care......................20
Home Health Care.......................................................20
Limits on Home Health Care Benefits...................................21
Hospice Care ...........................................................22
Hospice Care At Home ..................................................24
Limits On Hospice Care Benefits .......................................24

Alternative Coverage Care.................................................25
Extended Care Facility/Skilled Nursing Facility Care .................25
Limits on Alternative Care Benefits ...............................26

Autopsy Benefits.........................................................27

If You Receive Other Benefits .......................................27
Primary and Secondary Plans .......................................27

When Benefits Are Not Paid ........................................28

When Coverage Ends.................................................30
Awards And Settlements That Include Payment For Future
Medical Expenses.......................................................30

Program Audits .......................................................31

Privacy....................................................................31
Protected Health Information (PHI) ...............................31
Disclosure of PHI to Health Network America and Grace..........32

Claims for Benefits....................................................34
Covered Expenses ....................................................34
Required Information ................................................34
How Claims Are Handled ...........................................35
Concurrent Care Claims .............................................35

Questions and Appeals................................................36
What to Do First.......................................................36
How to Appeal a Claim Decision ...................................36
Appeal Process.........................................................37
Grace's Role in the Claims and Appeal Process.....................37
Qualified Medical Child Support Orders............................37
Expulsion of Providers from the Program .........................38
Tax Consequences of Participation .................................38

Definitions ..............................................................39

Other Information......................................................43
Plan Sponsor...........................................................43
Plan Administration...................................................43
Claims Administrator ................................................43
Determinations and Decisions .......................................44
Plan Year ...............................................................44
Plan Identification.....................................................44
The Program's Future..................................................44
Legal Service...........................................................44
Plan Documents .......................................................45
If You Cannot Receive Payments ...................................45
Rights to Benefits......................................................45

Effective Dates of Program Documents ............................45

# Introduction

This booklet describes the provisions of the Libby Medical Program. The Program was effective April 3, 2000.

If you are eligible for the medical coverage described in this booklet, it is important that you understand how the Program works to ensure you receive the maximum medical benefits for which you are eligible.

For all questions about the Libby Medical Program, and to verify coverage under the Program, call  the Claims Administrator, Health Network America, at 1-888-563-1564.

# Purpose of the Libby Medical Program

W. R. Grace & Co. ("Grace" -- see also page 40) is sponsoring the Libby Medical Program to provide former employees of the Grace Mine and Mill in Libby Montana, their dependents, as well as others who live (or lived) in the Libby area, who suffer from asbestos-related conditions and illnesses, with medical care coverage for medical treatment necessary to treat those conditions and illnesses, under the terms described in this booklet.

# Covered Medical Expenses

The Libby Medical Program pays 100 percent of the costs related to Eligible Medical Expenses (page 39) for Covered Conditions (page 10), subject to the provisions described under "When Benefits Are Not Paid" (page 28) and the other provisions of this booklet.

# Eligibility and Enrollment

## Who Is Eligible?

You are eligible for coverage under the Libby Medical Program if you are an Eligible Individual and you are diagnosed with an Asbestos-Related Medical Condition or Illness.

## Eligible Individual

You are an "Eligible Individual" if:

■ you worked in the Libby Mine or Mill at any time, or

■ you were the spouse or legal dependent (as defined under Internal Revenue Code Section 152) of someone who worked in the Libby Mine or Mill at the same time the worker actually was employed there, or

■ you lived or worked within a 20-mile radius of the Libby Mine or Mill for at least 12 consecutive months at any time before January 1, 2000.

If you meet one of these criteria, you are an Eligible Individual, even if you have filed a suit against Grace that is still pending or if your suit was dismissed because of statute of limitations restrictions.

You are not an Eligible Individual, however, under any circumstances, if you received a monetary award or settlement from Grace before January 1, 2000 that is related to a lawsuit alleging damages as a result of exposure to asbestos. You are also not an Eligible Individual if you filed a suit alleging damages as a result of exposure to asbestos and you lost your suit before January 1, 2000 (except as provided above regarding statue of limitations issues).

See also page 30, "Awards And Settlements That Include Payment For Future Medical Expenses."

An Eligible Individual's participation in the Libby Medical Program does not release Grace from claims that the Individual may have. However, coverage for Eligible Medical Expenses provided under the Libby Medical Program may be in lieu of damages for those Eligible Medical Expenses that could have been awarded through litigation or settlement of any asbestos-related tort or tort-related claim for personal injury against Grace.

## Asbestos-Related Qualifying Medical Condition or Illness

You have an "Asbestos-Related Qualifying Medical Condition or Illness" if you are "properly diagnosed" with an Asbestos-Related Qualified Respiratory Condition (see below), an Asbestos-Related Qualified Mesothelioma (see page 7), or an Asbestos-Related Qualified Lung Cancer (see page 7), as described in the following information; and provided that such condition is related to exposure to asbestos and that you satisfy the Latency Period (see page 8).

The Claims Administrator may, at its discretion, require that your Asbestos-Related Qualifying Medical Condition be verified by an examination by one or more Doctors or other medical professionals (e.g., radiologists who are certified B-readers of X-rays or pulmonologists.)

If you choose not to submit to such a verifying examination, you will not be eligible for coverage under the Libby Medical Program.

"Properly diagnosed" means that (1) the individual was diagnosed by a Doctor qualified to make such a diagnosis, and (2) the diagnosis is substantiated by peer review of qualified Doctors selected by the Claims Administrator (if submitted to such review by the Claims Administrator).

You will be considered to have an **Asbestos-Related Qualified Respiratory Condition** if you are properly diagnosed with any of the following conditions (and such diagnosis otherwise satisfies the applicable provisions related to that condition):

| | |
|---|---|
| **A** | **Solitary/Multiple Pleural Plaques:** A plaque or plaques on either the chest wall or diaphragm diagnosed pursuant to a chest x-ray (which is confirmed by a radiologist who is certified as a B-reader) or diagnosed pursuant to a chest CT scan (which is confirmed by a radiologist). |
| **B** | **Pleural Thickening:** Pleural thickening in either or both lungs, diagnosed pursuant to a chest x-ray (which is confirmed by a B-reader who is a radiologist) or diagnosed by CT scan by a qualified radiologist. |
| **C** | **Interstitial Lung Disease:** Any parenchymal abnormalities consistent with Pneumoconiosis, diagnosed pursuant to a chest x-ray with a profusion score of at least ILO Grade 1/1 (which is confirmed by a radiologist who is certified as a B-reader) or diagnosed pursuant to a chest CT scan (which is confirmed by a qualified radiologist). |
| **D** | **Benign Asbestos Pleural Effusion:** A clinically documented pleural effusion (either transient, permanent, unilateral, or bilateral, etc.) where causes other than asbestos exposure have been ruled out, and where, following two years of follow-up by a Doctor, the individual is determined to still satisfy these criteria. If you satisfy the Asbestos-Related Qualified Medical Condition or Illness solely as the result of a Benign Asbestos Pleural Effusion, this condition must be followed by a Doctor for two years before you will become eligible for coverage under the Libby Medical Program. (The purpose for this approach for this condition is to more definitively determine if the condition is asbestos-related.) |

You will be considered to have an **Asbestos-Related Qualified Mesothelioma** if you are properly diagnosed, by a pathologist, with a malignant tumor originating from the mesothelial cells of the pleura, pericardium or peritoneum.

You will be considered to have an **Asbestos-Related Qualified Lung Cancer** if you are properly diagnosed, by a pathologist, with a malignant primary bronchogenic tumor of any cell type where any one of the following conditions have been verified by the pathologist or another Doctor qualified to make such verification:

■ An Asbestos-Related Qualified Medical Respiratory Condition as defined above.

■ Pathological evidence of asbestos exposure, which means the presence of interstitial fibrosis of the pulmonary parenchyma in which asbestos bodies or fibers are demonstrated by a pathological examination of the lung tissue or a pleural biopsy demonstrating a pleural plaque (See "Examination of Lung Tissue" below).

## Examination of Lung Tissue

You will also be considered to have an Asbestos-Related Qualifying Medical Condition or Illness if an examination of your lung tissue by a pathologist identifies either of the following in abnormal amounts:

■ Pulmonary fibrosis and asbestos fiber count by electron microscopy

■ Pulmonary fibrosis with asbestiform (ferruginous) bodies that satisfy standard pathology criteria

■ Plural plaques(s) as documented by a reading from a qualified pathologist.

## Diagnosis by Intra-Operative Surgical Findings

Notwithstanding the forgoing, you will be considered to have an Asbestos-Related Qualifying Medical Condition or Illness if you are diagnosed with a solitary pleural plaque (i.e., a plaque on either the chest wall or diaphragm) or multiple pleural plaques, or pleural thickening, pursuant to intra-operative findings by your attending surgeon or consulting pathologist.

### Claims Administrator Determinations

The Claims Administrator shall make all determinations regarding whether or not an individual has an Asbestos-Related Qualifying Medical Condition or Illness. In making such determinations, the Claims Administrator will (at its discretion) consider information, documentation, diagnoses, and peer review from health care professionals approved by the Claims Administrator. The Claims Administrator's determinations in this regard will be final and binding on all parties.

Please note: The Claims Administrator retains all applications denied for participation in the Libby Medical Program, and individuals may reapply at any time after denial without having to submit a second application.

