IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: August 27, 2012, at 9:00 a.m. |
| ) | Objection Deadline: August 10, 2012, at 4:00 p.m. |
| ) | |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF GRANT THORNTON LLP AS TAX AND ACCOUNTING
ADVISORS**

The Debtors hereby submit this application (the "Application") for the entry of an order authorizing and approving the retention of Grant Thornton LLP ("Grant") as their tax and accounting advisor nunc pro tunc to July 1, 2012, providing the services described herein and consistent with the terms of that that certain engagement letter dated as of June 8, 2012 (the "Engagement Letter"), attached as Exhibit 1 to the affidavit of Mark A. Margulies (the "Margulies Affidavit"), filed contemporaneously herewith as Exhibit A. The Engagement Letter

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

is incorporated herein by reference. The facts and circumstances supporting the Application are set forth in Margulies Affidavit.[2]

Grant has been an ordinary course professional since approximately June 2002. *See Affidavit Re: Under 11 U.S.C. 327(e) of Mark A. Margulies on Behalf of Grant Thornton LLP*, dated July 10, 2002 (docket no. 2361). Through the quarter ending on June 30, 2012, Grant's cumulative fees as an ordinary course professional were approximately $63,453.75. Grant will submit its first fee application starting with July 2012.

In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Application are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Fed.R.Bankr.P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1.

## BACKGROUND

3. GT has been employed as an ordinary course professional, providing general tax and advisory consulting services. Grant's fees during the period of July 1, 2012, through the end of the year are expected to consistently exceed the OCP cap of $50,000 per month, due to the expanded scope of their services, as discussed further herein and in the Margulies Affidavit. The Debtors therefore have determined that, in view of the expected level of work and fees, as well

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Margulies Affidavit, the Engagement Letter or the *First Amended Joint Plan of Reorganization* in these chapter 11 cases, as amended, Docket nos. 19579, 20666, 20872, 20873, 21594, 24657 & 25881 (the "Plan").

as Grant's expertise in performing such advisory services, it is in the best interest of their estates to employ and retain Grant on the terms and conditions set forth in this Application.

### RELIEF REQUESTED

4.   By this Application, the Debtors respectfully request the entry of an order pursuant to Bankruptcy Code sections 327(a) and 330, Fed.R.Bankr.P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1, authorizing them to employ and retain Grant to perform certain tax and accounting advisors for services as described herein and consistent with the terms of the Engagement Letter.

### SCOPE OF PROPOSED RETENTION

5.   The Debtors anticipate that Grant will represent the Debtors in connection with the tax and accounting matters in accordance with the terms of the Engagement Letter. The Debtors intend to employ and retain Grant to render the following professional services (the "Representative Matters"):

a. certain proposed sales and purchases of businesses in the U.S. and non-U.S. jurisdictions, including effectuating tax due diligence and providing other services in support of possible transactions;

b. preparation of research tax credit calculations, Section 199, accounting method changes, and other similar computations for the US taxpaying entities;

c. providing support in the Debtors ongoing IRS examinations;

d. due diligence transactions; and

e. such other tax and advisory consulting services that the Debtors may request.

6.   Grant will not duplicate the services that other firms may provide to the Debtors.

### GRANT'S QUALIFICATIONS

7.   Grant is particularly well suited to serve as the Debtors' Tax and Accounting Advisors.  Grant is one of the U.S. largest accounting firms and is a member of a network of Grant Thornton® member firms in more than 100 countries. Grant's knowledge, resources and

membership in an international network permit it to deliver high quality accounting services throughout the world with fluency, consistency, confidence and sensitivity for cultural, social and accounting practice differences outside of the U.S.

8. Grant has previously represented the Debtors and certain of their affiliates and subsidiaries in other matters. As a result of its previous engagements with the Debtors, Grant has considerable knowledge concerning the Debtors' businesses and assets and has the requisite familiarity to provide efficient services related to any potential transactions and other matters that will require Grant's services. Were the Debtors required to retain different advisors regarding the matters in which Grant currently represents them, the Debtors would have to expend significant resources in helping new advisors become familiar with such matters

### NO ADVERSE INTEREST

9. Grant has no other connection with the Debtors, their creditors, the United States Trustee, or any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants identified on Exhibit 2 to the Margulies Affidavit, except as set forth herein and on Exhibit 3 thereto. Insofar as Grant has been able to ascertain based on the information currently available to it, neither Grant, nor any partner or manager thereof, represents any interest adverse to the Debtors in the matters upon which Grant is to be engaged.

