IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) <br> ) (Jointly Administered) |
| Debtors. | ) <br> ) Hearing Date: August 27, 2012, at 9:00 a.m. <br> ) Objection Deadline: August 10, 2012, at 4:00 p.m. |

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO AN ADMINISTRATIVE SETTLEMENT AGREEMENT AND ORDER ON CONSENT FOR A REMOVAL ACTION AT THE WEEDSPORT, NEW YORK SITE**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this motion (this "Motion") requesting the Court enter an order, substantially in the form attached hereto as Exhibit A (the "Order"), authorizing the Debtors to enter into the *Administrative Settlement Agreement and Order on Consent for a Removal Action* (the "AOC") relating to the Weedsport, New York, Superfund Site, a copy of which AOC is attached to the Order as Exhibit 1, resolving the claims of the United States (the "United States" or the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

"Claimant") related to the Site, as the AOC defines that term (also referred to herein as the "Weedsport Site"). In support of this Motion, the Debtors state the following:[2]

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

## BACKGROUND

### A. Resolving Additional Sites Under the EPA Multi-Site Agreement

3. Pursuant to the *Amended Order Authorizing and Approving an Omnibus Procedure for Settling Certain Claims and Causes of Action Brought by or Against the Debtors in a Judicial, Administrative, Arbitral or Other Action or Proceeding* (the "Amended Order") (Docket no. 936), the Debtors are authorized to settle claims that exceed $1,000,000 only upon a motion of the Debtors for entry of a separate order.

4. On or about March 23, 2003, the Claimant filed Proofs of Claim Nos. 9634 and 9635 against the Debtor W. R. Grace & Co. and the Debtor Kootenai Development Company. The Proofs of Claim expressly reserved Claimant's right to amend them for any "subsequently discovered liabilities."

5. On or about June 2, 2008, the Court entered its *Order Authorizing EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental*

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the AOC or the *First Amended Joint Plan of Reorganization in Their Chapter 11* Cases (Docket no. 25881), as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

*Matters* (Docket no. 18847) (the "EPA Multi-Site Agreement Order"). Attached to that order as Exhibit A was the *EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters*, dated May 14, 2008, (the "EPA Multi-Site Agreement").

### B. The Weedsport Site

6. The Weedsport Site is located in the Village of Weedsport, Town of Brutus, Cayuga County, New York. The property on which the Site is located is currently owned and managed by Scott Estelle, and was previously owned by his father, C. Frank Estelle. The portion of the Site subject to the proposed removal activities comprises approximately 4-5 acres, and it is bounded on the west by State Route 34, on the east by undeveloped property, on the south by railroad tracks, and on the north by residential homes and a farm.

7. In 1963, Grace entered into an agreement with Mr. Estelle to lease the Site. Grace operated the Site as a vermiculite expanding plant, using an existing processing building to expand between 81,000 and 145,000 tons of vermiculite concentrate that originated from Grace's Libby, Montana mine. Some of the vermiculite may have contained asbestos. Grace also erected four silos to contain unprocessed and processed vermiculite concentrate. Grace is not aware of any other asbestos operations at the Site, either before 1955 or since 1989. After Grace closed its operations at the Site, it removed the four silos and cleaned the processing building, which remains standing. One company subsequently used the Site to manufacture coconut mulch. The Site is currently vacant.

8. In June 2006, EPA conducted air sampling inside the former processing building at the Site, and detected asbestos. In October 2010, EPA collected outdoor air and soil samples at the Site, which were analyzed for the presence of asbestos based upon EPA's national framework for evaluating asbestos at Superfund sites. Asbestos was found in the soil.

9. On October 31, 2011, EPA Region 2 notified Grace of its status as a potentially responsible party for the Weedsport Site and for any and all other claims, liabilities or obligations of the Debtors to the Claimant related thereto that may arise under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6873. The EPA also notified the Debtors that it considered the Weedsport Site to be an Additional Site, as that term is defined in the EPA Multi-Site Agreement. EPA thereafter transmitted to Grace, for its preliminary consideration, the results of the October 10, 2010, sampling results.

10. The Debtors and the EPA have since cooperated in preparing the AOC. The AOC anticipates that the Debtors will perform such removal actions on the terms specified therein, commencing on the AOC's effective date, which is five (5) days after the date on which the Court enters the Order.

11. The Debtors and the EPA now desire, without any admission of fact, law or liability, to proceed with a remedy for environmental remediation of the Weedsport Site and resolve the EPA's claims and demands relating to the Weedsport Site as described in more detail below. The AOC specifically resolves: (a) the EPA's claims for the Weedsport Site as an Additional Site under the Multi-Site Agreement; and (b) the demands for performance of or, alternatively payment of costs associated with the proposed Work as set forth in the AOC.

12. In particular, the AOC requires the Debtors to perform and manage removal activities at the Weedsport Site based on parameters defined in the AOC and the EPA's Cost Estimate for the Work to be Performed ("Cost Estimate") attached as Appendix C to the AOC. The AOC and Cost Estimate call for, among other things, excavation and removal of asbestos-containing soils at the Weedsport Site with disposal offsite at an approved facility.

13. The EPA estimates that it will cost approximately $3.9 million to perform the remedial actions at the Weedsport Site contemplated by the AOC. The Debtors estimate that they will be able to perform the work for less than $3.9 million.

14. The Debtors have also agreed under the AOC to pay $234,038.84 to the EPA for the EPA's Past Response Costs incurred through December 31, 2011. Consistent with the Multi-Site Agreement, the Debtors' obligation to pay the EPA's Past Response Costs is in the form of an Allowed General Unsecured Claim, as the Plan defines that term (the "Weedsport Allowed Past Response Costs Claim"). The Debtors shall pay the Weedsport Allowed Past Response Costs Claim within thirty days after the Plan's Effective Date in the same manner as all other Allowed General Unsecured Claims. Interest shall commence accruing thirty (30) days after the AOC's Effective Date at the rate established by 26 U.S.C. § 9507.

15. The AOC further provides that the Debtors will pay EPA's Future Response Costs (which, as the AOC defines that term, includes all direct and indirect costs incurred by EPA that are not included in the EPA's Past Response Costs). The Debtors shall pay such Future Response Costs on the later of thirty (30) days of receipt of a bill for such Future Response Costs or thirty days after the Plan's Effective Date. To the extent that the Debtors do not timely pay Future Response Costs, interest shall begin accruing thirty (30) days after the date of receipt of the bill at the rate established by 26 U.S.C. § 9507, and such interest shall continue to accrue until the date of payment.

16. In return for the obligations to be assumed by the Debtors under the AOC, the United States will provide the Debtors with a covenant not to sue for matters addressed under the AOC. Additionally, and also pursuant to the terms of the AOC and the EPA Multi-Site Agreement, once the EPA issues a Notice of Completion of Work and the Debtors pay all

Response Costs and other amounts required to be paid under the AOC, the Weedsport Site removal action will be considered a general unsecured claim that has been liquidated in the amount of $0, and to which the Bankruptcy Code section 1141 discharge will apply (the "Weedsport Site Claim").

### RELIEF REQUESTED

17. The Debtors respectfully request the Court enter the Order pursuant to section 105 of the Bankruptcy Code, Fed. R. Bankr. P. 9019 and the Amended Order: (i) authorizing the Debtors to enter into the AOC and perform all their obligations arising thereunder; and (ii) liquidating the Weedsport Site Claim at $0 on the terms and conditions set forth in the AOC and the EPA Multi-Site Agreement.

### ANALYSIS

18. Section 105(a) of the Bankruptcy Code provides in pertinent part that "(t)he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Fed. R. Bankr. P. 9019(a) provides in pertinent part that "(o)n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

19. Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., No. 03-10323, 2006 U.S. Dist. WL 2842462, at *3 (D. Del. Oct. 2, 2006). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

20. Before approving a settlement under Fed. R. Bankr. P. 9019(a), however, a court must determine whether the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate") (internal quotation marks and citations omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

21. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

22. It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

### THE COURT SHOULD APPROVE THE WEEDSPORT AOC

23. The Debtors have determined that it is in their best interests and those of their estates to enter into the AOC. The AOC is fair and reasonable, and is within the reasonable range of litigation possibilities. In particular, the AOC permits the Debtors to conduct the

removal actions at the Weedsport Site at their own expense, which will permit the Debtors to minimize costs by conducting the removal actions as efficiently as possible. The EPA has estimated that it will cost approximately $3.9 million to conduct the AOC's contemplated removal activities. The Debtors have determined that they can conduct such removal activities for less than $3.9 million.

24. The AOC also effectuates the claim resolution process regarding Additional Sites that was established when this Court approved the EPA Multi-Site Agreement. This means that, once the EPA has issued its Notice of Completion of Work and the Debtors have paid the EPA any Response Costs due under the AOC, the Weedsport Site Claim will be liquidated at $0 and will become subject to the Bankruptcy Code section 1141 and Plan discharges.

25. The AOC concomitantly states that the United States, in consideration for the work to be performed and the payments made by the Debtors under the AOC, will covenant not to sue or to take administrative action against Respondent pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for the Work and Response Costs. The AOC conditions the covenant not to sue upon the Debtors' complete and satisfactory performance of their obligations under the AOC.

26. Finally, the AOC benefits and serves the public interest, because it will support Site remediation, as well as reimburse the Claimant for both past and future expenses it has incurred regarding Weedsport Site remediation.

27. For the above reasons, the Debtors believe that the AOC represents a reasonable settlement of the Weedsport Site Claim. The AOC is fair and equitable and in the best interests of the Debtors, their estates, and their creditors. The AOC is also in the public interest. Accordingly, the Debtors have demonstrated a sound business justification and public interest for

the execution and consummation of the AOC. The Court should enter the Order substantially in the form attached hereto as <u>Exhibit A</u>, approving the AOC.

## NO PREVIOUS MOTION

28.    No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

29.    Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel for the United States. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully seek the entry of an order, pursuant to Bankruptcy Code section 105 and Fed. R. Bankr. P. 9019: (i) authorizing the Debtors' entry into the Weedsport AOC; (ii) authorizing the Debtors to make all payments and incur all costs as set forth in the AOC; (iii) allowing and liquidating the Weedsport Allowed Past Response Costs Claim and Weedsport Site Claim pursuant to the terms of the AOC and the EPA Multi-Site Agreement; and (iv) granting such other relief as may be appropriate.

Dated: July 23, 2012

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession