**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et. al.* | : | Case No. 01-1139 (JKF) |
| | : | |
| Debtors | : | (Jointly Administered) |
| | : | **Hearing Date:  December 17, 2012 at 9:00 a.m.** |
| | : | **Objection Deadline:   November 30, 2012 at 4:00 p.m.** |

**FORTY-FIFTH QUARTERLY FEE APPLICATION OF**
**PRICEWATERHOUSECOOPERS LLP, AUDITORS AND TAX**
**CONSULTANTS FOR DEBTORS, FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE INTERIM**
**PERIOD OF APRIL 1, 2012 THROUGH JUNE 30, 2012**

PricewaterhouseCoopers LLP ("PwC"), auditors and tax consultants for W.R.

Grace & Co., and the other above-captioned debtors (collectively, the "Debtors"), by and

through its undersigned counsel, hereby submits its *Forty-Fifth Quarterly Fee*

*Application for Allowance of Compensation and Reimbursement of Expenses (the*

*"Application") incurred during the period of April 1, 2012 through June 30, 2012* (the

"Quarterly Period").   In support of this Application, PwC respectfully represents as

follows:

**I.    COMPENSATION REQUESTED**

1.    As set forth below, Applicant is requesting a quarterly allowance of fees in

the aggregate amount of $675,443.93 (plus $2,449.60 for preparing the related fee

applications) and reimbursement of expenses in the aggregate amount of $10,886.37.

This amount represents the fees generated and expenses incurred by PwC during the

Forty-Fifth Quarterly Period, as defined in the Court's *Amended Administrative Order*

*Under 11 U.S.C. §§ 105(a) And 331 Establishing Revised Procedures For Quarterly*

*Compensation And Reimbursement Of Expenses For Professionals And Official Committee Members* (the "Amended Quarterly Procedures Order") and for the monthly applications that were not previously included in the quarterly applications.

2.      As explained more fully below, the Debtors filed their *Application of the Debtors for the Entry of an Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors and Debtors in Possession* on January 10, 2002 (the "Original Retention Application").

3.      The Original Retention Application was contested, and it was not until June 18, 2002 that the Court entered its Order Pursuant to 11 U.S.C. §§ 327(a) and Fed. R. Bankr. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP As Auditors and Tax Consultants to the Debtors and Debtors in Possession Nunc Pro Tunc to January 10, 2002 (the "Retention Order").

4.      PwC herein requests allowance of compensation and reimbursement of expenses for the Forty-Fourth Quarterly Period.  The amounts billed in connection with this application are

|  | Fees | Expenses |
|---|---|---|
| W. R. Grace Audit Services: | | |
| April 1 – June 30, 2012: | $574,531.33 | $8,257.98 |
| W.R. Grace Global Restructuring Project | | |
| April 1 – May 31, 2012: | $43,914.97 | $0.00 |
| Darex Puerto Rico Audit Service: | | |
| December 1, 2011 – May 31, 2012: | $56,997.63 | $2,628.39 |

A table showing the names of all professionals and paraprofessionals who rendered services during the period covered by the applications, together with the billing rates of such persons and the number of hours charged by such persons, is set forth on the cover sheet to these Applications.

## II.    INTRODUCTION AND PROCEDURAL BACKGROUND

5.    On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties and assets as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On January 10, 2002, the Debtors filed the Original Retention Application, seeking to retain PwC as their independent accountants and auditors. The United States Trustee filed its Amended Objection to the Debtors' Application for Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors (the "Objection to the Original Retention Application") on January 31, 2002.

7.    On April 15, 2002, the Debtors filed the Amended Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§327(a) and 328 and the Fed. R. Bank. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Auditors and Tax Consultants to the Debtors and Debtors in Possession Nunc Pro Tunc to November 11, 2001 (the "Amended Retention Application"). The United States Trustee filed his Objection to the Amended Application for Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as

Auditors and Tax Consultants Nunc Pro Tunc to November 11, 2001 (the "Objection to

the Amended Retention Application") on May 3, 2002.

8.    On June 8, 2002, the Court entered the Retention Order.

<u>Relief Requested</u>.

9.    By this Application, PwC respectfully requests the entry of an Order,

substantially in the form attached as Exhibit "A," allowing on a quarterly basis

$675,443.93 (plus $2,449.60 for preparing the related fee applications) and

reimbursement of expenses in the aggregate amount of $10,886.37 for the Quarterly

Period.

10.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §

1334.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).    Venue of these

proceedings and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the

Bankruptcy Code and Bankruptcy Rule 2016.

11.    All of the services for which compensation is sought were rendered by

Applicant to the Debtors solely in connection with this case and in furtherance of the

duties and responsibilities of the Debtors and not on behalf of any creditor or other

person.

12.    Applicant's hourly rates for its auditors and other professionals charged in

connection with Applicant's services for the Debtors were the rates Applicant

customarily charged its clients (whether corporate or individual) in both bankruptcy and

non-bankruptcy matters at the time the services were rendered.  In July 2004, Applicant

changed its time and expense management system and revised its standard billing rates.

These new rates, effective with the filing of PwC's previous monthly application for July 2005, have been discussed with, and agreed to, by management of the Debtor, and have not dramatically impacted the overall fees charged to the Debtor as compared to previous fee applications.

13.    By order dated April 17, 2002 (the "Amended Administrative Order"), the Court has adopted procedures (the "Procedures") for all applications for Quarterly compensation and reimbursement of expenses in this bankruptcy proceeding.    In accordance with the Procedures, Applicant has submitted a cumulative summary of fees by project category and a cumulative summary of expenses by category.

14.    Applicant is not seeking reimbursement for internal charges, including costs associated with airline ticketing and general office services such as computer usage, telephone charges, facsimile transmissions, postage, and photocopying.

15.    No payments have been promised to Applicant for services rendered or to be rendered in any capacity in connection with the Debtors' Chapter 11 cases.    No agreement exists between Applicant and any other person or entity to share any compensation in connection with the Debtors' Chapter 11 cases.

16.    Pursuant to the Amended Administrative Order, PwC served copies of this Application upon (a) David B. Siegel, W.R. Grace & Co.; (b) co-counsel for the Debtors; (c) co-counsel to the debtor-in-possession lender; (d) counsel to the Committees, including counsel for the Official Committee of Unsecured Creditors; counsel to the Official Committee of Asbestos Property Damage Claimants; counsel to the Official Committee of Personal Injury Claimants; and the Official Committee of Equity Holders; (e) the Fee Auditor; and (f) the United States Trustee.

III.    **SERVICES RENDERED DURING THE QUARTERLY PERIODS**

17.    The nature of the work performed by PwC during the Quarterly Period included the following.

    a.  Performed review of WR Grace Q1 2012 financial information for the purposes of the Q1 2012 10-Q filing.  This included performing analytical procedures on consolidated and disaggregated worldwide balances, tying out the Q1 2012 10-Q and earnings release, review of incentive compensation accruals, review of earnings per share calculation, review of pension adjustments, review of environmental and legal updates, attendance at the Q1 2012 business review, review of hedging activities, testing of Q1 2012 restructuring activity, and review of management's equity rollforward, among other procedures.

    b.  Review work performed by the PwC tax team to obtain comfort over the effective tax rate, income tax provision, and income taxes payable included in the WR Grace Q1 2012 10-Q.  This work included review of uncertain tax positions rollforward, review and tie out of effective tax rate calculation, tie out of tax balances in the Q1 2012 10-Q (performed over the course of one week).

    c.  Consultation with valuation specialists regarding the asbestos liability.

    d.  Meetings held by the PwC Risk Assurance team with various members of Grace Management to discuss plan for 2012 audit.

    e.  Preparation for and attendance at the audit committee meeting in May 2012.

    f.  Performed planning procedures for the 2012 annual financial statement audit, including assessment of significant risks, scoping of significant financial statement balances, discussions around the involvement of additional PwC component audit teams, and various risk assessment activities.

    g.  Consultation with valuation specialists regarding the asbestos liability.

    h.  Verification of the translation of the Company's 2011 Form 10-K from English to Mandarin for the purposes of an upcoming business transaction.

    i.  Discussions with management regarding PwC's upcoming visit to the Company's shared service center in Manila, Philippines.  Including timing of the visit, work to be completed prior to the visit, and documentation needed from management regarding the services centers processes and operations.

    j.  Planning procedures performed to prepare for our 2012 audit work over internal controls required under section 404 of the Sarbanes-Oxley Act. This work included reviewing the scope of work to be performed, meeting with Internal Audit to discuss process improvements and 2012 site visits, discussing assistance of management in our walkthroughs, meeting with

Internal Audit to discuss scheduling of site visits, and review and preparation of 2012 controls testing plan, among other procedures.

k.  Performed planning coordination with PwC Tax specialists. This included meeting with the PwC tax team, and W. R. Grace tax department to discuss 2012 activity and audit timing, review of 2012 income taxes audit plan, and discussions around documents to be provided by the client.

l.  Preparation for the quarterly review procedures over W. R. Grace Q2 2012 Form 10-Q. This included setting up and documenting expectations for Q2 2012 analytical procedures, determining and documenting the review strategy, updating independence assessment, and other planning considerations required by the professional standards and the firm polices.

m. Discussions with the Company and review of the documentation on the following matters:
    i.  Acquisition made by the Company (Helios deal)
    ii. Transactions requiring special accounting consideration (such as, sale of Bondera inventory, Verifi revenue recognition model, future foreign exchange hedges related to intercompany loans, and valuation of the instruments to be issued under the Joint Plan)

n.  Preparation for PwC's upcoming visit to the Company's shared service center in Manila, Philippines. Including reviewing process documentation, and controls matrices.

o.  Preparation and review of draft opinion addressing the U.S. federal income tax considerations of the acquisition of the DeNeef group and of the reorganization of WR Grace's operations in Europe. This also included the preparation of a draft representation letter that will be signed and provided by WR Grace.

p.  Participation and coordination of weekly project status meetings with WR Grace.

q.  Review of Treas. Reg. section 301.7701-3 ("check- the box") elections for various WR Grace entities in connection with the recently implemented transactions steps.

r.  Assisted in the analysis and discussions in connection with the integration of the Grace Sweden and DeNeef Sweden operations, the conversion of DeNeef Belgium and the conversion of DeNeef SwissCo.

s.  Update of IGS structuring workplan.

t.  PwC Switzerland's preparation of forms 823B & C including discussions and emails with the client and taxing authorities.

u.  Performed planning procedures for the 2011 annual Darex financial statement audit, including assessment of significant risks, scoping of significant financial statement balances, various risk assessment procedures, consideration of prior year control deficiencies, and finalizing planned audit responses, among other work.

v.  Performed audit work for the Darex annual financial statement audit, including detailed audit procedures performed over the Darex Puerto Rico Balance Sheet and Income Statement, such as cash confirmations,

accounts receivable confirmations, detailed testing of revenue, property, plant, and equipment, accounts payable, other accruals, other assets, and expenses.    This work also included tie out of the 2011 financial statements, journal entry testing performed to assess fraud risk and review of management's listing of adjusting entries, among other procedures.

w.  Performed audit work for the Darex annual financial statement audit around various Darex Puerto Rico tax accounts, including the Puerto Rico tax provision, the US tax provision, the income tax receivable, the deferred tax assets, and the valuation allowance for foreign tax credit carryforwards.

18.    <u>Retention and Fee Matters</u>.    Applicant also seeks compensation and reimbursement of expenses for the preparation of these Applications.

## IV.    **ALLOWANCE OF COMPENSATION**

19.    Under the Bankruptcy Code, professionals performing services in a bankruptcy case are entitled to "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses."  11 U.S.C. §330(a)(1)(A).

20.    In determining if the amount of compensation is "reasonable", the courts consider the "nature, the extent, and the value" of the services rendered, taking into account the following factors:  the time spent on the services; the rates charged for the services; whether the services were necessary or beneficial to the administration of the case; whether the services were performed in a reasonable amount of time commensurate with the complexity, importance, and nature of the services; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under Chapter 11.  11 U.S.C. § 330(a)(3)(A).  As described throughout these Applications, PwC has satisfied the relevant criteria to support the requested award of compensation.

21.     In general, the "baseline rule is for firms to receive their customary rates." Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 259 (3d Cir. 1995).  The compensation sought herein is based on PwC's customary rates, which are in line with the customary rates charged by comparably skilled practitioners in cases other than cases under Chapter 11.

22.     Applicant's services have been rendered in an efficient manner by accountants and auditors who are experts in their fields.  PwC is one of the largest and most well-respected audit firms in the country, and its rates are commensurate with its level of expertise.

23.     The time and effort dedicated to the preparation of a fee application is also an actual and necessary service compensable under the Bankruptcy Code.  See, e.g., In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002); Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 272 B.R. 830 (Bankr. D. Vt. 2002); In re Gillett Holdings, Inc., 137 B.R. 475 (Bankr. D. Colo. 1992); In re Kreidle, 85 B.R. 573 (Bankr. D. Colo. 1988).  Applicant, therefore, requests compensation for the time and effort it dedicated to the preparation of these Applications.

24.     No prior application for the relief requested herein as been made.

**WHEREFORE**, PwC respectfully requests Quarterly allowance of compensation in the amount $675,443.93 (plus $2,449.60 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $10,886.37, together with such other and further relief as this Court deems just and proper.

Dated: August 6, 2012                          SMITH KATZENSTEIN & JENKINS LLP


                                               /s/ Kathleen M. Miller
                                               Kathleen Miller (I.D.  No.2898)
                                               The Corporate Plaza
                                               800 Delaware Avenue, 10th Floor
                                               P.O. Box 410
                                               Wilmington, DE 19899 (Courier 19801)
                                               Telephone:  302-652-8400
                                               Telecopy:  302-652-8405
                                               Email:  kmiller@skfdelaware.com

                                                Attorneys for PricewaterhouseCoopers LLP