UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 Case No. |
| ) | |
| W.R. GRACE & CO., et al., ) | 01-01139 (JKF) |
| ) | |
| Debtors. ) | (Jointly Administered)<br>Related to D.I. 29256 |

**DECLARATION OF CHRISTOPHER P. BOOTH IN SUPPORT OF
OBJECTION OF MAIN PLAZA, LLC TO NOTICE OF TRANSFER OF CLAIM OTHER
THAN FOR SECURITY FILED BY CIM URBAN REIT 211 MAIN ST. (SF), LP,
AS ASSIGNEE OF CIM REIT ACQUISITION, LLC**

Pursuant to 28 U.S.C. § 1746, I, Christopher P. Booth, hereby declare, under penalty of perjury, as follows:

1. I submit this declaration on personal knowledge and to the best of my recollection and, if called upon to testify, I could and would testify competently thereto.

2. I was a Managing Member of Main Plaza, LLC ("Main Plaza"), at all times relevant to this dispute, including when Main Plaza remediated the asbestos in the building at 211 Main Street, San Francisco, California 94105 (the "Building"), when Main Plaza filed the Bankruptcy Claim,[1] and when the Purchase and Sale Agreement was executed between Main Plaza and CIM Urban REIT Acquisition, LLC ("CIM"). I was personally involved in negotiations regarding the sale of the Building from Main Plaza to CIM.

3. During the entirety of the negotiations between Main Plaza and CIM regarding sale of the Building, the Bankruptcy Claim never arose as a topic of discussion at any point. Quite simply, it was never mentioned even once by or to anyone from Main Plaza, CIM, or representatives of either party.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Main Plaza's Objection to Notice of Transfer of Claim Other than for Security filed by CIM REIT 211 Main St. (SF), LP, as Assignee of CIM REIT Acquisition, LLC.

4. Main Plaza never even considered the notion that the Bankruptcy Claim was transferred to CIM as part of the sale of the Building. Main Plaza never intended for the Bankruptcy Claim to be transferred to CIM, and I never would have agreed for the Bankruptcy Claim to be transferred pursuant to the sale of the Building.

5. Main Plaza never listed the Bankruptcy Claim in our financial records given its contingent nature. The financial information made available to CIM during the due diligence period prior to execution of the Purchase Agreement thus contained no reference to the Bankruptcy Claim.

6. During the due diligence period prior to sale of the Building, CIM representatives came to my office for brief visits to inspect Main Plaza's building files, which likely contained the Bankruptcy Claim. From my experience in due diligence for large real estate transactions such as this, CIM's visit and its inspection of our records was not exhaustive by any means.

7. CIM never mentioned or otherwise raised the subject of the Bankruptcy Claim to Main Plaza, either during or after CIM's review of Main Plaza's building files. Main Plaza never considered or believed that CIM was even aware of the Bankruptcy Claim.

8. CAC Group ("CAC") was Main Plaza's broker for the Building sale. The two principals Main Plaza worked with at CAC pursuant to the Building sale were John Cecconi and Dave Terzolo. They were responsible for overseeing due diligence for the sale of the Building. Main Plaza never discussed the Bankruptcy Claim with them at any time prior to execution of the Purchase Agreement. In fact, I had never spoken with them about the Bankruptcy Claim prior to this month.

9. As part of the due diligence process, CAC managed the "data room," which contained all documents concerning the property that was to be transferred as part of the sale of the Building. To my knowledge, the "data room" documents contained no reference to the Bankruptcy Claim.

10. After the closing for the sale of the Building, Main Plaza had internal discussions about whether to liquidate and dissolve Main Plaza, LLC, because the Building had been sold. However, we decided against dissolution because we recalled that the Bankruptcy Claim is an asset of Main Plaza, LLC.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 8, 2012
      Oakland, California

*/s/ Christopher P. Booth*
Christopher P. Booth

1280960 /SF