## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.**, *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S COMBINED FINAL REPORT REGARDING THOSE FEE APPLICATIONS WITH *DE MINIMIS* OR NO FEE OR EXPENSE ISSUES FOR THE FORTY-FOURTH INTERIM PERIOD

This is the combined final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding all the Interim Fee Applications of those firms for which we have *de minimis*[1] or no fee or expense issues for the Forty-Fourth Interim Period (collectively referred to hereafter as the "Applications").[2]

### BACKGROUND

1.      Anderson Kill & Olick, P.C. ("Anderson Kill & Olick"), was retained as special insurance counsel to the Official Committee of Asbestos Personal Injury Claimants. Anderson Kill & Olick seeks approval of fees totaling $402,648.50 and expenses totaling $4,061.99 for its services during the Application Period.

2.      Baer Higgins Fruchtman LLC ("Baer Higgins Fruchtman") was retained as co-

---

[1]For purposes of this report, applications with *de minimis* issues are those for which: (1) our recommended reductions total less than $500.00, *and* (2) the applicant has agreed to our recommended reductions.

[2]The Forty-Fourth Interim Period encompasses January 1, 2012, through March 31, 2012 (the "Application Period"). All Applications are for the Forty-Fourth Interim Period, unless otherwise specified.

counsel to the Debtors and Debtors-in-Possession.  Baer Higgins Fruchtman seeks approval of fees totaling $292,480.00 and expenses totaling $6,106.45 for its services during the Application Period.

3.      Beveridge & Diamond, P.C. ("Beveridge & Diamond"), was retained as special counsel to the Debtors.  Beveridge & Diamond seeks approval of fees totaling $109,020.00 and expenses totaling $207.09 for its services from October 1, 2011, through December 31, 2011 (the "Forty-Third Interim Period").

4.      Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants.  Bilzin Sumberg seeks approval of fees totaling $12,993.00 and expenses totaling $169.70 for its services during the Application Period.

5.      Blackstone Advisory Services L.P. ("Blackstone") was retained as financial advisor to the Debtors.  Blackstone seeks approval of a flat fee totaling $250,000.00[3] and expenses totaling $2,502.68 for its services during the Application Period.

6.      BMC Group ("BMC") was retained as Claims Reconciliation and Solicitation Consultant to the Debtors.  BMC seeks approval of fees totaling $99,004.00 and expenses totaling $8,091.61 for its services during the Application Period.

7.      Campbell & Levine, LLC ("Campbell & Levine"), was retained as Delaware and associated counsel to the Official Committee of Asbestos Personal Injury Claimants.  Campbell & Levine seeks approval of fees totaling $42,253.50 and expenses totaling $4,123.40 for its services during the Application Period.

---

[3]For the Application Period, Blackstone lists 287.20 hours worked, which computes to an effective hourly rate of $870.47.

8.      Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as counsel to the Official Committee of Asbestos Personal Injury Claimants.  Caplin & Drysdale seeks approval of fees totaling $207,950.00 and expenses totaling $3,744.50 for its services during the Application Period.[4]

9.      Capstone Advisory Group, LLC ("Capstone"), was retained as financial advisor to the Official Committee of Unsecured Creditors.  Capstone seeks approval of fees totaling $117,066.50 and expenses totaling $251.22 for its services during the Application Period.

10.     Casner & Edwards, LLP ("Casner"), was retained as special litigation counsel to the Debtors.  Casner seeks approval of fees totaling $40,257.50 and expenses totaling $38,516.54 for its services during the Application Period.

11.     Charter Oak Financial Consultants, LLC ("Charter Oak"), was retained as financial advisor to the Official Committee of Asbestos Personal Injury Claimants.  Charter Oak seeks approval of fees totaling $57,652.00 and expenses totaling $35.00 for its services during the Application Period.

12.     Deloitte Tax LLP ("Deloitte Tax") was retained to provide tax services to the Debtors and Debtors-in-Possession.  Deloitte Tax seeks approval of fees totaling $23,657.00 and expenses totaling $16.28 for its services from July 1, 2011, through September 30, 2011 (the "Forty-Second Interim Period").

---

[4]We note for informational purposes that Caplin & Drysdale billed the time of attorney Elihu Inselbuch at $1,000.00 per hour.  During the current Application Period, Mr. Inselbuch billed 18.9 hours at the $1,000 per hour rate, for $18,900.00 in fees.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

13.     Ferry, Joseph & Pearce, P.A. ("Ferry Joseph"), was retained as counsel to the Official Committee of Asbestos Property Damage Claimants. Ferry Joseph seeks approval of fees totaling $21,177.00 and expenses totaling $1,976.09 for its services during the Application Period.

14.     Foley Hoag LLP ("Foley Hoag") was retained as special environmental counsel to the Debtors. Foley Hoag seeks approval of fees totaling $55,705.30 and expenses totaling $5,522.67 for its services during the Application Period.

15.     Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen") was retained as immigration counsel to the Debtors. Fragomen seeks approval of fees totaling $8,850.00 and expenses totaling $6,270.38 for its services during the Application Period.

16.     The Hogan Firm ("Hogan") was retained as Delaware counsel to the Canadian Zonolite Attic Insulation ("ZAI") Claimants. Hogan seeks approval of fees totaling $32,877.00 and expenses totaling $2,117.95 for its services during the Application Period.

17.     Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors. K&E seeks approval of fees totaling $1,238,051.50[5] and expenses totaling $15,500.45 for its services during the Application Period.

18.     Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") was retained as co-counsel to the Official Committee of Equity Holders. Kramer Levin seeks approval of fees totaling $35,118.50 and expenses totaling $152.90 for its services during the Application Period.

---

[5]We note for informational purposes that Kirkland & Ellis billed the time of partners, Christopher Landau, P.C., and James H. M. Sprayregen, P.C., at $1,045.00 per hour. During the Application Period, Mr. Landau billed 4.0 hours for fees of $4,180.00, and Mr. Sprayregen billed 0.40 hour for fees of $418.00. In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

19.     Lauzon Bélanger Lespérance ("Lauzon Bélanger) was retained as Canadian counsel to the Canadian ZAI Claimants.  Lauzon Bélanger seeks approval of fees totaling CDN $6,033.30 and expenses totaling CDN $904.53 for its services during the Application Period.

20.     Legal Analysis Systems, Inc. ("LAS"), was retained as asbestos-related bodily injury consultant to the Official Committee of Asbestos Personal Injury Claimants.  LAS seeks approval of fees totaling $1,522.50 and no expenses for its services during the Application Period.[6]

21.     Norton Rose OR LLP ("Norton Rose"), formerly known as Ogilvy Renault LLP, was retained as special counsel to the Debtors and Debtors-in-Possession in Canada.  Norton Rose seeks approval of fees totaling CDN $16,736.50 and expenses totaling CDN $383.09 for its services during the Application Period.

22.     Orrick, Herrington & Sutcliffe LLP ("Orrick") was retained as bankruptcy counsel to David T. Austern, Future Claimants' Representative.  Orrick seeks approval of fees totaling $462,548.25 and expenses totaling $7,444.37 for its services during the Application Period.

23.     Phillips, Goldman & Spence, P.A. ("PG&S"),  was retained as local counsel to David T. Austern, Future Claimants' Representative.  PG&S seeks approval of fees totaling $15,222.00 and expenses totaling $35.47 for its services during the Application Period.

24.     PricewaterhouseCoopers LLP ("PwC") was retained as auditors and tax consultants to the Debtors and Debtors-in-Possession.  PwC seeks approval of fees totaling $697,938.55 and expenses totaling $20,265.21 for its services during the Application Period.  Also, in the Application, PwC seeks approval of the following special project application:

---

[6]LAS' Application covers the period of October 1, 2011, through March 31, 2012, which comprises the Forty-Third and Forty-Fourth Interim Periods.

- Global Restructuring Project (for the Period of January through March 2012) in which PwC seeks fees totaling $154,000.31[7] and expenses totaling $4,083.72.

25.    Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  Reed Smith seeks approval of fees totaling $155,029.50 and expenses totaling $12,759.89 for its services during the Application Period.

26.    Alan B. Rich ("Alan Rich") was retained as counsel to the Honorable Alexander M. Sanders, Jr., Legal Representative for Future Asbestos-Related Property Damage Claimants.  Alan Rich seeks approval of fees totaling $37,180.00 and expenses totaling $30.00 for his services during the Application Period.

27.    The Honorable Alexander M. Sanders, Jr. ("Judge Sanders"), was retained as the Legal Representative for Future Asbestos-Related Property Damage Claimants.  Judge Sanders seeks approval of fees totaling $9,135.00 and expenses totaling $30.00 for his services during the Application Period.

28.    Saul Ewing LLP ("Saul Ewing") was retained as co-counsel to the Official Committee of Equity Holders.  Saul Ewing seeks approval of fees totaling $31,791.50 and expenses totaling $609.54 for its services during the Application Period.

29.    Scarfone Hawkins LLP ("Scarfone Hawkins") was retained as Canadian counsel to the Canadian ZAI Claimants.  Scarfone Hawkins seeks approval of fees totaling CDN $15,682.50 and expenses totaling CDN $2,056.21 for its services during the Application Period.

--------

[7]We note that pursuant to PwC's engagement letter with the Debtor dated July 14, 2011, the combined budget for the Global Restructuring Project is $575,000.00 in fees.  Fees billed on the project to date (including those listed above) total $531,057.86.  Thus, as of the current Application Period, PwC's fees on the project are under budget, and we have no objection to the fees on that basis.

30.     Steptoe & Johnson LLP ("Steptoe") was retained as special tax counsel to the Debtors.  Steptoe seeks approval of fees totaling $10,492.00 and expenses totaling $22.70 for its services during the Application Period.

31.     Stroock & Stroock & Lavan LLP ("Stroock") was retained as counsel to the Official Committee of Unsecured Creditors.  Stroock seeks approval of fees totaling $121,495.00[8] and expenses totaling $740.14 for its services during the Application Period.

32.     Woodcock Washburn LLP ("Woodcock Washburn") was retained as special litigation counsel to the Debtors.  Woodcock Washburn seeks approval of fees totaling $6,361.50 and expenses totaling $3,470.00 for its services during the Application Period.

33.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Applications in their entirety, including each of the time and expense entries included in the exhibits to the Applications, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2012, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

---

[8]We note for informational purposes that Stroock billed the time of partner, Lewis Kruger, at $1,025.00 per hour.  During the Application Period, Mr. Kruger billed 8.7 hours for fees of $8,917.50.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

## DISCUSSION

34.     We have no issues with or objections to any of the Applications.[9]

## CONCLUSION

35.     In summary, for the Application Period, we recommend approval of the following

fees and expenses for these Applicants:

        a.        Anderson Kill & Olick - $402,648.50 in fees and $4,061.99 in expenses;

        b.        Baer Higgins Fruchtman - $292,480.00 in fees and $6,106.45 in expenses[10];

        c.        Beveridge & Diamond - $109,020.00 in fees and $207.09 in expenses for the

Forty-Third Interim Period;

        d.        Bilzin Sumberg - $12,993.00 in fees and $169.70 in expenses;

        e.        Blackstone - $250,000.00 in fees and $2,502.68 in expenses;

        f.        BMC - $98,962.00 in fees ($99,004.00 minus $42.00[11]) and $8,091.61 in

expenses;

        g.        Campbell & Levine - $42,209.50 in fees ($42,253.50 minus $44.00[12]) and

---

[9]We sent initial reports or informal inquiries to Baer Higgins Fruchtman, Beveridge & Diamond, BMC, Campbell & Levine, Foley Hoag, Orrick, Reed Smith, Scarfone Hawkins, and Woodcock Washburn, and the issues raised therein were resolved to our satisfaction, with reductions agreed to by BMC, Campbell & Levine, Scarfone Hawkins, and Woodcock Washburn. *See* Appendices A through E and Footnotes 11, 12, 14, and 15.

[10]We noted that the fee detail for the Employee Benefits project category was missing from Baer Higgins Fruchtman's February 2012 monthly fee application.  In response to our request, Baer Higgins Fruchtman supplied the missing fee detail, and we have attached it as Response Exhibit 1.

[11]This agreed $42.00 reduction is for a time entry in which there was a mathematical error.

[12]This agreed $44.00 reduction is for duplicate time entries. *See* Appendix B.

$4,123.40 in expenses;

    h.      Caplin & Drysdale - $207,950.00 in fees and $3,744.50 in expenses;

    i.      Capstone - $117,066.50 in fees and $251.22 in expenses;

    j.      Casner - $40,257.50 in fees and $38,516.54 in expenses;

    k.      Charter Oak - $57,652.00 in fees and $35.00 in expenses;

    l.      Deloitte Tax - $23,657.00 in fees and $16.28 in expenses for the Forty-Second Interim Period;

    m.      Ferry Joseph - $21,177.00 in fees and $1,976.09 in expenses;

    n.      Foley Hoag - $55,705.30 in fees and $5,522.67[13] in expenses;

    o.      Fragomen - $8,850.00 in fees and $6,270.38 in expenses;

    p.      Hogan - $32,877.00 in fees and $2,117.95 in expenses;

    q.      Kirkland & Ellis - $1,238,051.50 in fees and $15,500.45 in expenses;

    r.      Kramer Levin - $35,118.50 in fees and $152.90 in expenses;

    s.      Lauzon Bélanger - CDN $6,033.30 in fees and CDN $904.53 in expenses;

    t.      LAS - $1,522.50 in fees for the Forty-Third and Forty-Fourth Interim Periods;

    u.      Norton Rose - CDN $16,736.50 in fees and CDN $383.09 in expenses;

    v.      Orrick - $462,548.25 in fees and $7,444.37 in expenses;

    w.      PG&S - $15,222.00 in fees and $35.47 in expenses;

    x.      PwC - $697,938.55 in fees and $20,265.21 in expenses for the current

---

[13]Included in Foley Hoag's expense request was a meal expense of $418.00.  In response to our inquiry, Foley Hoag advised that this was for breakfast for 12 people and lunch for 19 people at a meeting and strategy session concerning the Wells G&H Superfund site held at Foley Hoag's Boston office.  We accept Foley Hoag's explanation and have no objection to this expense.

Application Period, plus $154,000.31 in fees and $4,083.72 in expenses for the Global Restructuring

Project (January through March 2012);

       y.      Reed Smith - $155,029.50 in fees and $12,759.89 in expenses;

       z.      Alan Rich - $37,180.00 in fees and $30.00 in expenses;

      aa.     Judge Sanders - $9,135.00 in fees and $30.00 in expenses;

      bb.     Saul Ewing - $31,791.50 in fees and $609.54 in expenses;

      cc.     Scarfone Hawkins - CDN $15,296.25 in fees (CDN $15,682.50 minus

$386.25[14]) and CDN $2,056.21 in expenses;

      dd.     Steptoe & Johnson - $10,492.00 in fees and $22.70 in expenses;

      ee.     Stroock - $121,495.00 in fees and $740.14 in expenses; and

      ff.     Woodcock Washburn - $6,352.50 in fees ($6,361.50 minus $9.00[15]) and

$3,470.00 in expenses.

---

[14]This agreed $386.25 reduction is for time entries which were of an administrative nature. *See* Appendix E.

[15]This agreed $9.00 reduction is to correct a mathematical error in Woodcock Washburn's fees for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:
        Warren H. Smith
        Texas State Bar No. 18757050

2235 Ridge Road, Suite 105
Rockwall, Texas 75087
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 13th day of August, 2012.

Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicants**

Robert Y. Chung
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182

Roger J. Higgins
Baer Higgins Fruchtman LLC
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Pamela D. Marks
Beveridge & Diamond, P.C.
201 N. Charles Street, Suite 2210
Baltimore, MD 21201

Scott L. Baena
Jay M. Sakalo
Matthew I. Kramer
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

John James O'Connell III
Managing Director
Blackstone Advisory Services L.P.
345 Park Avenue
New York, NY 10154

Myrtle H. John
BMC Group
600 1st Avenue, Suite 300
Seattle, Washington 98104

Marla R. Eskin
Mark T. Hurford
Kathleen Campbell Davis
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19899

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Edwin N. Ordway, Jr.
Capstone Advisory Group, LLC
Park 80 West
250 Pehle Avenue, Suite 105
Saddle Brook, NJ 07663

Robert A. Murphy
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

James P. Sinclair
Charter Oak Financial Consultants, LLC
430 Center Avenue
Mamaroneck, NY 10543

Jared Gordon
Deloitte Tax LLP
1700 Market Street
Philadelphia, PA 19103

Michael B. Joseph
Theodore J. Tacconelli
Lisa L. Coggins
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 1000
P. O. Box 1351
Wilmington, DE 19899

Seth D. Jaffe
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600

Scott E. Bettridge
Fragomen, Del Rey, Bernsen & Loewy LLP
One Alhambra Plaza, Suite 600
Coral Gables, FL 33134

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

John Donley
Adam C. Paul
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Philip Bentley
David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10022

Mark A. Peterson
Legal Analysis Systems, Inc.
970 Calle Arroyo
Thousand Oaks, CA  91360

Teresa J. Walsh
Norton Rose OR LLP
200 Bay Street, Suite 3800
Royal Bank Plaza, South Tower
Toronto, ON   M5J 2Z4

Roger Frankel
Richard H. Wyron
Debra L. Felder
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005

John C. Phillips, Jr.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Kathleen M. Miller
Stephanie S. Habelow
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

Kurt F. Gwynne
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Teresa K. D. Currier
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Anne E. Moran
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036

Lewis Kruger
Kenneth Pasquale
Arlene Krieger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Gary H. Levin
Woodcock Washburn LLP
Cira Centre – 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

**The Debtors**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Local Counsel for the Debtors**
James E. O'Neill
Laura Davis Jones
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

# APPENDIX A

## Beveridge & Diamond

1.      We noted that in December 2011, multiple Beveridge & Diamond professionals billed a total of 79.0 hours for $20,755.00 in fees on a research project.  See <u>Appendix A-1</u>.  We asked Beveridge & Diamond to explain the subject matter of this research and how it was utilized for the benefit of the debtor's estate.  Beveridge & Diamond responded:

> ...[T]he research pertained to legal issues related to potential environmental remediation claims that could result in significant additional expenses for the Debtor's estate.  At the request of Debtor, we performed an evaluation of complex legal issues that included areas of law that have recently evolved.  We also conducted factual research, and application of the law to the facts.  In addition, this work required an analysis and application of the law in different jurisdictions.  We provided work products to Debtor that were both cost effective and useful, and in the long run may help to preserve the Debtor's estate far beyond the cost of the legal work.  As a side note, the presence of two associates enabled them to divide the research topics, and for efficiency to the extent feasible each researcher followed-up to address questions regarding their own research.
>
> Because the time entries filed with the bankruptcy court are publicly available and because the request for the legal research and the resulting work and advice is all privileged and confidential (under both the attorney client and attorney work product doctrines), we are not at liberty to provide you with additional detail.  If you would like more information on these or the below issues that likewise concern privileged matters, we recommend that you speak with Debtor's Senior Environmental Counsel, Lydia B. Duff, who can provide any additional detail that she may be at liberty to share and that may be necessary.

We accept Beveridge & Diamond's response and have no objection to these fees.

## APPENDIX A-1

### (Beveridge & Diamond)

| | | | |
|---|---|---|---|
| 12/12/11 | BR | 3.80 | Research; draft summary re same. |
| 12/13/11 | BR | 1.80 | Research. |
| 12/13/11 | HK | 9.20 | Telephone conference with H. Feichko, R. Finke, B. Marriam, and P. Marks; prepare summary re same and conduct legal research. |
| 12/14/11 | BR | 5.50 | Legal research. |
| 12/14/11 | HK | 6.80 | Telephone conference with H. Feichko, R. Mercer, and P. Marks conduct research. |
| 12/16/11 | HK | 1.70 | Conduct research and prepare memorandum. |
| 12/18/11 | BR | 6.00 | Research and continue to prepare memorandum. |
| 12/19/11 | BR | 2.00 | Research and prepare memorandum. |
| 12/19/11 | HK | 7.40 | Research and prepare memorandum. |
| 12/20/11 | BR | 2.40 | Research; conference with K. Bourdeau, P. Marks, and H. Knight re status of research; identify information needs; e-mail communications with H. Knight, P. Marks, and K. Bourdeau re same. |
| 12/20/11 | HK | 6.90 | Continue research; telephone conference with P. Marks, K. Bourdeau, and B. Reddy re same. |
| 12/19/11 | EW | 2.00 | Research. |
| 12/23/11 | EW | 3.50 | Conference with P. Marks and research. |
| 12/27/11 | EW | 7.50 | Research and prepare binder. |
| 12/28/11 | EW | 8.00 | Conference with K. Bourdeau; research and continue same. |
| 12/29/11 | EW | 4.50 | Research as directed by K. Bourdeau. |

# APPENDIX B

## Campbell & Levine

1.      We noted several sets of identical time entries.  See <u>Appendix B-1</u>.  We asked Campbell & Levine whether any of these time entries were duplicates.  Campbell & Levine responded:

> Campbell & Levine has reviewed the excel spreadsheet containing the entries which were identified as potentially being duplicates.  In response, we can confirm that the first two entries on the spreadsheet are duplicates.  In addition, the last two entries are duplicates.  As a result, we agree to a reduction of $44.00.  The remaining entries, however, are not duplicates.  As more fully explained on the attached, certain of the filings that were reviewed were filed, withdrawn and later re-filed.  For your review, we have attached hereto the spreadsheet with the addition of the specific docket entries showing where they were filed and, where applicable, the docket numbers where they were later withdrawn.

We have attached the spreadsheet with Campbell & Levine's comments as <u>Response Exhibit 2</u>.  We accept Campbell & Levine's response and recommend a reduction of $44.00 in fees.

## APPENDIX C

## Orrick

1.      We noted that the expense detail was missing from Orrick's Application.  Orrick

supplied its expense detail in response to our request.  See Response Exhibit 3.  Our questions

concerning Orrick's expenses are addressed in the following paragraphs.

2.      We noted the following meal charge for which more information was needed:

| 12/6/2011 | BUSML | $102.50 | VENDOR: Flik Compass Group USA Invoice #: F199940312; Date: 12/1/2011 - DC- DC/id#146071\mkm-period ended December 31, 2011-cust. #F199940000-catering |
|---|---|---|---|

In response to our request, Orrick provided the following information:

> 12/06/2011 – Business Meal - $102.50.  This charge was for lunch for 10 people meeting at Orrick's Washington, DC office.

> Note: The fee auditor's guidelines for lunch allowance in Washington, DC is $45 per person.  No reduction is necessary to this expense item.

We accept Orrick's response and have no objection to this expense.

3.      We noted the following travel expense for which more information was needed:

| 1/8/2012 | Travel Expense, Out of Town | $314.17 | VENDOR: Wyron, Richard H.; Invoice#: 010812; Date: 1/19/2012 - dc/dd/#145805/myp-mediation in Ny 1/8-9/12 |
|---|---|---|---|

We asked Orrick to itemize this expense, and Orrick responded:

> 1/08/2012 - $314.17 – Richard Wyron / hotel stay at London Hotel in New York, NY ($269 daily room rate) to attend mediation session with Plan objectors.

> Note: The fee auditor's latest guidelines for hotel stays show a "trigger rate" of $525 for hotels in New York City.  No reduction is necessary to this expense item.

We accept Orrick's response and have no objection to this expense.

4.      We noted the following air fare charges for which more information was needed:

| 1/5/2012 | AIR | Travel Expense, Air Fare | $779.82 | VENDOR: American Express; INVOICE#: 122511; DATE: 12/25/2011 - FIRM-FIRM/S#145426/MYP - LAWYERS TRAVEL CHARGE ACCT - 3XXX-X708-11008 |
| 1/5/2012 | AIR | Travel Expense, Air Fare | $835.40 | VENDOR: Frankel, Roger; INVOICE#: 012412; DATE: 1/26/2012 - dc/dd/#146179/myp - Mediation session w/ client, McGovern, Libby, Bnsf, insurer Acc, Ny 1/5/12 |
| 1/8/2012 | AIR | Travel Expense, Air Fare | $134.48 | VENDOR: American Express; INVOICE#: 012512; DATE: 1/25/2012 - FIRM-FIRM/#147005/MYP - LAWYERS TRAVEL CHARGE ACCT 3XXX-X708-11008 |
| 1/31/2012 | AIR | Travel Expense, Air Fare | $156.90 | VENDOR: Frankel, Roger; INVOICE#: 031412D; DATE: 3/20/2012 - dc/dd/#148866/myp - Fcr mtg at Young, conway; mtg at Kirkland re opinion, next steps, Ny 1/31-2/6/12 |
| 2/1/2012 | AIR | Travel Expense, Air Fare | $873.60 | VENDOR: American Express; INVOICE#: 022512; DATE: 2/25/2012 - FIRM-FIRM/S#148533/MYP - LAWYERS TRAVEL CHARGE ACCT 3XXX - X708 - 11008 |

In response to our request, Orrick provided the following information:

a.  1/05/2012 - $779.82 – Richard Wyron / round-trip, coach class air fare from Washington, DC to New York, NY

b.  1/05/2012 - $835.40 – Roger Frankel / round-trip, coach class air fare from Washington, DC to New York, NY

c.  1/08/2012 - $134.48 – Richard Wyron / This charge represents two separate charges for changing an airline ticket; one charge is $38.00 for the travel agent ticketing fee and the other of $96.28 is the difference between the old and new fares.

d.  1/31/2012 - $156.90 – Roger Frankel / This amount represents two separate charges. The first was for $52.45, which is the portion allocated to this client for air fare from Washington, DC to New York, NY; the total charge of $209.80 was allocated among three clients. The second charge of $104.45 is the portion allocated to this client for air fare from New York, NY to Washington, DC; the total charge of $417.80 was allocated among three clients.

e.  2/01/2012 - $873.60 – Richard Wyron / round-trip, coach class air fare from Washington, DC to New York, NY

We accept Orrick's response and have no objection to these expenses.

## APPENDIX D

## Reed Smith

1.      We noted that on January 25, 2012, attorneys Flatley ($655), Klapper ($610), and Luchini ($585) attended a meeting at Cambridge.  The total time spent, including preparation, was 18.90 hours, for total fees of $11,855.00.

| 01/25/12 | LEF | 1.30 | 851.50 | ......; preparation for Cambridge meeting on 1/26 (0.8); call with T. Klapper regarding Cambridge meeting issues (0.5). |
| 01/26/12 | LEF | 9.00 | 5,895.00 | Preparation for meeting on trip to Boston (3.5); Cambridge meeting with clients and potential experts and follow-up with J. Luchini (5.5) |
| 01/26/12 | ABK | 3.10 | 1,891.00 | ....; participate in potential expert meeting with client (3.1). |
| 01/26/12 | JSL | 5.50 | 3,217.50 | .......; attend meeting in Boston with potential experts (5.5). |

Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  We asked Reed Smith to explain why it was necessary for each attorney to attend this meeting, and Reed Smith provided the following response:

The meeting in question was held in regard to a new matter for which the Debtors retained Reed Smith in December 2011.  The new matter involves the review and analysis of, and legal counsel regarding, certain issues relating to product specifications.  For that reason, the new matter is titled "Specifications Inquiry" on the invoices attached to Reed Smith's Forty-Fourth Interim Quarterly Fee Application.

The issues raised in the Specifications Inquiry matter are multi-faceted, and because of that, the Debtors sought the services of three Reed Smith attorneys for the matter: (i) Lawrence E. Flatley, Esq., who has extensive experience in representing the Debtors on product liability matters, and who also has extensive experience in dealing with insurance recovery issues; (ii) Joseph S. Luchini, Esq., who has extensive experience representing clients in construction-related disputes; and (iii)

Antony B. Klapper, Esq., who has represented the Debtors previously on product liability matters and who has extensive experience in counseling manufacturing clients on issues relating to product use and stewardship.

As we have previously advised the Fee Auditor, Reed Smith has a long history of representing the Debtors in product liability litigation and disputes. Throughout this long relationship, Reed Smith has consistently used -- at the Debtors' request -- a division-of-labor strategy to maximize the effectiveness of the representation provided to the Debtors. Through that strategy, several Reed Smith professionals often work on the same matter at the same time, but each professional is assigned a specific focus within the matter. As a result, while all of the professionals work together on the overall matter, there is minimal overlap in the work done by each professional, and specific professionals are assigned direct responsibility for results.

The attendance of multiple Reed Smith professionals at certain meetings, hearings or conference calls during the Debtors' bankruptcy has often been necessary when the event in question covers topics within the areas of primary responsibility of more than one Reed Smith professional. So it was with the meetings on January 26, 2012. The Debtors requested the meeting with Messrs. Flatley, Luchini and Klapper to identify and discuss the various issues presented in the Specifications Inquiry matter which were divided among each attorney's area of responsibility. Moreover, the Debtors specifically requested Messrs. Flatley and Luchini to attend the meeting in person, so as to meet with certain consultants whom the Debtors also intended to invite to the meeting regarding this matter. Mr. Klapper participated in the meeting telephonically.

The January 26 meeting served to coordinate the work of each Reed Smith attorney on the Specifications Inquiry matter going forward, so that the work of each attorney would not overlap with the work of the others. These efforts at coordination and dividing responsibility have succeeded in avoiding duplication of effort in this matter, as reflected in subsequent fee applications.

Reed Smith is fully aware of the need to avoid the duplication of work, and it has made -- and will continue to make -- concentrated efforts to avoid any such duplication, including writing off time prior to the submission of Fee Applications if there is any unnecessary duplication. As the various Fee Applications reflect, particularly after the early stages of Reed Smith's representation of the Debtors, the overwhelming majority of meetings, hearings and calls have involved only one Reed Smith professional. Reed Smith has had multiple professionals participate only where multiple issues were addressed and where doing so was necessary and/or more economical than any alternative staffing plan; it will continue to follow this policy in the future.

We accept Reed Smith's response and have no objection to these fees.

## APPENDIX E

### Scarfone Hawkins

1.      We noted the following time entries which appeared related to bookkeeping and administrative matters:

| 01/06/12 | receipt Hogan letter and cheque, letter to Hogan, memo to Matt Moloci | DT | $525.00 | 0.10 | $52.50 |
|---|---|---|---|---|---|
| 01/11/12 | receipt Karen Harvey email re transfer of funds | DT | $525.00 | 0.10 | $52.50 |
| 01/31/12 | follow-up memo to Cindy Yates re: receipt of The Hogan Firm holdback monies | DT | $525.00 | 0.10 | $52.50 |
| 03/01/12 | discuss and review with Matt Moloci, memo to Matt Moloci, re accounts receivable and unbilled disbursements | DT | $525.00 | 0.35 | $183.75 |
| 03/05/12 | Email report from David Thompson regarding unbilled disbursements and outstanding accounts receivable relating to matter; review and reply to Thompson | MGM | $450.00 | 0.10 | $45.00 |
| | | | | 0.75 | $386.25 |

We asked Scarfone Hawkins to explain why the estate should compensate this time, and its Delaware counsel advised us that Scarfone Hawkins would agree to a $386.25 reduction. We appreciate this response and recommend a reduction of $386.25 in fees.