# Exhibit B

### Matter 88 - Acton Site OU3

During this Twenty-Eighth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Grace Acton Site. On September 30, 2005, the federal Environmental Protection Agency issued the Record of Decision, or ROD, for the cleanup of the so-called Operable Unit 3 (OU-3) at the Site. The ROD identified a remedy for the Site, which EPA will expect the Debtor to implement pursuant to the terms of a consent decree entered into between the Debtor and the United States in 1980.

Although the ROD states the general outline of the remedy, substantial work is required to determine what flexibility the Debtor may have in implementing the remedy. The next step in this process was the issuance by EPA of a scope of work (SOW), to be performed by the Debtor, to implement the remedy described in the ROD. Following issuance of the SOW, and during the Twenty-eighth Application Period, the Firm worked with the Debtor on issues related to the sediment remedy for the Site.

This work is complex and requires an in-depth knowledge of the history of the Debtor's cleanup of the Grace Acton Site, the terms of the 1980 Consent Decree, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the 1980 Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $624.00 | 1.1 | $ 686.40 |
| | | | | | |
| TOTAL | | | | 1.1 | $ 686.40 |

### Matter 101 - Bankruptcy Matters

This matter covers preparation of monthly and interim fee applications, as well as the Firm's efforts to obtain Court cost authorization for the Firm to serve as special environmental counsel to Debtor. Foley Hoag's ordinary practice is to exercise billing discretion prior to submitting invoices, and it has done so with respect to each of the invoices it submitted during the Interim Period. To date, none of the interested parties objected to payment on account of any portion of any of those invoices, although they were entitled to do so.

The Firm's application-preparation fee is reasonable in light of the nature and magnitude of the effort involved. For each of those matters, as required by the Local Rules, the Firm submitted detailed billing summaries, and its attorneys prepared narrative descriptions of the work performed.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $624.00 | 1.2 | $ 748.80 |
| | | | | | |
| TOTAL | | | | 1.2 | $ 748.80 |

**Matter 102 - Blackburn and Union Privileges Superfund Site, Walpole, Mass**

During this Twenty-Eighth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Blackburn and Union Privileges Superfund Site, in Walpole, Massachusetts. The site has been in industrial use for several hundred years. From approximately 1915 to 1935, it was operated by Multibestos Company, which manufactured products containing asbestos. The stock of Multibestos was purchased by Dewey & Almy in or about 1930. The Debtor purchased the stock of Dewey & Almy in 1954.

The Debtor and other potentially responsible parties have been working with EPA and MassDEP since 1988. In 1992 and 1993, the Debtor performed a cleanup at the Site with respect to asbestos, though other contamination remained. The Site was added to the federal National Priorities List in 1994. the Debtor received a Notice of Potential Liability from EPA in 1998 and a "Special Notice of Responsibility" in 1999. Also in 1999, the Debtor entered into an administrative order with EPA and the Kendall Company, another potentially responsible party. In the order, the Debtor and Kendall each agreed to pay 50% of the costs for performance of the Remedial Investigation / Feasibility Study ("RI/FS") for the Site. After the Debtor filed for reorganization, the Kendall Company continued the RI/FS work without financial participation from the Debtor.

In 2006, EPA announced that it was revisiting the potential risks posed by the presence of asbestos as the Site, including areas with concentrations of asbestos greater than 0.25%, even though the original cleanup was based on a concentration of 1%. EPA has recently indicated that there may be several additional areas of the Site that require remediation for asbestos.

On September 30, 2008, EPA issued the Record of Decision (ROD) for the Site, which identifies the elements of the cleanup plan EPA has selected. The remedy contains several different components, the estimated cost of which in the ROD is approximately $13,000,000, and also identifies certain other issues which may require yet additional work. After issuing the ROD, EPA then issued what is known as "special notice" letters pursuant to section 122 of CERCLA, triggering a period of negotiations with EPA concerning implementation of the remedy selected in the ROD. In December 2008, Debtor and Kendall reached a further agreement, ratified by this Court, pursuant to which Debtor and Kendall each agreed to pay 50% of costs incurred in implementing the remedy selected by EPA in the ROD.

The Debtor, Kendall, and the Shaffers, who are the owners of the Site, reached agreement with EPA on settlement to pay certain of EPA's past costs and to implement the remedy selected in the ROD. The consent decree was lodged with the Court on July 28, 2010 and entered by the Court on December 21, 2010.

Separately, the Debtor, Kendall, and the Shaffers negotiated a settlement of claims by the United States and the Commonwealth of Massachusetts alleging damage to natural resources associated with the Site. That settlement was implemented through a consent decree which was entered by the District Court for the District of Massachusetts on December 12, 2011.

During this period, we assisted the Debtor with respect to implementation of the terms of the consent decree for the cleanup of the Site. This work included obtaining access to properties necessary to perform the cleanup, review of reports to EPA concerning cleanup work performed to date, discussions regarding the schedule for the cleanup, and review of EPA claims for oversight costs concerning the Site.

This work is complex and requires an in-depth knowledge of the Superfund law. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective implementation of the consent decree and resolving the natural resource damage claims.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $624.00 | 5.5 | $ 3,432.00 |
| | | | | | |
| **TOTAL** | | | | **5.5** | **$ 3,432.00** |

### Matter 103 – Wells G&H Superfund Site

During this Twenty-Eighth Application Period, the Firm assisted the Debtor in matters related to response actions that may be required by EPA in connection with the Wells G&H Superfund Site, in Woburn, Massachusetts. The Debtor owns certain property located at Washington Street in Woburn, Massachusetts. The property is part of the Wells G&H Superfund Site and the Debtor previously entered into a consent decree with EPA pursuant to which the Debtor is performing certain response actions. By letter dated May 14, 2009, EPA provided comments to the Debtor concerning certain reports submitted to EPA by the Debtor. That letter asked the Debtor to coordinate further investigation with the Operable Unit 2 Central Area Aquifer RI/FS being performed with respect to the Site and further requested certain additional investigation with respect to the Debtor property.

During this period, the Firm advised the Debtor concerning how to respond to EPA. Specifically, the Firm assisted the Debtor in negotiating with EPA concerning the work necessary to fully assess what is known as the Central Area of the Site, including working with consultants, review of documents and a proposed work plan, and preparation for and conduct of a meeting with EPA. We also advised the Debtor concerning allocation of costs for such work and negotiations among the PRPs, including various joint defense issues. Finally, we also

advised the Debtor concerning issues on the Grace property itself, including both potential revisions to the groundwater treatment system in place on the Grace property and a further soil cleanup at the Grace property.

This work is complex and requires an in-depth knowledge of the history of the Debtor's response actions in connection with the Site, the terms of the existing Consent Decree, negotiations with UniFirst Corporation, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $624.00 | 43.2 | $ 26,956.80 |
| Amy E. Boyd | Associate | Environmental | $430.00 | 19.3 | $ 8,299.00 |
| | | | | | |
| TOTAL | | | | 62.5 | $ 35,255.80 |

### Matter 106 – Walpole Consent Decree Compliance Property Matters

During this Twenty-Eighth Application Period, the Firm provided analysis and advice to Debtor regarding real property issues which must be addressed in connection with the cleanup of the Blackburn and Union Privileges Superfund Site, located in Walpole, Massachusetts. As noted with respect to Matter 102, the Debtor, together with the Shaffers and Kendall Company, are implementing a consent decree for the remediation of the Site. The Site includes portions of the Neponset River and various response actions are necessary in and near the Neponset River, including on properties owned by various different persons.

Access from such persons is necessary to implement necessary response actions. Many of these properties are very old and have complicated record title information. The consent decree work cannot proceed without a clear understanding of the relevant title issues. Thus, during the relevant period, the Firm has assisted the Debtor by locating deeds for relevant properties and providing the Debtor with analysis of the deeds.

This work is complex and requires an in-depth knowledge of the relevant real estate law. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to obtaining access to properties necessary to comply with the consent decree, and implementing the cleanup on a cost-effective manner.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Jacob N. Polatin | Partner | Real Estate | $601.00 | 0.3 | $ 180.30 |
| | | | | | |
| TOTAL | | | | 0.3 | $ 180.30 |

## Matter 107 – FDA Compliance Assessment

During this Twenty-Eighth Application Period, the Firm provided ongoing analysis and advice to Debtor regarding compliance with U.S. Food and Drug Administration (FDA) laws and regulations. Specifically, the Firm advised the Debtor regarding premarket requirements for FDA-regulated products under development pursuant to the Federal Food, Drug, and Cosmetic Act (FDCA) and implementing regulations, and also counseled the Debtor with respect to postmarket FDCA compliance for FDA-regulated products currently on the U.S. market.

The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate because the legal analysis and advice will (i) assist the Debtor in bringing FDA-regulated products to market in a timely, efficient, and compliant manner and (ii) help the Debtor maintain compliance with FDA laws and regulations and avoid FDA enforcement action for products already on the U.S. market.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| James Flaherty | Associate | Administrative | $485.00 | 5.1 | $ 2,473.50 |
| | | | | | |
| **TOTAL** | | | | **5.1** | **$ 2,473.50** |

## Matter 108 – Discovery Sciences FDA Matters

During this Twenty-Eighth Application Period, the Firm provided ongoing analysis and advice to Debtor regarding compliance with U.S. Food and Drug Administration (FDA) laws and regulations. Specifically, the Firm advised the Debtor regarding premarket requirements for FDA-regulated products under development pursuant to the Federal Food, Drug, and Cosmetic Act (FDCA) and implementing regulations, and also counseled the Debtor with respect to postmarket FDCA compliance for FDA-regulated products currently on the U.S. market.

The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate because the legal analysis and advice will (i) assist the Debtor in bringing FDA-regulated products to market in a timely, efficient, and compliant manner and (ii) help the Debtor maintain compliance with FDA laws and regulations and avoid FDA enforcement action for products already on the U.S. market.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| James Flaherty | Associate | Administrative | $485.00 | 19.8 | $ 9,603.00 |
| | | | | | |
| **TOTAL** | | | | **19.8** | **$ 9,603.00** |

## Matter 111 – Incubator FDA Matters

During this Twenty-Eighth Application Period, the Firm provided ongoing analysis and advice to Debtor regarding compliance with U.S. Food and Drug Administration (FDA) laws and regulations. Specifically, the Firm advised the Debtor regarding premarket requirements for FDA-regulated products under development pursuant to the Federal Food, Drug, and Cosmetic Act (FDCA) and implementing regulations, and also counseled the Debtor with respect to postmarket FDCA compliance for FDA-regulated products currently on the U.S. market.

The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate because the legal analysis and advice will (i) assist the Debtor in bringing FDA-regulated products to market in a timely, efficient, and compliant manner and (ii) help the Debtor maintain compliance with FDA laws and regulations and avoid FDA enforcement action for products already on the U.S. market.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| James Flaherty | Associate | Administrative | $485.00 | 2.2 | $ 1,067.00 |
| | | | | | |
| TOTAL | | | | 2.2 | $ 1,067.00 |

## Matter 112 – Miscellaneous FDA Matters

During this Twenty-Eighth Application Period, the Firm provided ongoing analysis and advice to Debtor regarding compliance with U.S. Food and Drug Administration (FDA) laws and regulations. Specifically, the Firm advised the Debtor regarding premarket requirements for FDA-regulated products under development pursuant to the Federal Food, Drug, and Cosmetic Act (FDCA) and implementing regulations, and also counseled the Debtor with respect to postmarket FDCA compliance for FDA-regulated products currently on the U.S. market.

The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate because the legal analysis and advice will (i) assist the Debtor in bringing FDA-regulated products to market in a timely, efficient, and compliant manner and (ii) help the Debtor maintain compliance with FDA laws and regulations and avoid FDA enforcement action for products already on the U.S. market.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| James Flaherty | Associate | Administrative | $485.00 | 0.5 | $ 242.50 |
| | | | | | |
| TOTAL | | | | 0.5 | $ 242.50 |