# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co. (hereinafter referred to as "Grace"), on behalf of itself and the Grace Group, and Dairyland Insurance Company and its parents, subsidiaries, affiliates, reinsurers and any other entity that is or could be obligated to undertake any liability of Dairyland Insurance Company under Policy No. XL 17265 identifying W. R. Grace & Co. as the insured (hereinafter referred to as "Dairyland") (collectively "the Parties").

### WITNESSED THAT:

WHEREAS, Dairyland issued a policy of insurance that provides, or is alleged to provide, excess liability insurance coverage to Grace; and

WHEREAS, claims have been asserted against Grace alleging injury due to exposure to asbestos and asbestos-containing materials and Grace has incurred certain liabilities, expenses and losses arising out of such Asbestos PI Claims; and

WHEREAS, Grace has asserted rights to insurance coverage with respect to Asbestos PI Claims pursuant to the Subject Policy and disputes have arisen between Grace and Dairyland regarding the Parties' respective rights and obligations under the Subject Policy; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-1139 (JKF), *et seq.* and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, on January 31, 2011, the Bankruptcy Court confirmed the Joint Plan of Reorganization and entered the Confirmation Order, and on January 30, 2012, the District Court affirmed the Confirmation Order and issued or affirmed the injunctions in the Joint Plan of

Reorganization; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, a full and final settlement that releases and terminates all rights, obligations and liabilities that the Parties may owe one another under the Subject Policy completely and for all time.

## AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

## I.    Definitions

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Capitalized terms in the prefatory paragraph, recitals, this Definitions section and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization (as defined below). Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.    <u>Approval Order</u>:  "Approval Order" means an order of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in form and substance satisfactory to the Parties, approving this Agreement and the

compromise and settlement memorialized herein between and among the Parties.

B.    Asbestos PI Claims: "Asbestos PI Claims" has the meaning set forth in the Joint

Plan of Reorganization.

C.    Bankruptcy Case: "Bankruptcy Case" means the reorganization case pursuant to

Chapter 11 of the United States Bankruptcy Court for the District of Delaware,

styled as *In re W. R. Grace & Co., et al.* and jointly administered as Case No. 01-

1139 (JKF).

D.    Bankruptcy Court: "Bankruptcy Court" means the United States Bankruptcy

Court for the District of Delaware and, to the extent it exercises jurisdiction over

the Bankruptcy Case, the United States District Court for the District of Delaware.

E.    Business Day: "Business Day" means any day that is not a Saturday, a Sunday or

a federal holiday in the United States of America.

F.    Claim: "Claim" means:

1.    "Claim" as that term is defined in the United States Bankruptcy Code, 11

U.S.C. Section 101(5);

2.    "Demand" as that term is defined in the United States Bankruptcy Code,

11 U.S.C. Section 524(g)(5); and

3.    Any claim (whether past, present or future, known or unknown, asserted

or unasserted, foreseen or unforeseen, fixed or contingent, direct or

indirect, matured or unmatured, liquidated or unliquidated, direct or

consequential, and whether in law, equity, admiralty or otherwise),

assertion of right, complaint, cross-complaint, counterclaim, affirmative

defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit,

action, cause of action, administrative proceeding, governmental claim or action, order, judgment, settlement, mediation, arbitration, lien and any other assertion of liability of any kind relating to any subject whatsoever.

G.  Committee: "Committee" means the Official Committee of Asbestos Personal Injury Claimants in the Bankruptcy Case.

H.  Confirmation Order: "Confirmation Order" means the order entered by the Bankruptcy Court on January 31, 2011 in the Bankruptcy Case confirming the Joint Plan of Reorganization, together with the order of the District Court issued on January 30, 2012 pursuant to Section 524(g)(3)(A) of the Bankruptcy Code confirming or affirming such order.

I.  Dairyland: "Dairyland" means Dairyland Insurance Company and its parents, subsidiaries, affiliates, reinsurers and any other entity that is or could be obligated to undertake any liability of Dairyland Insurance Company under the Subject Policy.

J.  District Court: "District Court" means the United States District Court for the District of Delaware.

K.  Effective Date: "Effective Date" has the meaning set forth in the Joint Plan of Reorganization.

L.  Entity: "Entity" means any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, including the Trust as defined in Section I.U. herein, unincorporated organization, federal, state, local or foreign government or any political subdivision thereof, or other person or entity.

M.   Execution Date:   "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

N.   Final Order: "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

O.   Futures Representative:   "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

P.   Grace: "Grace" means W. R. Grace & Co.

Q.   Grace Group: "Grace Group" means Grace, the past and present subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents and employees of Grace and of such subsidiaries and affiliates, and any other Entity that was insured under the Subject Policy and on whose behalf Grace has the power to release Claims under the

Subject Policy.

R.      Joint Plan of Reorganization:  "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders as Modified Through December 23, 2010, including all exhibits thereto, as such plan has been and may be modified from time to time.

S.      Subject Policy:  "Subject Policy" means the insurance policy number XL 17275 issued by Dairyland to Grace and/or one or more members of the Grace Group for the policy period from June 30, 1983 to June 30, 1984.

T.      Trigger Date:  "Trigger Date" means the last date upon which all of the following have occurred, provided that this Agreement has not previously become null and void pursuant to its terms:

1.      The Approval Order becomes a Final Order and

2.      The Effective Date occurs.

U.      Trust:  "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee and the Futures Representative.

## II.      Payment of the Settlement Amount

A.      Within thirty (30) days after the occurrence of the Trigger Date, Dairyland shall pay to the Trust the sum of Two Million United States Dollars ($2,000,000.00) (the "Settlement Amount") in immediately available funds.  The Parties agree that payment of the Settlement

Amount to the Trust represents a fair, reasonable and good faith compromise of the value of the Subject Policy that would otherwise be paid out for Asbestos PI Claims, and fully, completely and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits of the Subject Policy that might otherwise be available to pay any and all Claims.

B.      Payment of the Settlement Amount to the Trust shall be made in accordance with instructions provided to Dairyland by the Trust.

### III.   Releases

A.      Release by Grace and the Trust

1.      Upon the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, the Trust and Grace (on behalf of itself and, to the extent it has the power to bind them, the Grace Group) hereby release, remise, covenant not to sue and forever discharge Dairyland along with each of its parents, predecessors and successors and each of their respective subsidiaries, divisions and affiliates, and the directors, officers, agents and employees of Dairyland in their capacities as such, with respect to:

a.      All Claims for insurance coverage, defense costs, expenses, indemnity, settlements, damages and/or any other sums or amounts whatsoever and/or other obligations under, based upon or arising out of the Subject Policy of every name and nature whatsoever including, but not limited to, Claims constituting or relating to Asbestos PI Claims, other products claims, non-products claims, environmental or pollution claims, property damage claims and

every other category or type of claim for which coverage could actually or potentially be sought by Grace under the Subject Policy whether or not specifically set forth herein; and

b.     Any Claim based on or arising out of any Claims released in Section III.A.1.a. above including, but not limited to, Claims alleging bad faith, breach of an implied warranty of good faith and fair dealing and unfair claims practices, whether under statute or common law or any other similar type of alleged misconduct or omission in connection with the Subject Policy, including claims for costs, damages, punitive damages, attorneys' fees or any other relief whatsoever arising out of or relating to any such Claims.

2.     GRACE AND THE TRUST ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.   GRACE AND THE

TRUST EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

B.    Release by Dairyland

1.    Upon payment of the Settlement Amount in accordance with Section II. of this Agreement, Dairyland hereby releases, remises, covenants not to sue and forever discharges the Grace Group and the Trust, and the trustees, officers, agents and employees of the Trust in their capacities as such with respect to:

a.    Any Claim and/or other obligations under, based on or arising under the Subject Policy; and

b.    Any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort by Grace or the Trust in connection with the Subject Policy.

2.    DAIRYLAND ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.    DAIRYLAND EXPRESSLY ASSUMES THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT IT DOES NOT KNOW OR DOES NOT SUSPECT TO EXIST.

C.    No Release of Obligations Under This Agreement

The releases set forth in this Section III.A. and B. do not relieve the Parties of any of their obligations under this Agreement.

D.    Upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, the Parties hereto intend to reserve no rights or benefits whatsoever under or in connection with the Subject Policy, and any and all rights, duties, responsibilities and obligations of the Parties created by or in connection with the Subject Policy are terminated and extinguished forever and for all time.  The releases contained in this Section III., together with the sale of the Subject Policy as described in Section V.E., are intended to operate as if the Subject Policy had never been issued to Grace by Dairyland and, upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, the Subject Policy is declared to be void *ab initio* and of no further force and effect.

IV.    **Release of Subrogation and Contribution Claims and Judgment Reduction Clause**

A.    Payments Made Under This Agreement

Dairyland shall not seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification or otherwise, from anyone other than Dairyland's reinsurers or retrocessionaires in their capacity as such.

Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against Dairyland relating to the Subject Policy, then Dairyland shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent that Dairyland recovers any amount from such third party, the net proceeds of such recovery (after any payment made by Dairyland to such third party on its Claim and after Dairyland is reimbursed from such proceeds for its fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by Dairyland promptly to the Trust. Grace and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in this Section IV.A.

B.    Payments Received From Other Insurers

Following the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, in the event that:

1.    Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than Dairyland for any Claims that have been remised, released, acquitted and forever discharged as against Dairyland pursuant to this Agreement, and

2.    As a result of such other insurer's obligation to pay described in Section IV.B.1. above, such insurer either:

a.    Enters into a settlement with Dairyland, which settlement has been consented to by Grace or the Trust, as applicable, and any other Entity (as applicable), requiring Dairyland to reimburse some or all of the payment made or to be made by such insurer or

b.    Obtains a final, non-appealable judicial or quasi-judicial

determination or award entitling such insurer to obtain a sum certain from Dairyland for contribution, subrogation or indemnification or other similar Claim, against Dairyland for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in Section IV.B.1. above, the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in Section IV.B.1. above) by the amount necessary to reduce or eliminate such settlement, determination or award against Dairyland (referred to in Section IV.B.2. above).

To ensure that such a reduction is accomplished, Dairyland shall be entitled to assert this Section IV. as a defense to any action against it for any such portion of the determination or award against Dairyland (referred to in Section IV.B.2. above) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Dairyland from any liability for the determination or award. Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a Claim for insurance rights or benefits for any Claim that may give rise to the events referenced in Section IV.B.1. above, it will provide notice to Dairyland of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is reasonably likely to result in a Claim against Dairyland and shall consent to Dairyland's intervention in any such proceeding to the extent that Dairyland seeks to intervene to effectuate the intent of this Section IV.

## V.    <u>Bankruptcy-Related Obligations</u>

### A.    <u>Committee and Futures Representative Approval</u>

Grace will make a good faith effort to obtain written approval of this Agreement and the releases contained herein from the Committee and the Futures Representative within thirty (30) days of the Execution Date.

B.    Approval Motion

Promptly following the Execution Date, Grace will prepare and file a motion to approve this Agreement with the Bankruptcy Court, which motion shall be in form and substance reasonably satisfactory to Dairyland.   Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and to have the Approval Order become a Final Order. Dairyland, at its own expense, will cooperate with Grace in obtaining the Approval Order.

C.    Approval Order

Grace will use its reasonable best efforts to cause the Bankruptcy Court to enter an order providing, among other things:

1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

2.    That the Agreement will be designated an Asbestos Insurance Settlement Agreement, and that Dairyland will be designated as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

3.    That, upon the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to Dairyland, and Dairyland shall be deemed to have purchased and acquired from Grace, all

rights, title and interests of Grace in and under the Subject Policy, free and clear of all liens, encumbrances and/or interests of any kind or nature whatsoever by Grace or any other person or entity, under Section 363(f) of the Bankruptcy Code, and that Dairyland shall be entitled to the protections of Section 363(m) of the Bankruptcy Code; and

4.    That the Trust, upon its creation, will be bound to the provisions of this Agreement with the same force and effect as if the Trust was a Party to this Agreement from the Execution Date.

D.    <u>Designation as a Settled Asbestos Insurance Company</u>

Upon the Approval Order becoming a Final Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and Dairyland as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization.

E.    <u>Sale Pursuant to Section 363(f)</u>

Upon the Trust's receipt of payment of the Settlement Amount as provided in Section II. of this Agreement, and without need for further action, Grace shall be deemed to have sold, conveyed, assigned, transferred and delivered to Dairyland, and Dairyland shall be deemed to have acquired and purchased from Grace, all rights, title and interests of Grace in and under the Subject Policy, free and clear of all liens, encumbrances and/or interests of any kind or nature whatsoever, to the extent permitted under Section 363(f) of the Bankruptcy Code. The Parties agree that the Settlement Amount is at least equal to the fair value of the Subject Policy.

F.    <u>Trust Bound by Agreement</u>

Upon the Effective Date, the Trust shall be bound by this Agreement as if it had

been a Party hereto as of the Execution Date.

     G.    No Bankruptcy-Related Activities

        Effective upon the Execution Date, Dairyland shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization, initiating or taking discovery or filing any appeal of the Confirmation Order) that may hinder, delay or oppose actions of the Debtors, the Committee and/or the Futures Representative in the Bankruptcy Case. Upon the Approval Order becoming a Final Order, Dairyland expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

## VI.    Termination of Agreement

     A.    Automatic Termination

        After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

     1.    The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case;

     2.    The entry of an order by the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court reversing the Approval Order;

     3.    The failure of the Effective Date to occur, coupled with circumstances that make clear that the Effective Date will never occur;

     4.    The failure of the Committee or the Futures Representative to consent to the Agreement within thirty (30) days of the Execution Date; or

     5.    The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and Dairyland as a Settled Asbestos Insurance

Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section V.D. prior to the Confirmation Order becoming a Final Order.

B.    Termination by Dairyland

Dairyland, at its sole option, may terminate this Agreement and render this Agreement null and void by providing written notice of termination to Grace, the Committee and the Futures Representative within thirty (30) days of the entry of an Approval Order that becomes a Final Order that fails to approve the sale of the Subject Policy free and clear of all liens, encumbrances or interests of any kind or nature whatsoever pursuant to Section 363(f) of the Bankruptcy Code.

Failure by Dairyland to give timely written notice of termination following the occurrence of the above condition of termination shall be deemed a permanent waiver of such condition by Dairyland.

C.    Effect of Termination

Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective and/or is rendered null and void pursuant to this Section VI.:

1.    This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section VIII.;

2.    None of the Parties shall be bound by the terms of any Approval Order;

3.    This Agreement shall no longer be designated as an Asbestos Insurance Settlement Agreement, and Dairyland will no longer be designated as a

Settled Asbestos Insurance Company and shall neither seek nor receive any benefit or protection as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization;

4.    The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policy, or any other agreement between the Parties relating to the Subject Policy, that they would have had absent this Agreement; and

5.    The releases provided in Section III. and the sale of the Subject Policy provided in Section V.E. shall become null and void *ab initio*.

## VII.    Defense of the Asbestos PI Channeling Injunction

A.    Following the Trust's receipt of payment of the Settlement Amount in accordance with Section II. of this Agreement, if any Entity asserts against Dairyland an Asbestos PI Claim based on or arising under the Subject Policy ("Dairyland Channeling Injunction Claim"), the Trust shall expend reasonable best efforts, at its own expense, to enforce the Asbestos PI Channeling Injunction with respect to the Dairyland Channeling Injunction Claim and to obtain a ruling that such Dairyland Channeling Injunction Claim is channeled to the Trust pursuant to the Asbestos PI Channeling Injunction and Bankruptcy Code Section 524(g). In no event, however, shall the Trust be required to expend an amount greater than the Settlement Amount in carrying out its obligation under this Section VII.A. When the Trust has expended an amount equal to the Settlement Amount in defending the application of the Asbestos PI Channeling Injunction to Dairyland Channeling Injunction Claims, the Trust shall have no further obligation under this Section VII.A. For the avoidance of doubt, this Section VII.A. shall not obligate the Trust to retain counsel to represent Dairyland or to pay the costs and expenses, including attorneys' fees,

associated with such legal, consulting or expert representation as Dairyland may choose to engage in connection with any Claim against Dairyland.

B.      Dairyland shall promptly notify the Trust in writing of any demand, notice, summons or other process received by Dairyland that Dairyland reasonably believes is a Dairyland Channeling Injunction Claim.  If the Trust determines that a Claim presented by Dairyland is not a Dairyland Channeling Injunction Claim, the Trust shall promptly notify Dairyland and shall not be required to undertake to defend the application of the Asbestos PI Channeling Injunction as to such Claim.  In the event of a dispute as to whether a Claim triggers the Trust's obligations under Section VII.A., the Trust and Dairyland shall meet and confer to attempt to resolve any such dispute.  If they are unable to resolve such dispute through meeting and conferring, they may litigate the issue before the Bankruptcy Court, or, if the Bankruptcy Court declines to exercise jurisdiction, before any court of competent jurisdiction.  If the Trust undertakes to defend the application of the Asbestos PI Channeling Injunction to a Claim presented by Dairyland, but a court of competent jurisdiction thereafter determines that the Claim is not an Asbestos PI Claim subject to the Asbestos PI Channeling Injunction and such order becomes a Final Order, the Trust shall have no further obligation to defend the application of the Asbestos PI Channeling Injunction to such Claim.

## VIII.  <u>Confidentiality</u>

A.      Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Information") are confidential, shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, and shall not be disclosed by any Party except as permitted in Section VIII.B. and C. below.

B.      The Parties may disclose Information as follows:

1.      The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.      The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3.      The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.      The Information may be disclosed by Dairyland to its reinsurers, directly or through intermediaries;

5.      Grace or the Trust may disclose the Information to other insurers and their representatives;

6.      The Information may be disclosed to outside auditors or accountants of any Party or to the Internal Revenue Service;

7.      A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.      The Information may be disclosed in any action brought to enforce the terms of this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in clauses (3) through (7) above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

C.    A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government, governmental agency or other authority.

D.    In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Section VIII., the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

## IX.    Non-Prejudice and Construction of Agreement

A.    This Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage under the Subject Policy, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policy.

B.    This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Dairyland with regard to other insureds, and without prejudice to positions taken by Grace with regard to other insurers. The Parties and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement except as expressly provided herein.

C.    Neither the terms of this Agreement nor its negotiation, its execution or any act in performance of this Agreement shall be invoked by Dairyland, Grace or the Trust, or their attorneys or agents, in any proceeding for the purpose of attempting to establish or prove the acceptance by Dairyland, Grace or the Trust of any particular interpretation of any insurance

policy with respect to any Claim.

D.     The Parties agree, as an essential and integral part of this Agreement, that this Agreement and the matters contained in this Agreement are not intended to be, nor shall they be, admissible or relevant in any case or proceeding to prove the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone other than to one another.

E.     This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in the interpretation of any ambiguities against insurers. No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

X.     <u>Modification</u>

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach, or a waiver of any other condition or of any

breach of any other term, covenant or warranty.

**XI.**   **Integration**

 A. Entire Agreement

  This Agreement constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect hereto.   Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms.

 B. Titles and Captions

  Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only.   Such titles and captions are intended in no way to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

**XII.**   **Governing Law**

  This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules.   Nothing in this Section XII. shall affect what law would govern the interpretation or application of the Subject Policy.

**XIII.**   **Representations**

  Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation (subject, in the case of Grace, to the entry of an Approval Order).   Each Party represents and warrants that the person signing this Agreement on its behalf is authorized to execute this Agreement (subject, in the case of Grace, to the entry of an

Approval Order).

## XIV.  Execution and Authority

       This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

## XV.  Notices

       Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class postage prepaid or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

       W. R. Grace & Company
       7500 Grace Drive
       Columbia, Maryland  21044
       Attn:  General Counsel
       Fax:  (410) 531-4545

       with a copy to:

       Kirkland & Ellis LLP
       300 North LaSalle Street
       Chicago, Illinois  60654
       Attn:  John Donley
       Fax:  (312) 862-2200

If to Dairyland:

       Dairyland Insurance Company
       P.O. Box 8032
       Stevens Point, Wisconsin  54481
       Attn:  Andrew Watzka
       Fax:  (715) 346-9708

       with a copy to:

       Morrison Mahoney LLP
       250 Summer Street
       Boston, Massachusetts  02210
       Attn:  John T. Harding

Fax: (617) 342-4888

If to the Committee:

Caplin & Drysdale Chartered
One Thomas Circle, NW
Washington, D.C. 20005
Attn: Peter Lockwood
Fax: (202) 429-3301

and

Caplin & Drysdale Chartered
375 Park Avenue, 35th Floor
New York, New York 10152
Attn: Elihu Inselbuch
Fax: (212) 644-6755

with a copy to:

Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, New York 10020
Attn: Robert Horkovich
Fax: (212) 278-1733

If to the Futures Representative:

Asbestos PI Future Claimants' Representative
c/o Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, Virginia 22042-0683
Attn: David T. Austern
Fax: (703) 205-6249

with a copy to:

Orrick, Herrington & Sutcliffe LLP
1152 Fifteenth Street, NW
Washington, DC 20005
Attn: Roger Frankel
Fax: (202) 339-8500

## XVI.  Binding Effect

This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _Richard C. Finke_

Name: _Richard C. Finke_

Title: _Assistant General Counsel_

Date: _10/5/12_

**DAIRYLAND INSURANCE COMPANY**

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: _____

Name: _____

Title: _____

Date: _____


**DAIRYLAND INSURANCE COMPANY**

By: *Andrew Watzka*

Name: *Andrew Watzka*

Title: *Enviornmental Claims Specialist*

Date: *10-1-12*