## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  December 17, 2012, at 9:00 a.m.** |
| | ) | **Objection Deadline:  November 30, 2012, at 4:00 p.m.** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## APPROVING A QUALIFIED SETTLEMENT FUND AND RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (the "Motion")[2] for entry of an order, substantially in the form attached hereto as

Exhibit A, approving the establishment of a "qualified settlement fund" and related relief.  In

support of this Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

[2]    Capitalized terms used but not defined herein have the meanings given in the *First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace, et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders* [Docket No. 24657] (the "Plan").

## Jurisdiction

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1408.

3.      The statutory bases for the relief requested herein are sections 105(a), 345 and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), section 468B of title 26 of the United States Code (the "Internal Revenue Code"), sections 1.468B–1-5 of title 26 of the Code of Federal Regulations, Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5.      As described in the Debtors' Disclosure Statement,[3] as of the Petition Date, Grace and its affiliates were defendants in over 65,000 actions involving over 129,000 tort

---

[3]    *Debtors' Disclosure Statement for the First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace, et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated as of February 27, 2009* [Docket No. 20873] (the "Disclosure Statement").

2

claims for personal injuries allegedly caused by exposure to asbestos ("Asbestos PI Claims").[4] Under the Plan, on the Effective Date these Asbestos PI Claims will be channeled to a trust established pursuant to section 524(g) of the Bankruptcy Code (the "Asbestos PI Trust") to be resolved and paid by the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the Asbestos PI TDP.[5]

6.    This Court and the district court have confirmed the Plan,[6] but despite the Debtors' successful efforts to reach consensual resolutions with some of the appellants, several appeals of the Confirmation Order remain pending in the Third Circuit.[7] Thus, even if the Third Circuit resolves these appeals in the Debtors' favor, the Third Circuit's decision, and the Plan's Effective Date, will not occur until some future date.[8]

7.    The Plan obligates the Debtors to contribute certain Asbestos PI Trust Assets to the Asbestos PI Trust on the Effective Date.[9] One of those Assets is "$250 million in Cash plus interest thereon from January 12, 2009 until (and including) the Effective Date."[10]

8.    As described in the Debtors' "equity trading" motion, earlier in these Chapter 11 Cases the Debtors had significant operating losses for tax purposes ("NOLs"),

---

[4]   Disclosure Statement, §§ 2.7, 2.7.1.

[5]   *Id.*, § 1.2.2; Plan § 7.2.

[6]   *See Notification of Confirmation* [Docket No. 28526].

[7]   All Third Circuit appeals have been consolidated into Case No. 12-1402. *See Order*, Document: 003110983525 in Case No. 12-1402, United States Court of Appeals for the Third Circuit, entered August 10, 2012.

[8]   The Debtors are discussing possible initiatives with their stakeholders that would allow the Debtors to emerge from bankruptcy prior to the Third Circuit's decision.

[9]   Plan, § 7.2.2.

[10]  *Id.*, § 1.1.47(a).

estimated on December 31, 2003 to be approximately $348 million.[11]  As that motion stated,

"The Debtors' NOLs are an extremely valuable asset of the Debtors' estates because under the

Internal Revenue Code . . . the Debtors can carry forward their NOLs to offset their future

taxable income . . . and thereby reduce their future aggregate tax obligations."[12]  The Debtors'

NOLs have now been substantially utilized, and thus there are not significant NOLs available to

reduce the Debtors' taxable income in 2012.

9.      By establishing a "qualified settlement fund" ("QSF") before the end of

2012, the Debtors can receive a tax deduction in 2012.  Amounts transferred to the QSF will

ultimately be transferred to the Asbestos PI Trust on the Effective Date in accordance with the

Plan.  Therefore, the Debtors seek authority to transfer up to $100 million cash ("Settlement

Cash") during 2012 to a segregated bank account that would qualify as a QSF under federal tax

law.

## Relief Requested

10.      By this Motion, the Debtors respectfully request the entry of an order,

substantially in the form attached hereto as Exhibit A, which (a) approves the QSF, (b)

authorizes, but does not direct, the Debtors to (i) open a bank account segregated from other

assets of the Debtors (the "Segregated Account"), and (ii) transfer the Settlement Cash into the

Segregated Account, and (c) provides that this Court take continuing jurisdiction over the QSF.

---

[11]  *Debtors' Emergency Motion for Entry of an Interim Order Pursuant to Sections 105( a), 362(a)(3) and 541 of the Bankruptcy Code (A) Limiting Certain Transfers of Equity Securities of the Debtors and (B) Approving Related Notice Procedures* [Docket No. 6681], at ¶¶ 6, 8.

[12]  *Id.* at ¶ 7.

4

**Basis for Relief**

11.    "Qualified Settlement Funds" are authorized by section 468B of the Internal Revenue Code and the regulations (the "Regulations") promulgated thereunder.[13] Section 468B was enacted as part of the Tax Reform Act of 1986, and was designed as a mechanism to encourage the settlement of certain types of claims.[14] The purpose of a qualified settlement fund is to marshal assets subject to claims and then facilitate the distribution of those the assets to claimants. Once the assets have been fully distributed to claimants, the fund goes out of existence.[15]

12.    Under the Regulations, the QSF must satisfy three requirements, which the QSF proposed here clearly meets:

    a.  *First*, the QSF must be "established pursuant to an order of, or [be] approved by, the United States, any state . . . or any agency or instrumentality (including a court of law) of any of the foregoing and [be] subject to the continuing jurisdiction of that governmental authority; . . ."[16] The QSF would be established by this Court's order.

    b.  *Second*, the QSF must be "established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability— arising from a tort, breach of contract, or violation of the law; . . .[17] The QSF is being established to resolve the Asbestos PI Claims, which generally sound in tort.

---

[13]   26 U.S.C. § 468B; 26 C.F.R. §§ 1.468B–1-5 (attached as Group Exhibit B).

[14]   Timothy O. Beppler, Christopher M. Reimer, *Qualified Settlement Funds and Section 468B*, WYOMING LAWYER, June 2009, at 22.

[15]   Robert W. Wood, 738 Tax Management, QUALIFIED SETTLEMENT FUNDS AND SECTION 468B (2012), at A-1.

[16]   26 C.F.R. §§ 1.468B–1(c)(1).

[17]   26 C.F.R. §§ 1.468B–1(c)(2).

5

c. *Third,* the assets transferred "must be segregated from the other assets of the transferor . . . ."[18]  The Debtors will place the Settlement Cash in an account segregated from the Debtors' other assets.[19]

13.    Multiple benefits will accrue to the Debtors by establishment of the QSF and, therefore, approval of the QSF is in the best interests of the Debtors and their estates.  Most important, the Debtors ordinarily would not be able to claim a tax deduction for the Settlement Cash until the funds were actually transferred to the Asbestos PI Trust, which would not occur until the Effective Date at some future time.  By establishing the QSF in 2012, the Debtors may claim a deduction at the time the assets are transferred to the QSF in 2012, regardless of when the Settlement Cash is actually received by the Asbestos PI Trust.[20]  Based on the Debtors' current 35 percent tax rate, this would result in up to $35 million in 2012 federal tax savings, plus additional state tax savings.  Because on the Effective Date the Settlement Cash will simply be transferred from the Segregated Account to the Asbestos PI Trust, the mechanics of the Trust or the Plan will not be affected.

14.    The Settlement Cash will revert to the Debtors in the event the Third Circuit reverses or otherwise invalidates the Plan.  The Regulations provide for the transferor (the Debtors) to have a "right of reversion" if a court order resolving claims is reversed, in which

---

[18]    26 C.F.R. §§ 1.468B–1(c)(3).

[19]    The Debtors first day "cash management" order provides that "nothing contained herein shall prevent the Debtors from opening any new bank accounts or closing any existing bank accounts as they may deem necessary and appropriate in their sole discretion." *See Order Under 11 U.S.C. §§ 363, 364, 1107 And 1108 (a) Authorizing (i) Maintenance Of Existing Bank Accounts, (ii) Continued Use Of Existing Business Forms, (iii) Continued Use Of Existing Cash Management System, (iv) Existing Investment Practices, and (v) Continued Performance Under Intercompany Agreements and Company Owned Life Insurance and (b) Granting Superpriority Status to Postpetition Intercompany Claims by and between Debtors and Priority Status to Other Inter-Company Claims* [Docket No. 21] ("Cash Management Order"), at ordering paragraph 5, p. 3.

[20]    *See* 26 C.F.R. §§ 1.468B–3(c), (c)(2), (f), (g).

case the funds in the Segregated Account would be returned to the Debtors.  If such a Third

Circuit action took place in a future year, the Debtors would recognize the returned funds as

income in the year in which the funds were returned.[21]

15.    The Debtors, in their business judgment, believe it is in their best interests

and that of their estates to establish the QSF and receive the tax benefits that Congress provided

through section 468B of the Internal Revenue Code.  Section 363(b) of the Bankruptcy Code

allows a debtor in possession to use property of the estate in other than the ordinary course of

business after appropriate notice and hearing.  *See* 11 U.S.C. § 363(b)(1).  To approve the use,

sale or lease of property outside of the ordinary course of business, this Court need only

determine that the Debtors' decision to establish the QSF and take advantage of its benefits is

supported by an articulated business justification.  *See e.g. In re Lionel Corp.*, 722 F.2d 1063,

1070 (2d Cir. 1983) ("there must be some articulated business justification . . . for using, selling

or leasing property out of the ordinary course of business before the bankruptcy judge may order

such disposition under section 363(b)"); *accord, In re Continental Airlines, Inc.*, 780 F.2d 1223,

1226 (5th Cir. 1986); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (approving an order

upholding a land sale where the debtor in possession articulated a business justification); *see also*

*In re Abbott Dairies of Pa, Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986); *Stephens Ind., Inc. v.*

*McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *In re Delaware & Hudson R.R.. Co.*, 124 B.R.

169, 175-76 (D. Del. 1991).

16.    The standard for approval under Section 363(b) is the "business judgment

standard" -- the Debtors must demonstrate that the proposed transaction is within their sound

---

[21]    26 C.F.R. §1.468B–3(c), (f).

business judgment. *See e.g. NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Tama Beef Packing, Inc.*, 277 B.R. 407, 413 (Bankr. N.D. Iowa 2002); *In re GP Express Airlines, Inc.*, 200 B.R. 222, 230 (Bankr. D. Neb. 1996). If a debtor's business judgment has been reasonably exercised, a court should approve the transaction. *See e.g. Bildisco, supra*, 465 U.S. at 523; *Group of Institutional Investors v. Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 527, 549 (1943); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Italian Cook Oil Corp.*, 190 F. 2d 994, 996 (3d Cir. 1951); *Richmond Leasing, supra*, 762 F.2d at 1311-12; *Matter of Tilco, Inc.*, 558 F.2d 1369, 1372 (10th Cir. 1977); *In re Gurski*, 1996 WL 684397 *3 (D. Conn. 1996); *In re Gucci*, 193 B.R. 411, 414-15 (S.D.N.Y. 1996); *Tama, supra*, 277 B.R. at 413; *GP Express supra*, 200 B.R. at 230; *In re Prime Motor Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991) *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990); *Johnson v. Fairco Corporatio*n, 61 B.R. 317, 320 (Bankr. N.D. Ill. 1986).

17.     In applying the "business judgment" standard, courts show great deference to a debtor's decision. *See GP Express, supra*, 200 B.R. at 230 ("Absent a showing of bad faith or abuse of debtor's discretion . . . debtor's exercise of business judgment in deciding whether to assume a lease will generally not be disturbed."); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (same). The Debtors respectfully submit that their decision to establish a QSF is an exercise of their sound business judgment and should be approved by the Court.

18.     This Court has authority to enter the Order. As the Tenth Circuit has stated, a "[Qualified Settlement] Fund satisfies subparagraph (1) of § 1.468B-1(c) if it is

established pursuant to an order of . . . a court of law."[22]  It is common for the section 524(g)

trusts established through plans in asbestos bankruptcy cases to provide that such trusts shall be

"qualified settlement funds," and this Court has approved such provisions.[23]  The Plan in these

Chapter 11 Cases provides that the Asbestos PI Trust and the Asbestos PD Trust shall be

"qualified settlement funds," which this Court approved in the confirmation order.[24]  Outside of

bankruptcy, courts also routinely approve qualified settlement funds and agree to maintain

jurisdiction over such funds with little discussion or controversy.  *See e.g. Commodity Futures*

*Trading Commission v. Emerald Worldwide Holdings, Inc.*, CV03-8339 AHMEX, 2007 WL

2506456 at *2 (C.D. Cal. Aug. 9, 2007); *Cumberland Truck Equipment Co. v. Detroit Diesel*

*Corp.*, 2:05-CV-74594, 2006 WL 3740984 at *2 (E.D. Mich. Dec. 1, 2006); *In re Electrical*

*Carbon Prod. Antitrust Litig.*, 447 F. Supp. 2d 389, 404, 415 (D.N.J. 2006); *Nichols v.*

*Smithkline Beecham Corp.*, A-00-6222, 2005 WL 950616 at *30 (E.D. Penn. April 22, 2005); *In*

*re Zyprexa Products Liability Litig.*, MDL1596, 2005 WL 2237771 at *1 (E.D.N.Y. Aug. 29,

2005).

## Notice

19.    Pursuant to Bankruptcy Rule 2002(a)(2) and Local Rule 2002-1(b), notice

of this Motion has been given to (a) the Office of the United States Trustee, (b) counsel to the

---

[22]  *United States v. Brown*, 348 F.3d 1200, 1208 (10th Cir. 2003).

[23]  *See In re Federal-Mogul Global, Inc.*, No. 01-10578 (Bankr. D. Del. Nov. 8, 2007), [Docket No. 13674, Ex. A, Art. 4.2.1]; *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. Sept. 26, 2006) [Docket No. 19366, Ex. A, Art. 11.1]; *In re Armstrong World Indus.*, No. 00-04471 (Bankr. D. Del. Aug. 17, 2006) [Docket No. 9755, Ex. A, Art. 7.1]; *In re USG Corp.*, No. 01-02094 (Bankr. D. Del. June 15, 2006) [Docket No. 11688, Ex. A, Art. IV.E]; *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Feb. 6, 2006) [Docket No. 8225, Ex. A, Art. 5.2(a)(ii)].

[24]  *See* Plan, §§ 7.2.1, 7.3.1; *see also Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010* [Docket No. 26155], par. I.C(e) at 10.

debtor in possession lenders, (c) counsel to each official committee appointed by the United States Trustee, (d) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative; (e) those parties that requested papers under Bankruptcy Rule 2002, and (f) the Internal Revenue Service.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, which (a) approves the QSF; (b) authorizes, but does not direct, the Debtors to (i) open the Segregated Account, and (ii) transfer the Settlement Cash into the Segregated Account; (c) provides that this Court take continuing jurisdiction over the QSF; and (d) grants such other and further relief as the Court deems just and fair.

*[The Remainder of This Page Is Intentionally Left Blank]*

10

Dated: November, 9 , 2012

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

and

THE LAW OFFICE OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
Telephone:  (312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

*Co-Counsel for the Debtors and Debtors-in-Possession*

K&E 24008902.10