**GROUP EXHIBIT B**

**Excerpts from Internal Revenue Code and Related Regulations**

Subsec. (d)(1). Pub. L. 109–58, §1310(c), inserted at end "For purposes of the preceding sentence, the taxpayer shall request a schedule of ruling amounts upon each renewal of the operating license of the nuclear powerplant."

Subsec. (d)(2)(A). Pub. L. 109–58, §1310(b)(2), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "fund that portion of the nuclear decommissioning costs of the taxpayer with respect to the nuclear powerplant which bears the same ratio to the total nuclear decommissioning costs with respect to such nuclear powerplant as the period for which the Fund is in effect bears to the estimated useful life of such nuclear powerplant, and".

Subsec. (e)(2)(A). Pub. L. 109–58, §1310(e)(1), substituted "rate of 20 percent" for "rate set forth in subparagraph (B)" in introductory provisions.

Subsec. (e)(2)(B) to (D). Pub. L. 109–58, §1310(e)(2), (3), redesignated subpars. (C) and (D) as (B) and (C), respectively, and struck out heading and text of former subpar. (B). Text read as follows: "For purposes of subparagraph (A), the rate set forth in this subparagraph is—

"(i) 22 percent in the case of taxable years beginning in calendar year 1994 or 1995, and

"(ii) 20 percent in the case of taxable years beginning after December 31, 1995."

Subsec. (e)(3). Pub. L. 109–58, §1310(d), substituted "Except as provided in subsection (f), the Fund" for "The Fund".

Subsecs. (f) to (h). Pub. L. 109–58, §1310(b)(1), added subsec. (f) and redesignated former subsecs. (f) and (g) as (g) and (h), respectively.

1996—Subsec. (e)(2)(A). Pub. L. 104–188 provided that the amendment made by section 1917(b)(1) of Pub. L. 102–486 shall be applied as if "at a rate" appeared instead of "at the rate" in the material proposed to be stricken. See 1992 Amendment note below.

1992—Subsec. (e)(2)(A). Pub. L. 102–486, §1917(b)(1), which directed that subpar. (A) be amended by striking "at the rate equal to the highest rate of tax specified in section 11(b)" and inserting "at the rate set forth in subparagraph (B)", was executed by making the substitution for "at a rate equal to the highest rate of tax specified in section 11(b)". See 1996 Amendment note above.

Subsec. (e)(2)(B) to (D). Pub. L. 102–486, §1917(b)(2), added subpar. (B) and redesignated former subpars. (B) and (C) as (C) and (D), respectively.

Subsec. (e)(4)(C). Pub. L. 102–486, §1917(a), struck out before period at end "described in section 501(c)(21)(B)(ii)".

1986—Subsec. (a). Pub. L. 99–514, §1807(a)(4)(E)(i), substituted "this section" for "this subsection".

Subsec. (c)(1)(A). Pub. L. 99–514, §1807(a)(4)(B), substituted "subsection (e)(4)(B)" for "subsection (e)(2)(B)".

Subsec. (d). Pub. L. 99–514, §1807(a)(4)(E)(ii), substituted "this section" for "this subsection" in introductory text.

Subsec. (e). Pub. L. 99–514, §1807(a)(4)(E)(iii), substituted "Reserve Fund" for "Trust Fund" in heading.

Subsec. (e)(1). Pub. L. 99–514, §1807(a)(4)(E)(iv), substituted "this section" for "this subsection" and "Reserve Fund" for "Trust Fund".

Subsec. (e)(2). Pub. L. 99–514, §1807(a)(4)(C), amended par. (2) generally. Prior to amendment, par. (2) read as follows: "There is imposed on the gross income of the Fund for any taxable year a tax at a rate equal to the maximum rate in effect under section 11(b), except that—

"(A) there shall not be included in the gross income of the Fund any payment to the Fund with respect to which a deduction is allowable under subsection (a), and

"(B) there shall be allowed as a deduction any amount paid by the Fund described in paragraph (4)(B) (other than to the taxpayer)."

Subsec. (e)(4)(C). Pub. L. 99–514, §1807(a)(4)(D), added subpar. (C).

Subsec. (e)(6). Pub. L. 99–514, §1807(a)(4)(E)(v), substituted "this section" for "this subsection" in two places and "this paragraph" for "this subparagraph".

Subsec. (f). Pub. L. 99–514, §1807(a)(4)(E)(vi), substituted "For purposes of this section, the" for "The".

Subsec. (g). Pub. L. 99–514, §1807(a)(4)(A)(i), added subsec. (g).

EFFECTIVE DATE OF 2005 AMENDMENT

Pub. L. 109–58, title XIII, §1310(f), Aug. 8, 2005, 119 Stat. 1009, provided that: "The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 2005."

EFFECTIVE DATE OF 1992 AMENDMENT

Section 1917(c) of Pub. L. 102–486 provided that:

"(1) SUBSECTION (a).—The amendment made by subsection (a) [amending this section] shall apply to taxable years beginning after December 31, 1992.

"(2) SUBSECTION (b).—The amendments made by subsection (b) [amending this section] shall apply to taxable years beginning after December 31, 1993. Section 15 of the Internal Revenue Code of 1986 shall not apply to any change in rate resulting from the amendment made by subsection (b)."

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–514 effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as a note under section 48 of this title.

EFFECTIVE DATE

Section effective July 18, 1984, with respect to taxable years ending after such date, see section 91(g)(5) of Pub. L. 98–369, as amended, set out as an Effective Date of 1984 Amendment note under section 461 of this title.

PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§1101–1147 and 1171–1177] or title XVIII [§§1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

TRANSITIONAL RULE

Section 1807(a)(4)(A)(ii) of Pub. L. 99–514 provided that: "To the extent provided in regulations prescribed by the Secretary of the Treasury or his delegate, subsection (g) of section 468A of the Internal Revenue Code of 1954 [now 1986] (as added by clause (i)) shall be applied with respect to any payment on account of a taxable year beginning before January 1, 1987, as if it did not contain the requirement that the payment be made within 2½ months after the close of the taxable year. Such regulations may provide that, to the extent such payment to the Fund is made more than 2½ months after the close of the taxable year, any adjustment to the tax attributable to such payment shall not affect the amount of interest payable with respect to periods before the payment is made. Such regulations may provide appropriate adjustments to the deduction allowed under such section 468A for any such taxable year to take into account the fact that the payment to the Fund is made more than 2½ months after the close of the taxable year."

## § 468B. Special rules for designated settlement funds

### (a) In general

For purposes of section 461(h), economic performance shall be deemed to occur as qualified payments are made by the taxpayer to a designated settlement fund.

**(b) Taxation of designated settlement fund**

**(1) In general**

There is imposed on the gross income of any designated settlement fund for any taxable year a tax at a rate equal to the maximum rate in effect for such taxable year under section 1(e).

**(2) Certain expenses allowed**

For purposes of paragraph (1), gross income for any taxable year shall be reduced by the amount of any administrative costs (including State and local taxes) and other incidental expenses of the designated settlement fund (including legal, accounting, and actuarial expenses)—

(A) which are incurred in connection with the operation of the fund, and

(B) which would be deductible under this chapter for purposes of determining the taxable income of a corporation.

No other deduction shall be allowed to the fund.

**(3) Transfers to the fund**

In the case of any qualified payment made to the fund—

(A) the amount of such payment shall not be treated as income of the designated settlement fund,

(B) the basis of the fund in any property which constitutes a qualified payment shall be equal to the fair market value of such property at the time of payment, and

(C) the fund shall be treated as the owner of the property in the fund (and any earnings thereon).

**(4) Tax in lieu of other taxation**

The tax imposed by paragraph (1) shall be in lieu of any other taxation under this subtitle of income from assets in the designated settlement fund.

**(5) Coordination with subtitle F**

For purposes of subtitle F—

(A) a designated settlement fund shall be treated as a corporation, and

(B) any tax imposed by this subsection shall be treated as a tax imposed by section 11.

**(c) Deductions not allowed for transfer of insurance amounts**

No deduction shall be allowable for any qualified payment by the taxpayer of any amounts received from the settlement of any insurance claim to the extent such amounts are excluded from the gross income of the taxpayer.

**(d) Definitions**

For purposes of this section—

**(1) Qualified payment**

The term "qualified payment" means any money or property which is transferred to any designated settlement fund pursuant to a court order, other than—

(A) any amount which may be transferred from the fund to the taxpayer (or any related person), or

(B) the transfer of any stock or indebtedness of the taxpayer (or any related person).

**(2) Designated settlement fund**

The term "designated settlement fund" means any fund—

(A) which is established pursuant to a court order and which extinguishes completely the taxpayer's tort liability with respect to claims described in subparagraph (D),

(B) with respect to which no amounts may be transferred other than in the form of qualified payments,

(C) which is administered by persons a majority of whom are independent of the taxpayer,

(D) which is established for the principal purpose of resolving and satisfying present and future claims against the taxpayer (or any related person or formerly related person) arising out of personal injury, death, or property damage,

(E) under the terms of which the taxpayer (or any related person) may not hold any beneficial interest in the income or corpus of the fund, and

(F) with respect to which an election is made under this section by the taxpayer.

An election under this section shall be made at such time and in such manner as the Secretary shall by regulation prescribe. Such an election, once made, may be revoked only with the consent of the Secretary.

**(3) Related person**

The term "related person" means a person related to the taxpayer within the meaning of section 267(b).

**(e) Nonapplicability of section**

This section (other than subsection (g)) shall not apply with respect to any liability of the taxpayer arising under any workers' compensation Act or any contested liability of the taxpayer within the meaning of section 461(f).

**(f) Other funds**

Except as provided in regulations, any payment in respect of a liability described in subsection (d)(2)(D) (and not described in subsection (e)) to a trust fund or escrow fund which is not a designated settlement fund shall not be treated as constituting economic performance.

**(g) Clarification of taxation of certain funds**

**(1) In general**

Except as provided in paragraph (2), nothing in any provision of law shall be construed as providing that an escrow account, settlement fund, or similar fund is not subject to current income tax. The Secretary shall prescribe regulations providing for the taxation of any such account or fund whether as a grantor trust or otherwise.

**(2) Exemption from tax for certain settlement funds**

An escrow account, settlement fund, or similar fund shall be treated as beneficially owned by the United States and shall be exempt from taxation under this subtitle if—

(A) it is established pursuant to a consent decree entered by a judge of a United States District Court,

(B) it is created for the receipt of settlement payments as directed by a government entity for the sole purpose of resolving or satisfying one or more claims asserting liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980,

(C) the authority and control over the expenditure of funds therein (including the expenditure of contributions thereto and any net earnings thereon) is with such government entity, and

(D) upon termination, any remaining funds will be disbursed to such government entity for use in accordance with applicable law.

For purposes of this paragraph, the term "government entity" means the United States, any State or political subdivision thereof, the District of Columbia, any possession of the United States, and any agency or instrumentality of any of the foregoing.

(Added Pub. L. 99–514, title XVIII, § 1807(a)(7)(A), Oct. 22, 1986, 100 Stat. 2814; amended Pub. L. 100–647, title I, § 1018(f)(1), (2), (4), (5)(A), Nov. 10, 1988, 102 Stat. 3582; Pub. L. 101–508, title XI, § 11702(e)(1), Nov. 5, 1990, 104 Stat. 1388–515; Pub. L. 109–222, title II, § 201(a), May 17, 2006, 120 Stat. 347; Pub. L. 109–432, div. A, title IV, § 409(a), Dec. 20, 2006, 120 Stat. 2963.)

### REFERENCES IN TEXT

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, referred to in subsec. (g)(2)(B), is Pub. L. 96–510, Dec. 11, 1980, 94 Stat. 2767, as amended, which is classified principally to chapter 103 (§ 9601 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 9601 of Title 42 and Tables.

### AMENDMENTS

2006—Subsec. (g). Pub. L. 109–222 reenacted heading without change and amended text of subsec. (g) generally. Prior to amendment, text read as follows: "Nothing in any provision of law shall be construed as providing that an escrow account, settlement fund, or similar fund is not subject to current income tax. The Secretary shall prescribe regulations providing for the taxation of any such account or fund whether as a grantor trust or otherwise."

Subsec. (g)(3). Pub. L. 109–432 struck out heading and text of par. (3). Text read as follows: "Paragraph (2) shall not apply to accounts and funds established after December 31, 2010."

1990—Subsec. (e). Pub. L. 101–508 substituted "This section (other than subsection (g))" for "This section".

1988—Subsec. (b)(2). Pub. L. 100–647, § 1018(f)(4)(B), substituted "No other" for "no other" in concluding provisions.

Subsec. (b)(2)(B). Pub. L. 100–647, § 1018(f)(4)(A), substituted "a corporation." for "the corporation.".

Subsec. (d)(1)(A). Pub. L. 100–647, § 1018(f)(1), inserted "(or any related person)" after "taxpayer".

Subsec. (d)(2)(A). Pub. L. 100–647, § 1018(f)(2), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "which is established pursuant to a court order,".

Subsec. (d)(2)(E). Pub. L. 100–647, § 1018(f)(1), inserted "(or any related person)" after "taxpayer".

Subsec. (g). Pub. L. 100–647, § 1018(f)(5)(A), added subsec. (g).

### EFFECTIVE DATE OF 2006 AMENDMENT

Pub. L. 109–432, div. A, title IV, § 409(b), Dec. 20, 2006, 120 Stat. 2963, provided that: "The amendment made by this section [amending this section] shall take effect as if included in section 201 of the Tax Increase Prevention and Reconciliation Act of 2005 [Pub. L. 109–222]."

Pub. L. 109–222, title II, § 201(b), May 17, 2006, 120 Stat. 349, provided that: "The amendment made by subsection (a) [amending this section] shall apply to accounts and funds established after the date of the enactment of this Act [May 17, 2006]."

### EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by Pub. L. 101–508 effective as if included in the provision of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, to which such amendment relates, see section 11702(j) of Pub. L. 101–508, set out as a note under section 59 of this title.

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–647 effective, except as otherwise provided, as if included in the provision of the Tax Reform Act of 1986, Pub. L. 99–514, to which such amendment relates, see section 1019(a) of Pub. L. 100–647, set out as a note under section 1 of this title.

### EFFECTIVE DATE

Section effective, except as otherwise provided, as if included in the provisions of the Tax Reform Act of 1984, Pub. L. 98–369, div. A, to which such amendment relates, see section 1881 of Pub. L. 99–514, set out as an Effective Date of 1986 Amendment note under section 48 of this title.

### PLAN AMENDMENTS NOT REQUIRED UNTIL JANUARY 1, 1989

For provisions directing that if any amendments made by subtitle A or subtitle C of title XI [§§ 1101–1147 and 1171–1177] or title XVIII [§§ 1800–1899A] of Pub. L. 99–514 require an amendment to any plan, such plan amendment shall not be required to be made before the first plan year beginning on or after Jan. 1, 1989, see section 1140 of Pub. L. 99–514, as amended, set out as a note under section 401 of this title.

### SPECIAL RULE FOR TAXPAYER IN BANKRUPTCY REORGANIZATION

Section 1807(a)(7)(C) of Pub. L. 99–514, as amended by Pub. L. 100–647, title I, § 1018(f)(3), Nov. 10, 1988, 102 Stat. 3582, provided that: "In the case of any settlement fund which is established for claimants against a corporation which filed a petition for reorganization under chapter 11 of title 11, United States Code, on August 26, 1982, and which filed with a United States district court a first amended and restated plan of reorganization before March 1, 1986—

"(i) any portion of such fund which is established pursuant to a court order and with qualified payments, which meets the requirements of subparagraphs (C) and (D) of section 468B(d)(2) of the Internal Revenue Code of 1954 [now 1986] (as added by this paragraph), and with respect to which an election is made under subparagraph (F) thereof, shall be treated as a designated settlement fund for purposes of section 468B of such Code,

"(ii) such corporation (or any successor thereof) shall be liable for the tax imposed by section 468B of such Code on such portion of the fund (and the fund shall not be liable for such tax), such tax shall be deductible by the corporation, and the rate of tax under section 468B of such Code for any taxable year shall be equal to 15 percent, and

"(iii) any transaction by any portion of the fund not described in clause (i) shall be treated as a transaction made by the corporation."

### CLARIFICATION OF LAW WITH RESPECT TO CERTAIN FUNDS

Section 1807(a)(7)(D) of Pub. L. 99–514 provided that nothing in any provision of law shall be construed as providing that an escrow account, settlement fund, or similar

fund established after Aug. 16, 1986, not be subject to current income tax and that if contributions to such account or fund are not deductible then the account or fund be taxed as a grantor trust, prior to repeal by Pub. L. 100–647, title I, §1018(f)(5)(B), Nov. 10, 1988, 102 Stat. 3582.

## §469. Passive activity losses and credits limited

### (a) Disallowance

#### (1) In general

If for any taxable year the taxpayer is described in paragraph (2), neither—

(A) the passive activity loss, nor
(B) the passive activity credit,

for the taxable year shall be allowed.

#### (2) Persons described

The following are described in this paragraph:

(A) any individual, estate, or trust,
(B) any closely held C corporation, and
(C) any personal service corporation.

### (b) Disallowed loss or credit carried to next year

Except as otherwise provided in this section, any loss or credit from an activity which is disallowed under subsection (a) shall be treated as a deduction or credit allocable to such activity in the next taxable year.

### (c) Passive activity defined

For purposes of this section—

#### (1) In general

The term "passive activity" means any activity—

(A) which involves the conduct of any trade or business, and
(B) in which the taxpayer does not materially participate.

#### (2) Passive activity includes any rental activity

Except as provided in paragraph (7), the term "passive activity" includes any rental activity.

#### (3) Working interests in oil and gas property

##### (A) In general

The term "passive activity" shall not include any working interest in any oil or gas property which the taxpayer holds directly or through an entity which does not limit the liability of the taxpayer with respect to such interest.

##### (B) Income in subsequent years

If any taxpayer has any loss for any taxable year from a working interest in any oil or gas property which is treated as a loss which is not from a passive activity, then any net income from such property (or any property the basis of which is determined in whole or in part by reference to the basis of such property) for any succeeding taxable year shall be treated as income of the taxpayer which is not from a passive activity. If the preceding sentence applies to any taxable year, any credits allowable under subpart B (other than section 27(a)) or D of part IV of subchapter A for such taxable year which are attributable to such property shall be

treated as credits not from a passive activity to the extent the amount of such credits does not exceed the regular tax liability of the taxpayer for the taxable year which is allocable to such net income.

#### (4) Material participation not required for paragraphs (2) and (3)

Paragraphs (2) and (3) shall be applied without regard to whether or not the taxpayer materially participates in the activity.

#### (5) Trade or business includes research and experimentation activity

For purposes of paragraph (1)(A), the term "trade or business" includes any activity involving research or experimentation (within the meaning of section 174).

#### (6) Activity in connection with trade or business or production of income

To the extent provided in regulations, for purposes of paragraph (1)(A), the term "trade or business" includes—

(A) any activity in connection with a trade or business, or
(B) any activity with respect to which expenses are allowable as a deduction under section 212.

#### (7) Special rules for taxpayers in real property business

##### (A) In general

If this paragraph applies to any taxpayer for a taxable year—

(i) paragraph (2) shall not apply to any rental real estate activity of such taxpayer for such taxable year, and
(ii) this section shall be applied as if each interest of the taxpayer in rental real estate were a separate activity.

Notwithstanding clause (ii), a taxpayer may elect to treat all interests in rental real estate as one activity. Nothing in the preceding provisions of this subparagraph shall be construed as affecting the determination of whether the taxpayer materially participates with respect to any interest in a limited partnership as a limited partner.

##### (B) Taxpayers to whom paragraph applies

This paragraph shall apply to a taxpayer for a taxable year if—

(i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and
(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the requirements of the preceding sentence are satisfied if and only if either spouse separately satisfies such requirements. For purposes of the preceding sentence, activities in which a spouse materially participates shall be determined under subsection (h).

**§ 1.468B**                    **26 CFR Ch. I (4–1–12 Edition)**

23, 2010 if all such provisions are consistently applied.

[T.D. 9512, 75 FR 80701, Dec. 23, 2010]

**§ 1.468B  Designated settlement funds.**

A designated settlement fund, as defined in section 468B(d)(2), is taxed in the manner described in § 1.468B–2. The rules for transferors to a qualified settlement fund described in § 1.468B–3 apply to transferors to a designated settlement fund. Similarly, the rules for claimants of a qualified settlement fund described in § 1.468B–4 apply to claimants of a designated settlement fund. A fund, account, or trust that does not qualify as a designated settlement fund is, however, a qualified settlement fund if it meets the requirements of a qualified settlement fund described in § 1.468B–1.

[T.D. 8459, 57 FR 60988, Dec. 23, 1992]

**§ 1.468B–0  Table of contents.**

This section lists the table of contents for §§ 1.468B–1 through 1.468B–9.

*§ 1.468B–1  Qualified settlement funds.*

(a) In general.
(b) Coordination with other entity classifications.
(c) Requirements.
(d) Definitions.
(1) Transferor.
(2) Related person.
(e) Governmental order or approval requirement.
(1) In general.
(2) Arbitration panels.
(f) Resolve or satisfy requirement.
(1) Liabilities to provide property or services.
(2) CERCLA liabilities.
(g) Excluded liabilities.
(h) Segregation requirement.
(1) In general.
(2) Classification of fund established to resolve or satisfy allowable and non-allowable claims.
(i) [Reserved]
(j) Classification of fund prior to satisfaction of requirements in paragraph (c) of this section.
(1) In general.
(2) Relation-back rule.
(i) In general.
(ii) Relation-back election.
(k) Election to treat a qualified settlement fund as a subpart E trust.
(1) In general.
(2) Manner of making grantor trust election.

(i) In general.
(ii) Requirements for election statement.
(3) Effect of making the election.
(l) Examples.

*§ 1.468B–2  Taxation of qualified settlement funds and related administrative requirements.*

(a) In general.
(b) Modified gross income.
(c) Partnership interests held by a qualified settlement fund on February 14, 1992.
(1) In general.
(2) Limitation on changes in partnership agreements and capital contributions.
(d) Distributions to transferors and claimants.
(e) Basis of property transferred to a qualified settlement fund.
(f) Distribution of property.
(g) Other taxes.
(h) Denial of credits against tax.
(i) [Reserved]
(j) Taxable year and accounting method.
(k) Treatment as corporation for purposes of subtitle F.
(l) Information reporting withholding requirements.
(1) Payments to a qualified settlement fund.
(2) Payments and distributions by a qualified settlement fund.
(i) In general.
(ii) Special rules.
(m) Request for prompt assessment.
(n) Examples.

*§ 1.468B–3  Rules applicable to the transferor.*

(a) Transfer of property.
(1) In general.
(2) Anti-abuse rule.
(b) Qualified appraisal requirement for transfers of certain property.
(1) In general.
(2) Provision of copies.
(3) Qualified appraisal.
(4) Information included in a qualified appraisal.
(5) Effect of signature of the qualified appraiser.
(c) Economic performance.
(1) In general.
(2) Right to a refund or reversion.
(i) In general.
(ii) Right extinguished.
(3) Obligations of a transferor.
(d) Payment of insurance amounts.
(e) Statement to the qualified settlement fund and the Internal Revenue Service.
(1) In general.
(2) Required statement.
(i) In general.
(ii) Combined statements.
(f) Distributions to transferors.
(1) In general.
(2) Deemed distributions.
(i) Other liabilities.

**Internal Revenue Service, Treasury** §1.468B–0

(ii) Constructive receipt.
(3) Tax benefit rule.
(g) Example.

*§1.468B–4  Taxability of distributions to claimants.*

*§1.468B–5  Effective dates and transition rules applicable to qualified settlement funds.*

(a) In general.
(b) Taxation of certain pre-1996 fund income.
(1) Reasonable method.
(i) In general.
(ii) Qualified settlement funds established after February 14, 1992, but before January 1, 1993.
(iii) Use of cash method of accounting.
(iv) Unreasonable position.
(v) Waiver of penalties.
(2) Election to apply qualified settlement fund rules.
(i) In general.
(ii) Election statement.
(iii) Due date of returns and amended returns.
(iv) Computation of interest and waiver of penalties.
(c) Grantor trust elections under §1.468B–1(k).
(1) In general.
(2) Transition rules.
(3) Qualified settlement funds established by the U.S. government on or before February 3, 2006.

*§1.468B–6  Escrow accounts, trusts, and other funds used during deferred exchanges of like-kind property under section 1031(a)(3).*

(a) Scope.
(b) Definitions.
(1) In general.
(2) Exchange funds.
(3) Exchange facilitator.
(4) Transactional expenses.
(i) In general.
(ii) Special rule for certain fees for exchange facilitator services.
(c) Taxation of exchange funds.
(1) Exchange funds generally treated as loaned to an exchange facilitator.
(2) Exchange funds not treated as loaned to an exchange facilitator.
(i) Scope.
(ii) Earnings attributable to the taxpayer's exchange funds.
(A) Separately identified account.
(B) Allocation of earnings in commingled accounts.
(C) Transactional expenses.
(iii) Treatment of the taxpayer.
(d) Information reporting requirements.
(e) Examples.
(f) Effective/applicability dates.
(1) In general.
(2) Transition rule.

*§1.468B–7  Pre-closing escrows.*

(a) Scope.
(b) Definitions.
(c) Taxation of pre-closing escrows.
(d) Reporting obligations of the administrator.
(e) Examples.
(f) Effective dates.
(1) In general.
(2) Transition rule.

*§1.468B–8  Contingent-at-closing escrows. [Reserved]*

*§1.468B–9  Disputed ownership funds.*

(a) Scope.
(b) Definitions.
(c) Taxation of a disputed ownership fund.
(1) In general.
(2) Exceptions.
(3) Property received by the disputed ownership fund.
(i) Generally excluded from income.
(ii) Basis and holding period.
(4) Property distributed by the disputed ownership fund.
(i) Computing gain or loss.
(ii) Denial of deduction.
(5) Taxable year and accounting method.
(6) Unused carryovers.
(d) Rules applicable to transferors that are not transferor-claimants.
(1) Transfer of property.
(2) Economic performance.
(i) In general.
(ii) Obligations of the transferor.
(3) Distributions to transferors.
(i) In general.
(ii) Exception.
(iii) Deemed distributions.
(e) Rules applicable to transferor-claimants.
(1) Transfer of property.
(2) Economic performance.
(i) In general.
(ii) Obligations of the transferor-claimant.
(3) Distributions to transferor-claimants.
(i) In general.
(ii) Deemed distributions.
(f) Distributions to claimants other than transferor-claimants.
(g) Statement to the disputed ownership fund and the Internal Revenue Service with respect to transfers of property other than cash.
(1) In general.
(2) Combined statements.
(3) Information required on the statement.
(h) Examples.
(i) [Reserved]
(j) Effective dates.
(1) In general.

(2) Transition rule.

[T.D. 8459, 57 FR 60988, Dec. 23, 1992, as amended by T.D. 8495, 58 FR 58787, Nov. 4, 1993; T.D. 9249, 71 FR 6200, Feb. 7, 2006; T.D. 9413, 73 FR 39619, July 10, 2008]

§ 1.468B-1  Qualified settlement funds.

(a) *In general.* A qualified settlement fund is a fund, account, or trust that satisfies the requirements of paragraph (c) of this section.

(b) *Coordination with other entity classifications.* If a fund, account, or trust that is a qualified settlement fund could be classified as a trust within the meaning of §301.7701-4 of this chapter, it is classified as a qualified settlement fund for all purposes of the Internal Revenue Code (Code). If a fund, account, or trust, organized as a trust under applicable state law, is a qualified settlement fund, and could be classified as either an association (within the meaning of §301.7701-2 of this chapter) or a partnership (within the meaning of §301.7701-3 of this chapter), it is classified as a qualified settlement fund for all purposes of the Code. If a fund, account, or trust, established for contested liabilities pursuant to §1.461-2(c)(1) is a qualified settlement fund, it is classified as a qualified settlement fund for all purposes of the Code.

(c) *Requirements.* A fund, account, or trust satisfies the requirements of this paragraph (c) if—

(1) It is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;

(2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability—

(i) Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter referred to as CERCLA), as amended, 42 U.S.C. 9601 *et seq.*; or

(ii) Arising out of a tort, breach of contract, or violation of law; or

(iii) Designated by the Commissioner in a revenue ruling or revenue procedure; and

(3) The fund, account, or trust is a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor (and related persons).

(d) *Definitions.* For purposes of this section—

(1) *Transferor.* A "transferor" is a person that transfers (or on behalf of whom an insurer or other person transfers) money or property to a qualified settlement fund to resolve or satisfy claims described in paragraph (c)(2) of this section against that person.

(2) *Related person.* A "related person" is any person who is related to the transferor within the meaning of sections 267(b) or 707(b)(1).

(e) *Governmental order or approval requirement*—(1) *In general.* A fund, account, or trust is "ordered by" or "approved by" a governmental authority described in paragraph (c)(1) of this section when the authority issues its initial or preliminary order to establish, or grants its initial or preliminary approval of, the fund, account, or trust, even if that order or approval may be subject to review or revision. Except as otherwise provided in paragraph (j)(2) of this section, the governmental authority's order or approval has no retroactive effect and does not permit a fund, account, or trust to be a qualified settlement fund prior to the date the order is issued or the approval is granted.

(2) *Arbitration panels.* An arbitration award that orders the establishment of, or approves, a fund, account, or trust is an order or approval of a governmental authority described in paragraph (c)(1) of this section if—

(i) The arbitration award is judicially enforceable;

(ii) The arbitration award is issued pursuant to a bona fide arbitration proceeding in accordance with rules that are approved by a governmental authority described in paragraph (c)(1) of this section (such as self-regulatory organization-administered arbitration proceedings in the securities industry); and

(iii) The fund, account, or trust is subject to the continuing jurisdiction of the arbitration panel, the court of law that has jurisdiction to enforce the arbitration award, or the governmental authority that approved the rules of the arbitration proceeding.

(f) *Resolve or satisfy requirement*—(1) *Liabilities to provide services or property.* Except as otherwise provided in paragraph (f)(2) of this section, a liability is not described in paragraph (c)(2) of this section if it is a liability for the provision of services or property, unless the transferor's obligation to provide services or property is extinguished by a transfer or transfers to the fund, account, or trust.

(2) *CERCLA liabilities.* A transferor's liability under CERCLA to provide services or property is described in paragraph (c)(2) of this section if following its transfer to a fund, account, or trust the transferor's only remaining liability to the Environmental Protection Agency (if any) is a remote, future obligation to provide services or property.

(g) *Excluded liabilities.* A liability is not described in paragraph (c)(2) of this section if it—

(1) Arises under a workers compensation act or a self-insured health plan;

(2) Is an obligation to refund the purchase price of, or to repair or replace, products regularly sold in the ordinary course of the transferor's trade or business;

(3) Is an obligation of the transferor to make payments to its general trade creditors or debtholders that relates to a title 11 or similar case (as defined in section 368(a)(3)(A)), or a workout; or

(4) Is designated by the Commissioner in a revenue ruling or a revenue procedure (see §601.601(d)(2)(ii)(*b*) of this chapter).

(h) *Segregation requirement*—(1) *In general.* If it is not a trust under applicable state law, a fund, account, or trust satisfies the requirements of paragraph (c)(3) of this section if its assets are physically segregated from other assets of the transferor (and related persons). For example, cash held by a transferor in a separate bank account satisfies the segregation requirement of paragraph (c)(3) of this section.

(2) *Classification of fund established to resolve or satisfy allowable and non-allowable claims.* If a fund, account, or trust is established to resolve or satisfy claims described in paragraph (c)(2) of this section as well as other types of claims (*i.e.*, non-allowable claims) arising from the same event or related series of events, the fund is a qualified settlement fund. However, under §1.468B–3(c), economic performance does not occur with respect to transfers to the qualified settlement fund for non-allowable claims.

(i) [Reserved]

(j) *Classification of fund prior to satisfaction of requirements in paragraph (c) of this section*—(1) *In general.* If a fund, account, or trust is established to resolve or satisfy claims described in paragraph (c)(2) of this section, the assets of the fund, account, or trust are treated as owned by the transferor of those assets until the fund, account, or trust also meets the requirements of paragraphs (c) (1) and (3) of this section. On the date the fund, account, or trust satisfies all the requirements of paragraph (c) of this section, the transferor is treated as transferring the assets to a qualified settlement fund.

(2) *Relation-back rule*—(i) *In general.* If a fund, account, or trust meets the requirements of paragraphs (c)(2) and (c)(3) of this section prior to the time it meets the requirements of paragraph (c)(1) of this section, the transferor and administrator (as defined in §1.468B–2(k)(3)) may jointly elect (a relation-back election) to treat the fund, account, or trust as coming into existence as a qualified settlement fund on the later of the date the fund, account, or trust meets the requirements of paragraphs (c)(2) and (c)(3) of this section or January 1 of the calendar year in which all the requirements of paragraph (c) of this section are met. If a relation-back election is made, the assets held by the fund, account, or trust on the date the qualified settlement fund is treated as coming into existence are treated as transferred to the qualified settlement fund on that date.

(ii) *Relation-back election.* A relation-back election is made by attaching a copy of the election statement, signed by each transferor and the administrator, to (and as part of) the timely

filed income tax return (including extensions) of the qualified settlement fund for the taxable year in which the fund is treated as coming into existence. A copy of the election statement must also be attached to (and as part of) the timely filed income tax return (including extensions), or an amended return that is consistent with the requirements of §§ 1.468B-1 through 1.468B-4, of each transferor for the taxable year of the transferor that includes the date on which the qualified settlement fund is treated as coming into existence. The election statement must contain—

(A) A legend, "§ 1.468B-1 Relation-Back Election", at the top of the first page;

(B) Each transferor's name, address, and taxpayer identification number;

(C) The qualified settlement fund's name, address, and employer identification number;

(D) The date as of which the qualified settlement fund is treated as coming into existence; and

(E) A schedule describing each asset treated as transferred to the qualified settlement fund on the date the fund is treated as coming into existence. The schedule of assets does not have to identify the amount of cash or the property treated as transferred by a particular transferor. If the schedule does not identify the transferor of each asset, however, each transferor must include with the copy of the election statement that is attached to its income tax return (or amended return) a schedule describing each asset the transferor is treated as transferring to the qualified settlement fund.

(k) *Election to treat a qualified settlement fund as a subpart E trust*—(1) *In general.* If a qualified settlement fund has only one transferor (as defined in paragraph (d)(1) of this section), the transferor may make an election (grantor trust election) to treat the qualified settlement fund as a trust all of which is owned by the transferor under section 671 and the regulations thereunder. A grantor trust election may be made whether or not the qualified settlement fund would be classified, in the absence of paragraph (b) of this section, as a trust all of which is treated as owned by the transferor

under section 671 and the regulations thereunder. A grantor trust election may be revoked only for compelling circumstances upon consent of the Commissioner by private letter ruling.

(2) *Manner of making grantor trust election*—(i) *In general.* To make a grantor trust election, a transferor must attach an election statement satisfying the requirements of paragraph (k)(2)(ii) of this section to a timely filed (including extensions) Form 1041, "U.S. Income Tax Return for Estates and Trusts," that the administrator files on behalf of the qualified settlement fund for the taxable year in which the qualified settlement fund is established. However, if a Form 1041 is not otherwise required to be filed (for example, because the provisions of § 1.671-4(b) apply), then the transferor makes a grantor trust election by attaching an election statement satisfying the requirements of paragraph (k)(2)(ii) of this section to a timely filed (including extensions) income tax return of the transferor for the taxable year in which the qualified settlement fund is established. See § 1.468B-5(c)(2) for transition rules.

(ii) *Requirements for election statement.* The election statement must include a statement by the transferor that the transferor will treat the qualified settlement fund as a grantor trust. The election statement must include the transferor's name, address, taxpayer identification number, and the legend, "§ 1.468B-1(k) Election." The election statement and the statement described in § 1.671-4(a) may be combined into a single statement.

(3) *Effect of making the election.* If a grantor trust election is made—

(i) Paragraph (b) of this section, and §§ 1.468B-2, 1.468B-3, and 1.468B-5(a) and (b) do not apply to the qualified settlement fund. However, this section (except for paragraph (b) of this section) and § 1.468B-4 apply to the qualified settlement fund;

(ii) The qualified settlement fund is treated, for Federal income tax purposes, as a trust all of which is treated as owned by the transferor under section 671 and the regulations thereunder;

(iii) The transferor must take into account in computing the transferor's

**Internal Revenue Service, Treasury** §1.468B–1

income tax liability all items of income, deduction, and credit (including capital gains and losses) of the qualified settlement fund in accordance with §1.671–3(a)(1); and

(iv) The reporting obligations imposed by §1.671–4 on the trustee of a trust apply to the administrator.

(l) *Examples.* The following examples illustrate the rules of this section:

*Example 1.* In a class action brought in a United States federal district court, the court holds that the defendant, Corporation X, violated certain securities laws and must pay damages in the amount of $150 million. Pursuant to an order of the court, Corporation X transfers $50 million in cash and transfers property with a fair market value of $75 million to a state law trust. The trust will liquidate the property and distribute the cash proceeds to the plaintiffs in the class action. The trust is a qualified settlement fund because it was established pursuant to the order of a federal district court to resolve or satisfy claims against Corporation X for securities law violations that have occurred.

*Example 2.* (i) Assume the same facts as in *Example 1,* except that Corporation X and the class of plaintiffs reach an out-of-court settlement that requires Corporation X to establish and fund a state law trust before the settlement agreement is submitted to the court for approval.

(ii) The trust is not a qualified settlement fund because it neither is established pursuant to an order of, nor has it been approved by, a governmental authority described in paragraph (c)(1) of this section.

*Example 3.* On June 1, 1994, Corporation Y establishes a fund to resolve or satisfy claims against it arising from the violation of certain securities laws. On that date, Corporation Y transfers $10 million to a segregated account. On December 1, 1994, a federal district court approves the fund. Assuming Corporation Y and the administrator of the qualified settlement fund do not make a relation-back election, Corporation Y is treated as the owner of the $10 million, and is taxable on any income earned on that money, from June 1 through November 30, 1994. The fund is a qualified settlement fund beginning on December 1, 1994.

*Example 4.* (i) On September 1, 1993, Corporation X, which has a taxable year ending on October 31, enters into a settlement agreement with a plaintiff class for asserted tort liabilities. Under the settlement agreement, Corporation X makes two $50 million payments into a segregated fund, one on September 1, 1993, and one on October 1, 1993, to resolve or satisfy the tort liabilities. A federal district court approves the settlement agreement on November 1, 1993.

(ii) The administrator of the fund and Corporation X elect to treat the fund as a qualified settlement fund prior to governmental approval under the relation-back rule of paragraph (j)(2) of this section. The administrator must attach the relation-back election statement to the fund's income tax return for calendar year 1993, and Corporation X must attach the election to its original or amended income tax return for its taxable year ending October 31, 1993.

(iii) Pursuant to the relation-back election, the fund begins its existence as a qualified settlement fund on September 1, 1993, and Corporation X is treated as transferring $50 million to the qualified settlement fund on September 1, 1993, and $50 million on October 1, 1993.

(iv) With respect to these transfers, Corporation X must provide the statement described in §1.468B–3(e) to the administrator of the qualified settlement fund by February 15, 1994, and must attach a copy of this statement to its original or amended income tax return for its taxable year ending October 31, 1993.

*Example 5.* Assume the same facts as in *Example 4,* except that the court approves the settlement on May 1, 1994. The administrator must attach the relation-back election statement to the fund's income tax return for calendar year 1994, and Corporation X must attach the election statement to its original or amended income tax return for its taxable year ending October 31, 1994. Pursuant to this election, the fund begins its existence as a qualified settlement fund on January 1, 1994. In addition, Corporation X is treated as transferring to the qualified settlement fund all amounts held in the fund on January 1, 1994. With respect to the transfer, Corporation X must provide the statement described in §1.468B–3(e) to the administrator of the qualified settlement fund by February 15, 1995, and must attach a copy of this statement to its income tax return for its taxable year ending October 31, 1994.

*Example 6.* Corporation Z establishes a fund that meets all the requirements of section 468B(d)(2) for a designated settlement fund, except that Corporation Z does not make the election under section 468B(d)(2)(F). Although the fund does not qualify as a designated settlement fund, it is a qualified settlement fund because the fund meets the requirements of paragraph (c) of this section.

*Example 7.* Corporation X owns and operates a landfill in State A. State A requires Corporation X to transfer money to a trust annually based on the total tonnage of material placed in the landfill during the year. Under the laws of State A, Corporation X will be required to perform (either itself or through contractors) specified closure activities when the landfill is full, and the trust assets will be used to reimburse Corporation X for those closure costs. The trust is not a

375

qualified settlement fund because it is established to secure the liability of Corporation X to perform the closure activities.

[T.D. 8459, 57 FR 60989, Dec. 23, 1992; 58 FR 7865, Feb. 10, 1993, as amended by T.D. 9249, 71 FR 6201, Feb. 7, 2006]

§ 1.468B–2   Taxation of qualified settlement funds and related administrative requirements.

(a) *In general.* A qualified settlement fund is a United States person and is subject to tax on its modified gross income for any taxable year at a rate equal to the maximum rate in effect for that taxable year under section 1(e).

(b) *Modified gross income.* The "modified gross income" of a qualified settlement fund is its gross income, as defined in section 61, computed with the following modifications—

(1) In general, amounts transferred to the qualified settlement fund by, or on behalf of, a transferor to resolve or satisfy a liability for which the fund is established are excluded from gross income. However, dividends on stock of a transferor (or a related person), interest on debt of a transferor (or a related person), and payments in compensation for late or delayed transfers, are not excluded from gross income.

(2) A deduction is allowed for administrative costs and other incidental expenses incurred in connection with the operation of the qualified settlement fund that would be deductible under chapter 1 of the Internal Revenue Code in determining the taxable income of a corporation. Administrative costs and other incidental expenses include state and local taxes, legal, accounting, and actuarial fees relating to the operation of the qualified settlement fund, and expenses arising from the notification of claimants and the processing of their claims. Administrative costs and other incidental expenses do not include legal fees incurred by, or on behalf of, claimants.

(3) A deduction is allowed for losses sustained by the qualified settlement fund in connection with the sale, exchange, or worthlessness of property held by the fund to the extent the losses would be deductible in determining the taxable income of a corporation under section 165 (f) or (g), and sections 1211(a) and 1212(a).

(4) A deduction is allowed for the amount of a net operating loss of the qualified settlement fund to the extent the loss would be deductible in determining the taxable income of a corporation under section 172(a). For purposes of this paragraph (b)(4), the net operating loss of a qualified settlement fund for a taxable year is the amount by which the deductions allowed under paragraphs (b)(2) and (b)(3) of this section exceed the gross income of the fund computed with the modification described in paragraph (b)(1) of this section.

(c) *Partnership interests held by a qualified settlement fund on February 14, 1992*—(1) *In general.* For taxable years ending prior to January 1, 2003, a qualified settlement fund that holds a partnership interest it acquired prior to February 15, 1992, is allowed a deduction for its distributive share of that partnership's items of loss, deduction, or credit described in section 702(a) that would be deductible in determining the taxable income (or in the case of a credit, the income tax liability) of a corporation to the extent of the fund's distributive share of that partnership's items of income and gain described in section 702(a) for the same taxable year. For purposes of this paragraph (c)(1), a distributive share of a partnership credit is treated as a deduction in an amount equal to the amount of the credit divided by the rate described in paragraph (a) of this section.

(2) *Limitation on changes in partnership agreements and capital contributions.* For purposes of paragraph (c)(1) of this section, changes in a qualified settlement fund's distributive share of items of income, gain, loss, deduction, or credit are disregarded if—

(i) They result from a change in the terms of the partnership agreement on or after December 18, 1992, or a capital contribution to the partnership on or after December 18, 1992, unless the partnership agreement as in effect prior to December 18, 1992, requires the contribution; and

(ii) A principal purpose of the change in the terms of the partnership agreement or the capital contribution is to circumvent the limitation described in paragraph (c)(1) of this section.

(d) *Distributions to transferors and claimants.* Amounts that are distributed by a qualified settlement fund to, or on behalf of, a transferor or a claimant are not deductible by the fund.

(e) *Basis of property transferred to a qualified settlement fund.* A qualified settlement fund's initial basis in property it receives from a transferor (or from an insurer or other person on behalf of a transferor) is the fair market value of that property on the date of transfer to the fund.

(f) *Distribution of property.* A qualified settlement fund must treat a distribution of property as a sale or exchange of that property for purposes of section 1001(a). In computing gain or loss, the amount realized by the qualified settlement fund is the fair market value of the property on the date of distribution.

(g) *Other taxes.* The tax imposed under paragraph (a) of this section is in lieu of any other taxation of the income of a qualified settlement fund under subtitle A of the Internal Revenue Code. Thus, a qualified settlement fund is not subject to the alternative minimum tax of section 55, the accumulated earnings tax of section 531, the personal holding company tax of section 541, or the maximum capital gains rate of section 1(h). A qualified settlement fund is, however, subject to taxes that are not imposed on the income of a taxpayer, such as the tax on transfers of property to foreign entities under section 1491.

(h) *Denial of credits against tax.* The tax imposed on the modified gross income of a qualified settlement fund under paragraph (a) of this section may not be reduced or offset by any credits against tax provided by part IV of subchapter A of chapter 1 of the Internal Revenue Code.

(i) [Reserved]

(j) *Taxable year and accounting method.* The taxable year of a qualified settlement fund is the calendar year. A qualified settlement fund must use an accrual method of accounting within the meaning of section 446(c).

(k) *Treatment as corporation for purposes of subtitle F.* Except as otherwise provided in §1.468B–5(b), for purposes of subtitle F of the Internal Revenue Code, a qualified settlement fund is treated as a corporation and any tax imposed under paragraph (a) of this section is treated as a tax imposed by section 11. Subtitle F rules that apply to qualified settlement funds include, but are not limited to—

(1) A qualified settlement fund must file an income tax return with respect to the tax imposed under paragraph (a) of this section for each taxable year that the fund is in existence, whether or not the fund has gross income for that taxable year.

(2) A qualified settlement fund is in existence for the period that—

(i) Begins on the first date on which the fund is treated as a qualified settlement fund under §1.468B–1; and

(ii) Ends on the earlier of the date the fund—

(A) No longer satisfies the requirements of §1.468B–1; or

(B) No longer has any assets and will not receive any more transfers. (See paragraph (m) of this section for procedures for the prompt assessment of tax.)

(3) The income tax return of the qualified settlement fund must be filed on or before March 15 of the year following the close of the taxable year of the qualified settlement fund unless the fund is granted an extension of time for filing under section 6081. The return must be made by the administrator of the qualified settlement fund. The "administrator" (which may include a trustee if the qualified settlement fund is a trust) of a qualified settlement fund is, in order of priority—

(i) The person designated, or approved, by the governmental authority that ordered or approved the fund for purposes of §1.468B–1(c)(1);

(ii) The person designated in the escrow agreement, settlement agreement, or other similar agreement governing the fund;

(iii) The escrow agent, custodian, or other person in possession or control of the fund's assets; or

(iv) The transferor or, if there are multiple transferors, all the transferors, unless an agreement signed by all the transferors designates a single transferor as the administrator.

(4) The administrator of a qualified settlement fund must obtain an employer identification number for the fund.

(5) A qualified settlement fund must deposit all payments of tax imposed under paragraph (a) of this section (including any payments of estimated tax) with an authorized government depositary in accordance with § 1.6302–1.

(6) A qualified settlement fund is subject to the addition to tax imposed by section 6655 in the case of an underpayment of estimated tax computed with respect to the tax imposed under paragraph (a) of this section. For purposes of section 6655(g)(2), a qualified settlement fund's taxable income is its modified gross income and a transferor is not considered a predecessor of a qualified settlement fund.

(l) *Information reporting and withholding requirements*—(1) *Payments to a qualified settlement fund.* Payments to a qualified settlement fund are treated as payments to a corporation for purposes of the information reporting requirements of part III of subchapter A of chapter 61 of the Internal Revenue Code.

(2) *Payments and distributions by a qualified settlement fund*—(i) *In general.* Payments and distributions by a qualified settlement fund are subject to the information reporting requirements of part III of subchapter A of chapter 61 of the Internal Revenue Code (Code), and the withholding requirements of subchapter A of chapter 3 of subtitle A and subtitle C of the Code.

(ii) *Special rules.* The following rules apply with respect to payments and distributions by a qualified settlement fund—

(A) A qualified settlement fund must make a return for, or must withhold tax on, a distribution to a claimant if one or more transferors would have been required to make a return or withhold tax had that transferor made the distribution directly to the claimant;

(B) For purposes of sections 6041(a) and 6041A, if a qualified settlement fund makes a payment or distribution to a transferor, the fund is deemed to make the payment or distribution to the transferor in the course of a trade or business;

(C) For purposes of sections 6041(a) and 6041A, if a qualified settlement fund makes a payment or distribution on behalf of a transferor or a claimant, the fund is deemed to make the payment or distribution to the recipient of that payment or distribution in the course of a trade or business;

(D) With respect to a distribution or payment described in paragraph (l)(2)(ii)(C) of this section and the information reporting requirements of part III of subchapter A of chapter 61 of the Internal Revenue Code, the qualified settlement fund is also deemed to have made the distribution or payment to the transferor or claimant.

(m) *Request for prompt assessment.* A qualified settlement fund is eligible to request the prompt assessment of tax under section 6501(d). For purposes of section 6501(d), a qualified settlement fund is treated as dissolving on the date the fund no longer has any assets (other than a reasonable reserve for potential tax liabilities and related professional fees) and will not receive any more transfers.

(n) *Examples.* The following examples illustrate the rules of this section:

*Example 1.* On June 30, 1993, a United States federal district court approves the settlement of a lawsuit under which Corporation X must transfer $10,833,000 to a qualified settlement fund on August 1, 1993. The $10,833,000 includes $10 million of damages incurred by plaintiffs on October 1, 1992, and $833,000 of interest calculated at 10 percent annually from October 1, 1992, to August 1, 1993. The $833,000 of interest is not a payment to the qualified settlement fund in compensation for a late or delayed transfer to the fund within the meaning of paragraph (b)(1) of this section because the payment of $10,833,000 to the fund is not due until August 1, 1993.

*Example 2.* Assume the same facts as in *Example 1* except that the settlement agreement also provides for interest to accrue at a rate of 12 percent annually on any amount not transferred to the qualified settlement fund on August 1, 1993, and the only transfer Corporation X makes to the fund is $11,374,650 on January 1, 1994. The additional payment of $541,650 ($11,374,650 paid on January 1, 1994, less $10,833,000 due on August 1, 1993) is a payment to the qualified settlement fund in compensation for a late or delayed transfer to the fund within the meaning of paragraph (b)(1) of this section.

[T.D. 8459, 57 FR 60991, Dec. 23, 1992; 58 FR 7865, Feb. 10, 1993]

**Internal Revenue Service, Treasury** §1.468B–3

**§1.468B–3 Rules applicable to the transferor.**

(a) *Transfer of property*—(1) *In general.* A transferor must treat a transfer of property to a qualified settlement fund as a sale or exchange of that property for purposes of section 1001(a). In computing the gain or loss, the amount realized by the transferor is the fair market value of the property on the date the transfer is made (or is treated as made under §1.468B–1(g)) to the qualified settlement fund. Because the issuance of a transferor's debt, obligation to provide services or property in the future, or obligation to make a payment described in §1.461–4(g), is generally not a transfer of property by the transferor, it generally does not result in gain or loss to the transferor under this paragraph (a)(1). If a person other than the transferor transfers property to a qualified settlement fund, there may be other tax consequences as determined under general federal income tax principles.

(2) *Anti-abuse rule.* The Commissioner may disallow a loss resulting from the transfer of property to a qualified settlement fund if the Commissioner determines that a principal purpose for the transfer was to claim the loss and—

(i) The transferor places significant restrictions on the fund's ability to use or dispose of the property; or

(ii) The property (or substantially similar property) is distributed to the transferor (or a related person).

(b) *Qualified appraisal requirement for transfers of certain property*—(1) *In general.* A transferor must obtain a qualified appraisal to support a loss or deduction it claims with respect to a transfer to a qualified settlement fund of the following types of property—

(i) Nonpublicly traded securities (as defined in §1.170A–13(c)(7)(ix)) issued by the transferor (or a related person); and

(ii) Interests in the transferor (if the transferor is a partnership) and in a partnership in which the transferor (or a related person) is a direct or indirect partner.

(2) *Provision of copies.* The transferor must provide a copy of the qualified appraisal to the administrator of the qualified settlement fund no later than February 15 of the year following the

calendar year in which the property is transferred. The transferor also must attach a copy of the qualified appraisal to (and as part of) its timely filed income tax return (including extensions) for the taxable year of the transferor in which the transfer is made.

(3) *Qualified appraisal.* A "qualified appraisal" is a written appraisal that—

(i) Is made within 60 days before or after the date the property is transferred to the qualified settlement fund;

(ii) Is prepared, signed, and dated by an individual who is a qualified appraiser within the meaning of §1.170A–13(c)(5);

(iii) Includes the information required by paragraph (b)(4) of this section; and

(iv) Does not involve an appraisal fee of the type prohibited by §1.170A–13(c)(6).

(4) *Information included in a qualified appraisal.* A qualified appraisal must include the following information—

(i) A description of the appraised property;

(ii) The date (or expected date) of the property's transfer to the qualified settlement fund;

(iii) The appraised fair market value of the property on the date (or expected date) of transfer;

(iv) The method of valuing the property, such as the comparable sales approach;

(v) The specific basis for the valuation, such as specific comparable sales or statistical sampling, including a justification for using comparable sales or statistical sampling and an explanation of the procedure employed;

(vi) The terms of any agreement or understanding entered into (or expected to be entered into) by or on behalf of the transferor (or a related person) or the qualified settlement fund that relates to the use, sale, or other disposition of the transferred property, including, for example, the terms of any agreement or understanding that temporarily or permanently—

(A) Restricts the qualified settlement fund's right to use or dispose of the property; or

(B) Reserves to, or confers upon, any person other than the qualified settlement fund any right (including designating another person as having the

right) to income from the property, to possess the property (including the right to purchase or otherwise acquire the property), or to exercise any voting rights with respect to the property;

(vii) The name, address, and taxpayer identification number of the qualified appraiser; and if the qualified appraiser is acting in his or her capacity as a partner in a partnership, an employee of any person, or an independent contractor engaged by a person other than the transferor, the name, address, and taxpayer identification number of the partnership or the person who employs or engages the qualified appraiser;

(viii) The qualifications of the qualified appraiser, including the appraiser's background, experience, education, and membership, if any, in professional appraisal associations; and

(ix) A statement that the appraisal was prepared for income tax purposes.

(5) *Effect of signature of the qualified appraiser.* Any appraiser who falsely or fraudulently overstates the value of the transferred property referred to in a qualified appraisal may be subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability and may have appraisals disregarded pursuant to 31 U.S.C. 330(c).

(c) *Economic performance*—(1) *In general.* Except as otherwise provided in this paragraph (c), for purposes of section 461(h), economic performance occurs with respect to a liability described in §1.468B-1(c)(2) (determined with regard to §1.468B-1(f) and (g)) to the extent the transferor makes a transfer to a qualified settlement fund to resolve or satisfy the liability.

(2) *Right to a refund or reversion.*—(i) *In general.* Economic performance does not occur to the extent—

(A) The transferor (or a related person) has a right to a refund or reversion of a transfer if that right is exercisable currently and without the agreement of an unrelated person that is independent or has an adverse interest (e.g., the court or agency that approved the fund, or the fund claimants); or

(B) Money or property is transferred under conditions that allow its refund or reversion by reason of the occurrence of an event that is certain to

occur, such as the passage of time, or if restrictions on its refund or reversion are illusory.

(ii) *Right extinguished.* With respect to a transfer described in paragraph (c)(2)(i) of this section, economic performance is deemed to occur on the date, and to the extent, the transferor's right to a refund or reversion is extinguished.

(3) *Obligations of a transferor.* Economic performance does not occur when a transferor transfers to a qualified settlement fund its debt (or the debt of a related person). Instead, economic performance occurs as the transferor (or related person) makes principal payments on the debt. Similarly, economic performance does not occur when a transferor transfers to a qualified settlement fund its obligation (or the obligation of a related person) to provide services or property in the future, or to make a payment described in §1.461-4(g). Instead, economic performance with respect to such an obligation occurs as services, property or payments are provided or made to the qualified settlement fund or a claimant.

(d) *Payment of insurance amounts.* No deduction is allowed to a transferor for a transfer to a qualified settlement fund to the extent the transferred amounts represent amounts received from the settlement of an insurance claim and are excludable from gross income. If the settlement of an insurance claim occurs after a transferor makes a transfer to a qualified settlement fund for which a deduction has been taken, the transferor must include in income the amounts received from the settlement of the insurance claim to the extent of the deduction.

(e) *Statement to the qualified settlement fund and the Internal Revenue Service*—(1) *In general.* A transferor must provide the statement described in paragraph (e)(2) of this section to the administrator of a qualified settlement fund no later than February 15 of the year following each calendar year in which the transferor (or an insurer or other person on behalf of the transferor) makes a transfer to the fund. The transferor must attach a copy of the statement to (and as part of) its

380

timely filed income tax return (including extensions) for the taxable year of the transferor in which the transfer is made.

(2) *Required statement*—(i) *In general.* The statement required by this paragraph (e) must provide the following information—

(A) A legend, "§1.468B–3 Statement", at the top of the first page;

(B) The transferor's name, address, and taxpayer identification number;

(C) The qualified settlement fund's name, address, and employer identification number;

(D) The date of each transfer;

(E) The amount of cash transferred; and

(F) A description of property transferred and its fair market value on the date of transfer.

(ii) *Combined statements.* If a qualified settlement fund has more than one transferor, any two or more of the transferors may provide a combined statement to the administrator that does not identify the amount of cash or the property transferred by a particular transferor. If a combined statement is used, however, each transferor must include with its copy of the statement that is attached to its income tax return a schedule describing each asset that the transferor transferred to the qualified settlement fund.

(f) *Distributions to transferors*—(1) *In general.* A transferor must include in gross income any distribution (including a deemed distribution described in paragraph (f)(2) of this section) it receives from a qualified settlement fund. If property is distributed, the amount includible in gross income and the basis in that property, is the fair market value of the property on the date of the distribution.

(2) *Deemed distributions*—(i) *Other liabilities.* If a qualified settlement fund makes a distribution on behalf of a transferor to a person that is not a claimant, or to a claimant to resolve or satisfy a liability of the transferor (or a related person) other than a liability described in §1.468B–1(c)(2) for which the fund was established, the distribution is deemed made by the fund to the transferor. The transferor, in turn, is deemed to have made a payment to the actual recipient.

(ii) *Constructive receipt.* To the extent a transferor acquires a right to a refund or reversion described in paragraph (c)(2) of this section or all or a portion of the assets of a qualified settlement fund subsequent to the transfer of those assets to the fund, the fund is deemed to distribute those assets to the transferor on the date the right is acquired.

(3) *Tax benefit rule.* A distribution described in paragraph (f)(1) or (f)(2) of this section is excluded from the gross income of a transferor to the extent provided by section 111(a).

(g) *Example.* The following example illustrates the rules of this section:

*Example.* On March 1, 1993, Individual A transfers $1 million to a qualified settlement fund to resolve or satisfy claims against him resulting from certain violations of securities laws. Individual A uses the cash receipts and disbursements method of accounting. Since Individual A does not use the accrual method of accounting, the economic performance rules of paragraph (c) of this section are not applicable. Therefore, whether, when, and to what extent Individual A can deduct the transfer is determined under applicable provisions of the Internal Revenue Code, such as sections 162 and 461.

[T.D. 8459, 57 FR 60992, Dec. 23, 1992]

### §1.468B–4  Taxability of distributions to claimants.

Whether a distribution to a claimant is includible in the claimant's gross income is generally determined by reference to the claim in respect of which the distribution is made and as if the distribution were made directly by the transferor. For example, to the extent a distribution is in satisfaction of damages on account of personal injury or sickness, the distribution may be excludable from gross income under section 104(a)(2). Similarly, to the extent a distribution is in satisfaction of a claim for foregone taxable interest, the distribution is includible in the claimant's gross income under section 61(a)(4).

[T.D. 8459, 57 FR 60994, Dec. 23, 1992]

### §1.468B–5  Effective dates and transition rules applicable to qualified settlement funds.

(a) *In general.* Section 468B, including section 468B(g), is effective as provided in the Tax Reform Act of 1986 and the

Technical and Miscellaneous Revenue Act of 1988. Except as otherwise provided in this section, §§ 1.468B–1 through 1.468–4 are effective on January 1, 1993. Thus, the regulations apply to income of a qualified settlement fund earned after December 31, 1992, transfers to a fund after December 31, 1992, and distributions from a fund after December 31, 1992. For purposes of §1.468B–3(c) (relating to economic performance), previously transferred assets held by a qualified settlement fund on the date these regulations first apply to the fund (i.e., January 1, 1993, or the earlier date provided under paragraph (b)(2) of this section) are treated as transferred to the fund on that date, to the extent no taxpayer has previously claimed a deduction for the transfer.

(b) *Taxation of certain pre-1996 fund income*—(1) *Reasonable method*—(i) *In general.* With respect to a fund, account, or trust established after August 16, 1986, but prior to February 15, 1992, that satisfies (or, if it no longer exists, would have satisfied) the requirements of §1.468B–1(c), the Internal Revenue Service will not challenge a reasonable, consistently applied method of taxation for transfers to the fund, income earned by the fund, and distributions made by the fund after August 16, 1986, but prior to January 1, 1996. A method is generally considered reasonable if, depending on the facts and circumstances, all transferors and the administrator of the fund have consistently treated transfers to the fund, income earned by the fund, and distributions made by the fund after August 16, 1986, as if the fund were—

(A) A grantor trust and the transferors are the grantors;

(B) A complex trust and the transferors are the grantors; or

(C) A designated settlement fund.

(ii) *Qualified settlement funds established after February 14, 1992, but before January 1, 1993.* With respect to a fund, account, or trust established after February 14, 1992, but prior to January 1, 1993, that satisfies the requirements of §1.468B–1(c), the Internal Revenue Service will not challenge a reasonable, consistently applied method of taxation as described in paragraph (b)(1)(i) of this section for transfers to,

income earned by, and distributions made by the fund prior to January 1, 1993. However, pursuant to paragraph (a) of this section, sections 1.468B–1 through 1.468B–4 apply to transfers to, income earned by, and distributions made by the qualified settlement fund after 1992.

(iii) *Use of cash method of accounting.* For purposes of paragraphs (b)(i) and (b)(ii) of this section, for taxable years beginning prior to January 1, 1996, the Internal Revenue Service will not challenge the use of the cash receipts and disbursement method of accounting by a fund, account, or trust.

(iv) *Unreasonable position.* In no event is it a reasonable position to assert, pursuant to Rev. Rul. 71–119 (see §601.601(d)(2)(ii)(*b*) of this chapter), that there is no current taxation of the income of a fund established after August 16, 1986.

(v) *Waiver of penalties.* For taxable years beginning prior to January 1, 1993, if a fund, account or trust is subject to section 468B(g) and the Internal Revenue Service does not challenge the method of taxation for transfers to, income earned by, and distributions made by, the fund pursuant to paragraph (b)(1)(i) or (b)(1)(ii) of this section, penalties will not be imposed in connection with the use of such method. For example, the penalties under section 6655 for failure to pay estimated tax, section 6651(a)(1) for failure to file a return, section 6651(a)(2) for failure to pay tax, section 6656 for failure to make deposit of taxes, and section 6662 for accuracy-related underpayments will generally not be imposed.

(2) *Election to apply qualified settlement fund rules*—(i) *In general.* The person that will be the administrator of a qualified settlement fund may elect to apply §§1.468B–1 through 1.468B–4 to transfers to, income earned by, and distributions made by, the fund in taxable years ending after August 16, 1986. The election is effective beginning on the first day of the earliest open taxable year of the qualified settlement fund. For purposes of this paragraph (b)(2), a taxable year is considered open if the period for assessment and collection of tax has not expired pursuant to the rules of section 6501. The election

**Internal Revenue Service, Treasury**                    **§ 1.468B–6**

statement must provide the information described in paragraph (b)(2)(ii) of this section and must be signed by the person that will be the administrator. Such person must also provide each transferor of the qualified settlement fund with a copy of the election statement on or before March 15, 1993.

(ii) *Election statement.* The election statement must provide the following information—

(A) A legend, "§1.468B–5(b)(2) Election", at the top of the first page;

(B) Each transferor's name, address, and taxpayer identification number;

(C) The qualified settlement fund's name, address, and employer identification number; and

(D) The date the qualified settlement fund was established within the meaning of §1.468B–1(j).

(iii) *Due date of returns and amended returns.* The election statement described in paragraph (b)(2)(ii) of this section must be filed with, and as part of, the qualified settlement fund's timely filed tax return for the taxable year ended December 31, 1992. In addition, the qualified settlement fund must file an amended return that is consistent with the requirements of §§1.468B–1 through 1.468B–4 for any taxable year to which the election applies in which the fund took a position inconsistent with those requirements. Any such amended return must be filed no later than March 15, 1993, and must include a copy of the election statement described in paragraph (b)(2)(ii) of this section.

(iv) *Computation of interest and waiver of penalties.* For purposes of section 6601 and section 6611, the income tax return for each taxable year of the qualified settlement fund to which the election applies is due on March 15 of the year following the taxable year of the fund. For taxable years of a qualified settlement fund ending prior to January 1, 1993, the income earned by the fund is deemed to have been earned on December 31 of each taxable year for purposes of section 6655. Thus, the addition to tax for failure to pay estimated tax under section 6655 will not be imposed. The penalty for failure to file a return under section 6651(a)(1), the penalty for failure to pay tax under section 6651(a)(2), the penalty for failure to

make deposit of taxes under section 6656, and the accuracy-related penalty under section 6662 will not be imposed on a qualified settlement fund if the fund files its tax returns for taxable years ending prior to January 1, 1993, and pays any tax due for those taxable years, on or before March 15, 1993.

(c) *Grantor trust elections under §1.468B–1(k)*—(1) *In general.* A transferor may make a grantor trust election under §1.468B–1(k) if the qualified settlement fund is established after February 3, 2006.

(2) *Transition rules.* A transferor may make a grantor trust election under §1.468B–1(k) for a qualified settlement fund that was established on or before February 3, 2006, if the applicable period of limitation on filing an amended return has not expired for both the qualified settlement fund's first taxable year and all subsequent taxable years and the transferor's corresponding taxable year or years. A grantor trust election under this paragraph (c)(2) requires that the returns of the qualified settlement fund and the transferor for all affected taxable years are consistent with the grantor trust election. This requirement may be satisfied by timely filed original returns or amended returns filed before the applicable period of limitation expires.

(3) *Qualified settlement funds established by the U.S. government on or before February 3, 2006.* If the U.S. government, or any agency or instrumentality thereof, established a qualified settlement fund on or before February 3, 2006, and the fund would have been classified as a trust all of which is treated as owned by the U.S. government under section 671 and the regulations thereunder without regard to the regulations under section 468B, then the U.S. government is deemed to have made a grantor trust election under §1.468B–1(k), and the election is applicable for all taxable years of the fund.

[T.D. 8459, 57 FR 60994, Dec. 23, 1992, as amended by T.D. 9249, 71 FR 6201, Feb. 7, 2006]

**§ 1.468B–6  Escrow accounts, trusts, and other funds used during deferred exchanges of like-kind property under section 1031(a)(3).**

(a) *Scope.* This section provides rules under section 468B(g) relating to the

383

current taxation of escrow accounts, trusts, and other funds used during deferred exchanges.

(b) *Definitions.* The definitions in this paragraph (b) apply for purposes of this section.

(1) *In general. Deferred exchange, escrow agreement, escrow holder, exchange agreement, qualified escrow account, qualified intermediary, qualified trust, relinquished property, replacement property, taxpayer, trust agreement,* and *trustee* have the same meanings as in §1.1031(k)–1; deferred exchange also includes any exchange intended to qualify as a deferred exchange, and qualified intermediary also includes any person or entity intended by a taxpayer to be a qualified intermediary within the meaning of §1.1031(k)–1(g)(4).

(2) *Exchange funds. Exchange funds* means relinquished property, cash, or cash equivalent that secures an obligation of a transferee to transfer replacement property, or proceeds from a transfer of relinquished property, held in a qualified escrow account, qualified trust, or other escrow account, trust, or fund in a deferred exchange.

(3) *Exchange facilitator. Exchange facilitator* means a qualified intermediary, transferee, escrow holder, trustee, or other party that holds exchange funds for a taxpayer in a deferred exchange pursuant to an escrow agreement, trust agreement, or exchange agreement.

(4) *Transactional expenses*—(i) *In general.* Except as provided in paragraph (b)(4)(ii) of this section, *transactional expenses* means transactional items within the meaning of §1.1031(k)–1(g)(7)(ii).

(ii) *Special rule for certain fees for exchange facilitator services.* The fee for the services of an exchange facilitator is not a transactional expense unless the escrow agreement, trust agreement, or exchange agreement, as applicable, provides that—

(A) The amount of the fee payable to the exchange facilitator is fixed on or before the date of the transfer of the relinquished property by the taxpayer (either by stating the fee as a fixed dollar amount in the agreement or determining the fee by a formula, the result of which is known on or before the

transfer of the relinquished property by the taxpayer); and

(B) The amount of the fee is payable by the taxpayer regardless of whether the earnings attributable to the exchange funds are sufficient to pay the fee.

(c) *Taxation of exchange funds*—(1) *Exchange funds generally treated as loaned to an exchange facilitator.* Except as provided in paragraph (c)(2) of this section, exchange funds are treated as loaned from a taxpayer to an exchange facilitator (exchange facilitator loan). If a transaction is treated as an exchange facilitator loan under this paragraph (c)(1), the exchange facilitator must take into account all items of income, deduction, and credit (including capital gains and losses) attributable to the exchange funds. See §1.7872–16 to determine if an exchange facilitator loan is a below-market loan for purposes of section 7872 and §1.7872–5(b)(16) to determine if an exchange facilitator loan is exempt from section 7872.

(2) *Exchange funds not treated as loaned to an exchange facilitator*—(i) *Scope.* This paragraph (c)(2) applies if, in accordance with an escrow agreement, trust agreement, or exchange agreement, as applicable, all the earnings attributable to a taxpayer's exchange funds are paid to the taxpayer.

(ii) *Earnings attributable to the taxpayer's exchange funds*—(A) *Separately identified account.* If an exchange facilitator holds all of the taxpayer's exchange funds in a separately identified account, the earnings credited to that account are deemed to be all the earnings attributable to the taxpayer's exchange funds for purposes of paragraph (c)(2)(i) of this section. In general, a separately identified account is an account established under the taxpayer's name and taxpayer identification number with a depository institution. For purposes of paragraph (c)(2)(i) of this section, a sub-account will be treated as a separately identified account if the master account under which the sub-account is created is established with a depository institution, the depository institution identifies the sub-account by the taxpayer's

name and taxpayer identification number, and the depository institution specifically credits earnings to the sub-account.

(B) *Allocation of earnings in commingled accounts.* If an exchange facilitator commingles (for investment or otherwise) the taxpayer's exchange funds with other funds or assets, all the earnings attributable to the taxpayer's exchange funds are paid to the taxpayer if all of the earnings attributable to the commingled funds or assets that are allocable on a pro-rata basis (using a reasonable method that takes into account the time that the exchange funds are in the commingled account, actual rate or rates of return, and the respective account balances) to the taxpayer's exchange funds either are paid to the taxpayer or are treated as paid to the taxpayer under paragraph (c)(2)(ii)(C) of this section.

(C) *Transactional expenses.* Any payment from the taxpayer's exchange funds, or from the earnings attributable to the taxpayer's exchange funds, for a transactional expense of the taxpayer (as defined in paragraph (b)(4) of this section) is treated as first paid to the taxpayer and then paid by the taxpayer to the recipient.

(iii) *Treatment of the taxpayer.* If this paragraph (c)(2) applies, exchange funds are not treated as loaned from a taxpayer to an exchange facilitator. The taxpayer must take into account all items of income, deduction, and credit (including capital gains and losses) attributable to the exchange funds.

(d) *Information reporting requirements.* A payor (as defined in §1.6041–1) must report the income attributable to exchange funds to the extent required by the information reporting provisions of subpart B, Part III, subchapter A, chapter 61, Subtitle F of the Internal Revenue Code, and the regulations under those provisions. See §1.6041–1(f) for rules relating to the amount to be reported when fees, expenses or commissions owed by a payee to a third party are deducted from a payment.

(e) *Examples.* The provisions of this section are illustrated by the following examples in which T is a taxpayer that uses a calendar taxable year and the cash receipts and disbursements meth-

od of accounting. The examples are as follows:

*Example 1. All earnings attributable to exchange funds paid to taxpayer.* (i) T enters into a deferred exchange with R. The sales agreement provides that T will transfer property (the relinquished property) to R and R will transfer replacement property to T. R's obligation to transfer replacement property to T is secured by cash equal to the fair market value of the relinquished property, which R will deposit into a qualified escrow account that T establishes with B, a depository institution. T enters into an escrow agreement with B that provides that all the earnings attributable to the exchange funds will be paid to T.

(ii) On November 1, 2008, T transfers property to R and R deposits $2,100,000 in T's qualified escrow account with B. Between November 1 and December 31, 2008, B credits T's account with $14,000 of interest. During January 2009, B credits T's account with $7000 of interest. On February 1, 2009, R transfers replacement property worth $2,100,000 to T and B pays $2,100,000 from the qualified escrow account to R. Additionally, on February 1, 2009, B pays the $21,000 of interest to T.

(iii) Under paragraph (b) of this section, the $2,100,000 deposited with B constitutes exchange funds and B is an exchange facilitator. Because all the earnings attributable to the exchange funds are paid to T in accordance with the escrow agreement, paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to B. T must take into account in computing T's income tax liability for 2008 the $14,000 of earnings credited to the qualified escrow account in 2008 and for 2009 the $7,000 of earnings credited to the qualified escrow account in 2009.

*Example 2. Payment of transactional expenses from earnings.* (i) The facts are the same as in *Example 1,* except that the escrow agreement provides that, prior to paying the earnings to T, B may deduct any amounts B has paid to third parties for T's transactional expenses. B pays a third party $350 on behalf of T for a survey of the replacement property. After deducting $350 from the earnings attributable to T's qualified escrow account, B pays T the remainder ($20,650) of the earnings.

(ii) Under paragraph (b)(4) of this section, the cost of the survey is a transactional expense. Under paragraph (c)(2)(ii)(C) of this section, the $350 that B pays for the survey is treated as first paid to T and then from T to the third party. Therefore, all the earnings attributable to T's exchange funds are paid or treated as paid to T in accordance with the escrow agreement, and paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to B,

and T must take into account in computing T's income tax liability the $21,000 of earnings credited to the qualified escrow account.

*Example 3. Earnings retained by exchange facilitator as compensation for services.* (i) The facts are the same as in *Example 1,* except that the escrow agreement provides that B also may deduct any outstanding fees owed by T for B's services in facilitating the deferred exchange. In accordance with paragraph (b)(4)(ii) of this section, the escrow agreement provides for a fixed fee of $1,200 for B's services, which is payable by T regardless of the amount of earnings attributable to the exchange funds. Because the earnings on the exchange funds in this case exceed $1,200, B retains $1,200 as the unpaid portion of its fee and pays T the remainder ($19,800) of the earnings.

(ii) Under paragraph (b)(4) of this section, B's fee is treated as a transactional expense. Under paragraph (c)(2)(ii)(C) of this section, the $1200 that B retains for its fee is treated as first paid to T and then from T to B. Therefore, all the earnings attributable to T's exchange funds are paid or treated as paid to T in accordance with the escrow agreement, and paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to B, and T must take into account in computing T's income tax liability the $21,000 of earnings credited to the qualified escrow account.

*Example 4. Exchange funds deposited by exchange facilitator with related depository institution in account in taxpayer's name.* (i) The facts are the same as in *Example 1* except that, instead of entering into an escrow agreement, T enters into an exchange agreement with QI, a qualified intermediary. The exchange agreement provides that R will pay $2,100,000 to QI, QI will deposit $2,100,000 into an account with a depository institution under T's name and taxpayer identification number (TIN), and all the earnings attributable to the account will be paid to T.

(ii) On May 1, 2008, T transfers property to QI, QI transfers the property to R, R delivers $2,100,000 to QI, and QI deposits $2,100,000 into a money market account with depository institution B under T's name and TIN. B and QI are members of the same consolidated group of corporations within the meaning of section 1501. Between May 1 and September 1, 2008, the account earns $28,000 of interest at the stated rate established by B. During the period May 1 to September 1, 2008, B invests T's exchange funds and earns $40,000. On September 1, 2008, QI uses $2,100,000 of the funds in the account to purchase replacement property identified by T and transfers the replacement property to T. B pays to T the $28,000 of interest earned on the money market account at the stated rate.

(iii) Under paragraph (b) of this section, the $2,100,000 QI receives from R for the re-

linquished property is exchange funds and QI is an exchange facilitator. B is not an exchange facilitator. T has not entered into an escrow agreement, trust agreement, or exchange agreement with B, and QI, not B, holds the exchange funds on behalf of T. Under paragraph (c)(2)(ii)(A) of this section, the $40,000 B earns from investing T's exchange funds are not treated as earnings attributable to T's exchange funds. Because all the earnings attributable to T's exchange funds are paid to T in accordance with the exchange agreement, paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to QI, and T must take into account in computing T's income tax liability for 2008 the $28,000 of interest earned on the money market account.

*Example 5. Earnings of related depository institution credited to exchange facilitator.* (i) The facts are the same as in *Example 4,* except that at the end of each taxable year, B credits a portion of its earnings on deposits to QI. The amount credited is based on the total amount of exchange funds QI has deposited with B during the year. At the end of the 2008 taxable year, B credits $152,500 of B's earnings to QI.

(ii) Under paragraph (c)(2)(ii)(A) of this section, no part of the $152,500 credited by B to QI is earnings attributable to T's exchange funds. Therefore, all of the earnings attributable to the exchange funds are paid to T in accordance with the exchange agreement, and paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to QI, and T must take into account in computing T's income tax liability for 2008 the $28,000 of interest earned on T's account.

*Example 6. Exchange funds deposited by exchange facilitator with unrelated depository institution in sub-account in taxpayer's name.* (i) The facts are the same as in *Example 4,* except that QI and B are unrelated and the money market account in which QI deposits the $2,100,000 received from T is a sub-account within a master account QI maintains with B in QI's name and TIN. The master account includes other sub-accounts, each in the name and TIN of a taxpayer that has entered into an exchange agreement with QI, into which QI deposits each taxpayer's exchange funds. Each month, B transfers to QI's master account an additional amount of interest based upon the average daily balance of all exchange funds within the master account during the month. At the end of the 2008 taxable year, B has credited $152,500 of additional interest to QI.

(ii) Under paragraph (c)(2)(ii)(A) of this section, no part of the $152,500 credited by B to QI is earnings attributable to T's exchange funds. Therefore, all the earnings attributable to the exchange funds are paid

**Internal Revenue Service, Treasury**　　　　　　**§ 1.468B–7**

to T in accordance with the exchange agreement, and paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to QI, and T must take into account in computing T's income tax liability for 2008 the $28,000 of interest earned on T's account.

*Example 7. Marketing fee paid to exchange facilitator.* (i) The facts are the same as in *Example 4*, except that at the end of each taxable year, B pays a marketing fee to QI for using B as its depository institution for exchange funds. The amount of the fee is based on the total amount of exchange funds QI has deposited with B during the year.

(ii) Under paragraph (c)(2)(ii)(A) of this section, no part of the marketing fee that B pays to QI is earnings attributable to T's exchange funds. Therefore, all of the earnings attributable to the exchange funds are paid to T in accordance with the exchange agreement, and paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to QI, and T must take into account in computing T's income tax liability for 2008 the $28,000 of interest earned on T's account.

*Example 8. Stated rate of interest on account less than earnings attributable to exchange funds.* (i) The facts are the same as in *Example 4*, except that the exchange agreement provides only that QI will pay T a stated rate of interest. QI invests the exchange funds and earns $40,000. The exchange funds earn $28,000 at the stated rate of interest, and QI pays the $28,000 to T.

(ii) Paragraph (c)(1) of this section applies and the exchange funds are treated as loaned from T to QI. QI must take into account in computing QI's income tax liability all items of income, deduction, and credit (including capital gains and losses) attributable to the exchange funds. Paragraph (c)(2) of this section does not apply because QI does not pay all the earnings attributable to the exchange funds to T. See §§ 1.7872–5 and 1.7872–16 for rules relating to exchange facilitator loans.

*Example 9. All earnings attributable to commingled exchange funds paid to taxpayer.* (i) The facts are the same as in *Example 4*, except that the exchange agreement does not specify how the $2,100,000 received from R must be invested.

(ii) On May 1, 2008, QI deposits the $2,100,000 with B in a pre-existing interest-bearing account under QI's name and TIN. The account has a total balance of $5,275,000 immediately thereafter. On the last day of each month between May and September, 2008, the account earns interest as follows: $17,583 in May, $17,642 in June, $18,756 in July, and $17,472 in August. On July 11, 2008, QI deposits $500,000 in the account. On August 15, 2008, QI withdraws $1,175,000 from the account.

(iii) QI calculates T's pro-rata share of the earnings allocable to the $2,100,000 based on the actual return, the average daily principal balances, and a 30-day month convention, as follows:

| Month | Account's avg. daily bal. | T's avg. daily bal. | T's share* (percent) | Monthly interest | T's end. bal.** |
|-------|---------------------------|---------------------|----------------------|------------------|-----------------|
| May | $5,275,000 | $2,100,000 | 39.8 | $17,583 | $2,106,998 |
| June | 5,292,583 | 2,106,998 | 39.8 | 17,642 | 2,114,020 |
| July | 5,643,558 | 2,114,020 | 37.5 | 18,756 | 2,121,054 |
| August | 5,035,647 | 2,121,054 | 42.1 | 17,472 | 2,128,410 |

*T's Average Daily Balance ÷ Account's Average Daily Balance.
**T's beginning balance + [(T's share) (Monthly Interest)].

(iv) On September 1, 2008, QI uses $2,100,000 of the funds to purchase replacement property identified by T and transfers the property to T. QI pays $28,410, the earnings of the account allocated to T's exchange funds, to T.

(v) Because QI uses a reasonable method to calculate the pro-rata share of account earnings allocable to T's exchange funds in accordance with paragraph (c)(2)(ii)(B) of this section, and pays all those earnings to T, paragraph (c)(2) of this section applies. The exchange funds are not treated as loaned from T to QI. T must take into account in computing T's income tax liability for 2008 the $28,410 of earnings attributable to T's exchange funds.

*(f) Effective/applicability dates*—(1) *In general.* This section applies to trans-

fers of relinquished property made by taxpayers on or after October 8, 2008.

(2) *Transition rule.* With respect to transfers of relinquished property made by taxpayers after August 16, 1986, but before October 8, 2008, the Internal Revenue Service will not challenge a reasonable, consistently applied method of taxation for income attributable to exchange funds.

[T.D. 9413, 73 FR 39620, July 10, 2008]

**§ 1.468B–7  Pre-closing escrows.**

(a) *Scope.* This section provides rules under section 468B(g) for the current taxation of income of a pre-closing escrow.

(b) *Definitions.* For purposes of this section—

(1) A *pre-closing escrow* is an escrow account, trust, or fund—

(i) Established in connection with the sale or exchange of real or personal property;

(ii) Funded with a down payment, earnest money, or similar payment that is deposited into the escrow prior to the sale or exchange of the property;

(iii) Used to secure the obligation of the purchaser to pay the purchase price for the property;

(iv) The assets of which, including any income earned thereon, will be paid to the purchaser or otherwise distributed for the purchaser's benefit when the property is sold or exchanged (for example, by being distributed to the seller as a credit against the purchase price); and

(v) Which is not an escrow account or trust established in connection with a deferred exchange under section 1031(a)(3).

(2) *Purchaser* means, in the case of an exchange, the intended transferee of the property whose obligation to pay the purchase price is secured by the pre-closing escrow;

(3) *Purchase price* means, in the case of an exchange, the required consideration for the property; and

(4) *Administrator* means the escrow agent, escrow holder, trustee, or other person responsible for administering the pre-closing escrow.

(c) *Taxation of pre-closing escrows.* The purchaser must take into account in computing the purchaser's income tax liability all items of income, deduction, and credit (including capital gains and losses) of the pre-closing escrow. In the case of an exchange with a single pre-closing escrow funded by two or more purchasers, each purchaser must take into account in computing the purchaser's income tax liability all items of income, deduction, and credit (including capital gains and losses) earned by the pre-closing escrow with respect to the money or property deposited in the pre-closing escrow by or on behalf of that purchaser.

(d) *Reporting obligations of the administrator.* For each calendar year (or portion thereof) that a pre-closing escrow is in existence, the administrator must report the income of the pre-closing escrow on Form 1099 to the extent required by the information reporting provisions of subpart B, Part III, subchapter A, chapter 61, Subtitle F of the Internal Revenue Code and the regulations thereunder. See § 1.6041–1(f) for rules relating to the amount to be reported when fees, expenses, or commissions owed by a payee to a third party are deducted from a payment.

(e) *Examples.* The provisions of this section may be illustrated by the following examples:

*Example 1.* P enters into a contract with S for the purchase of residential property owned by S for the price of $200,000. P is required to deposit $10,000 of earnest money into an escrow. At closing, the $10,000 and the interest earned thereon will be credited against the purchase price of the property. The escrow is a pre-closing escrow. P is taxable on the interest earned on the pre-closing escrow prior to closing.

*Example 2.* X and Y enter into a contract in which X agrees to exchange certain construction equipment for residential property owned by Y. The contract requires X and Y to each deposit $10,000 of earnest money into an escrow. At closing, $10,000 and the interest earned thereon will be paid to X and $10,000 and the interest earned thereon will be paid to Y. The escrow is a pre-closing escrow. X is taxable on the interest earned prior to closing on the $10,000 of funds X deposited in the pre-closing escrow. Similarly, Y is taxable on the interest earned prior to closing on the $10,000 of funds Y deposited in the pre-closing escrow.

(f) *Effective dates*—(1) *In general.* This section applies to pre-closing escrows established after February 3, 2006.

(2) *Transition rule.* With respect to a pre-closing escrow established after August 16, 1986, but on or before February 3, 2006, the Internal Revenue Service will not challenge a reasonable, consistently applied method of taxation for income earned by the escrow or a reasonable, consistently applied method for reporting the income.

[T.D. 9249, 71 FR 6202, Feb. 7, 2006]

§ 1.468B–8  **Contingent-at-closing escrows. [Reserved]**

§ 1.468B–9  **Disputed ownership funds.**

(a) *Scope.* This section provides rules under section 468B(g) relating to the current taxation of income of a disputed ownership fund.

(b) *Definitions.* For purposes of this section—

(1) *Disputed ownership fund* means an escrow account, trust, or fund that—

(i) Is established to hold money or property subject to conflicting claims of ownership;

(ii) Is subject to the continuing jurisdiction of a court;

(iii) Requires the approval of the court to pay or distribute money or property to, or on behalf of, a claimant, transferor, or transferor-claimant; and

(iv) Is not a qualified settlement fund under §1.468B–1, a bankruptcy estate (or part thereof) resulting from the commencement of a case under title 11 of the United States Code, or a liquidating trust under §301.7701–4(d) of this chapter (except as provided in paragraph (c)(2)(ii) of this section);

(2) *Administrator* means a person designated as such by a court having jurisdiction over a disputed ownership fund, however, if no person is designated, the administrator is the escrow agent, escrow holder, trustee, receiver, or other person responsible for administering the fund;

(3) *Claimant* means a person who claims ownership of, in whole or in part, or a legal or equitable interest in, money or property immediately before and immediately after that property is transferred to a disputed ownership fund;

(4) *Court* means a court of law or equity of the United States or of any state (including the District of Columbia), territory, possession, or political subdivision thereof;

(5) *Disputed property* means money or property held in a disputed ownership fund subject to the claimants' conflicting claims of ownership;

(6) *Related person* means any person that is related to a transferor within the meaning of section 267(b) or 707(b)(1);

(7) *Transferor* means, in general, a person that transfers disputed property to a disputed ownership fund, except that—

(i) If disputed property is transferred by an agent, fiduciary, or other person acting in a similar capacity, the transferor is the person on whose behalf the

agent, fiduciary, or other person acts; and

(ii) A payor of interest or other income earned by a disputed ownership fund is not a transferor within the meaning of this section (unless the payor is also a claimant);

(8) *Transferor-claimant* means a transferor that claims ownership of, in whole or in part, or a legal or equitable interest in, the disputed property immediately before and immediately after that property is transferred to the disputed ownership fund. Because a transferor-claimant is both a transferor and a claimant, generally the terms *transferor* and *claimant* also include a transferor-claimant. See paragraph (d) of this section for rules applicable only to transferors that are not transferor-claimants and paragraph (e) of this section for rules applicable only to transferors that are also transferor-claimants.

(c) *Taxation of a disputed ownership fund*—(1) *In general.* For Federal income tax purposes, a disputed ownership fund is treated as the owner of all assets that it holds. A disputed ownership fund is treated as a C corporation for purposes of subtitle F of the Internal Revenue Code, and the administrator of the fund must obtain an employer identification number for the fund, make all required income tax and information returns, and deposit all tax payments. Except as otherwise provided in this section, a disputed ownership fund is taxable as—

(i) A C corporation, unless all the assets transferred to the fund by or on behalf of transferors are passive investment assets. For purposes of this section, passive investment assets are assets of the type that generate portfolio income within the meaning of §1.469–2T(c)(3)(i); or

(ii) A qualified settlement fund, if all the assets transferred to the fund by or on behalf of transferors are passive investment assets. A disputed ownership fund taxable as a qualified settlement fund under this section is subject to all the provisions contained in §1.468B–2, except that the rules contained in paragraphs (c)(3), (4), and (c)(5)(i) of this section apply in lieu of the rules in §1.468B–2(b)(1), (d), (e), (f) and (j).

(2) *Exceptions.* (i) The claimants to a disputed ownership fund may submit a private letter ruling request proposing a method of taxation different than the method provided in paragraph (c)(1) of this section.

(ii) The trustee of a liquidating trust established pursuant to a plan confirmed by the court in a case under title 11 of the United States Code may, in the liquidating trust's first taxable year, elect to treat an escrow account, trust, or fund that holds assets of the liquidating trust that are subject to disputed claims as a disputed ownership fund. Pursuant to this election, creditors holding disputed claims are not treated as transferors of the money or property transferred to the disputed ownership fund. A trustee makes the election by attaching a statement to the timely filed Federal income tax return of the disputed ownership fund for the taxable year for which the election becomes effective. The election statement must include a statement that the trustee will treat the escrow account, trust, or fund as a disputed ownership fund and must include a legend, "§1.468B–9(c) Election," at the top of the page. The election may be revoked only upon consent of the Commissioner by private letter ruling.

(3) *Property received by the disputed ownership fund*—(i) *Generally excluded from income.* In general, a disputed ownership fund does not include an amount in income on account of a transfer of disputed property to the disputed ownership fund. However, the accrual or receipt of income from the disputed property in a disputed ownership fund is not a transfer of disputed property to the fund. Therefore, a disputed ownership fund must include in income all income received or accrued from the disputed property, including items such as—

(A) Payments to a disputed ownership fund made in compensation for late or delayed transfers of money or property;

(B) Dividends on stock of a transferor (or a related person) held by the fund; and

(C) Interest on debt of a transferor (or a related person) held by the fund.

(ii) *Basis and holding period.* In general, the initial basis of property transferred by, or on behalf of, a transferor to a disputed ownership fund is the fair market value of the property on the date of transfer to the fund, and the fund's holding period begins on the date of the transfer. However, if the transferor is a transferor-claimant, the fund's initial basis in the property is the same as the basis of the transferor-claimant immediately before the transfer to the fund, and the fund=s holding period for the property is determined under section 1223(2).

(4) *Property distributed by the disputed ownership fund*—(i) *Computing gain or loss.* Except in the case of a distribution or deemed distribution described in paragraph (e)(3) of this section, a disputed ownership fund must treat a distribution of disputed property as a sale or exchange of that property for purposes of section 1001(a). In computing gain or loss, the amount realized by the disputed ownership fund is the fair market value of that property on the date of distribution.

(ii) *Denial of deduction.* A disputed ownership fund is not allowed a deduction for a distribution of disputed property or of the net after-tax income earned by the disputed ownership fund made to or on behalf of a transferor or claimant.

(5) *Taxable year and accounting method.* (i) A disputed ownership fund taxable as a C corporation under paragraph (c)(1)(i) of this section may compute taxable income under any accounting method allowable under section 446 and is not subject to the limitations contained in section 448. A disputed ownership fund taxable as a C corporation may use any taxable year allowable under section 441.

(ii) A disputed ownership fund taxable as a qualified settlement fund under paragraph (c)(1)(ii) of this section may compute taxable income under any accounting method allowable under section 446 and may use any taxable year allowable under section 441.

(iii) Appropriate adjustments must be made by a disputed ownership fund or transferors to the fund to prevent the fund and the transferors from taking into account the same item of income, deduction, gain, loss, or credit (including capital gains and losses)

**Internal Revenue Service, Treasury**                    **§ 1.468B–9**

more than once or from omitting such items. For example, if a transferor that is not a transferor-claimant uses the cash receipts and disbursements method of accounting and transfers an account receivable to a disputed ownership fund that uses an accrual method of accounting, at the time of the transfer of the account receivable to the disputed ownership fund, the transferor must include in its gross income the value of the account receivable because, under paragraph (c)(3)(ii) of this section, the disputed ownership fund will take a fair market value basis in the receivable and will not include the fair market value in its income when received from the transferor or when paid by the customer. If the account receivable were transferred to the disputed ownership fund by a transferor-claimant using the cash receipts and disbursements method, however, the disputed ownership fund would take a basis in the receivable equal to the transferor's basis, or $0, and would be required to report the income upon collection of the account.

(6) *Unused carryovers.* Upon the termination of a disputed ownership fund, if the fund has an unused net operating loss carryover under section 172, an unused capital loss carryover under section 1212, or an unused tax credit carryover, or if the fund has, for its last taxable year, deductions in excess of gross income, the claimant to which the fund's net assets are distributable will succeed to and take into account the fund's unused net operating loss carryover, unused capital loss carryover, unused tax credit carryover, or excess of deductions over gross income for the last taxable year of the fund. If the fund's net assets are distributable to more than one claimant, the unused net operating loss carryover, unused capital loss carryover, unused tax credit carryover, or excess of deductions over gross income for the last taxable year must be allocated among the claimants in proportion to the value of the assets distributable to each claimant from the fund. Unused carryovers described in this paragraph (c)(6) are not money or other property for purposes of paragraph (e)(3)(ii) of this section and thus are not deemed transferred to a transferor-claimant before

being transferred to the claimants described in this paragraph (c)(6).

(d) *Rules applicable to transferors that are not transferor-claimants.* The rules in this paragraph (d) apply to transferors (as defined in paragraph (b)(7) of this section) that are not transferor-claimants (as defined in paragraph (b)(8) of this section).

(1) *Transfer of property.* A transferor must treat a transfer of property to a disputed ownership fund as a sale or other disposition of that property for purposes of section 1001(a). In computing the gain or loss on the disposition, the amount realized by the transferor is the fair market value of the property on the date the transfer is made to the disputed ownership fund.

(2) *Economic performance*—(i) *In general.* For purposes of section 461(h), if a transferor using an accrual method of accounting has a liability for which economic performance would otherwise occur under §1.461–4(g) when the transferor makes payment to the claimant or claimants, economic performance occurs with respect to the liability when and to the extent that the transferor makes a transfer to a disputed ownership fund to resolve or satisfy that liability.

(ii) *Obligations of the transferor.* Economic performance does not occur when a transferor using an accrual method of accounting issues to a disputed ownership fund its debt (or provides the debt of a related person). Instead, economic performance occurs as the transferor (or related person) makes principal payments on the debt. Economic performance does not occur when the transferor provides to a disputed ownership fund its obligation (or the obligation of a related person) to provide property or services in the future or to make a payment described in §1.461–4(g)(1)(ii)(A). Instead, economic performance occurs with respect to such obligation as property or services are provided or payments are made to the disputed ownership fund or a claimant. With regard to interest on a debt issued or provided to a disputed ownership fund, economic performance occurs as determined under §1.461–4(e).

(3) *Distributions to transferors*—(i) *In general.* Except as provided in section 111(a) and paragraph (d)(3)(ii) of this

section, the transferor must include in gross income any distribution to the transferor (including a deemed distribution described in paragraph (d)(3)(iii) of this section) from the disputed ownership fund. If property is distributed, the amount includible in gross income, and the basis in that property are generally the fair market value of the property on the date of distribution.

(ii) *Exception.* A transferor is not required to include in gross income a distribution of money or property that it previously transferred to the disputed ownership fund if the transferor did not take into account, for example, paragraph (d)(3)(iii) of this section) from the disputed ownership fund. If property is distributed, the amount includible in gross income, and the basis in that property are generally the fair market value of the property on the date of distribution.

(ii) *Exception.* A transferor is not required to include in gross income a distribution of money or property that it previously transferred to the disputed ownership fund if the transferor did not take into account, for example, a deduction or capitalization, an amount with respect to the transfer either at the time of the transfer to, or while the money or property was held by, the disputed ownership fund. The transferor's gross income does not include a distribution of money from the disputed ownership fund equal to the net after-tax income earned on money or property transferred to the disputed ownership fund by the transferor while that money or property was held by the fund. Money distributed to a transferor by a disputed ownership fund will be deemed to be distributed first from the money or property transferred to the disputed ownership fund by that transferor, then from the net after-tax income of any money or property transferred to the disputed ownership fund by that transferor, and then from other sources.

(iii) *Deemed distributions.* If a disputed ownership fund makes a distribution of money or property on behalf of a transferor to a person that is not a claimant, the distribution is deemed made by the fund to the transferor. The transferor, in turn, is deemed to make a payment to the actual recipient.

(e) *Rules applicable to transferor-claimants.* The rules in this paragraph (e) apply to transferor-claimants (as defined in paragraph (b)(8) of this section).

(1) *Transfer of property.* A transfer of property by a transferor-claimant to a disputed ownership fund is not a sale or other disposition of the property for purposes of section 1001(a).

(2) *Economic performance*—(i) *In general.* For purposes of section 461(h), if a transferor-claimant using an accrual method of accounting has a liability for which economic performance would otherwise occur under §1.461–4(g) when the transferor-claimant makes payment to another claimant, economic performance occurs with respect to the liability when and to the extent that the disputed ownership fund transfers money or property to the other claimant to resolve or satisfy that liability.

(ii) *Obligations of the transferor-claimant.* Economic performance does not occur when a disputed ownership fund transfers the debt of a transferor-claimant (or of a person related to the transferor-claimant) to another claimant. Instead, economic performance occurs as principal payments on the debt are made to the other claimant. Economic performance does not occur when a disputed ownership fund transfers to another claimant the obligation of a transferor-claimant (or of a person related to the transferor-claimant) to provide property or services in the future or to make a payment described in §1.461–4(g)(1)(ii)(A). Instead, economic performance occurs with respect to such an obligation as property or services are provided or payments are made to the other claimant. With regard to interest on a debt issued or provided to a disputed ownership fund, economic performance occurs as determined under §1.461–4(e).

(3) *Distributions to transferor-claimants*—(i) *In general.* The gross income of a transferor-claimant does not include a distribution to the transferor-claimant (including a deemed distribution described in paragraph (e)(3)(ii) of this section) of money or property from a disputed ownership fund that the transferor-claimant previously transferred to the fund, or the net after-tax income earned on that money or property while it was held by the fund. If such property is distributed to the transferor-claimant by the disputed ownership fund, then the transferor-claimant's basis in the property is the same as the disputed ownership fund's basis in the property immediately before the distribution.

(ii) *Deemed distributions.* If a disputed ownership fund makes a distribution of money or property to a claimant or

makes a distribution of money or property on behalf of a transferor-claimant to a person that is not a claimant, the distribution is deemed made by the fund to the transferor-claimant. The transferor-claimant, in turn, is deemed to make a payment to the actual recipient.

(f) *Distributions to claimants other than transferor-claimants.* Whether a claimant other than a transferor-claimant must include in gross income a distribution of money or property from a disputed ownership fund generally is determined by reference to the claim in respect of which the distribution is made.

(g) *Statement to the disputed ownership fund and the Internal Revenue Service with respect to transfers of property other than cash*—(1) *In general.* By February 15 of the year following each calendar year in which a transferor (or other person acting on behalf of a transferor) makes a transfer of property other than cash to a disputed ownership fund, the transferor must provide a statement to the administrator of the fund setting forth the information described in paragraph (g)(3) of this section. The transferor must attach a copy of this statement to its return for the taxable year of transfer.

(2) *Combined statements.* If a disputed ownership fund has more than one transferor, any two or more transferors may provide a combined statement to the administrator. If a combined statement is used, each transferor must attach a copy of the combined statement to its return and maintain with its books and records a schedule describing each asset that the transferor transferred to the disputed ownership fund.

(3) *Information required on the statement.* The statement required by paragraph (g)(1) of this section must include the following information—

(i) A legend, "§1.468B–9 Statement," at the top of the first page;

(ii) The transferor's name, address, and taxpayer identification number;

(iii) The disputed ownership fund's name, address, and employer identification number;

(iv) A statement declaring whether the transferor is a transferor-claimant;

(v) The date of each transfer;

(vi) A description of the property (other than cash) transferred; and

(vii) The disputed ownership fund's basis in the property and holding period on the date of transfer as determined under paragraph (c)(3)(ii) of this section.

(h) *Examples.* The following examples illustrate the rules of this section:

*Example 1.* (i) X Corporation petitions the United States Tax Court in 2006 for a redetermination of its tax liability for the 2003 taxable year. In 2006, the Tax Court determines that X Corporation is liable for an income tax deficiency for the 2003 taxable year. X Corporation files an appellate bond in accordance with section 7485(a) and files a notice of appeal with the appropriate United States Court of Appeals. In 2006, the Court of Appeals affirms the decision of the Tax Court and the United States Supreme Court denies X Corporation's petition for a writ of certiorari.

(ii) The appellate bond that X Corporation files with the court for the purpose of staying assessment and collection of deficiencies pending appeal is not an escrow account, trust or fund established to hold property subject to conflicting claims of ownership. Although X Corporation was found liable for an income tax deficiency, ownership of the appellate bond is not disputed. Rather, the bond serves as security for a disputed liability. Therefore, the bond is not a disputed ownership fund.

*Example 2.* (i) The facts are the same as *Example 1*, except that X Corporation deposits United States Treasury bonds with the Tax Court in accordance with section 7845(c)(2) and 31 U.S.C. 9303.

(ii) The deposit of United States Treasury bonds with the court for the purpose of staying assessment and collection of deficiencies while X Corporation prosecutes an appeal does not create a disputed ownership fund because ownership of the bonds is not disputed.

*Example 3.* (i) Prior to A's death, A was the insured under a life insurance policy issued by X, an insurance company. X uses an accrual method of accounting. Both A's current spouse and A's former spouse claim to be the beneficiary under the policy and entitled to the policy proceeds ($1 million). In 2005, X files an interpleader action and deposits $1 million into the registry of the court. On June 1, 2006, a final determination is made that A's current spouse is the beneficiary under the policy and entitled to the money held in the registry of the court. The interest earned on the registry account is $12,000. The money in the registry account is distributed to A's current spouse.

(ii) The money held in the registry of the court consisting of the policy proceeds and

the earnings thereon are a disputed ownership fund taxable as if it were a qualified settlement fund. See paragraphs (b)(1) and (c)(1)(ii) of this section. The fund's gross income does not include the $1 million transferred to the fund by X, however, the $12,000 interest is included in the fund's gross income in accordance with its method of accounting. See paragraph (c)(3)(i) of this section. Under paragraph (c)(4)(ii) of this section, the fund is not allowed a deduction for a distribution to A's current spouse of the $1 million or the interest income earned by the fund.

(iii) X is a transferor that is not a transferor-claimant. See paragraphs (b)(7) and (b)(8) of this section.

(iv) Whether A's current spouse must include in income the $1 million insurance proceeds and the interest received from the fund is determined under other provisions of the Internal Revenue Code. See paragraph (f) of this section.

*Example 4.* (i) Corporation B and unrelated individual C claim ownership of certain rental property. B uses an accrual method of accounting. The rental property is property used in a trade or business. B claims to have purchased the property from C's father. However, C asserts that the purported sale to B was ineffective and that C acquired ownership of the property through intestate succession upon the death of C's father. For several years, B has maintained and received the rent from the property.

(ii) Pending the resolution of the title dispute between B and C, the title to the rental property is transferred to a court-supervised registry account on February 1, 2005. On that date the court appoints R as receiver for the property. R collects the rent earned on the property and hires employees necessary for the maintenance of the property. The rents paid to R cannot be distributed to B or C without the court's approval.

(iii) On June 1, 2006, the court makes a final determination that the rental property is owned by C. The court orders C to refund to B the purchase price paid by B to C's father plus interest on that amount from February 1, 2005. The court also orders that a distribution be made to C of all funds held in the court registry consisting of the rent collected by R and the income earned thereon. C takes title to the rental property.

(iv) The rental property and the funds held by the court registry are a disputed ownership fund under paragraph (b)(1) of this section. The fund is taxable as if it were a C corporation because the rental property is not a passive investment asset within the meaning of paragraph (c)(1)(i) of this section.

(v) The fund's gross income does not include the value of the rental property transferred to the fund by B. See paragraph (c)(3)(i) of this section. Under paragraph (c)(3)(ii) of this section, the fund's initial

basis in the property is the same as B's adjusted basis immediately before the transfer to the fund and the fund's holding period is determined under section 1223(2). The fund's gross income includes the rents collected by R and any income earned thereon. For the period between February 1, 2005, and June 1, 2006, the fund may be allowed deductions for depreciation and for the costs of maintenance of the property because the fund is treated as owning the property during this period. See sections 162, 167, and 168. Under paragraph (c)(4)(ii) of this section, the fund may not deduct the distribution to C of the property, or the rents (or any income earned thereon) collected from the property while the fund holds the property. No gain or loss is recognized by the fund from this distribution or from the fund's transfer of the rental property to C pursuant to the court's determination that C owns the property. See paragraphs (c)(4)(i) and (e)(3) of this section.

(vi) B is the transferor to the fund. Under paragraphs (b)(8) and (e)(1) of this section, B is a transferor-claimant and does not recognize gain or loss under section 1001(a) on transfer of the property to the disputed ownership fund. The money and property distributed from the fund to C is deemed to be distributed first to B and then transferred from B to C. See paragraph (e)(3)(ii) of this section. Under paragraph (e)(2)(i) of this section, economic performance occurs when the disputed ownership fund transfers the property and any earnings thereon to C. The income tax consequences of the deemed transfer from B to C as well as the income tax consequences of C's refund to B of the purchase price paid to C's father and interest thereon are determined under other provisions of the Internal Revenue Code.

(i) [Reserved]

(j) *Effective dates*—(1) *In general.* This section applies to disputed ownership funds established after February 3, 2006.

(2) *Transition rule.* With respect to a disputed ownership fund established after August 16, 1986, but on or before February 3, 2006, the Internal Revenue Service will not challenge a reasonable, consistently applied method of taxation for income earned by the fund, transfers to the fund, and distributions made by the fund.

[T.D. 9249, 71 FR 6202, Feb. 7, 2006]

§ 1.469–0   **Table of contents.**

This section lists the captions that appear in the regulations under section 469.