## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.,** *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S AMENDED COMBINED FINAL REPORT REGARDING THOSE FEE APPLICATIONS WITH *DE MINIMIS* OR NO FEE OR EXPENSE ISSUES FOR THE FORTY-FIFTH INTERIM PERIOD

This is the amended[1] combined final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding all the Interim Fee Applications of those firms for which we have *de minimis*[2] or no fee or expense issues for the Forty-Fifth Interim Period (collectively referred to hereafter as the "Applications").[3]

### BACKGROUND

1. Anderson Kill & Olick, P.C. ("Anderson Kill & Olick"), was retained as special insurance counsel to the Official Committee of Asbestos Personal Injury Claimants. Anderson Kill & Olick seeks approval of fees totaling $336,373.00 and expenses totaling $3,705.65 for its services during the Application Period.

---

[1]We are amending this final report to correct an error concerning recommendations for Campbell & Levine, LLC.

[2]For purposes of this report, applications with *de minimis* issues are those for which: (1) our recommended reductions total less than $300.00, *and* (2) the applicant has agreed to our recommended reductions.

[3]The Forty-Fifth Interim Period encompasses April 1, 2012, through June 30, 2012 (the "Application Period"). All Applications are for the Forty-Fifth Interim Period, unless otherwise specified.

2.      David T. Austern ("Austern") was retained as the Legal Representative for Asbestos Personal Injury Future Claimants.  Austern seeks approval of fees totaling $2,900.00 and expenses totaling $441.00 for his services from January 1, 2012, through March 31, 2012 (the "Forty-Fourth Interim Period"), and fees totaling $3,150.00 and expenses totaling $475.00 for his services during the current Application Period.

3.      Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants.  Bilzin Sumberg seeks approval of fees totaling $25,476.00 and expenses totaling $3,117.73 for its services during the Application Period.

4.      Blackstone Advisory Partners L.P. ("Blackstone") was retained as financial advisor to the Debtors.  Blackstone seeks approval of flat fees totaling $200,000.00[4] and expenses totaling $707.77 for its services during the Application Period.

5.      BMC Group ("BMC") was retained as Claims Reconciliation and Solicitation Consultant to the Debtors.  BMC seeks approval of fees totaling $116,454.00 and expenses totaling $24,628.56 for its services during the Application Period.

6.      Campbell & Levine, LLC ("Campbell & Levine"), was retained as Delaware and associated counsel to the Official Committee of Asbestos Personal Injury Claimants.  Campbell & Levine seeks approval of fees totaling $33,985.50 and expenses totaling $11,755.85 for its services during the Application Period.

7.      Caplin & Drysdale, Chartered ("Caplin & Drysdale"), was retained as counsel to the

---

[4]For the Application Period, Blackstone lists 239.70 hours worked, which computes to an effective hourly rate of $834.38.

Official Committee of Asbestos Personal Injury Claimants.  Caplin & Drysdale seeks approval of fees totaling $94,862.75 and expenses totaling $4,092.90 for its services during the Application Period.[5]

8.    Capstone Advisory Group, LLC ("Capstone"), was retained as financial advisor to the Official Committee of Unsecured Creditors.  Capstone seeks approval of fees totaling $181,596.50 and expenses totaling $388.48 for its services during the Application Period.

9.    Casner & Edwards, LLP ("Casner"), was retained as special litigation counsel to the Debtors.  Casner seeks approval of fees totaling $33,176.50 and expenses totaling $38,106.69 for its services during the Application Period.

10.    Charter Oak Financial Consultants, LLC ("Charter Oak"), was retained as financial advisor to the Official Committee of Asbestos Personal Injury Claimants.  Charter Oak seeks approval of fees totaling $91,849.00 and expenses totaling $388.00 for its services during the Application Period.

11.    Duane Morris LLP ("Duane Morris") was retained as co-counsel to the Official Committee of Unsecured Creditors.  Duane Morris seeks approval of fees totaling $19,835.50 and expenses totaling $824.98 for its services during the Forty-Fourth Interim Period and fees totaling $18,115.00 and expenses totaling $753.82 for its services during the current Application Period.

12.    Ferry, Joseph & Pearce, P.A. ("Ferry Joseph"), was retained as counsel to the Official

---

[5]We note for informational purposes that Caplin & Drysdale billed the time of attorney Elihu Inselbuch at $1,000.00 per hour.  During the current Application Period, Mr. Inselbuch billed 9.70 hours at the $1,000 per hour rate, for $9,700.00 in fees.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

Committee of Asbestos Property Damage Claimants. Ferry Joseph seeks approval of fees totaling $22,383.50 and expenses totaling $1,893.15 for its services during the Application Period.

13.     Foley Hoag LLP ("Foley Hoag") was retained as special environmental counsel to the Debtors. Foley Hoag seeks approval of fees totaling $53,689.30 and expenses totaling $993.67 for its services during the Application Period.

14.     Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen") was retained as immigration counsel to the Debtors. Fragomen seeks approval of fees totaling $6,875.00 and expenses totaling $5,575.08 for its services during the Application Period.

15.     The Law Offices of Roger J. Higgins, LLC ("Higgins"), was retained as co-counsel to the Debtors and Debtors-in-Possession. Higgins seeks approval of fees totaling $192,137.50 and expenses totaling $2,838.97 for its services during the Application Period.

16.     The Hogan Firm ("Hogan") was retained as Delaware counsel to the Canadian Zonolite Attic Insulation ("ZAI") Claimants. Hogan seeks approval of fees totaling $29,727.50 and expenses totaling $882.81 for its services during the Application Period.

17.     Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors. K&E seeks approval of fees totaling $986,840.00[6] and expenses totaling $25,532.24 for its services during the Application Period.

18.     Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") was retained as co-counsel

---

[6]We note for informational purposes that Kirkland & Ellis billed the time of partners, Christopher Landau, P.C., and Todd F. Maynes, P.C., at $1,045.00 per hour. During the Application Period, Mr. Landau's P.C. billed 7.80 hours for fees of $8,151.00, and Mr. Maynes' P.C. billed 8.20 hours for fees of $8,569.00. In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

to the Official Committee of Equity Holders.  Kramer Levin seeks approval of fees totaling $40,781.00 and expenses totaling $1,404.21 for its services during the Application Period.

19.     Lauzon Bélanger Lespérance ("Lauzon Bélanger) was retained as Canadian counsel to the Canadian ZAI Claimants.  Lauzon Bélanger seeks approval of fees totaling CDN $2,865.60 and expenses totaling CDN $434.90 for its services during the Application Period.

20.     Lincoln Partners Advisors LLC ("Lincoln") was retained as financial advisor to David T. Austern, the Asbestos Personal Injury Future Claimants' Representative.  Lincoln seeks approval of flat fees totaling $125,000.00[7] and expenses totaling $675.88 for its services during the Forty-Fourth Interim Period and fees totaling $190,000.00[8] and expenses totaling $4,031.95 for its services during the current Application Period.

21.     Orrick, Herrington & Sutcliffe LLP ("Orrick") was retained as bankruptcy counsel to David T. Austern, Future Claimants' Representative.  Orrick seeks approval of fees totaling $433,129.75 and expenses totaling $5,928.97 for its services during the Application Period.

22.     Phillips, Goldman & Spence, P.A. ("PG&S"),  was retained as local counsel to David T. Austern, Future Claimants' Representative.  PG&S seeks approval of fees totaling $10,808.00 and expenses totaling $1,891.30 for its services during the Application Period.

23.     PricewaterhouseCoopers LLP ("PwC") was retained  as auditors and tax consultants to the Debtors and Debtors-in-Possession.  PwC seeks approval of fees totaling $677,893.53 and expenses totaling $10,886.37 for its services during the Application Period.  Included in the

---

[7]For the Forty-Fourth Interim Period, Lincoln recorded 142 hours worked, which computes to an effective hourly rate of $880.28.

[8]For the current Application Period, Lincoln recorded 270.60 hours worked, which computes to an effective hourly rate of $702.14.

Application, are fees and expenses for the following separate projects:

- W. R. Grace Audit Services for April 1 – June 30, 2012: fees totaling $576,360.33 and expenses totaling $8,257.98;[9]

- Global Restructuring Project for April 1 -- May 31, 2012:  fees totaling $43,914.97[10] and no expenses; and

- Darex Puerto Rico Audit Services for December 1, 2011 – May 31, 2012: fees totaling $57,618.23 and expenses totaling $2,628.39.

24.     Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  Reed Smith seeks approval of fees totaling $84,942.00 and expenses totaling $9,760.16 for its services during the Application Period.

25.     Alan B. Rich ("Alan Rich") was retained as counsel to the Honorable Alexander M. Sanders, Jr., Legal Representative for Future Asbestos-Related Property Damage Claimants.  Alan Rich seeks approval of fees totaling $59,865.00 and expenses totaling $4,005.28 for his services during the Application Period.

26.     The Honorable Alexander M. Sanders, Jr. ("Judge Sanders"), was retained as the Legal Representative for Future Asbestos-Related Property Damage Claimants.  Judge Sanders

---

[9]We note for informational purposes that PwC billed the time of Audit Partners, Marc A. Panucci and Robert F. Eydt at $1,074.42 per hour.  During the Application Period, Mr. Panucci billed 4.0 hours for fees of $4,297.68, and Mr. Eydt billed 2.0 hours for fees of $2,148.84.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

[10]We note that pursuant to PwC's engagement letter with the Debtor dated July 14, 2011, the combined budget for the Global Restructuring Project is $575,000.00 in fees.  Fees billed on the project to date (including those listed above) total $574,972.83.  Thus, as of the current Application Period, PwC's fees on the project are under budget, and we have no objection to the fees on that basis.

seeks approval of fees totaling $21,465.00 and expenses totaling $3,417.91 for his services during the Application Period.

27.    Saul Ewing LLP ("Saul Ewing") was retained as co-counsel to the Official Committee of Equity Holders.  Saul Ewing seeks approval of fees totaling $26,513.50 and expenses totaling $374.71 for its services during the Application Period.

28.    Scarfone Hawkins LLP ("Scarfone Hawkins") was retained as Canadian counsel to the Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants").  Scarfone Hawkins seeks approval of fees totaling CDN $8,535.00 and expenses totaling CDN $1,112.15 for its services during the Application Period.

29.    Steptoe & Johnson LLP ("Steptoe & Johnson") was retained as special tax counsel to the Debtors.  Steptoe & Johnson seeks approval of fees totaling $15,452.00 and expenses totaling $1,004.71 for its services during the Application Period.

30.    Stroock & Stroock & Lavan LLP ("Stroock") was retained as counsel to the Official Committee of Unsecured Creditors.  Stroock seeks approval of fees totaling $105,462.00[11] and expenses totaling $1,264.25 for its services during the Application Period.

31.    Towers Watson was retained as actuarial consultant to David T. Austern, Future Claimants' Representative.  Towers Watson seeks approval of fees totaling $2,567.50 and no expenses for its services during the Forty-Fourth Interim Period and fees totaling $4,480.50 and no

---

[11]We note for informational purposes that Stroock billed the time of partner, Lewis Kruger, at $1,025.00 per hour.  During the Application Period, Mr. Kruger billed 5.7 hours for fees of $5,842.50.  In *In re USG Corporation,* Case No. 01-2094 (JKF), Transcript of Proceedings, July 19, 2004, p. 14, the Honorable Judith K. Fitzgerald asked that we call to the Court's attention any instance in which a professional's hourly rate reaches $1,000.00, and thus we are complying with the Court's request.

expenses for its services during the current Application Period.

32.     In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Applications in their entirety, including each of the time and expense entries included in the exhibits to the Applications, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2012, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

## DISCUSSION

33.     We have no issues with or objections to any of the Applications, except for the *de minimis* issues noted in the following paragraph and accompanying appendices.

## CONCLUSION

34.     In summary, for the Application Period, we recommend approval of the following fees and expenses for these Applicants:

a.      Anderson Kill & Olick - $336.373.00 in fees and $3,705.65 in expenses;

b.      Austern - $2,900.00 in fees and $441.00 in expenses for the Forty-Fourth Interim Period and $3,150.00[12] in fees and $475.00 in expenses for the current Application

---

[12] We questioned what appeared to be a mathematical error in Austern's fees, and received a response which we found to be satisfactory. *See* <u>Appendix A</u>.

Period;

    c.      Bilzin Sumberg - $25,476.00 in fees and $3,117.73[13] in expenses;

    d.      Blackstone - $200,000.00 in fees and $707.77 in expenses;

    e.      BMC - $116,454.00 in fees and $24,628.56 in expenses;

    f.      Campbell & Levine - $33,941.50 in fees ($33,985.50 minus $44.00[14]) and $11,755.85 in expenses;

    g.      Caplin & Drysdale - $94,862.75 in fees and $4,092.90 in expenses;

    h.      Capstone - $181,596.50 in fees and $388.48 in expenses;

    i.      Casner - $33,176.50 in fees and $38,106.69 in expenses;

    j.      Charter Oak - $91,849.00 in fees[15] and $388.00 in expenses;

    k.      Duane Morris - $19,835.50 in fees and $824.98 in expenses for the Forty-Fourth Interim Period and $18,115.00 in fees and $753.82 in expenses for the current Application Period;

    l.      Ferry Joseph - $22,383.50 in fees and $1,893.15 in expenses;

    m.      Foley Hoag - $53,689.30 in fees and $980.03 in expenses ($993.67 minus $13.64)[16] in expenses;

---

[13]We questioned a hotel expense and a meal expense on Bilzin's Application, and received satisfactory responses to our inquiry. *See* Appendix B.

[14]These agreed reductions totaling $44.00 were for a time entry billed to the wrong case and a duplicate time entry. These and other issues are addressed in the attached Appendix C.

[15]We questioned travel time billed by Charter Oaks director, Bradley R. Rapp, and received a satisfactory response to our inquiry. *See* Appendix D.

[16]This agreed $13.64 reduction was for a meal expense on Foley Hoag's June 2012 monthly fee application which exceeded our guidelines. *See* Appendix E.

  n.  Fragomen - $6,875.00 in fees and $5,575.08 in expenses;

  o.  Higgins - $192,137.50 in fees and $2,838.97 in expenses;

  p.  Hogan - $29,727.50 in fees and $882.81 in expenses;

  q.  Kirkland & Ellis - $986,840.00 in fees[17] and $25,532.24 in expenses;

  r.  Kramer Levin - $40,781.00 in fees and $1,404.21 in expenses;

  s.  Lauzon Bélanger - CDN $2,865.60 in fees and CDN $434.87 in expenses ($434.90 minus $0.03);[18], [19]

  t.  Lincoln Partners - $125,000.00 in fees and $675.88 in expenses for the Forty-Fourth Interim Period and $190,000.00 in fees and $4,031.95 in expenses[20] for the current Application Period;

  u.  Orrick - $433,048.75 in fees ($433,129.75 minus $81.00) and $5,718.97 in expenses ($5,928.97 minus $210.00);[21]

  v.  PG&S - $10,808.00 in fees and $1,891.30 in expenses;

  w.  PwC - $677,893.53 in fees and $10,886.37 in expenses, including:

---

[17]We questioned Kirkland & Ellis on certain time entries and Westlaw and Lexis charges, and received a response which satisfied our inquiry.  *See* Appendix F.

[18]We noted that on p. 2 of its Application, Lauzon Bélanger had overstated its June 2012 monthly expense request by $0.03 which, in turn, created a $0.03 error in Lauzon Bélanger's quarterly expense request.  In response to our request, Lauzon Bélanger agreed to a $0.03 expense reduction to correct the error.

[19]We questioned Lauzon Bélanger on certain time entries and its sales tax calculations, and received a response which satisfied our inquiry.  *See* Appendix G.

[20]We questioned Lincoln Partners concerning certain air fare charges, and we received a response which satisfied our inquiry.  *See* Appendix H.

[21]By way of compromise, Orrick agreed to a reduction of $81.00 on a disputed time entry and, in addition, agreed to a $210.00 reduction for a first class train fare.  *See* Appendix I.

i.  $576,360.33 in fees and $8,091.74 in expenses ($8,257.98 minus

$166.24)[22] for Audit Services from April 1 -- June 30, 2012,

ii.  $43,914.97 in fees for the Global Restructuring Project (April 1 --

May 31, 2012), and

iii.  $57,618.23 in fees and $2,628.39 in expenses for Darex Puerto

Rico Audit Service (December 1, 2011 – May 31, 2012);

x.      Reed Smith - $84,942.00 in fees and $9,760.16 in expenses;

y.      Alan Rich - $59,865.00 in fees and $4,005.28[23] in expenses;

z.      Judge Sanders - $21,465.00 in fees and $3,417.91[24] in expenses;

aa.     Saul Ewing - $26,513.50 in fees and $374.71 in expenses;

bb.     Scarfone Hawkins - CDN $8,351.25 in fees (CDN $8,535.00 minus

$183.75[25]) and CDN $1,112.15 in expenses;

cc.     Steptoe & Johnson - $15,452.00[26] in fees and $1,004.71 in expenses;

---

[22]This agreed $166.24 reduction was for a meal expense incurred in Boca Raton, Florida, which exceeded our $50 per person dinner guideline.  *See* Appendix J.

[23]We questioned Mr. Rich about a hotel expense which exceeded our $325.00 nightly trigger rate for Philadelphia, but we received a response from Mr. Rich which satisfied our inquiry.  *See* Appendix K.

[24]We questioned Judge Sanders about a hotel expense which exceeded our $325.00 nightly trigger rate for Philadelphia, but we received a response from Judge Sanders which satisfied our inquiry.  *See* Appendix L.

[25]This agreed $183.75 reduction is for a time entry which was of an administrative nature.  *See* Appendix M.

[26]We questioned Steptoe & Johnson about the time spent on research and drafting a memorandum on documentary privilege, and we received a response from Steptoe & Johnson which satisfied our inquiry.  *See* Appendix N.

dd.    Stroock - $105,462.00 in fees and $1,264.25[27] in expenses; and

ee.    Towers Watson - $2,567.50 in fees for the Forty-Fourth Interim Period and

$4,480.50 in fees for the current Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
          Warren H. Smith
          Texas State Bar No. 18757050

2235 Ridge Road, Suite 105
Rockwall, Texas 75087
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by
First Class United States mail to the attached service list on this 4th day of November, 2012.

_____
Warren H. Smith

---

[27]We questioned Stroock about a hotel expense which appeared to exceed our $325.00 nightly
trigger rate for Philadelphia, and we received a response from Stroock which satisfied our
inquiry.  *See* Appendix O.

# SERVICE LIST
## Notice Parties

**The Applicants**
Robert Y. Chung
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182

David T. Austern
Claims Resolution Management Corporation
3110 Fairview Park Drive, Suite 200
Falls Church, VA  22042-0683

Scott L. Baena
Jay M. Sakalo
Matthew I. Kramer
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

John James O'Connell III
Managing Director
Blackstone Advisory Partners L.P.
345 Park Avenue
New York, NY 10154

Myrtle H. John
BMC Group
600 1st Avenue, Suite 300
Seattle, Washington 98104

Marla R. Eskin
Mark T. Hurford
Kathleen Campbell Davis
Campbell & Levine, LLC
800 North King Street, Suite 300
Wilmington, DE 19899

Elihu Inselbuch, Esq.
Rita C. Tobin, Esq.
Caplin & Drysdale, Chartered
600 Lexington Avenue
21st Floor
New York, NY  10022-6000

Edwin N. Ordway, Jr.
Capstone Advisory Group, LLC
Park 80 West
250 Pehle Avenue, Suite 105
Saddle Brook, NJ  07663

Robert A. Murphy
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210

James P. Sinclair
Charter Oak Financial Consultants, LLC
430 Center Avenue
Mamaroneck, NY 10543

Michael R. Lastowski
Richard W. Riley
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

Michael B. Joseph
Theodore J. Tacconelli
Lisa L. Coggins
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 1000
P. O. Box 1351
Wilmington, DE 19899

Seth D. Jaffe
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600

Scott E. Bettridge
Fragomen, Del Rey, Bernsen & Loewy LLP
One Alhambra Plaza, Suite 600
Coral Gables, FL 33134

Roger J. Higgins
The Law Offices of Roger J. Higgins, LLC
111 East Wacker Drive, Suite 2800
Chicago, IL 60601

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

John Donley
Adam C. Paul
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Philip Bentley
David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Mark A. Peterson
Legal Analysis Systems, Inc.
970 Calle Arroyo
Thousand Oaks, CA  91360

Roger Frankel
Richard H. Wyron
Debra L. Felder
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005

John C. Phillips, Jr.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Kathleen M. Miller
Stephanie S. Habelow
Smith, Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)

Kurt F. Gwynne
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Teresa K. D. Currier
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899

Alan B. Rich
4244 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

Anne E. Moran
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036

Lewis Kruger
Kenneth Pasquale
Arlene Krieger
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982

Jennifer L. Biggs, FCAS, MAAA
Towers Watson
101 S. Hanley Rd.
St. Louis, MO 63105

**The Debtors**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Local Counsel for the Debtors**
James E. O'Neill
Laura Davis Jones
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**United States Trustee**
David Klauder
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

## APPENDIX A

### (David Austern)

1.    We noted that the fee detail in Austern's Application supported fees of only $2,850.00, although Austern had requested fees of $3,150.00.[28]  We asked Austern to explain this $300.00 discrepancy, and Austern, through counsel, responded:

> I have reviewed Mr. Austern's June 2012 monthly fee application filings and found that one of his time entries dated June 13 was inadvertently omitted from Exhibit A. Attached hereto is a corrected/revised Exhibit A including this time entry.

We have attached Austern's corrected fee detail for June 2012 as Appendix A-1.  We accept Austern's response and have no objection to these fees.

---

[28]It appeared that Austern's fees for June 2012 were overbilled by $300.00.

# APPENDIX B

## Bilzin Sumberg

1.      We noted the following hotel charge for which more information was needed:

05/07/12        382.46          Lodging Travel to Philadelphia - Vendor: Jay M. Sakalo; Invoice#: JMS-05/07/12; Date: 5/7/2012 - Client - 15537

In response to our request, Bilzin Sumberg provided the following information:

| DATE | ROOM CHARGE | # OF NIGHTS | TAXES, FEES AND OTHER CHARGES | GUEST NAME | NAME OF HOTEL/LOCATION |
|------|-------------|-------------|-------------------------------|------------|------------------------|
| 5/7/12 | $332.00 | 1 | $50.46 (taxes) | Jay M. Sakalo | Loews Hotel, Philadelphia, PA |

Our nightly trigger rate for Philadelphia is $325.00.  Although this charge exceeds our trigger rate, we do not consider the Loews Hotel to be a luxury hotel.[29]  Thus, we have no objection to this expense.

2.      We noted the following meal charge for which more information was needed:

05/07/12        76.37   Meals Travel to Philadelphia - VENDOR: Jay M. Sakalo; Invoice #: JMS-05/07/12; Date: 5/7/2012 - Client 15537

In response to our request, Bilzin Sumberg provided the following information: "... This charge is for dinner for Jay Sakalo and local counsel while attending oral argument in Philadelphia on the appeal of the Confirmation Order."  We accept Bilzin Sumberg's response and have no objection to this expense.

---

[29]The Loews Hotel in Philadelphia is rated four stars on the Expedia travel website.

## APPENDIX C

### (Campbell & Levine)

1.        We noted the following instances in which both attorney MTH ($390) and paralegal

SMB ($110) spent time preparing weekly recommendation memoranda for the same week:

| | | | | | |
|---|---|---|---|---|---|
| 4/5/2012 | MTH | Prepare weekly recommendation memos | 0.5 | 390 | 195.00 |
| 4/5/2012 | SMB | Prepare weekly recommendation memorandum | 0.2 | 110 | 22.00 |
| 4/13/2012 | MTH | Prepare weekly recommendation memo and reviewing correspondence from SC to Committee re same | 0.6 | 390 | 234.00 |
| 4/13/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 4/20/2012 | MTH | Prepare weekly recommendation memos; reviewing correspondence from SC to Committee re same | 0.5 | 390 | 195.00 |
| 4/20/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 5/4/2012 | SMB | Prepare weekly recommendation memorandum | 0.2 | 110 | 22.00 |
| 5/4/2012 | MTH | Prepare weekly recommendation memo | 0.5 | 390 | 195.00 |
| 5/18/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 5/18/2012 | MTH | Prepare weekly recommendation memos | 0.8 | 390 | 312.00 |
| 5/25/2012 | MTH | Prepare weekly recommendation memo | 0.7 | 390 | 273.00 |
| 5/25/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 6/8/2012 | MTH | Prepare weekly recommendation memos | 0.5 | 390 | 195.00 |
| 6/8/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 6/14/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 6/15/2012 | MTH | Prepare weekly recommendation memos | 0.5 | 390 | 195.00 |
| 6/29/2012 | SMB | Prepare weekly recommendation memorandum | 0.3 | 110 | 33.00 |
| 6/29/2012 | MTH | Prepare weekly recommendation memos | 0.5 | 390 | 195.00 |
| | | | **7.6** | | **2,264.00** |

We asked Campbell & Levine to explain whether or not attorney MTH and paralegal SMB were

working on the same memoranda and, if so, how they divided their duties on this task so as to avoid

duplication of effort.  Campbell & Levine responded:

> ... Due to the nature of the weekly recommendation memoranda, and the information contained in this response, counsel affirmatively states that this response in no way shall be interpreted as a waiver of the attorney/client privilege and that all such privileges are specifically preserved.

> C&L confirms that both MTH and SMB spent time working on the same weekly recommendation memoranda.  However, the duties that are performed by each are designed to avoid duplication of effort and minimize expense to the estate. The weekly recommendation memoranda track all pending motions, applications, appeals and other matters, including the Plan Confirmation process.  The memoranda include a listing of the matters scheduled to go forward at each omnibus hearing.

With regards to the memoranda, SMB reviews the docket and updates the memoranda with any new filings, responses, objections, CNOs and advises of all pending deadlines. SMB reviews fee applications and provides a brief summary thereof. SMB also reviews the Agendas in order to update the memoranda with the status of matters, whether they have been continued to a future hearing, etc.

MTH reviews the memoranda as initially drafted (and updated) by SMB and will add substantive information for the Committee's review including a summary of the relief requested in pending motions, the status of review by the Committee's professionals, and which of the Committee's professionals are taking the lead in conducting any such review. In consultation with National counsel, MTH will provide recommendations to the Committee on whether the Committee should take a position on pending matters. SMB does not perform these tasks. The memoranda also serves as the primary mechanism for Delaware counsel to track deadlines and for Delaware counsel and National counsel to coordinate the review of pending matters. To keep the Committee updated on the case, the memoranda are sent to the Committee on a weekly basis.

We accept Campbell & Levine's response and have no objection to these fees.

2.    We noted the following time entry which appeared to have been billed to the wrong case:

| 05/18/2012 | SMB | 0.20 | 22.00 | Review March 2012 application of Irell & Manella LLP (.1); update weekly recommendation memorandum (.1) |

In response to our inquiry, Campbell & Levine confirmed that the entry was billed in error and agreed to a reduction of $22.00 in fees.

3.    We noted the following similar time entries:

| 05/23/2012 | SMB | 0.20 | 22.00 | Review January through March 2012 application of Orrick Herrington & Sutcliffe LLP (.1); update weekly recommendation memorandum (.1) |
| 05/31/2012 | SMB | 0.20 | 22.00 | Review January through March 2012 application of Orrick Herrington Sutcliffe LLP (.1); update weekly recommendation memorandum (.1) |

In response to our inquiry, Campbell & Levine confirmed that one of these entries was a duplicate and agreed to a reduction of $22.00 in fees.

# APPENDIX D

## (Charter Oak)

1.      We noted the following time entries for travel from Allentown, Pennsylvania, to New

York City:

| 22-May-12 | BR | One-half of round-trip travel time (6.2 hrs x 1/2) from Allentown, PA to New York, NY for meeting at offices of Caplin & Drysdale | 3.10 | $650 | $2,015.00 |
|---|---|---|---|---|---|
| 18-Jun-12 | BR | One-half of round trip travel time from Allentown, PA to New York City for meeting with Grace management and financial advisors (1/2 x 6.2 hours). | 3.10 | $650 | $2,015.00 |

We further noted that Charter Oak's offices are in Westchester County, New York.  Thus, we asked

Charter Oak to explain what occasioned the travel time from Allentown, Pennsylvania, as well as

why the estate should compensate this time.  Charter Oak provided the following response:

> In response to your initial report ..., I address the questions you raise
> regarding the attendance of Bradley M. Rapp, Senior Managing Director of Charter
> Oak, at the meetings on May 22, 2012, at Caplin & Drysdale, 375 Park Ave., New
> York City, and on June 18, 2012, at The Blackstone Group, 345 Park Ave., New
> York City.

> Although Charter Oak's main office is in Westchester County, New York, the
> firm maintains an office in Allentown, Pennsylvania, where Mr. Rapp resides.  Mr.
> Rapp drove to those meetings as his attendance was important to those proceedings
> which addressed the monetization of certain assets, in excess of $300 million in
> value, to be received by the Asbestos Personal Injury Trust.  Mr. Rapp has over 30
> years of experience in financial advisory matters and his knowledge was very
> valuable at these discussions and negotiations.  Others present at these meetings
> travelled greater distances, to wit: Messrs. Frankel and Wyron, partners of Orrick,
> Herrington & Sutcliffe, counsel to the Future Claimants Representative ("FCR"),
> travelled from their offices in Washington, D.C. to the meeting on May 22, 2012
> with counsel to the Official Committee of Asbestos Personal Injury Claimants
> ("ACC") and their respective financial advisors.  Hudson La Force, Senior Vice
> President and Chief Financial Officer of Grace, and Elyse Filon, Vice President and
> Treasurer of Grace, travelled from their offices in Columbia, Maryland to the
> meeting at Blackstone on June 18, 2012.  These were important meetings addressing
> the monetization mentioned above and required the efforts of the most

knowledgeable and experienced individuals.  The fact that these discussions and negotiations resulted in a successful outcome should justify the compensation by the estate of Mr. Rapp's time and contribution toward arriving at such resolution.

We appreciate Charter Oak's response and understand the importance of Mr. Rapp's attendance at the meeting.  What we were questioning is time spent by Mr. Rapp, in essence, commuting from his home in Allentown, Pennsylvania, when Charter Oak's offices are in Westchester County, New York, as commuting expenses from home to office should be borne by the professional or the firm and not the bankruptcy estate.  However, based upon Charter Oak's representation that it now has an office in Allentown, Pennsylvania, we accept this response and have no objection to these fees.

## APPENDIX E

## (Foley Hoag)

1.       We noted a meal expense of $126.60 on Foley Hoag's June 2012 monthly fee application for a trip to the debtor's Deerfield, Illinois, facility by Jim Flaherty.  In response to our request, Foley Hoag provided the following information concerning this expense:

> 6/18/12 - $5.00 lunch at Logan Airport (Boston) and $68.64 dinner in Deerfield, IL
> 6/19/12 - $15.42 breakfast at hotel in Deerfield, IL and $37.54 dinner at O'Hare Airport (Chicago)

We utilize a per person dinner guideline of $55.00 for Chicago and the surrounding area.  In response to our request, Foley Hoag agreed to a reduction of $13.64 for the $68.64 dinner expense incurred in Deerfield, Illinois, a Chicago suburb.  We appreciate Foley Hoag's cooperation and recommend a reduction of $13.64 in expenses.

# APPENDIX F

## (Kirkland & Ellis)

1.     We noted the following time entry in which the Federal-Mogul case is mentioned:

5/01/2012     Kimberly K Love     0.50     Prepare and organize materials re Federal-Mogul appeal (.5);......

We asked K&E to confirm that this time entry was not billed to the W.R. Grace case in error.  K&E

responded as follows:

> Please allow this letter to confirm that Ms. Love's time entry referencing the Federal-Mogul bankruptcy case is related to the Chapter 11 Cases and is appropriate. Specifically, there were identical insurance related issues raised in both the Federal-Mogul bankruptcy case and the Debtors' Chapter 11 Cases and, therefore, Ms. Love's analysis of the Federal-Mogul bankruptcy case was directly related to the Chapter 11 Cases.

We accept K&E's response and have no objection to these fees.

2.     We noted that on June 19, 2012, and June 22, 2012, attorneys Katherine Deibert

($575), Scott J Gordon ($940), Jeffrey Gettleman ($795), Adam C Paul ($835), and Dennis M

Myers, P.C. ($995) participated in conference calls concerning Project Green.  The total time spent

was 22.60 hours, and total fees of $18,806.00 were billed.  See Appendix F-1.   Paragraph II.D.5.

of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm

attends a hearing or conference, the applicant should explain the need for multiple attendees."  We

asked K&E to explain why it was necessary for each attorney to be present on these calls, and K&E

provided the following response:

> Project Green involved a possible hedging transaction that was highly complex and raised myriad legal issues across multiple practice areas.  In order to address these issues in the most efficient manner possible, it was necessary to have multiple lawyers on certain calls.  Specifically, Mr. Myers and Ms. Deibert focused on the capital markets and transactional areas of the transaction, Mr. Gordon focused on the legal issues raised by the derivative nature of the transaction, and Messrs. Paul and Gettleman addressed any bankruptcy related issues that arose, especially in connection with actually obtaining court approval for the proposed transaction, with

Mr. Gettleman as the primary lawyer tasked with drafting the necessary papers seeking court approval.  Given the complex and multidisciplinary nature of the proposed transaction, we believe it was both necessary and efficient to have all of the foregoing professionals to attend certain teleconferences related to the proposed transaction.

We accept K&E's response and have no objection to these fees.

3.    We noted total Computer Database Research charges of $15,355.81 for Westlaw and Lexis research.  We asked K&E to confirm that these charges were billed at the firm's cost without any mark-up, and K&E confirmed that "there was no mark up related to such charges" and that "such charges were billed at the cost to K&E."  We appreciate K&E's response and have no objection to these expenses.

**Appendix F-1**

| 6/19/2012 | Katherine Deibert | 2.20 | 1,265.00 | Telephone conference with working group and client re Project Green. |
|---|---|---|---|---|
| 6/19/2012 | Scott J Gordon | 2.20 | 2,068.00 | Telephone conference with working group and client re Project Green (2.2);.... |
| 6/19/2012 | Jeffrey Gettleman | 2.60 | 2,067.00 | ........; telephone and office conferences with working group re upcoming Project Green telephone conference (.7); review and analyze term sheet re same (.4); telephone conference with working group and client re Project Green strategy and mechanics (2.6);..... |
| 6/19/2012 | Adam C Paul | 3.80 | 3,173.00 | ........; telephone conference with Goldman Sachs re Project Green (2.7); prepare for same (1.1). |
| 6/19/2012 | Dennis M Myers | 3.10 | 3,084.50 | Review and analyze Project Green materials (.9); telephone conference with working group re same (2.2). |
| 6/22/2012 | Katherine Deibert | 1.40 | 805.00 | Telephone conference with working group re master confirmation (1.4);....... |
| 6/22/2012 | Scott J Gordon | 1.60 | 1,504.00 | Telephone conference with working group re Project Green confirmation (1.6);..... |
| 6/22/2012 | Jeffrey Gettleman | 2.40 | 1,908.00 | ......; telephone conferences with working group re Project Green (2.4);....... |
| 6/22/2012 | Adam C Paul | 2.20 | 1,837.00 | Telephone conference with Goldman Sachs and client re Goldman transaction (1.3); prepare for same (.9);..... |
| 6/22/2012 | Dennis M Myers | 1.10 | 1,094.50 | Telephone conferences with working group re proposed transaction (1.1);..... |

## APPENDIX G

### (Lauzon Bélanger)

1.    We noted that Lauzon Bélanger, a Canadian firm, was charging Goods and Services Tax (GST), as well as Quebec Sales Tax (QST), and that the QST was calculated, not only on the amount billed by Lauzon Bélanger for its services but also on the amount of GST it was charging. Because this appeared to be a tax on a tax, we asked Lauzon Bélanger to confirm that the QST was calculated correctly.  Through its local counsel, Lauzon Bélanger responded as follows:

> We have reviewed the website that was provided to us by Lauzon Bélanger Lespérance and found that QST actually is tax on tax.
>
> **QST and GST/HST**
> The most common consumption taxes encountered by Québec residents are
> • the goods and services tax (GST), which is calculated at a rate of 5% on the selling price;
> • the Québec sales tax (QST), which is calculated at a rate of 9.5% on the selling price ***plus GST.*** [emphasis added]
> The harmonized sales tax (HST) replaces the provincial sales tax and the GST in some provinces.
> Under an agreement between the federal and Québec governments, Revenu Québec is responsible for administering the GST/HST in Québec.
> Consequently, Revenu Québec receives and processes the applications for GST/HST registration of all persons carrying on a commercial activity in Québec.
>
> The web site is as follows :
> http://www.revenuquebec.ca/en/entreprise/taxes/tvq_tps/default.aspx

We appreciate this explanation and thus have no objection to these expenses.

2.    We noted the following time entries which referenced fee payments received from W.R. Grace:

| 2012-05-30 | CH | Email to Karen Harvey re: payment from WR Grace | 0.25 | 285.00 | 71.25 |
| 2012-05-30 | CH | Email from Karen Harvey re: payment from WR Grace | 0.25 | 285.00 | 71.25 |

These time entries appeared to be administrative in nature and therefore the cost of doing

business.  We asked Lauzon Bélanger to explain why the estate should compensate these fees,

and Lauzon Bélanger responded as follows:

> The time entries are directly related to the preparation of fee applications and not administrative or the cost of doing business.   It is necessary for communication between LBL and THF regarding payments they receive from WR Grace in our preparation of their fee applications.   The entries in question should specifically read as follows:

| 2012-05-30 | CH | Email to Karen Harvey re: transmitting payment information for LBL's January and February fee applications for use in preparation of applications | 0.25 | 285.00 | 71.25 |
| 2012-05-30 | CH | Email from Karen Harvey re: payment from WR Grace for utilization in preparation of fee applications. | 0.25 | 285.00 | 71.25 |

We accept Lauzon Bélanger's response and have no objection to these fees.

## APPENDIX H

### (Lincoln Partners)

1.        We noted an air fare charge of $3,611.00 for which more information was needed.

In response to our request, Lincoln Partners provided the following explanation:

> With regards to your question regarding the air fare charges in the June 2012 monthly fee application, these charges represent air fare for Joseph Radecki, Jason Solganick, Claire Burke and Benji Fischer for attendance at a meeting in Washington DC with the FCR concerning an update for the FCR of Grace's financial performance and a discussion of case status.  The breakdown is as follows:
>
> Joe Radecki - $644.60; Round trip, coach class fare on June 14, 2012 on American Airlines between La Guardia (New York) and DC National (Washington DC)
>
> Jason Solganick - $914.60; Round trip, coach class fare on June 14, 2012 on American Airlines between La Guardia (New York) and DC National (Washington DC)
>
> Benji Fischer - $914.60; Round trip, coach class fare on June 14, 2012 on American Airlines between La Guardia (New York) and DC National (Washington DC)
>
> Claire Burke - $1,137.20; Round trip, coach class fare on American Airlines between LAX (Los Angeles) and DC National (Washington DC); The flight from LA to DC was on 6/13/12 and the return flight was on 6/14/12.

Based upon our research of comparable fares, we accept Lincoln Partners' response and have no objection to these expenses.

# APPENDIX I

## (Orrick)

1.      We noted that the expense detail was missing from Orrick's Application.  Orrick supplied its expense detail in response to our request.  See <u>Appendix I-1</u>.  Our questions concerning Orrick's expenses are addressed in paragraphs 3 through 5.

2.      We noted the following time entry pertaining to the receipt of payments from W. R. Grace:

| 05/07/12 | D. Fullem | Review and respond to e-mail from accounting regarding status/timing of payments due from Grace. | 0.30 |
|---|---|---|---|

It appeared to us that this work pertains to the firm's bookkeeping and is therefore the cost of doing business.  We asked Orrick to explain why the bankruptcy estate should be charged for this work, and Orrick responded: "Orrick has reviewed the time entry dated May 7, 2012 by Debra Fullem in the amount of .30 hours.  In order to avoid further fees on this issue, Orrick agrees to the reduction of fees by $81.00 for this time entry."  We appreciate Orrick's response and recommend a reduction of $81.00 in fees.

3.      We noted the following meal charge for which more information was needed:

| 5/7/2012 | Wyron, Richard | TRVML | $61.59 | Vendor: Wyron, Richard H.; Invoice#: 050912; Date: 5/14/2012 - dc/dd/#151455/myp- phila for hearing, 5/7-8/12 |
|---|---|---|---|---|

In response to our request, Orrick provided the following information:

> 5/7/12 – Total Expense of $61.59 – representing the following business meals for Richard Wyron and Roger Frankel in Philadelphia, PA
>
> a.   Lunch on 5/7 - $13.49 (Mr. Wyron);
> b.   Lunch on 5/8 - $10.78 (Mr. Wyron); and
> c.   Breakfast on 5/8 - $37.32 (Mr. Frankel and Mr. Wyron)

We accept Orrick's response and have no objection to these expenses.

    4.    We noted the following travel expenses for which more information was needed:

| 5/7/2012 | Wyron, Richard | LTRV | $230.00 | Vendor: Wyron, Richard H.; Invoice#: 050912; Date: 5/14/2012 - dc/dd/#151455/myp - Phila for hearing, 5/7-8/12 |
|---|---|---|---|---|
| 5/7/2012 | Wyron, Richard | TRV | $558.84 | Vendor: Wyron, Richard H.; Invoice#: 050912; Date: 5/14/2012 - dc/dd/#151455/myp - Phila for hearing, 5/7-8/12 |
| 5/22/2012 | Wyron, Richard | LTRV | $728.73 | Vendor: Wyron, Richard H.; Invoice#: 052912; Date: 5/31/2012 - dc/dd/#15230/myp - ny for mtg w/ Acc, 5/22/12 |
| 5/7/2012 | Frankel, Roger | TRV | $558.84 | Vendor: Frankel, Roger; Invoice#: 053112A; Date: 6/14/2012 - dc/dd/#153131/myp - attd hearing before Judge Buckwalter in USDC- Phila 5/7-8/12 |
| 5/7/2012 | Frankel, Roger | LTRV | $359.00 | Vendor: Frankel, Roger; Invoice#: 053112A; Date: 6/14/2012 - dc/dd/#153131/myp - attd hearing before Judge Buckwalter in USDC- Phila 5/7-8/12 |

In response to our request, Orrick provided the following information:

    The requested additional details for travel expenses are:

    a.    5/07/12 - $230.00 - Richard Wyron's travel charge for business class,[30] round-trip, train fare from Union Station, Washington, DC to Philadelphia, PA

    b.    5/07/12 - $558.84 - Richard Wyron's travel charge for one-night stay at the Palomar Hotel in Philadelphia, PA (room rate is $485.10)

    c.    5/07/12 - $359.00 - Roger Frankel's travel charge for business class, round-

---

[30]As you may know, Amtrak has two classes of service on its Acela trains in the Northeast Corridor – "Business" and "First Class." The references in this item to business class are to the lower class of service on Amtrak Acela trains.

trip, train fare from Union Station, Washington, DC to Philadelphia, PA ($297 round-trip plus $62 in change fees due to schedule adjustment)

d.    5/07/12 - $558.84 - Roger Frankel's travel charge for one-night stay at the Palomar Hotel in Philadelphia, PA (room rate is $485.10)

e.    5/22/12 - $728.73 - Richard Wyron's travel charge for the following:

i.    Round-trip, train fare from BWI Baltimore, MD to Penn Station New York, NY in the amount of $674.00 ($337 each way);

ii.    Mileage for car travel of $47.73; and

iii.    Tips of $7.00

Note:    Orrick will reduce the train fare for this trip by $210 to $464, reflecting a reduction from first class fares ($337 each way) to business class fares ($232 each way) for the round-trip.

We appreciate Orrick's response and, consistent with same, recommend a reduction for the first class train fare of $210.00 in expenses.[31]

5.    We noted the following air fare charge for which more information was needed:

| 5/2/2012 | Wyron, Richard | AIR | $384.51 | Vendor: American Express; Invoice#: 0522512A; Date: 5/25/2012 - Firm/#153029/MYP - Lawyers Travel Charge Acct 3XXX-X708-11008- |
| --- | --- | --- | --- | --- |

In response to our request, Orrick provided the following information concerning this charge:

5/02/12 - $384.51 – Richard Wyron's travel charge for coach class, round-trip, air fare from Washington National Airport, DC to Laguardia Airport, NY

We accept Orrick's response and have no objection to this expense.

---

[31]We have no objection to any of the other travel expenses noted. The $485.10 room rates for both of the hotel charges exceed our $325 nightly trigger rate for Philadelphia. However, we note that the Hotel Palomar at which the professionals stayed is rated four stars on the Expedia travel website, and therefore we do not consider it to be a luxury hotel.

# APPENDIX J

## (PwC)

      1.      We noted the following dinner charge for three people which appeared excessive:

| | | | |
|---|---|---|---|
| Jody B. Underhill | $316.24 | 18-Apr | Dinner for L. Paider (WRG), E. Sama and myself to discuss her new role with WR Grace and various tax projects |

We asked PwC for additional information, and PwC advised that the charge was incurred in Boca Raton, Florida.  It appears to us that one person can dine satisfactorily in most locales, including Boca Raton, for $50 for dinner.  Thus, we asked PwC if it would accept a reduced reimbursement for this charge, and PwC agreed.  Thus, we recommend a reduction of $166.24 in expenses.

      2.      We noted the following car rental charges which appeared to be for the same trip:

| | | | |
|---|---|---|---|
| Jody B. Underhill | $169.77 | 20-Jun | Hertz Rental car for period of 6/18-6/20 |
| Katherine Matheson | $196.43 | 19-Jun | Hertz Rental car charges while in Boca Raton – Tax Planning Meeting |

We asked PwC why it was necessary to rent two cars, and PwC responded:

> Both Jody and Katherine were coming to Boca Raton from different cities, on different flights, and at different times.  Jody was flying in from Tampa, FL and Katherine was flying in from Washington, DC.  Both Jody and Katherine also had flights home, which were leaving at different times.  As the airport is approximately 40 minutes from ... Grace ... taking a taxi from the airport to the office did not seem reasonable.

We accept PwC's response and have no objection to these expenses.

**APPENDIX K**

**(Alan Rich)**

1.      We noted a hotel expense dated May 8, 2012, for $483.84 for a hotel stay in Philadelphia.  Our trigger rate for Philadelphia is $325.00 per night, exclusive of taxes.  In response to our request,  Mr. Rich provided the receipt for this expense which we have attached as <u>Appendix K-1</u>.  We note that the room rate portion of the charge was $420.00.  However, the expense was incurred at the Rittenhouse Hotel which is rated four stars on the Expedia travel website and, therefore, not considered by us to be a luxury hotel.  Thus, we have no objection to this expense.

**APPENDIX L**

**(Judge Sanders)**

1.        We noted a hotel expense of $419.48 on the May 2012 invoice for Judge Sanders'

trip to Philadelphia.  We asked for additional information concerning this charge, and Judge Sanders,

through counsel, provided us with a copy of the itemized receipt.  *See* <u>Appendix L-1</u>.  We note from

the receipt that the nightly room rate, sans taxes, was $335.00.  This slightly exceeds our $325.00

nightly trigger rate for Philadelphia.  However, because we do not consider the Rittenhouse Hotel

to be a luxury hotel,[32] we have no objection to this expense.

---

[32]It is rated four stars on the Expedia travel website.

# APPENDIX M

## (Scarfone Hawkins)

1.      We noted the following time entries in the May and June 2012 monthly fee applications which lacked adequate detail[33]:

| Date | Professional Service | Lawyer | Rate/Hr | Hours | Amount |
|------|---------------------|--------|---------|-------|--------|
| 5/9/2012 | receipt Karen Harvey email | DT | $525 | 0.10 | $52.50 |
| 5/14/2012 | receipt Lauren Campbell emails, memo to Cindy Yates | DT | $525 | 0.25 | $131.25 |
| 5/24/2012 | receipt Lauren Campbell email | DT | $525 | 0.10 | $52.50 |
| 6/1/2012 | receipt Karen Harvey emails and follow-ups | DT | $525 | 0.25 | $131.25 |
| 6/19/2012 | receipt Careen Hannouche letter, review Dan Hogan account, etc., memo to Matt Moloci, memo to Cindy Yates, letter to Careen Hannouche | DT | $525 | 0.35 | $183.75 |
| 6/21/2012 | emails to and from Lauren Campbell, Karen Harvey and Dan Hogan re status | DT | $525 | 0.25 | $131.25 |
| 6/22/2012 | emails to and from Lauren Campbell regarding status of matters | DT | $525 | 0.10 | $52.50 |
| 6/29/2012 | emails to and from Lauren Campbell | DT | $525 | 0.10 | $52.50 |

We asked Scarfone Hawkins to provide the subject matter of these emails.  Scarfone Hawkins provided the supplemented time entries attached as Appendix M-1 and stated as follows:

> The following time entries, ... are for time expended to facilitate The Hogan Firm in its preparation of the monthly and quarterly fee applications for Scarfone Hawkins. Accordingly, the following table has been revised to include the "Subject Matter of Communication" at the Fee Auditor's request.

With regard to the time entry dated 6/19/2012, Scarfone Hawkins stated as follows:

> The following time entry,... was for services performed during the ordinary course of business for Scarfone Hawkins LLP, therefore, Scarfone Hawkins agrees to the deduction of same.

---

[33]According to Del. Bankr. L.R. 2016-2(d)(v) and (vi): "Each activity description shall include the type of activity (e.g., phone call, research)..." and "the subject matter (e.g., exclusivity motion, section 341 meeting);...."  Similarly, Paragraph II.D.5. of the U.S. Trustee Guidelines provides in part: "Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to *and the nature of the communication*...."

| 6/19/2012 | receipt Careen Hannouche letter, review Dan Hogan account, etc., memo to Matt Moloci, memo to Cindy Yates, letter to Careen Hannouche | DT | $525 | 0.35 | $183.75 |

We have reviewed the supplemented time entries listed on <u>Appendix M-1</u> and accept Scarfone Hawkins' response regarding same.  We appreciate Scarfone Hawkins' proffered reduction of $183.75 for the foregoing time entry and, accordingly, recommend a reduction of $183.75 in expenses.

## APPENDIX N

### (Steptoe & Johnson)

1.      We noted that between April 6, 2012, and April 11, 2012, attorneys MDL ($895) and DKM ($385) spent 22.90 hours for fees of $13,304.50 on preparation of a memorandum pertaining to documentary privilege.

| | | | |
|---|---|---|---|
| 4/6/12 | DKM | 1.50 | Revise memorandum on evidentiary privilege. |
| 4/6/12 | MDL | 4.30 | Complete memo re privileges and document retention. |
| 4/7/12 | DKM | 4.00 | Draft and revise memorandum on evidentiary privilege. |
| 4/9/12 | MDL | 0.50 | Work on privilege memo. |
| 4/10/12 | DKM | 4.60 | Revise memorandum re: documentary privilege. |
| 4/10/12 | MDL | 2.50 | Edit and augment memo re privilege and document management. |
| 4/11/12 | DKM | 4.00 | Revise memorandum re: documentary privilege. |
| 4/11/12 | MDL | 1.50 | Final edits to Privilege memo. |

We asked Steptoe & Johnson to explain why this memorandum required so much time to complete, as well as how it was utilized for the benefit of the estate.  Steptoe & Johnson responded:

> You have asked us to provide a brief summary of the contents and significance of a memorandum we prepared in April 2012 for W. R. Grace.  That memo responded to a request for an overview of the evidentiary privileges that may apply with respect to documents requested by the Internal Revenue Service, the basic obligations imposed on companies when responding to IRS requests for documents and important concepts relating to document management.

> W.R. Grace wanted a full understanding of these concepts to be certain it complies with its discovery obligations and to avoid the potentially serious problems that can arise when these rules are not followed.  In considering transactions with tax implications, preparing for audits, and responding to IDRs, it is important for a corporation to be mindful of protecting evidentiary privileges and of the obligation to preserve, retain and produce responsive, relevant materials to avoid sanctions and possible prosecution.

We accept Steptoe & Johnson's response and have no objection to these fees.

## APPENDIX O

### (Stroock)

1.      We noted the following hotel expense for which more information was needed:

05/16/2012      386.32      Vendor(ee): K Pasquale: 05/07/12 – 05/08/12; Date: 05-16-2012; Court hearing in Philadelphia, PA

In response to our request, Stroock provided the following information:

Mr. Pasquale's hotel expense is for his stay at the Sheraton Society Hill Hotel in Philadelphia, arriving on May 7, 2012 and departing on May 8, 2012.  The following amounts comprise the total $386.32 bill:
- Room charge - $251.10;
- Internet service for the room - $9.95;
- Taxes - $38.17;
- Food - $45.10;[34] and
- Parking - $42.00

We accept Stroock's response[35] and have no objection to this expense.

---

[34]Stroock confirmed that the $45.10 food charge was for dinner.

[35]The room rate in this instance did not exceed our trigger rate of $325.00, exclusive of taxes, for Philadelphia.