IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) ) (Jointly Administered) |
| Debtors. | ) ) Hearing Date: January 28, 2013, at 9:00 a.m. ) Objection Deadline: January 11, 2013 ) |

### MOTION FOR AN ORDER AUTHORIZING THIRD AMENDMENT TO POST-PETITION LETTER OF CREDIT FACILITY AGREEMENT

The Debtors request entry of an order substantially in the form attached hereto as Exhibit I (the "Order") authorizing them but not requiring them to:

(i) Enter into the *Third Amendment to Post-Petition Letter of Credit Facility Agreement* (the "Third L/C Facility Amendment") in substantially the form attached to the Order as Exhibit A extending the Stated Termination Date of their letter of credit facility from March 1, 2013, to the earlier of June 30, 2014, or the Debtors' emergence from their chapter 11 cases; and

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

(ii) Pay an "Amendment Fee" of $200,000 pursuant to the terms of the Third L/C Facility Amendment.[2]

In support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are sections 363(b) and 364 of the Bankruptcy Code.

## BACKGROUND

3. On February 16, 2010, the Court entered the L/C Facility Order, which authorized the Debtors, among other things, to enter into the Facility Agreement. The Facility Agreement provides for a letter of credit facility (the "L/C Facility") in the amount of $100 million (the "Total Facility"). The L/C Facility enables the Debtors to provide letters of credit to counterparties on an as-needed basis during the ordinary course of their business operations. The Facility Agreement's Stated Termination Date was March 1, 2011.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the *Motion of Debtors for Authority to Enter into Letter of Credit and Hedging Agreements and Terminate Current DIP Facilities* [Docket no. 24156] (the "L/C Facility Motion"), the *Final Order Authorizing Secured Post-Petition Letter of Credit Facility and Hedging and Swap Arrangements on a Super-Priority Basis Pursuant to 11 U.S.C. § 364, and Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362* [Docket no. 24303] (the "L/C Facility Order"), the *Post-Petition Letter of Credit Facility Agreement, dated as of March 2, 2010, between the Financial Institutions from Time to Time Party Hereto, as Letter of Credit Issuers, Bank of America, N.A., as the Agent, and W. R. Grace-Conn., as the Account Party* (the "Facility Agreement"), the *Final Order Authorizing First Amendment to Post-Petition Letter of Credit Facility Agreement* (the "First L/C Facility Amendment Order") [Docket no. 26201], the *First Amendment to Post-Petition Letter of Credit Facility Agreement* (the "First L/C Facility Amendment"), *Second Amendment to Post-Petition Letter of Credit Facility Agreement* (the "Second L/C Facility Amendment"), the *Final Order Authorizing Second Amendment to Post-Petition Letter of Credit Facility Agreement* [Docket no. 28380] (the "Second L/C Facility Amendment Order"), the Third L/C Facility Amendment or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases* [Docket no. 25881], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

4. On February 4, 2011, the Court entered the First L/C Facility Amendment Order, approving the First L/C Facility Amendment, which upon payment of an amendment fee of $250,000, extended the Stated Termination Date through March 1, 2012, and provided the Debtors with an option to increase the Total Facility from $100 million to $120 million upon payment of an increase fee of $50,000.

5. On January 18, 2012, the Court entered the Second L/C Facility Amendment Order, approving the Second L/C Facility Amendment, which eliminated the option to increase the Total Facility, and upon payment of an amendment fee of $250,000, extended the Stated Termination Date through March 1, 2013.

6. The L/C Facility has enabled the Debtors to provide letters of credit to counterparties on an as-needed basis during the ordinary course of their business operations pending their emergence from chapter 11.

7. While it is possible, the Debtors do not anticipate emerging from their chapter 11 cases and entering into exit financing prior to the March 1, 2013, Stated Termination Date. They have therefore negotiated and agreed with Bank of America, N.A. (the "Agent") an extension of the Stated Termination Date until the earlier of June 30, 2014, or the Debtors' emergence from their chapter 11 cases, on the terms and conditions set forth in the Third L/C Facility Amendment. The Debtors believe that the extended nature of this new Stated Termination Date will permit them to exit their chapter 11 cases before it would become necessary to once again extend the L/C Facility's term.

8. The Third L/C Facility Amendment requires the Debtors to pay an Amendment Fee of $200,000, which is $50,000 less than the amendment fees for the First L/C Facility Amendment and the Second L/C Facility Amendment. The Debtors submit that, under the

circumstances of these chapter 11 cases, the Facility Fee is a fair and reasonable fee for extending the L/C Facility's term until the earlier of June 30, 2014, or the Debtors' emergence.[3]

9. In addition to requiring payment of the Facility Fee, the Agent and the L/C Issuers will extend the Stated Termination Date *only if* the L/C Facility's cash collateral security arrangements, which are summarized in the L/C Facility Motion and documented more fully in the L/C Facility Order and the Facility Agreement, continue to secure obligations under the Total Facility.

10. The Debtors have negotiated the Third L/C Facility Amendment with the Agent at arm's length and in "good faith," as Bankruptcy Code section 364(e) defines that term. Experienced counsel represented both the Agent and the Debtors. Entering into the Third L/C Facility Amendment is in the best interests of the Debtors' estates, because the Debtors need a letter of credit facility to conduct their daily business operations efficiently and effectively. It is a reality of modern commerce that many business counterparties demand letters of credit to secure trade and similar obligations. There are no commercially practical alternatives to the Debtors entering into some sort of letter of credit facility, and were the Debtors to allow this L/C Facility to expire without it being renewed or replaced, the Debtors' business operations could face considerable—and entirely unnecessary—disruption.

## RELIEF REQUESTED

11. By this Motion, the Debtors seek authority pursuant to sections 363(b) and 364 of the Bankruptcy Code to enter into the Third L/C Facility Amendment, pay the Facility Fee and consummate the transactions contemplated thereby.

---

[3] A summary of the relevant terms of the L/C Facility, as documented in the Facility Agreement, may be found in the L/C Facility Motion.

## ANALYSIS

### *The L/C Facility Amendment Is Proper Under Section 364*

12. Courts have articulated a three-part test to determine whether a debtor is entitled to obtain secured financing under section 364(c) of the Bankruptcy Code:

> (i) The debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim;
> (ii) The credit transaction is necessary to preserve the assets of the estate; and
> (iii) The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

13. The Debtors submit that, for the reasons discussed above and in the L/C Facility Motion, the Third L/C Facility Amendment meets each of these requirements of section 364(c). Moreover, for the reasons set forth above and in the L/C Facility Motion, the Debtors have properly exercised their sound business judgment in entering into the Third L/C Facility Amendment. *See, e.g., In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest."); *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (debtor exercised "sound and prudent business judgment" in entering into post-petition financing).

### *Payment of the Facility Fee Is a Proper Use of Estate Property Under 363(b).*

14. Section 363(b) of the Bankruptcy Code permits bankruptcy courts to authorize debtors to use estate property to pay fees such as the Amendment Fee. *See, e.g., In re Tropicana Entm't, LLC*, No. 08-10856 (KJC) (Bankr. D. Del. Feb. 23, 2010) [Docket no. 2752] (order

authorizing debtors to enter into amendment to debtor-in-possession credit agreement and to pay related amendment fees); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y Jan. 8, 2009, and March 12, 2009); *In re Delphi Corporation*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 16, 2007) (delay in exiting bankruptcy due to deteriorating commercial credit markets; secured lenders required extension fees and increase in applicable interest rates); *In re Tower Automotive, Inc.*, No. 05-10578 (ALG) (Bankr. S.D.N.Y. Jan. 31, 2007) (delay in exiting bankruptcy due to deteriorating domestic automobile manufacturing output; secured lenders required extension fees and increase in applicable interest rates); *see also In re Dura Automotive Systems, Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. June 28, 2007); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. March 5, 2007). Bankruptcy courts have generally approved such use of estate property out of the ordinary course of business when there is a sound business justification for the proposed transaction. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (acknowledging the use of the "articulated business justification" for the use of property under section 363).

15. A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d at 1071. Once a debtor articulates a valid business justification, however, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith*

*v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule therefore shields a debtor's management from judicial second-guessing. A court should approve a debtor's business decision unless that decision is a product of bad faith or gross abuse of discretion. *See id.*; *see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

16. The Debtors have a sound business purpose in paying the Amendment Fee of $200,000. The Agent and the L/C Issuers would not enter into the Third L/C Facility Amendment without being paid the fee. Moreover, there is no practical alternative to extending the L/C Facility until the earlier of the Debtors' emergence from chapter 11 or June 30, 2014, whether in terms of seeking a facility from a different issuer or simply allowing this L/C Facility to expire. Entering into the Third L/C Facility Amendment thus benefits the Debtors and their estates, and it also avoids potential disruption to the Debtors' business operations.

17. The Debtors submit that, for the reasons set forth above, the relief requested herein is an appropriate exercise of their business judgment and will inure to the benefit of the Debtors' estates. The Debtors therefore respectfully request the Court enter the Order substantially in the form attached hereto as <u>Exhibit I</u>.

## NO PREVIOUS MOTION

18. No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

19. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these chapter 11 cases; (v) counsel to the Asbestos Personal Injury and

Asbestos Property Damage Future Claimants' Representatives; and (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request that the Court enter the Order (a) authorizing the Debtors to enter into the Third L/C Facility Amendment and pay the Amendment Fee; and (b) granting such other relief as may be appropriate.

Dated: December 20, 2012

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession