| DATE OF SERVICE OF CLAIM SETTLEMENT NOTICE: | FEBRUARY 13, 2013 |
|---|---|
| OPPOSITION/RESPONSE DUE: | MARCH 5, 2013 |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| In re: | ) Chapter 11 |
|---|---|
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

## NOTICE OF SETTLEMENT OF CLAIM ASSERTED PURSUANT TO THE EPA SETTLEMENT AGREEMENT REGARDING THE NASHVILLE, TENNESSEE SITE

THIS AMENDED NOTICE (THE "CLAIM SETTLEMENT NOTICE") IS PROVIDED TO YOU PURSUANT TO THAT CERTAIN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (THE "BANKRUPTCY COURT") *AUTHORIZING AND APPROVING AN OMNIBUS PROCEDURE FOR SETTLING CERTAIN CLAIMS AND CAUSES OF ACTION BROUGHT BY OR AGAINST THE DEBTORS IN A JUDICIAL, ADMINISTRATIVE, ARBITRAL OR OTHER ACTION OR PROCEEDING* [DOCKET NO. 936] (THE "OMNIBUS SETTLEMENT PROCEDURES ORDER"). YOU MUST ADHERE TO THE TERMS OF THIS CLAIM SETTLEMENT NOTICE IN ORDER

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

DOCS_DE:185826.1 91100/001

TO PROTECT YOUR RIGHTS.  PLEASE READ THE FOLLOWING PROCEDURES CAREFULLY.[2]

Pursuant to the Court Order, the Debtors must provide notice to the Negative Notice Parties (as defined herein) of any settlement with a value that equals or exceeds $50,000, but does not exceed $1,000,000. Such notice must include the terms of the settlement and the Debtors' basis for belief that each settlement is fair and reasonable. Pursuant to the terms of the Court Order, if the terms set forth in this Claim Settlement Notice are not objected to in writing by any of the Negative Notice Parties within twenty (20) days after the date of transmittal of such written notice, the Debtors may enter into, execute and consummate a written agreement of settlement that will be binding on them and their estates three (3) days after the submission to the Bankruptcy Court by the Debtors of a certificate of no objection with respect to such settlements. **In no event, however, will a settlement executed by the Debtors in accordance with the Court Order provide for any monetary payments to be made by the Debtors from property of their estates to or on behalf of a settling party on account of any claims owing or arising prior to April 2, 2001, the date the Debtors filed their petitions for relief under title 11 of the United States Code.** Such claims shall be satisfied in accordance with such further orders of the Bankruptcy Court or in accordance with the Debtors' plan of reorganization.

If you oppose the settlement of the Claims (as defined below) on the terms set forth herein, you must follow the procedures delineated below. Please note that objections, oppositions or comments to the procedures set forth herein shall not be deemed an objection to the settlement of the Claim and will, therefore, not be considered.

*Summary of Terms of Settlement*

The settlement documented by the *Administrative Settlement Agreement and Order on Consent for Removal Action in the Matter of Vermiculite Exfoliation Site GAO 149, Nashville, Davidson County, Tennessee*, executed as of February 12, 2013, attached hereto as Exhibit A (the "Nashville Settlement Agreement"), concerns a site at 4061 Powell Avenue, Nashville, Davidson County, Tennessee (the "Nashville Site"), which comprises approximately 1.5 acres. The Nashville Site is being treated as an Additional Site, as that term is defined in the *Order Authorizing EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters* (Docket no. 18847) (the "EPA Settlement Agreement Order").

The Nashville Site is the location of a former vermiculite exfoliation plant that, commencing in 1963, Grace operated for more than 20 years before closing it in 1989.

In February 2010, EPA collected outdoor air and soil samples at the Site, which were analyzed for the presence of asbestos based upon EPA's national framework for evaluating asbestos at Superfund sites. In March 2011, EPA conducted further testing. Asbestos was found in the soil.

---

[2]  Capitalized terms not defined in this Stipulation shall have the meanings ascribed to them, as the case may be, in the Settlement Agreement, the EPA Settlement Agreement Order, the Omnibus Settlement Procedures Order or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases,* Docket no. 25881, as it may be further amended, supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

EPA Region 4 subsequently notified Grace of its status as a potentially responsible party for the Nashville Site and for any and all other claims, liabilities or obligations of the Debtors to the Claimant related thereto that may arise under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6873. The EPA also notified the Debtors that it considered the Nashville Site to be an Additional Site.

The Debtors and the EPA have since cooperated in preparing the Settlement Agreement. The Nashville Settlement Agreement anticipates that the Debtors will perform such removal actions on the terms specified therein, commencing on the Nashville Settlement Agreement's effective date, which is three (3) days after Grace files a certificate of no objection to the Claims Settlement Notice, *provided, however*, that if an objection to the proposed settlement is made, then the Effective Date of the Nashville Settlement Agreement shall be the date on which an order entered by the Bankruptcy Court approving the Nashville Settlement Agreement becomes final and nonappealable.

The Debtors and the EPA now desire, without any admission of fact, law or liability, to proceed with a remedy for environmental remediation of the Nashville Site and resolve the EPA's claims and demands relating to the Nashville Site as described in more detail below. The Nashville Settlement Agreement specifically resolves: (a) the EPA's claims for the Nashville Site as an Additional Site under the EPA Settlement Agreement; and (b) the demands for performance of the proposed Work as set forth in the Nashville Settlement Agreement.

In particular, the Nashville Settlement Agreement requires the Debtors to perform and manage removal activities at the Nashville Site based on parameters defined in the Nashville Settlement Agreement. The Nashville Settlement Agreement calls for, among other things, excavation and removal of asbestos-containing soils at the Nashville Site with disposal offsite at an approved facility.

The EPA estimates that it will cost approximately $1.2 million to perform the remedial actions at the Nashville Site contemplated by the Nashville Settlement Agreement. The Debtors estimate that they will be able to perform the work for approximately $500,000.

The Debtors have also agreed under the Settlement Agreement to pay $159,757.36 to the EPA for the EPA's Past Response Costs incurred through December 6, 2012. Consistent with the EPA Settlement Agreement, the Debtors' obligation to pay the EPA's Past Response Costs is in the form of an Allowed General Unsecured Claim, as the Plan defines that term (the "Nashville Allowed Past Response Costs Claim"). The Debtors shall pay the Nashville Allowed Past Response Costs Claim within thirty (30) days after the Plan's Effective Date in the same manner as all other Allowed General Unsecured Claims. Interest on Past Response Costs shall commence accruing thirty (30) days after the Nashville Settlement Agreement's Effective Date at the rate established by 26 U.S.C. § 9507.

The Nashville Settlement Agreement further provides that the Debtors will pay EPA's Future Response Costs (which, as the Nashville Settlement Agreement defines that term, includes all direct and indirect costs incurred by EPA that are not included in the EPA's Past Response Costs). The Debtors shall pay such Future Response Costs on the later of thirty (30) days of receipt of a bill for such Future Response Costs or thirty (30) days after the Plan's

Effective Date. To the extent that the Debtors do not timely pay Future Response Costs, interest shall begin accruing at the rate established by 26 U.S.C. § 9507 on the later of thirty (30) days after the date of receipt of the bill or thirty (30) days after the Plan's Effective Date, and such interest shall continue to accrue until the date of payment.

In return for the obligations to be assumed by the Debtors under the Nashville Settlement Agreement, the United States will provide the Debtors with a covenant not to sue for matters addressed under the Nashville Settlement Agreement. Additionally, and also pursuant to the terms of the Nashville Settlement Agreement and the EPA Settlement Agreement, once the EPA issues a Notice of Completion of Work and the Debtors pay all Response Costs and other amounts required to be paid under the Nashville Settlement Agreement, the Nashville Site removal action will be considered a general unsecured claim that has been liquidated in the amount of $0, and to which the Bankruptcy Code section 1141 discharge will apply (the "Nashville Site Claim").

For the foregoing reasons, the Debtors believe that the Nashville Settlement Agreement represents a reasonable settlement of the Nashville Site Claim. The Nashville Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estates, and their creditors. The Nashville Settlement Agreement is also in the public interest. Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Nashville Settlement Agreement.

*Objection Procedures:*

If you object to the settlement of the Claim, you **MUST** serve on the parties listed below (collectively, the "Negative Notice Parties") a written objection to this Claim Settlement Notice. All objections and responses must be received by the Negative Notice Parties at the facsimile numbers set forth below no later than 4:00 p.m. ET, March 5, 2013, which is twenty (20) days after the date of this notice.

If a timely objection is not received by the Negative Notice Parties and Debtors' counsel, the Claim shall be deemed resolved without further notice or hearing of the Bankruptcy Court.

If a timely objection is received by the Negative Notice Parties' and Debtors' counsel and a resolution to the objection cannot be reached among the parties, the Debtors will file a copy of the Claim Settlement Notice and your objection with the Court and will schedule a hearing to consider the Claim Settlement Notice. Unless otherwise ordered by the Court, if such objection is overruled or withdrawn, the settlement of the Claim shall be deemed to have occurred on the date the Court enters an order approving the Claim Settlement Notice.

Any questions or comments regarding the foregoing procedures may be forwarded to James E. O'Neill of Pachulski Stang Ziehl & Jones LLP at 919 N. Market St., 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705, (302) 652-4100.

*[remainder of this page is intentionally left blank]*

## DISTRIBUTION LIST/NEGATIVE NOTICE PARTIES

### *OFFICE OF UNITED STATES TRUSTEE*

| | |
|---|---|
| United States Trustee's Office<br>Attn: David M. Klauder<br>844 King Street, Suite 2207<br>Lock Box 35<br>Wilmington, DE 19801 | **FAX: (302) 573-6497** |

### *COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*

| | |
|---|---|
| Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038-4982<br>Attn: Denise K. Wildes, Esq. | **FAX: (212) 806-6006** |

### *COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS*

| | |
|---|---|
| Caplin & Drysdale<br>375 Park Avenue, 35th Floor<br>New York, NY 10152<br>Attn: Elihu Inselbuch | **FAX: (212) 644-6755** |
| Caplin & Drysdale<br>One Thomas Circle, N.W., Suite 1100<br>Washington, District of Columbia 20005<br>Attn: Peter Van N. Lockwood | **FAX: (202) 429-3301** |
| Campbell & Levine<br>800 North King Street, Suite 300<br>Wilmington, DE 19801<br>Attn: Mark T. Hurford | **FAX: (302) 426-9947** |

### *COUNSEL TO THE OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS*

| | |
|---|---|
| Bilzin Sumberg Baena Price & Axelrod LLP<br>First Union Financial Center<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, Florida 33131<br>Attn: Scott L. Baena | **FAX: (305) 374-7593** |

## COUNSEL TO THE LC FACILITY AGENT AND LC ISSUERS

Latham & Watkins  
Sears Tower, Suite 5800  
233 South Wacker Drive  
Chicago, IL 60606  
Attn:   Douglas Bacon

FAX: (312) 993-9767

## COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

Kramer Levin Naftalis & Frankel LLP  
1177 Avenue of the Americas  
New York, New York 10036  
Attn:   Philip Bentley  
        David Blabey

FAX: (212) 715-8000

## CO-COUNSEL TO THE DEBTORS

Kirkland & Ellis LLP  
300 North LaSalle Street  
Chicago, IL 60654  
Attn:   Adam Paul

FAX: (312) 862-2200

The Law Offices of Roger Higgins, LLC  
111 East Wacker Drive  
Suite 2800  
Chicago, IL 60601  
Attn:   Roger J. Higgins

FAX: (312) 577-0737

Pachulski Stang Ziehl & Jones LLP  
919 N. Market Street, 17th Floor  
P.O. Box 8705  
Wilmington, Delaware 19899-8705  
(Courier 19801)  
Attn:   James O'Neill, Esq.

FAX: (302) 652-4400

*[remainder of page intentionally left blank]*

Dated: February 13, 2013

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession