IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|                                        |     |                      |
| -------------------------------------- | --- | -------------------- |
| IN RE:                                 | :   |                      |
| Motions for Access of Garlock Sealing  | :   |                      |
| Technologies LLC                       | :   | Civ. No. 11-1130-LPS |

---

Garland S. Cassada, Esq. and Richard C. Worf, Jr., Esq., of ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, NC.

Gregory W. Werkheiser, Esq. and Matthew B. Harvey, Esq., of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

   *Attorneys for Appellant Garlock Sealing Technologies LLC.*

Kevin E. Irwin, Esq., Jennifer Morales, Esq., and Bethany P. Recht, Esq., of KEATING MUETHING & KLEKAMP PLL, Cincinnati, OH.

Scott J. Leonhardt, Esq. and Frederick B. Rosner, Esq., of The ROSNER LAW GROUP LLC, Wilmington, DE.

   *Attorneys for Reorganized Debtors ACandS, Inc.* and *United States Mineral Products Company.*

Stephen Karotkin, Esq., Debra A. Dandeneau, Esq., and Abigail L. Zigman, Esq., of WEIL, GOTSHAL & MANGES, LLP, New York, NY.

Mark D. Collins, Esq., Jason M. Madron, Esq., and Lee E. Kaufman, Esq., of RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

   *Attorneys for Reorganized Debtor and Appellee Armstrong World Industries, Inc.*

Jeffrey N. Rich, Esq., of K&L GATES LLP, New York, NY.

Adam Paul, Esq., of KIRKLAND & ELLIS, LLP, Chicago, IL.

Laura Davis Jones, Esq. and Curtis A. Hehn, Esq., of PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE.

   *Attorneys for Reorganized Debtor Combustion Engineering Inc.*

Kevin T. Lantry, Esq., Sally S. Neely, Esq., Christina M. Craige, Esq., and Jeffrey E. Bjork, Esq., of SIDLEY AUSTIN LLP, Los Angeles, CA.

Laura Davis Jones, Esq. and Curtis A. Hehn, Esq., of PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE.

*Attorneys for Debtors The Flintkote Company, et al.*


Gregory M. Gordon, Esq. and Daniel P. Winikka, Esq., of JONES DAY, Dallas, TX.

Daniel J. DeFranceschi, Esq. and Jason M. Madron, Esq., of RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

*Attorneys for Debtors Kaiser Aluminum Corp., et al.*


Adam H. Isenberg, Esq. and MaryJo Bellew, Esq., of SAUL EWING LLP, Philadelphia, PA.

Mark Minuti, Esq., of SAUL EWING LLP, Wilmington, DE.

*Attorneys for Appellee Reorganized Owens Corning Sales, LLC f/k/a Owens Corning and its Affiliated Reorganized Debtors.*


David G. Heiman, Esq., of JONES DAY, Cleveland, OH.

Brad B. Erens, Esq., of JONES DAY, Chicago, IL.

Daniel J. DeFranceschi, Esq. and Paul N. Heath, Esq., of RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

*Attorneys for Debtors USG Corp., et al.*


John Donley, Esq. and Adam Paul, Esq., of KIRKLAND & ELLIS LLP, Chicago, IL.

Laura Davis Jones, Esq. and James E. O'Neill, Esq., of PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE.

*Attorneys for Debtors W.R. Grace & Co., et al.*

Ellen C. Brotman, Esq., of MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP, Philadelphia, PA.

Natalie D. Ramsey, Esq.,Laurie A. Krepto, Esq., and Davis Lee Wright, Esq., of MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP, Wilmington, DE.

> *Attorneys for Certain Law Firm Appellees – Kazan, McClain, Lyons, Greenwood & Harley; Water & Kraus LLP; Simmons Browder Gianaris Angelides & Barnerd LLC; Bergman, Draper & Frockt;, Gori, Julian & Associates, P.C.; Early, Lucarelli, Sweeney & Strauss; Cooney & Conway; Lipsitz & Ponterio, LLC; Bifferato LLC; and Montgomery, McCracken, Walker & Rhoads, LLP.*

Sander L. Esserman, Esq., David A. Klingler, Esq., David J. Parsons, Esq., and Cliff I. Taylor, Esq., of STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C., Dallas, TX.

Daniel K. Hogan, Esq., of THE HOGAN FIRM, Wilmington, DE.

> *Attorneys for Appellees, The Law Firms – The Law Offices of Peter G. Angelos, P.C.; Baron & Budd, P.C.; Brayton Purcell, LLP; Hissey Kientz, LLP; the Lipman Law Firm; Reaud, Morgan & Quinn, Inc.; Thornton & Naumes, LLP; Waters & Kraus, LLP; Weitz & Luxenberg P.C.; and Williams Kherkher Hart Boundas, LLP.*

Joseph F. Rice, Esq., Jeanette Gilbert, Esq., and John Baden, Esq. of MOTLEY RICE LLC, Mt. Pleasant, SC.

Daniel K. Hogan, Esq., of THE HOGAN FIRM, Wilmington, DE.

> *Attorneys for Various Asbestos Claimants represented by Motley Rice LLC.*

Elihu Inselbuch, Esq., of CAPLIN & DRYSDALE, CHARTERED, New York, NY.

Peter Van N. Lockwood, Esq., Trevor W. Swett, Esq., and Kevin C. Maclay, Esq., of CAPLIN & DRYSDALE, CHARTERED, Washington, DC.

Philip E. Milch, Esq. and David B. Salzman, Esq., of CAMPBELL & LEVINE, LLC, Pittsburgh, PA.

Marla R. Eskin, Esq. and Mark T. Hurford, Esq., of CAMPBELL & LEVINE, LLC, Wilmington, DE.

> *Attorneys for the ACC Appellees – Official Committees of Asbestos Claimants in The Flintkote Company, et al. and W.R. Grace & Co., et al. bankruptcy cases.*

Ramona D. Elliott, Esq., Nan R. Eitel, Esq., and Paul W. Bridenhagen, Esq., of the UNITED STATES DEPARTMENT OF JUSTICE, Washington, DC.

Richard L. Schepacarter, Esq. and David M. Klauder, Esq., of the UNITED STATES DEPARTMENT OF JUSTICE, Wilmington, DE.

> *Attorneys for Appellee Roberta A. DeAngelis, United States Trustee for Region 3.*

---

## OPINION[1]

March 1, 2013
Wilmington, Delaware

---

[1]In identifying the parties and counsel, the Court endeavored to be as comprehensive as possible, consulting: (i) Appellant's list of names of all parties to the relevant opinion and order appealed from and the names of their respective attorneys; (ii) the pleadings filed in these nine appeals; and (iii) the transcripts of proceedings before this Court, in which parties and counsel identified themselves.

*[signature]*

**STARK, U.S. District Judge:**

This case involves a request for access to materials submitted to the Clerk of the

Bankruptcy Court in compliance with a Bankruptcy Rule and an implementing order of the

Bankruptcy Court. The same request was filed, and denied, in these nine related bankruptcy

proceedings, some of which had already been closed and others which remain open. In this

appeal from the Bankruptcy Court's denial of access, the Court concludes that access should be

provided, subject to certain limitations.

## **BACKGROUND**

### **Garlock and Its Bankruptcy Case**

On June 5, 2010, Garlock Sealing Technologies LLC ("Garlock" or "Appellant"), a

manufacturer of sealing products, and two of its affiliates, filed for chapter 11 bankruptcy

protection in the United States Bankruptcy Court for the Western District of North Carolina (the

"North Carolina Bankruptcy Court"). (*See* (Docket Item ("D.I.") 17 at 6; D.I. 52 at 2-3)[2] Their

pending chapter 11 bankruptcy cases are jointly administered as *In re Garlock Sealing*

*Technologies LLC*, Bankr. Case No. 10-31607 (Bankr. W.D.N.C.). (*See* D.I. 52 at 3)

Garlock sought bankruptcy protection to establish a trust to resolve all current and future

asbestos claims against the company. As part of its bankruptcy proceedings, the North Carolina

Bankruptcy Court has scheduled a trial for the purposes of estimating Garlock's liability for

mesothelioma claims. (*See, e.g., id.* at 4; Hr'g Tr., Feb. 15, 2012 (D.I. 49) (hereinafter "2/15/12

Tr."), at 9-10; Hr'g Tr., June 12, 2012 (D.I. 58) (hereinafter "6/12/12 Tr."), at 10, 34-35; D.I. 60;

---

[2]Unless otherwise noted, references to docket items are to *In re Motions for Access of Garlock Sealing Technologies LLC*, Civil A. No. 11-1130-LPS (D. Del.).

Hr'g Tr., Feb. 21, 2013 (D.I. 63) (hereinafter "2/21/13 Tr."), at 7-8) In preparation for these estimation proceedings in its own bankruptcy case, Garlock seeks access to information filed in numerous asbestos-related bankruptcies, including bankruptcies pending in this District.

**The Delaware Bankruptcy Cases**

The present appeal relates to orders entered in nine asbestos-related bankruptcy cases filed in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court").[3] Each of the nine Delaware Bankruptcy Cases is presided over by the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge for the Western District of Pennsylvania, sitting by designation in the District of Delaware. Six of the Delaware Bankruptcy Cases are closed (*Owens, ACandS, Armstrong, CE, USMP,* and *USG*) while the remaining three (*Flintkote, Kaiser,* and *Grace*) are open. (*See* D.I. 1 Exs. A & B, Op. at 4)

**The WDPa Bankruptcy Cases**

In addition to the nine asbestos-related Delaware Bankruptcy Cases, Garlock is also the appellant in three appeals pending before the United States District Court for the Western District of Pennsylvania (collectively, the "WDPa Appeals"). Judge Fitzgerald handled the WDPa

---

[3]The nine asbestos-related "Delaware Bankruptcy Cases," and corresponding bankruptcy docket numbers of the Orders and Opinions Garlock is appealing, are as follows: (i) *In re ACandS, Inc.* ("*ACandS*"), Bankr. Case No. 02-12687 (JKF) (D.I. 3697 & 3698); (ii) *In re Armstrong World Indus., Inc.* ("*Armstrong*"), Bankr. Case No. 00-04471 (JKF) (D.I. 10757 & 10758); (iii) *In re Combustion Eng'g, Inc.* ("*CE*"), Bankr. Case No. 03-10495 (JKF) (D.I. 3437 & 3438); (iv) *In re Flintkote Co., et al.* ("*Flintkote*"), Bankr. Case No. 04-11300 (JKF) (D.I. 6244 & 6246); (v) *In re Kaiser Aluminum Corp., et al.* ("*Kaiser*"), Bankr. Case No. 02-10429 (JKF) (D.I. 10166 & 10167); (vi) *In re Owens Corning* ("*Owens*"), Bankr. Case No. 00-03837 (JKF) (D.I. 21027 & 21028); (vii) *In re United States Mineral Products Co. d/b/a Isoletek Int'l* ("*USMP*"), Bankr. Case No. 01-02471 (JKF) (D.I. 3934 & 3935); (viii) *In re USG Corp., et al.* ("*USG*"), Bankr. Case No. 01-02094 (JKF) (D.I. 12652 & 12653); and (ix) *In re W.R. Grace & Co., et al.* ("*Grace*"), Bankr. Case No. 01-01139 (JKF) (D.I. 27737 & 27740). (*See* D.I. 1 Ex. A; D.I. 2 at 16)

bankruptcy proceedings[4] that led to these appeals. United States District Judge Nora Barry Fischer is presiding over the WDPa Appeals. On June 21, 2012, Judge Fischer stayed the WDPa Appeals pending the disposition of the instant appeals in this Court.[5]

**The Orders Being Appealed**

On October 12, 2011, pursuant to 28 U.S.C. § 158(a)(1) and Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Garlock appealed from the October 7, 2011 Order Denying Motions for Access to 2019 Statements, Denying Motions to Intervene and Denying Motions to Reopen Certain Closed Cases (the "Order") and a companion Memorandum Opinion ("Opinion" or "Op.").[6] Judge Fitzgerald entered an essentially identical Order and Opinion in each of the nine Delaware Bankruptcy Cases and the three WDPa bankruptcy cases. (*See generally* D.I. 1; D.I. 2 at 2-3; *see also In re ACandS, Inc.,* 462 B.R. 88 (Bankr. D. Del. 2011))

**Appellees**

The responding appellees in this matter are: (1) two groups of law firms ("Certain Law

---

[4]*See In re Mid-Valley, Inc., et al.,* Bankr. Case No. 03-35592 (JKF) (D.I. 2817); *In re North American Refractories Co.,* Bankr. Case No. 02-20198 (JKF) (D.I. 7246); *In re Pittsburgh Corning Corp.* ("*PCC*" or "*Pittsburgh Corning*"), Bankr. Case No. 00-22876 (JKF) (D.I. 8488). (*See* D.I. 2 at 3)

[5]*See Garlock Sealing Techs. LLC v. Pittsburgh Corning Corp.,* Civ. A. No. 11-1406-NBF, D.I. 26 & 27; *Garlock Sealing Techs. LLC v. Mid-Valley, Inc.,* Civ. A. No. 11-1439-NBF, D.I. 20 & 21; *Garlock Sealing Techs. LLC v. Armstrong World Indus., Inc., et al.,* Civ. A. No. 11-1452-NBF, D.I. 25 & 26.

[6]*See* D.I. 1 Ex. B (Orders and Opinions appealed from and list of names of all parties thereto).

3

Firm Appellees" and "Law Firms") who have filed the Rule 2019 statements at issue on appeal;[7]

(2) the Official Committees of Asbestos Claimants in the open *Flintkote* and *Grace* bankruptcies

(the "ACC Appellees"), representing the constituencies of asbestos plaintiffs whose attorneys

filed Rule 2019 statements; and (3) various reorganized debtors in the closed Bankruptcy Cases

Garlock now seeks to reopen ("Closed Case Appellees"). (*See* D.I. 53 at 2; *see also, e.g.,*

2/15/12 Tr. at 1-7; 6/12/12 Tr. at 1-6, 75-76; 2/21/13 Tr. at 1-6)

**Garlock's Requests for Access to Rule 2019 Exhibits**

At the pertinent time, Rule 2019 of the Federal Rules of Bankruptcy Procedure required

an entity, other than a committee appointed by the bankruptcy court, to file a verified statement

setting forth:

> (1) the name and address of the creditor . . .; (2) the nature and
> amount of the claim or interest and the time of acquisition thereof
> unless it is alleged to have been acquired more than one year prior
> to the filing of the petition; (3) a recital of the pertinent facts and
> circumstances in connection with the employment of the entity . . .;
> and (4) with reference to the time of the employment of the entity, .
> . . the amounts of claims or interests owned by the entity, . . . the
> times when acquired, the amounts paid therefor, and any sales or
> other disposition thereof. . . .

---

[7]The two counsel groups consist of the following law firms:

(i) Kazan, McClain, Lyons, Greenwood & Harley; Water & Kraus LLP; Simmons Browder Gianaris Angelides & Barnerd LLC; Bergman, Draper & Frockt; Gori, Julian & Associates, P.C.; Early, Lucarelli, Sweeney & Strauss; Cooney & Conway; Lipsitz & Ponterio, LLC; Bifferato LLC; and Montgomery, McCracken, Walker & Rhoads, LLP (collectively, "Certain Law Firm Appellees"); and

(ii) The Law Offices of Peter G. Angelos, P.C.; Baron & Budd, P.C.; Brayton Purcell, LLP; Hissey Kientz, LLP; The Lipman Law Firm; Reaud, Morgan & Quinn, Inc.; Thornton & Naumes, LLP; Waters & Kraus, LLP; Weitz & Luxenberg P.C.; and Williams Kherkher Hart Boundas, LLP (collectively, the "Law Firms").

Fed. R. Bankr. P. 2019[(a)] (eff. Aug. 1, 1991) (D.I. 32, Law Firms App., Tab 1).

In an effort to direct how law firms and other affected entities were to comply with Bankruptcy Rule 2019 in the context of these mass tort asbestos bankruptcy cases, Judge Fitzgerald entered several orders (the "2019 Orders").[8] The 2019 Orders required, among other things, that all counsel representing multiple asbestos claimants file with the Clerk of the Delaware Bankruptcy Court statements in accordance with Bankruptcy Rule 2019 (the "2019 Statements"). (*See, e.g.,* D.I. 21 at 3-4) These 2019 Statements identified the name and address of the filing law firm but did not include substantive disclosures; generally, they were electronically filed and docketed. (*See, e.g.,* D.I. 31 at 7-8) The 2019 Orders also required that exhibits to the 2019 Statements be provided to the Clerk of the Delaware Bankruptcy Court ("2019 Exhibits"). (*See, e.g., id.*; D.I. 21 at 4) Unlike the 2019 Statements, however, the 2019 Exhibits were not to be filed electronically on the public docket; instead, after being submitted to the Clerk's office, the 2019 Exhibits were to be retained and eventually archived by the Clerk. (*See, e.g.,* D.I. 31 at 7-8, 19; D.I. 43 at 5-6)

The 2019 Orders contemplated providing access to the 2019 Exhibits only upon a motion and order of the Bankruptcy Court. *See In re Pittsburgh Corning Corp.*, 260 F. App'x 463, 465

---

[8]*See, e.g.,* D.I. 30 at 4; D.I. 31 at 7; *Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019*, dated October 22, 2004, entered in *PCC* (D.I. 2, Garlock Record on Appeal ("ROA") Tab 56; D.I. 5, Law Firms ROA, Tab 18; D.I. 32, Law Firms App., Tab 4); *Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 but Staying Effective Date*, dated October 22, 2004, entered in *Armstrong* (D.I. 5, Law Firms ROA, Tab 9; D.I. 6, Certain Law Firm Appellees ROA, Tab 24; D.I. 22, Armstrong App., Tab 1). The 2019 Orders in the other Delaware Bankruptcy Cases may be found at: Law Firms ROA Tab 8 (*ACandS*); Law Firms ROA Tab 10 (*CE*); Law Firms ROA Tab 11 (*Flintkote*); Law Firms ROA Tab 12 (*Kaiser*); Law Firms ROA Tab 13 (*Owens*); Law Firms ROA Tab 14 (*USMP*); Law Firms ROA Tab 15 (*USG*); Law Firms ROA Tab 16 (*Grace*). (D.I. 31 at 7 n.29)

(3d Cir. Jan. 10, 2008) ("The Bankruptcy Court fashioned an order that allowed law firms to file 'exemplars' of their empowering documents and required anyone who wished to view the Rule 2019 submissions to file a motion with the court to gain permission."). Specifically, the 2019 Orders provided:

> It is further ORDERED that the docket entry of the [2019 Statement] that is filed shall state that Exhibits (as described below) have not been scanned into the docket *but are available upon motion to and order of the Court*. The docket entry shall be in substantially the following format:
>
>> Verified Statement Pursuant to Fed.R.Bankr.P. 2019 filed by [INSERT FILING ENTITY'S NAME]. *Exhibits have not been scanned but may be accessed by parties who obtain Court order authorizing access.*
>
> . . . .
>
> It is further ORDERED that upon filing a 2019 Statement with the Clerk, each entity filing a 2019 Statement shall electronically file the 2019 Statement without exhibits, and shall provide all exhibits on CD's only to the Clerk, who shall maintain the exhibits without putting them into the electronic data base.

(D.I. 30 at 4 (citing *Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019*, dated October 22, 2004, entered in *Owens* (*see* D.I. 3, Owens ROA, Tab 1 at 2-3) (emphasis added)); *see also* D.I. 18, Garlock App., Tab 2 (same))

This procedural framework – requiring compliance with Rule 2019, making the 2019 Statements available on the public docket, and retaining the 2019 Exhibits in the Clerk's possession and accessible only by motion to and order of the Court – was upheld on appeal by two district courts as well as the Third Circuit. *See In re Kaiser Aluminum Corp.*, 327 B.R. 554, 559, 560 (D. Del. 2005) (concluding that "Bankruptcy Court did not err in permitting exemplars

to be filed or in restricting access to the Rule 2019 information," as 2019 Orders "strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused," adding that "Bankruptcy Court did not err in declining to post the information on the electronic docket and in permitting access to that information by motion of the parties and order of the court"); *In re Pittsburgh Corning Corp.*, 2005 WL 6128987 (W.D. Pa. Sept. 27, 2005), *aff'd*, 260 F. App'x 463 (3d Cir. Jan. 10, 2008). In affirming the framework established by the 2019 Orders, the reviewing courts noted that specific requests for access to the 2019 Exhibits might be filed and might then be granted or denied. *See Pittsburgh Corning*, 2005 WL 6128987, at \*10 ("The bankruptcy court in this case made clear that it was important to have the statements filed and that the issue of access would be addressed if and when a party files a proper motion. . . . If a motion is filed and briefed, the bankruptcy court, after notice and hearing, may well conclude that information initially protected by the 2019 Order should be filed of record for public access."); *Pittsburgh Corning*, 260 F. App'x at 465 ("find[ing] no error in the District Court's resolution of [the] access challenge"); *Kaiser*, 327 B.R. at 560 (stating "the Bankruptcy Court did not seal the Rule 2019 information" but, instead, 2019 Orders "maintain[ed] the public's right to access the Rule 2019 information . . . [but] permit[ted] access to that information by motion of the parties and order of the Court").

On January 10, 2011, Garlock filed motions in the nine Delaware Bankruptcy Cases and the three WDPa bankruptcy cases seeking access to the 2019 Exhibits. (*See, e.g.,* D.I. 1 Ex. B; D.I. 2, Garlock ROA, Tab 1; D.I. 17 at 11; D.I. 21 at 4; D.I. 22, Armstrong App., Tab 6 at 343; D.I. 31 at 11; D.I. 43 at 6) On February 14, 2011, the Bankruptcy Court conducted a hearing on the motions and instructed Garlock that its motions could not be filed as to debtors whose cases

7

were closed until the closed cases were reopened. (*See, e.g.,* D.I. 2, Garlock ROA, Tab 25; D.I. 17 at 14; D.I. 21 at 4; D.I. 22, Armstrong App., Tab 6 at 343 n.1, 348, 350-51; D.I. 31 at 12) Hence, on February 18, 2011, Garlock filed motions to open the closed bankruptcy cases, motions to intervene in the bankrupticies for the limited purpose of seeking access to the 2019 Exhibits, and amended motions for access. (*See, e.g.,* D.I. 2, Garlock ROA, Tabs 9, 15; D.I. 21 at 4-5; D.I. 22, Armstrong App., Tab 6; D.I. 30 at 4) By its motions, Garlock sought to view and copy the 2019 Exhibits; to intervene in cases, if necessary, to obtain access to the exhibits; and to reopen closed bankruptcy cases, if necessary, for the limited purpose of obtaining access to the exhibits.

In her Opinions and Orders of October 7, 2011, Judge Fitzgerald denied all of the relief sought by Garlock in all of the bankruptcy cases. She denied access to the 2019 Exhibits, denied the request to reopen closed bankrupticies, and denied the request to intervene. (*See generally* D.I. 1 Ex. B, Op.; D.I. 2, Garlock ROA, Tabs 31 (Op.) & 32 (Order)) In particular, Garlock was not permitted to intervene because it lacked standing to do so at such a late stage in chapter 11 proceedings in which, for the most part, Garlock had not previously participated. (*See* D.I. 1 Ex. B, Op. at 4-10) Garlock also lacked Article III standing and could not assert the public right of access because "Garlock is not and was not a party and has no claims in any of the cases." (*Id.* at 23-24) The Bankruptcy Court further found Garlock lacked prudential standing, remarking that Garlock "has not alleged other than an imagined harm" and a mere "generalized . . . grievance." (*Id.* at 9) Moreover, the negative consequences that would result from granting Garlock's request to reopen the closed cases – some of which involved debtors that had emerged from bankruptcy a decade earlier – "would be enormous." (*Id.* at 9-10)

8

The Bankruptcy Court also concluded that Garlock sought, improperly, to use Rule 2019 for purposes for which it was not intended. "Rule 2019 is not a discovery tool but is to ensure that plans are negotiated and voted on by those authorized to act on behalf of real parties in interest *in a case*. . . . The 2019 statements are not, and do not substitute for, proofs of claim or ballots of creditors who vote on a plan of reorganization." (*Id.* at 13) Nor did the Bankruptcy Court believe the 2019 Exhibits would be helpful to Garlock, as they are "*attorney* statements of authority to represent multiple clients as listed thereon. They are not claims and are not affirmative statements by the clients themselves." (*Id.* at 12)

The Bankruptcy Court further discussed the public right of access to judicial records:

> The right of the public to access judicial records is to promote
> trustworthiness of the judicial process, to curb judicial abuses, and
> to provide the public with a more complete understanding of the
> judicial system, including a better perception of its fairness. The
> requirement that counsel establish their authority to represent
> clients they list in their 2019s serves that purpose in the particular
> bankruptcy case. That access to the individuals' personal details is
> restricted is not inconsistent with the public's right of access.

(*Id.* at 15-16 (internal citations and quotation marks omitted))

**Proceedings on Appeal**

Garlock's appeals of the October 7, 2011 decisions entered by the Bankruptcy Court were docketed in this Court on November 16, 2011. (D.I. 1) On November 23, 2011, they were assigned to the undersigned District Judge.

On December 16, 2011, the Court ordered the nine appeals consolidated for procedural purposes and granted Garlock's requests to bypass mediation, expedite the appeals, and schedule oral argument. (D.I. 16) The parties completed briefing on January 27, 2012.

On May 18, 2012, Garlock filed a Judicial Notice Motion (D.I. 52), asking the Court to

take judicial notice of certain proposed legislation at the state and federal levels and, if necessary,

to supplement the appellate record with the proposed legislation.

The Court heard oral argument on the appeals and Judicial Notice Motion on June 12,

2012. (*See* 6/12/12 Tr.)

## JURISDICTION

The Bankruptcy Court's Orders denying Garlock access to the 2019 Exhibits are

appealable as final orders. *See* 28 U.S.C. §§ 158(a)(1) and 1334; *United States v. Smith*, 123

F.3d 140, 145 (3d Cir. 1997) ("Orders either granting or, as in this case, denying access to court

proceedings or records are appealable as final orders . . . ."). The same is true of the Bankruptcy

Court's denials of Garlock's motions to intervene and reopen closed bankruptcy cases. *See In re*

*Smith*, 189 F. App'x 88, 89 (3d Cir. June 22, 2006) ("The denial of a motion to reopen is a final,

appealable order."); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1179 (3d Cir. 1994)

("The denial of a motion to intervene is a final, appealable order.").

## LEGAL STANDARDS

This Court reviews the Bankruptcy Court's findings of fact for clear error and exercises

plenary review over decisions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution*

*Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). When an appeal involves mixed findings of fact and

conclusions of law, the Court must "break down [such] mixed questions of law and fact,

applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226,

1229 (3d Cir. 1992).

"Bankruptcy court decisions involving the exercise of discretion are reviewed for abuse

10

of discretion." *In re Cont'l Airlines*, 150 B.R. 334, 336, 338 (D. Del. 1993). Decisions to protect judicial records from public disclosure are subject to review for abuse of discretion, *see id.*, as are denials of requests to permit access to judicial records, *see LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011). Additionally, decisions to permit or deny intervention and reopening of closed bankruptcy cases are reviewed for abuse of discretion. *See Alcan Aluminum*, 25 F.3d at 1179; *In re Zinchiak*, 406 F.3d 214, 221-22 (3d Cir. 2005).

## THE PARTIES' CONTENTIONS

### I.  Garlock's Briefs

In its opening brief on appeal, Garlock argues that the Bankruptcy Court failed to apply the "settled" standards governing the public's right to access documents filed in federal court, which Garlock contends are set out in *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001). (*See* D.I. 17 at 14-18) Contrary to the Bankruptcy Court's determination that Garlock lacks standing to assert the right of public access to obtain the 2019 Exhibits, under Third Circuit case law any member of the public has standing to vindicate the right of public access to judicial records, provided that the party can identify an obstacle to access to a judicial record. (*See id.* at 14-15, 18-19)

In Garlock's view, the Bankruptcy Court erred by placing the burden on Garlock to show a proper purpose, rather than requiring the objecting parties to demonstrate the impropriety of Garlock's purpose. (*See id.* at 24) This is particularly so because Garlock's intention to use the 2019 Exhibits in its own bankruptcy cases is a "quintessentially proper purpose," as it fosters sharing of judicial records among courts. (*Id.* at 15, 24-27)

Garlock further argues that the closed cases need not be reopened in order to provide

11

Garlock access to the 2019 Exhibits submitted in those cases. (*See id.* at 42-44) Nor is it necessary for Garlock to be permitted to formally intervene in any of the cases. (*See generally id.*)

In its reply brief, in addition to reiterating its other arguments, Garlock argues that its appeals are not barred by either collateral estoppel or *res judicata*. (*See* D.I. 39 at 4-9)

## II.     Appellees' Briefs

### A.     Certain Law Firm Appellees

Certain Law Firm Appellees argue that both collateral estoppel and *res judicata* thwart Garlock's attempt to obtain access to the 2019 Exhibits. (*See* D.I. 43 at 9-16) These contentions arise from Garlock's failed effort to access the 2019 Exhibits in the *Pittsburgh Corning* bankruptcy, a case in which the Western District of Pennsylvania's order was affirmed by the Third Circuit on appeal. *See In re Pittsburgh Corning Corp.*, 2005 WL 6128987 (W.D. Pa. Sept. 27, 2005), *aff'd*, 260 F. App'x 463 (3d Cir. Jan. 10, 2008).

The Certain Law Firm Appellees also explain why Judge Fitzgerald's decisions should be affirmed on other grounds. Not only would reopening closed bankruptcy cases be inappropriate here, but with respect to the open cases, Judge Fitzgerald correctly found that "provision of the 2019 Exhibits could not cure any of the speculative injuries Garlock alleged it was suffering," and Garlock lacked standing to move to intervene in those cases. (D.I. 43 at 9; *see id.* at 20-25) Garlock failed to demonstrate sufficient injury and, thus, did not satisfy the requirement for constitutional standing; Garlock further fails in satisfying any prudential standing requirement. (*See id.* at 20-24) Moreover, the 2019 Exhibits were not filed with the Bankruptcy Court and, therefore, are not judicial records entitled to a presumption of public access. (*See id.* at 21)

12

Additionally, to the Certain Law Firm Appellees it is apparent that Garlock desires the information in the 2019 Exhibits for an improper purpose, to "prove fraud in the tort system." (*Id.* at 23; *see also id.* at 10, 27-38) In the view of these appellees, the "2019 Exhibits do not prove fraud in the tort system, nor are they likely to be admissible, probative evidence in Garlock's own estimation process." (*Id.* at 23)

## B. Law Firms

The Law Firms also seek affirmance of the Bankruptcy Court's decision. They fault Garlock for being "indifferent to the reality that counsel for asbestos victims, attentive to the purpose of Rule 2019 and without the benefit of discovery against a bankrupt asbestos defendant, may be constrained to include clients who are just potential creditors in disclosure given under Rule 2019." (D.I. 31 at 17 n.69; *see also id.* at 16-18, 20-21) Hence, the 2019 Exhibits are "relevant to who was represented by whom in the [Bankruptcy Cases] and to little else." (*Id.* at 18)

Judge Fitzgerald appropriately and sensibly balanced the need to verify agency with the legitimate and sensitive privacy concerns of potential asbestos claimants, and applied the proper standard in denying Garlock's request for "public access" to the confidential 2019 Exhibits. (*See id.* at 27-30, 32-33) The Law Firms also argue that both collateral estoppel and *res judicata* bar Garlock's attempt to obtain the 2019 Exhibits. (*See id.* at 10 n.37)

Finally, the Law Firms characterize Garlock's efforts as "a cynical fishing expedition of almost unprecedented scope across a dozen of the biggest mass tort bankruptcies of the last decade," adding that the "volume of the materials to which Garlock seeks access is staggering, raising serious doubts as to how Garlock could possibly make any meaningful use of it in its

13

forthcoming asbestos claims estimation." (*Id.* at 11 n.38, 20)

## C. ACC Appellees

The ACC Appellees assert that Garlock's request for information is barred by collateral estoppel and res judicata. (*See* D.I. 29 at 10-16) Moreover, the ACC Appellees emphasize that Judge Fitzgerald's 2019 Orders established an appropriate balancing framework. (*See id.* at 21) Garlock's intended use for the information in its own bankruptcy case is speculative, irrelevant, and improper. (*See id.* at 22-27) Although Bankruptcy Code § 107(a) "evidences a strong desire by Congress to preserve the public's right to access judicial records," it is inapplicable here because the 2019 Exhibits were never incorporated into or referenced in any adjudicatory proceedings in the bankruptcy cases, nor were they filed on the docket; thus, they are not "public" or "judicial" records to which access is presumed. (*Id.* at 22; *see id.* at 28-30) Furthermore, disclosure of the information in the 2019 Exhibits would create an undue risk of identity theft and other unlawful injury. (*See id.* at 10, 30-32)

## D. Closed Case Appellees

Armstrong supports affirmance of the Bankruptcy Court for three primary reasons. First, by denying Garlock access to the 2019 Exhibits, Judge Fitzgerald did not hamper Garlock's ability to secure the desired information, as Garlock can seek discovery in its own bankruptcy case and can informally reach out to lawyers representing asbestos creditors. (*See* D.I. 21 at 2-3, 5-6) Second, because Garlock's demand really "amounts to nothing more than what will ultimately become a discovery dispute between Garlock and the filers of the 2019 Statements and exhibits, Garlock fails to establish the requisite close nexus to [Armstrong's] bankruptcy case to confer subject matter jurisdiction on the Delaware Bankruptcy Court." (*Id.* at 3, 7; *see also id.* at

14

7-11) Lastly, reopening closed bankruptcy cases is onerous, expensive, and unjustifiable. *(See id.* at 3, 12-13)

Owens takes no position as to whether Garlock should have access to the 2019 Exhibits. *(See* D.I. 30 at 1, 6) Owens does not believe the closed cases need to be reopened even if the Court is to grant Garlock access. *(See id.* at 8-10) If, however, the *Owens* bankruptcy case is reopened, it should be done in a manner that avoids harm to the reorganized debtor. *(See id.* at 10)

ACandS and USMP also do not take a position on the underlying merits of Garlock's appeals. *(See* D.I. 23; D.I. 24) If their closed bankruptcy cases are reopened, however, these reorganized debtors ask to be indemnified by Garlock for any resulting liabilities. *(See* D.I. 23 at 2; D.I. 24 at 2)

## III. United States Trustee

The United States Trustee ("UST") takes no position with respect to whether Garlock may obtain access to the 2019 Exhibits, nor does it oppose reopening the six closed cases. *(See* D.I. 26 at 1) The UST's interest is that, in the event of reopening, "the Court should hold that the payment of Quarterly Fees in a re-opened, and therefore pending case, [is] statutorily mandated by operation of 28 U.S.C. § 1930(a)(6) and that neither the fees nor the related reporting requirement can be 'waived.'" *(Id.* at 6)

15

## I.    Standing

Garlock asserts that the Bankruptcy Court did not apply the proper legal standard for assessing whether it had standing to seek access to the 2019 Exhibits. Citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994), Garlock contends that it has standing based on its identification of an "obstacle" to access to judicial records. (*See* D.I. 17 at 18) The Bankruptcy Court's Orders are just such an obstacle. Appellees argue, by contrast, that because the 2019 Exhibits are not judicial records subject to a right to access, Garlock must demonstrate that it has constitutional standing under Article III.[10]

The Court agrees with Garlock. The Third Circuit has "routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings." *Pansy*, 23 F.3d at 777. "[T]he

---

[9]The parties have raised various issues for the first time on appeal, including collateral estoppel, *res judicata*, whether the 2019 Exhibits are "judicial records," and whether disclosure is inconsistent with Bankruptcy Code § 107(c). (*See, e.g.,* D.I. 29 at 10-20; D.I. 31 at 10 n.37; D.I. 43 at 10-16) Generally, the Court will not consider arguments that were not presented to the Bankruptcy Court, as the Bankruptcy Court has not had a chance to consider them. *See generally Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*, 628 F.2d 500, 508 n.3 (5th Cir. 1980) ("[R]es judicata and collateral estoppel . . . are affirmative defenses that must be pleaded in the trial court. They will not be considered for the first time on appeal.") (internal citation omitted); *accord Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985). Here, however, the Court has considered each of the new arguments because the record is adequate to permit the Court to do so, none of the new issues warrants depriving Garlock of the access it seeks, and in the interests of judicial economy.

[10]Article III "requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation marks and citations omitted).

procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action," even "long after a case has been terminated" or "after the underlying dispute between the parties has long been settled." *Id.* at 778-79.[11] Under these circumstances, in order to have standing, the third party need only show an obstacle that prevents access to a judicial record. *Id.* at 777.

Because Garlock is a member of the public and faces an obstacle to obtaining access to 2019 Exhibits, Garlock has standing.[12]

## II.    Standing to Appeal

Some appellees contend that even if Garlock possessed standing in the Bankruptcy Court below, it lacks appellate standing here. These appellees rely on the prudential standing requirement, which "limits bankruptcy appeals to persons whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court," and prior litigation involving requests for access to Rule 2019 information in connection with asbestos-related bankruptcies. *Pittsburgh Corning*, 260 F. App'x at 466 n.4; *see also Kaiser*, 327 B.R. at 558-59) (describing "type of direct, pecuniary interest contemplated by the 'aggrieved person'

---

[11]The Court deems Garlock's interest in obtaining access to the 2019 Exhibits to be adequate for purposes of permitting intervention by Garlock in the bankruptcy cases, to the extent intervention is required. *See generally* Bankruptcy Rule 2018(a) ("In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter."); *In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997) ("The court may exercise its discretion granting permissive intervention to the moving party.").

[12]"[I]n cases where intervenors seek to modify an order of the court, the court has jurisdiction based on the fact that it already has the power to modify the . . . order and no independent jurisdictional basis is needed." *Pansy*, 23 F.3d at 778 n.3.

test," and distinguishing "incidental costs apply[ing] to anyone seeking access to the Rule 2019 information"); *Pittsburgh Corning*, 2005 WL 6128987, at *6 (finding "pecuniary concerns raised by appellants in this case do not support a finding that they meet the 'aggrieved persons' test.")

The Court is not persuaded by appellees. The same interests which gave Garlock standing in the Bankruptcy Court persist and give Garlock standing to press its appeals. Garlock remains aggrieved by the "obstacle" of the Bankruptcy Court Orders depriving it of access to the 2019 Exhibits. *See generally In re Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir. 2005) (stating appellate standing extends to, among others, "entities that are aggrieved by an order which diminishes their property, increases their burdens, or detrimentally affects their rights"). Nothing in the prior litigation cited by appellees holds that denial of a request for access to the 2019 Exhibits for the purpose to which Garlock intends to use them (i.e., development of evidence in connection with the estimation proceeding as part of its own bankruptcy case) is an insufficient interest to press on appeal.

## III. **Collateral Estoppel**

Collateral estoppel, or issue preclusion, prohibits a party from re-litigating an issue it has already litigated. Collateral estoppel applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal quotation marks omitted).

Collateral estoppel does not bar Garlock here because neither the 2019 Orders, nor any other decision in any litigation, decided the issue of Garlock's right as a member of the public to

18

access the 2019 Exhibits. The issue of the public's right to access the 2019 Exhibits has in no previous action been "actually litigated." None of the prior decisions actually deprived anyone of access of the 2019 Exhibits.

In connection with the *Pittsburgh Corning* bankruptcy, certain insurance companies challenged the 2019 Orders on the basis that the Bankruptcy Court failed to follow the mandates of Rule 2019 in all respects, by tailoring some of its requirements in recognition of the realities of mass tort asbestos-related bankruptcy litigation. *See Pittsburgh Corning*, 2005 WL 6128987, at \*1. Although the insurer-appellants contended the Rule 2019 Orders violated the public's right to access to judicial records, which is protected under the First Amendment as well as common and statutory law, the district court dismissed their appeal for lack of standing or, in the alternative, lack of ripeness. *See id.* Moreover, as the district court explained, as of the time of that appeal "[t]he bankruptcy court did not resolve issues relating to the right of access; rather it created a procedure to determine those issues at another time if a motion is filed seeking public access." *Id.*; *see also Kaiser*, 327 B.R. at 558-59 (finding lack of standing as insurer appellants had not moved for access).

Later, Garlock tried itself to access Rule 2019 information in the *Pittsburgh Corning* bankruptcy. Not only did Garlock object to the Third Amended Plan in that case, but it also made a request to access 2019 Exhibits. *(See* Op. at 6 n.5) On March 24, 2010, Judge Fitzgerald denied Garlock's motion. *(See id.)* The order denying Garlock's motion indicated it was "without prejudice to a request for access to information contained in a specific 2019 Statement as to a particular client in specific instances of need or cause." *(See* D.I. 22, Armstrong App., Tab 5, Ex. F at 3) In neither its initial motion nor its objections-related filings did Garlock

19

invoke the public access doctrine; instead, Garlock relied solely on its status as a party in interest. Hence, the applicability of the public access doctrine was not put at issue. *See generally Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 336-37 (D.N.J. 1994) (noting issue to be precluded "must have been distinctly put in issue and directly determined adversely to the party against which estoppel is asserted") (internal quotation marks omitted), *aff'd*, 46 F.3d 1116 (3d Cir. 1994).

Accordingly, appellees have failed to demonstrate that Garlock's access requests are barred by collateral estoppel.

## IV. *Res Judicata*

*Res judicata*, or claim preclusion, bars a party from re-litigating a claim that has already been determined on the merits by a competent court. *Res judicata* is established upon a showing that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).

Garlock only appeared in one of the bankruptcy cases: *Pittsburgh Corning*. To this Court's knowledge, no plan confirmation order has been entered in that bankruptcy. In the absence of a final order, *res judicata* is not applicable. Additionally, there is no basis to find that Garlock raised the "same claim" in any of the bankruptcy cases other than (arguably) *Pittsburgh Corning*.

20

## IV. Garlock Will Be Granted Access to the 2019 Exhibits Pursuant to the Common Law Right of Public Access to Judicial Records

### A. The 2019 Exhibits Are Judicial Records

The Court concludes that the 2019 Exhibits are "judicial records."[13] The 2019 Orders require that the 2019 Statements be "filed" with the Bankruptcy Court. (*See, e.g.,* D.I. 6, Certain Law Firm Appellees ROA, Tab 24; D.I. 22, Armstrong App., Tab 1 ("[A]ny entity or committee representing more than one creditor or equity security holder and any indenture trustee that has entered an appearance, filed a claim, cast a ballot or taken any other affirmative action to participate in the Debtor's bankruptcy case in any way shall *file* with the Clerk a statement (a '2019 Statement')." (emphasis added))) The 2019 Orders then define the 2019 Exhibits to be part of the "Statements." (*See, e.g.,* D.I. 6, Certain Law Firm Appellees ROA, Tab 24; D.I. 22, Armstrong App., Tab 1 ("It is further ORDERED that the 2019 Statement shall be a verified statement identifying the name and address of the entity filing such statement and that *includes the following exhibits* . . .") (emphasis added)) Consistent with the 2019 Orders, in her Opinions Judge Fitzgerald describes "determin[ing] that the information would be *filed* with the Clerk but not placed on the public electronic docket system because of the great potential for abuse of personal (medical) information and identity theft (because of the identifying information included on the 2019s)." (Op. at 17 n.16 (emphasis added)) In the *Pittsburgh Corning* appeal, the Western District of Pennsylvania appeared also to view the 2019 materials as having been "filed." *See Pittsburgh Corning,* 2005 WL 6128987, at *10 ("The bankruptcy court in this case

---

[13]While the Court discussed with the parties the possibility of remanding to the Bankruptcy Court for a factual determination as to whether the 2019 Exhibits are judicial records (*see* 6/12/12 Tr. at 18), no party suggested the Court should do so (*see, e.g., id.* at 47-48).

21

made clear that it was important to have the [2019] statements *filed* and that the issue of access would be addressed if and when a party files a proper motion.") (emphasis added).

The 2019 Statements were available to the parties and could be used to monitor the propriety of the plan confirmation voting process. *(See, e.g.,* 6/12/12 Tr. at 18 ("[E]ven in the ruling denying access, the [Bankruptcy] Court says that it did make exhibits available to parties so that they could police the votes that were cast in favor of the plan. So the exhibits were – the best evidence we have is that they were used in the bankruptcy case."); Op. at 14 n.11 ("The purpose [of requiring 2019 statements] is to make sure that the entities who vote in this case have actually been identified and somebody makes the comparison to determine that in fact the law firm that purports to represent that party represents that party."))

Thus, the 2019 Statements, including the Exhibits, were "filed with" the Bankruptcy Court. They are, therefore, "judicial records." *See Pansy*, 23 F.3d at 781.

## B. There Is a Presumptive Right of Access to the 2019 Exhibits

As the 2019 Exhibits are judicial records that were filed with the Bankruptcy Court, there is a presumptive right of public access to them. *See generally Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183 (3d Cir. 2001). The filing of a document with a court "clearly establishes" it is subject to the right of access. *Id.* at 192.[14] As the Third Circuit has explained, public access "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court;" "diminishes possibilities for injustice, incompetence, perjury, and fraud;" "provide[s] the public with a more complete

---

[14]*See also* 11 U.S.C. § 107(a) ("Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.").

22

understanding of the judicial system and a better perception of its fairness;" and "helps assure that judges perform their duties in an honest and informed manner." *Id.*

## C. The Presumption of Access Has Not Been Rebutted

"In order to override the common law right of access, the party seeking the closure of a hearing or the sealing of part of the judicial record bears the burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Goldstein*, 260 F.3d at 194 (internal quotation marks omitted). Though there exists a "strong common law presumption of access," which "must be balanced against the factors militating against access," "[t]he burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Id.*

Here, the presumption of access has not been rebutted. Although the appellees raise numerous arguments against disclosure, their contentions do not show, individually or collectively, that here the interest in secrecy outweighs the presumption of public access. For instance, while appellees are concerned about the possibility of misuse of potential asbestos claimants' personal information, leading to identity theft or other abuses, they fail to show any clearly defined and serious injury, particularly given the restrictions the Court will place on Garlock's use of the 2019 Exhibits.

While it is undoubtedly true that Rule 2019 is not intended for the purpose to which Garlock seeks to put it, this fact does not rebut the presumption of public access to judicial records. Similarly, some appellees emphasize that Garlock could seek the same information it is requesting here through the discovery process in its own bankruptcy, for instance by subpoenaing

23

the third-party law firms. Garlock acknowledges this potential opportunity – and has evidently pursued it to some extent. (*See* 6/12/12 Tr. at 12-13) But just because Garlock might have another mechanism for obtaining the information it seeks here does not, in the circumstances presented here, diminish Garlock's right to pursue access through the process it is pursuing in this Court.

Some appellees contend that everyone understood at the time the Bankruptcy Court entered the 2019 Orders that access would be provided only for purposes of monitoring the voting process. (*See, e.g., id.* at 44) However, the appellees have pointed to nothing in the record to support such a view. Certainly, nothing in the 2019 Orders or in the Opinions states that this was the only anticipated grounds on which a successful motion for access could be based.

Appellees point out that Rule 2019 has recently been amended, and disclosure requirements relaxed, so if the current version had been in place in 2004, statements would not have been required. (*See id.* at 44 ("The new Rule 2019 would not require the disclosure of passive representation."); *see also* D.I. 31 at 5-7, 30-32; D.I. 43 at 4 & nn.3-4; D.I. 29 at 8; D.I. 32, Law Firms App., Tab 2 (amended Fed. R. Bankr. P. 2019, eff. Dec. 1, 2011)) This is largely irrelevant, as the Bankruptcy Court had to follow the version of Rule 2019 that was in effect at the time it entered the 2019 Orders. More importantly, the Bankruptcy Court *did* enter the 2019 Orders, which were affirmed on appeal, and are not (and could not be) challenged by appellees in these appeals.

The Court recognizes the parties dispute the likely evidentiary value of the 2019 Exhibits. Admissibility under the Rules of Evidence, however, is not the standard by which the right of

24

public access is measured.

The fact that Garlock is not a member of the press does not rebut the presumption that Garlock, as a member of the public, has a right of access to judicial records. *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993) ("[A]ll persons seeking to inspect and copy judicial records stand on an equal footing, regardless of their motive for inspecting such records. Thus, the press has no greater right of access than does the general public, and more importantly, an intervenor who is also a litigant in a collateral proceeding enjoys no lesser rights merely because s/he desires to use public documents for his or her own benefit.").

### D.    The Court Exercises Its Discretion to Provide Garlock Access

"The balancing of the factors for and against access is a decision committed to the discretion of the district court." *Goldstein,* 260 F.3d at 197 (internal quotation marks omitted). Here, having concluded that the presumptive public right of access to the 2019 Exhibits is not rebutted, the Court will grant Garlock access.[15]

## V.    Garlock Has Shown that the Orders Should Be Modified

Alternatively, even if the 2019 Exhibits are not viewed as judicial records – in which case Garlock's presumptive right of access to them is not triggered – the Court would still grant Garlock access to them. This is because to the extent the Rule 2019 Orders operate as confidentiality orders, Garlock has demonstrated good cause to modify the Orders to permit

---

[15]As the Court is granting Garlock's request for access to all 2019 Exhibits, it is not necessary to consider Garlock's alternative, narrower request for access to the 2019 Exhibits filed on behalf of non-objecting parties (to the extent there were any non-objecting parties). Nor is it necessary for the Court to evaluate whether the First Amendment, in addition to the common law right of public access, provides another basis for granting Garlock relief.

Garlock to access the 2019 Exhibits, subject to certain restrictions.

A court has "supervisory power over its own records." *Leap Sys.*, 638 F.3d at 221.
Despite a "presumption in favor of public accessibility," a court has authority to seal documents
"when justice so requires," provided the party requesting sealing demonstrates that the "interest
in secrecy outweighs the presumption" of access. *Id.* at 221-22. Essentially, the 2019 Orders
embody a conclusion that "justice so requires" the sealing of the 2019 Exhibits. Seen in this
light, Garlock's request for access requires the Court to balance competing factors and determine,
as a matter of its discretion, whether to permit Garlock the access it seeks. *See Pansy*, 23 F.3d at
781. "The party seeking to modify the order of confidentiality must come forward with a reason
to modify the order. Once that is done, the court should then balance the interests, including the
reliance by the original parties to the order, to determine whether good cause still exists for the
order." *Id.* at 790.

Taking account of the factors and balancing test described in *Pansy*, *see id.* at 787-91, the
Court concludes that there is good cause to modify the 2019 Order and permit Garlock access to
the 2019 Exhibits. Garlock's purpose in seeking access to the 2019 Exhibits – to permit its
expert in its own bankruptcy to develop or rebut an opinion as to an estimate of Garlock's
aggregate liability for asbestos claims (*see* D.I. 60) – is a proper purpose for seeking access. As
Garlock sees it:

> The 2019 Statements, when combined with the 2019 Exhibits,
> contain admissions of exposure to other products that are relevant
> to estimating Garlock's asbestos liability in its bankruptcy case.
> Garlock can use evidence of asbestos claimants' exposures to other
> asbestos-containing products to show that it was not a proximate
> cause of the plaintiff's asbestos-related disease. Other exposures
> are also relevant to Garlock because they permit Garlock to show

that other parties were at fault and allocate liability to them.

(D.I. 52 at 4) The Court finds that, in the context of evaluating an access request, Garlock's

intended use of such information at an estimation proceeding in its own bankruptcy is a proper

purpose.[16] Having found at least one proper purpose, the Court need not decide if Garlock's

other stated purposes – pursuit of a potential RICO (Racketeer Influenced and Corrupt

Organizations, 18 U.S.C. §1961 *et seq.*) action against asbestos plaintiffs' counsel, as well as

lobbying and legislative reform efforts – are also proper.[17]

Another *Pansy* factor favoring granting Garlock access to 2019 Exhibits is that the

sharing of information among litigants may help promote fairness and efficiency. Garlock may

be able to use the information in the 2019 Exhibits to help the North Carolina Bankruptcy Court

to estimate Garlock's liability more accurately. Also favoring access is that the issues involved

here – going to liabilities arising from a mass tort – are important to the public.

On the other hand, privacy interests of the individuals identified in the 2019 Exhibits

---

[16]This Court is *not* taking a position as to whether the North Carolina Bankruptcy Court should permit Garlock to use whatever it learns from the 2019 Exhibits in the manner Garlock envisions. Issues of the admissibility and weight of any evidence, as well as issues relating to the timing and reliability of expert disclosures and opinions, are all for the North Carolina Court to resolve. This Court today decides only that Garlock should be given the access it seeks to the 2019 Exhibits.

[17]Various appellees have criticized Garlock's attempted use of, and reliance upon in its briefing, the Affidavit of Paul Grant (*see, e.g.,* D.I. 2, Garlock ROA, Tab 54; D.I. 18, Garlock App., Tab 6, Ex. A), President of Garrison Litigation Management Group, Ltd., the litigation consulting firm Garlock engaged to manage the defense and resolution of asbestos claims asserted against it. (*See* D.I. 17 at 4-6) The Court agrees with Garlock that the affidavit is not offered for its truth but, instead, to provide background information; its inclusion in the record here is appropriate to show how Garlock explained to the Bankruptcy Court its need for access to the 2019 Exhibits. (*See* D.I. 39 at 1 n.1; *see also* Op. at 6)

weigh against disclosure of the 2019 Exhibits to Garlock. The Bankruptcy Court was properly

concerned with issues of privacy and possible identity theft. However, in assessing the weight to

be given to these privacy interests, the Court is mindful that, as appellees concede, no

individual's name or condition ended up on the Exhibits without that individual first contacting

and retaining counsel. (*See* 6/12/12 Tr. at 57) Hence, even if not all of these individuals

ultimately become a creditor and file a proof of claim, it is nonetheless true that each individual

authorized an attorney to represent him or her in connection with a potential asbestos-related

claim. Furthermore, the information about each individual in a 2019 Exhibit is the same type of

information that would have to be disclosed in asbestos-related litigation, such as in a complaint

in a tort action. Additionally, as explained further below, the Court is providing Garlock access

to the 2019 Exhibits subject to certain limitations, limitations that are intended to substantially

reduce any threat to privacy interests.

The risk of embarrassment weighs against disclosure, but the Court gives this factor little

weight. This is because, as with the analysis of privacy interests, the restrictions the Court will

impose on Garlock's access lead the Court to conclude that no significant risk of embarrassment

will exist. Finally, that the information sought by Garlock is not related to public health and

safety, and that no public entity or official are involved here, also weigh against providing

Garlock access.

The Court has also considered the reliance interests of those who relied upon the 2019

Orders. These reliance interests have been considered above, as part of the Court's evaluation of

the privacy interests of victims. In further considering reliance, the Court observes that the 2019

Orders contemplated a mechanism for seeking access and, obviously, contemplated that such

28

access might be granted. (*See, e.g.,* 6/12/12 Tr. at 42; *Pittsburgh Corning*, 2005 WL 6128987, at *4 (explaining anyone seeking access to 2019 Exhibits is required "simply [to] fil[e] a motion with this Court telling me why you want it," "show[ing] me how the information is necessary, relevant, whatever term you wish to choose")) Thus, while victims were right to rely on the 2019 Orders as preventing access without Court approval, they could not have reasonably relied on the 2019 Orders to prevent all access.

As counsel for an appellee argued at the June 2012 hearing, the Bankruptcy Court carefully "molded" Rule 2019 to the specific complexities of this case. (*See* 6/12/12 Tr. at 46) The result was the Rule 2019 Orders, to which none of the appellees objected nor appealed from. Once the Rule 2019 Orders were entered and the parties began to comply by filing the 2019 Statements and Exhibits, today's result was always a possible outcome.

Accordingly, having considered the *Pansy* factors, and affording them each the weight appropriate under the circumstances presented here, the Court concludes that (even if the 2019 Exhibits are not judicial records) Garlock has demonstrated good cause for modification of the 2019 Orders to the extent necessary to provide Garlock access to the exhibits subject to restrictions discussed below.

## VI.  Reopening Closed Cases and Granting Intervention Are Not Necessary

The Court perceives no need to reopen the closed cases[18] or grant Garlock intervenor status in order to provide Garlock the access it seeks to the 2019 Exhibits. Regardless of whether the 2019 Exhibits are deemed judicial records, they are in the physical possession of the

---

[18]Hence, the Court has no occasion to resolve the fee and reporting issues raised by the United States Trustee.

29

Bankruptcy Court. "Every court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The Bankruptcy Court shall exercise its supervisory power to permit Garlock to access the 2019 Exhibits, subject to the restrictions that will be set forth in the Court's order.

## VII.  Garlock's Motion to Take Judicial Notice

Garlock has filed a motion asking the Court to take judicial notice of certain proposed legislation at the state and federal levels that was recently introduced. (D.I. 52) The Court will grant Garlock's motion to take judicial notice of the existence and contents of the proposed legislation. The fact that these proposals were introduced is not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 222 n.3 (3d Cir. 2003) ("We take judicial notice that several bills are pending in Congress that may alter the role of the INS in determining eligibility for SIJ proceedings . . . ."). These legislative proposals have arguable relevance to issues in this appeal, including at least whether there is public interest in transparency in asbestos litigation, a factor arguably pertinent to the *Pansy* analysis. Because the Court "may take judicial notice at any stage of the proceeding," it is not necessary formally to supplement the appellate record with Garlock's materials. Fed. R. Evid. 201(d); *see also* Advisory Committee Notes on Fed. R. Evid. 201(f) ("[J]udicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal.").

## VIII.  Limitations on Garlock's Access and Use

In exercising its discretion, the Court finds it appropriate to impose certain limitations on Garlock's access to and use of the 2019 Exhibits. (*See generally* 6/12/12 Tr. at 91-92)

30

(discussing potential limitations with Garlock's counsel) Garlock is to be provided access to the 2019 Exhibits solely for the purpose of using them in connection with the estimation proceedings in its own bankruptcy case. Garlock may not publicly disclose information contained in the 2019 Exhibits except in an aggregate format that does not identify any individual. Moreover, before there is any disclosure of the information Garlock divines from the 2019 Exhibits, Garlock must first propose to the North Carolina Bankruptcy Court an appropriate form of protective order for that Court to consider. Additionally, Garlock is not seeking retention agreements between lawyers and potential claimants (*see id.* at 92) and Garlock shall not be granted access to such retention agreements.[19] These limitations should largely (if not entirely) prevent identity theft and the other harms the Bankruptcy Court envisioned might follow from granting Garlock the access it seeks.

The parties will be directed to submit to the Court a proposed form of order to limit Garlock's access and use in a manner consistent with this Opinion.

## CONCLUSION

The Bankruptcy Court carefully exercised its discretion in the highly complicated, challenging circumstances presented in this case. It was entirely proper for the Bankruptcy Court to facilitate the filing of 2019 Statements in order to move the cases along and to defer decisions as to access until a later stage of the proceedings. However, when that later time came, as a

---

[19]With this limitation, the Court finds that Garlock is not being granted access to any "trade secret," "confidential research," "development," or "commercial information." 11 U.S.C. § 107(b)(1).

31

result of Garlock's request, the Bankruptcy Court erred and abused its discretion. Therefore, the Orders and Opinions with respect to Garlock's request for access to the 2019 Exhibits will be reversed.

A separate order consistent with this Opinion will be entered.[20]

---

[20]In making these rulings, the Court does not intend to preclude the Court presiding over Garlock's bankruptcy from imposing any additional restrictions that Court deems appropriate.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                     :
Motions for Access of Garlock Sealing      :
Technologies LLC                           :        Civ. No. 11-1130-LPS

## ORDER

At Wilmington this 1st day of March, 2013:

For the reasons set forth in the Opinion issued this same date,

IT IS HEREBY ORDERED that:

1.     The following Orders of the Bankruptcy Court in the nine asbestos-related,

Delaware Bankruptcy Cases are **REVERSED**:

      (i)      *In re ACandS, Inc.*, Bankr. Case No. 02-12687 (JKF) D.I. 3698;

      (ii)     *In re Armstrong World Indus., Inc.*, Bankr. Case No. 00-04471 (JKF) D.I. 10758;

      (iii)    *In re Combustion Eng'g, Inc.*, Bankr. Case No. 03-10495 (JKF) D.I. 3438;

      (iv)     *In re Flintkote Co.*, Bankr. Case No. 04-11300 (JKF) D.I. 6246;

      (v)      *In re Kaiser Aluminum Corp.*, Bankr. Case No. 02-10429 (JKF) D.I. 10167;

      (vi)     *In re Owens Corning*, Bankr. Case No. 00-03837 (JKF) D.I. 21028;

      (vii)    *In re United States Mineral Products Co. d/b/a Isoletek Int'l*, Bankr. Case No.

01-02471 (JKF) D.I. 3935;

      (viii)   *In re USG Corp.*, Bankr. Case No. 01-02094 (JKF) D.I. 12653; and

      (ix)     *In re W.R. Grace & Co.*, Bankr. Case No. 01-01139 (JKF) D.I. 27740.

2.     The Judicial Notice Motion (D.I. 52) is **GRANTED**.

1

3. The parties shall meet and confer and submit to this Court, within seven (7) days of the date of this Order, a proposed form of order that will direct the Bankruptcy Court to provide Garlock access to the 2019 Exhibits on terms consistent with those set forth in this Opinion. In a letter accompanying the proposed form of order, the parties shall also note any modifications they request in the Court's identification in the Opinion of the parties, cases, and attorneys involved in these appeals.

_____
UNITED STATES DISTRICT JUDGE