IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., et al.,[1]<br><br>Debtors. | Chapter 11<br>Case No. 01-1139 (JKF)<br>(Jointly Administered)<br><br>Objection Deadline: April 5, 2013 by 4:00 p.m.<br>Hearing Date: April 22, 2013 at 9:00 a.m. |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF
THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT BETWEEN
W. R. GRACE & CO. AND MARKEL INTERNATIONAL INSURANCE
COMPANY LIMITED (F/K/A TERRA NOVA INSURANCE COMPANY LIMITED)**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order approving the Settlement Agreement and Mutual Release (the "Agreement") by and between W. R. Grace & Co. ("Grace") and Markel International Insurance Company Limited (f/k/a Terra Nova Insurance Company Limited) ("Markel").[2] A copy of the Agreement is attached as <u>Exhibit A</u>. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement or, if not defined in the Agreement, in the First Amended Joint Plan of Reorganization, as modified through December 23, 2010, as applicable

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## Background

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. On January 31, 2011, the Court entered its order confirming the First Amended Joint Plan of Reorganization as modified through December 23, 2010 (the "Plan"). On January 30, 2012, the District Court entered its order affirming the Bankruptcy Court's confirmation order and issuing the injunctions contemplated by the Plan. The District Court's order is presently on appeal to the United States Court of Appeals for the Third Circuit.

5. Markel, along with other insurers not party to the Agreement, severally subscribed to a three-year policy of excess liability insurance (defined in the Agreement as the "Subject Policy") that provided, or is alleged to provide, insurance coverage to Grace. The Subject Policy was issued for the policy periods between June 30, 1974 to June 30, 1975, June 30, 1975 to June 30, 1976, and June 30, 1976 to June 30, 1977. Markel's coverage obligation under the Subject Policy is in the total amount of $1,201,400 in the aggregate for

2

products/completed operations. Each of the three policy periods of the Subject Policy is part of a quota share layer of $30 million which attaches excess of $20 million. Markel's remaining coverage obligation under the Subject Policy is $1,026,565.

6. Grace has incurred, and Grace and/or the Asbestos PI Trust (the "Trust") may incur in the future, certain liabilities, expenses and losses arising out of asbestos-related claims, for which Grace seeks coverage under the Subject Policy. Disputes have arisen between Grace and Markel regarding their respective rights and obligations under the Subject Policy with respect to coverage for asbestos-related claims.

7. The Plan contemplates that Asbestos PI Claims will be enjoined and channeled to the Trust. *See* Plan, Art. 8.2.1. If established as proposed, the Trust will process and resolve Asbestos PI Claims pursuant to the Asbestos PI Trust Distribution Procedures.

8. The Plan further contemplates that Asbestos Insurance Rights, including rights to coverage under the Subject Policy, are to be transferred to the Trust on the Effective Date, to be used to fund payment of Asbestos PI Claims. *See* Plan, Art. 7.2.2(d)(ii) and (iv); Plan Ex. 6 – Asbestos Insurance Transfer Agreement.

9. Grace and Markel entered into the Amended and Restated Settlement Agreement executed by certain London Market Insurance Companies, including Markel, on August 7, 2009 (referred to as the "London Agreement"), resolving disputes with respect to obligations under certain policies of insurance, including the Subject Policy. The Agreement benefits the Debtors' estates by, among other things, converting Markel's obligation to make payments over time with respect to the Subject Policies under the London Agreement, as claims are submitted to the Trust, into an obligation to make a lump sum payment to Grace of Nine Hundred Fourteen Two Hundred One U.S. Dollars ($914,201.00) (the "Settlement Amount") within fourteen (14) days of the Approval Order becoming a Final Order as provided for in the

3

Agreement. The Settlement Amount is to be held by Grace for the benefit of the Trust. The immediate payment of this substantial sum, among other things, eliminates any collection risk and risk of disputes with respect to Markel's payments under the London Agreement.

10. The Agreement includes a complete, mutual release of all claims between the parties under the Subject Policy and the London Agreement, to the extent subscribed or agreed to by Markel, as further defined in the Agreement.

11. The Agreement further provides that if the Plan goes effective, the Trust will indemnify Markel under similar terms and conditions to the London Agreement as set forth in the Agreement, provided, however, that the Trust's obligation in this respect is limited to the Settlement Amount.

### Relief Requested

12. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

### Basis for Relief

13. This Court has statutory authority to authorize and approve the Debtors' entry into the Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate.

4

*See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

14. Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

15. The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)

DOCS_DE:186242.1 91100/001

(citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

16. The Agreement is in the best interests of the Debtors, their estates and their creditors because it resolves all existing and potential future disputes between the parties regarding their respective rights and obligations with respect to insurance coverage under the Subject Policy with respect to asbestos-related claims and other claims, and provides substantial monies to fund the payment by the Trust of Asbestos PI Claims. If the Agreement were not approved, the Trust would be subject to challenges by Markel to the Trust's entitlement to coverage under the Subject Policy pursuant to the London Agreement, and additional burden and cost in seeking to obtain the benefits of, and enforcing Grace's rights under, the London Agreement.

17. For all of the foregoing reasons, the Debtors submit that the Agreement is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Agreement.

## Notice

18. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative; and (v) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: March 6, 2013

KIRKLAND & ELLIS LLP
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Kathleen P. Makowski
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession