# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made by and between W. R. Grace & Co. (hereinafter referred to as "Grace"), on behalf of itself and the Grace Group, and Markel International Insurance Company Limited (f/k/a Terra Nova Insurance Company Limited) (hereinafter referred to as "Markel") (collectively "the Parties").

### WITNESSED THAT:

WHEREAS, Markel, along with other insurers that are not parties to this Agreement, severally subscribed to certain liability insurance policies in favor of Grace as more fully set forth and identified as the Subject Policy (defined below); and

WHEREAS, claims have been asserted against Grace alleging, *inter alia*, injury and/or damage due to exposure to asbestos and asbestos-containing materials and Grace has incurred certain liabilities, expenses and losses arising out of such claims; and

WHEREAS, Grace and Markel previously entered into the Amended and Restated Settlement Agreement executed by certain London Market Insurance Companies, including Markel, on August 7, 2009 (referred to as the "London Agreement"), resolving disputes with respect to obligations under certain policies of insurance, including the Subject Policy; and

WHEREAS, on or about April 2, 2001, W. R. Grace & Co., W. R. Grace & Co-Conn., and certain other debtors filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-1139 (JKF), *et seq.* and Grace and such other debtors continue to operate their businesses as debtors and debtors-in-possession; and

WHEREAS, on January 31, 2011, the Bankruptcy Court confirmed the Joint Plan of Reorganization and entered the Confirmation Order, and on January 30, 2012, the District

Court affirmed the Confirmation Order and issued or affirmed the injunctions in the Joint Plan of Reorganization, as amended by the District Court's Amended Memorandum Opinion of June 11, 2012; and

WHEREAS, in consideration of certain monetary payments and other consideration as more fully set forth herein, the Parties intend to adopt, by way of compromise, a full and final settlement that releases and terminates all rights, obligations and liabilities that the Parties may owe one another under the Subject Policy and the London Agreement completely and for all time.

<b>AGREEMENTS:</b>

NOW, THEREFORE, in full consideration of the foregoing and of the mutual promises and covenants herein contained, and intending to be legally bound hereby, subject to the entry of the Approval Order and subject to the terms and conditions set forth herein, the Parties hereby agree as follows:

I.   **Definitions**

The following definitions apply to the capitalized terms wherever those terms appear throughout this Agreement or in any attachments hereto. Capitalized terms in the prefatory paragraph, recitals, this Definitions section and in the sections below have the meanings ascribed to them therein to the extent they are not otherwise defined in this Definitions section. Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Joint Plan of Reorganization (as defined below). Each defined term stated in a singular form includes the plural form, each defined term stated in plural form includes the singular form, and each defined term stated in the masculine, feminine or neuter form includes each of the masculine, feminine and neuter forms. The word "including" means "including but not limited to."

A.    Approval Order:  "Approval Order" means an order of the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, in form and substance satisfactory to the Parties, approving this Agreement and the compromise and settlement memorialized herein between and among the Parties.

B.    Asbestos PI Claims:  "Asbestos PI Claims" has the meaning set forth in the Joint Plan of Reorganization.

C.    Bankruptcy Case:  "Bankruptcy Case" means the reorganization case pursuant to Chapter 11 of the United States Bankruptcy Court for the District of Delaware, styled as *In re W. R. Grace & Co., et al.* and jointly administered as Case No. 01-1139 (JKF).

D.    Bankruptcy Court:  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware and, to the extent it exercises jurisdiction over the Bankruptcy Case, the United States District Court for the District of Delaware.

E.    Business Day:  "Business Day" means any day that is not a Saturday, a Sunday or a federal holiday in the United States of America, nor a Bank Holiday in the United Kingdom.

F.    Claim:  "Claim" means:

1.    "Claim" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 101(5);

2.    "Demand" as that term is defined in the United States Bankruptcy Code, 11 U.S.C. Section 524(g)(5); and

3.    Any claim (whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or

indirect, matured or unmatured, liquidated or unliquidated, direct or
consequential, and whether in law, equity, admiralty or otherwise),
assertion of right, complaint, cross-complaint, counterclaim, affirmative
defense, writ, demand, inquiry, request, directive, obligation, suit, lawsuit,
action, cause of action, administrative proceeding, governmental claim or
action, order, judgment, settlement, mediation, arbitration, lien and any
other assertion of liability of any kind relating to any subject whatsoever.

G.    Committee:  "Committee" means the Official Committee of Asbestos Personal
Injury Claimants in the Bankruptcy Case.

H.    Confirmation Order:  "Confirmation Order" means the order entered by the
Bankruptcy Court on January 31, 2011 in the Bankruptcy Case confirming the
Joint Plan of Reorganization, together with the order of the District Court issued
on January 30, 2012, as amended by the District Court's Amended Memorandum
Opinion of June 11, 2012, pursuant to Section 524(g)(3)(A) of the Bankruptcy
Code confirming or affirming such order.

I.    District Court:  "District Court" means the United States District Court for the
District of Delaware.

J.    Effective Date:  "Effective Date" has the meaning set forth in the Joint Plan of
Reorganization.

K.    Entity:  "Entity" means any individual, corporation, limited liability company,
partnership, association, joint stock company, joint venture, estate, trust, including
the Trust as defined herein, unincorporated organization, federal, state, local or
foreign government or any political subdivision thereof, or other person or entity.

L.    <u>Execution Date</u>:    "Execution Date" means the earliest date on which this Agreement has been signed by all of the Parties.

M.    <u>Final Order</u>: "Final Order" means an order or judgment of the Bankruptcy Court, the District Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

N.    <u>Futures Representative</u>:    "Futures Representative" means David Austern, the Asbestos PI Future Claimants' Representative appointed, for each Debtor, by Order of the Bankruptcy Court dated May 24, 2004, and any successor to him.

O.    <u>Grace Group</u>: "Grace Group" means Grace, the past and present subsidiaries and affiliates of Grace, the predecessors and successors of such subsidiaries and affiliates, the directors, officers, agents and employees of Grace and of such subsidiaries and affiliates, and any other Entity that was insured under the Subject Policy and on whose behalf Grace has the power to release Claims under the Subject Policy.

P.    <u>Joint Plan of Reorganization</u>: "Joint Plan of Reorganization" means the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Security Holders as Modified Through December 23, 2010, including all exhibits thereto, as such plan has been and may be modified from time to time.

Q.    <u>Subject Policy</u>: "Subject Policy" means the insurance policy number 74DD662C issued to Grace and/or one or more members of the Grace Group for the policy periods between June 30, 1974 to June 30, 1975 (Markel subscribed to a $400,500 portion of the limits), June 30, 1975 to June 30, 1976 (Markel subscribed to a $400,500 portion of the limits), and June 30, 1976 to June 30, 1977 (Markel subscribed to a $400,400 portion of the limits).

R.    <u>Trust</u>: "Trust" means the "Asbestos PI Trust" as defined in the Joint Plan of Reorganization, or such other trust as may be established under Section 524(g) of the Bankruptcy Code to process and pay Asbestos PI Claims pursuant to a plan of reorganization filed by Grace, the Committee and the Futures Representative.

S.    <u>Trust Distribution Procedures</u>: "Trust Distribution Procedures" means the WRG Asbestos PI Trust Distribution Procedures substantially in the form attached as Exhibit 4 to the Joint Plan of Reorganization.

## II.    <u>Payment of the Settlement Amount</u>

A.    Within fourteen (14) days of the Approval Order becoming a Final Order, Markel shall pay to Grace, for the benefit of the Trust, the sum of Nine Hundred Fourteen Thousand Two Hundred One United States Dollars ($914,201.00) (the "Settlement Amount") in

immediately available funds. The Parties agree that payment of the Settlement Amount to Grace for the benefit of the Trust represents a fair, reasonable and good faith compromise of the value of Markel's obligations under the Subject Policy that otherwise would be paid out for Asbestos PI Claims, and fully, completely and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits, subscribed to by Markel under the Subject Policy that otherwise might be available to pay any and all Claims.

B.     Payment of the Settlement Amount to Grace for the benefit of the Trust shall be made in accordance with instructions provided to Markel by Grace.

## III.    Releases

A.     <u>Release by Grace and the Trust</u>

1.     Upon Grace's receipt of the Settlement Amount in accordance with Section II. of this Agreement, the Trust and Grace (on behalf of itself and, to the extent it has the power to bind them, the Grace Group) hereby release, remise, covenant not to sue and forever discharge Markel along with each of its parents, predecessors and successors and each of their respective subsidiaries, divisions and affiliates, and the directors, officers, agents, attorneys and employees of Markel in their capacities as such, with respect to:

a.     Any Claim and/or other obligations under, based on or arising under the Subject Policy and the London Agreement to the extent subscribed or agreed to by Markel and

b.     All Extra-Contractual Claims arising in connection with the Claims released pursuant to subsection A.1.a of this Section.

2.     GRACE AND THE TRUST ACKNOWLEDGE THAT THEY HAVE

BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  GRACE AND THE TRUST EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

B.    <u>Release by Markel</u>

1.    Upon payment of the Settlement Amount in accordance with Section II. of this Agreement, Markel hereby releases, remises, covenants not to sue and forever discharges the Grace Group and the Trust, and the trustees, officers, agents, attorneys and employees of the Trust in their capacities as such with respect to:

a.    Any Claim and/or other obligations under, based on or arising under the Subject Policy and the London Agreement to the extent subscribed or agreed to by Markel and

b.    Any Claim based on or arising out of any alleged act, omission, representation or conduct of any sort by Grace or the Trust in connection with the Subject Policy or the London Agreement.

2.    MARKEL ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS ATTORNEYS CONCERNING, AND IS FAMILIAR WITH, THE CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVES ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT.  MARKEL EXPRESSLY ASSUMES THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES OR THINGS MAY HAVE OCCURRED THAT IT DOES NOT KNOW OR DOES NOT SUSPECT TO EXIST.

C.    No Release of Obligations Under This Agreement

The releases set forth in subsections A. and B. of this Section do not relieve the Parties of any of their obligations under this Agreement.

IV.    **Release of Subrogation and Contribution Claims and Judgment Reduction Clause**

A.    Payments Made Under This Agreement

Markel shall not seek reimbursement of any portion of the Settlement Amount, whether by way of a Claim for contribution, subrogation, indemnification or otherwise, from anyone other than Markel's reinsurers or retrocessionaires in their capacity as such. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, indemnification or similar Claim against Markel relating to the Subject Policy, then Markel shall be free to assert such a Claim against such third party, to the extent permitted by the Joint Plan of Reorganization. To the extent that Markel recovers any amount from such third party, the net proceeds of such recovery (after any payment made by Markel to such third party on its Claim and after Markel is reimbursed from such proceeds for its fees, costs and expenses incurred in prosecuting or defending such Claims) shall be paid by Markel promptly to the Trust. Grace and the Trust shall use reasonable best efforts to obtain from all insurers with which they settle agreements similar to those contained in subsection A. of this Section.

B.    <u>Payments Received From Other Insurers</u>

Following the Trust's receipt of the Settlement Amount in accordance with Section II. of this Agreement, in the event that:

1.    Grace or the Trust, as applicable, and/or any other Entity becomes entitled to receive a payment from one or more of the insurers other than Markel for any Claims that have been remised, released, acquitted and forever discharged as against Markel pursuant to this Agreement, and

2.    As a result of such other insurer's obligation to pay described in subsection B.1. of this Section, such insurer either:

a.    Enters into a settlement with Markel, which settlement has been consented to by Grace or the Trust, as applicable, and any other

Entity (as applicable), requiring Markel to reimburse some or all of the payment made or to be made by such insurer or

b.  Obtains a final, non-appealable judicial or quasi-judicial determination or award entitling such insurer to obtain a sum certain from Markel for contribution, subrogation or indemnification or other similar Claim, against Markel for its alleged share or equitable share, or to enforce subrogation rights, if any, relating to such payment referenced in subsection B.1. of this Section,

the Entity entitled to receive such payment shall voluntarily reduce the amount of payment to be received by it (referred to in subsection B.1. of this Section) by the amount necessary to reduce or eliminate such settlement, determination or award against Markel (referred to in subsection B.2. of this Section).

To ensure that such a reduction is accomplished, Markel shall be entitled to assert this Section as a defense to any action against it for any such portion of the determination or award against Markel (referred to in subsection B.2. of this Section) and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Markel from any liability for the determination or award.  Grace or the Trust, as applicable, and/or any other Entity (as applicable) agrees that in any proceeding against other insurers in which Grace or the Trust, as applicable, and/or any other Entity makes a Claim for insurance rights or benefits for any Claim that may give rise to the events referenced in subsection B.1. of this Section, it will provide notice to Markel of such Claim within thirty (30) days of the time Grace or the Trust, as applicable, first becomes aware that such Claim is

reasonably likely to result in a Claim against Markel and shall consent to Markel's intervention in any such proceeding to the extent that Markel seeks to intervene to effectuate the intent of this Section.

V.    **Bankruptcy-Related Obligations**

    A.    Committee and Futures Representative Approval

        By executing this Agreement, Markel confirms receipt of written approval by the Committee and Futures Representative of this Agreement and the releases contained herein.

    B.    Approval Motion

        Promptly following the Execution Date, Grace will prepare and file a motion to approve this Agreement with the Bankruptcy Court, which motion shall be in form and substance reasonably satisfactory to Markel. Grace will use its reasonable best efforts promptly to obtain entry of the Approval Order, and to have the Approval Order become a Final Order. Markel, at its own expense, will cooperate with Grace in obtaining the Approval Order.

    C.    Approval Order

        Grace will use its reasonable best efforts to cause the Bankruptcy Court to enter an order providing, among other things:

        1.    That the terms of this Agreement are approved in their entirety, and that Grace is authorized to take all actions necessary to implement the terms of the Agreement;

        2.    That the Agreement will be designated an Asbestos Insurance Settlement Agreement, and that Markel will be designated as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization; and

        3.    That the Trust, upon its creation, will be bound to the provisions of this

Agreement with the same force and effect as if the Trust was a Party to this Agreement from the Execution Date.

D.    Designation as a Settled Asbestos Insurance Company

Upon the Approval Order becoming a Final Order, Grace shall designate this Agreement as an Asbestos Insurance Settlement Agreement, and Markel as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization, to the extent that it can be amended.

E.    Trust Bound by Agreement

Upon the Effective Date, the Trust shall be bound by this Agreement as if it had been a Party hereto as of the Execution Date.

F.    No Bankruptcy-Related Activities

Effective upon the Execution Date, Markel shall take no action of any nature (including filing any objection to the Joint Plan of Reorganization, initiating or taking discovery or filing any appeal of the Confirmation Order) that may hinder, delay or oppose actions of the Debtors, the Committee and/or the Futures Representative in the Bankruptcy Case. Upon the Approval Order becoming a Final Order, Markel expressly consents to the assignment of Asbestos Insurance Rights as provided in the Asbestos Insurance Transfer Agreement, Exhibit 6 to the Joint Plan of Reorganization.

VI.    **Termination of Agreement**

A.    Automatic Termination

After the Execution Date, this Agreement shall terminate upon the occurrence of any of the following events:

1.    The entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting it into a Chapter 7 case;

2.    The entry of an order by the Bankruptcy Court denying approval of this Agreement or the entry of an order by the District Court or the U.S. Third Circuit Court of Appeals reversing the Approval Order;

3.    The failure of the Effective Date to occur, coupled with circumstances that make clear that the Effective Date will never occur; or

4.    The failure of Grace to designate this Agreement as an Asbestos Insurance Settlement Agreement, and Markel as a Settled Asbestos Insurance Company, with respect to the Subject Policy on Exhibit 5 of the Exhibit Book to the Joint Plan of Reorganization in accordance with Section V.D. prior to the Confirmation Order becoming a Final Order.

B.    <u>Termination by Markel</u>

Markel shall have the option to terminate this Agreement by providing written notice of termination to Grace, the Committee and the Futures Representative within thirty (30) days of the occurrence of any of the following events:

1.    The entry of an Approval Order that becomes a Final Order stating that Markel is not a Settled Asbestos Insurance Company or that this Agreement is not an Asbestos Insurance Settlement Agreement;

2.    The confirmation of a plan of reorganization that materially and adversely affects the interests of Markel under this Agreement; or

3.    The modification of the Asbestos PI Channeling Injunction in such a way as to materially and adversely affect Markel.

Failure by Markel to give timely written notice of termination following the occurrence of any of the foregoing events shall be deemed a permanent waiver of such condition

by Markel.

     C.    <u>Effect of Termination</u>

        Notwithstanding anything in this Agreement to the contrary, in the event this Agreement terminates, is ineffective and/or is rendered null and void pursuant to this Section:

     1.    This Agreement shall be of no further force and effect, and the Parties shall have no further obligations under this Agreement, except the obligations set forth in Section VIII;

     2.    None of the Parties shall be bound by the terms of any Approval Order;

     3.    This Agreement shall no longer be designated as an Asbestos Insurance Settlement Agreement;

     4.    The Parties shall have the rights, defenses and obligations under or with respect to the Subject Policy, or any other agreement between the Parties relating to the Subject Policy, that they would have had absent this Agreement; and

     5.    The London Agreement will remain in force and effect as if this Agreement had never existed.

## VII.  <u>Indemnification</u>

     A.    From and after the Effective Date, the Trust shall indemnify and hold Markel harmless at all times from and against any and all liability, loss, cost or expense whenever arising (except as otherwise provided in subsections B., D., E. and H. of this Section) imposed upon or incurred by Markel as a result of any known or unknown, past, pending, future, or threatened claims, rights, demands, lawsuits, causes of action or proceedings that are asserted, initiated or continued by Grace or the Trust or any Person not a party to this Agreement against Markel that are based upon the Subject Policy and constitute Asbestos PI Claims that are subject to the

Asbestos PI Channeling Injunction. (The matters for which the Trust is obligated pursuant to this Section to indemnify and hold harmless Markel are hereinafter referred to as "Indemnifiable Claims".)

B.     The Trust's obligation to indemnify Markel for Indemnifiable Claims shall be subject to an aggregate limit equal to the Settlement Amount. Once the Trust has paid or incurred liabilities, losses, costs and expenses (including, but not limited to, fees and disbursements of counsel) for all Indemnifiable Claims of Markel in an amount equal to the Settlement Amount, the Trust shall not be obligated to continue to defend Markel and may elect to turn over to Markel full control of all pending actions and proceedings the defense of which the Trust has assumed pursuant to this Section.

C.     As soon as practicable after receipt by Markel of notice of any complaint or the commencement or continuation of any action or proceeding that constitutes an Indemnifiable Claim, Markel shall notify the Trust in writing of such Indemnifiable Claim and shall tender the defense thereof to the Trust.

D.     Any failure by Markel to promptly notify the Trust of any Indemnifiable Claim, or to tender the defense thereof to the Trust, shall relieve the Trust from any indemnification obligation with respect thereto.

E.     After the Trust receives any notice of an Indemnifiable Claim pursuant to subsection C. of this Section, the Trust shall promptly notify Markel whether the Trust will assume the defense of Markel against such Indemnifiable Claim. If the Trust elects to assume the defense of such Indemnifiable Claim, the Trust shall select counsel to represent Markel (which may include counsel presently representing Grace) and the Trust shall assume the payment of the fees and disbursements of such counsel; except that (1) the Trust shall not be

required to pay the fees and disbursements of more than one law firm for all Party Insurers in any jurisdiction in any single action or proceeding, and (2) the Trust's selection of counsel to represent Markel shall be subject to the consent of Markel, which consent shall not be unreasonably withheld. In any action or proceeding in which the Trust assumes the defense of Markel, Markel shall have the right to participate in such litigation and to retain its own counsel at Markel's own expense.

F.    The Trust and Markel shall consult to the extent practicable about all decisions to be made, either procedural or substantive, by counsel retained on behalf of Markel pertaining in any material manner defense of any Indemnifiable Claim. In the event the Parties are unable to agree, the final decision with respect to the defense of Markel, either procedural or substantive shall rest with the Trust, except that the Trust shall allow Markel complete control over the positions asserted in the interpretation of the language of the Subject Policy. The Trust shall keep Markel apprised in a timely manner of all significant developments in such defense and shall provide Markel at Markel's request, status reports that advise Markel of such developments.

G.    Any settlement or compromise made by the Trust on behalf of Markel with respect to an Indemnifiable Claim shall not require Markel's approval, but shall provide that it is not an admission of liability by Markel and is without precedent beyond the scope of the matters addressed by such compromise or settlement. The Trust shall give notice and provide reasonable and timely disclosure as soon as is practicable to Markel of any proposed settlement or compromise. Markel shall have such time as is practicable to review the proposed settlement or compromise and to present their views to the Trust. The Trust shall make reasonable efforts to accommodate Markel before agreeing to any settlement or compromise. The Party Insurers shall

not dispute any decision that was lawful and that was reasonably made within the discretion of the Trust. The Trust shall use best efforts to keep such settlement or compromise confidential.

H.    If the Trust declines to assume the defense of any Indemnifiable Claim, or fails to assume such defense in a timely manner, then Markel may employ and exclusively direct counsel to defend against such Indemnifiable Claim, and the Trust shall pay the reasonable fees and disbursements of such counsel; provided, however, that the Trust shall not be required to pay the fees and disbursements of more than one law firm in any jurisdiction in any single action or proceeding. If Markel settles any such Indemnifiable Claim without previously obtaining the Trust's consent, which consent shall not be unreasonably withheld, then the Trust shall be relieved of any obligation to indemnify Markel for such settlement. Markel shall use reasonable efforts to keep such settlement or compromise confidential.

I.    Nothing herein shall constitute any waiver of Markel's attorney-client privilege, which privilege shall extend only to such counsel retained to represent Markel and shall not extend to the Trust or its counsel unless specifically waived by Markel in writing with reference to a particular attorney-client communication.

J.    Markel and the Trust shall cooperate reasonably with each other to protect their respective interests with respect to Indemnifiable Claims. If the Trust has assumed the defense of any action or proceeding Markel shall comply in a timely manner with the Trust's appointed counsel's requests for access to documentation or information requested by the Trust's appointed counsel for purposes of defense. The Trust shall cooperate with Markel to avoid taking any positions in such litigation which are adverse to the general business interests of Markel. If the Trust has failed or declined to assume the defense of any action or proceeding, the Trust shall comply in a timely manner with Markel's requests for access to documentation or information

requested by Markel for purposes of such defense.

K.     For the avoidance of doubt, amounts paid by the Trust pursuant to this Section to or on behalf of Markel in connection with Indemnified Claims shall be paid in full and shall not be subject to any Payment Percentage as described in Section IV of the Trust Distribution Procedures.

## VIII.   <u>Confidentiality</u>

A.     Settlement negotiations leading up to this Agreement, all information exchanged between the Parties in connection with such negotiations and all related discussions (collectively, "Information") are confidential, shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, and shall not be disclosed by any Party except as permitted in subsections B. and C. of this Section.

B.     The Parties may disclose Information as follows:

1.     The fact that the Parties have entered into this Agreement may be disclosed to any Entity;

2.     The Information may be disclosed as necessary to obtain an Approval Order from the Bankruptcy Court;

3.     The Information may be disclosed by order of court, or pursuant to a written agreement of the Parties;

4.     The Information may be disclosed by Markel to its reinsurers, directly or through intermediaries;

5.     Grace or the Trust may disclose the Information to other insurers and their representatives;

6.     The Information may be disclosed to outside auditors or accountants of

any Party or to the Internal Revenue Service;

7.    A Party may disclose the Information to its accountants, to its counsel, to underwriters in connection with offerings of securities to be issued by such Party and to counsel for such underwriters; and

8.    The Information may be disclosed in any action brought to enforce the terms of this Agreement;

*provided, however*, that a Party making disclosure of any of the Information pursuant to one of the exceptions set forth in subsections B.3. through B.7. above shall inform any Entity to which such disclosure is made of the confidential nature of the Information and of the understanding upon which it has been disclosed and shall use reasonable efforts to obtain the agreement of such Entity to hold the Information in confidence.

C.    A Party may describe and/or make reference to this Agreement to the extent that such disclosure is required to comply with any statute, rule or other requirement of any government, governmental agency or other authority.

D.    In the event a court, litigant or governmental body requests or requires disclosure of anything protected by this Section, the Party from whom disclosure is sought shall immediately give written notice to the other Party in order to allow each Party to take such protective steps as may be appropriate.

## IX.    Non-Prejudice and Construction of Agreement

A.    This Agreement is intended to be and is a commercial accommodation between the Parties hereto and shall not be construed as an admission of coverage under the Subject Policy, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Policy.

B.    This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Markel with regard to other insureds, and without prejudice to positions taken by Grace with regard to other insurers. The Parties and the Trust specifically disavow any intention to create rights in third parties under or in relation to this Agreement except as expressly provided herein.

C.    This Agreement is the jointly drafted product of arm's-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. In particular, with respect to interpretation of this Agreement, the Parties waive any benefits from the principle of *contra proferentem* or other principles which would result in the interpretation of any ambiguities against insurers. No Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of the Party's identity as an insurance company or as the drafter of any part of this Agreement.

## X.    Modification

This Agreement may be amended, modified, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument which specifically states that it amends, modifies, supersedes or cancels this Agreement, executed by or on behalf of all of the Parties or, in the case of a waiver, by or on behalf of the Party waiving compliance. The failure of a Party at any time or times to require performance of any provision of this Agreement shall in no manner affect the right at a later time to enforce the same. No waiver by a Party of any condition, or of any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or

nydocs1-1001330.7

continuing waiver of any such condition or breach, or a waiver of any other condition or of any breach of any other term, covenant or warranty.

**XI.    Integration**

    A.    Entire Agreement

This Agreement constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect hereto.  Except as expressly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter its terms.

    B.    Titles and Captions

Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only.  Such titles and captions are intended in no way to define, limit, expand or describe the scope of this Agreement or the intent of any provision hereof.

**XII.    Governing Law**

This Agreement shall be governed by, and shall be construed in accordance with, the laws of the State of New York without regard to its choice of law rules.  Nothing in this Section shall affect what law would govern the interpretation or application of the Subject Policy.

**XIII.    Representations**

Each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation (subject, in the case of Grace, to the entry of an Approval Order).  Each Party represents and warrants that the person signing this Agreement on its behalf

is authorized to execute this Agreement (subject, in the case of Grace, to the entry of an Approval Order).

## XIV.  **Execution and Authority**

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

## XV.  **Notices**

Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications or notices to be provided pursuant to this Agreement shall be deemed to have been duly given if in writing and delivered in person, mailed first-class postage prepaid or by registered or certified mail, or transmitted by facsimile, addressed as follows:

If to Grace:

> W. R. Grace & Company
> 7500 Grace Drive
> Columbia, Maryland  21044
> Attn:  General Counsel
> Fax:  (410) 531-4545
>
> with a copy to:
>
> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, Illinois  60654
> Attn:  John Donley
> Fax:  (312) 862-2200

If to Markel:

> Markel International Insurance Company Limited
> The Markel Building
> 49 Leadenhall Street
> London EC3A 2EA
>
> with a copy to:
>
> Mendes & Mount
> 750 Seventh Avenue
> New York, NY  10019
> Attn:  Heather K. Calvano

                                                           Fax:  (212) 261-8750

If to the Committee:                 Caplin & Drysdale Chartered
                                     One Thomas Circle, NW
                                     Washington, D.C.  20005
                                     Attn:  Peter Lockwood
                                     Fax:  (202) 429-3301

                                     and

                                     Caplin & Drysdale Chartered
                                     375 Park Avenue, 35th Floor
                                     New York, New York  10152
                                     Attn:  Elihu Inselbuch
                                     Fax:  (212) 644-6755

                                     with a copy to:

                                     Anderson Kill & Olick, PC
                                     1251 Avenue of the Americas
                                     New York, New York  10020
                                     Attn:  Robert Horkovich
                                     Fax:  (212) 278-1733

If to the Futures Representative:    Asbestos PI Future Claimants' Representative
                                     c/o Claims Resolution Management Corporation
                                     3110 Fairview Park Drive, Suite 200
                                     Falls Church, Virginia  22042-0683
                                     Attn:  David T. Austern
                                     Fax:  (703) 205-6249

                                     with a copy to:

                                     Orrick, Herrington & Sutcliffe LLP
                                     1152 Fifteenth Street, NW
                                     Washington, DC  20005
                                     Attn:  Roger Frankel
                                     Fax:  (202) 339-8500

## XVI.  **Binding Effect**

This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

**W. R. GRACE & CO.**

By: *Richard C. Finke*

Name: RICHARD C. FINKE

Title: VICE PRESIDENT + ASSOCIATE GENERAL COUNSEL

Date: 2/22/2013

**MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED**

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

W. R. GRACE & CO.

By: _____

Name: _____

Title: _____

Date: _____


MARKEL INTERNATIONAL INSURANCE
  COMPANY LIMITED

By: _P.A. Stannard_____

Name: _PETER ALAN STANNARD_____

Title: _SENIOR CLAIMS ADJUSTER_____

Date: _18TH FEBRUARY 2013_____