IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hearing Date: April 22, 2013, at 9:00 a.m. |
| | ) Objection Deadline: April 5, 2013 |
| | ) |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE 2013 LONG-TERM INCENTIVE PLAN AND STOCK GRANTS TO DIRECTORS, AND THE AMENDMENT OF 2011 STOCK INCENTIVE PLAN TO IMPLEMENT SUCH PLAN AND GRANTS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order in the form attached hereto as Exhibit A (the "Order"), authorizing the Debtors to (1) implement the Grace 2013 Long-Term Incentive Plan (the "2013 LTIP") for certain eligible employees of the Debtors, which would consist of grants of (i) options to purchase the common stock ("Grace Stock") of the Debtors' parent, W. R. Grace & Co. ("Grace") and (ii) performance units that provide opportunities to receive cash awards (or grants of Grace Stock for executive officers and certain other high level employees

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

DOCS_DE:186452.1 91100/001

(collectively, the "Officers")) to be paid in early 2016, determined by the Debtors' financial performance over the three year period from January 1, 2013 until December 31, 2015; (2) grant Grace Stock (the "2013 Directors Stock Grant") to Grace's Directors in accordance with an updated annual retainer plan for Directors; and (3) to amend the Debtors' 2011 Stock Incentive Plan to effectuate such implementation and grants.[2]

In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.  The predicates for this Motion are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## BACKGROUND

3.  The Debtors' long-standing, ongoing strategy for its long-term incentive program is to adopt a new LTIP each calendar year. Thus, the Debtors have requested the Court authorize them, and the Court has entered orders so authorizing them, to implement the respective long-term incentive plans (the "Prior LTIPs") for management and other eligible employees of the Debtors selected to participate in the LTIPs (the "Eligible Employees"), as part of the Debtors' ongoing long-term incentive program as follows:

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Reorg Stock plan (as defined herein) or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases* [Docket no. 26368], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

| Date of Order | Period of LTIP |
|---|---|
| August 26, 2002 | 2002-2004 LTIP |
| March 3, 2003 | 2003-2005 LTIP |
| June 9, 2004 | 2004-2006 LTIP |
| July 13, 2005 | 2005-2007 LTIP |
| July 24, 2006 | 2006-2008 LTIP |
| August 29, 2007 | 2007-2009 LTIP |
| August 26, 2008 | 2008-2010 LTIP |
| April 22, 2009 | 2009-2011 LTIP |
| April 7, 2010 | 2010-2012 LTIP |
| April 8, 2011 | 2011 LTIP |
| June 14, 2012 | 2012 LTIP |

*Basic Design of the 2013 LTIP*

4. The total aggregate targeted award value of the 2013 LTIP (including the Chief Executive Officer) would be approximately $18.9 million.[3]

5. Consistent with the Prior LTIPs, a targeted award value would be determined for each Eligible Employee, so that the total of all such awards would equal the total aggregate award value specified in paragraph 4.[4]

6. For each Eligible Employee under the 2013 LTIP, 50% of the Eligible Employee's aggregate targeted value would be awarded as an option on Grace Stock (the "2013 Option Awards"); and the other 50% would be awarded as performance based units (the "2013

---

[3] The total targeted award value approved under the 2012 LTIP, including the CEO, was approximately $17.0 million. As a result of limited authority under the 2011 Stock Incentive Plan, certain adjustments were made to the 2012 LTIP, resulting in the granting of approximately 810,000 shares of Grace Stock. The 2012 LTIP consisted solely of grants of stock options, no cash or cash opportunities were granted.

[4] As with the Prior LTIPs, the Debtors reserve the right to determine whether a particular employee is an Eligible Employee with respect to the 2013 LTIP and the right to vary the selection, and the degree of participation, of Eligible Employees under the 2013 LTIP from the Eligible Employees identified under the Prior LTIPs.

PBUs"). The 2013 PBUs will provide an opportunity to receive a cash payment in early 2016, to the extent the Debtors' achieve pre-determined financial targets during the 3-year performance period 2013 to 2015. Eligible Employees who are Officers, however, would not receive a cash payment with respect to their 2013 PBUs, but instead would receive a number of shares of Grace Stock in early 2016, which are equal in value to the cash payment that the Officer would have otherwise received based on the achievement of such financial targets.

*The 2013 Option Awards*

7. The Debtors anticipate awarding 2013 Option Awards covering roughly 600,000 shares of Grace Stock,[5] based on 50% of the total aggregate targeted value under the 2013 LTIP (that is, approximately $9.45 million of the total aggregate value).[6] Those awards would be granted under the Debtor's 2011 Stock Incentive Plan, as amended (as specified below).

8. The provisions of the 2013 LTIP Option Awards would be the same as applicable to options awarded last year under the 2012 LTIP.

9. The "strike price" of the 2013 LTIP Option Awards would be the price of Grace Stock as of the grant date (i.e., the average of the high and low market price of Grace Stock on that date).

10. One third of the awarded stock options would vest in 2014, one-third would vest in 2015, and the remaining one-third would vest in 2016; each on the anniversaries of the grant date.

---

[5] Last year, under the 2012 LTIP, as stated, the Debtors granted options covering approximately 810,000 shares of Grace Stock.
[6] This estimate is based on a calculation that includes a revised Black Scholes factor and the higher price of Grace Stock than last year. The revised Black Scholes factor for this calculation is 3.77. This factor was calculated in consultation with the Debtors independent compensation consultant, Towers Watson. The formula to determine the value of an option on a share of Grace Stock awarded to an Eligible Employee under the 2013 LTIP is as follows: $72.63 (the closing price of Grace Stock on February 7, 2013) ÷ 3.77.

11. The stock options would generally be exercisable for a period of 5 years after grant.[7]

12. Should the price of Grace Stock, as of the grant date, differ substantially from the price specified in footnote 6, the Debtors may adjust the overall award approach and formula appropriately, provided that the number of shares covered by the 2013 Option Awards would not exceed 600,000 shares of Grace Stock.

*2013 PBUs*

13. As stated above, the 2013 LTIP would differ from the Prior LTIPs, by including the grant of 2013 PBUs, which will provide Eligible Employees an opportunity to receive a cash payment (or shares of Grace Stock, in the case of Officers) in early 2016, based on the extent to which the Debtors achieve pre-determined financial targets for the three year period ending December 31, 2015.

14. The Debtors anticipate that the applicable financial targets will be finalized and approved at its May 2013 Board of Directors meeting, and will include a three-year cumulative "earnings before income tax" ("EBIT") growth rate.

15. As stated, 2013 PBUs will comprise 50% of the total aggregate award value granted to each Eligible Employee, including each Officer and the Chief Executive Officer (for a total of approximately $9.45 million).

16. Following would be the provisions applicable to the grant of 2013 PBUs to Eligible Employees:

(i) Each Eligible Employee would be granted a specific number of PBUs on a specific date in May 2013, calculated by the following formula: 50% of the Employee's total

---

[7] The stock options awarded the last four years - under the 2009-2011 LTIP, the 2010-2012 LTIP, the 2011 LTIP and the 2012 LTIP - also were subject to 3-year vesting, and were exercisable for a period of 5 years after grant.

2013 LTIP targeted award value, divided by the price of a share of Grace Stock on the date of the grant.

(ii) The 2013 PBUs would vest 100% as of the last day of the Performance period – December 31, 2015 (i.e., "three-year cliff vesting") – which means that no Eligible Employee (including each Officer) would be entitled to any payment (or stock award) related to the 2013 PBUs, if he or she ceases service with the Debtors before that date, provided that an Eligible Employee would be entitled to a pro-rated portion of his or her 2013 LTIP PBUs if he or she ceased service with the Debtors before that date as a result of involuntary termination after a "change in control" of the Debtors, or as a result of his or her death or disability or retirement after age 62 (or under such other circumstances determined by the Compensation Committee of the Debtors' Board).

(iii) The final number of PBUs allocated to the Employee would, as stated, depend on the extent to which the Debtors achieve the applicable financial targets for the three year period ending December 31, 2015. The final number of the Employee's PBUs would be determined as soon as practical after that date.

(iv) The final number of PBUs allocated to the Employee would be capped at two-times the number of PBUs originally granted. That is, the final number of each Eligible Employee's PBUs, calculated in early 2016, would be between 0 and two times the original number of PBUs granted in May 2013 (i.e., a maximum number of PBUs equal to 200% of the original grant), depending on the Debtors' financial performance.

(v) The dollar amount attributable to each PBU would be equal to the price of a share of Grace Stock as of close of business on December 31, 2015.

17. The Eligible Employees (except for Officers) would have their final PBUs settled in cash. That is, each Eligible Employee would be paid an amount equal to his or her number of final PBUs multiplied by the price of a share of Grace Stock as of December 31, 2015.

18. The Officers would have their final PBUs awards settled in Grace Stock, instead of cash. That is, each Officer would be awarded a number of shares of Grace Stock equal to the final number of PBUs applicable to the Officer, as of December 31, 2015.

19. In conjunction with settling PBUs in Grace Stock for Officers, instead of cash, the Debtors have implemented Grace Stock ownership guidelines for Officers. Under those guidelines, each Officer will be required to hold a minimum number of shares of Grace Stock, ranging from 1-times annual salary for lower level Officers, up to 5-times annual salary for the CEO, to be achieved within 5 years of becoming an Officer, and therefore, any final PBUs under the 2013 LTIP settled in Grace Stock could be used to assist in satisfying the guidelines.

20. The Debtors estimate that the PBUs awarded to Officers would result in grants of Grace Stock totaling approximately 100,000 shares, in the event the Debtors satisfied the financial targets "at 100%", and such share grants would not exceed approximately 200,000, even if the Debtors' performance exceeds the highest financial targets.[8]

21. This design assures that each Eligible Employee (whether or not an Officer) who is awarded PBUs under the 2013 LTIP would be motivated to (i) achieve and exceed the applicable financial targets (which would affect the final number of PBUs applicable to the

---

[8] The Debtors will reserve the discretion to settle some part of the PBUs for Officers in cash in 2017, should such become necessary as a result of share authority issues or otherwise.

Employee at the end of the 2013-2015 performance period), and (ii) increase the value of shares of Grace Stock (which would measure the value of the Employee's final number of PBUs).

*The 2013 Directors Stock Grant*

22. The 2013 Directors Stock Grant is part of the revised annual retention plan for Directors of Grace, effective for the 2013 calendar year and thereafter. Under the revised annual retention plan, each year beginning with 2013, each Director (excluding the CEO) will receive a number of shares of Grace Stock worth $100,000, as of the date the Board meets in May of the year at issue.[9]

23. The revised Directors annual retainer plan, including the 2013 Directors Stock Grant, has been implemented in conjunction with the implementation of Grace Stock holding guidelines for the Directors. Under those guidelines, each Director will be required to hold minimum number of shares of Grace Stock valued at a minimum of 5-times the annual cash retainer paid to Directors (currently, $80,000); to be achieved within 5 years of becoming a Director, or in the case of current Directors, by December 31, 2017.

24. There are currently 8 Directors, excluding the CEO, each of whom would receive a grant of shares of Grace Stock under the 2011 Stock Incentive Plan (as amended as specified below) valued at $100,000 on the date of grant; pursuant to the revised annual retainer plan for Directors. While the price of a share of Grace Stock on the grant date in May is unknown, the Debtors estimate that the grant for each director could be approximately 1,300 shares; for a total of approximately 10,400 shares under the 2013 Directors Stock Grant.

---

[9] Under the prior retention plan, which applied in 2012, each Director received $178,750 in cash for a full year of service (plus additional cash for serving as a chair person on Board Committees or as Lead Independent Director); no Grace Stock was awarded to the Directors. Under the revised retention plan, the Directors annual cash payment is reduced to $80,000.

*Amendments To The 2011 Stock Incentive Plan*

25.  As background, the Debtors' 2011 Stock Incentive plan was initially approved by the Court so that the Debtors could implement the 2011 LTIP. Thereafter, the Debtors utilized the remaining authority under the 2011 Incentive Plan last year to implement the 2012 LTIP.[10] As a result, the number of shares available under the 2011 Stock Incentive Plan has been exhausted.

26.  In order to implement the 2013 LTIP and the 2013 Directors Stock Grant, the Debtors are seeking authority to amend the 2011 Stock Incentive Plan in the following manner:

(i) The authority under the Plan shall be increased to cover an additional 800,000 shares of Grace Stock.[11]

(ii) Awards of Grace Stock to officers attributable to PBUs under the 2013 LTIP and to directors under the 2013 Directors Stock Grant will be counted as utilizing one share of Grace Stock under the Plan (i.e., one share of the additional authority specified under subparagraph (i) above).[12]

---

[10] Pursuant to the 2011 Stock Incentive Plan, the options for Grace Stock are awarded to Eligible Employees at the discretion of Grace management and the Compensation Committee of Grace's Board of Directors, based upon the pay grade of the Eligible Employee, the performance of the Eligible Employee and the value of the Eligible Employee to Grace. The Compensation Committee is required to approve all management recommendations regarding grants of options on Grace Stock under terms of 2011 Stock Incentive Plan, as will be the case under the "Reorg Stock Incentive Plan" (see footnote 14).

[11] As further explained above, the Debtors believe that this authority level is sufficient to satisfy its obligations under the 2013 LTIP and 2013 Director Stock Grant as follows:
  The 2013 LTIP –
  - Approximate award of options in 2013: 490,000 (with a maximum of 600,000)
  - Approximate award of shares to Officers in 2016: 100,000 (with a maximum of approximately 200,000)
  2013 Directors Stock Grant –
  - Approximate award of 10,400 shares in 2013

The difference between the total authority necessary to satisfy these obligations, and the 800,000 share authority requested, would be used to account for new hires, promotions and other contingencies during the remaining pendency of the Chapter 11 Cases.

[12] The 2011 Stock Incentive Plan currently provides that three (3) shares of the authority to issue equity under that Plan shall be utilized for each (1) one share of Grace Stock granted under the Plan, versus a 1 to 1 ratio with respect to options on Grace Stock.

(iii) The 2011 Stock Incentive Plan shall terminate upon the Debtors' emergence from chapter 11.[13]

*The 2013 LTIP and Directors Stock Grant Are Competitive and Consistent With Shareholders Interests*

27. Based on the advice of the Debtors' independent compensation consultant, Towers Watson, the Debtors believe that the 2013 LITP is competitive with respect to long term incentive programs for key employees of other companies within the Debtors' peer group; and that the revised Directors annual retainer plan, including the 2013 Director Stock Grant, is also competitive within that group.

28. The Debtors also believe that the design of the 2013 LTIP and the revised Directors annual retainer plan to include grants of Grace Stock (including the 2013 Directors Stock Grant) is consistent with the Debtors' goal to align the interests of its leadership and other Eligible Employees with the interests of its shareholders.[14] In addition, the Debtors believe that such goal is achieved under the 2013 LTIP, as well as the 2013 Directors Stock Grant, without substantial dilution to the outstanding shares held by its shareholders.[15]

29. For these and other reasons articulated herein, the Debtors believe that 2013 LTIP and 2013 Directors Stock Grant are reasonable and appropriate, and will enhance the prospect of retaining, motivating and recruiting leadership and other key employees.

---

[13] Upon emergence, the 2011 Stock Incentive Plan would no longer be necessary because the stock incentive plan proposed as part of the Debtors Joint Plan of Reorganization (Exhibit 31 thereto) would become effective, provided that the authority under the 2011 Stock Incentive Plan is utilized to settle any 2013 PBUs in stock for Officers.

[14] The Debtors continue to believe that this approach of aligning its leadership and other Eligible Employees with the interests of shareholders is increasingly important now that these Chapter 11 Cases are closer to drawing to a close. Although various parties are prosecuting appeals to the Confirmation Order, the Debtors are now focusing on satisfying all of the conditions precedent to the Plan Effective Date in the near future.

[15] The 850,000 shares needed constitute about 1.2% of the over 75.3 million shares of Grace Stock outstanding as of the end of 2013.

**RELIEF REQUESTED**

30. By this Motion, the Debtors request that the Court, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorize the Debtors to implement: (a) the 2013 LTIP, including but not limited to the 2013 Option Awards and the 2013 PBUs; (b) the 2013 Directors Stock Grant; and (c) certain amendments to the 2011 Stock Incentive Plan.

**ANALYSIS**

31. Section 105(a) of the Bankruptcy Code permits the court to "issue any order... that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court has recognized that the broad reach of its equitable powers under section 105(a) of the Bankruptcy Code authorizes, among other things, implementation of long-term incentive plans.

32. Section 363(b)(1) provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ...." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); see also Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by an "articulated business justification"); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Ernst Home Ctr., Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

33. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Montgomery Ward, 242 B.R. at 153; see also Delaware & Hudson, 124 B.R. at

175-76; In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).

34. Permitting the Debtors to continue the Debtors' long-term incentive compensation strategy by implementing the 2013 LTIP and 2013 Directors Stock Grants, will accomplish the sound business purpose of maximizing the value of the Debtors' estates and furthering the Debtors' efforts to successfully complete their reorganization and have the Joint Plan become effective, by promoting the motivation and retention of Eligible Employees who are necessary to achieve the completion of these chapter 11 cases in a prompt and efficient manner.

35. Continuing the long-term incentive compensation strategy for the 2013 LTIP, and implementing the 2013 Directors Stock Grants, whereby the Debtors' leadership and other Eligible Employees will be awarded options, and shares of, Grace Stock, will allow the Debtors' management to more effectively and efficiently align the interests of Eligible Employees with the interests of the Debtors' shareholders.

36. It is significant to the Debtors' estates and their creditors for the Debtors to provide the appropriate compensation to retain high-performing employees in sufficient numbers during the remaining pendency of the Debtors' chapter 11 cases to maximize the likelihood of a successful emergence from chapter 11.

37. In light of the foregoing, the Debtors believe that the 2013 LTIP and 2013 Directors Stock Grants are reasonable and appropriate and will enhance the prospect of retaining and motivating leadership and other Eligible Employees and, ultimately, attaining a

successful emergence from Chapter 11. For all of these reasons, the 2012 LTIP should be approved.

## NO PREVIOUS MOTION

38. No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

39. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; and (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[remainder of this page is intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order authorizing, but not requiring, the Debtors to implement: (a) the 2013 LTIP, including but not limited to the 2013 Option Awards, the 2013 PBUs and the 2013 Directors Stock Grant; and (b) certain amendments to the 2011 Stock Incentive Plan, and granting such other and further relief as the Court deems just and proper.

Dated: March 18, 2013

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

_/s/ Laura Davis Jones_

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession