## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: April 22, 2013, at 9:00 a.m.** |
| | ) **Objection Deadline: April 5, 2013** |
| | ) |

### MOTION FOR AN ORDER APPROVING BAKER DONELSON'S MONTHLY FIXED FEE, CLARIFYING THAT SECTION 328(A) PROVIDES THE APPROPRIATE STANDARD OF REVIEW AND EXPANDING THE SCOPE OF CERTAIN LEGISLATIVE AFFAIRS SERVICES NUNC PRO TUNC TO MAY 1, 2012

#### OVERVIEW OF RELIEF REQUESTED

The Debtors are filing this motion (the "Motion"): (a) responding to the Fee Auditor's

report for the fourth quarter of 2011 and first quarter of 2012 regarding fees payable to Baker,

Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson") for certain "Legislative

Affairs Services" (the term is defined below) provided by Baker Donelson's non-attorney public

policy advisors and lobbyists; and (b) requesting approval of an increase in the cap on the

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

monthly retainer from its current $20,000 to $30,000 so that a second public policy advisor may represent the Debtors.[2]

The Fee Auditor's report recommends that the Court greatly reduce the $19,000 monthly retainer by applying an implied effective hourly rate of no more than $1,000 per hour. This implied effective hourly rate is nowhere to be found in the retention agreements or orders approving Baker Donelson's engagement. The Debtors respectfully submit that the report's recommendation may have stemmed from the fact that the Fee Auditor may not have been aware at the time the report was filed of the information contained in this Motion and the Shelnitz Affidavit. In view of this newly adduced information. the Debtors respectfully request that the Court to approve the requested fees in their entirety for two closely interrelated reasons.

First and foremost, the benefits derived by the Debtors from Baker Donelson's Legislative Affairs Services over the past ten years or more far, far exceed the cost of the monthly retainers during that period.[3] Indeed, Baker Donelson's public policy advisors have delivered nonpareil results over the years, including:

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, *Affidavit of Mark Shelnitz in Support of Motion for an Order Approving Baker Donelson's Monthly Fixed Fee, Clarifying that Section 328(a) Provides the Appropriate Standard of Review for the Retainer and Expanding the Scope of Certain Legislative Affairs Services Nunc Pro Tunc to May 1, 2012* (the "Shelnitz Affidavit"), the Baker Donelson Retention Orders, the Interim Compensation Order or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases* [Docket no. 25881], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

[3] The Debtors filed the Shelnitz Affidavit contemporaneously herewith in support of this Motion. By their *Motion Requesting Entry of a Protective Order Authorizing the Debtors to File Under Seal the Affidavit of Mark A. Shelnitz in Support of Motion for an Order Approving Baker Donelson's Monthly Fixed Fee, Clarifying that Section 328(a) Provides the Appropriate Standard of Review for the Retainer and Expanding the Scope of Certain Legislative Affairs Services Nunc Pro Tunc to May 1, 2012* (the "Seal Motion"), the Debtors have requested that the Shelnitz Affidavit be filed under seal to protect certain business-sensitive commercial information contained therein.

- Responding to emergent issues for the Debtors, both domestically and overseas, particularly in China and implementing strategies to respond to those issues, often within 24 hours of the issue emerging. Shelnitz Affidavit at ¶ 6, 8 & 9;

- Working closely with state and federal legislative and executive-branch staffs on numerous different legislative and regulatory initiatives involving, among other matters, rare earths and environmental issues. *Id.* at ¶¶ 6-7, 9-10 & 13-18;

- Advising on acquisitions of certain overseas entities, which has often entailed resolving politically sensitive issues with foreign government contacts. *Id.* at ¶ 11;

- Developing and coordinating strategies regarding asbestos compensation reform legislation and other asbestos-related issues in a broad range of contexts. *Id.* at ¶¶ 13-17; and

- Domestic and overseas political and domestic risk assessments. *Id.* at ¶¶ 26-32.

Second, Baker Donelson charges a fixed $19,000 per month retainer, regardless of whether it performs one hour or one hundred hours of work in a particular month, because that retainer ensures that Baker Donelson will be available to the Debtors on a 24-hour-a-day, seven-day-a-week basis. The value of Baker Donelson's being "on call" in this manner is of the utmost importance to the Debtors, as evidenced by the short-notice nature of many of Baker Donelson's outstanding accomplishments over the past decade or more.

It is also worth noting that the retainer's amount is well within the range of fees charged by companies similarly situated to Grace for similar services.[4] The Debtors thus submit that the monthly fixed fees for the two quarters at issue were more than well worth the cost—even if Baker Donelson had not billed a single hour during those quarters. *See* Shelnitz Affidavit at ¶¶ 3-5.

---

[4]    *See Lobbying Costs: A Comparable Company Analysis*, attached hereto as <u>Exhibit A</u>. For example, according to public filings, Eastman Chemical spent a total of $1,260,000 on lobbyists in the first three quarters of 2012. Of that amount, approximately $510,000 was paid collectively to 3 consultants.

In order to clear up any confusion on the part of the Fee Auditor regarding the appropriate standard of review for Baker Donelson's fees, the Debtors also respectfully request the Court enter the attached form of order (the proposed form of which is attached as <u>Exhibit B</u>, the "<u>Order</u>") clarifying the appropriate standard of review for Baker Donelson's future fee applications. Specifically, the Debtors respectfully submit that section 328(a) is the appropriate standard for reviewing non-attorney professional persons' fixed monthly fee arrangements. Indeed, Baker Donelson's non-attorney public policy advisors arguably need not have been retained under section 327(a) at all, but instead should have been retained and compensated under section 363(b)'s "sound business purpose" standard—a standard that Baker Donelson's fees easily meet. *See, e.g., Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 621 (Bankr. S.D.N.Y. 1986) (lobbyists are not "professional persons," as section 327(a) uses the term, and should therefore be retained and compensated pursuant to section 363(b)). It was because Baker Donelson is a law firm that employs non-attorney professionals that, out of an abundance of caution, the Debtors requested the Court retain Baker Donelson as a section 327(a) professional person, even though the Debtors do not employ Baker Donelson's attorneys in any capacity.

Finally, the Debtors request that the Court raise the cap on Baker Donelson's monthly retainer from $20,000 to $30,000 *nunc pro tunc* to May 1, 2012, in order to permit Baker Donelson to employ two non-attorney public policy advisors to support the Legislative Affairs Services. The Debtors' need for such services have increased since mid-2012 as a result of a number of new projects that the Debtors have specifically requested Baker Donelson perform. The increased monthly retainer will compensate Baker Donelson for its employment of William Corcoran, a former vice president of Grace, who will be assisting Keith Kennedy in such matters.

Mr. Kennedy, who is the chair of Baker Donelson's Federal Public Policy Group, continues to the lead the engagement, as he has done for the last several years. Mr. Corcoran is a consultant in Baker Donelson's Public Policy Practice Group.

The Debtors have consulted with, and provided a draft of this Motion to, the Fee Auditor (as defined below). The Fee Auditor has informed the Debtors that, while it does not oppose the relief requested herein, it cannot support the Motion, as opining on retention applications is outside the scope of its authority as Fee Auditor.

In support of this Motion, the Debtors respectfully state as follows:

<u>**JURISDICTION**</u>

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.     The predicates for the relief sought herein are 11 U.S.C. § 327(a), 328(a) & 331, Fed. R. Bank. P. 2014(a) and Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2012, and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*,  issued January 30, 1996 (the "<u>U.S. Trustee Guidelines</u>").

<u>**BACKGROUND**</u>

**I.     INTERIM COMPENSATION PROCEDURES & FEE AUDIT PROCESS**

3.     Interim applications for payment of fees and reimbursement of expenses are governed by this Court's: (a) *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members*, dated May 3, 2001, effective as of April 2, 2001

[Docket no. 197]; and (b) *Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members*, dated April 17, 2002 [Docket no. 1949] (together, the "Interim Compensation Order").

4.      This Court's *Order Appointing Fee Auditor in Accordance with the Court's Direction*, dated March 18, 2002 [Docket no. 1852] (the "Fee Auditor Order") provides for Warren H, Smith & Associates, P.C., (the "Fee Auditor") to review interim fee applications of all retained professionals and statutory committee members pursuant to the Interim Compensation Order.

## II. THE NATURE OF BAKER DONELSON'S ENGAGEMENT AND COMPENSATION & THE RETENTION ORDERS

### A. The Original Retention Order and Related Pleadings

5.      By this Court's *Order Authorizing the Debtors to Retain and Employ Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. as a Professional Employed by the Estate for the Debtors, dated June 16, 2004* [Docket no. 5821] (the "Original Retention Order," attached hereto as Exhibit C), the Debtors were authorized under sections 327(a) and 328(a), effective as of April 2, 2001, to retain Baker Donelson to provide the Legislative Affairs Services.  The order further stated that:

> Baker shall be compensated under sections 330 and 331 of the Bankruptcy Code and any further or other Orders of this Court concerning compensation of professionals in these cases.

6.      Consistent with Baker Donelson's retention under section 328(a), the individual providing those services, James D. Range, was not an attorney.  *See Affidavit of James D. Range in Support of the Application of the Debtors for the Entry of an Order Authorizing the Retention and Employment of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. as a Professional*

*Employed by the Estate for the Debtors* (the "Range Affidavit") at ¶¶ 1 & 12 (attached as Exhibit A to the *Application of the Debtors for the Entry of an Order Authorizing the Retention and Employment of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. as a Professional Employed by the Estate for the Debtors*, dated May 19, 2004 [Docket no. 5617]) (the "Original Retention Application," a copy of which is attached hereto as Exhibit D).   In addition, as discussed in the Original Retention Application and the Range Affidavit, the fee arrangement by which Baker Donelson was to be compensated with payment of $17,000 per month to be made in arrears is typical for non-attorney services such as the Legislative Affairs Services.   Original Application at ¶¶ 12-15; Range Affidavit at ¶ 12.

**B.     The First Modified Retention Order and Related Pleadings**

7.     On March 15, 2005, the Court entered its *Order Modifying and Expanding the Scope of Services Provided by Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.* [Docket no. 8029] (the "First Modified Retention Order," attached hereto as Exhibit E), which expanded the scope of work to include the China Assistance Services.  The First Modified Retention Order authorized the Debtors pursuant to section 328(a) to compensate Baker Donelson $35,000 per month for the China Assistance Services during the period of January 1, 2005, through July 30, 2005.  The First Modified Retention Order also increased the Legislative Affairs Services cap from $17,000 to $20,000, effective as of March 1, 2005.

8.     The First Modified Retention Order further stated in relevant part:

> Baker Donelson shall be compensated for the China Assistance Services and Legislative Affairs Services, and reimbursed for expenses incurred providing such services, consistent with the terms described in the Motion, and in accordance with the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and orders of this Court, including without limitation … [the Interim Compensation Order].

Notwithstanding anything to the contrary in the [Interim
Compensation Order], Baker Donelson will not be required to
submit detailed daily time records or expense records as part of
any monthly statements, or interim or final fee applications
submitted by Baker Donelson with respect to its provision of the
China Assistance Services or Legislative Affairs Services;
provided, however, that in lieu of such records, Baker Donelson
shall submit a reasonably detailed summary of such services
earned in connection therewith as part of such monthly statements,
or interim or final fee applications.

Notwithstanding anything to the contrary herein or in the
Application, the Affidavit or the Administrative Order, Baker
Donelson's fees shall be subject to the approval of the Court under
a reasonableness standard upon proper application by Baker
Donelson ... .

C.    **The Second Modified Retention Order and Related Pleadings**

9.    On February 26, 2006, the Court entered its *Order Authorizing the Expansion of
the Employment of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. as Special Counsel
to the Debtors* [Docket no. 11887] (the "Second Modified Retention Order," attached hereto as
Exhibit F," which, along with the Original Retention Order and the First Modified Retention
Order, are collectively referred to as the "Baker Donelson Retention Orders"), which authorized
the Debtors, pursuant to sections 327(a) and 328(a), to continue allowing Baker Donelson to
provide the China Assistance Services from October 1, 2005, until the expiration of the letter
agreement governing those services, which was March 31, 2009.    The Second Modified
Retention Order authorized the Debtors to compensate Baker Donelson for the China Assistance
Services in the amount of $10,000 per month, in addition to the $20,000 per month for
Legislative Assistance Services authorized in the First Modified Retention Order.

10.    The Second Modified Retention Order further stated in relevant part:

Notwithstanding anything to the contrary in the Interim
Compensation Order, Baker Donelson is not required to submit
detailed daily time records or expense records as part of its
monthly, quarterly, and final fee applications; provided, however,

that in lieu of such records, Baker Donelson shall submit a reasonably detailed summary of such services performed in connection therewith as part of its monthly, quarterly, and final fee applications.

11.    Pursuant to agreement with the Debtors, Baker Donelson's monthly fee for Legislative Affairs Assistance was subsequently reduced to $19,000 per month.

**D.    The November 2012 Motion**

12.    On November 12, 2012, the Debtors filed their *Motion for Authorization to Modify and Expand Scope of Services Provided by Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. and Request for Entry of Order Nunc Pro Tunc* (the "November 2012 Motion"). The November 2012 Motion requested the Court increase the Legislative Affairs Services fee cap from $20,000 per month to $30,000 per month, *nunc pro tunc* to May 1, 2012, to reflect a newly expanded scope of Legislative Affairs Services, which had arisen as a result of a number of new projects the Debtors had specifically requested Baker Donelson perform.  In addition, Baker Donelson had retained the special consulting services of William Corcoran to work on those projects along with Keith Kennedy, who will continue to represent the Debtors, as he has for the last several years.  The requested increase in fees is due almost entirely to compensating Baker Donelson for Mr. Corcoran's services.  Mr. Corcoran is not an attorney.

13.    Once it became clear that the Debtors would need to file this Motion, the Debtors withdrew the November 2012 Motion, and are instead including the increase in the Legislative Affairs Services fee cap as part of the relief requested herein.

14.    Finally, Baker Donelson performed an updated conflicts search based upon a list provided to it by Debtors' counsel.  The results of that search are contained in the *Affidavit of E. Franklin Childress, Jr., in Support of Motion for an Order Approving Baker Donelson's Monthly Fixed Fee, Clarifying that Section 328(a) Provides the Appropriate Standard of Review for the*

*Retainer and Expanding the Scope of Certain Legislative Affairs Services Nunc Pro Tunc to May 1, 2012* (the "Childress Affidavit," attached hereto as Exhibit G). For the reasons set forth in the Childress Affidavit, Baker Donelson submits that it remains a "disinterested person," as Bankruptcy Code section 101(14) defines that term, and does not represent or hold any interest adverse to the Debtors or their estates.

III.    **THE FEE AUDITOR'S REPORT FOR THE 43RD AND 44TH QUARTERLY PERIODS**

15.    Exhibit H to this Motion is the *Fee Auditor's Combined Final Report Regarding the Thirtieth and Thirty-First Quarterly Fee Applications of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, dated December 7, 2012 [Docket no. 30019] (the "Fee Auditor's Report"), which recommends that Baker Donelson's fees for the quarters October – December 2011 (the Thirtieth Interim Period) and January – March 2012 (the Thirty-First Interim Period) be reduced.[5]    Specifically, the Fee Auditor recommended that Baker Donelson's fees be arbitrarily reduced by applying a rate of $1,000 per hour. *See* Fee Auditor's Report at ¶ 6. Based upon this rate, the Fee Auditor stated that:

> for the Forty-Third Interim Period a fee of $22,000.00 ($1,000 x 22 hours) would be reasonable, and that for the Forty-Fourth Interim Period a fee of $5,000.00 ($1,000 x 5 hours) would be reasonable.

*Id.*

16.    The Fee Auditor based its recommendation on the standard of review found in section 330(a), instead of the applicable standard of review found in section 328(a). The Fee Auditor did so because it believed that the proper standard of review after entry of the Second Modified Retention Order was section 330(a), rather than section 328(a). Fee Auditor's Report at ¶ 5. In light of the section 330(a) standard of review, the Fee Auditor noted that in the prior 29

---

[5]    These two quarters are the Forty-Third and Forty-Fourth Interim Periods in the chapter 11 cases.

quarters (as detailed in the *Summary of Baker Donelson Fees*, which is based upon the Fee Auditor's report and which is attached hereto as Exhibit I), the average hourly rate was $842.83. Fee Auditor's Report at ¶ 5.

17.     According to the Fee Auditor's Report, Baker Donelson responded to inquiries regarding its fee summaries by stating that the monthly and quarterly fee applications likely understated significantly the actual number of hours worked each month performing the Legislative Affairs Services, and that its non-attorney professionals actually spent "closer to 25 to 30 hours per month" performing such Services.  The latter number of hours worked would have resulted in an imputed effective hourly rate of approximately $760 per hour.  Fee Auditor's Report at ¶ 4.

18.     The Debtors respectfully submit that the Court should authorize Baker Donelson's fees for the two quarters at issue in the full amount requested for the reasons set forth below.

**RELIEF REQUESTED**

19.     The Debtors respectfully request the Court enter the Order

- Approving Baker Donelson's fees for the fourth quarter of 2011 and first quarter of 2012;[6]

- Clarifying that Baker Donelson was retained to provide both the Legislative Affairs Services and the China Assistance Services under section 328(a), and that section's "improvident" standard should be used in reviewing Baker Donelson's fees for all periods beginning with the second quarter of 2012; and

- Expanding the scope of Baker Donelson's services and authorizing the Debtors to pay Baker Donelson up to $30,000 per month for those expanded services.

---

[6]   These amounts do not include certain expenses for copying, because Baker Donelson has agreed to that reduction.

<u>ANALYSIS</u>

I.     OVERVIEW OF SECTIONS 327(A), 328(A) AND 330(A)

20.     Section 327(a) provides for the retention of non-attorney professional persons.

*Cf. Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 621 (Bankr. S.D.N.Y. 1986) (lobbyists are not "professional persons," as section 327(a) uses the term); *In re American Tissue, Inc.*, 331 B.R. 169, 173 (Bankr. D. Del. 2005) (six-part test to determine whether an entity or person is a "professional person" for purposes of section 327(a)).  Sections 328(a) and 330(a) effectively provide for a two-tiered system of approving the compensation of such professional persons.  Section 328(a) provides in relevant part:

> The trustee ... with the court's approval, may employ or authorize the employment of a professional person ... on any reasonable terms and conditions of employment ... Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).  In other words, a court approving a professional's retention also approves the compensation arrangement at the same time.  Thus, as the Court of Appeals for the Fifth Circuit recently stated:

> the court may not stray from them at the end of the engagement unless developments subsequent to the original approval that were incapable of being anticipated render the terms improvident.

*Asarco, L.L.C. v. Barclays Capital, Inc. (In re Asarco, L.L.C.)*, 702 F.3d 250, 257 (5th Cir. 2012).

21.     Section 330(a), by contrast, provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to ... a professional person employed under section 327 ...

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 USCS § 330(a). Thus, as the Fee Auditor discusses in the Fee Auditor's Report, the Court under section 330(a)(1) retroactively approves fees based upon a "reasonableness" standard. Under that standard, the "fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. Pa. 1995) (internal citation omitted). The factors determining whether the fees at issue are reasonable are "market-driven." *Id.* (internal citation omitted). Section 330(a)(3) provides factors for a court to analyze in determining whether fees are reasonable, including, "the nature, the extent, and the value of such services," as well as the time spent on such services, and the cost of comparable services in other cases. 11 U.S.C. § 330(a)(1), (3). Specifically, the relevant factors in making such a determination include:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

. . .

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled

> practitioners in cases other than cases under this title.11 U.S.C.
> 330(a)(3).

11 U.S.C. § 330(a)(4). Section 330(a)(5) provides in relevant part that compensation is not to be

allowed for:

> > (i) unnecessary duplication of services; or

> > > (ii) services that were not--

> > > > (I) reasonably likely to benefit the debtor's estate; or

> > > > (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(5).

## II.   THE COURT SHOULD APPROVE THE FULL AMOUNT OF THE MONTHLY RETAINERS

### A.   Baker Donelson's Fees Were Reasonable

22.     The Fee Auditor stated in his report that, under section 330(a), it could not

recommend that the Court approve Baker Donelson's monthly fixed fee payments for the two

quarters at issue because:

> [c]ompensation that produces effective hourly rates of $2,590.90
> and $11,400.00 is extraordinarily high, such that could be justified
> as reasonable, if at all, by producing extraordinary results, but
> Baker Donelson has not carried its burden of showing that it has
> produced extraordinary results.

Fee Auditor Report at ¶ 6.

23.     Unfortunately, when the Fee Auditor filed its report, it did not have the full range

of information provided in this Motion and the Shelnitz Affidavit.  When the Debtors became

aware of the report, and knowing what they know about the scope and value of Baker

Donelson's services, the Debtors immediately set about to correct that deficiency.  In order to

place Baker Donelson's services to Grace in a much fuller and more informative context, the

Debtors and their counsel worked closely with Baker Donelson to gather the information set

forth in the Shelnitz Affidavit and therein describe the significant value that such services have provided, and will continue to provide, to the Debtors.

24.     In addition, the Debtors' lobbying costs are highly reasonable compared to comparable companies.  Prior to May 2012, those costs were annualized at approximately $228,000 ($19,000 per month) for two professionals ($114,000 per professional).  Since then (assuming the Court approves the higher cap for the reasons set forth below), the Debtors' lobbying costs were annualized at approximately $360,000 for three lobbying professionals ($120,000 per professional).  As set forth in more detail in the summary *Lobbying Costs: A Comparable Company Analysis*, which has been developed from publicly available information and attached hereto as <u>Exhibit A</u>, comparably sized companies paid their lobbying consultants approximately $153,000 to $238,000 per lobbying professional.

25.     The Debtors respectfully submit that the information set forth herein and in the Shelnitz Affidavit, as well as the reasonableness of the costs when compared to those incurred by comparable companies, more than satisfies the burden of showing that payment of the Baker Donelson firm is reasonable in light of the particular facts and circumstances of these chapter 11 cases, including but not limited to the following relevant facts:

- The chapter 11 cases are nearing their end;

- Recoveries of creditors, equity holders and other constituencies in these chapter 11 cases are not affected by whether Baker Donelson is compensated in the full amount of their fees for the two quarters at issue;

- Grace has benefited immeasurably from Baker Donelson's services over the past decade, as discussed in more detail in the Shelnitz Affidavit; and

- The value to the Debtors of Baker Donelson's on-call availability is highlighted by the results of short-fuse assignments that Baker Donelson has completed so well over the past decade.

*See* Shelnitz Affidavit at ¶¶ 6-11.

26.     In this fuller context, limiting Baker Donelson to an implied effective hourly rate of $1,000 per hour is to misconstrue the nature and extraordinary value of their public policy advisors' services.  At the same time, however, the Debtors were well aware that during 2011 and into early 2012, the number of hours per month that Baker Donelson worked on Grace's matters was lower than in previous years.  The Fee Auditor's Report and the *Summary of Baker Donelson Fees* illustrates the trend.  Indeed, in late 2010, the Debtors renegotiated a reduction in the monthly from $20,000 to $19,000 for all of 2011 and through April 2012.

27.     In mid-2012, when the pace of Baker Donelson's activity once again increased, the Debtors and Baker Donelson once again reassessed the compensation arrangement.  Grace determined in its business judgment that increasing Baker Donelson's monthly fee from $19,000 to $30,000, to permit the hiring of Mr. Corcoran as an additional consultant, made a great deal of sense.

28.     In light of the value provided by Baker Donelson over the course of its employment by the Debtors during these chapter 11 cases—which have directly benefited the Debtors' business, their estates and all their stakeholders—and the expected future value that it will provide, the Debtors respectfully request the Court approve the fees at issue in the fourth quarter of 2011 and first quarter of 2012.

**B.      Baker Donelson's Retention and Fees Would Be Justified Under Section 363(b)**

29.     Some courts have required debtors to retain and compensate lobbyists under section 363(b) instead of under section 327(a).  *See, e.g., Johns-Manville*, 60 B.R. at 621; *In re ITG Vegas, Inc.*, 2007 Bankr. LEXIS 1371 (Bankr. D. Fla. 2007) (political lobbyist is "not a 'professional person' under 11 U.S.C. § 327(a) and may therefore be retained pursuant to 11 U.S.C. § 363(b)").  Thus, while the Debtors applied to have Baker Donelson retained under

section 327(a), it is worth noting that retention of Baker Donelson and payment of its fees clearly meets—for all the reasons articulated above and in the Shelnitz Affidavit—the "sound business purpose" test for whether the use of estate funds under section 363(b) should be approved by a bankruptcy court. *In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at 7-8 (D. Del. May 20, 2002) (internal citation omitted). *See also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test'."); *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("a debtor's decision must be supported by an articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)).

30.    The Debtors therefore respectfully submit that the Court should approve the payment of Baker Donelson's fees for the two quarters at issue, regardless of whether such approval occurs under section 330(a)'s "reasonableness" standard, section 328(a)'s "improvident" standard or the "sound business purpose" standard of section 363(b).

**III.    THE COURT SHOULD CLARIFY THAT BAKER DONELSON'S FEES ARE TO BE REVIEWED UNDER SECTION 328(A)**

31.    The Debtors also respectfully request the Court in its Order make it clear that Baker Donelson's fixed monthly fees in future fee applications are to be reviewed under the section 328(a) "improvident" standard. Simply put, section 328(a) is better suited to reviewing and approving *ab initio* the type of flat, monthly fee arrangement at issue here, with the "improvident" standard to be used to determine in hindsight whether to enter a final order

approving such fees. *See* Fee Auditor's Report at ¶ 4 (reporting Baker Donelson's description of its being employed "on a retainer basis so that we're always available solely for W. R. Grace"); *see also In re Mariner Post-Acute Network*, 257 B.R. 723, 730 (Bankr. D. Del. 2000) ("The *Knudsen* Court analogized the conditional monthly payment of professional fees to a rolling retainer agreement. While the professionals are permitted to receive payment every month, the professional fees are not allowed until after a formal fee application is filed, parties have had the opportunity to object, the court has reviewed the application and the fees have been approved").

32.    Applying the section 328(a) review standard also makes sense because, as the Retention Orders state, Baker Donelson is not required to keep "detailed daily time records or expense records." *See, e.g.*, First Modified Retention Order at ¶ 6. Part of the reason for this exception to the general rule is that Baker Donelson's professionals are not attorneys. Moreover, the highly confidential nature of their work does not lend itself to meaningful detailed time records. As discussed in the Shelnitz Affidavit, the confidential nature of the services illustrates how valuable those services are to the Debtors, as does the 24/7 "on call" nature of the relationship. *See* Shelnitz Affidavit at ¶¶ 3-5. All of these factors militate strongly in favor of Baker Donelson's services being reviewed under section 328(a) instead of section 330(a).

33.    For the same reasons, the Debtors requested in the Original Retention Application that the Court approve under § 328(a) the monthly fee arrangement of $17,000 per month, paid in arrears. The Fee Auditor has pointed out that the subsequent Baker Donelson Retention Orders have led to his reviewing the Legislative Affairs Services fees under section 330(a) and the China Assistance Services under section 328(a). Such a dichotomy in review standards for services that are of exactly the same nature and of similar out-sized benefit, regardless of the

hours actually reported in Baker Donelson's fee applications, begs for a consistent review standard.

34.    As this Court is aware, similar monthly fee arrangements for non-attorney professionals have been approved in numerous chapter 11 cases filed in the District of Delaware over the past several years, most of them with fee review protocols using the section 328(a) standard. *See, e.g., Mariner Post-Acute Network*, 257 B.R. at 730; *see also In re Accredited Home Lenders Holding Co.*, et al; Case No. 09-11516 (MFW); *In re Trico Marine Services, Inc.*, et al; Case No. 10-12653 (BLS); *In re Solyndra LLC, et al.*; Case No. 11-12799 (MFW).

35.    The Debtors submit that, for all the reasons discussed in this Motion, Baker Donelson's monthly fee arrangement should be reviewed in future fee applications under the Bankruptcy Code section 328(a) "improvident" standard.

## IV.    THE LEGISLATIVE AFFAIRS FEE CAP SHOULD BE RAISED TO $30,000 PER MONTH

36.    The requested increase in Baker Donelson's compensation for the Legislative Affairs Services is fair and reasonable.  Baker Donelson has been providing Legislative Affairs Services to the Debtors for several years, and the Debtors require Baker Donelson to continue to provide such services to the Debtors.  Subsequent to the Court's order authorizing the Debtors to retain Baker Donelson for purposes of providing the Legislative Affairs Services, Baker Donelson has found it necessary to increase its staffing of the Legislative Affairs Services and employ a special consultant.  The Debtors seek authority to adequately compensate Banker Donelson for these services.

37.    The Debtors therefore respectfully request the Court the Order raising the monthly fee cap for Baker Donelson to $30,000 on the terms and conditions set forth in the Order.

## PREVIOUS MOTION

38.     As discussed above, on November 12, 2012, the Debtors filed their November 2012 Motion.  It was withdrawn on January 11, 2013, in order to consolidate the relief requested therein with the Debtors' request that the Court enter an order confirming that Baker Donelson's compensation is to be reviewed pursuant to section 328(a) of the Bankruptcy Code.

39.     No other previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

40.     Notice of this Motion has been given to:  (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) the Fee Auditor.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Debtors respectfully request the Court enter the Order: (a) approving Baker Donelson's fees for the October-December 2011 and January-March 2012 quarters; (b) increasing the cap on Baker Donelson's monthly fee to $30,000; (c) confirming that all of Baker Donelson's fees should be reviewed under the standard set forth in Bankruptcy Code section 328(a); and (d) granting such other relief as may be appropriate.

Dated: March 18, 2013

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession