## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | |
| Pittsburgh Corning Corporation, | Bankruptcy No. 00-22876-JKF |
|     Debtor(s) | Chapter 11 |
| | **Related to Doc. No. 9260** |
| In re: | |
| North American Refractories Company, *et al*. | Bankruptcy No. 02-20198-JKF |
| | Chapter 11 |
|     Debtor(s) | **Related to Doc. No. 7835** |
| In re: | |
| Mid-Valley, Inc., *et al.* and DII Industries LLC | Bankruptcy No. 03-35592-JKF (**CLOSED**) |
| | Chapter 11 |
|     Debtor(s) | **Related to Doc. No. 2839** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT DELAWARE

In Re:

| | |
|---|---|
| Owens Corning, *et al.,* | Bankruptcy No. 00-3837-JKF (**CLOSED**) |
|     Debtor(s) | Chapter 11 |
| | **Related to Doc. No. 21068** |
| W.R. Grace & Co., *et al.* | Bankruptcy No. 01-1139-JKF |
|     Debtor(s) | Chapter 11 |
| | **Related to Doc. No. 30404** |
| USG Corporation, *et al.,* | Bankruptcy No. 01-2094-JKF (**CLOSED**) |
|     Debtor(s) | Chapter 11 |
| | **Related to Doc. No. 12682** |
| United States Mineral Products Company, *et al.* | Bankruptcy No. 01-2471-JKF (**CLOSED**) |
| | Chapter 11 |
|     Debtor(s) | **Related to Doc. No. 3989** |
| Kaiser Aluminum Corporation, *et al.* | Bankruptcy No. 02-10429-JKF |
|     Debtor(s) | Chapter 11 |
| | **Related to Doc. No.** |
| The Flintkote Company | Bankruptcy No. 04-11300-JKF |
|     Debtor(s) | Chapter 11 |
| | **Related to Doc. No. 7436** |

| | |
|---|---|
| Armstrong World Industries, Inc., *et al.*<br>        Debtor(s) | Bankruptcy No. 00-4471-JKF (**CLOSED**)<br>Chapter 11<br>**Related to Doc. No. 10782** |
| ACandS, Inc., *et al.*<br>        Debtor(s) | Bankruptcy No. 02-12687-JKF (**CLOSED**)<br>Chapter 11<br>**Related to Doc. No. 3721** |
| Combustion Engineering, Inc.<br>        Debtor(s) | Bankruptcy No. 03-10495-JKF (**CLOSED**)<br>Chapter 11<br>**Related to Doc. No. 3476** |

## DRAFT PROTOCOL FOR PRODUCTION OF 2019 EXHIBITS

This Protocol establishes the process by which the United States Bankruptcy Court for the Western District of Pennsylvania ("PAWB") and the United States Bankruptcy Court for the District of Delaware ("DEB") shall produce exhibits filed pursuant to Fed. R. Bank. P. 2019 in the above-captioned cases (the "2019 Exhibits") to Garlock Sealing Technologies LLC ("Garlock") in compliance with recent opinions and orders entered by United States District Court for the Western District of Pennsylvania ("WDPA") and the United States District Court for the District of Delaware ("DOD").

This Protocol includes the designation of an attorney from WDPA's Special Masters Panel to undertake the production of the 2019 Exhibits to Garlock.[1] For the benefit of the Special Master, the PAWB Clerk's Office, the DEB Clerk's Office, and Garlock, a brief summary of the procedural background is set forth in Part A; restrictions on Garlock's access to and use of the 2019 Exhibits are identified in Part B; information about the format, volume and content of the 2019 Exhibits is provided in Part C; and instructions to be followed by the Special Master are set forth in Part D.

Instructions for Garlock to be followed at the conclusion of its pending proceedings in the United States Bankruptcy Court for the Western District of North Carolina (the "NCWB Proceedings"),[2] are set forth in Part E.

---

[1] On November 16, 2010, WDPA established by Standing Order filed at Miscellaneous No. 10-324, a list of attorneys with expertise in electronic discovery to serve as Special Masters. Pursuant to that Order, WDPA maintains a list of qualified Special Masters ("the "WDPA Special Masters Panel") on its website. On March 30, 2011, WDPA established by Standing Order filed at Miscellaneous No. 11-94, that the WDPA Special Masters Panel "shall be available for use in any bankruptcy case, matter or proceeding in which the presiding bankruptcy judge determines that a Special Master would assist the bankruptcy court in handling motions or requests involving electronic discovery."

[2] In 2010, Garlock filed for chapter 11 bankruptcy protection in NCWB, where its pending cases are jointly administered at *In re Garlock Sealing Technology LLC*, Bankr. Case No. 10-31607 (Bankr. W.D.N.C.).

**A. Procedural Background**

1. A trial is scheduled in the NCWB Proceedings for the purpose of estimating Garlock's liability for mesothelioma claims (the "Liability Estimation").

2. Premised on obtaining information for use in its Liability Estimation, Garlock filed motions in the twelve above-captioned cases seeking access to the 2019 Exhibits.[3]

3. On October 7, 2011, orders were entered in DEB (the "DEB Orders")[4] and in PAWB (the "PAWB Orders")[5] denying Garlock's motions seeking access to the 2019 Exhibits.

4. On October 12, 2011, Garlock appealed the DEB Orders to DOD[6] and the PAWB Orders to WDPA.[7]

5. On June 21, 2012, the WDPA appeals were stayed pending the disposition of the DOD appeals.[8]

6. On March 1, 2013, DOD entered an Opinion and Order (the "DOD Opinion & Order")[9] granting Garlock access to the 2019 Exhibits filed in the nine DEB cases, subject to certain restrictions set forth in Part B, below.

---

[3] *In re Owens Corning, et al.* ("*Owens*"), Bankr. Case No. 00-3837-JKF at dkt. no. 20954 (Bankr. D. Del.); *In re W.R. Grace & Co., et al.* ("*Grace*"), Bankr. Case No. 01-1139-JKF at dkt. no. 26053 (Bankr. D. Del); *In re USG Corporation, et al.* ("*USG*"), Bankr. Case. No. 01-2094-JKF at dkt. no. 12596 (Bankr. D. Del); *In re United States Mineral Products Co. d/b/a Isoletek Int'l* ("*USMP*"), Bankr. Case. No. 01-2471-JKF at dkt. no. 3878 (Bankr. D. Del.); *In re Kaiser Aluminum Corporation, et al.* ("*Kaiser*"), Bankr. Case. No. 02-10429-JKF at dkt. no. 10009 (Bankr. D. Del.); *In re The Flintkote Co.* ("*Flintkote*"), Bankr. Case. No. 04-11300-JKF at dkt. no. 5606 (Bankr. D. Del.); *In re Armstrong World Industries, Inc.* ("*Armstrong*"), Bankr. Case. No. 00-4471-JKF at dkt. no. 10698 (Bankr. D. Del); *In re AC and S, Inc.* ("*ACandS*"), Bankr. Case No. 02-12687-JKF at dkt. no. 3639 (Bankr. D. Del.); *In re Combustion Engineering, Inc.* ("*CE*"), Bankr. Case No. 03-10495-JKF at dkt no. 3380 (Bankr. D. Del); *In re Pittsburgh Corning Corporation* ("*Pittsburgh Corning*"), Bankr.Case No.00-22876-JKF at dkt. no.8162 (Bankr. W.D.P.A.); *In re North American Refractories Company* ("*NARC*"), Bankr. Case No. 02-20198-JKF at dkt. no. 6998 (Bankr. W.D.P.A); *In re Mid-Valley, Inc., et al. and DII Industries LLC,* ("*Mid-Valley*"), Bankr. Case No. 03-35592-JKF at dkt. no. 2792 (Bankr. W.D.P.A.).

[4] *Owens*, at dkt. no. 21027; *Grace*, at dkt. no.27737; *USG*, at dkt. no. 12652; *USMP*, at dkt. no. 3934; *Kaiser*, at dkt. no. 10166; *Flintkote*, at dkt. no. 6244; *Armstrong*, at dkt. no. 10757X; *ACandS*, at dkt. no. 3697; and *CE*, at dkt. no. 3437.

[5] *Pittsburgh Corning*, at dkt. no. 8488; *NARC*, at dokt. no. 7246; and *Mid-Valley*, at dokt. no. 2817.

[6] *In re Motions for Access of Garlock Sealing Technology LLC* ("*In re Garlock I*"), consolidated at Civil A. No. 11-1130 (D. Del.).

[7] *In re Motions for Access of Garlock Sealing Technology LLC* ("*In re Garlock II*") Civil A. Nos. 11-1406, 11-1439, 11-1452 (W.D.P.A.)

[8] *In re Garlock II*, 11-1406 at dkt no. 27, 11-1439 at dkt. no.21, 11-1452 at dkt. no.26.

[9] *In re Garlock I*, at dkt nos. 64, 65.

7. On March 7, 2013, in the NCWB Proceedings, Garlock filed a *Motion for Entry of Protective Order Related to Rule 2019 Exhibits Filed in Twelve Bankruptcy Cases Pending in the District of Delaware and the Western District of Pennsylvania* (the "NCWB Protective Order").[10]

8. On March 19, 2013, WDPA issued an Order (the "WDPA Order)[11] adopting the DOD Opinion as WDPA's Opinion and granting Garlock access to the 2019 Exhibits filed in the three PAWB cases, subject to certain restrictions set forth in Part B, below.

9. On March 21, 2013, PAWB provided Garlock with docket activity reports identifying the 2019 Exhibits filed in each of the three PAWB cases (the "PAWB 2019 Exhibit Reports").

10. On March 22, 2013, DEB provided Garlock with docket activity reports identifying the 2019 Exhibits filed in each of the nine DEB cases (the "DEB 2019 Exhibit Reports").

**B. Restrictions on Garlock's Access To and Use Of the 2019 Exhibits**

11. Both the DOD Opinion & Order and the WDPA Order impose restrictions on Garlock's access to and use of the 2019 Exhibits.

12. The DOD Opinion & Order states that "Garlock is not seeking retention agreements between lawyers and potential claimants and ***Garlock shall not be granted access to such agreements***."[12] Likewise, the WDPA Order states that Garlock is permitted to inspect and copy any 2019 Exhibit, "***with the exception of Retention Agreements, including any exemplars thereof***."[13] Thus, Garlock may not access retention agreements, exemplars or their equivalents (individually and collectively, the "Excluded Documents").

13. The DOD Opinion & Order states that "Garlock is to be provided access to the 2019 Exhibits *solely* for the purpose of using them in connection with the estimation proceedings in its own bankruptcy case."[14] Likewise, the WDPA Order "authorizes Garlock to use such 2019 Exhibits *solely* in connection with the estimation proceedings in Garlock's chapter 11 bankruptcy cases pending in the North Carolina Bankruptcy Court, and neither the 2019 Exhibits nor the information contained therein may be used for ***any other purpose***."[15] Thus, Garlock may not use the 2019 Exhibits or their contents for any purpose other than the Liability Estimation in the NCWB Proceedings.

---

[10] *In re Garlock Sealing Technology LLC*, at dkt.no. 2779.

[11] *In re Garlock II*, 11-1406 at dkt no. 33, 11-1439 at dkt. no.25, 11-1452 at dkt. no.30.

[12] *In re Garlock I*, 11-1406 at dkt no. 64, p.31 (emphasis added).

[13] *In re Garlock II*, 11-1406 at dkt no. 33, 11-1439 at dkt. no.25, 11-1452 at dkt. no.30, paragraph 2 (emphasis added).

[14] *In re Garlock I*, 11-1406 at dkt no. 64, p.31 (emphasis added).

[15] *In re Garlock II*, 11-1406 at dkt no. 33, 11-1439 at dkt. no.25, 11-1452 at dkt. no.30, paragraph 3 (emphasis added).

14. The DOD Opinion & Order states that "Garlock may not publicly disclose information contained in the 2019 Exhibits *except in an aggregate format that does not identify any individual*."[16] Likewise, the WDPA Order states that "Garlock shall not disclose publicly the information contained in any 2019 Exhibit *except in an aggregate format that does not identify any individual* represented person."[17] Thus, Garlock may not disclose the identity of any individual listed in any of the 2019 Exhibits.

15. The DOD Opinion & Order states that "before there is any disclosure of the information Garlock divines from the 2019 Exhibits, Garlock must first propose to the North Carolina Bankruptcy Court an appropriate form of protective order for that Court to consider."  Likewise, the WDPA Order states that "public disclosure of the information in any 2019 Exhibit shall be subject to the terms of a protective order entered by the North Carolina Bankruptcy Court that is consistent with this Court's Opinion and Order and the terms of this Order. Thus, Garlock may not use any information in the 2019 Exhibits unless there is an entry of a NCWB Protective Order that is consistent with the restrictions of the DOD Opinion and Order and the WDPA Order.

**C.  The Format, Volume and Content of the 2019 Exhibits**

16. In October of 2004, when the claimants were ordered to file their 2019 Exhibits,  the case management / electronic case filing system (the "CMECF System") used by PAWB and DEB did not have a feature allowing the electronic filing of documents under seal. Consequently, claimants submitted their 2019 Exhibits by mailing compact discs ("CDs") to PAWB and DEB. Upon receipt of the 2019 Exhibit mailings, PAWB's and DEB's Clerk's Office inventoried and stored the CDs in locked cabinets.

17. The volume of mailings and corresponding CDs associated with the 2019 Exhibits requested by Garlock is substantial.  Combined, the PAWB and DEB 2019 Exhibit Reports are over 680 pages, identifying more than 3,300 individual 2019 Exhibits.

18. Six of the DEB cases are closed,[18] and many of the 2019 Exhibits were sent by DEB to the off-site National Records Center.

19. The PAWB Clerk's Office reviewed a sample of the CDs filed in the PAWB cases, and confirmed that the CDs contain 2019 Exhibits to which Garlock is granted access, and documents such as retention agreements, exemplars and their equivalents to which Garlock's access is restricted (i.e., the CDs also contain the Excluded Documents identified in Part B, paragraph 12, above).

20. The PAWB Clerk's Office review of the CD sample also confirmed that some of the 2019 Exhibits to which Garlock is granted access list the complete social security numbers of individuals, the disclosure of which is prohibited by Fed. R. Bankr. P. 9037(a).

---

[16] *In re Garlock I*, 11-1406 at dkt no. 64, p.31 (emphasis added).

[17] *In re Garlock II*, 11-1406 at dkt no. 33, 11-1439 at dkt. no.25, 11-1452 at dkt. no.30, paragraph 4 (emphasis added).

[18] *Owens*, *USG*, *USMP*, *Armstrong*, *ACandS*, and *CE*.

21. The logistics of providing Garlock access to the 2019 Exhibits (the "2019 Exhibit Production") is complicated by the fact that there are over 3,300 CDs, many of which contain Excluded Documents and personal identifiers.

22. Moreover, PAWB and DEB are operating at reduced staffing levels resulting from, *inter alia*, sequestration. Neither PAWB nor DEB has the staffing resources required to ensure that the 2019 Exhibit Production is screened of the Excluded Documents and unredacted personal identifiers in compliance with the DOD Opinion & Order, the WDPA Order and Fed. R. Bankr. P. 9037(a).

23. Given the volume of items and the logistical complexity of undertaking the 2019 Exhibit Production, a Special Master would benefit PAWB, DEB and Garlock.

**D. Special Master Protocol for the 2019 Exhibit Production**

24. Garlock shall review the WDPA Special Master Panel and, after consultation the parties to the DOD and PAWB appeals identified in paragraph 4, above, Garlock shall recommend a Pittsburgh-based Special Master to undertake the 2019 Exhibit Production.

25. Upon consideration of, but not bound by, Garlock's recommendation, the Court shall designate a Special Master to be responsible for the 2019 Exhibit Production in accordance with this Protocol.

26. The Special Master may use a third-party vendor to assist in the 2019 Exhibit Production, subject to the terms of this Protocol.

27. All costs, fees and expenses associated with the 2019 Exhibit Production shall be itemized by the Special Master and paid for in full by Garlock. The costs incurred by PAWB and DEB in retrieving and shipping the 2019 Exhibits shall be itemized by the respective Clerk's Offices and paid in full by Garlock.

28. PAWB shall provide the Special Master (and assisting staff and/or vendors) a work area within the PAWB Clerk's Office where the Special Master can undertake the 2019 Exhibit Production.

29. On a rolling basis, and at a volume agreed upon between the Special Master and PAWB's Clerk, PAWB shall provide the Special Master with the original copies of the mailings containing the 2019 Exhibits and corresponding CDs. PAWB's Clerk shall create a log of the 2019 Exhibits as they are made available to, and then returned by, the Special Master.

30. The DEB Clerk's Office will deliver to the PAWB Clerk's Office the original mailings containing the 2019 Exhibits in the nine DEB cases. Once in receipt by PAWB, the DEB mailings will be produced to the Special Master in the same manner as the PAWB mailings, as set forth in paragraph 29, above.

31. PAWB will, at DEB's option, return the DEB originals to either the DEB Clerk's Office or the off-site National Records Center.

32. The 2019 Exhibit Production shall be made using the CDs as the source and an external storage device ("ESD") as the initial destination.[19]

33. The ESD will be organized under two main folders labeled "PRODUCED TO GARLOCK" and "EXCLUDED FROM GARLOCK," respectively.

34. Each of the main folders will be organized into twelve subfolders, each uniquely named as one of the twelve cases involved in the production, using the following nomenclature "COURT ABBR CASE NUMBER DEBTOR SHORT NAME."[20] Thus, one subfolder would be labeled "PGH 03-35592 Mid-Valley" and another subfolder would be named "DEL 02-12687 ACandS" and so forth.

35. Each case subfolder will be further organized by subfolders labeled by the 2019 Exhibit document number as listed in the PAWB 2019 Exhibit Report and the DEB 2019 Exhibit Report. For example, one subfolder under the "DEL 02-12687 ACandS" subfolder would be "1637." The resulting organizational structure (file directory tree) on the ESD would be:

ESD DRIVE:



```
├── 📁 PRODUCED TO GARLOCK
│       └── 📁 DEL 02-12687 ACandS
│               └── 📁 1637
└── 📁 EXCLUDED FROM GARLOCK
        └── 📁 DEL 02-12687 ACandS
                └── 📁 1637
```

36. The Special Master shall inspect each mailing corresponding with a docket number and retrieve the information included therein. The Special Master shall inspect each file to determine whether it is a document to which Garlock has been granted access or whether it is an Excluded Document. Each file will then be copied to the appropriate folder on the ESD, depending on whether it is produced or excluded.

37. Prior to copying a file into a subfolder under the PRODUCED TO GARLOCK main folder, the Special Master shall review the file to ensure that the document does not list more than the last four digits of an individual's social security number (a "Document Requiring Redaction" or "DRR"). If the Special Master encounters a DRR to which Garlock would otherwise have access, then the Special Master shall undertake the following steps:

---

[19] The PAWB Clerk's Office will provide the use of an ESD to the Special Master upon request.

[20] The applicable "short name" for each case is identified in footnote 3, *supra*.

(a) The original DRR file shall be copied from the CD into the appropriate subfolder (the document number subfolder) in the EXCLUDED FROM GARLOCK main folder, where it shall be renamed by adding the prefix "ORIG-";

(b) The original file DRR shall be copied from the CD into the appropriate subfolder (the document number subfolder) in the PRODUCED TO GARLOCK main folder, where it shall be redacted[21] and then renamed by adding the prefix "RED-";

(c) For example, suppose (hypothetically) that the Special Master reviews a CD corresponding with docket number 1637 in the ACandS case, and discovers a spreadsheet named "exhibitabc.xls" that is a DRR due to listing full social security numbers. The Special Master would copy the original file from the CD to the corresponding EXCLUDED FROM GARLOCK subfolder and rename it as ORIG-exhibitabc.xls. Then the Special Master would copy the original file from the CD to the corresponding PRODUCED TO GARLOCK, where it would be redacted and renamed as "RED-exhibitabc.xls." The resulting organizational structure (file directory tree) on the ESD would be:

ESD DRIVE:



```
├── 📁 PRODUCED TO GARLOCK
│       └── 📁 DEL 02-12687 ACandS
│               └── 📁 1637
│                       └── 📄 RED-exhibitabc.xls
└── 📁 EXCLUDED FROM GARLOCK
        └── 📁 DEL 02-12687 ACand S
                └── 📁 1637
                        └── 📄 ORIG-exhibitabc.xls
```

38. PAWB's Clerk will provide the Special Master with a spreadsheet for each case, listing the docket numbers corresponding with the 2019 Exhibits. Using that log, the Special Master shall indicate for each original CD, whether its contents were successfully copied to the ESD and whether it contained any DRRs. The log will also allow the Special Master to note any problems or irregularities (including but not limited to corrupt or damaged files that could not be opened or copied, redaction matters beyond the scope of applying the standard formula and process for redacting social security numbers, missing documents, etc.). The Special Master shall confer with Garlock as to whether Garlock would prefer to omit the problematic Exhibits from the production rather than undertaking additional steps that may require an investment of time and money.

---

[21] The PAWB Information Technology Staff can provide a social security number redaction formula and process for Microsoft Excel files upon the Special Master's request.

39. Upon completion of the 2019 Exhibit production, the Special Master will have two main categories of files (those produced to Garlock and those excluded from Garlock), sub-organized by case and further sub-organized by the document number where the exhibit appears in each case.

40. The Special Master shall prepare and clearly label one DVD for each bankruptcy case, where the organized contents of the corresponding ESD case folder under the PRODUCED TO GARLOCK main folder shall be copied.

41. The Special Master shall deliver the resulting, individually labeled twelve DVDs of PRODUCED TO GARLOCK content to Garlock as the 2019 Exhibit Production, and copy PAWB's Clerk and DEB's Clerk on the transmittal letter.

42. The Special Master shall also deliver one complete set of the twelve DVDs of PRODUCED TO GARLOCK content to the PAWB Clerk's Office, and one complete set to the DEB Clerk's Office.

43. The Special Master shall prepare and clearly label one DVD for each bankruptcy case, where the organized contents of the corresponding ESD case folder under the EXCLUDED FROM GARLOCK main folder shall be copied.

44. The Special Master shall deliver one complete set of the twelve DVDs of EXCLUDED FROM GARLOCK content to the PAWB Clerk's Office, and one complete set to the DEB Clerk's Office.

**E. Instructions to Garlock Regarding the 2019 Exhibit Production**

45. Within thirty (30) days of the conclusion of the NCWB Proceedings, Garlock shall return the twelve DVD set provided by the Special Master comprising the 2019 Exhibit Production to PAWB, accompanied by a sworn affidavit by Garlock's counsel expressly attesting that:

> (a) Garlock's sole use of the 2019 Exhibits was in preparation for the Liability Estimation.
>
> (b) Garlock did not share or distribute any of the 2019 Exhibits (in whole or in part) with any person or entity outside of Garlock's control, supervision or retention as a professional assisting with the Liability Estimation, other than what was presented in the aggregate as part of the NCWB Proceedings.
>
> (c) Garlock did not and will not disclose the identity of any individual listed in any of the 2019 Exhibits.
>
> (d) All copies of any subpart or the total set of the 2019 Exhibit Production, other than those provided by the Special Master to PAWB and those returned by Garlock to PAWB, were retrieved and permanently destroyed by Garlock, including but not limited to any and all copies provided to any and all of Garlock's employees, agents, experts and any other person or entity.
>
> (e) Garlock's employees, agents, experts and any other person or entity provided information from or copies of the 2019 Exhibits have destroyed all data bases created, in whole or in part, from the 2019 Exhibits.

**F. Jurisdiction**

      46.  The United States Bankruptcy Court for the Western District of Pennsylvania and the United States Bankruptcy Court for the District of Delaware retain jurisdiction to adjudicate any disputes that arise pursuant to this Protocol, including but not limited to document production, document exclusion, fees, costs, and expenses.

Date:  March 27, 2013