# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing Date: May 20, 2013, at 9:00 a.m. |
| ) | Objection Deadline: May 3, 2013 at 4:00 p.m. |

## MOTION FOR AN ORDER AUTHORIZING THE PRIVATE SALE OF REAL PROPERTY AND APPROVING THE PURCHASE AND SALE AGREEMENT

The above captioned debtors and debtors-in-possession file this motion (the "Motion") requesting entry of an order in substantially the form attached hereto as Exhibit A (the "Sale Order"):[2]

- Approving the form of the purchase and sale agreement dated April 4, 2013, and attached to the Sale Order as Exhibit 1 (the "Sale Agreement");

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

[2] The facts and circumstances set forth in this Motion are supported by the *Declaration of David Baird in Support of the Motion for an Order Authorizing the Private Sale of Real Property and Approving the Purchase and Sale Agreement* (the "Baird Declaration"), which was filed contemporaneously herewith.

- Authorizing the sale (the "Sale") by W. R. Grace & Co.-Conn. (the "Selling Debtor" or "Grace") of certain Property to Buyer pursuant to the terms and conditions of the Sale Agreement free and clear of all liens, claims and encumbrances (collectively, the "Liens") and all other claims, obligations, liabilities, demands, guarantees, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests"), other than the Permitted Exceptions (as defined herein);

- Approving the form of sale notice attached hereto as Exhibit B (the "Sale Notice") as containing the requisite information to reasonably notify parties-in-interest of the proposed Sale; and

- Authorizing the Debtors to: (a) undertake all transactions contemplated by the Sale Agreement; (b) enter into the ancillary agreements contemplated by the Sale Agreement; and (c) undertake all other actions necessary to consummate the Sale.

In support of this Motion, the Debtors respectfully state as follows:[3]

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are section 363(b) of title 11 of the United States Code, 11 USC §§ 101 *et seq.*, (the "Bankruptcy Code"), Fed. Bankr. P. 2002, 6004, 9006 and 9014 and Rules 2002-1(b) and 9006-1 of the District of Delaware Local Rules.

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Sale Agreement or the *First Amended Joint Plan of Reorganization in Their Chapter 11* Cases [Docket no. 26368], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

## BACKGROUND

I. THE MARKETING PROCESS

3. In July 2008, Grace began considering the sale of certain property comprising approximately 66.8 acres of unused land located at 7600 Grace Drive, Columbia, Maryland 21044 (the "Property"). The Property is adjacent to the northwest boundary of Grace's corporate headquarters campus. The property is unimproved, except for a single structure used to warehouse files and a number of groundwater monitoring and treatment wells relating to long-term remediation taking place on the Grace campus.

4. Cushman & Wakefield, Inc. ("Cushman & Wakefield") has assisted Grace in analyzing options to dispose of the Property and to establish potential development densities and validate the Property's value. Cushman & Wakefield has also marketed the Property.[4] In November 2008, Grace advised Howard County, Maryland, authorities of the potential subdivision and sale of the Property. By March 2009, Howard County had agreed to a subdivision plan developed by Grace and Cushman & Wakefield. In March 2009, Cushman & Wakefield released an offering memorandum for the Property based upon its development for office buildings. Between March 2009 and June 2011, Cushman & Wakefield contacted more than 725 prospective buyers and investors as part of its aggressive marketing effort. But no viable offer emerged for the purchase of the Property based upon its development for office space.

5. In August 2011, one of the earlier prospective buyers expressed renewed interest in the Property, but only if the Property could be rezoned for primarily residential use. In

---

[4] Cushman & Wakefield will be compensated 3% of the Base Purchase Price, or $393,000, for its services.

October 2011, this prospective buyer offered $8,000,000 for the Property based on the existing office-space zoning and $11,000,000 based upon rezoning to permit residential use. By late 2012, Cushman & Wakefield had been approached by several other interested parties who indicated that they could increase their offers if the Property were to be rezoned to permit residential use.

## II.  HIGHEST AND BEST OFFER

6. In December 2012, Grace authorized Cushman & Wakefield to resume actively marketing the Property to qualified investors and buyers on the basis of the Property being rezoned for residential, as well as commercial or mixed use. Cushman & Wakefield received four viable offers, from which two finalists were chosen. In February 2013, Cushman & Wakefield requested best and final offers from the two finalists.

7. The Debtors, in consultation with Cushman & Wakefield, selected Greenfield Partners, LLC, through its subsidiary, GAP VI Properties, LLC, as the buyer (the "Buyer") based upon the following factors:

- Buyer had made the best financial offer, with a base purchase price of $13,100,000, plus additional amounts based upon Buyer achieving certain residential dwelling or commercial development densities; and

- Buyer had the best opportunity to successfully rezone the Property and obtain all of the necessary governmental approvals in order to be able to develop the Property, based upon its extensive acquisition and development experience, significant financial resources dedicated to this project and the quality of its team of seasoned land-use planning experts.

## III.  NEGOTIATING THE SALE AGREEMENT

8. On April 4, 2013, after two weeks of intensive, arms-length and good-faith negotiations in which both parties were represented by sophisticated counsel and other advisors, Grace and Buyer executed the Sale Agreement.

## IV.    SALIENT TERMS AND CONDITIONS OF THE SALE AGREEMENT

9.    Grace's obligations under the Sale Agreement are subject to this Court's entry of the Order. As more fully described in the Sale Agreement, the Selling Debtor proposes to sell the Property to Buyer on the following terms and conditions:

| Term | Summary Description |
|---|---|
| **Selling Debtor** | W. R. Grace & Co.-Conn. |
| **Buyer** | GAP VI Properties, LLC. |
| **Transferred Property (Section 1.01)** | The Property, which the Sales Agreement describes as:<br><br>That certain parcel of land containing approximately 66.8 +/- acres located at 7600 Grace Drive, Columbia, Maryland 21044, including without limitation any and all easements, rights, or rights-of-way relating to or benefiting such parcel of land, and all right, title, and interest, if any, of Selling Debtor in and to the land lying within any street or roadway adjoining such parcel of land or any vacated or hereafter vacated street or alley adjoining such parcels of land to the center line thereof, and any and all rights-of-way, open or proposed streets (public or private), alleys, strips or gores of land adjacent thereto, together with all improvements located thereon, and any and all right, title and interest of Selling Debtor in and to any appurtenances to the Land. |
| **Base Purchase Price (Section 2.01(a))** | $13.1 million, payable at Closing. |
| **Additional Purchase Price (Section 2.01(b))** | Buyer intends to seek required governmental approvals to develop a residential real estate project on the Property containing attached and detached residential dwelling units, together with potential accessory retail and office space (if so required in connection with obtaining required governmental approvals)(the "Project"). In the event that prior to Closing or at any time within one (1) year after the date of Closing, Buyer obtains final approval for: (i) more than 450 single family attached or detached residential dwelling units, in addition to the Base Purchase Price, Buyer shall pay Twenty Five Thousand and 00/100 Dollars for each additional single family attached or detached residential dwelling unit in excess of 450 approved; and (ii) if any commercial office or retail space is required to be built by Howard County in connection with obtaining governmental approvals for the Project, in addition to the Base Purchase Price, Buyer shall pay Ten and 00/100 Dollars ($10.00) per square foot of such required space. |
| **Initial Deposit (Section 2.02(a))** | $100,000, to Chicago Title Insurance Company (the "Escrow Agent"). The Initial Deposit and the Additional Deposits (collectively, the "Deposit") will be held and disbursed pursuant to the escrow agreement between Seller, Buyer and the Escrow Agent in the form of Exhibit B to the Sale Agreement. |
| **Due Diligence Period (Sections 2.02(a), 5.01)** | The period commencing on the date of the Sale Agreement and continuing for up to twenty-four months total, consisting of the "Initial Study Period" of ninety (90) days and up to seven (7) three-month extensions. |

| Term | Summary Description |
|---|---|
| **Termination during Initial Study Period (Sections 2.02(a), 5.05)** | If Buyer terminates the Sale Agreement during the first ninety (90) days of the Initial Study Period, Buyer shall be entitled to the immediate return of the Initial Deposit together with accrued interest. |
| **Additional Deposits (Section 2.02(b))** | Buyer may extend the Due Diligence Period beyond the Initial Study Period for a maximum of seven (7) three-month extensions, by payment to the Escrow Agent of an additional deposit of One Hundred Thousand Dollars ($100,000.00) for each successive extension. |
| **Holding of Deposit (Section 2.02(c);** | The Initial Deposit and the Additional Deposits (collectively, the "Deposit" shall be held and disbursed in accordance with the Escrow Agreement and the Sale Agreement. Accrued interest and other earnings on the Deposit shall be part of the Deposit. Except as otherwise expressly provided in the Sale Agreement, the Deposit shall be non-refundable to Buyer. |
| **Disposition of Deposit upon Closing or Default (Section 2.02(d), Article VIII)** | If Closing occurs, all deposits will be credited against the Purchase Price and paid over to Buyer.<br><br>If Seller terminates for default by Buyer, Seller's sole remedy is receipt of the Deposit as liquidated damages.<br><br>If Buyer terminates for default by Seller, Buyer shall have the right to elect either: (i) to terminate and receive the return of the Deposit together with interest, accrued thereon, along with reimbursement of certain out-of-pocket costs and expenses, (ii) to waive the default and proceed with the Closing, or (iii) to seek specific performance. |
| **Closing Date (Section 2.01)** | The thirtieth (30th) day after expiration of the Due Diligence Period, if Purchaser has not previously terminated the Agreement.. |
| **Purchaser's Right to Terminate (Section 5.05)** | At any time before 5:00 p.m. Eastern time on the last day of the Due Diligence Period, as its sole and exclusive remedy, Purchaser may terminate the Sale Agreement, if the results of its investigation are unsatisfactory to Purchaser in its sole and absolute discretion. If such termination occurs after the termination of the Initial Study Period, then the disposition of the Deposit shall be as set forth in Section 2.02. |
| **Permitted Exceptions (Section 6.01)** | Temporary Easements and Retained Equipment, as those terms are defined in Article 6.01(a), zoning regulations, etc.,, exceptions shown on an accurate ALTA/ACSM survey of the Property, real estate taxes and betterment assessments levied or assessed on the Property for the year during which Closing occurs that are not yet due and payable and all matters of title or affecting title which constitute "Permitted Exceptions" in accordance with Article VI of the Sale Agreement, including, without limitation, any such matters which are not made the subject of a Title Defect Notice. |
| **Closing Conditions (Article VII)** | The Sale Order has become a Final Order.<br><br>All covenants and agreements required to be performed before the Closing have been performed. |

## V.    NO LIENS ON THE PROPERTY

10.    Based upon information and belief, there are no Liens on or other Interests in the Property other than the Permitted Exceptions.

## RELIEF REQUESTED

11. The Debtors respectfully request the Court enter the Order:

- Approving the Sale Agreement;

- Authorizing the sale of the Property on the terms and conditions thereof, free and clear of all Liens and Interests (other than Permitted Exceptions) pursuant to section 363 of the Bankruptcy Code;

- Approving the Sale Notice as containing the requisite information to reasonably notify parties-in-interest of the proposed Sale; and

- Authorizing the Debtors to: (a) undertake all transactions contemplated by the Sale Agreement; (b) enter into ancillary agreements contemplated by the Sale Agreement; and (c) undertake all other actions necessary to consummate the Sale.

## ANALYSIS

**A. Section 363 Permits the Debtors to Sell the Property Outside the Ordinary Course of Business**

12. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts in this jurisdiction may approve such use of estate property outside the ordinary course of business if the debtor establishes that:

> (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) buyer has acted in good faith.

*In re Decora Indus.*, No. 00-4459 (JJF), 2002 U.S. Dist. LEXIS 27031, *7-8 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test'."); *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("a

debtor's decision must be supported by an articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)).

13. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). A party-in-interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

**B.   The Sale of the Property Should Be Approved Because It Has a Valid Business Purpose and Is a Proper Exercise of the Debtors' Business Judgment**

14. The Debtors determined in their sound business judgment that they should sell the Property on the terms and conditions set forth in the Sale Agreement only after they had thoroughly considered all viable alternatives. In so doing, the Debtors concluded that the Property is unused land, the development of which is unrelated to their core business operations. Moreover, the Sale will generate significant cash on the Closing Date for the Debtors' estates, which they will be able to utilize in their core business operations.

15. The Debtors submit that they comprehensively marketed the Property, and that the consideration to be received is fair and reasonable in that context. Accordingly, the Debtors, in their business judgment, believe that the Sale Agreement and the transactions contemplated thereby are in the best interests of their estates, their creditors and other stakeholders. The Debtors therefore respectfully represent that the proposed Sale is a proper exercise of the Debtors' business judgment and is duly authorized on the terms and conditions described in this Motion and the Sale Agreement.

C. **The Property Should Be Sold Free And Clear Of Liens And Other Interests, as Authorized By Section 363(f)**

16. The Debtors submit that it is appropriate to sell the Property free and clear of Liens and Interests (except the Permitted Exceptions) pursuant to section 363(f) of the Bankruptcy Code, with any such Liens and Interests attaching to the net sale proceeds of the Property to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property of the estate free and clear of any interest of any other person or entity (other than the estate) if any one of its five requirements is satisfied:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) the person or entity holding the interest consents to the proposed sale;
>
> (3) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) the interest is in bona fide dispute; or
>
> (5) the person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See, e.g., In re Dundee Equity Corp.*, No. 89-10233 (FGC), 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. March 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of them interest concerned may occur if anyone of the conditions of § 363(f) have been met."); In re Elliott, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides in relevant part that "(t)he Court may issue any order, process or judgment

that is necessary or appropriate to carry out the provisions of (the Bankruptcy Code)." 11 U.S.C. § 105(a).

17. The Debtors submit that the Sale of the Property pursuant to the Sale Agreement satisfies one or more of the section 363(f) requirements. ***First and foremost***, there are no known Liens on or Interests in the Property other than the Permitted Exceptions, thus there is no consent to be obtained and none of the other requirements of section 363(f) is relevant to the inquiry. But even if a person or entity were to assert a Lien on or Interest in the Property, absent having objected to this Motion, any such party will be deemed upon entry of the Sale Order to have consented to the Sale, because they will have been properly put on notice. *In re Dewey & Leboeuf LLP*, No. 12-12321 (MG), 2012 Bankr. LEXIS 5116, at *16 (Bankr. S.D.N.Y. 2012) ("a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens"). Therefore, the Sale satisfies section 363(f)(2)'s consent requirement.

18. ***Second***, to the extent that any party asserts a Lien or Interest by objecting to the Motion, any such Lien or Interest would be the subject of a bona fide dispute, as the Debtors do not believe that there are any valid Liens or Interests (other than the Permitted Exceptions). 11 U.S.C. § 363(f)(4); *see also In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995) (noting that for a sale of property to qualify under section 363(f)(4), there must be "an objective basis for either a factual or legal dispute as to the validity of the debt"); *see also In re Downtown Ath. Club of N.Y. City*, M-47 (JSM), 2000 U.S. Dist. LEXIS 7917, at *10-11 (D.N.Y. 2000) (same). Finally, any objecting creditor asserting a Lien or Interest would be adequately protected by having its Lien or Interest attach to the net cash proceeds of the Sale in the same order of priority, with the same validity, force and effect that the objecting creditor's a Lien or Interest

had prior to the Sale, subject to any claims and defenses the Selling Debtor and its estate may possess with respect thereto. 11 U.S.C. § 363(f)(5); *see also In re Trans World Airlines. Inc.*, 322 F.3d 283, 291 (3d Cir. Del. 2003) (under section 363(f)(5), property of the estate may be sold "free and clear" of any interest "subject to monetary valuation"). Accordingly, under the facts and circumstances adduced in the Baird Declaration and otherwise, section 363(f) authorizes the transfer and conveyance of the Property free and clear of all Liens and Interests (other than the Permitted Exceptions).

**D.   The Property And Transferred Contracts Should Be Sold Free And Clear Of Successor Liability**

19.   Neither section 363(f) nor any other provision of the Bankruptcy Code defines the term "any interest." *Folger Adam Security v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000). In the case of *In re Trans World Airlines. Inc.*, 322 F.3d at 288-89, the Court of Appeals for the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit stated that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property'." *Id.* at 289 (citing 3 COLLIER ON BANKRUPTCY ¶ 363.06[1]). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case the Third Circuit cited approvingly and extensively in *Folger, supra*, the scope of section 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258.

20.   Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from any successor liability resulting from pre-existing

claims. *See In re Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764 (Bankr. D. Del. Aug. 15, 2007) (collecting cases). There are four exceptions to that general rule: (i) a buyer explicitly or implicitly agrees to assume liability; (ii) the transaction amounts to a de facto merger or consolidation; (iii) the purchasing corporation is merely a continuation of the seller; or (iv) the parties negotiated the transaction fraudulently to escape the liability. *Ninth Ave. Remedial Group*, 195 B.R. at 722 (internal citations omitted). These four exceptions describe corporate reorganizations that ultimately leave the real ownership unchanged. *Id.* (internal citation omitted).

21.  None of those four exceptions apply here, because the Sale will result in a bona fide change of ownership of the Property. **_First_**, Buyer is assuming all liability for the Property on an "as is, where is" basis once it has completed its due diligence as set forth in the Sale Agreement. **_Second_**, the Sale is an arms-length transaction between two unrelated entities, the consideration for which is but a miniscule fraction of the Debtors' assets. Additionally, there are no facts in this matter that would even begin to hint at a de facto merger or consolidation. Simply put, the Property is not a legal entity. It is real property.

22.  **_Third_**, Buyer and Grace are entirely separate and unaffiliated businesses. Buyer is a longstanding business, as is Grace (and its publicly traded Debtor parent, W. R. Grace & Co. (NYSE: GRA) ("Grace Parent")). Moreover, Grace and Grace Parent also do not have any officers or directors in common with Buyer. **_Finally_**, Buyer is not otherwise an insider of the Debtors. *See* 11 U.S.C. § 101(31). Thus, Buyer cannot be characterized as a "mere continuation of" Seller.

23.  Fourth, the Sale and the Sale Agreement were negotiated at arms-length and in good faith. In addition, as set forth in the Baird Declaration, no other person or entity (or

persons or entities) has offered to enter into an agreement or series of agreements as favorable to the Debtors as the Sale Agreement. If the Court were not to authorize the Sale or to approve the Sale Agreement, Grace's management would be forced to evaluate options regarding the Property that would not be as attractive as the current offer. For obvious reasons, the very purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a buyer arising from a seller's pre-sale conduct.

24. Finally, the Debtors are providing notice of the proposed sale to all known parties in interest that may assert claims or interests against Grace relating to the Property, including but not limited to all relevant governmental entities and taxing authorities. For all of the foregoing reasons, the Order should state that Buyer is not liable as a successor under any theory of successor liability for any liabilities that are not being expressly assumed pursuant to the Sale Agreement. *Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764 at *262-67.

E. **Buyer Is a Good Faith Buyer Entitled to the Full Protection of Section 363(m), and the Contemplated Sale Does not Violate Section 363(n)**

25. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Third Circuit has held that:

> [t]he requirement that a buyer act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a buyer's good faith status at a judicial sale involves fraud, collusion between the

>	Proposed Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Abbotts Dairies*, 788 F.2d at 147 (citations omitted).

26.	At all times, Buyer has acted in good faith under the *Abbotts Dairy* standards. In addition to Buyer offering fair and reasonable consideration, the Sale has been intensely negotiated by two sophisticated business entities, both of which are represented by sophisticated counsel and other advisors, with significant "give and take" and significant time and energies expended by both sides. The Debtors bargained for the maximum possible purchase price for the Property, among other points. Additionally and as discussed above, Buyer is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31). These facts and circumstances also establish that the Sale Agreement also does not constitute an agreement for a transaction that would be avoidable pursuant to section 363(n). *See, e.g., Lone Star Indus. v. Compania Naviera Perez Companc, S.A.C.F.I.M.F.A., Sudacia, S.A. (In re New York Trap Rock Corp.)*, 42 F.3d 747, 752 (2d Cir. N.Y. 1994) ("influence on the sale price must be an intended objective of the agreement, and not merely an unintended consequence, for the agreement among potential bidders to come within the prohibition of § 363(n)"); *In re Edwards*, 228 B.R. 552, 564 (Bankr. E.D. Pa. 1998) (citing *New York Trap Rock Corp.*, 42 F.3d at 752) ("An agreement to 'control' the sale price is very different from an agreement that 'affects' the sale price").

**F.	Fed. R. Bankr. P. 6004 Authorizes a Private Sale of the Property**

27.	Fed. R. Bankr. P. 6004(f)(1) provides that "(a)ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). Courts often allow chapter 11 debtors to sell assets outside the ordinary course of business by private sale when the debtors demonstrate that the sale is permissible pursuant to section 363(b). *See, e.g., Scherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments)*, 159 B.R. 821, 825

(D. Ill. 1993) (citations omitted) ("The manner of sale is within the discretion of the Trustee"); *see also In re MF Global Inc.*, 467 B.R. 726, 730 (Bankr. D.N.Y. 2012) (approving a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets when the applicable section 363(b) standards were met); *In re Embrace Systems Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a Bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. IL. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

28. The Debtors submit that proceeding with the private sale of the Property to Buyer will avoid unnecessary cost, delay and additional risk (particularly of Buyer's withdrawal from the sale process) associated with conducting a public auction now—without yielding any discernible additional benefit to their estates—particularly after the Debtors engaged Cushman & Wakefield to assist them in undertaking the exhaustive, multi-year marketing and sale process described in the Baird Declaration. As a result, the Debtors submit that Buyer's offer is the highest and best that the Debtors have received, and constitutes fair market value, given the limited market for the Property. The Debtors therefore request the Court approve the proposed private sale of the Property to Buyer in accordance with the Sale Agreement.

## VI. NOTICE OF THE SALE MOTION AND THE SALE IS ADEQUATE UNDER THE CIRCUMSTANCES

29. Notice of this Motion satisfies the requirements of Fed. R. Bankr. P. 2002, because it has been given to the following parties: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees

appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (vii) Buyer and counsel to Buyer; (viii) Federal, state and local taxing authorities who have a reasonably known interest in the relief requested by this Motion; (ix) all persons or entities known or reasonably believed to have asserted a lien on or interest in the Property (including Permitted Exceptions); (x) all persons or entities known or reasonably believed to have expressed a serious interest in acquiring the Property; (xi) the United States Attorneys for the Districts of Delaware and Maryland; (xii) the state attorneys general for the states of Delaware and Maryland; (xiii) the Maryland Department of Environment; and (xiv) the United States Environmental Protection Agency.

30. In light of the nature of the relief requested, the Debtors submit that no further notice is required, whether pursuant to Fed. R. Bankr. P. 6004(a), Fed. R. Bankr. P. 2002, Bankruptcy Code section 363(b)(2) or otherwise:

*Section 363 Notice Requirements:*

31. Bankruptcy Code section 363 provides that a trustee may sell property "after notice and hearing." Section 102(1) defines the phrase "after notice and hearing" to mean "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). As set forth above, by service of this Motion, all interested parties have been provided notice of the salient details regarding this Motion and the Sale Hearing. Accordingly, notice is sufficient under section 363.

*Fed. R. Bankr. P. 2002 Notice Requirements:*

32. Fed. R. Bankr. P. 2002 requires twenty-one days' notice to parties-in-interest of proposed sales of property other than in the ordinary course of business. In addition, Fed. R. Bankr. P. 2002 provides that, as to sales, notice of a sale shall "include the time and place of any

public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002. Del. Bankr. L.R. 2002-1(b) specifies the parties on whom a Motion for a sale other than in the ordinary course of business must be served in cases pending before this Court.

33.	The Debtors submit that this Motion and the Sale Notice contain the requisite information to reasonably notify parties-in-interest in satisfaction of the foregoing rules and requirements. The Debtors are providing approximately 35 days' notice of the Sale Hearing, and the Motion and Sale Notice contain all required information regarding the hearing and objection deadline.

***Fed. R. Bankr. P. 6004:***

34.	Fed. R. Bankr. P. 6004 requires that notices of sales of property out of the ordinary course of business comply with Fed. R. Bankr. P. 2002. As set forth above, the Debtor has complied with Fed. R. Bankr. P. 2002.

***Procedural Due Process:***

35.	The notice of this Motion that is being provided is "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. *See Mullane v. Central Hanover Ban & Trust Co.*, 339 U.S. 306, 314 (1950). Parties-in-interest have been or will be and should be found to have been afforded adequate notice of this Motion and the Sale Hearing. The Debtor submits that the notice that they have provided of this Motion and the Sale Hearing is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

## NO PREVIOUS MOTION

36.	No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the Court enter the Sale Order granting the relief requested in this Motion and granting such other relief as may be appropriate.

Dated: April 15, 2013

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Kathleen P. Makowski (Bar No. 3648)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession