# EXHIBIT B
## Frankel Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | |
| ) | |

**DECLARATION OF ROGER FRANKEL IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER APPOINTING ROGER FRANKEL AS THE SUCCESSOR LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS *NUNC PRO TUNC* TO MAY 16, 2013**

I, ROGER FRANKEL, hereby state as follows:

1.   I am currently a partner and co-chair of the global Restructuring Group at the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick" or the "Firm"). I maintain an office at 1152 15th Street, N.W., Washington, D.C. 20005. I am duly admitted to practice before the bars of the District of Columbia and the state of Maryland, the United States Bankruptcy Courts and United States District Courts for the District of Columbia and the District of Maryland, and the

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

United States Courts of Appeals for the Third and Fourth Circuits. I am admitted *pro hac vice* to the United States Bankruptcy Court for the District of Delaware (the "Court") and the United States District Court for the District of Delaware (the "District Court") in connection with the above-referenced cases.

2. I submit this declaration (the "Declaration") in support of the *Motion for Entry of an Order Appointing Roger Frankel as the Successor Legal Representative for Future Asbestos Personal Injury Claimants* Nunc Pro Tunc *to May 16, 2013* (the "Motion") filed by W.R. Grace & Co., et al. (collectively, the "Debtors") and to provide the disclosures required under Rule 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. To the extent that any information disclosed herein requires amendment or modification in the event that additional information becomes available, I intend to submit, or cause to be submitted, a supplemental declaration to the Court reflecting the same.

4. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

**REPRESENTATION OF MR. AUSTERN IN THESE CHAPTER 11 CASES**

5. On May 24, 2004, this Court appointed David T. Austern ("Mr. Austern") as the asbestos personal injury future claimants' representative in these chapter 11 cases. (Order appointing Mr. Austern [Dkt. No. 5645].) That Order authorized Mr. Austern to employ professionals consistent with Sections 327 and 1103 of the Bankruptcy Code.

6. Following his appointment, Mr. Austern sought and received Court approval to retain and employ my prior law firm, Swidler Berlin LLP (f/k/a Swidler Berlin Shereff

Friedman, LLP) ("Swidler"), as bankruptcy counsel to represent him in his capacity as the future claimants' representative in these chapter 11 cases *nunc pro tunc* to May 24, 2004. (Order approving retention of Swidler, entered Sept. 27, 2004 [Dkt. No. 6480].)

7. In February, 2006, I, along with a group of other lawyers, including lawyers that worked with me in my representation of Mr. Austern in these chapter 11 cases, joined Orrick. At that time, Mr. Austern decided to retain me, my colleagues, and my new Firm to continue to represent him in these cases. Accordingly, Mr. Austern sought and received Court approval to retain and employ Orrick as his bankruptcy counsel. (Order approving retention of Orrick, entered May 8, 2006 [Dkt. No. 12379].)

8. For the past nine years, from his Court-appointment on May 24, 2004 until his death on May 16, 2013, my colleagues and I have represented Mr. Austern in his capacity as the asbestos personal injury future claimants' representative in these chapter 11 cases. During that time, I served as Mr. Austern's lead counsel in these cases. My colleagues and I have worked extremely closely with Mr. Austern in every aspect of these cases, including, for example:

   a. Conducting initial due diligence regarding the Debtors and their affiliates, including an analysis of their assets and liabilities;

   b. Actively participating in a mediation, which failed to achieve a consensual plan of reorganization;

   c. Actively participating in every aspect of the highly contested estimation trial of the Debtors' present and future asbestos personal injury liabilities;

   d. Actively participating in negotiations and drafting of insurance settlement agreements, which provide for the payment of millions of dollars for the benefit of present and future asbestos personal injury claimants;

3

e. Litigating against the Debtors in connection with their requests for multiple extensions of their exclusive periods to file a plan of reorganization and solicit votes in connection therewith, including an appeal thereto, which ultimately resulted in an order terminating the Debtors' exclusive periods;

f. Actively participating in the negotiations that led to a global settlement of the Debtors' asbestos liabilities, which settlement formed the basis for a plan of reorganization;

g. Actively participating in the negotiation and drafting of a plan of reorganization as a co-proponent of the plan;

h. Litigating, along with the Debtors and the other co-proponents of the plan, in this Court and on appeal to the District Court, against numerous plan opponents in connection with confirmation of the plan, which resulted in this Court's entry of a confirmation order and the District Court's affirmance of that order; and

i. Actively participating in briefing the appeals from the confirmation order in the United States Court of Appeals for the Third Circuit (the "<u>Third Circuit</u>"), which appeals are scheduled for oral argument on June 17, 2013.

9. As a result of my many years of experience representing Mr. Austern in these cases, I am intimately familiar with the Debtors, the plan and plan-related documents, the confirmation order, the findings of fact and conclusions of law entered by this Court in connection with the confirmation order, the District Court's opinion and order affirming the confirmation order, and the appeals related thereto. In addition, I am very familiar with the legal arguments and positions taken by Mr. Austern and the other co-proponents of the plan in support of confirmation of the plan, having participated in the briefing and argument of those issues

4

before the Bankruptcy Court and on appeal to the District Court. I have also been intimately involved in the briefing of those issues on appeal to the Third Circuit and in preparing for oral argument.

10. Accordingly, I believe I am uniquely suited and well qualified to serve as the successor asbestos personal injury future claimants' representative in these cases (the "PI Future Claimants' Representative").

**QUALIFICATIONS AND ASBESTOS-RELATED BANKRUPTCY EXPERIENCE**

11. I have practiced in the areas of business reorganization and creditors' rights since 1972. My practice includes significant experience in the area of asbestos-related bankruptcies and restructuring matters. For the past twelve years, I have counseled clients in connection with complex asbestos-related bankruptcy matters. For example, in addition to representing Mr. Austern as the asbestos personal injury future claimants' representative in these cases, I also represented him as the court-appointed future claimants' representative in the chapter 11 cases of Combustion Engineering, Case No. 03-10495 (Bankr. D. Del.), in connection with the negotiation and successful confirmation of Combustion Engineering's plan of reorganization, which resulted in the establishment of a section 524(g) trust with more than $1 billion in assets for the benefit of future asbestos claimants. Until his death, I represented Mr. Austern as the future claimants' representative for Combustion Engineering's section 524(g) trust established pursuant to that plan.

12. In addition, I represented R. Scott Williams ("Mr. Williams") as the Court-appointed future claimants' representative in the chapter 11 asbestos bankruptcy cases of Congoleum Corporation, *et al.*, Case No. 03-51524 (Bankr. D. N.J.), a flooring manufacturer. As counsel for Mr. Williams, I, along with other lawyers at my Firm, was involved in negotiating

5

the confirmed plan of reorganization and the accompanying $100+ million global insurance settlement. I continue to represent Mr. Williams as the future claimants' representative in connection with the section 524(g) trust established pursuant to Congoleum's confirmed plan.

13. I currently represent Joseph W. Grier, III ("Mr. Grier"), the court-appointed future claimants' representative in the chapter 11 cases of Garlock Sealing Technologies, Case No. 10-31607 (Bankr. W.D.N.C.), a manufacturer of industrial sealing products. As counsel to Mr. Grier, I, along with other lawyers at my Firm, have participated in the discovery process and expert analysis relating to the estimation of Garlock's present and future aggregate asbestos bodily injury liability and in the valuation of Garlock's assets.

14. I also represented Shook & Fletcher Insulation Company, Case No. 02-2771 (Bankr. N.D. Ala), as a debtor in connection with one of the first successful pre-packaged section 524(g) asbestos bankruptcy cases in the country. I currently represent the Shook & Fletcher Asbestos Settlement Trust established pursuant to that confirmed plan.

**DISINTERESTEDNESS AND DISCLOSURE CONCERNING CONNECTIONS BETWEEN AND AMONG ME, THE DEBTORS, AND OTHER PARTIES IN INTEREST**

15. In order to prepare this Declaration, I, or other personnel at my Firm, conducted a series of searches in my Firm's conflicts database to determine whether any conflicts of interest exist which would preclude me from serving as the successor PI Future Claimants' Representative, and whether connections exist which should be disclosed under Bankruptcy Rule 2014.

16. In connection with my Firm's representation of Mr. Austern, Orrick has filed a declaration and various supplemental declarations pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure, which are incorporated herein by reference. See Dkt. Nos. 12022, 12896, 13019, 13421, 13509, 15690, 18883, 19223, 19526, 19608, 19808, 20699, 25435, 26218, 26484,

27053, 28355, 29745 (collectively, the "Orrick Declarations"). Nothing disclosed in the Orrick Declarations precludes me from serving as the successor PI Future Claimants' Representative in these cases.

17. In preparing this Declaration, I asked Orrick to update its disclosures pursuant to Bankruptcy Rules 2014 and 5002. Orrick has advised me of the following additional connections which are disclosed here out of an abundance of caution, and not because I believe the matters set forth herein are within the scope of Bankruptcy Rules 2014 or 5002. None of these additional connections preclude me from serving as the successor PI Future Claimants' Representative in these cases.

    a. Caspian Capital Partners LP, Caspian Select Credit Master Fund Ltd., Caspian Solitude Master Fund LP, Macquarie Bank Limited, Mariner LDC, Prime Capital, Solus Core Opportunities LP, and Solus Core Opportunities Master Fund Ltd. appear in these cases as part of the Bank Lender Group, which is an appellant in the Third Circuit appeal from the order confirming the plan (Lead Case No. 12-1402, *et al.*). Orrick represents or previously represented these entities or their affiliates on matters unrelated to the Debtors and these chapter 11 Cases.

    b. Loan Syndications and Trading Association ("LSTA") filed an amicus curiae brief in the Third Circuit (Lead Case No. 12-1402, *et al.*) in support of the Bank Lender Group in connection with the appeal from the order confirming the plan. Orrick represents LSTA in matters unrelated to the Debtors and these chapter 11 Cases.

18. Insofar as I have been able to ascertain and to the best of my knowledge, other than as described herein or in the Orrick Declarations, neither I, nor my Firm, have any

connection with the Debtors, their creditors and other parties in interest in these chapter 11 cases. In addition, neither I, nor my Firm, represent or hold any interest adverse to the Debtors or the Debtors' estates with respect to the matters on which I am proposed to be retained in these cases.

19. To the best of my knowledge and belief, and to the extent I have been able to ascertain, except as otherwise described herein or in the Orrick Declarations, neither I, nor my Firm, have had any business, professional or other connection with the Debtors, their affiliates, creditors, insurers, or any other parties in interest herein, or their respective attorneys, in connection with these chapter 11 cases, and have never represented a current plaintiff, defendant, or insurer in any litigation involving the Debtors.

20. I am not related or connected to any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware, or any employee in the Office of the United States Trustee.

21. Accordingly, except as otherwise set forth herein or in the Orrick Declarations, insofar as I have been able to ascertain, both my Firm and I are a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that:

   a. Neither I, nor my Firm, are a creditor, equity security holder, or insider of the Debtors or any other parties in interest in these cases;

   b. Neither I, nor my Firm, are or have been, within two years before the date of the filing of the Debtors' chapter 11 cases, a director, officer or employee of the Debtors; and

   c. Neither I, nor my Firm, have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any

8

direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

22. I do not directly hold publicly traded securities of the Debtors. I hold investments in mutual funds and other investment accounts which may hold securities of the Debtors. I do not have any control or authority over the investment decisions of any such mutual funds or other investment accounts.

23. I, or other lawyers at my Firm, may have business associations with, or professional, social or familial relationships with, or interests aligned with or adverse to, creditors or parties in interest, or their attorneys, accountants or advisors. As part of my practice, I, and other lawyers at my Firm, appear in cases, proceedings and transactions throughout the country involving many different parties, and work together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these cases. As far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with the Debtors or these chapter 11 cases.

24. In addition, numerous professionals, including attorneys, accountants and advisors, have been retained in these chapter 11 cases since their filing in April 2001. I, or other lawyers at my Firm, work with many professionals during the course of rendering legal services to clients all over the country and may have previously worked with these professionals on various representations, and may continue to do so in connection with matters unrelated to these chapter 11 cases.

25. Since 2006, in connection with my Firm's representation of Mr. Austern, I understand that the Debtors have paid Orrick approximately $25 million in fees for legal services

rendered to Mr. Austern in these cases. I further understand that, as of May 20, 2013, Orrick has incurred $296,009.93 in additional fees and expenses for the period through April 30, 2013, which have been billed to the Debtors but for which payment has not yet been received by Orrick.

## PROFESSIONAL COMPENSATION

26. My current hourly rate is $995.00. This rate is subject to periodic change. It is my policy, and the policy of my Firm, to charge for all expenses incurred during the course of my representation. These expenses include, among other things, telephone and telecopier charges, mail and express mail charges, special or hand-delivery charges, document processing, photocopying charges, charges for mailing supplies provided by me to outside copying services, travel expenses, online research expenses, transcription costs, as well as ordinary overhead expenses such as secretarial and other overtime.

27. If appointed by the Court, I intend to maintain contemporaneous records of time expended and out-of-pocket expenses incurred in connection with my services as the future claimants' representative and to apply to the Court for the allowance of such fees, at my then applicable rate, and expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the Fee Auditor appointed in these cases, and any other applicable procedures and orders of the Court. I have agreed to accept as compensation such sums as may be allowed by the Court and I understand that interim and final fee awards are subject to approval by the Court.

28. In light of confidentiality considerations, I reserve the right to redact my time and expense records as I believe appropriate.

DOCS_DE:187633.1 91100/001

29. I understand that no compensation will be paid to me by the Debtors for services or expenses except to the extent allowed in accordance with procedures approved by the Court.

30. The fee structure described herein and in the Motion is consistent with my normal and customary billing practice. I believe that this compensation arrangement is both reasonable and market based.

31. I have made no promises or arrangements with any other entity to share with such entity any payment or compensation received by me in connection with these cases, other than with respect to my Firm and except as permitted by section 504(b)(1) of the Bankruptcy Code.

32. If appointed by the Court, I anticipate that I will seek Court authority to retain Orrick as my counsel and Phillips, Goldman & Spence, P.A. as my Delaware local counsel.[2] I believe continuing the engagement of the attorneys who previously represented Mr. Austern in these cases will provide me with the most efficient and effective representation during these cases.

## INDEMNIFICATION

33. Subject to Court approval, I understand that the Debtors have agreed that I shall not be liable for any damages, or have any obligations other than as prescribed by orders of this Court; provided, however, that I may be liable for damages caused by my willful misconduct or gross negligence. I further understand that I shall not be liable to any person as a result of any action or omission taken or made by me in good faith. The Debtors shall indemnify, defend and hold me and my agents and professionals harmless from any claims by any party against me arising out of or relating to the performance of my duties as PI Future Claimants' Representative,

---

[2] Mr. Austern retained Phillips, Goldman & Spence, P.A. ("PGS") as his Court-approved Delaware local counsel following his appointment in May 2004 until the time of his death. (Order appointing PGS, entered Sept. 27, 2004 [Dkt. No. 6478].)

provided, however, that I (and my agents and professionals), shall not have such indemnification rights if a court of competent jurisdiction determines pursuant to a final and non-appealable order that I am liable upon such claim as a result of willful misconduct or gross negligence. If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in these chapter 11 Cases (that order having become a final order and no longer subject to appeal), and (ii) entry of an order closing these chapter 11 cases, I believe that I am entitled to payment for any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under an order approving the Motion, including without limitation the advancement of defense costs, I must file an application therefor in this Court, and the Debtors may not pay any such amounts to me before the entry of an order by this Court approving the payment. The preceding sentence is intended to specify the period of time under which this Court shall have the jurisdiction over any request for fees and expenses by me for indemnification, contribution or reimbursement and is not a limitation on the duration of the Debtors' obligation to indemnify me. In the event that a cause of action is asserted against me arising out of or relating to the performance of my duties as PI Future Claimants' Representative, I shall have the right to choose my own counsel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 24, 2013

_____
Roger Frankel, Esq.