# EXHIBIT B
# TO THE APPLICATION:

# WYRON DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Case No. 01-1139 |
| W.R. GRACE & COMPANY, et al. ) | Chapter 11 |
| ) | (Jointly Administered) |
| Debtors. ) | |

**DECLARATION OF RICHARD H. WYRON IN SUPPORT OF THE
APPLICATION OF ROGER FRANKEL, SUCCESSOR
LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY
CLAIMANTS, FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF ORRICK, HERRINGTON & SUTCLIFFE LLP
AS BANKRUPTCY COUNSEL *NUNC PRO TUNC* TO MAY 16, 2013**

I, RICHARD H. WYRON, hereby state as follows:

1. I am a partner in the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick"), which maintains offices for the practice of law at 1152 15th Street, N.W., Washington, DC 20005 and in other cities. I am admitted to practice before the bars of the District of Columbia and the State of Maryland, the United States Bankruptcy Courts and the United States District Courts for the District of Columbia and the District of Maryland, and the United States Courts of Appeals for the Third and Fourth Circuits and the District of Columbia Circuit, among other courts. I am admitted *pro hac vice* to the United States Bankruptcy and District Courts for the District of Delaware in connection with these Chapter 11 Cases.[1]

2. I submit this declaration (the "Declaration") in support of the Application of Roger Frankel, Successor Legal Representative for Future Asbestos Personal Injury Claimants for Entry of an Order Authorizing the Retention and Employment of Orrick as Bankruptcy Counsel *Nunc*

---

[1] Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Application (as defined herein).

*Pro Tunc* to May 16, 2013 (the "Application") filed by Roger Frankel ("Mr. Frankel" or the "FCR") in his capacity as the successor FCR, and to provide the disclosures required under Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. Unless otherwise stated in this Declaration, the facts set forth herein are based upon my personal knowledge, upon records maintained by Orrick in the ordinary course of its business and which have been reviewed by me and/or by other partners or employees of Orrick at my direction, or upon information known to other partners or employees of Orrick and conveyed to me.

**Orrick's Representation of Mr. Austern as the Asbestos Personal Injury Future Claimants' Representative in these Chapter 11 Cases**

4. By order entered May 24, 2004, the Court appointed David T. Austern ("Mr. Austern") as the legal representative for future asbestos personal injury claimants in these Chapter 11 Cases [Dkt. No. 5645] (the "Austern Appointment Order"). The Austern Appointment Order, among other things, authorized Mr. Austern to employ professionals consistent with sections 327 and 1103 of the Bankruptcy Code.

5. Following his appointment, Mr. Austern sought and received Court approval to retain and employ Swidler Berlin LLP ("Swidler"), the firm in which Mr. Frankel and I were then partners, as bankruptcy counsel to represent him in these Chapter 11 Cases. [Mr. Austern's application to retain Swidler, Dkt. No. 5815; Order approving retention of Swidler, Dkt. No. 6480].

6. In February 2006, I, along with Mr. Frankel and other lawyers who had represented

2

Mr. Austern while at Swidler, joined Orrick. At that time, Mr. Austern decided to retain me, Mr. Frankel, and the other lawyers responsible for his representation, and our new firm, to continue to represent him in these Chapter 11 Cases. Accordingly, Mr. Austern sought and received Court approval to retain and employ Orrick as his bankruptcy counsel. [Mr. Austern's application to retain Orrick, Dkt. No. 12022; Order approving retention of Orrick, Dkt. No. 12379].

7. Mr. Austern died on May 16, 2013.

**The Debtors' Request to Appoint Mr. Frankel as the Successor FCR and the Bankruptcy Court's Interim Appointment Order Appointing Mr. Frankel as the Successor FCR**

8. On May 24, 2013, the Debtors filed a Motion for Entry of an Order Appointing Roger Frankel as the Successor Legal Representative for Future Asbestos Personal Injury Claimants *Nunc Pro Tunc* to May 16, 2013 and a supporting declaration by Roger Frankel (the "Frankel Declaration") [Dkt. No. 30671].

9. An order was entered by the Court on May 29, 2013 [Dkt. No. 30681], which was amended on May 30, 2013 [Dkt. No. 30689], appointing Mr. Frankel, on an interim basis, as the successor FCR in these Chapter 11 Cases *nunc pro tunc* to May 16, 2013.

**Orrick's Qualifications**

10. For the past nine years, from Mr. Austern's appointment by the Court in 2004 until his death, I, along with Mr. Frankel and our colleagues, first at Swidler and then at Orrick, represented Mr. Austern in these Chapter 11 Cases. During that time, Mr. Frankel and I, and other lawyers at Orrick, worked extremely closely with Mr. Austern in every aspect of these cases, including:

   a. Conducting due diligence regarding the Debtors and their affiliates, including an analysis of their assets and liabilities;

3

b. Actively participating in a mediation, which failed to achieve a consensual plan of reorganization;

c. Actively participating in every aspect of the highly contested estimation trial of the Debtors' present and future asbestos personal injury liabilities;

d. Actively participating in negotiations and drafting of insurance settlement agreements, which provide for the payment of millions of dollars for the benefit of present and future asbestos personal injury claimants;

e. Litigating against the Debtors in connection with their requests for multiple extensions of their exclusive periods to file a plan of reorganization and solicit votes in connection therewith, including an appeal thereto, which ultimately resulted in an order terminating the Debtors' exclusive periods;

f. Actively participating in the negotiations that led to a global settlement of the Debtors' asbestos liabilities, which settlement formed the basis for the Joint Plan;

g. Actively participating in the negotiation and drafting of the Joint Plan as a co-proponent;

h. Litigating, along with the Debtors and the other co-proponents of the Joint Plan, in this Court and on appeal to the District Court, against numerous plan opponents in connection with confirmation of the Joint Plan, which resulted in this Court's entry of the Confirmation Order and the District Court's affirmance of that order; and

i. Actively participating in briefing the appeals from the Confirmation Order in the United States Court of Appeals for the Third Circuit (the "Third Circuit"),

and in preparing for oral argument, which is scheduled for June 17, 2013.

11. Given my and my colleagues many years of experience representing Mr. Austern in these Chapter 11 Cases, I and other lawyers at Orrick are intimately familiar with the Debtors, these Chapter 11 Cases, the Joint Plan and plan-related documents, the Confirmation Order, the District Court's opinion and order affirming the Confirmation Order, and the appeals related thereto. In addition, I and other lawyers at Orrick are very familiar with the legal arguments and positions taken by Mr. Austern and the other co-proponents of the Joint Plan in support of confirmation of the Joint Plan, having participated in the briefing and argument of those issues before this Court and on appeal to the District Court. I and other lawyers at Orrick have also been intimately involved in the briefing of those issues on appeal to the Third Circuit and in preparing for the June 17, 2013 oral argument.

12. In addition, I, along with other lawyers at Orrick, have extensive expertise in other asbestos bankruptcy cases, particularly as bankruptcy counsel to future claimants' representatives. These representations are described in the Frankel Declaration. See Frankel Declaration [Dkt. No. 30671, Exh. B, ¶¶ 11-14. I, along with other lawyers at Orrick, am also familiar with the concerns and issues important to the FCR and to asbestos personal injury claimants who may assert claims or demands in the future.

13. I believe that the continued engagement of my firm, and of the same lawyers who represented Mr. Austern in these Chapter 11 Cases for the past nine years, will provide the FCR with the most efficient and effective representation, allowing him seamlessly to succeed Mr. Austern in his duties and responsibilities as the FCR.

14. Accordingly, I believe Orrick is well suited to assist the FCR as his bankruptcy counsel during the pendency of these Chapter 11 Cases.

**Scope of Orrick's Retention**

15. The FCR has requested that Orrick render the following services in connection with these cases:

- a. provide legal advice and representation with respect to the FCR's powers and duties in connection with the Chapter 11 Cases;

- b. prepare and file on behalf of the FCR all applications, motions, responses, objections and other pleadings in these Chapter 11 Cases, including any appeals related thereto, as may be necessary and as the FCR authorizes;

- c. appear on behalf of and represent the FCR in these Chapter 11 Cases, including, *inter alia*, at meetings, court hearings, oral arguments, and other proceedings, as appropriate, before this Court or others;

- d. represent and advise the FCR with respect to any contested matter, adversary proceeding, lawsuit or other proceeding in which he may become a party or otherwise appear in connection with the Chapter 11 Cases, including any appeals related thereto;

- e. represent and advise the FCR with respect to the Joint Plan or any other plans of reorganization that may be proposed, including, for example, in connection with the appeals of the orders confirming the Joint Plan or any other plans of reorganization; and

- f. perform all other necessary legal services that the FCR authorizes and/or requests as may be appropriate in connection with these Chapter 11 Cases, including any appeals related thereto.

16. Subject to approval of the Application, Orrick is willing to act on behalf of, and render such services to, the FCR, on the same terms and conditions as such services were rendered to Mr. Austern.

17. I understand that the FCR intends to file an application to continue to employ Phillips, Goldman & Spence, P.A. ("PG&S") as his Delaware co-counsel in these Chapter 11 Cases. I expect that my firm and PG&S will coordinate our work, as we did in connection with our services to Mr. Austern, to avoid duplication of effort.

**Orrick's Connections to Mr. Frankel as the Successor FCR, the Debtors and Other Parties**

18. Mr. Frankel is a partner in Orrick. Mr. Frankel and I, and other professionals at Orrick, have worked together for many years on these Chapter 11 Cases. We have also worked together in representing other clients on other matters, including representing future claimants' representatives in other chapter 11 cases and in connection with section 524(g) trusts formed under confirmed plans, and we expect to continue to do so during Mr. Frankel's tenure as the successor FCR in these Chapter 11 Cases. None of such other matters is related to the Debtors or these Chapter 11 Cases.

19. I understand that Mr. Frankel intends to provide monthly fee statements of his fees and expenses incurred in his capacity as the FCR, and to file fee applications seeking compensation and reimbursement of expenses, separate and apart from the monthly fee statements and fee applications filed by Orrick. Because Mr. Frankel is an attorney at Orrick, amounts allowed by the Court as compensation for fees and reimbursement of expenses for Mr. Frankel's service as the FCR will be paid to Orrick.

20. Orrick's books and records reflect that, in connection with its representation of Mr. Austern, the firm has received approximately $28 million in Court-approved fees and reimbursement of expenses. In addition to fees and expenses which have already been paid, Orrick has incurred through April 30, 2013, but has not yet been paid, $296,009.93[2] in fees and expenses for services rendered to Mr. Austern in these Chapter 11 Cases. Orrick has filed fee applications with the Court for these amounts. In addition, Orrick has incurred fees and expenses for services rendered to Mr. Austern from May 1, 2013 through the date of his death on

---

[2] This amount includes fees and expenses incurred in March and April 2013, as well as "holdbacks" from our fee applications for October 2012 through February 2013.

May 16, 2013.  Orrick intends to file a monthly fee application (and a quarterly fee application covering the relevant time period) for services rendered to Mr. Austern through May 16, 2013.  Following Mr. Austern's death, Orrick continued to perform necessary services for the FCR, particularly in connection with the pending appeal to the Third Circuit.  If the Application is granted, Orrick intends to file fee applications, as appropriate, seeking Court approval for compensation for services rendered and reimbursement of actual and necessary expenses incurred since May 16, 2013, in connection with its services to Mr. Frankel as the successor FCR.

21. In connection with declarations prepared and filed by Orrick since 2006, Orrick utilized a set of procedures established by the firm to insure compliance with the requirements of the Bankruptcy Code and Bankruptcy Rules and to determine whether any conflict of interest exists which would preclude Orrick's service as counsel to the FCR, and whether connections exist which should be disclosed under Bankruptcy Rule 2014.  Orrick conducted its initial review based upon a list of parties which was originally provided by the Debtors in connection with Mr. Austern's retention of counsel.  The list identified the Debtors, and the names of parties in interest and their attorneys and accountants.  Since that time, Orrick has prepared updates to the list as additional parties in interest and their respective attorneys and accountants have entered their appearances, or otherwise became known to Orrick, in these Chapter 11 Cases (the original list provided by the Debtors and the updates thereto are referred to herein as the "Listed Parties").  Attached hereto as **Exhibit 1** is the current list of the Listed Parties.  Orrick's searches in our computerized database have been limited to the Listed Parties.

22. I and other Orrick professionals instructed the employees responsible for maintaining Orrick's computerized database of client matters to review such database with a

view toward determining whether Orrick has any reported connections with any of the Listed Parties.

23. Once the database identified a potential connection between Orrick and a Listed Party, I or someone working with me contacted the responsible attorney(s) to the extent he or she is still employed by Orrick or otherwise elicited information to discern the nature and scope of the representation or connection for appropriate disclosure.

24. In connection with Orrick's representation of Mr. Austern, Orrick filed an initial declaration and numerous supplemental declarations over the years, all of which are incorporated herein by reference. See Dkt. Nos. 12022, 12896, 13019, 13421, 13509, 15690, 18883, 19223, 19526, 19608, 19808, 20699, 25435, 26218, 26484, 27053, 28355 and 29745 (collectively, the "Orrick Declarations"). In connection with the preparation of this Declaration, I instructed Orrick personnel to update the list of Listed Parties to identify any additional parties since Orrick's last update. As a result of that updating process, Orrick makes the following disclosures, in addition to those contained in the Orrick Declarations. I have included these disclosures in my Declaration out of an abundance of caution, and not because I believe the matters set forth herein are necessarily within the scope of Bankruptcy Rule 2014.

    a. Caspian Capital Partners LP, Caspian Select Credit Master Fund Ltd., Caspian Solitude Master Fund LP, Macquarie Bank Limited, Mariner LDC, Prime Capital, Solus Core Opportunities LP, and Solus Core Opportunities Master Fund Ltd. have appeared in these Chapter 11 Cases as part of the Bank Lender Group, which is an appellant in the pending Third Circuit appeal from the Confirmation Order (Lead Case No. 12-1402, *et al.*). Orrick represents or previously represented

  these entities or their affiliates on matters unrelated to the Debtors and these Chapter 11 Cases.

  b. The Loan Syndications and Trading Association ("LSTA") filed an amicus curiae brief in the Third Circuit (Lead Case No. 12-1402, *et al.*) in support of the Bank Lender Group in connection with the appeal from the Confirmation Order. Orrick represents LSTA in matters unrelated to the Debtors and these Chapter 11 Cases.

  25. As far as I am able to ascertain and to the best of my knowledge, and except as otherwise set forth herein and in the Orrick Declarations, Orrick does not hold or represent any interest adverse to the Debtors or their estates with respect to the matters on which Orrick is to be employed, and has no connections with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. Orrick may have rendered or may be rendering services to certain of such parties, or may become involved in matters unrelated to these Chapter 11 Cases in which such parties, or attorneys or accountants for such parties, were, are or become, involved. Orrick also may have or represent interests adverse to such creditors or parties in interest in matters unrelated to these Chapter 11 Cases.

  26. In addition to the foregoing, Orrick's partners and employees may have business associations with, professional, social or familial relationships with, or interest aligned with or adverse to, creditors or parties in interest, or their attorneys, accountants or advisors. As part of its practice, Orrick appears in cases, proceedings and transactions throughout the world involving many different parties, and works together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these Chapter 11 Cases. As far as I have

been able to ascertain, none of these associations, relationships or interests have any connection to the Debtors or these Chapter 11 Cases.

27. Neither I, nor, to the best of my knowledge, any Orrick lawyer or employee who is proposed to work on this matter, is related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee of that office.

28. Neither I, nor, to the best of my knowledge, Orrick, is a creditor,[3] equity security holder or an insider of the Debtors or their estates, and is not and was not, within two years before the date of filing of these Chapter 11 Cases, a director, officer, or employee of the Debtors. None of the representations described above or in the Orrick Declarations are materially adverse to the interests of the Debtors, their estates, any class of creditors or equity security holders or future asbestos claimants. Thus, Orrick is disinterested as that term is defined in section 101(14) of the Bankruptcy Code and may act as bankruptcy counsel to the successor FCR.

29. Neither I, nor, to my knowledge, Orrick, directly holds publicly traded securities of W. R. Grace & Co. Partners and employees of Orrick may hold such publicly traded securities individually (whether through mutual fund holdings or otherwise). To my knowledge, no partner or employee of Orrick serves as an officer or director of any of the Debtors. Individual partners and employees of Orrick may directly or indirectly hold publicly traded securities of one or more

---

[3] As described in paragraph 20 above, Orrick presently has an administrative expense claim for unpaid professional fees and expenses incurred in its representation of Mr. Austern. This administrative expense claim does not render Orrick a creditor of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

of the Debtors' creditors and other parties in interest. No such holdings will affect Orrick's ability to represent the successor FCR in these Chapter 11 Cases.

30. Orrick has made reasonable efforts to discover and disclose the existence of any conflict of interest or connections based upon the information available to Orrick. Orrick is unable to state, however, whether one or more of its clients or their affiliates that has not been identified by the Debtors or has not entered an appearance in these Chapter 11 Cases holds a claim or interest, or otherwise is a party in interest in these Chapter 11 Cases. Orrick intends to review periodically its database during the pendency of these Chapter 11 Cases to insure, to the extent reasonably possible, that no conflict or other disqualifying circumstance exists or arises.

**Professional Compensation**

31. Orrick and the FCR have agreed that Orrick will represent the FCR, if authorized by the Court, on the same terms and conditions as Mr. Austern's retention and employment of Orrick. See Mr. Austern's application to retain Orrick, Dkt. No. 12022].

32. As Orrick has done in connection with the services it rendered to Mr. Austern, Orrick intends to apply for compensation for services rendered to Mr. Frankel in connection with these Chapter 11 Cases on an hourly basis, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and Orders of this Court, including the Administrative Compensation Order, and the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases.

33. In light of confidentiality considerations, Orrick reserves the right to redact its time and expense records as it believes appropriate. Orrick understands that no compensation may be paid by the Debtors except to the extent allowed or approved by the Court.

34. With respect to U.S.-based professionals, Orrick's current hourly rates range from $695 to $1,095 for partners, $600-$950 for senior counsel, $355-$675 for associates and $160-$315 for legal assistants. I presently expect that the following professionals may have responsibility for representing the FCR and performing services on his behalf in these cases:

| Attorney | Hourly Rate |
| --- | --- |
| Richard H. Wyron (partner) | $875 per hour |
| Debra L. Felder (senior associate) | $650 per hour |
| James Burke (managing associate) | $510 per hour |
| Debra O. Fullem (senior legal asst.) | $270 per hour |

Orrick will utilize other attorneys and paraprofessionals as may be necessary.

35. The hourly rates set forth above are Orrick's standard hourly rates. These hourly rates are subject to periodic increases in the normal course of Orrick's business. It is Orrick's policy to charge its clients for disbursements for in-house services, including postage, telephone charges, duplicating, word processing, and the like, as well as certain third-party payments, including travel expenses, expenses for working meals, computerized research, transcription costs, secretarial and other overtime, and other expenses incurred on the FCR's behalf. Orrick agrees to follow the Local Rules and Orders of this Court, including the Administrative Compensation Order, the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases and any other administrative procedures that apply to these Chapter 11 Cases concerning compensation.

36. For purposes of efficiency, Orrick asks that, if the Application is granted, it be permitted to file a single consolidated final fee application at the end of these Chapter 11 Cases,

which will include all of the fees and expenses incurred by Orrick in connection with its representation of Mr. Austern from 2004 through May 16, 2013, and in connection with its representation of Mr. Frankel from May 16, 2013 through and including the effective date of a plan of reorganization.

37. To the best of my knowledge, no promises or arrangements have been received by Orrick as to payment or compensation in connection with the above-captioned cases other than in accordance with applicable provisions of the Bankruptcy Code. To the best of my knowledge, Orrick has no agreement with any other entity to share with such entity compensation received by Orrick in connection with the Debtors' Chapter 11 Cases, except as permitted by Section 504(b)(1) of the Bankruptcy Code.

* * * * * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

/s/ Richard H. Wyron
Richard H. Wyron

Executed on this 5th day of June 2013