# EXHIBIT B

# TO THE APPLICATION:

# RADECKI DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| W.R. GRACE & CO., et al., | ) ) ) | Chapter 11<br>Case No. 01-1139 (KJC)<br>(Jointly Administered) |
| Debtors. | ) ) ) | |

**DECLARATION OF JOSEPH J. RADECKI, JR. UNDER
FED. R. BANKR. P. 2014, 2016 AND 5002 IN SUPPORT OF THE
APPLICATION OF ROGER FRANKEL, SUCCESSOR REPRESENTATIVE FOR
FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS, FOR ENTRY OF AN
ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
LINCOLN PARTNERS ADVISORS LLC AS FINANCIAL ADVISOR *NUNC PRO TUNC*
TO MAY 16, 2013**

I, Joseph J. Radecki, Jr., state:

1. I am a Managing Director of Lincoln Partners Advisors LLC ("Lincoln"), an Illinois limited liability company, which maintains offices at 360 Madison Avenue, 21st Floor, New York, New York 10017.

2. I submit this declaration (the "Declaration") in support of the Application of Roger Frankel, Successor Legal Representative for Future Asbestos Personal Injury Claimants, for Entry of an Order Authorizing the Retention and Employment of Lincoln Partners Advisors as Financial Advisor *Nunc Pro Tunc* to May 16, 2013 (the "Application") filed by Roger Frankel ("Mr. Frankel" or the "FCR") in his capacity as the successor FCR, and to provide the disclosures required under Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").[1]

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Application.

2

3. Except as otherwise provided below, the facts set forth in this declaration are based upon my personal knowledge or upon records maintained by Lincoln or by me in the ordinary course of business.

### The Court's Prior Approval of Mr. Austern's Financial Advisor

4. By order entered May 24, 2004, the Court appointed David T. Austern ("Mr. Austern") as the legal representative for future asbestos personal injury claimants in these Chapter 11 Cases [Dkt. No. 5645] (the "Austern Appointment Order"). The Austern Appointment Order, among other things, authorized Mr. Austern to employ professionals consistent with sections 327 and 1103 of the Bankruptcy Code.

5. By Order dated September 27, 2004, the Court authorized Mr. Austern to retain me and my team as his financial advisor in these cases. (Dkt. No. 6479) At that time, my colleagues and I were employed by CIBC World Markets Corp. ("CIBC").

6. In February 2006, I, along with my team, resigned from CIBC and joined Piper Jaffray & Co. ("PJC"). At that time, Mr. Austern, with Court approval, terminated CIBC and retained PJC as his financial advisor pursuant to an Order entered on May 8, 2006. (Dkt. No. 12378)

7. In March 2008, I resigned from PJC and began rendering financial advisory services through Tre Angeli LLC ("Tre Angeli") of which I was the sole member and employee.

8. After my resignation from PJC, with Court approval, Mr. Austern retained and employed PJC and me (through my company, Tre Angeli) as co-financial advisors pursuant to separate retention agreements. (Dkt. Nos. 19190 and 19189)

3

9. On September 1, 2009, I joined Lincoln as a Managing Director. At that time, Mr. Austern, with Court approval, retained Lincoln as his financial advisor pursuant to an Order entered on November 18, 2009. (Dkt. No. 23785)

10. Lincoln rendered financial advisory services to Mr. Austern in these Chapter 11 Cases from September 1, 2009 until his death on May 16, 2013.

**The Debtors' Request to Appoint Mr. Frankel as the Successor FCR and the Bankruptcy Court's Interim Appointment Order Appointing Mr. Frankel as the Successor FCR**

11. On May 24, 2013, the Debtors filed a Motion for Entry of an Order Appointing Roger Frankel as the Successor Legal Representative for Future Asbestos Personal Injury Claimants *Nunc Pro Tunc* to May 16, 2013 and supporting declaration by Roger Frankel [Dkt. No. 30671].

12. An order was entered by the Court on May 29, 2013 [Dkt. No. 30681], which was amended on May 30, 2013 [Dkt. No. 30689], appointing Mr. Frankel, on an interim basis, as the successor FCR in these Chapter 11 Cases *nunc pro tunc* to May 16, 2013.

**Lincoln's Qualifications**

13. I have provided financial advisory services to Mr. Austern in these Chapter 11 Cases since 2004. As a result of my numerous years of experience in these Chapter 11 Cases as well as in other asbestos bankruptcy cases, I am very familiar with these Chapter 11 Cases, the Debtors, their finances, and the financial concerns and issues important to the FCR and to asbestos personal injury claimants who may assert claims or demands in the future.

14. In addition, I, along with other professionals at Lincoln, have extensive expertise in other asbestos bankruptcy cases, in particular, as financial advisor to future claimants' representatives, having served as such in the bankruptcy cases of USG Corporation, Congoleum Corporation, Combustion Engineering, Inc., and Garlock Sealing Technologies LLC.

15. Accordingly, the FCR desires to continue the engagement of me and Lincoln, and believes that my continued services with respect to the matters described below are essential to the FCR's role in these Chapter 11 Cases.

16. I believe that the continued engagement of Lincoln, which represented Mr. Austern in these Chapter 11 Cases since September 2009, will provide the FCR with the most efficient and effective financial advisory services, allowing Mr. Frankel to seamlessly succeed Mr. Austern in his duties and responsibilities as the FCR.

## Scope of Lincoln's Retention

17. The FCR has requested that I continue to render the following services effective as of May 16, 2013, in connection with these cases:

   a. assist the FCR in analyzing and reviewing the acts, conduct, assets, liabilities and financial condition of the Debtors;

   b. advise the FCR with respect to the Joint Plan, or any other plan of reorganization, including the implementation of a trust as contemplated under Section 524(g) of the Bankruptcy Code and other effective date issues.

   c. evaluate the financial effect of the implementation of the Joint Plan, or any plan of reorganization, upon the assets or securities of the Debtors; and

   d. any other tasks as mutually agreed upon by Lincoln and the FCR.

Subject to the Court's approval of the Application, I and Lincoln are willing to perform the services described above.

## Disinterestedness of Lincoln

18. In order to prepare this declaration, I have taken various steps to determine whether any conflicts of interest exist that would preclude Lincoln from serving as financial advisor and providing financial advisory services to the FCR. In connection therewith, I (or other employees of Lincoln at my direction) reviewed Lincoln's business records to determine,

5

among other things, (i) whether Lincoln already represents any other client in connection with the proposed matter, (ii) whether Lincoln already represents any other client in a capacity that may be adverse to the proposed client, or where the proposed representation might be adverse to the interests of such other client, and (iii) whether Lincoln has any connections with the Debtors, their creditors and other parties identified to me as parties in interest.

19. As far as I am able to ascertain and to the best of my knowledge based upon the review of the business records, as described above, other than Lincoln's work as the financial advisor to Mr. Austern in these Chapter 11 Cases, Lincoln does not have any connection with the Debtors, their affiliates, creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee. Lincoln may have rendered or may be rendering services to certain of such parties, or may become involved in matters unrelated to these Chapter 11 Cases in which such parties, or attorneys or accountants for such parties, were, are or become, involved.

20. In addition to providing financial advisory services to Mr. Austern in these Chapter 11 Cases, I currently provide, or have in the past provided, financial advisory services to future claimants' representatives in the chapter 11 bankruptcy cases of *Combustion Engineering* (Case No. 03-10495, Bankr. D. Del.) and *Garlock Sealing Technologies* (Case No. 10-31607, Bankr. W.D.N.C.). Orrick, Herrington & Sutcliffe LLP ("Orrick") currently represents the future claimants' representative in those cases. Orrick and I have worked together for many years in connection with providing legal services and financial advisory services, respectively, and we expect to continue to do so in these Chapter 11 Cases and in other cases. None of such other cases is related to the Debtors or these Chapter 11 Cases.

21. I, along with other employees at Lincoln, have business associations with, professional and social relationships with, or interests adverse to, creditors or parties in interest, or their attorneys, accountants or advisors; as far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with these cases. As part of our practice, Lincoln provides services in cases, proceedings and transactions throughout the United States involving many different parties, and work together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these cases.

22. To the best of my knowledge, neither I, nor any Lincoln employee who is proposed to work on this matter, is related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee of his office.

23. Neither I, nor, to the best of my knowledge, Lincoln, is a creditor,[2] equity security holder or an insider of the Debtors or their estates, and is not and was not, within two years before the date of filing of these Chapter 11 Cases, a director, officer, or employee of the Debtors. None of the engagements described above are materially adverse to the interests of the Debtors, their estates, any class of creditors or equity security holders of future asbestos claimants. Thus, Lincoln is disinterested as that term is defined in section 101(14) of the Bankruptcy Code and may act as the financial advisor to the successor FCR.

24. Neither I, nor, to my knowledge, Lincoln, directly holds publicly traded securities of W. R. Grace & Co. Employees of Lincoln may hold such publicly traded securities

---

[2] As described in paragraph 29 below, Lincoln presently has an administrative claim for unpaid professional fees and expenses incurred in connection with its provision of financial advisory services to Mr. Austern. I am advised that this administrative expense claim does not render Lincoln a creditor of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

7

individually (whether through mutual fund holdings or otherwise). Individual employees of Lincoln may directly or indirectly hold publicly traded securities of one or more of the Debtors' creditors and other parties in interest. No such holdings will affect Lincoln's ability to provide financial advisory services to the FCR in these Chapter 11 Cases.

25. To the best of my knowledge, except as otherwise set forth herein, Lincoln does not (a) hold or represent any interest adverse to the Debtors or their estates with respect to the matters upon which Lincoln is to be retained or (b) have any connection with the Debtors, creditors, any other party in interest, their respective attorneys and retained professionals, the United States Trustee or any person employed in his office (to the extent identified to me).

**Professional Compensation**

26. Lincoln and the FCR have agreed that Lincoln will provide financial advisory services to the successor FCR, if authorized by the Court, on the same terms and conditions as Mr. Austern's retention and employment of Lincoln. See Mr. Austern's application to retain Lincoln, Dkt. No. 23382. Accordingly, subject to approval of the Application, Lincoln agrees to perform the requested services, effective as of May 16, 2013, for a cash fee of up to $75,000.00 per month, payable monthly in arrears. In addition, Lincoln will seek reimbursement from the Debtors for reasonable out-of-pocket expenses incurred in connection with the provision of financial advisory services. Such expenses include, but are not limited to, reasonable fees and expenses of its legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures.

27. As Lincoln has done in connection with the services it rendered to Mr. Austern, Lincoln intends to apply for compensation for professional services rendered in connection with these Chapter 11 Cases, and for reimbursement of actual and necessary expenses incurred, in

accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order, and the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases.  Lincoln has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

28.    Lincoln has also agreed to invoice for these expenses in a manner and at rates consistent with charges made generally to Lincoln's other clients.  The fees to be paid to Lincoln are subject to the standard of review provided in section 328(a) of the Bankruptcy Code and are not subject to any other standard of review, under section 330 of the Bankruptcy Code or otherwise, provided, however, that the FCR may, on a monthly basis, confer with Lincoln whether any adjustment shall be made in the monthly fee based on Lincoln's activity level for such month.

29.    Lincoln's books and records reflect that, in connection with providing financial advisory services to Mr. Austern, Lincoln has received approximately $2.5 million in Court-approved fees and reimbursement of expenses.  In addition to fees and expenses which have already been paid, Lincoln has incurred through March 31, 2013, but has not yet been paid, $54,000[3] in fees for financial advisory services rendered to Mr. Austern in these Chapter 11 Cases.  Lincoln has filed fee applications with the Court for these amounts.  In addition, Lincoln has incurred fees and expenses for services rendered to Mr. Austern from April 1, 2013 through the date of his death on May 16, 2013.  Lincoln intends to file monthly fee applications (and a quarterly fee application covering the relevant time period) for services rendered to Mr. Austern through May 16, 2013.  Following Mr. Austern's death, Lincoln continued to perform necessary

---

[3] This amount includes "holdbacks" from our fee applications for the months of October 2012 through March 2013.

services for the FCR, including, *inter alia*, analyzing the Debtors' first quarter financial statement.  If the Application is granted, Lincoln intends to file fee applications, as appropriate, seeking Court approval for compensation for services rendered, and reimbursement of actual and necessary expenses incurred since May 16, 2013, in connection with providing financial advisory services to Mr. Frankel as the successor FCR.

30. For purposes of efficiency, Lincoln asks that, if the Application is granted, it be permitted to file a single consolidated final fee application at the end of these Chapter 11 Cases, which will include all of the fees and expenses incurred by Lincoln in connection with providing financial advisory services to Mr. Austern from 2009 through May 16, 2013, and in connection with providing financial advisory services to Mr. Frankel from May 16, 2013 through and including the effective date of a plan of reorganization.

31. Other than as set forth herein, no arrangement is proposed between the FCR and Lincoln for compensation to be paid in these Chapter 11 Cases.

32. Lincoln has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

\* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 10, 2013                         */S/ JOSEPH J. RADECKI, JR.*
                                             Joseph J. Radecki, Jr.