# EXHIBIT B
# TO THE APPLICATION:
# PHILLIPS DECLARATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
                                            )
**In re:**                                  )
                                            )   **Chapter 11**
**W.R. GRACE & CO., et al.,**               )   **Case No. 01-01139 (KJC)**
                                            )   **(Jointly Administered)**
                    **Debtors.**            )
_____)

**DECLARATION OF JOHN C. PHILLIPS, JR. UNDER FED. R. BANKR. P. 2014
AND 2016(b) IN SUPPORT OF APPLICATION OF ROGER FRANKEL, SUCCESSOR
LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY
CLAIMANTS, FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF PHILLIPS, GOLDMAN & SPENCE, P.A. AS DELAWARE
CO-COUNSEL NUNC PRO TUNC TO MAY 16, 2013**

I, John C. Phillips, Jr., state:

      1.    I am a partner of the law firm of Phillips, Goldman & Spence, P.A., ("PG&S"), which maintains an office for the practice of law at 1200 North Broom Street, Wilmington, DE 19806, and am admitted to practice law before the Bar of the State of Delaware, the United States District Court for the District of Delaware, the United States Court of Appeals for the Third Circuit and the United States Supreme Court. This declaration (the "Declaration") is submitted pursuant to Fed. R. Bankr. P. 2014, 2016 and 5002, in support of the *Application of Roger Frankel, Successor Legal Representative for Future Asbestos Personal Injury Claimants, for Entry of an Order Authorizing the Retention and Employment of Phillips, Goldman & Spence, P.A. as Delaware Co-Counsel* Nunc Pro Tunc *to May 16, 2013* (the "Application"), filed by Roger Frankel, the Court-appointed successor legal representative for future asbestos personal injury claimants (the "FCR" or "Mr. Frankel"), in the above-captioned cases, and to provide the disclosures required under Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure

2

(the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

2. Except as is otherwise provided below, the facts set forth in this Declaration are based upon my personal knowledge, upon records maintained by PG&S in the ordinary course of its business, which have been reviewed by me and/or by other partners or employees of PG&S at my direction, or upon information known by other partners or employees of PG&S and conveyed to me.

### PG&S' Representation of Mr. Austern as the Asbestos Personal Injury Future Claimants' Representative in these Chapter 11 Cases and the Appointment of a Successor FCR

3. By order entered May 24, 2004, the Court appointed David T. Austern ("Mr. Austern") as the legal representative for future asbestos personal injury claimants in these Chapter 11 Cases [Dkt. No. 5645] (the "Austern Appointment Order"). The Austern Appointment Order, among other things, authorized Mr. Austern to employ professionals consistent with sections 327 and 1103 of the Bankruptcy Code.

4. Following his appointment, Mr. Austern sought and received Court approval to retain and employ PG&S as Delaware co-counsel to represent him in these Chapter 11 Cases. [Mr. Austern's application to retain PG&S, Dkt. No. 5389; Order approving retention of PG&S, Dkt. No. 6478].

5. Mr. Austern died on May 16, 2013.

6. On May 24, 2013, the Debtors filed a Motion for Entry of an Order Appointing Roger Frankel as the Successor Legal Representative for Future Asbestos Personal Injury Claimants *Nunc Pro Tunc* to May 16, 2013 [Dkt. No. 30671].

7. An order was entered by the Court on May 29, 2013 [Dkt. No. 30681], which was amended on May 30, 2013 [Dkt. No. 30689], appointing Mr. Frankel, on an interim basis, as the successor FCR in these Chapter 11 Cases *nunc pro tunc* to May 16, 2013.

### PG&S' Qualifications

8. Since May 24, 2004, PG&S provided advice to Mr. Austern, the former FCR, and his former bankruptcy counsel, then at Swidler Berlin, LLP, and now at Orrick, Herrington & Sutcliffe LLP ("Orrick"), in connection with these Chapter 11 Cases.

9. Since May 24, 2004, Mr. Frankel and Orrick have relied upon PG&S for advice as to the local Delaware rules and procedures and other general matters concerning these Chapter 11 Cases. As a consequence, PG&S is familiar with the Debtors' businesses and the current status of the Debtors' Chapter 11 Cases. In addition, PG&S is familiar with the concerns of and issues important to the FCR and to asbestos personal injury claimants who may assert claims or demands in the future.

10. Given my and my colleagues many years of experience representing Mr. Austern as Delaware co-counsel in these Chapter 11 Cases, I and other lawyers at PG&S are intimately familiar with the Debtors, these Chapter 11 Cases, the Joint Plan and plan-related documents, the Confirmation Order, the District Court's opinion and order affirming the Confirmation Order, and the appeals related thereto. In addition, I and other lawyers at PG&S are very familiar with the legal arguments and positions taken by Mr. Austern and the other co-proponents of the Joint Plan in support of confirmation of the Joint Plan, having reviewed and provided support to Orrick in connection with the briefing of those issues before this Court and on appeal to the District Court. I and other lawyers at PG&S have also assisted with filings in the Third Circuit in connection with the appeals from confirmation of the Joint Plan.

11. I believe that the continued engagement of my firm, and of the same key lawyers who represented Mr. Austern in these Chapter 11 Cases for the past nine years, will provide the FCR with the most efficient and effective representation, allowing him seamlessly to succeed Mr. Austern in his duties and responsibilities as the FCR. Accordingly, I believe PG&S is well suited to assist the FCR as his Delaware co-counsel during the pendency of these Chapter 11 Cases.

12. I understand that Mr. Frankel desires to continue to utilize, in these Chapter 11 Cases, the experience, expertise, and existing knowledge of the PG&S attorneys who have worked on behalf of the FCR since May 24, 2004 in connection with the future asbestos claimants' issues and in connection with the Debtors' Chapter 11 Cases in general.

**Scope of PG&S' Retention**

13. The FCR has requested that PG&S render the following services in connection with these Chapter 11 Cases:

    a. provide legal advice with respect to the FCR's powers and duties in connection with these Chapter 11 Cases;

    b. assist Orrick, as needed, on behalf of the FCR, in connection with the preparation and filing of all applications, motions, responses, objections and other pleadings in these Chapter 11 Cases, including any appeals related thereto, as may be necessary and as the FCR authorizes;

    c. appear on behalf of and represent the FCR in these Chapter 11 Cases, including, *inter alia*, at meetings, court hearings, oral arguments, and other proceedings, as appropriate, before this Court or others;

    d. represent and advise the FCR with respect to any contested matter, adversary proceeding, lawsuit or other proceeding in which he may become a party or otherwise appear in connection with the Chapter 11 Cases, including any appeals related thereto;

    e. represent and advise the FCR with respect to the Joint Plan or any other plans of reorganization that may be proposed, including, for example, in connection with the appeals of the orders confirming the Joint Plan or any other plans of reorganization; and

14. I expect that PG&S and Orrick will coordinate our work, as we did in connection with our services to Mr. Austern, to avoid duplication of effort.

15. Subject to the Court's approval of the Application, PG&S is willing to continue to serve as the FCR's Delaware co-counsel and to perform the services described above.

### Disinterestedness of PG&S

16. PG&S' books and records reflect that, in connection with its representation of Mr. Austern, the firm has received approximately $1.033 million in Court-approved fees and reimbursement of expenses. In addition to fees and expenses which have already been paid, PG&S has incurred through April 30, 2013, but has not yet been paid, $8,944[1] in fees and expenses for services rendered to Mr. Austern in these Chapter 11 Cases. PG&S has filed fee applications with the Court for these amounts. In addition, PG&S has incurred fees and expenses for services rendered to Mr. Austern from May 1, 2013 through the date of his death on May 16, 2013. PG&S intends to file a monthly fee application (and a quarterly fee application covering the relevant time period) for services rendered to Mr. Austern through May 16, 2013. Following Mr. Austern's death, PG&S continued to perform necessary services for the FCR, particularly in connection with the review and filing of various documents. If the Application is granted, PG&S intends to file fee applications, as appropriate, seeking Court approval for compensation for services rendered and reimbursement of actual and necessary expenses incurred since May 16, 2013, in connection with its services to Mr. Frankel as the successor FCR.

---

[1] This amount includes fees and expenses incurred in April 2013 as well as "holdbacks" from PG&S' previous fee applications.

17. In connection with Mr. Austern's retention of PG&S in 2004, PG&S utilized a set of procedures established by PG&S to insure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules and to determine whether any conflicts of interest exist which would preclude PG&S' service as Delaware co-counsel to the FCR, and whether connections exist which should be disclosed under Bankruptcy Rule 2014. PG&S conducted its initial review based upon a list of parties which was originally provided by the Debtors in connection with Mr. Austern's retention of counsel. The list identified the Debtors, and the names of parties in interest and their attorneys and accountants. Since that time, my co-counsel at Orrick has prepared updates to the list as additional parties in interest and their respective attorneys and accountants have entered their appearances, or otherwise became known to Orrick, in these Chapter 11 Cases (the original list provided by the Debtors and the updates thereto are referred to herein as the "Listed Parties"). Attached hereto as **Exhibit 1** is the current list of the Listed Parties.

18. In connection with PG&S' proposed representation of the successor FCR in these Chapter 11 Cases, I directed that a memorandum be circulated by e-mail to each attorney presently employed at PG&S. This memorandum, like similar memoranda which PG&S circulates throughout the firm before a new representation is undertaken, is intended to elicit, among other things, (i) whether PG&S already represents any other client in connection with the proposed new matter, (ii) whether PG&S already represents any other client in a capacity that may be adverse to the proposed client, or where the proposed representation might be adverse to the interests of such other client, and (iii) whether PG&S has any connections with the Debtors, their creditors and other parties identified in the memorandum. This memorandum identified the Listed Parties.

19. I have also instructed the employees responsible for maintaining PG&S' computerized database of client matters to review such database with a view toward determining whether PG&S has or had any reported connections with the Listed Parties.

20. Once the database identified a potential connection between PG&S and a Listed Party, I, or an attorney or legal assistant working under my supervision, contacted the responsible attorney(s), to the extent he or she is still employed by PG&S, and elicited information to discern the nature and scope of the representation or connection for appropriate disclosure in this Declaration.

21. In connection with PG&S' representation of Mr. Austern, I filed an initial declaration and a supplemental declaration, both of which are incorporated herein by reference. See Dkt. No. 5839 and 6604 (collectively, the "PG&S Declarations").

22. In connection with the preparation of this Declaration, based upon the review procedures described above, PG&S makes the following disclosures:

    a. PG&S previously represented Mr. Austern as Delaware co-counsel, along with Mr. Frankel and other lawyers at Orrick, in his capacity as the future claimants' representative in these Chapter 11 Cases;

    b. PG&S previously represented Mr. Austern as Delaware co-counsel, along with Mr. Frankel and other lawyers at Orrick, in his capacity as the future claimants' representative in the Chapter 11 case of In re Combustion Engineering, Inc., Case No. 03-10495 (Bankr. D. Del. 2003);

    c. PG&S, through a litigation partner who is no longer with the firm, previously represented W. R. Grace & Co. in defense of asbestos personal injury claims pending in the State of Delaware. As a result of not being fully compensated for that representation prior to the Petition Date, PG&S filed a proof of claim against W. R. Grace & Co. in the amount of $44,455.80. PG&S withdrew its proof of claim in connection with its retention as Mr. Austern's Delaware co-counsel. No one currently employed at PG&S had any exposure to any of the W. R. Grace files or did any work for W. R. Grace & Co. in conjunction with the foregoing. PG&S has no expectation that it will be asked to represent W. R. Grace & Co. in any capacity in the future;

  d. PG&S previously represented three of the Debtors' secured lenders (Bank of America, N.A., Credit Suisse First Boston Corp., and Wachovia Bank & Trust Company, N.A.) and two of the Debtors' Letter of Credit issuers (Bank of America, N.A. and Wachovia Bank & Trust Company, N.A.) as creditors and/or defendants in preference actions in other bankruptcy cases pending in the District of Delaware. None of these representations had anything to do with the Debtors, the Debtors' estates or these Chapter 11 Cases, and each of these representations has now ended. PG&S will not represent any of the parties referenced herein in connection with the Debtors or these Chapter 11 Cases; and

  e. PG&S was previously retained as insurance defense counsel by three of the Debtors' insurers (American International Group, Inc., The Travelers Insurance Company and St. Paul Companies, Inc.). None of these representations had anything to do with the Debtors, their estates or these Chapter 11 Cases, and each of these representations has now ended. PG&S will not represent any of the parties referenced herein in connection with the Debtors or these Chapter 11 Cases.

23. With respect to the matters referenced above, except with respect to paragraph 22(a) above, none of the services rendered by PG&S have been in connection with the Debtors as debtors or these Chapter 11 Cases.

24. As far as I am able to ascertain and to the best of my knowledge, and except as otherwise set forth herein and in the PG&S Declarations, PG&S does not hold or represent any interest adverse to the Debtors or their estates with respect to the matters on which PG&S is to be employed, and has no connections with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. PG&S may have rendered or may be rendering services to certain of such parties, or may become involved in matters unrelated to these Chapter 11 Cases in which such parties, or attorneys or accountants for such parties, were, are or become, involved. PG&S also may have or represent interests adverse to such creditors or parties in interest in matters unrelated to these Chapter 11 Cases.

25. In addition to the foregoing, PG&S' partners and employees may have business associations with, professional and social relationships with, or interests aligned with or adverse to, creditors or parties in interest, or their attorneys, accountants or advisors. As part of its practice, PG&S is asked to act as counsel for many different parties and law firms appearing in this Court or other courts which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these Chapter 11 Cases. As far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with these Chapter 11 Cases.

26. Neither I, nor, to the best of my knowledge, any PG&S lawyer or employee who is proposed to work on this matter, is related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee of that office.

27. Neither I, nor, to the best of my knowledge, PG&S, is a creditor,[2] equity security holder or an insider of the Debtors or their estates, and is not and was not, within two years before the date of filing of these Chapter 11 Cases, a director, officer, or employee of the Debtors. None of the representations described above and in the PG&S Declarations are materially adverse to the interests of the Debtors, their estates, any class of creditors or equity security holders of future asbestos claimants. Thus, PG&S is disinterested as that term is defined in section 101(14) of the Bankruptcy Code and may act as bankruptcy counsel to the successor FCR.

---

[2] As described in paragraph 16 above, PG&S presently has an administrative expense claim for unpaid professional fees and expenses incurred in connection with its representation of Mr. Austern. This administrative expense claim does not render PG&S a creditor of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

10

28. Neither I, nor, to my knowledge, PG&S, directly holds publicly traded securities of W. R. Grace & Co. Partners and employees of PG&S may hold such publicly traded securities individually (whether through mutual fund holdings or otherwise). Individual partners and employees of PG&S may directly or indirectly hold publicly traded securities of one or more of the Debtors' creditors and other parties in interest. No such holdings will affect PG&S' ability to represent the successor FCR in these Chapter 11 Cases.

29. PG&S has made reasonable efforts to discover and disclose the existence of any conflict of interest or connections based upon the information available to PG&S. PG&S is unable to state, however, whether one or more of its clients or their affiliates that has not been identified by the Debtors or has not entered an appearance in these Chapter 11 Cases holds a claim or interest, or otherwise is a party in interest in these Chapter 11 Cases. PG&S intends to review periodically its database during the pendency of these Chapter 11 Cases to insure, to the extent reasonably possible, that no conflict or other disqualifying circumstance exists or arises. If any new relevant fact or relationship is discovered or arises, PG&S will use reasonable efforts to identify such developments and will, as soon as reasonably practicable, file a supplemental declaration with the Court in accordance with Bankruptcy Rule 2014(a).

**Professional Compensation**

30. PG&S and the FCR have agreed that PG&S will represent the FCR as Delaware co-counsel, if authorized by the Court, on the same terms and conditions as Mr. Austern's retention and employment of PG&S. See Mr. Austern's application to retain PG&S, Dkt. No. 5839.

31. As PG&S has done in connection with the services it rendered to Mr. Austern, PG&S intends to apply for compensation for professional services rendered to Mr. Frankel in

connection with these Chapter 11 Cases, on an hourly basis, and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and Orders of this Court, including the Administrative Compensation Orders and the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases. In light of confidentiality considerations, PG&S reserves the right to redact its time and expense records as it believes appropriate. PG&S understands that no compensation may be paid by the Debtors for post-petition services or expenses except to the extent allowed or approved by the Court.

32. PG&S' current hourly rates are as follows: Senior Partners - $495 per hour; Junior Partners - $435 per hour; Associates - $305 to $375 per hour; and Legal Assistants - $165 per hour. I presently expect the following professionals will have primary responsibility for representing the FCR and performing services on his behalf in these Chapter 11 Cases at the following hourly rates:

|     | Attorney | Current Hourly Rate |
|-----|----------|---------------------|
| (a) | John C. Phillips, Jr. | $495 per hour |
| (b) | Stephen W. Spence | $495 per hour |
| (c) | James P. Hall | $435 per hour |
| (d) | Megan C. Haney | $375 per hour |
| (e) | Celeste A. Hartman (Sr. Paralegal) | $165 per hour |

PG&S will utilize other attorneys and paraprofessionals as necessary.

33. The hourly rates set forth above are PG&S' current, customary hourly rates for work of this nature, and are the same hourly rates these professionals generally charge all clients of the firm. These hourly rates are subject to periodic increases in the normal course of the firm's

business. It is PG&S' policy to charge its clients for photocopying charges, travel expenses, expenses for working meals, computerized research, transcription costs, and non-ordinary overhead expenses such as secretarial and other overtime. PG&S agrees to follow the guidelines promulgated by the Office of the United States Trustee and the Local Rules and Orders of this Court, including the Administrative Compensation Orders, the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases and any additional administrative procedures that may be established by the Court in these Chapter 11 Cases concerning compensation.

34. For purposes of efficiency, PG&S asks that, if the Application is granted, it be permitted to file a single consolidated final fee application at the end of these Chapter 11 Cases, which will include all of the fees and expenses incurred by PG&S in connection with its representation of Mr. Austern from 2004 through May 16, 2013, and in connection with its representation of Mr. Frankel from May 16, 2013 through and including the effective date of a plan of reorganization.

35. To the best of my knowledge, no promises have been received by PG&S nor any member or associate thereof as to payment or compensation in connection with the above-captioned cases other than in accordance with applicable provisions of the Bankruptcy Code. To the best of my knowledge, PG&S has no agreement with any other entity to share with such entity compensation received by PG&S in connection with the Debtors' Chapter 11 Cases, except as permitted by Section 504(b)(1) of the Bankruptcy Code.

\* \* \* \* \* \*

14

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on June 11, 2013

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr.