IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., *et al.*, | § | Jointly Administered |
| | § | Case No. 01-01139 (KJC) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING THE SECOND QUARTERLY
FEE APPLICATION OF GRANT THORNTON LLP FOR THE INTERIM
PERIOD OF OCTOBER 1, 2012, THROUGH DECEMBER 31, 2012**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Second Quarterly Fee Application of Grant Thornton LLP for the Period of October 1, 2012, through December 31, 2012 (the "Application").

**BACKGROUND**

1. Grant Thornton LLP ("Grant Thornton") was retained as tax and accounting advisor to the Debtors. In the Application, Grant Thornton seeks approval of fees totaling $236,077.88 and expenses totaling $3,184.33 for its services from October 1, 2012, through December 31, 2012 (the "Application Period").[1]

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of

---

[1] Although this is Grant Thornton's second quarterly fee application, it covers the Forty-Seventh Interim Application Period.

**FEE AUDITOR'S FINAL REPORT** - Page 1
wrg FR Grant Thornton 47Q 10-12.12.wpd

Delaware, Amended Effective February 1, 2013, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served an initial report on Grant Thornton based upon our review, and we received a response from Grant Thornton, portions of which response are quoted herein.

## DISCUSSION

### General Issues

3.    We noted that, pursuant to the Statement of Work executed by Grant Thornton with the debtors, Grant Thornton's fees are to be based upon its hourly rates, subject, however, to the following estimates:

| | |
|---|---|
| 2008-2009 R&D tax credit study | $197,500 - $220,000 |
| 2010 R&D tax credit study | $98,750 - $110,000 |
| 2011 R&D tax credit study | $98,750 - $110,000 |
| Section 199 calculation for 2011 and template for both future and prior | $105,000 - $115,000 |
| Total Fee | $500,000 - $555,000 |

We further noted that in its monthly fee applications for October through December 2012, Grant Thornton capped its fees at $65,437.50,[2] stating in footnote 2 of each of the monthly applications that it had "reached the maximum amount of the fee that was agreed to within the Statement of Work

---

[2]Grant Thornton billed fees of $65,437.50 in its October 2012 monthly application and $0.00 in both the November and December 2012 monthly applications.

**FEE AUDITOR'S FINAL REPORT** - Page 2
wrg FR Grant Thornton 47Q 10-12.12.wpd

for the existing project." We asked Grant Thornton to explain why it billed total fees of $236,077.88 in its quarterly fee application for October through December 2012 when it capped its fees at $65,437.50 in the monthly applications for the same period. Grant Thornton responded:

> The total fees relating to the fee application for October through December 2012 is $65,437.50 rather than $236,077.88. The footnote in the monthly fee applications indicating that the fees were capped should have been also included in the quarterly fee application and thus it was an oversight. The Statement of Work was not modified; however, the client requested that we perform additional work.

We further noted that, even at $65,437.50, the amount billed by Grant Thornton appeared to exceed the $555,000.00 budget by $15,000.00.[3] We asked Grant Thornton whether it agreed with our calculations, and Grant Thornton responded:

> The total fees for the fee application for October through December 2012 is $65,437.50 rather than $50,437.50.... During the course of the project, the client requested that we perform additional work, which was outside the scope of the Statement of Work. This extra work resulted in $15,000.00 of additional fees, which is the difference in the figure included in the fee auditor report ($50,437.50) and the figure we calculated ($65,437.50).

We accept Grant Thornton's response[4] and recommend that the amount of fees sought in the quarterly Application be modified from $236,077.88 to $65,437.50, for a reduction of $170,640.38

---

[3]Grant Thornton's total fees through September 2012 were $504,562.50. This amount, plus the $65,437.50 billed during the current Application Period, totals $570,000.00 and exceeds the $555,000.00 budgeted amount by $15,000.00. Thus, it appeared that the maximum amount which Grant Thornton could bill would be $50,437.50.

[4]We note that pursuant to the Statement of Work, the budget may be modified if additional work is needed:

> We will discuss with you circumstances that require us to do additional work which may include, but are not limited to, work to satisfy our obligations under applicable professional standards including additional fact gathering, analysis and preparation of disclosure forms, unforeseen scope changes including additional state returns or previously unidentified transactions or tax positions requiring analysis, and late or incomplete client provided information. If it appears that the stated fee will be exceeded, we will consult with you before continuing with the engagement.

in fees.

4.  We noted that Grant Thornton billed the time of senior manager Timothy N. Price at $560.00 an hour. Mr. Price billed 0.5 hours at this rate, for a total of $280.00 in fees. Pursuant to Paragraph 12 of Grant Thornton's retention application, the hourly rate range in effect for senior managers on July 1, 2012 was $350 to $500. We asked Grant Thornton whether Mr. Price's time was billed correctly, and Grant Thornton responded:

> Mr. Price is part of a specialty tax group at Grant Thornton and thus his hourly billing rate of $560.00 is higher than the average senior manager who would have worked on the project on a day-to-day basis.

We accept Grant Thornton's response and have no objection to Mr. Price's fees.

### Specific Time and Expense Entries

5.  We noted per diem expenses totaling $53.00 for the Application Period. Pursuant to Section 330(a)(1)(B) of the Bankruptcy Code, expenses must be both "actual" and "necessary" in order to be reimbursed. Per diems are normally allowances provided to employees based upon the city in which they are working and do not necessarily correlate to the expenses actually incurred by the employee. We asked Grant Thornton to explain why the bankruptcy estate should reimburse the per diem, and Grant Thornton responded:

> Pursuant to Grant Thornton's travel and expense policy; a per diem amount may be used to reimburse personnel for the cost of meal and incidental expenses incurred when traveling overnight on firm business. When traveling during the work week, meals reimbursed include breakfast and dinner. The per diem is determined by the destination where the employee is traveling.
>
> The $53.00 per diem expense that was submitted related to the daily per diem, pursuant to the Grant Thornton policy. Amounts are in lieu of actual expenses incurred. Even though the per diem was in lieu of actual expenses, the reimbursable amount was subsequently spent on meals. Although information would be unavailable to substantiate, amounts should be reimbursable since they are travel related and within Grant Thornton guidelines.

We understand Grant Thornton's policy on per diems. Nevertheless, it appears to us that this policy fails to comport with the requirements of Section 330(a) that such expenses be actual expenses. Accordingly, we must recommend disallowance of this per diem, for a reduction of $53.00 in expenses.

      6.     We noted the following meal expenses for which more information was needed:

| Name | Date | Type | Amount | Description |
|---|---|---|---|---|
| Levin, Rob | 10/16/2012 | Meal | $100.00 | Dinner (2 people) in Atlanta, GA for 2008, 2009 costing model review, as well as, project methodology memorandum/deliverables. Late night work. |
| Lynes, Daniel A. | 11/27/2012 | Meals | $39.39 | Dinner in Atlanta, GA while working lunch[5] on the R&D deliverable with two people |
| Lynes, Daniel A. | 11/29/2012 | Meals | $67.29 | Dinner in Atlanta, GA while working lunch on the R&D deliverable with 3 people |

It did not appear that these professionals recorded time to the case on the dates on which the expenses were incurred. We asked Grant Thornton to confirm that the expenses were not charged to the W.R. Grace case in error. Grant Thornton responded:

> With respect to Rob Levin's expense line item, it relates to the project for time incurred on October 13, 2012; however the date the expense was recorded was when the expense report was completed and submitted, which was October 16, 2012. As to the two line items above relating to Dan Lynes, in lieu of a formal team meeting, a lunch meeting was held to discuss the project and individuals did not charge time for the project but rather the lunch expense was recorded.

We accept Grant Thornton's response and have no objection to these expenses.

      7.     We noted the following meal expense which exceeded our recommended meal cap for the city in question:

---

[5]This may be a typographical error. Please advise if the correct description is "working late."

**FEE AUDITOR'S FINAL REPORT** - Page 5
wrg FR Grant Thornton 47Q 10-12.12.wpd

| Levin, Rob | 11/27/2012 | Meals | $412.00 | Dinner in Boca Raton, FL with 5 people including Don Teichen, WR Grace Tax director, to discuss the 2008 and 2009 R&D tax credit results, as well as the 2011 tax credit findings. |

We typically recommend a meal cap for dinner of $50.00 per person for most locales.[6] We asked Grant Thornton whether it would agree to a reduced reimbursement for this expense. Grant Thornton responded:

> Grant Thornton's travel and expense policy states that client related meals must be charged to the applicable client. Reimbursement is allowable up to ... $100 per person. Accordingly, Grant Thornton employees expensed meals in accordance with the Grant Thornton policy. Based on the fee audit report, Grant Thornton understands that the Bankruptcy Court generally applies a cap, per person, per city. If this policy was applied to the expense incurred the amount allowable equals $250.00. The difference equals $162.00.

We appreciate Grant Thornton's response and recommend a reduction of $162.00 in expenses.

## CONCLUSION

8.    Thus, we recommend approval of $65,437.50 in fees ($236,077.88 minus $170,640.38) and $2,969.33 in expenses ($3,184.33 minus $215.00) for Grant Thornton's services for the Application Period.

---

[6]Exceptions to this recommended dinner cap are as follows: New York and London - $70.00; Washington, D.C. - $65.00; Los Angeles and San Francisco - $60; and Chicago - $55.00.

**FEE AUDITOR'S FINAL REPORT** - Page 6
wrg FR Grant Thornton 47Q 10-12.12.wpd

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

2235 Ridge Road, Suite 105
Rockwall, Texas 75087
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 10th day of July, 2013.

_____
Warren H. Smith

## SERVICE LIST
### Notice Parties

**The Applicant**
Mark Margulies
Grant Thornton LLP
1301 International Parkway
Suite 300
Fort Lauderdale, FL 33323

mathew.abraham@us.gt.com
mark.margulies@us.gt.com

**The Debtors**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
John Donley
Adam Paul
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones
James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Kenneth Pasquale
Denise Wildes
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski
Duane Morris LLP
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**United States Trustee**
Richard Schepacarter
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena
Jay Sakalo
Bilzin, Sumberg, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph
Theodore J. Tacconelli
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale
600 Lexington Avenue, 21st Floor
New York, NY 10022-6000

Marla R. Eskin
Mark T. Hurford
Kathleen Campbell Davis
Campbell & Levine, LLC
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801

**Official Committee of Equity Holders**
Philip Bentley
David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899