**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W.R. GRACE & CO., *et. al.* | : | Case No. 01-1139 (KJC) |
| | : | |
| Debtors | : | (Jointly Administered) |
| | : | Hearing Date:  March 26, 2014 at 10:00 a.m. |
| | : | Objection Deadline:  December 4, 2013 at 4:00 p.m. |

**FIFTIETH QUARTERLY FEE APPLICATION OF
PRICEWATERHOUSECOOPERS LLP, AUDITORS AND TAX
CONSULTANTS FOR DEBTORS, FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE INTERIM
PERIOD OF JULY 1, 2013 THROUGH SEPTEMBER 30, 2013**

PricewaterhouseCoopers LLP ("PwC"), auditors and tax consultants for W.R. Grace & Co., and the other above-captioned debtors (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits its *Fiftieth Quarterly Fee Application for Allowance of Compensation and Reimbursement of Expenses (the "Application") for the Interim Period of July 1, 2013 through September 30, 2013* (the "Quarterly Period").  In support of this Application, PwC respectfully represents as follows:

**I.      COMPENSATION REQUESTED**

1.      As set forth below, Applicant is requesting a quarterly allowance of fees in the aggregate amount of $1,055,613.61 (plus $4,906.62 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $18,723.43. This amount represents the fees generated and expenses incurred by PwC during the Fiftieth Quarterly Period, as defined in the Court's *Amended Administrative Order Under 11 U.S.C. §§ 105(a) And 331 Establishing Revised Procedures For Quarterly Compensation And Reimbursement Of Expenses For Professionals And Official*

*Committee Members* (the "Amended Quarterly Procedures Order") and for the monthly applications that were not previously included in the quarterly applications.

2.  As explained more fully below, the Debtors filed their *Application of the Debtors for the Entry of an Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors and Debtors in Possession* on January 10, 2002 (the "Original Retention Application").

3.  The Original Retention Application was contested, and it was not until June 18, 2002 that the Court entered its Order Pursuant to 11 U.S.C. §§ 327(a) and Fed. R. Bankr. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP As Auditors and Tax Consultants to the Debtors and Debtors in Possession Nunc Pro Tunc to January 10, 2002 (the "Retention Order").

4.  PwC herein requests allowance of compensation and reimbursement of expenses for the Fiftieth Quarterly Period. The amounts billed in connection with this application are

|  | Fees | Expenses |
|---|---|---|
| W. R. Grace Audit Services: | | |
| July 1 – September 30, 2013: | $936,769.71 | $18,723.43 |
| Darex Puerto Rico 2012 Audit | | |
| December 1, 2012 – September 30, 2013: | $89,0000.85 | $0.00 |
| Darex Puerto Rico 2011 Audit | | |
| September 1 2012 – September 30, 2013: | $20,000.05 | $0.00 |

    W.R. Grace IRS Project:

    July 1 – September 30, 2013:        $9,843.00        $0.00

A table showing the names of all professionals and paraprofessionals who rendered services during the period covered by the applications, together with the billing rates of such persons and the number of hours charged by such persons, is set forth on the cover sheet to these Applications.

## II.    INTRODUCTION AND PROCEDURAL BACKGROUND

    5.    On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties and assets as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

    6.    On January 10, 2002, the Debtors filed the Original Retention Application, seeking to retain PwC as their independent accountants and auditors. The United States Trustee filed its Amended Objection to the Debtors' Application for Order (i) Approving the Payment of Professional Fees and Expenses and (ii) Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Independent Accountants and Auditors to the Debtors (the "Objection to the Original Retention Application") on January 31, 2002.

    7.    On April 15, 2002, the Debtors filed the Amended Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§327(a) and 328 and the Fed. R. Bank. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Auditors and Tax Consultants to the Debtors and Debtors in Possession Nunc Pro Tunc to November 11, 2001 (the "Amended Retention

Application"). The United States Trustee filed his Objection to the Amended Application for Order Authorizing the Employment and Retention of PricewaterhouseCoopers LLP as Auditors and Tax Consultants Nunc Pro Tunc to November 11, 2001 (the "Objection to the Amended Retention Application") on May 3, 2002.

8. On June 8, 2002, the Court entered the Retention Order.

<u>Relief Requested</u>.

9. By this Application, PwC respectfully requests the entry of an Order, substantially in the form attached as Exhibit "A," allowing on a quarterly basis $1,055,613.61 (plus $4,909.62 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $18,723.43 for the Quarterly Period.

10. This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

11. All of the services for which compensation is sought were rendered by Applicant to the Debtors solely in connection with this case and in furtherance of the duties and responsibilities of the Debtors and not on behalf of any creditor or other person.

12. Applicant's hourly rates for its auditors and other professionals charged in connection with Applicant's services for the Debtors were the rates Applicant customarily charged its clients (whether corporate or individual) in both bankruptcy and

non-bankruptcy matters at the time the services were rendered. In July 2004, Applicant changed its time and expense management system and revised its standard billing rates. These new rates, effective with the filing of PwC's previous monthly application for July 2005, have been discussed with, and agreed to, by management of the Debtor, and have not dramatically impacted the overall fees charged to the Debtor as compared to previous fee applications.

13. By order dated April 17, 2002 (the "Amended Administrative Order"), the Court has adopted procedures (the "Procedures") for all applications for Quarterly compensation and reimbursement of expenses in this bankruptcy proceeding. In accordance with the Procedures, Applicant has submitted a cumulative summary of fees by project category and a cumulative summary of expenses by category.

14. Applicant is not seeking reimbursement for internal charges, including costs associated with airline ticketing and general office services such as computer usage, telephone charges, facsimile transmissions, postage, and photocopying.

15. No payments have been promised to Applicant for services rendered or to be rendered in any capacity in connection with the Debtors' Chapter 11 cases. No agreement exists between Applicant and any other person or entity to share any compensation in connection with the Debtors' Chapter 11 cases.

16. Pursuant to the Amended Administrative Order, PwC served copies of this Application upon (a) David B. Siegel, W.R. Grace & Co.; (b) co-counsel for the Debtors; (c) co-counsel to the debtor-in-possession lender; (d) counsel to the Committees, including counsel for the Official Committee of Unsecured Creditors; counsel to the Official Committee of Asbestos Property Damage Claimants; counsel to the Official

Committee of Personal Injury Claimants; and the Official Committee of Equity Holders;

(e) the Fee Auditor; and (f) the United States Trustee.

### III. SERVICES RENDERED DURING THE QUARTERLY PERIODS

17. The nature of the work performed by PwC during the Quarterly Period included the following.

Audit Services – 2013 Integrated Audit

(i) Performed quarterly review of W. R. Grace Q2 2013 Form 10-Q. This included performing analytical procedures on consolidated and disaggregated worldwide balances, tying out the Q2 2013 10-Q and earnings release, review of incentive compensation accruals, review of earnings per share calculation, review of pension adjustments, review of environmental and legal updates, attendance at the Q2 2013 business review, and review of management's equity rollforward, among other procedures.
(ii) Planning procedures performed by the PwC Risk Assurance team to prepare for the 2013 audit.
(iii) Review work performed by the PwC tax team to obtain comfort over the effective tax rate, income tax provision, and income tax payable included in the WR Grace Q2 2013 10-Q. This work included review of uncertain tax positions rollforward, review and tie out of effective tax rate calculation, and tie out of tax balances in the Q2 2013 10-Q.
(iv) Planning procedures performed to prepare for our 2013 audit work over internal controls required under section 404 of the Sarbanes-Oxley Act. This work included meeting with Internal Audit to discuss scheduling of site visits and review and preparation of 2013 controls testing plan, among other procedures.
(v) Performed 2013 audit work over internal controls required under section 404 of the Sarbanes-Oxley Act. This work included traveling to Grace facilities in Albany, OR, Mt.Pleasant, TN, Chicago, IL, Cambridge, MA, Lake Charles, LA and Chattanooga, TN to perform controls testing and walkthroughs of key processes (visits were approximately one week). In addition, work included controls testing and walkthroughs of key processes occurring at the Columbia, MD site, including but not limited to, revenue, intangibles, financial reporting, capital asset management, treasury, payroll, an incentive compensation.
(vi) Preparation for Audit Committee meetings in August and September 2013.
(vii) Attendance at Audit Committee meeting in August and September 2013.

(viii) Procedures performed by the PwC Risk Assurance team to finalize interim testing work performed over the WR Grace information technology systems and reports, including audit procedures related to Information Technology General Controls, automated controls, and key reports.

(ix) Performed audit work for the annual financial statement audit, including interim testing of revenue and journal entries.

(x) Performed detailed testing over grants of stock options and performance based units.

(xi) Preparation for and attendance at an inventory observation in Chattanooga, TN.

(xii) Planning for involvement of international teams in the yearend audit including drafting instructions to multilocation teams.

(xiii) Work performed by the engagement team and consultation with specialists on the following matters:
 a. Change to mark-to-market pension accounting
 b. Discussions with management regarding accounting considerations for deferred payment obligation defeasance payment
 c. Review of the accounting for Grace's sale of their ownership interest in a Saudi Arabia joint venture
 d. Review of Verifi revenue recognition accounting treatment
 e. Review of Chemind acquisition in Australia
 f. Consideration of proper classification of new call deposit account
 g. Review of accounting treatment for performance based unit grants
 h. Discussions with management about new disclosure requirements regarding conflict minerals
 i. Consideration of various accounting implications of the new acquisition of the Dow UNIPOL business

Audit and Tax Services – Darex Puerto Rico 2012 Audit

(i) Performed planning procedures for the 2012 annual financial statement audit, including assessment of significant risks, scoping of significant financial statement accounts and components, various risk assessment procedures, and other planning procedures required by the professional standards and the firm policies.

(ii) Performed audit work for the annual financial statement audit, including detailed audit procedures performed over the Darex Puerto Rico Balance Sheet and Income Statement, such as the physical inventory observation, cash confirmations, accounts receivable confirmations as well as detailed testing of revenue, property, plant, and equipment, third party and intercompany accounts payable, other accruals, other assets, operating expenses, and manual journal entries among others.

(iii) Audit work performed by the audit team and PwC tax team to obtain comfort over the income tax provision, and income taxes payable included in the Darex Puerto Rico 2012 financial statements.  This work included

(iii) testing of the application of the separate return method, as well as review of the deferred tax assets and liabilities and effective tax rate.

(iv) Audit work performed by the audit team and PwC Risk Assurance team in determining and documenting automated and IT General Controls applicable to the Darex Puerto Rico audit.

(v) Assessed various audit adjustments noted in the areas of cash, inventory, accruals, accounts receivable, income taxes, cost of sales, and operating expenses. This included initial identification of the error, discussions with management regarding the cause of the error and adjustments necessary, as well as documentation of the matter in our files.

(vi) Performed financial statement tie out procedures for the annual financial statement audit, which included tie out of balances to the general ledger, and tie out of any adjusting entries to our workpapers.

(vii) Performed completion procedures for the 2012 audit including obtaining representations from management, confirmations from legal counsel, preparation of the Management Comment Letter, and coordination of issuance of opinion by the PwC Puerto Rico office.

Audit and Tax Services – Darex Puerto Rico 2011 Audit

(i) Audit work performed by the audit team and PwC tax team to obtain comfort over the income tax provision, and income taxes payable included in the Darex Puerto Rico 2011 financial statements. This work included testing of the application of the separate return method, as well as review of the deferred tax assets and liabilities and effective tax rate.

(ii) Assessed various audit adjustments noted in the areas of cash, inventory, accruals, accounts receivable, income taxes, cost of sales, and operating expenses. This included initial identification of the error, discussions with management regarding the cause of the error and adjustments necessary, as well as documentation of the matter in our files.

(iii) Performed financial statement tie out procedures for the annual financial statement audit, which included tie out of balances to the general ledger, and tie out of any adjusting entries to our workpapers.

(iv) Performed completion procedures for the 2011 audit including obtaining representations from management, confirmations from legal counsel, preparation of the Management Comment Letter, and coordination of issuance of opinion by the PwC Puerto Rico office.

Audit and Tax Services – IRS Controversy Project

(v) PwC IRS Controversy team review and research of IRS interest computations.

(vi) Conference call meetings held by the PwC IRS Tax Controversy team with Don Teichen & Andree Clark of Grace Management to prepare for IRS & Joint Committee meeting.

(vii) Meetings held by the IRS & Joint Committee with Grace Management and PwC IRS Tax Controversy team related to refund claim.

18. <u>Retention and Fee Matters</u>.  Applicant also seeks compensation and reimbursement of expenses for the preparation of these Applications.

## IV. <u>ALLOWANCE OF COMPENSATION</u>

19. Under the Bankruptcy Code, professionals performing services in a bankruptcy case are entitled to "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses."  11 U.S.C. §330(a)(1)(A).

20. In determining if the amount of compensation is "reasonable", the courts consider the "nature, the extent, and the value" of the services rendered, taking into account the following factors:  the time spent on the services; the rates charged for the services; whether the services were necessary or beneficial to the administration of the case; whether the services were performed in a reasonable amount of time commensurate with the complexity, importance, and nature of the services; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under Chapter 11.  11 U.S.C. § 330(a)(3)(A).  As described throughout these Applications, PwC has satisfied the relevant criteria to support the requested award of compensation.

21. In general, the "baseline rule is for firms to receive their customary rates." <u>Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.</u>, 50 F.3d 253, 259 (3d Cir. 1995).  The compensation sought herein is based on PwC's customary rates, which are in line with the customary rates charged by comparably skilled practitioners in cases other than cases under Chapter 11.

22. Applicant's services have been rendered in an efficient manner by accountants and auditors who are experts in their fields. PwC is one of the largest and most well-respected audit firms in the country, and its rates are commensurate with its level of expertise.

23. The time and effort dedicated to the preparation of a fee application is also an actual and necessary service compensable under the Bankruptcy Code. See, e.g., In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002); Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 272 B.R. 830 (Bankr. D. Vt. 2002); In re Gillett Holdings, Inc., 137 B.R. 475 (Bankr. D. Colo. 1992); In re Kreidle, 85 B.R. 573 (Bankr. D. Colo. 1988). Applicant, therefore, requests compensation for the time and effort it dedicated to the preparation of these Applications.

24. No prior application for the relief requested herein as been made.

**WHEREFORE**, PwC respectfully requests Quarterly allowance of compensation in the amount $1,055,613.61 (plus $4,909.62 for preparing the related fee applications) and reimbursement of expenses in the aggregate amount of $18,723.43, together with such other and further relief as this Court deems just and proper.

Dated: November 14, 2013                          SMITH KATZENSTEIN & JENKINS LLP

/s/ Kathleen M. Miller
Kathleen Miller (I.D. No.2898)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Telecopy: 302-652-8405
Email: kmiller@skfdelaware.com

Attorneys for PricewaterhouseCoopers LLP