## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: December 18, 2013, at 11:00 a.m.** |
| | ) | **Objection Deadline: December 2, 2013, at 4:00 p.m.** |
| | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AMENDING THE RETENTION ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P. AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION TO INCLUDE ADDITIONAL NECESSARY FINANCIAL ADVISORY SERVICES *NUNC PRO TUNC* TO OCTOBER 15, 2013**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby move the Court, pursuant to this motion (the "Motion"), for the entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) amending the final

retention order of The Blackstone Group L.P. ("Blackstone Group") *nunc pro tunc* to October

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

15, 2013, to authorize Blackstone Advisory Partners L.P. ("Blackstone") to perform additional necessary financial advisory services directly related to the acquisition by the Debtors of The Dow Chemical Company's ("Dow") Polypropylene Licensing & Catalysts business (the "Transaction"), and (b) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

**Relief Requested**

4.      By this Motion, the Debtors request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, expanding the scope of the First Engagement Letter (as defined herein) *nunc pro tunc* to October 15, 2013, to (a) include the Additional Services (as defined herein and as provided by that certain second engagement letter

(the "Second Engagement Letter")[2] dated October 15, 2013, between Blackstone and the Debtors and attached to the Order as **Exhibit 1**), (b) modify the fee arrangement in the First Engagement Letter to provide compensation to Blackstone for providing the Additional Services, as set forth below and in the Second Engagement Letter, and (c) grant such other relief as may be appropriate.

### Background

5.    On February 15, 2001, the Debtors and Blackstone Group entered into an engagement letter in connection with a possible restructuring of the Debtors' liabilities (the "First Engagement Letter").

6.    On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

7.    On the Petition Date, the Debtors filed their *Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of the Blackstone Group L.P. as Financial Advisor to The Debtors and Debtors In Possession* [Docket No. 14] (the "Retention Application").

8.    On June 22, 2001, the Court entered its *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 Authorizing the Employment and Retention of the Blackstone Group L.P. as Financial Advisor to the Debtors and Debtors In Possession*

---

[2]    Except as otherwise provided in the section of this Motion regarding notice, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Second Engagement Letter.

[Docket No. 558] (the "Retention Order"), approving the relief requested in the Retention Application.

9.      On October 15, 2013, the Debtors and Blackstone entered into the Second Engagement Letter, attached hereto as **Exhibit 1** to the Order, under which Blackstone would provide financial advisory services and assist the Debtors in analyzing, structuring, negotiating and effecting the Transaction.[3]

10.     On August 2, 2013, the Debtors filed under seal their *Debtors' Motion for Entry of an Order Authorizing, But Not Requiring, the Debtors (A) to Participate In a Competitive Auction and (B) If Selected as the Winning Bidder, To Consummate a Proposed Acquisition* [Docket No. 30915, Sealed Motion Docket No. 30914] (the "Bid Approval Motion"), requesting authority to pursue and consummate the Transaction.

11.     On August 27, 2013, the Court entered its *[Sealed] Order Authorizing, But Not Requiring, the Debtors (A) To Participate In a Competitive Auction and (B) If Selected as the Winning Bidder, To Consummate a Proposed Acquisition* [Docket No. 31022], granting the relief requested in the Bid Approval Motion.

12.     On or about October 11, 2013, the Debtors announced that they had reached a definitive agreement with Dow to consummate the Transaction.

13.     As more fully explained in the Bid Approval Motion, consummation of the Transaction was in the best interest of the Debtors and their respective estates. The Additional Services (as defined herein) performed by Blackstone pursuant to the Second Engagement Letter

---

[3]    In 2007, Blackstone Group rearranged its corporate structure. As a part of this rearrangement, Blackstone Group changed its name to Blackstone Advisory Services L.P. and a new, separate legal entity was formed under the name Blackstone Group L.P. A further name change in 2009 resulted in Blackstone operating under the name Blackstone Advisory Partners L.P. As a result of this rearrangement, Blackstone became entitled to continue, pursue, and execute the applicable part of Blackstone Group's original business, including the services provided to the Debtors under the First Engagement Letter (as defined herein). The right to future advisory engagements for the Debtors was also transferred to Blackstone as part of the rearrangement.

were necessary for a successful Transaction and to realize the value presented by the Transaction for the Debtors and their estates. Blackstone assisted the Debtors in analyzing this transaction from April 2011 through August 2011 and again from April 2013 through signing of the transaction October 11, 2013. The first phase of the Transaction ended when Dow decided to take its Polypropylene Licensing & Catalysts business off the market, only to re-launch the sale process earlier this year.

14.    More specifically, Blackstone assisted the Debtors in securing the Bid Approval Motion from this Court, which was crucial to the Debtors' ability to be invited into the marketing process and to make a credible bid. In both 2011 and 2013, Blackstone performed significant business and valuation due diligence in connection with the Transaction, relying on its knowledge of the chemicals sector and its experience in other M&A (as defined herein) transactions. The business due diligence included market, competitive and operational assessments of the target business obtained from site visits, management meetings, numerous teleconferences and research. Blackstone was extremely involved in developing the diligence plan, managing expert sessions / interviews and summarizing such sessions for the Debtors. The valuation diligence included the development of detailed operational and valuation analyses that served as the foundation for evaluating the returns of the Transaction and setting appropriate bid levels. Blackstone was actively involved in developing the bid strategy and tactics with the Debtors' executive leadership team and communicating with Dow and its advisors. Blackstone was also actively involved in the Transaction negotiations between the Debtors and Dow. The definitive documentation of the Transaction included a sale and purchase agreement and six ancillary agreements covering site services, technology licensing, trademarks, supply and contract manufacturing and research that were all individually negotiated. Blackstone actively

assisted the Debtors to improve key commercial terms within these documents and to drive the negotiations to a successful resolution.

### Blackstone's Qualifications

15.     Blackstone is a preeminent financial advisor with a longstanding track record of advising on complex restructuring and mergers and acquisitions ("M&A") transactions.  With respect to restructuring transactions, Blackstone professionals (and Blackstone's affiliates) have advised on more than 300 distressed situations, both in and out of court, involving more than $1 trillion in total liabilities since 1991.

16.     Restructuring professionals of Blackstone and affiliates of Blackstone have advised debtors, creditors, and other constituents in numerous recent Chapter 11 cases, including, among others: *A123 Systems, AbitibiBowater, Central European Distribution Corporation, Dynegy, Eastman Kodak, Edison Mission Energy, Excel Maritime Carriers, Flying J Inc., Hawker Beechcraft, Inc., Houghton Mifflin Harcourt, Lee Enterprises Inc., LightSquared Inc., the Los Angeles Dodgers, Overseas Shipholding Group, Patriot Coal Corporation, SemGroup, Specialty Products Holding Corp., and Terrestar Networks.*  In addition, Blackstone's restructuring group has provided general restructuring advice to such major companies as *AIG, Aquila Inc., Ford Motor Company, JCPenney, The Goodyear Tire & Rubber Company,* and *Xerox Corporation.*

17.     With respect to mergers and acquisitions, professionals of Blackstone and affiliates of Blackstone have advised on M&A transactions with an aggregate value of approximately $520 billion since 1985.  In the chemical sector, Blackstone M&A professionals have advised on transactions involving *BP plc, Braskem, Celanese, Chemchina, Dow, GE, Huntsman, and PQ Corporation,* among others.  Blackstone professionals have also advised

financial sponsors including AEA Investors, Apollo Management, Bain Capital, Blackstone Capital Partners, and The Carlyle Group on various M&A transactions in the chemical sector. Blackstone's chemicals M&A team has evaluated numerous opportunities in the catalysts market and has significant experience in the polypropylene end market.

18.    During the 12-year pendency of the Debtors' Chapter 11 Cases, Blackstone has become intimately familiar with the Debtors' businesses, operations, and financial condition. Blackstone is uniquely qualified to provide the services contemplated by the Second Engagement Letter because Blackstone has worked hand-in-hand with the Debtors throughout their Chapter 11 Cases, has advised on numerous business matters and has been instrumental in the development of the Debtors' plans to emerge from bankruptcy.  Given Blackstone's familiarity with the Debtors, it was ideally positioned to advise the Debtors with respect to the Transaction, which is a critical component of the Debtors' ability to maintain a leadership position in the specialty chemical sector.

19.    The Debtors selected Blackstone to assist in connection with the Transaction based on Blackstone's diverse experience, knowledge, recognized expertise, and reputation in the field, its understanding of the issues involved in the Chapter 11 cases and the Debtors' businesses, and the Debtors' belief that Blackstone possessed the resources to provide the necessary services in a cost-effective and efficient manner.  After due consideration, the Debtors concluded that Blackstone was best qualified to provide the financial advisory services the Debtors required in connection with the Transaction at a reasonable level of compensation.

## Additional Services Provided by Blackstone

20.    The First Engagement Letter, the Retention Motion, and the Retention Order do not provide for the performance by Blackstone of the services described in the Second

Engagement Letter.  The Retention Motion explicitly provided that the services to be rendered under the First Engagement Letter only encompassed those services set forth in the First Engagement Letter and "[did] not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Debtors," and that any further services outside the scope of the First Engagement Letter "including compensation arrangements, would be set forth in a separate written agreement between the Debtors and Blackstone and would be subject to any necessary Court approval."[4]

21.      Pursuant to the Order, the scope of Blackstone's retention will be expanded to include rendering the following services in connection with the Transaction (the "Additional Services"):[5]

(a)      providing financial advisory services, including a general business and financial analysis, transaction feasibility analysis and valuation analysis;

(b)      assisting in negotiations and developing a general strategy; and

(c)      providing other financial advisory services which may be customarily rendered in connection with the Transaction.

22.      No other financial advisory firm or other professional advisor will provide the Debtors with services similar to those to be provided by Blackstone pursuant to the Second Engagement Letter.  As such, the provision by Blackstone of the Additional Services will not duplicate the services provided by the Debtors' other professionals or by Blackstone pursuant to the First Engagement Letter.  And, as discussed previously, Blackstone is uniquely situated to provide the Additional Services.

---

[4]      Retention Motion at ¶ 10.

[5]      The description of the terms of the Second Engagement Letter set forth in this Motion is intended solely for informational purposes.  In the event of an inconsistency between the description and the Second Engagement Letter, the Second Engagement Letter shall control in all respects.

**Compensation Terms**

23.     Subject to Court approval, the Debtors will compensate Blackstone for the Additional Services in accordance with the terms and conditions of the Order and the Second Engagement Letter, attached hereto as **Exhibit A** and **Exhibit 1**, respectively, which provide in relevant part that (a) the Debtors will pay Blackstone a fee payable in cash in the amount of 1% of the Consideration paid by the Debtors in connection with the Transaction; and (b) the Debtors will reimburse Blackstone for its out-of-pocket expenses incurred in connection with the Additional Services.   The Consideration paid in connection with the Transaction was $500 million.   *See* W. R. Grace & Co. Current Report (Form 8-K), at 2 (October 23, 2013). Blackstone's fee under the Second Engagement Letter is thus $5 million, plus expenses.

24.     The Debtors believe that the compensation provided for under the Second Engagement Letter is consistent and typical of compensation arrangements entered into by financial advisory firms of similar stature for comparable engagements, both in and out of bankruptcy proceedings.  The compensation structure of the Second Engagement Letter is, like the Second Engagement Letter as a whole, a market-based result of arms-length, good faith bargaining.  The compensation structure is designed to fairly compensate Blackstone for its work in connection with the Transaction and to cover fixed and routine overhead expenses.

**Indemnification**

25.     The Second Engagement Letter includes an "Indemnification Agreement"[6] that provides, in relevant part, that the Debtors will indemnify and hold harmless Blackstone and its affiliates and their respective partners (both general and limited), members, officers, directors,

---

[6]     The description of the terms of the Indemnification Agreement set forth in this Motion is intended solely for informational purposes.  In the event of an inconsistency between the description and the Second Engagement Letter, the Second Engagement Letter shall control in all respects.

employees, and agents and each other person, if any, controlling Blackstone or any of Blackstone's affiliates from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with Blackstone's engagement under the Second Engagement Letter.

26.    However, the Indemnification Agreement provides that the Debtors shall have no liability thereunder for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have resulted from the breach of the Second Engagement Letter by, or the gross negligence or willful misconduct of, Blackstone.

**Basis for Relief**

27.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingency fee basis..." 11 U.S.C. § 328(a).

28.    Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals.  As the United States Court of Appeals for the Fifth Circuit recognized in *In re Nat'l Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997) (citations omitted):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc.  Under present § 328

the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862. Owing to this inherent uncertainty, courts have approved similar retention orders and subsequent necessary amendments to those orders that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. *See, e.g., In re Flying J Inc.*, No. 08-13384 (MFW) (Bankr. D. Del. Aug. 27, 2009) [Docket No. 1830] (approving an amended retention order for Blackstone as financial advisors and investment bankers to debtors); *see also In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Oct. 25, 2006) [Docket No. 2951] (approving an amended retention order for Miller Buckfire & Co., LLC as financial advisors and investment bankers to debtors).

29.     The Debtors respectfully submit that the current proposed engagement structure to be provided in conjunction with the Additional Services is reasonable and market-based. The terms of the Second Engagement Letter are typical of engagement letters for similar transactions and the percentage fee compensation payable to Blackstone under the Second Engagement Letter is comparable to the compensation generally charged by other financial advisors in connection with similar transactions. *See, e.g., In re Tronox Inc.*, No. 09-10156 (ALG) (Bankr. S.D. N.Y. Apr. 7, 2009) [Docket No. 339] (approving an engagement letter for Rothschild Inc. including a mergers and acquisition fee equal to 1.075% of consideration for a transaction of $500 million); *In re Global Aviation Holdings Inc.*, No. 12-40783 (CEC) (Bankr. E.D.N.Y. Mar. 22, 2012) [Docket No. 276] (approving an engagement letter for Rothschild Inc. including a mergers and acquisition fee equal to 0.9% of consideration for a transaction of $500 million); *In re U.S. Concrete, Inc.*, No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010) [Docket No. 151] (approving an engagement letter for Lazard Frères & Co. LLC with a sale transaction fee equal to the greater of its $3,750,000 restructuring fee or 1.15% of transaction consideration).

30.     The Debtors also respectfully submit that the Indemnification Agreement complies with the Third Circuit standards set forth in *United Artists Theatre Co. v. Walton*, 315 F.3d 217 (3d Cir. 2003).   Under the terms of the Indemnification Agreement, the Debtors will not indemnify Blackstone for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have resulted from the breach of the Second Engagement Letter by, or the gross negligence or willful misconduct of, Blackstone.   The provisions in the Indemnification Agreement are customary and reasonable for financial advisory firms of similar stature to Blackstone performing services similar to those contemplated under the Second Engagement Letter and do not violate public policy as interpreted in *United Artists*.

## No Prior Request

31.     No prior motion for the relief requested herein has been made to this or any other court.

## Notice[7]

32.     Notice of this Motion has been given to: (a) the office of the U.S. Trustee; (b) counsel to the L/C Facility Agent and L/C Issuers; (c) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (d) counsel to each of the official committees appointed in these Chapter 11 Cases; (e) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (f) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (g) counsel for Blackstone.   In light of the nature of the relief requested, the Debtors submit that no further notice is required.

---

[7]   Capitalized terms used in this Notice section but not otherwise defined herein shall have the meanings ascribed to them in the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368].

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, expanding the scope of the First Engagement Letter (as defined herein) *nunc pro tunc* to October 15, 2013, to (a) include the Additional Services, (b) modify the fee arrangement in the First Engagement Letter to provide compensation to Blackstone for providing the Additional Services, as set forth below and in the Second Engagement Letter, and (c) grant such other relief as may be appropriate.

Dated: November 14, 2013
Wilmington, Delaware

**KIRKLAND & ELLIS LLP**
Adam Paul
John Donley, P.C.
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

And

**THE LAW OFFICES OF ROGER HIGGINS, LLC**
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*