**Exhibit A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:** _____, 2013 |
| | ) | **Objection Deadline:** _____, 2013 |
| | ) | **Agenda No.** _____ |

**ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND FED. R. BANKR. P. 2014(a) AND 2016 AMENDING THE RETENTION ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE BLACKSTONE GROUP L.P. AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION TO INCLUDE ADDITIONAL NECESSARY FINANCIAL ADVISORY SERVICES *NUNC PRO TUNC* TO OCTOBER 15, 2013**

Upon consideration of the *Motion of the Debtors for Entry of an Order Amending the Retention Order Authorizing the Employment and Retention of the Blackstone Group L.P. as Financial Advisor to the Debtors and Debtors in Possession to Include Additional Necessary Financial Advisory Services Nunc Pro Tunc to October 15, 2013* (the "Motion) and this Court

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that notice of and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:[2]

### ORDERED, ADJUDGED AND DECREED that:

1.     The Motion is GRANTED in its entirety.

2.     The Retention Order is amended as provided herein.   The Second Engagement Letter dated October 15, 2013, and attached hereto as **Exhibit 1** is hereby approved and the First Engagement Letter dated February 15, 2001, is hereby amended as provided in the Second Engagement Letter to include the Additional Services.

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

3.      The Debtors are authorized to take all actions that may be necessary to execute and enter into the Second Engagement Letter with Blackstone *nunc pro tunc* to October 15, 2013 and to pay Blackstone the compensation provided for therein.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Fed. R. Bankr. P. 6004(a) and the Local Bankruptcy Rules of the Court are satisfied by such notice.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order and the provision of services by Blackstone under the Second Engagement Letter and the Debtors' payment of compensation for those Additional Services.

6.      This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Fed. R. Bankr. P. 7062, Fed. R. Bankr. P. 6004(h) or otherwise.

Dated: _____, 2013


                     _____
                     Honorable Kevin J. Carey
                     United States Bankruptcy Judge

**Exhibit 1**

**Second Engagement Letter**



October 15, 2013

Mr. Hudson La Force III
Senior Vice President and Chief Financial Officer
W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

Dear Hudson:

This letter confirms the understanding and agreement ("Agreement") between Blackstone Advisory Partners L.P. ("Blackstone") and W. R. Grace & Co. (the "Company") regarding the retention of Blackstone and its affiliates, successors and assigns, as appropriate, by the Company as its financial advisor for the purposes set forth herein.

Under this Agreement, Blackstone will provide financial advisory services to the Company in connection with a Transaction and will assist the Company in analyzing, structuring, negotiating and effecting the Transaction pursuant to the terms and conditions of this Agreement. As used in this Agreement, "Transaction" means whether effected in one or a series of transactions, (a) any merger, consolidation, reorganization or other business combination pursuant to which Dow Chemical's Polypropylene Licensing & Catalysts (the "Target") business is combined with that of the Company or one or more persons formed by or affiliated with the Company, (b) the acquisition, directly or indirectly, by the Company or its affiliate by way of a tender or exchange offer, negotiated purchase or other means of a significant portion of the Target's voting securities, or (c) the acquisition, directly or indirectly, by the Company or any of its affiliates of all or a majority of the assets of, or of any right to all or a majority of the revenues or income, of the Target by way of a negotiated purchase, lease, joint venture, license, exchange or other means.

In connection with its engagement, Blackstone agrees to:

    (a)  provide financial advisory services, including a general business and financial analysis, transaction feasibility analysis and valuation analysis;

    (b)  assist in negotiations and develop a general Transaction strategy;

    (c)  provide other financial advisory services which may be customarily rendered in connection with the Transaction.

Notwithstanding anything herein to the contrary, Blackstone does not act as an underwriter, nor will it provide or be deemed to have provided legal, accounting or tax advice to the Company regarding the Transaction. The Company should rely on its own independent legal, accounting and tax advisors regarding the Transaction.

The Company agrees to pay Blackstone a transaction fee (the "Transaction Fee") payable in cash in the amount of 1.00% of the Consideration for the Business at consummation of a Transaction.

In this Agreement, "Consideration" means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Transaction or a transaction related thereto (including, without limitation, amounts paid (A) for covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Consideration shall also include all amounts paid into escrow and all contingent payments payable in connection with the Transaction, with fees on amounts paid into escrow to be payable upon the establishment of such escrow and fees on contingent payments to be payable when such contingent payments are made. If the Consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Consideration is paid.

In addition to any fees that may be payable to Blackstone under this Agreement, the Company agrees to reimburse Blackstone, upon request made from time to time, for its out-of-pocket expenses incurred in connection with the services rendered by Blackstone hereunder (including, without limitation, travel and lodging, data, word processing, graphics and communication charges, research costs, courier services and fees, expenses and disbursements of any legal counsel retained by Blackstone).

The Company agrees that at the later of (a) the entry of an order approving the Company's entry into this Agreement (the "Approval Order"), by the U. S. Bankruptcy Court for the District of Delaware in In re: W. R. Grace & Co., et al., Case No. 01-01139 (JKF), or (b) the closing of the Transaction it will effect a wire transfer to an account identified by Blackstone of all fees payable to Blackstone under this Agreement that have not previously been paid as well as all out-of-pocket expenses incurred by Blackstone through the closing date in connection with its services rendered hereunder which have been requested by Blackstone and not previously reimbursed by the Company.

In order to coordinate efforts on behalf of the Company, during the period of Blackstone's engagement, neither the Company nor its management will initiate any discussion looking to a potential Transaction except with the assistance of Blackstone. In the event that the Company or its management receives an inquiry concerning a potential Transaction, they will promptly inform Blackstone of such inquiry in order that Blackstone can assess such inquiry and assist the Company in any resulting negotiations.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information"). The Company further agrees that it will provide Blackstone with reasonable access to the Company and its directors, officers, employees and advisers. The Company shall inform Blackstone promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Transaction or if the Company becomes aware that any Information provided to Blackstone is, or has become, untrue, unfair, inaccurate or misleading in any way. Furthermore, the Company warrants and undertakes to Blackstone in respect of all Information supplied by the Company, that the Company has not obtained any such Information other than by lawful means and that disclosure to Blackstone will not breach any agreement or duty of confidentiality owed to third parties. The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

Except as contemplated by the terms hereof or as required by applicable law or legal process, Blackstone shall, for a period of one year from the date hereof, keep confidential all material non-public information provided to it by or at the request of the Company, and shall not disclose such information, the Company's interest in a Transaction or the subject matter of this Agreement to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder.

In the event that confidential information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties without the prior written consent of Blackstone. In addition, Blackstone may not be otherwise publicly referred to without its prior written consent. All services, advice, information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

3

The Company acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company. In such capacity, Blackstone shall act as an independent contractor, and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Because Blackstone will be acting on the Company's behalf in this capacity, it is customary for us to receive indemnification. A copy of Blackstone's standard form of indemnification agreement is attached to this Agreement as Attachment A.

Blackstone's engagement hereunder may be terminated upon 10 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, the provisions relating to (i) the payment of fees and expenses accrued through the date of termination, (ii) the disclosure of Blackstone services, advice, information and reports, (iii) the status of Blackstone as an independent contractor, (iv) the limitation on to whom Blackstone shall owe any duties and (v) waivers of the right to trial by jury will survive any such termination, and any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A.

Blackstone will be entitled to the Transaction Fee set forth above in the event that at any time prior to the expiration of 12 months after such termination a definitive agreement with respect to a Transaction is executed and a Transaction is thereafter consummated.

The Company represents that neither it nor any of its subsidiaries, any director or officer of the Company or any of its subsidiaries, nor, to the knowledge of the Company or any of its subsidiaries, any affiliate of the Company or any of its subsidiaries, is an individual or entity ("Person") that is, or is owned or controlled by a Person that is: (i) the subject of any U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control) or similar sanctions imposed by another relevant sanctions authority (collectively, "Sanctions"); (ii) located, organized or resident in a country or territory that is the subject of Sanctions that broadly prohibit dealings with that country or territory; or (iii) not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions.

The Company acknowledges that Blackstone may, at its option and expense, place an announcement in such newspapers and periodicals as it may choose, stating that Blackstone has acted as the financial advisor to the Company in connection with the Transaction.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the corporate advisory business of The Blackstone Group L.P., provided that confidential information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not involved in the corporate advisory

4

business of The Blackstone Group L.P. Should confidential information be made available to a representative of The Blackstone Group L.P. and its affiliates who is not involved in the corporate advisory business of The Blackstone Group L.P., such representative shall be bound by this Agreement in accordance with its terms.

The Company understands and acknowledges that affiliates of Blackstone Advisory Partners L.P. may currently hold, or in the future may acquire, debt or equity securities (or other interests) issued by the Company or its affiliates, and will be under no obligation to sell any such holdings in connection with this engagement.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the state of New York applicable to contracts executed in and to be performed in that state.

The Company hereby agrees that any action or proceeding based hereon or arising out of Blackstone's engagement hereunder shall be brought and maintained by the Company exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. The Company irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Blackstone and any person entitled to be indemnified under the indemnification agreement attached hereto as Attachment A.

Any rights to trial by jury with respect to any claim or proceeding related to, or arising out of, this Agreement, engagement or any transaction or conduct in connection herewith, is waived.

This Agreement shall not become effective unless and until the Court has entered the Approval Order.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY PARTNERS L.P.

By: _____
Martin Alderson Smith

Accepted and Agreed
to as of the date first
written above

W. R. GRACE & CO.

By: _____
Hudson La Force III

Enclosure

6



<u>ATTACHMENT A</u>

October 15, 2013

Blackstone Advisory Partners L.P.
345 Park Avenue
New York, NY 10154

**<u>INDEMNIFICATION AGREEMENT</u>**

Ladies and Gentlemen:

This letter will confirm that we have engaged Blackstone Advisory Partners L.P. ("Blackstone") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of October 15, 2013 (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of, or otherwise responding to, any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We also agree to cooperate with Blackstone and to give, and so far as it is able to procure the giving of, all such information and render all such assistance to Blackstone as Blackstone may reasonably request in connection with any such action, claim, suit, proceeding, investigation or judgment and not to take any action which might reasonably be expected to prejudice the position of Blackstone or its affiliates in relation to any such action, claim, suit, proceeding, investigation or judgment without the consent of Blackstone (such consent not to be unreasonably withheld). In the event that Blackstone is requested or authorized by us or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or

in connection with the Engagement, we will, so long as Blackstone is not a party to the proceeding in which the information is sought, pay Blackstone the fees and expenses of its counsel incurred in responding to such a request. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have resulted from the breach of this Agreement by, or gross negligence or willful misconduct of Blackstone. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have resulted from the breach of this Agreement by, or gross negligence or willful misconduct of Blackstone.

If the indemnification provided for in the preceding paragraph is for any reason (other than the breach, gross negligence or willful misconduct of Blackstone as provided above) unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder,

2

such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of ours under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours and such Indemnified Party. We agree that the indemnity and reimbursement obligations of ours set out herein shall be in addition to any liability which we may otherwise have under the Engagement Letter and applicable law and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours, Blackstone and any such Indemnified Party.

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of Blackstone by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

3

This agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the state of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

W. R. GRACE & CO.

By: _____
Hudson La Force III

Accepted and Agreed to as of the date first written above:

BLACKSTONE ADVISORY PARTNERS L.P.

By: _____
Martin Alderson Smith

4