## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | **Chapter 11** |
| | ) | **Case No. 01-01139 (KJC)** |
| **W.R. GRACE & CO., et al.,** | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | Objection Deadline: December 3, 2013 at 4:00 p.m. |
| | ) | Hearing Date: December 18, 2013 at 11:00 a.m. |

### APPLICATION OF ROGER FRANKEL, LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS, FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF TOWERS WATSON DELAWARE INC., AS ACTUARIAL CONSULTANT, *NUNC PRO TUNC* TO NOVEMBER 15, 2013

Pursuant to the FCR Appointment Order,[1] Sections 328, 524(g) and 1103 of Title 11 of

the United States Code (the "Bankruptcy Code"), the Federal Rule of Bankruptcy Procedure

2014 (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), Roger Frankel, the Court-appointed asbestos

personal injury future claimants' representative (the "FCR" or "Mr. Frankel"), by his

undersigned counsel, hereby submits this application (the "Application") for the entry of an

order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the

retention and employment of Towers Watson Delaware Inc. ("Towers Watson") as his actuarial

consultant *nunc pro tunc* to the date this Application was filed with this Court, i.e.,

November 15, 2013.  In support of this Application, the FCR relies upon the Declaration of

---

[1] The "FCR Appointment Order" refers to the *Amended Interim Order Appointing Roger Frankel as Successor Legal Representative for Future Asbestos Personal Injury Claimants Nunc Pro Tunc to May 16, 2013*, entered May 30, 2013 [Dkt. No. 30689], which became a final order by its terms as of June 14, 2013 [Dkt. No. 30756].

Jeffrey Kimble (the "Kimble Declaration"), a consultant at Towers Watson, which is attached hereto as **Exhibit B**.

As described more fully below, David T. Austern ("Mr. Austern"), the former asbestos personal injury future claimants' representative appointed by the Court in 2004, passed away on May 16, 2013. Accordingly, W. R. Grace & Co., *et al.* (collectively, the "Debtors") sought and received Court approval to appoint Mr. Frankel as the successor FCR. By this Application, Mr. Frankel seeks authority to retain and employ Towers Watson, the same actuarial consulting firm that advised Mr. Austern in these cases, as his actuarial consultant.

In support of this Application, the FCR respectfully states as follows:

**Jurisdiction and Venue**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The predicates for the relief sought herein are sections 105, 328, 524(g)(4)(B)(i) and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014, and the FCR Appointment Order.

**Background**

**A.    Status of the Chapter 11 Cases**

4.     On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

5.    On April 13, 2001, the United States Trustee for the District of Delaware (the "United States Trustee") appointed the following committees pursuant to Section 1102 of the Bankruptcy Code: an official committee of unsecured creditors (the "Unsecured Creditors' Committee") [Dkt. No. 94]; an official committee of asbestos personal injury claimants (the "Asbestos PI Committee") [Dkt. No. 95]; and an official committee of asbestos property damage claimants (the "Asbestos PD Committee") [Dkt. No. 96].  On June 18, the United States Trustee appointed an official committee of equity security holders pursuant to Section 1102 of the Bankruptcy Code (the "Equity Committee" and together with the Unsecured Creditors' Committee, the Asbestos PI Committee, and the Asbestos PD Committee, collectively, the "Committees") [Dkt. No. 532].

6.    On April 22, 2010, the Debtors filed a joint plan of reorganization [Dkt. Nos. 24657, 25881, 25931, 25956] (collectively, the "Joint Plan").  One of the cornerstones of the Joint Plan is the creation of, among other things, an asbestos personal injury trust (the "PI Trust"), which will process and pay asbestos personal injury claims pursuant to a specified set of procedures.

7.    In January 2011, this Court confirmed the Joint Plan [Dkt. Nos. 26155, 26289] (the "Confirmation Order").  The Confirmation Order was appealed to the United States District Court for the District of Delaware (the "District Court").  In January 2012, the District Court denied or overruled all objections to the Joint Plan and confirmed it in its entirety [District Ct. Case No. 11-199, Dkt. No. 165, 166].  Five appeals from the District Court's order confirming the Joint Plan were filed in the United States Court of Appeals for the Third Circuit (the "Third Circuit"), Case No. 12-1402 (lead case).  To date, the Third Circuit has affirmed the District Court's rulings confirming the Joint Plan in four of the five appeals.  The fifth appeal, brought by a group of the Debtors' pre-petition bank lenders, remains *sub judice* before the Third Circuit.

**B.  The Court's Appointment of the Former FCR and the Successor FCR, and the Former FCR's Employment of Towers Watson as His Actuarial Consultant**

8.    On December 21, 2004 (*nunc pro tunc* to October 29, 2004), Mr. Austern, the former Court-appointed legal representative for future asbestos personal injury claimants in these Chapter 11 Cases, sought and received Court approval to retain and employ the Tillinghast business of Towers, Perrin, Forster & Crosby, Inc., now known as Towers Watson, as his actuarial consultant.  [Mr. Austern's application to retain Towers Watson, Dkt. No. 6795; Order approving retention of Towers Watson, Dkt. No. 7254].

9.    Towers Watson provided actuarial services to Mr. Austern in these Chapter 11 Cases from October 29, 2004 until his death on May 16, 2013.

10.    Following Mr. Austern's death, at the Debtors' request, the Bankruptcy Court appointed Mr. Frankel as the successor FCR.  [Debtors' motion to appoint Mr. Frankel as successor FCR, Dkt. No. 30671; FCR Appointment Order, Dkt. No. 30689].  The FCR Appointment Order authorizes Mr. Frankel to, among other things, retain and employ professionals consistent with sections 327 and 1103 of the Bankruptcy Code, subject to approval of the Court.

## Relief Requested and Basis for Relief Sought

11.    By this Application, Mr. Frankel seeks to employ and retain Towers Watson as his actuarial consultant in these Chapter 11 Cases *nunc pro tunc* to November 15, 2013, the date this Application was filed.  The primary focus of Towers Watson's work will involve advising Mr. Frankel with respect to the appropriate payment percentage for the PI Trust.

12.    Towers Watson has a wealth of experience and knowledge in providing expert consultation and advice regarding the estimation of liabilities for present and future asbestos claims and the establishment of payment percentages for asbestos trusts.  For the nine years prior

to Mr. Austern's death, professionals at Towers Watson worked closely with Mr. Austern and his bankruptcy counsel to provide actuarial consulting services in these Chapter 11 Cases. For example, in connection with the estimation of the Debtors' aggregate asbestos personal injury liabilities, professionals at Towers Watson analyzed the Debtors' pre-petition claims database and developed an independent estimate of the Debtors' present and future asbestos personal injury liabilities. Towers Watson's professionals also prepared an expert report regarding their estimate and analyzed expert reports submitted on behalf of the Debtors and the Asbestos PI Committee. In addition, prior to Mr. Austern's death, Towers Watson had begun to analyze issues related to estimating a payment percentage for the PI Trust.

13.    Given Towers Watson's many years of providing actuarial consulting services to Mr. Austern in these Chapter 11 Cases, Towers Watson is intimately familiar with the Debtors' pre-petition asbestos personal injury claims history, including, for example, pre-petition settlements, judgments and dismissals. Towers Watson is also familiar with the database compiled by Rust Consulting Co. in connection with the tabulation of responses to the Debtors' asbestos personal injury questionnaire and proofs of claim filed by certain asbestos personal injury claimants in these Chapter 11 Cases. Towers Watson also has an understanding of the Debtors' asbestos-containing products, including the Debtors' activities in Libby, Montana, and has a deep knowledge of the trends associated with filing asbestos personal injury claims against solvent and insolvent defendants.

14.    In addition, Towers Watson has extensive experience and knowledge in providing actuarial consulting services to a variety of clients, particularly with respect to asbestos-related and other mass tort claims, as described in the Kimble Declaration. Towers Watson is familiar

with the concerns and issues important to the FCR and to the asbestos personal injury claimants who may assert claims or demands in the future.

15.    Accordingly, Mr. Frankel believes that the continued engagement of Towers Watson with respect to the matters described below is essential to his role in these Chapter 11 Cases, and that Towers Watson, given its particular knowledge, experience and expertise, is well suited to continue to assist him as his actuarial consultant during the pendency of these Chapter 11 Cases.  In addition, Mr. Frankel believes that the continued employment of Towers Watson will provide him with the most efficient and cost-effective services.

### Services to be Rendered

16.    Pursuant to the engagement letter (the "Engagement Letter") attached to the Kimble Declaration as **Exhibit 1**, and subject to the approval of this Court, Towers Watson will be engaged to provide analyses and estimations of payment percentages for the PI Trust under various scenarios; and to provide any other tasks mutually agreed upon by Towers Watson and the FCR.  These services are necessary and essential to the FCR.

17.    Subject to approval of this Application, Towers Watson has indicated a willingness to act on behalf of, and render such services to, the FCR, pursuant to the terms and conditions set forth in the Engagement Letter.

### Disclosure Concerning Connections
### Between Towers Watson and Parties in Interest

18.    Towers Watson advises that in order to prepare this Application and the accompanying Kimble Declaration, its conflict resolution department conducted a series of searches in its client database to determine whether any conflicts of interest exist that would preclude it from advising the FCR in these Chapter 11 Cases, and whether any connections exist which should be disclosed under Rule 2014 of the Bankruptcy Rules.

19.     In connection with Towers Watson's work for Mr. Austern, Towers Watson filed a declaration and two supplemental declarations pursuant to Bankruptcy Rule 2014, which are incorporated into the Kimble Declaration by reference.  See Dkt. Nos. 6795; 22619; and 24415 (collectively, the "Towers Watson Declarations").  Nothing disclosed in the Towers Watson Declarations precludes Towers Watson from continuing to serve as the actuarial consultant to Mr. Frankel in these Chapter 11 Cases.

20.     To the best of the FCR's knowledge, based upon, and except as otherwise set forth herein or in the Towers Watson Declarations and the Kimble Declaration, Towers Watson does not have any connection with the Debtors, their affiliates, creditors or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the United States Trustee's office with respect to the matters on which Towers Watson is to be employed.

21.     In addition, to the best of the FCR's knowledge, Towers Watson does not represent any other entity having an adverse interest in connection with these Chapter 11 Cases, is disinterested, and does not represent or hold an interest adverse to the interests of the FCR with respect to the matters on which Towers Watson is to continue to be employed.

**Professional Compensation**

22.     As described in the Engagement Letter and the Kimble Declaration, and subject to approval by this Court, Towers Watson and the FCR have agreed that Towers Watson will be compensated for services rendered to Mr. Frankel in these Chapter 11 Cases on an hourly basis. Towers Watson will also seek reimbursement for actual and necessary expenses incurred, as described below.

23.     Jeffrey Kimble ("Mr. Kimble"), a consultant at Towers Watson, will serve as the lead consultant to the FCR for this engagement.  Mr. Kimble's current hourly rate is $515.  The current hourly rates for other Towers Watson professionals expected to provide services to the FCR are $575 for Steven Lin (senior consultant), $630 for Sandra Santomenno (senior consultant), and range from $440 to $575 for other consultants, and $290 to $415 for analysts. Towers Watson reserves the right to modify these hourly rates from time to time following notice to the FCR.

24.     As Towers Watson has done in connection with the services it rendered to Mr. Austern, Towers Watson intends to apply for compensation for services rendered to Mr. Frankel in these Chapter 11 Cases and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order (as defined below), and the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases.  Towers Watson has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

25.     Pursuant to the proposed Order attached hereto as Exhibit A, compensation, including professional fees and reimbursement of expenses, shall be payable to Towers Watson from the Debtors' estates, subject to approval by the Court and subject to the Administrative Compensation Order,[2] the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases, and any other applicable orders of this Court.

---

[2] "Administrative Compensation Order" refers to the Amended Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, entered April 17, 2002 [Dkt. No. 1949], as may be further amended by the Court.

26.     For purposes of efficiency, Towers Watson has asked that it be permitted to file a single consolidated final fee application at the end of these Chapter 11 Cases, which will include all of the fees and expenses incurred by Towers Watson in connection with its representation of Mr. Austern from 2004 through May 16, 2013, and in connection with its representation of Mr. Frankel from November 15, 2013 through and including the effective date of a plan of reorganization.[3]  The proposed Order attached hereto as Exhibit A so provides.

27.     Other than as set forth above and in the Kimble Declaration, no arrangement is proposed between the FCR and Towers Watson for compensation to be paid in these Chapter 11 Cases.

28.     The FCR has been advised by Towers Watson that it has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Section 504(b)(1) of the Bankruptcy Code.

### Request for *Nunc Pro Tunc* Authorization

29.     Given the current posture of these Chapter 11 Cases and the need to, among other things, prepare for the effective date of the Joint Plan, it is important to the FCR that he receive actuarial advice from Towers Watson.  In order to avoid delay, Mr. Frankel asked Towers Watson to resume its work on the FCR's behalf as of the date this Application was filed. Accordingly, the FCR respectfully requests that the employment of Towers Watson be authorized effective as of November 15, 2013.

---

[3] This relief was previously granted in connection in the orders approving the continued retention and employment of Orrick Herrington & Sutcliffe LLP, Mr. Frankel's bankruptcy counsel, and Lincoln Partners Advisors LLC, Mr. Frankel's financial advisors.  [Dkt. Nos. 30902, 30903].

**No Prior Request**

30.    Other than the application filed by Mr. Austern in 2004 to retain and employ Towers Watson as his actuarial consultant in these Chapter 11 Cases, as described herein, no prior application for the relief requested herein has been made to this or any other Court.

**Notice**

31.    Notice of the Application and the requested relief has been provided to (i) counsel and co-counsel for the Debtors, (ii) the Office of the United States Trustee, (iii) counsel for the Committees appointed in these Chapter 11 Cases, (iv) the Fee Auditor, and (v) any party which has entered its appearance in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  The FCR believes that such notice of the Application is appropriate and sufficient.

## Conclusion

**WHEREFORE**, the FCR respectfully requests that the Court enter an order substantially in the form attached hereto (1) granting this Application, (2) authorizing the FCR to retain and employ Towers Watson as his actuarial consultant in these Chapter 11 Cases, effective as of November 15, 2013, in accordance with the terms set forth in the Engagement Letter and this Application and consistent with sections 328, 524(g)(4)(B)(i) and 1103 of the Bankruptcy Code and the FCR Appointment Order, and (3) granting such other and further relief as is appropriate.

Dated:  November 15, 2013            Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Debra L. Felder*
Richard H. Wyron, admitted *pro hac vice*
Debra L. Felder, admitted *pro hac vice*
Columbia Center
1152 15th Street, NW
Washington, DC 20005
Telephone:  (202) 339-8400
Facsimile:   (202) 339-8500
Email:  rwyron@orrick.com; dfelder@orrick.com

—and—

PHILLIPS, GOLDMAN & SPENCE, P.A.
John C. Phillips, Jr. (#110)
1200 North Broom Street
Wilmington, DE 19806
Telephone:  (302) 655-4200
Facsimile:  (302) 655-4210
Email:  jcp@pgslaw.com

*Co-Counsel to Roger Frankel,*
*Asbestos PI Future Claimants' Representative*