# EXHIBIT B TO APPLICATION:

# KIMBLE DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>W.R. GRACE & COMPANY, et al.<br><br>Debtors. | )<br>)<br>)  Case No. 01-1139 (KJC)<br>)  Chapter 11<br>)  (Jointly Administered)<br>)<br>)<br>) |

**DECLARATION OF JEFFREY KIMBLE IN SUPPORT OF THE
APPLICATION OF ROGER FRANKEL, LEGAL REPRESENTATIVE FOR FUTURE
ASBESTOS PERSONAL INJURY CLAIMANTS, FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
TOWERS WATSON DELAWARE INC., AS ACTUARIAL CONSULTANT,
<u>*NUNC PRO TUNC* TO NOVEMBER 15, 2013</u>**

I, JEFFREY KIMBLE, hereby state as follows:

1.  I am a consultant at Towers Watson Delaware Inc. ("Towers Watson"), which maintains offices at 101 South Hanley Road, St. Louis, Missouri 63105, among other places around the world.

2.  I submit this declaration (the "Declaration") in support of the *Application of Roger Frankel, Legal Representative for Future Asbestos Personal Injury Claimants for Entry of an Order Authorizing the Retention and Employment of Towers Watson Delaware Inc., as Actuarial Consultant,* Nunc Pro Tunc *to November 15, 2013* (the "Application") filed by Roger Frankel ("Mr. Frankel" or the "FCR") in his capacity as the FCR, and to provide the disclosures required under Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules").[1]

3. Unless otherwise stated in this Declaration, the facts set forth herein are based upon my personal knowledge, upon records maintained by Towers Watson in the ordinary course of its business and which have been reviewed by me and/or by other employees of Towers Watson at my direction, or upon information known to other employees of Towers Watson and conveyed to me.

### The Court's Approval of Towers Watson as Mr. Austern's Actuarial Consultant and Appointment of Mr. Frankel as the Successor FCR

4. On December 21, 2004 (*nunc pro tunc* to October 29, 2004), David T. Austern ("Mr. Austern"), the former Court-appointed legal representative for future asbestos personal injury claimants in these Chapter 11 Cases, sought and received Court approval to retain and employ the Tillinghast business of Towers, Perrin, Forster & Crosby, Inc., now known as Towers Watson, as his actuarial consultant in these Chapter 11 Cases.

5. Towers Watson provided actuarial services to Mr. Austern in these Chapter 11 Cases from October 29, 2004 until his death on May 16, 2013.

6. Following Mr. Austern's death, at the Debtors' request, the Bankruptcy Court appointed Mr. Frankel as the successor FCR.

### Towers Watson's Qualifications

7. Towers Watson is a global professional services company, which provides, among other things, global actuarial and management consulting services and advice on risk financing and self-insurance. I, and other actuarial consultants at Towers Watson, have extensive experience and knowledge in providing actuarial consulting services to a variety of clients,

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Application.

particularly with respect to asbestos-related and other mass tort claims.

8. In addition, Towers Watson has a wealth of experience and knowledge in providing expert consultation and advice regarding the estimation of liabilities for present and future asbestos claims and the establishment of payment percentages for asbestos trusts.

9. Prior to Mr. Austern's death, my colleagues and I worked closely with Mr. Austern and his bankruptcy counsel to provide actuarial consulting services in the Debtors' Chapter 11 Cases. For example, in connection with the estimation of the Debtors' aggregate asbestos personal injury liabilities, I, along with my colleagues at Towers Watson, analyzed the Debtors' pre-petition claims database and developed an independent estimate of the Debtors' present and future asbestos personal injury liabilities. I also assisted with the preparation of an expert report regarding our estimate and analyzed expert reports submitted on behalf of the Debtors and the Asbestos PI Committee. In addition, prior to Mr. Austern's death, my colleagues and I had begun analyzing various issues related to estimating a payment percentage for the PI Trust.

10. Given Towers Watson's many years of providing actuarial consulting services to Mr. Austern in these Chapter 11 Cases, I am intimately familiar with the Debtors' pre-petition asbestos personal injury claims history, including, for example, pre-petition settlements, judgments and dismissals. I am also familiar with the database compiled by Rust Consulting Co. in connection with the tabulation of responses to the Debtors' asbestos personal injury questionnaire and proofs of claim filed by certain claimants in these Chapter 11 Cases. I also have an understanding of the Debtors' asbestos-containing products, including the Debtors' activities in Libby, Montana, and a deep knowledge of the trends associated with filing asbestos personal injury claims against solvent and insolvent defendants.

11. In addition, Towers Watson has extensive experience and knowledge in providing actuarial consulting services to a variety of clients, particularly with respect to asbestos-related and other mass tort claims. As a result of this work, I, and other professionals at Towers Watson, are familiar with the concerns and issues important to the FCR and to the asbestos personal injury claimants who may assert claims or demands in the future.

12. I believe that the continued engagement of Towers Watson, which provided actuarial consulting services to Mr. Austern in these Chapter 11 Cases since 2004, will provide the FCR with the most efficient and effective services, allowing Mr. Frankel to seamlessly succeed Mr. Austern in his duties and responsibilities as the FCR.

## Scope of Towers Watson's Retention

13. On November 8, 2013, Towers Watson and the FCR entered in to an engagement letter, attached hereto as **Exhibit 1** (the "Engagement Letter"), which provides that, subject to Court approval, Towers Watson will render the following services to the FCR in these Chapter 11 Cases:

- Provide analyses and estimations of payment percentages for the PI Trust under various scenarios of projected future claims and assumptions regarding the PI Trust operating expenses and assets;

- Any other tasks mutually agreed upon by Towers Watson and the FCR.

14. Subject to approval of this Application, Towers Watson is willing to act on behalf of, and render such services to, the FCR, pursuant to the terms and conditions set forth in the Engagement Letter.

## Disinterestedness of Towers Watson

15. In 2004, in connection with Towers Watson's retention and employment in these Chapter 11 Cases by Mr. Austern, I understand that employees at Towers Watson undertook

various steps to determine whether any conflicts of interest existed that would have precluded Towers Watson from serving as the actuarial consultant to Mr. Austern and to determine whether any connections existed that required disclosure. In connection therewith, Towers Watson filed an initial declaration and two supplemental declarations pursuant to Rules 2014 and 5002 of the Bankruptcy Rules, which are incorporated herein by reference. [Dkt. Nos. 6795, 22619, and 24415].

16. In order to prepare this Declaration, I (and other employees at Towers Watson at my direction) reviewed Towers Watson's client database to determine, among other things, (a) whether Towers Watson already provides services to any other client in connection with the proposed matter, (b) whether Towers Watson already provides services to any other client in a capacity that may be adverse to the proposed client, or where the proposed services might be adverse to the interest of such other client, and (c) whether Towers Watson has any connections with the Debtors, their creditors and other parties identified to me as parties in interest.

17. I (and other employees at Towers Watson at my direction) conducted this review based upon a list of parties (the "Listed Parties"), which includes the Debtors and other parties in interest and their respective attorneys and professionals who have entered their appearances in these Chapter 11 Cases. Attached hereto as **Exhibit 2** is the current list of Listed Parties, which was originally provided by the Debtors and has been updated by Orrick as additional parties in interest have entered their appearances, or otherwise become known to Orrick, in these Chapter 11 Cases.

18. I instructed the employees responsible for maintaining Towers Watson's computerized client database to review such database with a view toward determining whether Towers Watson has any reported connections with any of the Listed Parties. As a result of this

process, Towers Watson makes the following disclosures, in addition to those contained in the Towers Watson Declarations. I have included these disclosures in my Declaration out of an abundance of caution, and not because I believe the matters set forth herein are necessarily within the scope of Bankruptcy Rule 2014:

a. It is my understanding that Towers Watson currently provides employee compensation and benefits counseling services to the Debtors in these Chapter 11 cases. The services Towers Watson proposes to provide to the FCR are completely unrelated to employee compensation and benefits matters.

b. As part of its practice, Towers Watson provides various services in cases, proceedings and transactions throughout the United States involving many different parties, and works together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent the Debtors, creditors or parties in interest in these Chapter 11 cases. To the best of my knowledge, these services are completely unrelated to the services Towers Watson proposes to provide to the FCR.

c. It is my understanding that EMB Consultancy ("EMB"), a company acquired by Towers Watson in 2011, performed certain services relating to the evaluation of the Debtors' asbestos liabilities to assist certain insurance companies in connection with negotiations with the Debtors. These services occurred prior to Towers Watson's acquisition of EMB. None of the former EMB employees involved in that matter will provide services to the FCR in these Chapter 11 Cases.

19. As far as I am able to ascertain and to the best of my knowledge, and except as otherwise set forth herein and in the Towers Watson Declarations, Towers Watson does not hold or represent any interest adverse to the FCR with respect to the matters on which Towers Watson is to be employed, and has no connections with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee with respect to the matters on which Towers Watson is to be employed.  Towers Watson may have rendered or may be rendering services to certain of such parties, or may become involved in matters unrelated to these Chapter 11 Cases in which such parties, or attorneys or accountants for such parties, were, are or become, involved.  Towers Watson also may have or represent interests adverse to such creditors or parties in interest in matters unrelated to these Chapter 11 Cases.

20. In addition to the foregoing, Towers Watson's professionals may have business associations with, professional, social or familial relationships with, or interest aligned with or adverse to, creditors or parties in interest, or their attorneys, accountants or advisors.  As part of its practice, Towers Watson is involved in, and works together in, matters throughout the world involving many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these Chapter 11 Cases.  As far as I have been able to ascertain, none of these associations, relationships or interests have any connection to the Debtors or these Chapter 11 Cases.

21. Neither I, nor, to the best of my knowledge, any Towers Watson professional who is proposed to work on this matter, is related to any United States District Judge or United States

Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee of that office.

22. Neither I, nor, to the best of my knowledge, Towers Watson, is a creditor,[2] equity security holder or an insider of the Debtors or their estates, and is not and was not, within two years before the date of filing of these Chapter 11 Cases, a director, officer, or employee of the Debtors. None of the representations described above or in the Towers Watson Declarations are materially adverse to the interests of the Debtors, their estates, any class of creditors or equity security holders or future asbestos claimants. Thus, Towers Watson is disinterested as that term is defined in section 101(14) of the Bankruptcy Code and may act as the actuarial consultant to the FCR.

23. Neither I, nor, to my knowledge, Towers Watson, directly holds publicly traded securities of W. R. Grace & Co. Employees of Towers Watson may hold such publicly traded securities individually (whether through mutual fund holdings or otherwise). To my knowledge, no employee of Towers Watson serves as an officer or director of any of the Debtors. Individual employees of Towers Watson may directly or indirectly hold publicly traded securities of one or more of the Debtors' creditors and other parties in interest. No such holdings will affect Towers Watson's ability to provide actuarial consulting services to the FCR in these Chapter 11 Cases.

24. Towers Watson has made reasonable efforts to discover and disclose the existence of any conflict of interest or connections based upon the information available to Towers Watson. Towers Watson is unable to state, however, whether one or more of its clients or their

---

[2] As described in paragraph 29 below, Towers Watson presently has an administrative claim for amounts due and owing in connection with its provision of actuarial services to Mr. Austern in April 2013. I am advised that this administrative expense claim does not render Towers Watson a creditor of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

affiliates that has not been identified by the Debtors or has not entered an appearance in these Chapter 11 Cases holds a claim or interest, or otherwise is a party in interest in these Chapter 11 Cases.

**Professional Compensation**

25. Pursuant to the Engagement Letter, Towers Watson and the FCR have agreed that, subject to Court approval, Towers Watson will be compensated for services rendered to Mr. Frankel in these Chapter 11 Cases on an hourly basis. Towers Watson intends to seek reimbursement for actual and necessary expenses incurred, as described below.

26. I will serve as the lead consultant to the FCR for this engagement. My current hourly rate is $515. The current hourly rates for other Towers Watson professionals expected to provide services to the FCR are $575 for Steven Lin (senior consultant), $630 for Sandra Santomenno (senior consultant), and range from $440 to $575 for other consultants, and $290 to $415 for analysts. Towers Watson reserves the right to modify these hourly rates from time to time following notice to the FCR.

27. As Towers Watson has done in connection with the services it rendered to Mr. Austern, Towers Watson intends to apply for compensation for services rendered to Mr. Frankel in these Chapter 11 Cases and for reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court, including the Administrative Compensation Order, and the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases. Towers Watson has agreed to accept as compensation such sums as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

28. I understand that, if the Application is granted, compensation, including professional fees and reimbursement of expenses, shall be payable to Towers Watson from the Debtors' estates, subject to approval by the Court and subject to the Administrative Compensation Order, the guidelines established by the Fee Auditor appointed in these Chapter 11 Cases, and any other applicable orders of this Court.

29. Towers Watson's books and records reflect that, in connection with providing actuarial consulting services to Mr. Austern, Towers Watson has received $3,642,625.00 in Court-approved fees.[3]  Towers Watson has filed its Twenty-Ninth Interim Fee Application for the time period April 2013 through June 30, 2013, which includes $1,551.50 in fees for services rendered to Mr. Austern in April 2013, which amounts remain due and owing from the Debtors to Towers Watson.

30. For purposes of efficiency, Towers Watson asks that, if the Application is granted, it be permitted to file a single consolidated final fee application at the end of these Chapter 11 Cases, which will include all of the fees and expenses incurred by Towers Watson in connection with providing actuarial consulting services to Mr. Austern from 2004 through May 16, 2013, and in connection providing actuarial consulting services to Mr. Frankel from November 15, 2013 through and including the effective date of a plan of reorganization. The proposed Order attached hereto as Exhibit A so provides.

31. Other than as set forth herein, no arrangement is proposed between the FCR and Towers Watson for compensation to be paid in these Chapter 11 Cases.

---

[3] See Orders granting quarterly fee applications, Dkt. Nos. 12121, 12660, 13298, 14069, 15044, 16105, 16916, 17629, 18261, 18989, 19663, 20283, 21173, 22354, 23352, 23996, 24470, 25397, 25905, 26644, 28705, 30036, 30440, 30907.

32. Towers Watson has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Section 504(b)(1) of the Bankruptcy Code.

\* \* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

*/s/ Jeffrey Kimble*
Jeffrey Kimble

Executed on this 14th day of November 2013