# EXHIBIT 1 TO
# KIMBLE DECLARATION:

# ENGAGEMENT LETTER

TOWERS WATSON 

Russel L. Sutter, FCAS, MAAA
Senior Consultant

T +1 314 719 5900
D +1 314 719 5834
F +1 314 719 5853

101 South Hanley
St. Louis, MO 63105-3411

russ.sutter@towerswatson.com
towerswatson.com

November 8, 2013

Mr. Roger Frankel
Future Claimants Representative
  For W.R. Grace & Company
c/o Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706

Dear Roger:

**Statement of Work – Engagement of Towers Watson for Consulting Services**

This letter agreement and the Terms & Conditions contained in Attachment 1 to this agreement (collectively, the "Agreement") will confirm the terms of the engagement of the Towers Watson entity identified below or any of its affiliates (collectively, "Towers Watson," "we" or "us") by Roger Frankel, the Future Claimants' Representative (the "FCR" or "you") for W.R. Grace & Co. and its debtor affiliates (collectively, "Grace"). At your direction, we will work with your counsel, Orrick, Herrington, and Sutcliffe LLP ("Orrick") in order to assist Orrick in providing advice to you.

## Scope of Services

Towers Watson will provide consulting services as requested by the FCR and Orrick. We understand that the primary focus of our work will involve estimating payment percentages of the W.R. Grace Asbestos Personal Injury Trust (the "Trust") under various scenarios of projected future claims and assumptions regarding Trust operating expenses and assets. At your direction, we will prepare a final work product, which may be updated or amended from time to time, documenting our analysis.

Jeff Kimble will serve as the leader of this engagement and will have responsibility for its overall success. Steve Lin and Sandy Santomenno, other senior members of Towers Watson's asbestos team, will assist by either working directly on this engagement or in serving in a peer review capacity. Other Towers Watson personnel may assist with this engagement as needed.

We will provide estimates of expected fees and timing for each project requested by the FCR and Orrick, prior to commencing the work.

Please note that this Agreement does not contemplate that Towers Watson will provide expert witness testimony.

Towers Watson Delaware Inc.

**TOWERS WATSON** 

Mr. Roger Frankel
November 8, 2013

## Terms and Conditions of Engagement

The services described in this Agreement and any other services that Towers Watson provides to the FCR will be provided subject to this Agreement.

We are aware that Grace is currently operating under Chapter 11 bankruptcy protection, and therefore our engagement is subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). We ask that your counsel cooperate with us in preparing and filing all appropriate documentation for the required Bankruptcy Court approval of our services.  Upon the execution of this Agreement and the filing of all necessary documentation with the Bankruptcy Court, we will commence work.

## Fees and Expense

We will perform the services on a "time and expenses" basis as described in the Terms & Conditions. The current hourly rates for the individuals that will assist with this engagement are as follows:

- Jeff Kimble            $515

- Steven Lin            $575

- Sandra Santomenno    $630

- Other Consultants    $440 – $575

- Other Analysts        $290 – $415

We reserve the right to modify these rates from time to time following notice to you.

If this Agreement accurately describes the terms of our engagement, please sign and return this letter and the Terms & Conditions (Attachment 1) to Jeff Kimble.

\*        \*        \*        \*        \*

**TOWERS WATSON** 

Mr. Roger Frankel
November 8, 2013

Towers Watson appreciates the opportunity to be of service to the FCR and Orrick. If you have any questions now or during the course of our engagement, please contact Jeff Kimble at 314 719 5836.

Very truly yours,

Signed by and on behalf of:
**TOWERS WATSON DELAWARE INC.**

By: _____

Print Name:   Russel L. Sutter, FCAS, MAAA

Print Title:          Senior Consultant

Date:              November 8, 2013

and

By: _____

Print Name:   Jeffrey D. Kimble, ACAS, MAAA

Print Title:          Consultant

Date:              November 8, 2013


Accepted and agreed on behalf of:

**ROGER FRANKEL, in his capacity**
**As Future Claimants' Representative for**
**W.R. Grace & Co., and its debtor affiliates**

By: _____

Print Name:  ROGER FRANKEL

Print Title: Future Claimants Representative

Date:  11 — 14 — 13


Attachments:  Attachment 1 (Terms & Conditions)

**TOWERS WATSON**                                                         Attachment 1

### Towers Watson and Roger Frankel, in his capacity as Future Claimants' Representative for W.R. Grace & Co., and its debtor affiliates

### Terms & Conditions

1. **Parties and Application.** These terms and conditions ("terms") cover all services, advice, work product and other deliverables (collectively, the "services") provided by the Towers Watson entity identified below or any of its affiliates (collectively, "Towers Watson", "we", "our" or "us") to Roger Frankel, in his capacity as the Future Claimants' Representative for W.R. Grace & Co., et al., ( "you" or "your"), and his counsel.

   The scope of our services for this engagement (the "statement of work") will be agreed by you and us in written communications and shall, unless provided otherwise, incorporate these terms.

2. **Fees.** We will charge on an hourly rate basis for the services provided under the Agreement based upon the current hourly rates provided in the Agreement. We reserve the right to modify these rates from time to time following notice to you. We will also charge for expenses, at cost, incurred by us in connection with the performance of our services.

   At the end of each month during which we perform these services, we will bill you for all charges accrued for the month. We will apply for compensation for services rendered and reimbursement of actual and necessary expenses incurred, in accordance with the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Bankruptcy Court's local rules, the applicable Bankruptcy Court orders, including the Administrative Order Under 11 U.S.C §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated May 3, 2001, and the Amended Administrative Order Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, dated April 17, 2002, and the guidelines established by the fee auditor appointed in the W.R. Grace cases. We agree to accept as compensation such sums as may be allowed by the Bankruptcy Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses. We recognize and agree that, subject to Bankruptcy Court approval, Grace shall be solely responsible for payment of our fees and expenses, and any other fees and costs incurred under this Agreement, including, for example, any fees and costs incurred pursuant to paragraph 8 below.

3. **Our Responsibilities.** We shall provide the services in a professional manner with reasonable skill and care. We will assign to this engagement the team members of our staff with adequate education, training and experience to perform the tasks assigned to them. We will use reasonable endeavors to meet any timetable that we may agree with you.

   The work product we deliver to you in connection with the performance of the services will not infringe any intellectual property right of any third party. Unless otherwise expressly agreed in writing, we do not accept any fiduciary or trust responsibilities or liability in connection with the performance of the services. We do not provide legal, accounting or tax advice.

4. **Your Responsibilities.** You will timely provide us with the documentation, information, access to your personnel and cooperation we reasonably require to provide the services. Any delay or failure to provide materials, information or cooperation may result in a revision to any agreed timetable and/or, if we need to do additional work as a result, in additional fees being charged. We will rely on the documentation and information provided to us by you or your representatives and do not take responsibility for verifying the accuracy or completeness of it. You may rely only upon our final work product and not on any drafts or oral statements made by us in the course of the services.

TOWERS WATSON                                                     Attachment 1

5. **Intellectual Property Rights and Work Product.** You shall retain ownership of all original data and materials, and the intellectual property rights in that data, provided to us by you or your representatives. You will have the right to use, reproduce and adapt the copies of the work product delivered to you for internal purposes within your organization. We shall retain the intellectual property rights in such work product, and the skills, know-how and methodologies used or acquired by us during the course of providing any services.

The services we perform, including the work product we deliver to you and your counsel, are provided solely for the intended purpose. We understand that in connection with this engagement, you have asked us to prepare a final work product, which may be updated or amended from time to time, that you and your counsel may, at your discretion, provide to other parties for the purpose of negotiating and setting a payment percentage for the W.R. Grace Asbestos Personal Injury Trust. You may distribute our final work product to such parties, provided that you provide us prior written notice of the parties to whom you intend to distribute our final work product and inform each such party of these terms and the applicable statement of work as if it were a party to them.

You shall not refer to us or include any of our work product in any shareholder communication or in any offering materials (or fairness opinion provided by your professional advisers) prepared in connection with the public offering or private placement of any security, unless otherwise agreed in writing.

6. **Confidentiality and Data Privacy.** Each party shall protect all confidential information which the other party provides to it (whether orally, in writing or in any other form) using the same standards as the recipient applies to its own comparable confidential information, but in no event less than reasonable measures.

Each party's obligations will not apply to information: (i) already known to it at the time of disclosure; (ii) in the public domain or publicly available; (iii) available from a third party who is under no such obligation of confidentiality; or (iv) independently developed by it. Each party may disclose confidential information to its legal advisers to protect its own legitimate interests and to comply with any legal or regulatory requirements. If any court, regulatory authority, professional body or legal process requires the recipient to disclose information covered by this confidentiality obligation, then the recipient may make any such disclosure; provided that the recipient will, if permitted by law, advise the other party promptly of any such requirement and cooperate, at such other party's expense, subject to paragraph 2 above, in responding to it.

We are a global business and in performing the services we may pass Personal Data within our global network of offices and affiliates and to providers of IT outsourcing who will be subject to appropriate data protection standards. Irrespective of where we receive or hold individually identifiable personal information ("Personal Data") on your behalf, we confirm that, acting as data processor we will take appropriate technical, physical and organizational/administrative measures to protect that Personal Data against accidental or unlawful destruction or accidental loss or unauthorized alteration, disclosure or access. We will only use that Personal Data for the purposes of providing services to you or for other reasonable purposes which are related to the services we provide, unless you instruct us otherwise. You and Towers Watson shall each comply with the provisions and obligations imposed on each of us by applicable data privacy legislation and regulations.

7. **Limitation of Liability.** If our services do not conform to the requirements agreed between us please notify us promptly and we shall re-perform any non-conforming services at no additional charge or, at our option, refund the portion of the fees paid with respect to such services.

**TOWERS WATSON** 

If re-performance of the services or refund of the applicable fees would not provide an adequate remedy for damages, the aggregate liability of Towers Watson and its employees, directors, officers, agents and subcontractors (the "related persons") to you whether in contract, tort (including negligence), breach of statutory duty or otherwise for any losses arising from or in any way connected with our services shall not exceed in aggregate the greater of (a) $250,000 or (b) the total amount of the fees paid to us for the services provided pursuant to that statement of work during any 12-month period beginning with the commencement of that statement of work, unless otherwise agreed in writing. Nothing in these terms shall exclude or limit the liability of Towers Watson or our related persons in the case of: (a) death or personal injury resulting from our or our related person's negligence; (b) willful misconduct; (c) fraud; or (d) other liability to the extent that the same may not be excluded or limited as a matter of law. In no event shall we or any of our related persons or affiliates be liable for any incidental, special, punitive, or consequential damages of any kind (including, without limitation, loss of income, loss of profits, or other pecuniary loss).

Where we are jointly liable to you with another party, we shall to the extent permitted by law only be liable for those losses that correspond directly with our share of responsibility for the losses in question.

8. **Third Parties.** These terms only create rights enforceable by you and do not create any rights enforceable by any other party.

We accept no responsibility for any consequences arising from any third party relying on our work product. If we agree to provide our work product to a third party, you are responsible for ensuring that the third party is made aware of the fact that they are not entitled to rely upon it.

You agree to reimburse us for all costs (including reasonable attorney's fees) that we incur in responding to any requests or demands from third parties, pursuant to legal process or otherwise, for data or information related to the services provided to you, subject to paragraph 2 above.

9. **Termination.** Either party may terminate the Agreement on 30 days' written notice to the other party. We shall be entitled to be paid for services rendered up to the date of any such termination, and for expenses incurred, subject to paragraph 2 above. Any of these terms that would be reasonably intended to apply after termination will do so.

The Agreement shall terminate automatically, without further action by you or us, on the effective date of a plan of reorganization for Grace.

10. **Miscellaneous.** These terms, together with the statement of work, set out the entire agreement between you and us concerning the provision of the services. Any modifications of or amendments to these terms or a change to the services must be in writing and agreed by the parties. Should any of these terms be declared void, illegal or otherwise unenforceable, the remainder shall survive unaffected.

Neither party may assign or delegate any of its rights or obligations to any third party without the prior written consent of the other party. Notwithstanding the foregoing either party may assign or delegate any of its rights and obligations to an affiliate. We reserve the right to employ subcontractors to assist us in providing services and to pass to them any information and materials they need to perform their work. Where we use affiliates or subcontractors to provide the services to you, we will remain responsible for the provision of the services to you.

11. **Dispute Resolution.** The parties agree to work in good faith to resolve any disputes that may arise. If we cannot resolve a dispute, the matter will be submitted to nonbinding mediation before either party

**TOWERS WATSON**                                           Attachment 1

pursues other remedies. If the governing law is any jurisdiction other than California, the parties hereby waive any right they may have to demand a jury trial.

12. **Governing Law.** Any controversy, dispute or claim of any kind between the parties shall be governed by and interpreted in accordance with the laws of Delaware, without regard to any provisions governing conflicts of laws. We and you agree that the exclusive jurisdiction and the proper venue for any action brought hereunder will be the Bankruptcy Court or any other court with jurisdiction over Grace's bankruptcy proceeding, or if any such court declines to exercise such jurisdiction, then the proper venue for any action brought hereunder will be the courts of the State of Delaware or federal courts sitting there.

Signed by and on behalf of:
**TOWERS WATSON DELAWARE INC.**

By: _____

Print Name:  Russel L. Sutter, FCAS, MAAA

Print Title:  Senior Consultant

Date:  November 8, 2013

and

By: _____

Print Name:  Jeffrey D. Kimble, ACAS, MAAA

Print Title:  Consultant

Date:  November 8, 2013

Accepted and agreed on behalf of:

**ROGER FRANKEL, in his capacity**
**As Future Claimants' Representative for**
**W.R. Grace & Co., and its debtor affiliates**

By: _____

Print Name:  Roger Frankel

Print Title:  Future Claimants Representative

Date:  11/14/13