IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KJC) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hearing Date: December 18, 2013, at 11:00 a.m. |
| | ) Objection Deadline: December 11, 2013 |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE DEBTORS TO MAKE A CONTRIBUTION TO QUALIFIED SETTLEMENT FUNDS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this motion (this "Motion") requesting the Court enter an order, substantially in the form attached hereto as Exhibit A (the "Order"), approving the establishment of a qualified settlement fund (the "2013 QSF") and authorizing, but not requiring, them to contribute in their sole discretion up to $250 million (the "Settlement Cash") to the 2013 QSF. The Settlement Cash will be in addition to the approximately $15 million (the "2012 Contribution") that Grace contributed in 2012 to the qualified settlement fund (the "2012 QSF") authorized pursuant to this

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company and H-G Coal Company.

Court's *Order Approving a Qualified Settlement Fund and Related Relief* [Docket no. 30027], dated December 11, 2012 (the "2012 QSF Order," a copy of which is attached hereto as <u>Exhibit B</u>).[2] The Debtors also request authority for the 2012 QSF to contribute the full amount of the 2012 Contribution to the 2013 QSF.[3]

In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are sections 105(a), 345 and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), section 468B of title 26 of the United States Code (the "Internal Revenue Code" or "IRC"), the federal regulations promulgated thereunder (the "Treasury Regulations"), including 26 C.F.R. §§ 1.468B-1 through 5, Fed. R. Bankr. P. 2002(a)(2) and Del. Bankr. L.R. 2002-1(b).

## BACKGROUND

3. The Debtors anticipate emerging from chapter 11 in 2014 pursuant to the Plan, which this Court confirmed in January 2011. As discussed in more detail in the 2012 QSF Motion, the Plan obligates the Debtors to contribute certain Asbestos PI Trust Assets to the

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the 2012 QSF Order, the *Debtors' Motion for Entry of an Order Approving a Qualified Settlement Fund and Related Relief*, dated November 9, 2013 [Docket no. 29878] (the "2012 QSF Motion") or the *First Amended Joint Plan of Reorganization in their Chapter 11 Cases* [Docket no. 26368], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

[3] The 2013 QSF will contain up to $265 million as of year's end, assuming that the Debtors contribute the entire amount of $250 million of Settlement Cash and the 2012 QSF contributes the $15 million 2012 Contribution to the 2013 QSF.

Asbestos PI Trust on the Effective Date. Plan, § 7.2.2. One of those Assets is "$250 million in Cash plus interest thereon from January 12, 2009 until (and including) the Effective Date." *Id.*, § 1.1.47(a). Grace will also make additional payments to the Asbestos PI Trust in an amount equal to the Asbestos PD Initial Payment. *Id.*, § 1.1.25 (definition of "Asbestos PD Initial Payment"); *Id.*, § 7.2.2(a)(ii) (Grace's additional funding of the Asbestos PI Trust of "an amount in Cash equal to the Asbestos PD Initial Payment"). Grace anticipates that the total amount of these payments will well exceed the Settlement Cash amount plus the amount currently in the 2012 QSF.

4.  As described in the Debtors' "equity trading" motion, earlier in these Chapter 11 Cases the Debtors had significant operating losses for tax purposes ("NOLs"), estimated on December 31, 2003, to be approximately $348 million.[4] As that motion stated, "The Debtors' NOLs are an extremely valuable asset of the Debtors' estates because under the Internal Revenue Code . . . the Debtors can carry forward their NOLs to offset their future taxable income . . . and thereby reduce their future aggregate tax obligations."[5] The Debtors' NOLs have now been substantially utilized, and thus there are not significant NOLs available to reduce the Debtors' taxable income in 2013.

5.  In November 2012, the Debtors filed the 2012 QSF Motion, requesting authority to contribute up to $100 million of funds to the 2012 QSF prior to the end of 2012. The Court authorized that contribution in the 2012 QSF Order. Grace subsequently contributed the 2012 Contribution of $15 million to the 2012 QSF's segregated account. The Debtors intend for the

---

[4] *Debtors' Emergency Motion for Entry of an Interim Order Pursuant to Sections 105( a), 362(a)(3) and 541 of the Bankruptcy Code (A) Limiting Certain Transfers of Equity Securities of the Debtors and (B) Approving Related Notice Procedures* [Docket No. 6681], at ¶¶ 6, 8.

[5] *Id.* at ¶ 7.

2012 QSF to be authorized, but not directed, to contribute the 2012 Contribution to the 2013 QSF.

6. By establishing the 2013 QSF as a separate "qualified settlement fund" before the end of 2013, the Debtors can receive a tax deduction in 2013.[6] Amounts transferred to the 2013 QSF (and the 2012 QSF) will ultimately be transferred to the Asbestos PI Trust on the Effective Date pursuant to the Plan. Therefore, the Debtors seek authority to contribute up to $250 million of Settlement Cash to a segregated bank account that would qualify as a "qualified settlement fund" under federal tax law, the 2013 QSF, prior to December 31, 2013.

## RELIEF REQUESTED

7. By this Motion, the Debtors respectfully request the Court enter the Order, substantially in the form attached hereto as Exhibit A, which: (a) approves the 2013 QSF; (b) authorizes, but does not direct, the Debtors to (i) open a bank account segregated from other assets of the Debtors (the "2013 Segregated Account"), and (ii) transfer some or all of the Settlement Cash into the 2013 Segregated Account; (c) further authorizes, but does not direct, the 2012 QSF to contribute the 2012 Contribution to the 2013 QSF; and (d) provides that this Court take continuing jurisdiction over the 2013 QSF and the relief requested herein.

## ANALYSIS

### I. THE INTERNAL REVENUE CODE AUTHORIZES THE ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

8. As discussed in the 2012 QSF Motion, "qualified settlement funds" are authorized by section 468B of the Internal Revenue Code and the Treasury Regulations promulgated

---

[6] This contribution could generate a tax deduction in 2013 worth up to $93.75 million if the full $250 million of Settlement Cash was contributed to the 2013 QSF in 2013, based upon the Debtors' estimated federal and state marginal tax rate of 37.5%.

thereunder.[7] Section 468B was enacted as part of the Tax Reform Act of 1986, and was designed as a mechanism to encourage the settlement of certain types of claims.[8] The purpose of a qualified settlement fund is to marshal assets subject to certain types of claims and facilitate the distribution of those assets to claimants. Once the fund has distributed the assets, it goes out of existence.[9]

9.   The Treasury Regulations require qualified settlement funds to satisfy three requirements, each of which the 2013 QSF clearly meets:

   a. *First*, the QSF must be "established pursuant to an order of, or [be] approved by, the United States, any state . . . or any agency or instrumentality (including a court of law) of any of the foregoing and [be] subject to the continuing jurisdiction of that governmental authority. 26 C.F.R. § 1.468B-1(c)(1). Here, this Court's Order would establish the 2013 QSF.

   b. *Second*, the QSF must be "established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability arising from a tort, breach of contract, or violation of the law." 26 C.F.R. § 1.468B-1(c)(2). Here, the 2013 QSF are being established to resolve the Asbestos PI Claims, which generally sound in tort.

   c. *Third*, the assets transferred "must be segregated from the other assets of the transferor." 26 C.F.R. § 1.468B-1(c)(3). As discussed above, the Debtors will place the Settlement Cash in the 2013 Segregated Account, which are segregated from the Debtors' other assets.

The 2013 QSF thus meet each of those requirements.

10.   Multiple benefits will accrue to the Debtors by establishment of the 2013 QSF and, therefore, approval of the 2013 QSF is in the best interests of the Debtors and their estates. Most important, the Debtors ordinarily would not be able to claim a tax deduction for the

---

[7] 26 U.S.C. § 468B; 26 C.F.R. §§ 1.468B–1–5 (attached as Group Exhibit B).

[8] Timothy O. Beppler, Christopher M. Reimer, *Qualified Settlement Funds and Section 468B*, WYOMING LAWYER, June 2009, at 22.

[9] Robert W. Wood, 738 Tax Management, QUALIFIED SETTLEMENT FUNDS AND SECTION 468B (2012), at A-1.

Settlement Cash until the funds were actually transferred to the Asbestos PI Trust, which would not occur until the Effective Date at some future time. By establishing the 2013 QSF in 2013, the Debtors may claim a deduction at the time the assets are transferred to the 2013 QSF in 2013, regardless of when the Settlement Cash is actually received by the Asbestos PI Trust.[10] Based on the Debtors' estimated 37.5% marginal federal and state tax rate, this would result in up to $93.75 million in federal and state tax savings. Because on the Effective Date the Settlement Cash will simply be transferred from the 2013 Segregated Account to the Asbestos PI Trust, the mechanics of the Trust or the Plan will not be affected.

11. The Settlement Cash will revert to the Debtors in the event the Third Circuit reverses or otherwise invalidates the Plan. The Regulations provide for the transferor (the Debtors) to have a "right of reversion" if a court order resolving claims is reversed, in which case the funds in the 2013 Segregated Account would be returned to the Debtors. If such a Third Circuit action took place in a future year, the Debtors would recognize the returned funds as income in the year in which the funds were returned.[11]

12. For these reasons, transferring some or all of the Settlement Cash in the Debtors' sole discretion to the 2013 Segregated Account is for these reasons clearly in the Debtors' best interests, as well as the best interests of their estates.

II. **THE COURT SHOULD APPROVE THE ESTABLISHMENT OF THE 2013 QSF AND THE TRANSFER IN 2013 OF SOME OR ALL OF THE SETTLEMENT CASH IN THE DEBTORS' SOLE DISCRETION**

13. This court may authorize the Debtors to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the Debtors' sound

---

[10] *See* 26 C.F.R. §§ 1.468B–3(c), (c)(2), (f), (g).

[11] 26 C.F.R. §1.468B–3(c), (f).

business judgment and when the use of the property is proposed in good faith and for a valid business purpose. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("a debtor's decision must be supported by an articulated business justification"); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997). Once a debtor has articulated such a valid business purpose, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. *See In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). A party-in-interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

14.    For the reasons discussed in the 2012 QSF Motion, this Court has authority to enter the Order. The Debtors respectfully submit that it should do so, because using some or all of the Settlement Cash to fund the 2013 QSF is in the Debtors' best interests and those of their estates and the proposed QSF meets the standards set forth in the Treasury Regulations. Moreover, establishing the 2013 QSF is consistent with the Plan's provisions stating that the Asbestos PI Trust and Asbestos PD Trust shall be "qualified settlement funds." The 2013 QSF is also consistent with the section 524(g) trusts established as "qualified settlement funds" through plans approved in the past by this Court in other asbestos bankruptcy cases.[12] Finally, courts also

---

[12] *See, e.g., In re Federal-Mogul Global, Inc.*, No. 01-10578 (Bankr. D. Del. Nov. 8, 2007), [Docket No. 13674, Ex. A, Art. 4.2.1]; *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. Sept. 26, 2006) [Docket No. 19366, Ex. A, Art. 11.1]; *In re Armstrong World Indus.*, No. 00-04471 (Bankr. D. Del. Aug. 17, 2006) [Docket No. 9755, Ex. A, Art. 7.1]; *In re USG Corp.*, No. 01-02094 (Bankr. D. Del. June 15, 2006) [Docket No. 11688, Ex. A, Art.

routinely approve qualified settlement funds outside bankruptcy and agree to maintain jurisdiction over such funds with little discussion or controversy. *See, e.g. Commodity Futures Trading Commission v. Emerald Worldwide Holdings, Inc.*, CV03-8339 AHMEX, 2007 WL 2506456 at *2 (C.D. Cal. Aug. 9, 2007); *Cumberland Truck Equipment Co. v. Detroit Diesel Corp.*, 2:05-CV-74594, 2006 WL 3740984 at *2 (E.D. Mich. Dec. 1, 2006); *In re Electrical Carbon Prod Antitrust Litig.*, 447 F. Supp. 2d 389, 404, 415 (D.N.J. 2006); *Nichols v. Smithkline Beecham Corp.*, A-00-6222, 2005 WL 950616 at *30 (E.D. Penn. April 22, 2005); *In re Zyprexa Products Liability Litig.*, MDL1596, 2005 WL 2237771 at *1 (E.D.N.Y. Aug. 29, 2005).

## NO PREVIOUS MOTION

15.   No previous motion for the specific relief sought herein has been made to this or any other court.

## NOTICE

16.   Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) counsel to the L/C Facility Agent and L/C Issuers; (iii) counsel to JP Morgan Chase Bank N.A. as agent for the Debtors' prepetition lenders; (iv) counsel to each of the official committees appointed in these Chapter 11 Cases; (v) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) the Internal Revenue Service. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

**[remainder of this page is intentionally left blank]**

---

IV.E]; *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Feb. 6, 2006) [Docket No. 8225, Ex. A, Art. 5 .2(a)(ii)].

WHEREFORE the Debtors respectfully request the Court enter the Order, substantially in the form attached hereto as Exhibit A: (a) approving the establishment of the 2013 QSF; (b) (i) authorizing, but not directing, the Debtors to open the 2013 Segregated Account, and (ii) approving the transfer in the Debtors' sole discretion of some or all of the Settlement Cash to the 2013 Segregated Account; (c) authorizing, but not directing, the 2012 QSF to contribute the 2012 Contribution to the 2013 QSF; (d) providing that this Court take continuing jurisdiction over the 2013 QSF; and (e) granting such other relief as may be appropriate.

Dated:  November 22, 2013

KIRKLAND & ELLIS LLP
Adam Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession