## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: January 22, 2014, at 4:00 p.m** |
| | ) | **Hearing Date: January 29, 2014 at 10:00 a.m.** |

## DEBTORS' MOTION PURSUANT TO SECTIONS 105, 363, 1107 AND 1108 OF THE BANKRUPTCY CODE AND RULES 2002, 6004, 9014 AND 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AN ORDER APPROVING THE ADDENDUM TO THE AMENDED AND RESTATED SETTLEMENT AGREEMENT BETWEEN <u>W. R. GRACE & CO. AND HARPER INSURANCE LTD.</u>

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>")

hereby submit this motion (the "<u>Motion</u>") for entry of an order approving the Addendum to the

Amended and Restated Settlement Agreement (the "<u>Addendum</u>") by and between W. R. Grace

& Co. ("<u>Grace</u>") and Harper Insurance Ltd., formerly known as Turegum Insurance Company

(hereinafter referred to as "<u>Harper</u>"). A copy of the Addendum is attached hereto as **<u>Exhibit A</u>**.

In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc., Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc.), E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

**Jurisdiction**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this Motion is proper under 28 U.S.C. § 1408.

2.     The statutory predicates for this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure.

**Background**

3.     On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.     Harper, along with other underwriters doing business in the London insurance market that are not parties to the Agreement, severally subscribed to four policies of excess liability insurance (defined in the Agreement as the "Subject Policies")[2] that provide, or are alleged to provide, insurance coverage to Grace.  The Subject Policies were issued for the period June 30, 1977 to June 30, 1979.  The Subject Policies attach at excess layers ranging from $10 million to $25 million.  Harper's several share of the available remaining aggregate limits for the products/completed operations hazards under the Subject Policies total $1,446,153. Harper also severally subscribed to another excess liability policy issued to Grace for the period

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Agreement (as defined herein, paragraph 5 *infra*), or the Plan (as defined herein, paragraph 7 *infra*), as applicable.

July 17, 1974 to June 30, 1977 – Policy No. 74DD663C. The latter policy attaches at $100 million and has remaining products/completed operations aggregate limits of $1,426,500, but this policy is not the subject of the 2010 settlement described below.

5.     In May 2010, Grace and Harper entered into the Amended and Restated Settlement Agreement (the "Agreement"), executed on behalf of Grace on May 20, 2010, and on behalf of Harper on May 24, 2010, a copy of which is attached hereto as **Exhibit B**.

6.     On June 30, 2010, the Bankruptcy Court entered an Order Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rules 2002, 604, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure Approving the Amended and Restated Settlement Agreement Between W. R. Grace & Co. and Harper Insurance Ltd. (Dkt. 25010), a copy of which is attached hereto as **Exhibit C**.

7.     The First Amended Joint Plan of Reorganization (the "Plan") provides that Asbestos Insurance Rights, including rights to coverage under the Subject Policies, are to be transferred to the Trust, to be used to fund payment of Asbestos PI Claims. *See* Plan, Art. 7.2.2(d)(ii) and (iv); Plan Ex. 6 – Asbestos Insurance Transfer Agreement.

8.     The Agreement provides for a buy-out of certain of Harper's coverage obligations under the lower-layer Subject Policies at a settlement value that is within the range of Grace's settlements with its other insurers that have been approved by the Court. Harper remains obligated under a prior agreement for reimbursements to the Trust with respect to Policy No. 74DD663C that attaches at $100 million.

9.     The Agreement benefits the Debtors' estate by, among other things, converting Harper's obligation to make payments over time with respect to the Subject Policies, as claims are submitted by the Trust, to an obligation to make a lump sum payment to Grace of

One Million Two Hundred Twenty Six Thousand U.S. Dollars ($1,226,000.00) (the "Settlement Amount") within ten days of the Execution Date of the Agreement.  The Settlement Amount is to be held by Grace for the benefit of the Trust.  The immediate payment of this substantial sum, among other things, eliminates any collection risk and risk of disputes with respect to Harper's payments under the Subject Policies.

10.    In accordance with the Agreement, on or about June 3, 2010, Harper paid the Settlement Amount to Grace.  Since that time, Grace has held the Settlement Amount for the benefit of the Trust.

11.    The Agreement also includes a complete, mutual release of claims under the Subject Policies with respect to asbestos Bodily Injury Claims that fall within the products aggregate limit of the Subject Policies, as further defined in the Agreement.  The Agreement does not release Harper from claims for coverage for non-products asbestos-related claims.

12.    The Agreement further provides that if the Plan is confirmed, the Trust, at its own expense, will enforce the Asbestos PI Channeling Injunction with respect to Bodily Injury Claims, as defined, that constitute Asbestos PI Claims subject to the Asbestos PI Channeling Injunction that are asserted against Harper under the Subject Insurance Policies, provided, however, that the Trust's obligation in this respect ceases after it has spent a sum equivalent to the Settlement Amount.

13.    The Agreement further provides that if the Effective Date, as defined in the Plan, does not occur on or before December 31, 2013, the Agreement shall terminate.

14.    On January 31, 2011, the Bankruptcy Court confirmed the Plan.  (Dkt. 26154, 26155)  In a January 31, 2012, Memorandum Opinion and Order (Case No. 11-cv-00199-RLB, Dkt. 165 and 166), and a June 11, 2012, Amended Memorandum Opinion and Order (Dkt.

217 and 218), the District Court also confirmed the Plan. The United States Court of Appeal for the Third Circuit denied several appeals (Case No. 12-2807, Opinion dated 7/24/13; Case Nos. 12-1521, 12-2904, 12-2923, 12-3143, Opinions dated 9/4/13); one Third Circuit appeal remains pending (Case No. 12-2924).

15.    The Effective Date has not yet occurred and will not occur on or before December 31, 2013.

16.    Accordingly, the Parties have agreed to an Addendum to the Agreement, which provides that Section IX.A.4 of the Agreement is amended such that if the Effective Date, as defined in the Plan, does not occur on or before June 30, 2014, the Agreement shall terminate. A copy of the Addendum is attached hereto as Exhibit A.

### Relief Requested

17.    By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Addendum, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

### Basis for Relief

18.    This Court has statutory authority to authorize and approve the Debtors' entry into the Addendum pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate.

*See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

19.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a).   Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed compromise is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the compromise. *See Martin*, 91 F.3d at 393.

20.     The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established.   This standard includes consideration of the following four factors:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)

(citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  By its June 30, 2010 Order, the Court has already found that these standards are met in this case.  The Addendum merely ensures that the Agreement will not terminate due to the lack of occurrence of the Effective Date on or before December 31, 2013.

21.     For all of the foregoing reasons, the Debtors submit that the Addendum is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Addendum.

**Notice**

22.     Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Asbestos PI Future Claimants' Representative and counsel to the Asbestos PD Future Claimants' Representative; and (v) those parties that requested papers under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Addendum, and granting such other and further relief as the Court deems just and proper.

Dated:  December 18, 2013          KIRKLAND & ELLIS LLP
Adam Paul
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession