## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: January 29, 2014 at 10:00 a.m.** |
| | ) | **Objection Deadline:  January 13, 2014 at 4:00 p.m. (prevailing Eastern Time)** |
| | ) | |

## MOTION FOR ENTRY OF AN ORDER APPROVING AND AUTHORIZING IMPLEMENTATION OF THE SETTLEMENT AGREEMENT BETWEEN AND AMONG THE DEBTORS AND THE BANK LENDER GROUP

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby move the Court, pursuant to this motion (the "Motion"), for the entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the settlement

between and among the Debtors, on the one hand, and certain holders of claims under the Pre-

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

KE 28986604

petition Credit Facilities[2] (collectively, the "<u>Bank Lender Group</u>"),[3] on the other hand, as memorialized by that certain Settlement Agreement (the "<u>Settlement Agreement</u>"), attached hereto as **Exhibit B**, and granting related relief.

In support of this Motion, the Debtors respectfully state as follows:

**Preliminary Statement**

1.    The settlement described herein has enormous significance for the Debtors, their creditors and stakeholders.  After operating in chapter 11 for nearly thirteen years and litigating numerous appeals, the Debtors by this settlement have resolved the only remaining issue standing in the way of the Debtors' emergence from chapter 11 as healthy companies free of their massive prepetition asbestos liabilities. The Debtors' emergence from chapter 11 will benefit all of the Debtors' stakeholders, many of whom (including individuals with claims based

---

[2]    As defined in the Plan (as defined herein), "Pre-Petition Credit Facilities" mean (i) the Credit Agreement, dated as of May 14, 1998, among Grace-Conn., the Parent, the several banks from time to time parties thereto, the co-agents thereto, The Chase Manhattan Bank as administrative agent, and Chase Securities Inc. as arranger; and (ii) the 364-Day Credit Agreement, dated as of May 5, 1999, as amended by the First Amendment dated as of May 3, 2000, among Grace-Conn., the Parent, the several banks from time to time parties thereto, Bank of America National Trust and Savings Association as syndication agent, The Chase Manhattan Bank as administrative agent, Chase Securities Inc. as book manager, and First Union National Bank as documentation agent.

[3]    The Bank Lender Group includes the following institutions: Bank of America, N.A.; Glendon Capital Management LP (f/k/a Barclays Bank PLC); BBT Fund, L.P.; BBT Master Fund, L.P.; Caspian Capital Partners, L.P.; Caspian Select Credit Master Fund, Ltd.; Caspian Solitude Master Fund, L.P.; Consumer Program Administrators, Inc.; Farallon Capital Management LLC (as investment manager of AFC Investors Trust, BFC Investors Trust, CFC Investors Trust, EFC Investors Trust, HFC Investors Trust, MFC Investors Trust and VFC Investors Trust); Halcyon Loan Trading Fund LLC; HCN LP; HLF LP; HLTS Fund II LLP; Intermarket Corp.; JPMorgan Chase Bank, N.A.; LLT Ltd.; LMA SPC for and on behalf of the MAP98 Segregated Portfolio; Loeb Arbitrage Offshore Partners, Ltd.; Macquarie Bank Limited; Mariner LDC; MSD Credit Opportunity Master Fund, L.P.; Nomura Waterstone Market Neutral Fund; Oceana Master Fund Ltd.; OCP Investment Trust; Onex Debt Opportunity Fund, Ltd.; Onex Senior Credit II, LP; Onex Senior Credit Fund, L.P.; Pentwater Equity Opportunities Master Fund Ltd.; Prime Capital Master SPC, GOT WAT MAC Segregated Portfolio; PWCM Master Fund Ltd.; Royal Bank of Scotland, PLC; SOLA Ltd.; Solus Core Opportunities L.P.; Solus Core Opportunities Master Fund Ltd.; Taconic Master Fund 1.5 L.P.; Taconic Opportunity Master Fund L.P.; Thracia LLC; Ultra Master Ltd.; Visium Asset Management, LP; Waterstone Distressed Opportunities Fund, Ltd.; Waterstone Market Neutral Mac51, Ltd.; Waterstone Market Neutral Master Fund, Ltd.; Waterstone MF Fund, Ltd.; Waterstone Offshore AD Fund, Ltd.; and Waterstone Offshore ER Fund, Ltd., together with certain funds affiliated with or managed by such entities (collectively, the "<u>Bank Lender Group</u>." Other than HLTS Fund II LLP and Farallon Capital Management LLC, all of the current members of the Bank Lender Group were also members as of the filing of the Bank Lender Group's opening brief in the Third Circuit.

2

on asbestos liabilities) have been waiting over a decade to receive distributions. The Debtors are filing this Motion with the full support of all the Plan Proponents and respectfully request that this Court approve the settlement described herein, thereby allowing the Debtors to consummate the Plan and finally emerge from bankruptcy.

### Jurisdiction

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

5.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes as *In re W. R. Grace & Co.*, et al., *Debtors*, Case No. 01-1139 (the "Bankruptcy Case"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

6.      On March 28, 2003 the administrative agent under the Pre-petition Credit Facilities (the "Agent") timely filed Claim Nos. 9159 and 9168 (the "Proofs of Claim") in the Bankruptcy Case for amounts due under the Pre-Petition Credit Facilities. On June 13, 2008 the Debtors filed their *Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements Dated as of May 14, 1998 and May 5, 1999* [Docket No. 18922]. On May 19, 2009

3

the Bankruptcy Court issued its *Memorandum Opinion and Order with respect to Debtors'*
*Objection to the Unsecured Claims Asserted Under the Debtors' Credit Agreements Dated as of*
*May 14, 1998, and May 5, 1999* [Docket No. 21747] (the "Claims Order")

7.    On May 29, 2009 the Bank Lender Group filed its Notice of Appeal of the Claims
Order [Docket No. 21911] (the "Claims Order Appeal") which was docketed in the District
Court as Case No. 09-807.

8.    The Plan Proponents filed the *First Amended Joint Plan of Reorganization Under*
*Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of*
*Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the*
*Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket
No. 26368] (the "Plan").[4]

9.    On January 31, 2011, the Bankruptcy Court issued its *Memorandum Opinion*
*Regarding Objections to Confirmation of First Amended Joint Plan of Reorganization and*
*Recommended Supplemental Findings of Fact and Conclusions of Law* [Docket No. 26154] and
*Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First*
*Amended Joint Plan of Reorganization as Modified Through December 23, 2010* [Docket No.
26155]. On February 15, 2011 (the "Confirmation Date," see Plan, § 1.1.88) the Bankruptcy
Court issued its *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as*
*Amended Through December 23, 2010* [Docket No. 26289] (collectively with Docket Nos.
26154 and 26155, the "Confirmation Order").

10.    The Confirmation Order was timely appealed to the District Court for the District
of Delaware, Case No. 11-199 (the "Lead District Court Appeal Case"). On March 28, 2011 the

---

[4]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Settlement
Agreement or the Plan (as defined herein).

District Court entered an order in the Claims Order Appeal [Case No. 09-807, Docket No. 5], consolidating the Claims Order Appeal with the Lead District Court Appeal Case. On January 30, 2012, the District Court issued its *Memorandum Opinion* [Docket No. 165] and *Order* [Docket No. 166] denying or overruling all objections to the Plan and Confirmation Order, among other actions, and confirming the Plan in its entirety.

11.    On June 11, 2012, the District Court issued its *Consolidated Order Regarding Motions for Reconsideration* [Docket No. 215] granting the motions of several parties to clarify or amend its *Memorandum Opinion*. In conjunction with its consolidated order, the District Court issued its *Amended Memorandum Opinion* [Docket No. 217] and *Order* [Docket No. 218] clarifying and expanding the discussion in its prior opinion and, once more, denying or overruling all objections to the Plan and Confirmation Order and confirming the Plan in its entirety.

12.    Certain parties appealed the Confirmation Order to the United States Court of Appeals for the Third Circuit (the "Third Circuit"),[5] including certain appeals filed by the Bank Lender Group (the "Bank Lender Appeals,"[6] and together with the Proofs of Claim and the Claims Order Appeal, the "Settled Claims").

13.    The dispute in the Bank Lender Appeals concerns the rate of post-petition interest to be paid to the holders of claims under the Pre-petition Credit Facilities. The Plan provides for the Bank Lender Group to be paid, on the Effective Date, the principal amount of their claims (the "Principal"), plus outstanding and undisputed pre-petition interest, plus post-petition interest calculated at the rate prescribed by § 3.1.9(b)(i)(A) of the Plan (the "Plan Rate") (the "Undisputed Interest"). The Bank Lender Group contends that holders of claims under the Pre-

---

[5]    Third Circuit case nos. 12-1402, 12-1403, 12-1404, 12-1405, 12-1521, 12-2807, 12-2904, 12-2917, 12-2923, 12-2924, 12-2966, 12-2967, and 12-3143.

[6]    Third Circuit case nos. 12-1402, 12-1403, 12-1404, 12-1405 and 12-2924.

5

petition Credit Facilities are entitled to postpetition interest at a higher rate, namely the contract default rate provided under the Pre-petition Credit Facilities (the "Contract Default Rate"), as opposed to postpetition interest arising from the Pre-petition Credit Facilities at the Plan Rate. The Plan acknowledges that the claims of the Bank Lender Group are subject to a pending objection and litigation concerning the amount of post-petition interest to which they are entitled (Plan, § 3.1.9(d)(i)).

14.    The Third Circuit has denied all appeals of the Confirmation Order other than the Bank Lender Appeals, and the deadlines for seeking reconsideration of those decisions or review by the U.S. Supreme Court have expired.  Consequently, the Bank Lender Appeals are the only remaining contingency that prevents the Confirmation Order from becoming a Final Order. Under the Plan, entry of a Final Order confirming the Plan is a condition to the Effective Date. The agreed resolution of the Bank Lender Appeals removes the one remaining impediment to that objective.  As a result, the Settlement Agreement will enable the Debtors to consummate the Plan and to emerge from chapter 11 promptly following final approval of this Motion.

**The Settlement Agreement**

15.    During the pendency of the Bank Lender Appeals, the Debtors and the Official Committee of Equity Committee Holders (the "Equity Committee") have engaged in years of extensive good faith, arms-length negotiations with the Bank Lender Group over the Bank Lender Appeals and the Claims Order Appeal.  These negotiations have recently become more urgent and finally culminated in a full and final settlement of the Settled Claims as memorialized in the Settlement Agreement, the principal terms of which are as follows:[7]

---

[7]    The description of the terms of the Settlement Agreement provided in this Motion is for summary purposes only.  In the event of any inconsistencies between the summary provided in this Motion and the Settlement Agreement, the Settlement Agreement shall control in all respects.

KE 28986604

(a)    On the Effective Date, the Debtors shall transfer the following sums in Cash to the Agent: (i) $971 million of Principal/Undisputed Interest through December 31, 2013 (the "Plan Payment"), (ii) $129 million (the "Settlement Payment"), and (iii) interest on the Plan Payment and the Settlement Payment for the period from January 1, 2014 to the Plan Effective Date in accordance with section (b) below ((i), (ii) and (iii) collectively, the "Lender Payment").

(b)    Beginning on January 1, 2014 and continuing until the earlier of February 1, 2014 or the Effective Date, simple interest shall accrue on the Plan Payment and the Settlement Payment at the rate of 3.25% per annum.  If the Effective Date has not occurred by January 31, 2014, then beginning on February 1, 2014 and continuing until the Effective Date, simple interest shall accrue on the Plan Payment and the Settlement Payment at the rate of 5.0% per annum.  To the extent the interest paid pursuant to this section (b) exceeds the Plan Rate, such supplemental interest is paid by the Debtors in settlement of the Debtors' objection to the Proofs of Claim, the Claims Order Appeal and the Bank Lender Appeals.

(c)    The Lender Payment shall be in full and final satisfaction of all amounts due and owing under the Pre-petition Credit Facilities, the Proofs of Claim, the Plan, or otherwise.

16.    By fully and finally resolving the Settled Claims, the Debtors, in their business judgment, with the support of the Equity Committee, believe the Settlement Agreement is a fair and reasonable settlement, is in the best interest of the Debtors and their respective estates, and

7

should be approved. The Settlement Agreement clears the path to the Debtors' successful emergence from these Chapter 11 Cases, much to the benefit of their stakeholders who have waited for their respective distributions during the long pendency of the Debtors' bankruptcy cases.

**Relief Requested**

17.     By this Motion the Debtors respectfully seek entry of an Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019(a): (a) approving the compromise between and among the Debtors and the Bank Lender Group described in the Settlement Agreement; (b) authorizing the Debtors to enter into the Settlement Agreement; (c) granting the Debtors authority to consummate the transactions contemplated in the Settlement Agreement; and (d) granting such other and further relief as the Court deems just and proper.

**Basis for Relief**

A.    **Approval of the Settlement Agreement Is Warranted Under Bankruptcy Rule 9019**

18.     Compromises and settlements are "'a normal part of the process of reorganization.'" *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *See Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000) ("Judges naturally prefer to settle complex litigation than to see it litigated to the hilt, especially when it is litigation in a bankruptcy proceeding — the expenses of administering the bankruptcy often consume most or even all of the bankrupt's assets"); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy").

8

19.     Pursuant to Bankruptcy Rule 9019, bankruptcy courts should approve a compromise or settlement if it is in the best interests of the debtor's estate.     Specifically, Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. The decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court. *See Will v. Next Proteins, Inc. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644-45 (3d Cir. 2006); *Law Debenture Trust Company v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006).

20.     The Third Circuit has enumerated the following four-factor test to determine whether a settlement is fair and reasonable and should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Nutraquest, Inc.*, 434 F.3d at 644 (internal citation omitted); *see also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002). This four-factor test applies to settlements regardless of whether the claims at issue belong to the debtor or are made against the debtor. *In re Nutraquest, Inc.* 434 F.3d at 644-45. No one factor is dispositive. Instead, the Court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.  In addition, in exercising its discretion, the Court must make an independent determination that the settlement is fair and equitable and "[t]he extent to which the settlement is truly the product of 'arms-length' bargaining, and not of fraud or collusion." *See In re Exide Techs.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003).

9

21.    All three of the above-referenced factors relevant to this compromise weigh in favor of approving the proposed compromise embodied in the Settlement Agreement.[8]

1.    **The Proposed Settlement Reflects the Debtors' Realistic Probability of Success on the Merits in the Bank Lender Appeals**

22.    The probability of success by the Debtors in the Bank Lender Appeals is difficult to determine.  Because of the numerous complex legal and factual issues raised in the Bank Lender Appeals, the Debtors cannot anticipate a favorable outcome to the litigation with a sufficient degree of certainty.  The Debtors believe, in their business judgment, that the Settlement Agreement constitutes a fair and reasonable compromise and that any value that may hinge on the difficult to ascertain possibility of success on the merits is outweighed by the value of a settlement on fair and reasonable terms that allows the Debtors to finally achieve certainty with respect to the Settled Claims and to expeditiously emerge from chapter 11 without waiting for the Third Circuit to rule on the Bank Lender Appeals.

2.    **Resolution of the Settled Claims Would Involve Complex Issues of Law and Fact and Incur Inconvenience, Expense, and Delay**

23.    Even the issuance of an opinion by the Third Circuit will not necessarily put an end to the expense and delay inherent in litigating the Settled Claims, as either party may seek a rehearing in the Third Circuit or file a petition for writ of *certiorari* to the United States Supreme Court. This continued (and undoubtedly lengthy) litigation would come at significant expense to the Debtors' respective estates and could delay the occurrence of the Effective Date and the Debtors' emergence from the Chapter 11 Cases.

---

[8]    With respect to the difficulty of collection, the Debtors respectfully submit that this factor does not apply to the present situation.

KE 28986604

3.    **The Settlement Agreement Well Serves the Paramount Interests of the Creditors and Equity Holders**

24.    This factor clearly weighs in favor of approving the Settlement Agreement. A settlement of the Settled Claims removes potential uncertainty over the amount of postpetition interest owed to the Bank Lender Group and the confirmability of the Debtors' Plan, facilitating the occurrence of the Effective Date and distributions to all creditors, many of which have been waiting over a decade to receive their distributions. Consummation of the Settlement Agreement will avoid the expense and risk of future litigation regarding the interest to be paid to the Bank Lender Group and, importantly, remove the final obstacle to the timely occurrence of the Effective Date. Creditors and equity holders will clearly benefit from the Debtors' ability to avoid expensive and protracted litigation and to finally emerge from chapter 11 as healthy companies free of asbestos liabilities. Moreover, no matter how the Third Circuit might rule on the Bank Lender Appeals, given the significant legal issues and substantial sums involved, it presents the possibility of a party seeking a to file a petition for a writ of *certiorari* to the United States Supreme Court. The Third Circuit ruling or an appeal to the Supreme Court may involve remands to the Bankruptcy Court or District Court, adding years to a final resolution. The continued distraction of Grace's management on this matter is not in the best interests of the Debtors' estates or its stakeholders.

25.    As noted above, none of the factors of the Third Circuit test are dispositive, and the test requires judicial consideration of the total weight of the factors. Here, the three relevant factors clearly weigh in favor of approving the Settlement Agreement and the prompt, reasonable, and fair settlement of the Settled Claims without the unnecessary delay and expense of uncertain litigation.

KE 28986604

26.     Finally, the Settlement Agreement is the product of arms-length negotiations, proposed in good faith, and without collusion.  For years, the Debtors and the Equity Committee engaged in extensive arms-length negotiations with the Bank Lender Group and recently these negotiations have finally borne fruit by culminating in the compromise embodied in the Settlement Agreement.   The Equity Committee, which represents the constituency most economically affected by the proposed Settlement and has been heavily involved in the settlement negotiations, strongly supports the Settlement and believes that it is in the best interests of shareholders and the Debtors.  The Debtors have also engaged in discussions with the other Plan Proponents regarding the Settlement Agreement, and all of the Plan Proponents fully support approval of the Settlement Agreement.   The Debtors respectfully submit that the Settlement Agreement satisfies the standards for approval pursuant to Bankruptcy Rule 9019.

**B.      Entering into the Settlement Agreement is Warranted Under Section 363 of the Bankruptcy Code**

27.     Section 363 of the Bankruptcy Code is the statutory vehicle for considering approval of the Settlement Agreement under Bankruptcy Rule 9019.  *See In re Martin*, 91 F.3d at 395 n.2.  Section 363 provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  It is well-established in this jurisdiction that a debtor may dispose of assets outside of a plan of reorganization pursuant to section 363(b) of the Bankruptcy Code if there is a good business reason for doing so.  *See, e.g.*, *Martin*, 91 F.3d at 394-95; *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056 (PJW), 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

12

28.     Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

29.     Here, the Debtors have a clear business justification for entering into the Settlement Agreement. The primary purpose of the Settlement Agreement is to eliminate the measure of uncertainty and financial expense inherent in what could be continued complex, protracted litigation concerning the Settled Claims. The Settlement Agreement allows the Debtors to avoid the cost, risk, and distraction associated with such litigation, thereby preserving value for the Debtors' estates to the benefit of all stakeholders and facilitating the Debtors' rapid emergence from bankruptcy after nearly thirteen years in chapter 11. After thorough consideration and analysis of the possible costs and benefits, in their business judgment the Debtors believe that the compromise memorialized in the Settlement Agreement, that allows the Bank Lender Group to receive the amounts set forth in the Plan and the Settlement Payment, compromises their Proofs of Claim, the Claims Order Appeal, and the Bank Lender Appeals, is

13

fair and reasonable. Accordingly, the Debtors believe entering into the Settlement Agreement is a sound and proper exercise of their business judgment and that the Court should authorize the Debtors to enter into the Settlement Agreement and allow the Debtors to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein.

### Rule 6004(h) Waiver

30.    The Debtors included all relevant stakeholders in reviewing the Settlement Agreement, and thus objections to this Motion are not anticipated. Because resolution of the Settled Claims is critical to the Debtors' timely emergence from chapter 11, the Debtors desire that the Settlement Agreement be finally approved as early as possible. Given the consensual nature of the Settlement Agreement, relief from the 14-day stay provided in Bankruptcy Rule 6004(h) is appropriate. The Court has broad discretion to waive the stay under Bankruptcy Rule 6004(h). *See* 10 COLLIER ON BANKRUPTCY, ¶ 6004.11 ("[B]ecause the purpose of the rule is to protect the rights of an objecting party, the court should eliminate the 14-day stay period and allow the sale or other transaction to close immediately in all cases where there has been no objection to the procedure."); *see also In re Boscov's, Inc.*, 08-11637 (KG), 2008 WL 4975882 (Bankr. D. Del. Nov. 21, 2008) (granting a waiver of the 6004(h) stay even in the face of an appeal (discussing Bankruptcy Rule 6004(g), the predecessor to Bankruptcy Rule 6004(h)).

### No Prior Request

31.    No prior motion for the relief requested herein has been made to this or any other court.

### Notice

32.    Notice of this Motion has been given to:  (a) the office of the U.S. Trustee; (b) counsel to the L/C Facility Agent and L/C Issuers; (c) counsel to JP Morgan Chase Bank N.A. as

14

agent for the Debtors' prepetition lenders; (d) counsel to each of the official committees appointed in these Chapter 11 Cases; (e) counsel to the Asbestos Personal Injury and Asbestos Property Damage Future Claimants' Representatives; (f) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (g) counsel for the Bank Lender Group.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, (a) approving the compromise between and among the Debtors and the Bank Lender Group described in the Settlement Agreement, (b) authorizing the Debtors to enter into the Settlement Agreement, (c) granting the Debtors authority to consummate the transactions contemplated in the Settlement Agreement, and (d) granting such other and further relief as the Court deems just and proper.

Dated: December 23, 2013
      Wilmington, Delaware

**KIRKLAND & ELLIS LLP**
Adam Paul
John Donley, P.C.
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

and

**THE LAW OFFICES OF ROGER HIGGINS**
Roger J. Higgins
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 836-4047

and

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*

16