## EXHIBIT C

O'Connell Declaration

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| W. R. GRACE & CO., et al.[1] | ) Case No. 01-01139 (KJC) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket No. [___] |

### DECLARATION OF JOHN JAMES O'CONNELL III IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (A) ENTER INTO THE EXIT FINANCING COMMITMENT AND ENGAGEMENT LETTER AND THE FEE LETTERS; (B) PAY CERTAIN FEES, INDEMNITIES, COSTS AND EXPENSES IN CONNECTION THEREWITH; AND (C) FILE THE COMMITMENT AND ENGAGEMENT LETTER AND THE FEE LETTERS UNDER SEAL

I, John James O'Connell III, declare as follows:

1. I am over the age of 18 and competent to testify. I am a Senior Managing Director of Blackstone Advisory Partners, L.P. ("Blackstone"), an affiliate of The Blackstone Group L.P., the Debtors' financial advisor, which has its principal offices at 345 Park Avenue, New York, New York 10154.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food >N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2. I am intimately familiar with the Debtors' business affairs and restructuring negotiations. Blackstone and affiliates of Blackstone have served as financial advisors to the Debtors since April 2001, and I have been personally involved in advising the Debtors since July 2004. This declaration is based on my personal knowledge, relevant documents that I have reviewed, information that has been supplied to me by employees of the Debtors or by other professionals retained by the Debtors, and my expert opinion. If called upon to testify, I could and would testify competently to the facts and opinions contained in this declaration.

3. I submit this declaration in support of the Debtors' motion (the "Motion") for entry of an order authorizing the debtors to (a) enter into the exit financing Commitment and Engagement Letter[2] and the Fee Letters; (b) pay certain fees, indemnities, costs and expenses in connection therewith; and (c) file the Letters under seal.

4. In May 2009, the Debtors, with the assistance of Blackstone, launched an extensive search for an exit financing facility. The Debtors and Blackstone contacted eleven potential lenders, and eight of these lenders executed confidentiality agreements. These eight lenders then performed due diligence in order to submit initial indications of interest. Certain lenders were then invited to a second round of discussions based on the terms of their initial indications of interest. After further due diligence, this smaller group of lenders submitted final proposals.

5. In early 2010, after arm's-length negotiations, the Debtors entered into engagement letters with the Engagement Parties to provide a best efforts financing pending a confirmation order from the Court. These engagement letters expired on or about December 31, 2010.

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion or the Plan, as applicable.

2

6.  Since that time, the Engagement Parties have periodically provided the Debtors with their views on financing conditions and advice on financing options. In November 2013, the Debtors began to engage in substantive, arm's-length and good faith negotiations with the Engagement Parties about the terms of an exit financing facility.

7.  I believe the Engagement Parties' proposed exit financing structure will facilitate consummation of the Plan and will provide the Reorganized Debtors with adequate liquidity immediately following emergence.

8.  In arriving at this conclusion, I worked with my team at Blackstone to analyze the liquidity needs and debt capacity of the Reorganized Debtors. Based upon our analysis, it is my opinion that (a) a $700 million senior secured term loan facility, (b) a $200 million Euro equivalent senior secured term loan facility, (c) a $250 million senior secured delayed draw term loan facility, (d) up to a $250 million senior secured revolving credit facility and (e) up to a $150 million (or its foreign currency equivalent) senior secured multi-currency revolving credit facility will allow the Debtors to emerge from chapter 11 and have sufficient liquidity to support and sustain operations immediately following emergence from bankruptcy. The proceeds from the Term Facilities will be used to pay in full all outstanding claims, make cash contributions to the Asbestos PI Trust and Asbestos PD Trust, and provide working capital to the Reorganized Debtors for their business operations and other general corporate purposes, including payment of certain amounts in full satisfaction of the Debtors' prepetition lenders' claims for certain post-petition interest pursuant to the terms of a settlement, which is the subject of a pending motion for Court approval under Bankruptcy Rule 9019. The proceeds from the Revolving Facilities will likely remain undrawn on the Effective Date (except that certain letters of credit will be

issued under the Revolving Facilities in support, or as a replacement, of existing letters of credit) and will be available thereafter to support the Reorganized Debtors' operating needs.

9. In addition, I believe that the arrangement fees, expenses, and indemnification obligations as proposed in the Letters are fair and reasonable in light of this type of transaction and reflect market terms and conditions. In addition, the Break-up Fee is less than 1 percent of the overall size of the Exit Facilities. If the Break-up Fee is paid, certain other fees associated with the Exit Facilities will not be paid.

10. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: Jan. 4, 2014

John O'Connell
John James O'Connell III
Senior Managing Director
Blackstone Advisory Partners L.P.

*Financial Advisor to the Debtors and Debtors in Possession*

KE 28814117