# Attach. 16

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .     Case No.  01-1139 (JKF)
                                .
W.R. GRACE & CO.,               .
et al.,                         .     USX Tower - 54th Floor
                                .     600 Grant Street
                                .     Pittsburgh, PA 15219
                  Debtors.   .
                                .     January 5, 2010
. . . . . . . . . . . . . ..          8:36 a.m.


                    TRANSCRIPT OF HEARING
          BEFORE HONORABLE JUDITH K. FITZGERALD
          UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:            Kirkland & Ellis, LLP
                            By:  DAVID M. BERNICK, ESQ.
                                 JANET BAER, ESQ.
                                 LISA G. ESAYIAN, ESQ.
                            200 East Randolph Drive
                            Chicago, IL  60601


For the Debtors:            Kirkland & Ellis, LLP
                            By:  THEODORE FREEDMAN, ESQ.
                            Citigroup Center, 153 East 53rd St.
                            New York, NY  10022


For Sealed Air:             Skadden, Arps, Slate, Meagher &
                              Flom, LLP
                            By:  DAVID M. TURETSKY, ESQ.
                                 J. GREGORY ST. CLAIR, ESQ.
                            Four Times Square
                            New York, NY 10036


Audio Operator:             Cathy Younker

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609)586-2311      Fax No. (609) 587-3599

1        MR. RICH:  Good evening, Your Honor.

2        THE COURT:  Good evening.

3        MR. RICH:  Alan Rich for the Property Damage FCR.  I

4  have some very brief remarks.  As you know from the testimony

5  of Judge Sanders, he supports this plan.  He thinks it's the

6  best plan that could have been arrived at under the

7  circumstances and is satisfied with it.  I want to make sure

8  that the Court understands that both Judge Sanders and I agree

9  with Mr. Bernick's recitation of the context in which Judge

10  Sanders remarked that the Futures got a "better deal" than some

11  others.  I believe he was speaking about, for instance, the

12  right to jury trial which the Futures will get but Anderson

13  will not.  But, I will point out to the Court that that was a

14  situation of Anderson's making not a result of the plan.

15  Anderson submitted itself to the jurisdiction of this Court

16  thus waiving its right to a jury trial.

17        Judge Sanders focuses on the big pictures.  I mean,

18  there's statutes that are very complicated.  They have a lot of

19  subsections and some very complicated language, but he's a big

20  picture kind of guy.  And he sees a plan that is going to pay

21  the Futures 100 percent of their allowed claims.  It's going to

22  allow them to litigate it in any federal form of their choice.

23  This is a good deal for the Futures, for the traditional

24  property damage futures.  This is an excellent deal.  This is

25  almost -- in fact, in many ways, as we pointed out in our

259

1  paper, it's better than had there been no bankruptcy at all for

2  the Futures.

3         We're in a position where the only thing we're really

4  giving up is the possibility of litigation in a state court.

5  And I say the possibility because a lot of these cases would be

6  removed, but yet the possibility that there would be some state

7  court litigation.  And in exchange for giving that up, we are

8  getting our claims essentially secured by the stock of W.R.

9  Grace even before we bring them.  So, it's quite a good deal

10 for the traditional Futures.

11        With respect to ZAI, it's also an excellent deal.  I

12 mean, this is -- and not -- certainly not even close to solely

13 the result of anything Judge Sanders did.  I give the special

14 counsel and the class counsel for ZAI a tremendous amount of

15 the credit and there should be, because they snatched a

16 significant victory from the jaws of a devastating defeat.  The

17 Science trial was a devastating loss for ZAI claimants, both

18 current and future.  Armed with this Court's decision, if

19 assuming it were upheld -- most decisions are upheld -- it was

20 -- the fate for most of the Futures would have been summary

21 judgment.  And so, instead of going home with nothing, there is

22 a fund that was created that if things go the way we think

23 they're going to go is approaching $200 million.  That is a lot

24 of money versus nothing.  And so, we think that the ZAI folks

25 are getting an excellent deal under this plan as well.


**J&J COURT TRANSCRIBERS, INC.**

1          Now, of course, Judge Sanders was concerned about

2     whether the plan was feasible.  I mean, you could promise the

3     moon and the stars, but the question is, can you deliver even

4     the moon?  And we looked at it and we talked to people and we

5     examined documents and we saw the testimony.  In fact, the $1.6

6     billion figure that has been discussed quite a bit during these

7     proceedings actually came out during part of the Judge Sanders'

8     question is where that came from.  And I heard Anderson sort of

9     pooh-pooh that figure because it was over 25 years, but that's

10    65, $70 million a year each and every year.  That, again, is a

11    lot of money.  And we're talking about the potential of tens of

12    thousands of claims.  I know the debtor doesn't think there are

13    going to be any, but there's the potential for tens of

14    thousands of claims.  And, you know, that's sort of a built in

15    governor on payments.

16         If there are tens of thousands of valid claims,

17    unfortunately it's going to take a very long time to get those

18    claims resolved and queued up and paid.  So, we're not the

19    least bit concerned over the fact that the $1.6 billion figure

20    is something -- even if it had to be satisfied over a long

21    period of time, that that presents any problem at all to the

22    Future claimants.

23         That's -- the $37 million figure on the reserve, I

24    found that figure fascinating.  I was fascinated by it during

25    the depositions.  I was wondering where it was coming from and

1  how they got there and what supported it.  But, ultimately, I

2  said to myself, who cares frankly, because if there's $1.6

3  billion available it makes absolutely no difference to me, and

4  it shouldn't make any difference to anybody else, even if that

5  $37 million figure wasn't there at all.

6         So, it's sort of a sideline that really consumed a

7  lot of unnecessary time and effort.  But, the judge is not

8  concerned about the 37 million given all the testimony from not

9  only Ms. Zilly, but from the CFO that there would be this at

10 least billion and a half available over this period of time.

11 So, again, after extensive discovery and search and thought,

12 Judge Sanders decided to support this plan.  He still supports

13 it and he respectfully requests that it be approved by this

14 Court.  Thank you.

15        THE COURT:  Thank you.  Anybody else before I get

16 back to the National Union issue?

17        MR. FREEDMAN:  I have an issue before the National --

18        THE COURT:  All right, Mr. Freedman.

19        MR. FREEDMAN:  Your Honor, it's ten minutes after

20 five and there's snow in Pittsburgh, which has caused all sides

21 to agree that with many of the issues that are open we're going

22 to rest on our briefs.  There's one issue, however, that I do

23 think the debtors and Plan Proponents need to respond to

24 because it was frankly left unaddressed in the Plan Proponents'

25 reply briefs.  And that is the issue that's identified in the

# Attach. 17

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Related to Doc. 20275, 20529

**ORDER** RE REVISED ORDER & NOTICE RE ZAI MOTION
FOR PRELIMINARY APPROVAL OF ZAI CLASS SETTLEMENT & PROVISIONAL CLASS CERTIFICATION

This matter came before the Court on motion of the U.S. ZAI Claimants for an order: (1) provisionally certifying a U.S. ZAI Class pursuant to Fed. R. Bankr. P. 7023 and Federal Rule of Civil Procedure 23; (2) appointing representatives and counsel for the U.S. ZAI Class; (3) preliminarily approving a U.S. ZAI Class Settlement; and (4) approving a form of notice to be sent to U.S. ZAI Class members. There is no objection to the motion.[1] Upon consideration of the pleadings and record in this case, the Court grants the motion in its entirety.

In that regard, the Court finds that the requirements of Rule 23 for certification of the proposed U.S. ZAI Class have been met.

With respect to Rule 23(a)(1), the Court finds that U.S. ZAI Class members number in excess of 16,000. Class members are predominantly individual residential property owners having claims of modest economic value. Joinder and individual participation of this large community of claimants is impractical.

With respect to Rule 23(a)(2), the Court finds that multiple questions of law and fact are common to members of the class. Questions common to class members' claims include the extent of asbestos contamination in ZAI, the risks posed by asbestos contamination of ZAI, and whether Debtors' ZAI marketing and sales practices could result in liability to class members.

---

[1] Two objections originally filed to the motion by the United States and the law firm of Lukins & Annis, P.S. respectively, have been withdrawn by stipulation.

With respect to Rule 23(a)(3), the Court finds that the claims of the proposed Class Representatives, Marco Barbanti and Ralph Busch, are typical of the claims of the Class. These Class Representatives, like all other Class members, have advanced property damage claims arising out of alleged asbestos contamination of ZAI on their properties. Class Representatives' claims and Class members' claims arise from the same events and course of conduct and are based on the same legal theories.

With respect to Rule 23(a)(4), the Court finds that the proposed Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class. Class Counsel are highly competent, possess extensive experience in asbestos and class action litigation, and have demonstrated this competence before the Court. The Court further determines that there is no conflict of interest between the named plaintiffs and the remainder of the Class that would disqualify them from serving as class representatives.

Further, the Court finds that the requirements of Rule 23(b)(3) are met. Questions of law or fact common to class members predominate over any questions affecting individual members. Common core factual and legal issues present a significant aspect of any determination of Grace's liability to U.S. ZAI claimants. These issues include a determination as to whether and the extent to which ZAI is contaminated with asbestos; whether and the extent to which ZAI poses a risk when installed in properties; and whether Debtor's marketing and sales practices could constitute unfair, misleading, or deceptive business practices.

The Court determines that the class action is a superior method for fairly and efficiently adjudicating this controversy. In this regard, the Court finds that Class members do not have a strong interest in individually controlling prosecution of their claims. Indeed, it would be cost-prohibitive for the vast majority of Class members to defend their claims in the bankruptcy court and otherwise navigate a complicated objection process. Individual adjudication of these claims

2

would present this Court with severe management difficulties and involve unacceptable redundancies, while class treatment offers significant judicial efficiencies. Accordingly, the Court certifies the following Class pursuant to Rules 23(a) and 23(b)(3):

> All holders of U.S. ZAI claims that were filed with the Bankruptcy Court on or before the U.S. ZAI Bar Date, except the United States for its ZAI claims filed on behalf of the United States Forest Service.[2]

Marco Barbanti and Ralph Busch are appointed as Class Representatives. Edward J. Westbrook, Esq., Darrell Scott, Esq., and Elizabeth Cabraser, Esq. are appointed as Class Counsel.

The Court has reviewed the proposed form of notice to Class members.[3] The Court approves the notice, determines that direct notice by first class mail to Class members is the best notice practicable, and orders that such notice be sent within ten (10) days of the date of this Order.

Finally, the Court has considered the proposed U.S. ZAI Class Settlement and determined that it satisfies the standards for preliminary approval. The terms of the proposed settlement are within the range of reasonableness and contain no obvious deficiencies that would cause the Court to deny preliminary approval. The Court is convinced that the U.S. ZAI Class Settlement was the product of extensive, arms-length negotiations and involved experienced and well informed constituencies.

The stage of the proceedings also favors preliminary approval of the proposed U.S. ZAI Class Settlement. The Court and the principal negotiating parties have been substantially engaged in matters relating to ZAI claims for several years. The negotiating parties have had the benefit of significant discovery, as well as the Court's rulings in connection with the Science

---

[2] In response to an objection by the United States that its interests can only be represented by the Department of Justice, the parties agreed to modify the originally proposed class definition by excepting the United States Forest Services' ZAI claims. The Court finds this modification appropriate.

[3] The parties have supplied a slightly revised notice that takes account of the exemption of the United States from the class definition. This version will be sent to class members.

Trial summary judgment motions and other ZAI motions.   In light of the circumstances of this
case, the difficulties encountered and likely to be encountered in further prosecution of the ZAI
claims, the scientific and other controversies surrounding ZAI, and the difficulties of proof that
would likely face ZAI Claimants, the Court finds that the proposed settlement is well within the
range of possible approval and should be submitted to the Class for comment.

Therefore, it is hereby Ordered, Adjudged, and Decreed that:

1.  The U.S. ZAI Class is provisionally certified pursuant to Fed. R. Civ. P. 23(a) and
    23(b)(3);

2.  Marco Barbanti and Ralph Busch are appointed as Class Representatives of the U.S. ZAI
    Class;

3.  Edward J. Westbrook, of Richardson, Patrick, Westbrook & Brickman; Darrell W. Scott,
    of The Scott Law Group, P.S.; and Elizabeth J. Cabraser of Lieff Cabraser Heimann &
    Bernstein, LLP, are appointed as Class Counsel for the U.S. ZAI Class;

4.  The U.S. ZAI Class Settlement is preliminarily approved;

5.  The notice to U.S. ZAI Class members is approved and shall be sent to all U.S. ZAI Class
    Members by first class mail within twenty days of the entry of this order;

6.  A hearing on final approval of the U.S. ZAI Class Settlement shall be held at 10:30 a.m.
    on April 1, 2009 at the United States Bankruptcy Court for the District of Delaware, 824
    N. Market Street, Wilmington, DE 19801.

IT IS SO ORDERED, this __16th__ day of January 2009.

_Judith K. Fitzgerald_
Hon. Judith K. Fitzgerald                rmab
United States Bankruptcy Judge

4

# Attach. 18

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | re item 9, 4/1/09 |

## ORDER

This matter is before the Court on the motion of the U.S. ZAI Class for final approval of

a class settlement pursuant to Fed. R. Civ. P. 23(e) and Fed. Bankr. R. 7023. In this circuit,

proposed class settlements are analyzed under the Girsh / Prudential factors. Girsh v. Jepson,

521 F.2d 153, 156-57 (3d Cir. 1975), and In re Prudential Ins. Co. Am. Sales Practice Litig.

Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998). These factors focus on: the difficulties the

class was likely to encounter without a settlement in proving liability and damages; the stage of

the proceedings at which the settlement was reached; the settlement amount as compared to

possible outcomes through litigation; the reaction of the class; the reasonableness of the claims

process; and the transactional costs and fees. Not all of the Girsh / Prudential factors apply to the

same degree in every case. In re Electrical Carbon Preps Antitrust Litig., 447 F.Supp.2d 389,

403 (D.N.J. 2006). In a bankruptcy settlement, the Court must also ensure that the settlement is

fair to other creditors. In re Devon Capital Mgmt., Inc., 261 B.R. 619, 623 (Bankr. W.D. PA

2001).

In its memorandum in support of the motion for final approval, the U.S. ZAI Class has

reviewed each of the Girsh / Prudential factors in detail, demonstrating that each of the factors

favors settlement. This Court agrees with and hereby adopts the reasoning advanced in the

Class' memorandum and finds that the settlement meets all of the relevant criteria to constitute a

"fair, reasonable and adequate" resolution of the U.S. ZAI Class claims.

1

It is apparent that the U.S. ZAI Class has faced and continues to face formidable obstacles in proving liability and damage, absent settlement. This Court's opinion on the "Science Trial" summary judgment motions reflects some of its views on these difficulties. Following the summary judgment proceedings, this Court entertained a number of motions by the ZAI claimants addressing appellate review, the automatic stay, appointment of a court expert, the ZAI bar date, and ZAI class certification. These motions highlighted the difficulty and complexity of the issues involving ZAI. The Court urged the parties on several occasions to seriously consider settlement, which the parties ultimately did. The settlement that eventually resulted in late 2008 came after seven years of bankruptcy proceedings that included significant discovery and pretrial activity on ZAI liability and damage issues. Counsel for the negotiating parties are well versed in the fields of asbestos and class action litigation. The settlement is the product of careful negotiation by experienced counsel on both sides.

The settlement itself is a creative effort to secure meaningful and appropriate benefits for U.S. ZAI Class members in the face of conflicting views as to Grace's ultimate liability. The settlement provides for the reorganized debtor, pursuant to its First Amended Plan, to make two fixed payments of $30 million each, followed by up to eight contingent annual payments of $10 million each over the ensuing twenty year period if the assets in the ZAI fund are below $10 million on any date after the fifth anniversary of plan confirmation. Structuring the settlement in this manner enabled the ZAI claimants to secure a settlement figure deemed sufficient by Class Counsel to meaningfully respond to the needs of Class members, while protecting Grace against the possibility of its having agreed to a disproportionately large settlement figure, given the number of participating ZAI Class members, and other ZAI claimants, if any, that materialize. The potential $140 million fund to assist with ZAI remedial action as contemplated by the settlement and Grace's First Amended Plan is certainly a fair and adequate outcome for a Class

2

that otherwise faced serious obstacles on the merits and additional risks involved in maintaining a litigation class through the trial stage. While a larger theoretical ZAI recovery can be postulated, the settlement amount is fair and adequate given Grace's doubtful willingness or ability to pay a significantly greater sum, and the significant creditor demands being placed on Grace. The settlement provides other substantial benefits to claimants through the creation of a comprehensive, multi-year ZAI educational campaign and a minimum twenty-year life for the ZAI facility that will avoid the necessity for homeowners to make hasty decisions on abating ZAI.

In accordance with due process considerations, Class members were provided with individual notice of the settlement and of the opportunity to comment on the settlement or opt-out of the Class if they desired. Less than 2% of the Class has elected to opt out of the U.S. ZAI Class. While some class members have expressed disappointment that the facility's remediation assistance percentage of 55% is not higher, this reimbursement percentage, coupled with the relaxed evidentiary requirements for such recovery, renders the recovery fair, reasonable and adequate given the realities of Grace's bankruptcy and the difficulties that the ZAI claimants would otherwise encounter in establishing liability and damages. The determination that the settlement is fair, reasonable, and adequate is further bolstered by the fact that no pre-bankruptcy ZAI litigation had previously established Grace's liability or secured recovery for a ZAI claimant. No Class member, further, has filed comments opposing the fairness, reasonableness, or adequacy of the settlement.[1]

---

[1] One former class member, Anderson Memorial Hospital, opted out of the class and then filed a "Limited Objection" in which it does not challenge the fairness, reasonableness, or adequacy of the settlement. Instead, it asks the Court to defer considering settlement approval until Plan confirmation. Dkt. No. 20981 at 1. ~~Anderson has no standing to object to the class settlement because it has opted out of the class (Dkt. No. 20981 at 2).~~ Moreover, it ~~cannot represent any other building owner who may have ZAI because this Court has already denied its motion for class certification. Dkt. No. 19821.~~ In any event, Anderson's concern with the treatment of its ZAI claim under the Plan, if indeed it has ZAI, is a confirmation matter and not a reason to deny approval of this class settlement.

3

The Court further finds that the ZAI *Class* claims facility to be established under Section 524(g) of the bankruptcy code will afford a reasonable and user-friendly procedure for U.S. ZAI claimants to receive compensation for ZAI-related costs. Claimants avoid a plethora of litigation defenses in the facility that would otherwise confront them in a contested claim proceeding. To receive a 55% contribution for their ZAI-related abatement expenses up to the negotiated cap, U.S. ZAI claimants need only establish their ownership interest in the property, the existence of ZAI on their property, and their having incurred abatement or removal costs associated with ZAI. The settlement provides for administration under sensible trust distribution procedures which ensure that claims are processed equitably and efficiently. The facility is designed such that ZAI claimants may readily participate without the necessity of having secured the assistance of counsel.

The Court also finds that the Class Counsel fee provisions contained in the settlement, which provide for submitting a fee petition to this Court and limit such fees to 25% of the first two Grace payments, do not give cause to doubt the fairness or reasonableness of the Class settlement. Class Counsel's fee petition, appropriately, will not be submitted until after confirmation of Grace's First Amended Plan which incorporates the settlement. Accordingly, the Court does not pass on any attorneys' fee issue at this time. For purposes of determining that this Class settlement is fair, reasonable, and adequate, however, the Court notes that a 25% fee is considered a benchmark in this circuit for a reasonable class action attorneys' fee award. In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 262 (D. Del. 2002). The present Class settlement, finally, does not involve the circumstances that have given other courts concern in approving class settlements, namely, where the attorneys have concurrently negotiated benefits for the class and a fee for themselves.

4

The Court also finds that the *class* settlement is fair, reasonable, and adequate as a matter of general bankruptcy principles in that it does not single out any other group of creditors for disparate treatment. All creditors have been given notice of the proposed U.S. ZAI Class settlement. No creditor constituency has posed an objection to this class settlement.

For the foregoing reasons, the Court finds that the proposed U.S. ZAI Class settlement is fair, reasonable and adequate, and that settlement is hereby given final approval. The Court retains jurisdiction over the matter to effectuate the settlement through the plan of reorganization and for such other and further matters as may be required.

IT IS SO ORDERED, this ___1___ day of *April* 2009.

Judith K. Fitzgerald
Hon. Judith K. Fitzgerald
United States Bankruptcy Judge

5

# Attach. 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | |
| | : | |
| | : | |
| **W.R. GRACE & CO.**, *et. al.*, | : | **CIVIL ACTION NO. 11-199 (Lead Case)** |
| | : | **CIVIL ACTION NO. 11-200** |
| | : | **CIVIL ACTION NO. 11-201** |
| **Debtors.** | : | **CIVIL ACTION NO. 11-202** |
| | : | **CIVIL ACTION NO. 11-203** |
| | : | **CIVIL ACTION NO. 11-207** |
| | : | **CIVIL ACTION NO. 11-208** |
| | : | **CIVIL ACTION NO. 09-644** |
| | : | **CIVIL ACTION NO. 09-807** |
| | : | |
| | : | |
| | : | *Procedurally Consolidated.* |
| | : | |
| | : | |

## AMENDED MEMORANDUM OPINION

RONALD L. BUCKWALTER, S. J.[1]                                          June 11, 2012[2]


    This Memorandum Opinion now addresses the appeals of final judgments of the United States

Bankruptcy Court for the District of Delaware ("the Bankruptcy Court") related to the United States

Bankruptcy Code Chapter 11 reorganization of Appellee W.R. Grace & Co., *et. al.* ("Grace").[3] By

---

    [1] Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

    [2] Originally published January 30, 2012. Amended June 11, 2012.

    [3] Appellee Grace consists of sixty-two separate corporate entities. For clarity and ease of reference, the debtors are collectively referred to hereinafter as "Grace."

1

#20942

buildings. Over a period of many years, Grace attempted to settle the traditional property damage claims. Approximately 1,136 of the initially filed 4,000 claims were withdrawn or dismissed as improperly filed. Litigation ultimately reduced the remaining amount of claims, and Grace was able to negotiate and settle approximately 407 claims for a total of $147 million.[12]   To date, these settlements remain outstanding because they are contingent upon approval of the Joint Plan at issue. Appellant Anderson Memorial Hospital ("AMH"), a class of property owners of a hospital complex based in Anderson, South Carolina that utilized Grace products in its building construction, remains the only traditional property damage claimant that has not yet reached an agreement with Grace.

The second type of asbestos property damage litigation is ZAI property damage claims. The basis of these claims is that Grace manufactured a loose-fill insulation product containing traces of asbestos, ZAI, that was subsequently used in the attics of many private homes. The affected class of plaintiffs claim damages for allegedly reduced property values and costs associated with the removal of ZAI from their homes. The ZAI property damage litigation has proven to be extremely time-consuming and expensive, including a separate "science trial" to determine certain highly-technical scientific claims.

### E.    The Canadian Class Action Litigation

Grace's ZAI insulation products were also used in buildings in Canada. There are currently ten class action suits pending in Canada that relate to: (1) the cost of removal of asbestos from homes and buildings, diminutions of property values, and economic loss caused by ZAI products; and (2)

---

[12] Specifically, Grace entered into the following settlements: (1) California State University and University of California for $1.4 million; (2) Pacific Freeholds Ltd., Inc. for $9,043,375; (3) various hospitals and healthcare facilities for $576,250; (4) several private commercial building owners in the United States for $16 million; and (5) building owners in Canada for $2.5 million.

The bankruptcy court in In re Dow Corning, 244 B.R. 634, 666 (Bankr. E.D. Mich. 1999) faced a similar situation. In that case, several claimants affected or injured by purportedly defective breast implants sought recovery from a Chapter 11 debtor that was responsible for the manufacture and sale of the implants. Id. at 641–43. Under the debtor's reorganization plan, claimants were classified largely based on their country of citizenship. Id. at 641–42. Several foreign claimants asserted that they were unfairly discriminated against because the plan treated them differently from domestic claimants. Id. at 666. The court, however, declined to find disparate treatment on the premise that § 1123(a)(4) only pertains to the treatment of claims within the same class. Id. ("[T]hese objections misconstrue the import of § 1123(a)(4). . . . It does not require that claims legitimately classified in separate classes receive the same treatment.").

The holding of Dow Corning is directly applicable here. American ZAI PD claims are categorized in a completely different class than Canadian ZAI PD claims. As such, equal treatment of these claims is not required.[102]  Moreover, the Court notes that both Class 7B and Class 8 are deemed impaired classes, and both classes are entitled to vote on the Plan. The only major difference between both classes is the amount and method of payment their respective claimants will receive. American ZAI PD claims will be paid in accordance with the ZAI Trust Distribution Procedures established by the class settlement. (See Joint Plan § 3.1.7(b)(ii).) Canadian ZAI PD claims will be paid according to the terms of the Amended and Restated CDN ZAI Minutes of Settlement. (See id. § 3.1.8(b)(i).) Although Canadian claimants may receive a different amount of payment according to their Settlement than American claimants, it is important to remember that

---

[102] Montana makes a similar argument, alleging that it has been unfairly discriminated against because Class 6 is impaired under the Plan, while other unsecured claims in different classes (specifically Class 5, Class 7A, and Class 9) are unimpaired (MN Br. at 35.)  Given that § 1123(a)(4) only requires equality of treatment for creditors within the same class, Montana's argument is likewise without merit.

# Attach. 20

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Case No. 01-01139(JKF) |
| | ) (Jointly Administered) |
| W.R. GRACE & CO., et al., | ) |
| | ) Multipurpose Room |
| | ) 824 Market Street |
| Debtors. | ) Wilmington, Delaware 19801 |
| | ) |
| | ) |
| | ) July 22, 2008 |
| | ) 9:33 A.M. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:      Kirkland & Ellis,
                      By:  DAVID BERNICK, ESQ.
                           THEODORE FREEDMAN, ESQ.
                           JANET BAER, ESQ.
                      200 East Randolph Drive
                      Chicago, Illinois 60601

For Official Committee  Stroock & Stroock & Lavan LLP
                        By:  KEN PASQUALE, ESQ.
                        180 Maiden Lane
                        New York, New York 10038-4982

ECRO:                 NICOLE SCHAEFER

TRANSCRIPTION SERVICE:  TRANSCRIPTS PLUS
                        435 Riverview Circle
                        New Hope, Pennsylvania 18938
                        Telephone:  215-862-1115
                        Facsimile: 215-862-6639
                        e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript
                 produced by transcription service.

1  efficacy considerations at all, but because of -- of the -- the

2  smooth working of the process of dealing with and negotiation

3  with the committee in this area, but that is where it stands.

4  And until people file their claims, I suppose that they're

5  going to have to be represented by the P.D. Committee.

6          Deterrence.  Well, we've got teach a lesson to the

7  debtor and set an example to others, that's very interesting

8  with respect to a product that's never even been found to have

9  liability associated with it.  Indeed, Your Honor's

10  determination suggests that there will be no liability with

11  respect to it.  So, somehow there's a lesson to the debtor that

12  we need to be chastised for conduct that's not been found to be

13  wrongful at this point?

14          And then justice.  That justice is the only way --

15  class action is the only way to get the justice.  I thought

16  that that's what the bankruptcy law did, as well.  Indeed,

17  given the problems with resolving mass torts, that it may well

18  be that the better brand of justice is to be found in the

19  Bankruptcy Courts.

20          So, for all those reasons, we think that the time has

21  come for the Court to issue a decisive pronouncement with

22  respect to this continuing effort.  You saw that in the case of

23  Anderson Memorial, it was like the issue that never died until

24  finally we argued it all and we had another round of briefs and

25  Your Honor issued an opinion.  We think that the same thing is

**Attach. 21**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: W.R. GRACE & CO., et al., | ) ) ) | CHAPTER 11 |
| | ) ) | Case No. 01-01139 (JKF) (Jointly Administered) |
| DEBTORS. | ) ) | |
| | ) ) ) | **Objection Deadline: April 9, 2008** **Reply Deadline: April 14, 2008** **Hearing Date: April 21, 2008** |

## ZAI CLAIMANTS' MOTION FOR ORDER RECOGNIZING AND PERMITTING FILING OF A WASHINGTON CLASS PROOF OF CLAIM

Pursuant to Fed. R. Bankr. P. 3001, Fed. R. Bankr. P. 9014, and Fed. R. Bankr. P. 7023, the ZAI Claimants respectfully move the Court for an Order recognizing and permitting the filing of a Washington Class Proof of Claim by appointed Class Representatives Marco Barbanti and Ralph Busch. The grounds for the motion are set forth in the accompanying Memorandum in Support.

Dated: March 18, 2008
Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 428-8191

-- and --

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington 99201
Telephone: (509) 455-3966

-1-

-- and --

RICHARDSON, PATRICK, WESTBROOK
  & BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464
Telephone:  (843) 727-6500

*Special Counsel for ZAI Claimants*

# Attach. 22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                   :        MISC. NO. 08-118
                                         :
W.R. GRACE & CO., *et al.*,              :        BANKRUPTCY CASE NO. 01-1139
                                         :
                    Debtors.             :

## MEMORANDUM

BUCKWALTER, S.J.                                              November 13, 2008

 Presently before the Court are Anderson Memorial Hospital's ("Anderson Memorial")

Motion to Reconsider Denial of Motion for Leave to Appeal the Bankruptcy Court's Order

Denying Class Certification, or in the Alternative, to Certify This Matter to the United States

Court of Appeals for the Third Circuit, to Remand this Matter to the Bankruptcy Court for

Discovery, and/or to Conduct a Status Conference (Docket No. 12), W.R. Grace and Co.'s

("Debtor") Brief in Opposition (Docket No. 13), and Anderson Memorial's Reply Memorandum.

(Docket No. 14.)  For the reasons stated below, Anderson Memorial's Motion for

Reconsideration is denied.

## I. BACKGROUND[1]

 On December 23, 1992, Anderson Memorial, represented by Speights & Runyan

("S&R"), filed a class action in South Carolina state court on behalf of certain building owners

and against Debtors and other manufacturers of asbestos containing materials.  In 1994, the

South Carolina court issued an order striking out-of-state class members from the Anderson

Memorial Complaint based on the South Carolina "Door Closing Statute." S.C. CODE ANNO. §

---

[1] The Background is taken from this Court's September 4, 2008, Memorandum which is
the basis for Anderson Memorial's Motion for Reconsideration.

15-5-150. Thereafter, the South Carolina action proceeded only as to buildings located in South

Carolina.

On February 9, 2001, the South Carolina court entered an *ex parte* order conditionally

certifying the state-wide class. Shortly thereafter, on April 2, 2001, Grace filed its Chapter 11

petition. The South Carolina court subsequently issued a final order certifying a class of South

Carolina building owners as to three of the remaining defendants in the South Carolina

proceedings, but not Grace due to the bankruptcy stay.

By order dated April 22, 2002, the Bankruptcy Court approved an extensive notice

program and set March 31, 2003, as the bar date for asbestos property damage claims. (Bankr.

Dkt. No. 1963.) That order was not appealed. Thereafter, at the request of the Asbestos Property

Damage Committee ("PD Committee")—of which Daniel Speights of S&R is a member—the

Bankruptcy Court abated "the requirement in the Bar Date Notice that counsel of record for

asbestos property damage claimants either (1) certify that they notified their clients of the bar

date by transmitting to them the proof of claim package or (2) give names and addresses to Grace

so Grace could notify them directly." In re W.R. Grace & Co., 389 B.R. 373, 375 (Bankr. D.

Del. 2008) (citing Bankr. Dkt. Nos. 2269, 2274, 2745, 2394, 2469 and 2503).

Over 4,000 individual property damage claims were filed in response to the notice

program and prior to the March 31, 2003, bar date. Approximately 3,000 of those claims were

filed by S&R, two of which were class proofs of claim on behalf of "worldwide" and "statewide"

building owners from the Anderson Memorial class action. (Proof of Claim Nos. 9911 and

9914.) S&R did not file a motion for class certification until October 22, 2005, over two and a

half years past the bar date. (Bankr. Dkt. No. 10014.) In the meantime, many of the claims filed

2

by S&R were either withdrawn and/or expunged after findings that S&R lacked authority to file

on behalf of the individual claimants.

The Bankruptcy Court denied Anderson Memorial's motion for class certification finding

that Anderson Memorial failed to satisfy the numerosity requirement of Federal Rule of Civil

Procedure 23(a).[2]  On September 4, 2008, this Court denied Anderson Memorial's appeal, noting

that while Federal Rule of Civil Procedure 23(f) permits appeal from an order denying class

certification, appeal was unwarranted as the "Bankruptcy Court's decision that the Federal Rule

of Civil Procedure 23(a) numerosity requirement was not met was sound."  In re W.R. Grace &

Co, et al., Civ. A. No. 08-118, 2008 WL 4234339, at * 2 (D. Del. Sept. 4, 2008.)  This Court

agreed with the Bankruptcy Court that class certification, at this late date would render the bar

date "useless and adversely affect claimants who filed timely proofs of claim."  (Id.)

Anderson Memorial moves that this Court reconsider its September 4, 2008,

Memorandum and Order, arguing that the "Court's conclusions are not only premature, but they

are both factually and legally erroneous" as the Court's decision was based on factual

misrepresentations that obscured the scope of Grace's compliance with its notice obligations.

(Appellant's Mot. Reconsid. 2.)

## II. LEGAL STANDARD

Local Rule 7.1(g) permits motions for reconsideration.  E.D. PA CIV. P. 7.1(g).  Such

motions are analogous to those brought under Federal Rule of Civil Procedure 59(e) whose

purpose is to correct "manifest errors of law or fact or to present newly discovered evidence."

---

[2] Federal Rule of Civil Procedure 23(a) is made applicable to bankruptcy proceedings by
Federal Rule of Bankruptcy Procedure 7023(a).

3

Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); see Kennedy Indus. v. Aparo, Civ.

A. No. 04-5967, 2006 WL 1892685, at *1 (E.D. Pa. Jul. 6, 2006).

Given a court's interest in the finality of it judgments, "[m]otions for . . . reconsideration

should be granted sparingly and may not be used to rehash arguments which have already been

briefed by the parties and considered and decided by the Court." Ciena Corp. v. Corvis Corp.,

352 F. Supp. 2d 526, 527 (D. Del. 2005). Reconsideration is not permitted simply to allow a

"second bite at the apple." See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d

Cir. 1995). Litigants who fail in their "first attempt to persuade a court to adopt its position may

not use a motion for reconsideration either to attempt a new approach or correct mistakes it made

in its previous one .... [or] to argue new facts or issues that inexcusably were not presented to the

court in the matter previously decided." Kennedy Indus., 2006 WL 1892685, at *1 (quotation

omitted); see also Brambles USA Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990) (it is

not appropriate to relitigate issues already decided by a court on a motion for reconsideration).

The Third Circuit has stated that the party seeking reconsideration must demonstrate "at

least one of the following grounds: (1) an intervening change in the controlling law; (2) the

availability of new evidence that was not available when the court granted the motion . . .; or (3)

the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood

Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999); see also Jackson v. Rohm

& Haas Co., Civ. A. No. 06-1540, 2007 WL 579662, *2 (3d Cir. Feb. 26, 2007) (motions for

reconsideration granted only to "correct manifest errors of law or fact or to present newly

discovered evidence") (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).

## III. DISCUSSION

In its Motion for Reconsideration, Anderson Memorial spends little time addressing[3] the

Max's Seafood  standard claiming that the Court's conclusions "are not only premature, but they

are both factually and legally erroneous." (Appellant's Mot. Reconsid. 2.)  Anderson Memorial

asserts that the bar date's expiration does not limit class membership, and as a result this Court's

assertion that the "numerosity requirement was not met" was in error.  (Id. at 11; Court

Memorandum & Order, In re W.R. Grace & Co, et al., Civ. A. No. 08-118, 2008 WL 4234339,

*2 (D. Del. Sept. 4, 2008.)

### 1.    Anderson Memorials' Assertions of Factual Error

In its Motion for Reconsideration, Anderson Memorial alleges two factual errors: (1)

W.R. Grace failed to give actual notice to "hundreds if not thousands of building owners with

Grace's ACM [asbestos containing material]," and  this Court erred when it stated that the bar

date "order was not appealed." (Id. at 2, 3.)  As a result Anderson "can easily demonstrate many

more members of the class whose claims have not been barred.  As the record now stands,

however, there is no evidence whatsoever that Grace gave actual notice." (Id.)

In their Reply Memorandum in Support of Their Motion to Reconsider Denial of Motion

––––––––––––––––––––

[3] The paucity of Anderson Memorial's argument, in its Motion for Reconsider, can likely
be explained by their repeated request for permission to "brief and argue this matter on the
merits." (Pl.'s Mot. Reconsid. 1.)  Counsel "would like to explain to this Court if it permits
briefings and arguments" (Id. at 8) preferably at "oral argument or an in-person status conference
so that all these issues may be addressed." (Id. at 12.)  The appropriate place for Anderson
Memorial to articulate why the relief sought should be granted is through its Motion.  Both Local
and the Federal Rules provide courts with discretion to decide whether or not oral argument is
necessary.  See E.D. PA CIV. P. 7.1(g) and FED. R. CIV. P. 78(b).  Given this, the proper place for
Anderson Memorial to articulate the legal and factual basis for its Motion is in its briefings to the
Court.

for Leave to Appeal, Anderson Memorial expands upon the alleged factual errors raised in their

Motion to Reconsider. (Appellant's Reply Br.) Specifically, Anderson Memorial states that the

Bankruptcy Court was "manifestly wrong" in (1) finding that Grace provided actual notice to a

large number of claimants, (2) determining that Anderson Memorial had not met the numerosity

requirements of Federal Rule of Civil Procedure 23,[4] (3) asserting that class certification would

adversely affect other claimants, (4) determining that no Anderson Memorial class was certified

as to Grace, and (5) committing a host of other factual errors including refusing to let Anderson

mark documents for identification. (Id. 4-11.)

### i.    Failure to Provide Actual Notice

Apellants claim that Debtor's misrepresentations concerning the adequacy of notice led

this Court to erroneously deny class certification. (Appellant's Mot. Reconsid. 3 (citing Mission

Towers v. W.R. Grace, 2007 WL 4333817 at *3)); Appellants Reply Br. 4-5.) Anderson argues

that it "has shown on its appeal to the Third Circuit, there was not a scintilla of evidence

presented that Grace provided actual notice to **any** asbestos property damage claimant other than

approximately seven claimants who had property damage cases pending when Grace filed its

bankruptcy petition."[5] (Appellant's Mot. Reconsid. 2) (emphasis in original). Efforts to prove

the inadequacy of notice have been "frustrated" by the Bankruptcy Court, as that court

determined that the bar date notice was appropriate; granted "Grace's Motion for Protective

---

[4] Anderson lumped issues (1) and (2) together under one heading, with issue (2) receiving
cursory attention. (Appellant's Reply Br. 4.) For the sake of clarity, the issues will be treated
separately.

[5] Appellant may have shown this evidence to the Third Circuit, but such evidence is not
found in the Motion before this Court.

Order prohibiting any discovery about the bar date order;" and ruled against permitting a

collateral attack on the bar date order.[6] (Id. at 2-3; Bankr. Dkt. No. 11025; Bankr. Dkt. No.

13077.)

As noted previously, on April 22, 2002, the Bankruptcy Court approved an extensive

notice program setting March 31, 2003, as the bar date for asbestos property damage claims.

(Bankr. Dkt. No. 1963.) Thereafter, at the request of the Asbestos Property Damage Committee

("PD Committee")—of which Daniel Speights of S&R is a member—the Bankruptcy Court

abated "the requirement in the Bar Date Notice that counsel of record for asbestos property

damage claimants either (1) certify that they notified their clients of the bar date by transmitting

to them the proof of claim package or (2) give names and addresses to Grace so Grace could

notify them directly." In re W.R. Grace & Co., 389 B.R. 373, 375 (Bankr. D. Del. 2008) (citing

Bankr. Dkt. Nos. 2269, 2274, 2745, 2394, 2469 and 2503). Despite W.R. Grace's objection, the

Court approved the PD Committee's opt-out proposal. (Bankr. Dkt. No. 2745.)

Following this Order, W.R. Grace "spent a considerable amount of money publishing the

notice in both national and local publications." In re W.R. Grace & Co., 389 B.R. at 375. Notice

was provided to property damage claimants, and actual notice was given to "200,000 known

asbestos claimants." Mission Towers v. W.R. Grace, et al., WL 4333817, at *1. Notified

property damage claimants included "all named parties to the handful of property damage cases

---

[6] Appellants note that the Bankruptcy Court "at Grace's urging, has frustrated all of
Anderson's substantial efforts to make this showing." (Id.) The Court assumes that Anderson
Memorial is referring simply to the inherent nature of the adversarial process and is not asserting
that the Bankruptcy Court conspired with Appellee to undermine Anderson Memorial's case. If
this Court's assumptions are incorrect, it would seem that a Motion for Reconsideration is not the
only motion that Appellants should be filing.

pending when Grace filed its bankruptcy petition, and all known personal injury and property

damage lawyers." Id. This Court has previously determined that publication notice was

appropriate. Id. at *4. That the notice program was valid is the law of the case. See 18B Charles

Alan Wright, Arthur R. Miller, & Edward H. Cooper, FED. PRACT. & PROC. JURIS 2d § 4478 (2d

ed. 2000). ("Law-of-the-case rules have developed to maintain consistency and avoid

reconsideration of matters once decided during the course of a single continuing lawsuit.")

Anderson Memorial has provided no evidence that notice procedures were faulty or that Debtor

failed to comply with them. Appellant's counsel cryptically refers to "evidence" of actual notice

to property damage claimants other than the seven claimants. (Appellant's Mot. Reconsid. 2.)

Yet, this evidence has not been provided to this Court.

Anderson relies on mere assertions in challenging the validity of the notice allegedly

provided to 8700[7] property damage claimants, yet argument over the notice provided these

claimants is misplaced. First, these 8700 claimants were not raised in this Court's decision to

uphold the Bankruptcy Court's decision after examining "the class certification decision in detail

. . . denial of class certification was neither imprudent nor erroneous." In re W.R. Grace & Co.,

2008 WL 4234339 at *2. Disputing whether actual notice was provided to 8700 potential

claimants is also undermined by the fact that the notice program instituted, with input from all

the parties, has been affirmed repeatedly by this Court. Mission Towers, 2007 WL 4333817, at

*7; Pacificorp and Vancott Bagley Cornwall & McCarthy v. W.R. Grace, et al., Civ. A. No. 05-

764, 2006 WL 2375371, at *15 (D. Del. Aug. 16, 2006).

Complaints about Debtor's failure to provide notice ring hollow in the face of the fact

---

[7] This number is referred to as 9700 in other filings and memoranda issued in this case.

8

that the PD Committee successfully obtained revisions to the bar date order so that counsel for

plaintiffs were not obligated either to provide notice to claimants that they represented or to

provide a list of claimants to Grace so that it could have provided actual notice to them.

(Appellee's Resp. Mot. 4.)

Motions for reconsideration may be granted based on "new evidence" or to "correct clear

errors of law or fact." <u>Max's Seafood Café</u>, 176 F.3d at 677. Extensive notice procedures, at no

small cost to the court or the litigants, were established. Neither new evidence nor errors of fact

or law have been shown.

### ii.    Dispute Regarding Appeal

Anderson Memorial takes issue with this Court's statement that the bar date "order was

not appealed" stating that the PD Committee "sought leave to appeal this order to this Court,"

but appeal was denied as interlocutory. (Appellant's Mot. Reconsid. 3.) Further, Anderson

Memorial "was not a party to the bar date motion, but even if it had been, it would not have had

the right to appeal, and if it had attempted to do so, its appeal likewise would have been denied

as interlocutory." (<u>Id.</u>)

Anderson Memorial correctly asserts that the PD Committee moved to appeal the bar date

order, a motion denied by the court.[8] What is left unsaid is the reasoning behind the PD

Committee's appeal – namely that there was "no bar date order which applies to other asbestos

claimants." (Bankr. Dkt. No. 2019 ¶ 4.) This appeal was made because the PD Committee was

worried that other groups of claimants, not subject to a bar date, might achieve an economic

---

[8] The PD Committee subsequently sought and obtained revisions to the initial bar date
order. (Bankr. Dkt. No. 2274 & 2502.)

advantage. (Bankr. Dkt. No. 2554, p. 3.); see In re Celotex Corp., 204 B.R. 586, 592 (Bankr.

M.D. Fla. 1996) (different bar dates set for different groups of claimants). Interlocutory review

was denied given that when there are "multiple issues arising from the diverse types of claims

before them, courts have frequently established multiple bar dates . . . different bar dates from

different claims, absent identifiable immediate prejudice" do not provide the "exceptional

circumstances necessary to warrant leave to appeal the interlocutory Order governing the bar date

for Property Damage Proof of Claims." (Bankr. Dkt. No. 2555, p. 4-5.)

        Anderson Memorial's appeal does not alter the fact that a valid bar date was established

with input from the parties to this litigation, including the PD Committee. This Court previously

noted that Anderson Memorial had not met the numerosity requirement imposed by Federal Rule

23(a), and that class certification would render the bar date useless, adversely affecting those who

filed timely proofs of claim. In re W.R. Grace & Co., 389 B.R. at 380. Anderson Memorial has

not shown that their filing an appeal justifies reconsideration of this Court's prior decision to

upholding the denial of class certification.

> ### iii.    Anderson Met the Numerosity Requirement Imposed by Rule 23(a) When it Attached the Names of 3000 Claimants to its Motion for Class Certification

        Anderson Memorial asserts in its Reply Brief that it "met numerosity by filing class

proofs of claim and by attaching a list of more than 3000 claimants" to its Motion for Class

Certification, something "neither this Court, the Bankruptcy Court, nor Grace realized that

Anderson did." (Appellant's Reply Br. 3-4.) Like the claimants in In re Interregional Equity

Corp. ("Interregional"), Anderson Memorial asserts that it attached a list of putative class

members to its Complaint and as a result there was no "need to get into the individual proof of

claim form" as the list of all putative claim holders "was sufficient." In re Interregional Equity

Corp., 227 B.R. 358, 371 (D.N.J. 1998).

Anderson Memorial is making both legal and factual arguments regarding compliance

with Rule 23's numerosity requirement. The legal argument, which will be addressed

subsequently, is that following the lead of Interregional, this Court should not limit class

certification to those who filed individual proof of claim forms prior to the bar date. The factual

argument suggests that by attaching 3000 listed claimants to their Complaint, Anderson

Memorial, consistent with Interregional, satisfied the numerosity requirement imposed by

Federal Rule of Civil Procedure 23(a). FED. R. CIV. P. 23(a).

The existence of these 3000 claimants does not constitute new evidence justifying

reconsideration. The Bankruptcy Court, at the outset of its Memorandum Opinion, noted that

Anderson Memorial's proposed class included those "claims identified in Exhibit A," i.e., the

3000 claims raised by Anderson Memorial. In re W.R. Grace & Co., 389 B.R. at 373. Two

sentences later the Bankruptcy Court noted "for the reasons which follow, we find that Anderson

has not satisfied the numerosity requirements of Fed. R. Civ. P. 23(a)." Id. Aware of the 3,000

claims listed in Exhibit A, the Bankruptcy Court determined that there was not sufficient

numerosity for class certification as the only valid claim was Anderson Memorial's claim "for a

South Carolina building." Id. at 376. This Court affirmed the Bankruptcy Court's decision.

Anderson Memorial has provided no evidence justifying reconsideration.

### iv. Anderson Memorial Asserts that Class Certification Would not Harm Other Claimants

Anderson Memorial disputes the Bankruptcy Court's determination that class certification would harm those filing timely proofs of claim. (Appellant's Reply Br. 5.) Citing to an absence of evidence on the record, the fact that all but a few claimants have settled their claims, and that "Grace's Plan provides for the payment in full of all unresolved property damage claims that are allowed," Anderson Memorial argues that class certification would not harm other claimants. This argument fails to note that the tentative settlements between Debtor and other claimants have not been approved. Permitting claims filed after the bar date would enable new claimants to opt out of the class asserting their own independent claims. A new class could undermine current, long-standing settlement efforts, and this Court fails to see how such a scenario advances judicial economy and does not harm those who filed timely claims. Assuming *arguendo* that Anderson Memorial is correct, a dispute over the harm incurred by yet uncompensated claimants does not provide sufficient reason to grant a motion to reconsider. See Max's Seafood, 176 F. 3d at 677 (motion for reconsideration must show either "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.")

### v. The Court Erred in Determining That No Anderson Memorial Class was Certified as to Grace

Anderson Memorial next argues that the Bankruptcy Court's determination that "there is no pre- or postpetition Anderson memorial class . . . makes no sense." (Appellant's Reply Br. 9-10) (internal quotations omitted.) Anderson Memorial is grasping at straws with this argument. There is no dispute that the South Carolina state court's grant of class certification was "conditional," issued to preserve state court jurisdiction, and had no precedential value. (Id. at 7;

In re W.R. Grace & Co., 389 B.R. at 374.) Also, on June 29, 2001, the South Carolina court

issued a final Order of Certification, which included three defendants and did not include Debtor

as a defendant. Id.

Anderson Memorial provides no evidence showing that the Bankruptcy Court erred when

finding that there was no "pre- or postpetition certified class as to Grace." Even if the South

Carolina court's "conditional" certification created a certified class, the Bankruptcy Court's

denial of class certification is warranted. A state court certified class still must comply with Rule

23. See Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974) ("[i]n determining the

propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are

met."); see also Zelinsky v. Staples, Inc., Civ. A. No. 08-864, 2008 WL 4425814, at *5 (W. D.

Pa. Sep. 29, 2008) ("Significantly, I note that the action was initially commenced in Pennsylvania

state court, and then was removed to this Court by the Defendant, thereby causing Rule 23 to

come into play.") Examining the Rule 23 factors, the Bankruptcy Court determined that

Anderson Memorial failed to meet these factors. This Court, looking at the facts, affirmed that

determination.

As such, while no pre- or postpetition class was certified as to Grace, even if such a class

had been certified by the South Carolina court, such a conditional class still has to comply with

the Rule 23 standards. The proposed Anderson Memorial class did not meet the Rule 23 criteria.

### vi. Other Manifest Factual Errors Made by Bankruptcy Court

Anderson Memorial also asserts that the Bankruptcy Court made several manifestly

wrong factual errors. One such error involves a dispute about when property damage issues were

first litigated, be it in 2002 or 2005. (Appellant's Reply Br. 10.) The other error apparently

involves Anderson Memorial's disagreement with assertions made by Debtor regarding the

Bankruptcy Court's decision to not admit boxes of sales records. (Id.) Regarding the latter

error, this Court fails to see how assertions made by Debtor constitute error by the Bankruptcy

Court. More importantly, neither "error" constitutes a "clear error of . . . fact" that must be

corrected "to prevent manifest injustice." Max's Seafood Café, 176 F. 3d at 677.

### 2.    Anderson Memorial's Assertion of Legal Error

#### a.    Anderson's Reliance Upon *In re American Reserve* and *In re Interregional Equity Corp.*

Anderson Memorial argues that since the Seventh Circuit's decision in In re American

Reserve, 840 F. 2d 487, 492 (7th Cir. 1987) ("American Reserve"), there exists "an unbroken

string of Court of Appeals decisions allowing class proofs of claims in bankruptcies as well as a

bankruptcy ruling in this circuit" rejecting this Court's "holding that membership in a class

action is limited to those who filed individual proofs of claim." (Appellant's Mot. Reconsid. 3

citing  In re American Reserve, 840 F. 2d at 492 (7th Cir. 1987)); In re Interregional Equity

Corp., 227 B.R. 358, 371 (D.N.J. 1998). American Reserve holds that a bankruptcy court may

permit class proofs of claim. In re American Reserve, 840 F.2d at 493. Although, the Third

Circuit has not adopted American Reserve a bankruptcy court in the District of New Jersey, in

Interregional, certified a class that included proofs of claim filed after the bar date. In re

Interregional Equity Corp., 227 B.R. at 371.

Anderson Memorial avers that these cases posit that "class membership is not limited by

date order" and seeks to take "depositions the Bankruptcy Court quashed, to identify building

owners with Grace's ACM." (Appellant's Mot. Reconsid. 4.) Anderson Memorial, however, endeavors to have both cases do more lifting than they can bear as they are readily distinguishable from the present case.

### i.    *American Reserve*

While <u>American Reserve</u> permitted a bankruptcy class action, it does not follow that bankruptcy class actions be permitted as a matter of right, as "not every effort to represent a class will succeed; the representative is an agent only if the class is certified." <u>In re American Reserve</u>, 840 F.2d at 493. <u>American Reserve</u> goes into considerable detail examining the strengths and short-comings of class actions, noting that features, inherent in class actions, could "greatly complicate a bankruptcy without yielding significant compensation to the injured parties." <u>Id.</u> at 491. In such instances, the "marginal deterrence would not be worth the candle" and "may make class certification less desirable in bankruptcy than in ordinary civil litigation." <u>Id.</u> at 491, 494. Conversely, class action "suits for larger stakes, based on sound legal theories, may hold out substantial prospects of compensation or deterrence without unduly complicating or delaying the case." <u>Id.</u> at 492.

Recognizing the varied utility of class actions, the <u>American Reserve</u> court remanded to the bankruptcy court, noting that the bankruptcy judge has "discretion under Rule 9014 not to apply Rule 7023 - and therefore not to apply Rule 23 - in this 'contested matter'" as the bankruptcy rules provide courts with "substantial discretion to consider the benefits and costs of class litigation." <u>Id.</u> at 494, 492. In the present case, the Bankruptcy Court engaged in a detailed, fact specific analysis finding that Anderson Memorial did not meet the numerosity requirement

15

under Rule 23(a).  In re W.R. Grace & Co., 389 B.R. at 374-75.[9]

Even though it determined that Anderson Memorial had not met the requirements

imposed by Federal Rule 23(a), the Bankruptcy Court addressed the Rule 23(b) factors "to

further illustrate the impropriety and inadvisability of certifying a class in this case." Id. at 377.

The Bankruptcy Court found that "there has been no showing of a risk of inconsistent

adjudication or that adjudication with respect to individual class members would be dispositive

of the interests of other claimants," or that a class would be a "superior method" of adjudication.

Id. at 378.  A class action would nullify the bar date without showing excusable neglect; and the

class action opt-out election would provide "another end run around the bar date" adversely

affecting the bankruptcy proceedings. Id. at 380.  Further, certification would "needlessly

prolong this case which was filed nearly seven years ago." Id.

Consistent with American Reserve, this Court looked at the Bankruptcy Court's decision

"in detail," affirming that the "numerosity requirement was not met," and that certification would

"render the bar date useless and adversely affect claimants who filed timely proofs of claim." In

re W.R. Grace & Co., 2008 WL 4234339, at *2.

    **ii.    *Interregional***

Anderson Memorial cites Interregional for the proposition that while the Third Circuit has

---

[9] The Court noted that Anderson Memorial did not provide it with any "persuasive authority or argument" to show (1) that the bar date "can or ought to be bypassed. . . so that claimants who did not file a proof of claim by the date of March 31, 2003, could now participate in a class proof claim;" (2) that the bar date notice procedures were inadequate or that class certification and notice would improve upon those procedures; or (3) why remaining claims cannot be timely adjudicated "through the property damage case management process already established and working in this case." Id. at 377.

not adopted <u>American Reserve</u>, courts in the Third Circuit have certified classes with claimants

who filed proofs of claim after the bar date. (Pl.'s Mot. Reconsid. 6.)  Anderson Memorial is

correct, but like <u>American Reserve</u>, <u>Interregional</u> is distinguishable from the present suit.

<u>Interregional</u> involved efforts to certify a class where the claimants were all victims of an

elaborate ponzi scheme.   Noting that "the vast majority of courts who have recently considered

the issue have concluded that class proofs of claim are now regularly permitted in a bankruptcy

proceeding," the court engaged in an intensely fact specific analysis examining the Rule 23(a)

factors necessary for class certification: (1) numerosity, (2) common questions of law or fact, (3)

typicality, and (4) whether representatives will fairly and adequately protect the interests of the

class. <u>In re Interregional Equity Corp.</u>, 227 B.R. at 366; FED. R. CIV. P. 23(a).  The <u>Interregional</u>

court granted class certification concluding that these factors were met.

The Bankruptcy Court in the present case, carefully analyzed the Rule 23(a) factors,

concluding that numerosity was dispositive and that Anderson Memorial "failed to meet the

requirements of Rule 23." <u>In re W. R. Grace & Co.</u>, 389 B.R. 373, 376 (D. Del 2008).  This

Court affirmed that decision, and Anderson Memorial provides no sufficient reasons to warrant

reconsideration of that decision.

Likewise, the <u>Interregional</u> court determined that Rule 23(b)'s requirement that a class

action be "superior to other available methods for fairly and efficiently adjudicating the

controversy" had been met.  <u>Interregional Equity Corp.</u>, 227 B.R. at 370.[10]  Rule 23(b)(3) analysis

---

[10] Upon meeting the Rule 23(a) criteria, at least one of the elements of Rule 23(b) must be
met.  Specifically, Federal Rule of Civil Procedure 23(b) states:
A class action may be maintained if Rule 23(a) is satisfied and if:
(1) prosecuting separate actions by or against individual class members would
create a risk of:

requires that the court "identify the legal and factual issues" and "determine whether the common

issues predominate." Id. at 369.  Rule 23(b)(3) provides a list of factors to consider including

class member's interest in separate actions, other ongoing litigation, the benefits of combining

claims in one forum and the difficulty in managing a class action.  See Fed. R. Civ. P.

23(b)(3)(A-D).

    The Interregional court determined there were common issues of law and fact as

prospective class members were "all victims of a massive 'ponzi' scheme." Id. at 370.  Unlike

creditors in many bankruptcy proceedings, the various claims raised in Interregional did

undermine the efficacy of a class action.  Id.

    Finding common issues of fact, the court then considered whether a class action was

"superior to other available methods for fairly and efficiently adjudicating the controversy." FED.

---

         (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and  (D) the likely difficulties in managing a class action.

R. CIV. P. 23(v)(3). The court dismissed a suggestion that a series of "test cases" would be more

effective, as such cases could actually increase costs to the litigants and crowd the docket, a

social cost borne by all. Interregional Equity Corp., 227 B.R. at 370.

The court next examined whether claims of proof submitted after the bar date should be

permitted. Like Debtor in this case, those opposing to class certification in Interregional asserted

that permitting claims filed after the bar date "would unjustifiably extend the bar date with

respect to lease investors who have not filed timely proofs of claims." Id. at 371. The

Interregional court rejected this argument, and found such claims valid. Id.

Finally, the Interregional court disagreed with the argument that granting class actions,

after the bar date, violated Bankruptcy Rule 2019's procedures governing representation of

multiple creditors. The court determined that the "safeguards inherent" in class action

procedures satisfied Rule 2019, [11] noting that:

---

[11]    Rule 2019 states: In a chapter 9 municipality or chapter 11 reorganization case,
except with respect to a committee appointed pursuant to § 1102 or 1114 of the
Code, every entity or committee representing more than one creditor or equity
security holder and, unless otherwise directed by the court, every indenture
trustee, shall file a verified statement setting forth (1) the name and address of the
creditor or equity security holder; (2) the nature and amount of the claim or
interest and the time of acquisition thereof unless it is alleged to have been
acquired more than one year prior to the filing of the petition; (3) a recital of the
pertinent facts and circumstances in connection with the employment of the entity
or indenture trustee, and, in the case of a committee, the name or names of the
entity or entities at whose instance, directly or indirectly, the employment was
arranged or the committee was organized or agreed to act; and (4) with reference
to the time of the employment of the entity, the organization or formation of the
committee, or the appearance in the case of any indenture trustee, the amounts of
claims or interests owned by the entity, the members of the committee or the
indenture trustee, the times when acquired, the amounts paid therefor, and any
sales or other disposition thereof. The statement shall include a copy of the
instrument, if any, whereby the entity, committee, or indenture trustee is
empowered to act on behalf of creditors or equity security holders. A

not every effort to represent a class will succeed; the representative is an agent
only if the class is certified.  Putative agents keep the case alive pending the
decision on certification. . . . If the bankruptcy judge denies the request to certify a
class, then each creditor must file an individual proof of claim; the putative agent
never obtains "authorized agent" status.  If the court certifies the class, however,
the self-appointed agent has become "authorized", and the original filing is
effective for the whole class.

Id. (citing American Reserve, 840 F. 2d at 493.)

In the present case, despite finding that "the Rule 23(a) elements were not established by

Anderson Memorial," the Bankruptcy Court nonetheless examined whether the Rule 23(b)

criteria had been met.   In re W. R. Grace & Co., 389 B.R. at 376.  The Bankruptcy Court found

that a class action was not a superior method for adjudicating this suit.  The court noted that there

was no risk of inconsistent adjudication or evidence Debtors treated the class in such a manner

that warranted class relief.  Id.  Given this, the only Rule 23(b) factor considered was whether (1)

there existed "questions of law or fact common to the class members" that predominated "over

---

supplemental statement shall be filed promptly, setting forth any material changes
in the facts contained in the statement filed pursuant to this subdivision.

(b) On motion of any party in interest or on its own initiative, the court may (1)
determine whether there has been a failure to comply with the provisions of
subdivision (a) of this rule or with any other applicable law regulating the
activities and personnel of any entity, committee, or indenture trustee or any other
impropriety in connection with any solicitation and, if it so determines, the court
may refuse to permit that entity, committee, or indenture trustee to be heard
further or to intervene in the case; (2) examine any representation provision of a
deposit agreement, proxy, trust mortgage, trust indenture, or deed of trust, or
committee or other authorization, and any claim or interest acquired by any entity
or committee in contemplation or in the course of a case under the Code and grant
appropriate relief; and (3) hold invalid any authority, acceptance, rejection, or
objection given, procured, or received by an entity or committee who has not
complied with this rule or with § 1125(b) of the Code.

questions affecting only individual members" <u>and</u> (2) that a class action was the superior means

for the "fair and efficient adjudication of the controversy." <u>Id.</u> (internal quotations omitted).

The Bankruptcy Court found that Anderson Memorial's Motion for Class Certification

failed to meet these requirements. Many of the issues raised were specific to a finite number of

claims and dis not lend themselves to resolution as a class as these matters could be better

addressed on a "claimant-by-claimant" basis or as part of smaller groups of similarly situated

claimants. <u>Id.</u> A class action would nullify the bar date without a showing of excusable neglect;

and the class action opt-out election would provide "another end run around the bar date,"

adversely affecting the bankruptcy proceedings. <u>Id.</u> at 380. Further, certification would

"needlessly prolong this case which was filed nearly seven years ago." <u>Id.</u>

The Bankruptcy Court determined that class certification was inappropriate. Despite this,

Anderson Memorial seeks inclusion of claims filed after the bar date. Such an effort is futile as

both the Bankruptcy Court and this Court determined that Anderson Memorial failed to satisfy

either subsection (a) or (b) of Rule 23. Anderson Memorial has provided no evidence that merits

reversal of this Court's prior determination that denial of class certification was warranted.

Given the absence of class certification, this Court need not examine the general question of

whether proofs of claim, filed after the bar date, are admissible in bankruptcy. Both <u>American</u>

<u>Reserve</u> and <u>Interregional</u> note that "not every effort to represent a class will succeed." <u>American</u>

<u>Reserve</u>, 840 F. 2d at 493; <u>Interregional</u>, 227 B.R. at 371. This is one such instance.

In <u>Interregional</u>, the putative class was precisely defined and the causal chain was clear.

The present case lacks such clarity. Grace's ACM was sold to thousands of customers over a

period of decades. Many of those buildings have since changed hands. Further, the Bankruptcy

Court determined that Anderson Memorial had not met the requirements of Rule 23.  This Court

affirmed the Bankruptcy Court ruling.  The Bankruptcy Court's decision is consistent with both

American Reserve and Interregional – the decision to certify a class requires careful, fact-

intensive analysis.  This Court, looking at the evidence before it, affirmed that decision.

Anderson Memorial has not shown any changes in the controlling law, new evidence, or a clear

error of law or fact justifying reconsideration.

## IV. CONCLUSION

      For the reasons stated, Anderson Memorial's Motion for Leave to Appeal is Denied.  An

appropriate order follows.

# Attach. 23

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .    Case No.  01-1139 (JKF)
                              .
W.R. GRACE & CO.,             .
et al.,                       .    USX Tower - 54th Floor
                              .    600 Grant Street
                              .    Pittsburgh, PA 15219
              Debtors.        .
                              .    April 1, 2009
. . . . . . . . . . . . . .   .    10:29 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  DAVID BERNICK, ESQ.
                               BARBARA HARDING, ESQ.
                               JANET BAER, ESQ.
                               LISA ESAYIAN, ESQ.
                               CRAIG BRUENS, ESQ.
                               BRIAN STANSBURY, ESQ.
                               SAL BIANCA, ESQ.
                               RAINA JONES, ESQ.
                               HENRY THOMPSON, ESQ.
                               SCOTT McMILLAN, ESQ.
                          200 East Randolph Drive
                          Chicago, IL  60601


For the Debtors:          Kirkland & Ellis, LLP
                          By:  THEODORE FREEDMAN, ESQ.
                               DEANNA BOLL, ESQ.
                               CHRISTOPHER GRECO, ESQ.
                               MAGALI LEE, ESQ.
                               MARC LEWINSTEIN, ESQ.
                          Citigroup Center, 153 East 53rd St.
                          New York, NY  10022


Audio Operator:           Nickita Barksdale

Proceedings recorded by electronic sound recording, transcript
                  produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

46

1  parties.

2          In terms of the complexity, expense and duration of

3  the potential ZAI litigation, it has been going on for years.

4  The little piece of it that I did see in terms of the Science

5  trial that affected only the enumerated claims and not all of

6  the members of the class who have already opted in, let alone

7  those who may potentially or have already opted out, convinces

8  me that this litigation could go on potentially for decades,

9  not just years, and as a result I think that that factor alone

10 could probably justify settlement but, nonetheless, I think Mr.

11 Westbrook did a very adequate job in explaining all of the

12 factors that the Court is compelled to take into consideration

13 and I will accept his analysis of those factors, not just on

14 the oral argument but also in the papers that have been filed

15 by the parties in the case.

16         And so, I don't see any need to review those factors

17 here today, I simply will accept them.  I will state for the

18 record that I have read those papers and I have listened to the

19 argument and based on those reviews and having heard that

20 argument today, I will accept them and the reason for my

21 overruling Anderson's objection, I think, has been made clear,

22 that the ability to object to the plan and to vote on the plan

23 is preserved.

24         So, I will take an order if someone has one,

25 approving.

**J&J COURT TRANSCRIBERS, INC.**