# Attach. 24

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | **Objection Deadline**: November 19, 2012, at |
| | ) | 4:00 p.m. (prevailing eastern time) |

## SUMMARY APPLICATION OF KIRKLAND & ELLIS LLP FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS BANKRUPTCY COUNSEL TO W. R. GRACE & CO., *ET AL.*, FOR THE MONTHLY INTERIM PERIOD FROM SEPTEMBER 1, 2012, THROUGH SEPTEMBER 30, 2012

| | |
|---|---|
| Name of Applicant: | **Kirkland & Ellis LLP ("K&E")** |
| Authorized to Provide Professional Services to: | **W. R. Grace & Co., *et al.*, Debtors and Debtors-in-Possession** |
| Date of Retention: | **Retention Order entered May 3, 2001, effective as of April 2, 2001** |
| Period for which compensation and reimbursement is sought: | **September 1, 2012, through September 30, 2012** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$301,845.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$5,352.35** |

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc.), E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

No. 29821

This is a **X** monthly ___ interim __ final application.

The total time expended for the preparation of this application is approximately **35 hours**, and the corresponding estimated compensation *that will be requested in a future application* is approximately **$10,000.00**.

This is K&E's monthly application for interim compensation of services for the interim fee period September 1, 2012 through September 30, 2012.

The following applications have been filed previously in the Chapter 11 Cases:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| May 29, 2001 | 4/2 - 4/30/01 | $626,079.00 | $32,439.84 | Interim approval | Interim approval |
| June 29, 2001 | 5/1 - 5/31/01 | $567,151.00 | $77,487.86 | Interim approval | Interim approval |
| July 31, 2001 | 6/1 - 6/30/01 | $560,569.50 | $45,466.13 | Interim approval | Interim approval |
| July 31, 2001 | April - June 2001 | $1,753,799.50 | $155,393.83 | $1,753,799.50[2] | $155,393.83 |
| August 28, 2001 | 7/1 - 7/31/01 | $476,582.50 | $25,312.13 | Interim approval | Interim approval |
| September 28, 2001 | 8/1 - 8/31/01 | $472,334.50 | $29,022.59 | Interim approval | Interim approval |
| October 30, 2001 | 9/1 - 9/30/01 | $443,617.50 | $27,147.47 | Interim approval | Interim approval |
| November 7, 2001 | July - September 2001 | $1,392,534.50 | $81,482.19 | $1,392,534.50[2] | $81,482.19 |
| December 11, 2001 | 10/1 - 10/31/01 | $493,074.00 | $27,724.54 | Interim approval | Interim approval |
| December 29, 2001 | 11/1 - 11/30/01 | $524,980.00 | $29,678.21 | Interim approval | Interim approval |
| January 31, 2002 | 12/1 - 12/31/01 | $405,278.50 | $27,276.95 | Interim approval | Interim approval |
| February 7, 2002 | October – December 2001 | $1,423,332.50 | $84,679.70 | $1,419,127.00[2] | $84,679.70 |
| March 4, 2002 | 1/1 - 1/31/02 | $439,056.00 | $32,279.54 | Interim approval | Interim approval |
| March 27, 2002 | 2/1 - 2/28/02 | $412,304.00 | $18,475.64 | Interim approval | Interim approval |
| May 2, 2002 | 3/1 - 3/31/02 | $430,342.50 | $51,759.20 | Interim approval | Interim approval |
| June 10, 2002 | January - March 2002 | $1,281,702.50 | $102,514.38 | $1,281,702.50[3] | $101,656.38 |
| June 10, 2002 | 4/1 - 4/30/02 | $410,702.50 | $25,286.05 | Interim approval | Interim approval |
| July 2, 2002 | 5/1 - 5/31/02 | $335,280.50 | $25,556.83 | Interim approval | Interim approval |
| August 8, 2002 | 6/1 - 6/30/02 | $243,127.00 | $16,326.36 | Interim approval | Interim approval |
| September 3, 2002 | April - June 2002 | $989,110.00 | $67,169.24 | $981,666.50[4] | $67,169.24 |
| September 11, 2002 | 7/1 - 7/31/02 | $335,129.00 | $28,504.48 | Interim approval | Interim approval |
| October 2, 2002 | 8/1 - 8/31/02 | $344,619.00 | $86,047.20 | Interim approval | Interim approval |
| October 30, 2002 | 9/1 - 9/30-02 | $238,876.50 | $20,882.49 | Interim approval | Interim approval |

---

[2]    The fees and expenses requested in the April-June, 2001, July-September, 2001 and October-December, 2001, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on November 29, 2002.

[3]    The fees and expenses requested in the January-March, 2002, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on October 9, 2002.

[4]    The fees and expenses requested in the April-June, 2002, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on November 29, 2002.

2

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| November 27, 2002 | July - September 2002 | $918,624.50 | $135,434.17 | $918,624.50[5] | $134,478.90 |
| December 6, 2002 | 10/1 - 10/31/02 | $207,778.00 | $7,769.74 | Interim approval | Interim approval |
| January 13, 2003 | 11/1 - 11/30/02 | $122,419.00 | $4,732.30 | Interim approval | Interim approval |
| January 30, 2003 | 12/1 - 12/31/02 | $129,243.50 | $6,093.80 | Interim approval | Interim approval |
| March 4, 2003 | October - December 2002 | $459,440.50 | $18,595.84 | $459,440.50[6] | $18,467.74 |
| March 4, 2003 | 1/1 - 1/31/03 | $162,033.00 | $6,383.16 | Interim approval | Interim approval |
| April 2, 2003 | 2/1 - 2/28/03 | $215,511.50 | $3,784.70 | Interim approval | Interim approval |
| April 29, 2003 | 3/1 - 3/31/03 | $146,603.00 | $6,713.84 | Interim approval | Interim approval |
| May 15, 2003 | January - March 2003 | $524,147.50 | $16,881.70 | $524,045.50[7] | $16,881.70 |
| June 3, 2003 | 4/1 - 4/30/03 | $135,130.00 | $2,786.42 | Interim approval | Interim approval |
| July 11, 2003 | 5/1 - 5/31/03 | $109,408.00 | $6,546.04 | Interim approval | Interim approval |
| July 31, 2003 | 6/1 - 6/30/03 | $115,099.00 | $1,925.86 | Interim approval | Interim approval |
| August 27, 2003 | April - June, 2003 | $359,637.00 | $11,258.32 | $357,346.00[8] | $11,183.48 |
| September 5, 2003 | 7/1 - 7/31/03 | $197,495.50 | $9,235.33 | Interim approval | Interim approval |
| October 1, 2003 | 8/1 - 8/31/03 | $178,910.50 | $7,009.66 | Interim approval | Interim approval |
| November 6, 2003 | 9/1 - 9/30/03 | $157,200.00 | $3,817.57 | Interim approval | Interim approval |
| November 18, 2003 | July - September 2003 | $533,606.00 | $20,062.56 | $533,606.00[9] | $20,062.56 |
| November 26, 2003 | 10/1 - 10/31/03 | $251,093.50 | $7,115.96 | Interim approval | Interim approval |
| December 29, 2003 | 11/1 - 11/30/03 | $187,914.00 | $4,969.88 | Interim approval | Interim approval |
| February 2, 2004 | 12/1 - 12/31/03 | $317,880.00 | $8,631.60 | Interim approval | Interim approval |
| February 25, 2004 | October - December 2003 | $756,887.50 | $20,717.44 | $756,838.00[10] | $20,717.44 |
| March 5, 2004 | 1/1 - 1/31/04 | $524,446.00 | $32,428.07 | Interim approval | Interim approval |
| April 2, 2004 | 2/1 - 2/29/04 | $274,589.50 | $10,852.51 | Interim approval | Interim approval |
| May 3, 2004 | 3/1 - 3/31/04 | $337,945.00 | $13,159.10 | Interim approval | Interim approval |
| May 17, 2004 | January - March 2004 | $1,136,980.50 | $56,439.68 | $1,134,755.00[11] | $56,439.68 |
| June 1, 2004 | 4/1 - 4/30/04 | $280,547.50 | $10,895.93 | Interim approval | Interim approval |
| July 1, 2004 | 5/1 - 5/31/04 | $213,906.00 | $9,502.49 | Interim approval | Interim approval |
| September 2, 2004 | 6/1 - 6/30/04 | $430,246.50 | $15,235.72 | Interim approval | Interim approval |
| October 6, 2004 | April - June 2004 | $924,700.00 | $35,634.14 | $918,960.50[12] | $35,557.55 |
| September 17, 2004 | 7/1 - 7/31/04 | $599,563.50 | $27,869.76 | Interim approval | Interim approval |
| October 7, 2004 | 8/1 - 8/31/04 | $793,285.00 | $45,729.42 | Interim approval | Interim approval |

[5]    The fees and expenses requested in the July-September, 2002, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 14, 2003.

[6]    The fees and expenses requested in the October-December, 2002, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on July 28, 2003.

[7]    The fees and expenses requested in the January-March, 2003, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 22, 2003.

[8]    The fees and expenses requested in the April-June, 2003, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 15, 2003.

[9]    The fees and expenses requested in the July-September, 2003, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on April 26, 2004.

[10]    The fees and expenses requested in the October-December, 2003, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 16, 2004.

[11]    The fees and expenses requested in the January-March, 2004, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 27, 2004.

[12]    The fees and expenses requested in the April-June, 2004, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on January 25, 2005.

3

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| November 3, 2004 | 9/1 - 9/30/04 | $913,771.00 | $32,811.19 | Interim approval | Interim approval |
| November 17, 2004 | July – September 2004 | $2,306,619.50 | $106,410.37 | $2,298,879.00[13] | $105,176.56 |
| December 7, 2004 | 10/1 - 10/31/04 | $842,268.50 | $38,703.13 | Interim approval | Interim approval |
| January 7, 2004 | 11/1 - 11/30/04 | $581,027.00 | $35,469.12 | Interim approval | Interim approval |
| February 1, 2005 | 12/1 - 12/31/04 | $863,104.50 | $38,461.17 | Interim approval | Interim approval |
| February 14, 2005 | October – December 2004 | $2,286,400.00 | $112,633.42 | $2,279,008.50[14] | $110,200.64 |
| March 18, 2005 | 1/1 - 1/31/05 | $1,214,802.50 | $65,721.17 | Interim approval | Interim approval |
| April 15, 2005 | 2/1 - 2/28/05 | $717,562.00 | $46,304.21 | Interim approval | Interim approval |
| May 19, 2005 | 3/1 - 3/31/05 | $916,504.00 | $50,822.73 | Interim approval | Interim approval |
| June 15, 2005 | January - March 2005 | $2,848,868.50 | $162,848.11 | $2,833,566.00[15] | $162,482.21 |
| June 7, 2005 | 4/1 - 4/30/05 | $862,337.00 | $32,392.41 | Interim approval | Interim approval |
| June 29, 2005 | 5/1 - 5/31/05 | $852,424.50 | $52,685.55 | Interim approval | Interim approval |
| August 5, 2005 | 6/1 - 6/30/05 | $1,181,036.00 | $58,504.79 | Interim approval | Interim approval |
| August 8, 2005 | April - June 2005 | $2,895,797.50 | $143,582.75 | $2,894,660.00[16] | $143,530.87 |
| September 9, 2005 | 7/1 - 7/31/05 | $1,740,148.50 | $155,036.60 | Interim approval | Interim approval |
| September 28, 2005 | 8/1 - 8/31/05 | $1,451,595.50 | $95,151.93 | Interim approval | Interim approval |
| October 28, 2005 | 9/1 - 9/30/05 | $1,471,412.50 | $128,814.69 | Interim approval | Interim approval |
| October 28, 2005 | July - September 2005 | $4,663,156.50 | $379,003.22 | $4,655,239.50[17] | $378,588.48 |
| November 28, 2005 | 10/1 - 10/31/05 | $1,602,349.50 | $111,318.89 | Interim approval | Interim approval |
| December 28, 2005 | 11/1 - 11/30/05 | $1,743,406.00 | $182,798.39 | Interim approval | Interim approval |
| January 25,2006 | 12/1 - 12/31/05 | $1,638,659.50 | $161,888.24 | Interim approval | Interim approval |
| February 14, 2006 | October - December 2005 | $4,984,415.00 | $456,005.52 | $4,978,349.00[18] | $453,367.08 |
| February 28, 2006 | 1/1 - 1/31/06 | $1,667,688.00 | $176,100.89 | Interim approval | Interim approval |
| March 28, 2006 | 2/1 - 2/28/06 | $1,669,067.50 | $395,113.02 | Interim approval | Interim approval |
| April 28, 2006 | 3/1 - 3/31/06 | $1,615,330.00 | $685,462.58 | Interim approval | Interim approval |
| May 15, 2006 | January - March 2006 | $4,952,085.50 | $1,256,676.49 | $4,942,401.50[19] | $1,256,429.49 |
| May 30, 2006 | 4/1 - 4/30/06 | $1,628,876.50 | $814,117.99 | Interim approval | Interim approval |
| June 28, 2006 | 5/1 - 5/31/06 | $1,800,762.00 | $311,657.73 | Interim approval | Interim approval |
| July 28, 2006 | 6/1 - 6/30/06 | $1,666,537.00 | $207,374.07 | Interim approval | Interim approval |
| August 14, 2006 | April - June 2006 | $5,096,175.75 | $1,333,149.79 | $5,096,175.50[20] | $1,331,919.73 |
| August 28, 2006 | 7/1 - 7/31/06 | $2,026,266.00 | $155,509.57 | Interim approval | Interim approval |

[13]    The fees and expenses requested in the July-September, 2004, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 22, 2005.

[14]    The fees and expenses requested in the October-December, 2004, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 29, 2005.

[15]    The fees and expenses requested in the January-March, 2005, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 26, 2005.

[16]    The fees and expenses requested in the April-June, 2005, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 19, 2005.

[17]    The fees and expenses requested in the July-September, 2005, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 24, 2006.

[18]    The fees and expenses requested in the October-December, 2005, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 16, 2006.

[19]    The fees and expenses requested in the January-March, 2006, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 25, 2006.

[20]    The fees and expenses requested in the April-June, 2006, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 18, 2006.

4

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| September 28, 2006 | 8/1 - 8/31/06 | $2,458,300.00 | $377,534.56 | Interim approval | Interim approval |
| October 30, 2006 | 9/1 - 9/30/06 | $1,508,315.00 | $454,899.58 | Interim approval | Interim approval |
| November 14, 2006 | July - September 2006 | $5,992,881.00 | $987,943.71 | $5,984,268.75[21] | $986,255.71 |
| November 28, 2006 | 10/1 - 10/31/06 | $1,732,139.00 | $698,068.49 | Interim approval | Interim approval |
| December 28, 2006 | 11/1 - 11/30/06 | $1,846,984.50 | $860,948.29 | Interim approval | Interim approval |
| January 29, 2007 | 12/1 - 12/31/06 | $1,577,574.50 | $1,171,910.97 | Interim approval | Interim approval |
| February 14, 2007 | October - December 2006 | $5,156,698.00 | $2,730,927.75 | $5,155,238.00[22] | $2,730,927.75 |
| February 28, 2007 | 1/1 - 1/31/07 | $1,653,083.50 | $505,470.24 | Interim approval | Interim approval |
| March 28, 2007 | 2/1 - 2/28/07 | $1,855,844.00 | $793,394.48 | Interim approval | Interim approval |
| April 30, 2007 | 3/1 - 3/31/07 | $2,043,431.50 | $614,588.91 | Interim approval | Interim approval |
| May 15, 2007 | January - March 2007 | $5,552,359.00 | $1,913,453.63 | $5,547,606.50[23] | $1,913,453.63 |
| May 29, 2007 | 4/1 - 4/30/07 | $1,617,793.00 | $1,471,980.14 | Interim approval | Interim approval |
| June 28, 2007 | 5/1 - 5/31/07 | $1,886,409.50 | $1,580,009.04 | Interim approval | Interim approval |
| July 30, 2007 | 6/1 - 6/30/07 | $2,301,815.00 | $2,237,072.31 | Interim approval | Interim approval |
| August 14, 2007 | April - June 2007 | $5,806,017.50 | $5,289,061.49 | $5,801,255.00[24] | $5,289,061.49 |
| August 28, 2007 | 7/1 - 7/31/07 | $2,031,978.00 | $3,054,735.85 | Interim approval | Interim approval |
| September 28, 2007 | 8/1 - 8/31/07 | $2,141,450.50 | $1,524,583.81 | Interim approval | Interim approval |
| October 29, 2007 | 9/1 - 9/30/07 | $1,851,837.50 | $2,068,988.69 | Interim approval | Interim approval |
| November 14, 2007 | July - September 2007 | $6,025,266.00 | $6,648,308.35 | $6,009,675.50[25] | $6,648,308.35 |
| November 28, 2007 | 10/1 - 10/31/07 | $2,819,249.00 | $1,902,419.07 | Interim approval | Interim approval |
| December 28, 2007 | 11/1 - 11/30/07 | $2,218,978.50 | $1,307,904.30 | Interim approval | Interim approval |
| January 28, 2008 | 12/1 - 12/31/07 | $2,145,512.00 | $861,447.64 | Interim approval | Interim approval |
| February 14, 2008 | October - December 2007 | $7,183,739.50 | $4,071,771.01 | $7,179,358.50[26] | $4,071,035.37 |
| February 28, 2008 | 1/1 - 1/31/08 | $2,982,614.00 | $1,437,331.45 | Interim approval | Interim approval |
| March 28, 2008 | 2/1 - 2/29/08 | $1,556,573.00 | $1,323,655.09 | Interim approval | Interim approval |
| April 28, 2008 | 3/1 - 3/31/08 | $2,723,985.00 | $1,981,870.63 | Interim approval | Interim approval |
| May 15, 2008 | January - March 2008 | $7,263,172.00 | $4,742,857.17 | $7,258,924.50[27] | $4,740,246.26 |
| May 28, 2008 | 4/1 - 4/30/08 | $1,926,854.00 | $776,768.04 | Interim approval | Interim approval |
| June 30, 2008 | 5/1 - 5/31/08 | $1,903,907.50 | $912,081.39 | Interim approval | Interim approval |
| July 28, 2008 | 6/1 - 6/30/08 | $2,007,344.00 | $1,048,779.70 | Interim approval | Interim approval |
| August 14, 2008 | April - June 2008 | $5,838,105.50 | $2,737,629.13 | $5,837,573.00[28] | $2,735,591.33 |

[21]   The fees and expenses requested in the July-September, 2006, interim monthly Applications were approved on an interim basis pursuant to the amended order entered by this Court on May 3, 2007.

[22]   The fees and expenses requested in the October-December, 2006, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 20, 2007.

[23]   The fees and expenses requested in the January-March, 2007, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 25, 2007.

[24]   The fees and expenses requested in the April-June, 2007, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 13, 2007.

[25]   The fees and expenses requested in the July-September, 2007, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 12, 2008.

[26]   The fees and expenses requested in the October-December, 2007, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 23, 2008.

[27]   The fees and expenses requested in the January-March, 2008, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on October 1, 2008.

[28]   The fees and expenses requested in the April-June, 2008, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 17, 2008.

5

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| August 28, 2008 | 7/1 - 7/31/08 | $2,028,629.50 | $282,406.92 | Interim approval | Interim approval |
| September 29, 2008 | 8/1 - 8/31/08 | $2,383,467.50 | $150,525.88 | Interim approval | Interim approval |
| October 28, 2008 | 9/1 - 9/30/08 | $2,336,428.00 | $203,984.33 | Interim approval | Interim approval |
| November 14, 2008 | July - September 2008 | $6,748,525.00 | $636,917.13 | $6,746,495.50[29] | $633,229.34 |
| December 1, 2008 | 10/1 - 10/31/08 | $2,671,560.00 | $372,472.73 | Interim approval | Interim approval |
| December 29, 2008 | 11/1 - 11/30/08 | $2,574,249.50 | $445,054.32 | Interim approval | Interim approval |
| January 29. 2009 | 12/1 - 12/31/08 | $2,495,551.00 | $472,978.64 | Interim approval | Interim approval |
| February 16, 2009 | October - December 2008 | $7,741,360.50 | $1,290,505.69 | $7,724,905.50[30] | $1,289,347.54 |
| March 12, 2009 | 1/1 -1/1/31/09 | $3,260,332.50 | $609,498.37 | Interim approval | Interim approval |
| April 2, 2009 | 2/1 - 2/28/09 | $4,249,447.50 | $1,252,380.41 | Interim approval | Interim approval |
| May 6, 2009 | 3/1 - 3/31/09 | $3,595,406.50 | $1,103,383.42 | Interim approval | Interim approval |
| May 15, 2009 | January - March 2009 | $11,105,186.50 | $2,965,262.20 | $10,198,760.20[31] | $2,964,767.50 |
| June 16, 2009 | 4/1 - 4/30/09 | $3,548,749.50 | $1,007,427.71 | Interim approval | Interim approval |
| July 10, 2009 | 5/1 - 5/31/09 | $1,770,780.50 | $837,016.14 | Interim approval | Interim approval |
| August 13, 2009 | 6/1 - 6/30/09 | $1,674,270.50 | $472,533.36 | Interim approval | Interim approval |
| August 28, 2009 | April - June 2009 | $6,993,800.50 | $2,316,977.21 | $6,594,833.00[32] | $2,315,190.63 |
| September 14, 2009 | 7/1 - 7/31/09 | $1,750,805.00 | $342,565.22 | Interim approval | Interim approval |
| October 9, 2009 | 8/1 - 8/31/09 | $2,348,663.50 | $252,684.42 | Interim approval | Interim approval |
| November 16, 2009 | 9/1 - 9/30/09 | $2,309,415.15 | $571,296.46 | Interim approval | Interim approval |
| December 9, 2009 | July - September 2009 | $6,408,883.65 | $1,166,546.10 | $6,407,674.15[33] | $1,166,546.10 |
| December 10, 2009 | 10/1 - 10/31/09 | $1,552,059.00 | $728,470.61 | Interim approval | Interim approval |
| December 30, 2009 | 11/1 - 11/30/09 | $1,035,613.50 | $105,842.85 | Interim approval | Interim approval |
| February 3, 2010 | 12/1 - 12/31/09 | $800,220.50 | $132,479.68 | Interim approval | Interim approval |
| February 19, 2010 | October - December 2009 | $3,387,893.00 | $966,793.14 | $3,387,163.00[34] | $959,355.64 |
| March 3, 2010 | 1/1 - 1/31/10 | $878,908.50 | $102,534.19 | Interim approval | Interim approval |
| April 2, 2010 | 2/1 - 2/28/10 | $253,214.00 | $119,943.08 | Interim approval | Interim approval |
| May 4, 2010[35] | 3/1 - 3/31/10 | $371,105.00 | $7,473.01 | Interim approval | Interim approval |
| June 2, 2010 | 4/1 - 4/30/10 | $415,367.50 | $357,591.89 | Interim approval | Interim approval |
| June 23, 2010 | January - March 2010 | $1,503,227.50 | $229,950.28 | $1,503,227.50[36] | $228,637.78 |

---

[29]    The fees and expenses requested in the July-September, 2008, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on April 1, 2009.

[30]    The fees and expenses requested in the October-December, 2008, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on July 7, 2009.

[31]    The fees and expenses requested in the January-March, 2009, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 28, 2009.

[32]    The fees and expenses requested in the April-June, 2009, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 11, 2009.

[33]    The fees and expenses requested in the July-September, 2009, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 19, 2010.

[34]    The fees and expenses requested in the October-December, 2009, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 7, 2010.

[35]    On May 24, 2010, K&E filed an *Amendment to Kirkland & Ellis LLP's March 2010 Fee Application as Bankruptcy Counsel to W. R. Grace & Co., et al., to Take Voluntary Reduction of Fees for Certain Time and Expenses Billed* [Docket No. 24830] (the "March 2010 Amendment"). The fees and expenses listed reflect the reductions noted in the March 2010 Amendment.

[36]    The fees and expenses requested in the January-March, 2010, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 13, 2010.

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| July 2, 2010 | 5/1 - 5/31/10 | $283,692.50 | $6,798.23 | Interim approval | Interim approval |
| August 2, 2010 | 6/1 - 6/30/10 | $280,979.50 | $36,890.87 | Interim approval | Interim approval |
| August 31, 2010 | 7/1 - 7/31/10 | $228,163.50 | $9,650.96 | Interim approval | Interim approval |
| September 29, 2010[37] | 8/1 - 8/31/10 | $171,565.00 | $8,993.38 | Interim approval | Interim approval |
| September 30, 2010 | April - June 2010 | $980,039.50 | $401,280.99 | $980,039.50[38] | $401,280.99 |
| November 4, 2010[39] | 9/1 - 9/30/10 | $163,032.00 | $4,638.39 | Interim approval | Interim approval |
| December 2, 2010 | 10/1 - 10/31/10 | $119,020.00 | $5,445.10 | Interim approval | Interim approval |
| December 2, 2010 | July - September 2010 | $562,760.50 | $23,282.73 | $562,760.50[40] | $17,430.32 |
| January 11, 2011 | 11/1 - 11/30/10 | $200,476.00 | $4,718.66 | Interim approval | Interim approval |
| February 11, 2011 | 12/1 - 12/31/10 | $448,838.50 | $11,444.53 | Interim approval | Interim approval |
| March 15, 2011 | 1/1 - 1/31/11 | $440,760.00 | $11,592.81 | Interim approval | Interim approval |
| March 21, 2011 | October - December 2010 | $768,334.50 | $21,608.29 | $768,334.50[41] | $16,425.12 |
| April 8, 2011 | 2/1 - 2/28/11 | $532,554.50 | $16,245.21 | Interim approval | Interim approval |
| April 28, 2011 | 3/1 - 3/31/11 | $446,419.50 | $12,312.37 | Interim approval | Interim approval |
| May 16, 2011 | January - March 2011 | $1,419,734.00 | $40,150.39 | $1,418,667.00[42] | $39,971.39 |
| June 7, 2011 | 4/1 - 4/30/11 | $559,396.50 | $19,819.98 | Interim approval | Interim approval |
| July 13, 2011 | 5/1 - 5/31/11 | $1,131,179.50 | $12,694.96 | Interim approval | Interim approval |
| August 2, 2011 | 6/1 - 6/30/11 | $475,029.50 | $46,273.74 | Interim approval | Interim approval |
| September 6, 2011 | 7/1 - 7/31/11 | $350,793.00 | $12,172.91 | Interim approval | Interim approval |
| September 13, 2011 | April - June 2011 | $2,165,605.50 | $78,788.68 | $2,162,103.00[43] | $78,639.68 |
| October 10, 2011 | 8/1 - 8/31/11 | $294,347.00 | $13,642.99 | Interim approval | Interim approval |
| November 9, 2011 | 9/1 - 9/31/11 | $202,386.50 | $6,527.15 | Interim approval | Interim approval |
| November 23, 2011 | July - September 2011 | $847,526.50 | $32,343.05 | $847,526.50[44] | $32,343.05 |
| November 29, 2011 | 10/1 - 10/31/11 | $68,483.00 | $5,689.77 | Interim approval | Interim approval |
| December 28, 2011 | 11/1 - 11/30/11 | $238,913.00 | $2,204.11 | Interim approval | Interim approval |
| January 30, 2012 | 12/1 - 12/31/11 | $176,211.50 | $3,601.87 | Interim approval | Interim approval |

[37]    On October 1, 2010, K&E filed an *Amendment to Kirkland & Ellis LLP's August 2010 Fee Application as Bankruptcy Counsel to W. R. Grace & Co.*, et al. [Docket No. 25545] (the "August 2010 Amendment"). The fees listed reflect the reduction noted in the August 2010 Amendment.

[38]    The fees and expenses requested in the April-June, 2010, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 10, 2010.

[39]    On November 19, 2010, K&E filed an *Amendment to Kirkland & Ellis LLP's September 2010 Fee Application as Bankruptcy Counsel to W. R. Grace & Co.*, et al. [Docket No. 25789] (the "September 2010 Amendment"). The fees listed reflect the reduction noted in the September 2010 Amendment.

[40]    The fees and expenses requested in the July-September, 2010, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 25, 2011.

[41]    The fees and expenses requested in the October-December, 2010, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 30, 2011.

[42]    The fees and expenses requested in the January-March, 2011, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on September 20, 2011.

[43]    The fees and expenses requested in the April-June, 2011, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on December 14, 2011.

[44]    The fees and expenses requested in the July-September, 2011, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on March 23, 2012.

7

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| February 15, 2012 | October - December 2011 | $483,607.50 | $11,495.65 | $483,607.50[45] | $11,495.65 |
| March 1, 2012 | 1/1 - 1/31/12 | $338,064.50 | $6,704.59 | Interim approval | Interim approval |
| April 4, 2012 | 2/1 - 2/29/12 | $442,703.50 | $3,875.06 | Interim approval | Interim approval |
| May 1, 2012 | 3/1 - 3/31/12 | $457,283.50 | $4,920.80 | Interim approval | Interim approval |
| May 24, 2012 | January - March 2012 | $1,238,051.50 | $15,500.45 | $1,238,051.50[46] | $15,500.45 |
| June 1, 2012 | 4/1 - 4/30/12 | $266,110.50 | $12,191.26 | $212,888.40 | $12,191.26 |
| July 10, 2012 | 5/1 - 5/31/12 | $283,616.00 | $9,699.18 | $226,892.80 | $9,699.18 |
| August 8, 2012 | 6/1 - 6/30/12 | $437,113.50 | $3,641.80 | $349,690.80 | $3,641.80 |
| August 23, 2012 | April - June 2012[47] | $986,840.00 | $25,532.24 | Pending | Pending |
| September 5, 2012 | 7/1 - 7/31/12 | $632,379.50 | $14,184.73 | $505,903.60 | $14,184.73 |
| October 1, 2012 | 8/1 - 8/31/12 | $482,552.00 | $7,429.91 | $386,041.60 | $7,429.91 |

The K&E attorneys who rendered professional services in these cases during the Fee

Period are:

| Attorney | Position with the Applicant and Year Admitted | | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Rana Barakat | Associate | 2008 | Litigation | $625.00 | 31.40 | $19,625.00 |
| Jack N. Bernstein | Partner | 1995 | Employee Benefits | $835.00 | 11.00 | $9,185.00 |
| Stephen H. Butler | Associate | 2009 | Taxation | $635.00 | 0.30 | $190.50 |
| John Donley, P.C. | Partner | 1985 | Litigation | $910.00 | 76.50 | $69,615.00 |
| Nia Dukov | Associate | 2008 | Litigation | $625.00 | 4.60 | $2,875.00 |
| Lisa G. Esayian | Partner | 1991 | Litigation | $855.00 | 26.50 | $22,657.50 |
| Jeffrey Gettleman | Partner | 1974 | Restructuring | $795.00 | 73.40 | $58,353.00 |
| Mike Jones | Associate | 2011 | Restructuring | $495.00 | 53.40 | $26,433.00 |
| Christopher Landau, P.C. | Partner | 1990 | Litigation | $1,045.00 | 0.60 | $627.00 |
| Todd F. Maynes, P.C. | Partner | 1988 | Taxation | $1,045.00 | 2.90 | $3,030.50 |
| Joshua R. McLane | Associate | 2009 | Taxation | $635.00 | 0.20 | $127.00 |
| Adam C. Paul | Partner | 1997 | Restructuring | $835.00 | 67.10 | $56,028.50 |
| Todd M. Schwartz | Associate | 2007 | Restructuring | $710.00 | 1.80 | $1,278.00 |
| Christian C. Semonsen | Partner | 1999 | Environmental | $750.00 | 1.30 | $975.00 |
| Brian T. Stansbury | Partner | 2002 | Litigation | $725.00 | 3.80 | $2,755.00 |
| **Totals for Attorneys** | | | | | 354.80 | $273,755.00 |

---

[45]    The fees and expenses requested in the October-December, 2011, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on June 14, 2012.

[46]    The fees and expenses requested in the January-March, 2012, interim monthly Applications were approved on an interim basis pursuant to the order entered by this Court on October 9, 2012.

[47]    The hearing for the *Forty-Fifth Quarterly Interim Verified Application of Kirkland & Ellis LLP for Compensation for Services and Reimbursement of Expenses as Bankruptcy Counsel to W. R. Grace & Co., et al., for the Interim Period from April 1, 2012 through June 30, 2012* is scheduled for December 17, 2012.

8

The paraprofessionals of K&E who rendered professional services in these cases during the Fee Period are:

| Paraprofessional | Position with the Applicant and Number of Years in the Position | | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Andrew Brniak | Legal Assistant | 4 Years | Restructuring | $240.00 | 3.40 | $816.00 |
| Stephanie D. Frye | Conflicts Coordinator | 10 Years | Administrative Services | $245.00 | 5.30 | $1,298.50 |
| Gina Jankelow | Conflicts Analyst | 2 Year | Administrative Services | $180.00 | 3.00 | $540.00 |
| Kimberly K. Love | Legal Assistant | 23 Years | Litigation | $295.00 | 75.80 | $22,361.00 |
| Maureen McCarthy | Legal Assistant | 10 Years | Restructuring | $300.00 | 4.80 | $1,440.00 |
| Lauren Mitchell-Dawson | Legal Assistant | 23 Years | Environmental | $295.00 | 2.50 | $737.50 |
| Linda A. Scussel | Conflicts Specialist | 9 Years | Administrative Services | $265.00 | 2.00 | $530.00 |
| Elizabeth A. Suehr | Conflicts Specialist | 8 Years | Administrative Services | $245.00 | 1.50 | $367.50 |
| Totals for Paraprofessionals | | | | | 98.30 | $28,090.50 |

9

K&E 24255430

### Compensation by Matter

| Matter Number | Matter Description | Total Billed Hours | Total Fees Requested |
|---|---|---|---|
| 16 | Asset Analysis and Recovery | 0.40 | $342.00 |
| 19 | Claims Analysis Objection and Resolution (Non-Asbestos) | 23.70 | $16,052.00 |
| 20 | Case Administration | 0.70 | $168.00 |
| 32 | Fee Applications, Applicant | 31.50 | $13,285.50 |
| 37 | Plan and Disclosure Statement | 396.40 | $271,580.00 |
| 41 | Tax Issues | 0.40 | $418.00 |
| **Totals** | | **453.10** | **$301,845.50** |

**Grand Total for Fees:** $301,845.50
**Blended Rate:** $666.18

10

K&E 24255430

**Expense Summary**

| Service Description | Amount |
|---|---|
| Third Party Telephone Charges | $165.54 |
| Standard Copies or Prints | $685.30 |
| Overnight Delivery | $79.30 |
| Transportation to/from airport | $179.36 |
| Computer Database Research | $4,242.85 |
| **Total** | **$5,352.35** |

11

**WHEREFORE**, K&E respectfully requests (a) that an allowance be made to it, as fully described above, for (i) 80% of the amount of **$301,845.50** for reasonable and necessary professional services K&E has rendered to the Debtors during the Fee Period **($241,476.40)** and (ii) 100% of the reimbursement of actual and necessary costs and expenses incurred by K&E during the Fee Period **($5,352.35)**; (b) that both fees and expenses are payable as administrative expenses of the Debtors' estates; and (c) that this Court grant such further relief as is equitable and just.

Dated:  October 29, 2012              Respectfully submitted,

                                  */s/ Adam C. Paul*
                                  Adam C. Paul
                                  John Donley
                                  Kirkland & Ellis LLP
                                  300 N. LaSalle Street
                                  Chicago, Illinois 60654
                                  Telephone: (312) 862-2000
                                  Facsimile:  (312) 862-2200

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., et al., | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | **Objection Deadline:** |
|  | ) | **December 4, 2012 at 4:00 p.m.** |
|  | ) | **Hearing date: To be scheduled only if objections** |
|  | ) | **are timely filed and served.** |

## ONE HUNDRED AND THIRTY-EIGHTH MONTHLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM SEPTEMBER 1, 2012 THROUGH SEPTEMBER 30, 2012

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **September 1, 2012 – September 30, 2012** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$11,631.00    (80%: $9,304.80)** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$102.99** |

This is an: ☒ interim ☐ final application

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001    D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 – 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I. 3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $9,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |

2

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
| | | Fees | Expenses | Fees | Expenses |
|---|---|---|---|---|---|
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $55,941.60 | $16,575.58 |
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2002 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2003 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. 5498 | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |

3

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/30/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I. 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 25, 2005 D.I. 8331 | 3/1/05 – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I.  8562 | 4/1/05 – 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
| | | Fees | Expenses | Fees | Expenses |
|---|---|---|---|---|---|
| June 28, 2005 D.I. 8704 | 5/1/05 – 5/31/05 | $115,453.75 | $858.21(Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05 – 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | 94,224.60 | $4,299.44 |
| October 14, 2005 D.I. 9565 | 8/1/05 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 9/31/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 - 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74.445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | $21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73,383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58,706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84,067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/2006 - 3/31/2006 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006 D.I. 12558 | 4/1/2006 - 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |

| | | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006- 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 – 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |
| January 12, 2007 D.I. 14292 | 11/1/06 – 11/30/06 | $188,638.00 | $3,370.16 (Stroock) $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) $55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007 D.I. 14810 | 1/1/2007 – 1/31/2007 | $77,582.00 | $962.06 (Stroock) $90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007 D.I. 15132 | 2/1/2007 – 2/28/2007 | $119,140.50 | $3.092.88 (Stroock) $77,301.25 (Navigant) | $95.312.40 | $80,394.13 |
| May 1, 2007 D.I. 15457 | 3/1/2007 – 3/31/2007 | $135,228.00 | $6,635.25 (Stroock) $104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007 D.I. 16136 | 4/1/2007 – 4/30/2007 | $177,646.00 | $815.81 (Stroock) $173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17,2007 D.I. 16309 | 5/1/2007 – 5/31/2007 | $205,937.25 | $6,405.01 (Stroock) $162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007 D.I. 16528 | 6/1/2007 – 6/30.2007 | $225,650.50 | $5,929.97 (Stroock) $200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007 D.I. 16822 | 7/1/2007 – 7/31/2007 | $157.268.50 | $4,021.65 (Stroock) $208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007 D.I. 16959 | 8/1/2007 – 8/31/2007 | $145,866.50 | $3,354.61 (Stroock) $210,152.54 (Navigant) | $116,693.20 | $213,507.15 |

6

| | | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| November 19, 2007 D.I. 17394 | 9/1/2007 – 9/30/2007 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |
| December 5, 2007 D.I. 17548 | 10/1/07 - 10/31/07 | $288,976.50 | $22,324.58 (Stroock) $325,509.63 (Navigant) | $231,181.20 | $347,834.21 |
| January 11, 2008 D.I. 17803 | 11/1/07 – 11/30/07 | $249,372.50 | $32,780.40 (Stroock) $162,394.93 (Navigant) | $199,498.00 | $195,175.33 |
| February 1, 2008 D.I. 17957 | 12/1/07 – 12/31/97 | $116,522.50 | $57,717.92 (Stroock) $47,444.43 (Navigant) | $93,218.00 | $105,162.35 |
| March 4, 2008 D.I. 18202 | 1/1/08 – 1/31/08 | $201,472.50 | $3,282.80 (Stroock) $86,070.26 (Navigant) | $161,178.00 | $89,353.06 |
| April 4, 2008 D.I. 18450 | 2/1/08 – 2/29/08 | $195,491.00 | $5,922.25 (Stroock) $73,924.16 (Navigant) | $156,392.80 | $79,846.41 |
| April 29, 2008 D.I. 18639 | 3/1/08 – 3/31/08 | $275,659.00 | $11,217.17 (Stroock) $69,201.53 (Navigant) | $220,527.20 | $80,418.70 |
| June 4, 2008 D.I. 18862 | 4/1/08 - 4/30/08 | $298,888.00 | $10,143.60 (Stroock) $38,800.00 (Navigant) | $239,110.40 | $48,943.60 |
| July 1, 2008 D.I. 19032 | 5/1/08 - 5/31/08 | $138,683.50 | $3,649.95 (Stroock) | $110,946.80 | $3,649.95 |
| August 4, 2008 D.I. 19224 | 6/1/2008 - 6/30/2008 | $213,559.00 | $12,357.78 (Stroock) $96.84 (Navigant) | $170,847.20 | $12,454.62 |
| September 10, 2008 D.I. 19516 | 7/1/2008 - 7/31/2008 | $206,087.50 | $6,717.13 (Stroock) $259.90 (Navigant) | $164.870.00 | $6,977.03 |
| September 30, 2008 D.I. 19653 | 8/1/2008 – 8/31/2008 | $212,928.50 | $2,326.65 (Stroock) | $170,342.80 | $2,326.65 |
| November 6, 2008 D.I. 19949 | 9/1/2008 – 9/30/2008 | $226,486.50 | $2,844.77 (Stroock) | $181,189.20 | $2,844.77 |
| December 2, 2008 D.I. 20174 | 10/1/08 – 10/31/08 | $270,097.00 | $10,611.52 (Stroock) | $216,077.60 | $10,611.52 |

7

|  |  | Payment Requested: |  | CNO Filed Approving: |  |
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| --- | --- | --- | --- | --- | --- |
| December 30, 2008 D.I. 20384 & 20385 | 11/1/08 – 11/30/08 | $184,642.00 | $5,870.24 (Stroock) | $147,713.60 | $5,870.24 |
| February 3, 2009 D.I. 20654 | 12/1/08 – 12/31/08 | $102,648.50 | $4,017.80 (Stroock) | $82,118.80 | $4,017.80 |
| March 3, 2009 D.I. 20906 | 1/1/09 – 1/31/09 | $114,525.00 | $2,458.44 (Stroock) | $91,620.00 | $2,458.44 |
| March 30, 2009 D.I. 21152 | 2/1/09 – 2/28/09 | $141,569.00 | $1,627.89 (Stroock) | $113,255.20 | $1,627.89 |
| April 29, 2009 D.I. 21475 | 3/1/09 – 3/31/09 | $181,006.75 | $3,270.02 (Stroock) | $144,805.40 | $3,270.02 |
| May 29,2009 D.I. 21910 | 4/1/09 – 4/30/09 | $187,588.50 | $1,545.41 (Stroock) | $150,070.80 | $1,545.41 |
| July 1, 2009 D.I. 22310 | 5/1/09 – 5/31/09 | $227,989.00 | $9,428.79 (Stroock) | $182,391.20 | $9,428.79 |
| August 6, 2009 D.I. 22709 | 6/1/09 – 6/30/09 | $238,611.25 | $5,960.91 (Stroock) | $190,889.00 | $5,960.91 |
| September 25, 2009 D.I. 23338 | 7/1/09 – 7/31/09 | $294,766.50 | $17,306.20 (Stroock) | $235,813.20 | $17,306.20 |
| October 5, 2009 D.I 23422 | 8/1/09 – 8/31/09 | $299,544.25 | $7,237.57 (Stroock) $2,812.50 (Navigant) | $239,635.40 | $10,050.07 |
| November 13, 2009 D.I. 23759 | 9/1/09 – 9/30/09 | $349,937.50 | $20,164.05 (Stroock) | $279,950.00 | $20,164.05 |
| December 1, 2009 D.I. 23897 | 10/1/09 – 10/31/09 | $281,050.75 | $12,457.25 (Stroock) | $224,840.60 | $12,457.25 |
| December 30, 2009 D.I. 24087 | 11/1/09 – 11/30/09 | $219,347.00 | $10,084.80 (Stroock) | $175,477.60 | $10,084.80 |
| January 29, 2010 D.I. 24211 | 12/1/09 – 12/31/09 | $117,137.00 | $3,532.36 (Stroock) | $93,709.60 | $3,532.36 |

8

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| March 1, 2010 D.I. 24376 | 1/1/2010 – 1/31/2010 | $193,442.75 | $3,163.37 (Stroock) | $154,754.20 | $3,163.37 |
| March 30, 2010 D.I. 24537 | 2/1/2010 – 2/28/2010 | $56,435.50 | $1,668.29 (Stroock) | $45,148.40 | $1,668.29 |
| April 28, 2010 D.I. 24687 | 3/1/2010 – 3/31/2010 | $42,209.00 | $636.63 (Stroock) | $33,767.20 | $636.63 |
| May 28, 2010 D.I. 24859 | 4/1/2010 – 4/30/2010 | $44,465.00 | $265.51 (Stroock) | $35,572.00 | $265.51 |
| June 28, 2010 D.I. 24993 | 5/1/2010 – 5/31/2010 | $36,946.50 | $770.90 (Stroock) | $29,557.20 | $770.90 |
| July 28, 2010 D.I. 25130 | 6/1/2010 – 6/30/2010 | $52,374.50 | $93.68 (Stroock) | $41,899.60 | $93.68 |
| August 30, 2010 D.I. 25286 | 7/1/2010 – 7/31/2010 | $20,240.00 | $141.30 (Stroock) | $16,192.00 | $141.30 |
| September 28, 2010 D.I. 25488 | 8/1/2010 – 8/31/2010 | $23,595.50 | $157.91 (Stroock) | $18,876.40 | $157.91 |
| October 28, 2010 D.I. 25660 | 9/1/2010 – 9/30/2010 | $25,244.50 | $328.75 (Stroock) | $20,195.60 | $328.75 |
| November 29, 2010 D.I. 25812 | 10/1/2010 – 10/31/10 | $17,677.50 | $90.00 (Stroock) | $14,142.00 | $90.00 |
| December 28, 2010 D.I. 25963 | 11/1/2010 – 11/30/2010 | $45,417.00 | $307.06 (Stroock) | $36,333.60 | $307.06 |
| January 28, 2011 D.I. 26140 | 12/1/2011 – 12/31/2011 | $78,046.75 | $2,238.40 (Stroock) | $62,437.40 | $2,238.40 |
| February 28, 2011 D.I. 26435 | 1/1/2011 – 1/31/2011 | $37,267.00 | $193.84 (Stroock) | $29,813.60 | $193.84 |
| March 28, 2011 D.I. 26651 | 2/1/2011 – 2/28/2011 | $145,264.75 | $3,264.42 (Stroock) | $116,211.80 | $3,264.42 |

| Date Filed | Period Covered | Payment Requested: | | CNO Filed Approving: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| April 28, 2011 D.I. 26834 | 3/1/2011 – 3/31/2011 | $95,649.00 | $1,447.38 (Stroock) | $76,519.20 | $1,447.38 |
| May 31, 2011 D.I. 27012 | 4/1/2011 – 4/30/2011 | $137,671.50 | $1,005.62 (Stroock) | $110,137.20 | $1,005.62 |
| June 28, 2011 D.I. 27166 | 5/1/2011 – 5/31/2011 | $67,451.50 | $1,350.50 (Stroock) | $53,961.20 | $1,350.50 |
| July 28, 2011 D.I. 27326 | 6/1/2011 – 6/30/2011 | $183,497.75 | $1,903.63 (Stroock) | $146,798.20 | $1,903.63 |
| August 30, 2011 D.I. 27526 | 7/1/2011 – 7/31/2011 | $63,076.00 | $1,373.39 (Stroock) | $50,460.80 | $1,373.39 |
| September 28, 2011 D.I. 27675 | 8/1/2011 – 8/31/2011 | $56,731.00 | $1,133.86 (Stroock) | $45,384.80 | $1,133.86 |
| October 28, 2011 D.I. 27847 | 9/1/2011 – 9/30/2011 | $68,727.00 | $1,025.63 (Stroock) | $54,981.60 | $1,025.63 |
| December 1, 2011 D.I. 28060 | 10/1/2011 – 10/31/2011 | $55,335.00 | $348.59 (Stroock) | $44,268.00 | $348.59 |
| December 28, 2011 D.I 28281 | 11/1/2011 – 11/30/2011 | $29,136.00 | $416.68 (Stroock) | $23,308.80 | $416.68 |
| February 3, 2012 D.I. 28463 | 12/1/2011 – 12/31/2011 | $8,012.50 | $52.22 (Stroock) | $6,410.00 | $52.22 |
| February 28, 2012 D.I. 28595 | 1/1/2012 – 1/31/2012 | $31,694.50 | $379.41 (Stroock) | $25,355.60 | $379.41 |
| March 28, 2012 D.I. 28732 | 2/1/2012 – 2/29/2012 | $62,628.00 | $220.71 (Stroock) | $50,102.40 | $220.71 |
| April 30, 2012 D.I. 28848 | 3/1/2012 – 3/31/2012 | $27,172.50 | $140.02 (Stroock) | $21,738.00 | $140.02 |
| May 30, 2012 D.I. 28991 | 4/1/2012 – 4/30/2012 | $24,898.50 | $75.21 (Stroock) | $19,918.80 | $75.21 |

|  |  | Payment Requested: |  | CNO Filed Approving: |  |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 2, 2012 D.I. 29165 | 5/1/2012 – 5/31/2012 | $42,647.00 | $1,118.18 (Stroock) | $34,117.60 | $1,118.18 |
| July 30, 2012 D.I. 29369 | 6/1/2012 – 6/30/2012 | $38,931.50 | $70.86 (Stroock) | $31,145.20 | $70.86 |
| August 28, 2012 D.I. 29520 | 7/1/2012 – 7/31/12 | $38,387.50 | $330.64 (Stroock) | $30,710.00 | $330.64 |
| September 28, 2012 D.I. 29705 | 8/1/2012 – 8/31/2012 | $12,847.00 | $53.09 (Stroock) | $10,277.60 | $53.09 |

**WR GRACE & CO**
**ATTACHMENT B**
**SEPTEMBER 1, 2012 - SEPTEMBER 30, 2012**

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** |  |  |  |  |
| Kruger, Lewis | 0.9 | $1,025 | $ 922.50 | 42 |
| Pasquale, Kenneth | 0.9 | 920 | 828.00 | 21 |
|  |  |  |  |  |
| **Associates** |  |  |  |  |
| Krieger, Arlene G. | 10.5 | 725 | 7,612.50 | 27 |
|  |  |  |  |  |
| **Paraprofessionals** |  |  |  |  |
| Mohamed, David | 10.8 | 210 | 2,268.00 | 22 |
|  |  |  |  |  |
| **Total** | **23.1** |  | **$ 11,631.00** |  |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & Co., et al, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtor. | ) | **Objection Date: December 4, 2012 @ 4:00 p.m.** |

**FORTY-SIXTH INTERIM APPLICATION OF CAPLIN & DRYSDALE, CHARTERED, COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS OF W.R. GRACE & CO., ET AL., FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Name of Application:                                        Caplin & Drysdale, Chartered

Authorized to Provide
Professional Services to:                                   The Official Committee of Asbestos
                                                           Claimants of the above-captioned
                                                           debtor and debtor-in-possession

Date of Retention:                                         June 13, 2001 *nunc pro tunc*
                                                           To April 12, 2001

Period for which
Compensation and
Reimbursement are sought:                                  July 1, 2012 through
                                                           September 30, 2012

Amount of Compensation
Sought as actual, reasonable
And necessary                                              $103,136.00

Amount of Expense
Reimbursement sought as
actual, reasonable
and necessary                                              $7,778.83

This is an:          x  interim          ___  final application.

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & Co., <u>et al.</u> | ) Case No. 01-1139 (JKF) |
| | ) Jointly Administered |
| Debtor. | ) |

**FORTY-SIXTH INTERIM APPLICATION OF CAPLIN & DRYSDALE,
CHARTERED, COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS FOR INTERIM
<u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

Pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy

Procedure, and the Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy

Code, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (the "Administrative Order"), the law firm of Caplin & Drysdale, Chartered

("Caplin & Drysdale") hereby submits this Forty-Sixth interim application ("Forty-Sixth Interim

Application") for an Order awarding it interim compensation for professional legal services

rendered as national counsel to the Official Committee of Asbestos Personal Injury Claimants

(the "Committee") of the debtor, W. R. Grace & Co., <u>et al.</u>, ("Debtor"), in an amount of

$103,136.00, together with reimbursement of Caplin & Drysdale's actual and necessary expenses

incurred in the amount of $7,778.83, for the period commencing July 1, 2012 through September

30, 2012 (the "Application Period"). In support of this Forty-Sixth Interim Application, Caplin

& Drysdale respectfully represents as follows:

### I.  JURISDICTION

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334.

## II.    BACKGROUND

2.      On April 2, 2001 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 under Title 11 of the United States Code (the "Bankruptcy Code").

3.      From the Petition Date through the date of this Forty-Sixth Interim Application, the Debtor has continued to operate its businesses and manage its properties as debtor-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On April 12, 2001, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

5.      On May 3, 2001, the Committee filed and served its Application For Entry Of An Order Nunc Pro Tunc As Of April 12, 2001 authorizing the employment of Caplin & Drysdale as national counsel for the Committee.  On June 13, 2001, the Court entered an order, approving the retention application.

## III.    RELIEF REQUESTED

6.      Through this Forty-Sixth Interim Application, Caplin & Drysdale seek allowance and payment of $103,136.00 in fees for services rendered during the Application Period and reimbursement of $7,778.83 for reasonable and necessary expenses incurred during the Application Period.  Thus, Caplin & Drysdale seeks allowance and payment in the total amount of $110,914.83.

7.      Caplin & Drysdale has received no payment and no promises for payment from any source for services rendered during the Application Period in connection with the case. There exists no agreement or understanding between Caplin & Drysdale and any other person for the sharing of any compensation to be received for services rendered by Caplin & Drysdale in the case.

8.      All services for which compensation is requested by Caplin & Drysdale pursuant to this Application were performed for or on behalf of the Committee in this case.

9.      This is Caplin & Drysdale' Forty-Sixth Interim Application.

## IV.    SUMMARY OF SERVICES RENDERED

10.     The professionals at Caplin & Drysdale who have provided services to or for the Committee in this case and their standard hourly rates during the Application Period were as follows:

| Name | Position | Years Experience | Rate |
|------|----------|------------------|------|
| Elihu Inselbuch (EI) | Member | 50 | $1,000 |
| Peter V. Lockwood (PVL) | Member | 46 | $935 |
| Ann C. McMillan (ACM) | Member | 28 | $645 |
| Jeffrey A. Liesemer (JAL) | Attorney | 19 | $555 |
| Kevin C. Maclay (KCM) | Attorney | 18 | $555 |
| James P. Wehner (JPW) | Attorney | 17 | $555 |
| Rita C. Tobin (RCT) | Of Counsel | 22 | $545 |
| Jeanna Rickards Koski (JMR) | Associate | 9 | $420 |
| Andrew J. Sackett (AJS) | Associate | 8 | $380 |
| Todd E. Phillips (TEP) | Associate | 8 | $380 |
| Eugenia Benetos (EB) | Paralegal | 10 | $225 |
| Mollie E. Gelburd (MEG) | Paralegal | 5 | $210 |

{D0246446.1 }

11.    Caplin & Drysdale has maintained detailed records of the time spent in the rendition of professional services for the Committee during the Application Period.  Attached hereto as Exhibit A and incorporated herein by reference is a true and correct copy of the monthly billing statement prepared for the services rendered in this case by Caplin & Drysdale (the "Billing Statement").  The Billing Statement is in the same form regularly used by Caplin & Drysdale to bill its clients for services rendered and includes the date that the services were rendered, a detailed, contemporaneous narrative description of the services, the amount of time spent for each service and the designation of the professional who performed the service.  In addition, attached hereto as Exhibit B and incorporated herein by reference is a summary by category of the professional services provided during the Application Period.

12.    As set forth on Exhibits A and B, Caplin & Drysdale rendered 142.8 hours of professional services during the Application Period, resulting in legal fees totaling $103,136.00 and associated reasonable and necessary expenses totaling $7,778.83.

13.    The total value of the services rendered by Caplin & Drysdale as shown on Exhibit B, broken down among the persons rendering the services is as follows[*]:

| Name | Hours | Hourly Rate | Value |
|------|-------|-------------|-------|
| Elihu Inselbuch | 30.70 | $1,000 | $30,700.00 |
| Peter Van N. Lockwood | 42.10 | $935 | $39,363.50 |
| Ann C. McMillan | 3.50 | $645 | $2,257.50 |
| Jeffrey A. Liesemer | 9.90 | $555 | $5,494.50 |
| Kevin C. Maclay | 20.40 | $555 | $11,322.00 |

---

[*] Nonworking travel time is billed at one-half the attorney's usual hourly rate.  See  Exhibit A, Task Code .16 for breakdown.

{D0246446.1 }                                5

| | | | |
|---|---|---|---|
| James P. Wehner | 1.00 | $555 | $555.00 |
| Rita C. Tobin | 12.80 | $545 | $6,976.00 |
| Jeanna Rickards Koski | .50 | $420 | $210.00 |
| Andrew J. Sackett | .20 | $380 | $76.00 |
| Todd E. Phillips | 8.40 | $380 | $3,192.00 |
| Eugenia Benetos | 13.10 | $225 | $2,947.50 |
| Mollie E. Gilburd | .20 | $210 | $42.00 |
| **Total** | **142.80** | | **$103,136.00** |

14.    Set forth below are the rates for the expenses incurred by Caplin & Drysdale for which reimbursement is requested pursuant to this Application, as well as the basis for such rates for the identified expense items:

a)  Copy charges:  Caplin & Drysdale charges $0.10 per page for copies and such charge is based on an analysis of the cost to Caplin & Drysdale to make a copy;

b)  Computer research charges:  Caplin & Drysdale passes through on an exact cost basis all computer-assisted research charges; and

c)  Out-going facsimile charges: Caplin & Drysdale charges $0.15 for each page.  These charges are based on an analysis of the cost to Caplin & Drysdale to send facsimile transmissions.  Caplin & Drysdale does not pass through to its client's expenses or charges related to incoming facsimile transmissions.

15.    Attached hereto as Exhibit C and incorporated herein by reference is a summary by category of the expenses incurred by Caplin & Drysdale for which reimbursement is

{D0246446.1 }    6

requested. This information also appears on Exhibit A hereto. Further supporting documentation is available upon request.

16.     The general areas in which Caplin & Drysdale has rendered professional services to the Committee during the Application Period in the Case may be broadly characterized as follows:

a)   providing legal advice with respect to the Committee's powers and duties as an official committee appointed under section 1102 of the Bankruptcy Code;

b)   preparing on behalf of the Committee necessary applications, motions, complaints, answers, orders, agreements and other legal papers;

c)   appearing in Court to present necessary motions, applications and pleadings and otherwise protecting the interests of the Committee; and

d)   performing legal services for the Committee necessary and proper in these proceedings.

17.     The generality of the foregoing description is amplified on a day-to-day basis by the Billing Statement attached as Exhibit A.

18.     Thus, through this Forty-Sixth Interim Application, Caplin & Drysdale seeks interim allowance and payment of $103,136.00 in fees and $7,778.83 in expenses. A Notice of Forty-Sixth Interim Application will be filed and served on all parties requesting notice under Bankruptcy Rule 2002.

## V.    ALLOWANCE OF COMPENSATION

19.    Caplin & Drysdale have endeavored to represent the Committee in the most
expeditious and economical manner possible.  Further, the professionals at Caplin & Drysdale have
coordinated their activities with co-counsel to avoid duplication of effort on behalf of the
Committee in the case whenever possible.

WHEREFORE, Caplin & Drysdale, Chartered respectfully requests that the Court enter an
Order approving this Application and directing payment of $103,136.00 in fees and reimbursement
of $7,778.83 in expenses, and for such other and further relief as the Court deems just and proper.

CAPLIN & DRYSDALE

/s/Elihu Inselbuch
Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
600 Lexington Avenue at 52nd Street
21st Floor
New York, NY  10022
(212) 379-6000

*National Counsel for Official Committee*
*Of Asbestos Personal Injury Claimants*

Dated: November 14, 2012

# Attach. 25

# An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation

Thomas E. Willging & Shannon R. Wheatman

Federal Judicial Center 2005

This publication was undertaken in furtherance of the Center's statutory mission to conduct and stimulate research and development for the improvement of judicial administration. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

*Federal Judicial Center 2005*

In both state and federal courts, all certified class actions settled on a class-wide basis. The typical (i.e., median) recovery in the class-wide settlements was $800,000. Twenty-five percent of the recoveries and settlements exceeded $5.2 million, and 25% were $50,000 or less. In contrast, most cases that were never certified were terminated by dismissal, summary judgment, voluntary dismissal, or settlement of class representatives' claims.

In the study, 29 of 315 cases (9%) with a recovery included some type of coupon in the recovery; 3 of those cases (1%) involved nontransferable coupons.

## H. Attorney fees

Attorney fees typically were 27% of the class recovery in remanded cases and 29% of the class recovery in cases retained in the federal courts, about the same percentage as in the prior FJC study of class actions.[25] Twenty-five percent of the cases involved fees of 36% or more.

---

*ing Challenges*, 71 N.Y.U. L. Rev. 74 (1996). The FJC's 1996 research, focusing on class actions terminated in 1992–1994 in four federal district courts, and based on examination of court files, not attorney recollections, reported a class certification rate of 37%. FJC 1996 Study, at 7. The percentage of those cases certified for settlement was 39%. *Id.* While the study methods were different, comparing data from the current study and the 1992–1994 study suggests that the rate of class certification as a whole most likely has declined in the past decade.

24. *Id.* The FJC 1996 Study and the current study suggest that the percentage of class actions certified for settlement has increased from the 37% rate found in 1996.

25. Median rates in the four federal districts studied in 1996 ranged from 27% to 30%. *Id.* at 68–69.

# Attach. 26

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:                              :

USG CORPORATION,                    :      Chapter 11
a Delaware corporation, et al.,[1]  :
                                    :      Jointly Administered
                    Debtors.        :      Case No. 01-2094 (JKF)
                                    :      RE: 12262, 12304

## ORDER MODIFYING THE DISCHARGE INJUNCTION FOR A LIMITED PURPOSE

This matter coming before the Bankruptcy Court on the Motion of the
Reorganized Debtors for an Order Modifying the Discharge Injunction for a Limited Purpose
filed by the above-captioned reorganized debtors (collectively, the "Debtors");[2] the Bankruptcy
Court having reviewed the Motion; the Bankruptcy Court finding that: (a) the Bankruptcy Court
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Section X.A of the Plan
and Section IX.A of the Confirmation Order; (b) this is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2); and (c) notice of the Motion was sufficient under the circumstances; and the
Bankruptcy Court having determined that the legal and factual bases set forth in the Motion
establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED in its entirety.

---

[1]  The Debtors are the following 11 entities: USG Corporation, United States Gypsum Company, USG
Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC,
B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and
Stocking Specialists, Inc

[2]  Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

RLF1-3081426-1

Date filed: 12/8/06
Docket #: 12337

2.      The Discharge Injunction shall be modified solely to the extent necessary to obtain the South Carolina District Court's approval of the Settlement Agreement, as presented, without modification.

3.      If the South Carolina District Court does not approve the Settlement Agreement without modification or if the Settlement Agreement is terminated in accordance with its terms, the Discharge Injunction shall be reinstated, all proceedings before the South Carolina District Court shall cease and be stayed, and the Bankruptcy Court will have exclusive jurisdiction to resolve any controversy relating to the Claims and the Litigation, subject to the right of any party to request the modification of the Discharge Injunction to liquidate the Claims in a different forum.

Dated: December 7, 2006

_Judith K. Fitzgerald_
UNITED STATES BANKRUPTCY JUDGE

# Attach. 27

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
U.S. CLERK CHARLESTON
2008 OCT 22   A 8:0

| | | |
|---|---|---|
| CENTRAL WESLEYAN COLLEGE, on behalf of itself and all others similarly situated, | ) ) ) ) | CIVIL ACTION NO. 2:87-1860-8 |
| Plaintiffs, | ) ) ) | |
| -versus- | ) ) | ORDER |
| W.R. GRACE & CO., et al. | ) ) | |
| Defendants. | ) ) ) | |

## Introduction

This matter is before the Court on Class Counsel's application for reimbursement of costs and a contingency fee of 30% of the class settlement with U.S. Gypsum Co. (USG). For the reasons set forth below, the Court grants the motion.

Class Counsel have filed an extensive application with voluminous exhibits setting forth the history of the USG bankruptcy and the significant efforts they undertook to prevail in that proceeding on behalf of the class (Dkt. No. 885). The Court has also previously reviewed the USG situation in detail in connection with the class motions for preliminary and final approval of the USG settlement (Dkt. Nos. 842 and 847). These combined

1

pleadings paint a convincing picture of an extraordinary result achieved

against enormous odds by sheer determination and legal acumen.  In

approving the USG settlement, the Court expressed its surprise that the

class could achieve such a favorable result in these circumstances:

> Well, every time the plaintiff has come in over the years with
> settlements and proposed settlements, they've always amazed
> this Court what counsel for the plaintiff has accomplished.  And
> I recognize the hazards of attempting to proceed further and not
> take this settlement, particularly when you got within $500,000
> of what you asked for to start with.

> So the Court not only approves the settlement, but
> congratulates counsel on being able to secure it.[1]

This Order supplements the Court's findings at the USG settlement

approval hearing.

The USG class settlement was the culmination of a four-year journey

by Class Counsel through the unfamiliar terrain of the Delaware bankruptcy

court.  The college claim against USG had been shifted to that forum by

USG's bankruptcy filing.  From approximately mid-2002 to late 2006, Class



Counsel worked: (1) to prove the class claims against USG; (2) to defend

the claims against USG's attacks; (3) to mount sufficient pressure on USG

to force a settlement; and (4) to persuade the bankruptcy court to release

---

[1] Transcript of March 22, 2007 Hearing, at 8.  Dkt. No. 850.

the case so the settlement could be evaluated here.[2] As set forth in detail in their application, Counsel succeeded in each of these tasks. Thereafter, Counsel successfully guided the settlement through preliminary and final approval in this Court, including notification to the 3,000 member class.

Class Counsel have also been conferring with the court-appointed Class Action Settlement Advisory Committee to work through issues related to the distribution of this settlement. These issues result from the fact that the USG settlement originated in the bankruptcy court, and it resolved not only the class claim, but also individually-filed class members' claims. The settlement requires that all these claims be administered through the class mechanism. Counsel continue to work on these settlement-related issues. They anticipate presenting a comprehensive plan for distribution of the net settlement funds to the Court once the bankruptcy proceedings involving the three remaining defendants are concluded. The Court looks forward to that day.



## A 30% Contingency Fee is Appropriate for the USG Settlement

As this Court has noted in another class action, "the preferred method of computation of fees in this common fund case is the percentage of the

---

[2] The class settlement originated in the bankruptcy court as part of USG's bankruptcy reorganization. Because the class claims were initially litigated in this Court, it was quite appropriate for the bankruptcy court to allow the settlement of those claims, and ancillary proceedings such as the common fund fee determination, to proceed in this Court. Principles of comity and federalism support bankruptcy courts deferring to other courts that have had experience with a matter litigated in both courts.

3

fund method." <u>Edmonds v. United States</u>, 658 F. Supp. 1126, 1143 (D.S.C.

1987). In a previous Order in this case, the Court approved a fee of

28.75% on settlements that did not involve the additional complexity of the

USG bankruptcy proceeding. <u>Central Wesleyan College, et al  v. W.R.</u>

<u>Grace & Co., et al.</u>, No. 2:87-1860-8 (D.S.C. Dec. 21, 2001), Dkt. No. 783.

For complex class actions, attorneys' fees in the 25% - 33⅓% range are

not uncommon. <u>See</u> <u>e.g.</u> <u>Shaw v. Toshiba Amer. Info. Sys., Inc.</u>, 91 F.

Supp. 2d 942, 972 (E.D.Tex. 2000) ("Empirical studies show that ... fee

awards in class actions average around one-third of the recovery.")

In their fee application, Class Counsel have cited numerous cases

supporting a 30% contingent fee in class actions. <u>See</u> Fee Application at

10-12, 29-31. Dkt. No. 885. Other recent cases lend support to that view.

In <u>Martin v. Foster Wheeler Energy Corp.</u>, 2008 W.L. 906472 (M.D.Pa.

March 31, 2008), which involved property contamination, the court awarded

a 30% contingency fee in a case settled just one year after it had been

filed. In its decision, the court noted that class action contingent fee

awards typically fall in the range of 30% -35%. In another recent case, a



court awarded a one-third contingent fee in a complex anti-trust class

action. <u>In re Automotive Refinishing Paint Antitrust Litig.</u>, 2008 W.L. 63269

(E.D.Pa. Jan. 3, 2008). The complexity of this proceeding certainly rivals that of anti-trust and commercial class actions.

Additional guidance on a generally-accepted range of fees in complex cases is provided by courts that have determined contingent fees in the context of multi-district litigation. In the complex litigation resulting from the drug Zyprexa, for instance, the district court set the contingent fees at 35%, reserving the right to adjust the fee upward to 37.5% or downward to 30% based on the facts of each individual case. In re Zyprexa Prods. Liab. Litig., 424 F. Supp. 2d 488, 496 (E.D.N.Y. 2006). And very recently, the court in another complex products liability MDL proceeding treated the case as a "quasi class action" and set the contingent fee at 32%. In re Vioxx Prods. Liab. Litig., 2008 W.L. 4091672 (E.D.La. August 27, 2008).

While these cases support the proposition that a class action contingent fee in the 30% - 35% range is often reasonable, each case must stand on its own merit. Under the circumstances discussed herein, this Court has no difficulty in concluding that a 30% contingency fee is well within the range of appropriate fees.

Although the percentage of the fund approach is the preferred method for determining class action fees when a common fund has been created, courts generally review a number of factors as a verification check

5

on the court's contingent fee conclusion.  See Barber v. Kimbrell's Inc., 577 F. 2d 216, 226 (4th Cir. 1978). (12 factors).  While the Court will review each of these factors, a number of them stand out as most important in a case such as this.  These are the factors of: (1) the result achieved; (2) the skill necessary to achieve that result; and (3) the difficulty of the task undertaken.  These factors are appropriately considered together because the excellent result here is the product of Counsel's extraordinary skill in an extremely difficult situation.

**The Result**

Paramount among the relevant factors is the result achieved, since the result determines the class recovery.  As the Supreme Court has stated, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566 (1992) (internal quotes omitted).  It is helpful to put Counsel's success in perspective.  In the first fifteen years of this litigation, Counsel secured a net recovery to the class of approximately $52 million from 30 settlements.  The USG resolution will increase the class settlement fund by more than 50% even after the requested 30% fee is deducted. This is truly a significant achievement.



6

In addition, the USG settlement is within $500,000 of the college's original bankruptcy claim. Dkt. No. 850, at 8. Counsel achieved this success in the forum USG had selected, and where it had already gotten almost 70% of the similar claims dismissed. USG had vigorously argued that the college claims should also be expunged with no payment. But for Class Counsel's tenacity and resourcefulness, the class would likely have received little or nothing.

**Skill Necessary to Achieve the Result**

Related to the result achieved is the factor of the skill necessary to achieve it. Class Counsel's application lays out their bold strategy to not only defend the class claims against USG, but to take the offensive. By asking the bankruptcy court to release the class claims for litigation in this Court, Counsel increased the risk for USG. It was only as the hearing approached on this motion that settlement discussions became fruitful. No other claimant had taken this unusual route of asking the bankruptcy court to lift its stay so the claims could be prosecuted in their originating court. This innovative strategy reflects the excellent abilities of Counsel.



Class Counsel are well known to this Court as experts in the field of complex litigation. Their achievement in the bankruptcy court amply illustrates their mastery of the unusual features of that forum. Rather than

7

turning the matter over to a local bankruptcy practitioner who would have been unfamiliar with the history or merits of this action, Class Counsel handled the bankruptcy proceedings themselves and achieved an outstanding result.

## Difficulty of the Task

Closely related to the skill necessary to achieve the successful settlement is the factor of the difficulty of the task undertaken. Pursuing these class claims through what was essentially a second lawsuit in the bankruptcy court greatly compounded the difficulty of achieving a satisfactory result. Not only were counsel facing the usual difficulties of a product liability case, but they also faced the additional challenges of pressing their claims through the bankruptcy process. Opposing them were some of the best and highest paid defense lawyers in the country who had defeated many other claimants. Their tenacious defense efforts increased the difficulty level of an already daunting task.

## The Nature and Amount of a Customary Fee



The next two Barber factors look at the customary fee and whether the fee sought is fixed or contingent. As discussed previously, a 30% contingency fee is well within the range of customary fees in complex class

actions. The fact that the fee here was highly contingent adds to the reasonableness of that percentage.

Courts have noted that class action fee awards should approximate the market price for legal services. Under this view, the fee analysis should consider the terms to which plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed. Sutton v. Bernard, 504 F.3d 688, 692 (7th Cir. 2007). Class Counsel would normally bill a contingent fee client between 33⅓% and 40%. A 30% contingent fee in a high risk case such as this is actually below the percentage that attorneys would be expected to charge.

Class Counsel have pointed out that some lawyers in the USG bankruptcy were regularly being paid between $600 - $900 per hour with no contingency involved. Class Counsel labored for over four years against well-paid hourly lawyers who had already gotten 70% of the other claims against USG dismissed. Counsel were faced not only with the usual contingencies in any complex class action, but with the additional contingency that the claims might never survive the bankruptcy process.



These circumstances further support the reasonableness of a 30% contingent fee.

## Time Limitations and Labor Involved

The next three Barber factors can be discussed together, for they all focus in some respect on effort. These are the factors of: (1) time and labor required; (2) preclusion of other employment; and (3) time limitations imposed by the client or circumstances.

Because this is a common fund case, and not a statutory fee shifting case, it would be error to unduly emphasize the hours spent over other relevant factors, such as the size of the fund created. While time spent is a major factor in a fee shifting case, a common fund case is more concerned with the result. Cf. Sutton v. Bernard, 504 F.3d 688, 692 (7th Cir. 2007) (reversing a district court for misapplying the principles of a fee shifting case to a common fund case). A small fund created after many hours means less to a class than a larger fund created more efficiently. In Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984), the Supreme Court emphasized that because the fund created is the ultimate goal of a common fund case, "a reasonable fee is based on the percentage of the fund bestowed on the class."

To the extent that hours spent are relevant, the class effort against USG clearly involved a significant investment in time and labor. The USG bankruptcy docket has over 12,500 entries. Class Counsel have

10

reasonably estimated that just keeping up with the docket entries required at least 2,000 total hours of their time. This assumes that each docket entry would be reviewed for no more than a few minutes, a conservative assumption considering that many of the bankruptcy filings were undoubtedly complex. Class Counsel estimate that they conservatively spent at least another 2,000 hours actually dealing with the substance of the property damage claims, including attendance at property damage committee functions, monitoring hearings, preparing the college class claims, dealing with individual colleges, arranging for scientific testing of class members' samples, assembling the class claim, providing supporting information to USG, responding to USG's claimed deficiencies in the submissions, responding to USG's 3,000 formal objections to the claims, preparing the class motion to lift the stay and return the claims to this Court, researching legal issues, engaging in settlement negotiations, and handling the settlement approval process in this Court.

If the lodestar approach, which is used for statutory fee shifting cases, were the starting point here, the Court would take Counsel's hours and multiply them by their standard hourly fee. The Court finds an appropriate indication of Counsel's hourly fee is the $650 per hour that Class Counsel is already being paid by the Delaware bankruptcy court in



another complex asbestos bankruptcy. Multiplying that hourly fee by the 4,000 hour figure would give a base hourly recovery of $2.6 million. Courts then apply a multiplier to reflect the difference between a guaranteed hourly fee and a contingency fee achieved in a complex case. In a recent case in this district, the Honorable Henry F. Floyd awarded class counsel a multiplier of six, finding "Although this multiplier is at the high end of the acceptable range, it is justified by the exceptional results achieved in this case." Spartanburg Regional Health Serv. Dist., Inc. v. Hilenbrand Ind., Inc., No.7:03-2141-HFF, slip op. at 10. (D.S.C. Aug. 15, 2006). Here, Counsel's requested 30% of the $35.5 million settlement ($10.65 million)[3] equates to a multiplier of approximately four on the lodestar fee of $2.6 million. The exceptional result achieved in this case justifies such a multiplier.

The other two Barber factors that relate to time are the time limitations imposed by the circumstances or the client, and preclusion of other employment. The time limitation involved here was not the usual limitation of an exigent circumstance, but the opposite. Counsel needed the tenacity to endure years of bankruptcy proceedings to achieve a

---

[3] Because the USG settlement fund is in an interest-bearing account, the actual fee figure will be 30% of the value of that fund on the date the fee is disbursed.

satisfactory result.  While doing so, Counsel obviously was precluded from handling other matters that would have interfered with their USG efforts.

## Experience and Reputation of Counsel

The next <u>Barber</u> factor focuses on the experience, reputation and ability of the attorneys.  Both Richardson Patrick Westbrook & Brickman and Speights & Runyan are well-known to this Court as excellent firms in complex litigation.  The Court notes that Mr. Westbrook has been appointed by the Delaware bankruptcy court in another asbestos proceeding as Special Counsel in recognition of his expertise and ability.  The Speights' firm has been a leader in asbestos property damage litigation for decades.  Mr. Speights has been recognized for his credibility and experience in asbestos-related bankruptcies.  <u>In re Celotex Corp.</u>, 227 F. 3d 1336, 1340 (11th Cir. 2000).  The Court believes that the experience, reputation, and ability of these firms, which was well-known to USG, played a critical role in USG's decision to settle the college claims.  USG undoubtedly knew that it would face an extended fight with excellent counsel absent a settlement.

## Undesirability of the Case and Client Relationship

The next two <u>Barber</u> factors look at the "undesirability" of the case and the nature and length of the professional relationship with the client.

13

When this case began, no one could have foreseen the twists and turns it would take, especially as defendants declared bankruptcy and the claims against them shifted into other forums. As Counsel point out, perhaps the best testament to the "undesirability" of the effort against USG was the bad experience that 70% of the other claimants had with USG in losing their claims with no payment.

With respect to the client relationship factor, Class Counsel have represented the Class for over twenty years. During this time, there has never been any complaint from a class member about Counsel's prosecution of the case. These Barber factors also support the requested contingent fee.

## Awards in Similar Cases

The final Barber factor looks at awards in similar cases. In their application, Class Counsel have provided the Court with a litany of decisions supporting a fee of 30% or more in complex class actions. See Fee Application at 10-12, 29-21, Dkt. No. 885. The recent Vioxx (32%) and Zyprexa (30-37.5%) fee awards lend further support to the reasonableness of awards in the 30% range in complex matters.

The Court also notes that Class Counsel informed the Class in the notice of the USG settlement that they would apply for a fee of up to 33⅓%.

14

No class member objected.  Nevertheless, Counsel have limited their requested fee to 30%, which the Court finds well within the range of a reasonable fee.

For the reasons stated herein, the Court finds that a 30% contingent fee to Class Counsel is appropriate for the USG settlement.[4]  The Court further finds that Counsel should be reimbursed for their outstanding costs in the amount of $49,780.89 as reflected on the ledger attached to the application (Dkt. No. 855, Attach. 17).  These costs include expenses for class notice, the court-appointed settlement advisory committee, the court-appointed CPA monitoring the class rebate coupon program, scientific testing of class members' asbestos samples to support a claim, copying, and postage.  These are all appropriate categories of costs chargeable to the class.

IT IS SO ORDERED.

#15

Honorable Sol Blatt, Jr.
Senior United States District Judge

Dated: October 21 2008
Charleston, South Carolina

---

[4] The Court is confident that Class Counsel will continue to work diligently to conclude the class claims in the remaining bankruptcies and devise a comprehensive plan of distribution to the Class.  Because the work on the USG settlement will not be concluded until that settlement is incorporated into the plan of distribution, Class Counsel may disburse 75% of this fee award immediately and the remaining 25% upon presentation of the plan of distribution to the Court.

**Attach. 28**

IN THE UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et. al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 24031 |
| | ) | |

## MODIFIED ORDER GRANTING THE CANADIAN ZAI CLAIMANTS' APPLICATION FOR APPOINTMENT OF SPECIAL COUNSEL

Lauzon Bélanger S.E.N.C.R.L. and Scarfone Hawkins LLP, as Representative Counsel ("Representative Counsel") to Canadian Zonolite Attic Insulation Claimants, in the above-captioned bankruptcy case, having filed its Application Pursuant to Sections 105, 327, 1102(a)(2), and 1109, or Alternatively, Section 503 of the Bankruptcy Code For Appointment of Special Counsel Nunc Pro Tunc to September 1, 2008 (the "Application"); and the Court having reviewed the Application and exhibits related thereto; and in accordance with the Amended Minutes of Settlement; and the Court having been satisfied that sufficient notice of the Application has been provided and that no other or further notice is required; and after due deliberation and sufficient cause appearing therefore, it is hereby **FOUND THAT**

A.     Each of the Representative Counsel law firms represents no interest materially adverse to the Debtors' estates with respect to the matters upon which such Special Counsel is to be engaged; and

B.     The employment of Special Counsel is necessary and would be in the best interest of the Debtors, their creditors and the Debtors' estates.

Therefore, it is hereby **ORDERED THAT**

1.      The Application is **GRANTED**, *provided, however,* for the avoidance of doubt, in connection with the above-referenced Chapter 11 cases, and consistent with Section 524(g)(4)(B)(i) of the Bankruptcy Code and the May 24, 2004, Order of this Court appointing David T. Austern to serve as the Asbestos Personal Injury Future Claimants' Representative in these Chapter 11 cases (the "PI FCR") (Docket No. 5645), only the PI FCR represents the interests of holders of future asbestos personal injury demands, including, but not limited to, asbestos personal injury demands directly or indirectly arising out of or in any way connected to the Debtors' manufacture, sale or distribution of Zonolite attic insulation products in Canada; and

2.      The Appointment of Special Counsel is granted *nunc pro tunc* to December 21, 2009, appointing Representative Counsel, Lauzon Bélanger and Scarfone Hawkins, as Special Counsel for the Canadian ZAI Claimants through the Effective Date of the Plan; and

3.      Each Special Counsel law firm shall file fee applications and shall be compensated and reimbursed for its expenses in accordance with Sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the District of Delaware and the Orders of this Court; and

4.      This Court retains jurisdiction to interpret, implement and enforce the provisions of this Order.

5.   It is FURTHER ORDERED that Special Counsel's first fee application shall include the period from December 21, 2009, through the first quarter of 2010.

Dated: __March 19__, 2009
Wilmington, Delaware

*Judith K. Fitzgerald*
United States Bankruptcy Judge

2

# Attach. 29

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., _et. al._, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Objection Deadline: November 19, 2012 @ 4:00 p.m. |
| | ) | Hearing Date: Only if Objection is Timely Filed |
| | ) | |

### THIRTY-FIRST MONTHLY APPLICATION OF SCARFONE HAWKINS LLP
### AS SPECIAL COUNSEL FOR THE CANADIAN ZAI CLAIMANTS

| | |
|---|---|
| Name of Applicant: | Scarfone Hawkins LLP |
| Authorized to Provide Professional Services to: | Canadian Zonolite Attic Insulation Claimants ("Canadian ZAI Claimants") |
| Date of Retention: | March 19, 2010 _nunc pro tunc_ December 21, 2009 |
| Period for which compensation and reimbursement is sought: | September 1, 2012, through September 30, 2012 |
| Amount of compensation sought as actual, reasonable and necessary: | CDN $    1,867.50 |
| Amount of expense reimbursement (includes Harmonized Sales Tax of 13%[1]) sought as actual, reasonable and necessary: | CDN $    242.78 |

This Applicant's Thirty-First Monthly Application.

[Remainder of Page Intentionally Left Blank]

---

[1] On July 1, 2010, the Harmonized Sales Tax (HST) took effect in Ontario and is applied to most purchases and transactions. The 13% HST replaces the federal goods and services tax (GST) and the provincial sales tax (PST).

#29819

**Summary of Monthly Fee and Expense Invoice Statements for Compensation Period:**

| Date Filed | Period Covered | Requested Fees (CDN $) | Requested Expenses (CDN $) | Paid Fees (CDN $) | Paid Expenses (CDN $) |
|---|---|---|---|---|---|
| 04/30/2010 Dkt. #24697 | December 21, 2009 – March 31, 2010 | $ 98,678.75 Reduction -$708.50 | $ 10,399.55 | $ 78,943.00 $ 19,027.25 | $ 10,399.55 |
| 06/01/2010 Dkt. #24878 | April 1, 2010 – April 30, 2010 | $ 14,765.25 | $ 812.67 | $ 11,812.20 $ 2,953.05 | $ 812.67 |
| 06/30/2010 Dkt. #25015 | May 1, 2010 – May 31, 2010 | $ 21,221.25 | $ 3,327.71 | $ 16,977.00 $ 4,244.25 | $ 3,327.71 |
| 07/28/2010 Dkt. #25127 | June 1, 2010 – June 30, 2010 | $ 23,507.50 | $ 2,994.15 | $ 18,806.00 $ 4,701.50 | $ 2,994.15 |
| 08/31/2010 Dkt. #25297 | July 1, 2010 – July 31, 2010 | $ 17,232.50 | $ 2,259.90 | $ 13,786.00 $ 3,446.50 | $ 2,259.90 |
| 09/29/2010 Dkt. #25497 | August 1, 2010 – August 31, 2010 | $ 10,663.75 | $ 1,403.95 | $ 8,531.00 $ 2,132.75 | $ 1,403.95 |
| 10/29/2010 Dkt. #25666 | September 1, 2010 – September 30, 2010 | $ 5,833.75 | $ 2,153.94 | $ 4,667.00 $ 1,166.75 | $ 2,153.94 |
| 12/03/2010 Dkt. #25858 | October 1, 2010 – October 31, 2010 | $ 6,840.00 | $ 897.99 | $ 5,472.00 $ 1,368.00 | $ 897.99 |
| 01/05/2011 Dkt. #26018 | November 1, 2010 – November 30, 2010 | $ 5,030.00 | $ 653.90 | $ 4,024.00 $ 1,006.00 | $ 653.90 |
| 01/28/2011 Dkt. #26132 | December 1, 2010 – December 31, 2010 | $ 11,478.75 | $ 1,513.55 | $ 9,183.00 $ 2,295.75 | $ 1,513.55 |
| 03/08/2011 Dkt. #26512 | January 1, 2011 – January 31, 2011 | $ 22,076.25 | $ 4,516.93 | $ 17,661.00 $ 4,415.25 | $ 4,516.93 |
| 04/01/2011 Dkt. #26700 | February 1, 2011 – February 28, 2011 | $ 13,196.25 | $ 2,535.34 | $ 10,557.00 $ 2,639.25 | $ 2535.34 |
| 05/12/2011 Dkt. #26925 | March 1, 2011 – March 31, 2011 | $ 6,217.50 | $ 808.28 | $ 4,974.00 $ 1,243.50 | $ 808.28 |
| 06/10/2011 Dkt. #27068 | April 1, 2011 – April 30, 2011 | $ 17,471.25 | $ 2,475.77 | $ 13,977.00 $ 3,494.25 | $ 2,475.77 |
| 06/30/2011 Dkt. #27196 | May 1, 2011 – May 31, 2011 | $ 3,720.00 | $ 493.40 | $ 2,976.00 $ 744.00 | $ 493.40 |
| 08/04/2011 Dkt. #27374 | June 1, 2011 – June 30, 2011 | $ 7,965.00 | $ 1,067.51 | $ 6,372.00 $ 1,593.00 | $ 1,067.51 |
| 08/31/2011 Dkt. #27534 | July 1, 2011 – July 31, 2011 | $ 7,597.50 | $ 989.49 | $ 6,078.00 $ 1,519.50 | $ 989.49 |
| 10/04/2011 Dkt. #27716 | August 1, 2011 – August 31, 2011 | $ 6,483.75 | $ 851.59 | $ 5,187.00 $ 1,296.75 | $ 851.59 |
| 11/14/2011 Dkt. #27939 | September 1, 2011- September 30, 2011 | $ 15,104.64 | $ 4,604.40 | $ 12,083.71 $ 3,020.93 | $ 4,604.40 |

**Summary of Monthly Fee and Expense Invoice Statements for Compensation Period (Continued):**

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Paid Fees | Paid Expenses |
|---|---|---|---|---|---|
| 12/15/2011 Dkt. #28163 | October 1, 2011 – October 31, 2011 | $ 3,735.00 Reduction- $ 573.75 | $ 2,705.74 | $ 2,988.00 $ 173.25 | $ 2,705.74 |
| 01/25/2012 Dkt. #28414 | November 1, 2011- November 30, 2011 | $ 3,450.00 Reduction- $ 510.00 | $ 448.50 | $ 2,760.00 $ 180.00 | $ 448.50 |
| 2/21/2012 Dkt. #28556 | December 1, 2011- December 31, 2011 | $ 2,598.75 Reduction- $ 150.00 | $ 337.84 | $ 2,079.00 $ 369.75 | 337.84 |
| 3/9/2012 Dkt. #28647 | January 1, 2012- January 31, 2012 | $ 3,435.00 | $ 449.79 | $ 2,748.00 | $ 449.79 |
| 4/17/2012 Dkt. #28788 | February 1, 2012- February 29, 2012 | $ 7,451.25 | $ 978.82 | $ 5,961.00 | $ 978.82 |
| 5/4/2012 Dkt. #28879 | March 1, 2012 – March 31, 2012 | $ 4,796.25 | $ 627.60 | $ 3,837.00 | $ 627.60 |
| 6/1/2012 Dkt. #29011 | April 1, 2012- April 30, 2012 | $ 2,812.50 | $ 368.23 | $ 2,250.00 | 368.23 |
| 7/5/2012 Dkt. #29195 | May1, 2012- May 31, 2012 | $ 3,236.25 | $ 420.71 | $ 2,589.00 | 420.71 |
| 8/8/2012 Dkt. #29419 | June 1, 2012- June 30, 2012 | $ 2,486.25 | $ 323.21 | $ 1,989.00 | 323.21 |
| 9/5/2012 Dkt. #29578 | July 1, 2012- July 31, 2012 | $ 3,603.75 | $ 468.49 | $ 2,883.00 | $ 468.49 |
| 10/5/2012 Dkt. #29740 | August 1, 2012- August 31, 2012 | $ 2,272.50 | $ 295.43 | Pending | Pending |

[Remainder of Page Intentionally Left Blank]

**Fee Detail by Professional for the Period of September 1, 2012, through September 30, 2012:**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Hourly Billing Rate[2] (including changes) | Total Billed Hours | Total Fees (CDN $) |
|---|---|---|---|---|
| David Thompson | Partner, 24 Years; 1988 | $525.00 | 3.10 | $ 1,627.50 |
| Matthew G. Moloci | Partner, 14 Years; 1998 | $450.00 | 0.00 | 0.00 |
| Cindy Yates | Law Clerk, 30 Yrs. | $120.00 | 2.00 | $ 240.00 |
| **Grand Total** | | | **5.10** | **$ 1,867.50** |
| Blended Rate | | | | $ 366.18 |
| Blended Rate (excluding Law Clerk time) | | | | $ 525.00 |

**Monthly Compensation by Matter Description for the Period of September 1, 2012, through September 30, 2012:**

| Project Category | Total Hours | Total Fees (CDN $) |
|---|---|---|
| 04 - Case Administration | 2.85 | $ 1,496.25 |
| 11 - Fee Applications, Applicant | 0.25 | $ 131.25 |
| 12 – Fee Applications, Others | 0.00 | 0.00 |
| 14 – Hearings | 0.00 | 0.00 |
| 16 - Plan and Disclosure Statement | 0.00 | 0.00 |
| 20 - Travel (Non-Working) | 0.00 | 0.00 |
| 24 – Other | 2.00 | $ 240.00 |
| **TOTAL** | **5.10** | **$ 1,867.50** |

---

[2] Scarfone Hawkins LLP increased its hourly rates as of January 1, 2011.

**Monthly Expense Summary for the Period September 1, 2012, through September 30, 2012**:

| Expense Category | Service Provider (if applicable) | Total Expenses |
| --- | --- | --- |
| Photocopies (In House) | | 0.00 |
| Postage | | 0.00 |
| Travel – Meals | | 0.00 |
| Travel – Accommodations | | 0.00 |
| Travel – Airline | | 0.00 |
| Travel – Taxi & Parking | | 0.00 |
| Long Distance Calls | | 0.00 |
| Harmonized Sales Tax (HST) 13% | | $ 242.78 |
| **TOTAL** | | **$ 242.78** |

PLEASE TAKE NOTICE that Scarfone Hawkins LLP (the "Applicant") has today filed this Notice of Monthly Fee and Expenses Invoice for September 1, 2012, through September 30, 2012, (this "Monthly Fee Statement")[3] pursuant to the Modified Order Granting The Canadian ZAI Claimants' Application for Appointment of Special Counsel [Docket No. 24508] and the Amended Administrative Order Under 11 U.S.C., §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members [Docket No. 1949].

PLEASE TAKE FURTHER NOTICE that responses or objections to this Monthly Fee Statement, if any, must be filed on or before November 19, 2012, at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.

---

[3] Applicant's Invoice for July 1, 2012, July 31, 2012, is attached hereto as **Exhibit A.**

PLEASE TAKE FURTHER NOTICE that you must also serve a copy of any such response or objection upon the Notice Parties so as to be received by the Notice Parties on or before the Objection Deadline.

PLEASE TAKE FURTHER NOTICE that upon the expiration of the Objection Deadline, the Applicant shall file or cause to be filed with the Court, and serve on the Notice Parties, a certificate of no objection, certifying that no objection, or a partial objection, has been filed with the Court relative to this Application, whichever is applicable, after which the Debtors are authorized and required to pay the Applicant an amount equal to (a) eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Monthly Fee Statement or (b) eighty percent (80%) of the fees and one hundred percent (100%) of the expenses not subject to any objection. All fees and expenses in this Monthly Fee Statement will be included in the next quarterly application for compensation and reimbursement of expenses to be filed and served by the Applicant at a later date, and will be subject to objections at such time.

PLEASE TAKE FURTHER NOTICE that Applicant respectfully requests that, for the period September 1, 2012, through September 30, 2012, an allowance be made to Scarfone Hawkins LLP for compensation in the amount of CDN $1,867.50 and actual and necessary expenses in the amount of CDN $242.78 (Includes 13% Harmonized Sales Tax) for a total allowance of CDN $2,110.28; Actual Interim Payment of CDN $1,494.00(80% of the allowed fees) and reimbursement of CDN $242.78 (100% of the allowed expenses) be authorized for a total payment of CDN $1,736.78; and for such other and further relief as this Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that Applicant believes that the Application and the description of services set forth herein of work performed are in compliance with the requirements

of Delaware Local Rule 2016-2, the Amended Administrative Order, and the applicable guidelines and requirements of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Executive Office for the United States Trustee.   A true and correct copy of the Certification of David Thompson is attached hereto as **Exhibit B**.

Dated: October 26, 2012                    Respectfully submitted,

By:    */s/ Daniel K. Hogan*
        Daniel K. Hogan (DE Bar No. 2814)
        THE HOGAN FIRM
        1311 Delaware Avenue
        Wilmington, Delaware 19806
        Telephone: 302.656.7540
        Facsimile: 302.656.7599
        Email: dkhogan@dkhogan.com

        **Counsel to the Representative Counsel as Special
        Counsel for the Canadian ZAI Claimants**

# Attach. 30

## AGREEMENT AND AUTHORIZATION TO REPRESENT
### ZONOLITE ATTIC INSULATION CREDITOR IN W. R. GRACE
### CHAPTER 11 REORGANIZATION CASE

_Ralph Bezek & Dona Duncan_ (Claimant) hereby retains and

authorizes Darrell W. Scott, ("Attorney") of the law firm of Lukins & Annis, P.S., to

represent Claimant's legal interests in the W. R. Grace bankruptcy proceedings pending

in the United States Bankruptcy Court for the District of Delaware, including all claims

or demands that Claimant may have arising out of W.R. Grace's Zonolite products, and

hereby authorizes Attorney to act on Claimant's behalf with respect to those proceedings.

Claimant shall not be responsible for any fees in connection with this

representation, except in the event that Attorney is successful at obtaining recovery for

Claimant, in which event, Attorney's fees shall be one-third of Claimant's recovery, plus

those costs that may have been authorized by Claimant and advanced by Attorney.

DATED this _1_ day of _October_, 2004.

_____ "Claimant"
[Signature]

LUKINS & ANNIS, P.S.

By      Darrell W. Scott
        1600 Washington Trust Financial Center
        717 W. Sprague Avenue
        Spokane, WA 99201-0426
        509-455-9555
"Attorney"

# Attach. 31

**W. R. GRACE & CO., et al.,**
**CASE NO. 01-1139 (JFK)**

**TERM SHEET FOR RESOLUTION OF**
**U.S. ZONOLITE ATTIC INSULATION CLAIMS**

This Term Sheet sets forth certain of the principal terms and conditions under which the Debtors, the Equity Committee of Security Holders, the ZAI Claimants' Special Counsel and Putative Class Counsel, and the Legal Representative for future asbestos-related property damage claimants ("PD FCR") in the above-captioned Chapter 11 cases are prepared to resolve all U.S. Zonolite Attic Insulation ("ZAI") property damage claims and demands, if any, including without limitation all asbestos-related ZAI property damage claims pending in the U.S. at the filing of the Chapter 11 cases and those asserted subsequent thereto, including all such claims for attic insulation containing Libby vermiculite regardless of the brand name under which it was sold (collectively, "ZAI Claims"). This Term Sheet has been produced for settlement purposes only and is subject to the provisions of Rule 408 of the Federal Rules of Evidence.

I.    **Treatment of Claims**

    A. **Asbestos PD Trust--Funding**

        All U.S. ZAI Claims will be channeled to a trust (the "Asbestos PD Trust") that will be established in accordance with Section 524(g) of the United States Bankruptcy Code. The Asbestos PD Trust will pay U.S. ZAI Claims from ZAI Trust Assets in accordance with the Asbestos PD Trust Agreement and ZAI Trust Distribution Procedures ("ZAI TDP") established in connection with a confirmed plan of reorganization ("Plan"). The Asbestos PD Trust will have a separate ZAI Trustee who will administer the ZAI Trust Assets, the ZAI claims process, the ZAI educational program and all related ZAI matters. The ZAI Trust Assets will not be commingled with any other assets in the Asbestos PD Trust. The ZAI Trustee and any successor will be chosen by the ZAI Trust Advisory Committee.

           1. **Funding of Asbestos PD Trust at Emergence:** On the Effective Date of the Plan, the Asbestos PD Trust shall receive $30 million in ZAI Trust Assets in cash, plus, if the Effective Date occurs after March 31, 2009, interest from April 1, 2009 to the Effective Date accrued at the same rate applicable to the Debtors' senior exit financing.

           2. **Deferred Payment Obligations:** The Reorganized Grace shall make an additional payment of $30 million in ZAI Trust Assets in cash to the Asbestos PD Trust on the third anniversary of the Effective Date. No interest shall accrue on this obligation prior to the payment due date.

           3. **Deferred Contingent Payment Obligations:** Commencing on the fifth anniversary of the Effective Date, the Reorganized Grace shall make one or more contingent cash payments to the ZAI Trust Assets in the Asbestos PD Trust over the ensuing 20-year period as follows: up to but no more than ten annual payments of $8 million, each due only in the event the Asbestos PD Trust's ZAI assets fall below $10 million in value during the year preceding an anniversary of the Effective Date. Any such payments that become due shall be

Dx. 20275

payable on an anniversary of the Effective Date. For greater clarity, the obligation to make any one contingent $8 million payment does not trigger any obligation to make any additional contingent payments.

4. **Security for Deferred Payment Obligations:** The deferred contingent payment obligations shall be subordinate to any bank debt or bonds outstanding and shall be guaranteed by the Reorganized Grace or any successor ultimate parent entity of the Reorganized Grace. Such guaranty shall be secured by an obligation of the Reorganized Grace to issue to the Asbestos PD Trust, in the event the second $30 million payment is not timely made or a contingent payment obligation becomes fixed but is not satisfied, the number of shares of Reorganized Grace common stock which, when added to the number of shares of common stock issued and outstanding as of the Effective Date, shall constitute 50.1% of the voting shares of the Reorganized Grace as of the Effective Date. Such security obligation shall be in the same form as the obligation to issue such shares which the Debtors have previously agreed to with the Asbestos PI Trust, and such obligation shall include an inter-creditor agreement and appropriate cross-default provisions consistent with the rights of the Asbestos PI Trust.

5. **Residual Funds:** If the Asbestos PD Trust ceases to exist in accordance with the terms of the Asbestos PD Trust Agreement, any funds or assets remaining in the Asbestos PD Trust at its expiration shall be paid over in full to the Asbestos PI Trust, which amount if paid during the first 25 years after the Effective Date shall be treated as an offset against the amount owed by the Reorganized Grace to the PI Trust.

6. **Section 524(g):** The Asbestos PD Trust and the ZAI TDP shall be structured so as to satisfy the requirements of Section 524(g) and permit issuance of a channeling injunction with respect to ZAI Claims.

7. **Term of Trust:** Subject to earlier dissolution following the 20th anniversary of the Trust based on a lack of claim filings for a 24-month period following said anniversary, or for other reasons as provided for in the Asbestos PD Trust Agreement, the Trust shall continue in existence for the payment of U.S. ZAI Claims until the later of: (a) 25 years following the effective date; or (b) when the Trust has paid out all of the ZAI Trust Assets following the final deferred contingent payment.

B. **Asbestos PD Trust--Claims Payments**

1. For ZAI remedial action taken before the date on which the ZAI TDP is approved and published on the Trust website, the ZAI TDP shall require, among other things, that to qualify for payment from the Asbestos PD Trust, a claimant must submit:

2

a. the following documentary or other evidence sufficient to demonstrate that ZAI is or was installed in the structure which is the subject of the claim:

    (1) a receipt or invoice reflecting the purchase of ZAI for the structure; or

    (2) an affidavit from a claimant who timely filed a U.S. ZAI Proof of Claim and who has direct personal knowledge of events surrounding the installation of ZAI in the structure: (i) attesting that ZAI was installed in the structure; and (ii) attesting to facts establishing his or her direct personal knowledge; or

    (3) a ZAI bag, portion of a ZAI bag, or photograph of a ZAI bag in the structure, with an affidavit from the homeowner or abatement contractor verifying that the bag was found in the structure's attic or other area in question; or

    (4) a certification that vermiculite attic insulation was present in the structure, attested to by a licensed or certified asbestos abatement contractor who removed vermiculite from the structure; or

    (5) a sample of the vermiculite attic insulation (minimum 2 tbsps. of material) with an affidavit by the homeowner or contractor that the insulation came from the structure in question; or

    (6) before and after photographs of the attic or other area in question depicting the presence of and removal of vermiculite attic insulation accompanied by an affidavit by the homeowner or contractor verifying that the material depicted in the photographs was vermiculite that was present in that structure; or

    (7) a laboratory report showing the presence of vermiculite in an attic insulation sample taken from the structure.

b. the following documentary evidence to establish the funds expended by the Claimant to remove, abate or contain ZAI:

    (1) (i) a copy of the contract or invoice specifying the cost of removing, abating or containing ZAI, and (ii) cancelled checks or credit card statements reflecting payment of the specific cost of removing, abating or containing ZAI; or

    (2) where any payment by the Asbestos PD Trust will be made directly to the contractor which removed, abated or contained ZAI, (i) cancelled checks or credit card

3

statements reflecting payment of the applicable non-reimbursable portion of the specific cost for removal, abatement or containment of ZAI, consistent with section B.1.b.(1), (ii) a copy of the contract or invoice for such work, and (iii) a certification from the contractor that the work reflected in such contract or invoice was performed to completion.

c.   an affidavit establishing that the Claimant is an owner or tenant of the structure.

2.   For ZAI remedial action taken after the date on which the ZAI TDP is approved and published on the Trust website, and providing that the testing procedure described below is implemented, a claimant, in addition to establishing its costs under B.1.b., and property interest under B.1.c, must comply with B.1.a.(1) or B.1.a.(3), or the following:

   a.   If the ZAI Trustee and Reorganized Grace agree that there exists a feasible, reliable and economical test to distinguish ZAI from non-ZAI vermiculite attic insulation, a claimant must submit a sample of the vermiculite attic insulation (of a size to be determined) either to a laboratory approved by the Trust to conduct such a test or as otherwise directed by the Trust. The Trust will pay for the claimant's remedial action pursuant to the TDP unless the material is determined not to be ZAI. The cost of the test will be paid by the Trust and will not reduce a claimant's recovery.

   b.   If the procedure in B.2.a is implemented, and the ZAI Trustee and Reorganized Grace agree after two years of experience with the test that the benefits of such a testing program are insufficient to justify its continued use, the Trust may discontinue the testing requirement of B.2.a and the procedure set forth in B.1 will be reinstated for all claimants.

   c.   In the event the ZAI Trustee and Reorganized Grace disagree on the determinations in B.2.a or B.2.b, the parties shall submit such disagreement to the alternative dispute resolution set forth in the TDP for resolution.

3.   If the testing procedure outlined in B.2.a is not implemented, then a claimant must comply with any of the criteria in B.1 for ZAI remedial action taken after the date the ZAI TDP is approved and published on the Trust website.

4.   Subject to Paragraph B.5., claims that qualify for payment from the Asbestos PD Trust in accordance with the ZAI TDP shall be paid 55% of the claimed amount, but in no event shall the Asbestos PD Trust pay more than 55% of $7,500 (the latter figure is hereafter referred to as the "Maximum Claim Amount") on any claim; *provided, however,* that (a) commencing on the fifth anniversary of the Effective Date, the Maximum Claim Amount

4

shall be increased by the increase in the Consumer Price Index for the preceding 12 months, and (b) the Maximum Claim Amount shall be increased every year thereafter on the anniversary of the Effective Date by the increase in the Consumer Price Index for the 12 months immediately preceding each such anniversary date.

5.  The Asbestos PD Trust shall only pay claims that are in compliance with the requirements of this Term Sheet, the Plan, the ZAI TDP and any Trust claim form. Notwithstanding the foregoing, the Trust may liquidate and pay up to 5 claims per year that in the ZAI Trustee's discretion qualify as Extraordinary Claims, but in no event shall the ZAI Trustee pay more than $100,000 cumulatively in any year with respect to such Extraordinary Claims. In addition, the Trust may pay up to $25,000 each to the two class representatives in the <u>Barbanti</u> class action (Barbanti and Busch) in recognition of the time, effort and commitment those individuals expended in the ZAI litigation and thereby contributed to the resolution embodied in this Term Sheet.

## C.  Asbestos PD Trust—Educational Program

1.  The Trust in its discretion may pay up to $2 million over the first three years after the Effective Date, and up to $500,000 for each three-year period thereafter, to fund an educational program about ZAI.

2.  Initially, the content of any Asbestos PD Trust education program must be consistent with published EPA guidance concerning ZAI and with the Debtors ZAI bar date notice program in these Chapter 11 cases; provided, however, that the educational program's content shall reflect any material scientific or regulatory changes or developments that pertain to ZAI, in terms and in manner of publication acceptable to the Reorganized Grace. In the event the Trust and the Reorganized Grace disagree on any matter set forth in this paragraph, the parties shall submit such disagreement to an alternative dispute resolution procedure for resolution.

## D.  Asbestos PD Trust—Reorganized Grace's Audit Rights

1.  The Reorganized Grace shall have the right to conduct annual audits of the books, records and claim processing procedures of the Asbestos PD Trust to:

    a.  examine the sufficiency of the documentary and other evidence submitted by any claimant relating to the installation of ZAI in the house or other building which is the subject of a claim and the ZAI-related costs incurred by said claimant; and

    b.  confirm that Asbestos PD Trust expenditures have complied with the terms of this Term Sheet, the Plan, the Asbestos PD Trust Agreement and the ZAI TDP;

5

provided, however, that in the event of unusual claiming and/or payment activity, the Reorganized Grace may, upon reasonable notice to the Asbestos PD Trust, conduct audits in addition to its annual audit.

2.  To the extent the ZAI Trustee and the Reorganized Grace determine that one or more payments made by the Asbestos PD Trust to U.S. ZAI Claimants were made in violation of the terms of this Term Sheet, the Plan, the Asbestos PD Trust Agreement or the ZAI TDP:

    a.  the amounts of such Trust payments shall be added to the ZAI Trust Assets for purposes of calculating the $10 million trigger relating to deferred contingent payment obligations; and

    b.  the Trust shall review its claim review and payment procedures.

    In the event the Trust and the Reorganized Grace disagree over whether one or more payments were made in violation of this Term Sheet, the Plan, the Asbestos PD Trust Agreement or the ZAI TDP, the parties shall submit such disagreement to an alternative dispute resolution procedure for resolution.

3.  To the extent any noncompliant payments were made as the result of fraudulent conduct on the part of a contractor, claimant or other person, the ZAI Trustee shall notify the Bankruptcy Court and the United States Attorney for the District of Delaware of such fraud and shall provide all information those entities may request in connection with any investigation, civil proceedings or criminal proceedings. The Trust may also initiate litigation against the responsible party or parties to recover such noncompliant payments.

4.  The Asbestos PD Trust shall file with the Bankruptcy Court an annual report containing its financial statements audited by independent registered public accountants.

5.  In administering the ZAI aspects of the Asbestos PD Trust, including ZAI Claims and the ZAI educational program, the ZAI Trustee will be advised by a ZAI Trust Advisory Committee ("ZTAC") consisting of Edward J. Westbrook, Darrell W. Scott and Hon. Alexander M. Sanders, Jr. Successor ZTAC members will be chosen by the existing ZTAC. Reorganized Grace will have the right to have a non-voting representative attend ZTAC meetings and make reasonable requests for financial information in addition to that provided in annual reports. Reorganized Grace's initial representative will be Richard C. Finke, whose successor will be chosen by Reorganized Grace.

II.  **Binding Effect.** The parties shall use their best efforts to incorporate the terms of this Term Sheet into a plan of reorganization to be filed with the Bankruptcy Court as soon as possible.

6

III. **Confidentiality.** The Parties shall treat all negotiations regarding this Term Sheet as confidential. Neither the contents nor the existence of this Term Sheet shall be disclosed by any party, either orally or in writing, except to its directors, officers, employees, legal counsel, financial advisors, accountants and clients on a confidential basis until the Debtors have issued a press release announcing the terms and conditions contained herein or have announced the terms hereof to the Bankruptcy Court. Notwithstanding the foregoing, the parties agree that this Term Sheet or the terms of this Term Sheet may be disclosed to the Official Committee of Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants. The Debtors will provide ZAI Claimants Special Counsel with an opportunity to review any press release relating to this Term Sheet prior to its issuance.

IV. **Class Action Treatment**

The parties agree to seek and support: (1) Bankruptcy Court certification, pursuant to Rule 23(b)(3), of a U.S. ZAI Settlement Class composed of individuals who timely filed a U.S. ZAI Proof of Claim; (2) the appointment of Edward J. Westbrook, Esq., Darrell W. Scott, Esq. and Elizabeth Cabraser, Esq. as class counsel for that class; (3) the appointment of appropriate class representatives as may be proposed by class counsel; (4) preliminary and final approval of a U.S. ZAI Class Settlement under the terms contained in the Term Sheet For Resolution Of U.S. Zonolite Attic Insulation Claims; (5) the issuance of appropriate notice to class members, at Debtors' expense, of preliminary class settlement approval, class member's opt-out rights, and hearing on final class settlement approval; and (6) a Common Fund Fee Award and Expense Recovery Award to class counsel to be paid from Debtors' non-contingent settlement payments.

AGREED TO AND ACCEPTED BY:
Dated: November 21, 2008

**THE DEBTORS:**
W. R. GRACE & CO., on behalf of itself and its subsidiaries and affiliates that are Debtors in the Chapter 11 cases

By: _____
Name:
Title:

**THE EQUITY COMMITTEE OF SECURITY HOLDERS**

By: _____
Name: R. Ted Weschler
Title:   Chair of the Committee

7

III.  **Confidentiality.**  The Parties shall treat all negotiations regarding this Term Sheet as confidential. Neither the contents nor the existence of this Term Sheet shall be disclosed by any party, either orally or in writing, except to its directors, officers, employees, legal counsel, financial advisors, accountants and clients on a confidential basis until the Debtors have issued a press release announcing the terms and conditions contained herein or have announced the terms hereof to the Bankruptcy Court. Notwithstanding the foregoing, the parties agree that this Term Sheet or the terms of this Term Sheet may be disclosed to the Official Committee of Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants. The Debtors will provide ZAI Claimants Special Counsel with an opportunity to review any press release relating to this Term Sheet prior to its issuance.

IV.  **Class Action Treatment**

The parties agree to seek and support: (1) Bankruptcy Court certification, pursuant to Rule 23(b)(3), of a U.S. ZAI Settlement Class composed of individuals who timely filed a U.S. ZAI Proof of Claim; (2) the appointment of Edward J. Westbrook, Esq., Darrell W. Scott, Esq. and Elizabeth Cabraser, Esq. as class counsel for that class; (3) the appointment of appropriate class representatives as may be proposed by class counsel; (4) preliminary and final approval of a U.S. ZAI Class Settlement under the terms contained in the Term Sheet For Resolution Of U.S. Zonolite Attic Insulation Claims; (5) the issuance of appropriate notice to class members, at Debtors' expense, of preliminary class settlement approval, class member's opt-out rights, and hearing on final class settlement approval; and (6) a Common Fund Fee Award and Expense Recovery Award to class counsel to be paid from Debtors' non-contingent settlement payments.

AGREED TO AND ACCEPTED BY:
Dated:  November 21, 2008

**THE DEBTORS:**
W. R. GRACE & CO., on behalf of itself and its subsidiaries and affiliates that are Debtors in the Chapter 11 cases

By: _Mark A. Shelnitz_
Name:  Mark A. Shelnitz
Title:  VP, General Counsel & Secretary

**THE EQUITY COMMITTEE OF SECURITY HOLDERS**

By: _____
Name: R. Ted Weschler

7

Title:   Chair of the Committee

**ZAI CLAIMANTS SPECIAL COUNSEL AND PUTATIVE CLASS COUNSEL:**
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC

By: _Edward J Westbrook_
Name: Edward Westbrook

**ZAI CLAIMANTS SPECIAL COUNSEL AND PUTATIVE CLASS COUNSEL:**
THE SCOTT LAW GROUP, P.S.

By: _Darrell W. Scott_
Name: Darrell W. Scott

**THE ASBESTOS PROPERTY DAMAGE FUTURE CLAIMANTS REPRESENTATIVE:**
Alan B. Rich, Esq., on behalf of and in his capacity as counsel to the PD FCR

By: _____
Name: Alan B. Rich

8

**ZAI CLAIMANTS SPECIAL COUNSEL AND PUTATIVE CLASS COUNSEL:**
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC

By: _____
Name: Edward Westbrook


**ZAI CLAIMANTS SPECIAL COUNSEL AND PUTATIVE CLASS COUNSEL:**
THE SCOTT LAW GROUP, P.S.

By: _____
Name: Darrell W. Scott


**THE ASBESTOS PROPERTY DAMAGE FUTURE CLAIMANTS REPRESENTATIVE:**
Alan B. Rich, Esq., on behalf of and in his capacity as counsel to the PD FCR

By: _____
Name: Alan B. Rich

8

# Attach. 32

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W. R. GRACE & CO.**, *et al.*[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| **Debtors.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**EXHIBIT 33 TO EXHIBIT BOOK**
**ZAI PD TRUST DISTRIBUTION PROCEDURES (ZAI TDP)**

**EXHIBIT 33**

Attached.

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the Claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

If the ZAI Trustee, with the consent of the ZTAC and the PD FCR, makes a determination to increase a Payment Percentage that has been below 100% due to a material change in the estimates of the ZAI Trust Assets and/or liabilities or for any other reason, the ZAI Trustee shall also make supplemental payments to all Claimants who previously liquidated their claims and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated amount of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid to the Claimant with respect to the claim, plus interest on that amount at the rate prevailing for federal court judgments from the time of the initial payment until the supplemental payment.

**4.4    Temporary Cash-Flow Adjustments to Payments.** Since W. R. Grace has obligations to fund the ZAI Trust Assets in the PD Trust on an ongoing, periodic basis as set forth in the ZAI Term Sheet, ZAI Class Action Settlement Agreement and applicable reorganization documents, the ZAI Trustee may determine, with the consent of the ZTAC and the PD FCR, that it is not feasible at the then present time to pay ZAI Claimants 100% of the Allowed Amount due to cash flow issues

8

arising from the timing of payments to the PD Trust by W. R. Grace, and that an adjustment to the Payment Percentage is necessary. In such an event, and notwithstanding any other provision of this ZAI TDP, the ZAI Trustee may pay a US ZAI Claimant less than 100% of the Allowed Amount of an approved claim, and instead may pay that claim and all other claims during the period of insufficient cash flow at a lower rate determined by the ZAI Trustee so as to allow all approved claims to be paid ratably during the entire period of predicted decreased cash flow. The lower percentage payment provided for by this Section shall apply only until the receipt of the next scheduled payment from W. R. Grace. Thereafter, any Claimant who received a payment made at a lower rate pursuant to this provision shall be entitled to a supplemental payment, prior to any other claimants in any FIFO queue, equal to the difference, if any, between the payment already received and the payment that would have been made at the current Payment Percentage, plus interest at the then prevailing federal judgment rate, from the date of the initial payment until the supplemental payment is made.

## SECTION V

## Resolution of US ZAI PD Claims

**5.1    Ordering, Processing and Payment of Claims.**

**5.1.1 Establishment of the FIFO Processing Queue.** The ZAI Trustee shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the **"FIFO Processing Queue"**). The Claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the PD Trust. Claims filed on the

# Attach. 33

## ZAI CLASS COUNSEL COSTS

| | |
|---|---|
| The Scott Law Group | $31,324.57 |
| Richardson Patrick Westbrook & Brickman | $78,778.76 |
| Lieff Cabraser Heimman & Bernstein | $277,416.67 |
| **TOTAL** | **$387,520.00** |

## 1.6 GRACE PROPERTY DAMAGE COMMITTEE UNREIMBURSED COSTS
## THE SCOTT LAW GROUP, P.S.

| Cost Item | Date | Description | Subtotal | Total |
|---|---|---|---|---|
| **Courtcall** | | | | |
| | 02/28/2005 | Courtcall (2/28/05 Hearing) | $80.00 | |
| | 03/21/2005 | Courtcall (3/21/05 Hearing) | $80.00 | |
| | 09/26/2005 | Courtcall (9/26/2005 Hearing) | $80.00 | |
| | 10/23/2005 | Courtcall (10/23/2005 Hearing) | $120.00 | |
| | 10/24/2005 | Courtcall (10/24/2005 Hearing) | $120.00 | |
| | 05/15/2006 | Courtcall (5/15/2006 Hearing) | $50.00 | |
| | 06/19/2006 | Courtcall (6/19/2006 Hearing) | $80.00 | |
| | | Total Courtcall Expenses: | | $610.00 |
| | | | | |
| **Travel Expenses (5/30/2006 Meeting in New York)** | | | | |
| | 05/30/2006 | Plane Fare | $1,375.70 | |
| | 05/30/2006 | Travel Agent Fee | $25.00 | |
| | 05/30/2006 | Lodging | $319.82 | |
| | 05/30/2006 | Meals | $108.60 | |
| | 05/30/2006 | Parking | $25.50 | |
| | 05/30/2006 | Taxi | $166.00 | |
| | | Total Travel Expenses for 5/30 Meeting | | $2,020.62 |
| | | | | |
| **Postage** | | | | |
| | Jul-05 | | $0.97 | |
| | | Total Postage | | $0.97 |
| | | | | |
| **Total SLG Unreimbursed Costs - 1.6 Grace Property Damage Committee** | | | | $2,631.59 |

## 1.8 GRACE ZAI PROPERTY DAMAGE CLAIMANTS COSTS
### THE SCOTT LAW GROUP, P.S.

| Cost Item | Date | Description | Subtotal | Total |
|---|---|---|---|---|
| **ABC Ministorage (ZAI Evidence)** | | | | |
| | 08/18/2005 | July and August, 2005 | $114.00 | |
| | 10/07/2005 | September, 2005 | $64.00 | |
| | **Total ZAI Storage Expenses:** | | | **$178.00** |
| | | | | |
| **Travel Expenses (7/23/2007 Settlement Meeting in Charleston)** | | | | |
| | 07/23/2007 | United Air | $1,185.10 | |
| | 07/23/2007 | Allegro Travel - travel agent fee | $29.00 | |
| | 07/23/2007 | Allegro Travel - change fee | $29.00 | |
| | 07/23/2007 | Sherton Hotel | $217.82 | |
| | 07/23/2007 | Charlotte Airport - Meals | $22.60 | |
| | 07/23/2007 | Spokane Airport - Parking | $17.00 | |
| | 07/23/2007 | Denver Airport - Meals | $9.88 | |
| | 07/24/2007 | Seattle Airport - Meals | $9.48 | |
| | Total Travel Expenses for 7/23/2007 Meeting | | | **$1,519.88** |
| | | | | |
| **Travel Expenses (5/12 - 5/13/2008 ZAI Mediation in Delaware)** | | | | |
| | 05/12/2008 | Delta (extra ticket - missed flight) | $941.00 | |
| | 05/12/2008 | Allegro Travel | $38.00 | |
| | 05/12/2008 | Doubletree Hotel | $397.30 | |
| | 05/12/2008 | Terrace Restaurant - meals | $34.73 | |
| | 05/12/2008 | Spokane Airport | $26.25 | |
| | 05/12/2008 | Meals | $7.25 | |
| | 05/12/2008 | Taxi #1 | $60.00 | |
| | 05/12/2008 | Taxi #2 | $80.00 | |
| | **Total Travel Expenses for 5/12-13/2008 Mediation** | | | **$1,584.53** |
| | | | | |
| **Travel Expenses (7/21/2008 ZAI Class Certification Hearing)** | | | | |
| | 07/21/2008 | Delta | $808.00 | |
| | 07/21/2008 | Allegro Travel | $38.00 | |
| | 07/21/2008 | Delta | $169.00 | |
| | 07/21/2008 | Allegro | $38.00 | |
| | 07/21/2008 | Doubletree Hotel | $327.80 | |
| | 07/21/2008 | Spokane Airport | $26.25 | |
| | 07/21/2008 | Cabs | $35.00 | |
| | 07/21/2008 | Meals | $34.54 | |
| | **Total Travel Expenses for 7/21/2008 Hearing** | | | **$1,476.59** |

| Cost Item | Date | Description | Subtotal | Total |
|---|---|---|---|---|
| **Travel Expenses (9/15/2008 ZAI Settlement Meeting - DC)** | | | | |
| | 09/15/2008 | US Airways | $629.50 | |
| | 09/15/2008 | Allegro Travel | $40.00 | |
| | 09/15/2008 | Hilton Hotels | $599.62 | |
| | 09/15/2008 | Meals | $75.39 | |
| | 09/15/2008 | Meals | $4.21 | |
| | 09/15/2008 | Meals | $5.73 | |
| | 09/15/2008 | Taxi #1 | $15.00 | |
| | 09/15/2008 | Taxi #2 | $30.00 | |
| | | **Total Travel Expenses for 9/15/2008 Settlement Mtg.** | | **$1,399.45** |
| | | | | |
| **Travel Expenses (10/27/2008 Hearing)** | | | | |
| | 10/21/2008 | US Airway (Did not attend) | $1,094.00 | |
| | 10/21/2008 | Allegro Travel | $38.00 | |
| | | **Total Travel Expenses for 10/27/2008 Hearing** | | **$1,132.00** |
| | | | | |
| **Travel Expenses (11/3-11/6/08 Charleston Settlement Meeting)** | | | | |
| | 11/02/2008 | United Airlines | $1,539.00 | |
| | 11/02/2008 | Allegro Travel | $38.00 | |
| | 11/02/2008 | Lodging | $752.36 | |
| | 11/02/2008 | Meals | $14.32 | |
| | 11/06/2008 | Parking | $75.00 | |
| | | **Total Travel Expenses for 11/3-6/2008 Meeting** | | **$2,418.68** |
| | | | | |
| **Travel Expenses (11/14/2008 Hearing)** | | | | |
| | 11/12/2008 | United Airlines (Did not attend) | $370.00 | |
| | 11/12/2008 | Allegro Travel | $38.00 | |
| | 11/19/2008 | Taxi | $112.00 | |
| | 11/19/2008 | Meals | $17.63 | |
| | | **Total Travel Expenses for 11/14/2008 Hearing** | | **$537.63** |
| | | | | |
| **Travel Expenses (11/24/2008 Hearing re: Disclosure of ZAI Settlement)** | | | | |
| | 11/24/2008 | United Airlines | $343.00 | |
| | 11/24/2008 | Allegro Travel | $38.00 | |
| | 11/24/2008 | United Airlines | $150.00 | |
| | 11/24/2008 | Allegro Travel | $38.00 | |
| | 11/24/2008 | Meals | $12.07 | |
| | 11/24/2008 | Taxi | $94.00 | |
| | 11/24/2008 | Lodging | $349.45 | |
| | 11/24/2008 | Parking | $17.50 | |
| | | **Total Travel Expenses for 11/24/2008 Hearing** | | **$1,042.02** |
| | | | | |
| **Travel Expenses (1/14/2009 Hearing)** | | | | |
| | 01/14/2009 | Allegro Travel (Attend 1/14 Hearing Telephonically) | $38.00 | |
| | | **Total Expenses for 1/14/2009 Hearing** | | **$38.00** |

| Cost Item | Date | Description | Subtotal | Total |
|-----------|------|-------------|----------|-------|
| **Travel Expenses (2/6/2009 Meeting in Charleston)** | | | | |
| | 02/05/2009 | Delta Airlines | $1,455.60 | |
| | 02/05/2009 | Allegro Travel | $35.00 | |
| | 02/05/2009 | Meals | $28.23 | |
| | 02/06/2009 | Lodging | $201.38 | |
| | 02/06/2009 | Meals | $11.38 | |
| | 02/07/2009 | Spokane Airport | $18.00 | |
| | 02/19/2009 | Taxi | $35.00 | |
| | **Total Expenses for 2/6/2009 Meeting** | | | **$1,784.59** |
| | | | | |
| **Travel Expenses (4/1/2009 ZAI Settlement Final Approval Hearing)** | | | | |
| | 04/01/2009 | US Airways | $683.40 | |
| | 04/01/2009 | Allegro Travel | $35.00 | |
| | 04/01/2009 | Lodging | $447.40 | |
| | 04/01/2009 | Taxi | $60.03 | |
| | 04/01/2009 | Meals | $26.45 | |
| | 04/01/2009 | Parking | $18.00 | |
| | **Total Expenses for 4/1/2009 Hearing** | | | **$1,270.28** |
| | | | | |
| **Expenses (4/22/2009 Deposition of Darrell Scott)** | | | | |
| | 04/22/2009 | Meals for Attendees | $87.29 | |
| | **Total Expenses for 4/22/2009 Deposition** | | | **$87.29** |
| | | | | |
| **Travel Expenses (5/13/2009 Mediation - Delaware)** | | | | |
| | 5/12/09 | Delta (Flight) | $808.00 | |
| | **Total Expenses for 5/13/2009 Mediation** | | | **$808.00** |
| | | | | |
| **Travel Expenses (9/14/2009 Phase II Confirmation Hearing)** | | | | |
| | 09/13/2009 | United Airlines | $707.40 | |
| | 09/13/2009 | Allegro Travel | $35.00 | |
| | 09/14/2009 | Lodging | $1,552.52 | |
| | 09/14/2009 | Meals | $111.83 | |
| | 09/14/2009 | At&T WIFI | $3.99 | |
| | 09/14/2009 | Parking | $36.00 | |
| | 09/14/2009 | Meals | $76.91 | |
| | 09/14/2009 | Inflight US Airways | $7.00 | |
| | 09/23/2009 | DWS Meals and Taxi | $115.78 | |
| | **Total Expenses for 9/14/2009 Hearing** | | | **$2,646.43** |
| | | | | |
| **Travel Expenses (4/12/2010 Meeting with Co-Counsel)** | | | | |
| | 04/12/2010 | Meals | $56.77 | |
| | 04/12/2010 | Taxi | $30.00 | |
| | **Total Expenses for 4/12/2010 Meeting** | | | **$86.77** |

| Cost Item | Date | Description | Subtotal | Total |
|---|---|---|---|---|
| **Travel Expenses (12/12 - 12/14/2013 Meeting with Co-Counsel)** | | | | |
| | 11/25/2009 | Delta Airlines (Flight) | $603.50 | |
| | 12/12/2009 | Meals | $12.42 | |
| | **Total Expenses for 12/12-24/2013 Meeting** | | | $615.92 |
| | | | | |
| **ZAI 2019 Statements** | | | | |
| | 12/17/2004 | FedEx (2019 Statement to B. Sullivan) | $29.23 | |
| | 10/31/2008 | FedEx (First Supp. 2019 to Sullivan) | $39.14 | |
| | 12/31/2008 | FedEx (Second Supp. 2019 to Sullivan) | $12.67 | |
| | **Total Expenses for 2019 Statements** | | | $81.04 |
| | | | | |
| **ZAI Proofs of Claim** | | | | |
| | 03/12/2008 | FedEx (POC to Claimants) | $11.52 | |
| | 10/15/2008 | FedEx (POC to Class Rep) | $16.50 | |
| | 10/22/2008 | FedEx (ZAI POCs) | $32.05 | |
| | 10/23/2008 | FedEx (ZAI POCs) | $25.65 | |
| | 10/28/2008 | FedEx (ZAI POCs) | $15.66 | |
| | 10/29/2008 | FedEx (ZAI POCs) | $22.40 | |
| | 10/31/2008 | FedEx (ZAI POCs) | $25.20 | |
| | 12/31/2008 | FedEX (ZAI POCs) | $49.75 | |
| | **Total Expenses for ZAI POCs** | | | $198.73 |
| | | | | |
| **ZAI Balloting Mass Mailing [4/2/2009 mailing to 8,158 ZAI class members]** | | | | |
| | 04/02/2009 | Office Depot - supplies | $219.49 | |
| | 04/02/2009 | Staples - labels | $94.45 | |
| | 04/02/2009 | Postage | $3,426.36 | |
| | 04/02/2009 | Photocopies | $2,520.00 | |
| | **Total Expenses for Mass Mailing** | | | $6,260.30 |
| | | | | |
| **ZAI Collection Kits** | | | | |
| | 03/02/2012 | Supplies | $32.66 | |
| | 03/13/2012 | Sending out testing supply kit | $15.60 | |
| | 04/01/2012 | Fed Ex. Shipping - Samples | $6.30 | |
| | 04/06/2012 | Fed Ex. Shipping - Samples | $39.16 | |
| | 04/12/2012 | Fed Ex. Shipping - Samples | $6.30 | |
| | 04/17/2012 | Fed Ex. Shipping - Samples | $49.23 | |
| | **Total Expenses for ZAI Collection Kits** | | | $149.25 |
| | | | | |
| **ZAI Legal Research** | | | | |
| Year | Month | | | |
| 2005 | Sept. | Lexis (August) | $9.17 | |
| 2005 | Dec. | Lexis (November) | $3.85 | |
| 2006 | Jan. | Lexis (December) | $9.66 | |
| 2006 | Feb. | Lexis (January) | $105.09 | |
| 2006 | March | Lexis (February) | $2.29 | |

| Cost Item | Date | | Description | Subtotal | Total |
|---|---|---|---|---|---|
| 2006 | April | | Lexis (March) | $20.77 | |
| 2006 | Aug. | | Lexis (July) | $16.27 | |
| 2008 | May | | Lexis (April) | $10.38 | |
| 2008 | July | | Lexis (June) | $46.17 | |
| 2009 | Oct. | | Lexis (September) | $7.46 | |
| 2008 | Feb. | | Westlaw (Jan) | $20.00 | |
| 2008 | March | | Westlaw (Feb) | $97.25 | |
| 2008 | April | | Westlaw (Mar) | $89.98 | |
| 2008 | May | | Westlaw (Apr) | $182.75 | |
| 2008 | June | | Westlaw (May) | $82.99 | |
| 2008 | July | | Westlaw (Jun) | $217.54 | |
| 2008 | Aug. | | Westlaw (Jul) | $57.12 | |
| 2008 | Oct. | | Westlaw (Sept) | $302.26 | |
| 2008 | Nov. | | Westlaw (Oct) | $21.81 | |
| 2008 | Dec. | | Westlaw (Nov) | $83.30 | |
| 2009 | Jan. | | Westlaw (Dec) | $72.40 | |
| 2009 | March | | Westlaw (Feb) | $17.02 | |
| 2009 | April | | Westlaw (Mar) | $111.19 | |
| 2009 | May | | Westlaw (Apr) | $43.81 | |
| 2009 | June | | Westlaw (May) | $7.82 | |
| 2009 | July | | Westlaw (Jun) | $15.35 | |
| 2006 | Jan. | | Pacer | $11.04 | |
| 2008 | May | | Pacer | $60.32 | |
| 2008 | Aug. | | Pacer | $19.04 | |
| 2009 | March | | Pacer (Jan-Mar) | $66.64 | |
| 2008 | Nov. | | Pacer | $21.76 | |
| 2009 | June | | Pacer (Apr-Jun) | $1.68 | |
| 2009 | Oct. | | Pacer (Jul-Sept) | $1.92 | |
| 2010 | Jan. | | Pacer (Oct-Dec) | $25.52 | |
| 2010 | Sept. | | Pacer (Jul-Sept) | $3.84 | |
| 2011 | July | | Pacer (Apr-Jun) | $1.28 | |
| 2005 | Oct. | | ATS Journal (Article) | $10.00 | |
| 2012 | Jan. | | Pacer | $0.32 | |
| 2012 | Feb. | | Pacer | $0.08 | |
| 2012 | March | | Pacer | $18.80 | |
| 2013 | Feb. | | Lexis | $210.60 | |
| 2013 | March | | Lexis | $36.61 | |
| 2013 | July | | Pacer | $17.50 | |
| 2005 | May | | Pacer | $0.48 | |
| | **Total Expenses for Legal Research** | | | | **$2,161.13** |

**ZAI POSTAGE**

| | | | | | |
|---|---|---|---|---|---|
| | 3/31/2005 | | Postage March | $7.37 | |
| | 4/30/2005 | | Postage April | $115.99 | |
| | 5/31/2005 | | Postage May | $1.85 | |

| Cost Item | Date | Description | Subtotal | Total |
|---|---|---|---|---|
| | 6/30/2005 | Postage June | $0.74 | |
| | 7/31/2005 | Postage July | $8.84 | |
| | 9/30/2005 | Postage September | $1.57 | |
| | 10/3/2005 | FedEx | $51.96 | |
| | 10/31/2005 | Postage October | $7.86 | |
| | 11/30/2005 | Postage November | $1.11 | |
| | 12/31/2005 | Postage December | $0.37 | |
| | 1/31/2006 | Postage January | $0.39 | |
| | 2/28/2006 | Postage February | $141.72 | |
| | 5/31/2006 | Postage May | $1.02 | |
| | 7/31/2006 | Postage July | $0.63 | |
| | 9/30/2006 | Postage September | $0.63 | |
| | 11/30/2008 | Postage | $12.55 | |
| | 12/31/2008 | Postage | $0.42 | |
| | 1/31/2009 | Postage | $103.32 | |
| | 2/28/2009 | Postage February | $116.62 | |
| | 3/31/2009 | Postage March | $4.36 | |
| | 4/30/2009 | Postage | $7.56 | |
| | 5/18/2009 | FedEx (ZAI Ballot) | $19.08 | |
| | 5/31/2009 | Postage May | $0.42 | |
| | 6/30/2009 | Postage June | $0.88 | |
| | 8/31/2009 | Postage August | $1.76 | |
| | 9/30/2009 | Postage (September) | $1.32 | |
| | 10/31/2009 | Postage (October) | $0.78 | |
| | 12/31/2009 | Postage (December) | $1.76 | |
| | 1/31/2010 | Postage (January) | $1.32 | |
| | 4/30/2010 | Postage (April) | $0.44 | |
| | 9/30/2010 | Postage (September) | $0.88 | |
| | 10/1/2010 | Postage | $14.42 | |
| | 3/1/2011 | Postage | $0.44 | |
| | 4/30/2012 | Postage (April 2012) | $0.45 | |
| | 12/31/2012 | Postage (Dec. 2012) | $0.65 | |
| | 2/28/2013 | Postage (Feb. 2013) | $3.68 | |
| | 4/30/2013 | Postage (April 2013) | $0.46 | |
| | 5/31/2013 | Postage (May 2013) | $0.92 | |
| | 7/30/2013 | Postage (July 2013) | $1.12 | |
| | **Total Expenses for Postage** | | | $637.66 |
| | | | | |
| **ZAI PHOTOCOPIES** | | | | |
| | 1/31/2005 | Photocopies 2x.15 | $0.30 | |
| | 2/28/2005 | Photocopies 144x.15 | $21.60 | |
| | 3/31/2005 | Photocopies 409x.15 | $61.35 | |
| | 4/30/2005 | Photocopies 552x.15 | $82.80 | |
| | 6/30/2005 | Photocopies 2x.15 | $0.30 | |
| | 2/28/2006 | 347 color copies (.40 each) | $138.80 | |

| Cost Item | Date | Description | Subtotal | Total |
|---|---|---|---|---|
| | 11/30/2008 | Photocopies 70x.15 | $10.50 | |
| | 1/31/2009 | Photocopies 246x.15 | $36.90 | |
| | 2/28/2009 | Photocopies February 224x.15 | $33.60 | |
| | 10/31/2009 | Photocopies (October) 13x.15 | $1.95 | |
| | 10/1/2010 | Photocopies | $6.60 | |
| | 12/1/2010 | Photocopies | $0.30 | |
| | 11/30/2012 | Photocopies (Nov. 2012) | $2.70 | |
| | 12/31/2012 | Photocopies (Dec. 2012) | $4.11 | |
| | 2/28/2013 | Photocopies (Feb. 2013) | $1.44 | |
| | 7/30/2013 | Photocopies (July 2013) | $1.86 | |
| | 2/11/2014 | Photocopies | $173.70 | |
| | **Total Expenses for Photocopies** | | | $578.81 |

**Total SLG Unreimbursed Costs - 1.8 ZAI Property Damage Claimants**  $28,692.98



RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC

1037 Chuck Dawley Boulevard, Building A
Mount Pleasant, SC  29464
Phone: 843-727-6500
Fax:  843-881-6183

**Prebill**

Zonolite

---

**Re:** Zonolite (Billing)  (200106-1)

Professional Services Through
As per Time Exhibit Attached................................................................     $0.00

Costs Through   02/05/14

Internal Charges Copies / Prints                                   79.00
Total Costs.........................................................................     $79.00
    Total Invoice...............................................................     $79.00



### RICHARDSON·PATRICK·WESTBROOK&BRICKMAN, LLC

1037 Chuck Dawley Boulevard, Building A
Mount Pleasant, SC  29464
Phone: 843-727-6500
Fax:  843-881-6183

**Prebill**

Zonolite

**Re:** Zonolite  (200106-0)

Professional Services Through
As per Time Exhibit Attached................................................................    $0.00

Costs Through  02/05/14

| | |
|---|---:|
| Co-Counsel Expenses | 7,106.15 |
| Consulting Services | 10,680.00 |
| Contract Labor | 1,202.50 |
| Copying | 3,216.63 |
| Expert Services | 1,852.50 |
| Printing/Photocopy Services | 9,950.45 |
| Reference Materials | 35.00 |
| Travel/Meeting Expense | 17,696.82 |
| Trial Preparation Supplies | 55.04 |
| Internal Charges Copies / Prints | 4,664.50 |
| Internal Charges DHL | 9.46 |
| Internal Charges FedEx | 318.11 |
| Internal Charges Scanned Images | 48.22 |
| Internal Charges UPS | 44.28 |
| Internal Charges Westlaw | 22,982.84 |
| Online research | 447.64 |
| Online Research Lexis Nexis | 1,934.97 |

Total Costs...............................................................................    $82,245.11

Total Invoice...........................................................................    $82,245.11

Receipts.................................................................................    $3,530.50

---

Balance Due................................................................. $78,714.61

Lieff, Cabraser, Heimann & Bernstein, LLP
Zonolite Combined Costs (0971)
Inception Through July 19, 2010

| | |
|---|---:|
| Computer Research | 16,108.79 |
| Depositions/Transcripts | 3,046.50 |
| Experts/Consultants | 63,832.20 |
| Fax @ $1.00 per page | 10,386.00 |
| Fed Ex/Messenger | 11,324.94 |
| Filing Fees | 60.00 |
| Notices/Publications | 6,575.00 |
| Other Research | 14,068.30 |
| Outside Copying Service | 36,874.04 |
| Photocopy In House @ .20 per page | 59,532.00 |
| Postage | 307.70 |
| Process Service | 60.00 |
| Telephone | 21,154.21 |
| Travel | 34,076.99 |
| | |
| Total: | $    277,416.67 |