**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re:<br><br>W.R. GRACE & CO., et al.,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 01-01139 (KJC)<br>(Jointly Administered)<br><br>**Hearing Date: 4/2/14 11:00 a.m.**<br>**Objection Deadline: 2/28/14 4:00 p.m.**<br><br>**Relates to D.I. 31718** |

**PARTIAL JOINDER OF LUKINS & ANNIS P.S. IN MOTION OF ZAI CLASS COUNSEL FOR A COMMON FUND FEE AWARD, AND COUNTER-MOTION TO STAY DISBURSEMENT OF ANY COMMON FUND FEE AWARD PENDING RESOLUTION OF ALL COMMON FUND FEE ALLOCATION DISPUTES**

Lukins & Annis, P.S., by and though its undersigned counsel, for its partial joinder in the Motion Of ZAI Class Counsel For A Common Fund Fee Award (D.I. 31718, the "Motion") and its counter-motion to stay disbursement of any common fund fee award pending resolution of all common fund fee allocation disputes, states as follows:

## I. INTRODUCTION

In late 2008 and early 2009, pursuant to a Motion to Approve Class Settlement and Certification of the U.S. ZAI Class (the "Settlement Motion", D.I. 20275), this Court entered preliminary and final orders approving a class action settlement (the "Settlement") of Zonalite Attic Insulation ("ZAI") litigation. While the Settlement established the amounts and timing of the settlement funds to be paid, the issues of how much would be awarded for attorneys' fees and costs, and who would be entitled to share in a fee award, were expressly left for another day.

The Spokane, Washington law firm of Lukins & Annis, P.S. ("L&A") contributed significantly to the development of the ZAI litigation both pre- and post-bankruptcy. As

discussed in further detail below, L&A invested a total of approximately 4,855 attorney hours[1] and more than 3,300 paralegal and legal staff hours in furtherance of the ZAI litigation. The hours incurred by L&A include, among other things, its efforts as class counsel in the "vanguard ZAI action," *Barbanti v. W.R. Grace* (Spokane County Cause No 00-2-01756-6 ), and for work relating to the W.R. Grace Property Damage Creditors' Committee in this bankruptcy proceeding. In addition to the sheer volume of hours devoted by more than thirty (30) separate L&A attorneys and staff, L&A incurred unreimbursed out-of-pocket costs and expenses in the amount of $222,946.96 related to the prosecution of the ZAI litigation.[2]

L&A's efforts were undeniably essential to the successful settlement achieved in this matter. As a result, L&A has a claim to, and hereby petitions the Court for, a share of any common fund fee awarded in this matter. To this end, L&A joins in that portion of the Motion that seeks approval of a contingency fee of 25% from the first two settlement payments made pursuant to the Settlement. However, L&A objects to any disbursement of the attorney's fees to the ZAI Class counsel that filed the Motion ("ZAI Class counsel")[3] or any other attorneys, and respectfully moves this Court to stay disbursement of any Common Fund Fee Award, pending resolution of the fee allocation amongst those claiming an interest therein.

## II. FACTUAL HISTORY

Commencing in late 1999 and continuing through December 31, 2004, L&A was actively involved in several ZAI matters, including cases brought by L&A in Montana and

[1]This number includes more than 3,300 hours logged by Darrell W. Scott while he was employed as an attorney at L&A. Mr. Scott departed L&A on December 31, 2004, and now practices law as the Scott Law Group, P.S.

[2]The costs claimed by ZAI Class counsel total $387,520.00 and do not include the costs incurred by L&A.

[3]Edward Westbrook and his firm Richards, Patrick, Westbrook & Brickman, LLC, the Scott Law Group, P.S. and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser").

Washington State. See Declaration of Jed W. Morris ("Morris Decl."), attached hereto as Exhibit 1, at ¶5. These matters were subject to a contingency fee arrangement. Morris Decl. at ¶6. Darrell W. Scott, the principal of one the ZAI Class counsel, was a principal/shareholder attorney at L&A during the period of late 1999 through December 31, 2004 when the ZAI matters were being litigated, and even as the matters progressed through bankruptcy.[4] Morris Decl. at ¶7.

Mr. Scott was the supervising principal on all ZAI related litigation that was done by L&A. See Morris Decl. at ¶ 8. A considerable amount of L&A's resources were used to prosecute these matters. As the supervising attorney, Mr. Scott directed, managed, and supervised over 30 L&A lawyers, paralegals and litigation assistants to prosecute these matters. Morris Decl. at ¶ 9. On December 31, 2004, Mr. Scott departed L&A. Morris Decl. at ¶ 13. At that time, Mr. Scott's new firm, the Scott Law Group, took over prosecution of the ZAI litigation claims. See Morris Decl. at ¶ 14. Mr. Scott and L&A do not have an agreed-upon cost and fee sharing agreement as it relates to the ZAI litigation claims.

It is understood that the ZAI Class counsel have reached an agreement on the sharing of the Common Fund Fee Award among their three firms, Mr. Westbrook's former firm, and a Montana law firm. Morris Decl. at ¶ 16. However, L&A was not a party to those negotiations and has not yet agreed to any allocation of the Common Fund Fee. Morris Decl. at ¶ 16. Though attempts at a resolution of L&A's outstanding claim to fees in the ZAI litigation have been ongoing for some time, L&A and the ZAI Class counsel have been unable to reach a

[4]Notably, Section II.A.3 (The Skill and Efficiency of the Attorneys Involved) of the Motion fails to mention that Lukins & Annis, P.S. was the law firm involved in the majority of class actions referenced by Mr. Scott. Mr. Scott did not leave Lukins & Annis and form The Scott Law Group, P.S. until December 31, 2004.

fair and equitable agreement on the division of any common fund fee that may be awarded in this matter. Morris Decl. at ¶ 15.

## III. LEGAL ANALYSIS

### A. Lukins & Annis, P.S. Supports the Amount of the Common Fund Fee Award as Reasonable and Appropriate.

For the reasons set forth in the Motion, L&A joins in the request to approve a contingency fee of 25% from the first two settlement payments made pursuant to the Settlement, for a total common fund attorney fee award of approximately $16 million (the "Common Fund Fee Award"), but does not join in any request to award such fees solely to ZAI Class counsel. The proposed Common Fund Fee Award is fair and reasonable in amount, but must be equitably allocated among all of the firms whose efforts contributed to the creation of the common fund, including L&A.

The Settlement provides, in part, for a claims facility to be funded by installment payments made by W.R. Grace in the amount of $30 million upon the effective date of a confirmed chapter 11 plan,[5] plus interest, and an additional $30 million three years later. See Motion at 8. The Settlement further provides for potential funding over the next twenty years in an amount up to an additional $80 million, as future ZAI claim activity warrants. See Motion at 8.

The proposed Common Fund Fee Award seeks a contingency fee of 25% from only the first and second payments to the claims facility, which total approximately $64 million. See Motion at 37. No contingency fee is proposed to be taken from any of the other potential future payments to the claims facilities, which could total $80 million in additional funds. See

[5] The Effective Date of the chapter 11 plan confirmed in these cases occurred on February 3, 2014.

Motion at 15 and 33. In addition to requesting a 25% contingency fee from only $64 million of a potential $140 million recovery, the contingency fee is to be paid when the payments are received by the Class; that is, the proposed Common Fund Fee Award would be paid in two installments. See Motion at 15.

The first payment of the Common Fund Fee Award would be 25% of the first installment payment made by W.R. Grace upon the effective date of the Plan, and the remaining fee would not be paid until the second $30 million installment payment is made three years later. See Motion at 8, 15, n. 15, and 37. Thus, not only is the overall amount of the proposed Common Fund Fee Award reasonable and appropriate, the timing of its distribution is also fair and reasonable, as it does not favor the attorneys over the Class.

While the Motion seemingly identifies only the time and hours devoted by three law firms, the Westbrook firm, the Scott Law Group and Lieff Cabraser, in calculating the Third Circuit's lodestar cross-check for fee awards, the reasonableness of the Common Fund Fee Award is even more evident when L&A's substantial time is considered.

Using the lodestar cross-check to assess the reasonableness of the anticipated $16 million fee, ZAI Class counsel indicate that among their three law firms they spent a total of 8,992 partner hours, 3829 associate hours, and 6,360 paralegal/support personnel hours. See Motion at 36. Applying the prevailing hourly rates to those hours yields a lodestar of $12,111,400, which is equivalent to a lodestar multiplier of 1.32. See Motion, ¶ 37. Although a multiplier of 1.32 is on the low end of what courts consider presumptively reasonable, it is even less when L&A's hours are included.

L&A invested a total of 3,970 partner/principal hours, 885 associate hours and 3,325 paralegal/support personnel hours in this matter.[6] [7] Applying the same prevailing hourly rates used by ZAI Class counsel yields a lodestar of more than $4,967,500. When added to ZAI Class counsel's lodestar of $12,111,400, the total amount of lodestar fees exceed the actual fee recovery and equates to a lodestar multiplier of less than 1. Under the totality of circumstances, the requested 25% contingency fee is fair and reasonable in amount.

### B. Lukins & Annis, P.S. Devoted Significant and Important Work to the ZAI Litigation and is Entitled to a Share of the Common Fund Fee Award as Determined by this Court.

An attorney whose actions have conferred a benefit upon a given group or class of litigants may file a claim for reasonable compensation for his efforts. *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3rd Cir. 2000). The key consideration in determining whether an award is justified is the value to the class of the legal work performed for its benefit. *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990). "It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund – whether they tended to create, increase, protect or preserve the fund." *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Co.*, 540 F.2d 102, 112 (3rd Cir. 1976). While now is not the time to determine the allocation of any Common Fund Fee Award among the various law firms asserting an interest, it is beyond dispute that L&A is entitled to a part of that allocation.[8] Indeed, many of the tasks and work

[6] For ease of calculation, these hours are rounded down to whole numbers and do not include the hours spend reviewing pleadings in the bankruptcy case and independently monitoring the progression of this matter through bankruptcy.

[7] Similar to the ZAI Class counsel, L&A submitted a summary of the hours worked. *See* Morris Decl. at ¶ 10. The detailed time records are available to the Court upon request.

[8]The following section is provided to the Court as general background information on L&A's involvement in the ZAI litigation. L&A will further support the entitlement to a portion of the Common Fund Fee Award in any

identified in the Motion as important to the ultimate success of this matter were done with the assistance of L&A, and while Mr. Scott was still employed by L&A.

By far, the work that is devoted to a class action is the principal factor in determining an attorney's portion of the common benefit fee. The labor portion of a court's consideration consists of two sub-parts: time and type of work. T*urner et al. v. Murphy Oil USA, Inc.*, 582 F.Supp.2d 797, 810 (E.D. La. 2008). Taking depositions, participating in hearings or trial, actively participating in developing appropriate litigation strategies and tactics, drafting briefs, actively participating in court conferences and arguing motions are some of the more significant types of work that a class action requires and deserve the most recognition. Id. at 810-11. However, work such as document review, reading and responding to emails, keeping clients informed, attending meetings and generally monitoring the litigation is work that does not deserve equal treatment when allotting fees. *Id*.

L&A was involved in the ZAI litigation from its inception until December 31, 2004, when Mr. Scott left L&A to form The Scott Law Group. P.S.[9] While L&A does not discount the work ZAI Class counsel put into this matter from January 2005 until it settled in December 2008, much of the claims development and class certification work was done during the 5-year time span preceding Mr. Scott's departure from L&A. L&A spent many hours researching the possible merits of ZAI claims and formulating strategies for pursuing such claims. L&A also played an integral part in discovery, including identifying potential class claimants and taking many depositions.

---

subsequent hearings or proceedings to determine the proper allocation of the Common Fund Fee Award, or as agreed by the parties.

[9]Mr. Westbrook and his former law firm (Ness Motley), and Lieff Cabraser were also involved in the beginning stages of the ZAI litigation with L&A, and their work is not meant to be minimized in any fashion.

In any class action, there is inherently more risk involved at the outset, and law firms that are involved at the inception of the class action assume more risk than firms who only get involved in the later stages of litigation. See *In re Copley Pharmaceutical, Inc.,"Albuterol" Products Liability Litigation*, 50 F.Supp.2d 1141, 1155 (D. Wyoming 1999).

As ZAI Class counsel notes in its Motion, ZAI litigation was still in its infancy when this matter began. See Motion at 20. ZAI litigation presented new issues and challenges not seen in traditional asbestos property damage litigation. See *id*. There was little case law on which to rely, and attorneys such as L&A who were willing to take on ZAI litigation at that time were assuming the risk of recovering none of their fees and costs expended in prosecuting the claims. See *id*. The novelty and difficulty of the issues encountered and overcome by L&A while working on the early stages of the ZAI litigation were often matters of first impression, requiring L&A to develop new theories of recovery. L&A took on significant risk by getting involved in ZAI litigation at the very beginning, before any ZAI classes had been certified or any class settlement agreements had been reached. In short, L&A actively participated in developing appropriate litigation strategies and tactics when the potential success of ZAI claims was still very uncertain.

Additionally, L&A was directly involved in the *Barbanti* case, which is rightly considered by ZAI Class counsel to be the "vanguard ZAI action," upon which ZAI Class counsel relied to obtain class certification in this Court. See Motion at 23. Indeed, the class representatives in Barbanti, Marco Barbanti and Ralph Busch, were clients of L&A as were others. See Motion, Ex. 30. L&A drafted the motion for class certification that the Washington Superior Court ultimately granted, and L&A actively participated in drafting pleadings and

arguing motions in the *Barbanti* case up until the time that W.R. Grace filed bankruptcy in this Court, and for more than three years thereafter.

L&A defended W.R. Grace's multiple attacks on the class certification, including the motion for discretionary review of the order certifying the class and a motion seeking to change the definition of the class and thereby narrow the scope of the class action. This work directly benefitted the ZAI class claimants and was essential to the class settlement award because ZAI Class counsel was able to rely on the *Barbanti* certification as the "bellwether Washington ZAI Class"[10] when arguing that class certification in this bankruptcy proceeding was proper.

W.R. Grace's continued attempts to decertify the class and narrow the scope of the class reflects W.R. Grace's concern that the class certification in *Barbanti* could have wide-reaching implications in other ZAI litigation. Indeed, the *Barbanti* certification paved the way for other ZAI class certifications, including the class certification in this Court. See ECF Doc. No. 20275-2. As stated above, ZAI Class counsel relied on *Barbanti* when arguing for class certification in this Court, and the work L&A performed with respect to *Barbanti* laid the groundwork for the class settlement here.

All told, L&A devoted more than 30 attorneys, paralegals and litigation support staff, and thousands of hours, to prosecuting the ZAI litigation in Washington, Montana and in this Court. The total hours devoted by L&A are more than any of the other firms involved in this matter. A fair and reasonable allocation among the attorneys must be decided before any Common Fund Fee Award can be distributed.

---

[10] *See* Settlement Motion, D.I. 20275. *See also* Motion at 31.

In addition, class counsel in common fund cases are entitled to reimbursement of their reasonable litigation costs. *Serrano v. Sterling Testing Sys., Inc.*, 711 F.Supp.2d 402, 423-24 (E.D. Pa. 2010). L&A incurred a total of $222,946.96 in reimbursable costs in prosecuting the ZAI claims, with $147,698.30 of that total being prepetition costs and $75,248.66 being postpetition costs. L&A requests that it be awarded compensation for those out-of-pocket expenses.

**C. This Court Should Stay any Distribution of the Common Fund Fee Award Pending Resolution of the Attorney Fee Allocation Dispute.**

While ZAI Class counsel's Motion (and Proposed Order) does not set forth any specific allocation plan for payment of attorneys' fees from the Common Fund Fee Award, no distribution of attorneys' fees should be made to counsel until the competing claims can be resolved by this Court or another court of proper jurisdiction, or through a mutually agreed-upon method of alternative dispute resolution. Such a result is consistent with the Court's inherent power to supervise and manage the issues and parties before the court.

Courts have the inherent power to supervise and manage the disbursement of attorney fees from settlement awards. *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1109 (3rd Cir. 1979). In a class action settlement, the court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel. *Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*¸ 528 Fed. Appx. 211, 214 (3rd Cir. 2013). "And a proper allocation should reflect the relative contribution that the various plaintiffs' firms made to the successful outcome of the litigation." *Id*.

Since the payment of the attorneys' fees comes from the common fund, after attorneys secure a settlement their role with respect to fees changes from one of fiduciary for

their clients to that of claimants against the fund created for their clients' benefit. *In Re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307-08 (3rd Cir. 2005); *In Re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3rd Cir. 2005). Consequently, the court becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications. *Id*.

The Court should not order disbursement of any of the fees until the allocation of the fees has been settled, and is no longer under review. *See, e.g.*, *Town of New Harford v. Connecticut Resources Recovery Authority*, 291 Conn. 511, 970 A.2d 583 (2009) (court stayed disbursement of common fund fees where the court's order allocating the fees was being reviewed); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2008 WL 682174 (D.Minn. 2008) (noting that the court would order disbursement of common fund fees only after consideration of the lead counsel's proposed allocation plan, any objections to the plan, and any response to the objections).

L&A respectfully requests that this Court stay disbursement of the Common Fund Fee Award to the ZAI Class counsel or any other attorneys asserting an interest therein until the proper allocation of such fees can be determined, and at the hearing on the Motion conduct a scheduling conference regarding the procedure to be implemented for a determination of that allocation dispute.

## IV. CONCLUSION

For the foregoing reasons, L&A respectfully requests that the Court approve the amount of the Common Fund Fee Award as reasonable, and stay distribution of the Common Fund Fee Award pending resolution of the fee allocation amongst the various law firms and attorneys claiming an interest therein, including L&A.

Dated: February 28, 2014
Wilmington, Delaware

Respectfully submitted,

**PEPPER HAMILTON LLP**

By: /s/ David M. Fournier

David M. Fournier (DE No. 2812)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Phone: (302) 777-6500
Fax: (302) 421-8390
fournierd@pepperlaw.com

*Attorneys for Lukins & Annis, P.S.*