## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re: | ) |  |
|  | ) | Case No. 01-01139 (KJC) |
| W.R. GRACE & CO., et al., | ) | Jointly Administered |
|  | ) |  |
| Reorganized Debtors. | ) | **Re: Docket No. 18821** |
| _____ | ) | **Hearing Date: May 28, 2014 at 11:00 am** |
|  |  | **Objection Deadline: March 24, 2014 at 4 pm** |

## ANDERSON MEMORIAL HOSPITAL'S MOTION TO ALTER OR AMEND ORDER DENYING MOTION FOR CLASS CERTIFICATION AND FOR ENTRY OF SCHEDULING ORDER AND GRANTING RELATED RELIEF

## I. MOTION

Anderson Memorial Hospital ("AMH") moves to alter or amend the Order of this Court (Judge Fitzgerald) denying AMH's Motion for Class Certification.  [DI 18821 ("Certification Order")].  AMH requests the Court to enter a Scheduling Order providing for discovery followed by certification briefing and oral argument.

## II. JURISDICTION

Pursuant to Fed.R.Civ.P. 23(c)(1)(c) and Fed.R.Bankr.P. 7023, "An order that grants or denies class certification may be altered or amended before final judgment."

Additionally, the Certification Order is an interlocutory order subject to reconsideration.  At Grace's urging, the District Court denied AMH's request for an interlocutory appeal.  [DI 19492, 20032].  On appeal, the Third Circuit held that, "A

district court's determination that an action may not be maintained as a class action under Rule 23 is not a final decision within the meaning of 28 U.S.C. ¶1291," and that it did not have jurisdiction to consider the District Court's refusal to grant an interlocutory appeal. *In Re: W.R. Grace & Co.*, No. 08-4829 (3rd Cir. 2009).

Over a series of hearings, Grace also convinced Judge Fitzgerald that she should not expunge AMH's Class Claims. [DI 21257].

### III. __INTRODUCTION__

In the Certification Order, Judge Fitzgerald held that "we find that Anderson Memorial has not satisfied the numerosity requirement of Fed.R.Civ.P. 23(a), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7023(a), and we will deny the motion." [Certification Order at 2].

The specific basis of Judge Fitzgerald's ruling was that building owners who did not file individual claims in response to the Court's property damage ("PD") Bar Date Order could not be members of the class. [*Id.* at 6-7]. Conversely, Judge Fitzgerald recognized AMH's class in the resolution of three other bankruptcies.[1]

---

[1]*In re USG Corp.*, Case No. 01 2094 JKF, AMHA700966-1003; *In re Federal Mogul Global, Inc.*, Case No. 01 10578 JKF, AMHA700843-926, AMHA700927-965; *In re U.S. Mineral Products Co.*, Case No. 01 2471 JKF, AMHA701007-1041, AMHA701042-1091. In a Florida bankruptcy (*Celotex*), fifty-two AMH Claims were Allowed in the sum of $268,204,287.74 and paid $37,816,804.57 in accordance with the 14.1% payment percentage, even though the *Celotex* bankruptcy was filed before AMH filed its lawsuit. [TAB 1].

Judge Fitzgerald denied the Motion for Class Certification on legal and factual grounds which AMH never had an opportunity to address.  In addition, during the six years since the record was closed, there have been a number of legal opinions and factual disclosures at odds with Judge Fitzgerald's conclusions.   Finally, the confirmed Plan of Reorganization ("Plan") presents an entirely new landscape on which to consider AMH's request and the means to employ the tools that certification of AMH's proposed class provides the Court.

In particular, as a result of subsequent decisions of the Third Circuit and the District Court presiding over this case, there are now thousands of present PD Claimants without adequate representation who will present substantial challenges for this Court as discussed below.  AMH can provide that representation and solve all these problems.

## IV.  <u>STATEMENT OF LAW</u>

Twenty-six years ago, the Seventh Circuit held in a landmark decision that class actions may be pursued in bankruptcy on behalf of claimants who did not file individual claims.  *In re  American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988). Rejecting years of bankruptcy precedent, the Court ruled that the fact that most claimants "would not learn of the bankruptcy and the need to file proof-of-claim forms" is not a good reason why claimants should not be allowed to receive payment

in the bankruptcy. *Id*. at 492. In the Seventh Circuit's oft-quoted language, "The representative in a class action is an agent for the missing." *Id*. at 493.

At the time of Judge Fitzgerald's Certification Order, three Circuit Courts had followed *American Reserve*. *In re Charter Co.*, 876 F.2d 866 (11th Circuit 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989); *In re Birting Fisheries, Inc.*, 92 F.3d 399 (9th Cir. 1996). Additionally, this Court (Judge Walrath) had expressly adopted *American Reserve* and its progeny. *In re Kaiser Group International, Inc.*, 278 B.R. 58 (Bankr. D.Del. 2002). As explained by Judge Walrath:

> The Debtors also argue that we should consider whether it is appropriate to give class members an opportunity to participate in the class if they did not file proofs of claim before the bar date. The Debtors argue this gives class members an extension of the time within which to file a claim. The Claimant, however, did file the class proof of claim before the bar date. If the class claim is certified, then the claims of all the members of the class are incorporated in the proof of claim that was timely filed. This is inherent in class actions.

*Id*. at 63 (citation omitted).

## V. <u>PROPOSED CLASS DEFINITION</u>[2]

AMH seeks the certification of an opt-out class consisting of the owners of buildings which now or formerly contained any Grace product with commercial asbestos or contaminated vermiculite, with present claims, excepting claims for

---

[2]The terms set forth in this section are defined below.

Zonolite Attic Insulation ("ZAI").[3] Excluded from AMH's Class Definition are building owners and their authorized representatives who filed individual Proofs of Claim before the PD Bar Date; building owners who have settled and released their claims against Grace; and any building owned by the federal or a state government.

For ease of discussion, class members' present claims may be broken down into those claims which accrued before the PD Bar Date ("Accrued Claims") and those claims which had not accrued at that time ("Gap Claims"). AMH does not seek to represent the holders of Future Demands ("Future Claimants").

## VI. BACKGROUND

Now is not the time to set forth the twenty-one year history of the litigation between AMH and Grace. Because this Court recently has been assigned to this bankruptcy, however, a concise and non-argumentative background statement is necessary to place this Motion in proper context.[4]

### A.    Grace's Products

Grace sold what it called "Vermiculite Products." [DI 1926 at 67]. Grace

---

[3]Judge Fitzgerald expunged AMH's ZAI Claim on the ground that she previously had denied AMH's Motion for Class Certification. [DI 21406]. AMH appealed that Order to the District Court. [D.Ct. 09-421, DI 5, 6].

[4]AMH anticipates filing a Memorandum in Support of Class Certification, which will include a full "Statement of Facts."

owned the world's largest vermiculite mine in Libby, Montana. Libby vermiculite was contaminated with asbestos. Beginning in the 1920's and continuing into the 1980's, Grace sold contaminated vermiculite as ZAI, installed in homeowners' attics, and Masonry Fill, applied in concrete cavities, often in low cost houses. [DI 1926 at 75; DK 2351, Ex. 2].

In 1945, Grace began selling "Surface Treatment" – material which was spray or trowel applied to building surfaces – initially acoustical plaster and later textures for application to building ceilings. [DI 1926 at 75]. In the early 1960's, Grace introduced Vermiculite Monokote Fireproofing, which became the market leader in the treatment of steel frames in high-rise buildings. In addition to the contaminated vermiculite, Grace's Surface Treatment products also contained commercial asbestos. In 1971, Grace substituted shredded paper for the commercial asbestos in Monokote and continued to sell the product with the contaminated vermiculite. *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 976 (4th Cir. 1987).

At the beginning of the bankruptcy, Grace coined a new term when it described all non-ZAI PD Claims as "Traditional PD Claims." There is no basis in law or in fact for this distinction because, for example, Masonry Fill is the same product as ZAI but is defined as a Traditional Claim. Nevertheless, because ZAI Claims are treated differently from Traditional Claims in the Plan, AMH will employ those terms.

**B.     PD Lawsuits**

Historically, the most dangerous exposures from asbestos-containing material ("ACM") – as opposed to raw asbestos at mines and plants – occurred not when ACM was wet-applied during construction of ships or buildings, but when the ACM was later and inevitably ripped out of structures during renovation or demolition activities. As a result of government regulations and sound public health policy, building owners are required to separately remove Surface Treatment before undertaking such renovation or demolition activities.

In reality, building owners, at great expense, have been and are in the business of preventing another wave of asbestos disease.  The PD lawsuits seek the costs associated with asbestos abatement, primarily against the Surface Treatment manufacturers.  The largest of the Surface Treatment manufacturers was Grace, whose personal injury liabilities would be astronomically greater if building owners had not undertaken and do not in the future undertake the safe removal of ACM.

Prior to the bankruptcy, Grace paid more in asbestos PD claims than asbestos personal injury ("PI") claims. [DI 19187, 7/22/08 Tr. 13].

**1.     *The Schools Litigation***

The PD litigation began in the early 1980's, when the Environmental Protection Agency ("EPA") required school districts (and no one else) to test for asbestos and

either remove it or tell the parents of its presence. [40 Fed. Reg. 23360 (May 27, 1982)]. AMH's counsel (Mr. Speights) and co-counsel sued Grace on behalf of a number of school districts.

At that point, Grace was not on the radar screen of the PI bar.[5] Mr. Speights obtained a Rule 37 Order from District Court William W. Wilkins, Jr. (later Chief Judge for the Fourth Circuit) requiring Grace to conduct a search of all of its facilities, including its Libby operation, and produce all documents regarding its knowledge of the hazards of asbestos. [TAB 2]. In an internal Memorandum, Grace recognized that most of the asbestos PD lawsuits occurred "to a great extent" as a result of "the zealous efforts of Dan Speights." [TAB 3].

Grace then consented to a mandatory class action on behalf of the nation's schools. *See In Re Asbestos School Litigation,* 594 F.Supp. 178 (E.D. Pa. 1984). While the certification decision was on appeal, Mr. Speights served as lead trial counsel and obtained the first asbestos PD verdict in the nation (and the first asbestos verdict of any kind against Grace). *City of Greenville v. W.R. Grace & Co.*, 640 F.Supp. 559 (D.S.C. 1986), *aff'd*, 827 F.2d 975 (4th Cir. 1987). The $8.4 million dollar verdict included $2.0 million in punitive damages.

---

[5]Grace's Surface Treatment products were wet-applied, and in 1973, while most of the material was still in place, EPA banned dry rip outs. 38 Fed. Reg. 8826, 40 C.F.R. Section 61.20 et. seq. (now 40 C.F.R. Section 61.140 et. seq.).

The Third Circuit later rejected Grace's call for a mandatory class and upheld a purely voluntary class on behalf of the nation's schools. *In Re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984), *aff'd* in part and *vacated* in part, 789 F.2d 996 (3d Cir. 1986)("*Schools Class*"). Mr. Speights and co-counsel immediately filed a class action on behalf of the nation's colleges and universities, which was certified and upheld by the Fourth Circuit. *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993) ("*Colleges Class*").

Grace next settled all of its individual school asbestos cases (and subsequently settled both the *Schools Class* and the *Colleges Class*). Mr. Speights and his new law firm, Speights & Runyan ("S&R"),  pivoted primarily to the representation of private building owners.

## 2.    *The Private Buildings Litigation*

Whether or not undisturbed in-place asbestos materials should be removed from non-school buildings before demolition activities is an interesting public health question, but from a legal standpoint, it is not a question of whether but when building owners must separately remove Grace's Surface Treatment products. The Fourth Circuit labeled Grace's argument denying the inevitability of removal as "specious" in light of the federal "NESHAPS Regulations" requiring separate (and costly) asbestos removal before major renovation or demolition activities. *City of*

*Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 982 (4th Cir. 1987)[6]

In 1990, EPA issued a new guidance document encouraging non-school building owners to defer asbestos removal until building renovation or demolition activities.  [EPA 20T-2003 (July 1990)].  Previously Grace, through its judicially determined alter-ego, the Safe Buildings Alliance ("SBA"), conducted a massive public relations campaign to convince building owners to forego the removal of ACM until building demolition.  *See In re School Asbestos Litigation*, 842 F.2d 671, 674, 682-683 (3d Cir. 1987).  Grace erroneously believed that the statutes of limitations would then expire due to the general knowledge of the dangers of asbestos.[7]

In 1991, S&R obtained the first two verdicts in the nation against Grace on behalf of private commercial building owners.  *Blue Cross and Blue Shield of South*

---

[6]In the *Colleges Class*, the Fourth Circuit affirmed the finding that the requirement of a building owner to comply with NESHAPS is a common issue supporting certification of a nationwide asbestos PD class action.  6 F.3d 183.  The NESHAPS Regulations also establish the scope of damages.  *In re: Asbestos School Litigation,* No. 83 0268 (E.D. Pa. September 4, 1991)(1991 WL 175819).

[7]Before EPA issued its new guidance document, S&R obtained the first verdict in the nation on behalf of a commercial building owner against Grace's competitor.  *New Hampshire  Vermont Health Services v. U.S. Mineral Products Corp.*, 10 F.3d 805 (1st Cir. 1993).  In 1989, S&R settled three private building cases with Grace on the courthouse steps or during trial.  *Liberty Life Insurance Company v. W.R. Grace & Co.*, C/A No. 6:87 3147 17 (D.S.C.); *Multimedia Publishing of South Carolina, d/b/a The Greenville News Piedmont Company v. W.R. Grace & Company, et al.*, C/A No. 6:89 1293 3 (D.S.C.); and *Security Homestead Association v. W.R. Grace & Company,* No. 88 5165 "A"[2] (E.D.La.).

*Carolina v. W.R. Grace & Company,* 781 F.Supp. 420 (D.S.C. 1991); *Clayton Center Associates v. W.R. Grace & Company,* 861 S.W. 2d 686 Mo. 1993).  The next year, S&R lost a case against Grace on the statute of limitations at the trial level when the District Court charged the jury that the statute of limitations began to run when the building owner knew or should have known that Grace's product might pose a hazard.  The Eighth Circuit reversed and held that the statute does not accrue (and the building owner has no right to bring a lawsuit) until the building owner has suffered a compensable injury, defined as asbestos contamination.  *MDU Resources Group v. W. R. Grace and Company-Conn.*, 14 F.3d 1274 (8th Cir. 1994).[8]

### 3.    *Anderson*

On December 23, 1992, before the Eighth Circuit ruled, AMH filed its "Class Action Complaint" against Grace and several other Surface Treatment manufacturers in the Court of Common Pleas for Hampton County, South Carolina ("*Anderson*"). With the filing of *Anderson*, S&R, which previously had litigated against Grace in approximately thirty states, essentially stopped bringing individual cases on behalf of class members (although it litigated and resolved its inventory of PD cases).

---

[8]S&R later established an even more lenient accrual standard when the Wisconsin Supreme Court affirmed a verdict against Grace in nuisance for the "continuing harm" caused by its Monokote fireproofing.  *Northridge Company v. W.R. Grace & Co.*, 205 Wis.2d 267, 556 N.W.2d 345 1996).

In light of EPA's new guidance, and Grace's statute of limitations arguments, AMH sought recovery on behalf of the owners of buildings which "have suffered or will suffer asbestos contamination caused by the release of asbestos products" from Defendants' Surface Treatment.  [TAB 4].  AMH became the first building owner in America to seek recovery for ZAI and Masonry Fill when the Circuit Court (Judge John C. Hayes, III) permitted it to amend its Complaint over Grace's objection.  [DI 21259 (Finke Deposition), 03/30/09 Tr. 122-125].

Seven months before the bankruptcy, Judge Hayes conducted a two day evidentiary hearing attended by Grace's former General Counsel (Robert Beber), who remained in charge of all Grace's asbestos PI and PD cases. By that time, S&R had expended over 12,000 hours in the prosecution of the class action (as of today, fourteen years later, S&R has more than doubled that amount).  [TAB 5].[9]

Judge Hayes was prepared to rule on Grace's primary objection at the conclusion of that hearing.  [TAB 6 at 4].  All issues had been exhaustively briefed and re-briefed over the preceding three years.  Nevertheless, Grace – which apparently knew of its bankruptcy plans -- persuaded Judge Hayes to permit it to file

---

[9]AMH will set forth its extensive nationwide discovery against Grace in its Memorandum in Support of Class Certification to support its argument that absent class certification, each individual claimant will have to conduct its own discovery, with inevitable discovery disputes to be decided by the Court.

an additional brief after obtaining a transcript of the hearing, which took five months to complete.  [TAB 6 at 4].

After Grace filed its final brief, Judge Hayes conditionally certified a class action against Grace (under South Carolina law, all certifications are conditional), and then provided Grace another hearing.  Shortly after Grace filed its Petition, Judge Hayes issued a lengthy Order certifying the class as to the remaining Defendants. [TAB 6].[10]

## VII.  STATEMENT OF CASE

In 2002, Judge Fitzgerald issued a "PD Bar Date Order"  establishing a March 31, 2003 "PD Bar Date." [DI 1960].  Judge Fitzgerald exempted ZAI (but not Masonry Fill) from the PD Bar Date Order because she decided to conduct a "Science Trial" to determine the harmfulness of ZAI before telling homeowners to go into their attics and test it. [*See* DI 18233, 2/25/08 Tr. 40].

AMH timely filed a Class Proof of Claim on behalf of the putative class it filed

---

[10]AMH originally filed its class action without any geographic boundaries, but the Circuit Court ruled that it could not litigate the claims of out of state building owners by virtue of a peculiar South Carolina enactment known as the "door closing statute."  Judge Fitzgerald later correctly ruled that under both Fourth Circuit and South Carolina Supreme Court precedent, the statute does not apply in a Federal Court -- including a Federal Bankruptcy Court -- when she recognized AMH's status in three other bankruptcies.  *Supra* at 2, n.1.  *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 186, n.3 (4th Cir. 1993); *Bell v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003).

an action on behalf of in 1992 (which Grace tagged the "Worldwide POC"), a Class

Proof of Claim on behalf of the certified South Carolina class ("Statewide POC"), and

an individual Claim on behalf of the hospital.  [DI 19987].  Although there is no legal

requirement for a class representative to attach a list of class members to a class proof

of claim, at Judge Fitzgerald's suggestion, AMH attached a list of over 3000 putative

claimants to its Worldwide POC and an affidavit identifying hundreds shipments of

Grace's Surface Treatment and Masonry Fill to its Statewide POC.  [DI 19987].

In September 2005, Grace objected to AMH's Class Claims.  [DI 9315].  AMH

timely moved for class certification.  [DI 10014].  *See In re Charter Co.*, 876 F.2d

866 (11th Circuit 1989).  Ten days later, before Grace responded, Judge Fitzgerald

*sua sponte* questioned whether or not, as a matter of law, a class could include

building owners who did not file individual claims:

> THE COURT:  Well, I think I need a brief on what I believe to be a legal issue
> which is with the bar date having past and you now know the universe of
> individual claims, how the class can be any bigger than the individual claims
> because it seems to me if the bar date notice was appropriate, and I found that
> it was, that's why I let it go out, and an individual hasn't filed a proof of claim,
> then they can't be part of a class because they haven't submitted a claim, I
> think.  But I want that issue briefed.

[DI 11025, 10/31/05 Tr. 94].  Over the next two and a half years until the 2008

Certification Order was entered, Judge Fitzgerald never wavered from that view. On

that basis, Judge Fitzgerald granted Grace's Motion for Protective Order and quashed

AMH's numerosity discovery.  [DI 13077, 08/21/06 Tr. 283-284].

In July 2007, Judge Fitzgerald conducted an evidentiary hearing on AMH's Motion for Class Certification.  Judge Fitzgerald not only denied AMH's proffer of numerosity evidence that it had acquired in pre-bankruptcy, but she would not permit AMH to mark such evidence for identification so that the record could be examined on appeal. [DI 16422, 07/05/07 Tr. 79-83].

In April 2008, Grace announced the execution of a "Term Sheet for Resolution of Asbestos Personal Injury Claims" by Grace, Equity, the PI Committee, and the PI FCR ("Plan Proponents").  The following month, Judge Fitzgerald issued her Certification Order. [DI 18821].  Judge Fitzgerald later commented that she should have expunged AMH's Class Claims.  [DI 19891, 10/20/08 Tr. at 20].  However, at Grace's urging, she placed them in suspense instead. [DI 21257].

In February 2009, the Plan Proponents filed their Joint Amended Plan which for the first time provided for the treatment of PD Claims. [DI 20874-2 ("PD Trust Agreement"); DI 20877 ("PD CMO")].  The Plan and PD Documents proposed that all PD Claims would be paid by a 524(g) Trust ("PD Trust") in accordance with the PD Trust Agreement. [DI 20873 (Disclosure Statement) at §4.7.3.1].

Judge Fitzgerald conducted a Confirmation Hearing in late 2009 and confirmed the Plan in 2011.  [DI 26155, 26289].  The Third Circuit denied AMH's certification

appeal.  *In re: W.R. Grace & Co.*, 729 F.3d 332 (3ʳᵈ. Cir. 2013).  The Plan became

Effective on February 3, 2014, after all pending appeals of the Confirmation Order

(including AMH's) had been settled or decided.

## VIII.  GROUNDS FOR RELIEF

The following grounds, individually and collectively, compel that AMH's

Motion must be revisited and granted on behalf of the class described above:

**A.    Issues Never Addressed**

*1.    Certification Order's Central Legal Conclusion*

The first issue which AMH never had an opportunity to address was the

holding on the central legal issue in which Judge Fitzgerald reversed her prior

pronouncements on numerosity.

Based on Judge Fitzgerald's earlier statements, AMH anticipated that the

Certification Order would provide, as a matter of law, that AMH's proposed class

would be limited to those who filed individual claims.  However, Judge Fitzgerald

actually recognized, albeit in one sentence in a footnote, that "a requirement that a

class be limited to those who had filed individual claims was 'illogical and contrary

to the most important class policy considerations.'"  [Certification Order at 7, n. 10

(citation omitted)].

Although her order recognized the illogic of limiting class claims to those who

had filed individual claims, during the course of the proceedings leading up to her ruling Judge Fitzgerald repeatedly told the parties that she did not believe that building owners who did not file individual claims could participate in a class, quashed AMH's numerosity discovery, and refused AMH's request to mark its numerosity evidence for the record.  Judge Fitzgerald perceived (incorrectly) that AMH was challenging her PD Bar Date Order. As a result, AMH was precluded from presenting evidence that would have satisfied the numerosity requirement.

In light of Judge Fitzgerald's recognition that a class may include persons or entities who did not file individual claims, AMH should be permitted to conduct its numerosity discovery and offer its numerosity evidence, and certification should then be considered in light of the undisputed law and the complete factual record.

### 2.    *Certification Order's Central Factual Finding*

The second issue which AMH never had an opportunity to address was Judge Fitzgerald's reliance on an indisputably erroneous statement in a District Court decision – handed down after the certification record was closed and never submitted by Grace – on the central factual issue of how many building owners were provided individual or actual notice of the PD Bar Date Order.

Specifically, Judge Fitzgerald found that "the property damage claim creditor universe is known" and "there are not enough claims left to constitute a numerous

base in the first place" because, in addition to publication notice, "over 8700 property

damage claimants were served," and "actual notice went to approximately "200,000

known asbestos claimants."  In fact, Grace told Judge Fitzgerald two years earlier that

it did not provide individual notice to *any* PD claimant and actually served  counsel

for eight building owners who had pending lawsuits as of the time of the bankruptcy.

[DI 13077, 8/29/06 Tr. 250].[11]  By AMH's count, only **three** building owners not

represented by these lawyers pursued individual claims , and **not one** building owner

(other than AMH) pursued a Masonry Fill claim.[12]

AMH's Motion for Class Certification should be considered unencumbered by

any suggestion that claimants received individual notice.

### 3.     *Certification Order's Central Procedural Confusion*

The third issue which AMH never had an opportunity to address was Judge

Fitzgerald's erroneous belief that AMH's Motion was untimely because, "At a

---

[11]At this same hearing, Grace suggested to Judge Fitzgerald that its service
on lawyers representing asbestos PI Claimants was significant. [ *Id*. at 249-253].
AMH's counsel has represented building owners in asbestos PD cases against
Grace since 1982, and during that period, only one PI firm has been active in the
PD litigation.

[12]Judge Fitzgerald declined to provide a television notice of its PD Bar Date
Order:  "I don't know why I need a television for property damage claims,"
because "a property damage claim is what Bankruptcy Courts deal with all the
time."  [DI 2057, 4/22/02 Tr. 94].  Judge Fitzgerald later required a television
notice for the ZAI Bar Date Order. [DI 18934].

hearing in February of 2002 this court directed that before any class proofs of claim were filed a motion to certify a class had to be filed." [Certification Order at 4, n. 5]. Judge Fitzgerald never made such a ruling.  Grace never made such an argument.  The law is otherwise.[13]

AMH's Motion should be considered on the merits.

## B.   Subsequent Developments

### 1.   *Grace's Admission*

The first subsequent development was Grace's acknowledgment – in its Response to AMH's Motion for Leave to Appeal – that class certification is not limited to claimants who filed individual proofs of claim, at least where, as here, the Class Representative attaches a list of putative claim holders.  [Dist. Ct. Case No. 08-118, DI 13 at 11; see DI 19987 (lists attached)].  Had Grace been candid with the Court after Judge Fitzgerald raised this issue *sua sponte*, Judge Fitzgerald and the

---

[13]AMH filed its Class Claims in March 2003, but Grace did not object until September 2005. [DI 9315].  Judge Fitzgerald recognized the rule that a claimant cannot file a Motion for Certification until there is a contested proceeding. [Certification Order at 6, n.10, citing *In re Charter Co.*, 876 F.2d 866, 874-875 (11th Circuit 1989) ("Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter" and "the debtor may decide not to litigate a claim or may seek to compromise, there often will be no need for contested proceedings relating to a claim")].  Judge Fitzgerald attempted to distinguish *In re Charter* based upon her mistaken belief that she had directed that a Motion to Certify had to be filed before the March 31, 2003 PD Bar Date.

parties could have avoided spending three years arguing about numerosity discovery and evidentiary questions flowing from a premise that Grace knew was invalid.

As with Judge Fitzgerald's about face on the central legal issue, AMH also should be permitted to take its discovery and offer its numerosity evidence in light of Grace's belated concession, and certification should then be considered in light of the law and a complete factual record.

### 2.    *Judge Fitzgerald's Appointment of a PD FCR*

The second subsequent development was Judge Fitzgerald's 2008 appointment of a retired South Carolina Judge (Alexander M. Sanders, Jr.) as the PD Future Claimants Representative ("PD FCR").

As noted above, for almost twenty-two years, AMH has sought to represent building owners who have suffered or will suffer asbestos contamination caused by the release of asbestos fibers from Grace's products.  After making this argument at the certification hearing – that it sought to represent building owners whose claims had not accrued – AMH also pointed out to Judge Fitzgerald that she had recognized Future Claimants in the U.S. Mineral Bankruptcy.  Judge Fitzgerald quickly told AMH that, "I did confirm the U.S. Minerals plan that had a trust that dealt with asbestos property future claims. I vigorously objected to the use of the term demands, but nonetheless, I don't get a line item veto over the concept  of the construct of a

plan." [DI 16422, 07/05/05 Tr. 110].

Setting aside for the moment where the line is between unaccrued present claims and unaccrued future demands, Judge Fitzgerald's appointment of a PD FCR several months after the Certification Order is not just a reversal of the position she took during the certification hearing rejecting the existence of future demands, but, more relevant to the present motion, it is a recognition by Judge Fitzgerald for the first time that there are such things as unaccrued claims.  AMH should be permitted to show that present unaccrued claims can best be dealt with in a class.

### 3.    *Judge Fitzgerald's ZAI Class Certification*

The third subsequent development was Judge Fitzgerald's February 2009 certification of a ZAI Class consisting of ZAI Claimants who filed claims in response to the ZAI Bar Date Order (less opt outs).  [DI 20873].  The ZAI Certification Order disposes of Grace's other objections to AMH's certification which Judge Fitzgerald did not accept.[14]

---

[14]For example, the ZAI Claimants did not seek nor were they granted permission to file a class claim, which Grace argued that AMH needed to do based upon a comment by Judge Fitzgerald at the first of three Bar Date hearings (Judge Fitzgerald later changed her mind at the next two hearings and excluded any such a requirement from the PD Bar Date Order and the PD Bar Notice). [*Compare* DI 1665 and 1963].  Judge Fitzgerald also recognized a class claim on behalf of colleges and universities in the face of Grace's objection that it had not obtained permission. [DI 15117, 4/21/07 Tr. 99-103].

### 4.    *Evisceration of ZAI Bar Date Order*

The fourth subsequent development was the Plan Proponents' February 2009 disclosure that under its Plan (later confirmed), all present ZAI Claimants who did not file proofs of claim before the ZAI Bar Date – a number which could be in the millions – can participate in the PD Trust.  The same is not true for those who did not file individual claims in response to the PD Bar Date Order. [15]

The elimination of the ZAI Bar Date as a bar to recovery undermines Judge Fitzgerald's reliance on the PD Bar Date as a barrier to AMH class members from recovering because they did not file individual claims.

### 5.    *Grace's PD Expert Report*

The fifth subsequent development was Grace's filing of the Declaration of Denise Neumann Martin as its PD Expert Report, which demonstrated that Grace's PD Claims Universe was astronomically greater than Grace represented to Judge Fitzgerald during the certification proceeding. [DI 21033 (March 13, 2009)].

---

[15]Thus, for example, if a homeowner has contaminated Vermiculite in its attic, it simply files a claim with the Trust, but if the same homeowner has contaminated vermiculite in its wall, it must file seek permission to file a lawsuit to recover its damages.  Because the costs for removal of both ZAI and Masonry Fill are relatively small, bringing such an individual lawsuit for the removal of Masonry Fill is cost-prohibitive, especially if that case must be litigated in Delaware.  AMH can efficiently represent all present Masonry Fill Claimants in one lawsuit in this Court.

As noted above, the Certification Order was based on Judge Fitzgerald's erroneous finding, based on information that AMH never had an opportunity to refute, that "the property damage claim creditor universe is known" and "there are not enough claims left to constitute a numerous base in the first place." [Certification Order at 5 (citation omitted)].  In sharp contrast, Dr. Martin concluded that there were more than 140,000 steel frame building projects built that may contain Grace's asbestos-containing fireproofing product and that more than 324,000 construction projects involved the types of buildings in which Grace acoustical ceiling plaster would have been applied.  [DI 21033 at 6].

Dr. Martin's substantial estimate did not include ceiling textures or Masonry Fill, which in South Carolina included more shipments than the two categories of Surface Treatment products she did include. [DI 19987].  More importantly, Dr. Martin's report itself was extraordinarily conservative because at that time, the District Court had not yet reversed Judge Fitzgerald's opinion rejecting contamination as the accrual standard in asbestos PD cases.[16]

---

[16]As discussed below, as a result of this decision, the statute of limitations has not run on building owners with extensive knowledge of the potential dangers of asbestos in their buildings.  Neither did Grace provide Dr. Martin with its indices or computerized data base of sales (also discussed below).  [Report at 3]. Theoretically, some of this liability is to Future Claimants, whom AMH does not represent (any more than the PD FCR has the right to represent present claimants).

In light of Judge Fitzgerald' post-certification hearing recognition that it is logical for a class to include members who did not file individual claims, certification should be considered in light of the evidence Grace put forward in seeking a 524(g) injunction.  Grace cannot have it both ways.

### 6.    *Grace's Data Base*

The sixth subsequent development was Grace's admission during confirmation discovery that it had a searchable data base of buildings where its ACM was applied.

The year after Judge Fitzgerald denied class certification, AMH was permitted to conduct confirmation discovery.  Grace's two in-house counsel in charge of the of asbestos cases testified during their depositions that Grace maintained a searchable data base of its historical sales of asbestos products, which they would use to provide local counsel with jobsite information. [DI 21259 (Finke Deposition), 03/30/09 Tr. at 29-31, 139-141; DI 22948 (Hughes Deposition), 06/11/09 Tr. 411-413)].

Not only had Grace obtained protection from producing such discovery in the class certification proceeding, but it told the Third Circuit that in order to provide actual notice of the bar date to potential asbestos PD claimants, Grace would have to comb through millions of pages of sales records going back decades to identify the thousands of buildings in which Grace asbestos-containing products might have been installed a quarter-century or more earlier.  *Mission Towers v. Grace,* Brief of

Debtors-Appellees [DI 00311887811 (May 21, 2008) at 29-30].

AMH will again seek the production of this data base in support of its numerosity position.

### 7.    District Court's Accrual Decision

The seventh subsequent development was the District Court's reversal of Judge Fitzgerald's statute of limitations standard applicable to an asbestos PD claim.  *State of California v. W.R. Grace & Co.,* 418 B.R. 511 (D. Del. 2009).

The PD Bar Date Order purported only to bar present "claims." [DI 1963]. At the time of the PD Bar Date Order (and at the time of the Certification Order denying class certification), the law in this circuit was that a "claim" did not exist for bankruptcy purposes until all of the elements of the underlying state law cause of action had accrued.  *Matter of Frenville Co.*, 744 F.2d 332, 337 (3d Cir. 1984).

In the early 1990's, AMH's counsel won a series of cases holding that, despite the knowledge of a building owner regarding the hazards of asbestos-containing material ("ACM"), the statute of limitations in an asbestos PD case does not accrue until there has been building contamination from the ACM.[17]    AMH argued at the

_____

[17]*MDU Resources Group v. W. R. Grace and Company-Conn.*, 14 F.3d 1274 (8th Cir. 1994)("MDU"); *San Francisco Unified School District v. W.R. Grace & Co.*, 44 Cal.Rptr.2d 305 (Cal.App. 1995)("SFUSD"); *Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co.*, 864 F.Supp. 643 (W.D. Ky. 1994); *May v. AC&S, Inc.*, 812 F.Supp. 934 (E.D. Mo. 1993).  These accrual decisions flowed

certification hearing that even leaving aside present claimants who did not receive actual notice and did not file individual claims, there were still a host of building owners whose claims had not accrued.  AMH seeks to represent present PD Claimants, many of whose claims have not accrued, who are not Future Claimants.

Notwithstanding these and other appellate decisions, however, Grace took the position from the outset of the bankruptcy (and before) that asbestos PD cases were barred by the statute of limitations because building owners were charged with notice of the "widespread publicity about the dangers of exposure to asbestos" and "the presence of asbestos" in building products. [DI 587 at 20].  In 2005, Grace objected to all PD Claims on that ground and paid one expert $4,005,782.66 to testify in support of this argument.   [DI 15155 at 2].  During the certification fight, Grace argued, *inter alia*, that AMH could not prove numerosity because the statute of limitations had run on all private PD claims.

Throughout the bankruptcy, Judge Fitzgerald refused to accept the argument made by AMH and other PD claimants, as well as the PD Committee, that the statute of limitations was triggered by contamination.  Shortly after denying AMH's Motion

---

from earlier appellate cases holding that the injury in an asbestos PD lawsuit is asbestos contamination. *See, e.g., City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987); *Tioga Public School District No. 15 v. United States Gypsum Co.,* 984 F.2d 915 (8th Cir. 1993).

for Class Certification, Judge Fitzgerald granted summary judgment against the State

of California on the statute of limitations despite the absence of any evidence that

Grace's products had contaminated its buildings.  *State of California v. W.R. Grace*

*& Co.*, 397 B.R. 701 (Bankr. D.Del. 2008).  Judge Fitzgerald found that the State of

California had filed asbestos PD Claims in the Manville Bankruptcy during the

mid-1980's, and that, "In 1989, the State of California and 28 other States, as *parens*

*patriae*, filed in the United States Supreme Court a Motion for Leave to File

Complaint and a brief in support thereof against Debtors and several other defendants

'to protect the public health and as owners of public buildings contaminated by

asbestos-containing products.'" *Id*. at 705, 710, n. 10.

The following year, during the middle of the Confirmation hearing, the District

Court reversed Judge Fitzgerald.  The District Court relied upon all of the S&R cases

cited above and held that "a tort claim for asbestos-related property damage does not

accrue until injury, i.e., contamination occurs."  *State of California v. W.R. Grace &*

*Co.*, 418 B.R. 511, 532 (D. Del. 2009).

Consequently, as AMH argued at the certification hearing, under *Frenville*, the

PD Bar Date Order did not apply to a huge number of building owners who are

members of AMH's putative class.   The magnitude of this decision cannot be

over-stated.  Because Grace has the burden of proof regarding the affirmative defense

of statute of limitations, and because Grace has always denied that its products contaminate, it will be hard-pressed to show that any pre-petition PD Claims accrued before the bankruptcy.

AMH's proposed class includes the Gap Claims. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009); *Pella Corp. v. Saltzman,* 606 F.3d 391, 395 (7th Cir. 2010); *In re Whirlpool Corp. Front Loading Washer Products Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012). Moreover, beginning with the Third Circuit's decision in *Schools Class,* followed by the Fourth Circuit's decision in the *Colleges Class,* class actions have resolved thousands of asbestos PD claims, both accrued and unaccrued.

This Court should alter and amend the Certification Order based on the District Court's accrual decision.

### 8.    *Third Circuit's Frenville Reversal*

The eighth subsequent development was that in 2010, before Judge Fitzgerald confirmed the Plan, the Third Circuit reversed *Frenville*, and two years later, made it manifest that the Plan (as now affirmed by the Third Circuit) does not discharge thousands of present PD Gap Claims which had not accrued at the time of the PD Bar Date. *Jeld Wen, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114 (3d Cir. 2010); *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012). AMH has argued from

the outset that certification of its class would assist the bankruptcy. Absent certification of AMH's class action, whose proposed definition includes these Gap Claims, Grace must either re-notice the PD and ZAI Bar Date Orders or face an untold number of asbestos PD lawsuits that may not be discharged by the Plan.[18]

Under either alternative, the holders of "Gap Claims" are subject to a gross inequity, having been at most provided notice by publication at a time that they did not hold a cognizable "claim" and would have had no reason to file a Proof of Claim. These claimants may have no reason to know, and no opportunity to participate, in a Plan that provides for payment of 100% of their allowed claims. If Grace elects to re-notice the PD Bar Date Order, it will still be faced with most of the arguments in support of class certification. If Grace elects to do nothing, over the years as their claims accrue, Gap Claimants will file claims or pursue litigation outside of the Trust on the ground that such their Claims are not discharged under the Plan. Certification of AMH's class action permits all of these issues to be decided now in one lawsuit in this Court.

---

[18]The Third Circuit declined to address this issue in the Confirmation Appeal, finding (1) that the due process implications of discharging a *"Frenville"* claim are "entirely separate " from the issue of whether or not Future Claimants are likely to be brought, and (2) that AMH lacked standing to raise the argument in the Confirmation Appeal. *In re: W.R. Grace &* Co., 729 F.3d 340-341, n, 5 (3rd Cir. 2013). The issue is squarely raised in the Motion for Class Certification.

### 9.    *Bankruptcy Class Action and Notice Decisions*

The ninth subsequent development was that in 2012 and 2013, the Fourth and Fifth Circuit Courts of Appeal not only followed *American Reserve*, but ruled that unless the Court certifies the class, this Court must re-notice the PD Bar Date Order. *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012); *In re TWL Corp.*, 712 F.3d 886, 899 (5th Cir. 2013).[19]

As discussed above, Grace actually served its PD Bar Date Order on counsel for eight  building owners who had cases pending at the time of the bankruptcy.  There were no individual claims filed on behalf of the owners of  residences.  There were no individual claims filed for Masonry Fill.  Excepting claims filed by counsel for the eight pre-existing cases, and counsel for members of the PD Committee, there were only a few individual claims filed on behalf of private building owners with a Grace Surface Treatment product.

Importantly, accrued and unaccrued present ZAI Claimants can participate in the PD Trust even if they did not file individual claims, but absent Class Certification, the Plan does not provide that right for present PD claimants.

---

[19]In addition, the Fifth Circuit cited with approval the Eleventh Circuit's recognition that the Court may apply Rule 23 "in a contested matter" (further confirming that AMH's Motion to Certify was timely).  *In re TWL Corp.*, 712 F.3d 886, 901  (5th Cir. 2013), citing *In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989).

## C.    The Plan

The foregoing grounds, individually and collectively, support the entry of a scheduling Order and discovery.  Setting aside all of these grounds, however, the Plan itself, as finally confirmed and in effect, compels the granting of this motion.

The Plan recognizes that litigation of PD claims will continue after the Effective Date; that allowed traditional PD claims will be paid 100 cents on the dollar; that AMH's right to appeal the Certification Order denying class certification may be pursued; that the Certification Order denying AMH's Motion for Class Certification may be reversed; and that PI and PD claims will be paid for years to come.  The Third Circuit specifically held that this Plan is feasible in the face of AMH's concerns given the size of its class.  *In re W.R. Grace Bankruptcy*, 729 F.3d 349, 350 (3d Cir. 2013).

Judge Fitzgerald concluded in the Certification Order that "certification of the class would needlessly prolong this case." [Certification Order at 12].   Nine months later, the Plan Proponents first revealed their proposed treatment of PD Claims.  While Judge Fitzgerald's concern may or may not have been reasonable with respect to other reorganization efforts, under the Grace Plan, certification of AMH's class would not prolong this case.  The opposite is true because problems which could take years to address with respect to unfiled, unresolved Gap Claims and Accrued Claims can be efficiently resolved by class certification.

The AMH Class Claim is uniquely suited to address the issues presented by the Gap Claims and Accrued Claims, and to ensure that all parties who have or will suffer property damage from Grace products will be appropriately compensated for their losses through the Plan and PD Trust. AMH's Class Claim is already before the Court – and under the Plan, no other class claims (other than the ZAI Class, which is limited to claims that have already been filed) may be filed.   Under the Plan and the PD Procedures, the AMH Class Claim will be litigated in the Bankruptcy Court – versus the prospect of a multitude of individual claims being filed over an uncertain period of time in various jurisdictions around the country, particularly with regard to Gap Claims that are not discharged under the Plan.   Such a process will not jeopardize the Plan or PD Trust, which this Court determined was feasible notwithstanding the prospect of the AMH class being certified, and which the Third Circuit Court of Appeals affirmed. Proceeding through a class action both assures that all parties who have or will suffer property damage from Grace product will be adequately compensated, while also affording the Debtor the opportunity to resolve such claims on a global basis rather than in piecemeal fashion.

## CONCLUSION

The foregoing grounds magnify the erroneous legal and factual conclusions in the Certification Order and collectively compel that AMH's Motion should be

revisited and granted on behalf of the proposed class as defined herein.  For the reasons set forth above, the Court should enter a Scheduling Order providing for discovery followed by certification briefing.

DATED: March 5, 2014

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
Ferry, Joseph & Pearce, P.A.
824 Market Street, Suite 1000
PO Box 1351
Wilmington, DE 19899
Telephone:   302-575-1555
Facsimile:    302-575-1714 fax
Email:        ttacconelli@ferryjoseph.com
Local Counsel for Anderson Memorial Hospital

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East
Post Office Box 685
Hampton, SC 29924
Telephone:   (803) 943-4444
Facsimile:    (803) 943-4599
Email:        dspeights@speightsrunyan.com
Counsel for Anderson Memorial Hospital

John W. Kozyak (FL Bar No. 200395)
David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone:   (305) 372-1800
Facsimile:    (305) 372-3508
Email:        dlr@kttlaw.com
Counsel for Anderson Memorial Hospital