# TAB 2

Vol. II

```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF SOUTH CAROLINA         JAN 20 1984
                         GREENVILLE DIVISION
                                                   JOHN W. WILLIAMS, CLERK
GREENVILLE COUNTY SCHOOL DISTRICT, )                  U.S. DISTRICT COURT.
                                   )
                    PLAINTIFF,     )    CIVIL ACTION NO. 82-3142-14
                                   )
           VS.                     )
                                   )
U. S. GYPSUM CO., ET AL.,          )    UNITED STATES COURTHOUSE
                                   )    COLUMBIA, SOUTH CAROLINA
                    DEFENDANTS.    )    MONDAY, JANUARY 9, 1984
                                   )    2:15 P.M. - 2:40 P.M.
-----------------------------------)
                                   )
SPARTANBURG COUNTY SCHOOL DIST.    )
SEVEN,                             )
                                   )
                    PLAINTIFF,     )    CIVIL ACTION NO. 83-1744-14
                                   )
           VS.                     )
                                   )
NATIONAL GYPSUM CO., ET AL.,       )
                                   )
                    DEFENDANTS.    )
```

                              - - -

          PARTIAL TRANSCRIPT OF MOTION PROCEEDINGS
    HAD BEFORE HONORABLE WILLIAM W. WILKINS, DISTRICT JUDGE

                              - - -

TRANSCRIPT ORDERED BY:   PATRICK MICHAEL DUFFY, ESQ.

APPEARANCES:

FOR THE PLAINTIFFS            DANIEL A. SPEIGHTS, ESQ.
                              ANN KIMMEL, ESQ.
                              304 LEE AVENUE
                              HAMPTON, SOUTH CAROLINA

FOR THE DEFENDANTS

UNITED STATES GYPSUM CO.      ROBINSON, MCFADDEN, MOORE, POPE,
                              WILLIAMS, TAYLOR & BRAILSFORD
                              BY: WILLIAM L. POPE, ESQ.
                                  FRANK R. ELLERBE, III, ESQ.

                    PHILLIP W. LOTER
                    OFFICIAL REPORTER

EXHIBIT AMH-2

AMH-0024

```
 1   APPEARANCES CONTINUED:

 2   W. R. GRACE & COMPANY            RICHARDSON, PLOWDEN, GRIER &
                                      HOWSER
 3                                    BY:  F. BARRON GRIER, III, ESQ.
                                           RUTH THIEDKE PORTER, ESQ.
 4                                    1340 PICKENS STREET
                                      COLUMBIA, SOUTH CAROLINA
 5
     NATIONAL GYPSUM COMPANY          MORRIS, DUFFY & BOONE
 6                                    BY:  PATRICK MICHAEL DUFFY, ESQ.
                                      141 E. BAY STREET
 7                                    CHARLESTON, SOUTH CAROLINA

 8   PROKO INDUSTRIES, INC.           NEXSEN, PRUET, JACOBS & POLLARD
                                      BY:  GLENN BOWERS, ESQ.
 9                                         JAMES LYNN WERNER, ESQ.
                                      1200 FIRST NATIONAL BUILDING
10                                    COLUMBIA, SOUTH CAROLINA

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1. (PROCEEDINGS RESUMED AT 2:15 P.M.)
2. THE COURT: WELL, I HAVE CONSIDERED THESE THINGS.
3. I PLACE ALL THE PARTIES ON NOTICE THAT THIS ORDER IS BEING
4. ISSUED WITH THE COURT'S FULL UNDERSTANDING AND INTENTION TO
5. APPLY RULE 37(B)(2)(C) TO ANY OFFENDING PARTY OF THIS ORDER,
6. WHICH WILL INCLUDE THE COURT ENTERING A DEFAULT JUDGMENT OR
7. DISMISSING THE ACTION AGAINST THE OFFENDING PARTY.
8. THERE MUST BE A TIME WHERE THESE MATTERS ARE LAID TO REST
9. AND YOU GET ON TO NEW BUSINESS AND THE BUSINESS OF RESOLVING
10. THIS CONTROVERSY.
11. ALL THE DEFENDANTS SHALL ANSWER WITHIN 30 DAYS. I MIGHT
12. ADD THAT THE COURT IS GOING TO REVIEW THE RESPONDING ANSWERS
13. WITH ITS INTERPRETATION OF GOOD FAITH, REASONABLE EFFORT TO
14. COMPLY, AND WILL NOT DEAL NOR ALLOW JUSTIFICATION TO BE BASED
15. ON SEMANTICS.
16. ALL DEFENDANTS SHALL ANSWER THIS INTERROGATORY THAT THE
17. COURT PROPOUNDS, WHICH IS PERHAPS A COMBINATION OF NUMBERS THAT
18. HAVE ALREADY BEEN PROPOUNDED. THE DATE THAT THE COMPANY OR
19. ITS OFFICERS OR ITS AGENTS OR ITS EMPLOYEES, TO THE BEST OF
20. THAT COMPANY'S ABILITY, MUST STATE THE DATE THAT THESE
21. INDIVIDUALS RECEIVED INFORMATION, WRITTEN OR ORAL, FIRST BECAME
22. AWARE OF, FIRST BECAME SUSPICIOUS OF THE FACT THAT ASBESTOS
23. MAY BE A HARMFUL SUBSTANCE, AND ALL SIMILAR INFORMATION SINCE
24. THAT FIRST DATE.
25. THIS INCLUDES INFORMATION ACQUIRED INDIVIDUALLY BY THE

AMH-0026

1  COMPANY, ITS OFFICERS, AGENTS, EMPLOYEES, AND INFORMATION THAT
2  WAS GENERALLY KNOWN IN THE INDUSTRY.  AND IT ALSO INCLUDES ANY
3  FACTS, ANY DATA, ANY REPORTS, ANY OPINIONS WHICH TEND TO SUPPORT
4  THE BELIEF THAT ASBESTOS IS A HARMFUL PRODUCT TO HEALTH.
5      FURTHER, THE DEFENDANTS SHALL ANSWER WITHIN 30 DAYS
6  PORTIONS OF THE SUGGESTED INTERROGATORY SUBMITTED BY THE
7  PLAINTIFF, WHICH I WILL FILE THE ORIGINAL WITH THE COURT AND
8  IT WILL BE MAINTAINED AS A RECORD OF THIS COURT.  COPIES SHALL
9  BE MADE AVAILABLE TO THE DEFENDANTS' ATTORNEYS.  AND THIS
10 INTERROGATORY ON THIS PAGE, I HAVE STRUCK THROUGH THOSE ITEMS
11 WHICH IT IS NOT A REQUIREMENT TO THIS ORDER TO BE ANSWERED.
12     ALL OF THESE QUESTIONS AND ITS SUB TYPE SHALL BE ANSWERED
13 EXCEPT QUESTION OR SECTION NUMBER 'M', NUMBER 'N', NUMBER 'O',
14 THE PORTION OF SECTION 'Q' WHICH STATES "THE BRAND NAME OF THE
15 REPLACEMENT PRODUCT"; SECTION 'R' AND SECTION 'S'.
16     IN EFFECT, WHAT THIS DOES, BECAUSE OF THIS GREAT FEAR THAT
17 THE BRAND NAME NOT BE DISCLOSED, ALTHOUGH SOME NAMES HAVE
18 ALREADY BEEN DISCLOSED, I STILL BELIEVE AND DO BELIEVE THAT
19 THE PLAINTIFF, IF THESE QUESTIONS ARE ANSWERED, WILL HAVE THE
20 INFORMATION NECESSARY TO INVESTIGATE THE RESPONSE TO THE FIRST
21 INTERROGATORY THAT I HAVE DICTATED INTO THE RECORD.
22     THE QUESTION, SECTION 'A', DEALS WITH THE TYPE OF PRODUCT
23 AND IF IT IS ACOUSTICAL PLASTER, ACOUSTICAL PLASTER SHOULD
24 BE LISTED.  THE DATE THAT THIS PARTICULAR ACOUSTICAL PLASTER
25 WAS PRODUCED.  THE LAST DATE IT WAS PRODUCED.  SO FORTH.  THE

AMH-0027

1  MANUFACTURING LOCATIONS OF THAT PARTICULAR PRODUCT. THE PLANT
2  MANAGERS, SO FORTH, AS THIS INTERROGATORY OUTLINES.
3      IN ORDER TO INVESTIGATE THE VALIDITY WHICH YOU QUESTION
4  OF THE PRIOR RESPONSES TO SOME OF THE QUESTIONS THAT I POSED,
5  MR. SPEIGHTS, IT APPEARS TO ME THAT IF YOU KNOW ACOUSTICAL
6  PLASTER WAS MANUFACTURED AT A PARTICULAR PLANT DURING A
7  PARTICULAR PERIOD OF TIME, AND YOU KNOW THE PLANTS, MANAGER'S
8  NAME, QUALITY CONTROL SUPERINTENDENT, AND THE MEDICAL PERSONNEL
9  THERE, THAT YOU CAN HAVE SUFFICIENT INFORMATION TO, IF YOU WISH,
10 INVESTIGATE THE VALIDITY OF THE ANSWER GIVEN TO THE FIRST
11 QUESTION.
12     DO YOU UNDERSTAND, MR. SPEIGHTS, WHAT I SAID?
13         MR. SPEIGHTS: I THINK I DO, YOUR HONOR. THE ONLY --
14 AND I BELIEVE I UNDERSTAND THE COURT'S RULING.
15     THE TERM THAT IS OF IMMEDIATE CONCERN TO ME WOULD BE THE
16 TERM "ACOUSTICAL PLASTER." BECAUSE EVERYBODY HAS DIFFERENT
17 MEANINGS FOR THAT, AND WHAT WE ARE AFTER IS SPRAY APPLIED OR
18 TROWEL APPLIED CEILING MATERIALS, WHETHER THEY BE CLASSIFIED
19 ACOUSTICAL PLASTERS OR TEXTURE CEILING MATERIALS. BECAUSE WE
20 HAVE BOTH IN GREENVILLE SCHOOLS.
21     AND IN ADDITION, ONE DEFENDANT'S FIREPROOFING, AS MR.
22 GRIER SAID TODAY, FIREPROOFING WAS USED SOME IN THE GREENVILLE
23 SCHOOLS WE HAVE NOW DISCOVERED.
24         THE COURT: WELL NOW, OF COURSE, IF A FIREPROOFING
25 WAS USED, DID IT NOT HAVE A BRAND NAME?

1       MR. SPEIGHTS: YES, SIR, IT DID.

2       THE COURT: THEN THAT COMPONENT OF FIREPROOFING
3  MATERIAL THAT IS LISTED WITHIN THAT BRAND, BRAND 'X', ALL I
4  AM SUGGESTING IS THE COMPANY HAD TO PRODUCE THAT BRAND 'X'
5  SOMEWHERE, CERTAIN TIMES, CERTAIN CONDITIONS, CERTAIN PEOPLE
6  WORKING THERE, AND THAT I AM ASKING -- DIRECTING THAT THAT
7  INFORMATION BE DISCLOSED TO YOU. BUT IF IT WAS CALLED A
8  PARTICULAR NAME LIKE ACE FIREPROOFING, THEY WOULD NOT HAVE TO
9  GIVE YOU THE NAME ACE. THEY WOULD HAVE TO SAY, "WE PRODUCED
10 THIS -- A PRODUCT CALLED FIREPROOFING MATERIAL DURING THESE
11 DATES," AND IF YOU WANT THE PLANT SUPERINTENDENT'S DEPOSITION,
12 YOU CAN GO TALK TO HIM.

13      I DON'T FULLY UNDERSTAND THE GREAT OBJECTION TO PRODUCING
14 THE BRAND NAMES, BUT I ALSO UNDERSTAND THAT THE BRAND NAMES
15 DO NOT IN MY JUDGMENT COME WITHIN THE REALM OF RELEVANCY.

16      MR. SPEIGHTS: ALL I WAS SAYING, -- I UNDERSTAND THE
17 RULING AND I ACCEPT THAT RULING. OBVIOUSLY, I DISAGREE A LITTLE
18 BIT --

19      THE COURT: YOU TELL ME HOW --

20      MR. SPEIGHTS: I THINK THE BRAND NAMES BY -- UNDER
21 YOUR COURT'S RULING I UNDERSTAND THEM NOT GIVING BRAND NAMES
22 FOR BRAKE LININGS AND, YOU KNOW, PIPE COVERING OR THINGS WHICH
23 I HAVEN'T ALLEGED THAT THESE DEFENDANTS HAVE IN THE GREENVILLE
24 SCHOOLS.

25      ALL I AM SAYING IS -- AND THEY DON'T OBJECT TO GIVING ME

1  BRAND NAMES FOR ACOUSTICAL PLASTER. BUT NOW WE HAVE DISCOVERED
2  THAT THE GREENVILLE SCHOOLS ALSO CONTAIN WHAT THEY CLASSIFY
3  NOT AS ACOUSTICAL PLASTER, BUT THEY CALL TEXTURES. SO, I THINK
4  IT OUGHT TO BE CEILING MATERIALS, ASBESTOS -- THEY OUGHT TO
5  IDENTIFY THE BRAND NAME OF ASBESTOS-CONTAINING CEILING MATERIALS
6  TO BE CONSISTENT WITH THE COURT'S DISTINCTION, RATHER THAN DRAW-
7  ING THE LINE OF ACOUSTICAL --
8            THE COURT: I WAS USING THAT MERELY AS AN EXAMPLE.
9  BUT I APPRECIATE YOUR BRINGING THAT TO MY ATTENTION, BECAUSE
10 I WAS NOT EVEN AWARE THAT THAT WAS REALLY IN ISSUE.
11    WHAT YOU WANTED TO DO IS IF THEY MAKE INSULATION SOMEWHERE,
12 THAT YOU WANTED THAT BRAND NAME, WHEN IT WAS MANUFACTURED, WHO
13 WAS THE PLANT SUPERINTENDENT, WHO WAS THE NURSE, AND THE DATES.
14 ISN'T THAT CORRECT?
15           MR. SPEIGHTS: YES, SIR.
16           THE COURT: SO YOU COULD GO TALK TO THAT INDIVIDUAL
17 PERHAPS.
18           MR. SPEIGHTS: OR DETERMINE BY THAT WHAT TRADE
19 ASSOCIATION THEY WOULD HAVE BEEN A MEMBER OF BECAUSE THEY MADE
20 A CERTAIN MATERIAL IN THAT FAMILY.
21           THE COURT: BUT IF THEY MADE INSULATION MATERIAL AND
22 CALLED IT ACE INSULATION, BUT THEY JUST DON'T GIVE YOU THE WORD
23 "ACE" BUT THEY SAY DURING THIS PERIOD OF TIME WE MADE INSULA-
24 TION MATERIAL THAT WE MARKETED AND THIS IS THE PLANT AND THIS
25 IS THE DATES AND THIS IS THE MANAGER, ISN'T THAT SUFFICIENT

AMH-0030

1  FOR YOU TO PURSUE THAT?  WITH THE EXCEPTION THAT ALL BRAND
2  NAMES OF ALL CEILING MATERIALS, OR I MIGHT SAY PRODUCTS, I
3  GUESS, USED IN CEILINGS, BE DISCLOSED.
4         MR. SPEIGHTS:  WELL, CERTAINLY MY REQUEST, YOUR HONOR,
5  WAS FOR ALL ASBESTOS PRODUCTS.  I UNDERSTAND THE COURT AT LEAST
6  AT THIS TIME DOESN'T WANT TO GO THAT FAR.  AND I CAN'T CONCEDE
7  THAT I DON'T BELIEVE ALL OF IT SHOULD BE REQUIRED, BUT I
8  ACCEPT THE COURT'S RULING.  YOU'RE NOT GOING TO MAKE THEM GIVE
9  ALL BRAND NAMES OF ALL PRODUCTS TODAY.
10        SO, IF YOU'RE NOT GOING TO GIVE ME ALL, I JUST ASK YOU
11 TO DRAW THE LINE THAT THEY HAVE TO GIVE ME INFORMATION ABOUT
12 ALL PRODUCTS, AND BRAND NAMES HAVE TO BE IDENTIFIED FOR ALL
13 CEILING PRODUCTS.
14        THE COURT:  RIGHT.
15        MR. SPEIGHTS:  BUT I HASTEN -- I SAY CEILING PRODUCTS,
16 BUT FIREPROOFING.  YOU SPRAY FIREPROOFING GENERALLY ON BEAMS,
17 BUT APPARENTLY SOME OF THESE GUYS SPRAY IT ON CEILINGS AS WELL.
18 AND IT'S VERY CLOSE TO THE OTHER, TO THE ACOUSTICAL PLASTERS.
19 SAME PLANT, SAME PEOPLE MAKE IT.
20        SO, MY LINE IS CEILING MATERIALS AND FIREPROOFING, WHICH,
21 INCIDENTALLY, IS BASICALLY WHAT WE HAVE BEEN GETTING FROM SOME
22 OF THEM ANYWAY.
23        THE COURT:  WELL, YOU DEFINE IT FOR ME NOW.  YOU SAY
24 YOU WANT THE BRAND NAMES OF --
25        MR. SPEIGHTS:  ALL --

AMH-0031

9

```
 1            THE COURT:  CEILING MATERIAL.
 2            MR. SPEIGHTS:  ALL ASBESTOS-CONTAINING CEILING
 3   MATERIAL.
 4            THE COURT:  ASBESTOS-CONTAINING CEILING MATERIALS.
 5            MR. SPEIGHTS:  AND FIREPROOFING.
 6            THE COURT:  IS THAT THE CORRECT WAY YOU SAY IT?  IT
 7   WOULDN'T BE CEILING MATERIALS CONTAINING ASBESTOS?
 8            MR. SPEIGHTS:  THAT WAS THEIR TERM, ACTUALLY.  I CALL
 9   THEM ASBESTOS PRODUCTS.
10            THE COURT:  I AM GOING TO LET YOU DEFINE IT FOR ME,
11   THEN I WILL PUT DOWN WHAT YOU WANT ON --
12            MR. SPEIGHTS:  ALL CEILING MATERIALS CONTAINING
13   ASBESTOS.
14            THE COURT:  ALL RIGHT.
15            MR. SPEIGHTS:  AND FIREPROOFING.
16            THE COURT:  ALL FIREPROOFING CONTAINING ASBESTOS.
17            MR. SPEIGHTS:  YES, SIR.  EVEN MR. GRIER HAS GIVEN
18   ME HIS FIREPROOFING.
19            THE COURT:  THEN I AM GOING TO AMEND MY ORDER TO SAY
20   THE BRAND NAME, THEN THE SECOND PART OF MY INSTRUCTION, THAT
21   IS, THE LISTING OF EVERY PRODUCT CONTAINING ASBESTOS WHICH WAS
22   MANUFACTURED BY THE DEFENDANTS, AND THEN THE ANSWER SHOULD COME
23   FORTH WITH THE BRAND NAMES OF ALL CEILING MATERIALS CONTAINING
24   ASBESTOS AND ALL FIREPROOFING MATERIALS, AND THEN THE
25   INTERROGATORY ANSWERED FROM THAT POINT ALL OTHER PRODUCTS OTHER
```

1  THAN THOSE I HAVE LISTED, SHALL BE IDENTIFIED BUT THE BRAND
2  NAME NEED NOT BE USED.  AND THEN THE DATES IT'S MANUFACTURED,
3  THE PLACE, PLANT SUPERINTENDENTS, MANAGERS AND ALL THE OTHER
4  THINGS THAT ARE LISTED HERE SHALL BE ANSWERED.
5     NOW, LET ME ASK U. S. GYPSUM WHETHER OR NOT THERE ARE ANY
6  QUESTIONS ABOUT WHAT I HAVE JUST DIRECTED.
7        MR. ELLERBE:  NO, YOUR HONOR.
8        THE COURT:  AND DO YOU UNDERSTAND AND WILL YOU CONVEY
9  TO YOUR COMPANY THAT IF I DETERMINE THAT ITS NEW YORK ATTORNEYS
10 OR ANYONE ELSE DEALING WITH THEM HAS NOT COMPLIED IN GOOD
11 FAITH WITH MY ORDER, THAT I WILL ENTERTAIN A MOTION TO ENTER
12 DEFAULT JUDGMENT AGAINST THEM?
13       MR. ELLERBE:  YES, YOUR HONOR.
14       THE COURT:  ALL RIGHT.  NOW, DOES W. R. GRACE UNDER-
15 STAND THIS RULING?
16       MR. GRIER:  YES, YOUR HONOR.  THE ONLY QUESTION I
17 WOULD HAVE IN THAT CONNECTION IS LET'S SAY WE IDENTIFY A PLANT
18 MANAGER OF A PLANT THAT MADE ASBESTOS-CONTAINING MATERIALS,
19 NOT IN CEILINGS, AND HE WANTS TO TAKE A DEPOSITION, AND WE GO
20 OUT TO KANSAS AND TAKE THE DEPOSITION.  CAN I STILL PROHIBIT
21 AND INSTRUCT THE WITNESS NOT TO ANSWER QUESTIONS CONCERNING
22 THE NAMES OF THAT PRODUCT?
23       THE COURT:  YOU MAY.  BUT I WANT IT UNDERSTOOD THAT
24 IN ORDER THAT THE QUESTION CAN BE ASKED AND ANSWERS GIVEN THAT
25 MEANS SOMETHING, THAT WE IDENTIFY THAT PARTICULAR PRODUCT BY

AMH-0033

11

| | |
|---|---|
| 1 | SOME METHOD. WE CAN NUMBER IT, THIS IS BRAND 'A' AND THIS IS |
| 2 | IT, BRAND 'B', AND THIS IS IT. BUT SO THERE WON'T BE ANY |
| 3 | DISPUTE LATER ON WELL, I DIDN'T KNOW YOU WERE TALKING ABOUT |
| 4 | BRAND 'B'. I THOUGHT YOU MEANT BRAND 'X'. |
| 5 | MR. GRIER: I UNDERSTAND EXACTLY. |
| 6 | THE COURT: OKAY. NOW, WILL YOU CONVEY TO YOUR |
| 7 | COMPANY THAT FOR FAILURE TO DO THIS, THAT I WILL ENTERTAIN A |
| 8 | MOTION TO ENTER A DEFAULT JUDGMENT AGAINST THEM? |
| 9 | MR. GRIER: I CERTAINLY WILL. |
| 10 | THE COURT: AS WELL AS ANY OTHER SANCTIONS THAT I |
| 11 | CAN THINK OF. |
| 12 | MR. GRIER: ABSOLUTELY. |
| 13 | THE COURT: ALL RIGHT. HOW ABOUT NATIONAL GYPSUM? |
| 14 | MR. DUFFY: I WOULD CERTAINLY DO THAT, YOUR HONOR. |
| 15 | AND IN THAT REGARD, I WOULD ASK THE COURT IF YOU WOULD CONSIDER |
| 16 | ALLOWING 30 DAYS TO RESPOND FROM THE TIME THAT WE COULD GET |
| 17 | A COPY OF THE TRANSCRIPT OF THIS. |
| 18 | I WOULD LIKE MY CLIENT TO READ EXACTLY WHAT THE COURT IS |
| 19 | ASKING, SO THAT IT WOULDN'T BE ANY MISUNDERSTANDING. I THINK |
| 20 | WE HAVE PROBABLY ANSWERED ALL OF THEM ANYWAY, BUT THIS IS A |
| 21 | HEAVY SANCTION, SHOULD WE MISCOMMUNICATE. AND I WOULD LIKE |
| 22 | MY CLIENT TO HAVE THE BENEFIT OF THE TRANSCRIPT OF THIS HEAR- |
| 23 | ING. |
| 24 | THE COURT: WELL, DO YOU WANT THE ENTIRE TRANSCRIPT |
| 25 | OR JUST THIS PORTION? |

AMH-0034

1  MR. DUFFY: JUST THE ORDER.
2  THE COURT: WELL, WE COULD HAVE THAT PREPARED. IF
3  YOU GENTLEMEN WILL DROP YOUR CARDS OFF UP HERE, IT WOULDN'T
4  TAKE LONG TO DO THAT. AND THAT WOULD BE FINE. ABOUT HOW LONG
5  WILL IT TAKE YOU TO PREPARE THAT?
6  THE COURT REPORTER: I CAN HAVE IT THIS WEEK.
7  THE COURT: WELL, THEN LET ME JUST AMEND MY ORDER
8  THEN TO SAY, SO THAT YOU CAN HAVE THAT, THAT THIS ORDER SHALL
9  BE COMPLIED WITH ON OR BEFORE -- WHAT'S FEBRUARY 15TH?
10 MR. GRIER: IT'S A WEDNESDAY, YOUR HONOR.
11 THE COURT: THAT SOUNDS FINE.
12 MR. DUFFY: VERY GOOD. THANK YOU, SIR.
13 THE COURT: AND DOES PROKO UNDERSTAND THIS?
14 MR. BOWERS: YES, SIR. I MIGHT ASK ONE QUESTION.
15 I DON'T MEAN TO BE TRITE, BUT I WANT TO MAKE SURE WE HAVE
16 COMPLIED WITH THE ORDER. BEFORE A CEILING SPRAY IS PUT ON THE
17 CEILING, THERE MAY BE SHEETROCK UP THERE. AND IN BETWEEN THOSE
18 TWO PIECES OF SHEETROCK IS JOINT COMPOUND. NOW, THAT IS AN
19 ASBESTOS-CONTAINING MATERIAL THAT'S ON A CEILING. IT'S UNDER
20 THE SPRAY.
21 AM I REQUIRED TO PRODUCE THE JOINT COMPOUND NAMES, OR ARE
22 WE ONLY TALKING ABOUT THAT MATERIAL WHICH IS EXPOSED AND
23 SPRAYED ON AS A COVER FOR A CEILING?
24 THE COURT: I AM NOT SURE I KNOW WHAT HE IS TALKING
25 ABOUT, BUT I DON'T KNOW WHETHER IT'S IMPORTANT OR NOT TO YOU.

AMH-0035

1    MR. SPEIGHTS: WELL, YES, YOUR HONOR. I THINK WHERE
2    THERE IS AN ASBESTOS-CONTAINING PRODUCT THAT'S REMOVED, IF IT'S
3    PART OF THE JOINT COMPOUND -- IF THE JOINT COMPOUND IS PART
4    OF THAT THAT'S REMOVED, YES, IT SHOULD BE INCLUDED AS PART OF
5    IT.
6        IF IT'S SOMETHING UP ABOVE THAT WAS NOT REMOVED AS PART
7    OF THE OPERATIONS, NO, I DON'T THINK IT WOULD FAIRLY BE
8    INCLUDED IN WHAT THE COURT IS SAYING.
9        MR. BOWERS: OKAY.
10       MR. SPEIGHTS: THERE ARE OCCASIONS WHERE JOINT
11   COMPOUNDS ARE REMOVED AS A PART OF THE REMOVAL OFF THE GYPSUM
12   BOARD. I DON'T KNOW ABOUT THE SITUATION WHERE ASBESTOS-CONTAIN-
13   ING GYPSUM BOARD HAS BEEN REMOVED.
14       MR. BOWERS: THAT CLARIFIES IT, YOUR HONOR.
15       THE COURT: WELL, I AM NOT SURE IT DID TO ME.
16       MR. BOWERS: I DON'T WANT TO GET IN A POSITION OF
17   HAVING A JOINT COMPOUND THAT GOES IN BETWEEN TWO PIECES OF
18   SHEETROCK THAT'S UP THERE ON THE CEILING, THAT I DON'T TELL
19   HIM THE NAME OF, AND HIM COME AND COMPLAIN.
20       AND AS I UNDERSTAND WHAT YOU JUST SAID, IF THE SHEETROCK
21   IS NOT REMOVED, THEN THE JOINT COMPOUND CAN'T BE REMOVED, AND
22   SO WE WOULD ONLY BE TALKING ABOUT THE SPRAY THAT GOES OVER THE
23   SHEETROCK.
24       THE COURT: YOU MEAN THAT HAS BEEN REMOVED FROM THE
25   SCHOOLS?

1  　　　　MR. BOWERS: YES, SIR.
2  　　　　MR. SPEIGHTS: WELL, MY PROBLEM IS THAT I KNOW SOME
3  JOINT COMPOUNDS HAVE BEEN REMOVED, AS IDENTIFIED BY MR. GOODWIN
4  IN HIS DEPOSITION WHICH YOU TOOK.
5  　　　　AND IN THAT SITUATION, JOINT COMPOUNDS WOULD BE INCLUDED.
6  I DO NOT HAVE THE DEPOSITION IN FRONT OF ME TO SEE WHETHER IT
7  WAS --
8  　　　　THE COURT: HOW WOULD PROKO KNOW WHETHER IT WAS
9  REMOVED OR NOT?
10 　　　　MS. KIMMEL: IT WOULD DEPEND UPON WHERE THE PRODUCT
11 WAS MADE TO BE PLACED. WE DON'T KNOW WHAT KINDS OF JOINT
12 COMPOUNDS THEY HAVE MADE, SO WE DON'T KNOW.
13 　　　　IF IT'S JUST REGULAR OLD JOINT COMPOUND, THEN IT'S OF THE
14 TYPE THAT WOULD HAVE BEEN REMOVED IN CERTAIN INSTANCES, AND
15 CERTAINLY WOULD BE RELEVANT, WOULD BE NEEDED ALONG WITH THE
16 REST.
17 　　　　IF THEY MADE SOME KIND OF JOINT COMPOUND THAT I DON'T KNOW
18 ABOUT, THAT WOULD NEVER BE IN ANY PLACE TO BE REMOVED, THEN
19 THAT WOULD PROBABLY FALL IN THAT OTHER CATEGORY OF NO BRAND
20 NAME.
21 　　　　MR. BOWERS: JOINT COMPOUND IS NOT A CEILING SPRAY.
22 THAT IS WHAT I WAS POINTING OUT TO THE COURT. IT'S NOT A
23 CEILING SPRAY. IT'S PUTTIED ON WITH A TROWEL BETWEEN TWO
24 PIECES OF SHEETROCK, AND THEN SANDED DOWN TO MAKE A SMOOTH
25 SURFACE.

AMH-0037

| | |
|---|---|
| 1 | THE COURT: SOMEBODY HAS BEEN TALKING ABOUT CEILING |
| 2 | SPRAY, AND -- BUT I AM TALKING ABOUT CEILING MATERIAL THAT'S |
| 3 | USED IN THE CONSTRUCTION OF A CEILING. WHATEVER. |
| 4 | MR. BOWERS: WHATEVER. THAT'S FINE. |
| 5 | THE COURT: AND IN ADDITION TO THAT, OF COURSE, I |
| 6 | LISTED FIREPROOFING MATERIAL AS WELL. NATURALLY ASSOCIATED |
| 7 | WITH CEILINGS TOO. |
| 8 | ALL RIGHT. ANYTHING FURTHER? |
| 9 | MR. SPEIGHTS: I HAVE ONE POINT OF CLARIFICATION, |
| 10 | YOUR HONOR. AND I DON'T THINK THIS WILL TAKE BUT A SECOND. |
| 11 | THE COURT: FILE THAT AS A COURT EXHIBIT. |
| 12 | (COURT'S EXHIBIT 1 IN EVIDENCE) |
| 13 | MR. SPEIGHTS: ON THE RESEARCH RECORDS OF W. R. GRACE, |
| 14 | WHICH ARE THESE RESEARCH NOTEBOOKS THAT WE WENT INTO LONG AGO, |
| 15 | AND NOW WE MOVED TO PRODUCE, AND THEY HAVE REDACTED FROM THOSE |
| 16 | RESEARCH NOTEBOOKS ANY INFORMATION, AS I UNDERSTAND IT, THAT |
| 17 | DOES NOT PERTAIN TO ACOUSTICAL PLASTERS AND FIREPROOFING. |
| 18 | AS I UNDERSTAND WHAT THE COURT IS SAYING, THEY SHOULD ALSO |
| 19 | INCLUDE IN THEIR PRODUCTION, IN THE FIRST PART OF THE ORDER, |
| 20 | ANY INFORMATION IN THOSE BOOKS DEALING WITH ASBESTOS -- EXPERI- |
| 21 | MENTS WITH ASBESTOS, EVEN THOUGH THEY MIGHT NOT BE EXPERIMENTS |
| 22 | WITH ACOUSTICAL CEILING SPRAY. AND I DON'T THINK I AM OPENING |
| 23 | UP A CAN OF WORMS. |
| 24 | THE COURT: YOU TALKING ABOUT THE FIRST QUESTION? |
| 25 | MR. SPEIGHTS: YES. |

```
 1              THE COURT:  THE FIRST QUESTION DEALS WITH ASBESTOS.
 2              MR. SPEIGHTS:  IF IT DEALS WITH ASBESTOS, I GET IT,
 3    AS I UNDERSTAND WHAT THE COURT IS SAYING.
 4              THE COURT:  THAT WAS EXACTLY WHAT I SAID.  IT DOESN'T
 5    HAVE ANYTHING TO DO WITH CEILING MATERIAL OR FIREPROOFING
 6    MATERIAL.  IT HAS TO DO WITH ASBESTOS.  AND WHEN THAT COMPANY
 7    BECAME AWARE, RECEIVED, HEARD ABOUT OR HAD DATA TENDING TO SUP-
 8    PORT THE OPINION THAT THIS WAS A HARMFUL SUBSTANCE.
 9              NOW, I DON'T KNOW HOW TO ARTICULATE IT ANY BETTER THAN
10    THAT.
11              MR. SPEIGHTS:  I UNDERSTAND IT.  I JUST DIDN'T WANT
12    US TO HAVE A MISUNDERSTANDING LATER ON.
13              THE COURT:  I JUST HOPE THAT DEFENDANTS UNDERSTAND
14    AS WELL.  I HAVE JUST ABOUT DECIDED THAT I KNOW OF NO WAY TO
15    CONTROL THIS LAWSUIT BY IMPOSING FINES ON THESE MAJOR COMPANIES
16    IF THEY DON'T DO RIGHT.  I IMAGINE A FINE ON MR. SPEIGHTS, IF
17    HE DOESN'T DO RIGHT LIKE HE SAID HE IS GOING TO DO TOMORROW,
18    MIGHT GET HIS ATTENTION.  BUT -- SO I AM DEADLY SERIOUS WHEN
19    I TELL YOU THAT ANY MORE TRIFLING, IN MY JUDGMENT, OR NOT ANY
20    MAJOR GOOD FAITH EFFORT, WILL RESULT IN SANCTIONS UNDER RULE
21    37, WHICH TO ME IS ABOUT THE ONLY WAY I CAN GET SOMEBODY'S
22    ATTENTION.
23              I DON'T WANT TO DO THAT, OF COURSE, AND I HAVE SAID I WAS
24    GOING TO IMPOSE SANCTIONS BEFORE.  BUT SOMEHOW WE SLID THROUGH
25    THE CRACKS EACH TIME.  ALWAYS ENOUGH SEMANTICS THERE TO LEAVE
```

AMH-0039

```
 1  ROOM FOR DISCUSSION.
 2       I KNOW WHAT I JUST TOLD YOU TO DO.  AND SO SINCE I AM GOING
 3  TO JUDGE WHETHER OR NOT YOU DID WHAT I TOLD YOU TO DO, IT'S
 4  NOT GOING TO BE A QUESTION ABOUT WHAT MR. SPEIGHTS THOUGHT OR
 5  Y'ALL THOUGHT.  IT'S WHAT I THOUGHT.  AND I AM GOING TO MAKE
 6  THE BEST DECISION AND DO WHAT I THINK IS RIGHT, REGARDLESS OF
 7  HOW HARSH IT MAY BE TO ONE OF THESE COMPANIES.
 8       AND I HOPE THAT THIS IS CONVEYED TO OUT-OF-STATE COUNSEL
 9  AND TO THOSE CORPORATE AGENTS WHO ARE ASSISTING Y'ALL WITH
10  ANSWERING THESE QUESTIONS.
11       I FULLY UNDERSTAND THE CIRCUMSTANCES SURROUNDING LOCAL
12  COUNSELS' PROBLEM.  AND I VOICE NO CRITICISM TO Y'ALL, BECAUSE
13  I KNOW HOW HARD Y'ALL ARE WORKING.  BUT MAKE NO MISTAKE ABOUT
14  IT.  I WILL DEFAULT YOU NEXT TIME AROUND THE DAY WE HAVE THE
15  HEARING.
16       THANK YOU VERY MUCH.
17       (PROCEEDINGS CONCLUDED AT 2:40 P.M.)
18
19
20  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
21  RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
22
23  _____        1-13-84
    PHILLIP W. LOTER, OFFICIAL REPORTER       DATE
24
25
```

AMH-0040