# TAB 6

STATE OF SOUTH CAROLINA )
                               )      IN THE COURT OF COMMON PLEAS

COUNTY OF HAMPTON )

**FILED**
10:30am
JUL 05 2001
CLERK OF COURT
HAMPTON COUNTY

ANDERSON MEMORIAL HOSPITAL, )
on behalf of itself and others similarly )
situated, )
                               )

                  Plaintiff, )

                         )

      v.                       )      **ORDER**

                         )

UNITED STATES GYPSUM COMPANY; )
UNITED STATES MINERAL PRODUCTS )     Case No. 92-CP-25-279
COMPANY; ASBESTOS PRODUCT )
MANUFACTURING CORPORATION; )
ASBESTOSPRAY CORPORATION; )
H&A CONSTRUCTION CORPORATION, )
formerly SPRAYCRAFT; T&N, plc, formerly )
TURNER & NEWALL, PLC and )
TURNER & NEWALL, LTD; )

                         )

                Defendants. )

JUL 2001
Received
Speights &
Runyan

     This matter is before the Court on Plaintiff's Motion to Certify a class action. For the reasons

set forth below, the motion is GRANTED.

### I. Procedural History

     Plaintiff filed this asbestos property damage lawsuit on December 22, 1992, against the

former manufacturers of asbestos-containing surfacing material ("ACSTM").[1] Although Plaintiff

did not limit its putative class with geographic boundaries, the class was restricted to South Carolina

buildings by Order of Judge William L. Howard, Sr., this Court's predecessor, interpreting South

---

[1] ACSTM is defined for the purpose of the certification of this class action as material that is sprayed, troweled-on or otherwise applied to surfaces, such as acoustical plaster, ceiling texture, fireproofing materials, attic insulation, and masonry fill.

Carolina's door closing statute to prohibit multi-state class actions. While reserving its right to appeal Judge Howard's ruling, Plaintiff moved this Court on January 2, 1998 to certify a South Carolina class action against essentially five Defendants then remaining in the case: W. R. Grace & Co. and W. R. Grace & Co.-Conn. ("Grace"); United States Gypsum Company ("USG"); United States Mineral Products Corporation ("USM"); T&N, plc, formerly Turner & Newall, PLC and Turner & Newall, LTD ("T&N"); and Asbestos Product Manufacturing Corporation, Asbestospray Corporation, and H & A construction Corporation ("Asbestospray").[2]

All Defendants except Asbestospray filed their March 3, 1998 consolidated response in which they objected to class certification on three grounds: (1) lack of numerosity; (2) lack of typicality; and (3) lack of adequate representation by Anderson Memorial Hospital ("Anderson") and its counsel, Speights & Runyan ("S&R"), particularly Daniel A. Speights.[3] Defendants based their numerosity and typicality objections on documents and affidavits of counsel, and their adequacy challenge on depositions, filings in other lawsuits, and an affidavit of Professor Geoffrey C. Hazard. Defendants requested an evidentiary hearing on the adequacy issues.

Plaintiff filed its reply on April 17, 1998, and also requested an evidentiary hearing. USG withdrew its support for all adequacy objections on September 19, 1998. Litigation of the adequacy challenge was then pursued by Grace, USM, and T&N, none of whom requested a meeting with

---

[2] By the time Plaintiff filed its Motion to Certify, three Defendants originally named were no longer in the case: Keene Corporation filed for bankruptcy in 1993; Judge Howard granted Dana Corporation's Motion for Summary Judgment in 1996 because Plaintiff had not proven that Dana was responsible in tort for ACSTM manufactured by Smith & Kanzler Company, and Plaintiff had not made a claim against Dana for contractual indemnification; and Plaintiff voluntarily dismissed USG Corporation (USG'S parent corporation) without prejudice in 1996.

[3] Although Asbestospray has never been dismissed from this action, its remaining insurers filed an interpleader action, and its counsel was relieved by Order of this Court on the condition that it would provide an agent upon whom notice of these proceedings could be served. The insurers chose not to participate in the certification battle.

2



Plaintiff's counsel, although one of them repeatedly tried to settle the case in the midst of its inadequacy attack. Anderson and S&R refused to discuss settlement until the attack on their adequacy was resolved.

On April 3, 2000 this Court conducted a pre-hearing conference. Plaintiff urged that Defendants should be required to proceed first at the evidentiary hearing so that it would have specific notice of their inadequacy objections, but the Court ruled that Plaintiff must proceed first because it had the burden of establishing the right to class certification. However, the Court directed the parties to exchange witness lists and submit pre-hearing memoranda outlining their respective positions. Grace, USM, and T&N filed their memorandum on May 3, 2000, which leveled ten inadequacy charges for the Court to decide.

On September 5-6, 2000, this Court conducted a two day evidentiary hearing on Grace, USM, and T&N's adequacy objections. Plaintiff introduced documents; depositions taken in this case; factual testimony of Mr. Speights, Professor John P. Freeman, and Thomas E. McCutchen; and factual affidavits of five lawyers and a newly appointed Federal Judge.[4] All of these witnesses had first hand knowledge of the events in question and, in the undersigned's opinion, refuted Grace, USM, and T&N's factual allegations against S&R. Plaintiff also presented expert testimony of Professor Freeman, Thomas H. Pope, III, and the former Chief Judge of the South Carolina Court of Appeals, Alex M. Sanders, all of whom testified unequivocally that S&R and Mr. Speights are

---

[4] In addition to an extensive affidavit of Mr. Speights, Plaintiff submitted the affidavits of now Judge Paul C. Huck of Miami, Florida; Martin W. Dies of Orange, Texas; Martin Greitzer of Philadelphia, Pennsylvania; Edward J. Westbrook of Charleston, South Carolina; and E. Robert Wright of Fresno, California.

3



adequate class counsel.[5]

Grace and USM presented their evidence during the second day of the hearing. T&N relied solely on its pleadings and attachments. As to their attack on S&R, although they did not present *any evidence* to refute Plaintiff's factual presentation, these Defendants called Professor Hazard and Professor John Ayer as expert witnesses,[6] both of whom expressed opinions based upon a number of factual *assumptions* which the undisputed record by then showed were simply wrong. Grace, USM, and T&N also called several of Plaintiff's present and former officers as adverse fact witnesses in support of their contention that Anderson somehow had abdicated its responsibilities as a class representative.

Although all the evidence had been presented by the close of the evidentiary hearing, and this Court was prepared to rule on the adequacy issues at that time, the Court granted Grace, USM, and T&N's request for one more opportunity to brief the issues after the transcription of the record. Thereafter, on February 8, 2001, these Defendants submitted their third and final comprehensive

---

[5]A number of the factual witnesses also attested to Mr. Speights adequacy. For example, Mr. Pope pointed to the affidavit of Mr. Wright, who is currently Assistant United States Attorney for the Eastern District of California, and, while serving in the Justice Department, was the principal author of the seminal report giving rise to the asbestos property damage litigation. Mr. Wright served for a number of years with asbestos lawyers from throughout the nation as a member of Plaintiff's executive committee in the certified class action on behalf of the nations's schools. In Re Asbestos School Litigation, 104 F.R.D. 422 (E.D. Pa. 1984), aff'd in part and vacated in part, 789 F.2d 996 (3d Cir. 1986), cert. denied, 479 U.S. 852, 915 ("Schools Class"). According to Mr. Wright, "If I owned a building that contained asbestos, my first choice among all the attorneys I dealt with in the Schools Class case to represent me, whether it were an individual building case, or a class action, would be Mr. Speights."

[6]Plaintiff objected to Professor Ayer's testimony on the ground that, despite the Court's April 14, 2000 pre-hearing scheduling Order, Grace, USM, and T&N first identified Professor Ayer as a possible witness only several days before the evidentiary hearing. Although Grace, USM, and T&N offered no explanation for this tardy disclosure, the Court took the testimony and reserved ruling on its admissibility. During his cross-examination, Professor Ayer revealed that he actually had been retained in this matter some three months earlier. Nevertheless, having found below that Professor Ayer's opinion in no way supports any finding of inadequacy, it is unnecessary for the Court to reach the question of whether his testimony should be stricken.

brief in which they continued to "strongly press" all but one of their adequacy charges.

The following day, Plaintiff filed an Emergency Rule to Show Cause why conditional class certification should not be granted as to Grace in light of evidence that Grace was about to file for bankruptcy. After carefully considering the Petition, this Court issued an Order granting conditional class certification as to Grace pending a show cause hearing. At the show cause hearing, the Court took the matter under advisement, but kept the conditional certification Order in place.

On March 30, 2001, Grace filed for bankruptcy which automatically stayed all further proceedings in this case against Grace. 11 U.S.C. § 362. Shortly after the Grace bankruptcy filing, USM and T&N withdrew their charges regarding S&R's adequacy to serve as class counsel, leaving only three objections to Anderson's adequacy as a class representative.[7] This abandonment occurred more than three years after USM and T&N first challenged S&R's adequacy and followed an enormous investment of time and energy on this issue by the parties and the Court, which substantially delayed resolution of the certification question.

## II. Class Certification

---

[7] While it is no longer necessary to specifically address in detail and reject each of the charges made against counsel, which the Court was prepared to do before USM and T&N's withdrawals, as discussed below, the Court finds that S&R and Mr. Speights are adequate class counsel under Rule 23(a)(5), SCRP. After having the issues exhaustively litigated before it, however, the Court does feel constrained to make several very brief observations. All of the charges arose out of Mr. Speights' involvement in four matters: the Schools Class; the Concordia-Central Wesleyan lawsuits; the Celotex bankruptcy; and the Ohio contempt proceeding. As to the Schools Class, the undisputed record is that the Court presiding over that action in which these Defendants were parties rejected Defendants' allegations in two Court Orders entered years ago. As to the Concordia-Central Wesleyan lawsuits, Defendants assertions were not only barren of any factual support, but were directly contradicted by Judge Blatt's statement of what was before him and the testimony of Professor Freeman, Mr. McCutchen, Mr. Westbrook, and Mr. Speights. As to the Celotex Bankruptcy, as discussed below, after the evidentiary hearing, the United States Court of Appeals for the Eleventh Circuit granted S&R a substantial contribution award in language which leaves no question about Mr. Speights' adequacy in that proceeding. In re: Celotex Corp., 227 F.3d 1336, 1340 (11th Cir.2000). As to the Ohio contempt proceeding, despite the repeated assertions by these Defendants and Professor Hazard, Defendants finally conceded five months after the evidentiary hearing what was plain in the contempt order: the Ohio Court did not find that Mr. Speights or any other S&R lawyer violated the preliminary injunction.



Plaintiff seeks to certify an opt-out class action on behalf of itself and a class of other South Carolina property owners whose buildings contain or previously contained ACSTM.[8] The class would include private residences, commercial buildings, county and municipal government buildings, and all other buildings in this state except for

> a) any public and private elementary and secondary school within the class action In re: Asbestos School Litigation, 104 F.R.D. 422 (E.D.Pa.1984), aff'd in part and vacated in part, 789 F.2d 996 (3d Cir.), cert. den'd, 479 U.S. 852 (1986); b) any public and private college and university within the class action Central Wesleyan College v. W. R. Grace & Co., et al., 143 F.R.D. 628 (D.S.C.1992), aff'd, 6 F.3d 177 (4th Cir.1993); c) any commercial building leased in any part to the United States government on or after May 30, 1986, within the class action Prince George Center, Inc. v. United States Gypsum Co., et al., CA No. 5388 (Philadelphia Common Pleas Court); d) any building owned by the State of South Carolina within the action The State of South Carolina v. W. R. Grace & Co., et al., CA No. 3:87-2879-0 (D.S.C.); or any building owned by the federal government. Second Amended Complaint ¶ 4.

As the proponent of class certification, it is Plaintiff's burden to make a *prima facie* showing that the five requirements of Rule 23(a), SCRCP have been met. Waller v. Seabrook Island Property Owners Asso., 300 S.C. 465, 388 S.E.2d 799, 801 (1990); Littlefield v. S. C. Forestry Commission, 370 S.C. 348, 523 S.E.2d 781 (1999). The Court finds that Plaintiff has met its burden as to each of these requirements.

## A. Impracticability of Joinder

The Rule 23(a) requirement that "the class be so numerous that joinder of all members is impracticable" can be satisfied by the sheer number of potential class members. Stemmermann v. Lilienthal, 54 S.C. 440, 32 S.E. 535 (1899). Plaintiff need not show the exact number in the class, Evans v. U. S. Pipe and Foundry Co., 696 F.2d 925 (11th Cir.1983), or even that all members of the

---

[8]Opt-out means that class members will have a reasonable opportunity to exclude themselves from the class after Court-approved notice has been provided.

class can be readily identified. McGann v. Mungo, 287 S.C. 561, 340 S.E.2d 154 (Ct.App.1986); see also, Phillips v. Joint Legislative Comm., 637 F.2d 1014 (5th Cir.), cert. den'd, 456 U.S. 971 (1982).

Plaintiff has submitted records showing 1652 shipments of ACSTM into South Carolina. These shipments represent hundreds of thousands of bags of ACSTM sold within South Carolina.

Defendants argue that this Court should ignore the vast majority of Plaintiff's evidence and only consider those documents which conclusively establish that ACSTM manufactured by USG, USM, or T&N was actually installed in a specific, identifiable building within the definition of the class which has not been subject to a prior verdict or settlement. Subject to this scrutiny, these Defendants argue that Plaintiff's evidence only identified 14 potential class members. The Court finds no merit in this argument for a number of reasons.

First, the law is clear that where the exact size of the class is unknown, but general knowledge or common sense suggest it is large, the Court may take judicial notice of this fact and assume that joinder is impracticable. See, Newberg, H., Newberg on Class Actions, p. 46 (2d Ed. 1985); citing, Evans v. United States Pipe & Foundry Co., 696 F.2d 925 (11th Cir.1983); Robert E. v. Lane, 530 F.Supp. 930 (N.D.Ill.1981); Bartleson v. Dean Witter & Co., 86 F.R.D. 657 (E.D.Pa.1980).

Second, Defendants proposition puts the cart before the horse. Defendants opposed Plaintiff contacting absent class members prior to certification. With this certification Order, Plaintiff may contact members of the class whom they now represent to obtain more specific information to connect the 1652 plus shipments (already shown by Defendants' sales to this state) to specific

7

buildings in the class.

Third, the restrictive approach advocated by Defendants defies common sense. Were it necessary to prove each element so exactly at the class certification stage, then these Defendants could easily escape class-wide liability simply by not keeping their old sales records.

Finally, Plaintiff has submitted evidence suggesting that it was consistent with industry practice for these Defendants to "not necessarily know" in which buildings its products were being installed. This is borne out by the additional records submitted by Plaintiff which reflect the sale of thousands of bags of ACSTM in South Carolina through distributors or supply houses where the ultimate purchaser is not identified. The standard of numerosity advocated by Defendants would ignore this probative evidence.

USM also argues (1) that Plaintiff must satisfy the "impracticability of joinder" requirement independently as to each Defendant and (2) that Plaintiff lacks standing to sue USM. USM's first argument is inconsistent with the plain language of Rule 23(a), SCRCP, ("the class must be so numerous that joinder of *all* members is impracticable")(emphasis supplied), which has no such defendant specific requirement. Cf., Central Wesleyan College v. W. R. Grace & Co., et al., 143 F.R.D. 628 (D.S.C.1992), aff'd, 6 F.3d 177 (4th Cir.1993) (J. Sol Blatt, Jr.)(certifying a nationwide class where the named plaintiff only identified one manufacturer's product in its buildings). As to the second argument, this Court already has ruled on two occasions that Plaintiff has standing to assert its claims against USM.[9]  Given the extensive history leading up to these two Orders and

---

[9]In a November 22, 1996 Order, this Court held that:

U. S. Mineral is a proper party-defendant at this time. Discovery of information requested by Anderson is appropriate because of Anderson's status as the representative of a putative class and because of Anderson's allegations of conspiracy and concert of action. Order at 4.

8

USM's failure to provide anything new on this issue, the Court declines to disturb its prior rulings.

In summary, the Court finds that the evidence submitted by Plaintiff establishes that there are large numbers of potential class members in this case. Based upon the sheer number of potential class members, joinder of all class members would be impracticable. South Carolina Public Service Authority v. C & S Bank, 300 S.C. 42, 386 S.E.2d 775 (1989); Stemmermann v. Lilienthal, 54 S.C. 440, 32 S.E. 535 (1899).

## B. Common Questions of Law or Fact

Rule 23(a)(2), SCRCP requires that there be "questions of law or fact common to the class." No Defendant has objected on this ground, and every Court to address this issue in an asbestos property damage class action has agreed that common questions of both law and fact exist. See, Central Weslevan, supra; Schools Class supra; National Gypsum Co. v. Kirbyville Independent School Dist., 770 S.W.2d 624 (Tex.App.1989). Accordingly, I find that Plaintiff has gone beyond its burden and established that there are questions of law *and* fact common to the class.

## C. Plaintiff's Claims are Typical of the Class Claims

Rule 23(a)(3), SCRCP requires that "the claims of the representative parties are typical of the claims or defenses of the class." As Judge Blatt recognized in Central Weslevan, "A claim is typical if it arises from the same course of conduct that give rise to the claims of the class members and if the claims are based on the same legal theories." 143 F.R.D. at 637. "This test 'does not require that the representatives have identical claims which other class members might present. The

---

On January 23, 1997, this Court further held that:

> Plaintiff has alleged a cause of action against U. S. Mineral on the basis of conspiracy. The material before the court is a sufficient showing in regard to this cause of action to establish the relevancy of the information sought. Order at 2.

9

question of typicality [instead] focuses on the similarity of the legal and remedial *theories of claims* of the named and unnamed plaintiffs." Bates v. Tenco Services, Inc., 132 F.R.D. 160, 163 (D.S.C.1990)(emphasis supplied). See also, Flanagan, *South Carolina Civil Procedure* (2d Ed. 1996) at p. 180 ("the use of the word 'typical' suggests that the claims or defenses do not need to be co-extensive, but rather similar to, or shared by most members of the class").

Moreover, the typicality and commonality requirements "tend to merge," General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982), and "[t]ypicality is generally presumed when common questions exist." *Newberg H.*, Newberg on Class Actions, p. 165 (2d Ed. 1985). In addition, as with the "commonality" issue, courts have unanimously found the typicality requirement satisfied for asbestos property damage class actions that were much broader in breadth and scope than here. Central Wesleyan, supra (class action on behalf of the nation's colleges and universities); Schools Class, supra (class action on behalf of the nation's schools); National Gypsum Co. v. Kirbyville Independent School Dist., 770 S.W.2d 621, 624 (Tex.App.1989)(state class action); Detroit Board of Education v. Celotex Corp., Case No. 84-429634 (Cir. Ct., Wayne County, MI, Sept. 6, 1985)(state class action). In all of these class actions, there were many more Defendants, sometimes in excess of 70, and typically hundreds of products at issue.

Nevertheless, Defendants argue that Plaintiff's claims are not typical of the claims of other class members because Plaintiff has only shown that it has two types of products from two Defendants in its buildings. This argument was rejected by Judge Blatt in Central Wesleyan, where the named representative only identified a single bankrupt manufacturer's materials in its buildings. Id at 635. Judge Blatt nevertheless held that the claims were typical, in part, because the conspiracy allegations tied Defendants together. Id at 637-8. The Fourth Circuit agreed and affirmed. Central

<u>Wesleyan</u>, 6 F.3d at 188.

Plaintiff has submitted a substantial body of unrebutted evidence on the issue of the conspiratorial conduct by these Defendants.[10] Much of this conspiracy evidence is also probative of the general liability of these Defendants. Accordingly, in advancing its own claims, including its own conspiracy claims,[11] Plaintiff will be establishing the general liability of all Defendants. <u>Charles v. Texas Co.</u>, 199 S.C. 156, 18 S.E.2d 719, 726 (1942) ("each conspirator is liable for all damages naturally resulting from any wrongful act of a co-conspirator in exercising the joint enterprise.") Therefore, Plaintiff's claims are typical of any class member who has a property damage claim, no matter which present or former manufacturer is at issue.

USG, USM, and T&N also suggest that differences in types of asbestos-containing products make Plaintiff's claims atypical. In rejecting this very argument, Judge Blatt in <u>Central Wesleyan</u>, found that the federal NESHAP regulations unite the claims of all class members "regardless of the exact product involved." <u>Central Wesleyan</u>, 143 F.R.D. at 637. These federal regulations (and the corresponding state regulations) require the removal of all "friable" asbestos in buildings during

---

[10]Defendants tried to dismiss conspiracy as a "red herring." However, the certification orders in <u>Central Wesleyan</u> and the <u>Schools Class</u>, clearly demonstrate the significance of Plaintiff's conspiracy claims in the context of certifying an asbestos property damage class action.

[11]Defendants have suggested that with the exception of the two products in its building, Plaintiff will have little need or incentive to advance conspiracy claims against other manufacturers. Such suggestion has no teeth and tilts back toward the adequacy issue disposed of herein. First, as class representative, Plaintiff has a duty to advance its conspiracy claims on behalf of the class, and in so doing, will be required to prove the underlying tort liability of each conspirator. <u>Stiles v. Onorato</u>, 318 S.C. 297, 457 S.E.2d 601 (1995) (party is liable for conspiracy if actively involved in the wrongful conduct). More importantly, Plaintiff has every incentive to establish the liability of every party who could be jointly and severally liable for Plaintiff's injuries, because Plaintiff can then recover its damages from any one or combination of those Defendants. <u>Cabe v. Ligon</u>, 115 S.C. 376, 105 S.E. 739 (1921) (conspiracy or concurring negligence subjects tortfeasor to joint liability); <u>Webber v. Town of Jonesville</u>, 94 S.C. 189, 77 S.E. 857 (1913) (one injured by the acts of several may elect to bring one action against the whole, or may bring separate actions against one or more of the torfeasors); <u>Fernanders v. Marks Construction of South Carolina, Inc.</u>, 330 S.C. 470, 499 S.E.2d 509 (Ct.App.1998).

certain renovations or, at the latest, before demolition of the building. See also, City of Greenville v. W. R. Grace & Co., 640 F.Supp. 559, 573 (D.S.C.1986), aff'd, 827 F.2d 975, 982 (4th Cir.1987) (SC law); Kershaw County Board of Education v. U. S. Gypsum Co., 302 S.C. 390, 396 S.E.2d 369, 373 (1990). Moreover, these regulations simply codify sound public health policy. City of Greenville, 640 F.Supp. 573. Therefore, no matter what type of material may be in a class member's building, what percentage of asbestos is contained therein, or when that product was installed, the NESHAP regulations and accepted public health practices uniformly establish both the inevitability of damages and uniform guidelines for addressing these injuries that are typical across the class.

Defendants also rely on a number of federal personal injury class actions which have denied class certification, largely because those courts found that in cases of personal injuries, the facts and issues that were typical among class members did not "predominate" over individual differences between the claims of class members. The short answer to this proposition is that the federal "predominance" inquiry that forms the basis of each of these federal decisions is not a proper consideration under South Carolina law. Kennedy v. S. C. Retirement System, Op. No. 25133 (S.C.Sup.Ct., May 22, 2000)(Shearhouse Ad. Sh. No. 20 at p. 18); Littlefield v. S. C. Forestry Commission, 370 S.C. 348, 523 S.E.2d 781 (1999). Even if South Carolina adopted the predominance requirement, a number of these cases distinguish asbestos property damage actions as presenting *vastly fewer* individual questions than do personal injury actions. For instance, the court in Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1232 (9th Cir.1996) distinguished the School Asbestos Litigation class "as much more manageable than a personal injury case would have been because, *in essence, the effect of asbestos in different buildings is the same and the effect of asbestos on different people is not.*" (emphasis supplied). Similarly, the court in Castano v.

12

American Tobacco Co., 84 F.3d 734, 742 (5th Cir.1996), cited the School Class decision to note that property damage cases involved fewer individualized questions than personal injury classes. Likewise, the court in Georgine v. Amchem Products, Inc., 83 F.3d 610, 627 and n. 13 (3d Cir.), aff'd sub nom. Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) held that asbestos property damage classes involve "vastly fewer individualized questions" than the personal injury classes.

Given the unanimous asbestos property damage class action decisions, all of which found typicality to exist in cases that were much broader in scope and in the number of defendants involved, coupled with the showing Plaintiff has made on the conspiratorial conduct of Defendants, the Court finds that Plaintiff has satisfied the "typicality" requirement of Rule 23(a)(3), SCRCP.

### D. Amount in Controversy

Rule 23(a)(5), SCRCP requires that each member of the class have at least one hundred dollars in controversy. There is no dispute that the amount in controversy is met by each potential class member. Moreover, common knowledge and experience, as well as knowledge this Court has personally acquired through past service in the South Carolina Legislature, as a School Board Attorney, City Attorney, Attorney and Circuit Court Judge, make it clear that asbestos removal and repair occasioned thereby require enormous expenditures by owners of affected buildings. Accordingly, the Court finds that this requirement of Rule 23, SCRCP is satisfied.

### E. Adequacy of Representation

Rule 23(a)(4), SCRCP requires that the representative party "will fairly and adequately protect the interests of the class." This analysis focuses not only on the adequacy of Anderson as a representative party, but also on Anderson's choice of counsel.

1. Anderson's Adequacy as a Class Representative

13

Plaintiff must demonstrate that it is a proper class representative. The applicable standard on this point is whether Anderson "has common interests with the unnamed members of the class" and will "vigorously prosecute the interests of the class." <u>Waller v. Seabrook Island Property Owners Association</u>, 300 S.C. 465, 388 S.E.2d 799, 801 (1990).

USM and T&N (but not USG) argue that Anderson will not vigorously prosecute this case because it has "lost interest" in the litigation and "abdicated" its responsibility to counsel. According to these Defendants, Plaintiff is unfit to serve as class representative because of the "near total lack of meaningful communication between class counsel and the class representative" which is "underscored" by Anderson's senior management not "having any awareness whatsoever of the significant developments in this litigation." The Court finds no merit in any of these assertions.

At the two day evidentiary hearing held on September 5-6, 2000, Anderson's current President, former President, and Vice-President of Support Services all testified. This Court was impressed at their commitment to this class action and why it will adequately serve as a class representative. After hearing these witnesses and fully reviewing the record, the Court finds that throughout these proceedings, Anderson has recognized its position as a class representative in this matter and has fulfilled its duties to the class, even at times when it may have been in Plaintiff's best interest to do otherwise. The record clearly demonstrates Anderson's understanding, willingness and qualifications to act as a class representative.[12]

---

[12]Although it did not address the issue at the evidentiary hearing, even during its examination of Anderson's officials, USM and T&N also suggest in their post-hearing submission that Anderson is an inadequate representative because it "abandoned its claims in the Eagle-Picher Bankruptcy because it lost interest in asbestos issues." The documents submitted by these Defendants indicate that an Illinois lawyer representing the American Hospital Association ("AHA") filed a claim in the Eagle-Picher Bankruptcy on behalf of several hundred hospitals across the nation. For reasons that are unexplained, but irrelevant to this proceeding, AHA apparently chose not to perfect its claim in that bankruptcy. There is no evidence that Anderson participated in that decision about a non-class claim

In <u>Surowitz v. Hilton Hotels Corp.</u>, 383 U.S. 363, 366 (1966), the United States Supreme Court rejected a similar attack on a named Plaintiff even though she did not even understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know Defendants by name, nor even the nature of the misconduct alleged. The extent of the named class representative's knowledge of the substantive law and the legal niceties of its claims is not relevant to determining whether Plaintiff can adequately represent the class. <u>South Carolina National Bank v. Stone</u>, 139 F.R.D. 325, 329 (D.S.C. 1991).

USM and T&N also argue that Anderson is inadequate because an Ohio Court found in a March 11, 1997 Order that Anderson violated a 1987 preliminary injunction in an action involving the interpretation of a contractual indemnification which Dana provided to Celotex's predecessor when Dana sold an ACSTM manufacturer named Smith & Kanzler Company. The preliminary injunction prohibited Celotex from instituting "new actions or claims in any courts" against Dana based upon the indemnity. The sole basis of the Ohio Court's violation finding was that Anderson's former counsel (not S&R) made a prohibited claim in a letter to Judge Howard opposing Dana's Motion for Summary Judgment in this case. The finding is not yet ripe for an appeal.

With due respect for the Ohio Court, and without in anyway trespassing on its proceeding, nothing in its opinion affects this Court's view of Anderson as a class representative for several independent reasons. First, this Court is bound by Judge Howard's finding, entered upon Dana's urging, that Anderson did not make an indemnity claim in South Carolina. Second, Dana specifically told Judge Howard and Plaintiff that the preliminary injunction would not come into

---

involving a product type not in this case and probably not in its buildings (Eagle Picher made asbestos cement pipe). The Court fails to see how that matter has any relevance to the issue before the Court.

15

play unless and until Plaintiff obtained a judgment against Celotex and Celotex suffered a loss, neither of which ever occurred; this Court is not prepared to find that Anderson is inadequate for doing what Dana said it could do when obtaining its summary judgment in this Court. Third, it is undisputed that Anderson itself did not take any action which the Ohio Court criticized. Fourth, the Court finds it somewhat disingenuous for USM and T&N to pursue this ground against Anderson when at one time they contended that S&R was at the core of the events leading to the Ohio Order and now have conceded S&R's adequacy. Finally, after entertaining extensive arguments about this matter, the Court is of the view that regardless of the ultimate outcome of that proceeding, Anderson's tenacious defense of the class in that distant court for over five years further demonstrates that Anderson will "vigorously prosecute the interests of the class." Waller, 388 S.E.2d at 801.

Finally, this Court finds that Anderson's refusal to settle this action until the resolution of the adequacy challenge is strong evidence of its allegiance to the class. While it may have been easy to take the money and end this obviously unpleasant attack on its credibility, Anderson would not compromise the interest of the class by negotiating with a baseless cloud over its head.

In summary, there is no question in this Court's mind regarding Anderson's allegiance to the class or willingness to "vigorously prosecute" this action. Runion v. U.S. Shelter, 98 F.R.D. 313, 317 (D.S.C. 1983); Waller, 388 S.E.2d at 801. Accordingly, the Court finds that this requirement of Rule 23(a)(4), SCRCP as it relates to Anderson as a class representative is satisfied.

### 2. Class Counsel's Adequacy

The standard for determining the adequacy of class counsel is whether counsel is "qualified,

experienced and generally able to conduct the proposed litigation." South Carolina National Bank v. Stone, 139 F.R.D. 325, 329 (D.S.C. 1991). This Court was provided with a wealth of evidence and testimony regarding the qualifications, experience and capabilities of S&R, particularly Mr. Speights, both in asbestos property damage litigation and class actions. A capsule of this extensive record reveals that Mr. Speights was the first attorney in the nation to: successfully try an asbestos property damage case; successfully try an asbestos property damage case for a school district; successfully try an asbestos property damage case for a public building owner; successfully try an asbestos property damage case for an eleemosynary building owner; successfully try an asbestos property damage case for a commercial building owner; successfully try an asbestos property damage case against USG and USM (as well as Grace); and successfully settle an asbestos property damage case. Over the past twenty years, Mr. Speights and later S&R have pursued discovery and litigated cases all over the nation against all Defendants in this action.

Mr. Speights also has served as class counsel in three certified nationwide asbestos property damage class actions involving Defendants in this action, as well as counsel in another South Carolina environmental class action. Judge Blatt found (with no objection from any Defendant) that Mr. Speights was adequate to serve as co-lead counsel in the certified class action on behalf of the nation's colleges and universities. Mr. Speights' law partner, C. Alan Runyan, and other lawyers in their firm also have significant experience in individual and class action asbestos property damage litigation, including a certified class asbestos property damage action against USG for buildings in Puerto Rico and a certified South Carolina environmental class action against Exxon Corporation.

Additionally, Mr. Speights has had significant involvement on behalf of asbestos property damage claimants in every major asbestos bankruptcy involving ACSTM. In the Johns-Manville

17

bankruptcy, Mr. Speights was selected by all building owners in the country to serve as trial counsel for all asbestos property damage claims, which resulted in excess of $400 million dollars for property damage claimants. In the National Gypsum bankruptcy, Mr. Speights was a member of the joint asbestos committee and the property damage negotiating committee, and was chosen as one of three members of the property damage technical advisory committee. In the Celotex bankruptcy, Mr. Speights was recently recognized by the United States Court of Appeals for the Eleventh Circuit for his instrumental role in negotiating a consensual plan of reorganization:

> In sum, the evidence accepted as true by the bankruptcy judge was that [Speights & Runyan], and Speights in particular, played a significant role in the successful negotiation of a consensual plan, and that *a large portion of the credit for achievement of the plan was attributable to Speights because of his credibility and the experience in asbestos related bankruptcy that he brought to the process.*

In re: Celotex Corp., 227 F.3d 1336, 1340 (11th Cir.2000) (emphasis supplied). Finally, after Grace apparently pursued its attack in its bankruptcy, this Court received notice that the United States Trustee has appointed "Anderson Memorial Hospital, c/o Daniel A. Speights" to the Official Committee of Asbestos Property Damage Claimants in the Grace bankruptcy and that Mr. Speights has been selected by his peers from all over the nation to serve as Co-Chair of that committee.

None of this evidence was disputed by Defendants. Moreover, all Defendants conceded that Mr. Speights and S&R were qualified, experienced and generally able to conduct this litigation. South Carolina National Bank v. Stone, 139 F.R.D. 325, 329 (D.S.C.1991).

Despite this concession, however, some Defendants opposed class certification based upon allegations that Mr. Speights had been "seriously delinquent" in his prior representation of both private clients and class actions. Because Grace is now protected by the bankruptcy stay, and the

18

remaining Defendants have withdrawn their arguments regarding the adequacy of S&R, this Court will not address each specific allegation as requested by Plaintiff.[13] However, after considering the entire record devoted to this issue, this Court unequivocally finds **_absolutely no merit_** in any of the arguments that S&R and Mr. Speights are inadequate class counsel for Plaintiff's class in this action. Moreover, but for the bankruptcy stay protecting Grace, this Court would without hesitation address and with specificity reject each and every one of Defendants' inadequacy charges.[14]

This Court is fully convinced of S&R's adequacy to prosecute Plaintiff's claims and the class claims against these Defendants. The overwhelming testimony of imminent members of the South Carolina Bar *alone* is persuasive. Judge Sanders, Professor Freeman and Attorney Pope are each personally known to the Court. Each's reputation and credibility are impeccable. Each's opinion is highly valued by this Court, and unlike the opinions expressed by Professors Hazard and Ayer, each opinion has a sound basis. Each fully considered the allegations lodged against S&R, reviewed pertinent documentation, and fully supported their opinions of S&R's adequacy. Moreover, the testimony offered by Plaintiff's witnesses was fully supported by the substantial body of evidence produced to this Court.

In stark contrast, I find that the defense experts, Professor Hazard and Professor Ayer, testified with their guns not fully loaded and only half-cocked. This Court puts no credence in their

---

[13]In its final brief, Plaintiff states, "because of the scurrilous and meritless charges which Certain Defendants have publically filed against Mr. Speights in his own hometown, Plaintiffs respectfully urge this Court to address these charges on the record." [Plaintiff's Omnibus Reply at 31]. This is a reasonable and justified request.

[14]Although this Order was not issued until after the bankruptcy stay, this Court had reached its conclusions on the merits of the adequacy of S&R prior to March 30, 2001. Had this Court not reached its conclusions by that date, it would not have issued and allowed to stand its February 9, 2001 Order conditionally certifying a class action as to Grace.

19

assessments and opinions and finds that they were ill-equipped to help the Court to any degree on any issue they addressed. It was clear from their cross-examinations that both Professor Hazard and Professor Ayer had not reviewed pertinent evidence controverting all of their attacks on S&R -- evidence that is not only in the record before this Court but also much of which was publically available. Indeed, there were several instances in which Professor Hazard's averments and testimony in particular were flatly contradicted by the very documents on which he claimed to rely.

In summary, the Court is fully convinced of S&R's adequacy to serve as class counsel in this case. Anderson has shown that both it and its counsel are committed, qualified and in allegiance with the class they purport to represent. Contrary to the picture that Defendants tried to paint of S&R, the evidence and testimony before this Court show that S&R's lawyers are esteemed and respected and have shown nothing but prudence, loyalty and allegiance to the class and to Plaintiff – doing so even though their own interests might have been better served by an alternate course of conduct. None of the charges raised by Defendants or their experts during the course of these proceedings, when held up to the light of day, establish any detriment or prejudice or otherwise negatively reflect upon the best interest of the class. Accordingly, I find that the requirements of Rule 23(a)(4), SCRCP are satisfied.

### III. Conclusion

I find that each of the of the five criteria enumerated in Rule 23(a), SCRCP are satisfied and that this case is appropriate for class treatment. Therefore, Plaintiff's Motion to Certify a Class Action is granted as to the remaining Defendants.

Pursuant to Rule 23(d)(2), SCRCP, within thirty (30) days of the entry of this Order the Parties shall submit their proposals regarding the timing and content of class notice.

20

**IT IS SO ORDERED.**

The Honorable John C. Hayes, III
Circuit Court Judge
Sixteenth Judicial Circuit

Spartanburg, South Carolina
Entered this 29th day of June, 2001

21