**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,** | ) | **Case No. 01-01139 (KJC)** |
| | ) | |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |

**FORTY-SEVENTH (CUMULATIVE) QUARTERLY INTERIM FEE APPLICATION
OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR
TO W. R. GRACE & CO. AND AFFILIATES FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF
OCTOBER 1, 2013 THROUGH FEBRUARY 3, 2014**

<u>**SUMMARY SHEET**</u>

| | |
|---|---|
| Name of Applicant: | Blackstone Advisory Partners L.P. |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | June 22, 2001, effective April 2, 2001 |
| Period for which compensation and reimbursement is sought: | October 1, 2013 through February 3, 2014 |
| Amount of Compensation sought as actual, reasonable and necessary: | $5,400,000.00 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $1,261.96 |
| Cash Payment Sought: | $5,080,002.70 |

This is a _____ monthly _x_ interim _____ final application

### CUMULATIVE SUMMARY OF MONTHLY APPLICATIONS OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO W. R. GRACE & CO. AND AFFILIATES FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF OCTOBER 1, 2013 THROUGH FEBRUARY 3, 2014

| Fee Application, Filing Date, Docket No. (if available) | Total Fees Requested | Total Expenses Requested | Certification of No Objection Filing Date, Docket No. | Amount of Fees Paid (80%) | Amount of Expenses Paid (100%) | Amount of Holdback Fees Sought |
|---|---|---|---|---|---|---|
| 10/01/13 – 10/31/13, 01/09/14, 31587 | $25,000.00 | $1,173.06 | 01/31/14, 31685 | $20,000.00 | $1,173.06 | $5,000.00 |
| 11/01/13 – 11/30/13, 01/17/14, 31601 | 125,000.00 | 28.90 | 02/11/14, 31721 | 100,000.00 | 26.20 | 25,000.00 |
| 12/01/13 – 12/31/13, 02/04/14, 31706 | 100,000.00 | 60.00 | 02/26/14, 31785 | 80,000.00 | 60.00 | 20,000.00 |
| 01/01/14 – 01/31/14, 02/14/14, 31738 | 150,000.00 | -- | 03/12/14, 31853 | 120,000.00 | -- | 30,000.00 |
| 02/01/14 – 02/03/14 | -- | -- | -- | -- | -- | -- |
| **Total** | **$400,000.00** | **$1,261.96** | | **$320,000.00** | **$1,259.26** | **$80,000.00** |

## CUMULATIVE COMPENSATION SUMMARY BY PROJECT CATEGORY

| Project Category | Total Hours for the Interim Period | Total Fees for the Interim Periods[1] | Total Fees from the Petition Date[1] |
|---|---|---|---|
| Accounting/Auditing | - | NA | NA |
| Asset Dispositions | - | NA | NA |
| Business Analysis | 147.5 | NA | NA |
| Case Administration | 43.5 | NA | NA |
| Claims Analysis/Resolution | 167.0 | NA | NA |
| Committee | 5.2 | NA | NA |
| Corporate Finance | - | NA | NA |
| Employment Applications | - | NA | NA |
| Employee Benefits | - | NA | NA |
| Fee Applications | 4.3 | NA | NA |
| Financing | 112.0 | NA | NA |
| Hearings | - | NA | NA |
| Non-Working Travel Time | 5.2 | NA | NA |
| Other | 6.4 | NA | NA |
| Plan & Disclosure Statement | 12.6 | NA | NA |
| Tax Issues | - | NA | NA |
| Valuation | - | NA | NA |

## CUMULATIVE EXPENSE SUMMARY ($)

| Expense Categories | Total Expenses for the Interim Period | Total Expenses from the Petition date |
|---|---|---|
| Airfare/Railroad/Ground Transportation | $719.34 | $128,385.35 |
| Meals and Lodging | 444.72 | 60,086.26 |
| Research | 90.20 | 49,952.83 |
| Communications | 0.00 | 14,283.70 |
| Word Processing | 0.00 | 15,483.44 |
| Photocopying | 7.70 | 19,856.24 |
| Other | 0.00 | 9,382.37 |

---

[1] Blackstone does not bill by the hour; therefore, a calculation of total fees by hour, by category is not applicable.

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,** | ) | **Case No. 01-01139 (KJC)** |
| | ) | |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |

### FORTY-SEVENTH (CUMULATIVE) QUARTERLY INTERIM FEE APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO W. R. GRACE & CO. AND AFFILIATES FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF OCTOBER 1, 2013 THROUGH FEBRUARY 3, 2014

Pursuant to 11 U.S.C. §§ 330 and 331 of title 11 of the United States Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Retention Order (as defined herein), and this Court's *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* ("Procedures"), Blackstone Advisory Partners L.P. ("Blackstone") hereby submits this forty-seventh (cumulative) quarterly interim application (the "Forty-Seventh Quarterly Interim Application") for allowance of (i) compensation for actual and necessary professional services rendered by it as financial advisor to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for the period of October 1, 2013 through February 3, 2014 (the "Forty-Seventh Interim Period"), and (ii) the reimbursement of expenses recorded in providing said services during the Forty-Seventh Interim Period.

In support of this Forty-Seventh Quarterly Interim Application, Blackstone respectfully represents as follows:

## I. Jurisdiction

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II. Background

2.  Blackstone is financial advisor to the Debtors.

3.  On April 2, 2001 (the "Petition Date"), the Debtors filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  On April 2, 2001, the Debtors applied to this Court for an order authorizing them to retain Blackstone pursuant to an engagement agreement dated February 15, 2001 (the "Engagement Agreement") as their financial advisor, effective as of the Petition Date.

5.  On June 22, 2001, this Court entered an order (the "Retention Order") authorizing the Debtors to employ Blackstone as their financial advisor effective as of the Petition Date pursuant to the terms of the Engagement Agreement.

## III. Narrative Description of Blackstone's Activities during the Forty-Seventh Interim Period

6.  The financial services provided by Blackstone to the Debtors during the Forty-Seventh Interim Period included:

- Preparing corporate finance analyses for management;
- Updating comprehensive financial model and working with debt capital markets at banks to prepare Confidential Information Memorandum for exit financing;
- Assisting management and counsel in the analysis of claims and the calculation of interest for allowed claims;

- Coordinating with claims agent and management to make claims payments;

- Reviewing and assisting in drafting of court motions relating to business matters;

- Apprising financial advisors of key creditor constituents of various business matters;

- Advising management in its settlements with the pre-petition bank lenders and performing financial analysis related thereto;

- Assisting counsel and management with the documentation of the Debtors' exit financing facility including the negotiation of covenants and other terms;

- Assisting management in raising $1.5 billion exit financing and coordinating with debt capital markets professionals at banks on the capitalizing process;

- Submitting declaration in support of exit financing facility and assisting counsel in preparing related motion;

- Working with creditor constituencies to approve acquisition of Dow Chemical Polypropylene Catalyst business;

- Responding to information requests from committee professionals; and

- Providing strategic and business advice in connection with the bankruptcy.

### IV. Blackstone's Request for Compensation and Reimbursement of Expenses

7. Pursuant to the Procedures, professionals may request monthly compensation and the reimbursement of expenses incurred. The notice parties listed in the Procedures may object to such a request. If no notice party objects to a professional's request within twenty (20) days after the date of service of the request, the applicable professional may submit to this Court a certification of no objection whereupon the Debtors are authorized to pay 80% of the fees and 100% of the expenses requested.

8. Furthermore, and also pursuant to the Procedures, professionals are to file with this Court and serve upon the notice parties a quarterly request (the "Quarterly Interim Application") for interim approval and allowance of the monthly fee applications filed during the quarter covered by the Quarterly Interim Application. If this Court grants the relief requested in the Quarterly Interim Application, the Debtors are authorized and directed to pay the professional

100% of the fees and expenses requested in the monthly fee applications covered by that Quarterly Interim Application less any amounts previously paid in connection with the monthly fee applications. Any payment made pursuant to the monthly fee applications or the Quarterly Interim Application is subject to final approval of all fees and expenses at a hearing on the professional's final fee application.

## A. Blackstone's Request for Compensation

9. With this Forty-Seventh Quarterly Interim Application, Blackstone seeks interim allowance of compensation in the amount of $400,000.00 for the Forty-Seventh Interim Period. Copies of Blackstone's invoices pertaining to the Forty-Seventh Interim Period are attached hereto as Exhibit A.

## B. Blackstone's Request for Reimbursement of Expenses

10. During the Forty-Seventh Interim Period, Blackstone has recorded expenses in the amount of $1,261.96. The details of these expenses are attached hereto as Exhibit A.

11. Local Travel is primarily for cash out-of-pocket transportation expenses incurred either (i) in New York traveling to and from meetings related to the client's matter, traveling to/from home/office prior to normal working hours or after 8:00 pm, and the employee has traveled at those times as a result of the time exigencies of that client's matter or (ii) at the site of a meeting. If the employee lives outside Manhattan, it is permissible for that employee to take a car service since taking a taxi is impractical.

12. Meal Expenses include employee meals while traveling on client matters and in accordance with the restrictions set forth below and meals provided during meetings with the Debtors, committees and their advisors. Blackstone's general policy permits its employees to bill dinner meals to a client if the employee is required to provide services to the client during such meal time due to extreme time constraints.

**C. Blackstone's Request for Allowance of the Restructuring Fee**

13.  Pursuant to the Engagement Agreement and the *Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a), 2016 and 5002 Authorizing the Employment and Retention of the Blackstone Group L.P. as Financial Advisor to the Debtors and Debtors in Possession* [Docket No. 14] (the "Application"), the Reorganized Debtors (as defined in the Plan)[2] agreed to pay to Blackstone a fee (the "Restructuring Fee") in an amount equal to $5,000,000 upon completion of a Successful Restructuring. *See* Application at ¶ 12b.

14.  As defined in the Application, a "Successful Restructuring" means "the execution and confirmation of a plan of reorganization pursuant to an order of the Court."  Application at ¶ 13.

15.  Pursuant to the Retention Order, payment of the Restructuring Fee is contingent upon (i) the consummation of a Successful Restructuring, and (ii) an order of the Court approving the fee under a reasonableness standard upon proper application by Blackstone. *See* Retention Order at pp. 2 and 4-5.

16.  On January 31, 2011, the Court issued its *Memorandum Opinion Regarding Objections to Confirmation of First Amended Joint Plan of Reorganization and Recommended Supplemental Findings of Fact and Conclusions of Law* [Docket No. 26154] and *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010* [Docket No. 26155].  On February 15, 2011, the Court issued its *Order Clarifying Memorandum Opinion and Order*

---

[2] As used herein, the "Plan" shall mean the Debtors' *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace and Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders As Modified Through December 23, 2010* [Docket No. 26368].

*Confirming Joint Plan as Amended Through December 23, 2010* [Docket No. 26289] (collectively with Docket Nos. 26154 and 26155, the "Confirmation Order"). All appeals to the Confirmation Order have been dismissed or settled, and the Confirmation Order has become a final order.

17. On February 3, 2014 all of the conditions to effectiveness under § 7.8 of the Plan had been either satisfied or waived, and the Plan became effective. Thus, by February 3, 2014, the Plan had been confirmed by an order of the Court and executed, and a Successful Restructuring had occurred. Therefore, Blackstone is now applying herein to receive the Restructuring Fee.

18. Blackstone respectfully represents that a $5,000,000 fee for its services during the Reorganized Debtors' chapter 11 cases is eminently reasonable. Blackstone's engagement agreements for both in and out of court clients frequently include fees similar to the Restructuring Fee in order to fairly compensate Blackstone for the services it provides and to incentivize Blackstone to achieve a Successful Restructuring. The Retention Order provided that Blackstone's compensation for the services provided to the Debtors during their chapter 11 cases would consist of *both* a Monthly Advisory Fee and the Restructuring Fee--and thus Blackstone provided the services described herein with the expectation that it would receive the Restructuring Fee as part of its compensation (in the event the Debtors' restructuring were successful).

19. Here, Blackstone provided high quality financial advisory services to the Reorganized Debtors during the entirety of their nearly thirteen-year bankruptcy, including, but not limited to:

- Analyzing various restructuring scenarios and the potential impact of those scenarios on the value of the debtors;

- Evaluating the debtors' debt capacity and alternative capital structures, leading to, in part, a more tax-efficient global capital structure;

- Analyzing the debtors' liquidity and financing requirements, including structuring and negotiating highly successful debtor-in-possession and exit financing facilities;

- Attending numerous strategic planning sessions with senior management;

- Assisting management in the complex and years-long negotiation of potential settlement structures with respect to the debtors' asbestos liabilities;

- Assisting management and counsel in the development of multiple versions of plan and disclosure documents, including related financial analyses such as valuation and best interests test;

- Providing testimony at confirmation hearing related to various objections and submitting numerous declarations covering a range of financial topics;

- Assisting counsel in the preparation of examining other financial advisors on financial topics;

- Negotiating with numerous constituencies to obtain approval of the Plan and to resolve disputes over the meaning of the Plan's financial provisions;

- Advising the debtors with respect to the numerous financial issues involved with the implementation of the Plan, such as the issuance of the warrant and the treatment of pre-petition bank debt claims;

- Assisting management in the acquisition of numerous businesses, providing strategic advice and gaining approval of the Court and creditors; and

- Assisting management in the disposition of certain assets including the Washcoat division.

20. $5,000,000 is well within the wide range of similar fees awarded by various courts to financial advisors and other professionals, including awards in other lengthy and complex chapter 11 cases. *See, e.g. In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del. June 24, 2013) [Docket No. 13634] (approving $10.3 million restructuring fee for debtors' financial advisor); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D. N.Y. March 28, 2008) [Docket No. 7748] (approving $6 million success fee for crisis managers); *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D. N.Y. April 12, 2006) [Docket No. 29358] (awarding

$12.5 million success fee for turnaround management services provided to the debtors); *In re Northwestern Corp.*, 344 B.R. 40 (D. Del. 2006) (reversing bankruptcy court's reduction of financial advisor's success fee and instead awarding $5.5 million fee).

21.    Although many of the cases cited above were lengthy by conventional chapter 11 standards, they pale in comparison to the marathon nature of the Reorganized Debtors' nearly thirteen-year case.[3] The Reorganized Debtors' chapter 11 cases were among the largest and longest in United States history, and no one, including Blackstone, could have anticipated the length and complexity of these chapter 11 cases at the time that Blackstone and the Debtors entered into the Engagement Agreement and the Debtors filed the Application.    Blackstone advised the Debtors every step of the way during these prolonged cases, providing invaluable services to keep the Debtors on track for a successful restructuring.

22.    And these cases were, ultimately, successful by any measure.    Under the terms of the Plan, equity holders retained their interests and creditors were paid in full on the amount of their allowed claims. *See* Plan Article 3. Upon their emergence, the Reorganized Debtors were healthy, growing companies who more than weathered the chapter 11 storm--they in fact thrived both operationally and, notably for purposes of this Application, financially.

---

[3] While nearly thirteen years passed between the Debtors' bankruptcy petition and the effective date of the Plan, comparable period was far shorter in the three longest cases cited in ¶ 20 above: approximately four years for the Tribune Company, nearly three years for Enron, and just over two years for Calpine.

23. Given the awards in previous cases and the quality and breadth of services provided by Blackstone, the Restructuring Fee is exceedingly reasonable for financial advisory services rendered over such a long period of time and which led to such a successful result. Therefore, for the reasons provided herein, Blackstone respectfully requests that the Reorganized Debtors be authorized and directed to pay and Blackstone be authorized to receive payment of the Restructuring Fee in full as part of the reimbursement sought in this Application.

## V. **Requested Relief**

24. With this Forty-Seventh Quarterly Interim Application, Blackstone requests that this Court approve the interim allowance of compensation for professional services rendered and the reimbursement of actual and necessary expenses recorded by Blackstone during the Forty-Seventh Interim Period. At all relevant times, Blackstone has been a disinterested person as that term is defined in § 101(14) of the Bankruptcy Code and has not represented or held an interest adverse to the interest of the Debtors.

25. All services for which Blackstone is requesting compensation were performed for or on behalf of the Debtors and not on behalf of any committee, creditor, or other person.

26. During the Forty-Seventh Interim Period, Blackstone has received no payment and no promises for payment from any source (other than the Debtors) for services rendered or to be rendered in any capacity whatsoever in connection with the Debtors' cases.

**WHEREFORE**, Blackstone respectfully requests that this Court enter an order, providing that, for the Forty-Seventh Interim Period:

a) An allowance be made to Blackstone in the sum of $400,000.00 as monthly compensation for reasonable and necessary professional services rendered to the Debtors, the sum of $1,261.96 for reimbursement of actual and necessary costs and expenses incurred, and the amount of $5,000,000.00 for the Restructuring Fee due upon the consummation of the Debtors' bankruptcy case for a total of $5,401,261.96; and the Debtors be authorized and directed to pay to Blackstone's outstanding Monthly Fees and expenses for the Forty-Seventh Interim Period, and Blackstone's outstanding Restructuring Fee, as follows:

| | |
|---|---:|
| Total Fees | $400,000.00 |
| Total Expenses | 1,261.96 |
| Restructuring Fee | 5,000,000.00 |
| Subtotal | 5,401,261.96 |
| Less: Payments Received | (321,259.26) |
| **Amount Due Blackstone** | **$5,080,002.70** |

b) Grant such other and further relief as this Court deems just and proper.

Dated: April 15, 2014

Blackstone Advisory Partners L.P.
Financial Advisor to W. R. Grace & Co.


By:/s/ John James O'Connell *III*
        John James O'Connell III
        Senior Managing Director
        345 Park Avenue
        New York, NY 10154
        (212) 583-5000
        (212) 583-5707 (fax)

11

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |

## CERTIFICATION OF JOHN JAMES O'CONNELL III

John James O'Connell III, under penalty of perjury, certifies as follows:

1.  I am a Senior Managing Director of Blackstone Advisory Partners L.P. ("Blackstone"), a financial advisory firm whose principal address is 345 Park Avenue, New York, New York 10154. I make this certification in accordance with Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") regarding the contents of applications for compensation and expenses.

2.  I have read Blackstone's cumulative quarterly interim application for allowance of compensation for services rendered and reimbursement of expenses as financial advisor to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for the period of October 1, 2013 through February 3, 2014 (the "Forty-Seventh Quarterly Interim Application"). The above-captioned Debtors will be provided with a copy of the Forty-Seventh Quarterly Interim Application. As of the date hereof, the Debtors have not reviewed or approved the Forty-Seventh Quarterly Interim Application.

3.  I have reviewed the requirements of the Guidelines For Reviewing Applications For Compensation And Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Guidelines") and the Local Rules, and I believe that the Forty-Seventh Quarterly Interim Application complies

with the Guidelines and the Local Rules, except as specifically noted in the Forty-Seventh

Quarterly Interim Application.

Dated: April 15, 2014                                        By: /s/ John James O'Connell *III*
                                                                  John James O'Connell III
                                                                  Senior Managing Director