## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Chapter 11 |
| W.R. GRACE & CO., et al., | Case No. 01-01139 (KJC) |
| Reorganized Debtors. | Jointly Administered |
| | **Hearing Date: To be Determined**<br>**Objection Deadline: 4/28/14** |

### MOTION OF LUKINS & ANNIS, P.S. FOR AN ALLOCATION
### OF THE ZAI CLASS ACTION COMMON FUND FEE AWARD

Lukins & Annis, P.S., by and through its undersigned counsel, for its motion for an award of compensation and reimbursement from, and an allocation of, the ZAI Class Action Common Fund Fee Award, states as follows:

### I.      INTRODUCTION

Spokane, Washington law firm Lukins & Annis, P.S. ("L&A") spent approximately five years, more than 8,000 hours of time, and more than $184.097.00 of L&A's funds to develop, initiate, finance, and advance the Zonolite Attic Insulation ("ZAI") litigation. This litigation was led, supervised, and directed by current Class Counsel, Darrell Scott, then a partner at L&A. For this substantial and material work, Class Counsel has not proposed that L&A receive any of the Common Fund Fee Award.[1]

---

[1] While Class Counsel has informally offered L&A very small percentages of the Scott's allocation over the past several years, Class Counsel does not appear to propose any allocation to L&A in ZAI Class Counsel's Motion for Common Fund Fee Award. ECF 31718.

L&A engaged in extensive discovery and investigation into the factual and legal basis for ZAI claims, filed the "bellwether"[2] case of Barbanti v. W.R. Grace & Co., No. 00201756-6 ("the Barbanti Litigation"), and achieved and defended class certification of the Washington Class of ZAI claimants.  As articulated by Class Counsel, the Barbanti Litigation developed, initiated, and prosecuted by L&A "provide[d] a blueprint for resolution of ZAI claims in other jurisdictions and for securing finality in a context where litigation would otherwise persist for years, both inside and outside of bankruptcy."[3]  The benefit to the Class provided by L&A could not be clearer.

Nonetheless, since Mr. Scott's voluntary departure from L&A in December 2004, Class Counsel has engaged in a systematic effort to discount the value of L&A's contribution to the ZAI claims in order to maximize their own recovery.  The Court has now approved a Common Fund Fee Award of 25 percent of the first two payments to the Class under the Class Settlement Agreement, a Common Fund Fee Award of approximately $16,000,000.[4]  Class Counsel, Ness, and McGarvey have reached an unscrutinized allocation of the Common Fund Fee Award amongst themselves that is believed to be:

---

[2] ZAI Claimants' Memorandum in Support of Preliminary Approval of Class Settlement and Certification of the U.S. ZAI Class.  ECF No. 20275-2.

[3] Reply to Debtor's Opposition to ZAI Claimants' Motion for Order Recognizing and Permitting Filing of a Washington Class Proof of Claim.  ECF 18526.

[4] The Court's Order Appointing Rule 706 Expert Regarding Lukins & Annis Fee Allocation Claim (ECF No. 31986) requires L&A to provide justification for an allocation of the 25 percent Common Fund Fee Award already approved by the Court ("Lukins & Annis shall file with the Court its motion and accompanying documents supporting its claim to **an allocation of the ZAI class action common fund fee and costs**.")(emphasis added).  L&A does not propose or request any additional fees or costs from the Common Fund, other than what has already by awarded by the Court.  To the extent a Motion under Rule 54 was contemplated, L&A so moves herein and expressly incorporates by reference the facts and arguments made in L&A's Partial Joinder in Motion to Approve Reasonableness of Common Fund Fee Award (ECF No. 31718), and the facts and arguments made by Class Counsel made in support of a 25 percent common fund fee award.  ZAI Class Counsel's Motion for Common Fund Fee Award.  ECF No. 31794.

(1) The Scott Law Group ("Scott") receiving approximately 42 percent of the Common Fund Fee Award (approximately $6,675,000.00);

(2) Edward J. Westbrook and Richardson, Patrick, Westbrook & Brickman, LLC (collectively, "Westbrook") receiving approximately 42 percent of the Common Fund Fee Award (approximately $6,675,000.00);

(3) Elizabeth Cabraser and Lieff, Cabraser & Heimann (collectively, "Lieff") receiving 15 percent of the Common Fund Fee Award (approximately $2,400,000.00);

(4) McGarvey, Heberling, Sullivan & McGarvey ("McGarvey") receiving $250,000 from the Common Fund Fee Award; and

(5) Ness, Motley, Loadholt, Richardson & Poole ("Ness") receiving 10 percent of Westbrook's allocation of the Common Fund Fee Award (approximately $667,500.00).[5]

(6) L&A receiving nothing.

Class Counsel's self-interested allocation does not accurately reflect the relative benefit provided to the Class or contribution to the settlement by all counsel involved.  L&A's significant time investigating, developing, and litigating the Barbanti Litigation and class certification and pursuing the ZAI claims in the bankruptcy proceedings benefitted the ZAI Class and was essential to the successful settlement achieved in this matter.  Accordingly, L&A is entitled to a representative allocation  and requests an award of fees and costs, to be paid solely from the Common Fund Fee Award.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.  L&A's Early Involvement in ZAI Class-Wide Litigation.

---

[5]The actual allocation proposed by Class Counsel has never been disclosed to L&A in writing or to the Court.  L&A's understanding as to the foregoing allocation is based upon conversations with Class Counsel.  See Declaration of Jed W. Morris, attached hereto as Exhibit A.

Beginning in December 1999, L&A began investigating the factual and legal basis for potential ZAI claims against W.R. Grace & Co.  L&A is a Pacific Northwest firm with strong ties to Northern Montana and the Libby, Montana area where W.R. Grace & Co. mined vermiculite used to manufacture ZAI.[6]  Darrell Scott was the L&A attorney directing and supervising the L&A team.[7]

Initially, L&A investigated class-wide personal injury and environmental claims against W.R. Grace & Co. in Montana.   L&A aimed substantial firm resources at quickly initiating class-wide medical monitoring and environmental remediation claims and developing a claimant/class base in Montana.  Eventually, class-wide claims were filed against W.R. Grace & Co.  (Dorrington v. W.R. Grace & Co., Lewis & Clark County, Montana ["the Dorrington Litigation"]).  These claims were investigated, developed, and pursued by L&A, along with Lieff, Ness, and McGarvey.[8]

By at least early 2000, L&A's focus on the potential ZAI class-wide claims broadened to include Washington State class ZAI property damage claims.  At the point when L&A agreed to

---

[6] Mischelle R. Fulgham, an L&A attorney and now principal, is from Libby, Montana, and her family still lives there.  At least two other attorneys who billed substantial time for L&A – Michael Black and Kelly Konkright, are also from Northwestern Montana.  Declaration of Jed W. Morris.

[7] The description of Mr. Scott's qualifications and experience, as outlined by Class Counsel in support of ZAI Class Counsel's Motion for Common Fund Fee Award (ECF No. 31794), is equally applicable to the relevant period during which he was a partner at L&A leading the ZAI litigation team, and is incorporated herein by reference.

[8] Efforts by L&A in the Dorrington Litigation were applicable to all types of potential ZAI claims.  The Dorrington Litigation included many hours of applicable factual and investigational research on Libby, Montana, W.R. Grace & Co.'s corporate structures and subsidiaries; keeping abreast of Environmental Protection Agency ("EPA") and Department of Environmental Quality ("DEQ") investigations; site visits; and materials testing.  All of this time generally contributed to the knowledge base for the ZAI litigation, helped develop liability and damage theories, and helped develop the class base.  Lieff, Ness, and McGarvey time records all include hours dedicated to the Dorrington Litigation and related ZAI claims development. See Declaration of Laura J. Black, attached hereto as Exhibit B, at Exhibit 1.

take these claims on a contingency fee basis, ZAI claims were in their infancy.  As recognized by

Class Counsel:

> ZAI claims "plowed new ground in asbestos damage litigation.  Unlike
> "traditional" asbestos property damage claims, which involved commercial
> products where asbestos was intentionally added, ZAI property damage claims
> involved a consumer product contaminated with asbestos and sold to ordinary
> homeowners for "do-it-yourself" installation.  The type of asbestos (Libby
> amphibole) in ZAI further distinguished ZAI claims from "traditional" asbestos
> building cases which involved asbestos (chrysotile).[9]

Thus, in addition to the investigation and research that had already been done in the Dorrington

Litigation, a substantial amount of factual and legal research was necessary in order to prepare,

file, and litigate what would become the "bellwether"[10] class action with respect to ZAI property

damage claims.  In furtherance of this litigation, L&A spent hundreds of hours testing materials,

investigating contaminated homes, locating and working with experts, investigating W.R. Grace,

locating possible class representatives (one who would later serve as a ZAI Class

Representative), and using its connections and established presence as ZAI counsel in Libby,

Montana to start identifying and gathering potential class members.[11]

On or about March 24, 2000, L&A filed an action in Spokane County Superior Court in

the name of Marco Barbanti, and on behalf of owners and occupiers of residences in Washington

State, seeking relief in connection with ZAI ("the Barbanti Litigation").  The Barbanti Litigation

sought class-wide relief of a notification program regarding ZAI, an education program that

advises homeowners how to manage ZAI, and monetary damages for ZAI removal and

abatement.[12]

---

[9] ECF No.31718.
[10] ECF No. 18526.
[11] Declaration of Laura J. Black, Exhibit 1.
[12] ECF No. 18324.

L&A extensively researched, drafted, and filed a motion for class certification in the Barbanti Litigation on June 1, 2000.  The parties conducted additional discovery related to the class certification motion, including a two-day deposition of Marco Barbanti, five depositions of other ZAI homeowners, six depositions of Plaintiff's experts, and day-long air sampling and inspections of six Washington homes containing ZAI.  After a hearing, the trial court entered an Order of Class Certification on December 19, 2000, appointing Barbanti as a representative of a class comprised of "[a]ll owners or occupiers of real property located in the state of Washington in which Zonolite Attic Insulation has been installed."  The trial court also appointed L&A as lead class counsel.  L&A defended W.R. Grace's multiple attacks on the class certification, including a motion for reconsideration, a motion for discretionary review of the order certifying the class, and a motion seeking to change the definition of the class and thereby narrow the scope of the class action. [13]

L&A also worked with the trial court to develop a notice to class members of the pendency of the Washington class action.  On April 2, 2001, very shortly before publication of the notice, W.R. Grace filed for bankruptcy protection in this Court.[14]

In all, L&A spent approximately 2,425 hours directly investigating, developing, and pursuing the Barbanti Litigation prior to W.R. Grace & Co.'s bankruptcy filing.  Mr. Scott's time was approximately 1,041 hours of the total.[15]

### B.  L&A's Post-Bankruptcy Work on Behalf of the Putative ZAI Class.

---

[13] *Id.*

[14] *Id.*

[15] Declaration of Laura J. Black, Exhibit 1.

L&A continued to work directly on behalf of the ZAI property damage claimants after W.R. Grace & Co. filed for bankruptcy from April 2001 through Mr. Scott's departure from L&A in December 2004.   Post-bankruptcy filing, L&A spent approximately 3,177 hours directly on behalf of the ZAI claims.[16]

For example, Washington Class Representative Mr. Barbanti promptly appeared in the bankruptcy action, petitioned the United States Trustee to form an official committee of property damage creditors, and sought to be appointed to that committee as class representative of the Washington Class.  L&A and Mr. Barbanti attended the first meeting of creditors, wherein the committee for property damage creditors was created and to which Mr. Barbanti was appointed. In appointing Mr. Barbanti, the United States Trustee expressly referenced the certified Barbanti Litigation and Mr. Barbanti's status as class representative in the Barbanti Litigation.[17]

Also in furtherance of the ZAI claims in the bankruptcy action, L&A performed extensive legal and factual research, worked on proof of claim issues, monitored and participated in the bankruptcy proceedings as it related to ZAI claims, drafted pleadings, developed damage theories, and communicated with claimants/potential class members, among other work.[18]  As part of this time, L&A expended approximately 376 hours of time on the Property Damage Creditors' Committee and representing Mr. Barbanti as the class representative of the Washington Class on the Committee, which was a direct benefit to the Class.[19]  Like Class

---

[16] *Id.*
[17] ECF No. 18324.
[18] Declaration of Laura J. Black, Exhibit 2.
[19] *Id.*

Counsel, L&A's substantial post-bankruptcy time was generally spent working within the bankruptcy action to develop a nationwide ZAI property damage class action suit.[20]

### C. Mr. Scott's Departure From L&A With the ZAI Litigation, Files, and Class Action Team.

During the middle of what was known as the "Science Trial," which took place during the bankruptcy action, Mr. Scott abruptly announced his voluntary departure from L&A on December 4, 2004. When Mr. Scott left, he took the ZAI litigation, the voluminous ZAI claim files, and his class action team with him. [21]

At that point, the vast majority of the expensive and time-consuming development of the ZAI class action had been accomplished.  In the almost five years before Mr. Scott's departure, L&A had spent more than 5,602 hours of time, and more than $184,097.00 in hard costs in furtherance of the Barbanti Litigation and ZAI claims.[22]  By comparison, Scott's time records reflect approximately 5,438 hours expended between the time he left L&A in December 2004 and the approval of the ZAI Class Settlement in 2009.[23]

### D. Continued Reliance on L&A Work in ZAI Claims Litigation and Settlement With W.R. Grace & Co.

The Science Trial concluded with a ruling from the Court in December 2006, essentially finding no "unreasonable risk of harm" with respect to ZAI.[24]  At that point, the ZAI claimants pushed forward viable remaining claims under theories of strict liability, a risk/utility analysis,

---

[20] *Id.*
[21] Declaration of Jed W. Morris.
[22] Declaration of Laura J. Black, Exhibits 1 and 2.
[23] *Id.* at Ex.2
[24] *In re W.R. Grace & Co.,* 355 B.R. 462, 493-94 (D. Del. 2006).

the consumer expectations test, negligent manufacture and sale, unfair and deceptive business

practices, and state strict liability laws.[25]

To that end, counsel for the putative ZAI class moved the Court to continue the process

that had been initiated by L&A – recognizing a proof of claim on behalf of the Washington

Class, which ZAI counsel characterized as "an important purpose in these bankruptcy

proceedings."[26]  The basis for the request was the work and progress on behalf of the

Washington Class accomplished by the firms that worked on behalf of Barbanti, primarily

including L&A:

> Recognition of the certified Washington class action and the proof of claim filed
> on behalf of that class is not only appropriate, it serves an important purpose in
> these bankruptcy proceedings.  A class proof of claim permits Grace's liabilities
> to an unknown, unknowing, and deceived community, to be collectively
> determined and sensibly resolved.  A class proof of claim holds prospect for
> securing meaningful, equitable, programmatic benefits for ZAI homeowners,
> avoiding further and future contamination and exposure, while providing for
> homeowner assistance when and if ZAI removal or abatement become necessary.
> **The Washington class claim, further, provides a blueprint for resolution of**
> **ZAI claims in other jurisdictions and for securing finality in a context where**
> **litigation would otherwise persist for years, both inside and outside of**
> **bankruptcy.**[27]

Thereafter, on October 29, 2008, counsel for the putative ZAI class moved the Court to

consolidate and resolve the Barbanti Proof of Claim and the myriad of similarly-situated class-

wide proofs of claim through designated class representatives and class counsel.  Counsel built

upon the foundation created in the Barbanti Litigation and success of that class certification

motion by requesting identical relief (notification system, education, and damages for removal

and abatement) and expressly relying on the Class Certification in the Barbanti Litigation: "This

---

[25] ZAI Claimants' Memorandum of Points and Authorities in Support of United States Zonolite Claimants
Motion for Class Certification (ECF No. 19911),
[26] ECF No. 18324.
[27] ECF No. 18526 (emphasis added).

Court, **<u>following the lead of the Washington court</u>**, may certify a class pursuant to Rule 23(b)(2) aimed at securing this equitable relief."[28]  Within one month of the filing of the Motion to certify the Class and Special Counsel's urging to "follow[] the lead of the Washington court" with respect to class certification, the parties had reached an agreement on the principal terms of a settlement resolving the putative ZAI Class claims.[29]

The importance of the work toward settlement during this time-frame by Class Counsel and the successful settlement they achieved are not overlooked by L&A.  However, the resulting Class Settlement Agreement and repeated references to the Barbanti Litigation and work done by L&A, leave no doubt as to the benefit of L&A's work to the Class and to Class Counsel successfully achieving that settlement:

> WHEREAS Class Representatives, through Class Counsel, commenced a class action on March 24, 2000 (<u>Barbanti v. W.R. Grace & Co.</u>, No. 00201756-6 (Wash. Sup.)) in the Superior Court for Spokane County, Washington on behalf of a class of ZAI homeowners in Washington State; and

> WHEREAS the Superior Court of Spokane County issued an order on December 12, 2000, certifying the <u>Barbanti</u> class for purposes of seeking injunctive relief, which W.R. Grace sought to appeal through a Notice for Discretionary Review that remains pending; and

> WHEREAS Class Counsel Commenced on April 14, 2000, a proposed class action in the United States District Court of Montana, Price v. W. R. Grace, et al, Case No. CV-00-71-M-DWM) on behalf of ZAI homeowners throughout the United States, other than those residing in Washington State; and

> WHEREAS other proposed ZAI class actions were filed against W.R. Grace in various federal district courts; and
>
>                                                                ***

---

[28] ECF No.19911.

[29] Term Sheet for Resolution of U.S. Zonolite Attic Insulation Claims, ECF 20275-3.

WHEREAS Class Counsel filed a motion requesting that the Bankruptcy Court recognize the <u>Barbanti</u> class for the purpose of permitting the filing of a ZAI class proof of claim in March 2008; and

\*\*\*

WHEREAS Class Counsel **in the course of this and similar litigation, including the Barbanti case, have conducted exhaustive discovery and investigations into the facts underlying the U.S. ZAI Claims, have made a thorough examination of the legal principles applicable to the holders of U.S. ZAI Claims within the Class, have litigated certain of those issues with W.R. Grace, both prior to and during the Chapter 11 Cases, and have concluded, based on their extensive and now mature experience with ZAI,** that a class settlement with W.R. Grace in the amount and terms hereinafter set forth is fair, reasonable, and adequate, and is in the best interest of the Class.[30]

The discovery, investigation, legal research, litigation, and "mature experience" expressly cited in the recitals of the Settlement Agreement were gained in large part through work done by L&A.  By Class Counsel's own admission, the work done by L&A contributed significantly to the settlement.

Through the December 2009 Class Settlement Agreement, attorneys Mr. Westbrook, Mr. Scott, and Ms. Cabraser and their respective firms also sought to be recognized as Class Counsel as part of the agreement between the parties.[31]  As part of the approval process, Class Counsel expressly relied upon the "bellwether" Barbanti Litigation, the prior certification of the Washington Class, and L&A clients Mr. Barbanti and Mr. Busch's service as Class Representatives in the Barbanti Litigation, which took place at L&A.[32]  L&A supported the settlement, and reserved its right to claim a fair allocation from the Common Fund.[33]

---

[30] Class Settlement Agreement.  ECF No. 20275-3. (emphasis added).
[31] *Id.*
[32] ZAI Claimants' Memorandum in Support of Preliminary Approval of Class Settlement and Certification of the U.S. ZAI Class.  ECF No. 20275-2,
[33] Limited Objection of Lukins & Annis, P.S. to Motion for Order of Preliminary Approval of Class Settlement and Certification of the ZAI Class.  ECF No. 20383.

The Court preliminarily approved the settlement and proposed Class Representatives and Class Counsel by Order entered on January 16, 2009.[34]  Following notice to the Class, the Class Settlement was approved by the Court on April 1, 2009.[35]  At that point, ZAI Class, led by former L&A client Marco Barbanti, and newly-appointed Class Counsel awaited confirmation of the Debtors' First Amended Plan, and the final resolution of all issues and appeals, unrelated to the ZAI Litigation.

### E.  Current Motion.

Almost exactly five years later, following the occurrence of the effective date of the Debtors' plan, ZAI Class Counsel moved the Court for a Common Fund Fee Award of 25 percent of the first two of the twelve potential payments in the class settlement ("the Common Fund Fee Award"), approximately $16,000,000.[36]  L&A joined in the portion of the Motion requesting the proposed 25 percent Common Fund Fee Award as reasonable, with respect to the quality and quantity of work performed on behalf of the Class, particularly when L&A's additional hours were also included in the analysis.[37]  However, L&A objected to the unreviewed allocation of the Common Fund Fee Award.[38]

The Court has granted that motion, approved the Common Fund Fee Award (subject to further modification following the determination of L&A's claim for an allocation), directed L&A to file a motion supporting its claim to an allocation of the Common Fund Fee Award, and

---

[34] Revised Order and Notice Re: ZAI Motion for Preliminary Approval of ZAI Class Settlement and Provisional Class Certification.  ECF 20535.  It is axiomatic that Class Counsel could not and did not represent the collective interests of the putative ZAI Class prior to January 16, 2009.
[35] Order.  ECF No. 21174.
[36] ECF No. 31718.
[37] ECF No. 31794.
[38] ECF No. 31718..

referred the issue to a Rule 706 expert for resolution.[39]  Under the ZAI Class Settlement, the

aggregate fees awarded out of the Common Fund are limited to 25 percent.  Thus, L&A seeks

only a portion of the 25 percent Common Fund Fee Allocation reflected in the Class Settlement

and approved by the Court.

### III.    LEGAL ANALYSIS

"The common fund doctrine is essentially a matter of equity…and gives courts

significant flexibility in setting attorneys' fees." *In re Cendent Corp. Sec. Litig.,* 404 F.3d 173,

187 (3d Cir. 2005) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)).  Courts have the

inherent power to supervise and manage the disbursement of attorney fees from settlement

awards.  *Dunn v. H.K. Porter Co.,* 602 F.2d 1105, 1109 (3rd Cir. 1979).

In a class action settlement, the court has an independent duty under Federal Rule of Civil

Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided

up fairly among plaintiffs' counsel.  *Drazin v. Horizon Blue Cross Blue Shield of New Jersey,*

*Inc.,* 528 Fed. Appx. 211, 214 (3d Cir. 2013).  "And a proper allocation should reflect the

relative contribution that the various plaintiffs' firms made to the successful outcome of the

litigation." *Id*.

### A.  L&A is Entitled to an Allocation From the Common Fund Fee Award Because its Work Conferred a Benefit on the Class and Contributed to the Settlement.

Generally, an attorney whose actions have conferred a benefit upon a given group or

class of litigants may file a claim for reasonable compensation for his efforts.  *Brytus v. Spang &*

*Co.*, 203 F.3d 238, 242 (3d Cir. 2000).  An attorney "whose efforts create, discover, increase or

preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of

---

[39] Order.  ECF No. 31986.

his litigation, including attorneys' fees." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995); *see also Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Co.*, 540 F.2d 102, 112 (3d Cir. 1976).

While it has proved difficult to precisely define what constitutes a "benefit" to a class, it is clear that there "may be a range of indirect benefits to a class that are compensable out of a common fund." *Sprague v. Taconic Nat'l Bank,* 307 U.S. 161 (1939); *see also In re Fine Paper Antitrust Litig.,* 98 F.R.D. 48, 117-18 (E.D. Pa. 1983) (reversed in part on other grounds at 751 F.2d 562 (3d Cir. 1984)) (noting that the notion of a "benefit" to a class may be "flexible"). Hours given "the most recognition" in this analysis include those spent "taking depositions, participating in hearings or trials, actively participating in developing the appropriate litigation strategies and tactics, … drafting briefs, actively participating in court conferences, arguing motions, negotiating with opposing counsel to reach a settlement, and actively managing and organizing the administrative aspects of a case." *Turner v. Murphy Oil USA, Inc.,* 582 F. Supp. 2d 797, 810-11 (E.D. La. 2008).[40]

In fact, attorney work in the investigation and development stages of a class action has been specifically recognized as warranting an allocation from a common fund fee award:

---

[40] More specifically, benefit to a Class and contributions to settlement have been recognized under circumstances where counsel's contributions to the class and settlement have included some combination of tasks necessary to develop and initiate class action litigation, such as: early investigation and preservation of evidence, conducting and coordinating pretrial discovery, factual investigation, determining appropriate remedial protocols, attending public hearings, work with government agencies, drafting pleadings, coordinating document production, reviewing and indexing documents, attending status and discovery conferences, defending discovery motions participating in conference calls, participating in expert inspections, drafting complaints, analyzing expert reports, researching legal issues, inspections and testing, securing class representatives, drafting discovery requests, taking depositions, developing litigation strategies, developing settlement strategies, settlement negotiation, developing the claims of "bellwether" plaintiffs, work on the claims process, developing a damages theory, work on class certification (*Evans v. Tin, Inc.,* 2013 WL 4501061, *16-20; *see also Turner v. Murphy Oil USA, Inc.,* 582 F. Supp. 2d 797, 813-827 (2008)); and shouldering the financial burden of pursuing a complex and novel class action litigation. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993).

> Class actions, because of their very complexity and scope, generally take more financial resources than the normal case. They involve tens or hundreds or even thousands of claimants; usually requiring dozens or hundreds of depositions; entail the production, review and organization of thousands or sometimes millions of documents, and necessitate the location and consultation with numerous experts. And that is just the beginning of the development of a class action. All of this activity requires considerable economic expenditures which are usually advanced by plaintiffs' counsel. At the conclusion of the case, if they are successful, it is appropriate to reimburse plaintiffs' counsel for these expenditures.

*Id.* at 809; *see also Trans Union Corp.,* 2009 WL 4799954, *16-20 (allocating common fund fee award to firms providing similar work developing class action claims).

L&A's work developing the Barbanti Litigation and litigating the ZAI claims in the bankruptcy is the type of work that courts give "the most recognition" in determining whether work benefited the Class. *See id.* In addition to thousands of hours investigating W.R. Grace & Co. and potential ZAI claims, L&A drafted numerous legal briefs, took and defended relevant fact and expert depositions, conducted discovery, argued motions, and managed the administrative aspects of the Barbanti Litigation. In addition, L&A spent thousands of hours litigating ZAI claims and issues in the bankruptcy proceeding and hundreds of hours working on the Property Damage Creditors' Committee. In all, approximately 5,602 hours of L&A's time was directly expended on investigating, developing, and litigating the Barbanti Litigation and in litigating the ZAI property damage claims in the Bankruptcy Proceedings.[41]

The link between the investigation, research, and litigation done by L&A in the Barbanti Litigation and the settlement is undeniable. L&A's class certification in the Barbanti Litigation served as the "blueprint" for resolving the ZAI claims in the bankruptcy action.[42] In addition, the Class Settlement Agreement makes numerous references to the Barbanti Litigation, the

---

[41] Declaration of Laura J. Black, Exhibits 1, 2.
[42] ECF No. 18526.

investigation, discovery, and litigation (conducted in large part by L&A), and class certification

achieved by L&A.[43]  A proven track record of achieving and defending class-wide recognition

for ZAI property damage claims in the Barbanti Litigation undoubtedly influenced the settlement

in a positive way.  Further, without the investigation and research performed in large part by

L&A, Class Counsel would have lacked the factual and legal background to navigate the claims

through the bankruptcy process and to negotiate a meaningful settlement.

L&A's significant investment in the Barbanti Litigation and work on the ZAI claims is

incontrovertible, as is the resulting benefit to the Class and contribution to the ultimate

settlement.  Accordingly, L&A is entitled to an allocation from the Common Fund Fee Award.

### B.  L&A Requests a 25 Percent Allocation of the Common Fund Fee Award.

Class Counsel, Ness, and McGarvey have reached an agreement amongst themselves as

to the allocation of the Common Fund Fee Award to the exclusion of L&A.  However, it is well-

established that plaintiffs' counsel may not simply divide the award "in any manner they deem

satisfactory under a private fee sharing agreement."  *See In re Agent Orange Product Liability

Litig.,* 818 F.2d 216, 223 (2d Cir. 1987).  Rather, the Court must ensure a fair and equitable

allocation of the Common Fund Fee Award.  *See e.g., Class Plaintiffs v. Jaffee Schlesinger, P.A.,*

19 F.3d 1306, 1308 (9th Cir. 1976) (rejecting an agreed-upon fee allocation that allocated fees

for work that did not benefit the class).  In this case, that scrutiny requires the Court to determine

the benefit to the Class provided by <u>all of the attorneys</u> seeking an allocation of the Common

Fund Fee Award.

---

[43] ECF No. 20275-3.

While certain well-established principles govern a court's discretion at the common fund fee award stage, there is a substantial lack of guidance on the principles applicable to the allocation of fee awards to the attorneys eligible to share in a common fund fee award.  *See e.g., In re FPI/Agretech Sec. Litig.,* 105 F.3d 469, 434 (9th Cir. 1997) ("There is very little case law concerning the allocation of attorneys' fees among co-counsel"); *In re Copley Pharm., Inc.,* 50 F. Supp. 2d 1141, 1150, n. 8 (D. Wyo. 1999) (noting the "dearth" of applicable law on issue of allocating a percentage fee award).

However, it is generally held that apportionment of a common fund fee award among counsel is "largely dependent on an analysis of the amount, nature, and significance of the work of each counsel and how it relates to the work of the other counsel."  *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 232 (5th Cir. 2008); *Turner v. Murphy Oil USA, Inc¸* 582 F. Supp. 2d 797 (E.D. La. 2008).  The Court must look to what the attorneys "actually did and how it benefitted the class," as well as "whether the allocation is reflective of the relative work performed (*i.e.,* lodestars)."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 342 (3d Cir. 1998); *In re Trans Union Corp. Privacy Litig.,* 2009 WL 4799954 (Dec. 9, 2009), *23.  Thus, the focus is on "the question of 'contribution,' with attention paid to factors such as relative risk and lodestars."  *Trans Union Corp.,* 2009 WL 4799954, *23.

L&A contributed greatly to the ZAI Class and settlement by shouldering – both in terms of financial investment and substantial risk of non-payment – the vast amount of foundational work underlying the claims.  Again, more than 5,602 hours of the type of investigation, discovery, and litigation work expressly recognized by the Courts as providing a benefit to a Class and

recognized by Class Counsel was done by L&A.[44]  L&A's class certification in the Barbanti

Litigation provided a "blueprint" for the resolution of ZAI claims in the bankruptcy action.[45]

L&A's work provided Class Counsel with the powerful weapon of tested class certification and

thousands of hours of factual and legal ammunition to settle the case.

L&A took a considerable risk in investing money, firm resources, and attorney time in

the ZAI Litigation at a time when ZAI litigation was relatively unexplored territory.  In any class

action, there is inherently more risk at the outset, and law firms that are involved at the inception

of the class action assume more risk than in the later stages of litigation.  *See In re Copley*

*Pharmaceutical, Inc., "Albuterol" Products Liability Litigation*, 50 F. Supp. 2d 1141, 1155 (D.

Wyo. 1999); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597-98 (N.D. Ill. 2011).

In contrast, it has been recognized that there is essentially "no risk" after a settlement is reached.

*See e.g., Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1315 (8th Cir. 1981).

L&A became involved in ZAI litigation before any ZAI class had been certified or class

settlement had been reached; there was no certainty of recovery.  L&A's efforts during this risky

time-frame proved crucial to settlement.  The risk factor certainly favors L&A, Ness, McGarvey,

and Lieff, who were involved from the inception of ZAI litigation and invested hours in

developing ZAI claims.

L&A has spent more time on the ZAI litigation than any other firm involved.  In all,

L&A invested a total of 3,970 partner/principal hours, 885 associate hours and 3,325

paralegal/support personnel hours in the ZAI-related litigation.[46]  "As with the determination of

---

[44] Declaration of Laura J. Black, Exhibits 1, 2.
[45] ECF No. 18526.
[46] Declaration of Laura J. Black.

the total fee award, a cross-check of the lodestars against [the allocation] is useful to determine whether any assumptions under the analysis might warrant reconsideration." *Trans Union Corp.,* 2009 WL 4799954, *25.  L&A's lodestar yield using Kirkland & Ellis hours is $4,967,500.00.[47]

The following tables further support L&A's reasonable request of a 25 percent allocation of the Common Fund Fee Award.  Tables 1 through 3 outline each counsels' hours during the major time-frames involved in the ZAI claims.  Table 4 compares: (1) total and percentage of total hours; (3) lodestar yield; (4) proposed allocation by Class Counsel; and (5) proposed allocation by L&A.  Review and analysis of these tables easily puts L&A <u>at least</u> on par with Class Counsel.

---

[47] *Id.*

**Chart 1: Pre-Bankruptcy Filing Through Bankruptcy Filing Hours - Highest Risk**

| Firm | Hours[48] | Type of Hours |
|---|---|---|
| L&A | 2,425 | Investigation, development and litigation in the Barbanti Litigation: Factual investigation; written discovery; depositions; work with experts; materials testing, sampling, inspections; motion practice; legal research; court hearings; drafting pleadings; litigation strategy; class certification. |
|  | 1,927 | Dorrington Litigation: Factual investigation; written discovery; depositions; motion practice; legal research; court hearings; drafting pleadings; litigation strategy. |
| Scott | 0 | n/a |
| Westbrook | 0 | n/a |
| Lieff | 1,983 | Barbanti Litigation and Dorrington Litigation: Class action strategy, legal research on both medical monitoring (Dorrington Litigation) and property damage (Barbanti Litigation) claims; work on developing multi-district litigation; attending hearing; working on discovery. |
| Ness | 50 | Work on Montana multi-district litigation: Class certification notice; reviewing memos and faxes; settlement discussions; miscellaneous motion practice. |
|  | 1,766 | Work on Barbanti Litigation: Preliminary injunction and class action notification; conferences; participate in discovery; work with experts; document management. |
|  | 1,203 | Work on Dorrington litigation: Investigate class-wide medical monitoring claims; work on pleadings; discovery; motion for preliminary injunction; trial preparation. |
| McGarvey[49] | 774 | Factual investigation of W.R. Grace & Co.: Review of documents; testing; document management; corporate entities. |
|  | 251 | Barbanti Litigation: Work on pleadings; attend hearing. |

[48] The number and categorization of hours are taken from the respective time records produced by Class Counsel and represent L&A's best subjective efforts to characterize and quantify the hours spent during these time periods.  *See* Declaration of Laura J. Black.
[49] The summaries of McGarvey's time herein are taken directly from McGarvey's summaries of its time provided by Class Counsel.

| Chart 2: Post-Bankruptcy Filing Through Approval of ZAI Class Settlement Hours - Medium to High Risk | | |
|---|---|---|

| Firm | Hours | Type of Hours |
|---|---|---|
| L&A | 2,799 | ZAI Litigation: legal research on stay issues; developing litigation strategy; maintaining a class/claimant database; attending hearings; researching bankruptcy and class issues; communicating with clients; attending, facilitating, and traveling to creditors' meetings; notifying the Court of the Barbanti Litigation and class certification and of issues related to class treatment of ZAI claims; responding to objections to proofs of claim; moving to file a class-wide proof of claim. |
| | 378 | Property Damage Creditors' Committee. |
| | 652 | Continued work on Dorrington Litigation. |
| Scott | 5,043 | ZAI Litigation: 2019 statements; communications with class; proof of claims issues; notice issues; damages work; discovery; class certification; hearings; plan confirmation; legal research – statute of limitations, economic loss, CPA, product liability, common fund fee award; settlement discussions; internet research. |
| | 305 | Property Damage Creditors' Committee. |
| Westbrook | 3,642 | ZAI Litigation: Claims Processing (answering phone calls, updating database, documenting claims); research; preparation for 7/22/08 hearing (**58 hours**); mediation; relief from stay issues; preparation for and attendance at 2/25/08 hearing (**113 hours**); class certification motion; science trial; bankruptcy hearings; meetings; settlement conference and settlement issues; proof of claims issues. |
| | 100 | Property Damage Creditors' Committee. |
| Lieff | 2,280 | Litigation of ZAI Claims: Bankruptcy strategy and legal research; seeking relief from stay; creditors' meetings; collaboration with EPA; notice to claimants; proof of claims; science trial; damages; correspondence with counsel; reviewing pleadings; researching jury instructions; communications with counsel; conference calls. |
| | 81 | Property Damage Creditors' Committee. |
| | 30 | Continued work on Dorrington litigation. |
| | 21 | Ministerial work: Distributing mail; retrieving documents. |
| Ness | 0 | n/a |
| McGarvey | 128 | Sealed Air Asset Recovery. |
| | 3,614 | Litigation of ZAI Claims: ZAI brief; "marshalling" evidence and documents; committees; hearings; meetings. |

**Chart 3: Post-Settlement Through Bankruptcy Plan Confirmation Hours - Lowest to No Risk**

| Firm | Hours | Type of Hours |
|---|---|---|
| L&A | 179[50] | Monitoring bankruptcy proceedings and plan confirmation. |
| Scott | 2,597 | Monitoring bankruptcy proceedings and plan confirmation; reviewing proofs of claim; phone calls from class members; notice to class; fee issues; depositions; Property Damage Creditors' Committee. |
| Westbrook | 3,646 | Monitoring bankruptcy proceedings and plan confirmation; correspondence with counsel; communications with Class members; "emergence" issues; Canadian ZAI issues. |
| | 16 | Communications with L&A. |
| | 15 | Property Damage Creditors' Committee. |
| Lieff | 297 | Monitoring bankruptcy proceedings and plan confirmation. |
| Ness | 0 | n/a |
| McGarvey | 0 | n/a |

---

[50] L&A is not requesting that any hours post-departure of Scott be compensated but is providing these hours as a point of comparison.

**Chart 4: Comparison of Total Hours and Proposed Common Fund Fee Awards**

| Firm | Total Hours | Percentage of Hours (31,406) | Lodestar Yield (Kirkland & Rates) | Percentage of Common Fund Fee Award Proposed by Class Counsel | Percentage of Common Fund Fee Award Proposed by L&A |
|---|---|---|---|---|---|
| L&A | 8,181[51] | 26.04% | $4,967.984.00 | 0 ($0) | 25% ($4,000,000.00) |
| Scott | 7,137 | 22.71% | $3,862,750.00 | Approximately 42% ($6,675,000.00) | 25% ($4,000,000.00) |
| Westbrook | 7,420 | 23.62% | $5,151,100.00 | Approximately 42% ($6,675,000.00)[52] | 25% $4,000,000.00) |
| Lieff | 4,624 | 14.72% | $3,097,950.00 | Approximately 15% ($2,400,000.00) | 17% ($2,720,000.00) |
| Ness | 3,019 | 9.61% | Unknown | 10% of Westbrook's Allocation ($667,500.00) | 5% $800,000 |
| McGarvey | 1,025 | 3.3% | Unknown | 1.5% ($250,000 payment) | 3% $480,000 |

---

[51] This total does not include time spent monitoring the bankruptcy action after Mr. Scott's departure from L&A, which L&A is not seeking.

[52] Under the proposed allocation, Westbrook's fees would presumably be reduced by the 10 percent of those fees allocated to Ness.

Further analysis of the foregoing charts highlights the relative value provided by L&A.

• L&A has the most hours of any counsel involved – 8,181 hours, which is 26.04% of the total hours expended by all counsel. All of L&A's hours were prior to settlement, when there was the highest risk of non-payment. The overwhelming majority of L&A's hours (approximately 5,602) were spent directly investigating and developing the "bellwether" Barbanti Litigation, achieving and defending State-wide class certification, pursuing the ZAI claims in the bankruptcy action, and representing claimants on the Property Damage Creditors' Committee. The lodestar yield for L&A's hours is $4,967,984.00, which is the second highest of the collective group. **Class Counsel proposes that L&A receive nothing for this work; L&A proposes that L&A receive approximately $4,000,000.00 for this work** [53]

• Scott has 7,137 hours, which is 22.71% of the total hours expended by all counsel. All of Scott's hours are post-bankruptcy filing. Approximately two-thirds of Scott's hours (5,348) were expended prior to settlement in litigating the ZAI claims. Scott's time litigating the ZAI claims is not noticeably or qualitatively different than the time of L&A, aside from direct involvement in the final settlement negotiations, the significance of which is recognized by L&A. Scott's approximate one-third remaining hours (2,597) were spent essentially monitoring the bankruptcy proceedings after settlement and dealing with class notification issues, when there was little to no risk of non-payment. The lodestar yield for Scott is $3,862.750.00, which is approximately $1,000,000.00 less than that of L&A. **Class Counsel proposes that Scott**

---

[53] *See* Declaration of Laura J. Black, Exhibits 1-4.

**receive approximately $6,675,000.00 for this work; L&A proposes that Scott receive $4,000,000.00 for this work.**[54]

- Westbrook has 7,420 hours, which is 23.62% of the hours expended by all counsel. All of Westbrook's hours are post-bankruptcy filing. Approximately one-half of Westbrook's hours (3,676) are post-settlement hours spent essentially monitoring the bankruptcy proceedings, when there was little to no risk of non-payment. Westbrook's lodestar yield is $5,151,100.00, if the significant post-settlement hours are treated the same as all other hours. **Class Counsel proposes that Westbrook receive approximately $6,675,000.00 for this work; L&A proposes that Westbrook receive approximately $4,000,000.00 for this work.**[55]

- Lieff has 4,626 hours, which is 14.72% of the total hours expended by all counsel. Like L&A, Lieff's hours are primarily pre-bankruptcy and post-bankruptcy but pre-settlement, with only 300 hours spent post-settlement. The overwhelming majority of Lieff's hours were spent investigating and developing the Barbanti Litigation, the Dorrington Litigation, and litigating the ZAI claims in the bankruptcy proceedings. Lieff's time spent on these tasks is not noticeably or qualitatively different than the time of L&A, although L&A has approximately 4,000 more total hours. Lieff's lodestar yield is $3,097.950.00, which is approximately $2,000,000 less than L&A. **Class Counsel proposes that Lieff receive approximately $2,400,000.00 for this work; L&A proposes that Lieff receive approximately $2,720,000.00.**[56]

---

[54] *Id.*
[55] *Id.*
[56] *Id.*

- Ness has 3,019 hours, which is 9.61% of the total hours expended by all counsel. All of Ness' hours are pre-bankruptcy filing.  Almost half of those hours (1,203) were spent on the Dorrington Litigation, and 50 hours were spent on Montana multi-district litigation.  The remaining hours (1,766) were spent supporting the Barbanti Litigation.  **Class Counsel proposes that Ness receive approximately $667,500.00 for this work; L&A proposes that Ness receive approximately $800,000.00 for this work**.[57]

- McGarvey has 1,025 hours, which is 3.3 percent of the total hours expended by all counsel. All of McGarvey's hours are pre-bankruptcy filing, and all hours were spent on investigating and supporting the Barbanti Litigation.  **Class Counsel proposes that McGarvey receive $250,000.00 for this work; L&A proposes that McGarvey receive approximately $480,000.00 for this work**.[58]

L&A's proposed 25 percent allocation of the Common Fund Fee Award is amply supported by L&A's contributions to the Class and settlement, the elevated risk, and number of hours, the lodestar "cross-check," and this qualitative comparison of hours.

### C. L&A is Entitled to Recover its Post-Bankruptcy Costs.

Finally, counsel who benefit the class in common fund cases are entitled to reimbursement of their reasonable litigation costs.  *Serrano v. Sterling Testing Sys., Inc*., 711 F.Supp.2d 402, 423-24 (E.D. Pa. 2010).  L&A also requests that it be compensated for its out-of-pocket expenses expended in this matter.  L&A incurred a total of $184,097.00 in pre- and post-petition costs on the Barbanti Litigation and in prosecuting the ZAI claims in the bankruptcy proceedings.  L&A requests payment of these costs solely from the Common Fund Fee Award.

---

[57] *Id.*
[58] *Id.*

These costs were reasonable, necessary, and incurred at the direction of Mr. Scott while directing this litigation at L&A.[59]

## IV.    CONCLUSION

For the foregoing reasons, L&A respectfully requests: (i) the Federal Rule of Evidence 706 expert recommend an allocation of the Common Fund Fee Award consistent with this Motion; (ii) the Court grant L&A's Motion for an award and allocation to L&A of 25 percent of the Common Fund Fee Award, as compensation for L&A's benefit provided to the Class and contribution to creation of the Common Fund, and for reimbursement to L&A of $184,097.00 in costs from the Common Fund Fee Award; and (iii) that the Court grant L&A such other and further relief as may be just.

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ David M. Fournier
David M. Fournier (DE No. 2812)
Michael J. Custer (DE No. 4843)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801
(302) 777-6500

Attorneys for Lukins & Annis, P.S.

Dated: April 18, 2014.

---

[59] Declaration of Laura J. Black.