## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | **Hearing Date: May 28, 2014, at 11:00 a.m.** |
| | ) | **Objection Deadline: May 23, 2014** |
| | ) | |

## THIRTIETH OMNIBUS OBJECTION TO EMPLOYEE CLAIMS (SUBSTANTIVE OBJECTION)

### INTRODUCTION

In this *Thirtieth Omnibus Objection to Employee Claims (Substantive Objection)* (the

"30th Omnibus Objection" or "Objection"),[2] the above-captioned reorganized debtors

(collectively, the "Reorganized Debtors" or "Grace," the pending bankruptcy cases being the

"Chapter 11 Cases") have identified 140 claims set forth in Exhibit I (the "Employee Claims") to

the form of order attached to this Objection as Exhibit A that should be disallowed by an order of

this Court. These are the only Class 3 Employee Claims remaining out of approximately 6,838

Employee Claims that were filed protectively more than ten years ago by employees, former

---

[1]  The Reorganized Debtors comprise the following 17 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., Darex Puerto Rico, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Gloucester New Communities Company, Inc., Grace Chemical Company of Cuba, Grace Energy Corporation, Grace Europe, Inc., Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace PAR Corporation, W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Guanica Caribe Land Development Corporation, Hanover Square Corporation, Kootenai Development Company, Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), and Water Street Corporation.

[2]  The facts and circumstances set forth in this Objection are supported by the *Declaration of Richard C. Finke in Support of the Debtors' Thirtieth Omnibus Objection to Employee Claims* (the "Finke Declaration," attached hereto as Exhibit B and incorporated into this Objection by reference).

Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Finke Declaration or the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (as it may be amended or supplemented, the "Plan").

employees or beneficiaries of former employees (the "Claimants") who may be entitled to receive benefits (for each Claimant, his or her "Applicable Employee Benefits") under Grace's existing plans, programs, and policies regarding employee bonuses and other compensation, indemnity agreements or various medical, insurance, severance, retiree and other benefits (collectively, the "Grace Benefit Programs"), subject to the Non-Bankruptcy Limitation.[3]

During the latter stages of the Chapter 11 Cases, the Court disallowed approximately 6,696 Employee Claims, because: (i) subject to the Non-Bankruptcy Limitation, all of those Claimants had been receiving their Applicable Employee Benefits since the inception of these Chapter 11 Cases and were going to continue to receive their Applicable Employee Benefits at least until Grace emerged from chapter 11, such that they were not going to be owed any amounts pursuant thereto at emergence; (ii) the Plan provided that, on the Effective Date, the Reorganized Debtors were to assume all Grace Benefit Programs (and thus Claimants were to continue to thereafter receive their Applicable Employee Benefits, subject to the Non-Bankruptcy Limitation); and (iii) the orders disallowing these Employee Claims contained procedural protections in the unlikely event that the Plan was not consummated. *See Corrected Order Disallowing Employee Claims (Substantive)*, dated October 19, 2010 [Docket no. 25596] (the "2010 Employee Claims Disallowance Order") (disallowing 6,675 Employee Claims);[4] *Order Disallowing Employee Claims (Substantive)*, dated December 17, 2013 [Docket no.

---

[3]    Plan §§ 9.3.1 & 9.3.2 sets forth the "Non-Bankruptcy Limitation," which provides that the Grace Benefit Programs (and thus the Applicable Employee Benefits) are subject to amendment, modification or termination under the terms of the applicable compensation or benefit plan, other agreement, or applicable non-bankruptcy law—a limitation that existed prior to and during Grace's bankruptcy, and which continues to exist now that Grace has emerged from chapter 11.

[4]    The Court originally entered its *Order Disallowing Employee Claims (Substantive)* on July 3, 2010. The 2010 Employee Claims Disallowance Order has a corrected Exhibit A, which removed two claims that had been included in error in the exhibit attached to the July 3, 2010, order. The 2010 Employee Claims Disallowance Order, entered on October 19, 2010, and the July 3 order are identical in all other respects.

31480] (the "2013 Employee Claims Disallowance Order") (disallowing 21 additional Employee Claims).

The Reorganized Debtors decided against objecting to the remaining 140 Employee Claims that are the subject of this 30th Omnibus Objection until after emergence because they differed somewhat in nature from the vast majority of Class 3 Employee Claims. The 140 remaining Employee Claims can be categorized as follows: (i) approximately 83 claims were filed by former officers and directors whose voluntary supplemental pension payments or other payments were limited by this Court's *Order Modifying the Authority of the Debtors to Make Payments Under Certain Wage Programs as Authorized by an Earlier Order of this Court*, dated June 22, 2001 [Docket no. 559] (the "Wage Limitation Order"), which amounts (totaling approximately $30.9 million) were paid shortly after the Effective Date (or are in the process of being paid); (ii) approximately 22 claims were protective claims filed by the Pension Benefit Guaranty Corporation relating to various retirement benefit plans; and (iii) approximately 35 other protective Employee Claims were filed by various parties, 34 of which dealt with a separate supplemental executive retirement plan (the "SERP"), and one of which was a claim for alleged benefits that according to the Reorganized Debtors books and records are not owed.

Now that the Reorganized Debtors have emerged from chapter 11 and have assumed all of the Grace Benefit Programs pursuant to the Plan (in each case subject to the Non-Bankruptcy Limitation) and have paid (or are paying) amounts owed to various Claimants, these remaining 140 Employee Claims may also be disallowed, as the claims are no longer needed to protect Claimants' interests and there is no independent basis on which any such claims could be allowed. To the extent that amounts deferred by the Wage Limitation Order have not yet been paid to the Claimants, disallowance of their claims will not affect their rights to receive such

amounts.  To the extent that a Claimant believes that he or she is entitled to benefits under one or more Grace Benefit Programs and he or she has not been receiving such benefits, any such Claimant retains all the rights that he or she would have had if the Chapter 11 Cases had never been commenced—regardless of whether there is an open bankruptcy claim.

In support of this Objection, the Reorganized Debtors respectfully state as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[5]  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for this Objection are section 502 of the Bankruptcy Code, Fed.R.Bankr.P. 3007 and Del. Bankr. L.R. 3007-1.

### BACKGROUND

**I.      THE EMPLOYEE CLAIMS**

**A.      The Debtors Have Paid All Applicable Employee Benefits**

3.      On April, 2, 2001, the Court entered an order authorizing the Debtors to continue to honor all obligations owing to current and former employees on account of their respective Applicable Employee Benefits (such amounts being the "Employee Obligations") in accordance with the Debtors' stated policies and to continue to operate under those policies at their sole

---

[5]   The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

discretion.[6]  As set forth in the Finke Declaration, the Reorganized Debtors' books and records show that the Debtors continued to honor all such Employee Obligations during the Chapter 11 Cases by paying all Applicable Employee Benefits (subject to the Non-Bankruptcy Limitation) through the Effective Date, except for benefits limited by the Wage Limitation Order, which this Court entered on June 22, 2001.  Specifically, the Wage Limitation Order limited the payment of benefits to certain former directors and officers ("D&O Payments") and recipients of voluntary supplement pension payments ("VSPP").  Those unpaid benefits, which continued to accrue until the Effective Date, totaled approximately $30.9 million.

### B.    The Plan Did Not Impair Employee Benefit Claims

4.    Plan § 3.1.3 provides that Employee Benefit Claims were unimpaired pursuant to the treatment provided for in Plan §§ 9.3.1 and 9.3.2.  Those sections provide that, as of the Effective Date and pursuant to the terms of the Plan, the Reorganized Debtors assumed the Grace Benefit Programs, subject to the Non-Bankruptcy Limitation set forth in Plan §§ 9.3.1 and 9.3.2.[7]

---

[6]    See the Court's Order: (a) Authorizing, but not Requiring the Debtors to Pay Certain Prepetition (i) Wages, Salaries, Incentive Pay, Bonus Plans and Other compensation and amounts Withheld From Such Compensation, (ii) Employee Medical, Pension and Similar Benefits, (iii) Employee Severance Pay, (iv) Workers Compensation Benefits, (v) Amounts Relating to Retiree Health Benefits and (vi) Reimbursable Expenses; (b) Authorizing and Approving Certain Key Employee Retention Programs on an Interim Basis; (c) Authorizing Applicable Banks and Other Financial Institutions to Receive, Process, Honor and Pay All Checks Presented for Payment and to Honor All Electronic Payment Requests Made by the Debtors Related to the Foregoing, dated April 2, 2001 [Docket no. 20].

[7]    Specifically, Plan § 9.3.1 provides that:

From and after the Effective Date, the Reorganized Debtors intend to continue their existing employee compensation, indemnity agreements, and benefit plans, programs, and policies, and to cure any defaults that may exist under such agreements, plans, programs, and policies, including payment of the Debtors' voluntary supplemental pension payments which were limited during the pendency of these Chapter 11 Cases, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable compensation and benefit plan, other agreement, or applicable non-bankruptcy law.

Plan § 9.3.1 (hereinafter, the "Employee Benefits").  Plan § 9.3.2 provides that:

From and after the Effective Date, the Reorganized Debtors intend to continue to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) and any similar health, disability, or death benefits in

Each of the Employee Claims subject to this Objection fall within the Plan's definition of "Employee Benefit Claim." Claimants have retained all of their rights under the Grace Benefit Programs to their Applicable Employee Benefits.

5.     Plan § 9.3.1 further specifically contemplates that upon emergence the Reorganized Debtors were to pay those "voluntary supplemental pension payments which were limited during the pendency of these Chapter 11 Cases" by the Wage Limitation Order. Approximately 83 of the Employee Claims that are the subject of this Objection were filed by Claimants whose D&O Payments or VSPP were limited by the Wage Limitation Order. As to the remaining 59 claims, no amounts were limited during the Chapter 11 Cases and no unpaid amounts were owed at emergence.

## II.    DISALLOWANCE OF EMPLOYEE CLAIMS IN 2010

6.     It was in view of the continued payment of all Applicable Employee Benefits and the Plan's contemplated assumption of all Grace Benefit Programs that, on February 25, 2010, the Debtors filed their *Twenty-Eighth Omnibus Objection to Employee Claims (Substantive Objection)* [Docket no. 24363]. The Court entered its 2010 Employee Claims Disallowance Order, which disallowed approximately 6,675 claims.

## III.   THE 2013 OMNIBUS EMPLOYEE CLAIMS OBJECTION

7.     On November 1, 2013, the Debtors filed their *Twenty-Ninth Omnibus Objection To Employee Claims (Substantive Objection)* [Docket no. 31294], which objected to a further 21

---

accordance with the terms of the retiree benefit plans or other agreements governing the payment of such benefits, subject to any rights to amend, modify, or terminate such benefits under the terms of the applicable retiree benefits plan, other agreement, or applicable non-bankruptcy law.

(hereinafter, the "Retiree Benefits", which together with the Employee Benefits, comprise the Grace Benefit Programs as defined above, and the benefits arising therefrom that are payable to employees, former employees and their beneficiaries, as the case may be, are the Applicable Employee Benefits defined at the beginning of this Objection.

Employee Claims where the Debtors had been paying all Applicable Employee Benefits (subject to the Non-Bankruptcy Limitation). On December 17, 2013, the Court entered its 2013 Employee Claims Disallowance Order, which disallowed those 21 claims.

## IV.   GRACE'S EMERGENCE FROM CHAPTER 11

8.   On February 3, 2014, the Reorganized Debtors substantially consummated the transactions contemplated by the Plan and emerged from chapter 11. *Notice of Occurrence of The Effective Date of The First Amended Joint Plan of Reorganization Under Chapter 11 of The Bankruptcy Code of W. R. Grace and Co., et al, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders As Modified Through December 23, 2010,* dated February 13, 2014 [Docket no. 31732]. Pursuant thereto, Grace assumed all of the Grace Benefit Programs, subject to the Non-Bankruptcy Limitation.

## V.   THE EMPLOYEE CLAIMS SHOULD BE DISALLOWED

### *Employee Claims Where Benefits Were Curtailed by the Wage Limitation Order*

9.   Commencing in early February 2014, the Reorganized Debtors began paying the withheld D&O Payments and VSPP benefits. To date, more than 95% of all such payments have been made, and the Reorganized Debtors anticipate that virtually all such remaining payments will be made in the next few weeks.[8] Approximately 83 Employee Claims were filed by recipients of such payments. In view of Grace's emergence from chapter 11, the fact that payments of accrued benefits have been made in most cases and Grace's assumption of the

---

[8]   To date, a few such payments have not been made, generally because the Reorganized Debtors have not been able to identify an estate or identifiable heir of a deceased beneficiary. Efforts to identify a proper recipient continue in each such case.

applicable Grace Benefit Programs (subject to the Non-Bankruptcy Limitation), there is no further need for these Employee Claims to remain open.

***The PBGC's Claims***

10.     The PBGC filed protective claims in each of the original 62 Chapter 11 Cases. Pursuant to the relief requested in the Debtors' Motion for Entry of an Order: (I) Approving Agreement; (II) Authorizing, But Not Directing, the Debtors to Merge Certain Non-Operating Debtor Subsidiaries into W. R. Grace & Co.-Conn.; (III) Expunging Certain Active Claims, Conditionally Expunged Claims and Intercompany Claims; and (IV) Transferring Certain Active and Intercompany Claims to W. R. Grace & Co.-Conn. [Docket No. 27769]  (the "Merger Motion"), and the order the Court entered approving the Merger Motion, dated November 21, 2011 [Docket no. 28007] (the "Merger Order"), all but 22 of those claims were provisionally disallowed and have now, with Grace's emergence from chapter 11, been permanently disallowed.  There were no amounts due at emergence as to any of those claims, and Grace has now assumed all of the relevant retirement plans and the obligations thereunder (subject to the Non-Bankruptcy Limitation).   The PBGC's remaining claims thus need not remain open to protect its interests.

***Other Employee Claims***

11.     A putative class of Claimants with claims arising from a SERP timely filed two separate groups of 62 protective claims each.  Approximately 34 remain, the balance having been disallowed by the Merger Order.  There were no amounts due at emergence as to any of the surviving claims, and Grace has now assumed the SERP and the obligations thereunder (subject to the Non-Bankruptcy Limitation).  The 34 SERP claims therefore need not remain open to protect Claimants' interests.

12.     The Confederacion de Pensionados de Colombia (the "CPC") filed a single claim (Claim no. 15346), asserting that Grace has not performed under certain union contracts in Colombia, South America.  Based upon a thorough review of its Books and Records, Grace believes that it has no such obligations.  To the extent that the CPC continues to maintain its assertion, it will be able to pursue all remedies available to it, even if Claim no. 15346 is disallowed.

### RELIEF REQUESTED

13.     The Reorganized Debtors request that the Court enter an order substantially in the form attached hereto as Exhibit A disallowing the Employee Claims set forth in Exhibit I thereto.

### PROCEDURES FOR RESPONDING TO THE CLAIMS OBJECTION

14.     To contest any of the objections set forth in this Claims Objection, Claimants must file and serve a written response to this Claims Objection (a "Response") so that it is received no later than 4:00 p.m. ET, on May 23, 2014 (the "Response Deadline").  The Response (or each Response, if more than one is filed) must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") at the following address:

> 824 Market Street
> Wilmington, Delaware 19801

15.     Each such Response must also be served upon the following co-counsel to the Reorganized Debtors on or before the Response Deadline:

> KIRKLAND & ELLIS LLP
> Adam C. Paul
> Jeffrey W. Gettleman
> 300 North LaSalle Street
> Chicago, IL 60654

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

16.     Every Response to this Claims Objection must contain, at a minimum, the following:

    a.     A caption setting forth the name of the Court, the name of the Reorganized Debtors, the case number, and the title of the Objection to which the Response is directed;

    b.     The name of the Claimant, its claim number, and a description of the basis for the amount of the claim;

    c.     The specific factual basis and supporting legal argument upon which the party will rely in opposing the Claims Objection;

    d.     Any supporting documentation, to the extent it was not included with the proof of claim previously filed with the Clerk or Claims Agent, upon which the party will rely to support the basis for and amounts asserted in the proof of claim;

    e.     The name, address, telephone number, and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Reorganized Debtors should communicate with respect to the claim or the objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the Disputed Claim on behalf of the Claimant.

17.     If a Claimant fails to file and serve a timely Response (or Responses), the Reorganized Debtors may present to the Court an appropriate order disallowing and expunging that Claimant's claim or claims (and all other similarly-situated Employee Claims) without further notice to the Claimant or a hearing.

### REPLY TO RESPONSE

18.    The Reorganized Debtors reserve the right to, at their option, file and serve one or more replies to Claimants' Responses, if any.

### SEPARATE CONTESTED MATTER

19.    If a Claimant files a Response to this Objection, and the Claimant and the Reorganized Debtors are unable to resolve that Response, the corresponding claim and the objection by the Reorganized Debtors thereto asserted in this Claims Objection shall constitute a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.  Any order entered by the Court regarding an objection asserted in the Objection shall be deemed a separate order with respect to each such claim.

### RESERVATION OF RIGHTS

20.    The Reorganized Debtors hereby reserve the right to object in the future to any of the Employee Claims.  The Reorganized Debtors further reserve the right to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims. Separate notice and hearing will be scheduled for any such objection.

### NO PREVIOUS OBJECTION

21.    No previous objection to these Employee Claims has been filed, nor has any other motion for the relief sought herein been made to this or any other court.

### NOTICE

22.    Notice of this Objection has been given to:  (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service

and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) the Claimants who filed the 140 Employee Claims that are the subject of this 30th Omnibus Objection.  In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached hereto as Exhibit A (i) disallowing the Employee Claims; and (ii) granting such other relief as may be appropriate.

Dated: April 23, 2014

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors