EXHIBIT B

**Finke Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KJC) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) Hearing Date: May 28, 2014, at 11:00 a.m. |
| | ) Objection Deadline: May 23, 2014 |
| | ) |

**DECLARATION OF RICHARD C. FINKE IN SUPPORT OF THIRTIETH OMNIBUS
OBJECTION TO EMPLOYEE CLAIMS (SUBSTANTIVE OBJECTION)**

COUNTY OF HOWARD    )
                    ) ss.
STATE OF MARYLAND   )

Richard C. Finke, after being duly sworn according to law, deposes and says:

1.    I am over the age of 18 and competent to testify. I am Vice President and Associate General Counsel with W. R. Grace & Co., one of the above-captioned reorganized debtors (collectively, "Grace" or the "Reorganized Debtors"). All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by the Reorganized Debtors' employees and professionals retained in these chapter 11 cases, as well as upon my opinion based upon my experience and knowledge of Grace's businesses. If called upon to testify, I could and would testify competently to the facts and opinions contained herein.

---

[1]    The Reorganized Debtors comprise the following 17 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., Darex Puerto Rico, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Gloucester New Communities Company, Inc., Grace Chemical Company of Cuba, Grace Energy Corporation, Grace Europe, Inc., Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace PAR Corporation, W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Guanica Caribe Land Development Corporation, Hanover Square Corporation, Kootenai Development Company, Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), and Water Street Corporation.

This declaration is filed in support of the Reorganized Debtors' *Thirtieth Omnibus Objection to Employee Claims (Substantive Objection)* (the "Objection"), filed concomitantly herewith.[2]

2. I am responsible for reviewing claims and overseeing the claims objection process during these chapter 11 cases. In that capacity, I have reviewed the Objection and I am either directly familiar with the information contained therein and in the exhibit attached thereto or indirectly familiar with this information through the Reorganized Debtors' employees, contractors or other personnel, attorneys and BMC Group, Inc., the Debtors' claims reconciliation and solicitation consultant. Upon information and belief, the Reorganized Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the respective amounts owed to their creditors.

### THE EMPLOYEE CLAIMS

3. Grace and its professionals have identified approximately 140 claims (the "Employee Benefits Claims") that were filed by employees, former employees or beneficiaries of former employees (the "Claimants") who may be entitled to receive benefits (for each Claimant, his or her "Applicable Employee Benefits") under Grace's existing plans, programs, and policies regarding employee bonuses and other compensation, indemnity agreements or various medical, insurance, severance, retiree and other benefits (collectively, the "Grace Benefit Programs"), each of which are subject to the "Non-Bankruptcy Limitation" provided for in Plan §§ 9.3.1 and 9.3.2.[3] These are the only Class 3 Employee Claims remaining out of

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Objection or the *First Amended Joint Plan of Reorganization in their Chapter 11* Cases [Docket no. 26368], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

[3] Plan §§ 9.3.1 and 9.3.2 provide that the Grace Benefit Programs (and thus the Applicable Employee Benefits) are subject to amendment, modification or termination under the terms of the applicable compensation or benefit plan, other agreement, or applicable non-bankruptcy law—a limitation that existed prior to and during Grace's bankruptcy, and which continues to exist now that Grace has emerged from chapter 11.

approximately 6,838 Employee Claims that were filed protectively more than ten years ago. All remaining Employee Claims have been disallowed by the Court, as discussed in more detail in the Objection.

4.      The Reorganized Debtors decided against objecting to the remaining 140 Employee Claims that are the subject of the Objection until after emergence because they differed somewhat in nature from the vast majority of Class 3 Employee Claims. These claims can be categorized as follows: (i) approximately 83 claims were filed by former officers and directors whose voluntary supplemental pension payments or other payments were limited by this Court's *Order Modifying the Authority of the Debtors to Make Payments Under Certain Wage Programs as Authorized by an Earlier Order of this Court*, dated June 22, 2001 [Docket no. 559] (the "Wage Limitation Order"), which amounts (totaling approximately $30.9 million) were paid shortly after the Effective Date (or are in the process of being paid); (ii) approximately 22 claims were protective claims filed by the Pension Benefit Guaranty Corporation relating to various retirement benefit plans; and (iii) approximately 35 other protective Employee Claims were filed by various parties, 34 of which dealt with two separate supplemental executive retirement plans ("SERPs"), and one of which was a claim for alleged benefits that, according to the Reorganized Debtors' Books and Records, are not owed.

***Employee Claims Where Benefits Were Curtailed by the Wage Limitation Order***

5.      On April, 2, 2001, the Court entered an order authorizing the Debtors to continue to honor all Employee Obligations in accordance with the Debtors' stated policies and to continue to operate under those policies at their sole discretion.[4] The Reorganized Debtors'

---

[4] See the Court's *Order: (a) Authorizing, but not Requiring the Debtors to Pay Certain Prepetition (i) Wages, Salaries, Incentive Pay, Bonus Plans and Other compensation and amounts Withheld From Such Compensation, (ii) Employee Medical, Pension and Similar Benefits, (iii) Employee Severance Pay, (iv) Workers Compensation Benefits, (v) Amounts Relating to Retiree Health Benefits and (vi) Reimbursable*

Books and Records show that the Debtors continued to honor all such Employee Obligations during the chapter 11 cases by paying all Applicable Employee Benefits (subject to the Non-Bankruptcy Limitation) through the Effective Date, except for those benefits limited by the Wage Limitation Order. Specifically, the Wage Limitation Order limited the payment of benefits to certain former directors and officers ("D&O Payments") and recipients of voluntary supplement pension payments ("VSPP"). Those unpaid benefits, which continued to accrue until the Effective Date, totaled approximately $30.9 million.

6. Commencing in early February 2014, the Reorganized Debtors began paying the withheld D&O Payments and VSPP benefits. To date, more than 95% of all such payments have been made, and the Reorganized Debtors anticipate that virtually all such remaining payments will be made in the next few weeks.[5] Approximately 83 Employee Claims were filed by recipients of such payments. In view of Grace's emergence from chapter 11, the fact that payments of accrued benefits have been made in most cases and Grace's assumption of the applicable Grace Benefit Programs (subject to the Non-Bankruptcy Limitation), there is no further need for these Employee Claims to remain open.

*The PBGC's Claims*

7. The PBGC filed protective claims in each of the original 62 chapter 11 cases. Pursuant to the relief requested in the *Debtors' Motion for Entry of an Order: (I) Approving Agreement; (II) Authorizing, But Not Directing, the Debtors to Merge Certain Non-Operating*

---

*Expenses; (b) Authorizing and Approving Certain Key Employee Retention Programs on an Interim Basis; (c) Authorizing Applicable Banks and Other Financial Institutions to Receive, Process, Honor and Pay All Checks Presented for Payment and to Honor All Electronic Payment Requests Made by the Debtors Related to the Foregoing*, dated April 2, 2001 [Docket no. 20].

[5] To date, a few such payments have not been made, generally because the Reorganized Debtors have not been able to identify an estate or identifiable heir of a deceased beneficiary. Efforts to identify a proper recipient continue in each such case.

*Debtor Subsidiaries into W. R. Grace & Co.-Conn.; (III) Expunging Certain Active Claims, Conditionally Expunged Claims and Intercompany Claims; and (IV) Transferring Certain Active and Intercompany Claims to W. R. Grace & Co.-Conn.* [Docket No. 27769] (the "Merger Motion"), and the order the Court entered approving the Merger Motion, dated November 21, 2011 [Docket no. 28007] (the "Merger Order"), all but 22 of those claims were provisionally disallowed and have now, with Grace's emergence from chapter 11, been permanently disallowed. There were no amounts due at emergence as to any of those claims, and Grace has now assumed all of the relevant retirement plans and the obligations thereunder (subject to the Non-Bankruptcy Limitation). The PBGC's remaining claims thus need not remain open to protect its interests.

*Other Employee Claims*

8. A putative class of Claimants with claims arising from a SERP timely filed two separate groups of 62 protective claims each. Approximately 34 remain, the balance having been disallowed by the Merger Order. There were no amounts due at emergence as to any of the surviving claims, and Grace has now assumed the SERP and the obligations thereunder (subject to the Non-Bankruptcy Limitation). The 34 SERP claims therefore need not remain open to protect Claimants' interests.

9. The Confederacion de Pensionados de Columbia (the "CPC") filed a single claim (Claim no. 15346), asserting that Grace has not performed under certain union contracts in Colombia, South America. Based upon a thorough review of its Books and Records, Grace believes that it has no such obligations. To the extent that the CPC continues to maintain its assertion, it will be able to pursue all remedies available to it, even if Claim no. 15346 is disallowed.

10. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Richard C. Finke*
Richard C. Finke
Vice President and Associate General Counsel
W. R. Grace & Co.

SWORN AND SUBSCRIBED before me, this 22nd day of April 2014

*Diane Z. Borowy*
Notary Public

My Commission Expires: September 18, 2016

```
DIANE Z. BOROWY
Notary Public-Maryland
Howard County
My Commission Expires
September 18, 2016
```