## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., <u>et al.</u>, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## ZAI CLASS COUNSEL'S OPPOSITION TO MOTION OF LUKINS & ANNIS, P.S. FOR AN ALLOCATION OF THE ZAI CLASS ACTION COMMON FUND FEE AWARD

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (No. 2820)
Elihu E. Allinson, III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, Delaware 19801

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue, Suite 680
Spokane, WA  99201

RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC
Edward J. Westbrook
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29464

LIEFF, CABRASER, HEIMANN & BERNSTEIN,
LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339

*ZAI Class Counsel*

Dated: April 28, 2014
      Wilmington, Delaware

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.    Introduction ................................................................................................................... 1

II.   Background ...................................................................................................................... 2

    A.    The U.S. ZAI Class Settlement, Class Counsel's Fee Award, and Class
    Counsel's Allocation Agreement. .................................................................................. 2

    B.    Third-Party Fee Claimant L&A. .................................................................................. 8

III.  Arguments ..................................................................................................................... 10

    A.    L&A Voluntarily Withdrew from Contingent Representation and Thereby
    Relinquished any Right to Recovery of Fees. ......................................................... 10

    B.    L&A Values Work Using an Improper and Discredited Legal Standard;
    L&A's Estimations, Consequently, are Useless in Determining the Fact of or
    Value of L&A's Common Fund Fee Entitlement. .................................................. 15

    C.    Application of the Qualitative *Gunter/Prudential* Factors Demonstrates that
    L&A Achieved Little or No Meaningful Benefits that Established, Increased,
    Preserved, or Discovered the Common Fund. ....................................................... 20

        *1.    The Size of the Fund and the Number of Persons Benefitted.* ............................. 21

        *2.    The Presence or Absence of Substantial Objections by Class Members.* .......... 22

        *3.    Skill and Efficiency of Counsel.* ......................................................................... 23

        *4.    The Complexity and Duration of Litigation.* ...................................................... 25

        *5.    The Risk of Non-Payment.* ................................................................................. 30

        *6.    The Amount of Time Devoted.* ............................................................................ 31

        *7.    Awards in Other Cases.* ...................................................................................... 34

        *8.    The Value of the Benefits Attributable to the Efforts of Class Counsel Relative to
        the Efforts of Others.* .......................................................................................... 35

        *9.    The Percentage Fee that Would have been Negotiated had the Case been Subject
        to a Private Contingent Fee Arrangement at the Time Counsel was Retained.* .... 35

        *10. Any Innovative Terms of the Settlement.* ........................................................... 36

    D.    Costs. ............................................................................................................................ 39

IV.   CONCLUSION ............................................................................................................ 40

# TABLE OF AUTHORITIES

**CASES**

*Ausler v. Ramsey*, 868 P.2d 877 (Wash. App. 1994)........................................................10, 11, 12

*B. Dahlenburg Bonar, P.S.C. v. Waite, Schneider, Bayless & Chelsey Co., L.P.A.*, 373 S.W.3d 419 (Ky. 2012)
...................................................................................................................................11, 12, 34

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322 (E.D. Pa. 2007)........................................................................................................................23, 35

*Camden I Condo. Assn., Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ....................................15

*Drazin v. Horizon Blue Cross Blue Shield of N.J. Inc.* 528 Fed. App'x 211, 2013 U.S. App. LEXIS 11830 (3d Cir. 2013) ..........................................................................................................................7

*Estate of Falco*, 233 Cal. Rptr. 807 (Cal. App. 2d 1987) ......................................................10, 11

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ........................................................................18

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)....................................... passim

*Hensel v. Cohen*, 202 Cal. Rptr. 85 (Cal. App. 2d 1984)............................................................11

*In re Cendant Corp. PRIDES Sec. Litig.*, 243 F.3d 722 (3rd Cir. 2001).....................................16, 18, 20

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3rd Cir. 2005).......................................17, 18, 19, 34

*In re Copley Pharmaceutical, Inc.,"Albuterol" Products Liability Litigation*, 50 F. Supp. 2d 1141 (D. Wyo. 1999)..............................................................................................................................30, 37

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009)................................................15

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)............................37

*In re Gas Meters Antitrust Litig.*, 500 F.Supp. 956 (E.D. Pa. 1980)..........................................16

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000).............................24

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D.Colo. 1976).................................................16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir.1998) ......... passim

*In re Rite-Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ......................................................16

*In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954 (N.D. Ill., Dec. 9, 2009) .....................19

*Lindy Bros. Builders v. American Radiator*, 540 F.2d 102 (3rd Cir. 1976) ...................................24

*Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992) ...............................................................37

*Milliron v. T-Mobile USA, Inc.*, 423 Fed. Appx. 131, 135, 2011 U.S. App. LEXIS 7816 (3d Cir. 2011) ......19

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).......................................................................16

*Ryan v. State*, 51 P.3d 175 (Wash. App. 2002)..................................................................10, 12

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................30

*Turner v. Murphy Oil USA, Inc.*, 582 F. Supp. 2d 797 (E.D. La. 2008).......................................37

*Wolff v. Cash*, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. 2012)..................................................16

**RULES**

FED. R. CIV. P. 23.............................................................................................................................15

FED. R. CIV. P. 23(h) ......................................................................................................................22

FED. R. CIV. P. 23(h)(1)..........................................................................................................22, 23, 40

FED. R. EVID. 408 ............................................................................................................................7

**TREATISES**

Hornstein, "Legal Therapeutics:  The 'Salvage Factor' in Counsel Fee Awards," 69 Harv. L. Rev. 658 (1956) ........................................................................................................................................16

Newberg, *Attorney* Fee Awards § 2.16 (1986) ............................................................................37

# I.  <u>Introduction</u>

Lukins & Annis's ("L&A") common fund fee request and request for reimbursement of costs should be denied on the following grounds:

- L&A voluntarily withdrew from contingent ZAI representation nearly a decade ago and did so without narrowly prescribed "good cause."  L&A, consequently, has relinquished any right to fees.

- L&A's analysis employs a discredited legal standard, focusing on hours of work performed, rather than actual benefits achieved that established the U.S. ZAI Common Fund.   L&A's analysis, consequently, lacks legal basis upon which the Court could issue a fee award to L&A.

- Application of the Third Circuit's *Gunter/Prudential* factors demonstrates that L&A did not contribute in any meaningful way to the establishment of the U.S. ZAI Class Fund.  It was absent at every important juncture that led to settlement of U.S. ZAI claims.

- L&A is not entitled to reimbursement of costs because, among other reasons, it did not seek reimbursement from the only legally recognized source of such recovery, the common fund, and has not provided notice to Class members, a prerequisite to recovery of fees and costs.

# II. Background

*"Victory has one hundred fathers and defeat is an orphan."*
(John F. Kennedy, Presidential New Conference, April 21, 1961)

**A.    The U.S. ZAI Class Settlement, Class Counsel's Fee Award, and Class Counsel's Allocation Agreement.**

On December 15, 2008, Class Counsel Edward Westbrook, Darrell W. Scott, and Elizabeth J. Cabraser secured for U.S. ZAI Class Claimants an innovative class action solution that resolved a previously intractable problem.  The U.S. ZAI Class Settlement achieved significant benefits for over 17,000 ZAI homeowners who filed U.S. ZAI Proofs of Claim.  Through Class Counsel's efforts to appoint a U.S. ZAI Futures Representative and engage that representative in ongoing settlement discussions, Class Counsel also successfully obtained benefits for all homeowners throughout the United States who, at any time over the next twenty years, incur financial expense in removing, abating, or containing ZAI.

The Court gave final approval to the U.S. ZAI Class Settlement on April 1, 2009.  Class Counsels' work, however, did not end there.  The U.S. ZAI Class Settlement was contingent.  It required Grace securing confirmation of a Plan of Reorganization that incorporated the provisions of the U.S. ZAI Class Settlement.  It was also contingent on that Plan of Reorganization surviving appeals and becoming effective.  Class Counsel, consequently, engaged in the sometimes mind-numbing enterprise of preserving the U.S. ZAI Class Settlement as a functional component of a Plan of Reorganization acceptable to all constituencies.  Those efforts included development of an elaborate ZAI Trust Distribution Procedure to ensure that U.S. ZAI Class Members actually enjoyed the benefits contemplated in the U.S. ZAI Class Settlement.  Class Counsel also collaborated with Grace's various bankruptcy constituencies in preparing a necessary PD Trust

Agreement, Inter-creditor Trust Agreements, Guarantee Agreements, and related complex documents essential to Grace's emergence, essential to the establishment of the U.S. ZAI Trust, and essential to eventual implementation of a U.S. ZAI Claims Facility. Class Counsel participated in Grace's Plan Confirmation proceedings upon which the U.S. ZAI Class Settlement depended.

Following confirmation and lengthy appeals, Grace's Plan of Reorganization became effective on February 3, 2014, rendering the U.S. ZAI Class Settlement no longer contingent. Class Counsel's work did not end there.

Class Counsel Edward Westbrook and Darrell W. Scott, members of the U.S. ZAI Trust Advisory Committee, are now deeply involved in the process of establishing the U.S. ZAI Claims Facility that will operate over the next twenty or more years. Class Counsel will engage in these efforts for the next full year without any compensation beyond that afforded by the Court's Order Awarding Fees to Class Counsel.

The veil of contingency having been lifted from the Settlement's head on February 3, 2014, Class Counsel jointly petitioned the Court on February 7, 2014, for an award of attorney fees and costs to Class Counsel. Class Counsel's achievements warranted an award of fees to Class Counsel as more fully detailed in the Motion of ZAI Class Counsel for a Common Fund Fee Award. *See* Motion of ZAI Class Counsel for a Common Fund Fee Award, **D.I. 31718.**

Class Counsel's request, in accord with the U.S. ZAI Class Settlement and class notice issued to U.S. ZAI Class Members, sought an award to Class Counsel of 25% of the $60,000,000 guaranteed payments provided for in the U.S. ZAI Settlement.

The Court, through Order dated April 3, 2014, granted to Class Counsel an award of attorney fees and costs as requested.  *See* **D.I. 31985**.  In view of L&A's claim to entitlement of fees (**D.I. 31794**), the Court reserved the right to modify the Order.  Class Counsel agreed to stay distribution of Class Counsel's fee award until the Court addressed L&A's fee claim.

As disclosed in Class Counsel's Motion for Common Fund Fee Award, Class Counsel have secured a fee allocation agreement among the three Class Counsel and fee sharing agreements with two associated law firms who have remained engaged in ZAI litigation.  *See* Motion of ZAI Class Counsel for Common Fund Fee Award, **D.I. 31718**, p. 28 nt 30.  Class Counsel, consequently, have simplified and streamlined the Court's work in fully disposing of legitimate fee issues arising out of the U.S. ZAI Class Settlement.

Class Counsel, in that regard, have reached an allocation agreement among themselves based on Class Counsel's shared assessment of the contributions each Class Counsel made in securing the U.S. ZAI Class Settlement.  That allocation provides that fees to Class Counsel shall be divided 42.5 percent to the firm of Class Counsel Edward Westbrook, 42.5 percent to the firm of Class Counsel Darrell W. Scott, and 15 percent to the firm of Class Counsel Elizabeth Cabraser.

Class Counsel were also successful at reaching fee-sharing agreements with two associated law firms that have been continuously engaged in representing ZAI interests, one of which directly assisted Class Counsel in securing the U.S. ZAI Class Settlement. Class Counsel have agreed to share $250,000 with the law firm of McGarvey Heberling, paid from Class Counsels' collective fees.   Further, Class Counsel have agreed that the

law firm of Ness Motley will receive fees in the amount of 10 percent of Class Counsel Edward Westbrook's allocation, to be paid from Edward Westbrook's allocation. This amount of fees was agreed to in view of Ness Motley's critical assistance to Class Counsel in securing the U.S. ZAI Class Settlement. This manor of payment is used in recognition that Edward Westbrook was an attorney at Ness Motley during the early stages of ZAI litigation.

Finally, Class Counsel's allocation agreement provides that, should the Court determine that L&A is entitled to fees and that the award should be paid from Class Counsel's joint fee award, then L&A's award would be paid out of Class Counsel Darrell W. Scott's allocation, in recognition that Darrell W. Scott was an attorney at L&A during the early stages of ZAI litigation. In summary, Class Counsel's allocation and fee sharing agreement is as follows:

<u>Class Counsel Allocation</u>

Edward Westbrook – 42.5% (less Ness Motley fee split)

Darrell W. Scott – 42.5% (less any fees awarded to L&A)

Elizabeth Cabraser – 15%

<u>Fee Sharing</u>

Ness Motley – 10% of Edward Westbrook's allocation

McGarvey Heberling -- $250,000

The allocation and fee sharing agreement detailed above is agreeable to all the respective firms. Each of those firms, significantly, has been engaged in ZAI representation from its earliest initiation in 2000 to date. Each engaged collaboratively with the other in prosecuting ZAI claims, thus affording each firm opportunity to observe

the respective contributions of counsel over this 14 year period of time, and opportunity to understand and value the benefits each counsel provided in securing the U.S. ZAI Class Settlement. The counsel with whom these fee sharing agreements were reached performed true common benefit work: work that meets the *Gunter/Prudential* standards and the Cendant causation test described later in this Brief - that contributed to the class settlement.

Class Counsel's allocation and fee sharing agreements do not require L&A's consent. The agreements do not bind L&A. The allocation and fee sharing agreements accommodate any outcome in L&A's quest to secure fees for itself. The allocation and fee sharing agreements construct no obstacles for the Court in determining L&A's entitlement to fees, rendering judgment as to the amount of those fees, or ensuring their payment. Indeed, the above allocation and fee sharing agreement streamlines and simplifies the Court's work.

The agreements do not impact L&A's right to seek a common fund fee award for itself through court order or threaten L&A's ability to secure payment of fees, should the Court award fees to L&A. The funds from which L&A's potential fee would be paid remain preserved in the U.S. ZAI Trust (both the corpus of the common fund as well as Class Counsel's own fee award as previously ordered by the Court).

Class Counsel's allocation and fee sharing agreements contemplated L&A's third-party request for fees and made full provision for payment of L&A's fees out of Class Counsel's own fee award, if necessary. In doing so, further, the allocation agreement achieves equity as between Class Counsel. Should the Court award fees to L&A out of Class Counsel's fee award, L&A's fees would be paid from the allocation of Darrell W.

Scott, L&A being the former law firm of Darrell W. Scott.  In like fashion, the fee

sharing agreement with Ness Motley involves payment of fees from the allocation of

Edward Westbrook, Ness Motley being the former law firm of Edward Westbrook.

L&A, in short, is a stranger to and is not impacted by Class Counsel's allocation

and fee sharing agreements.[1]

The court in a class action settlement has an independent duty to the Class to

ensure that attorneys' fees are reasonable and that fees awarded are divided fairly among

plaintiffs' counsel.  *Drazin v. Horizon Blue Cross Blue Shield of N.J. Inc.* 528 Fed. App'x

211, 214, 2013 U.S. App. LEXIS 11830 (3d Cir. 2013).   The Court should approve Class

Counsels' allocation and fee sharing agreements described above as fair and reasonable

under applicable Third Circuit authority governing the award and allocation of fees in

common fund situations.

The Court's task in considering L&A's fee request, consequently, involves four

simple questions:

1.    Is L&A entitled to a common fund fee award?

2.    If so, what is the appropriate amount of that award?

3.    Should a L&A award be paid out of the common fund or out of the fees

awarded to Class Counsel, as previously issued by the Court?  And,

4.    Is L&A entitled to reimbursement of any costs?

---

[1] Class Counsel object to Jed Morris' improper effort to testify regarding settlement
discussions had with Class Counsel, as found at paragraph 7 of the Declaration of Jed W.
Morris (**D.I. 32034-2**).  *See* FED. R. EVID. 408.  While efforts to avoid the present fee
dispute were made, those discussions never resulted in any formal offers.

**B.    Third-Party Fee Claimant L&A.**

L&A is the former law firm of Class Counsel Darrell W. Scott. L&A comes to the Court representing no one. L&A was previously retained by multiple ZAI claimants on a contingency basis to represent their legal interests, principally in relation to Grace's bankruptcy proceedings. L&A voluntarily withdrew from all representation in ZAI matters and discharged all of its ZAI clients (270 in number) nearly a decade ago, in December 2004, shortly following the departure of Darrell W. Scott, who had entered into solo practice as The Scott Law Group, P.S. *See* Declaration of Darrell W. Scott filed in support hereto ("Scott Decl.") at ¶¶ 54, 55, 59, 60.

No L&A attorney serves as U.S. ZAI Class Counsel. L&A had no involvement in negotiating or securing the U.S. ZAI Class Settlement, that firm having abandoned the ZAI battlefield four years earlier.

Prior to its voluntary withdrawal, L&A's principal involvement in ZAI matters had been representation in the Washington State ZAI Class Action (*Barbanti v. W.R. Grace*). L&A did not invent or discover ZAI claims. The Washington State ZAI Class Action followed on the heels of an earlier nationwide ZAI Class Action that had been brought by other counsel in the Massachusetts Federal District Court (*Lindholm v. W.R. Grace*).

Present Class Counsel Edward Westbrook and Elizabeth Cabraser also served as Class Counsel in the Washington ZAI Class Action (Edward Westbrook then being from the law firm of Ness Motley). Alan McGarvey, from the law firm of McGarvey Heberling also acted as co-counsel in the Washington State ZAI Class Action.

The Washington ZAI Class Action was brought in the Spokane County Superior Court of the State of Washington on behalf of residents of the State of Washington only.

8

A companion nationwide ZAI Class Action was filed in the U.S. District Court of

Montana by the law firms of Leiff Cabraser, Ness Motley, McGarvey Heberling, and

L&A (*Price v. W.R. Grace*).  Clients of the McGarvey Heberling firm served as the

proposed class representatives in that action.  That action, together with several other

pending ZAI class actions brought by other counsel in other jurisdictions were transferred

through MDL proceedings upon motion by Grace to the U.S. District Court of

Massachusetts.  Leiff Cabraser and Ness Motley, among others, were appointed to the

Plaintiffs' Steering Committee in the nationwide ZAI MDL proceeding (MDL 1376).

L&A was not.  Consequently, L&A played only a minor role in the nationwide ZAI

Proceedings, as reflected in L&A's time records.

Following Grace's bankruptcy filing, Barbanti (one of two class representatives in

the Washington State ZAI Class Action) and Price (one of the proposed Class

Representatives in the Nationwide MDL 1376 ZAI proceedings) were appointed to the

Official Asbestos Property Damage Committee.  Present Class Counsel Darrell W. Scott

served as the attorney in fact for Barbanti on that committee, while present Class Counsel

Elizabeth Cabraser served as attorney in fact for Price.

In December of 2004, Darrell W. Scott departed L&A to enter into solo practice

as The Scott Law Group, P.S.  *See* Scott Decl. at ¶ 38.  L&A, at that time, made a

business decision to voluntarily withdraw from further representation of all clients who

were creditors of Grace, including representation of all 270 of its ZAI clients, as well as

30 Grace asbestos personal injury clients, and 3 clients with other related claims against

Grace.  *Id.* at ¶¶ 54-55.  From December 15, 2004 to present, L&A has had no

involvement whatsoever in representing the interests of ZAI claimants.

# III.    Arguments

**A.    L&A Voluntarily Withdrew from Contingent Representation and Thereby Relinquished any Right to Recovery of Fees.**

An attorney who voluntarily withdraws from contingency representation before settlement or judgment may not, thereafter, obtain recovery of any fee, absent demonstration that his withdrawal was for "good cause" or "justified."  *Ryan v. State*, 51 P.3d 175 (Wash. App. 2002); *Ausler v. Ramsey*, 868 P.2d 877 (Wash. App. 1994).

This principal of equity is designed to protect the legal interests of clients and safeguard their ability to secure new counsel when discharged by their former counsel. It is the modern majority rule and the law of Washington State, the jurisdiction where L&A is located and where it entered into contingency fee agreements with its many Washington clients, including U.S. ZAI Class Representatives Marco Barbanti and Ralph Busch.  *See Ryan*, 51 P.3d at 178; *Ausler*, 868 P.2d at 882.

This equitable rule prevents attorneys from "hedging their bets" through avoidance of further risk and expense by withdrawal, while maintaining expectation that compensation will be received, should other counsel prepared to accept those risk prove successful.  See *Ausler*, 868 P.2d at 881; *Estate of Falco*, 233 Cal. Rptr. 807 (Cal. App. 2d 1987).

Absent this important rule of equity, a discharged client's ability to secure other counsel would be jeopardized.  New counsel's prospects of receiving satisfactory compensation would be placed at risk.  Withdrawing counsel would enjoy an unjust windfall when it had failed to secure the contingency upon which its compensation depended.  Placed in the present context, no attorney, including The Scott Law Group,

would have assumed representation of L&A's discharged clients, were those clients functionally encumbered, through no fault of their own, with a $4,000,000 lien, as L&A now contends they have.

This rule also ensures equality between the attorney and the client in their contingency fee relationship. The client accepts the drawbacks of the contingency fee arrangement that reduces, potentially substantially, any recovery. The attorney, however, must accept the corresponding drawbacks of the contingency relationship in that his withdrawal without demonstrable and narrowly prescribed "good cause" constitutes a relinquishment of any entitlement to fees. *See Ausler,* 868 P.2d at 881; *Falco,* 233 Cal. Rptr. at 812 (citing *Hensel v. Cohen*, 202 Cal. Rptr. 85 (Cal. App. 2d 1984)).

This rule of forfeiture is applicable not only in the context of a withdrawing attorney seeking compensation from his former client *in quantum merit*, but also where a co-counsel in a certified class action voluntarily withdraws from representation before class settlement is achieved and thereafter seeks a fee. *B. Dahlenburg Bonar, P.S.C. v. Waite, Schneider, Bayless & Chelsey Co., L.P.A.*, 373 S.W.3d 419 (Ky. 2012).

The "good cause" or "justification" showing necessary to a court's award of fees to an attorney who has voluntarily withdrawn is separate and distinct from the "good cause" inquiry a court performs in judging whether withdrawal was <u>permissible</u>. The applicable cases in which fees were denied involve situations where the attorney's withdrawal was permissible. The applicable "good cause" standard to preserve a fee interest has been narrowly construed to situations where withdrawal was essentially mandatory. Good cause exists, consequently, where the attorney determines that the client's claim is fraudulent. Good cause exists where ethical rules require the attorney to

11

withdraw.  Good cause may exist where a breakdown in the relationship with the client justifies withdrawal.  *Ausler*, 868 P.2d at 880 n.4 (citing 88 A.L.R.3d at 255-56).

By contrast, business considerations, the attorney's economic interests, and changed litigation circumstances do not constitute good cause.  The fact that a client has retained other counsel does not constitute good cause.  Increased responsibility for a case resulting from the departure of co-counsel does not constitute good cause.  *Ryan*, 51 P.3d at 178.  Considerations such as a law firm's time constraints or judgment that a law firm's legal resources are best redirected to other legal matters does not constitute justification or good cause supporting an award of fees.  *Id.*   A determination that the case is not sufficiently compensatory, or that the case lacks potential, or concern that continued representation would jeopardize an attorney's professional relationships or harm his client base similarly do not constitute good cause permitting an award of fees. *Ausler*, 868 P.2d at 880 n.4; *Bonar*, 373 S.W.3d at 422-423.

An attorney who has withdrawn from a contingency matter and who thereafter seeks fees bears the burden of proof that his withdrawal was for "good cause" or "justified." *Ryan*, 51 P.3d at 177.  L&A has not attempted such proof.  L&A, consequently, has failed to advance a prime facie case for its entitlement to fees.

L&A voluntarily withdrew from representation of ZAI matters, announcing to its ZAI clients through unexpected correspondence:  "The firm of Lukins & Annis is not going to handle any aspect of this case and will be withdrawing as counsel of record." Scott Decl., Ex. I.  The Scott Law Group agreed to assume responsibilities for all of L&A's clients and L&A, consequently, released its ZAI client files to The Scott Law Group.  *Id.* at ¶¶ 54, 56.  L&A subsequently told this Court in no uncertain terms that it

was washing its hands of the entire Bankruptcy by filing its notice of withdrawal with the Bankruptcy Court. *Id.*, Ex. J.

The circumstances of L&A's decision to voluntarily withdraw demonstrate that its withdrawal was an informed business decision (perhaps prudent at the time) made in view of the mounting risks of ZAI representation and occasioned by the departure of one attorney, Mr. Scott. *See* Scott Decl. The Science Trial proceedings for which L&A had been routinely compensated on an regular hourly bases for approximately a year and a half, L&A knew, were coming to an end. The ZAI Science Trial, involving opposing motions for summary judgment, had been completed only a few weeks earlier. *See* Scott Decl., at ¶ 52. L&A anticipated that the awaited decision of the bankruptcy court would be unfavorable. *Id.*

L&A was fully capable of continuing representation of its many ZAI clients in ongoing bankruptcy proceedings following Mr. Scott's departure had it desired to do so. *See* Scott Decl., at ¶ 62. The single departing attorney, L&A has represented ". . . supervised over 30 L&A lawyers, paralegals, and litigation assistants to prosecute these matters." *See* Partial Joinder of Lukins & Annis, P.S. in Motion of ZAI Class Counsel for Common Fund Fee Award, **D.I. 31794**, p. 3 and Declaration of Jed W. Morris, Ex. 1 at ¶ 10, **D.I. 31794-1**. L&A, at the time, was a law firm of 53 attorneys, including counsel having expertise in the representation of creditors in bankruptcy proceedings. Scott Decl. at ¶ 61. The single departing attorney, who was entering into solo practice with one paralegal, one secretary, and one minimum wage staff person, by contrast, had no expertise in bankruptcy practice, other than hard won experience gained in representing ZAI claimants in the Grace bankruptcy itself. *Id.*

ZAI claims, at the time, faced potentially years of bankruptcy proceedings, including determination of a suitable ZAI Proof of Claim process and ultimately determination of how ZAI creditor claims should be treated within Grace's Plan of Reorganization.   L&A, in short, was well equipped to continue its representation of ZAI clients, if it had a desire to do so.

L&A has attempted to advance a false impression that its withdrawal was involuntary ("When he left, he took all of the voluminous ZAI-related files and evidence (dozens of boxes) and most of his class action team.  Mr. Scott took the ZAI litigation with him and The Scott Law Group continued to represent the ZAI claimants." Declaration of Jed Morris.)  The relevant facts bearing on Darrell W. Scott's departure and L&A's business decision to withdraw from representation are fully detailed in the Declaration of Darrell W. Scott filed in support hereof.  No client discharged L&A and no client was asked to discharge L&A.  L&A made a business decision to discontinue involvement in all Grace bankruptcy matters, including representation of ZAI claimants. L&A's clients were simply informed by L&A that L&A had elected to withdraw from representation and that The Scott Law Group was prepared to assume that representation. *See* Scott Decl., Ex. I.  L&A gave the clients no option to continue with L&A.  It simply told them "Good-bye."  In short, L&A's failure to demonstrate "good cause" for its voluntary withdrawal from representation is determinative of L&A's entitlement to fees from the common fund.

Finally, L&A has cited no case, and undersigned counsel are not aware of any case, where a firm that voluntarily quit a class action (not at a client's request, not by

14

virtue of losing out on a lead counsel contest, not by being shut out of work through assignment of tasks to other counsel) has ever been given a class counsel fee allocation.

**B.      L&A Values Work Using an Improper and Discredited Legal Standard; L&A's Estimations, Consequently, are Useless in Determining the Fact of or Value of L&A's Common Fund Fee Entitlement.**

The Third Circuit has long been a leader in developing class counsel attorney fee award methodology to implement the common benefit doctrine in the specific context of FED. R. CIV. P. 23 awards.  Having pioneered the original lodestar (time-based) system, it also led the more recent shift from the lodestar approach to a result-based, percentage-of-recovery analysis.  Percentage-of-recovery is now the preferred method, in all Circuits, to determine class counsel fees in class action settlements.  This profound and practical shift from time-based to result-based compensation was founded on the insight that in class actions, results matter most, because class members cannot afford to pay the time and costs of representation on an ongoing basis, and cannot monitor the time and cost "their" lawyers incur.  Courts can, and do, monitor class fees to assure that compensation is proportional to outcome.  *See In re Diet Drugs Prod. Liab. Litig.,* 582 F.3d 524 (3d Cir. 2009); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir.1998).

Basing both the fact and the amount of compensation on the respective contributions of counsel to the success of the case is optimal, both from the standpoint of the interests of class members in the outcome of their own case; and from the broader policy standpoint of incentivizing experienced counsel to incur costs and risk their time, without guarantee of remuneration, to prosecute complex, often protracted class cases.

A historical account of the decisive shift from lodestar to percentage methodology is presented in *Camden I Condo. Assn., Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

The percentage method, which pivots on results obtained instead of time incurred, has deep roots. *See*, e.g., *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 394 n.18 (1970), *citing* Hornstein, "Legal Therapeutics: The 'Salvage Factor' in Counsel Fee Awards," 69 Harv. L. Rev. 658, 660 (1956). "Where success is a condition precedent to compensation, hours of time expended is a nebulous, highly variable standard of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour. A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 631 (D.Colo. 1976). Hornstein's insights into value were first used to add "multipliers" for quality and results to the lodestar calculation. *See*, e.g., *In re Gas Meters Antitrust Litig.*, 500 F.Supp. 956, 961 (E.D. Pa. 1980). More recently, they have been invoked as the foundation of the percentage approach. *Wolff v. Cash*, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. 2012).

The Third Circuit's leading percentage-of-recovery decisions include *In re Rite-Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005); and *In re Cendant Corp. PRIDES Sec. Litig.*, 243 F.3d 722 (3rd Cir. 2001) ("*Cendant 1*") applying the largely qualitative award factors set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *In re Prudential*, 148 F.3d at 338-340. The familiar *Gunter* factors are: (1) the size of the fund and the number of persons benefitted; (2) the presence or absence of substantial objections by class members; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of non-payment; (6) the amount of time devoted; and (7) awards in similar cases. *Prudential* adds (8) the value of the benefits attributable to the efforts of class counsel relative to the efforts of

others; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of the settlement.  148 F.3d at 338-340.

There is thus no direct causal relationship between the logging of time and the receipt of fees.  Rather, counsel must knowingly accept the risk of non-recovery, and actively contribute to the result by personally devoting their effort, skill, expertise, and perseverance to the case, until an ultimate benefit is obtained.  Surgeons are not paid for the time they spend, but for their expertise; and one who abandoned an operation mid-way should expect no payment.  Likewise, time spent does not have inherent value; "I bill, therefore I am" is irrelevant in the class action context.  Instead, it is the ideas, perseverance, expertise, and creativity, applied at crucial moments and over the long haul, with demonstrable links to an ultimately beneficial result that the Third Circuit's percentage-of-recovery method recognizes and rewards.

Here, the bankruptcy court approved the aggregate percentage, and referred a dispute regarding allocation for court-appointed expert recommendations.  The essential link between work and result is applied, under the prevailing percentage-of-recovery approach, to the allocation of the fee among class counsel, as well as to the determination of the aggregate fee.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3rd Cir. 2005) ("*Cendant 2*").  The *Cendant* decision instructs on the factors that guide judicial resolution of disputes regarding entitlement to a share of the class counsel fee.  The key is the link, or lack thereof, between the effort devoted by specific counsel, and the outcome. In *Cendant*, lead class counsel allocated the court-awarded fee among the active class counsel, as is the norm.  Several excluded firms challenged the allocation, taking their

grievances to court, claiming that they too had conferred a benefit on the class. The Third Circuit disagreed. The touchstone is not the number of hours; all time is not created or considered equal under *Gunter*. Instead, the crucial determination is "what work . . . actually contributed to the class's recovery." *Cendant 2,* 404 F.3d at 195.

Thus, in *Cendant*, the Court determined that any early and routine work, such as the filing of multiple complaints, unaccompanied by ongoing efforts at key junctures of the litigation, had little or no value from the class' standpoint, and as such was disallowed or heavily discounted. The *Cendant* court found it improper to compensate the early time of long-inactive firms "without regard to whether they contribute anything further to the class action." *Id*. *Cendant* emphasizes that, in allocating fees, "the court's only consideration must be whether or not the attorney's work provided benefits to the class." 404 F.3d at 197. Only "attorneys whose efforts create, discover, increase, or preserve the class's ultimate recovery will merit compensation from that recovery." *Id*., *citing inter alia Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).

L&A's brief pays lip service to the Third Circuit standards governing the awarding of and allocation of fees in the common fund fee context, but jumps the track when it comes time to actually perform that analysis. Consideration of the *Gunter* factors is "essential to a proper exercise of discretion and to an appropriate consideration of attorney's fee awards . . . " *Welch v. Cendant*, 243 F.3d at 735 (3d Cir. 2001). L&A fails to even consider those factors.

Rather than demonstrating benefits actually achieved, demonstrating their causal connection to establishment of the fund, and comparing its accomplishments to those of Class Counsel, L&A turns its entire analytical focus to "relative risk and lodestar." It

takes this course based on a sentence found in an unreported district court opinion emanating from the 7th Circuit (*In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954 (N.D. Ill., Dec. 9, 2009)), a circuit that, unlike the Third, favors lodestar analysis.  L&A's charts, consequently, focus on "risk" and culminate in a discredited lodestar exercise contained in Chart 4.   L&A, thus, fails to do precisely what the Third Circuit requires be done.  L&A fails to identify and prove actual benefits L&A achieved for U.S. ZAI Class Members, demonstrate a causal connection between those benefits and the establishment of the U.S. ZAI Common Fund and then qualitatively compare those discernable benefits with achievements accomplished by Class Counsel.  The essential consideration in allocating a common fund fee award is "the benefit to the class, not the amount of time expended."  *Milliron v. T-Mobile USA, Inc.,* 423 Fed. Appx. 131, 135, 2011 U.S. App. LEXIS 7816 (3d Cir. 2011).  What is important in the fee allocation analysis is what counsel actually did and how it benefited the class.  *In re Prudential*, 148 F.3d at 342.  Only work that actually confers a benefit on the class is compensable. *Cendant 2*, 404 F.3d at 197.

L&A's analysis is simply a mechanical calculation of fees using as a numerator all work purportedly performed by L&A and using as a denominator L&A's incorrect calculation of all work performed by all counsel.  L&A, thus, values all time equally, without regard for whether the work accomplished anything and without regard for whether the work bore a causal connection with the establishment of the common fund. L&A, in short, does not conduct a "results-based" inquiry into what L&A actually achieved, demonstrate a causal connection between that achievement and the

establishment, increase, preservation, or discovery of the U.S. ZAI common fund, and then compare those accomplishments with those of Class Counsel.

Finally, L&A's brief is replete with grandiose representations regarding the importance of its work. The only factual support for its representations are time summaries prepared by a L&A attorney who had no personal involvement in ZAI representation, who was not an attorney at L&A during L&A's period of representation, and whose work represented "L&A's best subjective efforts to characterize and quantify the hours spent during these time periods." *See* Motion of Lukins & Annis, P.S. for an Allocation of the ZAI Class Action Common Fund Fee Award, **D.I. 32034**, n.48.

Failure to apply the proper legal standard in issuing an attorney fee award constitutes an abuse of discretion. *Cendant 1*, 243 F.3d at 727. L&A has failed to provide the Court with a legal basis upon which it could exercise discretion to award a fee to L&A.

**C.     Application of the Qualitative *Gunter/Prudential* Factors Demonstrates that L&A Achieved Little or No Meaningful Benefits that Established, Increased, Preserved, or Discovered the Common Fund.**

The well recognized *Gunter/Prudential* factors essential to a proper exercise of discretion and to an appropriate consideration of attorney fee awards are: (1) the size of the fund and the number of persons benefitted; (2) the presence or absence of substantial objections by class members; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of non-payment; (6) the amount of time devoted; and (7) awards in similar cases. *Prudential* adds (8) the value of the benefits attributable to the efforts of class counsel relative to the efforts of others; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative

terms of the settlement.  *In re Prudential,* 148 F.3d at 338-340.  An analysis of these factors follows.

### 1.  *The Size of the Fund and the Number of Persons Benefitted.*

Class Counsel negotiated a U.S. ZAI Class Settlement that secured a total potential payout of $140,000,000 ($60,000,000 in guaranteed payments and an additional potential $80,000,000 over the next twenty years depending on the rate of ZAI claims). This fund was established through the efforts of Class Counsel.  L&A was not involved in its creation, having abandoned the ZAI battlefield more than four years earlier.

The U.S. ZAI Class Settlement benefits two communities:  U.S. ZAI Class Members (17,387 U.S. homeowners who timely filed ZAI proofs of claim in response to Grace's U.S. ZAI Proof of Claim Program, commenced three years after L&A withdrew from representation) and future U.S. ZAI claimants (homeowners located anywhere in the United States who, over the next twenty years, incur expense in removing, abating, or containing ZAI).

L&A features as its principal contribution, its involvement in successfully securing certification of the *Barbanti v. W.R. Grace* class action.  That action pursued the rights of Washington State residents only and did not have recovery of damages as a focus.  The Washington Class constitutes only 9% of the U.S. ZAI Class for whom Class Counsel secured the $140,000,000 recovery.  Scott Decl. ¶ 65.  While playing an early role in representing 9% of the beneficiaries of the U.S. ZAI Class, L&A played no role in representing ZAI interests from late December 2004 forward.

### 2.  *The Presence or Absence of Substantial Objections by Class Members.*

FED. R. CIV. P. 23(h) governs the award of attorney fees and costs in a class action. That rule provides that a claim for award of fees and costs must be made through motion and that notice of the motion must be served on class members in a reasonable manner. FED. R. CIV. P. 23(h)(1).

Class Counsel, in accordance with FED. R. CIV. P. 23(h)(1), provided notice to the U.S. ZAI Class that Class Counsel intended to seek an award of fees for themselves in a maximum amount of 25% and seek reimbursement of their costs: "Notice is expressly given that, subject to judicial approval, the settlement funds may be disbursed **in part to Class Counsel for their efforts** in creating the settlement fund in an amount of up to 25% of the non-contingent payment by W.R. Grace to the Trust.  Subject to Bankruptcy Court approval, Class Counsel may also be paid from the settlement fund for their unreimbursed out-of-pocket ZAI litigation costs."   [Class Notice, **D.I. 20529**, Att. 2, paragraph 20, emphasis added].

The subject notice was in keeping with the U.S. ZAI Class Settlement, which provided: "Class Counsel may seek from the Bankruptcy Court an award of attorney fees, not to exceed 25% of the W.R. Grace non-contingent payment obligations described in the Memorandum of Agreement, together with reimbursement of costs."[2]

Thereafter Class Counsel, jointly and separately from any claim to fees or costs that L&A may have, moved for an award of attorney fees to Class Counsel based on benefits achieved by Class Counsel.   In doing so, Class Counsel did not rely on any work

---

[2] The U.S. ZAI Class Settlement, it may be observed, sets a limit on fees Class Counsel may seek.  It does not set an aggregate limit of common fund fees that may be awarded from the common fund to all potential fee claimants.

performed by L&A and conducted a lodestar cross check as to the reasonableness of their

percentage request, based exclusively on hours of work performed by Class Counsel's

three respective law firms.  No Class Member lodged any objection to Class Counsel's

request for fees or costs.

L&A has now petitioned the Court for an award of fees and costs without having

provided any notice to U.S. ZAI Class Members, as required under FED. R. CIV. P.

23(h)(1).  Class Members, consequently, have been afforded no opportunity to object to

or comment on L&A's request for fees or costs.

### 3.  *Skill and Efficiency of Counsel.*

The U.S. ZAI Class Settlement was negotiated through the skill and efficiency of

Class Counsel.   L&A had no involvement in negotiating the U.S. ZAI Class Settlement,

no involvement in crafting the ZAI Trust Distribution Protocol that renders the settlement

functional, no involvement in the complex process of integrating the settlement terms

into a Plan of Reorganization, and no involvement in designing and establishing the U.S.

ZAI Claims Facility that will serve the U.S. ZAI Class for the next twenty years or more.

The skill and efficiency of L&A, consequently, is of little relevance because they are

unconnected to the immediate benefits enjoyed by U.S. ZAI Class Members.

The skill and efficiency of counsel are "measured by the quality of the result

achieved, the difficulties faced, the speed and efficiency of the recovery, the standing,

experience and expertise of the counsel, the skill and professionalism with which counsel

prosecuted the case, and the performance and quality of opposing counsel." *Bradburn*

*Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322,

338 (E.D. Pa. 2007) (citing *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166,

194 (E.D. Pa. 2000)).  By abandoning ZAI litigation in 2004, L&A departed before results were achieved, contributed nothing to the quality of the results achieved, determined <u>not</u> to face the difficulties ahead, contributed nothing to the speed and efficiency with which recovery was ultimately achieved, abandoned their professional role, and withdrew their skills in prosecuting the case.

Finally, the skill and efficiency of an attorney is typically reflected in the hourly rate the attorney is able to command.  *Lindy Bros. Builders v. American Radiator*, 540 F.2d 102 (3rd Cir. 1976) ("counsel who possess or who reputes to possess more experience, knowledge, and legal talent generally command hourly rates superior to those who are less endowed. Thus, the quality of an attorney's work *in general* is a component of the reasonable hourly rate; . . .) The comparative regular hourly rates charged as between attorneys, consequently, is a general indicator of the relative skill and efficiency of counsel.

The comparative hourly rates of counsel here demonstrates that all counsel are not equal.

|  | Elizabeth Cabraser (EC) | Ed Westbrook (EW) | Darrell Scott (DS) | L&A Attorneys |
|---|---|---|---|---|
| **2000** | $460.00 | $500.00 |  | $240.00 (Darrell Scott) |
| **2004** | $650.00 | $650.00 |  | $405.00 (Darrell Scott) |
| **2008** | $800.00 | $750.00 | $460.00 |  |
| **2014** | $950.00 | $850.00 | $550.00 |  |

L&A's lodestar analysis, shown in Chart 4 of its brief, exaggerates L&A's importance by seizing upon the "Kirkland and Ellis" rates and adopting those rates as their own.  The Third Circuit recommends that courts conduct a rough lodestar cross check using "blended" hourly rates in issuing a percentage-of-fund award in a common

fund case.  The purpose of the rough crosscheck is to evaluate the reasonableness of the requested percentage, given the "multiplier" that emerges from the cross check.  Class Counsel's fee petition, consequently, employed Kirkland and Ellis rates as a "blended" rate in conducting a rough lodestar crosscheck, since Class Counsel had regularly faced Kirkland & Ellis' counsel in the critical bankruptcy proceedings.

This "blended' hourly rate approach is successful at crosschecking the appropriateness of the percentage being requested.   Those rates, however, are meaningless when one is engaged in an effort to assess the relative value of work performed by counsel.  Their use by L&A dramatically exaggerates the value, importance, skill, and efficiency of L&A, as compared with other counsel.  When used to calculate a lodestar value for L&A's time, it credits L&A with hourly rates that L&A could not possibly command (and which Class Counsel Elizabeth Cabraser and Edward Westbrook do command).

### 4.  *The Complexity and Duration of Litigation.*

Pursuit of U.S. ZAI Claims has lasted fourteen years.  Class Counsel have tirelessly persevered throughout that long period.  L&A made a business decision to give up on ZAI in the fourth year of engagement.

Work on ZAI is not over.  Class Counsel will be engaged in the time consuming enterprise of designing and implementing a U.S ZAI Claims Facility that will operate for the next twenty years or more.  Class Counsel will receive no compensation for this important work through January of 2015, other than that afforded by the Court's previous order of fees to Class Counsel.  L&A's last involvement in ZAI matters, by contrast, remains December 15, 2004 – almost ten years ago.

As to the complexity of ZAI representation, matters grew exponentially more complex, not less complex, over ZAI's long history.  At the point of L&A's first engagement, ZAI claims existed as a class action involving a modestly sized class, no unique hurdles toward class certification, and a novel subject, all pending in state superior court located in L&A's hometown.  The litigation, manageably confined to residents of the State of Washington, was based on well-established Washington statutory product liability and consumer protection law with which L&A was already well familiar. L&A had a limited and subordinate role in the nationwide ZAI litigation spearheaded by Class Counsel Elizabeth Cabraser.   L&A's minor role is evidenced by its comparatively small investment of time in those nationwide efforts (207.20 hours) in comparison with the Washington Class Action (5,015.85 hours).

Grace's bankruptcy filing on April 2, 2001, was transformative and thrust ZAI litigation into the procedurally treacherous waters of bankruptcy practice.  During this new stage of ZAI representation, dating from Grace's initial filing until roughly the close of the Science Trial Proceeding, ZAI counsels' work principally focused on ultimately unsuccessful efforts to avoid an individualized ZAI proof of claims process and achieve recognition instead of one or more class proofs of claim.  This period culminated in the Science Trial Hearing, which ultimately proved highly unsuccessful for ZAI claimants.

The Science Trial Hearing, which concluded on October 18, 2004, just seven weeks before L&A washed its hands of ZAI litigation, represented another watershed in the complexity of ZAI representation.  It ushered in a still more complex period where hope of avoiding an individualized ZAI Proof of Claim Process vanished and during which Grace and the PI constituency announced a consensual Plan of Reorganization that

did not recognize ZAI claims as having any validity, further darkening the skies for ZAI

claimants.   The bankruptcy court's Science Trial opinion substantially granted Grace's

motion for summary judgment, and in the minds of many, was an obituary for ZAI.

Class Counsel, throughout this period, persevered.  L&A had turned its back on ZAI

years earlier.

        The most complex and challenging stage of ZAI representation faced by Class

Counsel was sustaining the viability of ZAI claims in the face of the bankruptcy court's

Science Trial Order, in the face of a consensual Plan of Reorganization that threatened to

cram down all ZAI claims, and in the face of an ongoing ZAI proof of claim process that

threatened to contract ZAI claims from a potential nationwide community of hundreds of

thousands of homeowners to a small collection of individuals who were aware that their

homes contained ZAI and who had the good fortune of encountering Grace's published

bar date notice.  Class Counsel alone, and at great risk, took on this formidable challenge.

L&A, meanwhile, was nowhere to be seen.

        ZAI claimants, to the surprise of a considerable portion of Grace's bankruptcy

constituency, emerged from these formidable challenges with a U.S. ZAI Class

Settlement in hand.  The circumstances of Class Counsel having achieved this success are

detailed in Class Counsel's Motion for Award of Fees.

        L&A belittles work performed by Class Counsel following L&A's departure.  But

at the time L&A quit the litigation in December 2004, the oft-stated view of Grace's lead

counsel, Mr. Bernick, that the ZAI claims were essentially worthless, was shared by

many in the bankruptcy.  It took herculean effort by the Class Counsel firms to

demonstrate to the other bankruptcy constituencies that ZAI claims had significant value

and needed to be dealt with responsibly for a successful reorganization.  A summary of some of those activities shows what was accomplished without any involvement whatsoever by L&A.

### POST-SCIENCE TRIAL ACTIVITIES REQUIRED TO RESOLVE ZAI CLAIMS IN A COMPREHENSIVE SETTLEMENT FACILITY

| Activity | Class Counsel Involvement | | | L&A Involvement |
|---|---|---|---|---|
| | RPWB | SLG | LCH&B | |
| Develop strategy to reassert ZAI claims' legitimacy despite Science Trial Ruling[3] | YES | YES | YES | NO |
| Respond continuously to claimants' requests for information on litigation status; prospects for payment; bankruptcy process; and court rulings | YES | YES | YES | NO |
| Prepare Motion for Interlocutory Review of Science Trial Opinion | YES | YES | YES | NO |
| Argue Motion for Interlocutory Review in District Court | YES | YES | NO | NO |
| Prepare Motion for discovery concerning Grace's activities during summary judgment proceedings | YES | YES | YES | NO |
| Prepare Motion to Appoint Expert Witness Regarding ZAI Issues | YES | YES | YES | NO |
| Prepare Motion to Lift Stay and Return ZAI Claims to the Tort System | YES | YES | YES | NO |
| Argue Motion to Lift Stay and Return ZAI Claims to the Tort System | YES | YES | NO | NO |
| Prepare Motion to Dismiss Individual ZAI Claims to Permit Appellate Review | YES | YES | YES | NO |
| Argue Motion to Dismiss Individual ZAI Claims to Permit Appellate Review | YES | YES | NO | NO |
| Work on strategy and planning in opposition to Grace's Motion for ZAI Immediate Bar Date | YES | YES | YES | NO |
| Participate in Court-Ordered Mediation on Potential Consensual Plan | YES | YES | YES | NO |
| Review EPA litigation position in government criminal case against Grace for effect on ZAI Grace bankruptcy outcomes | YES | YES | YES | NO |

---

[3] All three Class Counsel firms participated in developing their post-Science Trial strategy.  To carry out that strategy efficiently, they assigned primary responsibility to one or more of their firms, who took the lead on a particular project while getting input from others as appropriate.  This avoided duplication of effort and unnecessary hours spent on redundant tasks, while keeping all three Class Counsel firms engaged.  Because the primary responsibility for many of the tasks identified above was assumed by either RPWB or The Scott Law Group, Class Counsel all agreed that this greater responsibility should be reflected in a greater fee allocation (42.5%) to each of those two firms, while Lieff Cabraser's valuable, but lesser involvement was recognized with a 15% fee allocation.  Because they had all made a conscious decision to avoid "running hours" for hour's sake, the fee allocation was not based on hours, but on responsibility, results, and the other relevant *Gunter* factors.

| Activity | Class Counsel Involvement | | | L&A Involvement |
|---|---|---|---|---|
| | RPWB | SLG | LCH&B | |
| Attend Omnibus Hearings on matters of potential interest to ZAI | YES | YES | YES | NO |
| Periodic Discussions with PI Futures Representative as the bankruptcy progressed on Possible Bankruptcy Plan | YES | YES | YES | NO |
| Ongoing dialogue with PI Committee Rep (Ness Motley) on ZAI treatment in bankruptcy under various scenarios | YES | YES | YES | NO |
| Exploratory discussions with PI Committee Rep (Ness Motley) and Equity Committee on ZAI bankruptcy status | YES | YES | YES | NO |
| Initial settlement meetings with PI Committee Rep (Ness Motley), Grace, Equity Committee, and PI Futures Rep | YES | YES | YES | NO |
| Follow-up settlement meetings working toward possible Agreement in Principle | YES | YES | YES | NO |
| Drafting and refining Agreement in Principle | YES | YES | YES | NO |
| Subsequent meetings to discuss expanding potential settlement to include ZAI future claims | YES | YES | YES | NO |
| Discussions regarding selection of PD Futures Representative | YES | YES | YES | NO |
| Expanded settlement discussions with Grace, Equity, PD Futures Rep, counsel, others, regarding encompassing ZAI futures in a 524(g) settlement facility | YES | YES | YES | NO |
| Negotiation of Comprehensive Settlement Agreement | YES | YES | YES | NO |
| Prepare Motion for Preliminary Approval, Class Certification, supporting documents, and Reply | YES | YES | YES | NO |
| Argue Motion for Preliminary Approval | YES | YES | YES | NO |
| Prepare and send Notice of Class Certification and Potential Settlement to ZAI Class Members | YES | YES | YES | NO |
| Review Class responses to Notice and answer questions | YES | YES | YES | NO |
| Prepare Motion for Final Approval of ZAI Settlement, supporting documents, and Reply | YES | YES | YES | NO |
| Argue Motion for Final Approval of ZAI Settlement | YES | YES | YES | NO |
| Coordinate with Grace on Post-Settlement activities supporting Proposed Plan of Reorganization, including Confirmation Hearing preparation | YES | YES | NO | NO |
| Attend Confirmation Hearings | YES | YES | NO | NO |
| Work with Grace and PD Futures Rep on numerous drafts of Property Damage Trust Agreement | YES | YES | NO | NO |
| Work with Grace and PD Futures Rep on numerous drafts of Inter-Creditor Agreement | YES | YES | NO | NO |
| Work with Grace and PD Futures Rep on numerous drafts of Grace Guarantee Agreement | YES | YES | NO | NO |
| Work with Grace and PD Futures Rep on numerous drafts of Deferred Payment Agreement | YES | YES | NO | NO |
| Work with Grace, PD Futures Rep, and ZAI Trustee on numerous drafts of ZAI Trust Distribution Procedures | YES | YES | YES | NO |
| Work with PD Futures Rep and ZAI Trustee on ZAI Funds Investment Issues | YES | YES | NO | NO |
| Work with ZAI Trustee on development of ZAI Trust website and Claim Form | YES | YES | NO | NO |
| Communications with ZAI Class Members regarding status of ZAI Trust; anticipated time frame for operation; answer questions; advise claimants regarding information needed for claim; and respond to claimants' attorneys regarding status | YES | YES | YES | NO |

The principal body of work and principal achievements responsible for creation of the U.S. ZAI Common Fund, consequently, all arose years after L&A washed its hands of ZAI matters. An analysis of the complexity and duration of ZAI matters, therefore, demonstrates that achievements accomplished by Class Counsel during the later stages of bankruptcy were the moving force that created the U.S. ZAI Common Fund.

### 5. *The Risk of Non-Payment.*

The fifth *Gunter* factor is risk of non-payment. L&A pays excessive attention to this single factor. L&A, ironically, is the only firm seeking fees that elected to avoid further risk of non-payment by exiting ZAI litigation in 2004. L&A's picture of the risks of non-payment encountered by ZAI counsel, moreover, is precisely backward.

In an effort to elevate the importance of early work (L&A's work having been performed 10 to 14 years ago), L&A cites *In re Copley Pharmaceutical, Inc.,* "*Albuterol*" *Products Liability Litigation*, 50 F. Supp. 2d 1141, 1155 (D. Wyo. 1999) and *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597-98 (N.D. Ill. 2011) for the proposition "In any class action, there is inherently more risk at the outset, and law firms that are involved at the inception of the class action assume more risk than in the later stages of litigation." These cases simply do not stand for the propositions cited.[4]

Engaging in any contingent litigation, including class litigation, certainly involves a measure of risk. L&A, however, has no monopoly on the risk of non-payment that existed at the outset of ZAI litigation. Class Counsel Elizabeth Cabraser with the law

---

[4] *In Re Copley* merely states the obvious proposition that law firms that are involved at the inception of the class action assume more risk than law firms that join the case in the later stages of litigation; not that risks are invariably higher at the outset. *Schulte* simply acknowledged that Class Counsel in that particular case had incurred a significant risk of nonpayment by accepting the case and quotes another case that states "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee."

firm of Lieff Cabraser, Class Counsel Edward Westbrook, then of the law firm of Ness Motley, and the law firm of McGarvey Heberling all shouldered the same risks in initiating the Washington ZAI Class Action.  The Washington Class Action modestly concerned the state of Washington only and was commenced against a then-solvent defendant capable of satisfying the judgment and whose bankruptcy was not contemplated.

It is difficult to conceive how ZAI counsels' risk of non-payment lessened upon Grace's bankruptcy filing.   L&A abandoned ZAI at the end of 2004, at the very point where Special Counsels' hourly compensation was coming to an end, a fact noted by L&A's President at the time L&A was contemplating its withdrawal from ZAI matters.

Class Counsel's risk of nonpayment was at its zenith when the Bankruptcy Court's Science Trial Opinion granted summary judgment against ZAI claims, more than two years after L&A's departure from the scene, and again in April 2008, more than four years after L&A's retirement, when Grace announced a consensual Plan of Reorganization that did not recognize ZAI claims.  L&A, consequently, has its risk of non-payment analysis upside down.  This factor strongly disfavors L&A.

### 6.  *The Amount of Time Devoted.*

### __L&A Hours__

L&A purports to have invested 8,181 hours in ZAI matters.  This figure is wildly inaccurate.  L&A derives this number by aggregating the following matters, as produced by L&A pursuant to the Court's Order Appointing Rule 706 Expert.

Matter Number 19572-001 Libby General                                         2469.73

Matter Number 19572-003 *Seibolt v. Grace*                                    60.00

| | |
|---|---|
| Matter Number 19572-004 *Groh v. Grace* | 43.26 |
| Matter Number 21964-001 Washington ZAI Class Action (*Barbanti*) | 5015.85 |
| Matter Number 21964-002  Nationwide ZAI Class Action (*Price*) | 207.20 |
| Matter Number 21967-001 Grace Property Damage Committee | 376.70 |

Matter Number 19572-001 (Libby) did not involve ZAI claims.  Work recorded under this billing matter related to three personal injury related class actions brought on behalf of residents of Libby, Montana, arising out of occupational or environmental exposure to asbestos due to Grace's mining activities in Libby, Montana.  The matters sought either medical monitoring for current or former residents of Libby or sought environmental clean-up of Libby, Montana itself based on substantive Montana law.  *See* Scott Decl. at ¶¶ 5-8.

 Matter Number 19572-001 also served as a master file for recording general work performed for individual asbestos personal injury clients who had retained L&A.  Matter Numbers 21964-001 and 002 (which record work pertaining to ZAI) were established precisely because Libby matters and ZAI litigation were separate and distinct lines of litigation, pending in different jurisdictions, representing different constituencies, seeking different relief, and based on different laws.  *Id.* at ¶ 25.

Matter Number 19572-001 involved three Libby class actions all of which proved unsuccessful, and as noted by L&A's President shortly before L&A's decision to withdraw, were "going nowhere."  Scott Decl., Ex. F.  By improperly representing Matter Number 19572-001 as ZAI work, L&A is attempting to hold U.S. ZAI Claimants responsible for attorney fees incurred on behalf of residents of Libby, Montana, an effort that L&A knew was a failure.

Matter Number 19572-003 and 19572-004, similarly, did not involve ZAI claims. Each of these matters involved an individual asbestos personal injury claim brought against Grace as a result of occupational exposure to Libby vermiculite. The two clients involved, Seibolt and Groh, have filed asbestos personal injury proofs of claim in Grace's bankruptcy. They are potential beneficiaries of the Asbestos PI Trust. By representing these personal injury cases as ZAI claims, L&A is attempting to hold U.S. ZAI Class Members responsible for attorney fees incurred in representing individual Grace asbestos personal injury claimants.

L&A's report of hours expended on ZAI matters, consequently, is wildly inflated and not reliable for any purpose. The total actual hours invested by L&A in ZAI matters is 5,240.92. As reflected in L&A's time records, 243.75 of those hours (L&A historical billing value $48,123.75) were incurred in plaintiffs' effort to obtain an order of class certification in the Washington Class Action or respond to Grace's efforts to seek discretionary review. 888.9 hours (L&A historical billing value of $152,558.50) were incurred by L&A in its unsuccessful effort to convince the trial court that a health advisory to Washington homeowners should be issued through preliminary injunction order. The later work involved the retention of experts, testing, and taking of depositions, as referenced in L&A's brief.

The total time devoted to ZAI matters by Class Counsel is 19,181 (Richardson Patrick 7,420; The Scott Law Group 7,137; Leiff Cabraser 4,624). These figures, of course, do not include hours devoted by Ness Motley or McGarvey Heberling, who will share in Class Counsel's award of fees. More importantly, as discussed elsewhere, the L&A hours conferred no benefit on the ZAI Class.

7.    *Awards in Other Cases.*

Awards in two other cases are instructive.  *Bonar*, 373 S.W. 3d 419 (Ky. 2012),

involved a dispute over attorney fees where an attorney who had served as counsel in a

contingent certified class action voluntarily withdrew from representation.  The attorney

subsequently claimed entitlement to a portion of the attorney fees awarded in the action.

Counsel withdrew from the litigation because she perceived conflicts between allegations

made in the litigation and her personal and professional ties with the community, which

potentially jeopardized her client base and professional relationships with colleagues.

The Kentucky Supreme Court upheld the denial of fees to the withdrawing attorney

stating, "When an attorney voluntarily withdraws from a contingency fee case without

good cause, he or she forfeits any fees."  373 S.W. 3d at 422.

*Cendant 2*, 404 F3d 173 (3d Cir 2004), involved a fee allocation dispute arising

out of a class action proceeding.  The trial court had issued a fee award to Class Counsel.

Appellants were three law firms who had represented members of the class, not been

appointed as class counsel, claimed that work they performed benefitted the class, and

who had not been compensated out of the fee award issued by the court.  Appellants

claimed entitlement to compensation from the class's recovery.  Class Counsel's fee

application included lodestar information for the work of the firms receiving

compensation from the fee request, but disclaimed the work of appellants in making

Class Counsel's fee application.  The Third Circuit determined that, under those

circumstances, any award to the Appellants should be paid out of the class's recovery, not

out the fee award already issued to Class Counsel.  *Cendant 2*, 404 F3d at 185.  These

cases support the principles that: (1) a firm that abandons a case is entitled to no fee; and

(2) non-class counsel should look to the common fund in seeking fees, not to class

counsels' fee award, where that award was not based on non-class counsel's work.

**8.    *The Value of the Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Others.***

This *Prudental* factor is intended to measure whether the entire value of the

benefits accruing to the class is attributable to the efforts of class counsel, or if those

benefits are more properly attributable to some other groups, such as governmental

agencies. *Bradburn*, 513 F. Supp. 2d at 340. This factor is neutral as it pertains to

allocation of a common fund fee award here.

**9.    *The Percentage Fee that Would have been Negotiated had the Case been Subject to a Private Contingent Fee Arrangement at the Time Counsel was Retained.***

Private contingent fee arrangements customarily command a 1/3 contingency fee.

As demonstrated in Class Counsel's petition for award of common fund fees, fee awards

in comparable matters commonly approach or equal a 1/3 fee. Class Counsel's joint

request for fees to Class Counsel sought an award of 25%, markedly below a traditional

33.3% award.

L&A incorrectly states that the U.S. ZAI Class Settlement sets an "aggregate limit"

on fees that may be sought. The Agreement set a limit on the fees Class Counsel may

seek. ("Class Counsel may seek from the Bankruptcy Court an award of attorney fees, not

to exceed 25% of the W.R. Grace non-contingent payment obligation . . . ." Class

Settlement Agreement.) Should the Court determine that an award of fees to L&A is

appropriate, therefore, the award is most appropriately awarded out of the common fund,

rather than out of Class Counsel's fees. That result would be in keeping with Third

Circuit authority, in keeping with the 1/3 contingent fee typical in private contingency matters, within the boundaries of fee percentages awarded in similar class actions, and be permitted under the U.S. ZAI Class Settlement.

**10.** *Any Innovative Terms of the Settlement.*

The innovative terms of the U.S. ZAI Class Settlement are fully discussed in Class Counsel's Petition for Award of Fees.  Those provisions included: integration of the legal interest of future ZAI claimants through the appointment of and participation of a ZAI Futures Representative in the settlement process; provision for the development of a multi-year program to educate ZAI homeowners as to the appropriate management of ZAI, thus reducing asbestos exposure; creative funding of the ZAI settlement that ensures availability of fund for a twenty-year period, mitigates the financial burdens on the Debtor, and ensures that money is only spent if and when ZAI homeowners experience financial burdens due to ZAI.

L&A had nothing to do with these innovative terms of settlement.  It had turned its back on efforts to secure benefits for ZAI homeowners four years before Class Counsel engaged in the lengthy effort to conceive and then hammer out the details of these innovative terms.

The ten *Gunter/Prudential* factors, essential to any consideration of a common fund fee award, strongly indicate that L&A's involvement in the U.S. ZAI Class Settlement was attenuated and functionally afforded little or no benefit bearing a causal connection to the common fund's creation.

In issuing fee awards in common fund cases, the Third Circuit contemplates a qualitative and comparative evaluation of benefits actually achieved that created the fund

36

from which fees are being sought.  Courts recognize that Class Counsel are better able to

decide the weight and merit of each other's contributions."  *In re Copley*, 50 F. Supp. 2d

at 1148; *see also Turner v. Murphy Oil USA, Inc.,* 582 F. Supp. 2d 797 (E.D. La. 2008).

For that reason, in exercising their responsibility, courts ideally leave the allocation of a

common fund fee award to be handled by agreement among class counsel.  *In re Copley,*

50 F. Supp. 2d at 1148; *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357

(N.D. Ga. 1993) (citing Newberg, *Attorney* Fee Awards § 2.16 (1986)); *see also Longden*

*v. Sunderman*, 979 F.2d 1095, 1101 (5th Cir. 1992).

Class Counsel and two associated non-class counsel law firms have secured a

sensible and equitable agreement among themselves as to allocation of fees that serves as

a useful analog for treatment of L&A.   The agreement was achieved between counsel

who, unlike L&A, had been continuously engaged in representing ZAI interests and who,

through collaborative work, had ample opportunity to observe and evaluate the

contributions counsel made toward achievement of the U.S. ZAI Class Settlement.  The

allocation and fee sharing agreement reflects the collective judgment of Class Counsel,

the source upon which Court's typically depend in accomplishing an allocation.

While Class Counsel's agreed allocation and fee sharing agreement does not bind

L&A, it does provide meaningful and instructive guidance to the Court.  It sheds light on

L&A's relative situation, and ultimately serves as an analog for awarding fees to L&A,

had it not quit the litigation.  In this regard, Class Counsel stands apart from L&A.  They

negotiated the U.S. ZAI Class Settlement and secured the U.S. ZAI Trust from which all

fees and costs are paid.  L&A did not.

Ness Motley, although not class counsel, played a direct and meaningful role in breaking the log jam that held back successful negotiation of U.S. ZAI Claims. Ness Motley had remained engaged, had the ear of Equity, had an established and productive relationship with Class Counsel Edward Westbrook and other important bankruptcy constituencies, and assisted Class Counsel by laying the foundation for successful settlement discussions. Ness Motley's unique contribution at ZAI's pivotal stage is reflected in the fee sharing agreement detailed above. L&A made no such contribution.

L&A's situation is most analogous to that of McGarvey Heberling. Neither served as Class Counsel. Neither was engaged in any fashion in negotiating or securing the U.S. ZAI Class Settlement or establishing the foundation for successful discussions. The work performed by McGarvey Heberling, like that of L&A, was predominantly performed during the early stage of ZAI representation, years prior to the fateful Science Trial Opinion and Phoenix-like efforts of Class Counsel to rise again. McGarvey Heberling, to its credit, and unlike L&A, remained engaged in ZAI representation from the filing of the Washington Class Action until the Order of Finality as to Grace's Plan of Reorganization.

McGarvey Heberling, like L&A, was counsel in the Washington Class Action. McGarvey Heberling's clients (Price and Preble) served as proposed class representatives in the Nationwide ZAI Class Litigation, just as L&A's then client, Barbanti, served as class representative in the Washington Class Action. Both Price and Barbanti served as members of the Official Asbestos Property Damage Committee.

For its efforts, McGarvey Heberling has agreed to a fee of $250,000. Had L&A stayed in the litigation, like McGarvey Heberling, and kept its clients, like McGarvey

Heberling, it might have been entitled to a fee allocation in the McGarvey Heberling range. Had L&A stayed and given material assistance at the settlement stage, like Ness Motley, it may even lay claim to a fee allocation in the Ness Motley range. But it did neither. Unlike McGarvey Heberling and Ness Motley, L&A extinguished its ZAI involvement in 2004. When it did that, it extinguished any potential right to a fee.

Moreover, L&A enjoyed the benefits of its business decision to withdraw, avoiding further risk and expense to itself and reallocating its resources to more lucrative activities. Having enjoyed the benefits of its business decision, it should not be afforded the benefits of having made the opposite decision: the decision to remain engaged in representation of its clients, to make meaningful contributions at critical junctures in ZAI litigation, and ultimately work toward successful negotiation of the U.S. ZAI Class Settlement.

**D.     Costs.**

As it relates to efforts to secure recovery of costs, L&A is a creature unto itself. L&A is the only law firm seeking recovery of costs that is not Class Counsel. Neither Ness Motley nor McGarvey Heberling sought recovery of their costs from the common fund.

L&A is the only law firm seeking recovery of costs incurred prior to Grace's bankruptcy, L&A's costs having been substantially incurred prior to that event. Class Counsel, by contrast, sought and have recovered only costs incurred after Grace's bankruptcy filing, Grace's having lodged an objection to costs prior to that date.

As a stratagem to evade such objections from Grace and others, L&A has now backtracked from its earlier briefing (*See* Partial Joinder of Lukins & Annis in Motion of

ZAI Class Counsel for a Common Fund Fee Award, **D.I. 31794**) and now inexplicably seek costs out of Class Counsels' fees.   L&A, in that regard, is half-clever.  It is the only law firm that attempts to recover costs, not out of the common fund as permitted under applicable law, but out of Class Counsel's fees, half-clever because no legal authority supports the award of costs out of Class Counsel's fees.

L&A is the only law firm that is seeking recovery of costs without having afforded Class Members notice of its intention to seek costs or afforded them opportunity to object to the cost request, as required under FED. R. CIV. P. 23(h)(1) and (2).

L&A, of course, is also the only law firm that is seeking recovery of costs who quit the litigation.

The law, consequently, does not permit, and equity does not support, the award of any costs to L&A.

## IV.   <u>CONCLUSION</u>

For the above reasons, ZAI Class Counsel requests that the Court deny L&A's Motion.

Date:  April 28, 2014
       Wilmington, DE                    SULLIVAN · HAZELTINE · ALLINSON LLC

                                         <u>*/s/ William D. Sullivan*</u>
                                         William D. Sullivan (No. 2820)
                                         Elihu E. Allinson III (No. 3476)
                                         901 North Market Street, Suite 1300
                                         Wilmington, DE 19801
                                         Tel: (302) 428-8191
                                         Fax: (302) 428-8195

                                         and

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 680
Spokane, Washington 99201

and

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
Edward J. Westbrook
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina  29464

and

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339

*ZAI Class Counsel*