IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DECLARATION OF DARRELL W. SCOTT IN SUPPORT OF ZAI CLASS COUNSEL'S OPPOSITION TO MOTION OF LUKINS & ANNIS, P.S. FOR AN ALLOCATION OF THE ZAI CLASS ACTION COMMON FUND FEE AWARD**

I, Darrell W. Scott, hereby declare as follows:

1.  I am an attorney at The Scott Law Group, P.S., a law firm I founded in late 2004. I am Co-Class Counsel in the U.S. ZAI Class Action, together with Class Counsel Elizabeth Cabraser and Class Counsel Edward Westbrook. I was directly involved in negotiating and securing the U.S. ZAI Class Settlement. I have been continuously and deeply engaged in representing the interests of ZAI claimants from the inception of ZAI litigation in early 2000 to the present. Further, I serve as a member of the U.S. ZAI Trust Advisory Committee, charged with responsibility over the next twenty years to oversee the ZAI Trustee's activities as they related to U.S. ZAI Class Members.

2.  I was previously an attorney at the law firm, Lukins & Annis ("L&A"). I practiced as an attorney at that firm from October 1990 until my departure on December 15, 2004.

DECLARATION OF DARRELL W. SCOTT:  1

**Work Performed by Lukins & Annis on ZAI Claims, Libby Claims, and Asbestos Personal Injury Claims**

3. From roughly 2000 until my departure from L&A on December 15, 2004, L&A represented clients in connection with three distinct areas:

- Cases arising out of environmental or occupational exposure to asbestos in Libby, Montana owing to W.R. Grace's ("Grace") mining and milling operations in that area (hereinafter "Libby claims");

- Cases arising out of Grace's sale to consumers of Zonolite Attic Insulation ("ZAI") (hereinafter "ZAI Claims" or "ZAI matters"); and

- Cases pursued on behalf of individuals who suffered asbestos related disease as a result of occupational or environmental exposure to asbestos, due either to their employment by Grace or their having resided in Libby, Montana (hereinafter "Asbestos PI claims").

4. L&A established billing matter numbers to record work performed on these three distinct areas. I was the individual who directed that the matter numbers be opened and I directed and supervised how those matter numbers were used in recording work performed on these three distinct matters. In that regard:

**Client/Matter Number 19572-001 – Libby Claims**

5. L&A's first engagement in pursuing claims involving Grace concerned representation of residents of the town of Libby, Montana. The first matter number established by L&A, consequently, was Client/Matter Number 9572-001. This matter number was created to record work performed on three closely related companion class actions that all involved the town of Libby, Montana and that all arose out of Grace's mining and milling activities in that small town. This matter number, consequently, was

DECLARATION OF DARRELL W. SCOTT: 2

internally called "Libby," "Libby General," or sometimes "Dorrington," after the first named plaintiff in the first of these closely sequenced class actions. Client Matter Number 19572-001, consequently, records work on the following three cases:

A. **Dorrington/Sather**

6. This medical monitoring class action was commenced on January 31, 2000, in Lewis and Clark County (Helena), Montana. The action was brought on behalf of:

> "all residents and former residents of Lincoln County, Montana who have resided in Lincoln County for one year or more dating from January 1, 1930 through the present (the "Resident Class"); and (2) all employees, and members of their households, which employees worked for one year or more at a vermiculite processing plant in the United States which processed one ton or more of vermiculite ore originating from Zonolite Mountain in Lincoln County, Montana (the "Worker Class")".

7. The subject matter of the litigation was occupational and environmental exposure of Libby residents or Grace employees to Libby vermiculite mined in Libby, Montana. The relief sought was establishment of a Defendant funded medical screening program for Libby residents and employees.

8. This case was coopted by Grace when it voluntarily implemented its own medical surveillance program for current and former residents of Libby, Montana. This class action is one of the cases L&A's President appropriately described in late 2004 as "going nowhere and I guess that means there are now [sic "no"] fees that we would receive, etc." *See* Exhibit G attached. L&A's claim that it invested 8,181 hours representing the interests of U.S. ZAI Class Members is based on L&A's inclusion of this matter number in its figures. L&A's present motion for award of fees, consequently,

DECLARATION OF DARRELL W. SCOTT:   3

seeks compensation for all work L&A performed on this failed medical monitoring case brought principally on behalf of Libby residents.

**B.     Grenfell**

9.     This class action was the federal counterpart of *Dorrington/Sather*. It was brought in the United States District Court of Montana, Missoula Division. Like its state counterpart, the action was brought on behalf of "(a) all residents and former residents of the Libby, Montana area (defined for purposes of this action as residents within a twelve (12) air mile radius of the Courthouse in Libby, Montana) who have resided therein for one year or more dating from January 1, 1930 through the present (the "Resident Class")" as well "all employees, and members of their households, who worked for one year or more at the vermiculite processing plant in Lincoln County, Montana (the "Worker Class")."

10.    The action sought Defendant funded medical monitoring for the Class. The case became moot when Grace voluntarily instituted its own medical monitoring program for current and former residents of Libby, Montana.

11.    This too is one of the cases L&A's President was referring to in December 2004 when he described "Libby cases" as "going nowhere and I guess that means there are now [sic "no"] fees that we would receive, etc." *See* Exhibit G attached. L&A's claim that it invested 8,181 hours representing the interests of U.S. ZAI Class Members is based on L&A's inclusion of this matter number in its figures. L&A's present motion for award of fees, consequently, seeks compensation for all work L&A performed on this failed case brought on behalf of Libby residents.

DECLARATION OF DARRELL W. SCOTT:    4

C. **Tennison**

12. This class action was the final companion case in the "Libby matters." Like its *Grenfell* counterpart, the action was brought in the United States District Court of Montana, Missoula Division. The case was brought on behalf of "Owners of real property situated wholly or partly within a radius of twelve (12) air miles from the courthouse in Libby, Montana, that are improved private properties." The class action sought environmental clean up on behalf of the class. The action was rendered moot when the EPA instituted a massive environmental clean up program in Libby, Montana.

13. This is the final case that L&A's President accurately described in December 2004 as "going nowhere and I guess that means there are now [sic "no"] fees that we would receive, etc." *See* Exhibit G attached. L&A's claim that it invested 8,181 hours representing the interests of U.S. ZAI Class Members is based on L&A's inclusion of this matter number in its figures. L&A's present motion for award of fees, consequently, seeks compensation for all work L&A performed on this failed case brought on behalf of Libby residents.

14. As the result of L&A's work representing residents of Libby, Montana in the above class action matters, various asbestos personal injury clients engaged L&A to represent them in individual personal injury actions. Those clients were typically current or former residents of Libby, Montana or former employees of Grace. In total, L&A was retained by 30 clients to pursue "Asbestos PI Claims" on their behalf.

15. These Asbestos PI Claims directly related to the same asbestos personal injury subject matter that lay at the foundation of the *Dorrington/Sather*, *Grenfell*, and *Tennison* actions. Consequently, all work common to representation of L&A's Asbestos PI claimants was recorded under the Libby matter number 19572. Where an Asbestos PI client or potential client did not yet have his or her own individual sub-matter number, as described below, time keepers were instructed to record work unique to that individual Asbestos PI client in Matter Number 19572-001, prefaced by a parenthetical entry that identified that individual Asbestos PI claimant, e.g. ("Jones"). Such an entry denoted that the work described was performed on behalf of that particular client, rather than on behalf of Asbestos PI clients generally.

16. Client/Matter Number 19572-001, consequently, included all work L&A performed on behalf of Asbestos PI clients that was common to all L&A Asbestos PI clients, as well as certain work uniquely performed for the benefit of an individual Asbestos PI client.

17. L&A's claim that it invested 8,181 hours representing the interests of U.S. ZAI Class Members is based on L&A's inclusion of all work L&A performed on behalf of Asbestos PI clients that was common to Asbestos PI clients, as well as all work performed for certain individual Asbestos PI clients. L&A's present motion for award of fees, consequently, seeks compensation for substantial work L&A performed on Asbestos PI Claims, to be paid by all U.S. ZAI Property Damage Class Members.

18. Finally, when litigation was commenced for individual Asbestos PI clients, or litigation costs individual to a particular Asbestos PI client were incurred, a new individual sub-file matter was established within the Libby General Matter Number

DECLARATION OF DARRELL W. SCOTT:    6

19572. Two of those sub-files are material here: Number 19572—003 and Number 19572—004.

**Libby Sub-file 19572-003 (Raymond Seibolts, et ux. v. W.R. Grace & Co., et al.)**

19. This Asbestos PI Claim was filed in the Spokane County Superior Court on July 14, 2000, Cause No. 00-2-04099-1. Former L&A client Ray Seibolts suffered asbestosis as a result of his employment at a Grace vermiculate expansion plant. Mr. Seibolts' case was removed to Federal Court on August 9, 2000. The case was transferred to MDL 875 because it was a federal Asbestos PI Case.

20. Mr. Seibolts filed an Asbestos Personal Injury Proof of Claim in Grace's bankruptcy. Mr. Seibolts is a potential beneficiary of the Asbestos PI Trust established through Grace's Plan of Reorganization. Mr. Seibolts does not own a home containing ZAI. He is not a U.S. ZAI Class Members.

21. L&A arrived at its 8,181 hours of time spent on ZAI matters by including all time expended on the Seibolts matter in its calculation. In doing so, L&A is attempting to hold U.S. ZAI Property Damage Class Members responsible for work L&A performed on behalf of its former Asbestos PI client.

**Libby Sub-file 19572-004 (Thomas Groh et ux. v. W.R. Grace & Co, et al.)**

22. This Asbestos PI Claim was filed in the Spokane County Superior Court on July 14, 2000, Cause No. 00-2-04100-9. Former L&A client Thomas Groh suffered asbestosis as a result of his employment at a Grace expansion plant. The case was removed to Federal Court on August 9, 2000 and ultimately transferred to MDL 875

DECLARATION OF DARRELL W. SCOTT:    7

because it was an asbestos bodily injury case. Mr. Groh has filed an asbestos personal injury proof of claim in Grace's bankruptcy and he is a potential beneficiary of the Asbestos Personal Injury Trust established through Grace's Plan of Reorganization. L&A arrived at its 8,181 hours of work on ZAI matters by including all work performed in the Groh matter. In doing so, L&A is attempting to hold U.S. ZAI Property Damage Class Members responsible for work L&A performed on behalf of its former Asbestos PI client.

23. The above discrepancies are not minor. They represent 2,573 hours of L&A's purported 8,181 hours spent pursing ZAI claims.

**ZAI Claims**

24. L&A became engaged to represent the interests of Washington homeowners in connection with Grace's consumer product, ZAI. L&A's first ZAI client was Marco Barbanti, who first agreed to engage L&A on approximately February 18, 2000, and who later signed a retainer agreement on April 20, 2000.

25. I established on or about February 18, 2000, a separate and unique new matter number, Matter Number 21964-001. I did so because L&A was embarking on a new and distinct line of litigation on behalf of a new and distinct community of claimants. My purpose in establishing Matter Number 21964-001 was to ensure that work performed on Libby Claims did not become confused with work performed on ZAI Claims. Libby Claims and ZAI Claims involved the same core Defendant, but departed company from there. The fundamental subject of Libby Claims was personal injury while the fundamental subject of ZAI claims was property damage. Libby Claims were

DECLARATION OF DARRELL W. SCOTT:    8

being pursued on behalf of residents of Libby, Montana. ZAI Claims were being pursued on behalf of residents of the State of Washington. Libby Claims involved the common law and environmental laws of the State of Montana. ZAI Claims involved statutory Washington Product Liability and Unfair and Deceptive Practices laws.

26. L&A also became engaged in representing ZAI claims on a national level through litigation initially know as *Price v. W.R. Grace*. Plaintiff Price was a client of the law firm McGarvey Heberling. I, therefore, established a sub-file to track work performed on this nationwide class action, Client/Matter Number 21964-002 (Price), to keep work performed on that related matter separate from its Washington State counterpart, Client/Matter Number 21964-001 (Barbanti).

27. The Washington Class Action (Barbanti) and nationwide ZAI Class Action (Price) bare the same parent matter number (21964) because they are related actions arising out of the same subject matter. ZAI Claims do not share the same parent matter number as Libby Claims (21964 vs. 19572) because they are not meaningfully related matters.

28. Following Grace's bankruptcy filing it became appropriate to establish yet another matter number to record work performed in connection with Official Asbestos Property Damage Committee activities, Matter Number 21967-001.

29. Finally, when appointed as Special Counsel to serve in connection with ZAI Science Trial proceedings, I established a new matter number: Matter Number 21968-001. That billing matter number was used to record work for which L&A would be compensated on a regular hourly bases. As a result of quarterly fee petitions submitted to the Court during the Science Trial proceedings, L&A received

DECLARATION OF DARRELL W. SCOTT:    9

approximately $581,000.00 ($540,000 in fees and $41,000 in costs) in compensation for performing services as ZAI Special Counsel.

30. Uncompensated L&A matters relevant to ZAI Claims, consequently, are limited to:

- Matter Number 21964-001 (Washington Class Action—Barbanti)
- Matter Number 21964-002 (National Class Action—Price)
- Matter Number 21967-001 (Property Damage Committee)

**Review of L&A's Relevant ZAI Matters**

31. I have personal knowledge of L&A's audit practices as they related to time records kept in class actions and mass tort related litigation performed by L&A. Over the course of my years at L&A, I had either primary or secondary responsibility to audit the time keeping records of essentially every class action in which L&A became engaged for purposes of submitting those records to a court. L&A's record keeping and audit practices were as follows:

32. Class actions and mass tort matters are organic and often take fortuitous courses. By way of example, in commencing the Barbanti civil action in the Spokane County Superior Court, I did not divine that I would be engaged in bankruptcy proceedings in Delaware for more than a decade.

33. It was L&A's practice, therefore, to establish appropriate matter numbers for the tracking of separate lines of litigation and then allow individual work entries to mount within those matter numbers until such time that an audit of individual time entries

DECLARATION OF DARRELL W. SCOTT: 10

became appropriate, usually at the close of the case when a fee petition was being made. Individual entries were not audited on a monthly basis.

34. Monthly matter number reports generated by L&A, however, contained a summary page showing total hours invested in the matter, the total costs incurred, and a breakdown of the total hours recorded by individual timekeeper. The summary pages were examined on a monthly basis to gauge the mounting total time a matter was commanding, to insure that individual timekeepers were not billing excessive hours, and to monitor costs that were being incurred.

35. A complete and detailed audit of all time entries made in a matter number, however, was always conducted if the case proved successful and there was occasion to submit a fee petition to the court. Such audits invariably revealed needed corrections. Needed corrections typically involved: billing of time to the wrong matter number, inadequate work descriptions, recording of work that proved clerical, and write-offs of time that was duplicative or write down of time that appeared excessive.

36. A review of the time records L&A has submitted on ZAI matters reveals that those submitted records were unaudited. Among the errors detected are the following: Billing of work to the wrong file, *see* **Exhibit "A"** attached hereto; inadequate descriptions, *see* **Exhibit "B"**; clerical work, *see* **Exhibit "C."**

37. My office has also reviewed entries made in the Libby Matter Number to identify any ZAI work that made have been erroneously recorded there. **Exhibit "D"** shows entries made in the Libby Matter Number that correctly belong in a ZAI matter number.

DECLARATION OF DARRELL W. SCOTT:   11

**Darrell W. Scott's Departure from L&A and L&A's Decision to Voluntarily Withdraw from ZAI Representation.**

38. On the afternoon of December 1, 2004, I met with L&A President, Terrence ("Terry") Whitten, to advise him that I had made a decision to leave the firm and enter into solo practice. I communicated that the date of my departure was flexible and that I would accommodate whatever needs L&A may have in transitioning work within the firm.

39. No client of the firm for whom I had worked, he was advised, had knowledge of my intention to leave the firm, with the single exception of Marco Barbanti, who has a close friendship with my family.

40. I similarly assured him that I had not made any effort to recruit any L&A client to become a client of my new firm, The Scott Law Group, P.S., nor had any discussions with any client regarding their discharging L&A once I left.

41. Terry Whitten expressed appreciation for the professionalism with which I was handling the potentially delicate matter of departure.

42. During this initial meeting, Terry Whitten emphasized to me that the matters on which I had been working at L&A belonged to L&A, that the clients for whom I had been working were L&A's clients, not mine, and that all files and records associated with all cases on which I had been working were the property of L&A and that they would remain at L&A unless released by L&A.

43. I expressed my interest in reaching agreement as to some protocol for announcing my withdrawal to clients for whom I was working. Terry Whitten indicated that he would discuss that issue with L&A's board members and that the announcement should probably come through a letter issued by L&A.

DECLARATION OF DARRELL W. SCOTT:    12

44. Terry Whitten requested that a summary of all matters on which I had been working be prepared so that L&A could make an informed determination as to how best to handle those cases following my departure. He requested that we have a follow-up meeting where I could discuss with him at length the nature, status, and prognosis of cases on which I had been working.

45. The requested summaries and analyses were thereafter prepared and provided to Terry Whitten. Attached as **Exhibit "E"** is a true and accurate copy of the summary chart prepared for L&A's President pertaining to Grace related matters.

46. I subsequently met with L&A's President on December 4, 2004, to review each of the cases in which I had been involved. Attached as **Exhibit "F"** is a true and accurate copy of notes taken by L&A's President during that meeting, as previously produced by L&A to The Scott Law Group.

47. During this December 4th meeting, and using Exhibit "E," I provided L&A's President with the following case assessments:

48. LIBBY (color coded grey)— This matter and its related sub-files all concerned personal injury-related litigation arising out of occupational or environmental exposure to asbestos in Libby, Montana. The matter number concerned the three related medical monitoring or environmental clean up class actions, *Dorrington/Sather*, *Grenfell*, and *Tennison*, which also involved a variety of other firms. These cases were essentially dead because Grace and the EPA had taken actions that rendered the cases moot. These matters, he was told, had essentially no prospect of recovery, although they technically still existed as pending matters, stayed because of Grace's bankruptcy.

DECLARATION OF DARRELL W. SCOTT:   13

49. L&A's involvement in the *Dorrington/Sather*, *Grenfell* and *Tennison* matters, he was advised, had resulted in L&A being retained by various asbestos personal injury clients. Sub-files, shown on the chart, consequently, had been established under the Libby Master Number (19572). Those individual personal injury matters were all being managed by other attorneys in the firm, principally another L&A class action attorney with whom I had a close working relationship.

50. Asbestos personal injury claims, I advised him, would likely be recognized and compensated under some future Grace Plan of Reorganization, unless then pending litigation in Congress upset the ordinary course of asbestos personal injury claims.

51. ZONOLITE ATTIC INSULATION (color coded yellow) – This matter, Terry Whitten was advised, involved two related property damage class actions and involved a multiplicity of law firms: the Washington Class Action (*Barbanti*), which concerned Washington residents only and a national ZAI Class Action (*Price*), which had been transferred to Boston under MDL procedures, along with several other ZAI class actions that were also pending across the United States. Both cases were stayed due to Grace's bankruptcy. The fate of ZAI claims, he was advised, lay in the hands of ongoing bankruptcy proceedings (color coded blue).

52. BANKRUPTCY (color coded blue) – Terry Whitten was advised that for roughly a year and a half, L&A had been compensated on a regular hourly basis for work performed as Special Counsel in what was known as the Science Trial Proceedings. The Science Trial Hearing, I told him, had concluded roughly five week earlier. L&A's ability to charge for its services on an hourly basis, he was advised, was thus coming to

DECLARATION OF DARRELL W. SCOTT:    14

an end.  I advised him that it was my judgment, and the judgment of others whose views I respected, that the Bankruptcy Court would likely enter summary judgment in favor of Grace and against ZAI claims.  That outcome, I predicted, would likely result in an individual ZAI proof of claim process that would result in few ZAI claims being filed.  L&A had more than two hundred clients that would have to go through that ZAI proof of claim process.  The real battle, I advised him, was likely to be post-confirmation litigation to restore ZAI claims based on homeowners' lack of awareness that they had a ZAI claim to file.

53.    Two days later, L&A's President prepared a memorandum summarizing his thoughts on our second meeting.  Attached as **Exhibit "G"** is a true and accurate copy of that memorandum as previously produced by L&A to The Scott Law Group.  As reflected in that memorandum, Terry Whitten characterized the Libby matters as "going nowhere and I guess that means that there are now [sic, "no"] fees that we would receive, etc."  That memorandum also records that the Science Trial Proceeding was "about done," but that there may be some additional fees as ZAI special counsel.  His memorandum also records, with respect to the completed Science Trial Hearing, that the bankruptcy court was not "sympathetic" to ZAI claims and "may have even ruled against them."

54.    In the days following that second meeting Terry Whitten advised me that L&A had made a decision to withdraw from representation in all Grace matters.  He indicated that from our conversations he presumed that I was willing to assume representation of L&A's ZAI clients.  He asked whether I was also willing to assume representation of L&A's Asbestos PI clients as well, although I had not had any significant involvement in those cases.  I agreed to assume representation of all L&A

DECLARATION OF DARRELL W. SCOTT:    15

clients who had retained L&A in respect of any Grace matter, including all ZAI Clients and Asbestos PI Clients.

55. L&A, at the time, had contingency fee agreement with 270 ZAI Clients, 30 Asbestos PI Clients, and 3 contingency fee agreements for various clients having other related claims against W.R. Grace.

56. L&A subsequently released its files to The Scott Law Group and those files were thereafter transferred to my new office.

57. Further, L&A sent a letter to each of its clients announcing my departure from the firm, announcing L&A's decision to withdraw from representation, and announcing The Scott Law Group's preparedness to assume representation of those cases.

58. Attached as **Exhibit "H"** is a draft version of L&A's letter to its ZAI clients bearing hand written edits made by L&A's President, Terry Whitten. Those edits included a strengthening of the language distancing L&A from further representation of its clients (from ". . . Lukins & Annis is not going to continue to directly handle this matter . . ." to ". . . Lukins & Annis is not going to handle an [sic "any"] aspect of this case . . ."

59. Mindful that L&A's clients may not wish to be represented by The Scott Law Group, edits to the final sentence read, "If you have any questions [insert "or concerns"], please do not hesitate to contact me [Terry Whitten]."

60. Attached as **Exhibit "I"** is a true and accurate copy of the final letter L&A sent to each of its ZAI clients.

61. L&A subsequently filed a formal notice of withdrawal with the Bankruptcy Court, signed by L&A's President on December 30, 2004 and filed on

DECLARATION OF DARRELL W. SCOTT:    16

January 24, 2005.  Attached as **Exhibit "J"** is a true and accurate copy of L&A's Notice of Withdrawal.

62.     The Scott Law Group, P.S., at the time of my departure, consisted of four people: my paralegal, Kristy Bergland; my secretary, Samantha Batorson; one minimum wage staff person, Bets Rutherford, and myself.  I had no expertise in bankruptcy practice.  Jed Morris testified in his Declaration filed in response to Class Counsel's fee request that:  As supervising attorney, Mr. "Scott directed, managed, and supervised over 30 Lukins & Annis lawyers, associates, paralegals, and litigation assistants to work on the matters. . . ."  *See* Declaration of Jed W. Morris, **D.I. 31794-1** at ¶ 9.  All of the individuals referenced by Jed Morris remained at L&A after my departure, with the exception of one paralegal, one secretary, and one minimum wage staff person.

63.     At the time of my departure, L&A was one of the largest law firms in eastern Washington.  L&A's resources included 53 attorneys and 24 billing staff personnel.  L&A's practice areas, further, included bankruptcy, with attorneys whose areas of emphasis included representation of creditors.  As point of illustration, L&A attorney Jed Morris, who had involvement in ZAI representation, is co-author of the "Creditors Rights in Bankruptcy" chapter of the Washington State Bar Association Commercial Law Deskbook, is author of several chapters or sections of CLE course books on debtor/creditor and bankruptcy seminars, and his "Area of Emphasis" includes "bankruptcy proceedings" and "creditor and claimant representation."  Attached as **Exhibit "K"** is a true and accurate copy of the L&A's firm profile on Jed Morris.  L&A, at the time, had a "Class Action Practice Group," composed of attorneys and paraprofessionals engaged in class action practice.  One of those attorneys had been the

DECLARATION OF DARRELL W. SCOTT:     17

principal attorney engaged in representing L&A's Asbestos PI clients. L&A could have continued to represent its Grace creditor clients, including its ZAI Clients, if it had a business desire to do so.

64. Of the 16 L&A attorneys who worked on ZAI Claims, only 5 now remain attorneys at that firm. Their total time in ZAI Claims is 136.8 hours, having a total value of $18,266.00, as reflected in L&A's unaudited time records.

65. The *Barbanti v. W.R. Grace* class action pursued the rights of Washington State residents only and did not have as a focus, recovery of damages. The Washington Class constitutes only 9% of the U.S. ZAI Class for whom Class Counsel secured the $140,000,000 recovery. While playing an early role in representing 9% of the beneficiaries of the U.S. ZAI Class, L&A played no role in representing ZAI interests from late December 2004 forward.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: April 28, 2014

_____
DARRELL W. SCOTT

DECLARATION OF DARRELL W. SCOTT:    18