**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., et al. ) | Case No. 01-01139 (JFK) |
| ) | (Jointly Administered) |
| Debtors. ) | |

**ADMINISTRATIVE EXPENSE CLAIM ON BEHALF OF
THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

The Attorney General of the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and through the undersigned attorneys, submits this protective request for payment of a administrative expense claims, in the amount of $6,975,500.78, pursuant to Section 503(b)(1) of the Bankruptcy Code, 42 U.S.C. 503(b)(1), and the Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified through December 23, 2010 (Docket No. 26155) (the "Confirmation Order"). In support of this request, the United States avers as follows:

**BACKGROUND**

1.  On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and affiliated companies (collectively, the "Debtors" or, when referencing W.R. Grace & Co.-Conn., the "Debtor") filed for relief under Chapter 11 of Title 11 of the United States Code.

2.  On June 2, 2008, the Bankruptcy Court entered an Order Authorizing Settlement Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters (Docket No. 18847) (hereinafter "2008 Multi-Site Settlement Agreement"). Among

other things, the 2008 Multi-Site Settlement Agreement liquidated the United States' general unsecured claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, at certain identified sites, established a procedure for resolving the United States' claims at "Additional Sites" not owned by Debtors, and allowed certain identified administrative expense claims for post-petition response costs at Debtor-owned sites through the dates identified in the agreement. The allowed administrative expense claims included: an allowed claim for costs incurred from the petition date through June 16, 2003 at the Cambridge Plant in Cambridge, Massachusetts; an allowed claim for costs incurred from the petition date through September 30, 2005 at the Wells G&H Site in Woburn, Massachusetts; and an allowed claim for costs incurred from the petition date through September 19, 2006 at the Acton Plant Site in Acton, Massachusetts. *See* Multi-Site Settlement Agreement ¶ 10. The settlement agreement also provided that a) claims against the Debtors for the recovery of post-petition response costs at Debtor-Owned Sites (other than those claims allowed in Paragraph 10) under Section 107 of CERCLA, 42 U.S.C. § 9607, b) claims against the Debtors for the recovery of natural resource damages under Section 107 of CERCLA, 42 U.S.C. § 9607, arising as a result of releases of hazardous substances at or from Debtor-Owned sites; c) claims against the Debtors for recovery of civil penalties for violations of law resulting from Debtors' post-petition conduct; and d) claims against Debtors under CERCLA or RCRA to compel cleanup action at Debtor-Owned Sites would "not be discharged under Section 1141 of the Bankruptcy Code by the confirmation of a Plan of Reorganization, nor shall such claims or obligations be impaired or affected in any way by the Bankruptcy Cases or confirmation of a Plan of Reorganization." *Id*. ¶ 12.A.

3. On June 2, 2008, the Bankruptcy Court entered an Order Authorizing Settlement Agreement Resolving the United States Proofs of Claim Regarding the Libby, Montana Asbestos Site and Authorizing Payment of the Claim (Docket No. 18848) (hereafter "Libby Claim Settlement Agreement"). The Libby Claim Settlement Agreement liquidated the United States' claims relating the Libby Asbestos Site with the exception of Operable Unit 3 ("OU3"). Claims related to OU3, including the Libby mine and certain associated areas, were reserved. EPA and the Debtors have entered into two Administrative Orders on Consent regarding Libby Asbestos Site OU3: Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, CERCLA Docket No. CERCLA-08-2007-0012 (Sept. 17, 2007), and Administrative Settlement Agreement and Order on Consent for Removal Action, CERCLA Docket No. CERCLA-08-2012-0004 (Sept. 19, 2012). In the two Administrative Orders on Consent, the Debtors agreed to undertake defined response actions at Libby Asbestos Site OU3 and pay for EPA's oversight costs relating to that work.

4. On July 3, 2010, the Bankruptcy Court entered an Order Authorizing Entry into a Consent Decree with the United States and the Commonwealth of Massachusetts Regarding the Blackburn and Union Privileges Superfund Site – Walpole, MA (Docket No. 25043). That Consent Decree authorized Grace to perform response actions and pay certain future costs after the effective date of Debtors' Plan of Reorganization.

5. As described in more particularity below, the United States hereby asserts a protective administrative expense claim in the amount of $6,975,500.78 for post-petition response costs at the following sites.

    A. <u>Wells G&H Site (Woburn, Massachusetts)</u>: The Debtors are liable to the United States pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, in connection with the

cleanup of environmental contamination at the Wells G&H Site in Woburn, Massachusetts. The site includes the aquifer and land mass area located within the zone of contribution of two contaminated municipal wells known as Wells G&H. There has been a release or threat of release of hazardous substances at the site, as groundwater is contaminated with VOCs, including trichloroethylene (TCE) and tetrachloroethylene (PCE); sediments in the Aberjona River are contaminated with polycyclic aromatic hydrocarbons (PAHs) and heavy metals; and soils are contaminated with PAHs, PCBs, VOCs, and pesticides. The Wells G&H Site is on the NPL. The Debtor owns the facility that is a source of the contamination and operated (through a predecessor in interest) the same facility at the time during which hazardous substances were disposed. In the October 9, 1991 Consent Decree entered by the Court in *United States v. Wildwood Conservation Corporation, et al.* (Civil Action No. 1:91-cv-11807) ("1991 Consent Decree"), entities that owned or operated facilities that contributed to contamination at the site, including the Debtor, agreed to clean up their respective properties and to jointly conduct a study of the contamination in the aquifer in the central area of the site. The 2008 Multi-Site Settlement Agreement liquidated the United States' pre-petition claims for response costs at the Wells G&H Site and post-petition claims through September 30, 2005. The United States has incurred unreimbursed response costs at the Wells G&H Site from October 1, 2005 through February 3, 2014 in the amount of $3,110,318.55. This includes $781,634.35 in response costs at Operable Unit 1 to address contamination at the Debtor's source area property, $1,063,761.30 in response costs at Operable Unit 1 that are not allocable to a particular party or property source area, and $1,264,922.90 in response costs at Operable Unit 2 that are related to the central area and are not allocable to a particular party or property source area. *See* Exhibit 1. As provided in the 1991 Consent Decree, the Debtor and other entities that owned or operated facilities that contributed to

contamination at the site are jointly and severally liable for non-allocable costs. All of the response costs have been or will be incurred in a manner not inconsistent with the NCP.

    B.  <u>Acton Plant Site (Acton, Massachusetts)</u>: The Debtors are liable to the United States pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, and a judicial consent decree in connection with the cleanup of environmental contamination at the Acton Plant Site located in Acton and Concord, Massachusetts. There have been releases or threatened releases of hazardous substances at the site, as groundwater is contaminated with VOCs and heavy metals, including lead, arsenic, chromium, iron, manganese and nickel; sediments are contaminated with cadmium; and soils and sludges in disposal areas at the site are contaminated primarily with arsenic, VOCs, including vinyl chloride, ethyl benzene, benzene, 1,1 dichlorethylene, and bis(2-ethylhexyl) phthalate. The Acton Plant Site is on the NPL. The Debtor owned and operated the Acton Plant at the time hazardous substances were disposed of and is the current owner and operator of the facility. In 1980, EPA entered into a consent decree whereby the Debtor agreed to undertake cleanup of the facility and to ensure restoration of the aquifer to a fully usable condition. Work under this consent decree is on-going. The United States incurred unreimbursed response costs at the Acton Plant Site for the period from September 20, 2006 to February 3, 2014 in the amount of $2,143,038.86. *See* Exhibit 2. All of the response costs have been or will be incurred in a manner not inconsistent with the NCP.

    C.  <u>Libby Asbestos Site (Libby, Montana)</u>: The Debtors are liable to the United States pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, in connection with Operable Unit 3 of the Libby Asbestos Site (OU3 is the location of the former vermiculite mine near Libby, Montana (the "Libby Mine") and certain associated areas). The Debtor and its predecessor the Zonolite Company owned and operated the Libby Mine from the 1920's until

1990, when it closed.  The Libby Mine and surrounding areas in OU3 are contaminated with asbestos, a hazardous substance under CERCLA.  The Debtors currently own the Libby Mine and owned and operated it at the time hazardous substances were disposed of.  The United States reserved its claims regarding OU3 in the Libby Claim Settlement Agreement.  The United States has incurred unreimbursed response costs at Libby Asbestos Site OU3 in the amount of $1,253,140.56, the sum of the oversight/response cost bills EPA sent to Grace on April 24, 2014 for $1,228,423.63 and on May 5, 2014 for $24,716.93.  *See* Exhibit 3.  All of EPA's response costs have been or will be incurred in a manner not inconsistent with the NCP.

    D. <u>Travelers Rest Site/Zonolite (Travelers Rest, South Carolina)</u>.  The Debtors are liable to the United States pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, in connection with the cleanup of environmental contamination at the Travelers Rest Site in Travelers Rest, South Carolina.  The Travelers Rest Site is a former vermiculite processing facility that the Debtor and its predecessors owned and operated from the mid-1940s to at least 1981 and that the Debtor currently owns.  In 2009 EPA identified asbestos contamination at the site related to the former vermiculite processing operations.  In 2010 and 2011, Debtors conducted environmental response activities at the Site, subject to EPA oversight.  EPA incurred post-petition response costs of $469,002.81 at the Site.  *See* Exhibit 4.  All of EPA's response costs have been or will be incurred in a manner not inconsistent with the NCP.

  6. Post-petition response costs incurred by the government at property owned by a debtor, in order to address pre-petition contamination are entitled to administrative expense priority.  *See, e.g., Com. Of Pa. Dept. of Environmental Resources v. Conroy*, 24 F.3d 568, 569-71 (3d Cir. 1994); *In re Chateaugay Corp.*, 944 F.2d 997, 1009-10 (2d Cir. 1991); *In re Wall Tube & Metal Prods. Co.*, 831 F.2d 118, 123 (6th Cir. 1987); *In re Insilco Technologies, Inc.*,

309 B.R. 111, 114-15 (Bankr. D. Del. 2004).  As discussed above, the response costs subject to this request were incurred post-petition.  In view of the above, the United States is entitled to an allowed administrative expense claim in the amount of $6,975,500.78.

7. The claims identified in Paragraph 5 above constitute claims "against the Debtors by [EPA] under Section 107 of CERCLA, 42 U.S.C. § 9607, for recovery of response costs incurred post-petition with respect to response actions taken at a Debtor-Owned Site" and therefore "shall not be discharged under Section 1141 of the Bankruptcy Code by the confirmation of a Plan of Reorganization, nor shall such claims or obligations be impaired or affected in any way by the Bankruptcy Cases or confirmation of a Plan of Reorganization."  *See* 2008 Multi-Site Settlement Agreement ¶ 12.A.1.  As such, an administrative expense claim need not be filed.  Nevertheless, this claim is filed in a protective fashion only to protect the United States' rights with respect to such obligations of the Debtors.  The United States reserves the right to take future actions to enforce any such obligations of the Debtors.  Nothing in this request for payment of administrative expenses constitutes a waiver of any rights of the United States or an election of remedies.

## CONCLUSION

For the reasons set forth herein, if it is determined that the claims discussed in Paragraph 5 above are subject to the requirement to file an administrative expense claim as set forth in the Confirmation Order, the United States is entitled to an allowed administrative expense claim in the amount of $6,975,500.78.

Respectfully submitted,


W. BENJAMIN FISHEROW
Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


 /s/ James D. Freeman
JAMES FREEMAN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street
South Terrace Suite 370
Denver, Colorado 80202
(303) 844-1489


CHARLES M. OBERLY, III
United States Attorney
District of Delaware


ELLEN SLIGHTS
Assistant United States Attorney
Office of United States Attorney
1007 Orange Street
Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

8

CERTIFICATE OF SERVICE

I hereby certify on May 5, 2014 that I have caused a true and correct copy of the foregoing to be sent by electronic delivery to all parties consenting to service through the Court's CM/ECF system and that I have sent the foregoing via US first class mail to the following:

General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

John Donley, Esq.
Adam Paul, Esq.
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Laura David Jones
James E. O'Neill
Pachulski, Stang, Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705

Roger J. Higgins, Esq.
The Law Office of Roger Higgins, LLC
111 E. Wacker Drive, Suite 2800
Chicago IL 60601

    /s/ James D. Freeman
JAMES FREEMAN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street
South Terrace Suite 370
Denver, Colorado 80202
(303) 844-1489