IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | | |

**FIFTY-SECOND INTERIM AND FINAL FEE APPLICATION REQUEST
OF BILZIN SUMBERG BAENA PRICE & AXELROD LLP FOR
APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE
OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS
FOR THE PERIOD OF APRIL 9, 2001 THROUGH FEBRUARY 3, 2014 AND REQUEST
FOR FEE ENHANCEMENT FOR SERVICES IN CONNECTION WITH FRAUDULENT
TRANSFER LITIGATION AGAINST SEALED AIR CORPORATION,
CRYOVAC, INC. AND FRESENIUS MEDICAL CARE HOLDINGS**

| | |
|---|---|
| Name of Applicant: | Bilzin Sumberg Baena Price & Axelrod LLP |
| Authorized to provide professional services to: | Official Committee of Asbestos Property Damage Claimants |
| Date of retention: | April 9, 2001 |
| Interim Compensation Period: | January 1, 2014 through February 3, 2014 |
| Total compensation sought as reasonable and necessary for the Interim Compensation Period: | $20,586.00 |
| Total expense reimbursement sought as reasonable and necessary for the Interim Compensation Period: | $390.84 |
| Final Compensation Period: | April 9, 2001 through February 3, 2014 |
| Total compensation sought as reasonable and necessary for the Final Compensation Period before requested enhancement: | $11,837,680.74[1,2] |

---

[1] Reflects fees approved for interim applications based on Fee Auditor review and recommendations and compensation pending approval.

[2] Total includes final fees incurred in the Fraudulent Transfer Litigation Against Sealed Air Corporation, Cryovac, Inc. and Fresenius Medical Care Holdings.

Fee enhancement requested:                                    $875,000.00

Total reimbursement sought as reasonable and
necessary for the Final Compensation Period:        $5,248,546.60[3,4]

Amount of Compensation and Expense
Reimbursement Pending Payment:                       $26,537.67

This is a final application.

---

[3] Reflects expenses approved for interim applications based on Fee Auditor review and recommendations and expenses pending approval.

[4] Total includes final expenses incurred in the Fraudulent Transfer Litigation Against Sealed Air Corporation, Cryovac, Inc. and Fresenius Medical Care Holdings.

# HISTORY OF FEES/COSTS  REQUESTED AND FEES/COSTS APPROVED

| Date Filed | App Doc # | Fees Requested | Expenses Requested | Covering Dates | Order Doct # | Order File Date | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|---|---|
| 08/06/01 | 883 | $389,683.75 | $43,268.05 | 4/12/01 - 6/30/01 | 3091 | 11/25/02 | | |
| 11/09/01 | 1105 | $297,019.50 | $183,000.14 | 7/1/01 - 9/30/01 | 3091 | 11/25/02 | | |
| 02/07/02 | 1642 | $215,475.50 | $195,640.24 | 10/1/01 - 12/31/01 | 3091 | 11/25/02 | $858,501.75 | $421,908.43 |
| 05/17/02 | 2077 | $281,179.50 | $79,962.62 | 1/1/02- 3/31/02 | 2797 | 10/09/02 | $279,969.50 | $79,962.62 |
| 09/10/02 | 2671 | $230,759.40 | $69,271.20 | 4/1/02- 6/30/02 | 3092 | 11/25/02 | $226,482.40 | $21,450.64 |
| 11/22/02 | 3064 | $96,284.50 | $22,219.43 | 7/1/02- 9/30/02 | 3511 | 03/14/03 | $96,284.50 | $22,219.43 |
| 03/21/03 | 3533 | $44,816.50 | $2,047.87 | 10/1/02- 12/31/02 | 4157 | 07/28/03 | $44,346.50 | $2,047.87 |
| 06/18/03 | 3914 | $36,088.00 | $7,097.65 | 1/1/03- 3/31/03 | 4480 | 09/22/03 | $36,088.00 | $7,097.65 |
| 10/31/03 | 4652 | $59,032.50 | $6,112.70 | 4/1/03- 6/30/03 | 4827 | 12/15/03 | $59,032.50 | $5,967.99 |
| 01/29/04 | 5022 | $58,764.50 | $5,645.82 | 7/1/03- 9/30/03 | 5482 | 04/26/04 | $58,764.50 | $5,645.82 |
| 03/29/04 | 5367 | $53,078.25 | $8,876.26 | 10/1/03- 12/31/03 | 5822 | 06/16/04 | $52,340.75 | $8,876.26 |
| 06/11/04 | 5790 | $127,547.00 | $56,582.22 | 1/1/04- 3/31/04 | 6465 | 09/27/04 | $127,547.00 | $56,582.22 |
| 08/26/04 | 6268 | $75,370.00 | $3,375.24 | 4/1/04- 6/30/04 | 7622 | 01/26/05 | $75,370.00 | $3,375.24 |
| 12/20/04 | 7232 | $111,531.00 | $8,362.36 | 7/1/03- 9/30/04 | 8081 | 03/22/05 | $111,531.00 | $8,187.30 |
| 03/30/05 | 8144 | $266,590.00 | $19,938.53 | 10/1/04- 12/31/04 | 8728 | 06/29/05 | $261,786.00 | $18,552.14 |
| 07/28/05 | 9104 | $305,673.25 | $15,724.88 | 1/1/05- 3/31/05 | 9513 | 09/27/05 | $304,995.75 | $15,638.79 |
| 11/09/05 | 11018 | $460,309.85 | $23,639.30 | 4/1/05- 6/30/05 | 11402 | 12/21/05 | $454,544.85 | $23,229.30 |
| 11/21/05 | 11131 | $832,114.00 | $671,295.08 | 7/1/05- 9/30/05 | 12121 | 03/27/06 | $828,572.00 | $671,295.08 |
| 02/17/06 | 11840 | $1,106,101.75 | $971,587.32 | 10/1/05- 12/31/05 | 12660 | 06/16/06 | $1,103,319.75 | $971,437.32 |
| 05/24/06 | 12506 | $618,556.75 | $108,605.10 | 1/1/06- 3/31/06 | 13298 | 09/26/06 | $614,247.25 | $108,605.10 |
| 08/30/06 | 13118 | $677,491.00 | $822,323.72 | 04/01/06- 06/30/06 | 14069 | 12/19/06 | $677,491.00 | $822,323.72 |
| 12/06/06 | 13936 | $682,802.25 | $504,408.80 | 7/1/06- 9/30/06 | 15494 | 05/03/07 | $678,765.75 | $504,408.80 |
| 02/22/07 | 14651 | $413,887.25 | $107,181.17 | 10/1/06- 12/31/06 | 16105 | 06/20/07 | $413,324.75 | $106,961.17 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 05/16/07 | 15672 | $593,429.00 | $253,782.75 | 1/1/07-3/31/07 | 16916 | 09/25/07 | $593,429.00 | $252,669.80 |
| 08/10/07 | 16531 | $440,312.25 | $121,427.80 | 4/1/07-6/30/07 | 17629 | 12/13/07 | $438,109.75 | $121,279.80 |
| 12/11/07 | 17608 | $231,644.00 | $73,650.97 | 7/1/07-9/30/07 | 18270 | 03/12/08 | $231,307.00 | $73,590.97 |
| 02/29/08 | 18178 | $191,792.00 | $119,796.53 | 10/1/07-12/31/07 | 18989 | 06/23/08 | $191,792.00 | $114,681.33 |
| 05/16/08 | 18729 | $166,431.50 | $96,361.24 | 1/01/08-3/31/08 | 19663 | 10/01/08 | $166,431.50 | $95,953.79 |
| 09/15/08 | 19536 | $264,790.75 | $60,536.58 | 4/1/08-6/30/08 | 20283 | 12/17/08 | $254,061.00 | $60,161.44 |
| 11/21/08 | 20119 | $119,533.50 | $23,051.07 | 7/1/08-9/30/08 | 21173 | 04/02/09 | $119,533.50 | $22,902.07 |
| 02/13/09 | 20722 | $214,367.50 | $50,618.29 | 10/01/08-12/31/08 | 22354 | 07/07/09 | $214,367.50 | $49,726.29 |
| 05/14/09 | 21679 | $233,273.50 | $44,258.67 | 01/01/09-03/31/09 | 23352 | 09/28/09 | $233,273.50 | $44,230.65 |
| 08/14/09 | 22810 | $144,462.50 | $41,127.83 | 04/01/09-06/30/09 | 23996 | 12/11/09 | $144,298.50 | $41,127.83 |
| 11/18/09 | 23790 | $114,260.75 | $104,133.15 | 07/1/09-09/30/09 | 24470 | 03/19/10 | $114,222.75 | $103,133.15 |
| 02/19/10 | 24324 | $54,751.50 | $33,727.16 | 10/1/09-12/31/09 | 24917 | 06/07/10 | $54,751.50 | $33,727.16 |
| 05/14/10 | 24770 | $60,780.25 | $30,220.63 | 01/01/10-3/31/10 | 25397 | 09/13/10 | $60,780.25 | $30,220.63 |
| 08/16/10 | 25226 | $25,574.50 | $1,288.65 | 04/01/10-6/30/10 | 25905 | 12/10/10 | $25,574.50 | $1,288.65 |
| 11/17/10 | 25765 | $6,938.50 | $2,211.11 | 07/01/10-09/30/10 | 26627 | 03/25/11 | $6,938.50 | $2,211.11 |
| 02/18/11 | 26338 | $11,752.00 | $1,284.73 | 10/01/10-12/31/10 | 27188 | 06/30/11 | $11,752.00 | $1,284.73 |
| 06/01/11 | 27025 | $36,438.00 | $3,051.54 | 01/01/11-03/31/11 | 27622 | 09/20/11 | $36,438.00 | $3,051.54 |
| 08/18/11 | 27453 | $24,000.00 | $1,488.36 | 04/01/11-06/30/11 | 28150 | 12/14/11 | $24,000.00 | $1,488.36 |
| 11/14/11 | 27936 | $22,765.50 | $2,052.77 | 07/01/11-09/30/11 | 28705 | 03/23/12 | $22,745.50 | $2,052.77 |
| 02/14/12 | 28527 | $4,842.50 | $237.64 | 10/01/11-12/31/11 | 29054 | 06/14/12 | $4,842.50 | $237.64 |
| 05/25/12 | 28972 | $12,993.00 | $169.70 | 01/01/12-03/31/12 | 29746 | 10/19/12 | $12,993.00 | $169.70 |
| 09/04/12 | 29563 | $25,476.00 | $3,117.73 | 04/01/12-06/30/12 | 30036 | 12/11/12 | $25,476.00 | $3,117.73 |
| 12/05/12 | 29995 | $9,466.00 | $123.40 | 07/01/12-09/30/12 | 30440 | 03/27/13 | $9,466.00 | $123.40 |
| 03/01/13 | 30334 | $6,554.50 | $233.20 | 10/01/12-12/31/12 | 30907 | 07/31/13 | $6,554.50 | $233.20 |
| 05/13/13 | 30626 | $12,013.45 | $512.41 | 01/01/13-03/31/13 | 31158 | 09/24/13 | $11,046.24 | $512.41 |
| 09/10/13 | 31085 | $19,767.50 | $1,423.53 | 04/01/13-06/30/13 | 31482 | 12/17/13 | $19,767.50 | $1,361.13 |
| 11/22/13 | 31386 | $18,532.25 | $1,051.90 | 7/1/13 -9/30/13 | 31963 | 03/31/14 | $18,532.25 | $1,051.90 |

| 02/25/14 | 31777 | $9,260.50 | $123.77 | 10/1/13 - 12/31/13 | Pending | Pending | $9,260.50 | $123.77 |
| TOTALS | | $10,516,359.20 | $5,007,228.81 | | | | $10,425,050.24 | $4,947,485.84 |

## TOTAL FEES/COSTS  REQUESTED AND FEES/COSTS APPROVED IN FRAUDULENT TRANSFER MATTER ADV. PROC. NO. 02-2210

| Dates Filed | App Doc # | Fees Requested | Expenses Requested | Covering Dates | Order Doct # | Order File Date | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|---|---|
| Various | N/A | $1,392,044.50 | 300,669.92 | 4/29/02 - 12/31/04 | Various | N/A | $1,392,044.50 | $300,669.92 |
| **TOTALS** | | **$1,392,044.50** | **$300,669.92** | | | | **$1,392,044.50** | **$300,669.92** |

**ATTACHMENT B**

| SUMMARY OF HOURS FOR INTERIM COMPENSATION PERIOD FROM JANUARY 1, 2014 TO FEBRUARY 3, 2014 | | | | | | |
|---|---|---|---|---|---|---|
| Name of Professional Person | Position of Applicant | Number of years as an attorney | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $750.00 | 8.00 | $6,000.00 |
| Jay M. Sakalo | Partner | 1998 | Bankruptcy | $575.00 | 15.00 | $8,625.00 |
| Jeffrey I. Snyder | Partner | 2005 | Bankruptcy | $495.00 | 2.80 | $1,386.00 |
| | | | | | | $0.00 |
| Luisa M. Flores | Paralegal | | Bankruptcy | $250.00 | 16.40 | $4,100.00 |
| Gloria Donaire | Paralegal | | Bankruptcy | $250.00 | 1.90 | $475.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | |
| SubTotal: | | | | | 44.10 | $20,586.00 |
| LESS 50% TRAVEL DISCOUNT | | | | | | |
| LESS ADJUSTMENT | | | | | | |
| PLUS ADJUSTMENT | | | | | | |
| GRAND TOTAL | | | | | | $20,586.00 |
| Blended Rate:  $ | | | | | | $466.80 |

| COMPENSATION BY PROJECT CATEGORY FOR INTERIM COMPENSATION PERIOD | | |
|---|---|---|
| **PROJECT CATEGORY** | **TOTAL HOURS** | **TOTAL FEES** |
| Case Administration | 2.3 | $775.00 |
| Debtors' Business Operations | 0.8 | $460.00 |
| Committee Matters & Creditors Meeting | 0.3 | $225.00 |
| DIP Financing | | |
| Asset Analysis and Recovery | | |
| Asset Dispositions/Use of Assets | | |
| Retention of Professionals | | |
| Court Appearances | 0.7 | $240.00 |
| Travel | | |
| Fee Applications, Applicant | 19.8 | $7,515.50 |
| Claims Administration/Analysis | | |
| Claims Administration/Objections (Asbestos) | | |
| Nonworking Travel | | |
| Employee Benefits | | |
| Plan & Disclosure Statement | 17.4 | $10,638.00 |
| Fraudulent Transfer Litigation | | |
| Litigation Consulting | | |
| Fee Applications, Others | 2.8 | $732.50 |
| Retention of Others | | |
| ZAI Science Trial | | |
| Executory Contracts | | |
| Relief from Stay | | |
| **Subtotal** | **44.1** | **$20,586.00** |
| **Less 50% travel discount** | | |
| **Less Adjustment** | | |
| **Total** | **44.1** | **$20,586.00** |

| EXPENSE SUMMARY FOR INTERIM COMPENSATION PERIOD | |
|---|---|
| In-House copies | $18.00 |
| Outside copies | |
| Postage | |
| Overnight Delivery | |
| Outside Courier/Messanger Services | |
| Long Distance Telephone Charges | $56.24 |
| Long Distance Fax Transmissions (Long distance charges only) | |
| Telecopies | |
| Computerized Research - Westlaw/PACER | $316.60 |
| Expert Fees and Costs | |
| Staff Overtime | |
| Meals | |
| Parking & Mileage | |
| Archival Retrieval Services | |
| Messenger Services | |
| Committee Meeting Costs | |
| Court Reporters/Transcripts/Video Deposition Services | |
| Professional Services | |
| Less Cost Credit | |
| Searches/Title/Name/Corp Searches | |
| Miscellaneous | |
| Overtime A/C | |
| PublicAtion | |
| Filing Fees | |
| CD/DVD Duplication | |
| Internet Connection - Outside Services | |
| Travel Expenses | |
| Miscellaneous Travel Expenses | |
| Lodging | |
| Airfare | |
| Meals | |
| Parking & Mileage | |
| Adjustment | |
| Less Cost Credit | |
| TOTAL | $390.84 |

| SUMMARY OF CUMULATIVE HOURS FOR FINAL COMPENSATION APPLICATION<br>FOR PERIOD FROM APRIL 9, 2001 TO FEBRUARY 3, 2014 | | | | | | |
|---|---|---|---|---|---|---|
| Name of Professional Person | Position of Applicant | Number of years as an attorney | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
| Adam Haimo | Associate/Partner | 2001 | Litigation | $250.00 | 14.80 | $3,700.00 |
| Adam Josephs | Paralegal | N/A | Bankruptcy | $100.00 | 39.40 | $3,940.00 |
| Adam Josephs | Paralegal | N/A | Bankruptcy | $110.00 | 56.30 | $6,193.00 |
| Adrian C. Delancy | Associate | 1996 | Bankruptcy | $340.00 | 193.30 | $65,722.00 |
| Adrian C. Delancy | Associate | 1996 | Bankruptcy | $325.00 | 387.90 | $126,067.50 |
| Alan D. Axelrod | Partner | 1981 | Corporate | $475.00 | 3.75 | $1,781.25 |
| Alicia Hughes | Law Clerk | N/A | Land Use | $170.00 | 41.00 | $6,970.00 |
| Alicia Ortiz | Technician | N/A | MIS | $160.00 | 19.60 | $3,136.00 |
| Alicia Ortiz | Technician | N/A | MIS | $150.00 | 41.00 | $6,150.00 |
| Alicia Ortiz | Technician | N/A | MIS | $190.00 | 23.50 | $4,465.00 |
| Allen Smith | Associate | 1978 | Litigation | $250.00 | 52.80 | $13,200.00 |
| Allen Smith | Of Counsel | 1978 | Litigation | $315.00 | 139.60 | $43,974.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $190.00 | 69.10 | $13,129.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $200.00 | 258.50 | $51,700.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $225.00 | 163.60 | $36,810.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $240.00 | 26.10 | $6,264.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $250.00 | 181.60 | $45,400.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $290.00 | 645.00 | $187,050.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $300.00 | 154.30 | $46,290.00 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $320.00 | 1,792.93 | $573,737.60 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $335.00 | 12.70 | $4,254.50 |
| Allyn S. Danzeisen | Associate | 1999 | Bankruptcy | $375.00 | 812.10 | $304,537.50 |
| Alvin Lodish | Partner | 1986 | Litigation | $435.00 | 83.40 | $36,279.00 |
| Alvin Lodish | Partner | 1986 | Litigation | $360.00 | 49.50 | $17,820.00 |
| Alvin Lodish | Partner | 1986 | Litigation | $350.00 | 10.30 | $3,605.00 |
| Amuni Beck | Project Ast. | N/A | Bankruptcy | $200.00 | 11.10 | $2,220.00 |
| Amuni Beck | Project Ast. | N/A | Bankruptcy | $190.00 | 5.50 | $1,045.00 |
| Ana Carolina Varela | Project Ast. | N/A | Bankruptcy | $200.00 | 14.80 | $2,960.00 |
| Ana Carolina Varela | Project Ast. | N/A | Bankruptcy | $215.00 | 13.60 | $2,924.00 |
| Andres G. Mendoza | Associate/Partner | 2004 | Corporate | $350.00 | 20.80 | $7,280.00 |
| Andres G. Mendoza | Associate/Partner | 2004 | Bankruptcy | $435.00 | 6.80 | $2,958.00 |
| Annette Urena | Associate | N/A | Litigation | $240.00 | 79.40 | $19,056.00 |
| Anthony Box | Librarian | N/A | Library | $90.00 | 3.00 | $270.00 |
| Anthony Box | Librarian | N/A | Library | $100.00 | 1.90 | $190.00 |
| Anthony Box | Librarian | N/A | Library | $110.00 | 0.30 | $33.00 |

| Anthony Box | Librarian | N/A | Library | $120.00 | 15.60 | $1,872.00 |
|---|---|---|---|---|---|---|
| Anthony Box | Librarian | N/A | Library | $160.00 | 1.30 | $208.00 |
| Arianna Morera | Paralegal | N/A | Bankruptcy | $130.00 | 368.05 | $47,846.50 |
| Arianna Morera | Paralegal | N/A | Bankruptcy | $135.00 | 976.95 | $131,888.25 |
| Arianna Morera | Paralegal | N/A | Bankruptcy | $165.00 | 212.50 | $35,062.50 |
| Armando L. Guerra | Paralegal | N/A | Bankruptcy | $100.00 | 62.30 | $6,230.00 |
| Barry Lapides | Law Clerk | N/A | Bankruptcy | $140.00 | 13.10 | $1,834.00 |
| Brad Baena | Paralegal | N/A | Bankruptcy | $60.00 | 87.50 | $5,250.00 |
| Brad Baena | Paralegal | N/A | Bankruptcy | $110.00 | 14.40 | $1,584.00 |
| Brad Baena | Paralegal | N/A | Bankruptcy | $115.00 | 9.30 | $1,069.50 |
| Brian Greenspoon | Law Clerk | N/A | Bankruptcy | $140.00 | 4.50 | $630.00 |
| Carrie Brenneman | Paralegal | N/A | Bankruptcy | $110.00 | 21.70 | $2,387.00 |
| Carrie Brenneman | Paralegal | N/A | Bankruptcy | $115.00 | 12.30 | $1,414.50 |
| Carrie Brenneman | Paralegal | N/A | Bankruptcy | $130.00 | 105.80 | $13,754.00 |
| Catherine Douglas | Paralegal | N/A | Litigation | $180.00 | 0.20 | $36.00 |
| Catherine Douglas | Paralegal | N/A | Litigation | $160.00 | 0.30 | $48.00 |
| Christopher Paniewski | Law Clerk | N/A | Bankruptcy | $200.00 | 20.75 | $4,150.00 |
| Corrine Aftimos | Law Clerk | N/A | Bankrupcy | $225.00 | 40.70 | $9,157.50 |
| Corrine Aftimos | Law Clerk | N/A | Bankruptcy | $200.00 | 5.30 | $1,060.00 |
| Cynthia Shapiro | Law Clerk | N/A | Bankruptcy | $225.00 | 12.40 | $2,790.00 |
| Damian A. Durrant | Paralegal | N/A | Litigation | $160.00 | 51.50 | $8,240.00 |
| Damian A. Durrant | Paralegal | N/A | Litigation | $150.00 | 1.70 | $255.00 |
| Daniel R.Green | Associate | 1999 | Litigation | $165.00 | 2.10 | $346.50 |
| Daniel R.Green | Associate | 1999 | Litigation | $180.00 | 107.30 | $19,314.00 |
| Danilo Valle | Paralegal | N/A | Litigation | $160.00 | 18.10 | $2,896.00 |
| Danilo Valle | Paralegal | N/A | Litigation | $130.00 | 47.70 | $6,201.00 |
| David Rosenblatt | Paralegal | N/A | Bankruptcy | $120.00 | 5.20 | $624.00 |
| David Schubauer | Associate/Partner | 2007 | Corporate | $325.00 | 12.20 | $3,965.00 |
| David Schubauer | Associate/Partner | 2007 | Corporate | $350.00 | 98.80 | $34,580.00 |
| David Schubauer | Associate/Partner | 2007 | Corporate | $175.00 | 11.10 | $1,942.50 |
| David W. Trench | Partner | 1975 | Litigation | $475.00 | 1.30 | $617.50 |
| David W. Trench | Partner | 1975 | Litigation | $300.00 | 1.50 | $450.00 |
| David W. Trench | Partner | 1975 | Litigation | $325.00 | 58.10 | $18,882.50 |
| Dylan T. Reingold | Law Clerk | N/A | Lit/Bankruptcy | $140.00 | 72.00 | $10,080.00 |
| Eileen Ball Mehta | Partner | 1977 | Land Use | $350.00 | 34.70 | $12,145.00 |
| Eileen L. Rodriquez | Law Clerk | N/A | Litigation | $140.00 | 6.80 | $952.00 |
| Eleanor Barnett | Associate | 2000 | Litigation | $260.00 | 15.90 | $4,134.00 |
| Elena Marquez | Associate | 1995 | Bankruptcy | $240.00 | 14.70 | $3,528.00 |
| Emma Gutierrez | Project Ast. | N/A | Bankruptcy | $50.00 | 1.50 | $75.00 |
| Eric Gilbert | Law Clerk | N/A | Bankruptcy | $190.00 | 23.10 | $4,389.00 |
| Eric Gilbert | Associate | 2006 | Corporate | $270.00 | 3.00 | $810.00 |

| Eric S. Medina | Associate | 2009 | Bankruptcy | $295.00 | 0.80 | $236.00 |
|---|---|---|---|---|---|---|
| Fanny Matas | Paralegal | N/A | Litigation | $125.00 | 12.20 | $1,525.00 |
| Fanny Matas | Paralegal | N/A | Litigation | $150.00 | 52.30 | $7,845.00 |
| Fanny Matas | Paralegal | N/A | Litigation | $160.00 | 53.90 | $8,624.00 |
| Fanny Matas | Paralegal | N/A | Litigation | $180.00 | 42.40 | $7,632.00 |
| Fanny Matas | Paralegal | N/A | Litigation | $190.00 | 0.90 | $171.00 |
| Gabriel Gershowitz | Paralegal | N/A | Bankruptcy | $130.00 | 354.70 | $46,111.00 |
| Gabriel Gershowitz | Paralegal | N/A | Bankruptcy | $135.00 | 722.80 | $97,578.00 |
| Geanny Portes | Project Ast. | N/A | Bankruptcy | $130.00 | 12.20 | $1,586.00 |
| Gloria Donaire | Paralegal | N/A | Bankruptcy | $112.82 | 3.90 | $440.00 |
| Gloria Donaire | Paralegal | N/A | Bankruptcy | $220.00 | 12.30 | $2,706.00 |
| Gloria Donaire | Paralegal | N/A | Bankruptcy | $230.00 | 23.30 | $5,359.00 |
| Gloria Donaire | Paralegal | N/A | Bankruptcy | $250.00 | 1.90 | $475.00 |
| Hal Lucas | Associate | 2004 | Litigation | $220.00 | 12.10 | $2,662.00 |
| Heather Zorn | Associate | 2000 | Litigation | $170.00 | 1.40 | $238.00 |
| Howard Nelson | Partner | 1992 | Land Use | $500.00 | 5.20 | $2,600.00 |
| James Burke | Law Clerk | N/A | Bankruptcy | $200.00 | 25.20 | $5,040.00 |
| James C. Moon | Associate | 2004 | Bankruptcy | $260.00 | 581.25 | $151,125.00 |
| James C. Moon | Associate | 2004 | Bankruptcy | $275.00 | 605.30 | $166,457.50 |
| James C. Moon | Associate | 2004 | Bankruptcy | $325.00 | 258.70 | $84,077.50 |
| Janette Valdes | Project Ast. | N/A | Bankruptcy | $135.00 | 133.20 | $17,982.00 |
| Janette Valdes | Project Ast. | N/A | Bankruptcy | $165.00 | 100.70 | $16,615.50 |
| Jason Z. Jones | Associate/Partner | 1999 | Bankruptcy | $165.00 | 14.10 | $2,326.50 |
| Jason Z. Jones | Associate/Partner | 1999 | Bankruptcy | $170.00 | 46.90 | $7,973.00 |
| Jason Z. Jones | Associate/Partner | 1999 | Bankruptcy | $250.00 | 0.70 | $175.00 |
| Jason Z. Jones | Associate/Partner | 1999 | Bankruptcy | $255.00 | 0.30 | $76.50 |
| Jason Z. Jones | Associate/Partner | 1999 | Bankruptcy | $515.00 | 6.50 | $3,347.50 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $200.00 | 65.70 | $13,140.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $212.50 | 59.60 | $12,665.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $225.00 | 884.30 | $198,967.50 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $227.50 | 32.20 | $7,325.50 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $235.00 | 863.04 | $202,814.40 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $242.50 | 18.90 | $4,583.25 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $250.00 | 155.40 | $38,850.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $270.00 | 161.00 | $43,470.00 |

| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $275.00 | 17.00 | $4,675.00 |
|---|---|---|---|---|---|---|
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $287.50 | 6.70 | $1,926.25 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $290.00 | 621.50 | $180,235.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $300.00 | 1,180.35 | $354,105.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $400.00 | 885.20 | $354,080.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $419.22 | 49.60 | $20,793.31 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $425.00 | 888.20 | $377,485.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $448.17 | 28.70 | $12,862.48 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $455.00 | 480.30 | $218,536.50 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $485.00 | 236.20 | $114,557.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $495.00 | 57.30 | $28,363.50 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $525.00 | 71.40 | $37,485.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $550.00 | 60.60 | $33,330.00 |
| Jay M. Sakalo | Associate/Partner | 1998 | Bankruptcy | $575.00 | 63.20 | $36,340.00 |
| Jenette V. Mathai | Associate | 2001 | Corporate | $160.00 | 58.50 | $9,360.00 |
| Jeffrey Deen | Associate | N/A | Bankruptcy | $170.00 | 178.00 | $30,260.00 |
| Jeffrey Slanker | Project Ast. | N/A | Bankruptcy | $185.00 | 39.10 | $7,233.50 |
| Jeffrey Slanker | Project Ast. | N/A | Bankruptcy | $190.00 | 37.90 | $7,201.00 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $200.00 | 236.10 | $47,220.00 |
| Jeffrey L. Snyder | Associate/Partner | 2006 | Bankruptcy | $225.00 | 393.50 | $88,537.50 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $137.50 | 7.00 | $962.50 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $125.00 | 13.40 | $1,675.00 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $112.50 | 12.30 | $1,383.75 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $250.00 | 416.30 | $104,075.00 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $275.00 | 108.20 | $29,755.00 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $295.00 | 29.60 | $8,732.00 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $340.00 | 19.70 | $6,698.00 |

| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $375.00 | 9.00 | $3,375.00 |
|---|---|---|---|---|---|---|
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $410.00 | 5.90 | $2,419.00 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $445.00 | 5.51 | $2,451.95 |
| Jeffrey I. Snyder | Associate/Partner | 2006 | Bankruptcy | $495.00 | 2.80 | $1,386.00 |
| Jennifer L. O'Connell | Associate | N/A | Litigation | $235.00 | 229.90 | $54,026.50 |
| Jeremy Segal | Law Clerk | N/A | Bankruptcy/Lit | $190.00 | 8.00 | $1,520.00 |
| John Moore | Associate | 2000 | Bankruptcy | $170.00 | 1.00 | $170.00 |
| John C.Sumberg | Partner | 1974 | Real Estate | $425.00 | 4.00 | $1,700.00 |
| Jordan Keusch | Associate | 1994 | Litigation | $260.00 | 78.70 | $20,462.00 |
| Jordan Taylor | Law Clerk | N/A | Bankruptcy/Lit | $190.00 | 11.20 | $2,128.00 |
| Jose Heredia | Paralegal | N/A | Litigation | $100.00 | 24.30 | $2,430.00 |
| Joseph A. Mesa | Law Clerk | N/A | Lit/Bankruptcy | $140.00 | 84.20 | $11,788.00 |
| Julie K. Rannik | Associate | N/A | Litigation | $195.00 | 0.90 | $175.50 |
| Julie K. Rannik | Associate | N/A | Litigation | $200.00 | 19.30 | $3,860.00 |
| Kaara Martinez | Law Clerk | N/A | Bankruptcy | $190.00 | 10.00 | $1,900.00 |
| Kathy Ann Marlin | Associate | N/A | Litigation | $305.00 | 42.40 | $12,932.00 |
| Kevin S. Neiman | Associate | 1996 | Bankruptcy | $215.00 | 76.10 | $16,361.50 |
| Kevin S. Neiman | Associate | 1996 | Bankruptcy | $225.00 | 42.30 | $9,517.50 |
| Lillian R. Aponte | Associate | N/A | Litigation | $160.00 | 0.30 | $48.00 |
| Lourdes V. Ramirez | Paralegal | N/A | Bankruptcy | $100.00 | 42.10 | $4,210.00 |
| Lourdes V. Ramirez | Paralegal | N/A | Bankruptcy | $120.00 | 0.50 | $60.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $100.00 | 367.20 | $36,720.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $110.00 | 81.30 | $8,943.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $120.00 | 109.70 | $13,164.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $125.00 | 7.50 | $937.50 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $150.00 | 233.80 | $35,070.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $160.00 | 199.20 | $31,872.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $180.00 | 161.50 | $29,070.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $190.00 | 299.00 | $56,810.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $200.00 | 43.40 | $8,680.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $205.00 | 153.80 | $31,529.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $215.00 | 48.30 | $10,384.50 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $225.00 | 33.60 | $7,560.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $235.00 | 23.30 | $5,475.50 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $245.00 | 30.80 | $7,546.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $250.00 | 16.40 | $4,100.00 |
| Mandana Dashtaki | Law Clerk | N/A | Lit/Bankruptcy | $140.00 | 117.50 | $16,450.00 |
| Marc Reiser | Associate | 2010 | Bankruptcy | $225.00 | 0.30 | $67.50 |
| Marc Reiser | Associate | 2010 | Bankruptcy | $230.00 | 1.40 | $322.00 |

| Marina Luybimova | Associate | 1998 | Real Estate | $140.00 | 143.50 | $20,090.00 |
|---|---|---|---|---|---|---|
| Marina Luybimova | Associate | 1998 | Real Estate | $210.00 | 0.00 | $0.00 |
| Mario Perez | Lit-Support | N/A | Lit-Support | $180.00 | 5.00 | $900.00 |
| Marta Gutierrez | Paralegal | N/A | Bankruptcy | $160.00 | 1.80 | $288.00 |
| Martell R. Swain | Paralegal | N/A | Litigation | $90.00 | 4.50 | $405.00 |
| Matthew E. Kaplan | Associate | 2001 | Bankruptcy | $160.00 | 5.60 | $896.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $160.00 | 20.00 | $3,200.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $175.00 | 187.10 | $32,742.50 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $190.00 | 83.00 | $15,770.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $205.00 | 136.00 | $27,880.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $212.50 | 12.50 | $2,656.25 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $237.50 | 11.80 | $2,802.50 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $300.00 | 589.30 | $176,790.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $320.00 | 547.35 | $175,152.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $350.00 | 569.35 | $199,272.50 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $380.00 | 251.60 | $95,608.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $410.00 | 380.20 | $155,882.00 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $425.00 | 61.10 | $25,967.50 |
| Matthew I. Kramer | Associate/Partner | 2004 | Bankruptcy | $475.00 | 19.20 | $9,120.00 |
| Matthew P. Coglinianese | Partner | 1985 | Enrivonmental | $425.00 | 0.50 | $212.50 |
| Matthew P. Coglinianese | Partner | 1985 | Enrivonmental | $400.00 | 213.90 | $85,560.00 |
| Matthew P. Coglinianese | Partner | 1985 | Enrivonmental | $350.00 | 9.30 | $3,255.00 |
| Matthew Rosenkoff | Associate | 2005 | Litigation | $200.00 | 40.30 | $8,060.00 |
| Melissa Pallett-Vasquez | Associate/Partner | 2004 | Litigation | $245.00 | 55.60 | $13,622.00 |
| Michael D. Seese | Partner | 1994 | Bankruptcy | $325.00 | 0.30 | $97.50 |
| Michael D. Seese | Partner | 1994 | Bankruptcy | $275.00 | 0.50 | $137.50 |
| Michael Santarufo | Paralegal | N/A | Bankruptcy | $135.00 | 19.00 | $2,565.00 |
| Michael Santarufo | Paralegal | N/A | Bankruptcy | $195.00 | 23.20 | $4,524.00 |
| Miguel A. Fernandez | Law Clerk | N/A | Lit/Bankruptcy | $140.00 | 78.15 | $10,941.00 |
| Mildred Gomez | Law Clerk | N/A | Bankruptcy | $225.00 | 10.30 | $2,317.50 |
| Mindy A. Mora | Partner | 1983 | Bankruptcy | $350.00 | 76.30 | $26,705.00 |
| Mindy A. Mora | Partner | 1983 | Bankruptcy | $425.00 | 41.70 | $17,722.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mindy A. Mora | Partner | 1983 | Bankruptcy | $460.00 | 30.70 | $14,122.00 |
| Mitchell E. Widom | Partner | 1985 | Litigation | $425.00 | 12.10 | $5,142.50 |
| Mitchell E. Widom | Partner | 1985 | Litigation | $350.00 | 144.80 | $50,680.00 |
| Nathan G. Mancuso | Associate | 1999 | Bankruptcy | $270.00 | 3.40 | $918.00 |
| Nathan G. Mancuso | Associate | 1999 | Bankruptcy | $290.00 | 32.90 | $9,541.00 |
| Nathan G. Mancuso | Associate | 1999 | Bankruptcy | $300.00 | 12.80 | $3,840.00 |
| Nathan G. Mancuso | Associate | 1999 | Bankruptcy | $320.00 | 6.90 | $2,208.00 |
| Nichole Wong | Paralegal | N/A | Bankruptcy | $85.00 | 69.80 | $5,933.00 |
| Nichole Wong | Paralegal | N/A | Bankruptcy | $100.00 | 168.10 | $16,810.00 |
| Nicolas Pelleya | Project Ast. | N/A | Bankruptcy | $60.00 | 23.00 | $1,380.00 |
| Nicolas Pelleya | Project Ast. | N/A | Bankruptcy | $85.00 | 2.20 | $187.00 |
| Nicole Kurtz | Project Ast. | N/A | Bankruptcy | $190.00 | 46.60 | $8,854.00 |
| Nicole Testa | Associate | 1999 | Bankruptcy | $305.00 | 176.30 | $53,771.50 |
| Nicole Testa | Associate | 1999 | Bankruptcy | $340.00 | 50.20 | $17,068.00 |
| Nicole Testa | Associate | 1999 | Bankruptcy | $370.00 | 57.10 | $21,127.00 |
| Nicole Wong | Project Ast. | N/A | Bankruptcy | $85.00 | 48.50 | $4,122.50 |
| Nicole Wong | Project Ast. | N/A | Bankruptcy | $100.00 | 45.20 | $4,520.00 |
| Norman Powell | Of Counsel | 1990 | Land Use | $310.00 | 4.80 | $1,488.00 |
| Obed Del Amo | Paralegal | N/A | Bankruptcy | $100.00 | 3.40 | $340.00 |
| Paul M. Botros | Associate | 2006 | Bankruptcy | $310.00 | 72.80 | $22,568.00 |
| Paul M. Botros | Associate | 2006 | Bankruptcy | $335.00 | 17.40 | $5,829.00 |
| Paul Villanueva | Lit-Support | N/A | Lit-Support | $190.00 | 8.00 | $1,520.00 |
| Raquel M. Fernandez | Associate/Partner | 1995 | Litigation | $235.00 | 3.50 | $822.50 |
| Raquel M. Fernandez | Associate/Partner | 1995 | Litigation | $260.00 | 130.70 | $33,982.00 |
| Raquel M. Fernandez | Associate/Partner | 1995 | Litigation | $340.00 | 120.10 | $40,834.00 |
| Raquel M. Fernandez | Partner | 1995 | Litigation | $365.00 | 28.70 | $10,475.50 |
| Raquel M. Fernandez | Partner | 1995 | Litigation | $410.00 | 8.50 | $3,485.00 |
| Rena Kelley | Associate | 2012 | Bankruptcy | $255.00 | 15.60 | $3,978.00 |
| Richard M. Dunn | Partner | 1970 | Litigation | $375.00 | 43.30 | $16,237.50 |
| Richard M. Dunn | Partner | 1970 | Litigation | $385.00 | 7.40 | $2,849.00 |
| Robert M. Siegel | Partner | 1985 | Bankruptcy | $300.00 | 6.00 | $1,800.00 |
| Robert M. Siegel | Partner | 1985 | Bankruptcy | $325.00 | 1.00 | $325.00 |
| Robert M. Siegel | Partner | 1985 | Bankruptcy | $340.00 | 2.20 | $748.00 |
| Robert M. Siegel | Partner | 1985 | Bankruptcy | $550.00 | 5.20 | $2,860.00 |
| Robert Rosen | Paralegal | N/A | Bankruptcy | $100.00 | 0.50 | $50.00 |
| Robert W. Turken | Partner | 1980 | Litigation | $350.00 | 53.70 | $18,795.00 |
| Robert W. Turken | Partner | 1980 | Litigation | $375.00 | 160.10 | $60,037.50 |
| Robert W. Turken | Partner | 1980 | Litigation | $390.00 | 247.90 | $96,681.00 |
| Robert W. Turken | Partner | 1980 | Litigation | $525.00 | 58.10 | $30,502.50 |
| Robert W. Turken | Partner | 1980 | Litigation | $575.00 | 7.30 | $4,197.50 |
| Ronald S. Haligman | Partner | 2005 | Corporate | $390.00 | 5.50 | $2,145.00 |
| Ronald S. Haligman | Partner | 2005 | Corporate | $420.00 | 45.80 | $19,236.00 |

| Scott G. Klein | Associate | 2003 | Bankruptcy | $180.00 | 26.40 | $4,752.00 |
|---|---|---|---|---|---|---|
| Scott L. Baena | Partner | 1974 | Bankruptcy | $312.50 | 101.90 | $31,843.75 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $325.00 | 80.30 | $26,097.50 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $337.50 | 70.80 | $23,895.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $425.00 | 604.40 | $256,870.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $450.00 | 339.70 | $152,865.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $500.00 | 52.70 | $26,350.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $525.00 | 0.60 | $315.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $550.00 | 339.70 | $186,835.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $575.00 | 916.55 | $527,016.25 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $625.00 | 632.60 | $395,375.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $650.00 | 652.80 | $424,320.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $675.00 | 484.60 | $327,105.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $700.00 | 3.60 | $2,520.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $725.00 | 10.00 | $7,250.00 |
| Scott L. Baena | Partner | 1974 | Bankruptcy | $750.00 | 8.00 | $6,000.00 |
| Shanon Lazarus | Project Ast. | N/A | Bankruptcy | $165.00 | 136.15 | $22,464.75 |
| Shanon Lazarus | Project Ast. | N/A | Bankruptcy | $190.00 | 28.10 | $5,339.00 |
| Sherril M. Colombo | Partner | 1992 | Litigation | $275.00 | 19.80 | $5,445.00 |
| Susana Rojas | Project Ast. | N/A | Bankruptcy | $185.00 | 6.30 | $1,165.50 |
| Susana Rojas | Project Ast. | N/A | Bankruptcy | $190.00 | 118.50 | $22,515.00 |
| Sylvia Anderson | Paralegal | N/A | Bankruptcy | $100.00 | 37.50 | $3,750.00 |
| Sylvia Anderson | Paralegal | N/A | Bankruptcy | $110.00 | 14.70 | $1,617.00 |
| Sylvia Anderson | Paralegal | N/A | Bankruptcy | $120.00 | 4.30 | $516.00 |
| Tara Trevorrow | Associate | 2006 | Bankruptcy | $315.00 | 0.30 | $94.50 |
| Tara Trevorrow | Associate | 2006 | Bankruptcy | $270.00 | 44.60 | $12,042.00 |
| Tara Trevorrow | Associate | 2006 | Bankruptcy | $135.00 | 32.30 | $4,360.50 |
| TerRance Q. Woodard | Associate | 2003 | Bankruptcy | $185.00 | 33.60 | $6,216.00 |
| TerRance Q. Woodard | Associate | 2003 | Bankruptcy | $215.00 | 9.30 | $1,999.50 |
| TerRance Q. Woodard | Associate | 2003 | Bankruptcy | $250.00 | 437.10 | $109,275.00 |
| TerRance Q. Woodard | Associate | 2003 | Bankruptcy | $265.00 | 68.30 | $18,099.50 |
| Wanda Roman | Paralegal | N/A | Bankruptcy | $150.00 | 894.05 | $134,107.50 |
| Wanda Roman | Paralegal | N/A | Bankruptcy | $160.00 | 958.30 | $153,328.00 |
| Wanda Roman | Paralegal | N/A | Bankruptcy | $180.00 | 626.00 | $112,680.00 |
| Wanda Roman | Paralegal | N/A | Bankruptcy | $190.00 | 115.80 | $22,002.00 |
| Wendy Van Dijk | Paralegal | N/A | Bankruptcy | $85.00 | 15.40 | $1,309.00 |
| Wendy Van Dijk | Paralegal | N/A | Bankruptcy | $100.00 | 39.70 | $3,970.00 |
| Wendy Van Dijk | Paralegal | N/A | Bankruptcy | $110.00 | 85.50 | $9,405.00 |
| Wendy Polit | Associate | 2008 | Bankruptcy | $225.00 | 160.82 | $36,184.50 |
| Wendy Polit | Associate | 2008 | Bankruptcy | $260.00 | 16.80 | $4,368.00 |
| William Hill | Partner | 1988 | Litigation | $410.00 | 14.60 | $5,986.00 |
| | | | | | | |
| | | | | **SubTotal:** | 35,978.60 | $10,612,899.99 |
| | | | **LESS 50% TRAVEL DISCOUNT** | | | 89,609.75 |

| | | | |
|---|---|---|---|
| **LESS ADJUSTMENT** | | | 8,108.00 |
| **PLUS ADJUSTMENT** | | | 21,762.96 |
| **GRAND TOTAL** | | | $10,536,945.20 |
| **Blended Rate:   $** | | | $292.87 |

| CUMULATIVE COMPENSATION BY PROJECT CATEGORY FOR FINAL COMPENSATION PERIOD | | |
|---|---|---|
| **PROJECT CATEGORY** | **TOTAL HOURS** | **TOTAL FEES** |
| Case Administration | 3563.64 | $850,668.65 |
| Debtors' Business Operations | 377.8 | $125,603.50 |
| Committee Matters & Creditors Meeting | 1463.57 | $572,204.00 |
| DIP Financing | 37.7 | $10,828.00 |
| Asset Analysis and Recovery | 15.1 | $4,605.50 |
| Asset Dispositions/Use of Assets | 23.8 | $5,975.00 |
| Retention of Professionals | 247.5 | $60,726.00 |
| Court Appearances | 2122.41 | $839,684.50 |
| Travel | 425.3 | $108,621.00 |
| Fee Applications, Applicant | 1427.76 | $278,524.20 |
| Claims Administration/Analysis | 291.6 | $59,249.00 |
| Claims Administration/Objections (Asbestos) | 16008.4 | $4,422,984.75 |
| Nonworking Travel | 1257.5 | $394,675.75 |
| Employee Benefits | 92.2 | $28,662.50 |
| Plan & Disclosure Statement | 3765.04 | $1,510,822.00 |
| Fraudulent Transfer Litigation | 1374.8 | $396,191.50 |
| Litigation Consulting | 2149.85 | $556,321.50 |
| Fee Applications, Others | 516.63 | $109,570.60 |
| Retention of Others | 42.7 | $13,993.00 |
| ZAI Science Trial | 529.5 | $268,244.50 |
| Executory Contracts | 1.6 | $500.00 |
| Relief from Stay | 32.2 | $7,920.00 |
| **Subtotal** | **35766.6** | **$10,626,575.45** |
| **Less 50% travel discount** | | **($89,609.75)** |
| **Less Adjustment** | | **($20.00)** |
| **Total** | **35766.6** | **$10,536,945.70** |

| CUMULATIVE EXPENSE SUMMARY FOR FINAL COMPENSATION PERIOD | |
| --- | --- |
| In-House copies | $63,875.52 |
| Outside copies | $37,998.30 |
| Postage | $1,074.52 |
| Overnight Delivery | $12,782.69 |
| Outside Courier/Messanger Services | $15.50 |
| Long Distance Telephone Charges | $62,760.31 |
| Long Distance Fax Transmissions (Long distance charges only) | $74,377.15 |
| Telecopies | $10,503.00 |
| Computerized Research - Westlaw/PACER | $97,914.53 |
| Expert Fees and Costs | $3,020,925.15 |
| Staff Overtime | $1,543.85 |
| Meals | $794.38 |
| Parking & Mileage | $438.00 |
| Archival Retrieval Services | $942.62 |
| Messenger Services | $1,361.66 |
| Committee Meeting Costs | $2,490.38 |
| Court Reporters/Transcripts/Video Deposition Services | $147,685.98 |
| Professional Services | $2,515.16 |
| Less Cost Credit | $0.00 |
| Searches/Title/Name/Corp Searches | $10,565.94 |
| Miscellaneous | $1,051,383.53 |
| Overtime A/C | $830.76 |
| Publication | $2,930.48 |
| Filing Fees | $69.00 |
| CD/DVD Duplication | $14,300.00 |
| Internet Connection - Outside Services | $242.29 |
| **Travel Expenses** | $0.00 |
| Miscellaneous Travel Expenses | $16,253.28 |
| Lodging | $66,022.76 |
| Airfare | $261,884.99 |
| Meals | $19,022.46 |
| Parking & Mileage | $28,730.50 |
| Adjustment | -$1,972.34 |
| Less Cost Credit | -$2,672.70 |
| **TOTAL** | **$5,007,589.65** |

**ATTACHMENT B-1**

**SUMMARY OF CUMULATIVE HOURS FOR FINAL PERIOD FOR FRAUDULENT TRANSFER MATTER FROM APRIL 29, 2002 TO DECEMBER 31, 2004**

| Name of Professional Person | Position of Applicant | Number of years in Position | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Scott L. Baena | Partner | 28 | Bankruptcy | $550.00 | 3.4 | $1,870.00 |
| Scott L. Baena | Partner | 28 | Bankruptcy | $500.00 | 103.5 | $51,750.00 |
| Scott L. Baena | Partner | 28 | Bankruptcy | $450.00 | 391.8 | $176,310.00 |
| John C. Sumberg | Partner | 29 | Managing Partner | $450.00 | 1.3 | $585.00 |
| Alan D. Axelrod | Partner | 26 | Corporate | $475.00 | 15.8 | $7,505.00 |
| Alan D. Axelrod | Partner | 26 | Corporate | $450.00 | 9.8 | $4,410.00 |
| Robert W. Turken | Partner | 23 | Litigation | $400.00 | 1.5 | $600.00 |
| Robert W. Turken | Partner | 23 | Litigation | $390.00 | 836.5 | $326,235.00 |
| Mitchell E. Widom | Partner | 17 | Litigation | $375.00 | 14.9 | $5,587.50 |
| Mitchell E. Widom | Partner | 17 | Litigation | $350.00 | 1,040.4 | $364,140.00 |
| Matthew P. Coglianese | Partner | 17 | Environmental Litigation | $350.00 | 37.5 | $13,125.00 |
| Robert M. Siegel | Partner | 17 | Bankruptcy | $350.00 | 11 | $3,850.00 |
| Robert M. Siegel | Partner | 17 | Bankruptcy | $340.00 | 6.9 | $2,346.00 |
| Allen Smith | Of Counsel | 15 | Litigation | $275.00 | 2.0 | $550.00 |
| Raquel M. Gonzalez | Associate | 7 | Litigation | $260.00 | 174.4 | $45,344.00 |
| Jay M. Sakalo | Associate | 5 | Bankruptcy | $290.00 | 11.3 | $3,277.00 |
| Jay M. Sakalo | Associate | 5 | Bankruptcy | $270.00 | 7.9 | $2,133.00 |
| Jay M. Sakalo | Associate | 5 | Bankruptcy | $250.00 | 188.3 | $47,331.00 |
| Jay M. Sakalo | Associate | 4 | Bankruptcy | $235.00 | 678.9 | $159,541.50 |
| Monalee E. Zarapkar | Associate | 6 | Corporate | $245.00 | 20.7 | $5,071.50 |
| Monalee E. Zarapkar | Associate | 4 | Bankruptcy | $225.00 | 17.5 | $3,937.50 |
| Jordan Keusch | Associate | 6 | Litigation | $260.00/ $290.00 | 13.5 | $3,909.00 |
| Jordan Keusch | Associate | 6 | Litigation | $260.00 | 277.0 | $72,020.00 |
| Jason Z. Jones | Associate | 4 | Bankruptcy | $215.00 | 1.3 | $279.50 |
| Jason Z. Jones | Associate | 3 | Bankruptcy | $180.00 | .3 | $54.00 |
| Matthew E. Kaplan | Associate | 1 | Bankruptcy | $160.00 | .3 | $48.00 |
| Allyn Danziesen | Associate | 5 | Bankruptcy | $290.00 | 15.4 | $4,466.00 |
| Allyn Danziesen | Associate | 5 | Bankruptcy | $250.00 | 5.4 | $1,350.00 |
| Allyn Danziesen | Associate | 5 | Litigation | $240.00 | 15.6 | $3,744.00 |
| John A. Moore | Associate | 2 | Bankruptcy | $170.00 | 5.1 | $867.00 |
| Eleanor Barnett | Associate | 2 | Litigation | $170.00 | 133.3 | $22,661.00 |
| Carlos F. Junco | Associate | 5 | Corporate | $230.00 | 1.60 | $368.00 |
| Scott G. Klein | Associate | 3 | Bankruptcy | $180.00 | 11.3 | $2,034.00 |
| Javier Granda | Law Clerk | N/A | Litigation | $140.00 | 7.2 | $1,008.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $120.00 | 6.3 | 756.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $110.00 | 13.3 | $1,463.00 |
| Luisa M. Flores | Paralegal | N/A | Bankruptcy | $100.00 | 13.5 | $1,350.00 |
| Fanny M. Matas | Paralegal | N/A | Litigation | $110.00 | 2.4 | $264.00 |
| Fanny M. Matas | Paralegal | N/A | Bankruptcy | $100.00 | 200.8 | $20,080.00 |
| Silvia J. Anderson | Paralegal | N/A | Bankruptcy | $110.00 | 6.2 | $682.00 |
| Silvia J. Anderson | Paralegal | N/A | Bankruptcy | $100.00 | 85.9 | $8,590.00 |

| James de la O | Paralegal | N/A | Litigation | $100.00 | 3.9 | $390.00 |
|---|---|---|---|---|---|---|
| Elizabeth Guerra-Pazos | Paralegal | N/A | Corporate | $110.00 | 1.0 | $110.00 |
| Joseph Adams | Project Asst. | N/A | Bankruptcy | $110.00 | 4.7 | $517.00 |
| Wendy Van Dijk | Project Asst. | N/A | Bankruptcy | $100.00 | 2.5 | $250.00 |
| Wendy Van Dijk | Project Asst. | N/A | Bankruptcy | $85.00 | 96.0 | $8,160.00 |
| Nicolas Pelleya | Project Asst. | N/A | Bankruptcy | $85.00 | 3.3 | $280.50 |
| Nicolas Pelleya | Project Asst. | N/A | Bankruptcy | $60.00 | 28.5 | $1,710.00 |
| Nichole Wong | Project Asst. | N/A | Bankruptcy | $100.00 | 1.8 | $180.00 |
| Nichole Wong | Project Asst. | N/A | Bankruptcy | $85.00 | 36.1 | $3,068.50 |
| Nichole Wong | Project Asst. | N/A | Bankruptcy | $60.00 | 1.1 | $66.00 |
| David Rosenblatt | Paralegal | N/A | Bankruptcy | $100.00 | 24.0 | $2,400.00 |
| Anthony Box | Paralegal | N/A | Litigation | $100.00 | .3 | $30.00 |
| Emma Gutierrez | Project Asst. | N/A | Bankruptcy | $50.00 | 3.0 | $150.00 |
| Brad Baena | Project Asst | N/A | Bankruptcy | $60.00 | 54.0 | $3,240.00 |
| | | | | **Total:** | 4,651.2 | $1,392,044.50 |
| | | | | | **GRAND TOTAL - $1,392,044.50** | |
| | | | | | **Blended Rate: $299.28** | |

## CUMULATIVE COMPENSATION BY PROJECT CATEGORY

| PROJECT CATEGORY | TOTAL HOURS | TOTAL FEES |
|---|---|---|
| Fraudulent Transfer Litigation | 4,651.2 | $1,392,044.50 |
| **Grand Total** | **4,651.2** | **$1,392,044.50** |

**CUMULATIVE EXPENSE SUMMARY FOR FRAUDULENT TRANSFER MATTER**
**FOR PERIOD FROM APRIL 29, 2002 TO DECEMER 31, 2004**

| | | | |
|---|---|---|---|
| 1. | Staff Overtime | | $5,070.24 |
| 2. | Court Reporter | | $1,813.00 |
| 3. | Messenger Services | | $383.05 |
| 4. | Photocopies | | $13,179.87 |
| | (a)        In-house copies @ .15 | 7,521.00 | |
| | (b)        Outside copies (at cost) | 5,658.87 | |
| 5. | Transcript of Depositions | | $4,138.35 |
| 6. | Overtime A/C | | |
| 7. | Postage | | $5.42 |
| 8. | Overnight Delivery Charges | | $1,207.19 |
| 9. | Long Distance Telephone Charges | | $5,037.13 |
| 10. | Telecopies | | $1,555.00 |
| 11. | Computerized Research | | $6,527.78 |
| 12. | Miscellaneous costs | | $701.25 |
| 12 | Expert Fees and Costs | | $206,743.87 |
| 13. | Travel Expenses | | $56,426.96 |
| | (a)        Airfare | 37,086.25 | |
| | (b)        Meals | 3,869.03 | |
| | (c)        Parking & Mileage & Car Rental | 4,064.13 | |
| | (d)        Lodging | 11,407.55 | |
| **TOTAL "GROSS" AMOUNT OF REQUESTED DISBURSEMENT** | | | |
| **Less Credit Applied** | | | -2,119.19 |
| **TOTAL "NET" AMOUNT OF REQUESTED DISBURSEMENT** | | | $300,669.92 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | | |

**FIFTY-SECOND INTERIM AND FINAL FEE APPLICATION REQUEST
OF BILZIN SUMBERG BAENA PRICE & AXELROD LLP FOR
APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE
OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS
FOR THE PERIOD OF APRIL 9, 2001 THROUGH FEBRUARY 3, 2014 AND REQUEST
FOR FEE ENHANCEMENT FOR SERVICES IN CONNECTION WITH FRAUDULENT
TRANSFER LITIGATION AGAINST SEALED AIR CORPORATION,
CRYOVAC, INC. AND FRESENIUS MEDICAL CARE HOLDINGS**

Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg"), counsel to the Official

Committee of Asbestos Property Damage Claimants (the "PD Committee") of the above-

captioned debtors (the "Debtors") respectfully hereby submits its Fifty-Second Interim and Final

Fee Application Request of Bilzin Sumberg Baena Price & Axelrod LLP for Approval and

Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel

to the Official Committee Of Asbestos Property Damage Claimants and Request for Fee

Enhancement for Services in Connection with Fraudulent Transfer Litigation Against Sealed Air

Corporation, Cryovac, Inc. and Fresenius Medical Care Holdings (the "Final Application"),

pursuant to 11 U.S.C. §§ 328, 330 and 331 for approval and allowance of compensation for

services rendered and for reimbursement of expenses incurred in connection therewith, as

follows:

MIAMI 4140949.3 74817/15537

## I.  Introduction

1.     Bilzin Sumberg, as counsel to the PD Committee, seeks (i) approval and allowance, pursuant to section 331 of the Bankruptcy Code of compensation for the professional services rendered by Bilzin Sumberg as counsel for the PD Committee from January 1, 2014 through February 3, 2014 (the "Interim Compensation Period") in the aggregate amount of $20,586.00 representing 44.1 hours of professional services and (ii) reimbursement of actual and necessary expenses incurred by Bilzin Sumberg during the Interim Compensation Period in connection with the rendition of such professional services in the aggregate amount of $390.84.

2.     Bilzin Sumberg, also seeks (i) final approval and allowance of compensation for the professional services rendered by Bilzin Sumberg as counsel to the PD Committee from April 9, 2001 through February 3, 2014 (the "Final Compensation Period") in the aggregate amount of $11,837,680.74 representing 40,417.80 hours of professional services, (ii) reimbursement of actual and necessary expenses incurred by Bilzin Sumberg during the Final Compensation Period in connection with the rendition of such professional services in the aggregate amount of $5,248,546.60; and (iii) allowance and payment of a fee enhancement in the amount of $875,000.

3.     As of the date of this Final Application, of the $11,837,680.74 in fees and $5,248,546.60 in expenses for which Bilzin Sumberg seeks final allowance, Bilzin Sumberg has received payment of $11,811,536.19 in fees and $5,248,546.60 in expenses.  The amount of $26,535.39 represents the hold back amounts for which Bilzin Sumberg has previously applied and the compensation and reimbursement of expenses Bilzin Sumberg seeks for the Interim Compensation Period.

4.      This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. Background

5.      On April 2, 2001, each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate its business and manage their properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.  No trustee or examiner has been appointed in this case.

6.      On April 12, 2001, the United States Trustee formed the PD Committee.  Thereafter, the PD Committee approved the retention of Bilzin Sumberg as its counsel.

7.      By order dated June 21, 2001 (the "Retention Order"), the Court authorized the PD Committee to retain Bilzin Sumberg nunc pro tunc to April 9, 2001, pursuant to 11 U.S.C. §§ 1103 and 328, on a general retainer basis, to represent the PD Committee in these cases.

8.      This is the fifty-second and final application of Bilzin Sumberg for the allowance of compensation and reimbursement of expenses for services rendered to the PD Committee.  This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members approved by the Court on May 3, 2001, as amended by the Court's order of April 17, 2002  (collectively, the "Administrative Fee Order").

9.      Bilzin Sumberg has received no payment and no promise for payment from any source for services rendered in connection with these cases.   There is no agreement or understanding between Bilzin Sumberg and any other person for the sharing of compensation to be received hereunder.

10.     As stated in the Certification of Jay M. Sakalo Esquire, attached hereto as Exhibit "A," all of the services for which compensation is sought herein were rendered for and on behalf of the PD Committee solely in connection with these cases.

### III. <u>Summary of Services Rendered</u>

11.     In accordance with Local Rule 2016-2 dated December 12, 1996 and the Administrative Fee Order, and to assist the Court, the Debtors, the United States Trustee and other parties in interest in evaluating this Final Application, the primary services performed by Bilzin Sumberg during the Interim Compensation Period are summarized in the Summary attached hereto as *Exhibit B*.  Bilzin Sumberg's services throughout the Interim Compensation Period have been valuable to the PD Committee in providing advice and counsel.

12.     In accordance with the Administrative Fee Order and the Local Rules, a summary of the attorneys and their corresponding names, years in position, hourly rates and the number of hours incurred by each, the number of hours incurred by category and the summary of expenses for both the Interim Compensation Period and the Final Compensation Period are set forth on *Attachment B*.  The hourly rates reflect what Bilzin Sumberg generally charges its other clients for similar services.   An itemization including identification of services performed by the attorneys sorted by date and time keeper is attached hereto as *Exhibit C* which also contains a statement of Bilzin Sumberg's disbursements necessarily incurred in the performance of Bilzin Sumberg's duties as counsel to the PD Committee.

13.     Bilzin Sumberg has worked closely with the PD Committee's Delaware counsel, Ferry & Joseph, P.A., to avoid unnecessary duplication of services.

### IV.     <u>A Fee Enhancement Should be Awarded to Bilzin Sumberg</u>

14.    The centerpiece of the Debtors' confirmed plan of reorganization (the "Plan") is the more than $1 billion of consideration paid by Sealed Air Corporation and Cryovac, Inc. (collectively, "Sealed Air"), and Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc. (collectively, "Fresenius") in settlement of fraudulent transfer litigation claims (the "Fraudulent Transfer Litigation").  The Fraudulent Transfer Litigation was prosecuted, with leave of the District Court (which had withdrawn the reference over the Fraudulent Transfer Litigation), against Sealed Air and Fresenius by the PD Committee and the Official Asbestos Personal Injury Claimants Committee (the "PI Committee;" the PD Committee and the PI Committee are collectively referred to as the "Asbestos Committees") on behalf of the Debtors' estates.  The settlement agreements (the "Settlement Agreements") to which Sealed Air and Fresenius ultimately were forced to acquiesce to avoid a trial on the merits called for Sealed Air to pay $512.5 million in cash, *plus interest* at 5.5% per annum from December 21, 2002, until the effective date of a plan of reorganization, and to provide the Grace estate with nine million shares of Sealed Air common stock,[5] and for Fresenius to pay $115 million in cash (the "Settlement Payments").[6]

15.    The Plan expressly refers to "the essential and integral importance of each of the [Settlement Agreements] to the Plan…." Plan at ¶ 7.7.  Indeed, without the Settlement Payments, the Debtors likely would not have been able to reach agreement with asbestos claimants in respect of the Plan or obtain the injunctive relief and other benefits conferred under section

---

[5] Sealed Air's stock split 2-for-1 in March 2007, effectively doubling the number of shares to be paid to Grace's estate to 18 million shares.  Currently, Sealed Air's stock trades on the New York Stock Exchange at approximately $33 per share.

[6] Subsequent to the execution of the Fresenius term sheet, the Plaintiffs and Fresenius agreed to revise the terms of their agreement.  The parties agreed that Fresenius could make a $115 million cash payment in lieu of absorbing absolute liability for certain pre-1996 tax liabilities as the former Grace parent.

524(g) of the Bankruptcy Code.[7]  Moreover, the Debtors were able to pay their unsecured creditors in full under the Plan.

16.    This astonishing result could not have been achieved without the dogged persistence of plaintiffs' counsel who twice brought the Sealed Air case essentially to the very eve of trial, and who poured human and financial resources into a litigation even more difficult and complex than they ever could have imagined at the time this representation was first undertaken by them at the direction of the District Court.  Indeed, for plaintiffs' counsel, who had not intended to serve in that role, it was like being thrown into a burning barn.

17.    In June, 2001, the PD Committee, represented by Bilzin Sumberg, and the PI Committee, represented by Caplin & Drysdale, filed with the Bankruptcy Court their Joint Motion for Authority to Prosecute Fraudulent Transfer Claims seeking authority to prosecute fraudulent transfer claims against Sealed Air and Fresenius arising out of the spin-off of certain business segments by Grace in 1996 and 1998 which the Asbestos Committees believed were engineered by Grace to put those businesses and related assets out of the reach of asbestos claimants.  The Debtors voraciously opposed this motion, decrying in their brief that the motion was "frivolous" and arguing that the Asbestos Committees were biased and unable to make a truly independent and objective evaluation of the merits of the claims.  It is deliciously ironic that the Debtors argued the fraudulent transfer claims were "without merit and that pursuing these claims would be a waste of the estate's assets."  The Debtors went so far as to object to any fees or costs being recovered by the Asbestos Committees and their counsel "in their unauthorized evaluation… as well as any fees and costs they incurred in bringing this frivolous

---

[7] At the confirmation hearing, David Austern, the then Future Claimants Representative, testified that the Settlement Agreements would provide "enormous benefit;" such contribution "is a condition of this plan;" and without such contribution there would not have been "an understanding with the [D]ebtors to settle this matter."  *See* September 17, 2009 H'rg. Tr., p. 59.

motion."  The Debtors urged that before any such claims were brought the Unsecured Creditors Committee should first evaluate whether the claims were worth pursuing.

18.      The Unsecured Creditors Committee also filed an opposition, arguing — in unison with the Debtors — that the motion was "premature," and that "[b]efore these estates are burdened with the costs of litigation, a prompt but thorough investigation of the facts and circumstances underlying the transactions at issue should be pursued to determine whether the Fraudulent Transfer claims should be prosecuted at all."  *See* Opposition of the Official Committee of Unsecured Creditors to the Plaintiffs' Joint Motion For Authority To Prosecute Fraudulent Transfer Claims, at 1-2.

19.      At bottom, these oppositions were the result of the mutual concern of the Debtors and the Unsecured Creditors Committee that the Fraudulent Transfer Litigation would establish the Debtors' insolvency based on liability for asbestos claims and thus, dilute the treatment of general unsecured claims and render the interests of equity holders worthless.

20.      At a hearing on the Joint Motion held before the bankruptcy court on January 3, 2002, the Debtors argued at great length that the Sealed Air and Fresenius fraudulent transfer claims lacked merit, stating, for example:

> MR. BERNICK: . . . we have looked into this, and I will tell you and you will see as the evidence comes in . . . these were some of the most gone over transactions you can possibly imagine by the highest level of lawyers, by the highest level of consultants, not one consultant but multiple consultants using methodologies that their own experts used in estimation.  These are absolutely locked up solid cases, and we think that it's going to be very, very evident . . . .

> *     *     *

> If you take a look at the claims flow chart, you see how it declines.  The claims culminated or peaked in the mid 1990's, and they were on the decline, and the Sealed Air transaction was executed — entered into in 1998 against the backdrop of this steady decline in claims.  It's very, very powerful . . . you are talking about

a downward sloping curve, and there is no insolvency, and the asbestos liabilities are very manageable.

January 3, 2002 Transcript of Hearing Before Honorable Judith K. Fitzgerald, at 127-30.

21.     Ultimately, as aforementioned, the District Court withdrew the bankruptcy court reference over the fraudulent transfer claims against Sealed Air and Fresenius and offered first the Debtors, and then the Unsecured Creditors Committee, the right to bring these fraudulent transfer claims.  In part, as a consequence of these parties' refusals to prosecute, the District Court granted the Asbestos Committees' request that they be permitted to prosecute the claims.

22.     The Asbestos Committees never contemplated that their respective bankruptcy counsel would prosecute the Fraudulent Transfer Litigation.  Given the limited bankruptcy resources and other professional demands upon Bilzin Sumberg and Caplin & Drysdale, as well as the fact that Sealed Air and Fresenius had engaged two of the largest law firms in the world to represent them and otherwise had vast resources with which to wage their defenses, the Asbestos Committees sought to retain special litigation counsel to handle the Fraudulent Transfer Litigation. To this end, the Asbestos Committees jointly, as well as separately, interviewed numerous law firms with the requisite experience in this sort of litigation and the size and stature to litigate against the law firms chosen by Sealed Air and Fresenius.

23.     The Asbestos Committees ultimately selected the pre-eminent trial law firms of Cozen & O'Connor and McKool Smith to jointly prosecute the Fraudulent Transfer Litigation and sought approval of their retention by the District Court on an alternative fee arrangement, providing for both hourly and success fee compensation. Subsequently, the Cozen & O'Connor firm developed a conflict that precluded it from accepting the engagement and a disagreement ensued between the Asbestos Committees as to the retention of McKool Smith as lone counsel in

the matter.[8] The dispute was "resolved" by the District Court which determined in Solomon-like fashion that Bilzin Sumberg and Caplin & Drysdale would represent the plaintiffs in the litigation and that, in view of the historical differences in case positions between the Asbestos Committees, those law firms would be assisted in this representation by the law firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg") and set Milberg's compensation at a blended hourly rate of $475/hour for attorney time and $125/hour for non-attorney time.[9]  Moreover, the District Court's withdrawal of the reference was expanded to also encompass authority to allow fees and costs for all estate counsel serving in the Fraudulent Transfer Litigation.[10]

24.    While Bilzin Sumberg and Caplin & Drysdale had not sought or anticipated serving as plaintiffs' counsel in the Fraudulent Transfer Litigation, they nonetheless enthusiastically accepted the responsibility reposed in them by the District Court. In the course of the joint representation, the three law firms forged a collaborative relationship and put aside whatever misgivings they might have had, as well as the fact that their interests were not perfectly aligned in the bankruptcy case, for the good of the cause.

25.    At the time this matter was first undertaken, Bilzin Sumberg (and our co-counsel) reasonably anticipated that the primary issues in the case would involve an analysis of Grace's enterprise value — essentially the asset side of the balance sheet, or perhaps more accurately, Grace's value as a going concern — versus its asbestos liabilities (including associated insurance issues).  Bilzin Sumberg also reasonably anticipated that all of the relevant Grace documents already had been, or shortly would be, made available in a document depository in Florida, so

---

[8]  McKool Smith was willing to accept the engagement on a flat 10% contingent fee basis. Thus, had that firm been engaged, its fee would have exceeded $100 million.

[9]  The District Court identified and selected Milberg as counsel without input from the Asbestos Committees.

[10]  Ultimately, District Judge Wolin retired from the District Court and his responsibilities in connection with the Debtors' bankruptcy cases were re-assigned to District Judge Buchwalter who subsequently referred the Fraudulent Transfer Litigation and the related authority over counsel fees back to the Bankruptcy Court.

that discovery disputes would be minimal.  Indeed, Bilzin Sumberg understood from Caplin & Drysdale that in another asbestos bankruptcy case, in which that firm served as counsel to the official asbestos claimants' committee and debtor's counsel was also Kirkland & Ellis, such an indispensable document depository was created without significant incident.

26.     Based upon these reasonable understandings concerning the relevant issues and availability of discovery, the three law firms representing the estate in the Fraudulent Transfer Litigation agreed to pursue this still extremely complex litigation on an almost unbelievably compressed time schedule; a schedule that called for a trial on highly sophisticated financial and asbestos liability and asbestos insurance coverage issues involving billions of dollars in just over six months.  Even under the best of circumstances this schedule presented a significant challenge.  As things developed, however, the case became even more vast, complex and difficult than originally anticipated — without any relief in the trial schedule.

27.     The first bizarre and altogether unpredicted twist to occur was that on April 1, 2002, the Debtors actually sought and ultimately were granted leave to intervene in the Fraudulent Transfer Litigation and to align themselves with the defendants!  Not only was it "an out of body experience" to be representing the Debtors' estates while the Debtors themselves opposed the recovery that ultimately permitted them to exit bankruptcy, Debtors' counsel served as architects of the defense that was mounted and it was nothing less than "scorched earth." Indeed, the combined intellectual capital and human resources of Kirkland & Ellis, Skadden Arps and McDermott Will substantially changed the intensity of the Fraudulent Transfer Litigation and the demands that it imposed on Bilzin Sumberg (which had approximately 65 lawyers resident in a single office in Miami, Florida) and our co-counsel.  As a consequence, Bilzin Sumberg was required to expend substantially more human resources on this matter than

anticipated, including adding senior lawyers from other practice groups to augment the bankruptcy partner and associate who were responsible for the representation.

28.    As for discovery, Grace established a document depository in its former headquarters located in Boca Raton, Florida, a relatively short distance from Bilzin Sumberg's office in Miami, as a result of which Bilzin Sumberg accepted responsibility for the review of the enormous number of documents that were maintained in the depository.  However, despite the enormity of the documents produced and reviewed, the depository failed to include back-up documents supporting the spin-off transactions at issue and also failed to include any post-spin-off transaction documents.  All of this resulted in substantial, unanticipated, and time-consuming motion practice to get the documents that plaintiffs' counsel believed would be available from the beginning.  More importantly, given the compressed time frame under which plaintiffs' counsel were operating, it meant a hugely difficult squeeze in preparing for a relatively fixed trial date which plaintiffs' counsel did not wish to postpone — particularly with respect to the post-transaction documents, which were not ordered produced for some time.

29.    The discovery disputes that ensued with Grace and Sealed Air can never be fully appreciated solely based upon a written description.  The battles were massive.  For example, at the outset of the litigation, Grace and the Unsecured Creditors Committee (which was merely monitoring the litigation from the sidelines) insisted upon a protocol whereby there would be no unnecessary duplication of effort among plaintiffs' counsel.  More specifically, to avoid such duplication, Grace and the Unsecured Creditors Committee insisted that each firm be responsible for separate areas of the case, with little or no overlap.  Accordingly, and logically, Bilzin Sumberg agreed to take responsibility for the property damage liability portion of the case, Caplin & Drysdale agreed to take responsibility for the personal injury liability portion of the

case, and Milberg agreed to take responsibility for all other issues — the most significant of which had not yet even surfaced.   But, when discovery commenced, Grace insisted upon producing virtually all of its significant personal injury and property damage documents "for attorneys' eyes only," meaning that only Milberg could view them; Bilzin Sumberg was forced to fight tooth and nail to see unredacted copies of the property damage documents.

30.    By any standard, the Fraudulent Transfer Litigation was hotly contested. The discovery was extensive and highly adversarial, prompting the need for numerous — almost daily — appearances before a Special Master.  Millions of pages of documents were produced and needed to be reviewed; 58 depositions were taken; 17 sets of expert reports were issued including 5 from the plaintiffs, certain of which concerned the extent of asbestos property damage liability and thus, the responsibility of Bilzin Sumberg.  Through it all, the seminal issue remained whether the Debtors were insolvent in 1996 and 1998 when the spin-offs to Sealed Air and Fresenius occurred.

31.    In the Summer of 2002, Bilzin Sumberg lawyers became proponents and strategists among plaintiffs' counsel for clarifying the so-called "standards" for determining whether the Debtors were insolvent at the time of or as a result of the transfers to Sealed Air and Fresenius which involved both the relevance of post-spin-off asbestos liability information, and the relevance of the "reasonableness" of any belief Grace may have had at the time of the transactions with respect to the future cost of its asbestos liabilities. The strategy was deployed and resulted in multiple rounds of briefing on what became the "signature issue" in the Fraudulent Transfer Litigation.   Ultimately, in July 2002, the District Court issued its precedent-setting *in limine* opinion on the standards issue — an opinion with nationwide ramifications for virtually every asbestos-related bankruptcy and virtually every asset sale for

less than reasonably equivalent value from a company with asbestos liabilities.  Sealed Air

thereafter sought permission for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) — an

application that plaintiffs' counsel opposed in two different briefs but that <u>every other</u>

<u>constituency</u> in this bankruptcy supported.  The District Court denied that application.

32.      Needless to say, Bilzin Sumberg's contributions in the pursuit of the standards

issue — an issue that Grace, Sealed Air and others loudly ridiculed and vehemently opposed —

lead to what was perhaps the single most significant event in this litigation.  It cannot be gainsaid

that the standards opinion issued by the District Court was an enormous impetus for Sealed Air

and Fresenius to settle the Fraudulent Transfer Litigation.

33.      The Fraudulent Transfer Litigation against Sealed Air was scheduled for trial on

September 30, 2002. The District Court announced it would bifurcate the "intent" and

"constructive fraud" portions of the cases, with constructive fraud to be litigated and tried first,

and granted plaintiffs' counsels' request to stay the Fresenius action pending resolution of the

Sealed Air action.  The latter proved to be a huge strategic victory for the Debtors' estates that

ultimately paid a $115 million dividend, the Settlement Payment paid by Fresenius.  As a result

of the decision to seek a stay of the Fresenius action, plaintiffs' counsel were able to leverage

their result in the much stronger Sealed Air case, and avoid the not insignificant potential that, if

litigated, the weaker case against Fresenius might have been dismissed prior to trial.

34.      However, as luck would have it, in September 2002, the Third Circuit issued its

opinion in *In re Cybergenics*, 310 F.3d 785 (3d. Cir. 2002), which spawned yet another side-

show over the legal authority of the Asbestos Committees to prosecute the Fraudulent Transfer

Litigation.  The issue resulted in yet more research, motion practice and brief and letter writing,

including but not limited to applications to the Third Circuit for permission to take interlocutory

appeals pursuant to 28 U.S.C. § 1292(b) and applications to expedite, and multiple hearings before the District Court.  As a consequence, the trial date was adjourned indefinitely as the District Court weighed the options.  Throughout the debate, Bilzin Sumberg was an active and effective advocate and ultimately, it was Bilzin Sumberg's motion on behalf of the PD Committee that was granted by the District Court resulting in the case being rescheduled for trial in December 2002.

35.    With the standards opinion in hand and a new trial date locked in, it was predictable that settlement discussions would ensue. The District Court enlisted Professor Francis McGovern and attorney David Gross to assist with settlement negotiations.   The Asbestos Committees were heavily engaged in that on-going process and, as a consequence, Bilzin Sumberg and Caplin & Drysdale were likewise meaningfully involved at the very same time they were preparing for the December trial.  Then, the District Court, with input from the parties — who were continuing their lengthy, difficult, brass knuckles behind-the-scenes negotiations — organized a marathon settlement negotiating session involving both the Fresenius and Sealed Air matters in the Newark Federal Courthouse on the Wednesday before Thanksgiving, November 27, 2002.  Lawyers from throughout the country traveled to Newark to be present for this session, and were "asked" by the Court not to leave the Courthouse early notwithstanding the impossibility of rescheduling flights on one of the heaviest travel nights of the year.  Negotiations continued until well into the evening, and while many parties stayed late that evening, the Bilzin Sumberg lawyers were literally the last lawyers to leave the room after settlements were finally reached with both Sealed Air and Fresenius, well after 9 pm that

evening.[11]   Indeed, the very last demand as to the economic value of the settlement that was acceded to by Sealed Air and Fresenius was issued by a Bilzin Sumberg lawyer.

36.     There can be no question but that Bilzin Sumberg is entitled to a fee award beyond its hourly rates which ranged from $225 to $450 per hour during the pendency of the Fraudulent Transfer Litigation.   As one court aptly put it in awarding greater fees based upon unforeseen pressures and complexities, and a phenomenal result achieved:

> The parties did not and could not have foreseen in April 1980 the time, the pressures, or the complexity of this case or the phenomenal results achieved.  Any agreement entered into at that time for maximum compensation at hourly rates would have, therefore, proven "improvident" within the meaning of § 328(a).

*In re Warrior Drilling & Eng'g Co.*, 9 B.R. 841, 847 (Bankr. N.D. Ala. 1981).

37.     The same, and arguably much more, is true here. While there is no question that Bilzin Sumberg was paid its standard hourly rates for its role in the Fraudulent Transfer Litigation, the threat existed from the outset that the law firm would go unpaid if it did not successfully conclude the litigation.  As described above, from the very outset of the matter, counsel for the Debtors objected to Bilzin Sumberg being paid for what they characterized as a "fool's errand."   From the time Bilzin Sumberg was impressed into service up until the Settlement Agreements were reached, the District Court offered no assurances — nor could it — that despite such protestation Bilzin Sumberg's fees, even if reasonable, would in any circumstance, be finally allowed.

38.     In the course of its service as litigation counsel in connection with the Fraudulent Transfer Litigation, Bilzin Sumberg expended 5503.2 hours of time and collected approximately $1.7 million in fees.  Our blended hourly attorney rate for such service was $316.24.   After

---

[11]  With leave of the District Court, Debtors' counsel left early to return to Chicago, long before the settlements were reached.  The Bilzin Sumberg lawyers missed the last flight to Miami that evening but jubilantly returned to their homes just as Thanksgiving dinners were being served.

consultation with the PD Committee, all we seek is that our blended hourly rate be enhanced so that it is not less than the $475 per hour blended rate that the District Court authorized Milberg to charge in the Fraudulent Transfer Litigation.  Such an enhancement would result in additional fees payable to Bilzin Sumberg for its services in the Fraudulent Transfer Litigation in the amount of approximately $875,000.  As this is no time to be modest, we do sincerely believe that such an award is just and proper in the circumstances.

39.    In appropriate cases, "reasonable compensation" under section 330 of the Bankruptcy Code may include a fee enhancement over and above the fee calculated using the lodestar calculation. *See In re Mirant Corp.*, 354 B.R. 113, 142-43 (Bankr. N.D. Tex. 2006) (holding that "enhancement of fees are permissible in suitable cases"); 3 COLLIER ON BANKRUPTCY, ¶328.04[4] (15th ed. Rev. 2005) (stating that "[p]remiums are authorized under section 330" and therefore, "[a] professional may apply for an upward adjustment of a fee previously agreed to and approved by the court").

40.    Moreover, section 328(a) of the Bankruptcy Code specifically empowers this Court to increase the previously agreed-upon terms and conditions of a particular engagement by bankruptcy counsel at the conclusion of that engagement, where the terms and conditions of the engagement "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions:"

> (a)    The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.  ***Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions***.  (emphasis added).

*See, e.g.*, *In re Omegas Grp., Inc.*, 195 B.R. 875, 880 (Bankr. W.D. Ky. 1996) ("the bankruptcy court is expressly empowered to 'totally disregard an employment agreement where necessary and award [greater] compensation more appropriate under the individual circumstances of the case'") (quoting *In re Financial News Network, Inc.*, 134 B.R. 732, 735 (Bankr. S.D.N.Y. 1991))(citing additional cases); *In re Malcon Developers, Inc.*, 138 B.R. 677, 680 (Bankr. N.D.N.Y. 1992) (same); *In re Land*, 138 B.R. 66, 71 (D. Neb. 1992) ("The court's power includes the power to increase as well as decrease the agreed-upon compensation."); *In re Warrior Drilling*, 9 B.R. at 847 (determining that Court had power to increase previously agreed-upon fees under § 328(a), and granting increased fee request); *In re ACT Mfg., Inc.*, 281 B.R. 468, 488 (Bankr. D. Mass. 2002) ("Applicants are free to seek enhancements at the end of a case if they believe their services warrant"); *In re NWFX, Inc.*, 267 B.R. 118 (Bankr. W.D. Ark. 2001) (considering the enhancement of counsel fees without considering § 328(a)); *In re El Paso Refinery, L.P.*, 257 B.R. 809 (Bankr. W.D. Tex. 2000) (enhancing some counsel fees without considering § 328(a)); *In re Hillsborough Holdings Corp.*, 191 B.R. 937 (Bankr. M.D. Fla. 1995) (enhancing counsel fees without considering § 328(a)); *In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. 838 (Bankr. N.D. Ill. 1989) (applying common fund principles to compensate class action attorneys under 28 U.S.C. § 330); *Matter of Baldwin-United Corp.*, 79 B.R. 321 (Bankr. S.D. Ohio 1987) (apportioning fees among counsel based upon whether services benefited client versus all parties, benefit to the estate, and whether services rendered were duplicative of services provided by others).[12]

---

[12]     *In re Barron*, 225 F.3d 583 (5th Cir. 2003) and 325 F.3d 690 (5th Cir. 2003), *reh'g denied*, 2003 U.S. App. LEXIS 10248 (5th Cir. May 15, 2003), is not to the contrary.  In *Barron*, the Fifth Circuit, focusing on the word "incapable," twice reversed and remanded a district court judgment *reducing* a previously agreed-upon contingent fee, because the district court did not adequately explain why the amount of the recovery, the "slam dunk" nature of the adversary proceedings, and the ease of collection on the judgment, were all *incapable* of being anticipated at the time the district court approved the initial contingent-fee agreement.  For the reasons detailed throughout this brief,

41.    By no means does Bilzin Sumberg claim sole or principal credit for the results achieved in the Fraudulent Transfer Litigation.  In fact, as discussed below, all we seek is that plaintiff's counsel's fees are uniformly calculated. As previously stated, this representation was a collaborative effort.  Each of the three law firms serving as plaintiffs' counsel acquitted itself with distinction. Both time and circumstance (including those described in paragraph 16 above) required that each of plaintiffs' counsel function efficiently and timely and without duplication but that their efforts nonetheless be seamless. Given the results obtained, such efficiency is appropriately rewarded by an enhancement.  *See In re Mirant*, 354 B.R. at 142-43.

42.    Courts considering increasing compensation agreements under § 328(a) generally have considered several factors in determining whether to grant a request for compensation beyond the previously agreed-upon terms and conditions of employment, including that the results obtained went beyond reasonable expectations, the attorneys' efforts resulted in a significant infusion of funds into the debtor's estate, the attorney faced a strong adversary and unforeseen pressures, the litigation was voluminous and complex, the time and labor required, the novelty and difficulty of the questions, the skill required to perform the legal services properly, the preclusion of employment by the attorney due to acceptance of the case, customary fees for similar cases, time limitations imposed by the circumstances, and the "undesirability" of the case.  *See, e.g.*, *In re Omegas Group*, 195 B.R. at 880; *In re Warrior Drilling*, 9 B.R. at 848-50.  Every one of those factors exist in this case.

43.    Similarly, in *In re ASARCO LLC*, 20130 WL 6190455, *2 (S.D. Tex. 2013), the court instructed, as follows:

---

just the opposite is true here.  Moreover, we would respectfully suggest that *Barron* must be interpreted and applied in a manner that does not eviscerate section 328(a) of the Bankruptcy Code since, taken to its illogical conclusion, one could argue that nothing is truly *incapable* of being anticipated.  Also, Judge Jones's concurring opinion in the second appeal strongly suggests that *Barron* should be limited to its unique facts.

To determine fee awards and enhancements under Section 330's "reasonable compensation" standard, the Fifth Circuit applies a two-step framework. *See* Pilgrim's Pride, 690 F.3d at 656 (internal citations omitted). First, courts calculate the "lodestar," *id*. at 656 (citing In re Cahill, 428 F.3d 536, 539 (5th Cir. 2005)), which is "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work[,]" *id*. at 655 (citing In re Lawler, 807 F.2d 1207, 1211 (5th Cir. 1987)). Next, courts may grant upward or downward adjustments based on the factors listed in Johnson v. Georgia Highway Exp., Inc. and Section 330 of the Bankruptcy Code. Id. (citing Johnson, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989); 11 U.S.C. § 330(a)). (footnote omitted).

44.    The *Johnson* factors alluded to above are: (i) the time and labor required, (ii) the novelty and difficulty of the questions, (iii) the skill requisite to perform the legal services properly, (iv) the preclusion of other employment by the attorney due to acceptance of the case, (v) the customary fee, (vi) whether the fee is fixed or contingent, (vii) time limitations imposed by the client or the circumstances, (viii) the amount involved and the results obtained, (ix) the experience, reputation and ability of the attorneys, (x) the "undesirability" of this case, (xi) the nature and length of the professional relationship with the client, and (xii) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974).

45.    In *In re Omegas Group*, *supra*, the court looked to seven factors: (i) the attorney seeking compensation had a reasonable belief that he was providing representation on a contingency fee basis; (ii) the results obtained went beyond reasonable expectations; (iii) the attorney assumed great risk in taking on representation of the case; (iv) the attorney persevered where others would have curtailed their efforts; (v) the attorney's efforts resulted in a significant infusion of funds into the debtor's estate; (vi) the attorney faced a strong adversary and unforeseen pressures; and (vii) the litigation was voluminous and complex. 195 B.R. at 880 (citing cases). *See also In re Malcon Developers*, 138 B.R. at 681-83 (granting percentage award despite allegation of earlier agreement to proceed on an hourly basis where, among other things,

counsel obtained results beyond all reasonable expectations, persevered where others would have despaired, the litigation was complex and voluminous, and counsel faced a strong adversary, even though granting this award meant that not all creditors would be paid in full).

## V. **Conclusion**

46.    As set forth herein, Bilzin Sumberg has necessarily and properly expended 44.1 hours of services in the performance of its duties as counsel to the PD Committee during the Interim Compensation Period.  The work involved, and thus the time expended, was carefully assigned in light of the expertise required for each particular task.  Bilzin Sumberg requests initial interim allowance and payment for such services.

47.    In addition, Bilzin Sumberg incurred actual out-of-pocket expenses in connection with the rendition of services to the PD Committee for the Interim Compensation Period in the sum of $390.84 for which it respectfully requests reimbursement in full.

48.    Bilzin Sumberg charges $.10 per page for in-house photocopying services.  Bizin Sumberg charges the actual cost from the vendor for out-sourced photocopying and document retrieval, and computerized legal research.  Bilzin Sumberg charges $1.00 per page for out-going facsimile transmissions, and does not charge for in-coming facsimiles.

49.    Bilzin Sumberg has reviewed the requirements set forth in Local Rule 2016-2 and believes that this application complies therewith.

50.    Bilzin Sumberg has made no prior application in this or any other Court for the relief sought herein with regard to the compensation and expenses incurred during the Interim Compensation Period.

51.    Bilzin Sumberg incurred a cumulative total of 40,417.80 hours of services during the Final Compensation Period with a fair market value of $11,837,680.74 as well as

$5,248,546.60 in expenses.    Bilzin Sumberg respectfully requests allowance of such compensation on a final basis and, for the reasons set forth above, requests additional allowance and payment of a fee enhancement in the amount of $875,000.

WHEREFORE, Bilzin Sumberg respectfully requests that the Court enter an order (i) awarding, authorizing and directing the Debtors to pay Bilzin Sumberg the final sum of $20,976.84 as compensation for legal services rendered and costs incurred during the Interim Compensation Period, and $5,558.55, which represents the holdback pending on prior interim fee applications; (ii) awarding final fees in the amount of $11,837,680.74 and costs in the amount of $5,248,546.60 for the Final Compensation Period; (iii) awarding a fee enhancement to Bilzin Sumberg in the amount of $875,000 and directing the Debtors to pay such amount; (iv) granting such other and further relief as the Court deems appropriate; and (v) reserving jurisdiction to award supplemental fees and costs which may be incurred by Bilzin Sumberg through a final hearing on the Final Application.

Dated: May 12, 2014                  Respectfully submitted,

                                     BILZIN SUMBERG BAENA PRICE &
                                     AXELROD LLP
                                     Counsel to the Official Committee of Asbestos Property
                                     Damage Claimants
                                     1450 Brickell Avenue, Suite 2300
                                     Miami, Florida 33131
                                     Telephone:  (305) 374-7580
                                     Facsimile: (305) 374-7593

                                     By:  ___/s/ Jay M. Sakalo_____
                                          Scott L. Baena (Admitted Pro Hac Vice)
                                          Jay M. Sakalo (Admitted Pro Hac Vice)