### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al. | ) Case No. 01-01139 (KJC) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) **Hearing Date: September 10, 2014 10:00 a.m. Eastern Time** |
| | ) **Re: Docket No. 31812** |
| | ) |
| _____ | ) |

### REORGANIZED DEBTORS' BRIEF IN OPPOSITION TO
### ANDERSON MEMORIAL HOSPITAL'S MOTION TO
### ALTER OR AMEND ORDER DENYING CLASS CERTIFICATION

The Bankruptcy Court correctly denied Anderson Memorial Hospital's ("AMH") class

certification motion in 2008 following extensive discovery, briefing, argument and hearings.  As

the Bankruptcy and District Courts both held:  (1) actual and publication notice to Asbestos

Property Damage ("Asbestos PD") Claimants and their counsel was adequate; (2) after

withdrawal or expungement of some 3,000 claims asserted by AMH, so few Asbestos PD Claims

remained that the numerosity requirement of Federal Rule of Civil Procedure 23 was not met;

and (3) AMH's putative class also failed the superiority test of Rule 23.

AMH has identified nothing new to justify re-opening this extensively litigated denial of

class certification.  As shown in Argument Section III.A below, the three legal issues that AMH

claims it "never had an opportunity to address" (Motion[1] at 3, 16, 17, 18-19) were in fact

thoroughly litigated, briefed and argued by AMH.  AMH simply lost on all three issues, which of

course is no basis for re-opening a six-year-old ruling.  As shown in Argument Section III.B

below, the nine new "developments" invoked by AMH are not new at all.  Most occurred years

ago, in 2008 and 2009, yet they elicited no response from AMH or anyone else during the

---

[1]    AMH's Motion to Alter or Amend Order Denying Class Certification and for Entry of Scheduling Order and
Granting of Related Relief, filed March 5, 2014 (Dkt. 31812), is hereinafter referred to as "the Motion."

intervening years. And, as shown in Argument Section III.B.7 below, the Third Circuit Court of

Appeals' decisions in *Grossman's* and *Wright* raise no due process issue for PD Claimants that

merits re-opening class certification. AMH has made no factual showing that these opinions

have resulted in a "multitude" of valid Asbestos PD Claims, or enlarged the universe of Asbestos

PD Claims at all. Even if AMH had standing to assert the due process rights of so-called "Gap

Claimants"—it does not—AMH has failed to show any lack of due process in Grace's Plan of

Reorganization, which provides a fair and adequate procedure for any Asbestos PD Claimant that

believes its claim was not properly discharged to present its due process arguments to this Court.

In short, AMH has raised nothing new that merits re-opening these heavily-litigated issues or

beginning discovery anew six years after the Bankruptcy Court's denial of class certification. Its

Motion to Alter or Amend that denial must be rejected.

Moreover, denial of the Motion will not impede AMH's ability to litigate its individual

claim or its right to appeal denial of class certification. As shown in Argument Section I below,

consistent with Third Circuit precedent, the confirmed and consummated Grace Plan of

Reorganization expressly provides that AMH may litigate its individual claim before this Court

and then, whatever the ruling, appeal the entire dispute—both its individual claim and the denial

of class certification—to the District Court and, if necessary, the Third Circuit.

## BACKGROUND

## I.    PRE-PETITION ASBESTOS PROPERTY DAMAGE LITIGATION

Asbestos PD Claims include both (1) "traditional" property damage claims (such as

AMH's claim), which purport to seek damages for the cost of removing Grace's asbestos-

containing materials from commercial and other buildings, and are classified in Class 7A of the

Grace Plan; and (2) claims relating to loose-fill Zonolite Attic Insulation ("ZAI"), predominantly

used in homes, which are separately classified by the Plan.[2]  In the late 1980s and 1990s, Grace

litigated traditional PD Claims in approximately 400 cases but, after the litigation matured and

most claims settled, only eight such claims remained as of Grace's April 2001 petition date.

(2/27/09 Disclosure Statement, at 22) (Dkt. 20873)

In 1992, AMH's counsel Speights & Runyan ("S&R") filed *Anderson Memorial Hospital*

*v. W. R. Grace, et al.*, in South Carolina state court, seeking certification of a nationwide class of

private building owners with Asbestos PD claims.  (Ex. 1)  After the state court struck the claims

of out-of-state residents (Ex. 2), in 1996 S&R amended its complaint to seek only a class of

South Carolina building owners:

> all persons, corporations, partnerships, unincorporated associations or other
> entities which own in whole or in part any building in South Carolina which
> contains asbestos-containing surfacing materials; these buildings have suffered or
> will suffer asbestos contamination caused by the release of asbestos fibers from
> asbestos-containing surfacing materials manufactured, sold and/or distributed by
> defendants or for which Defendants are otherwise liable.  (Ex. 3, ¶ 3)

On February 9, 2001, S&R filed with the state court an *ex parte* "Emergency Petition For

A Rule To Show Cause Why A Conditional Class Should Not Be Certified Against W.R.

Grace", contending that "[o]nce Grace files for bankruptcy, this Court may be deprived of

jurisdiction to do anything against Grace—including issuing a certification order on the merits."

(Ex. 4)  As AMH counsel Daniel Speights attested in the petition:  "Absent conditional

certification prior to bankruptcy filing, a bankruptcy court may not grant the South Carolina

building owners the preferential class treatment this Court may determine they deserve."  *Id.* at

Ex. A, p. 3.  That day, South Carolina Circuit Court Judge John C. Hayes entered an order

---

[2]    Issues relating to ZAI PD Claims were thoroughly litigated.  After a "science trial," the Bankruptcy Court ruled
that ZAI is contaminated with asbestos but presents no unreasonable risk of harm.  355 B.R. 462 (Bankr. D.
Del. 2006).  In 2009, the Bankruptcy Court approved a U.S. ZAI Bar Date and notice program.  Approximately
16,000 ZAI claims were filed, leading to a class settlement and provisions in Grace's Plan channeling current
and future domestic ZAI claims (Class 7B) to the Asbestos PD Trust.  (4/1/09 Order, Dkt. 21174; Plan § 3.1.7,
Dkt. 26368)  Canadian ZAI claims (Class 8) were also settled and addressed in the Plan.  (Plan § 3.1.8)

*conditionally* certifying a South Carolina class. (Ex. 5)  Not only was the order *ex parte* and conditional, Judge Hayes made clear that it was not final and had no precedential value:

> I assure you – assure everyone that *I have not even come close to making a decision in this because – a final decision*, because I have not had a chance to digest, again, the quite voluminous matter, nor have I reviewed the transcript.  So there are still issues out there.

> And the fact that the Court has taken the action it has at this point, I, in my mind and personally find that to have *no precedential value as to what I'll ultimately find* and can tell you, each side, that, to the extent it is humanly possible, I feel that it would have absolutely no influence on me, again, having been issued only in what I considered exigent circumstances.  (Ex. 6, 3/9/01 Tr. at 6) (italics added)

After Grace's chapter 11 filing in April 2001, Judge Hayes entered a July 2001 *final* order certifying a class of South Carolina building owners as to three other defendants, but not Grace.  (Ex. 7)  The court made clear that "the Order affects only the three remaining Defendants, due to the [§ 362 automatic] stay as to W.R. Grace."  (Ex. 8 at 1)  Thus, as the Bankruptcy and District Courts recognized here, no AMH state court class was ever certified as to Grace.  389 B.R. 373, 375 (Bankr. D. Del. 2008); 2008 WL 4234339, *1 (D. Del. Sept. 4, 2008); 398 B.R. 368, 370 (D. Del. 2008).[3]

## II.    THE ASBESTOS PD CLAIMS BAR DATE AND NOTICE PROGRAM, AND LITIGATION OF DEFICIENT CLAIMS

### A.    Bar Date And Court-Approved Notice Program

Shortly after these events, in June 2001, Grace filed a motion seeking a PD claims bar date in its chapter 11 cases.  (Dkt. 586)  For the following ten months, Grace worked with the

---

[3]    AMH's new contention that all South Carolina class certifications are conditional—made for the first time in this Motion, and without citation (Motion at 13)—is unsupported by South Carolina case precedent and South Carolina Rule of Civil Procedure 23(d)(1), which provides that certification "*may* be conditional," indicating that not all South Carolina certifications *are* conditional.  Moreover, at the March 9, 2001 hearing where Judge Hayes confirmed that the certification as to Grace was conditional and non-precedential, Mr. Speights repeatedly distinguished between a conditional and a final class certification order.  (Ex. 6 at 11, 13-14, 20) (contrasting conditional order and final order granting class certification motion "on the merits," and seeking a final order, which he argued might be treated differently in a bankruptcy court).

Official Committee of Asbestos PD Claimants ("PD Committee")—co-chaired by AMH's counsel Daniel Speights—and the Bankruptcy Court to craft the Bar Date Notice, notice package and a comprehensive publication system (collectively, the "Notice Program") (2/12/02 Revised Bar Date Motion) (Dkt. 1665), with a total cost of $4 million. (Ex. F to 6/27/01 Bar Date Motion) (Dkt. 595)

The Bar Date Notice's definition of Asbestos PD Claims was extremely broad, encompassing not only claims for costs of removing asbestos-containing material but also direct and indirect claims for diminution in property value and economic loss. (Dkt. 1926-2, reprinted in Appendix A hereto) The Notice made clear the severe consequences of failing to file a claim: the claimant would be forever barred, estopped and enjoined from asserting a claim against Grace. (*Id.*) The Notice also provided the Bankruptcy Code's full definition of "claim," in bold typeface, informing all putative claimants that even contingent, unliquidated and unmatured claims must be filed or be forever forfeited. (*Id.*, reprinted in Appendix B hereto)

After several hearings, and after noting that the Notice Program was "designed to cover the universe of plaintiffs who could be out there with property damage" (4/22/02 Tr. at 97) (Dkt. 2057), the Bankruptcy Court approved the Notice Program, finding that it provided "good, adequate and sufficient" notice to unknown claimants. (4/22/02 Order at 5) (Dkt. 1963)

**B.    S&R's Insistence That Only PD Claimants' Counsel—Not Grace—Provide Actual Notice to Known, Represented Claimants**

Initially, the Bar Date Order required all Asbestos PD Claimants' counsel either to (1) certify to Grace that they had contacted or attempted to contact all of their clients who had (or may have) claims against Grace, provided them with a Bar Date Package and advised them of their rights; or (2) provide the names and addresses to Grace for distribution of the Bar Date Package. (*Id.* at 5) But in June 2002, the PD Committee, with Mr. Speights as co-chair, filed a

motion asking the Bankruptcy Court to abate this requirement, principally to avoid the consequences of "the failure of counsel to file either the specified notice or the specified certification." (Dkt. 2269 at 5)  The PD Committee stated:  "The attorneys don't need the safety net . . . And so we would ask that they be relieved of that obligation." (7/22/02 Tr. at 103-04) (Dkt. 2503)  The Court agreed that proceeding in this manner posed risks for the PD Claimants' counsel, not Grace, because "if they blow a bar date and their clients don't file one, the excusable neglect standard is undoubtedly not going to say, 'I didn't get the notice from my attorney,' and undoubtedly I'm going to say, 'too bad, your attorneys got the notice, go contact their malpractice carrier.'" (*Id.*)  Over Grace's objection, the Bankruptcy Court granted the PD Committee's motion. (9/23/02 Order) (Dkt. 2745)

In light of this record, the District Court found that Grace did all it could to provide actual notice to known claimants:  all parties to pre-petition Asbestos PD cases and all known property damage lawyers received actual notice; and "[i]t was made clear to claimants' attorneys, including Daniel Speights of S&R, that they had the responsibility to serve their clients and would best know of clients who might be interested in filing property damage claims." *Mission Towers v. W. R. Grace*, 2007 WL 4333817, *7 (D. Del. Dec. 6, 2007).  The Third Circuit affirmed the appropriateness and breadth of the Notice Program, holding that Grace was not required to (1) search its records for thousands of buildings where Grace asbestos-containing product was installed and (2) search title records to locate current building owners.  2009 WL 648651, *2 (3d Cir. Mar. 11, 2009) (stating that such searches would be "beyond the reasonably ascertainable standard"), citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995).

### C.    Pre-Bar Date Order Directing AMH To File Class Certification Motion

Early in the Bar Date and Notice Program proceedings, issues arose regarding class proofs of claim for Asbestos PD claims.  At a February 2002 hearing at which AMH's counsel

was present, the Bankruptcy Court stated five times that AMH must file a motion for leave to file

a class proof of claim prior to filing one (2/25/02 Tr. at 97, 104, 108, 110) (Dkt. 1793),

culminating with a clear directive: "If you file a motion to have a class proof of claim filed at

some point, it'll get scheduled and I'll hear it. Unless and until I get that motion there will be no

class proofs of claim." (*Id.* at 110) However, S&R never sought authority to file a class proof of

claim. Instead, without leave of court and in contravention of the Bankruptcy Court's order,

S&R filed class proofs of claim shortly before the March 31, 2003, Bar Date, on behalf of

"worldwide" and "statewide" building owners, attaching lists of some 3,000 buildings as putative

claimants in its worldwide "class" and dozens of South Carolina buildings as putative claimants

in its statewide "class." (Claim Nos. 9911 and 9914) (Dkt. 19987)

### D.    Litigation, Withdrawal and Expungement of S&R's Unauthorized Claims

In addition to its classwide POCs, AMH's counsel S&R filed individual Asbestos PD

POC's for the approximately 3,000 potential class members it claimed to have identified through

Grace's sales records, including hundreds of individual claims for which S&R would later admit

it had no authority to sign and file other than its role as putative class counsel. (10/21/05 AMH

Br. at 2-6) (Dkt. 10001) In 2005, Grace filed objections to S&R's claims on multiple bases,

including lack of authorization to file the claims. (*See, e.g.*, Dkts. 8640 and 9311)

In response, between June and September 2005, S&R withdrew hundreds of claims.[4] In

October 2005, after determining that S&R lacked authority to file individual claims on behalf of

purported *Anderson Memorial* class claimants, Judge Fitzgerald ordered S&R to withdraw an

additional 52 South Carolina claims and 552 out-of-state claims (10/31/05 Tr. at 90) (Dkt.

---

[4]    Dkts. 8710-8715, 8717-8727, 8729-8732, 8734, 8736, 8748-8767, 8769-8779 (June 29, 2005); Dkts. 8784, 8785, 8787-8814, 8819-8826, 8828, 8830-8843 (June 30, 2005); Dkts. 8849-8871, 8873-8895 (July 1, 2005); Dkts. 8911-8936 (July 5, 2005); Dkts. 8943 (July 6, 2005), 8991 (July 13, 2005), 9517 (Sept. 26, 2005).

11025), and expunged these claims in November 2005. (Dkt. 11080) In 2007, the Bankruptcy Court expunged and disallowed 71 other claims after S&R failed to produce any evidence of pre-Bar Date authority. 366 B.R. 302 (Bankr. D. Del. 2007). In total, S&R withdrew or had disallowed approximately 2,300 claims. (Dkts. 10961, 11025, 11080, 11245, 16422, 16540)

In August 2006, Judge Fitzgerald entered a case management order for discovery and adjudication of Grace's objections (based on statute of limitations, product identification, and lack of hazard) to the remaining traditional PD Claims. (Dkt. 13120) As a result, by the July 2007 class certification hearing (*see* infra, Section III.C), all traditional Asbestos PD Claims had been resolved on the merits, withdrawn, or settled,[5] except for one remaining South Carolina PD claim (AMH itself) and 158 non-South Carolina PD Claims, which were subsequently resolved. Today, the only remaining active Class 7A PD Claims are AMH's claim, one Canadian claim that was preliminarily settled but which lacks a signed settlement agreement, and 37 Canadian claims brought by S&R that were expunged and remain on appeal (which appeal is not active).

## III.    AMH'S CLASS CERTIFICATION MOTION

### A.    AMH's 2005 Class Certification Motion

It was not until October 21, 2005—2½ years after the Bar Date—that S&R filed AMH's Motion for Class Certification. (Dkt. 10014) The timing of AMH's filing coincided with the firm's recent loss of nearly all of the claimants it purported to—but in reality had no basis to—represent, as the class motion came directly on the heels of S&R's withdrawals of hundreds of unauthorized claims from June through September 2005.

---

[5]    S&R itself agreed with Grace to settle 119 Asbestos PD Claims, all of which were members of the putative AMH class, for a total of $29.4 million (settlement approval orders, Dkts. 19672, 19752, 19754-55, 20080-81, 23561, 23582-91, 23593, 23595, 23597, 24577-78, 24580-82, 24670-24675). These claims were paid in full on February 11, 2014 shortly after Grace's emergence.

Although the South Carolina court had excluded out-of-state claims from the class, in the Bankruptcy Court AMH sought to broaden its class definition in its Motion for Class Certification to include non-South Carolina claimants:

> Anderson seeks to certify an opt-out class action on behalf of itself and the class of other property owners whose buildings were, are or will be contaminated with asbestos fibers released from asbestos-containing surfacing materials for which the Debtors are legally responsible including, but not limited to, those claims identified in Exhibit A. The class would explicitly exclude any building for which a property damage claim is currently pending in this bankruptcy not listed on Exhibit A.

(*Id.* at 2)[6] AMH's motion included a list of the thousands of individual claims it had filed at the Bar Date that it had located in "Grace's own records, which identified thousands of known buildings by street address which contained the Debtor's asbestos-containing surfacing treatments." (*Id.* at 4)

**B.     Discovery on AMH's Class Certification Motion**

In December 2005, AMH initiated extensive discovery on multiple topics ranging far afield of class certification, such as:

- "All communications between the Debtors and the Celotex Asbestos Settlement Trust or the Bodily Injury Trust Advisory Committee, or any member, representative, counsel, employee or other agent of the Trust or the Committee, regarding asbestos property damage claims filed by Speights & Runyan or through Anderson Memorial Hospital." (Dkt. 11333)

- "The debtors' knowledge of efforts in 2001 to exclude Anderson Memorial Hospital and/or Daniel Speights and/or Speights & Runyan from the Official Committee of Property Damage Creditors and all communications pertaining to these efforts." (Dkt. 11334)

- "The debtors' knowledge, if any, of what pre-petition efforts the debtor made to settle or compromise the class action brought against it by Anderson Memorial Hospital through the law firm of Speights & Runyan and all communications regarding the settlement or compromise of that action." (Dkt. 11336)

---

[6]     AMH's putative class specifically excludes any building owned by the federal or state government and claimants represented by other counsel. (Motion at 5)

These, and other, AMH discovery requests led to numerous disputes. At an October 2006 hearing, Judge Fitzgerald called the discovery requests overly broad and directed AMH's counsel to narrow the requests to focus on class certification issues:

> Asking somebody to give you everything they have related to a topic, I think, is simply a fishing expedition. And even the rules of discovery don't give you that much. I think you need to narrow this topic. . . . [T]hat request, Mr. Speights, is just overly broad. It would require the Debtor to go through every document in the Debtor – in every file that the Debtor ever had since 1992. And I don't think the discovery rules require the Debtor to do that. . . .
>
> So I think with respect to the discovery to the extent that the request is as broad as it is, I can't even see how it's calculated to lead to relevant admissible evidence because it's too broad. So I think you need to narrow the scope, whether the Debtor raised that issue or not. (10/23/06 Tr. at 75-78) (Dkt. 13572)

AMH did not comply. Instead, on October 30, 2006, AMH served sweeping requests that once again sought "all documents" (except pleadings) in Grace's files on a host of issues—such as insurance and pre-petition evaluation of AMH's claims—that had no bearing on Rule 23 issues. (Dkt. 15062) At a November 2006 hearing, the Court again directed AMH's counsel to articulate the element of class certification—i.e., numerosity, commonality, typicality, adequacy, superiority—for which the discovery requests were relevant because "I want to make sure that what we're doing is discovery related to certification, not to something else." (11/20/06 Tr. at 53, 55) (Dkt. 13894)

AMH never did so.[7] Nevertheless, Grace produced two records custodian deponents and responded to several sets of AMH written discovery. (Dkt. 15062, Ex. B; Dkt. 15518)

### C.   The Bankruptcy Court's 2008 Order Denying Class Certification

The Bankruptcy Court held an all-day certification hearing on July 5, 2007, then issued an opinion on May 29, 2008, denying class certification "with prejudice." 389 B.R. at 380. The

---

[7]   Indeed, AMH even sought to depose a former member of the U.S. Trustee's staff. (3/30/07 Not. of Dep. of Frank J. Perch III) (Dkt. 15053)

Court held that AMH failed to show numerosity, given that of 4,000 individual PD claims filed at the Bar Date, only one South Carolina claim (AMH itself) and 158 PD claims of any kind remained. The dearth of claims was "a result [of] S&R's withdrawal of claims, this court's expungement of other claims, S&R's lack of authority to file claims on behalf of certain claimants, and the definition of 'class' provided by Anderson Memorial, which excluded schools, colleges, certain governmental buildings and claimants represented by counsel." *Id.* at 375-76 and n.6, citing *Mission Towers*, 2007 WL 4333817 at *1.

The Court expressed particular concern that recognizing a class of individual claims that were not filed at the Bar Date would "operate to negate the bar date," give certain claimants "the opportunity to file late claims despite the bar date and without having to establish excusable neglect," and "nullify the notice program which entailed substantial effort and expense." *Id.* at 379-80, citing *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993) (excusable neglect required for late proofs of claim). The Court further noted that the Bar Date Order's requirement of direct notice to PD Claimants had been abated specifically at the PD Committee's request, over Grace's objection. 389 B.R. at 375.

The Bankruptcy Court rejected as "wholly devoid of merit" AMH's argument, premised on *In re Charter Co.*, 876 F.2d 866, 874 (11th Cir. 1989), that the motion to certify could not have been filed until 2005, after Grace had objected to AMH's class claims. 389 B.R. at 377 n.10. "The court is clearly able to set forth a process by which to adjudicate disputed issues and did so in this case. Therefore, even if Grace had not filed an objection to [the] claim, this court, in controlling its docket and attempting to orchestrate an orderly process, ordered such a motion to be filed if anyone intended to file a class proof of claim." *Id.*

As an independent basis for denying certification, the Court also found that the putative

class did not meet Rule 23(b)'s predominance and superiority requirements, as a class action

format "is not conducive to resolution of issues such as whether a Grace product is in place in

any claimant's building or whether a specific state's statute of limitations has run" and therefore

"is not a superior method of resolving the claims objections in this case." *Id.* at 379. In

particular, AMH failed to show (1) how class certification would enhance the extensive notice

procedures; or (2) why the remaining PD Claims could not be adjudicated through procedures

already in place in the bankruptcy. *Id.* at 377.

### D.   The District Court's Denial of AMH's Motion for Leave to Appeal

AMH did not seek Bankruptcy Court reconsideration in 2008 (or at any time before

now). Rather, AMH sought leave to appeal the denial of class certification, which the District

Court rejected, noting that the Bankruptcy Court's "denial of class certification was neither

imprudent nor erroneous," its decision on numerosity "was sound," and "certifying this class

would effectively render the bar date useless and adversely affect claimants who filed timely

proofs of claim." 2008 WL 4234339 at *2.

The District Court also denied AMH's motion for reconsideration, rejecting many of the

same arguments that AMH re-raises in its current Motion. 398 B.R. 368 (D. Del. 2008). For

example, AMH argued then, as it does now, that "there was not a scintilla of evidence presented

that Grace provided actual notice to any asbestos property damage claimant" other than seven

claimants who had property damage cases pending when Grace filed its bankruptcy. *Id.* at 373.

But the Court correctly recognized that actual notice went to all known property damage lawyers

and to "all named parties to the handful of property damage cases when Grace filed its

bankruptcy petition." *Id.* at 374, citing *Mission Towers*, 2007 WL 4333817 at *1. Rejecting the

same argument AMH rehashes now about notice to 8700 potential PD claimants, the Court

confirmed that the PD Committee, not Grace, was responsible for any such gap in actual notice:

> [A]t the request of the Asbestos Property Damage Committee ("PD Committee")–
> of which Daniel Speights of S&R is a member–the Bankruptcy Court abated "the
> requirement in the Bar Date Notice that counsel of record for asbestos property
> damage claimants either (1) certify that they notified their clients of the bar date
> by transmitting to them the proof of claim package or (2) give names and
> addresses to Grace so Grace could notify them directly." *In re W.R. Grace & Co.*,
> 389 B.R. 373, 375 (Bankr. D. Del. 2008) (citing Bankr. Dkt. Nos. 2269, 2274,
> 2745, 2394, 2469 and 2503). Despite W.R. Grace's objection, the Court approved
> the PD Committee's opt-out proposal. (Bankr. Dkt. No. 2745).

398 B.R. at 373. Thus, AMH's complaints about Grace's purported failure to provide notice

"ring hollow in the face of the fact that the PD Committee successfully obtained revisions to the

bar date order so that counsel for plaintiffs were not obligated either to provide notice to

claimants that they represented or to provide a list of claimants to Grace." *Id.* at 374.

The District Court further noted that the Bankruptcy Court had not relied on facts relating

to notice to these claimants as a basis for denying class certification, and that in any event

"[d]isputing whether actual notice was provided to 8700 potential claimants is also undermined

by the fact that the notice program instituted, with input from all the parties, has been affirmed

repeatedly by this Court." *Id.* at 374, citing *Mission Towers*, 2007 WL 4333817 at *7 and

*PacifiCorp v. W.R. Grace*, 2006 WL 2375371, *15 (D. Del. Aug. 16, 2006) (denying motion to

file late proof of claim by owners of property to which Grace had shipped vermiculite for

processing decades ago, who alleged lack of actual bar date notice; publication notice was

appropriate because Grace "had no direct relationship with the claimants" or "knowledge of

[their] identities"). The Court reaffirmed its prior determination that publication notice was

appropriate and that the validity of the Notice Program is "the law of the case." 398 B.R. at 374.

The District Court also rejected the argument—again re-urged by AMH now—that a

class should not be limited to individual Bar Date claims, and distinguished the main case relied

on by AMH, *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998).  The

District Court noted that claimants there were victims of an elaborate Ponzi scheme, so the court

"engaged in an intensely fact specific analysis examining the Rule 23(a) factors" that were

present in that case but lacking here, including commonality and superiority.  398 B.R. at 378-

80.  The District Court also noted that the putative class in *Interregional* "was precisely defined

and the causal chain was clear.  The present case lacks such clarity.  Grace's ACM [asbestos-

containing material] was sold to thousands of customers over a period of decades.  Many of

those building have since changed hands."  *Id.* at 381; *see also Interregional,* 227 B.R. at 368

(each class member's claim arose from interest in municipal lease and each class member was

victim of alleged fraudulent Ponzi scheme, thus satisfying commonality prerequisite).

    The Third Circuit denied leave to appeal the denial of AMH's class claim, noting that a

lower court's denial of class certification under Rule 23 is not a final appealable decision.

12/14/09 Order, Case No. 08-4829.

## IV.    GRACE'S PLAN FAIRLY AND ADEQUATELY ADDRESSES AND RESOLVES ASBESTOS PD CLAIMS

    The property damage provisions of Grace's confirmed Plan accomplish what AMH's

putative class cannot:  to treat all current and future PD Claimants equally and in compliance

with section 524(g) of the Bankruptcy Code.  In confirming the Plan and denying several

appeals—including AMH's—the Bankruptcy and District Courts and Third Circuit specifically

found that the Plan satisfies section 524(g)(2)(B)(ii)(V) (requiring reasonable assurance that the

PD Trust will value and pay similar present and future claims in substantially the same manner)

and section 1123(a)(4) of the Bankruptcy Code (requiring a plan to "provide the same treatment"

for each claim or interest in a class).  446 B.R. 96, 107-08 (Bankr. D. Del. 2011); 475 B.R. 34,

139-41 (D. Del. 2012); *In re W.R. Grace (Anderson Mem. Hosp.),* 729 F.3d 332, 344, 346, 350

(3d Cir. 2013) (rejecting AMH's appeals based on section 524(g), equality of treatment, good faith, and feasibility).[8]

Specifically, the Case Management Order for Class 7A traditional Asbestos PD Claims ("Class 7A CMO") (Plan Ex. 25, Dkt. 31657-24) assures equal treatment for present and future PD Claims. (Class 7A CMO ¶ II)  All Class 7A PD Claims—both present and future—will be resolved in federal court, under the Federal Rules of Civil Procedure, and paid 100% of their allowed value.  *Id.*; *see also* Plan § 3.1.7(b).  In the words of the PD FCR, the highly experienced former Judge Alexander Sanders, "the Joint Plan treats future holders of Traditional PD claims or demands . . . fairly and equitably and on terms substantially similar to the current Traditional PD Claims . . . by providing mechanisms by which all valid current and future claims shall be treated and paid on substantially similar terms." (Sanders Proffer ¶ 26, Dkt. 23236)

The Class 7A CMO also provides a full remedy for any claimant that contends its PD claim was not discharged.  First, a claimant files with the PD Trust a detailed proof of claim that examines 17 separate factors related to discharge, including when asbestos was installed, when the claimant learned of asbestos in the property, whether the asbestos was removed or the property was renovated, and whether and when the claimants received actual notice of Grace's bankruptcy. (Class 7A CMO at ¶ II.A)  Then, the claimant must provide information if requested by Grace to evaluate the claim.  If Grace believes the claim was properly discharged, it must file a motion with this Court "seeking to enjoin or otherwise terminate the prosecution of such claim on the ground that the claim is barred by the discharge." (*Id.* at ¶¶ II.B(1), (2) and (3))  If this Court finds that the claim was not discharged, the claimant may prosecute the claim against the PD Trust in the United States District Court for the District of Delaware or any other

---

[8]   Notably, the Third Circuit gave AMH the benefit of the doubt and assumed that, even if the putative AMH class were certified, the Plan would still be confirmable.  729 F.3d at 350.

District Court with jurisdiction, and the PD Trust shall pay any allowed claims. (*Id.* at ¶ II.C.1, C.4) Thus, neither AMH nor anyone else has any basis to complain about lack of fair and efficient procedures for determining discharge issues for thus-far unasserted PD Claims.

Moreover, as PD FCR Judge Sanders also recognized, PD Claimants who have not yet asserted claims will be "better off under the Plan than if there were never any bankruptcy filing at all, or even if all such claims were passed-through the bankruptcy . . ." (11/1/09 PD FCR Br. at 4) (Dkt. 23634)  That is because under the Plan, "not only will they be entitled to be paid 100% of their allowed claims, but they will thereafter be quasi-*secured* creditors, given the combination of the Debtors' obligation to pay, the guaranty of those payments, and most importantly, the Stock Issuance Agreement which provides the security of 50.1% of the Reorganized Debtors' stock in the event of a payment default." *Id.* (emphasis in original)

The class treatment urged by AMH would convey no such benefits.  Indeed, the procedures and benefits provided in the Plan for any PD Claimants who assert claims in the future, including payment guarantees and equality of treatment, would be lost if AMH's class were certified.  For these and other reasons, the Third Circuit rejected all of AMH's appeals, including on equality of treatment.  729 F.3d at 350.

## ARGUMENT

AMH's Motion raises nothing new that justifies re-opening these heavily-litigated issues and disrupting the consummated Plan.  Moreover, the class sought by AMH suffers from fatal infirmities.  To the extent AMH believes otherwise, it already has an adequate remedy:  AMH may adjudicate its individual claim in this Court pursuant to the Plan, then appeal its entire dispute to the District Court and Third Circuit.

## I.  AMH'S REMEDY IS TO LITIGATE ITS INDIVIDUAL CLAIM AND THEN APPEAL THE FULL DISPUTE

Grace's confirmed and consummated Plan affords AMH a full remedy for its grievances about denial of class certification.  The Plan requires AMH to litigate its individual claim in the Bankruptcy Court (Class 7A CMO ¶¶ I.A and I.B), with its rejected class claims remaining inactive until there is a final appealable order on AMH's individual claim, at which time the individual and class claims are ripe to be appealed together.  *Id.* at ¶ I.B.2.  *See generally Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 198 (3d Cir. 2008) (class action plaintiff may appeal denial of class certification once a final judgment has been entered); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244-45 (3d Cir. 2013) (prior interlocutory orders such as class certification decisions merge with, and may be reviewed on appeal from, final judgment).[9] The availability of this full remedy makes re-opening class certification now untimely and unnecessary (as well as unwarranted).

Moreover, in seeking to re-litigate class certification through a procedure contrary to the Plan, AMH is in effect seeking an improper modification to an already effective Plan.  The Effective Date occurred on February 3, 2014, the Asbestos PI and Asbestos PD Trusts have been funded, approximately $1 billion in claims were paid shortly thereafter, and substantial claims continue to be paid.[10]  (Dkts. 31700, 31732, 32079)  It is both too late and improper for AMH to seek to overturn key Plan provisions now.

---

[9]  AMH may appeal its class claim to the Third Circuit regardless of whether it wins, loses or settles its individual claim.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980).

[10]  After confirmation, a plan may only be modified prior to substantial consummation—and even then only by the plan's proponents.  11 U.S.C. § 1127(b); *see also* H.R. REP. NO. 95-595 (under § 1127(b), "modification must be proposed before substantial consummation of the plan") (Ex. 10); *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002); *see also In re Planet Hollywood Int'l*, 274 B.R. 391, 400 (Bankr. D. Del. 2001) (creditor lacked standing to modify plan); Plan § 4.1 (only Grace Plan Proponents may modify Plan).

## II.    AS THE BANKRUPTCY COURT CORRECTLY FOUND, AMH'S CLASS CANNOT SATISFY RULE 23

Bankruptcy courts follow a well-established two-step analysis in deciding class certification. *First*, the court must determine whether a class action "makes sense" and will advance the interests of the bankruptcy, including whether: (a) the class was certified pre-petition; (b) there was a bar date; and (c) certification will adversely affect the administration of the case. *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007); *In re Sacred Heart Hosp.*, 177 B.R. 16, 22-24 (Bankr. E.D. Pa. 1995). Certification motions must be timely brought in accordance with Rule 23(c)(1), *i.e.*, "[a]s soon as practicable after the commencement of an action brought as a class action . . . ," to avoid prejudice and end runs around the bar date. *Sacred Heart*, 177 B.R. at 23 ("The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors."); *In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) (failure to move for certification promptly after filing class claim detracts from discretionary factors to be considered).

*Second*, the proponent of class certification must also satisfy the elements of Federal Rule of Civil Procedure 23. *Musicland*, 362 B.R. at 652; *Interregional*, 227 B.R. at 366. *See also In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 64 (Bankr. D. Del. 2002) (burden on movant to establish each element). AMH can never satisfy Rule 23's numerosity, predominance and superiority requirements. For this reason alone, AMH's Motion should be denied.

### A.    Numerosity

AMH cannot meet Rule 23(a)(1)'s requirement that the class be "so numerous that joinder of all members is impracticable," for at least two reasons. *First*, AMH has not identified any claims that legitimately missed the Bar Date, much less "thousands" or "an untold number"

of them. (Motion at 3, 28-29)  In July 2007, Judge Fitzgerald recognized both the potential for

late claims and the total absence of such claims in the four years since the Bar Date:

> THE COURT:  If there's a problem with the bar date notice, then you—
> when you discover that you've got some reason to come before the Court,
> approach the Court's equitable power, and say here's the problem with the
> bar date notice, and here's my reason why I didn't comply, so let me
> comply with a late-filed claim.  That would be the context in which the
> Bankruptcy Court would typically get a request to have a late-filed claim.
> But to date I don't have anybody asking to file a late-filed claim and this
> bar date notice expired years ago, after a several million dollar notice
> program that the debtor went out with.  (7/5/07 Tr. at 51) (Dkt. 16422)

Nearly seven years later, such claimants still have not emerged.  This is particularly striking

because S&R signed and filed individual PD claims for some 3,000 buildings (*see* section II.D

above), and has 15 banker's boxes of Grace sales records.  (6/29/07 Tr. at 11) (Dkt. 16273)  Yet

no building owners for the claims that were withdrawn or dismissed for lack of authority (or any

other reason) have come forward to assert PD claims.  Nor has S&R identified any other new PD

claimants, much less a sufficient number to satisfy Rule 23(a) numerosity.

   ***Second***, all potential PD claimants received actual or publication notice of the Bar Date

and of the Bankruptcy Code's extremely broad definition of "claims"—which was far broader

than claims that had accrued under state law under the since-discredited *Frenville* test.  Tellingly,

no claimants have come forward in the more than eleven years since the Bar Date, including

during the four years since the *Grossman's* opinion, to assert that they hold a PD Claim that

should be allowed, on the ground that *Grossman's* liberalized the definition of a "claim."  Thus,

AMH's suggestion that a flood of PD claims is waiting in the wings is speculative and

exaggerated.[11]

---

[11]  S&R also resorts to masonry fill claims in a last-ditch effort to augment the size of its class. (Motion at 14, 18,
22 n.15)  But, as AMH admits, the Bar Date Notice covered masonry fill claims. (*Id.* at 13; *see also* Bar Date
Notice, Dkt. 1926 at Ex. 1 to Ex. B (defining Asbestos PD Claims to include all claims relating to asbestos in

### B.    Predominance and Superiority

Even if some PD Claimants were to come forward now and argue excusable neglect

(based on *Grossman's* or otherwise), the confirmed Plan's PD claim procedures will fairly and

efficiently adjudicate any such claims.  As set forth in section IV above, under the Class 7A

CMO, any PD Claimant who believes that its claim was not discharged may file a proof of claim

with the PD Trust that examines 17 separate factors related to discharge.  (Class 7A CMO ¶ II.A)

The CMO provides for resolution of a discharge motion and ultimately litigation regarding such

highly individualized and fact-specific claims.  In contrast, such myriad factors would be

impossible to resolve on a classwide basis, making AMH's putative class *inferior*, not

superior—as the Bankruptcy Court properly found in 2008.  389 B.R. at 379; *see also Gentry v.*

*Siegel*, 668 F.3d 83, 93-94 (4th Cir. 2012) ("[The bankruptcy] court could reasonably conclude

that even several thousand claims would better be handled by the well-functioning claims

resolution process that the court had already put into place.").

### III.    AMH'S MOTION RAISES NOTHING NEW AND THUS FAILS TO SATISFY THE STANDARD FOR A MOTION TO RECONSIDER

AMH characterizes its pleading as a "motion to alter or amend" under Federal Rule of

Civil Procedure 23(c)(1)(C), or alternatively a motion for reconsideration.  (Motion at 1)

Regardless of the title, the standard is not met and the motion should be denied.  While

Rule 23(c)(1)(C) provides that a class certification order "may be altered or amended before final

judgment," the movant nevertheless must provide genuinely new grounds and cannot simply

rehash previously rejected arguments.  "Reconsideration of an original class ruling typically

occurs as a result of a change in circumstances," and "courts should not condone a series of

---

products or materials manufactured or sold by Grace and not exempting masonry fill)).  And the fact that no
building owner filed a masonry fill claim by the Bar Date (Motion at 18, 30), hurts, rather than helps, AMH.

rearguments on the class issues by either the proponent or the opponent of the class." *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D. Wash. 2013); *see also Panetta v. SAP America, Inc.*, 2006 WL 2711747, *3 (E.D. Pa. 2006), *aff'd*, 294 F. App'x 715 (3d Cir. 2008) (denying motion to reconsider class certification denial because "the court [had previously] considered what [movant] is now classifying as new evidence"); 3 WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7.34 (5th ed. 2013) (Ex. 11).

Similarly, a successful motion for reconsideration requires "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). And "the transfer of a case to a new judge does not open the door for a party to twice bite the apple." *Barner v. City of Harvey*, 2000 WL 1369636, *2 (N.D. Ill. 2000) (declining to reconsider previous judge's certification decision); *see also Lusardi v. Xerox Corp.*, 975 F.2d 964, 975 (3d Cir. 1992) ("[U]pon reassignment, the normal procedure is for the new district judge to reconsider the previous class certification determination only if new facts have developed"); *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993).

Moreover—just as on its original motion for certification—AMH may not support its motion to reconsider with assumptions and aspirations about what it ***hopes*** to show: "[t]he plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2009) (inner citation and quotation omitted). Thus, it is not enough for AMH to speculate without factual support, or to assert based merely on its own subjective belief, that there may be future non-discharged PD Claims. AMH must provide actual proof that an entire class of such claims exists

and meets Rule 23's requirements. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 202 (3d Cir. 2009) (possibility of back-pay for class members insufficient; court must actually determine whether plaintiffs' back-pay request conforms with Rule 23).

AMH urges this Court to re-open Judge Fitzgerald's 2008 order denying class certification on two basic grounds, both of which fail. *First*, AMH supposedly "never had the opportunity to address" three key issues before Judge Fitzgerald. This is demonstrably false. As shown in Section III.A below, these issues were exhaustively litigated and AMH simply lost. *Second*, AMH identifies a grab-bag of nine so-called "subsequent developments" that, it asserts, justify re-opening class certification. These items are all old news, however, and do not justify reconsideration, as shown in Section III.B below.

### A.   AMH's Assertion That It "Never Had the Opportunity to Address" Three Key Issues Is False

In fact, AMH was fully heard on each of these issues. It lost on all three issues—which is quite different from "never ha[ving] an opportunity to address" them. (Motion at 3, 16, 17, 18)

### 1.   AMH Was Fully Heard on the Issue of Whether the Claims of Putative Class Members Are Barred Unless They Filed Individual Proofs of Claim by the Bar Date

AMH contends that it "never had the opportunity to address" the "central legal issue" of whether "AMH's proposed class would be limited to those who filed individual claims" because the Bankruptcy Court supposedly excluded numerosity discovery and evidence on the ground that the class is limited to those who timely filed individual claims. (Motion at 16-17) The record clearly refutes this contention.

In an August 10, 2007 brief (Dkt. 16530), AMH argued *precisely the same thing* it argues now: that putative class members who did not receive actual notice and did not file an individual proof of claim should not have their claims discharged:

[T]he class device can be utilized to minimize the Debtors' risk of emerging from bankruptcy, only to face the non-discharged claims of class members. *In re Craft*, 321 B.R. 189, 194 (Bankr. N.D. Tex. 2005). "While allowing a class claim may not wholly eliminate that exposure, it may foreclose the option of unnoticed members of a putative class commencing their own class action post-discharge." *Id.* at 195. . . . "If the unnamed class members are largely a group which the debtor has refused to notify individually, . . . or if they are in large part what this court referred to as "unknown creditors" then the class device may provide the only form of notice to such parties and be advisable to utilize." *In re Sacred Heart*, 177 B.R. 16, 22 (E.D. Pa. 1995). (Dkt. 16530 at 8)

Moreover, AMH was not prevented from taking discovery or offering evidence on numerosity. At a June 29, 2007 hearing, AMH's counsel Mr. Speights indicated that he wished to use, as exhibits in support of class certification, 15 banker's boxes of Grace sales records, previously produced by Grace in property damage litigation. (6/29/07 Tr. at 11) (Dkt. 16273) Exercising proper control of its courtroom, the Bankruptcy Court correctly required AMH counsel to lay a foundation and cull the documents relevant to the claims at issue before simply dumping 15 boxes into the record, stating: "before they're offered into evidence, they have to be offered in a context that will show that they are related to a claim that's been filed in this case. I'm not going to have just willy-nilly 16 banker's boxes full of documents offered in some group exhibit form." (*Id.* at 17-18) When counsel failed to identify relevant documents from these boxes, at the July 5, 2007 class certification hearing the Bankruptcy Court properly declined to "admit a wholesale group of several thousand documents and billing records without knowing specifically what those documents are and what the relevance is to a particular issue in class certification." (7/5/07 Tr. at 81)[12]

Nevertheless, AMH was not deterred from fully arguing that Grace's product shipment records supported its numerosity argument, contending that the thousands of sales invoices

---

[12]   The Court also stated that, to the extent these boxes were "offered to sort of counter-attack the bar date order, I don't think that's proper at this point in time." (*Id.*)

"show where Grace's product went to by specific street address" and that "there are gaps in [the bar date notice] process because Grace decided not to serve those people." (*Id.* at 57) The Bankruptcy Court rejected AMH's argument that Grace should have sent Bar Date Notices to all buildings identified in the boxes of records—not to claimants, or even to building owners, but to *buildings*—stating that "[b]uildings are not claimants. They have no standing to raise a claim in a bankruptcy case. . . . And the fact that the debtor has some indication that its product was shipped to a specific building is totally irrelevant with respect to giving notice to claimants." (1/26/06 Tr. at 82-83, Dkt. 11707) As the Bankruptcy Court further stated, "[t]he fact that the debtor has a record that's 23 years old doesn't mean that the person who owned the building 23 years ago is still a creditor in the case. That's the whole purpose of constructive notice and a widespread dissemination of constructive notice." (*Id.* at 35-36)

AMH selectively quotes a snippet from a footnote of Judge Fitzgerald's class certification opinion to incorrectly suggest that she recognized that it is always "illogical" and "contrary to the most important class policy considerations" to require individual proofs of claims by putative class members. (Motion at 16, citing 389 B.R. at 377 n.10, in turn citing *Interregional*, 227 B.R. at 371) However, the full text of the footnote reflects that, while other courts have not required individual POC's, in *this* case Judge Fitzgerald *did* order AMH to file, before the Bar Date, a motion seeking leave to file a class POC: "This court agreed with other courts that individual proofs of claim do not need to be filed before a class proof of claim can be filed, thus overruling Grace's request for such a requirement, but directed that a motion to file a class proof of claim had to be filed." 389 B.R. at 377, n.10, citing 2/25/02 Tr. at 99-111. In other words, beginning in 2002, Judge Fitzgerald told AMH that class proofs of claim may sometimes be allowed, but only where permission to file a class POC is granted *in advance of the bar date*—not, as

happened here, where no such permission was sought before Bar Date and unauthorized class

proofs of claims were filed as an end run around the Bar Date.

> **2.     AMH Likewise Fully Litigated the Issue of Actual Notice to Known Building Owners**

AMH incorrectly asserts that it "never had an opportunity to address . . . the central

factual issue of how many building owners were provided individual or actual notice of the PD

Bar Date Order." (Motion at 17)  In fact this was addressed repeatedly, as set forth in

Background Sections II.C and III.C and D above.

As the Bankruptcy and District Courts correctly found, Grace sought to have actual

notice sent to all known claimants represented by counsel, either by direct mail from Grace or by

certifications that plaintiffs' counsel had notified all their claimants.  But the official PD

Committee and its co-chair Mr. Speights filed a motion opposing such direct notice, which the

Bankruptcy Court granted over Grace's objection.  (Dkts. 2269, 2503, 2745)  Accordingly, in

denying class certification, the Bankruptcy Court held that it was PD Claimants' counsel who (1)

accepted responsibility for actual notice to potential claimants and (2) insisted that the

requirement that they certify such notice be abated.  389 B.R. at 375.  As the Court stated:

> The debtor had asked that the attorneys provide some certificate that indicated
> that they, in turn, had forwarded the proof of claim form and the notice on to their
> clients, and the—the property damage committee balked at that, asserting that
> they were officers of the Court, they didn't have to do that, and they basically
> took great umbrage with that suggestion, and so, I didn't demand it . . . .  That's
> the property damage committee of which Anderson sits, on which Anderson sits.
> So, if the property damage committee didn't want to certify through the lawyers
> who had been served that it—that those lawyers did not serve their own clients,
> that's not Grace's fault.  That's—and the blame shouldn't be on debtors.  If I need
> to go back and get those lawyers to certify that they made the direct notice, I will.
> And if they didn't, I think there's a nice little jail cell sitting across the street that
> maybe those lawyers can spend a little bit of time in for a while, since they agreed
> to accept that notice, and then asked not to have anything filed before this record
> that indicated that they complied with that direct notice. (7/5/07 Tr. at 59-60)

The District Court reached the same conclusion. 398 B.R. at 373-74. The Court expressly found that what AMH refers to as a "central factual issue" was in fact of no relevance to class certification because "these 8700 claimants were not raised in this Court's decision to uphold the Bankruptcy Court's decision" and, in any event, after examining "'the class certification decision in detail . . . denial of class certification was neither imprudent nor erroneous.'" *Id.* at 374, citing 2008 WL 4234339 at *2. As the District Court also found, "[d]isputing whether actual notice was provided to 8700 potential claimants is also undermined by the fact that the notice program instituted, with input from all the parties, has been affirmed repeatedly by this Court." *Id.* at 374, citing *Mission Towers*, 2007 WL 4333817 at *7 and *PacifiCorp,* 2006 WL 2375371 at *15. Far from falling short on notice, both courts credited Grace for doing all that it could to provide actual notice to as many potential PD claimants as possible. 398 B.R. at 373-74; *see also* 1/26/06 Tr. at 76[13]; 7/5/07 Tr. at 59-61.

### 3.    AMH Also Fully Addressed the Timeliness of Its Class Certification Motion

As noted in Background Section III.C above, after lengthy debate at a 2002 hearing, the Bankruptcy Court *"ordered* a motion to certify the class to be filed." 389 B.R. at 377 n.10 (emphasis added). Yet AMH ignored this order and waited more than two years after the March 2003 Bar Date before filing its motion to certify a class.

AMH's contention that it was somehow prevented by an Eleventh Circuit case, *In re Charter Co.*, 876 F.2d. 866, 874-75 (11th Cir. 1989), from filing a certification motion until Grace objected to AMH's class proofs of claim (Motion at 14, 19 n.13) is clearly wrong. The Bankruptcy Court *ordered* AMH to file a timely certification motion in 2002, long before any

---

[13]    THE COURT: "The debtor wanted to get counsel to say who you had notified . . . or to get addresses so that the debtor could give actual notice. And the fact that the debtor's stymied in that effort because the Committee got an order, . . . means that the debtor's done everything it could do."

claim objection process had begun.  This was a proper exercise of the Court's management of its

own docket,[14] especially since Rule 23 does not prescribe any timing requirement for a class

certification motion in a bankruptcy case.  As the Bankruptcy Court later stated,

> The court is clearly able to set forth a process by which to adjudicate disputed
> issues and did so in this case.  Therefore, even if Grace had not filed an objection
> to [the] claim, this court, in controlling its docket and attempting to orchestrate an
> orderly process, ordered such a motion to be filed if anyone intended to file a
> class proof of claim.

389 B.R. at 377 n.10.  Moreover, the Bankruptcy Court ordered AMH to timely seek certification

for the additional, sound reason of "obviat[ing] the need to examine whether a class was certified

in state court." *Id.*

### B.    The So-Called "Subsequent Developments" Do Not Justify Re-Opening Class Certification

All of the nine "developments" cited by AMH took place long ago, most of them in 2008

or 2009.  AMH has failed to explain why it never raised any of these grounds for reconsideration

with Judge Fitzgerald—but instead waited six years, and until after this Court was appointed to

succeed Judge Fitzgerald, before seeking reconsideration.

### 1.    There Was No "Admission" in Grace's 2008 Brief

AMH incorrectly asserts that Grace admitted in a 2008 brief that "class certification is not

limited to claimants who filed individual proofs of claim." (Motion at 19)  Just the opposite:

Grace stated that the Seventh Circuit case relied on by AMH, *In re American Reserve Corp.*, 840

F.2d 487 (7th Cir. 1988), "held that a bankruptcy court may allow class proofs of claim (a

holding never adopted the the Third Circuit), but did ***not*** hold that such a class may include

---

[14]  11 U.S.C. § 105 "authorizes the bankruptcy court to 'issue any order . . . that is necessary or appropriate to carry
out the provisions of Title 11," *In re Continental Airlines Inc.*, 1995 WL 704783, *3 (D. Del. Oct. 19, 1995),
and "the court's equitable powers under [this section] 'surely enable it to control its own docket,'" *In re Am.
Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012). *See generally SEC v. Infinity Grp. Co.*, 212 F.3d 180,
197 (3d Cir. 2000).

claims that could have been filed by the Bar Date but were not." (Dist. Ct. Dkt. 13 at 11,

emphasis added) Grace's brief also recited the holding of *Interregional* (as AMH noted), but

distinguished that opinion (which AMH failed to mention). (*Id.*) After considering *American*

*Reserve, Interregional*, and AMH's and Grace's respective arguments about those cases, the

District Court denied AMH's motion for reconsideration. 398 B.R. at 378-81.

### 2.    Appointment of a PD Future Claimants' Representative Does Not Bolster AMH's Class Claims

AMH argues that the 2008 appointment of a future claimants' representative for property

damage ("PD FCR") (Dkt. 19818) justifies re-opening its class motion some six years later.

(Motion at 20) Although AMH's argument on this point is difficult to follow, apparently AMH

contends that by appointing the PD FCR, Judge Fitzgerald recognized "for the first time" that

unasserted future claims may exist, reversing her purported prior "reject[ion of] the existence of

future demands." (*Id.* at 20-21) But Judge Fitzgerald never rejected the existence of future

Asbestos PD demands; she simply mentioned at a hearing that, in another chapter 11 case, she

had objected to the use of the *term* "demands"—a word that 11 U.S.C. § 524(g)(5) defines

(confusingly, and somewhat circularly) as including both "a demand for payment, present or

future." (7/5/07 Tr. at 110)

Far from justifying class certification, the appointment of the PD FCR affirms why class

certification is not necessary. The PD FCR was appointed in the Grace chapter 11—just as such

a representative is appointed in all section 524(g) cases—to satisfy the statutory requirement to

have a representative to protect the due process interests of possible future claimants. *See In re*

*Grossman's, Inc.*, 607 F.3d 114, 127 (3d Cir. 2010). Indeed, the Third Circuit has recognized

that 11 U.S.C. § 524(g)(4)(B)(I)'s requirement of appointment of a future claimants'

representative is one of the "many" requirements in § 524(g) that is "specifically tailored to

protect the due process rights of future claimants." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n.45 (3d Cir. 2005). As the District Court recognized, Judge Sanders, the PD FCR, ably represented the interests of future claimants, and "testified to the unquestionable benefits afforded to future property damage claimants under Grace's Joint Plan in comparison to pursuing their claims outside the context of the trust." 475 B.R. at 101 n.59 (citations omitted). Because the PD FCR was in place, a class is not needed to protect the interests of individuals or entities who have not yet filed PD claims.

### 3.    ZAI Class Certification Is Immaterial

Cryptically, AMH asserts that Judge Fitzgerald's certification of a class of ZAI claimants "disposes of Grace's other objections to AMH's certification." (Motion at 21)  While this assertion is not explained, apparently AMH feels that it was unfair that a ZAI settlement class was certified while the putative AMH class was denied. (*Id.*)  AMH provides no explanation why this distinction justifies re-opening AMH class issues six years after the AMH certification denial and five years after the ZAI certification approval.  In any event, the U.S. ZAI class was certified as a settlement class and as part of the Plan's equal treatment of present and future U.S. ZAI PD claims in Class 7B.  An AMH class would serve no such purpose.

### 4.    The ZAI Bar Date Order Is Likewise Immaterial

AMH incorrectly asserts that, in contrast to ZAI claimants, traditional Class 7A PD Claimants may not participate in the PD Trust unless they filed individual Bar Date claims. (Motion at 22)  In fact, traditional PD Claimants may file post-Effective Date claims, which are channeled to the PD Trust and litigated in this Court subject to the Class 7A CMO. (Plan §§ 3.1.7, 7.31; Class 7A CMO, Section II)  In any event, any differential Plan treatment of ZAI PD claimants and traditional PD claimants raises Plan confirmation issues relating to whether these two groups of claims were properly classified separately and whether there was unfair

discrimination. *See* 11 U.S.C. §§ 1122(a) & 1123(a)(4).  It is too late now to lodge a belated

Plan objection in the guise of a motion to reopen a six-year-old order denying class certification.

### 5.    Grace's Expert Never Quantified or Estimated Future PD Claims

AMH falsely asserts that, in 2009, Grace confirmation expert Dr. Denise Martin offered a

"substantial estimate"—potentially as high as 464,000 PD claims—that was "astronomically

greater" than the universe of property damage claims identified by Grace during the class

certification proceedings.  (Motion at 22-23)  In fact, Dr. Martin provided no estimate

whatsoever.  To satisfy the statutory requirement of 11 U.S.C. § 524(g)(2)(B)(ii)(I) & (II)—

which requires the debtor to show that it will be subject to substantial future asbestos demands,

but that the amount, number and timing of such future demands are indeterminate—Dr. Martin

opined that it is probable that future asbestos PD demands in fact would be asserted against

Grace.  446 B.R. at 144; (10/13/09 Conf. Hrg. Tr. at 217-225) (Dkt. 23619)  Dr. Martin did not

opine whether such claims would be meritorious, nor did she quantify or estimate the number or

value of such future claims—just that they *would* be asserted in an indeterminate number.

Indeed, she opined that forecasting the number of future PD claims would involve great

uncertainty, given that "[w]e don't know with certainty the amount of the product sold, how

much product was used per building, the number of buildings that would have been affected,

[and] how many of those buildings have subsequently had the product removed." (*Id.* at 223)

Far from being estimates, the figures of 140,000 buildings and 324,000 construction

projects were merely mentioned in Dr. Martin's report as historical background.  (Dkt. 21033 at

6)  Moreover, the 140,000 figure simply referred to an assumption in a McGraw-Hill publication

describing the possible total number of U.S. steel-frame building projects from 1959 to 1973 (not

Grace-specific projects).  The 324,000 figure was a calculation based on additional assumptions

for the total number of U.S. projects in which acoustical plaster and textured coatings may have been used from 1940 through 1973—again, *not* projects specifically involving Grace. (*Id.* at 7)

### 6.    Grace's Sales Database Raises No Issues

AMH also offers as a so-called "subsequent development" the deposition testimony of Grace in-house counsel, during plan confirmation discovery in 2009, that "Grace maintained a searchable data base of its historical sales of asbestos products." (Motion at 24) To the extent this database contained anything significant, beyond the boxes of copies of Grace sales records that AMH counsel had already obtained,[15] AMH had every opportunity during class discovery to pursue access to this database but failed to do so. During class discovery, AMH deposed Grace's records custodian who testified about Grace's computerized indices to its document depositories in multiple locations, but AMH failed to ask Grace's custodian whether the indices included or Grace otherwise maintained a searchable historical sales database. (Ex. 9, 2/23/07 Sprinkle dep. at 32-33) AMH's decision not to inquire into what it now characterizes—for the first time, some seven years later—as a key database cannot be charged against Grace.

### 7.    *Grossman's* and *Wright* Provide No Basis for Re-opening Class Certification

The Third Circuit's decisions in *Grossman's*, 607 F.3d 114 (3d Cir. 2010), and *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012), also do not warrant reconsideration.[16] Setting aside that AMH never sought reconsideration of the denial of class certification in the four years since *Grossman's* was decided or two years since *Wright* was decided, AMH's arguments lack

---

[15]    As discussed in Background Section II.C above, in 2003 AMH's counsel S&R attached lists of some 3,000 buildings to its class POCs as putative claimants in its worldwide "class" and dozens of South Carolina buildings as putative claimants in its statewide "class." (Claim Nos. 9911 and 9914) (Dkt. 19987)

[16]    *Grossman's* held that an individual has a "claim" for purposes of section 101(5) of the Bankruptcy Code when the individual "is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." 607 F.3d at 125. *Wright* extended this definition of "claim" to include post-petition but pre-confirmation exposure. 679 F.3d at 109.

merit. The Third Circuit squarely rejected the same AMH arguments in connection with Plan

appeals. Moreover, any hypothetical due process inquiry under *Grossman's* or *Wright* is already

addressed by Grace's confirmed Plan and would be highly individualistic and not susceptible to

class determination. Thus, these cases do not affect the Bankruptcy Court's reasoning in denying

certification.

    *First,* the Third Circuit has already considered and rejected the arguments raised again

now by AMH. Specifically, on the confirmation appeals of objectors Canada and Montana, the

Third Circuit held that *Wright* "is inapposite" to the question of whether certain asbestos claims

against Grace can be discharged; unlike the plan at issue in *Wright,* Grace's Plan has a section

524(g) trust and channeling injunction, and so the due process concern in *Wright* "that claimants

would lose any opportunity for relief without first receiving proper notice" is not implicated. *In

re W. R. Grace (Canada/Montana),* 729 F.3d 311, 321, 323 (3d Cir. 2013). The Third Circuit

also rejected AMH's argument that certain Grace PD claims would not be channeled to the PD

Trust, and held that under a section 524(g) plan, "present and future claims can be channeled to a

§ 524(g) trust without violating due process."[17] Moreover, the appellate court explicitly rejected

AMH's additional argument here that "the holders of 'Gap Claims' are subject to a gross

inequity" (Motion at 29), because AMH, a present claimant who received full due process, lacks

standing to raise this argument. *Grace (AMH),* 729 F.3d 332, 340 n.5 (citing *In re PWS Holding

Corp.,* 228 F.3d 224, 248 (3d Cir. 2000)).[18]

---

[17]   *Compare* Motion at 28-29 ("[a]bsent certification" Grace must re-notice the Bar Date Orders "or face an untold
number" of undischarged claims), *with* 729 F.3d at 349 n.14 ("Because under AMH's reading of *Grossman's,*
property owners who have a Grace asbestos product in their property but whose state law claims have not yet
accrued are claim holders whose cases cannot be channeled to the PD trust, AMH believes that the Plan will be
threatened by the need to make non-trust payments it has not provided for. . . . *We have rejected this
reasoning.*" (emphasis added)).

[18]   The same standing principles apply to class action proceedings. *See Gentry v. Siegel,* 668 F.3d 83, 95 (4th Cir.
2012) ("As to the Named Claimants' contention that the notice procedures violated the due process rights of the

*Second,* AMH's colorful assertion that a "multitude" of "thousands" of undischarged "Gap Claims" now exist as a result of *Grossman's* and *Wright* (Motion at 32, 28) is speculative and unsupported. No such claims have been filed in the almost four months since Grace's Plan went effective or the four years since *Grossman's.* Nor has AMH presented any evidence that such claims exist, notwithstanding that S&R purported, early in Grace's chapter 11 case, to represent thousands of building owners. It may well be that some number of so-called "gap" claims will be asserted at some later date by claimants challenging whether their claim was properly discharged. But the consummated Plan properly addresses such claims. As discussed, the Plan provides that any such claims will properly be channeled to the section 524(g) trust and may be properly discharged or litigated (depending on the facts of the case). And in any event, such claims would not be susceptible to class determination because whether or not these individual claims were discharged is a case-by-case, fact-specific and multi-step inquiry:

- **Step No. 1.** The first step in determining whether a PD Claim that is filed after the Bar Date is discharged is to examine whether the individual had a claim under *Frenville. See In re New Century TRS Holdings, Inc.,* 2013 WL 5231456, *4 (Bankr. D. Del. Sept. 17, 2013) (KJC) (examining when claim accrued). If the individual had a claim under *Frenville,* then *Grossman's* did not impact the timing of accrual, and the claim is discharged for failure to file a POC by the Bar Date. *Id.* The determination of whether the individual had a claim under *Frenville* requires a complex choice-of-law analysis and an even more complex examination of state law accrual principles. *See id.* at *3-6.

- **Step No. 2.** Then, if the claimant did not have a claim under *Frenville* but would have a claim under *Wright* (asbestos exposure pre-confirmation), discharge depends on whether the claimant's property was "exposed" (a) pre-*petition,* or (b) post-petition but pre-*confirmation. Wright,* 679 F.3d at 109.

- **Step No. 3.** Finally, if the claim was discharged under Step 1 or 2, the court would proceed to an excusable neglect inquiry, which itself involves four individualized factors. *In re New Century TRS Holdings, Inc.,* 465 B.R. 38, 50-51(Bankr. D. Del. 2012) (KJC), citing *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380 (1993).

---

unnamed class members, . . . we conclude that the Named Claimants do not have standing to assert the due process rights of others who are not parties.").

Such a detailed, factually intensive inquiry is unsuited to class actions. Instead, it must be conducted on a claim-by-claim basis—precisely what the Grace Plan's Class 7A CMO provides.

*Third*, *Grossman's* and *Wright* do not affect Judge Fitzgerald's determination that AMH's class fails to meet Rule 23's numerosity requirement, because at the time of the Bankruptcy Court's decision, AMH's putative class was not defined by or limited to the existence of accrued *Frenville* claims. In 2005, AMH sought certification of a class of "property owners whose buildings *were, are or will be* contaminated with asbestos fibers . . . for which the Debtors are legally responsible." *See* 389 B.R. at 374 (emphasis added). This broad and forward-looking definition encompasses any ostensible "Gap Claims" that AMH contends were created by *Grossman's* and *Wright*. Even with such a broad proposed class, the Bankruptcy and District Courts found that the numerosity requirement was not satisfied. *Id.* at 377; 2008 WL 4234339 at *2.

*Fourth*, the Bankruptcy Court also denied certification on the alternative and independent ground that Rule 23(b)'s superiority and predominance requirements had not been satisfied, in large part because individual issues—such as existence of asbestos in a claimant's property and statute of limitations—predominated and made a class mechanism inferior. 389 B.R. at 380. *Grossman's* and *Wright* do not affect this determination in any respect.

### 8. The *State of California* Decision Does Not Warrant Re-Opening Class Certification

AMH contends that the District Court's 2009 decision in *State of California v. W. R. Grace*, 418 B.R. 511 (D. Del. 2009), is a "subsequent development"—albeit one that occurred five years ago—that merits reconsideration. (Motion at 25) Again AMH is wrong.

In *State of California*, the Bankruptcy Court originally held that California's property damage claims were time-barred because the state had made similar claims for different

buildings in 1990 and therefore knew of or should have discovered the alleged asbestos claims

for the buildings at issue. 397 B.R. 701, 702-03, 708-10 (Bankr. D. Del. 2008). The District

Court reversed, holding that under California law, the cause of action does not accrue until

"actual" contamination occurs. 418 B.R. at 517, 525, 529.

This ruling is irrelevant to class certification, however, because for purposes of its

certification decision, the Bankruptcy Court *accepted* AMH's contention that the limitations

period for PD claims would not begin to run until there was actual injury or contamination, *see*

389 B.R. at 376 n.7—the very basis for the District Court's holding. The Bankruptcy Court

found that AMH's argument on this score actually weighed *against* class certification because

"for such a determination [of contamination], essentially a building by building analysis would

have to be made which weighs against a finding of common issues of fact." *Id.*; *accord*, 418

B.R. at 527 n.13, 532 (affirming need to examine history of each of 16 buildings).

Moreover, AMH's *State of California* argument simply parrots its flawed *Grossman's*

argument. For the same reasons, AMH does not have standing to raise the due process rights of

so-called unaccrued California claimants. *See* 729 F.3d at 340 n.5. And, as previously

discussed, there is no due process concern for these claimants because, assuming they have

viable claims, they would be channeled to the section 524(g) PD Trust. *See id.* at 349 n.14.

Moreover, the Bankruptcy and District Courts' opinions in *State of California*, which spent a

collective 33 pages analyzing accrual of California causes of action, merely underscore why the

*Grossman's* analysis is so highly individualistic. This same case-by-case and state-by-state

analysis would be needed for each building to determine the validity of each claim.

### 9.    The Cited Decisions From Other Circuits Do Not Help AMH

The Fourth and Fifth Circuit cases cited by AMH for the proposition that the Court must

issue a new PD Bar Date Order and Notice unless a class is certified (Motion at 30, citing *Gentry*

*v. Siegel,* 668 F.3d 83 (4th Cir. 2012); *In re TWL Corp.,* 712 F.3d 886 (5th Cir. 2013)) are not

binding in this circuit and, at most, merely follow the Seventh Circuit's 25-year-old holding in

*American Reserve,* 840 F.2d at 493-94, that a bankruptcy court has discretion to allow a class

proof of claim—which, as discussed above, is inapposite given the facts here.

In *TWL,* the Fifth Circuit held that the bankruptcy court in a chapter 7 case failed to

explain with sufficient particularity its reasons for denying class certification and remanded the

case for more specific reasoning. 712 F.3d at 893. Nothing in the case suggested that a bar date

must be re-noticed 11 years after the fact and after a plan has been confirmed and substantially

consummated. *See id.* at 899-900. In *Gentry,* contrary to AMH's contention, the Fourth Circuit

actually ***affirmed*** the bankruptcy court's denial of the plaintiffs' Rule 9014 motion to apply class

action procedures to the case and did not require re-noticing. 668 F.3d at 85, 91. The court

further held that the named claimants (who filed individual proofs of claims) did not have

standing to raise due process arguments about the adequacy of the notice on behalf of the

unnamed class members. *Id.* at 94-95.

## IV.    AMH IS NOT ENTITLED TO DISCOVERY

AMH's request for discovery—made with the aspiration and hope that such discovery

***might*** reveal some unforeseen basis for class certification that years of prior discovery and

litigation failed to establish—gets the process precisely backwards. A party seeking to

reconsider a thoroughly litigated, well-reasoned and very old decision of this Court must first

come forward with ***some basis*** for reconsideration, rather than saying, in effect: "I need

discovery because I have no basis, but I sure hope that discovery may turn something up."

In *Gutierrez v. Johnson & Johnson,* 2008 WL 2945987 (D.N.J. July 30, 2008), after

several years of discovery, the district court denied plaintiffs' first and renewed motions for class

certification, and the Third Circuit dismissed plaintiffs' appeal as untimely. The district court

then denied plaintiffs' request for additional discovery, stating: "Plaintiffs are basically seeking another fishing expedition . . . after Plaintiffs have had over five years of class discovery and have lost their motion for class certification." *Id.* at *3. The court elaborated: "Plaintiffs assert that they are entitled to class discovery because the Third Circuit, while denying their appeal for untimeliness, suggested that Plaintiffs may, at any time before final judgment, seek to alter or amend class certification orders." *Id.* at *4. But "Plaintiffs confuse a right to file a renewed motion for class certification with a right to class discovery. Rule 23 does not convey a right to class discovery." *Id.*

New discovery is especially improper where, as here, the movant already had four years of class discovery, hearings, briefing and appeals, and thorough appeals of its Plan objections. Having repeatedly failed to make a *prima facie* showing that it has satisfied the elements of Rule 23 and having failed to identify any factual basis for revisiting the Bankruptcy Court's denial of certification, AMH should not be granted the extraordinary right to conduct additional certification discovery. *See Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *Gentry*, 668 F.3d at 93-94 (rejecting plaintiffs' argument that bankruptcy court should have allowed discovery before deciding certification; in bankruptcy context, "extensive discovery related to class certification is not necessary," particularly where court concluded class action process "would be more cumbersome and expensive than the bankruptcy process").

## CONCLUSION

More than ten years after the Bar Date, six years after the Bankruptcy Court denied certification of an AMH class, four years after the Third Circuit's *Grossman's* opinion and after years of a Plan confirmation process that culminated in denial of all appeals and Grace's emergence, AMH seeks to re-open heavily litigated class certification and bar date issues and thereby unwind the Plan's property damage procedures. AMH has provided no justification for

such an extraordinary result, and has not shown why its available remedy—appeal of its entire

dispute, including class issues—is inadequate.  Accordingly, AMH's Motion should be denied.

Dated:  May 29, 2014

KIRKLAND & ELLIS LLP
John Donley, P.C.
Adam C. Paul
Lisa G. Esayian
300 N. LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

And

PACHULSKI STANG ZIEHL & JONES  LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

And

THE LAW OFFICES OF ROGER HIGGINS
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Telephone:  (312) 666-0431

*Co-Counsel for the Reorganized Debtors*

# APPENDIX A

## W. R. Grace Bar Date Notice Definition of "Asbestos Property Damage Claims"
### (Dkt. 1926, Ex. 1 to Ex. B)

"Asbestos Property Damage Claims are claims as of the time immediately preceding the Bar Date that relate, for example, to the cost of removal, diminution of property value or economic loss caused by asbestos in products manufactured by the Debtors or from vermiculite mined, milled, or processed by the Debtors.  More specifically, Asbestos Property Damage Claims are those claims against, or any debt, obligation or liability of, one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by asbestos in products or materials, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors, or from vermiculite mined, milled or processed by the Debtors and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages."

## APPENDIX B

## W. R. Grace Bar Date Notice Definition of "Claim"
### (Dkt. 1926, Ex. 1 to Ex. B)

Under Section 101(5) of the Bankruptcy Code and as used in this notice, the word "claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. Because of this broad definition, acts or omissions of the Debtors that occurred before the Debtors filed their Chapter 11 cases on April 2, 2001 may give rise to claims against them notwithstanding that such claims may not have matured or become fixed or liquidated prior to such date. Therefore, any creditor having a claim against the Debtors, no matter how remote or contingent, must file a proof of claim before the Bar Date.