IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DECLARATION OF KRISTY L. BERGLAND IN SUPPORT OF ZAI CLASS COUNSEL'S OPPOSITION TO MOTION OF LUKINS & ANNIS, P.S. FOR AN ALLOCATION OF THE ZAI CLASS ACTION COMMON FUND FEE AWARD**

I, Kristy L. Bergland, hereby declare as follows:

1. I am presently the Lead Paralegal at The Scott Law Group, P.S. and have worked at that firm since it was established in late 2004. I supervise a staff of paralegals that perform work for the four attorneys who presently work at The Scott Law Group.

2. Prior to working for The Scott Law Group, I was a Litigation Paralegal at Lukins & Annis, P.S. for more than 13 years. I was first employed at Lukins & Annis from February of 1986 until November of 1992, chiefly working for Lukins & Annis' founder and namesake, Gene Annis. I returned to Lukins & Annis in April of 1998, after being contacted by the firm's president at the time, Gene Annis, who indicated they needed a lead paralegal to work for the class action practice group. I left Lukins & Annis effective December 15, 2004 and accompanied Darrell Scott to the newly established firm, The Scott Law Group.

3. Among my job responsibilities at Lukins & Annis was to write databases customized for complex litigation cases, primarily class actions. The databases, among

DECLARATION OF KRISTY L. BERGLAND:   1

other things, enabled the firm to keep track of thousands of class members and manage a multitude of documents.

4. After I gave notice to Lukins & Annis that I would be leaving the firm effective December 15, 2004, Lukins & Annis requested that I prepare materials for the firm's President, Terry Whitten and the firm's Administrator, Frank Neeri, detailing the various cases on which Darrell Scott and I had been working. I prepared and provided to the firm all the information they requested. This included preparation of a chart explaining the Grace related matters, a copy of which was attached as Exhibit E to the Declaration of Darrell W. Scott filed previously in this matter ("Scott Declaration"). During this period, I was also involved in and had conversations with Terry Whitten and Lukins & Annis' in-house "Compliance" Attorney, Erika Balazs, regarding preparation of Lukins & Annis' Notices of Withdrawal and Substitutions of Counsel with regard to various matters, including all Grace-related matters, and preparation of letters from Lukins & Annis to its many Grace clients. Lukins & Annis was consulting with me on these matters because I wrote the databases containing the pertinent client information, including contact information, relevant to Lukins & Annis' Grace clients; I knew how to run database queries to easily ascertain the identity of Lukins & Annis' various clients; and I was adept at generating client letters using the Lukins & Annis database.

5. The Scott Law Group began operation on Thursday, December 16, 2004. Lukins & Annis, at that time, had not yet finalized its letter to its clients, nor had it finalized its Notices of Withdrawal and Substitution of Counsel.

6. Following my departure, Lukins & Annis contacted me at The Scott Law Group and requested that I return to Lukins & Annis and assist them in sending client

DECLARATION OF KRISTY L. BERGLAND: 2

letters in two matters in which Lukins & Annis had determined to withdraw: Metropolitan Mortgage (a securities fraud mass tort matter involving roughly three-hundred Lukins & Annis clients) and all Grace related matters (totaling 303 Lukins & Annis clients). Lukins & Annis made the request because I was the person who knew how to run the appropriate queries using Lukins & Annis' database and knew how to merge the client contact data (using Microsoft Access) into Lukins & Annis' letterhead (using Microsoft Word). I was also the person most familiar with the cases and knew how to appropriately caption the necessary pleadings for Lukins & Annis to file notices of withdrawal.

7. I requested and received approval from Darrell Scott to return to Lukins & Annis to help Lukins & Annis with these projects.

8. I arrived at Lukins & Annis on December 22, 2004. I was told that I needed to wait at the receptionist desk until someone from Administration arrived to escort me to my former office and to then monitor my activities while at Lukins & Annis. I was advised that I also needed to be escorted should I have reason to leave my former office.

9. Lukins & Annis' client letters and Notices of Withdrawal and Substitution being prepared on that day were all being reviewed by Lukins & Annis in-house "Compliance" attorney, Erika Balazs, as well as by the firm's President, Terry Whitten, who was consulting with Erika Balazs on transition matters.

10. Lukins & Annis provided me with a draft letter to its ZAI clients and asked that I prepare a mail-merge-ready version that could be used to generate multiple letters from its database. It is my recollection that Terry Whitten had prepared the draft

DECLARATION OF KRISTY L. BERGLAND:   3

of the letter that I was given. My recollection is confirmed by the draft letter I was given on that day, dated December 22, 2004, which was an auto date code. In that regard, I have kept all these years the draft ZAI letter that Lukins & Annis provided to me to generate Lukins & Annis' client letter. I did so, in large part because of the distrust I experienced upon my arrival at Lukins & Annis on December 22. I didn't want to be blamed for anything, so I kept a folder of the rough drafts of documents I was working on. A copy of the draft letter Lukins & Annis provided to me was attached as Exhibit H to the Scott Declaration.

11. Exhibit H shows that the draft letter I was given was prepared using Terry Whitten's personal letterhead with his contact information. I did not have access to Terry Whitten's personal letterhead. His personal letterhead would only have been available to someone at Lukins & Annis. The initials at the bottom of Exhibit H are TRW:lji. This denotation reflects Lukins & Annis' protocol for identifying the attorney who wrote the letter and the secretary or paralegal who typed the letter and saved it onto Lukins & Annis server. The TRW:lji designation indicates that Terry Whitten prepared the draft letter and his personal secretary, Jeanne Issacson, typed the draft letter.

12. In the lower left corner of Lukin & Annis' draft ZAI letter (Exhibit H) is the following code:

\\SPOKANE1\VOL2\15DOC\LEB5UI-TRW-MET LETTER.DOC.
This designation also reflects Lukins & Annis' standardized protocol for naming and saving electronic documents. Based on my knowledge of Lukins & Annis' practices in generating documents, this naming designation indicates to me that Lukins & Annis prepared its draft ZAI client letter using as a template a previously drafted Lukins &

DECLARATION OF KRISTY L. BERGLAND:   4

Annis client letter to be sent out to the Lukins & Annis Metropolitan clients, which had been previously saved on Lukins & Annis' server at Spokane\\VOL\15DOC. "15DOC" is the location for saving electronic documents prepared on the 15th floor of Lukins & Annis. Terry Whitten's office and his secretary's workspace were located on the 15th floor.

13.   At the top of Exhibit H is handwriting: "Terry – ZAI Proposed Ltr. OK to Merge?" This is my handwriting. I made this notation and gave the draft letter to Terry to insure that the letter had his approval. The handwritten revisions to the letter are not my handwriting. I assumed that the revisions were made by Terry Whitten because I sent the draft to Terry Whitten for his review and approval. I am now told that these revisions are not Terry Whitten's handwriting and that he does not use cursive. The only other attorney that I am aware of involved that day in finalizing the Lukins & Annis letter was Erika Balazs. Based on other pleadings I have now had opportunity to review bearing the same handwriting, I believe the changes were made by Lukins & Annis attorney Erika Balazs, who was working directly with Terry Whitten on this matter. The reason there are two "Oks" in my handwriting on the draft letter is because I sought approval of both Erika Balazs and Terry Whitten, the two attorneys who were working directly with me on all transition cases.

14.   In all events, someone at Lukins & Annis made these handwritten revisions and I received the approval of both Terry Whitten and Erica Balazs to prepare a mail-merge-ready letter for Lukins & Annis using that draft letter and including the handwritten changes Lukins & Annis had made. Exhibit I, attached to the Scott Declaration, is the mail-merge-ready version of the ZAI client letter that I prepared on

DECLARATION OF KRISTY L. BERGLAND:   5

December 22, at Lukins & Annis' direction, as approved by Terry Whitten and Erica Balazs, and which I used on that day to generate letters for Lukins & Annis to send to their many Grace clients. It is my recollection that Lukins & Annis' letters to its clients were mailed by Lukins & Annis on that same that day.

15. I was also asked by Lukins & Annis to prepare for Lukins & Annis Notices of Withdrawal and Substitution as to all of its Grace cases. In that regard, Lukins & Annis had at the time a form bank of pleadings that Lukins & Annis used for standard pleadings, a form bank which I had helped to create while at Lukins & Annis. In preparing Notices of Withdrawal and Substitutions of Counsel that Lukins & Annis requested, I utilized Lukins & Annis' standard form Notices of Withdrawal and Substitution of Counsel as found in Lukins & Annis' form bank. As I recall, drafts of the Notices of Withdrawal and Substitution that I prepared were left with Erika Balazs and/or Terry Whitten.

16. Upon returning to The Scott Law Group on December 22, 2004 (located 2 blocks from Lukins & Annis), I recorded my time sheet, as I always do, at the end of the day. My time sheet for that day reflects a total of nine hours of work, seven (7.0) hours of which were spent at Lukins & Annis, at Lukins & Annis request, performing work for Lukins & Annis, including generation of Lukins & Annis' withdrawal letters to its Grace clients.

17. Following my departure from Lukins & Annis, numerous U.S. ZAI claimants formally retained The Scott Law Group to represent their interests in Grace's bankruptcy through execution of a retainer agreement. In total 554 U.S. ZAI claimants executed retainer agreements with The Scott Law Group. Of that number, 239 are

individuals to whom Lukins & Annis' sent the above-referenced letter of withdrawal. Lukins & Annis sent its withdrawal letter to 271 ZAI clients. Of Lukins & Annis' 271 ZAI clients, 32 clients did not retain the Scott Law Group.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: June 2, 2014

KRISTY L. BERGLAND

DECLARATION OF KRISTY L. BERGLAND: 7