

**RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC**

EDWARD J. WESTBROOK
843.727.6513   Direct
843.727.6688   Fax
ewestbrook@rpwb.com

Jena L. Borden (IL & MO only)
James C. Bradley
Michael J. Brickman
Nina Fields Britt
Elizabeth Middleton Burke
J. David Butler
Aaron R. Dias
D. Charles Dukes
Jerry Hudson Evans
H. Blair Hahn
Daniel S. Haltiwanger
Gregory A. Lofstead
Christiaan A. Marcum
Katie McElvean
Christopher J. Moore
Karl E. Novak
Misty Black O'Neal
Christina C. Ormand
Kimberly Keevers Palmer
Charles W. Patrick, Jr.
Terry E. Richardson, Jr.
Thomas D. Rogers
A. Heyt Rowell, III
Brady R. Thomas
T. Christopher Tuck
James L. Ward, Jr.
Edward J. Westbrook
Kenneth J. Wilson
Robert S. Wood

Of Counsel:
Gordon C. Rhea (CA, DC & USVI only)
David L. Sugge (MN & NY only)

May 28, 2014

**Via Email**
Hon. Judith K. Fitzgerald
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA  15222

Re:   Zonolite Attic Insulation

Dear Judge Fitzgerald:

Following up on my explanation as to why Ness Motley was entitled to 10% of my class counsel fee for its efforts in fostering the critical settlement negotiations, I thought it helpful to point out that this information was previously provided to the Court (although Ness Motley was not identified for confidentiality reasons), in my Declaration in Support of the Class' Motion for Preliminary Approval of the Settlement. (Dkt. 20276). I attach Paragraph 7 of that Declaration which speaks of being contacted by "a representative of the personal injury interests" who was in fact, Mr. Rice of Ness Motley.

Likewise, in our Class Counsels' Motion for Common Fund Fee Award, we also generically identified Mr. Rice's involvement. (Dkt. 31718). I attach Page 7 of the motion which discusses Ness Motley's involvement.

Sincerely,

Edward J. Westbrook

EJW/kaj
Attachments
cc:   Counsel (via email)

6. During the years of bankruptcy, I and my co-counsel participated in various formal attempts at jumpstarting a comprehensive bankruptcy settlement, including mediation before Judge Pointer and discussions with the personal injury claimants on their potential plan of reorganization for Grace. At one point, we reached agreement with the PI claimants to share on a percentage basis in their recovery should their plan become effective. For various reasons, that plan did not advance to confirmation. Nevertheless, contacts with Grace continued sporadically throughout this time.



7. In the summer of 2008, I was contacted by a representative of the personal injury interests (which by that time had resolved their issues with Grace and were Plan proponents). Through a series of discussions, meetings were arranged with representatives of Grace's Equity Committee, at which further exploratory talks took place concerning the possibility of resolving ZAI and terminating the many years of litigation that both sides recognized lay ahead in the bankruptcy court, district court and appellate courts should there be no settlement. These meetings and follow-up calls eventually led to further preliminary meetings with additional Grace representatives, including those at the highest levels of the company. For the first time after years of on and off negotiations, it appeared that the parties thought they might come close enough on their respective views of ZAI that a potential settlement was conceivable, although not yet achievable. Further meetings attended by representatives of the personal injury constituency, personal injury Futures Representative, Grace corporate representatives and Grace inside and outside counsel produced additional progress. Grace accepted in principle the concept that a ZAI facility could be a vehicle to resolve the claims. We accepted in principle the fact that Grace's financial status would not permit it to pay a lump sum on confirmation that we would otherwise require for a reasonable settlement in our professional judgment. Accordingly, the parties worked creatively toward the resolution ultimately embodied in the Class Settlement Agreement consisting of a claims facility and staggered funding, with some of the funding depending on the pace at which claims are filed.

8. Although the parties made conceptual progress, we realized that for a ZAI facility to be truly effective, it must address the needs of future ZAI claimants and that we would need a Futures Representative. After some discussion with co-counsel, traditional property damage counsel, the property damage committee and others, the parties unanimously agreed upon the Honorable Alexander M. Sanders as Futures Representative and Judge Sanders acquired counsel.

9. Once Judge Sanders and his counsel were in place, negotiations resumed with them at the table. The Futures Representative and his counsel brought valuable insight and made valuable suggestions that improved the conceptual resolution we had been discussing with Grace. After much more negotiation and exchanges of numerous ideas, comments, drafts and counterdrafts, we and the Futures Representative agreed on November 21, 2008 to an Agreement in Principle to be followed by a Class Settlement Agreement. As set forth in the Class Motion for

recognition of ZAI Class claims. In March 2008, ZAI Class counsel filed their motion asking that the Court recognize the *Barbanti* statewide class certification in this bankruptcy. Grace vigorously opposed the motion during argument in July 2008.



While this and other ZAI matters were under consideration in the summer of 2008, ZAI Class counsel were contacted confidentially by a representative of the PI Claimants' interests and asked whether ZAI Class counsel would agree to a direct meeting with Grace's owners – The Equity Committee. At a series of highly confidential meetings, initially involving Equity Committee representatives and then others, exploratory talks proceeded concerning the possibility of resolving ZAI and avoiding the many years of litigation that both sides recognized lay ahead without a settlement. These meetings and follow-up communications eventually led to further preliminary meetings with additional Grace representatives, including those at the highest levels of the company.

For the first time after years of on-and-off negotiations, it appeared that the parties might come close enough on their respective views of ZAI that a potential settlement was conceivable. Further meetings attended by representatives of the PI constituency, PI Futures Representative, Grace corporate representatives, and Grace inside and outside counsel produced additional progress. After much discussion, Grace accepted in principle the concept that a ZAI facility could be a vehicle to resolve the claims. ZAI Class counsel accepted in principle the fact that Grace would not agree to pay a lump sum on confirmation that ZAI Class counsel would otherwise require as a reasonable settlement in their professional judgment. Accordingly, the parties worked toward the creative resolution ultimately embodied in the Class Settlement Agreement

Page 7