# EXHIBIT "A"

SUPPLEMENTAL DECLARATION OF DARRELL W. SCOTT



# The Scott Law Group P.S.

926 W. Sprague Avenue, Suite 583, Spokane, Washington, 99201
Phone: 509.455.3966; Fax: 509.455.3906; Toll-Free: 888.955.3966
Email: scottgroup@mac.com

Darrell W. Scott, Ph.D.
Admitted in Washington, Oregon and Idaho

September 15, 2005

Terence R. Whitten
Lukins & Annis, P.S.
717 W. Sprague Avenue, Suite 1600
Spokane, WA 99201-0460

*Re:    Allocation Issues*

Dear Terry:

The end of L&A's fiscal year is, I know, both busy and stressful. For that reason I was hopeful of postponing discussions regarding fee splitting until after September 30th. But I did not want to leave the impression that I was avoiding your recent correspondence, so I provide the following to assist in moving things along.

When we last met to discuss a potential fee-splitting agreement, I provided L&A with a proposal. L&A's most recent proposal, unfortunately, does not use the earlier proposal as a starting point and, perhaps understandably, is built on misapprehensions as to how fees and costs are obtained in class actions and common fund cases. Because a correct understanding as to how fees and costs actually come in is necessary to an agreement to split fees, it is instructive, I think, to reflect on that process.

L&A's fee-splitting proposal reflects L&A's internal fee and costs allocation preferences. But these preferences do not fit two important realities. First, the cases we are discussing are not matters where fees come in to one firm pursuant to a contingency fee agreement, presenting a question as to the allocation of those fees as between firms who worked on that case. These are common fund cases where fees, should they prove recoverable, will be awarded to individual law firms by order of a Court, based on work of each firm having directly and materially contributed to the creation of the common fund. These are not cases, in other words, where one law firm looks to other law firm for the recovery of its fees because the latter law firm has secured fees belonging to the former.

September 15, 2005
Page 2

Second, the common fund cases we are discussing involve multiple law firms, not just L&A and The Scott Law Group. Each of these firms will be attempting to establish the fact of, and the importance of, their common fund work in order to secure a portion of the fees the Court is prepared to award.

> As illustration, in the *Barbanti v. Grace* case, pending in Spokane Superior Court and presently subject to a section 362 bankruptcy stay, fees and costs will be awarded, if at all, based on fee petitions made to the court. Seven law firms have worked on this matter. Each would be involved in petitioning the court for its own fees and costs: Lieff, Cabraser, Heimann & Bernstein; Motley Rice (formerly Motley Loadholt Richardson, and Poole); Richardson, Patrick, Westbrook & Brickman; Cohen, Milstein, Hausfeld & Toll; McGarvery, Heberling, Sullivan & McGarvey; Lukins & Annis; and The Scott Law Group. There may be other firms, past and future, that ultimately claim entitlement to fees or reimbursement of costs, contending that the work they performed directly benefited the class that obtained recovery.

> If the *Barbanti v. Grace* matter is successful, a Court will award fee amounts to individual firms based on the Court's assessment as to whether, and to what degree, that firm's work actually contributed to the success of that litigation. Each firm will be expected to submit, explain, and defend its fee petition, as well as any request for payment of reimbursable costs. L&A would be expected to do so, as would The Scott Law Group. The Scott Law Group would not be seeking to recover L&A's fees or costs, absent some fee-splitting agreement that gave The Scott Law Group and L&A an incentive to obtain and maximize their fee and cost recovery through a joint petition or collaborative filing of individual petitions.

> If the *Barbanti v. Grace* matter does not result in recovery of a common fund from which the Court may award fees, then no firm will recover its fees or costs related to that matter and that will be the end of that story.

> The fee-splitting issue between our firms, therefore, is not "what portion of fees that may be recovered by The Scott Law Group is L&A entitled to?" L&A's interests in fees and costs in the various Grace matters will be reflected in the success or failure of its own fee petitions in various courts and in relation to various actions.

> The issue is whether or not a mutually agreeable fee-splitting agreement can be achieved that affords The Scott Law Group a meaningful incentive to advance L&A's interests in those settings and that avoids the prospect of the two firms competing against one another in a fee petition situation. Substantial risks are involved in securing recovery of fees and costs in common fund situations involving multiple firms, sometimes approaching the risks involved in recovering against the defendant in the first instance. The perils are heightened where the work performed by a law firm is dated or the firm has not maintained a leadership role in prosecuting the claim.

September 15, 2005
Page 3

This same scenario repeats itself for each of the contingent common fund cases in which L&A has been involved. In that connection, actions previously pursued by L&A against W.R. Grace include:

*Price v. Grace*: This is the lead ZAI class action. It was originally filed in federal court in Missoula, Montana, then subject to MDL transfer to Boston, Massachusetts, and presently subject to bankruptcy stay. The law firms directly involved in prosecuting this case are: Lieff, Cabraser, Heimann & Bernstein; Gilman & Pastor; Milberg Weiss Bershad Hynes & Lerach; Motley Rice; Richardson, Patrick, Westbrook & Brickman; Borrelli, Hutton & William; Seeger Weiss; McGarvey, Heberling, Sullivan & McGarvey; The Furth Firm; Kohn, Swift & Graf; Cohen, Milstein, Hausfeld & Toll; Barrett Law Offices; Cochrane & Bresnahan; Carr, Korein, Tillery, Kunin, Montroy, Cates, Katz & Glass; Hopkins & Goldenberg; L&A and The Scott Law Group.

*Dorrington v. W.R. Grace:* This is a state-based medical monitoring class action on behalf of residents of Lincoln County, Montana, pending in Helena, Montana, presently subject to bankruptcy stay. This action involves Lieff Cabraser, L&A, and The Scott Law Group. Other firms have now joined in this action as well, but their involvement has been incidental.

*Tennison v. Grace:* This is a federal class action, originally filed in Missoula and then transferred to an MDL court in New York, which seeks medical monitoring for residents of Libby Montana. The law firms involved are essentially those involved in *Barbanti*, although there are some differences.

*Grenfell v. Grace*: This is a federal class action pending in Missoula, Montana, for property damage seeking a clean-up of Libby, Montana. This action involved Ness Motley, Lieff Cabraser, McGarvey Heberling, L&A, and The Scott Law Group.

These two realities (That L&A's fees and costs will be obtained through its own fee petition, and that there are multiple firms who will be competing for the limited fees a court will be willing to award) form an inescapable framework within which any fee-splitting agreement must be discussed.

The fee-splitting proposal I provided L&A roughly a half-year ago accounts for these realities through an agreement that gives L&A and The Scott Law Group a mutual interest in one another's common fund fee petition and as against other competing interests. L&A's proposal, to be frank, was dead on arrival because it

September 15, 2005
Page 4

bore no relationship to the practical or procedural realities of securing fees and costs in common fund cases.

I would like to refocus attention on my earlier proposal, which contemplates that I would take a leadership role in attempting to obtain as large a recovery of fees and costs for L&A as possible, and which weds L&A's fee petition with The Scott Law Group's fee petitions so that neither firm, in a common fund fee petition situation, has an incentive to compete for recovery as against the other firm.

### *ZONOLITE ATTIC INSULATION:*

For ZAI, the proposal was:

<u>For recovery obtained in</u>

2005 -- 60% divided 50%/50%; 40% divided pro-rata based on ZAI time (The Scott Law Group ZAI time vs. L&A ZAI time at point of departure). This is a division of the total fees that The Scott Law Group and L&A are successful at obtaining as to ZAI.

2006 -- 70% divided 75% The Scott Law Group, 25% Lukins & Annis; 30% divided pro-rata based on ZAI time (again, The Scott Law Group ZAI time vs. L&A ZAI).

2007 and beyond -- 80% Scott Law Group; 20% pro-rata based on ZAI time (The Scott Law Group ZAI time vs. L&A ZAI time at point of departure).

This proposed division was advanced mindful that there will be Grace-related actions where neither firm will be able to recover its fees or costs because those cases did not prove successful. In that connection, it is impossible to tell whether class actions brought to clean-up Libby, Montana, or class actions brought to secure medical monitoring for those exposed in mining activities or expansion plant activities, will result in a fund from which recovery can be had. The Scott Law Group continues to invest efforts in all of these matters. Because ZAI litigation is the most probable source of recovery and the stakes in that litigation dwarf all other Grace-related litigation, I have used ZAI litigation as the centerpiece for a potential fee-splitting agreement.

### *FEN-PHEN:*

It is hopefully clear that recovery of common fund fees and costs in the Fen-Phen class action from the MDL court is not an accomplished fact and, in fact, the procedural landscape is now changing. Millions of dollars are at stake. I would be frankly surprised if the actual awards look like those proposed to the Court some years ago.

September 15, 2005
Page 5

More recently, the MDL Court has reimpaneled the Advisory Committee to make recommendations as to a final fee award to various state class counsel. There are noteworthy risks that the Court's rethinking of the benefits afforded by firms associated with the medical monitoring aspect of that action, relative to other contributions, may result in allocations unfavorably different from those proposed some years ago. At the last hearing in Philadelphia that I attended, class counsel for Texas, in an effort to bolster the importance of his own contribution, was taking the opportunity to represent to the Court (falsely), that Washington was a mere tag-along that had duplicated Texas class action pleadings. I have been working, in this and other contexts, to ensure that the outcome for our firms remains favorable through contacts with leading attorneys involved in that decision making.

The only individuals who have been involved in the years of complicated negotiations with Plaintiff Management Committee attorneys in connection with the prosecution of the Fen-Phen class action or recovery of common benefit fees and costs from the MDL action are now members of The Scott Law Group. For more than a half-decade now, I have nurtured relationships with key individuals, both members of the Plaintiffs Management Committee and key state class counsel, in an effort to situate L&A so as to obtain a suitable fee award. So far, so good.

Further, since leaving the firm, we have been on the lookout for opportunities to recover fees and costs for L&A from the MDL common fund. Earlier this year, we successfully moved for the recovery of roughly $140,000 from the MDL for costs (which costs L&A had already compensated itself for from fees). The potential for such a recovery was unknown to anyone at L&A. Indeed, another associated law firm who was also the beneficiary of our motion, had lost track of the fact that it was entitled to substantial additional money. But for The Scott Law Group's work, in short, this recovery would have been lost in the dark procedural history of Fen-Phen.

My earlier proposal was to divide the Fen-Phen recovery on an 80%/20%. Bob Crotty has now assured me that L&A has agreed to an 85%/15% fee split. This is agreeable to The Scott Law Group. I understand that this agreement relates only to the common fund award in respect of class action activities and not substantial personal injury recoveries that are still likely to come L&A's way in connection with Fen-Phen. The latter is revenue that L&A will keep.

### *METROPOLITAN:*

We are committed to a recovery of L&A's costs, where possible, and fair treatment as to fees that may be obtained. The litigation that has arisen related to the securities of Metropolitan Mortgage or Summit Securities, however, has its own unique complexities that make a "fee-splitting" agreement problematic.

My earlier proposal called to L&A's attention the prospects of conflicts of interest that foreclose a fee-splitting agreement giving L&A a stake in the outcome of pending

September 15, 2005
Page 6

Metropolitan-related litigation. Many investors have retained The Scott Law Group since my leaving L&A. It has not been possible or necessary to conduct conflicts of interest checks as to these additional clients or parties against whom they are proceeding. Further, we are now finalizing a number of actions against parties who are current clients of L&A.

My disassociation with L&A has proven instrumental to representation of clients having claims arising out of Metropolitan and Summit Securities. The adversarial positions we have taken leave little doubt in my mind that were I currently with L&A, essentially every constituency associated with Metropolitan-related litigation would be seeking the disqualification of L&A.

That being said, upon the conclusion of individual actions, there are equitable reasons why L&A may be entitled to reimbursement of certain costs, and potentially fees, related to actions where recovery was obtained. For example:

### Administrative Time in Preparing Proofs of Claim

As part of the service performed for various clients, L&A prepared proofs of claim for filing in the Bankruptcy Court. This work was largely performed by paralegals and administrative staff. We made clear to our clients, at the time, that we would not seek recovery from their bankruptcy awards unless their proofs of claim necessitated our involvement in bankruptcy proceedings on their behalf in some substantial way.

To date, I still do not know whether, or what portion of, a particular client's bankruptcy recovery would appropriately involve attorney fees. Metropolitan, Summit, and MIS have been filing objections to proofs of claim by all investors, including those filed while at L&A. The Scott Law Group has been defending those proofs of claim and expending considerable effort in bankruptcy to protect its clients' interests. The Metropolitan and Summit Plan of Reorganization, moreover, was amended in the last few weeks to discard all individual proofs of claim, however filed.

In the event fees are obtained relating to the filing and defense of proofs of claim, I will let you know and we can assess the work that went into those bankruptcy claims and determine a fair allocation then.

### Director/Officer Litigation

Prior to leaving L&A, we commenced certain civil claims in state court against various officers and directors of Metropolitan and Summit. Our records reflect a break down of time and costs involved in pursuing those actions, both while at L&A and presently. It remains impossible to know whether recovery will be had or what form the recovery may take. Should an action against directors and officers prove successful, I will certainly let you know and we can apportion fees recovered, pro rata, based on the time involved in pursuing claims against these officers and directors.

September 15, 2005
Page 7

### Broker Claims

Also prior to leaving L&A, we began work on a variety of actions by various individuals against various brokers, typically based on the suitability of the investment recommended by the broker. Four actions were commenced: Metoyer (Stevens County), Metoyer (Spokane County), Metoyer (Kootenai County) and Sears (Multnomah County). In two other matters, draft complaints were prepared but no actions had been commenced. (Adams and Masterson). We have tracked time while at L&A and currently as to each of these actions.

Broker claims directly implicate conflicts of interest involving Lukins & Annis. Counsel defending five of the six actions identified above, is now also jointly defending and representing current clients of L&A being sued by The Scott Law Group.

A settlement, I am happy to say, is nearing completion in respect of the Sears broker claims. When that case is finally settled, we will appropriately deduct from the clients' recovery those costs for which the client is responsible and reimburse L&A for those that relate to L&A. As a matter of equity, we will also look back at time spent while at L&A working on this matter and propose an equitable allocation of fees to L&A, based on relative time devoted to prosecution of that claim. Should any of the other matters also result in recovery, we would be happy to treat them in the same fashion. An equitable look-back approach that recognized work performed, rather than a fee-splitting agreement that gives L&A an ongoing financial stake in the success of claims implicating its own clients, is the appropriate approach.

### Securities Fraud Class Action

The substantial bulk of time and costs incurred by L&A regarding Metropolitan Mortgage involved efforts to become lead counsel in a securities fraud class action against Ernst & Young. Three law firms were involved in those efforts: Lieff Cabraser, Heimann & Bernstein, Tousley Brain, and L&A. We were not successful.

I continue to be involved in that federal action, presently in a limited fashion. Recovery by any firm in the matter will be on a common fund fee petition basis. If I see opportunity for L&A to recover any of its fees or costs, I will let you know.

## *COSTS*

I appreciate L&A's preferred internal method of handling fees and costs, but these do not bear on whether costs can be recovered or who is entitled to costs when recovered.

We will look for opportunity for L&A to recover costs. When costs are recovered, in whatever matter and through whatever means, those costs will be reimbursed to L&A where it was L&A who incurred those costs. Where costs prove not recoverable, whether

September 15, 2005
Page 8

incurred by L&A or The Scott Law Group, those costs are simply not recoverable and are assumed by the firm that incurred those costs.

In the many multi-firm allocation situations in which I have been involved, I have not had an occasion where individual firm costs were deducted from a common fee recovery, nor an occasion where an attorney proposed such an approach. If L&A wishes to recoup unrecovered costs from its own fees, however, it is free to do so.

To date, The Scott Law Group has looked for opportunities for L&A to obtain recovery of its costs. We will continue to do so. In the event they are recovered by The Scott Law Group and those costs were incurred by L&A, we will forward to L&A, in its entirety, those recovered costs.

## CONCLUSIONS

A fee-splitting agreement as to ZAI, in my view, is probably the next main priority, both because I am hopeful that the ZAI case will prove successful, and because forging a common interest through a fee-splitting agreement serves the best interests of both firms as to this substantial matter.

The fee-splitting agreement as to Fen-Phen is acceptable.

Recoveries in Metropolitan, in my view, are best handled after-the-fact because of conflict of interest problems.

I hope the end of your fiscal year is prosperous and I appreciate your attention to these proposals.

Sincerely,

DARRELL W. SCOTT

DWS