# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Chapter 11 |
| W.R. GRACE & CO., et al., | Case No. 01-01139 (KJC) |
| Reorganized Debtors. | (Jointly Administered) |

**Hearing Date: TBD**
**Response Deadline: July 7, 2014**

**Relates to D.I. 31986, 32034 and 32259**

## LUKINS & ANNIS, P.S.'s RESPONSE TO
## RULE 706 EXPERT REPORT OF JUDITH K. FITZGERALD

Lukins & Annis, P.S. ("L&A"), by and through its undersigned counsel, for its response to the Rule 706 Expert Report of Judith K. Fitzgerald (the "Expert Report"), respectfully states as follows:

## I.        INTRODUCTION

The Expert Report concludes that L&A should be awarded 10% of Class Counsel Scott Law Group's ("Scott") 42.5% share of the total ZAI Common Fund Fee Award, or approximately $667,500.  For the reasons stated below, L&A submits that it should be allocated at least 17.03% of Scott's 42.5% share of the total Common Fund Fee Award, or approximately $1,136,666.00.

Throughout the current fee allocation proceedings, Class Counsel has made various arguments in support of its proposal that L&A should be completely excluded from any recovery from the Common Fund Fee Award, primarily because, according to Class Counsel, L&A's efforts did not provide a benefit to the ZAI Class.  This Court's appointed Rule 706 Expert issued her Expert Report on June 25, 2014 ("the Expert Report"),[1] which rejects Class Counsel's

---

[1] D.I. 32259.

various attempts to wholly exclude L&A from any recovery. More specifically, the Expert

Report establishes that: (A) L&A did not "abandon" the ZAI Class claims; (B) L&A provided a

contribution to the Class through its pre-settlement work in the *Barbanti* Litigation[2] and in the

bankruptcy proceedings, which are detailed at length in the Expert Report; and (C) Class

Counsel cannot justify advocating for an allocation to the law firms of Ness Motley ("Ness") and

McGarvey Heberling ("McGarvey") to the exclusion of L&A.  L&A does not wish to disturb the

Expert Report with respect to these underlying opinions, which are well-supported in the record.

However, L&A respectfully requests that the Court revise the Expert Report's proposed

allocation between L&A and Scott,[3] and follow the recommendation of the Expert Report to

"consider the roles of Ness and McGarvey as compared to L&A, the benefits they contributed to

the ZAI class, and the allocation proposed for them."[4]  Given the underlying recommendations in

the Expert Report, the proposed "nominal" allocation to L&A of approximately $667,500.00 is

not equitable to L&A, given the relative contributions of the firms involved.  Significantly, the

Expert Report discusses at length L&A's important benefit to the Class, but ultimately

recommends that L&A receive a "nominal" allocation from the Common Fund Fee Award.  The

Expert Report does not distinguish L&A's substantive involvement from that of Lieff, Cabraser,

Heimann & Bernstein, L.L.P. ("Lieff"), who is allocated approximately $2,400,000.00.  Further,

Ness's contribution is described solely as setting up a meeting with Grace, for which Ness is

allocated the same amount as L&A, without the necessity of any further evidence or proof.  In

fact, McGarvey is allocated $250,000.00 (not far from the "nominal" allocation to L&A) without

---

[2] *Barbanti v. W.R. Grace & Co.*, Case No. 00-2-01756-6 (Super. Ct. Wash.).
[3] Both Class Counsel and the Expert Report advocate that L&A's allocation should come from a percentage of Scott's allocation.  L&A does not object to this arrangement, but advocates for that percentage to be increased.
[4] Expert Report at p. 29.

#28464189 v2

any evidence in the record as to the benefit provided to the Class.  Under the circumstances, the proposed allocation is not equitable.

Even if the Expert Report's determination that L&A "provided a benefit at least equivalent to that provided by Ness…,"[5] is accepted, a qualitatively equivalent allocation has not been proposed.  To the contrary, Ness is made more than whole by receiving its actual time value of $320,527.00  two times over – by an award of $667,500.00;[6] whereas, L&A does not come close to recovering its significant actual investment of $1,136,66.00 in the ZAI Class claims.[7] Thus, awarding both Ness and L&A the same allocation is inequitable under the circumstances.

L&A respectfully requests that the Court adopt the Expert Report's determinations regarding L&A's ability to recover from the Common Fund Fee Award but revise the proposed allocation to reflect L&A's significant contribution to the ZAI Class, as recognized by the Expert Report, and allow L&A to *at least* recover (as Ness does) its investment in the ZAI litigation, approximately $1,136,666.00.[8]

## II.    RESPONSE ARGUMENT

"The common fund doctrine is essentially a matter of equity…and gives courts significant flexibility in setting attorneys' fees."  *In re Cendent Corp. Sec. Litig.,* 404 F.3d 173, 187 (3d Cir. 2004) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)).  In a class action settlement, the court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel.  *Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc.¸* 528 Fed.

---

[5] Expert Report at p. 15.
[6] All three Class Counsel firms are similarly also made whole, several times over, by the proposed allocation.
[7] The actual investment amounts used herein are based on historical rates, as opposed to the Kirkland & Ellis rates used by Class Counsel.
[8] While Ness' total fees of $320,527.00 include significant time on personal injury and other claims (approximately half of the total value), L&A's current request does not include any such time.

Appx. 211, 214 (3rd Cir. 2013).  "And a proper allocation should reflect the relative contribution

that the various plaintiffs' firms made to the successful outcome of the litigation."  *Id.*

The Expert Report aptly recognizes that L&A is entitled to recover from the Common

Fund Fee Award, notwithstanding objections from Class Counsel.[9]  L&A's work on behalf of the

ZAI Class provided a significant benefit and contributed to the settlement.  However, L&A

respectfully submits that the Expert Report's allocation to L&A does not reflect L&A's

significant contributions, as expressly recognized by the Expert Report, particularly with

reference to the allocations proposed for other counsel.

### A.  The Expert Report's Recommendation That L&A Has the Right To Recover From the Common Fund Fee Award Should Be Accepted By the Court.

Class Counsel made various arguments in an attempt to exclude L&A from any provision

from the Common Fund Fee Award.  Primarily, Class Counsel has argued that L&A made no

contribution to the ZAI Class, which was rejected by the Expert Report.  L&A does not wish to

repeat in full its arguments against Class Counsel's position,[10] but urges the Court to adopt the

Expert Report's determinations in favor of L&A's position that it is entitled to an allocation from

the Common Fund Fee Award based on L&A's significant contribution to the Class.

Generally, an attorney whose actions have conferred a benefit upon a given group or

class of litigants may file a claim for reasonable compensation for his efforts.  *Brytus v. Spang &*

*Co.*, 203 F.3d 238, 242 (3d Cir. 2000).  As previously outlined at length, L&A provided a benefit

to the Class by spending thousands of hours investigating class-wide ZAI claims, drafting

---

[9] Class Counsel's argument that L&A "abandoned" the ZAI claims was also rejected by the Expert Report.  The Expert Report recognizes that L&A simply transferred the claims to Mr. Scott's new firm when he departed L&A in December 2004, in recognition of what L&A believed to be the best interests of the clients *and* with the expectation that L&A would ultimately recover payment of attorneys' fees.  L&A respectfully requests that the Court adopt the Expert Report's determinations in this regard and find that L&A did not "abandon" the ZAI claims or otherwise waive its right to recover attorneys' fees.  *See* Expert Report at pp. 16 -19 ("L&A should not be penalized by Scott's leaving L&A, taking the ZAI clients with him and promising to reach a fee arrangement at a later date.").

[10] L&A has significantly briefed these issues (D.I. 32034, D.I. 32181), which are incorporated herein for purposes of brevity and judicial economy.

numerous legal briefs, taking and defending relevant fact and expert depositions, conducting

discovery, arguing motions, achieving and defending class certification, and financing the

*Barbanti* litigation, which has been recognized by Class Counsel as the "bellwether" ZAI

property damage case.  In addition, L&A spent thousands of hours of unreimbursed time

litigating ZAI claims and issues in the bankruptcy proceeding and hundreds of hours working on

the Property Damage Creditors' Committee.  In all, approximately 5,602 hours of L&A's time,

with an actual dollar value of $1,136,666.00 (at historical rates), was directly expended on

investigating, developing, and litigating the Barbanti Litigation and in litigating the ZAI property

damage claims in the Bankruptcy Proceedings.[11]

       L&A argued, and the Expert Report recognized, that Class Counsel has previously and

repeatedly represented L&A's contribution to the ZAI Class, and that Class Counsel's reversal of

opinion for purposes of allocation should be rejected.[12]  Indeed, the Expert Report expounds

upon L&A's significant contribution to the Class and the ultimate settlement, as previously

recognized by Class Counsel:

> L&A was counsel for over five years, -- from the time Barbanti came to the firm
> until Scott left.  A material factor weighing in favor of an allocation to L&A is the
> benefit L&A's legal services had on the ultimate momentum of the case through
> advancing costs, investigating the case, instituting the state court action, and
> assuming the risk of the outcome of the *Barbanti* litigation prior to the
> appointment of Class Counsel….But for L&A's willingness to institute the state
> court proceedings and pursue them through discovery and class certification, and
> then continue representation into the bankruptcy and through the science trial, the
> class as recognized would not have existed at all and would have received no
> benefit.[13]

> The documents establish that L&A took on the risk of the litigation, fronted the
> costs, including paying the salary of Scott's paralegal and other lawyers,

---

[11] Declaration of Laura J. Black, Exhibits 1, 2.
[12] Expert Report at p. 25 ("In the inkstand action, Class Counsel and other parties referred numerous times to the significance of the *Barbanti* litigation, including the science trial, and its ultimate role in the resolution of the litigation.").
[13] Expert Report at pp. 14-15.

#28464189 v2

paralegals and assistants working with him …, undertook all of the discovery and pleading preparation and in-court work necessary to pursue the ZAI claims until the day Scott left the firm.[14]

L&A's participation pre-petition and as counsel during the bankruptcy and through the ZAI science trial served to set the stage for class certification and the attendant need for negotiations to resolve the ZAI claims in the effort to arrive at a consensual plan.[15]

L&A contributed a benefit by its investigation, development and prosecution of the *Barbanti* litigation that was ultimately used by Class Counsel in presenting the ZAI issues to the Court and in settling the class claims.[16]

In this case, the factual history and supporting documents establish that L&A provided a benefit to the class by taking on the initial litigation in *Barbanti* and continuing that representation and role in the bankruptcy.  L&A is not seeking compensation for duplicate efforts but rather for the benefit it provided to all members of the class by advancing the litigation prior to the appointment of Class Counsel.[17]

In the instant action, Class Counsel and other parties referred numerous times to the significance of the *Barbanti* litigation, including the science trial, and its ultimate role in the resolution of the litigation.  This fact further points out that L&A provided a benefit to the class through its representation over a period of approximately five years with 5,602 hours of time and more that $184,097 of L&A's funds devoted to develop, initiate, finance, and advance the ZAI property litigation.  L&A tested materials, investigated contaminated homes, located and worked with experts, investigated W.R. Grace, identified and located possible class representatives (including Barbanti), and filed the Barbanti action in the State of Washington….Not only did L&A engage in extensive discovery and investigation into the factual and legal basis for the ZAI claims, file the *Barbanti* suit and achieve and defend class certification, L&A continued to have a role in the bankruptcy process, first through the ZAI science trial and later, primarily, monitoring the case.[18]

…[T]he record supports the proposition that L&A secured the ZAI plaintiffs who would and did pursue the class aspects of litigation, with the ultimate benefit provided to the entire class.[19]

---

[14] Expert Report at p. 17, n.19.
[15] Expert Report at p. 21.
[16] Expert Report at p. 23.
[17] *Id.*
[18] Expert Report at p. 25.
[19] Expert Report at p. 27.

#28464189 v2

It is primarily those actions and risk associated with them that led to the bankruptcy litigation and settlement that benefited the entire class.[20]

Given these well-reasoned findings, which are fully supported by the record, the Court should adopt the Expert Report's recommendation that L&A provided a benefit to the Class and is entitled to an allocation from the Common Fund Fee Award.

**B.  However, the Expert Report's Proposed Allocation Should be Amended to Reflect L&A's Significant Benefit to the Class, Particularly In Comparison to Other Counsel.**

As noted above, the Expert Report details L&A's numerous contributions to the ZAI Class, even ultimately concluding that L&A's "actions and risk associated with them … led to the bankruptcy litigation and settlement that benefitted the entire class."[21]  Nonetheless, the Expert Report provides for what is described as a "nominal" allocation to L&A.  L&A respectfully submits that the contributions detailed above should reasonably result in more than a nominal allocation.  Further, when placed in perspective with the other counsel, the proposed allocation to L&A implicates this Court's obligation to ensure an equitable allocation to all counsel involved by revising the allocation in L&A's favor.

**1.  The Expert Report's Considerable Deference to Class Counsel's Proposed Allocation is Misplaced.**

The Expert Report's decision to provide L&A with a relatively minor allocation, despite the extensive discussion of L&A's contributions to the ZAI Class, appears to be guided by a large amount of deference to the proposed allocation by Class Counsel.[22]  However, it should now be evident that Class Counsel has proven incapable of advocating for a subjectively reasonable allocation to L&A; they have at all turns, attempted to completely bar L&A from recovery with unfounded claims of abandonment and failure to provide a benefit to the Class, all

---

[20] Expert Report at p. 25.
[21] *Id.*
[22] *See e.g.,* Expert Report at p. 10.

#28464189 v2

of which was ultimately rejected by the Expert Report.  To the extent the Expert Report's provision of a nominal allocation to L&A is due to deference to Class Counsel's assessment, such deference is unwarranted under the circumstances.

 "Likely because of perceived practical necessity, courts have shown an eagerness to defer to counsel's views in allocating attorneys' fees." *In re Diet Drugs Prods. Liab. Litig.,* 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J. concurring).  While "ideally," allocation of a common fund fee award is handled among class counsel, the Court nonetheless has a "responsibility to closely scrutinize the attorneys' fee allocation." *Evans v. TIN, Inc.,* 2013 WL 4501061 (August 21, 2013).  Certainly, "[i]t is one thing for all attorneys to come to an agreement about dividing up fees, and quite another for five attorneys to declare how an award will cover themselves and … other attorneys with no meaningful judicial supervision or review." *In re High Sulfur Content Gasoline Products Liability Litigation,* 517 F.3d 220 (5th Cir. 2008).

The necessity for judicial oversight is in no small part because "counsel have inherent conflicts." *In re Diet Drugs Products Liab. Litig.,* 401 F.3d at 173.  "They [counsel] make recommendations on their own fees and thus have a financial interest in the outcome.  How much deference is due the fox who recommends how to divvy up the chickens?" *Id.*  Class Counsel has a conflict of interest when they are "suggesting to the District Court how to proceed on matters near and dear – dividing a limited fund among themselves and other firms.  **Such a direct conflict suggests that substantial deference is inappropriate**." *Id.* at 173-74 (emphasis added).

Again, while the Expert Report appropriately recognizes the substantial contributions made by L&A to the ZAI Class, it nonetheless recommends a nominal allocation of the Common Fund Fee Award, apparently based on Class Counsel's suggestion that L&A receive nothing and

deference to the agreement of Class Counsel and other interested parties.  However, it is undisputed that there was no mutual agreement of *all interested parties* (*i.e.,* L&A), due in large part to Mr. Scott's history of conflict with L&A following his departure from L&A.[23]  This conflict is borne out by the unreasonable positions taken with respect to L&A herein; as mere examples, Class Counsel's change of position to the Court on L&A's contribution to the ZAI Class and otherwise disparate stance against an allocation to L&A in comparison to Ness and McGarvey, both of which are recognized by the Expert Report.[24]

To the extent that the Expert Report's nominal allocation to L&A, which is not commensurate with the recognized benefit provided to the ZAI Class, is based on a perceived need to defer in some measure to Class Counsel's allocation proposal to exclude L&A entirely, L&A respectfully submits that the Court should not be bound by any such deference.

**2. The Proposed Allocation is Otherwise Not Equitable, In Consideration of the Purported Contributions of Other Counsel and Lack of Proof of a Benefit to the Class.**

The Expert Report's relatively modest allocation to L&A is not equitable in consideration of L&A's contributions, detailed at length in the Expert Report, and in consideration of the proposed allocation to other counsel – particularly, Lieff, Ness, and McGarvey.  As urged by the Expert Report, the resulting allocation amongst counsel necessitates judicial scrutiny.  L&A submits that the allocation should be amended to reflect the actual contribution of counsel.

It is well-established that plaintiffs' counsel may not simply divide a common fund award "in any manner they deem satisfactory under a private fee sharing agreement."  *See In re Agent Orange Product Liability Litig.,* 818 F.2d 216 (2d Cir. 1987).  Rather, the Court must ensure a fair and equitable allocation.  *See e.g., Class Plaintiffs v. Jaffee Schlesinger, P.A.,* 19 F.3d 1306,

---

[23] L&A does not repeat this history herein, but it was recognized by the Expert Report, based on the evidence previously provided by L&A.  *See* Expert Report at p.20, n.18.

[24] *See e.g.,* Expert Report at p. 20.

#28464189 v2

1308 (9th Cir. 1976) (rejecting an agreed-upon fee allocation that allocated fees for work that did not benefit the class).

Thus, the Court should look to the benefit to the Class provided by all of the attorneys seeking an allocation of the Common Fund Fee Award.   In performing this analysis, the Court should be guided by the "amount, nature, and significance of the work of each counsel and how it relates to the work of the other counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 232 (5th Cir. 2008); *Turner v. Murphy Oil USA, Inc,* 582 F. Supp. 2d 797 (E.D. La. 2008).  The Court must look to what the attorneys "actually did and how it benefitted the class," as well as "whether the allocation is reflective of the relative work performed (*i.e.,* lodestars)." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 342 (3d Cir. 1998); *In re Trans Union Corp. Privacy Litig.,* 2008 WL 4799954 (Dec. 9, 2009), *23. Thus, the focus is on "the question of 'contribution,' with attention paid to factors such as relative risk and lodestars." *Trans Union Corp.,* 2008 WL 4799954, *23.

L&A is the only non-Class Counsel firm that has been required to establish and has, in fact, established its actual benefit to the Class and contribution to the settlement, with respect to factors such as work performed, how it benefitted the Class, relative risk, and lodestars, in order to earn an allocation from the Common Fund Fee Award.  Thus, there are resulting evidentiary and equitable issues with respect to other counsel that have, thus far, escaped judicial review.

For example, L&A has argued at length that its contributions to the Class are essentially indistinguishable from those provided by Lieff, who is allocated $2.4 million by both Class Counsel and the Expert Report, seemingly based solely on its status as named Class Counsel (a status which occurred *after* the settlement was negotiated and filed) and undue deference to the allocation arrangement proposed by Class Counsel.  Notably, there is no discussion of Lieff's

-10-

contribution to the Class or settlement by the Expert Report and no attempt to distinguish Lieff from L&A's nearly identical contributions – substantive, quantitative, or qualitative.  Lieff has contributed 4,626 hours, compared to L&A's 5,602 hours.[25]  Like L&A, Lieff's hours are primarily pre-bankruptcy and post-bankruptcy, but pre-settlement, *with no discernible direct link to the settlement negotiations*.[26]  Like L&A, the overwhelming majority of Lieff's hours were spent investigating and developing the Barbanti Litigation, the Dorrington Litigation, and litigating the ZAI claims in the bankruptcy proceedings.  Lieff's time spent on these tasks is not noticeably or qualitatively different than the time of L&A, and Class Counsel has not argued otherwise.[27]  There has been no attempt by Class Counsel to distinguish Lieff's contribution from that of L&A and no apparent basis to do so.  And yet, Class Counsel's proposed allocation of $2.4 million to Lieff has been given full deference by the Expert Report, with a "nominal" allocation being made for L&A's similar contributions to the Class and settlement.  L&A respectfully submits that this is not equitable.

Instead, L&A's established contributions have been deemed "equivalent" to those of Ness.  First, L&A certainly disagrees that Ness' purported contributions, described **solely** as arranging a meeting between Class Counsel and Grace's Equity Committee,[28] should reasonably be deemed equivalent to L&A's well-established contributions of record.

Class Counsel's previous assertions to the Court (without more) that Ness "remained engaged in ZAI litigation,"[29] "continuously engaged in representing ZAI interests, [and] …directly assisted Class Counsel in securing the U.S. ZAI Class Settlement,"[30] "[offered]

---

[25] See D.I. 32034.
[26] *Id.*
[27] *Id.*
[28] *See e.g.,* Expert Report at p. 20.
[29] Response at p. 4.
[30] *Id.*

critical assistance to Class Counsel in securing the U.S. ZAI Class Settlement,"[31] and "has been engaged in ZAI representation from its earliest initiation in 2000 to date,"[32] have never been supported by Class Counsel and are not reflected in time records or any evidence in the record. Thus, L&A respectfully disagrees with underlying determination that L&A's substantial well-established contributions over a five-year period are on par with that of Ness.

However, even if this characterization of equivalent benefit is accepted, allocating the same amount from the Common Fund Fee Award to Ness and L&A does not accomplish any semblance of equality. With a total of approximately $320,527.00 of actual attorneys' fees at historical rates invested in all ZAI related litigation (personal injury and otherwise), Ness's actual investment in both ZAI personal injury and property damage claims is made whole two times over by a $667,500.00 allocation for what has been described as *setting up a meeting* that facilitated settlement.[33] Thus, Ness receives a mutliplier of approximately 2.08 and a substantial windfall by the proposed allocation.

In contrast, that same allocation to L&A only compensates L&A for approximately half of its actual $1,136,666.00 fee investment in the ZAI property damage claims, for which L&A has now established a legitimate contribution and benefit over a five-year period. Unlike Ness, L&A does not recoup its investment, let alone receive a premium. Under the circumstances, allocating the same award to Ness and L&A is not equitable to L&A. L&A respectfully submits it should similarly be allocated *at least* an amount equal to its monetary investment of attorney hours in the ZAI litigation – approximately $1,136,666.00.

---

[31] *Id.* at p. 5.
[32] *Id.* at p. 6.
[33] Ness' time records, which were submitted to the Rule 706 Expert show a total value of $320,527.00.

#28464189 v2

Per the Expert Report's suggestion, L&A urges the Court to critically review the relative contributions of the firms involved without undue deference to Class Counsel's allocation. Under this Court's obligation of independent review and ensuring an equitable allocation to all interested parties, L&A respectfully submits that it is entitled to more than a "nominal" allocation and certainly more than the allocation proposed for Ness.

### III.   CONCLUSION

For the foregoing reasons, L&A respectfully requests that the Court adopt the Rule 706 Expert Report's recommendations with respect to L&A's right to recover from the Common Fund Fee Award, but increase the proposed allocation to L&A to not less than 17.03% of Scott's 42.5% allocation of the total Common Fund Fee Award, to reflect L&A's significant contribution to the ZAI Class, particularly with reference to the relative contributions of the other counsel.

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ David M. Fournier
David M. Fournier (DE No. 2812)
Michael J. Custer (DE No. 4843)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
(302) 777-6500
fournierd@pepperlaw.com

Attorneys for Lukins & Annis, P.S

Dated: July 7, 2014.