IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (KJC) |
| ) | (Jointly Administered) |
| Reorganized Debtors. ) | |
| ) | Hearing Date: September 10, 2014, at 10:00 a.m. |
| ) | Objection Deadline: September 3, 2014 |

**THIRTY-FIRST OMNIBUS OBJECTION TO CERTAIN CLAIMS RELATING TO THE TANTALO LANDFILL (SUBSTANTIVE OBJECTION)**

INTRODUCTION

In this *Thirty-First Omnibus Objection To Certain Claims Arising From The Tantalo Landfill (Substantive Objection)* (the "31st Omnibus Objection" or the "Objection"), the above-captioned reorganized debtors (collectively, the "Reorganized Debtors" or "Grace," the pending bankruptcy cases being the "Chapter 11 Cases") have identified four claims (the "Tantalo Claims") for which Grace bears no liability and which this Court should therefore disallow pursuant to an order substantially in the form attached hereto as Exhibit A:[2]

| CLAIMANT | CLAIM NO. | AMOUNT | PRIORITY | DATE FILED | EXHIBIT |
|---|---|---|---|---|---|
| GTE Operations Support, Inc. ("GTE") | 420 | $20,000,000 plus interest (Contingent) | General Unsecured | 9/18/01 | B-1 |

---

[1] The Reorganized Debtors comprise the following 17 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace"), W. R. Grace & Co. Conn. ("Grace-Conn."), Darex Puerto Rico, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Gloucester New Communities Company, Inc., Grace Chemical Company of Cuba, Grace Energy Corporation, Grace Europe, Inc., Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace PAR Corporation, W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Guanica Caribe Land Development Corporation, Hanover Square Corporation, Kootenai Development Company, Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), and Water Street Corporation.

[2] The facts and circumstances set forth in this Objection are supported by the *Declaration of Robert J. Medler in Support of the Reorganized Debtors' Thirty-First Omnibus Objection To Certain Tantalo Claims Arising From The Tantalo Landfill (Substantive Objection)* (the "Medler Declaration," attached hereto as Exhibit C and incorporated into this Objection by reference).

| CLAIMANT | CLAIM NO. | AMOUNT | PRIORITY | DATE FILED | EXHIBIT |
|---|---|---|---|---|---|
| Seneca Meadows, Inc. ("SMI") | 4073 | $20,000,000 (Contingent) | General Unsecured | 3/18/03 | B-2 |
| Macedon Homes, Inc. ("MHI") | 4074 | $20,000,000 (Contingent) | General Unsecured | 3/18/03 | B-3 |
| GTE | 15528 | $20,000,000 plus interest (Contingent) | General Unsecured | 2/7/05 | B-4 |

SMI and MHI are corporate affiliates that have each asserted a separate claim (nos. 4073 and 4074, respectively) against the Reorganized Debtors for more than $20 million:

- *First*, SMI asserts that it has incurred more than $20 million in costs associated with its remediating contamination, consisting primarily of liquid trichloroethylene ("liquid TCE"), at a landfill (the "Tantalo Landfill") that it owned. Waste disposal at the landfill allegedly occurred from 1958 to 1974 (the "Disposal Period"), when SMI closed the Tantalo Landfill.; and

- *Second*, SMI and MHI assert that they suffered a diminution in the value of certain land contiguous to the Tantalo Landfill that they acquired in the mid-1990s.

Neither claim has merit.

SMI and MHI originally asserted their claims in a suit that they commenced in 1995 in the United States District Court for the Western District of New York (the court being the "WDNY Court," and the litigation being the "WDNY Litigation"). Grace and an entity from which it purchased assets in 1978, Evans Chemetics, Inc. ("ECI"), were among the named defendants. GTE and certain of its affiliates (collectively, the "GTE Defendants") were also named defendants. GTE filed Claim no. 420, which was later amended and superseded by Claim no. 15528, to preserve its cross-claim against Grace. As Grace is not liable to SMI or MHI, it is also not liable to GTE.

In 2006, the WDNY Litigation culminated in a *Decision and Order*, dated April 20, 2006 [WDNY Docket no. 287] (the "Goulds Pumps Decision," attached hereto as Exhibit D), which the WDNY Court entered after a lengthy trial between SMI and another named defendant,

Goulds Pumps, Inc. ("Goulds Pumps"). In short, the WDNY Court found that Goulds Pumps was not liable to SMI and MHI. The Reorganized Debtors were not party to that trial, but the WDNY Court's findings in the Goulds Pumps Decision are highly relevant in that they, along with several circumstances unique to Grace, establish that SMI's and MHI's claims are without merit:

- *First and foremost*, on information and belief, neither Grace, itself, nor any of the other Reorganized Debtors ever disposed of any waste at the Tantalo Landfill during the Disposal Period;

- *Second*, Grace did not acquire ECI's assets until 1978, approximately five years after the Tantalo Landfill closed, and in so doing, did not agree to assume any liabilities arising under CERCLA or with respect to the Tantalo Landfill;

- *Third*, on information and belief, the Reorganized Debtors are not aware of any evidence establishing that ECI used TCE solvent or generated TCE waste at its Waterloo manufacturing facility, and thus ECI did not dispose of any liquid TCE waste found at the Tantalo Landfill. To the extent that the facility generated other liquid wastes, they were disposed near ECI's Waterloo facility during the Disposal Period;

- *Fourth*, the WDNY Court found that SMI: (a) was directly responsible for the vast majority of its response costs, and (b) directly economically benefitted from the remediation:

  - In 1974, SMI refused to close the Tantalo Landfill in accordance with then-current regulations, and it did not begin remediating the known liquid TCE contamination *for nearly thirty years,* greatly increasing the remediation costs. Goulds Pumps Decision at 21, 36;

  - SMI conditioned its willingness to properly remediate the Tantalo Landfill on the issuance and renewal of permits needed for SMI to operate an adjacent landfill that has since grown to be one of the largest landfills in the state; and

  - SMI's value has increased as much as 90-fold as a result of the issuance of those permits. *Id.* at 26; and

- *Fifth*, SMI never sought contribution from the local municipalities that were responsible for generating more than 75% of the waste now buried at the Tantalo Landfill, nor did SMI seek contribution from various municipal wastewater treatment plants, septic waste haulers, and other industrial parties that were not named in the WDNY Litigation, but all of which disposed of many times more waste (including significant quantities of TCE wastes) at the site than did ECI. *Id.* at 36.

In support of this Objection, the Reorganized Debtors respectfully state as follows on information and belief:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[3] This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Objection are section 502 of the Bankruptcy Code, Fed. R. Bankr. P. 3007 and Del. Bankr. L.R. 3007-1.

## BACKGROUND

### *The Tantalo Landfill, the Seneca Meadows Landfill, and the Adjacent Properties*

3. The 26-acre Tantalo Landfill is a discrete part of a much larger, 533-acre parcel located near Seneca Falls, New York, on which SMI has operated for decades—and continues to operate today (on information and belief)—another landfill (the "Seneca Meadows Landfill") that is one of the largest in New York State. Goulds Pumps Decision at 1. During the Disposal Period, solid waste from local municipalities, septic tank waste and sludge from municipal wastewater treatment plants, and wastes from local industries were disposed of at the Tantalo Landfill. Approximately 75% of the volume of refuse at the Site consists of municipal solid waste. *Id.* at 18.

4. Landfill operations ended at the Tantalo Landfill in 1974. SMI did not, however, close the landfill according to then-existing regulations. *Id.* at 36.

---

[3] The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. In 1983, the New York State Department of Environmental Conservation ("NYSDEC") classified the Tantalo Landfill as a Class II Inactive Hazardous Waste Disposal Site, which is a site deemed by New York Environmental Conservation Law ("ECL") § 27-1305(4)(b) to present a "significant threat to the public health or environment—action required," primarily as a result of liquid TCE contamination "in the bedrock and groundwater near the southern end of the Site." Goulds Pumps Decision at 2, 18. In 1992, SMI entered into the first of three Consent Orders with NYSDEC pursuant to which SMI agreed to investigate the extent of contamination and remediate the release of hazardous substances into the environment. SMI did not commence remediation at the Tantalo Landfill until 2003—*nearly thirty years after the site closed. Id.* at 19, 21.

6. On information and belief, MHI and SMI acquired certain property adjacent to the Tantalo Landfill (the "Adjacent Properties") in two separate purchases in 1994 and 1995, respectively, for residential development. Claimants have asserted that the Adjacent Properties' value was diminished by the discovery of TCE at the Tantalo Landfill. *See* MHI Proof of Claim 4074, attached hereto as Exhibit B-3 ("MHI POC 4074").

*ECI Did Not Dispose of TCE or Other Solvents at the Tantalo Landfill*

7. SMI and MHI have asserted that ECI disposed of wastes in the Tantalo Landfill from ECI's manufacturing plant located in Waterloo, New York. *See* SMI Proof of Claim 4073, attached hereto as Exhibit B-2 ("SMI POC 4073"); *see also* MHI POC 4074. On information and belief, prior to 1974, ECI may have arranged to dispose of general plant trash (including office, cafeteria, bathroom, and shipping and receiving wastes, etc.) and other predominantly non-hazardous solid wastes at the Tantalo Landfill. On information and belief, the Reorganized Debtors are not aware of any evidence establishing that ECI used TCE solvent or generated waste TCE solvent at its Waterloo manufacturing facility, and thus ECI did not dispose of any

liquid TCE waste at the Tantalo Landfill during the Disposal Period. To the extent that the facility generated other liquid wastes, they were disposed of near ECI's Waterloo facility during the Disposal Period.

8.  In 1973, ECI entered into an agreement with DEC to construct a wastewater treatment plant at its Waterloo facility. ECI also contracted with SMI (then known as Tantalo Construction, Inc.) to dispose of the new waste that would be generated by the wastewater treatment facility following its construction (the "ECI/SMI Contract," a copy of which is attached hereto as Exhibit E). On information and belief, ECI commenced operating its wastewater treatment facility in November 1975—more than a year after the Tantalo Landfill ceased operations. The ECI/SMI Contract provided for a limited indemnification obligation, but the indemnity did not apply to any disposal at the Tantalo Landfill, because no waste from the treatment plant was ever disposed of there. *Id.* at ¶ 13. On information and belief, the ECI treatment plant waste was disposed at the Seneca Meadows Landfill.

***Grace Acquired ECI Assets in 1978 – Years After the Tantalo Landfill Ceased Operations***

9.  In 1978, Grace acquired certain ECI assets and a narrow set of liabilities that did not include any: (i) potential historical liability to SMI; (ii) any liability relating to the Tantalo Landfill; or (iii) any environmental liabilities arising under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"). *See Agreement and Plan of Reorganization Among W. R. Grace & Co. and Evans Chemetics, Inc., and Its Shareholders*, dated December 28, 1978, attached hereto as Exhibit F (the "Evans Chemetics Acquisition Agreement"), at §§ 4.02(b) & 15.02.

***The WDNY Litigation***

10. On or about August 18, 1995, SMI and MHI (the "Plaintiffs") commenced the WDNY Litigation, under the caption *Seneca Meadows, Inc. et al. v. ECI Liquidating, Inc., et al.*,

Civil Action No. 95-CV-6400L. ECI, Grace, the GTE Defendants and Goulds Pumps were among the named defendants. SMI POC 4073; MHI POC 4074.

11. On or about September 15, 1995, Plaintiffs filed their amended complaint. In October and November 1995, Grace, the GTE Defendants and Goulds Pumps filed and served their respective answers to the amended complaint, which included cross-claims against all other defendants for allegedly causing releases of various hazardous substances that required Plaintiffs to incur response costs and suffer other damages. *See* WDNY Docket, attached hereto as Exhibit G.

12. By *Decision and Order* dated November 14, 1997, attached hereto as Exhibit H, the WDNY Court dismissed SMI's common law property damage claims for the Tantalo Landfill, because they were untimely. By *Decision and Order* dated August 6, 1998, attached hereto as Exhibit I, the WDNY Court also dismissed SMI's CERCLA Section 107 response cost recovery claim, ruling that SMI could only pursue a CERCLA Section 113 contribution claim because it was also liable for CERCLA response costs.

13. On April 28, 2000, Plaintiffs filed their Second Amended Complaint, attached hereto as Exhibit J, raising substantially the same claims asserted in the First Amended Complaint. In May 2000, Goulds Pumps, Grace and the GTE Defendants filed their respective answers to the Second Amended Complaint, requesting that the WDNY Court dismiss the WDNY Litigation and asserting cross-claims for contribution against all other defendants in the litigation. *See, e.g.*, Exhibit K (Grace's Answer with Cross-Claims).

14. On or about January 18, 2001, the Plaintiffs filed their Third Amended Complaint, copies of which are attached to Claims nos. 4073 and 4074. The WDNY Court ordered that Grace, Goulds Pumps, the GTE Defendants, and certain other of the defendants

were not required to file and serve answers to this pleading. *See* Exhibit L (WDNY Court Order of 12/8/00).

### *GTE Defendants Dismissed From WDNY Litigation*

15.     On January 9, 2006, the WDNY Court entered a *Stipulation and Order* (WDNY Docket no. 285), attached hereto as Exhibit M, dismissing with prejudice the GTE Defendants from the Tantalo Action. The WDNY Court also barred all further WDNY Litigation-related claims and cross-claims against the GTE Defendants. *Id.*

### *The Goulds Pumps Decision in the WDNY Litigation*

16.     Grace and Goulds Pumps were now the only remaining defendants. The WDNY Court conducted a bench trial of only SMI's claim against Goulds Pumps for contribution towards SMI's CERCLA response costs. Plaintiffs did not pursue their common-law property damages claims regarding the Tantalo Landfill and the Adjacent Properties.

17.     On April 20, 2006, following more than two weeks of trial, the WDNY Court entered its Goulds Pumps Decision, attached hereto as Exhibit D, dismissing Plaintiffs' claims against Goulds Pumps with prejudice, holding that "***Goulds Pumps should bear no responsibility for any portion of the response costs incurred by SMI at the Tantalo Landfill.***" *Id.* at 38.

18.     On May 15, 2006, the WDNY Court dismissed Plaintiffs' claims against Grace, because the ongoing chapter 11 cases had stayed the WDNY Litigation as to the Debtors, and SMI and MHI had filed proofs of claim with the bankruptcy court (WDNY Docket no. 289, attached hereto as Exhibit N). The WDNY Court then "closed in its entirety" the WDNY Litigation, because there were no remaining "active parties." *Id.*

## THE OBJECTION

### *The SMI and MHI Claims Should Be Disallowed*

#### *1. Claimants Cannot State a CERCLA Contribution Claim Against ECI*

19. To recover under CERCLA, SMI and MHI must establish that ECI released a hazardous substance at the Tantalo Landfill during the Disposal Period that caused the incurrence of response costs—which ECI did not for the reasons discussed above at ¶¶ 7-8 and described further herein. They therefore cannot state any claim whatsoever against ECI and Grace under CERCLA. 42 U.S.C. § 9607(a); Goulds Pumps Decision at 14 (omitting internal citations).

#### *2. Even If Liable Under CERCLA, No Portion of SMI's Response Costs Should Be Allocated to ECI*

20. But even if it were liable under CERCLA, ECI still would not be allocated any portion of SMI's response costs, for the reasons set forth in the Goulds Pumps Decision.

21. *First*, the WDNY Court found that SMI itself—and no other party—should bear the vast majority of the response costs it caused and incurred:

> *I find that much of the so-called response costs should be attributed to SMI.* I find that the work at the Site has been of great economic benefit to SMI. I also find that much of the remediation at the Site involves procedures and expenditures that should have been performed at least 20 years earlier when the Site closed. Abandonment of the Site in 1974 without utilizing proper procedures to close the Site, as required by New York State Regulations and good practice, caused harm. *I conclude that SMI seeks to extract funds from one class of depositors at the Site for work that it could have, and should have, performed itself, at its own expense, to properly conclude operations in 1974. There were problems at the Site in the 1970s, and SMI's failure to deal with those problems to the extent necessary, exacerbated the situation and caused the Site to deteriorate.*

Goulds Pumps Decision at 36 (emphases added). The WDNY Court also concluded that some of the alleged response costs sought by Plaintiffs were not even attributed to the Tantalo Landfill.

*Id.* at 38 n.14. For these and other reasons, the WDNY Court found that most of SMI's response costs claims were not recoverable under CERCLA. *Id.* at 39.

22. ***Second***, Plaintiffs have never sought recovery from the municipalities and municipal wastewater plants and sludge haulers that accounted for the vast majority of waste deposited at the Tantalo Landfill. *Id.* at 18, 39. Moreover, the WDNY Court found that these waste streams were likely sources of the liquid TCE contamination, the primary contaminant of concern at the site. *Id.* at 26. What's more, the WDNY Court also found that the Tantalo Landfill may not have been the only source of the TCE found in the groundwater located beneath the site. Goulds Pumps Decision at 22, 30. SMI (and NYSDEC) have never identified what or who this additional source was, but it is yet another possible responsible party, liable under CERCLA, to which a portion of the costs should be allocated. These facts alone point to the fundamental hollowness of SMI's claims—it has never pursued the parties who are really responsible for the vast majority of the waste sent to the landfill nor has its claims reflected its own significant contribution to the environmental problems at the landfill.

23. ***Third***, Goulds Pumps was responsible for at most 1.3% of the bulk of waste sent to the Tantalo Landfill. *Id.* at 25. ECI's portion is much smaller, as at most it may have sent only small quantities of waste to the landfill during the Disposal Period.

24. ***Finally***, and most importantly, SMI failed to establish that Goulds Pumps was a significant source of waste *liquid TCE*, and therefore the WDNY Court found that Goulds Pumps was not liable for any portion of SMI's CERCLA response costs. *Id.* at 27-28. As ECI also did not dispose of liquid TCE at the site, it and Grace thus cannot be responsible for any such costs.

### 3. *The Reorganized Debtors Are Not Liable to SMI or MHI*

25. Even if the WDNY Court had not issued its Goulds Pumps Decision eviscerating SMI's substantive claims (and those of MHI, as well), the Reorganized Debtors would still not

be liable to Plaintiffs, whether under CERCLA or common law, for any portion of SMI's response costs at the Tantalo Landfill or for any property damages associated with the Adjacent Properties.

      *a)    Grace Is Not Directly Liable to any Claimant Under CERCLA or Common Law*

26. On information and belief, Grace never owned or operated the Tantalo Landfill, and never arranged to dispose of or transport wastes for disposal at the Tantalo Landfill. Grace therefore cannot be liable to SMI or MHI on that basis under CERCLA. 42 U.S.C. §§ 9607(a)(1)-(4). Grace also has no other nexus to the landfill or the wastes disposed of there, and therefore cannot be liable under common law for any property damages at the Adjacent Properties.

      *b)    Grace Is Not ECI's Successor*

27. Grace also is not a successor to ECI (or any other defendant sued by Plaintiffs in the WDNY Litigation) under applicable New York law as a result of the 1978 acquisition of ECI assets. *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239 (1983) (asset purchasers do not generally succeed to sellers' liabilities). Moreover, under the Evans Chemetics Acquisition Agreement, Grace did not agree to assume any liabilities arising under CERCLA or with respect to the Tantalo Landfill.

      *c)    ECI Did Not Contractually Indemnify SMI for Losses Related to the Tantalo Landfill*

28. ECI did not contractually agree to indemnify SMI for any response costs or other damages relating to waste disposal at the Tantalo Landfill during the Disposal Period or otherwise. The 1973 ECI/SMI Contract concerned disposal activities that did not begin until November 1975, when ECI's wastewater treatment plant began operations—but after the Tantalo Landfill operations ended in mid-1974.

### 4. *The Value of the Adjacent Properties Did Not Decrease as a Result of Contamination at the Tantalo Landfill*

29.     Plaintiffs are not entitled to recover from ECI any damages associated with the Adjacent Properties under any state common law theory (claims which they abandoned before their trial against Goulds Pumps in the WDNY Litigation). SMI and MHI acquired the Adjacent Properties in 1994 and 1995, respectively. By then, both SMI and MHI (which are affiliates) were well aware of the pre-existing TCE contamination at the Tantalo Landfill. Moreover, SMI had operated the adjacent Seneca Meadows Landfill for more than two decades. Thus, it is simply not credible for Plaintiffs to claim that the Tantalo Landfill contamination diminished the value of the Adjacent Properties after they were acquired by SMI and MHI. Furthermore, there is no evidence that any action or inaction by ECI or Grace caused any diminution of value of the Adjacent Properties.

30.     For all of the foregoing reasons, and all of other reasons set forth in Grace's answer to the Second Amended Complaint in the WDNY Litigation, Plaintiffs' Claims should be disallowed in their entirety.

### *Grace Has No Liability to the GTE Defendants*

31.     On information and belief, the GTE Defendants filed their proofs of claim, Claims nos. 420 and 15528, as contingent, unliquidated claims in order to preserve any cross-claims they may have had in the WDNY Litigation. If the GTE Defendants were dismissed from the WDNY Litigation because they were not liable to Plaintiffs, then that dismissal has rendered moot their Claims against the Reorganized Debtors. Those Claims should therefore be disallowed.

32.     Alternatively, if the GTE Defendants were dismissed from the WDNY Litigation because they settled Plaintiffs' claims, then their Claims against Grace should be disallowed in

any event, for the very same reasons that Plaintiffs' claims should be disallowed, as set forth above.

## RELIEF REQUESTED

33. The Reorganized Debtors request that the Court enter the Order substantially in the form attached hereto as Exhibit A, disallowing the Tantalo Claims set forth in Exhibit I thereto.

## PROCEDURES FOR RESPONDING TO THE CLAIMS OBJECTION

34. To contest any of the objections set forth in this Claims Objection, Claimants must file and serve a written response to this Claims Objection (a "Response") so that it is received no later than **4:00 p.m. ET, on September 3, 2014** (the "Response Deadline"). The Response (or each Response, if more than one is filed) must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") at the following address:

>   824 Market Street
>   Wilmington, Delaware 19801

35. Each such Response must also be served upon the following co-counsel to the Reorganized Debtors on or before the Response Deadline:

>   KIRKLAND & ELLIS LLP
>   Adam C. Paul
>   Jeffrey W. Gettleman
>   300 North LaSalle Street
>   Chicago, IL 60654
>
>   THE LAW OFFICES OF ROGER HIGGINS, LLC
>   Roger J. Higgins
>   1 North Bishop Street
>   Suite 14
>   Chicago, IL 60607-1823

> PACHULSKI STANG ZIEHL & JONES LLP
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill (Bar No. 4042)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705

36. Every Response to this Claims Objection must contain, at a minimum, the following:

(i) A caption setting forth the name of the Court, the name of the Reorganized Debtors, the case number, and the title of the 31st Omnibus Objection to which the Response is directed;

(ii) The name of the Claimant, its claim number, and a description of the basis for the amount of the claim;

(iii) The specific factual basis and supporting legal argument upon which the party will rely in opposing the Claims Objection;

(iv) Any supporting documentation, to the extent it was not included with the proof of claim previously filed with the Clerk or Claims Agent, upon which the party will rely to support the basis for and amounts asserted in the proof of claim; and

(v) The name, address, telephone number, and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Reorganized Debtors should communicate with respect to the claim or the objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the Disputed Claim on behalf of the Claimant.

37. If a Claimant fails to file and serve a timely Response (or Responses), the Reorganized Debtors may present to the Court an appropriate order disallowing and expunging that Claimant's claim or claims without further notice to the Claimant or a hearing.

### REPLY TO RESPONSE

38. The Reorganized Debtors reserve the right to, at their option, file and serve one or more replies to Claimants' Responses, if any.

## SEPARATE CONTESTED MATTER

39. If a Claimant files a Response to this Objection, and the Claimant and the Reorganized Debtors are unable to resolve that Response, the corresponding claim and the objection by the Reorganized Debtors thereto asserted in this Claims Objection shall constitute a separate contested matter as contemplated by Fed. R. Bankr. P. 9014. Any order entered by the Court regarding an objection asserted in the 31st Omnibus Objection shall be deemed a separate order with respect to each such claim.

## RESERVATION OF RIGHTS

40. The Reorganized Debtors hereby reserve the right to object in the future to any of the Tantalo Claims. The Reorganized Debtors further reserve the right to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims. Separate notice and hearing will be scheduled for any such objection.

## NO PREVIOUS OBJECTION

41. Other than the Debtor's objection to Claim no. 420 for insufficient documentation, which was resolved by GTE filing Claim no. 15528, no previous objection to these Tantalo Claims has been filed, nor has any other motion for the relief sought herein been made to this or any other court

## NOTICE

42. Notice of this Objection has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) the Claimants who filed

the four Tantalo Claims that are the subject of this Objection. In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached hereto as Exhibit A (i) disallowing the Tantalo Claims; and (ii) granting such other relief as may be appropriate.

Dated: August 4, 2014

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors