## Exhibit B-4

**Claim No. 15528**

# WR Grace

SR00000920

### Bankruptcy Form 10
### Index Sheet

Claim Number:    00015528                    Receive Date:  02/07/2005

---

## Multiple Claim Reference

Claim Number _____

| | | |
|---|---|---|
| ☐ | MMPOC | Medical Monitoring Claim Form |
| ☐ | PDPOC | Property Damage |
| ☐ | NAPO | Non-Asbestos Claim Form |
| ☐ | | Amended |

Claim Number _____

| | | |
|---|---|---|
| ☐ | MMPOC | Medical Monitoring Claim Form |
| ☐ | PDPOC | Property Damage |
| ☐ | NAPO | Non-Asbestos Claim Form |
| ☐ | | Amended |

---

## Attorney Information

Firm Number:  00165                Firm Name:   Harter Secrest & Emery LLP

Attorney Number:  00036            Attorney Name:   Craig A Slater

Zip Code:  14202-2293

Cover Letter Location Number:   SR00000920

---

| **Attachments** **Medical Monitoring** | **Attachments** **Property Damage** | **Non-Asbestos** |
|---|---|---|
| ☐ TBD | ☐ TBD | ☐ Other Attachments |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| | ☐ Other Attachments | |

---

| **Other** | ☐ Non-Standard Form | ☒ Amended per Objection |
|---|---|---|
| | ☐ Amended | Original Claim #:  420 |
| | ☐ Post-Deadline Postmark Date | |

Box/Batch: WRBF0053/WRBF0209                    Document Number: WRBF010432



H A R T E R · S E C R E S T & E M E R Y · LLP
ATTORNEYS AND COUNSELLORS

February 4, 2005

**VIA FIRST-CLASS MAIL**
Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace and Co. (Supplemental Information)
P.O. Box 162
Fairbault, Minnesota 55021-1620

**VIA COURIER**
Rust Consulting, Inc.
Claims Processing Agent
Re: W. R. Grace and Co. (Supplemental Information)
201 South Lyndale Avenue
Fairbault, Minnesota 55021

**VIA COURIER**
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601
Attn: Joseph S. Nacca

Re:    In re:  W. R. Grace & Co., et al.
        Chapter 11 Bankruptcy
        Case No. 01-01139 (JKF)

Ladies and Gentlemen:

Enclosed please find the Response of GTE Operations Support, Inc. to Objections to Claims on Basis of Materially Insufficient Supporting Information with respect to the above-captioned matter.

Very truly yours,

H A R T E R ,   S E C R E S T   &   E M E R Y   L L P

Craig A. Slater
DIRECT DIAL: 716/835-4223
E-MAIL: CSLATER@HSELAW.COM

WR Grace    BF.53.209.10432
**00015528**
SR=920

CAS:jp
Enclosure
cc:    Bernadette Miragliotte, Esq. w/encl.
        Robert S. Sanoff, Esq. w/encl.

REC'D FEB 07 2005

TWELVE FOUNTAIN PLAZA,  SUITE 400  BUFFALO, NEW YORK 14202-2293  PHONE: 716-853-1616  FAX: 716-853-1617

ROCHESTER, NEW YORK · BUFFALO, NEW YORK · ALBANY, NEW YORK · NAPLES, FLORIDA · NEW YORK, NEW YORK

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al. | ) | Jointly Administered |

### RESPONSE OF GTE OPERATIONS SUPPORT, INC.
### TO OBJECTIONS TO CLAIMS ON BASIS OF MATERIALLY
### INSUFFICIENT SUPPORTING INFORMATION

GTE OPERATIONS SUPPORT INC., in response to the objections of W. R. Grace & Co., et

al. to GTE Operations Support Inc.'s claim filed in this proceeding hereby files the following

supplemental information:

1.  The name of the claimant is GTE Operations Support Inc. ("GTE").

2.  The original claim number of the claim for which GTE is providing supplemental

information is Claim Number 420.

3.  The name, address, telephone number and fax number of the person with whom

counsel for the Debtors should communicate regarding the claim and who possess authority to

reconcile, settle or otherwise resolve the claim on behalf of claimant is:

> Craig A. Slater
> Harter, Secrest & Emery
> Twelve Fountain Plaza Suite 400
> Buffalo, New York 14202
> (716)-853-1616
> (716)-853-1617

4.  The basis for the amount of claim is as follows: On August 18, 1995, Seneca

Meadows, Inc. ("SMI") and Macedon Homes, Inc. ("MCI")(hereinafter jointly referred to as

**REC'D FEB 07 2005**

"Plaintiffs") brought suit against the GTE Defendants[1] and W. R. Grace & Co. ("Grace") in *Seneca Meadows, Inc. et al v. ECI Liquidating, Inc., et al.,* Civil Action No. 95-CV-6400L (N.D.N.Y.), among others, seeking response costs under the Comprehensive Environmental Response, Recovery and Liability Act ("CERCLA"), 42 U.S.C. 9607(a) and 9613(f) and also seeking damages under several common law theories for costs SMI and MCI allegedly incurred and will incur in remediating the Tantalo Landfill ("Landfill") in Seneca Meadows, New York. Refer to Attachment 2. The current cleanup estimate is $20,000,000.00.

5. It has been alleged that Grace is responsible for contamination at the landfill that was caused prior to the filing of this matter and that continues to date.

6. An Amended Complaint was filed on September 15, 1995. The GTE Defendants filed and served their Answer to the Amended complaint on October 3, 1995, and asserted Cross-Claims against Grace in their Answer on the grounds that Grace and its subsidiary/affiliate corporations (hereinafter "Grace") disposed of waste material at the Landfill that caused a release of hazardous substances resulting in the incurrence of response costs by Plaintiffs. Refer to Attachment 3.

7. It is the waste disposed of by Grace (solvents and chemicals) that is driving the remedy at the Landfill.[2] Therefore, to the extent that the GTE Defendants may be found liable to

---

[1] For purposes of this pleading, the GTE Defendants consist of GTE Corporation, GTE Products Corporation, GTE Sylvania Incorporated, General Telephone and Electronics Corporation, North American Philips Corporation, Osram Sylvania, Incorporated, Philips Electronics North America Corporation, Sylvania Electronic Products, Inc. and Sylvania Electrical Products, Inc. GTE Operations Support, Inc. has agreed to be liable for any judgment against the GTE Defendants. Refer to Attachment No. 1.

[2] DEC records indicate that Evans Chemetics (Grace subsidiary/affiliates) disposed of hazardous waste from its Waterloo manufacturing operations at the Brewer Road inactive hazardous disposal site (DEC Site Code 850001B). Between 1951 and 1958, more than 2000 tons of hazardous wastes may have been disposed of at this site. Reportedly, most of these wastes consisted of off-spec hair care products whose disposal resulted in groundwater contamination from the release of volatile organic compounds . Following the closure of this site in 1958 the wastes from Waterloo manufacturing operations were disposed at the Tantalo Site.

Plaintiff for all or a portion of those cleanup costs, the GTE Defendants are entitled to recovery over from the actual contaminator of the Site, Grace.

8. The case is now scheduled for trial on June 13, 2005. Refer to Attachment 4. At the time of trial, the GTE Defendants will present evidence regarding the allocable share of responsibility for the contamination of the landfill attributable to Grace.

9. This case has been pending for several years and it is likely that the trial will be rescheduled into the future.

WHEREFORE, the GTE Defendants have hereby supplemented their Claim No. 420 with the information currently available with respect to such claim and will further supplement the Claim as events unfold.

DATED:        February 4, 2005

HARTER, SECREST & EMERY LLP

By: _____
    Craig A. Slater, of Counsel
Attorneys for GTE Operations Support, Inc.
Twelve Fountain Plaza
Suite 400
Buffalo, New York 14202-2293
(716) 853-1616

TO:     **By Mail:**
        RUST CONSULTING, INC.
        Claims Processing Agent
        Re:  W. R. Grace and Co. (Supplemental Information)
        P.O. Box 162
        Faribault, Minnesota  55021-1620

        **By Courier:**
        RUST CONSULTING, INC.
        Claims Processing Agent
        Re:  W. R. Grace and Co. (Supplemental Information)
        201 South Lyndale Avenue
        Faribault, Minnesota  55021

                    -    and –

        Kirkland & Ellis LLP
        200 E. Randolph Drive
        Chicago, Illinois 60601
        Attn:  Joseph S. Nacca

1

11-24-98

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Seneca Meadows, Inc.

                        Plaintiff(s)

        v.                                    6:95-cv-06400

ECI Liquidating, Inc

                        Defendant(s)

---

PLEASE take notice of the entry of an ORDER filed on

11/24/98, of which the within is a copy, and entered 11/24/98

upon the official docket in this case.   (Document No. 92 .)

Dated: Rochester, New York
       November 24, 1998

RODNEY C. EARLY, Clerk
U.S. District Court
Western District of New York
2120 U.S. Courthouse
100 State Street
Rochester, New York 14614

Enclosure
TO:
        Robert E. Glanville, Esq.
        Kevin M. Hogan, Esq.
        Terry M. Richman, Esq.
        R. William Stephens, Esq.
        Angela M. Demerle, Esq.
        Philip H. Gitlen, Esq.
        Molly M.A. Brown, Esq.
        Richard A. Palumbo, Esq.
        Craig A. Slater, Esq.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED

————————————————

SENECA MEADOWS, INC. and
MACEDON HOMES, INC.,

        Plaintiffs

vs.

ECI LIQUIDATING, INC., EVANS
CHEMETICS, INC., EVANS CHEMETICS
DIVISION OF HAMPSHIRE CHEMICAL
CORP., EVANS CHEMETICS DIVISION
OF W.R. GRACE & CO., EVANS
CHEMETICS DIVISION OF W.R. GRACE
& CO. - CONN., EVANS RESEARCH
AND DEVELOPMENT CORPORATION, FISHER
BODY DIVISION OF GENERAL MOTORS
CORP., FISHER GUIDE DIVISION OF
GENERAL MOTORS CORP., GTE CORPORATION,
GTE PRODUCTS CORPORATION, GTE SYLVANIA
INCORPORATED, GENERAL TELEPHONE &
ELECTRONICS CORPORATION, NORTH
AMERICAN PHILIPS CORPORATION, OSRAM
SYLVANIA, INC. PHILIPS ELECTRONICS
NORTH AMERICA CORPORATION, SYLVANIA
ELECTRIC PRODUCTS, INC., and SYLVANIA
ELECTRICAL PRODUCTS, INC.,

        Defendants

————————————————

Civil Action No.
95-CV-6400L

**STIPULATION AND
ORDER REGARDING THE
GTE DEFENDANTS**

    IT IS HEREBY STIPULATED AND AGREED by and between defendants GTE

Operations Support Incorporated ("GTEOSI") and GTE CORPORATION, GTE PRODUCTS

CORPORATION, GTE SYLVANIA INCORPORATED, GENERAL TELEPHONE &

ELECTRONICS CORPORATION, NORTH AMERICAN PHILIPS CORPORATION, OSRAM,

SYLVANIA, INC. PHILIPS ELECTRONICS NORTH AMERICA CORPORATION

SYLVANIA ELECTRIC PRODUCTS, INC., SYLVANIA ELECTRICAL PRODUCTS, INC.



(the "GTE Defendants"), and Plaintiffs that, based upon the affirmative representations of GTEOSI that it assumes any liability that could accrue to the GTE defendants in this action, GTEOSI has maintained and will maintain adequate resources to pay any such liability, and that GTEOSI will periodically provide evidence of its ability to pay any such liability, the GTE Defendants and Plaintiffs hereby agree to suspend all litigation activities which relate to any alleged corporate successor relationship between the GTE defendants as a group and any alleged successor relationship between the GTE defendants and GTEOSI.

This Stipulation to suspend litigation activities against the GTE defendants is unilaterally revocable by the GTE defendants or Plaintiffs at their sole discretion.

The GTE defendants, which remain parties to this action under this Stipulation, also remain obligated, as otherwise required under the Federal Rules of Civil Procedure, to respond to discovery, except as to discovery which relates to any alleged corporate successor relationship between or among the GTE defendants themselves or the GTE defendants and GTEOSI.

Date: _Oct. 16, 1998_        UNDERBERG & KESSLER, LLP

By _____

Ronald G. Hull, Esq., of Counsel
Attorneys for Plaintiffs
Seneca Meadows, Inc. and
Macedon Homes, Inc.
1800 Chase Square
Rochester, NY 14604
(716) 258-2838

2

Date: _November 18, 1998_   HARTER, SECREST, & EMERY LLP

By: _____

_Craig A. Slater, Esq., of Counsel_
ATTORNEYS FOR DEFENDANTS, GTE Corporation,
GTE Products Corporation, GTE Sylvania Incorporated,
General   Telehone   &   Electronics   Corporation,   North
American Philips Corporation, Osram Sylvania, Inc.,
Phillips Electronics North America Corporation,
Sylvania Electronic Products, Inc., and Sylvania
Electrical Products, Inc.
One Marine Midland Center, Suite 3550
Buffalo, NY 14203
(716) 856-5400

SO ORDERED: _____ DATED: _November 24, 1998_
Hon. David G. Larimer
U.S.D.C. for the
Western District of New York

3

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORIGINAL
RECEIVED AND FILED
USGC IVDIV POCU

SEP 1 5 1995

BY: _____

SENECA MEADOWS, INC.                               )
1786 Salcman Road                                  )
Waterloo, New York  13165                          )
                                                   )
        and                                        )
                                                   )
MACEDON HOMES, INC.                                )
4400 Nine Mile Point Road                          )
Fairport, New York  14450-8792                     )
                                                   )
                    Plaintiffs,                    )    Civil Action No.
        vs.                                        )    95-CV-6400L
                                                   )
                                                   )    **AMENDED**
ECI LIQUIDATING, INC.                              )    **COMPLAINT**
EVANS CHEMETICS, INC.                              )
EVANS CHEMETICS DIVISION OF HAMPSHIRE              )
    CHEMICAL CORP.                                 )
EVANS CHEMETICS DIVISION OF W.R. GRACE & CO.       )
EVANS CHEMETICS DIVISION OF W.R. GRACE             )
    & CO. - CONN.                                  )
EVANS RESEARCH AND DEVELOPMENT CORPORATION         )
FISHER BODY DIVISION OF GENERAL MOTORS CORP.       )
FISHER GUIDE DIVISION OF GENERAL MOTORS CORP.      )
GTE CORPORATION                                    )
GTE PRODUCTS CORPORATION                           )
GTE SYLVANIA INCORPORATED                          )
GENERAL MOTORS CORPORATION                         )
GENERAL TELEPHONE & ELECTRONICS CORPORATION        )
GOULDS PUMPS, INCORPORATED                         )
GOULDS PUMPS (N.Y.), INC.                          )
HAMPSHIRE CHEMICAL CORP.                           )
NORTH AMERICAN PHILIPS CORPORATION                 )
OSRAM SYLVANIA INC.                                )
PHILIPS ELECTRONICS NORTH AMERICA CORPORATION      )
SALES AFFILIATES, INC.                             )
SYLVANIA ELECTRIC PRODUCTS, INC.                   )
SYLVANIA ELECTRICAL PRODUCTS INC.                  )
W.R. GRACE & CO.                                   )
W.R. GRACE & CO. - CONN.,                          )
                                                   )
                    Defendants.                    )

Plaintiffs, by their attorneys, Underberg & Kessler, LLP, allege as follows:

## I. JURISDICTION AND VENUE

1.    This action is brought pursuant to sections 107, 112 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§9607, 9612 and 9613, the Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., and federal and New York State common law.

2.    Plaintiff Seneca Meadows, Inc. ("SMI") seeks recovery jointly and severally from defendants for response costs which SMI has already incurred and response costs which it will incur in the future, including response costs relating to claims for natural resource damages, as well as common law damages and for injunctive and declaratory relief, and appropriate further relief.  Response costs have been incurred and will be incurred because of contamination at the Tantalo Landfill Site located in the Town of Seneca Falls, New York (the "Tantalo Site") and because of off-site contamination in the surrounding area.

3.    Plaintiff Macedon Homes, Inc. ("MHI") seeks recovery jointly and severally from defendants for contamination of its property, including common law damages and for injunctive and declaratory relief, and appropriate further relief.

4.    This Court has jurisdiction over the federal statutory claims pursuant to sections 107 and 113 of CERCLA, and 28 U.S.C. §1331.  SMI seeks recovery under federal law, specifically 42 U.S.C. §§9607(a), 9612(c) and 9613(f), and federal common law.

5.      This Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to 28 U.S.C. §§2201, 2202 and 42 U.S.C. §9613(g)(2).

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over claims arising under New York common law because those claims arise out of a common nucleus of operative facts shared with the federal causes of action and the federal and state law claims form part of the same case and controversy.

7.      Venue lies in the Western District of New York pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §9613(b) because the Tantalo Site and adjacent properties are located within this judicial district, the acts complained of occurred in this judicial district, and the releases or threatened releases of hazardous substances at and/or from the Tantalo Site and adjacent properties have occurred or threaten to occur within this judicial district. In addition, many of the parties, including SMI, MHI and several defendants, are located within the Western District.

## II. GENERAL ALLEGATIONS

8.      The Tantalo Site is located north of Salcman Road, east of the Waterloo Town Line, west of State Route 414, and south of Black Brook in the Town of Seneca Falls, State of New York. The Tantalo Site is currently owned by SMI. SMI also owns parcels of property adjacent to the Tantalo Site.

9.      The parcel of real property comprising the Tantalo Site is within a larger parcel identified as Tax Map No.30-1-02 in the County of Seneca records.

10.     The MHI property consists of parcels identified as Tax Map Parcel No. 19-1-26.12 and 33-1-72 in the County of Seneca records ("MHI Property").

11.    MHI owns two parcels of real property adjacent to the Tantalo Site. These parcels are located north of North Road, south of Salcman Road, west of State Route 414 and east of Burgess Road and located partially in the Town of Waterloo and partially in the Town of Seneca Falls, State of New York.

12.    The Tantalo Site is listed on the New York State Department of Environmental Conservation's ("DEC's") Registry of Inactive Hazardous Waste Sites as a Class 2 site, designated as Site number 8-50-004.

13.    Upon information and belief, landfilling and other waste disposal practices commenced at the Tantalo Site in approximately 1958 and continued until at least 1974.

14.    Upon information and belief, during this period, hazardous substances, as defined by CERCLA, 42 U.S.C. §9601 (14), were disposed of, treated and/or released at the Tantalo Site, including, but not limited to:

| | |
|---|---|
| ammonium bisulfate | ammonium chloride |
| hydrated iron oxide | waste oil |
| zinc chloride | hydrochloric acid |
| heavy metals | filtercake from thioglycolic acid process |
| nickel | zinc |
| ethanol | methanol |
| acetone | methylmethacrylate |
| chrome | trichloroethylene |
| trichloroethane | perchloroethylene |
| methylene chloride | lead carbonate |
| chlorinated solvents | foundry sand |
| formaldehyde | phenols |
| paint sludge | solvents |
| nickel | kolene sludge (EPA Waste Code D002) |
| chromium | PCBs |
| wastewater treatment sludge | $NH_4Cl$ |
| $NH_4HSO_4$ | |

15.    Defendants have:

(i)    generated and/or arranged for disposal or treatment of hazardous

substances at the Tantalo Site; and/or

(ii)    arranged with a transporter for transport and disposal·or treatment at

the Tantalo Site of hazardous substances owned, possessed and/or

generated by defendants; and/or

(iii)    transported hazardous substances to the Tantalo Site for disposal or

treatment and participated in the selection of the Tantalo Site for such

disposal or treatment.

16.    SMI entered into a Consent Order with DEC, dated August 19, 1992. The

Consent Order establishes the terms and conditions of the remedial investigation and

feasibility study ("RI/FS") at the Tantalo Site. The Consent Order requires, among other

things, that SMI fund the RI/FS at the Tantalo Site.

17.    Upon information and belief, defendants were notified by DEC that they are

potentially responsible parties ("PRPs") at the Tantalo Site.

18.    Results of on-site and off-site investigations indicate that various hazardous

substances, including but not limited to VOCs, trichloroethylene, 1,2 - dichloroethylene,

vinyl chloride, benzene, chloroethane, xylene and various inorganic substances/metals are

present in the groundwater at the Tantalo Site and in the groundwater beneath the

surrounding area including in the area of the MHI Property. These substances are

"hazardous substances" as defined by CERCLA, 42 U.S.C. §9601(14).

19.    Each of the defendants is a "person" as defined in CERCLA, 42 U.S.C.

§9601(21).

20.   Releases or threatened releases of hazardous substances, as defined by CERCLA, 42 U.S.C. §9601(22), have occurred and/or are occurring at the Tantalo Site and the surrounding area.

21.   The hazardous substances released or threatened to be released from the Tantalo Site have commingled to produce an indivisible harm.

22.   Upon information and belief, some of the releases or threatened releases of hazardous substances may have been sudden and accidental.

23.   The Tantalo Site is a "facility" as defined in CERCLA, 42 U.S.C. §9601(9).

24.   As a result of the defendants' acts and of the release or threatened release of hazardous substances, SMI has incurred over $1,597,329.00 in response costs, and will continue to incur future response costs at the Tantalo Site, which, upon information and belief, may exceed $20,000,000.00. All response costs have been and will continue to be necessary and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP"), 40 C.F.R. Part 300 and the applicable New York State regulations. All response costs are recoverable by SMI pursuant to CERCLA, 42 U.S.C. §9607(a) and/or §9613.

25.   In addition, SMI has suffered damages pursuant to New York law, including loss in value of its property at and in the vicinity of the Tantalo Site, loss of use and enjoyment of its property at and in the vicinity of the Tantalo Site, costs to respond to and investigate the contamination, and additional damages pursuant to the causes of action herein. SMI will continue to suffer these and similar damages in the future.

26.   MHI has suffered damages pursuant to New York law, including loss in value of the MHI Property, loss of use and enjoyment of the MHI Property, and additional

damages pursuant to the causes of action herein. MHI will continue to suffer these and similar damages in the future.

27.    Upon information and belief, defendants have taken no response action at the Tantalo Site and have incurred no response costs at the Tantalo Site. Defendants have not reimbursed SMI or MHI for response costs or damages incurred.

### III. PARTIES

**Plaintiffs**

28.    Plaintiff SMI was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1786 Salcman Road in the Town of Seneca Falls, State of New York.

29.    Plaintiff MHI was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 4400 Nine Mile Point Road in the Village of Fairport, State of New York.

**Defendants**

#### A.    ECI LIQUIDATING, INC. and EVANS CHEMETICS, INC.

30.    Upon information and belief, ECI Liquidating, Inc. ("ECI") was formerly named Evans Chemetics, Inc. ("Evans") (collectively "ECI/Evans").

31.    ECI/Evans was and is a corporation organized and existing under the laws of the State of New York.

32.    Upon information and belief, ECI/Evans owned and operated manufacturing/industrial plants at 228 East Main Street in the Village of Waterloo, State

of New York and in the Town of Geneva, State of New York ("Evans Plants").  Upon
information and belief:

    a.    ECI/Evans was and is a person within the meaning of CERCLA.

    b.    ECI/Evans arranged for disposal or treatment of hazardous
substances at the Tantalo Site, or arranged with a transporter for
transport and disposal or treatment of hazardous substances at the
Tantalo Site for the period at least from 1958 to 1974.

    c.    The hazardous substances were generated, owned and/or possessed
by ECI/Evans and resulted from various ECI/Evans activities
including, but not limited to manufacturing/industrial and other
operations at the Evans Plants.

    d.    ECI/Evans generated, owned, possessed, and/or arranged for
disposal at the Tantalo Site of hazardous substances, including but
not limited to filtercake from thioglycolic acid process; ammonium
bisulfate; ammonium chloride; wastewater treatment sludge; $NH_4Cl$
and $NH_4HSO_4$; hydrated iron oxide; waste oil; zinc chloride;
hydrochloric acid; nickel; and zinc.

    e.    ECI/Evans transported hazardous substances to the Tantalo Site for
disposal or treatment.

    f.    ECI/Evans selected the Tantalo Site for disposal of hazardous
substances.

    33.    ECI/Evans is liable under CERCLA as a generator, arranger and transporter
of hazardous substances to the Tantalo Site.

### B.    SALES AFFILIATES, INC. and EVANS RESEARCH AND DEVELOPMENT CORPORATION.

34.    Upon information and belief, Sales Affiliates, Inc. was formerly named Evans Research and Development Corporation (collectively "Sales Affiliates").

35.    Sales Affiliates was and is a corporation organized and existing under the laws of the State of New York with its principal place of business at 90-100 Tokemeke Road, Darien, CT 06820.

36.    Sales Affiliates was and is a person within the meaning of CERCLA.

37.    Upon information and belief, at all material times, Sales Affiliates was the parent corporation of ECI/Evans, owning all of ECI/Evans' stock.

38.    Upon information and belief, Sales Affiliates dominated and controlled ECI/Evans, had the authority to control ECI/Evans' waste disposal practices and ECI/Evans' financial affairs, and in fact exercised this control.

39.    Upon information and belief, Sales Affiliates was in fact the alter ego of ECI/Evans.

40.    As a result, Sales Affiliates was a controlling parent of ECI/Evans at the time of disposal of hazardous substances at the Tantalo Site, and is liable for ECI/Evans' activities under CERCLA and federal and New York State common law.

### C.    W.R. GRACE & CO., W.R. GRACE & CO. - CONN. and EVANS CHEMETICS DIVISIONS

41.    Upon information and belief, W.R. Grace & Co. and/or W.R. Grace & Co. - Conn. conducted operations through their Evans Chemetics Divisions.

42.    Defendant W.R. Grace & Co. was and is a corporation organized and existing under the laws of the State of New York with a principal place of business at One Town Center Road, Boca Raton, Florida and defendant W.R. Grace & Co.-Conn. was and is a corporation organized and existing under the laws of the State of Connecticut with a principal place of business at One Town Center Road, Boca Raton, Florida (The foregoing entities, along with their Evans Chemetics Divisions, collectively are referred to as "W.R. Grace").

43.    W.R. Grace was and is authorized to do business in the State of New York.

44.    W.R. Grace was and is a person within the meaning of CERCLA.

45.    Upon information and belief, W.R. Grace acquired the ECI/Evans business in 1978, including all of the assets and operations at the Evans' Plants. Upon information and belief, the acquisition was completed through the issuance of W.R. Grace common stock in exchange for ECI/Evans stock and/or assets.

46.    Upon information and belief, W.R. Grace obtained and continued to operate the ECI/Evans business. Upon information and belief, W.R. Grace retained ECI/Evans' employees, acquired all of ECI/Evans' assets including real property, equipment, machinery, inventory, supplies, records, customer lists, and contracts, continued ECI/Evans' business operations in the same manner as ECI/Evans, maintained the ECI/Evans name, and otherwise succeeded to the ECI/Evans business, including operations at the Evans Plants.

47.    As a result of the foregoing, W.R. Grace is the successor in interest to ECI/Evans, and is liable for ECI/Evans' activities as a successor in interest under CERCLA and federal and New York State common law.

48.    Upon information and belief, when W.R. Grace later divested itself of the ECI/Evans business and ECI/Evans Plants, W.R. Grace agreed to retain environmental liabilities for ECI/Evans' past activities.

### D.    HAMPSHIRE CHEMICAL CORP. and ITS EVANS CHEMETICS DIVISION

49.    Upon information and belief, Hampshire Chemical Corp. conducted operations through its Evans Chemetics Division (collectively "Hampshire Chemical").

50.    Upon information and belief, Hampshire Chemical was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 55 Hayden Ave., Lexington, Massachusetts 02173.

51.    Hampshire Chemical owns and operates one of the former Evans Plants at 228 East Main Street in the Village of Waterloo, State of New York.

52.    Hampshire Chemical was and is a person within the meaning of CERCLA.

53.    Hampshire Chemical is authorized to do business in the State of New York.

54. .    Upon information and belief, Hampshire Chemical acquired the Evans business in 1993 from W.R. Grace, including all of the assets and operations at the Evans Plants in Waterloo.

55.    Upon information and belief, Hampshire Chemical obtained and continued to operate the ECI/Evans business. Upon information and belief, Hampshire Chemical retained ECI/Evans employees, continued the ECI/Evans business operations, maintained the Evans name, continued with the same management personnel, and otherwise succeeded to the ECI/Evans business.

56.    As a result, Hampshire Chemical is the successor in interest to W.R. Grace/ECI/Evans, and is liable for ECI/Evans' activities as a successor in interest under CERCLA and federal and New York State common law.

### E.    THE SYLVANIA DEFENDANTS

57.    Upon information and belief, OSRAM Sylvania Inc. is a successor to and/or is in fact the same entity as one or more of the following: Sylvania Electrical Products, Inc.; Sylvania Electric Products Inc.; GTE Sylvania Incorporated; and GTE Products Corporation (OSRAM Sylvania Inc. and the foregoing entities are collectively referred to as the "Sylvania Defendants").

58.    The Sylvania Defendants were and are corporations organized and existing under the laws of the State of Delaware with a common principal place of business at 100 Endicott Street, Danvers, Massachusetts.

59.    The Sylvania Defendants are authorized to do business in the State of New York.

60.    Upon information and belief, the Sylvania Defendants formerly owned and operated a manufacturing/industrial plant on Johnston Street in Seneca Falls, New York (the "Sylvania Plant"). Upon information and belief:

        a.    The Sylvania Defendants were and are persons within the meaning of CERCLA.

        b.    The Sylvania Defendants arranged for disposal or treatment of hazardous substances at the Tantalo Site, or arranged with a

transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site during the period 1958 to 1974.

c.    The hazardous substances were generated, owned and/or possessed by the Sylvania Defendants and resulted from various Sylvania Defendants' activities including, but not limited to manufacturing and other operations at the Sylvania Plant located in Seneca Falls, New York.

d.    The Sylvania Defendants generated, owned, possessed and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to ethanol, methanol, acetone, methylmethacrylate, chrome, waste oil, trichloroethylene, trichloroethane, perchloroethylene, methylene chloride, lead carbonate and chlorinated solvents.

e.    The Sylvania Defendants transported hazardous substances to the Tantalo Site for disposal or treatment.

f.    The Sylvania Defendants selected the Tantalo Site for disposal of hazardous substances.

61.    The Sylvania Defendants are liable under CERCLA as generators, arrangers, and transporters of hazardous substances to the Tantalo Site.


## F.  GTE CORPORATION and GENERAL TELEPHONE & ELECTRONICS CORPORATION

62.    Upon information and belief, defendant GTE Corporation was formerly named General Telephone & Electronics Corporation (collectively "GTE Corp.").

63.    GTE Corp. was and is a corporation organized and existing under the laws of the State of New York with its principal place of business at One Stamford Forum, Stamford, CT 06904.

64.    GTE Corp. was and is a person within the meaning of CERCLA.

65.    Upon information and belief, one or more of the Sylvania Defendants were wholly owned subsidiaries of GTE Corp. at the time that one or more of the Sylvania Defendants' hazardous substances were disposed at the Tantalo Site.

66.    Upon information and belief, GTE Corp. dominated and controlled one or more of the Sylvania Defendants, had the authority to control one or more of the Sylvania Defendants' waste disposal practices and financial affairs, and in fact exercised this control.

67.    Upon information and belief, GTE Corp. was in fact the alter ego of one or more of the Sylvania Defendants.

68.    As a result, GTE Corp. was a controlling parent of one or more of the Sylvania Defendants at the time of disposal of hazardous substances at the Tantalo Site, and is liable for the activities of one or more of the Sylvania Defendants and their predecessors under CERCLA and federal and New York State common law.

### G.    PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and NORTH AMERICAN PHILIPS CORPORATION

69.    Upon information and belief, Philips Electronics North America Corporation was formerly named North American Philips Corporation (collectively "Philips").

70.    Philips was and is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 100 East 42nd Street, New York, New York.

71.    Upon information and belief, Philips owns and operates the former Sylvania Plant at 50 Johnston Street, Seneca Falls, New York.

72.    Philips is authorized to do business in the State of New York.

73.    Philips was and is a person within the meaning of CERCLA.

74.    Upon information and belief, Philips acquired all of the assets and operations of the Sylvania Defendants at the Seneca Falls industrial facility and operations, including the Sylvania Plant.

75.    Upon information and belief, Philips retained the Sylvania Defendants' employees, continued the business operations, and otherwise succeeded to the Sylvania Defendants' business.

76.    As a result, Philips is the successor in interest to the Sylvania Defendants and their predecessors, and is liable for the activities of Sylvania Defendants and their predecessors as a successor in interest under CERCLA and federal and New York State common law.

H.    GOULDS PUMPS, INCORPORATED and GOULDS PUMPS (N.Y.), INC.

77.    Goulds Pumps, Incorporated is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 240 Falls Street, Seneca Falls, New York and Goulds Pumps (N.Y.), Inc. is a corporation organized

and existing under the laws of the State of New York with the same principal offices and same address (collectively "Goulds Pumps").

78.    Goulds Pumps was and is authorized to do business in the State of New York.

79.    Upon information and belief, at all relevant times, Goulds Pumps owned and operated  manufacturing/industrial facilities at Falls Street in the Village of Seneca Falls ("Goulds Plant").  Upon information and belief:

a.    Goulds Pumps was and is a person within the meaning of CERCLA.

b.    Goulds Pumps arranged for disposal or treatment of hazardous substances at the Tantalo Site, or arranged with a transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site during the period at least from 1965 to 1974.

c.    The hazardous substances were generated, owned and/or possessed by Goulds Pumps and resulted from various Goulds Pumps' activities including but not limited to manufacturing operations at the Goulds Plant.

d.    Goulds Pumps generated, owned, possessed and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to foundry sand, formaldehyde, phenols and paint sludge.

e.    Goulds Pumps transported hazardous substances to the Tantalo Site for disposal or treatment.

f.    Goulds Pumps selected the Tantalo Site for disposal of hazardous substances.

80.    Goulds Pumps is liable under CERCLA as a generator, arranger and transporter of hazardous substances at the Tantalo Site.

## I.    GENERAL MOTORS CORPORATION and
## FISHER GUIDE- FISHER BODY DIVISIONS

81.    Upon information and belief, General Motors Corporation conducted/conducts operations through its Fisher Guide and/or Fisher Body Divisions (collectively "GM").

82.    Upon information and belief, GM was and is a corporation organized and existing under the laws of the State of Delaware with a place of business at 1000 Town Line Road in Syracuse, New York.

83.    GM was and is authorized to do business in the State of New York.

84.    Upon information and belief, at all relevant times, GM owned and operated an industrial facility located at 1000 Town Line Road in Syracuse, New York ("Fisher Guide Plant"). Upon information and belief:

    a.    GM was and is a person within the meaning of CERCLA.

    b.    GM has arranged for disposal or treatment of hazardous substances at the Tantalo Site, or has arranged with a transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site from various GM activities including, but not limited to operations at the Fisher Guide Plant for the period including 1973 and 1974.

    c.    The hazardous substances disposed at the Tantalo Site were generated, owned and/or possessed by GM.

    d.    GM generated, owned, possessed and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to

paint sludge, various heavy metals, kolene sludge (EPA Waste Code

D002), solvents, nickel, chromium, PCBs and treatment sludge.

85.    GM is liable under CERCLA as a generator and arranger for disposal of

hazardous substances at the Tantalo Site.

### IV. FIRST CLAIM FOR RELIEF, UNDER CERCLA §107

86.    Plaintiff SMI incorporates and realleges as though fully set forth herein the

allegations appearing in paragraphs "1" through "85" of this Complaint.

87.    As a result of the release or threatened release of hazardous substances at

the Tantalo Site, SMI has incurred response costs in an amount of at least $1,597,329.00

and will incur additional response costs in the future which, upon information and belief,

may exceed $20,000,000.00.

88.    The response costs incurred and to be incurred by SMI are necessary and

consistent with the NCP and the appropriate New York regulations.

89.    Pursuant to CERCLA, 42 U.S.C. §§9601(32) and 9607(a)(1)-(4), defendants,

as "covered persons", or as successors in interest or controlling parents of covered

persons, are strictly, jointly and severally liable to SMI for all response costs incurred and

to be incurred by SMI in response to the release or threatened release of hazardous

substances at and from the Tantalo Site.

### V. SECOND CLAIM FOR RELIEF, UNDER CERCLA §113

90.    Plaintiff SMI incorporates and realleges as though fully set forth herein the

allegations appearing in paragraphs "1" through "89" of this Complaint.

91. SMI has incurred and will continue to incur response costs in connection with the Tantalo Site in excess of its true equitable share of responsibility for contamination at the Tantalo Site.

92. The response costs incurred and to be incurred by SMI are necessary and consistent with the NCP and the appropriate New York regulations.

93. Upon information and belief, defendants have incurred no response costs and have not paid their true equitable shares of response costs for the Tantalo Site.

94. Pursuant to CERCLA, 42 U.S.C. §§9601(32), 9613(f), and 9607, defendants are liable in contribution to SMI for all response costs incurred and to be incurred by SMI, to the extent that such response costs incurred by SMI are in excess of SMI's true equitable share.

## VI.   THIRD CLAIM FOR RELIEF, FOR DECLARATORY JUDGMENT

95. Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "94" of this Complaint.

96. An actual, substantial, legal controversy now exists between SMI and defendants based upon defendants' obligation to reimburse SMI for its past and future costs of response resulting from or arising out of the release(s) which occurred and which may occur at the Tantalo Site for which the defendants are strictly, jointly and severally liable under CERCLA.

97. A declaratory judgment defining the future obligations of the parties will prevent the need for multiple lawsuits as SMI incurs response costs and other damages

in the future and will provide a final resolution of the issue between the parties regarding liability for such costs and damages.

98.    A declaratory judgment will further the public interest by ensuring an environmentally proper response and by ensuring that SMI will be reimbursed for necessary response costs incurred.

99.    SMI is entitled to a declaratory judgment stating that defendants are legally responsible for the future response costs incurred by SMI in connection with the release or threatened release of hazardous substances at and in the vicinity of the Tantalo Site pursuant to 28 U.S.C. §2201.

## VII.    FOURTH CLAIM FOR RELIEF, UNDER CERCLA §112

100.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "99" of this Complaint.

101.    DEC has rights, claims and causes of action against defendants, including but not limited to claims under CERCLA §107, New York Environmental Conservation Law and other applicable law.

102.    Defendants, as liable parties under CERCLA, New York Conservation Law and other applicable law, have obligations to DEC to investigate and remediate the contamination, releases and/or threatened releases of hazardous substances at the Tantalo Site, and to compensate DEC for costs it incurs.

103.    SMI has paid "compensation" to DEC in the amount of $71,909.00, pursuant to the Consent Order entered into between SMI and DEC, including compensation to DEC

for oversight costs, other DEC expenses, and other response costs resulting from the release or threatened release of hazardous substances at the Tantalo Site.

104.    SMI has incurred response costs in investigating and responding to the contamination, releases and/or threatened releases of hazardous substances at the Tantalo Site.

105.    SMI is a "person" within the meaning of CERCLA.

106.    DEC is a "claimant" within the meaning of CERCLA.

107.    Pursuant to CERCLA §112(c), 42 U.S.C. §9612(c), SMI is subrogated to all rights, claims and causes of action that DEC has against defendants under CERCLA, New York Environmental Conservation Law and other applicable law.

108.    As subrogee, SMI is entitled to: (i) reimbursement from defendants of all response costs and oversight costs which SMI has paid to DEC and will continue to pay to DEC, plus attorney's fees and other costs; (ii) reimbursement from defendants of any other response costs incurred by SMI as compelled by or in connection with the Consent Order or any other investigation or response activities at the Tantalo Site or nearby properties; and (iii) reimbursement from defendants of any other costs that SMI has incurred or will in the future incur as compelled by or in connection with the Consent Order or other orders and agreements with DEC to conduct other response activities in connection with the Tantalo Site.


## VIII.    FIFTH CLAIM FOR RELIEF, FOR NEGLIGENCE

109.    Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "108" of this Complaint.

110. At all relevant times, defendants knew or should have known of the hazardous nature of the hazardous substances and wastes used, generated, disposed at, handled, transported to or otherwise present at the Tantalo Site in connection with each defendants' operations.

111. At all relevant times, defendants knew or should have known of the potential for a release of hazardous substances or waste to the environment at the Tantalo Site and to nearby properties including the MHI Property.

112. Defendants, as generators of hazardous substances or waste disposed of at the Tantalo Site and/or as transporters of hazardous substances or waste to the Tantalo Site, owed a duty to SMI and MHI to act and/or to require others to act in a safe and reasonable manner in treating, storing, disposing, transporting and handling the hazardous substances or waste. This duty extended to: (i) taking precautions in order to prevent a release of hazardous substances or waste at the Tantalo Site, (ii) preventing any releases of hazardous substances or waste from migrating at or from the Tantalo Site, (iii) limiting the risk of danger, loss and liability faced by SMI, MHI and/or their employees due to the presence of hazardous substances and wastes at the Tantalo Site and nearby properties and (iv) containing, remediating or otherwise addressing the contamination at the Tantalo Site and nearby properties.

113. The acts or omissions of defendants with regard to the hazardous substances or wastes at the Tantalo Site were unreasonable, negligent, wanton, reckless and in total disregard for the safety, welfare and health of SMI, the Tantalo Site and nearby properties including the MHI Property, SMI's and MHI's employees, the general public and the environment.

114.   Defendants breached the above duties to SMI and MHI, resulting in the discharge, release, and/or migration of hazardous substances and wastes to the environment and further resulting in contamination of and damage to the Tantalo Site and nearby properties, including MHI Property.

115.   As a result of the foregoing, SMI has incurred expenses in the investigation and cleanup of the Tantalo Site, has suffered a decline in the fair market value of its property both at and in the vicinity of the Tantalo Site, and will incur additional expenses, losses, costs and damages in the future.

116.   As a result of the foregoing, MHI has suffered a decline in the fair market value of the MHI Property, and will incur additional expenses, losses, costs and damages in the future.

117.   By reason of the foregoing, SMI and MHI are entitled to compensatory damages in an amount which will compensate SMI and MHI for their losses and other damage, and a declaration of defendants' liability for future losses and damages incurred.

### IX.   SIXTH CLAIM FOR RELIEF, FOR UNJUST ENRICHMENT

118.   Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "117" of this Complaint.

119.   Defendants, as liable parties under CERCLA, New York Environmental Conservation Law and other applicable law, have obligations to DEC to investigate and remediate the contamination, releases and/or threatened releases of hazardous substances at the Tantalo Site, and to compensate DEC for costs it incurs.

120.   SMI has incurred and will continue to incur losses and future additional expenses in the investigation and cleanup of the Tantalo Site and nearby properties, and will incur additional expenses, losses and costs in the future due to the individual and collective acts or omissions of defendants which resulted in the leaking, spilling, discharging and releasing of various hazardous substances and wastes into the environment at the Tantalo Site and/or the migration of those substances at the Tantalo Site and nearby properties.

121.   Defendants have been unjustly enriched to the extent that:

(i)     SMI has paid for the above-described investigation and analysis,

(ii)    SMI has paid for the provision of alternate water supplies in the area, and

(iii)   SMI may be required to pay in the future for additional investigation, remediation and response at the Tantalo Site and nearby properties as a result of the conduct of defendants.

122.   SMI may be compelled in the future to further investigate and remediate the Tantalo Site and nearby properties as a result of contamination caused by hazardous substances and wastes which were spilled, discharged, leaked or released at the Tantalo Site.

123.   SMI has discharged and continues to discharge a liability that is equitably attributable to defendants as a result of the conduct alleged herein.

124.   SMI is entitled to compensation for all previous and future losses and damages in connection with the Tantalo Site and nearby properties.

## X.    SEVENTH CLAIM FOR RELIEF, FOR RESTITUTION

125.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "124" of this Complaint.

126.    SMI has expended and will be required to expend money to correct and remedy the contaminated conditions at the Tantalo Site and nearby properties pursuant to CERCLA and other applicable law.  These contaminated conditions were caused by the conduct of defendants as alleged herein.

127.    SMI has expended money on behalf of the legal obligations of defendants to investigate, evaluate, contain, and remove the contamination at the Tantalo Site and nearby properties.

128.    Pursuant to common law principles of restitution, defendants are required, but have failed, to reimburse SMI for the costs and expenses incurred by SMI.

## XI.    EIGHTH CLAIM FOR RELIEF, FOR CONTRIBUTION

129.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "128" of this Complaint.

130.    New York CPLR §1401 provides that if two or more persons are subject to liability for damages for the same injury to property, one person may claim contribution from the other whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

131.    As a direct and proximate result of the acts or omissions of defendants, SMI has incurred and will in the future incur costs for investigation, evaluation, containment,

removal and remediation of the Tantalo Site and nearby properties due to releases of hazardous substances or wastes into the soil, water and air at the Tantalo Site.

132.   SMI is entitled to complete indemnification and/or contribution from defendants pursuant to CPLR §1401 for all necessary costs of response, as well as expenses and disbursements.

133.   Although SMI believes that it is entitled to complete indemnification and/or contribution, if it is determined that SMI is not entitled to complete indemnification and/or contribution, SMI seeks judgment in the amount of the equitable shares of liability attributable to defendants.

## XII.   NINTH CLAIM FOR RELIEF, FOR PRIVATE NUISANCE

134.   Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "133" of this Complaint.

135.   Defendants, as a result of the foregoing, individually and collectively have unreasonably interfered with and invaded SMI's interest in the use and enjoyment of the Tantalo Site and nearby properties owned by SMI by virtue of creating or contributing to the past and continuing release, migration and movement of the hazardous substances and wastes into the environment at the Tantalo Site and the nearby properties.

136.   Defendants, as a result of the foregoing, individually and collectively have unreasonably interfered with and invaded MHI's interest in the use and enjoyment of the MHI Property by virtue of creating or contributing to the past and continuing release, migration and movement of the hazardous substances and wastes into the environment at the Tantalo Site and the nearby properties including the MHI Property.

137. As a result of the intentional, reckless, wanton, negligent and/or ultrahazardous conduct of defendants, the hazardous substances or wastes have discharged or migrated into the soil, air and water at the Tantalo Site and nearby properties including the MHI Property, and threaten to continue to do so for the foreseeable future resulting in an ongoing interference.

138. Such migration and movement of the hazardous substances and wastes at the Tantalo Site and nearby properties, including the MHI Property, constitutes a private nuisance.

139. Defendants are jointly and severally liable to SMI and MHI for all costs in connection with the abatement of the nuisance as well as damages for all losses incurred and to be incurred by SMI and MHI.

140. Upon information and belief, plaintiffs are suffering irreparable harm because of the nuisance and have no adequate remedy at law.

141. Defendants must be enjoined to abate the continuing nuisance.

### XIII.    TENTH CLAIM FOR RELIEF, FOR PUBLIC NUISANCE

142. Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "141" of this Complaint.

143. Defendants, as a result of the foregoing, created or participated in the creation of the hazardous substance contamination at the Tantalo Site and nearby properties, including contamination of the groundwater of the State of New York. The contamination poses a danger to public health and the environment, and thereby, constitutes a public nuisance.

144.   SMI has suffered special damage in the form of the losses described above as a result of its ownership of the Tantalo Site and the nearby properties.

145.   MHI has suffered special damage in the form of the losses described above as a result of its ownership of properties adjacent to the Tantalo Site.

146.   Upon information and belief, plaintiffs are suffering irreparable harm because of the nuisance and have no adequate remedy at law.

147.   Defendants must be enjoined to abate the continuing nuisance.

148.   Defendants are jointly and severally liable to SMI and MHI for all costs and damages incurred and to be incurred in responding to the nuisance.

## XIV.   ELEVENTH CLAIM FOR RELIEF, FOR STRICT LIABILITY

149.   Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "148" of this Complaint.

150.   Upon information and belief, the generation, handling, use, storage, treatment, transportation and disposal of hazardous substances by defendants constituted the use of such materials and the Tantalo Site in a dangerous and inherently noxious manner.

151.   Upon information and belief, the foregoing created an abnormally or unreasonably dangerous and noxious condition, and resulted in a potential hazard to human health and the environment due to the release of such materials into the environment.

152.  Under New York law, defendants are strictly liable for damages caused by their activities in utilizing, handling, storing, treating or disposing of such hazardous materials in such a manner.

153.  Upon information and belief, the handling, storage, use, transportation and disposal of hazardous chemicals, substances and wastes created a high degree of risk of harm to persons, land or chattels of others, including that of SMI and MHI, and such harm was likely to be significant.

154.  Upon information and belief, none of the defendants has taken any response action or incurred any response costs in connection with the Tantalo Site or nearby properties.

155.  By reason of the foregoing, defendants are strictly liable to SMI and MHI for the losses and any future damages flowing from defendants' abnormally dangerous activities at the Tantalo Site.

## XV.  TWELFTH CLAIM FOR RELIEF, FOR TRESPASS

156.  Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "155" of this Complaint.

157.  Upon information and belief, the movement, seepage, flow, and migration of hazardous substances and waste, at the Tantalo Site and nearby properties, including the MHI Property, was the inevitable, direct, and foreseeable result of defendants' intentional acts or the acts of its agents or employees described herein.

158.   The foregoing conduct constitutes direct interference with the rights of SMI and MHI to exclusive possession of their property, and to their subsurface and groundwater rights.

159.   Defendants are liable to SMI and MHI in trespass for the resulting damages caused by defendants' conduct.

160.   Upon information and belief, SMI and MHI are suffering irreparable harm as a result of the trespass and have no adequate remedy at law.

161.   Defendants must be enjoined to cease the trespass on plaintiffs' property.

### XVI.    THIRTEENTH CLAIM FOR RELIEF, FOR CONTRACTUAL INDEMNITY (vs. ECI, SALES AFFILIATES, W.R. GRACE & HAMPSHIRE CHEMICAL)

162.   Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "161" of this Complaint.

163.   Upon information and belief, Tantalo Construction, Inc. duly entered into a written contract on or about November, 1973 (the "Contract") with Evans for the disposal at the Tantalo Site of certain wastes generated by Evans.

164.   Upon information and belief, paragraph "11" of the Contract provided that Evans would

> "hold harmless and indemnify Tantalo [Construction, Inc.] from and against any claim, cause of action, law suit or demand brought against the sanitary landfill operation and arising out of or relating to the sludge deposits or drum contents of Evans materials, upon the condition that Tantalo deal with these

materials in conformance with acceptable sanitary landfill

practices."

165.    Upon information and belief, pursuant to the Contract with Evans, solid

wastes, including but not limited to sludge deposits and drum contents produced by and

belonging to Evans were disposed at the Tantalo Site.

166.    Upon information and belief, Tantalo Construction, Inc. disposed of these

solid waste materials "in conformance with acceptable sanitary landfill practices."

167.    Upon information and belief, SMI has the right to enforce the foregoing

Contract against Evans and its successors, assign, controlling parents, and related entities.

168.    SMI has expended money in the investigation and clean-up of the Tantalo

Site and will incur additional expenses in the future. These expenses arise out of, and

relate to, solid wastes disposed of pursuant to the Contract including sludge deposits and

drum contents. None of these expenses have been paid by Evans.

169.    As described in paragraphs "30" through "56" above, ECI, Sales Affiliates,

Inc., W.R. Grace and Hampshire Chemical are successors to and/or former parents of

and/or the same entity as Evans and are responsible for Evans' liability under the Contract.

170.    By reason of the above, SMI is entitled under the Contract to indemnification

and reimbursement from ECI/Evans, Sales Affiliates, W.R. Grace, and Hampshire

Chemical for all of SMI's losses arising out of, or relating to, the sludge deposits or drum

contents of Evans' materials/waste disposed of at the Tantalo Site.

WHEREFORE, plaintiffs request that the Court enter judgment on each claim against each defendant as set forth below.

a.    On the First Claim for Relief, judgment against all defendants jointly and severally awarding SMI its response costs, plus interest, reasonable attorney fees and costs;

b.    On the Second Claim for Relief, judgment declaring and allocating each defendants' equitable share of past and future response costs, including costs related to natural resource damage claims, and awarding to SMI from all defendants, all response costs SMI has incurred and will incur above its equitable share;

c.    On the Third Claim for Relief, judgment against all defendants declaring that defendants are jointly and severally liable to SMI for response costs, including costs related to natural resource damage claims, which SMI has incurred and will incur in the future;

d.    On the Fourth Claim for Relief, judgment against all defendants awarding to SMI, as subrogee to DEC, all damages, response costs, attorney's fees, and other relief that DEC is entitled to pursuant to state and federal law; and

e.    On the Fifth and Eleventh Claims for Relief, judgment against all defendants awarding to plaintiffs SMI and MHI compensatory damages in an amount representing the expenses, costs, damages, and losses sustained by SMI and MHI as a proximate result of the wrongful conduct of defendants, including a declaration of defendants' liability for future damages to be incurred by plaintiffs;

f.     On the Sixth Claim for Relief, judgment against all defendants awarding to SMI compensatory damages and/or indemnification of all losses and other costs associated with SMI's response to the release of hazardous substances and wastes at the Tantalo Site;

g.     On the Seventh Claim for Relief, judgment against all defendants awarding to SMI full restitution of all costs incurred by SMI;

h.     On the Eighth Claim for Relief, judgment against all defendants awarding to SMI complete indemnification and/or contribution, or in the alternative, contribution representing the share of culpability of the defendants;

i.     On the Ninth and Tenth Claims for Relief, judgment against all defendants for an injunction requiring defendants to abate the nuisance at the Tantalo Site and nearby properties, and awarding damages to plaintiffs SMI and MHI as a result of the nuisance, including a declaration of defendants' liability for future damages to be incurred by plaintiffs;

j.     On the Twelfth Claim for Relief, judgment against all defendants for an injunction requiring defendants to abate the continuing trespass and awarding damages to plaintiffs SMI and MHI as a result of defendants' trespass, including a declaration of defendants' liability for future damages to be incurred by plaintiff;

k.     On the Thirteenth Claim for Relief, judgment against defendants, ECI/Evans, Hampshire Chemical, Sales Affiliates and W.R. Grace awarding to SMI damages including the response costs and other costs incurred by SMI in connection with Evans Chemetics waste, and a declaration of the

aforementioned defendants' obligations to indemnify SMI for any future

damages and/or costs incurred; and

I.    For such other and further relief as this Court deems just and proper.


Dated:      September 15, 1995
            Rochester, New York

                        UNDERBERG & KESSLER, LLP


            By:    Terry M. Richman, Esq.
                   Attorneys for Plaintiffs
                        Seneca Meadows, Inc.
                        Macedon Homes, Inc.
                   1800 Chase Square
                   Rochester, New York  14614
                   (716) 258-2800

2/3/2005

# Time Detail

*Page* 1

**Carol Heckman (761)**
for the Period 01/30/2005 Through 01/30/2005

| | | | | | Date | By User |
|---|---|---|---|---|---|---|
| Date | 1/30/2005 | | | Created | 2/2/2005 | parzynsl |
| Client | 91326 | Erie, County of | | Modified | 2/3/2005 | parzynsl |
| Case | 000004 | Clark, Frank | | Released | 2/3/2005 | parzynsl |
| Activity | A999 | Default Activity Code | | Transferred | | |
| Task | | | | | | |
| Time | 5.00 | Billable | Released | | | |
| Note | | | | | | |
| Comment | | | | | | |

**Total for the Selected Period  5.00**

1

**Time Analysis** *Page* 1

### Carol Heckman (761)
### for the Period 01/01/2005 Through 01/31/2005

| Date | Day of Week | Billable | NonBill | Total | Budget | Variance | Held | Released | Transferred |
|------|-------------|----------|---------|-------|--------|----------|------|----------|-------------|
| 1/ 1/2005 | Saturday | | | **0.00** | 0.00 | **0.00** | | | |
| 1/ 2/2005 | Sunday | 0.40 | 1.00 | **1.40** | 0.00 | **1.40** | 0.00 | 0.00 | 1.40 |
| 1/ 3/2005 | Monday | 1.90 | 1.30 | **3.20** | 6.00 | **-2.80** | 0.00 | 0.00 | 3.20 |
| 1/ 4/2005 | Tuesday | 2.10 | 6.30 | **8.40** | 6.00 | **2.40** | 0.00 | 0.00 | 8.40 |
| 1/ 5/2005 | Wednesday | 2.20 | 0.00 | **2.20** | 6.00 | **-3.80** | 0.00 | 0.00 | 2.20 |
| 1/ 6/2005 | Thursday | 2.30 | 2.80 | **5.10** | 6.00 | **-0.90** | 0.00 | 0.00 | 5.10 |
| 1/ 7/2005 | Friday | 5.10 | 0.00 | **5.10** | 6.00 | **-0.90** | 0.00 | 0.00 | 5.10 |
| 1/ 8/2005 | Saturday | 5.60 | 0.50 | **6.10** | 0.00 | **6.10** | 0.00 | 0.00 | 6.10 |
| 1/ 9/2005 | Sunday | 0.00 | 4.00 | **4.00** | 0.00 | **4.00** | 0.00 | 0.00 | 4.00 |
| 1/10/2005 | Monday | 4.00 | 0.00 | **4.00** | 6.00 | **-2.00** | 0.00 | 0.00 | 4.00 |
| 1/11/2005 | Tuesday | 3.00 | 0.50 | **3.50** | 6.00 | **-2.50** | 0.00 | 0.00 | 3.50 |
| 1/12/2005 | Wednesday | 4.30 | 4.10 | **8.40** | 6.00 | **2.40** | 8.40 | 0.00 | 0.00 |
| 1/13/2005 | Thursday | 5.80 | 2.10 | **7.90** | 6.00 | **1.90** | 0.00 | 0.00 | 7.90 |
| 1/14/2005 | Friday | 5.50 | 6.00 | **11.50** | 6.00 | **5.50** | 0.00 | 0.00 | 11.50 |
| 1/15/2005 | Saturday | | | **0.00** | 0.00 | **0.00** | | | |
| 1/16/2005 | Sunday | | | **0.00** | 0.00 | **0.00** | | | |
| 1/17/2005 | Monday | 7.40 | 3.00 | **10.40** | 6.00 | **4.40** | 0.00 | 0.00 | 10.40 |
| 1/18/2005 | Tuesday | 8.30 | 3.50 | **11.80** | 6.00 | **5.80** | 0.00 | 0.00 | 11.80 |
| 1/19/2005 | Wednesday | 6.60 | 5.80 | **12.40** | 6.00 | **6.40** | 0.00 | 0.00 | 12.40 |
| 1/20/2005 | Thursday | 4.30 | 2.00 | **6.30** | 6.00 | **0.30** | 0.00 | 0.00 | 6.30 |
| 1/21/2005 | Friday | 6.80 | 3.00 | **9.80** | 6.00 | **3.80** | 0.00 | 0.00 | 9.80 |
| 1/22/2005 | Saturday | 2.00 | 0.50 | **2.50** | 0.00 | **2.50** | 0.00 | 0.00 | 2.50 |
| 1/23/2005 | Sunday | 3.00 | 0.00 | **3.00** | 0.00 | **3.00** | 0.00 | 0.00 | 3.00 |
| 1/24/2005 | Monday | 5.00 | 0.00 | **5.00** | 6.00 | **-1.00** | 0.00 | 0.00 | 5.00 |
| 1/25/2005 | Tuesday | 6.60 | 1.70 | **8.30** | 6.00 | **2.30** | 0.00 | 0.00 | 8.30 |
| 1/26/2005 | Wednesday | 6.50 | 3.80 | **10.30** | 6.00 | **4.30** | 0.00 | 0.00 | 10.30 |
| 1/27/2005 | Thursday | 3.90 | 5.00 | **8.90** | 6.00 | **2.90** | 0.00 | 0.00 | 8.90 |
| 1/28/2005 | Friday | 6.80 | 5.80 | **12.60** | 6.00 | **6.60** | 0.00 | 2.00 | 10.60 |
| 1/29/2005 | Saturday | 10.00 | 0.00 | **10.00** | 0.00 | **10.00** | 0.00 | 10.00 | 0.00 |
| 1/30/2005 | Sunday | 5.00 | 0.00 | **5.00** | 0.00 | **5.00** | 0.00 | 5.00 | 0.00 |
| 1/31/2005 | Monday | 0.70 | 3.00 | **3.70** | 6.00 | **-2.30** | 0.00 | 0.00 | 3.70 |

| **Report Totals** | **125.10** | **65.70** | **190.80** | **126.00** | **64.80** | **8.40** | **17.00** | **165.40** |
|---|---|---|---|---|---|---|---|---|

2/3/2005                          **Time Detail**                          *Page*   1

### Janice Courtney (765)
#### for the Period 02/02/2005 Through 02/02/2005

| | | | | |
|---|---|---|---|---|
| Date | 2/2/2005 | | | |
| Client | 87024 | HS&E - Administration | Created | 2/3/2005  parzynsl |
| Case | 000002 | Administration | Modified | 2/3/2005  parzynsl |
| Activity | NBT | Non Billable Time | Released | 2/3/2005  parzynsl |
| Task | | | Transferred | |
| Time | **5.10** | NonBillable    Released | | |
| Note | | | | |
| Comment | Work on time sheets for month of January; attend to miscellaneous office matters. | | | |

| | | | | |
|---|---|---|---|---|
| Date | 2/2/2005 | | Date | By User |
| Client | 84094 | Lackawanna, City of | Created | 2/3/2005  parzynsl |
| Case | 000006 | Northeast Diversification V. City of Lackawanna | Modified | 2/3/2005  parzynsl |
| Activity | A999 | Default Activity Code | Released | 2/3/2005  parzynsl |
| Task | | | Transferred | |
| Time | **0.20** | Billable    Released | | |
| Note | | | | |
| Comment | Research electronic records at Erie County Clerk's office regarding decision and order on motions; memorandum to K. Kaczmarski regarding decision and order filed on January 27, 2005. | | | |

| | | | | |
|---|---|---|---|---|
| Date | 2/2/2005 | | Date | By User |
| Client | 91441 | H&H Metal Specialty, Inc. | Created | 2/3/2005  parzynsl |
| Case | 000002 | Trade Secret Misappropriation | Modified | 2/3/2005  parzynsl |
| Activity | A999 | Default Activity Code | Released | 2/3/2005  parzynsl |
| Task | | | Transferred | |
| Time | **0.40** | Billable    Released | | |
| Note | | | | |
| Comment | Correspond with A. Faizer regarding authority from client for copying H&H documents for production; review electronic notices from court and docket settlement conference date; confer with K. Africano regarding decision and order rendered on motions to compel. | | | |

| | | | | |
|---|---|---|---|---|
| Date | 2/2/2005 | | Date | By User |
| Client | 91329 | Buchovecky, Dennis | Created | 2/3/2005  parzynsl |
| Case | 000002 | General Business Matters | Modified | 2/3/2005  parzynsl |
| Activity | A999 | Default Activity Code | Released | 2/3/2005  parzynsl |
| Task | | | Transferred | |
| Time | **1.90** | Billable    Released | | |
| Note | | | | |
| Comment | Review client documents and prepare response to defendants' notice for discovery and inspection. | | | |

**Total for the Selected Period  7.60**

*3*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORIGINAL
RECEIVED AND FILED
UNITED STATES DISTRICT COURT CLERK
WESTERN DISTRICT OF NEW YORK

OCT 3 1 1995

BY: _____

_____

SENECA MEADOWS, INC. and
MACEDON HOMES, INC.,

                  Plaintiffs

vs.

ECI LIQUIDATING, INC., EVANS
COSMETICS, INC., EVANS CHEMETICS
DIVISION OF HAMPSHIRE CHEMICAL
CORP., EVANS CHEMETICS DIVISION
OF W.R. GRACE & CO., EVANS
CHEMETICS DIVISION OF W.R. GRACE
& CO. - CONN., EVANS RESEARCH
AND DEVELOPMENT CORPORATION, FISHER
BODY DIVISION OF GENERAL MOTORS
CORP., FISHER GUIDE DIVISION OF
GENERAL MOTORS CORP., GTE CORPORATION,
GTE PRODUCTS CORPORATION, GTE SYLVANIA
INCORPORATED, GENERAL MOTORS
CORPORATION, GENERAL TELEPHONE &
ELECTRONICS CORPORATION, GOULDS PUMPS,
INCORPORATED, GOULDS PUMPS (N.Y.), INC.,
HAMPSHIRE CHEMICAL CORP., NORTH
AMERICAN PHILIPS CORPORATION, OSRAM
SYLVANIA, INC., PHILIPS ELECTRONICS
NORTH AMERICA CORPORATION, SALES
AFFILIATES, INC., SYLVANIA ELECTRIC
PRODUCTS, INC., SYLVANIA ELECTRICAL
PRODUCTS, INC., W.R. GRACE & CO., W.R.
GRACE & CO. - CONN.,

                  Defendants

_____

Civil Action No.
95-CV-6400L


**ANSWER, COUNTER-CLAIMS
AND CROSS-CLAIMS TO
PLAINTIFFS' AMENDED
COMPLAINT**


      Defendants, GTE Corporation, GTE Products Corporation, GTE Sylvania

Incorporated, General Telephone & Electronics Corporation, North American Philips

Corporation, Osram Sylvania Inc., Sylvania Electric Products, Inc., and Sylvania Electrical

Products Inc., (hereinafter, collectively referred to as "Defendants"), by way of answer to

Plaintiffs' Amended Complaint ("Amended Complaint") respond and answer as follows:

## I.  JURISDICTION AND VENUE

1.    Paragraph 1 of the Amended Complaint purports to state legal

conclusions for which no response is necessary.  To the extent these allegations may be

understood as requiring an answer, such allegations are denied.

2.    The first sentence of paragraph 2 of the Amended Complaint purports

to state legal conclusions for which no response is necessary.  To the extent these allegations

may be understood as requiring an answer, such allegations are denied.  Defendants deny the

allegations in the second sentence in paragraph 2 of the Amended Complaint.

3.    Paragraph 3 of the Amended Complaint purports to state legal

conclusions for which no response is necessary.  To the extent these allegations may be

understood as requiring an answer, such allegations are denied.

4.    Defendants deny the first sentence at paragraph 4.  The second sentence

of paragraph 4 of the Amended Complaint purports to state legal conclusions for which no

response is necessary.  To the extent these allegations may be understood as requiring an

answer, such allegations are denied.

5.    Defendants deny the allegations contained in paragraphs 5 and 6 of the

Amended Complaint.

6.    Defendants admit the allegations of paragraph 7 that the Tantalo site and adjacent properties are located in this judicial district, and denies the remaining allegations of paragraph 7.

## II.    GENERAL ALLEGATIONS

7.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 8, 9, 10, 11, 12, and 13 of the Amended Complaint.

8.    Defendants deny the allegations contained in paragraphs 14 and 15 of the Amended Complaint.

9.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Amended Complaint.

10.    Defendants deny the allegations contained in paragraph 17 of the Amended Complaint insofar as they may be directed against them and are without information or knowledge to form a belief as to the truth of the allegations directed at the other defendants.

11.    Defendants are without information or knowledge to form a belief as to the truth of the allegations contained in paragraph 18 of the Amended Complaint.

12.    Defendants deny the allegations in paragraphs 19, 20, 21, 22, 23, 24, 25, and 26 of the Amended Complaint insofar as they may be directed against them and are without information or knowledge to form a belief as to the truth of the allegations directed at the other defendants.

3

13.    Defendants admit the allegations of paragraph 27 of the Amended Complaint insofar as they may be directed at them, and are without information or knowledge to form a belief as to the truth of the allegations directed at the other defendants.

### III.    PARTIES

<u>Plaintiffs</u>

14.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 28 and 29 of the Amended Complaint.

<u>Defendants</u>

    a.    **ECI LIQUIDATING, INC. and EVANS CHEMETICS, INC.**

15.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 30, 31, 32, and 33 of the Amended Complaint.

    b.    **SALES AFFILIATES, INC. and EVANS RESEARCH AND DEVELOPMENT CORPORATION**

16.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 34, 35, 36, 37 38, 39,and 40 of the Amended Complaint.

c.    **W.R.GRACE & CO., W.R.GRACE & CO. - CONN. and EVANS CHEMETICS DIVISIONS**

17.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 41, 42, 43, 44, 45, 46, 47, and 48 of the Amended Complaint.

d.    **HAMPSHIRE CHEMICAL CORP. and ITS EVANS CHEMETIC DIVISION**

18.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 49, 50, 51, 52, 53, 54, 55, and 56 of the Amended Complaint.

e.    **THE SYLVANIA DEFENDANTS**

19.    Defendants deny the allegations contained in paragraph 57 of the Amended Complaint.

20.    Defendants admit the allegations contained in paragraph 58 insofar as they allege that Osram Sylvania Inc. is organized and existing under the laws of the State of Delaware with a common principal place of business at 100 Endicott Street, Danvers, Massachusetts; however, by virtue of merger and name change, Sylvania Electric Products Incorporated and GTE Sylvania Incorporated no longer exist. GTE was subsequently renamed Osram Sylvania Inc.

21.    Defendants admit the allegations contained in paragraph 59 insofar as they allege that Osram Sylvania Inc. is authorized to do business in the State of New York.

5

22.    Defendants admit the allegations in paragraph 60 in so far as they allege that the Sylvania Defendants formerly owned and operated a manufacturing/industrial plant on Johnston Street in Seneca Falls, New York (the "Sylvania Plant"), but denies the allegations remaining in subparagraph numbers (a) - (f).

23.    Defendants deny the allegations contained in paragraph 61 of the Amended Complaint.

### f.    GTE CORPORATION and GENERAL TELEPHONE & ELECTRONICS CORPORATION

24.    Defendants admit the allegation in paragraphs 62 and 63.

25.    Defendants deny the allegations contained in paragraphs 64, 65, 66, 67, and 68 of the Amended Complaint.

### g.    PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and NORTH AMERICAN PHILIPS CORPORATION

26.    Defendants admit the allegations contained in paragraphs 70 and 74 of the Amended Complaint.

27.    Defendants deny the allegations contained in paragraphs 69, 71, 73, 75, and 76 of the Amended Complaint.

28.    Upon information and belief, defendants admit the allegations in paragraph 72.

h.    GOULDS PUMPS, INCORPORATED and GOULDS PUMPS (N.Y.), INC.

29.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 77, 78, 79, and 80 of the Amended Complaint.

i.    GENERAL MOTORS CORPORATION and FISHER GUIDE - FISHER BODY DIVISIONS

30.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 81, 82, 83, 84 and 85 of the Amended Complaint.

## IV. FIRST CLAIM FOR RELIEF, UNDER CERCLA §107

31.    In answer to paragraph 86 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 85 of the Amended Complaint.

32.    Defendants deny the allegations contained in paragraphs 87, 88, and 89 of the Amended Complaint.

## V. SECOND CLAIM FOR RELIEF, UNDER CERCLA §113

33.    In answer to paragraph 90 of the Amended Complaint, defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 89 of the Amended Complaint.

34.    Defendants deny the allegations contained in paragraphs 91, 92, 93, and 94 of the Amended Complaint.

## VI.  THIRD CLAIM FOR RELIEF, FOR DECLARATORY JUDGMENT

35.    In answer to paragraph 95 of the Amended Complaint, defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 94 of the Amended Complaint.

36.    Defendants deny the allegations contained in paragraphs 96, 97, 98, and 99 of the Amended Complaint.

## VII.  FOURTH CLAIM FOR RELIEF, UNDER CERCLA §112

37.    In answer to paragraph 100 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 99 of the Amended Complaint.

38.    Defendants deny the allegations contained in paragraphs 101, 102, 103, 104, 105, 106, 107 and 108 of the Amended Complaint.

## VIII.  FIFTH CLAIM FOR RELIEF, FOR NEGLIGENCE

39.    In answer to paragraph 109 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 108 of the Amended Complaint.

40.    Defendants deny the allegations contained in paragraphs 110, 111, 112, 113, 114, 115, 116, and 117 of the Amended Complaint.

8

## IX.  SIXTH CLAIM FOR RELIEF, FOR UNJUST ENRICHMENT

41.    In answer to paragraph 118 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 117 of the Amended Complaint.

42.    Defendants deny the allegations contained in paragraphs 119, 120, 121, 122, 123, and 124 of the Amended Complaint.

## X.  SEVENTH CLAIM FOR RELIEF,  FOR RESTITUTION

43.    In answer to paragraph 125 the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 124 of the Amended Complaint.

44.    Defendants deny the allegations contained in paragraphs 126, 127, and 128 of the Amended Complaint.

## XI.  EIGHTH CLAIM FOR RELIEF, FOR CONTRIBUTION

45.    In answer to paragraph 129 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 128 of the Amended Complaint.

46.    Paragraph 130 of the Amended Complaint purports to state legal conclusions for which no response is necessary.  To the extent such allegations may be understood as requiring an answer, such allegations are denied.

47.    Defendants deny the allegations contained in paragraphs 131 and 132 of the Amended Complaint.

48.    Paragraph 133 of the Amended Complaint purports to state legal conclusions for which no response is necessary.  To the extent such allegations may be understood as requiring an answer, such allegations are denied.

## XII.  NINTH CLAIM FOR RELIEF, FOR PRIVATE NUISANCE

49.    In answer to paragraph 134 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 133 of the Amended Complaint.

50.    Defendants deny the allegations contained in paragraphs 135, 136, 137, 138, 139, 140 and 141 of the Amended Complaint.

## XIII.  TENTH CLAIM FOR RELIEF, FOR PUBLIC NUISANCE

51.    In answer to paragraph 142 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 141 of the Amended Complaint.

52.    Defendants deny the allegations contained in paragraphs 143, 144, 145, 146, 147, and 148 of the Amended Complaint.

## XIV.  ELEVENTH CLAIM FOR RELIEF, FOR STRICT LIABILITY

53.    In answer to paragraph 149 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 148 of the Amended Complaint.

54.    Defendants deny the allegations contained in paragraphs 150, 151, 152, 153, 154, and 155 of the Amended Complaint.

10

## XV.  TWELFTH CLAIM FOR RELIEF, FOR TRESPASS

55.    In answer to paragraph 156 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its Answer to paragraphs 1 through 155 of the Amended Complaint.

56.    Defendants deny the allegations contained in paragraphs 157, 158, 159, 160, and 161 of the Amended Complaint.

## XVI.  THIRTEENTH CLAIM FOR RELIEF, FOR CONTRACTUAL INDEMNITY (vs. ECI, SALES AFFILIATES, W. R. GRACE & HAMPSHIRE CHEMICAL)

57.    In answer to paragraph 162 of the Amended Complaint, Defendants repeat and make part hereof, as if more fully set forth, its answer to paragraphs 1 through 161 of the Amended Complaint.

58.    Defendants do not answer paragraphs 163, 164, 165, 166, 167, 168, 169, and 170 as these allegations are not applicable to the Defendants.

### FIRST AFFIRMATIVE DEFENSE

Each claim of the Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The injuries and damages complained of were the proximate result of acts or omissions of other parties or of third parties over whom the Defendants had no control and for whose actions these Defendants are not liable.

11

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims and causes of action are barred in whole or in part by the applicable statutes of limitation.

### FOURTH AFFIRMATIVE DEFENSE

By virtue of its acts and omissions, Plaintiffs have failed to mitigate the damages alleged in the Amended Complaint.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the Amended Complaint against these Defendants on the basis of alleged joint and several liability are barred or limited because (1) the acts and omissions of all other parties were separate and distinct from those, if any, of these Defendants, (2) neither the common law nor any federal or state statute renders these Defendants jointly and severally liable for the acts or omissions of other Defendants, (3) the injury, harm and costs that are the subject of the Plaintiffs' claims are divisible and reasonably capable of apportionment.

### SIXTH AFFIRMATIVE DEFENSE

Some or all of the purported claims of the Amended Complaint are barred against these Defendants by CERCLA §113(g) and 42 U.S.C. §9613(g).

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs may only recover alleged response costs which are in accordance with or not inconsistent with the requirements of the National Oil and Hazardous Substances

12

Pollution Contingency Plan (the "NCP"), 40 C.F.R. Part 300, and/or other applicable laws or regulations.

### EIGHTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims under CERCLA are barred insofar as the Plaintiffs seek to recover costs, damages, and expenses other than "response" costs, as that term is defined by CERCLA §§101(23), (24) and (25), 42 U.S.C. §§ 9601(23), (24), (25).

### NINTH AFFIRMATIVE DEFENSE

Without any admission of liability, if Defendants' materials were disposed of at the Tantalo Site, such materials did not contain hazardous substances within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

### TENTH AFFIRMATIVE DEFENSE

Without any admission of liability if Defendants' materials were disposed of at the Tantalo Site, such materials did not cause the incurrence of any response or remedial costs within the meaning of CERCLA.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the Amended Complaint against these Defendants are barred, in whole or in part, by CERCLA §107(b) (3), 42 U.S.C. § 9607(b) (3).

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs as PRP's at the CERCLA Site, are not entitled to contribution under CERCLA §113(f), 42 U.S.C. §9613(f).

13

### THIRTEENTH AFFIRMATIVE DEFENSE

None of the substances allegedly generated or disposed of by Defendants at the Tantalo Site were hazardous, dangerous, injurious or damaging in any way.

### FOURTEENTH AFFIRMATIVE DEFENSE

Upon information and belief, any costs incurred by the Plaintiffs in connection with the Tantalo Site were "closure" costs mandated by New York State regulations and, thus, were not caused by the release or threat of release of hazardous substances, as required by CERCLA.

### FIFTEENTH AFFIRMATIVE DEFENSE

Without any admission of liability, the amount of substances generated by Defendants, if any, which are alleged to have been generated and/or disposed at the Site, would be *de minimis*.

### SIXTEENTH AFFIRMATIVE DEFENSE

The relief sought by the Plaintiffs is barred by laches, estoppel, waiver and the doctrine of unclean hands.

### SEVENTEENTH AFFIRMATIVE DEFENSE

These Defendants are not liable to the Plaintiffs because any actions or omissions alleged against Defendants in the Amended Complaint, if any, were the acts of independent contractors of Defendants.

14

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Plaintiffs have an adequate remedy at law and is, therefore, not entitled to equitable relief.

## NINETEENTH AFFIRMATIVE DEFENSE

Any costs alleged to be incurred in the future may not be recovered as they are remote, speculative and contingent.

## TWENTIETH AFFIRMATIVE DEFENSE

These Defendants deny that they are liable for any claims arising out of the Tantalo Site, but in the event they are found liable, these Defendants are entitled to an offset against any such liability on their part for: (1) any amounts actually paid by any person or entity heretofore or hereafter for any of the injuries, costs, damages and expenses alleged in the Amended Complaint; (2) any amounts stipulated or otherwise agreed to in any release or covenant not to sue any person or entity heretofore or hereafter for any of the injuries, costs, damages and expenses alleged in the Amended Complaint; (3) the equitable share of the liability of any person or entity that heretofore has received, or hereafter receives, any release from liability or covenant not to sue with respect to any of the injuries, costs, damages and expenses alleged in the Amended Complaint; and (4) the equitable share of the liability of any person or entity not joined as Defendants in this action that would be liable to the Plaintiffs.

15

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendants' liability to the Plaintiffs, if any, is reduced pursuant to General Obligations Law § 15-108, by the equitable share of settling co-defendants or by the amount of settlement payments made to the Plaintiffs by settling co-defendants.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction over the claims asserted in the Amended Complaint.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendants are not within the class of persons against which a claim of relief under §107 of CERCLA, 42 U.S.C. §9607, can be asserted or granted.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs have no statutory or other applicable legal basis for the recovery of oversight costs in this action.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendants are not liable for any acts or omissions undertaken by or at the direction of or sufferance of any governmental authority.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendants deny the existence of any statutory or common law duty owed to the Plaintiffs and, in any event, deny violating any such duty owed to the Plaintiffs if any duty is found to have existed.

16

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The Amended Complaint is so devoid of factual content as it pertains to the alleged conduct of the Defendants that it violates the requirements of Rule 8 of the Federal Rules of Civil Procedure that a Complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  In particular, the Complaint fails to specify the manner in which Defendants allegedly arranged for disposal, and/or disposed of hazardous substances at the Tantalo Site.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

If, and only if, Defendants are held responsible for any of the damages alleged in the Amended Complaint, its liability is limited only to response costs incurred by Plaintiffs voluntarily and independently, and not for costs incurred by Plaintiffs pursuant to State mandate.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Defendants did not generate, dispose, arrange for disposal or treatment, or arrange with a transporter for transport for disposal or treatment of, any hazardous substances or any materials containing hazardous substances at the Tantalo Site during the relevant period of time.

## THIRTIETH AFFIRMATIVE DEFENSE

No acts or omissions of the Defendants' employees, representatives and/or agents were the actual proximate or legal cause of any of the alleged releases, hazards or damage to the Tantalo Site, or any other danger alleged in the Amended Complaint.

17

### THIRTY-FIRST AFFIRMATIVE DEFENSE

There has been no "release" of hazardous substances at the Tantalo Site as required by CERCLA, 42 U.S.C. §9601(22).

### THIRTY-SECOND AFFIRMATIVE DEFENSE

None of the response costs that are alleged to have been incurred by the Plaintiffs at the Tantalo Site were foreseeable at the time of any alleged acts or omissions by Defendants.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

In the event that Defendants are held liable for any damages, costs or specific relief that may be adjudged against the Defendants, then pursuant to §§107 and 113(g)(1) of CERCLA, 42 U.S.C. §§9607, 9613(f)(1), Defendants' liability should be proportioned to their respective individual contribution to the alleged damage or injury, taking into account the contribution of all other persons, whether or not parties to this action. Accordingly, pursuant to §§107 and 113(f)(1) of CERCLA, 42 U.S.C. §§9601(f), 9613(f)(1), the Plaintiffs are precluded from recovering from Defendants more than Defendants' fair, equitable, and proportionate share of the costs, damages or other relief sought by the Plaintiffs or otherwise recovering more than the amount of such relief for which Defendants may be held liable.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and causes of action are barred in whole or in part because at all times these answering Defendants exercised due care in avoiding foreseeable acts or omissions of others and such consequences that could reasonably have resulted from such

18

acts or omissions, conducted themselves in accord with applicable custom and practice in the industry, conformed with then-existing state of the art, and complied with all then-existing federal, state and local statutory and regulatory requirements.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which the liability of any one defendant can be predicated on the acts or omissions of another defendant.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

The Amended Complaint fails to include arguably indispensable and/or necessary parties and should, therefore, be dismissed.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

The Plaintiffs improperly joined their actions and therefore the claims and causes of action of the individual Plaintiffs should be severed and tried separately.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Defendants are not "covered persons" within the meaning of CERCLA, 42 U.S.C. §9607, nor are the Defendants successors in interest or controlling parents of "covered persons".

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to exhaust their available remedies against other parties.

19

### FORTIETH AFFIRMATIVE DEFENSE

No acts or omissions of Defendants were the actual proximate or legal cause of any of the alleged releases, hazards or damages to the Tantalo Site, or any other damages alleged in the Amended Complaint.

### FORTY-FIRST AFFIRMATIVE DEFENSE

The acts and/or omissions of Plaintiffs and/or other third parties were the proximate, legal and/or actual causes of the alleged releases, hazards or damage to the Tantalo Site or any other damages alleged in the Amended Complaint.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Any alleged release of hazardous substances, and any costs or damages resulting therefrom, were caused solely by an act of God and/or acts or omissions of third-parties over whom Defendants had no control or responsibility, whether by contract or otherwise.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' past, present and contemplated expenditures are not necessary costs of responses required by CERCLA, 42 U.S.C. §9607(a)(4)(B).

### FORTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to perform the conditions precedent required by CERCLA §42 U.S.C. §9601 *et. seq.* or under applicable state law.

20

### FORTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs knew or should have known of the alleged existence of hazardous substances allegedly on the Tantalo Site.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

If the Plaintiffs sustained damages as set forth in the Amended Complaint through any carelessness, recklessness, gross negligence, negligence, strict liability, and/or other culpable conduct, other than that of Plaintiffs themselves, those damages will have been caused and brought about by reason of the carelessness, recklessness, gross negligence, negligence, strict liability and/or other culpable conduct, of all other Defendants named in this action.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

The alleged acts or omissions with respect to disposal issues conformed to the then-existing state of the art. Plaintiffs' claims and causes of action are, therefore, barred in whole or in part.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

Defendants incorporate herein any and all separate and affirmative defenses raised by other parties that are not directed against these Defendants and are not inconsistent with the assertions of these Defendants in this matter.

### COUNTERCLAIMS

Defendants, by way of their counterclaims against Plaintiffs, state as follows.

21

## AS A FIRST COUNTERCLAIM AGAINST PLAINTIFFS
### (CERCLA §107)

1.　　Defendants assert this claim under the Comprehensive Environmental Response Compensation & Liability Act, 42, U.S.C. §9601 *et seq.* ("CERCLA") seeking a declaration of liability and an award of damages against the Plaintiffs.

2.　　Upon information and belief, Plaintiff Seneca Meadows, Inc ("SMI") is a "person" as defined in CERCLA §101(21), 42 U.S.C. §9601(21).

3.　　Upon information and belief, the Tantalo Site is a "facility" as defined in CERCLA §101(21), 42 U.S.C. §9601(21).

4.　　Upon information and belief, SMI is the "owner" and/or "operator" of the Tantalo Site within the meaning of CERCLA §107(a)(1), 42 U.S.C. §9607(a)(1).

5.　　Upon information and belief, SMI is "a person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" within the meaning of CERCLA §107(a)(2), 42 U.S.C. §9607(a)(2).

6.　　SMI released "hazardous substances" within the meaning of CERCLA §101(14), 42 U.S.C. §9601(14), into the "environment" as defined by the provisions of CERCLA §101(8), 42 U.S.C. §9601(8).

7.　　As a result of the release or threatened release of hazardous substances, within the meaning of CERCLA §101(22) and §107, 42 U.S.C. §9601(22) and §9607, Defendants may incur "response costs" within the meaning of CERCLA §101(25), 42 U.S.C. §9601(25) and, consistent with the National Contingency Plan ("NCP"), in order to

22

evaluate and remediate the environmental impact of the release or threat of release of hazardous substances at the Tantalo Site.

8.    By reason of the foregoing, the SMI is liable for any response costs incurred or to be incurred at the Tantalo Site by the Defendants consistent with the NCP, within the meaning of CERCLA §107, 42 U.S.C. §9607.

9.    Defendants are entitled to judgment against the Plaintiffs for the full amount of response costs yet to be incurred by the Defendants consistent with the NCP up to and including the time of trial, including accrued interest, and a further judgment pursuant to CERCLA §113, 42 U.S.C. §9613(g)(2) and the Declaratory Judgments Act, 28 U.S.C. §2201, declaring the Plaintiffs, or one or more of them, liable for any costs incurred and all future costs incurred by the Defendants consistent with the NCP in responding to the releases or threatened releases of hazardous substances at the Tantalo Site.

## AS A SECOND COUNTERCLAIM AGAINST PLAINTIFFS
## (CERCLA §113)

10.    Defendants repeat and reallege paragraphs 1 through 9 as more fully set forth herein.

11.    Pursuant to CERCLA §113(f)(1), 42 U.S.C. §9613(f)(1), any person may seek contribution from any person who was liable or potentially liable under CERCLA §107(a) during or following any civil action under CERCLA §107(a), 42 U.S.C. §9607(a).

12.    Pursuant to CERCLA §113(f)(1), 42 U.S.C. §9613(f)(1), without admitting liability, in the event that these Defendants are held responsible for any of the alleged harm as pled in the Amended Complaint, and any affirmative relief is granted against

these Defendants, then these Defendants are entitled to contribution from the Plaintiffs for their equitable share of the response costs incurred in connection with the Tantalo Site.

## AS A THIRD COUNTERCLAIM AGAINST PLAINTIFFS
### (Common Law Indemnification)

13.    Defendants repeat and reallege paragraphs 1 through 12 as more fully set forth herein.

14.    In the event the Defendants are found liable to the Plaintiffs, which liability is denied, such liability will be secondary, indirect, passive, vicarious, constructive, technical or imputed, and the liability of the Plaintiffs will be primary.

## AS A FOURTH COUNTERCLAIM AGAINST PLAINTIFFS
### (Common Law And Statutory Contribution)

15.    Defendants repeat and reallege paragraphs 1 through 14 as more fully set forth herein.

16.    In the event that the Defendants are found liable to the Plaintiffs, which liability is denied, Defendants assert that Plaintiffs are joint tortfeasors with respect to such liability.

## AS A FIFTH COUNTERCLAIM AGAINST PLAINTIFFS
### (Negligence)

17.    Defendants repeat and reallege paragraphs 1 through 16 as more fully set forth herein.

18.    At all relevant times, Plaintiffs knew or should have known of the hazardous nature of the hazardous substances and wastes used, generated, disposed at, handled, transported to or otherwise present at the Tantalo Site.

19.    At all relevant times, Plaintiffs knew or should have known of the potential for release of hazardous substances or waste to the environment at the Tantalo Site and to nearby properties, including the MHI Property.

20.    As a subsequent landowner, Plaintiff SMI owed Defendants a duty to exercise reasonable care to prevent the spill, release, escape, discharge, disposal, and/or migration of hazardous substances and other contaminants from of the Tantalo Site.  This duty extended to: (i) taking precautions in order to prevent a release of hazardous substances or waste at the Tantalo Site, (ii) preventing any releases of hazardous substances or waste from migrating at or from the Tantalo Site, (iii) limiting the risk of danger, loss, and liability faced by the Defendants and/or their employees due to the presence of hazardous substances and wastes at the Tantalo Site and nearby properties, and (iv) containing and remediation or otherwise addressing the contamination at the Tantalo site and nearby properties.

21.    SMI breached its duty by failing to exercise reasonable care to prevent and/or properly contain the hazardous substances which have allegedly released, escaped, discharged, disposed, and/or migrated from the Tantalo Site.  These acts and/or omissions by the Plaintiffs with regard to the hazardous substances or wastes at the Tantalo Site were unreasonable, negligent, wanton, reckless and in total disregard for the safety, welfare, and health of the Tantalo Site, nearby properties, the general public, and the environment.

25

22.    The breach has resulted in the alleged contamination of Plaintiffs' property and could proximately cause the Defendants to incur expenditures arising from cleanup and related activities.

23.    As a result of SMI's negligence, Defendants have and continue to be damaged in the amount of such expenditures incurred and to be incurred by Defendants.

24.    SMI is liable to Defendants for compensatory damages due to past and future injury, harm, and damage suffered by Defendants.

### AS A SIXTH COUNTERCLAIM AGAINST PLAINTIFFS
### (Public Nuisance)

25.    Defendants repeat and reallege paragraphs 1 through 24 as more fully set forth herein.

26.    The presence, migration, and threat of migration of hazardous substances and other contaminants from the Tantalo Site poses a continual and substantial danger to the public health and environment and unreasonably interferes with the resources of the State of New York.

27.    As a result of the Plaintiff's actions, the public has and will continue to be damaged.

28.    By negligently or intentionally releasing, disposing, or discharging hazardous substances and other contaminants from the Tantalo Site, the Plaintiffs created a public nuisance.

26

29.    Plaintiffs knew or should have known that they had been releasing hazardous substances or other contaminants into the environment, thus creating a public nuisance.

30.    After the Plaintiffs knew or should have known that their contaminants had been released into the environment, thus creating a public nuisance, the Plaintiffs failed to abate the public nuisance and proximately caused the maintenance of a public nuisance.

31.    Defendants suffer and have suffered damages different in kind from the general public in that the creation and maintenance of a public nuisance by the Plaintiffs has proximately caused the Defendants to potentially incur and continue to incur substantial costs associated with the investigation and remediation of the contaminated Tantalo Site and other affected properties.

32.    Plaintiffs are liable to Defendants for cost incurred and to be incurred as a result of their creation and maintenance of a public nuisance.

## AS A SEVENTH COUNTERCLAIM AGAINST PLAINTIFFS

33.    Defendants repeat and reallege paragraphs 1 through 32 as if fully set forth herein.

34.    Plaintiffs represented and agreed that they would *dispose of* hazardous materials in a safe manner.

35.    Plaintiffs failed and refused to perform the terms of their agreement with GTE to *dispose of* hazardous materials in a safe manner.

36.    As a direct and proximate result thereof, GTE may be required to undertake investigation and remediation of the Tantalo Site at their own expense.

27

37.   Plaintiffs have breached their contract with GTE and are liable for all costs incurred in investigation and remediation of the Tantalo Site associated with the plaintiffs' negligent activities thereon and for all damages, consequential damages, injuries and harm suffered by GTE as a result thereof.   .

### AS A CROSS-CLAIM AGAINST
### ALL OTHER DEFENDANTS

38.   If the plaintiffs sustained damages as set forth in the Amended Complaint through any carelessness, recklessness, gross negligence, negligence, strict liability, and/or other culpable conduct other than that of plaintiffs themselves, those damages will have been caused and brought about by the reason of carelessness, recklessness, gross negligence, negligence, strict liability and/or other culpable conduct, of all the Defendants named in this action.

39.   If plaintiffs should recover a judgment against these answering defendants by operation of law or otherwise, these answering defendants will be entitled to a judgment for contribution and/or indemnity over and against all other defendants, their agents, servants and/or employees, by reason of their carelessness, recklessness, gross negligence, negligence, strict liability and/or other culpable conduct, for the amount of any such recovery, or a portion thereof, in accordance with principles of law regarding apportionment of fault and damages, along with costs, disbursements and reasonable attorneys' fees.

WHEREFORE, these Defendants demand judgment against the Plaintiffs as follows:

28

A.    An order dismissing the Amended Complaint with prejudice;

B.    An order requiring the Plaintiffs to pay these Defendants their costs of suit and attorneys' fees;

C.    A declaration, pursuant to CERCLA §113(f)(1), 42 U.S.C. §9613(f)(1), that Plaintiffs are (1) liable to these Defendants in contribution for all response costs and damages, and interest thereon which, following the time of judgment, Plaintiffs or any other person, including the United States and these Defendants, incur or seek in connection with the Tantalo Site, and (2) liable to pay these Defendants, immediately upon Defendants' request, all response costs and damages which, following the time of judgment, these Defendants may incur in connection with the Tantalo Site, with the maximum lawfully allowable interest thereon; or, in the event that this court does not grant the proceeding request for relief, a declaration pursuant to 28 U.S.C. §§2201 and 2202, that Plaintiffs are (1) liable to these Defendants in contribution for all response costs and damages which, following the time of judgment, these Defendants may incur in connection with the Tantalo Site in excess of its fair and equitable share of such costs and damages, with the maximum lawfully allowable interest thereon, and (2) liable to pay to these Defendants and that Plaintiffs must pay to these Defendants immediately upon the Defendants' request, all such costs, damages and interest;

D.    An order requiring Plaintiffs to pay these Defendants any of its expenses, costs of suit and attorneys' fees deemed by this Court to constitute recoverable response costs and damages for the purposes of the relief requested in Paragraph C above; and

29

E.    An order granting these Defendants such other relief as this Court may

deem just and equitable.

DATED:    Buffalo, New York
          October 31, 1995

_____
Craig A. Slater, Esq. of Counsel
SAPERSTON & DAY, P.C.
*Attorneys for Defendants, GTE
Corporation, GTE Products Corporation,
GTE Sylvania Incorporated, General
Telephone & Electronics Corporation,
North American Philips Corporation,
Osram Sylvania, Inc., Philips
Electronics North America Corporation,
Sylvania Electric Products, Inc., and
Sylvania Electrical Products, Inc.*
1100 M&T Center
Three Fountain Plaza
Buffalo, New York 14203-1486
(716) 856-5400

TO:    Terry M. Richman, Esq., of Counsel
       UNDERBERG & KESSLER
       Attorneys for Plaintiffs
       1800 Chase Square
       Rochester, New York 14604
       (716) 258-2838

       Robert E. Glanville, Esq., of Counsel
       Phillips, Lytle, Hitchcock, Blaine & Huber
       Attorneys for ECI Liquidating, Inc.,
       Evans Chemetics, et al., Hampshire Chemical
       Corp., W.R. Grace & Co.-Conn., et al.
       3400 Marine Midland Center
       Buffalo, New York 14203
       (716) 847-8400

30

Philip H. Gitlen, Esq., of Counsel
Molly M. Brown, Esq., of Counsel
Whiteman, Osterman & Hanna
Attorneys for Goulds Pumps, Incorporated
and Goulds Pumps (N.Y.), Inc.
One Commerce Plaza
Albany, New York  12260
(518) 487-7600

Richard A. Palumbo, Esq., of Counsel
Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP
Attorneys for Evans Research & Development Corp. and
Sales Affiliates, Inc.
900 Midtown Tower
Rochester, New York  14604
(716) 232-5300

William Stephens, Esq., of Counsel
Raichle, Banning, Weiss & Stephens
Attorneys for General Motors Corporation,
Fisher Guide Division of GM Corp., and
Fisher Body Division of GM Corp.
410 Main Street
Buffalo, New York  14202-3702
(716) 852-7587

L:\BL\16938\PL\AMENDED ANS

31

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 1995 I served the Amended Answer,

Counterclaims and Cross-Claims of Defendants GTE Corporation, GTE Products

Corporation, GTE Sylvania Incorporated, General Telephone & Electronics Corporation,

North American Philips Corporation, Osram Sylvania, Inc., Philips Electronics North

American Corporation, Sylvania Electric Products Inc. And Sylvania Electrical Products,

Inc., to the Amended Complaint of Plaintiffs, Seneca Meadows, Inc., and Macedon Homes,

Inc. by United States Postal Service first-class, regular mail to all counsel of record.

DATED:        Buffalo, New York
              October 31, 1995


                        *Bridget J. Barzman, Esq.*
                        Bridget J. Barzman, Esq.
                        SAPERSTON & DAY, P.C.
                        *Attorneys for Defendants, GTE Corporation, GTE Products*
                        *Corporation, GTE Sylvania Incorporated, General Telephone &*
                        *Electronics Corporation, North American Philips Corporation,*
                        *Osram Sylvania, Inc., Philips Electronics North America*
                        *Corporation, Sylvania Electric Products, Inc., and Sylvania*
                        *Electrical Products, Inc.*
                        1100 M&T Center, Three Fountain Plaza
                        Buffalo, New York 14203-1486
                        (716) 856-5400

**4**

# FAX TRANSMITTAL



*from the Chambers of*

### HON. DAVID G. LARIMER
United States District Judge
Western District of New York
100 State Street, Room 2500
Rochester, New York  14614

Telephone (585) 613-4040
Facsimile - (585) 613-4045

**DATE:**      November 8, 2004

**TO:**      Michael G. Sterthous, Esq.  518-487-7777
            Robert S. Sanloff, Esq. -       617-832-7000

**FROM:**      Hon. David G. Larimer

**RE:**      Seneca Meadows, Inc. v. ECI Liquidating - 95-CV-6400L

**Number of Pages (Including Cover Sheet):** 13

**COMMENTS:**

*The information contained in this facsimile message is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by facsimile. If the person actually receiving this facsimile or any other reader of the facsimile is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately call (585) 613-4040.*

11/08/2004 03:00 PM
CM/ECF LIVE - U.S. District Court:nywd                                    Hon. David G. Larimer    585-613-4045 — 2/13
                                                          https://ecf.nywd.circ2.dcn/cgi-bin/Dispatch.pl?112150-402000J

## Other Orders/Judgments
6:95-cv-06400-DGL-MWP Seneca Meadows, Inc., et al v. ECI Liquidating, Inc, et al

### U.S. DISTRICT COURT

### WESTERN DISTRICT OF NEW YORK [LIVE]

Notice of Electronic Filing

The following transaction was received from EMA, entered on 11/8/2004 at 2:36 PM EST and filed on
11/8/2004
**Case Name:**      Seneca Meadows, Inc., et al v. ECI Liquidating, Inc, et al
**Case Number:**    6:95-cv-6400
**Filer:**
**Document Number:** 217

**Docket Text:**
PRETRIAL ORDER: Bench Trial set for 6/13/2005 09:00 AM before Hon. David G. Larimer. Final
Pretrial Conference set for 6/2/2005 02:00 PM before Hon. David G. Larimer. Settlement Conference set
for 11/12/2004 02:30 PM before Hon. David G. Larimer. Signed by Hon. David G. Larimer on 11/8/04.
(EMA, )

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1042579058 [Date=11/8/2004] [FileNumber=234728-0]
[323956df6696d90d9c38e94bb0cc25291e36865bd54124874bd6c0ef9f26ff7dcb43
71525e4dbc7a992c804b205bc8a4a92876ff66b31df4af83703fcffdfc52]]

**6:95-cv-6400 Notice will be electronically mailed to:**

Angela M. Demerle    ademerle@hselaw.com,
cslater@hselaw.com;jpratt@hselaw.com;litigation@hselaw.com

Robert E. Glanville    rglanville@phillipslytle.com, ecfphillips@phillipslytle.com

Kevin M. Hogan    khogan@phillipslytle.com,
ecfphillips@phillipslytle.com;mlamancuso@phillipslytle.com

Ronald G. Hull    ronhull@underberg-kessler.com, arichardson@underberg-kessler.com

Richard A. Palumbo    rpalumbo@devorsetzlaw.com,

Terry M. Richman    trichman@underberg-kessler.com,

Craig A. Slater    cslater@hselaw.com, ademerle@hselaw.com;jpratt@hselaw.com;litigation@hselaw.com


R. William Stephens    rwstephens@stephensstephens.com,

**6:95-cv-6400 Notice will be delivered by other means to:**

Molly M.A. Brown
Whiteman, Osterman & Hanna
One Commerce Plaza
Albany, NY 12260

Philip H. Gitlen
Whiteman, Osterman & Hanna
One Commerce Plaza
Albany, NY 12260

Randall E. Kromm
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

Robert S. Sanoff
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

Michael G. Sterthous
Whiteman, Osterman & Hanna
One Commerce Plaza
Albany, NY 12260

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SENECA MEADOWS, INC., et al.,

                                        Plaintiff,

                                                            PRETRIAL ORDER

            v.

                                                            95-CV-6400L

ECI LIQUIDATING, INC., et al.,

                                        Defendants.

---

## I. SCHEDULE

Trial:

            This case is hereby ordered for a non-jury trial on **June 13, 2005 at 9:00 a.m.**  This is a day-certain trial date which will not be adjourned.  The trial has been set far enough in advance so that all counsel are expected to protect this date with other judges so that they are not otherwise engaged in any other proceeding.

Pretrial Conference:

            A pretrial conference is scheduled for **June 2, 2005 at 2:00 p.m.** in my chambers.  The attorney who will try the case must be present at the pretrial conference.  **The parties must deliver to the Court, and all other parties, material listed in Part II at least three (3) business days prior to the pretrial conference.**

Settlement Conference:

A settlement conference is scheduled for **November 12, 2004 at 2:30 p.m.** with defense counsel only. The attorneys responsible for trying the case must be present. The attorneys must be prepared to discuss the facts of the case, damages and have authority to settle the case at the settlement conference. Prior to the conference, counsel must have discussed settlement and made a bona fide attempt to resolve the matter without court intervention. Clients must either be present or available without delay by telephone to dispose of the case.

## II. PRETRIAL CONFERENCE

1. Jury Trial:

The following must be prepared by each party for the pretrial conference, in three separate bound volumes:

Voir Dire Material

Trial Material

Instruction Material

A. Voir Dire Material:

Each party must prepare a separately bound document entitled "Voir Dire Information" containing the following material: (Each page must be three-hole-punched for insertion into a notebook and each item of information must be on a separate sheet.)

-2-

1.  A short description of the case to be read to the jury to identify the case and the claims and defenses at issue.

2.  The full name and address of the client.  Include here the name of any corporate representative that intends to appear at trial for the client.

3.  The full name and address of counsel, including assistants.

4.  A list of prospective witnesses that are expected to be called at trial, including adverse party witnesses.  A copy of this list must be provided to the court reporter at the commencement of trial.  Also list here witnesses that you intend to introduce by reading depositions.  Indicate that the witness will be a "deposition witness."

For proper identification to the jury and for use by the Court, this list, which must be on a separate sheet of paper, should include:

(i)  The full name of the witness.

(ii)  The occupational association of the witness, e.g., FBI, Eastman Kodak Company, Delta Laboratories, etc.

(iii)  The address of witness.

(iv)  A short summary statement (one or two sentences) of the general subject matter expected to be covered by the witness.

The Court may preclude the use, in the direct case, of any witness not identified as herein provided at the pretrial conference.

5.  A list of proposed questions you wish the Court to ask the jury on voir dire.  Failure to provide a list at the pretrial conference constitutes a waiver of a request by that party.   The Court will conduct voir dire and the Court does have many standard questions that it asks of every

prospective panel. Depending on the circumstances of the case, upon request, the Court may allow counsel a brief period to question the jury.

B. <u>Trial Material</u>:

Each party must prepare the following:

1. <u>Exhibits and Exhibit List</u>:

Each party must prepare an exhibit list containing those exhibits that the party anticipates introducing in its direct case. These lists must be prepared on forms supplied by the Clerk's Office and must contain a brief description of the proposed exhibit.

ALL exhibits shall be denominated by number. Plaintiff shall use numbers 1 through 399; defendant shall use numbers 400 through 699 and third-party defendants shall use numbers 700 through 899.

Each exhibit must be physically tagged with the appropriate colored sticker (pink for plaintiff, blue for defendant and third-party defendants), and each exhibit must be physically numbered prior to commencement of trial.

A complete copy of the exhibit list must be given to the court reporter at the commencement of trial.

Parties do not have to mark at the pretrial conference those exhibits that may only be used on cross-examination for impeachment of a witness or to refresh the recollection of any witness.

Except for extraordinary cause, the Court will not allow introduction into evidence of exhibits unless they are listed on the exhibit list submitted at the pretrial conference.

COPIES OF EACH DOCUMENTARY EXHIBIT, PHOTOGRAPH, CHART OR OTHER PAPER MUST BE DUPLICATED FOR THE ADVERSE PARTY AND EXCHANGED AT THE PRETRIAL CONFERENCE UNLESS THE PROPONENT CERTIFIES THAT THE DOCUMENT HAS ALREADY BEEN COPIED OR EXCHANGED DURING DISCOVERY, OR IF THE DOCUMENT CANNOT BE COPIED, THAT IT IS AVAILABLE FOR INSPECTION.

2. <u>Exhibit Book</u>:

In any trial where a party marks more than fifty (50) documentary exhibits, an exhibit book must be prepared containing copies of the exhibits. This book will consist of a three-ring binder with tabs for each exhibit. The proponent must prepare a binder for each party, the Court, and a binder for use of witnesses on the stand.

3. <u>Charts, Demonstrative Evidence and Physical Evidence</u>:

All charts not intended to be offered into evidence, other demonstrative evidence or items of physical evidence, must be made available for examination in Rochester or some other mutually agreeable place for a review at least two (2) business days before they are offered in evidence or displayed to the jury.

4. <u>Expert Testimony</u>:

The identity of all experts that will be called as witnesses must be provided to the Court. The proponent must also provide a brief summary of the ultimate opinions that will be rendered by the expert.

-5-

11/08/2004 03:02 PM                                                Hon David Q Larimer   585-813-4045   9/13

Note Well: The testimony of experts will be limited to the opinions and the grounds for each opinion set forth in answers to expert interrogatories. See Fed. R. Civ. P. 26(b)(4)(A)(i). The parties are responsible for taking steps to supplement any expert interrogatories to be in full compliance with this Rule.

5. <u>Deposition Testimony and Discovery Material</u>:

Each side must prepare and exchange an itemized list of deposition testimony (with page and line references), that it intends to use in its direct case. The parties should attempt to reconcile and resolve any disputes as to admissibility between the time of the pretrial conference and trial.

At the commencement of trial, the objecting party must file, in writing, a document listing its objections to the opponent's deposition material and the basis for that objection. If no objections are received, it will be deemed to be a waiver of objections to the proffered deposition testimony. The Court must be provided with copies of the depositions if there are objections to be resolved.

6. <u>Damages</u>:

Plaintiff must prepare an itemized statement of each element of special damages.

7. <u>Legal and Evidentiary Issues</u>:

All parties must prepare a detailed statement as to issues of law involved in the case and any unusual questions relative to the admissibility of evidence, trial procedure or substantive issues. This submission should include legal authority.

-6-

11/08/2004 03 03 PM                    Hon  David  G  Larimer   585-813-4065   10/13

The Court expects the parties to raise these potential issues at the pretrial conference, or as soon as they become evident, so that the Court and the parties will have adequate time to consider the issues.

C.  <u>Instruction Material</u>:

At the pretrial conference, in a separate bound document, plaintiff must supply the Court with two copies, and all parties with one copy, of its proposed charge on the substantive matters raised in the complaint, that is, the law relating to the causes of action pleaded including damages.

Each charge should be listed on a separate page with supporting authority or the source of the instruction listed at the bottom.

Each charge should also contain a notation at the bottom, "Given ____; Not Given ____; Given in Substance ____."

If counsel requests "form" instructions from form books, for example, Sand, <u>Modern Federal Jury Instructions</u>; Devitt & Blackmar, <u>Federal Jury Practice and Instructions</u>, or New York <u>Pattern Jury Instruction</u> (PJI), it will be sufficient to list the section number and a brief description of the charge.

The Court has many standard general instructions that it routinely gives, but it is the burden of counsel to make specific requests for special instructions relating to, for example, evidentiary issues, limiting instructions, impeachment matters, etc.

If defendant objects to plaintiff's proposed charge, or if defendant has other alternative charges to submit, they must be submitted <u>on the day prior to commencement of the trial</u>.

-7-

I certainly understand that matters may develop during trial that will require instructions, but certainly the elements of the claims and defenses can be set forth before trial commences.

PREPARATION OF INSTRUCTIONS BEFORE TRIAL IS IMPORTANT BECAUSE THE COURT, FROM TIME TO TIME, MAY INSTRUCT THE JURY ON SOME ISSUES IN THE CASE AT THE COMMENCEMENT OF THE TRIAL IN ADDITION TO THE CONCLUSION OF THE TRIAL.

2. Non-Jury.

At a non-jury trial, the parties need not prepare the Voir Dire Material or the Instruction Material except that the parties must prepare a list of prospective witnesses (II, 1[A], 4).

The parties must prepare all of the Trial Material (II, 1[B]).

### III. NOTES ABOUT TRIAL PROCEDURE

1. Jury Selection:

Concerning jury selection, the parties should be familiar with Local Rule 47.1. The Court will use the "struck jury system" as described in Local Rule 47.1 except that the Court will select the jury and alternates in one procedure, combining regular and alternate peremptory challenges.

The Court will limit peremptory challenges as provided in Local Rule 47.1; 28 U.S.C. § 1870; Fed. R. Civ. P. 48.

11/08/2004 03.04 PM                              Hon  David G  Larimer   585-613-4045   12/13

Plaintiff's counsel will exercise peremptory challenges first by writing the name and number of the juror on the strike sheet that will be provided. The strike sheet will then go to the defendant who will make his/her own strike by writing the name and number of a juror. The strike sheet will then come to the Court who will announce the jurors that have been excused.

If you do not exercise a challenge during a particular round, you lose only that peremptory challenge and you may make other peremptory challenges in later rounds against anyone in the box.

2. <u>Trial Schedule, Procedure, Exhibits, etc.</u>:

It is expected that we will maximize jury time as much as possible. This means that the Court will not engage in lengthy bench conferences or conferences in chambers concerning matters that could have been resolved before the jury arrives, during the luncheon recess or in the evening. When the jury is scheduled to appear, it is expected that we will begin proof at that time. Therefore, it is the burden of counsel, if they even remotely anticipate problems, to notify the Court so that time can be set aside when the jury is not present to resolve those issues. If necessary, the Court may direct the parties to appear at least 30-60 minutes before the jury arrives each day to resolve problems.

The parties are responsible for having witnesses available. The Court will take witnesses out of turn to accommodate witnesses.

At least by the evening before each day's session, counsel must advise the opponent and the Court of those witnesses expected to be called the following day.

-9-

The Court will set time limits for opening statements and closing arguments, and it is expected that counsel will adhere to those limits.

Exhibits that have been received into evidence must be kept on the table between the lecterns during court proceedings.  During evening recesses, each side will be responsible for maintaining custody of its exhibits and returning them to Court the next day (unless other arrangements are made with the Court).

Counsel need not ask permission to approach a witness with a document, but otherwise questioning should be done from no closer than the lectern.

The parties should be advised that the Court does not conduct trials on Fridays (I reserve that time for criminal matters, sentences and civil motions).  If the calendar is not extensive, it may be possible to convene the trial on Friday afternoons.

IT IS SO ORDERED.


_____
                    DAVID G. LARIMER
                    UNITED STATES DISTRICT JUDGE



Dated:  Rochester, New York
        November 8, 2004