<u>Exhibit E</u>

**The 1973 ECI/SMI Contract**

THIS AGREEMENT made this 14th day of March, 1974, between EVANS CHEMETICS, INC., a domestic corporation with its principal place of business at 228 East Main Street, Waterloo, New York, hereinafter referred to as Evans, and DOMINICK TANTALO, residing at Whiskey Hill Road, Waterloo, New York and TANTALO CONSTRUCTION, INC., a domestic corporation with its principal place of business at Whiskey Hill Road, Waterloo, New York, both hereinafter collectively referred to as Tantalo.

WITNESSETH:

WHEREAS, Evans conducts an operation in the Village of Waterloo, New York resulting in solid wastes which require proper and adequate disposal, and

WHEREAS, Tantalo operates a sanitary landfill operation in the Town of Seneca Falls, Seneca County, New York, and

WHEREAS, the parties desire to enter into an agreement for the disposal by Tantalo of certain solid wastes resulting from the Evans operations,

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, the parties do mutually agree as follows:

1. Tantalo agrees to receive and dispose of, in the manners hereinafter set forth, two (2) types of wastes:
   a. $NH_4Cl$ and $NH_4HSO_4$
   b. iron sulfides and iron hydroxides contained in a waste residue hereinafter referred to as "sludge", which Evans represents will be at least 40% solids.

2. The waste containing predominately $NH_4Cl$ and $NH_4HSO_4$ shall be sealed in metal drums by Evans pursuant to the letter of Frank E. Clark, Sanitary Engineer of the New York State Department of Environmental Conservation dated July 10, 1973, a copy of which is attached hereto as Exhibit A and made a part of this agreement.

3. The said drums shall be disposed of by burying in trenches, without compaction, pursuant to the requirements of the Department of Environmental Conservation's letter dated July 10, 1973, and shall not be disposed

-1-

of in the immediate area of the disposition of the sludge.

4. Said drums shall be delivered to the landfill site by Evans on a weekly basis or more often if circumstances require. Tantalo shall not allow the drums to accumulate for a period of more than one (1) month before disposition. Disposal of the drums must be in an area where heavy compaction of the soil is not permitted, and it is agreed that the containers shall not be ruptured during or after the disposal procedure.

5. The sludge shall be disposed of in compliance with the Department of Environmental Conservation's letter dated July 10, 1973, as follows: the sludge may be dumped pursuant to normal landfill practices, provided, however, that at the end of each working day any sludge deposited that day shall be covered with 100 lbs. of crushed limestone, to be supplied by Evans at its own expense, and then covered by a layer of soil fill not less than six (6) inches in depth, except that at final elevation there shall be a two (2) foot layer of cover.

6. Pursuant to the requirements of the Department of Environmental Conservation's July 10, 1973 letter, disposal of either of these materials shall not extend below a point five (5) feet above the seasonal high ground water level elevation.

7. In consideration for the disposal by Tantalo of the drums and their contents Evans shall pay Four Thousand Eight Hundred Dollars ($4,800.00) per year, payable at the rate of Four Hundred Dollars ($400.00) per month, based upon a maximum of one hundred (100) drums per month. Disposal of more than one hundred (100) drums per month, shall be at the additional rate and agreed compensation of Four Dollars ($4.00) per drum in excess of one hundred (100) drums per month.

8. In consideration for the disposal by Tantalo of the drums and their contents, as above provided, Evans shall guarantee the payment of Forty-Eight Hundred Dollars ($4,800.00) for the first year of this agree-

-2-

ment at the rate of Four Hundred Dollars ($400.00) monthly regardless of quantity of drums and materials delivered and shall be excused after the first year of this contract from the provision of having to pay for the disposal of drums at the rate of Four Hundred Dollars ($400.00) monthly in the event that Evans eliminates the necessity of disposal of the waste containing predominantly $NH_4Cl$ and $NH_4HSO_4$.

9. The parties further agree that Tantalo shall receive all trash from the existing Evans operation, as Tantalo has done in the past under an informal agreement, for a period of three (3) years. Evans agrees to pay to Tantalo the sum of Four Hundred Dollars ($400.00) monthly during the three (3) year term for such trash removal.

10. In consideration of the disposal by Tantalo of the sludge, which Tantalo will cart from Evans to the landfill operation, pursuant to the conditions of this agreement, Evans agrees to pay the sum of Twenty-Eight Thousand Three Hundred Twenty Dollars ($28,320.00) per year, payable in equal monthly installments of Two Thousand Three Hundred Sixty Dollars ($2,360.00) per month, based upon six (6) loads per week, each load not exceeding twenty (20) cubic yards. In the event that more than six (6) loads per week shall be required by Evans, it is agreed that additional compensation shall be paid to Tantalo at the rate of Sixty Dollars ($60.00) per load or part thereof in excess of six (6) loads per week.

11. The term of this agreement shall be a period of three (3) years commencing with the beginning of the operations of the new Evans plant which will produce the said wastes. Evans agrees to give Tantalo seven (7) days written notice of the commencement of operations at the new plant, and the first monthly billing shall be made thirty (30) days after the commencement of such operations.

12. Contrary to the provision of paragraph 11, Tantalo reserves the right to limit the initial term of the agreement regarding the disposal of the drums and the residue contained in them to a period of ninety (90) days from the commencement of operations, with the compensation therefor to be renegotiated at the end of said ninety (90) day period.

13. Evans agrees to hold harmless and indemnify Tantalo from and against any claim, cause of action, law suit or demand brought against the sanitary landfill operation and arising out of or relating to the sludge deposits or drum contents of Evans' materials, upon the condition that Tantalo deal with these materials in conformance with acceptable sanitary landfill practices as approved by the New York State Department with supervision over the disposal of such materials.

14. This agreement shall be extended for an additional term upon such other terms and conditions as the parties may hereinafter agree.

15. In the event that the Tantalo sanitary landfill operation shall be suspended or shut down by direction of any municipality or government agency or by any Court Order, the parties hereto, during the pendency of such closing or suspension, shall be relieved of any and all obligations assumed by them in this agreement.

16. This agreement shall not become effective unless and until the Department of Environmental Conservation shall approve of the agreement and the methods of disposal set forth hereinabove.

17. No liability shall result to either party from delay in performance, or nonperformance, caused by circumstances beyond the control of the party affected, including, but not limited to, Act of God, fire, flood, strike, riot, war, governmental action, or failure to obtain raw materials, and the operation of the provisions of this agreement shall be suspended during any such times.

18. This agreement is not assignable by Tantalo without Evans' consent in writing.

19. All of the terms and conditions of this agreement are contained herein and no alteration or variation of any of the provisions thereof may be made unless in writing signed by the parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this ___ day of _March_ 1974.

EVANS CHEMETICS, INC.

By _____

_____
DOMINICK TANTALO

TANTALO CONSTRUCTION, INC.

Seal                    By _____

STATE OF NEW YORK )
COUNTY OF         )  SS.:

On this ___ day of _March_ 1974, before me personally came _____ to me personally known, who being by me duly sworn, did depose and say that he resides at _____ that he is the _____ of Evans Chemetics, Inc., the corporation described in and which executed the within instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

_____
Notary Public
State of New York
Seneca County #718
Term: 3-30-75

-5-

STATE OF NEW YORK)
COUNTY OF ONTARIO)    SS.:

 On this /4th day of MARCH 1974, before, me, the subscriber personally appeared DOMINICK TANTALO to me personally known and known to me to be one of the persons described in and who executed the within instrument, and he acknowledged to me that he executed the same.

        _____
        Notary Public
        DAVID N. COHEN
        Notary Public, State of New York
        Seneca County, No. 650
        My Commission Expires March 30, 19 75

STATE OF NEW YORK)
COUNTY OF ONTARIO)    SS.:

 On this /4th day of MARCH 1974, before me personally came DOMINICK TANTALO to me personally known who being by me duly sworn, did depose and say that he resides at Whiskey Hill Road, Waterloo, New York; that he is the President of TANTALO CONSTRUCTION, INC., the corporation described in, and which executed the within instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

        _____
        Notary Public
        DAVID N. COHEN
        Notary Public, State of New York
        Seneca County, No. 650
        My Commission Expires March 30, 19 75