<u>EXHIBIT J</u>

**Second Amended Complaint**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| SENECA MEADOWS, INC.<br>1786 Salcman Road<br>Waterloo, New York  13165<br><br>and<br><br>MACEDON HOMES, INC.<br>4400 Nine Mile Point Road<br>Fairport, New York  14450-8792<br><br>Plaintiffs,<br>vs.<br><br>ECI LIQUIDATING, INC.<br>EVANS CHEMETICS, INC.<br>EVANS CHEMETICS DIVISION OF HAMPSHIRE<br>    CHEMICAL CORP.<br>EVANS CHEMETICS DIVISION OF W.R. GRACE & CO.<br>EVANS CHEMETICS DIVISION OF W.R. GRACE<br>    & CO. - CONN.<br>FISHER BODY DIVISION OF GENERAL MOTORS CORP.<br>FISHER GUIDE DIVISION OF GENERAL MOTORS CORP.<br>GTE CORPORATION<br>GTE PRODUCTS CORPORATION<br>GTE SYLVANIA INCORPORATED<br>GENERAL MOTORS CORPORATION<br>GENERAL TELEPHONE & ELECTRONICS CORPORATION<br>GOULDS PUMPS, INCORPORATED<br>GOULDS PUMPS (N.Y.), INC.<br>HAMPSHIRE CHEMICAL CORP.<br>NORTH AMERICAN PHILIPS CORPORATION<br>OSRAM SYLVANIA INC.<br>PHILIPS ELECTRONICS NORTH AMERICA CORPORATION<br>SALES AFFILIATES, INC.<br>SYLVANIA ELECTRIC PRODUCTS, INC.<br>SYLVANIA ELECTRICAL PRODUCTS INC.<br>W.R. GRACE & CO.<br>W.R. GRACE & CO. - CONN.,<br>ZOTOS INTERNATIONAL, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No.<br>95-CV-6400L<br>**SECOND<br>AMENDED<br>COMPLAINT** |

---

Plaintiffs, by their attorneys, Underberg & Kessler, LLP, allege as follows:

## I.  JURISDICTION AND VENUE

1.    This action is brought pursuant to sections 112 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§9612 and 9613, the Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., and federal and New York State common law.

2.    Plaintiff Seneca Meadows, Inc. ("SMI") seeks recovery from defendants for response costs which SMI has already incurred and response costs which it will incur in the future, including response costs relating to claims for natural resource damages, as well as common law damages and for injunctive and declaratory relief, and appropriate further relief.  Response costs have been incurred and will be incurred because of contamination at the Tantalo Landfill Site located in the Town of Seneca Falls, New York (the "Tantalo Site") and because of off-site contamination in the surrounding area.

3.    Plaintiff Macedon Homes, Inc. ("MHI") seeks recovery jointly and severally from defendants for contamination of its property, including common law damages and for injunctive and declaratory relief, and appropriate further relief.

4.    This Court has jurisdiction over the federal statutory claims pursuant to section 113 of CERCLA, and 28 U.S.C. §1331.  SMI seeks recovery under federal law, specifically 42 U.S.C. §§9612(c) and 9613(f) and federal common law.

5. This Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to 28 U.S.C. §§2201, 2202 and 42 U.S.C. §9613(g)(2).

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over claims arising under New York common law because those claims arise out of a common nucleus of operative facts shared with the federal causes of action and the federal and state law claims form part of the same case and controversy.

7. Venue lies in the Western District of New York pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §9613(b) because the Tantalo Site and adjacent properties are located within this judicial district, the acts complained of occurred in this judicial district, and the releases or threatened releases of hazardous substances at and/or from the Tantalo Site and adjacent properties have occurred or threaten to occur within this judicial district. In addition, many of the parties, including SMI, MHI and several defendants, are located within the Western District.

## II. GENERAL ALLEGATIONS

8. The Tantalo Site is located north of Salcman Road, east of the Waterloo Town Line, west of State Route 414, and south of Black Brook in the Town of Seneca Falls, State of New York. The Tantalo Site is currently owned by SMI. SMI also owns parcels of property adjacent to the Tantalo Site.

9. The parcel of real property comprising the Tantalo Site is within a larger parcel identified as Tax Map No.30-1-02 in the County of Seneca records.

10. The MHI property consists of parcels identified as Tax Map Parcel No. 19-1-26.12 and 33-1-72 in the County of Seneca records ("MHI Property").

11.    MHI owns two parcels of real property adjacent to the Tantalo Site. These parcels are located north of North Road, south of Salcman Road, west of State Route 414 and east of Burgess Road and located partially in the Town of Waterloo and partially in the Town of Seneca Falls, State of New York.

12.    The Tantalo Site is listed on the New York State Department of Environmental Conservation's ("DEC's") Registry of Inactive Hazardous Waste Sites as a Class 2 site, designated as Site number 8-50-004.

13.    Upon information and belief, land filling and other waste disposal practices commenced at the Tantalo Site in approximately 1958 and continued until at least 1974.

14.    Upon information and belief, during this period, hazardous substances, as defined by CERCLA, 42 U.S.C. §9601 (14), were disposed of, treated and/or released at the Tantalo Site, including, but not limited to:

ammonium bisulfate
hydrated iron oxide
zinc chloride
heavy metals
nickel
ethanol
acetone
chrome
trichloroethane
methylene chloride
chlorinated solvents
formaldehyde
paint sludge
nickel
chromium
wastewater treatment sludge
$NH_4HSO_4$

ammonium chloride
waste oil
hydrochloric acid
filtercake from thioglycolic acid process
zinc
methanol
methylmethacrylate
trichloroethylene
perchloroethylene
lead carbonate
foundry sand
phenols
solvents
kolene sludge (EPA Waste Code D002)
PCBs
$NH_4Cl$

15.   Defendants have:

    (i)    generated and/or arranged for disposal or treatment of hazardous substances at the Tantalo Site; and/or

    (ii)    arranged with a transporter for transport and disposal or treatment at the Tantalo Site of hazardous substances owned, possessed and/or generated by defendants; and/or

    (iii)    transported hazardous substances to the Tantalo Site for disposal or treatment and participated in the selection of the Tantalo Site for such disposal or treatment.

16.   SMI entered into a Consent Order with DEC, dated August 19, 1992. The Consent Order establishes the terms and conditions of the remedial investigation and feasibility study ("RI/FS") at the Tantalo Site. The Consent Order requires, among other things, that SMI fund the RI/FS at the Tantalo Site.

17.   Upon information and belief, defendants were notified by DEC that they are potentially responsible parties ("PRPs") at the Tantalo Site.

18.   Results of on-site and off-site investigations indicate that various hazardous substances, including but not limited to VOCs, trichloroethylene, 1,2 - dichloroethylene, vinyl chloride, benzene, chloroethane, xylene and various inorganic substances/metals are present in the groundwater at the Tantalo Site and in the groundwater beneath the surrounding area including in the area of the MHI Property. These substances are "hazardous substances" as defined by CERCLA, 42 U.S.C. §9601(14).

19.   Each of the defendants is a "person" as defined in CERCLA, 42 U.S.C. §9601(21).

20.    Releases or threatened releases of hazardous substances, as defined by CERCLA, 42 U.S.C. §9601(22), have occurred and/or are occurring at the Tantalo Site and the surrounding area.

21.    The hazardous substances released or threatened to be released from the Tantalo Site have commingled to produce an indivisible harm.

22.    Upon information and belief, some of the releases or threatened releases of hazardous substances may have been sudden and accidental.

23.    The Tantalo Site is a "facility" as defined in CERCLA, 42 U.S.C. §9601(9).

24.    As a result of the defendants' acts and of the release or threatened release of hazardous substances, SMI has incurred over $1,597,329.00 in response costs, and will continue to incur future response costs at the Tantalo Site, which, upon information and belief, may exceed $20,000,000.00. All response costs have been and will continue to be necessary and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP"), 40 C.F.R. Part 300 and the applicable New York State regulations. All response costs are recoverable by SMI pursuant to CERCLA, 42 U.S.C. §9613.

25.    In addition, SMI has suffered damages pursuant to New York law, including loss in value of its property at and in the vicinity of the Tantalo Site, loss of use and enjoyment of its property at and in the vicinity of the Tantalo Site, costs to respond to and investigate the contamination, and additional damages pursuant to the causes of action herein. SMI will continue to suffer these and similar damages in the future.

26.    MHI has suffered damages pursuant to New York law, including loss in value of the MHI Property, loss of use and enjoyment of the MHI Property, and additional

damages pursuant to the causes of action herein. MHI will continue to suffer these and similar damages in the future.

27.    Upon information and belief, defendants have taken no response action at the Tantalo Site and have incurred no response costs at the Tantalo Site. Defendants have not reimbursed SMI or MHI for response costs or damages incurred.

## III.  PARTIES

### Plaintiffs

28.    Plaintiff SMI was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1786 Salcman Road in the Town of Seneca Falls, State of New York.

29.    Plaintiff MHI was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 4400 Nine Mile Point Road in the Village of Fairport, State of New York.

### Defendants

#### A.    ECI LIQUIDATING, INC. and EVANS CHEMETICS, INC.

30.    Upon information and belief, ECI Liquidating, Inc. ("ECI") was formerly named Evans Chemetics, Inc. ("Evans") (collectively "ECI/Evans").

31.    ECI/Evans was and is a corporation organized and existing under the laws of the State of New York.

32.    Upon information and belief, ECI/Evans owned and operated manufacturing/industrial plants at 228 East Main Street in the Village of Waterloo, State

of New York and in the Town of Geneva, State of New York ("Evans Plants"). Upon information and belief:

  a.  ECI/Evans was and is a person within the meaning of CERCLA.

  b.  ECI/Evans arranged for disposal or treatment of hazardous substances at the Tantalo Site, or arranged with a transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site for the period at least from 1958 to 1974.

  c.  The hazardous substances were generated, owned and/or possessed by ECI/Evans and resulted from various ECI/Evans activities including, but not limited to manufacturing/industrial and other operations at the Evans Plants.

  d.  ECI/Evans generated, owned, possessed, and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to filtercake from thioglycolic acid process; ammonium bisulfate; ammonium chloride; wastewater treatment sludge; $NH_4Cl$ and $NH_4HSO_4$; hydrated iron oxide; waste oil; zinc chloride; hydrochloric acid; nickel; and zinc.

  e.  ECI/Evans transported hazardous substances to the Tantalo Site for disposal or treatment.

  f.  ECI/Evans selected the Tantalo Site for disposal of hazardous substances.

33.  ECI/Evans is liable under CERCLA as a generator, arranger and transporter of hazardous substances to the Tantalo Site.

### B.    SALES AFFILIATES, INC. and ZOTOS INTERNATIONAL, INC.

34.    Upon information and belief, Sales Affiliates, Inc. was formerly named Evans Research and Development Corporation (collectively "Sales Affiliates").

35.    Sales Affiliates was and is a corporation organized and existing under the laws of the State of New York with its principal place of business at 90-100 Tokemeke Road, Darien, CT 06820.

36.    Sales Affiliates was and is a person within the meaning of CERCLA.

37.    Upon information and belief, at all material times, Sales Affiliates was the parent corporation of ECI/Evans, owning all of ECI/Evans' stock.

38.    Upon information and belief, Sales Affiliates dominated and controlled ECI/Evans, had the authority to control ECI/Evans' waste disposal practices and ECI/Evans' financial affairs, and in fact exercised this control.

39.    Upon information and belief, Sales Affiliates was in fact the alter ego of ECI/Evans.

40.    As a result, Sales Affiliates was a controlling parent of ECI/Evans at the time of disposal of hazardous substances at the Tantalo Site, and is liable for ECI/Evans' activities under CERCLA and federal and New York State common law.

41.    Upon information and belief, Zotos International, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 300 Forge Avenue, Geneva, New York 14456-0071.

42.    Upon information and belief, Zotos International, Inc. was formerly named Sales Affiliates, Inc. until the corporation's name was changed on October 21, 1969 (collectively "Zotos International").

43.    Zotos International, Inc. was and is a person within the meaning of CERCLA.

44.    Upon information and belief, Zotos International had the same shareholder(s) as Sales Affiliates and during part of the relevant period was a wholly-owned subsidiary of Sales Affiliates.

45.    Upon information and belief, Zotos International dominated and controlled ECI/Evans, had the authority to control ECI/Evans' waste disposal practices and was in fact the alter ego of ECI/Evans.

46.    As a result, Zotos International controlled ECI/Evans at the time of disposal of hazardous substances at the Tantalo Site and is liable for ECI/Evans' activities under CERCLA and federal and New York State common law.

47.    Upon information and belief, Zotos International operated a manufacturing/industrial plant at 228 East Main Street in the Village of Waterloo, New York, until approximately 1963 or 1964, for the purpose of manufacturing hair care products.

48.    In approximately 1963 or 1964, Zotos International moved its manufacturing operations to a facility located in the City or Town of Geneva, New York.

49.    In connection with its manufacturing operations, Zotos International generated, owned and/or possessed hazardous substances which it arranged to have transported for disposal or treatment during the period 1958 to 1974.

50.    Upon information and belief, some or all of the wastes containing hazardous substances generated, owned and/or possessed by Zotos International during the period 1958 to 1974 were disposed at the Tantalo Site.

51.    Upon information and belief, Zotos International itself transported hazardous substances to the Tantalo Site for disposal during the period 1958 to 1974.

52.    Zotos International selected the Tantalo Site for the disposal of hazardous substances which it transported.

53.    Zotos International is liable under CERCLA as the generator, arranger and transporter of hazardous substances which were disposed at the Tantalo Site.

### C.    W.R. GRACE & CO., W.R. GRACE & CO. - CONN. and EVANS CHEMETICS DIVISIONS

54.    Upon information and belief, W.R. Grace & Co. and/or W.R. Grace & Co. - Conn. conducted operations through their Evans Chemetics Divisions.

55.    Defendant W.R. Grace & Co. was and is a corporation organized and existing under the laws of the State of New York with a principal place of business at One Town Center Road, Boca Raton, Florida and defendant W.R. Grace & Co.-Conn. was and is a corporation organized and existing under the laws of the State of Connecticut with a principal place of business at One Town Center Road, Boca Raton, Florida (The foregoing entities, along with their Evans Chemetics Divisions, collectively are referred to as "W.R. Grace").

56.    W.R. Grace was and is authorized to do business in the State of New York.

57.    W.R. Grace was and is a person within the meaning of CERCLA.

58.    Upon information and belief, W.R. Grace acquired the ECI/Evans business in 1978, including all of the assets and operations at the Evans' Plants. Upon information and belief, the acquisition was completed through the issuance of W.R. Grace common stock in exchange for ECI/Evans stock and/or assets.

59.    Upon information and belief, W.R. Grace obtained and continued to operate the ECI/Evans business. Upon information and belief, W.R. Grace retained ECI/Evans' employees, acquired all of ECI/Evans' assets including real property, equipment, machinery, inventory, supplies, records, customer lists, and contracts, continued ECI/Evans' business operations in the same manner as ECI/Evans, maintained the ECI/Evans name, and otherwise succeeded to the ECI/Evans business, including operations at the Evans Plants.

60.    As a result of the foregoing, W.R. Grace is the successor in interest to ECI/Evans, and is liable for ECI/Evans' activities as a successor in interest under CERCLA and federal and New York State common law.

61.    Upon information and belief, when W.R. Grace later divested itself of the ECI/Evans business and ECI/Evans Plants, W.R. Grace agreed to retain environmental liabilities for ECI/Evans' past activities.

### D.  HAMPSHIRE CHEMICAL CORP. and ITS EVANS CHEMETICS DIVISION

62.    Upon information and belief, Hampshire Chemical Corp. conducted operations through its Evans Chemetics Division (collectively "Hampshire Chemical").

63.    Upon information and belief, Hampshire Chemical was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 55 Hayden Ave., Lexington, Massachusetts  02173.

64.    Hampshire Chemical owns and operates one of the former Evans Plants at 228 East Main Street in the Village of Waterloo, State of New York.

65.    Hampshire Chemical was and is a person within the meaning of CERCLA.

66.    Hampshire Chemical is authorized to do business in the State of New York.

67.    Upon information and belief, Hampshire Chemical acquired the Evans business in 1993 from W.R. Grace, including all of the assets and operations at the Evans Plants in Waterloo.

68.    Upon information and belief, Hampshire Chemical obtained and continued to operate the ECI/Evans business.  Upon information and belief, Hampshire Chemical retained ECI/Evans employees, continued the ECI/Evans business operations, maintained the Evans name, continued with the same management personnel, and otherwise succeeded to the ECI/Evans business.

69.    As a result, Hampshire Chemical is the successor in interest to W.R. Grace/ECI/Evans, and is liable for ECI/Evans' activities as a successor in interest under CERCLA and federal and New York State common law.

### E.    THE SYLVANIA DEFENDANTS

70.    Upon information and belief, OSRAM Sylvania Inc. is a successor to and/or is in fact the same entity as one or more of the following: Sylvania Electrical Products, Inc.; Sylvania Electric Products Inc.; GTE Sylvania Incorporated; and GTE Products Corporation (OSRAM Sylvania Inc. and the foregoing entities are collectively referred to as the "Sylvania Defendants").

71.    The Sylvania Defendants were and are corporations organized and existing under the laws of the State of Delaware with a common principal place of business at 100 Endicott Street, Danvers, Massachusetts.

72.    The Sylvania Defendants are authorized to do business in the State of New York.

73.    Upon information and belief, the Sylvania Defendants formerly owned and operated a manufacturing/industrial plant on Johnston Street in Seneca Falls, New York (the "Sylvania Plant").  Upon information and belief:

     a.    The Sylvania Defendants were and are persons within the meaning of CERCLA.

     b.    The Sylvania Defendants arranged for disposal or treatment of hazardous substances at the Tantalo Site, or arranged with a transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site during the period 1958 to 1974.

     c.    The hazardous substances were generated, owned and/or possessed by the Sylvania Defendants and resulted from various Sylvania Defendants' activities including, but not limited to manufacturing and other operations at the Sylvania Plant located in Seneca Falls, New York.

     d.    The Sylvania Defendants generated, owned, possessed and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to ethanol, methanol, acetone, methylmethacrylate, chrome, waste oil, trichloroethylene,

trichloroethane,    perchloroethylene,    methylene    chloride,    lead

carbonate and chlorinated solvents.

e.     The Sylvania Defendants transported hazardous substances to the

Tantalo Site for disposal or treatment.

f.     The Sylvania Defendants selected the Tantalo Site for disposal of

hazardous substances.

74.     The Sylvania Defendants are liable under CERCLA as generators, arrangers,

and transporters of hazardous substances to the Tantalo Site.

### F.   GTE CORPORATION and GENERAL TELEPHONE & ELECTRONICS CORPORATION

75.     Upon information and belief, defendant GTE Corporation was formerly named

General Telephone & Electronics Corporation (collectively "GTE Corp.").

76.     GTE Corp. was and is a corporation organized and existing under the laws

of the State of New York with its principal place of business at One Stamford Forum,

Stamford, CT  06904.

77.     GTE Corp. was and is a person within the meaning of CERCLA.

78.     Upon information and belief, one or more of the Sylvania Defendants were

wholly owned subsidiaries of GTE Corp. at the time that one or more of the Sylvania

Defendants' hazardous substances were disposed at the Tantalo Site.

79.     Upon information and belief, GTE Corp. dominated and controlled one or

more of the Sylvania Defendants, had the authority to control one or more of the Sylvania

Defendants' waste disposal practices and financial affairs, and in fact exercised this

control.

80.    Upon information and belief, GTE Corp. was in fact the alter ego of one or more of the Sylvania Defendants.

81.    As a result, GTE Corp. was a controlling parent of one or more of the Sylvania Defendants at the time of disposal of hazardous substances at the Tantalo Site, and is liable for the activities of one or more of the Sylvania Defendants and their predecessors under CERCLA and federal and New York State common law.

## G.    PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and NORTH AMERICAN PHILIPS CORPORATION

82.    Upon information and belief, Philips Electronics North America Corporation was formerly named North American Philips Corporation (collectively "Philips").

83.    Philips was and is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 100 East 42nd Street, New York, New York.

84.    Upon information and belief, Philips owns and operates the former Sylvania Plant at 50 Johnston Street, Seneca Falls, New York.

85.    Philips is authorized to do business in the State of New York.

86.    Philips was and is a person within the meaning of CERCLA.

87.    Upon information and belief, Philips acquired all of the assets and operations of the Sylvania Defendants at the Seneca Falls industrial facility and operations, including the Sylvania Plant.

88.    Upon information and belief, Philips retained the Sylvania Defendants' employees, continued the business operations, and otherwise succeeded to the Sylvania Defendants' business.

89.    As a result, Philips is the successor in interest to the Sylvania Defendants and their predecessors, and is liable for the activities of Sylvania Defendants and their predecessors as a successor in interest under CERCLA and federal and New York State common law.

### H.    GOULDS PUMPS, INCORPORATED and GOULDS PUMPS (N.Y.), INC.

90.    Goulds Pumps, Incorporated is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 240 Falls Street, Seneca Falls, New York and Goulds Pumps (N.Y.), Inc. is a corporation organized and existing under the laws of the State of New York with the same principal offices and same address (collectively "Goulds Pumps").

91.    Goulds Pumps was and is authorized to do business in the State of New York.

92.    Upon information and belief, at all relevant times, Goulds Pumps owned and operated manufacturing/industrial facilities at Falls Street in the Village of Seneca Falls ("Goulds Plant"). Upon information and belief:

    a.    Goulds Pumps was and is a person within the meaning of CERCLA.

    b.    Goulds Pumps arranged for disposal or treatment of hazardous substances at the Tantalo Site, or arranged with a transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site during the period at least from 1965 to 1974.

    c.    The hazardous substances were generated, owned and/or possessed by Goulds Pumps and resulted from various Goulds Pumps' activities

including but not limited to manufacturing operations at the Goulds Plant.

    d.    Goulds Pumps generated, owned, possessed and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to foundry sand, formaldehyde, phenols and paint sludge.

    e.    Goulds Pumps transported hazardous substances to the Tantalo Site for disposal or treatment.

    f.    Goulds Pumps selected the Tantalo Site for disposal of hazardous substances.

93.    Goulds Pumps is liable under CERCLA as a generator, arranger and transporter of hazardous substances at the Tantalo Site.

## I.   GENERAL MOTORS CORPORATION and FISHER GUIDE- FISHER BODY DIVISIONS

94.    Upon information and belief, General Motors Corporation conducted/conducts operations through its Fisher Guide and/or Fisher Body Divisions (collectively "GM").

95.    Upon information and belief, GM was and is a corporation organized and existing under the laws of the State of Delaware with a place of business at 1000 Town Line Road in Syracuse, New York.

96.    GM was and is authorized to do business in the State of New York.

97.    Upon information and belief, at all relevant times, GM owned and operated an industrial facility located at 1000 Town Line Road in Syracuse, New York ("Fisher Guide Plant"). Upon information and belief:

    a.    GM was and is a person within the meaning of CERCLA.

b.     GM has arranged for disposal or treatment of hazardous substances at the Tantalo Site, or has arranged with a transporter for transport and disposal or treatment of hazardous substances at the Tantalo Site from various GM activities including, but not limited to operations at the Fisher Guide Plant for the period including 1973 and 1974.

c.     The hazardous substances disposed at the Tantalo Site were generated, owned and/or possessed by GM.

d.     GM generated, owned, possessed and/or arranged for disposal at the Tantalo Site of hazardous substances, including but not limited to paint sludge, various heavy metals, kolene sludge (EPA Waste Code D002), solvents, nickel, chromium, PCBs and treatment sludge.

98.    GM is liable under CERCLA as a generator and arranger for disposal of hazardous substances at the Tantalo Site.

## IV.  FIRST CLAIM FOR RELIEF, UNDER CERCLA §113

99.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "98" of this Complaint.

100.    As a result of the release or threatened release of hazardous substances at the Tantalo Site, SMI has incurred response costs in an amount of at least $1,597,329.00 and will incur additional response costs in the future which, upon information and belief, may exceed $20,000,000.00.

101.    The response costs incurred and to be incurred by SMI are necessary and consistent with the NCP and the appropriate New York regulations.

102.    Pursuant to CERCLA, 42 U.S.C. §§9601(32) and 9607(a)(1)-(4), defendants, as "covered persons", or as successors in interest or controlling parents of covered persons, are strictly liable to SMI for some or all response costs incurred and to be incurred by SMI in response to the release or threatened release of hazardous substances at and from the Tantalo Site.

103.    SMI has incurred and will continue to incur response costs in connection with the Tantalo Site in excess of its true equitable share of responsibility for contamination at the Tantalo Site.

104.    Upon information and belief, defendants have incurred no response costs and have not paid their true equitable shares of response costs for the Tantalo Site.

105.    Pursuant to CERCLA, 42 U.S.C. §§9601(32), 9613(f), and 9607, defendants are liable in contribution to SMI for all response costs incurred and to be incurred by SMI, to the extent that such response costs incurred by SMI are in excess of SMI's true equitable share.

## V.    SECOND CLAIM FOR RELIEF, FOR DECLARATORY JUDGMENT

106.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "105" of this Complaint.

107.    An actual, substantial, legal controversy now exists between SMI and defendants based upon defendants' obligation to reimburse SMI for its past and future costs of response resulting from or arising out of the release(s) which occurred and which may occur at the Tantalo Site for which the defendants are strictly, jointly and severally liable under CERCLA.

108.    A declaratory judgment defining the future obligations of the parties will prevent the need for multiple lawsuits as SMI incurs response costs and other damages in the future and will provide a final resolution of the issue between the parties regarding liability for such costs and damages.

109.    A declaratory judgment will further the public interest by ensuring an environmentally proper response and by ensuring that SMI will be reimbursed for necessary response costs incurred.

110.    SMI is entitled to a declaratory judgment stating that defendants are legally responsible for the future response costs incurred by SMI in connection with the release or threatened release of hazardous substances at and in the vicinity of the Tantalo Site pursuant to 28 U.S.C. §2201.

## VI.   THIRD CLAIM FOR RELIEF, UNDER CERCLA §112

111.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "110" of this Complaint.

112.    DEC has rights, claims and causes of action against defendants, including but not limited to claims under CERCLA §107, New York Environmental Conservation Law and other applicable law.

113.    Defendants, as liable parties under CERCLA, New York Conservation Law and other applicable law, have obligations to DEC to investigate and remediate the contamination, releases and/or threatened releases of hazardous substances at the Tantalo Site, and to compensate DEC for costs it incurs.

114.    SMI has paid "compensation" to DEC in the amount of $71,909.00, pursuant to the Consent Order entered into between SMI and DEC, including compensation to DEC

for oversight costs, other DEC expenses, and other response costs resulting from the release or threatened release of hazardous substances at the Tantalo Site.

115.    SMI has incurred response costs in investigating and responding to the contamination, releases and/or threatened releases of hazardous substances at the Tantalo Site.

116.    SMI is a "person" within the meaning of CERCLA.

117.    DEC is a "claimant" within the meaning of CERCLA.

118.    Pursuant to CERCLA §112(c), 42 U.S.C. §9612(c), SMI is subrogated to all rights, claims and causes of action that DEC has against defendants under CERCLA, New York Environmental Conservation Law and other applicable law.

119.    As subrogee, SMI is entitled to: (i) reimbursement from defendants of all response costs and oversight costs which SMI has paid to DEC and will continue to pay to DEC, plus attorney's fees and other costs; (ii) reimbursement from defendants of any other response costs incurred by SMI as compelled by or in connection with the Consent Order or any other investigation or response activities at the Tantalo Site or nearby properties; and (iii) reimbursement from defendants of any other costs that SMI has incurred or will in the future incur as compelled by or in connection with the Consent Order or other orders and agreements with DEC to conduct other response activities in connection with the Tantalo Site.

## VII.    FOURTH CLAIM FOR RELIEF, FOR NEGLIGENCE

120.    Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "119" of this Complaint.

121.   At all relevant times, defendants knew or should have known of the hazardous nature of the hazardous substances and wastes used, generated, disposed at, handled, transported to or otherwise present at the Tantalo Site in connection with each defendants' operations.

122.   At all relevant times, defendants knew or should have known of the potential for a release of hazardous substances or waste to the environment at the Tantalo Site and to nearby properties including the MHI Property.

123.   Defendants, as generators of hazardous substances or waste disposed of at the Tantalo Site and/or as transporters of hazardous substances or waste to the Tantalo Site, owed a duty to SMI and MHI to act and/or to require others to act in a safe and reasonable manner in treating, storing, disposing, transporting and handling the hazardous substances or waste.  This duty extended to: (i) taking precautions in order to prevent a release of hazardous substances or waste at the Tantalo Site, (ii) preventing any releases of hazardous substances or waste from migrating at or from the Tantalo Site, (iii) limiting the risk of danger, loss and liability faced by SMI, MHI and/or their employees due to the presence of hazardous substances and wastes at the Tantalo Site and nearby properties and (iv) containing, remediating or otherwise addressing the contamination at the Tantalo Site and nearby properties.

124.   The acts or omissions of defendants with regard to the hazardous substances or wastes at the Tantalo Site were unreasonable, negligent, wanton, reckless and in total disregard for the safety, welfare and health of SMI, the Tantalo Site and nearby properties including the MHI Property, SMI's and MHI's employees, the general public and the environment.

125.    Defendants breached the above duties to SMI and MHI, resulting in the discharge, release, and/or migration of hazardous substances and wastes to the environment and further resulting in contamination of and damage to the Tantalo Site and nearby properties, including MHI Property.

126.    As a result of the foregoing, SMI has incurred expenses in the investigation and cleanup of the Tantalo Site, has suffered a decline in the fair market value of its property both at and in the vicinity of the Tantalo Site, and will incur additional expenses, losses, costs and damages in the future.

127.    As a result of the foregoing, MHI has suffered a decline in the fair market value of the MHI Property, and will incur additional expenses, losses, costs and damages in the future.

128.    By reason of the foregoing, SMI and MHI are entitled to compensatory damages in an amount which will compensate SMI and MHI for their losses and other damage, and a declaration of defendants' liability for future losses and damages incurred.

### VIII.    FIFTH CLAIM FOR RELIEF, FOR UNJUST ENRICHMENT

129.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "128" of this Complaint.

130.    Defendants, as liable parties under CERCLA, New York Environmental Conservation Law and other applicable law, have obligations to DEC to investigate and remediate the contamination, releases and/or threatened releases of hazardous substances at the Tantalo Site, and to compensate DEC for costs it incurs.

131.    SMI has incurred and will continue to incur losses and future additional expenses in the investigation and cleanup of the Tantalo Site and nearby properties, and

will incur additional expenses, losses and costs in the future due to the individual and collective acts or omissions of defendants which resulted in the leaking, spilling, discharging and releasing of various hazardous substances and wastes into the environment at the Tantalo Site and/or the migration of those substances at the Tantalo Site and nearby properties.

132.    Defendants have been unjustly enriched to the extent that:

(i)    SMI has paid for the above-described investigation and analysis,

(ii)·    SMI has paid for the provision of alternate water supplies in the area, and

(iii)    SMI may be required to pay in the future for additional investigation, remediation and response at the Tantalo Site and nearby properties as a result of the conduct of defendants.

133.    SMI may be compelled in the future to further investigate and remediate the Tantalo Site and nearby properties as a result of contamination caused by hazardous substances and wastes which were spilled, discharged, leaked or released at the Tantalo Site.

134.    SMI has discharged and continues to discharge a liability that is equitably attributable to defendants as a result of the conduct alleged herein.

135.    SMI is entitled to compensation for all previous and future losses and damages in connection with the Tantalo Site and nearby properties.

### IX.   SIXTH CLAIM FOR RELIEF, FOR RESTITUTION

136.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "135" of this Complaint.

137.   SMI has expended and will be required to expend money to correct and remedy the contaminated conditions at the Tantalo Site and nearby properties pursuant to CERCLA and other applicable law.  These contaminated conditions were caused by the conduct of defendants as alleged herein.

138.   SMI has expended money on behalf of the legal obligations of defendants to investigate, evaluate, contain, and remove the contamination at the Tantalo Site and nearby properties.

139.   Pursuant to common law principles of restitution, defendants are required, but have failed, to reimburse SMI for the costs and expenses incurred by SMI.

## X.   SEVENTH CLAIM FOR RELIEF, FOR CONTRIBUTION

140.   Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "139" of this Complaint.

141.   New York CPLR §1401 provides that if two or more persons are subject to liability for damages for the same injury to property, one person may claim contribution from the other whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

142.   As a direct and proximate result of the acts or omissions of defendants, SMI has incurred and will in the future incur costs for investigation, evaluation, containment, removal and remediation of the Tantalo Site and nearby properties due to releases of hazardous substances or wastes into the soil, water and air at the Tantalo Site.

143.   SMI is entitled to complete indemnification and/or contribution from defendants pursuant to CPLR §1401 for all necessary costs of response, as well as expenses and disbursements.

144.   Although SMI believes that it is entitled to complete indemnification and/or contribution, if it is determined that SMI is not entitled to complete indemnification and/or contribution, SMI seeks judgment in the amount of the equitable shares of liability attributable to defendants.

## XI.   EIGHTH CLAIM FOR RELIEF, FOR PRIVATE NUISANCE

145.   Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "144" of this Complaint.

146.   Defendants, as a result of the foregoing, individually and collectively have unreasonably interfered with and invaded SMI's interest in the use and enjoyment of the Tantalo Site and nearby properties owned by SMI by virtue of creating or contributing to the past and continuing release, migration and movement of the hazardous substances and wastes into the environment at the Tantalo Site and the nearby properties.

147.   Defendants, as a result of the foregoing, individually and collectively have unreasonably interfered with and invaded MHI's interest in the use and enjoyment of the MHI Property by virtue of creating or contributing to the past and continuing release, migration and movement of the hazardous substances and wastes into the environment at the Tantalo Site and the nearby properties including the MHI Property.

148.   As a result of the intentional, reckless, wanton, negligent and/or ultrahazardous conduct of defendants, the hazardous substances or wastes have discharged or migrated into the soil, air and water at the Tantalo Site and nearby properties including the MHI Property, and threaten to continue to do so for the foreseeable future resulting in an ongoing interference.

149.    Such migration and movement of the hazardous substances and wastes at the Tantalo Site and nearby properties, including the MHI Property, constitutes a private nuisance.

150.    Defendants are jointly and severally liable to SMI and MHI for all costs in connection with the abatement of the nuisance as well as damages for all losses incurred and to be incurred by SMI and MHI.

151.    Upon information and belief, plaintiffs are suffering irreparable harm because of the nuisance and have no adequate remedy at law.

152.    Defendants must be enjoined to abate the continuing nuisance.

## XII.    NINTH CLAIM FOR RELIEF, FOR PUBLIC NUISANCE

153.    Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "152" of this Complaint.

154.    Defendants, as a result of the foregoing, created or participated in the creation of the hazardous substance contamination at the Tantalo Site and nearby properties, including contamination of the groundwater of the State of New York.  The contamination poses a danger to public health and the environment, and thereby, constitutes a public nuisance.

155.    SMI has suffered special damage in the form of the losses described above as a result of its ownership of the Tantalo Site and the nearby properties.

156.    MHI has suffered special damage in the form of the losses described above as a result of its ownership of properties adjacent to the Tantalo Site.

157.    Upon information and belief, plaintiffs are suffering irreparable harm because of the nuisance and have no adequate remedy at law.

158.    Defendants must be enjoined to abate the continuing nuisance.

159.    Defendants are jointly and severally liable to SMI and MHI for all costs and damages incurred and to be incurred in responding to the nuisance.

### XIII    TENTH CLAIM FOR RELIEF, FOR STRICT LIABILITY

160.    Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "159" of this Complaint.

161.    Upon information and belief, the generation, handling, use, storage, treatment, transportation and disposal of hazardous substances by defendants constituted the use of such materials and the Tantalo Site in a dangerous and inherently noxious manner.

162.    Upon information and belief, the foregoing created an abnormally or unreasonably dangerous and noxious condition, and resulted in a potential hazard to human health and the environment due to the release of such materials into the environment.

163.    Under New York law, defendants are strictly liable for damages caused by their activities in utilizing, handling, storing, treating or disposing of such hazardous materials in such a manner.

164.    Upon information and belief, the handling, storage, use, transportation and disposal of hazardous chemicals, substances and wastes created a high degree of risk of harm to persons, land or chattels of others, including that of SMI and MHI, and such harm was likely to be significant.

165.    Upon information and belief, none of the defendants has taken any response action or incurred any response costs in connection with the Tantalo Site or nearby properties.

166.    By reason of the foregoing, defendants are strictly liable to SMI and MHI for the losses and any future damages flowing from defendants' abnormally dangerous activities at the Tantalo Site.

### XIV.   ELEVENTH CLAIM FOR RELIEF, FOR TRESPASS

167.    Plaintiffs SMI and MHI incorporate and reallege as though fully set forth herein the allegations appearing in paragraphs "1" through "166" of this Complaint.

168.    Upon information and belief, the movement, seepage, flow, and migration of hazardous substances and waste, at the Tantalo Site and nearby properties, including the MHI Property, was the inevitable, direct, and foreseeable result of defendants' intentional acts or the acts of its agents or employees described herein.

169.    The foregoing conduct constitutes direct interference with the rights of SMI and MHI to exclusive possession of their property, and to their subsurface and groundwater rights.

170.    Defendants are liable to SMI and MHI in trespass for the resulting damages caused by defendants' conduct.

171.    Upon information and belief, SMI and MHI are suffering irreparable harm as a result of the trespass and have no adequate remedy at law.

172.    Defendants must be enjoined to cease the trespass on plaintiffs' property.

### XV.    TWELFTH CLAIM FOR RELIEF, FOR CONTRACTUAL INDEMNITY (vs. ECI, SALES AFFILIATES, ZOTOS INTERNATIONAL, W.R. GRACE & HAMPSHIRE CHEMICAL)

173.    Plaintiff SMI incorporates and realleges as though fully set forth herein the allegations appearing in paragraphs "1" through "172" of this Complaint.

174.    Upon information and belief, Tantalo Construction, Inc. duly entered into a written contract on or about November, 1973 (the "Contract") with Evans for the disposal at the Tantalo Site of certain wastes generated by Evans.

175.    Upon information and belief, paragraph "11" of the Contract provided that Evans would

> "hold harmless and indemnify Tantalo [Construction, Inc.] from and against any claim, cause of action, law suit or demand brought against the sanitary landfill operation and arising out of or relating to the sludge deposits or drum contents of Evans materials, upon the condition that Tantalo deal with these materials in conformance with acceptable sanitary landfill practices."

176.    Upon information and belief, pursuant to the Contract with Evans, solid wastes, including but not limited to sludge deposits and drum contents produced by and belonging to Evans were disposed at the Tantalo Site.

177.    Upon information and belief, Tantalo Construction, Inc. disposed of these solid waste materials "in conformance with acceptable sanitary landfill practices."

178.    Upon information and belief, SMI has the right to enforce the foregoing Contract against Evans and its successors, assign, controlling parents, and related entities.

179.    SMI has expended money in the investigation and clean-up of the Tantalo Site and will incur additional expenses in the future.  These expenses arise out of, and relate to, solid wastes disposed of pursuant to the Contract including sludge deposits and drum contents.  None of these expenses have been paid by Evans.

180.    As described in paragraphs "30" through "69" above, ECI, Sales Affiliates, Zotos International, Inc., W.R. Grace and Hampshire Chemical are successors to and/or former parents of and/or the same entity as Evans and are responsible for Evans' liability under the Contract.

181.    By reason of the above, SMI is entitled under the Contract to indemnification and reimbursement from ECI/Evans, Sales Affiliates, Zotos International, W.R. Grace, and Hampshire Chemical for all of SMI's losses arising out of, or relating to, the sludge deposits or drum contents of Evans' materials/waste disposed of at the Tantalo Site.

WHEREFORE, plaintiffs request that the Court enter judgment on each claim against each defendant as set forth below.

    a.    On the First Claim for Relief, judgment declaring and allocating each defendants' equitable share of past and future response costs, including costs related to natural resource damage claims, and awarding to SMI from all defendants, all response costs SMI has incurred and will incur above its equitable share plus interest, reasonable attorney fees and costs;

    b.    On the Second Claim for Relief, judgment against all defendants declaring that defendants are jointly and severally liable to SMI for response costs, including costs related to natural resource damage claims, which SMI has incurred and will incur in the future;

    c.    On the Third Claim for Relief, judgment against all defendants awarding to SMI, as subrogee to DEC, all damages, response costs, attorney's fees, and other relief that DEC is entitled to pursuant to state and federal law; and

d.      On the Fourth and Tenth Claims for Relief, judgment against all defendants awarding to plaintiffs SMI and MHI compensatory damages in an amount representing the expenses, costs, damages, and losses sustained by SMI and MHI as a proximate result of the wrongful conduct of defendants, including a declaration of defendants' liability for future damages to be incurred by plaintiffs;

e.      On the Fifth Claim for Relief, judgment against all defendants awarding to SMI compensatory damages and/or indemnification of all losses and other costs associated with SMI's response to the release of hazardous substances and wastes at the Tantalo Site;

f.      On the Sixth Claim for Relief, judgment against all defendants awarding to SMI full restitution of all costs incurred by SMI;

g.      On the Seventh Claim for Relief, judgment against all defendants awarding to SMI complete indemnification and/or contribution, or in the alternative, contribution representing the share of culpability of the defendants;

h.      On the Eighth and Ninth Claims for Relief, judgment against all defendants for an injunction requiring defendants to abate the nuisance at the Tantalo Site and nearby properties, and awarding damages to plaintiffs SMI and MHI as a result of the nuisance, including a declaration of defendants' liability for future damages to be incurred by plaintiffs;

i.      On the Eleventh Claim for Relief, judgment against all defendants for an injunction requiring defendants to abate the continuing trespass and awarding damages to plaintiffs SMI and MHI as a result of defendants'

trespass, including a declaration of defendants' liability for future damages to be incurred by plaintiff;

j.   On the Twelfth Claim for Relief, judgment against defendants, ECI/Evans, Hampshire Chemical, Sales Affiliates, Zotos International and W.R. Grace awarding to SMI damages including the response costs and other costs incurred by SMI in connection with Evans Chemetics waste, and a declaration of the aforementioned defendants' obligations to indemnify SMI for any future damages and/or costs incurred; and

k.   For such other and further relief as this Court deems just and proper.

Dated:        April 27, 2000
              Rochester, New York

UNDERBERG & KESSLER LLP

By: _____
Ronald G. Hull, Esq.
Attorneys for Plaintiffs
Seneca Meadows, Inc.
Macedon Homes, Inc.
1800 Chase Square
Rochester, New York  14614
(716) 258-2800