## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO.,** *et al.*, | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (KJC)** |
| Debtors. | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING THE FOURTEENTH, EIGHTEENTH, AND NINETEENTH INTERIM STATEMENTS AND THE FINAL APPLICATION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR REIMBURSEMENT OF EXPENSES TO COMMITTEE MEMBERS AND THEIR COUNSEL

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fourteenth, Eighteenth, and Nineteenth Interim Statements</u> and the <u>Final Application of the Official Committee of Asbestos Property Damage Claimants for Reimbursement of Expenses to Committee Members and their Counsel</u> (the "Applications").

### BACKGROUND

1.      The Official Committee of Asbestos Property Damage Claimants (the "Committee") was formed on April 12, 2001 to represent the interests of the asbestos property damage claimants in these cases. In the Applications, the Committee seeks approval of expenses as follows:

- expenses totaling $130.00 for its services from May 1, 2005 through May 31, 2005 (the "Fourteenth Interim Statement"), all of which were incurred by Darrell Scott of the Scott Law Group ("Scott"), as counsel to Committee member Marco Barbanti ("Barbanti");

- expenses totaling $51,770.89 for its services from April 1, 2006 through April 30, 2006 (the "Eighteenth Interim Statement"), of which $4,290.61 was incurred by Scott, as counsel to Committee member Barbanti, and $47,480.28 was incurred by Speights & Runyan, as counsel to Committee member Anderson Memorial Hospital;

- expenses totaling $1,436.27 for its services from July 1, 2006 through September 30, 2006 (the "Nineteenth Interim Statement"), all of which were incurred by Scott as counsel to Committee member Barbanti;

- expenses totaling $5,969.22 (the "Supplemental Expenses"), of which $3,580.86 was incurred by Joe Schwartz ("Schwartz") of Riker Danzig Scherer Hyland & Perretti, as counsel to Committee member Prudential Insurance Company of America ("Prudential"), and $2,388.36 was incurred by Thomas J. Brandi and Terrence Edwards of the Law Offices of Thomas J. Brandi ("Brandi"), as counsel to Committee member Pacific Freeholds;

- and final approval of expenses totaling $185,757.50[1] for its services from April 9, 2001 through June 30, 2008 (the "Final Application Period").

The $185,757.50 for which final approval is sought was incurred by the following Committee members:

---

[1]We note that the total of the expenses requested in the Committee's 16 prior interim applications, plus the compensation sought in the Fourteenth, Eighteenth, and Nineteenth Interim Statements and the Supplemental Expense request, is $185,996.42. It appears that the Committee has deducted from this amount all of the reductions ordered by the Court for the prior periods, which periods are discussed in more detail in paragraph 18, to arrive at the figure it seeks of $185,757.50. We note that the Court has ruled on the First through Fifty-First Interim Periods, but no ruling has been made on the Fifty-Second Interim Period.

Catholic Archdiocese of New Orleans – $23,896.42;

Prudential – $9,527.11;

Princeton University – $10,807.38;

Barbanti – $66,678.21;

Paul Price – $5,827.21;

Anderson Memorial Hospital – $66,632.81; and

Pacific Freeholds – $2,388.36.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Applications in their entirety, including each of the expense entries included in the exhibits to the Applications, for compliance with 11 U.S.C. § 330,  Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2014, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on the Committee based upon our review, and we received a response from the Committee, portions of which response are quoted herein.

**DISCUSSION**

**Fourteenth Interim Statement**

3.      We have no issues with, or objections to, the expenses requested in the Committee's Fourteenth Interim Statement.

**FEE AUDITOR'S FINAL REPORT** - Page 3
wrg FR Committee Asb Property Damage Final.wpd

4.      Thus, we recommend approval of $130.00 in expenses for the Committee's Fourteenth Interim Statement, all of which are for the services of Scott, as counsel to Committee member Barbanti.

### Eighteenth Monthly Application

5.      We noted the following air fare expenses[2] for which additional information was needed:

3/16/06    Airfare to New York for 3/16/06 meeting        $1,328.70

4/19/06    Airfare for 4/19/06 New York meeting           $1,488.50

In response to our request, the Committee provided the following information:

| Air Fare | Departure | Destination | Airlines | Class | One Way/ Round Trip |
|---|---|---|---|---|---|
| 3/16/06 Airfare | Spokane International Airport | LaGuardia | Northwest Airlines | Coach | Round Trip |
| 4/19/06 Airfare | Spokane International Airport | LaGuardia | Northwest Airlines | Coach | Round Trip |

We appreciate this information and have no objection to these expenses.

6.      We noted the following hotel expense[3] for which more information was needed:

3/16/06    Lodging                          $1,071.50

In response to our request, the Committee provided the following information:

3/16/06:  East New York, NY          Marriott

NIGHT ONE:          Room: $329.00
                    Tax: $58.18
                    Total: $387.18

---

[2]Incurred by Scott on behalf of Committee member Barbanti.

[3]Incurred by Scott on behalf of Committee member Barbanti.

NIGHT TWO:          Room: $329.00
                    Tax: $58.18
                    Total: $387.18

NIGHT THREE:        Room: $259.00
                    Tax: $38.14
                    Total: $297.14

LODGING TOTAL:  $1,071.50

We appreciate the Committee's response, and we have no objection to this expense.[4]

    7.    We noted the following meal expense for which more information was needed:

3/16/06   Meals           $82.35

In response to our request, the Committee provided the following information:

| City | Number of People | Restaurant | Breakfast/Lunch/Dinner | Total |
|------|------------------|------------|------------------------|-------|
| Spokane, WA | 1 | Spokane Int'l Airport | Breakfast | $15.91 |
| New York, NY | 1 | Mr. K's | Dinner | $53.58 |
| St. Paul, MN | 1 | HMS Host | Snack | $5.40 |
| New York, NY | 1 | Starbucks | Snack | $7.46 |
|  |  |  |  | $82.35 |

In March of 2006, we were recommending caps of $50.00 for dinner and $15.00 for breakfast in all

locales.  Thus, we recommend that the $53.58 dinner expense be reduced to $50.00, and the $15.91

breakfast expense be reduced to $15.00, for a total reduction of $4.49 in expenses.

    8.    We noted that between March 1, 2002 and January 31, 2006, Speights & Runyan[5]

charged $4,014.75 for copies at what appeared to be a rate of $0.25 per page.  During this time

---

[4]Each of the Committee's nightly room charges were less than the $350.00 per night cap which we were recommending for hotel stays in New York City during that time period.

[5]As counsel to Committee member Anderson Memorial Hospital.

frame, the Local Rules limited in-house photocopy charges to $0.15 per page.[6]  In response to our query on this issue, the Committee stated:

> Speights & Runyan no longer has the hard copy backup for these charges; however, they believe the charges were in conformity with the guidelines.

We understand Speights & Runyan's response and so reexamined the photocopy charges to confirm which, if any, of the charges could not have been billed at $0.15 per page.  We have listed those charges that are not evenly divisible by $0.15 on Exhibit A, and they total $3,708.00.   It appears to us that these charges were billed at $0.25 per page, and the number of copies charged was 14,832.[7]  If billed at the rate of $0.15 per page, as authorized by the Local Rules, the total charge for the copies would have been $2,224.80.  Thus, we recommend that reimbursement for the copies be reduced to $2,224.80, for a reduction of $1,483.20 in expenses.[8]

9.     We noted that between February 1, 2006 and March 31, 2006, Speights & Runyan charged $23.00 for copies at what appeared to be a rate of $0.25 per page.  During this time frame, the Local Rules limited in-house photocopy charges to $0.10 per page.  In response to our query on this issue, the Committee stated:

> Speights & Runyan no longer has the hard copy backup for these charges; however, they believe the charges were in conformity with the guidelines.

---

[6] There are photocopy charges of $16.80 and $20.55, both of which were posted on April 4, 2002, which indicate they were billed at the rate of $0.15 per page.  However, all other photocopies appear to have been billed at $0.25 per page.

[7] $3,708.00 ÷ $0.25 = 14,832.

[8] We note that Speights & Runyan also represented Anderson Memorial Hospital in the *USG* bankruptcy. In that case, we inquired concerning Anderson Memorial Hospital's photocopying charges for this same time period and were advised by the Committee's counsel, Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg"), that "Anderson Memorial charged 25¢ per page for copies."  *See* Fee Auditor's Final Report Regarding Expenses Sought in the Third Interim and Final Application of Official Committee of Asbestos Property Damage Claimants, Case No. 01-2094(JKF) (Docket No. 12285), at ¶ 5.

We understand Speights & Runyan's response and so reexamined the photocopy charges and confirmed that they could not have been billed at $0.10 per page.  We have listed the charges on Exhibit A, and they total $23.00.   It appears to us that these charges were billed at $0.25 per page, and the number of copies charged was 92.[9]  If billed at the rate of $0.10 per page, as authorized by the Local Rules, the total charge for the copies would have been $9.20.  Thus, we recommend that reimbursement for the copies be reduced to $9.20, for a reduction of $13.80 in expenses.[10]

10.     We noted numerous air fare expenses billed by Speights & Runyan for which more information was needed.  See Exhibit B.  In response to our request, the Committee provided the information attached as Response Exhibit 1, and stated the following:

> Please note that while we do have backup to all of these expenses, as explained on the Exhibits, certain of the backup does not provide a breakdown and given the length of time since these were incurred, we are not able to obtain the detailed backup.

We appreciate the information provided by the Committee, and have no objection to the expenses listed, except for the following first class fares:[11]

*4/21/02 – 4/23/02*        *First Class from Pittsburgh to Miami on US Air ($942.50)*

---

[9]$23.00 ÷ $0.25 = 92.

[10]As stated above, Speights & Runyan also represented Anderson Memorial Hospital in the *USG* bankruptcy.  In that case, we inquired concerning Anderson Memorial Hospital's photocopying charges for this same time period and were advised by the Committee's counsel, Bilzin Sumberg , that "Anderson Memorial charged 25¢ per page for copies."  *See* Fee Auditor's Final Report Regarding Expenses Sought in the Third Interim and Final Application of Official Committee of Asbestos Property Damage Claimants, Case No. 01-2094(JKF) (Docket No. 12285), at ¶ 4.

[11]Paragraph II.E. of the U.S. Trustee Guidelines provides in pertinent part:

> Factors relevant to a determination that the expense is proper include the following:
>
> 1.  Whether the expense is reasonable and economical.  For example, first class and other luxurious travel mode or accommodations will normally be objectionable...

We note that during this time frame, a coach fare for this itinerary would have cost approximately $569.00.[12]  Thus, we recommend that reimbursement of this fare be reduced to $569.00, for a reduction of $373.50 in expenses.

*4/21/02 - 4/12/02        First Class from Miami to Charleston on Delta ($631.00)*
According to Delta's website, the current cost of a refundable coach fare ($551.00) is approximately 52% of the cost of a first class refundable fare ($1,065.00).  Thus, we multiplied the first class fare billed by Speights & Runyan ($631.00) by 52% to arrive at the comparable economy class fare of $328.00.  We recommend that reimbursement of this first class fare be reduced to $328.00, for a reduction of $303.00 in expenses.

*5/19/02 - 5/22/02        First Class from Newark to Savannah through Charlotte ($653.00)*
We note that elsewhere in the Application, Speights & Runyan sought reimbursement for a coach fare for the same itinerary for November 25-27, 2002 at a cost of $600.50.  Thus, we recommend that reimbursement of this first class fare be reduced to $600.50, for a reduction of $52.50 in expenses.

*7/21/02 - 7/24/02        First Class from Charleston to Philadelphia on US Air via Charlotte ($652.25)*
We note that elsewhere in the Application, Speights & Runyan sought reimbursement for a coach fare for the same itinerary for May 28-30, 2002 at a cost of $547.50.  Thus, we recommend that reimbursement of this first class fare be reduced to $547.50, for a reduction of $104.75.

*11/25/02 - 11/27/02      First Class from Tampa to Philadelphia via US Air ($738.00)*
According to US Airways' (now American Airlines') website, the current cost of a refundable coach fare ($395.00) is approximately 74% of the cost of a first class refundable fare ($536.00).  Thus, we multiplied the first class fare billed by Speights & Runyan ($738.00) by 74% to arrive at the comparable economy class fare of $546.00.  We recommend that reimbursement of this first class fare be reduced to $546.00, for a reduction of $192.00 in expenses.

*4/10/03 - 4/11/03        Round trip from Savannah to Miami and back to Savannah on*

---

[12]We obtained this information from an application filed in this case by Bilzin Sumberg for the month of January 2002.

> *Delta Airlines (one way coach and one way first class) ($973.00)*

According to information provided to us by the Committee in the *USG* case,[13] the cost of a one-way coach fare from Miami to Savannah in 2004 was $461.20. Accordingly, a round trip coach fare would have been approximately $922.00. Thus, we recommend that reimbursement of this fare be reduced to $922.00, for a reduction of $51.00 in expenses.

> *11/12/03 - 11/14/03    Round trip from Savannah to New Orleans (one way coach and one way first class) (Fare prorated 50%) ($472.50)*

According to Delta Airlines' website, the current cost of a refundable, round trip coach fare ($1,900.00) is approximately 96% of the cost of a fare that includes one coach leg and one first class leg ($1,986.00). Thus, we multiplied the fare billed by Speights & Runyan ($472.50) by 96% to arrive at the comparable economy class fare of $454.00. We recommend that reimbursement of this first class/coach fare be reduced to $454.00, for a reduction of $18.50 in expenses.

Thus, for the foregoing air fares, we recommend a total reduction of $1,095.25 in expenses.[14]

11.    We noted that Speights & Runyan billed for numerous hotel expenses for which more information was needed. See Exhibit C. In response to our request, the Committee provided the information listed on Response Exhibit 2 and stated the following:

> Please note that while we do have backup to all of these expenses, as explained on the Exhibits, certain of the backup does not provide a breakdown and given the length of time since these were incurred, we are not able to obtain the detailed backup.

We appreciate this information and accept the Committee's response for each of the expenses, except for the following:

---

[13]*See* Fee Auditor's Final Report Regarding Expenses Sought in the Third Interim and Final Application of Official Committee of Asbestos Property Damage Claimants, Case No. 01-2094, Docket No. 12285, at Response Exhibit 1.

[14]There were additional first class fares listed on Response Exhibit 1 to which we did not object because, according to our research, they were less than the cost of fully refundable economy class fares during the period in which they were charged.

| | | |
|---|---|---|
| American Express (DAS) 4/21/02 - 4/23/02 Attendance of hearing before Judge Fitzgerald on and meeting with counsel and experts on fraudulent transfer action | $746.00 | One Night Stay at Mandarin Oriental in Miami (Room Rate $269.00, Taxes $31.13, In room dining and other miscellaneous charges $214.59); One night stay at Omni William Penn Hotel in Pittsburgh - total charges $231.28 (no breakdown available) |

We note that the lodging expense at the Mandarin Oriental totaling $300.13 (including taxes) exceeded the cap of $250.00 per night which we were recommending during this period, and we therefore recommend that reimbursement of this charge be reduced by $50.13. Also included in the charge were meal expenses of $55.57 and $12.04 (room service), and telephone charges of $146.98.[15] We assume the $55.57 meal expense is for dinner and the $12.04 meal expense is for breakfast. We recommend that reimbursement of the $55.57 dinner charge be reduced to $35.00, for a reduction of $20.57. Our recommended reductions for this expense total $70.70.[16]

| | | |
|---|---|---|
| American Express Daniel A. Speights 5/19/02 - 5/22/02 Hearing before Judge Fitzgerald in Wilmington and status conference before Judge Wolin in Newark. | $1,303.15 | Two nights at Hotel Dupont in Wilmington DE (Room charges $309 and $319, Taxes $50.24, Long Distance $559.06, Hotel and Room Services $65.85 |

We note that the room charges and taxes exceed the $250.00 cap which we recommended in 2002, nevertheless, we have generally not recommended reductions for room charges at the Hotel Dupont because of the hotel's close proximity to the court house and a lack of other hotels to choose from in downtown Wilmington, particularly during this time period. We believe it is reasonable to assume

---

[15]We obtained this additional information from a copy of the itemized statement for this expense which the Committee provided in response to our request.

[16]We have no objection to the lodging expense at the William Penn Hotel in Pittsburgh, as it was less than our recommended cap of $250.00 per night (inclusive of taxes).

the hotel and room service charges of $65.85 are for one dinner and one breakfast, though we were

not provided this information.  We recommended caps of $35.00 for dinner and $15.00 for breakfast

during this time period.  Therefore, we recommend that reimbursement of the hotel and room service

charges be reduced to $50.00, for a reduction of $15.85 in expenses.

| | | |
|---|---|---|
| American Express Daniel A. Speights 5/19/02 - 5/22/02 Hearing before Judge Fitzgerald in Wilmington and status conference before Judge Wolin in Newark | $471.33 | One night at Paramount Hotel, New York (no breakdown available) |

During this time period, we recommended a cap of $300.00 per night, including taxes, for hotel stays

in New York City.  Thus, we recommend that reimbursement of this lodging charge be reduced by

$171.33 in expenses.

| | | |
|---|---|---|
| American Express Daniel A. Speights 7/21/02 - 7/24/02 Attendance at hearing before Judge Fitzgerald | $576.12 | 3 nights at Rittenhouse in Philadelphia, includes (Room rate of $400 per night, taxes, room service, meals and telephone calls.  Total bill is $1,724.51 prorated by 1/3) |

We note that the nightly room rate at the Rittenhouse totaled $456.00, including taxes.  We were

recommending a cap of $250.00 per night, including taxes, for most U.S. cities during this period,

and we therefore recommend that reimbursement of the lodging portion of this charge be reduced

to $250.00, for a reduction of $206.00.[17]  Also included in the charge were what appear to have been

---

[17]Although the total expense included three nights, W.R. Grace was billed for only one-third of the cost.  Hence, we have prorated our recommended reduction by one-third.

breakfast charges for $22.89 and $19.33, a lunch or brunch charge of $54.02, and dinner charges of

$167.05 and $48.27.[18]  We recommend that these meal charges be reduced to the recommended caps

we were using during this period,[19] for a reduction of $62.19.[20]  Our recommended reductions for

this expense total $268.19.

| | | |
|---|---|---|
| American Express, Inc. - 8/8/02 - 8/9/02 Meeting with Martin Dies & Russell Budd in Dallas | $318.28 | One night stay at Melrose Hotel, Dallas, TX (Room Rate $139.00, taxes $20.85, room service/meals $100.63, long distance $38.39, Misc. $19.41) |

We have no objection to the lodging expense, as it is less than our recommended cap for 2002 of

$250.00 per night (inclusive of taxes).  The meal charges appear to consist of one dinner charge of

$53.55, one breakfast charge of $18.18, and one lunch charge of $28.90.[21]  Based on the meal

guidelines discussed above, we recommend a reduction $18.55 for the dinner charge, $3.18 for the

breakfast charge, and $4.90 for the lunch charge.  In addition, we note that the itemized statement

for this expense subsequently provided to us by the Committee supports charges of $298.87, rather

than $318.28, and thus we recommend an additional reduction of $19.41.  Our recommended

reductions for this expense total $46.04.

---

[18]We obtained this additional information from a copy of the itemized statement for this expense which the Committee provided in response to our request.

[19]$35.00 for dinner, $25.00 for lunch, and $15.00 for breakfast.

[20]This is one-third of the amount by which the meal expenses exceeded our recommended caps, since W.R. Grace was billed for only one-third of the expense.

[21]We base this on information we obtained from a copy of the statement for this expense provided to us by the Committee.

| | | |
|---|---|---|
| American Express, Inc. 8/29/02 - 8/30/02 Attendance at McGovern mediation session in NYC. | $913.84 | One night at Omni Berkshire Place (no breakdown provided) |

Because no breakdown was provided concerning this expense, we have no choice but to assume the entire expense was for the nightly room rate plus taxes.  Thus, we recommend that reimbursement of the expense be reduced to $300.00,[22] for a reduction of $613.84 in expenses.

| | | |
|---|---|---|
| American Express Daniel A. Speights 11/9/02 - 11/12/02 Meeting with counsel in Miami, FL **(Pro rata share)** | $101.57 | Three Nights at Mandarin Oriental in Miami (Room rate $359.00, total bill including taxes, room service, telephone calls $1,507.64, pro rated portion for WR Grace $101.57) |

During 2002 we were recommending a cap of $250.00 per night, including taxes, for most U.S. cities, including Miami.  According to additional information provided to us by the Committee,[23] the room rate, including taxes, for this stay was $401.38 per night.  This lodging expense exceeded our $250.00 per night cap by $151.38 per night for three nights, for a total of $454.14.  As W.R. Grace was billed for only 7% of this expense, we recommend a reduction of 7% of the $454.14 excess, for a reduction of $31.79 in expenses.  Also included in this expense were what appear to be a $76.99 meal expense for lunch, a $87.37 meal expense along with an $18.60 bar tab for dinner, a $55.13 meal expense for lunch, and a $55.57 meal expense along with a $4.84 bar tab for dinner.

---

[22]$300.00, inclusive of taxes, was the amount of our recommended cap for hotel stays in New York City during this time period.

[23]The Committee provided us with a copy of the itemized statement for this expense in response to our request.

Using the meal guidelines discussed above, we recommend the following reductions:

| | |
|---|---|
| $76.99 lunch | Reduce by $3.64[24] |
| $105.97 dinner (including bar tab) | Reduce by $4.97[25] |
| $55.13 lunch | Reduce by $2.11[26] |
| $60.41 dinner (including bar tab) | Reduce by $1.78[27] |

Our recommended reductions for this expense total $44.29.

| | | |
|---|---|---|
| Daniel A. Speights - MBNA America 11/25/02 - 11/27/02 Attendance at Court ordered settlement conference in Newark. | $444.34 | One night at the Rittenhouse in Philadelphia, PA (Room rate $295.00, Dinner $55.93, taxes $41.30, Room Service $27.00, telephone calls $21.26, misc $3.85) |

Based on our 2002 guideline of $250.00 per night, including taxes, we recommend that reimbursement for the lodging portion of this expense be reduced from $336.30 to $250.00, for a reduction of $86.30 in expenses. In addition, we note that the $55.93 dinner charge exceeded our recommended dinner cap of $35.00[28] by $20.93, and the room service charge of $27.00 (presumably for breakfast) exceeded our recommended breakfast cap by $12.00. Our recommended reductions for this expense total $119.23.

---

[24]This is 7% of $51.99.

[25]This is 7% of $70.97.

[26]This is 7% of $30.13.

[27]This is 7% of $25.41.

[28]In 2002, we recommended the following caps for meal expenses: $35.00 for dinner, $25.00 for lunch, and $15.00 for breakfast.

| | | |
|---|---|---|
| MBNA America - 1/21/03 - 1/22/03 Grace meeting in New York | $312.57 | One night at Omni Hotel in New York City (Room $249.00, taxes $33.67 and Room Service/meal $39.90) |

Although the lodging portion of this expense ($282.67) is less than the $300.00 cap we were recommending for New York hotel stays during this time period, the room service charge of $39.90 appears slightly excessive.  We assume the room service charge is for dinner (although we are not provided this information), and thus we recommend that reimbursement of the charge be reduced to $35.00, for a reduction of $4.90 in expenses.

| | | |
|---|---|---|
| Daniel A. Speights, Attorney American Express 4/10/03 - 4/11/03 Meeting with Counsel and experts in Miami. | $335.91 | One night at Intercontinental Hotel in Miami (no breakdown provided) |

In 2003, we were recommending a cap of $250.00 per night, inclusive of taxes, for Miami.  Accordingly, we recommend that reimbursement of this expense be reduced to $250.00, for a reduction of $85.91 in expenses.

| | | |
|---|---|---|
| American Express, Inc.  Daniel A. Speights 5/12/03 - 5/13/03 Meeting with Judge Wolin | $434.03 | One night stay at The Westin New York (Room rate $259.00, taxes $36.32, Misc charge of $9.99, charges of $128.72 (no backup provided) |

The nightly room rate of $295.32, including taxes, is under our recommended cap of $300.00 for New York City during this time period.  However, no information is provided concerning charges of $128.72.  Accordingly, we recommend disallowance of same, for a reduction of $128.72 in

expenses.[29]

| American Express, Inc. 10/21/03 - 10/22/03 Meeting with Legal Representative Nominee.  **(Pro Rata expenses)** | $201.17 | One night stay at Omni Berkshire Place, New York.  Total charges $402.35, prorated for WR Grace to $201.17 (no breakdown provided) |
|---|---|---|

The $402.35 charge exceeded by $102.35 our recommended cap of $300.00 for New York City during this time period.  As only one-half the charge was billed to W.R. Grace, we recommend a reduction of one-half of $102.35, or $51.18 in expenses.

| American Express, Inc.  3/3/04 - 3/4/04 Meeting with Grace Committee members, at al in Washington, DC. | $935.47 | One night at Willard Hotel in Washington (no breakdown provided) |
|---|---|---|

During this time frame, we were recommending a nightly cap of $250.00, inclusive of taxes, for hotel stays in Washington, DC.  Because no breakdown of this expense is provided, we must assume the entire expense was for the room rate plus taxes.  Thus, we recommend that reimbursement of the expense be reduced to $250.00, for a reduction of $685.47.

---

[29]We understand the Committee's explanation that with the passage of time, certain records are no longer available.  However, Local Rule 2016-2(e)(iv) requires that "[r]eceipts or other support for each disbursement or expense item for which reimbursement is sought must be retained and be available on request."  Thus, it appears to us that the Committee, rather than the estate, should bear the burden if the receipt is no longer available.

| Daniel A. Speights Attorney American Express 8/24/04 - 8/25/04 Meeting of PD Committee w/ Debtor in Washington, DC | $436.71 | One night at Willard Hotel in Washington (Room rate $299.00, tax $43.36, Long Distance $41.62 and meals $52.73) |
|---|---|---|

The lodging portion of this expense ($342.36) exceeds by $92.36 our recommended cap during this time period of $250.00 per night for Washington, DC, and thus we recommend a reduction of $92.36 in expenses.  In addition, we note that $52.73 was billed for meals, although it is unclear which meal or meals were included in this amount.  It seems reasonable to assume that the $52.73 included a dinner meal, in which case, the amount billed would have exceeded our recommended dinner cap during this time period of $50.00 per person.  Thus, we recommend a reduction of $2.73.  Our recommended reductions for this expense total $95.09.

| American Express, Inc.  10/13/04 - 10/14/04 Meetings w/ Legal Representative of Asbestos Committees and Debtors (Principals only) in Washington, DC | $538.51 | One night at Hotel Sofitel in Washington D.C. (no breakdown provided) |
|---|---|---|

As no other information was provided about this expense, we recommend that reimbursement be reduced to our recommended cap during this time period of $250.00 for Washington, DC, for a reduction of $288.51 in expenses.

| American Express (DAS) 10/7 - 10/8/04 Travel for attendance at multiple meetings with Counsel, PD Negotiating Committee, FCA and Debtor. | $566.51 | One night stay at Willard Intercontinental (no breakdown provided) |
|---|---|---|

As no other information was provided about this expense, we recommend that reimbursement be

reduced to our recommended cap during this time period of $250.00 for Washington, DC, for a

reduction of $316.51 in expenses.

| | | |
|---|---|---|
| American Express   Daniel A. Speights 12/5/04 - 12/7/04 Travel for attendance at Seminar and meetings in NYC. (**Pro rata share**) | $317.79 | Two nights at Sheraton Hotel in New York. Total charges $1,271.18, 25% WR Grace pro rata share $317.79 (no breakdown provided) |

During this time period, our recommended cap for hotel stays in New York City was $350.00,

inclusive of taxes, or $700.00 for two nights.  We recommend that reimbursement of this expense

be reduced to $700.00, for a reduction of $142.80.[30]

| | | |
|---|---|---|
| American Express, Inc.  1/9/05 - 1/11/05 Meetings w/Counsel in Miami.  (**Pro Rata expenses**) | $475.22 | Two nights at Biltmore Hotel in Miami, Florida (Room rate $319.00, plus taxes, telephone charges, meals, and miscellaneous charges.  Total charges $914.08, pro rata share for WR Grace $475.22) |

During January of 2005, we recommended a cap of $250.00 per night, plus taxes, for hotel stays in

Miami.  This charge exceeded the $250.00 cap by $69.00, or $138.00 for two nights.  As only one-

half the expense was billed to W.R. Grace, we recommend a reduction of one-half the $138.00

excess, or $69.00.  We also note that the meal charges included a $56.56 charge which appears to

be for dinner and a $19.02 charge which appears to be for breakfast.[31]  During this period, we were

---

[30]The total reduction would have been $571.18, however, only 25% of the expense was charged to W.R. Grace.

[31]We obtained this information from the itemized statement for this expense, which the Committee provided in response to our request.

recommending caps of $50.00 for dinner and $15.00 for breakfast, and thus we recommend a reduction of $10.58, of which 50% would be $5.29. Our recommended reductions for this expense total $74.29.

| American Express, Inc. (CAR) - 8/18/05 - 8/19/05 PD Estimation Meeting in Washington | $440.44 | One night at Hotel Sofitel in Washington D.C. for C. Alan Runyan (no breakdown provided) |
|---|---|---|

Without additional information, we must assume the entire expense was for the room rate, plus taxes. Based on this assumption, approximately $376.00 of the expense would have been attributable to the room rate. During this time period, we were recommending a cap of $250.00 per night, plus taxes, for hotel stays in Washington, D.C. Thus, we recommend that reimbursement of the nightly room rate of $376.00 be reduced to $250.00, for a reduction of $126.00 in expenses.

| American Express, Inc.  8/18/05 (DAS) Meeting re Grace Estimation. | $366.05 | One night at Hotel Sofitel in Washington D.C. for Dan Speights (no breakdown provided) |
|---|---|---|

Without additional information, we must assume the entire expense was for the room rate, plus taxes. Based on this assumption, approximately $313.00 of the expense would have been attributable to the room rate. During this time period, we were recommending a cap of $250.00 per night, plus taxes, for hotel stays in Washington, D.C. Thus, we recommend that reimbursement of the nightly room rate of $313.00 be reduced to $250.00, for a reduction of $63.00 in expenses.

| American Express, Inc. 3/15/06 - 3/17/06 Attendance at Plan Mediation before Judge Pointer. | $840.55 | Two nights at Omni Berkshire Hotel in New York (no breakdown provided) |
|---|---|---|

Without additional information, we must assume the entire expense was for the nightly room rates, plus taxes.  Based on this assumption, we calculate the nightly room rate at approximately $359.00 per night.  During this time period, we were recommending a cap of $350.00 per night, plus taxes, for hotel stays in New York City.  Thus, we recommend that reimbursement of the nightly room rate portion of this charge ($718.00 for two nights) be reduced to $700.00, for a reduction of $18.00 in expenses.   In summary, for all of the lodging and meal expenses listed in this paragraph, we recommend a total reduction of $3,429.85 in expenses.

12.    Thus, we recommend approval of $45,744.30 in expenses ($51,770.89 minus $6,026.59) for the Committee's Eighteenth Interim Statement, of which $4,286.12 ($4,290.61 minus $4.49) is for Scott, as counsel to Committee member Barbanti, and $41,458.18 ($47,480.28 minus $6,022.10) is for Speights & Runyan, as counsel to Committee member Anderson Memorial Hospital.

## Nineteenth Monthly Application

13.    We have no issues with, or objections to, the Committee's expenses in the Nineteenth Monthly Application.

14.    Thus, we recommend approval of $1,436.27 in expenses for the Committee's Nineteenth Interim Statement, all of which are for Scott, as counsel to Committee member Barbanti.

## Supplemental Expenses

15.    We noted that Schwartz requested reimbursement of expenses totaling $3,580.86. However, the expense detail for these expenses was not attached to the Application.  In response to

our request, the Committee provided Schwartz's expense detail, and we have attached it as <u>Response Exhibit 3</u>.   We have reviewed <u>Response Exhibit 3</u> and have no objection to the expenses listed, with the exception of the following:

      5/22/2001    JLS    Lodging    $257.68    For one night in Dallas, Texas

We recommended a cap of $250.00, including taxes, for hotel stays in Dallas during 2001.  Thus, we recommend that reimbursement of this expense be reduced by $7.68.

      8/21/2001    JLS    Lodging    $272.55    For one night in Atlanta, GA

We recommended a cap of $250.00, including taxes, for hotel stays in Atlanta during 2001.  Thus, we recommend that reimbursement of this expense be reduced by $22.55.

      8/25/2004    JLS    Lodging    $326.33    For one night in Washington, DC

We recommended a cap of $250.00, including taxes, for hotel stays in Washington, DC, during 2004.  Thus, we recommend that reimbursement of this expense be reduced by $76.33.  Thus, for all of the expenses listed on <u>Response Exhibit 3</u>, we recommend a total reduction of $106.56.

      16.     We noted that Thomas J. Brandi requested reimbursement for the following air fare:

      4/8/07     Airfare from San Francisco to Pittsburgh    $2,153.20

In response to our request, the Committee provided the following information concerning this charge:

> The airfare from San Francisco to Pittsburgh on 4/8/07 in the amount of $2,153.20 was for two attorneys, Terence Edwards and Thomas Brandi.  They were round trip, coach fares on United Airlines.

We appreciate this information and have no objection to the expense.

      17.     Thus, we recommend approval of $5,862.66 in Supplemental Expenses ($5,969.22 minus $106.56), of which $3,474.30 ($3,580.86 minus $106.56) is for Schwartz, as counsel to

Committee member Prudential, and $2,388.36 is for Brandi, as counsel to Committee member

Pacific Freeholds.

### Prior Interim Applications

18.      We note that we previously filed the following final reports for the Committee's prior

interim applications, which final reports we incorporate by reference herein, and we also note the

following orders that ruled on the Committee's prior interim fee applications:

1st - 3rd Period:      Fee Auditor's Final Report Regarding Interim Application of the Official
Committee of Asbestos Property Damage Claimants for the First, Second,
and Third Interim Periods (Docket #2942), filed on or about November
5, 2002, in which we recommended approval expenses totaling
$65,527.30.    These recommendations were adopted in the Order
Approving Quarterly Fee Applications for the First, Second and Third
Periods, dated November 25, 2002 (Docket #3091).

5th Period:      Fee Auditor's Final Report Regarding Fee Application of the Official
Committee of Asbestos Property Damage Claimants for the Fifth Interim
Period (Docket #3015), filed on or about November 18, 2002, in which we
recommended approval of expenses totaling $41,582.59.    These
recommendations were adopted in the Order Approving Quarterly Fee
Applications for the Fifth Period, dated November 25, 2002 (Docket #3092).

6th Period:      Fee Auditor's Final Report Regarding Fee Application of the Official
Committee of Asbestos Property Damage Claimants for the Sixth  Interim
Period (Docket ## 3254 and 3255), filed on or about January 16, 2003, in

which we recommended approval of expenses totaling $3,141.45. These recommendations were adopted in the <u>Order Approving Quarterly Fee Applications for the Sixth Period</u>, dated March 14, 2003, (Docket #3511).

8th Period:    <u>Fee Auditor's Final Report Regarding Fee Application of the Official Committee of Asbestos Property Damage Claimants for the Eighth Interim Period</u> (Docket #4067), filed on or about July 17, 2003, in which we recommended approval of expenses totaling $1,813.94, reflecting our recommended reduction of $66.41 in expenses, as further explained in paragraph 4 of that final report. These recommendations were adopted in the <u>Order Approving Quarterly Fee Applications for the Eighth Period</u>, dated September 22, 2003, (Docket #4480).

15th Period:    <u>Fee Auditor's Final Report Regarding Application of the Official Committee of Asbestos Property Damage Claimants for the Fifteenth Interim Period</u> (Docket #8563), filed on or about June 6, 2005, in which we recommended approval of expenses totaling $2,742.22, reflecting our recommended reduction of $172.51 in expenses, as further explained in paragraph 5 of that final report. These recommendations were adopted in the <u>Order Approving Quarterly Fee Applications for the Fifteenth Period</u>, dated June 29, 2005 (Docket #8728).

16th Period:    <u>Fee Auditor's Combined Final Report Regarding Those Fee Applications with No Fee or Expense Issues for the Sixteenth Interim Period</u> (Docket #9387), filed on or about September 12, 2005, in which we recommended

approval of expenses totaling $2,066.73. These recommendations were adopted in the Order Approving Quarterly Fee Applications for the Sixteenth Period, dated September 27, 2005 (Docket #9513).

17th Period:    Fee Auditor's Combined Final Report Regarding Those Fee Applications with No Fee or Expense Issues for the Seventeenth Interim Period (Docket #11168), filed on or about November 28, 2005, in which we recommended approval of expenses totaling $1,688.36. These recommendations were adopted in the Order Approving Quarterly Fee Applications for the Seventeenth Period, dated December 21, 2005 (Docket #11402).

19th Period:    Fee Auditor's Combined Final Report Regarding Those Fee Applications with No Fee or Expense Issues for the Nineteenth Interim Period (Docket #12525), filed on or about May 25, 2006, in which we recommended approval of expenses totaling $1,479.12. These recommendations were adopted in the Order Approving Quarterly Fee Applications for the Nineteenth Period, dated June 16, 2006 (Docket #12660).

20th Period:    Fee Auditor's Combined Final Report Regarding Those Fee Applications with No Fee or Expense Issues for the Twentieth Interim Period (Docket #13183), filed on or about September 8, 2006, in which we recommended approval of expenses totaling $4,186.93. These recommendations were adopted in the Order Approving Quarterly Fee Applications for the Twentieth Period, dated September 26, 2006 (Docket #13298).

29th Period:    Fee Auditor's Combined Final Report Regarding Those Fee Applications

with No Fee or Expense Issues for the Twenty-Ninth Interim Period (Docket #20150), filed on or about November 26, 2008, in which we recommended approval of expenses totaling $2,222.48.  These recommendations were adopted in the Order Approving Quarterly Fee Applications for the Twenty-Ninth Period, dated December 17, 2008 (Docket #20283).

19.    We have reviewed the final reports and orders allowing fees and expenses for the prior interim periods, and we do not believe there is any reason to change any of the amounts awarded for the prior interim periods.

## CONCLUSION

20.    Thus, we recommend final approval of $179,624.35 in expenses ($185,757.50[32] minus $6,133.15)[33] for the Committee's services for the Final Application Period, of which

$23,896.42 is for the services of the Catholic Archdiocese of New Orleans;

$9,420.55 is for the services of Prudential;

$10,807.38 is for the services of Princeton University;

$66,673.72 is for the services of Barbanti;

$5,827.21 is for the services of Paul Price;

---

[32]We note that the total of the expenses requested in the Committee's 16 prior interim applications, plus the compensation sought in the Fourteenth, Eighteenth, and Nineteenth Interim Statements and the Supplemental Expense request, is $185,996.42.  It appears that the Committee has deducted from this amount all of the reductions ordered by the Court for the prior periods, which periods are discussed in more detail in paragraph 18, to arrive at the figure it seeks of $185,757.50.  We note that the Court has ruled on the First through Fifty-First Interim Periods, but no ruling has been made on the Fifty-Second Interim Period.

[33]This amount is the sum of our recommended reductions totaling $6,026.59 for the Eighteenth Interim Statement (see paragraph 12) and our recommended reductions totaling $106.56 for the Supplemental Expense request (see paragraph 17).

$60,610.71 is for the services of Anderson Memorial Hospital; and

$2,388.36 is for the services of Pacific Freeholds.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**


By:_____

　　　　　Warren H. Smith
　　　　　Texas State Bar No. 18757050

2235 Ridge Road, Suite 105
Rockwall, Texas 75087
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

　　　I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this ___ day of August, 2014.




_____
Warren H. Smith

## SERVICE LIST
Notice Parties

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena
Jay M. Sakalo
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL  33131

**The Debtors**
Richard Finke
Assistant General Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**United States Trustee**
Richard Schepacarter
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

**Counsel for the Debtors**
John Donley
Adam Paul
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

Laura Davis Jones, Esq.
James E. O'Neill
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Counsel to the Official Committee of Unsecured Creditors**
Denise Wildes
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

**Co-Counsel to the Official Committee of Property Damage Claimants**
Michael B. Joseph
Theodore J. Tacconelli
Lisa Coggins
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch
Rita Tobin
Caplin & Drysdale
600 Lexington Avenue, 21st Floor
New York, NY  10022-6000

**Counsel to the Official Committee of Equity Holders**
Philip Bentley
David E. Blabey, Jr.
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier
Saul Ewing LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899