**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| W. R. Grace & Co., *et al,* | : | Case No: 01-01139 (KJC) |
| | : | |
| Debtor. | : | **Hearing Date: October 14, 2013 @ 10:00 a.m.** |
| | : | **Objection Deadline: September 26, 2104 at 4:00 p.m.** |
| | : | **Extended by consent for the U. S. Trustee** |

**THE UNITED STATES TRUSTEE'S OBJECTION TO THE FIFTY-SECOND INTERIM AND FINAL FEE APPLICATION REQUEST OF BILZIN SUMBERG BAENA PRICE & AXELROD LLP FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY DAMAGE CLAIMANTS FOR THE PERIOD OF APRIL 9, 2001 THROUGH FEBRUARY 3, 2014 AND REQUEST FOR FEE ENHANCEMENT FOR SERVICES IN CONNECTION WITH FRAUDULENT TRANSFER LITIGATION AGAINST SEALED AIR CORPORATION, CRYOVAC, INC. AND FRESENIUS MEDICAL CARE HOLDINGS (D. I. 32190)**

Roberta A. DeAngelis, the United States Trustee for Region 3 ("U. S. Trustee"), by and through her counsel, hereby files this Objection to the to the Fifty-Second Interim and Final Fee Application Request of Bilzin Sumberg Baena Price & Axelrod LLP for Approval and Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Official Committee of Asbestos Property Damage Claimants for the Period of April 9, 2001 Through February 3, 2014 and Request for Fee Enhancement for Services in Connection with Fraudulent Transfer Litigation Against Sealed Air Corporation, Cryovac, Inc. and Fresenius Medical Care Holdings (D. I. 32190) ("Application") and in support thereof states as follows:

## INTRODUCTION

1.      This Court has jurisdiction to hear the above-referenced Objection.

2.      Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to title 11 of the United States Bankruptcy Code.  This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as

written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U. S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

3.      Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to this objection.

## PRELIMINARY STATEMENT

4.      The United States Trustee objects to Bilzin's request for an $875,000 fee enhancement because Bilzin has not overcome the strong presumption that the $1.39 million that Bilzin earned for the Sealed Air and Fresenius litigation, based upon its hourly rate structure, was not reasonable compensation under Section 330 of the Bankruptcy Code for the services rendered. Bilzin has not offered specific evidence, as required under applicable case law, to establish that the sought-after $875,000 fee enhancement is necessary to provide it with fair and reasonable compensation. Bilzin has proffered no evidence to demonstrate that: (a) Bilzin's hourly rates did not adequately measure the true market value of its fees, (b) this engagement caused Bilzin to incur an extraordinary amount of expenses or precluded other employment by Bilzin attorneys due their efforts in this litigation, and that (c) Bilzin's fees were at a substantial risk of non-payment. The United States Trustee does not contend that the services which Bilzin provided did not confer a benefit upon the estates. In fact, credit for the result in these cases is shared among many professionals, including Bilzin. However, no other professional has sought a fee enhancement and Bilzin has not established that the results in these cases represent "rare" and "exceptional" circumstances that render Bilzin's hourly rates inadequate.

## RELEVANT FACTS AND HISTORY

5.      On April 2, 2001(the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code. On April 13, 2001, the U. S. Trustee appointed an Official Committee of Asbestos Property Damage Claimants (D.I. 96) (the "PD Committee").

6.      On May 22, 2001, the PD Committee filed an application to approve the employment of Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") as its counsel, *nunc pro tunc*, to April 9, 2001 ("Bilzin Retention Application") (D.I. 298).[1] Thereafter on June 21, 2001, the Court entered an order approving Bilzin's employment (D.I. 551).

7.      On or about June, 2001, the PD Committee, represented by Bilzin, and the Official Committee of Asbestos Personal Injury Claimants (the "PI Committee"), represented by Caplin & Drysdale, filed with the Bankruptcy Court a Joint Motion for Authority to Prosecute Fraudulent Transfer Claims seeking authority to prosecute fraudulent transfer claims against Sealed Air and Fresenius arising out of the spin-off of certain business segments by Grace in 1996 and 1998. Application at 17. (The PD Committee and the PI Committee are collectively referred to as the "Asbestos Committees").

---

[1] In the Bilzin Retention Application, Bilzin states that the professional services for which the Committee desires to employ Bilzin includes, without limitation, the following: (i) providing the Committee with legal advice with respect to its rights, duties and powers in the Consolidated Cases; (ii) assisting the Committee in investigating the acts, conduct, assets, liabilities and financial condition of the Debtors, the operation of the Debtors' businesses and the desirability of the continuance of such businesses and any other matter relevant to the Consolidated Cases or to the formation of a plan; (iii) preparing pleadings and applications as may be necessary in furtherance of the Committee's interests and objectives; (iv) participating in formulating a plan or plans of reorganization; (v) assisting the Committee in considering and requesting the appointment of a trustee or examiner or conversion, should such action(s) become necessary; (vi) consulting with the Debtors, their  counsel and the United States Trustee concerning the administration of this estate; (vii) representing the Committee in hearings and other judicial proceedings; and (viii) performing  such other legal services as may be required and as are deemed to be in the best interests of the Committee and the constituency which it represents. Bilzin Retention Application at paragraph 6.

8.      On March 18, 2002, the Asbestos Committees filed two Adversary Proceedings[2] against Sealed Air Corporation and Cryovac, Inc. (collectively, "Sealed Air"), and Fresenius Medical Care Holdings, Inc. and National Medical Care, Inc. (collectively, "Fresenius") concerning certain fraudulent transfer claims (the "Fraudulent Transfer Litigation").

9.      On May 9, 2002, the Asbestos Committees jointly filed an application requesting the approval of employment of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg") as lead counsel in the Fraudulent Transfer Litigation. Milberg's compensation was set at a blended hourly rate of $475/hour for attorney time and $125/hour for non-attorney time. (Adv. Pro. 02-2210 D.I. 22).

10.     On July 10, 2002, District Judge Alfred M. Wolin entered an order approving a certain protocol (the "Protocol") which governed the division of responsibilities for prosecuting the Fraudulent Transfer Litigation (Adv. Pro. 02-2210, D.I. 87). The Protocol provided, among other things, that Milberg ". . . will have overall supervisory responsibility for the entire matter" as to the prosecution of the Fraudulent Transfer Litigation. Milberg was also to "coordinate the work of other plaintiff counsel." In addition, the Protocol established that Milberg was to be compensated at an hourly rate of $475 per hour for its attorneys, "regardless of the hourly billing rate for each such professional." The Protocol at paragraph 1. (See Exhibit "A" annexed hereto).

11.     Under the Protocol, Bilzin was charged with primary responsibility for the property damage aspect of the case while Speights Runyan and Dies & Hile, two additional law firms, were also engaged in order to assist Bilzin in preparing the property damage aspect of the case. Caplin Drysdale had primary responsibility for the personal injury damage aspect of these cases. Protocol at paragraph 1.

_____

[2] Adv. Pro. Nos. 02-2210 and 02-2211.

12.     Eventually the Fraudulent Transfer Litigation was settled (the "Settlement") which settlement called for Sealed Air to pay $512.5 million in cash, plus interest at 5.5% per annum from December 21, 2002, until the effective date of a plan of reorganization, and to provide the Grace estate with nine million shares of Sealed Air common stock, and for Fresenius to pay $115 million in cash. Application at 15.

13.     The three law firms representing the creditors in the Fraudulent Transfer Litigation apparently agreed to pursue the litigation on a compressed time and trial schedule and Bilzin asserts that the case became more vast, complex and difficult than originally anticipated without any relief in the trial schedule. Application at 26. In addition, the Debtors sought and ultimately were granted leave to intervene in the Fraudulent Transfer Litigation and aligned themselves with the defendants in opposition to the Asbestos Committees and the Settlement. Application at 27.

14.     Bilzin also asserts that it had to expend substantially more resources on this matter than anticipated, including adding senior lawyers from other practice groups to augment the bankruptcy partner and associate who were responsible for the representation and that Bilzin, among its other duties, were responsible for the review of the documents that were maintained in the depository, contributed to the settlement negotiations, contributed to the rendering of the "standards opinion" issued by the District Court and were part of the litigation team that were engaged in the settlement process at the same time that they were preparing for trial. Application at paragraphs 27 through 35.

15.     In these cases, Bilzin has requested an $875,000 fee enhancement based on allegations that their efforts brought about a superior result in the face of difficult circumstances in litigating the two adversary proceedings that resulted in a substantial contribution to the W.R.

Grace reorganization and the confirmation of the Plan as well as equalizing Bilzin's fees with Milberg's fees on an hourly rate basis.

16.     According to the filed final fee applications, Caplin & Drysdale's final request for compensation for these cases is $22,510,174.75 in professional fees of which $970,548.50 is related to the Fraudulent Transfer Litigation. (D.I. 32174). Milberg's total compensation for the Fraudulent Transfer Litigation was $3,973,004.60 in professional fees and $570,863.90 in expenses. In the Application, Bilzin's final request for compensation for these cases is $11,837,680.74 in professional fees of which $1,392,044.50 (and 4,651.2 hours) is related to the Fraudulent Transfer Litigation. Bilzin's blended hourly rate for the Fraudulent Transfer Litigation is $299.29.[3]

## LAW AND ANALYSIS

11 U.S.C. § 330(a)(1) provides that after notice and a hearing, the court may award to a professional person employed under § 327 "reasonable compensation for actual, necessary services rendered" by such a professional person.  11 U.S.C. § 330(a)(1).

11 U.S.C. § 330(a)(3)(A) - (E) provides as that in determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including the time spent on such services; the rates charged for such services; whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task

---

[3] It should be noted that in conflict with the fee stated in the Application, Bilzin states in paragraph 38 of the Application that "[i]n the course of its service as litigation counsel in connection with the Fraudulent Transfer Litigation, Bilzin Sumberg expended 5503.2 hours of time and collected approximately $1.7 million in fees. Our blended hourly attorney rate for such service was $316.24." There appears to be no reconciliation of this discrepancy.

addressed; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate and that the fees are reasonable and necessary.  Benefit to the estate and necessity are critical threshold issues before the awarding of any fees or compensation. *See Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises)*, 997 F.2d 1321, 1322-23 (10th Cir. 1993) (Court held that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative).  To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors.  *See In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997).

The applicant bears the burden of proving an entitlement to fees.  *See id.* at 573; *Johnson v. Holiday Express Inc.*, 488 F.2d 714 (6th Cir. 1974).  Bankruptcy courts have an independent duty to review fee applications, regardless of whether any party in interest, including the U. S. Trustee, objects.  *See In re Busy Beaver Bldg. Centers., Inc.*, 19 F. 3d 833, 841 (3d Cir. 1994).

Retention under 11 U.S.C. § 327 and compensation under 11 U.S.C. § 330 are separate and distinct steps.  "This two-step process - i.e., appointment under § 327 and then compensation under § 330, if and only if, 'benefit-to-the-estate' is found - was adopted by Congress to eliminate 'abuses and detrimental practices' attributable to 'attorney control of bankruptcy cases.'"  *In re Engel*, 124 F.3d at 572.

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation.  *See In re Beverly Mfg. Corp.*, 841 F.2d 365, 371 (11th Cir. 1988).  Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if the court already has approved the

7

professional's retention under Sections 327 and 328 of the Bankruptcy Code.  *See In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses).

Section 330 authorizes a bankruptcy court to award retained professionals "reasonable compensation for actual, necessary services" based on various factors, including the time spent, the rate charged and the reasonableness of the attorney's rate compared to that charged by comparably skilled practitioners in non-bankruptcy cases.  In the Third Circuit, courts use the "lodestar" method to determine the reasonableness of fees under section 330.  *See In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d at 849, n. 21.

Calculation of the lodestar is a two-step process.  "First . . .  The court must determine the reasonable number of hours expended multiplied by the appropriate billing rate.  Second, once the appropriate lodestar amount is established, the next step is a determination as to whether or not an enhancement or reduction of the fee is warranted."  *In re Landmark Distributors, Inc.,* 195 B.R. 837, 849 (Bankr. D. N.J. 1996).  The lodestar may be adjusted to consider the results obtained and the increase (or decrease) may only reflect exceptional services that are considered in the nature of a bonus or penalty. However, the heavy burden of proving entitlement to such an adjustment is on the moving party. *See Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 118 (3d Cir. 1976).

Generally, the lodestar calculation is presumptively reasonable. A reasonable fee is a fee sufficient to induce a competent professional to take the case. The novelty and complexity of a case, the skill of the attorney, and the results obtained from the litigation are presumably included in the lodestar calculation. That is because professionals obligate themselves to perform

to the best of their ability and to produce the best possible results commensurate with their skill and their client's interests when they accept the case. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098 (1986).

Compensation in excess of the lodestar amount is very much an exception to the general rule, but may be allowed in suitable cases. See, e.g., *Mirant Corporation*, 354 B.R. 113, 142 (Bankr. N. D. Texas 2006), citing, *inter alia*, *Burgess v. Klenske (In re Manoa Fin. Co.),* 853 F.2d 687 (9th Cir. 1988).

To receive a fee enhancement, the professional must prove, with specific evidence (1) why the supporting factors were not reflected in either the standard hourly rate or the number of hours allowed; and (2) that the enhancement is necessary for the compensation to be reasonable, in light of comparable non-bankruptcy services. See *Manoa Fin. Co*., 853 F.2d at 692.

In these cases, Bilzin has not supplied sufficient facts or evidence to support the premise that the lodestar calculation of its fees does not fairly compensate it for its work on the Fraudulent Transfer Litigation and why the supporting factors were not reflected in either Bilzin's standard hourly rate or the lodestar factors, and that the fee enhancement is necessary for the compensation to be reasonable, in light of comparable non-bankruptcy services.

In fact it appears that the settlement of the Fraudulent Transfer Litigation by the Asbestos Committees was as a result of the efforts of several law firms representing the creditors  in the Fraudulent Transfer Litigation including Milberg, Caplan & Drysdale, Bilzin and others.

In *Manoa*, the court stated that the following four factors are considered subsumed within the lodestar and cannot serve as independent bases for an upward adjustment: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained. *Manoa Fin. Co.*, 853 F. 2d at 691. However, because

these factors ordinarily are accounted for in either the hourly rate or the number of hours expended, they can support an upward adjustment only when it is shown by specific evidence that they are not fully reflected in the lodestar. *Id.*

In order to justify a bonus, the applicant must come forward with specific evidence showing why the results obtained were not reflected in either its standard hourly rate or the number of hours allowed and the applicant must also show that the bonus is necessary to make the award commensurate with compensation for comparable non-bankruptcy services. If the bankruptcy court determines that a bonus is justified, it must make detailed findings in support of that determination. *Manoa Fin. Co.*, 853 F. 2d at 692, citing *Pennsylvania v. Del. Valley Citizens,* 478 U.S. at 565, 106 S.Ct. at 3098.

In fact, the Supreme Court specifically stated in that *Pennsylvania v. Del. Valley Citizens* that:

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.

*Pennsylvania v. Del. Valley Citizens,* 478 U.S. 565-566, 106 S.Ct. at 3098.

In these cases, Bilzin seeks to have its blended hourly rate be enhanced so that it is not less than the $475 per hour rate that the District Court authorized Milberg to charge in the Fraudulent Transfer Litigation. However, Bilzin's request is not supported by specific evidence

that the factors that might support an upward adjustment in fees are not fully reflected in the

lodestar calculation and fails to satisfy the requirements for such an award.

<u>CONCLUSION</u>

WHEREFORE, the U. S. Trustee respectfully submits that the Court enter an order (i)

approving Bilzin's professional fees in the sum of $11,837,680.74 and expenses in the sum of

$5,248,546.60, (ii) denying Bilzin's request for a fee enhancement, (iii) and granting such other

relief as is appropriate.

Respectfully submitted,

**ROBERTA A. DEANGELIS**
**UNITED STATES TRUSTEE**

By:    /s/Richard L. Schepacarter
       Richard L. Schepacarter
       Trial Attorney
       U. S. Department of Justice
       Office of the United States Trustee
       844 King Street
       Wilmington, DE 19801
       Tel: (302)573-6491
       Fax: (302)573-6497
       Email: Richard.Schepacarter@usdoj.gov

Dated: September 26, 2014