UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

_____
                                                    )
In re                                               )
                                                    )        CHAPTER 11
W.R. GRACE & CO., *et al.*,                          )        CASE NO. 01-01139 (KJC)
                                                    )        (Jointly Administered)
                    Debtor                          )
_____                      )
                                                    )
RALPH HUTT and CARL OSBORN                           )
                                                    )
                    Plaintiffs                       )
                                                    )        ADVERSARY PROCEEDING
v.                                                   )
                                                    )        NO. 14-
MARYLAND CASUALTY COMPANY,                            )
                                                    )
                    Defendant                        )
_____                      )

## ADVERSARY COMPLAINT

### INTRODUCTION

The Plaintiffs are individuals with severe asbestos disease resulting from their work at the

mine and mill in Libby, Montana (the "Libby Facility"), owned and operated by W.R. Grace & Co.

and its debtor-affiliates (collectively "Grace"). The Plaintiffs bring this adversary proceeding,

pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 7001(7) and (9) of the Federal Rules of

Bankruptcy Procedure, to obtain a declaratory judgment that their claims against defendant

Maryland Casualty Company ("MCC"), as set forth in the not-yet-filed state court complaint

annexed hereto as Exhibit A (the "MCC Wrongdoing Complaint"), are not barred by the channeling

injunction for asbestos personal injury claims contained in Grace's confirmed chapter 11 plan.

These claims (the "MCC Wrongdoing Claims"), which are based upon MCC's alleged breach of

its own legal duties and not upon any breach or liability of Grace, consist of:

> As more fully set forth in Count 1 of the MCC Wrongdoing Complaint, MCC's negligence in designing and implementing an inadequate industrial hygiene program for the Libby Facility, MCC's failure to conduct proper inspections, sampling and/or testing at the Libby Facility, and MCC's failure to warn of the danger of asbestos exposure (collectively the "Negligence Claim"); and

> As more fully set forth in Count 2 of the MCC Wrongdoing Complaint, MCC's breach of the duty of good faith and other duties to the Plaintiffs arising from MCC's position as workers' compensation and occupational disease insurer for Grace employees, by failing to disclose facts that MCC knew or should have known indicating that workers at the Libby Facility had or would likely develop asbestos disease, thereby inducing such workers not to file occupational disease claims against MCC at a point when such claims would have been timely (collectively, the "Bad Faith Claim").

The Plaintiffs are not asking this Court for judgment on the MCC Wrongdoing Claims, or for a

determination that the MCC Wrongdoing Complaint states legally sufficient claims against MCC

under applicable non-bankruptcy law, or for any determination whatsoever of the validity of either

the Negligence Claim or the Bad Faith Claim.  The Plaintiffs seek only this Court's declaration

that the Plaintiffs' pursuit of the Negligence Claim and the Bad Faith Claim against MCC will not

violate the channeling injunction for asbestos personal injury claims that is now in effect under

Grace's confirmed chapter 11 plan [Doc. No. 26368][1] (the "Chapter 11 Plan").

### JURISDICTION, VENUE AND STANDING

1.       This proceeding arises under, and/or is related to a case arising under, title 11 of the

United States Code.  Therefore, this Court has jurisdiction over this adversary proceeding pursuant

to 28 U.S.C. §§ 1334(b) and 157(a).

---

[1] In this Complaint, "Doc. No." references are to the docket in Grace's chapter 11 case, No. 01-01139 (KJC), pending in this Court.

2.      This proceeding arises in a bankruptcy case that is pending in the District of Delaware, and therefore, venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### PARTIES

3.      Plaintiff Ralph Hutt, a resident of Montana, worked at the Libby Facility from March 1968 to October 1969.  Plaintiff Carl Osborn, a resident of Montana, worked at the Libby Facility from May 1960 to June 1965.

4.      The Defendant, MCC, is a Maryland corporation with a principal place of business located at 600 Red Brook Boulevard, Owings Mills, Maryland.

### ALLEGATIONS COMMON TO ALL COUNTS

5.      Beginning upon Grace's acquisition of the Libby Facility in 1963 through at least June 30, 1973, MCC undertook, under Plan 2 of the Montana Occupational Disease Act, 92-1334 R.C.M. (the "Montana Statute"), workers' compensation and occupational disease insurance for Grace employees under Policies R-00590, R-00591, R-00592, *et seq*. (the "Workers Comp Policies").  By the terms of the Montana Statute and the Workers Comp Policies, MCC rather than Grace became statutorily liable to pay all disability and medical benefit claims of the type later defined in the Chapter 11 Plan as Workers' Compensation Claims.

6.      During the period of the Plaintiffs' employment, the acts and omissions of MCC giving rise to the MCC Wrongdoing Claims are alleged to have occurred.

7.      On April 2, 2001, Grace filed voluntary petitions under Chapter 11 of the Bankruptcy Code (the "Petition Date").

8.      On the Petition Date, Grace filed a complaint in the Chapter 11 case seeking to enjoin asbestos-related claims against Grace's non-debtor affiliates and insurers, which initiated Adversary Proceeding No. 01-00771 (the "Preliminary Injunction Proceeding").

9.      From the Petition Date through February 3, 2014, the Plaintiffs were barred by stays and injunctions issued in the Preliminary Injunction Proceeding from commencing or conducting litigation against MCC for the MCC Wrongdoing Claims.

10.      On February 3, 2014, the Effective Date occurred under the Chapter 11 Plan, which this Court had confirmed by orders entered January 31, 2011 and February 15, 2011 [Doc. Nos. 26155 and 26289], such orders having been affirmed by the District Court and the Court of Appeals.

11.      On the Effective Date, the Asbestos PI Channeling Injunction set forth in Section 8.2.1 of the Chapter 11 Plan took effect.[2]

12.      By its terms, the Asbestos PI Channeling Injunction enjoins certain asbestos-related claims against Asbestos Protected Parties, as defined by Section 1.1(51) of the Chapter 11 Plan.

13.      Included in the definition of Asbestos Protected Parties are Settled Asbestos Insurance Companies, as defined in Section 1.1(209) of the Chapter 11 Plan.

14.      MCC is not an Asbestos Protected Party except insofar as it meets the definition of a Settled Asbestos Insurance Company.

15.      Although MCC meets the definition of a Settled Asbestos Insurance Company in respect of claims against Grace for which MCC assumed derivative liability pursuant to comprehensive general liability policies that MCC issued to Grace (the "CGL Policies"), MCC does not meet the definition of a Settled Asbestos Insurance Company in respect of either the Negligence Claim (on each of the three alternative bases set forth below in Counts I, II and III respectively) or the Bad Faith Claim (on each of the three alternative bases set forth below in Counts IV, V and VI respectively).

---

[2] For the Court's convenience, a copy of the pages of the Plan that contain provisions thereof cited in this Complaint is annexed hereto as Exhibit B.

## COUNT I
### (Declaratory Judgment that the Channeling Injunction
### Does Not Enjoin the Negligence Claim – First Basis[3])

16.    The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 15 as though fully set forth herein.

17.    The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

18.    Section 1.1(209) of the Chapter 11 Plan specifies that a Settled Asbestos Insurance Company has such status "to the fullest extent, but only to the extent, provided by [Bankruptcy Code] section 524(g) in respect of any claim that arises by reason of one of the activities enumerated in [Bankruptcy Code] section 524(g)(4)(A)(ii)."

19.    Bankruptcy Code section 524(g), which is incorporated by reference in the Asbestos PI Channeling Injunction as set forth above, provides in pertinent that a channeling injunction

> may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arise by reason of [one of four enumerated activities].

11 U.S.C. § 524(g)(4)(A)(ii).

20.    Upon information and belief, MCC does not claim to have engaged in any of the four activities enumerated in Bankruptcy Code section 524(g)(4)(A)(ii) except for "provision of insurance to the debtor or a related party" (id. § 524(g)(4)(A)(ii)(III)).

21.    In sum, as it pertains to this declaratory judgment action, the Asbestos PI

---

[3] In summary, this Count asserts that Bankruptcy Code section 524(g) – the limitations of which are incorporated into the Asbestos PI Channeling Injunction – excludes the Negligence Claim from any channeling injunction. This Count is similar to Count VI in respect of the Bad Faith Claim.

Channeling Injunction bars "any action directed against [MCC in which MCC] is alleged to be directly or indirectly *liable for the conduct of, claims against, or demands on [Grace]* to the extent that such alleged liability of [MCC] *arises by reason of . . . [MCC]'s provision of insurance to [Grace]*."[4]

22.     The Plaintiffs do not allege in the Negligence Claim that MCC is *liable for the conduct of, claims against, or demands on Grace*, within the meaning of Bankruptcy Code section 524(g)(4)(A)(ii).  Instead, the Plaintiffs allege in the Negligence Claim that MCC is liable for its own wrongful acts and omissions in connection with MCC's design and/or implementation of an inadequate industrial hygiene program, MCC's failure to conduct proper inspections, sampling and/or testing, and MCC's failure to warn of the danger of asbestos exposure.

23.     MCC's alleged liability for the Negligence Claim does not arise *by reason of MCC's provision of insurance to Grace*, within the meaning of Bankruptcy Code section 524(g)(4)(A)(ii).  MCC is liable for the Negligence Claim (if proven) regardless of whether MCC provided insurance to Grace.  Since provision of insurance by MCC is not a legal element of the Negligence Claim, Count 1 of the MCC Wrongdoing Complaint (stating the Negligence Claim), including the general allegations incorporated by reference therein, does not allege that MCC provided insurance to Grace.

24.     Moreover, MCC's liability for the Negligence Claim cannot have arisen *by reason of MCC's provision of insurance to Grace* because the insurance that MCC did supply for the Plaintiffs' asbestos disease – that is, the Workers Comp Policies – provides medical and disability coverage directly to the Plaintiffs, not to Grace, for benefits conferred on the Plaintiffs by the Montana Statute, not by Grace, triggered by the existence of occupational disease rather than by

---

[4] Bankruptcy Code section 524(g)(4)(A)(ii) (italics added).

Grace's conduct or liability (indeed, under the Montana Statute, Grace is relieved of any tort liability it might otherwise have for any disease or injury covered by workers' compensation).

25.     Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the Negligence Claim.

26.     Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Negligence Claim against MCC.

<u>**COUNT II**</u>
**(Declaratory Judgment that the Channeling Injunction**
**Does Not Enjoin the Negligence Claim – Second Basis[5])**

27.     The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

28.     The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

29.     Section 1.1(209) of the Chapter 11 Plan provides that a Settled Asbestos Insurance Company such as MCC has such status "only with respect to, and only to the extent of, any Asbestos Insurance Policy (or portion thereof) identified . . . in Exhibit 5 in the Exhibit Book (as the same may be amended from time to time, including after the Effective Date) . . . ."

---

[5]  In summary, this Count asserts that even if the Negligence Claim were determined by this Court to arise from "the provision of insurance" within the meaning of Bankruptcy Code section 524(g), such insurance must consist of the Workers Comp Policies, which the Chapter 11 Plan by its terms excludes from the Asbestos PI Channeling Injunction by not listing such policies in the *Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection* incorporated into the Chapter 11 Plan.  This Count is similar to Count IV in respect of the Bad Faith Claim.

30.    A true and correct copy of Exhibit 5 in the Exhibit Book, as on file with this Court as of the Effective Date, is annexed to this Complaint as <u>Exhibit C</u> [Docket No. 31657-3 filed January 28, 2014] (the "Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection").

31.    None of the Workers Comp Policies is listed in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection.

32.    The Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection has not been amended since the Effective Date.

33.    Because the Workers Comp Policies are not listed in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection, claims against MCC in its capacity as issuer of the Workers Comp Policies are not barred by the Asbestos PI Channeling Injunction.

34.    As more fully set forth in Count 1 of the MCC Wrongdoing Complaint and Count I of this Complaint, the Negligence Claim is based upon MCC's breach of its own duties, not liability for Grace's, and does not arise by reason of MCC's issuance of insurance to Grace.  If, nevertheless, this Court were to rule that the Negligence Claim seeks to hold MCC *liable for the conduct of, claims against, or demands on Grace* and that such alleged liability for the Negligence Claim *arises by reason of MCC's provision of insurance* to Grace, as those terms are used in Bankruptcy Code section 524(g)(4)(A)(ii), such *provision of insurance* must mean solely issuance of the Workers Comp Policies, since *inter alia* the CGL Policies by their terms exclude coverage for Grace workers such as the Plaintiffs.

35.    As alleged in more detail in paragraphs 27 through 33 above, the Asbestos PI Channeling Injunction by its terms excludes rights or obligations under the Workers Comp Policies.

36.     Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the Negligence Claim.

37.     Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Negligence Claim against MCC.

**COUNT III**
**(Declaratory Judgment that the Channeling Injunction**
**Does Not Enjoin the Negligence Claim – Third Basis[6])**

38.     The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39.     The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

40.     Section 1.1(209) of the Chapter 11 Plan provides that a Settled Asbestos Insurance Company such as MCC has such status "only with respect to, and only to the extent of, any Asbestos Insurance Policy . . . ."

41.     Section 1.1(13) of the Chapter 11 Plan provides that "an Asbestos Insurance Policy shall not include any rights or obligations under any insurance policy or settlement agreement to which any of the Debtors are a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Workers' Compensation Claims."

---

[6] In summary, this Count asserts that even if the Negligence Claim were determined by this Court to arise from "the provision of insurance" within the meaning of Bankruptcy Code section 524(g), such insurance must consist of the Workers Comp Policies, which the Chapter 11 Plan by its terms excludes from the Asbestos PI Channeling Injunction as "coverage . . . for . . . benefits under a state-mandated workers' compensation system." This Count is similar to Count V in respect of the Bad Faith Claim.

42.     Section 1.1(230) of the Chapter 11 Plan defines a Workers' Compensation Claim as, in pertinent part, "any Claim . . . for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of the Debtors or their predecessors is receiving, or may in the future have the right to receive . . . ."

43.     In sum, the Chapter 11 Plan excludes from the Asbestos PI Channeling Injunction "rights or obligations . . . that pertain solely to coverage . . . for . . . benefits under a state-mandated workers' compensation system which a [Grace] employee is receiving or may in the future have the right to receive . . . ."

44.     The Workers Comp Policies pertain solely to coverage for benefits under state-mandated workers' compensation systems, including the system mandated by the Montana Statute.

45.     Accordingly, MCC is not a Settled Asbestos Insurance Company in regard to rights or obligations arising by reason of the Workers Comp Policies.

46.     As more fully set forth in Count 1 of the MCC Wrongdoing Complaint and Count I of this Complaint, the Negligence Claim is based upon MCC's breach of its own duties, not liability for Grace's, and does not arise by reason of MCC's issuance of insurance to Grace.  If, nevertheless, this Court were to rule that the Negligence Claim seeks to hold MCC *liable for the conduct of, claims against, or demands on Grace* and that such alleged liability for the Negligence Claim *arises by reason of MCC's provision of insurance* to Grace, as those terms are used in Bankruptcy Code section 524(g)(4)(A)(ii), such *provision of insurance* must mean solely issuance of the Workers Comp Policies, since *inter alia* the CGL Policies by their terms exclude coverage for Grace workers such as the Plaintiffs.

47.     As alleged in more detail in paragraphs 39 through 44 above, the Asbestos PI Channeling Injunction by its terms excludes rights or obligations under the Workers Comp Policies.

48.     Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the Negligence Claim.

49.     Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Negligence Claim against MCC.

## <u>COUNT IV</u>
### (Declaratory Judgment that the Channeling Injunction<br>Does Not Enjoin the Bad Faith Claim – First Basis[7])

50.     The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51.     The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

52.     Section 1.1(209) of the Chapter 11 Plan provides that a Settled Asbestos Insurance Company such as MCC has such status "only with respect to, and only to the extent of, any Asbestos Insurance Policy (or portion thereof) identified . . . in Exhibit 5 in the Exhibit Book (as the same may be amended from time to time, including after the Effective Date) . . . ."

53.     The Schedule of Settled Asbestos Insurance Companies Entitled to 524(g)

---

[7]  In summary, this Count asserts that the Chapter 11 Plan expressly excludes the Bad Faith Claim from the Asbestos PI Channeling Injunction because the Bad Faith Claim is based on breach of MCC's duties under the Workers Comp Policies, which are not listed in the *Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection* incorporated into the Chapter 11 Plan.  This Count is similar to Count II in respect of the Negligence Claim.

Protection is annexed to this Complaint as Exhibit C.

54.     None of the Workers Comp Policies is listed in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection.

55.     The Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection has not been amended since the Effective Date.

56.     Because the Workers Comp Policies are not listed in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection, claims against MCC in its capacity as issuer of the Workers Comp Policies are not barred by the Asbestos PI Channeling Injunction.

57.     The Bad Faith Claim is based upon MCC's alleged breach of duties in its capacity as issuer of the Workers Comp Policies, namely, MCC's obligation as issuer of the Workers Comp Policies to abide by the duties imposed as a matter of law on insurers of workers' compensation benefits, including the duty to act in good faith in the handling of workers' claims for benefits, and including the duty to disclose to the Plaintiffs facts known to MCC but not to the Plaintiffs indicating that the Plaintiffs had or may in the future have a right to receive from MCC benefits under the workers' compensation system established by the Montana Statute.

58.     Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the Bad Faith Claim.

59.     Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Bad Faith Claim against MCC.

## COUNT V
### (Declaratory Judgment that the Channeling Injunction
### Does Not Enjoin the Bad Faith Claim – Second Basis[8])

60.    The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 59 as though fully set forth herein.

61.    The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

62.    Section 1.1(209) of the Chapter 11 Plan provides that a Settled Asbestos Insurance Company such as MCC has such status "only with respect to, and only to the extent of, any Asbestos Insurance Policy . . . ."

63.    Section 1.1(13) of the Chapter 11 Plan provides that "an Asbestos Insurance Policy shall not include any rights or obligations under any insurance policy or settlement agreement to which any of the Debtors are a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Workers' Compensation Claims."

64.    Section 1.1(230) of the Chapter 11 Plan defines a Workers' Compensation Claim as, in pertinent part, "any Claim . . . for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of the Debtors or their predecessors is receiving, or may in the future have the right to receive . . . ."

65.    In sum, the Chapter 11 Plan excludes from the Asbestos PI Channeling Injunction "rights or obligations . . . that pertain solely to coverage . . . for . . . benefits under a state-mandated workers' compensation system which a [Grace] employee is receiving or may in the future have

---

[8] In summary, this Count asserts that the Chapter 11 Plan expressly excludes the Bad Faith Claim from the Asbestos PI Channeling Injunction because the Bad Faith Claim is based on MCC's alleged breach of "rights or obligations . . . that pertain solely to coverage . . . for . . . benefits under a state-mandated workers' compensation system." This Count is similar to Count III in respect of the Negligence Claim.

the right to receive . . . ."

66.     The Bad Faith Claim is based upon MCC's alleged breach of obligations pertaining solely to coverage for benefits under the workers' compensation system mandated by the Montana Statute, namely, MCC's obligation as issuer of the Workers Comp Policies to abide by the duties imposed as a matter of law on insurers of workers' compensation benefits, including the duty to act in good faith in the handling of workers' claims for benefits, and including the duty to disclose to the Plaintiffs facts known to MCC but not to the Plaintiffs indicating that the Plaintiffs had or may in the future have a right to receive from MCC benefits under the Montana workers' compensation system.

67.     Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the Bad Faith Claim.

68.     Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Bad Faith Claim against MCC.

### COUNT VI
**(Declaratory Judgment that the Channeling Injunction
Does Not Enjoin the Bad Faith Claim – Third Basis[9])**

69.     The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 68 as though fully set forth herein.

70.     The Asbestos PI Channeling Injunction bars any particular claim against MCC only

---

[9] In summary, this Count asserts that Bankruptcy Code section 524(g) – the limitations of which are incorporated into the Asbestos PI Channeling Injunction – excludes the Negligence Claim from any channeling injunction. This Count is similar to Count I in respect of the Negligence Claim.

to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

71.    Section 1.1(209) of the Chapter 11 Plan specifies that a Settled Asbestos Insurance Company has such status "to the extent, but only to the extent, provided by [Bankruptcy Code] section 524(g) in respect of any claim that arises by reason of one of the activities enumerated in [Bankruptcy Code] section 524(g)(4)(A)(ii)."

72.    Bankruptcy Code section 524(g), which is incorporated by reference in the Asbestos PI Channeling Injunction as set forth above, provides in pertinent that a channeling injunction

> may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arise by reason of [one of four enumerated activities].

11 U.S.C. § 524(g)(4)(A)(ii).

73.    Upon information and belief, MCC does not claim to have engaged in any of the four activities enumerated in Bankruptcy Code section 524(g)(4)(A)(ii) except for "provision of insurance to the debtor or a related party" (id. § 524(g)(4)(A)(ii)(III)).

74.    In sum, as it pertains to this declaratory judgment action, the Asbestos PI Channeling Injunction bars "any action directed against [MCC in which MCC] is alleged to be directly or indirectly *liable for the conduct of, claims against, or demands on [Grace]* to the extent that such alleged liability of [MCC] *arises by reason of . . . [MCC]'s provision of insurance to [Grace]*."[10]

75.    The Plaintiffs do not allege in the Bad Faith Claim that MCC is *liable for the conduct of, claims against, or demands on Grace*, within the meaning of Bankruptcy Code section

---

[10] Bankruptcy Code section 524(g)(4)(A)(ii) (italics added).

524(g)(4)(A)(ii).  Instead, the Plaintiffs allege in the Bad Faith Claim that MCC is liable for its own breach of duties to the Plaintiffs imposed as a matter of law on MCC as an insurer of workers' compensation benefits to the Plaintiffs.

76.    MCC's alleged liability for the Bad Faith Claim does not arise *by reason of MCC's provision of insurance to Grace*, within the meaning of Bankruptcy Code section 524(g)(4)(A)(ii). The Bad Faith Claim arises from breach of MCC's duties as issuer of the Workers Comp Policies, which provided medical and disability coverage directly to the Plaintiffs, not to Grace, for benefits conferred on the Plaintiffs by the Montana Statute, not by Grace, triggered by the existence of occupational disease rather than by Grace's conduct or liability (indeed, under the Montana Statute, Grace is relieved of any tort liability it might otherwise have for any disease or injury covered by workers' compensation).

77.    Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the Bad Faith Claim.

78.    Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Bad Faith Claim against MCC.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment:

a)    pursuant to Counts I, II and III, declaring that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from commencing and conducting litigation against MCC on the Negligence Claim, nor from collecting such judgment as may be entered against MCC on the Negligence Claim;

b)    pursuant to Counts IV, V and VI, declaring that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from commencing and conducting litigation against MCC on the Bad Faith Claim, nor from collecting such judgment as may be entered against MCC on the Bad Faith Claim; and

c)      granting the Plaintiffs such other and further relief as the Court deems just and proper, provided that such relief shall not include the right to commence or conduct litigation against MCC for conduct of, claims against, or demands on Grace, including MCC's derivative liability under the CGL Policies.

Respectfully submitted,

RALPH HUTT
CARL OSBORN

By their attorneys,

/s/ Michael Busenkell
Michael Busenkell (DE 3933)
GELLERT SCALI BUSENKELL & BROWN LLC
913 N. Market St., 10th Floor
Wilmington, Delaware  19801
Telephone:  302-425-5800
Facsimile:  302-425-5814
Email:  mbusenkell@gsbblaw.com

-and-

Daniel C. Cohn, Esq.
Ryan M. MacDonald, Esq.
Keri L. Wintle, Esq.
MURTHA CULLINA LLP
99 High Street
Boston, MA 02110
Telephone:  617-457-4000
Facsimile:  617-482-3868
Email: dcohn@murthalaw.com

Dated: October 21, 2014