# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KJC) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) Hearing Date: January 21, 2015, at 11:00 a.m. |
| | ) Objection Deadline: January 12, 2015 |

## OBJECTION TO CLAIM NO. 6078 FILED BY IRVING SHAFFER, AS TRUSTEE OF THE SHAFFER REALTY NOMINEE TRUST AND OF THE BIM INVESTMENT TRUST (SUBSTANTIVE OBJECTION)

In this *Objection to Claim No. 6078 Filed by Irving Shaffer, as Trustee of the Shaffer Realty Nominee Trust and of the BIM Investment Trust (Substantive Objection)* (the "Objection"), the above-captioned reorganized debtors (collectively, the "Reorganized Debtors" or "Grace," the pending bankruptcy cases being the "Chapter 11 Cases") object to Claim no. 6078 (the "Shaffer Claim," a copy of which is attached hereto as Exhibit A), filed by Irving Shaffer, as Trustee of the Shaffer Realty Nominee Trust and of the BIM Investment Trust (collectively, "Shaffer" or the "Claimant"), and request the Court enter an order substantially in the form attached hereto as Exhibit B, disallowing and expunging the Shaffer Claim on the basis that Reorganized Debtors do not owe any amount to Claimant.[2]

In support of this Objection, the Reorganized Debtors respectfully state as follows:[3]

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may, the RD/RA Consent Decree or the NRD Consent Decree (as those terms are defined below), or the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (as it may be amended or supplemented, the "Plan").

[3] The facts and circumstances set forth in this Objection are supported by the *Declaration of Paul G. Bucens in Support of the Objection to Claim No. 6078 Filed by Irving Shaffer, as Trustee of the Shaffer Realty Nominee*

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[4] This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Objection are sections 502 and 558 of the Bankruptcy Code, Fed.R.Bankr.P. 3007 and Del. Bankr. L.R. 3007-1.

## OVERVIEW OF CLAIM OBJECTION

3. As set forth in further detail below, the Shaffer Claim is a contingent, unliquidated claim for potential damages of up to $75,000 under a 1993 agreement relating, *inter alia*, to the performance of certain inspection and maintenance activities at an EPA Superfund Site. Claimant has not asserted any actual out-of-pocket damages. Moreover, to the extent that Claimant does assert any such out-of-pocket damages, they would be far outweighed by the Reorganized Debtors' various potential counter-claims, which they are asserting as a defense to the Shaffer Claim pursuant to Bankruptcy Code section 558.[5]

4. In 2010, approximately seven years after Claimant filed the Shaffer Claim, the 1993 agreement was superseded in relevant part by a "Joint Defense Agreement" (as defined and discussed below) between Claimant, the Reorganized Debtors and a third party, Covidien, Inc.

---

*Trust and of the BIM Investment Trust (Substantive Objection)* (the "Bucens Declaration," attached hereto as Exhibit C and incorporated into this Objection by reference).

[4] The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

[5] The Reorganized Debtors are not seeking any recovery for damages arising from Claimant's breach of the Shaffer Claim, nor are they seeking a recovery at this time for their potential counter-claims arising under relevant environmental law. They do, however, reserve the right to seek any such recovery in the future.

("Covidien"), which obligates Claimant to perform—at its own cost—the same inspection and maintenance activities that are the subject of the Shaffer Claim. As discussed in this Objection, in 2013, Claimant breached its obligations under the 2010 Joint Defense Agreement by not properly performing certain maintenance activities, thereby forcing the Reorganized Debtors to spend approximately $10,000 out-of-pocket to ensure that such maintenance was performed. Claimant is also liable to both the Reorganized Debtors and Covidien for as much as $1 million or more in reimbursement costs relating to the ongoing clean-up of the site at issue. For these reasons, the Reorganized Debtors therefore respectfully request the Court enter the Order disallowing and expunging the Shaffer Claim.

## FACTUAL BACKGROUND

*The Shaffer Properties at the Walpole Site*

5.  The complicated history of ownership of, and manufacturing occurring at, the South Street Superfund Site located in Walpole, Massachusetts (the "Walpole Site"), is summarized in the *Administrative Order and Second Administrative Order for Removal Action*, U.S. EPA Region I CERCLA Docket No. 1-92-1033 ("Administrative Order," a copy of which is attached hereto as Exhibit D). In short, the Administrative Order asserts that the Reorganized Debtors are successors-in-interest to certain companies that operated and owned property at the Walpole Site from 1915 through 1937. The Reorganized Debtors dispute that assertion. The Administrative Order likewise asserts that Covidien's predecessors owned land and operated at the Walpole Site. On information and belief, between 1937 and 1985, Claimant acquired parcels of land at the Walpole Site, and in 1985 acquired the portions of the Walpole Site at issue in this Objection (the "Shaffer Properties"). Claimant continues to own the Shaffer properties.[6]

---

[6] The scope of the Walpole Site has varied over the years. Claimant currently owns the main Walpole Site, which is encompassed within the rubric, the "Shaffer Properties."

6. The Administrative Order required Grace, Grace-Conn. and certain of their affiliates and Claimant to perform certain inspection, maintenance and reporting, as well as other "removal" activities at the Walpole Site, which the United States Environmental Protection Agency ("U.S. EPA") had designated a Superfund Site. The Administrative Order forms the basis for the consent decrees entered into by the Reorganized Debtors that are discussed below.

7. On November 19, 1993, Claimant and Grace entered into an agreement to resolve litigation over the Shaffer Properties (the "Shaffer Agreement," a copy of which is attached hereto as Exhibit E), whereby, *inter alia*, Grace agreed to perform certain inspection, maintenance, reporting and other activities, which Grace thereafter timely performed.

*The Chapter 11 Cases & the Shaffer Claim*

8. On April 2, 2001, the above-captioned chapter 11 cases commenced. [Docket no. 1]. Pursuant to a December 13, 2001 letter (a copy of which is attached hereto as Exhibit F), the Debtors informed Claimant that, because the Shaffer Properties were a non-owned site, the pending chapter 11 cases prevented the Debtors from continuing to perform inspection and maintenance activities on the Shaffer Properties. On information and belief, Claimant performed such inspection and maintenance at the Shaffer Properties from 2002 until 2010, when Covidien, Claimant and the Reorganized Debtors entered into the Joint Defense Agreement (as that term is defined below in ¶ 16). The Joint Defense Agreement obligates Claimant to continue performing these inspection and maintenance activities on the Shaffer Properties at its own expense. (As discussed below, in ¶ 24, on information and belief, Claimant has not fulfilled all of these obligations—thereby breaching its obligations under the Joint Defense Agreement.)

9. On March 26, 2003, Claimant filed the Shaffer Claim to preserve its right to reimbursement for potential costs incurred by Claimant due to having "to perform Debtor's obligations as to the monitoring and reporting" set forth in the Shaffer Agreement, which

Claimant estimated to be $75,000 (based upon an asserted cost of $2,500 per year over a 30-year period with unspecified starting and ending dates). The Shaffer Claim does not assert any actual costs.

10. On or about March 28, 2003, the U.S. EPA asserted a claim against the Debtors that included claims relating to the Walpole Site (the "U.S. EPA Claim"). The claims agent designated the U.S. EPA Claim as Claim no. 9634.

11. On or about June 2, 2008, the Court entered its *Order Authorizing EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters* [Docket no. 18847] (the "EPA Multi-Site Agreement Order"). Attached to that order as Exhibit A was the *EPA Multi-Site Agreement Resolving the United States' Proofs of Claim Regarding Certain Environmental Matters*, dated May 14, 2008, (the "EPA Multi-Site Agreement"). While the Multi-Site Agreement resolved most aspects of Claim no. 9634, it contained a reservation of certain portions of that claim, and of the Debtors' right to object thereto, including but not limited to U.S. EPA claims arising from the Walpole Site.

***Resolution of Claims Arising From the Walpole Site***

12. On or about September 30, 2008, the U.S. EPA completed a remedial investigation and feasibility study with respect to the Walpole Site and issued a Record of Decision (the "ROD") selecting remedial alternatives to be performed at the Walpole Site.

13. On December 10, 2008, this Court entered an *Order Approving Stipulation Resolving Proof of Claim No. 12789* (the "Tyco Stipulation") [Docket No. 20241]. The Tyco Stipulation provided for an allocation of certain costs with respect to the Walpole Site between the Debtors and Tyco Healthcare Group LP ("Tyco"—a predecessor to Covidien), pursuant to which Debtors and Tyco would each pay 50% of Past Response Costs and costs to implement the ROD remedy.

14. On or about February 18, 2009, the United States sent letters to the Debtors, Claimant and Tyco (collectively, the "Settling Defendants") requesting that the Settling Defendants agree to perform the cleanup specified in the ROD and pay the U.S. EPA's past and future costs (including Past Response Costs, Future Response Costs, and Future Oversight Costs collectively the "Response Costs") with respect to the Walpole Site. The Walpole Site was classified as an Additional Site, as that term is defined by the EPA Multi-Site Agreement.

15. On or about November 5, 2009, the United States sent letters to the Settling Defendants on behalf of the U.S. Department of the Interior and the Massachusetts Executive Office of Energy and Environmental Affairs, transmitting for consideration a natural resource damages claim (the "NRD Claim") regarding the Walpole Site. This NRD Claim included performance of the ROD remedy and a request for compensation for alleged injury to natural resources. The letter claimed the amount of $1,723,282.34 for both groundwater and non-groundwater natural resources damages at the Walpole site, an amount that included assessment costs.

16. On April 30, 2010, Grace, Shaffer and Tyco's successor, Covidien, entered into the *Blackburn and Union Privileges Superfund Site Participation Agreement* (the "Joint Defense Agreement") by which the Joint Defense Agreement parties agreed to negotiate a follow-on consent decree for the Walpole Site.[7] The Joint Defense Agreement did not waive any claims that Grace may have against Shaffer. Joint Defense Agreement at ¶ 15. The Joint Defense Agreement further requires Claimant to continue performing inspection, maintenance and reporting functions at the Walpole Site. *Id.* at ¶ 6.3(b).

---

[7] The Joint Defense Agreement has been filed under seal pursuant to the Reorganized Debtors' *Motion Requesting Entry of a Protective Order Authorizing the Debtors to File the Joint Defense Agreement Under Seal*, filed contemporaneously herewith.

17. On July 3, 2010, this Court entered its *Order Authorizing Entry into a Consent Decree with the United States Regarding the Blackburn and Union Privileges Superfund Site - Walpole, MA.* [Docket no. 25043] (the "July 2010 Order"), which approved a consent decree with respect to the Settling Defendants' reimbursement of Response Costs incurred by the United States, in *United States v. BIM Inv. Corp. et. al.*, No. 1:10-cv-11263-NG, (the "RD/RA Consent Decree"), and which reserved, at Article IX, Paragraph 24, the issue of natural resources damages recovery under Section 107(a)(4)(C) of CERCLA, 42 U.S.C. §9607(a)(4)(C). Under the RD/RA Consent Decree, the Debtors were liable for Past Response Costs of $715,930 (which was 50% of the total past Response Costs). The RD/RA Consent Decree also provided that Grace and Tyco would each pay 50% of Future Oversight Costs and Future Response Costs. The Consent Decree did not provide for any waiver by Grace of any claims against Shaffer for contribution towards costs that Grace may incur in complying with the Consent Decree.

18. On February 4, 2011, this Court approved a *Stipulation Resolving Claims of the Massachusetts Department of Environmental Protection* [Docket no. 25926], which resolved certain of the Commonwealth of Massachusetts's environmental claims, while also specifically reserving the right for MassDEP to assert further natural resources damages claims under Mass.GL.c.21.E.

19. On July 14, 2011, the Court entered its *Order Authorizing Entry into a Consent Decree with the United States and the Commonwealth of Massachusetts Regarding the Blackburn and Union Privileges Superfund Site—Walpole, MA* [Docket no. 27252] (the "July 2011 Order"), which approved a consent decree (the "NRD Consent Decree") resolving the U.S. EPA's NRD Claim and MassDEP's natural resources damages claim, insofar as they both related to the Walpole Site. The NRD Consent Decree provided in relevant part that the Reorganized

Debtors pay $358,745.67 to the United States Department of the Interior, on behalf of the federal Natural Resources Trustees. This amount was approximately 47.5% of the total amount to be paid for ecological and groundwater natural resources damages from all of the Settling Defendants. Covidien was responsible for an additional 47.5% of this amount, and Shaffer was responsible for 5%, or approximately $40,000. The NRD Consent Decree further provided that the Reorganized Debtors pay a further $168,339.11 to Massachusetts, which was 50% of the total amount from all of the Settling Defendants that Massachusetts agreed to accept as payment in satisfaction of its NRD claim.

*The Claim Transfer*

20.    On or about September 3, 2010, Argo Partners filed an *Amended Notice of Transfer of Claim Other Than for Security* [Docket no. 25332] (attached hereto as <u>Exhibit H</u>), which documented a purported assignment of the Shaffer Claim to Argo Partners based upon a face value of $75,000.

*Emergence from Chapter 11*

21.    On February 4, 2014, the Reorganized Debtors emerged from chapter 11.[8] On and after the Effective Date, as provided for in the Plan, the Reorganized Debtors paid all Allowed Claims, including all Allowed Claims arising from the July 2010 Order and the July 2011 Order. Pursuant to final decrees entered by this Court, 60 of the Reorganized Debtors' 62 chapter 11 cases have been closed.[9]

---

[8]    *Notice of Occurrence of The Effective Date of The First Amended Joint Plan of Reorganization Under Chapter 11 of The Bankruptcy Code of W. R. Grace and Co., et al, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders As Modified Through December 23, 2010*, dated February 13, 2014 [Docket no. 31732].

[9]    See *Final Decree (A) Closing Certain of The Chapter 11 Cases, (B) Removing Certain of The Chapter 11 Cases From The Joint Administration Order, and (C) Waiving the Requirement That the Reorganized Debtors File a Final Report For the Merged Subsidiaries*, dated March 19, 2014 [Docket no. 31880], and *Final Decree: (A) Closing Certain of the Chapter 11 Cases; (B) Removing Such Cases From the Joint Administration Order; and*

## THE CLAIM OBJECTION

### *Claimant Is Not Entitled to $75,000 for Post-Petition Inspection and Maintenance at the Walpole Site*

22.  The 1993 Shaffer Agreement required Grace to perform inspection and maintenance at the Walpole Site. Shaffer Agreement at ¶ 1. The 2010 Joint Defense Agreement relieved Grace of that responsibility, and required Claimant to perform those activities going forward. Joint Defense Agreement at ¶ 6.3(b). Therefore, there is no basis for Claimant being entitled to reimbursement for thirty years of inspection and maintenance at the site. At most, Claimant may be entitled to reimbursement for the cost of inspection and maintenance activities performed during the 2002 – 2010 period. But Claimant has not amended its proof of claim to assert any such out-of-pocket expenses.

### *The Reorganized Debtors' Counterclaims*

23.  The Reorganized Debtors' counter-claims arise from Claimant's breach of the Joint Defense Agreement and its joint and several liability under relevant environmental law for obligations arising out of the two consent decrees. Joint Defense Agreement ¶ 15 specifically reserves the Reorganized Debtors' rights to pursue claims such as the above-described joint-and-several-liability counter-claims.

### *Claimant Breached the Joint Defense Agreement*

24.  Claimant has since 2010 failed to perform all of the maintenance activities required by Joint Defense Agreement § 6.3(b), pending USEPA's (still forthcoming) approval of the Operation and Maintenance Plan required by RD/RA Consent Decree § VI.J. Specifically, Claimant failed to submit a plan for repair of an asphalt cap pursuant to a demand from EPA in

---

*(C) Waiving The Requirement to File a Final Report For Such Cases*, dated October 14, 2014 [Docket no. 32429-1].

an e-mail dated May 22, 2013, a copy of which is attached hereto as <u>Exhibit H</u>. Failure to submit such a plan (and ultimately failing to implement any repair of the asphalt cap) resulted in a subsequent written demand by EPA, dated June 18, 2013 (attached hereto as <u>Exhibit I</u>), that required: (i) the current landscaping issues and vegetative overgrowth throughout the Site be addressed; (ii) submission of a proposed plan for EPA approval detailing how the Settling Defendants will repair and address the cap degradation in accordance with the I&M Plan; and (iii) submission of a proposed, updated I&M Plan for EPA approval. EPA threatened to assert stipulated penalties against the Settling Defendants under the RD/RA Consent Decree. The Reorganized Debtors and Covidien responded to the demand letter and ultimately addressed the overgrowth and cap repair. In so doing, the Reorganized Debtors have directly incurred approximately $10,000 in out-of-pocket and other costs. *See* Bucens Declaration at ¶ 6.

***Reservation of Rights Under the Joint Defense Agreement***

25.     Second, Joint Defense Agreement ¶ 15 specifically preserves the Reorganized Debtors' claims against Claimant for environmental damage occurring to the site during Claimant's decades-long ownership (since as early as 1937 for some portions of the site), and Claimant's failure to mitigate such damage, which failure has directly contributed to the total cost of site remediation, which could total as much as $25 million, of which the Reorganized Debtors and Covidien have already each paid approximately $3,762,000.

***Costs Incurred by the Reorganized Debtors Pursuant to the Consent Decrees***

26.     As of October 31, 2014, the Reorganized Debtors have incurred approximately $3,235,000 in costs in complying with their obligations under the RD/RA Consent Decree. This total includes: (1) reimbursement of EPA's costs incurred prior to entry of the RD/RA Consent Decree; (2) response costs incurred directly by the Reorganized Debtors in implementing the RD/RA Consent Decree; and (3) oversight costs incurred by EPA since entry of the RD/RA

Consent Decree. On information and belief, Covidien has incurred similar costs, because the Reorganized Debtors and Covidien agreed to share those costs. On information and belief, Claimant has not incurred any costs other than those relating to its inspection and maintenance obligations—which as discussed above, Claimant has failed to fully perform.

27. Under the NRD Consent Decree, the Reorganized Debtors and Covidien have each paid a total of $527,084.78 (approximately 48.2% each) to the United States and the Commonwealth of Massachusetts, while Claimant paid a total of $40,000 (or approximately 3.7% of the total). The Reorganized Debtors have thus paid approximately $3,762,000 in response costs and natural resources damages claims under the two consent decrees. Covidien has paid a similar amount. Claimant has paid only $40,000 under the two decrees—or less than one percent (1%) of the total paid to date.

28. The total cost of remediating the Walpole Site has been estimated at approximately $25 million, based on the requirements of the RD/RA Consent Decree, the EPA Record of Decision that specified the selected remedy, and the remedial design documents submitted to EPA by Covidien and the Reorganized Debtors and approved by EPA. If it does not contribute anything further to the implementation of the RD/RA Consent Decree, Claimant will have paid less than 0.25 percent (0.25%) of the total Walpole Site environmental remediation costs.

*Planned Building Demolishment Will Benefit Claimant*

29. There is also at least one derelict building on one parcel of land of the Shaffer Properties, on which Claimant owes the Town of Walpole approximately $350,000 in back real estate taxes. The Reorganized Debtors and Covidien have reached an agreement with the Town, whereby the Reorganized Debtors and Covidien will demolish that building at an estimated cost of $1 million. They have also reached a separate agreement with EPA related to remediation of

soil underlying the building.[10] When completed, the building's site will revert to the Town in satisfaction of Claimant's unpaid taxes.

***Claimant Is Jointly and Severally Liable for Remediation Costs***

30. As discussed above, Claimant has owned all of the Shaffer Properties since 1985. Manufacturing operations continue on at least part of the Shaffer Properties (and have been ongoing since Claimant acquired the properties). Claimant has failed to mitigate ongoing environmental damages during its ownership of the Shaffer Properties, thereby contributing significantly to the cleanup cost. Yet Claimant is not significantly contributing to the cost of that cleanup. Covidien and the Reorganized Debtors are contributing—to the tune of as much as $25 million, between them. Paradoxically, this clean-up will directly benefit Claimant, as the Town would likely not have relieved Claimant of the above-described tax obligations without the clean-up having occurred. Neither Covidien nor the Reorganized Debtors will stand to benefit economically from these expenditures (other than by marginally controlling the cost of remediation – which under CERCLA joint-and-several-liability, would also benefit Claimant—at least indirectly).

31. On these facts, relevant CERCLA case law makes clear that Claimant's reasonably allocated share of total response costs and damages would far exceed the amount of Claimant's claim by many hundreds of thousands, if not millions, of dollars. *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 808 F. Supp. 2d 417 (N.D.N.Y. 2011) (allocating 15% of response costs to current owner); *Alcan-Toyo Am. v. Northern Ill. Gas Co.*, 881 F. Supp. 342, 347 (N. D. Ill. 1995) (allocating 10% of response costs to current owner and noting that current owner "will reap the benefits of the environmental cleanup of its property"); *Litgo N.J. v.*

---

[10] The Reorganized Debtors and Covidien have agreed to fund the demolition, because in doing so they can better control the cost of remediation.

*Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369 (3d Cir. 2013) (allocated 54% share to current owner); *Minyard Enters., Inc. v. Southeastern Chem & Solvent Co.*, 184 F.3d 373, 387 (4th Cir. 1999) (Court of Appeals reversed judgment allocating only 10% shares to each of current and former owner; stating that, on remand, trial court should consider "that the Property may appreciate following its remediation"); *see also Dent v. Beazer Materials & Servs., Inc.*, 993 F. Supp. 923, 951 n. 30 (D.S.C. 1995) (noting that an additional factor to be considered in allocation is that one of the defendants " will also realize an economic benefit from remediation of this site since it or its designee will acquire [the] property as a part of the settlement agreement between the two parties and, thus, it will receive the benefit of the expenditure of response costs on this property").

32. To summarize, the Reorganized Debtors will pay at least $13 million, and possibly much more, to comply with the RD/RA Consent Decree and the NRD Consent Decree. Claimant has paid only $40,000 to date, with no significant likelihood of paying any more. In other words, Claimants will pay less than 0.5 percent as much as the Reorganized Debtors to resolve liabilities related to the Walpole Site. In any reasonable allocation, Claimants would owe the Reorganized Debtors more than $1 million, and perhaps as much as several million dollars in contribution for the work performed and claims paid by the Reorganized Debtors—many times the amount asserted in Claim no. 6078.

33. The Reorganized Debtors have not yet asserted any of these potential counter-claims against Claimant (nor are they seeking to do so in this Objection). But Bankruptcy Code section 558 permits the Court to disallow the Shaffer Claim based upon these counter-claims. 11 U.S.C. § 558 ("The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitations, statutes of frauds, usury, and

other personal defenses"); *see also In re Women First Healthcare, Inc.*, 345 B.R. 131, 135 (Bankr. D. Del. 2006) ("a debtor may set off pre-petition claims against post-petition obligations it owes"); *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus.)*, 183 B.R. 812, 819 (Bankr. N.D. Ill. 1995) ("A counterclaim can serve as a proper objection to a creditor's claim"). Section 558 likewise also permits the Court to disallow the claim based upon the Reorganized Debtors having spent approximately $10,000 on maintenance on the Shaffer Properties after Claimant breached the Joint Defense Agreement by failing to perform that maintenance. Finally, Claimant has not asserted any actual claim for out-of-pocket expenses incurred during the 2002-2010 period, and thus has not met its burden of proof in asserting a liquidated claim amount. 9-3001 COLLIER ON BANKRUPTCY ¶ 3001.09. Each of these bases is more than sufficient for the Court to disallow the Shaffer Claim.

## RELIEF REQUESTED

34. The Reorganized Debtors request that the Court enter the Order substantially in the form attached hereto as Exhibit B, disallowing and expunging Claim no. 6078.

## PROCEDURES FOR RESPONDING TO THE CLAIM OBJECTION

35. To contest this Objection, Claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than 4:00 p.m. ET, on January 12, 2015 (the "Response Deadline"). The Response must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") at the following address:

> 824 Market Street
> Wilmington, Delaware 19801

36. Claimant must also serve the Response upon the following co-counsel to the Reorganized Debtors on or before the Response Deadline:

        KIRKLAND & ELLIS LLP
        Adam C. Paul
        Jeffrey W. Gettleman
        300 North LaSalle Street
        Chicago, IL 60654

        THE LAW OFFICES OF ROGER HIGGINS, LLC
        Roger J. Higgins
        1 North Bishop Street
        Suite 14
        Chicago, IL 60607-1823

        PACHULSKI STANG ZIEHL & JONES LLP
        Laura Davis Jones (Bar No. 2436)
        James E. O'Neill (Bar No. 4042)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705

37. Any such Response to this Objection must contain, at a minimum, the following:

a. A caption setting forth the name of the Court, the name of the Reorganized Debtors, the case number, and the title of the Objection to which the Response is directed;

b. The name of the Claimant, its claim number, and a description of the basis for the amount of the claim;

c. The specific factual basis and supporting legal argument upon which the party will rely in opposing the Claim Objection;

d. Any supporting documentation, to the extent it was not included with the proof of claim previously filed with the Clerk or Claims Agent, upon which the party will rely to support the basis for and amounts asserted in the proof of claim;

e. The name, address, telephone number, and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Reorganized Debtors should communicate with respect to the claim or the objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the Disputed Claim on behalf of the Claimant.

38. If Claimant fails to file and serve a timely Response, the Reorganized Debtors may present to the Court an appropriate order disallowing and expunging that Claimant's claim or claims without further notice to the Claimant or a hearing.

## REPLY TO RESPONSE

39. The Reorganized Debtors reserve the right to, at their option, file and serve one or more replies to any response filed by Claimant.

## SEPARATE CONTESTED MATTER

40. If Claimant files a Response to this Objection, and the Claimant and the Reorganized Debtors are unable to resolve that Response, the corresponding claim and the objection by the Reorganized Debtors thereto asserted in this Objection shall constitute a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.

## RESERVATION OF RIGHTS

41. The Reorganized Debtors hereby reserve the right to object in the future to Claim no. 6078. The Reorganized Debtors further reserve the right to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims. Separate notice and hearing will be scheduled for any such objection.

42. The Reorganized Debtors also specifically reserve the right to commence an adversary proceeding in this Court or to institute proceedings in some other court of competent jurisdiction to recover damages in satisfaction of some or all of their counter-claims.

## NO PREVIOUS OBJECTION

43. No previous objection to Claim no. 6078 has been filed, nor has any other motion for the relief sought herein been made to this or any other court.

## NOTICE

44. Notice of this Objection has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust

(7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (ix) Covidien, Inc.; (x) the Environmental Protection Agency and U.S. EPA Region I; and (xi) Claimant, Claimant's counsel and Argo Partners. In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached hereto as <u>Exhibit B</u>: (i) disallowing and expunging Claim no. 6078; and (ii) granting such other relief as may be appropriate.

Dated:  December 12, 2014

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors