# Exhibit C

**Bucens Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KJC) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) Hearing Date: January 21, 2015, at 11:00 a.m. |
| | ) Objection Deadline: January 14, 2015 |

**DECLARATION OF PAUL G. BUCENS IN SUPPORT OF THE REORGANIZED DEBTORS' OBJECTION TO CLAIM NO. 6078 FILED BY IRVING SHAFFER, AS TRUSTEE OF THE SHAFFER REALTY NOMINEE TRUST AND OF THE BIM INVESTMENT TRUST (SUBSTANTIVE OBJECTION)**

| | |
|---|---|
| COUNTY OF MIDDLESEX | ) |
| | ) ss. |
| STATE OF MASSACHUSETTS | ) |

Paul G. Bucens, after being duly sworn according to law, deposes and says:

1. I am over the age of 18 and competent to testify. I am Project Manager, Environment, Health and Safety, for W. R. Grace & Co.-Conn. ("Grace-Conn."), which is one of the above-captioned reorganized debtors (collectively, "Grace" or the "Reorganized Debtors"). I am responsible for reviewing environmental claims and the resolution thereof during the chapter 11 cases. In that capacity, I have reviewed the Reorganized Debtors' *Objection to Claim No. 6078 Filed by Irving Shaffer, as Trustee of the Shaffer Realty Nominee Trust and of the BIM Investment Trust (Substantive Objection)* (the "Objection"), filed concomitantly herewith. All facts set therein and in this Declaration are based on my personal knowledge, upon information supplied to me by the Reorganized Debtors' employees and professionals retained in these

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

chapter 11 cases, as well as upon my opinion based upon my experience and knowledge of Grace's businesses.[2]

2. Upon information and belief, the Reorganized Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the respective amounts owed to their creditors. If called upon to testify, I could and would testify competently to the facts and opinions contained in this Declaration.

*The Shaffer Properties at the Walpole Site*

3. The complicated history of ownership of, and manufacturing occurring at, the South Street Superfund Site located in Walpole, Massachusetts (the "Walpole Site"), is summarized in the *Administrative Order and Second Administrative Order for Removal Action*, U.S. EPA Region I CERCLA Docket No. 1-92-1033 ("Administrative Order," a copy of which is attached to the Objection as Exhibit D). In short, the Administrative Order asserts that the Reorganized Debtors are successors-in-interest to certain companies that operated and owned property at the Walpole Site from 1915 through 1937. The Reorganized Debtors dispute that assertion. The Administrative Order likewise asserts that Covidien's predecessors owned land and operated at the Walpole Site. On information and belief, between 1937 and 1985, Claimant acquired parcels of land at the Walpole Site, and in 1985 acquired the portions of the Walpole Site at issue in this Objection (the "Shaffer Properties"). Claimant continues to own the Shaffer properties.[3]

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Objection or the *First Amended Joint Plan of Reorganization in their Chapter 11* Cases [Docket no. 26368], as it may be further supplemented or otherwise further amended from time to time, and the schedules and exhibits to the foregoing, as they may be in effect from time to time (the "Plan").

[3] The scope of the Walpole Site has varied over the years. Claimant currently owns the main Walpole Site, which is encompassed within the rubric, the "Shaffer Properties."

2

4. On November 19, 1993, Claimant and Grace entered into an agreement to resolve litigation over the Shaffer Properties (the "Shaffer Agreement," a copy of which is attached to the Objection as Exhibit E), whereby, *inter alia*, Grace agreed to perform certain inspection, maintenance, reporting and other activities, which Grace thereafter timely performed.

*The Chapter 11 Cases & the Shaffer Claim*

5. Pursuant to a December 13, 2001 letter (a copy of which is attached to the Objection as Exhibit F), the Debtors informed Claimant that, due to the pending chapter 11 cases, they were unable to continue performing inspection and maintenance activities on the Shaffer Properties, because the Shaffer Properties were a non-owned site. On information and belief, Claimant performed such inspection and maintenance at the Shaffer Properties from 2002 until 2010, when Grace, Shaffer and Covidien entered into the Joint Defense Agreement (as that term is defined in Objection ¶ 16).

*Claimant Breached the Joint Defense Agreement*

6. Claimant has since 2010 failed to perform all of the maintenance activities required by Joint Defense Agreement § 6.3(b), pending USEPA's (still forthcoming) approval of the Operation and Maintenance Plan required by RD/RA Consent Decree § VI.J. Specifically, Claimant failed to submit a plan for repair of an asphalt cap pursuant to a demand from EPA in an e-mail dated May 22, 2013, a copy of which is attached to the Objection as Exhibit H. Failure to submit such a plan (and ultimately failing to implement any repair of the asphalt cap) resulted in a subsequent written demand by EPA, dated June 18, 2013 (attached to the Objection as Exhibit I), that required: (i) the current landscaping issues and vegetative overgrowth throughout the Site be addressed; (ii) submission of a proposed plan for EPA approval detailing how the Settling Defendants will repair and address the cap degradation in accordance with the I&M Plan; and (iii) submission of a proposed, updated I&M Plan for EPA approval. EPA threatened

application of stipulated penalties on the Settling Defendants under the RD/RA Consent Decree. The Reorganized Debtors and Covidien responded to the demand letter and ultimately addressed the overgrowth and cap repair. In so doing, the Reorganized Debtors have directly incurred approximately $10,000 in out-of-pocket and other costs.

*Costs Incurred by the Reorganized Debtors Pursuant to the Consent Decrees*

7. As of October 31, 2014, the Reorganized Debtors have incurred approximately $3,235,000 in costs in complying with their obligations under the RD/RA Consent Decree. This total includes: (1) reimbursement of EPA's costs incurred prior to entry of the RD/RA Consent Decree; (2) response costs incurred directly by the Reorganized Debtors in implementing the RD/RA Consent Decree; and (3) oversight costs incurred by EPA since entry of the RD/RA Consent Decree. On information and belief, Covidien has incurred similar costs, because the Reorganized Debtors and Covidien agreed to share those costs. On information and belief, Claimant has not incurred any costs other than those relating to its inspection and maintenance obligations—which as discussed above, Claimant has failed to fully perform.

8. Under the NRD Consent Decree, the Reorganized Debtors and Covidien have each paid a total of $527,084.78 (approximately 48.2% each) to the United States and the Commonwealth of Massachusetts, while Claimant paid a total of $40,000 (or approximately 3.7% of the total). The Reorganized Debtors have thus paid approximately $3,762,000 in response costs and natural resources damages claims under the two consent decrees. Covidien has paid a similar amount. Claimant has paid only $40,000 under the two decrees—or less than one percent (1%) of the total paid to date.

9. The total cost of remediating the Walpole Site has been estimated at approximately $25 million, based on the requirements of the RD/RA Consent Decree, the EPA Record of Decision that specified the selected remedy, and the remedial design documents

submitted to EPA by Covidien and the Reorganized Debtors and approved by EPA. If Claimant does not contribute anything further to the implementation of the RD/RA Consent Decree, Claimant will have paid less than 0.25 percent (0.25%) of the total Walpole Site environmental remediation costs.

*Planned Building Demolishment Will Benefit Claimant*

10. There is also at least one derelict building on one parcel of land of the Shaffer Properties, on which Claimant owes the Town of Walpole approximately $350,000 in back real estate taxes. The Reorganized Debtors and Covidien have reached an agreement with the Town, whereby the Reorganized Debtors and Covidien will demolish that building at an estimated cost of $1 million. They have also reached a separate agreement with EPA related to remediation of soil underlying the building.[4] When completed, the building's site will revert to the Town in satisfaction of Claimant's unpaid taxes.

[remainder of page left intentionally blank]

---

[4] The Reorganized Debtors and Covidien have agreed to fund the demolition, because in doing so they can better control the cost of remediation.

11. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Paul G. Bucens
Project Manager, Environment, Health and Safety
W. R. Grace & Co.-Conn.

SWORN AND SUBSCRIBED before me,
this 10 day of December 2014

Notary Public
My Commission Expires: July 9th 2021



MEGHAN GUAY
Notary Public
Massachusetts
Commission Expires Jul 9, 2021