<u>**EXHIBIT E**</u>

**Shaffer Agreement**

*E - Walpole (Shaffers)*

## GOODWIN, PROCTER & HOAR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
COUNSELLORS AT LAW
EXCHANGE PLACE
BOSTON, MASSACHUSETTS 02109-2881

TELEPHONE (617) 570-1000
TELECOPIER (617) 523-1231
TELEX 94-0640
CABLE · GOODPROCT. BOSTON

DEC  8 1993

December 6, 1993

CL LEI
RRM
ADL
DFG · with checks

**VIA FEDERAL EXPRESS**

J. Maxwell Williams, Esq.
Chief Group Counsel & Assistant Secy.
W.R. Grace & Co.
100 North Main Street
Memphis, TN 38103

Re:  <u>W.R. Grace & Co. - Conn. v. Milton Shaffer, et als., C.A. No. 93-10970-Y</u>

Dear Max:

I am pleased to enclose a copy of the Agreement between Grace and Shaffer, which closed on Friday afternoon, December 3, 1993. I will retain the original in my possession for now, since the Easement needs to be revised by the addition of Exhibit E thereto, the original of the Easement and Restriction needs to be filed in the Registry, the Use Restriction needs to be held in escrow for possible filing in the Registry, and the Stipulation of Dismissal needs to be filed in Court.

I am also enclosing herewith the three checks transmitted by the Shaffers at the closing, each made out to W.R. Grace & Co. - Conn., and a $10.00 check representing the balance of the escrow account which we had been maintaining as required under the May 5 Agreement. <u>With the funds paid through the May 5 Agreement prior to closing and these funds, the total amount received in connection with the litigation is $73,250.00.</u>

We will be moving forward  on the miscellaneous issues in connection with the closing, including the title issues, obtaining the approval of the Town, and dealing with the question of further documentation from the Shaffers. As you requested, I also will be sending to you this week both a list of tasks which Grace is required to complete as a result

GOODWIN, PROCTER & HOAR

J. Maxwell Williams, Esq.
December 6, 1993
Page 2

of the settlement and a summary for the engineering people of the rights which we have obtained under the Agreement.  If you have any other requests, please let me know.

Very truly yours,

Thomas M. Hefferon

TMH/cmg
Encs.
cc:  Paul C. Nightingale, Esq. (w/ attachs.)
     F. Dennis Saylor, IV, Esq. (w/ attachs.)
     Susan M. Cooke, Esq. (w/ attachs.)

82645.a1
12/6/93

GOODWIN, PROCTER & HOAR
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
COUNSELLORS AT LAW
EXCHANGE PLACE
BOSTON, MASSACHUSETTS 02109-2881

TELEPHONE (617) 570-1000
TELECOPIER (617) 523-1231
TELEX 94-0640
CABLE · GOODPROCT, BOSTON

December 3, 1993

**BY HAND**

Solomon Feldman, Esq.
One Boston Place
26th Floor
Boston, MA 02108

Re:   W.R. Grace & Co. - Conn. v. Milton Shaffer, et als., C.A. No. 93-10970-Y

Dear Sol:

This letter confirms the agreements which we have reached, on behalf of our respective clients, in connection with and as a material inducement for the closing of the Agreement this day:

1.   For the period of time up to and including 5:00 p.m. on December 17, 1993, Grace agrees that it will not reveal the terms of the Agreement to the Kendall Company, or any representative thereof. In the event Grace is asked by Kendall or its representative about the status of the litigation or of any settlement thereof, including the terms of the Agreement, Grace will indicate that a settlement has been reached but that it is not at liberty to disclose the terms of the settlement. Grace shall not be liable, in damages or otherwise, for breach of this agreement. In exchange, Shaffer's obligations under paragraph 16.2 of the Agreement are extended to include the time five business days after any agreement or settlement is reached with Kendall.

2.   Shaffer are hereby granted an extension up to and including 4:00 p.m. on Friday, December 10, 1993 to comply with the requirements of Paragraph 6.9 of the Agreement. In the event Irving Shaffer or Milton Shaffer is unable to perform under Paragraph 6.9 because his wife is unwilling to provide such information, such Shaffer shall be excused from such non-performance if, by the deadline, such Shaffer delivers to Grace's counsel a sworn statement from said wife that she is unwilling to provide such information.

GOODWIN, PROCTER & HOAR

Solomon Feldman, Esq.
December 3, 1993
Page 2


Please countersign this letter, indicating your acceptance and agreement of its terms.

Very truly yours,

Thomas M. Hefferon

Solomon Feldman, Esq.
Attorney For Shaffer Parties

82077.a1
12/3/93

GOODWIN, PROCTER & HOAR

Solomon Feldman, Esq.
December 3, 1993
Page 3


bcc:  J. Maxwell Williams, Esq.
      Paul C. Nightingale, Esq.
      F. Dennis Saylor, IV, Esq.

# AGREEMENT

between

## W.R. Grace & Co. - Conn.

and

**Irving Shaffer**
**Milton Shaffer**
**Burton Shaffer**
**Shaffer Realty Nominee Trust**
**BIM Investment Trust**
**Philip Shaffer Family Trust**

November 19, 1993

AGREEMENT

November 19, 1993

The Parties to this Agreement are (i) Shaffer Realty Nominee Trust, u/d/t dated December 26, 1986 and recorded in the Norfolk County (Massachusetts) Registry of Deeds ("Norfolk Registry"), Book 7382, Page 267 ("SRNT"); (ii) BIM Investment Trust, u/d/t dated February 28, 1966 and recorded in the Norfolk Registry, Book 6654, Page 431 and Book 6710, Page 563 ("BIM"); (iii) Philip Shaffer Family Trust ("PSFT"); (iv) Irving Shaffer, in his individual capacity, as Trustee of SRNT, as Trustee of BIM, as Trustee of PSFT and as beneficiary of BIM; (v) Milton Shaffer, in his individual capacity, as Trustee of SRNT, as Trustee of BIM, as Trustee of PSFT and as beneficiary of BIM; (vi) Burton Shaffer, in his individual capacity, as Trustee of SRNT, as Trustee of BIM, as Trustee of PSFT and as beneficiary of BIM; and, (viii) W.R. Grace & Co. - Conn.  SRNT, BIM, PSFT, Irving Shaffer, Milton Shaffer and Burton Shaffer, and each of their predecessors, parents, subsidiaries, affiliates, successors in business or interest, officers, directors, trustees, beneficiaries, subbeneficiaries, agents, employees, and representatives shall be referred to collectively as "Shaffer."  W.R. Grace & Co. - Conn. and its predecessors, parents, subsidiaries, affiliates, successors in business or interest, officers, directors, agents, employees, and representatives shall be referred to collectively as "Grace."

WHEREAS, SRNT is the record owner, and PSFT the beneficiary, of certain real property located on South Street in Walpole, Massachusetts as set forth in a deed of conveyance from Shaffer Realty Corp. to SRNT dated December 26, 1986, recorded at the Norfolk Registry, Book 7382, Page 271; such property consisting of Lot Nos. 1235-2A, 1235-2B, 1235-3, 1235-5, 1235-6, 1235-7, 1275-5, 1275-6, 1232-1A and 1235-8 as depicted on Walpole Tax Map D-2 (the "SRNT Property");

WHEREAS, BIM is the record owner of certain real property located on South Street in Walpole, Massachusetts as set forth in a deed of conveyance from The Kendall Company ("Kendall") to BIM dated April 25, 1985, recorded at the Norfolk Registry, Book 6654, Page 431; such property consisting of Lot Nos. 1235-1 and 1235-4 as depicted on Walpole Tax Map D-12 (the "BIM Property");

WHEREAS, the SRNT Property and the BIM Property are sometimes collectively referred to as the "Shaffer Site";

WHEREAS, the United States Environmental Protection Agency ("USEPA") and the Massachusetts Department of Environmental Protection ("MADEP") have, at various times from 1986 to the present day, identified Shaffer, Grace and Kendall as potentially responsible parties with respect to certain conditions said to have existed or exist on the Shaffer Site and other properties in the vicinity of the Shaffer Site (the "South Street Site");

WHEREAS, in response to an Administrative Order issued by USEPA on December 15, 1988 ("First EPA Order"), Grace, Kendall and Shaffer entered into a "Memorandum of Understanding, South Street Site, Walpole, Massachusetts" ("MOU") and,

pursuant to the MOU, completed an environmental assessment study of conditions at the South Street Site ("Dames and Moore Study");

WHEREAS, the Dames & Moore Study identified asbestos contamination in, about and adjacent to the South Street Site;

WHEREAS, an Administrative Order issued by USEPA on January 31, 1992 ("Second EPA Order") required that Grace and Shaffer implement a Removal Action Plan designed by Canonie Environmental Services Corp. for the remediation of asbestos-containing materials at the South Street Site ("Canonie Plan"), and further required that Grace and Shaffer design and implement both an inspection and maintenance plan and an appropriate set of institutional controls to insure the long-term integrity and preservation of the work to be completed under the Canonie Plan;

WHEREAS, Grace voluntarily undertook to direct and finance the Canonie Plan, and in connection therewith, Grace, BIM and SRNT executed and recorded certain Access Agreements dated June 4, 1992, providing for Grace and Canonie's access to the Shaffer Site to implement the Canonie Plan ("1992 Access Agreements");

WHEREAS, the work under the Canonie Plan has been completed at a cost to Grace in excess of $3 million;

WHEREAS, Canonie designed a comprehensive post-removal inspection and maintenance plan entitled "Long-Term Inspection and Maintenance Plan South Street Site, Walpole, Massachusetts" dated September 1992 (the "Canonie I&M Plan"), and Grace's wetlands consultant, Normendeau Associates, Inc., designated a wetlands mitigation plan entitled "Wetland Mitigation Design South Street Site, Walpole, Massachusetts" dated October 1992 (the "Normendeau Wetlands Plan"), which plans have received final approval by USEPA as adequate to meet the requirements of the Second EPA Order (collectively, the Canonie I&M Plan and the Normendeau Wetlands Plan are hereinafter referred to as the "I&M Plan");

WHEREAS, Grace has proposed to both USEPA and Shaffer that the institutional controls contemplated by the Second EPA Order be satisfied by a certain draft Notification and Use Restrictions and Easement document, to be executed and recorded at the Norfolk Registry ("Grace's Draft Use Restriction");

WHEREAS, Shaffer has agreed to the form and content of Grace's Draft Use Restriction, but USEPA has not yet approved, disapproved or provided definitive comment on such Draft;

WHEREAS, a certain quantity of excavated soils, contaminated by asbestos and oil, is currently stockpiled on the BIM Property (the "Soil Pile"), and the Parties agree that the Soil Pile should be removed forthwith and disposed of at a facility licensed and capable of accepting such materials;

2

WHEREAS, on May 3, 1993, Grace commenced a civil action against a number of the Shaffer Parties in United States District Court for the District of Massachusetts, styled W.R. Grace & Co. - Conn. v. Milton Shaffer, Burton Shaffer and Irving Shaffer, individually and as each is Trustee of Shaffer Realty Nominee Trust and BIM Investment Trust, Shaffer Realty Nominee Trust, and BIM Investment Trust, Civil Action No. 93-10970-Y ("Lawsuit");

WHEREAS, on May 5, 1993, Grace and the defendants in the Lawsuit entered into an "Agreement" ("May 5 Agreement") an "Addendum to Agreement" ("May 5 Addendum") and a "Stipulation of Preliminary Injunction", and the "Stipulation of Preliminary Injunction" was entered as an order of the Court dated May 28, 1993;

WHEREAS, Grace filed an First Amended Complaint in the Lawsuit on June 22, 1993 which, inter alia, added PSFT as a defendant;

WHEREAS, Shaffer brought claims in the Lawsuit against Third Party Defendants Guino Orlando, Anna Orlando, Anna Silvi, Linda Derainian, Priscilla Bertone (collectively the "Individual Landowners"), the Town of Walpole, Lockwood Green Engineering Co. ("LG") and Kendall, but has not served process upon either LG or Kendall;

WHEREAS, at Grace's request, Milton, Burton and Irving Shaffer submitted to examination under oath at deposition and gave testimony concerning Shaffer assets, and Grace has relied upon that testimony in entering into this Agreement;

WHEREAS, the Parties hereto wish to resolve their past differences in connection with the South Street Site, to dispose of the Lawsuit, and to provide for certain arrangements to minimize the possibility of future litigation concerning asbestos contamination at the South Street Site, while retaining all rights each may have in the event future claims not related to asbestos arise between them, and provide, as set forth pursuant to sections 3 and 8 hereof, for the dismissal of the claims by Shaffer against the Individual Landowners and the Town of Walpole;

WHEREAS, both Grace and certain trusts and entities owned or controlled by Shaffer have been named as potentially-responsible parties by USEPA at the so-called Iron Horse Park/Shaffer Landfill Site in Billerica, Massachusetts ("Billerica Site"), and Grace wishes to obtain Shaffer's cooperation relative to the claims of the USEPA or third parties in connection with the contamination of the Billerica Site;

NOW THEREFORE in consideration of the valuable promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to any necessary Court approvals, Grace, SRNT, BIM, PSFT, Irving Shaffer, Milton Shaffer and Burton Shaffer ("Parties") agree as follows:

1.    Inspection and Maintenance Activities.

3

1.1    Grace shall be responsible for conducting the work required under the I&M Plan. Grace may use contractors or other agents to conduct such work, but shall remain ultimately responsible for the I&M Plan. The form of permanent easement attached hereto as Exhibit A is being executed simultaneously herewith in order to enable Grace to enter onto the portion of the Shaffer Site to the west of South Street for purposes of performing the I&M Plan. Grace shall record the easement at its own expense. Shaffer agrees not to interfere with Grace or its designee in the exercise of its rights under the easement or in the performance of the I&M Plan.

1.2    Simultaneous herewith, Shaffer shall pay to Grace $17,500.00 in immediately available funds as its sole contribution towards the cost of completing the I&M Plan. It is understood and acknowledged by the Parties that Grace has no obligation to hold those funds in trust or in escrow and no obligation to apply those funds to the cost of completing the I&M Plan, and that Shaffer surrenders any rights or entitlement to a refund, reimbursement or return of such funds under any circumstances whatsoever.

2.    Institutional Controls.

2.1    Shaffer shall execute Grace's Draft Use Restriction simultaneous herewith, in the form attached hereto as Exhibit B. Grace shall hold such executed Draft Use Restriction in escrow, subject to the provisions of this section 2.

2.2    When USEPA and/or MADEP notify Grace or Shaffer as to the form and content of institutional controls required under the Second EPA Order, such party in turn shall promptly inform the other as to those requirements. Grace shall have the right to communicate with USEPA and MADEP concerning such institutional controls and the agencies' requirements for same, and each party shall receive copies of all final documents exchanged between one party and the governmental authorities on such subjects.

2.3    Shaffer shall request USEPA and MADEP that the final form of institutional controls:

(a)    make Grace a grantee of any deed restriction or covenant created by Shaffer, or otherwise grant to Grace the right and ability to enforce the institutional controls;

(b)    contain terms which protect Grace's rights and ability to perform and complete the I&M Plan; and,

(c)    protect Grace's rights created or reserved in this Agreement, to the extent such protection is practicable and addresses reasonably foreseeable circumstances.

Shaffer shall be required to make such requests of the agencies in good faith, and either negotiate such matters diligently or permit Grace to negotiate such matters. Nothing

4

contained in this paragraph shall be deemed to require Shaffer to refuse to execute or implement institutional controls in the event USEPA and/or MADEP refuse to modify the institutional controls to the extent of Grace's request.

2.4    If, within ninety (90) days of Shaffer's receipt from USEPA and/or MADEP of the proposed form and content of the institutional controls, Shaffer and said governmental authorities have not both reached final agreement on the form and content of the institutional controls and communicated the form and substance of such agreement to Grace, Grace may record the executed version of Grace's Draft Use Restriction which it holds in escrow.

2.5    In the event that USEPA and/or MADEP refuse to permit Grace to be named as a grantee on any deed restriction or covenant to be created by Shaffer in favor of USEPA and MADEP as an element of institutional controls, Shaffer will execute, at Grace's request, recordable documents sufficient to give Grace the benefit of and right to enforce whatever institutional controls were ordered by the government and/or approved by Shaffer.  Grace shall record such documents at its option and expense.  If Grace has recorded Grace's Draft Use Restriction but Shaffer subsequently offers to provide Grace with a recordable document providing Grace with the rights specified in this paragraph 2.5, Grace shall substitute such recordable document for Grace's Draft Use Restriction and execute a discharge of Grace's Draft Use Restriction.

3.    Lawsuit.

3.1    Simultaneous herewith, Shaffer shall pay Grace $11,500.00 in immediately available funds.

3.2    Simultaneous herewith, Grace and Shaffer shall execute the form of "Stipulation of Partial Dismissal on Terms" which is attached hereto as Exhibit C ("Partial Dismissal Stipulation"), and the "Restriction" which is attached hereto as Exhibit D.

3.3    Within ten (10) business days, Grace shall cause counsel for the Individual Landowners and the Town of Walpole to execute the Partial Dismissal Stipulation. Grace shall file the executed Partial Dismissal Stipulation immediately thereafter.

3.4    Within ten (10) business days of the date hereof, Grace shall record the Restriction, and immediately thereafter the Parties jointly shall request that the Court dissolve the Stipulation of Preliminary Injunction.

3.5    Within twenty-one (21) days of the day Shaffer has discharged its duties and responsibilities set forth in section 2 above, or the day on which Grace records the executed version of Grace's Draft Use Restriction, whichever occurs first, Grace shall dismiss with prejudice all claims in the Lawsuit concerning the institutional controls.  Shaffer shall execute a voluntary dismissal stipulation requested by Grace to accomplish this step.

3.6     Pending final disposition of the Lawsuit, the Parties shall cooperate in providing such information as the Court may need or request concerning this Agreement and the status of any matter arising hereunder and shall work together to prevent the case from being advanced on the calendar or disposed of in a manner inconsistent with this Agreement.

4.     Soil Pile.

4.1     Grace shall make arrangements for the disposal of the Soil Pile within thirty (30) days of this Agreement. Grace or its designee may enter the South Street Site to remove the Soil Pile. Solely as an accommodation to the Parties and in no way as an admission of fact or liability, Grace will be identified on all hazardous waste manifests as the person arranging for the disposal of or otherwise generating that waste.

4.2     Simultaneous herewith, Shaffer shall pay to Grace $33,750.00 in immediately available funds as its share of the costs of the removal, transport, and disposal of the Soil Pile. This sum represents the estimated cost of removal which is fairly allocated to the fact the Soil Pile is contaminated with oil. It is understood and acknowledged by the Parties that Grace has no obligation to hold those funds in trust or in escrow and no obligation to apply those funds to the cost of removal of the Soil Pile, and that Shaffer surrenders any rights or entitlement to a refund, reimbursement or return of such funds under any circumstances whatsoever.

4.3     It is expressly understood and agreed that the Parties hereby reserve all claims, rights and obligations which each have or may have concerning or arising out of the Soil Pile or its disposal, with the exception of costs associated with removing the Soil Pile from the BIM Property and its initial off-site disposal.

5.     General Representations and Warranties.

5.1     Irving Shaffer, Burton Shaffer and Milton Shaffer represent and warrant that this Agreement is their free act and deed, that they have considered or relied upon the advice of personally selected legal counsel in connection with this Agreement, that the terms of this Agreement have been explained to them, that they have been afforded an adequate opportunity to read and understand this Agreement, and that the terms of the Agreement are fully understood and voluntarily agreed to.

5.2     Irving Shaffer, Burton Shaffer and Milton Shaffer represent and warrant that this Agreement is the free act and deed of SRNT, BIM and PSFT, that in their capacity as Trustees they have considered or relied upon the advice of personally selected legal counsel in connection with this Agreement, that in their capacity as Trustees the terms of this Agreement have been explained to them, that in their capacity as Trustees they have been afforded an adequate opportunity to read and understand this Agreement, and that the terms of the Agreement are fully understood and voluntarily agreed to by SRNT, BIM and PSFT.

6

5.3    Irving Shaffer, Burton Shaffer and Milton Shaffer represent and warrant as Trustees of SRNT and PSFT that this Agreement binds the beneficiaries of SRNT and PSFT, that the beneficiary of SRNT has been afforded an adequate opportunity to read and understand this Agreement, and that the terms of the Agreement are fully understood and voluntarily agreed to by the beneficiary of SRNT.

5.4    Shaffer represents and warrants that Irving Shaffer, Burton Shaffer and Milton Shaffer are duly authorized to execute this Agreement and bind SRNT, BIM and PSFT to the terms hereof, that SRNT, BIM and PSFT are valid and existing entities with the power and authority to enter into this Agreement, that such Agreement need not be approved by judicial authorities or third parties, and that they are not aware of any contingency or condition on the enforceability of this Agreement.

5.5    Shaffer represents and warrants that Irving Shaffer, Milton Shaffer and Burton Shaffer have not made any filings under the United States Bankruptcy Code in the last ninety (90) days; that no privately-held corporation in which any of them holds a position or an ownership interest has made any filings under the United States Bankruptcy Code in the last ninety (90) days; that Irving Shaffer, Milton Shaffer, and such corporations have no plans to make such a filing in the next twelve (12) months; that neither Burton Shaffer nor anyone on his behalf has drafted or created papers for any filing under the United States Bankruptcy Code; and that Burton Shaffer has no current plans to make such a filing in the next ninety (90) days.

5.6    Shaffer represents and warrants that each of them have not violated any of the terms of the Stipulation of Preliminary Injunction.

5.7    Shaffer represents and warrants that they have no plans to institute, solicit, encourage, or induce in any way, any claim, action, cause of action, suit, administrative action or proceeding of any kind which arises out of or in connection with or relates to environmental contaminants at the Shaffer Site or the South Street Site.

5.8    Shaffer represents and warrants that they know of no encumbrances, including mortgages, easements, rights of way, liens, judgments, mechanics' liens, tax liens, security interests, leases, licenses or other rights to or interest in land, whether recorded or unrecorded, with respect to that portion of the Shaffer Site to the west of South Street which is subject under paragraph 1.1 of this Agreement to the Easement attached as Exhibit A and identified therein as consisting of Parcel A and Parcel B ("I&M Easement Area"), other than (a) encumbrances of record on Parcel B prior to and since the recording of the deed from Kendall to BIM dated April 25, 1985, (b) encumbrances of record on Parcel A since the recording of the deed from Shaffer Realty Corp. to SRNT dated December 26, 1986, and (c) Grants of Easement for Sewerage Purposes Taken by and Granted to Town of Walpole, recorded at Book 1951, Page 289 and Book 3220, Page 113.

5.9    Grace represents and warrants that F. Peter Boer is duly authorized to execute this Agreement and bind Grace to the terms hereof, that Grace is a

valid and existing corporation with the power and authority to enter into this Agreement, and that it is not aware of any contingency or condition on the enforceability of this Agreement.

5.10    Grace represents and warrants that this Agreement is the free act and deed of Grace, that Grace has considered or relied upon the advice of personally selected legal counsel in connection with this Agreement, that the terms of this Agreement have been explained to Grace, that Grace has been afforded an adequate opportunity to read and understand this Agreement, and that the terms of the Agreement are fully understood and voluntarily agreed to.

5.11    In connection with the agreement by Shaffer contained in paragraph 1.2 hereof, Grace represents and warrants that the estimated present value cost of the I&M Plan is $70,000.00.

5.12    It is expressly agreed and understood that the Parties hereto are entering into this Agreement in reliance upon the representations and warranties set forth in this section. It is further expressly agreed and understood that any party harmed by the material breach of any such representation and warranty, with the exception of paragraph 5.11 above, may declare the Agreement void, in whole or in part, and/or sue for damages and other relief which a court may award, but only as to that entity or individual who has committed the material breach or material misrepresentation.

6.    Representations and Warranties Concerning Assets.

6.1    Irving Shaffer represents and warrants that the sum of (a) liquid assets owned or controlled by him in his name only, (b) liquid assets owned or controlled by him in the name of his wife Rita or jointly with his wife Rita, and (c) liquid assets owned or controlled by him in the name of any of his children or their wives or children, is less than $200,000.00.

6.2    Milton Shaffer represents and warrants that the sum of (a) liquid assets owned or controlled by him in his name only, (b) liquid assets owned or controlled by him in the name of his wife Ruth or jointly with his wife Ruth, and (c) liquid assets owned or controlled by him in the name of any of his children or their wives or children, is less than $200,000.00.

6.3    Burton Shaffer represents and warrants that the sum of (a) liquid assets owned or controlled by him in his name only, (b) liquid assets owned or controlled by him in the name of his wife Toby or jointly with his wife Toby, and (c) liquid assets owned or controlled by him in the name of any of his children or their wives or children, is less than $300,000.00.

6.4    Shaffer represents and warrants that the liquid assets owned or controlled by SRNT, in its name or in the name of any natural person(s) or jointly, is less than $200,000.00.

6.5    Shaffer represents and warrants that the liquid assets owned or controlled by BIM, in its name or in the name of any natural person(s) or jointly, is less than $200,000.00.

6.6    Shaffer represents and warrants that the liquid assets owned or controlled by PSFT, in its name or in the name of any natural person(s) or jointly, is less than $200,000.00.

6.7    For purposes of this section, the terms "liquid assets" means all cash, checks, moneys on deposit, certificates of deposits, individual retirement accounts, other retirement accounts, shares of stock, bonds, commercial paper, promissory notes unsecured by real property, partnership interests, and any other rights to receive payment in United States dollars, whether matured or not, subject to attachment or execution or not, and whether immediately available or not. The term "liquid assets" shall not include all funds set aside and held as security for the Shaffers' obligations under the final judgment entered in 1984 in Department of Environmental Quality Engineering v. Irving Shaffer, et al. with respect to the Billerica Site.

6.8    For purposes of this section, the term "liquid assets controlled" shall mean liquid assets held in the name of the warranting party's spouse or children where such assets were transferred from the warranting party to the spouse or children and for which such assets the transferee spouse or children are making or have made at least a partial payment thereof to the warranting party.

6.9    To support the representations and warranties in this section, simultaneous herewith Shaffer shall provide to Grace a monthly statement from one (1) of the first four (4) months of 1993 from each of the financial institutions (including banks and brokerage houses) where (a) each of the Shaffer individuals has one or more accounts, (b) each of the wives of the Shaffer individuals has one or more accounts, (c) SRNT has one or more accounts, (d) BIM has one or more accounts, and (e) PSFT has one or more accounts. Grace shall treat such documents as confidential, pursuant to the guidelines set out in paragraph 6.10 hereof.

6.10    It is expressly agreed and understood that Grace is entering into this Agreement in reliance upon the representations and warranties set forth in this section, the veracity and genuineness of the documentation provided pursuant to paragraph 6.9 above, and the statements made under oath by each of the Shaffer individuals at their depositions in the Lawsuit taken on September 7, 1993. It is further expressly agreed and understood that Grace may declare the Agreement void, in whole or in part, and/or sue for damages and other relief which a court may award in the event there has been either a material breach of any such representation and warranty set forth in this section or a material misrepresentation, intentional or otherwise, in connection with the documentation provided under section 6.9 above or in the course of any such deposition, but only as to that entity or individual who has committed the material breach or material misrepresentation.

9

6.11    This section 6, with the exception of its title and this paragraph 6.11, shall be treated as confidential by the parties, and may not be disclosed to anyone other than the parties and their counsel except upon either written consent of all interested parties or an order of an administrative agency or a court with authority to order that such terms be disclosed.

7.    <u>Previous Agreements Between Shaffer and Grace.</u>

7.1    The May 5 Agreement, the May 5 Addendum, the 1992 Access Agreements and the MOU previously entered into between Grace, the individual Shaffers, SRNT and BIM in connection with the Lawsuit shall have no future force and effect and are hereby rendered null and void (except that the MOU shall still be valid as to Kendall). The escrow arrangements contained therein are discharged, and any trust created or arising out of such arrangements is hereby satisfied and removed.

7.2    It is understood and acknowledged that all funds previously paid by Shaffer to Grace under the May 5 Agreement and May 5 Addendum, totalling $10,500.00, have been claimed by Grace pursuant to its rights under the May 5 Addendum. Shaffer agrees that Grace properly exercised its rights to claim such moneys and Shaffer hereby surrenders any rights or entitlement to a refund, reimbursement or return of such funds under any circumstances.

8.    <u>Releases and Reservation of Rights.</u>

8.1    In addition to claims dismissed with prejudice in the Stipulation of Partial Dismissal on Terms, executed herewith, Grace and Shaffer hereby disclaim, waive, release, relinquish, remise and forever discharge each other from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, claims, liabilities and entitlements of every kind and character, now existing and known to the releasing party, in law or in equity, (a) arising from or as a result of compliance with the First EPA Order or the Second EPA Order, including but not limited to any and all rights which the releasing party may have to seek reimbursement, contribution, indemnity or other type of payment from the released party for sums paid or incurred by the releasing party under the MOU, under the First EPA Order or under the Second EPA Order, (b) related to response actions necessary to address asbestos or asbestos-related materials at the South Street Site and any property damage which may have resulted or been suffered from such material, or (c) arising from or as a result of the May 5 Agreement, the May 5 Addendum, the 1992 Access Agreements and the MOU previously entered into between Grace, the individual Shaffers, SRNT and BIM, <u>provided however</u>, that each releasing party does not release the released party from the (i) claims, rights and obligations created or reserved under this Agreement, (ii) claims, rights and obligations for non-asbestos contaminants or materials and/or non-asbestos related conditions at the South Street Site which contaminants, materials or conditions have not been the subject, as of the date of this Agreement, of remediation or cleanup of any sort (not including investigation) or (iii) claims, rights, and obligations related to or arising out of the Soil Pile, other than the costs

10

associated with removing the Soil Pile from the BIM Property and its initial off-site disposal pursuant to section 4, and further provided that Grace does not release Shaffer from claims, rights and obligations for any asbestos or asbestos-related materials at the South Street Site which were not disposed of by Multibestos Company, or the liability of Multibestos Company or its predecessors or successors.

8.2    It is expressly understood and agreed that neither the entering into of this Agreement nor the performance of any acts hereunder shall be construed or deemed to constitute an admission of any liability or fault on the part of any party.

8.3    It is expressly understood and agreed that neither the entering into of this Agreement nor any provision hereof (including, but not limited to, paragraphs 8.1 and 17.1) nor the performance of any acts hereunder shall be construed or deemed to constitute an agreement, arrangement or admission that any party hereto has or will succeed to or assume the liabilities of any other party or non-party, whether in contribution, indemnity or otherwise, whether in connection with the Shaffer Site, the South Street Site, the Billerica Site or elsewhere, except that Grace shall be solely liable for the implementation of the I&M Plan.

8.4    It is expressly understood and agreed that neither the entering into of this Agreement nor any provision hereof (including, but not limited to, paragraphs 8.1 and 17.1) nor the performance of any acts hereunder is intended to release or effect in any way the obligations, responsibilities or rights of any of the Parties to comply with appropriate requests and directives of USEPA, MADEP or other competent government authorities, including but not limited to any demands for payment by USEPA, MADEP or other authorities for oversight or management costs already accrued or accrued in the future. While Grace shall be solely liable for the performance of the I&M Plan, it shall not be liable or responsible for the failure or refusal of Shaffer to comply with appropriate requests and directives of USEPA, MADEP or other competent government authorities, whether related to the I&M Plan or not.

8.5    It is expressly understood and agreed that neither the entering into of this Agreement nor any provision hereof (including, but not limited to, paragraphs 8.1 and 17.1) nor the performance of any acts hereunder is intended to release or effect in any way the rights of any of the parties hereto against third parties, including potentially responsible parties at the Shaffer Site, the South Street Site or elsewhere, or the liabilities of the parties hereto to third parties, including potentially responsible parties at the Shaffer Site, the South Street Site or elsewhere, provided however, that the dismissal of the Lawsuit pursuant to the Stipulation of Partial Dismissal on Terms shall be given its effect as to the third parties who were named in the Lawsuit.

8.6    The parties do not intend by this Section 8 to waive, relinquish or affect in any way claims which may arise or which they may gain knowledge of after the date of this Agreement. Consequently, in determining the applicability of any statutory period of limitation or repose, or any other defense to or element of a claim by any party for

11

past or future harm, injury or damage, whether such period, defense or element is statutory, contractual, judicial, legal or equitable, the fact that the pleadings in the Lawsuit included or referred to future claims, harm, injury or damage shall be disregarded and the mere fact that Grace was given access to certain documents during the Lawsuit and is being given access to documents and other information pursuant to sections 9 and 10 below also shall be disregarded.

8.7    In the event a court determines that this Agreement has an effect, in whole or in part, contrary to paragraphs 8.3 and/or 8.5, at the option of the party which is prejudiced thereby the Agreement shall be void ab initio and annulled, and shall have no force and effect whatsoever.

9.    Access to Documents.

9.1    Shaffer agrees to give access to Grace or its designee, on reasonable terms and conditions, to all files and business records previously or currently maintained, held or controlled by Shaffer, including documents currently in the possession of USEPA. Such files and business records include, but are not limited to, documents generated by entities owned or controlled by Philip Shaffer (including but not limited to Shaffer Paper Fibre, Norfolk Waste Paper Co., Greypond Realty Trust, Greypond Corporation, Shaffer Realty Corp., Middlesex Disposal Service, Inc., P. Shaffer & Co. and Bay State Paper Recycling). Grace will not be given access to the following files and business records: (a) documents which Shaffer has submitted to, or in the future submits to, USEPA or MADEP under a claim of confidentiality, except that Grace may challenge such claim and except that Grace will be given access to such documents (other than financial records and financial documents) if persons other than Shaffer, USEPA or MADEP are given access to such documents; (b) confidential documents which Shaffer created or will create for USEPA or MADEP or which USEPA or MADEP has created or will create for Shaffer; or, (c) attorney-client privileged documents.

9.2    Grace shall have the right to make copies of any files and business records to which it has access pursuant to this section. Grace shall bear all costs and expenses in connection with its review and/or copying of any files and business records.

9.3    Grace agrees that it will provide at least five (5) business days notice to Shaffer of any request to review files and business records, and will be solely responsible for coordinating such review with governmental authorities. Shaffer (or a Shaffer representative) shall have the right to be present at all times during any such file review. In the event Shaffer is unable to be present, Grace shall reschedule such review to reasonably accommodate Shaffer.

10.    Billerica Site - Interviews

10.1    Grace may request, on reasonable terms and conditions, that Irving Shaffer, Burton Shaffer and/or Milton Shaffer provide oral statements to Grace or its

counsel or representatives concerning the Billerica Site. Shaffer may have counsel and/or family members present at such interviews. Such oral statements will be taken confidentially, and Grace may, at its sole option, choose to have the interview transcribed. Neither Grace nor Shaffer shall be permitted or required to provide transcripts of such interviews unless either ordered to do so by a court or administrative agency with the power to make such an order or unless Grace or Shaffer discloses such transcripts on a confidential basis to other potentially responsible parties (or their agents) at the Billerica Site.

10.2    No individual interview shall exceed five (5) hours in length on any day, or ten (10) hours in total length. If new material information comes to the attention of Grace after an interview is concluded, Grace shall have the right to a single additional interview session not to exceed two (2) hours in length.

11.    <u>Future Activities at Shaffer Site</u>.

11.1    The Parties acknowledge that one or more of them may be requested or required by USEPA, MADEP or other government agencies to perform or participate in the performance of additional work to address contamination at the Shaffer Site in the future (the "Additional Work"). The Parties hereby agree to work cooperatively and in good faith should any Party choose to perform such Additional Work, each Party to reserve their legal rights to dispute or challenge with governmental authorities any requests or requirements that such Additional Work be performed.

11.2    In the event that Grace performs or participates in the performance of Additional Work at the Shaffer Site, or otherwise enters upon the Shaffer Site to perform or participate in the performance of work (including work pursuant to government directive or under paragraph 12.2), Shaffer shall grant Grace access to the Shaffer Site for such purposes pursuant to an access agreement containing reasonable terms and conditions. At Grace's option, the terms under which such access is granted shall be those set forth in the form of "Standard Access Agreement" attached as Exhibit E. Grace shall be permitted to record any access agreement which it is furnished.

11.3    In the event Grace is requested or required by USEPA, MADEP or other government agency to perform or participate in the performance of Additional Work on a portion or portion of the Shaffer Site which is leased or controlled by a third party, Shaffer shall obtain the consent and cooperation of such third party to such work. In the event such third party is unwilling or unable to give such consent and cooperation, and if Shaffer would not breach any leases or other agreements with such third party, Shaffer shall join, to the extent of Grace's request, in any efforts undertaken by Grace to obtain such consent and cooperation through judicial or administrative processes.

11.4    In addition to the foregoing, it is expressly understood and agreed that no party shall be requested or required to release any claims which it has or may have against any other party as a condition for obtaining access to the Shaffer Site for the conduct of Additional Work, obtaining the consent and cooperation of third parties at the

Shaffer Site for the conduct of Additional Work or otherwise obtaining the rights and ability to perform or participate in the performance of work at the Shaffer Site.

        12.    <u>Unforeseen Events</u>.

        12.1   The Parties acknowledge that unforeseen events, including but not limited to Acts of God or the acts of third parties, may alter significantly the ground and water topography at the Shaffer Site, the South Street Site or the areas in the vicinity of the South Street Site and threaten the integrity of the work completed under the Canonie Plan or under the I&M Plan. In the event any party is notified by USEPA, MADEP, Town of Walpole, other governmental authorities, or tenant or user at the South Street Site that such events have taken place or are reasonably likely to take place, it shall notify the other Party hereto in accordance with Section 14.4 hereof.

        12.2   Grace shall have the right, but not the obligation, to enter onto the portion of the Shaffer Site to the west of South Street at all times (and, if exigent circumstances are present, with no notice) to take temporary steps sufficient to prevent serious or further harm to the integrity of the work completed or to be completed under the Canonie Plan and/or the I&M Plan.

        12.3   Should an Act of God or act of a third party result in serious harm to the integrity of the work completed or to be completed under the Canonie Plan and/or the I&M Plan, Grace shall have the right, but not the obligation, to restore such work to its original condition (including the right to reconstruct the asbestos cap and replace asbestos-containing materials there) or otherwise address the harm in a manner consistent with requirements of USEPA, MADEP or other government agencies. Shaffer shall furnish access to the Shaffer Site for such purposes on the terms set forth in section 11 above.

        13.    <u>Enforcement</u>.

        13.1   The Parties expressly understand and agree that this Agreement sets out numerous rights and responsibilities which the Parties believe should be strictly adhered to, that money damages for the breach of this Agreement will not make the Parties whole or accomplish the objectives of this Agreement, and that irreparable injury would occur in the event the Agreement was breached. Consequently, for these reasons and others, it is agreed that this Agreement shall be enforceable in court through the mechanism of injunctive and equitable relief and shall be specifically enforceable, in addition to any other remedy which a party may be entitled to at law or in equity.

        13.2   All actions which arise under this Agreement shall be brought in the United States District Court for the District of Massachusetts. If that Court lacks subject matter jurisdiction over the dispute, such actions shall be brought in the Superior Court for Norfolk County, Massachusetts. If that Court lacks subject matter jurisdiction over the dispute, such actions shall be brought in the District Court for the Town of Walpole. All

Parties consent to the venue and jurisdiction of those courts and waive any objection to the inconvenience of those forums for such actions.

      14.   <u>Miscellaneous Provisions.</u>

      14.1   This Agreement is a Massachusetts contract and shall be construed and interpreted in accordance with its laws, except where the context requires reference to the laws of the United States.

      14.2   This Agreement contains the entire agreement between the Parties on the subjects and matters set forth in it. It is the product of full negotiation and consideration by all Parties, and it shall not be construed against the drafter of any particular part.

      14.3   This Agreement may be executed in separate counterparts, and once executed shall be binding upon the Parties.

      14.4   Any notice which is required or permitted to be given to any party shall be furnished by United States mail, except as otherwise provided, and directed as follows:

To Shaffer:

      c/o Irving Shaffer
      101 Water Way
      Mashpee, MA

      c/o Milton Shaffer
      675 N.W. 31st Ave.
      Del Rey Beach, FL

      c/o Burton Shaffer
      73 Russell Road
      Framingham, MA

      c/o Solomon Feldman, Esq.
      One Boston Place
      26th Floor
      Boston, MA 02108

To Grace:

> c/o Louis E. Ingram
> Manager
> Remediation Management Department
> W.R. Grace & Co.
> 100 North Main Bldg., #1700
> Memphis, TN 38103
>
> c/o Paul Nightingale, Esq.
> Goodwin, Procter & Hoar
> Exchange Place
> Boston, MA 02109

No party shall be held liable for consequences, damages or losses arising from the failure of another Party to receive a notice if such latter Party has failed to inform the former Party of changes of address or of legal representation.

14.5   No delay or omission by any party in enforcing any of the terms and conditions of this Agreement shall be construed as a waiver thereof, and no waiver of any breach hereunder shall be construed or determined to be a waiver of any other or subsequent breach.

14.6   In the event that any provision of this Agreement is unenforceable or invalid under law, then such provisions shall be reformed in order to conform with such law in a manner most consistent with the manifest purpose of the provision and to effectuate the intent of the Parties.  If such provision cannot be reformed, then such provision shall be ineffective only to the extent of such infirmity, and the balance of this Agreement shall continue to be binding and in full force and effect.  This paragraph shall not be deemed to modify or override the effect of paragraph 8.7.

14.7   Any modification of this Agreement shall be evidenced in a writing signed by the Parties.

14.8   In all cases where one party is requested or required to execute documents necessary to carry out this Agreement, such documents shall be executed as expeditiously as practicable and in no event later than thirty (30) days after the request or requirement is made.

14.9   In the event any payment made to Grace hereunder or any right, claim or interest of Grace hereunder is subsequently invalidated, voided or avoided, declared fraudulent or preferential, set aside or required to be repaid (any such events being hereinafter referred to in this paragraph as an "Avoidance Event"), then in addition to any other rights or remedies Grace may have, the releases of Shaffer contained in section 8 hereof shall be null and void ab initio and annulled and shall have no force and effect,

16

provided however, as to any person or entity constituting a Shaffer, the release of such Shaffer shall remain in effect if such Shaffer does not take any action to cause, or in support of, such Avoidance Event, actively opposes at Grace's request such Avoidance Event, and fully cooperates with Grace in opposing such Avoidance Event.

15.    Parties Bound.

15.1    Each and every obligation of Shaffer under this Agreement shall be the joint and several obligation of Irving Shaffer, Milton Shaffer, Burton Shaffer, SRNT, BIM and PSFT, except as limited by paragraphs 5.12 and 6.10.

15.2    This Agreement shall be binding upon, inure to the benefit of and be enforceable by each Party hereto, and their respective successors, heirs, assigns, beneficiaries, lessees, sublessees and agents, including, but not limited to, the successors-in-title to SRNT and BIM to all or a portion of the Shaffer Site.

15.3    Shaffer shall take all reasonably necessary steps to secure the consent and approval to the terms of this Agreement of any purchaser, tenant, mortgagee or other person or entity who may acquire an interest in all or a portion of the Shaffer Site. Such consent and approval shall be obtained in writing, and provided to Grace prior to the time such person or entity acquires such interest. If such consent and approval cannot be obtained, Grace shall be notified of that situation at least twenty-one (21) days prior to the date such person or entity plans to acquire such interest. This requirement shall be in addition to notification requirements pursuant to the Restriction (Exhibit D).

15.4    Simultaneous herewith, Irving Shaffer, Milton Shaffer and Burton Shaffer are executing Trustees Certificates in the forms attached hereto as Exhibit F. Grace may record such Trustees Certificates at its option, or use same for all lawful purposes.

16.    Closing.

16.1    The closing of this Agreement shall take place at the offices of Goodwin, Procter & Hoar at 3:00 p.m. on November 18, 1993, or at such other time as the parties may agree. Parties hereto must be in attendance at the closing, or their signatures to this Agreement must be procured in advance and produced at the closing.

16.2    At the closing, Shaffer will provide to Grace information sufficient to show the form and content of all agreements, contracts, arrangements or settlements, if any, with Kendall and/or LG.

17

17.    Covenant Not to Initiate Certain Types of Litigation or Proceedings

       17.1    Shaffer agrees to refrain, forebear and abstain from instituting, soliciting, encouraging, or inducing in any way, any claim, action, cause of action, suit, administrative action or proceeding of any kind, including, without limitation, any federal, state or other governmental proceeding of any kind, which arises out of or in connection with or which relates to asbestos or asbestos-related materials at the Shaffer Site or the South Street Site (hereinafter collectively referred to as an "Asbestos-Related Cause of Action"), including claims in contract, tort or otherwise against Kendall, LG and/or Town of Walpole; provided, however, that in the event an Asbestos-Related Cause of Action is brought against Shaffer, then Shaffer may bring such Asbestos-Related Causes of Action in responsive pleadings or similar administrative filings as it is permitted pursuant to relevant rules of court or administrative rules.

       17.2    For breach of Shaffer's agreement contained in paragraph 17.1 above, Shaffer stipulates and agrees that it will indemnify and hold Grace harmless from all damages, liabilities, losses and reasonable expenses, including attorney's fees, paid or sustained by Grace in the event Grace becomes a party to such Asbestos-Related Cause of Action, and that in the event of such breach or its failure to so indemnify Grace, Grace's release of Shaffer under section 8 shall be rendered null and void.

18.    Encumbrances.

       18.1    There exists as of the closing an encumbrance on the BIM Property, a certain Mortgage granted to Shaffer Realty Corp. by Burton Shaffer, Irving Shaffer and Milton Shaffer, Trustees of B.I.M. Investment Trust u/d/t dated February 28, 1966 to secure repayment of $300,000.00, recorded at Book 6654, Page 437 ("SRC Mortgage"). The parties agree that the SRC Mortgage should be discharged or satisfied, but that the Agreement can and should be effective as of the closing hereof, except as set forth herein and in paragraph 18.3. Consequently, within ten (10) business days hereof, Shaffer will commence and prosecute diligently such steps as are necessary to obtain a discharge or satisfaction of the SRC Mortgage, including reviving Shaffer Realty Corp. for purposes of discharging the SRC Mortgage, taking corporate votes and actions to discharge the SRC Mortgage, and delivering to Grace as soon as practicable documentation acceptable to Grace to achieve a valid discharge of the SRC Mortgage. Shaffer and Grace shall cooperate with each other in connection with efforts to obtain all necessary governmental and corporate approvals  to secure the discharge or satisfaction of the SRC Mortgage.

       18.2    Within forty-five (45) business days hereof, or as soon thereafter as possible, Grace will complete a title abstract and otherwise take reasonable efforts to identify encumbrances with respect to the I&M Easement Area, as defined in paragraph 5.8, and supply to Shaffer Exhibit E to Exhibit A of this Agreement. Pending that submission, the Agreement shall be effective, subject to this condition subsequent and paragraph 18.3.

18

18.3    In the event Grace deems, in its judgment exercised in good faith and within five (5) business days of supplying Exhibit E of Exhibit A to Shaffer, that one or more encumbrances which exist with respect to the I&M Easement Area will or might unreasonably restrict or interfere with the rights created in this Agreement, including but not limited to the Grant of Easement (Exhibit A), Grace's Draft Use Restriction (Exhibit B) and the Access Agreement (Exhibit E), the Agreement is voidable at Grace's option. Notwithstanding the foregoing, the discharge or satisfaction of the SRC Mortgage within sixty (60) days is hereby made a material condition subsequent which must be met, or the Agreement is voidable at Grace's option.

18.4    Pending the expiration of Grace's options in paragraph 18.3 to declare the Agreement void , the parties shall perform this Agreement, except that all stipulations of dismissal to be filed pursuant to paragraphs 3.3 and 3.5 shall be held by Grace's counsel, in escrow.

Executed as an instrument under seal.

MILTON SHAFFER
IRVING SHAFFER
BURTON SHAFFER
SHAFFER REALTY NOMINEE TRUST
BIM INVESTMENT TRUST
PHILIP SHAFER FAMILY TRUST

By,

_____
Milton Shaffer, individually,
as Trustee of Shaffer Realty Nominee Trust
as Trustee of BIM Investment Trust and
as Trustee of Philip Shaffer Family Trust

_____
Irving Shaffer, individually,
as Trustee of Shaffer Realty Nominee Trust
as Trustee of BIM Investment Trust and
as Trustee of Philip Shaffer Family Trust

_____
Burton Shaffer, individually,
as Trustee of Shaffer Realty Nominee Trust
as Trustee of BIM Investment Trust and
as Trustee of Philip Shaffer Family Trust

19

COMMONWEALTH OF MASSACHUSETTS

_Suffolk_, ss.                              12/3, 1993

Then personally appeared the above-named Milton Shaffer and acknowledged the foregoing to be his free act and deed, and the free act and deed of Shaffer Realty Nominee Trust, of BIM Investment Trust and of Philip Shaffer Family Trust as aforesaid before me,

Carol McIntyre
Notary Public

My commission expires: 10/5/95

COMMONWEALTH OF MASSACHUSETTS

_Suffolk_, ss.                              12/3, 1993

Then personally appeared the above-named Irving Shaffer and acknowledged the foregoing to be his free act and deed, and the free act and deed of Shaffer Realty Nominee Trust, of BIM Investment Trust and of Philip Shaffer Family Trust as aforesaid before me,

Carol McIntyre
Notary Public

My commission expires: 10/5/95

20

COMMONWEALTH OF MASSACHUSETTS

*Suffolk*, ss.                                    *12/3*, 1993

Then personally appeared the above-named Burton Shaffer and acknowledged the foregoing to be his free act and deed, and the free act and deed of Shaffer Realty Nominee Trust, of BIM Investment Trust and of Philip Shaffer Family Trust as aforesaid before me,

*Carol McIntyre*
Notary Public

My commission expires: *10/5/95*

W.R. GRACE & CO.

By _____
        Duly Authorized

STATE OF FLORIDA

Palm Beach County, ss.

_____, 1993

Then personally appeared the above-named F. Peter Boer and acknowledged the foregoing to be his free act and deed, as Executive of W. R. Grace & Co. as aforesaid before me, Vice President and Chief Technical Officer

_____
Notary Public

My commission expires:

DEBRA L. ALTO
MY COMMISSION # CC 240054
EXPIRES: November 2, 1996
Bonded Thru Notary Public Underwriters

21

<u>List of Exhibits</u>

Exhibit A            Grant of Easement

Exhibit B            Notification and Grant of Use Restrictions and Easement

Exhibit C            Stipulation of Partial Dismissal on Terms

Exhibit D            Restriction

Exhibit E            Access Agreement

Exhibit F            Trustees Certificates

                        F1.    Shaffer Realty Nominee Trust
                        F2.    B.I.M. Investment Trust
                        F3.    Philip Shaffer Family Trust

22