<u>EXHIBIT C</u>

*Smolker* v. *Pacific Villas Homeowners Ass'n., et al.,* **2007 Cal. App. Unpub. LEXIS 2155, 2007 WL 809683 (Cal. App. 2d Dist. Mar. 19, 2007)**

45809

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GARY SMOLKER, | B138229 |
| Defendant and Appellant, | (Los Angeles County Super. Ct. No. BC173952) |
| v. | |
| PACIFIC VILLAS HOMEOWNERS ASSOCIATION et al., | COURT OF APPEAL - SECOND DIST.<br>**FILED**<br>MAR 19 2007<br>JOSEPH A. LANE    Clerk<br>_____ Deputy Clerk |
| Cross-Defendants and Respondents. | |

APPEAL from judgment and orders of the Superior Court of Los Angeles County, Dzintra Janavs and Richard Fruin, Judges. Affirmed except as to Frontier Pacific Insurance Company.[1]

Law Offices of Gary S. Smolker and Gary S. Smolker for Defendant, Cross-Complainant and Appellant Gary S. Smolker.

Grey & Grey and David M. Grey for Cross-Defendant, Respondent and Appellant Pacific Villas Homeowners Association.

---

[1] Appeal is stayed as to Frontier Pacific Insurance Company, whose liquidation is pending. (*Insurance Commissioner of the State of California v. Frontier Pacific Insurance Co.* (Super. Ct. S.D. County, Nov. 30, 2001 Liquidation Order, No. GIC774028).

Finestone & Richter and John J. Waller, Jr., for Cross-Defendant and Respondent Joseph Bailey.

Gilbert Kelly Crowley & Jennett, Peter J. Godfrey and Jeanne S. Kuo for Cross-Defendants and Respondents Virginia Cipriano and Matthew J. Fredericks.

Gibbs Giden Locher & Turner, Michael B. Geibel and Victor F. Luke for Cross-Defendants and Respondents James Holland and Julie Holland.

Proctor, McCarthy & Slaughter, William M. Slaughter and Gabriele Mezger-Lashly for Cross-Defendants and Respondents Lance Robbins, Gerald Ivory and Angela Verdun.

Borton, Petrini & Conron, Rosemarie S. Lewis and Eric J. Troutman for Cross-Defendants and Respondents James Hyde and Albert J. Costello.

Pollak Vida & Fisher, Michael M. Pollak, Daniel Barer and Matthew H. Fisher for Cross-Defendant and Respondent Allstate Insurance Company.

Gordon & Rees, Michael T. Lucey, Kelly J. Savage and Sara M. Thorpe for Cross-Defendants and Respondents Farmers Insurance Group of Companies, Farmers Group, Inc., and Truck Underwriters Association.

Dunn Koes, Daniel J. Koes and Pamela E. Dunn for Cross-Defendant and Respondent State Farm Fire and Casualty Company.

No appearance for Cross-Defendant and respondent Frontier Pacific Insurance Company.

---

In this decade-long case, a homeowner cross-complained for bodily injury and property damage relating to termite extermination and other home repairs in his condominium complex. Cross-defendants are the homeowners association, fellow condominium unit owners, their insurers, and executives of the business manufacturing the pesticide. In an earlier appeal, this court affirmed the sustaining of demurrers by certain cross-defendants to the cross-complaint without leave to amend. The homeowner now appeals the trial court's sustaining of demurrers to the second and fifth amended cross-complaints, grant of summary judgment, and denial of his motion to tax costs. The homeowners association appeals the trial court's denial of its motion for attorneys' fees. The insurer for the homeowners association additionally moves for sanctions. We stay the appeal as to one of the insurers, whose liquidation is pending, and otherwise affirm the judgment and orders.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    FACTS[2]

Cross-complainant and appellant Gary Smolker and Alice Graham[3] (the Smolkers) own a condominium unit in Pacific Villas, a six-unit condominium complex located at 15 63rd Avenue in Playa del Rey. The property consists of a multi-story building with a

---

[2]    "Each brief must [¶] . . . support any reference to a matter in the record by a citation to the record." (Cal. Rules of Court, rule 8.204(a)(1)(C).) In violation of that rule, the appellant's opening brief shows serious deficiency in his statement of the facts, which set forth pages of factual material without a single citation to the record. "It is not the task of the reviewing court to search the record for evidence that supports the party's statement; it is for the party to cite the court to those references. Upon the party's failure to do so, the appellate court need not consider or may disregard the matter. [Citations.]" (*Regents of the Univ. of Cal. v. Shelley* (2004) 122 Cal.App.4th 824, 827, fn. 1.)

[3]    Alice Graham, formerly Alice Smolker, has dismissed her cross-complaint and appeal as to all parties in this action.

common hallway, which provides the only access from each unit to the front door and mailboxes.

All unit owners [4] own undivided equal interests in the common areas of the condominium complex. The unit owners delegate control and management of the common areas to Pacific Villas Homeowners Association (PVHOA), a non-profit unincorporated association comprised of all homeowners in the complex. Each condominium unit is represented in PVHOA by one vote cast by its owner or owners. The units' owners are required to pay assessments used to fund maintenance and repairs of the common areas and the operating expenses of PVHOA. As provided under the association's Conditions, Covenants and Restrictions (CC&R's) and its Bylaws, an elected board of volunteers directs PVHOA.

### A.    The Termite Extermination

In 1996, Pacific Villas required certain repairs, including termite extermination. Graham, PVHOA's treasurer at the time, communicated with, obtained a brochure from, presented information on, and cast a vote for the Smolkers' unit in favor of retaining the services of Home Saving Termite Control (Termite Control). PVHOA duly authorized the hiring of Termite Control to treat the complex for termite infestation using amorphous silica aerogel, [5] a pesticide dust used to dehydrate and permanently eradicate termites.

---

[4]    The Smolkers own unit 4. Cross-defendants and respondents Matthew Fredericks and Virginia Cipriano own unit 1; cross-defendants and respondents Gerald Ivory and Angela Jordan Verdun own unit 2; cross-defendant and respondent Joseph A. Bailey owns unit 3; cross-defendant and respondent Lance Robbins owns unit 5; and, until December 1997, Carol Kay owned, and with her husband Samuel Eskenazi resided in, and now cross-defendants and respondents James and Julie Holland own unit 6.

[5]    The United States Food and Drug Administration (FDA) defines "[s]ilica aerogel as a finely powdered microcellular silica foam having a minimum silica content of 89.5 percent. [¶] ... [¶] ...This substance is generally recognized as safe when used as a component of an anti-foaming agent in accordance with good manufacturing practice." (21 C.F.R. § 182.1711 (2007); 42 Fed.Reg.14640 (March 15, 1977).) The United States Environmental Protection Agency (EPA) lists silica aerogel among the pesticide chemicals "exempted from the requirement of a tolerance when used in accordance with

In October 1996, Termite Control carried out the extermination to the condominium complex by injecting Syloid 244 dust through drilled holes in the common area, garage, and walls of the units. Manufactured by W. Grace & Company and Grace Davison (collectively Grace), Syloid 244 is a trade name for silica aerogel. During the course of the extermination and in the subsequent remodel of his kitchen, Fredericks, president of PVHOA, observed the pesticide dust escape into units through some unsealed drill holes, phone jacks, light sockets, cracks, electrical outlets, and settle in the electrical box and dumb waiter. Fredericks arranged for Termite Control and a handyman to repair any unsealed holes.

Within a few months, in late 1996 or early 1997, Smolker complained to PVHOA that he, Graham and their children suffered adverse health effects which they attributed to the pesticide, including dry mouths, lips and skin, sore throats, and headaches[6] Smolker also informed PVHOA that, in December 1996, the Los Angeles County Agricultural Commissioner issued a violation notice to Termite Control to cease and desist from using Syloid 244 on all job sites, because the pesticide was an "unregistered economic poison." Fredericks, president of PVHOA, conveyed Smolker's complaint to Termite Control. Termite Control conceded that although Syloid 244 did not have a registered trade name, it was "100% amorphous silica gel" and "pose[d] no health or environmental hazard." Termite Control announced it would henceforth use silica gel under another registered trade name. According to Termite Control, among the thousands of extermination jobs it

---

[6] In 1997, otorhinolaryngologist Eugene Freed, M.D., diagnosed Smolker, who was otherwise healthy, with irritation by chemicals encountered in his condominium from the termite treatment, and prescribed a course of potassium iodide drops. In 1998, dermatologist Letantia Bussell, M.D., assessed Smolker with "contact dermatitis by history—possibly secondary to pest repellant" and prescribed Cordran lotion. In 1998, toxicologist Nachman Brautbar, M.D., concluded that Smolker had airway hyperactivity to chemicals. Although Dr. Brautbar believed Smolker's dry skin was likely due to exposure to the silica gel, he was unable to ascertain whether Smolker's airway hyperactivity and dizziness arose from exposure to cleaning solutions and smoke at his office building or to the pesticide at his condominium unit.

conducted in Southern California, Smolker was only the second known individual to have claimed health problems from such exposure.

In 1997, following an emergency meeting of PVHOA to discuss Smolker's concerns, Fredericks contacted the chief inspector for the Los Angeles County Fire Department's Hazardous Materials Section for an investigation. Thereafter, an industrial hygienist with the Los Angeles County Health Department conducted a visual inspection of the premises and concluded there was no reason for any health concerns with respect to the way the pesticide was applied. The hygienist advised Fredericks that "you would have to breath[e] in a cloud of the product before it would bother you." The Health Department further declined to authorize testing of the exposure levels, finding it "totally unnecessary." Fredericks then attempted to obtain private testing of the pesticide. AAA Superior Air Systems responded and collected the dust samples, but ultimately declined to test the material because of interference by Smolker and fear that he would sue the business.

Throughout 1997, Smolker demanded that PVHOA, the other condominium owners, Termite Control, Grace, Grace Davison, all their respective insurance carriers and the Smokers' own insurance carriers pay for the following: tearing down his interior walls; sealing the pesticide in the walls; installing and painting new interior walls; removing the air handling equipment; providing and operating a filtering system to remove any pesticide dust in their unit while the Smolkers lived elsewhere; and removing and replacing all personal property exposed to the pesticide dust, including all carpeting, soft furniture and children's soft toys.

B.    *The Roof Repair*

At the 1999 PVHOA annual meeting, the members in attendance discussed the need to re-roof the building. PVHOA voted to assess each unit to fund replacement of the roof.

In April 1999, Smolker alerted PVHOA and his fellow condominium owners that the roof was leaking from the common area into his unit. Fredericks advised Smolker to repair the leak. Smolker retained A-1 Roofing, which recommended a new roof.

In April 1999, Smolker alerted PVHOA and his fellow condominium owners that the roof was leaking from the common area into his unit. Fredericks advised Smolker to repair the leak. Smolker retained A-1 Roofing, which recommended a new roof. Meanwhile, A-1 Roofing patched a portion of the roof directly over the Smolkers' unit. Smolker submitted the $500 invoice for his roof repair to PVHOA, which deducted the cost from his dues payment so that Smolker would not have to pay for a common area repair.

C.    *The Pipe Repair and Mold Abatement*

In March 1999, water from a broken pipe leaked onto the carpet in the southern portion of the common area hallway near the Hollands' unit. Smolker's unit is located at the northern end of the common hallway and separated from the site of the leak by a fire door. PVHOA obtained the services of a plumber to repair the leak and submitted the claim to its insurance carrier, Truck Insurance Exchange (Truck) of TIG Insurance Company (TIG).

In October 1999, Truck notified PVHOA that mold was present in the common area hallway in the vicinity of the leak. Truck settled the claim by paying $2,572.79, which was deposited into PVHOA's account in November 1999.

In February 2000, PVHOA contacted Alliance Environmental, an asbestos and mold remediation contractor, to abate the mold in the common area hallway. In March 2000, Alliance Environmental sealed off the hallway, scraped the ceiling, removed the carpet, and cut away the dry wall one foot up from the floor around the perimeter of the hallway. Afterwards, industrial hygienist Enrioncheck, Inc. cleared Pacific Villas for occupancy based on acceptable findings on tape-lift and air samples. By July 2000, the common area hallway was restored with new carpet, drywall and a new coat of paint.

II.    PROCEDURE

In July 1997, TIG filed a declaratory relief action in connection with its denial of coverage for Smolker's claims under his insurance policies issued by TIG.

In October 1997, Smolker filed a cross-complaint against Termite Control and other parties for negligence and strict liability. In November 1997, Smolker filed a first

to all causes of action. In November 1999, the court entered orders of dismissal. We affirmed on appeal.[7]

A.    *Demurrers Sustained Without Leave to Amend to the Second Amended Complaint*

On November 8, 1999, with respect to the second amended cross-complaint,[8] the court sustained without leave to amend the demurrers of cross-defendants Albert J. Castello and James R. Hyde, corporate executives of Grace, to the eighth cause of action for fraud and interference. The court ordered Smolker to no longer name Castello and Hyde in subsequent cross-complaints.

B.    *Demurrer Sustained Without Leave to Amend to the Fifth Amended Cross-Complaint*

After several rounds of demurrers and grants of leave to amend, Smolker filed his fifth amended cross-complaint for equitable relief and damages alleging 31 causes of action.[9]

---

[7]    *TIG Insurance Co. v. Smolker* (Dec. 12, 2000, B124969) [nonpub. opn.] at p. 15. Resolution of this case has been lengthy due to stays for various reasons, including bankruptcy proceedings and appeals in consolidated matters.

[8]    Smolker failed to designate the second amended cross-complaint as part of the clerk's transcript on his record on appeal. (Cal. Rules of Court, rule 8.120(a)(5).)

[9]    1) Breach of contract against Allstate Insurance Company (Allstate), the insurance carrier for Kay and Eskenazi; 2) breach of duty of good faith and fair dealing against Allstate; 3) breach of contract against State Farm Insurance (State Farm), the insurance carrier for the Hollands and Robbins; 4) breach of duty of good faith and fair dealing against State Farm; 5) breach of contract against the Auto Club, the insurance carrier for the Smolkers; 6) breach of good faith and fair dealing against the Auto Club; 7) breach of contract and breach of the covenant of good faith and fair dealing against Texas Auto Policy and Nationwide Auto Policy, the auto insurance carriers for the Smolkers; 8) strict liability against Grace, Termite Control and W.F. Morris, the alter ego of Termite Control; 9) negligence against Grace; 10) negligence against Termite Control, Morris and Rikk Thompson, the pesticide expert for Termite Control; 11) negligence against PVHOA, the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, and Cipriano; 12) nuisance and maintenance of a nuisance against PVHOA, the Hollands, Robbins,

On November 4, 1999, finding no basis for personal liability by Smolkers' fellow condominium unit owners in the common areas, the court sustained without leave to amend demurrers by Kay, Cipriano, Bailey, the Hollands, Robbins and Fredericks on all causes of action applicable to them, including: negligence (11th cause of action); nuisance (12th cause of action); abatement of nuisance (13th cause of action); trespass (14th cause of action); assault and battery (15th cause of action); wrongful eviction and waste (16th cause of action); and contribution and lien (17th cause of action). The court dismissed all the fellow condominium unit owners from the lawsuit and denied their motions to strike as moot.

---

Smolkers; 8) strict liability against Grace, Termite Control and W.F. Morris, the alter ego of Termite Control; 9) negligence against Grace; 10) negligence against Termite Control, Morris and Rikk Thompson, the pesticide expert for Termite Control; 11) negligence against PVHOA, the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, and Cipriano; 12) nuisance and maintenance of a nuisance against PVHOA, the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, and Cipriano; 13) abatement of nuisance against PVHOA, the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, Cipriano, Termite Control, Morris, Grace and Grace Davison; 14) trespass against PVHOA, the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, Cipriano, Termite Control, Morris, and Grace; 15) assault and battery against PVHOA, the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, Cipriano, Termite Control, Morris, and Grace; 16) wrongful eviction and waste against the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks and Cipriano; 17) contribution and imposition of lien/foreclosure against the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks and Cipriano; 18) negligence against Coregis Insurance Company (CIC) and California Insurance Company (Cainco), Termite Control's liability carrier, Truck, Farmers Group of Insurance and Farmer's Insurance Group (collectively Farmers); 19) negligence against TIG; 20) negligence against Reliance Insurance (Reliance); 21) negligence against Frontier Pacific Insurance Company (Frontier); 22) breach of contract against Cainco,; 23) breach of duty of good faith and fair dealing against Cainco; 24) breach of contract against Truck; 25) breach of duty of good faith and fair dealing against Truck; 26) breach of contract against TIG; 27) breach of duty of good faith and fair dealing against Cainco; 28) breach of contract against Frontier; 29) breach of contract against Reliance; 30) fraud against Morris, Termite Control, Grace, Truck, TIG, CIC and Cainco; and 31) interference against Morris, Termite Control, Cainco, CIC, Truck, Farmers, and Grace.

9

In view of Holland's dismissal as the insured and finding no basis for a third party claim under the terms of the policy, the court likewise sustained without leave to amend State Farm's demurrers to breach of contract (third cause of action) and breach of duty of good faith and fair dealing (second cause of action).

The court further sustained without leave to amend TIG's, Farmers', Truck's, and CIC's demurrers to negligence (18th cause of action), fraud (30th cause of action), and interference with contractual or economic relations (31st cause of action).

The court also sustained without leave to amend the 21st and 28th causes of action for negligence and breach of contract against Frontier and dismissed it from the action.

Finally, the court sustained Grace's demurrer to the 31st cause of action for interference with contractual or economic relationship without leave to amend.

On January 5, 2000, the court deemed Ivory and Verdum to have joined the demurrer of Lance Robbins and sustained the demurrer without leave to amend as to them.

### C.  Grant of Summary Judgment as to PVHOA

Smolker's specific causes of action pleaded in his fifth amended cross-complaint against PVHOA included: negligence (11th cause of action); nuisance and maintenance of nuisance (12th cause of action); abatement of nuisance (13th cause of action); trespass (14th cause of action); assault and battery (15th cause of action); and wrongful eviction and waste (16th cause of action). In December 2000, the court granted summary judgment in favor of PVHOA. It found Smolker pleaded no triable issues of fact sufficient to defeat the rule of deference to the decisions of a homeowners association under *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249 (*Lamden*).

### D.  Denial of Smolker's Motion to Tax Costs

After prevailing on the summary judgment motion, the PVHOA sought $14,983.95 in litigation costs, including expenses incurred for deposition transcripts and travel. In April 2001, Smolker moved to strike or tax the cost bill; the court denied the motion. However, taking account of the costs paid for a subpoena and the recoverable

costs under Government Code section 68093, the court reduced the total costs by $265 to $14,718.95.

     *E.    Denial of PVHOA's Post-Judgment Motion for Attorney's Fees*

In April 2001, PVHOA moved to recover $71,865 in attorney's fees. The court denied the motion because neither Civil Code section 1354, subdivision (f), nor section 2033 applied. As to the former, the Smolkers were not challenging the CC&R's; and as to the latter, PVHOA had not asked the Smolkers to admit facts, but rather to concede their claims.

     *F.    Notices of Appeal*

Smolker appeals from:  1) the February 5, 2001 judgment for PVHOA and denial of Smolkers' motion for relief from the judgment; 2) the April 5, 2001 order denying Smolker's motion to tax costs; 3) the January 1, 2000 order dismissing cross-defendants Verdun and Ivory; and 4) the November 4 and 5, 1999 orders sustaining the demurrers of cross-defendants Kay, Cipriano, Bailey, the Hollands, Robbins, Fredericks, Costello, Hyde, Allstate, Farmers, Truck and State Farm.

PVHOA appeals from the court's April 10, 2001 order denying its post-judgment motion for attorney's fees.

     *G.    Motion for Sanctions on Appeal*

Farmers and Truck move for sanctions on the ground the appeal is frivolous and taken solely for delay.

## DISCUSSION

*I.    THE COURT PROPERLY GRANTED SUMMARY JUDGMENT*

The Supreme Court established the standard of review for an order granting summary judgment. "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.]  We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court

11

properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855; *Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1363-1364.)

PVHOA's motion for summary judgment was supported by evidence taken from Termite Control's earlier motion for summary judgment, and the declarations of Fredericks and Holland, which dispute Graham's claim that she was uninvolved in the selection and approval of the exterminator. Moreover, the declarations show good faith attempts by Fredericks, president of PVHOA, to monitor the two-day extermination, hold meetings, keep the owners apprised of developments, seek out inspectors and an industrial hygienist, and make repairs to contain any potential escape of the silica gel and mold into the units and common areas.

The Smolkers did not comply with Code of Civil Procedure section 437c, subdivision (b), as they failed to submit in opposition a separate statement of disputed facts. Therefore, they did not meet their burden to show the existence of a triable issue of material fact as to whether PVHOA failed to exercise good faith effort in enforcing the CC&R's.

Contrary to Smolker's contention that he and Graham were not afforded due process or adequate time to respond, the court allowed the Smolkers to file their oppositions on five occasions between October and December 2000. The court overruled PVHOA's objections to the Smolkers' declarations and exhibits, except where the material constituted unauthenticated or second-hand opinion. Although the court allowed the Smolkers to present articles concerning silica gel, it properly refused to consider them to the extent they contained hearsay and opinion for which no foundation was laid.

Moreover, Civil Code section 1364, subdivision (a), makes the association responsible for maintaining and making repairs to common areas and specifies that the individual home owner is responsible for maintaining exclusive use common areas. In *Lamden, supra,* 21 Cal.4th at p. 265, our Supreme Court held that "where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise." The plaintiff in *Lamden* brought an action for an injunction and declaratory relief against the homeowners association based on the association's decision to spot treat for termites rather than fumigate entire units. The *Lamden* court relied on its previous decision in *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361 (*Nahrstedt*), requiring judicial deference to good faith efforts of the boards and enforcement of CC&R's that are not wholly arbitrary. (*Id.* at p. 382.) The court in *Lamden* stressed that its ruling did not immunize the boards from unreasonable actions taken without good faith. (*Lamden, supra,* at pp. 269-270.)

Here, the PVHOA CC&R's and Bylaws provide that the Board of Directors have the duty and power to maintain and otherwise manage all of the common areas and facilities at Pacific Villas. The evidence in the record before the trial court showed the board acted in good faith by holding meetings for all unit owners to consider plans for the termite extermination, roof repair, water damage and mold abatement.

The court properly granted summary judgment and denied the Smolker's motion for relief from the judgment.

## II.    THE COURT PROPERLY SUSTAINED THE DEMURRERS

On appeal from an order dismissing a complaint after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989,

998.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Aubry, supra,* at p. 967.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120.)

> A.      *The Court Properly Found Smolker Failed to State a Cause of Action Against the Condominium Unit Owners*

Smolker's fifth amended complaint pleaded negligence, nuisance and maintenance, abatement of nuisance, trespass, assault and battery, wrongful eviction and waste, and contribution and imposition of lien/foreclosure against the Hollands, Robbins, Bailey, Verdun, Ivory, Fredericks, and Cipriano (collectively unit owners).

Civil Code section 1365.9, subdivision (b), provides: "Any cause of action in tort against any owner of a separate interest arising solely by reason of an ownership interest as a tenant in common in the common area of a common interest development shall be brought only against the association and not against the individual owners of the separate interests . . . if both of the insurance requirements in paragraphs (1) and (2) are met: [¶] (1) The association maintained and has in effect for this cause of action, one or more policies of insurance which include coverage for general liability of the association. [¶] (2) The coverage described in paragraph (1) is in the following minimum amounts: [¶] (A) At least two million dollars ($2,000,000) if the common interest development consists of 100 or fewer separate interests. . . ."

The fifth amended complaint alleges that PVHOA is a six-unit condominium complex and that it has continuously purchased insurance as part of a commercial property and liability coverage from Truck since 1986 under policy number 09387-08-30. Smolker does not dispute that the commercial property and liability coverage meets the statutory minimum; as a result, the unit owners cannot be liable for the tort claims—negligence, nuisance and maintenance, abatement of nuisance, trespass, assault and battery. Moreover, as discussed *supra,* individual condominium owners also bear no

14

liability when the alleged damage is caused by the common areas over which the homeowners association has full control. (Civ. Code, § 1364.)

As for the wrongful eviction and waste claim, the cause of action contains no factual allegations. The claim cross-references other paragraphs whose only potentially relevant allegations address the application of pesticides in the common area controlled by PVHOA, and which therefore do not state a cause of action for wrongful eviction or waste against the unit owners.

In addition, Smolker failed to state a cause of action for the contribution and foreclosure claim. The Smolkers, attorneys in the Law Offices of Smolker and Graham, alleged that the unit owners were "unjustly enriched" by the "overpayment" of the Smolkers, because they had "made advances" in legal services to "protect" the "COMMON AREA" from the "waste" and "dangerous condition" maintained by the unit owners and PVHOA. As discussed earlier, only PVHOA was authorized to maintain the common areas, not the unit owners. (Civ. Code, § 1364, subd. (a).) The Smolkers fail to present any legal basis or to cite any relevant authority in support of their claim that they are entitled to the value of the time they expended; there is no basis to find error.

B.    *The Court Properly Found Smolker Failed to State a Cause of Action*
        *Against Allstate for Breach of Contract or Bad Faith*

Allstate is the insurance carrier for Kay. Coverage Y of Kay's Allstate policy provides: "Each person who sustains bodily injury is entitled to [medical] protection when that person is [¶] on the **insured premises** with the permission of an **insured person**; or [¶] 2. off the **insured premises**, if the **bodily injury**: [¶] a) arises out of a condition on the **insured premises** or the immediate adjoining ways; [¶] b) is caused by the activities of an **insured person** or a **residence employee**; [¶] c) is caused by an animal owned by or in the care of an **insured person**; or [¶] (d) is sustained by a **residence employee**." One of the policy exclusions provides: "8. **We** do not cover any **bodily injury** which results in any manner from the discharge dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids, toxic solids, waste materials or other irritants, contaminants, or pollutants. [¶] **We** do cover bodily injury

15

which results from such discharge if the discharge is sudden and accidental." (Emphasis in original.)

The language in Kay's Allstate policy is almost identical to that in *Shaolian v. Safeco Ins. Co.*, 71 Cal.App.4th 268, 272 (*Shaolian*).[10] In *Shaolian*, the trial issue concerned a medical coverage provision that obligated defendant to pay the medical or funeral expenses incurred by third parties who were injured in connection with the insured's activities. The insurance company refused payment contending that its obligation to pay was conditioned on a finding that the insured had been at fault and that the victims lacked standing until the liability of the insured had been adjudicated. (*Id.* at pp. 270-271.) "Because the insurer's duties flow to its insured alone, a third party claimant may not bring a direct action against an insurance company. As a general rule, a third party may directly sue an insurer only when there has been an assignment of rights by, or a final judgment against, the insured. [Citations.]" (*Id.* at pp. 271-272; see Ins. Code, § 11580, subd. (b)(2).) The *Shaolian* court held policy limitations regarding acts away from the home precluded payment for injuries except those shown to have been caused by the insured. (*Id.* at p. 275.)

Here, the Smolkers did not allege they suffered an injury on the "insured premises" within the meaning of Kay's Allstate policy. Rather, they claimed to have suffered injury off the premises when Kay and Eskenazi "opened their front door or any other door connected to the common area hallway" and "when they walked in the common area hallway" by "caus[ing] dust that had settled in the common area hallway

---

[10] "'[T]his coverage applies only: [¶] 1. to a person on the **insured location** with the permission of an **insured**; or [¶] 2. to a person off the insured location, if the **bodily injury**: [¶] a. arises out of a condition on the insured location or the ways immediately adjoining; [¶] b. is caused by the activities of an **insured**; [¶] c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or [¶] d. is caused by an animal owned by or in the care of an **insured**.'" (*Shaolian, supra,* 71 Cal.App.4th at p. 273, emphasis in original.)

carpet and walls to be stirred up and recirculated into the common area atmosphere."[11] Toxic chemicals, whose release is not accidental, however, are excluded under Kay's Allstate policy.  Moreover, as discussed above, neither Kay nor her husband were liable to the Smolkers for such conduct.  Accordingly, as in *Shaolian*, the court correctly concluded that the Smolkers could not state a cause of action against Allstate for breach of an obligation owed them under Kay's policy.

    C.    *The Court Properly Found Smolker Failed to State a Cause of Action*
        *Against State Farm for Breach of Contract or Bad Faith*

State Farm is the insurance carrier for the Hollands and Robbins.  Coverage M— Medical Payments under the State Farm policy provides:  "We will pay medical expenses for bodily injury caused by an **accident** on the premises you own or rent, on ways next to the premises you own or rent, or because of your operations.  The **accident** must take place in the coverage territory during the policy period.  We will pay medical expenses only if the expenses are incurred or medically ascertained within one year of the date of the **accident**. . . ."  (Emphasis added.)

Smolker contends that he and his family were "injured while walking in the common area hallway to get in and out of their home," which is owned in common with the Hollands and Robbins.  Smolker alleges that the Hollands and Robbins injured him by stirring up silica aerogel dust or mold as they walked in the common area.

---

[11]    Allstate contends that even if the common areas were within the definition of "insured premises," the Smolkers have not pleaded any facts showing they were on the insured premises "with the permission of the insured."  If the common areas are insured premises, Allstate asserts the policy excludes the Smolkers from coverage, because they are regular residents of the insured premises.  The Smolkers never asserted that these were, or are, incorrect interpretations of the policy language.  In ruling on the demurrer, the trial court determined that the fifth amended cross-complaint did not allege the Smolkers suffered an injury on the "insured premises" within the meaning of Kay's Allstate policy.  Rather, the Smolkers claimed to have suffered injury in the common areas of the complex where the insureds opened doors and walked in the common hallway.

The plain language of the policy provides that third party coverage for injury must be caused by an accident. "'[A]ccident,' as judicially defined, is a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured *including any event which takes place without the foresight or expectation of the person acted upon or affected by the event.* [Citation.]" (*State Farm Fire & Casualty Co. v. Drasin* (1984) 152 Cal.App.3d 864, 867.) "The overwhelming weight of California authority holds that the term 'accident' refers to the nature of the act giving rise to liability, not to the insured's intent to cause harm . . . ." (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 810.)

The issue is whether an accident gave rise to Smolker's claimed injuries. Although no accident is alleged, the Hollands' and Robbins' intentional acts of walking down the hallway and opening doors caused the stirring of toxic dust that allegedly caused Smolker's injuries, regardless of whether any harm was intended or expected to come of them. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶ 7:45, pp. 7A15 ["term 'accident' refers to an *unintended act*, not an unintended injury. Coverage thus turns on the insured's intent to perform the act, not on his or her state of mind in performing it. Therefore, it is irrelevant whether the insured expected or intended the conduct to cause harm"].)

The Hollands' and Robbins' acts of walking down the common area hallway and opening of doors were no "accident." Such conduct was intentional, whether or not they expected or intended the conduct to cause harm. As there is no coverage under the State Farm policy without an "accident," the demurrer was properly sustained.

> D.    *Smolker Did Not Meet His Burden in Contesting the Trial Court's Sustaining of Demurrers as to Farmers and Truck*

In his opening brief, Smolker only contended: "The trial court sustained the Farmer cross-defendants demurrers without leave to amend on the basis of the factual allegation in the Farmers' entities demurrer that Farmers is a trade name or logo not an entity ('real business enterprise') without taking into consideration the allegations of the

fifth amended complaint, without any proof presented by the Farmers entities on that fact and without providing the Smolkers an opportunity to refute that fact."

To the contrary, the trial court explained in its ruling that Farmers' "assertion that 'Farmers' is not a legal entity subject to suit is not information (if true) that the Smolkers knew or had reason to know when they pleaded their Fifth Amended Complaint."

### 1. *Negligence*

To prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1145.)

In their 18th cause of action for negligence against Farmers and Truck, the Smolkers did not plead any of the negligence elements. Instead, they incorporated by reference several other paragraphs, none of which sufficiently pleaded a cause of action for negligence.

Here, the court explained that as to the negligence cause of action, "[t]here are insufficient facts to support a negligence theory, and the Smolkers have had sufficient opportunity to cure this deficiency. The cross-complaint does allege generally that all of the insurers failed to carry out duties to investigate and/or to repair the condominium complex and as a result the Smolkers suffered personal and property damage. The Smolkers, however, do not allege any factual basis for the supposition that Farmers owed any duty to them or how any such duty was breached."

The Smolkers failed to plead any of the elements of negligence in the fifth amended complaint, even after numerous opportunities to amend. Thus, the court was correct in sustaining the demurrer without leave to amend.

### 2. *Fraud*

The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "It is elementary that in an action for

19

equitable relief based upon extrinsic fraud in obtaining a judgment, the facts constituting the fraud must be pleaded with particularity and specifically. [Citations.]" (*Hammell v. Britton* (1941) 19 Cal.2d 72, 82.)

Here, pertaining to the 30th cause of action for fraud on page 68 of their 70-page fifth amended complaint, the Smolkers pleaded: "The cross-defendants named in this cause of action know what the fraud is, what its [*sic*] and what damages are being claimed by the SMOLKERS. The court's page limit does not allow setting forth allegations concerning this cause of action. The court's time limit did not allow enough [*sic*] time to plead this cause of action in any further detail or to edit this fifth amended cross-complaint."

The Smolkers failed to plead any of the elements of fraud in the fifth amended complaint, even after numerous opportunities to amend. Thus, the court was correct in sustaining the demurrer without leave to amend.

       *3.    Interference with Contractual Relations*

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal. 3d 1118, 1126.)

As they did with respect to fraud, on the 31st cause of action for inference with contractual relations cause of action, the Smolkers pleaded: "The cross-defendants named in this cause of action know what the interference is, and what damages are being claimed by the SMOLKERS. The court's page limit does not allow setting forth allegations concerning this cause of action. The court's time limit did not allow enough [*sic*] time to plead this cause of action in any further detail or to edit this fifth amended cross-complaint."

[*sic*] time to plead this cause of action in any further detail or to edit this fifth amended cross-complaint."

Because the Smolkers failed to plead any of the elements of interference with contractual relations in the fifth amended complaint, even after numerous opportunities to amend, the court was correct in sustaining the demurrer without leave to amend.[12]

> E.    *Smolker Has Not Met His Burden on the Fraud and Interference Claim*
> *Against Hyde and Costello*

We disregard Smolker's contention that the court erred in sustaining the demurrer on his fraud and interference claim against Hyde and Costello.

Smolker failed to designate the second amended complaint as part of the clerk's transcript in his record on appeal. (Cal. Rules of Court, rule 8.120(a)(5).) Error is never presumed; all presumptions favor the correctness of the lower court's judgment or order. (*Buckhart v. San Francisco Residential Rent Etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) Where an appellant has not provided a complete record, we cannot review a claim of error and we presume that the evidence was sufficient to support the judgment. (*Null*, at p. 1533; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.)

---

[12]    Farmers and Truck filed a motion for sanctions in connection with this appeal. Code of Civil Procedure section 907 provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See also Cal. Rules of Court, rule 27(e)(1)(A) [[Court of Appeal may impose sanctions on party or attorney for taking frivolous appeal or appealing solely to cause delay].) The Supreme Court in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, set forth the applicable standard, "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive – to harass the respondent or delay the effect of an adverse judgment – or when it indisputably has no merit – when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" We have reviewed the motion to dismiss and concluded this standard is not met in this appeal. Accordingly, we deny the request for sanctions.

III.    *ANY CHALLENGE TO THE DENIAL OF SMOLKER'S MOTION TO TAX COSTS IS FORFEITED*

In the introductory section of his Appellant's Opening Brief, Smolker makes bare mention of his denied motion to tax costs: ". . . This appeal addresses the legal issue of whether it is proper to charge a losing party with the costs incurred by the winning party in pursuing a lawsuit against a third party and/or to charge the losing party with costs incurred by the winning party in defending lawsuits brought by other parties. In the trial court action the Smolkers tried to have the trial court tax and/or strike costs claimed by the homeowner association for defending lawsuits brought by other persons against the homeowner association and to have the trial court tax or strike costs claimed by the homeowner association related to prosecuting a litigation against another party." Thereafter, Smolker never set forth any arguments regarding the trial court ruling, cited to the record or to any legal authority.

Accordingly, Smolker's failure to present argument with references to the record and citation to legal authority results in a forfeiture of any assertion that could have been raised. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37; *Building etc. Assn. v. Richardson* (1936) 6 Cal.2d 90, 102; *Estate of Randall* (1924) 194 Cal. 725, 728-729; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239-1240; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003-1004 & fn. 2; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1; *Pimental v. Safeway Stores, Inc.* (1987) 196 Cal.App.3d 92, 94, fn. 1.)

IV.    *THE COURT PROPERLY DENIED ATTORNEYS' FEES TO PVHOA*

We turn now to the issue of whether the trial court erred in denying PVHOA's request for attorney fees.

At all relevant times, the procedures governing requests for admission were contained in former Code of Civil Procedure section 2033. That section was repealed

effective July 1, 2005, and was replaced by sections 2033.010 through 2033.080. Because all trial court proceedings at issue here took place while former section 2033 was in effect, we will refer to that section throughout this opinion.

Former subdivision (*o*) of Code of Civil Procedure section 2033 provided: "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this section, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make this order unless it finds that (1) an objection to the request was sustained or a response to it was waived under subdivision (*l*), (2) the admission sought was of no substantial importance, (3) the party failing to make the admission had reasonable ground to believe that that party would prevail on the matter, or (4) there was other good reason for the failure to admit."

"The primary purpose of requests for admissions is to set at rest triable issues so that they will not have to be tried; they are aimed at expediting trial. [Citation.] The basis for imposing sanctions . . . is directly related to that purpose. Unlike other discovery sanctions, an award of expenses . . . is not a penalty. Instead, it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission where the admission sought was 'of substantial importance' [citations] such that trial would have been expedited or shortened if the request had been admitted." (*Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 509, criticized on another point in *Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 866-867.)

"'The determination of whether a party is entitled to expenses under section 2033, subdivision (o) is within the sound discretion of the trial court.' [Citation.] More specifically, '[former s]ection 2033, subdivision (o) clearly vests in the trial judge the authority to determine whether the party propounding the admission thereafter proved the truth of the matter which was denied.' [Citation.] An abuse of discretion occurs only where it is shown that the trial court exceeded the bounds of reason. [Citation.] It is a

23

deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable. [Citation.]" (*Stull v. Sparrow, supra*, 92 Cal.App.4th at p. 864.)

Here, the Smolkers denied the following requests for admission: 1) "Pacific Villas is not liable on the Eleventh Cause of Action of the Fifth Amended Cross-complaint entitled Negligence"; 2) "Pacific Villas is not liable on the Twelfth Cause of Action of the Fifth Amended Cross-complaint entitled Nuisance and Maintenance of a Nuisance"; 3) "Pacific Villas is not liable on the Thirteenth Cause of Action of the Fifth Amended Cross-complaint entitled Abatement of Nuisance"; 4) "Pacific Villas is not liable on the Fourteenth Cause of Action of the Fifth Amended Cross-complaint entitled Trespass"; 5) "Pacific Villas is not liable on the Fifteenth Cause of Action of the Fifth Amended Cross-complaint entitled Assault and Battery"; 6) "Pacific Villas is not liable on the Sixteenth Cause of Action of the Fifth Amended Cross-complaint entitled Wrongful Eviction"; 7) "Pacific Villas is not liable for punitive damages as sought in the prayer for damages of the Fifth Amended Cross-complaint."

The trial court denied PVHOA's motion to recover $71,865 in attorney's fees. It reasoned: "The assertion [is] that PVHOA may recover attorney[s'] fees under [Code of Civil Procedure section] 2033[, subdivision] (o) because the Smolkers denied requests for admission that their claims borders on the frivolous. [Code of Civil Procedure section] 2033[, subdivision] (a) provides that a party by written request may ask responding party to admit 'the truth of specified matters of fact.' PVHOA's requests did not ask the Smolkers to admit facts; they ask that they give up their claims."

Applying the deferential standard of review, we agree with the determination of the trial court and find no abuse of discretion in denying PVHOA's request for attorneys' fees.

## DISPOSITION

The judgment and orders are affirmed except as to Frontier.  Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


ZELON, J.

We concur:


PERLUSS, P .J.


JOHNSON, J.

25