## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____

|  |  |
|---|---|
| | ) Chapter 11 |
| In re: | ) |
| | ) Case No. 01-01139 (KJC) |
| W.R. GRACE & CO., et al., | ) Jointly Administered |
| | ) |
| Reorganized Debtors. | ) **Re: Docket Nos. 18821, 3812, 3233** |
| | ) **Hearing Date: February 24, 2015 at 10:00 am** |

_____

## ANDERSON MEMORIAL HOSPITAL'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND ORDER DENYING MOTION FOR CLASS CERTIFICATION AND FOR ENTRY OF SCHEDULING ORDER AND GRANTING RELATED RELIEF

Anderson Memorial Hospital ("AMH") files this reply to Grace's Brief in Opposition ("Opposition") to AMH's Motion to Alter or Amend Order Denying Motion for Class Certification and for Entry of Scheduling Order and Granting Related Relief ("Motion") and proposed Order.[1]

## INTRODUCTION

The parties are trains passing in the night. In its Motion, AMH requested the Court "to enter a Scheduling Order providing for discovery followed by certification briefing and oral argument." [Motion at 1]. AMH set forth the grounds in support of its Motion for a Scheduling Order providing for discovery. AMH did not file a

_____

[1]Defined Terms consist of those set forth in the Plan [DI 26368-1], as supplanted herein and in AMH's Motion by capitalized designations in brackets.

Memorandum in support of its Motion to Alter or Amend, including argument in support of class certification, or otherwise address the merits of this dispute.

AMH plainly and repeatedly stressed that it intended to brief class certification after the Court ruled on its request for a Scheduling Order providing for limited numerosity discovery and a certification briefing schedule. In setting forth a "concise and non-argumentative background statement," AMH explained to the Court and Grace that it "anticipates filing a Memorandum in Support of Class Certification, which will include a full 'Statement of Facts.'" [Motion at 5, n. 4]. AMH later emphasized that in its Memorandum in Support, it would "set forth its extensive nationwide discovery" that it has garnered against Grace over many years to support its argument that absent class certification, each individual Asbestos PD Claimant ("Claimant") will have to conduct its own discovery, with inevitable discovery disputes to be decided by the Court." [Motion at 12, n. 9]. In its concluding sentence, AMH requested that "the Court should enter a Scheduling Order providing for discovery followed by certification briefing. [Motion at 33].

Grace was not confused. Grace simply chose to file an Opposition to a memorandum AMH did not file, in which it sets forth arguments it perceives AMH will make when it files its memorandum after the present request is determined. As anxious as AMH is to respond to the merits of this dispute – especially Grace's

twistifications – it will constrain itself at this juncture and limit this response to the sole issue before the Court:  whether or not AMH is entitled to limited discovery on the numerosity issue which formed the basis of Judge Fitzgerald's ruling.[2]

Attached hereto is the limited numerosity discovery which AMH seeks permission to propound.  [TAB A].  The discovery consists of Rule 30(b)(6) Deposition Notices (each including a one paragraph Rule 34 Request to Produce specific numerosity documents).  If the Court grants AMH's Motion, the parties can brief the issue of amending the class certification ruling with a record that includes this additional discovery.  If the Court denies AMH's Motion, the parties can brief that question based upon the record previously made as supplemented by Grace's subsequent admissions and disclosures and the Plan.

## **BACKGROUND**

## I.    **AMH'S PROPOSED CLASS**

---

[2]Grace also prematurely argues that Judge Fitzgerald based her decision on the absence of superiority. [Opposition at 20].  Judge Fitzgerald's comments about superiority were based on her belief that any class must be limited to building owners who filed individual Claims.  Thus, all roads lead to numerosity.  The Plan filed after the Certification Order provides that building owners who did not file individual Claims may recover in litigation that will stretch over many years until the last Claim has accrued.  AMH will show that resolving asbestos PD Claims in one class action lawsuit in this Court is consistent with the Plan and superior to this multi-year case-by-case approach in much the same way as the Third Circuit recognized that a class on behalf of the nation's schools was superior to individual litigation.  *In re School Asbestos Litigation*, 789 F.2d 996 (3d Cir. 1986).

Grace correctly acknowledges that AMH sought the certification of a class of "private building owners with Asbestos PD claims." [Opposition at 3].[3] In the Grace bankruptcy, an Asbestos PD Claimant ("Claimant") must file an Asbestos PD Claim ("Claim") for each building it asserts has been injured (contaminated) by Grace's Surface Treatment or Masonry Fill. [DI 1960].

The private building owners which AMH seeks to represent have or will have present PD Claims: present Claims which accrued before the Bar Date; present Claims which have accrued since the Bar Date; and unaccrued Claims which will become present Claims when they accrue at some point in the future. At this juncture, it is unnecessary to determine where the lines should be drawn between these categories because all are or will be within the definition of the class.

AMH pointed out in its Motion and reiterates here that it does not seek to represent "the holders of Future Demands" (commonly but incorrectly referred to as "Future Claimants"). However, all PD Demands will inevitably accrue. *See City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 982 (4th Cir. 1987); *see also State of*

---

[3]S&R also was retained by two public building owners with hundreds of buildings: The Regents of the University of California and The Trustees of the California State University ("California Colleges"). Although Grace recognizes that the California Colleges' Claims were never a part of AMH's class on behalf of private building owners, it repeatedly conflates the filing and settlement of these Claims with AMH's Claims. [Opposition at 3, 8, n. 5].

*California v. W.R. Grace & Co.*, 418 B.R. 511 (D. Del. 2009).

Once PD Demands accrue, they automatically leave the PD FCR's cocoon and become present Claims.  At that point, the PD FCR will not represent these present Claimants in their asbestos lawsuits anymore than the PI FCR represents former PI Demand Holders in the prosecution of their present Asbestos PI Claims.

## II.    GRACE'S FUNDAMENTAL PROBLEM

"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence."[4] Grace cannot make facts go away simply by ignoring them.  Grace cannot ask this Court to reverse factual findings that were essential to the confirmation of the Plan.

### A.    The Basis of the Certification Order

AMH has argued from the outset that even if Judge Fitzgerald's publication Bar Order for traditional Claims was perfect, it could not, as a matter of law, prevent building owners whose Claims had accrued before 2002, but who did not file individual Claims, from being class members. [Motion at 3-4, 30].  AMH also has argued from the outset that even if Claimants with traditional Claims that had accrued before the Bar Date could be prohibited from participating in a class, which is not the

---

[4]John Adams, "*Argument in Defense of the Soldiers in the Boston Massacre Trials*," December 1770.

law, there are still thousands of Claims which had not accrued at the time of the Bar

Order.  Finally, AMH argued that certification of a class would assist the bankruptcy

estate in dealing with its PD liability. [DI 10014].[5]

At Grace's urging, Judge Fitzgerald rejected all of these arguments in her

Certification Order.  Not only did Judge Fitzgerald refuse to recognize that there is

such a thing as an unaccrued PD Claim [Motion at 20-21], but she previously said

that she was not convinced that there could be a 524(g) Trust for PD Claims because

they are all fixed.  [*See, e.g.* DI 8364].  Finally, Judge Fitzgerald found that

"certification of the class would needlessly prolong this case." [Certification Order

at 12].

Judge Fitzgerald denied AMH's Motion for Class Certification on May 29,

2008. [DI 18821].  In her recent Expert Report to this Court, Judge Fitzgerald

recognized that as late as July 2008, "Grace vigorously opposed" ZAI counsel's

motion to recognize a ZAI class brought before the bankruptcy by Marco Barbanti.

[DI 32259 at 25].  Although Grace petitioned the Court to appoint a PI FCR in 2003

---

[5]No matter how many times AMH denies it, Grace continues to argue that
AMH is trying to undermine the Bar Order.  The reason that the Seventh Circuit
first recognized the applicability of class actions in bankruptcies is that claimants
who did not receive actual notice of a bar date would have an opportunity to
equally participate with claimants who did.  *In re: American Reserve Corp.*, 840
F.2d 487, 493 (7th Cir.1988) ["The representative in a class action is an agent for
the missing."].

[DI 45757], during the ensuing four years, it never suggested that a PD FCR should be appointed, nor did Judge Fitzgerald appoint a PD FCR in any of the other asbestos bankruptcies assigned to her.

### B.  Subsequent Developments

Within two months, Grace did an about face and later convinced Judge Fitzgerald to reverse herself on all of these points.  Judge Fitzgerald granted Grace's motion and appointed a PD FCR (the only PD FCR in the over thirty year history of asbestos bankruptcies).  [Motion at 20].  Judge Fitzgerald approved a ZAI settlement negotiated between Grace and Mr. Barbanti's counsel which permitted ZAI Claimants who did not file individual Claims to be compensated.  [Motion at 30].  Judge Fitzgerald confirmed Grace's Plan, which provided for a 524(g) PD Trust based on Grace's evidence that it would face substantial PD Claims post- confirmation.  *In Re W.R. Grace & Co.*, 729 F.3rd 332, 342 (3rd Cir. 2013).[6]

Judge Fitzgerald's concern about certification prolonging the development of a Plan also turned out to be ill founded in light of the Plan which Grace later filed.  Grace admits that "the confirmed and consummated Grace Plan of Reorganization

---

[6]Grace admits that its Surface Treatment products were sold to thousands of customers over a period of decades. [Opposition at 14].  Grace presented evidence at the confirmation hearing that the Plan would be feasible even if the Allowed PD Claims were $1.6 billion. [DI 23619 at 175-178].

expressly provides" that AMH may "appeal the entire dispute–both its individual

Claim and the denial of class certification–to the District Court and, if necessary, the

Third Circuit." [Opposition at 2]. In other words, the Plan anticipates that AMH's

class may well be certified and administered in accordance with the Plan. Without

a class, the resolution of Claims under the Plan will be needlessly prolonged over a

period of many years until the last Claim accrues.[7]

Why did Grace consent to a class action for ZAI Claimants and agree that

present ZAI Claimants could participate in the class even if they did not file an

individual Claim? The Plan Term Sheet [DI 20275-3] was negotiated in the spring

of 2008 by Grace and Equity, on one side, and a member of the PI Committee, Joseph

F. Rice. [TAB B (Weschler Deposition) at 9, 15.][8] Judge Fitzgerald recently noted

that during the summer of 2008, it was Mr. Rice who also moved the ZAI settlement

---

[7]Contrary to Grace's argument that AMH is trying to "unwind the Plan's property damage procedures" [Opposition at 37], AMH will show when it files its Memorandum in Support of Class Certification that certification will effectuate the Plan in a fair and more efficient way.

[8]The Third Circuit has recognized that, "A unique feature of asbestos personal injury litigation is the fact that a small group of law firms represents hundreds of thousands of plaintiffs." *In Re Congoleum Corp.*, 426 F.3d 675, 679 (3rd Cir. 2005); *see also Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 160 (D.N.J. 2005). PI counsel are able to secure these roles because, "The realities of securing favorable votes from thousands of claimants to meet the 75% approval requirement forces debtors to work closely with the few attorneys who represent large numbers of injured claimants." *Congoleum* at 426 F.3d 680.

process towards settlement.  [DI 32259 at 7].

According to Judge Fitzgerald, Mr. Rice, as the representative of PI interests, "had a stake in the resolution of ZAI claims" in that "any subsequent settlement of the ZAI property damage claims could potentially reduce the total funding available for the PI trust, as part of a global settlement directed to achieving a consensual plan." [DI 32259 at 21].  At that time, however, Mr. Rice's law firm not only actively represented thousands of PI Claimants in this and other asbestos bankruptcies, but his law firm represented Mr. Barbanti and other ZAI Claimants in the bankruptcy.  [DI 3899; Adv. No. 01-08810, DI 1].  In addition, Mr. Rice had sued AMH in another bankruptcy on behalf of his PI clients [TAB C ].[9]

Apparently unknown to Judge Fitzgerald, two months after jump-starting the ZAI settlement discussions, Mr. Rice "mediated" a settlement of all ZAI Claims between his ZAI co-counsel and the Plan Proponents.  [DI 21259 at 105-106].  The

---

[9]AMH offers no criticism of Mr. Rice, whose obligations run to his clients. Grace, on the other hand, told Judge Fitzgerald that it had a fiduciary duty to all of its PD Claimants. [DI 5374 at 38].  AMH understands that Grace wanted to resolve its PI and ZAI liabilities in order to get a consensual Plan, but there is no way to harmonize Grace's duty to all with the fact that traditional PD Claimants, who did not file individual Claims, are locked out of the process unless they file individual motions and meet their burden of proof to proceed with a post-confirmation Claim, while at the same time ZAI Claimants (who did not meet the ZAI Bar Date) and PI Claimants (who strangely never had a Bar Date) do not have any threshold barrier to presenting their Claims.

settlement provided for the certification of a ZAI class, the appointment of a PD FCR and a 524(g) trust for ZAI Claims.

During the ZAI settlement negotiations, the Plan Proponents realized that the 2002 settlement of the fraudulent transfer litigation against Sealed Air and Fresenius required that the payment of $1 billion in cash and other consideration be transferred to "the Asbestos PI Trust and the Asbestos PD Trust." [DI 20873 at 18].[10]  Thus, Grace had to obtain a 524(g) injunction for all Asbestos PI and PD Claims, including traditional PD Claims.

Subsequently, Grace filed its request that the Court appoint a PD FCR, its consent to a ZAI class, and the Plan which provided for the treatment of all PD Claims.  Grace also did an about face from its then seven year old mantra that there were no significant traditional PD Claims and retained a confirmation expert who found that Grace faced significant PD liability. [DI 21033]

AMH unsuccessfully challenged the creation of the PD Trust and related procedures under the Plan on appeal.  The Third Circuit held that "there remains a significant chance that future property damage claims will be asserted against Grace by property damage claimants." *In Re W.R. Grace & Co.*, 729 F.3rd 332, 342 (3rd Cir.

---

[10]Grace opposed the asbestos constituencies in the fraudulent transfer litigation.  [*See* DI 32420].  Grace's estate paid AMH's counsel a significant fee for its representation of the PD constituency in that matter.  [DI 12657].

2013), quoting with approval 475 B.R. 34, 101 (D.Del. 2012).

In summary, in order to defeat class certification, Grace argued that there were not enough PD Claims to meet the numerosity standard set forth in Rule 23(a).  In order to confirm its Plan and gain the benefit of a 524(g) Injunction, however, Grace presented evidence and convinced the Court that it faced significant PD Claims. Grace should not be permitted to execute a double reverse pass and pretend that the facts are what it erroneously suggested during the 2005-2007 class certification proceeding.  Grace simply cannot have it both ways.

## III.  MASONRY FILL

Grace's total response to AMH's Masonry Fill concerns consist of three sentences buried in a footnote on page 20 of its Opposition.  Perhaps nothing places the issues in clearer focus than Grace's position with respect to Masonry Fill.

Grace concedes that Masonry Fill is essentially the same product as ZAI, which was typically applied to different parts of homes and other buildings, and that, "the Bar Date Notice [and not the ZAI Bar Date Notice] covered masonry fill claims." [Opposition at 20, n. 11].  Grace then argues that "the fact that no building owner filed a masonry fill claim by the Bar Date hurts, rather than helps, AMH." [Opposition at 20, n. 11 (citation omitted)].

Grace cites but does not discuss the traditional Bar Order which required

building owners to file a Masonry Fill Claim by the Bar Date.  To do so would disclose to the Court the inconvenient fact that Masonry Fill is not specifically identified in the Bar Date Notice. [*See* DI 1926 at Ex. 12 Exhibit-B].  Thus, even if a homeowner read a publication notice about the Bar Order, and even if the homeowner knew that it had Masonry Fill within its walls, it did not even receive constructive notice of the fact that Masonry Fill was covered by the Bar Order.

Judge Fitzgerald excluded Grace's Billing Registers at the certification hearing. [DI 16422 at 71-77].  Those documents show that for a 33 month period, Grace sold 8,055,660 bags of ZAI and 8,065,310 bags of Masonry Fill.  [TAB D (Murdaugh Affidavit)].  In other words, Grace sold almost the identical amount of these two identical products.

How is it that there were zero Masonry Fill Claims and over 16,000 ZAI Claims? ZAI was covered by a separate Bar Order, which specifically and repeatedly identified the product name.  In addition, Judge Fitzgerald, at Grace's request, provided a television notice for ZAI, but not for Masonry Fill, based on Grace's representation that its traditional products were not found in residences.  Thus, in this internet era, homeowners with Masonry Fill were left to find and read a Bar Notice, that did not identify Masonry Fill, in a publication to which they likely did not subscribe.

More importantly, even though the ZAI Bar Notice identified the ZAI product, and even though there was a television component, a very small percentage of ZAI Claimants ever responded to the Bar Notice.  Judge Fitzgerald approved Grace's settlement with the ZAI Claimants which provided that all ZAI Claimants could participate in the settlement regardless of whether or not they filed individual Claims.

Grace's response to AMH's assertion that not one Masonry Fill Claim was filed is to say, in effect, "tough luck." [Opposition at 19-20, n. 11].  Grace told Judge Fitzgerald that it had a fiduciary duty to the PD Constituency. [DI 5374 at 38].  Certification of AMH's class is the only way to provide Masonry Fill Claimants with a realistic chance of obtaining a similar recovery.

## IV.    GRACE'S CONCESSIONS

Nowhere in its Opposition does Grace deny that Judge Fitzgerald repeatedly ruled prior to entry of the Certification Order that persons who did not file individual Claims could not be part of a class.[11]

Nowhere in its Opposition does Grace, which cites the dismissals of 675 [*sic*] individual class members' Claims, which AMH had filed at Judge Fitzgerald's

---

[11]Grace hardly could dispute this fact given that it previously made the argument that there was no reason for numerosity discovery because Judge Fitzgerald already had basically decided class certification on this ground. [DI 13342 at 86].

suggestion,[12] point out that the dismissals were without prejudice to their right to

participate in the class if certified. [DI 11025 at 71].[13]

Nowhere in its Opposition does Grace deny that at the start of the certification

hearing, Judge Fitzgerald denied AMH's offer of evidence showing the large quantity

of sales of Grace's products to building owners who did not file individual Claims

---

[12]Judge Fitzgerald told the parties at the first of three bar date hearings that "there is some benefit to using that class process," and suggested that Judge Gambardella's procedure in *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998) "makes good sense." [DI 1793 at 97-98]. Judge Fitzgerald said that attaching a list of all the putative claim holders to the class claim as was done in *Interregional* was sufficient and appropriate, although Judge Fitzgerald added that, "**I'm not sure in every given case that you don't also need an individual claim form or an identification of the claimant**." [*Id.* (emphasis added)]. AMH believed then (and believes now) that all that a class representative must do is to file a class proof of claim, particularly in a tort class in which it will not know most of the class members. Out of an abundance of caution, however, AMH obtained an opinion from a leading ethicist, who advised AMH that it had a fiduciary duty to file individual Claims as suggested by the Court. [TAB E]. AMH did exactly what Judge Fitzgerald suggested it should do.

[13]As AMH previously documented [Motion at 14], although Judge Fitzgerald changed her thinking on several other issues during the second and third Bar Date hearings (including changing her mind at Grace's suggestion on whether a building owner needed permission to file a class claim) and deleted Grace's original proposed prohibition against class claims, over the next three years, she never modified her statements about attaching a list of putative Claimants and filing individual Claims. After Grace objected to AMH's Claims in September 2005, however, Judge Fitzgerald expressed the view that AMH did not need to file both its Worldwide POC and Statewide POC (collectively "Class Claims") and individual Claims on behalf of class members. [DI 11025]. AMH agreed (it had always been of that view) and offered to withdraw the individual Claims without prejudice to their participating in the class if later certified.

[Motion at 15; DI 16422 at 76].[14]

Nowhere in its Opposition, in which Grace suggests that there really are no Claims out there, does it attempt to deal with AMH's Worldwide POC, which at Judge Fitzgerald's suggestion attaches a list of over 3,000 buildings with Grace's product (including approximately 2,000 on whose behalf AMH did *not* file an individual Claim) or AMH's Statewide POC, which identifies hundreds of shipments of Grace's Surface Treatment and Masonry Fill) [DI 19987];[15] nor the 44 Claims in the *Mission* appeal, who retained AMH's counsel shortly after the Bar Date and

---

[14]Judge Fitzgerald's refusal, at the conclusion of the hearing, to mark the documents for identification for appellate review was unrelated to her earlier exclusion of the documents into evidence.  Contrary to Grace's suggestion that AMH had "15 bankers boxes of Grace sales records [Opposition at 19], AMH had all of the documents on a CD Rom.  Judge Fitzgerald did permit AMH to mark one invoice for illustration purposes. [DI 16422 at 224-227].

[15]Grace's repeated references to AMH's counsel filing approximately 3,000 individual Claims is a classic red herring.  The 3,000 number that Grace cites – which Grace later conceded included duplicates [DI 11707 at 6-7] includes hundreds of Claims filed by the California Colleges and even more Claims filed by AMH's retained clients who did not have Grace's product but initially protected their right to claim under a conspiracy theory (as has been recognized in most other asbestos PD bankruptcies). Before Grace ever objected to any PD Claims, AMH's counsel worked out an arrangement with Grace's corporate counsel to withdraw the conspiracy Claims, and subsequently AMH withdrew them upon the express agreement of Grace that it would not claim that AMH acted improperly in trying to protect those entities. [DI 9843].  Although AMH does not believe that it was required to attach a list of Claimants to its Class Claims, it may be able to supplement these lists if Grace produces its database.

whose dismissal was without prejudice to their being class members.[16]

## ARGUMENT

## I.    AMH IS ENTITLED TO LIMITED NUMEROSITY DISCOVERY

### A.    AMH's Proposed Discovery Is Relevant

In its 38 page Response, Grace devotes three paragraphs (approximately one page) in opposition to AMH's request for limited numerosity discovery in which it argues that AMH does not provide any basis for reconsideration.  [Opposition at 36-37].  In fact, in light of the changes that have taken place since the certification hearing, AMH's proposed numerosity discovery is even more appropriate than when it was originally propounded.

It is now undisputed that:

• Claimants who did not file individual Claims are not legally prohibited from being members of a class;

• There are a substantial number of PD Claims; and

• Class certification will not hinder the development of a Plan.

Given this new landscape, AMH's proposed discovery seeks information for the Court about the universe of these Claims.

---

[16]At Grace's urging, Judge Fitzgerald did not expunge AMH's Class Claims, which would have given AMH an immediate right to appeal the Certification Order. [DI 21257].

In addition, AMH should be entitled to make a record of the facts regarding numerosity.  As a result of Grace's duplicity, Judge Fitzgerald found that "the property damage claim creditor universe is known" and "there are not enough claims left to constitute a numerous base in the first place" because, in addition to publication notice, "over 8700 property damage claimants were served," and "actual notice went to approximately "200,000 known asbestos claimants." [Motion at 17-18].

At the same time Grace was misleading Judge Fitzgerald about the extent of its efforts to provide actual notice of the Bar Order, Grace made an even more egregious misrepresentation to the Third Circuit.  Specifically, eight days before Judge Fitzgerald entered the Certification Order – and a year before AMH established during Plan confirmation discovery that Grace had a searchable data base – Grace told the Third Circuit that "in order to provide actual notice of the bar date to potential asbestos PD claimants, Grace would have to comb through millions of pages of sales records going back decades to identify the thousands of buildings in which Grace asbestos-containing products might have been installed a quarter-century or more earlier."  [Motion at 24].

AMH should be permitted to take discovery to show that Grace's statements and the resulting conclusions were not based upon an accurate understanding of the

facts.   The record needs to be clear, both for consideration of AMH's Motion and for any later appeal.  The last thing in the world this Court and the parties need is to have this case remanded for further findings about this fundamental issue.

The discovery is also relevant to both the superiority of class treatment and manageability.  Given the 2009 testimony of Grace's in-house counsel that Grace maintained a database, AMH should be entitled to determine (1) if the class creates the best, most efficient method way to deal with a group that would otherwise be neglected and (2) that despite the significant size of the class, records enhance the manageability of a class already far more identifiable than has been certified in ZAI.

## B.    AMH Was Prohibited From Conducting Numerosity Discovery

AMH previously pointed out that shortly after it filed its Motion for Class Certification, and before Grace filed its Response, Judge Fitzgerald expressed her belief that building owners who did not file individual claims could not be members of a class. [Motion at 2].  After AMH discussed *American Reserve*, Judge Fitzgerald told the parties at that time that:

> THE COURT:  Well, I think I need a brief on what I believe to be a legal issue which is with the bar date having past and you now know the universe of individual claims, how the class can be any bigger than the individual claims because it seems to me if the bar date notice was appropriate, and I found that it was, that's why I let it go out, and an individual hasn't filed a proof of claim, then they can't be part of a class because they haven't submitted a claim, I think.  But I want that issue briefed.

[DI 11025 at 94].

Regrettably, Grace never told Judge Fitzgerald that AMH was correct on this fundamental legal issue.[17]  When Grace filed its original Brief in Opposition – over a month after Judge Fitzgerald made these observations – Grace argued that AMH was attempting to set aside the Bar Order.  [DI 11245].  In supporting the Bar Order, Grace represented that, "Debtors spent over $4 million to widely publicize the Bar Date throughout the country.  **This included mailing individualized Notice packages to over 200,000 potential claimants or their counsel** . . ." [*Id.* at 24 (emphasis added)].[18]

_____

[17]The following month, Grace filed a "Brief Describing the Purpose that Publication Notice Served in the Debtors Bar-Date Notice Program," in which it addressed the purpose served by constructive notice without addressing the legal issue that Judge Fitzgerald identified at the October hearing ("how the class can be any bigger than the individual claims.").  [DI 11547].  Although this Brief was filed twelve years after the Eighth Circuit told Grace that the statute of limitations does not accrue (and the building owner has no right to bring a lawsuit) until the building owner has suffered a compensable injury, defined as contamination [Motion at 11], Grace also argued that "it was reasonable for the Debtors to conclude that any former customers who had not already asserted claims against Grace by then has long-since abandoned any potential claims." [Id. at 6].  As discussed herein, Grace necessarily argued the exact opposite in seeking confirmation of its 524(g) Plan.

[18]AMH has pointed out in its Motion that it believes that Grace conceded that it did not give Notice to any individual Claimants (and only seven law firms), much less 200,000 or 8700 Claimants. [Motion at 18].  Despite what AMH thinks, however, Judge Fitzgerald specifically found in the Certification Order that Grace did serve over 8700 PD Claimants and gave actual notice to approximately

Grace also argued, *inter alia*, that AMH had failed to satisfy Rule 23(a) and that "the most glaring shortcomings concern the numerosity and adequacy of representation requirements." [DI 11245 at 29].[19] With respect to numerosity, Grace contended that, "In response to the Notice and Bar Date, all timely individual claims have already been filed and are pending before this Court." [*Id.* at 30].

Shortly thereafter, AMH served Grace with five discovery requests. [DI 1133-1137].  Two of these discovery pleadings dealt with numerosity.  [DI 11335, DI 11337].  Those two discovery pleadings were identical to what AMH now seeks permission to propound.

AMH's numerosity discovery sought documents (including electronic records) that "list, compile, catalog or otherwise identify by address, building, location or owner of buildings to which asbestos-containing materials manufactured by W.R. Grace & Co. or its licensees were allegedly installed or delivered."  [DI 11337]. AMH also sought the more than 200,000 individualized notice packages which Grace

---

200,000 known asbestos Claimants. [Certification Order at 5].

[19]In early 2007, Grace withdrew its adequacy challenge. [DI 14465 at 127]. Before it ever raised this issue in its original opposition to certification, however, Judge Hayes had emphatically rejected any attack on adequacy of representation following a two-day evidentiary hearing in which Grace presented its "evidence." [DI 10014-10, DI 31812-7].  In addition, Grace did not oppose the award of a significant fee to AMH's counsel for its representation of PD Claimants in the fraudulent transfer litigation. [DI 12657].

said that it "sent to potential claimants or their counsel who owned buildings to which asbestos-containing materials allegedly manufactured, sold or distributed by W. R. Grace & Co. or its licensees had been placed or were otherwise thought to be creditors holding potential property damage claims against the debtors." [DI 11335]. Finally, AMH sought the depositions of the persons knowledgeable about these subjects. [DI 11335, 11337].

Grace filed a Motion for Protective Order in which it argued that Judge Fitzgerald had told the parties at the October 2005 hearing that she needed "a brief on what I believe to be a *legal issue* which is with the bar date having past and you now know the universe of individual claims, how the class can be any bigger than the individual claims because it seems to me if the bar date notice was appropriate, and I found that it was, that's why I let it go out, and an individual hasn't filed a proof of claim, then they can't be part of a class because they haven't submitted a claim, I think. *But I want that issue briefed.*"  [DI 11365 at 2 (emphasis in original)].

Judge Fitzgerald addressed Grace's Motion for Protective Order at a hearing on January 26, 2006. [DI 11707].  AMH challenged Grace's representation that it had given actual notice to 200,000 Claimants.  [*Id*. at 32, 54].  Judge Fitzgerald again expressed the view that any class would be limited to those who filed individual Claims, and that she did not see how a class would advance the cause of the

bankruptcy because there were not enough Claims. [DI 11707 at 75]. In light of AMH's challenge, however, Judge Fitzgerald carried the matter over, with instructions to Grace to make a proffer on whom it served at the next omnibus hearing.

At the February omnibus hearing, Judge Fitzgerald heard the parties on Grace's request to extend exclusivity. At that time, Judge Fitzgerald directed the parties to participate in a Plan Mediation. [DI 11909 at 59-61, 63]. Judge Fitzgerald stayed all proceedings, including Grace's Motion for Protective Order. [DI 11909 at 67].

The Plan Mediation did not resolve the bankruptcy. Grace placed its Motion for Protective Order on the Agenda for the August 21, 2006 omnibus hearing. [DI 13077]. At that hearing, Grace provided an oral report regarding the service of the Bar Notice that Judge Fitzgerald had directed that it give at the next omnibus hearing (before the matter was stayed) [DI 13077].

AMH then made its arguments in opposition to Grace's Motion for Protective Order. As to its numerosity discovery, AMH argued that "they may have a computer readout right now to show where their product is based upon a number of sources including the lawsuits filed against it." [*Id*. at 278]. Judge Fitzgerald responded that, "Where their product is, is irrelevant." [*Id*. at 278].

After granting Grace's Motion for Protective Order, Judge Fitzgerald – without

any argument – proceeded to address the class certification issue. Based on her long

held view that because of the PD Bar Date, AMH could not meet the numerosity test,

Judge Fitzgerald told the parties that, "I do not see a need for a class proof of claim."

[*Id*. at 282]. Judge Fitzgerald explained:

> THE COURT:   [I]t appears to me at this point the notice program was
> appropriate, the bar date order has passed, the claimants who received the
> notice either actual or constructed [*sic*] had an obligation to timely file proofs
> of claim.  They are filed of record.  The debtor has been filing objections to
> them, and we're getting through that process.  I don't see how a class proof of
> claim is going to assist anything at this point in time because all of the entities
> should have received notice either actual or constructive in sufficient time to
> file a claim.

[*Id*. at 282].

AMH immediately pointed out that the Motion for Class Certification was not

on the Agenda, and that it had other discovery outstanding (i.e. the other three

30(b)(6) Notices).  Judge Fitzgerald permitted the class certification matter to go

forward with the explicit instruction that she would not entertain any more arguments

on the matters dealing with notice.  [*Id*. at 282-283].  "I will give you your day in

court for any issues other than those related to this notice program-" [*Id*. at 283].  The

hearing concluded as follows:

> MR. SPEIGHTS: I understand that and that's what you said that you wanted
> to look at this issues as a discrete issue, and I understand I lost on that issue
> tonight, and I understand the Court's ruling.

THE COURT: All right.

MR. SPEIGHTS: But I do want to be heard on the other.  Thank you, Your Honor.

THE COURT: All right, that's fair enough.

[*Id*. at 284].

AMH's numerosity discovery – the same numerosity discovery it seeks to propound in this matter – was off the table as a result of Judge Fitzgerald's ruling at the August 2006 hearing.

### C.    Grace Misleads This Court

### 1.    AMH Did Not Fail To Seek Numerosity Discovery

Grace argues that "discovery is especially improper where, as here, the movant already had four years of class discovery, hearings, briefing and appeals, and thorough appeals of its Plan objections." [Opposition at 37].  In fact, AMH had approximately one year to conduct class discovery.[20]  Moreover, as set forth above, less than three months into the discovery period, Judge Fitzgerald prohibited AMH

---

[20]Grace filed its Response to AMH's Motion for Class Certification on December 2, 2005 [DI 11245], and the certification hearing was conducted on July 5, 2007.  The bankruptcy was stayed for approximately six months in 2006 while the parties participated in a Plan Mediation.  Consequently, AMH had one year to conduct discovery.  As set forth below, however, AMH actually had less than three months to conduct numerosity discovery before Judge Fitzgerald granted Grace's Motion for Protective Order in August 2006.

from conducting the identical numerosity discovery that it now seeks to serve.

While Grace now attempts to convince this Court that AMH could have conducted numerosity discovery after the August 2006 hearing, it repeatedly recognized that the opposite was true after that August hearing.  For example, Grace next listed the Motion for Class Certification on the Agenda for the September 23, 2006 hearing.  Grace, through its lead counsel, David Bernick, argued that the Court had essentially denied class certification back at the January 2006 hearing because AMH could not prove numerosity in light of the Bar Order:

> MR. BERNICK:  So, now we're just clicking along here to Item 12.  And Item 12 is the Anderson Memorial class issue again.  Your Honor will recall, just briefing reciting the history, that this was fully briefed and it was argued in January.  And I have here the transcript page.  Your Honor basically indicated where your leanings were and what your thinking was at Page 75.  And Your Honor recounted there that there had been a bar date for the P.D. claims.  That we know -- we knew what claims had come forward.  And at this point, there aren't enough claims, Your Honor said at Line 13, "Frankly, at this point, there's just not enough of them, that is the claims, that I can see that it requires a class.  So, that's where I'm coming from.  I don't see how a class is going to advance the cause of the bankruptcy at this point in time."

[DI 13342 at 86].

AMH pointed out that while the Court had ruled on the numerosity discovery, there were three other discovery pleadings dealing with non-numerosity discovery which the Court had said AMH could pursue.  [DI 13342 at 110-115]. After extensive argument, Judge Fitzgerald agreed. [*Id*.].

Shortly after the September hearing, Grace filed a Motion For Leave to File a Reply Brief in Support of its Motion for Protective Order to make it plain that AMH would not seek numerosity discovery. [DI 13462]. Judge Fitzgerald granted Grace's request to file a Reply, in which Grace pointed out that AMH would not proceed on the two deposition Notices dealing with numerosity.  [DI 13462 at 2].

The Motion for Protective Order as to the other three discovery pleadings came to be heard at the omnibus hearing on October 23, 2006.  At the beginning of that hearing, Grace, speaking through Mr. Bernick, again confirmed with Judge Fitzgerald that numerosity discovery was no longer before the Court:

> MR. BERNICK:  But Your Honor has already determined -- Your Honor ruled last time and I believe the time before that the purpose of this discovery is not to find out how many more buildings there are out there.
>
> THE COURT:  That's right.  There's no need.
>
> MR. BERNICK:  So numerosity --
>
> THE COURT:  There's a bar date.
>
> * * *
>
> THE COURT:  Right.  I do not believe at this point it's appropriate to look outside the proof of claims that were filed -- proofs of claim that were filed because we had a bar date that I found to be appropriate.  So the universe of claims is going to be the proofs of claim filed in the Court.

[*Id*. at 65, 67].

In summary, the only numerosity discovery AMH ever attempted was

propounded in December 2005.  Judge Fitzgerald prohibited that discovery from going forward at the August 2006 hearing, and Grace confirmed that ruling at the September and October hearings and in its Reply (as well as at later hearings). Despite what it now says, if AMH had propounded numerosity discovery after these exchanges, Grace would have vigorously attacked AMH and its counsel.

## 2.    AMH Did Not Fail to Pursue Grace's Searchable Database

In response to AMH's reference to the 2009 deposition testimony of two of Grace's in-house counsel that Grace maintained a searchable data base of its historical sales of asbestos products, Grace argues that "AMH had every opportunity during class discovery to pursue access to this database but failed to do so."  Grace's assertion is simply false.  As set forth above, AMH's December 2005 discovery which Judge Fitzgerald quashed in August 2006 specifically covered the searchable database.

Undeterred, Grace then argues that, "During class discovery, AMH deposed Grace's records custodian who testified about Grace's computerized indices to its document depositories in multiple locations, but AMH failed to ask Grace's custodian whether the indices included or Grace otherwise maintained a searchable historical sales database. (Ex. 9, 2/23/07 Sprinkle dep. at 32-33)." [Opposition at 31].  Once again, Grace is being disingenuous with the Court.

As noted above, Judge Fitzgerald granted Grace's Motion for Protective Order as to the two discovery pleadings which dealt with numerosity at the August 2006 omnibus hearing.  With one exception, Judge Fitzgerald later granted the Motion for Protective Order with respect to the other three pleadings.  With respect to AMH's request for discovery about Grace's documents that relate to AMH's class [DI 11336],  Judge Fitzgerald told AMH that its request was too broad and that it should recast its discovery [DI 13572 at 75-78].

On October 30, 2006, AMH recast its discovery regarding Grace's knowledge about the South Carolina class action proceedings.  Specifically, AMH served a 30(b)(6) Notice of Deposition seeking to take the deposition of "the Records Custodian(s) for all documents which refer to or relate to Anderson Memorial Hospital's lawsuit prior to the date the debtors filed their Petition for Reorganization." [DI 13980-1].  AMH did not serve a Rule 34 documents request at that time in order to first determine what information Grace might have.  **AMH did not seek any discovery about Grace's sales documents or other numerosity evidence because that discovery was already the subject of a protective order.**

Grace objected to AMH's recasted Notice of Deposition, and AMH filed a Motion to Compel.  [DI 13980].  The parties argued the Motion to Compel at the January 23, 2007 hearing.  Subsequently, on February 7, 2007, Judge Fitzgerald

granted AMH's Motion to Compel. [DI 14504].

In response, Grace produced Mollie K. Sprinkle for deposition on February 23, 2007.   Again, the deposition had nothing whatsoever to do with numerosity or Grace's sales records.  The subject matter of the Notice, recast pursuant to Judge Fitzgerald's instructions, was limited to documents relating to AMH's lawsuit.

Grace's argument that AMH failed to ask Ms. Sprinkle "whether the indices included or Grace otherwise maintained a searchable historical **sales database**" [Opposition at 31] is outrageous.  AMH was limited by the scope of the notice of the deposition that Judge Fitzgerald had allowed in the face of Grace's Motion for Protective Order.  As Grace had confirmed numerous times, Judge Fitzgerald had taken numerosity discovery off the table many months before Ms. Sprinkle's deposition.  AMH did not have the temerity to run afoul of the Court's directive.

## II.    GRACE'S OTHER ARGUMENTS ARE UNAVAILING

For the reasons discussed above, AMH has chosen not to address the merits of Grace's certification arguments.   AMH will briefly comment on two of Grace's technical arguments.

Grace is wrong in asserting that AMH's Motion raises nothing new and thus fails to satisfy the standard for a Motion to Reconsider.  [Opposition at 20].  Under Rule 23, a class certification order is always non-final and subject to reconsideration

at any time.  However, the reality is that elsewhere in its Opposition, Grace admits that AMH's new developments occurred after Judge Fitzgerald entered her Certification Order.  [Opposition at 1].  AMH has pointed out the sequence of the numerous developments that have taken place since Judge Fitzgerald ruled.

The most fundamental change occurred when the Third Circuit affirmed Judge Fitzgerald's Plan, which provides the landscape for consideration of the instant Motion.  If the Third Circuit had reversed the Plan, as AMH urged, then AMH would be in South Carolina.  If the Third Circuit had ruled, as AMH urged, that Grace was not entitled to a 524(g) injunction for PD Claims, based upon Grace's evidence that there are substantial PD Claims, AMH would be left without one of its strongest arguments in favor of numerosity.

Nevertheless, Grace argues that "a successful motion for reconsideration requires (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. [Opposition at 21]. AMH clearly meets each of these criteria.

The three most important decisions on the controlling law were issued long after the certification hearing.  *State of California v. W.R. Grace & Co.*, 418 B.R. 511 (D. Del. 2009); *Jeld Wen, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114

(3d Cir. 2010); *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012). In addition, the most controlling decision of all is the Third Circuit's confirmation of the Plan. *In Re W.R. Grace & Co.*, 729 F.3rd 332 (3rd Cir. 2013).

Similarly, AMH has shown the existence of new evidence that was not available when the Court previously ruled. Judge Fitzgerald denied AMH's efforts to obtain numerosity evidence based upon her mistaken view that a bankruptcy class action could not, as a matter of law, include Claimants who did not file individual Claims. As set forth above, based upon this view, Judge Fitzgerald quashed the identical discovery which AMH now seeks to obtain through limited discovery.

As outlined in AMH's Motion, there are multiple reasons why this Court should correct a clear error of law or fact and prevent manifest injustice. Perhaps most importantly, are Grace's misrepresentations to Judge Fitzgerald, the District Court, and the Third Circuit about its numerosity evidence and its ability to search its own sales records. It was not until two years after Judge Fitzgerald's Certification Order when AMH was permitted to take discovery in support of its confirmation objections that AMH discovered, as it suggested at the January 2006 hearing, that Grace had a searchable database.[21]

---

[21]AMH does not contend, as Grace suggests, that "the transfer of a case to a new Judge opens the door for a party to twice bite the apple." [Opposition at 21]. AMH waited to file its Motion until after the Plan became effective.

Finally, Grace is wrong in suggesting that the District Court has decided the issues presented in this Motion.  To the contrary, the District Court denied AMH's Motion for Leave to Appeal the Class Certification Order as an interlocutory appeal, In re W.R. Grace & Co., 398 B.R. 368 (D. Del. 2008), and this Court declined to review that order for lack of jurisdiction. In re W.R. Grace & Co., No. 08-4829 (3d Cir. Dec. 14, 2009). The only judge to have ruled on the merits of AMH's request for class certification (other than the South Carolina state court) is Judge Fitzgerald, and AMH has yet to obtain appellate review of that ruling.

CONCLUSION

For the foregoing reasons, the Court should issue a Scheduling Order permitting AMH to conduct its limited numerosity discovery followed by briefing on the issue of Class Certification.


DATED: February 4, 2015          /s/ Theodore J. Tacconelli
                                 Theodore J. Tacconelli (No. 2678)
                                 Ferry, Joseph & Pearce, P.A.
                                 824 Market Street, Suite 1000
                                 PO Box 1351
                                 Wilmington, DE 19899
                                 Telephone:  302-575-1555
                                 Facsimile:   302-575-1714 fax
                                 Email:      ttacconelli@ferryjoseph.com
                                 Local Counsel for Anderson Memorial
                                 Hospital

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East
Post Office Box 685
Hampton, SC 29924
Telephone:  (803) 943-4444
Facsimile:   (803) 943-4599
Email:        dspeights@speightsrunyan.com
Counsel for Anderson Memorial Hospital


John W. Kozyak (FL Bar No. 200395)
David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone:  (305) 372-1800
Facsimile:   (305) 372-3508
Email:        dlr@kttlaw.com
Counsel for Anderson Memorial Hospital