# EXHIBIT A

# WR Grace

SR00000520

Bankruptcy Form 10

Index Sheet

Claim Number: 00007021

Receive Date: 03/27/2003

## Multiple Claim Reference

Claim Number ________

- ☐ MMPOC — Medical Monitoring Claim Form
- ☐ PDPOC — Property Damage
- ☐ NAPO — Non-Asbestos Claim Form
- ☐ Amended

Claim Number ________

- ☐ MMPOC — Medical Monitoring Claim Form
- ☐ PDPOC — Property Damage
- ☐ NAPO — Non-Asbestos Claim Form
- ☐ Amended

## Attorney Information

Firm Number: 00298

Firm Name: Potter Anderson & Carroon LLP

Attorney Number:

Attorney Name:

Zip Code: 19899-0951

Cover Letter Location Number: SR00000520

| Attachments Medical Monitoring | Attachments Property Damage | Non-Asbestos |
|---|---|---|
| ☐ TBD | ☐ TBD | ☒ Other Attachments |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| | ☐ Other Attachments | |

## Other

- ☐ Non-Standard Form
- ☐ Amended
- ☐ Post-Deadline Postmark Date

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware

GRACE NON-ASBESTOS PROOF OF CLAIM FORM

Name of Debtor:[1] W. R. Grace & Co. - Conn

Case Number 01-1140

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

Name of Creditor (The person or other entity to whom the Debtor owes money or property):
Norfolk Southern Railway Company

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Name and address where notices should be sent:
c/o William H. Johnson
Norfolk Southern Corporation
Three Commercial Place
Norfolk, VA 23510 - 9242

Account or other number by which creditor identifies Debtor:

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated: ________

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:
W.R. Grace & Co. - Conn

1. Basis for Claim
- ☐ Goods sold
- ☐ Services performed
- ☐ Environmental liability
- ☐ Money loaned
- ☐ Non-asbestos personal injury/wrongful death
- ☐ Taxes
- ☒ Other See Attached Addendum
- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

Your SS #: ____ ____ ____
Unpaid compensation for services performed from ________ to ________ (date)

2. Date debt was incurred:

3. If court judgment, date obtained:

4. Total Amount of Claim at Time Case Filed: $ 1,584,182.18 plus any other amounts under the agreements identified in the attached addendum

If all or part of your claim is secured or entitled to priority, also complete Item 5 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Classification of Claim. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☒ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:

☐ Real Estate ☒ Other (Describe briefly) See Attached Addendum

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $________

Attach evidence of perfection of security interest

☐ UNSECURED NONPRIORITY CLAIM

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a(____).

6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. Supporting Documents: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. Acknowledgement: Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and copy of this proof of claim form.

This Space is for Court Use Only

WR Grace BF.28.110.5494
00007021
SR=520

Date: 3/25/03

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Shana Dwyer (signature) Shana Dwyer Supervisor, Cust acct.

REC'D MAR 27 2003

ADDENDUM TO PROOF OF CLAIM FILED BY
NORFOLK SOUTHERN RAILWAY COMPANY

On April 2, 2001 (the "Petition Date"), W.R. Grace & Co. and its affiliated debtors (collectively referred to herein as the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. 101 *et seq*.

Prior to the Petition Date, on or about December 15, 1980, Southern Railway Company, and W.R. Grace & Co. entered into an agreement (the "Right-of-Way Agreement") pursuant to which W.R. Grace & Co. was permitted to occupy and use portions of a railroad right-of-way with respect to its kaolin manufacturing business located in Natka, South Carolina. A copy of the Right-of-Way Agreement is attached hereto as Exhibit A.

On or about December 15, 1980, Southern Railway Company and W. R. Grace & Co. entered into another agreement pursuant to which Southern Railway Company would operate an industrial railroad track to serve W. R. Grace's kaolin manufacturing business (the "Track Agreement"). A copy of the Track Agreement is attached hereto as Exhibit B.

On or about November 7, 1983, Southern Railway Company and W.R. Grace & Co. entered into an agreement which supplements the Track Agreement (the "November 1983 Agreement") and provides for Southern Railway Company's operation of an additional 477 feet in industrial track. A copy of the November 1983 Agreement is attached hereto as Exhibit C.

On or about October 3, 1990, Southern Railway Company and W.R. Grace & Co.-Conn, formerly W.R. Grace & Co., entered into a supplemental agreement pursuant to which Southern Railway Company granted W.R. Grace & Co.-Conn the right or license to construct, maintain and use an overhead loading structure with retractable loading spout across and over Southern Railway Company's industrial track (the "September 1990 Agreement"). A copy of the

September 1990 Agreement is attached hereto as Exhibit D. The Right-of-Way Agreement, the Track Agreement, the November 1983 Agreement and the September 1990 Agreement are all collectively referred to herein as the "Agreements").

On or about July 8, 1998, Lester F. Kirkland, Jr. commenced a personal injury lawsuit in the State Court of Bibb County, Georgia styled *Lester F. Kirkland, Jr. v. Norfolk Southern Railway Company*, Civil Action No. 45273 (the "Kirkland Action"). A copy of the Kirkland Action is attached hereto as Exhibit E. On several occasions, Norfolk Southern Railway Company ("Norfolk Southern"), as successor-in-interest to Southern Railway Company, sought to have the Debtors participate in, and assume the handling of, the Kirkland Action as provided in the indemnification provisions set forth in the Agreements. Despite Norfolk Southern's requests, the Debtors declined to participate in the Kirkland Action and/or to indemnify Norfolk Southern in that regard.

On or about March 21, 2001 the jury in the Kirkland Action returned a verdict in favor of the plaintiff, and against Norfolk Southern, in the amount of $1,924,500.00, with interest thereon at the legal rate as provided by law and costs of such action. A copy of the Jury Verdict and Judgment is attached hereto as Exhibit F. On or about July 2, 2001, the parties settled the Kirkland Action for the sum of $1,500,000.00 (the "Kirkland Settlement"). Norfolk Southern paid the Kirkland Settlement on or about July 6, 2001. A copy of the Satisfaction of Judgment entered on the docket in the Kirkland Action is attached hereto as Exhibit G. In its defense of the Kirkland Action, Norfolk Southern incurred fees and expenses in the amount of $61,664.66.

Norfolk Southern asserts any and all claims it has or may have against the Debtors under the following agreements: the Right-of-Way Agreement, the Track Agreement, the November 1983 Agreement and the September 1990 Agreement. These claims include, but are not limited

to, those amounts that Norfolk Southern has incurred as a result of, and in the defense of, the Kirkland Action.

In addition, Norfolk Southern is in the business of providing, among other things, freight services for the transportation of various goods (the "Transportation Services"). As set forth in the Statement of Charges attached hereto as Exhibit H, for the period from August 16, 2000 through April 2, 2001, Norfolk Southern provided the Debtors with Transportation Services in the amount of $20,415.52 for which it has not been paid. Accordingly, Norfolk Southern has a claim against the Debtors in the amount of $20,415.52.

Finally, as set forth in the invoices attached hereto as Exhibit I, the Debtors are indebted to Norfolk Southern for (i) expenses incurred by Norfolk Southern on the Debtors' behalf for environmental clean up by Ferguson Harbour at Chattanooga, Tennessee and (ii) track scale testing. Accordingly, Norfolk Southern has a claim against the Debtors in the amount of $2,102.00.

By this proof of claim, Norfolk Southern also asserts its right to setoff the amounts owed by the Debtors to Norfolk Southern against any claim that may be brought against Norfolk Southern by the Debtors, the Debtors in possession, any trustee or any estate representative.

Norfolk Southern also expressly asserts and reserves all other rights, including, without limitation, (i) the right of recoupment, (ii) any other defenses to any cause of action, (iii) to amend this claim, and (iv) to assert this claim or any portion of it against any other Debtor if a basis to do so is subsequently discovered. To the extent that these claims are used defensively, as a right of setoff, Norfolk Southern asserts that such claims are secured claims.

All notices with respect to this proof of claim should be sent as directed on the proof of claim form with a copy to:

POTTER ANDERSON & CORROON LLP
Laurie Selber Silverstein
Monica Leigh Loftin
Hercules Plaza – 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000

PA&C 576035

# Exhibit A

Form 626 (4-4-77)

THIS AGREEMENT, made between
SOUTHERN RAILWAY COMPANY, a Virginia corporation,

hereinafter styled COMPANY; and
~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ [handwritten initials]
W. R. Grace & Co., a Connecticut Corporation,
hereinafter styled LICENSEE;

W I T N E S S E T H:

THAT the PARTIES HERETO agree as follows:

1. COMPANY, in consideration of the covenants of Licensee, hereby grants unto Licensee the right to occupy and use for the purpose or purposes hereinafter mentioned.

A. One parcel(~~s~~) of the right of way or property of Company at NATKA, South Carolina, having an area of 13,193 (square feet) (~~acres~~), more or less, the location and dimensions of which are substantially as shown in blue outline on print of Drawing No. TB-80-0185, dated June 27, 1980, ~~xxxxxxxxxxxxxxxxxxxxxx~~ xxxxxxxxxxxxxxxxxxxxxxxxxx, hereunto annexed and made a part hereof; TOGETHER with the right to maintain thereon, at Licensee's sole cost and expense, a portion of an existing warehouse building, with two appurtenant overhead canopies, a shed, and a cyclone fence with two double swing gates therein, all located substantially as shown on said annexed print; which said warehouse building, canopies, shed, fence and gates shall not become fixtures upon the realty but shall remain the property of Licensee and shall be removed from the premises upon termination of this agreement. Said canopies and said shed being hereinafter sometimes together referred to as "Facility".

~~B. The ______ of Company, or use of ______ square feet, more or less, therein, at ______, the location and dimensions of said structure of Company or of the area therein to be occupied by Licensee hereunder, being substantially as shown in ______ outline on print of Drawing No. ______, dated ______, revised or last revised ______, hereunto annexed and made a part hereof; TOGETHER with the right~~

Company reserves unto itself, and its permittees, the permanent right to maintain, operate, renew or reconstruct upon, under or over said premises, any existing pipe, electric transmission, telephone, telegraph, and signal lines, or any other facilities of like character, Licensee hereby agreeing that this agreement is subject to any or all such rights and uses; Company hereby further reserving unto itself the right to enter upon said premises at any and all times for the purpose of operating, maintaining, reconstructing or relocating such existing track or tracks as may be located on said premises. The privilege herein granted is subject also to such rights as the owners or users thereof may have to use any road or highway, or portion thereof, which may be located upon or which may traverse said premises.

2. Licensee will use said premises for mining and manufacturing plant in connection with the Kaolin manufacturing business of Licensee.

3. Licensee will pay unto Company the rent or sum of ONE HUNDRED ------------ DOLLARS ($100.00) per annum, payable annually, in advance, beginning as

2883-227

of the effective date hereof. If Licensee shall default in the payment of rental hereunder for a period of 30 days after the same shall be due, a service charge in the amount of 1/2 of 1% of such rent for each month or portion thereof that the same shall remain unpaid shall be charged to Licensee. Licensee will pay such service charge together with rental due hereunder.

4. Licensee will use said premises for the purposes aforesaid and for no other purpose. This license is a personal privilege to Licensee and shall not be assigned without the written consent of Company; nor shall Licensee, except with such consent, permit said premises to be used for any purpose by any other person.

5. Licensee will pay all taxes, licenses or other charges assessed or levied upon the property of or business conducted by Licensee upon said premises of Company, or against Company by reason of the location of such property or business of Licensee upon said premises.

6. Licensee will not construct or install upon said premises any buildings, structures or improvements unless specifically permitted hereby or by written consent of Company. Any buildings, structures or improvements erected by Licensee on said premises, if permitted hereby, shall be substantially constructed or installed, maintained and used in such manner as not to interfere with the operation and maintenance of the railroad of Company, shall be kept in good repair and presentable condition, shall be located as described herein or shown on the attached print, and shall not be relocated upon Company premises except with the written consent of Company. Buildings or structures of Licensee, if permitted hereunder, shall have roofs of metal or other non-combustible material to reduce fire risks. Licensee agrees to keep said premises in clean and sanitary condition, free of waste, trash, or unsanitary or inflammable matter, and to prevent the posting of advertising bills or signs upon said premises, except the usual business sign of Licensee.

7. Licensee will not permit smoking within any building of Company occupied by Licensee, and will post and maintain in a conspicuous place, or places, within said premises a sign or signs, reading "NO SMOKING ALLOWED", or words of similar import.

8. If the premises occupied hereunder by Licensee consists of a building or other structures of Company, or space therein, Licensee

(a) accepts the premises in their present condition; it being agreed that all maintenance and repairs needed to keep the premises in as tenantable condition as at present shall be made by the Licensee at Licensee's sole cost and expense, the term "premises" as used in this subparagraph to include, without limitation, air conditioning, heating, sprinkler systems, plumbing, wiring facilities and other equipment or facilities which may be furnished by Company and employed in the use and occupancy of the premises; and that Company shall have no obligation to perform any maintenance or to make any repair or replacement with respect to the premises except those required to be made to the roofing, foundations, and outside walls (exclusive of windows, doors and facilities attached to or adjacent to the outside walls such as loading docks). It is further agreed that Licensee in fulfilling the obligations assumed by Licensee herein shall make provision for the immediate repair and maintenance of all doors, windows, or other facilities comprising the premises which serve to protect the premises from the elements, damage by vandalism or other causes, and that where any such repair or maintenance is not or is not considered by Licensee to be the responsibility of Licensee, Licensee shall notify Company immediately of the need for such repair and maintenance, Licensee failing in either respect, to be liable to Company for all damage resulting. Company shall have no obligation to furnish Licensee any water, heat, light or other public utilities for use by Licensee in Licensee's occupation and use of said premises, and all facilities for supplying light, water, heat and other public utilities required by Licensee in connection with Licensee's use of said premises shall be of character and design approved by Company and shall be installed and maintained therein at the expense of Licensee, and in accordance with the requirements of Company as to proper installation and construction; Licensee agreeing to pay all expenses and charges for such utilities and to install separate meters necessary in connection therewith.

(b) will not make any alterations in, additions to or improvements to said

2883-227

Form 626

premises, or the appurtenances thereof, of any kind whatsoever, without the written consent of Company being first obtained. All alterations of or additions to the electric light or power wires or fixtures upon said premises which may be made by Licensee with the consent of Company shall be made in strict accord with the requirements of the National Electrical Code and at the expense of Licensee; and

(c) will, while in possession hereunder, comply, and cause its agents and employees to comply, with all such reasonable rules and regulations as may be prescribed by Company looking to the prevention of fires and compliance with insurance contracts and policies. Licensee will promptly comply with any requirements of any insurance inspector of Company looking to the enforcement of said rules and regulations, and will use its best efforts at all times for the prevention of fires; the insurance inspector of Company to have the right at all reasonable times to enter said premises for the inspection thereof.

9. At its own expense, Licensee shall maintain said premises in condition, and occupy and use the same in such manner as may be necessary, to meet all requirements of Federal, State, and local safety and health, environmental protection, and sanitation laws and regulations, and shall at its own expense make any and all corrections or additio to the leased premises that may be necessary to bring them into compliance with the aforesaid laws and regulations which may apply to the use and occupancy of said premises by Licensee.

10. The liability of the parties to this agreement, as between themselves, for death, personal injury and property loss and damage, which occurs by reason of, or arises out of, or is incidental to, the use or occupancy by Licensee of the property covered by this agreement, shall be determined in accordance with the following provisions:

(a) Licensee shall be solely responsible for, and shall bear all cost, expense and liability resulting from loss of or damage to property by fire;

(b) Licensee shall be solely responsible for, and shall bear all cost, expense and liability resulting from death, personal injury, and loss and damage to property, caused solely by the negligence of Licensee, or of the agents or employees of Licensee, or by the violation by Licensee or its agents or employees of the terms of this agreement, or by the negligence of Licensee concurring with the negligence of a third party;

(c) Except as provided in subparagraph (a) above, Company shall be solely responsible for and shall bear all cost, expense and liability resulting from death, personal injury, and property loss and damage, caused solely by the negligence of Company, or of the agents or employees of Company, or by the negligence of Company concurring with the negligence of a third party;

(d) Except as provided in subparagraph (a) above, Company and Licensee shall be jointly responsible for and bear equally all cost, expense and liability resulting from death, personal injury and property loss and damage caused by their joint and concurring negligence;

(e) Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto;

(f) Knowledge on the part of Company of a continuing violation of the terms of this agreement by Licensee shall constitute neither negligence nor acquiescence on the part of Company, and shall in no event relieve Licensee of any of the responsibilities imposed upon Licensee hereunder; and

(g) The term "Company", as used in this paragraph, shall include not only Company specifically named in the first sentence of this agreement, but also all of the corporate affiliates of Company so named.

11. (a) In connection with the use of the premises covered by this agreement

2883-227

Form 626

Licensee agrees to observe and be bound by the rules of the Company with respect to standard clearances for all railroad tracks located on or adjacent to the premises covered by this agreement; that is to say, the Licensee agrees to maintain and preserve an overhead space of 22 feet measured perpendicularly from the top of the rail (except that overhead clearance where wire lines extend over said track shall be such as may be prescribed by the Company) and a space 20 feet in width, measured 10 feet on each side from the center line of said track; provided, however, that the side clearance of 10 feet must be increased one and one-half (1-1/2) inches for every degree of curvature, which space shall be kept clear of any obstruction whatever, including but not limited to all structures, facilities or property of the Licensee which are or may be placed or erected above or parallel to said track.

(b) Notwithstanding anything contained in this agreement, and irrespective of any joint or concurring negligence of Company, Licensee shall assume sole responsibility for and shall indemnify, save harmless and defend Company from and against all claims, actions, or legal proceedings arising, in whole or in part, from the failure of Licensee to comply with any clearance requirements set forth in this agreement. In this connection, it is specifically understood that knowledge on the part of Company of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve Licensee of its obligations to indemnify Company for losses and claims resulting from any such violation.

12. In the event that the whole or any part of the premises occupied by Licensee hereunder shall be taken for any purpose under the power of eminent domain, Licensee shall not be entitled to share in any award resulting from any such taking, nor shall Licensee have any claim against the Company for any expense which may be incurred by Licensee as a result of such taking or as a result of termination of this agreement by reason of such taking, as hereinafter provided. In the event that the taking shall be of the whole of the property herein occupied by Licensee or of such part as shall render said premises untenantable for the uses at such time made of the premises by the Licensee, then this agreement and all rights and interests acquired hereunder shall terminate as of the date of the vesting of title to the property in the condemning authority, and in no event shall Licensee have any claim for the value of any unexpired period of this agreement.

13. Company may terminate this agreement at any time by 30 days' written notice to Licensee of election so to do, and if Licensee shall default in the payment of rentals, or violate any other covenants herein, Company may terminate this agreement by 10 days' written notice to Licensee of election so to do; service of such notice to be made either (a) by delivering a copy of the notice to Licensee, or (b) by mailing the same to or leaving it at the last known address of Licensee and posting in any conspicuous place upon said premises. Licensee may also terminate this agreement by 30 days' written notice to Company of election so to do. Upon the termination of this agreement, in any manner, Licensee will vacate said premises of Company, remove all property (including structures, if any) of Licensee therefrom, and surrender possession of said premises to Company in as good condition as they were in prior to construction or placing of said property thereupon, and, in default thereof, Company may, in addition to any other legal remedy it may have, at its election (a) remove the property of Licensee from and restore the condition of said premises of Company, at the expense of Licensee, or (b) subject to notice as hereinafter provided, take possession of any property left on said premises by Licensee and dispose of the same by sale or otherwise for the purpose of applying the proceeds thereof against unpaid rental or to other payments due pursuant to the terms of this agreement, or for other purposes as hereinafter mentioned; except that if said property so left on said premises by Licensee has no value, in the judgment of Company, or cannot be conveniently sold, the same may be disposed of in such manner as Company may determine to relieve itself of the burden of caring for such property; provided, however, that prior to the sale or other disposition of such property Company shall notify, or attempt to notify, Licensee of Company's intent so to sell or dispose of such property. If this agreement shall be terminated by Company it agrees, upon written

demand by Licensee, to refund the unearned portion of any rent paid in advance; provided, however, that Company's obligation to refund unearned rental shall be conditioned upon the fulfillment of all of the obligations of Licensee under the terms of this agreement. The terms and provisions of this paragraph shall survive the termination of this agreement.

14. This agreement shall take effect as of the 1st day of June 19 80.

15. Licensee will maintain and renew, at its sole cost, the two double swing gates across the industrial track on said premises at the locations indicated on said annexed print said gates to be of such design and specification as may be prescribed by Company, to be equipped outside, and to be constructed in such manner as to provide, when opened an unobstructed space on each side of the center line of said track of not less than ten feet and a total clearance of not less than twenty feet. Licensee shall also provide a substantial device on each side of said track to which the wings of said gates may be fastened and made stationary parallel, or substantially parallel, with said track when railroad equipment is moving through the gateways; each of said devices to be so arranged that when the wings of said gates are fastened thereto the distance between the side of each wing and the center lin of said track will not be less than ten feet in the clear.

16. Notwithstanding any other provisions of this agreement, Licensee will assume full responsibility for the safe and proper maintenance and use of said gates, and, except for loss, damage or injury caused solely by the negligence of Company, Licensee will indemnify and save harmless Company, and any associated, controlled or affiliated corporation, from and against the consequences of any property loss or damage, loss of life or personal injury whatever accruing from or by reason of the construction, maintenance or use of said gates or by reason of the presence of the same across said track, whether or not negligence of Company may have contributed to such loss, injury or damage.

17. Licensee will construct, and maintain said Facility at all times during the life of this agreement, at its sole cost and expense, in strict accord with plans and specifications (if any) shown and noted on said annexed print and such other specifications as may be reasonably prescribed by Company, and, moreover, in all respects in accordance with requirements of Company; it being understood that the work of constructing and maintaining said Facility shall, at all times during its progress, be subject to the inspection and supervision, and upon its completion to the approval, of the duly authorized representative of Company.

18. Licensee will maintain said Facility at all times during the life of this agreement in such condition that said Facility or the use thereof by Licensee shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track, or endanger life or limb of employees of Company or other persons on or about said track.

19. Said Facility shall be maintained at the location indicated upon said annexed print, and shall not be relocated without the consent, in writing, of Company.

20. Licensee proposes to construct, maintain and use said Facility with full cognizance of the risk of loss of life, personal injury and property loss or damage which may be caused by or result from railroad operations on said industrial track at the location of said Facility, or which may accrue from or by reason of the construction, installation, maintenance, presence of use of said Facility by Licensee; and Licensee covenants that said Facility shall be constructed, maintained and used solely at the risk of Licensee, and the neither Company nor any associated controlled or affiliated corporation, shall assume any responsibility in the premises; Licensee hereby specifically agreeing, notwithstanding any other provision of this agreement, to indemnify and save harmless Company and any associate, controlled or affiliated corporation, from and against the consequences of any and all such loss, injury or damage, whether or not negligence of Company may have caused or contributed to such loss, injury or damage.

21. Notwithstanding the provisions of Article 11 of this agreement, the clearances for said industrial track, as to the existing structures of Licensee shown and depicted on said annexed print, may be limited or restricted to the dimensions shown on said print, provided Licensee shall place and maintain, at its own cost and expense, warning signs, satisfactory to Company, at conspicuous places on each of said structures where

standard clearances do not obtain to the effect that such structures will not clear man on side or on top of car.

Notwithstanding any other provisions of this agreement, Licensee shall indemnify and save harmless Company, and any associated, controlled or affiliated corporation, from and against the consequences of any loss of life, personal injury or property loss or damage which may result from or be attributable to any limited or restricted clearances for said industrial track, whether or not negligence of Company may have caused or contributed to such loss, injury or damage.

IN WITNESS WHEREOF the parties hereto have executed these presents in duplicate, each part being an original, this 15th day of December, 19 80.

In presence of:

[signature]

As to Company.

SOUTHERN RAILWAY COMPANY,

By [signature]

Vice President.

In presence of:

D. K. Crawford

As to Licensee.

W. R. GRACE & CO., ~~XXXXXXXXXXXXXXXXXXXX~~ [handwritten initials]

By [signature]

Vice-President.

JWH

DAC:jat
7-16-80
33458-1

2883-227



CANOPY
PLANT
18.9
7.5'
7.5'
SECTION A-A
SCALE 1" = 10'
AB-21
TO AIKEN
NO. 1
CANOPIES OVER TRACK
SHED
CYCLONE FENCE
(22-2)
SOU. R/W
WAREHOUSE
GATES
10' CLEARANCE
PLANT
W.R. GRACE COMPANY
NOTES :
SOU. RY. OWNS AND MAINTAINS TRACK NO. 22-2 FROM P.S STA. 0+00 TO STA. 1+43 AND FROM C.P. STA. 15+27 TO P.S. STA. 16+78 = 294 T.F. SHOWN RED.
INDUSTRY OWNS AND MAINTAINS TRACK FROM STA. 1+43 TO STA. 15+27 = 1338.4 T.F. SHOWN GREEN
GATES ACROSS TRACK SHOWN ORANGE
ENCROACHMENT BY W.R. GRACE COMPANY SHOWN
AREA = 13193 S.F. ±



AIKEN CO. S.C.
V-36b/6
FRAME CANOPY ROOF
10.4' x 7.6'
WAREHOUSE
SECTION B-B
SCALE 1" = 10'
AB-21
TO TRENTON
SOU. R/W
SOU. MAIN TRK
SHED
CYCLONE FENCE
GATES
10' CLEARANCE
PLANT
W.R. GRACE COMPANY
INS TRACK NO. 22-2 FROM P.S
AND FROM C.P. STA. 15+27 TO
SHOWN RED.
INS TRACK FROM STA. 1+43 TO
SHOWN GREEN
ACE COMPANY SHOWN BLUE
REV. DATE BY REVISION DESCRIPTION
SOUTHERN
RAILWAY SYSTEM
OFFICE OF A.V.P. M.W.&S. ATLANTA, GA.
NATKA, S.C.
ENCROACHMENT BY AND TRACK SERVING
W.R. GRACE COMPANY
FILE NO. 107-3-7978
VAL.MAP 36b/6
M.P. AB-21
DO NOT SCALE THIS DRAWING FOR DIMENSIONS NOT GIVEN

# Exhibit B

(Rev. 4-1-75)

THIS AGREEMENT, made between
SOUTHERN RAILWAY COMPANY, a Virginia corporation, its successors and assigns,

hereinafter styled Railroad, party of the first part; and
~~XXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX~~ Amd 1974
W. R. Grace & Co., a Connecticut Corporation,

hereinafter styled Industry, party of the second part;

W I T N E S S E T H:

THAT the PARTIES HERETO agree as follows:

A. Railroad will————————operate, to afford Industry facilities for the receipt and shipment of carload freights of Industry over the lines of Railroad in accordance with lawfully published tariffs, an industrial track described as follows:

A double-ended side track, at NATKA, South Carolina, 1678 feet, more or less, in length, measured between the switch points thereof, located substantially as shown in red and green on print of Drawing No. TB-80-0185, dated June 27, 1980, annexed hereto and made a part hereof. Said double-ended side track being hereinafter referred to as "track" or "industrial track".

Railroad, moreover, hereby grants unto Industry the right or license to construct, maintain and use (a) two double swing gates across said industrial track; (b) two overhead canopies over said industrial track; and (c) a shed over said industrial track; all at the locations shown on said annexed print. Said overhead canopies and said shed being hereinafter sometimes together referred to as "Facility".

B. Said track is to be————————operated upon and subject to the terms and conditions set out in Exhibit "A" hereto annexed and made a part hereof.

This agreement shall be effective as of the 1st day of June, 1980. Either party hereto may terminate this agreement by sixty ( 60 ) days' written notice to the other of election so to do.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in duplicate each part being an original, as of the 15th day of December, 1980.

In presence of:
[signature]
As to Railroad.

SOUTHERN RAILWAY COMPANY,
By [signature]
Vice President.

In presence of:
D. K. Crawford
As to Industry.

W. R. GRACE & CO.
~~XXXXXXXXXXXXXXXXXXXXXX~~ Amd 1974
By [signature] JWH
Vice President.

JMJ:jat 7-30-80
33458

2f (rev. 3-7-78)

EXHIBIT "A"

1.  Industry will acquire and hereby guarantees to Railroad full right and lawful authority to maintain and operate any portion of said industrial track which may be located beyond the limits of the right of way of Railroad, or upon or across any public highway.

2.  Title to the rails, materials and fixtures in the portion of said track extending between survey stations 1 + 43 and 15 + 27 thereon, is vested in Industry, and title that portion of said industrial track extending from the southerly switch point thereof to survey station 1 + 43 thereon and that portion of said track extending from survey station 15 + 27 thereon to the northerly switch point thereof, is and shall remain vested in Railroad. Railroad shall have entire control of said track and the operation thereof, and may use the same as well for the business of third persons, not parties hereto, as for that of Industry; provided that such use of said portion of track owned by Industry for the benefit of third persons shall not unreasonably interfere with the business of Industry.

3.  Industry will, at the cost and expense of Industry, maintain the portion of said industrial track owned by Industry, as aforesaid, in good condition and repair and in all respects in accordance with the reasonable requirements of Railroad looking to the safe and convenient operation of engines and cars on said track; it being understood that Railroad will maintain the portion of said track owned by Railroad, as aforesaid. Upon request of Industry, Railroad will assist Industry in locating a qualified railroad contractor to perform, for the account of Industry, that portion of the maintenance work for which Industry is responsible under this paragraph; provided, that Railroad shall not be responsible for the performance of any such contractor to perform such maintenance work shall relieve Industry of Industry's primary obligation to maintain its portion of said track.

4.  Industry agrees, except as to the existing structures shown and depicted on said annexed print, to observe and be bound by the rules of Railroad for standard clearances; that is to say, Industry agrees to maintain and preserve an overhead space of 22 feet measured perpendicularly from the top of the rail (except that overhead clearance where wire lines extend over said track shall be such as may be prescribed by Railroad) and a space 20 feet in width, measured 10 feet on each side from the center line of said track (except that side clearances where platforms, and doorway for track entering building, are involved shall be such as may be prescribed by Railroad), provided, however, that all side clearances for said track must be increased one and one-half (1-1/2) inches for every degree of curvature therein, which space shall be kept clear of any obstruction whatever including, but not limited to, all structures, facilities or property of Industry which are or may be placed or erected above or parallel to said track; provided, however, that as to said existing structures where standard clearances do not obtain, the clearances for said track may be limited or restricted to the dimensions shown on said annexed print; provided, further that Industry shall place and maintain, at its cost and expense, warning signs, satisfactory to Railroad, at conspicuous places on each of said structures to the effect that such structures will not clear man on side or on top of car.

Notwithstanding any other provision of this agreement, Industry shall indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any loss of life, personal injury or property loss or damage which may result from or be attributable to any limited or restricted clearances for said industrial track, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.

5.  The liability of the parties to this agreement, as between themselves, for death, personal injury and property loss and damage, which occurs by reason of, or arises out of, or is incidental to, the construction, operation, maintenance, use, presence or removal of the track covered by this agreement and the right of way therefor, shall be determined in accordance with the following provisions:

(a)  Industry shall be solely responsible for, and shall bear all cost, expense and liability resulting from loss of or damage to property by fire;

(b)  Industry shall be solely responsible for, and shall bear all cost, expense and liability resulting from death, personal injury, and loss and damage to property, caused solely by the negligence of Industry, or of the agents or employees of Industry, or by the violation by Industry or its agents or employees of the terms of this agreement, or by the negligence of Industry concurring with the negligence of a third party;

(c)  Except as provided in subparagraph (a) above, Railroad shall be solely responsible for and shall bear all cost, expense and liability resulting from death, personal injury, and property loss and damage, caused

2f (rev. 3-7-78)

solely by the negligence of Railroad, or of the agents or employees of Railroad, or by the negligence of Railroad concurring with the negligence of a third party;

(d) Except as provided in subparagraph (a) above, Railroad and Industry shall be jointly responsible for and shall bear equally all cost, expense and liability resulting from death, personal injury, and property loss and damage, caused by their joint and concurring negligence;

(e) Notwithstanding anything contained in this agreement, and irrespective of the sole, joint, or concurring negligence of Railroad, Industry shall assume sole responsibility for and shall indemnify and save harmless and defend Railroad from and against all claims, actions, or legal proceedings arising, in whole or in part, from the failure of Industry to comply with any clearance requirements set forth in this agreement. In this connection it is specifically understood that knowledge on the part of Railroad of a violation of any such clearance requirements, whether such knowledge is actual or implied, shall not constitute a waiver and shall not relieve Industry of its obligations to indemnify Railroad for losses and claims resulting from any such violation;

(f) Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto;

(g) Knowledge on the part of Railroad of a continuing violation of the terms of this agreement by Industry shall constitute neither negligence nor acquiescence on the part of Railroad, and shall in no event relieve Industry of any of the responsibilities imposed upon Industry hereunder; and

(h) The term "Railroad", as used in this paragraph, shall include not only Railroad specifically named in the first sentence of this agreement, but also all of the corporate affiliates of Railroad so named.

6. Cars shall not be moved to or from said industrial track except by Railroad. Industry will provide and furnish, at its own cost and expense, and keep ready for use at all times in a convenient place, a metal sign (or signs) at least 12 inches by 15 inches, reading "STOP"—"Men at Work", the letters in the word "STOP" to be at least four (4) inches high, and the letters in the words "Men at Work" at least two (2) inches high, and the color of which shall be white with blue background, which said sign(s) shall be used (1) whenever work is being done or activity performed in or about any car or series of cars, either by men and/or equipment; (2) whenever any car or series of cars is being loaded or unloaded either by hand or by the use of any mechanical means or device without regard to whether said mechanical means or device is connected to said car or series of cars; (3) whenever any work is being done or activity performed on or about the tracks themselves by men and/or equipment without regard to whether any car or series of cars is located on the tracks at the time the work is being done or the activity is being performed; and (4) at any other time when Industry employees and/or Industry equipment are engaged in such activity that the movement of cars could cause injury or damage to employees and/or equipment. If Industry loads or unloads to or from rail tank cars placed on said track by Railroad, said sign(s) shall be of the size and coloring specified herein, provided, however, that said sign(s) shall read "STOP"—"Tank Car Connected" and shall be maintained in place until the car is disconnected from any mechanical means or device used in connection with the loading or unloading thereof, including, but not limited to, any hose, pipe, conveyor belt or coupling of any type; it being understood and agreed that tank cars must not be left connected to any such mechanical means or device, as above defined, except when loading or unloading is going on and while a competent person is present and in charge. If the commodity loaded or unloaded into or from said rail tank cars is defined as hazardous or flammable in the regulations of the United States Department of Transportation, it is further understood and agreed that (a) brakes must be set and wheels blocked on all cars being loaded or unloaded and (b) smoking is to be prohibited in loading or unloading areas and "No Smoking" sign(s), satisfactory to Railroad, are to be posted in conspicuous locations approved by Railroad in loading or unloading areas, said sign(s) to be provided at the cost and expense of Industry. Industry agrees to keep the premises around and about said track clean

and free of undergrowth and dead grass, and waste paper, trash or any other flammable or unsightly matter.

If any of the aforesaid situations are present necessitating the use of the aforesaid sign(s), the placement of which shall be solely the responsibility of Industry, said sign(s) shall be conspicuously displayed to give necessary warning as follows:

(a) On each end of the car involved or on the outermost end of the end car in a series of cars; or,

(b) Alternatively on the tracks beyond the end of the car involved or on the tracks beyond the outermost end of the end car in a series of cars; or,

(c) If no car or series of cars is involved on the tracks themselves at a location beyond the limits of any work being done or activity performed;

(d) Provided, that if the track involved is a "dead end" track sign(s) need only be deployed in the manner stated above to cover the direction from which train movement might occur.

7. Notwithstanding any other provision of this agreement, Industry will, moreover, indemnify and save harmless Railroad, and any associated, controlled, or affiliated corporation, from and against any loss of or damage to any cars of Railroad or cars of other railroad companies in use by Railroad, while being moved by Industry upon said industrial track, and from and against any loss of life, personal injury and any property loss or damage which may occur during or which result from the movement of said cars by Industry, as aforementioned, whether or not negligence on the part of Railroad may have caused or contributed to such loss, damage, injury or death.

8. All carload shipments consigned to Industry for delivery on said industrial track shall be deemed to have been fully and completely delivered as soon as the car containing such shipment shall have been placed on the industrial track and detached from the engine or train by which it was moved. Railroad shall not be liable as common carrier, nor as bailee, for any property loaded into any car on said industrial track until said car is attached or coupled to the engine or train by which it is to be moved from said industrial track towards its destination, or until a bill of lading shall have been issued to Industry therefor, and until said car is so attached or coupled up, or a bill of lading is issued therefor, the said car and its contents shall be deemed and held to be in the possession of Industry so far as liability therefor is concerned.

9. Notwithstanding any other provision hereof, Industry agrees to comply entirely at its own expense with all requirements imposed by any governmental agency, state, federal or local, with respect to clearances, walkways, specification and condition or maintenance of that part of the subject track which is owned or maintained by Industry.

10. The provisions of this agreement shall inure to the benefit of, and shall be binding upon, any other railroad company now operating or which may hereafter operate over or upon the track covered by this agreement, and shall also be binding upon any third party who, as successor or assignee of Industry or with the consent of Industry, may use said track, or who may enter upon the premises served by said track; it being understood and agreed that Industry will promptly furnish to Railroad notice, in writing, of any such use or entry by any such third party. Industry hereby guarantees the strict performance of the terms of this agreement by any such third party until the use of said track by such third party shall have been covered by the execution of an appropriate agreement with Railroad. This contract is not assignable or transferable by Industry except with the written consent of Railroad, signed by an executive officer.

11. Upon the termination of this agreement Railroad may discontinue the operation of said industrial track and remove its property and fixtures therefrom; and Industry shall take up and remove from the right of way or property of Railroad the track materials in any portion of said track owned by Industry and located on Railroad right of way or property, the work of taking up said track materials to be done, if Railroad elects, by the forces

2f (rev. 3-7-78)

of Railroad, but at the expense of Industry. Notwithstanding any other provision hereof, if Industry shall fail to comply with any of its covenants in this agreement contained, Railroad shall have the right forthwith to discontinue operation of said industrial track, without liability to Industry, until Industry shall have complied with all of said covenants.

12. Industry will construct, maintain and renew, at its sole cost, said double swing gates across said track at the location indicated on said annexed print; said gates to be of such design and specification as may be prescribed by Railroad, to be equipped with Railroad's standard switch lock, so applied that said gates may be locked from the outside, and to be constructed in such manner as to provide, when opened, an unobstructed space on each side of the center line of said track of not less than ten feet and a total clearance of not less than twenty feet. Industry shall also provide a substantial device on each side of said track to which the wings of said gates may be fastened and made stationary parallel, or substantially parallel, with said track when railroad equipment is moving through the gateway; each of said devices to be so arranged that when the wings of said gates are fastened thereto the distance between the side of each wing and the center line of said track will not be less than ten feet in the clear.

Notwithstanding any other provisions of this agreement, Industry will assume full responsibility for the safe and proper maintenance and use of said gates; and, except for loss, damage or injury caused solely by the negligence of Railroad, Industry will indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any property loss or damage, loss of life or personal injury whatever accruing from or by reason of the construction, maintenance or use of said gates or by reason of the presence of the same across said track, whether or not negligence of Railroad may have contributed to such loss, injury or damage.

13. Industry will construct, and maintain said Facility at all times during the life of this agreement, at its sole cost and expense, in strict accord with plans and specifications (if any) shown and noted on said annexed print and such other specifications as may be reasonably prescribed by Railroad, and, moreover, in all respects in accordance with the requirements of Railroad; it being understood that the work of constructing and maintaining said Facility shall, at all times during its progress, be subject to the inspection and supervision, and upon its completion to the approval, of the duly authorized representative of Railroad.

14. Industry will maintain said Facility at all times during the life of this agreement in such condition that said Facility or the use thereof by Industry shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track, or endanger life or limb of employees of Railroad or other persons on or about said track.

15. Said Facility shall be maintained at the location indicated upon said annexed print, and shall not be relocated without the consent, in writing, of Railroad.

16. Industry proposes to construct, maintain and use said Facility with full cognizance of the risk of loss of life, personal injury and property loss or damage which may be caused by or result from railroad operations on said industrial track at the location of said Facility, or which may accrue from or by reason of the construction, installation, maintenance, presence or use of said Facility by Industry; and Industry covenants that said Facility shall be constructed, maintained and used solely at the risk of Industry and that neither Railroad, nor any associated, controlled or affiliated corporation, shall assume any responsibility in the premises; Industry hereby specifically agreeing, notwithstanding any other provision of this agreement, to indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any and all such loss, injury or damage, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.

# Exhibit C

THIS SUPPLEMENTAL AGREEMENT, made between

SOUTHERN RAILWAY COMPANY, a Virginia corporation, its successors and assigns, hereinafter styled Railroad, party of the first part; and

W. R. GRACE & CO., a Connecticut corporation, hereinafter styled Industry, party of the second part;

W I T N E S S E T H: That

WHEREAS, under the terms and conditions of that certain written agreement (hereinafter referred to as "Agreement") between the parties hereto dated December 15, 1980, Railroad operates an existing industrial track at NATKA, South Carolina to serve the business of Industry; and

WHEREAS, Industry has, at its own cost and expense, constructed an additional industrial track, 477 feet, more or less, in length, springing from said existing industrial track and the parties hereto enter into this supplemental agreement to provide for the operation of said additional industrial track;

NOW, THEREFORE, the PARTIES HERETO agree as follows:

1. Railroad will operate said additional industrial track upon all of the terms and conditions and subject to all of the provisions of said Agreement, as herein modified; the location of said additional industrial track being substantially as shown in red on print of Drawing No. AC-0020-R1, dated March 2, 1983, revised June 26, 1983, annexed hereto and made a part of this supplemental agreement.

2. Industry hereby guarantees to Railroad the right to operate any portion of said additional industrial track which may be located beyond the limits of the right of way of Railroad, or upon or across any public highway.

3. Title said said additional industrial track is vested in Industry and Industry shall maintain the same in all respects in accordance with the provisions of Article 3 of Exhibit "A" of said Agreement.

4. This supplemental agreement shall be effective as of the 1st day of September, 19 83, is supplemental to said Agreement and modifies

2883-228

the same as herein provided but not otherwise; and said Agreement, as herein modified, shall continue in effect until terminated as therein provided.

IN WITNESS WHEREOF, the parties hereto have exeucted this agreement in duplicate, each part being an original, as of the 7th day of November, 19 83.

In presence of:

As to Railroad.

SOUTHERN RAILWAY COMPANY,
By
Vice President.

In presence of:

As to Industry.

W. R. GRACE & CO.,
By
Vice President, Mfg.
Davison Chemical Division

JMJ 8/17/83
33458

2883-228

AIKEN CO., S.C.
CANOPY
PLANT
SECTION A-A
WAREHOUSE
SECTION B-B
AB-21
SHED
PLANT
NOTE:
SOUTHERN
RAILWAY SYSTEM
REDUCED BY 50%
NATKA, SC

2883-228

# Exhibit D

2883-228

THIS SUPPLEMENTAL AGREEMENT, made between

SOUTHERN RAILWAY COMPANY, a Virginia corporation, hereinafter called Railroad; and

W. R. GRACE & CO-CONN., a Connecticut corporation, (formerly W. R. Grace & Co.) hereinafter called Industry; and

W I T N E S S E T H: That

The parties hereto agree that, effective as of the 17th day of SEPTEMBER, 1990, the written agreement dated December 15, 1980, between Railroad and Industry concerning the operation and maintenance of an industrial track 1678 feet in length at NATKA, South Carolina as supplemented by agreement dated November 7, 1983 to provide for an additional track 477 feet in length, (hereinafter together referred to as "Agreement") is hereby modified in the following manner, but not otherwise, that is to say:

1. Railroad hereby grants unto Industry the right or license to construct, maintain and use an overhead loading structure with retractable loading spout, hereinafter called "Facility," across and over an industrial track of Industry; the location of said Facility being substantially as shown on print of Drawing No. AD-0102, dated June 14, 1990, annexed hereto and made a part hereof.

2. Industry will construct and maintain said Facility at all times during the life of said Agreement, at its sole cost and expense, in strict accord with plans and specifications (if any) shown and noted on said annexed print and such other specifications as may be reasonably prescribed by Railroad, and, moreover, in all respects in accordance with the requirements of Railroad; it being understood that the work of constructing and maintaining said Facility shall, at all times during its progress, be subject to the inspection and supervision, and upon its completion to the approval, of the duly authorized representative of Railroad.

3. Industry will maintain said Facility at all times during the life of said Agreement in such condition that said Facility or the use thereof by Industry shall not be or become an obstruction to, or interfere with, the safe and proper maintenance of said industrial track, or railroad operations upon said track, or endanger life or limb of employees of Railroad or other persons on or about said track.

4. Said Facility shall be maintained at the location indicated upon said annexed print, and shall not be relocated without the consent, in writing, of Railroad.

5. Industry proposes to construct, maintain and use said Facility with full cognizance of the risk of loss of life, personal injury or property loss or damage which may be caused by or result from railroad operations on said industrial track at the location of said Facility, or which may accrue from or by reason of the construction, installation, maintenance, presence or use of said Facility by Industry; and Industry covenants that said Facility shall be constructed, maintained and used solely at the risk of Industry, and that neither Railroad, nor any associated, controlled or affiliated corporation, shall assume any responsibility in the premises; Industry hereby specifically agreeing, notwithstanding any other provisions of said Agreement, to indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation, from and against the consequences of any and all such loss, injury or damage, whether or not negligence of Railroad may have caused or contributed to such loss, injury or damage.

6. This agreement is supplemental to said Agreement and modifies the same as herein provided, but not otherwise, and said Agreement, as herein modified, shall continue in effect until terminated as therein provided.

RECEIVED
SEP 24 1990

IN WITNESS WHEREOF, the parties hereto have executed this supplemental agreement in duplicate, each part being an original, as of the 3rd day of OCTOBER, 1990.

In presence of:

[signature]
As to Railroad

SOUTHERN RAILWAY COMPANY,
By

[signature]
Vice President - Transportation

In presence of:

[signature]
As to Industry

W. R. GRACE & CO.,
By

[signature]
Emil Eichhorn
Executive Vice President

LHG:prj
2327c
33458
9-11-90

O/H LOADING P'FORM
WITH RETRAC. LOAD. SPOUT
MAIN TRK.
4+85±
RAIL CAR LOADING P'FORM
'B-B'
NO SCALE
14'
50'
TO AIKEN
MAIN TRACK
PROPOSED PAVED DRAIN
SWALE
TRK. FOR W. R. GRACE
DITCH
V/S 22+28 = 0+00
P.S. TRACK TO W.R. GRACE & CO.
R/W LINE
12'
WALKWAY GRATING
NOTE:
MAIN TRK.
'A - A'
TYPICAL - NO SCALE

AIKEN COUNTY, SOUTH CAROLINA
SOUTHERN RAILWAY COMPANY
V/S 36b/6
R/W LINE
TO NORTH AIKEN
FENCE
50'
15+40 DIV. OF M
PRO. ASPHALT PAVING
EXISTING BUILDING
NOTE: ALL NEW DRAINAGE FEATURES ARE NOTED
SOUTHERN RAILWAY SYSTEM
CAROLINA DIVISION
NATKA, SOUTH CAROLINA
TRACK SERVING
W.R. GRACE COMPANY
1" = 50'

# Exhibit E

**IN THE STATE COURT OF BIBB COUNTY**
**STATE OF GEORGIA**

RECEIVED
STATE COURT OF
BIBB COUNTY GEORGIA

1998 JUL -3 A 8:45

[signature]
CLERK STATE COURT

LESTER F. KIRKLAND, JR.,
Plaintiff
v.
NORFOLK SOUTHERN RAILWAY COMPANY, a corporation,
Defendant

JURY TRIAL DEMANDED

CIVIL ACTION FILE NO. 45223

**COMPLAINT FOR DAMAGES**

COMES NOW Lester F. Kirkland, Jr., Plaintiff in this action, and files his Complaint for Damages against Defendant as follows:

**I. PARTIES, JURISDICTION, VENUE**

1. The Defendant, Norfolk Southern Railway Company, is a Virginia corporation which does business in Bibb County, Georgia and has done business in Bibb County, Georgia at all times referred to herein. The Defendant, Norfolk Southern Railway Company, is subject to the jurisdiction of this Court, venue is proper, and it may be served with Summons and Complaint as allowed by law.

2. The Defendant, Norfolk Southern Railway Company, is a common carrier by railroad engaged in the business of operating a railroad in interstate commerce for hire for the purpose of carrying freight in interstate commerce. The Defendant, Norfolk Southern Railway Company, conducts a significant portion of its railroad operations in Bibb County, Georgia.

3. The Plaintiff, at all times referred to herein, was an employee of the Defendant and was acting within the line and scope of his employment for the Defendant. The Plaintiff's duties of

employment for the Defendant were in furtherance of interstate commerce or directly or closely affected interstate commerce.

4. This action is brought pursuant to the provisions of the Federal Employers Liability Act, 45 U.S.C., §51, et seq.

## II. FACTS

5. On January 23, 1998, the Plaintiff was employed as a conductor on a train being operated by the Defendant, Norfolk Southern Railway Company, near Warrenville, South Carolina. As part of the Plaintiff's duties, he was attempting to release a handbrake on a railroad car in the course of switching operations. The handbrake was in a defective condition and would not release when the Plaintiff applied it properly. As the Plaintiff attempted to release the defective handbrake, he slipped in a slick and dangerous substance which had been allowed to cover the rail car on which the handbrake was located. When he slipped, he fell from the rail car and landed on the ground suffering severe and permanent injuries to his back and hand.

6. Following his injuries, the Plaintiff continued to try to perform his job. On January 26, 1998, he was again attempting to apply a handbrake on a rail car which was located at the Aiken Depot, near Aiken, South Carolina. This car was covered with a clay like slick and dangerous substance. While attempting to apply this handbrake, the Plaintiff slipped and reinjured his back and aggravated the previous injury which he had suffered to his back.

## III. COUNT ONE (JANUARY 23, 1998 INJURY)

7. All of the Plaintiff's injuries and damages were caused, in whole or in part, by the negligence of the Defendant, its agents, servants or employees while acting within the line and scope of their employment for said Defendant, or by reason of a defect or insufficiency due to the

Defendant's negligence in its railroad cars, work practices, maintenance practices, and safety practices at the time and place where the Plaintiff suffered his injuries.

IV. COUNT TWO (JANUARY 23, 1998 INJURY)

8. All of the Plaintiff's injuries and damages were caused, in whole or in part, by the negligent failure of the Defendant to use reasonable care to provide to the Plaintiff a reasonably safe place for the Plaintiff to perform his work and labor for the Defendant.

V. COUNT THREE (JANUARY 23, 1998 INJURY)

9. All of the Plaintiff's injuries and damages were caused, in whole or in part, by a violation by the Defendant railroad of that Act of Congress commonly referred to as the Safety Appliance Acts and more specifically the Handbrake Act, 49 U.S.C. §20302, in that the defendant railroad allowed to be operated on its line of road a railroad car which was not equipped with a safe, secure, and efficient handbrake.

VI. COUNT FOUR (JANUARY 26, 1998 INJURY)

10. All of the Plaintiff's injuries and damages were caused, in whole or in part, by the negligence of the Defendant, its agents, servants or employees while acting within the line and scope of their employment for said Defendant, or by reason of a defect or insufficiency due to the Defendant's negligence in its railroad cars, work practices, maintenance practices, and safety practices at the time and place where the Plaintiff suffered his injuries.

VII. COUNT FIVE (JANUARY 26, 1998 INJURY)

11. All of the Plaintiff's injuries and damages were caused, in whole or in part, by the negligent failure of the Defendant to use reasonable care to provide to the Plaintiff a reasonably safe place for the Plaintiff to perform his work and labor for the Defendant.

## VIII. DAMAGES

12. The Plaintiff avers that as a result, in whole or in part, of the Defendant's negligence, he has suffered and seeks to recover for the following special injuries and damages:

(a) Past lost wages and benefits;

(b) Future lost wages and benefits;

(c) Permanent impairment of his ability to earn a living;

(d) Past medical expenses;

(e) Future medical expenses.

13. The Plaintiff avers that as a result, in whole or in part, of the Defendant's negligence, he has suffered and seeks to recover for the following general injuries and damages:

(a) Past physical pain and mental anguish;

(b) Future physical pain and mental anguish;

(c) Permanent physical disability;

(d) Inability to carry out and enjoy the usual and normal activities of life.

14. The Plaintiff seeks to recover a sum that will fully and fairly compensate him for his special and general damages. Because of the severity of his injuries, the Plaintiff expects such fair compensation to be in excess of Two Million Dollars ($2,000,000.00).

## IX. JURY DEMAND

15. The Plaintiff demands a trial by a jury.

**WHEREFORE**, the Plaintiff prays for a trial by jury, that summons issue, that judgment be entered in favor of him and against the Defendant and that the following relief be granted:

(a) That the Plaintiff be awarded special and general damages in an amount to fully and fairly compensate him for his injuries;

(b) That the cost of this action be assessed against the Defendant;

(c) That this Court grant such other and further relief as it deems just and proper.

BURGE & WETTERMARK

By: ______________________
James H. Wettermark
Georgia Bar Number 750417

2300 SouthTrust Tower
Birmingham, Alabama 35203
(205) 251-9729

# Exhibit F

STATE COURT OF BIBB COUNTY
STATE OF GEORGIA

LESTER E. KIRKLAND, JR.

PLAINTIFF

VS. CIVIL ACTION NO. 45273

NORFOLK SOUTHERN RAILWAY COMPANY

DEFENDANT

JUDGMENT

This action came on for trial before the Court and a jury, Honorable William P. Adams, presiding, and the issues having been tried and the jury having rendered it's verdict;

IT IS ORDERED AND ADJUDGED that the Plaintiff, Lester E. Kirkland, Jr. recover of the Defendant, Norfolk Southern Railway Company.the sum of $1,924.500.00, with.interest thereon at the legal rate as provided by law and costs of this action

Dated at Macon, Bibb County, Georgia, this 21st day of March, 2001.

JUDGE, STATE COURT OF BIBB COUNTY

Plaintiff's Attorney

FILED IN OFFICE:
This 21st Day of March, 2001

Deputy Clerk

IN THE STATE COURT OF BIBB COUNTY
STATE OF GEORGIA

LESTER E. KIRKLAND, JR.,

Plaintiff,

vs. : CIVIL ACTION NO. 45273

NORFOLK SOUTHERN RAILWAY COMPANY,

Defendant.

---

JURY VERDICT

We, the jury, find for the:

( X ) Plaintiff in the amount of $ 1,924,500 .00

*OR*

( ) Defendant.

This 21st day of March, 2001.

Terry L. Jenkins
Foreperson

FILED IN OFFICE
21st DAY OF March 2001
[signature]
Deputy Clerk

# Exhibit G

RECEIVED
STATE COURT OF
BIBB COUNTY GEORGIA
2001 JUL 11 AM 11:33
CLERK STATE COURT

IN THE STATE COURT OF BIBB COUNTY
STATE OF GEORGIA

LESTER E. KIRKLAND, JR.,

Plaintiff,

vs.

NORFOLK SOUTHERN RAILWAY COMPANY,

Defendant.

CIVIL ACTION
NO. 45273

**PLAINTIFF'S SATISFACTION OF JUDGMENT AND DISMISSAL OF ACTION**

The above styled matter having been settled by and between the parties, the Clerk is hereby authorized to mark "Satisfied of Record" the judgment entered in this case dated March 21, 2001 and to dismiss this action upon payment of costs by Defendant.

This 6th day of July, 2001.

JAMES H. WETTERMARK
Attorney for Plaintiff

Burge & Wettermark
2300 SouthTrust Tower
420 North 20th Street
Birmingham, AL 35203-3204

# Exhibit H

**STATEMENT OF CHARGES DUE NORFOLK SOUTHERN RAILWAY COMPANY**
**FOR THE ACCOUNT OF W R GRACE**
**AS COVERED BY BILLS LISTED BELOW:**

**UN 792**
**CUSTOMER NUMBER 003600**
Accruing Station: Various

| Freight Bill # | FB Date | Waybill # | Waybill Date | Amount Billed | Amount Paid | Correction | Net Amt. Due |
|---|---|---|---|---|---|---|---|
| **Pre-petition** | | | | | | | |
| 6229247419 | 8/16/00 | 901213 | 8/15/00 | $970.00 | $0.00 | $0.00 | $970.00 |
| 6318590884 | 11/13/00 | 901541 | 11/10/00 | $250.00 | $0.00 | $0.00 | $250.00 |
| 7057520946 | 2/26/01 | 841393 | 2/21/01 | $4,820.35 | $0.00 | $0.00 | $4,820.35 |
| 7071431096 | 3/12/01 | 843174 | 3/6/01 | $4,923.70 | $0.00 | $0.00 | $4,923.70 |
| 7082184937 | 3/23/01 | 844720 | 3/16/01 | $4,889.25 | $0.00 | $0.00 | $4,889.25 |
| 7091351826 | 4/2/01 | 888455 | 1/25/01 | $4,562.22 | $0.00 | $0.00 | $4,562.22 |
| **Total** | | | | **$20,415.52** | **$0.00** | **$0.00** | **$20,415.52** |

# Exhibit I

Page: 1 Document Name: untitled

```
                          Print
D494           * *  Display / Print / Fax / Memo Invoice  * *        GBQ34
+---------------------------------------------------+ Screen 1    of 4    +
                         Norfolk Southern Corporation
Invoice: 1102001401  Date: 2001-02-08  Account: QG8252      Bill: M12703
Bill to: W R GRACE COMPANY
         ATTN  MR MARTIN BOURQUIN
         DAVISON CHEMICAL DIVISION
         4000 NORTH HAWTHORN STREET
         CHATTANOOGA, TN 37406
Description of Work:
         TO BILL FOR EXPENSES INCURRED BY NORFOLK SOUTHERN FOR
         ENVIROMENTAL CLEAN-UP BY FERGUSON-HARBOUR
         AT CHATTANOOGA, TN 7-21-00
         NS BILL # M12703     BJA

Please PAY this Amount:          $1,202.00

F1=Help                     F3=High Keys
           F8=Forward                    F10=MainMenu F11=PrevMenu F12=PrevScrn
                                                         06/05/01 12:52:04
```

Date: 6/5/2001 Time: 12:54:23 PM

Page: 1 Document Name: untitled

```
                          Print
D494          * *  Display / Print / Fax / Memo Invoice  * *       GBQ34
+-----------------------------------------------------+ Screen 1    of 3    +
                      Norfolk Southern Corporation
Invoice: 1103005270  Date: 2001-03-22  Account: QG8250      Bill: M13100
Bill to: W. R. GRACE COMPANY
         ATTN:  DON RABENSBURG
         4000 NORTH HAWTHORNE ST.
         CHATTANOOGA, TN 37405
Description of Work:
         TRACK SCALE TESTING
         CHATTANOOGA, TN
         M13100 (NH)(337-9) (QG-8250) (FC)
         NS TARIFF 8002-A

 Please PAY this Amount:             $900.00

F1=Help                     F3=High Keys
             F8=Forward                  F10=MainMenu F11=PrevMenu F12=PrevScrn
                                                        06/05/01 12:52:19
```

Date: 6/5/2001 Time: 12:54:36 PM