## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KJC) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: May 13, 2015, at 11:00 a.m.** |
| | ) **Objection Deadline: April 27, 2015 at 4:00 p.m.** |

## MOTION OF REORGANIZED DEBTOR TO (A) ENFORCE INJUNCTION ISSUED IN CONNECTION WITH THE FIRST AMENDED JOINT PLAN OF REORGANIZATION AND (B) COMPEL MIRACON TECHNOLOGIES, LLC TO DISMISS WITH PREJUDICE ITS LAWSUIT AGAINST W. R. GRACE & CO. – CONN.

W. R. Grace & Co. – Conn. ("Grace – Conn."), one of the above-captioned

reorganized debtors (collectively, the "Debtors"), files this motion – pursuant to sections 105,

524 and 1141 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

Code") – to enforce the discharge injunction issued in connection with confirmation of the First

Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of W. R. Grace

& Co., et al. (as modified and ultimately consummated, the "Plan"), by compelling Miracon

Technologies, LLC ("Miracon") to dismiss, with prejudice, a lawsuit it filed against

Grace - Conn. and others in the United States District Court for the Eastern District of Texas (the

"Lawsuit").  In support of this Motion, Grace – Conn. respectfully represents as follows:

### Introduction

1.      On January 9, 2015, Miracon sued CRH, PLC, Oldcastle, Inc., Oldcastle

Materials, Inc., Staker and Parson Companies d/b/a Jack B. Parson Companies, Lonnie James

Gray, Douglas Bedingfield and Grace – Conn. in the United States District Court for the Eastern

---

[1]      The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

District of Texas. Miracon asserted against all Defendants causes of action for patent

infringement and various torts. Against Grace – Conn., Miracon asserted causes of action for

patent infringement, tortious interference, unjust enrichment and conspiracy. In particular,

Miracon asserts that Grace – Conn. tortiously interfered with Miracon's contractual relationships

with Staker and Parson Companies d/b/a Jack B. Parson Companies ("Staker & Parson"). Those

contractual relationships ended in 2007.

2.    For patent infringement, as a matter of law, Miracon can seek damages

back to January 9, 2009. Miracon's tort claims arose in 2004-2007.

3.    W.R. Grace & Co. ("Grace") and Grace – Conn. commenced these

bankruptcy proceedings on April 2, 2001. This Court initially confirmed the Plan on January 30,

2011. On January 30, 2012, the United States District Court for the District of Delaware

(Buckwalter, S.J.) (the "District Court") likewise confirmed the Plan, and approved findings of

fact and conclusions of law recommended by the Bankruptcy Court. Various appeals were taken

from the confirmation orders and the last appeal was resolved in December 2013. The Plan

became effective on February 3, 2014 and the bar date for filing administrative expense claims

was May 5, 2014. Although Miracon's claims arose during these bankruptcy proceedings,

Miracon filed no proof of claim, no request for payment of administrative expense claim or any

other pleading seeking to preserve a claim against Grace – Conn.

4.    Miracon's commencement of the Lawsuit against Grace – Conn. is a

violation of the discharge injunction issued in connection with confirmation of the Plan. That

injunction enjoins the commencement of an action, the employment of process, or an act, to

collect, recover or offset any debt discharged by operation of law under sections 524(a) and 1141

of the Bankruptcy Code, which includes any debt that arose on or before February 3, 2014, the

effective date of the Plan.  Based on the causes of action Miracon has asserted in its Complaint,

Miracon seeks to recover from Grace – Conn. actual damages, enhanced damages, punitive

damages, attorneys' fees, costs and interest, all of which are "claims" under the Bankruptcy

Code and all of which arose before the effective date of the Plan.

5.      Miracon also seeks preliminary and permanent injunctive relief in the

Lawsuit.  Indeed, Miracon has filed a Motion for Preliminary Injunction.  These claims likewise

constitute claims that were discharged pursuant to the Plan and the orders confirming the Plan,

because Miracon has an alternative right (which it is pursuing in the Lawsuit) to the payment of

damages in the form of a reasonable royalty.

6.      Grace – Conn. did not send direct notice of the general bar date, the

confirmation hearing or the administrative expense claims bar date to Miracon, because among

other things, Miracon had not asserted any claims against Grace – Conn. (or any other Debtor),

filed any pleadings in the chapter 11 cases or entered an appearance in the cases, and thus was

unknown to Grace – Conn. (and the other Debtors).  As of the effective date of the Plan and the

date on which notice of the administrative expense claims bar date was given, Grace – Conn. had

not received, or become aware of, any claims Miracon might assert against it.  Indeed,

Grace - Conn. was not aware that Miracon was asserting any claim against it until Miracon filed

its Complaint on January 9, 2015.

7.      Grace – Conn. and the other Debtors extensively published notice of the

general bar date, the hearing on confirmation of the Plan and the effective date, including the bar

date for submission of administrative expense claims, during their chapter 11 cases.  In

accordance with the order setting the bar date, the Debtors published notice of the general bar

date (the "Claims Bar Date Notice") in a variety of newspapers, magazines and other

publications in the Summer of 2002, including the following:

        a.      The Wall Street Journal (national edition);

        b.      The New York Times (national edition);

        c.      USA Today (national edition);

        d.      Parade;

        e.      USA Weekend;

        f.      Newsweek;

        g.      TV Guide;

        h.      Sports Illustrated;

        i.      Business Week;

        j.      Forbes;

        k.      Fortune;

        l.      Money;

        m.      National Geographic;

        n.      People;

        o.      Reader's Digest;

        p.      Time; and

        q.      U.S. News and World Report.

The affidavit describing the scope of the publication of the Claims Bar Date Notice is attached

hereto as Exhibit A.

        8.      In March and April, 2009, Grace – Conn. and the other Debtors also

published extensive court-approved notice of the confirmation hearing, including the discharge

injunction provisions of the Plan and this Court's confirmation order (the "Confirmation Hearing

Notice"). The affidavits describing the scope of the publication of the Confirmation Hearing

Notice are collectively attached hereto as Exhibit B.  As set forth therein, the Debtors published the Confirmation Hearing Notice in each of the following publications.

    a.    <u>The Wall Street Journal</u> (national edition);

    b.    <u>The New York Times</u> (national edition);

    c.    <u>USA Today</u> (national edition);

    d.    <u>Mealey's Litigation Report:  Asbestos</u>;

    e.    <u>Andrews' Asbestos Litigation Reporter</u>;

    f.    <u>Parade</u>;

    g.    <u>USA Weekend</u>;

    h.    <u>Newsweek</u>;

    i.    <u>TV Guide</u>;

    j.    <u>Sports Illustrated</u>; and

    k.    <u>U.S. News and World Report</u>.

9.    Finally, in accordance with the confirmation order, the Debtors on February 21 and 24, 2014, published notice of the effective date (the "Effective Date Notice") in the following publications:

    a.    <u>The Wall Street Journal</u> (national edition);

    b.    <u>The New York Times</u> (national edition); and

    c.    <u>USA Today</u> (national edition).

The verifications describing the extent of the publication of the Effective Date Notice are collectively attached hereto as Exhibit C.  The Effective Date Notice included notice of the administrative expense claims bar date, which was set for May 5, 2014.

**Relief Requested**

10.     As set forth below, even if the claims Miracon alleged against

Grace - Conn. in the Lawsuit were valid, which Grace – Conn. denies, such claims are subject to

the discharge injunction issued in connection with the Plan and, therefore, this Court should

enjoin further prosecution of the Complaint against Grace – Conn.  Each of Miracon's alleged

claims arose well prior to the effective date of the Plan and well prior to the bar date for the

submission of administrative expense claims.  In addition, Miracon's alleged claims were

unknown to Grace – Conn. as of the effective date, as reasonably diligent efforts in ascertaining

potential claimants would not have led Grace – Conn. to discover Miracon's claims at any time

during Grace – Conn.'s bankruptcy case.  Under applicable law, Grace – Conn.'s provision of

extensive notice by publication of its bankruptcy proceedings to unknown claimants satisfied due

process.  Miracon never filed a claim, never filed a request for payment of an administrative

expense claim and never filed any other pleading in the Grace chapter 11 cases.  Therefore,

Miracon's claims have been discharged.

**Background**

11.     On April 2, 2001, Grace and Grace – Conn. and 60 affiliated entities

commenced their respective reorganization cases by filing voluntary petitions for relief under

chapter 11 of the Bankruptcy Code.  On February 27, 2009, the Debtors filed the Plan.

12.     Section 8.1 of the Plan provides that "on the Effective Date, all Claims,

Plan Claims and Demands against the Debtors and Debtors in Possession shall be discharged."

Section 8.1 further provides:

> All Entities shall be precluded and forever barred from asserting
> against the Debtors and the Reorganized Debtors, or their assets,
> properties, or interests in property any other or further Claims, Plan
> Claims or Demands based upon any act or omission, transaction, or
> other activity, event, or occurrence of any kind or nature that

occurred prior to the Effective Date, whether or not the facts of or
legal bases therefor were known or existed prior to the Effective
Date, except as expressly provided in this Plan.

Finally, Section 8.1 provides that "[w]ith respect to any debts discharged by operation of law

under Bankruptcy Code §§ 524(a) and 1141, the discharge of the Debtors operates as an

injunction against the commencement or continuation of an action, the employment of process or

an act, to collect, recover or offset any debt as a personal liability of the Debtors . . . ."

13.    On January 31, 2011, this Court issued its Order Confirming Plan of

Reorganization as Modified Through December 31, 2010, Issuing Channeling Injunction Under

11 U.S.C. § 524(g) and Adopting Findings of Fact, Conclusions of Law and the Memorandum

Opinion Overruling Objections to the First Amended Joint Plan of Reorganization.

Section VI-A-1 of the Recommended Findings of Fact, Conclusions of Law and Order

Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through

December 31, 2010, provides for the discharge of all Claims, Plan Claims and Demands against

the Debtors.  Specifically, Section VI-A-1 provides that "[a]ll Entities shall be precluded and

forever barred from asserting against the Debtors and the Reorganized Debtors, or their assets,

properties or interest in property any other or further Claims, Plan Claims or Demands based

upon any act or omission, transaction or other activity, event or occurrence of any kind or nature

that occurred prior to the Effective Date, whether or not the facts of or legal basis therefor were

known or existed prior to the Effective Date, except as expressly provided in the Plan."  To

enforce Section VI-A-1's discharge provision, Section VI-A-2 provides for the following

discharge injunction:

With respect to any debts discharged by operation of law under
§§ 524(a) and 1141 of the Bankruptcy Code, the discharge of the
Debtors operates as an injunction against the commencement or
continuation of an action, the employment of process, or an act, to
collect, recover, or offset any such debt as a personal liability of

the Debtors, whether or not the discharge of such debt is waived;
provided, however, that the obligations of the Reorganized Debtors
under the Plan and the other Plan Documents to be entered into on
the Effective Date are not so discharged.

14.    On January 30, 2012, the District Court issued an Order confirming the

Plan in accordance with the terms of the Joint Plan and attendant Plan documents, and approving

the recommended findings of fact and conclusions of law expressed in the Bankruptcy Court's

recommended confirmation order and the Bankruptcy Court's Memorandum Opinion Overruling

Objections to the Plan.

15.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334, Article 10 of the Plan and its Order.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).

### Pertinent Facts

16.    Grace – Conn. is engaged in the specialty chemicals and materials

businesses, operating on a worldwide basis, predominantly through three operating business

segments:  Grace Catalysts Technologies, which manufactures and sells catalysts and related

products and technologies used in refining, petrochemicals and chemical manufacturing; Grace

Materials Technologies, which manufactures and sells packaging technologies; and Grace

Construction Products, which manufactures and sells specialty building materials and specialty

construction chemicals, including chemical admixtures for concrete, building materials, sealants

and coatings.

17.    Grace – Conn. is a wholly-owned subsidiary of Grace.  Grace is a global

holding company that conducts substantially all of its business through Grace – Conn.

Grace - Conn, which was incorporated in 1899, owns substantially all of the Grace assets,

properties and rights in the United States.

18.     In the Lawsuit, Miracon alleges it developed "a unique state-of-the-art air entrainment system that unequivocally enhances the quality of concrete." (Complaint ¶ 16).[2] Miracon further alleges that its "[a]ir entraining admixtures" improve the durability of concrete exposed to cycles of freezing and thawing and deicer chemicals." (Complaint ¶ 17).

19.     In 2003, Miracon alleges it was approached by Defendant Lonnie James Gray and by Rod Higley, at a trade show.  Gray and Higley worked for Defendant Staker & Parson, which provided ready mix concrete to its customers.  (Complaint ¶ 29).  Miracon further alleges that from 2003 to 2007, Miracon sought to convince Staker & Parson and the remaining Defendants other than Grace – Conn. to license Miracon's air entrainment technology and to distribute Miracon's chemical admixture product.  (Complaint ¶¶ 29-63).  Miracon has not alleged that it ever tried to license its technology or sell its product to Grace or Grace - Conn.

20.     In 2004, Miracon alleges it entered into a Letter of Intent and three agreements with Staker & Parson:

(A)     A Letter of Intent stating the parties' intention to enter into "a proprietary relationship within the geography that was covered by Staker & Parson." (Complaint ¶ 31).

(B)     A License Agreement pursuant to which Staker & Parson licensed Miracon's technology.  (Complaint ¶ 32).

(C)     A License and Supply Agreement, which provided that Miracon retained all proprietary and intellectual property rights in its technology and Staker & Parson would not reverse engineer, decompile, disassemble or copy Miracon's technology.  (Complaint ¶ 34).

(D)     A Distribution Agreement pursuant to which Staker & Parson agreed to promote Miracon's product throughout its network of locations and affiliates (including Defendants Oldcastle, Inc. and Oldcastle Materials, Inc.).

---

[2] A copy of Miracon's Complaint is attached hereto as Exhibit D.

21.    Miracon has not alleged that it ever attempted to license or did license its air entrainment technology to Grace – Conn. or that it ever attempted to sell or did sell its chemical admixture product to Grace – Conn.  Rather, in contrast to Miracon, Grace – Conn. was a supplier to Staker & Parson of various admixture products for "conventional" methods of producing ready mix concrete.  (Complaint ¶ 56).

22.    During 2005 and 2006, Miracon alleges that it began to communicate with Defendant Douglas Bedingfield, Staker & Parson's Quality Control Manager.  (Complaint ¶ 50). Miracon further alleges that "[d]espite great reviews and impressive performances of the Miracon technology, Bedingfield showed reluctance in recommending and promoting the Miracon product" and "sabotaged several of Miracon's testing either by not providing the complete details of the field and laboratory batches or by other similar methods." (Complaint ¶¶ 51-52).  Moreover, Miracon alleges that Bedingfield faulted Miracon for problems caused by test materials provided by Staker & Parson and, in or about 2006, Bedingfield's faulty design of tests of Miracon's product "led to poor results and to Bedingfield's desired conclusion that the Miracon product [was] too expensive and therefore could not be utilized."  (Complaint ¶¶ 53-54).

23.    Miracon alleges that Bedingfield was motivated to take these actions by his "reported close affiliation" with Craig Nelson of Grace – Conn., who had been selling to Staker & Parson various admixture products used with conventional methods of producing concrete.  (Complaint ¶ 55).

24.    Miracon also alleges that – on two separate occasions in 2004 – Nelson induced Bedingfield to tell Miracon that if Miracon wanted to enter the concrete market, Miracon would have to offer kickbacks to Nelson.  (Complaint ¶ 57).

25.     Finally, Miracon alleges that, regardless of the reason, Staker & Parson stopped testing Miracon's product in its laboratories and plants in early 2007 and Miracon last shipped its chemical admixture product to Staker & Parson in or about April 2007. (Complaint ¶¶ 40, 44).  Miracon asserts it has not heard from Staker & Parson or its parent company or any of its other affiliates since then.  (Complaint ¶ 41).  In short, Miracon alleges "Staker & Parson successfully eliminated Miracon from its competition pool."  (Complaint ¶ 62). Miracon has not alleged that it made any effort to find out why.

### Authority for the Requested Relief

26.     "It is axiomatic that a court possesses the inherent authority to enforce its own orders."  Protarga, Inc. v. Webb (In re Protarga, Inc.), 329 B.R. 451, 479 (Bankr. D. Del. 2005 (citing In re Cont'l Airlines, Inc., 236 B.R. 318, 325-26 (Bankr. D. Del. 1999), aff'd, 279 F.3d 226 (3d Cir. 2002)).  Section 105 of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions and "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders."  Protarga, 329 B.R. at 479 (internal quotations and citations omitted); 11 U.S.C. § 105(a).  "Section 1141 of the Bankruptcy Code provides generally that a confirmed plan of reorganization binds the debtor and all creditors affected by its terms."  Cont'l Airlines, 236 B.R. at 327 n.11 (citing 11 U.S.C. § 1141).

27.     Here, the Plan and the confirmation orders discharged all claims arising on or before the effective date, (Plan § 8.1; Bankruptcy Court confirmation order § VI-A-1; District Court confirmation order), and, as explained below, there is no question that all of Miracon's claims for relief constitute dischargeable claims.

28.     The Bankruptcy Code defines administrative expenses as the "actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  In Reading Co.

v. Brown, 391 U.S. 471, 88 S.Ct. 1759 (1968), the Supreme Court held that a post-petition tort

claim against a debtor (for the negligence of the receiver) constituted an "actual and necessary"

expense of the administration of the estate under § 503.  In Caradon Doors and Windows, Inc. v.

Eagle-Picher Indus., Inc., 447 F.3d 461 (6th Cir. 2006), the Court of Appeals held that a

post-petition patent infringement claim was an administrative expense.

29.     Section 1.1(4) of the Plan defines "Administrative Expense Claim" as

follows:

> **"Administrative Expense Claim"** shall mean (i) any Claim
> constituting a cost or expense of administration in the Chapter 11
> Cases, on or after the Petition Date but prior to the Effective Date,
> under Bankruptcy Code §§ 503(b), 507(a)(1), 507(b) or
> 1114(e)(2), including:  (a) any actual and necessary costs and
> expenses of preserving the estates of the Debtors, (b) any actual
> and necessary costs and expenses of operating the businesses of the
> Debtors, (c) any indebtedness or obligation incurred or assumed by
> the Debtors (including any executor contracts of the Debtors
> assumed pursuant to Bankruptcy Code § 365 by order of the
> Bankruptcy Court or the Plan) in connection with the conduct of
> their businesses or for the acquisition or lease of property or the
> rendition of services, and (d) any allowed compensation or
> reimbursement of expenses awarded or allowed under Bankruptcy
> Code §§ 330(a), 331 or 503, and (ii) any fees or charges assessed
> against the estates of the Debtors under 28 U.S.C. § 1930.

30.     Section 2.1.1(b)(2) of Grace's Plan provides the following with respect to

Administrative Expenses Claims other than Professionals' Fees:

> *Other Administrative Expense Claims.*  Unless a request for the
> payment of an Administrative Expense Claim previously was filed
> with the Court, all requests or applications for payment of
> Administrative Expense Claims other than Professionals' fees
> described in Section 2.1.1(b)(1) (**"Other Administrative Expense
> Claims"**) must be filed with the Court and served on the
> Reorganized Debtors, pursuant to the procedures specified in the
> Confirmation Order and the notice of entry of the Confirmation
> Order, no later than 90 days after the Effective Date (the
> **"Administrative Claims Bar Date"**).  Any Holder of an
> Administrative Expense Claim that is required to file and serve a
> request for payment of such Administrative Expense Claim and

that does not file and serve such a request within the time established by this Section 2.1.1(b)(2) will be forever barred from asserting such Administrative Expense Claim against the Debtors, the Reorganized Debtors, or their respective property and such Administrative Expense Claim will be deemed discharged as of the Effective Date. Objections to Other Administrative Expense Claims must be filed with the Court and served on the requesting party within 270 days after the Effective Date; *provided, however,* that such objection deadline may be extended by the Court upon request of the Reorganized Debtors.

31.    Miracon has never filed any administrative expense claim or other claim in the bankruptcy proceedings of Grace – Conn. or any other Debtor.

32.    The confirmation orders specifically approve the Plan's releases, provide a discharge and issue an injunction enforcing the discharge and releases granted pursuant to the Plan. The discharge injunction and the confirmation orders are "critical elements" of the Debtors' fresh start, and "[i]t is essential that creditors respect these court orders and permit debtors to benefit from the rights and protections to which they are entitled." Cont'l Airlines, supra, 236 B.R. at 330. Where creditors ignore these court orders, the bankruptcy court may enforce their terms. Id.

### Miracon's Lawsuit Violates the Plan and the Confirmation Orders

33.    The Plan and confirmation orders provide that the rights afforded under the Plan and the treatment of claims, Plan claims, demands and equity interests "shall be in exchange for and shall discharge all Claims, Plan Claims and Demands" against the Debtors as of the effective date of the Plan. The Plan and the confirmation orders also provide that "[w]ith respect to any debts discharged by operation of law under Bankruptcy Code §§ 524(a) and 1141, the discharge of the Debtors operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the Debtors."

34.     Here, there can be no question that Miracon's claims for relief in the Complaint constitute dischargeable claims and, therefore, that the filing of the Complaint was a violation of the discharge injunction.  Under the Plan, the term claim means a "claim" as defined § 101(5) of the Bankruptcy Code against one of the Debtors.  (Plan § 1.1(75)).  Section 101(5) of the Bankruptcy Code provides that a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5).  Miracon's claims for relief in the Lawsuit seek actual damages, enhanced damages, punitive damages, attorneys' fees, costs and interest, all of which are unquestionably Claims.

35.     Furthermore, all of Miracon's requests for preliminary and permanent injunctions likewise constitute claims that were discharged pursuant to the Plan and confirmation orders because Miracon has an alternative right to the payment of money damages.  The United States Supreme Court, in Ohio v. Kovacs, 469 U.S. 274 (1985), held that an equitable remedy in the form of an injunction ordering the remediation of a site constituted a dischargeable claim because the state had an alternative right to payment and the injunction "had been converted into an obligation to pay money, an obligation that was dischargeable in bankruptcy."  Id. at 283. The Third Circuit Court of Appeals has specifically held that an equitable remedy will "give rise to a right of payment," and therefore be deemed a "claim," when the payment of monetary damages is an alternative to the equitable remedy.  Air Line Pilots Assoc. v. Cont'l Airlines, 125 F.3d 120, 133 (3d Cir. 1997) (citing In re Udell, 18 F.3d 403, 407 (7th Cir. 1994) ("[O]ne example of a 'claim' is a right to an equitable remedy that can be satisfied by an 'alternative' right to payment.")).  Here, the Complaint itself seeks damages as an alternative to the requests

for equitable relief, and Miracon's requests for injunctive relief therefore constitute claims

discharged under the Plan and the confirmation orders.

### Miracon's Claims Were Discharged by the Confirmation Orders and the Plan Because They Arose Prior to the Plan's Effective Date

36.     Prior to June 2, 2010, the Third Circuit had followed the so-called

"accrual" test to determine when a claim arises for purposes of a bankruptcy case.  That test was

based on Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co.), 744 F.2d 332 (3d Cir.

1984), in which the Third Circuit  held that a claim arises when the underlying state law cause of

action accrues.  Id. at 337.

37.     On June 2, 2010, in In re Grossman's Inc., 607 F.3d 114 (3d Cir. 2010),

the Third Circuit overruled Frenville and held that "a 'claim' arises when an individual is

exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a

'right to payment' under the Bankruptcy Code."  Id. at 125.  Accordingly, in the Grossman's

case, the Third Circuit determined that the plaintiff's claims for asbestos related personal injuries

arose prepetition at the time the plaintiff purchased the products that allegedly exposed her to

asbestos, even though her injury manifested after the effective date.  Id.

38.     In Wright v. Owens Corning, 679 F.3d 101 (3d Cir. 2012), issued on

May 18, 2012, the Third Circuit explicitly extended the Grossman's "exposure" test to

post-petition, pre-confirmation claims.  Although one of the claimants in Owens Corning held a

post-petition, pre-confirmation claim under the Grossman's test, the Court overruled the

bankruptcy court's decision to discharge that claim on the basis that, at the time the Owens

Corning reorganization plan was confirmed, neither the Grossman's decision nor the Owens

Corning decision existed.  Accordingly, at the time notices of the bankruptcy proceeding and

applicable deadlines in that proceeding were given, the claimant's claim would not yet have arisen under the earlier <u>Frenville</u> accrual test. <u>Id.</u> At 109.

39.     Here, under either the accrual test or the exposure test (the applicable test changed during the course of the Grace chapter 11 cases), Miracon's claims arose prior to confirmation of the Plan. First, under the accrual test, Miracon's claims arose during the Grace - Conn. chapter 11 case because the claims accrued under applicable law during that time.

(A)     A claim for patent infringement accrues on the date a defendant makes, uses, offers to sell or sells any patented invention. <u>See</u>, <u>e.g.</u>, <u>Amer. Med. Sys., Inc. v. Med. Eng'g Corporation</u>, 6 F.3d 1523, 1537-8 (Fed. Cir. 1993). Miracon is suing Grace – Conn. for patent infringement dating back to January 9, 2009 (Miracon actually alleges that infringement occurred earlier but under applicable law it cannot pursue claims that arose more than six years before the Complaint was filed).

(B)     A cause of action for tortious interference with an existing contract accrues when a contract is interfered with and the plaintiff is harmed. <u>Hill v. Heritage Res.</u>, 964 S.W.2d 89, 116 (Tex. App. – El Paso 1997, pet. denied) (citing <u>Atkins v. Crosland</u>, 417 S.W.2d 150, 153 (Tex. 1967)). Miracon alleges that this tortious interference occurred between 2004 - 2007.

(C)     A claim for unjust enrichment (assuming that it is a separate claim and not merely a remedy, an assumption Grace – Conn. does not concede) accrues "when facts come into existence that authorize a claimant to seek a judicial remedy." <u>Terra Nova Sci., LLC v. JOA Oil and Gas Houston, LLC</u>, 738 F.Supp.2d 689, 698 (S.D. Tex. 2010) (quoting <u>Johnson & Higgins of Texas, Inc. v. Konneco Energy, Inc.</u>, 962 S.W.2d 507, 514 (Tex. 1998)). The facts on which this claim is based date back to the same 2004 – 2007 time period.

(D)     A cause of action for conspiracy accrues when a wrongful conspiratorial act causes a legal injury, regardless of when the plaintiff learns of that injury or if resulting damages have yet to occur. <u>Aubrey v. Barlin</u>, 2014 U.S. Dist. LEXIS 63411, at *5 (W. D. Tex. May 7, 2014). Miracon alleges that most of the Defendants' wrongful actions were taken in 2004 – 2006. (Complaint ¶ 229).

40.     Second, under the <u>Grossman's</u> exposure test,  Miracon's claims arose post-petition, pre-confirmation as well.  As is clear from the foregoing description of Miracon's claims, each of the claims alleges "exposure" by Miracon to Grace – Conn. conduct during the 2004 – 2009 time frame.  The Plan did not become effective until February 3, 2014 and the Effective Date Notice, which included notice of the administrative expense claims bar date, was not published until February 21 and 24, 2014.  Accordingly, at the time the Effective Date Notice was published, both <u>Grossman's</u> and <u>Owens Corning</u> were the law in the Third Circuit and, under those authorities, Miracon's claims clearly arose prior to confirmation of the Plan.

### Publication Notice Satisfies Due Process With Respect to Miracon's Claims

41.     "For notice purposes, bankruptcy law divides claimants into two types, 'known' and 'unknown.'"  <u>Chemetron Corp. v. Jones</u>, 72 F.3d 341, 346 (3d Cir. 1995).  Known creditors are entitled to actual written notice, while due process for unknown claimants is generally satisfied through publication notice.  <u>Id.</u>

42.     As described above, Miracon was an unknown claimant at the time of Grace – Conn.'s bankruptcy case and, thus, the Debtors did not send them direct notice of the general bar date, confirmation of the Plan or the effective date of the Plan, including the administrative expense claims bar date.  However, the Debtors' extensive publication of the Claims Bar Date Notice, the Confirmation Hearing Notice and the Effective Date Notice satisfies all due process requirements in order to discharge Miracon's alleged pre-effective date claims.

### The Plaintiffs Were Unknown Creditors

43.     An unknown creditor is an individual "whose interests are either conjectural or future, or although they could be discovered upon investigation, do not in the due course of business come to knowledge [of the debtor]."  <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 317 (1950).  "A creditor's identity is 'reasonably ascertainable' if that

creditor can be identified through 'reasonably diligent efforts.'" <u>Chemetron Corp. v. Jones</u>,

<u>supra</u>, 72 F.3d at 346 (quoting <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 798 n.4

(1983)).  Reasonable diligence does not require a debtor to conduct "'impracticable and extended

searches . . . in the name of due process.'" <u>Id.</u> (quoting <u>Mullane</u>, 339 U.S. at 317).  "To that end,

'[a] debtor does not have a duty to search out each conceivable or possible creditor and urge that

person or entity to make a claim against it.' . . . Efforts beyond a careful examination of a

debtor's own books and records are generally not required." <u>Wright v. Owens Corning</u>, 450 B.R.

541, 556 (W.D. Pa. 2011), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u>, 679 F.3d 101 (3rd Cir. 2012) (citing

<u>Mullane</u>, 339 U.S. at 317 (quoting <u>Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter</u>

<u>Co.)</u>, 125 B.R. 650, 654 (M.D. Fla. 1991)).

      44.    In <u>Owens Corning</u>, the Court found that homeowners who purchased

allegedly defective roofing shingles were unknown creditors because the shingles were

purchased through third-party contractors, and Owens Corning was not sued until after the

conclusion of its bankruptcy case. <u>Owens Corning</u>, <u>supra</u>, 450 B.R. at 556.  In this regard, the

Court stated:

> Plaintiffs do not point to any evidence suggesting how Owens
> Corning, through a reasonably diligent search of its books or
> records, could have discovered plaintiffs' identities prior to
> confirmation of the reorganization plan.  It is impractical to
> suggest Owens Corning search out every conceivable third-party
> contractor who purchased shingles to determine on which homes
> those shingles were installed and discovery the identity of those
> home-owners.

<u>Id.</u>

      45.    Similar to <u>Owens Corning</u>, Grace – Conn. was unaware of Miracon or that

Miracon might have claims against it during the entirety of the bankruptcy proceeding and until

Miracon filed its Complaint on January 9, 2015.

46.     Based upon the lack of any knowledge of Miracon or any potential claims by Miracon, Grace – Conn. possessed no reason to search for Miracon's identity during the course of its bankruptcy case.  Further, it would be unreasonable and impractical for Grace - Conn. to have attempted to identify and provide actual notice to Miracon.

### Debtors Provided More Than Sufficient Publication Notice

47.     Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Wright v. Owens Corning, supra, 679 F.3d at 107 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652 (1953)). In general, constructive notice of bankruptcy bar dates by publication has been held to satisfy the requirements of due process:

> It is well settled that constructive notice of the claims bar date by publication satisfies the requirements of due process for unknown creditors.  Id. at 348.  Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially when supplemented with notice in papers of general circulation in locations where the debtor is conducting business.  Id. at 348; see also City of N.Y. v. N.Y., N.H. & H. R. Co., 344 U.S. 293, 297, 73 S. Ct. 299, 97 L. Ed. 333 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice.  Its justification is difficult at best.  But when the names, interests and addresses of persons is unknown, plain necessity may cause a report to publication.").

White v. Jacobs (In re New Century TRS Holdings, Inc.), 2014 U.S. Dist. LEXIS 115510, at *4-5. (D. Del. August 19, 2014).

48.     The Reorganized Debtors extensively published notice of the General Bar Date, the Plan-confirmation process and the effective date in satisfaction of all due process requirements.  Specifically, the Reorganized Debtors published the Claims Bar Date Notice, the Confirmation Hearing Notice and the Effective Date Notice in each of the national editions of

The Wall Street Journal, The New York Times and USA Today.  The Claims Bar Date Notice

and the Confirmation Hearing Notice were also published in a variety of other publications.  The

Effective Date Notice was published in accordance with the requirements of the Bankruptcy

Court's confirmation order.  See order ¶ X.

49.     Given the broad scope of the Reorganized Debtors' court-approved

publication program, there exists no basis to argue that the publication notice provided by the

Reorganized Debtors to Miracon is insufficient for purposes of satisfying due process

requirements.  Indeed, "[f]or unknown claimants or creditors, it is well established that

'constructive notice of the bar claims date by publication satisfies the requirements of due

process.'"  Owens Corning, supra, 450 B.R. at 556-57 (citations omitted).  And, the Third Circuit

has found that notice in national publications satisfies notice to unknown creditors.  Chemetron

Corp. v. Jones, supra, 72 F.3d at 348. (holding that notice published in the New York Times and

The Wall Street Journal was sufficient to satisfy due process owed to unknown creditors).

### Conclusion

50.     It is clear that the claims asserted in Miracon's Complaint arose prior to

the Plan's effective date.  Miracon was an unknown claimant at the time of the Debtors'

bankruptcy cases and the Debtors' extensive publication of the Claims Bar Date Notice,

Confirmation Notice and Effective Date Notice satisfied all due process requirements with

respect to Miracon.  Notwithstanding the Reorganized Debtors' broad, court-approved

publication notice, Miracon failed to file any claim or request for payment of administrative

expense claim in the bankruptcy cases.  As such, Miracon's claims set forth in Miracon's

Complaint are subject to the discharge injunction of the Plan and the confirmation orders.

51.     Accordingly, Grace – Conn. respectfully requests that the Court enter an

order, in substantially the form attached hereto Exhibit E, enforcing the Plan and confirmation

orders by (a) enjoining Miracon from taking any further actions to prosecute the Complaint or

assert any claims set forth or that could be set forth in Miracon's Complaint against

Grace - Conn. and (b) requiring Miracon, pursuant to sections 105, 524 and 1141 of the

Bankruptcy Code, to dismiss the Lawsuit against Grace – Conn., with prejudice.

### Notice

52.     Notice of this Motion has been given to:  (i) the Office of the United

States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI

Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants

Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG

Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that

requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix)

counsel for Miracon.  In light of the nature of the relief requested, the Reorganized Debtors

submit that no further notice is required.

### No Prior Request

53.     No prior request for the relief sought in this Motion has been made to this

or any other court.

WHEREFORE, Grace – Conn. respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit E, enforcing the discharge injunction issued in connection with confirmation of the Plan.

Dated:  April 9, 2015
       Wilmington, Delaware.

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*James E O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400


- and -

JONES DAY
Gregory M. Gordon (TX 08435300)
2727 North Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

Counsel for the Reorganized Debtors