**EXHIBIT D**

**IN THE UNITED STATED DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MIRACON TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| vs. | § | |
| | § | |
| CRH, PLC, | § | JURY TRIAL DEMANDED |
| OLDCASTLE, INC., | § | |
| OLDCASTLE MATERIALS, INC., | § | |
| STAKER & PARSON COMPANIES d/b/a | § | |
| JACK B. PARSON COMPANIES, | § | |
| LONNIE JAMES GRAY | § | |
| DOUGLAS BEDINGFIELD | § | |
| and W. R. GRACE & CO. - CONN. | § | |
| | § | |
| Defendants. | | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND**
**REQUEST FOR INJUNCTION**

Plaintiff Miracon Technologies, LLC ("Miracon"), files this Original Complaint for patent infringement, injunctive relief, breach of contract, misappropriation of trade secrets, tortious interference with existing contracts, tortious interference with prospective relations, unjust enrichment, fraud, and conspiracy against Defendants, CRH, Plc., Oldcastle, Inc., Oldcastle Materials, Inc., Staker & Parson Companies d/b/a Jack B. Parson Companies, Lonnie James Gray, Douglas Bedingfield, and W.R. Grace & Co. – Conn. (collectively, "Defendants"). Miracon also seeks declaratory judgment with respect to all United States Patents issued to the sole inventor Lonnie James Gray (the "Gray Patents") (1) enjoining Defendants from the unauthorized practice of Miracon's United States Patent No. 6,153,005 ("the '005 Patent"), (2) finding that the Gray Patents are each improvements upon the '005 Patent, (3) finding that, as a matter of law, the Gray Patents cannot be practiced without practicing the '005 Patent, and (4) enjoining Defendants from practicing the Gray Patents.

Miracon alleges as follows:

## THE PARTIES

1. Miracon is the exclusive licensee of the patent-in-suit. Miracon is a Texas limited liability company organized and existing under the laws of the State of Texas, having a principal place of business at 401 S. Sherman Street, Suite 101, Richardson, Texas 75081.

2. Upon information and belief, Defendant CRH, Plc. ("CRH") is an Irish company having its principal place of business at Belgard Castle, Clondalkin, Dublin 22, Ireland. CRH may be served pursuant to the Hague Convention to which the government of Ireland is a signatory country and which governs service of process on corporations organized and existing in signatory countries.

3. Upon information and belief, Defendant Oldcastle, Inc. ("Oldcastle") is a subsidiary of CRH conducting business in the United States. It is registered as a Delaware corporation having a principal place of business at 900 Ashwood Pkwy., Suite 600, Atlanta, GA 30338. Oldcastle does business in the State of Texas and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

4. Upon information and belief, Defendant Oldcastle Materials, Inc. ("Oldcastle Materials") is a subsidiary of Oldcastle. It is registered as a Delaware corporation having a principal place of business at 900 Ashwood Pkwy., Suite 600, Atlanta, GA 30338. Oldcastle does business in the State of Texas and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

5. Upon information and belief, Defendant Staker & Parson Companies, doing business as Jack B. Parson Companies ("Staker & Parson"), is a subsidiary of CRH and an affiliate of Oldcastle. Staker & Parson is the assignee of the Gray Patents, including but not limited to the United States Patent Nos. 7,621,995, 7,670,426, 8,167,997, and 8,871,021. It is registered as a Utah corporation having a principal place of business at 2350 South 1900 West, Ogden, UT

84401. Upon information and belief, Staker & Parson may be served with process by serving its registered agent, Corporation Service Company, 10 E South Temple, Suite 850, Salt Lake City, UT 84133.

6. Upon information and belief, Defendant Lonnie James Gray ("Gray") is an employee of Staker & Parson. Gray may be served with process in person at his place of employment at 1730 North Beck Street, Salt Lake City, UT 84116. In the alternative, Gray may also be served with process in person at his place of residence at 101 West American Avenue, Murray, UT 84107.

7. Upon information and belief, Defendant Douglas Bedingfield ("Bedingfield") is an employee of Staker & Parson. Bedingfield may be served with process in person at his place of employment at 2350 South 1900 West, Ogden, UT 84401.

8. Upon information and belief, Defendant W. R. Grace & Co. - Conn. ("W. R. Grace") is registered as a Connecticut corporation having a principal place of business at 5400 Broken Sound Blvd NW, Suite 300, Boca Raton, FL 33487. Upon information and belief, W. R. Grace may be served with process by serving its registered agent, The Prentice-Hall Corporation System, Inc., 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

9. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §1 *et seq.*

10. The Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

11. In the alternative, this Court has jurisdiction pursuant to 28 U.S.C. §1332 because of the existing diversity of citizenship between the parties and because the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs. The Court's jurisdiction is also proper under 28 U.S.C. §§ 2201 and 2202.

12.    Personal jurisdiction exists generally over the Defendants because the Defendants' contacts with the Eastern District of Texas are significant and pervasive. The Eastern District of Texas is a large and important market for the sale of Defendants' products. Defendants have sales representatives, dealers, and distributors located in the Eastern District of Texas that market, promote, and sell Defendants' products. Defendants have conducted business continuously and systematically in the State of Texas and in this judicial district for many years and continue to conduct that business actively today, which render them essentially at home in the form and can support general jurisdiction.

13.    Venue is proper in this Court under 28 U.S.C. §§ 1391 as well as 28 U.S.C. §1400(b).

14.    Furthermore, Defendant Staker & Parson has consented to venue in the Eastern District of Texas pursuant to the License Agreement between Miracon and Staker & Parson dated January 15, 2004 and the License and Supply Agreement between Miracon and Staker & Parson effective July 30, 2004.

## BACKGROUND

### A. Miracon's Air Entrainment Technology

15.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

16.    Miracon is a small Texas employer with big potential based on the novel technology it has developed over the years.  Miracon was founded in 1999 by Charles and Martha Welker, a husband and wife team who have devoted their time, sweat, and financial resources to developing a unique state-of-the-art air entrainment system that unequivocally enhances the quality of concrete.

17.    Miracon's proprietary technology is comprised of machine, formula, and software. As a result of these inventions, the concrete manufactured using Miracon's technology is more stable, with tested potential for new markets and ground-breaking applications.

18.    Concrete is typically composed of water, hydraulic cement, supplementary cementitious materials, and aggregates. To modify the properties of fresh or hardened concrete, a variety of chemical admixtures may be added to concrete mixtures, included air entraining admixtures. Air entraining admixtures provide important benefits of entrained air in both freshly mixed and hardened concrete and can improve the durability of concrete exposed to cycles of freezing and thawing and deicer chemicals.

19.    The conventional methods of making concrete have proven to be unpredictable and not controllable. The commercially available compositions are not sufficiently stable in cementitious media and the results are often not consistent.

20.    The technology developed by Miracon is unique because, unlike its competitors, it offers a product that solves the many problems related to entrainment of air, while being accessible and very cost effective.

21.    Miracon's innovative product inhibits the factors that contribute to making the entrainment of air a very difficult process with unpredictable end product. Among other advantages, the technology pioneered by Miracon reduces the effects of water damage, ice damage, thermal conductivity and permeability and it improves the slump, the water tightness and the workability of fresh concrete while eliminating or reducing bleeding.

22.    Miracon was the first company to offer a product providing concrete compositions of tailorable and predictable densities, strengths, and other properties that do not have accelerated, unusual, or undesirable characteristics associated with the concrete compositions of the prior art.

23.    On April 16, 1999, a detailed patent application, Application Serial No. 09/293,613, was filed with the United States Patent and Trademark Office ("PTO") describing Miracon's product and methodology.

24.    On November 28, 2000, after full and fair examination, the PTO issued United States Patent No. 6,153,005 titled "Foamed Concrete Composition and Process" ("the '005 Patent"), a copy of which is attached as **Exhibit A**.

25.    The '005 Patent discusses fluorochemical foam stabilizers used to yield foams that are exceptionally stable in cementitious media.  Such stabilized foams are useful as novel ultra-lightweight foam aggregates in concrete compositions of tailorable density or strength.  The '005 Patent also describes methods of making concrete compositions including these foam aggregates.

26.    The '005 Patent is valid and enforceable.

**B.  The Relationship Between Miracon and Defendants**

27.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

28.    After significant technological advances, Miracon made a commitment to use its proprietary and confidential information to develop and commercialize the world's first mechanically produced preformed air entrainment system, for production of concrete.

29.    In 2003, Miracon, still a young company looking to launch its technology in the ready-mix category, participated in a world concrete show where it was approached by two representatives of Staker & Parson, Gray and Rod Higley ("Higley").

30.    Defendant Staker & Parson is a subsidiary of CRH and together with its affiliate, Oldcastle, claims to be North America's largest manufacturer of building products and the largest supplier of ready-mixed concrete, as well as construction and paving services in the United States.

31.    On or about January 15, 2004, the parties entered into a Letter of Intent Between Staker and Parson Companies and Miracon Technology, Inc. (the "Letter of Intent"). Among other things, the purpose of the Letter of Intent was for the parties to enter into a proprietary relationship within the geography that was covered by Staker & Parson. Generally, the Letter of Intent set forth certain limitations regarding Miracon's actions for the ready mix market in specific geographies, testing information, technical support, and hardware provisions. Certain cooperation efforts and purchasing commitments were required of Staker & Parson.

32.    Also on or about January 15, 2004, Miracon and Staker & Parson executed the Miracon Technologies, Inc. License Agreement (the "License Agreement"). Pursuant to the same, Staker & Parson became a non-exclusive Licensee of the right to use Miracon's technology.

33.    On or about July 30, 2004, Miracon and Staker & Parson entered into a non-exclusive License and Supply Agreement (the "Supply Agreement").

34.    The License Agreement and the Supply Agreement limit Defendant Staker & Parson's ability to use Miracon's confidential information. Moreover, the License Agreement and Supply Agreement make clear that Miracon retains all proprietary and intellectual property rights including all patent rights. Staker & Parson also agreed to various restrictions relating to reverse engineering, decompiling, disassembling, or copying Miracon's technology.

35.    Defendant Staker & Parson, corporately and as to all individuals employed by Staker & Parson, further agreed to safeguarding all confidential information from unauthorized use or disclosure to third parties.

36.    Due to the breaches of the License Agreement and Supply Agreement, Miracon has been irreparably injured and is entitled to seek injunctive relief, in addition to all other legal and equitable remedies.

37.    On or about July 30, 2004, a Distribution Agreement between Miracon and Staker & Parson Companies (the "Distribution Agreement") was also entered into by the two parties.

38.    Pursuant to the Distribution Agreement, Miracon agreed to certain limitations about sales to other ready-mixed concrete companies, and Staker & Parson agreed to engage in actions that would increase the use of Miracon product for all high-air and lightweight concrete mixes throughout its network of locations and affiliates.

39.    Pursuant to licensing agreements, Staker & Parson also agreed to certain limitations directed to Miracon chemicals, machines and software.

40.    Upon information and belief, the last shipment of the chemical ordered by Staker & Parson was shipped on or about April 2007 to Four Corners Materials ("4 Corners") in Farmington, New Mexico, one of Oldcastle's affiliates under Staker & Parson management.

41.    Miracon has not heard from Staker & Parson, its parent, or its affiliates since.

C.  **Defendants' Infringing Conduct/Facts Concerning Fraud and Conspiracy Charges**

42.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

43.    A large scale launch of a new air entrainment product for the production of concrete requires numerous laboratory and on site demonstrations, testing and implementation of quality control programs.

44.    Miracon's formal collaboration with Staker & Parson, its parent CRH and its affiliates, Oldcastle and Oldcastle Materials started with on-site testing at Staker & Parson's main laboratory and testing facility in Salt Lake City, Utah in mid 2003, and it continued with on-site work at various laboratories and plants through early 2007.  Throughout this time, Miracon's president, Mr. Charles Welker ("Welker"), worked with executives of these

companies as well as with numerous employees and team leads. Welker's main contact was with the Defendant Gray.

45.    Upon information and belief, in the beginning of his work relationship with Welker in 2003, Gray was employed by Staker & Parson where he was a member of the technical services team.

46.    Upon information and belief, prior to his employment with Staker & Parson, Gray had limited experience in the field of ready-mixed concrete. Before his collaboration with Welker, Gray had little to no experience with air entrainment products.

47.    During 2003 and the early months of 2004, Gray was solely an observer and a facilitator of Mr. Welker's demonstrations to Staker & Parson. Gray's function was to prepare the concrete plants and the research centers prior to testing. After the execution of the License Agreement and Supply Agreement, Gray was assigned to work very closely with Welker.

48.    On or about April 2004, Gray became intensively involved in all testing and demonstrations concerning the Miracon technology at various Staker & Parson research facilities and concrete plants in Utah, including California Avenue, Point South, Spanish Fork, and Park City. Gray worked side-by-side with Welker in order to understand the product and the methodology pioneered by Miracon.

49.    At the end of his education process, which was marked on or about April 2005, Gray became very familiar with the Miracon product and the critical steps of the methodology used by Miracon.

50.    During 2005 and 2006, Welker had various communications with another representative of Staker & Parson, Douglas Bedingfield ("Bedingfield"). Bedingfield was employed by Staker & Parson where he kept the title of Quality Control Manager.

51.    Despite great reviews and impressive performance of the Miracon technology, Bedingfield showed reluctance in recommending and promoting the Miracon product.

52.    Upon information and belief, Bedingfield sabotaged several of Miracon's testing either by not providing the complete details of the field and laboratory batches or by other similar methods.

53.    Upon information and belief, there were numerous instances where Bedingfield would cite Miracon at fault for what was later proved to be issues with the materials provided by Staker & Parson.  Such accusations would delay and derail Miracon's testing as well as result in additional work for Welker and Gray who would have to reveal the real issues with the failed testing.

54.    Specifically, in or about 2006, several tests were designed and conducted of the Miracon product.  Bedingfield's faulty design of the testing led to poor results and to Bedingfield's desired conclusion that the Miracon product is too expensive and therefore could not be utilized.

55.    Upon information and belief, Bedingfield was motivated in his actions by his reported close affiliation with Craig Nelson ("Nelson"), representative for W. R. Grace, who had been selling to Staker & Parson various admixture products used with the conventional methods of producing concrete.

56.    Upon information and belief, and during the timeframe of 2004 through 2006, Nelson offered various kickbacks to Bedingfield, such as trips and golf clubs, in return for his business and loyalty to the W. R. Grace products.

57.    On two separate occasions in 2004, Bedingfield requested Welker to compensate Nelson if Miracon wanted to enter the concrete market.  Such requests were made immediately after testing performed at the Staker & Parson Research Center in Salt Lake City, Utah.

58.    On at least one occasion, Gray was a witness to Bedingfield's pressure that Miracon join in offering kickbacks to Nelson.

59.    Bedingfield's poor testing reports addressing Miracon's product intensified during 2005. Specifically, during the spring and summer months of 2005, Bedingfield refused to recommend Miracon and stated that the product was allegedly too expensive to survive the market.

60.    Notably, the tests made on the Miracon product not designed by Bedingfield, such as those performed in 2003 and throughout 2004, showed great performance results of the Miracon product.

61.    Finally, on or about the Spring of 2005, after having gained the intricate knowledge of Miracon's products and technology while working with Welker, Gray and the other Defendants, upon information and belief, were able to copy Miracon's product and put it through commercial production of the foamed admixture, selling the product to Miracon's competition notwithstanding Miracon patent rights and in total violation of the License Agreement and the Supply Agreement.

62.    Thus, Staker & Parson successfully eliminated Miracon from its competition pool. This opened a world of opportunities, including selling and/or licensing Miracon technology to other users of ready-mix compositions in total violation of Miracon patent and licensing rights.

63.    On or about September 2005, unbeknownst to Miracon, Gray began filing multiple patent applications based on Miracon's patented technology listing himself as the only inventor.

64.    Miracon learned of the Gray Patents in or about October 2014, while performing searches in advance of its filing of a non-provisional patent application.

65.    Upon information and belief, Staker & Parson, Oldcastle, Oldcastle Materials, and CRH utilized Miracon's trade secrets, confidential information and inventions in their efforts to appropriate Miracon's technology, develop a patent portfolio, and segregate Miracon from the major players in the construction industry.

66.    Defendants Staker & Parson, Oldcastle, Oldcastle Materials, and CRH have benefited substantially from their access, through Gray, to and use of Miracon's confidential and proprietary technology, because they did not have to "re-invent the wheel." They stole Miracon's know-how, confidential information and invention and are using such information to develop competing products.

67.    Defendants Staker & Parson, Oldcastle, Oldcastle Materials, and CRH misappropriated confidential and proprietary information belonging to Miracon. The same Defendants have benefited, and will benefit, from this misappropriation. They did not have to spend the millions of dollars and years of research and development that they otherwise would have had to spend. Unless stopped, defendants will continue to use such information and continue to obtain significant financial benefit at the detriment of Miracon.

68.    Through their actions, Defendants Staker & Parson, Oldcastle, Oldcastle Materials, and CRH gained an unfair competitive advantage in the industry and can develop improvements without paying for the technology pioneered by and misappropriated from Miracon.

**D. The Gray's Patent Applications**

69.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

70.    Upon information and belief, on September 9, 2005, with knowledge of the '005 Patent, Gray filed with the PTO the provisional patent application Serial No. 60/715,458 ("the '458 application") entitled "Concrete Mixtures Having Aqueous Foam Admixtures."

71.    The '458 application disclosed and claimed the subject matter related to Miracon's air entrainment system for cementing or concreting, including Miracon's fluorochemical surfactant. Such information had been already disclosed in the '005 Patent and

was demonstrated by Welker through the business relationship between Miracon and the Defendants.

72.     On December 19, 2005, the '458 application was converted into the non-provisional U.S. patent applications: Serial No. 11/305,959 ("the '959 application") entitled "Concrete Mixtures Incorporating High Carbon Pozzolans and Foam Admixtures", Serial No. 11/305,960 ("the '960 application") entitled "Concrete Mixtures Having High Flowability," and Serial No. 11/311,490 ("the '490 application") entitled "Concrete Mixtures Having Aqueous Foam Admixtures."

73.     On or about December 12, 2005, Gray assigned the '959, the '960, and the '490 applications to Staker & Parson.

74.     On February 5, 2010, Gray filed with the PTO the non-provisional U.S. patent application Serial No. 12/701,398 ("the '398 application") entitled "Concrete Mixtures Having Stabilized Foam Admixture."    The '398 application is a continuation-in-part of the '490 application and it claims priority from the '458 application.

75.     On or about February 5, 2010, Gray assigned the '398 application to Staker & Parson.

76.     On March 8, 2011, Gray filed with the PTO the provisional U.S. patent application Serial No. 61/450,614 ("the '614 application") entitled "Concrete Mixtures Including Carbon Encapsulating Admixture."

77.     On March 8, 2012, Gray filed with the PTO the non-provisional U.S. patent application Serial No. 13/415,824 ("the '824 application") entitled "Concrete Mixtures Including Carbon Encapsulating Admixture."    The '824 application claims priority from the '614 application.

78.     On or about March 8, 2012, Gray assigned the '824 application to Staker & Parson.

79.    The PTO Examiner, Paul Marcantoni ("Marcantoni"), examined all applications filed by Gray. The '959 application was rejected by examiner Marcantoni for being unpatentable over the '005 Patent under 35 U.S.C. § 103(a).

80.    On or about August 27, 2009, the '959 application was abandoned after Gray's failure to file a reply to Marcantoni's rejection.

81.    Next, examiner Marcantoni rejected the '960 application under 35 U.S.C. § 103(a) as being unpatentable over the '005 Patent. On May 27, 2009 Marcantoni conducted a telephonic interview with Staker & Parson's counsel, Mr. Andrew S. Hansen ("Hansen"), during which he was advised that Gray's application differed from the '005 Patent because of a particular order of mixing ingredients classified by Hansen as critical in achieving the aims of the claimed invention.

82.    Despite the fact that no single claim in the '960 application is a method claim, Marcantoni, without further research and trusting the candor of Staker & Parson's counsel, allowed the issuance of United States Patent No. 7,621,995 ("the '995 patent"). A true and correct copy of the '995 patent is attached hereto as **Exhibit B**.

83.    Similarly, the '490 application was rejected by examiner Marcantoni under 35 U.S.C. § 102(b) as anticipated by or, in the alternative, under 35 U.S.C. § 103(a) as obvious over the '005 Patent. Following the May 27, 2009 interview with Hansen, Marcantoni allowed the issuance of United States Patent No. 7,670,426 ("the '426 patent") dated March 2, 2010. A true and correct copy of the '426 patent is attached hereto as **Exhibit C**.

84.    Continuing the review of Gray's applications, Marcantoni listed the '005 Patent as prior art in the prosecution of the '398 application. Nevertheless, he allowed the issuance of the United States Patent No. 8,167,997 ("the '997 patent") dated May 1, 2012 without further examination. A true and correct copy of the '997 patent is filed under the seal as **Exhibit D**.

85.    Finally, upon very limited examination, Marcantoni allowed the '824 application. The '005 Patent was not disclosed within this application.    The United States Patent No. 8,871,021 ("the '021 patent") was issued on October 8, 2014, a true and correct copy of which is attached hereto as **Exhibit E.**

86.    As set forth in the foregoing allegations and in Exhibits B-E, the Gray Patents are all based on Miracon's '005 Patent.

87.    Thus, all the Gray Patents are invalid as unpatentable over '005 Patent. Even if Gray's invention would be considered as novel, the Gray Patents are obvious improvements upon the '005 Patent and, therefore, the Gray Patents cannot be practiced without infringing the '005 Patent.

88.    Upon information and belief, Defendants, and each one of them independently, is practicing and/or advertising they are practicing the Gray Patents by at least making, using, selling, and offering for sale air entraining products, cellular air products, and air technology to be used as a lightweight composite in precast and ready-mix concrete based on Miracon's technology.  Therefore, each Defendant is practicing the '005 Patent literally and/or under the doctrine of equivalents.

89.    Defendants are not authorized to practice the '005 Patent.

### COUNT I
### INFRINGEMENT OF UNITED STATES PATENT NO. 6,153,005
### (CRH, Oldcastle, Oldcastle Materials, Staker & Parson, W. R. Grace)

90.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

91.    Miracon is the exclusive licensee and has standing to enforce of the '005 Patent.

92.    In violation of 35 U.S.C. § 271, CRH, Oldcastle, Oldcastle Materials, Staker & Parson, W. R. Grace ("Infringing Defendants"), have infringed and, if not enjoined, will continue to infringe the '005 Patent by (1) manufacturing, using, marketing, selling, offering for sale,

and/or importing, without authority, products and services that are covered by one or more claims of the '005 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a); and/or (2) inducing infringement of one or more claims of the '005 Patent, in violation of 35 U.S.C. § 271(b). In particular, Infringing Defendants infringe one or more claims of the '005 Patent directly and indirectly, literally and/or under the doctrine of equivalents, and by inducement by (1) manufacture, use, marketing of, sale, and/or offer for sale of air entrainment products based on Miracon technology; and (2) using method and process claimed in the '005 Patent.

93.    Infringing Defendants directly infringe one or more claims of the '005 Patent at least by making, using, selling, and offering for sell air entraining products, cellular air products, air technology to be used as a lightweight composite in precast and ready-mix concrete based on Miracon's technology.

94.    Specifically, Staker & Parson and Oldcastle Materials market and sell what is believed to be the infringing products sold in the United States under the trade name Carbon Knight and ProFlo based on Miracon's technology. These products are sold to customers and potential customers that include, for example, companies in the construction industry in the United States, in addition to individual customers in the United States.

95.    Staker & Parson and its affiliates market and sell their air entraining products (MICRO-AE) and ready-mix concrete based on Miracon's technology to customers and potential customers that include, for example, companies in the construction industry in the United States, in addition to individual customers in the United States.

96.    Infringing Defendants indirectly infringe one or more claims of the '005 Patent at least because they have had knowledge of the '005 Patent and have induced others to infringe the '005 Patent.

97.    Infringing Defendants had knowledge of the '005 Patent since at least the beginning of their collaboration with Miracon in 2004.

98.    Infringing Defendants have and continue to indirectly infringe one or more claims of the '005 Patent by inducing others (e.g., customers and end-users) to directly infringe the '005 Patent in this District and elsewhere in the United States in violation of the 35 U.S.C. § 271(b).

99.    Through its website, sales personnel, and advertising, Staker & Parson, its affiliates and Gray market and promote the use of its air entraining products and ready-mix concrete based on Miracon's technology, which infringe the '005 Patent when they are used as Stalker & Parson intends by its customers and end-users.  Staker & Parson and its affiliates further instructs its customers and end-users how to use such products in a manner that infringes the '005 Patent claims.

100.    Infringing Defendants have been contributorily infringing the '005 Patent in violation of the 35 U.S.C. § 271 through, among other things providing air-entraining products for performing the method claims of the '005 Patent; instructing and encouraging users of these products to perform the method claims of the '005 Patent, encouraging its business partners to make, use, sell, import, and offer to sell the infringing products or components thereof.

101.    Infringing Defendants do not have a license or permission to use the claimed subject matter in the '005 Patent.

102.    Miracon has been injured and has been caused significant financial damage as a direct and proximate result of the Infringing Defendants' infringement of the '005 Patent.

103.    Infringing Defendants will continue to infringe the '005 Patent, and thus cause irreparable injury and damage to Miracon unless enjoined by this Court.

104.    Miracon is entitled to recover from Infringing Defendants the damages sustained by Miracon as a result of Defendants' wrongful acts in an amount subject to proof at trial.

**COUNT II**
**INFRINGEMENT OF UNITED STATES PATENT NO. 6,153,005**
**BY PRACTICE OF THE GRAY PATENTS**
**(CRH, Oldcastle, Oldcastle Materials, Staker & Parson, W. R. Grace)**

105.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

106.    Miracon is the exclusive licensee and has standing to enforce of the '005 Patent.

107.    The '005 Patent was duly and legally issued by the USPTO and it is valid and enforceable.

108.    Each of the Gray Patents are based on Miracon's pioneer '005 Patent. To the extent any and all of the claims of the Gray Patents are inventive and patentable, such invention is an obvious improvement upon the '005 Patent.

109.    Because the Gray Patents are mere improvement patents based on Miracon's 005 Patent, as a matter of law, Defendants cannot practice the Gray Patents without practicing the '005 Patent. Thus, Defendants cannot manufacture, use, market of, sell, and/or offer for sale of air entrainment products that practice the claims of any of the Gray Patents without also manufacturing, using, marketing, selling, and/or offering for sale of air entrainment products that practice at least one of the claims of the '005 Patent.

110.    Further, Infringing Defendants cannot use any method or process claimed in Gray Patents without also using at least one method or process claimed in the '005 Patent.

111.    Infringing Defendants are not authorized to practice the '005 Patent.

112.    Infringing Defendants directly infringe one or more claims of the '005 Patent at least by making, using, selling, and offering for sell air entraining products, cellular air products, air technology to be used as a lightweight composite in precast and ready-mix concrete that practice the Gray Patents; and using method and process claimed in the Gray Patents.

113.    Infringing Defendants indirectly infringe one or more claims of the '005 Patent at least because they have knowledge of the '005 Patent and have induced others to infringe the '005 Patent by practicing the Gray Patents.

114.    Infringing Defendants contributorily infringe one or more claims of the '005 Patent at least by providing air-entraining products for performing the method claims of the '005 Patent and by instructing and encouraging users of these products to perform the method claims of the '005 Patent, encouraging its business partners to make, use, sell, import, and offer to sell the infringing products or components thereof.

115.    Miracon has been injured and has been caused significant financial damage as a direct and proximate result of the Defendants' infringement of the '005 Patent.

116.    Infringing Defendants have caused and will continue to cause irreparable injury and damage to Miracon as a result of its direct, indirect, and /or contributory infringement of the '005 Patent by practicing the Gray Patents. Infringing Defendants will suffer further irreparable injury, for which there is no adequate remedy at law, unless and until Defendants are enjoined from infringing the '005 Patent and from practicing the Gray Patents.

117.    Miracon is entitled to injunctive relief under 35 U.S.C. §283.

118.    Miracon is entitled to recover from Infringing Defendants the damages sustained by Miracon as a result of Infringing Defendants' wrongful acts in an amount subject to proof at trial under 35 U.S.C. §284.

119.    This is an exceptional case warranting an award of attorney's fees to Miracon under 35 U.S.C. §285.

## EXCEPTIONAL CASE

120.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

121.    Infringing Defendants have willfully and deliberately infringed, induced others to infringe, and/or contributed to the infringement of the '005 Patent with full knowledge and wanton disregard of Miracon's rights thereunder, rendering this an "exceptional" case within the meaning of 35 U.S.C. § 285.

122.    Miracon has incurred attorneys' fees, costs, and expenses in the prosecution of this action. Pursuant to 35 U.S.C. § 285, Miracon is entitled to recover its reasonable and necessary fees and expenses.

**COUNT III**
**BREACH OF CONTRACT**
**THE LICENSE AGREEMENT**
**(Staker & Parson, Oldcastle, Oldcastle Materials)**

123.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

124.    The License Agreement constitutes a contract between Miracon, Staker & Parson and Staker & Parson's affiliates.

125.    Because Staker & Parson and its affiliates make, use, import, sell, and/or offer for sale products that embody one or more claims patented within the '005 Patent, the termination provisions of the License Agreement are invoked.

126.    Staker & Parson and its affiliates are liable to Miracon for material breaches of the License Agreement, including, but not limited to, misappropriating Miracon's proprietary and patented processes, by reverse engineering, disassembling, breaking down by chemical analysis, and copying Miracon's Products and by failing to keep secret Miracon's confidential information and failing to obligate their employees to treat as secret such confidential information.

127.    The foregoing breaches of contract constitute material breaches that have caused irreparable injury and substantial damages to Miracon. Miracon is entitled to a judgment against

Staker & Parson, Oldcastle, and Oldcastle Materials for injunctive relief, damages, costs, and attorney fees caused by Staker & Parson's breach of contract.

128.    All conditions precedent have been satisfied by Miracon.

## COUNT IV
## BREACH OF CONTRACT
## THE SUPPLY AGREEMENT
### (Staker & Parson, Oldcastle, Oldcastle Materials)

129.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

130.    The Supply Agreement constitutes a contract between Miracon, Staker & Parson and Staker & Parson's affiliates.

131.    Because Staker & Parson and its affiliates make, use, import, sell, and/or offer for sale products that embody one or more claims patented within the '005 Patent, the termination provisions of the Supply Agreement are invoked.

132.    Staker & Parson and its affiliates are liable to Miracon for material breaches of the Supply Agreement, including but not limited to failing to keep secret Miracon's confidential information and failing to obligate their employees to treat as secret such confidential information and by misappropriating Miracon's proprietary and intellectual property including all patent rights in and to all designs, engineering details, formulae and other similar data and confidential information relating to the Products as described in Section 1 as well as by reverse engineering, disassembling, breaking down, and copying Miracon's Products or permitting any of the foregoing to occur.

133.    The foregoing breaches of contract constitute material breaches that have caused irreparable injury and substantial damages to Miracon. Miracon is entitled to a judgment against Staker & Parson, Oldcastle, and Oldcastle Materials for injunctive relief, damages, costs, and attorney fees caused by Staker & Parson's breach of contract.

134.    All conditions precedent have been satisfied by Miracon.

**ATTORNEYS' FEES UNDER TEXAS CIVIL PRACTICE & REMEDIES CODE 38**

135.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

136.    Section 38.001 of the Texas Civil Practice & Remedies Code provides that "a person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for … (8) an oral or written contract."

137.    It is necessary for Miracon to be represented by attorneys to pursue the remedies sought in this petition.

138.    Defendants are liable for Miracon's attorneys' fees in the prosecution of this action.

**COUNT V**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, Bedingfield)**

139.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

140.    Miracon's product and technology, including all patent rights in the formulae, process, designs, engineering details, schematics, drawings, specifications, and know-how, constitute trade secrets as defined by the Texas Uniform Trade Secrets Act. TEX. CIV. PRAC. & REM. CODE §134A.002(6).

141.    Miracon's product and technology derive independent economic value from not being generally known to the public or to Miracon's competitors in that competitors do not know how to replicate the Miracon's unique product and methodology. Additionally, the technology is of great value to Miracon because Miracon expended significant time and resources in researching and developing its revolutionary technology, giving Miracon a competitive edge and lending to its profits. Any competitor who improperly acquired information about how to produce, develop, and use Miracon's product and technology would gain an unfair competitive

advantage in that they would not be required to expend the significant time and resources necessary to develop this trade secret information.

142.    The technology developed by Miracon is not readily ascertainable by proper means by others in the construction industry, but rather it is the product of Miracon's independent research and development.

143.    Staker & Parson, Oldcastle, Oldcastle Materials, and CRH misappropriated and disclosed Miracon's trade secrets that they acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

144.    Miracon took reasonable efforts to maintain the secrecy of the above described trade secrets by executing the License Agreement and the Supply Agreement with Staker & Parson. Pursuant to these agreements Staker & Parson was not granted any rights in the trade secrets owned by Miracon. In fact, Staker & Parson was restricted from reverse engineering, disassembling, breaking down or copying Miracon's products and methodology or permit any of the foregoing to occur.

145.    Pursuant to the same agreements, Staker & Parson was under the obligation to limit the dissemination of Miracon's proprietary and intellectual property to select employees who have agreed to be bound by the terms of the agreements.

146.    Gray misappropriated Miracon's trade secrets by wrongfully copying Miracon's information, despite his contractual obligations and legal duty to maintain the secrecy of and limit the use of such information. Gray's conduct was wrongful because at the time he reverse engineered Miracon's product and used Miracon's trade secrets, Gray knew that he was legally and contractually obligated to refrain from using this information.

147.    Gray further misappropriated Miracon's trade secrets by wrongfully disclosing and claiming Miracon's trade secrets as his own inventive ideas in various patent applications,

despite his contractual obligations and legal duty to maintain the secrecy of and limit the use of such information.

148.    Bedingfield misappropriated Miracon's trade secrets through his collaboration with Nelson and W. R. Grace.

149.    Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield jointly and severally, misappropriated Miracon's trade secrets by using Miracon's trade secrets they acquired from Gray to directly compete with Miracon and benefit from selling the Miracon technology.    Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield's conduct was wrongful because they knew or had reason to know at the time they used the trade secrets that Staker & Parson as well as its employees were legally and contractually obligated to maintain the secrecy of and limit the use of Miracon's trade secrets.

150.    In light of Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield's continued use of Miracon's trade secrets, Miracon has no adequate remedy at law to prevent them from continuing to misappropriate the trade secrets. Therefore, Miracon is entitled to injunctive relief, enjoining the above mentioned defendants from using, disclosing, or disseminating any trade secrets belonging to Miracon.

151.    As a result of the misappropriation of Miracon's trade secrets, Miracon lost customers orders, its relationships with other customers were adversely affected, and Miracon's reputation and goodwill as the exclusive developer of the product and technology was damaged. Thus, Miracon is entitled to actual damages caused by the use and continued use of its trade secrets by Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield.

152.    As a proximate result of Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield's misappropriation of Miracon's trade secrets, Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield have been unjustly enriched in an amount subject to proof at the time of trial.

153.    Additionally, Miracon is entitled to royalties on any profits received by Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield from their misuse of Miracon's trade secrets.

154.    Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield misappropriated Miracon's trade secrets willfully and maliciously within the meaning of the Texas Uniform Trade Secrets Act in that they deliberately used this information with the intent to injure Miracon's business and enhance their own business relationships.  Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield acted with malice, and deliberately caused and intended to cause great economic harm to Miracon with full knowledge of the wrongfulness of their conduct. Defendants' conduct as alleged above was carried on by Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield with a willful and conscious disregard of Miracon's rights.  Therefore, Miracon should be awarded exemplary damages sufficient to punish Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield for engaging in this conduct and to deter similar conduct on their part in the future. TEX. CIV. PRAC. & REM. CODE §134A.004(b).

155.    Due to Staker & Parson, Oldcastle, Oldcastle Materials, CRH, Gray, and Bedingfield's willful and malicious misappropriation of Miracon's trade secrets, Miracon is entitled to recover its reasonable attorneys' fees and costs pursuant to the Texas Uniform Trade Secrets Act. TEX. CIV. PRAC. & REM. CODE §134A.005.

## COUNT VI
## TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS
### (Gray)

156.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

157.    Upon information and belief, Gray was aware of the contractual and legal obligations of Defendants Staker & Parson, Oldcastle, and Oldcastle Materials.

158.    Gray intentionally and wrongfully lent substantial assistance to Staker & Parson and its affiliates in breaching their contracts with Miracon.

159.    Defendants Gray, Staker & Parson, Oldcastle, and Oldcastle Materials, as co-conspirators, pursued a common plan and design to intentionally and maliciously interfere with the secrecy of Miracon's proprietary intellectual property and its operations. Gray actively and intentionally assisted Staker & Parson and its affiliates in the breach of contracts by misappropriating Miracon's confidential information and filing a myriad of patent applications based on the knowledge obtained through collaboration with Welker.

160.    Miracon has suffered and is continuing to suffer damages and/or loses as a result of same.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS**
**(Bedingfield)**

161.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

162.    Miracon has fully performed all of its obligations under the License Agreement and the Supply Agreement with Staker & Parson.

163.    Defendant Bedingfield, not a party to these Agreements, willfully and intentionally interfered with such Agreements between Miracon and Staker & Parson, having knowledge of their existence and obligations.

164.    Bedingfield intentionally interfered with these Agreements by sabotaging Miracon's testing, drafting poor testing reports of Miracon's performance, and providing negative reviews concerning Miracon's product and technology.

165.    Furthermore, Bedingfield willfully and intentionally interfered with these Agreements by utilizing and misappropriating Miracon's trade secrets and other confidential and

proprietary information for the purpose of continuing its collaboration with Nelson and W.R. Grace and to secure the construction market independently from Miracon.

166.    This tortious interference was a proximate cause of the injury to Miracon.

167.    Miracon has suffered and is continuing to suffer damages and/or losses as a result of same.

**COUNT VIII**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS**
**(W. R. Grace)**

168.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

169.    Miracon has fully performed all of its obligations under its Agreements with Staker & Parson.

170.    Defendant W. R. Grace, not a party to these Agreements, willfully and intentionally interfered with such Agreements between Miracon and Staker & Parson, having knowledge of their existence and obligations.

171.    W. R. Grace intentionally interfered with these Agreements through its representative's unlawful relationship with Bedingfield and by misappropriating Miracon's confidential information.

172.    This tortious interference was a proximate cause of the injury to Miracon.

173.    Miracon has suffered and is continuing to suffer damages and/or losses as a result of same.

**COUNT IX**
**UNJUST ENRICHMENT**
**(Gray)**

174.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

175.    Gray has been unjustly enriched by, among other things, his misappropriation of invention, trade secrets and confidential information properly belonging to Miracon.    Such invention, trade secrets and confidential information has been of significant benefit to Gray and the circumstances are such that it would be unjust for Gray to retain the benefit conferred upon him by continuing to use and enjoin Miracon's invention, trade secrets and confidential information.

## COUNT X
## UNJUST ENRICHMENT
### (W. R. Grace)

176.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

177.    W. R. Grace has been unjustly enriched by, among other things, its misappropriation of invention, trade secrets and confidential information properly belonging to Miracon.    Such invention, trade secrets and confidential information has been of significant benefit to W. R. Grace and the circumstances are such that it would be unjust for W. R. Grace to retain the benefit conferred upon it by continuing to use and enjoin Miracon's invention, trade secrets and confidential information.

## COUNT XI
## DECLARATORY JUDGMENT OF INVALIDITY
## OF THE GRAY PATENTS

178.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

179.    A case or controversy exists between Staker & Parson and Miracon concerning the invalidity of the Gray Patents which require a declaration of rights by this Court.

180.    The Gray Patents are invalid for failure to meet the requirements of patentability under 35 U.S.C. § 102 and § 103.

181.    Furthermore, the Gray Patents are invalid for lack of disclosure of proper inventorship information.

182.    Finally, the Gray Patents are invalid because of the fraud on the PTO as described below.

183.    Miracon is entitled to a declaratory judgment that the Gray Patents are invalid.

### COUNT XII
### DECLARATORY JUDGMENT OF UNENFORCEABILITY
### OF THE GRAY PATENTS

184.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

185.    A case or controversy exists between Staker & Parson and Miracon concerning the unenforceability of the Gray Patents, which require a declaration of rights by this Court.

186.    The Gray Patents are unenforceable due to inequitable conduct.    During the prosecution of the applications for these patents, individuals owing a duty of candor to the PTO, including the inventor of the patents, his predecessors in title, and the attorney prosecuting the patents, mischaracterized the '005 Patent.  Staker & Parson and its representative, Hansen, owed a duty of candor to the Examiner Marcantoni.  Upon information and belief, the statements made by Hansen during the May 27, 2009 interview with Marcantoni advising the PTO of the difference from prior art was false.  Furthermore, Hansen's statement was erroneously applied to the '960 application discussing a product instead of the alleged method claim.

187.    Staker & Parson's failure to disclose the real and intimate connection with the '005 Patent and Miracon and Hansen's false statements to the Examiner were to intentionally mislead and deceive the PTO.  As such, the '995 patent is unenforceable due to inequitable conduct.

188.    Upon information and belief, Examiner Marcantoni applied to all other Gray's patent applications the same or similar reasoning as guided by Hansen on May 27, 2009, thus allowing them for issuance.

189.    Miracon is entitled to a declaratory judgment that the Gray Patents are unenforceable.

### COUNT XIII
### DECLARATORY RELIEF
### THAT PRACTICING THE GRAY PATENTS INFRINGES
### THE UNITED STATES PATENT NO. 6,153,005
### (CRH, Oldcastle, Oldcastle Materials, Staker & Parson, W. R. Grace)

190.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

191.    Each of the Gray Patents are based on the pioneer '005 Patent. To the extent any and all of the claims of the Gray Patents are inventive and patentable, such invention is an obvious improvement upon the '005 Patent.

192.    Because the Gray Patents are mere improvement patents based on the '005 Patent, as a matter of law, no individual or entity can practice the Gray Patents without practicing the '005 Patent. Thus, an entity cannot manufacture, use, market, sell, and/or offer for to sell of air entrainment products that practice the claims of any of the Gray Patents without also manufacturing, using, marketing, selling, and/or offering for sale of air entrainment products that practice at least one of the claims of the '005 Patent. Further, an entity cannot use any method or process claimed in Gray Patents without also using at least one method or process claimed in the '005 Patent.

193.    Infringing Defendants have caused and will continue to cause irreparable injury and damage to Miracon as a result of its direct, indirect, and /or contributory infringement of the '005 Patent by practicing the Gray Patents. Miracon will suffer further irreparable injury, for

which there is no adequate remedy at law, unless and until Defendants are enjoined from infringing the '005 Patent and from practicing the Gray Patents.

194. Miracon has been damaged as a result of Infringing Defendants' direct, indirect, and /or contributory infringement of the '005 Patent.

195. Miracon is entitled to a preliminary and permanent injunction enjoining Defendants from infringing the Gray Patents and a finding that an entity or individual that practices the Gray Patents practices the '005 Patent.

196. Infringing Defendants have caused and will continue to cause irreparable injury and damage to Miracon as a result of its direct, indirect, and /or contributory infringement of the '005 Patent by practicing the Gray Patents.

197. Miracon will suffer further irreparable injury, for which there is no adequate remedy at law, unless and until Infringing Defendants are enjoined from infringing the '005 Patent and from practicing the Gray Patents.

198. Miracon is entitled to injunctive relief under 35 U.S.C. §283.

199. Miracon seeks Declaratory Relief that an entity or individual that practices the Gray Patents practices the '005 Patent.

**COUNT XIV**
**FRAUD**
**(Staker & Parson, Oldcastle, Oldcastle Materials, CRH)**

200. Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

201. Defendants Staker & Parson and its affiliates have committed fraud against Miracon by engaging in conduct that reasonably caused Miracon to enter into the License and Supply Agreements and to divulge proprietary and intellectual property information capable of revolutionizing the construction industry.

202. Stake & Parson and its affiliates have committed fraud on Miracon by making false representation of facts, or making a false promise that Miracon's intellectual property would be kept secret and not misused by defendants.

203. Specifically, prior to January 2004 Staker & Parson and its affiliates promised Miracon, during numerous conversations between the parties' executives at Salt Lake City, Utah, that all testing information would remain mutually confidential.

204. Stake & Parson and its affiliates made the representation or promise to induce Miracon to enter into the License and Supply Agreements.

205. Specifically, starting in January 2004, Staker & Parson and its affiliates promised to Welker, on numerous occasions, that Miracon would be able to enter the ready-mix market. On or about July 30, 2004, during communications with Welker, Staker & Parson promised Miracon that Staker & Parson and its affiliates would utilize Miracon in all of their concrete that had an 8% or higher air composition as well as in all of their lightweight concrete. In addition, Staker & Parson requested that Miracon not make any further effort to develop the ready mix market within the geography covered by Staker & Parson and its affiliates.

206. Furthermore, throughout 2004 and 2005, Welker was requested routinely in meetings and written correspondence with executives of Staker & Parson that Miracon provide technical support during the parties' collaboration.

207. Stake & Parson and its affiliates made the representation or promise with the intention that Miracon rely on such representation or promise.

208. Miracon was ignorant of the falsity of the representation or promise and had a reasonable right to rely and actually did rely on the representation.

209. Miracon has been injured by its reasonable reliance on that representation or promise.

210.    Miracon reasonably relied on the conduct of Staker & Parson and its affiliates and its principals made significant disclosures in relation to Miracon's proprietary information and intellectual property.    In addition, Miracon made significant financial investments during its collaboration with Staker & Parson.

211.    Miracon would not have disclosed its proprietary information and intellectual property had it known that Staker & Parson and its affiliates would steal and assert ownership of it and try to gain financial benefits by segregating Miracon within the construction community.

212.    Miracon has been greatly damaged as a result of Staker & Parson and its affiliates' fraudulent conduct.

### COUNT XV
### FRAUD
### (Gray)

213.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

214.    Gray has committed fraud against Miracon by engaging in conduct that reasonably caused Miracon to enter into the License and Supply Agreements and to divulge proprietary and intellectual property information capable of revolutionizing the construction industry.

215.    Gray has committed fraud on Miracon by making false representation of facts, or making a false promise that Miracon's intellectual property would be kept secret and not misused by Gray.

216.    Upon information and belief, during conversations with Welker throughout 2003, 2004, and 2005 at various Staker & Parson locations and operation sites, Gray stated that his role was that of a facilitator and that he would keep Miracon's information secret.

217.    Gray made the representation or promise to induce Miracon and its principals to disclose its trade secrets.

218.    Gray made the representation or promise with the intention that Miracon rely on such representation or promise.

219.    Miracon was ignorant of the falsity of the representation or promise and had a reasonable right to rely and actually did rely on the representation.

220.    Miracon has been injured by its reasonable reliance on that representation or promise.

221.    Miracon reasonably relied on Gray's conduct and its principals made significant disclosures in relation to Miracon's proprietary information and intellectual property.

222.    Miracon would not have disclosed its proprietary information and intellectual property had it known that Gray would seek to steal and assert ownership of it and try to gain financial benefits at Miracon's expense.

223.    Miracon has been greatly damaged as a result of Gray's fraudulent conduct.

## COUNT XVI
## CONSPIRACY
### (All Defendants)

224.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

225.    Defendants conspired to misappropriate Miracon's trade secrets and to cause the breaches of contract and fraud set forth herein.

226.    Defendants had a meeting of the minds and embarked upon an agreed course of action to misappropriate Miracon's trade secrets and to induce the breaches of contract and fraud described above.

227.    Specifically, Gray, Bedingfield, Staker & Parson and its affiliates, together with W.R. Grace conspired to steal Miracon's ground-breaking technology and segregate Miracon, thus eliminating Miracon as a competitor in their market.

228.    Upon information and belief, Staker & Parson's employees, Bedingfield and Gray, were not their only associates who collaborated with Nelson and other representatives of W. R. Grace in order to misappropriate Miracon's trade secrets and further secure their market independently from Miracon.

229.    Upon information and belief, most such actions were taken by Staker & Parson, its affiliates and W. R. Grace between the 2004-2006 time frame, at different locations in Utah such as Salt Lake City, Park City, Spanish Fork, Murray, Ogden, Lehi, St. George, at locations in Idaho such as Nampa and Eagle and at locations in New Mexico such as Farmington and Albuquerque.

230.    Defendants' conduct is unlawful as set forth herein and was accompanied by complete disregard of Miracon's rights.

231.    Miracon has been damaged as a result of Defendants' illegal and unlawful conspiracy and is entitled to compensatory and exemplary damages as a result thereof.

**COUNT XVII**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS**
**(Staker & Parson, Oldcastle, Oldcastle Materials, and CRH)**

232.    Miracon restates and re-alleges each of the allegations set forth above and incorporates them herein.

233.    At all relevant times, Staker & Parson and its affiliates knew of Miracon's prospective business relations with various clients and customers throughout the United States based upon Miracon's ability to provide their customers with unique technology and high quality service.

234.    There was a reasonable probability that Miracon would have entered into further business dealings with these customers.

235.    Defendants knowingly, willfully, and intentionally interfered with and disrupted Miracon's prospective business relations by among other things, engaging in misappropriation of trade secrets, fraud, and conspiracy.

236.    Upon information and belief, during their collaboration with Miracon, Staker & Parson and its affiliates did not intend to honor the License and Supply Agreements with Miracon or to develop, promote, and maximize the use of the Miracon product, but to steal Miracon's technology.

237.    Upon information and belief Staker & Parson and its affiliates intentionally interfered with Miracon's prospective business relations with various clients and customers in order to gain the know-how of Miracon's revolutionary technology and then to steal Miracon's clientele.

238.    Upon information and belief, beginning with December 2006, Staker & Parson had approached various Miracon's prospective business partners discouraging them to enter into business relations with Miracon.

239.    Defendants have engaged in these wrongful acts for the sole purpose of injuring Miracon so that Miracon will be eliminated from all areas served by Staker & Parson and its affiliates.

240.    Staker & Parson and its affiliates knew that in taking the actions described above they would interfere with the business interests of Miracon.

241.    Miracon was damaged as a proximate result of the conduct described above.

242.    Staker & Parson and its affiliates in doing the acts herein alleged acted with oppression, fraud or malice, entitling Miracon to an award of exemplary damages.

## DEMAND FOR TRIAL BY JURY

Miracon, specifically requests a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Miracon respectfully request that judgment be entered in its favor and against Defendants and that the Court grant the following relief to Plaintiff:

1.  Judgment that Defendants have infringed the '005 Patent;

2.  That the Court award actual damages to Miracon for Defendants' infringing activities, which may include lost profits and/or a reasonable royalty;

3.  Judgment that each of the Gray Patents is an obvious improvement patent based upon the '005 Patent;

4.  Judgment that any entity that practices one or more claims of any of the Gray Patents, without Miracon's authority to practice the '005 Patent, infringes directly, indirectly, or contributorily at least one of the claims of the '005 Patent;

5.  Judgment that this case is exceptional;

6.  That this Court award Miracon increased damages in an amount not less than three times the amount of damages found by the jury or assessed by this Court, for Defendants willful infringement pursuant to 35 U.S.C. § 285;

7.  That the Court enter a preliminary and thereafter a permanent injunction against Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with them, from direct infringement of the '005 Patent;

8.  That the Court enter a preliminary and thereafter a permanent injunction against Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with them, from directly infringing the '005 Patent, by manufacturing, using, marketing, selling, offering for sale, and/or importing, without Miracon's authority to practice the '005 Patent,

products and services that are covered by one or more claims of any of the Gray Patents, literally and/or under the doctrine of equivalents;

9. That the Court enter a preliminary and thereafter a permanent injunction against Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with them, from active inducements of infringement and/or contributory infringements of the '005 Patent by inducing and/or contributing to third parties' manufacturing, using, marketing, selling, offering for sale, and/or importing, without Miracon's authority to practice the '005 Patent, products and services that are covered by one or more claims of any of the Gray Patents, literally and/or under the doctrines of equivalents;

10. That the Court enter a preliminary and thereafter a permanent injunction against Defendants' active inducements of infringement and/or contributory infringements of the '005 Patent by others;

11. That this Court enter an order directing Defendants to deliver to Miracon, and serve upon Miracon's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which Defendants have complied with the injunction;

12. Judgment that Staker & Parson and its affiliates breached the License Agreement;

13. Judgment that Staker & Parson and its affiliates breached the Supply Agreement;

14. That the Court award damages to Miracon to which it is entitled, including, but not limited to, the full amount of actual damages caused by Defendants' breach of the License Agreement;

15. That the Court award damages to Miracon to which it is entitled, including, but not limited to, the full amount of actual damages caused by Defendants' breach of the Supply Agreement;

16. Judgment that if the License Agreement has terminated, one or more claims of the '005 Patent has been infringed, either literally or under the doctrine of equivalents, by the Defendants;

17. Judgment that if the Supply Agreement has terminated, one or more claims of the '005 Patent has been infringed, either literally or under the doctrine of equivalents, by the Defendants;

18. Judgment that Gray willfully and intentionally interfered with the existing contracts between Miracon and Staker & Parson and award Miracon its damages suffered;

19. Judgment that Bedingfield willfully and intentionally interfered with the existing contracts between Miracon and Staker & Parson and award Miracon its damages suffered;

20. Judgment that W. R. Grace intentionally interfered with the existing contracts between Miracon and Staker & Parson and award Miracon its damages suffered;

21. Judgment that Defendants misappropriated Miracon's trade secrets and award Miracon its damages suffered;

22. Judgment that Gray was unjustly enriched at Miracon's expense and award Miracon the amount of Gray's enrichment;

23. Judgment that W. R. Grace was unjustly enriched at Miracon's expense and award Miracon the amount of W. R. Grace's enrichment;

24. Judgment that the claims of the United States Patent No. 7,621,995, No. 7,670,426, No. 8,167,997 and No. 8,871,021 are invalid;

25. Judgment that the claims of the United States Patent No. 7,621,995, No. 7,670,426, No. 8,167,997 and No. 8,871,021 are unenforceable;

26. Judgment that Defendants committed fraud and award Miracon its damages suffered;

27. Judgment that Defendants committed conspiracy and award Miracon its damages suffered;

28. That this Court award pre-judgment and post-judgment interest;

29. That this Court award Miracon's costs and attorney fees incurred in this action; and

30. That this Court award such further and other relief and the Court may deem meet and proper in the premises.

Date:    January 9, 2015

Respectfully submitted,

**SPANGLER LAW, P.C.**
By: */s/ Andrew W. Spangler*
ANDREW W. SPANGLER
**LOCAL COUNSEL**
Texas Bar No. 24041960
208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone: 903.753.9300
Facsimile: 903.553.0403
spangler@spanglerlawpc.com

**GORDON & REES LLP**
By: /s/ Katarzyna Brozynski
KATARZYNA BROZYNSKI
**LEAD COUNSEL**
Texas Bar No. 24036277

SORANA G. BAN
Texas Bar No. 24061520
2100 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: 214.231.4660
Facsimile: 214.461.4053
kbrozynski@gordonrees.com
sban@gordonrees.com

ROBERT ANDRIS
California Bar No. 130290
MICHAEL KANACH (*Pro Hac Vice* to be filed)
California Bar No. 271215
275 Battery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.986.5900
Facsimile: 415.986.8054
randris@gordonrees.com
mkanach@gordonrees.com

ATTORNEYS FOR PLAINTIFF
MIRACON TECHNOLOGIES, LLC