Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    Case No. 01-01139(KJC)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    W.R. GRACE & CO., ET AL.,

8

9         Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                          United States Bankruptcy Court

14                          824 North Market Street

15                          Wilmington, Delaware

16

17                          April 15, 2015

18                          10:01 AM

19

20

21   B E F O R E :

22   HON KEVIN J. CAREY

23   U.S. BANKRUPTCY JUDGE

24

25

1    HEARING re Debtors' Objection to the Proof of Claim Filed By

2    Norfolk Southern Railway Company [Filed 7/20/02] (Docket No.

3    22553)

4

5    HEARING re Motion for Order Implementing the Plan's

6    Discharge of Prepetition Litigation Claims and the Related

7    Injunction Where Claimants Did Not File Proofs of Claim

8    [Filed: 2/27/15] (Docket No. 32511)

9

10   HEARING re Anderson Memorial Hospital's Motion to Alter or

11   Amend Order Denying Motion for Class Certification and for

12   Entry of Scheduling Order and Granting Related Relief [Filed

13   3/5/14] (Docket No. 31812)

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Jamie Gallagher

1    A P P E A R A N C E S :

2    PACHULSKI STANG ZIEHL YOUNG & JONES, LLP

3         Attorney for the Debtor

4         919 N. Market Street

5         17th Floor

6         Wilmington, DE 19899

7

8    BY:  JAMES O'NEILL, ESQ.

9

10   KIRKLAND & ELLIS, PC

11        Attorneys for the Debtor

12        300 North LaSalle

13        Chicago, IL 60654

14

15   BY:  JOHN DONLEY, ESQ.

16        LISA ESAYIAN, ESQ.

17

18   SPEIGHTS & RUNYAN, LLC

19        Attorneys for Anderson Memorial Hospital

20        2015 Boundary Street

21        Suite 239

22        Beaufort, SC 29902

23

24   BY:  DANIEL SPEIGHTS, ESQ.

25        GIBSON SOLOMONS, ESQ.

1   KOZYAK TROPIN THROCKMORTON, LLP

2        Bankruptcy Counsel for Anderson Memorial Hospital

3        2525 Ponce de Leon

4        9th Floor

5        Miami, FL 33134

6

7   BY:  DAVID ROSENDORF, ESQ.

8

9   FERRY JOSEPH, PA

10        Counsel for Anderson Memorial Hospital

11        824 Market Street

12        Suite 1000

13        Wilmington, DE 19801

14

15   BY:  THEODORE J. TACCONELLI, ESQ.

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  Good morning everyone.

4     (Chorus of good morning)

5          MR. O'NEILL:  Good morning, Your Honor.  James

6  O'Neill appearing on behalf of W.R. Grace from Pachulksi

7  Stang Ziehl Young & Jones.  And appearing with me today are

8  my co-counsel from the Kirkland & Ellis firm, John Donley

9  and Lisa Esayian.

10         MR. DONLEY:  Good morning, Your Honor.

11         THE COURT:  Good morning.

12         MS. ESAYIAN:  Good morning, Your Honor.

13         MR. O'NEILL:  Mr. Donley and Ms. Esayian have been

14  involved in the W.R. Grace case for many years, but I don't

15  know that they've appeared before Your Honor.  So this is

16  the first time appearing before you.  Also with us today is

17  our client, Richard Fink, who is vice-president and

18  associate general counsel of the reorganized debtors.

19         Your Honor, turning to the agenda, item number 1

20  is continued and the Court has entered an order with respect

21  to item number 2.  Item number 3 is Anderson Memorial's

22  motion.  And I'll yield the podium to Anderson Memorial.

23         THE COURT:  Very well.

24         MR. O'NEILL:  Thank you.

25         MR. SPEIGHTS:  Good morning, Your Honor.  I'm

1    Daniel Speights of Speights & Runyan from South Carolina.

2    With me at counsel table is my law partner Gibson Solomons

3    and next to Mr. Solomons is David Rosendorf of Kozyak Tropin

4    and Throckmorton out of Miami, who is now bankruptcy

5    counsel, that is Anderson's bankruptcy counsel, for a number

6    of years.  And next to Mr. Rosendorf is Ted Tacconelli of

7    Ferry Joseph, who is our Delaware counsel in this matter.

8            Your Honor, I feel like I have represented

9    Anderson Memorial Hospital since the beginning of time, as I

10   look around --

11           THE COURT:  Based upon my review of the

12   submission, it appears that way.

13           MR. SPEIGHTS:  As I look around the courtroom,

14   there's only one other person who was present at the

15   creation and that was Mr. Fink, who's here today.  So

16   Mr. Fink and I are probably the only people around now that

17   can recite the chapter and verse of the history of Anderson

18   Memorial.

19           I acknowledge at the outset that this dispute has

20   a long history.  However, I really do not believe it is

21   necessary to go into that history today.

22           THE COURT:  I might tend to agree with you, but

23   maybe for not the same reasons that you might say, because

24   I'd like you to first address a hurdle that seems to me it's

25   virtually impossible for you to overcome with respect to the

1    relief that you've requested and that is, there's a

2    confirmation order which confirmed a plan, which has been

3    upheld on appeal, and which various courts have discussed

4    many of the issues you raise yet again today, why and how --

5    maybe how's the better question, can I look beyond that?

6              MR. SPEIGHTS:  We don't ask you to look beyond

7    that, Your Honor, we embrace the plan.  We think the plan is

8    the strongest thing in the entire record supporting class

9    certification of this matter.

10             THE COURT:  But doesn't it make you -- the plan

11   treatment of seven, eight claimants clear and are you not

12   obligated to follow that process?  Are you not -- and does

13   not the plan require that process to move forward?

14             MR. SPEIGHTS:  Your Honor, the plan, first of all,

15   recognizes that Anderson Memorial Hospital has a right to

16   appeal the denial of certification.  So the plan recognizes

17   that there may be a class action on behalf of Anderson

18   Memorial Hospital.  So that's number one.

19             THE COURT:  But you don't think confirmation of

20   the plan constitutes a final judgment on that issue I take

21   it?

22             MR. SPEIGHTS:  Well, the plan itself recognizes

23   that Anderson still has its rights to appeal the

24   confirmation.  There's a problem that we have to go to trial

25   probably first.

1           THE COURT:  Which you did and lost.

2           MR. SPEIGHTS:  We haven't been to trial.  We

3    haven't tried the case.  Let me just briefly address that.

4    Under class action law, it is pretty well accepted that you

5    cannot appeal a confirmation until the underlying claim or

6    case has been tried.  So absent reconsideration, we would go

7    to trial.  And we can't settle.  Anderson is a class

8    representative.  It has a duty to the class.  So we would

9    have to try the Anderson individual claim before Your Honor,

10   a trial that might take some time, and win or lose, we could

11   then appeal to the District Court in the Third Circuit and

12   ask for a reversal of Judge Fitzgerald's denial of class

13   certification.  Grace says that in its brief.  We say that's

14   probably the way it would have to happen and then if we get

15   a reversal in the Third Circuit, we will be back here.  In

16   accordance with the plan, we will be back here with a

17   certified class and we will ask Your Honor to try the

18   certified class in accordance with the plan of

19   reorganization.

20           The plan itself, again, recognizes that there are

21   a substantial number of property damage claims and it

22   provides individual remedies of those claimants.  Each one

23   of those claimants can seek to file his case individually.

24   Maybe some of them here with a motion for late filed claims.

25   Maybe some of them will pass through this gauntlet and be

1    tried later.  And that process will go on for years.

2    But --

3              THE COURT:  Well, one of the issues or one of the

4    reasons Judge Fitzgerald denied the request for class

5    certification and the District Court affirmed that was that

6    she felt and held that class certification process would be

7    an improper end around the bar date.  What say you to that?

8              MR. SPEIGHTS:  I say number one, a lot has changed

9    since then, and that's the basis for our motion.

10             THE COURT:  Well what --

11             MR. SPEIGHTS:  But I want to say more

12   importantly --

13             THE COURT:  Wait a second, other Frenville, which

14   the Third Circuit discussed, other than that, what?

15             MR. SPEIGHTS:  I know I'm a pain, Your Honor.

16   First of all, Judge Fitzgerald found that you had to file an

17   individual claim to be a part of the class, okay, because

18   there wasn't numerosity without that.

19             THE COURT:  What she found was that if you wanted

20   class treatment, you had to file a motion requesting it and

21   apparently you never did.

22             MR. SPEIGHTS:  Your Honor, that's -- I don't know

23   which issue you want me to address first.  I've got that

24   issue and -- I've got 14 reasons why Judge Fitzgerald would

25   run on that issue.

1          THE COURT:  I read them.

2          MR. SPEIGHTS:  Well, I didn't actually elaborate

3    on all of them, but I did briefly say that.  Let me go back

4    to the plan and then go back to what's changed.

5          Under the plan, which is the biggest change,

6    unlike the situation that existed in 2008 when Judge

7    Fitzgerald ruled, there are a substantial number of PD

8    claims.  The universe is not limited to those who filed

9    individual claims.  There are a substantial number of PD

10   claims that can be tried individually and paid 100 cents on

11   the dollar if allowed.

12          I'll tell Your Honor about the bar date.  If

13   theoretically every member of the class got actual notice,

14   actual notice, which of course is impossible in a tort case,

15   but if they had actual notice, I would still be before Your

16   Honor saying there now needs to be a class treatment because

17   this is a classic Rule 23 issue.  You're either going to

18   have a multiplicity of individual trials or, consistent with

19   the plan and its recognition of Anderson as having a right

20   to be a class representative, you will have one trial in

21   this Court, a bench trial on behalf of all the property

22   damage claimants, all the present property damage claimants

23   less opt outs.  That's a classic Rule 23 issue.  That was

24   not the issue before Judge Fitzgerald.

25          Judge Fitzgerald was dealing with a situation

1   where she believed, and I respect Judge Fitzgerald for this,

2   that the bar date limited any participation of property

3   damage claimants from recovery in this bankruptcy.

4           THE COURT:  Well, she also found you didn't meet

5   the numerosity requirement.

6           MR. SPEIGHTS:  And, Your Honor, it's

7   understandable that Judge Fitzgerald said there's no

8   numerosity if you say that all claims are barred unless they

9   were filed individually before the bar date.  Now we would

10  say, well, we have a class claim with 3,000 claimants

11  attached to the claim form also filed in accordance with the

12  bar date.  But Judge Fitzgerald, his opinion was that would

13  disrupt the development of a plan.  Now we have a plan and

14  now we have a plan that permits this.  But leaving that

15  aside, she ruled it was a lack of numerosity.  And that's

16  the issue, the fundamental issue that was a basis of that

17  decision.  But the basis was you --

18          THE COURT:  Well, she also dealt with the 23(b)

19  issue as well, right?

20          MR. SPEIGHTS:  Well, she also dealt with the term

21  superiority on the grounds that if there are -- if you are

22  limited to the individual claims that were filed before the

23  bar date that have not been settled, then in

24  Judge Fitzgerald's view, there was a lack of superiority as

25  well.

1              But if you go back to my fundamental point, Judge

2      Fitzgerald did not have a plan before.  The plan had not

3      been filed.  The proposed treatment for property damage

4      claims had not been filed.  There was a major

5      (indiscernible) change, excuse me, when the plan was filed.

6      The (indiscernible) change was that rather than resolving

7      claims within the bankruptcy and it limited to just those

8      who filed individual claims, there are, because Grace wanted

9      a 524(g) injunction.  They're not (indiscernible), they

10     recognize that.  And to get a 524(g) injunction, they

11     retained an expert witness who testified and convinced the

12     District Court and the Third Circuit, in opposition to us on

13     a 524(g) injunction, they convinced both Courts that there

14     were a substantial number of PD claims.  Ipso facto, there

15     is numerosity because that's entirely different in Judge

16     Fitzgerald's view before, and I'm not criticizing Judge

17     Fitzgerald, before Grace filed this plan saying that there

18     are a substantial number of PD claims.

19             Now, Your Honor, we're asking you about -- I'm

20     ready to move to the question of you didn't comply with

21     filing on time, but I don't want to leave this issue because

22     obviously it's the fundamental issue involving the Court

23     about whether there's some way we are proceeding in a way

24     inconsistent with the plan.  I firmly believe, and I believe

25     what we're asking today is for discovery but whether we get

1    discovery or not, we're asking to brief class certification.

2          There's a whole lot here that we want to say in

3    the brief for class certification.  We're asking for a

4    scheduling order and class numerosity discovery.  And

5    whichever way you rule on that, Your Honor, we want to file

6    our brief on class certification to make all of these points

7    to you.  What we will say in that class certification brief,

8    there are far stronger reasons for certifying the class now

9    in light of the plan and the changed conditions than there

10   were before Judge Fitzgerald in 2007 when we argued the

11   matter.

12          I mean, in reality, Judge, Judge Fitzgerald was

13   legitimately concerned about anything that would delay --

14   further delay, I might add, the confirmation of a plan of

15   reorganization in this case which had been going on

16   altogether too long.  And she says on the last page of that

17   order that she was concerned that certification of a class

18   would prolong the development of a plan.

19          THE COURT:  Well --

20          MR. SPEIGHTS:  That's not the case now.  We have a

21   plan.

22          THE COURT:  -- notwithstanding that, she concluded

23   on the merits that you were entitled to class certification

24   and the District Court affirmed that decision.

25          MR. SPEIGHTS:  Your Honor, respectfully, the

1   District Court did not affirm that decision.  I understand

2   there's some language in the District Court opinion that I'm

3   not real pleased with.  We asked the District Court --

4           THE COURT:  But when he said the Bankruptcy Judge

5   was right, I guess you didn't think that was such a good

6   thing, but that's what the District Court said.

7           MR. SPEIGHTS:  The District Court said that, Your

8   Honor, without any briefs on the merits.  I mean, we briefed

9   whether we're entitled to an interlocutory appeal.  And we

10  tried to go to the Third Circuit and the Third Circuit would

11  not take the case because it had no jurisdiction.  So we

12  have not had our final day of Court on that.

13          But regardless, again, I'm not here to criticize

14  the District Court today.  If the District Court, based upon

15  what was in front of Judge Fitzgerald believed that, and I

16  assume the District Court believed that because the District

17  Court said that -- even if the District Court believed that,

18  this is an entirely new landscape before you than what's

19  before Judge Fitzgerald.

20          We now have the fundamental issue effectively

21  reversed by the plan, the fundamental issue of numerosity.

22  We have that as an established fact.  We now have a 100 cent

23  plan.  And we now have a classic Rule 23 issue.  Is this

24  Court, over a period of years, and there is no time limit on

25  this -- is this Court or other Courts in the United States

1   going to deal with the individual trials of asbestos

2   property damage cases or does this Court want to do what

3   Judge Kelly in Philadelphia did with the school class

4   action, which was affirmed by the Third Circuit, and say

5   it's far more efficient -- it makes far more sense to have

6   one class action to deal with this.

7              Incidentally, W.R. Grace consented to a class

8   action in the school's class action.  W.R. Grace moved with

9   the plaintiff's counsel there for a class action which

10  resulted in that landmark Third Circuit decision in the

11  school's class action.  And there's no difference here.  In

12  fact, there are even stronger reasons, perhaps, for a class

13  action in light of the plan here that existed for the

14  school's class action.

15             You know, W.R. Grace said in its first pleading in

16  this case after its petition, it's called an informational

17  brief, is -- I know it by heart, it's docket number 6.  They

18  said these claims should be tried -- all these claims in one

19  bench trial.  That was W.R. Grace's position when it filed

20  the case.  Now we come along and say, we agree with you.

21  They should be tried in one bench trial as a Rule 23 class

22  action and resolve these matters once and for all in one

23  case, in one forum before the Bankruptcy Judge in Delaware.

24  That's the result of years of litigation which had pushed us

25  to this.

1              And while Grace should celebrate that it got its

2      plan affirmed, I can celebrate that it got its plan affirmed

3      on appeal by the Third Circuit.  In order to do that, it had

4      to take positions, understandably it had to take positions

5      that there are a substantial number of PD claims and open

6      the door, I think wide open, for a class action for the

7      benefit, of course Anderson wants that.  I think it's for

8      the benefit of the Court, this Court, and other Courts.  I

9      think it's for the benefit of Grace to have one case and

10     decide these issues.

11             But I want to go back where I was, Judge.  And I'm

12     happy to discuss the waiver issue.  I haven't forgotten you

13     asked me about that.  We are -- I made a decision when we

14     filed this motion to ask Your Honor, first, for limited

15     numerosity discovery.  The record on that matter is

16     incomplete.  Clearly there's been numerous buildings out

17     there, but the record is incomplete because Judge Fitzgerald

18     granted Grace's motion for protective order based upon her

19     view that the class would be limited to those who filed

20     individual claims, which was the law before American Reserve

21     came out in the late 1980's.

22             So we want to have our record on that.  Now, let

23     me back up one more step, Your Honor.  Judge Fitzgerald

24     actually did not need to reach, at least she did not

25     discuss, other issues because we met this wall.  We met the

1    wall the first time we ever appeared before Judge

2    Fitzgerald, before Grace even filed its responsive brief to

3    class.  "Mr. Speights, I don't see how a class is needed

4    when we have a bar date order and we are limited to

5    those" --

6             THE COURT:  One moment, sir.  All right.  The

7    recording system has a little hiccup, so if you'd wait one

8    moment until we --

9             MR. SPEIGHTS:  Yes, sir.

10            THE COURT:  -- fixed it.  I'd appreciate that.

11       (Recess)

12            THE CLERK:  All rise.  Be seated, please.

13            THE COURT:  All right.

14            MR. SPEIGHTS:  Your Honor, before picking back up

15   where I left off, I want to return to that shortly but I'd

16   like to do a little mop up operation and then get back to

17   that.

18            THE COURT:  Go right ahead.

19            MR. SPEIGHTS:  And I'm specifically concerned

20   about the issue you raised about Judge Fitzgerald suggesting

21   that either I needed to file a motion to certify or a motion

22   to file a class proof of claim back at a 2002 hearing which

23   appears in footnote 5 of our order.

24            THE COURT:  I didn't think it was a suggestion.

25            MR. SPEIGHTS:  Well, I think I -- if you read the

1    2002 February transcript and nothing else, I would agree

2    with Your Honor.  I would also point out that at that 2002

3    hearing when Judge Fitzgerald made that statement, it was

4    there on a motion for case management order including a bar

5    date.  The lawyer for the property damage committee

6    immediately said to Judge Fitzgerald, if you have that

7    requirement, I think the bar date notice should include that

8    requirement.  And Judge Fitzgerald readily agreed without

9    equivocation and told Grace that it would have to be in the

10   bar date notice.

11            What happened then, Judge, was there was no

12   written order then.  The written order came two or three

13   months later in April when Judge Fitzgerald signed the bar

14   date order and approved the notice.  By that time, two more

15   hearings had been held on that motion, that motion for case

16   management order: a hearing in March and a hearing in April.

17   And during those two hearings, Grace, which by the way had

18   never suggested beforehand that you needed permission and,

19   in fact, at a January hearing had suggested just the

20   opposite.  But in any event, at the March and April

21   hearings, Grace and the attorney for the personal injury

22   committee, Mr. Lockwood, who's also -- which the committee

23   is also a plan proponent, told Judge Fitzgerald that they

24   ought to follow the rule that Judge Newburg -- Judge Newsome

25   had said in another case that anybody can file a class proof

1    of claim and that they didn't want, for reasons that I can

2    discuss, but they didn't want such a requirement in the bar

3    order needing permission.  They didn't want to tee up class

4    litigation upfront, especially in fairness with respect to

5    ZAI litigation, but we were both there together, ZAI and

6    traditional PD claimants.

7            So Judge Fitzgerald, on the record at those

8    hearings, agreed and deleted one requirement about not being

9    able to rely on Anderson from the class notice and has no

10   provision whatsoever about requiring permission to file a

11   class claim, which Judge Fitzgerald said should be there in

12   response to Mr. Baena, the PD lawyer, if it had included

13   that.  So, as somebody who was at the February hearing and

14   probably the March and April hearings, the record is

15   absolutely clear when you read all three transcripts that

16   Judge Fitzgerald changed her mind on that.  But most

17   importantly, Your Honor, the order that resulted from that

18   hearings is a bar order.  And a bar order does not have that

19   requirement in it.

20           In addition, Your Honor, as we pointed out and as

21   Judge Fitzgerald, in fairness, recognized, that is not a

22   requirement as a matter of law.  Both American Reserve, and

23   in re Charter (ph), and probably other cases say that you

24   don't file a request for class certification until there is

25   a contested proceeding; until, as there was in this case,

1    Grace objected to the claim.

2            THE COURT:  Okay, well, let's move on.

3            MR. SPEIGHTS:  All right, well I would -- I do

4    want to say three claimants filed class proofs of claim and

5    none of them sought permission.  In any event, I want to get

6    back to the main question Your Honor asked me upfront.

7            Your Honor, when Judge Fitzgerald conducted a

8    hearing in 2007 on this matter, she understandably did not

9    consider Masonry Fill.  And I say understandably because her

10   view was "if they didn't file a claim by the bar date, they

11   can't be in your class, Mr. Speights."  Not one individual

12   masonry claim was filed.  It's not identified in the bar

13   notice itself as an individual product.  And yet we know

14   that Grace has this vermiculite mine.  It takes the bag of

15   vermiculite and puts a label on it called ZAI and takes a

16   bag of vermiculite and puts another label on it called

17   Masonry fill.

18           Now thousands of ZAI claimants filed pursuant to a

19   separate bar date order (indiscernible) notice.  There's not

20   one Masonry Fill.  Now Anderson Hospital's class proof of

21   claim, with attachments of records about Masonry Fill sales,

22   seeks certification of the class to include Masonry Fill.

23   Masonry Fill's last hope is Anderson in this case, and we

24   didn't get that far with Judge Fitzgerald.  She didn't have

25   to analyze the fact that no Masonry Fill had been filed.

1    Again, we're not attacking the bar date order.  I'll say

2    that over and over again, but she did not consider that in

3    context because if the rule was if it didn't file, you can't

4    have a class, you don't need to consider that.

5            The other thing that Judge Fitzgerald did not

6    consider in 2007 are products known as MK-4, MK-5, and MK-6,

7    Your Honor.  Not only did Grace put vermiculite in the bag

8    of ZAI, it was vermiculite, and Masonry Fill, it added

9    vermiculite to its fire proofing products.  MK-3 was

10   vermiculite, about a third, and some commercial asbestos.

11   And when it pulled it from the market in '73, it continued

12   to make monokote-4, then monokote-5, I believe monokote-6

13   with vermiculite.  Well, vermiculite is contaminated with

14   asbestos.  It's the reason that ZAI claimants have got a

15   pile of money from this bankruptcy.  Vermiculite is in

16   Masonry Fill and vermiculite is in those other products.

17   Those products are not specifically identified in the bar

18   date notice.

19           I do not know as I sit here whether Grace contends

20   its bar order bars litigation involving its MK-4, 5, and 6

21   parties.  I honestly don't know.  If Grace contends that the

22   bar order does not apply to those products, fine, they're

23   not in my class.  But if Grace contends they are barred by

24   the bar date order, that's another product in this class

25   that has gotten no attention whatsoever.  And again, Judge

```
1    Fitzgerald didn't have to reach that because she was back at
2    door number one that you can't have a class because a class
3    is limited to people who file individual claims.
4           Thus, Your Honor, I anticipated, I'm not sure who
5    else did, when Judge Fitzgerald ruled there would probably
6    be an administration by a trust.  I certainly didn't
7    anticipate litigating all the claims.  And I didn't
8    anticipate there being a 100 cents on the dollar plan.
9    That's unique in the asbestos world for property damage
10   claims.
11          THE COURT:  It's unique pretty much in any world.
12          MR. SPEIGHTS:  Right.  And so -- and I don't think
13   -- I can't read Judge Fitzgerald's mind, I don't think she
14   anticipated all of that.  I think she wanted a plan
15   confirmed.  As it turned out, ZAI's paid by a trust, a
16   percentage on the dollar.  PI is paid by a trust, a
17   percentage on the dollar.  But traditional PD, for whatever
18   reasons, under the plan and I love the plan -- I'll tell you
19   again, I love the plan because the plan provides that all of
20   the property damage claimants will have at least a day in
21   Court to say they should proceed with their lawsuits, either
22   individually, or because Anderson is recognized, through
23   Anderson.
24          The one other thing before I leave what Judge
25   Fitzgerald had, and I know that my bankruptcy lawyer,
```

1    Mr. Rosendorf, he loves to talk about Frenville and Owens

2    Corning and that line of cases, Grossmann's, etcetera.  But

3    the case that I think is huge in this matter as a change

4    which occurred is Judge Buckwalter's reversal of Judge

5    Fitzgerald in the State of California case, because that was

6    also a (indiscernible) change where Judge Buckwalter,

7    against Grace's arguments, recognized that claims do not

8    accrue simply because of what you know.  Claims do not

9    accrue until there's injury and there is contamination.

10            Now, Your Honor, to repeat perhaps what I said

11   earlier -- I'm not sure what I said earlier, frankly.

12   Regardless of what Judge Fitzgerald did and had before in

13   2008, we now know that claims are not limited as she

14   thought.  We now know that claims do not accrue until

15   there's injury.  We know that claims we litigated as opposed

16   to being determined by a trust.  We know that there's 100

17   percent plan.  And we know that Anderson's rights are

18   preserved under the plan.

19            So I say to Your Honor in response to your initial

20   question that number one, the plan is the strongest basis

21   for certification in this matter.  Let me say that we not

22   only embrace the plan, Your Honor, but I recognize that you

23   are in charge of this plan.  This is your plan now.  You

24   have inherited this plan from Judge Fitzgerald.

25            THE COURT:  Trying to cheer me up?

1          MR. SPEIGHTS:  I do not want to change a semicolon

2     in that plan.  I'm not going to come before you -- if you

3     say we're alive and somewhat well when we leave here today

4     and ask you to modify that plan one semicolon, one period,

5     one word, it's the plan that we rely on so --

6          THE COURT:  That's right.  Only plan --

7          MR. SPEIGHTS:  -- we are not in opposition to --

8          THE COURT:  -- proponents can ask for

9     modifications, so --

10         MR. SPEIGHTS:  Well --

11         THE COURT:  -- it wouldn't matter even if you did

12     ask.

13         MR. SPEIGHTS:  Right, I understand it, but they

14     made a choice when they proposed this plan.  It was

15     extraordinarily different than what I thought it would be.

16     We appealed because we wanted to go back to South Carolina

17     and the Seventh Circuit said no -- excuse me, the Third

18     Circuit said, "No, you will before the District -- before

19     the Bankruptcy Judge in Wilmington."  And that's what brings

20     us here.  But we do not want to amend that plan.

21          And I'll say something else that might seem

22     strange given the history, we are -- that is, Anderson is,

23     the bar date order's best friend.  We are.  Anderson's

24     counsel, my law firm, was counsel in the (indiscernible)

25     appeal where the Third Circuit upheld the bar order.  You're

1    not going to see somebody from my law firm or my co-counsel

2    come in here and argue against the Third Circuit decision on

3    that point.  I think there are problems with it, as I

4    pointed out, but that's not the issue in this case.  What's

5    going to happen, Your Honor, the reason we're the best

6    friend is, absent class certification -- if there's class

7    certification, everybody's protected as of March of 2003

8    when we filed the class claim.  If there's certification,

9    the cases hold we had authority to represent all of these

10   people as of March of 2003.

11          What's going to happen is if there's no

12   certification, if there's no class, is people are going to

13   start filing late filed claims.  And I think, without

14   question, some of those people are going to come in and say

15   we have excusable neglect because Grace did not notify us.

16   And therefore we want to have discovery concerning the bar

17   date and what records Grace had.  Those are the people who

18   are out there that could challenge the bar date.  Anderson

19   is not challenging it.  It filed its class claims as of the

20   time of the bar date.

21          Lastly, Your Honor, I go back to the beginning.  I

22   understand the Court's concerns.  Unfortunately, those

23   concerns have not been addressed yet except in a very

24   summary matter in my motion.  We have asked to file either

25   -- hopefully after some discovery, but if no discovery

1    promptly, our motion to certify in which we will address all

2    of the issues, and we certainly will address the issues that

3    the Court has raised today.  We want to have our opportunity

4    to fully address these.

5            It's a complicated record, but obviously given

6    this history and given not only of the bankruptcy, but of

7    the matter before Fitzgerald, there are a number of issues

8    floating around there.  But if Your Honor has concern about

9    anything, in addition to being concerned about our

10   undermining the plan or the question of what Judge

11   Fitzgerald said in that hearing, we really have not

12   addressed those issues yet, Your Honor.  We really came in

13   here to say we want discovery, Your Honor.  We want to

14   correct the record so that when eventually we get up to the

15   Third Circuit, the record is clear on what the numerosity

16   discovery would show.

17           It's clear what Grace had so that we can tell the

18   Third Circuit, hopefully after first telling you and

19   convincing you and the District Court that this is a

20   manageable case.  It is a superior case for many reasons,

21   but among other reasons, it's a superior case because there

22   are, in fact, computer -- there is a computer database upon

23   which we can actually identify and when we, as class

24   counsel, want to go out and notify class members, and get

25   information, and deal with class members, we're not -- we're

1   not going to give the same notice that Grace did, which is a

2   minimum notice to comply with due process under the Mullaney

3   test, okay, which the Third Circuit upheld.  We want to be

4   able to affirmatively, and aggressively, contact every

5   potential PD claimant and give them notice of this, notice

6   of the pendency of the case, be able to set up

7   communications with those people in order to represent them

8   well as a part of the class.  And when we argue superiority,

9   I'll say I would love to have those records.  But regardless

10  of whether we have discovery or not, we want to brief the

11  matter.

12          THE COURT:  What's supposed to happen under the

13  case management order, which governs class 7A claims, what's

14  supposed to happen?

15          MR. SPEIGHTS:  Well, clearly I can tell you what's

16  supposed to happen to Anderson, but Anderson is almost

17  unique.  Anderson is the one claim filed before the bar date

18  that will be litigated in this Court, clearly.  At the other

19  end of the spectrum there are future claims.  Now when

20  somebody's been involved in asbestos bankruptcy since

21  (indiscernible), bankruptcy many years ago, I tell you quite

22  candidly, Your Honor, that we have debated for many years

23  whether there is such a thing as a future PD claim.  And

24  many people who support the idea now strongly opposed it in

25  the past and vice versa.  We appealed the issue to the Third

1   Circuit and said there's no such thing.  The Third Circuit,

2   I think, found it an intriguing issue and it ruled against

3   us because of the language of 524(g).

4          What the Third Circuit did not tell us is what is

5   the future PD claim?  If Your Honor proceeds on the class as

6   something that will be teed up, I'm sure Grace will want to

7   be heard on that.  I'm confident (indiscernible) PD future's

8   representative will be heard on that, and we will want to be

9   heard on that, but --

10          THE COURT:  Let me try asking the question a

11   different way because I'm not hearing the kind of answer

12   that I'm looking for.  So, let me ask it this way.  Doesn't

13   the case management order contemplate that the claim that

14   was filed would first go through the process before we

15   address the class issue or do you disagree with that?

16          MR. SPEIGHTS:  I disagree with that, Your Honor.

17          THE COURT:  Okay, tell me why.

18          MR. SPEIGHTS:  I don't -- I have not read that in

19   the plan to say that.  You asked me about a negative.  I

20   have read nothing that suggests to me that Rule 23 is

21   suspended and that you cannot reconsider class certification

22   pursuant to Rule 23 at any time, for me or for Grace.

23          THE COURT:  Well, until the entry of the final

24   judgment, but okay.

25          MR. SPEIGHTS:  Right.

1              THE COURT:  Thank you.

2              MR. SPEIGHTS:  Thank you, Your Honor.

3              MR. DONLEY:  Hello, Your Honor.  John Donley on

4     behalf of Grace.  I'd like to -- before I turn to discovery,

5     which is the specific request as clarified by their reply,

6     I'd like to very briefly respond to counsel's contention

7     that the Third Circuit's affirmance is the (indiscernible)

8     change that helps him and justifies reopening class

9     certification or discovery.

10             Setting aside the finality and substantial

11    consummation issues that are there, there are four reasons

12    why the Third Circuit's affirmance does not help him.

13    Number one is the Third Circuit specifically ruled that

14    Anderson Memorial does not have standing to represent

15    individual putative class PD claimants.

16             Number two, they specifically discussed and

17    rejected his argument which he raised as a plan appeal as a

18    feasibility issue that the overruling of Frenville by

19    Grossmann's was going to lead to a large number of

20    substantial new property damage claims.

21             Number three, and this picks up Your Honor's

22    question about how the class 7A case management order works.

23    The Third Circuit affirmed a program laid out in the class

24    7A case management order.  That is completely antithetical

25    to class treatment.  It provides the stepwise process where

1   if the claimant comes in, whether it's a so-called gap

2   claimant who hasn't submit -- didn't submit by the bar date

3   can come in and file with the PD trust, can argue excusable

4   neglect, can argue its claim, should not be discharged for

5   due process reasons, can argue all of that.  There are 17

6   specific points the state law, when the building -- when

7   asbestos was in the building, when asbestos was discovered.

8   All those 17 points are laid out in the plan.  And they go

9   stepwise first to the PD trust.  Grace gets a chance to

10  comment.  And then it gets litigated before Your Honor.

11          And if Your Honor rules that the claim is not

12  discharged, it gets litigated in the District Court of

13  Delaware or any other District Court.  Very fair procedure

14  compliant with due process, affirmed by the Third Circuit,

15  and something that the class mechanism doesn't allow

16  individualized treatment to do.

17          Fourth, with regard to his point that the Third

18  Circuit found, he claims, that there are and will be

19  substantial property damage claims, that is completely

20  incorrect.  He also -- he made the same argument with regard

21  to our expert witness at the confirmation hearing,

22  Dr. Denise Martin.  He said in his papers that she estimated

23  in her testimony that there would be substantial future

24  property damage claims and that the claims would number as

25  high as 464,000.  She made no such estimate.  The Third

1    Circuit made no such finding.  What we're talking about here

2    is a very specific section of 524(g) with two prongs.  It's

3    524(g)(2)(B)(ii) and then the two prongs are prong (I) and

4    prong (II).

5          The first prong -- both are required to affirm a

6    524(g) plan.  The first prong, 524(g)(2)(B)(ii)(I), says

7    that the Court has to find that there will be substantial

8    future demands.  Prong (II), which Mr. Speights omitted to

9    mention in his brief, says the Court has to find that the

10   amount, the number, and the timing of those future demands

11   are indeterminate.  And that's what our expert Dr. Martin

12   opined, that's what the Third Circuit found.  She said, will

13   there be future property damage demand?  She said most

14   likely, in her opinion.  Will there be any merit to them at

15   all?  She couldn't say.  What will be the quantity?  She

16   can't say.  I am providing no estimate.  That was her

17   testimony.

18         And the 464,000 figure that he cited is very

19   misleading.  That was in a factual background section of her

20   report where it had nothing to do with Grace.  She recited a

21   McGraw-Hill article that had estimated the number of steel

22   frame buildings built in the US from 1959 to '73.  She

23   recited a listing of structures with Acoustical Framing or

24   Acoustical Plaster, rather, in the US from 1940 to '73, just

25   as background facts about US construction, no tie to W.R.

1   Grace, no tie to asbestos containing materials from Grace,

2   no estimate period.  So that was strictly a compliance with

3   524(g).  It made no factual finding about how many PD claims

4   there would be at all.

5           And where's the evidence he submitted of any

6   claims since we've gone effective?  We went effective on

7   February 3rd, 2014.  The PD trust is -- I mean, there's a

8   telephone sitting there on a desk that has not rung eight

9   hours a day, five days a week for 15 months.  The poor guy

10  sitting there like the Maytag repair man at the PD trust

11  hasn't gotten any claims.

12          THE COURT:  Reminds me of the prop our estates

13  professor used in law school.  He had a telephone.  He used

14  to call it the magic telephone because you really couldn't

15  call up and find out what the decedent really wanted unless

16  it was in the will, but I understand the point.

17          MR. DONLEY:  The phone -- there's an old Jimmy

18  Buffet song, if the phone doesn't ring, it's me.  And that

19  phone has not rung for 15 months.  So let me turn to the

20  issue of discovery because that's their specific request as

21  clarified by the reply.  We obviously think it's improper

22  but --

23          THE COURT:  Well, let me -- just so that we're

24  clear for the record.  While we spent most of the -- or I

25  have anyway -- most of the argument talking about, frankly,

1    the underlying merits of requests for class certification,

2    what's before me today is limited to a request for

3    discovery.

4              MR. DONLEY:  Yes, sir.

5              THE COURT:  Okay.

6              MR. DONLEY:  And I'd like to address that --

7    that's the gist of my comments and then I'll have one other

8    topic about their standard of review they have to meet at

9    the end.  But let me address most of my comments to the

10   discovery request.

11             The key point is that for approximately 20 years,

12   Your Honor, going back about almost nine years, more than

13   nine years before the petition date even, Anderson Memorial

14   had extensive nationwide discovery on numerosity, on the

15   Grace sales invoices, records, billing registers, and all

16   the asbestos containing materials Grace sold.  And you don't

17   have to just take my word for it.  I'm going to quote from

18   Mr. Speights reply brief where he said at page 2, Anderson

19   Memorial had "extensive nationwide discovery that it has

20   garnered against Grace over many years."  His words.  It is

21   conceded.  He then sidestepped and said, we're not going to

22   talk about that now.  We don't want to talk about it now.

23   We may talk about it later and come back.

24             We also got some specifics on that discovery from

25   him in Exhibit D to the reply which was an affidavit of

1    Murdoch (ph) which clarified that in 1995 -- this goes back

2    now six years before even a petition date.  They had massive

3    discovery going on.  They went up to the Grace document

4    depository in Boston, got all the records, got access,

5    copied them.  I thought it was 15 bankers' boxes, their

6    affidavit said 7, but it doesn't matter.  They got all the

7    sales records and billing registers and have them at least

8    now electronically loaded and manipulated.  So this was in

9    1992.

10           They filed the putative nationwide class in South

11   Carolina.  That's the case that he's still pursuing,

12   Anderson Memorial vs. Grace.  It was tailored in '96 by a

13   ruling in South Carolina to limit it to statewide class

14   members.  And Mr. Speight's firm spent 12,000 hours on that

15   litigation pre-petition.  Again, that's in his motion at

16   page 12.  12,000 hours.  Very substantial effort.  And, you

17   know, I don't believe for a second that was just sitting

18   around at the library researching cases on Westlaw.  They

19   were taking discovery, interviewing witnesses, finding

20   facts, finding buildings for 12,000 hours, culminating in a

21   two day evidentiary hearing.  They used all that discovery

22   in a two day evidentiary hearing in 2000, again, the year

23   before Grace's petition.  That's from their motion at page

24   12 again.

25           They went up to the depository -- they not only

1    copied all the documents from Grace's depository, they got

2    to take the depositions of -- there were two outside lawyers

3    for Grace who ran that depository up in Boston: Mr. Murphy

4    and Mr. Murphy, no relation.  I think one was Rob Murphy,

5    one was Matt -- I mean, the name doesn't matter, but they

6    took the Murphy's depositions, all the ins and outs of how

7    the depository runs, how the records are kept.  Had full

8    access to all of that.

9              Then when the Chapter 11 case gets filed here in

10   2000, they made full use of those years of extensive

11   discovery in the Chapter 11 case in four respects.  Number

12   one, they used those extensive Grace sales records to

13   prepare and file more than 3,000 individual proofs of claim.

14   And just as an aside, if they have the connection with these

15   3,000 people, why haven't they contacted even one and been

16   able in the 15 months since emergence to file a -- to start

17   the 7A process going.  There hasn't been one.  But they

18   prepared and filed more than 3,000 individual proofs of

19   claim.  A lot of them were expunged or withdrawn as you've

20   seen in our papers.  I won't repeat all that chronology with

21   Judge Fitzgerald.  And by the time of the class

22   certification hearing, excuse me, in July 2007 there were

23   only 159 left.  And Judge Fitzgerald -- Anderson and 158

24   others, and Judge Fitzgerald cited that with support of her

25   numerosity finding.

1             Second thing they did in specific support of their

2    class certification motion which was dated

3    October 21st, 2005, Anderson Memorial identified thousands

4    of individual property damage claimants in that motion and I

5    quote from that motion.  This is at page 4 of their motion

6    cited in our response at pages 8 and 9, they stated we have

7    obtained from "Grace's own records which identified

8    thousands of known buildings by street address."  So they

9    had that discovery, had those records.

10            Number three, time came for the class

11   certification hearing on July 5th, 2007.  And this is where

12   the famous 15 bankers' boxes were offered and they argued

13   Judge Fitzgerald abused her discretion by not admitting them

14   into evidence.  We disagree.  We believe you can't just dump

15   in 15 boxes without calling the parts that are relevant and

16   identifying that.  But in any event, that's an appeal issue

17   on -- or the propriety for evidentiary ruling.  It's not a

18   justification for reopening class discovery.

19            At the hearing, Mr. Speight's noted that he -- in

20   his brief, he corrected us when we said it was 15 boxes of

21   hard copies.  He said, no, I had them on CD-ROM.  I wasn't

22   trying to dump in 15 boxes of paper on Judge Fitzgerald.

23   Well, it doesn't make a difference.  15 boxes worth on a CD-

24   ROM, you can't dump into evidence anyway.  But the point is

25   they had the documents.  They had the discovery.  It was

1    electronically loaded on a CD-ROM.  We now know from this

2    affidavit Exhibit D to that reply, the affidavit of Murdoch,

3    that they have been able to search, sort, slice, and dice

4    it.  That's where they called out these Masonry Fill records

5    with -- I'll come back to that in a minute.

6              They have some amazingly -- they took 33 specific

7    months and they counted 8,065,000 and like 137 different

8    records that purported to show something.  I'm not sure it

9    was in support of a point that really helped them, but they

10   have -- certainly had it electronically loaded, had the

11   ability to search it.  Apparently from that affidavit they

12   didn't actually do the sort until 2013, but it was loaded

13   and they had the ability.  The point is, they had all of

14   this back before 2007, had the ability to search, sort,

15   analyze, and do whatever they want with the discovery.

16             The fourth point on what they did during the

17   Chapter 11 with the discovery is -- and this is where I had

18   my note, I'm sorry, on the Masonry Fill specifically.  This

19   is at page 12 of their reply.  Here's where they took the

20   Grace billing records, the ones they got back when they went

21   to Boston in 1995 and got, and in their reply brief they

22   sliced those.  And here's the exact number.  They say

23   Masonry Fill in a particular 33 month period, I'm not sure

24   why they selected that 33 months, but whatever they think is

25   a relevant period to support some point, they can -- they've

1   shown they can do that.  There were exactly 8,065,310 bags

2   of Masonry Fill sold.  I think, just as an aside, Your

3   Honor, the point they were trying to make is they're trying

4   to say there's equivalence between ZAI, which is in a

5   separate class the Zonolite Attic Fill and Masonry Fill

6   because both as a source material were made from a

7   particular mineral called vermiculite.

8          First of all, that's a totally irrelevant argument

9   here if Zonolite Attic Insulation wasn't properly classified

10  in a separate class, that's a Section 1122 classification

11  issue that they should have raised in plan objection.  It

12  has nothing to do with the proceeding here.

13         THE COURT:  Well, as I read the Third Circuit

14  opinion, it kind of was raised.

15         MR. DONLEY:  Well, it was --

16         THE COURT:  And rejected.

17         MR. DONLEY:  Raised and rejected.  So it's not --

18  it's too late to raise it, but even if they were raising it

19  new, I mean it's not relevant to class certification or

20  discovery.  I think that's why somehow they were get -- I

21  mean, the Masonry Fill and ZAI are different products.

22  Masonry Fill is used -- they pour it into the porous

23  openings in cinderblock to make them -- to take the air out

24  and insulate it.  And that's used primarily in commercial

25  buildings.  It's used in schools and other things.  It may

1    be used in a few homes.

2            The ZAI is used in attics of homes and it's poured

3    into the attics to make insulation.  The vermiculite is used

4    in both.  It's a different size of vermiculite.  The key

5    difference on these two, though, Your Honor, with regard to

6    the ZAI, prior to the petition date, that was a very

7    actively litigated product.  There were claims brought

8    against Grace.  There was a class certified in Washington

9    State called that Barbanti class relating to ZAI claims.

10   And there were a lot of ZAI claims filed by the bar date.

11   There was a separate classification, class 7B.  There was a

12   class settlement.  There was a class settlement hearing.

13   And he's saying, "It's all unfair.  It's all unfair."  Well,

14   those are class settlement hearing and plan classification

15   arguments.

16           In contrast, how about Masonry Fill?  How many out

17   of the hundreds and hundreds of pre-petition property damage

18   claims litigated against Grace, how many of them were

19   Masonry Fill?  Zero.  There was never one.  How many Masonry

20   Fill claimants filed a proof of claim by the bar date in

21   2003?  Again, zero.  How many Masonry Fill claimants have

22   come forward since then, either during the case or since

23   emergence?  Zero.  So how in the world Masonry Fill claims

24   helps him on numerosity is -- totally eludes me.  That

25   supports the absence of numerosity.

1          Let me turn -- following up on discovery, let me

2     turn to the discovery that was specifically conducted for

3     purposes of class certification, after he filed his class

4     certification motion in 2005 leading up to the hearing in

5     July of 2007.  In his reply, Mr. Speights protests that they

6     only had one year to discuss class discovery.  That's on

7     pages 24 and 25.  Well, frankly, Your Honor, one year of

8     discovery in a bankruptcy case, in my experience, is really

9     not something to be aggrieved about.  Beyond that, he says

10    that Judge Fitzgerald on August 21st, 2006, this is at page

11    24 of the reply, he says on August 21st, 2006,

12    Judge Fitzgerald shut down numerosity discovery.  She shut

13    it down on August 21st, 2006.  We will demonstrate that that

14    is false.

15          The history of discovery on class certification

16    started in December of 2005, two months after Anderson filed

17    its motion and Anderson initiated a series of discovery

18    requests in December of 2005.  And they made the choice not

19    to focus on numerosity, superiority, or any of the other

20    issues germane to class certification.  They had a couple of

21    document and 30(b)(6) requests on that, but primarily to

22    focus on discovery on a whole host of utterly irrelevant

23    tangential wild goose chases, to put it charitably, wild

24    goose chases.

25          One was often (indiscernible) about communications

1    between Grace and the Sulitex (ph) trust on some theory that

2    there was some conspiracy against the Speights firm there.

3            Second topic, purported efforts in 2001 to keep

4    Mr. Speights off the official property damage committee,

5    nothing to do with class certification.  All these

6    irrelevant discovery requests.  Discovery into Grace's

7    settlement of prepetition claims, whether Grace properly

8    settled and at the right amount a whole host of prepetition

9    claims and why they didn't settle the Anderson claim

10   prepetition.  Insurance, they sought to depose Frank Perch

11   at one point.  This was not initially, but in early 2007.  I

12   mean, all of this had nothing to do with class certification

13   or numerosity.

14           Judge Fitzgerald, God bless her, was more than

15   patient and tolerant with the Anderson Memorial discovery

16   request that ran amuck, to a point.  After a year of this

17   had gone on she finally said in October 2006, and we quote

18   in our papers, she said, "Mr. Speights, stop the fishing

19   expeditions."  That's a quote.  "Fishing expedition" was her

20   words at the October 2006 omnibus hearing.  And that term in

21   particular is important, Your Honor, because we cite the

22   Gutierrez case, which is a District of New Jersey opinion

23   from 2008 in our response at pages 36 and 37.  And in that

24   case, just like here, "After years of discovery on class

25   certification, denial of the motion asserted by the class of

1    the plaintiffs, sought to reopen class discovery while they

2    showed nothing new."  Just like here.  And the Court said,

3    no, you're just seeking another fishing expedition that's

4    not proper.

5         The Court acknowledged, yes, Rule 23 leaves the

6    door open to reopen class certification under some

7    circumstances because it's an interlocutory order.  But, and

8    I quote from the Gutierrez opinion, plaintiffs "confuse a

9    right to file a renewed motion for class certification with

10   a right to class discovery.  Rule" -- continuing the quote

11   from Gutierrez -- "Rule 23 does not convey a right to class

12   discovery."  And we cite other cases at page 37 of our

13   response.

14        I'll just mention them without going into detail,

15   Your Honor, the Doniger case from the Ninth Circuit, the

16   Gentry case from the Fourth Circuit which said especially in

17   the bankruptcy context, "Extensive discovery related to

18   class certification is not necessary."  And if you're going

19   to reopen class certification, you have to have some basis.

20   You can't just come in and shoot first, ask questions later.

21   Say I really need discovery.  I don't know what's going to

22   show.  I don't have any basis now, but I hope it shows

23   something, therefore give me discovery.  That gets the thing

24   just completely backwards.

25        So the whopper, though, the real whopper, Your

```
 1    Honor, is this February 27th, 2000 deposition of Grace's
 2    records custodian Mollie Sprinkle.  In Anderson Memorial's
 3    reply, they state -- they assert that Judge Fitzgerald
 4    limited that deposition, that she prohibited numerosity
 5    questions, which she had taken off the table.  Remember,
 6    those go back two months -- several months earlier,
 7    August 21st, 2006, and quote -- this is from page 29 of
 8    their reply, "Anderson Memorial did not have the temerity to
 9    run afoul of the Court's directive" not to get into
10    numerosity in the Sprinkle deposition.
11              As they were so constricted by Judge Fitzgerald's
12    supposed order not to get into numerosity at the Sprinkle
13    deposition, their reply at page 29 said that deposition "had
14    nothing to do with numerosity or Grace's sales records."
15    Your Honor, nothing could be more false than that statement.
16    Here is the order, if I may approach.
17              THE COURT:  You may.
18              MR. DONLEY:  Here is the order that Judge
19    Fitzgerald entered granting Anderson Memorial Hospital's
20    motion to compel the 30(b)(6) records deposition that was
21    the Mollie Sprinkle deposition.  It is dated
22    February 7th, 2007 if you see the docket entry at the top,
23    Your Honor.  I know it says where it's written down below by
24    Judge Fitzgerald's signature February 7th, 2006, but that's
25    what happens like when I write my checks the first month or
```

1    two of the year.  They year doesn't get updated.  Their

2    motion was filed in late '06.  This was entered on

3    February 7th, 2007.

4           Judge Fitzgerald ordered in the last paragraph

5    above her signature that "the above captioned debtor shall

6    produce their records custodian pursuant to Anderson's

7    notice of deposition dated October 30th, 2006, attached as

8    Exhibit A to the motion at the offices of Anderson's

9    Delaware counsel on or prior to February 20th, 2007," dated

10   2/7, it says 2006 but it's really '07, we can tell from the

11   context.

12          And then Judge Fitzgerald handwrote in down below,

13   she added in her own handwriting, "And finding that the

14   discovery is subject to all objections and privileges and"

15   -- here's the important part -- "finding that the discovery

16   as sought may be calculated to lead to relevant and

17   admissible evidence as to commonality, typicality,

18   numerosity, and superiority.  And thus, at this stage is

19   appropriate."  She not only didn't prohibit, she directed

20   and authorized that deposition to go forward on numerosity.

21   And he can't say he forgot about this order.  He cited it at

22   page 27 of his reply.  He just chose to misrepresent what he

23   said in his reply brief.

24          The deposition went forward on

25   February 23rd, 2007.  Mr. Speights asked the witness,

1    Ms. Sprinkle, about indices and lists of Grace documents at

2    page 32.  The witness answered truthfully.  She answered

3    that Mr. Fink, who's sitting right here, that the company

4    had at a certain Grace facility a computer where you can

5    access and index the Grace sales records and so forth.  She

6    hadn't seen it personally, but she knew he had it and there

7    was some method to access it, page 33 of her deposition.

8    And then Mr. Speights abandoned the line of questioning,

9    didn't follow up with any more questions, didn't try to take

10   the deposition or ask information of Mr. Fink.

11          He finally got around to deposing Mr. Fink two

12   years later in the confirmation hearing, then followed up

13   with the abandoned line of questioning, asked him about the

14   computerized index.  Mr. Fink answered truthfully and

15   described in detail how the index works.  It's several pages

16   Mr. Fink went out giving detailed explanation, pages 30 and

17   31 of his 2009 deposition, pages 138 through 141.  He said

18   it has limited search capability but he described in detail

19   how it works.  So there's no denial of discovery.  This

20   wasn't some a-ha moment.  It was something he was directed

21   to take to focus on back in 2006 by Judge Fitzgerald.

22          Indeed, I forgot to quote one thing that's

23   critical, Your Honor.  Back before she granted their motion

24   to compel the Sprinkle deposition, at the

25   November 20th, 2006 omnibus hearing, Judge Fitzgerald was

1    getting exasperated at this point.  She said, "Mr. Speights,

2    you've got to focus on class certification issues in this

3    discovery, specifically numerosity, commonality, typicality,

4    adequacy, superiority, 'not to something else.'"  We cite

5    that transcript and quote it in our response papers in our

6    response brief here at page 10.  So far from prohibiting him

7    from taking numerosity discovery, in an exasperated way, she

8    directed him to focus on (indiscernible) and specifically

9    ordered on numerosity the Sprinkle deposition to go forward.

10   The fact that he abandoned the line of questioning and

11   didn't follow through on it is not our problem and is not a

12   basis now seven years later to reopen class certification

13   discovery.

14          Let me turn to my last topic, Your Honor, which is

15   the standard they have to meet and their failure to meet it.

16   It's a steep standard.  I know Your Honor is familiar with

17   the Max Seafood Café case in the Third Circuit and the three

18   factors for the motion for reconsideration: material change

19   and controlling law; material new evidence not available

20   before; and the necessity of preventing manifest injustice

21   due to clear error of law or fact.  They haven't shown any

22   of those things.

23          Rule 23 is fairly similar for the motion for

24   reconsideration test.  Yes, of course you can reopen under

25   some circumstances an interlocutory ruling, but you can't

1    just rehash old arguments and facts.  We cited the Panetta

2    and Hartman cases in our response at page 21, the

3    (indiscernible) class action cite is there as well.  And you

4    can't just hope that discovery is going to turn something

5    up.  You have to have facts and a showing to justify

6    reopening and we cited the Third Circuit cases at page 21 of

7    our response, Hydrogen Peroxide and Hohider vs. UPS for that

8    point.

9            And the fact that they're asking for discovery

10   first, Your Honor, I think that actually concedes and makes

11   our whole point.  It shows that they don't have any facts to

12   justify reopening discovery.  If they want discovery to go

13   get the facts, they need to meet the standard.  They don't

14   have them now.  Well that gets the whole process precisely

15   backwards.

16           So what are the new facts they've shown?  Where

17   are the major new facts they've pointed to?  There's a lot

18   of rhetoric about thousands of new claims, a multitude of

19   claims, there's going to be a lot of gap claim, etcetera.

20   Well, we've already dealt with that.  There's no evidence of

21   that.  The Third Circuit didn't find that.  Where's the

22   evidence of even a single claimant, much less a multitude?

23           We then turn to what they cite in their brief and

24   I was going to go through these, and I even did up a little

25   PowerPoint.  I'm going to save time because I know the day's

1    been going long, Your Honor.  I'll just refer you to our

2    brief on most of these.  In their motion at pages 16 to 19,

3    they identify three issues they said Anderson Memorial never

4    had any opportunity address.  We blow that out of the water

5    in our response at pages 22 to 27 to show how thoroughly

6    each of these was addressed.

7              Number one is whether -- the issue of whether a

8    putative class member's claim is barred if they fail to file

9    an individual proof of claim.  They make an amazing

10   statement in their reply.  They say that we now don't

11   dispute that point at all.  Of course we dispute it.  We've

12   disputed it adamantly from day one.  We dispute it today in

13   all our papers, but the point is, it was fully addressed

14   before and if it wasn't, and we've documented that at pages

15   22 to 25 of our response -- if it wasn't, that's a due

16   process issue they should take up on appeal.  It's not a

17   basis for reopening discovery.

18             Number two, they say they had no opportunity to

19   address the issue of whether Grace gave adequate notice to

20   known building holders.  Again, fully argument below, this

21   is the issue where Grace moved -- asked Judge Fitzgerald, we

22   want to send actual notice to the known represented building

23   owners by mailing first class addressed to the last known

24   address.  And the PD committee, if Mr. Speights -- of which

25   Mr. Speights was the co-chair came in and said absolutely

1    not.  You're not going to get in our knickers and get into

2    communications with our clients.  The plaintiffs' lawyers

3    will take care of all that, and over our protest, that

4    notice procedure was approved.  Judge Buckwalter affirmed --

5    the Third Circuit affirmed that notice procedure.

6             A third issue they said they were never heard on

7    was the timeliness of the class certification.  Again, pages

8    26 to 27, we document -- blow out of the water all the

9    places where that was fully litigated below.  They're simply

10   wrong on that.

11            In their brief then, Your Honor, they turn to what

12   -- they identify what they called nine new developments that

13   justify reopening discovery.  They added three more --

14   always suspicious when someone has a grab bag of like nine

15   -- they've got to come up with nine things, and then they

16   add three more between the time of their motion and their

17   reply.  And then added one more today in the argument, this

18   MK-4, MK-5, and MK-6.  First I've heard of it, so I guess

19   there's 13 now.  But I'm not going to go through each one.

20   I'm just going to identify -- we address all of these in our

21   response at pages 27 to 35.  None of them are new.

22            If you look at the first six or seven, they're all

23   events that happen in 2008 and 2009, six, seven years ago,

24   the ZAI bar date order, the appointment of the property

25   damage future claimants rep., Grace's brief where we

1   supposedly admitted that the class proof of claim mechanism

2   is sufficient.  When he gave the citations, our briefs said

3   just the opposite.  I mean, these statements are just false

4   and we've documented that they're false.

5          So they're old -- they're all issues that are

6   either bar date notice objections, or should have been if

7   they even were asserted, or maybe it's a ZA class settlement

8   hearing fairness notice -- issue, or maybe it's a plan

9   objection.  None of them are germane to the issue here of

10   reopening class certification.  And just referring Your

11   Honor to our brief on all those points rather than repeating

12   them, I'll pick up the two that he mentioned at the very end

13   there only and then I'll sit down.

14          One is he said the Masonry Fill.  Judge Fitzgerald

15   didn't consider that.  That's the new tectonic shift in the

16   plates of the earth that justifies reopening discovery.

17   Well, again, this is the point.  There was never any Masonry

18   claim prepetition.  The bar date notice program, the

19   definition is attached as one of the exhibits to our brief.

20   The notice of the property damage claim was very broad,

21   extremely broad.  It had publication, notice, vetted exam in

22   18 different ways, approved by the Bankruptcy District

23   Courts and the Third Circuit.  That's law of the case now.

24          Finally he said the State of California.  That's

25   the tectonic shift in the plates.  That's the key that

1    justifies new development.  Well, that was back in 2008.  In

2    2009, if it was such a tectonic shift in new development

3    justifying reopening discovery, you know, I've got a

4    question, why didn't he raise that with Judge Fitzgerald?

5    They've denied that they're trying to get a second bite of

6    the apple here and I understand they've made that statement.

7    But if that's the case, what is -- they've given no

8    explanation as to why they're raising things from 2008,

9    2009, and now -- other than that, I've heard no cogent

10   reason why.  This is old news in the State of California.

11          What happened in the State of California is there

12   were a series of property damage claims that we objected to,

13   moved for summary judgment on statute of limitations

14   grounds.  Judge Fitzgerald granted -- it was summary

15   judgment, right, Lisa?  Right, Judge Fitzgerald granted

16   summary judgment on the ground that the State of California

17   had a bunch of other property damage claims regarding other

18   buildings, and so they should have known very early on that

19   the statute was running.  Judge Buckwalter reversed on the

20   ground that no, those claims are alive because the statute

21   of limitations, as he interpreted California law, didn't

22   start running until there was actual contamination in those

23   buildings.

24          Well, the key is Judge Fitzgerald, not for

25   purposes of her summary judgment ruling on those particular

1   claims and the contested matters on those -- or the

2   objections on those claims, but for purposes of her class

3   certification ruling expressly said, "Mr. Speights, I'm

4   going to give you the benefit of the doubt.  I'm going to

5   assume that the statute of limitations doesn't start running

6   until actual contamination occurs in the building."  So for

7   the purpose of class certification, she assumed his position

8   on statute of limitations which Judge Buckwalter ultimately

9   adopted when he reversed and that was factored into her

10  numerosity opinion.  So the State of California doesn't help

11  at all.

12          To finish, Your Honor, numerosity, where were we

13  in 2008 when Judge Fitzgerald decided, she said there was

14  just the Anderson claim and 158 others.  That's not enough.

15  If they disagree with her methodology, they've got their

16  appeal to pursue.  The numbers, even lower today as we said

17  in our papers.  Now it's just Anderson one settlement claim.

18  That's the settlement status of which it's kind of disputed

19  and then 37, I believe, Canadian claims that were dismissed

20  and are on appeal.  So depending on how you count those,

21  it's either 2 or 39 claims counting for numerosity.

22          No new claims since emergence have come into the

23  PD trust at all.  The burden is on them to show this

24  overwhelming new facts, tectonic shift in the facts that

25  justifies reopening under Max's Seafood Café or Rule 23.

1   And they haven't gone -- and you don't simply get discovery

2   on a wing and a prayer on something you hope for.  And

3   discovery, Your Honor, is not costless.  These things --

4   this company has been through a massive burden of cost and

5   to go back and impose further discovery on them just because

6   of something he hopes for just isn't right.  And when you

7   look at their request, their requests themselves are

8   completely inappropriate.

9           They ask for discovery and to each and every one

10  of the 200,000 asbestos personal injury notices that went

11  out.  They want to go into those communications and who they

12  went to.  It's just -- at some point, you know, there's fair

13  discovery and at some point there's harassment in trying to

14  impose burden and cost.  And this discovery I submit -- we

15  submit, Your Honor, is simply not justified.

16          THE COURT:  Thank you.

17          MR. DONLEY:  Thank you, sir.

18          THE COURT:  Mr. Speights, I'll give you last word,

19  but briefly.

20          MR. SPEIGHTS:  Unfortunately, in my area of the

21  country we talk a little slowly, so I'll try to speed it up,

22  Your Honor.

23          THE COURT:  It helps me to understand, though,

24  that way.  So that's good.

25          MR. DONLEY:  And I apologize for talking -- I

1    always talk too fast.  I'm sorry.

2            THE COURT:  I've had faster.

3            MR. SPEIGHTS:  Quickly, number one, I plead guilty

4    to conducting extensive discovery against Grace.  That is a

5    reason, one of many reasons why we shouldn't require

6    individual claimants to go through all that discovery over

7    years of individual litigation.

8            On the discovery issue, succinctly, I asked for

9    the exact discovery I'm asking here today within two weeks

10   of Grace filing its response.  There was a stay for months

11   between February and August when nothing happened in the

12   bankruptcy except mediation.  In August, right after that

13   stay was lifted, Judge Fitzgerald ruled and I believe

14   clearly granted and I believe Grace acknowledged it later

15   his motion for a protective order.  There is no question

16   that I took Mollie Sprinkles deposition.

17           First of all -- let me back up -- at that time,

18   Grace had attacked the adequacy of my law firm to represent

19   Anderson and the bulk of the discovery dealt with that.  And

20   finally with the encouragement of Judge Fitzgerald, they

21   withdrew that adequacy, which is one of the Rule 23

22   prerequisites, they withdrew that and so most of the

23   discovery evaporated.

24           Now I'm taking too much time on this but I sort of

25   feel like I'm defending my honor a little bit here with

1    Ms. Sprinkle.  No question Judge Fitzgerald ruled with me

2    one time on one piece of discovery and granted my motion to

3    compel, compel the notice of deposition I had served.  This

4    is the notice of deposition.  "Counsel for Anderson Memorial

5    Hospital will take the deposition of the records custodian

6    for documents which refer or relate to Anderson Memorial

7    Hospital's lawsuit prior to the date the debtors filed their

8    petition for reorganization."  That's what I was allowed to

9    do.  I never interpreted and I believe it would have been

10   reckless to interpret that -- Judge Fitzgerald's order as

11   somehow setting aside what she told me in August 2006.

12           In fact, Your Honor, Grace told the Third Circuit

13   Court of Appeals, quoted in our briefs, that they had no way

14   of identifying claimants other than going through millions

15   of records of documents.  In fact, later on I did take

16   Mr. Fink's deposition and another lawyer in the office who

17   identified this database which I specifically asked for in

18   December of 2005.  And that's what I want to pursue today.

19           I think one of the strongest arguments in favor of

20   the discovery is the initial argument that Mr. Donley made

21   about the Third Circuit when he said, "Well, with respect to

22   Denise Martin, our expert, the Third Circuit did this.  The

23   Third Circuit did that."  The Third Circuit actually says,

24   "There remains a significant chance that future property

25   damage claims will be asserted against Grace by property

1    damage claimants," at page 342 of the opinion.  But

2    Mr. Donley wants to walk back a little bit what Grace

3    represented to get his 524(g) by saying, "Well, Ms. Martin

4    didn't do this or Ms. Martin didn't do that, or she just

5    said this."  In fact, the deposition of Ms. Martin said she

6    was supplied no documents by Grace.  She did it on a

7    national sort of basis of various documents available

8    through the government, I think.

9           But in fact, Your Honor, the numerosity discovery

10    we want, the database, to the extent they're walking back

11    Dr. Martin's testimony will, in effect, buttress

12    Dr. Martin's testimony, we believe, showing there's clear

13    numerosity.

14           Now we're not saying -- I heard Your Honor say I

15    think the Third Circuit ruled that.  We are not trying to

16    say that Anderson is being treated unfairly here.  We

17    certainly made some suggestions in the Third Circuit about

18    that.

19           THE COURT:  They seemed like more than suggestions

20    to me.

21           MR. SPEIGHTS:  Well, I'm not sure what

22    Mr. Rosendorf argued but I'm sure it was brilliant.  But in

23    any event, that's not where we are today, okay?  We accept

24    the Third Circuit's decision on that.  What we're saying is

25    there's a precedent here that was established in ZAI that

1    ought to apply to Anderson that a class action is not

2    limited to those who filed individual claims.  It's an

3    acknowledgment later by Grace who asked for that, that

4    Anderson should have the benefit of the same precedent that

5    a class is not limited to individual claims.

6              One other little point about ZAI, Mr. Donley said

7    ZAI was actively litigated before the bankruptcy and not

8    Masonry Fill.  We filed the first case, Anderson did, when

9    we admitted the complaint for ZAI and Masonry Fill.  Those

10   other cases, there were several class actions filed and

11   shortly before the bankruptcy, one of which was certified a

12   few months before the bankruptcy (indiscernible).  And it

13   wasn't this -- there weren't thousands or hundreds of cases

14   about ZAI.  There were a few class action cases and we had

15   already filed a Masonry Fill case.

16             Your Honor, I'm trying to honor your directive to

17   be brief.  There seems to be a basic disconnect here.  We're

18   now dealing strictly with class litigation.  And this goes

19   to the question of when nobody is called, I'm the Maytag

20   repair man up here.  Well, typically class actions, just

21   like ZAI when they started filing several class actions, the

22   same law firms filed several class actions before the

23   bankruptcy -- filed those before there are any plethora of

24   individual cases.

25             We just concluded a class action against GAF

1    Shingles and Homes.  We filed the first case in 2005.  One

2    homeowner in South Carolina, no other cases.  We got the

3    case certified.  The minute we got it certified, there were

4    tagalong actions brought by other people.  Then there was an

5    MDL, no individual cases.  And recently we settled hundreds

6    of thousands of shingle cases around America which

7    originally resulted from one individual case.

8         It's not the test of how many people have called

9    or how many individual cases have filed when you file a

10   class action.  The purpose of the class action is to avoid

11   the multiplicity of litigation and to have that.  But having

12   said that, Your Honor, I'm sorry Mr. Donley hadn't been

13   called, I don't know if any of those people's claims have

14   accrued to begin with, whether they're ripe and they can

15   call and file claims.  I don't know if anybody knows that

16   they have Masonry Fill behind their walls because Grace

17   certainly hasn't doesn't anything to notice them about any

18   potential dangers, even though there's a continuing duty to

19   warn in most states.  I don't know what people know.  And I

20   don't know if their claims have accrued.

21        But I do know -- I guess, Mr. Donley, if you want

22   me to have 3,000 claimants call you next week, those are the

23   claimants attached to the individual class proof of claim

24   form.  We don't want to do that.  We want them to be part of

25   a class.  They want to be part of a class.  That's the way

1     we want to proceed.

2             So the idea that, well, people haven't been

3     calling is antagonistic to the exact purpose of a class

4     action.  Your Honor, I close like I begin, we want our

5     numerosity discovery.  We want to set the record straight

6     that what Grace told the Third Circuit was in error.  It's a

7     simple question of getting the database and deposing

8     somebody about it.

9             And then we want to brief these issues for the

10    Court and we want to convince the Court that we can be the

11    Court's best friend, this Court and other Courts, because we

12    provide the only means of wrapping up the PD litigation in

13    one Court in one proceeding at one time, and not over a

14    period of many years.  Thank you, Your Honor.

15            THE COURT:  Well, thank you, Mr. Speights.  It's

16    always good to have friends.  I will issue a ruling in due

17    course and we'll proceed from there.

18            Is there anything further we need to talk about

19    today?

20            MR. O'NEILL:  No, Your Honor.

21            THE COURT:  Thank you all very much.  That

22    concludes this hearing.  Court will stand briefly in recess

23    to allow the next group to set up.

24            Thank you.

25        (Chorus of thank you)

1        (Whereupon these proceedings were concluded at 12:01

2    PM)

Page 61

1                           C E R T I F I C A T I O N

2

3      I, Jamie Gallagher, certify that the foregoing transcript is

4      a true and accurate record of the proceedings.

5      Jamie Gallagher    Digitally signed by Jamie Gallagher
                          DN: cn=Jamie Gallagher, o=Veritext,
                          ou, email=digital@veritext.com, c=US
6      _____   Date: 2015.04.17 09:43:46 -04'00'

7      Jamie Gallagher

8

9

10     Date:  April 17, 2015

11

12

13

14

15

16

17

18

19

20

21

22     Veritext Legal Solutions

23     330 Old Country Rd

24     Suite 300

25     Mineola, NY 11501