IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

ANNUAL REPORT AND ACCOUNT
OF THE WRG ASBESTOS PI TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2014

Lewis R. Sifford, Harry Huge, and Dean M. Trafelet, the Trustees of the WRG Asbestos PI Trust (the "Trust"), created pursuant to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010, as modified (the "Plan"), submit this Annual Report, Financial Statements, and Claims Summary for the fiscal year ending December 31, 2014.

I.   INTRODUCTION

The purpose of this Annual Report is to fulfill the reporting requirements of the WRG Asbestos PI Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustees on behalf of the Trust during the period February 3, 2014 to December 31, 2014 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustees shall timely account to the Bankruptcy Court as follows:

    (i)    The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event

{C0411660.1 }

    within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustees shall provide a copy of such Annual Report to the TAC[1] and the Futures Representative when such reports are filed with the Bankruptcy Court.

(ii) Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC and the Futures Representatives when such report is filed.

(iii) All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, TAC, and FCR in the accounts filed with the Bankruptcy Court and a description of any modification or amendments to the Trust Agreement or Trust Distribution Procedures (the "TDP"). See Sections 4.5(c), 5.6, 6.5, and 7.3.

---

[1] Trust Advisory Committee

{C0411660.1}  2

II.     BACKGROUND

On April 2, 2001, W. R. Grace & Co. and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. On January 31, 2011, the Court entered an order in these cases confirming the Plan and on February 15, 2011, the Bankruptcy Court entered and order clarifying the prior order. On June 11, 2012, the United States District Court for the District of Delaware affirmed the Bankruptcy Court's confirmation order. Certain parties appealed the judgment of the District Court to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The Third Circuit affirmed the judgment of the District Court in each such appeal except for one and the period for petitioning the Supreme Court of the United States for *certiorari* review for such affirmed appeals expired with no such petition being made. The Third Circuit dismissed the final remaining appeal with prejudice on February 3, 2014, pursuant to a stipulated dismissal agreement between the parties. On February 3, 2014 (the "Effective Date"), the Plan became effective and the Trustees began to manage the affairs of the Trust.

On or after the Effective Date, the Trust was funded as provided for in Section 7.2.2 of the Plan. The purpose of the Trust is to assume the liabilities of the Debtors, their predecessors and successors in interest, for all Asbestos PI Claims, as defined in the Plan, and to use the assets and income of the Trust to pay both present and future asbestos claimants in accordance with the Trust Agreement and the Trust Distribution Procedures in such a way that holders of Asbestos PI Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims. See Trust Agreement, Section 1.2.

III.   TRUST ADMINISTRATION

    A.   Trustees

Lewis R. Sifford, Harry Huge, and Dean M. Trafelet served as the Trustees of the Trust during the Reporting Period. Lewis R. Sifford served as the Managing Trustee during the Reporting Period.

During the Reporting Period, the Trustees held formal meetings in accordance with the requirements of the Trust Agreement. These meetings were designated as "regular meetings" under the Trust's By-laws. Each meeting was in person and was attended by representatives of the TAC and the FCR. In addition to these formal meetings, the Trustees held regularly scheduled weekly teleconferences, met individually with Trust advisors, held executive session and special purpose meetings, and devoted considerable time to Trust matters outside of scheduled meetings. Activities included monitoring and exercising oversight over the investment of Trust assets and the processing of claims pursuant to the Trust Distribution Procedures, and communicating with claimants regarding operations of the Trust and the processing of claims.

    B.   Trust Officers

Analysis Research Planning Consulting ("ARPC") served as the Trust's Executive Director during the Reporting Period.

    C.   Trust Advisory Committee

Russell W. Budd, John D. Cooney, Joseph F. Rice, Perry Weitz and Steven Kazan[2] served as Members of the Trust Advisory Committee (the "TAC Members") during the Reporting Period.

---

[2] Effective as of May 13, 2014, the Trust Agreement was amended with the consent of the TAC and FCR to increase the number of TAC Members to five (5). Steven Kazan became the fifth TAC Member.

{C0411660.1}                                           4

D.   Futures Representative

Roger Frankel served as the Futures Representative (the "FCR") during the Reporting Period.

E.   Claims Processing

During the Reporting Period, the Delaware Claims Processing Facility began to process the Trust's claims. The terms of the Trust's ownership interest in the Delaware Claims Processing Facility are detailed in the Audited Financial Statements[3].

F.   Investment Management

Cambridge Associates LLC of Boston, Massachusetts continues to serve as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has significant experience advising such trusts on investment management. Cambridge Associates advises the Trustees on asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the Trust's portfolio. The Trust's invested assets are allocated in compliance with the Trust's investment guidelines. The Trust's investments are invested in fixed income, equity, and hedge fund investments recommended by Cambridge Associates after consideration of the currently forecasted timing of the liquidity needs of the Trust to pay claims and expenses, diversification, the Trust's large allocation to WR Grace warrants, the Trust's status as a federal tax paying "qualified settlement fund," and such other factors as Cambridge Associates considers relevant to forming its recommendation. The asset allocation at the end of the reporting period is as follows: 83.0% of the Trust's invested assets are committed to fixed income (59.6% is allocated to short-term municipal bonds and 23.4% to intermediate-term municipal bonds); 17.0% of the Trust's invested assets are committed to

---

[3] Audited Financial Statements at Note 3.

equities (5.6% of the Trust's assets are allocated to a U.S. equity manager, 5.0% are allocated to non-U.S. equity managers, 2.9% of the Trust's assets are allocated to global equity managers and 3.4% to hedge fund managers).

The Trust continues to retain: Northern Trust as a U.S. equity manager; Northern Trust and Select Equity as non-U.S. equity managers; Independent Franchise Partners and Kiltearn as global equity managers; Eaton Vance and First Principles as intermediate-term municipal bond managers; and Breckinridge, Deutsche Bank and Income Research and Management as short-term municipal bond managers. The Trust also continues to retain the following managers in the hedge fund program: BlueMountain, DL Partners, Och-Ziff, GSO, Sachem Head, Force, Luxor, Sheffield and Three Bays. The hedge fund program invests in well diversified arbitrage strategies and secondarily in long/short equity strategies. Broadly speaking, the hedge fund program is intended to generate, over a full market cycle, close to equity-like returns with lower volatility and lower correlation to the rest of the Trust's portfolio. The other expected benefits of the hedge fund program are diversification (e.g., access to specialized strategies not otherwise available in the other equity or fixed income investments), superior performance (versus long-only equities) in down equity markets, and access to some of the most talented investment managers. At Cambridge Associates' recommendation, the Trust has retained hedge fund managers who use no or minimal leverage, who employ trading strategies that are understandable to the Trustees, and who provide appropriate portfolio transparency to Cambridge Associates and to the Trust.

Northern Trust serves as Custodian for the Trust's separately managed investment accounts. The Trust's actively managed non-U.S. equity portfolios and hedge fund investments are invested through commingled vehicles that have a separate custodian (selected by the

investment manager for non-U.S. equity managers or the third party Fund Administrator for hedge fund investments) for each of the respective vehicles. The Trust utilizes custodian accounts, ACH transfer and zero-balance banking accounts to reduce its exposure to bank risk.

During the Reporting Period, the Trustees regularly met with Cambridge Associates for updates and reports on the Trust's investments.

G. Insurance Coverage Litigation

Upon the Effective Date, pursuant to the Plan, the Trust received the right to pursue certain unsettled insurance coverage and the rights to certain proceeds paid pursuant to Asbestos PI Insurance Settlement Agreements. The Trust retained the firm of Anderson Kill, P.C. as Special Insurance Counsel to the Trust. Prior to the Effective Date of the Plan of Reorganization, the Debtors and other Plan Proponents reached settlement agreements with many of the Debtor's historical insurance companies that required the settling insurance companies to make cash payments to or for the benefit of the Trust. Certain of those agreements required the settling insurance companies to make payments into escrow accounts during the pendency of the bankruptcy case, and those escrow accounts were released to the Trust in the first quarter of 2014. Certain other settlement agreements required the insurance companies to pay settlement proceeds to the Trust after the Plan's Effective Date in 2014, and the Trust received substantial payments from insurance companies in 2014. In addition, some of these settlement agreements require the settling insurance companies to make payments to the Trust on agreed-to payment schedules that extend beyond 2014 or to reimburse the Trust as the Trust pays claims. As a result, the Trust anticipates receiving additional payments through 2020 under these settlement agreements. Although the Plan Proponents settled with many of the Debtors' insurance companies prior to the Plan's Effective Date, they did not settle with all of the

Debtors' insurance companies. Accordingly, in 2014, the Trust initiated settlement discussions with some solvent and insolvent domestic insurance companies (and state insurance guaranty associations) that had not settled with the Plan Proponents prior to the Plan's Effective Date. In 2014, three insurance companies, Geico, Republic and Axa filed a declaratory judgment against the Trust seeking a declaration that they do not owe any or at most limited coverage to the Trust. As claims have not yet reached the level of these excess insurance policies, the U.S. District Court for the Southern District of New York put their action on a suspense docket until the issue of coverage with these excess insurance companies becomes ripe.

      H.      Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware serves as general counsel to the Trust. Kaplan, Strangis & Kaplan, P.A. of Minneapolis, Minnesota and Keating Muething Klekamp, PLL of Cincinnati, Ohio serve as Special Securities Counsel and Anderson Kill, P.C. of New York, New York serves as Special Insurance Counsel to the Trust.

IV.     ANNUAL REPORT AND ACCOUNTING

The Trust began accepting and processing Unliquidated claims on August 25, 2014. As of December 31, 2014, the Trust had paid a total of 8,139 Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 179 malignancy claims and 7,960 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $13.5 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 2/89 and the malignant to nonmalignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 1/3.

As of December 31, 2014, the Trust had received 225,857 Unliquidated PI Trust Claims and paid a total of 3,152 claims since the date of inception of the Trust. Of the claims paid, there were 335 malignancy claims and 2,817 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $11.7 million to asbestos victims in settlement of their Unliquidated PI Trust Claims since the date of inception of the Trust. The malignant to nonmalignant ratio of the Unliquidated PI Trust Claims paid in number was 1/8 and the malignant to nonmalignant ratio of the Unliquidated Trust Claims in dollars paid was 2.3/1.

A summary of the claims processing procedures and policies may be found at the Trust website at www.wrgraceasbestostrust.com.

Date: April 29, 2014            CAMPBELL & LEVINE, LLC

*/s/ Kathleen Campbell Davis*
Marla Rosoff Eskin (No. 2989)
Kathleen Campbell Davis (No. 4229)
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801
Tel. 302.426.1900
Fax 302.426.9947

-and-

Douglas A. Campbell
Stanley E. Levine
Philip E. Milch
1700 Grant Building
Pittsburgh, PA 15219
Tel. 412.261.0310
Fax 412.261.5066

*Counsel to WRG Asbestos PI Trust*