# Exhibit F

#F 8120

120'

Roger Sullivan
Allan M. McGarvey
John F. Lacey
McGarvey, Heberling, Sullivan & Lacey, P.C.
345 First Avenue East
Kalispell, MT 59901
(406) 752-5566

Attorneys for Plaintiffs

### MONTANA EIGHTH JUDICIAL DISTRICT, CASCADE COUNTY

| | |
|---|---|
| SHIRLINE E. ALMEIDA, IGNACIO C. ALMEIDA, JOSEPH C. DOWNING, and THOMAS F. ERICKSON, | CAUSE NO. **BDV-14- 919** |
| Plaintiffs, | JULIE |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| BNSF RAILWAY COMPANY, a Delaware corporation; JOHN SWING; MARYLAND CASUALTY COMPANY, a Maryland Corporation; CNA INSURANCE COMPANIES, a corporation; CONTINENTAL CASUALTY COMPANY, a corporation; TRANSPORTATION INSURANCE COMPANY, a corporation; ROBINSON INSULATION COMPANY, a Montana Corporation for profit; and DOES A-Z, | |
| Defendants. | |

### PARTIES

1.     Plaintiffs Shirline E. Almeida, Ignacio C. Almeida, and Thomas F. Erickson, are residents of Lincoln County, Libby, Montana. Plaintiff Joseph C. Downing, is a resident of Boise, Idaho.

2.     Defendant BNSF Railway Company (BNSF) is a corporation organized and existing under the laws of the State of Delaware and is engaged in interstate commerce with its headquarters in Fort Worth, Texas.

3.     Defendant John Swing was a managing agent for BNSF in Libby, Montana and is a resident of Lincoln County, Montana.

4.     Defendant Maryland Casualty Company is a Maryland corporation with its principal place of business in Maryland.

5.     Defendant CNA Insurance Companies (CNA) is a corporation doing business in the State of Montana. Continental Casualty Company and Transportation Insurance Company are companies owned or operated by CNA, and are included in references herein to "CNA".

6.     Robinson Insulation Company (Robinson Insulation) is or was a Montana business corporation for profit with its principal place of business in Great Falls, Cascade County, Montana where Robinson Insulation operated a vermiculite expansion plant. Robinson Insulation engaged in conduct that resulted in the accrual of this tort action in Montana.

7.     Does A - Z are corporations or persons, whose identities are unknown at this time, and whose negligence and wrongful acts caused asbestos related bodily injuries in the listed Plaintiffs.

8.     Plaintiffs will seek to amend their complaint when the true names and capacities of Does A - Z are ascertained.

9.     Venue in this action is proper in Cascade County, Montana, because at least one of the defendants, Robinson Insulation, engaged in tortious conduct within Cascade County and is a resident of Cascade County.

10.     This Complaint is filed to protect statutes of limitations.

**GENERAL ALLEGATIONS**

11.     In 1963 W.R. Grace & Co. (Grace) purchased an existing vermiculite mine and mill in Libby, Montana (the Mine) from the Zonolite Company (Zonolite). Grace operated the Mine from 1963 until 1990. The vermiculite was intermixed with a highly toxic form of asbestos. The extraction of vermiculite from the ground and processing of it generated substantial airborne dust containing asbestos. The dust was produced at the mine site, as well as in the town of Libby where expansion, bagging, storage and transport facilities were located.

12.     The Plaintiffs were Grace and Zonolite mine, mill or processing workers,

independent contractors, loggers, homeowners, gardeners, recreators, ball field players, lumber mill workers, railroad workers, housewives/children of Grace workers, or community members of Libby, Montana, or were otherwise distinctly exposed to asbestos in unique exposure events and in a wide variety of temporally separated, geographically distinct, and highly differentiated routes and circumstances. While many Plaintiffs had repeated or continuous exposures, each of the Plaintiffs' individual exposure is unique in time, location, form, and degree of asbestos contact, and as a result of which Plaintiffs have been diagnosed with asbestos disease. Dates of residence in the Libby area and exposure, including events of injurious exposure between July 1, 1973, and July 1, 1975, are:

| | |
|---|---|
| Shirline E. Almeida | 1949 - 1961 and 1963 to date |
| Ignacio C. Almeida | 1963 to date |
| Joseph C. Downing | 1925 - 1943 and 1946 - 1947 |
| Thomas F. Erickson | 1961 to date |

13.    At all times Plaintiffs were ignorant of the nature and extent of the life threatening risks and injury involved, and would not have continued to be exposed to such an environment if they had known the true facts.

14.    The workers were not provided with coveralls or showers. As a result workers went home and into the community with asbestos dust on their clothing and in their cars, thereby extending the asbestos exposure. Similarly, invisible asbestos fibers from the mining operations infiltrated a broad variety of Libby area work sites, forests, recreation areas, homes, gardens, and numerous other distinct locations, resulting in hundreds of distinct routes and circumstances of exposure.

15.    As a result of failing to control dust from the mining, milling, processing, bagging, transport and a variety of uses of the vermiculite, workers, family members, members of the community, and others were exposed to the highly toxic asbestos.

16.    Without knowledge of the nature and extent of the asbestos hazard, Plaintiffs were denied, in the unique circumstances of their exposures, the options of avoiding exposure, demanding protective devices, demanding safer operations, changing

Complaint and Demand for Jury Trial                    3

jobs, or protecting themselves and their families.

## FIRST CLAIM
### Negligence v. BNSF (All Plaintiffs except Downing)

17.     Paragraphs 1-16 above are incorporated by this reference.

18.     During the dates above stated, Plaintiffs resided or remained in proximity to the real property of BNSF and were thereby exposed to asbestos dust from BNSF's property and operations. John Swing was a managing agent for BNSF in Libby, Montana, and as such is separately responsible for acts wrongful in this nature. Allegations herein as to BNSF's conduct and knowledge by this reference specifically include defendant John Swing.

19.     Throughout the years of exposure above stated, the Plaintiffs lived in an environment that caused them to be exposed to and to inhale asbestos dust.

20.     At all times Plaintiffs were ignorant of the nature and extent of the life threatening risks and injury involved, and would not have continued to remain in such an environment if they had known the true facts.

21.     Without knowledge of the nature and extent of the asbestos hazard, Plaintiffs were denied the options of avoiding exposure, demanding dust control or changing residence.

22.     At all times BNSF knew or should have known of the asbestos in the vermiculite, and knew or should have known of the hazards to human health of asbestos exposure and had a continuing duty to gather information, to prevent toxic dust from collecting upon and escaping from its property, and to warn Plaintiffs and others who would be harmed by said dust.

23.     BNSF was negligent, as follows:

(a)     in failing to inquire, study and evaluate the dust hazard to human health;

(b)     in failing to take measures to prevent toxic dust from collecting upon and escaping from its property;

(c)     in failing to warn Plaintiffs of the true nature of the hazardous effects of the dust; and

(d)    by acting in concert with Zonolite/Grace.

24.    As a direct and proximate result of the conduct of BNSF as described above, Plaintiffs suffered from asbestos related bodily injuries and have incurred the damages alleged herein.

**SECOND CLAIM**
**Common Law Strict Liability v.**
**BNSF (All Plaintiffs except Downing )**

25.    Paragraphs 17-24 above are incorporated by this reference.

26.    Defendant BNSF failed to control asbestos contaminated vermiculite used in the operation of their business thereby causing Plaintiffs to be exposed to asbestos, an extra hazardous and abnormally dangerous substance.

27.    Defendant BNSF engaged in abnormally dangerous activities thereby causing the release of asbestos contamination and exposure of Plaintiffs to deadly asbestos. BNSF's business activities in handling, storing, transporting, loading, and using asbestos and asbestos contaminated products were abnormally dangerous in that:

(a)    said business activities created a high degree of prior, present, and continuing contamination in the form of exceedingly toxic asbestos, which created a high degree of risk of harm to Plaintiffs and others;

(b)    there was and is a strong likelihood that the harm resulting from said business activities and exposure to asbestos is great;

(c)    the risk of harm caused by BNSF's storing, handling, transporting, loading, and using asbestos contaminated vermiculite cannot be reasonably eliminated for those humans living and working in proximity to BNSF's abnormally dangerous business activity;

(d)    said business activities are not a matter of common usage;

(e)    BNSF's abnormally dangerous business activities were carried on within the town of Libby and adjacent areas, which were places that were inappropriate for the release of asbestos contamination; and

(f)    the dangerous attributes of the BNSF's business activities completely outweigh the value of those activities to the community.

28.    The dangers of the BNSF's business activities for the locality where Plaintiffs resided, worked, or remained were so great that despite any usefulness of their

activities and of the asbestos contaminated vermiculite under its control, BNSF should be required as a matter of law to pay for any harm caused.

29.    BNSF is strictly liable to the Plaintiffs for damages caused by Plaintiffs' exposure to deadly asbestos caused by BNSF's abnormally dangerous business activities.

30.    As a direct and proximate result of the BNSF's abnormally dangerous business activities, Plaintiffs were exposed to unreasonably dangerous and hazardous materials, contracted asbestos related disease, suffered asbestos related bodily injuries and sustained damages as alleged herein.

### THIRD CLAIM
### Negligence in provision of industrial hygiene services v. Maryland Casualty (All Plaintiffs)

31.    Paragraphs 1-16 above are incorporated by this reference.

32.    Maryland Casualty provided professional industrial hygiene services to address the safety of the mine and mill work site through what were represented to be competent Safety Engineers and professionals from the Engineering Division and the Medical Division of Maryland Casualty, under the supervision of industrial hygienist L.E. Park.

33.    From its first undertaking at the Mine facility, Park and others in the Accident Prevention Department at Maryland Casualty knew that they "had an outstanding pneumoconiosis occupational disease exposure," and "soon learned that there were 30 employees who lacked normal lung function."

34.    Maryland Casualty knew that the 1959 series of chest x-rays on the Libby workers showed a one-third incidence of abnormal chest x-rays.

35.    Maryland Casualty knew that the 1964-1973 annual series of chest x-rays on the Libby workers showed a 25% plus incidence of abnormal chest x-rays.

36.    Maryland Casualty knew that a 1965 study showed 20% incidence of asbestosis in the Libby workers, with a likely incidence of twice that upon thorough testing.

37.    Maryland Casualty knew or should have known that from 1961 forward,

men were dying of asbestos disease, and that each year more became diseased.

38.    Maryland Casualty knew or should have known that there were no showers for workers, no coveralls for workers, and that workers went home and into the community covered with asbestos dust, which was hazardous to all those who might come into contact with it.

39.    As part of its industrial hygiene services, Maryland Casualty's Engineering Division and Medical Division undertook to "engineer this risk," and undertook to design a "program for control and prevention" of asbestos dust and disease for the benefit of workers, their families and the community that would address dust control and personal protection from asbestos dust.

40.    In its provision of industrial hygiene services and its undertaking of industrial hygiene measures, Maryland Casualty had a duty of reasonable care to those (including workers, their families and the community) relying on the fulfillment of safe standards of industrial hygiene, and to those who were in need of disclosure of the nature and degree of the asbestos hazard known to Maryland Casualty.

41.    Maryland Casualty was negligent in their design of the industrial hygiene program, and in failing to disclose and disseminate, to the workers and individuals at risk, the nature and degree of the asbestos hazard Maryland casualty had acquired and analyzed by its industrial hygiene professionals. Maryland Casualty was negligent:

    (a)    in failing to include sufficient measures for education of workers, in the hazards of asbestos exposure;

    (b)    in failing to include measures to warn workers, their families, and the community of the hazards of asbestos exposure;

    (c)    in failing to include sufficient measures and standards for dust control through housekeeping, ventilation and exhaust air cleaning;

    (d)    in failing to include sufficient measures and standards for maintenance of equipment and premises;

    (e)    in failing to include a sufficient medical monitoring program;

    (f)    in failing to disclose the nature and degree of the immediate and extreme asbestos hazard known to the professionals at Maryland Casualty;

    (g)    in failing to sufficiently test and monitor the effectiveness of dust

control at all locations where there was dust;

(h)     in failing to obtain available medical information on the incidence of disease and deaths at the Grace operations including from public agencies; and

(i)     in failing to sufficiently study and use the information on dust control and asbestos disease that it did have.

42.     Maryland Casualty undertook to address industrial hygiene concerns including prescription of warnings and worker education of the asbestos hazard for the mine and mill workers, their families and the community.

43.     Maryland Casualty had a duty of care to the mine and mill workers, their families and to the members of the Libby community to assure that warnings were designed to reasonably inform those at risk:

(a)     of the level of asbestos in the workplace;

(b)     of the hazards of asbestos carried home on workers' clothes;

(c)     of the toxicity of the asbestos and nature and degree of the health hazard and deadly health effects of asbestos inhalation;

(d)     of the hidden nature of the hazard, that its deadly effects operated invisibly and without obvious signs of irritation or harm, and that its latent deadly effects would first manifest many years after what would, to the uneducated layman, would be an apparent innocuous exposure to harmless dust; and

(e)     of the means to limit exposure in the workplace and at home, such as changing and washing procedures that kept work clothes out of the home, and training on where, when and what type of respirator devices needed to be worn to keep the worker safe.

44.     As part of its industrial hygiene services and the creation of a program for control and prevention of asbestos disease, Maryland Casualty failed to design and prescribe the necessary warnings.

45.     Maryland Casualty was negligent in their design of the warning and education aspects of the safety program in that it failed:

(a)     to include sufficient measures for education of workers, in the

hazards of asbestos exposure;

(b)     to include sufficient measures for apprising the workers of the high levels of asbestos dust at the worksite;

(c)     to include sufficient warnings and measures to apprise workers of consequences of unprotected exposure to asbestos dust at levels regularly encountered in the workplace;

(d)     to include sufficient measures to warn and apprise workers of the dangers of transporting work clothes to their homes; and

(e)     to include warnings and measures to warn workers, their families and the community of the hazards of asbestos exposure in a manner that met industrial hygiene standards for warnings of a hidden and deadly hazard.

46.     Maryland Casualty's representatives with expertise in industrial hygiene inspected the Grace Libby operations.

47.     In so doing, Maryland Casualty had a duty of reasonable care to the Libby workers, their families and to the community.

48.     Maryland Casualty was negligent in inspection of the Grace Libby operations, in failing to disclose to workers the nature and degree of the hazard and in failing to act upon known hazardous conditions due to insufficient worker education, insufficient warnings to workers, their families and to the community, insufficient dust control (including housekeeping, ventilation, exhaust air cleaning and maintenance), and insufficient medical monitoring.

49.     Plaintiffs worked at the vermiculite mine and Mill in the Libby area and/or lived or recreated in the Libby area and were exposed to and inhaled asbestos dust from the mill operations.

50.     Workers had no coveralls and no showers. As a result, workers including Plaintiffs went home with asbestos dust on their clothing and in their cars, thereby contaminating their homes with asbestos dust.

51.     At all times Plaintiffs were ignorant of the nature and extent of the life threatening risks and injury involved, and would not have continued to live and work in such an environment if they had known the true facts.

52.    Without knowledge of the nature and extent of the asbestos hazard, Plaintiffs were denied the options of avoiding exposure, demanding protective devices, demanding safer operations, changing jobs, and protecting their homes and families.

53.    As a direct and proximate result of Maryland Casualty's negligence in performance of industrial hygiene professional services for the protection of workers and others, including inadequate warnings, inspections and disclosure of known hazards, Plaintiffs suffered from asbestos related bodily injuries and have incurred damages as alleged herein.

## FOURTH CLAIM
### Negligence v. CNA (All Plaintiffs except Downing)

54.    All paragraphs above are incorporated by this reference.

55.    CNA, through Continental Casualty Co., was the workers' compensation carrier for W.R. Grace from July 1, 1973 to July 1, 1976. CNA, through Transportation Ins. Co. or Continental Casualty Co., was the workers' compensation carrier for W.R. Grace from July 1, 1976 to 1996.

56.    CNA's professional staff included industrial hygienists and medical doctors with expertise in occupational disease. At all times CNA was well aware of the hazards of asbestos exposure.

57.    At all times, CNA knew of the asbestos exposure at the Grace Libby operations, and that workers were diseased and dying from asbestos exposure, and that a hazardous condition existed.

58.    CNA knew or should have known that there were no showers for workers, no coveralls for workers, and that workers went home and into the community covered with asbestos dust, which was hazardous to all those who might come into contact with it.

59.    CNA undertook to provide industrial hygiene services for the benefit of Grace employees, their families and the community.

60.    In so doing, CNA had a duty of care to the Libby workers, their families and to the community.

61.    CNA was negligent in this undertaking to provide services:

(a) in failing to recommend or require sufficient measures and standards for employee education, warning the workers, their families and the community, protection against asbestos dust going into workers' homes and into the community, dust control (including housekeeping, ventilation, exhaust air cleaning and maintenance) and medical monitoring;

(b) in failing to sufficiently test and monitor the effectiveness of dust control at all locations where there was dust;

(c) in failing to obtain medical information on the incidence of disease and deaths at the Grace operations from Grace and from public agencies; and

(d) in failing to sufficiently study and use the information on dust control and asbestos disease that it did have.

62.    CNA's representatives with expertise in industrial hygiene inspected the Grace Libby operations.

63.    In so doing, CNA had a duty of reasonable care to the Libby workers, their families and to the community.

64.    CNA was negligent in inspection of the Grace Libby operations, in failing to report and act upon known hazardous conditions due to insufficient worker education, insufficient warnings to workers, their families and to the community, insufficient dust control (including housekeeping, ventilation, exhaust air cleaning and maintenance), and insufficient medical monitoring.

65.    As a direct and proximate result of the negligence of CNA, Plaintiffs have suffered from asbestos related bodily injuries and incurred the damages alleged herein.

## FIFTH CLAIM
### Negligence v. Robinson Insulation (All Plaintiffs)

66.    All paragraphs above are incorporated by this reference.

67.    For many years, defendant Robinson Insulation obtained asbestos contaminated vermiculite from Libby, Lincoln County, Montana. Said asbestos contaminated vermiculite was transported by rail from Lincoln County to Great Falls, Cascade County, Montana, where defendant Robinson Insulation expanded the asbestos contaminated vermiculite and processed it into various manufactured products.

68.    After expanding the deadly asbestos contaminated vermiculite and processing it into manufactured products, Robinson Insulation sold said vermiculite and vermiculite products to the J. Neils/St. Regis Champion lumber mill in Libby and to others for use and for resale in Libby, Montana.  Said expanded vermiculite and vermiculite products were transported from Great Falls back to Libby and delivered to the said lumber mill and to other sites in Libby.

69.    Plaintiffs were exposed to defendant Robinson Insulation's unreasonably dangerous asbestos contaminated products, which Robinson Insulation wrongfully placed in the stream of commerce for use and consumption by the general public.

70.    During Plaintiffs' period of exposure to asbestos and contaminated vermiculite, which was generated and released by Robinson Insulation's business activities, Robinson Insulation knew that extended exposure to asbestos was unreasonably dangerous and hazardous to an individual's health.  Nevertheless, Robinson Insulation concealed and failed to disclose such knowledge to their employees, the public, and the Plaintiffs.  Robinson Insulation gave no indication that it was unsafe and in fact a serious health hazard for Plaintiffs to be exposed to asbestos generated and released by Robinson Insulation's business activities.  Plaintiffs were at all times ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by defendant's business activities.

71.    Robinson Insulation owed the Plaintiffs a duty to act with reasonable care concerning their business operations, so as not to jeopardize their health and welfare from exposure to its asbestos contamination and asbestos products.

72.    Robinson Insulation breached its duty of care by negligently, carelessly, and recklessly generating, handling, storing, releasing, disposing of, and failing to control and contain unreasonably dangerous and hazardous asbestos created by and/or resulting from its for profit business operations.

73.    Although Robinson Insulation knew or had ample reason to know that its acts or omissions created a high degree of harm to the Plaintiffs, it nevertheless deliberately acted in conscious disregard of and indifference to the risk imposed upon the

Plaintiffs by their continued exposure to asbestos.

74.    As a direct and proximate result of Plaintiffs' exposure to asbestos-laced vermiculite generated and released by Robinson Insulation's business activities, all Plaintiffs suffered asbestos related bodily injuries, and have incurred damages as alleged herein.

**SIXTH CLAIM**
**Strict Products Liability v. Robinson Insulation (All Plaintiffs)**

75.    All paragraphs above are incorporated by this reference.

76.    At times relevant to this action, defendants Robinson Insulation and wood products defendants were engaged in the business of manufacturing, fabricating, modifying, expanding, labeling, distributing, supplying, selling, marketing, packaging, and/or advertising multiple products containing vermiculite. Said vermiculite was laced with deadly asbestos.

77.    After expanding the deadly asbestos contaminated vermiculite and processing it into manufactured products, Robinson Insulation sold said vermiculite and vermiculite products to the wood product company defendants for use and for resale at their lumber mill in Libby, Montana. Said expanded vermiculite and vermiculite products were transported from Great Falls back to Libby where the products were sold by the wood product defendants to various parties for use on construction and other projects in Lincoln County.

78.    Defendants Robinson Insulation and wood products defendants knew and intended that the above referenced vermiculite and asbestos contaminated products would be used without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

79.    Defendants Robinson Insulation and wood products defendants distributed and/or sold said asbestos-laced vermiculite products to the public, to the Plaintiffs, and to one or more of Plaintiffs' employers.

80.    Said asbestos-laced vermiculite products were defective and unreasonably dangerous for their intended purpose in that the inhalation of asbestos fibers causes

serious disease and/or death to humans. The defect existed in the said products at the time they left the possession of defendant Robinson Insulation and wood products defendants. Said products did, in fact, cause injury and damage to Plaintiffs, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and unreasonably dangerous for use.

81.    Plaintiffs did not know of the substantial danger of using said asbestos-laced vermiculite products, nor was said danger readily recognizable by them. Defendants Robinson Insulation and wood products defendants further failed to adequately warn of the risk of contamination to which Plaintiffs were exposed.

82.    As a direct and proximate result of the unlawful actions of defendants Robinson Insulation and wood products defendants and as a direct and proximate result of exposure to Robinson Insulation's and the wood products defendants' unreasonably dangerous asbestos contaminated vermiculite products, Plaintiffs suffered asbestos related bodily injuries, and have incurred damages as alleged.

**SEVENTH CLAIM**
**Does A-Z**

83.    All paragraphs above are incorporated by this reference.

84.    Does A-Z are corporations or persons unknown at this time whose negligence and wrongful acts caused asbestos disease in the Plaintiffs. Plaintiffs will seek to amend their complaint when the true names and capacities of Does A-Z are ascertained.

**DAMAGES**

85.    All paragraphs above are incorporated by this reference.

86.    As a direct and proximate result of the acts of the defendants, the Plaintiffs have suffered and will suffer:

a.    Loss of enjoyment of established course of life;
b.    Loss of services which can no longer be performed;
c.    Loss of earnings and/or earning capacity;
d.    Physical, mental and emotional pain and suffering;

e.    Medical expenses, rehabilitation expenses and related expenses;

f.    Loss of insurability for medical coverage;

g.    Loss of care, comfort, society and support; and

h.    Great grief and sorrow.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for damages against the Defendants as follows:

1.    Reasonable damages for lost enjoyment of established course of life, past and future;

2.    Reasonable damages for loss of services which can no longer be performed;

3.    Reasonable damages for physical, mental and emotional pain and suffering, past and future;

4.    Reasonable damages for medical expenses, rehabilitation expenses, and related expenses incurred to date and reasonably certain to be incurred in the future;

5.    Reasonable damages for loss of the care, comfort, society and support;

6.    Advance payment of past and present medical expenses and special damages not reasonably in dispute;

7.    Reasonable damages for loss of earnings and/or earning capacity;

8.    Reasonable damages for grief and sorrow;

9.    For costs of suit;

10.   For such further relief as is just and equitable under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

DATED this _____ day of November, 2014.

McGARVEY, HEBERLING, SULLIVAN
& LACEY, P.C.

By: _____
ROGER SULLIVAN
ALLAN McGARVEY
JOHN F. LACEY
Attorneys for Plaintiffs