IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>W. R. GRACE & CO., et al.,[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 01-1139 (KJC)<br>(Jointly Administered)<br><br>Related to Doc. No. 32540, 32578 |

## REPLY IN SUPPORT OF MOTION OF REORGANIZED DEBTOR TO (A) ENFORCE INJUNCTION ISSUED IN CONNECTION WITH THE FIRST AMENDED JOINT PLAN OF REORGANIZATION AND (B) COMPEL MIRACON TECHNOLOGIES, LLC TO DISMISS WITH PREJUDICE ITS LAWSUIT AGAINST W. R. GRACE & CO. – CONN.

W. R. Grace & Co. – Conn. (the "Reorganized Debtor"), one of the above-captioned reorganized debtors, hereby replies to the objection (the "Objection") of Miracon Technologies, LLC ("Miracon") to the Motion of Reorganized Debtor to (A) Enforce Injunction Issued in Connection With the First Amended Joint Plan of Reorganization and (B) Compel Miracon Technologies, LLC to Dismiss With Prejudice Its Lawsuit Against W. R. Grace & Co. – Conn. (the "Motion").[2] In support of this reply, the Reorganized Debtor respectfully represents as follows:

### Preliminary Statement

1. Miracon unabashedly admits that the Debtors' first amended joint plan of reorganization (the "Plan") and the Court's order confirming the Plan (the "Confirmation Order") discharge and forever bar all entities from asserting claims based on acts or omissions that occurred prior to the Plan's effective date on February 3, 2014. (Obj. ¶ 7.) Miracon further admits that, as a result, it "does not dispute that any claims that it may hold for acts that occurred

---

[1] The reorganized debtors are W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.) and W. R. Grace & Co.- Conn.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

prior to the effective date of the Plan are barred by the discharge injunction and the corresponding plan injunction." (Id. ¶ 8.) In short, Miracon expressly acknowledges that its commencement and ongoing prosecution of the Lawsuit against the Reorganized Debtor violate the injunction ordered by this Court. Based on this admission alone, the Court should grant the Motion and direct Miracon to dismiss its Lawsuit as to the Reorganized Debtor with prejudice.

2.      Despite these admissions, which are dispositive of the Motion, Miracon casually asserts that certain of the claims it "may hold" against the Reorganized Debtor, which claims it fails to identify, are not barred because they are purportedly based on acts that occurred after the effective date of the Plan. (Obj. ¶8.) Miracon then argues that whether it has any claims that survive the discharge injunction is not a matter for this Court to decide but rather is an issue that must properly be addressed in the United States District Court for the Eastern District of Texas (the "District Court") where Miracon's Lawsuit is pending. (Id. ¶9.)

3.      But, it is for this Court to determine whether Miracon is violating the discharge injunction in its confirmation order and, if it is, how that order should be enforced. Moreover, there is simply no basis for Miracon's misguided, improper attempt to now bifurcate its claims and abandon the pre-effective date portion thereof in order to avoid the discharge. As shown in the Motion, the allegations in Miracon's complaint regarding the Reorganized Debtor center around events that occurred during the Reorganized Debtor's chapter 11 case. In its Objection, Miracon now alleges based on information and belief that the Reorganized Debtor has been using and is continuing to use Miracon's technology (Obj. ¶4). The Reorganized Debtor denies that it has ever used Miracon's technology, either before or after the effective date. Regardless, because Miracon has not contended and cannot contend that the Reorganized Debtor

engaged in any new post-effective date conduct, its claims are still barred by the discharge injunction.

4. By Miracon's own admission, the Complaint against the Reorganized Debtor violates the discharge injunction, and Miracon has wholly failed to establish that it has any claims that survive the discharge provided in the Plan and ordered by the Court. The Court should enforce the discharge injunction in the Confirmation Order and compel Miracon to dismiss the Lawsuit against the Reorganized Debtor with prejudice.[3]

## ARGUMENT

5. Based on the admissions in Miracon's Objection, there is no dispute that, as to the Reorganized Debtor, the Lawsuit violates the Plan and Confirmation Order. All the claims alleged in Miracon's Lawsuit arose years prior to the confirmation of the Plan. The discharge injunction and Confirmation Order are "critical elements" of the Debtors' fresh start, and "[i]t is essential that creditors respect these court orders and permit debtors to benefit from the rights and protections to which they are entitled." In re Cont'l Airlines, Inc., 236 B.R. 318, 330 (Bankr. D. Del. 1999), aff'd, 279 F.3d 226 (3d Cir. 2002). The Court should enforce the Confirmation Order by directing Miracon to dismiss its claims against the Reorganized Debtor with prejudice.

### A. This Court Should Determine Whether Miracon Is Violating the Confirmation Order.

6. This Court is the proper forum to determine whether Miracon is violating the Confirmation Order and, if so, how that order should be enforced. Miracon attempts to

---

[3] Miracon's admission that it has violated the Court's Confirmation Order establishes that Miracon is in contempt of court. The Court has broad discretion to fashion an appropriate sanction for contempt, and an order directing Miracon to dismiss its claims against the Reorganized Debtor with prejudice is inarguably within the Court's discretion.

NAI-1500441912v8
DOCS_DE:200913.1

confuse the issue by asserting that because the Reorganized Debtor has filed a motion to dismiss in the District Court, the Reorganized Debtor "believes" the District Court is the court "to determine whether claims should be dismissed." (Obj. ¶ 9.) To the contrary, the Reorganized Debtor believes that this Court is the proper forum to determine whether Miracon's claims have been discharged, and the fact that the Reorganized Debtor has filed a motion to dismiss in the Lawsuit does not in any respect diminish this Court's authority or expertise to interpret and enforce its own order including, in particular, the discharge injunction.

7. It is uncontroversial that this Court has authority to interpret and enforce the Confirmation Order. See Cont'l Airlines, 236 B.R. at 326 ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order."). Indeed, this Court may be the only court with authority to enforce compliance with the discharge injunction. In re SelectBuild Ill., LLC, Case No. 09-12085 (KJC), 2015 Bankr. LEXIS 1790, *18 (Bankr. D. Del. May 28, 2015) ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order.").

8. In addition, and crucially, a determination regarding the extent of a discharge injunction under a confirmation order is undoubtedly a core bankruptcy matter best suited to this Court's experience and unique expertise. See, e.g., In re Chicago, M. & St. P. & Pac. R.R., 6 F.3d 1184, 1194 (7th Cir. 1993) ("The reorganization court is clearly in the best position both to interpret the [confirmation] order and to determine whether [plaintiff] had a contingent claim that should have been filed in the reorganization. If it did, then subject to [plaintiff's] defenses, the [confirmation] order may bar the Minnesota lawsuit, for that action would be in pursuit of a discharged claim."); Norkus Enters., Inc. v. Getty Oil Co., Civ. Action

No. 04-4437 (MLC), 2005 U.S. Dist. LEXIS 29262, *17-18 (D.N.J. Nov. 17, 2005) ("The court that issued a confirmation order is generally best suited to interpret its own order."); In re Lear Corp., 12 Civ. 2626 (KBF), 2012 U.S. Dist. LEXIS 161374, *10 (S.D.N.Y. Nov. 5, 2012) (reversing the bankruptcy court's decision to abstain with respect to pending federal litigation because questions presented directly required interpretation of the scope of a bankruptcy discharge, which the "bankruptcy court was best positioned to answer"); Menjak v. Delphi Corp., Case No. 11-10419, 2011 U.S. Dist. LEXIS 64413, *19 (E.D. Mich. June 13, 2011) (holding district court proceedings in abeyance and ordering plaintiff to request relief from confirmation order in bankruptcy court and explaining that "bankruptcy courts have special expertise in matters relating to dischargeability, which suggests that the bankruptcy court should be the preferred forum in which to litigate dischargeability issues"). Thus, this Court not only has authority to interpret the scope of and enforce the discharge injunction in the Confirmation Order, it is also the best court to do so.

      **B.**    **Miracon's Tortious Interference, Unjust Enrichment and Conspiracy Claims Should be Dismissed.**

      9.    As is plain from the face of the Complaint, Miracon's claims for tortious interference, unjust enrichment and conspiracy all arose years before confirmation of the Plan, and prosecution of those claims is enjoined pursuant to the Plan and Confirmation Order. The allegations in the Complaint that purportedly support these claims are based on events that occurred primarily between 2004 and 2007, and the claims accrued under applicable law during this same time period. Thus, as described in the Motion, Miracon not only had bankruptcy claims pursuant to the exposure-based test set forth in In re Grossman's Inc., 607 F.3d 114 (3d Cir. 2010) but also had claims that had actually accrued pursuant to applicable law. Miracon has not argued (and cannot argue) that it could not have brought such claims while the bankruptcy

NAI-1500441912v8
DOCS_DE:200913.1

cases were pending, and Miracon has offered no other basis for this Court to conclude that Miracon's claims against the Reorganized Debtor for tortious interference, unjust enrichment and conspiracy survived the bankruptcy discharge.

### C. The Patent Infringement Claim Should Also Be Dismissed.

10. Although in the case of its patent infringement claim, Miracon at least suggests that it "may hold" a post-effective date patent infringement claim,[4] its suggestion is wholly without merit. The actions on which such claim would be based are not new post-effective date actions that would be excepted from the protections afforded by the discharge injunction.

11. As an initial matter, the Reorganized Debtor denies that it has ever used Miracon's technology or infringed a Miracon patent. Even if the Reorganized Debtor did engage in acts that infringed upon a Miracon patent, however, those acts would still not give rise to post-effective date claims unless the Reorganized Debtor has engaged in new post-effective date acts. "As a general rule, a successfully reorganized debtor under Chapter 11 of the Bankruptcy Code is liable for any independent conduct that arises after the confirmation of its bankruptcy plan." In re Travel Agent Comm'n Antitrust Lit., 583 F.3d 896, 902 (6th Cir. 2009). However, in cases where post-effective date conduct is merely a continuation of conduct that started earlier, courts have held that a new, post-effective date claim is not created, and the claim is not excepted from the discharge.

12. As an example, in Travel Agent Commission, travel agencies brought an antitrust action against various airlines, including former bankruptcy debtor United Airlines

---

[4] In this regard, the Objection states: "Upon information and belief, Grace – Conn. continues to use Miracon's Technology." (Obj. ¶ 4.)

("United"), alleging that the airlines conspired to cut travel agent commissions and drive them out of business. Id. at 898. The alleged unlawful conduct began prior to the time United filed for bankruptcy, but the claim was not brought until after United's emergence from bankruptcy. The plaintiffs, however, asserted that United remained liable under a "continuing violation" theory because United allegedly continued its illegal actions after it exited chapter 11. Id. The district court determined that United should be dismissed from the action because United's post-confirmation acts did not create a new claim against the company, but rather were "merely a reaffirmation of a previous act." Id. at 902. The Sixth Circuit affirmed, rejecting the plaintiffs' "continuing violation" theory and finding that United's decision to maintain its allegedly illegal commission policy post-confirmation was not a new "overt act" that gave rise to a post-confirmation claim under applicable law. Id.

13.    Similarly, in In re Worldcom, 546 F.3d 211 (2d Cir. 2008), the Second Circuit rejected the plaintiff's argument that alleged wrongful conduct "straddling" the debtor's bankruptcy proceedings gave rise to a new post-confirmation claim. The plaintiff in Worldcom acknowledged that confirmation of the debtor's plan of reorganization discharged all "claims" against the debtor that predated the filing of the chapter 11 petition. The plaintiff argued, however, that because the debtor's "alleged wrongful actions 'straddle' its bankruptcy proceedings" the claims were not discharged. Id. at 216-17.

14.    In particular, the plaintiff alleged that the debtor "has and continues to intentionally trespass on the property owned by plaintiff . . . by installing, maintaining and operating fiber optic cable on the property without authority." Id. at 214. The plaintiff argued that the trespass claim was not barred by the discharge because (i) each new light pulse transmitted through the cables on his property gave rise to a new action for trespass and (ii) the

continued presence of the cables on his property constituted a "continuing tort, for which a new cause of action accrues daily." Id. at 220. With respect to the light pulses, the court held that applicable state law would not recognize a cause of action for trespass without damage to his land. As a result, plaintiff's theory failed irrespective of the bankruptcy discharge. Id. at 218-19. With respect to the plaintiff's "continuing trespass" theory, the court held that although applicable law would recognize a theory of continuing trespass based on the continuing presence of the debtor's cables on the plaintiff's land, because the cables were installed prepetition, the claim was a prepetition discharged claim. Id. at 220. The court explained:

> [E]ven assuming that MCI committed a continuing trespass, any such claim was discharged by confirmation of MCI's plan of reorganization, due to the expansive scope of the Bankruptcy Code's definition of 'claim' and [plaintiff's] failure to allege any relevant post-confirmation conduct or unforeseeable damages.

Id. Thus, it was not sufficient that the alleged wrongful conduct continued to occur following the plan's confirmation. As the court held:

> [W]e agree with the bankruptcy and district courts that any claim for trespass arising from the cables themselves arose pre-petition, because all of the necessary elements were complete then and [plaintiff] has not alleged any relevant post-petition conduct (other than MCI's failure to remedy the trespass by removing the cables, which was foreseeable).

Id. at 220 n.7.

15. Like the continuing antitrust claim in the Travel Agent Commission case and the continuing trespass claim in the Worldcom case, any continuing patent infringement claim by Miracon against the Reorganized Debtor would involve no "relevant post-petition conduct" because that conduct is simply a "reaffirmation of a previous act." Miracon's patent infringement claim against the Reorganized Debtor is alleged to be based on acts that began years before the Reorganized Debtor emerged from bankruptcy. In its Objection, Miracon now

suggests that it may hold claims – presumably a patent infringement claim – on the asserted basis that the Reorganized Debtor is continuing those same acts. By its own admission, therefore, Miracon acknowledges that all the necessary elements of a patent infringement "claim," as defined in the Bankruptcy Code, existed during the Reorganized Debtor's chapter 11 cases. Thus, the patent infringement claim is, like the other claims Miracon asserts against the Reorganized Debtor, barred by the discharge injunction and should be dismissed.

16.     Although Miracon fails to cite any legal authority in support of its apparent proposition that its patent infringement claim can be bifurcated into pre-effective date and post-effective date claims, the Reorganized Debtor is aware of authority in the patent infringement context in which courts, including this Court, have in different circumstances held or stated that post-confirmation infringement claims are not barred by the discharge. See Hazelquist v. Guchi Moochie Tackle Co., Inc., 437 F.3d 1178 (Fed. Cir. 2006) (holding that to the extent the debtor had engaged in infringing sales since the discharge of his debts, each of those infringing activities gave rise to a cause of action that dated from the moment of infringement, after the discharge, and was not enjoined by section 524); In re Spansion, Inc., 418 B.R. 84 (Bankr. D. Del. 2009) (citing Hazelquist and other authority and noting, in dicta, with respect to patent claims, that "[i]f an injury continues after the stay is no longer in effect, courts have recognized a cause of action for post-discharge or post-confirmation acts of infringement").

17.     Both cases are distinguishable. As an initial matter, at issue in Spansion was whether the automatic stay applied to a patent infringement claim that arose post-petition. The Court held that "the continuous nature of a patent infringement tort does not override a paramount function of the bankruptcy court: to serve as a clearinghouse for attempted

NAI-1500441912v8
DOCS_DE:200913.1

enforcement of prepetition claims or continuation of litigation against the debtor." Spansion, 418 B.R. at 92. In explaining why the application of the automatic stay would not leave the complaining party without recourse, the court remarked, in dicta, that if the injury continued after the stay was no longer in effect, courts had recognized post-discharge or post-confirmation acts of infringement. Id. The court was not faced with determining whether, as here, a plaintiff who fails to assert a patent infringement claim pre-effective date can nevertheless resurrect its claim (with respect to conduct that has not changed) following the bankruptcy discharge by abandoning the pre-effective date portion of the claim in order to avoid the discharge.

18. In Hazelquist, a personal bankruptcy case under chapter 7, the plaintiff, pre-bankruptcy, sued the debtor and his company for patent infringement, and the debtor did not dispute the plaintiff's contention that he had resumed selling allegedly infringing products after his discharge. Id. Thus, the facts of Hazelquist are unlike those here, in which Miracon, approximately one year following the effective date of the Debtors' plan, for the first time alleged patent infringement, but for a period of time dating back to 2004, and then sought to effectively abandon the claim to the extent it was based on acts that occurred pre-effective date (although the post-effective date acts are the same). There is no new infringing conduct; at most, any present infringement is merely a reaffirmation of prior acts.

19. Here, the Reorganized Debtor fought its way through a thirteen-year bankruptcy case and, throughout, operated its businesses and manufactured products in a manner it understood to be lawful and appropriate. Within a year after emerging from that bankruptcy case, however, the Reorganized Debtor was confronted with this Lawsuit, which alleges that the Reorganized Debtor's products have been infringing Miracon patents since as early as 2004. Miracon's patent infringement claim against the Reorganized Debtor has been discharged, and

the Court should not permit Miracon to side-step the discharge injunction by now asserting that it may hold post-effective date claims based on a continuation of acts that are alleged to have begun over a decade ago. The Court should compel Miracon to dismiss with prejudice the patent infringement claim, as well as the claims for tortious interference, unjust enrichment and conspiracy.[5]

---

[5] Miracon's admitted violation of the discharge also establishes civil contempt. See, e.g., Cox v. Zale Delaware Inc., 239 F.3d 910, 917 (7th Cir. 2001) ("[T]he creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge."); Bessette v. Avco Fin. Servs., 230 F.3d 439, 444-45 (1st Cir. 2000) (noting that section 105 provides a bankruptcy court with statutory contempt powers in addition to whatever inherent contempt powers the court may have and that the court could use such powers to enforce a bankruptcy discharge). Upon a finding of contempt, a court is not limited to an award of costs and fees and may impose other sanctions. Marshak v. Treadwell, 595 F.3d 478, 494 (3d Cir. 2009). "Sanctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" Id. (citing Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1984)). Additionally, federal courts, including bankruptcy courts, have the authority under Rule 41(b) of the Federal Rules of Civil Procedure to dismiss a case when a plaintiff violates a court order. In sum, the Court has more than ample authority to order Miracon to dismiss the Lawsuit as to the Reorganized Debtor with prejudice.

## Conclusion

WHEREFORE, the Reorganized Debtor respectfully requests that the Court (i) overrule the Objection, (ii) grant the relief requested in the Motion, and (iii) grant such other relief as may be just and proper.

Dated: July 27, 2015
      Wilmington, Delaware.

Respectfully submitted,

PACHULSKI, STANG, ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

- and -

Gregory M. Gordon (TX 08435300)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR REORGANIZED
DEBTOR W. R. GRACE & CO. – CONN.

NAI-1500441912v8
DOCS_DE:200913.1