IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:  ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1]  ) | Case No. 01-01139 (KJC) |
| ) | (Jointly Administered) |
| Reorganized Debtors.  ) | |
| ) | Hearing Date: September 23, 2015, at 2:00 p.m. |
| ) | Objection Deadline: September 4, 2015 |

**THE DECLARATION OF RICHARD C. FINKE IN SUPPORT OF THE REORGANIZED DEBTORS' THIRTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS FILED BY SGH ENTERPRISES, INC. (SUBSTANTIVE AND NON-SUBSTANTIVE OBJECTION)**

COUNTY OF HOWARD   )
                                      ) ss.
STATE OF MARYLAND )

Richard C. Finke, after being duly sworn according to law, deposes and says:

1. I am over the age of 18 and competent to testify. I am Vice President and Associate General Counsel of W. R. Grace & Co., one of the reorganized debtors (collectively, "Grace" or the "Reorganized Debtors") in the above-captioned cases. All facts set forth in this Declaration are based on one or more of my personal knowledge, information supplied to me by employees of and/or professionals retained by the Reorganized Debtors in these chapter 11 cases, and my experience and knowledge of Grace's businesses. If called upon to testify, I could and would testify competently to the facts and opinions contained herein. This declaration is filed in support of the *Reorganized Debtors' Thirty-Eighth Omnibus Objection to Claims Filed by SGH Enterprises, Inc. (Substantive and Non-Substantive Objection)* (the "Objection"), filed

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. ("Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn."). Grace Energy Corporation ("GEC") is a former debtor, whose case was closed pursuant to this Court's *Final Decree: (A) Closing Certain of the Chapter 11 Cases; (B) Removing Such Cases From the Joint Administration Order; and (C) Waiving the Requirement to File a Final Report For Such Cases* [Docket no. 32429], dated October 14, 2014].

concomitantly herewith.[2] Based upon a thorough review of their available books and records, the Reorganized Debtors have concluded that they have a number of separate bases for objection to the SGH Claim (as the Objection defines that term).

*The Agreements*

2. The 1992 Stock Purchase Agreement, dated as of December 30, 1992, documents the sale by GEC to Samson Investment of all the outstanding shares of GPC in exchange for payment of the "Purchase Price" of approximately $125,000,000. It is my understanding that the "Closing Date" for the transactions contemplated in the 1992 Stock Purchase Agreement was January 21, 1993, and furthermore, that substantially all of the transactions and obligations contemplated by the 1992 Stock Purchase Agreement have been performed. A copy of the 1992 Stock Purchase Agreement is attached hereto as Exhibit 1.

3. Effective as of March 31, 1994, GEC and Samson Investment entered into the 1994 Settlement and Release Agreement, which purported to settle all price adjustment issues, except as to certain specified matters not relevant here. On information and belief, there are no remaining obligations arising from the 1994 Settlement and Release Agreement to be performed by either GEC or Samson Investment. A copy of the 1994 Settlement and Release Agreement is attached hereto as Exhibit 2.

4. It is my understanding that SGH has asserted that three of the matters for which it is seeking recovery are among or otherwise related to the 1998 SGH Claims, including the "Youpee Litigation," the "Fort Peck/East Poplar Unit Emergency Administrative Orders" and the "Exxon Litigation" (each as discussed below in more detail). *See* 1998 Settlement and Release

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Objection or the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (as it may be amended or supplemented, the "Plan").

2

Agreement, ¶ 1.A.(e) and Exhibits C and E-4 (relating to the Exxon Litigation), and ¶¶ 1.E and 2, and Exhibit F (relating to the "Murphy Oil Claim," which encompasses the Youpee Litigation and the Fort Peck/East Poplar Unit Emergency Administrative Orders), attached hereto as Exhibit 3. On information and belief, (i) Grace has never made an indemnification demand against SGH relating to the 1998 SGH Claims; and (ii) there are no other remaining obligations arising from the 1998 Settlement and Release Agreement to be performed by either GEC or Samson Investment.

***The Casmalia Site and Joint Defense Agreement***

5. On or about February 7, 2000, the EPA named Grace as a potentially responsible party ("PRP") under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), and the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. ("RCRA"), regarding the Casmalia Disposal Site, formerly the Casmalia Resources Hazardous Waste Management Facility (the "Casmalia Site"). *See General Notice Letter and Tolling Agreement, Casmalia Disposal Site, Santa Barbara County, CA*, at 2 (enclosed with the K. W. Lund letter to C. P. Tholen, dated March 31, 2000 (the "Lund Letter"), which is attached hereto as Exhibit 4). The Casmalia Site is an approximately 252-acre, inactive commercial hazardous waste treatment, storage, and disposal facility located in Santa Barbara County, California. Extract of *Casmalia Resources Superfund Site Final Remedial Investigation Report*, dated January 25, 2011, at 2-2 (accessed on May 27, 2015 at http://yosemite.epa.gov/), attached hereto as Exhibit 5.

6. On information and belief, GPC sent waste to the Casmalia Site prior to 1984. GPC ceased such shipments when it sold the relevant assets to Shell Oil Company and ceased all its operations in California. Grace may have also sent relatively small quantities of waste to the Casmalia Site that were "far below the de minimis cutoff EPA has established for the Site." *See*

K. W. Lund letter to M. Chalfont and B. O'Brien, dated July 11, 2000, attached hereto as <u>Exhibit 6</u>. The Casmalia Site's operator, Casmalia Resources, ceased accepting off-site liquid wastes in July 1987 and stopped accepting off-site solid waste in November 1989. All of these events occurred prior to the GPC Stock Sale Transaction. At no time did any of GPC, its subsidiaries, GEC, Grace or any of their affiliates hold an ownership interest in the Casmalia Site.

7.      On March 24, 2000, the EPA communicated the 3/24/00 EPA Settlement Offer to Grace. *See* Lund Letter. In the Lund Letter, Grace took the position that any and all of GPC's remediation liability for the Casmalia Site was SGH's obligation. In addition, Grace asserted that SGH's obligations arising from the Casmalia Site and any settlement thereof were not indemnifiable under the 1992 Stock Purchase Agreement. SGH disputed Grace's position in its entirety. *See* E. Mack letter to DOJ and EPA dated 8-21-2000, attached hereto as <u>Exhibit 7</u> (the "Mack 8/21/2000 Letter").

8.      SGH asserts that it gave notice of its indemnification demand for the Casmalia Site on April 26, 2000. *Id.* at 10; *see also* J. A. Canon letter to Grace Energy Corp., dated April 26, 2000, attached hereto as <u>Exhibit 16</u>

9.      In late 2000, the EPA conditioned its settlement offer in part on SGH and Grace resolving their differences over who was liable for GPC's share of the remediation liability. In an attempt to resolve or at least suspend their disputes, effective as of January 31, 2001, Grace-Conn. and GEC entered into a *Payment of Settlement, Joint Defense, and Confidentiality Agreement* (the "Casmalia JDA," attached hereto as <u>Exhibit 8</u>) with Samson Investment and SGH to defend and settle claims asserted by the EPA regarding the Casmalia Site.

***Post-Closing—GPC Renamed and Stripped of Assets***

10.     On information and belief, in early 1993, almost immediately after Samson Investment purchased the stock of GPC from GEC, Samson Investment caused all of the assets

4

DOCS_DE:201268.1 91100/001

of GPC to be transferred to other Samson companies, contemporaneous with changing GPC's name to Samson Natural Gas Company. *See Application for Amended Certificate of Authority*, dated September 20, 1993, attached hereto in Exhibit 21. Subsequently in that same year, Samson Natural Gas Company changed its name to SNG Production Company. *See* Exhibit 21, *Application for Amended Certificate of Authority*, dated September 20, 1993. In 1994, SNG Production Company changed its name to Samson Hydrocarbons Company. *See* Exhibit 21, *Application for Amended Certificate of Authority*, dated January 4, 1995. On August 21, 2000, in response to an EPA request for information regarding the Casmalia Site, Samson Hydrocarbons Company's counsel asserted to the EPA and the Department of Justice that "GPC is now a corporation with no assets named SHC. The assets were transferred out of SHC in 1993." *See* Mack 8/21/2000 Letter. On July 23, 2009, Samson Hydrocarbons Company changed its name to SGH Enterprises, Inc.[3] Del. Sec'y of State Certification, dated July 23, 2009, attached hereto as Exhibit 9 and Exhibit 21.

11. On information and belief, in November 2011, Samson Resources sold substantially all of its assets to KKR for $7.2 billion. *See KKR-Led Group has deal to buy Samson*, dated November 24, 2011 (accessed on July 9, 2015, at http://www.reuters.com/article/2011/11/24/us-kkr-samson-idUSTRE7), attached hereto as Exhibit 10 (the "KKR Purchase Article"). KKR has since sold some or all of the assets acquired from Samson Resources. *Exclusive: KKR Prepares More Samson Asset Sales as Oil Prices Plunge*, Reuters, dated November 10, 2014 (accessed on July 9, 2015, at http://

---

[3] Despite the name-change in July 2009, Claim nos. 18526 and 18527 were nonetheless filed on August 7, 2009, identifying the claimant as "Samson Hydrocarbons Company." On July 31, 2012, Claims nos. 18551 and 18552 were filed with the claimant identified as SGH.

www.reuters.com/article/2014/11/10/us-samsonresources-kkr-idUSKCN0IU0DR20141110), attached hereto as Exhibit 11 (the "KKR Sale Article").

***Fort Peck/East Poplar Unit***

12. I understand that Claimant has asserted a claim for approximately $9,245,960.64 allegedly caused by a well in the East Poplar Unit, located in Roosevelt County, MT, in which GPC owned a working interest from approximately 1978 to 1986. *See Concise Summary of the Case, SGH Enterprises, Inc. v. United States Environmental Protection Agency*, Case no. 11-1027 (3rd Cir.) (Docket no. 003110410559), filed January 14, 2011 (the "SGH Ft. Peck Case Summary"), at 1 (attached hereto as Exhibit 12). The SGH Claim bases its assertions on several emergency administrative orders and consent decrees filed by the EPA over the years, and on certain "60-day notices" issued by the City of Poplar. SGH did not attach copies of these notices to its proof of claim. On information and belief, SGH has no remaining obligations under any of these administrative orders, consent decrees and notices. The East Poplar Unit working interest formerly owned by GPC is not known to have any further liabilities.

***Ellison Litigation***

13. It is my understanding the SGH Claim does not assert that the Ellison Litigation concerns any Owned Site. According to pleadings filed by Claimant's own counsel, the alleged source of contamination of plaintiffs' property was chlorides and other substances leaking from a third-party commercial disposal facility—***which GPC never owned***. *See Defendants' Joint Motion for Partial Summary Judgment and Brief in Support*, attached hereto as Exhibit 13, and *Defendants' Reply to Plaintiffs' Response to Defendants' Joint Motion for Summary Judgment and Brief in Support*, "Undisputed Fact No. 4," attached hereto as Exhibit 14. On further information and belief, SGH (f/k/a GPC) and Samson Resources were both named defendants in the Ellison Litigation. *See* Exhibit 15 (Ellison Litigation docket sheet) attached hereto. The

Ellison Litigation docket sheet further states that Samson Resources was dismissed with prejudice from the litigation pursuant to summary judgment and SGH was separately dismissed with prejudice by reason of a settlement.

14.     I understand that Claimant gave notice of its indemnification demand for the Ellison Litigation on January 3, 2001. *See* SGH Claim at 12.

*Placerita Litigation*

15.     On information and belief, the Placerita Oil Field is located in Newhall, CA. On information and belief, GPC had a working interest and net revenue interest in five leases in the Placerita Oil Field that were disposed of prior to the sale of GPC's stock to Samson Investment. In July 2001, NY Hillside, Inc., a defendant and third-party plaintiff in the Placerita Litigation, asserted a third-party claim against SGH based upon GPC's former working interest.

16.     I understand that, according to Claim no. 18551, subsequent to the Petition Date, SGH presented a demand to the Debtors for indemnification. The Debtors were unable to comply in view of the then-ongoing Chapter 11 cases.

17.     I understand from the SGH Claim that, in December 2001, SGH entered into a Settlement Agreement and Mutual Release, which settled the Placerita Litigation. Claimant seeks recovery of a $25,000 settlement amount (the "Placerita Settlement Amount") and $14,125.51 in attorneys' fees and costs (the "Placerita Legal Fees").

*Proof of Payment*

18.     SGH and Samson Investment have made it abundantly clear that SGH has not had any real assets of its own since 1993. *See* Mack 8/21/2000 Letter.

19.     At least one wire transfer to the firm of Locke Lord in payment for services rendered as to the Casmalia Site appears to have been made from a Samson Resources operating account. *See* Exhibit 17 attached hereto. Other checks, including one dated October 21, 2002

for legal services rendered by the law firm of Watkins & Eager and a second check dated August 25, 2004 in payment for non-legal services, both relate to the East Poplar Unit and are embossed "Samson," which leaves open the question of which entity made those payments and from what bank account. *See* Exhibits 18 and 19 attached hereto. Yet another "disbursement voucher," also for services relating to the East Poplar Unit, directs the issuance of a check from the Samson Resources operating account. *See* Exhibit 20 attached hereto, at p. 4 (entitled "Disbursement Voucher").[4]

***Litigation Expenses***

20. On March 14, 2015, pursuant to the *Joint Defense and Confidentiality Agreement* (the "SGH Legal Invoice JDA") which was approved by this Court's *Protective Order Pursuant to Fed. R. Evid. 502*, dated March 3, 2015 [Docket no. 32514], Claimant produced law firm invoices and certain other invoices to the Reorganized Debtors for review. The Reorganized Debtors have conducted a preliminary review of these time records. Based upon that review, I believe that substantial portions of the amount requested for Litigation Expenses, which are defined as "*reasonable* attorneys' fees and other costs and expenses," 1992 Stock Purchase Agreement at ¶ 13.01(e) (emphasis added), may not be reasonable or necessary under relevant Texas law for one or more of the following reasons:

- Fees were expended on matters that were not "incident to proceedings or investigations respecting, or the prosecution or defense of, a claim," as required by the Limited Environmental Indemnification. For example:

  - Certain invoices provided to the Reorganized Debtors name an entity other than SGH as the client; others are unclear as to whether SGH was the party incurring the legal fees and whether the legal services were rendered not to SGH but to other legal entities, including Samson Resources and Samson Investment, which are not claimants under the SGH Claim;

---

[4] The Reorganized Debtors are unable to tie these checks back with any certainty to specific items listed in the SGH Claim.

- Some of the time set forth in the invoices reviewed by the Reorganized Debtors seems to be related to SGH's monitoring and participation in these Chapter 11 Cases, which clearly is not contemplated by the Limited Environmental Indemnification, and which associated costs are therefore not recoverable by SGH;

- Other time, particularly as to the East Poplar Unit, may have been spent on behalf of clients other than SGH or on activities that otherwise do not fall within the meaning of "Litigation Expenses;"[5] and

- Invoices seem to contain instances of duplicative billing by more than one attorney for what appear to be the same tasks;

- Block-billed and vague time entries make it impossible to determine whether particular time entries are for legal services reimbursable under the Limited Environmental Indemnification;

- Invoices seem to include non-reimbursable items such as travel time and overhead.

---

[5] None of the documents supporting these assertions are attached hereto, so as to comply with the SGH Legal Invoice JDA.

22. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Richard C. Finke*

Richard C. Finke
Vice President and Associate General Counsel
W. R. Grace & Co.

SWORN AND SUBSCRIBED before me,
this 18th day of August 2015

*Diane E. Borowy*
Notary Public

My Commission Expires: September 18, 2016

> DIANE E. BOROWY
> Notary Public-Maryland
> Howard County
> My Commission Expires
> September 18, 2016

10