<u>EXHIBIT 1</u>

**1992 Stock Purchase Agreement**

AGREEMENT FOR THE PURCHASE AND SALE

OF THE STOCK OF

GRACE PETROLEUM CORPORATION

GEC 000063

## TABLE OF CONTENTS

**ARTICLE 1.**
Definitions                                                                1

**ARTICLE 2.**
Purchase and Sale of the Shares; Consideration                             4
    2.01  Purchase and Sale                                     5
    2.02  Payment of Purchase Price                             5

**ARTICLE 3.**
    Closing Date; Termination                                  5
    3.01  Scheduled Closing Date                                5
    3.02  Termination                                           5

**ARTICLE 4.**
    Actions at Closing; Discharge of Certain Obligations;
        Further Assurances                                 6
    4.01  Closing                                               6
    4.02  Actions at the Closing                                6
    4.03  Effectiveness of Closing                              7
    4.04  Further Assurances                                    7
    4.05  Discharge of Certain Intercompany Accounts            7

**ARTICLE 5.**
    Purchase Price Adjustments                                 8
    5.01  Closing of the Books                                  8
    5.02  Purchase Price Adjustment for Net
        Realizable Assets                                  9
    5.03  Other Items to be Included in Net
        Realizable Assets                                  11
    5.04  Items Excluded from Net Realizable Assets             16
    5.05  Obligation to Fund Bank Accounts                      17
    5.06  Proceeds of Lawsuit                                   17

**ARTICLE 6.**
    Representations and Warranties by Seller                   17
    6.01  Incorporation                                         17
    6.02  Authorization                                         18
    6.03  No Conflict                                           18
    6.04  Capitalization                                        19
    6.05  Litigation and Claims                                 19
    6.06  Labor and Employment                                  20
    6.07  Insurance                                             21
    6.08  Employees; Benefit Plans                              23
    6.09  Environmental Compliance                              23
    6.10  Fees and Expenses                                     24
    6.11  Completeness of Disclosure                            24
    6.12  Drilling Commitments                                  24
    6.13  Defensible Title                                      24
    6.14. Reserves Disclaimer                                   28

**ARTICLE 7.**

GEC 000064

Representations and Warranties by Purchaser                     28
    7.01  Incorporation                                     28
    7.02  Authorization                                     28
    7.03  No Conflict                                       28
    7.04  Sufficient Funds                                  29

ARTICLE 8.
   Disclaimer of Additional and Implied Warranties            29
    8.01  Investigation and Evaluation                      29
    8.02  Forecasts, Projections, etc                       30
    8.03  Effect of Transfer of Shares                      30

ARTICLE 9.
   Covenants of Seller and Purchaser                          30
    9.01  Access and Inquiry  . . . . , _                   30
    9.02  Hart-Scott-Rodino Act                             33
    9.03  Permits and Licenses                              33
    9.04  Notices to Third Parties                          34
    9.05  Dividend of Certain Assets                        34
    9.06  Post-Closing Covenants (Employees)                34
        (a) Transition Employees                     34
        (b) Employee Benefits                        36
        (c) Indemnification during Interim Period     37
        (d) Employee Services Agreement              37
        (e) Excluded Properties - Employee and
           Record Access                            37

    9,07  Post Closing Covenants (Title)                    38
        (a) Title Variances                          38
        (b) Notice of Title Variances                38
        (c) Remedies for Title Variances             39

ARTICLE 10.
   Covenants Relating to Conduct of Business Prior to the Closing  . . . .   40
    10.01   Operation in Ordinary Course                    40
    10.02   Material Agreements                             40
    10.03   Dividends                                       41
    10.04   Issuance of Securities                          41
    10.05   Governing Documents                             40
    10.06   No Acquisitions                                 41
    10.07   No Dispositions                                 41
    10.08   Indebtedness                                    42
    10.09   Employee Benefit Plans, Etc                     42
    10.10   Compensation, Etc                               42
    10.11   Capital Expenditures; Purchase Orders           42
    10.12   Employee Notice                                 42
    10.13   Other Actions                                   43
    10.14   Advice of Changes                               43
    10.15   Settlement, Release and Waiver of Claims        43

ARTICLE 11.
   Conditions Precedent to the Obligations of Purchaser       43
    11.01   Accuracy of Representations and Warranties      43
    11.02   Performance of Covenants and Agreements         43

GEC 000065

| 11.03 | Release of Liens | 44 |
| 11.04 | Inspection of Properties | 44 |
| 11.05 | Hart-Scott-Rodino Act | 45 |
| 11.06 | Permits, Consents, etc | 46 |
| 11.07 | Litigation | 46 |
| 11.08 | Certificate of Seller | 46 |
| 11.09 | Opinion of Seller's Counsel | 47 |
| 11.10 | TaxCredits | 47 |
| 11.11 | Board Approval | 48 |

ARTICLE 12.
Conditions Precedent to the Obligations of Seller    48

| 12.01 | Accuracy of Representations and Warranties | 49 |
| 12.02 | Performance of Covenants and Agreements | 49 |
| 12.03 | Hart-Scott-Rodino Act | 49 |
| 12.04 | Permits, Consents, etc | 49 |
| 12.05 | Litigation | 49 |
| 12.06 | Certificate of Purchaser | 50 |
| 12.07 | Opinion of Purchaser's Counsel | 50 |
| 12.08 | Board Approval | 50 |

ARTICLE 13.
Indemnification    50

| 13.01 | Definitions | 50 |
| 13.02 | General Indemnification by Purchaser | 52 |
| 13.03 | General Indemnification by Seller and Grace | 53 |
| 13.04 | Limitations | 55 |
| 13.05 | Defense of Third Party Claims | 56 |
| 13.06 | Specific Indemnities by Seller and Grace | 58 |
| 13.07 | Consequential and Lost Profit Damages | 59 |

ARTICLE 14
Cooperation in Various Matters    59

| 14.01 | Mutual Cooperation | 59 |
| 14.02 | Preservation of Purchaser's Files and Records | |
| 14.03 | Preservation of Seller's Files and Records | 60 |
| 14.04 | Preservation of Reports, etc | 60 |
| 14.05 | Amendment of Guaranteed Agreements, etc | 60 |
| 14.06 | Press Releases | 60 |
| 14.07 | Administration of Accounts Receivable | 61 |

ARTICLE 15.
Expenses; Termination of Services; Change of Name    61

| 15.01 | Expenses | 61 |
| 15.02 | Termination of Seller Services | 62 |
| 15.03 | Broker's Fees | 62 |
| 15.04 | Use of Grace Name | 62 |

ARTICLE 16.
Notices    62

| 16.01 | Procedure and Addresses | 62 |
| 16.02 | Change of Notice Addresses | 63 |

GEC 000066

ARTICLE 17.
    Tax Matters                                                                64
        17.01    Certain Non-Income Tax Matters                            64
        17.02    Income Taxes - Operations on or Before
                Closing Date                                            64
        17.03    Income Taxes - Operations Subsequent
                to Closing Date                                         66
        17.04    Income Taxes Resulting From This Transaction  ...         67
        17.05    Income Taxes on Divesture                                 68
        17.06    Specific Tax Undertakings                                 68

ARTICLE 18
    General                                                                    68
        18.01    Entire Agreement                                          68
        18.02    No Other Representations, etc                             68
        18.03    █████████████████████████████
        18.04    Governing Law                                             69
        18.05    Counterparts                                              69
        18.06    Binding Agreement; Assignment                             69
        18.07    Amendment                                                 69
        18.08    NoWaiver                                                  69
        18.09    U.S. Dollars                                              69

GEC 000067

## GPC STOCK PURCHASE AGREEMENT

("Agreement")

STOCK PURCHASE AGREEMENT dated December 30, 1992 by and between GRACE ENERGY CORPORATION, a Delaware corporation having executive offices at Two Galleria Tower, Suite 1500, 13455 Noel Road, Dallas, Texas 75240-6681, and SAMSON INVESTMENT COMPANY, a Nevada corporation having executive offices at Two West Second Street, Tulsa, Oklahoma 74103.

In consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

### ARTICLE 1.

### Definitions

As used in this Agreement, the following terms have the meanings set forth in this Article 1. All Article, Section, Exhibit and schedule numbers and references used herein refer to Articles and Sections of this Agreement and Exhibits and schedules attached hereto or delivered simultaneously herewith, unless otherwise specifically described.

1.01 "Closing" means the consummation of the purchase and sale of the Shares as contemplated by this Agreement.

1.02 "Closing Date" means the date on which the Closing occurs.

1.03 "Confidentiality Agreement" means the Agreement dated as of August 31, 1992 between Merrill Lynch, Pierce, Fenner & Smith Incorporated as Representative of Grace and Seller and Samson Resources Company regarding the keeping confidential of certain information furnished to Purchaser in connection with its evaluation of an acquisition of GPC.

GEC 000068

province of Canada, or any political subdivision thereof, or any agency, board, bureau, department or commission of any of the foregoing.

1.16   Grace" means W. R. Grace & Co.-Conn., a Connecticut corporation.

1.17 "Grace Entity" means Grace or any of its subsidiaries or affiliates, except for the Corporations.

1.18 "HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations thereunder.

1.19 "Inspection Report" has the meaning set forth in Section 11.04.

1.20 "Leased Properties" means real property leased by the Corporations as described in Exhibit A, other than Oil, Gas, and Mineral Leases.

1.21 Intentionally omitted.

1.22 "Material Adverse Effect" means an adverse effect upon the business, financial condition or results of operations of the Corporations taken as a whole and having a value greater than $250,000.

1.23 "Net Realizable Assets" has the meaning set forth in Section 5.02.

1.24 "Oil, Gas and Mineral Leases" means oil, gas and mineral leases in which the Corporations own an interest as lessee.

1.25 "Permitted Encumbrances" has the meaning set forth in Section 6.13.

1.26 "Producing Properties" means those assets of the Corporations which produce or are capable of producing oil, gas and other minerals including, but not limited to, oil and gas leasehold interests, working interests, overriding royalty interests, non-participating royalty interests, and other payments out of production.

1.27 "Properties" means real property owned and leased by the Corporations, other than real property interests created by Oil, Gas and Mineral Leases and the Producing Properties.

-3-

GEC 000070

1.28 "Purchase Price" means $125,000,000, subject to adjustment as provided in Sections 5.02, 5.03, and 11.04.

1.29 "Purchaser" means Samson Investment Company, a Nevada corporation.

1.30 "Related Facilities" means all real property (other than the Leased Properties, the Oil, Gas and Mineral Leases, the Producing Properties and the Properties) and personal property and other rights of any nature whatsoever owned by the Corporations and used in connection with operations conducted at or incident or related to the Oil, Gas and Mineral Leases, Leased Properties, Producing Properties, and Properties whether located on or off of the Oil, Gas and Mineral Leases, Leased Properties, Producing Properties or Properties or on properties pooled or unitized therewith, including, but not limited to, all wells, fixtures, casing and tubing, production, gathering, treating, processing, compression, dehydration, salt water disposal and pipeline equipment and facilities, tanks, motor vehicles, machines, tools, dies, vessels and similar equipment and facilities, office equipment, reference materials, lease, business and other records and files, and all licenses, leases, easements, permits, actions and rights-of-way.

1.31 "Scheduled Closing Date" has the meaning specified in Section 3.01.

1.32 "Seller" means Grace Energy Corporation, a Delaware corporation.

1.33 "Seller Group" means Seller and its subsidiaries and affiliates.

1.34 "Shares" means all of the issued and outstanding capital stock of GPC which consists of 1,000 shares of common stock, par value $1.00 per share, all of which is being purchased and sold hereunder.

1.35 Intentionally omitted.

1.36 'Tape" has the meaning set forth in Section 6.13.

1.37 'Tight Sands Wells" has the meaning set forth in Section 11.10.

GEC 000071

1.38 'Title Variance" has the meaning set forth in Section 9.07.

1.39 "Voting Debt" has the meaning set forth in Section 6.04(e).

## ARTICLE 2.

### Purchase and Sale of the Shares: Consideration

2.01 Purchase and Sale. Upon the terms and subject to the conditions of this Agreement, at the Closing, Seller shall sell and transfer the Shares to Purchaser and Purchaser shall purchase and acquire the Shares from Seller.

2.02 Payment of Purchase Price. In consideration for the sale and purchase of the Shares as described in Section 2.01, Purchaser shall pay to Seller the Purchase Price in the manner described in Article 4.

## ARTICLE 3.

### Closing Date: Termination

3.01 Schedulec    osing Date. The "Scheduled Closing Date" shall be a date agreed upon by Seller and Purchaser in writing, which date shall be no later than the third business day following the fulfillment or waiver of the conditions set forth in Sections 11.05 and 12.03, unless Seller and Purchaser shall agree to a different Scheduled Closing Date in an amendment to this Agreement executed and delivered in accordance with Section 18.07. For purposes of this Article, "business day" shall mean a day which is not a Saturday or Sunday, nor a day on which banks are generally closed in the City of New York.

3.02 Termination.

(a)    This Agreement may be terminated at any time prior to the Closing by mutual written agreement of the parties.

(b)    If the conditions set forth in Sections 11.05 and 12.03 have not all been fulfilled or waived by the party entitled to waive such conditions on or before

GEC 000072

February 15, 1993, **unless** the parties shall agree otherwise **in** an amendment to **this Agreement executed and delivered in accordance with Section 18.07, then either Seller or Purchaser may terminate this Agreement, subject to the provisions of subsection (d) of this Section, by giving notice to the other, in the manner provided in Section 16.01, at any time prior to the fulfillment or waiver of all such conditions.**

**(c)    If for any reason the Closing shall not have been consummated on or before the Scheduled Closing Date, either Seller or Purchaser shall have the right to terminate this Agreement, subject to the provisions of subsection (d) of this Section, at any time thereafter by giving at least three business days' advance notice of such termination to the other.**

**(d)    The termination of this Agreement, whether in accordance with any of the preceding provisions of this Agreement or otherwise, shall not affect the rights of either Seller or Purchaser against the other for liability or damage caused by or arising out of the breach of any covenant or agreement contained in this Agreement; provided, however, that upon termination in accordance with the preceding provisions of this Section, the parties shall be released from any and all liability or damage for breach of any of the representations and warranties contained in Article 6 or Article 7.**

## ARTICLE 4.

### Actions at Closing; Discharge of Certain Obligations; Further Assurances

**4.01  Closing.  The Closing shall take place at 9:00 a.m. local time at the offices of GPC at Oklahoma City, Oklahoma, or at such other time and place as the parties hereto shall agree in writing, on the Closing Date.**

**4.02  Actions at the Closing.  At the Closing:**

GEC 000073

(a)    Seller shall deliver to Purchaser certificates representing the Shares, together with executed stock powers.

(b)    Purchaser shall deliver to Seller the Purchase Price, in immediately available United States funds by wire transfer to an account designated by Seller.

(c)    Seller shall deliver to Purchaser (i) any minute books and stock transfer books of the Corporations that are not then in the possession of the Corporations, and (ii) legally effective resignations of such directors and officers of the Corporations as Purchaser has requested. Within a reasonable time after the Closing, Seller will deliver to Purchaser any records of the Corporations that are not then in the possession of the Corporations.

(d)    Seller shall deliver to Purchaser the certificate described in Section 11.08, and opinion of counsel described in Section 11.09.

(e)    Purchaser shall deliver to Seller the certificate described in Section 12.06, and opinion of counsel described in Section 12.07.

4.03  Effectiveness of Closing.  No action to be taken or delivery to be made at the Closing shall be effective until all of the actions to be taken and deliveries to be made at the Closing are complete.

4.04  Further Assurances.  At any time and from time to time from and after the Closing, Seller and Purchaser shall, at the request and expense of the requesting party, take all such actions as the requesting party shall reasonably request in order to fully and effectively conform to the intents and purposes of this Agreement.

4.05  Discharge of Certain Intercompany Accounts.  Except for arms length transactions for goods or services otherwise included in accounts receivable or payable, any amounts owed by any Grace Entity to the Corporations, or by any of

GEC 000074

the Corporations to any Grace Entity, shall be deemed paid and discharged, **effective as** of the Closing Date.

## ARTICLE 5.

### Purchase Price Adjustments

5.01  Closing of the Books.  As of the close of business on December 31, 1992, GPC will close the books of the Corporations consistent with past practices. Purchaser shall be permitted to have its representatives and advisors observe the closing of the books.  As soon as practicable after December 31, 1992, but in no event later than thirty days after closing of the books of the Corporations, GPC shall prepare a consolidated balance sheet of the Corporations as at December 31, 1992 ("December 31, 1992 Balance Sheet").  The December 31, 1992 Balance Sheet shall be prepared on a going concern basis using the accounting principles contained in Grace's Financial Accounting Policy Statements manual and the same levels of materiality, account classifications and procedures as used to prepare the unaudited consolidated balance sheet of the Corporations, as at November 30, 1992  (November 30, 1992 Balance Sheet - Column 1), a complete copy of which is attached as a Schedule to this Section.  In addition, GPC will prepare an Adjusted December 31, 1992 Balance Sheet representing the December 31, 1992 Balance Sheet revised to exclude the assets and liabilities of the Thomasville Field and the East Texas Region included in the December 31, 1992 Balance Sheet (reference is made to the November 30, 1992 Balance Sheet - Column 4).

GEC 000075

5.02  Purchase Price Adjustment for Net Realizable Assets.

(a)     Not later than July 1, 1993, Purchaser shall deliver to Seller Purchaser's calculation of the (i) sum of the amounts reflected in the Adjusted December 31, 1992 Balance Sheet, as may be modified to conform to the provisions of this Agreement, of the Corporations', cash, accounts and notes receivable from all parties other than Seller and Grace and inventories which have been realized or are collectible, less accounts and notes payable, bank overdrafts, accrued liabilities, long-term and deferred income (but not including Income Tax liabilities retained by Seller as stated in Article 17 and accrued insurance and employee benefit obligations also being retained by Seller), (ii) plus or minus the items listed in Section 5.03 hereof, said sum being the "Net Realizable Assets". For purposes of determining the items included in (i) above the same detailed account compilation procedures as per the Schedule to this Section shall be used.

(b)     Except as modified by Section 5.03 hereof, the values of all amounts included in Net Realizable Assets shall be determined on the basis of the accounting principles used to prepare the Adjusted December 31, 1992 Balance Sheet, provided that any amount shall not exceed its realizable and collectible value.

(c)     Seller shall review Purchaser's calculation of Net Realizable Assets and will notify Purchaser not later than ninety (90) calendar days after the delivery of same to Seller of any objections Seller may have to the amount of or the failure of Purchaser to include any item in the calculation. Seller and Purchaser will, thereafter, negotiate in good faith to determine the amount of or whether any item or items should be included or not included in the calculation, and Purchaser will afford Seller and/or its representatives access to all of the books and records of the Corporations to allow Seller to make such determination. In the event that one hundred twenty (120) days after Purchaser delivers its calculation to Seller,

GEC 000076

Seller and Purchaser are still unable to agree on the value or the inclusion of any item in such calculation, the following will apply as to each such item:

(i)    With respect to any asset to be included in Net Realizable Assets, Seller will have an option to either (A) obtain an assignment of such asset from the Corporations, or (B) submit the matter to DT for a determination of the value thereof as prescribed in item (iii) below;

(ii)    With respect to any liability to be included in Net Realizable Assets, Seller will have an option to either (A) assume such liability, or (B) submit the matter to DT for a determination of the value thereof as prescribed in item (iii) below;

(iii)    Any item submitted to DT will be evaluated by DT and appropriately included, or not included, in the calculation of Net Realizable Assets based upon the criteria for such item set forth in the provisions of this Agreement. DT's determination with respect to any such item shall be completed as soon as possible after submission thereof to DT and will be final and binding on, and nonappealable by, Seller and Purchaser. Seller and Purchaser will each pay one-half of DT's fees and expenses.

(d)    Subject to the foregoing, the calculation of Net Realizable Assets will, for the disputed items relating to the calculation of Net Realizable Assets, be adjusted as follows:

(i)    Increased or decreased, as the case may be, for the difference (plus or minus) between the original valuation of such items and the valuation of such items as determined by DT.

(ii)    Decreased by the original valuation of such items for any assets assigned to Seller.

(iii)    Increased by the original valuation of such items for any liabilities assumed by Seller.

-10-

GEC 000077

(e)    In the event that the amount of the adjusted Net Realizable Assets is less than zero, then, no later than ten days following the later of either agreement of the parties or DT's determination of all items to be included in adjusted Net Realizable Assets, Seller will pay to Purchaser (by check) the difference between the amount of adjusted Net Realizable Assets and zero, together with 9 percent per annum simple interest thereon calculated from the Closing Date until the date of actual payment thereof.  In the event that the adjusted Net Realizable Assets is greater than zero, then, no later than ten days following the later of either agreement of the parties or DT's determination of all items to be included in adjusted Net Realizable Assets, Purchaser will pay to Seller (by check) the difference between zero and the amount of adjusted Net Realizable Assets, together with 9 percent per annum simple interest thereon calculated from the Closing Date until the date of actual payment thereof.

5.03  Other Items to be Included in Net Realizable Assets.  The amounts associated with the following items shall either modify the values to be included in Net Realizable Assets or shall be additional items to be included therein:

(a)    With respect to all of the Corporations' bank accounts, the sum total of all of the following amounts shall be included as an asset or a liability, as appropriate, in the calculation of Net Realizable Assets:

(i)    The net amount of all cash payments and transfers (cleared or outstanding) made out of and/or into the Corporations' bank accounts to or from Seller, Grace or any affiliate on and after January 1, 1993 and through the Closing Date; and

(ii) The total amount of all cash payments (cleared or outstanding) pertaining to any period prior to January 1, 1993 made by the Corporations on and after January 1, 1993 and through the Closing Date for the Corporations'

-11-

GEC 000078

payment of any amount to entities other than those referred to in item (i) above not otherwise included as a liability in the calculation of Net Realizable Assets.

(b)    In lieu of the valuation procedures otherwise applicable to such items pursuant to Section 5.02 hereof, Purchaser no later than April 1, 1993 may cause all or any portion (at Purchaser's sole discretion) of the Corporations' materials and supplies inventory to be designated for sale to and bidding by third parties. Upon receipt of the third-party offers, Purchaser will disclose all such third-party offers received to Seller. Seller will thereafter have ten (10) days to elect, for itself or its designee, to purchase said items included in the third-party offers for an amount equal to 100% of the highest third-party offer. In the event Seller so elects to purchase said items, then (i) Seller will immediately pay the purchase price to Purchaser (which amount of cash received shall not be considered in the calculation of Net Realizable Assets); (ii) the amount for such items to be included in the calculation of Net Realizable Assets will be equal to the highest third-party offer, less applicable sales taxes; and (iii) Seller will immediately take custody of all such items. In the event Seller does not so elect to purchase such items, then Purchaser will have ten (10) days to elect to require the Corporations to retain all such items, in which event the amount to be included in the calculation of Net Realizable Assets, will be equal to 100% of the highest third-party offer. In the event neither Seller nor Purchaser make an election to purchase such items, then the amount for such items to be included in the calculation of Net Realizable Assets will be an amount equal to the highest third-party offer, less applicable sales taxes.

(c)    Net Realizable Assets shall  include or shall not include as liabilities (or as assets for refunds) amounts for Income Taxes (as defined in Article 17) as provided in Article 17 hereof.

-12-

GEC 000079

(d)    Net Realizable Assets shall include as liabilities all ad valorem, severance and production tax accruals (less $50,000) to the extent such accruals relate to the Producing Properties and Related Facilities but excluding from such calculation any such tax assessments arising out of contractual settlements by the Corporations of take-or-pay claims, gas purchase contract buy-downs, government pricing regulations or like occurrences, or relating to gas plants in which the Corporations own or have owned an interest, for which Seller and Grace have provided indemnification to Purchaser and the Corporations pursuant to Section 13.03.

(e)    Any and all adjustments to the Purchase Price resulting from Purchaser's Title Variances as determined pursuant to Section 9.07 shall be included as either an asset or a liability as appropriate in the calculation of Net Realizable Assets.

(f)    Purchaser shall determine the gas balancing position of all wells net to the Corporations' revenue interest. Any difference between (i) the aggregate volume so determined by Purchaser as of the Effective Time and (ii) 2,490,100 MCF overproduced gas balancing position  as represented by Seller, shall be multiplied by $1.00 per MCF and the resulting amount included as either an asset or liability (as appropriate) in the calculation of Net Realizable Assets.

(g)    The Corporations' estimated net revenues from oil, gas or other sales for the month of December, 1992 included in GPC's general ledger account #110-205 shall not be included as an asset in the calculation of Net Realizable Assets.

(h)    The Corporations' estimated net working interest share of well operating expenses  for the month of December, 1992 included in GPC's general ledger account #336-004 shall not be included as a liability in the calculation of Net Realizable Assets.

-13-

GEC 000080

(i)    Well costs (no matter when they are actually incurred or paid) shall be included in the calculation of Net Realizable Assets as follows:

(i)    **All drilling, completion and pipeline connection costs for the wells listed on Exhibit "B" attached hereto shall not be included as liabilities.**

(ii)    **All acreage, drilling, completion and pipeline connection costs (pursuant to outstanding AFE's executed by GPC prior to the date hereof) not actually paid prior to January 1, 1993 and applicable to any well or wells not included on Exhibit "B" (including all Devonian Shale Wells) shall be included as liabilities, to the extent not already included as liabilities in the calculation of Net Realizable Assets.**

(iii)    **All acreage, drilling, completion and pipeline connection costs for wells drilled pursuant to AFE's approved or executed by Purchaser subsequent to the date hereof shall not be included as liabilities.**

(iv)    **All acreage, drilling, completion and pipeline connection costs attributable to the Manley No. 1-15 well shall be included as liabilities in the calculation of Net Realizable Assets to the extent not already included as a liability in the calculation of Net Realizable Assets. Purchaser shall cause Seller or Seller's designee to receive all pertinent well information available to Purchaser. Seller or Seller's designee shall be responsible for making any casing point or completion elections and shall have the option, to be exercised no later than sixty (60) days following completion, to require the Corporations to assign to Seller or Seller's designee the Corporations' interest in said well.**

All prepayments of drilling, completion or pipeline connection costs made prior to January 1, 1993, shall be applied to reduce the liability set forth above.

(j)    The reduction in the value of future Section 29 tax credits applicable to all Tight Sands Wells and the reduction in the value of future Section 29 tax credits applicable to and/or gas production from all Devonian Shale Wells, as

GEC 000081

calculated pursuant to Section 11.10, shall be included as a liability in the calculation of Net Realizable Assets.

(k)    The remaining amount of payments due for any and all building leases (other than the Oklahoma City Office Leases,), office equipment and vehicle leases or other similar commitment leases or rentals as of May 31, 1993 (which are not cancellable within 60 days without penalty) shall be discounted to present value at the then existing prime rate as published in the Wall Street Journal and the resulting amounts shall be included as liabilities in the calculation of Net Realizable Assets.

(l)    The amount of $150,500 (Canadian) representing the Corporations' ownership interest in the Viking Kinsella package located in Alberta, Canada and the Hudson area package located in Alberta, Canada (which interests shall be retained by the Corporations) shall be included as an asset in the calculation of Net Realizable Assets, subject to adjustment for any Title Variances as provided herein.

(m)    The amount of any termination and/or cancellation payments attributable to the cancellation of the Chautauqua drilling consultant contract in Alberta, Canada and actually paid by the Purchaser or the Corporations shall be included as a liability in the calculations of Net Realizable Assets.

(n)    Purchaser and Corporations recognize that many items of expenditures for general and administrative expenses, taxes (other than income) and Income Taxes have been or will be actually paid by either Seller or Grace (but not by GPC or Purchaser) and charged to GPC through a non-cash accounting entry ("Non-Cash Charges"). With respect to such items, the parties agree as follows:

(i)    No accrual for Non-Cash Charges will be recognized as a liability in the calculation of Net Realizable Assets.

-15-

GEC 000082

(ii)    No prepayment for Non-Cash Charges will be recognized as an asset in the calculation of Net Realizable Assets.

(o)    Any cash amount for the payment of valid charges by the Corporations occurring during periods prior to January 1, 1993, and received by Purchaser subsequent to Closing for which an account receivable balance was not recorded as of December 31, 1992 shall be included as an asset in the calculation of Net Realizable Assets.

(p) Excluded from the calculation of Net Realizable Assets is the liability for the various contingencies set forth on the schedule to this Section for which Seller is indemnifying Purchaser.

5.04  Items Excluded from Net Realizable Assets. Specifically excluded from the calculation of Net Realizable Assets shall be the following liabilities and obligations, the responsibility for payment of which shall be retained by Seller (and which amounts shall not be paid by the Corporations):

(a)    All severance payment and termination liabilities associated with the termination of the Corporations' employees, whether terminated before or after the Closing Date.

(b)    Intentionally Omitted.

(c)    All liabilities associated with the payroll of the Corporations for all periods through December 31, 1992 including, but not limited to, base payroll, incentive, bonus, commission or performance based payments, payroll taxes and related benefits payable pursuant to the Employee Benefit Plans. A Grace Entity shall make payment of such amounts directly to the Corporations' employees.

(d) Except for the adjustment provided for in Section 5.03(f) hereof, there shall (except for amounts of excess and overriding royalties related to overproduction included in account #316-002 "Accounts Payable - Oil and Gas Suspense", which at November 30, 1992 amounted to $196,264.62) be no assets or

-16-

GEC 000083

liabilities related to the Corporations' gas balancing positions included in the calculation of Net Realizable Assets.

5.05 Obligation to Fund Bank Accounts. Effective at the Closing, Purchaser shall assume Seller's obligations to all banks at which the Corporations maintain disbursing accounts to fund all overdrafts on such accounts resulting from disbursements by the Corporations, regardless of whether such disbursements are made prior to or after the Closing, provided, however, that Seller shall use its best efforts to minimize account over drafts either by maintaining sufficient cash balances to cover outstanding checks and/or accelerate or delay payments during the week immediately preceding the anticipated closing.

5.06 Proceeds of Lawsuit. The parties acknowledge that GPC has an interest in the outcome of Miller Brothers, et al. v. State of Michigan, et al.. Cause No. 88-11848-CM, as filed in the Court of Claims in the State of Michigan, pursuant to a letter agreement dated September 18, 1989 between Wolverine Gas and Oil Company, Inc. and GPC, as amended. Immediately prior to the Closing, GPC shall assign all rights under such agreement to Seller or its assignee and Seller or its assignee shall assume all of GPC's obligations thereunder, and shall bear all costs and expenses related thereto. Upon final disposition of such lawsuit, Seller or its assignee shall be entitled to receive all amounts to which GPC would be entitled under such agreement and GPC shall promptly remit to Seller or its assignee all monies received by GPC in respect of such agreement.

ARTICLE 6.

Representations and Warranties by Seller

Seller hereby represents and warrants to Purchaser as follows:

6.01 Incorporation.

-17-

GEC 000084

(a)    Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware with full corporate power to enter into this Agreement and perform its obligations hereunder and thereunder.

(b)    Each of the Corporations is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, with full corporate power to operate its business as currently conducted and is a corporation duly qualified and in good standing to do business in each jurisdiction in which the nature of its business makes such qualification necessary, other than in such jurisdictions where the failure so to qualify would not have a Material Adverse Effect.  The schedule to this Section sets forth (i) the jurisdiction of incorporation of each Corporation and (ii) the jurisdictions where each Corporation is authorized or otherwise qualified to do business as a foreign corporation.

6.02 Authorization.  Subject to the approval of the boards of directors as provided in Article 12, Seller has all requisite corporate power and authority to enter into this Agreement.  Upon such approval, the execution and delivery of this Agreement by Seller, and the performance by Seller of its obligations hereunder, will be duly and validly authorized by all necessary corporate action of Seller; and upon such approval, this Agreement will have been duly executed and validly delivered by Seller and be legally binding on Seller.

6.03 No Conflict.  The execution and delivery of this Agreement by Seller, and the performance by Seller of its obligations hereunder, do not (a) conflict with the certificate of incorporation or by-laws of Seller, or (b) result in any breach of any of the provisions of, constitute a default under, or give rise to a right of acceleration of any material obligation or to loss of a material benefit under, any judgment, order, decree, writ, permit, concession, franchise, license or agreement to which Seller is a party or by which Seller is bound, which breach or default

-18-

GEC 000085

would materially adversely affect the ability of Seller to execute, deliver or perform its obligations under this Agreement.

6.04    Capitalization.

(a)    The schedule to this Section sets forth the authorized, issued and outstanding capital stock of each of the Corporations.

(b)    Seller is the sole record and beneficial owner of the Shares, and GPC is the sole record and beneficial owner of all of the outstanding capital stock of the GPC Subsidiaries. The Shares and the outstanding capital stock of the GPC Subsidiaries are free and clear of all liens, security interests, pledges, options, encumbrances, charges, agreements, voting trusts and proxies.

(c)    The Shares and the outstanding shares of the capital stock of the GPC Subsidiaries have been duly and validly issued and are fully paid and nonassessable and were not issued in violation of any preemptive rights.

(d)    There are no rights, subscriptions, warrants, options, calls, commitments, conversion rights or agreements of any kind outstanding or in effect to purchase or otherwise acquire (i) the capital stock of any Corporation or (ii) any obligations of any kind convertible into or exchangeable for any shares of capital stock of any Corporation.

(e)    There are no bonds, debentures, notes or other indebtedness having the right to vote on any matters on which the shareholders of the Corporations may vote ("Voting Debt") issued or outstanding.

6.05    Litigation and Claims.    Except as set forth in the schedule to this Section, there are no actions, suits or proceedings (including any which have been of may be' asserted by any Governmental Authority), pending, or to the knowledge of Seller, which knowledge shall be either (i) the present personal knowledge of the Seller's vice president, F. L. Ryan, after consultation with the Corporations' officers or (ii) as reflected in the Corporations' files and records, threatened

-19-

against Seller or **any** Corporation or affecting Seller, **any** Corporation or their respective Leased Properties, Oil, **Gas and Mineral Leases, Properties,** Producing **Properties and Related Facilities which would reasonably be expected to (i) materially adversely affect the ability of Seller to execute, deliver or perform its obligations under this Agreement, or (ii) individually or in the aggregate have a Material Adverse Effect.**

6.06 Labor and Employment. **The schedule to this Section sets forth a list of (a) all collective bargaining or other agreements with labor unions to which any Corporation is a party, and (b) all written employment agreements, policies or procedures not cancellable within sixty (60) days to which any Corporation is a party which may remain in effect after the Closing. Seller has delivered to Purchaser true and complete copies of any such agreements and documents. Except as set forth in the schedule to this Section, none of the Corporations are parties to any oral or written agreement, plan or arrangement with any officer, director or employee of any of the Corporations (i) the benefits of which are contingent, or the terms of which are altered, upon the occurrence of a transaction involving any of the Corporations of the nature of any of the transactions contemplated by this Agreement, (ii) requiring severance benefits or other benefits after the termination of employment regardless of the reason for such termination of employment, (iii) under which any person may receive payments subject to the tax imposed by Section 4999 of the Internal Revenue Code of 1986, as amended (the "Code") or (iv) any of the benefits of which will be increased, or the vesting of benefits of which will be accelerated, by the occurrence of any of the transactions contemplated by this Agreement or the value of any of the benefits of which will be calculated on the basis of any of the transactions contemplated by this Agreement.**

GEC 000087

6.07 Insurance.

(a) The schedule to this Section describes the property, casualty and liability insurance coverage maintained by or on behalf of each Corporation.

(b) All insurance coverage for the Corporations under the Grace insurance programs shall terminate at 12:01 a.m. CST on the day following the day of the Closing (the "Cut-Off") with respect to events or occurrences following the Cut-Off.

Immediately upon execution of this Agreement, Seller shall provide to Purchaser all loss histories, revenue and well information, worker's compensation modifiers and other information required by Purchaser's insurance carriers.

(c) The Corporations shall be covered under the Grace insurance programs described in the Schedule to this Section, subject to the terms, conditions and limits of the applicable insurance policies, for events or occurrences preceding the Cut-Off only as specifically provided in this Agreement. No deductibles applicable to the insurance coverages described in the schedule to this Section shall be chargeable to the Corporations subsequent to the date hereof.

(d) Coverage for the Corporations under Grace's excess liability insurance, as described in the schedule to this Section and subject to the terms, conditions and limits of the applicable insurance policies, shall terminate on the expiration date of the current policy period with respect to events or occurrences preceding the Cut-Off.

(e) Blanket Crime and Fiduciary Liability insurance coverage for the Corporations shall terminate with respect to claims made after the Cut-Off.

(f) Neither Purchaser nor any Corporation shall be liable to any Grace Entity or any insurance carrier providing coverage under the Grace insurance programs for any charge or assessment for which such Corporation might otherwise be liable after the Cut-Off under the Grace insurance programs, nor

-21-

GEC 000088

GRACE ENERGY ∞
GRACE PETROLEUK   RPORATION
Summary of Insurance

*Sc Wc* dale  *¹⁄₀*  Sc c4i o  ˙ ᴸ·07(a)

| Line No. | (1) Insurer | (2) Policy Number | (3) Coverage | (4) Policy Period | (5) Limit of Liability | (6) Deductible |
|---|---|---|---|---|---|---|
| (1) | Industrial Risk Insurers and Various Domestic insurers | 31-3-54646 Various | Fire A Allied Perils (on Real and Personal Property) – Fire, lightning, extended coverage, vandalism, – Malicious mischief and sprinkler leakage – Allrisk, Including difference-in-conditions – Earthquake and Flood | 12/31/9 1-12/31/92 | Blanket $50,000,000 | $25,000 (a) |
| (2) | Industrial Risk Insurers | 31-3-48070 | Boiler A Machinery – Comprehensive – Mechanical and Electrical Equipment – Combined Physical Damage | 12/31/9 1-12/31/92 | 50,000,000 | 25,000 (a) |
| (3) | Transamerica Insurance Company | 2781621 | Automobile Liability Deductible 'Buy-Back' | 06/30/9 2-06/30/93 | 2,500,000 | 500,000 (b) |
| (4) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | Automobile Liability Liability (including non-owned vehicles) – Bodily Injury – Property Damage | 06/30/9 2-06/30/93 | 7,500,000 | 2,500,000 (b) |
| (5) | Lloyd's and various British insurers | 40-0402-82 40-0403-02 | General Liability Deductible 'Buy-Back' | 06/30/9 2-06/30/93 | 2,500,000 | –(c) |
| (6) | CNA | CCP001604364 (USA) CCP9001604408 (CAN) | General Liability Liability – Bodily Injury and Property Damage | 06/30/9 2-06/30/93 | 7,500,000 | 2,500,000 (b) |
| (V) | Transportation Insurance Company CNA National Fire Ins. Co. of Hartford Transportation Insurance Company | WC10-7417023 WCOO-7417024 WCI07418246 WC80-74 17025 | Workers' Compensation – Workers' Compensation – Employer's Liability | 06/30/9 2-06/30/93 | Statutory 1,000,000 / 2,000,000 | 1,000,000 1,000,000 |
| (W) | Various Scandinavian Insurers and Mutual Marine Office | Various | Energy & Marine Liability – Hull & Machinery – Operator's Extra Expense – Protection & Indemnity – Wharfinger's/Stevedore's/Charterer's Liability | 00/30/0 2-00/30/03 | Varies per Vessel Varies per Well 25,000,000 25,000,000 | 25,000 250,000 25,000 25,000 |
| (0) | United States Aircraft Insurance Group | 360AC-108281 | Aircraft – Hull and Liability (including non-owned aircraft) | 01/01/00-01/01/93 | 200,000,000 | – |
| (10) | National Union Fire Insurance Company X.L. Insurance Co., Ltd. A.C.E. Insurance Co., Ltd. | Various | Exxaaa Liability | 06/30/0 2-06/30/93 | 17,500,000 75,000,000 200,000,000 | – |
| (11) | CODA A.C.E. X.L. Gulf | Various | Director* and Officers Liability | 11/04/92-11/04/93 | 110,000,000 | 25,000,000 (d) |
| (12) | National Union Fir# Insurance Company American Home Assurance Company (Chubb) Federal Insurance Company (Chubb) | 4385430 6210721 (CAN) 81000004-A | Blanket Crime (all employees) – Fidelity – Money & Securities | 12/31/0¹ -12/31/92 | 25,000,000 | 500,000 (USA) (e) 25,000 (CAN) |
| (13) | National Union Fir# Insurance Company Federal Insurance Company (Chubb) | 4226405 81212642-A | Fiduciary Liability | 11/04/92-11/04/93 | 50,000,000 | 150,000 |

NOTE:
(a) Grace's Corporate property (fir# and allied lints) and boiler and machinery deductible* are $2,000,000.
(b) Limits of liability include deductibles and/or 'self-insured' retentions.
(c) Products and Completed Operation* claims are underwritten on 'claims-made' basis, subject to an automatic five-year discovery provision.
(d) Deductible indicated in Summary of Insurance reflect* the Corporate Reimbursement deductible only. The deductible it $5,000 per Director or Officer, subject to a $50,000 claim aggregate for non-indemnifiable acta.
(e) Deductibles indicated are Corporate deductibles only.

shall Purchaser or any Corporation be entitled to any credits or refunds which such Corporation might otherwise be entitled to receive from Grace or any such insurance carrier after the Cut-Off under the Grace insurance programs, except as otherwise provided in this Agreement.

(g)  Purchaser and the Corporations shall give prompt notice to Grace of all claims which are covered by Grace insurance programs and which shall continue to be maintained by Grace for the Corporations after the Cut-Off as described in this Agreement.  Upon notice of any claim, Grace shall notify the appropriate insurance carrier under the "Grace insurance program and, in conjunction with such insurance carrier, shall have the right to direct the investigation, negotiation and, if applicable, the defense of such claim and to settle or otherwise dispose of such claim without the consent or approval of Purchaser or any of the Corporations unless such settlement or disposition adversely affects the ongoing operations of the Corporations in which event settlement or disposition shall not occur without the consent or approval of Purchaser. The parties shall cooperate with each other relative to the exchange of records and other information necessary for the reporting, investigation and, if applicable, defense of such claim. Purchaser shall cause the Corporations to make their employees available as may be necessary in connection with the investigation or defense of any such claim.

Grace, Seller, and GPC acknowledge that Grace or Seller has obtained on behalf of the Corporations certain performance bonds, bid bonds and other surety instruments relating to the Oil, Gas and Mineral Leases, Leased Properties, Producing Properties, Properties and Related Facilities ("Bonds") to secure certain obligations of the Corporations and that Grace and Seller are obligated to indemnify the sureties. As promptly as practicable after the Closing, Grace or Seller as the case may be, shall cancel all Bonds which are cancellable.

-22-

As soon as practicable following the Closing, Purchaser shall obtain, or cause GPC to obtain, replacements for those Bonds which are not cancellable. Upon obtaining each such replacement Bond, Purchaser shall promptly notify Grace and will use reasonable efforts to arrange for Grace or Seller, as the case may be, to be released from the Bonds which have been replaced. During the period between the Closing and the date Purchaser or GPC obtains such replacement Bond and release, Purchaser shall pay Grace or Seller, as the case may be, all premiums and other fees charged by the surety to Grace or Seller with respect to the prior Bond for such period. Purchaser shall also indemnify Grace and Seller and save and hold each of them harmless from and against any and all liabilities, costs, losses or damages (including reasonable attorneys' fees) suffered by Grace or Seller as a result of any act or omission by any of the Corporations which require the surety under a Bond to perform according to its terms.

6.08 Employees; Benefit Plans. The Corporations have no Employee Benefit Plans.

6.09 Environmental Compliance. Except as set forth in the schedule to this Section, to the knowledge of Seller (which knowledge shall be either (i) the present personal knowledge of Seller's vice president, F. L. Ryan, after consultation with the Corporations' officers, or (ii) as reflected in the Corporations' files and records), the operations of the Corporations on the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities are in substantial compliance with all Environmental Laws, except where the failure so to comply would not reasonably be expected to have a Material Adverse Effect. Except as set forth in the schedule to this Section, to the knowledge of Seller (which knowledge shall be either (i) the present personal knowledge of Seller's vice president, F. L. Ryan, after consultation with the Corporations' officers, or (ii) as reflected in the Corporations' files and records), said operations of the

-23-

GEC 000091

Corporations on the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities are not subject to any existing, pending or threatened (i) action, suit or claim by a landowner or third party alleging damage to his property, underlying fresh water aquifers or mineral producing strata, or (ii) action, suit, investigation, inquiry or proceeding by or before any court or Governmental Authority under any Environmental Laws.

6.10 **Fees and Expenses.** All fees and expenses incurred by or on behalf of ███████████ or the Corporations in connection with this Agreement and the transactions contemplated hereby (other than any fees or expenses which are paid directly by Seller or which may be payable hereunder by the Purchaser to any of its counsel, investment bankers, lenders, other financing sources, or any of its other representatives, agents, associates or affiliates) will be considered a liability in the calculation of Net Realizable Assets.

6.11 **Completeness of Disclosure.** To the knowledge of Seller (which knowledge shall be either (i) the present personal knowledge of Seller's vice president, F. L. Ryan, after consultation with the Corporations' officers or (ii) as reflected in the Corporations' files and records' the evaluation material provided to Purchaser by the Seller in conjunction with Purchaser's acquisition of the Shares did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein not misleading.

6.12 **Drilling Commitments.** Except as disclosed on the schedule to this Section, as of the Closing Date there are no ongoing drilling commitments remaining unperformed by or on behalf of the Corporations.

6.13 **Defensible Title.** The Corporations own Defensible Title (as hereinafter defined) in and to the Oil, Gas and Mineral Leases, the Properties, the Producing Properties and the Related Facilities (hereinafter the "Interests"). For

-24-

purposes of this Agreement, the term "Defensible Title" means that, subject to and except for the Permitted Encumbrances (as hereinafter defined):

(a) the Corporations are (i) entitled to receive the "net revenue interests" set forth on the OGRE input tape provided to Purchaser by GPC containing reserve information for the Interests as of July 1, 1992 as modified by information set forth in the Schedule to this Section (the 'Tape") of all oil, gas and associated liquid and gaseous hydrocarbons produced, saved and marketed from the Interests, without increase, reduction, suspension or termination of such net revenue interest throughout the duration of the productive life of such Interests, except as shown on the Tape, and (ii) except as shown on the Tape, obligated to bear the percentage of the costs and expenses related to the maintenance, development and operation of the Interests in an amount equal to the "working interest" set forth on the Tape, without increase or decrease throughout the productive life of such Interests, except increases or decreases that also result in a proportionate increase or decrease in the Corporations' net revenue interest and increases that result from contribution requirements with respect to defaulting co-owners; and

(b) except for the Permitted Encumbrances, the title of the Corporations in each Interest is free and clear of all enforceable liens.

For the purposes of this Agreement, the term "Permitted Encumbrances" shall mean any of the following:

(i) Any liens for taxes and assessments not yet delinquent or, if delinquent, that are being contested in good faith in the ordinary course of business;

(ii) Any easements, rights-of-way, servitudes, permits, surface leases and other rights in respect of surface operations, pipelines, canals, ditches or the like, and easements for streets, alleys, highways, pipelines, power lines and

GEC 000093

other similar rights-of-way, on, over or in respect of property owned or leased by **any Corporation, or over** which any Corporation owns rights-of-way, easements, **permits or licenses, that do not unreasonably or materially interfere with the operation of any Interests for exploration and production of oil, gas and other minerals;**

(iii)    All lessors' royalties, overriding royalties, net profits **interests, production payments, carried interests, reversionary interests and** other burdens on or deductions from the proceedsÿof production that do not operate **to (A) reduce the net revenue interest of the Corporations below that set forth on the Tape, (B) increase the proportionate share of costs and expenses of leasehold operations attributable to or to be borne by the working interest of the Corporations above that set forth on the Tape without a proportionate increase in the net revenue interest of the Corporations or (C) increase the working interest of the Corporations above that set forth on the Tape without a proportionate increase in the net revenue interest of the Corporations;**

(iv)    All rights to consent by, required notices to, and filings with **or other actions by governmental or tribal entities, if any, in connection with the change of ownership or control of an interest in federal, state, tribal or other domestic governmental oil and gas leases, if the same are customarily obtained subsequent to such change of ownership or control, but only insofar as such consents, notices, filings and other actions related to the transactions contemplated by this Agreement;**

(v)    Conventional rights of reassignment prior to abandonment;

(vi)    The terms and provisions of the leases, unit agreements, **pooling agreements, communitization agreements and other documents creating interests comprising the Interests, insofar and only insofar as such terms and provisions do not operate to (A) reduce the net revenue interest of the**

-26-

GEC 000094

Corporations below that set forth on the Tape, (B) increase the proportionate share of costs and expenses of leasehold operations attributable to or to be borne by the working interest of the Corporations above that set forth on the Tape without a proportionate increase in the net revenue interest of the Corporations, or (C) increase the working interest of the Corporations above that set forth on the Tape without a proportionate increase in the net revenue of Interests;

(vii)    Materialmen's, mechanics', repairmen's, employees', contractors', operators', tax and other similar liens or charges arising in the ordinary course of business incidentar to construction, maintenance or operation of any of the Interests (A) if they have not been filed pursuant to law, (B) if filed, they have not yet become due and payable or payment is being withheld as provided by law or (C) if their validity is being contested in good faith in the ordinary course of business by appropriate action;

(viii)  Liens arising under operating agreements, unitization and pooling agreements and production sales contracts securing amounts not yet delinquent or, if delinquent, being contested in good faith in the ordinary course of business by appropriate action;

(ix)    Liens against the surface or mineral estates of the leases comprising the Interests that have been expressly subordinated to the Interests or that are subordinate to the Interests as a matter of law; provided, however, that liens against any fee simple, surface or mineral estates owned by any Corporation shall not be Permitted Encumbrances for purposes of this subsection (ix);

(x)    Covenants, conditions and other terms subject to which the Interests were acquired by the Corporations;

(xi)    Such title defects as Purchaser has expressly waived in writing;

-27-

GEC 000095

(xii) Rights reserved to or vested in any municipality or governmental, tribal, statutory or public authority to control or regulate any of the Interests in any manner, and all applicable laws, rules and orders of any municipality or governmental or tribal authority; and

(xiii)    any other encumbrance affecting any portion of the Interests that individually does not materially adversely affect the operation, value or use of any such Interests.

6.14 Reserves Disclaimer. Nothing contained herein shall in any manner imply that either Seller or Grace is warranting the quantum of reserves, which warranty is hereby expressly negated.


## ARTICLE 7.

### Representations and Warranties by Purchaser

Purchaser hereby represents and warrants to Seller as follows:

7.01 Incorporation. Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada, with full corporate power to enter into this Agreement and to perform its obligations hereunder.

7.02 Authorization. Purchaser has all requisite authority to enter into this Agreement. The execution and delivery of this Agreement by Purchaser, and the performance by Purchaser of its obligations hereunder, have been duly and validly authorized by all necessary corporate action of Purchaser. This Agreement has been duly executed and validly delivered by Purchaser and is legally binding on Purchaser.

7.03 No Conflict. The execution and delivery of this Agreement by Purchaser, and the performance by Purchaser of its obligations hereunder, does not (a) conflict with the charter documents or by-laws of Purchaser or (b) result in

-28-

GEC 000096

the breach of any of the provisions of, constitute a default under, or give rise to a right of acceleration of any material obligation or to loss of a material benefit under any judgment, writ, permit, concession, franchise, license, order, decree or agreement to which Purchaser is a party or by which Purchaser is bound, which breach or default would materially adversely affect the ability of Purchaser to execute, deliver or perform its obligations under this Agreement.

7.04 Sufficient Funds. Purchaser has, and on the Scheduled Closing Date will have, sufficient funds to consummate the transactions contemplated hereby.

## ARTICLE 8.

### Disclaimer of Additional and Implied Warranties

8.01 Investigation and Evaluation. Purchaser acknowledges that (a) Purchaser is experienced in the operation of the type of business conducted by the Corporations, (b) Purchaser and its directors, officers, attorneys, accountants and advisors have been given the opportunity to examine to the full extent deemed necessary and desirable by Purchaser all books, records and other information with respect to the Corporations and their assets, (c) Purchaser has taken full responsibility for determining the scope of its investigations of the Corporations and their assets, and for the manner in which such investigations have been conducted, and has examined the Corporations and their assets to Purchaser's full satisfaction, (d) Purchaser is fully capable of evaluating the adequacy and accuracy of the information and material obtained by Purchaser in the course of such investigations, and (e) Seller is making no representations or warranties, express or implied, of any nature whatever with respect to the Corporations and their assets, other than the representations and warranties of Seller specifically set forth in Article 6.

-29-

8-02  Forecasts. Projections, etc. Purchaser acknowledges that (a) Purchaser has taken full responsibility for evaluating the adequacy, completeness and accuracy of various forecasts, projections, opinions and similar material heretofore furnished by Seller, the Corporations or their representatives to Purchaser in connection with Purchaser's investigations of the Corporations and their assets, and (b) there are uncertainties inherent in attempting to make projections and forecasts and render opinions, that Purchaser is familiar with such uncertainties, and that Purchaser is not relying on any projections, forecasts or opinions furnished to it by Seller, the Corporations or-any affiliates thereof or any of their representatives.

8.03  Effect of Transfer of Shares.  Purchaser acknowledges that it has taken full responsibility for evaluating the effects on the assets, properties and rights of each of the Corporations of the transfer of the Shares from Seller to Purchaser, and Seller shall have no liability on account of any legal questions concerning the effects of such transfer on such assets, properties and rights; provided, however, that nothing in this Section shall diminish Seller's obligations under Section 4.04.

ARTICLE 9.

Covenants of Seller and Purchaser

9.01 Access and Inquiry.  Between the date of this Agreement and the Closing Date, Purchaser shall have access to the Corporations' properties and assets and will, upon request, be permitted to contact and make reasonable inquiry of Seller's and the Corporations' personnel, accountants, counsel, bankers and other representatives regarding the business of the Corporations, specifically including, but not limited to, environmental audits and assessments of all Producing Properties and Related Facilities.  Seller shall make available to Purchaser, for examination at GPC's offices in Oklahoma City or elsewhere as

-30-

GEC 000098

appropriately available, title and other information, including but not limited to the following, insofar as the same are in Seller's or the Corporations' possession, and will cooperate with Purchaser in Purchaser's efforts to obtain, at Purchaser's expense, such additional information relating thereto as Purchaser may reasonably desire, including all information which is in the possession of third parties:

(a)    Title opinions and title status reports;

(b)    Copies of leases, prior conveyances of interests created thereby, unitization, pooling and operating agreements, division and transfer orders, mortgages, deeds of trusts, security agreements, chattel mortgages, financing statements, and other encumbrances not discharged and affecting the title to or the value of the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities;

(c)    Records relating to the payment of rentals, royalties, joint interest billings and other payments due under any Oil, Gas and Mineral Lease;

(d)    Records relating to filing of returns for or the payment of ad valorem, property, production, severance, excise, and similar taxes and assessments based on or measured by the ownership of property or the production of hydrocarbons or the receipt of proceeds therefrom on the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities;

(e)    Ownership maps and surveys relating to the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities;

(f)    Copies of all purchase, sale, processing, and transportation agreements relating to the production from the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities;

-31-

GEC 000099

(g)    Copies of all agreements, **leases,** permits, easements, licenses, **and orders relating to the Leased** Properties, **Oil,** Gas and Mineral Leases, **Producing Properties, Properties and Related Facilities;**

(h)    Production records relating to the Producing Properties;

(i)    Inventories of personal property and fixtures included in the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities;

(j)    Copies of all personnel and employee benefit records related to the Corporations' employees, to the extent access to such records is not a violation of law or the subject of an objection by the employee;

(k)    Records related to the Corporations' bank and security accounts;

(l)    Accounting records and records concerning (i) taxes, (ii) engineering and technical data and (iii) geological and geophysical data, relating to the Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties and Related Facilities.

Seller shall cause the Corporations to permit Purchaser, at Purchaser's expense, to inspect all of the Corporations' operated Producing Properties (and Seller shall use its best efforts to cause third party operators of such Producing Properties to permit such inspections of non-operated Producing Properties), and to inspect and photocopy the information and records identified in this Section 9.01 at any reasonable time. Seller shall not be obligated to furnish any updated abstracts, title opinions, or additional title information, but shall cooperate with Purchaser in Purchaser's efforts to obtain, at Purchaser's expense, such additional title information as Purchaser may reasonably deem prudent.

Purchaser agrees that the terms of the Confidentiality Agreement shall apply to information gained by Purchaser pursuant to the foregoing and/or

GEC 000100

.previously made available to Purchaser to the same extent as if Purchaser were a party thereto and bound by the confidentiality provisions thereof.

**9.02 Hart-Scott-Rodino Act.** As promptly as practicable following the date of this Agreement, Seller and Purchaser shall file appropriate Notification and Report Forms under the HSR Act with respect to this Agreement and the transactions contemplated hereby. Seller and Purchaser shall cooperate to coordinate such filings, and to make reasonable efforts to respond to any governmental request or inquiry with respect thereto: but neither Seller, Purchaser nor any of their respective affiliates shall be required to make any payment (other than for reasonable legal fees) that it is not presently contractually required to make, divest any assets (including but not limited to assets of any of the Corporations), make any change in the conduct of its business or that of any Corporation, accept any limitation on the future conduct of its business or that of any Corporation, enter into any other agreement or arrangement with any person that it is not presently contractually required to enter into, accept any significant modification in any existing agreement or arrangement, or agree to any of the foregoing. Seller and Purchaser shall request early termination of the waiting period under the HSR Act upon the filing of the Notification and Report Form.

**9.03 Permits and Licenses.** As soon as practicable after the date hereof, Purchaser shall prepare and file with the appropriate permitting and licensing authorities applications for the issuance to Purchaser of all federal, state and local permits and licenses, if any, required for the Corporations to continue their businesses under ownership of Purchaser, and Purchaser will use all reasonable efforts to secure such licenses and permits. Seller shall assist Purchaser in preparation of such applications.

GEC 000101

9-04  Notices to Third Parties.  Seller and Purchaser shall cooperate to make all other filings and to give notice to all third parties that may reasonably be required to consummate the transactions contemplated by this Agreement.

9.05  Dividend of Certain Assets.  Seller shall cause the Corporations to dividend or otherwise divest to a Grace Entity or other third party, prior to Closing, all of the Corporations' interests (real property, personal property, mixed property, or otherwise, and including, but not limited to, any royalties and overriding royalties in properties in which GPC owns a working interest, and the capital stock of Sourgasco ID in the Thomasville Field and the East Texas Region as more fully defined in the Grace Petroleum Corporation Confidential Brochure prepared by Merrill Lynch, but excluding any royalty or overriding royalty interests in properties in which GPC does not own a working interest within said East Texas Region.

9.06  Post-Closing Covenants (Employees).

(a)    Transition Employees.  Prior to Closing, Seller will cause all employees of the Corporations  to be transferred to a Grace Entity, and shall provide the services of such employees to Purchaser at Closing ("Transition Employees").  At Closing, or as soon thereafter as practicable, but not later than May 31, 1993, Purchaser shall evaluate each of the Transition Employees and  either offer regular employment to each such employee or employees or release each such employee or employees from the status as Transition Employees.  Should Purchaser or the Corporations (i) offer continued employment to one or more of the Transition Employees under terms consistent with Seller's severance policy, and (ii) any such employee accepts Purchaser's offer, Seller shall have no obligation relating to severance payments or any termination payments (e.g., accrued vacation, etc.) due such employee, unless such employee is thereafter terminated by either the Corporations or Purchaser on a date which is the earlier of  six

-34-

GEC 000102

months following the date of hire by Purchaser of such employee ("Date of Hire") or September **30, 1993,** in which event Seller shall retain responsibility for **any** such severance or termination payments.

Should Purchaser elect to relocate any such employee, Seller shall reimburse Purchaser for the lesser of (i) one-half of the actual relocation costs ("Relocation Costs") attributable to each such employee or (ii) $10,000 per employee. Such Relocation Costs shall be determined in accordance with Purchaser's relocation policies, provided, however, that such costs shall not include payments related to any decrease in the value of such relocated, employee's residence nor a requirement to purchase such employee's residence. In the event Seller subsequently is required, pursuant to this Agreement, to pay severance or termination payments to any relocated employee, Purchaser shall return to Seller the amount of any Relocation Costs previously paid by Seller to such relocated employee.

Should Purchaser or the Corporations not offer employment to one or more of the Transition Employees, Seller shall retain all liabilities relating to such employees, including, but not limited to, such severance, and termination payments, COBRA claims and ERISA claims which may arise pursuant to the Employee Benefit Plans. Seller shall bill Purchaser monthly for all of its actual employment-related costs, incurred on or after January 1, 1993, attributable to such Transition Employees, including, but not limited to, salaries, payroll taxes, travel and other expenses, and all expenses related to the Transition Employees participation in the Employee Benefit Plans, including, but not limited to, all medical claims for services rendered and supplies furnished on and after January 1, 1993, and Grace Entities' contribution to the 401(k) Plan falling due after January 1, 1993, (all such costs being calculated in accordance with Seller's practices and rates existing as of the date hereof). Purchaser shall pay Seller for

-35-

GEC 000103

such costs within thirty days of receiving such bill. Prior to May 31, 1993, Purchaser shall have (i) hired any Transition Employees it desires and (ii) notified Seller that it no longer has a need for any or all other Transition Employees. The period of time between the Closing and May 31, 1993 shall hereafter be referred to as the "Interim Period". During the Interim Period, Purchaser shall have sole and complete control of such Transition Employees, including, but not limited to, assignment of job duties, supervision of work and termination of the assignment of such Transition Employees to Purchaser.

(b)    Employee Benefits.    Upon hiring by Purchaser, the Transition Employees shall (i) cease to participate in or be covered by the Employee Benefit Plans and policies and (ii) become entitled to participate in the employee benefit plans and policies maintained by Purchaser for their other similarly situated employees in accordance with the terms and provisions of such plans and policies; provided, however, that (A) coverage under Purchaser's group medical, dental and short-term disability plans shall waive any waiting period requirements and preexisting condition restrictions to the extent necessary to provided immediate coverage as of such employees' Date of Hire and shall credit employees for the year during which the Closing Date occurs with any deductibles already incurred during such year under the Purchaser's group medical and dental plans, (B) coverage under Purchaser's group long-term disability plan shall waive any waiting period requirements and preexisting condition restrictions to the extent necessary to provide **immediate** coverage as of the Date of Hire but only (1) with respect to employees covered under the Corporations' group long-term disability plan immediately prior to the Date of Hire and (2) to the extent coverage was provided for such condition under the Corporations' group long-term disability plan immediately prior to the Date of Hire, (C) Purchaser's vacation policy, short-term disability plan and education assistance program shall credit each employee

-36-

with prior service based upon his or her most recent period of continuous service with the Corporations as of the Date of Hire and Purchaser's Thrift and Retirement Plan shall credit the employees with service for eligibility and vesting purposes for the period prior to the Date of Hire with the service credited to the employees for such purposes as of the Date of Hire under the Corporations' 401(k) Plan and Trust.

(c) Indemnification during Interim Period. The Transition Employees will continue to be the employees of a Grace Entity during the Interim Period. Purchaser shall indemnify and hold the Grace Entities harmless from and against any and all claims, demands, damage, liability, loss, cost, or deficiency of every kind and character arising in favor of any person (including, but not limited, to reasonable attorney's fees and other costs and expenses incident to proceedings or investigations or the defense of any claim) ("Damages" for purposes of this paragraph only) caused directly or indirectly by acts or omissions (including, but not limited to, negligence in whole or in part, and criminal acts) of Transition Employees during the Interim Period; and for injury or death to any Transition Employee occurring during the Interim Period. Purchaser also agrees to hold the Grace Entities harmless and indemnify them from all Damages related to claims of employment discrimination made by such Transition Employees during the Interim Period as a result of Purchaser's decision not to hire Transition Employees.

(d) Employee Services Agreement. Seller and Purchaser, at the Closing, shall execute an employee services agreement that provides for the provision of services of Transition Employees to the Corporations or Purchaser after the Closing Date.

(e) Excluded Properties - Employee and Record Access: Purchaser shall cause the Corporations to allow the Seller and the buyer of the Corporations

-37-

GEC 000105

former East Texas and Thomasville properties ('"Excluded Properties") reasonable access to facilities, records and the Transition Employees in order to facilitate the prompt completion of the contractual obligation concerning the Excluded Properties which Seller may have with third parties, and/or Seller's completion of its administration of any Excluded Properties transferred to a Grace Entity and to turn over all applicable records concerning the Excluded Properties to Seller and/or purchaser.  Seller and Purchaser shall, from time to time, designate a reasonable number of the Transition Employees to assist in such activities and Purchaser or the Corporations shall not be billed for said designated employees.

9.07  Post Closing Covenants (Title).

(a)    Title Variances.   Any lien, charge, obligation, encumbrance, defect, irregularity of title, incorrect calculation of, or differences in the dollar amounts remaining to be recouped until payout of back-in or other similar reversionary interests not reflected in the Tape, unobtained or refused consent to assign, call on production or any other circumstance or condition that alone or in the aggregate with other defects would cause the title of the Corporations in any Interests described in the Tape to be less or greater than Defensible Title shall be a title variance ('Title Variance").

(b)    Notice of Title Variances. From time to time during the period from the date of execution of this Agreement to June 1, 1993 (the 'Title Examination Period"), Purchaser shall have the right (but not the obligation) to notify Seller of any Title Variance of which Purchaser becomes aware which decreases the net revenues attributable to the interest affected; and Purchaser shall have the obligation to notify Seller of any Title Variance of which Purchaser becomes aware which increases the net revenue attributable to the interest affected. Purchaser shall in such notice provide a reasonably detailed description of such Title Variance. Failure of Purchaser to notify Seller of a Title Variance of

-38-

GEC 000106

which Purchaser has notice prior to June **1, 1993,** which Title Variance decreases the net revenue interest attributable to the affected interest, shall constitute a waiver thereof by Purchaser. With respect to each notice of a Title Variance given during such period, which decreases the affected net revenue, Seller may, but shall have no obligation to, attempt to cure such Title Variance prior to July 1, 1»93.

(c)    Remedies for Title Variances.    In the event that any Title Variance which decreases a net revenue interest is not cured or waived on or before July 1, 1993, Purchaser may, at its sole discretion, waive such Title Variance, or Seller shall, at its sole discretion, either (i) include as either an asset or liability, as appropriate, in the calculation of Net Realizable Assets an amount equal to the proportionate difference in net revenue interest, multiplied by the net cash flow from such Interest as set forth in the Tape discounted to present value by a factor of 10% per annum, and further multiplied times 90% (ninety percent), or (ii) elect to indemnify Purchaser for such Title Variance which decreases the affected net revenue interest pursuant to Section 13.03. Such indemnification, if a Title Variance is finally adjudicated, shall be limited to the result of the formula set forth in Section 9.07(c)(i), plus Litigation Expenses. In the event that Purchaser elects the remedy set forth in Section 9.07(c)(i), no Title Variance having an individual value equal to or less than $25,000 shall be submitted by Purchaser or considered in the calculation of Net Realizable Assets. Additionally, no Title Variances (after netting increases against decreases) having an individual value in excess of $25,000 will be considered in the calculation of Net Realizable Assets until such time that the aggregate of such individual Title Variances having a value in excess of $25,000, (after netting increases against decreases) exceeds $250,000, at which time all such individual Title Variances (after netting increases against decreases), shall be submitted to

GEC 000107

Seller and considered either an asset or a liability as appropriate in the calculation of Net Realizable Assets.

## ARTICLE 10.

### Covenants Relating to Conduct of Business Prior to the Closing

Except as otherwise consented to in writing by Purchaser, from the date of this Agreement until the Closing:

10.01    Operation in Ordinary Course.    Seller shall cause the Corporations to carry on their respective businesses in the usual, regular and ordinary course in substantially the same manner as heretofore conducted and, to the extent consistent with such businesses, use reasonable efforts to (a) preserve intact their present business organizations, (b) keep available the services of their present officers and employees, and (c) preserve their relationships with customers, suppliers and others having business dealings with them toward the end of preserving their goodwill and ongoing businesses . Specifically, Seller shall cause the Corporations (a) not to abandon any material part of the Producing Properties (except the abandonment of Oil, Gas and Mineral Leases upon the expiration of their respective terms or upon cessation of production in paying quantities or to the extent such abandonment occurs as a result of Purchaser's direction to the Corporations), or (b) not to commence any material operations on any single lease or unit which is a part of the Producing Properties, anticipated to cost the owner of such asset in excess of $25,000 except for emergency operations, operations required under contractual obligations in effect on the date hereof, operations to avoid any penalty provision of any applicable agreement or order, and except to the extent such operations are approved by Purchaser .

10.02    Material Agreements.    Seller shall not permit any of the Corporations to enter into any agreement with either third parties or the Grace

GEC 000108

Entities, except in the ordinary course of business, which ordinary course of business shall be deemed to include execution of or cancellation of contracts for the sale of gas only to the extent the term of such contracts does not extend for a period in excess of thirty (30) days.

10.03    Dividends.  Except as set forth in Section 9.05, Seller shall not permit the declaration or payment of any dividend in respect of, or the repurchase or redemption of any of, the capital stock or assets of GPC or the Corporations; provided, however, that the foregoing shall not be construed to prevent the ██████████████████████████eller's cash management program.

10.04    Issuance of Securities.  Except as set forth in the schedule to this Section, Seller shall not permit any of the Corporations to issue, deliver or sell, or authorize or propose the issuance, or delivery or sale of, any shares of its capital stock of any class, any Voting Debt or any securities convertible into, or any rights, warrants or options to acquire, any such shares, Voting Debt or convertible securities.

10.05    Governing Documents.  Seller shall not permit any of the Corporations to amend or propose to amend its Certificate of Incorporation or By-laws.

10.06    No Acquisitions.  Seller shall not permit any of the Corporations to acquire, or agree to acquire, by merging or consolidating with, or by purchasing a substantial portion of the assets of, or by any other manner, any business, oil and gas properties or any corporation, partnership, association or other business organization or division thereof.

10.07    No Dispositions.  Seller shall not permit any of the Corporations to sell, lease or otherwise dispose of, or agree to sell, lease or otherwise dispose of, any of its assets, other than oil and gas production.

GEC 000109

10-08     Indebtedness.  Seller shall not permit any of the Corporations to incur any indebtedness for borrowed money or guarantee any such indebtedness or issue or sell any debt securities of the Corporations or guarantee any debt securities of others.

10.09     Employee Benefit Plans. Etc.  Seller shall not permit any of the Corporations to adopt  any collective bargaining agreement or Employee Benefit Plan.

██████████ ██ ██████████Seller shall not, after the date hereof, permit any of the Corporations to grant to any employee any increase in compensation, including, but not limited to, salary, bonuses, insurance benefits, company cars, club memberships, expense and travel allowances, etc., or in severance or termination pay, or enter into any employment agreement with any employee, or hire or, except in the ordinary course of business, terminate any employee or independent contractor of the Corporations.

10.11     Capital Expenditures; Purchase Orders.  Except for emergency actions taken at the field level, Seller shall not permit any of the Corporations to (i) make any capital expenditures or any commitments therefor in excess of $25,000 or (ii) enter into any purchase order in excess of $25,000.

10.12     Employee Notice.  Upon execution of this Agreement by Seller, Purchaser, as agent for GPC, shall distribute to the Corporations' employees (i) any notices, as prepared by Purchaser, which Purchaser believes are required by the Worker Adjustment and Retraining Notification Act ("WARN') and (ii) any employment material related to Purchaser.  Purchaser shall indemnify Seller and each Grace Entity and hold each of them harmless from and against any Damages caused by or arising out of any claims under the WARN that is the result of decisions made or actions taken by the Purchaser, or Seller at the direction of

GEC 000110

Purchaser. For the purposes of this Section 10.12 only, Damages shall mean only those liabilities arising from the legal deficiency of such WARN notices.

10.13    Other Actions. Seller shall not permit any of the Corporations to take any action that would or might result in any of the representations and warranties of the Seller set forth in this Agreement becoming untrue.

10.14    Advice of Changes. Seller shall promptly advise Purchaser orally and in writing of any change or event having, or which, insofar as can reasonably be foreseen, would have, a Material Adverse Effect.

■■■■■■■■    Settlement. Release and Waiver of Claims. Except as set forth on the Schedule to this Section, and except as set forth in Section 13.06(a), Seller shall not permit any of the Corporations to enter into any arrangement to settle or release any claim for damages or cause of action that the Corporations may have against any third party.

## ARTICLE 11.

### Conditions Precedent to the Obligations of Purchaser

All obligations of Purchaser under this Agreement are subject, at Purchaser's option, to the fulfillment prior to or at the Closing, of each of the following conditions:

11.01    Accuracy of Representations and Warranties. Each and every representation and warranty of Seller under this Agreement shall be true and accurate in all material respects as of the date when made and as of the Closing, except for changes in the ordinary course of business between the date of this Agreement and the Closing, none of which alone or in the aggregate has a Material Adverse Effect.

11.02    Performance of Covenants and Agreements. Seller shall have fully performed in all material respects at or prior to the Closing all of the

-43-

GEC 000111

covenants and agreements required to be performed by Seller at or prior to the Closing in accordance with this Agreement.

11-03    **Release of Liens.**  Except for the Permitted Encumbrances, on or before the Closing Date, Seller shall have caused the recordation in the appropriate governmental offices of releases of any and all liens, mortgages, deeds of trust, security interests or similar instruments which encumber either the Shares or the Corporations' Leased Properties, Oil, Gas and Mineral Leases, ██████oducing Properties, Properties or Related Facilities.

11.04    **Inspection of Properties.**  Purchaser shall have completed and delivered to Seller an environmental inspection (the "Inspection Report") of the Producing Properties and Related Facilities on or before the 15th day following the date of this Agreement.  Such Inspection Report shall set forth the results of Purchaser's inspection of the Producing Properties and Related Facilities and shall include Purchaser's estimate of the costs necessary to remedy, in the sole determination of Purchaser made in good faith after consultation with appropriate experts, any violations or potential violations of Environmental Laws or any potential or actual Third Party Claims (as defined in Section 13.01) (the "Remediation Costs").  Said Remediation Costs shall include, but shall not be limited to, investigation and assessment costs, remedial and clean-up costs, damages to third parties, fines and attorneys fees and expenses.  Subject to the limitations set forth below, the Purchase Price shall be adjusted downward in an amount equal to said Remediation Costs, provided, however, that in the event Seller disputes the amount of such Remediation Costs, Purchaser and Seller shall , on or before the Closing, negotiate a mutually acceptable adjustment to the Purchase Price and in such event the Purchaser shall accept and assume any continuing liability related thereto, or in lieu of such adjustment to the Purchase Price, Seller and Grace at their sole discretion, shall either (i) indemnify and hold

-44-

GEC 000112

harmless Purchaser and the Corporations for such continuing liability; or (ii) cause the Corporations to assign, prior to Closing, the affected Producing Property or Related Facilities, to Seller or Seller's designee, in which event the Purchase Price shall be reduced by an amount equal to the product of the amount of net cash set forth in the Tape discounted to present value by a factor of 10% per annum, multiplied times 90 percent. Purchaser shall assume and hereby agrees to indemnify and hold Seller and Grace harmless for all liabilities for violations or potential violations of Environmental Laws or any potential Third Party Claims with respect to the Producing Properties which were not identified on the Inspection Report as being in violation or potential violation of Environmental Laws or the subject of potential Third Party Claims.

In the event that the Purchase Price is to be adjusted downward as set forth above, no Remediation Costs applicable to a single Producing Property or Related Facility and totaling less than $25,000 shall be included in such adjustment to the Purchase Price. Additionally, no Remediation Cost applicable to a single Producing Property or Related Facility and totaling $25,000 or more shall be included in such adjustment to the Purchase Price until such time that the aggregate of such individual Remediation Costs in excess of $25,000 exceeds $250,000, at which time all Remediation Costs relating to a single Producing Property or Related Facility and totaling $25,000 or more shall be included in the downward adjustment to the Purchase Price.

11.05    Hart-Scott-Rodino Act. All waiting periods under the HSR Act applicable to the transactions contemplated by this Agreement shall have expired, by passage of time or by valid early termination by the FTC or the DOJ; no representative of either the FTC or the DOJ shall be taking the position that any of such waiting periods has not commenced to run or has not expired for any reason; and no representative of either the FTC or the DOJ shall have requested a

-45-

GEC 000113

delay of the Closing for a period which has not expired, which request has not been withdrawn.

11.06    Permits. Consents, etc.  There shall be no material permit, consent, approval or authorization of, or declaration to or filing with, any Governmental Authority required in connection with the transactions contemplated by this Agreement which has not been accomplished or obtained and which may not be accomplished or obtained after the Closing.

11.07 ▮▮▮▮▮▮▮▮▮ion, suit, proceeding, investigation, inquiry or request for information by any third person (including but not limited to any Governmental Authority) shall have been instituted or threatened against Seller or Purchaser or any of their respective affiliates that questions or reasonably may be expected to lead to subsequent questioning of, the validity or legality of this Agreement, or the transactions contemplated hereby which, if successful, would materially adversely affect the right of Purchaser to consummate the transactions contemplated by this Agreement or to continue the businesses of the Corporations substantially as currently conducted.

11.08    Certificate of Seller.  Seller shall have delivered to Purchaser a certificate of Seller signed by the President or any Vice President of Seller certifying that (i) each and every representation and warranty of Seller under this Agreement was true and accurate in all material respects as of the date when made and is true and accurate in all material respects as of the Closing, except for changes in the ordinary course of business between the date of this Agreement and the Closing, none of which alone or in the aggregate has a Material Adverse Effect; and (ii) Seller has fully performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by Seller at or prior to the Closing in accordance with this Agreement.

GEC 000114

11-09        Opinion of Seller's Counsel.    Seller shall have delivered to Purchaser an opinion of its General Counsel, dated the Closing Date, in the form of Exhibit **D**.

**11-10        Tax Credits.  Seller shall have afforded Purchaser access to all personnel, records, documentation and calculations necessary to permit Purchaser to verify and complete all required calculations, documentations and filings to preserve for the Corporations all Section 29 tax credits applicable to tight sands, coal seam and Devonian shale production.** ███████ **Purchaser determine in good faith as a result of such verification that certain such expected tax credits are unavailable due to regulatory deficiencies or failure to drill, the Purchase Price shall be adjusted as follows:**

(a)    **In the event such verification reveals that the Corporations failed to spud prior to December 31, 1992 any coal seam or tight sands, Section 29 non-Devonian Shale wells identified in Exhibit C (the 'Tight Sands Wells"), the value of future tax credits applicable to such wells shall be included as a liability in the calculation of Net Realizable Assets.  Such Tight Sands Wells tax credits will be valued as follows:**

(i)    **the estimated MCF production as shown on the Tape of each Tight Sands Well that is not spudded by December 31, 1992 shall be multiplied by $.52 and**

(ii)    **such product shall be discounted to present value at the rate of 10% per annum.**

(b)    **As of the date of this Agreement, the Corporations plan to have previously completed or to have spudded, prior to December 31, 1992, a total of 95 Devonian Shale wells located in the Antrium Field, Michigan (the "Devonian Shale Wells").  If the total number of Devonian Shale wells is different than 95, the following shall occur:**

-47-

GEC 000115

(i)    In the event the Corporations fail to spud one or more of such Devonian Shale Wells prior to December 31, 1992, the value of future tax credits applicable to and/or gas production attributable to such Devonian Shale Wells shall be included as a liability in the calculation of Net Realizable Assets.  Such Devonian Shale Wells tax credits and/or gas production will be valued as follows:

(a)  the Net Realizable Assets shall be reduced by $60,000 for each Devonian Shale Well that is not spudded on or before December 31, 1992

(b)    the Net Realizable Assets shall be reduced by an additional $125,000 for each Devonian Shale Well that is not spudded by March 1, 1993.

(ii)   In the event the Corporations spud more than 95 Devonian Shale Wells prior to December 31, 1992, the value of future tax credits applicable to and/or gas production attributable to such additional Devonian Shale Wells shall be included as an asset in the calculation of Net Realizable Assets.  Such additional Devonian Shale Wells' tax credits and/or gas production will be valued as follows:

(a)  the Net Realizable Assets shall be increased by $60,000 for each Devonian Shale Well in excess of the planned 95 Devonian Shale Wells that is spudded on or before December 31, 1992 and

(b)    the Net Realizable Assets shall be increased by an additional $125,000 for each Devonian Shale Well in excess of the planned 95 Devonian Shale Wells that is spudded by March 1, 1993.

11.11    Board Approval.  W. R. Grace & Co.'s, Grace's, Seller's and Purchaser's boards of directors shall have approved the transactions contemplated hereby.

ARTICLE 12.

-48-

GEC 000116

## Conditions Precedent to the Obligations of Seller

All obligations of Seller under this Agreement are subject, at Seller's option, to the fulfillment prior to or at the Closing, of each of the following conditions:

12.01     Accuracy of Representations and Warranties.  Each and every representation and warranty of Purchaser under this Agreement shall be true and accurate in all material respects as of the date when made and as of the Closing.

12.02     Performance of Covenants and Agreements.  Purchaser shall have fully performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by Purchaser at or prior to the Closing in accordance with this Agreement.

12.03     Hart-Scott-Rodino Act.  All waiting periods under the HSR Act applicable to the transactions contemplated by this Agreement shall have expired, by passage of time or by valid early termination by the FTC or the DOJ; no representative of either the FTC or the DOJ shall be taking the position that any of such waiting periods has not commenced to run or has not expired for any reason; and no representative of either the FTC or the DOJ shall have requested a delay of the Closing for a period which has not expired, which request has not been withdrawn.

12.04     Permits, Consents, etc.  There shall be no material permit, consent, approval or authorization of, or declaration to or filing with, any Governmental Authority required in connection with the transactions contemplated by this Agreement which has not been accomplished or obtained and which may not be accomplished or obtained after the Closing.

12.05     Litigation.  No action, suit, proceeding, investigation, inquiry or request for information by any third person (including but not limited to any Governmental Authority) shall have been instituted or threatened against Seller or Purchaser or any of their respective affiliates that questions, or reasonably

-49-

GEC 000117

could be expected to lead to subsequent questioning of, the validity or legality of this Agreement, or the transactions contemplated hereby which, if successful, would affect the right of Seller to consummate the transactions contemplated hereby or might involve possible material liability on the part of the Seller or any of its subsidiaries or affiliates.

12.06    Certificate of Purchaser. Purchaser shall have delivered to Seller a certificate of Purchaser signed by the President or any Vice President of Purchaser certifying that: (i) each and every representation and warranty of Purchaser under this Agreement was true and accurate in all material respects as of the date hereof and is true and accurate in all material respects as of the Closing; and (ii) Purchaser has fully performed in all material respects at or prior to the Closing all of the covenants and agreements required to be performed by Purchaser at or prior to the Closing in accordance with this Agreement.

12.07    Opinion of Purchaser's Counsel. Purchaser shall have delivered to Seller an opinion of Purchaser's General Counsel dated the Closing Date in the form of Exhibit E.

12.08    Board Approval. Seller's, Purchaser's, Grace's and W. R. Grace & Co.'s boards of directors shall have approved the transactions contemplated hereby.

### ARTICLE 13.

### Indemnification

13.01    Definitions. As used in this Article:

(a)    "COBRA Claims" means any and all expenses incurred by Purchaser or the Corporations, net of COBRA insurance premiums received by Purchaser or its insurance carrier, as a result of the extension of health insurance benefits to the Corporations' employees, former employees, and such persons' dependents, by Seller or Purchaser, as the case may be, as required by COBRA

-50-

GEC 000118

and the rules and regulations promulgated thereunder; provided, however, that COBRA Claims shall not include claims under COBRA by employees who were hired by Purchaser or any entity of Purchaser and who are still employed by Purchaser or any entity of Purchaser six months after the employee's Date of Hire or September 30, 1993, whichever is the earlier.

(b)   "Damages" means any and all penalties, fines, damages, liabilities, interest, losses or costs (including, without limitation, Litigation Expenses incident to Indemnified Claims but in any event excluding consequential damages and damages for lost profits which may be awarded to Purchaser or the Corporations).

(c)   "Direct Claims" means claims other than Third Party Claims.

(d)   "Indemnified Claims" means all Purchaser Claims and all Seller Claims.

(e)   "Litigation Expenses" means reasonable attorneys' fees and other costs and expenses (including actual cost of in-house counsel in a situation where Seller has allowed Purchaser to assume the defense of litigation and Purchaser's lead counsel is an employee of Purchaser) incident to proceedings or investigations respecting, or the prosecution or defense of, a claim.

(f)   "Purchaser Claims" shall mean all claims indemnifiable by Seller and Grace pursuant to Sections 13.03 (as limited by Section 13.04) and 13.06.

(g)   "Seller Claims" shall mean all claims indemnifiable by Purchaser pursuant to Section 13.02.

(h)   "Third Party Claims" means any and all claims, demands, suits, actions or proceedings by any person or entity, other than Purchaser or Seller or their respective affiliates, arising prior to the Closing Date.

(i)   "Post Closing Claims" means any and all claims, demands, suits, actions or proceedings by any person or entity, other than Purchaser or Seller or

-51-

GEC 000119

their respective affiliates, arising after the Closing Date, to the extent such claim relates to post-closing activities of the Corporations and specifically excluding claims arising from the action or inaction of the Corporations prior to the Closing Date.

13.02    General Indemnification by Purchaser.

(a)    Subject to the terms, conditions and limitations of this Article, Purchaser shall indemnify Seller and save and hold Seller harmless from and against any Damages caused by or arising out of (i) the failure of Purchaser to perform or fulfill any agreement or covenant to be performed or fulfilled by it under this Agreement, (ii) any inaccuracy in any representation or breach of any warranty of Purchaser set forth in Article 7, (iii) any indemnifiable tax claims as set forth in Article 17, (iv) the matters set forth in Section 10.12 and (v) the matters set forth in Section 11.04.

(b)    The representations and warranties of Purchaser set forth in Article 7 shall survive the Closing.

(c)    Subject to the terms, conditions and limitations of this Article, Purchaser shall indemnify and hold harmless the Seller Group from and against any and all Damages caused by or arising out of those obligations or liabilities of the Corporations as set forth in the schedule to this Section for which any of the Seller Group has expressly provided a guaranty.

(d)    Subject to the terms, conditions and limitations of this Article, Purchaser shall indemnify Seller and save and hold Seller harmless from and against any Damages caused by or arising out of Post-Closing Claims.

(e)    Except as provided in Section 13.02(f), Purchaser's obligation to indemnify Seller and Grace under this Section 13.02 shall expire and be of no further force and effect on the third anniversary date of the Closing Date, except with respect to claims Seller or Grace have asserted against Purchaser in writing,

setting forth with reasonable specificity the nature of such claim, on or before such date.

(D    Purchaser's obligation to indemnify Seller and Grace under Section 13.02(a)(iii) shall expire and be of no further force and effect on the tenth anniversary date of the Closing, except (i) to the extent Purchaser has tolled the funning of the statute of limitations by written agreement with a Governmental Authority, in which event Purchaser's obligation to indemnify will be extended by the period of tolling, and (ii) except with respect to claims Seller or Grace have asserted against Purchaser in writing, setting forth with reasonable specificity the nature of such claim, on or before such date.

13.03    General Indemnification by Seller and Grace.

(a)    Subject to the terms, conditions and limitations of this Article, Seller and Grace shall indemnify Purchaser and the Corporations and save and hold Purchaser and the Corporations harmless from and against any Damages caused by or arising out of (i) the failure of Seller to perform or fulfill any agreement or covenant to be performed and fulfilled by it under this Agreement, (ii) any inaccuracy in any representation or breach of any warranty of Seller set forth in Article 6, (iii) the environmental condition of any oil, gas and mineral leases and any other properties, including, but not limited to, gas plants and treatment facilities in which any of the Corporations or their respective predecessors previously owned an interest but in which the Corporations or any of their respective predecessors no longer own an interest as of the Closing Date, (iv) the environmental condition of any Leased Properties, Oil, Gas and Mineral Leases, Producing Properties, Properties or Related Facilities as set forth in the schedule to Section 6.09 or. as assumed by Seller pursuant to Section 11.04, but excluding from this indemnification claims for violations of any environmental laws that would not have been a violation of the Environmental Laws, as defined:

-53-

GEC 000120

(v) all Third Party Claims for unpaid royalties, revenue payments or tax payments attributable to periods or transactions which occurred prior to the Closing Date and including, but not limited to, such claims by mineral owners, working interest owners, or taxing authorities arising out of gas plant assessments, contractual settlements of take-or-pay claims, gas purchase contract buy-downs, government pricing regulations or like occurrences, (vi) all other Third Party Claims, except those arising out of the litigation listed in the schedule to Section 6.05 and not listed in Section 13.06 and except as otherwise provided in this Section and except for such as are assumed by Purchaser hereunder (vii) any employment related matters which have not been assumed by Purchaser pursuant to the terms and provisions of this Agreement, (viii) any claims relating to Title Variances as provided in Section 9.07(c)(ii), (ix) any indemnifiable tax claims as set forth in Article 17 and (x) the rents, costs, charges and expenses for leases covering office space of the Corporations located in Oklahoma City, Oklahoma (the"Oklahoma City Office"). It is agreed by the parties that the Corporations may continue to occupy said Oklahoma City Office through May 31, 1993 upon payment of the same rental rate as set forth in said leases (for which payments Seller shall not be liable) and thereafter on like terms if such Oklahoma City Office space remains available, it being recognized that Seller will attempt to renegotiate said lease and if successful, said space will not be available after May **31, 1992.** Purchaser will indemnify and hold Seller and Grace harmless from all liabilities in connection with said lease other than for rents, costs, charges and expenses. Specifically excluded from the foregoing indemnities are claims relating to the environmental condition of any Oil, Gas and Mineral Leases and any other properties owned by the Corporations as of the Closing Date which were inspected by Purchaser and for which Purchaser assumed responsibility pursuant to Section **11.04.** Provided, however, that the immediately preceding sentence

-54-

GEC 000121

shall not be deemed to affect the indemnity provided by Seller and Grace pursuant to Section 13.03(a)(iv).

(b)    Seller's and Grace's obligation to indemnify Purchaser under Section 13.03(a)(i),(ii),(vi),(vii),(viii) and (x) shall expire and be of no further force and effect on the third anniversary of the Closing Date, except with respect to claims Purchaser has asserted against Seller in writing, setting forth with reasonable specificity the nature of such claim, on or before such date.

(c)    Seller's and Grace's obligation to indemnify Purchaser under Section 13.03(a)(v) shall expire and be of no further force and effect on the fifth anniversary of the Closing Date, except with respect to claims Purchaser has asserted against Seller in writing, setting forth with reasonable specificity the nature of such claim, on or before such date.

(d)    Seller's and Grace's obligation to indemnify Purchaser under Section 13.03(a)(ix) shall expire and be of no further force and effect on the tenth anniversary date of the Closing, except (i) to the extent Seller or Grace has tolled the running of the statute of limitations by written agreement with a Governmental Authority, in which event Seller's and Grace's obligation to indemnify will be extended by the period of tolling, and (ii) except with respect to claims Purchaser has asserted against Seller in writing, setting forth with reasonable specificity the nature of such claim, on or before such date.

(e)    Seller's and Grace's obligation to indemnify Purchaser under Section 13.03(a)(iii) and (iv) shall continue without limitation of time.

13.04    Limitations.

(a)    Notwithstanding the provisions contained herein and subject to the further provisions of Section 9.07 regarding Title Defects, Seller and Grace shall have no liability to indemnify Purchaser or the Corporations for any claim under Section 13.03 unless the amount of such individual claim exceeds $25,000

GEC 000122

and the aggregate of such individual claims in excess of 325,000 exceeds 3250,000, at which point the aggregate of all such claims shall be subject to such indemnification.

(b)    The dollar threshold and limitations set forth in this Section have been negotiated for the special purposes of the provisions in which they appear, and are not to be taken as evidence of the level of "materiality" for purposes of any statutory or common law which may be applicable to the transactions contemplated by this Agreement under which a level of materiality might be an issue.

13.05    Defense of Third Party Claims.  Purchaser shall notify Seller in writing promptly after learning of any Third Party Claims or claim under Section 13.06.    It shall be a necessary condition of any claim by Purchaser for indemnification under this Article with respect to any Third Party Claims or claim under Section 13.06, that Purchaser tender the defense thereof (including control over all negotiation, trial, appeal or other proceedings) to Seller.    If Purchaser does not so tender such defense within 30 days of learning of such Third Party Claims or claim under Section 13.06, Purchaser shall be deemed to have waived all rights to indemnification or payment with respect to such Third Party Claims or claim under Section 13.06.    Seller may undertake such defense and assume responsibility for payment of all related Litigation Expenses by notice to Purchaser not later than 10 days after receipt of a notice that the defense is tendered to it.  Failure by Seller to so notify Purchaser that it will undertake such defense and assume all related Litigation Expenses shall be deemed to be a waiver of Seller's right to undertake such defense.  If Seller undertakes defense of any Third Party Claims or claim under Section 13.06, Purchaser shall cooperate with Seller and its counsel in the investigation and defense thereof, and may participate in such investigation and defense, but Seller shall retain control of the

-56-

negotiation, tactics, trial, appeals and other matters and proceedings related thereto, provided, however, that Seller shall not undertake the settlement of any Third Party Claims or claim under Section 13.06 that will adversely affect the ongoing operations of or revenues derived from any asset of the Corporations without the prior written consent of Purchaser. If Seller does not undertake the defense of any Third Party Claims or claim under Section 13.06, Purchaser may undertake such defense and Seller shall cooperate with Purchaser and its counsel in the investigation and defense thereof and Seller and Grace shall assume responsibility for payment of all related Litigation Expenses. Purchaser shall permit Seller, at Seller's own expense, to participate in the investigation and defense thereof, but Purchaser shall control such investigation and defense, as well as the negotiation, tactics, trial, appeals and other matters and proceedings related thereto. Purchaser and Seller agree to make available to each other, their counsel and other representatives, all information and documents available to them which relate to any Third Party Claims or claim under Section 13.06, and to render to each other such assistance as may reasonably be required in order to ensure the proper and adequate defense of such Third Party Claims or claim under Section 13.06. Except pursuant to a final judgment rendered thereon, Purchaser shall not pay or settle any Third Party Claims or claim under Section 13.06, whether or not any action or proceeding has been commenced thereon, without the prior written consent of Seller. If Purchaser pays or settles any Third Party Claims or claim under Section 13.06 prior to a judgment thereon without such consent, Purchaser shall be deemed to have waived all rights to indemnification or payment with respect to such Third Party Claims or claim under Section 13.06.

GEC 000124

13.06     Specific Indemnities by Seller and Grace.

(a)     Notwithstanding the provisions of Sections 13.03 and 13.04, Seller and Grace shall indemnify Purchaser and the Corporations and save and hold Purchaser and the Corporations harmless from and against any Damages suffered by the Corporations or Purchaser arising out of the following litigation:

(i)  Slane, et al. v. Exxon Corp., et al. (including GPC) - Cause No. 92-C-241-B, filed in the United States District Court for the Northern District of Oklahoma

(ii)  Cole v. Phillips Petroleum Co., et al. (including GPC) - Cause No. 90-17868, filed in the 11th Judicial District Court of Harris County, Texas.

(iii)  Alford, et al. v. Estate of Felton L. Leggett, et al. (including GPC).

(iv)  Williamson, et al. v. Grace Petroleum Corp., et al. (including GPC).

(v)  Blackburn, et al. v. Grace Petroleum Corp., et al.

(vi)  Cheyenne-Arapaho Tribes of Oklahoma v. United States of America, et al.

(vii)  HBQP, Ltd., v. W. R. Grace & Co. et al. (including GPC)

(viii) Schulte, et al. v. Apache Corporation

(ix)  McCollum v. Apache Corn., et al. (including GPC).

each as more particularly described in the schedule to Section 6.05. Seller shall retain all responsibility for and shall have sole control over the settlement, negotiation, tactics, trial, appeals and other matters and proceedings related thereto. Purchaser and GPC shall make available to Seller all information, documents and personnel that Seller may reasonably request in order to assist Seller in and ensure the proper and adequate defense of such litigation.

(b)     Seller and Grace shall indemnify Purchaser and save and hold Purchaser harmless from and against any COBRA Claims.

GEC 000125

(c)    Seller and Grace shall indemnify Purchaser and save and hold Purchaser harmless from and against any claims asserted by any employee, former employee or.dependent or any Governmental Authority which arise out of the Employee Benefit Plans .

(d)    Seller and Grace shall indemnify Purchaser and save and hold Purchaser harmless from and against all liabilities set forth in Section 5.04.

13.07    Consequential and Lost Profit Damages.  Except to the extent awarded to a third party against either the Corporations, Seller or Purchaser, neither party shall seek consequential damages or damages for lost profits in any claim for indemnification under this Article, nor shall it accept payment of any award or judgment to the extent that such award or judgment rendered in favor of one party against the other party includes consequential damage or damages for lost profits.

## ARTICLE 14.

### Cooperation in Various Matters

14.01    Mutual Cooperation.    Each party to this Agreement shall cooperate with the other party, which cooperation shall include the furnishing of testimony and other evidence, permitting access to employees and providing information regarding the whereabouts of former employees, as reasonably requested by such other party in connection with the prosecution or defense of any claims or other matters relating to the Corporations or their assets.

**14.02**    Preservation of Purchaser's Files and Records.  For a period of six years after the Closing, Purchaser shall preserve all files and records relating to the Corporations that are less than six years old, shall allow Seller or its designee access to such files and records and the right to make copies and extracts therefrom at any time during normal business hours and shall not dispose of any thereof; provided, that during the sixth year after the Closing, Purchaser shall

GEC 000126

give Seller written notice of its intention to dispose of any part thereof upon expiration of said six (6) year period, and Seller may, within a period of sixty (60) days after receipt of said notice, notify Purchaser of Seller's desire to retain one or more of the items to be disposed of. Purchaser shall, upon receipt of such notice from Seller, at Seller's expense, deliver to Seller the items specified in Purchaser's notice to Seller which Seller has elected to retain..

14.03    Preservation of Seller's Files and Records. For a period of six years after the Closing, Seller shall preserve all files and records in Seller's possession relating to the Corporations that are less than six years old, shall allow Purchaser access to such files and records and the right to make copies and extracts therefrom at any time during normal business hours, and shall not dispose of any thereof.

14.04    Preparation of Reports, etc. Purchaser shall cooperate and cause its employees to cooperate with Seller in the preparation, in accordance with Seller's instructions, of financial and other reports and statements relating to the Corporations for periods ending on or prior to the Closing Date.

14.05    Amendment of Guaranteed Agreements, etc. Without the prior written consent of Seller, which consent may be granted or refused at Seller's discretion, Purchaser shall not, and shall not permit any of the Corporations, to amend, modify or extend the term of any agreement or other arrangement under which any of Seller Group has any liability, whether by guaranty or otherwise.

14.06    Press Releases. Either party shall use reasonable efforts to allow the other to review the proposed language of any press release or public announcement with respect to this Agreement or the transactions contemplated hereby, and shall cooperate with the other in resolving any disagreements that they may have regarding any such proposed language, provided, however, that in

-60-

GEC 000127

no press release issued by either party will the identity of Purchaser or any of Purchaser's affiliates be disclosed.

14.07    Administration of Accounts Receivable.

(a)    No later than March 15, 1993, and upon reasonable request thereafter, Purchaser shall deliver to Seller a listing of any and all accounts receivable which Purchaser believes at that time may not be collectible, together with supporting detail.

(b)    Cash payments received by Purchaser subsequent to Closing for accounts receivable as of December 31, 1992 which have not, or are not specifically identifiable as to what invoice or period payment is applicable shall be applied to the oldest outstanding accounts receivable balance.

(c)    Purchaser shall not settle disputed accounts receivable balances as of November 30, 1992 for less than 95% of such balance without the prior consent of Seller.

ARTICLE 15.

Expenses; Termination of Services; Change of Name

15.01    Expenses.  Each party to this Agreement shall pay all expenses incurred by it or on its behalf in connection with the preparation, authorization, execution and performance of this Agreement, including, but not limited to, all fees and expenses of agents, representatives, counsel and accountants engaged by it, except that Purchaser shall be solely responsible for (a) the cost of obtaining title insurance with respect to the Properties or Producing Properties; and (b) the costs and expenses incurred in connection with obtaining all permits and licenses required by Purchaser or any of the Corporations to continue their businesses after the Closing.

-61-

GEC 000128

15.02    Termination of Seller Services.  All contracts, agreements, commitments or other arrangements, whether written or oral, and whether express or implied, pursuant to which Seller or any of its affiliates provides legal, financial, accounting, insurance or other services to the Corporations shall be terminated as of the Closing.  Purchaser shall execute and deliver to Seller, at Seller's request, documents necessary or desirable to release Seller and any such affiliate from any obligations with respect to such terminated contracts, agreements, commitments and arrangements and to otherwise confirm such termination.

15.03    Broker's Fees.  Each party to this Agreement shall hold the other party harmless with respect to any broker's, finder's or other similar agent's fee with respect to the transactions contemplated hereby claimed by any broker, finder or similar agent engaged, employed by or otherwise acting on behalf of the indemnifying party.

15.04    Use of Grace Name.  Immediately after the Closing, Purchaser shall take all necessary actions to cause (a) GPC to change its corporation name to exclude the name "Grace" or any variation thereof, and (b) the Corporations to cease using the "Grace" name on any of their assets or properties (including printed forms) or in connection with their operations.  Notwithstanding the foregoing, the Corporations shall be permitted to continue to use the "Grace" name on the Related Facilities for a period of six months after the Closing, but only to the extent it is not practicable to remove or cover-up the "Grace" name therefrom.

## ARTICLE 16.

### Notices

16.01    Procedure and Addresses.  All notices, requests, demands and other communications required or permitted to be given hereunder shall be

-62-

deemed to have been duly given if in writing and delivered personally or by facsimile transmission or courier service, at the following addresses:

If to Seller:

> Two Galleria Tower
> Suit 1500
> 13455 Noel Road
> Dallas, Texas  75240-6681
> Attention: Legal Division
> Facsimile number:     (214) 772-0215
> Confirmation number: (214) 770-0200

With a copy to:

> W. R. Grace & Co.
> One Town Center Road
> Boca Raton, Florida  33486-1010
> Attention: Secretary
> Facsimile number:     (407)362-1635
> Confirmation number: (407) 362-1645

If to Purchaser:

> Samson Investment Company
> Two West Second Street
> Tulsa, Oklahoma  74103
> Attention: C. Philip Tholen
> Facsimile number:     (918) 583-0829
> Confirmation number: (918) 583-1791

With a copy to:

> Samson Investment Company
> Two West Second Street
> Tulsa, Oklahoma  74103
> Attention: Jack A. Canon
> Facsimile number:     (918) 587-6018
> Confirmation number  (918) 583-1791

16.02     Chanee of Notice Address.  Any party may change the address to which such communications are to be directed to it by giving written notice to the other party in the manner provided in Section 16.01.

-63-

GEC 000130

ARTICLE 17.

Tax Matters

17.01    Certain Non-Income Tax Matters. (a) Purchaser shall pay all sales, use, transfer, stamp, conveyance, value added or other similar taxes, duties, excises or governmental charges imposed by any taxing jurisdiction, domestic or foreign, and all recording or filing fees, notarial fees and other similar costs of Closing with respect to the transfer of the Shares pursuant to this Agreement. Purchaser, with respect to such taxes, shall timely prepare and file, or shall cause to be timely prepared and filed with the appropriate Governmental Authority all tax returns, reports and forms that are required and due to be filed after Closing Date and to pay, or cause to be paid all taxes due with respect to such returns, reports and forms. This Section 17.01 has no application to the payment of any taxes on income or capital assessed by any Governmental Authority.

17.02    Income Taxes - Operations on or Before Closing Date. Seller shall be liable for any and all federal, state and foreign income taxes and franchise taxes which in whole or in part are based on or measured by income ("Income Taxes") applicable to the Corporations' operations with respect to all periods occurring on or before Closing Date as follows:

(a)    With respect to any taxable period of the Corporations which ends on or before Closing Date, Seller shall timely prepare and file, or shall cause to be timely prepared and filed, with the appropriate Governmental Authority, any and all Income Tax returns, reports and forms that are required and due to be filed with respect to such taxable period (whether or not the filing date for any taxable period occurs on or after Closing Date), and to pay, or cause to be paid, any and all Income Taxes (including any interest and penalties thereon) due with respect to such Income Tax returns, reports and forms. Purchaser shall provide or cause to be provided to Seller any data, reports, copies of prior Income Tax returns or other

-64-

GEC 000131

information, shall make available to Seller such personnel of Purchaser or the Corporations, and shall cooperate and cause the Corporations to cooperate with Seller, in order to enable Seller to fulfill its obligations under the preceding sentence.  Any Income Taxes (including any interest and penalties thereon) reflected in such Income Tax returns, reports and forms which were not actually paid by the Corporations or Seller prior to Closing Date and related to any time period prior to January 1, 1993 shall be paid by Seller directly to the appropriate Governmental Authority and there shall be no liability for such Income Taxes (or asset for a refund of such Income Taxes) utilized in determining Net Realizable Assets pursuant to Sections 5.02 and 5.03 hereof.  Seller shall determine the amount of such Income Taxes (but excluding any interest and penalties thereon) related to the period of time from January 1, 1993 through the Closing Date, advise the Purchaser of the computation thereof, and such amount shall be included as an Asset in determining Net Realizable Assets pursuant to Sections 5.02 and 5.03.

(b)    With respect to any taxable period of the Corporations which ends after Closing Date and which taxable period encompasses time periods occurring both before and after Closing Date, Purchaser shall timely prepare and file, or shall cause to be timely prepared and filed, with the appropriate Governmental Authority, any and all Income Tax returns, reports and forms that are required and due to be filed with respect to such taxable period, and to pay, or cause to be paid, all Income Taxes (including any interest and penalties thereon) due with respect to such returns, reports and forms.  For the purposes of determining Net Realizable Assets pursuant to Sections 5.02 and 5.03, Seller shall estimate the amount of such Income Taxes (but excluding any interest and penalties thereon) accruing during the time period occurring on or before the December 31, 1992, and

-65-

GEC 000132

such amount shall be included as a liability in determining Net Realizable Assets pursuant to Sections 5.02 and 5.03.

(c)    Purchaser will pay or will cause to be paid to Seller any and all refunds of Income Taxes (including any interest thereon) received by Purchaser, or any affiliate of Purchaser, after Closing Date and attributable to Income Taxes described in Section 17.02(a) (including any interest thereon) previously paid to the appropriate Governmental Authority by either Seller or the Corporations (or any predecessor or affiliate of Seller or the Corporations) with respect to all taxable periods ending on or before Closing Date. Such payment will be made by check to Seller within ten days after Purchaser's receipt of any such Income Tax refund (including any interest thereon) from the appropriate Governmental Authority.

(d)    In the event of a proposed adjustment by any appropriate Governmental Authority to increase any Income Taxes described in Section 17.02(a) incurred (including any interest and penalties thereon) by the Corporations for any taxable period ending on or before Closing Date and for which Seller or the Corporations previously filed the related Income Tax return, Purchaser will promptly notify Seller of such proposed adjustment, and Seller, if it so elects, and at its own expense, may contest such adjustment with the appropriate Governmental Authority on behalf of the Corporations. Any additional Income Taxes (including any interest and penalties thereon) which become due and payable as a result of such adjustment will be indemnifiable pursuant to the provisions of Section 13.03 hereof.

17.03    Income Taxes - Operations Subsequent to Closing Date. Purchaser shall be liable for any and all Income Taxes applicable to the Corporations' operations with respect to all periods occurring subsequent to Closing Date as follows:

-66-

GEC 000133

(a)    With respect to any taxable period of the Corporations which commences subsequent to Closing Date, Purchaser shall timely prepare and file, or shall cause to be timely prepared and filed, with the appropriate Governmental Authority any and all Income Tax returns, reports and forms that are required and due to be filed with respect to such taxable periods, and to pay, or cause to be paid, any and all Income Taxes (including any interest and penalties thereon) with respect to such Income Tax returns, reports and forms. Any Income Taxes (including any interest and penalties thereon) due with respect to such Income Tax returns shall be paid by Purchaser directly to the appropriate Governmental Authority.

17.04    Income Taxes Resulting From This Transaction, (a) Purchaser is eligible to and shall make a timely and effective election under Section 338(g) of the Code, with respect to the purchase of the Shares hereunder. Further, both Seller and Purchaser are eligible to and shall make or shall cause to be made a timely and effective election under Section 338(h)(10) of the Code (the "Section 338(h)(10) Election"). Purchaser and Seller agree that neither of them will take, or permit their affiliates to take, any action to modify or revoke such elections without the express consent of the other.

(b)    Not later than July 1, 1993, Purchaser will deliver to Seller a completed Internal Revenue Service Form 8023, and the required schedules thereto ("Form 8023"), providing for the Section 338(h)(10) Election. Provided that the information on said Form 8023 is, in the reasonable determination of Seller, correct and complete in all material respects, Seller will, within fifteen (15) days thereafter, execute and redeliver said Form 8023 to Purchaser. If any changes or supplements are required to the Form 8023, Seller and Purchaser will promptly agree upon and make such changes. Seller and Purchaser will each

GEC 000134

timely file the Form 8023, and any required supplements thereto, and will provide assurance to each other that they have done so.

(c)    Any Income Tax liabilities incurred as a result of the Section 338(h)(10) Election will be the responsibility of Seller, and the provisions of Section 17.02(a) and Section 17.02(b) of this Agreement shall apply.

17.05    Income Taxes on Divestiture.    Any Income Tax liabilities incurred as a result of the divestiture of certain assets of the Corporations pursuant to Section 9.05 will be the responsibility of Seller, and the provisions of Section 17.02(a) and 17.02(b) shall apply.

17.06    Specific Tax Undertakings.    If Grace or any affiliate of Grace takes any "protective carryover basis election" under Section 338 of the Code with respect to any purchase of corporate stock of any entity other than GPC or the GPC subsidiaries which election, in order to be valid, must be joined in by such member, Purchaser shall cause GPC and the GPC subsidiaries to join in such election and execute such forms and take such other action as may be required therefor.

## ARTICLE 18.

### General

18.01    Entire Agreement.    This Agreement and the other agreements, documents and instruments being delivered at the Closing set forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersede all prior agreements, arrangements and understandings relating to the subject matter hereof, whether written or oral.

18.02    No Other Representations, etc.    No representations, promise, inducement or statement of intention relating to the transactions contemplated by this Agreement has been made by or on behalf of any party hereto which is not set forth in this Agreement.

-68-

GEC 000135

18.03     **Headings.** The Article and **Section headings** contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

18.04     **Governing Law.** **This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, excluding the conflict of laws provisions thereof that would otherwise require the application of the law of any other jurisdiction, except that with respect to matters regarding title to real property, the same shall be governed by the laws of the state in which such property is located.**

18.05     **Counterparts.** **This Agreement may be executed in multiple counterparts (including counterparts executed by one party), each of which shall be an original, but all of which shall constitute a single agreement.**

18.06     **Binding Agreement: Assignment.** **This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but this Agreement shall not be assignable by either party without the prior written consent of the other party.**

18.07     **Amendment.** This Agreement may be amended only in a writing executed by the parties hereto which specifically states that it amends this Agreement.

18.08     **No Waiver.** **Failure of any party to insist upon strict observance of or compliance with any term of this Agreement in one or more instances shall not be deemed to be a waiver of its rights to insist upon such observance or compliance with the other terms hereof, or in the future.**

18.09     **U.S. Dollars.** **Except for the dollar amounts referenced in Sections 5.03(1) and 5.03(m), All dollar amounts set forth or referenced herein (including, but not limited to Sections 1.28, 5.02 and 5.03) are deemed to be**

-69-

GEC 000136

expressed in U.S. currency. All foreign currency equivalents shall be converted to U.S. currency utilizing official conversion rates as of December 31, 1992.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first above written.

GRACE ENERGY CORPORATION

By: _____
F. L. Ryan
Vice President

SAMSON INVESTMENT COMPANY

By: _____
C. Philip Tholen
Executive Vice President

GEC 000137

*BKK'M* *l)*

relief [2]

SCHEDULE 17D
TO THAT CERTAIN AGREEMENT OF PURCHASE AND SAUB OF THE SRXX OF GRACE PETROLEUM
CORPORATION DATED DGCBUBBR    1992 AND BEING BETWEEN CRACK ENERGY CORPORATION, ASSB.I.HR,
AND SAMSON INVESTMENT CORPORATION, AS BUYER

Part 1 - Surface Uwo tod ftyhtey Way

| line No. | Grace Lmr Number | Fwepact Nine | Lour | Lease Type | Comity | State | Partial Orxaiprkm | Property NrnrtJr Affected | )pu*'r Starts | Rnoarks |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) | 194-AV | Reck Warrior | Gull States Paper Carp. | Right-of-Way | Lamar | AL | Sec 11TS-S14W | OW60 | Partner Pay* | |
| O) | 5727-AA | Hack Warrior | R I. Lockhart, et u | Right-oi-Way | I war | AL | Sec. 16-12S-15W | 144600 17*870 | Graca Pays | |
| O) | 5327-AB | Hack Warrior | Rf. Lockhart | RigM-cj-Way | Lamar | AL | fkc 16-12S-15W | 144600 179870 | Grace Pays | |
| (4) | 23747-AC | Hock Warrior | Deotw Mortanta, rt m | RigMWof-Way | Umar | AL | Sec 11SST4W | 584330 | I kid by Product* | |
| (5) | 23747-AH | Hack Warrior | Danny THima* McDonald, at al | Wghto6Way | Umar | AL | Sao 1-15S-14W | 584330 | IMd by fWuoia | |
| (6) | 23,751 AA | Black Warrior | C Canns Morrison, at ux | RigM-c*Way | Iam | AL | Sac 34- ItS14W | 584330 | Hdd by Prodirtna | |
| (7) | 80748-AC | ftyrtt* | Weyerhaewes Company | Surface | Payatra | AL | Sec. 17-HS-I3W | 933130 | Paid Up | |
| m | 30729*AA | Bnika East | LA SI Dept of Hskvayi | RightsWay | Evangeline | LA | Sao 40-66-2W | | Paid Dp | |
| (9) | 7170@AA | Hg Ialand Qois) Held | Inez A. TMtodeinu | Sinfoce | Acadia | IA | Sec42-IN-1W | | Pvtna Pays | |
| (10) | 32782.AA | Hll Island (kite) Fkid | Rirfuc P. Miner, at al | Surface | Acadia | LA | Sec 42-IN-2W | | Partner Pays | |
| OD | 30.132-AA | GeoaacTcfc? | E B. Sdkwiag, et al | Sinfoce | fervila | LA | Sac Q8 43, 44-86-11E | | Partner Pays | |
| O2) | 50,036-AB | WaUknmn Bay, Wert | LA St Suttec Ur 91837 | Surface | Plaquemina | LA | Sec 32 18S2SE Sec 5-IJS-25E | *wno | Partner Pays | |
| UJ> | 50,042-AA | WUkhmna Bay, Wot | William Pl. Mihckd, at al | Right-of-Way | Plaquemincs | LA | Sec 32 18S25E | 900810 900820 | Partner Paya | |
| OO | 22)64-AA | Z*H-Thibodaux | Dr. Paul T. Ray, d uu · | Right-of-Way | Lafourche | LA | Sec m-TISSTllfifi | 744120 | Partner Pays | |
| O5). | 22766AB | ZrH-TUbodaux | Louis Prt Brcui et al | KlgM-of-Way | Lafourche | LA | Sec *m* 11M5S-16E11 Mora | 744120 | Partner Pays | |
| O6) | 22764-AC | Znt-TMbodaux | Louis fiuald, et al | Right-of-Way | ljfourdH | LA | Sec 110111I-15S-16E | | Partner Pays | |
| O7) | 22764-AD | Trn-Thibodaux | Links Braud, ct al | Surface | Ufounke | LA | Sec Iia 1I1 15S-16E | | Partner Pays | |
| (18) | 15,78*AA | AddLmm'TT | Dewy Monk, |r, et ux | Surface | Oakland | MI | Sec 12-5N-1 IE | 513880 513890 513710 | Grace Pay* | |
| O9) | 15796 AA | Av·m | Mhtdgaa State LhOcrkty | Surface | Oakland | MI | Sec 1-3N-11E | 5700 | Grace pay* | |

SCHEDULE 1JO
TO THAT CERTAIN AGREEMENT OP PURCHASE AND SALE Of THE STUCK OP GRACE PETROLEUM
OOKPOIATICN DATED DECEMBER ___, 1902 AND BEING BETWEEN GRACH ENERGY CORPORATION, ASSELLER,
AND SAMSON fNVBSIMSNT CORPORA TUIN, AS BUYER.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| <28 | 21,376-AB | (tak) I HI | Robert IUndiRekt Trast | Surface | Crawford | MI | Sec. S-27N1W | | No Rent Due |
| cn> | 21711*AC | BaUHfll | Leonard >L DtMuv tt *l | Surface | Crrwhrd | MI | Sec. 26-27N-2W | | No Rent Due |
| Cll | 21,443-AA | flnid Ht3 | Mi Specbl UM Agml 2-91 | Surface | Grewfcrd | Mi | Sac. 6-27N-1W | 812140 | No Read Due |
| 03) | 14,337-AA | EnsWy | Gnergf R. Ahccrton, at << | Surf** | Nuraygp | M | Sec. Y UN-11W | 118420 | Partner Pays |
| CD | 19742-BS | Cincen | Emeal Xrwpp | RigM-oLWay | Mecosta | MI | Sec.160E NrfC*V | 83160 | No Rest DIM |
| m | 14774-BX | Cn*n | Harmf Rehlopf, nt ms | Surface | Mccosta | MI | Sac. 2A16N-1WV | 740020 | Grazn pay* |
| W | 21716-AB | Gnm | Ncn Bwaatt, at il | Rtgfat-af-Way | Mccosta | MI | Sec. 16-16N-I0W | 83160 | No Rent Due |
| m | 22775-AA | Creak | Wohartu PttrrarStfpfy Coop | Wghtrf Way | Mccosta | M | Sec. 3, 4-16N-U7lW | 83160 | No feast DUB |
| OS) | 22776-AA | Cm | Au S. Rdd, nt ux | RlghMrf-Way | Mscoata | MI | Sec. 4-1IN 10W | 83160 | No Read Due |
| Cm) | 13,548-AH | Norwich | finwphl.- Atnan | Clgltof Way | Newaygo | Mi | Sac. 28-15N-11W | 643430 | No (futt Due |
| CX0 | ISA4l-FY | Norwich | Uult F. Nivrnyï rt us | BtMMSl | Newaygo | MI | Sec. 20, 25-15N-11W | ISO | No Rent Due |
| <31) | 15741-4X: | Norwich | Robert Champagne, ti us | Nantygo | MI | See 33-15N-1JIW | 950510 | No Rant Dac |
| 02) | 15,841-GO | Norwich | Jonm A. Patrick, tt us | Mgkkof-Way | lMewiygo | MI | Sec. 2IMSN-11W | 115400 | No Rent Due |
| CD) | 15,841-CH | Norwich | Lanj Hi Patrick, at ux | Rigbt-of-Way | Newajrju | MI | Sec. 21MSN-11W | 601430 | No Rent Due |
| CW | 16,116-AII | Norwich | Larry D. Patrick, cl ux | RighMf-Way | Nrwmygo | MI | Sec. 28-15N-11W | 135400 | No Rani Due |
| OS) | 16,125-AF | Norwich | DmgUi UBUMy at ms | RigM-of-Way | Newaygo | MI | Sac. 33-15N-11W | 135400 900620 | No Rent Due |
| 06) | 16,125 AC | Norwich | Jurat E. Teopood, cl ux | Right of Way | Newaygo | MI | Sac 33-15N-11W | 135400 930620 | No Rent Due |
| 07) | 16,123-All | Norwich | LrfsEJahr | Right-of-Way | Ncwaygo | MI | Sec. 33-15N-11W | 115400 930620 | No Rent Due |
| Ce> | 16,125-AI | Norwich | Gerald Slocum | Right-of-Way | Newaygo | MI | See 33-15N-11W | 115400 930620 | No Rent Due |
| 09) | 17,432-AC | Norwich | Sally K. Jekmon | Right-of-Way | Newaygo | MI | Sac. &-1SN-11W | 115400 | No Rat Due |
| (40) | 17/132-AD | Norwich | Jean E. Warvtlaud | Right-of-Way | Newaygo | MI | Sec. 33-15N-11W | 11540Q | No Rent Due |
| <4I> | 22.127-AA | Norwich | Kevin W. Koch | Right-of-Way | Newaygo | MI | Sec. 2B-15N-11W | 693430 | No Rnt Due |
| (42) | 19757-AA | Crow* | W. D. Read | RighMrf-Way | jasper | MS | Sec. 23-2N-I2H | | Paid Up |

8 oi 12

## SCHEDULE 1JO

IT! THAT CERTAIN AGREEMENT OF PURCHASE AND SALE OF THE STOCK OF GRACE PETROLEUM
CORPORATION DATED D6CEMIER ___ 1992 AND BEING BETWEEN GKACB BIN8KCY CXIKnJKATIUN, AS,SOILER
AND SAMSON WVBSTMENT CORPORATION, AS BUYWL

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| (43) | 4471 AA | Outlook Held | Morina Norager, rt al | Surface | Sheridan | MT | Sec. 21-36N-53E | | Partner Pays |
| (44) | 43,154-AA | Rough Khlar | Edgar Trotter, et in | Surface | McKende | ND | Sec. II, 1M4SN-10IW | 236990 277010 | Partner Pays |
| (45) | 43,145-AA | Rough Rider | Ien Trotter, et at | Right-ef-Way | McKenzie | NO | Sec. 14, 30-M5N-10IW | Z36990 257010 | Partner Pay3 |
| (46) | 10759-A1 | Sell Ub: Morrow, Sotrih | William C.Stmt | Surface | Icc | NM | Sec. 25-206-32B | 777610 | Grace Pay* |
| (47) | 765-AC | Loyal, East | JonHtaStudd | Surface | Kmg&W | OK | Sec. 36-1SN-8W | 100900 | Gnce Pap |
| (48) | 14,307-AA | Merritt | Chicago-Rock bJaad-Pacifk | Right-Of-Way | Barkhi | OK | Sec. MCN-22W | 496060 496070 496690 570900 | Held by Prockjodeu |
| (49) | 16,175-AA | Payne, Weal | Raymond K.Hatl | Surface | McQahn | OK | Sec. 31-4N-3W | 1065 | Grace Pap |
| 777 | 21.931 AA | Star | Gin lt Ante ]nna | Surface | Nafae | OK | Sue 13-19N-10W | 110800 | Held by Producetka |
| (51) | 15,507-AB | Strong City, Wact | Melba A. Brown | Right-Of-Way | Roger MlSs | OK | Sec. 10-1u4-23W | 566200 | Paid Up |
| (52) | 2792-BA | Tua*y, N.W. | Wealcy J. Newman, et ux | Surface | Staphns | OK | Sec. 35-1N-4W | 361610 | Grase Pap |
| CO) | 11495-AA | Veloo, South | a J.Suttot, araJ | Surface | Skykmi | OK | Sec 15-25-5W | | Putaer Pap |
| (54) | 11,097-AA | Vehaa, Suuti | WAllaa Hobart Ingram | Surface | Stephens | OK | Sec 6-2S-4W | | Partner Pap |
| (55) | 2A.IJ7-AJ | Weelhrrtard Neath | Weatherford Dtnkyaul | Surface | Omlet | OK | Sec 2-I2N-14W | | Parmer Pap |
| (56) | 30,566-AA | Annktrille, East | Sam Aeola, et u | RighM.Way | Wise | TX | 197 AcSenlth Ca Sehool Ld A744 | 102*0 | Paid Up |
| (57) | M6J-AA | AjsnWvllle, East | Sam Aeola, et ax | Right-ef-Way | Wrm | TX | Eavuent G. H. Brudelt Sry. A-2I | 10290 | Paid Up |
| (5*) | 51,177-AA | Algoa Orchard | jeffery a Sererin, et in | Rlght-ef-Way | Cehrzleen | TX | E 3S2' 10k 9 1L & BoylUn Sry | 865610 | Grace Pap |
| (59) | 51,170 AA | Algoa Orchard | Larry V. Janet, rt ua | RlgM-ef-Way | CahaKtem | TX | 5 Ac L1 10 l1 B. Baylac Sry A636 | 065610 | Grace Pap |
| (WS | 51,2lth-AA | Algoa Orchard | I. J. Nolen, et ux | Rlght-*-Way | Calveaba | TX | Lot 4 Blh 76 Angdl Riangr Adda | 865610 | Grace Pap |
| Oil) | 51701-AA | Algoa Orchard | Louis A. TuUy | Right-of-Way | Galmtoi | TX | IL .0- Boylan A-636 Pipeline ROW | | Paid Up |
| (62) | 5UC2-AA | Algoa Orchard | Lorraine Sta-rely( et al | Right-of-Way | Calumtat | TX | H. A Boylan Sry A-636 Lot f | | Paid Up |
| ~63) | 51700 AA | Algoa Orchard | Galveston County Pennit N | EMtTVal | OaJrtUoa | TX | fL 8. Boylan Svy A-636 4' Gaa PLI | BS5610 | Grace Pap |
| (64) | 5UWAA | Algoa Orchard | Willie E lUrrry, et al | Right-of-Way | Caivmbm | TX | Lot P Wk 76 LLGNRK Svy A-611 | | Paid Up |
| (65) | 50767 AC | Cano Hiwm 1Urtw | Riduerd G Moaa, et al | Surface | Amxaaa | TX | lots 3 h 4 Blk 667 Cy Axum Pa | | Partner Pap |

Page 4 of 12

SCHEDULE 1/D
TO THAT CERTAIN AGREEMENT OF PURCHASE AND SALE OF THE STOCK OF GRACE PETROLEUM
CORPORATION DATED DECEMBER      1992 AND WHNGBETWEEN GRACE ENERGY CORPORATION, AS SELLER,
AND SAMSON INVESTMH?T CORPORATION, AS BUYER.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| (66) | 50,l78-AF | Cotra Brown Harbor | Qurla Wright, et el | Surface | San Patricio | TX | 3.16 Ac Uta 8-14, 19-26 Hk 603 | 456140 | Partner Pap |
| (67) | 50,783-AS | Cow Browl H*rkr | Folly Brown a/k/a Lucntt | Basement | Armen | TX | Lot 6, Rk 660 - Eunnmi | | Partner Pap |
| (60) | 50A71-AI1 | COM Brtmn\ lUrtw | North Cartral Ofl Carp | Surface | Aranws | TX | Lots 4-5,7-1\ 12, 14 Hk 650 | | Partner Pap |
| (69) | 50,095-AB | Conn IVVm )Urbor | Levina H., Davis, at sl | Surface | Areval | TX | Lot 11 B2k 650 - Sartice LMM | | Partner Pap |
| (70) | 51,017-AB | Curai Brown Harbor | North Centra) Ofl Carp. | Sintact | San Patricio | TX | 23 Ao. Lute 1, 2 DU.657 Sur Ino | 143210 | Held by Pruchxtkn |
| (71) | 51,0*4-Ail | Con* Brown lUtVOT | W?jm# & Jonte, at en | Surface | Aramai | TX | 24 LotlS B8t 650 Enface Life | | Partner Pap |
| cm | 51,281 AA | Con Blown 1UrVor | SM Patrick) Navigation | Right-*f-Way | San Patricio | TX | .16 Ac Qty of Axixfaa Pass | | Partner Pap |
| r/3) | 51,262-AA | Con Brown HuVir | Marine Creek Estates I V | Right-of-Way | San Patrick) | TX | JO ROW Wright IA tc A Paaaffi | | Paid Up |
| <7#> | 5U63-AA | Crn Brown Harbor | City ul Aranaae Pass | Right-Of-Way | San Patricio | TX | 1.01 Ac ROW Wiight 1A A P*s 11 | | Partner Pap |
| CfS) | 81,265 AB | Conn Brown Harbor | QorU A Dmnn, at al | Surface | Anma | TX | J'8 An* Lot 16 Bk 660 Seri LM | | Partner Pap |
| (76) | 31,376-AB | EtnoFUUd | Harold P. House | RIght-cf-Way | tin 0bk | TX | 4.3* Ac ABAM Sry Na 214 | 819250 | No Rent Due |
| (77) | 50,080-AC | Fan* | Stanley PawHk | Snriaoe | lire Oak | TX | 00 Ac Lntl5 Blt. C [ P. 8ry A355 | tffnio | Held by Productkei |
| (78) | 50,063-AB | West George Wot | Kettfey Iron, /ac. | Serfan | Un Oak | TX | Late 20A 306 Blk D W. Gage W. | 6910)70 | Grace Pap |
| (79) | 50)003-AC | Wart George Wart | Katzfey Btrn, lac | Surface | L in Oak | TX | Lots 404, 406 Hk D W. George WJ | 601110 | Grace Pap |
| (80) | 50(163-AD | Wol Georga* Wart | Ketzfey Bra*, Inc | Surface | Un Oak | TX | Prod Feclfikr U* 305 Nefam *6 | 601110 | Grace pap |
| (811 | 50,063-AB | Wesl George Wert | Katcfey Bros, Inc | Surface | Live Oak | TX | Lots 303, 306, BklL W. George W. | 601100 | Cnee Pap |
| (82) | 50,063-AF | Wert George Wert | Rani T. CowTalas, et ux | Surface | lin Oak | TX | Surf Use U 206 Elk D W. George W. | 601090 | Grace Pap |
| (83) | 50,074-AA | Wert George Wert | Henry & Houdmue | Surface | UnOak | TX | Surf Due U 2C8 Blk.D | 60KB0 | Grace Pap |
| (84) | 50,075-AA | West George West | Katzfay Bros, Uc | RighMJf-Way | live Oak | TX | Pipeline ROW C. & hidaon 06 | 601110 | Paid Up |
| (85) | 50,077-AA | Wert Georg* West . | Diana & Cinefur | Right-of-Way | UwOak | TX | ROW TR 301 Blk 63 W. George W. | 601120 | Paid Up |
| (86) | 50,078 AA | West George Wert | Henry E. llondrarm | Right <f Way | L in Oak | TX | ROW Elmm) TV* 402, 302, 303 | 601120 | Paid Up |
| (87) | 50079-AA | Wart George Wert | Henry & Hosdmarm | Surface | UreOak | TX | TV Nos. 203, 3G2 A 3C8 Bry A-6f> | 601120 | Grace Pap |
| (80) | 50,060-AA | Wart George Wert | Henry E. Hrmdrmna | Surface | Un Oak | TX | U 302 W.D. llxx%m &ry A 645 | 601130 | Grace Pap |
| (89) | 50)y±1-AA | Wert George Wert | Kail Hofmann | R.ightof-Way | Live Oak | TX | ROW Svy Cameron Cly Svy A 146 | 601090 | Paid Up |
| <ND | 50,082 AA | Wert George Wert | Karl Hofmann | Easement | Live Oak | TX | 2500 Sq Ft Mrtntag Pad for M | 601090 | I'aid Up |

P*p*5on2

**SCHEDULE 1 50**

1O) THAT CERTAIN AGREEMENT OF PURCHASE AND SALE OF TIB STOCK OF CKACX PHTROLEUM OONPORATICIM DATED DBLB4IBR ___, IITIAND BEING BETWEEN GRACE ENERGY CORPORATION, AS5H,LL8*, AND SAMSON INVESTMENT CORPORATION, AS BUYER.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| O1) | 50,083 AA | Waer Ceery West | Katzfey fcw., Inc | Right-of-Way | Live Oak | TX | ROW WX) Jodge* A-G45    14 | 601090 | Paid Up |
| 02) | 50,125-AA | Perllwirf, Soudi | Modicst Mfwtond BMg | Subcc | Sc Patricia | TX | 367 Surf Ac C. W. Pgery 9y AIll | 512010 | Genea Pap |
| 03) | 30,327 AA | Oakville | VkA* bits Howard | RighCofWay | Lire Ok | TX | ROW arrm IRS2 Ac McCown* Ar9 | | Paid Up |
| 04) | 30327-AB | Oakville | Kent Andrews, +t si | RighMd-Way | Live Oak | TX | ROW A Bawmeat D-McCorom 9rj A29 | | Paid Up |
| 05) | 50303-AA | San La'?c | Cnf A. AUoveid | RIght-of-Way | Cdwakn | TX | Lot 3 1& 26 Amos Edwards ArlO | 546350 | Paid Up |
| m | 50304-AA | Su ltd | Jttnw fi. Qujsnui, Jr. + nx | RighKd-W.y | CahoM | TX | Lot 8 l8c 40 Anas Edward* Aril | 546850 | PartTMr Pap |
| m | 50,31*AA | San Leora | Xl. CL Bullard | Surface | Galveston | TX | 1 Ac Anus Edward* 9rj A-10 | 546650 | Partner Pap |
| 0*> | 5UH-AB | SUck. N. R. | Rode L. KoMn | Righto*-Way | Goliad | TX | ROW COT 95 Ac Wm. Guyana* Sy , 130 | 392300 | Oac* Pap |
| (09) | 42r412 AB | CanwM | Turnera—4 Ranch | Right-Of-Way | GapbcQ | WY | Sec. 24-CN-7IW | 853510 | Partner Pap |
| 0001 | 40&S2-AB | CuSaamiud Creek | Dennis Vanienduyt ct us | Surface | Wnahalle | WY | Sac. 25-GN-92W | 321700 | Grace Pap |
| (101) | 4Q,6S2-AC | Cottonwood Creek | Dennis Vartanduyt, ct ux | Surfer* | Washakie | WY | Sec. 27-47N-92W | 321600 | Once Pap |
| (102) | 44375-AA | Madden | W-81222 | RighMd-W.y | Rwnant | WY | Sec. M7N-59W | | P*cta Pap |
| om> | 90333-AC | Acadk Valey | fidgar Leroy Good, ct m | Surface | Alberta | CN | Ssc. 36-2S-1 W4M | 1527U) | Parker Pap |
| 004) | 90401-AD | Andk Vileji | Murddpal Dial of Acadia | Surface | Alberta | CN | Sec. 14-36-1 W4M | 51700 | Parkier Pap |
| 005) | 70301-AB | Rig tWud | Crown MSL 9994 | Surfer* | Alberta | CN | Sec 21-65-26 W4M | 94710 | Partner Pap |
| (106) | AUXTI-AC | Big Bend | Ciown MSL 11766 | Surface | Alberts | CN | Sec 20.21-65-26 W4l4 | 947W | Pwtner Pnp |
| <1O7) | 70(Xtn-AD | ∎5 Bed | Crown MSL 12648 | Surface | Aferta | CN | Sec 20-68-26-W4M | 94710 | Parkier Pap |
| 0Q0) | 70301-AE | Big Bed | Oown IOC77108S | Surface | Abota | CN | Sec 16-68-26-W4M | •4710 | Parkier Pap |
| 009) | 70301-AF | BigBend | Oown MSL 771603 | Surface | Abate | CN | Sec 166WA-W4M | 94710 | Partner Pap |
| mo) | 70,001-AG | Big Bed | Oown MSL 821595 | Surface | Alberts | CN | Sac 16-65-26-W4M | 94710 | Partner Pap |
| 011) | 70,077-AB | Big Bend | Crown MS 10722 | Surface | Alberti | CN | Sec 25-68-26-W4M | 94710 | Partner Pap |
| 012) | 70,077.-AC | Big Bend | Oown LO 5351 | Surface | Alberta | CN | Sec 25, 366*26; 1.2J4946 W4M | 94710 | Partner Pip |
| 013) | 70,071-AB | Big Bend | Gowm M3 11990 | Surface | Abota | CN | Sec 15, 196826-W4M | 94790 | PartMr Pap |
| 0UJ) | 70,125-AA | Rig Bed | Crows PLA 77U646 | Surface | Alberta | CN | Sec 16, 21*65 26 W4M | 94710 | No Rent Duc |

GEC 000142

PigpfioJU

<div align="center">

SCHEDULE 120
TO THAT CERTAIN M3IEEMENT OF PURCHASE AND SALE OF THI STOCX OP GRACH PETROLEUM
CORPORA TIUN DATED D6CBMBHK ___ 1992 AND BEING BETWEEN GRACE ENERGY CORPORATION, AS HILLIK,
AND SAMSON INVESTMENT CORPORATION, AS BUYER

</div>

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 015) | 90215-AE | Bltrnn Lake, South | Veterans Land Art | Surface | Alberta | CN | Sec. 2-46-21 W4M | 194700 | Partwr Pip |
| 016) | 90,425-AB | CmttsfkH Wot | Stanley Cosigt Weber, rt ux | Surface | Albert* | CN | Set 10-27-2 W5M | 161810 | Partner Pay* |
| 017) | 90J'S AC | CrowAcki Wet | Janie Beth Mattie | Surface | Alaeni | CN | Sec. 11-27-2 W5M | 161800 | Partner Pay* |
| (115) | 90.425-AD | QuaAcki Wo4 | Robot Edward Pope | Surface | Alferta | CN | Sec. 11-27-2 W5M | 161820 | Partner Pay* |
| HI*) | 90435 AC | Davy Lake | Douglas R. Soi*y -4 ux | Surfaca | Alberta | IN | Sec 27-34-27 W4M | 174000 | Partner Pay* |
| 070) | 90,438-AD | Dar*ey Later | Hobart Kant Walr. | Surface | Afcarta | CN | Sat 3884-27 VV4M | 174070 | Partner Pays |
| 021) | 90,438-AB | Darcy L*8a | WUUam E. Bawdt et ux | Surface | Afaota | CN | Sec. 135-27 W4M | 174080 | Partner Pip |
| (122) | 90A39-AB | Davy Lake | DmgUs Robot Smith, at ux | Surface | Alberta | CN | Sec. 26-34-27 W4M | 173970 | Partner Pay* |
| 023) | *H4O-AB | Darwy L*8a | jhim Andrew KaOur, at ux | Surface | Alberta | CN | Sec 1084-27 W4M | 174060 | Partner Pay |
| (124) | 90,440 AC | Davy Laka | Cod Edwin 1Wt, at ux | Surface | Alberta | CN | Sec 1484-27 W4M | 174000 | Partner Pay* |
| (125) | 90,441 AB | Davay Lakr | Cad Shirley Khkhaax | Surface | Alberta | CN | Sec 2284-27 W4Jd | 174028 | Partner Pay* |
| 026) | 90,442 AB | Dmy Uh | Cart Shirley KirUimm | Surface | Alberta | CN | Sec 2234-27 W4M | 174060 | Partner Pay* |
| 027) | 90443 AC | Davry Labe | Geoffrey Bdwrd Hoar | Surface | Alberta | CN | Sec 3434-27 W4M | 174040 | Partner Pays |
| 021) | 90,451 AB | Davy Lake | ADzz C. Sparks, at ux | Surfaca | Alberta | CN | Sec 20-34-27 W4M | 174010 | Partner Paya |
| 029) | 90,451 AC | Dawy Laka | AJUa // Spark*, at ax | Swfac* | Alberta | CN | Sec 2034-27 W4M | 173980 | Partner Pay* |
| (130) | 90,009- AB | Nerybanlt | Halbera Farms Ltd. | Surface | Albota | CN | Sec 30-43-27 Wild | 279180 | Grace Pap |
| (131) | 90,010- AB | Ferrybank | Vrlna Mabti McDowel | Strface | Alberta | CN | Sec 3143-27 W4M | 279180 | PareuT Pap |
| 032) | 90,010-AC | RrrryVark | Bss Talt | StKface | Ai-erta | CN | Sec 32-0-27 W4M | 279180 | Partner Pap |
| 033) | 90,017-AA | FerrybaJc | TDojjm Land ii Cattle Co. | Surface | Alberta | CN | Sec 444-27 W4M | 279110 | Grace Pap |
| 034) | 90,021-AA | ForyUik | Hutterian Brethren | Surface | Alberta | CN | Sec 9-44-27 W4M | 27V100 | (Wnss Plap |
| 036) | 90,022-AA | Ferrybeuk | Hulferian Drethrm | Surface | Alberta | CN | Sec 10-44-27 W4M | 27913D | Cnce Pap |
| 036) | 90y27-AA | Ferrybank | Marvin Ray Ashton | Surface | Alberta | CN | Sec 17-44-27 W4M | 279140 | Grace Pap |
| 037) | 90f89-AB | FexryVuih | Ranald Doupe | Surface | Albotx | CN | Sec 28-43-28 W4M | 279220 | Partxer Pap |
| (138) | 90,038AB | Fmybank | Donald A. MflLu, ft ux | Surface | Albert* | CN | Sec 22-43-28 W4M | 27V300 | Grace Pap |
| 0391 | KX030-AC | Fenybank | Isner C. Sndtkr, le ux | Surface | Alberta | CN | Sec 22-43-28 W4M | 279320 | Grace Pap |

SCHEDULE 120
TO THAT CERTAIN AGREEMENT OF PURCHASH AND SALE OF THE STOCK OF GRACE PETROLEUM
CORPORATION DATED DECEMBER ___,1992 AND BEING BETWEEN GRACE ENERGY CORPORATION, AS SELLER,
AND SAMSON INVESTMENT CORPORATION, AS BUYER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| (041) | 90,030 AD | Ferrybeak | Bruev Virtue Miner | Surface | AJWeta | CM | Sec. 22-43-2* W4M | 279330 | Grace Pays |
| (041) | 90,030 AE | Ferrybank | Bruce Virtu* Millar | Surface | Alberti | CN | Scr. 22 43-28 W4M | 279350 | Grace Pay* |
| (042) | 90X30-AF | Haryberk | Donald A. Millar, H tts | Surface | Alberta | O4 | Sec. 22-43-23 W4M | 279370 | Grace Pay* |
| (043) | 90X30-AG | Ferrybank | Ira C. Snider, it ux | Strface | ABKerta | CN | Sec. 22-43-21 W4M | 27936U | Grace Roya |
| (044) | 90X32-AB | Penrbnak | Cary Kult fcanway at ax | Surface | Alberta | O4 | Sec. 36-43-28 W4M | 279230 | Partner Pay* |
| (045) | 90X35-AB | FoTybeak | PankUMtl | Klgbt-of-Way | Alberta | CN | Sec 10-44-28 W4M | 27V25D | No Rent Due |
| (046) | WX35-AC | Ferrybank | Frank Cbadl | Surface | Alberta | CN | Sec. 30-H-28 W4M | 279270 | Grace Pays |
| (047) | 90,035-AD | Ferrybank | Frank Chaefl | Surface | Alberta | CN | Sec 1044-28 W4M | 279400 | Gmoe Pays |
| (U8) | 90X36-AA | IVnybaoK | IhtUnUa Beethron | Surface | Alberta | CN | Sec 3-44-27 W4M | 279120 | Grace Pip |
| (049) | 90X39-AC | flyTTfctak | Roger J. Stewart, -t ox | Rlght-of Way | Alberta | CN | Sac 544-27 W4M | 279260 | No Rant Due |
| (050) | 90X40-AB | Perrykink | Carl Bieber | Surface | Alberta | CN | Sac 2-44-23 W4l4 | 279090 | Partner Pap |
| (151) | 90X41-AC | Ferrybank | Robot Guy Lafe, ct ux | Right-of-Way | Alberta | CN | Sec 244-21 W4M | 279270 | Nri Real Due |
| (052) | 90X40-AU) | Ferryfauk | K-aujd C. Mcfimofl, -t ux | Rlghd-of Way | After* | CN | Sec 244-28 W4M | 279270 | NuRmt Due |
| (053) | 90,04aAE | fnryfewk | Ronald ConUn McDowil | IUghKrf-Way | Alberta | CN | Sec 244-28 W4M | 279270 | No Rant Due |
| (054) | 90X41-AB | Ferrybank | Douglas Gordon hmc | Surface | Alxrta | CN | Sec 324327 W4M | 279280 | Cnce Pap |
| (155) | 90X41-AC | Ferrybank | Dauglai Goirkm Brw* | WghMfWay | After* | CN | Sac 3243-27 W4M | 279260 | No Rent Due |
| (056) | 90XO-AD | Ferrybank | Ikirtrian Brethren Cheech | Sinface | Afberta | CN | Sec. 3243-27 W4M | 279380 | Pariner Pap |
| (057) | 90,107-AC | Fenybeak | Jotepfe V: Bragg | Right-of Way | Alberta | CN | Sac 1144-28 W4M | 2792T11 | No Kent Due |
| (0511) | 90,168-AB | ForyWk | Hamid Sturt 1IKS, ct al | Surface | Alberta | CN | Sec 3043-27 W4M | 279000 | Grace Pap |
| (159) | 90J46-AA | Ferrybank | HuMerian Brethren of FBK | Sm-face | Alber* | CN | Sec 844-27 W4M | 279190 | Grace Rap |
| (060) | 90.147 AA | FmyWk | joseph Riestad | Surface | Alberta | CN | Sec. 5-44-27 W4M | 279190 | Cure Pap |
| (061) | 90,156-AC | Itnyfcwk | HatterUn Brethren | Surface | Alberta | CN | Sec. 844-27 W4M | 279280 | Grace Pap |
| (062) | 90X7B-AA | Ferryhaak | Joseph O. Prinriad | Surface | Alberta | CN | Sec 544-27 W4M | 279160 | Partner Pap |
| (163) | 90279-AA | Fforybeak | I kitartan Brede-an | Surface | Alberta | CN | Sec 1244-28 W4M | 279170 | Partner Pap |
| (164) | 90286 AB | Fftryflenk | Hmor U Donald MflUr | Surface | Alberta | CN | Sec 22-0-28 W4M | 279210 | Grace Pap |

SCHEDULE 1120
TO THAT CERTAIN AGREEMENT OF PURCHASE AND SALE OP THE STOCK OP GRACE PETROLEUM
CORPORATION DATED DECEMBER     1492 AND BEING BHTWFIN CRACK BNRRCY CORPORATION, ASSELLER.
AND SAMSON INVESTMENT CORPORATION. AS BUYER.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| n«) | 90.286-AC | faryNak | Donald A Millar, el ux | Surface | Alberta | Of | Sec 2243-28 W4M | 27X00 | Grace Pays |
| (166) | 901286-AD | faiyUak | Donald A Millar, et ux | Sac. 22-43-28 W4M | Alberta | Of | Sac. 22-43-28 W4M | 279340 | Grace Pap |
| 0671 | 90411-AD | FoTybaak | DougUa Cordon Bra** | Surface | Alberta | CN | Sec. 1-44-28 W4M | 279210 | Partner fays |
| O«) | 90412-AD | Ferrybaak | Carey ltreaee, e* ux | Surface | Alberta | CM | Sec 144-28 W4M | 5630 279240 | Graoe Pap |
| 0«) | 90460-AB | Farrybank | Hubert Rose, tt u | WgMofWay | Alberta | CN | Sec 144-28 W4M | 27927D | No Rent DM |
| 070) | 90460-AC | tarybwk | Nova | Rlgbt-cxf-Wiy | Alberta | CN | Sec. 144-28 W4M | 279270 | NoRantDna |
| (171) | 90.469-AA | faryfenk | Fraddte D. fohutan, at ux | Surface | Alberta | Of | Sec. 544-27 W4M | 279260 | Paid Up |
| 072J | 70,081-AB | Qlby | Thmes Maddcw | Right-ol.Way | Alberta | CN | Sec 641-3 WSM | 313U0 | No Rent Du* |
| 073) | 70,088-AC | GIlby | Thcen** F. Madden | Serfae* | Alberta | CN | Sec 641-3 W3M | 313100 | Partner Pap |
| 074) | 71VK8-AH | GJby | Herbet C Andaram | Rlgkb-nf-Way | Alberta | CN | Sac 641-3 W5M | 313110 | No Real Due |
| 075) | 70.QM-AF | Gilby | 1kbot C Andenna | tkefaer | Alberta | CN | Sec 641-3 WSM | 313110 | Partner Pap |
| (176) | 70,092-AA | Gilby | Rmal Thorp | Right-of-Way | Alberta | CN | Sec 3140-3 W5M | 313110 | No Rent Dsn |
| 077) | 70,095-AA | GUby | Ellas Dyrtand | Rlgltt-of-Way | Alberta | CN | Sec 19403 WSM | 313110 | Partner Pap |
| 078) | 70,095-AB | Qlby | Ella* Dyriand | Rlght-of-Way | Alberta | CN | Sec 19-403 W5M | 313110 | No Rent Due |
| 079) | 7D.126-AA | GBby | Alfred R. buoai | KlgM-ol-Way | Alberta | CN | Sac 3040-3 W5M | 313110 | No Rent Due |
| 0M> | 70,129AA | Cilby | Robert Satrap | Klgkt-of-Way | Alberta | CN | Sec 30403 W5M | 313110 | No Rail Du* |
| 081) | 90404-AD | Ham | Snell Panm Ltd. | Surface | Alberta | CN | Sac 20-25-2 W4M | 323790 | Partner Pap |
| Ofi) | 90477-AB | Havw, West | MSL 1858 | Surface | Alberta | CN | Sec 3-254 W4M | 360660 | Partner Pap |
| 083) | 90477-AC | I Uvw, West | Paid IL Dldk | Swfcce | Alberta | CN | Sec. 3-254 W4M | 350KD | Partner fap |
| 084) | 90477 AD | Havre. Wa* | MSL 1858-A | Surface | Alberta | Of | Sec 3-254 W4M | 350860 | Partoer Pap |
| 085) | 90478-AB | Hare*. Wart | Covrni MSL 1181 | Surface | Alberta | CN | Sac 20-254 W4M | 350840 | Partner fap |
| 086) | 90478-AC | Have*. Wert | (raak ] lothnan | Surface | Alberta | CN | Sec 20-254 W4M | 350810 | Partner fap |
| 087) | 90479-AB | Hsven, West | Gown MSL 1735 | Surface | Alberta | CN | Sec 13-254 W4M | 350860 | Piitnc Pap |
| 088) | 90478-AC | Haven. W»tl | Archi* D. Ashbacher | Seeface | Alberta | Of | Sec 13-254 W4M | 350850 | Partner Pap |
| <JJ>) | 90.437-AB | Hrlmvkle | Robed Wright | Surface | Albeit* | CN | Sec 9-25-6 W4M | 365230 | Partner fap |

SCHEDULE 1.20
TO THAT CERTAIN AGREEMENT OF PURCHASE AND SALE CF THE STOCK OP GRACE PETROLEUM
CORPORATION DATED DECEMBSC___ 1992 AND BEING innWEINCRACTIENERGY CORPORATION, ASSILLIIR,
AND SAMSON INVESTMENT CORPORATION, AS BUYER.

Par 9 *aitt*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| <190) | 90,086-AA | Httbon | Crow* MSL 289 | Swim | Albert* | CN | Sec. 25-30-3 W4M | 379014 | Grace *TAJ* | Well plugged; *PpBxd lor ReduiMtk* CwtOcate >0/7/92. |
| n76> | 90,086-AB | Ihicboa | DoiigUa B. 3V=M*aRO | Surfaa | Albert* | CN | Sec. 25-303 W4M | 379010 | Gcm Pap | Well plugged; applied for Redamabon Cartiflootie 10/7/92. |
| aw | 9<UU-AA | Ifudam | Oow* MSL 350 | Bfmc* | Albert* | CN | Sec 3030-2 W4M | 379000 | Grace Pap | |
| 090) | 90,112-AD | hhaleon | Douglas & Wntaturnl | Sudan | Albert* | CN | See 30302 W*A | 379000 | Grace P*p | |
| (in) | 90,114-AA | Hucfec* | Kdfh VVUUon Pool | Surface | Albert* | CN | Scal 20-30-2 W4M | 279030 | Cnn Pap | Wdi pfagged; appltsd hr Redamabna Grttfleat* 11/7/92. |
| CI9> | 90135-AA | Hudson | MSL 356 | Snrif | Albert* | CN | Sec 24-303 W4M | 379010 | Grace P*p | Well phigigi. rppBed foe Radcuutruct Certificate 10/7/92. |
| (196) | 90,U5-AS | Muck* | Ray Trrror | Siifan | Albert* | <N | Sec 24-303 W4M | 379040 | Gncee Pap | Well plugged, *pf*=l for Ro4*I**4a* Cartifdin 10/7/92. |
| (197) | 90126-AA | I hidan* | frank Dotrodcy | Swim | Albert* | CN | Scc 14303 W4M | 379C30 | Oan Pap | Well plugged; applied for Redamabon Certificate 10/7/92. |
| CI96) | 90,258-A* | )huckce | MSL 423 | Surface | AX>eta | CN | Scc 14303 W4M | 379Q00 | Grace Pap | Well plagged; appbcd for Roeialatoa Certificate 10/7/92. |
| 099) | 90,284-AA | I hdso* | Crown MSL 522 | Surface | Alberta | CN | Sec. 3303 W4M | 379060 | Grace Pap | Well phigged; appiod for Reflursabton Certificate 10/7/92. |
| am | 90,254-AB | Hutki* | *PM* I, Saedgekkl | Surface | Alberta | CN | Sec 3363 WllWt | 379060 | Ccac* Pap | Well phugfjd; appKed for Reclamation Certificate 10/7/92. |
| COI) | 90,329-AA | Hudson | Crown MSL 563 | Swfan | Albert* | CN | Sec 11-303 W4M | 379170 | Grace P*p | Well plugged; eppJUd far Reduutka CertWeate W/7/92. |
| cm | 90329 AB | Ihifkon | John Huffinan | Surface | Alberta | CN | Sec 11303 W4M | 379070 | Grace Pap | Well plugged; rpjAcd for Redamabun Oriflcal* 10/7/92. |

SCHEDULE 1.20
TO THAT CERTAIN AGREEMENT OF PURCHASE AND SALE OF THE STOCK OF GRACE PETROLEUM
CORPORATION DATED DECEMBER ___, 1992 AND KING BETWEEN GRACE ENERGY CORPORATION, AS SHAREHOLDER,
AND SAI CCN INVESTMENT CORPORATION, AS BUYER.

*g* tosrf 12

| (200) | 90,350-AB | Hudse* | Grown MSL 3110 | Surface | Alberta | CN | Sec 19-30-2 W4M | 3790BO | Grace Pay* | Wdl plugged; applied for J.Urfama Rem Certificate Ij/7/92. |
| (204) | K4350-AC | Dhukm | Ray W. Trevor | Surface | Alberta | CN | Sec. IN82 W4M | 379080 | Grace Pays | Wf Up fngg wtapplnd for Reduxaudan Ceriflkale 10/7/92. |
| (MS) | 711,874-AB | (arrow | B. R. Ericsson | Surface | Alberta | CN | 5*c 4-85-10 W4M | 458000 | Partner Ftp | |
| *cm* | 70,086-AA | Jarrow | Crown BCSL 4S4 | Surface | Alberta | CN | Sec. 11-45-10 W4M | 458000 | Partner Ftp | |
| *am* | 70,087-AB | (arrow | Aktha May Quagow | Surface | Aftrrii | CN | Sec 14-4510 W4M | 458000 | Partner Ftp | |
| CMS) | 70,089AA | farrow | Veterans Land Ad | Surface | Albrain | CN | Sec. 5-45-10 W4M | 458000 | Putw Pap | |
| *am* | 70,090-AB | farrow | Henry Ludwig Kaatan | Surface | Alberta | CN | Sec. 13-45-10 W4M | 458000 | Partner Pap | |
| (210) | 70,090-AC | (arrow | Henry Ludwig Katie* | Surface | Alberta | CN | Sec. 24-45-10 W4M | 451000 | Pnitnar Pap | |
| (211) | 7U,0nAAB | (arrow | Ludvig M. Batre | Surface | Alberta | CN | Sec 12-45-10 W4M | 458000 | Pnitnar Pap | |
| (212) | 70,097-AA | (arrow | Ole M. Raaunfc | Surface | Alberta | CN | Sec 19-459 W4M | 895560 | Partner Pap | |
| cm) | 70,041-AB | Laka Newel | Kenneth Dam | Sitfav | Alberta | CN | Sec 2-15-13 W4M | 31160 | Partner Pap | |
| a14) | 70100-AB | Uka Nrwdi | Garry 1. MiDa, ri us | Surface | Alberta | CN | Sec 2-15 13 W4M | 31160 | Partner Pap | |
| 0/5) | 70,081 AA | Laka Newel | C O. (oknean & Scan | Surface | Alberta | CN | Sac 16-15-14 W4M | 31190 | Partner Pap | |
| C18) | 70,118 AB | Lai* Newel | C O. Joknaon 4 Sons | Surface | Alberta | CN | Sec 28-15-14 W4M | 31170 | Partner Ftp | |
| C17) | 70,130-AA | lako Newell | Peter Draus | Surface | Alberta | CN | Sec 23-15-14 W4M | 31150 | Partner Ftp | |
| C18) | 90,455-AB | Lautine | Munio MacKcxude | Smfaca | Alberta | CN | Sec 8-28-5 W4M | 682550 | Partner Ftp | |
| ni9) | 90/430-AB | Lurky Strike | (oaeph Thomas Boed*, at al | Surface | Alberta | CN | 8W. 5-1-11 W4M | 719450 | Grace Ftp | Wed plugged; applied for Redumetion Ceriflkala 10/6/92. |
| *am* | 90,285 AA | Slbhald, Eant | Ibail L Style* | Surface | Alberta | CN | Sec 23-27-1 W4M | 789600 | Grace Ftp | |
| (221) | 90,285-AB | Slbbald, Hut | MSL 514 | Surface | Alberta | CN | Sec 23-27-1 W4M | 789600 | Grace Ftp | |
| 022) | 90,316-AA | Slbbald, East | TKeoduc Mandt | Suirfer | Alberta | CN | Sec 15-21-1 W4M | 789620 | Grace Ftp | |
| (223) | 90,410-An | SibWid, East | Crown MSL 2128 | Surface | Alberta | CN | Sec 3-28-1 W4M | 789670 | Partner Pap | |
| 024) | 90,410-AC | Sibhald, Eaal | Qvn Shentz | Surface | Alberta | CN | Sec 3 28-1 W*d | 789670 | Partner Pap | |

PagallerfU

SCHEDULE 120
TO THAT CBXTAM AGREEMENT OF PURCHASE AND SALE OF THE STCXX OF GRACH PETROLEUM
CORPORATION DATED DBCBMinm ___ 1992 AND BEING WTTVHIN GRACHRNRKCY CORPORATION, ASSKIIJMt,
AND SAMSON INVESTMENT CORIORATICN. AS BUYER.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 025) | 90,415-AD | aww*ia, FW* | Oown MSI 1730 | Surface | Aftxxta | CN | Sec. 3-21-1 W4M | 719670 | farmer Faya |
| 026) | 90410-AB | Sbk*id, Ecn* | clrm Shritlx | Suriaa | Alberta | CN | Sec. 3-25-1 W4M | 789670 | Farmer Pap |
| ‹227) | 90A1OAF | Stbbald, R—1 | Uun C Wfngfield | 9nrkr | Alberta | CN | Sec. 4 21-1 Vv*d | 789460 | Farmer Faya |
| C22H) | 90,410-AG | Sdbbald BUM | CN Crossing UC 5WI | Surface | Alberta | CN | SUL 3-28-1 W4M | 799470 | Partner faya |
| Cln | 80,025-AB | Viking-Kinecik | Robert Arnold Dicker, el nx | Surface | Alberta | CN | Sec. 32-45-1 W4M | 903221 | Grace Pap |
| 030) | •OIDO-AB | yitot-n—etk | Hobart Arnold RadUr, at ‹‹ | Surface | Alberta | CN | Sec. 29-45-1 W4M | 903251 | Grace Pap |
| 03JJ | mjm-Ac | VLktag-JCkwfla | Nortlwwbn UHlMca | Righter-Way | Alberta | CN | Set 29-45-8 W4M | 900250 | No Rodl DM |
| 032) | •0032-AB | VLUng-Kimela | Charfe* Hkfom Fmkm | Surface | Alberta | CN | Set 21-45-8 W4M | 903240 | Grace Pap |
| E233) | 80045-AB | Viking-Dneefla | Robert Arnold firdw, et ur | Surface | ABmrla | CN | Set 33-45-8 W4M | 900210 | Grace Pap |
| 030 | 90,134-AB | Vfqpj | OownMSL763S | Surface | Alberta | CN | Sac 32-114-5 W6M | 904010 | Grace Pap | Wd plugged; B?p*ed fer KoVVka Certlcate 10/7/92. |
| ‹236) | 90,134-AC | vifrf* | Crown LO 3f2H | Surface | Albrta | CN | Set 32-1145W6M, Sac S-115-5WfM | 901000 | Gnu* Pap | Wi·1 flugged; applied fat InJinaDun CwtMfwte 10/7/92. |
| 030) | 90134-AD | Vlrpo | Crown MS 7573 | Surface | Alberta | CN | Sec 32-114-5 W6M | 904000 | Grace Pap | Well plugged; appled far Rockmaihm Cfrtlicm# 10/7/92. |
| O37) | 90,134-AB | Virgo | Craw* M5L 6538 | Surface | Albwta | CN | Set 32-114-5 W6M | 904010 | Partner faya |
| 038) | 90,177-AB | Virgo | MSL Naa 7374 | Surface | Alberta | CN | Sec 23-114-6 W6M | 47100 | Partner fap |
| 039) | 90,259-A1 | Virgo | MSL7314 | Surface | AHwrta | CN | Sec 26-114-6 W6M | 47110 | Partner fap |
| a‹‹) | 90A3i-AB | Kbibcy | Norman MBae, rt 4 | Surface | Safiralrhewi* | CN | Sac 30-7-5 W2M | 496530 | Paifcur fap |
| OO) | 90431-AC | Klabey | Norman MB**, *t 4 | Surface | SeaJcalchrwa* | CN | Set 30-7-5 W7M | 496520 | Partner fap |
| 042) | 90,431-AD | Klobey | Norman MBn*. it 4 | Surface | Saaltaichew | CN | Set 30-7-5 WZM | | Partner fap |
| 043) | 90432-Afi | KMbejr | Vrttruluand Afi | Surface | SaaskatclamM | CN | Set 29-7-5 W2M | 496510 | Partner fap |
| 044) | 90,433-Afl | Klobey | Join Albert Hal* | Surface | Saskaldmran | CN | Set 29-7-5 W2M | 496540 | Partner fap |

SQIMDULB 1 J₃
TO THAT CURTAIN AGREEMENT OF PURCHASE AND SALE OF THE STOCK OF CBACB PKIYOUJUM
OOfiOBATON DAm)D₄K₄4BHi ___ Jl J2 AND BEING JCHTWHllJ GRACE ENERGY CORPORATICW, ASSELLER,
AMD SAM50N INVESTMENT CDRFCRATlCW, AS Bi/YDl.

Put ll  RtMagLmn*

| Lorar Dodptlan | Landlcrdl | Tenant | Date | Remarfes |
|---|---|---|---|---|
| Broadway Baocurfra Park lll | 9pflaidbig A Styz Ccxzparralkn (Ʒn* EBPOM Aaaofofr* Uarited PirlMnϑp) | Coco Pritroleun Corprmlkn | 12/4/71 | 9 Araaufawnki |
| Broadway Bmutirw Park O | Hr* Nufiztal Bank of Bextfzi (now llET TWw CorpeniknO | Grace Prtokmi Gaporrika | 5/1/17 | ~~~~~ |

e⁵ nm

EXHIBIT B to
Agreement for the Purchase and Sale
of the Stock of
Grace Petroleum Corporation

Wells for Which Drilling, Completion and Connection Costs
will not be Included as a Liability in the Calculation
of Net Realizable Assets

| Region | Well | Field |
|---|---|---|
| Gulf Coast | Wisenhan-Walker 7 | E McCook |
| Gulf Coast | State Lease 13946 No. (formerly The Richard (Levert) 2 | Thibodaux |
| Mid Continent | Leland (Burns) 2-35 (RF) | E Reydon |
| Mid Continent | Elk Woman 1 (RF) | N Hammon |
| Mid Continent | Flick 5-19 (RF) | N Hammon |
| Mid Continent | Flymore 28 1 (RF) | N Hammon |
| Mid Continent | Roberts 4-35 | Russelville |
| Mid Continent | Maxon 1-13 (RF) | W Strong City |
| Mid Continent | Melba 2-10 (RF) - 1350 | W Strong City |
| Rocky Mtns | Mary Fed 5-3 (Mesaverde) | Wy Madden |
| Gulf Coast | Sophie Martin 8 | Delores Creek |
| Gulf Coast | Barnes Estate No. 3 | Ortiz |
| Michigan | USA South Branch No. 1-16 | Four     Corners Prospect |

-74-

GEC 000150

EXHIBIT C to
Agreement for the Purchase and Sale
of the Stock of
Grace Petroleum Corporation

Non-Devonian Shale Section 29
Tax Credit Wells

| Region | Well | Field |
|---|---|---|
| Gulf Coast | Wisenhan-Walker 7 | E McCook |
| Mid Continent | Leland (Burns) 2-35 (RF) | E Reydon |
| Mid Continent | Elk Woman 1 (RF) | N Hammon |
| Mid Continent | Flick 5-19 (RF) | NHammon |
| Mid Continent | Marmaton 1-20 (M) | W Cheyenne |
| Mid Continent | Purvis 2-19 (M) | W Cheyenne |
| Rocky Mtns | Chevron Fed 3-1 (Lance) | Wy Madden |
| Mid Continent | Flymore 28 1 (RF) | NHammon |
| Mid Continent | Flynt 2-33 (RF) | N Hammon |
| Mid Continent | Bailey 2-21 (M) | W Cheyenne |
| Mid Continent | Maxon 1-13 (RF) | W Strong City |
| Mid Continent | Melba 2-10 (RF)-1350 | W Strong City |
| Rocky Mtns | Mary Fed 5-3 (Mesaverde) | Wy Madden |
| Mid Continent | Puffinbarger 4-20 | Indian Gulch |
| Gulf Coast | Lessor #1 | Belle Pepper |
| Gulf Coast | Sophie Martin 8 | Delores Creek |
| Gulf Coast | Barnes Estate No. 3 | Ortiz |

GEC 000151

EXHIBIT D

December      , 1992

[Buyer]

Gentlemen:

As General Counsel of W. R. Grace & Co.-Conn., a Connecticut corporation ("Grace"), I have been asked to render my opinion to you in connection with the closing under the Agreement for the Purchase and Sale of dated December 30, 1992 (the "Purchase Agreement") by and among Grace, and [Buyer], a Delaware corporation ("Buyer")

In connection with this opinion, I have examined or caused to be examined the Purchase Agreement; [describe any ancillary agreements]; (collectively, the "Ancillary Agreements"); the Certificate of Incorporation and By-Laws of Grace, each as amended to date; the records of Grace's corporate proceedings; and such other documents as I have deemed necessary for purposes of the opinions hereinafter expressed.

Based upon the foregoing, I am of the opinion that:

1.    Grace is a corporation duly organized, validly existing and in good standing under the laws of the State of Connecticut, with full corporate power to enter into the Purchase Agreement and the Ancillary Agreements and perform its obligations thereunder.

2.    The execution and delivery by Grace of the Purchase Agreement and the Ancillary Agreements, and the performance by Grace of its obligations thereunder, have been duly and validly authorized by all necessary corporate action of Grace.  The Purchase Agreement and the Ancillary Agreements have been duly executed and validly delivered by Grace.

This opinion is limited to specific issues addressed herein and is limited in all respects to laws and interpretations thereof existing on the date hereof.  I do not undertake to update this opinion for changes in such laws or interpretations.  This opinion is furnished solely for your benefit in connection with the above-referenced closing and is not to be relied upon for any other purpose or made available to any other person, firm or entity without my express prior written consent.

Very truly yours,

EXHIBIT E

December       , 1992

[Buyer]

Gentlemen:

As Vice President – General Counsel of Samson Investment Company, a Nevada corporation ("Samson"), I have been asked to render my opinion to you in Connection with the closing under the Stock Purchase Agreement relating to Grace Petroleum Corporation dated December 30, 1992 (the "Purchase Agreement") by and among Grace and Samson ("Buyer").

In connection with this opinion, I have examined or caused to be examined the Purchase Agreement; [describe any ancillary agreements]; (collectively, the "Ancillary Agreements"); the Certificate of Incorporation and By-Laws of Samson, each as amended to date; the records of Samson's corporate proceedings; and such other documents as I have deemed necessary for purposes of the opinions hereinafter expressed.

Based upon the foregoing, I am of the opinion that:

1.    Samson is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada, with full corporate power to enter into the Purchase Agreement and the Ancillary Agreements and perform its obligations thereunder.

2.    The execution and delivery by Samson of the Purchase Agreement and the Ancillary Agreements, and the performance by Samson of its obligations thereunder, have been duly and validly authorized by all necessary corporate action of Samson.  The Purchase Agreement and the Ancillary Agreements have been duly executed and validly delivered by Samson.

This opinion is limited to specific issues addressed herein and is limited in all respects to laws and interpretations thereof existing on the date hereof.  I do not undertake to update this opinion for changes in such laws or interpretations.  This opinion is furnished solely for your benefit in connection with the above-referenced closing and is not to be relied upon for any other purpose or made available to any other person, firm or entity without my express prior written consent.

Very truly yours,

Jack A. Canon

5c K«4K l«s. -fo þec.fi ei\ 5. £/

|  | (1) | (2) | (3) | (4 | (5) |
|---|---|---|---|---|---|
|  |  |  |  |  | Balance Sheet D/1000L ... |
|  | GPC Ending (l) 11-30-02 |  | Add (Remove) |  |  |
| Lha No. |  | Thomasville | E. Texas (l07)(.) | Subtotal |  |
| (1) Cash | 2,447 |  |  | 2,340 |  |
| (2) Note Rcc from Affiliate | 2,142 |  |  | 2,142 |  |
| (3) JIB (Net) | 2,863 |  | (302) | 2,501 |  |
| (4) Oil 4 Gas Sales | 16,623 | (377) | (1,372) | 15,074 |  |
| (5) Inventories - Other | 1,863 |  |  | 1,863 |  |
| (6) Int-coriosis - Crude Oil 4 Gas | 908 |  | (92) | 966 |  |
| (7) Well Control Insurance (prepaid) | 272 | (13) |  | 257 |  |
| (8) Workman'' Comp Ins (prepaid) | 104 |  |  | 104 |  |
| (9) Other Current Assets | 49 |  |  | 49 |  |
| (10) Total Current Assets | 26,571 | (302) | (1,853) | 24,226 |  |
|  |  |  |  |  |  |
| (11) Producing Properties | 647,000 | (73,636) | (75,710)(b) | 407,753 |  |
| (12) Less Accum DD&A | (448,706) | 49,60 | -40,708 | (349,302) |  |
| (13) Exploratory Acreage | 3,377 |  |  | 3,377 |  |
| (14) Less Accum DD&A | (150) |  |  | (150) |  |
| (15) Gas Plant 4 Other | 6,350 |  |  | 8,350 |  |
| (16) Less Accum. DD&A | (5,036) |  |  | (5,036) |  |
| (17) Pursue Investment | 4,562 | (4,582) |  |  |  |
| (18) Other Partnerships Inv | 3,605 |  |  | 3,805 |  |
| (19) Deferred Pension Costs | 506 |  |  | 506 |  |
| (20) Club Memberships | 70 |  |  | 70 |  |
| (21) Util/OB Deposits | 13 |  |  | 13 |  |
| (22) Other Non Current Assets | 127 |  |  | 127 |  |
| (23) Total Assets | 236,692 | (29,604) | (27,665) | 191,623 |  |
|  |  |  |  |  |  |
| (24) Accounts Payable | 18,457 | (135 | (2,358)(a) | 14,164 |  |
| (25) Taxes Payable - Current | 1,497 |  |  | 1,497 |  |
| (26) Taxes Payable - Deferred | 4,487 |  |  | 4,407 |  |
| (27) Accrued Payroll Taxes | 171 |  |  | 171 |  |
| (28) Accrued PayTd 4 Benefits | 213 |  |  | 213 |  |
| (29) LOE Accruals | 1,240 | (121[ | (11-) | 1,014 |  |
| (30) G&A Accruals | 340 |  |  | 340 |  |
| (31) Ad valorem Accruals | 961 |  |  | 961 |  |
| (32) Current ICP | 400 |  |  | 400 |  |
| (33) Production Taxes Payable | 418 | (21' | dooo) | 291 |  |
| (34) Other Accruals | 1,310 |  | (107) | 1,212 |  |
| (35) Other Current Liabilities | 3,362 |  |  | 3,362 |  |
| (36) Total Current Liabilities | 38,674 | (277) | (2,485) | 26,312 |  |
|  |  |  |  |  |  |
| (37) Deferred Income | 337 |  |  | 337 |  |
| (38) Deferred Taxes - IDC | 36,587 | 20 | (9,406) | 32,007 |  |
| (39) Deferred Taxes - Other | (0,621) |  |  | (0,621) |  |
| (40) Other Non Current Liabilities |  |  |  |  |  |
| (41) Total Liabilities | 59,157 | <28 | (6,901) | 52,225- |  |
|  |  |  |  |  |  |
| (42) Capital | 116,120 |  |  | 118,120 |  |
| (43) Retained Earnings | 87,663 |  |  | 87,663 |  |
| (44) Advance (To) Grace | (35,253) | (26753[ | (18,684) | (67,894) |  |
| (45) Total Equity | 178,535. | 125,753) | (18M) | 122,999 |  |
|  |  |  |  |  |  |
| (46) Total Liabilities 4 Equity | 236,602 | (29,604] | (27,665) | 101,023 |  |

(a) Represents escrowed plugging cost for Bear gratis wells.

(b) Includes $2,332,000 of work in progress.

(c) Item in suspense. GPC has cash or unprocessed to WRG, rightful owner it currently unknown.

ScUedM*          Secf.ou.

GLSR07      PRELIMINARY  BALANCE SHEET
            COMPANY 800 GPC CONSOLIDATED
            MONTH ENDING NOVEMBER 30, 1992

| Acct | Description | Amount | Total |
|---|---|---|---|
| 100-001 | CASH-BANK  OF  OK-GENERAL  FUND | 21,190.38 | |
| 100-002 | CASH-BANK  OF  OK-LEASE  RENTAL | 3,856.78 | |
| 100-003 | CASH-BANK  OF  OK-PAYROLL | 10,000.00 | |
| 100-005 | CASH-BANK  OF  OK•ESC•REHKOPF | 16,559.36 | |
| 100-006 | CASH-BANK  OF  OK•ESC•BEARGR ASS | 108,897.26 | |
| 100-007 | CASH-BANK  OF  OK-ESC-MVG | 466,520.35 | |
| 100-021 | CASH-BOATMENS-GEN  FUND | 197,962.95 | |
| 100-025 | CASH-BOATMENS-ESC-MORLAN  1-25 | .00 | |
| 100-026 | CASH-BOATMENS-ESC-LEGGETT  ETAL | 6,506.13 | |
| 100-051 | CASH-CHEM  BNK  OF  NY-GEN  FUND | 2,236,820.35• | |
| 100-052 | CASH-CHEM  BNK  OF  NY-OAG  DISTR | 468,268.61• | |
| 100-201 | PETTY  CASH-OKLA  CITY-ADMIN | 629.00 | |
| 100-202 | PETTY  CASH-OKLA  CITY-GEN | 100.00 | |
| 100-501 | REMITTANCES  IN  TRANSIT-U.S. | .00 | |
| 102-001 | CASH-ROY  BNK  OF  CAN-ROYALTY | 915,507.32 | |
| 102-002 | CASH-ROY  BNK  OF  CAN-OPERATING | 4,562,985.11 | |
| 102-003 | CASH-ROY  BNK  OF  CAN-GRACE  CONC | 69,631.48 | |
| 102-900 | CASH-FINANCIAL  ADJS | 1,226,135.38• | |
|  | CASH | | 2,447,121.78 ** |
| 110-001 | NOTES  RECEIVABLE-PRI | .00 | |
| 110-003 | NOTES  RECEIVABLE-DIGICON | .00 | |
| 140-302 | INTER-CO  NOTES  REC-HOMCO | 2,142,250.00 | |
|  | NOTES  RECEIVABLE  -  CURRENT | | 2,142,250.00 ** |
| 110-101 | ACCTS  REC-JIB-CURRENT | 2,399,205.10 | |
| 110-102 | ACCTS  REC-JIB-PREPAID | 174,938.59• | |
| 110-115 | ACCTS  REC-JIB-CREDIT  FOR  ALLOW | 64,236.20• | |
| 110-116 | ACCTS  REC-JIB-FIN  ADJS | 878,571.56 | |
| 110-110 | ACCTS  REC-EMPLOYEES | 10,908.88 | |
|  | ACCOUNTS  RECEIVABLE  -  JIB | | 3,049,510.75 ** |
| 110-201 | ACCTS  REC-O&G- CURRENT | 6,718,349.23 | |
| 110-205 | ACCTS  REC-O&G-ACCRUALS | 6,349,278.67 | |
| 110-206 | ACCTS  REC-O&G-FINANCIAL  ADJS | 2,395,774.00 | |
| 110-207 | ACCTS  REC-O&G-ACCRUAL FIN  ADJS | 1,331,807.00 | |
| 110-215 | ACCTS  REC-O&G-WYG  PROD  TAX | .00 | |
| 110-217 | ACCTS  REC-O&G-SUSP.  BULMER | 27,867.62 | |
| 110-220 | ACCTS  REC-OAG-GPC  MARKETING | .00 | |
|  | ACCOUNTS  RECEIVABLE  -  OIL  4 GA | | 16,823,076.52 ** |
| 111-001 | ALLOWANCE  FOR  DOUBTFUL  ACCTS | 66,871.66 | |
|  | ALLOWANCE  FOR  DOUBTFUL  ACCTS | | 66,871.66-** |
| 120-001 | INVENTORY-EXTRACT•CRUDE  OIL | 477,443.51 | |
| 120-002 | INVENTORY-EXTRACT- GAS  PIPELINE | 119,964.92 | |
|  | INVENTORY  -  EXTRACTIVES | | 597,408.43 ** |
| 120-101 | INVEN-WHSE  STK-TUBULARS  &  EGP | 837,962.43 | |
| 120-180 | INVEN-WHSE  STK-REVENUE | 1,604.04• | |
| 120-190 | INVEN-WHSE  STK-CAPITALIZED  G&A | 226,984.57 | |
|  | INVENTORY  -  WAREHOUSE  STOCK | | 1,063,3 4 2.96 ** |
| 130-001 | PREPAID  EXP- INSURANCE | .00 | |
| 130-002 | PREPAID  EXP-DOMESTIC  PROP  INS | 26,334.00 | |
| 130-003 | PREPAID  EXP-AUTO  INS | 8,409.00 | |
| 130-004 | PREPAID  EXP-BUS  TRAVEL  INS | 365.30 | |

```
GLSR07      PRELIMIHART BALANCE SHEET                                                              PAGE    2
            COMPANY 800 GPC CONSOLIDATED                                                    15:16:01  12/09/92
            MONTH ENDING NOVEMBER 30, 1992

                                            ** CONTINUED **
        130-053   PREPAID  EXP-UELL BONDS                      13,454.76
        330-101   WORKMENS  COMP-GRACE  SHARE                 194,420.42
        331-002   INSURANCE-CONTROL  OF WELL                  271,677.86
                  PREPAID  EXPENSES                                               514,661.34 **

                  TOTAL  CURRENT  ASSETS                                       26,570,500.12 ***


        141-001   INVEST-PARTNER SHIP-PURSUE                 4,581,552.65
        141-004   INVEST-PARTNER SHIP- SPARTAN               1,227,528.38
                  INVESTMENT IN PARTNERSHIPS                                    5,809,081.03 **

        141-101   INVEST-JT  VENTURE-COMITE                    665,928.62
        141-102   INVEST-JT  VENTURE-BUTLER                     90,989.60
        141-301   INVEST-MISC-CO  OWN MEMBERSHIPS               69,965.00
                  INVESTMENTS  -  OTHER                                           826,883.22 **

        140-001   INVEST  IN  AFFILIATED  CO                         .00
        140-010   INVEST  IN  AFFILIATED  CO-CONTRA                  .00
        141-002   INVEST-PARTNER SHIP-STONE  83                480,287.64
        141-003   INVEST-PARTNERSHIP-STONE  85                904,116.62
        141-201   INVEST-COMMON  STOCK-HAWKINS                 16,269.75
        141-203   INVEST-COMMON  STOCK-CHAPMAN                      1.00
        141-204   INVEST-COMMON  STOCK-TAURUS                       1.00
        141-205   INVEST-COMMON  STOCK-SUMATRA                      1.00
        141-206   INVEST-COMMON  STOCK-DISCOVERY                    1.00
        141-210   INVEST-STOCK  WARRANTS-DIGICON                    .00
        143-001   DEPOSITS  RECEIVABLE-UTILITIES               12,622.17
        143-010   DEFERRED  PENSION  COST                     596,000.00
        143-012   DEPOSITS  RECEIVABLE-OTHER                    9,770.39
        145-001   DEFER-REBATE-CANADIAN  CR  ROY                    .11
        145-010   DEFER-ADVANCE-80  DRLG  PROGRAM             509,907.47
        145-012   DEFER-ADVANCE-81  DRLG  PROGRAM                   .00
        145-013   DEFER-ADVANCE-81  DRL  PROG-CNTR                  .00
        145-020   DEFER  CHGS-REV  BOND  EXPENSE                    .00
        145-022   DEFER  CHGS-REV  BOND  EXP  RESERV                .00
        145-025   DEFER  CHGS-MADDEN  PROD  TAXES                   .00
        145-026   DEFER  CHGS-CRUMP  EST.  PROD  TAX          4,922.04
        145-028   DEFER  CHGS-HURRICANE  INS  REC            106,482.96
        145-030   DEFER  CHGS-OTHER                            6,460.74
                  DEFERRED  CHARGES  &  MISC  ASSETS                            2,646,843.89 **

        140-101   INTER-CO  A/R-A/P-COMPUTER                  410,019.91
        140-109   INTER-CO  A/R-A/P-COMP  CONTRA                    .00
        140-121   INTER-CO  A/R-A/P-MANUAL                    410,019.91-
        140-129   INTER-CO  A/R-A/P-MAN  CONTRA                     .00
                  INTER-COMPANY  REC/PAY                                                .00 **

        145-501   CODING  SUSP-FINANCIAL                           .00
        145-502   CODING  SUSP-O & G  REVENUE                      .00
        145-503   CODING  SUSP-A/P, OPERATED                       .00
        145-504   CODING  SUSP-JOINT  INTEREST                     .00
        145-505   CODING  SUSP-PP&E                                .00
        145-506   CODING  SUSP-TREASURY                            .00
        145-507   CODING  SUSP-O&G,  PETRODYNE                     .00
```

```
GLSR07     PRELIMINARY BALANCE SHEET                                                      PAGE    3
           COMPANY 800 GPC CONSOLIDATED                                          15:16:01 12/09/92
           MONTH ENDING NOVEMBER 30, 1992

                                        ** CONTINUED **
           145-508   CODING SUSP-ACCTS PAY, NON-OP              .00
                       SUSPENSE CODING                                              .00 **

                      TOTAL OTHER ASSETS                                    9,282,808.14 ***


           151-001   FEE LAND-BAL FWD                     36,200.00
                       LAND                                                    36,200.00 **

           152-001   BUILDINGS-BAL FWD                     4,189.23
           152-003   BUILDINGS-SALES                       4,189.23-
                       BUILDINGS                                                    .00 **

           153-001   EQUIP-WAREHOUSE-BAL FWD              79,779.57
                       OILFIELD FACILITIES & SERVICES                         79,779.57 **

           155-001   LEASEHOLD-PROD-BAL FWD           292,663,464.45
           155-002   LEASEHOLD-PROD-ACQUISITIONS         683,228.81
           155-003   LEASEHOLD-PROD-SALES              1,556,149.62-
           155-004   LEASEHOLD-PROD-TRANSFERS            565,032.61
           155-006   LEASEHOLD-PROD-CONV ADDITIONS       151,107.04
           190-100   LEASEHOLD-PROD-FINANCIAL ADJS       638,099.51
           155-101   LEASEHOLD-PROD-LEASE BONUS           49,704.37-
           155-202   LEASEHOLD-PROD-BROKERAGE COST         9,426.81
           155-203   LEASEHOLD-PROD-CONSULTANT FEES        1,939.53
           155-104   LEASEHOLD-PROD-LEGAL-REGULATE        35,738.91
           155-106   LEASEHOLD-PROD-LEGAL-LITIGATE        18,186.42
           155-107   LEASEHOLD-PROD-LEGAL-MISC            14,883.00
           155-109   LEASEHOLD-PROD-OTHER COSTS            1,109.30
           155-205   LEASEHOLD-PROD-LEGAL-TITLE OP        11,556.57
           155-216   LEASEHOLD-PROD-ABSTRACTS                  .00
           155-217   LEASEHOLD-PROD-RECORDING FEES            24.95
           155-280   LEASEHOLD-PROD-OUTSIDE OPERATE      104,306.25
           156-001   LEASEHOLD-PROD-ROY-BAL FWD        2,765,134.74
           156-003   LEASEHOLD-PROD-ROY-SALES              9,533.38-
           156-004   LEASEHOLD-PROD-ROY-TRANSFERS             .00
           156-100   LEASEHOLD-PROD-ROY-ADDITIONS             .00
           157-001   LEASEHOLD-PROVED UND-BAL FWD      1,680,369.82
           157-004   LEASEHOLD-PROVED UND-TRANSFERS      542,269.00-
                       LEASEHOLD - PRODUCING                               297,185,952.35 **

           158-001   EQP-WL-BALANCE FORWARD           106,896,128.84
           158-002   EQP-WL-ACQUISITIONS                 372,551.54
           158-003   EQP-WL-SALES                      3,226,805.17-
           158-004   EQP-WL-TRANSFERS                    622,584.86
           158-006   EQP-WL-CONV ADDITIONS               971,781.01
           190-200   EQUIP-WELL-FINANCIAL ADJS           804,320.71-
           158-131   EQP-WL-D&C-MISCELLANEOUS              4,020.25-
           158-140   EQP-WL-D&C-CSG-CONDUCTOR             11,191.23
           158-141   EQP-WL-D&C-CSG-SURFACE              485,798.32
           158-142   EQP-WL-D&C-CSG-INTERMEDIATE          12,516.38
           158-143   EQP-WL-D&C-CSG-PRODUCTION           257,903.13
           158-144   EQP-WL-D&C-CSG- LINER                11,440.49
           158-147   EQP-WL-D&C-TUBING                   255,055.48
           158-150   EQP-WL-D&C-SUBSURFACE EQUIP          74,519.29
```

GLSR07    PRELIMINARY BALANCE SHEET
          COMPANY 800 GPC CONSOLIDATED
          MONTH ENDING NOVEMBER 30, 1992

**  CONTINUED  **

| | | |
|---|---|---|
| 158-151 | EQP-WL-DAC-WELLHEAD EQUIPMENT | 92,800.08 |
| 158-152 | EQP-WL-DSC-PRIME MOVERS | 40,409.52 |
| 158-153 | EQP-WL-DAC-BATTERY EQUIPMENT | 159,876.04 |
| 158-154 | EQP-WL-DAC-LEASE LINES | 12,702.99 |
| 158-212 | EQP-WL-DAC-LOCAT ION A ROAD | 335.59 |
| 158-225 | EQP-WL-DAC-TRANSPORT AT ION | 53,756.24 |
| 158-231 | EQP-WL-DAC-MISCELLANEOUS | 15,992.08- |
| 158-246 | EQP-WL-DAC-CSG-FLOAT EQUIPMENT | 7,546.33 |
| 158-248 | EQP-WL-DAC-TUBING SUBS | 5,064.13 |
| 158-250 | EQP-WL-DAC-SUBSURFACE EQUIP | 41,413.91 |
| 158-251 | EQP-WL-DAC-WELLHEAD EQUIPMENT | 62,046.27 |
| 158-255 | EQP-WL-DAC-ELECTRICAL INSTALL | 8,527.71 |
| 158-256 | EQP-WL-DAC-MISC CONNECTIONS | 39,570.76 |
| 158-257 | EQP-WL-DAC-NON CONTROLLABLE EQ | 52,603.79 |
| 158-258 | EQP-WL-DAC-INSTALLATION | 201,328.05 |
| 158-280 | EQP-WL-DAC-OUTSIDE OPERATED | 4,841,234.97 |
| 159-131 | EQP-WL-ADD-MISCELLANEOUS | 1,766,522.94- |
| 159-141 | EQP-WL-ADD-CSG-SURFACE | 11,609.89- |
| 159-143 | EQP-WL-ADD-CSG-PRODUCTION | 3,804.47- |
| 159-147 | EQP-WL-ADD-TUBING | 44,478.43 |
| 159-150 | EQP-WL-ADD-SUBSURFACE EQUIP | 109,772.82 |
| 159-151 | EQP-WL-ADD-WELLHEAD EQUIPMENT | 7,444.85- |
| 159-152 | EQP-WL-ADD-PRIME MOVERS | 17,465.40 |
| 159-153 | EQP-WL-ADD-BATTERY EQUIPMENT | 44,727.18 |
| 159-154 | EQP-WL-ADD-LEASE LINES | 14,961.85 |
| 159-180 | EQP-WL-ADD-OUTSIDE OPERATED | 4,674.64- |
| 159-212 | EQP-WL-ADD-LOCAT ION A ROAD | 4,651.12 |
| 159-213 | EQP-WL-ADD-WELLSITE CONSULTANT | 1,719.00 |
| 159-224 | EQP-WL-ADD-RENTAL TOOLS/EQUIP | 1,234.61 |
| 159-225 | EQP-WL-ADD-TRANSPORTATION | 10,802.69 |
| 159-227 | EQP-WL-ADD-PLUG A ABANDON | 393,213.46 |
| 159-229 | EQP-WL-ADD-OVERHEAD | 674.65 |
| 159-231 | EQP-WL-ADD-MISCELLANEOUS | 20,501.57- |
| 159-246 | EQP-WL-ADD-CSG-FLOAT EQUIPMENT | 249.21- |
| 159-248 | EQP-WL-ADD-TUBING SUBS | 1,982.48 |
| 159-250 | EQP-WL-ADD-SUBSURFACE EQUIP | 72,060.96 |
| 159-251 | EQP-WL-ADD-WELLHEAD EQUIPMENT | 21,799.44 |
| 159-255 | EQP-WL-ADD-ELECTRICAL INSTALL | 6,376.42 |
| 159-256 | EQP-WL-ADD-MISC CONNECTIONS | 30,894.47 |
| 159-257 | EQP-WL-ADD-NON CONTROLLABLE EQ | 54,035.12 |
| 159-258 | EQP-WL-ADD-INSTALLATION | 141,230.23 |
| 159-260 | EQP-WL-ADD-ENVIR- INSTALLATION | 321.38 |
| 159-280 | EQP-WL-ADD-OUTSIDE OPERATED | 562,344.14 |
| 159-401 | EQP-WL-ADD-CAPITALIZED YARDS | 167,894.52 |
| | LEASE 4 WELL EQUIPMENT | | 111,427,381.54 ** |

| | | |
|---|---|---|
| 160-001 | IDC-BALANCE FORWARD | 223,287,409.39 |
| 160-002 | IDC-ACQUISITIONS | .00 |
| 160-003 | IDC-SALES | 4,238,397.87- |
| 160-004 | IDC- TRANSFERS | 589,479.29- |
| 160-006 | IDC-CONV ADDITIONS | 135,104.56- |
| 190-300 | IDC-FINANCIAL ADJS. | 839,581.80- |
| 160-131 | IDC-MISCELLANEOUS | 17,290.49 |
| 160-180 | IDC-OUTSIDE OPERATED | 8,918.99 |
| 160-201 | IDC-MOVE IN, RIG UP, MOVE OUT | 1,666.67 |

```
GLSR07        PRELIMINARY  BALANCE  SHEET                                                                    PAGE     5
              COMPANY  800  GPC  CONSOLIDATED                                                    15:16:01  12/09/92
              MONTH ENDING  NOVEMBER 30,  1992

                                      ** CONTINUED **
              160-202    IDC-FOOTAGE  DRILLING                    139,708.29
              160-203    IDC-DAYWORK  DRILLING                    141,082.93
              160-204    IDC-TURNKEY  DRILLING                  1,654,050.36
              160-206    IDC-COMPL  OR  SERVICE  RIG              467,329.04
              160-207    IDC-FUEL,  WATER  OR  POWER               47,080.37
              160-208    IDC-MUD  OR  CHEMICALS                    70,479.47
              160-209    IOC-WASTE  DISPOSAL                       12,339.24
              160-210    IDC-BITS  OR  COREHEADS                    4,612.36
              160-211    IDC-SURVEY,PERMIT  &  REGULATORY          36,229.57
              160-212    IDC-LOCATION  WORK  &  ROAD              527,858.50
              160-213    IDC-WELLSITE  CONSULTANTS                151,367.80
              160-214    IDC-TESTING                               23,535.88
              160-215    IDC-LOGGING                              191,493.78
              160-216    IDC-CORING/CORE  ANALYSIS                 21,094.40
              160-217    IDC-WIREL SNE  SERVICE                    63,213.83
              160-218    IDC-CONTRACT  LABOR/SERVICE              265,899.46
              160-219    IDC-COMPANY  LABOR                         6,596.93
              160-220    IDC-CEMENTING  &  CEMENT  SERVICE        178,431.95
              160-221    IDC-PERFORATING                          209,841.32
              160-222    IDC-FRACTURE/GRAVEL  PACK              1,213,530.58
              160-223    IDC-ACIDIZE  &  STIMULATE                 45,587.92
              160-224    IDC-RENTAL  TOOLS  &  EQUIP              289,251.00
              160-225    IDC-TRANSPORTATION                       178,507.98
              160-226    IDC-MUD  LOGGER                           51,088.15
              160-227    IDC-PLUG  &  ABANDON                       7,865.81
              160-228    IDC-DAMAGES                               62,427.96
              160-229    IDC-OVERHEAD                              52,166.79
              160-230    IDC-INSURANCE                            125,749.63
              180-231    IDC-MISCELLANEOUS                      1,716,816.10
              160-245    IDC-CASING  INSPECTION                   114,937.12
              160-249    IDC-TUBING  INSPECTION                    87,312.35
              160-260    IDC-ENVIR-INSTALLATION                    1,579.81
              160-261    IDC-ENVIR-TRANSPORTATION                  1,091.89
              160-263    IDC-ENVIR-H2S  PROTECTION                   730.91
              160-273    IDC-PREPAYMENT                         4,577,274.16
              160-280    IOC-OUTSIDE  OPERATED                 10,524,132.81
              193-001    DELETED  INTEREST-JIB                    371,865.15-
                         INTANGIBLE  DEVELOPMENT  COST                             236,969,521.12  **

              163-001    EQP-GAS  PLT-BALANCE  FORWARD          7,023,418.90
              163-003    EQP-GAS  PLT-SALES                     6,187,705.80-
              163-004    EQP-GAS  PLT-TRANSFERS                          .00
              163-006    EQP-GAS  PLT-CONV  ADDITION              278,568.00
              163-101    EQP-GAS  PLT-CONTROLLABLE               148,237.61-
              163-201    EQP-GAS  PLT-NON  CONTROLLABLE           31,884.28
              163-202    EQP-GAS  PLT-INSTALLATION                53,234.84
              163-280    EQP-GAS  PLT-OUTSIDE  OPERATED           65,394.47
                         GAS  PLANT  &  GATHERING                               1,116,557.08  **

              165-001    LEASEHOLD-NON  PROD-BAL  FWD           6,235,448.52
              165-002    LEASEHOLD-NON  PROD-ACQUISITION                 .00
              165-003    LEASEHOLD-NON  PROD-SALES             3,782,787.05-
              165-004    LEASEHOLD-NON  PROD-TRANSFERS           680,827.83-
              165-006    LEASEHOLD-NON  PROD-CONV  ADD             1,304.85-
              165-101    LEASEHOLD-NON  PROD-LEASE  BONUS       1,129,473.76
```

```
GLSR07      PRELIMINARY  BALANCE  SHEET                                                    PAGE      6
            COMPANY  800  GPC  CONSOLIDATED                                           15:16:01  12/09/92
            MONTH  ENDING  NOVEMBER  30,  1992
```

```
                                    ** CONTINUED **
     165-202   LEASEHOLD-NON PROD-BROKER  COST            176,251.64
     165-104   LEASEHOLD-NON  PROD-LEGAL-REGUL             40,583.68
     165-205   LEASEHOLD-NON  PROD-LEGAL-TITLE            132,875.38
     165-106   LEASEHOLD-NON  PROD-LEGAL-LITIG             72,365.78
     165-107   LEASEHOLD-NON  PROD-LEGAL-MISC               5,411.55
     165-208   LEASEHOLD-NON PROD-PROSP GEN                32,000.00-
     165-109   LEASEHOLD-NON  PROD-OTHER  COSTS             5,827.21
     165-216   LEASEHOLD-NON  PROD-ABSTRACTS               12,611.06
     165-217   LEASEHOLD-NON  PROD-RECORD FEES              4,546.93
     165-280   LEASEHOLD-NON PROD-OUTSIDE OP               59,934.98
     190-400   NON-PROD LSHLD-FIN ADJS                      1,135.54-
               NON-PRODUCING  LEASEHOLD  COST                          3,377,265.22 **

     171-001   EQUIP-AUTO-BALANCE  FORWARD                 53,948.78
               TRANSPORTATION  EQUIPMENT                                  53,948.78 **

     172-001   EQP-FACIL-BALANCE  FORWARD                  19,681.28-
     172-003   EQP-FACIL-SALES                                   .00
     172-004   EQP-FACIL-TRANSFERS                        386,421.74-
     172-006   EQP-FACIL-CONV  ADDITIONS                   20,149.80
     172-131   EQP-FACIL-MISCELLANEOUS                     20,149.80-
     172-153   EQP-FACIL-BATTERY  EQUIPMENT                 5,195.11
     172-256   EQP-FACIL-MISC CONNECTIONS                   2,959.57
     172-257   EQP-FACIL-NON CONTROLLABLE EQP                 332.01-
     172-258   EQP-FACIL- INSTALLATION                      4,076.68
     172-260   EQP-FACIL-ENVIR-INSTALLATION                  521.43
     172-280   EQP-FACIL-OUTSIDE OPERATED                 373,097.81
     190-600   EQUIP-FACIL-FIN ADJS                             .00
     174-001   EQUIP-VISUAL  TRAIN-BAL  FWD                84,538.29
     174-003   EQUIP-VISUAL  TRAIN-SALES                   84,538.29-
     175-001   FURN & FIX-BAL  FWD                      1,516,259.19
     175-003   FURN & FIX-SALES                             6,140.00-
     175-100   FURN & FIX-ADDITIONS                        25,795.80
     177-001   LEASEHOLD  IMPROVE-BAL  FWD              1,303,990.49
     177-100   LEASEHOLD  IMPROVE-ADDITIONS                12,807.55
     178-001   EQUIP-COMPUTER-BAL  FWD  FWD             2,641,952.18
     178-003   EQUIP-COMPUTER-SALES                       537,422.90-
     178-004   EQUIP-COMPUTER-TRANSFERS                         .00
     178-100   EQUIP-COMPUTER-ADDITIONS                   101,417.67
     190-800   EQUIP-COMPUTER-FIN ADJS.                         .00
     180-001   PAINTINGS-BAL  FWD                          25,180.25
     180-100   PAINTINGS-ADDITIONS                              .00
               FURNITURE  AND  FIXTURES                                 5,063,255.80 **

     169-001   ACQUISITION  COSTS UNDISTRIBUTE          1,584,439.93
     169-002   ACQ  COSTS  UND-CLEAR-PROD LSHLD         1,085,176.62-
     169-003   ACQ  COSTS  UND-CLEAR-EQUIPMENT            497,351.54-
     169-004   ACQ  COSTS  UND-CLEAR-N/PROD LSE             1,911.77-
     190-700   WIP FINANCIAL  ADJS                      1,515,941.00
               WORK  IN  PROCESS                                        1,515,941.00 **

               TOTAL PROPERTY, PLANT & EQUI                           656,825,002.46 ***

     252-001   DDAA-BUILDINGS-BAL  FWD                      3,770.31-
```

```
GLSR07        PRELIMINARY  BALANCE  SHEET                                                        PAGE     7
              COMPANY  800  GPC  CONSOLIDATED                                            15:16:01  12/09/92
              MONTH ENDING NOVEMBER 30, 1992
```

```
                                ** CONTINUED **
252-003    DD&A-BUILDINGS-SALES                          3,770.31
253-001    DD&A-EQUIP-NEW-WHSE-BAL  FWD                     79,779.57-
255-001    DD&A-LEASEHLD-PROD-BAL  FWD             204,920,987.53-
255-003    DD&A-LEASEHLD- PROD -SALES                1,553,886.70
255-004    00AA-LEASEHLD -PROD- TRANSFERS              245,152.56
255-100    DD&A-LEASEHLD-PROD-ADDITIONS             10,425,687.95-
256-001    DD&A-LEASEHLD-PROD-ROY-BAL  FWD           2,550,096.04-
256-003    DD&A-LEASEHLD-PROD-ROY- SALES                127.48
256-100    DD&A-LEASEHLD -PROD-ROY -ADD                168,697.92-
257-001    DD&A-LEASEHLD-PROV-UND-BAL  FWD           1,155,758.39-
257-004    DD&A-LEASEHLD-PROV-UNO-TRANSF               345,600.68
257-100    DD&A-LEASEHLD-PROV-UND-ADD                   81,396.40-
258-001    DD&A-EQUIP-WELL-BAL  FWD                  71,092,684.41-
258-003    DD&A-EQUIP- WELL- SALES                    2,708,003.50
258-004    DD&A-EQUIP- WELL- TRANSFERS                 276,686.91-
258-100    DD&A-EQUIP- WELL -ADDITIONS                4,740,143.15-
263-001    DD&A-EQUIP-GAS  PLT-BAL  FWD               6,717,567.91-
263-003    DD&A-EQUIP-GAS  PLT- SALES                 6,137,302.01
263-100    DD&A-EQUIP-GAS  PLT -ADDITIONS               99,034.01-
260-001    DD&A- IDC-BAL  FWD                       151,324,887.59-
260-003    DD&A- IDC-SALES                            3,976,376.49
260-004    DD&A - IDC- TRANSFERS                        651,938.34
260-100    DD&A- IDC-ADDITIONS                        9,307,273.68-
265-001    DD&A-LSEHLD -NON  PROD-BAL  FWD           54,866,832.99-
265-003    DD&A-LSEHLD -NON   PROD-SALES                3,967.58
265-100    DD&A-LSEHLD -NON  PROD -ADDITIONS          1,590,416.63-
266-001    DD&A - LSHLD -NON  PROD-W/O-BAL  FW       52,518,624.79
266-003    DD&A-LSHLD-NON  PROD-W/O-SALES             3,778,819.47
271-001    DD&A-EQUIP-AUTOMOT IVE-BAL  FWD              43,151.19-
271-100    DD&A-EQUIP -AUTOMOTIVE -ADDITION             5,431.94-
272-001    DD&A-EQUIP- FACILITY-BAL  FWD                14,099.85
272-004    DD&A-EQUIP- FACILITY- TRANSFERS              45,342.96
272-100    DD&A-EQUIP-FACILITY-ADDITIONS               41,890.25-
274-001    DD&A-EQUIP- VIS  TRAIN-BAL  FWD              84,538.29-
274-003    DD&A -EQUIP-VIS  TRAIN-SALES                 84,538.29
275-001    DD&A - FURN  &  FIX-BAL  FWD              1,306,131.87-
275-003    DD&A -FURN  &  FIX-SALES                      6,140.00
275-100    DD&A - FURN  &  FIX -ADDITIONS               37,992.89-
277-001    DD&A-LEASEHLD- IMPROV-BAL  FWD            1,289,622.24-
277-100    DD&A-LEASEHLD- IMPROV-ADDITIONS              16,033.26-
278-001    DD&A-EQUIP-COMPUTER-BAL  FWD              1,107,647.40-
278-003    DD&A-EQUIP- COMPUTER -SALES                 523,410.66
278-004    DD&A-EQUIP- COMPUTER -TRANSFERS                    .00
278-100    DD&A-EQUIP- COMPUTER -ADDITIONS             910,727.04-
290-100    ACC  DD&A-FINANCIAL  ADJS.                2,339,826.82-
           ACCUMULATED  D, D, & A                                            453,987,562.91-***


                TOTAL  ASSETS                                                            238,691,547.81 ****


           NOTES  PAYABLE  - CURRENT                                                          .00 *

310-001    ACCTS  PAY-TRADE                            505,585.40-
310-005    ACCTS  PAY-TRADE -FINANCIAL  ADJS          2,480,990.58-
```

```
GLSR07    PRELIMINARY  BALANCE  SHEET                                    PAGE    8
          COMPANY  800  GPC  CONSOLIDATED                          15:16:01  12/09/92
          MONTH ENDING NOVEMBER 30, 1992
```

```
                                  ** CONTINUED **
310-007   ACCTS PAY·TRADE·ACCRUAL                1,515,942.00-
310-008   ACCTS PAY·TRADE·AFE PREPAY                      .00
310-009   ACCTS PAY·TRADE·PREPAY CONTRA                   .00
310-010   ACCTS PAY·NON OP DISPUTED INV            20,013.16
310-050   ACCTS PAY·INCOME OFFSET                         .00
          ACCOUNTS PAYABLE ·  JIB                                  4,482,505.12·*

316-001   ACCTS PAY·O&G·CURR/UNDER  $25          3,962,922.57-
316-002   ACCTS PAY·O4G·SUSPENSE                 7,040,465.59-
316-003   ACCTS PAY·O&G·GAS BALANCE LIAB           311,320.33-
316-006   ACCTS PAY·O&G·FINANCIAL ADJS.            660,815.82-
316-070   ACCTS PAY·O&G CLEARING                        44.95-
317-001   RECIEPTS SUBJECT TO REF·NGPA                   .00
          ACCOUNTS PAYABLE ·  OIL & GAS                          11,975,569.26·*

328-001   ACCRUED FED INCOME TAX                   809,972.00
328-051   FOREIGN TAXES PAYABLE                    394,611.22
328-052   CANADIAN WIH TAX PAYABLE                        .00
328-101   STATE TAXES ON INCOME                  2,018,061.34-
336-007   ACCRUALS·STATE FRANCHISE TAX             533,275.00-
328-900   TAXES PAY·CAN CONV                       150,621.30-
          US & FOREIGN INCOME TAXES                               1,497,374.42·*

130-101   DEFERRED  TAXES·CURRENT                4,500,026.00-
130-900   DEFERRED  TAXES·CUR·CAN CONV              12,914.80
          CURRENT  DEFERRED  TAXES                               4,487,111.20·*

325-001   SALARIES & WAGES PAYABLE                 68,000.00-
326-001   PAYROLL DED PAY·THFT/SAV·EMPL            54,913.06-
326-002   PAYROLL DED PAY·THFT/SAV·CO              23,720.93-
326-006   PAYROLL DED PAY·UNITED APPEAL             2,878.80-
326-007   PAYROLL DED PAY·SAVINGS BONDS                75.00-
326-009   PAYROLL DED PAY·STOCK PURCHASE                 .00
326-010   PAYROLL DED PAY·DEFER COMPENSA            5,000.00-
326-011   PAYROLL DED PAY·STOCK OPTIONS             9,907.55-
327-001   PAYROLL TAX PAY·STATE·ALABAMA              244.24-
327-005   PAYROLL TAX PAY·STATE·COLORADO             115.79-
327-021   PAYROLL TAX PAY·STATE·MICHIGAN             652.45-
327-023   PAYROLL TAX PAY·STATE·MISS                 129.50-
327-025   PAYROLL TAX PAY·STATE·MONTANA              228.46-
327-030   PAYROLL TAX PAY·STATE·NEW MEX              217.90-
327-035   PAYROLL TAX PAY·STATE·OKLAHOMA          26,563.66-
327-101   PAYROLL TAX PAY·FED·FICA                      .63-
327-102   PAYROLL TAX PAY·FED·WITHHOLD                  .00
330-001   STATE UNEMPLOY TAX·ALABAMA                    .00
330-005   STATE UNEMPLOY TAX·COLORADO                   .00
330-021   STATE UNEMPLOY TAX·MICHIGAN                   .00
330-023   STATE UNEMPLOY TAX·MISSISSIPPI                .00
330-025   STATE UNEMPLOY TAX·MONTANA                    .00
330-030   STATE UNEMPLOY TAX·NEW MEXICO                 .20
330-035   STATE UNEMPLOY TAX·OKLAHOMA                 23.32
330-042   STATE UNEMPLOY TAX·TEXAS                   130.30-
330-049   STATE UNEMPLOY TAX·WYOMING                    .00
330-102   WORKMENS COMP·OUTSIDE SHARE            142,903.16-
330-201   FEDERAL UNEMPLOYMENT                        1.60
```

```
GLSR07        PRELIMINARY  BALANCE  SHEET                                         PAGE      9
              COMPANY  800  GPC  CONSOLIDATED                              15:16:01  12/09/92
              MONTH ENDING NOVEMBER  30, 1992

                                     ** CONTINUED  **
         331-003     INSURANCE-MEDICAL                            29,900.45-
         331-004     INSURANCE-BASIC  LIFE                         1,762.35-
         331-005     INSURANCE-SUPPLEMENTAL  LIFE                  3,333.95-
         331-006     INSURANCE-DEPENDENT  LIFE                       368.60-
         331-007     INSURANCE-LONG-TERM  DISABILITY              12,368.41-
         331-008     INSURANCE-VOL  GROUP  ACCIDENT                  858.45-
         332-017     STATE  SALES  TAX  PAY-LOUISIANA              1,080.93
         332-023     STATE  SALES  TAX  PAY-MISS                         .00
         332-030     STATE  SALES  TAX  PAY-NEW  MEXICO                  .00
         332-035     STATE  SALES  TAX  PAY-OKLAHOMA                     .00
         332-042     STATE  SALES  TAX  PAY-TEXAS                        .00
         332-049     STATE  SALES  TAX  PAY-WYOMING                      .00
         333-005     STATE  USE  TAX  PAY-COLORADO                       .00
         333-017     STATE  USE  TAX  PAY-LOUISIANA                      .00
         333-035     STATE  USE  TAX  PAY-OKLAHOMA                       .00
         334-017     PARISH/CTY  TAX  PAY-LOUISIANA                      .00
         334-042     TEXAS  DIRECT  PAY  SALES  TAX               19,910.95-
         334-142     TEXAS  DIRECT  PAY  SALES  TAX-CO               560.56-
         335-001     AD  VAL  TAX  PAY-MECHANICAL                959,903.63-
         335-002     AD  VAL  TAX  PAY-MANUAL                       8,412.56-
         336-002     ACCRUALS-G  &  A                            340,477.42-
         336-003     ACCRUALS-G  &  A  ICP                        399,800.00-
         336-004     ACCRUALS-LOE                              1,254,817.93-
         336-001     ACCRUALS-ANR  CLAIMS                         238,929.00-
         336-005     ACCRUALS-COMITE  SETTLE  CLAIMS              39,474.00-
         336-006     ACCRUALS-PROD  TAX  SETTLEMENTS             841,323.67-
         336-011     ACCRUALS-LETTER  OF  CREDIT  FEE                    .00
         336-013     ACCRUALS-UOLVERINE  ACQ  HLDBACK                    .00
         336-008     OTH  LIAB-ESC-BEARGRASS                     106,897.26-
         336-009     OTH  LIAB-ESC-MORLAN  1-25                          .00
         336-010     OTH  LIAB-ESC-LEGGETT,  ETAL                   6,506.13-
         336-012     OTH  LIAB-ESC-MISS  VAL  GAS                 466,620.35-
         336-015     OTH  LIAB-ESC-REHKOPF  1-21                   16,559.36-
         330-301     OTH  ACC  LIAB-INC  TAX-NON  RES              1,843.01-
         330-305     OTH  ACC  LIAB-GST  PAY-O&G  REV              52,124.20-
         330-306     OTH  ACC  LIAB-GST  REC-EXPENSE               12,912.22
         330-310     OTH  ACC  LIAB-APACHE  CORP                   69,801.73-
         330-311     OTH  ACC  LIAB-GAS  BAL  RESERVE           2,262,356.54-
         330-313     OTH  ACC  LIAB-PLUG  RES-PR  WATER            34,850.00-
         311-001     TAX  PAY-EXCISE-WINDFALL  PROFIT             395,404.13-
         315-001     TAX  PAY-PROD/SEV-ALABAMA                     21,813.63-
         315-005     TAX  PAY-PROD/SEV-ARKANSAS                          .00
         315-005     TAX  PAY-PROD/SEV-COLORADO                    86,836.23
         315-017     TAX  PAY-PROD/SEV-LOUISIANA                   16,705.72-
         315-021     TAX  PAY-PROD/SEV-MICHIGAN                    16,830.26-
         315-023     TAX  PAY-PROD/SEV-MISSISSIPPI                 29,141.95
         315-025     TAX  PAY-PROD/SEV-MONTANA                    236,953.77-
         315-030     TAX  PAY-PROD/SEV-NEW  MEXICO                 42,462.67-
         315-033     TAX  PAY-PROO/SEV-NORTH  DAKOTA                     .01-
         315-035     TAX  PAY-PROD/SEV-OKLAHOMA                    25,670.20-
         315-042     TAX  PAY-PROD/SEV-TEXAS                      136,820.14-
         315-043     TAX  PAY-PROD/SEV-UTAH                             .60-
         315-049     TAX  PAY-PROD/SEV-WYOMING                     37,580.56-
         315-053     TAX  PAY-PROD/SEV-TEXAS  REG  FEE                409.01
         337-001     CURRENT-NELSON  GAS  PREPAY                      824.88-
```

```
GLSR07      PRELIMINARY  BALANCE  SHEET                                                                    PAGE   10
            COMPANY 800 GPC CONSOLIDATED                                                           15:16:01 12/09/92
            MONTH ENDING NOVEMBER 30, 1992

                                              ** CONTINUED **
            337-003   CURRENT -DGP  TRANS CANADA              189,036.32-
            336-099   ACCRUED  LIAB.-FINANCIAL ADJS            62,257.61
                      OTHER  ACCRUED  LIABILITIES                                     8,432,781.76-*

                      TOTAL  CURRENT  LIABILITIES                                    30,875,341.76-**

                      NOTES  PAYABLE                                                        .00 *

            342-001   DGP-TRANSCANADA  PIPELINE  CO.          318,541.09-
            343-003   TOP-KNE  ENERGY                                .00
            344-001   GAS  PREPAYMENTS-NELSON                  18,881.31-
                      GAS  PREPAYMENTS                                                  337,422.40-*

            345-001   DEFER  TAXES  ON  INCOME             29,626,225.50-
            345-900   DEFERRED  TAXES-CAN  CONV                680,377.44
                      DEFERRED  INCOME  TAXES                                        28,945,848.06-*

            346-001   NON-CURR  LIAB-DEFER  COMPENSAT               .00
            346-010   NON-CURR  LIAB-REV  BONDS  PAY                .00
                      ACCRUED  LIABILITIES  -  NONCURR                                       .00 *

                      TOTAL  NONCURRENT  LIABILITIES                                 29,283,270.46-**

                      TOTAL  LIABILITIES                                             60,158,612.22-***

            140-201   ACCT  CURR-TO/FROM  URG                       .00
            140-301   ACCT  CURR-NOTES  PAY-WRG             41,689,375.19
            140-501   INT-CO  ACCTS  R/P-CLEAR  NEXT  MO        9,140.24
            140-601   ACCT  CURRENT-ZERO  BAL  BANKING       3,110,305.88
            130-211   PREPAID  EXP.-  J.P.  MORGAN  SALE           .00
            110-211   ACCTS  REC-O&G-  J.P. MORGAN  SALE   10,800,000.00-
            774-010   OTH EXP-JP  MORGAN  PROGRAM  FEE        115,122.00
            774-011   OTH EXP-JP  MORGAN  DISCOUNT  FEE       297,297.33
            774-012   OTH EXP-JP  MORGAN  ADMIN.  FEE         124,670.47
            330-312   OTHER  ACC  LIAB-JP  MORGAN  SALE        26,889.00-
            410-006   RETAINED  EARNINGS-MOR/SR  DIFF          60,583.00
            775-100   INCOME  TAX-FED-INTER  CORP            183,000.00-
            328-010   TAXES  REC/(PAY)-INTER  CORP            31,000.00
                      INTRA/INTER  -  CORPORATE                                      34,427,605.11 **

            400-001   CAPTIAL  STK-GPC  BOOKS                 1,000.00-
                      CAPITAL  STOCK  ISSUED-OUT ST AND                                   1,000.00- **

            401-001   PAID-IN-CAPITAL                       116,128,087.06-
                      PAID  IN  CAPITAL                                              116,128,087.06-**

            402-002   DRAWING-LTD  PTR  DIST  FUNDS                .00
            410-001   RETAINED  EARNINGS-BEGIN  BAL        144,656,991.38-
            410-005   DIVIDENDS  DECLARED-CASH             57,898,233.07
                      R E -  BEGINNING  BALANCE                                      86,758,758.31-* •

            410-002   Y-T-D  PROFIT                          10,072,695.33-
                      R E -  CURRENT  YEAR                                           10,072,695.33-* •
```

GLSR07    PRELIMINARY  BALANCE  SHEET                                                          PAGE    11
          COMPANY  800  GPC  CONSOLIDATED                                                 15:16:01  12/09/92
          MONTH  ENDING  NOVEMBER  30,  1992

                                        **  CONTINUED  **
                 TOTAL  STOCKHOLDERS  EQUITY                              178,532,935.59-***

                 TOTAL  LIAB  &  STOCKHLDR  EQ                                         238,691,547.81

GLSR07      PRELIMINARY INCOME STATEMENT
            COMPANY 800 GPC CONSOLIDATED
            MONTH ENDING NOVEMBER 30, 1992

| | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|
| **INCOME STATEMENT** | | | | |
| 510-001  SALES-CRUDE 01 L-GPC W.I. | 1,256,673.79- | .00 | 14,697,680.83- | 722,839.08 |
| 510-003  SALES-CRUDE OIL-ESTIMATES | 158,519.19 | .00 | 537,280.82 | 16,107.21- |
| 510-004  SALES-CRUDE OIL-INVENTORY VAR | .00 | .00 | 20,988.49 | 1,123.02- |
| 530-001  SALES-ROYALTY OIL-GPC U.I. | 45,726.38- | .00 | 323,441.18- | 14,261.61 |
| 530-003  SALES-ROYALTY OIL-ESTIMATES | 9,686.36 | .00 | 13,010.68- | 1,086.18 |
| 610-900  SALES-CRUDE OIL-TIN ADJS | 38,698.00- | .00 | 106,146.00- | 7,949.00 |
| 510-903  SALES-OIL-ACCRUAL FIN ADJS | .00 | .00 * | 348,771.00- | 6,052.00 |
|          OIL SALES | 1,172,993.62-* | | 14,930,680.28-* | 734,946.54 * |
| | | | | |
| 520-001  SALES-GAS-GPC W.I. | 4,872,231.49- | .00 | 50,160,067.72- | 21,764,588.31 |
| 520-003  SALES-GAS-ESTIMATES | 667,079.21 | .00 | 866,406.77- | 14,016.29 |
| 540-001  SALES-ROYALTY GAS-GPC U.I. | 166,657.59- | .00 | 1,332,384.71- | 606,641.72 |
| 540-003  SALES-ROYALTY GAS-ESTIMATES | 11,937.65 | .00 | 24,764.95- | 6,417.86 |
| 570-001  SALES-PLT PROD LSE LEV-GPC Ut | 168,483.59- | .00 | 2,037,024.97- | 6,022,707.53 |
| 570-003  SALES-PLT PROD LSE LEV-EST | 14,260.83- | .00 | 23,617.51 | 18,186.65- |
| 590-001  CROWN ROYALTY-SALES | 20,080.26 | .00 | 301,683.86 | .00 |
| 520-900  SALES-GAS-FIN ADJS | 780,262.99- | .00 | 2,212,324.99- | 572,329.00 |
| 570-903  SALES-GAS-ACCRUAL FIN ADJS | 647,294.00 | .00 | 103,967.00 | 144,134.00- |
| 570-900  SALES-PP LSE LEV-FIN ADJS | 182,751.01 | .00 | 2,028,608.01 | 6,132,076.00- |
| 570-903  SALES-PP LSE LEV-ACCR FIN ADJS | .00 | .00 | 21,683.00- | 69,964.00- |
|          GAS SALES | 5,767,332.36-* | .00 * | 54,185,870.73-* | 22,632,249.05 * |
| | | | | |
| 580-001  SALES-SULPHUR-GPC U.I. | 48,169.85- | .00 | 530,740.21- | 8,627.54 |
| 580-003  SALES-SULPHUR-ESTIMATES | 5,648.44 | .00 | 25,298.03 | 1,724.26 |
|          SULPHUR SALES | 42,621.41-* | .00 * | 505,442.18-* | 10,351.79 * |
| | | | | |
| 772-001  GAS MARKETING-PURCHASES | 4,619,257.49 | .00 | 32,814,838.23 | 19,369,719.00 |
| 772-002  GAS MARKETING-SALES | 4,671,952.82- | .00 | 33,438,675.35- | 19,278,686.00- |
|          OIL AND GAS MARKETING REVENUES | 52,696.33-* | .00 * | 623,837.12-* | 91,033.00 * |
| | | | | |
|          TOTAL SALES | 7,035,642.72-** | | 70,245,830.31-** | |
| | | | | |
| 610-071  LOE-TAXES & LICENSES | .00 | .00 | .00 | .00 |
| 610-171  LOE-AD VALOREM TAX ACCRUAL | 23,150.33 | .00 | 490,208.81 | .00 |
| 611-171  LOE-AD VALOREM TAX | 62,906.64 | .00 | 525,303.11 | .00 |
| 612-171  LOE-GPC-TAXES & LICENSES | .00 | .00 | 198.66 | .00 |
| 610-285  LOE-OIL PROD/SEV TAX ACCR | 6,650.62- | .00 | 32,150.39- | .00 |
| 610-286  LOE-GAS PROD/SEV TAX ACCR | 72,627.46- | .00 | 34,123.21 | .00 |
| 610-295  LOE-OIL PROD/SEV TAX | 106,941.14 | .00 | 1,120,637.91 | 742,765.62 |
| 610-296  LOE-GAS PROD/SEV TAX | 246,338.46 | .00 | 2,761,327.52 | 23,031,780.32 |
| 640-086  EXP-ROY-OIL PROD/SEV TAX-ACCRU | 369.64- | .00 | 968.46 | .00 |
| 640-086  EXP-ROY-GAS PROD/SEV TAX-ACCRU | 669.52 | .00 | 2,467.49 | .00 |
| 640-096  EXP-ROY-OIL PROD/SEV TAX | 2,964.84 | .00 | 23,398.32 | 60,593.01 |
| 640-096  EXP-ROY-GAS PROD/SEV TAX | 9,989.97 | .00 | 74,826.40 | 740,880.26 |
| 904-910  LOE-PROO & AD VAL TAX-FIN ADJS | 185,276.72 | .00 | 300,685.12 | .00 |
|          PRODUCTION & AD VALOREM TAXES | 547,678.89 * | .00 * | 5,291,966.61 * | 24,566,009.11 * |
| | | | | |
| 610-030  LOE-MAJOR WORKOVER | .00 | .00 | .00 | .00 |
| 610-130  LOE-MAJOR WORKOVER | .00 | .00 | 5,421.93 | .00 |
| 611-130  LOE-MAJOR WORKOVER W/O AFE | .00 | .00 | 44,901.64 | .00 |
| 610-406  EXP-MAJOR WORK-COMP/SERV RIG | 18,114.02 | .00 | 89,687.66 | .00 |
| 610-407  EXP-MAJOR WORK-FUEL/WATER/POWR | 1,051.56 | .00 | 3,887.39 | .00 |
| 610-408  EXP-MAJOR WORK-MUD OR CHEMICAL | 164.09 | .00 | 634.16 | .00 |

GLSR07    PRELIMINARY INCOME STATEMENT
COMPANY 800 GPC CONSOLIDATED
MONTH ENDING NOVEMBER 30, 1992

PAGE 2
15:16:01 12/09/92

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT    ** CONTINUED ** | | | | |
| 610-412 | EXP-MAJOR WORK-LOCATION/ROAD | 531.25 | .00 | 707.47 | .00 |
| 610-413 | EXP-MAJOR WORK-WELLSITE CONSUL | .00 | .00 | 9,406.95 | .00 |
| 610-415 | EXP-MAJOR WORK-LOGGING | .00 | .00 | 632.07 | .00 |
| 610-417 | EXP-MAJOR WORK-WIRELINE SERV | 2,347.25 | .00 | 18,376.80 | .00 |
| 610-418 | EXP-MAJOR WORK-CONTRACT LABOR | 2,116.76 | .00 | 15,156.56 | .00 |
| 610-419 | EXP-MAJOR WORK-COMPANY LABOR | .00 | .00 | 764.60 | .00 |
| 610-420 | EXP-MAJOR WORK-CEMENTING | .00 | .00 | 8,426.16 | .00 |
| 610-421 | EXP-MAJOR WORK-PERFORATING | .00 | .00 | 2,935.48 | .00 |
| 610-422 | EXP-MAJOR WORK-FRAC/GRAVEL PAC | .00 | .00 | 8,287.96 | .00 |
| 610-423 | EXP-MAJOR WORK-ACIDIZE & STIM | 1,983.94 | .00 | 7,277.10 | .00 |
| 610-424 | EXP-MAJOR WORK-RENT TOOLS/EQP | 14,453.74 | .00 | 64,098.96 | .00 |
| 610-426 | EXP-MAJOR WORK-TRANSPORTATION | 2,213.62 | .00 | 12,186.26 | .00 |
| 610-429 | EXP-MAJOR WORK-OVERHEAD | .00 | .00 | 5,200.69 | .00 |
| 610-431 | EXP-MAJOR WORK-MISCELLANEOUS | 112.68 | .00 | 483.23 | .00 |
| 610-446 | EXP-MAJOR WORK-CSG-FLOAT EQUIP | .00 | .00 | 1,618.36 | .00 |
| 610-449 | EXP-MAJOR WORK-TUBING INSPECT | .00 | .00 | 1,210.42 | .00 |
| 610-460 | EXP-MAJOR WORK-SUBSURF EQUIP | 906.82 | .00 | 4,423.56 | .00 |
| 610-461 | EXP-MAJOR WORK-WELLHEAD EQUIP | .00 | .00 | 1,736.54 | .00 |
| 610-456 | EXP-MAJOR WORK-MISC CONNECTION | .00 | .00 | 21.98 | .00 |
| 610-457 | EXP-MAJOR WORK-NON CONTR EQUIP | .00 | .00 | 64.32- | .00 |
| 610-458 | EXP-MAJOR WORK- INSTALLATION | 21.20 | .00 | 1,623.61- | .00 |
| 904-920 | LOE-WORKOVERS-FIN AOJS | | .00 | 1,144.46 | .00 |
| | WORKOVERS | 44,016.83 * | .00 * | 306,733.25 * | .00 * |
| | | | | | |
| 610-020 | LOE-REPAIR/MAINT SURFACE EQUIP | .00 | .00 | .00 | .00 |
| 610-021 | LOE-REPAIR/MAINT-SUBSURFACE | .00 | .00 | .00 | .00 |
| 610-022 | LOE-ROUTINE WELL SERVICE | .00 | .00 | .00 | .00 |
| 610-023 | LOE-TREATING & CHEMICALS | .00 | .00 | .00 | .00 |
| 610-024 | LOE-LOCATION & ROAD REPAIR | .00 | .00 | .00 | .00 |
| 610-120 | LOE-REPAIP & MAINT-SURFACE | 65,022.10 | .00 | 593,705.41 | .00 |
| 611-120 | LOE-REPAIP & MAINT-SURFACE | 2,814.80- | .00 | 115,794.04 | .00 |
| 612-120 | LOE-GPC-REPAIR & MAINT-SURFACE | .00 | .00 | 85.27 | .00 |
| 610-121 | LOE-REPAIP & MAINT-SUBSURFACE | 17,108.48 | .00 | 129,147.11 | .00 |
| 611-121 | LOE-REPAIP & MAINT-SUBSURFACE | 9,686.69 | .00 | 108,604.67 | .00 |
| 610-122 | LOE-ROUTINE WELL SERVICE | 2,764.89 | .00 | 42,922.19 | .00 |
| 611-122 | LOE-ROUTINE WELL SERVICE | 27,163.62 | .00 | 308,792.50 | .00 |
| 612-122 | LOE-GPC-ROUTINE WELL SERVICE | .00 | .00 | 11.02 | .00 |
| 610-123 | LOE-TREATING & CHEMICALS-WATER | 9,680.40 | .00 | 171,960.07 | .00 |
| 611-123 | LOE-TREATING & CHEMICALS-WATER | 2,705.07 | .00 | 97,991.39 | .00 |
| 612-123 | LOE-GPC-TREAT & CHEM-WATER | . | .00 | 9.40 | .00 |
| 610-125 | LOE-TREATING A CHEMICALS-OIL | 5,124.33 | .00 | 14,871.23 | .00 |
| 611-125 | LOE-TREATING A CHEMICALS-OIL | .00 | .00 | 3,168.30 | .00 |
| 610-124 | LOE-LOCATION & ROAD REPAIR | 6,336.34 | .00 | 96,115.66 | .00 |
| 611-124 | LOE-LOCATION & ROAD REPAIR | 831.24 | .00 | 36,623.78 | .00 |
| 611-501 | LOE-ENVIR-LEAK REPAIR/REPLACE | .00 | .00 | 4,248.16 | .00 |
| 612-124 | LOE-GPC-LOCATION & ROAD REPAIR | .00 | .00 | .11 | .00 |
| 610-601 | LOE-ENVIR-LEAK REPAIR/REPLACE | 1,541.35 | .00 | 13,597.29 | .00 |
| 904-930 | LOE-MAINT & REPAIR-FIN ADJS | 3,225.80- | .00 | 12,348.66- | .00 |
| | MAINTENANCE, REPAIR & SUPPLIES | 141,913.71 * | .00 * | 1,724,179.56 * | .00 * |
| | | | | | |
| 610-141 | LOE-SALTWATER DISPOSAL | 29,954.04 | .00 | 392,678.81 | .00 |
| 612-141 | LOE-GPC-SALTWATER DISPOSAL | | .00 | 6.13- | .00 |
| 610-142 | LOE-WASTE DISPOSAL | 2,954.67 | .00 | 18,631.09 | .00 |

GLSR07     PRELIMINARY  INCOME  STATEMENT
           COMPANY  800  GPC  CONSOLIDATED
           MONTH ENDING NOVEMBER 30, 1992

| | | MONTHLY | MONTHLY UNITS | YEAR · TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT    ** CONTINUED ** | | | | |
| 904- 940 | LOE·SWD·FINANCIAL ADJS | 242.24- | .00 | 2,985.71- | .00 |
| | SALTWATER DISPOSAL | 32,666.47 * | .00 * | 408,318.00 * | .00 * |
| 610- 140 | LOE-POWER & FUEL | 45,442.62 | .00 | 522,609.80 | .00 |
| 612- 140 | LOE-GPC-POWER & FUEL | .00 | .00 | 1.57 | .00 |
| 904- 950 | LOE-POWER & FUEL-FIN ADJS | 230.18- | .00 | 1,781.66- | .00 |
| | POWER AND FUEL | 45,212.44 * | .00 * | 520,829.71 * | .00 * |
| 610- 043 | LOE-COMPRESSOR COSTS | .00 | .00 | .00 | .00 |
| 610- 051 | LOE-LEGAL & PROFESSIONAL | .00 | .00 | .00 | .00 |
| 610- 070 | LOE·CLAIMS & DAMAGES | .00 | .00 | 6.52- | .00 |
| 610- 075 | LOE-OTHER INDIRECT COSTS | .00 | .00 | .00 | .00 |
| 610- 275 | LOE-GPC NET ADJUSTMENTS | .00 | .00 | .00 | .00 |
| 610- 101 | LOE-PUMPERS SALARIES | 27,363.77 | .00 | 281,924.17 | .00 |
| 610- 102 | LOE-PUMPER BURDEN | 5,730.87 | .00 | 62,700.47 | .00 |
| 610- 103 | LOE-FOREMAN SALARIES | 34,801.85 | .00 | 365,963.61 | .00 |
| 610- 104 | LOE-FOREMAN BURDEN | 6,041.96 | .00 | 65,116.82 | .00 |
| 610- 107 | LOE-CONTRACT PUMPER | 52,704.36 | .00 | 575,556.62 | .00 |
| 610- 108 | LOE-AUTO EXPENSE | 15,369.97 | .00 | 157,731.41 | .00 |
| 610- 109 | LOE-TELEPHONE/MOBILEPHONE | 3,779.36 | .00 | 42,330.37 | .00 |
| 610- 110 | LOE-MEALS | 836.04 | .00 | 11,029.83 | .00 |
| 610- 111 | LOE·TRAVEL | 203.03 | .00 | 5,748.99 | .00 |
| 610- 143 | LOE-COMPRESSOR REPAIR & MAINT | 9,000.88 | .00 | 91,574.69 | .00 |
| 610- 145 | LOE· INJECTION WATER | 1,658.82 | .00 | 18,688.98 | .00 |
| 610- 148 | LOE·FACILITY ALLOCATION | 14,944.61- | .00 | 170,618.14- | .00 |
| 610- 150 | LOE-SURFACE RENT/SHUT-IN ROY | 1,233.08 | .00 | 46,846.59 | .00 |
| 610- 160 | LOE-DISTRICT EXPENSE | 511.38 | .00 | 4,845.94 | .00 |
| 610- 161 | LOE-OVERHEAD | 164,167.37 | .00 | 1,885,882.06 | .00 |
| 610- 170 | LOE-CLAIMS & DAMAGES | .00 | .00 | 590.61 | .00 |
| 610- 172 | LOE- INSURANCE | 23,757.97 | .00 | 269,688.48 | .00 |
| 610- 287 | LOE-OPERATED HDLG CHGS ACCRUAL | 48,012.88 | .00 | 6,637.03 | .00 |
| 610- 297 | LOE-OPERATED HANDLING CHARGES | 18,726.33 | .00 | 419,126.34 | 1,930,326.73 |
| 610- 288 | EXP-WELL-SHRINKAGE | .00 | .00 | 96,002.42 | .00 |
| 610- 515 | LOE-SAFETY- EQUIPMENT/TRAINING | 1,041.28 | .00 | 9,416.97 | .00 |
| 611- 143 | LOE-COMPRESSOR COSTS | 123,886.86 | .00 | 1,255,972.21 | .00 |
| 611- 151 | LOE-LEGAL FEES | 25,960.27 | .00 | 332,014.85 | .00 |
| 611- 170 | LOE-CLAIMS & DAMAGES | 2,581.38- | .00 | 3,071.35 | .00 |
| 610- 175 | LOE-OTHER INDIRECT COSTS | 129.26- | .00 | 3,057.48 | .00 |
| 811- 175 | LOE-OTHER INDIRECT COSTS | 44,643.92- | .00 | 390, 172.89- | .00 |
| 611- 515 | LOE-SAFETY-EQUIPMENT/TRAINING | .00 | .00 | 1,897.57 | .00 |
| 612- 101 | LOE · GPC · PUMPER SALARIES | .00 | .00 | 35.52 | .00 |
| 612- 102 | LOE-GPC-PUMPER BURDEN | .00 | .00 | 7.77 | .00 |
| 612- 103 | LOE-GPC- FOREMAN SALARIES | .00 | .00 | 40.61 | .00 |
| 612- 104 | LOE · GPC · FOREMAN BURDEN | .00 | .00 | 7.53 | .00 |
| 612- 107 | LOE -GPC-CONTRACT PUMPER | .00 | .00 | 135.43 | .00 |
| 612- 108 | LOE-GPC-AUTO EXPENSE | .00 | .00 | 18.51 | .00 |
| 612- 109 | LOE-GPC- TELEPHONE /MOBILEPHONE | .00 | .00 | 6.95 | .00 |
| 612- 110 | LOE · GPC -MEALS | .00 | .00 | 1.61 | .00 |
| 612- 111 | LOE · GPC · TRAVEL | .00 | .00 | 1.62 | .00 |
| 612- 143 | LOE · GPC- COMPRESSOR COSTS | .00 | .00 | 79.69 | .00 |
| 612- 150 | LOE-GPC-SURF RENT/SHUTIN ROY | .00 | .00 | 104.37 | .00 |
| 612- 151 | LOE-GPC · LEGAL FEES | .00 | .00 | 12,144.53 | .00 |
| 612- 161 | LOE-GPC ·OVERHEAD | 326.71 | .00 | 3,931.72 | .00 |

GLSR07    PRELIMINARY INCOME STATEMENT
COMPANY 800 GPC CONSOLIDATED
MONTH ENDING NOVEMBER 30, 1992

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT        ** CONTINUED ** | | | | |
| 612-172 | LOE-GPC-INSURANCE | .00 | .00 | 28.07 | .00 |
| 612-175 | LOE-GPC-OTHER NET ADJUSTMENTS | 6,553.45- | .00 | 37,643.36- | .00 |
| 612-299 | LOE-GPC-FACILITY ALLOCATION | .00 | .00 | .00 | .00 |
| 904-297 | LOE-HANDLING CHGS-FIN ADJ | .00 | .00 | 4,172.00- | .00 |
| 904-960 | LOE-OTHER-FIN ADJS | 2,984.76- | .00 | 15,339.93- | .00 |
| | OTHER LEASE OPERATING EXPENSE | 493,277.66 * | .00 * | 5,412,006.95 * | 1,930,326.73 * |
| | | | | | |
| 610-162 | LOE-OVERHEAD  - NON-OPERATED | 42,722.00 | .00 | 469,942.00 | .00 |
| 610-289 | LOE-NOM OP-HNDL CHGS ACCRUAL | 4,388.51 | .00 | 81,348.98 | .00 |
| 610-298 | LOE-NON OP-HANDLING CHARGES | 66,941.28 | .00 | 1,215,922.73 | 1,870,969.82 |
| 610-180 | LOE-OUTSIDE OPERATED | 373,965.63 | .00 | 1,200,006.67 | .00 |
| 612-180 | LOE-GPC-OUTSIDE OPERATED | 30,818.28- | .00 | 460,322.97- | .00 |
| 610-480 | EXP-MAJOR WORK-OUTSIDE OPERATE | 149,779.49 | .00 | 383,756.89 | .00 |
| 610-970 | LOE-OUTSIDE OP-YR END ACCRUAL | .00 | .00 | 130,000.00- | .00 |
| 904-298 | LOE-NON OP-HNDL CHGS-FIN ADJ | 38,719.00 | .00 | 181,497.00- | .00 |
| 904-970 | LOE-OUTSIDE OP-FIN ADJS | 86,180.90- | .00 | 4,652,854.34 | .00 |
| | OUTSIDE OPERATED BILLINGS | 559,516.73 * | .00 * | 7,232,011.64 * | 1,870,969.82 * |
| | | | | | |
| | TOTAL LOE | 1,864,282.73 ** | | 20,896,035.71 ** | |
| | | | | | |
| 750-004 | DEPRE EXPENSE-GAS PLANTS | 8,819.74 | .00 | 99,034.01 | .00 |
| 750-005 | DEPRE EXPENSE-WELL EQUIP | 16,810.67 | .00 | 4,738,268.19 | .00 |
| 750-006 | DEPRE EXPENSE - AUTOS | 430.52 | .00 | 5,431.94 | .00 |
| 750-007 | DEPRE EXPENSE - FACILITIES | 137.62- | .00 | 41,890.25 | .00 |
| 750-008 | DEPRE EXPENSE-FURN & FIX | 3,354.74 | .00 | 37,992.89 | .00 |
| 750-009 | DEPRE EXPENSE - COMPUTER EQUIP | 60,875.51 | .00 | 910,727.04 | .00 |
| 750-101 | DEPL EXPENSE-PROD LEASEHOLD | 53,740.78 | .00 | 10,510,151.48 | .00 |
| 750-102 | DEPL EXPENSE - ROYALTIES | 985.23 | .00 | 173,144.46 | .00 |
| 750-103 | DEPL EXPENSE-IDC | 106,945.36 | .00 | 9,301,618.33 | .00 |
| 750-201 | AMORT EXPENSE - LSHOLD IMPROVE | 318.36 | .00 | 16,033.26 | .00 |
| 750-900 | DD & A EXPENSE - FINANCIAL ADJS | 2,364,147.48 | .00 | 2,507,313.28 | .00 |
| | DEPRECIATION DEPLETION & AMORT | 2,616,290.77 ** | | 28,341,605.13 ** | |
| | | | | | |
| 742-001 | AMORT OF NON-PROD LEASEHOLD | 144,583.33 | .00 | 800 416.63 | .00 |
| | SURRENDERED LEASES | 144,583.33 ** | | 800 416.63 ** | |
| | | | | | |
| 741-002 | EXPL DRY HOLES-IDC | 318,008.78- | .00 | 365,207.11 | .00 |
| 741-003 | EXPL DRY HOLES-WELL EQUIP. | 22,914.40 | .00 | 47,256.28- | .00 |
| 741-900 | DRY HOLE - FINANCIAL ADJS. | 295,094.38 | .00 | 22,508.83- | .00 |
| | DRY HOLES | .00 ** | | 295,442.00 ** | |
| | | | | | |
| 744-001 | DELAY RENTAL EXPENSE-GPC SHARE | 3,875.21 | .00 | 78,373.98 | .00 |
| 744-101 | DELAY RENTAL EXPENSE | 255.26 | .00 | 18,196.28 | .00 |
| 908-900 | DELAY RENTALS - FINANCIAL ADJS | 45.53 | .00 | 1,236.82- | .00 |
| | DELAY RENTALS | 4,176.00 ** | | 95,333.44 ** | |
| | | | | | |
| 740-101 | G&G-AFE-SEISMIC SHOOTING | .00 | .00 | 16,834.56 | .00 |
| 740-102 | G&G-AFE-SEISMIC PROCESSING | 849.66 | .00 | 55,674.45 | .00 |
| 740-103 | G&G-AFE-SEISMIC REPROCESSING | .00 | .00 | 18,998.97 | .00 |
| 740-104 | G&G-AFE-SEISMIC GROUP SHOOT | 3,900.00 | .00 | 8,730.80 | .00 |
| 740-105 | G&G-AFE-SEISMIC TRADE | 1,023.75 | .00 | 21,885.94 | .00 |
| 740-106 | G&G-AFE - SEISMIC MISCELLANEOUS | .00 | .00 | 121,206.21 | .00 |
| 740-107 | G&G-AFE-SEISMIC SYNTHETICS | .00 | .00 | 2,147.50 | .00 |

```
GLSR07      PRELIMINARY INCOME STATEMENT                                              PAGE    5
            COMPANY 800 GPC CONSOLIDATED                                        15:16:01 12/09/92
            MONTH ENDING NOVEMBER 30, 1992

                                               MONTHLY        MONTHLY UNITS        YEAR-TO-DATE         YTD UNITS

            INCOME STATEMENT          ** CONTINUED **
  740-110   GAG-AFE-GRAVITY DATA                  .00                  .00            6,010.29                .00
  740-111   GAG-AFE-MAGNETIC DATA                 .00                  .00            7,225.00                .00
  740-112   GAG-AFE-GEOCHEMICAL DATA              .00                  .00            2,067.00                .00
  740-113   GAG-AFE-CORE DATA               1,500.00-                  .00            2,500.00                .00
  740-140   GAG-AFE-GEOLOGICAL CONSULTING   4,441.96                  .00           21,073.88                .00
  740-141   GAG-AFE-GEOPHYSICAL CONSULTING        .00                  .00           13,067.93                .00
  740-150   GAG-AFE-OTHER                         .00                  .00           31,085.28                .00
  740-202   GAG-SEISMIC PROCESSING          1,888.55                  .00            4,650.28                .00
  740-203   GAG-SEISMIC REPROCESSING        1,644.90                  .00            4,984.61                .00
  740-204   GAG-SEISMIC GROUP SHOOT               .00                  .00            8,002.50                .00
  740-205   GAG-SEISMIC TRADE                     .00                  .00                 .00                .00
  740-206   GAG-SEISMIC MISCELLANEOUS         394.51                  .00           29,055.11                .00
  740-207   GAG-SEISMIC SYNTHETICS           637.50                  .00            4,037.50                .00
  740-212   GAG-GEOCHEMICAL DATA                  .00                  .00            1,572.00                .00
  740-213   GAG-CORE DATA                         .00                  .00            1,200.00                .00
  740-215   GAG-LOGS & SURVEY DATA                .00                  .00           15,087.98                .00
  740-230   GAG-LEASE OWNERSHIP                   .00                  .00           16,774.12                .00
  740-240   GAG-CONSULTING                    589.05                  .00           14,995.30                .00
  740-250   GAG-OTHER                       3,375.00                  .00            7,450.30                .00
  907-900   GAG-FINANCIAL ADJS.           17,244.88-                  .00           63,682.49                .00
            GEOLOGICAL & GEOPHYSICAL EXP         .00  **                           500,000.00  **

  730-001   GAA-SALARIES-OFFICE           555,653.83                  .00        6,294,790.11                .00
  730-002   GAA-PAYROLL BENEFITS           87,784.70                  .00        1,156,305.55                .00
  730-003   GAA-INCENT COMPENSATION PLAN   40,000.00                  .00          235,500.00                .00
  730-005   GAA-EMPLOYMENT COSTS                  .00                  .00            3,799.83                .00
  730-007   GAA-CONTRACT LABOR             50,375.97                  .00          377,596.98                .00
  730-010   GAA-MEALS & ENTERTAINMENT       8,666.25                  .00          101,459.87                .00
  730-011   GAA-TRAVEL EXPENSE             15,695.90                  .00          214,452.15                .00
  730-015   GAA-VEHICLE EXPENSE             2,220.17                  .00           14,899.22                .00
  730-020   GAA-OFFICE REPAIRS                988.65                  .00           24,670.24                .00
  730-024   GAA-COPY (XEROX) COSTS          7,929.69                  .00           98,746.93                .00
  730-043   GAA-RENTAL EQUIPMENT            1,983.42                  .00           23,519.26                .00
  730-044   GAA-COMPUTER RENT & SUPPLIES      534.21-                 .00           51,189.77                .00
  730-045   GAA-TIMESHARING COSTS             220.94                  .00            9,060.58                .00
  730-046   GAA-TELEPHONE/COMMUNICATIONS   13,222.02                  .00          138,116.92                .00
  730-047   GAA-POSTAGE                     2,026.72                  .00           71,847.06                .00
  730-048   GAA OFFICE SUPPLIES             8,184.91                  .00          117,073.68                .00
  730-049   GAA-OFFICE RENT                60,561.80                  .00          649,663.79                .00
  730-050   GAA-DUES SUBSCRIPTIONS MAPS    17,919.29                  .00          217,560.99                .00
  730-051   GAA-LEGAL & PROFESSIONAL FEES   6,932.46-                 .00          271,097.53                .00
  730-056   GAA-ADVERTISING                   440.00                  .00            5,665.36                .00
  730-060   GAA-CONTRIBUTIONS                 888.74                  .00           34,378.33                .00
  730-071   GAA-TAXES & LICENSES           48,001.91-                 .00           24,789.88                .00
  730-072   GAA-INSURANCE                   1,105.00                  .00           12,155.00                .00
  730-075   GAA-MISCELLANEOUS              32,845.79-                 .00          327,283.79-               .00
  730-077   GAA-BAD DEBT EXPENSE                  .00                  .00                 .00                .00
  730-087   GAA-DIVESTMENT EXPENSE         28,215.67                  .00          178,456.01                .00
  730-088   GAA-CHARGE TO OTHER OPERATIONS 43,557.92-                 .00          359,020.05-               .00
  730-089   GAA-CLEAR ADM OVERHEAD        348,186.28-                 .00        4,066,018.58-               .00
  730-100   GAA-OVERHEAD SUSPENSE                 .00                  .00                 .00                .00
            GENERAL & ADMINISTRATIVE EXP  423,845.10  **                         5,574,473.22  **
```

```
GLSR07     PRELIMINARY  INCOME  STATEMENT                                                    PAGE      6
           COMPANY 800 GPC CONSOLIDATED                                               15:16:01  12/09/92
           MONTH ENDING NOVEMBER 30, 1992
```

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT          ** CONTINUED ** | | | | |
| 755-001 | INTEREST INCOME | 6,587.83- | .00 | 171,705.79- | .00 |
| 755-007 | INTER-CO INT (INCOME)/EXPENSE | .00 | .00 | .00 | .00 |
| | INTEREST INCOME | 6,587.83- * | .00 * | 171,705.79- * | .00 * |
| 752-001 | EQUITY IN EARN-PTNSHP-PURSUE | 11,180.10 | .00 | 63,592.50 | .00 |
| 752-002 | EQUITY IN EARN-PTNSHP-SPARTAN | 953.96- | .00 | 152,172.34- | .00 |
| 760-001 | PROCEEDS FEE LAND, SALE OF | 127.50- | .00 | 82.81- | .00 |
| 760-005 | PROCEEDS GAS PLANTS, SALE OF | .00 | .00 | 278,568.00- | .00 |
| 760-006 | PROCEEDS WELL EQUIP, SALE OF | 238,108.58- | .00 | 432,559.28- | .00 |
| 760-009 | PROCEEDS FURN & FIX, SALE OF | .00 | .00 | 4,940.00- | .00 |
| 760-010 | PROCEEDS NONPROD LSHLDS, SALE | .00 | .00 | 4,269.00- | .00 |
| 760-011 | PROCEEDS ROYALTIES, SALE OF | 500.00- | .00 | 5,360.00- | .00 |
| 760-012 | PROCEEDS PROD LSHLD, SALE OF | 64,237.09- | .00 | 314,749.71- | .00 |
| 760-013 | PROCEEDS COMPUTER EQUIP, SALE | 1.00 | .00 | 5,360.93- | .00 |
| 760-015 | PROCEEDS IDC, SALE OF | 122,305.27- | .00 | 354,490.21- | .00 |
| 761-002 | BK VAL L/DD&A-BUILDINGS | .00 | .00 | 418.92 | .00 |
| 761-005 | BK VAL L/DD&A-GAS PLANTS | .00 | .00 | 50,403.79 | .00 |
| 761-006 | BK VAL L/DD&A-WELL EQUIPMENT | 217,330.85 | .00 | 386,037.06 | .00 |
| 761-012 | BK VAL L/DD&A-ROYALTIES | .00 | .00 | 9,405.90 | .00 |
| 761-013 | BK VAL L/DD&A-PRODUCING LSHLD | 51,866.39 | .00 | 135,027.51 | .00 |
| 761-014 | BK VAL L/DD&A- IDC | 83,410.54 | .00 | 262,021.38 | .00 |
| 761-015 | BK VAL L/DD&A-COMPUTER EQUIP | .00 | .00 | 14,012.24 | .00 |
| 763-101 | BK VALUE-SALE CLUB MEMBERSHIPS | .00 | .00 | 580.00 | .00 |
| 765-001 | REALIZED FOREIGN EXCHANGE P&L | 1,076.39 | .00 | 8,521.56 | .00 |
| 770-002 | MISC INCOME-COMITE | 39,949.72- | .00 | 280,029.59- | .00 |
| 770-003 | MISC INCOME-BUTLER HIGHLAND | 266.42 | .00 | 610.69- | .00 |
| 770-004 | MISC INCOME-COLFAX "19" | .00 | .00 | 932.33 | .00 |
| 770-005 | MISC INCOME-ROYALTY TAX CREDIT | 8,159.40- | .00 | 226,639.53- | .00 |
| 770-001 | MISC INCOME | 101,655.12- | .00 | 435,923.13- | .00 |
| 550-001 | SALES-PLANT PRODUCT-GPC U.I. | 22,982.58- | .00 | 182,880.85- | 22,748.48 |
| 550-003 | SALES-PLANT PRODUCT-ESTIMATES | 3.97- | .00- | 4.99 | 5,401.13 |
| 550-903 | SALES-PP PLT LEV-ACCR FIN ADJS | .00 | .00 | .00 | .00 |
| 630-020 | EXP-GAS PLANT-REPAIRS & MAINT | .00 | .00 | 10,346.82 | .00 |
| 630-023 | EXP-GAS PLANT-TREATING & CHEM | .00 | .00 | 836.85 | .00 |
| 630-024 | EXP-GAS PLANT-LOC/ROAD REPAIR | .00 | .00 | 3,407.90 | .00 |
| 630-071 | EXP-GAS PLANT-TAXES & LICENSES | .00 | .00 | 3,142.94 | .00 |
| 630-075 | EXP-GAS PLANT-OTHER COSTS | .00 | .00 | 96.33 | .00 |
| 630-103 | EXP-GAS PLANT-SUPERINT SALARY | 231.79 | .00 | 2,421.95 | .00 |
| 630-104 | EXP-GAS PLANT-SUPERINT BURDEN | 31.88 | .00 | 348.53 | .00 |
| 630-107 | EXP-GAS PLANT-CONTRACT LABOR | 646.50 | .00 | 15,685.12 | .00 |
| 630-108 | EXP-GAS PLANT-AUTO EXPENSE | 63.90 | .00 | 357.91 | .00 |
| 630-109 | EXP-GAS PLANT-TELEPHONE | 5.05 | .00 | 394.63 | .00 |
| 630-110 | EXP-GAS PLANT-MEALS | 4.01 | .00 | 33.97 | .00 |
| 630-111 | EXP-GAS PLANT-TRAVEL | 1.06 | .00 | 38.13 | .00 |
| 630-120 | EXP-GAS PLANT-REPAIRS & MAINT | 135.32 | .00 | 9,068.66 | .00 |
| 630-123 | EXP-GAS PLANT-TREATING & CHEM | 884.59 | .00 | 932.33 | .00 |
| 630-141 | EXP-GAS PLANT-SALTWATER DISP | .00 | .00 | 1,127.93 | .00 |
| 630-143 | EXP-GAS PLANT-RENTAL EQUIPMENT | .00 | .00 | 1,729.62 | .00 |
| 630-144 | EXP-GAS PLANT-PROCESSING FEE | 244.11 | .00 | 3,035.52 | .00 |
| 630-161 | EXP-GAS PLANT-OVERHEAD | 1,075.91 | .00 | 11,786.47 | .00 |
| 630-171 | EXP-GAS PLANT-AD VAL TAX ACCR | 1,603.14 | .00 | 9,489.12 | .00 |
| 630-172 | EXP-GAS PLANT-INSURANCE | 422.44 | .00 | 5,283.66 | .00 |
| 630-175 | EXP-GAS PLANT-OTHER COSTS | .00 | .00 | 188.20 | .00 |

GLSR07        PRELIMINARY INCOME STATEMENT                                                                    PAGE    7
              COMPANY 800 GPC CONSOLIDATED                                                          15:16:01 12/09/92
              MONTH ENDING NOVEMBER 30, 1992

                                                  MONTHLY        MONTHLY UNITS        YEAR-TO-DATE        YTD UNITS

              INCOME STATEMENT        ** CONTINUED **
630-180  EXP-GAS PLANT-OUTSIDE OPERATED         5,856.98              .00              107,105.62              .00
906-900  EXP-GAS PLANT-FIN ADJS.                2,745.96              .00                2,745.96              .00
         MISCELLANEOUS INCOME               219,899.85-*             .00 *         1,549,168.05-*       28,149.61 *

755-005  INTRA-CO INT <INCOME J/EXPENSE        30,040.90-             .00              205,894.SI-            .00
755-006  INTER-CO INT (INC)/EXP-HOMCO          14,992.40-             .00              176,774.28-           .00
774-001  INTEREST EXPENSE                       15,491.61             .00              126,265.56            .00
         INTEREST EXPENSE                    29,541.69-*             .00 *           256,403.23-*          .00 *

774-005  MISCELLANEOUS EXPENSE              1,708,853.43              .00            1,749,106.45            .00
         MISCELLANEOUS EXPENSE              1,708,853.43 *           .00 *           1,749,106.45 *        .00 *

         OTHER (INCOME)/EXPENSE            1,452,824.06 **                            228,170.62-**

         PRETAX NET INCOME                  529,640.73-***                         13,180,694.80-***

775-001  INCOME TAXES-FOREIGN                341,780.59              .00              347,820.08            .00
775-002  INCOME TAXES-FEDERAL             1,688,684.GO-              .00            1,688,684.GO-          .00
775-005  INCOME TAXES-STATE                  481,298.00              .00              481,298.00            .00
775-010  INCOME TAXES-DEFERRED             3,971,913.00              .00            3,971,913.00            .00
775-900  INCOME TAXES-FOREIGN-CAN CONV        4,347.61-                                 4,347.61-
         TAXES ON INCOME                  3,101,959.98 ***                         3,107,999.47 ***

         NET INCOME AFTER TAXES           2,572,319.25 ****                       10,072,695.33-****

                                                  LOSS                                 PROFIT

GLSR07    PRELIMINARY  INCOME  STATEMENT
COMPANY  800  GPC  CONSOLIDATED
MONTH ENDING NOVEMBER 30, 1992

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT | | | | |
| 510-001 | SALES-CRUDE OIL-GPC W.I. | 1,256,673.79- | .00 | 14,697,580.83- | 722,839.08 |
| 510-003 | SALES-CRUDE OIL-ESTIMATES | 158,519.19 | .00 | 537,280.82 | 16,107.21- |
| 510-004 | SALES-CRUDE OIL-INVENTORY VAR | .00 | .00 | 20,988.49 | 1,123.02- |
| 530-001 | SALES-ROYALTY OIL-GPC W.I. | 45,726.38- | .00 | 323,441.18- | 14,251.51 |
| 530-003 | SALES-ROYALTY OIL-ESTIMATES | 9,585.36 | .00 | 13,010.58- | 1,085.18 |
| 510-900 | SALES-CRUDE OIL-FIN ADJS | 38,698.00- | .00 | 106,146.00- | 7,949.00 |
| 510-903 | SALES-OIL-ACCRUAL FIN ADJS | .00 | .00 | 348,771.00- | 6,052.00 |
| | OIL SALES | 1,172,993.62-* | .00 * | 14,930,680.28-* | 734,946.54 * |
| 520-001 | SALES-GAS-GPC W.I. | 4,872,231.49- | .00 | 50,160,067.72- | 21,764,588.31 |
| 520-003 | SALES-GAS-ESTIMATES | 667,079.21 | .00 | 855,406.77- | 14,015.29 |
| 540-001 | SALES-ROYALTY GAS-GPC W.I. | 166,657.59- | .00 | 1,332,384.71- | 606,541.72 |
| 540-003 | SALES-ROYALTY GAS-ESTIMATES | 11,937.65 | .00 | 24,754.95- | 6,417.85 |
| 570-001 | SALES-PLT PROD LSE LEV-GPC UI | 168,483.59- | .00 | 2,037,024.97- | 6,022,707.53 |
| 570-003 | SALES-PLT PROD LSE LEV-EST | 14,260.83- | .00 | 23,617.51 | 18,186.65- |
| 590-001 | CROWN ROYALTY-SALES | 20,080.26 | .00 | 301,683.86 | .00 |
| 520-900 | SALES-GAS-FIN ADJS | 780,252.99- | .00 | 2,212,324.99- | 572,329.00 |
| 520-903 | SALES-GAS-ACCRUAL FIN ADJS | 647,294.00- | .00 | 103,967.00 | 144,134.00- |
| 570-900 | SALES-PP LSE LEV-FIN ADJS | 182,751.01 | .00 | 2,028,508.01 | 6,132,076.00- |
| 570-903 | SALES-PP LSE LEV-ACCR FIN ADJS | .00 | .00 | 21,683.00- | 99,954.00- |
| | GAS SALES | 5,767,332.36-* | .00 * | 54,185,870.73-* | 22,632,249.05 * |
| 580-001 | SALES-SULPHUR-GPC W.I. | 48,169.85- | .00 | 530,740.21- | 8,627.54 |
| 580-003 | SALES-SULPHUR-ESTIMATES | 5,548.44 | .00 | 25,298.03 | 1,724.25 |
| | SULPHUR SALES | 42,621.41-* | .00 * | 505,442.18-* | 10,351.79 * |
| 772-001 | GAS MARKETING-PURCHASES | 4,519,257.49 | .00 | 32,814,838.23 | 19,369,719.00 |
| 772-002 | GAS MARKETING-SALES | 4,571,952.82- | .00 | 33,438,675.35- | 19,278,686.00- |
| | OIL AND GAS MARKETING REVENUES | 52,695.33-* | .00 * | 623,837.12-* | 91,033.00 * |
| | TOTAL SALES | 7,035,642.72-** | .00 * | 70,245,830.31-** | |
| 610-071 | LOE-TAXES & LICENSES | .00 | .00 | .00 | .00 |
| 610-171 | LOE-AD VALOREM TAX ACCRUAL | 23,150.33 | .00 | 490,208.81 | .00 |
| 611-171 | LOE-AD VALOREM TAX | 52,905.64 | .00 | 525,303.11 | .00 |
| 612-171 | LOE-GPC-TAXES & LICENSES | .00 | .00 | 198.66 | .00 |
| 610-285 | LOE-OIL PROD/SEV TAX ACCR | 6,550.62- | .00 | 32,150.39- | .00 |
| 610-286 | LOE-GAS PROD/SEV TAX ACCR | 72,627.46- | .00 | 34,123.21 | .00 |
| 610-295 | LOE-OIL PROD/SEV TAX | 105,941.14 | .00 | 1,120,637.91 | 742,755.52 |
| 610-296 | LOE-GAS PROD/SEV TAX | 246,338.45 | .00 | 2,751,327.52 | 23,031,780.32 |
| 640-085 | EXP-ROY-OIL PROD/SEV TAX-ACCRU | 369.64- | .00 | 968.45 | .00 |
| 640-086 | EXP-ROY-GAS PROD/SEV TAX-ACCRU | 659.52 | .00 | 2,457.49 | .00 |
| 640-095 | EXP-ROY-OIL PROD/SEV TAX | 2,964.84 | .00 | 23,398.32 | 50,593.01 |
| 640-096 | EXP-ROY-GAS PROD/SEV TAX | 5,989.97 | .00 | 74,825.40 | 740,880.26 |
| 904-910 | LOE-PROD & AD VAL TAX-FIN ADJS | 185,276.72 | .00 | 300,658.12 | .00 |
| | PRODUCTION & AD VALOREM TAXES | 547,678.89 * | .00 * | 5,291,956.61 * | 24,566,009.11 * |
| 610-030 | LOE-MAJOR WORKOVER | .00 | .00 | .00 | .00 |
| 610-130 | LOE-MAJOR WORKOVER | .00 | .00 | 5,421.93 | .00 |
| 611-130 | LOE-MAJOR WORKOVER W/O AFE | .00 | .00 | 44,901.64 | .00 |
| 610-406 | EXP-MAJOR WORK-COMP/SERV RIG | 18,114.02 | .00 | 89,587.66 | .00 |
| 610-407 | EXP-MAJOR WORK-FUEL/WATER/POWR | 1,051.56 | .00 | 3,887.39 | .00 |
| 610-408 | EXP-MAJOR WORK-MUD OR CHEMICAL | 164.09 | .00 | 534.16 | .00 |

GLSR07    PRELIMINARY  INCOME  STATEMENT
          COMPANY  800  GPC  CONSOLIDATED
          MONTH  ENDING  NOVEMBER  30,  1992

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME  STATEMENT          ** CONTINUED ** | | | | |
| 610-412 | EXP-MAJOR  WORK-LOCATION/ROAD | 531.25 | .00 | 707.47 | .00 |
| 610-413 | EXP-MAJOR  WORK-WELLSITE  CONSUL | .00 | .00 | 9,400.95 | .00 |
| 610-415 | EXP-MAJOR  WORK-LOGGING | .00 | .00 | 632.07 | .00 |
| 610-417 | EXP-MAJOR  WORK-WIRELINE  SERV | 2,347.25 | .00 | 18,376.80 | .00 |
| 610-418 | EXP-MAJOR  WORK-CONTRACT  LABOR | 2,116.76 | .00 | 15,156.56 | .00 |
| 610-419 | EXP-MAJOR  WORK-COMPANY  LABOR | .00 | .00 | 764.50 | .00 |
| 610-420 | EXP-MAJOR  WORK-CEMENTING | .00 | .00 | 8,426.16 | .00 |
| 610-421 | EXP-MAJOR  WORK-PERFORATING | .00 | .40 | 2,935.48 | .00 |
| 610-422 | EXP-MAJOR  WORK-FRAC/GRAVEL  PAC | .00 | .00 | 8,287.96 | .00 |
| 610-423 | EXP-MAJOR  WORK-ACIDIZE  &  STIM | 1,983.94 | .00 | 7,277.10 | .00 |
| 610-424 | EXP-MAJOR  WORK-RENT  TOOLS/EQP | 14,453.74 | .00 | 64,098.95 | .00 |
| 610-425 | EXP-MAJOR  WORK-TRANSPORTATION | 2,213.52 | .00 | 12,185.26 | .00 |
| 610-429 | EXP-MAJOR  WORK-OVERHEAD | .00 | .00 | 5,200.59 | .00 |
| 610-431 | EXP-MAJOR  WORK-MISCELLANEOUS | 112.68 | .00 | 483.23 | .00 |
| 610-446 | EXP-MAJOR  WORK-CSG-FLOAT  EQUIP | .00 | .00 | 1,618.36 | .00 |
| 610-449 | EXP-MAJOR  WORK-TUBING  INSPECT | .00 | .00 | 1,210.42 | .00 |
| 610-450 | EXP-MAJOR  WORK-SUBSURF  EQUIP | 906.82 | .00 | 4,423.56 | .00 |
| 610-451 | EXP-MAJOR  WORK-WELLHEAD  EQUIP | .00 | .00 | 1,736.54 | .00 |
| 610-456 | EXP-MAJOR  WORK-MISC  CONNECTION | .00 | .00 | 21.98 | .00 |
| 610-457 | EXP-MAJOR  WORK-NON  CONTR  EQUIP | .00 | .00 | 64.32- | .00 |
| 610-458 | EXP-MAJOR  WORK-INSTALLATION | .00 | .00 | 1,623.61- | .00 |
| 904-920 | LOE-WORKOVERS-FIN  ADJS | 21.20 | .00 | 1,144.46 | .00 |
| | WORKOVERS | 44,016.83 * | .00 * | 306,733.25 * | .00 * |
| | | | | | |
| 610-020 | LOE-REPAIR/MAINT  SURFACE  EQUIP | .00 | .00 | .00 | .00 |
| 610-021 | LOE-REPAIR/MAINT-SUBSURFACE | .00 | .00 | .00 | .00 |
| 610-022 | LOE-ROUTINE  WELL  SERVICE | .00 | .00 | .00 | .00 |
| 610-023 | LOE-TREATING  &  CHEMICALS | .00 | .00 | .00 | .00 |
| 610-024 | LOE-LOCATION  &  ROAD  REPAIR | .00 | .00 | .00 | .00 |
| 610-120 | LOE-REPAIR  &  MAINT-SURFACE | 65,022.10 | .00 | 593,705.41 | .00 |
| 611-120 | LOE-REPAIR  &  MAINT-SURFACE | 2,814.80- | .00 | 115,794.04 | .00 |
| 612-120 | LOE-GPC-REPAIR  &  MAINT-SURFACE | .00 | .00 | 85.27 | .00 |
| 610-121 | LOE-REPAIR  &  MAINT-SUBSURFACE | 17,108.48 | .00 | 129,147.11 | .00 |
| 611-121 | LOE-REPAIR  /  MAINT-SUBSURFACE | 9,686.59 | .00 | 108,504.67 | .00 |
| 610-122 | LOE-ROUTINE  WELL  SERVICE | 2,754.89 | .00 | 42,922.19 | .00 |
| 611-122 | LOE-ROUTINE  WELL  SERVICE | 27,163.52 | .00 | 308,792.50 | .00 |
| 612-122 | LOE-GPC-ROUTINE  WELL  SERVICE | .00 | .00 | 11.02 | .00 |
| 610-123 | LOE-TREATING  &  CHEMICALS-WATER | 9,680.40 | .00 | 171,950.67 | .00 |
| 611-123 | LOE-TREATING  &  CHEMICALS-WATER | 2,705.07 | .00 | 97,991.39 | .00 |
| 612-123 | LOE-GPC-TREAT  &  CHEM-WATER | .00 | .00 | 9.40 | .00 |
| 610-125 | LOE-TREATING  4  CHEMICALS-OIL | 5,124.33 | .00 | 14,871.23 | .00 |
| 611-125 | LOE-TREATING  &  CHEMICALS-OIL | .00 | .00 | 3,158.30 | .00 |
| 610-124 | LOE-LOCATION  &  ROAD  REPAIR | 6,336.34 | .00 | 96,115.66 | .00 |
| 611-124 | LOE-LOCATION  &  ROAD  REPAIR | 831.24 | .00 | 36,623.78 | .00 |
| 611-501 | LOE-ENVIR-LEAK  REPAIR/REPLACE | .00 | .00 | 4,248.16 | .00 |
| 612-124 | LOE-GPC-LOCATION  &  ROAD  REPAIR | .00 | .00 | .11 | .00 |
| 610-501 | LOE-ENVIR-LEAK  REPAIR/REPLACE | 1,541.35 | .00 | 13,597.29 | .00 |
| 904-930 | LOE-MAINT  &  REPAIR-FIN  ADJS | 3,225.80- | .00 | 12,348.65- | .00 |
| | MAINTENANCE,  REPAIR  &  SUPPLIES | 141,913.71 * | .00 * | 1,724,179.55 * | .00 * |
| | | | | | |
| 610-141 | LOE-SALTWATER  DISPOSAL | 29,954.04 | .00 | 392,678.81 | .00 |
| 612-141 | LOE-GPC-SALTWATER  DISPOSAL | | | 6.19- | .00 |
| 610-142 | LOE-WASTE  DISPOSAL | 2,954.67 | .00 | 18,631.09 | .00 |

GLSR07    PRELIMINARY INCOME STATEMENT
COMPANY 800 GPC CONSOLIDATED
MONTH ENDING NOVEMBER 30, 1992

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT              ** CONTINUED ** | | | | |
| 904-940 | LOE-SWD-FINANCIAL ADJS | 242.24- | .00 | 2,985.71- | .00 |
| | SALTWATER DISPOSAL | 32,666.47 * | .00 * | 408,318.00 * | .00 * |
| 610-140 | LOE-POWER & FUEL | 45,442.62 | .00 | 522,609.80 | .00 |
| 612-140 | LOE-GPC-POWER & FUEL | .00 | .00 | 1.57 | .00 |
| 904-950 | LOE-POWER & FUEL-FIN ADJS | 230.18- | .00 | 1,781.66- | .00 |
| | POWER AND FUEL | 45,212.44 * | .00 * | 520,829.71 * | .00 * |
| 610-043 | LOE-COMPRESSOR COSTS | .00 | .00 | .00 | .00 |
| 610-051 | LOE-LEGAL & PROFESSIONAL | .00 | .00 | .00 | .00 |
| 610-070 | LOE-CLAIMS & DAMAGES | .00 | .00 | 6.52- | .00 |
| 610-075 | LOE-OTHER INDIRECT COSTS | .00 | .00 | .00 | .00 |
| 610-275 | LOE-GPC NET ADJUSTMENTS | .00 | .00 | .00 | .00 |
| 610-101 | LOE-PUMPERS SALARIES | 27,363.77 | .00 | 281,924.17 | .00 |
| 610-102 | LOE-PUMPER BURDEN | 5,730.87 | .00 | 62,700.47 | .00 |
| 610-103 | LOE-FOREMAN SALARIES | 34,801.85 | .00 | 365,963.61 | .00 |
| 610-104 | LOE-FOREMAN BURDEN | 6,041.96 | .00 | 65,116.82 | .00 |
| 610-107 | LOE-CONTRACT PUMPER | 52,704.36 | .00 | 575,556.62 | .00 |
| 610-108 | LOE-AUTO EXPENSE | 15,369.97 | .00 | 157,731.41 | .00 |
| 610-109 | LOE-TELEPHONE/MOBILPHONE | 3,779.36 | .00 | 42,330.37 | .00 |
| 610-110 | LOE-MEALS | 836.04 | .00 | 11,029.83 | .00 |
| 610-111 | LOE-TRAVEL | 203.03 | .00 | 5,748.99 | .00 |
| 610-143 | LOE-COMPRESSOR REPAIR & MAINT | 9,000.88 | .00 | 91,574.69 | .00 |
| 610-145 | LOE-INJECTION WATER | 1,658.82 | .00 | 18,688.98 | .00 |
| 610-148 | LOE-FACILITY ALLOCATION | 14,944.61- | .00 | 170,618.14- | .00 |
| 610-150 | LOE-SURFACE RENT/SHUT-IN ROY | 1,233.08 | .00 | 46,846.59 | .00 |
| 610-160 | LOE-DISTRICT EXPENSE | 511.38 | .00 | 4,845.94 | .00 |
| 610-161 | LOE-OVERHEAD | 164,167.37 | .00 | 1,885,862.06 | .00 |
| 610-170 | LOE-CLAIMS & DAMAGES | .00 | .00 | 590.61 | .00 |
| 610-172 | LOE- INSURANCE | 23,757.97 | .00 | 269,688.48 | .00 |
| 610-287 | LOE-OPERATED HDLG CHGS ACCRUAL | 48,012.88 | .00 | 6,637.03 | .00 |
| 610-297 | LOE-OPERATED HANDLING CHARGES | 18,726.33 | .00 | 419,126.34 | 1,930,326.73 |
| 610-288 | EXP- WELL-SHRINKAGE | .00 | .00 | 96,002.42 | .00 |
| 610-515 | LOE-SAFETY-EQUIPMENT/TRAINING | 1,041.28 | .00 | 9,416.97 | .00 |
| 611-143 | LOE-COMPRESSOR COSTS | 123,886.86 | .00 | 1,255,972.21 | .00 |
| 611-151 | LOE-LEGAL FEES | 25,960.27 | .00 | 332,014.85 | .00 |
| 611-170 | LOE-CLAIMS & DAMAGES | 2,581.38- | .00 | 3,071.35 | .00 |
| 611-175 | LOE-OTHER INDIRECT COSTS | 129.26- | .00 | 3,057.48 | .00 |
| 611-175 | LOE-OTHER INDIRECT COSTS | 44,643.92- | .00 | 390,172.89- | .00 |
| 611-515 | LOE-SAFETY-EQUIPMENT/TRAINING | .00 | .00 | 1,897.57 | .00 |
| 612-101 | LOE - GPC - PUMPER SALARIES | .00 | .00 | 35.52 | .00 |
| 612-102 | LOE-GPC- PUMPER BURDEN | .00 | .00 | 7.77 | .00 |
| 612-103 | LOE-GPC- FOREMAN SALARIES | .00 | .00 | 40.61 | .00 |
| 612-104 | LOE-GPC- FOREMAN BURDEN | .00 | .00 | 7.53 | .00 |
| 612-107 | LOE-GPC-CONTRACT PUMPER | .00 | .00 | 135.43 | .00 |
| 612-108 | LOE-GPC-AUTO EXPENSE | .00 | .00 | 18.51 | .00 |
| 612-109 | LOE-GPC- TELEPHONE/MOBILEPHONE | .00 | .00 | 6.95 | .00 |
| 612-110 | LOE - GPC-MEALS | .00 | .00 | 1.61 | .00 |
| 612-111 | LOE-GPC-TRAVEL | .00 | .00 | 1.62 | .00 |
| 612-143 | LOE-GPC-COMPRESSOR COSTS | .00 | .00 | 79.69 | .00 |
| 612-150 | LOE-GPC - SURF RENT/SHUTIN ROY | .00 | .00 | 104.37 | .00 |
| 612-151 | LOE - GPC - LEGAL FEES | .00 | .00 | 12,144.53 | .00 |
| 612-161 | LOE-GPC- OVERHEAD | 326.71 | .00 | 3,931.72 | .00 |

GLSR07    PRELIMINARY  INCOME  STATEMENT
COMPANY  800 GPC CONSOLIDATED
MONTH ENDING NOVEMBER 30, 1992

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME  STATEMENT        ** CONTINUED  ** | | | | |
| 612-172 | LOE-GPC-INSURANCE | .00 | .00 | 28.07 | .00 |
| 612-175 | LOE-GPC-OTHER NET ADJUSTMENTS | 6,553.45- | .00 | 37,643.36- | .00 |
| 612-299 | LOE-GPC-FACILITY ALLOCATION | .00 | .00 | .00 | .00 |
| 904-297 | LOE-HANDLING CHGS-FIN ADJ | .00 | .00 | A.172.00- | .00 |
| 904-960 | LOE-OTHER-FIN ADJS | 2,984.76- | .00 | 16,339.93- | .00 |
| | OTHER LEASE OPERATING EXPENSE | 493,277.66 * | .00 * | 5,412,006.95 * | 1,930,326.73 * |
| | | | | | |
| 610-162 | LOE-OVERHEAD - NON-OPERATED | 42,722.00 | .00 | 469,942.00 | .00 |
| 610-289 | LOE-NON OP-HNDL CHGS ACCRUAL | 4,388.51 | .00 | 81,348.98 | .00 |
| 610-298 | LOE-NON OP-HANDLING CHARGES | 66,941.28 | .00 | 1,215,922.73 | 1,870,969.82 |
| 610-180 | LOE-OUTSIDE OPERATED | 373,965.63 | .00 | 1,200,006.67 | .00 |
| 612-180 | LOE-GPC - OUTSIDE OPERATED | 30,818.28- | .00 | 460,322.97- | .00 |
| 610-480 | EXP-MAJOR WORK-OUTSIDE OPERATE | 149,779.49 | .00 | 383,756.89 | .00 |
| 610-970 | LOE-OUTSIDE OP-YR END ACCRUAL | .00 | .00 | 130,000.00- | .00 |
| 904-29B | LOE-NON OP-HNDL CHGS-FIN ADJ | 38,719.00 | .00 | 181,497.00- | .00 |
| 904-970 | LOE-OUTSIDE OP-FIN ADJS | 86,180.90- | .00 * | A,652,854.34 | .00 |
| | OUTSIDE OPERATED BILLINGS | 559,516.73 * | .00 * | 7,232,011.64 * | 1,870,969.82 * |
| | | | | | |
| | TOTAL LOE | 1,864,2B2.73 ** | | 20,896,035.71 ** | |
| | | | | | |
| 750-004 | DEPRE EXPENSE-GAS PLANTS | 8,819.74 | .00 | 99,034.01 | .00 |
| 750-006 | DEPRE EXPENSE-WELL EQUIP | 16,810.67 | .00 | A,738,268.19 | .00 |
| 750-006 | DEPRE EXPENSE-AUTOS | 430.52 | .00 | 5,431.94 | .00 |
| 750-007 | DEPRE EXPENSE-FACILITIES | 137.62- | .00 | A1,890.25 | .00 |
| 750-008 | DEPRE EXPENSE-FURN & FIX | 3,354.74 | .00 | 37,992.89 | .00 |
| 750-009 | DEPRE EXPENSE-COMPUTER EQUIP | 60,875.51 | .00 | 910,727.04 | .00 |
| 750-101 | DEPL EXPENSE-PROD LEASEHOLD | 53,740.78 | .00 | 10,610,151.48 | .00 |
| 750-102 | DEPL EXPENSE-ROYALTIES | 985.23 | .00 | 173,144.46 | .00 |
| 750-103 | DEPL EXPENSE-IDC | 106,945.36 | .00 | 9,301,649.33 | .00 |
| 750-201 | AMORT EXPENSE-LSHOLD IMPROVE | 318.36 | .00 | 16,033.26 | .00 |
| 750-900 | DD & A EXPENSE-FINANCIAL ADJS | 2,439,782.21 | .00 | 2,582,948.01 | .00 |
| | DEPRECIATION DEPLETION & AMORT | 2,691,925.50 ** | | 28,417,239.86 ** | |
| | | | | | |
| 742-001 | AMORT OF NON-PROD LEASEHOLD | 144,583.33 | .00 | 1,590,416.63 | .00 |
| | SURRENDERED LEASES | 144,583.33 ** | | 1,590,416.63 ** | |
| | | | | | |
| 741-002 | EXPL DRY HOLES-IDC | 318,008.78- | .00 | 365,207.11 | .00 |
| 741-003 | EXPL DRY HOLES-WELL EQUIP. | 22,914.40 | .00 | A7,256.28- | .00 |
| 741-900 | DRY HOLE-FINANCIAL ADJS. | 295,094.38 | .00 | 22,508.83- | .00 |
| | DRY HOLES | .00 ** | | 295,442.00 ** | |
| | | | | | |
| 744-001 | DELAY RENTAL EXPENSE-GPC SHARE | 3,875.21 | .00 | 78,373.98 | .00 |
| 744-101 | DELAY RENTAL EXPENSE | 255.26 | .00 | 18,196.28 | .00 |
| 908-900 | DELAY RENTALS-FINANCIAL ADJS | 45.53 | .00 | 1,236.82- | .00 |
| | DELAY RENTALS | 4,176.00 ** | | 0H 95,333.44 ** | |
| | | | | | |
| 740-101 | G&G-AFE-SEISMIC SHOOTING | .00 | .00 | 16,834.56 | .00 |
| 740-102 | G&G-AFE-SEISMIC PROCESSING | 849.66 | .00 | 55,674.45 | .00 |
| 740-103 | G&G-AFE-SEISMIC REPROCESSING | .00 | .00 | 18,998.97 | .00 |
| 740-104 | G&G-AFE-SEISMIC GROUP SHOOT | 3,900.00 | .00 | 8,730.80 | .00 |
| 740-105 | G&G-AFE-SEISMIC TRADE | 1,023.75 | .00 | 21,885.94 | .00 |
| 740-106 | G&G-AFE-SEISMIC MISCELLANEOUS | .00 | .00 | 121,206.21 | .00 |
| 740-107 | G&G-AFE-SEISMIC SYNTHETICS | .00 | .00 | 2,147.50 | .00 |

GLSR07    PRELIMINARY INCOME STATEMENT
          COMPANY 800 GPC CONSOLIDATED
          MONTH ENDING NOVEMBER 30, 1992

| | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|
| INCOME STATEMENT        ** CONTINUED ** | | | | |
| 740-110 G&G-AFE-GRAVITY DATA | .00 | .00 | 6,010.29 | .00 |
| 740-111 G&G-AFE-MAGNETIC DATA | .00 | .00 | 7,225.00 | .00 |
| 740-112 G&G-AFE-GEOCHEMICAL DATA | .00 | .00 | 2,067.00 | .00 |
| 740-113 G&G-AFE-CORE DATA | 1,500.00- | .00 | 2,500.00 | .00 |
| 740-140 G&G-AFE-GEOLOGICAL CONSULTING | 4,441.96 | .00 | 21,073.88 | .00 |
| 740-141 G&G-AFE-GEOPHYSICAL CONSULTING | .00 | .00 | 13,067.93 | .00 |
| 740-150 G&G-AFE-OTHER | .00 | .00 | 31,085.28 | .00 |
| 740-202 G&G-SEISMIC PROCESSING | 1,888.55 | .00 | 4,650.28 | .00 |
| 740-203 G&G-SEISMIC REPROCESSING | 1,644.90 | .00 | 4,984.61 | .00 |
| 740-204 G&G-SEISMIC GROUP SHOOT | .00 | .00 | 8,002.50 | .00 |
| 740-205 G&G-SEISMIC TRADE | .00 | .00 | .00 | .00 |
| 740-206 G&G-SEISMIC MISCELLANEOUS | 394.51 | .00 | 29,055.11 | .00 |
| 740-207 G&G-SEISMIC SYNTHETICS | 637.50 | .00 | 4,037.50 | .00 |
| 740-212 G&G-GEOCHEMICAL DATA | .00 | .00 | 1,572.00 | .00 |
| 740-213 G&G-CORE DATA | .00 | .00 | 1,200.00 | .00 |
| 740-215 G&G-LOGS & SURVEY DATA | .00 | .00 | 15,087.98 | .00 |
| 740-230 G&G-LEASE OWNERSHIP | .00 | .00 | 16,774.12 | .00 |
| 740-240 G&G-CONSULTING | 589.05 | .00 | 14,995.30 | .00 |
| 740-250 G&G-OTHER | 3,375.00 | .00 | 7,450.30 | .00 |
| 907-900 G&G-FINANCIAL ADJS. | 17,244.88- | .00 | 63,682.49 | .00 |
| GEOLOGICAL & GEOPHYSICAL EXP | .00 ** | | 500,000.00 ** | |
| | | | | |
| 730-001 G&A-SALARIES-OFFICE | 555,653.83 | .00 | 6,294,790.11 | .00 |
| 730-002 G&A-PAYROLL BENEFITS | 87,784.70 | .00 | 1,156,305.55 | .00 |
| 730-003 G&A-INCENT COMPENSATION PLAN | 40,000.00 | .00 | 235,500.00 | .00 |
| 730-005 G&A-EMPLOYMENT COSTS | .00 | .00 | 3,799.83 | .00 |
| 730-007 G&A-CONTRACT LABOR | 50,375.97 | .00 | 377,596.98 | .00 |
| 730-010 G&A-MEALS & ENTERTAINMENT | 8,666.25 | .00 | 101,459.87 | .00 |
| 730-011 G&A-TRAVEL EXPENSE | 15,695.90 | .00 | 214,452.15 | .00 |
| 730-015 G&A-VEHICLE EXPENSE | 2,220.17 | .00 | 14,899.22 | .00 |
| 730-020 G&A-OFFICE REPAIRS | 988.65 | .00 | 24,670.24 | .00 |
| 730-024 G&A-COPY (XEROX) COSTS | 7,929.69 | .00 | 98,746.93 | .00 |
| 730-043 G&A-RENTAL EQUIPMENT | 1,983.42 | .00 | 23,519.26 | .00 |
| 730-044 G&A-COMPUTER RENT & SUPPLIES | 534.21- | .00 | 51,189.77 | .00 |
| 730-045 G&A-TIMESHARING COSTS | 220.94 | .00 | 9,080.58 | .00 |
| 730-046 G&A-TELEPHONE/COMMUNICATIONS | 13,222.02 | .00 | 138,116.92 | .00 |
| 730-047 G&A-POSTAGE | 2,026.72 | .00 | 71,847.06 | .00 |
| 730-048 G&A OFFICE SUPPLIES | 8,184.91 | .00 | 117,073.68 | .00 |
| 730-049 G&A-OFFICE RENT | 60,561.80 | .00 | 649,663.79 | .00 |
| 730-050 G&A-DUES SUBSCRIPTIONS MAPS | 17,919.29 | .00 | 217,560.99 | .00 |
| 730-051 G&A-LEGAL & PROFESSIONAL FEES | 6,932.46- | .00 | 271,097.53 | .00 |
| 730-056 G&A-ADVERTISING | 440.00 | .00 | 5,665.36 | .00 |
| 730-060 G&A-CONTRIBUTIONS | 688.74 | .00 | 34,378.33 | .00 |
| 730-071 G&A- TAXES & LICENSES | 48,001.91- | .00 | 24,709.00 | .00 |
| 730-072 G&A- INSURANCE | 1,105.00 | .00 | 12,155.00 | .00 |
| 730-075 G&A-MISCELLANEOUS | 32,845.79- | .00 | 327,283.79- | .00 |
| 730-077 G&A-BAD DEBT EXPENSE | .00 | | .00 | .00 |
| 730-087 G&A-DIVESTMENT EXPENSE | 28,215.67 | .00 | 178,456.61 | .00 |
| 730-088 G&A-CHARGE TO OTHER OPERATIONS | 43,557.92- | .00 | 359,020.05- | .00 |
| 730-089 G&A-CLEAR ADM OVERHEAD | 348,166.28- | .00 | 4,066,018.58- | .00 |
| 730-100 G&A-OVERHEAD SUSPENSE | .00 | .00 | .00 | .00 |
| GENERAL & ADMINISTRATIVE EXP | 423,845.10 ** | | 5,574,473.22 ** | |



MONTHLY UNIT

YEAR-TO-DATE

ONT IN

171

171

PROCEEDS COMPUTER EQ IP, AL
PR 1 , ALE
AL L/ A- ILD N
AL 1/ AN
AL 1/ A-U MENT
BK AL L/ AA- YALTIE
L L/ IN L HLD
L 1/

MISC INCOME-COMIT
MI IN AND
MI IN
MISC INCOME- IT

10

33

2

15

143

NT-
NT-
NT-
NT-
NT-
NT-
NT-
NT-

1

GLSR07    PRELIMINARY INCOME STATEMENT
          COMPANY BOO GPC CONSOLIDATED
          MONTH ENDING NOVEMBER 30, 1992

PAGE    7
8:49:02  12/09/92

| | | MONTHLY | MONTHLY UNITS | YEAR-TO-DATE | YTD UNITS |
|---|---|---|---|---|---|
| | INCOME STATEMENT            ** CONTINUED ** | | | | |
| 630-180 | EXP-GAS PLANT-OUTSIDE OPERATED | 5,856.98 | .00 | 107,105.62 | .00 |
| 906-900 | EXP-GAS PLANT-FIN ADJS. | 2,745.96 | .00 | 7,745.96 | .00 |
| | MISCELLANEOUS INCOME | 219,899.85-* | .00 * | 1,549,168.05-* | 28,149.61 * |
| | | | | | |
| 755-005 | INTRA-CO INT (INCOME)/EXPENSE | 30,040.90- | .00 | 205,894.51- | .00 |
| 755-006 | INTER-CO INT (INC)/EXP-HOMCO | 14,992.40- | .00 | 176,774.28- | .00 |
| 774-001 | INTEREST EXPENSE | 15,491.61 | .00 | 126,265.56 | .00 |
| | **INTEREST EXPENSE** | 29,541.69-* | .00 * | 256,403.23-* | .00 * |
| | | | | | |
| 774-005 | MISCELLANEOUS EXPENSE | 1,708,853.43 | .00 | 1,749,106.45 | .00 |
| | MISCELLANEOUS EXPENSE | 1,708,853.43 * | .00 * | 1,749,106.45 * | .00 * |
| | | | | | |
| | OTHER (INCOME)/EXPENSE | 1,452,824.06 ** | | 228,170.62-** | |
| | | | | | |
| | PRETAX NET INCOME | 454,006.00-*** | | 13,105,060.07-*** | |
| | | | | | |
| 775-001 | INCOME TAXES-FOREIGN | 20,797.59 | .00 | 26,837.08 | .00 |
| 775-900 | INCOME TAXES-FOREIGN-CAN CONV | 4,347.61- | .00 | 4,347.61- | .00 |
| | TAXES ON INCOME | 16,449.98 *** | | 22,489.47 *** | |
| | | | | | |
| | NET INCOME AFTER TAXES | 437,556.02-**** | | 13,082,570.60-**** | |
| | | PROFIT | | PROFIT | |

SCHEDULE TO SECTION 5.03(p)

Various Contingencies

| Description | Amount as of November 30, 1992* |
|---|---|
| Royalty Litigation concerning the Red Moon, Indian School and Hughes 2-29 Wells (contained in Account #316-002) | $464,767.60 |
| Roy Barker/Parker Lease gas balancing revenues (contained in Account #316-003) | 233,931.00 |
| Title and royalty disputes concerning the Gomez South No. 1-#, No. 1-A, No. 2 and No. 2-A Wells (contained in Account #316-092) | 213,114.21 |
| Reserve for possible production taxes pertaining to gas contract settlements (contained in Account #336-006) | 841,323.67 |
| Reserve for claims concerning Laverne and Moreland Plants and gas marketing royalties claims (contained in Account #336-001) | 238,929.00 |
| Reserve for possible windfall profits tax payable (contained in Account #311-001) | 395,404.13 |
| | $2,387,469.61 |

\* The dollar amounts shown herein are for illustrative purposes only and are not intended to define the amounts ultimately attributable to the contingencies described herein.

GEC 000180

$\rangle$c      ₒU ( ☺ SecT.☀   C, 0 (

11.   Grace Petroleum Ccrporation    Incorporated in Delaware
          Qualified in    Alabama         Alaska
                          Arkansas        Arizona
                          California      Colorado
                          Florida         Georgia
                          Idaho           Kansas
                          louisians       Michigan
                          Minnesota       Mississippi
                          Montana         Nebraska
                          Nevada          New Mexico
                          North Dakota    Ohio
                          Oklahoma        Oregon
                          Aouih Dakota    Texas
                          Dtah            Virginia
                          v'est Virginia  Wyoming

   a)    Berry Gas certany         Incorporated in Oklahoma

   b)    CPC Marketing :ompany     incorporated in Delaware
             Qualiliei in   Alabama         Colorado
                            Loui$iana       Michigan
                            Mississippi     Montana
                            New Mexico      Oklahoma
                            Texas           Wyoming

GEC 000181

z)     GPC Tranupor!..:.-, iric.     **Incorporated in Uo1A-<ire**
                 **Qualities in     Louisiana     Michigan**

      i.     Spartan Intrastate Pipeline System (26. ꝛ11⁵1꙳
           owned TK꙳.IS General Partnership)

d)

e)     **Petrodyne, Ltd.**     **Federal Canadian Corporation**
                           **Domestic Alberta Corporation**
           **Qualified in British** Columbia **and** Saskatchewan

GEC 000182

SCHEDULE TO SECTION 6.04

Authorized, issued and outstanding shares of 1,000 shares of common stock, par value $1.00.

GEC 000183

### SCHEDULE TO SECTION 6.05

Louisiana Intrastate Gas Corporation v. Grace Petroleum Corporation, et al.;

Miller Brothers, et al. v. State of Michigan, et al. (Grace Petroleum Corporation is not a party but owns an interest in the properties that are the subject of the litigation); and

Blackburn, et al. v. Grace Petroleum Corporation, et al.

Schulte, et al. v. Apache Corporation (Grace Petroleum is not a party but owns an interest in the properties that are the subject of the litigation);

Cheyenne-Arapaho Tribes of Oklahoma v. United States of America, et al. (Grace Petroleum Corporation is not a party but owns an interest in the properties that are the subject of the litigation);

W. A. Moncrief, Jr., et al. (including Grace Petroleum Corporation) v. The State of Wyoming, et al.;

John N. Williamson, et al. v. Grace Petroleum Corporation, et al.;

HBOP, Ltd. v. W. R. Grace & Co., et al. (including Grace Petroleum Corporation);

Hadson Petroleum (USA), Inc., et al. (including Grace Petroleum Corporation) v. Magic Circle Energy Corporation, et al.;

Bandera Land & Cattle Co., et al. (including Grace Petroleum Corporation) v. Travis County Education District, et al.;

Alford, et al. v. Estate of Felton T. Leggett, et al. (including Grace Petroleum Corporation); and

Grace Petroleum Corporation v. Curtis, et al.

Knapp, et al. v. BHP Petroleum Co. Inc. (Grace Petroleum Corporation is not a party but owns an interest in the properties that are the subject of the litigation);

Northcott Exploration Co., Inc. v. Grace Petroleum Corporation and W. R. Grace & Co.-Conn.;

BHP Petroleum Co., Inc. v. The State of Wyoming (Grace Petroleum Corporation is not a party but owns an interest in the properties that are the subject of the litigation);

Iochem Corporation v. Jerry R. Bailey and Grace Petroleum Corporation;

William "Buster" H. Cole v. Amoco Production Company, et al. (including Grace Petroleum Corporation);

National Oilwell Inc. v. Grace Petroleum Corporation, et al.;

Carolyn A. Schaefer v. Karl M. Schaefer, et al. (including Grace Petroleum Corporation);

Tommy L. Parker, et al. v. Grace Petroleum Corporation;

GEC 000184

(

PRI Producing, Inc. et al. (including Grace Petroleum Corporation) v. HG&O, et al.;

CXY Energy Inc., et al. v. Plaquemines Parish Government, et al. (including Grace Petroleum Corporation);

Grace Petroleum Corporation v. Commissioner of Internal Revenue (tax matter);

Davis v. Grace Petroleum Corporation

McCollum v. Apache Corporation et al.

First City Trust Co. v. Noble, Petrodyne, Ltd. et al.

Claim by Lakeridge Investment, Ltd. and Amoco Canada Resources as to Section 8 and 9 wells in Alberta, Canada

FERC Proceeding regarding Laverne and Moreland Plants

GEC 000185

Post-IP brand lax transmittal memo 767
From /

& *on Tylor*

W. ft. GRACE & CO.
DETAIL aAIU LISTING
F6ft"DATA VALUED AS" 6f12/31'9f"

Depl.

**TV/777**(7-0WS'

ROC? VEAR". 1985    ▮▮▮▮▮▮▮▮▮▮▮ 040
▮▮▮▮▮▮▮ 0400▮0000 - CRACE ENERGY COF
0400700000 - GRACE "PETROLEUM
- CRACE PETROLEUM

| dLAIM NO. | cialaantTi Nan© | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PA "D~TO"DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| C1830028900 | FESSLER CAROLE | IV&OV HIT | 01/17/88 | AL | F | 0.00 | 449.00 | 449.00 |
| C1830032380 | FESSLER CAROLE | COLLISON | 01/17/88 | AL | F | 0.00 | 449.66 | 449.00 |
| C3527535900 | AMEREX | IV HTI OV | 05/27/86 | AL | F | 0.00 | 262.69 | 262.69, |
| --"-«»" AL TOTAL FOR LOCATION 1012 | | = BROADWAY EXEC 6 | | 3 CLAIMS | | 0.00 | 1,160.69 | 1,160.69 |
| ----»«--»« TOTAL FOR COVERAGE AL | | | | 3 CLAIMS | | 0.00 | 1,160.69 | 1,160.69 |
| C1846408711 | USEPA/DL HUDD SITE | ALLEGED CONTAMINATION FROM CH | 07/01/85 | CL [ 0 ) | | 1,100.00 | 0.00 | 1,100.00 |
| ******* CL TOTAL FOR LOCATION 1011 | | = BROADWAY EXEC 6 | | 1 CLAIMS | | 1,100.00 | 0.00 | 1,100.00 |
| C1829573200 | RICHARDSON | UNKNOWN | 07/26/85 | GL | F | 0.00 | 150.00 | 150.00 |
| ~Sm9 | | ONKWWN▮▮▮▮▮▮▮▮▮ | Ts/8'5'"cr" | | F | 6.66 | 1,"926.66 | T;926766 |
| C1829573400 | RICHARDSON JOHNNY | HOLE IN BOTTOM OF TEST HEADER | 07/26/85 | GL | F | 0.00 | 330.00 | 330.00 |
| C1829602400 | VILHAUER JERRY | DEATH OF COW BY PUMPING UNIT | 09/06/85 | GL | F | 0.00 | 750.00 | 750.00 |
| L1636585966"mir GEORGE | | ~cr?9ñw'rsTecrmryw)re | wotyas | CL~ | F | 6.60 | 257:56 | 1117145 |
| C1830662900 | JANT2EN GUS | SALT WATER LEAK ONTO CLMTS LA | 12/31/85 | GL | F | 0.00 | 150.00 | 150.00 |
| C1830994700 | ETCHISON KENNETH | LEAK ON WATER LINE | 03/27/86 | GL | F | 0.00 | 2,000.00 | 2,000.00 |
| 51830094906 | RICHARDSON JOHΗW | POMP STOPPED WORKtNC | 12/16/85 | CL | F | 6.00 | 466.60 | 1"00f/66 |
| C1831099700 | JANTZEN GUS | DAMAGED WIIEATFIELD | 04/07/86 | GL | F | 0.00 | 200.00 | 200.0'- |
| ▮▮▮▮▮▮ GL TOTAL FOR LOCATION 1012 | | = BROADWAY EXEC 6 | | 9 CLAIMS | | 0.00 | 6,157.50 | 6,157.50 |
| ▮▮▮▮▮▮▮▮▮ TOTAL FOR COVERAGE GL | | | | 10 CLAIMS | | .00 | 6,157.50 | 1*257,50 |
| C1828899268 | BREWER GENE | MO-CLAIMANT FAL LEVEL WALK S | 07/19/85 | WC | F | 0.00 | 126.00 | 126.00 |
| 6l828911*5lO'6 | TSTEP "R6flNTE" | cOlrsTEPPED 'fN_"H0l'rS>R7niler | 07/'1878'5" | W6 | F | "0.60" | 174.06 | 174f66 |
| C1829949101 | ESTEP RONNIE | CLMT STEPPED IN HOLE SPRAINED | 07/18/85 | WC | F | 0.00 | 253.17 | 253.17 |
| C1829691876 | CORMIER JOSEPH | HO-CLAIHANT STK BY FLY | 08/27/85 | WC | F | 0.00 | 102.56 | 702.50 |
| ~6W97f54Od | ~WATC~T/wrA | SCTPPEO "IN'WATER"D'rSCOCATETTK | 10/22/85 | WC | F | "O.OD" | 193.00 | "193f00" |
| C1829743486 | POOLE BUDDY | MO-CLAIMANT PIIY STRESS EQUIPH | 11/16/85 | WC | F | 0.00 | 125.00 | 125.00 |
| C1829743496 | DORSEY CHARLES | MO-CLAIMANT VCL DRIVER | 11/7/85 | WC | F | 0.00 | 105.00 | 105.00 |
| ~CT&y00658T1"TOGCEnSUDOY | | MO-CLAIMANT "fAITNC'▮▮▮▮TS | 12/13/85'1 | MOTf | ▮▮▮▮▮▮66 | | TST.06 | 151.06 |

PAGE 1096

W. R. GRACE & CO.
DETAIL CLAIM LISTING
FOR DATA VALUED AS OF 12/31/91

POLICY YEAR: 1985

040       = GRACE ENERGY CORPORATION
MO070     = GRACE PETROLEUM
0400700000 = GRACE PETROLEUM

| CLAIM NO. | Claimant's Nana | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| C1830382756 | WOOOABO ARCHIE P | MO-CLAIMANT EXPOSURE NOISE | 01/27/86 | WC | F | 0.00 | 233.19 | 233.19 |
| C1830473200 | COBBLE ELDON | SPACING R60 PUMP RIG CLAM? SL | 07/19/85 | WC | F | 0.00 | 452.53 | 452.5j |
| C1830489700 | KUBART GEORGE | USING PIPE WRENCE HURT BACK | 02/03/86 | WC | F | 0.00 | 40.50 | 40. |
| C1830489701 | KUBART GEORGE | USING PIPE WRENCE HURT BACK | 02/03/86 | WC | F | 0.00 | 253.17 | 2.53. |
| cia3C6tO460 | SHORT RTCHARD A | EMPLOYEE WAS APPARENTLY GRABS | 08/13/85 | WC | F | 0.00 | 201.50 | 201.50 |
| C1836610401 | SHORT RICHARD A | EMPLOYEE WAS APPARENTLY GRABB | 08/13/85 | WC | F | 0.00 | 21,139.06 | 21,139.06 |
| C1831168800 | GEORGE JAMES R | CLMT. WAS PULLING SCALE OFF TU | 04/18/86 | WC | F | 0.00 | 35.63 | 35.63 |
| CIS31339543 | | MO-CO MANY SYR AGNSY PIPE- | 05/21/86 | WC | y | 0.6o | 123.00 | 123.00 |
| C1930639600 | JORDAN MARVIN | CLMT HIT IN EYE WITH RUBBER H | 06/06/86 | WC | F | 0.00 | 1,532.75 | 1,532.75 |
| C1930639601 | JORDAN MARVIN | CLMT HIT IN EYE WITH RUBBER H | 06/06/86 | WC | F | 0.00 | 288.36 | 288.36 |
| E4822024400 | RAKSTACH RONALO C~ | -IIVINSTO FACE" HANDS | 12/12/85 | WC" | T | 6.60 | 23,844.28 | 23,844.28 |
| C4822024401 | RAKSTAD RONALD L | BURNS TO FACE fe HANDS | 12/12/85 | WC | F | 0.00 | 74,683.74 | 74,683.74 |
| C643 1222432 | FERGUSON LARRY J | HO-CLAIMANT VCL DRIVER TRUCK | 03/26/86 | WC | F | 0.00 | 700.00 | 700.00 |
| 6S431509205 | WOOOARD ARCHIE | EMP INJUREO EAR WHITE WORKING | 01/29/86 | WC | T' | 0.Co | 8,755.00 | 8,755.Do |
| C6431509201 | WOOOARD ARCHIE | EMP INJURED EAR WHILE WORKING | 01/29/86 | WC | F | 0.00 | 131.00 | 131.00 |

****** yc yoTAL FOR LOCATION 1012    - BROADWAY EXEC 6          23 CLAIMS              0.00      133,643.38    133,643.38

--«-**-«- TOTAL FOR COVERAGE WC                                 23 CLAIMS              0.00      133,643.38    133,643.38

*-##**-#*-*#*** TOTAL FOR POLICY YEAR 1985                      36 CLAIMS          1,100.00      140,961.57    142,061.57

PAGE 1097

W. R. GRACE & CO.
OETAIL CLAIM LISTING
FOR DATA VALUED AS OF 12/31/91

POLICY YEAR: 1986

040        - GRACE ENERGY CORPORATION
040070     - GRACE PETROLEUM
0400700000 = GRACE PETROLEUM

| CLAIM NO. | Claimant's Nano | Accident Description | Date Claim Occurred | COV | OPN CLS O/E | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| C6432797700 | SEATON MARVIN | OV TURNED IN FRONT OF INSD VE | 12/17/86 | AL | F | 0.00 | 4.00 | 4-00 |
| | AL TOTAL FOR LOCATION 1012 | - BROADWAY EXEC 6 | | | 1 CLAIMS | 0.00 | 4.00 | 4. |
| | TCTAL FOR COVERAGE AL | | | | 1 CLAIMS | 6.00 | 4.06 | 4.66 |
| C6435588466 | RGS8INS6N fIARY L6u | oCHT ALLEGES FNSO DAMAGED PRO | 06/30786 | CL | | 26,000.06 | 2,261.42 | 22,261.42 |
| | CL TOTAL FOR LOCATIOM Toi | BROADWAY EXEC 6 | | | 1 CLAIMS | 26,660.66 | 2,26i.42 | 22,26i.42 |
| GTS32264000 | HARGUS CHARLIE | TREES DAKAGEO BY INSD | 00/29/86 | CL | F | 6.60 | 12,053.46 | 12,653.40 |
| C1834744600 | LATIMER VERNON | DAMAGE TO POND FROM SPILL | 06/12/87 | GL | F | 0.00 | 4,000.00 | 4,000.00 |
| C1834995600 | NEWMAN PEARL | OIL LEAK SPREADED TO PASTURE | 04/01/87 | GL | F | 0.00 | 500.00 | 500.00 |
| C1834996700 | WHITLEY ROBERT | 6TLTEAPI~DAKCE6 PASTURE | 04/21/87 | GL | F | 6.66 | 1,566.66 | 1,566.66 |
| C1835124700 | WHITLEY ROBERT | HEAVY EQUIP DAMAGED PASTURE L | 02/01/87 | CL | F | 0.00 | 700.00 | 700.00 |
| C1835676700 | ISDENHOWER PHIL | PROPERTY DMGE | 06/12/87 | GL | F | 0.00 | 300.00 | 300.00 |
| | GL TOTAL FOR LOCATION 1012 | - BROADWAY EXEC 6. 1 | | | 6 CLAIMS | 0.00 | 19y053.40 | 19,053.40 |
| | TOTArTOR"doVER'AG'En6L | | | | | 26,066.06 | 21,314.82 | 41,314.82 |
| C1831632604 | OTEITIIAfIPI S | MO-CLA'IMANT FAL N6C tlORVTS | 07/07/86 | VC | t | 6.60 | 302''iO | 302''i6 |
| C1831632606 | LEECH GARY L | MO-CLAIMANT STRUCK BY KNIFE | 07/09/86 | WC | F | 0.00 | 272.26 | 272.26 |
| C1831938024 | THOMAS ELOON | MO-CLAIMANT STK AGNST EqUIPM | 07/29/86 | WC | F | 0.00 | 95.00 | 95.00 |
| CT833644956- | XTNOSAY-R<SNN1E-W | MO-CLAIMANT STRUCK SV MAClifN | 03/26/87 | WC | F" | 6.66 | 148.36 | i48' T6'" |
| C1834325420 | SEELEN JAMES | MO-CLAIMANT FALL FROH | 05/21/87 | WC | F | 00.13 | 314.13 | 314.13 |
| C1834630410 | HINES LONNIE | HO-CLA'IHANT STK AGNST | 06/24/87 | WC | | 0.00 | 89.00 | 89.00 |
| 66432766360 | VEEVCRS GEORGE | THE CAR fiElrfAs DRIVING WAS<11 | 12/17/86 | WC | "F | 6.06 | "53.96 | "53'.96" |
| C8029934300 | CORRY DAVID L | CLMT WAS BURNED ON LEFT ARM C | 08/18/86 | F | | 0.00 | 711.31 | 711.31 |
| C8029934301 | CORRY DAVID L | CLMT WAS BURNED ON LEFT ARM C | 08/18/86 | F | | 0.00 | 748.00 | 748.00 |

PAGE 1098

W. R. GRACE & CO.
DETAIL CLAIM LISTING
FOR DATA VALUED AS OF 12/31/91

POLICY YEAR: 198<f

| 080 | - GRACE ENERGY CORPORA"1ON |
| 646&?0 | - GRACE PETROLEUM |
| 0800700000 | - GRACE PETROLEUM |

| CLAIM NO. | dialpant's Name | Accident Description | Date Claim Occurred | CdV | OPN CLS 6/F | OUTSTANDING RESERVE | TOTAL PAID to DATE | IP.IAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| mwini'vv W,C"T6r/U["/M"C52AtT6N fb'TS? | | -"BlftbTHJWA T~£:Yfc~& | ■■■■■■■■■■■■■ | | J | 0.00 | 2.734.66 | 2,738.66y |
| -"«-".""-"« JOTAL FOR COVERAGE WC | | | 9 CLAIMS | | | 0.00 | 2,738.06 | 2,738.06 |
| TOTAL FOR POLICY YEAR 1986 | | | 17 CLAIMS | | | 20,000.00 | 28,052.88 | 88,052.88 |

W. R. GRACE & CO.
DETAIL CLAIM LISTING
FOR DATA VALUED AS OF 12/31/91

POLICY YEAR: 1987

040           GRACE ENERGY CORPORATION
040070        GRACE PETROLEUM
0400700000 –  GRACE PETROLEUM

| CLAIM NO. | Claimant's Name | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| C18352131QO | HOWELL JIMHY | SCHWARTZ JNIV BACKED INTO OV | 08/17/87 | AL | F | 0.00 | 977.38 | 977.38 |
| C1932177600 | RABANAJLF REBECCA' W | IV MAKING RIGHT TURH&OV TRIED | 08/15/87 | AL | F | 6.00 | 478.83 | 478.8-3 |
| ****«*#»# XL tOYAL EOR LbCATIbN 1012 | | – BROADWAY EXEC 6 | | ■ ■ ■ 2 CLAIMS" | | 0.66 | 1,456.2î | 1,456.21 |
| ********** TOTAL FOR COVERAGE AL | | | | 2 CLAIMS | | 0.00 | 1,456.21 | 1,456.21 |
| C1836002100 | WHITLEY ROBERT | WATER LEAK RESULTING IN DAMAG | 08/13/87 | GL | F | 0.00 | 550.00 | 550.0C |
| ******* GL TOTAL FOR LOCATION 1011 | | – BROADWAY EXEC 6 | | 1 CLAIMS | | 0.00 | 550.00 | 550.00 |
| C1835145500 | ETCHIESON KENNETH | WATER COMING OUT OF GROUND IN | 07/25/87 | CL | F | 0.00 | 49,192.00 | 49,192.00 |
| C1835676800 | ARTHUR DENNIS | DMG TO GRASSLAND & TWO TREES | 08/15/87 | GL | F | 0.00 | 1,000.00 | 1,000.00 |
| C18f59475M | R'lCraROSbN'H-D" | OMG TO GRASSLANDS: POND | 07/15/87 | GL | F – | 0.00 | 4,660.00 | 4,666.00 |
| C18384999OO | STRESSLE HAROLD | SALTWATER DAMAGED GRASS LAND | 05/08/88 | GL | F | 0.00 | 1,500.00 | 1,500.00 |
| C1934094011 | WILCOX JEROME C | CLHT SLIPPED ON ICE AND FELL | 01/28/88 | GL | F | 0.00 | 2,058.48 | 2,058.48 |
| ******* CL TOTAL FOR LOCATION 1012 | | – BROADWAY EXEC 6 | | 5 CLAIMS | | 0.00 | 57,750.48 | 57,750.48 |
| -ÿv«.>»*iw.-TorAL~rOR"COVEft'AC'E'CEr" | | | | ■ ■■ CLAIMS | | ■ ■■■■■■■■■■ | 46,366.46 | 56.366.48 |
| Cf83"74T8'260 | CAMP SUSAN | STTfERed ON ICE ON STEPS | 01/13788 | WC | F | 6.66 | 6,199-14 | 6,199.14 |
| C1837478201 | CAMP SUSAN | SLIPPED ON ICE ON STEPS | 01/13/88 | WC | T | 0.00 | 9,657.25 | 9,657.25 |
| C1837560920 | SOUDERS DOLORIS | MO-CLAIMANT FALL ON      CONST | 03/28/88 | WC | F | 0.00 | 99.07 | 99.07 |
| ******* WC TOTAL FOR LOCATION 1011 | | – BROADWAY EXEC 6 | | 3 CLAIMS | | 0.00 | 15,955.46 | 15,955.46 |
| C1834785242 | MELTON MICKEY | HO-CLAIMANT MAN lIANDLG | 07/17/87 | WC | F | 0.00 | 95.70 | 95.70 |
| C18354 10200 | GEORGE JAMES R | 'AîR CYLINDER SMASHED THUMB A'G | 09/01/87 | WC | T | 0.60 | 23',629.99 | 23,629.99 |
| C18354 10201 | GEORGE JAMES R | AIR CYLINDER SMASHED THUMB AG | 09/01/87 | WC | F | 0.00 | 20,862.62 | 20,862.62 |
| C1836052700 | ELLIOTT VICKY ANN | BOX OF RECORDS STRUCK CLMT ON | 11/04/87 | WC | F | 0.00 | 8,091.93 | 8,091.93 |
| C1836052701 | TCinOTT–VTCKY'A | BOX OF RECORDS STRUCT'CCHT' ON | 11/04"87" | WC | F | 0.00 | ■■■■5,803;35l | ""5,803:35 |

PAGE 1100

W. ft. GRACE & CO.
DETAIL CLAIM LISTING
DATA VALUED AS OF 12731/91

POLICY YEAR: i987

040          GRACE ENERGY CORPORATION
040070       GRACE PETROLEUM
0400700000 - GRACE PETROLEUM

| CLAIM NO. | Claimant's Nana | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|-----------|-----------------|---------------------|---------------------|-----|-------------|---------------------|--------------------|-----------------|
| C1836351200 | JANSSEN JERRY | SLIP&FALL BROKEN LEG | 11/257.87 | WC | F | 0.00 | 1,15,19 | 9 |
| *01836351201 | JANSSEN JERlIV | SLIP&FALL BROKEN LEG | 11/25/87 | WC | F | 0.00 | 7,951.91 | 7,951.91 |
| C6434678700 | GLASGOW JOHN R | SLIPPED ON ICE AND FELL BREAK | 01/09/88 | WC | F | 0.00 | 2,651.93 | 2,651.93 |
| C6434678701 | GLASGOW JOHN R | SLIPPED ON ICE AND FELL BREAK | 01/09/88 | WC | F | 0.00 | 3,333.00 | 3,333.0‹v~ |

-n~#~*# TOTAL FOR LOCATION 1012 – BROADWAY EXEC 6     9 CLAIMS     0.00     73,535.62     73,535.62

»«Rnrwr##*TOTAL FOR COVERAGE WC     12 CLAIMS     6.60     89,491.08     69,491.66

—·"#»»"«"−«»#"»"·" TOTAL FOR POLICY YEAR 1987     2b CLAIMS     0.00     149,247.77     149,247.77

PAGE 1101

W. R. GRACE & CO.
DETAIL CLAIM LISTING
f0R·0ATAVAEUED AS 67 12731/91'

POLICYYEARI 1983

040      = GRACE ENERGY CORPORATION
"olioofo"    - GRACE PETROLEUM
0400700000 = GRACE PETROLEUM

| CLAiM iio. | "Dialriant's" Nano | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| C1844247421 | NOWLIN JAMES D | LIFTING BOX OF FILES POPPED | 03/10/89 | WC | F | 0.00 | ▮ ▮▮▮▮ ▮▮▮. | 55.34 |
| C1844872521 | COBB WILLIAM | FOREIGN OBJECT IN EYE ODAYS | 03/31/89 | WC | F | 0.00 | 50.00 | 50.0W |
| ******* Wc TOTAL FOR LOCATION ion | | - BROADWAY EXEC 6 | 2 CLAIMS | | | 6.00 | 105.34 | 105.34 |
| 6T8«mT2T | JORDAN CATHY | TOME'S rfiort GLuE GOT·INTO EYES | 01/10/8$ | WC | F | 0.00 | T.178.94 | 1.178.94 |
| C1845449811 | COBBLE ELDON | CLMT TWISTED LOW BACK STEPPIN | 05/26/89 | WC | F | 0.00 | 165.00 | 165.00 |
| C1845449821 | COBBLE ELDON | CLHT TWISTED LOW BACK STEPPIN | 05/26/89 | WC | F | 0.00 | 2,808.43 | 2,808.43 |
| ~C51137y2721 | ISCICUM FCOYAC | CDMdTNG STAIRWAY OF TANK "SO | 12/31/88 | WC | T | 0.06 | 107.92 | Io7.92 |
| C6437951111 | GLASGOW JOHN | SPLASHED BURNING CONDENSATE O | 02/07/89 | WC | F | 0.00 | 238.00 | 238.00 |
| C6437951121 | GLASGOW JOHN | SPLASHED BURNING CONDENSATE O | 02/07/89 | WC | F | 0.00 | 2,031.23 | 2,031.23 |
| HHHMHI# UQ TOTAL FOR LOCATION 1012 | | - BROADWAY EXEC 6 | 6 CLAIMS | | | 0.00 | 6,527.52 | 6,529.52 |
| -TOTAL FOR COVERAGE WC | | | 8 CLAIMS | | | 6.00 | ̄ ▮▮SSDIS | 6,634.86 |
| TOT'ACToft' POLICYYEAR 19e8 | | | 8 CLAIMS | | | 0.06 | 606SH.66 | 6,634.86 |

PACE 1102

W. R. GRACE & CO.
DETAIL CLAIM LISTING
FOR-DATA-VALIIED AS OF "12731/91

GRACE ENERGY CORPORATION
N'c
WOb7iJ      6ff ACE PETROLEUM
0400700000 - GRACE PETROLEUM

POLICY YEAR: T089

| CLAIM NO" | CfaTnan'tTB~'Nane | AccTdent DeserTpt Ton | Date CJ a.im, Occurred | COV | OPN OL s O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL 1NCURRED |
|---|---|---|---|---|---|---|---|---|
| 0840252611 | ESQUE WAYNE | IV PASSING IN NO PASSING LANE | 07/22/89 | | | 0..00 | 2.312.65 | 2.312.65 |
| #»<HHH» AL TOTAL FOR LOCATION 1011 | | - BROADWAY EXEC 6 | | L_CLA.IMS | | 0.00 | 2.312.65 | 2,312. |
| vmw#»T»iHonroTAL~foft~ew£ftAfir"Ai:" | | | | "TCLATMS" | | | 2.312.61 | |
| CSSTbiTd'DTf  CDCsSCOCft~CTIA'pNAIN | | 'rft'jECTf0r'PW"rATL0ftE_eA0S"eft_'o6'/'0779ci | | | | T,,00'.bo | 0'.'0'0' | T;OOO'.00' |
| C0510110111 | TIHPERLEY RICHARD | POLLUTION | 09/04/89 | GL | O | 1,000.00 | 0.00 | 1,000.00 |
| «»"«#«- GL TOTAL FOR LOCATION 1011 | | - BROADWAY EXEC 6 | | 2 CLAIMS | | 2,000.00 | 0.00 | 2,000.00 |
| ««"#"""«-« TOTAL FOR COVERAGE GL | | | | 2 CLAIMS | | 2,000.00 | 0.00 | 2,000.00 |
| C1840550021 | BREWER GENE M | CLMT HIT LFT HAND ON CONSOLE | 08/01/89 | WC | F | 0.00 | 226.25 | 226.25 |
| C'T9'37257T1'-KATfIlsclAN'o~cl:iTF" | | m'f'SL'I~PED" i WENT THffU y'r'yP | 04/23/90 | WC | F | '0..0b' | 2,764.34 | 2,764"34 |
| C1937257921 | NATR I SCIANO CLIFF | FOOT SLIPPED & WENT THRU STEP | 04/23/90 | WC | F | 0.00 | 2,994.69 | 2,994.69 |
| C8035211821 | DOOLEY JOHN | CLMT FELL OFF LADDER 2ND FHT | 11/13/89 | WC | P | 0.00 | 3,387.78 | 3,387.78 |
| ~£a035ft 554 2 f"CReSS"HAff0L'b'R | | TRACT0ftE7SffFATf/fTRB'EfL_WffONff | 11/2/89 | WC | P~ | ~Oo | 198'.'8b | 198'.'86 |
| "<«**«y"wc"roTAL'Tfff'rocArroN"T'bT2" | | "y"'fi'fttfAcw'ArTXEcnr" | | "yyCLAIMS" | | "b'b'b" | 9,571.86 | 9,571.86 |
| ""«-#-"«- """" TOTAL FOR COVERAGE WC | | | | 5 CLAIMS | | 0.00 | 9,571.86 | 9,571.86 |
| -«««"»»«-»"«-"« TOTAL FOR POLICY YEAR 1989 | | | | 8 CLAIMS | | 2,000.00 | 11,884.51 | 13,884.51 |

PAGE1103

W. R. GRACC & CO.
DETAIL CLAIM LISTING
Kofi DATA VAL'UED AS OF i2/ii/9i

040 - GRACE ENERGY CORPORAT I C N
█ █ █ █ █ █ █ █ ■40 ■07█ █ - GRACE PETROLEUM
0*100700000 = CRACE PETROLEUM

TllcLi cV'VEAR': '199()' ""

| CLAIM NO. | Claimant's Name | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| - C0510186111 | GLASSCOCK-CHAPMAN | POLLUTION | 12/07/90 | GL | / | 1,000.00 | 0.00 | 1,000.00 |
| C18581815111 ■WILLIAMS SHAWN █ █ | | ■LM■ ALLEGES OYSTER BED DMG D | 03/11/91 | GL | 07 | 1,400.00 | 0.00 | 1,400.00 |
| FOR' LOCATION''ion '' ■ I-BROADWAY EXEC 6 '' | | | 2 CLAIMS | | | ||H|400.00█ ■ █ █ █ █3■ █ █ █ █4█0■,'00" | | |
| *********** TOTAL FOR COVERAGE GL | | | 2 CLAIMS | | | 2,LOO.00 | 0.00 | 2,LOO.00 |
| C6446266211 | VEEVErS GEORGE E | STARTING COMPRESSOR BY MANUAL | 12/04/90 | WC | F | 0.00 | 108.00 | 108.00 |
| C6LL6266221 | VEEVERS GEORGE E | STARTING COMPRESSOR BY MANUAL | 12/04/90 | WC | F | 0.00 | 542.09 | 542.09 |
| **«*-» ye TOTAL FOR LOCATION 1011 | | - BROADWAY EXEC 6 | 2 CLAIMS | | | 0.00 | 650.09 | 650.09 |
| C1851.51521 | MATTHEWS TRACY | PULLING WIRE STAPLE CAME LOOS | 08/28/90 | WC | F | 0.00 | 266.77 | 266.77 |
| ■C851■'6'4ol'■ | CRl'S'S' MARGE ■ █ | ■CARPAL TUNNEll SYNDROME LT RAN | 19/17/90 | WC | F | o.0o | ■l5.5S | █5b |
| C185230N021 | CRl SS MARGE | CARPAL TUNNEL SYNDROME LT HAN | 10/17/90 | WC | F | 0.00 | 2,846.28 | 2,846.28 |
| -"--")" WC TOTAL FOR LOCATION 1012 | | - BROADWAY EXEC 6 | 3 CLAIMS | | | 0.00 | 3,228.55 | 3,228.55 |
| -"-»"***»«# TOTAL FOR COVERAGE WC | | | 5 CLAIMS | | | 0.00 | 3,878.64 | 3,878.64 |
| **##**- *****«-»"" TOTAL FOR POLICY YEAR 1990 | | | 7 CLAIMS | | | 2,400,00 | 3,870.64 | 6,278.64 |

W. R. GRACE & CO.
DETAIL CLAIM LISTING
FOR DATA VALUED AS OF '66/30/92

| | | |
|---|---|---|
| 040 | = GRACE ENERGY CORF | |
| 04D070 | = GRACE PETROLEUM | |
| 0400700000 | = GRACE PETROLEUM | |

POLICY YEAR: 1991

*5&nMi35>2*

Post-It" brand fax transmittal memo 7671
To
Cc
Dipt.
Fa

| CLAIM NO. | Claimant's Name | Accident Description | Date Claim Occurred | COV | OPN CLS O/F | OUTSTANDING RESERVE | TOTAL PAID TO DATE | TOTAL INCURRED |
|---|---|---|---|---|---|---|---|---|
| C8039786111 | MICHIGAN BELL TELEPH | INSD TRUCK DAMG TELEPHONE FAC | 01/09/92 | CL | 0 | 624.00 | 0.00 | 624.00 |
| **«««»» GL TOTAL FOR LOCATION 1012 | | - BROADWAY EXEC 6 | 1 CLAIMS | | | 624.00 | 0.00 | 624.00 |
| I I ΚΝΝ6".*#K"#w TOTAL' FOR COVERAGE' Gil | | | 'i COWS | | | 624.00 | 0.00 | 624.00 |
| 01857003321 | BLACK MAJEL | STRUCK IN RIGHT EYE BY PENCIL | 07/29/91 | WC F J | | 0.00" | 85736 | "85.36 |
| C1859355121 | HARPER DANAH R | REMOVING BOX FROM SHELF , FELL | 01/16/92 | WC F | | 0.00 | 309.31 | 309.31 |
| | | | | V-X | | | | |
| ******* WC TOTAL FOR LOCATION 1011 | | - BROADWAY EXEC 6 | 2 CLAIMS | | | 0.00 | 394.67 | 394.67 |
| C1857561521 | SCOLES WYATT LEE | HAMMERING & STRUCK L ARM WITH | 09/02/91 | WC F N | | 0.00 | 641.95 | 641.95 |
| C1859390621 | MATTHEWS TRACY | CLMT SLIPPED AND FELL ON ANKL | 02/03/92 | WC F J | | 0.00 | 132.00 | 132.00 |
| C8639312421 | GROSS HAROLD R | SLIPPED OFP PIPE RACK AND INJ | 12/06/91 | WC F T | | 0.00 | 121.22 | 121.22 |
| ****"#4"Mffc'"TOTAL"VoR"Lo'dATrbN"'ioi2) | | - BROADWAY EXEC 6 | 5 CLAIMS | | | 0.00 | 895717 | 895717 |
| *********** TOTAL FOR COVERAGE WC | | | 5 CLAIMS | | | 0.00 | 1,289.84 | 1,289.84 |
| **************** TOTAL FOR POLICY YEAR 1991 | | | 6 CLAIMS | | | 624.00 | 1,289.84 | 1,913.84 |

GRACE PETROLEUM CORPORATION

TO:      JOHN RANSOM
FROM:   MAJEL REDICK
RE:      WORKER'S COMPENSATION CASE

DATE:   11/18/92
CC:      S. Post
          Ed Tebow
          Jack Hill
          Jerry Britsch
          PM 770.6

| Name of Employee | Employee's Supervisor (0) | Date of Accident (2) | General Location (3) | Nature of Injury (4) | Work Days Missed (5) |
|---|---|---|---|---|---|
| Carl Hulford | Tim Jordan | 11/12/92 | Little Wall Field, Montana | Twisted back | -0- |

**Employee was helping co-worker lift belt guard and twisted his back; didn't think injury needed care.  Today he is going to the doctor.**

GRACE PETROLEUM CORPORATION

TO:  JOHN RANSOM
FROM: MAJEL REDICK
RE:  WORKER'S COMPENSATION CASE

DATE: 11/11/92
CC:  S. Post
    Ed Tebow
    Jack Hill
    PM 770.6

| Name of Employee | (1)<br>Employee's<br>Supervisor | (2)<br>Date of<br>Accident | (3)<br>General Location | (4)<br>Nature of Injury | (5)<br>Work Days<br>Missed |
|---|---|---|---|---|---|
| John Dooley | Dave Corry | 11/9/92 | Michigan Girt Plant | Inhaled sour gas | -0- |

Employee accidently inhaled toxic gas.  Went outside and breathed fresh air.
After he finished his shift he went to the doctor.  No lost time.

GRACE PETROLEUM CORPORATION

TO;    JOHN RANSOM
FROM;  MAJEL REDICK
RE:     WORKER'S COMPENSATION CASE

DATE:  1 t/5/92
CCr    S. Post
         Ed Tetoow
         PM 770.5

| (D)<br>Name of Employee | (2)<br>Employee's<br>Supervisor | Date of<br>Accident | (3)<br>General Location | (4)<br>Nature of Injury | (5)<br>Work Days<br>Missed |
|---|---|---|---|---|---|
| Carrie Askins | Dave Pinson | 11/5/92 | OKC, Bldg t, Land Dept | Strained neck and shoulder | -O- |

Employee attempted to staple papers with stapler that was chest height. She pressed down hard and felt pain in neck and shoulder.

Post-it™ brand fax transmittal memo 7671 | # of pages ▶ 2

| To Jim Tyler | From Ed Tebow |
| Co. GEC | Co. GPC |
| Dept. | Phone # 405·840·6750 |
| Fax # 214-770-0215 | Fax # 405·840·6727 |

TO: GRACE PETROLEUM CORPORATION
     JOHN RANSOM
FROM: MAJEL REDICK
RE: WORKER'S COMPENSATION CASE

DATE: 2/4/92
CC: S. Post
    Ed Tebow
    PM 770.6

| (1) | (2) | (3) | (4) | (5) |
| Name of Employee | Employee's Supervisor | Date of Accident | General Location | Nature of Injury | Work Days Missed |
| Gary Leech | Paul Basinski | 2/3/92 | Drafting Dept. – OKC | Puncture wound to hand | -0- |

Gary accidently received a puncture wound to his right hand when the Exacto knife slipped. He went to the doctor and received treatment and a tetanus shot. No lost time expected.

GRACE PETROLEUM CORPORATION                                              DATE:   ar>7/92
TO:      JOHN RANSOM                                                     CC      S-Post
FROM:    MAJEL REDICK                                                            EdTebowr
RE:      WORKER'S COMPENSATION CASE                                              PM770.6

| | (t) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|---|
| Name of Employee | Employee's Supervisor | Dale of Accident | General Location | Nature of Injury | Work Days Missed |
| Cornelius. JoAnn | G. Kalkbrenner | 8/T4/92 | OKC Office, Engr. Dept. | Back Sprain | -0- |

**Employee was assembling packets of paper. Back made a popf 5'ﾟ 30ﾟ¥**
**Seeing doctor today.**

## SCHEDULE TO SECTION 6.06

None

GEC 000201

GRACE ENERGY CY' ORATION
GRACE PETROLEUK 1PORATION
Summary of Insurance

Schedule        Scc+i o    L.D7ÿ)

| Line No. | Insurer (1) | Policy Number (2) | Coverage (3) | Policy Period (4) | Limit of Liability (5) | Deductible (6) |
|---|---|---|---|---|---|---|
| (1) | Industrial Risk Insurers and Various Domestic insurers | 31-3–54646 Various | Fife A Allied Perils (on Real and Penoral Property)<br>– Fire, lightning, extended coverage, vandalism,<br>– Malicious mischief and sprinkler leakage<br>– All risk, including difference-in-conditions<br>– Earthquake and Flood | 12/31/91-12/31/02 | Blanket 550,000,000 | $25.000 (a) |
| (2) | Industrial Risk Insurers | 31-3-48979 | Boiler A Machinery<br>– Comprehensive – Mechanical and Electrical Equipment<br>– Combined Physical Damage | 12/31/91-12/31/92 | 50,000,000 | 25.000 (a) |
| (3) | Transamerica Insurance Company | 2781621 | Automobile Liability Deductible 'Buy-Back" | 06/30/92-06/30/93 | 2,500.000 | 500.000 (b) |
| (4) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | Automobile Liability Liability (including non-owned vehicles)<br>– Bodily Injury<br>– Property Damage | 06/30/92-06/30/93 | 7.500.000 | 2.500.000 (b) |
| (5) | Lloyd's and various British insurers | 40-0402-92 40-0403-02 | General Liability Deductible 'Buy-Back" | 06/30/92-06/30/93 | 2,500.000 | -- W |
| (6) | CNA | CCP001604364 (USA) CCP9001604498 (CAN) | General Liability Liability – Bodily Injury and Property Damage | 06/30/92-06/30/93 | 7,500.000 | 2,500.000 (b) |
| (7) | Transportation Insurance Company CNA National Fire Ins. Co. of Hartford Transportation Insurance Company | WC10-7417923 WCOO-7417924 WC10741B246 WC80-7417925 | Workers" Compensation<br>– Workers' Compensation<br>– Employer's Liability | 08/30/92-06/30/93 | Statutory 1.000.000 / 2.000.000 | 1.000.000 1.000.000 |
| (8) | Various Scandinavian insurers and Mutual Marine Office | Various | Energy & Marine Liability<br>– Hull & Machinery<br>– Operator's Extra Expense<br>– Protection & Indemnity<br>– Wharfinger's/Stevedore's/Charterer's Liability | 00/30/92-00/30/03 | Varies per Vessel Varies per Well 25,000,000 25,000,000 | 25,000 250,000 25,000 25,000 |
| (0) | United States Aircraft Insurance Group | 360AC-1082B1 | Aircraft – Hull end Liability (including non-owned aircraft) | 01/01/90-01/01/91 | 200,000,000 | -- |
| (10) | National Union Fire Insurance Company X.L. Insurance Co., Ltd. A.C.E. insurance Co., Ltd. | Various | Excess Liability | 06/30/92-06/30/93 | 17,500,000 75,000,000 200,000,000 | -- |
| (11) | CODA A.C.E. X.L. Gulf | Various | Directors and Officers Liability | 11/04/92-11/04/93 | 110,000,000 | 25,000,000 (d) |
| (12) | National Union Fire Insurance Company American Home Assurance Company Federal Insurance Company (Chubb) | 4385430 6219721 (CAN) 01090034 -A | Blanket Crime (all employees)<br>– Fidelity<br>– Money & Securities | 12/31/91-12/31/92 | 25,000,000 | 500,000 (USA) (e) 25,000 (CAN) |
| (13) | National Union Fire Insurance Company Federal Insurance Company (Chubb) | 4226405 81212642-A | Fiduciary Liability | 11/04/92-11/04/93 | 50,000,000 | 150,000 |

NOTE:  (a)  Grace's Corporate property (fire and allied lines) and boiler and machinery deductibles are 52,000,000.
        (b)  Limits of liability include deductibles and/or 'self-insured" retentions.
        (c)  Products and Completed Operations claims are underwritten on "claims-madeB basis, subject to an automatic five-year discovery provision.
        (d)  Deductible indicated in Summary of Insurance reflects the Corporate Reimbursement deductible only. The deductible it $5,000 per Director or Officer, subject to a $50,000 claim aggregate for non-indemnifiable acts.
        (e)  Deductibles Indicated are Corporate deductibles only.

23-Dec-92    O)    (7)    P>    '(*)    .    (5)
11:24:30 AM
23-Dec-92    (1)    P)    (3)    (*)    (5)
11:24:30 AM

| SITE NUMBER | STATE | SITE NAME | GROUP | UNIT | SITE CLASS | AUTHORITY | ACTIVE/ INACTIVE! CLOSED | 09. T1 |
|---|---|---|---|---|---|---|---|---|
| 4018 | OK | Rnrtw.1 1-1S | GEC | GPC | b | c | CL | |
| *027 | LA | Mitchell Williami A-l | GEC | GPC | b | c | CL | |
| 4029 | LA | Bay Baiine | GDC | GPC | b | d | A | |
| *030 | TX | UuitcrColc RiJicL, E430T Countir | GEC | GPC | a | d | A | |
| *035 | LA | D.L. Mud, Abbeyville | GEC | GPC | a | a | A | |
| *036 | LA | E T Currie ℓ\ | GEC | GPC | b | d | A | |
| *037 | LA | Glaiscoci Omppman 𝒮\ | GEC | GPC | b | c | CL | |
| 4039 | IA | Gulf Coast Vacuum, Abbryville | GEC | GPC | a | a | A | |
| l/UT | OK | | —OEC | | 𝑦, | | | |
| 40*4 | LA | Turnpoim Battery | GEC | GPC | b | 𝐴 | A | |
| *045 | LA | Wajÿom ℱ\ | GEC | GPC | b | 𝐴 | A | |
| 4046 | MI | Woodville Field, Ncu-ago County | GEC | GPC | a | 𝐴 | A | |
| *050 | LA | Milchel Williami OAH | GEC | GPC | b | 𝐴 | A | |
| 4053 | MI | Lanphar 7-12 | GEC | arc | b | e | CL | |
| *055 | LA | MoneyJum #2 SWD | GEC | GPC | b | 𝐴 | A | |
| *058 | LA | Nickenofi /1 | GEC | GPC | b | d | A | |
| *077 | LA | WARD*1 AH | GEC | GPC | b | d | A | |
| 4130 | OK | Sbctiov J-30 | GEC | GPC | b | c | A | |
| *220 | OK | Norrii 2-20 | GEC | GPC | b | | CL | |
| | OK | Moaquhn Crock W-51 | GEC | GPC | b | c | A | |
| | OK | Cudxing Field Walcrfload | GEC | GPC | a | 𝐴 | A | |
| | LA | Moneyham *5 | GEC | GPC | b | 𝐴 | A | |
| | LA | L. W. Btyton 𝑔\ | GEC | GPC | b | 𝐴 | A | |
| | ■LA | Turnpoint field | GEC | GPC | b | 𝐴 | A | |

TOTAL  GPC

SITE CLASS
a. Deiiganted environmental cleanup rile (net contiguous to a grace operating facility),
b. Production facility with acperEle cleanup activiriei on premwa-
c. Office (con center for covircmmenul aervicea).
AUTHORITY
a. Federal Supofuod (rile on die national priorities lie).
b. Fsleral Directive (art on NPL but regulated under RCRA or Superfuod laws).
c. State Superfutd (oa a one Superfund lilt).
d. Stale Directive (under cleanup order from Cate, ageaciet).
e. Voluntary Action (veil:clary action performed within *ll applicable regulatory requirement!).

GEC 000203

X

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 23-Dec-92 1134:30 AM | (I) | *a)* | O) | (4) | (S> | (61 | O) | (8) |
| 23-Dec-92 11"2>4i30 AM | (!) | (2) | (3) | (*) | (5) | («) | *O* | (8) |

| TEKAME | GROUP | UNTT | SITE CLASS | AUTHORITY | ACTIVE/ INACTIVE/ CLOSED | OWNED/ THIRD PARTY | TO I2/3I/9L | LEGAL EXPENSE QUARTER ENDED 3/31/92 | C c/3<x |
|---|---|---|---|---|---|---|---|---|---|
| | GBC | GPC | b | c | CL | OW | 0,0 | 0.0 | |
| | GEC | GPC | b | e | CL | OW | 0.0 | 0.0 | |
| | GBC | GPC | b | d | A | OW | 0.0 | 0.0 | |
| aty | C*C | GPC | *u* | d | A | T | 52-9 | 3.S | |
| | GBC | GPC | z | a | A | T | 0,0 | 0.0 | |
| | GEC | GPC | *b* | *d* | A | OW | 0,0 | 0.0 | |
| | GEC | GPC | *b* | *ʌ* | CL | OW | 0.0 | 0.0 | |
| e | GBC | GPC | * | a | A | T | 0.0 | 0.0 | |
| | GEC | GPC | b | e | CL | OW | 0.0 | 0.0 | |
| | GBC | GPC | b | d | A | OW | 0.0 | 0.0 | |
| | npr1 | GPC | b | d | A | OW | 0.0 | 0.0 | |
| *y | GEC | GPC | * | d | A | OW | SJ | 0.0 | |
| | GEC | GPC | b | *d* | A | OW | 0.0 | 0.0 | |
| | GEC | GPC | b | e | CL | OW | 0.0 | 0.0 | |
| | GpC | GPC | b | *d* | A | OW | 0,0 | 0.0 | |
| | GEC | GPC | b | d | A | OW | 0.0 | 0,0 | |
| | GBC | GPC | b | d | A | OW | 0.0 | €.0 | |
| | GEC | GPC | b | *e* | A | OW | 0.0 | 0.0 | |
| | GEC | GPC | b | c | CL | OW | 0.0 | 0.Q | |
| | GEC | GPC | b | *c* | A | OW | 0-0 | 0.0 | |
| | GEC | GPC | a | *A* | A | T | 0.0 | 0.0 | |
| | GEC | GPC | b | *d* | A | OW | 0.0 | 0.0 | |
| | GEC | GPC | b | *d* | A | OW | 0.0 | 0.0 | |
| | GEC | GPC | b | *d* | A | OW | 0.0 | 0.0 | |
| | | | | | | | 61.6 | 3.ft | |

euup die (not contiguoua *io z* greet opemicj Utility).

*nic* cleanup actiritie* on premile*.

mmeatal services).

ie notional pricritic* Ija).

?L but regulated under RC7RA or Superfund Law)_

uperfuod lilt),

ip order from tuie ageocica).

action performed within all applicable regulatory requirement*).

GEC 000204

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| O) | ; 't <> | (9) | 'OO) | | | (II) |
| (7) | | P) | 'OO) | | | (U) |

| TO 12/31/91 | LEGAL EXPENSE QUARTER ENDED 3/31*m* | QUARTER ENDED 600/92 | QUARTER ENDED 9/30/92 | TOTAL THRIV 9/30*m* | TO 12/31/91 | OTHEi QUARTER 3/31/ |
|---|---|---|---|---|---|---|
| 0.0 | 0-0 | 0.0 | 0.0 | 0.0 | 1.5 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 3.5 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | Q.3 | |
| -52.9 | 3.8 | 3.3 | 12.2 | 72.2 | 2.7 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | *03 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 123 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0-5 | |
| 0.0 | 0.0 | 0.0 | 0,0 | 0.0 | 55.0 | |
| -0.0 | 0.0 | 0 | -Q-0 | g-g | 03 | |
| 0-0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.3 | |
| 4.7 | 0.0 | 0.0 | 0.0 | 8,7 | 103.0 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.3 | |
| 0.0 | 0.0 | 0,0 | 0.0 | 0.0 | *l.l* | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 03 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0 0 | 03 | |
| 0.0 | 0.0 | 0.0 | 0,0 | 0.0 | 0.3 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | o.S | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0 0 | 0.0 | |
| *0.0* | *0.0* | *0.0* | *0.0* | *0 0* | *0.0* | |
| *0.0* | *0.0* | *0.0* | *0.0* | *0.0* | *0.0* | |
| *0.0* | *0.0* | *0.0* | *0.0* | *0.0* | *0.0* | |
| *0.0* | *0.0* | *0.0* | *0.0* | *0.0* | *0.0* | |
| 61.6 | 3.8 | 33 | 12.2 | 80.9 | 185.5 | |

GEC 000205

| | | | | | 05) | (16*) | (16b) | (16c) | (!6d) | O( |
|---|---|---|---|---|---|---|---|---|---|---|
| 1) | (12) | (IS) | '(H) | *W* | | | | | | (169. |
| 0 | (12) | 03) | '(14) | '(14.) | (10+ U.) | (LS) | (16*) | (16c) | (16c) | (16d) | (16 |
| | | | | | (104- |4i) | | | | | <|6*-. |

| OTHER EXPENSE QUARTER ENDED 3/31/92 | QUARTER ENDED 6/30/92 | QUARTER ENDED 9/30/92 | TOTAL THRU 9/30/92 | TOTAJL THRU 9/30/92 | 1992 B | FORECAST I | FOERCAST 2 | JORECAST 3 AND BEYON | TOT pun E*.I2/ |
|---|---|---|---|---|---|---|---|---|---|
| 0.0 | 0.4 | 0.0 | 1-9 | 1.9 | 1-0 | 0.0 | 0.0 | 0.0 | |
| 0.0 | 0.0 | 0.0 | 0-0 | 3.5 | 3.5 | 0.0 | 0.0 | 0.0 | |
| 0.0 | 0.0 | 0.0 | 0.3 | 0.3 | 0.2 | 0-2 | O3 | 4.4 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 2.7 | 625 | 20.0 | 0.0 | o.p | |
| 0.0 | 0,0 | 0.0 | ll.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | |
| 0-0 | 0.0 | 0.0 | 0.2 | 0.5 | 05 | 0.2 | 0.2 | 0.2 | 4.4 |
| 0.0 | 0.0 | 0.0 | 0.0 | 12.3 | 12_3 | 0.0 | 0.0 | 0.0 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.5 | 05 | 0.0 | 0.0 | 0.0 | 245 |
| 0.0 | 0.0 | 0.0 | 0.0 | 55.0 | 55.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 0.0 | | 0.2 | Q 5 | 05 | llllll0 | 03 | 0.2 | 4.4 | |
| 0.0 | 0.0 | 0.2 | 05 | 05 | 0.2 | 0.2 | 03 | 4.4 | |
| Q.0 | 0.0 | 0.0 | lG3.0 | 111,7 | 10.0 | 10.0 | 0.0 | 0.0 | |
| 0.0 | 0.0 | 0.0 | O2 | 05 | 03 | 0.2 | 0,2 | 0-2 | 4.4 |
| 0.0 " | 0.0 | 0.0 | 4.2 | 43 | 0,0 | 0.0 | 0.0 | 0.0 | |
| 0.0 " | 0.0 | O2 | 05 | 03 | 0.2 | 03 | 0-2 | 4.4 | |
| 0.0 | 0.0 | O2 | 0-5 | 03 | 0.2 | 0.2 | 0.2 | 4.4 | |
| 0.0 | 0,0 | Q.0 | 05 | 0.5 | 2-0 | 0.0 | 0.0 | b.0 | |
| 2.9 | 0.0 | 0.0 | 2.9 | 2.9 | 3.0 | 0.0 | 0.0 | 0.0 | |
| 0.0 | 4.0 | 9.0 | 13.0 | 4.0 | 15-0 | 2-0 | 1.0 | 1-0 | |
| 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 75.0 | 100.0 | 50.0 | |
| 0.0 | 0.0 | 0.0 | 0.2 | 0.2 | 0.0 | 0.2 | 0-2 | 0.2 | |
| 0.0 | 0.0 | 0.0 | 0,2 | 0.2 | 0.0 | 0.0 | O3 | 0.2 | |
| 0.0 | 0.0 | 15.0 | 15.0 | 0.0 | 0.0 | 20,0 | 0.0 | 0.0 | |
| 2.9 | 4,4 | 25.8 | 218.7 | 261.6 | 52.6 | 109.0 | 103,0 | 11LI | |

GEC 000206

ScAeoL/. r

Ofie)        (17)      .(IS)      (19)  '(20)
(16».16d)  (7+11+16c)
0«c)         (17)      (1*)       (19)  '(20)
i*...ISd)   (7+11+16e)

EST. TOTAL PROJECT COST

| 3 | TOTAL FUTURE Etf.12/31/91 | | 12/31/91 | AS OF 3/31/92 | 6/30/92 | 9/30/92 | SITE NUMBER | STATE | srrE NAME |
|---|---|---|---|---|---|---|---|---|---|
| .0 | 1.0 | | 2.5 | | N.A- | N.A. | 4018 | OK | Koetzel 1-18 |
| .0 | 0.0 | | 33 | | 33 | S3 | 4027 | LA | Mitchell William* A-l |
| .4 | 5.0 | | S3 | | 5.3 | 5.3 | 4029 | LA | Day Baliitn |
| .0 | 20.0 | | 75.6. | | 100.0 | 100.0 | 4030 | TX. | Buuer Cole Rioci, Ector County |
| 0 | 0.0 | | 0.0 | | SA | 5.0 | 4035 | LA | D.L. Mud, Abhcyville |
| 4 | 5.0 | | 5.3 | ■ | S3 | 5.3 | 4036 | LA | E T Currie #! |
| 0 | 0.0 | | 12.3 | | N.A. | N.A. | 4037 | LA | GIBNCOCL dtpmxn 11 |
| S | 243 | | 25.0 | | 25.0 | 25.0 | 4039 | LA | Gulf Coin Vacuum, Abbcyville |
| 5 | 0.0 | | 55.0 | | 55.0 | 55.0 | 40+3 | OK | Sur Miicocr Huntoei Unh |
| ( | J-0 | — | ♦♦♦♦♦♦♦.♦♦ | | 5,3 | 5,3 | 4044 | LA | Turapoinl Baocry |
| l | 5.0 | | 53 | | SJ | SJ | 4045 | LA | WaJtom /I |
| l | 20.0 | | 131.7 | | 131.7 | 131.7 | 4046 | MI | Woodville Field, KeMgo County |
| | 5.0 | | 53 | | 53 | 53 | 4050 | LA | Mitebel Winiami F3AH |
| | 0.0 | | · 4.2 | | N.A. | N./L | 4053 | MI | Lmpt*x7-12 |
| | 5.0 | | 33 | | 53 | 53 | 4055 | LA | MoneyHam #2 SWD |
| | 5.0 | | 53 | | 53 | 53 | 4058 | LA | >Hckcixon #i |
| | 5.0 | | 53 | | 5.3 | 5.3 | 4077 | LA | WARD 11 AH |
| | 2.0 | | 2.5 | | 2.5 | 23 | 4130 | OK | Shchoa 1-30 |
| | 3.0 | | 3.0 | | N.A. | N.A, | 4220 | OK | Norrii 2-20 |
| | 19.0 | | 0.0 | | 19.0 | 19.0 | | OK | Mosqatu Crrrt W-51 |
| | 225.0 | | 0.0 | | 0.0 | 200.0 | | OK | Cuihing Field Waterflood |
| | 0.6 | | 0.6 | | 0.0 | 5.3 | | LA | Mooeyham JIS |
| | 0.6 | | 0.6 | | 0.0 | 53 | | LA | L. W. Biyaon 41 |
| | 20.0 | | 20.0 | | 0.0 | 35.0 | | LA | Turapoinl Held |
| | 375.7 | | 378.9 | NA | NA | | | | |

GEC 000207

5c

EAD COMMITMENT ALLOCATION
WITH SAMSON

DECEMBER 29, 1992          SCHEDULE VIII

| AFE NO. | PROP NO. | AFE NAME | AUTHORIZATION | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | (1) APPROVAL DATE | GPC BY * | TYP Q/G | (2) INITIAL AMOUNT | FUNDS RELEASED | (3) TOTAL AMOUNT | (4) ACTUAL FUNDS EXPENDED | (5) ADDITIONAL TO EXPEND | (6) AMOUNT OVER-EXPENDED | (7) TOTAL APPROVED COMMITMENTS | (8) LESS ACCRUALS | (9) NET CASH EXP | DATE AFE CLOSED | CAT. COMMENTS |

GRACE COMMITMENTS

| 917315 H | 286530 FLYNT 2-33 | 09-09-91 | DED G | *22,291 | $0 | *22,291 | *0 | *22,291 | *22,291 | | | *0 | | |
| 907464 H | 94750 BIG HORN 2-3 | 11-29-90 | JPM G | 459,649 | 95,000 | 364,649 | 333,928 | 30,721 | 364,649 | | 333,928 | | |
| 917342 M | 542980 BIG HORN (PALEO 1*S) | 12-30-91 | JPM G | 358,409 | 150,000 | 208,409 | 158,042 | 50,367 | 208,409 | | 158,042 | | |
| 917341 N | 124230 CALDWELL ESTATE 4-1 | 12-06-91 | JPM G | 17,000 | 0 | 17,000 | 0 | 17,000 | 17,000 | | 0 | | |
| 923045 G | 81430 BARNES ESTATE #1 | 09-25-92 | DEG | 132,760 | 0 | 132,760 | 0 | 132,760 | 132,760 | | 0 | III SPUD 10-25-92 (CAT. III-SEC.29) |
| 923047 H | 740300 REPP 1-25 | 08-29-92 | JPM | 18,818 | 0 | 18,818 | 0 | 18,818 | 18,818 | | 0 | II SPUD 10-12-92 |
| 923053 G | 232550 EL GATO *AM #9 | 10-06-92 | WEM | 249,101 | 0 | 249,101 | 244,823 | 4,278 | 249,101 | | 244,823 | II SPUD 11-02-92 |
| 923055 H | 286040 FLICK 4-19 | 10-14-92 | JPM | 34,277 | 0 | 34,277 | 0 | 34,277 | 34,277 | | 0 | It SPUD 10-5-92 (DFR 12-8-92) |
| 923065 H | 749250 ROOCHTS 4-34 | 11-16-92 | JPM | 10,887 | 0 | 10,887 | 6,249 | 4,638 | 10,907 | | 6,249 | II SPUD 11-19-92 |
| 923066 G | 81440 BARNES ESTATE #2 | 11-04-92 | JPM | 145,071 | 0 | 145,071 | 79,792 | 65,279 | 145,071 | | 79,792 | 1) SPUD 11-14-92 |
| 923002 M | 125580 CAMPBELL 10-21 | 01-30-92 | DFD GA | 48,280 G | | 48,280 | 48,161 | 119 | 48,280 | | 48,161 | I 7/92 ADO |
| 923006 G | 232500 EL GATO AR4 | 02-07-92 | WEM | 237,819 0H | | 237,819 | 151,157 | 86,662 | 237,819 | | 151,157 | 1 5/92 ADO (DRY HOLE) |
| 923013 N | 75840 BAILEY 1-21 | 03-11-92 | WBM | 236,241 | | 236,241 | 210,844 | 25,397 | 236,241 | | 210,844 | I |
| 923017 H | 379730 HUGHES 21*1 | 04-20-92 | DFD | 45,200 G | | 45,208 | 28,382 | 16,826 | 45,208 | | 28,382 | II |
| 923032 M | 80020 BANKS 2-20 | 06-19-92 | JPM | 52,363 | | 52,363 | 45,052 | 7,311 | 52,363 | | 45,052 | II |
| 923033 H | 206030 FLICK 3-19 | 06-19-92 | JPM | 34,277 | | 34,277 | 29,395 | 4,882 | 34,277 | | 29,395 | II |
| 923518 H | 791540 SIMMONS-BOYD 22-12 | 03-25-92 | DFD * | 32,225 G | | 32,225 | 31,272 | 953 | 32,225 | | 31,272 12-92 | 11 5/92 ADO |
| 923521 H | 503710 MORRIS 4-12 | 04-15-92 | DFD * | 35,911 | | 35,911 | 7,441 | 28,470 | 35,911 | | 7,441 12-92 | II |
| 923528 E | 495950 KIRBY 4-9 #2 | 07-24-92 | OFD | 3,315 | | 3,315 | 2,926 | 389 | 3,315 | | 2,926 | II 7/92 ADO |
| 923536 H | 921200 WALTON 1-10 | 09-11-92 | JOH | 10,221 | | 10,221 | 0 | 10,221 | 10,221 | | 0 | II |
| 923539 G | 547270 J.C. MARTIN III #10 | 12-08-92 | JPM | 12,500 | | 12,500 | 0 | 12,500 | 12,500 | | 0 | II |
| 924000 H | 612010 N. MONUMENT GRAYBURG | SOI-06-92 | DFD | *67,381 | *0 | *67,381 | *3,133 | *64,248 | *67,381 | | 3,133 | 1 |
| 925006 G | 17991 ZEIT THIBODAUX | 04-27-92 | JHM | 10,000 | | 10,000 | 7,607 | 2,363 | 10,000 | | 7,607 | II |
| 926002 W | 5900 DOLEZAL WTR TRT FAC | 03-13-92 | RAM | 79,691 | 0 | 79,691 | 18,402 | 61,289 | 79,691 | | 18,402 | II INSTALL WATER DISPOSAL SYSTEM |
| 926007 G | 5750 CITY OF ARANSAS PASS | 06-29-92 | JDH | 69,680 | 0 | 69,680 | 5,644 | 64,036 | 69,680 | | 5,644 | II 8WD WELL |
| 926008 W | 286030 FLICK 3-19 | 10-23-92 | JDH | 2,754 | 0 | 2,754 | 0 | 2,754 | 2,754 | | 0 | II SALES LINE TO ARKLA TIE IN |
| 926200 H | 810600 STAR MISENER HUNTON | 01-07-92 | JDH * | 25,668 | 16,536 | 9,132 | 6,504 | 2,628 | 9,132 | | 6,504 12-92 | II PERF & SQUEEZE |
| 926201 G | 812030 STATE LSE 11035 #1PO | 01-21-92 | JDH | 19,891 | 14,027 | 5,864 | 0 | 5,864 | 5,864 | | 0 | II PULL & REPLACE TUBING |
| 926203 M | 361590 HIGH FIVE UNIT | 06-01-92 | JDH * | 29,563 | 10,218 | 19,345 | 0 | 19,345 | 19,345 | | 0 12-92 | II REPAIR SUV. EQUIP 24-4/32-4 |

PAGE (1)

GEC 000208

E&D COMMITMENT ALLOCATION
WITH SAMSON

DECEMBER 28, 1992          SCHEDULE VII

| AFE NO | PROP NO. | AFE NAME | APPROVAL DATE | GPC BY * | AUTHORIZATION INITIAL AMOUNT (1) | TYP O/G | FUNDS RELEASED (2) | TOTAL AMOUNT (3) | ACTUAL FUNDS EXPENDED (4) | ADDITIONAL TO EXPEND (5) | AMOUNT OVER-EXPENDED (6) | TOTAL APPROVED COMMITMENTS (7) | ESS ACCRUALS | NET CASH EXP [8] | DATE AFE CLOSED (9) | CAT. | COMMENTS |
|--------|----------|----------|---------------|----------|----------------------------------|---------|--------------------|------------------|---------------------------|--------------------------|-------------------------|-------------------------------|--------------|------------------|---------------------|------|----------|
| 926209 H | 567150 | MESA FEDERAL 1-9 | 10-06-92 | GMC | 68,913 | | 62,073 | 6,840 | 0 | 6,840 | | 6,840 | | 0 | | 11 | REPAIR TUBING/RODS |
| 926212 H | 784870 | SHELTON 1-30 | 11-05-92 | JOH | 9,740 | | 6,493 | 3,247 | 0 | 3,247 | | 3,247 | | 0 | | 11 | REPLACE WORN PUMP RODS |
| 926518 H | 606320 | NICHOLAS-HORSE | 02-17-92 | JOH | 2,082 | | 2,082 | 0 | (354) | 354 | | 0 | | (354) | | I | |
| 926519 H | 301920 | GAINS 3*15 | 02-21-92 | JOH | 1,317 | | 0 | 1,317 | (1,288) | 2,605 | | 1,317 | | (1,288) | | I | |
| 926520 H | 787700 | SHORERY Y2 | 03-23-92 | JOH | 1,700 | | 1,700 | 0 | (26) | 26 | | 0 | | (26) | | 11 | |
| 926521 H | 636500 | GERIRUDE OGLE | 03-23-92 | JOH | 6,250 | | 6,250 | 0 | (5,072) | 5,072 | | 0 | | (5,072) | | 11 | |
| 926529 H | 366830 | HATTON 3-17 | 05-26-92 | JOH | 1,126 | | 1,126 | 0 | (982) | 982 | | 0 | | (982) | | 11 | |
| 926536 G | 986080 | ZEPEDA #5 | 07-09-92 | JOW | 3,750 | | 3,750 | 0 | (250) | 250 | | 250 | | 0 | | 11 | |
| 922508 | 21085 | BLUEGILL LAKE | 05-26-92 | DRS | 1,000 | | 0 | 1,000 | 553 | 447 | | 1,000 | | 553 | | 11 | |
| 922509 | 21285 | MARRY KNOLL | 05-26-92 | DRS | 13,000 | | 0 | 13,000 | 12,750 | 250 | | 13,000 | | 12,750 | 12-92 | II | |
| 922523 | 17335 | FUN POND | 08-11-92 | JPM | 60,000 | | 0 | 60,000 | 54,375 | 5,625 | | 60,000 | | 54,375 | | II | |
| 924001 G | 812020 | STATE LEE 11036 #1 | 07-31-92 | JOK | 53,894 | | 0 | 53,894 | 0 | 53,894 | | 53,894 | | 0 | | II | |
| 924002 G | 511450 1 L A E #1 | | 07-31-92 | JOH | 83,504 | | n | 83,504 | 0 | 83,504 | | 83,504 | | 0 | | II | |

| | | | | | | | | $1,478,460 | $959,812 | | $0 | $2,438,272 | | $0 | $1,478,460 |

TOTAL WELLS GRACE COMMITMENTS    12,805,527    $367,255  $2,438,272

PAGE (2)

OBO 888808

E&D COMMITMENT ALLOCATION
WITH SAMSON

DECEMBER 29, 1992          SCHEDULE VII

| AFE NO | PROP NO. | AFE NAME | APPROVAL DATE | GPC BY * | AUTHORIZATION INITIAL AMOUNT (1) | TYP O/G | FUNDS RELEASED (2) | TOTAL AMOUNT (3) | ACTUAL FUNDS EXPENDED (A) | ADDITIONAL TO EXPEND (5) | AMOUNT OVER-EXPENDED (6) | TOTAL APPROVED COMMITMENTS (7) | LESS ACCRUALS (8) | NET CASH EXP (9) | DATE CLOSED | CAL. COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | GRACE- ANTRIM COMMITMENTS | | | | | | | | | | | | | | |
| 917322 G | 345920 | HARDWOOD PROJECT | 07-02-91 | JPH SA | 11,297,003 | | | 11,297,003 | 11,036,526 | 1260,477 | | 11,297,003 | | 11,036,526 | 12-92 | ! 3/92 ADD (DRY HOLE) |
| 923009 M | 361670 | HIGHWAY 33 | 02-14-92 | DEG GA | 1,284,966 | G | | 1,284,966 | 865,481 | 419,485 | | 1,284,966 | | 865,481 | | ! HIGHWAY 33/NCA |
| 923025 M | 361680 | HIGHWAY 612 UNIT | 05-21-1992 | JMH GA | 625,332 | | | 625,332 | 523,167 | 102,165 | | 625,332 | | 523,167 | | II |
| 923035 M | 345920 | HARDWOOD UNIT PH III | 07-02-92 | JPH GA | 951,000 | | | 951,000 | 930,546 | 20,454 | | 951,000 | | 930,546 | | I |
| 923039 M | 345520 | HARDWOOD UNIT IV | 08-17-92 | JMH GA | 653,666 | | 0 | 653,666 | 529,995 | 133,671 | | 653,666 | | 529,995 | | II |
| 923040 M | 313200 | GILCHRIST CREEK PH I | 08-19-92 | JMH GA | 955,000 | | 0 | 955,000 | 219,998 | 735,002 | | 955,000 | | 219,878 | | II DEFER TO 1933 |
| 923046 M | 313300 | GILCHRIST CREEK PH.11 | 09-28-92 | JPM GA | 748,000 | | 0 | 748,000 | 98,332 | 649,668 | | 748,000 | | 98,332 | | II DEFER TO 1513 ＋ 1492,000 |
| 923060 M | 345520 | HARDWOOD UNIT PH V | 11-04-92 | JPH GA | 418,666 | | 0 | 418,666 | 0 | 418,666 | | 418,666 | | 0 | | II DEFER TO 1933 1278,666 |
| 925001 M | 21266 | HARDWOOD | 01-28-92 | WDK GA | 180,000 | | | 180,000 | 161,735 | 18,265 | | 180,000 | | 161,735 | | I |
| 925008 M | 21259 | GILCHRIST CREEK | 07-02-92 | JPH GA | 75,000 | | | 75,000 | 64,880 | 10,120 | | 75,000 | | 64,880 | | II |
| | | | | | | | | | 14,430,660 | 12,767,973 | | | | 14,430,660 | | |
| | | TOTAL WELLS GRACE-ANTRIM COMMITMENTS | | | 17,198,633 | | to | 17,198,633 | | | 10 | 17,198,633 | | 10 | | |

PAGE (3)

GRACO 000 CK

E&D COMMITMENT ALLOCATION
WITH SAMSON

DECEMBER 29, 1992

SCHEDULE VII

| APE NO. | PROP NO. | APE CODE | APPROVAL DATE | GPC BY | (1) INITIAL AMOUNT | TYP O/G | (2) FUNDS RELEASED | (3) TOTAL AMOUNT | (4) ACTUAL FUNDS EXPENDED | (5) ADDITIONAL TO EXPEND | (6) AMOUNT OVER-EXPENDED | (7) TOTAL APPROVED COMMITMENTS | (8) LESS ACCRUALS | (9) NET CASH EXP | DATE APE CLOSED | CAT. COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | SAMSON COMMITMENTS | | | | | | | | | | | | | | |
| 917302 H | 833060 | LELAND 2-35 | 05-14-91 | JRM S | 1434,770 | | 10 | 1434,770 | 10 | 1434,770 | | $434,770 | | 10 | | II SPUD 12-04-92 |
| 92300H H | 566240 | MELBA 2-10 | 02-10-92 | JRM S | 496,174 | | 0 | 496,174 | 61,168 | 435,006 | | 496,174 | | 61,168 | | II SPUD 10-25-92 |
| 923049 H | 548870 | MARY FEDERAL 5-3 | 10-01-92 | JRM S | 263,125 | | 0 | 263,125 | 134 | 262,991 | | 263,125 | | 134 | | II SPUD 11-08-92 |
| 923050 G | 744140 | STATE LEASE 13946 #1 | 10-20-92 | JRM S | 175,242 | | 0 | 175,242 | 107,347 | 67,895 | | 175,242 | | 107,347 | | II SPUD 12/92 TO |
| 923061 N | 286200 | FLYNOR 1-28 | 11-06-92 | JRM S | 60,083 | | 0 | 60,083 | 0 | 60,083 | | 60,083 | | 0 | | II SPUD 11-14-92 |
| 923063 G | 939250 | WIESEMAN WALKER 07 | 11-04-92 | DZG S | 645,201 | | 0 | 645,201 | 0 | 645,201 | | 645,201 | | 0 | | III SPUD 11-24-92 (CAT. III-DEC. 29) |
| 923064 N | 749260 | ROBERTS 4-35 | 11-16-92 | JRM S | 17,429 | | 0 | 17,429 | 0 | 17,429 | | 17,429 | | 0 | | II SPUD 12-16-92 |
| 923069 G | 81450 | BARNES ESTATE #3 | 12-08-92 | JPY S | 145,071 | | 0 | 145,071 | 0 | 145,071 | | 145,071 | | 0 | | II SPUD 12-05-92 |
| 923070 G | 547290 | SOUVIE MARTIN J. #0 | 12-08-92 | JRM S | 96,872 | | 0 | 96,872 | 0 | 96,872 | | 96,872 | | 0 | | II SPUD 12-16-92 |
| 923041 N | 551370 | NIXON 1-13 | 09-01-92 | JPM S | 136,571 | | 0 | 136,571 | 0 | 136,571 | | 136,571 | | 0 | | II |
| 923054 H | 232800 | ELK WOMAN 1-21 | 10-14-92 | JRM S | 45,297 | | 0 | 45,297 | 0 | 45,297 | | 45,297 | | 0 | | II |
| 923067 N | 266050 | FLICK 5-19 | 12-04-92 | JRM S | 35,119 | | 0 | 35,119 | 0 | 35,119 | | 35,119 | | 0 | | II |
| 922006 N | 881410 | USA SOUTH BRANCH 1-16 | 11-05-92 | JPM S | 469,795 | | 150,000 | 319,795 | 0 | 319,795 | | 319,795 | | 0 | | II 1150 000 REIMBURSEMENT FEE |
| | | | | | | | | | 1168,649 | 12,702,100 | $0 | 12,435,979 | | 10 | $168,649 | |

TOTAL WELLS SAMSON COMMITMENTS    12,585,979    1150,000    12,435,979    1168,649    12,702,100    $0    12,435,979    10    $168,649

PAGE (4)

( )c.A.C4ul    &
cc-T fOK  ./3 °-J

October 20/ 1992

**ERRATA** nun1
**REVISION or INTEREST FIGURES AND BTU FACTORS**
**XX RESERVE REPOST DATA 1AIE**

| Property Name | Elft1A | Basin | Working latRT.ft | Net Revenue Interest |
|---|---|---|---|---|
| Irwin A–1 (43204000) | Stockman | xaet Texas | .500000 | .3991880 |
| Cronin 1A-20 (16158000) | Indian Oulch | Mid-Continent | .3617860 | .289429 |
| Haines 1-1 (34105000) | X. Tuttle | Mid-Continent | .2869245 | .226851 |
| Cushman 1-28 (16569000) | Longwood | East Texas | l 91rirln | oQ-K101₁n |
| Anderson 28-8 (03947000) | Armstrong Br. | Black Warrior | .0625000 | .0530701 |
| Damson 1-8 (1722000) | Merritt | Kid-Continsnt | .2209110 | .1680760 |
| Harris 6-1 (3480000) | Longwood | East Texas | .5314502 | .4577300 |
| Humphrey 2-35 (30161000) | Sho-Vel-Tum | Mid-continent | .5134270 | .4145508 |
| James 1-36 (45690000) | Chitwood NW | Mid-Continent | .5262907 | .393366 |
| Lackey 3 (Lower)(5116100) | Hansford | Mid-Continent | .273573 | .2296791 |
| Kirk 4-9 (49608000) | Karritt | Mid-Continent | .0438061 | .0367882 |
| Martin "B" #4 (54726861) | Dolores Crk. | Gulf coast | .125 | .08 |
| Hiller 29-2 (57143000r | Splunge | Black Warrior | .5937499 | .4849478 |
| Hiller/ Pat #1 (5714400) | Roonsville | East Texas | .4240285 | .3392226 |
| Timmerman (84611000) | NE Blocker | Mid-Continent | .2988150 | .2479250 |
| Tracy 1-30 (85206000) | W. Cheyenne | Mid-Continent | .2501881 | .1955153 |
| Stockman 02 (92890022) | stockman | •Xaet Texas | .5 | .375 |

Walker Unit Blowdn (PDBP), ID No. 9180291/ East Texas region/ should be deleted.
Sold at beginning of 1992.

The gas prices in the following fields have not been adjusted for BTU content in
the reserve report.

| Field Name | Reoion | BTP Factor |
|---|---|---|
| Fant | Gulf Coast | 1.144 |
| Limes | Gulf coast | 1.156 |
| W. George West | Gulf Coast | 1.132 |

GEC 000212

## SCHEDULE TO SECTION 10.04

Shares of Sourgasco II Corp.

GEC 000213

## SCHEDULE TO SECTION 10.15

Settlement of GPC v. Curtis lawsuit.

Settlement of claim of Wolverine Gas and Oil Co., Inc. on Woodville site in Michigan.

GEC 000214

(

SCHEDULE TO SECTION 13.02(c)

None.

GEC 000215