## Exhibit 2

**1994 Settlement and Release Agreement**

## SETTLEMENT AND RELEASE AGREEMENT

**WHEREAS,** on December 30, 1992, Grace Energy Corporation ("Grace") and Samson Investment Company ("Samson") entered into that certain GPC Stock Purchase Agreement ("Agreement") whereby Grace agreed to sell unto Samson, and Samson agreed to purchase from Grace, the stock of Grace Petroleum Corporation; and

**WHEREAS,** the Closing occurred on the Closing Date, January 21, 1993; and

**WHEREAS,** Sections 5.01 through 5.05 of the Agreement provided for a future adjustment to the Purchase Price for Net Realizable Assets ("Purchase Price Adjustment"); and

**WHEREAS,** Grace and Samson have now agreed to the Purchase Price Adjustment subject to the terms and conditions contained herein; and

**WHEREAS,** Samson has to date submitted to Grace those certain claims and notices regarding those certain possible claims as set forth in Schedule 1 attached hereto ("Other Claims") under various provisions of the Agreement. Without prejudice to the treatment herein of those certain matters defined in paragraph 3 hereof as the Meridian and Keith Matters, those certain matters previously assumed or extinguished by Grace defined in paragraph 5 hereof as Grace Assumed Matters, and the Hough Matter defined in paragraph 4 hereof, Samson and Grace have now agreed to the settlement of all such Other Claims; and

**WHEREAS,** subject only to the Hough Matter, the Meridian and Keith Matters, the Grace Assumed Matters, and to paragraphs numbered 6, 7 and 8 hereof, Samson and Grace desire hereby to evidence the full and complete resolution of the matters between them with respect to the Purchase Price Adjustment and all Other Claims which Samson has heretofore submitted to Grace.

NOW, THEREFORE, in consideration of Two Million Seven Hundred Thousand Dollars ($2,700,000.00), plus interest on $2,278,478.00 of such amount at the rate of nine percent (9%) from the Closing Date to the date hereof, which sum is being paid contemporaneously herewith by Grace to Samson by wire transfer to Samson's account #3969037 at Liberty Bank & Trust Company, Tulsa, Oklahoma, ABA Routing No. 103900010 and of the covenants, conditions and agreements set forth below which are undertaken by each respective party, Grace and Samson hereby agree as follows:

1. **MUTUAL RELEASE UNDER PURCHASE PRICE ADJUSTMENT PROVISIONS.**

Except as otherwise specifically provided in paragraphs numbered 6, 7 and 8 hereof and excluding any duties and obligations arising under this Settlement and Release Agreement, all obligations owed by Grace to Samson, and by Samson to Grace, pursuant to the Purchase Price Adjustment for Net Realizable Assets provided for in Sections 5.01 through 5.05 of the Agreement, including but not limited to all alleged Title Variances submitted by Samson for resolution under Article 5 of the Agreement pursuant to Section 9.07 of the Agreement, are hereby extinguished, and neither Grace nor Samson shall have any further obligations each to the other with respect thereto.

Except as otherwise specifically provided in paragraphs numbered 6, 7 and 8 hereof, and excluding any duties and obligations arising out of this Settlement and Release Agreement, Grace and Samson each hereby fully and forever release and discharge the other, their respective present and future affiliates and subsidiaries, and each of their past, present, and future officers, directors, employees, shareholders, independent contractors, attorneys, and insurers, of and from any and all actions, causes of action, claims, demands, costs and expenses, including attorneys' fees, of every kind and nature whatsoever, in law or in equity, whether now known or unknown, which each said respective releasor may now have, or claim at any

future time to have, without regard to present actual knowledge, arising from, or based in whole or in part upon, any transaction or any matter or thing involved in any way or manner, with respect to the Purchase Price Adjustment; and Grace and Samson expressly covenant with each other never to institute or participate in any administrative proceeding, suit or action, at law or in equity, against each other by reason of any claim, demand, action or cause of action related to or in any way connected with the Purchase Price Adjustment. This covenant specifically includes, without limitation, arbitration proceedings, administrative actions, actions in courts of law and equity, class actions, and any other actions that may be filed in the future.

2. RELEASE OF GRACE BY SAMSON FOR OTHER CLAIMS.

With the exception of only the Meridian and Keith Matters and the Grace Assumed Matters, Samson hereby agrees that any and all obligations which Grace may have owed or may in the future owe to Samson by virtue of the Other Claims which Samson has heretofore tendered to Grace are hereby extinguished, and Grace shall have no obligation to Samson with respect thereto.

With the exception of only the Meridian and Keith Matters and the Grace Assumed Matters, Samson hereby fully and forever releases and discharges Grace, its present and future affiliates and subsidiaries, and each of its past, present, and future officers, directors, employees, shareholders, independent contractors, attorneys, and insurers, of and from any and all actions, causes of action, claims, demands, costs and expenses, including attorneys' fees, of every kind and nature whatsoever, in law or in equity, whether now known or unknown, which Samson may now have, or claim at any future time to have, without regard to present actual knowledge, of such acts or omissions, including particularly, but not by way of limitation, claims, demands, actions, and causes of action, arising from, or based in whole or in part upon, any transaction or any matter or thing involved in any way or manner with respect to all of the Other Claims; and Samson expressly covenants with Grace never to institute or

participate in any administrative proceeding, suit or action, at law or in equity, against Grace by reason of any claim, demand, action or cause of action related to the Other Claims. This covenant specifically includes, without limitation, arbitration proceedings, administrative actions, actions in courts of law and equity, class actions, and any other actions that may be filed in the future.

3. THE MERIDIAN AND KEITH MATTERS.

Samson tendered to Grace by a letter dated December 6, 1993, that certain claim relating to a demand from Meridian Oil, Inc. to balance product from certain wells (the "Meridian Matter") all as have been fully described on Exhibit "A" hereto. Samson tendered to Grace by a letter dated January 20, 1994, that certain lawsuit filed by Alice Elizabeth Keith et al. in the District Court of Webb County, Texas under case No. 93-310-D1 (the "Keith Matter"), all as more fully described on Exhibit "B" hereto. For the purposes of this Settlement and Release Agreement, Grace hereby agrees (i) that the Meridian and Keith Matters are indemnifiable pursuant to the Agreement, and (ii) to indemnify Samson therefor, pursuant and subject to all the terms, conditions and limitations specified in the Agreement. Samson agrees to defend the Meridian and Keith Matters for Grace pursuant and subject to all the terms, conditions and limitations specified in the Agreement.

4. THE HOUGH MATTER AND OTHER ALLEGED TITLE VARIANCES.

On May 27, 1993, Samson submitted to Grace a Title Variance Letter, which included, among other alleged Title Variances, an alleged Title Variance regarding the Hough #1-12 well located in Section 12-1S-57W, Adams County, Colorado (the "Hough Matter") as more particularly described on Exhibit "C" hereto.

With the exception of the Hough Matter, Samson hereby agrees that all alleged Title Variances submitted by Samson pursuant to Section 9.07(b) of the Agreement, or otherwise, are hereby deemed to be either waived by Samson or fully

satisfied by Grace, and that Samson shall forever forebear from asserting any claim against Grace relative to such alleged Title Variances.

Grace hereby agrees to indemnify Samson with respect to the Hough Matter pursuant to and as provided by Sections 9.07(c)(ii) and 13.03(a)(viii) of the Agreement.

5. GRACE ASSUMED MATTERS.

Samson has notified Grace of the following claims (the "Grace Assumed Matters") for which Grace has previously agreed , and does hereby agree, to defend and indemnify Samson pursuant to the terms of the Agreement:

| | CLAIMANT | DATE GRACE NOTIFIED | DESCRIPTION |
|---|---|---|---|
| a. | Carolyn A. Schaefer v. Karl Mathias Schaefer | 2/22/93 | Claim relating to transition employee who was not offered employment by Samson. |
| b. | Robert L. Parker Trust | 3/5/93 | Third-Party Claim submitted by Robert L. Parker Trust for production proceeds from the Roy Parker No. 1-2 Well located in Roger Mills County, Oklahoma. |
| c. | Gulf States Pipeline Corporation | 3/5/93 | Third-Party Claim from Gulf States Pipeline Corporation demanding reimbursement of an overpayment pursuant to a Gas Purchase and Sales Agreement dated September 18, 1989 and relating to the Longwood Field Area in Louisiana . (Matter has been settled by Grace). |
| d. | Railroad Commission of Texas | 3/15/93 | Notice received from the Railroad Commission of Texas relating to potential liability for an administrative penalty arising from alleged pollution in the Bear Grass Field. (Matter has been settled by Grace). |

Case 01-01139-AMC    Doc 32601-2    Filed 08/18/15    Page 7 of 20




| | | | |
|---|---|---|---|
| e. | Sonat Exploration Company | 3/30/93 | Claim from Sonat Exploration Company requesting Grace Petroleum Corporation's indemnification for litigation expenses to be incurred with regard to the Grace Energy Corporation Shareholders litigation. |
| f. | Texaco, Inc. v. Berry et al. | 4/7/93 | Litigation brought by Texaco to obtain reimbursement from the working interest owners in the Armstrong No. 1-4 well for alleged damages incurred in the settlement of pollution and contamination claims related to said well. |
| g. | Stone Petroleum Corporation | 4/26/93 | Claim by Stone Petroleum Corporation for reimbursement of gas contract settlement proceeds paid to royalty owners of the Parcperdue Field located in Vermilion Parish, Louisiana, along with a notification of potential future liability for royalty owner settlements. (Grace has already paid $115,516 of the claim, and its indemnity to Samson shall only extend to amounts exceeding such amount without limitation pursuant to Section 13.04(a) of the Agreement.) |
| h. | David C. Scott v. Greenhill Petroleum et al. | 11/15/93 | Personal injury claim which allegedly occurred on or about October 28, 1991. The plaintiff was not an employee of Grace Petroleum. |

6. ASSIGNMENT BY SAMSON TO GRACE OF CERTAIN ACCOUNTS RECEIVABLE AND ASSUMPTION BY GRACE OF CERTAIN LIABILITIES

  a. Certain accounts receivable were not included as assets in the Purchase Price Adjustment for the reason that Samson deemed them to be uncollectible. Grace disagreed, but as a compromise has requested that Samson

-6-



assign such accounts receivable to Grace. Samson has agreed to such compromise and therefore, for the considerations hereinabove recited, Samson does hereby transfer and assign the following accounts receivable to Grace:

| Owner Number | Account Type | Owner Name | Amount Assigned to Grace |
|---|---|---|---|
| 001907 | Debit A/P | BHP Petroleum | $17,594.58 |
| 018393 | JIB | Plains Resources | 5,228.94 |
| 115916 | Debit A/P | BHP Petroleum | 1,939.73 |
| 025677 | JIB | Woods Petroleum | 1,359.34 |
| 025677 | JIB | Woods Petroleum (Canadian Conv.) | (290.22) |
| 516630 | Debit A/P | McCullis Resources | 182.34 |
| 010015 | Debit A/P | Famcor Oil | 114.10 |
| 009558 | Debit A/P | H&I Investments | 46,319.71 |
| | | **Total** | **$72,448.52** |

Samson's only warranty with respect to such accounts receivable is that they have not been collected or assigned by Samson. In the event a partial or full payment of any such account is made to Samson, Samson will pay over such payment amounts to Grace within thirty (30) days after receipt.

b. Certain liabilities (both recorded and unrecorded) of Grace Petroleum Corporation totalling $569,979.91 have been identified which were not included as liabilities in the Purchase Price Adjustment for the reason that Grace deemed them as invalid or overstated. Such liabilities fall into three separate categories which are (i) credit balances in oil and gas receivables, (ii) joint interest owner audit claims, and (iii) purchaser overpayments, all of which are more fully identified and set forth on Exhibit D hereto. Grace hereby agrees to assume responsibility for the payment of such liabilities set forth on Exhibit D, and will indemnify and hold Samson harmless therefrom.

In the event a partial or full payment of any such liabilities is made by Samson, after approval by Grace, Grace will pay over such payment amounts to Samson within thirty (30) days of notification from Samson of its payment of same.

7.  **LAKE PAIGE CLEANUP.**

On January 15, 1993, an oil spill occurred at the Grace Petroleum Corporation operated Tenneco "A" tank battery located in Lake Paige Field, Terrebonne Parish, Louisiana. Grace assumed responsibility for this matter by letter dated January 18, 1993, and cleanup has been completed. Samson charged the operating agreement joint account for the expenses attributable to the cleanup of the properties affected by such oil spill, and Grace was charged with Grace Petroleum Corporation's pro-rata share of that amount as a liability under the Purchase Price Adjustments. However, one joint account working interest owner, TenKay, has not paid its pro-rata share of such joint interest billing, and that amount has also been charged to Grace as a liability under the Purchase Price Adjustments. Samson hereby agrees to pay over to Grace any portion of TenKay's share of such joint interest billing in the event TenKay makes any such payment or part thereof to Samson. In addition, Grace is attempting to collect all of such cleanup costs from the insurer of the contract pumping company involved in such oil spill. If Grace is successful in such collection efforts, Grace will deduct its pro-rata share of cleanup costs (as well as TenKay's share if unpaid by TenKay), and pay over the balance to Samson for distribution to the working interest owners who have previously paid their share of cleanup costs.

8.  **STUB PERIOD TAX REIMBURSEMENT.**

Section 17.02(a) of the Agreement provides that Grace shall determine the amount of income taxes of the Corporations related to the period of time from January 1, 1993 through the Closing Date, advise Samson thereof, and such amount would be included as an asset in the Purchase Price Adjustment for Net Realizable

Assets pursuant to Section 5.03 (c) of the Agreement. Such amounts have not been calculated as of the date hereof, and consequently were not included in the Purchase Price Adjustment. Samson hereby agrees that when such amounts are calculated and Grace notifies Samson thereof, upon confirmation and agreement therewith, Samson will pay over such amounts to Grace within thirty (30) days of receipt of the notification.

9. SAMSON WARRANTY - NO KNOWN ADDITIONAL CLAIMS.

Except for that certain lawsuit styled Damron v. Apache Corporation, Cause No. 92-1227R, USDC, Western District of Oklahoma ("Apache Matter"), Samson hereby warrants that to the best of the knowledge and belief of its Executive Vice President C. Philip Tholen, its Senior Vice President-General Counsel Jack A. Canon, and its Senior Vice President-Controller Patrick Hall, there are no claims or other matters existing as of the date hereof which are indemnifiable by Grace to Samson or required to be defended by Grace pursuant to the terms of the Agreement other than the claims, notices and matters of which Samson has already notified Grace. With respect to the Apache Matter, Grace and Samson hereby reserve all of their rights and defenses pursuant to all the terms and conditions of the Agreement, and the execution and delivery hereof shall not constitute a waiver of any such rights and defenses.

Notwithstanding the foregoing, nothing contained herein shall prevent Samson from submitting additional claims to Grace pursuant to the terms and conditions of the Agreement to the extent such claims either (i) arise from and after the date hereof, or (ii) were outside the scope of the personal knowledge of the above named individuals on the date hereof. Subject to the terms and conditions of the Agreement, Grace will indemnify Samson for any such claims.

-9-

10. NO CHANGE IN AGREEMENT TERMS.

Except for the specific matters which are the subject hereof, all of the terms, conditions and limitations contained within the Agreement shall remain in full force and effect as originally written and executed. By way of explanation but not by way of limitation, certain limitation amounts apply pursuant to Section 13.04 of the Agreement under the terms of which Grace shall have no liability to Samson unless individual claims exceed the specified amount. Those limitations shall continue to apply to the Meridian and Keith Matters and the Hough Matter, and any future claims which might be asserted by Samson.

11. GENERAL.

a. The headings of paragraphs herein are intended solely for the convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Settlement and Release Agreement. All terms used herein as defined terms through capitalization of initial letters, but not defined herein, shall have the definitions set forth in the Agreement.

b. Samson and Grace each expressly warrant to the other that they have authority to enter into this Settlement and Release Agreement, and further expressly warrant and represent that they have not sold, assigned, granted or transferred to any other person, corporate or natural, any claim, action, demand, or cause of action released by this Settlement and Release Agreement.

c. Neither Samson nor Grace shall voluntarily disclose any provision of this Settlement and Release Agreement. This paragraph shall not apply to disclosures required by law upon advice of counsel.

d. This Settlement and Release Agreement shall be deemed breached, and a cause of action shall accrue thereon, immediately upon the commencement or continuation of any action by either party hereto against the other based upon any claim, demand, action, or cause of action released by this Settlement and Release

Agreement. In any such action, this Settlement and Release Agreement may be pleaded as a defense, or by way of counterclaim or crossclaim, and shall be admissible into evidence without any foundation testimony or authentication testimony whatsoever.

    e.    Unconditionally, immediately and on demand, the party in breach of this Settlement and Release Agreement shall defend, hold and save harmless the other party from and against any and all actions, causes of action, claims, demands counterclaims, crossclaims, third-party claims, liabilities, losses, judgments, damages and expenses, including court costs, litigation expenses and attorneys' fees that may be sustained or incurred by reason of any breach of this Settlement and Release Agreement.

    f.    All covenants and warranties contained in this Settlement and Release Agreement are contractual, and not mere recitals, and shall survive the closing of this Settlement and Release Agreement. This Settlement and Release Agreement shall not be construed as an admission of liability on the part of either party being released hereby, such liability being expressly denied.

    g.    This Settlement and Release Agreement shall be binding in all respects upon, and shall inure to the benefit of, the successors and assigns of the parties. This Settlement and Release Agreement shall be governed by the laws of the State of Texas. In the event that a court of competent jurisdiction enters a final judgment holding invalid any material provision of this Settlement and Release Agreement, the remainder of this Settlement and Release Agreement shall be fully enforceable.

    h.    This Settlement and Release Agreement constitutes the entire agreement of the parties and a complete merger of prior negotiations and agreements with respect to the matters contained herein; and this Settlement and Release Agreement shall not be modified except in a writing signed by the parties or their authorized representatives. No term or condition of this Settlement and Release

Agreement shall be deemed to have been waived, nor shall there be an estoppel against the enforcement of any provision of this Settlement and Release Agreement except by written instruments signed by the party charged with the waiver or estoppel; no written waiver shall be deemed a continuing waiver unless specifically stated therein, and the written waiver shall operate only as to the specific term or condition waived, and not for the future or as to any other act than that specifically waived.

      i.    The parties to this Settlement and Release Agreement agree that, upon the reasonable request of any other party, it shall execute, acknowledge and deliver any additional instruments or documents that may reasonably be required to carry out the intentions of this Settlement and Release Agreement, including such instruments as may be required by the laws of any jurisdiction, now in effect or hereinafter enacted, which may affect the property rights of the parties as between themselves or others with respect to their rights and obligations created by this Settlement and Release Agreement.

EXECUTED this 31st day of March, 1994.

GRACE ENERGY CORPORATION

By: _____
F. L. Ryan
Vice President

SAMSON INVESTMENT COMPANY

By: _____
C. Philip Tholen
Executive Vice President



## SCHEDULE 1

### To that certain Settlement and Release Agreement

### dated the 31st day of March, 1994,

### and being between Grace Energy Corporation and Samson Investment Company

| DATE OF SAMSON NOTICE | SUBJECT OF CLAIM |
|---|---|
| 03/12/93 | Mineral Management Service claim for penalties and interest on late royalty payments made prior to 12/1/92. |
| 04/08/93 | Transok overpayment for gas sold in Oct. 1982. |
| 04/13/93 | Cash balancing claim on the Birdwell 1-19 by the Operator, Sanguine. |
| 05/04/93 | Louisiana Department of Natural Resources is calling for all Operators who used the MAR oilfield disposal facility to share in the expense of closing it. |
| 05/11/93 | Broughton Petroleum bought the Oxley 1-11 well from GPC at an EBCO auction and demands GPC buy it back because of a gas imbalance. |
| 05/13/93 | Minerals Management Service claim for underpayment of royalties to Cheyenne-Arapaho tribes of Oklahoma. |
| 08/10/93 | Wolverine claim for outstanding joint interest billings prior to 12/1/92. |
| 08/19/93 | BHP Petroleum demand for GPC's share of settlement in Knapp v. BHP lawsuit in Madden. |
| 09/10/93 | Minerals Management Service invoice for underpayment of royalties on the USA Big Creek 1-24B well from 11-90 through 8-92. |
| 09/10/93 | An invoice from W. A. Moncrief, Jr. for GPC's share of protested tax interest for Long Butte Unit. |
| 09/21/93 | 51 Oil Corporation claim for NORM contamination of an oil field pipe cleaning facility. |
| 09/30/93 | Panhandle Eastern Pipe Line Company advised of a proposed assessment of taxes by the Oklahoma Tax Commission related to a 3/31/89 gas contract settlement. |
| 10/07/93 | Possible soil and water contamination caused by an underground tank at the Felber 1-8 well site in Oakland County, Michigan. |

Page 1 of 2

| | |
|---|---|
| 10/22/93 | The Wyoming State Board of Equalization issued a Briefing Order for taxes due on oil sales from the Shannon Sand Unit which GPC had previously sold. |
| 11/01/93 | The Fremont County, Wyoming Treasurer states that GPC owes a balance for taxes and interests attributed to GPC's ownership in the Madden Deep Unit for tax years 1976 through 1987. |
| 11/01/93 | A Citation and Amended Petition by 51 Oil Corporation for NORM contamination of an oil field pipe cleaning facility. |
| 12/06/93 | W. A. Moncrief, Jr. invoice for 1993 ad valorem taxes (based on 1992 production) for GPC's interest in certain properties in Natrona and Fremont Counties, Wyoming. |
| 12/13/93 | Samson has determined that the GPC operated Star Misener-Hunton Unit in Kingfisher & Blaine Counties, Oklahoma has groundwater and surface contamination. Samson wants to take remedial action. |

**** End of Schedule 1 ****

EXHIBIT "A"

To that certain Settlement and Release Agreement

dated the 31st day of March, 1994,

and being between Grace Energy Corporation and Samson Investment Company

The Meridian Matter is defined as follows:

That certain claim by Meridian Oil, Inc. for payment for production from the Stanley Pawlik No. 1, Stanley Pawlik No. 2, and R. J. Prosen No. 1 wells located in Live Oak County, Texas as evidenced by that certain correspondence and schedules received from Meridican Oil, Inc. dated November 29, 1993 relating to alleged production imbalances.

EXHIBIT "B"

To that certain Settlement and Release Agreement

dated the 31st day of March, 1994,

and being between Grace Energy Corporation and Samson Investment Company

The Keith Matter is defined as follows:

That certain lawsuit styled Keith, Alice Elizabeth, Individually and as Trustee under the Last Will and Testament of Alice Willingham Barnes, Deceased v. Crandell Addington, Samson Natural Gas Company, SNG Production Company (formerly kown as Grace Petroleum Corporation), et al. in the District Court of Webb County, Texas, Case No. 93-310-D1 alleging that: (i) Plaintiff relief upon Addington's misrepresentations in executing ratifications to leases, (ii) the subject lease expired at end of its primary term, (iii) all subsequent actions by Defendants constituted trespass, and (iv) Defendants failed to fully develop the leasehold premises. Plaintiff seeks as declaration that the subject lease terminated at expiration of its primary term, that any subsequent ratifications and assignments are null and void, and judgment for actual damages, punitive damages, accounting, fees and costs.

 

# EXHIBIT "C"

## To that certain Settlement and Release Agreement

## dated the 31st day of March, 1994,

## and being between
## Grace Energy Corporation and Samson Investment Company

The Hough Matter is defined as that alleged certain Title Variance described as follows:

The Hough No. 1-12 well located in Adams County, Colorado was drilled in the NW/4 of Section 12-1S-57W to the J Sand Formation (gas), but was completed in the D Sand Formation (oil). Grace Petroleum Corporation owns no interest in the D Sand Formation in the NE/4 of Section 12 inasmuch as same was previously reserved. TIPCO made a telephone inquiry in 1986 as to whether they should be paid for 1/2 of the net revenues from this well because they claimed to own the D Sand in the NE/4 Section 12. No further communications from TIPCO were received by Grace Petroleum Corporation concerning their 1986 inquiry and since the Colorado Oil & Gas Conservation Commission has never spaced the N/2 of Section 12, no further inquiry is anticipated.

 

## EXHIBIT "D"

### To that certain Settlement and Release Agreement

### dated the 31st day of March, 1994,

### and being between Grace Energy Corporation and Samson Investment Company

GEC MANAGEMENT CORPORATION
LIST OF LIABILITIES ASSUMED BY GRACE

**CREDIT BALANCE IN OIL & GAS RECEIVABLES**

| PURCH # | PURCHASER NAME | ACCOUNT BALANCE |
|---|---|---|
| 001990 | MG Natural Gas | $17,865.12 |
| 006882 | El Paso Natural Gas Pipeline | 90,438.67 |
| 007106 | Enron Gas Marketing | 8,084.41 |
| 015880 | Mobil Natural Gas | 6,781.32 |
| 016589 | Natural Gas Clearing | 6,818.64 |
| 017570 | Panda Resources | 32,585.58 |
| 020694 | Seagull Marketing | 2,118.28 |
| 022958 | Texcon Gas Marketing | 21,322.67 |
| 024051 | Valero Industries | 908.39 |
| 024170 | Vesta Energy Co. | 454.00 |
| 027605 | Aquila Gas Marketing | 51,718.96 |
| 028610 | Arkla General | 451.95 |
| 028627 | Enron Gas Marketing | 1,476.33 |
| 029409 | Coastal Gas Marketing | 3,716.96 |
| 017389 | Oryx Energy Company | 14,315.36 |
| 021734 | Southern Natural Gas Company | 6,011.65 |
| 022913 | Texaco E & P Company | 2,871.37 |
| 023552 | Transok Inc. | 148.26 |
| 026120 | Marathon Oil Co. | 4,104.80 |
| 027586 | Lone Star | 11,588.77 |
| 027587 | Northern Natural | 31,795.20 |
| 999138 | GPC Marketing (Dobbs Est 12-11) | 11,468.60 |
| 999138 | GPC Marketing (NM Federal) | 61.99 |
| 999138 | GPC Marketing (NM Federal C) | 656.81 |
| 999138 | GPC Marketing (Steinle Ranch Unit) | 23,509.01 |
| | Subtotal Credits in O&G Receivables | $351,273.10 |

Page 1 of 2

 

## JOINT INTEREST OWNER AUDIT CLAIMS

| PURCH # | PROPERTY NAME | NON-OPERATOR W.I. SHARE |
|---|---|---|
| 324240 | Graves #2 | $2,468.95 |
| 733410 | Randall #1 | 4,562.62 |
| 473410 | Jopling #2 | 3,344.56 |
| 533660 | Lovering #2 | 8,724.91 |
| 759680 | Lee Roy #1 | 702.42 |
| 931310 | L. R. West #1 | 13,775.29 |
| 552780 | McAshan #4 | 11,084.85 |
| 897670 | Varibus #3 | 11,945.21 |
| | Subtotal Audit Claim Liabilities | $56,608.81 |

## PURCHASER OVERPAYMENTS

| PURCH # | PURCHASER NAME | ACCOUNT BALANCE |
|---|---|---|
| N.A. | Gulf States Pipeline Corp. | $109,074.00 |
| | (See Grace Assumed Matters Paragraph 5.c.) | |
| N.A. | Ican Petr (Sp Valley Plant Liquids) | 53,024.00 |
| | Subtotal Purchaser Overpayments | $162,098.00 |
| | GRAND TOTAL | $569,979.91 |

Page 2 of 2