<u>**EXHIBIT 3**</u>

**1998 Settlement and Release Agreement**

## SECOND SETTLEMENT AND RELEASE AGREEMENT

WHEREAS, on December 30, 1992, Grace Energy Corporation ("Grace") and Samson Investment Company ("Samson") entered into that certain GPC Stock Purchase Agreement ("Agreement") whereby Grace agreed to sell to Samson, and Samson agreed to purchase from Grace, all of the issued and outstanding capital stock of Grace Petroleum Corporation; and

WHEREAS, pursuant to the terms of the Agreement, Closing occurred on the Closing Date, January 21, 1993; and

WHEREAS, Sections 5.01 through 5.05 of the Agreement provide for an adjustment to the Purchase Price relating to the calculation of Net Realizable Assets (the "Purchase Price Adjustment"); and

WHEREAS, pursuant to the terms of that certain Settlement and Release Agreement executed March 31, 1994 (the "Settlement and Release Agreement"), Grace and Samson agreed to and effected the Purchase Price Adjustment and, among other things, all as therein more specifically set forth:

      (i)      agreed that all alleged Title Variances previously submitted by Samson to Grace were extinguished, having been deemed to be either waived by Samson or fully

satisfied by Grace (with the exception of the Hough Matter, as therein described, for which Grace agreed to indemnify Samson);

(ii)    agreed that Samson would pay over to Grace TenKay's share of a joint interest billing in the event TenKay makes payment to Samson, and agreed that certain collection efforts would be assumed by Grace associated with the Lake Paige Cleanup, as therein described;

(iii)    agreed to the settlement of those certain eight (8) claims for indemnity that had been previously submitted by Samson to Grace (therein described as "Grace Assumed Matters" and more fully described on Exhibit "A" hereto) by Grace agreeing to assume responsibility for, and release Samson from, all liability relating to said Grace Assumed Matters as well as the Meridian Matter, the Keith Matter and the Hough Matter, all as described in the Settlement and Release Agreement, and by Grace further agreeing to assume responsibility for, and release Samson from, those certain unrecorded and recorded liabilities as set forth in Exhibit "D" to the Settlement and Release Agreement (hereinafter "Recorded and Unrecorded Liabilities");

(iv)    agreed to the settlement of the remaining seventeen (17) claims for indemnity that had been previously submitted by Samson to Grace (therein described as "Other Claims" and more fully described on Exhibit "B" hereto) by Samson agreeing to

assume responsibility for, and release Grace from, all liability relating to such Other Claims;

(v)    agreed that Grace would pay Samson the sum of $2,278,478.00 which Grace paid contemporaneously with the execution of the Settlement and Release Agreement; and

WHEREAS, pursuant to the terms of the Agreement, Samson has submitted to Grace fifty-one (51) additional claims for indemnification as more fully set forth and described in Exhibit "C" hereto, which claims were not addressed in the Settlement and Release Agreement; and

WHEREAS, four additional matters, more fully set forth and described on Exhibit "D" hereto, are subject to indemnification by Grace pursuant to the terms of the Agreement and for which no formal notice of claim has been previously submitted by Samson to Grace; and

WHEREAS, the following eight (8) claims, or categories of claims, i.e., those matters listed and described as (i) through (viii) of this paragraph, shall all hereinafter be referred to collectively as the "Samson Claims". The Samson Claims are: (i) the claims identified on Exhibits "A", "B", "C" and "D" hereto; (ii) the Lake Paige Cleanup; (iii) the Meridian Matter; (iv) the Keith Matter; (v) the Hough Matter; (vi) the Recorded and Unrecorded Liabilities; (vii) any other claims made by Samson prior to the date hereof and pursuant to the terms of the

Agreement or the Settlement and Release Agreement which may have been inadvertently omitted from said exhibits "A", "B", "C" and "D"; and (viii) any additional future claims that may be made by Samson from and after the date hereof as hereinafter provided in paragraph 1.C.; and

WHEREAS, Grace and Samson desire to fully and finally settle, compromise and resolve as between themselves the responsibility for defending and providing indemnification for the Samson Claims.

NOW THEREFORE, in consideration of the payment of One Million Eight Hundred Thousand Dollars ($1,800,000) by Grace to Samson, which sum is being paid contemporaneously with the execution of this Second Settlement and Release Agreement by wire transfer to Samson's account #023969037 at Bank One Oklahoma, Tulsa, Oklahoma, ABA Routing No. 103000648; and in consideration of the agreement by Grace to indemnify Samson with respect to those certain environmental claims relating to the Otis Pipeline as more fully set forth in paragraph 1.A.(k) hereof, a portion of which indemnification obligation has been in dispute between Samson and Grace; and in consideration of the agreement by Samson to indemnify Grace, pursuant to the indemnity obligations hereinafter specified in paragraph I.B., from any and all liability arising from the Samson Claims with the exception of the Grace Indemnities as hereinafter defined and enumerated; and in further consideration of the terms, conditions, covenants and agreements set forth herein, Grace and Samson hereby agree as follows:

1.    MATTERS FOR WHICH GRACE AND SAMSON SHALL INDEMNIFY AND
      HOLD EACH OTHER HARMLESS

A.    Notwithstanding those certain provisions of the Settlement and Release Agreement by which Grace agreed to be responsible, and to provide indemnification to Samson pursuant to the terms of the Agreement, for the Lake Paige Cleanup, the Meridian Matter, the Keith Matter, the Hough Matter, and the Recorded and Unrecorded Liabilities; and notwithstanding any and all other Samson Claims for which Grace may have responsibility and indemnity obligations to Samson, Grace shall nevertheless be responsible for and shall indemnify Samson, pursuant to the indemnity obligations hereinafter specified in paragraph I.D., only for those of the Samson Claims which are set forth hereinafter in subparagraphs (a) through (1) of this paragraph 1.A. (the "Grace Indemnities").  The Grace Indemnities are:

(a)   That certain claim made by Samson pursuant to letter dated June 19, 1996, attached hereto as Exhibit "E(I)n (the "Mississippi State Tax Commission Matter").

(b)   That certain claim made by Samson pursuant to letters dated December 30, 1994 and January 18, 1995, jointly attached hereto as Exhibit "E(2)" (the "Texas Comptroller's Tax Assessment on Lone Star Gas Contract Settlement").

(c)  That certain claim made by Samson pursuant to letters dated September 27, 1994 and December 14, 1995, jointly attached hereto as Exhibit "E(3)" (the "MMS Assessment on Colorado Interstate Gas Contract Settlement").

(d)  Oklahoma Tax Commission audit and assessment on the October 18, 1988 Gas Purchase Contract Settlement between Grace Petroleum Corporation and El Paso Natural Gas Company as reported in the case of Samson Hydrocarbons Company ("formerly Grace Petroleum Corporation!. Appellant, v. Oklahoma Tax Commission. Appellee. Cause No. 89,989, Oklahoma Supreme Court, July 14, 1998.

(e)  That certain claim made by Samson pursuant to letter dated May 4, 1994, attached hereto as Exhibit "E(4)" (""Ella Glimp vs. Exxon Company. U.S.A.. Case No. C-92-449, filed in the District Court of Creek County, Oklahoma").

(f)  Schulte, et al. v. Apache Corporation. Case No. C-81-35 filed in the District Court of Beckham County, Oklahoma, as discussed in Section 6.05 and 13.06(a) of the Agreement.

(g)  1990-93 Internal Revenue Service Audit of Grace Petroleum Corporation.

(h)    That certain claim made by Samson pursuant to letter dated July 5, 1994, attached hereto as Exhibit "E(5)" ("Taxes Due to the Internal Revenue Service for tax periods in 1983 and 1984").

(i)    That certain claim made by Samson pursuant to letter dated July 12, 1995, attached hereto as Exhibit "E(6)" (the "Texas Comptroller's Sales Tax Audit").

(j)    Those certain Recorded and Unrecorded Liabilities as defined herein.

(k)    That certain claim made by Samson pursuant to letters dated September 6, 1994 and December 15, 1995, jointly attached hereto as Exhibit "E(7)" ("the Massachusetts Department of Environmental Protection and the U.S. Department of Justice, acting on behalf of the U.S. Department of Defense, investigation of, and inquiry into, the Otis Pipeline running from Cape Cod Canal to Otis Air National Guard Base near the town of Sandwich, Massachusetts").

(l)    Any additional future claims that may be made by Samson from and after the date hereof as hereinafter provided in paragraph 1.C.

Grace's responsibility and indemnification obligations for the Grace Indemnities shall be pursuant to the terms of the Agreement and the Settlement and Release Agreement, including their administrative procedures and limitations.

B.  By the execution and delivery hereof, Samson hereby agrees that except for the Grace Indemnities identified in paragraphs 1.A.(a) through 1.A.(l) above, any obligations owed by Grace for the Samson Claims heretofore made, asserted or filed, or attempted or intended to be made, asserted or filed, or which could have been made, asserted or filed, by Samson pursuant to the terms of the Agreement or otherwise, whether accepted or rejected by Grace, and whether or not made in the form prescribed by the Agreement, are hereby extinguished, and Grace shall have no further obligations to Samson with respect to any Samson Claims other than the Grace Indemnities.  Samson hereby agrees to assume and fully, finally and forever release, hold harmless, discharge, indemnify and defend Grace, its successors and assigns and its respective present and future affiliates and subsidiaries, and its past, present, and future officers, directors, employees, shareholders, independent contractors, attorneys, and insurers, of and from any and all actions, causes of action, claims, demands, costs and expenses, including attorneys' fees, of every kind and nature whatsoever, in law or in equity, whether now known or unknown, which Samson may now have, or claim at any future time to have, without regard to present actual knowledge, arising from, or based in whole or in part upon, any transaction or any matter or thing involved in any way or manner with respect to the Samson Claims other than the Grace Indemnities.

C.  Notwithstanding the foregoing, nothing contained herein shall prevent Samson from submitting additional claims to Grace pursuant to the terms and conditions of the Agreement to the extent such claims arise from and after the date hereof, or were outside the scope of the personal knowledge of Samson's Executive Vice President, C. Philip Tholen; Samson's Senior Vice President-General Counsel, Jack A. Canon, and Samson's Senior Vice President-Controller,

Patrick Hall on the date hereof; provided, however, any such additional claims shall not be of a category of claims for which Grace's indemnification obligations have expired pursuant to the terms of the Agreement or by operation of law, or otherwise excluded by the terms hereof.

D.  By the execution and delivery hereof, Grace agrees to assume and to fully, finally and forever release, hold harmless, discharge, indemnify and defend Samson, its successors and assigns and its respective present and future affiliates and subsidiaries, and its past, present, and future officers, directors, employees, shareholders, independent contractors, attorneys, and insurers, of and from any and all actions, causes of action, claims, demands, costs and expenses, including attorneys' fees, of every kind and nature whatsoever, in law or in equity, whether now known or unknown, which Grace may now have, or claim at any future time to have, without regard to present actual knowledge, arising from or based in whole or in part upon, any transaction or any matter or thing involved in any way or manner with respect to the Grace Indemnities.

E.  Notwithstanding the foregoing, and excluding the Murphy Oil Claim addressed in paragraph 2. below, each party hereto shall bear all costs and expenses, including interest expense, which such party has heretofore borne or expended in connection with any of the Samson Claims, and be entitled to no refund from the other party for expenditures made before the date hereof regardless of which party is made responsible for such Samson Claims by this Second Settlement and Release Agreement.

F.  Samson and Grace agree to cooperate with each other, which cooperation will include assistance in the collection of monies owed to either party by third parties by virtue of operating or other agreements, the famishing of testimony and other evidence, permitting access to employees and providing information regarding the whereabouts of former employees, and other pertinent documents and information, as reasonably requested by the other party in connection with the matters provided for in this Second Settlement and Release Agreement, all as more folly set forth in Article 14 of the Agreement.

In addition, Samson will allow use of its name and provide whatever signature and other information are required in connection with the investigation, clean-up, and settlement of governmental claims and requirements relating to the Otis Pipeline, including the current investigation conducted in accordance with requirements promulgated by the Massachusetts Department of Environmental Protection.  Further, based upon information currently available, Samson believes that any liability for the Otis pipeline may, in fact, be held by Kaneb Pipe Line Operating Partnership, or other Kaneb entities, and Samson agrees to provide reasonable assistance to Grace in Grace's prosecution of that certain litigation styled Grace Energy Corporation vs. Kaneb Pipe Line Operating Partnership. L.P.. in the 191st Judicial District Court of Dallas County, Texas, which assistance shall include, but not be limited to, providing access to relevant books and records; providing testimony with respect to such records, if Grace deems it necessary; and other matters in reasonable cooperation with Grace in its efforts in connection with such litigation.  Grace agrees to reimburse Samson for Samson's expenses reasonably incurred at Grace's request.

## 2.  SAMSON WARRANTY-NO KNOWN ADDITIONAL CLAIMS

Samson hereby warrants that to the best of the knowledge and belief of its Executive Vice President C. Philip Tholen, its Senior Vice President-General Counsel Jack A. Canon, and its Senior Vice President-Controller Patrick Hall, there are no claims or other matters existing as of the date hereof which are indemnifiable by Grace or required to be defended by Grace pursuant to the terms of the Agreement or the Settlement and Release Agreement other than the claims, notices and matters identified herein as Samson Claims and that certain additional claim set forth in Samson's letter to Grace dated July 31, 1998 ("Murphy Oil Claim"), a copy of which is attached hereto as Exhibit "F".  Grace has agreed to indemnify Samson for said Murphy Oil Claim in accordance with the terms and conditions contained herein pertaining to Grace's indemnification of Samson for the Grace Indemnities, provided however, that Samson hereby agrees to initially defend said Murphy Oil Claim on behalf of Grace in accordance with the terms of the Agreement, with Grace reserving the right to take over such defense at its option.  Should it subsequently be determined that Grace has no liability pursuant to the Murphy Oil Claim, Grace's indemnity obligation will be limited to costs of defense incurred by Samson.

## 3.  NO CHANGE TN AGREEMENT TERMS

Except for the specific matters which are the subject hereof, all of the terms, conditions and limitations contained within the Agreement and the Settlement and Release Agreement shall remain in full force and effect as originally written.

4.  GENERAL

(a)  The headings of paragraphs herein are intended solely for the convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Second Settlement and Release Agreement.  All terms used herein as defined terms through capitalization of initial letters, but not otherwise defined herein, shall have the definitions set forth in the Agreement and the Settlement and Release Agreement.

(b)  Samson and Grace each expressly warrant to the other that they have authority to enter into this Second Settlement and Release Agreement, and further expressly warrant and represent that they have not sold, assigned, granted or transferred to any other person, corporate or natural, any claim, action, demand, or cause of action released hereby.

(c)  Neither Samson nor Grace shall voluntarily disclose any provision of this Second Settlement and Release Agreement.  This paragraph shall not apply to disclosures required by law upon advice of counsel.

(d)  This Second Settlement and Release Agreement shall be deemed breached, and a cause of action shall accrue thereon, immediately upon the commencement or continuation of any action by either party hereto against the other based upon any claim, demand, action, or cause of action released by this Second Settlement and

Release Agreement. In any such action, this Second Settlement and Release Agreement may be pleaded as a defense, or by way of counterclaim or crossclaim, and shall be admissible into evidence without any foundation testimony or authentication testimony whatsoever.

(e) Unconditionally, immediately and on demand, the party in breach of this Second Settlement and Release Agreement shall defend, hold and save harmless the other party from and against any and all actions, causes of action, claims, demands, counterclaims, crossclaims, third-party claims, liabilities, losses, judgments, damages and expenses, including court costs, litigation expenses and attorneys' fees that may be sustained or incurred by reason of any breach of this Second Settlement and Release Agreement.

(f) All covenants and warranties contained in this Second Settlement and Release Agreement are contractual, and not mere recitals, and shall survive the execution of this Second Settlement and Release Agreement. This Second Settlement and Release Agreement shall not be construed as an admission of liability on the part of a party being released hereby, such liability being expressly denied.

(g) This Second Settlement and Release Agreement shall be binding in all respects upon, and shall inure to the benefit of, the successors and assigns of the parties. This Second Settlement and Release Agreement shall be governed by the laws of the State of Texas. In the event that a court of competent jurisdiction enters a

final judgment holding invalid any material provision of this Second Settlement and Release Agreement, the remainder shall be fully enforceable.

(h)   This Second Settlement and Release Agreement constitutes the entire agreement of the parties and a complete merger of prior negotiations and agreements with respect to the matters contained herein; and this Second Settlement and Release Agreement shall not be modified except in a writing signed by the parties or their authorized representatives.  No terms or condition of this Second Settlement and Release Agreement shall be deemed to have been waived, nor shall there be an estoppel against the enforcement of any provision hereof, except by written instruments signed by the party charged with the waiver or estoppel; no written waiver shall be deemed a continuing waiver unless specifically stated therein, and the written waiver shall operate only as to the specific term or condition waived, and not for the future or as to any action other than that specifically waived.

(i)   Each party to the Second Settlement and Release Agreement agrees that, upon the reasonable request of the other party, it shall execute, acknowledge and deliver any additional instruments or documents that may reasonably be required to carry out its intentions, including such instruments as may be required by the laws of any jurisdiction, now in effect or hereafter enacted, which may affect the property rights of the parties as between themselves or others with respect to their respective rights and obligations created by this Second Settlement and Release Agreement.

5.  THE GLIMP MATTER

Samson is aware of Grace's negotiations with Exxon regarding settlement of that certain Grace Indemnity set forth in numbered paragraph l.A.(e) hereof (the "Glimp Matter"). Grace has furnished Samson the opinions of outside counsel regarding the Glimp Matter, and the form of settlement and release agreement which Grace and Exxon have negotiated. Samson agrees to execute the settlement and release agreement in substantially the form furnished by Grace to Samson; provided, however, that Samson reserves its rights pursuant to Section 13.03 (a)(iii) of the Agreement with respect to the Glimp Matter.

EXECUTED THIS     *pQ*     DAY OF                1998.

GRACE ENERGY CORPORATION

BY _____
VICE PRESIDENT

SAMSON INVESTMENT COMPANY

BY _____
C. Philip Tnolen
Executive Vice President

**A**

EXHIBIT "A"

1. *Claimant:* Karl Schaefer. *Date of notice:* 2/22/93. *Description of claim:* Claim relating to severance and termination payments on transition employee not offered employment by Purchaser or the Corporations.

2. *Claimant:* Robert L. Parker Trust. *Date of notice:* 3/5/93. *Description of claim:* Claim submitted by Robert L. Parker Trust for production proceeds from the Roy Barker No. 1-2 Well located in Roger Mills County, Oklahoma.

3. *Claimant:* Gulf States Pipeline Corporation. *Date of notice:* 3/5/93. *Description of claim:* Claim from Gulf States Pipeline Corporation demanding reimbursement of an overpayment pursuant to a Gas Purchase and Sales Agreement dated September 18, 1989 and relating to the Longwood Field Area in Louisiana.

4. *Claimant:* Railroad Commission of Texas. *Date of notice:* 3/15/93. *Description of claim:* Notice received from the Railroad Commission of Texas relating to potential administrative penalty arising from alleged pollution in the Bear Grass Field.

5. *Claimant:* Sonat Exploration Company. *Date, of notice:* 3/30/93. *Description of claim:* Claim from Sonat Exploration Company requesting Grace Petroleum Corporation's indemnification for litigation expenses to be incurred with regard to the Grace Energy Corporation Shareholders litigation.

6. *Claimant:* Texaco, Inc. *Date of notice:* 4/7/93. *Description of claim:* Claim by Texaco to obtain reimbursement from the working interest owners in the Armstrong No.ÿ1-4 Well for damages incurred in the settlement of pollution and contamination claims related to said well.

7. *Claimant:* Stone Petroleum Corporation. *Date of notice:* 4/26/93. *Description of claim:* Claim by Stone Petroleum Corporation for reimbursement of gas contract settlement proceeds paid to royalty owners of the Parcperdue Field located in Vermilion Parish, Louisiana, along with a notification of potential future liability for royalty owner settlements.

8. *Claimant:* David C. Scott and Marilyn Gale Scott. *Date of notice:* 11/15/93. *Description of claim:* Personal injury claim which occurred on or about October 28, 1991.

B

EXHIBIT "B"

1. *Claimant:* Minerals Management Service. *Date of notice:* 3/12/93. *Description of claim:* Claim from the Minerals Management Service for penalties and interest on late royalty payments made by Grace Petroleum Corporation prior to December 1, 1992.

2. *Claimant:* Transok. *Date of notice:* 4/8/93. *Description of claim:* Claim in the nature of an invoice from Transok alleging an overpayment for gas sold during the month of October 1992.

3. *Claimant:* Sanguine, Ltd. *Date of notice:* 4/13/93. *Description of claim:* Claim by Sanguine for cash balancing on the Birdwell No. 1-19 well located in Comanche County, Oklahoma. This well was plugged and abandoned in September 1992.

4. *Claimant:* Louisiana Department of Natural Resources. *Date of notice:* 5/4/93. *Description of claim:* Notice by the State of Louisiana Department of Natural Resources calling for participation by operators who utilized the MAR Service, Inc. facility to combine resources (pay) for the closing of the facility.

5. *Claimant:* Broughton Petroleum, Inc. *Date of notice:* 5/11/93. *Description of claim:* Claim by Broughton that the interest purchased from Grace Petroleum Corporation in the Oxley No. 1-11 well located in Major County, Oklahoma through an EBCO Auction be retained by Grace due to misrepresentations as to the balancing. Represented overproduction was 860 Mcf as of May 1992 when actually overproduced 4,601 Mcf as of May 1992.

6. *Claimant:* Minerals Management Service. *Date of notice:* 5/13/93. *Description of claim:* Claim for the underpayment of royalties to members of the Cheyenne-Arapaho Tribes of Oklahoma arising out of the settlement of a class action suit involving the tribes and the Department of the Interior.

7. *Claimant:* Wolverine Gas & Oil. *Date of notice:* 8/10/93. *Description of claim:* Claim by Wolverine Gas & Oil for payment of outstanding joint interest billings.

8. *Claimant:* BHP Petroleum (Americas) Inc. *Date of notice:* 8/19/93. *Description of claim:* Claim by BHP for Grace Petroleum Corporation's proportionate share of settlement reached in Knapp, et al. v. BHP Petroleum involving a lawsuit brought by royalty owners for unpaid royalties the Madden Unit located in Fremont County, Wyoming.

9. *Claimant:* Minerals Management Service. *Date of notice:* 9/10/93. *Description of claim:* Claim in the nature of an invoice received from Minerals Management Service for underpayment of royalties on the USA Big Creek Well. *Status:*

10. *Claimant:* Moncrief Oil Company. *Date of notice:* 9/17/93. *Description of claim:* Claim in the nature of an invoice for severance tax and interest due on the Long Butte Unit located in Fremont County, Wyoming as a result of an Audit and Assessment Report by the State of Wyoming for the sales periods of 1982 through 1986.

E:\LG7\gr005exhb.doc

11. *Claimant:* 51 Oil Corporation. *Date of notice:* 9/21/93. *Description of claim:* Environmental claim related to property owned by Grace prior to the Closing Date. Lawsuit was filed by 51 Oil Corp. in Orleans Parish, Louisiana.

12. *Clamant:* Panhandle Eastern Pipe Line Company. *Date of notice:* 9/30/93. *Description of claim:* Claim in the nature of a proposed assessment of gross production and petroleum excise taxes by the Oklahoma Tax Commission on take-or-pay settlement payment by Panhandle to Grace in the amount of $460,000 on March 31, 1989.

13. *Claimant:* State of Michigan. *Date of notice:* 10/7/93. *Description of claim:* Claim in the nature of surface and ground water pollution associated with and underground storage tank at the Felber 1-8 and/or the Chicorel 1-17 wellsites in Oakland County, Michigan.

14. *Claimant:* Wyoming State Board of Equalization. *Date of notice:* 10/22/93. *Description of claim:* Claim for correction of take-in-kind volumes attributable to periods prior to the Closing Date.

15. *Claimant:* Fremont County Treasurer. *Date of notice:* 11/1/93. *Description of claim:* Claim in the nature of an assessment of taxes and interest by the Treasurer of Fremont County, Wyoming for tax years 1976 through 1986, resulting from production on the Madden Deep Unit field in Fremont County.

16. *Claimant:* W.A. Moncrief, Jr. *Date of notice:* 12/6/93. *Description of claim:* Claim in the nature of an invoice for 1992 ad valorem taxes for Fremont and Natrona Counties, Wyoming.

17. *Claimant:* Star Misener-Hunton Unit. *Date of notice:* 12/13/93. *Description of claim:* Claim relating to the environmental condition of certain oil and gas producing properties; the site has experienced both groundwater and surface contamination emanating from leaching pits and leaking tanks.

c

# EXHIBIT "C"

1. *Claimant:* Minerals Management Service. *Date of notice:* 6/25/93. *Description of claim:* Notice of an audit to be conducted by the Minerals Management Service in connection with a gas contract settlement entered into between Grace Petroleum Corporation and Sonat Exploration in May 1987.

2. *Claimant:* Louisiana Department of Revenue and Taxation. *Date of notice:* 10/4/93. *Description of claim:* Notices received from the Louisiana Department of Revenue and Taxation regarding tax audits to be performed covering the time period of January 1990 through December 1992.

3. *Claimant:* Texas Comptroller of Public Accounts. *Date of notice:* 10/4/93, 5/23/94, 8/10/94 & 7/12/95. *Description of claim:* Tax audits performed by the Texas Comptroller's Office for Crude Oil Production Taxes, Regulatory Taxes and Sales Taxes.

4. *Claimant:* Ella Glimp v. Exxon Company U.S.A. *Date of notice:* 5/4/94. *Description of claim:* Notice received from Robert N. Barnes, Esq. advising that he intends to name Grace Petroleum Corporation as a party in the litigation styled Ella Glimp v. Exxon Company U.S.A. filed in the District Court of Creek County, Oklahoma, Case No. C-92-449. Litigation relates to saltwater contamination of the Ada-Vamoosa Aquafer underlying Sections 10, 11, 14 and 15, Township 17 North, Range 7 East, Creek County, Oklahoma.

5. *Claimant:* Province of Alberta, *uate of notice:* 5/23/94, 6/15/94, 2/2/95, 2/17/95 and 2/28/95. *Description of claim:* Claim in the nature of an assessment by the Province of Alberta involving income taxes for the period December 31, 1990 to December 31, 1993 Tax Returns.

6. *Claimant:* Exxon Company U.S.A. *Date of notice:* 6/15/94. *Description of claim:* Claim in the nature of an invoice from Exxon relating to a recoupment of revenues paid to Grace Petroleum Corporation on the Tommy J. Strain Well located in East Baton Rouge County, Louisiana applicable to time periods prior to December 1, 1992.

7. *Claimant:* Associated Natural Gas, Inc. *Date of notice:* 6/15/94. *Description of claim:* Claim in the nature of an invoice submitted by Associated Natural Gas, Inc. ("ANGI") to Grace Petroleum Corporation relating to overpayments by ANGI at their Wilcox System in Lavaca County, Texas. Said overpayments involve the production months of April 1992, August 1992, September 1992, and November 1992.

8. *Claimant:* Internal Revenue Service. *Date of notice:* 7/5/94. *Description of claim:* Claim arising from four Notices of Tax Due issued by the Internal Revenue Service for the tax periods ending June 30, 1983, September 30, 1983, December 31, 1983 and March 31, 1984, all relating to windfall profits taxes.

9. *Claimant:* Oklahoma Tax Commission. *Date of notice:* 7/5/94. *Description of claim:* Assessment of Production Excise Tax, plus interest and penalty, relating to a Settlement Agreement between Grace Petroleum Corporation and Oklahoma Natural Gas Company dated November 4, 1991.

O

10. *Claimant:*    Massachusetts Department of Environmental Protection and United States Department of Justice. *Date of Notice.* 9/6/94 and 12/15/95. *Description of Claim*: Claim relating to a fuel pipeline running from Cape Cod Canal onto Otis Air Natural Guard Base near the town of Sandwich, Massachusetts. The Massachusetts Department of Environmental Protections (DEP) has required actions regarding the pipeline and is making further demands relating to testing for contamination, removing fluids from the pipeline, and segmenting and sealing the pipeline. The Department of Justice (DOJ), acting on behalf of the Department of Defense, has given notice of claims regarding alleged contamination on federal lands allegedly related to the pipeline.

11. *Claimant:* Minerals Management Service. *Date of notice:* 9/27/94. *Description of claim:* Audit being conducted by the Minerals Management Service in connection with the gas contract settlement entered into between Grace Petroleum Corporation and Colorado Interstate Gas Company dated February 20, 1989.

12. *Claimant:* Houston Independent School District vs. Pend Oreille Oil & Gas Co. *Date of notice:* 9/29/94. *Description of claim:* Claim in the nature of a lawsuit styled Houston Independent School District vs. Pend Oreille Oil & Gas Co., Case No. 93-64613, District Court, 164th Judicial District, Harris County, Texas.

13. *Claimant:* Minerals Management Service. *Date of notice:* 11/23/94 and subsequent notices. *Description of claim:* Claim in the nature of an audit conducted by the United States Department of the Interior, Minerals Management Service for the period July 1, 1990 through December 31, 1994. Various other state agencies have assisted the MMS and have audited the same time period.

14. *Claimant:* Minerals Management Service. *Date of notice:* 12/2/94 (GEC notified earlier of audit). *Description of claim:* Claim in the nature of an Order from the Minerals Management Service ("MMS"), assessing additional royalties based upon the MMS's review of the Contract Settlement dated October 18, 1988 between Grace Petroleum Corporation and El Paso Natural Gas Company.

15. *Claimant* AnSon Company. *Date of notice*: 12/2/94. *Description of claim*: Claim in the nature of a demand by the AnSon Company to share in the cleanup and remediation of potential surface contamination associated with the Isaac No. 1-5A Well located in Custer County, Oklahoma.

16. *Claimant:* Minerals Management Service. *Date of notice:* 12/5/94. *Description of claim:* Audit conducted by the Minerals Management Service of two gas contract settlements entered into by Grace Petroleum Corporation: (i) March 3, 1989 settlement with Southern Natural Gas Company and (ii) March 31, 1989 settlement with Panhandle Eastern.

17. *Claimant:* Holder, et al. *Date of notice:* 12/30/94. *Description of claim:* Royalty owner lawsuit filed in the District Court of Woods County, State of Oklahoma, under Case No. CJ-94-161, involving certain properties (Wadkins No. 1-30 and Rader No. 1-23 located in Woods County).

18. *Claimant:* Texas Comptroller. *Date of notice:* 1/18/95. *Description of claim:* Claim in the nature of a Notice of Tax/Fee Due which Purchaser received from the State of Texas. Entire amount of claim relates to taxes on a take-or-pay settlement between Grace and Lonestar.

19. *Claimant:* Oklahoma Tax Commission (NorAm Gas Transmission, formerly Arkla, Inc.). *Date of notice:* 2/7/95. *Description of claim:* Assessment of Production Excise Tax, along with penalty and interest, relating to a Settlement Agreement between Grace Petroleum Corporation and Arkla, Inc. dated February 1, 1991.

20. *Claimant:* Minerals Management Service. *Date of notice:* 3/14/95. *Description of claim:* A "Major Portion" analysis and audit by the Minerals Management Service on Grace-owned Indian leases for the period of January 1 through December 1992.

21. *Claimant:* Minerals Management Service. *Date of notice:* 4/26/95. *Description of claim:* Notice of an audit conducted by the Minerals Management Service in connection with the gas contract settlement entered into between Grace Petroleum Corporation and ANR Pipeline Company on or about August 14. 1991.

22. *Claimant:* Minerals Management Service. *Date of notice:* 5/1/95. *Description of claim:* Notice of an audit conducted by the Minerals Management Service of two gas contract settlements entered into by Grace Petroleum Corporation ("Grace"): (i) the August 19, 1990 settlement with Northern Natural Gas Company and (ii) the 1991 settlement with Arkla Energy, Inc.

23. *Claimant:* Transwestern Pipeline Company. *Date of notice:* 6/26/95. *Description of claim:* Notice by Transwestern Pipeline company of an audit being conducted by the Oklahoma Tax Commission of a January 28, 1992 settlement agreement between Transwestern and Grace Petroleum Corporation.

24. *Claimant:* Merit Energy Company. *Date of notice:* 7/10/95. *Description of claim:* Demand by Merit Energy Company for reconciliation of a payout interest in the Smith Ranch 1-1 Well located in Lea County, New Mexico.

25. *Claimant:* Bureau of Indian Affairs. *Date of notice:* 7/14/95. *Description of claim:* Demand by the Bureau of Indian Affairs for plugging, abandonment and lease restoration of certain wells associated with Bureau of Indian Affairs Lease 1-5l-IND-51233 located in Payne County, Oklahoma. The wells in question were previously sold by Grace Petroleum Corporation to A. D. Brady and R. A. Brady, but Messrs. Brady refused to accept the plugging restoration liabilities. Because the assignment from Grace to the Bradys was never approved by the Bureau of Indian Affairs, Grace remains the lessee of record.

26. *Claimant:* R. Gene Cobb, et al. *Date of notice:* 8/1/95. *Description of claim:* Lawsuit styled R. Gene Cobb, et al. vs. TGX Corporation, et al. (including Samson Hydrocarbons as successor to Grace) Case No. 481,651, Nineteenth Judicial District Court East Baton Rouge Parish, Louisiana, alleging inappropriate deductions for gathering, treating and processing of gas from the Starkey No. 1 Well, Cobb No. 1 Well and the Sinclair No. 1 Well.

27. *Claimant:* Minerals Management Service. *Date of notice:* 8/4/95. *Description of claim:* Underpayment of royalties on the Federal Com. 6-1 Well located in Lea County, New Mexico for the period of July 1990 through 1992.

28. *Claimant:* Internal Revenue Service. *Date of notice:* 8/25/95. *Description of claim:* Proposed penalty assessment against Grace Petroleum Corporation for the alleged late filing of Form 1099-MISC returns for the tax year 1992.

29. *Claimant:* Texas Comptroller of Public Accounts. *Date of notice:* 9/5/95. *Description of claim:* Franchise tax audit by the Texas Comptroller for the period of June 1992 through June 1995.

30. *Claimant:* Frank R. Day and Dean Miller. *Date of notice:* 9/6/95. *Description of claim:* Lawsuit filed by Frank R. Day and Dean M. Miller against Samson Resources Company in the Circuit Court for the First Judicial District of Hinds County, Mississippi, Case No. 25-95-7821CIV relating to gas overproduction and alleging causes of action for conversion, breach of fiduciary duty, declaratory judgment based on statute of limitations, declaratory judgment based on absence of a gas balancing agreement and breach of contract.

31. *Claimant:* Stone Petroleum Corporation. *Date of notice:* 9/26/95. *Description of claim:* Demand by Stone Petroleum Corporation that Grace partially fund a $3 million settlement in a lawsuit styled First South Production Credit Association, et al. vs. The Stone Petroleum Corporation, et al., vs. Tenneco, Inc., pending in the U.S. District Court for the Southern District of Mississippi. Said lawsuit was brought by royalty owners and others to share in a prior take-or-pay settlement between Stone/Grace and Tennessee Gas Pipeline Company.

32. *Claimant:* Colorado Board of Land Commissioners. *Date of notice:* 10/4/95. *Description of claim:* Claim by the Colorado State Board of Land Commissioners alleging improper deductions from state royalties of compression, dehydration and transportation from the J. C. State 32-11 Well and the Kicking Bird 21-16 Well.

33. *Claimant:* Partners Oil Company. *Date of notice:* 10/9/95. *Description of claim:* Adversary proceeding filed by Partners Oil Company in the United States Bankruptcy Court for the Southern District of Texas, Case No. 95-4588, alleging that Grace and others are indebted to Partners for goods and services provided by Partners.

34. *Claimant:* Rebecca Tracy Seay, et al. *Date of notice:* 10/26/95. *Description of claim:* Class action royalty owner lawsuit styled Rebecca Tracv Seav. et al. vs. Samson Hydrocarbons Company, successor to Grace. Case No. CJ-95-40, District Court in and for Roger Mills County, Oklahoma, seeking royalties on take-or-pay settlements.

35. *Claimant:* Raymond Pamam. *Date of notice:* 10/31/95. *Description of claim:* Royalty owners demand for information relating to gas contract settlements relating to the Mikles 3-4 Well.

36. *Claimant* Oklahoma Commissioners of Land Office. *Date of notice:* 12/12/95. *Description of claim:* Audit of gas purchase contract settlements involving State of Oklahoma leases.

37. *Claimant:*  Campbell County, Wyoming. *Date of notice:* 1/2/96.    *Description of claim:* Delinquent ad valorem tax assessment against Grace.

38. *Claimant:*  Dale Tracy, et al. *Date of notice:* 1/19/96. *Description of claim:* Class action lawsuit styled Dale Tracy, et al. vs. Samson Investment Company, et al.. District Court for Roger Mills County, Oklahoma, seeking royalties on take-or-pay settlements.

39. *Claimant:*  Oklahoma Tax Commission. *Date of notice:* 2/19/96. *Description of claim:* Assessment by the Oklahoma Tax Commission relating to the January 28, 1992 settlement agreement between Grace and Transwestern Pipeline Company.

40. *Claimant:*  Oklahoma Corporation Commission ("OCC"). *Date of notice:* 4/16/96. *Description of claim:* The OCC has requested that Samson, as successor to Grace, undertake surface remediation/cleanup associated with the Brown No. 1-14 Well located in Roger Mills County, Oklahoma.

41. *Claimant:* Michael Petroleum Company. *Date of notice:* 5/29/96 and 6/14/96. *Description of claim:* March 1992 joint interest billings from Michael Petroleum Company on El Gato State No. 2 Well.

42. *Claimant:* Mississippi State Tax Commission. *Date of notice:* 6/19/96. *Description of claim:* Audit initiated by the Mississippi State Tax Commission regarding unpaid income and/or severance taxes on gas purchase contract settlements involving wells in the state of Mississippi.

43. *Claimant:*  Wyoming Oil & Gas Conversation Commission. *Date of notice:* 7/16/96. *Description of claim:* State of Wyoming won't release Samson's Lessee Bond because four oil and gas wells have not been plugged and abandoned.

44. *Claimant:* Dean Seiting, et al. *Date of notice:* 8/19/96. *Description of claim:* Plaintiffs and certain of the Defendants in the lawsuit styled Rav Price and James Stipanovich vs. Calvin P. Talhelm. et al.. Case No. 91-8849-CZ, Circuit Court of Mecosta County, Michigan, have demanded payment of suspended royalties and have re-joined Grace, now Samson Hydrocarbons Company, as an active participant in the lawsuit.  Plaintiffs and the Defendant group have entered into a settlement agreement which, if enforced by the court, would result in a reduction in Grace's working interest.  In addition, the ownership interest claimed by the Defendant group does not match record title.

45. *Claimant:* Michigan Department of Environmental Quality. *Date of notice:* 10/10/96,12/5/96 and 1/17/97. *Description of claim:* Demand by the Michigan Department of Environmental Quality for the plugging, abandonment and surface restoration of the Walker No. 1-29B Well located in Ingham County, Michigan.  The well had been previously sold by Grace to Tola Production Company in November, 1992.

46. *Claimant:*  Mobil Oil Corporation/John Leffler (Landowner). *Date of notice:* 10/31/96 and 12/27/96. *Description of claim:* Landowner inquiry regarding an oil seep at a former tank battery site located at SE/4 NW/4 Section 30-1S-3W, Carter County, Oklahoma brought to our attention by Mobil Oil Corporation.

47. *Claimant:* Montreal Trust Company. *Date of notice:* 11/7/96. *Description of claim:* Verbal demand by Montreal Trust Company for royalty revenues attributable to production from the Ferrybank 6-9-44-27 W4M Well located in Alberta Province, Canada. It appears that royalty payments may have been made to the wrong party.

48. *Claimant:* Texas Comptroller. *Date of notice:* 4/3/97. *Description of claim:* Assessment by the Texas Comptroller's office for severance taxes attributable to the August 20, 1990 Settlement Agreement between Grace and Northern Natural Gas Company.

49. *Claimant:* Sagamore Oil Company, Israel Katz and Petro-Trade, Ltd. *Date of notice:* 4/22/97. *Description of claim:* Sagamore Oil Company, et al. has filed a petition in the 14th Judicial District Court, Parish of Calcasieu, Louisiana, Case No. 73-1775 for an accounting of royalties due Plaintiffs in the Glasscock-Chapman Well from September, 1984 through present.

50. *Claimant:* C. C. Kilgore, et al. *Date of notice:* 7/3/97. *Description of claim:* Quiet title action styled Kilgore, et al. vs. Blackstone Oil Co., et al., in the District Court for Harris County, Texas, in which Plaintiffs also allege claims of conversion against numerous other defendants. Plaintiffs' claims are based upon conflicts between original land surveys covering the subject property.

51. *Claimant:* Minerals Management Service on behalf of Southern Ute Tribe. *Date of notice:* 9/3/97. *Description of claim:* The MMS is performing a Major Portion audit for the period of 1984 through 1986 for the Mary Meyers 1-27 Well, which was sold prior to the effective date of December 1, 1992. A Major Portion audit essentially means the MMS is trying to obtain a "market value" higher than what was paid by Grace.

D

EXHIBIT "D"

1. Schulte, et al. v. Apache Corporation, filed in Beckham County, Oklahoma, as discussed in Section 6.05 and 13.06(a) of the Agreement.

2. Damron v. Apache Corporation. Cause No. 92-1227R, U.S.D.C. Western District of Oklahoma.

3. 1990-93 Internal Revenue Service Audit of Grace Petroleum Corporation.

4. Oklahoma Tax Commission audit and assessment on the October 18, 1988 Gas Purchase Contract Settlement between Grace Petroleum Corporation and El Paso Natural Gas Company as reported in the case of Samson Hydrocarbons Company (formerly Grace Petroleum Corporation"), Appellant, v. Oklahoma Tax Commission. Appellee. Cause No. 89,989, Oklahoma Supreme Court, July 14, 1998.

E

E(1

 **Samson**

Samson Plaza
Two West Second Street
Tulsa. Oklahoma 74103-3103
918,583-1791
Fax 918/591-1796

June 19, 1996

Attention: Legal Division
Grace Energy Corporation
501 Elm Street, Suite 410
Dallas, Texas  75202-3333

RE:   **STOCK PURCHASE AGREEMENT DATED DECEMBER 30,
      1992 BY AND BETWEEN GRACE ENERGY CORPORATION
      AND SAMSON INVESTMENT COMPANY (the "AGREEMENT")**

Dear Sir/Madam:

Pursuant to the terms of the Agreement, Purchaser hereby places Seller on notice of a claim against Grace Petroleum Corporation in the nature of an audit being conducted by the Mississippi State Tax Commission ("State") regarding unpaid income and/or severance tax on gas purchase contract settlements involving wells in the state of Mississippi. Attached hereto is a copy of the State's May 2, 1996 letter, and related correspondence, discussing the proposed audit or review. Please note that, while the State's letter is dated May 2, 1996, it was not received by our office until May 30, 1996.

Based upon documents in our possession, it appears that Grace Petroleum Corporation was involved in two such settlements which involve Mississippi properties: April 12, 1990 settlement with Mississippi Valley Gas Company in the amount of $11,000,000; and July 29, 1988 settlement with Tennessee Gas Pipeline Company in the amount of $3,000,200. There also appears to have been a March 1, 1988 settlement with Tennessee Gas Pipeline Company which does not directly involve Grace Petroleum Corporation but may have involved one of the Grace limited partnerships.

Although this matter has not yet resulted in a formal assessment by the State, Purchaser nevertheless offers Seller the opportunity to defend and participate in said audit or review. To that end, please advise at your earliest convenience how Seller wishes to respond in this matter.

Unless otherwise specified herein, all capitalized terms shall have the same meaning as set forth in the Agreement. Should you have any questions regarding the referenced claim or

ACQ2\gr279

June 19, 1996
Page 2


the enclosed correspondence, please feel free to contact
Michael G. Daniel at (918) 591-1007 or the undersigned.

                              Very truly yours,
                              SAMSON PRODUCTION SERVICES COMPANY


                              Jack A. Canon
                              *Senior Vice President -*
                              *General Counsel*

MGD/kjb
Enclosure
Via Telecopy (214) 742-1390
Via Federal Express
cc:    W.R. Grace & Co.
       One Town Center Road
       Boca Raton, Florida 33486-1010
       Attn:  Secretary
       Fax No. (407) 362-1635


ACQ2\gr279

# MCDANIEL & BLAIR

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
_____

3900 LAKELAND DRIVE
SUITE 400
JACKSON, MISSISSIPPI 39208

WILLIAM F. BLAIR
KENT McDANIEL

MAILING ADDRESS:
P.O. DRAWER 5399
JACKSON, MS 39296

TELEPHONE: (601) 936-9080
TELECOPIER: (601) 936-6159

*E£XWiÿ

MAY 30 TO

S6    DEPT.

May 2, 1996

VIA CERTIFIED MAIL

Grace Petroleum Corporation
Broadway Executive Park
6501 North Boradway
Oklahoma City, OK  73116-8298

RE:  State of Mississippi Severance Tax and Other Payments

Gentlemen:

Please be advised that our firm has been employed by the State of
(ÿMississippi  acting  by  and  through  the  Attorney  General  and  the
State  Tax  Commission,  as  Special  Assistants  to  the
Attorney General to investigate, research, and initiate proceedings
against any entities which failed to pay applicable severance and/or
income taxes on revenues they received from gas fields located in
Mississippi.   In  this  regard,  the  State  believes  that  some  gas
producers failed to pay severance and/or income taxes due the State on
gas contract settlements which included, among other things, take-or-
pay, gas buydown or buyout, price deficiency and ratable take payments
from gas purchasers for gas fields in the State of Mississippi.   The
State of Mississippi believes that such payments triggered severance
and income tax obligations which were not properly paid and which may
remain due.

Within thirty (30) days of this letter, we hereby request that
you provide the State of Mississippi, acting by and through our firm,
with the following information regarding each gas field in the state
of Mississippi in which you received any settlement payments from gas
purchasers since 1980:

    1.    Name of the Field and County in which it is located and
          each Well involved therein;

    2.    The total of each settlement for each Well and Field
          and the date of payment(s) for each settlement;

3.  The amount of funds paid and the allocation of funds to each settlement category;

4.  Whether any portion of the payment(s) was included on any income and/or severance tax returns filed with the State and whether any tax was paid to the State on each such Settlement; and

5.  If you answered YES to Question No. 5, please describe the total amount of any taxes paid and the applicable tax period, the exact manner in which such payment was calculated, and the return(s) which included all such income and/or tax.

If your company received any gas contract settlement payment(s), either as an operator or as the actual working interest owner, please respond with the requested information within the thirty (30) day time period. If we do not receive a timely response from your company, we must conclude that it received taxable payments for which taxes were not paid. In that event, we may be forced to subpoena your records to determine the taxes due on the full settlement amounts, plus interest and penalties. Please be advised that penalties on such late payments can be significant.

Please accept this letter as a formal demand from the State of Mississippi and the Mississippi State Tax Commission, acting by or through the undersigned firm, for full payment of all taxes described above which are owed by your company, either as operator and/or as a working interest owner, plus interest and penalties.

Sincerely yours,

MCDANIEL & BLAIR

William F. Blair

WFB/11

cc:  Hon. Mike Moore
     Hon. Frank Spencer
     Hon. Robert Long
     Kent McDaniel, Esquire

E(2

£

!jmson Plaza
".•0 Wes: Seccna Street
    sa. 0* arcrr'a /~'C3-3:"3
■' 3/553–t–3i
·jv exdi«:–**3 SAMSON DC TV_

December 30, 1994

Mr. Anthony F. Riddlesperger
Vice President – Chief Counsel
Grace Energy Corporation
Two Galleria Tower
Suite 1500 ,
13455 Noel Road
Dallas, Texas  75240-6681

RE:  **STOCK PURCHASE AGREEMENT DATED DECEMBER 30,
     1992 BT AND BETWEEN GRACE ENERGY CORPORATION
     AND SAMSON INVESTMENT COMPANY (the "AGREEMENT")**

Dear Tony:

Tendered for defense by Seller, pursuant to Section 5.03(p)
and Section 13.05 of the Agreement, is a claim in the nature of
a tax/fee adjustment in the amount of $256,903.16 being assessed
by the Comptroller of Public Accounts, State of Texas {"Comp¬
troller"). A copy of the tax/fee adjustment is attached hereto.
For more details regarding the Comptroller's audit, I would
refer to Purchaser's prior correspondence to you in this matter.

As you will note in the assessment letter, the Comptroller
will apply certain payments against the adjustment amount,
thereby reducing the tax/fee adjustment to $166,860.37.  You
will also note in the assessment letter that this amount does
not include interest or penalties accrued to date.  Further,
interest will continue to accrue on said amounts at a rate of
12% per annum from and after the date of the assessment unless
the entire amount is paid within sixty (60) days.

As new information in this matter comes to our attention,
we will continue to keep you advised.  Unless otherwise speci¬
fied, all Terms used herein shall have the same meaning as

ACQ2\gr130

Grace Energy Corporation
December 30, 1994
Page 2

ascribed to said Terms in the Agreement. Please contact me should.you have any questions regarding the attached documenta¬ tion supporting this claim.

Very truly yours,

SAMSON PRODUCTION SERVICES COMPANY

Jack A. Canon
senior Vice President -
General Counsel

JAC:MD:skr

Attachment

VIA TELECOPY - (214) 770-0215

cc:   W.R. Grace & Co.
      One Town Center Road
      Boca Raton, Florida 33486-1010
      Attn:  Secretary
      Fax NO. (407) 362-1635

ACQ2\gr130

# SsSamson

Eamson P'aza
"Y  ɹ West Secona Street
 -a. Cÿanoma 74103-3103
▪▪▪ 5c3-173'

January 18, 1995

Attention: Legal Division
Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas, Texas  75240-6681

RE:   **STOCK PURCHASE AGREEMENT DATED DECEMBER 30,**
      **1992 BY AND BETWEEN GRACE ENERGY CORPORATION**
      **AND SAMSON INVESTMENT COMPANY (the "AGREEMENT")**

Dear Sir/Madam:

     Tendered for defense by Seller pursuant to Sections 5.03(p)
and 13.05 of the Agreement is a Claim in the nature of a Notice
of Tax/Fee Due which Purchaser received from the State of Texas.
A copy of said Notice is attached hereto.

     Referring back to Purchaser's previous correspondence to
Seller on this matter, the attached Notice is the result of the
Texas Comptroller's Office audit of production taxes paid on
wells located in the State of Texas.  As you will note, the
total amount assessed is $243,917.75 for taxes, penalty and
interest.  Further note that interest on the assessed amount
continues to accrue at a rate of $54.86 per day until paid.  An
additional penalty of $16,686.04 (10% of the tax due) will be
added if the assessment is not paid by February 21, 1995.  A
hearing must be requested by February 10, 1995 if Seller
disputes the assessment.

     Despite the numerous notices submitted by Purchaser, Seller
has not stated whether it intends to defend this matter pursuant
to the terms of the Agreement. We therefore ask that a defini¬
tive response be provided to Purchaser by no later than.
**January 25. 1995.** so that Purchaser may have sufficient time
within which to more fully assess this matter and appropriately
respond.

     Unless otherwise specified, all capitalized terms used
herein shall have the same meaning as ascribed to said terms in

ACQ2\gr133

Ⅎ

Grace Energy Corporation
January 18, 1995
Page 2


the Agreement.  Please contact me should you have any questions
regarding the attached documentation supporting this Claim.

                    Very truly yours,

                    SAMSON PRODUCTION SERVICES COMPANY


                    J
                    S              sident -
                    General Counsel

JAC/mln
Enclosure
Via Telecopy
#214-770-0215
Certified Mail
#P-757-008-550
cc:    W.R. Grace & Co.
       One Town Center Road
       Boca Raton, Florida 33486-1010
       Attn:  Secretary-
       Fax No. (407) 362-1635

AC02\gr133

OQ-Z14
IRiv.2-94/9)

at 08    .11030
TEXAS NOTICE OF TAX/FEE DUE

c. Typ« ot taxrtee

NATURAL GAS PRODUCTION- TAX

d. Oat* ot none*   •. Taxpayer numotr                         f. Amount of your paymant

01-11-95  I. 1-73-0963306-7

$

Taxpayer nam* ana mailing address

SNG PRODUCTION COMPANY                        2H00
TWO WEST 2ND ST
TULSA    OK    74103

Malt* ehecK payabla to:
STATE TREASURER
Mail to:
COMPTROLLER OF PUBLIC ACCOUNTS
Austin. Texas  78771-0100

9303*AUD-REC     *AUD-TYPE    *AMT    243917.75*PMD

110301730963306793139

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

TEXAS NOTICE OF TAX/FEE DUE

Data ot notic*    i Taxpayer number

01-11-95    1-73-0963306-7

Type ot taxifee

NATURAL GAS PRODUCTION TAX

Period of liability

01-01-90    to    03-31-93

REASON FOR TAX/FEE DUE:

AN AUDIT HAS BEEN PERFORMED ON YOUR ACCOUNT FOR THE PERIOD INDICATED
ABOVE.    THIS IS YOUR OFFICIAL TAX LIABILITY NOTIFICATION WHICH IS
DUE AND PAYABLE UPON RECEIPT.

| | |
|---|---|
| TAX/FEE DUE | 166,860'..37 |
| )NALTY | 25,690.32 |
| INTEREST (through 01~11"95 ) | 51,367.06 |

TOTAL LIABILITY AS OF DATE OF NOTICE _                                $    243.917.75

Any additional charges assessed after the date of notice are listed below:

b.

c.

IF PAID AFTER 01-11-95, ADD' INTEREST OF
$        54.86 PER DAY THROUGH THE DATE OF PAYMENT.          d.
IF PAID AFTER 02-21-95, ADD AN ADDITIONAL
10% PENALTY OF $       16,686.04.                            •e

TOTAL AMOUNT DUE ON DATE OF PAYMENT (Add a.b.c.d and el _ _      $

This liability is in addition to SPY other assessments you may have received for other reporting periods or other taxes.

TAXPAYER RIGHTS SUMMARY

If you do not agree with the tax/fee on this billing, you may file a request on or before   02-10-95     lor a hearing. Your request
must be filed with this office and include a statement which lists the specific reasons why you disagree.

•See the beck of this notice for explanation.

If you do not request a hearing and you fail to pay the amoune due. several actions may be initiated to protect the interests of the State. These include but are not -
',rmited to, •filing of tax liens. •suit for injunction end/or judgment. •revocation or suspension of any permit, lieenee or certificate issued by the Comptreffer.-
jhholding of state issued warrants, forfeiting of bond or security posted, •requiring new or additional bond or security, freezing of assets, seam end safe at.
Properties.

(TEX. TAX CODE ANN. SEC. 111.008)

2174-16d?«lp with a state tax question, pleas*-refer to the list on the bade, for the appropriate phone numbers. --




00-214 IB×cwlR≈v,2- 54  ?l

# SUMMARY OF PROCEDURES FOR
# HANDLING DISAGREEMENTS

You have two options if you disagree with this tax/fee bill.  You may pay the full amount due and request a refund hearing or you may simply ask for a hearing to decide the matter.  Your case is reviewed and considered in the same manner under either option.

If you pay and seek a refund, no additional interest accrues after payment

If you simply request a hearing, we will charge interest until the case is over.  You may make a partial payment of the tax/fee to reduce the accrual of interest

Your request for a refund or hearing must be accompanied by a statement of grounds that describes in detail the reasons you believe the billing is in error.  Your statement should set out as clearly and completely as possiDle the facts, as you see them, and the provisions of the tax/fee laws and Comptroller rules on which you are relying.

If you disagree with the results of an audit, specifically list those items of the audit with which you disagree.

The date DV wmcn vcu mav recuest a nearing is specified cn this Dill, if you don't meet the deadline, vou will nave to oav tne full amount on this bill before your objections can be con¬ sidered.  Extensions of the oue date are granted only in cases of emergency or extraordinary circumstances.

The Comptroller wants to give ail taxpayers full consideration in each case.

---

**If you have questions or need information on a specific tax/fee, please cali our toll free numbers:**

**1-800-252-5555**
Attorney Occupation Tax
Automotive Oil Fee
5oat and Boat Motor Sales Tax
Sales Tax
Tire ana Battery Fees
General Information
Mixed Beverage Tax

**1-800-252-1381**
8ank Franchise
Franchise Tax

**1-800-252-1382**
Interstate Motor Carrier
Manufactured Housing
Motor Vehicle Rental
Motor Vehicle' Sales

**1-800-252-1383**
Fuels Tax
LG Oecais
Petroleum Products
**Delivery Fee**

**1-800-252-1384**
Coastal Protection
Crude Oil
Natural Gas

**1-800-252-1385**
Amusement Tax
Hotel Occupancy Tax
Inheritance Tax

**1-800-252-1387**
Insurance Tax

**1-800-531-5441**
Cement Tax
Local Revenue .
Miscellaneous -
    Gross Receipts ·
Oil Well Servicing
Sulphur Tax

**1-800-BBS-TEXAS**
Bulletin Board
System (BBS)

In Austin, call 463-4600.  From a Telecommunication Device for the Oeaf (TDD) ONLY call **1-800-248-4099-**
In Austin, the TDD number is 463-4621.

E(3

*File.*

 **Samson**

Samson Plaza
Two West Second Street
Tulsa. Oklahoma 7a103-3103
918/583-1791
Telex 49611818 SAMSON RC ~_L

September 27, 1994

Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas, Texas   75240-6681

Attention:  Legal Department

RE:  **STOCK PURCHASE AGREEMENT DATED DECEMBER 30, 1992
BY AND BETWEEN GRACE ENERGY CORPORATION AND
SAMSON INVESTMENT COMPANY (the "Agreement")**

Dear Sir/Madam:

By letter dated June 25, 1993, and in previous correspon¬
dence, we provided Seller with notice of potential claims
pursuant to Section 13.05 of the Agreement as said notices
relate to ongoing audits conducted by the Minerals Management
Service ("MMS") in connection with various gas contract settle¬
ments entered into between Grace Petroleum Corporation ("Grace")
and gas purchasers.  We likewise acknowledge receipt of your
letter dated October 4, 1993 indicating that information
regarding said settlements was believed to have been transferred
by Seller to Purchaser.  Nonetheless, this letter is to advise
of the most recent request by the MMS to review information
relating to two (2) settlement agreements: (i) one dated
October, 1988 between Grace and El Paso Natural Gas Company ("El
Paso") in the amount of $4,000,000; and (ii) one dated February,
1989 between Grace and Colorado Interstate Gas Company ("CIG")
in the amount of $5,718,000.  The MMS has requested that the
information be provided by November 30, 1994.  While we have
limited information on the El Paso settlement, we have no
information on the CIG settlement.

We request your assistance in responding to the MMS's
request, and seek your approval to forward to the MMS any infor¬
mation in our possession regarding said settlements.  Further,
although the potential exposure, if any, that may result from

ACQ2\gr116

Grace Energy Corporation
September 27, 1994
Page 2


the MMS's audit has not been determined, the audit findings may
result in an indemnifiable claim.  Please contact me should you
have any questions regarding this matter.

Very truly yours,

CES COMPANY


Jack A. Canon
Senior Vice President –
General Counsel

JAC/mln
Via Telecopy
(214) 770-0215
cc:  W.R. Grace & Co.
     One Town Center Road
     Boca Raton, Florida 33486-1010
     Attn:  Secretary-
     Fax No. (407) 362-1635

ACQ2\gr116



samscr Haza
Twc Wes: Second Street
Tu*sa. Cktaɣoɣa M:C3*3:03
9:3 583*'ɏ3*
ᴦ*ᴄ⁻ ᵔ ᵌ ᵌᵌ·⁻ᵐᵌ

December 14, 1995

Mr. Anthony G. Riddlesperger
Vice President — General Counsel
Grace Energy Corporation
501 Elm Street, Suite 410
Dallas, Texas   75202-3333

Mr. James D. Nowlin
Consulting Landman
GEC Management Corporation
6501 North Broadway, Suite 100-R
Oklahoma City, Oklahoma   73116

**RE:   Settlement Agreement dated February 28, 1989 Between Grace Petroleum Corporation and Colorado Interstate Gas Company**

Gentlemen:

Enclosed herewith is a copy of a letter recently received by the Minerals Management Service ("MMS") regarding its audit of the referenced settlement agreement.   Pursuant to said letter, the MMS contends that additional royalties in the amount of $129,720.49 are owed as a result of the subject settlement. I believe the MMS' position is fairly well set forth in the enclosed letter.

As you will note, the MMS has provided 90 days within which to make the requested computations and pay the additional royalties of $129,720.49, or an appeal of the MMS' decision can be filed within 30 days of receipt of said letter.   To that end, please advise the undersigned at your earliest convenience as to how Grace Energy Corporation wishes to proceed in this matter.

Further, with respect Mr. Nowlin's November 14, 1995 letter regarding the ownership schedules submitted to the MMS, said additional corrections suggested by Mr. Nowlin have been made to the schedules and are being resubmitted to the MMS.   The undersigned would agree with Mr. Nowlin's statement that said corrections are of little magnitude and will likely have little or no bearing on the MMS' recent findings.

acq2\gr222

December 14, 1995
Page 2


          Should you have any questions regarding this or any other
matter, please feel free to contact the undersigned.

                              Very truly yours,

                              SAMSON PRODUCTION SERVICES COMPANY


                              Michael G. Daniel
                              *Attorney*

MGD/kjb
Enclosures
Via Federal Express

cq2\gr222



# United States Department of the Interior

### MINERALS MANAGEMENT SERVICE
Royalty Management Program - DAAO
4013 Northwest Expressway, Suite 210
Oklahoma City. Oklahoma 73116-169"

JRBCBVED

DEC 13 gas

SIC tBGAt DEPT.

IN REPLY REFER TO:

CERTIFIED MAIL--
RETURN RECEIPT REQUESTED

Mr. Michael G. Daniel
Staff Attorney
Samson Resources Company
Samson Plaza, Two West Second Street
Tulsa, Oklahoma  74103-3103

Re:  Contract Settlement Between Grace Petroleum Corporation and
     Colorado Interstate Gas Company Dated February 28, 1989
     (CCN 2-61205.004)

Dear Mr. Daniel:

(ÿ)  The Minerals Management Service (MMS), Dallas Compliance
     Division, has reviewed information regarding the contract
     settlement agreement (settlement agreement) between Grace
     Petroleum Corporation (Grace) and Colorado Interstate Gas Company
     (CIG) dated February 28, 1989, to determine whether the
     settlement agreement proceeds are associated with any Federal
     and/or Indian leases and whether any additional royalties are
     due.  On January 21, 1993, Samson Resources Company (Samson)
     acquired Grace's stock and became the sole succeeding entity.
     In the course of this letter, MMS will refer to Grace in all
     instances and activities prior to January 21, 1993.  Thereafter,
     and for any compliance actions, MMS will address Samson.

     Our review shows Grace entered into three gas sales and purchase
     agreements (purchase agreements) with CIG regarding gas
     production from numerous properties in Wyoming.  On February 28,
     1989, Grace and CIG executed a settlement agreement whereby CIG
     paid Grace $6,562,652 to terminate the purchase agreements
     (buyout/buydown), resolve take-or-pay obligations (take-or-pay),
     and settle pricing disputes (past pricing).

O    As outlined in MMS' "Dear Payor" letter dated May 3, 1993
     (Enclosure 1), the portion of settlement agreement proceeds
     attributable to pricing disputes is royalty bearing when the



EXHIBIT

A

Mr. Michael-G. Daniel
Samson Resources Company                                    . 2

proceeds are received.  Further, the portion of settlement
agreement proceeds allocated to the take-or-pay contract
provision may be royalty bearing if post-settlement production
would have represented "make-up" volume under the original
contracts' terms.  Also, the portion of settlement agreement
proceeds allocated to contract buyout are royalty bearing to the
extent that production of the "bought-out" volume continues from
the leases during the terms of the original contracts.
Additionally, that portion of the settlement agreement payment
made to "buydown," the price paid for future production taken by
the original purchaser under an amended or successor contract, is
royalty bearing.  Aside from the "Dear Payor" letter, MMS has
always required that royalty be paid on gross proceeds.  Title
30 of the Code of Federal Regulations (CFR) at § 221.47 (1981)
entitled "Value basis for computing royalties," states in part:

> . . . Under no circumstances shall the value of production
> of any of said substances for the purposes of computing
> royalty be deemed to be less than the gross proceeds
> accruing to the lessee from the sale thereof. . . .

Regulations at 30 CFR § 206.152(h) (1993) entitled "Valuation
standards-unprocessed gas," state in part:

> . . . under no circumstances shall the value of production
> for royalty purposes be less than the gross proceeds
> accruing to the lessee for lease production, less applicable
> allowances determined pursuant to this subpart.

Regulations at 30 CFR § 206.151 (1993) define gross proceeds as
follows:

> Gross proceeds (for royalty payment purposes) means the
> total monies and other consideration accruing to an oil and
> gas lessee for the disposition of unprocessed gas, residue
> gas, or gas plant products produced. . . .  Monies and other
> consideration, including the forms of consideration
> identified in this paragraph, to which a lessee is
> contractually or legally entitled but which it does not
> seek to collect through reasonable efforts are also part
> of gross proceeds.

Mr. Michael G. Daniel
Samson Resources Company                                               3

In addition, MMS has long held that the lessee has an obligation
to market the lease production prudently and otherwise act for
the mutual benefit of both itself and the lessor.  Therefore,
when the lessee, in exchange for compensation, gives up contract
rights that would have resulted in payment of royalty on gas
produced from the lease if the gas had been disposed of under the
original contract, the royalty owner is entitled to its
fractional share of such compensation to prevent unjust
enrichment of the lessee.

It is MMS' position and practice that lump-sum contract
settlement payments are to be allocated to reflect a reasonable
representation of the elements in dispute.  Therefore, based on
our review of Grace's pre-settlement documents, the MMS has
allocated the settlement agreement proceeds as follows:

| Element. | Proceeds Allocated |
|---|---|
| Past Pricing | $844,274.00 |
| Take-or-Pay | 4,108,651.88 |
| Buydown | 837,057.58 |
| Buyout | 772,668.54 |
| Subtotal | $5,718,378.00 |
| Total Proceeds | $16,562,652.00 |

Past Pricing

The settlement agreement required CIG to pay $844,274 for gas
production which had been delivered but payment had not been
made.  Disputes regarding nonpayment of contract purchase price
by the purchaser is part of gross proceeds accruing to the lessee
and are royalty bearing at the time the lessee receives payment.
The MMS has calculated additional royalty due for past pricing in
the amount of $41,539.55 (Enclosure 2).  The MMS' calculations
for all elements of this settlement were based upon allocation
and/or ownership percentages for Federal leases as provided by
Samson.

Mr. Michael G. Daniel
Samson Resources Company                                              4

Take-or-Pay

The MMS' review of Grace's supporting documents shows that Grace
calculated a take-or-pay deficiency of $23,757,738.63, to which
the MMS prorated $3,633,273.91 in interest, for a take-or-pay
deficiency total of $27,391,012.54.  Obviously, a portion of
the settlement agreement proceeds were meant to resolve these
take-or-pay claims and should be allocated to the take-or-pay
element of the settlement agreement.  The MMS' past experience
shows that only a small portion of the claimed take-pr-pay
liability has been reflected in contract settlement proceeds
received. Therefore, based on past practice, MMS allocated
$4,108,651.88 (0.15 X $27,391,012.54) of the settlement agreement
proceeds to take-or-pay.

In order to determine additional royalty due, the MMS computed an
incremental price per Mcf.  Since Grace's documentation failed to
disclose the volumes associated with the take-or-pay deficiency,
the MMS utilized the October 1988 Section 103 NGPA price of $3.33
to arrive at the estimated volume of 8,225,529.29 Mcf
($27,391,012.54 / $3.33).  The allocated take-or-pay settlement
agreement proceeds were divided by the estimated volume to
arrive at the incremental price of $0.4995 per Mcf
($4,108,651.88 / 8,225,529.29).  The incremental price was
applied to those volumes which exceeded minimum take requirements
under the original contracts ("make-up") during contract years
1990 through 1993, as applicable.  The calculations show total
additional royalty due for take-or-pay in the amount of
$12,691.92 (Enclosure 3 and 4).

Buydown

Payments made to buydown the price of future production taken by
the original purchaser are part of gross proceeds and become
royalty bearing up to the required minimum takes under the
amended or successor contract as produced and sold during the
remaining term of the original contract.  The MMS prorated the
remaining $1,609,726.12 ($6,562,652.00 - $844,274.00 -
$4,108,651.88) based upon MMS' calculated full economic values
for buydown and buyout.  The resultant allocation to buydown of
$837,057.58 ($115,645,915.86 / $222,022,408.08 [rounded to 52%] x
$1,609,726.12) was divided by the minimum takes for each well

Mr. Michael G. Daniel
Samson Resources Company                                                    5

under the successor contract to determine an incremental price
for each well.  These incremental prices ranged from $0.155719 to
$1.011046 per Mcf (Enclosure 5).  The MMS applied the incremental
prices up to the minimum take requirements or actual production,
which ever was less, during the remaining term of the original
contract to calculate additional royalties due by well in the
amount of $52,610.40 (Enclosure 6).  Additional royalty due by
lease is shown at Enclosure 7.

Buyout

Payments made to extinguish or reduce a purchaser's obligation to
take volumes in the future are royalty bearing to the extent that
bought-out volumes are produced and sold during the remaining
term of the original contract.  The MMS allocated $772,668.54
($106,376,492.22 / $222,022,408.08 [rounded to 48%] x
$1,609,726.12) to buyout.  Incremental prices ranging from
$0.156264 to $1.014588 per Mcf were calculated by dividing the
allocated buyout value by the difference between the minimum
takes under the original contract and the successor contract for
each well (Enclosure 5).  In order to determine additional
royalty due of $22,880.62, the incremental prices were applied to
that production from each well which exceeded the minimum takes
under the successor contract but was less than the minimum takes
under the original contract during the remaining term of the
original contract (Enclosure 8).  Additional royalty due by lease
is shown at Enclosure 9.

In order to bring royalty payments into compliance with the
regulations, Samson is directed to perform the following within
90 days of receipt of this order:

1)    Pay additional royalty for past pricing in the amount of
      $41,539.55 for sales month March 1989 by lease as shown at
      Enclosure 2.

2)    Allocate by sales month and pay additional royalty for take-
      or-pay proceeds in the amount of $12,691.92 for the leases
      shown at Enclosure 4.

Mr. Michael G. Daniel
Samson Resources Company                                    6

3) Allocate by sales month and pay additional royalty for
   buydown proceeds in the amount of $52,610.40 for the leases
   shown at Enclosure 7.

4) Allocate by sales month and pay additional royalty for
   buyout proceeds in the amount of $22,880.62 for the leases
   shown at Enclosure 9.

Your payment should be made in accordance with procedures
outlined in 30 CFR § 218.51 (1993) and instructions contained in
the Dear Payor letter dated May 3, 1993, and accompanied by an
appropriately completed green Form MMS-2014. The green Form MMS-
2014 must reflect 665501 in block 3a "Payor-Assigned Document
Number." A copy of your payment and the green Form MMS-2014
should be sent to the address shown below. Appropriate late
payment charges pursuant to 30 CFR § 218.102 (1993) or
30 CFR § 218.150 (1993) will be computed and billed to Samson
upon receipt of payment of the additional royalties due. All
documentation supporting your compliance with this order should
be retained until MMS completes its follow-up compliance testing.
After the period covered by this order, Samson should continue to
value production for royalty purposes in accordance with
regulations and guidelines discussed in this order. If MMS
determines that the required accounting has not been performed,
or the future royalty payments do not comply with this order, the
violation may be considered willful.

Section 109 of the Federal Oil and Gas Royalty Management Act of
1982 (FOGRMA), promulgated in 30 CFR § 241.51 (1993), authorizes
MMS to assess civil penalties for failure or refusal to comply
with the requirements of FOGRMA or any statute, regulation, rule,
order, or permit. Consequently, your failure to comply with the
terms of this order may be considered a violation pursuant to
30 CFR § 241.51 (1993) and could subject you to penalties of up
to $5,000 per violation per day for each day such violation
continues and up to $10,000 per violation each day if the
violation is considered to be willful.

Mr. Michael G. Daniel
Samson Resources Company                                                    7

You have the right to appeal in accordance with the provisions
of 30 CFR 290 (1993).  Any appeal taken will be to the Director,
Minerals Management Service, and the notice of appeal must be
filed with:

                    Mr. Gary L. Johnson, Division Chief
                    Dallas Compliance Division
                    Minerals Management Service
                    4013 NW Expressway, Suite 210
                    Oklahoma City, Oklahoma   73116-1697

within 30 days from the date of receipt of this letter.

Any notice of appeal must be accompanied by written statement
of reasons, as you deem adequate, to justify reversal or
modification of this directive.  Within 90 days from receipt of
this letter, the appellant will be permitted to file additional
statement of reasons or written briefs.  Extensions for filing
the statement of reasons will not be permitted unless requested
in writing by the appellant within the 30-day period allowed for
filing the appeal with justification showing good cause for the
time extension and taken to the Division Chief at the address
shown above.

In accordance with the provisions of 30 CFR § 243.2 (1993),
compliance with this order will be suspended by reason of an
appeal having been taken.

If you have any questions, contact Mr. Barry Eller at
(405) 879-6008.

                    Sincerely,


                    Gary L. Johnson
                    Division Chief
                    Dallas Compliance Division


9 Enclosures

Mr. Michael G. Daniel
Samson Resources Company

8

bcc: File 1802-01/Samson Resources:CCN 2-61205.004
     DCD Reading File
     DCD-OC Reading File
     DCD-Tulsa Reading File
     DAD-C Reading File
     DAD-C (OTP File)
     SICD Reading File
     Wyoming State Audit Office

LMS:RMP:DAD-C:DCD-OKC:MS3621:BEller:po:10/25/95:(405)879-6000:
P:\USERS\TEAM1\GRACE\CIG1.004
Changes/Final 10/30/95:Beller:po
Changes/Final 12/4/95:Beller:po
Changes/Final 12/5/95:Beller:po



? 'losure 1

## United states Department of the interior

MINERALS MANAGEMENT SERVICE
Royalty Management Program
P.O. Box 26166
Denver, Colorado 80225-0166



IN REPLY SETEX TO

MMS-VSD-OG
Mail Stop 3922

MAY 0 3 1993

Dear Payor:

The Minerals Management Service's (MMS) product valuation regulations always have required that royalty be paid on a value which cannot be less than the ■gross proceeds' accruing to the lessee for the disposition of minerals produced from Federal or Indian leases.1  During the past several years, many lessees have entered into agreements with their purchasers settling various Issues pertaining to the sale of production from Federal and Indian leases which have arisen under their contracts.  These settlements frequently involve a lump-sum payment by the purchaser to be relieved of some or all of its obligations under the sales contract.

The purpose of this letter is to provide MMS Royalty Management Program (RMP) interpretation of how the various gross proceeds regulations apply to monies received under contract settlements.  The RMP interpretation clarifies that lessees and other payors are required to pay royalties on contract settlement payments to the extent payments are attributable to minerals produced from the lease.  Under this interpretation, some or all of a settlement payment is or will become royalty bearing if production to which specific money is attributable occurs.

Enclosure 1 is an explanation of how RMP's Interpretation applies to payments made with respect to four issues or elements that are commonly the subject of contract settlement agreements, specifically:

1.  Past pricing disputes;
2.  Accrued take-or-pay liabilities;
3.  Contract "buydowns;" and
4.  Contract "buyouts."

If settlement payments pertain to other elements not specifically addressed in Enclosure 1, or if payments are received as a consequence of judicial litigation regarding sales contract obligations, the payments will be examined using principles consistent with those set forth in Enclosure 1.

---

[1]    See former MMS regulations at 30 CFR §§ 203.200 (1987) (coal, gross value), 206.103 (1987) (onshore oil and gas), 206.150 (1987) (offshore oil and gas), 206.300 (1987) (geothermal, total consideration), and current regulations at 30 CFR §§ 206.102 (oil), 206.152 (unprocessed gas), 206.153 (processed gas), 206.257 (coal), 206.352, 206.355, and 206.356 (geothermal) (1992).

2

O Enclosure 2 contains examples Illustrating how RMP's interpretation applies to common types of contract settlement payment situations. These Illustrations are not meant to be exhaustive; they simply highlight the key elements of the interpretation. The royalty consequences discussed in each of the examples apply only to the specific hypothetical given.

The enclosed RHP interpretation and examples do not address the Issue of how lump-sum contract settlement payments are to be allocated among the several elements that are the subject of the settlement agreement between the seller and the purchaser, which is a necessary prerequisite to applying the interpretation set forth in Enclosure 1. In calculating royalties due on a contract settlement payment, payors need to allocate portions of the settlement payment to each issue resolved in the agreement; e.g., past pricing disputes, take-or-pay, buyout, and buydown. This should be based on the settlement agreement Itself, or supporting documents used in the settlement negotiations, 1f such documents are available and if the allocation reflected in them is reasonable. In reviewing the reasonableness of a payor's allocations, RHP will apply its experience thus far derived from reviewing a substantial number of settlements. That experience has been that for past pricing disputes, the settlement has been for a high proportion of the accrued liabilities for that element. For take-or-pay, the settlement has reflected a small proportion of the take-or-pay liability accrued under the original contract. If RMP determines that the parties' allocation 1s unreasonable, RHP will determine an appropriate allocation.

The RMP will request from lessees, other royalty payors, and purchasers information regarding contract settlements related to Federal and Indian leases. The United States District Court for the Northern District of Oklahoma recently affirmed MMS' right to examine all such information 1n United States v. Samson Resources Co.. Civil No. 92-C-1030 B (March 19, 1993).

Lessees and other royalty payors should use this interpretation to determine the royalties due on amounts received under contract settlement agreements. Royalties due should be reported on the Report of Sales and Royalty Remittance, Form MMS-2014, according to the instructions given in Enclosure 3. If you have further questions regarding this Interpretation of the regulations, please contact Mr. Martin C. Grieshaber at (303) 275-7240. If you have questions concerning the conduct of audits using this interpretation, please contact Mr. Kenneth M. Moyers at (303) 231-5129 or (303) 231-3185.

Sincerely,

James W. Shaw
Associate Director for
Royalty Management

3 Enclosures

# Enclosure 1

# The Minerals Management Service (MMS)
# Royalty Management Program (RMP) Interpretation on
# Royalty Liability on Contract Settlement Payments

GENERAL PRINCIPLE

For Federal and Indian leases, royalties are due on payments received under contract settlement agreements to the extent the payments are attributable to production from the lease. In Diamond Shamrock Exploration Co. v. Hodel. 853 F.2d 1159 (5th Cir. 1988), the Court of Appeals for the Fifth Circuit ruled that royalties are not due on take-or-pay payments until the production to which the take-or-pay payment Is attributable (under the Court's holding, so-called "make-up" gas) occurs.

Consistent with that ruling, the RHP Interpretation and policy is that a payment or a portion of a payment Is royalty bearing if the mineral to which the payment is attributable 1s produced and sold either to the original purchaser or a substitute purchaser, as part of the "gross proceeds" received for disposition of that production under applicable regulations. (See former MMS regulations at 30 CFR §§ 203.200 (1987) (coal, gross value), 206.103 (1987) (onshore oil and gas), 206.150 (1987) (offshore oil and gas), 206.300 (1987) (geothermal, total consideration), and current regulations at 30 CFR §§ 206.102 (oil), 206.152 (unprocessed gas), 206.153 (processed gas), 206.257 (coal), 206.352, 206.355, and 206.356 (geothermal) (1992).

SPECIFIC APPLICATION TO ELEMENTS OF CONTRACT SETTLEMENT PAYMENTS

PAST PRICING DISPUTES

That portion of the settlement payment made to resolve disputes regarding the proper price owed for minerals produced and sold from the lease before the settlement agreement (Including, but not limited to, reimbursements for production-related costs, tax reimbursements, appropriate Natural Gas Policy Act price category, or nonpayment of contract purchase price by the purchaser, etc.) is royalty bearing when the lessee receives the payment.

Payor Letter
05/03/93
Enclosure

2

## TAKE-OR-PAY

Settlement payments that are expressly subject to future recoupment through make-up deliveries are royalty bearing when and to the extent recQmzgj.

Where payments are made to settle past take-or-pay liabilities and the purchaser has the right to recoup the settlement payment through future deliveries of make-up production under an original, amended or successor contract, royalty 1s due on that portion of the settlement payment allocable to resolution of the take-or-pay obligation as the payment 1s applied to the make-up production.

Settlement payments that are not expressly subject to future recoupment through make-uo deliveries may be royalty bearing.

Where payments are made to settle past take-or-pay liabilities, but the payment 1s not expressly recoupable through future deliveries of make-up production under an original, amended or successor contract, the royalty liability will be determined based on the status of the purchaser's make-up rights at the time of settlement and the circumstances involving future production from the lease.

Specifically, if the purchaser had make-up rights at the time of settlement and production continues from the lease, the portion of the settlement payment allocable to resolution of the take-or-pay obligation relates in part to the gas which the purchaser had the right to take under the make-up provisions of the original contract. Thus, 1f volumes that would have been make-up volumes; i.e., volumes 1n excess of the minimum take requirement under the original contract, are produced and taken by either the original or a substitute purchaser during the original contract's make-up period, then the portion of the settlement payment attributable to those volumes becomes royalty bearing as the volumes that would have been make-up volumes are produced. In this case, the payment is tied to a volume of production that may be produced after the settlement 1s effective. Royalties on the attributed portion of the settlement payment are due as this production occurs and are 1n addition to the royalties otherwise due on the product based upon the disposition to the purchaser of those volumes.

If the original purchaser's make-up rights were expired at the time of settlement, the portion of the settlement payment allocable to the resolution of past take-or-pay liabilities is not royalty bearing.

CONTRACT "BUYDOWNS"

That portion of the settlement payment made to reduce the price to be
paid for future production to be taken by the original purchaser under an
amended or successor contract 1s royalty bearing as future production
occurs. The portion of the settlement payment allocable to this element
1s attributable to the production required to be taken during the
remaining term of the original contract. Specifically, 1f the settlement
agreement, or the payor's documents or workpapers generated
contemporaneously with the settlement agreement, Includes a methodology
to allocate this portion of the settlement payment to determine the
amount attributable to each MMBtu of volume for which the price was
bought down, MMS will accept that allocation method if It is reasonable.[2]
If there is no such acceptable allocation, payors should use the
following alternative method: the amount allocated to the buydown element
Is divided by the total MMBtu required to be taken under the amended or
successor contract during the remaining term of the original contract.
Under either the payor's allocation method or the allowed alternative
method, the resulting unit dollars per MMBtu are then added to the
proceeds paid under the amended or successor contract to establish the
gross proceeds received for the volumes (up to the required minimum under
the amended or successor contract) produced and sold under that contract
during the remaining term of the original contract as and to the extent
that they are produced. This total sura establishes the minimum royalty
value for the production. Royalties are due on this value as production
occurs.

CONTRACT "BUYOUTS"

Payments made to extinguish a purchaser's obligation to take volumes in
the future under the contract being reformed or terminated are royalty
bearing to the extent that production of the "bought-out" volumes
(i.e., the reduction in the minimum take volume under the original
contract) continues from the lease under any successor contract with any
purchaser during the term of the original contract. The payment is
royalty bearing because it compensates the lessee for lower prices in the
future for the production foregone by the original purchaser. Some or
all of the portion of the settlement payment allocable to this element is
attributable to the bought-out volumes produced during the remaining tera
of the original contract. Specifically, if the settlement agreement (or
the payor's documents or workpapers generated contemporaneously with the
settlement agreement) includes a methodology to allocate this portion of
the settlement payment to determine the amount attributable to each MM&tu
of bought-out volumes which is produced and sold to a substitute
purchaser, MMS will accept that allocation method 1f it is reasonable.
If there is no such acceptable allocation, payors should use the
following alternative method: the amount allocated to this element is

---

[2]  MMBtu is the volume unit for natural gas, which is the subject of raost
of the settlement agreements. If another mineral is involved, the appropriate
unit of volume would be substituted.

Payor Letter
05/03/93
Enclosure

4

divided by the total volume bought-out for the remaining term of the original contract. Under either the payor's allocation method or the allowed alternative method, the resulting unit dollars per MQtu are then added to the proceeds paid under the substitute contract to establish the gross proceeds received for the bought-out volumes produced and sold under that contract as they are produced.

Payments made to extinguish a purchaser's obligation to take volumes In the future are not royalty bearing If there 1$ no production ln the future during the term of the original contract to which the payment can be attributed.

# Enclosure 2

## CONTRACT SETTLEMENT EXAMPLES

General Assumptions

    S = seller/lessee
    P, « original purchaser
    P2 = new or substitute purchaser

    Original contract: 10-year term, 1 million MHBtu/year minimum take,
    $5/MMBtu contract price


EXAMPLE-!.

    Assumption?

    1. P, owes S $250,000 for FERC Order 94 series reimbursements.

    2. P, has an accrued take-or-pay liability of $3 million; the make-up
       period under the original contract has expired.

    3. In year 5 of the contract, P, and S enter into a settlement agreement:
           P, pays S $5 million
           P/s minimum take requirement is reduced to 500,000 MMBtu/year and
           P, takes that volume
           P/s price is reduced to $2/MHBtu
           The term is 5 years from date of settlement
           There is no successor contract for bought-out volumes during the
           next 5 years.


    Royalty Consequences

    A. Any settlement amount allocable to resolution of the FERC Order 94
       past pricing dispute is royalty bearing upori payment.

    B. The portion of the settlement payment allocable to take-or-pay is not
       royalty bearing because no make-up volumes are produced.

    C. The portion of the settlement payment allocable to reduction in price
       of the remaining 500,000 WiBtu/year from $5 to $2 (buydown) is royalty
       bearing as production occurs over the next 5 years.  Therefore,
       royalty is due on $2/MMBtu plus the amount allocated to each HMBtu of
       production 1n accordance with the method described 1n the
       interpretation.

    D. The portion of the settlement payment allocated to buyout is not
       royalty bearing because no bought-out volumes are produced under any
       successor or substitute contract during the remaining term of the
       original contract in this example.

2

## EXMP-LE-2

Assumptions are the same as example 1 except for bolded text:

1.  P, owes S $250,000 for FERC Order 94 series reimbursements.

2.  P, has an accrued take-or-pay liability of $3 million; the make-up period under the original contract has expired.

3.  In year 5 of the contract, P, and S enter into a settlement agreement:
    P, pays S $5 million.
    P/s minimum take requirement is reduced to 500,000 MMBtu/year, but P, takes more than that volume.
    P/s price is reduced to $2/MHBtu.
    The term is 5 years from date of settlement.
    There is no successor contract for bought-out volumes during the next 5 years.
    The new contract with P, allows a new make-up period for take-or-pay settlement payment.

Royalty Consequences (same as example 1 except for B.)

A.  Any settlement amount allocable to resolution of the FERC Order 94 dispute is royalty bearing upon payment.

B.  The portion of the settlement payment allocated to take-or-pay becomes royalty bearing because P, takes In excess of 500,000 MMBtu/year within new make-up period; the volumes taken ln excess of 500,000 MMBtu/year are make-up volumes. Royalties should be paid as the settlement payment 1s recouped through the delivery of the make-up gas volumes.

C.  The portion of the settlement payment allocable to reduction ln price of the remaining 500,000 MMBtu/year from $5 to $2 is royalty bearing as production occurs over the next 5 years. Therefore, royalty is due on $2/MMBtu plus the amount allocated to each HMBtu of production in accordance with the method described in the interpretation.

D.  The portion of the settlement payment allocated to buyout 1s not royalty bearing because no bought-out volumes are produced under any successor or substitute contract during the remaining term of the original contract In this example.

3

**"** ⬤ EXAMPLE 3

    Assumptions same as Example 1 except bolded text:

1.  $P_n$ owes S $250,000 for FERC Order 94 series reimbursements.

2.  P, has an accrued take-or-pay **liability of** S3 million; **the make-up period under the original contract for accrued take-or-pay liability has not expired; 3 years remain.**

3.  In year 5 of the contract, P, and S enter Into a settlement agreement:
      P, pays S $5 million.
      P/s minimum take requirement 1s reduced to 500,000 MMBtu/year and P, takes that volume.
      P/s price is reduced to $2/MHBtu.
      The term is 5 years from date of settlement.
      **The make-up rights for take-or-pay payments under the original contract are extinguished.**

4.  $P_2$ purchases 400,000 MMBtu/year at $2/MHBtu for 5 years.

Royalty Consequences  (same as example 1 except D.)

A.  Any settlement amount allocable to resolution of the FERC Order 94 dispute is royalty bearing upon payment.

B.  The portion of the settlement payment allocable to take-or-pay 1s not royalty bearing because no "make-up" volumes are taken in excess of original contract volumes.

**t.**  The portion of the settlement payment allocable to reduction in price of the remaining 500,000 MMBtu/year from $5 to $2 1s royalty bearing as production occurs over the next 5 years.  Therefore, royalty is due on $2/MMBtu plus the amount allocated to each MMBtu of production In accordance with the method described 1n the Interpretation.

D.  In accordance with the method described In the interpretation, the portion of the settlement payment allocated to buyout Is divided by the bought-out volume for the remaining term of the original contract (2,500,000 MMBtu (-500,000 MMBtu/year x 5 years)) to establish a unit Incremental value ($/MMBtu), which 1s then added to the proceeds paid for the 400,000 MMBtu/year of bought-out volumes which $P_2$ takes over 5 years, and is royalty bearing as production occurs.

Payor Letter
05/03/93
Enclosure

O   EWtPtLi

Assumptions same as Example 3 except bolded text:

1.  $P_1$ owes S $250,000 for FERC Order 94 series reimbursements.

2.  $P_1$ has an accrued take-or-pay **liability** of $3 million; the make-up period under the original contract for accrued take-or-pay liability has not expired; 3 years remain.

3.  In year 5 of the contract, $P_1$ and S enter Into a settlement agreement:
    P, pays S $5 million
    P/s minimum take requirement is reduced to 500,000 MMBtu/year and $P_1$ takes that volume
    P/s price is reduced to $2/ttiBtu
    The term is 5 years from date of settlement.
    The make-up rights for take-or-pay payments under the original **contract are extinguished.**

4.  $P_2$ purchases 600,000 MMBtu/year at $2/HHBtu for 5 years

Royalty Consequences        (A. and C. are same as examples 1 and 3; B. and
                            D. are not)

A.  Any settlement amount allocable to resolution of the FERC Order 94 dispute is royalty bearing upon payment.

B.  In accordance with **the method described In the Interpretation, the** portion of the settlement payment **allocated to take-or-pay is divided** by the make-up volume **to which P, had the right to take under the** original contract (600,000 MBtu (– $3,000,000 + $5/MMBtu)) **to** establish an incremental **value.  This value will be added to the otherwise** applicable **royalty value for the 100,000 MMBtu/year of** •make-up* gas for 3 years **and 1s royalty bearing as that production occurs.**

C.  The portion of the settlement payment allocable to reduction In price of the remaining 500,000 MMBtu/year from $5 to $2 Is royalty bearing as production occurs over the next 5 years.  Therefore, royalty is due on $2/MMBtu plus the amount allocated to each HMBtu of production in accordance with the method described in the interpretation.      /

D.  In accordance **with the method described In the Interpretation, the** **portion of the settlement payment allocated to** buyout **Is divided by** **the bought-out volume for the remaining term of the original contract** **(2,500,000 MMBtu (-500,000 MMBtu/year X 5 years))** **to establish a unit** incremental **value ($/M4Btu), which** is **then added to the proceeds paid** for the 500,000 MMBtu/year **of bought-out volumes which** $P_2$ **takes over 5** years, **and is royalty bearing as production occurs.**

# Enclosure 3

~.0

Please refer to the following matrix when paying additional royalties related to contract settlement payments. Note that Transaction Code (TC) 31 1$ to be used. Instructions for using this TC are not Included in your Payor Handbook. For this TC, you must complete the following fields for each line:

- Accounting Identification Number
- Product Code
- Selling Arrangement
- Sales Month
- Transaction Code
- Sales Quantity
- Sales Value
- Royalty Quantity
- Royalty Value
- Payment Method Code

If under the Interpretations contained in this letter you determine that certain payments you received now have a royalty liability because those payments are allocable to ongoing production, you should report and pay for the production from the date of the settlement to the current month In accordance with the instruction under Category 2a. You should continue to report future production as outlined In Category 2b or you may elect to make a lump sum payment. In this Instance, you should follow the guidelines outlined in Category 3.

Q

Future volume adjustments for settlement payments made using the guidelines in the matrix may require the correction of one or both lines depending on the situation. Please follow the reporting requirements outlined In the Payor Handbook or contact your Royalty Reports and Payments Branch Representative.

If you have any questions concerning reporting on the Report of Sales and Royalty Remittance Form MMS-2014, please contact Barbara Lambert on 303-231-3289.

O

ROYALTY REPORTING MATRIX

| CATEGORY | INSTRUCTIONS | SALKS MOUTH | VALUK | vounat | TC |
|---|---|---|---|---|---|
| 1.Paet Pricing Disputes | On the Form MMS-2014, report a separate line for each current Accounting Identification Number (AID) to which the production relates. If they do not exist, then use your most recent AID(s). | Month payment received. | Settlement payment amount. | Total volume related to payment. | 31 |
| Take-or-Pay, Buyout* and Buydowns | | | | | IT |
| 2a. Production occurred from the date of the settlement to present and the monies are attributed to each month since settlesMnt. | On the Form MMS-2014, report a separate line for each current Accounting Identification Number (AID) to which the production relates. If they do not exist, then use your moat recent AID(s). | Actual production month. | Incremental value multiplied by the monthly production. | Actual monthly volume. | |
| 2b. Production will occur in the future.  Requires 2 lines to be reported on the Form MK3-2014. | Report per instructions in Payor Handbooks. | Actual production month. | Sales price under the asmnded or successor contract. | Actual monthly volume. | 01 |
| | On the Form MMS-2014, report a separate line using the same AID/Product Code/Selling Arrangement as the related TC 01 line. | Actual production month. | Incremental value multiplied by the monthly production. | Actual monthly voluse. | 31 |
| 3.Lump-Sum Payments for Buyouts/Buydowns or Take-or-Pay for future periods. | On the Form MMS-2014, report a separate line for each current Accounting Identification Number (AID) to which the production relatea. If they do not exist, then use your most recent AID(s). | Current sales month being reported. | Settlement payment amount. | Report a volume of 1. | 31 |

Enclosure 2

# Grace Petroleum Corporation
## Royalty Due on Past Pricing
### CCN 2-61205.004

| Unit | Lease | Federal % | Allocation | Royalty Due |
|------|-------|-----------|-----------|-------------|
| Battle Butte/Cody | 048-324993-0 | 93.000000% | $55,029.79 | $6,397.21 |
| Battle Butte/Cody | 049-002592-0 | 93.000000% | $3,979.28 | $462.59 |
| Madden Lance | 048-321964-0 | 55.690000% | $45,137.72 | $3,142.15 |
| Madden Lance | 049-002590-0 | 55.690000% | $77,436.93 | $5,390.58 |
| Madden Lower Ft Union | 049-002590-0 | 63.000000% | $500.82 | $39.44 |
| Madden Lower Ft Union | 048-321964-0 | 63.000000% | $1,269.29 | $99.96 |
| Madden Lower Ft Union | 049-042309-0 | 63.000000% | $278.20 | $21.91 |
| Lower Ft Union | 049-043396-0 | 63.000000% | $1,375.56 | $108.33 |
| V_Jedar Gap/Lower Ft Union | 049-320052-0 | 82.000000% | $27,526.84 | $2,821.50 |
| Cedar Gap/Lower Ft Union | 049-079613-0 | 100.000000% | $8,245.18 | $1,030.65 |
| Long Butte/Cody | 049-024061-0 | 33.187000% | $471.87 | $19.57 |
| Long Butte/Cody | 049-013306-A | 33.187000% | $2,089.41 | $86.68 |
| Madden/Cody | 049-078561-0 | 47.286000% | $8,738.53 | $516.51 |
| Madden/Cody | 049-078561-0 | 58.947000% | $1,671.34 | $123.15 |
| Madden/Cody | 049-043395-0 | 58.262000% | $137,793.91 | $10,035.19 |
| Madden/Mesaverde | 049-078561-0 | 25.771000% | $81,376.42 | $2,621.44 |
| Leland 1-25 | 049-002592-0 | 0.000000% | $789.76 | $0.00 |
| Lookout 1-27 | 049-003681-0 | 100.000000% | $103.61 | $12.95 |
| Quincy 1-34 | 048-324996-0 | 100.000000% | $16,596.99 | $2,074.62 |
| Dolis ,1-35 | 049-002592-0 | 100.000000% | $2,998.50 | $374.81 |
| Lybyer 1-8 | 049-005151-0 | 100.000000% | $152.91 | $19.11 |
| Lysite 1-12 | 049-013305-0 | 13.245000% | $331,152.53 | $5,482.64 |
| Cevin 1-6 | 049-079613-0 | 100.000000% | $1,019.00 | $127.38 |
| Line 1-7 | 049-079613-0 | 100.000000% | $30.57 | $3.82 |
| Lybyer 2-8 | 049-005151-0 | 100.000000% | $4,218.82 | $527.35 |
| | Totals | | | $41,539.55 |

Total Royalty Due

We calculated royalty at a rate of .125

Enclosure 3

# Grace Petroleum Corporation
## Colorado Interstate Gas Company Settlement
## CCN 2-61205.004

Royalty Due on Take-or-Pay

**Battle Butte / Cody**

| | | | | Old Minimum Takes 6,288 | | | |
|---|---|---|---|---|---|---|---|
| Quincy 2-34 | 048-324993-0 | | | | | | |
| Dolis 2-35 | 049-002592-0 | | | Make Up | Incremental | Additional | Royalty |
| | | | Sales | Gas | Price | Value | Due |
| 891-008874-G | | 1989 | 1,937 | 0 | | | |
| | | 1990 | 1,435 | 0 | | | |
| | | 1991 | 18,448 | 12,160 | | | |
| | | 1992 | 84,411 | 78,123 | | | |
| | | 1993 | 50,515 | 43,583 | | | |
| | | 1994 | 15,018 | 0 | | | |
| | | | 133,866 | | $0.499575 | $66,876.11 | $8,359.51 |

**Madden Lance**

| | | | | Old Minimum Takes 37,958 | | | |
|---|---|---|---|---|---|---|---|
| Austin 1-33 | 049-078561-0 | | | | | | |
| | 049-078560-0 | | | | | | |
| | 049-003663-0 | | | | | | |
| | 049-042309-0 | | | | | | |
| Fed'l Energy 1-35 | 049-321964-0 | | | Make Up | Incremental | Additional | Royalty |
| | 049-002590-0 | | Sales | Gas | Price | Value | Due |
| | 049-043395-0 | 1989 | 12,739 | 0 | | | |
| Spratt 1-4 | 049-002590-0 | 1990 | 17,223 | 0 | | | |
| Thomas 1-34 | 049-078561-0 | 1991 | 24,224 | 0 | | | |
| | 049-078560-0 | 1992 | 46,737 | 8,779 | | | |
| 891-008874-B | | 1993 | 41,578 | 3,620 | | | |
| | | 1994 | 13,433 | 0 | | | |
| | | | 12,399 | | $0.499500 | $6,193.30 | $774.16 |

**Long 8utte / Cody**

| | | | | Old Minimum Takes 12,441 | | | |
|---|---|---|---|---|---|---|---|
| LBU #2 | | | | | | | |
| LBU #3 | | | | | | | |
| LBU #4 | 049-024061-0 | | | Make Up | Incremental | Additional | Royalty |
| LBU #5 | | | Sales | Gas | Price | Value | Due |
| LBU #6-2 | 049-000682-0 | 1989 | 5,699 | 0 | | | |
| LBU #7 | 049-045397-0 | 1990 | 26,573 | 14,132 | | | |
| LBU #25-1 | 049-007166-0 | 1991 | 28,777 | 16,336 | | | |
| LBU #30-1x | 049-013306-0 | 1992 | 29,394 | 16,953 | | | |
| LBU #31-2 | 049-005422-A | 1993 | 22,009 | 9,568 | | | |
| Flatt 1-28 | 049-013306-A | 1994 | 6,781 | 0 | | | |
| 891-015514-0 | | | | 56,989 | $0.49950 | $28,466.01 | $3,558.25 |

Total Royalty Due on Take-or-Pay

$12,691.92

Enclosure 4

O        # Grace Petroleum Corporation
## Colorado Interstate Gas Company Settlement (2/28/89)
## CCN 2-61205.004

### Take-or-Pay Royalty Due by Lease

| Unit | Lease | Percentage of Federal Part | Make-Up Gas | Royalty Due |
|---|---|---|---|---|
| Battle Butte/Cody | 049-324993-0 | 14.847400% | 19,876 | $1,241.17 |
| 891-008874-G | 049-002592-0 | 85.152600% | 113,990 | $7,118.34 |
| | | 100.000000% | 133,866 | $8,359.51 |
| | | | | |
| Madden/Lance | 049-078561-0 | 44.179100% | 5,748 | $342.02 |
| 891-008874-B | 049-078560-0 | 13.445800% | 1,667 | $104.09 |
| | 049-042309-0 | 11.576900% | 1,435 | $89.62 |
| | 049-321964-0 | 26.891800% | 3,334 | $208.19 |
| | 049-002590-0 | 19.856000% | 246 | $15.37 |
| | 049-043395-0 | 19.208000% | 238 | $14.87 |
| | | 135.157600% | 12,668 | $774.16 |
| | | | | |
| Long Butte/Cody | 049-024061-0 | 12.461300% | 7,102 | $443.40 |
| 891-015514-0 | 049-000682-0 | 15.445200% | 8,802 | $549.58 |
| | 049-045397-0 | 7.657800% | 4,364 | $272.48 |
| | 049-007166-0 | 2.870000% | 1,636 | $102.12 |
| | 049-013306-0 | 21.046000% | 11,994 | $748.87 |
| | 049-005422-A | 14.690300% | 8,372 | $522.72 |
| | 049-013306-A | 25.829400% | 14,720 | $919.07 |
| | | 100.000000% | 56,989 | $3,558.25 |

Total Royalty Due for Take-or-Pay                                            $12,691.82

Enclosure 5

## Grace PetroleunvAorporation
### Colorado Interstate Gas ⎿pany Settlement
### CCN 2-61205.004

Buydown & Buyout Allocation and Incremental price

| a | b (c) | Deliverability Mcf/day (d) | Deliverability Mcf/year c X 365 (e) | Gross Working Interest (f) | Federal Portion OIGWI (g) | Yearly Federal Volumes f X d X e (h) | Old Min Takes g X 80% (i) | Total Volumes Sought Down d X e X 41.67% X (5*2/12) (j) | Bought Out d X e X 38.33% X (5 + 2/12) (k) | Old Price (l) | New Price (m) | Buydown Fev (k·l)M (n) | Buyout Fev (k·l)·j (o) | Buydown Allocation ototal X total (p) | Buyout Allocation oAotel c X total (q) | Buydown Incremental Price sA (r) | Buyout Incremental Price pl4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Battle Butte / Cody** | | | | | | | | | | | | | | | | | |
| Quincy 2-34 | 150 | 54,750 | 5.93710000% | 93.00000% | 3,023 | 2,410 | 8,998.00 | 6,437.00 | $3.33 | $1.581 | $12,239.60 | $11,250.31 | $1,173.45 | $1,003.10 | $0.167604 | $0.168274 |
| Dolo 2*35 | 240 | 87,600 | 6.93710000% | 93.00000% | 4,837 | 3,870 | 11,197.00 | 16,300.00 | $3.33 | $1.581 | $19,583.55 | $10,014.70 | $1,877.51 | $1,733.08 | $0.167600 | $0.168261 |
| | 390 | 142,350 | | | 7,860 | 6,288 | 18,195 | 16,737 | | | $31,823.05 | $29,273.01 | $3,050.96 | $2,816.27 | $0.167681 | $0.168206 |
| **Long Butte / Cody** | | | | | | | | | | | | | | | | | |
| IBU *2 | 840 | 306,600 | 0.98838000% | 33.18700% | 1,005 | 805 | 6,524.00 | 6,001.00 | $3.33 | $1.581 | $11,410.48 | $10,495.75 | $6,571.29 | $6,065.81 | $1.007249 | $1.010800 |
| LBU *3 | 2,280 | 032,200 | 0.98838000% | 33.18700% | 2,730 | 2,184 | 17,709.00 | 16,289.00 | $3.33 | $1.581 | $30,973.04 | $28,489.46 | $17,836.37 | $16,464.34 | $1.007192 | $1.010764 |
| LBU *4 | 3,490 | 1,273,850 | 0.98838000% | 33.18700% | 4,178 | 3,342 | 27,107.00 | 24,934.00 | $3.33 | $1.581 | $47,410.14 | $43,609.57 | $27,362.16 | $25,201.99 | $1.007200 | $1.010746 |
| LBU *5 | 460 | 175,200 | 0.98838000% | 33.18700% | 575 | 460 | 3,728.00 | 3,429.00 | $3.33 | $1.581 | $6,520.27 | $5,997.32 | $3,750.02 | $3,466.18 | $1.007248 | $1.010943 |
| LBU #6-2 | 280 | 102,200 | 0.98838000% | 33.18700% | 335 | 268 | 2,175.00 | 2,000.00 | $3.33 | $1.581 | $3,004.06 | $3,490.00 | $2,190.43 | $2,021.84 | $1.007004 | $1.010970 |
| *7 | 2,900 | 1,058,500 | 0.98838000% | 33.18700% | 3,472 | 2,778 | 22,524.00 | 20,718.00 | $3.33 | $1.581 | $39,394.48 | $36,237.53 | $22,686.61 | $20,941.46 | $1.007219 | $1.010738 |
| LBU *25-1 | 0 | 0 | | | | | | | | | | | | | | |
| LBU *30-1x | 270 | 58,550 | 0.98838000% | 33.18700% | 323 | 258 | 2,097.00 | 1,929.00 | $3.33 | $1.581 | $3,667.65 | $3,373.82 | $2,112.20 | $1,949.72 | $1.007240 | $1.010741 |
| LBU *31-2 | 2,200 | 803,000 | 0.98838000% | 33.18700% | 2,634 | 2,107 | 17,087.00 | 15,718.00 | $3.33 | $1.581 | $29,005.50 | $27,490.70 | $17,210.53 | $15,886.64 | $1.007229 | $1.010729 |
| Flatt 1-28 | 250 | 91,250 | 0.98838000% | 33.18700% | 299 | 239 | 1,942.00 | 1,786.00 | $3.33 | $1.501 | $3,396.56 | $3,123.71 | $1,955.74 | $1,805.30 | $1.007075 | $1.010006 |
| | 12,990 | 4,741,350 | | | 15,552 | 12,441 | 100,893 | 92,805 | | | $176,461.86 | $162,315.94 | $101,820.35 | $93,003.40 | $1.007209 | $1.010750 |
| **Long Butte/ Mesaverde** | | | | | | | | | | | | | | | | | |
| LBU *1 | 6,850 | 2,500,250 | 0.98465000% | 41.31700% | 10,172 | 8,138 | 53,003.00 | 40,754.00 | $3.33 | $1.581 | $92,702.25 | $65,270.75 | $53,587.33 | $49,465.23 | $1.011024 | $1.014550 |
| LBU *10 | 2,150 | 784,750 | 0.98465000% | 41.31700% | 3,103 | 2,554 | 16,638.00 | 16,300.00 15,300.00 | $3.33 | $1.581 | $29,096.38 | $26,764.95 | $16,019.36 | $15,525.59 | $1.011023 | $1.014545 |
| LBU *31-3 | 2,000 | 730,000 | 0.98465000% | 41.31700% | 2,970 | 2,376 | 15,475.00 | 14,235.00 | $3.33 | $1.581 | $27,065.78 | $24,807.02 | $15,045.04 | $14,442.40 | $1.011046 | $1.014570 |
| | 11,000 | 4,015,000 | | | 16,335 | 13,000 | 85,114 | 78,292 | | | $148,864.39 | $136,932.72 | $96,052.65 | $79,433.21 | $1.011028 | $1.014570 |
| **Madden / Cody** | | | | | | | | | | | | | | | | | |
| Deep *1 | 0 | 730,000 | 4.70602400% | 61.21300% | 21,431 | 17,145 | 75,377.00 | 69,335.00 | $3.33 | $1.581 | $131,834.37 | $121,256.92 | $15,645.94 | $14,442.40 | $0.207569 | $0200299 |
| Burt 1-7 | 2,000 | 1,095,000 | 5.07251600% | 58.26200% | 32,361 | 25,889 | 119,504.00 | 109,099.00 | $3.33 | $1.581 | $209,152.42 | $192,386.25 | $23,468.90 | $21,683.60 | $0.198255 | $0.196944 |
| Chevron 2-1 | 3,000 | 5,475,000 | 5.07251600% | 58.26200% | 161,805 | 129,444 | 597,918.00 | 549,993.00 | $3.33 | $1.581 | $1,045,755.58 | $961,937.78 | $117,344.02 | $108,310.02 | $0.198255 | $0.196964 |
| Hendry 2-8 | 15,000 | 5,475,000 | 5.07251600% | 58.26200% | 18,014 | 14,411 | 82,021.00 | 75,446.00 | $3.33 | $1.581 | $143,454.73 | $131,955.05 | $13,064.36 | $12,059.41 | $0.159281 | $0.158842 |
| Jovca 1-2 | 1,670 | 609,550 | 6.25000000% | 47.28600% | 3,775 | 3,020 | 17,190.00 | 15,812.00 | $3.33 | $1.581 | $30,065.31 | $27,655.19 | $2,738.04 | $2,527.42 | $0.159281 | $0.150042 |
| Lester 1-32 | 350 | 127,750 | 6.25000000% | 47.28600% | | | | | | | | | | | | |
| Margaret 1-6 | 0 | 0 | | | | | | | | | | | | | | |
| Megg 1-5 | 12,500 | 4,562,500 | 522217100% | 58.59300% | 134,839 | 107,871 | 512,965.00 | 471,849.00 | $3.33 | $1.581 | $897,175.79 | $825,263.80 | $97,787.10 | $90,265.02 | $0.190631 | $0.191301 |
| Okie 1-9 | 2,870 | 1,047,550 | 5.07251600% | 58.26200% | 30,959 | 24,767 | 114,402.00 | 105,332.00 | $3.33 | $1.581 | $200,009.10 | $104,050.77 | $22,451.92 | $20,724.85 | $0.198255 | $0.196944 |
| Spratt 2*4 | 15,000 | 5,475,000 | 5.07251600% | 58.26200% | 161,805 | 129,444 | 597,918.00 | 549,993.00 | $3.33 | $1.581 | $1,045,755.58 | $961,937.76 | $117,344.62 | $100,310.02 | $0.198255 | $0.196944 |
| | 52,390 | 19,122,350 | Avfl 5.14307000% | 57.44840% | 564,989 | 451,991 | 2,117,375 | 1,947,859 | | | $3,703,200.08 | $3,406,455.60 | $409,845.30 | $370,318.74 | $0.193563 | $0.194243 |

**Madden Lane***

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Austin II | 0 | | | | | | | | | | | | | | | |
| Fed'l Energy 1-35 | 600 | 251,850 | 5.67091000% | 55.69000% | 7,013 | 6,250 | 30,207.00 | 2/78500 | $3.33 | $1,581 | $52,832.04 | $48,59597 | $5,397.85 | $4,982.63 | $0.178695 | $0.170328 |
| Sprall 1-4 | 3,500 | 1,277,500 | 5.57091000% | 55.69000% | 38,634 | 31,707 | 153,222.00 | 140,041.00 | $3.33 | $1,581 | $267,985.28 | $268,505.61 | $27,38039 | $25,274.20 | $0.176690 | $0.179325 |
| Thomas 1-34 | 0 | 0 | | | | | | | | | | | | | | |
| | 4,190 | 1,529,350 | | 55.69000% | 47,447 | 37,957 | 183,429.00 | 168,726.00 | | | $320,817.32 | $295,101.78 | $32,778.24 | $30,256.83 | $0.178097 | $0.179325 |

**Madden Mesaverde**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chevron 1-1 | 4,450 | 1,624,250 | 4.80471000% | 25.77100% | 20,112 | 16,090 | 168,017.00 | 154,550.00 | $3.33 | $1,581 | $293,861.73 | $270,307.95 | $34,812.21 | $32,134.35 | $0.207921 | $0.207922 |
| | 4,450 | 1,624,250 | | | 20,112 | 16,090 | 168,017.00 | 154,550 | | | $293,861.73 | $270,307.95 | $34,81221 | $32,134.35 | $0.207195 | $0.207922 |

**Madden Lower Ft Union**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MOU# 1 | 5,100 | 1,861,500 | 6.39296000% | 63.00000% | 74,973 | 59,970 | 256,212.00 | 235,67500 | $3.33 | $1,581 | $448,114.79 | $412,195.58 | $39,897.14 | $36,820.13 | $0.155719 | $0.156267 |
| MDU# 2 | 5,000 | 1,825,000 | 6.39296000% | 63.00000% | 73,503 | 58,002 | 251,108.00 | 231,054.00 | $3.33 | $1,581 | $439,327.81 | $404,113.45 | $39,114.84 | $36,106.01 | $0.155719 | $0.156267 |
| MDU# 3 | 1,350 | 492,750 | 6.39296000% | 63.00000% | 19,846 | 15,877 | 67,821.00 | 62,385.00 | $3.33 | $1,581 | $118,618.93 | $109,111.37 | $10,561.01 | $9,748.62 | $0.155719 | $0.156265 |
| MOU# 4 | 5,650 | 2,062,250 | 6.39296000% | 63.00000% | 83,058 | 66,446 | 283,842.00 | 261,091.00 | $3.33 | $1,581 | $496,439.66 | $456,648.16 | $44,199.77 | $40,789.79 | $0.155720 | $0.156287 |
| MOU#6 | 1,100 | 401,500 | 6.39296000% | 63.00000% | 16,171 | 12,937 | 55,261.00 | 50,832.00 | $3.33 | $1,581 | $96,651.49 | $88,905.17 | $8,605.26 | $7,943.32 | $0.155720 | $0.156256 |
| MOU# 8 | 300 | 109,500 | 6.39296000% | 63.00000% | 4,410 | 3,628 | 15,071.00 | 13,863.00 | $3.33 | $1,581 | $26,359.18 | $24,246.99 | $2,346.80 | $2,166.36 | $0.155722 | $0.156269 |
| MOU#9 | 800 | 292,000 | 6.39296000% | 63.00000% | 11,760 | 9,408 | 40,190.00 | 36,969.00 | $3.33 | $1,581 | $70,292.31 | $64,658.76 | $6,258.37 | $5,776.56 | $0.155720 | $0.158265 |
| MOU#10 | 350 | 127,750 | 6.39296000% | 63.00000% | 5,145 | 4,116 | 17,583.00 | 16,174.00 | $3.33 | $1,581 | $39,752.67 | $28,288.33 | $2,738.04 | $2,527.42 | $0.155721 | $0.156264 |
| MDU# 11 | 0 | | | | | | | | | | | | | | | |
| | 19,650 | 7,172,250 | | | 288,866 | 231,092 | 987,108 | 908,043 | | | $1,726,656.64 | $1,588,167.23 | $153,721.32 | $141,899.61 | $0.155266 | $0.150266 |

**Cedar Gap / Lower Ft Union**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cedar Gap 1*10 | 100 | 36,500 | 6.25000000% | 82.00000% | 1,871 | 1,497 | 4,911.00 | 4,518.00 | $3.33 | $1,581 | $8,589.34 | $7,901.98 | $762.30 | $722.12 | $0.159295 | $0.159632 |
| Line 1*7 | 50 | 18,250 | 6.25000000% | 100.00000% | 1,141 | 913 | 2,456.00 | 2,259.00 | $3.33 | $1,581 | $4,295.54 | $3,950.99 | $991.15 | $301.06 | $0.159263 | $0.159632 |
| | 150 | 54,750 | | | 3,012 | 2,410 | 7,367.00 | 6,777.00 | | | $12,884.88 | $11,852.97 | $1,173.45 | $1,083.16 | $0.159285 | $0.159832 |

**Lease Basis Wells**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Leland 1*25 | 6 | 1,825 | 6.25000000% | 0.00000% | 0 | 0 | 246.00 | 226.00 | $3.33 | $1,581 | $430.25 | $395.27 | $39.11 | $36.11 | $0.158904 | $0.159779 |
| Lookout 1*27 | | | | | | | | | | | | | | | | |
| Median 1-21 | | | | | | | | | | | | | | | | |
| Pfeiffer 1*10 | 700 | 255,500 | 6.59050000% | 100.00000% | 14,299 | 11,439 | 30,785.00 | 28,318.00 | $3.33 | $1,581 | $53,842.97 | $49,528.16 | $5,476.06 | $5,054.84 | $0.177881 | $0.178503 |
| Quincy 1-34 | 750 | 273,750 | 4.68750000% | 100.00000% | 12,832 | 10,266 | 27,627.00 | 25,412.00 | $3.33 | $1,581 | $48,319.62 | $44,445.59 | $5,867.23 | $5,415.00 | $0.212373 | $0.213124 |
| Shelter 1-19 | | | | | | | | | | | | | | | | |
| Vidlor 1*14 | 30 | 10,950 | 5.07010000% | 100.00000% | 654 | 523 | 1,409.00 | 1,296.00 | $3.33 | $1,581 | $2,484.34 | $2,266.70 | $234.69 | $21664 | $0.166565 | $0.167160 |
| Oolis 1-35 | | | | | | | | | | | | | | | | |
| Lybyer 1-6 | | | | | | | | | | | | | | | | |
| Lysite 1-12 | 240 | 87,600 | 3.36550000% | 13.24500% | 390 | 312 | 6,347.00 | 5,839.00 | $3.33 | $1,581 | $11,100.90 | $10,212.41 | $1,877.51 | $1,733.09 | $0.295811 | $0296813 |
| Cevin 1-6 | 16 | 5,475 | 6.25000000% | 100.00000% | 342 | 274 | 73/00 | 678.00 | $3.33 | $1,581 | $1,289.01 | $1,185.62 | $117.34 | $106.32 | $0.159213 | $0.159764 |
| Cross 1-9 | | | | | | | | | | | | | | | | |
| Line 1*7 | 50 | 18,250 | 6.25000000% | 100.00000% | 1,141 | 013 | 2,456.00 | 2,259.00 | $3.33 | $1,581 | $4,295.54 | $3,950.99 | $391.15 | $301.06 | $0.159263 | $0.159632 |
| Lybyer 2-8 | | | | | | | | | | | | | | | | |
| Spear 1-5 | | | | | | | | | | | | | | | | |
| | 1,790 | 653,350 | | | 29,658 | 23,727 | 69,607 | 64,028 | | | $121,742.63 | $111,664.96 | $14,003.11 | $12,925.96 | | |
| | 107,000 | 39,055,000 | | | 3,737,165 | 3,437,617 | | | | | $5,536,301.68 | $5,012,392.16 | $837,057.68 | $772,668.54 | 52% | 48% |

$12,548,693.74

$1,600/26.12

## Grace Petroleum Corporation
Cdondo Intaratsta CM *Comply*
CCH 2-C1206.004

Reyefly Doe on fciytow

tuydoemuotm* «>«kjni*epnn»duoe4t*teNew h*il*G*e 041.87%

| | | | | SdH | | Omen Vokme* | N*wVIrirmniT alma 3475 (7880 X .4187) Incremental Pike | A*Hona< Value | Royaly Due |
|---|---|---|---|---|---|---|---|---|---|
| Setle Me /Cody | Quincy 2*34 Oots 2-36 | 044-3249*3-0 04*0025*20 | | | | | | | |
| 1*1-00«74-<1 | | | 194* | SdH | 14J7 | 1.837 | | | |
| | | | 19*0 | | 1.436 | 1.435 | | | |
| | | | 1M1 | | 18,44* | 3475 | | | |
| | | | 19*2 | | *4,411 | 3475 | | | |
| | | | 1*93 | | 50415 | 3475 | | | |
| | | | 1*04 | | 15,018 | 3475 | | | |
| | | | | | | 18.472 | $0.187811 | $2,762.04 | $34544 |

| | | | | Safe* | | Sou?* Down VdiLMt | NnMll Take* 1*.771 (47,447 X.4187) Increment* Price | Ad*Jonai Value | Rayaty Due |
|---|---|---|---|---|---|---|---|---|---|
| UmMmU+om | Auatfn 1-33 | 044-071441-0 044-074440-0 04*003483-0 | | | | | | | |
| | Tedl Energy 1-35 | 04*321984-0 04*0025*00 04*0433*6-0 | 194* | Safe* | 1273* | 12.73* | | | |
| | 3prex 1-4 | 04*0025*00 * 04*042300-0 | 19*0 | | 17.223 | 17423 | | | |
| | Thome* 1*34 | 04*071541-0 04*0745400 | 19*1 1992 19*3 19*4 | | 24.224 44.737 41478 13,433 | It,771 10.771 18.771 12,176 | | | |
| *- 1-004474-8 | | | | | | 102.151 | $0.17*4*7 | $18464.0* | $24*1-7$ |

| | | | | Sale* | | 5*V< Down Vekarw* | Mew Wn Take* 120,370 (244,884 X .4187) Incremental Pike | Abdtional Value | Rcyaiy Due |
|---|---|---|---|---|---|---|---|---|---|
| Meifckn Lower R Union | MDU41 kCXJ9 2 MOU93 MOU94 MOU98 MOU96 MOU● 9 UCU410 MOU* 11 | 0490025*00 04*321944-0 049-04230*0 049-0433*4-0 049-0715410 049-0433*6-0 04*0433*40 | 191* 1*90 1991 1992 1993 1994 | Sale* | 185,116 20*445 144.9*7 203,577 222417 111.187 | 120.370 120.370 120.370 120.370 120470 20.083 | | | |
| *- 1-004474-A | | | | | | 821.913 | $0.155720 | $94.84449 | $12,105.54 |

## O

| | | | | SeJrt | | BougN Down Vokrfte* | New Mn Take* 780 (1.871 X.4187) Incremental Price | AddJonaJ Value | Rcya*y DU* |
|---|---|---|---|---|---|---|---|---|---|
| Cedar Gap / Lower R Union | Cedar Gap 1-10 | 04*3200620 04*0025420 | | | | | | | |
| 4*1-004474-6 | | | 1949 | SeJrt | 433 | 780 | | | |
| | | | 1990 | | 1.078 | 780 | | | |
| | | | 1901 | | 1,003 | 780 | | | |
| | | | 1992 | | 7*3 | 780 | | | |
| | | | 1993 | | 868 | 780 | | | |
| | | | 1994 | | 305 | 127 | | | |
| | | | | | | 4,027 | $0.15*295 | $841.44 | $40.19 |

| | | | | S*n | | Soufrt Down VohJTMt* | New Wb Take* 475 (1.141 X.4187) Incremental Price | Abdtional Value | Royaly Oue |
|---|---|---|---|---|---|---|---|---|---|
| | Une 1.7 | 04*0794130 | | | | | | | |
| W1-004474-F | | | 191* | S*n | 784 | 475 | | | |
| | | | 1*90 | | 719 | 475 | | | |
| | | | 1991 | | 878 | 475 | | | |
| | | | 1992 | | 547 | 475 | | | |
| | | | 1993 | | 801 | 475 | | | |
| | | | 1994 | | 251 | 80 | | | |
| | | | | | | 2,455 | $0.15*245 | $391.04 | $41.44 |

| | | | | Sale* | | Bougl* Down Vokjrw* | New Mremun Take* 6.461 (15552 X .4187 /ddtienai Vakie | Incremental Price | Royaly Due |
|---|---|---|---|---|---|---|---|---|---|
| Long Bute f Cody | LBU *2 LBU *3 LBU 94 L9U 95 LOU 96-2 LOU #7 LOU *25-1 LOU 930-tx LOU 931-2 Rett 1-24 | 049-024041-0 049-000642-0 049-045397-0 04900718A-0 0490133060 049006422-A 049013306-A | 1989 1990 1991 1992 1993 1994 | Sale* | 5.899 28.573 28.777 29,394 22,009 8,781 | 5,899 6.411 6.461 6,461 4.461 4.461 | | | |
| 4*1-01S514-0 | | | | | | 34,104 | 41.00720* | $36,378.69 | $4,797.34 |



Enclosure 7

# Grace Petroleum Corporation
## Colorado Interstate Gas Company Settlement (2/28/89)
## CCN 2-61205.004

### Buydown Royalty Due by Lease

| Unit | Lease | Percentage of Federal Part | Bought-Down Gas | Royalty Due |
|------|-------|---------------------------:|----------------:|------------:|
| Battle Butte/Cody | 049-324993-0 | 14.847400% | 2,446 | $51.26 |
| 891-008874-G | 049-002592-0 | 85.152600% | 14,026 | $294.00 |
| | | 100.000000% | 16,472 | $345.26 |
| | | | | |
| Madden/Lance | 049-078561-0 | 44.179100% | 45,130 | $1,008.05 |
| 891-008874-B | 049-078560-0 | 13.445800% | 13,735 | $306.80 |
| | 049-042309-0 | 11.576900% | 11,826 | $264.16 |
| | 049-321964-0 | 26.891800% | 27,470 | $613.61 |
| | 049-002590-0 | 1.985600% | 2,028 | $45.31 |
| | 049-043395-0 | 1.920800% | 1,962 | $43.83 |
| | | 100.000000% | 102,151 | $2,281.76 |
| | | | | |
| Madden Lower Ft. Uni | 049-002590-0 | 25.433700% | 158,176 | $3,078.88 |
| 891-008874-A | 049-321964-0 | 13.120900% | 81,601 | $1,588.36 |
| | 049-042309-0 | 18.106900% | 112,609 | $2,191.94 |
| | 049-043396-0 | 19.866200% | 123,550 | $2,404.91 |
| | 049-078561-0 | 21.321500% | 132,601 | $2,581.08 |
| | 049-043395-0 | 2.150800% | 13,376 | $260.37 |
| | | 100.000000% | 621,913 | $12,105.54 |

| | | | | |
|---|---|---|---|---|
| Cedar Gap/Lower Ft. Union | | | | |
| ~ÿ1-008874-E | 049-320052-0 | 100.000000% | 2,301 | $80.19 |
| | 049-002582-0 | | | |
| 891-008874-F | 049-079613-0 | 100.000000% | 1,726 | $48.88 |
| Long Butte/Cody | 049-024061-0 | 12.461300% | 4,748 | $597.81 |
| 891-015514-0 | 049-000682-0 | 15.445200% | 5,885 | $740.96 |
| | 049-045397-0 | 7.657800% | 2,918 | $367.37 |
| | 049-007166-0 | 2.870000% | 1,094 | $137.68 |
| | 049-013306-0 | 21.046000% | 8,019 | $1,009.65 |
| | 049-005422-A | 14.690300% | 5,598 | $704.74 |
| | 049-013306-A | 25.829400% | 9,842 | $1,239.12 |
| | | 100.000000% | 38,104 | $4,797.34 |
| Long Butte/Mesaverd | 049-018815-0 | 0.481159 | 12,546 | $1,585.57 |
| 891-015514-A | 049-005422-A | 0.518841 | 13,529 | $1,709.75 |
| | | 100.000000% | 26,075 | $3,295.32 |
| Madden/Cody | 049-002590-0 | 0.14266875 | 168,887 | $4,086.29 |
| 891-008874-C | 049-078561-0 | 0.28519788 | 337,609 | $8,168.57 |
| | 049-042309-0 | 0.24880878 | 294,533 | $7,126.33 |
| | 049-013290-0 | 0.14602763 | 172,863 | $4,182.49 |
| | 049-043395-0 | 0.17729696 | 209,879 | $5,078.10 |
| | | 100.000000% | 1,183,771 | $28,641.78 |
| Madden Mesaverde | 049-078561-0 | 100.000000% | 10,868 | $282.46 |
| 891-008874-D | | | | |
| Lease Basis Wells | 049-096764-0 | 100.000000% | 585 | $13.01 |
| | 048-324993-0 | 100.000000% | 27,079 | $718.86 |
| Totals | | | | $52,610,40 |

leog BLIU /

LBU 91    04941*9154
LBU #10
LBU 93V3    049-008422-A

015414-A

| tel | | OM | | | | | |
|---|---|---|---|---|---|---|---|
| | | iougNOd Voteooo | | flew 13.099 | 9407 | OHteranc* Vate* | *4*1 Rerraty Du* |
| 1*99 | 1.943 | | | 0 | | | |
| 1990 | 5.743 | | | 0 | | | |
| 1991 | 9,950 | | | 43 | | | |
| 1992 | 4.990 | | | 0 | | | |
| 1993 | 5.90* | | | 0 | | | |
| 1*94 | 1,919 | | | 0 | | | |
| | | | | 43 | $1.0145790 | $43.94 | $5.49 |

htetean/ Cody

DM9·91
Butl 1*7
QMMWv-1    049-0643924
Han*y2-4    0490025904
JoywVI    0494799914
Lleterl-32    0494039*24
JbteB*r*l 1-9    0494795914
    049-0423094
    04*0132904

M*s1<3    040-0423094
Cate 1-9    049043396 O
Sprs2-4

991-O05474-C

| | | CM | | Nte 4514*1 | 235.431 | PMfcrenc* A9»9onte | 219.5*0 |
|---|---|---|---|---|---|---|---|
| Sate* | | teugNOU VoteM | | ter«Mnte Mo* | | V9» | Rvyaty Out |
| 1999 | 195.475 | | | 0 | | | |
| 1990 | 4294*3 | | | 1*1.452 | | | |
| 1991 | 360,930 | | | 115.4*9 | | | |
| 1992 | 217,174 | | | 0 | | | |
| 1993 | 325.5*7 | | | *0.13* | | | |
| 1994 | 107.749 | | | 0 | | | |
| | | | | 397.097 | $0.1942430 | $77,131.42 | $9,941.43 |

MMoUiovinK

Chavfon1-1    049-084392-0
    049-079561-0

*01-005474-0

| Site | | CMMn Tate* | WVtou VteteM | N*#Mn Tate* 19,090 | •491 | Oterwct | 7.709 |
|---|---|---|---|---|---|---|---|
| | | | | Incramtrte Prto* | | Vatea | Royty Du* |
| 1999 | 1,909 | | | 0 | | | |
| 1990 | 249* | | | 0 | | | |
| 1991 | 1.3*3 | | | 0 | | | |
| 1992 | 3.074 | | | 0 | | | |
| 1993 | 2.14* | | | 0 | | | |
| 1994 | 90 | | | 0 | | | |
| | | | | 0 | $0407922 | $0.00 | $0.00 |

LMN Hast* Wai*

Late* 1-29
Looted 1-27
M*4an 1-21
    1-10    049-0967*44

| Sate* | | CMMn Tate* | tejyOut Voted** | Haw Mo Tate* 11,439 | 5.954 | Differanc* AdMonal VaUa | 5,491 Roj**y Du* |
|---|---|---|---|---|---|---|---|
| 19*9 | 572 | | | 0 | | | |
| 1990 | 0 | | | 0 | | | |
| 1*91 | 13 | | | 0 | | | |
| 1992 | 0 | | | 0 | | | |
| 1993 | 0 | | | 0 | | | |
| 1994 | 0 | | | 0 | | | |
| | | | | 0 | $0.179503 | $0.00 | $0.00 |

Odncy 1-34    049-3249034

| Sate* | | CMMn Tate* | BouyiCU Vote*** | Nan Mn Tate* 10.26* | 5.347 | Differanea MdtJcoaJ Vaiua | 4.919 RoyUy Du* |
|---|---|---|---|---|---|---|---|
| 1M* | 4.9*4 | | | 0 | | | |
| 1990 | 9.09* | | | 2,751 | | | |
| 1091 | 7.429 | | | 2.0*1 | | | |
| 1992 | 5.922 | | | 275 | | | |
| 1993 | 4.596 | | | 0 | | | |
| 1994 | 1.499 | | | 0 | | | |
| | | | | 5,107 | $0.213124 | $1,094.42 | 5134.05 |

Shot* 1-19
Motor 1*14
OcH 1-35
Lytyar 1-9
LytiU 1-12    0494133064

| Stitt | | CMMn Tate* | 900*1Od Voter** | NawMn Tail** 312 | 1*3 | Differarea Acfcttonai VaJua | 149 Roytey Du* |
|---|---|---|---|---|---|---|---|
| 1999 | 0 | | | 0 | | | |
| 1990 | 0 | | | 0 | | | |
| 1991 | 0 | | | 0 | | | |
| 1992 | 0 | | | 0 | | | |
| 1993 | 0 | | | 0 | | | |
| 1994 | 0 | | | 0 | | | |
| | | | | 0 | $0.29*413 | $0.00 | $0.00 |

Cavln 14
Crete 1-9
Un* 1-7
I-j9yor 2-9
S*xar 1-S
LJ9yor 2-4

CH

833,928    1143,044 92    I22.S*0#

## Grace Petroleum Corporation
### Colorado Interstate Gas Company Sattlamant
#### CCN 2У1205.004

Reyefty Due on Buyout

Buyout volume ● ok Mn take vofcrm* kee New Mn take votrme

| | | | | | | New | | DHParence | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Badk Butte / Cody | | | | | *CM* | 6,266 | 3475 | 3.013 | | |
| | Okncy 3-34 | 048-3249*3-0 | | | Boufft Out | | I | Additonal | Reyaty | |
| | Oolt3>U | 04*0025*3-0 | | | Volume | Wee | | Value | Oue | |
| M1-006474-0 | | | Sake | 1969 | 1U7 | 0 | | | | |
| | | | | 1990 | 1,436 | 0 | | | | |
| | | | | 1991 | 19,446 | 3.013 | | | | |
| | | | | 1992 | 94,411 | 3,013 | | | | |
| | | | | 1993 | 50,315 | 3,013 | | | | |
| | | | | 1494 | 16.016 | 1,004 | | | | |
| | | | | | | 10.043 | 50.164266 | 51,669.90 | | 521144 |

| | | | | | | NewMn | | Difference | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Madden Lance | | 049-07656VO | | | CUUn | 37.956 | 19,771 | 16,167 | | |
| | | 04*0745*0-0 | | | TaBee | | | | | |
| | | 04*003*63-0 | | | | | | | | |
| | | 04*04230*0 | | | | | | | | |
| | Fexll Energy 1*03 | 04»-3219B4-0 | | | Beuýt Out | | Price | Value | Royalty | |
| | | 04*0025900 | Satei | 1969 | Vokime | 0 | | | Due | |
| | Sprett 1-4 | 04*043396-0 | | 1969 | 12,739 | 0 | | | | |
| | | 044-0023*00 | | 1990 | 17.223 | 4,463 | | | | |
| | Tho*ene 1-34 | 044-0423000 | | 1991 | 24.224 | 16,167 | | | | |
| | | 044-074541-0 | | 1992 | 46,737 | 16,167 | | | | |
| 491-006474-6 | | 044074540-0 | | 1993 | 41976 | 0 | | | | |
| | | | | 1994 | 13,433 | | | | | |
| | | | | | | 40,127 | J0.179323 | 57421JO | | 5915.16 |

| | | | | | | | | Difference | | |
|---|---|---|---|---|---|---|---|---|---|---|
| fckddew Lower ft union | MXl91 | 344-0023900 | | | CUUn | 231.092 | 120,370 | 110.722 | | |
| | MOU92 | | | | TaBee | | | | | |
| | MDU# 3 | 0460219640 | | | | | | | | |
| | WOU 3 4 | 0490423090 | | | | | | | | |
| | MDU#6 | 0490433960 | | | | | | | | |
| | MOU96 | | | | | | | | | |
| | MDU #4 | 0490765610 | | | Bought | | Incremental | AddWonel | Royalty | |
| | MOU# T0 | 0490433930 | | | Dorn | | Price | VaUe | Due | |
| | MOU9 11 | 0460433090 | SUn | | Votcjm* | | | | | |
| 491-006474-A | | | | 1969 | 163.119 | 74,394 | | | | |
| | | | | 1990 | 209443 | 96.323 | | | | |
| | | | | 1991 | 164,697 | 77,975 | | | | |
| | | | | 1992 | 203.577 | 92.655 | | | | |
| | | | | 1993 | 222417 | 110,722 | | | | |
| | | | | 1994 | 111,167 | 445 | | | | |
| | | | | | | 454,914 | 50.156266 | 571,08749 | | 56.415.95 |

| | | | | | | New Mn | | Difference | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cedar Gap / lower R Union | | 044-3200620 | | | OMVln | 1,497 | 740 | 717 | | |
| | Cedar On* 1-10 | 0440025430 | | | Talcee | | | | | |
| M1O0M74-E | | | | | | | | | | |
| | | | | | Boüýt Out | | Incremental | AckXfonal | Royalty | |
| | | | Sake | 1969 | Volume | 53 | Price | Value | Due | |
| | | | | 1969 | 633 | 296 | | | | |
| | | | | 1990 | 1.078 | 223 | | | | |
| | | | | 1991 | 1.003 | 13 | | | | |
| | | | | 1992 | 793 | 64 | | | | |
| | | | | 19*3 | 666 | | | | | |
| | | | | 1994 | 306 | | | | | |
| | | | | | | 675 | 50.159632 | ● 6107.69 | | 513.49 |

| | | | | | | New Mn | | Difference | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Ue 1-7 | 044-0744130 | | | OMMri | 913 | 475 | 434 | | |
| | | | | | Takee | | | | | |
| 491006474-F | | | | | Bought <Xt | | JncremertaJ | AddJtional | Royaly | |
| | | | Sake | | Vokmei | 269 | Price | Value | Due | |
| | | | | 1969 | 764 | 244 | | | | |
| | | | | 1990 | 719 | 203 | | | | |
| | | | | 1991 | 679 | 263 | | | | |
| | | | | 1992 | 756 | 72 | | | | |
| | | | | 19*3 | 547 | | | | | |
| | | | | 1994 | 256 | | | | | |
| | | | | | | 1.091 | 50.159432 | 5174.36 | | 521.40 |

| | | | | | | New | | Difference | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Long Butte / Cody | | | | | C* | 12.441 | 6.481 | 5.960 | | |
| | LOU 92 | | | | Bought Out | | Incremental | Additonal | Royaly | |
| | LBU <3 | | | | Volume | | Price | Value | Due | |
| | LOU 94 | 049-024081-0 | | 1969 | 5.699 | 0 | | | | |
| | LBU 96 | | **Sales** | 1969 | 5.699 | 5.960 | | | | |
| | LBU 96-2 | 049-000662-0 | | 1990 | 26.573 | 5.960 | | | | |
| | LBU 97 | 049-045397-0 | | 1991 | 26,777 | 5.960 | | | | |
| | LBU 925-1 | 049-007166-0 | | 1992 | 29,394 | 5.960 | | | | |
| | LBU 930-1* | 049-013306-0 | | 19*3 | 22.009 | 300 | | | | |
| | LBU 931-2 | 049-005422-A | | 1994 | 6.761 | | | | | |
| | F kt 1-26 | 049-013306-A | | | | | | | | |
| 4910156140 | | | | | | 24.140 | 31.0107560 | 324.400.16 | | 53.0S0.02 |

**E(4)**

£
*£Cv)*

# Samson

Jimsor, Plaza
-.-.0 West Secona Street
_-:sa. Oklahoma 74tC3-3' 03
?'8/583-1791
7j;eX 496 11813 SAuSOM PC T'JL

May 4, 1994

Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas, Texas  75240-6681

Attn:  Legal Department

RE:  **STOCK PURCHASE AGREEMENT DATED DECEMBER 30, 1992**
.  **BY AND BETWEEN GRACE ENERGY CORPORATION AND**
   **SAMSON INVESTMENT COMPANY (the "Agreement")**

Dear Sir/Madam:

Tendered for defense by Seller pursuant to Section 13.05 of
the Agreement is a Claim arising under Section 13.03(a)(v) in
the nature of an advisory letter received from Robert N. Barnes,
Esq. advising that he intends to name Grace Petroleum
Corporation as an Additional Party Defendant in that certain
litigation styled Ella Glimp v. Exxon Company U.S.A. filed in
the District Court of Creek County, Oklahoma, under Case
No. C-92-449.   A copy of said letter is attached hereto.
Pursuant to a telephone conversation with Mr. Barnes, it is my
understanding that his client's Claim relates to saltwater
contamination of the Ada-Vamoosa Aquafer underlying Sections 10,
11, 14 and 15, Township 17 North, Range 7 East, Creek County,
Oklahoma.

Unless otherwise specified, all capitalized terms used
herein shall have the same meaning as ascribed to said terms in
the Agreement.  Please contact me should you have any questions.
regarding the attached documentation supporting this Claim.

Very truly yours,

SAMSON PRODUCTION?SERVICES COMPANY

By: _____

Jack/A. Canon
Senior Vice President –
General Counsel

Enclosures
VIA TELECOPY – (214) 770-0252
cc:   W.R. Grace & Co.
      One Town Center Road
      Boca Raton, **Florida** 33486-1010
      Attn:  Secretary
      Fax No. (407) 362-1635

      Pat Hall
      Samson **Production** Services Company

ACQ2\gr104

EX
E (4)

# BARNES & LEWIS, P.C.

### ATTORNEYS AT LAW

701 NORTHWEST SIXTY-THIRD STREET
SUITE 500
OKLAHOMA CITY, OKLAHOMA 73116
(403) 843-0363
FAX (403) 843-0790

*IMY* *2m*
*SIC* *tEÿDSpT*

Robert N. Barnes*
Patranell Britten Lewisf
Roy B. Short

•Admitted to Practice in Oklahoma and Texas
†Admitted to Practice in Oklahoma and Florida

April 27, 1994

Mr. Jack Canon
SAMSON RESOURCES COMPANY
Two West Second Street
Tulsa, Oklahoma 74103

Re: *Ella Glimp* v. *Exxon Company U.S.A.*. District Court of Creek County, Case No. C-92-449; Our File No. 2252

Dear Jack:

I represent Ella Glimp in the case mentioned above. The case involves extensive oilfield pollution of land in Creek County, Oklahoma. Glimp claims the cause of the pollution is oilfield operations in the Coop "A" and Coop "B" secondary recovery units that were once operated by Grace Petroleum Corporation. Grace evidently sold its interest to Exxon in 1985. Exxon continues to operate the units today. Exxon documents indicate that operations conducted by Grace contributed to the pollution.

I intend to bring Grace in as an additional defendant in the veiy near future. I understand that Grace has now changed its name to SNG Production Company.

Very truly yours,

BARNES & LEWIS, P.C.

Robert N. Barnes

RNB:pm

E(5)

# ~Samson

Samson Plaza
'.VC West Second Street
Tulsa. Oklahoma 7ɤ103-3103
318/533-1791
Telex 49611818 SAMSON RC TSJL

July 5, 1994

Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas, Texas  75240-6681

Attn:  Legal Department

RE:  **STOCK PURCHASE AGREEMENT DATED DECEMBER 30, 1992
BY AND BETWEEN GRACE ENERGY CORPORATION AND
SAMSON INVESTMENT COMPANY (the "Agreement")**

Dear Sir/Madam:

Tendered for defense by Seller pursuant to Section 13.05 of
the Agreement is a Claim arising from four Notices of Tax Due
issued by the Internal Revenue Service and each dated June 15,
1994.  These Notices involve tax periods ending June 30, 1983,
September 30, 1983, December 31, 1983 and March 31, 1984.  It is
my understanding that these Notices arise out of an excise tax
audit.  These assessments have previously been discussed with
Charles Woods.  Copies of the Notices are enclosed herewith.

Unless otherwise specified, all capitalized terms used
herein shall have the same meaning as ascribed to said terms in
the Agreement.  Please contact me should you have any questions
regarding the attached documentation supporting this claim.

Very truly yours,

SAMSON PRODUCTION SERVICES COMPANY

rack A. Canon
Senior Vice President —
General Counsel

Enclosures
VIA TELECOPY
(214) 770-0215
cc:  W.R. Grace & Co.
     One Town Center Road
     Boca Raton, Florida 33486-1010
     Attn:  Secretary
     Fax No. (407) 362-1635

ACQ2\grI10

**Department of the Treasuïy**
Internal Revenue Service
Director

74451-166-13000-94

3651 S* INTERREGIONAL HWY.
AUSTIN* TX 73301

1DRS #: 7401000000

| | | Assessment Date | Trans Code | | Date of | (36/15/94 |
| | | | 670 | | This Notice: | SNSP |
| 03 | 8306 | 06/15/94 | 570 | | | ▶73-0963306 |

account ptaaaa ralar
≫ We nombac.

SNQ PRODUCTION CO
TWO W SECOND ST
TULSA                    OK    74103

Form Number720

Tax Period Ended06/30/83

### Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your return identified above. Please pay the amount shown as Balance Due within 10 days from the date of this notice. Make your check or money order payable to the Internal Revenue Service and send it with this notice to the address shown above.

If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

| | Reference | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| 6/13/94 | ADD*L TAX | 1.929.29 | | |
| 6/15/94 | RESTRICT INT | 3.649.26 | | |

s/-/ enclosed notice

5*578.54

\ **Dapartment of the Treasi|r**
t **Internal Revenue Service**
**Director**                                        74451-166-13001-74

　　　　3651 S. INTERREGIONAL HWY.
　　　　AUSTIN. TX .73301                IDRS-#:., 7401000000

| | | Assessment Date | Trans Code | Date of | 06/15/74 |
|---|---|---|---|---|---|
| 03 | 8309 | 06/15/94 | 670 | This Notice: | SNGP |
| | | | 570 | 07j—BtOJOBÓ | |

" 1

SNG PRODUCTION CO                         Fonn Number 720
TWO W SECOND ST
TULSA              OK  74103              Tax Period Endedg>9/30/B3

### Notice of Tax Due on Federal Tax Return

　　This is a notice of tax due on your return identified above. Please pay the amount shown as Balance Due within 10 days from the date ot this notice. Make your check or money order payable to the Internal Revenue Service and send it with this notice to the address shown above.
　　If the balance due as shown below fs incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

| Reference | | Assessment | Adjustment or Credit | Due |
|---|---|---|---|---|
| 6/15/94 | ADD'L TAX | 11*379.31 | c | |
| 6/15/94 | RESTRICT INT | 20.634.19 | | |

SM tndoud notice                                              32,013.50

S

**Department of the Treasv"** ·
Internal Revenue Service
Director

74451-166-13002-74

3631 S. itfXERRESIONAL HWY.
AUSTIN. J*X 73301

— IDRS«J»:   7401000000

| | | Assessment Date | Trans Code | Data of | 06/13/94 |
|---|---|---|---|---|---|
| | | | 670 | Thia Notice: | SNGP |
| 03 | 8312 | 06/13/94 | 570 | I&SSiSSZF ►73-0963306 | |

SNG PRODUCTION CO
TWO W SECOND ST
TULSA          OK  74103

.form Number720

Tax Period Endedj 2/31/B3

### Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your return identified above. Please pay the amount shown as Balance Due within 10 days from the date of this notice. Make your check or money order payable to the Internal Revenue Service and send it with this notice to the address shown above.

If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

| | Reference | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| 6/15/94 | ADD1L TAX | 22* 924.21 | | |
| 6/15/94 | RESTRICT ▮NT | 39.827.46 | | |

see enclosed notice

62,751.67

Department of the? Treasir
Internal Revenue Service
Director

74431-166-13003-94

3631 S. INTERREGIONAL HWY.
AUSTZNt    73301

XDR8*»:  7401000000

| | | Assessment Date | Trans Code | | 06/18/94 |
|---|---|---|---|---|---|
| 03 | 8403 | 06/13/94 | 670 | This Notica: 3NQI* | |
| | | | 570 | to'Squlniiiyoof'y account, pfotfmirator tototorumbar. | ▶73-0963306 |

BNQ PRODUCTION CD
TWO W SECOND ST
TULSA            OK   74103

Form Number720
m
Tax Period Ended03/31/O4

### Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your return identified above. Please pay the amount shown as Balance Due within 10 days from the date of this notice. Make your check or money order payable to the Internal Revenue Service and send it with this notice to the address shown above.

If the balance due as shown below Is incorrect because you made a recant payment, please send us the amount you believe you owe and an explanation of the difference.

| Reference | | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| 6/13/94 | ADD*L TAX | 38,936.22 | | |
| 6/15/94 | RESTRICT INT | 97*993.98 | | |

SM enclosed notice

106,930.20

E(6)i



Samson Plaza
Two West Secono Street
Tulsa. Oklahoma 7<iiC3-3iC3
SI8/583-1791

July 12, 1995

Attention: Legal Division
Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Road
Dallas, Texas  75240-6681

RE:  **STOCK PURCHASE AGREEMENT DATED DECEMBER 30,
1992 BY AND BETWEEN GRACE ENERGY CORPORATION
AND SAMSON INVESTMENT COMPANY (the "AGREEMENT")**

Dear Sir/Madam:

By letters dated October 4, 1993 and May 23, 1994,
Purchaser previously tendered for defense by Seller a claim
in the nature of an audit conducted by the Texas
Comptroller's Office of sales taxes paid of Grace Petroleum
Corporation for the period of time beginning with tax year
1990.  Although that audit is not yet complete, the
Comptroller's preliminary findings indicate additional
taxes due and owing approximately of $120,000.  (See the
two schedules prepared by the Texas Comptroller's office
enclosed herewith.)  Further, the auditor on behalf of the
Comptroller's Office is projecting that he will find an
additional $100,000 in unpaid taxes or exceptions by the
time he finishes with the audit.  Purchaser is simply
providing Seller with this additional notice in an effort
to keep Seller apprised of the status of this particular
claim.

Unless otherwise specified, all capitalized terms used
herein shall have the same meaning as subscribed to the
terms in the Agreement.  Please contact me should you have
any questions regarding this claim.

Very truly yours,

SAMSON INVESTMENT COMPANY

Jack A. Canon
Senior Vice President –
General Counsel

JAC:kjb
Fax No. (214) 770-0215
Via Federal Express
cc:    W.R. Grace & Co.
       One Town Center Road
       Boca Raton, Florida 33486-1010
       Attn:  Secretary
       Fax NO. (407) 362-1635

ACQ2\gr177

SKG PRODUCTION COMPANY
TULSA, OK
DETAIL REPORT BY EXAM/NAME/DATE

Thomas A. Smith    07/07/95
TP NO:  3000494-9001
Page:    1

EXAM NO: 00100 TAXABLE PURCHASES

| Record Id | Name / Location | Reference / Description | Comments | Taxable Amt / Tax | Date | S | City / County | KTA / SPD | FN | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3238-0041 | ACID ENGINEERING INC. KILGORE | 66320 RENTAL | DAVIDSON GAS *1 | 1,061.00 71.61 | 04/02/92 | Y | NONE CLEON | NONE NONE | 3238 | 2 |
| 3238-0020 | BATES CONSTRUCTION TROUP | 63918 REPAIR OF TPP | HUNTER |1 | 758.44 47.40 | 01/10/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0021 | BATES CONSTRUCTION TROUP | 63921 REPAIR OF TPP | WALKER *1 | 420.27 26.26 | 01/10/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0022 | BATES CONSTRUCTION TROUP | 63922 REPAIR OF TPP | WALKER *1 | 440.54 27.53 | 01/10/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0038 | BATES CONSTRUCTION TROUP | 66510 R.P. REPAIR | KCASBAN | 900.00 56.25 | 01/21/92 | Y | NONE NONE | NONE NONE | 3238 | 9 |
| 3238-0035 | BATES CONSTRUCTION TROUP | 66105 R.P. REPAIR | SAMET | 915.72 57.23 | 02/06/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0036 | BATES CONSTRUCTION TROUP | 66107 R.P. REPAIR | SAVAGE |2, 13 | 850.00 53.12 | 02/06/92 | Y | NONE NONE | NONE NONE | 3238 | 9 |
| 3238-0015 | BLAZER CONSTRUCTION LA | 63103 R.P. REPAIR | BEARD #2 | 570.00 35.62 | 01/13/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0056 | CHALLENGER TANK & KFG. WEITEHOUSE | 65008 TPP | CHILDS #1 | 225.00 15.18 | 03/12/92 | Y | NONE CSKITH | NONE NONE | 3238 | 2 |
| 3Q0005 | HAYCO WELL TESTERS LA | 22909 R.P. REPAIR | HUNTER | 170,491.61 11,508.18 | 01/22/92 | Y | NONE CLEON | NONE NONE | 3238 | 3 |
| 3238-0013 | HOMCO INTERNATIONAL KILGORE | 62910 RENTAL | ROBERT G/U | 3,994.28 249.64 | 01/07/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0019 | HOMCO INTERNATIONAL PALESTINE | 63529 RENTAL TOOLS | SAMET |1 | 7,027.30 439.20 | 01/19/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0045 | HOMCO INTERNATIONAL DALLAS | 67903 RENTAL | RANDALL *1 | 4,814.88 300.93 | 04/02/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0040 | INGRAM CACTUS OK | 63903 PARTS | KCASBAN 14 | 687.00 42.93 | 02/27/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3063-0077 | INGRAM CACTUS OK | 60117 PARTS | BLASEK t2 9207 | 2,482.21 12.41 | 03/31/92 | N | NONE CSMITH | NONE NONE | 3238 | 5 |
| 3238-0058 | INGRAM CACTUS OK | 68213 STATE TAX | SAMET #2 | 598.00 37.37 | 06/11/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |
| 3238-0059 | INGRAM CACTUS OK | 68212 STATE TAX | SAMET ft | 4,380.80 273.80 | 06/11/92 | Y | NONE NONE | HONE | 3238 | 4 |
| 3238-0063 | INGRAM CACTUS OK | 68217 STATE TAX | LOVERING $2 | 673.00 45.42 | 06/11/92 | Y | NONE CLEON | NONE NONE | 3238 | 2 |
| 3238-0064 | INGRAM CACTUS OK | 68218 STATE TAX | LOVERING |2 | 4,289.41 289.53 | 06/11/92 | Y | NONE CLEON | NONE NONE | 3238 | 2 |
| 3063-0075 | INGRAM CACTUS OK | 61609 PARTS | LOVERING #2 9207 | 5,448.67 340.54 | 06/11/92 | Y | NONE NONE | NONE NONE | 3238 | 4 |

SNG PRODUCTION COMPANY
TULSA, OK
DETAIL' REPORT BY EXAK/KAKE/DATE

Thoaas A. Smith    07/07/95
TP NO:  30004949001
Page:    2

L   /NO: 00100 TAXABLE PURCHASES

| Record Id | Naie / Location | Reference / Description | Consents | Taxable Ant / Tax | Date | City / S County | MTA / SPD | FN |
|---|---|---|---|---|---|---|---|---|
| | | | | 4 | | | | |
| 3063-0076 | INGRAM CACTUS OK | 63810 PARTS | SAVAGE 44 9207 | 2,992.85 202.01 | 06/30/92 Y | NONE CLEON | NONE NONE | 9 |
| 323B-0002 | J-U OPERATING COMPANY DALLAS | 60106 RENTAL | BORING | 1,628.00 109.89 | 12/18/91 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0003 | J-U OPERATING COMPANY DALLAS | 60107 RENTAL | BOUDEN | 1,428.00 96.39 | 12/18/91 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0033 | J-R OPERATING COMPANY DALLAS | 66026 RENTAL | BORING | 1,628.00 109.89 | 02/04/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0034 | J-R OPERATING COMPANY DALLAS | 66028 RENTAL | BOUDEN | 1,428.00 96.39 | 02/04/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0046 | J-R OPERATING COHPANY DALLAS | 63128 RENTAL | BORING MISSING | 1,628.00 109.89 | 03/31/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0047 | J-R OPERATING COMPANY DALLAS | 63127 RENTAL | BOUDEN MISSING | 1,428.00 96.39 | 03/31/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0043 | J-R OPERATING COMPANY DALLAS | 66735 RENTAL | BORING | 1,628.00 109.89 | 04/06/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3236-0044 | J-R OPERATING COMPANY DALLAS | 66803 RENTAL | BOUDEN | 1,428.00 96.39 | 04/06/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3063-0069 | J-R OPERATING COMPANY DALLAS | 62105 RENTAL | BOUDEN 9207 | 1,428.00 96.39 | 07/01/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3063Q070 | J-R OPERATING COMPANY DALLAS | 62107 RENTAL | BORING 9207 | 1,628.00 109.89 | 07/01/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3063-0071 | J-R OPERATING COMPANY DALLAS | 62106 RENTAL | MAGGIE SPAIN 9207 | 1,100.00 74.25 | 07/01/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3063-0074 | J-R OPERATING COMPANY DALLAS | 62108 RENTAL | PANNELL LEASE 9207 | 1,100.00 74.25 | 07/01/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3063-0072 | J-R OPERATING COMPANY DALLAS | 65602 RENTAL | MAGGIE SPAIN 9208 | 1,100.00 74.25 | 08/01/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3063-0073 | J-R OPERATING COMPANY DALLAS | 65603 RENTAL | PANNELL LEASE 9208 | 1,100.00 74.25 | 08/01/92 Y | NONE CUISE | NONE NONE | 3238 2 |
| 3238-0039 | LTV ENERGY PRODUCTS' FAIRFIELD | 66708 PARTS | RAULS \| 2 | 630.54 39.40 | 02/03/92 Y | NONE NONE | NONE NONE | 3238 4 |
| 3238-0061 | LTV ENERGY PRODUCTS FAIRFIELD | 68224 TPP | L.R. UEST f1 | 3,041.80 205.32 | 06/11/92 Y | NONE CLEON | RONE NONE | 3238 2 |
| 3238-0062 | LTV ENERGY PRODUCTS FAIRFIELD | 68223 TPP | L.R. UEST 41 | 2,715.06 183.26 | 06/11/92 Y | NONE CLEON | NONE NONE | 3238 2 |
| 3238-0028 | MILPARK DRILLING FLUIDS HOUSTON | 32719 LOCAL TAX | HUNTER | 20,977.50 104.88 | 02/07/92 N | NONE CANDER | NONE NONE | 3238 B |
| 3063-0079 | NATIONAL OILRELL HOUSTON | 20712 PIPE | SAME! 42 9207 | 22,168.28 110.84 | 06/30/92 N | NONE CLEON | NONE NONE | 3238 5 |

SNG PRODUCTION COMPANY
TULSA, .OK
DETAIL REPORT BY EXAM/NAME/DATE

Thomas A. Smith    07/07/95
TP NO:  30004949002
Page:    3

( " ) NO: 00100 TAXABLE PURCHASES

| Record Id | Name / Location | Reference / Description | Comments | Taxable Amt / Tax | Date | S | City / County | MTA / SPD | FN | |
|-----------|-----------------|------------------------|----------|-------------------|------|---|---------------|-----------|-----|---|
| | | | | $ | | | | | | |
| 3063-0089 | PALESTINE CONTRACTORS | 64432 | BROWING #1 | 381.75 | 05/26/92 | Y | NONE | NONE | | |
| | PALESTINE,TX | REAL PRO. REPAI | 9208 | 23.85 | | | NONE | NONE | | |
| 3063-0085 | PALESTINE CONTRACTORS | 64407 | GRAVES #2 | 1,527.64 | 06/15/92 | Y | NONE | NONE | | |
| | PALESTINE,TX | REAL PRO. REPAI | 9208 | 95.47 | | | NONE | NONE | | |
| 3063-0086 | PALESTINE CONTRACTORS | 64410 | GRAVES 12 | 532.76 | 06/18/92 | Y | NONE | NONE | | |
| | PALESTINE,TX | REAL PRO. REPAI | 9208 | 33.29 | | | NONE | NONE | | |
| 3063-0087 | PALESTINE CONTRACTORS | 64411 | GRAVES #2 | 298.00 | 06/22/92 | Y | NONE | NONE | | |
| | PALESTINE,TX | REAL PRO. REPAI | 9208 | 18.62 | | | NONE | NONE | | |
| 3063-0088 | PALESTINE CONTRACTORS | 64427 | GRAVES |2 | 1,241.38 | 06/22/92 | Y | NONE | NONE | | |
| | PALESTINE,TX | REAL PRO. REPAI | 9208 | 77.58 | | | NONE | NONE | | |
| 3238-0032 | PREMIER PIPE, INC. | 32807 | BLAZEK |2 | 13,394.52 | 02/10/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | LOCAL TAX | | 66.97 | | | CLEON | NONE | | |
| 3238-0006 | PRODUCTION OPERATORS | 60406 | SAMET f1 | 2,530.00 | 12/18/91 | Y | NONE | NONE | 3238 | 2 |
| | IL | RENTAL | | 170.77 | | | CLEON | NONE | | |
| 3238-0007 | PRODUCTION OPERATORS | 60424 | ROARK f1 | 1,725.00 | 12/18/91 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 107.83 | | | NONE | NONE | | |
| 3238-0016 | PRODUCTION OPERATORS | 63205 | WOOLSWORTH f1 | 3,311.06 | 12/18/91 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 206.94 | | | NONE | NONE | | |
| 3238-0017 | PRODUCTION OPERATORS | 63206 | CAPPS f1 AND f2 | 3,618.67 | 12/18/91 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 226.16 | | | NONE | NONE | | |
| 0-0018 | PRODUCTION OPERATORS | 63208 | CHADWICK f1 | 1,545.00 | 12/18/91 | Y | NONE | NONE | 3238 | 4 |
| | TL | RENTAL | | 96.56 | | | NONE | NONE | | |
| 3238-0029 | PRODUCTION OPERATORS | 64703 | WOOLSWORTH | 3,311.06 | 01/24/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 206.94 | | | NONE | NONE | | |
| 3238-0030 | PRODUCTION OPERATORS | 64704 | CAPPS f1 AND f2 | 3,618.67 | 01/24/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 226.16 | | | NONE | NONE | | |
| 3238-0031 | PRODUCTION OPERATORS | 64706 | CHADWICK | 1,545.00 | 03/24/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 96.56 | | | NONE | NONE | | |
| 3238-0037 | PRODUCTION OPERATORS | 66212 | ROARK f2 | 1,725.00 | 01/24/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 107.81 | | | NONE | NONE | | |
| 3238-0053 | PRODUCTION OPERATORS | 64605 | CAPPS f1 AND f2 | 3,618.67 | 03/19/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 226.16 | | | NONE | NONE | | |
| 3238-0054 | PRODUCTION OPERATORS | 64606 | WOOLSWORTH f1 | 3,311.06 | 03/19/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | | 206.94 | | | NONE | NONE | | |
| 3063-0065 | PRODUCTION OPERATORS | 60220 | WOOLSWORTH f1 | 3,346.78 | 06/15/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | 9207 | 209.17 | | | NONE | NONE | | |
| 3063-0067 | PRODUCTION OPERATORS | 60401 | CAPPS f1 AND f2 | 3,657.70 | 06/15/92 | Y | NONE | NONE | 3238 | 4 |
| | IL. | RENTAL | 9207 | 228.60 | | | NONE | NONE | | |
| 3063-0066 | PRODUCTION OPERATORS | 65735 | WOOLSWORTH f1 | 3,346.78 | 07/15/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | 9206 | 209.17 | | | NONE | NONE | | |

```
SNG PRODUCTION COMPANY                                          Thomas A. Smith   07/07/95
•TULSA,-OK                                                      TP NO: 30004949001
DETAIL REPORT BY EXAM/NAME/DATE                                 Page:    4
```

NO: 00100 TAXABLE PURCHASES

| Record Id | Name / Location | Reference / Description | Comments | Taxable Amt / Tax | Date | S | City / County | MTA / SPD | FH | |
|-----------|-----------------|-------------------------|----------|-------------------|------|---|---------------|-----------|-----|---|
| | | | i | | | | | | | |
| 3063-0068 | PRODUCTION OPERATORS | 64830 | CAPPS \|1 AND #2 | 3,657.70 | 07/15/92 | Y | NONE | NONE | 3238 | 4 |
| | IL | RENTAL | 9208 | 228.60 | | | NONE | NONE | | |
| 3238-0014 | POLLIN' LEASE SERVICE | 31409 | STATE TRACT 94 | 898.32 | 01/15/92 | Y | NONE | NONE | 3238 | 4 |
| | TAFT | R.P. REPAIR | | 56.14 | | | NONE | NONE | | |
| 3238-0042 | REDMAN PIPE | 30223 | BLAZEK #2 | 46,275.68 | 03/26/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | LOCAL TAX | | 231.37 | | | CLEON | | | |
| 3238-0060 | TIDEWATER | 65419 | FULLER $2 | 1,339.18 | 03/27/92 | Y | NONE | NONE | 3238 | 2 |
| | HOUSTON | FREIGHT | | 90.39 | | | CLEON | NONE | | |
| 3063-0080 | TIDEWATER | 64529 | BRADSHAW | 3,900.00 | 07/10/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | RENTAL, COMPRES | 9208 | 19.50 | | | CUPSHU | NONE | | |
| 3063-0081 | TIDEWATER | 64530 | FULLINGBAM | 1,250.00 | 07/10/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | RENTAL, COMPRES | 9208 | 6.25 | | | CWISE | NONE | | |
| 3063-0082 | TIDEWATER | 64532 | NEWBERRY | 1,340.00 | 07/10/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | RENTAL, COMPRES | 9208 | 6.70 | | | CWISE | NONE | | |
| 3063-0083 | TIDEWATER | 64525 | ROBERTS GAS UNI | 2,500.00 | 07/10/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | RENTAL, COMPRES | 9208 | 12.50 | | | CLEON | NONE | | |
| 3063-0078 | TOOLPUSHERS SUPPLY CO. | 20711 | SAVAGE #4 | 21,264.46 | 06/30/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | JOINTS | 9207 | 106.32 | | | CLEON | NONE | | |
| 3238-0057 | WESTERN COMPANY | 68207 | L.R. WEST *1 | 6,176.91 | 06/11/92 | N | NONE | NONE | 3238 | 5 |
| | KILGORE | LOCAL TAX | | 30.88 | | | CLEON | NONE | | |
| VJ-0012 | WILSON SUPPLY COMPANY | 30812 | SAVAGE *4 | 495,458.55 | 01/06/92 | N | NONE | NONE | 3238 | 5 |
| | HOUSTON | CASING | | 2,477.29 | | | CLEON | NONE | | |
| 3238-0048 | WILSON SUPPLY COMPANY | 68503 | BLAZEK i2 | 2,975.94 | 05/20/92 | N | NONE | NONE | 3238 | 5 |
| | PALESTINE | LOCAL TAX | | 14.87 | | | CLEON | NONE | | |
| 3238-0049 | WILSON SUPPLY COMPANY | 68506 | BLAZEK n | 3,271.91 | 06/09/92 | N | NONE | NONE | 3238 | 5 |
| | PALESTINE | LOCAL TAX | | 16.35 | | | CLEON | NONE | | |
| 3238-0050 | WILSON SUPPLY COMPANY | 68508 | LEROY WEST *1 | 3,271.91 | 06/09/92 | N | NONE | NONE | 3238 | 5 |
| | PALESTINE | LOCAL TAX | | 16.35 | | | CLEON | NONE | | |
| 3238-0055 | WILSON SUPPLY COMPANY | 67310 | SAVAGE #4 | -9,489.43 | 06/10/92 | N | NONE | NONE | 3238 | 7 |
| | HOUSTON | CREDIT | REF. TO 30812 | -47.44 | | | CLEON | NONE | | |
| 3238-0051 | WILSON SUPPLY COMPANY | 68509 | LOVERING »2 | 3,271.91 | 06/11/92 | N | NONE | NONE | 3238 | 5 |
| | PALESTINE | LOCAL TAX | | 16.35 | | | CLEON | NONE | | |
| 3238-0052 | WILSON SUPPLY COMPANY | 68510 | SAMET #2 | 3,271.91 | 06/11/92 | N | NONE | NONE | 3238 | 5 |
| | PALESTINE | LOCAL TAX | | 16.35 | | | CLEON | NONE | | |

SNG PRODUCTION COMPANY                                          Thomas A. Smith    07/07/95
TULSA,-OK                                                       TP NO:  30004949001
DETAIL REPORT BY EXAM/NAME/DATE                                 Page:    5

## ONO: 00100 TAXABLE PURCHASES

| Record Id | Name / Location | Reference / Description | Contents | Taxable Ait / Tax | Date | City / S County | MTA / SPD | FN |
|-----------|-----------------|-------------------------|----------|-------------------|------|-----------------|-----------|-----|
| | | | | i | | | | |
| | | | | -------------- | | | | |
| | | | | $    931,455.61 | FORWARD TO SCHEDULE SUKKAHY | | | |
| | | | | J     22,244.84 | | | | |
| | | | | ================ | | | | |

Eiam Footnotes:TAX WAS NOT PAID ON PURCHASES SHIPPED TO TEXAS.

O

SNS FB9DUCTIQH COKPAKY                              ThomSi    Smith      07/07/95
rcisA, OY                                           TP NO:  30004949001
DETAIL BY EXAM, FAME, DATE


                    FOOTNOTES
-------------    -----------------------------------------------------------------------------------------

   3238    2    TAXPAYER DID NOT ACCRUE STATE AND COUNTY TAX.
   3238    3    VENDOR PERFORMED REAL PROPERTY REPAIRS
   3238    4    TAXPAYER DID NOT ACCRUE STATE TAX.
   3238    5    TAXPAYER DID NOT ACCRUE COUNTY TAX.
   3238    7    CREDIT WAS SET DP TO OFFSET THE ADJUSTMENT THAT WAS SET UP ON THE APPLICABLE INVOICE.
   3238    8    VENDOR CHARGED STATE TAX, BUT DID NOT CHARGE ANDERSON COUNTY SALES TAX.
   3238    9    CLEANING TANKS TBAT ARE 500 BBLS. OR LESS ARE TAXABLE.
            9    TAXES PAID IN ERROR TO ANOTHER STATE

E(7)

# Samson

Samson Plaza
Two West Second Street
Tulsa. O'Klaroma 74103-3103
918 / 553-1791
Telex 44611818 SAMSON RC TUL

September 6, 1994

Grace Energy Corporation
Two Galleria Tower
Suite 1500
13455 Noel Hoad
Dallas, Texas  75240-6681
Attn:  Legal Department

RE:  **STOCK PURCHASE AGREEMENT DATED DECEMBER 30, 1992
BY AND BETWEEN GRACE ENERGY CORPORATION AND
SAMSON INVESTMENT COMPANY (the "Agreement")**

Dear Sir/Madam:

Tendered for defense by Seller pursuant to Section 13.05 of
the Agreement is a Claim consisting of a notification letter
dated March 4, 1994 and served upon Prentice Hall Corporation
System, Inc. on August 30, 1994 on behalf of SNG Production
Company relating to a pipeline easement located on the former
Otis Air Force Base in Massachusetts.  It appears that this
easement may have been held by Standard Transmission Corporation
and subsequently assigned long before the Grace/Samson
transaction.  In addition to advising of the termination of this
easement, the Corps of Engineers states that there have been
numerous leaks in the fuel pipelines and the area around the
pipeline has become significantly contaminated.  It appears that
this military base may now have been designated as a superfund
site.

Unless otherwise specified, all capitalized terms used
herein shall have the same meaning as ascribed to said terms in
the Agreement.  Please contact me should you have any questions
regarding the attached documentation supporting this claim.

Very truly yours,

SAMSON PRODUCTION SERVICES COMPANY

Jack A. Canon
/Senior Vice President -
General Counsel

Enclosures
VIA TELECOPY
(214) 770-0215
cc:  W.R. Grace & Co.
     One Town Center Road
     Boca Raton, Florida 33486-1010
     Attn:  Secretary
     Fax No. (407) 362-1635

ACQ2\gr115



**DEPARTMENT OF THE Af(**
U.S. Army Corps o< Engineers
WASHINGTON, D.C. 20314-1000
March 4, 1994

REPLY TO
ATTENTION OF:
Management and Disposal
    Division


Prentice Hall Corporation System/ Inc.
32 Markerman Square
Suite L-100
Dover/ Delaware  19901

To Whom It May Concern:

        We are writing to you because the corporate records of the
Delaware Department of State Division of Corporations indicate
Prentice Hall Corporation System/ Inc. as the registered corpo¬
rate agent for both Grace Petroleum -Corporation/ which changed
its name on January 22, 1993/ to SNG Production Company/ and GE<
Management Corporation.

        The U.S. Army Corps of Engineers is the real estate agent
for the U.S. Air Force.  Therefore/ this letter serves as offic¬
ial notice that the Consent to Easement Agreement dated May 4,
1965 between the Department of the Air Force on Otis Air Force
Base/ Massachusetts (now the Massachusetts Military Reservation)
and Standard Transmission Corporation/ is hereby terminated
effective April 8/ 1994.

        We believe that SNG Production Company (Corporate File
# 0794036) is successor to the grantee Standard Transmission
Corporation.  We also believe that SNG and GEC Management Corpo¬
ration/ corporate file number 21928861/ are connected.  Standard
Transmission Corporation has gone through numerous name changes
and mergers through the years.  In the past it was a wholly owned
subsidiary of W.R. Grace- & Co.  According to the corporate
records of the State of Delaware/ SNG Production Company was
incorporated in Delaware on August 20/ 1973.  Grace Petroleum
Corporation changed its name on January 22/ 1993, to
SNG Production Company.

        The subject Consent to Easement Agreement provides for
termination by the Secretary of the Air Force, upon reasonable
notice to the grantee, for failure, neglect, or refusal by the
grantee to fully and promptly comply with any ar.d all of the
conditions of this grant, for nonuse, or for abandonment.
Among other provisions of the Consent Agreement which the Grantee
has violated, we refer specifically to provision paragraph number
4 which requires the grantee to supervise the said fuel pipeline,
and cause '.it to be inspected at reasonable intervals.  A further

-2-

provision states that the grantee is to immediately repair any
leaks found therein as a result of such inspection-  In addition/
termination of the grant/ as discussed above/ will occur upon
nonuse or agandonment.  Because no use of the pipeline has
occurred since 1973/ we believe this provision applies as well.

The grantee has not adhered to any of these provisions.  The
Massachusetts Military Reservation has been added to the National
Priority List (NPL) by the Environmental Protection Agency in
1989.  The NPL identifies sites that require further study and
cleanup of contamination.  There have been numerous leaks in the
grantee's fuel pipeline and the area around the pipeline has
become significantly contaminated.

.  -Point of contact for this matter is Vicki C. Bryant/ Esq./
at (202) 272-1752.

Sincerely/


S. Janice Howell
Chief/ Management and Disposal
    Division
Directorate of Real Estate

# PRENTICE TALL LEGAL & FINANCIAL SERVICES
## 15 Columbus Circle, New York, NY 10023-7773
### (800) 221-0770

United States Corporation Company                           The Prentice-Hall Corporation System, Inc.

## NOTICE OF SERVICE OF PROCESS

Date Processed: 01-SEP-94                                    Transmittal #: DE0036868P

To: ANNABEL M. JONES                                        Redirect sent to:
    SNG PRODUCTION COMPANY
    TWO WEST SECOND STREET
    TULSA OK 74103

RECEIVED
SEP 6 1994
PC LEGAL DEPT.

TYPE OF REPRESENTATION:   Statutory

*We enclose the following documents which were served upon:*
                         The Prentice-Hall Corporation System, Inc.
*as registered agent in   Delaware*              *for*
                         SNG PRODUCTION COMPANY (ID#:   0252881)
*Documents were served on 30-AUG-94    via Certified Mail*          ID#: P482 046 637

Title of Action: N/A                                        Case #: N/A
             vs. N/A
    Court: DEPARTMENT OF THE ARMY, WASHINGTON, D.C.  20314-1000
Nature of Case: Contract

# O

_____ Summons              _____ Notice of Mechanic's Lien      _____ A self-addressed stamped
_____ Complaint            _____ Notice of Attorney's Lien            envelope enclosed
_____ Garnishment          _____ Notice of Default Judgment     _____ Duplicate copies of the Notice
_____ Subpoena                                                        and Acknowledgement enclosed

__X__ Other:  LETTER FROM DEPT. OF THE ARMY REGARDING "CONSENT OF EASEMENT AGREEMENT"

Answer Due: N/A
Documents Sent: Federal Express         ID#:
Call Placed: No call placed             Spoke to: N/A
Comments: SAME LETTER WAS RECEIVED ON MARCH 15, 1994 AND FORWARDED
          TO SUE SWANSON / GRACE ENERGY CORPORATION.

Attorney for Claimant:
    S. JANICE HOWELL  (SENDER)
    DEPARTMENT OF THE ARMY
    U.S. ARMY CORPS OF ENGINEERS
    WASHINGTON, D.C.  20314-1000
    202-272-1752 (VICKI BRYANT)

Form Prepared By:     t-k/u.  L Q)9 ÿ      -i 0 AJ? <L
                   Tlori Denkenberger

*(ÿjase acknowledge receipt of this notice and the enclosures by signing and returning the acknowledgement copy.*

Original Client Copy - for your records

*F*

# £2 Samson

Samson Piaya
Two West Secono Street
Tulsa Okianoma  '03-3'03
918 533-1791
Fax 8'S'59'-1795

December 15, 1995

**VIA FEDERAL EXPRESS**

Grace Energy Corporation
Attention:  Legal Department
Two Galleria Tower, Suite 1500
13455 Noel Road
Dallas, TX  75240-6681

> Re:  **Stock Purchase Agreement Dated December 30, 1992 By and Between Grace Energy Corporation and Samson Investment Company (the "Agreement")**
>
> **Additional Information Regarding September 6, 1994 Notice of Claim**

Dear Sir/Madam:

Enclosed you will find the most recent information that SNG Production Co. ("SNG") has received from the Massachusetts Department of Environmental Protection ("DEP") related to potential environmental contamination which allegedly has resulted from leaks from a pipeline located on a site near a pipeline easement that may have been held by Standard Transmission Corporation and subsequently assigned to Grace long before the Grace/Samson transaction occurred in 1992.

On September 6, 1994, SNG notified Grace Energy Corporation ("Grace") that it had received a claim from the DEP.  In the preliminary notice, the DEP advised SNG that numerous leaks in a fuel pipeline had caused the area in and around the pipeline to become contaminated.  In addition, SNG was also advised that the military base may have been designated as a superfund site.

SNG received additional information regarding the pipeline on December 4, 1995.  The most recent information advised SNG that two fuel spills occurred in 1972 from leaks in the pipeline and that seepage of fuel may have occurred from the pipeline into a lake located in Massachusetts.

As noted above, this claim was tendered to Grace for defense in September, 1994.  Therefore, this letter is intended to forward to Grace the most recent information that SNG has received on this issue.  You will note that the Massachusetts Department of Environmental Protection has scheduled a meeting to discuss this matter on Thursday, December 21, 1995, at 10:00

ACQ3\gr005

Grace Energy Corporation
December 15, 1995
Page 2

a.m., and has set a deadline to submit an Immediate Response
Action Plan to its office by January 11, 1996.

If you have any additional questions or comments on this
issue, do not hesitate to contact me.

Very truly yours,

SAMSON PRODUCTION SERVICES COMPANY


Kimberly A. Flanery
**Staff Attorney**

**KAFrskr**

**Enclosures**

cc:    W.R. Grace & Co.
       Attention:    Secretary
       One Town Center Road
       Boca Raton, Florida 33486-1010
       **Via Facsimile — (407) 362-1635**

       Mr. Anthony G. Riddlesperger
       Vice President — General Counsel
       Grace Energy Corporation
       Two Galleria Tower, Suite 1500
       13455 Noel Road
       Dallas, TX  75240-6681      "/3fp
       **Via Facsimile — (214)-770-0215-**

**Federal Express No. 7753832181**

ACQ3\gr005



Commonwealth of Massachusetts
Executive Office of Environmental Affairs

# Department of
# Environmental Protection
Southeast Regional Office

William F. Wald
Governor
Trudy Coxa
Secretary, EOEA
David B. Struhs
CommMontr

November 28, 1995

URGENT LEGAL MATTER;  PROMPT ACTION NECESSARY
CERTIFIED MAIL:  RETURN RECEIPT REQUESTED

SNG production Co.                    RE: BOURNE-BWSC 4-11812
C/O Prentice Hall                          ABANDONED FUEL PIPELINE
   Corporation System, Inc.
32 Lockerman Square
Suite L-100
Dover, DE 19904

M.G.L. Chapter 2IE

NOTICE OF RESPONSIBILITY
M.G.L. c. 2IE. 310 CMR 40.0000

To whom it may concern:

   The Department of Environmental Protection (the
"Department") has determined that the facility referenced above
poses a threat of release as defined in section 310 CMR 40.0410
of the Massachusetts Contingency Plan (the "MCP"), 310 CMR
40.0000 which requires one or more response actions to assess and
remove an abandoned fuel pipeline.  The Massachusetts Oil and
Hazardous Material Release Prevention and Response Act, M.G.L. c.
2IE, and the MCP, require the performance of response actions to
prevent harm to health, safety, public welfare and the
environment which may result from this threat of release and
govern the conduct of such actions.

   We are writing to Prentice Hall Corporation System, Inc.
because the corporate records of the Delaware Department of State
Division of Corporations indicates Prentice Hall Corporation
System, Inc. as the registered corporate agent for both Grace
Petroleum Corporation, which changed its name on January 22, 1993
to SNG Production Company, and GEC Management Corporation.

   The purpose of this notice is to inform you of your legal
responsibilities under state law for assessing and/or remediating
the threat of release at this property.  For purposes of this
Notice of Responsibility, the terms and phrases used herein shall
have the meaning ascribed to such terms and phrases by the MCP
unless the context clearly indicates otherwise.

20 Riverside Drive  ●  Lakeville, Massachusetts 02347  ●  FAX (508) 947-6557  ●  Telephone (508) 946-2700

2

## BACKGROUND

Under the "DEPARTMENT OF THE AIR FORCE CONSENT AGREEMENT" dated May 10, 1965, Standard Transmission Corporation of Cushing, Oklahoma built the pipeline from Cape Cod Canal to Otis Air Force Base and used it to transport aviation gas and JP-4 fuel to the base beginning in 1967. The pipeline was shut down and abandoned in 1973. The pipeline was owned, operated, and maintained by Standard Transmission Corporation.

The pipeline runs through five zones of contribution for the Town of Sandwich, Massachusetts' drinking water wells and passes by two lakes, Snake Pond and Shawme Lake. The pipeline has a holding capacity of over 25,000 gallons of fuel. Two fuel spills (FS-12 and FS-13) resulted from leaks in the pipeline in 1972. The FS-12 release is estimated at 70,000 gallons and the FS-13 release is estimated at 2,000 gallons. In addition, in 1973 approximately 2,000 gallons of fuel leaked from the pipeline at 'Grove Street in Sandwich and seeped directly into Shawme Lake. Continuing corrosion of the pipeline combined with the potential for large quantities of residual fuel and the potential for the existence of past unknown leaks represents a clear threat of release of oil and hazardous materials and threats to health, safety, public welfare, and the environment.

## STATUTORY LIABILITIES

The Department has reason to believe that the release and/or threat of release from the abandoned fuel pipeline is or may be a disposal site as defined by the MCP. Based on available information to the Department, SNG Production Co. (Corporate File # 0794036) is a successor to the grantee, the former Standard Transmission Corporation, which acquired its assets including the pipeline. Therefore, the Department has reason to believe that you (as used in this letter, "you" refers to SNG Production Co.) are a Potentially Responsible Party ("PRP") with liability under M.G.L. c. 21E, § 5, for response action costs.

This liability is "strict," meaning it is not based on fault, but solely on your status as an owner, operator, generator, transporter or disposer. It is also "joint and several", meaning that you may be liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

The MCP requires responsible parties to take necessary response actions at properties where there is or has been a release and/or threat of release of oil and/or hazardous material. If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, the Department is authorized by M.G.L. c. 21E to perform the work. By taking such actions, you can avoid liability for response

3

action costs incurred by the Department in performing these
actions and any sanctions which may be imposed for failure to
perform response actions under the MCP.

You may be liable for up to three (3) times all response
action costs incurred by the Department. Response action costs
include, without limitation, the cost of direct hours spent by
Department employees arranging for response actions or overseeing
work performed by persons other than the Department or its
contractors, expenses incurred by the Department in support of
those direct hours, and payments to the Department's contractors.
(For more detail on cost liability, see 310 CMR 40.1200:  Cost
Recovery.)

The Department may also assess interest on costs incurred at
the rate of twelve percent (12%), compounded annually.  To secure
payment of this debt, the Commonwealth may place liens on all of
your property in the Commonwealth.  To recover the debt, the
Commonwealth may foreclose on these liens or the Attorney General
may bring legal action against you.

In addition to your liability for up to three (3) times all
response action costs incurred by the Department, you may also be
liable to the Commonwealth for damages to natural resources
caused by the release.  Civil and criminal liability may also be
imposed under M.G.L. c. 2IE, § 11, and civil administrative
penalties may be imposed under M.G.L. c. 21A, § 16, for each
violation of M.G.L. c. 2IE, the MCP or any order, permit or
approval issued thereunder.

You should be aware that you may have claims against third
parties for damages, including claims for contribution or
reimbursement for the costs of cleanup.  Such claims do not exist
indefinitely but are governed by laws which establish the time
allowed for bringing litigation.  The Department encourages you
to take any action necessary to protect any such claims you may
have against third parties.

ACTIONS UNDERTAKEN TO DATE AT THE SITE

Information on file with the Department indicates that the
following response actions associated with the pipeline have been
performed to date at the site by the National Guard Bureau:

    o    Site Investigation of FS-12
    o    Remedial Investigation/Feasibility Study of FS-12
    o    Remediation Design for FS-12 source area
    o    Site Investigation of FS-13

You may schedule an appointment to review this information at the
Department's Lakeville office by calling (508) 946-2718.

4

**NECESSARY RESPONSE ACTIONS AMD APPLICABLE DEADLINES**

This site shall not be deemed to have had all the necessary and required response actions taken for it unless and until all substantial hazards presented by the release and/or threat of release have been eliminated and a level of No Significant Risk exists or has been achieved in compliance with M.G.L. c. 21E and the MCP.

The MCP requires persons undertaking response actions at a site to submit to the Department a Response Action Outcome Statement prepared by a Licensed Site Professional upon determining that a level of No Significant Risk already exists or has been achieved at the site.

In addition, the MCP requires persons undertaking response actions to perform Immediate Response Actions in response to sudden releases, Imminent Hazards and Conditions of Substantial Release Migration. Such persons must continue to evaluate the need for Immediate Response Actions and notify the Department immediately if such a need exists.

The Department has determined that Immediate Response Actions, including, but not limited to, evaluation of the presence of product, site discovery along the pipeline, and removal of the pipeline, are necessary at this site to respond to the threat of release. **The deadline for submittal to the Department of an Immediate Response Action Plan prepared in accordance with 310 CMR 40.0424 to address this threat of release is January 11, 1996. This deadline constitutes an enforceable Interim Deadline established pursuant to 310 CMR 40.0167.**

Unless otherwise provided by the Department, responsible parties have one year from the initial date notice of a release or threat of release is provided to the Department pursuant to 310 CMR 40.0300 or from the date the Department issues a Notice of Responsibility, whichever occurs earlier, to file with the Department one of the following submittals: (1) a completed Tier Classification Submittal; or (2) a Response Action Outcome Statement. If required by the MCP, a completed Tier I Permit Application must also accompany a Tier Classification Submittal. The deadline for these submittals for this site is November 20, 1996.

PROCEDURES TO FOLLOW TO UNDERTAKE RESPONSE ACTIONS

The Department encourages parties with liabilities under M.G.L. c. 2IE to take prompt action in response to releases and threats of release of oil and hazardous materials. By taking prompt action, you may significantly lower your cleanup costs and avoid the imposition of, or reduce the amount of, certain permit and annual compliance assurance fees payable under 310 CMR 4.00

5

(e.g., no annual compliance and assurance fee is due for Response Action Outcome Statements submitted to the Department within 120 days of the initial date of release notification).

You must employ or engage a Licensed Site Professional to manage, supervise or actually perform the necessary response actions at this site.  You may obtain a list of the names and addresses of these licensed professionals from the Board of Registration of Hazardous Waste Site Cleanup Professionals at (617) 556-1145.

The Department must be notified, verbally and within the applicable timeline, of any 2 or 72 hour conditions which are determined to exist at the site as described at 310 CMR 40.0310.

The Department would like to discuss this matter with you at a meeting scheduled to be held at the Department's Southeast Regional Office on Thursday, December 21, 1995 beginning at 10:00 am.  Please have a representative contact the Department to confirm your attendance.

If you have any further questions, please contact Kevin Kiernan, Esq. at the letterhead address or at (508) 946-2814 or Leonard Pinaud at (508) 946-2859.  All future communications regarding the site should reference the following Release Tracking Number: BWSC #4-11812.

Very truly yours,

George Crombie
Regional Director

GC/KK/dc

CERTIFIED MAIL # Z 311 198 807
RETURN RECEIPT REQUESTED

Attachments: Release Notification Form; BWSC-103 and Instructions
             Summary of Liability under M.G.L. c21E

cc:  Board of Selectmen
     Town Hall
     Sandwich, MA 02563

     Ms. Joanne Miller Buntich
     Sandwich Planning Board
     88 Boardley Road
     Sandwich, MA  02563

r

6

Fire Department
Rte 6A
Sandwich, MA   02563

Board of Health
Town Hall
Sandwich, MA   02563

Mr. Walter T. Fagnant
Water Commissioner
Sandwich Water District
72 Tupper Road, Box 600
Sandwich, MA   02563

DEP - SERO - OPERATIONS
ATTN: Andrea Papadopoulos, Deputy Regional Director
      Len Pinaud
      Lynne Doty
      Kevin Kiernan

DEP - BWSC - SERO
Data Entry

O

SUMMARY OF LIABILITY OKDER CHAPTER 2IE

As stated in the Notice of Responsibility accompanying this summary, the Department has reason to believe that you are a Potentially Responsible Party (nPRP") with potential liability under M.G.L. c. 2IE, section 5, for response action costs and damages to natural resources caused by the release and/or threat of release.  The Department has identified you as a PRP because it believes you fall within one or more of the following categories of persons made potentially liable by subsection 5(a):

- any current owner or operator of a site from or at which there is or has been a release or threat of release of oil and/or hazardous material;

- any person who owned or operated a site at the time hazardous material was stored or disposed of;

- any person who arranged for the transport, disposal, storage or treatment of hazardous material to or at a site;

- any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release or threat of release of such material; and

- any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material at a site.

For purposes of the MCP, you are considered a Responsible Party ("RP") with actual liability under Chapter 2IE if you fall within one of these categories unless you (1) are entitled to a defense under section 5 or other applicable law, and (2) have reasonably incurred cleanup costs in an amount equal to or greater than any applicable cap on liability under subsection 5(d).

This liability is "strict," meaning it is not based on fault, but solely on your status as an owner, operator, generator, transporter or disposer.  It is also joint and several, meaning that each person who falls within one of these categories may be held liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

Section 5 provides a few narrowly drawn defenses to liability, including a defense for releases and damages caused by an act of God, an act of war or an act by a third party other than an employee, agent or person with whom the party has a contractual relationship (see subsection 5(c)); a defense for certain owners of residential property at which the owner maintains a permanent residence (see subsection 5(h)); and a defense for certain public utilities and agencies of the

Commonwealth which own a right-of-way that is a site (see subsection 5(j)).

You may voluntarily undertake response actions under the MCP without having your liability under Chapter 21E formally adjudicated by the Department.  If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, the Department is authorized by Chapter 21E to perform the necessary work.

By taking the necessary response actions, you can avoid liability for response action costs incurred by the Department in performing these actions.  If you are an RP and you fail to perform necessary response actions at the site, you may be held liable for up to three (3) times all response action costs incurred by the Department and sanctions may be imposed on you for failure to perform response actions required by the MCP.

Response action costs include, without limitation, the cost of direct hours spent by Department employees arranging for response actions or overseeing work performed by persons other than the Department or its contractors, expenses incurred by the Department in support of those direct hours, and payments to the Department's contractors (for more detail on cost liability, see 310 CMR 40.1200:  Cost Recovery).  The Department may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually.

Any liability to the Commonwealth under Chapter 21E constitutes a debt to the Commonwealth.  To secure payment of this debt, the Department may place liens on all of your property in the Commonwealth under M.G.L. c. 21E, section 13.  To recover this debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against you.

In addition to your potential liability for response action costs and damages to natural resources caused by the release, civil and criminal liability may also be imposed by a court of competent jurisdiction under M.G.L. c. 21E, section 11, and civil administrative penalties may be assessed by the Department under M.G.L. c. 21A, section 16, for each violation of Chapter 21E, the MCP or any order, permit or approval issued thereunder.

If you are an RP and you have reason to believe that your performance of the necessary response actions is beyond your technical, financial or legal ability, you should promptly notify the Department in writing of your inability in accordance with Chapter 21E, subsection 5(e), and 310 CMR 40.0172.  If you assert and demonstrate in compliance therewith that performing or paying for such response action is beyond your ability, subsection 5(e) provides you with a limited defense to an action by the Commonwealth for recovery of two to three times the Department's response action costs and 310 CMR 40.0172 provides you with a limited defense to the Department's assessment of civil

administrative penalties*

F

**Samson**                                              *mmi*

<table>
<tr><td>Samson Plaza<br>Two West Second Street<br>Tulsa, Oklahoma 74103-3103<br>918/583-1791<br>Fax 918/591-1796</td><td>Writer's Direct Dial No.: (918) 591-1007<br>Legal Dept. Fax No.: (918) 591-1718</td></tr>
</table>

July 31, 1998

Attention: Legal Division
Grace Energy Corporation
501 Elm Street, Suite 410
Dallas, Texas 75202-3333

RE:   STOCK PURCHASE AGREEMENT DATED DECEMBER 30,
      1992 BY AND BETWEEN GRACE ENERGY CORPORATION
      AND SAMSON INVESTMENT COMPANY (the "AGREEMENT")

Dear Sir/Madam:

      This is to advise you of a Claim pursuant to the terms of the Agreement. Said Claim is in the nature of a lawsuit styled Youpee. et al. vs. Murphy Oil USA. Inc., et al., Montana First Judicial District Court, Louis and Clark County, Cause No. DV-98-9800145. The specifics of this Claim are more particularly set forth in the letter from Murphy Exploration & Production Company ("Murphy"), with the Petition attached, all of which is enclosed herewith. Based upon the enclosed letter, it is alleged that the oil and gas properties giving rise to the lawsuit were once owned by Grace Petroleum Corporation but were sold to Murphy on or about July 1, 1986. We have contacted Murphy and have requested a copy of the Assignment and Bill of Sale referenced in Murphy's letter. We are also reviewing our internal files for any additional documentation or information relevant to this matter.

      Once you have had an opportunity to review this letter and the matters enclosed herewith, please advise Purchaser on how you wish to proceed in this matter. Unless otherwise specified, all capitalized terms used herein shall have the same meaning as ascribed to said terms in the Agreement. Please contact Michael Daniel or myself should you have any questions regarding the attached documentation supporting this Claim.

                              Very truly yours,
                              SAMSON INVESTMENT COMPANY

                              *Jai/A.* s\. v/<muu for Jack Canan
                              **Senior Vice President –
                              General Counsel**

JAC/kjb
Enclosure
Via Telecopy – (214) 742-1390 and Via Federal Express
xc:    **W.R. Grace & Co.
       One Town Center Road
       Boca Raton, Florida 33486-1010
       Attn:  Secretary
       Fax No. (407)362-1635**

E:\ACQ2\gr3061tr.doc

**MURPHY**
EXPLORATION &
PRODUCTION
COMPANY

200 PEACH STREET (71730)
P.O. BOX 7000
EL DORADO, ARKANSAS 71731-7000

LAW DEPARTMENT

TELEPHONE: (870) R64-6 485
FAX: (870) 864-6489

July 27, 1998

CERTIFIED MAIL - R.R.R.

•M.30®

Samson Resources
Samson Plaza
Two W. Second Street
Tulsa, OK 74103-3103

Re:    Youpee. et al. vs. Murphy, et al.

Gentlemen:

This letter is to advise you, as a former joint working interest owner in the Huber 1, 2, 3, 4A and 5 wells located in the East Poplar Unit, Roosevelt County, Montana, of the filing of the above-referenced lawsuit.  For your convenience and review, a copy of such suit is attached to this letter.  The complaint is relatively straightforward, and we direct your attention to the various claims set forth therein relating to the "damages" supposedly resulting from the activities and operations involving the Unit.  Because the alleged wrongful actions involve past, as well as current operations, your prior ownership interests in the Huber Nos. 1, 2, 3, 4A and 5 wells may be relevant to the issues of liability and damages, if plaintiffs are successful in their suit.

According to the Assignment and Bill of Sale executed by Grace Petroleum Corporation, "Assignor shall remain responsible . . . for any liabilities with respect to the wells . . .", arising from events occurring prior to July 1, 1986.

Should you have any questions about this lawsuit, or any questions resulting from this notice to you, please feel free to contact the undersigned.

Very truly yours,

James E. Baine

JEB:rmn

Attachment

01

Richard J. Dolan
Robert ·K. Baldwin
GOETZ, MADDEN & DUNN, P.C.
P.O. Box 428
Bozeman, MT 59771-0428
(406) 587-0618



ATTORNEYS FOR PLAINTIFFS


MONTANA FIRST JUDICIAL DISTRICT COURT, LEWIS & CLARK COUNTY

* * * * *       ADV- 9800145

CARY G. YOUPEE; D. DWIGHT YOUPEE;       Cause No. DV-98-
JOSI YOUPEE; RENE MARTELL; MARVIN
K. YOUPEE, SR., individually and
as representative and next friend
of MARVIN YOUPEE, JR., WILLIAM YOUPEE III,
IRIS YOUPEE, and BRITTANY YOUPEE;
EUGENE ABBOTT;  MARGARET ABBOTT;
CHARLES FOUR BEAR, individually
and as representative and next friend                    COMPLAINT
of JORAY FOUR BEAR, JONATHON LITTLE
WHIRLWIND, AVA LEE LITTLE WHIRLWIND
and CHARLES FOUR BEAR II; ANNA FOUR BEAR;
GEORGE F. RICKER, SR.;  HELEN RICKER;
GEORGE F. RICKER, JR., individually
and as representative and next friend
of ERIN RICKER; WILLIAM T. RICKER;
ABIGAIL REDDOOR;  IRMA REDDOOR;  LAURA
BLEAZARD, individually and as
representative and next friend of DAVID
BLEAZARD;  ROSS BLEAZARD;  ERICA BLEAZARD;
TRIVIAN GRAINGER, individually and
as representative and next friend of
DANIEL GRAINGER and ADAM GRAINGER;  DAVID
GRAINGER;  DAWN GRAINGER;  DENISE GRAINGER,
individually and as representative and
next friend of JAY GRANDCHAMP and TINA
KOHL; DONNA BUCKLES-WHITMER; WARREN
WHITMER;  and ALLEN YOUPEE,

            Plaintiffs,

     v.

MURPHY OIL USA, INC.;  MURPHY EXPLORATION
& PRODUCTION COMPANY;, MESA PETROLEUM CO.;
and John Does 1 through 50,

            Defendants.

COMPLAINT    AND    DEMAND    FOR    JURY    TRIAL    -  Page  1

The Plaintiffs, for their Complaint, allege as follows:

1.   Plaintiffs are members of households in which one or more household member is or was an allottee, lessee, or owner in fee of certain lands in Roosevelt County, Montana, and on which groundwater has become polluted due to conduct of Defendants.   An "allottee" is a person who owns an allottment interest in Indian trust land, held in trust by the United States Government on behalf of the allottee.

2.   All of the Plaintiffs are Montana citizens and Montana residents residing in Roosevelt County, Montana, with the exception of Plaintiff Cary G. Youpee who is a Montana citizen residing in Lewis & Clark County, D. Dwight Youpee who is a California resident, William Youpee III and Iris Youpee who are South Dakota residents.

3.   Plaintiff Cary G. Youpee is an individual and a Montana citizen residing in Helena, Montana, and owns an allotment interest in certain lands in Roosevelt County, on which lies well M-22 shown on Exhibit A hereto.

4.   Plaintiff D. Dwight Youpee is an individual and a California citizen residing in California, and owns a fee interest in certain lands in Roosevelt County, on which lies well M-14 shown on Exhibit A hereto.

5.   Plaintiff Josi Youpee is an individual and a Montana citizen, and owns an allotment interest in certain lands in Roosevelt County, on which she resides with Plaintiff Rene Martell and Plaintiff Marvin Youpee, Jr., and on which lies well M-20 shown on Exhibit A hereto.

2

6.    Plaintiff Marvin K. Youpee, Sr., is an individual and a Montana citizen, and resided as lessee on certain lands in Roosevelt County, along with Plaintiffs Marvin Youpee, Jr., William Youpee III, Iris Youpee, and Brittany Youpee, and on which lies well M-15 shown on Exhibit A, hereto.  Plaintiffs Marvin Youpee, Jr. and Brittany Youpee are Montana citizens, and Plaintiffs William Youpee III and Iris Youpee, are South Dakota citizens.

7.    Plaintiff Eugene Joseph Abbott is an individual and a Montana citizen residing in Roosevelt County, Montana, on land in which he holds an allotment interest and on which lies well M-2 shown on Exhibit A hereto. Margaret Abbott is an individual and a Montana citizen on those same lands with Eugene Joseph Abbott.

8.    Plaintiff Charles Four Bear, is an individual and a Montana citizen residing in Roosevelt County, Montana, and owns a leasehold interest since 1991 in certain lands in Roosevelt County, on which lies well M-24 shown on Exhibit A hereto, on which he resides with his spouse, Plaintiff Anna Four Bear, and his minor children, Plaintiffs Jonathon Little Whirlwind, Ava Lee Little Whirlwind, and Charles Four Bear II.

9.    Plaintiff George F. Ricker, Sr., is an individual and a Montana citizen residing in Roosevelt County, Montana, and owns a leasehold interest since 1971 in certain lands in Roosevelt County, on which lies well M-25 shown on Exhibit A hereto, on which he resides with Plaintiffs Helen Ricker and Erin Ricker.

10.    Plaintiff George F. Ricker, Jr., is an individual and a Montana citizen residing in Roosevelt County, Montana, and resided at some times relevant hereto on lands in Roosevelt County, on

3

which lies well M-25 shown on Exhibit A hereto.

11. Plaintiff William T. Ricker is an individual and a Montana citizen residing in Roosevelt County, Montana, and resided at some times relevant hereto on lands in Roosevelt County, on which lies well M-25 shown on Exhibit A hereto.

12. Plaintiff Abigail Reddoor, is an individual and Montana citizen residing in Roosevelt County, Montana, and owns an allotment interest in certain lands in Roosevelt County, on which lies well M-18 shown on Exhibit A hereto, and on which she resided and resides at some times relevant hereto.

13. Plaintiff Irma Reddoor is an individual and a Montana citizen residing in Roosevelt County, Montana, and owns an allotment interest in certain lands in Roosevelt County, on which lies well M-27 shown on Exhibit A hereto, and on which she resided at some times relevant hereto.

14. Plaintiff Laura Bleazard owns a fee interest in certain lands in Roosevelt County and on which lies well M-32 shown on Exhibit A hereto, and resides on said property along with Plaintiffs Ross Bleazard, Erica Bleazard, and David Bleazard.

15. Plaintiff Trivian Grainger is an individual and a Montana citizen residing on certain lands in Roosevelt County, Montana, along with Plaintiffs David Grainger, Dawn Grainger, Daniel Grainger, and Adam Grainger, and in which Plaintiff Trivian Grainger owns an allotment interest, and on which lies well M-38 shown on Exhibit A hereto.

16. Plaintiff Denise Grainger is an individual and a Montana citizen residing in Roosevelt County, Montana, along with

4

Plaintiffs Jay Grandchamp and Tina Kohl, on certain lands in Roosevelt County in which Plaintiff Trivian Grainger owns an allotment interest, and on which lies well M-36 shown on Exhibit A hereto.

17.  Plaintiff Donna Buckles-Whitmer is an individual and a Montana citizen residing in Roosevelt County, Montana, along with Plaintiff Warren Whitmer, on certain lands in which Plaintiff Donna Buckles-Whitmer owns a fee interest and on which lies a water well located in the SE 1/4 of the SE 1/4 of Section 8, Township 38, Range 51 East.

18.  Plaintiff Allen F. Youpee is an individual and a Montana citizen residing in Roosevelt County, Montana, and owns an allotment interest since 1991 in certain lands in Roosevelt County, on which lies a water well located in the NW 1/4 of the SW 1/4 of Section 33, Township 38, Range 51 East. ·

19.  Defendant Murphy Oil USA, Inc. ("Murphy Oil") is a Delaware corporation registered to do business in Montana, with its principal place of business in El Dorado, Arkansas.  At times herein mentioned, Murphy Oil was engaged in exploration for oil, the drilling of oil wells, and the production of oil therefrom in the State of Montana, and in the County of Roosevelt.

20.  Defendant Murphy Exploration & Production Company ("Murphy Exploration") is a Delaware corporation registered to do business in Montana, with its principal place of business in El Dorado, Arkansas.  At times herein mentioned, Murphy Exploration was engaged in exploration for oil, the drilling of oil wells, and the production of oil therefrom in the State of Montana, and in the

5

County of Roosevelt.

21. Defendant Mesa Petroleum Co.("Mesa"), is a Delaware corporation, no longer registered to do business in Montana, with principal place of business in Texas. At times herein mentioned, Mesa was engaged in exploration for oil, the drilling of oil wells, and the production of oil therefrom in the State of Montana, and in the County of Roosevelt.

22. Defendants John Does 1 through 50 are persons (either individuals, corporations, partnerships, or some other entity), whose identities are currently unknown to Plaintiffs, but who are, or have been, involved in the exploration for oil, the drilling of oil wells, or the production of oil therefrom in the State of Montana, and in the County of Roosevelt, as is alleged herein, and by reason of such activities are liable to Plaintiffs.

23. This court has subject matter jurisdiction over this dispute.

24. At various times, up to and including the present, Defendants have: drilled oil wells; installed, operated and maintained oil pipelines; installed, operated and maintained tanks for the collection of oil and other fluids recovered from producing oil wells; operated plants designed to remove salt water from oil produced; and installed, operated and maintained pipelines to convey salt water brine to salt water wells and reinject the same into the sub-surface strata. Alternatively, upon information and belief, some Defendants are the successors in interest to others who have engaged in such activities, and as successors are liable to Plaintiffs as alleged herein.

6

25.  Salt water or other foreign substances have escaped from Defendants7 pipelines, pits, wells and/or other devices under the control of Defendants and have percolated into the groundwater under Plaintiffs' lands.

26.  Before said salt water or other foreign substances escaped and percolated into the groundwater under Plaintiffs' lands, there were, under the surface of Plaintiffs' lands, aquifers of good and sufficient water which could be used for drinking, stock and irrigation water.

27.  As a result of the escaping salt water or other foreign substances into the ground water under Plaintiffs' lands, and the percolation of same into the soils underlying Plaintiffs' surface, the percolating waters and aquifers underlying Plaintiffs' premises became polluted and contaminated and unfit for human or animal consumption and unfit for irrigation, thereby destroying the value and utility of Plaintiffs' ground water and Plaintiffs' wells.

28.  Said leaking salt water or other foreign substances continue to pollute and contaminate the wells and ground waters of Plaintiffs' lands and render them unfit for use and/or human or animal consumption or irrigation.

29.  As a direct and proximate result of the above complained of salt water or other foreign substances leaking into the wells and ground water of Plaintiffs' premises, Plaintiffs have suffered, and continue to suffer harm, inconvenience and damages, including, but not limited to: (1) loss of the underground water aquifers for domestic and other purposes? (2) the loss of the ability to use the lands for certain purposes such as agricultural.  These damages

7

have resulted in diminution in the value of Plaintiffs' lands; increased expenses; and mental and emotional distress.

COUNT ONE (NEGLIGENCE)

30. Plaintiffs reallege Paragraphs 1-28 as if fully set forth under this Count.

31. Defendants have carried on their operations in a negligent manner and their negligence has proximately caused the damages to Plaintiffs as complained of in the previous paragraphs.

COUNT TWO (NEGLIGENCE - RES IPSA LOQUITUR)

32. Plaintiffs reallege Paragraphs 1-30 as if fully set forth under this Count.

33. Defendants have carried on their operations in a negligent manner and their negligence has proximately caused the damages to Plaintiffs as complained of in the previous paragraphs. Further, the negligence of said Defendants, although performed through means and actions or admissions at this time unknown to Plaintiffs, may be inferred or presumed by the doctrine of Res Ipsa Loquitur from the facts that (1) such escape of salt water or other foreign substances would not ordinarily be expected to occur absent someone's negligence; (2) the instrumentalities [i.e., wells, tanks, holding ponds and pipelines] through which salt water and hydrocarbons were stored and transferred were at all relevant times herein within the exclusive control of the Defendants or their predecessors for whose negligence Defendants are responsible; and (3) said escape of salt water or other foreign substances was not the result of any conduct on the part of Plaintiffs.

8

## COUNT THREE (NUISANCE)

34. Plaintiffs reallege Paragraphs 1-32 as if fully set forth under this Count.

35. The escaping salt water or other foreign substances from the ponds, tanks and/or pipelines of Defendants which contaminated and polluted and continue to contaminate and pollute the wells, groundwater and lands of Plaintiffs was and is a nuisance.

36. Such nuisance is a private nuisance. In the alternative, it is a public nuisance which specially injurious to Plaintiffs.

37. Said nuisance is a continuing temporary nuisance.

38. The Defendants are strictly liable for the damages resulting from the nuisance, without regard to their negligence. Alternatively, the Defendants were negligent as set forth above, and thus are liable for all damages caused by them.

39. Plaintiffs are entitled to an injunction, requiring defendants to abate the nuisance they created by: (1) ceasing from depositing or allowing to be deposited additional salt water or other foreign substances in the underground aquifer; and (2) cleaning up the contamination which already exists in the aquifer, to restore it to its previous condition.

40. Plaintiffs are entitled to an award of damages, including: (1) compensatory damages for harm already suffered; (2) prospective compensatory damages for harm which will be suffered in the future; and (3) as alleged below, punitive damages.

## COUNT FOUR (STRICT LIABILITY)

41. Plaintiffs reallege Paragraphs 1-39 as if fully set forth under this Count.

9

42.   By storing and transporting large volumes of salt water or other foreign substances, through the pipelines and the holding ponds and tanks within their control, and by permitting such salt water or other foreign substances to escape into the groundwater and proximately cause the injury and damage to Plaintiffs as hereinabove complained of, Defendants have rendered themselves strictly liable to Plaintiffs in the sums hereinbelow set forth.

COUNT FIVE (PUNITIVE DAMAGES)

43.   Plaintiffs reallege Paragraphs 1-41 as if fully set forth under this Count.

44.   Defendants, in polluting and contaminating Plaintiffs' lands, groundwater and domestic wells, have acted with malice in that they had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the Plaintiffs and: either deliberately proceeded to act in- conscious or intentional disregard of the high probability of injury to the Plaintiffs; or deliberately proceeded to act with indifference to the high probability of injury to the Plaintiffs.

WHEREFORE: Plaintiffs pray for judgment against Defendants as follows:

1.   Compensatory damages, in an amount to be proved at trial;

2.   Punitive damages, in an amount to be fixed by the jury;

3.   That the Court enter an order abating or enjoining Defendants from leaking, spilling or otherwise allowing its salt water or other foreign substances to escape into Plaintiffs' lands or into Plaintiffs' groundwater;

4.   That the Court require Defendants to abate the nuisance

10

by cleaning up the aquifer under Plaintiffs lands; and

     5.   For such other and further relief to which it appears Plaintiffs are entitled or which is just and equitable.

     DATED this *2yk* day of March; 1998.

```
                              Richard J. Dolan
                              GOETZ, MADDEN & DUNN, P.C.
                              35 North Grand
                              Bozeman, MT 59715
                              (406)>j&i#-06T8

                              By:
                                  Richard J. DoPcin
                                  ATTORNEYS FOK PLAINTIFFS
```

k\poplar.rjd\poplar.cpl

11

## Uround-water contamination in tne East Koplar Oll field



| Well number | Well owner | Chloride concentration (in mg/L) * | Year sampled | Well number | Well owner | Chloride concentration (in mg/L) * | Year sampled |
|---|---|---|---|---|---|---|---|
| M-1 | Zimmerman, Bill | 36 | 1991 | M-30 | Trotlier, Tint | 22 | 1992 |
| M-2 | Abbotts, Marge | 420 | 1990 | M-31 | Trotlier, Tim | 32,000 | 1993 |
| M-3 | Kim, Robert | 260 | 1990 | M-32 | Bleazard, Ross and Laura | 330 | 1993 |
| M-13 | Kim, Michael | 2,800 | 1990 | M-33 | Loegering, Del | 7.3 | 1990 |
| M-14 | Youpee, Josie | 430 | 1991 | M-36 | Grandchamp. Doug and Denise | 40 | 1990 |
| | | | | | | | |
| M-15 | Youpee. Marvin and Stephanie | 760 | 1991 | M-38 | Grainger. Trivian | 34 | 1989 |
| M-16 | Come. Diane | 200 | 1990 | M-52 | KoW. Cheryl and Daniel | 8.8 | 1991 |
| M-17 | Come. Diane | 20 | 1990 | M-54 | Grainger, Iva | 110 | 1990 |
| M-18 | Reddoor, Abigail | 3.700 | 1991 | W-1 | Lien. Bud | 13 | 1991 |
| M-20 | Youpee. William | 2.300 | 1990 | W-3 | Lien. Bud | 13 | 1991 |
| | | | | | | | |
| M-22 | Youpee. William | 3.100 | 1990 | W-8 | Lien. Bud | 32 | 1991 |
| M-24 | Fourbear. Charles | 1,400 | 1991 | W-9 | Lien. Bud | 1,100 | 1989 |
| M-25 | Ricker. George | 1,100 | 1990 | | | | |
| M-27 | Reddoor, Irma | 1,700 | 1990 | | | | |
| M-28 | Lockman, Curly | 7,900 | 1991 | | | | |

* The Lf.S. Environmental Protection Agency has established that the Maximum Secondary Contaminant Level for chloride Is 250 mg/L.