**EXHIBIT 8**

Casmalia JDA

## PAYMENT OF SETTLEMENT, JOINT DEFENSE, AND CONFIDENTIALITY AGREEMENT

This Payment of Settlement, Joint Defense, and Confidentiality Agreement (this "Agreement") is made as of the Effective Date of this Agreement by and between Samson Hydrocarbons Company (formerly known as Grace Petroleum Corporation and herein "SHC") and Samson Investment Company ("Samson") on the one hand and Grace Energy Corporation and W.R. Grace & Co. – Conn. (collectively, "Grace") on the other hand (individually either Grace, Samson or SHC may be referred to herein as a "Party" and together Grace, Samson and SHC may be referred to herein as "the Parties"). This Agreement relates to the Samson Hydrocarbons Company share of alleged liability for materials disposed of at the Casmalia Disposal Site in Santa Barbara, California ("Casmalia") (the "SHC Share"). Grace, Samson and SHC acknowledge that their interests are the same with respect to negotiating a resolution of the SHC Share with the United States of America ("United States"), the State of California ("State"), the Casmalia Resources Site Steering Committee and its individual members (collectively, "CRSSC"), and certain other large quantity generators (the "Tier II PRP Group"), which are also alleged to have liability for disposal of materials at Casmalia.

Grace, Samson, and SHC, therefore, agree as follows:

1. **Joining Tier II PRP Group:** Within three (3) days after the execution of this Agreement, Grace shall rejoin and SHC shall join the Tier II PRP Group, as evidenced by SHC signing and Grace reaffirming in writing the Tier II Joint Defense Confidentiality Agreement, for the purpose of jointly participating in any settlement between the United States, the State, the CRSSC and/or the Tier II PRP Group and jointly negotiating the SHC Share of any Tier II PRP Group settlement. Grace and SHC acknowledge that they each shall be participating in the Tier II PRP Group as Potentially Responsible Parties ("PRPs"). As participants in the Tier II PRP Group, Grace and SHC have the common defense interest of negotiating to obtain the most favorable Tier II PRP Group settlement with the United States, the State and/or the CRSSC. Grace and SHC also have the common defense interest of negotiating the most favorable settlement for the SHC Share within any Tier II PRP Group settlement. Grace and SHC further agree that neither of them will withdraw from the Tier II PRP Group without the express, written permission of the other.

2. **Agreement to Act in Best Interests of Both Parties.** The Parties acknowledge that they are required by this Agreement to act jointly and with a common interest with respect to the SHC Share; provided, however, that this paragraph shall not restrict the filing of any suit contemplated under paragraph 12 of this Agreement.

#694699 v15

3. **Information Sharing:** Upon SHC's execution and Grace's reaffirming in writing that it is bound by the Tier II Joint Defense and Confidentiality Agreement, Grace and SHC shall share with each other their analysis and investigation into the facts and law governing the SHC Share, although Grace and SHC shall not be required to share any analysis or investigation regarding the alleged liability of either of them to the other or any alleged indemnity obligation of either of them to the other. Grace and SHC shall regularly confer regarding negotiating strategy and shall establish a working relationship that provides for an open exchange of information between them and enables them to present a common response and/or unified front to the United States, the State, the CRSSC, and the Tier II PRP Group.

4. **Confidentiality:** Grace and SHC shall protect from disclosure to any person, including Samson, all information and documents shared between them to the greatest extent permitted by law. Grace and SHC may jointly decide to share certain information with other Tier II PRP Group members if Grace and SHC determine that such information will aid in the joint defense efforts of the Tier II PRP Group. Grace and SHC agree that they do not have the right to waive the joint defense privilege or any other applicable privilege held by the other.

5. **Payment of Legal Fees Going Forward:** Grace, Samson and SHC shall each pay their own legal fees and expenses in connection with all of their obligations under this Agreement, including Grace and SHC's participation in the Tier II PRP Group. However, nothing in this Agreement shall prevent any Party from seeking recovery from the other of legal fees and expenses incurred in performing its respective obligations under this Agreement, including participation in the Tier II PRP Group.

6. **Payment of Ongoing Tier II PRP Group Expenses.** Samson and Grace shall each pay 50% of the SHC Share of any expenses or assessments required for SHC and Grace to remain members in good standing of the Tier II PRP Group unless or until one or both may withdraw from the Tier II PRP Group as provided in Paragraph 1.

7. **Payment of Settlement:** Except as provided in Paragraph 8, Grace shall pay 50% of the SHC Share of any Tier II PRP Group settlement entered into with the United States, the State, and/or the CRSSC (the "Grace 50% Payment"). Except as provided in Paragraph 9, Samson shall pay 50% of the SHC Share of any Tier II PRP Group settlement entered into with the United States, the State, and/or the CRSSC (the Samson 50% Payment). Payment of the Grace 50% Payment and the Samson 50% Payment shall be made at the times and in the manner provided in: (i) the Consent Decree, other Order, and/or settlement agreement entered into with the United States, the State and/or the CRSSC, and signed by SHC and Grace; and/or (ii) any other agreement providing for work at Casmalia or payment of monies to be used to fund work at Casmalia and signed by SHC and Grace. Grace and Samson acknowledge that there may be multiple

payments contemplated by this paragraph and that they are each bound to pay 50% of the SHC Share of those payments (sometimes referred to as "Interim 50% Payments").

8. **Offset for Past Fees and Expenses (Grace):** Grace shall receive a partial offset to the Grace 50% Payment equal to 50% of the approximate amount of fees and expenses Grace incurred from March 2000 to November 2000 in connection with its Tier II PRP Group activities in the total amount of $87,500.00.

9. **Increase for Past Fees and Expenses (Samson):** Samson shall increase its 50% Payment in the total amount of $87,500.00 as partial payment to Grace for the fees and expenses Grace incurred in connection with past Tier II Group activities.

10. **Attorney-Client Relationship/Conflict of Interest:** Nothing in this Agreement shall be deemed to create an attorney client relationship between Grace and Locke Liddell & Sapp, or between Samson and SHC and Holme Roberts & Owen or Nelson, Mullins, Riley & Scarborough. Signing this Agreement or participation in the obligations imposed by this Agreement shall not in any way preclude Locke Liddell & Sapp from representing Samson or SHC in a manner that is adverse or may be construed as adverse to Grace. Grace shall not use the existence of this Agreement, the work performed pursuant to this Agreement, or the information exchanged as a result of this Agreement as a basis for seeking to disqualify Locke Liddell & Sapp as counsel for Samson or SHC. Grace waives any claims of conflict of interest relating to the Casmalia site or any other matter that might arise by virtue of participation in or complying with the obligations of this Agreement. Likewise, signing this Agreement or participation in the obligations imposed by this Agreement shall not in any way preclude Holme Roberts & Owen or Nelson, Mullins, Riley & Scarborough from representing Grace in a manner that is adverse or that may be construed as adverse to Samson or SHC. Samson and SHC shall not use the existence of this Agreement, the work performed pursuant to this Agreement, or the information exchanged as a result of this Agreement as a basis for seeking to disqualify Holme Roberts & Owen or or Nelson, Mullins, Riley & Scarborough as counsel for Grace. Samson and SHC waive any claims of conflict of interest relating to the Casmalia site or any other matter that might arise by virtue of participation in or complying with the obligations of this Agreement.

11. **Denial of Liability:** Notwithstanding any provision of this Agreement, Grace, Samson and SHC acknowledge that they disagree about whether, pursuant to the terms of that certain GPC Stock Purchase Agreement dated December 30, 1992, Grace, Samson or SHC should bear the ultimate liability for the SHC Share and about whether one Party is entitled to indemnity, contribution or other recovery from the other Party. Therefore, although they are entering into this Agreement jointly in an attempt to obtain a favorable resolution of the SHC Share, nothing in this Agreement shall be construed as resolving the disagreements between Grace, Samson or SHC regarding whether Grace,

Samson or SHC is ultimately liable for the SHC Share and/or whether there is a valid indemnity or other claim at law or equity that may cover any such liability. Grace, Samson and SHC each deny any and all liability at Casmalia, each deny liability for the SHC Share, and each deny any indemnity or indemnification obligation, whether express or implied and whether based in law or in equity, relating to any liability at Casmalia or the SHC Share. Nothing in this Agreement shall constitute or be used as an admission of law or fact by Grace, Samson or SHC or by any other person not a party to this Agreement. This Agreement, the terms of this Agreement and/or the facts that Grace, Samson and SHC entered into this Agreement or paid monies pursuant to this Agreement shall not be used nor be admissible as evidence in any proceeding, whether legal, equitable, administrative, or of any type, other than an action to enforce this Agreement or to recover fees, expenses or other costs expended as a result of this Agreement. The Parties further agree that a Party's participation in any settlement with the United States, the State, the CRSSC, or the Tier II PRP Group pertaining to the SHC Share or a Party's payment of any amounts due under this Agreement shall not be deemed a waiver of any Party's rights or claims against the other, and shall not be used as evidence to defeat or reduce any recovery available pursuant to such rights or claims.

12. **Reservation of Rights:** Grace, Samson and SHC each expressly reserve their rights to pursue the other Party for any claims related to Casmalia (including but not limited to those pertaining to liability for the SHC Share), for recovery of any settlement, fees or expenses paid as a result of this Agreement, for any claims arising out of the GPC Stock Purchase Agreement, and/or for any other claims arising out of any other agreement between the Parties or any actions of the Parties. Neither the existence of this Agreement nor anything in this Agreement shall be deemed a waiver of either Party's right to pursue such claims against the other. Nor is the existence of this Agreement a waiver of either Grace, Samson, or SHC's right to contend that the other Party is fully obligated for all payments, fees and expenses associated with this Agreement or with Casmalia generally.

13. **Tolling Agreement:** Grace, Samson and SHC agree that all statutes of limitations applicable to any statutory or common law claim or any rights, claims, causes of actions, counterclaims, crossclaims, and defenses regarding, based upon, or arising out of the GPC Stock Purchase Agreement, Casmalia, or any other agreement between the parties that Grace could assert against Samson or SHC, or that Samson or SHC could assert against Grace as of the Effective Date of this Agreement shall be tolled for two (2) years from the Effective Date, and this tolling period shall be excluded from all computations of any applicable period of limitations. This tolling agreement does not revive any claims that were already barred by the statute of limitations as of the Effective Date of this Agreement.

14. **Waiver of Claims Regarding Samson's Negotiations After Effective Date of this Agreement:** Except for claims arising from a breach of this Agreement,

Grace agrees to forever waive any claims against Samson or SHC to the extent such claims arise during the period of time from the Effective Date of this Agreement until it terminates relating to the manner in which Samson or SHC pursues settlement with the United States, the State, the CRSSC or other Tier II PRP Group members.

15. **Waiver of Claims Regarding Grace's Negotiations After Effective Date of this Agreement**: Except for claims arising from a breach of this Agreement, Samson agrees to forever waive any claims against Grace to the extent such claims arise during the period of time from the Effective Date of this Agreement until it terminates relating to the manner in which Grace pursues settlement with the United States, the State, the CRSSC or other Tier II PRP Group members.

16. **Preservation of Claims Arising Prior to Effective Date of this Agreement**: Nothing contained in this Agreement shall be construed as a waiver by Grace, Samson or SHC of any claims any of them may have against the other arising prior to the Effective Date of this Agreement, and such claims are expressly reserved by Grace, Samson and SHC.

17. **Termination**: This Agreement shall terminate upon Grace paying the entirety of the Grace 50% Payment, including all Interim 50% Payments, and Samson paying the entirety of the Samson 50% Payment, including all Interim 50% Payments. Paragraphs 4, 10, 11, 12,13, 14 and 15 shall survive the termination of this Agreement regardless of the reasons for termination.

18. **Governing Law**: This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, regardless of the laws that might otherwise govern under applicable principles of conflicts of law.

19. **Headings**: The Headings contained in this Agreement are for convenient reference only, and shall not in any way affect the meaning or interpretation of this Agreement.

20. **Counterparts**: This Agreement may be executed in multiple counterparts (including counterparts executed by only Grace, Samson or SHC), each of which shall be an original, but all of which shall constitute a single document.

21. **Binding Agreement; Assignment**: This Agreement shall be binding on and inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but this Agreement shall not be assignable by either Party without the prior written consent of the other Party.

22. **Amendment**: This Agreement may be amended only in writing executed by the Parties hereto which specifically states that it amends this Agreement.

23. **Authority:** Each of the undersigned hereby represents and warrants that he or she is authorized to execute this Agreement on behalf of the respective parties to this Agreement. Grace, Samson and SHC represent and warrant to the other that they have adequate financial means to perform their obligations under this Agreement.

24  **Drafting:** Grace, Samson and SHC jointly drafted this Agreement, and Grace, Samson, and SHC have obtained legal advice and assistance prior to entering into this Agreement.

25. **Severability:** If any of the provisions of this Agreement are deemed invalid or unenforceable, the court having jurisdiction shall have the power to modify such provision to render it valid and enforceable, and in any case the balance of this Agreement shall remain in full force and effect.

26. **Effective Date:** The Effective Date of this Agreement is January 31, 2001.

**W.R. Grace & Co. – Conn.**

By: _____
William M. Corcoran
Vice President
Public and Regulatory Affairs

Date: _____

**Samson Hydrocarbons Company**

By: _____[signature]_____
C. Philip Tholen,
as Attorney in Fact

Date: 1/29/01

23. **Authority:** Each of the undersigned hereby represents and warrants that he or she is authorized to execute this Agreement on behalf of the respective parties to this Agreement. Grace, Samson and SHC represent and warrant to the other that they have adequate financial means to perform their obligations under this Agreement.

24. **Drafting:** Grace, Samson and SHC jointly drafted this Agreement, and Grace, Samson, and SHC have obtained legal advice and assistance prior to entering into this Agreement.

25. **Severability:** If any of the provisions of this Agreement are deemed invalid or unenforceable, the court having jurisdiction shall have the power to modify such provision to render it valid and enforceable, and in any case the balance of this Agreement shall remain in full force and effect.

26. **Effective Date:** The Effective Date of this Agreement is January 31, 2001.

W.R. Grace & Co. – Conn.

By: _____
William M. Corcoran
Vice President
Public and Regulatory Affairs

Date: 3/02/01

Samson Hydrocarbons Company

By: _____
C. Philip Tholen,
as Attorney in Fact

Date:_____

**Grace Energy Corporation**

By: /s/ [signature]

Date: 3/02/01


**Samson Investment Company**

By: _____
    Jack A. Canon,
    Senior Vice President and
    General Counsel

Date:_____

**Grace Energy Corporation**

By: _____

Date: _____

**Samson Investment Company**

By: _____
Jack A. Canon,
Senior Vice President and
General Counsel

Date:  2-28-01