<u>EXHIBIT 14</u>

**Defendants' Reply to Plaintiffs' Response to defendants' Joint Motion for Summary
Judgment and Brief in Support**

## IN THE DISTRICT COURT OF CANADIAN COUNTY
## STATE OF OKLAHOMA

FILED
SHARON DILL COURT CLERK
CANADIAN COUNTY OKLA.
MAY 1 5 2002
By _____

JACKIE EUGENE ELLISON, also known as )
GENE ELLISON, individually and as Trustee, and )
MARCIA ELLISON, an individual, )
)
        Plaintiffs, )
)
vs. ) Case No. CJ-99-151-01
)
FPC DISPOSAL, INC., )
)
        Defendants )
and )
)
AEI PRODUCTION CO., et al., )
)
        Additional Defendants. )

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS'
### JOINT MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Filed on behalf of the following party defendants:

MARATHON OIL COMPANY
EL PASO PRODUCTION COMPANY
PHILLIPS PETROLEUM COMPANY
DOMINION OKLAHOMA TEXAS EXPLORATION & PRODUCTION, INC.
KAISER-FRANCIS OIL COMPANY
SANGUINE, LTD.
ANSON CORPORATION
NATIONAL ENERGY GROUP, INC.
WARD PETROLEUM CORPORATION
BJ SERVICES COMPANY (formerly THE WESTERN COMPANY OF NORTH AMERICA)
SAMSON RESOURCES COMPANY
ROSEWOOD RESOURCES, INC.
UNIT DRILLING COMPANY AND UNIT PETROLEUM COMPANY
KERR-MCGEE CORPORATION
MARSHALL OIL CORPORATION
APACHE CORPORATION

May 15, 2002

{S069123;6}

## TABLE OF CONTENTS AND AUTHORITIES

Page

INTRODUCTION ..................................................................................................1

ARGUMENT AND AUTHORITIES.......................................................................2

    I.   THE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE
        EXISTENCE OF ANY MATERIAL FACT ISSUE.......................................2

        A.   The Plaintiffs have failed to present evidence to support
              their claims ..............................................................................2

        *Hervey v. Ward Real Estate Co.*, 1998 OK CIV APP 185,
           972 P.2d 42 ...........................................................................2

        *Loper v. Austin*, 1979 OK 84, 596 P.2d 544........................................3

        *Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548,
           91 L. Ed. 2d 265 (1986).........................................................3

        *Flanders v. Crane Co.*, 1984 OK 88, 693 P.2d 602 ..............................3

        *United States v. Hardage*, 733 F. Supp. 1424 (W.D. Okla. 1989) ............3

        *Martinez v. CO2 Services, Inc.*, 2001 WL 363282 (10th Cir. 2001).........3

        *Moore v. Texaco, Inc.*, 244 F.3d 1229 (10th Cir. 2001) ..........................3

        *Weigel v. Target Stores*, 122 F.3d 461 (7th Cir. 1997) ...........................3

        B.   The Plaintiffs have failed to demonstrate that the material
              facts offered by the Operators are in controversy ...................3

        *6816.5 Acres of Land, More or Less, in Rio Arriba County, State of N. M.
           v. United States*, 411 F.2d 834 (10th Cir. 1969) ................................5

        *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348
           (N.D. Ga. 2000) ....................................................................5

        *Leland v. Moran*, 100 F. Supp. 2d 140 (N.D.N.Y.)................................7

    II.   THE PLAINTIFFS' ARGUMENT THAT THE OPERATORS'
        CONDUCT CAN FORM THE BASIS OF THEIR NUISANCE
        CLAIM FAILS.........................................................................................8

        *Hinds v. Phillips Petroleum Co.*, 1979 OK 22, 591 P.2d 697 ..................8

III.  THE PLAINTIFFS' CLAIM THAT THE OPERATORS
      ARE LIABLE FOR THE ALLEGED TORTS OF FPC
      FAILS AS A MATTER OF LAW.................................................................9

      A.    The Operators were not the licensees of FPC .........................................9

*Brown v. Nicholson*, 1997 OK 32, 935 P.2d 319 .............................................9

*McKinney v. Harrington*, 1993 OK 88, 855 P.2d 602............................................10

*Brewer By and Through Brewer v. Independent School Dist. No. 1,*
      1993 OK 17, 848 P.2d 566.................................................................10

      B.    The Operators are not liable for the tortious acts of FPC
            because the two were independent contracting parties.........................*10*

*Miller v. Stellman Constr. Co.*, 1955 OK 113, 282 P.2d 740.................................10

*Midland Oil Co. v. Thigpen*, 4 F.2d 85 (8th Cir. 1924)............................................11

      C.    The Operators are not liable for the acts of FPC even
            if FPC was an independent contractor of the Operators.......................11

*Hudgens v. Cook Industries, Inc.*, 1973 OK 145, P.2d 813..................................11

*Burke v. Thomas*, 1957 OK 154, P.2d 1082 ..................................................11

            1.    FPC was at most an independent contractor of the
                  Operators.............................................................................11

*Lane-Hill v. Ruth*, 1995 OK CIV APP 155, 910 P.2d 360 ...................................11

*Conoco Inc. v. Oneok, Inc.*, 91 F.3d 1405 (10th Cir. 1996) ...............................11

*C&H Transp. Co. v. McLaughlin*, 1967 OK 163, 434 P.2d 229 ...........................11

*Dodd v. Rush*, 1965 OK 138, 406 P.3d 261 ...................................................11

            2.    The Operators did not owe a non-delegable duty to
                  the Plaintiffs........................................................................12

*Bouziden v. Alfalfa Elec. Coop, Inc.*, 2000 OK 50, 16 P.3d 450.................12,13,15

*O'Feery v. Smith*, 2001 OK CIV APP 142, 38 P.3d 242 ................................12,13

*Minnetonka Oil Co. v. Haviland*, 1916 OK 103, 155 P.217.................................13

*Shell v. Wilson*, 1935 OK 831, 65 P.2d 173 ........................................................13

*Hensarling v. Spectron, Inc.,* 1990 WL 369573
  Prod. Liab. Rep. (CC) 12,698 (D. Md. 1990) ................................................13

     3.  <u>The subject work was not inherently dangerous nor were</u>
  <u>the Drilling By Products ultra-hazardous giving rise to</u>
  <u>a non-delegable duty</u> ....................................................................14

*Jackson v. Standard Oil Co. of California,* 505 P.2d 139
  (Wash. Ct. App. 1973) ................................................................14

*Morales v. Davis Brothers Constr. Co., Inc.,* 647 So.2d 1302
  (La. Ct. App. 4 Cir. 1994) ..........................................................14

*Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.,*
  916 F.2D 1174 (7TH Cir. 1990) ..........................................15,16,17

*Richmond, Fredericksburg & Potomac Railway Co. v. Davis Indus., Inc.,*
  787 F. Supp. 572 (E.D. Va. 1992) ................................................15

*Splendorio v. Bilray Demolition Co., Inc.,* 682 A.2d 461
  (R.I. 1996) ................................................................................15

*City of Bloomington, Indiana v. Westinghouse Electric Corp.,*
  891 F.2d 611 (7th Cir. 1989) ..................................................15,16

*Ewell v. Petro Processors of Louisiana, Inc.* 364 S.2d 604 (La. 1978) ................16

*Schwartzman, Inc. v. General Electric Co.,* 848 F. Supp. 942
  (D. N.M. 1993) ........................................................................16

     4.  <u>Any non-delegable duty owed by the Operators to the Plaintiffs</u>
  <u>pertained only to the operation of their well sites</u> .......................17

*Stamford Energy Cos., Inc. v. The Corporation Com'n of the State of*
  *Oklahoma,* 1988 OK 25, 764 P.2d 880 .......................................17

*Mid-Continent Pipeline Co. v. Crauthers,* 1954 OK 61,
  267 P.2d 568 ............................................................................17

52 O.S. § 296 ................................................................................17

*Doddy v. Oxy USA, Inc.,* 101 F.3d 448 (5th Cir. 1996) .........................17

*Hagen v. Texaco Ref. & Mktg. Inc.,* 526 N.W.2d 531 (Iowa 1995) .....................17

*Ruminski v. Chester Township,* 1983 WL 6143 (Ohio Ct. App. 1983) .................17

*BP Explor. & Oil, Inc. (93-3310) v. United States E.P.A.,*
  66 F.3D 784 (6th Cir. 1995) ......................................................17

IV.  THE PLAINTIFFS DID NOT ESTABLISH A CAUSAL LINK
     BETWEEN THEIR INJURIES AND THE OPERATORS'
     CONDUCT .................................................................................18

     A.    Causation is a question of law because the Plaintiffs' evidence
           is insufficient to establish a causal connection between
           their injuries and the Operators' conduct ............................18

Lockhart v. Loosen, 1997 OK 103, 943 P.2d 1074 ...............................19

Pawnee Municipal Hospital v. Cunningham, 1999 OK Civ. App. 60,
     985 P.3d 189 ..............................................................................20

Young v. Travelers' Ins. Co., 68 F.2d 83 (10th Cir. 1933).....................20

United States v. 319.88 Acres of Land, 498 F. Supp. 763 (D. Nev. 1980)............20

OKLA. STAT. tit. 12, § 2402 .................................................................20

     B.    The Plaintiffs' purported reasonable inferences are in fact
           unreasonable and insufficient to establish a fact question
           on the claims at issue................................................................20

           1.    FPC's maintenance of two sets of logs does not give rise
                 to an inference that the Operators and FPC knew
                 dilution was illegal................................................................20

Hays v. Jackson Nat'l Life Ins. Co., 105 F.3d 583 (10th Cir. 1997) ....21

Matsushita elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
     475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 538 (1986)...................22

           2.    No reasonable inference can be made that the oil and gas
                 industry knew the subject pits would leak ....................22

Houston Oilers, Inc. v. Neely, 361 F.3d 36 (10th Cir. 1966) ...............22

Funnell v. Jones, 1985 OK 73, 737 P.2d 105........................................22

V.   THE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT
     THE OPERATORS HAVE VIOLATED ANY STATUTES
     OR OCC RULES ......................................................................23

Hickok v. G. D. Searle & Co., 496 F.2d 444 (10th Cir. 1974) ..............23

Stanolind Oil & Gas Co. v. Sellers, 174 F.2d 948 (10th Cir. 1949)......23

52 O.S. § 296 ......................................................................................24

*Stamford Energy Cos., Inc. v. The Corporation Com'n of the State
of Oklahoma,* 1988 OK 25, 764 P.2d 880.................................................24,25

*Larkins-Warr Trust v. Watchorn Petroleum Co.,* 1946 OK 84,
174 P.2d 589 ..........................................................................................24

*Gulf Pipe Line Co. of Oklahoma v. Alred,* 1938 OK 224,
77 P.2d 1155 ..........................................................................................24

*Pennsylvania Glass Sand Corp. of Okl. v. Ozment,* 1967 OK 195,
434 P.2d 893 ..........................................................................................24

*Warren Petroleum Corp. v. Helms,* 1952 OK 461, 252 P.2d 447 ..........................24

*Mansfield v. Circle K Corp.,* 1994 OK 80, 877 P.2d 1130 ....................................25

CONCLUSION..........................................................................................................25

## IN THE DISTRICT COURT OF CANADIAN COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| JACKIE EUGENE ELLISON, also known as GENE ELLISON, individually and as Trustee, and MARCIA ELLISON, an individual, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. CJ-99-151-01 |
| vs. | ) | |
| | ) | |
| FPC DISPOSAL, INC., | ) | |
| | ) | |
| Defendants | ) | |
| and | ) | |
| | ) | |
| AEI PRODUCTION CO., et al., | ) | |
| | ) | |
| Additional Defendants. | ) | |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

The Defendants (identified collectively as the "Operators" in the Joint Motion for Summary Judgment), submit the following Reply to the Response of Plaintiffs to the Joint Motion for Summary Judgment and Brief in Support ("Motion").

### INTRODUCTION

The Plaintiffs have asserted claims based on nuisance, negligence *per se* and trespass against the Operators for damages which have allegedly occurred on their property. However, in order to succeed on such claims, the Plaintiffs must establish some legal or causal link to the Plaintiffs' injuries for which the Operators can be held responsible. In their Response to the Operators' Motion ("Response"), the Plaintiffs have attempted to show this link by arguing (i) the existence of a non-delegable duty on the part of the Operators; (ii) that the Court can reasonably infer intentional wrongdoing on the part of the Operators; and (iii) that damage to the Plaintiffs' property would not have occurred but for the Operators' conduct. What the Plaintiffs

ignore is that all of the conduct which they claim injured their property was that of FPC. Nothing offered by the Plaintiffs is sufficient to refute this fundamental undisputed fact. In addition, Plaintiffs' argument is based on a flawed premise; i.e., that dilution of the Drilling By Products by FPC was illegal and that the Operators are liable therefor. The evidence provided by the Operators that the OCC knew of FPC's dilution practices and did not consider dilution improper stands unrefuted by the Plaintiffs. Whether or not FPC actually diluted the Drilling By Products to a level sufficient to meet the OCC regulation is not material to the Operators' Motion. There is no basis in the law for holding the Operators responsible for FPC's actions.

The undisputed facts show that the injury to the Plaintiffs' property, if any, was due to the conduct and operations of FPC after FPC assumed exclusive custody and control of the Drilling By Products from the Operators. The Plaintiffs have failed to show a duty owed by the Operators to them or that the Operators' conduct is causally linked to the Plaintiffs' injury. Summary judgment is therefore appropriate.

## ARGUMENT AND AUTHORITIES

### I.   THE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THE EXISTENCE OF ANY MATERIAL FACT ISSUE.

#### A.   The Plaintiffs have failed to present evidence to support their claims.

Throughout their Response, the Plaintiffs continually represent that they "will have evidence at trial" to establish a fact question relevant to their claims against the Operators. (See the Response, pp. 13, 14, 15 and 17). Unfortunately for the Plaintiffs, such representation is not sufficient to withstand a summary judgment motion. As the court in *Hervey v. Ward Real Estate Co.*, 1998 OK CIV APP 185, 972 P.2d 42, 44 [see tab 1][1] stated, "a party may not rely on the allegations of his pleadings or the bald contention that facts exist to defeat a motion for summary

---

[1] The authorities referenced in this Reply are provided to the Court in a second binder.

judgment." (Citations omitted). "Where one party moves for summary judgment and sets forth evidence which shows no controversy as to material facts, the burden of proof shifts to the opposing party to **present evidence** which would justify trial on the issue." *Id.* (emphasis added) (citations omitted). *See also Loper v. Austin*, 1979 OK 84, 596 P.2d 544; *Celotex v. Catrett*, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (to oppose a motion for summary judgment, the non-movant must come forward with specific facts showing that there is a genuine issue for trial). Hence, summary judgment on the Motion is appropriate. Rule 13(a); *Flanders v. Crane Co.*, 1984 OK 88, 693 P.2d 602.

The Plaintiffs also rely upon the opinion of purported expert witnesses to establish the existence of fact questions on their claims. However, a conclusory affidavit of an expert witness is insufficient to defeat a summary judgment motion, because such affidavit is mere speculation unsupported by evidence. *See United States v. Hardage*, 733 F. Supp. 1424 (W.D. Okla. 1989), *aff'd in part, rev'd in part*, 982 F.2d 1436, 1429 (10th Cir. 1992) [see tab 2]; *Martinez v. CO2 Services, Inc.*, 2001 WL 363282, *4 (10th Cir. 2001) [see tab 3]; *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1231 (10th Cir. 2001) [see tab 4]; *Weigel v. Target Stores*, 122 F.3d 461 (7th Cir. 1997). The conclusory affidavits of the Plaintiffs' purported expert witnesses', which are not supported by any evidence and based on mere speculation, are insufficient to defeat the Motion.

**B.    The Plaintiffs have failed to demonstrate that the material facts offered by the Operators are in controversy.**

In their Response, the Plaintiffs deny certain material facts which the Operators alleged are undisputed. Yet, the bases of the Plaintiffs' denial of these facts are not sufficient.

Undisputed Fact No. 3. The Plaintiffs denied that this statement is a "complete statement of what Operators' operations consist." The Operators did not intend this statement to be a complete statement of their operations. The statement as offered is correct and undenied.

Undisputed Fact No. 4. The Plaintiffs admit they are not seeking damages caused by any oil or gas well drilled on their property, nor are they contending that pollution was caused by any well drilled on their property. By this admission, the stated fact has been rendered immaterial.

Undisputed Fact No. 5. The Plaintiffs denied this statement only to the extent that it contradicts Order Nos. 184201 and 190347 [orders approving FPC's Disposal Facility]. However, this fact is not in controversy because neither party objects to the express, unambiguous language of Order Nos. 184201 and 190347. These orders speak for themselves.

Undisputed Fact No. 6. The Plaintiffs denied this statement because FPC received "fluids" into its "Disposal Facility" after its Notice of Closure. However, these "fluids" were not the Drilling By Products complained of by the Plaintiffs, nor were they deposited in the pits which are the alleged source of contamination in this case. Rather, the "fluids" were saltwater which were deposited into a saltwater disposal *well*. (See Mr. Denwalt's deposition, Vol. I, Pg. 29, Lines 3-14, Exhibit A). The Plaintiffs' "dispute" of this fact raises no controverted issue.

Undisputed Fact No. 7. The Plaintiffs denied this statement as unsupported by admissible evidence. However, the referenced Oklahoma Corporation Commission ("OCC") list of Active Commercial Pits Inventory is admissible as a public record or report under 12 O.S. § 2803(8), and/or a business record under 12 O.S. § 2803(6). In addition, the Plaintiffs have not presented any evidentiary materials to establish that the Operators' operations do consist of designing, constructing, maintaining, or operating any commercial disposal facility.

Undisputed Fact No. 8. The Plaintiffs denied this statement and offered in support thereof only the conclusory affidavit of their expert witness. Moreover, paragraph 6 of purported expert Gene Cates' affidavit merely states that a reasonable and prudent operator should know the weight and chloride content of its drilling mud. This does not establish that the Operators

had any control over the design, maintenance or operations of the Disposal Facility, which was the alleged fact not in dispute.

Undisputed Fact No. 9. The Plaintiffs denied this statement and offered in support thereof only the conclusory affidavit of their expert witness which is insufficient to withstand a dispositive motion. In addition, the reliance of purported expert witness Gene Cates upon an OCC document "which states that the [OCC] records do not reflect that Deleterious Substance Transport Permits were issued to the companies whose names appear on the attached load tickets" is improper. An expert's reliance on another document – which was not attached to the Response – is double hearsay. While an expert may rely on hearsay materials in forming the basis of his/her opinion, an expert may not predicate his opinion on a matter solely on the opinion of another, nor can he/she certify the truth of such hearsay evidence. *See 6816.5 Acres of Land, More or Less, in Rio Arriba County, State of N. M. v. United States*, 411 F.2d 834, 839-40 (10th Cir. 1969) [see tab 5]; *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) [see tab 6].

Undisputed Fact No. 10. The Plaintiffs denied this statement and offered in support thereof only the conclusory affidavit of their expert witness which is insufficient to withstand a dispositive motion. In any event, the Plaintiffs admit the material fact at issue, i.e., that the annual reports reflect the numbers represented to the OCC. The Plaintiffs deny only that the average chloride content of the pits could, in fact, be less than 3,500 mg\l. If the Operators had an obligation to determine that FPC was in compliance with OCC regulations, they were entitled to rely on the OCC filings. The Operators were not required to monitor FPC's operations, and the Plaintiffs presented no evidence of any such requirement.

Undisputed Fact No. 11. While Plaintiffs dispute the accuracy of the information FPC

provided to the OCC, they do not dispute the fact that FPC ***did inform*** the OCC of its dilution practices. Thus, Plaintiffs admit the material fact at issue. Moreover, Mr. Denwalt testified that he diluted high chloride loads with lower chloride water from the Pits. Logically, mixing low chloride water with high chloride water dilutes the high chloride water. Mr. Solomon's testimony that he personally believed such dilution practice was illegal was later overridden by his superiors. (See Mr. Solomon's deposition, Pg. 17, Lines 1-10, Exhibit I of the Motion).[2]

Undisputed Fact No. 12. This statement of fact was supported by the testimony of Mr. Denwalt and Mr. Solomon. Although it was denied by the Plaintiffs, they provided no evidence in support of such denial. The Plaintiffs cited no OCC Rule which prohibits a commercial disposal pit operator from diluting loads delivered to it for disposal.

Undisputed Fact No. 13. This fact was not really denied by the Plaintiffs. Mr. Solomon may have told Mr. Denwalt that he personally felt that the dilution of high chloride loads was not permissible. However, Mr. Solomon's testimony reveals that he was not speaking on behalf of the OCC at that time, but rather expressing his personal opinion. When Mr. Solomon consulted his supervisor, he learned that his personal position was wrong. (See Mr. Solomon's deposition, Pg. 17, Lines 1-10, Exhibit I of the Motion). The Plaintiffs also failed to controvert the fact that the OCC never cited FPC for using the dilution method, and therefore, admit the same.

Undisputed Fact No. 14. The Plaintiffs did not deny the fact that FPC billed the Operators for, or that the Operators paid, extra handling charges for the dilution of any loads that initially contained chlorides in excess of 3,500 mg/l. The Plaintiffs instead attempt to deflect the

---

[2] In their Response to a number of fact statements, the Plaintiffs attempt to controvert the truth of the underlying facts regarding the accuracy of the information provided by FPC to the OCC. The Plaintiffs essentially claim the Operators should have been more knowledgeable than the OCC as to whether or not FPC was in compliance with OCC regulations. In other words, the Plaintiffs infer that even if the OCC, the state agency charged with the responsibility for enforcing the regulations pertaining to pollution, was unable to discern that FPC was in violation of the same, the Operators, who had no control over FPC, should have been able to discern these facts and are liable for damages as a result of their failure to do so. Such argument is obviously devoid of any merit.

Court from consideration of the undisputed facts which are elemental to the Plaintiffs' case. The Plaintiffs offer no evidence that any Operator was aware that FPC kept two sets of books, and thus, it would be unreasonable to make this inference against the Operators. In any event, the manner in which FPC operated its facility is not determinative on the issue of the Operators' liability because the Operators relinquished control of the Drilling By Products to what they knew to be a state-licensed and bonded disposal facility in good standing with the OCC.[3]

Summary of Undisputed Facts. It is important not only to address the facts which the Plaintiffs denied, but to highlight the following facts which the Plaintiffs did not deny and which are deemed admitted — facts which are critical to the Court's determination of this Motion.

     a.    FPC was a state-licensed and bonded commercial disposal facility that had been approved by the OCC. (Undisputed Fact No. 5).

     b.    The Operators, via transporters, delivered to FPC their Drilling By Products for disposal. (Undisputed Fact No. 9).

     c.    FPC billed the Operators for, and the Operators paid, extra handling charges for the dilution of loads that contained chlorides in excess of 3,500 mg/l. (Undisputed Fact No. 14).

     d.    FPC informed the OCC of their dilution practices. (Undisputed Fact No. 11).

     e.    The OCC never cited FPC for using dilution, nor did the OCC consider dilution improper. (Undisputed Fact No. 13).

     f.    FPC's annual reports filed with the OCC noted that the average chloride content of the fluids received by FPC was less than the 3,500 mg/l limit. (Undisputed Fact No. 10).

     g.    The OCC had the authority to shut down FPC if it was in violation of OCC rules and regulations. (Undisputed Fact No. 15).

     h.    The OCC notified FPC, not the Operators, when it had reason to believe there may be subsurface chloride seeps resulting from possible leaks from the Disposal Facility. (Undisputed Fact No. 17).

Based on these undisputed facts alone, it is clear that the Operators are divorced from any tortious conduct which caused the Plaintiffs' alleged injuries.

---

[3] While the Plaintiffs admit fact statement sixteen (16), they footnote an argument claiming the fact FPC was open for business did not indicate to the Operators that it was in compliance with OCC regulations, in contradiction of Mr. Solomon's testimony. In support thereof, they cite *Leland v. Moran*, 100 F.Supp.2d 140 (N.D.N.Y.). However, in *Leland*, the plaintiffs sued the governmental entity and employees responsible for supervising the solid waste disposal facility, not the companies that had used the facility. While *Leland* may support an argument in favor of the Plaintiffs suing the OCC for failure to shut down FPC, it does not support their argument against the Operators.

## II.    THE PLAINTIFFS' ARGUMENT THAT THE OPERATORS' CONDUCT CAN FORM THE BASIS OF THEIR NUISANCE CLAIM FAILS.

In their Motion, the Operators cited many cases in which courts refused to extend liability for alleged nuisance caused by the leakage of potentially harmful substances to persons other than the owners of the property from which the substances leaked, or those in control of the instrumentality causing the nuisance.  (See the Motion, pp. 8-13).  In their Response, the Plaintiffs argue that a valid claim of nuisance can be brought against a defendant who does not have an ownership interest in adjacent property.  The Plaintiffs list 80 cases wherein a party prevailed on a nuisance claim arising from pollution.  However, all 80 cases address situations where the party who caused the alleged pollution had control of the polluting activities either on or adjacent to the plaintiff's property.  Likewise, in this case, the Operators had such duty at their well sites.  However, the alleged nuisance did not arise from the Operators' well sites, but rather, from the pits located on FPC's property.  Thus, all 80 cases are distinguishable on this critical fact alone, among many others.

The Plaintiffs claim that "ownership of the lands upon which the instrumentality exists is not, and has never been, a determinative factor for liability under a nuisance theory in Oklahoma."  The Plaintiffs, however, subsequently argue in a later part of their Response that "an oil and gas lessee/operator is liable for nuisance ... caused by any instrumentality under his control ...."  (See Response p. 11).  It is this control which distinguishes the 80 oil and gas lessee cases from the one at bar.[4]  Regardless of the fact that oil and gas lessees in the cases cited by the Plaintiffs did not own more than a leasehold interest in the neighboring property from which the alleged nuisance arose, the lessees clearly controlled the instrumentality which caused the nuisance.  There are no Oklahoma cases where a plaintiff recovered nuisance damages from

---

[4] Furthermore, the *Hinds v. Phillips Petroleum Co.*, 1979 OK 22, 591 P.2d 697 case upon which the Plaintiffs rely in support of their claim is not even a nuisance case, but a trespass case which has no relation to the subject issue.

defendants who neither owned <u>nor controlled</u> the property from which the nuisance arose. It is undisputed that FPC controlled the operations of its Disposal Facility, and unlike the lessees in the cases cited by the Plaintiffs, the Operators did not own an interest in FPC's property, nor did they control or have the ability to control FPC's conduct.

III. **THE PLAINTIFFS' CLAIM THAT THE OPERATORS ARE LIABLE FOR THE ALLEGED TORTS OF FPC FAILS AS A MATTER OF LAW.**

If any nuisance, negligence, or trespass occurred in this case, it was committed by FPC through the operation of its Disposal Facility. The Plaintiffs' claims against the Operators must link FPC's activities to the Operators through the imposition of some direct or vicarious theory of liability. To bridge this legal chasm, the Plaintiffs claim the Operators are liable for the acts of FPC because (a) the Operators were the licensees of FPC; (b) the Operators are vicariously liable for the tortious acts of FPC; or (c) the Operators owed a non-delegable duty to the Plaintiffs. However, each of these theories fails as a matter of law.

A. <u>The Operators were not the licensees of FPC.</u>

In their Response, the Plaintiffs attempt to establish a property interest of the Operators in FPC's property by asserting that the Operators were the licensees of FPC. The Plaintiffs imply that the Operators themselves disposed of the Drilling By Products at FPC's Disposal Facility by stating that they paid FPC extra "to <u>allow them</u> [Operators] to dispose" of such By Products. However, the Operators paid FPC to dispose of the Drilling By Products on the property, a service whereby FPC took control of the materials.[5]

Licensees are those who enter the premises of another for their own benefit or pleasure by express or implied permission of the owner. *Brown v. Nicholson*, 1997 OK 32, 935 P.2d 319,

---

[5] Were the situation as the Plaintiffs suggest, every person who has their trash picked up and disposed of by the city would be deemed to have a "license" to dispose of trash at the city dump, and would accordingly, be liable for any harm which resulted from negligent construction of the city dump.

321 [see tab 7]. To be given licensee status, a person must have been on the premises for his own benefit, *and for purposes in which the property owner had no financial or other interest*. *McKinney v. Harrington*, 1993 OK 88, 855 P.2d 602, 604 [see tab 8]; *Brewer By and Through Brewer v. Independent School Dist. No. 1*, 1993 OK 17, 848 P.2d 566, 571 [see tab 9]. The Operators' use of the FPC Disposal Facility was not for "purposes in which [FPC] had no financial or other interest." *See id.* Rather, FPC was paid to dispose of the Drilling By Products, and thus, had a financial interest in such "entry." Therefore, the Plaintiffs' argument that the Operators are liable for their alleged injuries because they were the licensees of FPC fails.

**B.    The Operators are not liable for the tortious acts of FPC because the two were independent contracting parties.**

The Plaintiffs claim the Operators are liable to them because they retained control of their Drilling By Products, even after their transfer to the transporters for ultimate disposal with FPC, via some agency relationship with FPC. However, FPC was not the independent contractor of the Operators. Instead, FPC and the Operators stood as separate contracting entities with separate and distinct duties and obligations.

"An independent contractor is always subject to the direction of the principal as to result or progress of work as distinguished from the method to be used in its performance." *Miller v. Steelman Constr. Co.*, 1955 OK 113, 282 P.2d 740, 741 [see tab 10]. In this case, FPC was not subject to the direction of the Operators "as to the result or progress of its work." FPC did not operate the Disposal Facility on the lands of the Operators, nor did it operate the Disposal Facility on behalf of the Operators. Instead, the Operators were **customers** of FPC. The Operators relinquished control over the Drilling By Products at the well site when they were picked up by the transporters. Thereafter, the transporters and FPC exercised exclusive control over the Drilling By Products. The parties' relationship was merely that of "a relation existing

between two independent contracting parties," and "where the parties stand towards each other simply in the light of contracting parties, having no relation towards each other which draws into operation the principle of agency, the rule [of agency liability] does not apply." *Midland Oil Co. v. Thigpen*, 4 F.2d 85, 91 (8th Cir. 1924) [see tab 11]. Thus, the Operators are not liable for any tortious acts of FPC as a matter of law because the two were independent contracting parties.

### C.    The Operators are not liable for the acts of FPC even if FPC was an independent contractor of the Operators.

Even if FPC is found to be the independent contractor of the Operators, liability for FPC's alleged tortious actions should not be imposed on the Operators because one who retains an independent contractor is generally not liable for the torts of that independent contractor. *Hudgens v. Cook Industries, Inc.*, 1973 OK 145, 521 P.2d 813, 815 [see tab 12]; *Burke v. Thomas*, 1957 OK 154, 313 P.2d 1082, 1088.

### 1.    FPC was at most an independent contractor of the Operators.

At most, FPC was an independent contractor of the Operators, and not an employee or agent. An independent contractor is a person who contracts with another to do something for him who is not controlled by the other, nor subject to the other's right of control with respect to his physical conduct in the performance of the task. *Lane-Hill v. Ruth*, 1995 OK CIV APP 155, 910 P.2d 360, 362 [see tab 13] (citing Restatement (Second) of Agency § 2(3)); *Conoco Inc. v. Oneok, Inc.*, 91 F.3d 1405 (10th Cir. 1996) (applying Oklahoma law). The decisive test in determining whether one is an employee or independent contractor is the right to control the work. *C&H Transp. Co. v. McLaughlin*, 1967 OK 163, 434 P.2d 229, 234 [see tab 14]; *Dodd v. Rush*, 1965 OK 138, 406 P.2d 261, 262.

Here, there is no evidence showing the Operators had the right to control the manner in which FPC conducted its operations. Indeed, Mr. Denwalt's testimony specifically negates any

control by the Operators. (See Mr. Denwalt's deposition, Vol. I, Pg. 118, Lines 6-12, Exhibit A). Thus, it should be determined that FPC was, at most, merely an independent contractor of the Operators, and that the Operators are not liable for the torts of their independent contractor.

## 2.    The Operators did not owe a non-delegable duty to the Plaintiffs.

In their Response, the Plaintiffs claim that the Operators owed the Plaintiffs a non-delegable duty to safely dispose of their Drilling By Products. One exception to the independent contractor rule of non-liability provides that "an employer who performs work through an independent contractor is liable for damages to third persons caused by the negligence of the independent contractor where the employer owes a non-delegable contractual or defined legal duty to the injured party." *Bouziden v. Alfalfa Elec. Coop, Inc.*, 2000 OK 50, 16 P.3d 450, 455 [see tab 15].[6] The Oklahoma Supreme Court considers a non-delegable duty to be one usually imposed by statute, ordinance or contract, or which arises because of an inherently dangerous activity which cannot be delegated. *O'Feery v. Smith*, 2001 OK CIV APP 142, 38 P.3d 242, 244 [see tab 16] (citing *Bouziden*). However, the Plaintiffs have not identified a specific duty imposed by statute or contract upon the Operators to monitor how FPC runs its business, and are unable to offer any legal support for such a claim.

In *Bouziden v. Alfalfa Elec. Coop, Inc.*, 2000 OK 50, 16 P.3d 450, the defendant electric company employed an independent contractor to change its utility poles. A fire started from the independent contractor's truck, which spread over 80,000 acres. The Oklahoma Supreme Court examined whether the defendant electric company owed a non-delegable duty to the owners of

---

[6] The Plaintiffs rely on *Bouziden* in their Response. However, *Bouziden* actually supports the Operators' position. In that case, the court found the defendant did not owe a non-delegable duty to the plaintiff/landowners. In so concluding, the Court observed, "Duty depends upon the relationship of the parties and the general risks involved in the undertaking; and, whether a defendant stands in such a relationship that the law will impose upon defendant an obligation to the plaintiff is a question of law. Whether a duty is non-delegable is also a matter of law." *Bouziden*, 16 P.3d at 455-56 (emphasis added). The Plaintiffs have not presented any law in their Response, and there is none, which states the Operators owe them a non-delegable duty under these facts. Thus, *Bouziden* supports the Operator's contention that the Court may determine this issue in their favor as a matter of law.

lands impacted by the fire. The court found a non-delegable duty owed to the owner of the land on which the defendant's easement ran based on the easement. *Id.* at 455-56. The court held, however, that this duty did <u>not</u> extend to adjoining landowners. *Id.* The court relied on *Minnetonka Oil Co. v. Haviland*, 1916 OK 103, 155 P. 217, and found:

> The [*Minnetonka Oil*] court reasoned that because the work arose out of the lease between the plaintiff and the defendant, the defendant was liable for the negligent performance of the work without regard to the means by which it undertook to perform the work. Concluding that the oil company could not escape liability by delegating its duty owed the landowner, *Minnetonka* said that *the landowner stood "in an entirely different relation to the defendant as to their rights and its duty in the premises from a third person who was a stranger to the contract [lease] under which the work was done."*

16 P.3d at 456 (emphasis added). The *Bouziden* court found that holding the defendant liable to landowners other than owners of the servient estate "would create a legal anomaly where a fee owner may delegate duties owed to adjoining landowners and others but an easement owner may not delegate such duties." *Id.* at 457. In other words, the electric company had no non-delegable duty to third parties for the torts of its independent contractor absent a contractual relationship.

Similarly, in *Shell v. Wilson*, 1935 OK 831, 65 P.2d 173, 175 [see tab 17], the owner of a tank farm who stored waste materials in an earthen pit on its land sold the pit contents to another for reclamation. The materials burned and escaped from the pit after the sale. The original owner was not liable for the damage to the adjoining land caused by the fire. The court found:

> the accumulation of this quantity of this substance was legitimate, and it must necessarily follow that defendant might dispose of it and completely dissociate itself therefrom. Since it did not own this substance at the time it burned and escaped, and since it has not been shown that defendant was in any way liable for the fire or escape as a physical fact, it follows that there is no legal liability on the defendant upon the ground of ownership.

*Id.*

In a case similar to the one at bar, *Hensarling v. Spectron, Inc.*, 1990 WL 369573, Prod. Liab. Rep. (CCH) 12,698 (D. Md. 1990) [see tab 18], the United States District Court for the

District of Maryland found that a hazardous waste generator did not owe a non-delegable duty to

assure that its transporter and disposal facility safely disposed of its generated waste after it left

its plant. There, the plaintiff was an employee of a truck-leasing company, who was severely

burned when an explosion occurred while he was cleaning one of his employer's tank trucks.

The truck had been used to transport ink waste from the generator's plant to a hazardous waste

disposal facility.    An explosion occurred during the cleaning of the tank resulting in the

plaintiff's injury.

The plaintiff sued the generator, among others, for negligence based on the generator's

alleged violation of a non-delegable duty to insure the safe disposal of its waste.  The court

granted summary judgment in favor of the generator on the plaintiff's negligence claim because

the plaintiff could not establish that the generator had a non-delegable duty to assure the proper

and safe disposal of the hazardous waste. *Id.* at *3-5.[7]

Here, there is no legal or contractual basis to establish that the Operators owed a non-

delegable duty to the Plaintiffs. Thus, summary disposition of the Plaintiffs' claims is proper.

3.    **The subject work was not inherently dangerous nor were the Drilling By Products ultra-hazardous giving rise to a non-delegable duty.**

A non-delegable duty can also be imposed on a party if the activity for which the party

uses an independent contractor is ultra-hazardous or inherently dangerous. Liability in this

instance is akin to strict liability because the law does not permit the party to insulate itself from

liability by the use of the independent contractor. The cases, however, which have examined the

---

[7] *See also Jackson v. Standard Oil Co. of California*, 505 P.2d 139, 146 (Wash. Ct. App. 1973) [see tab 19] (holding a manufacturer of petroleum products did not have a non-delegable duty to the decedent welder, who was killed when he repaired an empty storage tank that exploded, to insure that the manufacturer's distributor would not violate the manufacturer's safety instructions; there was no element of control or right to control on the part of the manufacturer); *Morales v. Davis Brothers Constr. Co., Inc.*, 647 So.2d 1302, 1307 (La. Ct. App. 4 Cir. 1994) [see tab 23] (owner of oil facility did not have nondelegable duty regarding transportation of clay based dirt from facility to disposal site and was not liable for actions of independent contractor arising from hauling of dirt which was not the product of the oil facility but dirt from the area around the oil pumps).

situation of a generator's purported liability for hazardous waste, have not found a non-delegable duty imposing liability on the waste generator.

First, the courts agree that the determination of "ultra-hazardousness" depends on the nature of the activity, not the type of substance involved. "An employer engaged in an inherently dangerous activity is liable only for the risks inherent in the activity itself ... the employer is not liable when the contractor creates a new risk, not inherent in the work itself ... ." *Bouziden*, 16 P.3d at 258. *See also Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1181 (7th Cir. 1990) [see tab 20] ("Ultrahazardous or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities."); *accord Richmond, Fredericksburg & Potomac Railway Co. v. Davis Indus., Inc.*, 787 F. Supp. 572, 575 (E.D. Va. 1992) [see tab 21] ("[s]trict liability attaches only to abnormally dangerous activities, not substances"); *Splendorio v. Bilray Demolition Co., Inc.*, 682 A.2d 461, 465-66 (R.I. 1996) [see tab 22] ("absolute liability attaches only to ultrahazardous or abnormally dangerous *activities* and not to ultrahazardous or abnormally dangerous *material*"). Thus, even assuming Drilling By Products are inherently dangerous (which they are not), their properties alone cannot give rise to a non-delegable duty. Rather, strict liability can only attach, if at all, to the Operators' activity of generating such materials or to FPC's activity of storing them.

The cases hold that the generation of "hazardous materials" alone does not create a non-delegable duty on the part of the generator. For example, in *City of Bloomington, Indiana v. Westinghouse Electric Corp.*, 891 F.2d 611 (7th Cir. 1989) [see tab 4, Motion binder], the court held that the manufacturer of PCBs was not liable when the PCBs were allowed by the recipient of the PCBs to escape into the city's water systems. The court held that a plaintiff cannot recover from a particular defendant unless the harm was caused by the activity of that defendant.

The court also held that the manufacture of PCBs was not abnormally dangerous since the risk therefrom could have been limited by the ultimate recipient's reasonable care.

In *Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1181-82 (7th Cir. 1990) [see tab 20], the court explained the rationale for this rule, as follows:

> The emphasis is on picking a liability regime (negligence or strict liability) that will control the particular class of accidents in question most effectively, rather than on finding the deepest pocket and placing liability there.

The court concluded that when negligence "is a workable regime, because the hazards of an activity can be avoided by being careful (which is to say non-negligent), there is no need to switch to strict liability." *Id.* at 1177. The court held liability should be imposed where the accident can be controlled and not at an earlier point where the accident cannot be prevented. *Id.*

In *Ewell v. Petro Processors of Louisiana, Inc.*, 364 S.2d 604, 607 (La. 1978) [see tab 24], the Louisiana Supreme Court found the generators of chlorinated hydrocarbons leaking from a disposal site were not liable because "[t]he record in this case does not support the conclusion that the work done by [the disposal site] cannot be done safely." Similarly, in *Schwartzman, Inc. v. General Elec. Co.*, 848 F. Supp. 942, 945 (D. N.M. 1993) [see tab 25], the District Court of New Mexico refused to hold generators of petroleum products and hazardous waste strictly liable for "the handling, transportation, storage or disposal of petroleum products and hazardous waste," because although the materials "may present a substantial degree of risk to persons or property when mishandled...the risk can be eliminated through the exercise of reasonable care." Thus, a generator is not strictly liable for improper storage of oil field waste by a third party if the risk can be avoided by the third party through the exercise of reasonable care.

Accordingly, because FPC could have stored the Operators' Drilling By Products safely by exercising due care, the activity of generating high chloride Drilling By Products is not inherently or abnormally dangerous. Liability should not be shifted from FPC to the Operators

under the guise of strict liability or a non-delegable duty.[8]  Rather, to "control the particular class of accidents in question most effectively," *Indiana Harbor,* 916 F.2d at 1181-82, any liability for leakage from the disposal site should be borne by the site, which unlike the Operators, is in a position to control, and hence prevent, such accidents.

### 4.  Any non-delegable duty owed by the Operators to the Plaintiffs pertained only to the operation of their well sites.

Any non-delegable duties owed by the Operators to the Plaintiffs pertain to the operation of their well sites. *See e.g., Stamford Energy Cos., Inc. v. The Corporation Com'n of the State of Oklahoma,* 1988 OK 25, 764 P.2d 880, 883 [see tab 26] (an "operator has a statutory non-delegable duty to comply with the OCC rules and regulations and statutes of this State *in the operation of a well.*" (Emphasis added)).  In *Mid-Continent Pipeline Co. v. Crauthers,* 1954 OK 61, 267 P.2d 568 [see tab 31], the court discussed the nature of the non-delegable duty under 52 O.S. § 296[9], which prohibits allowing inflammable products from any oil or gas well to run into pools or streams and which provides that "saltwater shall not be allowed to flow over the surface of the land."  There, the court held that the statute did not impose a duty upon a pipeline company, but rather was aimed at drillers and producers of oil, and imposed a duty on the same to prevent oil, gas, or saltwater from escaping "from the well" to other premises. *Id.* at 570-71. Here, no deleterious substances escaped from the wells or well sites operated by the Operators. Rather, the Drilling By Products originating from the Operators were safely transported and delivered into the care and custody of FPC, a state-licensed and bonded commercial disposal

---

[8] *See e.g., Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 462 (5th Cir. 1996) [see tab 27] ("It is doubtful that the escape of (apparently oil-contaminated) saltwater . . . is 'abnormally dangerous,' at least as contemplated by the classic formulation in § 520 of the second Restatement of Torts."); *Hagen v. Texaco Ref. & Mktg. Inc.,* 526 N.W.2d 531, 539 (Iowa 1995) [see tab 28] (drilling of monitoring wells is not abnormally dangerous); *Ruminski v. Chester Township,* 1983 WL 6143, *3 (Ohio Ct. App. 1983) [see tab 29] (the storage of salt in large quantities has never been classified as inherently dangerous); *BP Explor. & Oil, Inc. (93-3310) v. United States E.P.A.,* 66 F.3d 784, 801 (6th Cir. 1995) [see tab 30] ("It is EPA's position that hazardous waste sites must be reserved for disposing of those substances that are more hazardous and dangerous than drilling fluids and drill cuttings.").
[9] The Plaintiffs cited this statute in their Response as being similar to the statutes the Operators allegedly violated.

facility, to safely dispose of the Drilling By Products. The Operators were fully discharged of any duty they had to dispose of the materials when they delivered the materials to the state-licensed and regulated commercial disposal facility for disposal.[10] The injury complained of by the Plaintiffs in this case is damage resulting from the escape of deleterious substances from FPC's pits, not the escape of such substances from the Operators' well sites.

It is worth noting that the OCC did not contact the Operators and ask them to undertake any investigation or remedial steps regarding the alleged leaks from FPC's Disposal Facility. Clearly, therefore, the OCC did not interpret its rules to make operators, such as the Operators, legally responsible for the operation or maintenance of FPC's permitted disposal facility.

The Plaintiffs have not cited any opinion in Oklahoma that would hold the Operators liable under this set of facts for violation of an alleged non-delegable duty. There is no Oklahoma case law that would make an oil and gas operator liable for pollution allegedly coming from a state-permitted licensed commercial disposal pit simply because at some point in time that operator had disposed of materials in that pit. This is what the Plaintiffs are, in fact, asking this Court to do. The Plaintiffs' theory is unsupported by law and must fail.

## IV.    THE PLAINTIFFS DID NOT ESTABLISH A CAUSAL LINK BETWEEN THEIR INJURIES AND THE OPERATORS' CONDUCT.

### A.    Causation is a question of law because the Plaintiffs' evidence is insufficient to establish a causal connection between their injuries and the Operators' conduct.

In response to the Operators' argument and evidence demonstrating the lack of a causal link between the Plaintiffs' injuries and Operators' conduct, the Plaintiffs argue only that (i)

---

[10] The cases cited by the Plaintiffs deal with damages arising out of a defendant's failure to properly carry out *one of its duties* – or his/her agent's failure to properly carry out that defendant's duties. Here, the Operators properly carried out their duties by safely delivering the Drilling By Products to FPC for disposal. It was FPC's failure to carry out *one of its own duties* that caused the Plaintiffs' alleged injuries – not FPC's failure to properly carry out the Operators' duties. The Operators are not in the disposal business, and thus, have no duty to physically dispose of their materials. Rather, the Operators are required to deliver the materials to a licensed facility for disposal, which they did. The Operators' duty ended at that time, and any impropriety in carrying out the disposal was that of FPC.

causation is a question of fact; and (ii) Plaintiffs "will have proof at trial" that the Operators' conduct was a proximate cause of the Plaintiffs' injuries. In their Response, the Plaintiffs quote the correct rule from *Lockhart v. Loosen*, 1997 OK 103, 943 P.2d 1074, 1080 [see tab 11, Motion binder] that "[i]t is only 'where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury' that the issue of proximate cause becomes a question of law." Thus, although the Plaintiffs argue that "causation is a question of fact," they acknowledge that a lack of evidence on that element can render their claim subject to disposition as a matter of law.

Then, in order to provide some evidence of a causal connection, the Plaintiffs turn once again to the flawed premise of their case, i.e., that FPC's dilution of the high chloride loads was illegal. The Plaintiffs offer as a "fact," "that the Operators' disposal of high chloride content Drilling By Products, acting concurrently with the flawed construction of the FPC Disposal Facility were the proximate cause of the Plaintiffs' injuries." The Plaintiffs cite the Affidavit of Michael C. Campbell to provide this "fact." The Campbell affidavit essentially states that, "if all loads had had a chloride content of 3500 mg/l or less," the additional volumes would not have pushed the contaminants through the bottom of the pits.

While this argument arguably impugns FPC's operations by questioning whether it was reasonable for FPC to accept such volumes into its pits, it does not support liability against the Operators underline the Plaintiffs show some basis to hold the Operators responsible for the additional volumes. The Plaintiffs have attempted to do this by "inferring" illegal activity on the part of the Operators in delivering their loads to FPC for dilution. It is clear that a fundamental assumption of Campbell's Affidavit is that loads in excess of 3500 mg/l were not legally disposable in FPC's pits. The uncontroverted evidence, however, is that dilution was

permissible; that FPC's dilution activities were known to the OCC; and, that the OCC did nothing to stop FPC from diluting. The acceptance of the additional volumes cited by Campbell therefore was an operational decision by FPC. The Operators had no control over FPC's operations, nor the ability to judge the pits' capacity. The Operators' conduct in disposing of the Drilling By Products at FPC's facility was not the proximate cause of any harm to the Plaintiffs.

Given that Campbell's Affidavit is based on this erroneous assumption, his opinion as to causation is meaningless and cannot save the Plaintiffs' claim from summary judgment. Where the opinion of an expert is based on an erroneous assumption of fact or law, the evidence is incompetent and inadmissible. See *Pawnee Municipal Hospital v. Cunningham*, 1999 OK Civ. App. 60, 985 P.2d 189, 191 [see tab 32] (an expert opinion was challenged because of failure to consider an indispensable fact); *Young v. Travelers' Ins. Co.*, 68 F.2d 83, 87 (10th Cir. 1933) [see tab 33] (expert's testimony based on improper assumption excluded); *United States v. 319.88 Acres of Land*, 498 F. Supp. 763, 766 (D. Nev. 1980) [see tab 34]]; OKLA. STAT. tit. 12, § 2402.

**B.     The Plaintiffs' purported reasonable inferences are in fact *unreasonable* and insufficient to establish a fact question on the claims at issue.**

**1.     FPC's maintenance of two sets of logs does not give rise to an inference that the Operators and FPC knew dilution was illegal.**

In their Response, the Plaintiffs claim that FPC's maintenance of two sets of log sheets reflecting their dilution of loads gives rise to a reasonable inference that both the Operators and FPC "knew that the practice was illegal." This incredible stretch of the facts serves only to highlight the fact that the Plaintiffs have nothing more substantive to support their claims against the Operators. The Plaintiffs are merely trying to manufacture fact questions by inferring some secret and nefarious arrangement between the Operators and FPC regarding dilution based on facts which, according to the only evidence available, were known only by FPC.

The error of the Plaintiffs' claim is apparent from the testimony of Mr. Denwalt who clarified that the "two sets of books" to which the Plaintiffs continually refer were really "two sets of log sheets" and "one set of books." (See Mr. Denwalt's testimony, Vol. II, Pg. 29, Line 12 through Pg. 30, Line 24 and Pg. 189, Lines 1-18, Exhibit A). One set of log sheets showed the loads received by FPC and the chloride content of each load before dilution, and the other set of log sheets showed the extra handling charges, if any, for each load and the chloride content of the load after dilution. (See Mr. Denwalt's testimony, Vol. II, Pg. 29, Lines 12-23, Pg. 188, Line 19 through Pg. 189, Line 18, Exhibit A).[11] Both sets of log sheets were kept together in the same drawer, and both were available to the OCC for review. (See Mr. Denwalt's testimony, Vol. II, Pg. 190, Lines 12 through Pg. 191, Line 14, Exhibit A).

No reasonable inference can be made that FPC knew that the dilution practices were illegal based solely on the fact that FPC kept two sets of logs for accounting purposes. Indeed, given that the undisputed evidence shows that FPC disclosed its dilution practice to the OCC, and that the OCC did not consider it improper, the inference of wrongdoing sought by the Plaintiffs is hardly reasonable. Further, the Plaintiffs offer nothing to support an inference, reasonable or otherwise, that the Operators knew that FPC kept separate log sheets, or that the maintenance of such log sheets would cause the Operators to believe FPC's activities were illegal. This is fatal to their claim because only *reasonable or justifiable* inferences may be drawn in favor of the nonmoving party. *See Hays v. Jackson Nat'l Life Ins. Co.*, 105 F.3d 583, 589 (10th Cir. 1997) [see tab 35]. If an inference is not reasonable or justifiable under the circumstances, it should not be taken by the court.

The United States Supreme Court examined the requirement for reasonable or justifiable

---

[11] Had FPC not maintained the two separate logs showing the chloride contents of the loads before and after dilution, the Plaintiffs' would have likely complained of that practice, too, alleging FPC was concealing the true chloride content of the loads prior to dilution.

inferences in *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) [see tab 36], and held:

> To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of §1 must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently. (citation omitted). Respondents in this case, in other words, must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents.

475 U.S. at 588 (emphasis supplied). Here, the Plaintiffs want the Court to infer knowledge on the part of the Operators that the dilution practices of FPC were illegal based solely on FPC's maintenance of two sets of log books. [12] The facts, however, cannot support that inference. The most that can be inferred against the Operators is that they knew dilution was occurring because they paid for that service. The Plaintiffs have offered no evidence to extend an inference of wrongdoing to the Operators.

### 2. No reasonable inference can be made that the oil and gas industry knew the subject pits would leak.

The Plaintiffs' purported inference that the Operators knew, or could reasonably foresee, that the pits in FPC's Disposal Facility would leak is also unreasonable. The Plaintiffs claim the Operators knew the Disposal Facility pits would leak because "the oil and gas industry knew" that earthen pits (generally) may leak based on the presentation of a 1985 article titled Proceedings of a National Conference on Disposal of Drilling Wastes (the "Article").

The Article which, according to the Plaintiffs, educated the entire oil and gas industry as to the likelihood of earthen pits leaking, (i) was never published, (ii) was only given to those attending a speech given by the author at the University of Oklahoma, and (iii) only referenced

---

[12] The "reasonable inference" which the Plaintiffs wish this Court to make is akin to a presumption of fraud. However, the law is clear that fraud is never presumed. *Houston Oilers, Inc. v. Neely*, 361 F.2d 36 (10th Cir. 1966); *Funnell v. Jones*, 1985 OK 73, 737 P.2d 105. Furthermore, where a transaction is fairly susceptible of two constructions, the one which will free it of imputation of fraud will be adopted. *Funnell*, 737 P.2d at 108.

the fact that leaks in earthen pits are "obviously occurring." It is not a reasonable inference to infer knowledge that FPC's pits were leaking from a non-published, local article from 1985, which made only a general reference to the fact that earthen pits may leak.[13]

## V.    THE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE OPERATORS HAVE VIOLATED ANY STATUTES OR OCC RULES

In their Response, the Plaintiffs claim the Operators are liable for their alleged injuries under a negligence *per se* theory because the Operators have violated various Oklahoma Statutes. Yet, the Plaintiffs failed to present any evidence to support their claim, nor have they so much as *alleged how* the Operators violated any particular law. Rather, the Plaintiffs merely cite the affidavit of expert witnesses to support their contention that the Operators violated some laws and promise to have proof at trial that the Operators violated the statutes and that such violation was the proximate cause of their injuries. The affidavits of the Plaintiffs' experts do not state that a violation of the law occurred, contrary to the Plaintiffs' argument in their Response. As discussed above, such reliance on expert witnesses, and promise to have proof at trial, is not sufficient to withstand a dispositive motion.

The Plaintiffs first claim the Operators violated 29 O.S. § 7-401 which is part of the Oklahoma Wildlife Conservation Code and generally provides that no person may put any deleterious substance in any waters of this state. The Operators could not be prosecuted under this statute because they did not put any substance in any waters of this state. Rather, the Operators delivered their Drilling By Products to a state-licensed commercial disposal facility to

---

[13] Furthermore, the Article is inadmissible hearsay to which there are no exceptions because it is not a business record, a public record, nor a learned treatise. *See Hickok v. G. D. Searle & Co.*, 496 F.2d 444, 446-47 (10th Cir. 1974) ("medical textbooks, treatises and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay rule;" experts may not use published materials "to establish the veracity of the hearsay matters themselves."); *Stanolind Oil & Gas Co. v. Sellers*, 174 F.2d 948, 956-57 (10th Cir. 1949) (excluding scientific articles as hearsay because the witness had no contact with, or knowledge of, the field until after litigation began; the facts he learned were learned in retrospect).

dispose of them. This method of disposal is permitted, and regulated, by law.[14] Plaintiffs cite to no case law extending liability under § 7-401 to defendants such as the Operators under facts similar to the case at bar, and thus, their argument fails.

Next, the Plaintiffs conclude that the Operators' alleged violation of § 7-401 constitutes negligence *per se* because other courts have held that violation of a "similar" statute, 52 O.S. § 296, constitutes negligence *per se*. This "similar" statute provides that no inflammable product of an oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock. This statute actually cuts against the Plaintiffs' position that the Operators are liable for FPC's actions because it requires that oil and gas waste be "transported from the premises . . . ." – something the Operators did with the Drilling By Products. Further, while there may be "numerous cases" which have found that violation of this statute constitutes negligence *per se*, none of which were cited in the Response, such cases addressing a different statute than those which are at issue are not persuasive here.[15]

The Plaintiffs' also rely on *Stamford Energy Cos., Inc. v. The Corporation Com'n of the State of Oklahoma*, 1988 OK 25, 764 P.2d 880, 883 [see tab 26] in support of their proposition that the Operators are liable for negligence *per se*. However, the *Stamford* case is distinguishable from the one at bar. *Stamford* involved an action against an oil and gas lease operator who allegedly permitted deleterious substances to leak from an *on site* (i.e., at the well

---

[14] This is not to suggest that the Operators have no duties or liabilities. As discussed at length in the Motion, the Operators are required under the OCC rules to conduct their operations in a manner that will not cause pollution. OCC Rule 165:10-7-5(a). The Operators would be liable for any damages resulting from their operations had they not conducted their operations in a proper manner. Yet, they are not liable for any alleged violation of § 7-401.

[15] To the contrary, the cases construing this statute show that this statute is not persuasive here. *See Larkins-Warr Trust v. Watchorn Petroleum Co.*, 1946 OK 84, 174 P.2d 589, 592 (finding § 296 deals with the surface of lands and is not applicable to subterranean interests); *Gulf Pipe Line Co. of Oklahoma v. Alred*, 1938 OK 224, 77 P.2d 1155, 1156 (finding § 296 inapplicable to oil refineries not operated in immediate conjunction with wells); *Pennsylvania Glass Sand Corp. of Okl. v. Ozment*, 1967 OK 195, 434 P.2d 893, 895 (stating § 296 relating to the drilling of oil and gas wells and governing matters of pollution from an oil and gas well has no application to other operations); *Warren Petroleum Corp. v. Helms*, 1952 OK 461, 252 P.2d 447, 449 (finding § 296 relates purely to oil and gas wells and was not applicable in an action against an oil refinery for damages to cattle which allegedly drank from pool of crude oil caused by ejection of oil and water from drip in refinery's gas pipe line).

site) disposal pit. While the defendant in *Stamford* hired an independent contractor to operate the pit, the pit was still on its lease and under Stamford's control. The Court found the "Appellant was subject to the prescriptions of Rule 3-110.1 and as such, was required to operate the well in a manner that would prevent pollution." 764 P.2d at 883 (emphasis added). Under *Stamford*, the lessee could not avoid liability for the leakage at the well site by delegating its duty to prevent the leakage to an independent contractor. Further, *Stamford* involved liability to the OCC for a violation of its rules; it did not address negligence *per se*. The context of the holding in *Stamford* clearly distinguishes it from this case.

Next, the Plaintiffs cite *Mansfield v. Circle K Corp.*, 1994 OK 80, 877 P.2d 1130, in support of their claim which is a case involving a party's violation of a criminal statute. In *Mansfield*, a minor brought a negligence action against a convenience store for the store's alleged violation of a criminal statute preventing the sale of beer to minors. The Oklahoma Supreme Court held the convenience store/commercial vendor could be held liable under the statute. Analogizing this case to the one at bar, if the commercial vendor in that situation is FPC, then the Operators would be the distributor (e.g., Budweiser) who supplied the beer to the commercial vendor. While the law may impose a duty upon FPC to ensure that the deleterious substances under its control do not pollute the waters of Oklahoma, no such duty is imposed upon the Operators once control of the substances is relinquished to FPC. While the criminal statute is distinguishable from this case for obvious reasons, the Plaintiffs' analogy of that case to the one at bar actually favors the Operators.

## CONCLUSION

In summary, the Plaintiffs have failed to satisfy their burden of presenting any evidence which would justify a trial on any of their claims. Thus, the Court should grant the Motion.

Respectfully submitted,

David L. Kearney, OBA No. 11379
Amy M. Stipe, OBA No. 18361
GABLE & GOTWALS
One Leadership Square
15th Floor
Oklahoma City, Oklahoma 73102-7101
Telephone: (405) 235-5500
Fax: (405) 535-2875
*Attorneys for Defendants El Paso Production Company,*
*Phillips Petroleum Company and Marathon Oil Company*

Dale E. Cottingham
Moricoli, Harris & Cottingham
Two Leadership Square, Suite 1200
211 North Robinson
Oklahoma City, OK 73102
**Attorneys for Anson Corporation**

Ralph A. Sallusti
3015 N.W. 59th Street
Oklahoma City, OK 73112
**Attorneys for National Energy Group, Inc.**

Michael E. Smith
Hall, Estill, Hardwick, Gable, Golden & Nelson
Bank One Center, Suite 2900
100 N. Broadway
Oklahoma City, OK 73102
**Attorneys for Ward Petroleum Corporation, BJ Services Company (formerly The Western Company of North America, and Samson Resources Company)**

Patricia G. Parrish
Mullins, Hirsch & Parrish
100 Park Avenue Building, Suite 400
Oklahoma City, OK 73102-8008
**Attorneys for Rosewood Resources, Inc.**

Gary W. Davis
John J. Griffin, Jr.
L. Mark Walker
Crowe & Dunlevy, P.C.
1800 Mid-America Tower
20 North Broadway
Oklahoma City, OK 73102
**Attorneys for Kerr-McGee Corporation and Marshall Oil Corporation**

Bradley A. Gungoll
Bradley E. Davenport
Gungoll, Jackson, Collins, Box & Devoll, P.C.
P.O. Box 1549
323 West Broadway
Enid, OK 73702-1549
***Attorneys for Dominion Oklahoma Texas Exploration & Production, Inc.***

Frederic Dorwart
J. Michael Medina
Old City Hall
124 East Fourth Street
Tulsa, OK 74103-5010
**Attorneys for Kaiser-Francis Oil Company**

John H. Tucker
Theresa Noble Hill
Rhodes, Hieronymus, Jones, Tucker & Gable, PLLC
ONEOK Plaza
100 W. 5th Street, Suite 400
Tulsa, OK 74103-4287
**Attorneys for Sanguine, Ltd.**

Frank D. Spiegelberg
Pray, Walker, Jackman, Williamson & Marlar
900 ONEOK Plaza
100 West 5th Street
Tulsa, OK 74103
**Attorneys for Unit Drilling Company**

R. Kevin Layton
Boesche, McDermott & Eskridge, LLP
100 West 5th Street
Suite 800
Tulsa, OK 74103-4216
**Attorneys for Apache Corporation**

## CERTIFICATE OF MAILING

I hereby certify that on the 15th day of May, 2002, a true, correct and exact copy of the above and foregoing instrument was hand delivered to the following:

> Mr. Michael J. Blaschke
> Michael J. Blaschke, P.C.
> 4200 Perimeter Center, Suite 245
> Oklahoma City, OK 73112
>
> Mr. Richard M. Healy
> Kline & Kline, P.C.
> Kline Law Building
> 790 N.E. 63rd Street
> Oklahoma City, OK 73105
>
> Ms. Jayne Jarnigan Robertson
> Jayne Jarnigan Robertson, P.C.
> 825 Robinson Renaissance
> 119 North Robinson
> Oklahoma City, OK 73102

and forwarded by U.S. Mail, with proper postage thereon fully prepaid, to the attached Exhibit "A".

David L. Kearney

{S069123;6}