### Latency Period

In order to satisfy a diagnosis of an Asbestos-Related Qualified Respiratory Condition, Asbestos-Related Qualified Mesothelioma, or Asbestos-Related Qualified Lung Cancer, you must have a "Latency Period" of no fewer than 5 years between your first exposure to asbestos and the date of diagnosis.

This requirement, nevertheless, will be deemed to be met if:

■ you worked in the Libby Mine or Mill at least 5 years before this diagnosis, or

■ you lived, at least 5 years before this diagnosis, with an individual who worked in the Libby Mine or Mill at the same time the individual worked there, or

■ you lived or worked within a 20-mile radius of the Libby Mine or Mill at least 5 years before this diagnosis.

### Enrollment and Coverage

Coverage under the Libby Medical Program is not automatic. Once someone demonstrates that he or she meets the eligibility requirements described in this booklet, that person must enroll in the Libby Medical Program to be covered.

To enroll, an Eligible Individual and the attending Doctor must accurately complete an enrollment form and submit it to The Program Administrator. Until further notice, this form must be mailed to the Program Administrator at the following address:

Libby Medical Program
P.O. Box 695
Libby, Montana 59923

Alternately, until further notice this form may also be hand delivered to the following address:

317 Mineral Avenue
Libby, Montana

You may request an enrollment form from the Claims Administrator by calling 1-888-563-1564 or by writing to the address listed above.

Because the enrollment form will be updated from time to time, check with the Claims Administrator (page 43) before submitting the form to make sure you have the most current form. If you submit an obsolete form, it will be returned to you, and you will not be enrolled in the Program until you submit a current enrollment form.

Once an Eligible Individual enrolls in the Libby Medical Program, he or she will be covered under the Program, as described in this booklet. For purposes of this booklet, an enrolled Eligible Individual is referred to as a "Covered Individual."

Each Covered Individual will be provided with an identification card, which will indicate that he or she is covered by the Libby Medical Program and that Eligible Medical Expenses (see page 39) are covered. (See also the pharmacy procedures under "At the Pharmacy," on page 15.)

## Cost

Grace pays the cost of the Libby Medical Program, provides the benefits under the Program, and arranges for claim processing and other administrative services.

Grace receives no funding from any government agency or insurance company to fund this Program.

The Libby Medical Program is not an insured plan, and benefits provided under the Program are not insured benefits.

## A Few Words About the Libby Medical Program

This booklet describes the Libby Medical Program and is the plan document of the Libby Medical Program. This document is also the summary plan description of the Libby Medical Program.

Grace, as Program Administrator, has the final discretionary authority to determine eligibility for benefits and to interpret and construe the terms of the Program, as well as to take other administrative actions with respect to the Program. In making such determinations, however, the Program Administrator may ask (when it deems appropriate) health care professionals for advice on issues regarding Asbestos-Related Qualifying Medical Conditions (page 5), Covered Conditions (page 10), Experimental or Investigational treatment or supplies (page 40), and Medically Necessary determinations (page 41). In addition, the Program Administrator has delegated its discretionary authority to the Claims Administrator with respect to all initial determinations regarding payment of claims, which will be handled exclusively by the Claims Administrator, subject to the Program Administrator's final review.

# Covered Conditions

If you are a Covered Individual, the Program will pay up to the
Reasonable and Customary amount of expenses you incur for
supplies and services that are Medically Necessary to treat the
conditions specified under the "ICD-9 Codes" listed below and that
are otherwise covered by the Libby Medical Program (including,
but not limited to, such expenses incurred for diagnostic procedures
related to monitoring such a condition). These conditions are
referred to in this booklet as "Covered Conditions" and must be
related to previous asbestos exposure.

| ICD-9 Code (Covered Condition) | Brief Description of Condition |
|---|---|
| 501 | Asbestosis |
| 511 | Pleural Abnormalities • Pleural Plaque(s) • Pleural Thickening • Pleural Effusion • Pleurisy |
| 163.0, 163.1, 163.8, 163.9 | Malignant Neoplasm of Pleura |
| See "Lung Cancer" or "malignant neoplasm of pleura" | Mesothelioma (Cancer of the pleura, peritoneum or pericardium) |
| 162.0 162.2, 162.3, 162.4, 162.5 162.8, 162.9 | Lung Cancer • Primary |
| 231.1, 231.2 | • Carcinoma in Situ |
| 515 | Fibrosis • Chronic Pulmonary Fibrosis • Pneumoconiosis |
| 480-487.8 (inclusive) | Pneumonia and Influenza |
| 510-510.9 (inclusive) | Empyema |
| 466.0, and 490-491.9 (inclusive) | Bronchitis – Acute & Chronic |
| 513 | Abscess of Lung |
| 518.81-518.84 (inclusive) | Other Lung Diseases • Acute & Chronic Respiratory Failure |
| 512-512.8 (inclusive) | Pneumothorax |
| 519.0-519.2 (inclusive) | Complications Associated with Tracheostomy |

In any event, however, a condition (whether or not specified above)
will not be a "Covered Condition" and will not be covered by the
Program if the Claims Administrator determines that such
condition is not related to previous exposure to asbestos.

For example, if any individual who is covered by the Program incurs bronchitis - acute & chronic (see ICD-9 code, listed on page 10), and the Claims Administrator determined that the bronchitis is not related to asbestos exposure (but, instead, is likely related to smoking, for example), then expenses incurred to treat that condition (i.e., to treat bronchitis) will not be covered by the Program.

## Covered Conditions For Those Diagnosed With Asbestosis

"Asbestosis" means a pulmonary parenchymal disease (that is, a disease to the body of the lung) characterized by fibrosis with asbestos bodies. "Asbestosis" does not refer to any of the other conditions, such as pleural plaques or pleural thickening, which may be associated with asbestos exposure.

In addition to the Covered Conditions specified on page 10, for a Covered Individual who is "properly diagnosed" (page 6) with "asbestosis" (as defined below), the Program will also pay up to the Reasonable and Customary amount of expenses the Covered Individual incurs for supplies and services that are Medically Necessary to treat the conditions specified under the ICD-9 Codes listed below.

| ICD-9 Code (Covered Condition) | Brief Description of Condition |
|---|---|
| 161.0, 161.1, 161.2, 161.3, 161.8, 161.9 | Larynx Cancer • Primary |
| 231.0 | • Carcinoma In Situ of Respiratory System |
| 149.0 | Oral Pharynx Cancer • Primary |
| 150 and 151 | Stomach and Esophagus Cancer • Primary |
| 230.1 and 230.2 | • Carcinoma In Situ |
| 416.9 | Chronic Pulmonary Heart Disease • Cor pulmonale related to lung disease |

With respect to a Covered Individual who is properly diagnosed with asbestosis, these conditions are also regarded as "Covered Conditions."

*Libby Medical Program  005*

### What Else You Should Know About Covered Conditions

The descriptions for each ICD-9 Code are provided for illustration purposes only. The Covered Conditions are those referred to by the listed ICD-9 Codes. If there are any questions about whether or not a condition is a Covered Condition, the actual ICD-9 Code, and not the written description provided above, will be used to determine whether or not that condition is a Covered Condition.

The Program Administrator, based on the advice of the Claims Administrator or other health care professionals, reserves the right to change the list of Covered Conditions, at any time, in accordance with the purpose of the Libby Medical Program (see page 3) by, for instance, adding conditions that in the future are determined to be directly related to asbestos exposure. The Program Administrator's determinations with respect to Covered Conditions are final and binding on Covered Individuals and all other parties.

# Pulmonary Function Testing and Pulse Oximetry

Doctors and other medical service providers should note that the Libby Medical Program covers Pulmonary Function Testing and Pulse Oximetry for Covered Individuals, in accordance with written guidelines issued by the Claims Administrator. Claims related to this testing will only be paid if done in accordance with these guidelines. Please contact the Claims Administrator for a copy of these guidelines.

# Chest X-Rays and Chest CT Scans

The Libby Medical Program covers annual chest x-rays to evaluate a member's Asbestos-Related Medical Condition or Illness. In the event an acute illness, such as pneumonia, develops in a properly qualified member, additional chest x-rays will be covered to manage the event. Chest x-rays done for medical reasons not related to asbestos exposure will not be a covered benefit. An example of this would be a member being seen in an emergency room for a non-asbestos-related condition and a chest x-ray is part of the evaluation. Under these circumstances a chest x-ray would not be a covered benefit.

The Program also covers chest CT scans when ordered by a qualified physician to evaluate an Asbestos-Related Medical Condition or Illness. In those circumstances where the chest CT scan is being done for a non-asbestos-related diagnosis, it will not be a covered benefit of the Libby Medical Program.

The Claims Administrator will determine if the indication for a chest x-ray or CT scan is related to previous asbestos exposure.

# What Is An ICD-9 Code?

An "ICD-9 Code" refers to the diagnostic codes contained in the 2005 edition of the International Classification of Diseases (9th revision). This classification is an attempt by the World Health Organization to standardize medical diagnosis. ICD-9 Codes are used universally by physicians, insurance carriers, and others to identify medical diagnosis and illness.

As these Codes are updated, the Codes listed in this booklet will also be updated, by the Program Administrator, in conjunction with advice from the Claims Administrator or other health care professionals.

# When Coverage Begins

Benefits under the Libby Medical Program are paid for Eligible Medical Expenses incurred by a Covered Individual based on when that individual becomes covered under the Libby Medical Program:

■ If an individual became a Covered Individual on or before December 31, 2000, the Program will pay benefits for Eligible Medical Expenses incurred on or after January 21, 2000, which is the date that Grace announced the Program.

■ If an individual becomes a Covered Individual on or after January 1, 2001, the Program will pay benefits for Eligible Medical Expenses incurred on or after the date the individual becomes covered under the Program. Such coverage shall commence as of the earliest date that the individual is properly diagnosed with an Asbestos-Related Medical Condition or Illness. (Note: Such coverage, under no circumstances, may commence before the date that is one year before the date the Claims Administrator actually receives the individual's application.)

# Prescription Drugs

The Libby Medical Program's prescription drug benefit pays 100 percent of the Reasonable and Customary cost of prescribed drugs or medicines (with no "copay"), in accordance with the following provisions:

■ Libby 01. All Covered Individuals will be entitled to the Program's prescription drug benefit for the following prescription drugs:
  - all pulmonary drugs and inhalers
  - smoking deterrents (including over-the-counter with a prescription)
  - cough suppressants
  - antibiotics (including influenza treatment and all infections, not only in the lungs but all parts of the body)
  - oral corticosteriods
  - antineoplastics for cancers related to asbestos exposure
  - diuretics and potassium supplements
  - all respiratory OTC products, including decongestants, expectorants, and cough suppressants
  - antidepressants
  - cardiac drugs to treat atrial fibrillation, including (but not limited to) digitalis, coumadin (blood thinner), and antiarrhythmics (irregular heart beat)

This level of prescription drug coverage shall be referred to as "Libby-01."

■ **Libby 02.** If you are a Covered Individual who is properly diagnosed with any of the following medical conditions, all properly prescribed drugs and medicines shall be covered by the Program (subject to the limitations described on page 18 under "Prescription Drugs Not Covered"):

- Mesothelioma
- Lung cancer related to asbestos exposure
- Pulmonary disease requiring home oxygen therapy as a result of previous asbestos exposure
- Pulmonary hypertension with right sided heart failure
- Hospice-qualified illness
- Chronic pleuritic chest pain for at least 14 consecutive days with medical documentation and an associated pleural effusion.

This level of prescription drug coverage shall be referred to as "Libby-02."

Notwithstanding the forgoing, the Libby Medical Program shall only provide benefits with respect to prescribed drugs or medicines that are considered Eligible Medical Expenses under the Program. Also, please refer to page 18 for a specific list of drugs not covered by the Program under any circumstances.

The effective date of coverage for purposes of prescription drugs (described above) shall be the same effective date as applicable to coverage for other Eligible Medical Expenses (as specified above under "When Coverage Begins").

Covered Individuals will be provided with a Libby Medical Program Prescription Drug Card.

## At the Pharmacy

No claim form is needed when a Covered Individual fills a prescription at a "Participating" pharmacy (see below). A Covered Individual will simply show the pharmacist his or her Libby Medical Program Prescription Drug Identification Card. The pharmacist will be able to process the purchase of prescriptions covered by the Program through the use of the Card and then receive payment directly from the Program.

If a Covered Individual gets a prescription from a pharmacy that is not a Participating Pharmacy (see below), the Covered Individual will pay the pharmacist at the time of purchase and then submit a claim to Medco Health for reimbursement of the cost of the prescription. In this event, the Covered Individual must save all bills, receipts, and other information that describes the details of the prescription, and then submit a Medco Health claim for reimbursement of that amount directly to Medco Health. The Covered Individual should use a claim form to submit the claim (the address will be on the form). You may request claim forms from Medco Health Member Services by calling 1-800-832-7537.

## Participating Pharmacies

The Program has arranged for prescriptions to be filled by the pharmacies that are in the Medco Health network. These are the "Participating Pharmacies." There are approximately 57,000 pharmacies in this network nationwide (including all pharmacies in Libby, Troy, and Eureka). You may obtain information on Participating pharmacies by contacting Medco Health Member Services at 1-800-832-7537 or by going to the Medco Health Internet site at www.medco.com.

The Program Administrator reserves the right to change the provider of prescription drug services under the Libby Medical Program.

**Important!** The Program covers only Reasonable and Customary charges related to treatment or supplies, like prescription drugs. The entire cost of any prescription from a Participating Pharmacy will be deemed "Reasonable and Customary." If a charge from a Non-Participating pharmacy exceeds the Reasonable and Customary charge, however, reimbursement will be limited to the Reasonable and Customary amount.

In addition, any charges for any drugs provided to a Covered Individual by a Doctor will only be covered to the extent that those charges are Reasonable and Customary under the same criteria used in the case of drugs provided directly by a Participating Pharmacy.

## The Mail Service Program

A Covered Individual may use this program when he or she requires prescription drugs regularly during a period of extended medical treatment.

The program has several advantages: The Covered Individual will generally avoid filing claim forms and prescription drugs will arrive by mail at his or her home. Prescriptions for up to a 120-day supply of medication may be filled by completing a mail-order envelope and mailing it to Medco By Mail along with your Doctor's prescription. Mail order envelopes are available by calling Medco Health at 1-800-832-7537.

Mail order prescriptions should be submitted to:

Medco By Mail
P.O. Box 30493
Tampa, FL 33630-3493

If you have any questions about the mail service program, call Medco Health at 1-800-832-7537.

All charges for prescription drugs obtained under the mail order program will be deemed Reasonable and Customary.

## Coverage For Smoking Deterrents

The Libby Medical Program will also cover 100 percent of the Reasonable and Customary costs incurred by Covered Individuals for smoking deterrents, as prescribed by the Covered Individual's attending Doctor, including prescription and over-the-counter drugs.

## Prescription Drugs Not Covered

The Libby Medical Program only covers Medically Necessary drugs and medicines that are properly prescribed to treat a Covered Condition, in accordance with the provisions above under "Prescription Drugs" (page 14). In any event, the Program shall not provide benefits with respect to the following drugs and medicines:

- drugs and medicines that are not related to the Medically Necessary treatment of a Covered Condition
- over-the-counter medications (except for smoking deterrents, or respiratory agents, as prescribed by a Doctor)
- vitamins, including those prescribed by a Doctor
- diet supplements
- growth hormones
- Experimental or Investigational (page 40) drugs or medicines (unless approved by the Program Administrator or the Claims Administrator)
- fertility drugs
- medication furnished by any other drug or medical service for which no charge is made to a Covered Individual
- any prescription refilled in excess of the number of refills specified by the Doctor, or any refill dispensed more than one year after the original prescription
- any over-the-counter prescription that does not identify a specific product.

The preceding list is the list of the drugs and medicines that are not covered by the Libby Medical Program.

Also, "Off-Label" prescriptions are not covered by the Program, unless a Doctor provides the Claims Administrator with an article from a peer-reviewed medical journal that substantiates the prescription's use in the applicable case. An "Off-Label" prescription is a prescription for a drug where the drug's indication is not referenced in the PDR for such uses.

If you are not sure whether or not a particular prescription drug is covered, please call Medco Health Member Services at 1-800-832-7537.

# Durable Medical Equipment

The Libby Medical Program pays benefits for durable medical equipment, which is equipment needed for treating a medical condition and where this treatment occurs outside of an acute (e.g., hospital) or sub-acute (e.g., rehabilitation center) medical facility. For example, durable medical equipment may include home oxygen, wheelchairs (motorized or non-motorized), nebulizers, and hospital beds.

Benefits for durable medical equipment under the Libby Medical Program, however, are subject to the following provisions:

■ No benefits for durable medical equipment are payable unless the Claims Administrator certifies in advance that the durable medical equipment is Medically Necessary to treat a Covered Condition and is appropriate for that condition. In this event, the Libby Medical Program will pay benefits for either the purchase or rental of durable medical equipment, as determined to be appropriate by the Claims Administrator.

■ The maximum annual benefit for durable medical equipment for each covered person, excluding expenses related to home oxygen, is $5,000.

In addition, please note that the Libby Medical Program retains all ownership rights to all durable medical equipment that is purchased or rented under the terms of the Program. Therefore, if the Claims Administrator determines that the use of durable medical equipment by a covered person is no longer Medically Necessary, the Claims Administrator will determine what to do with this equipment.

# Coverage for Home Health and Hospice Care

Expenses related to home health or hospice care are only covered if pre-approved by the Claims Administrator in accordance with this section.

## Home Health Care

For purposes of the Program, "Home Health Care" means care provided to a Covered Individual in his or her home, pursuant to a home health care plan developed and approved by the Covered Individual's attending Doctor, and which is provided by a public or private agency that is licensed to render Skilled medical care in the home of patients.

Expenses for Home Health Care will be covered by the Libby Medical Program if the Claims Administrator determines that all of the following criteria are satisfied with respect to a Covered Individual:

■ Expenses are for care that satisfies the definition of "Home Health Care" as specified above.

■ The expenses are related to Medically Necessary care of the Covered Individual.

■ The Covered Individual is homebound.

■ A home health care plan is established and approved for the Covered Individual by his or her attending Doctor.

The following are the Home Health Care expenses that are covered by the Libby Medical Program:

■ Expenses for intermittent Skilled nursing care by a registered graduate nurse (R.N.), or licensed practical nurse (L.P.N.), as prescribed by the attending Doctor.

■ Expenses for the Skilled services of a licensed physical, occupational, or speech therapist for conditions related to a Covered Condition.

■ Expenses for Custodial/Maintenance Care provided by licensed home health aides, on an intermittent basis, which is provided to the Covered Individual at the same time he or she is receiving Skilled medical services for a Covered Condition.

■ Expenses for medical supplies and services used to treat a Covered Condition, which are Medically Necessary, prescribed by a Doctor, and given in conjunction with Skilled service.

The following services and supplies are not covered under the Program's Home Health Care coverage:

■ Services and supplies not included in the attending Doctor's home health care plan.

■ Custodial/Maintenance Care (except as described in the preceding information when such care is given at the same time the Covered Individual is receiving Skilled medical services).

■ Services of a person who ordinarily resides in the home of the Covered Individual.

■ Transportation services for the Covered Individual or any other person.

■ Housekeeping for the Covered Individual or any other person.

■ Services and supplies provided by a home health care agency that are not related to a Covered Condition.

■ Services and supplies for treatment of conditions other than a Covered Condition.

■ Charges in excess of the limits described below.

## Limits on Home Health Care Benefits

The Libby Medical Program will only cover expenses related to Home Health Care for a maximum of 100 "home health care visits" per calendar year for a Covered Individual. A "home health care visit" means a visit by a nurse, home health aide, or therapist. Each visit that lasts for a period of 4 or fewer hours will be regarded as one home health visit. If the visit exceeds 4 hours, each period of four hours will be regarded as one visit, and any remaining part of the visit that is fewer than 4 hours will be treated as 1 visit.

Expenses for home health care that are incurred prior to the date that the Claims Administrator determines that the care satisfies the criteria listed above, will not be covered by the Libby Medical Program.

In the case of Home Health Care, the Claims Administrator reserves the right to enter negotiations with various providers regarding charges for various supplies and services, and to pay the amount of such services and supplies that is determined as appropriate pursuant to such negotiation. Also, the Program will only cover expenses related to Home Health Care that are Reasonable and Customary.

If the Covered Individual disagrees with the determination of the Claims Administrator in this regard, he or she is permitted to appeal that decision in accordance with the provisions specified under "Questions and Appeals" on page 36.

## Hospice Care

For purposes of the Program, "Hospice Care" means health care provided by a hospice agency or hospice facility under a program providing coordinated palliative and supportive services for terminally ill individuals, which is rendered in the home, or in an "inpatient hospice setting." An "inpatient hospice setting" means a facility, or distinct part of one, which:

- mainly provides inpatient hospice care to terminally ill persons,
- meets any licensing or certification standards set forth by the jurisdiction where it is,
- keeps a medical record on each patient,
- provides an ongoing quality assurance program, which includes reviews by Doctors other than those who own or direct the facility,
- is run by a staff of Doctors, and at least one such Doctor must be on call at all times,
- provides, 24 hours a day, nursing services under the direction of a registered nurse (R.N.), and
- has a full-time administrator.

Expenses for Hospice Care will be covered by the Libby Medical Program if the Claims Administrator (or the Program Administrator) determines that all of the following criteria are satisfied with respect to a Covered Individual:

■ Expenses for care that satisfies the definition of "Hospice Care" above.

■ The expenses are related to the care of the Covered Individual.

■ The Covered Individual's attending Doctor certifies that the prognosis is terminal with a life expectancy of 6 or fewer months.

■ The Covered Individual is accepted into a licensed hospice program.

The following are the only Hospice Care expenses that are covered by the Libby Medical Program:

■ For inpatient hospice care, expenses for room and board for confinement in an inpatient hospice setting.

■ Charges for ancillary services and supplies provided by a hospice agency or facility while the Covered Individual is being provided with Hospice Care, including (but not limited to) rental of durable medical equipment that is used to treat a condition related to the Covered Condition, and supplies and services for pain control and palliative treatment of a Covered Condition, which are Medically Necessary.

■ Expenses for Doctor services and/or nursing care by a licensed registered nurse (R.N.) or a licensed practical nurse (L.P.N.).

■ Expenses for services rendered by a licensed home health aide for Custodial/Maintenance Care.

■ Expenses for social services for the Covered Individual provided by licensed social workers, psychologists, or counselors.

■ Charges for nutrition services by a licensed dietician.

The following services and supplies **are not covered** under the Program's Hospice Care coverage:

■ Transportation services for a Covered Individual or any other person (except if approved by the Claims Administrator as transportation of a Covered Individual to a Hospice or facility).

■ Hospice care for treatment of conditions other than a Covered Condition.

■ Charges by a hospice agency or hospice facility for services not related to a Covered Condition.

■ Charges in excess of the limits as described below.

■ Charges from a hospice agency that is not properly licensed.

*Libby Medical Program  005*

## Hospice Care At Home

The Program will only cover Hospice Care that is being provided to a Covered Individual in his or her home, unless the Claims Administrator (or Program Administrator) determines that inpatient Hospice Care is medically appropriate for the Covered Individual. If that determination is made, then Hospice Care in an appropriate facility may be approved.

With regard to hospice care at home, the program will also cover reasonable costs for "respite care" of a period of up to five days during each 30-day period of hospice care at home. For this purpose, "respite care" means care to temporarily relieve family members from responsibility for care and monitoring of the Covered Individual. Notwithstanding the forgoing, in order to be covered by the Program, the respite care must be pre-approved by the Claims Administrator.

## Limits On Hospice Care Benefits

The Libby Medical Program will only cover expenses related to Hospice Care for a maximum of 180 days for any Covered Individual. If, however, the attending Doctor determines that at the end of the initial 180-day period the Covered Individual's life expectancy remains 6 or fewer months, then the Claims Administrator (or Program Administrator) may authorize an extension of Hospice Care for up to a maximum of an additional 180-day period.

Expenses for hospice care that are incurred prior to the date that the Claims Administrator determines that the care satisfies the criteria listed above, will not be covered by the Libby Medical Program.

In the case of Hospice Care, the Claims Administrator (and Program Administrator) reserves the right to enter negotiations with various providers regarding charges for various supplies, equipment, and services, and to pay the amount of such services and supplies that is determined as appropriate pursuant to such negotiation. Also, the Program will only cover expenses related to Hospice Care that are Reasonable and Customary.

If the Covered Individual disagrees with the determination of the Claims Administrator in this regard, he or she is permitted to appeal that decision in accordance with the provisions specified under "Questions and Appeals" on page 36.

# Alternative Coverage Care

For purposes of the Program, "Alternative Care" means confinement and care in an extended care facility or skilled nursing facility, which primarily provides Skilled services to patients. The facility must be licensed and be operated in accordance with the applicable laws or regulations of the jurisdiction in which it is located.

Care provided in an "extended care facility" or "skilled nursing facility" is referred to in this document as "Alternative Care."

Expenses related to Alternative Care are only covered if pre-approved by the Claims Administrator in accordance with this section.

## Extended Care Facility/Skilled Nursing Facility Care

Expenses for Alternative Care will be covered by the Libby Medical Program if the Claims Administrator (or the Program Administrator) determines that all of the following criteria are satisfied with respect to a Covered Individual:

■ Expenses for care that satisfies the definition of "Alternative Care" above.

■ The expenses are related to the care of the Covered Individual as a result of the effects of a Covered Condition upon that Individual.

■ The attending Doctor has documented that confinement to a Hospital would be Medically Necessary to treat the Covered Condition if Alternative Care was not provided.

■ The Alternative Care begins within 14 days after a Hospital confinement of at least 3 consecutive days for a Covered Condition.

■ The attending Doctor certifies that confinement in an Alternative Care Facility is Medically Necessary.

The following services and supplies are **not covered** under the Program's Alternative Care coverage:

■ Custodial/Maintenance Care.

■ Charges for services not related to a Covered Condition.

■ Charges for services in excess of the limits described below.

## Limits on Alternative Care Benefits

The Libby Medical Program will only cover expenses for Alternative Care for a maximum of 60 days per calendar year for any Covered Individual.

Expenses for Alternative Care that are incurred prior to the date that the Claims Administrator (or the Program Administrator) determines that the care satisfies the criteria listed above, will **not** be covered by the Libby Medical Program.

In the case of Alternative Care, the Claims Administrator (and Program Administrator) reserves the right to enter negotiations with various providers regarding charges for various supplies and services, and to pay the amount of such services and supplies that is determined as appropriate pursuant to such negotiation. Also, the Program will only cover expenses related to Alternative Care that are Reasonable and Customary.

If the Covered Individual disagrees with the determination of the Claims Administrator in this regard, he or she is permitted to appeal that decision in accordance with the provisions specified under "Questions and Appeals" on page 36.

# Autopsy Benefits

In the event that a Covered Individual's attending physician and/or Covered Individual's nearest relative(s), as required under applicable local law or rules, agree to an autopsy of the Covered Individual, the Program will cover Reasonable and Customary expenses related to such autopsy by a pathologist. The results of any such autopsy shall be made available to the family. The Claims Administrator will also receive information regarding such autopsy, for research purposes.

# If You Receive Other Benefits

## Primary and Secondary Plans

If a Covered Individual is covered under Medicare, Medicaid, or any other governmental, group, or individual health care plan or program, in addition to being covered under the Libby Medical Program, the Libby Medical Program will always be the primary plan for Eligible Medical Expenses that are related to a condition or illness due to previous asbestos exposure. Because the Libby Medical Program is always primary in these cases, claims for Eligible Medical Expenses should be filed first under the Libby Medical Program following the procedures under "Claims for Benefits" (see page 34).

# When Benefits Are Not Paid

Medical Benefits are not paid for expenses that are not covered by the Program. This means that the Libby Medical Program will not pay benefits for expenses related to:

- care and treatment that is not related to a Covered Condition (page 10) or that is not Medically Necessary (page 41).
- care and treatment that is provided to someone who is not a Covered Individual (page 7).
- services and supplies not ordered by a Doctor (page 39).
- charges for any service or supply exceeding what is Reasonable and Customary (page 42).
- charges for services provided by a family member (a parent, spouse, child, brother, sister, grandparent, or any relative who ordinarily lives in the Covered Individual's home).
- cosmetic surgery.
- dental expenses.
- eye refractions, eyeglasses, and hearing aids and their fitting.
- an inpatient stay in a non-licensed hospital.
- charges a Covered Individual (page 3) is not legally obligated to pay.
- treatment or supplies considered Experimental or Investigational (page 40), unless approved by the Claims Administrator.
- transportation or lodging expenses (including, but not limited to, transportation to and from a Doctor's office), except in the case of ambulance services for Covered Conditions.
- charges for any communication, transportation, or travel of Doctors, nurses, or other service providers.
- benefits to replace lost income.
- charges for Doctor or Hospital services during a confinement as an inpatient that is primarily for diagnostic purposes or which could have been performed on an outpatient basis.
- charges for convalescent care.
- charges for nursing home.
- charges for Custodial/Maintenance Care (page 39), except in the case of Home Health Care (page 20) or Hospice Care (page 22).
- charges for home health and/or hospice care, unless pre-approved by the Claims Administrator in accordance with the provisions on pages 20-24.

■ charges for services of an extended care facility or skilled nursing facility, unless pre-approved by the Claims Administrator (or Grace) in accordance with the provisions on pages 25-26.

■ charges in connection with any Hospital confinement or any surgical, medical, or other treatment or services or supplies which are not recommended and approved by a Doctor who is attending the Covered Individual.

■ charges for telephone consultation, failure to keep an appointment, or charges for completion of a claim form.

■ charges for care by a doctor, hospital, or facility that is not authorized to operate by license or certification in the state where services are provided.

■ charges for treatment of a mental or nervous disorder (including, but not limited to, depression).

■ charges for treatment obtained outside the United States or Canada.

■ charges made or authorized by an individual or facility not legally qualified or licensed for the purpose of treatment (for example, the Program will not cover physician-related expenses for care provided by someone who was not a Doctor, as defined on page 39.

■ care provided by a nurse or aid who is not properly licensed.

The preceding list is the list of the expenses that are not covered by the Libby Medical Program. If you have a question about whether or not a medical supply or condition is covered, call the Claims Administrator at 1-888-563-1564.

# When Coverage Ends.

Generally, once you are covered by the Libby Medical Program, your coverage under the Program continues for your lifetime, subject to the following:

■ Grace has the right to terminate coverage for anyone who intentionally or knowingly engages in conduct, either alone or in conjunction with others, that defrauds (or is intended to defraud) the Libby Medical Program, by inducing (or attempting to induce) the Program to pay expenses for charges that are not covered by the Program. This includes, but is not limited to, charges for services that are not actually provided, charges for treatment that is not directly related to a Covered Condition, charges that have already been paid by another plan or program, and charges exceeding the Reasonable and Customary amount of an expense related to the treatment of a Covered Condition.

■ Grace has the right to terminate the Program for all Covered Individuals if the Program becomes subject to regulation or control by any state or local governmental agency, or if the Program becomes subject to the control, administration, or monitoring of a court.

## Awards And Settlements That Include Payment For Future Medical Expenses

You will not be eligible to participate in the Libby Medical Program, or your participation in the Program will terminate, if:

■ You receive a cash settlement for asbestos-related claims from Grace, which includes compensation for future medical expenses that would otherwise be covered by the Libby Medical Program.

■ Grace pays you a cash award, as a result of a judgement in a court case for asbestos-related claims, which includes compensation for future medical expenses that would otherwise be covered by the Libby Medical Program.

If you receive either a cash settlement or a cash award from Grace that does not include compensation for future medical expenses, then you will not be excluded from coverage under the Libby Medical Program.

# Program Audits

Periodically, the Libby Medical Program will retain a third party to audit and review any and all aspects of the Program, including individual claims for benefits. The auditor may, for example, evaluate whether or not claims have been determined and paid properly. The results of any audit will be reported to the Libby Medical Program. Subject to any applicable privacy constraints (see "Privacy" below), the Libby Medical Program may provide information concerning the results of the audit to Grace so that Grace and the Libby Medical Program can cooperate in addressing any issues with the Program, including taking any actions that are appropriate to address any fraud or other sanctions or conditions that are inconsistent with the written terms of the Program.

For example, the Libby Medical Program reserves the right to exclude from claim consideration any Doctor, Hospital, or other provider who defrauds or attempts to defraud the Program (see page 38), and to take other legal action against such a provider to recover any amounts paid to that provider not in accordance with the written terms of the Program. The Libby Medical Program also reserves the right to require that Covered Individuals be examined by Doctors selected by the Claims Administrator. All decisions in this regard will be made exclusively by the Libby Medical Program, and its decision will be final and binding on all parties.

# Privacy

### Protected Health Information (PHI)

The Libby Medical Program may obtain information that relates to your physical or mental health condition, treatment, or payment for your health care. When this information is individually identifiable to you, it is called **"Protected Health Information"** (PHI). Special rules governing the privacy of PHI have been issued under the federal Health Insurance Portability and Accountability Act ("HIPAA"). The HIPAA regulations (which are referred to herein as the "Privacy Regulations") are set forth at 45 CFR Subtitle A, Subchapter C, Part 164.

**The following provisions related to PHI under the Libby Medical Program are effective as of April 14, 2003.**

## Disclosure of PHI to Health Network America and Grace

The Libby Medical Program has engaged Health Network America as its Claims Administrator and expects to disclose PHI to Health Network America in furtherance of that role. The following privacy guidelines will apply:

■ **Permitted and Required Uses and Disclosures.** The Libby Medical Program may disclose PHI to Health Network America, and Health Network America may use or disclose PHI obtained from the Libby Medical Program, only for the following purposes.

- to process claims,
- to assist the Libby Medical Program in the disposition of final appeals,
- to select and monitor the Libby Medical Program's service providers,
- to consult with the Libby Medical Program's service providers regarding administrative functions, including treatment, payment, and health care operations,
- to consult with the Libby Medical Program radiology peer reviewers and pulmonary consultants, and
- as otherwise required by law.

■ **Health Network America's Agreement.** Under a *business associate* agreement executed with the Libby Medical Program, Health Network America has agreed to:

- not use or further disclose the PHI other than as permitted above,
- use appropriate safeguards to prevent use and disclosure of PHI other than as provided under the agreement,
- report to the Libby Medical Program any unsanctioned use or disclosure of PHI of which Health Network America becomes aware,
- ensure that any agents or subcontractors who receive PHI from Health Network America that was obtained from the Libby Medical Program will agree to the same restrictions and conditions that apply to Health Network America,
- make PHI available for response to a participant's request for access to the participant's PHI, as provided by the Privacy Regulations,
- make PHI available for amendment, and incorporate any amendments to PHI, as provided by the Privacy Regulations.
- make available information needed to provide an accounting of disclosure as provided by the Privacy Regulations,

- make its internal practices, books, and records relating to use and disclosure of PHI received from the Libby Medical Program available to the Secretary of the United States Department of Health and Human Services, for purposes of determining the Libby Medical Program's compliance with the Privacy Regulations, and

- if feasible, return or destroy all PHI received from the Libby Medical Program when Health Network America no longer needs the PHI for the purpose for which it was disclosed to Health Network America or, if return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction infeasible.

■ **Separation Between the Libby Medical Program and Grace/Permitted Disclosures.** Any officer or employee of Grace who, from time to time in the ordinary course of business of Grace, performs administration functions related to the Libby Medical Program, may be given access to PHI received from the Libby Medical Program, subject to the following restrictions:

(a) These persons may only have access to, and use and disclose, PHI for Libby Medical Program administration functions that are performed by Grace for or on behalf of the Libby Medical Program (including functions as the Program Administrator, see page 42); and

(b) These persons shall be subject to disciplinary action and sanctions in accordance with Grace's policies, up to and including termination of employment, for any use or disclosure of PHI in breach of, or in violation of, or in noncompliance with, the provisions of applicable law.

Notwithstanding the limitations described above, the Libby Medical Program and Health Network America or other business associates of the Libby Medical Program may also disclose to Grace the following:

(a) Information on whether an individual is participating in the Libby Medical Program; and

(b) Summary health information, provided that Grace requests summary health information for the purpose of: (i) obtaining bids from health service providers with respect to the provision of services under the Libby Medical Program or (ii) modifying, amending, or terminating the Libby Medical Program. (See also page 31, "Program Audits.")

Grace has provided certification to the Libby Medical Program that PHI will be kept confidential under applicable privacy laws.

# Claims for Benefits

The following provides you with information about how and
when to file a claim.

## Covered Expenses

If you -- as a Covered Individual -- incur covered expenses, you
are responsible for requesting payment from the Libby Medical
Program by filing a claim. However, your doctor or a hospital
may also file a claim for you.

A claim must be submitted within two years after the date of
service. You are responsible for the timeliness of the submission,
even if a doctor or hospital files a claim for you. If you do not file
a claim within one year after the date of service, benefits for that
covered expense will be denied or reduced, as provided under the
Libby Medical Program.

If your claim relates to an inpatient stay, the date of service is the
date your inpatient stay ends.

If you provide written authorization to allow direct payment to a
provider, all or a portion of any covered expenses due to a
provider may be paid directly to the provider instead of being
paid to you. The Claims Administrator will not reimburse third
parties who have purchased or been assigned benefits by doctors
or other providers.

## Required Information

When you request benefits from the Libby Medical Program, you
must provide the Claims Administrator with all of the following
information:

■ The name and address of the Covered Individual (even if the
claim is for a covered family member).

■ The member and group number on your identification card.

■ An itemized bill from your provider that includes:
  - patient diagnosis
  - place of service - date(s) of service
  - number of services or units rendered
  - procedure code(s) and descriptions of service(s) provided
  - charge for each service provided
  - name, address, and tax identification number for the provider
    of the service.

## How Claims Are Handled

If your claim is denied, you'll receive a written notice from the Claims Administrator within 30 days after receipt of the claim, as long as all needed information was provided with the claim. The Claims Administrator will notify you within this 30-day period if additional information is needed to process the claim, and may request a one-time extension not longer than 15 days and suspend making a claim decision until all the requested information is received.

Once notified of the extension, you'll then have 45 days to provide this information. If all of the necessary information is received within the 45-day period and the claim is denied, the Claims Administrator will notify you of the denial within 15 days after the information is received. If you do not provide the needed information within the 45-day period, your claim will be denied. A denial notice will explain the reason for denial, refer to the portion or portions of the Libby Medical Program on which the denial is based, and provide the Libby Medical Program's claim appeal procedures.

## Concurrent Care Claims

If an ongoing course of treatment was previously approved for a specific period or number of treatments, and you request to extend treatment, your request will be considered a new claim and decided according to the time frames that apply to a new claim.

# Questions and Appeals

The following provides you with details on what to do if:

■ you have a question or concern about covered expenses or your benefits, or

■ you're notified that a claim has been denied because it has been determined that a service or supply is excluded under the Libby Medical Program and you wish to appeal this decision.

### What to Do First

If you have a question or concern about a benefit decision, you may informally contact Claims Administrator at 1-888-563-1564 before requesting a formal appeal.

If the Claims Administrator cannot resolve the issue to your satisfaction over the phone, you may submit your question or concern in writing.

If you are not satisfied with a benefit decision as described under "Claims for Benefits," however, you may appeal it as described below, without first informally contacting the Claims Administrator.

If you informally contact the Claims Administrator first and later wish to request a formal appeal in writing, you should contact the Claims Administrator and request an appeal. If you request a formal appeal, the Claims Administrator will provide you with the appropriate address for filing an appeal.

### How to Appeal a Claim Decision

If you disagree with a claim determination after following the above steps, you may contact the Claims Administrator in writing to formally request an appeal. Your first appeal request must be submitted in writing to the Claims Administrator within 180 days after you receive the claim denial.

## Appeal Process

An individual who was not involved in the initial claim decision will be appointed by the Claims Administrator to decide the appeal.

The Claims Administrator, or the qualified individual, may consult with a health care professional with appropriate expertise in the field who was not involved in the prior decision.

The Claims Administrator or the qualified individual may consult with, or seek the participation of, medical experts as part of the appeal resolution process. You must consent to this referral and the sharing of pertinent medical claim information. Upon request, and free of charge to you, you have the right to reasonable access to and copies of, all documents, records, and other information relevant to your claim for benefits.

You also may name a representative to handle your appeal. You're responsible for any expense related to a paid representative.

## Grace's Role in the Claims and Appeal Process

Although Grace reserves the right to review claim and appeal decisions, it will not generally review those decisions; and when it does review those decisions, it will not change the decision unless the decision, upon review by Grace, is determined to be without any basis.

## Qualified Medical Child Support Orders

Payments under this plan will be made according to the terms of a "qualified medical child support order," which generally includes a judgment, decree, or order by a court requiring a non-custodial divorced or separated employee to provide coverage to a child under the Libby Medical Program. If the Plan Administrator determines that a medical child support order qualifies, benefit payments from the Libby Medical Program may be made according to the qualified order to the child or children named in the order, or to the custodial parent or legal guardian, where appropriate, or to health care providers (if benefits have been properly assigned by the child or children or by the custodial parent or legal guardian).

## Expulsion of Providers from the Program

Any attempt by a Doctor or any other provider of services or supplies to require the Libby Medical Program to cover expenses previously paid by another plan or program, or attempt to otherwise engage in conduct, either alone or in conjunction with others, intended to defraud the Libby Medical Program, by inducing (or attempting to induce) the Program to pay expenses for charges that are not covered by the Program, may result in the Doctor's or provider's expulsion from the Libby Medical Program.

In addition, any Doctor or other provider of services or supplies, who repeatedly submits "erroneous diagnoses" to the Claims Administrator, or any other party performing services for the Libby Medical Program, may be expelled from the Libby Medical Program. For this purpose, "erroneous diagnosis" means any medical diagnosis that cannot be substantiated or confirmed by peer review, tissue pathologic examination, or autopsy findings, to the satisfaction of the Claims Administrator, as determined in its sole discretion, in accordance with the practices or procedures established by the Claims Administrator (again, in its sole discretion).

Covered Individuals will be notified in writing if a Doctor or provider is expelled from the Libby Medical Program. The Libby Medical Program will not reimburse a Covered Individual (or otherwise pay for) any services or supplies that the Covered Individual receives from an expelled Doctor or provider commencing 15 days after the notice was mailed or otherwise sent to Covered Individuals.

## Tax Consequences of Participation

Although Grace believes that payments to Covered Individuals are excludable from gross income for Federal income tax purposes, Grace does not assume any responsibility for the tax consequences of your participation in the Libby Medical Program. Covered Individuals are encourage to consult with their personal tax advisors concerning the federal, state, and local tax consequences of participation in the Libby Medical Program and the taxation of claims paid under the Libby Medical Program.

# Definitions

The following terms are important—they may affect medical benefits.

- *Alternative Care* (page 25).
- *Asbestos-Related Qualified Lung Cancer* (page 6).
- *Asbestos-Related Qualified Mesothelioma* (page 6).
- *Asbestos-Related Qualified Respiratory Condition* (page 5).
- *Asbestos-Related Qualifying Medical Condition or Illness* (page 6).
- *Claims Administrator:* The entity responsible for processing claims submitted under the Program. Grace will appoint the Claims Administrator, and may change the Claims Administrator at any time in the future, without the consent of any other parties. As of July 1, 2005, the Claims Administrator (see page 43) continues to be Health Network America.
- *Covered Condition* (page 10).
- *Covered Individual* (page 4).
- *Custodial/Maintenance Care:* The type of care (including room and board needed to provide that care) given mainly to help a person with personal hygiene or to perform the activities of daily living. Examples of custodial/maintenance care include training or help to get in and out of bed, bathe, dress, prepare special diets, eat, walk, use the toilet, or take oral drugs or medicines (or those which usually can be self-administered). Services are considered to be custodial care regardless of who authorizes, recommends, provides, or directs the care, or where the care is given.
- *Doctor:* Any doctor of medicine who satisfies the following criteria: the individual is legally qualified and licensed to practice medicine or surgery at the time and place such services are performed, and such services are within the scope of the license.
- *Durable Medical Equipment* (page 19).
- *Eligible Individual* (page 5).
- *Eligible Medical Expense:* An expense incurred for the Medically Necessary treatment of a Covered Condition of a Covered Individual, provided the expense does not exceed the amount that is Reasonable and Customary for the services or supplies that are provided during such treatment, and provided that the expense is otherwise covered under the terms of the Libby Medical Program described in this booklet (as may be updated or amended from time to time).

■ *Experimental or Investigational Treatment or Supplies:* The medical, surgical, or other health care services, supplies, treatments, procedures, drug therapies, or devices, which are determined by the Claims Administrator, at the time it makes a determination regarding coverage in a particular case, to be either:

- not generally accepted by informed health care professionals in the United States as effective in treating the condition, illness, or diagnosis for which their use is proposed, or
- not proven by scientific evidence to be effective in treating the condition, illness, or diagnosis for which their treatment is proposed.

**Important!** The Claims Administrator determines whether or not treatment or supplies are Experimental or Investigational based on the advice of experts in the field, and on published studies in recognized medical journals, review of usage patterns by practitioners in the specialty related to the treatment and, if considered appropriate by the Program Administrator or the Claims Administrator (as appropriate), by obtaining recommendations from referrals to professional review boards. A treatment is no longer considered experimental when it is commonly and customarily recognized as appropriate by practitioners specializing in the field of that disease as appropriate for the treatment of that stage of the disease. With respect to drugs or medicines, coverage is provided by the Program for drugs or medicines classified by the U.S. Food and Drug Administration as an Investigational New Drug for Treatment Use (Treatment IND) Group C or modified Group C (certain professionals refer to this class as "Phase III").

■ *Grace:* W. R. Grace & Co. Grace is the "Program Administrator." For purposes of making decisions or exercising its discretion under the Libby Medical Program, the term "Grace" or the "Program Administrator" also includes any employee, committee, or department of Grace that has been delegated the authority to act on behalf of Grace, regarding any aspect of the Program, by the Board of Directors of Grace or its designee.

■ *Health Network America:* See "Claims Administrator" (page 43).

■ *Home Health Care* (page 20).

■ *Hospice Care* (page 22).

■ *Hospital:* A facility licensed by the state in which it operates as a "hospital" and that meets one of the following rules:

1. It is accredited as a Hospital under the Hospital Accreditation Program of the Joint Commission on the Accreditation of Health Care Organizations.
2. It is supervised by a staff of Doctors, has 24-hour-a-day nursing service, and is primarily engaged in providing either general inpatient medical care and treatment through medical, diagnostic and major surgical facilities on its premises or under its control, or specialized inpatient medical care and treatment through medical and diagnostic facilities (including X-ray and laboratory) on its premises, under its control, or through a written agreement with a Hospital (which itself qualifies under number 1 or 2 of this definition) or with a specialized provider of these facilities.

The Program Administrator or the Claims Administrator determines whether or not a facility qualifies as a Hospital under rule number 2.

Notwithstanding the forgoing provisions, St. John's Lutheran Hospital in Libby, Montana will be regarded as a "Hospital" under the Program, for as long as it is licensed as a hospital in Montana.

But in no event will "Hospital" include a nursing home or institution or part of one that is primarily a facility for convalescence, nursing, rest, or the aged, or furnishes primarily domiciliary or custodial care, including training in daily living routines, or is operated primarily as a school.

■ *ICD-9 Code* (page 13).

■ *Latency Period* (page 7).

■ *Medically Necessary:* The use of services or supplies that are "medically reasonable and necessary" (as defined below) to identify or treat a Covered Individual's Covered Condition, as determined by the Program Administrator or the Claims Administrator, through reliance on published medical guidelines (subject to change and review on a prospective basis), including (but not limited to) the U.S. Federal Medicare Guidelines and Volume I of Drug Information For The Health Care Professional (USPDI), as applicable and as such guidelines may be modified over time.

To be considered "medically reasonable and necessary," a medical service or supply must be:
- Established as safe and effective,
- Consistent with the symptoms or diagnoses of the illness under treatment,
- Necessary and consistent with generally accepted professional medical standards of care (i.e., not Experimental or Investigational or grossly inappropriate),
- Not furnished primarily for the convenience of the patient, the attending physician, or another physician or supplier, and
- Furnished at the most appropriate level that can be provided safely and effectively to the patient.

All as determined by the Program Administrator or Claims Administrator.

■ *OTC (Over the Counter):* All smoking deterrents and all respiratory agents with a proper prescription (page 14).

■ *Primary Plan* (page 27).

■ *Participating Pharmacy* (page 16).

■ *Program Administrator:* The Program Administrator of the Libby Medical Program is "Grace" (see pages 40 and 43).

■ *Reasonable and Customary:* A charge not exceeding an amount — determined by the Claims Administrator through reliance on published medical industry standards (subject to change and review on a prospective basis), including (but not limited to) the schedules of the Medical Data Research (MDR) Payment System and of the Health Insurance Association of America (HIAA) Prevailing Healthcare Charges System (as applicable and as such standards may be modified over time) — that is the lowest of:
- the usual charge by the Doctor or other provider of the services or supplies for the same or similar services or supplies,
- the prevailing charge of the majority of Doctors or other providers in the same or a similar geographic area for the same or similar services or supplies, or
- the actual charge for the services or supplies;

All as determined by the Claims Administrator.

■ *Skilled Services:* Services that must be provided by a licensed Doctor, licensed nurse or therapist or licensed nurse practitioner (and such service is not Custodial/Maintenance Care).

# Other Information

The following pages describe other information you should know about the plan and your rights.

## Plan Sponsor

The sponsor of the plan is W. R. Grace & Co., 7500 Grace Drive, Columbia, MD 21044.

## Plan Administration

The Plan Administrator is the "Program Administrator," which is W. R. Grace & Co., 7500 Grace Drive, Columbia, MD 21044, (410) 531-4000 (see page 40 for a definition of "Grace"). Grace is responsible for all aspects of the Program (including, but not limited to, the interpretation of all provisions of the Program), except where such aspects have been specifically delegated to the Claims Administrator.

Grace, as the Claims Administrator, however, may seek the advice of health care professionals to assist Grace with making determinations regarding its responsibilities.

## Claims Administrator

As of July 1, 2005, the Claims Administrator continues to be:

Health Network America
P.O. Box 65
West Long Branch, NJ 07764-0065
1-888-563-1564

The Claims Administrator is responsible for initial claim decisions, resolutions of these decisions, and payment of benefits.

## Determinations and Decisions

The determinations and decisions made by Grace under the Libby Medical Program will be final and binding on all Covered Individuals and other parties. Grace reserves the right to retain and rely upon the advice of other parties, including experts, physicians, and attorneys that it selects.

## Plan Year

Records are kept on a plan-year basis. The first plan year is a short plan year, beginning on April 3, 2000 and ending on December 31, 2000. Remaining plan years will be the same as a calendar year (January 1 - December 31).

## Plan Identification

The official name of the Program is the Libby Medical Program. The Internal Revenue Service and Department of Labor identify Grace by the number 65-0773649 and the Program by the number 528. The Program is classified as a "welfare plan" providing medical benefits.

## The Program's Future

Grace, by action of its Board of Directors (or its designee), reserves the right to update or amend the Program at any time, provided that such update or amendment is consistent with the purpose of the Libby Medical Program (see page 4), as determined by Grace. For example, Grace may determine that it is necessary to change or modify the guidelines that are used to determine what is Medically Necessary or a Reasonable and Customary charge.

## Legal Service

The agent for service of legal process is the General Counsel, W. R. Grace & Co., 7500 Grace Drive, Columbia, MD 21044.

### Plan Documents

This booklet is the plan document of the Libby Medical Program
as of July 1, 2005.

### If You Cannot Receive Payments

If Grace or the Claims Administrator determines that a Covered
Individual is not able to receive payments — for example, if the
Covered Individual is physically or mentally disabled — it may
have payments made to the person or institution responsible for
the Covered Individual.

### Rights to Benefits

Benefits from the Program may not be assigned, sold, transferred,
or pledged to a creditor or anyone else.

# Effective Dates of Program Documents

This Libby Medical Program document (005), effective July 1,
2005, supercedes all prior Program documents, and will govern the
terms of the Program until further notice.

## THE LIBBY MEDICAL PLAN QUALIFIED SETTLEMENT FUND TRUST

1.      **Name and Purpose of the Trust.** The Trust shall be known as the Libby

Medical Plan Qualified Settlement Fund Trust (the "Trust"). The purposes of the Trust are to

administer the Trust in the best interests of beneficiaries of the Trust, and (1) to receive from

W. R. Grace & Co., transfer of the Grace Libby Medical Plan as described in the Term Sheet

dated January 10, 2012, and attached hereto as Exhibit A, after Grace has terminated the Grace

Libby Medical Plan; (2) to administer the Trust, including as it may be modified pursuant hereto;

(3) to receive from W.R. Grace and Co., the sum of $19.5 million in cash to fund the Trust; and

(4) to modify the Libby Medical Plan in any manner as may be in the best interests of the

beneficiaries defined herein. The Trust is established pursuant to the Term Sheet attached hereto

as Exhibit A (the "Term Sheet"), wherein the Trust is referred to as the "LMP Trust." The Trust

is being established as a qualified settlement fund ("QSF") in accordance with 26 U.S.C. § 468B

and its corresponding regulations, 26 C.F.R. § 1.486B. The Trust shall be subject to the

jurisdiction and supervision of the District Court of the 19th Judicial District of the State of

Montana (the "Court").

2.      **Contributions to the Trust.** The following contribution will be made to the

Trust: W. R. Grace & Co., shall fund the Trust with a one-time payment of $19.5 million, which

payment shall be made on the Settlement Effective Date per the Term Sheet.

2.1.    *No further obligations for W.R. Grace & Co., to contribute to the Trust.*

Following the above contribution to the Trust, W.R. Grace & Co., shall have no further

obligation to the Trust, nor shall W.R. Grace & Co., have any interest in the funds held in the Trust.

2.2.    *Nature of contributions.*  All contributions to the Trust shall be made in immediately available funds.  All such contributions, together with the earning thereon, shall be held as a trust fund for administration of the Trust, as well as costs and expenses to be incurred by the Trustee as herein provided.  Contributions made to the Trust shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

3.    **Beneficiaries of the Trust.**  The beneficiaries of the Trust (the "Beneficiaries") shall consist of: (a) all Covered Individuals, as defined in the Grace Libby Medical Plan dated July 1, 2005, attached as Exhibit A to the Term Sheet, determined as of the Settlement Effective Date (as defined in the Term Sheet); and (b) all individuals and personal representatives of individuals who, within 60 days after the Settlement Effective Date, shall file with the Trustee evidence satisfactory to the Trustee that such individual (a) has suffered from mesothelioma, asbestos related cancer, or asbestos related disease as defined in American Thoracic Society, Official Statement (2004), and (b) suffered exposure in Lincoln County, Montana to asbestos generated by Grace's operations.

4.    **Dispositive Provisions.**

4.1.  *Payment of Income and Principal.*  During the term of the Trust, the Trustee shall pay or apply principal and income of the Trust (a) in order to administer the Trust (including payment to the Trustee), as more specifically provided below, (b) in order to pay the fees and costs of the Libby Claimants' attorneys (the law firms of Lewis, Slovak, Kovacich & Marr, PC, McGarvey, Heberling, Sullivan & McGarvey, PC, Cohn Whitesell & Goldberg LLP, Murtha Cullina LLP, and Landis, Rath & Cobb, LLP), and any common fund fees and costs, as approved

by the Court; and (c) for the benefit of the Beneficiaries, according to distribution policies and

procedures determined by the Trustee after consultation with the Trust Advisory Committee

established under Section 5.2 below.

4.2. *No Authority to Conduct Business.* The purpose of the Trust is limited to the matters

set forth herein, and the Trust shall not be construed to confer upon the Trustee any authority to

carry on any business or activity for profit.

4.3. *Termination of the Trust.* The Trust shall terminate upon distribution of all trust

assets and upon order of the Court.

4.4. *Alterations, Amendments, and Revocation.* The Trust may be altered, amended, or

revoked from time to time by an instrument in writing executed by the Trustee, after consultation

with the Trust Advisory Committee and ordered by the Court; provided that thirty (30) days

prior to any proposed alteration, amendment or revocation, counsel for the Libby Claimants shall

receive written notice.

5. **Trustee**

5.1. *Initial Trustee.* The initial Trustee of the Trust shall be Francis McGovern.

5.2. *Trust Advisory Committee.* A Trust Advisory Committee shall consult with the

Trustee on matters of policy and the performance of trust duties. The Trust Advisory Committee

shall consist of three individuals who are Beneficiaries, elected by a majority vote of the

Beneficiaries (*i.e.,* a majority of those Beneficiaries casting ballots). If a member of the Trust

Advisory Committee resigns or becomes unable to perform his duties, his successor shall be

designated by the remaining members of the Trust Advisory Committee.

5.3. *Investment and Reinvestment.* The Trustee shall invest and reinvest the principal

and income of the Trust and keep the Trust invested in one or more demand deposits,

government funds and/or treasury bills, which shall be treated as a single fund without distinction between principal and income. All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated case needs of the Trust. In investing, reinvesting, exchanging, selling and managing the Trust, the Trustee shall discharge its duties with respect to the Trust solely in the interest of the accomplishment of the purposes and objectives of the Trust. Given prevailing economic conditions, the Trustee shall take appropriate steps to preserve the principal, recognizing that this may come at the expense of earnings thereon.

5.4. *Affiliates.* The Trustee shall have the power to engage any corporation, partnership, or other entity whether affiliated or not with the Trustee as an "Affiliated Entity" to render services to the Trust hereunder, including, without limitation, to act as manager, or consultant for the Trust, to act as broker or dealer to execute transactions (including the purchase of any security currently distributed, underwritten or issued by an Affiliated Entity, at standard commission rates, markups or concessions), and to provide other management or investment services with respect to such trust, including the custody of assets; and the Trustee shall pay for any such services from Trust property. The Trustee may exercise said power in its sole and absolute discretion without Court Order or approval.

5.5. *Continuing Jurisdiction of Court.* The Court shall have continuing jurisdiction of the administration of the Trust and the performance of trust duties by the Trustee. In order to enable the Court to exercise its continuing jurisdiction, the Trustee shall report to the Court once per year an accounting of Trust assets and payments. The reports prepared by the Trust for the Court shall also be provided in electronic format to the Libby Claimants' counsel.

6. **Express Powers of Trustee.** Without in any way limiting the power and discretion conferred upon the Trustee by the other provisions of the Trust or by law, the Trustee is expressly authorized and empowered as hereinafter set forth:

6.1. *Payment of Expenses of Administration.* To incur and pay any and all charges, taxes and expenses upon or connected with the Trust in the discharge of his fiduciary obligations under the Trust. All such payments shall be made using the assets of the Trust..

6.2. *Preservation of Principal.* Notwithstanding any other provision in the Trust, to at all times hold, manage, invest, and reinvest the assets of the Trust in a manner designed to preserve the accrued income and principal of the Trust for the purposes of the Trust.

6.3. *Retention of Investment Advisor and Other Consultants.* To engage the services of (and pay compensation to) an investment advisor, accountants, agents, managers, counsel, or other consultants with respect to the management of investments of the Trust, the management of the Trust or any other matters.

6.4. *Execution of Documents of Transfer.* To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

6.5. *Litigation.* To defend and to institute litigation in the name of the Trust.

6.6. *Execution of Contracts and Agreements.* To make, execute, acknowledge and deliver any and all contracts or agreements on behalf of the Trust. Such agreements may include settlement agreements and qualified assignment agreements to effectuate settlements governed by sections 104(a)(2) and 130 of the Internal Revenue Code of 1986, as amended.

6.7. *Discretion in Exercise of Power.* The Trustee has authority to do any other acts that the Trustee deems proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon the Trustee by the Trust.

7. **Advice of Counsel.** The Trustee may from time to time consult with counsel with respect to any question arising as to compliance with this Trust. The Trustee shall be fully protected, to the extent permitted by law, in acting in reliance upon the advice of counsel.

8. **Trustee Compensation & Expenses.** The Trustee, and any successor Trustee, shall receive payment for services in accordance with the Trustee's schedule of rates in effect at the time such compensation becomes payable, without reduction for any other fees or other compensation paid to consultants or others, or any Affiliated Entity, except to the extent required by applicable law. The Trustee shall be reimbursed for expenses, including travel expenses, reasonably required and incurred by the Trustee in the performance of the Trustee's duties as Trustee. The Trustee's compensation and reimbursement of expenses may be paid without Court approval, but shall be disclosed in reports filed with the Court pursuant to Section 5.5 hereof.

9. **Successor Trustees.**

9.1. *Vacancy Caused by Resignation or Removal.* The Trustee may resign as Trustee of the Trust at any time by written notice delivered to the Court with continuing jurisdiction over this Trust. Such resignation shall be effective upon written appointment of the successor Trustee. The Trust Advisory Committee shall designate a successor Trustee, subject to approval by the Court. All of the Trustee's fees and expenses (including reasonable attorneys' fees) attributed to the appointment of a successor Trustee shall be paid by the Trust. No bond or other security shall be required of the Trustee or successor Trustee in any jurisdiction. Any successor

Trustee shall have the same powers, authority and discretion as though originally named as the Trustee.

9.2. *Acceptance of Appointment of Successor Trustees.* Acceptance of appointment of a successor Trustee shall be in writing and shall become effective upon receipt by the Court of notice of such acceptance. Upon the acceptance of appointment of any successor Trustee, title to the Trust shall thereupon be vested in said successor Trustee, without the necessity of any conveyance or instrument. Each successor Trustee shall have all the rights, powers, duties, authority, and privileges as if initially named as a Trustee hereunder.

9.3. *Preservation of Record of Changes to Trustees.* A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of the Trust in the custody of the Court.

10. **Indemnity.** Each Trustee, whether initially named or appointed as successor Trustee, acts as a Trustee only and not personally. With respect to any contract, obligation or liability made or incurred by the Trustee in good faith, all persons shall look solely to the Trust and not the Trustee personally. The Trustee shall not incur any liability, personal or corporate, of any nature in connection with any act or omission of the Trustee in the administration of the Trust or otherwise pursuant to the Trust. The Trustee initially named, or appointed as successor Trustee by the Court, shall be indemnified and held harmless by the Trust. This indemnification and hold harmless provision shall cover all expenses reasonably incurred by such Trustee in defense of the aforementioned acts or omissions of the Trustee, including, but not limited to, reasonable attorney fees and costs. Except for the payment of all expenses reasonably incurred, this indemnification shall not apply to any liability arising from criminal proceedings or acts where the Trustee had reasonable cause to believe that the conduct in question was unlawful.

**11. Interpretation.** As used in the Trust, words in the singular include the plural, words in the plural include the singular, and masculine and neuter genders shall be deemed to include the masculine, feminine and neuter. The description heading for such Section and Subsection of the Trust shall not affect the interpretation or the legal efficacy of the Trust.

**12. Choice of Law.** This Trust shall be administered, construed, and enforced according to the laws of the State of Montana.

**13. Acceptance of Trust Terms.**

**13.1.** *Acceptance by Trustee.* Francis McGovern accepts his appointment as Trustee of the Trust and the terms thereof as stated above.

**13.2.** *Acknowledgement of Waivable Conflict of Interest.* The parties hereto acknowledge that the Trustee may have a waivable conflict of interest by first assisting in the creation of this Trust, including the drafting or review of documents to be filed by the parties hereto, and then serving as Trustee of the Trust, which is technically as adversarial role. The parties hereto waive any such conflict of interest that may exist.

DATED this _____ day of _____, 2012.

Trustee

By: _____          By: _____
Jon L. Heberling, of McGarvey,              Francis McGovern
Heberling, Sullivan & McGarvey

By: _____
Tom L. Lewis, of Lewis, Slovak,
Kovacich & Marr

Approved by the 19th Judicial District Court this _____ day of _____, 2012.

By: _____
District Court Judge