10. Using the list attached to the Margulies Affidavit as Exhibit 2, Grant submitted and checked against its computer conflict database of present and former clients and adverse parties an extensive list of parties-in-interest and other persons and entities related to the Debtors and these chapter 11 cases. This inquiry revealed the relationships on Exhibit 3 to the Affidavit.

### TERMS OF RETENTION & COMPENSATION

11. In accordance with section 330(a) of the Bankruptcy Code, Grant intends to charge for its accounting services on an hourly basis in accordance with its ordinary and

customary hourly rates in effect on the date services are rendered (and seek reimbursement of actual and necessary out-of-pocket expenses).  Grant will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the accounting services described above by category and nature of the services rendered.

12. Effective June 1, 2012, the hourly rates charged by Grant (in the U.S.) for each of the above referenced services to be provided on an hourly basis are:

| Billing Category | Range |
| --- | --- |
| US Partners and Managing Directors | $500-700 per hour |
| US Senior Managers and Managers | $350-500 per hour |
| US Senior Associates and Associates | $200-350 per hour |
| US Interns | $100-200 per hour |

13. The hourly rates set forth above are Grant's standard rates charged to clients, and the specific compensation arrangement provided for in their engagement letter is consistent with and typical of arrangements entered into by Grant and other comparable accounting firms with respect to rendering similar services of this nature for clients such as the Debtors.

14. Grant Thornton member firms in other jurisdiction's current hourly rates for associates and partners outside of the United States, depending on the jurisdiction, vary from $200 to $800. These rates are consistent with hourly rates charged by professionals for similar services in the jurisdictions in which the services are provided. U.S. dollar values assigned to billing rates for Grant professionals outside of the U.S. may fluctuate based upon applicable exchange rates. In the event that Grant Thornton member firms in other jurisdictions provide any such services, they will: (a) ascertain whether they have any connections with the Debtors, their creditors, the United States Trustee, or any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants identified on Exhibit 2 to the

Margulies Affidavit; and (b) seek separate retention, either as an ordinary course professional or under section 327(a), as appropriate.

15. These applicable hourly rates as may be agreed to by the Debtors and Grant are subject to periodic adjustments to reflect economic and other conditions. The rates set forth above are at a level designed to compensate Grant fairly for the work of its professionals and to cover fixed and routine overhead expenses.

16. It is Grant's policy to charge its clients in all areas of service for all other expenses incurred in connection with the client's account. The expenses charged to clients include, among other things, telephone, toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, expenses for "working meals," computerized research, couriers, postage, and non-ordinary overhead expenses such as overtime for secretaries and other staff. Grant will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Grant's other clients.

17. Moreover, pursuant to Fed.R.Bankr.P. 2016(b), Grant has not shared, nor agreed to share any compensation that it has received or may receive with another party or person, other than with the partners, associates, contract attorneys or paraprofessionals that may be associated with Grant, or (b) any compensation another person or party has received or may receive.

18. Grant will submit interim and final applications for compensation in accordance with Bankruptcy Code sections 330 and 331, the Federal Rules of Bankruptcy Procedure, this Court's Local Bankruptcy Rules and such other and further orders of the Court.

### BASIS FOR RELIEF

19. Bankruptcy Code section 327(a) provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or

represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code].

11 U.S.C. § 327(a).

20. Fed.R.Bankr.P. 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed.R.Bankr.P. 2014(a).

21. Del. Bankr. L. R. 2014-1 states:

Any entity seeking approval of employment of a professional person ... shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval. Promptly after learning of any additional material information relating to such employment (such as potential or actual conflicts of interest), the professional employed or to be employed shall file and serve a supplemental affidavit setting forth the additional information.

Del. Bankr. L.R. 2014-1.

22. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules to support entry of an order authorizing the Debtors to employ and retain Grant as tax and accounting advisors in these chapter 11 cases.

## CONCLUSION

23. For the reasons set forth above and in the Margulies Affidavit, the Debtors believe that Grant is well qualified to provide the requested services to the Debtors' in light of Grant's intimate knowledge of the Debtors' businesses and affairs and their expertise in the field of tax

advisory services described herein. The Debtors further believe that retaining and employing Grant is essential to the Debtors' tax audit and other requirements, and is thus necessary and in the best interest of the Debtors and their estates.

## NO PREVIOUS APPLICATION

24. No previous application for the retention of Grant in these chapter 11 cases nor any other such motion for the relief sought herein have been made to this or any other court.

## NOTICE

25. Notice of this Application has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these chapter 11 cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) Warren H. Smith & Associates, P.C., in its capacity as the fee auditor retained in these chapter 11 cases. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto, authorizing the retention and employment of Grant as tax and accounting advisors to the Debtors and granting such other and further relief as is just and proper.

Dated: July 23, 2012

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession