# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 01-01139 (KJC) |
| W.R. GRACE & CO., et al., | ) | Jointly Administered |
| | ) | |
| Reorganized Debtors. | ) | **Re: Docket No. 18821, 31812** |
| _____ | ) | |

## <u>ANDERSON MEMORIAL HOSPITAL'S BRIEF<br>IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>

DATED: September 8, 2015

Theodore J. Tacconelli (No. 2678)
Ferry Joseph, P.A.
824 Market Street, Suite 1000
Wilmington, DE 19899
Telephone 302-575-1555/Fax 302-575-1714
Email:  ttacconelli@ferryjoseph.com
_Local Counsel for Anderson Memorial Hospital_

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East; Post Office Box 685
Hampton, SC 29924
Telephone 803-943-4444/Fax 803- 943-4599
Email:  dspeights@speightsrunyan.com
_Counsel for Anderson Memorial Hospital_

David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone 305-372-1800/Fax 305-372-3508
Email:  dlr@kttlaw.com
_Counsel for Anderson Memorial Hospital_

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION.................................................................    1

II.    STATEMENT OF CASE.......................................................    3

III.   SUMMARY OF ARGUMENT............................................    4

IV.    STATEMENT OF FACTS.....................................................    9

V.     ARGUMENT.......................................................................    9

       A.     AMH'S CLASS IS SUPERIOR TO OTHER
              AVAILABLE METHODS FOR FAIRLY
              AND EFFICIENTLY ADJUDICATING PD
              CLAIMS...................................................................    11

              1.     Track A Claims...............................................    12

              2.     Track B Claims...............................................    14

                     a.     Bankruptcy Court...............................    14

                            i.      *Proof of Claim*.........................    14
                            ii.     *Discharge Motion*....................    16
                            iii.    *Accrual*....................................    17
                            iv.     *ZAI Experience*........................    22
                            v.      *Other Issues*.............................    26
                            vi.     *Late Claims*.............................    29
                            vii.    *Appeals*....................................    31

                     b.     District Court......................................    31

                            i.      *Jurisdiction*...............................    32
                            ii.     *Limitation on Claims*................    33
                            iii.    *Trial Issues*...............................    33

                     c.     Claimants' Perspective.........................    35

i

Page(s)

d.      Postscript................................................  40

B.    AMH'S CLASS IS SO NUMEROUS THAT
      JOINDER OF ALL MEMBERS IS
      IMPRACTICABLE......................................................  41

      1.    Grace's Admission...........................................  42

      2.    AMH's Evidence.............................................  42

      3.    Grace's Evidence.............................................  43

      4.    Judicial Estoppel.............................................  44

C.    AMH WAS NOT REQUIRED TO FILE A
      MOTION TO CERTIFY BEFORE FILING
      ITS CLASS CLAIMS.....................................................  48

D.    AMH WILL SHOW THAT IT WAS NOT
      REQUIRED TO OBTAIN PERMISSION TO
      FILE ITS CLASS CLAIMS IF ARGUED BY
      GRACE IN ITS RESPONSE.....................................  49

      1.    The Law............................................................  49

      2.    The History.......................................................  50

      3.    Failure to Object.............................................  57

      4.    Certification Opposition.................................  58

      5.    Summary...........................................................  60

E.    AMH WILL SHOW THAT THE MAYTAG
      DEFENSE IS WITHOUT ANY MERIT IF
      ARGUED BY GRACE IN ITS RESPONSE..............  61

VI.    CONCLUSION.......................................................  63

# TABLE OF AUTHORITIES

Page(s)

*Anderson Memorial Hospital, et al.* v. *W. R. Grace & Co.*,
Case No. 92-CP-25-279 (Ct of Common Pleas, Hampton Co. S.C.)    52

*Burlington N. R. Co. v. Hyundai Merch. Marine Co.*,
63 F.3d 1227, 1231-32 (3d Cir. 1995)    47

*Celotex v. City of New York*, 437 F.3d 1320 (11th Cir. 2007)    12

*Central Wesleyan College v. W. R. Grace & Co.*, 143 F.R.D.
628, 632-633 (D.S.C. 1992), affd, 6 F.3d 177 (4th Cir. 1993)    10, 18

*City of Greenville v. W.R. Grace & Co.*,
827 F.2d 975 (4th Cir. 1987)    18, 33

*Clayton Center Associates v. W.R. Grace & Co.*,
861 S.W.2d 686, 690 (E.D.Mo.App. 1993)    20, 62

*County of Orange, State of Texas, et al. v. National
Gypsum Co. et al.*, Case No. 890803-C (260th Judicial Dist.,
Orange Co, Texas)    52

*Dayton Independent School District, et al. v. U.S. Mineral Products
Co., et al.*, 1989 WL 237732 (E.D.Tex., Feb. 14, 1989)    10

*Detroit Board of Education v. The Celotex Com.*, Case No.
84-429634 (Cir.Ct., Wayne County, MI, Sep. 6, 1985)    10

*In re American Reserve Corp.*,
840 F.2d 487 (7th Cir.1988)    49, 51, 52, 54

*In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989)    48, 50, 58

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (2005)    40, 41

*In re Community Bank of Northern Virginia Mortgage
Lending Practices Litigation*, __ F.3d __, 2015 WL
4547042 (3rd Cir. July 29, 2015)    40

iii

Page(s)

*In re First Interregional Equity Corp.*, 227 B.R. 358
(Bankr. D.N.J. 1998)                                          52

*In re Graham*, 973 F.2d 1089, 1097 (3d Cir.1992)            47

*In re Kaiser Group International, Inc.*,
278 B.R. 58, 64 (Bankr. D. Del. 2002)                        4, 5, 8, 13, 29,
                                                             42, 50, 63

*In Re School Asbestos Litigation*, 789 F.2d 996 (3d Cir. 1986)   9, 10, 11, 59

*In re: School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1987)   20, 27, 62

*In re United Companies Financial Corp.*,
276 B.R. 368, 372 (Bankr. D. Del. 2002)                      4, 5, 6, 8, 13,
                                                             31, 42, 50, 63

*In re USG Corp.*, Case No. 01 2094 JKF, AMHA700966-1003     32

*In re W.R. Grace & Co.*, 355 B.R. 462 (2006)                23, 24, 38, 62

*In re W.R. Grace & Co.*, 389 B.R. 373 (Bankr. D. Del. 2008)  3, 48, 50

*In re W.R. Grace & Co.*, 475 B.R. 34, 101 (D. Del. 2012),
*aff'd* (July 24, 2013), *aff'd sub nom*                      46

*In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) and *aff'd*,
532 F. App'x 264 (3d Cir. 2013) and *aff'd*, 729 F.3d 311
(3d Cir. 2013) and *aff'd sub nom*                           43, 46

*In re Whirlpool Corp. Front-Loading Washer Products Liab.
Litig.*, 678 F.3d 409, 420 (6th Cir. 2012)                   33

*Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.)*,
607 F.3d 114 (3d Cir. 2010)                                  29

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors
Corp.*, 337 F.3d 314, 319 (3d Cir. 2003)                     45

iv

Page(s)

*Liberty Life Insurance Company v. W.R. Grace & Co.,*
C/A No. 87-3147-17 (D.S.C. January 12, 1990)                    34

*Matter of M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984)       3, 18, 29, 31

*MDU Resources Group v. W. R. Grace and Company-Conn.*,
14 F.3d 1274, 1279, n. 9 (8th Cir. 1994)                        19

*Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct.
970, 973, 59 L.Ed.2d 210 (1979)                                46

*Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir. 1989)         45, 46

*National Gypsum Co. v. Kirbvville Independent School District*,
770 S.W.2d 621, 624 (Tex.App. 1989)                            10

*New Hampshire- Vermont Health Services v. U.S. Mineral
Products Corp.*, 10 F.3d 805 (1st Cir. 1993)                    12

*Northridge Company v. W.R. Grace & Co.*,
205 Wis.2d 267, 556 N.W.2d 345 1996)                           26

*Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010)    33

*Prince George Center, Inc. v. U. S. Gypsum, et al.*, No. 5388
(Pa.Ct.Com.Pls. April 16, 1992)                                10

*Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)    45

*State of California v. W.R. Grace & Co.,*
418 B.R. 511 (D.Del. 2009)                                     18, 21, 27, 40

*State Farm v. W.R. Grace & Co.*, 24 F.3d 955 (7th Cir. 1994),
*aff'g* 834 F.Supp. 1052 (C.D. Ill. 1993)                       24

*T.H.S. Northstar v. W.R. Grace and Co.*, 860 F.Supp. 640,
646 (D.Minn. 1994), aff'd in part and reversed in part, 66
F.3d 173 (8th Cir. 1995)                                       27

|  | Page(s) |
|---|---|
| *Tioga Public School District No. 15 v. United States Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993) | 22 |
| *W.R. Grace & Co.-Conn. v. State of North Dakota, et.al.*, C/A No. 94-C-2079 (South Central District, Burleigh County, North Dakota) | 25 |
| *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012) | 29 |

| Other Authorities | Page(s) |
|---|---|
| FRBP 9006 | 30 |
| FRCP 23 | 3, 11, 13, 53, 54, 61 |
| FRCP 23(a)(1) | 7, 42 |
| FRCP 23(b)(3) | 5 |
| Restatement (Third) of Torts: Prod. Liab. §10 (1998) | 27 |
| 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4416 | 46 |
| 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4477 | 44 |
| 11 U.S.C. § 524(g)(2)(B)(ii)(i) | 7, 28, 29, 44, 47, 61 |

AMH files this Memorandum pursuant to this Court's Order directing the parties to brief the issue of class certification [DI 32560 (May 5, 2015)]. AMH now shows that the certification of a class on behalf of certain holders of Class 7A PD Claimants, as defined in its Motion, is the best, the fairest, and the most efficient method of executing the Plan proposed by Grace and approved by the Third Circuit.[1]

## I. INTRODUCTION

All Class 7A Asbestos PD Claims ("**PD Claims**") must be adjudicated in accordance with the Plan. Under the Plan, PD Claims are divided into two categories: Unresolved Asbestos PD Bar Date Claims ("**Bar Date Claims**"); and all other Asbestos PD Claims ("**Other Claims**") [Plan Definitions at 40].

The Case Management Order for PD Claims [DI 26368-27 (February 21, 2011), Ex. 25 ("**PD CMO**")[2]] [A-1] provides separate tracks for the post-confirmation adjudication of these two categories of PD Claims as follows:

- **Bar Date Claims**. Bar Date Claims, filed by Claimants ("**Bar Date Claimants**") by the March 2003 Bar Date ("**Bar Date**"), "will be adjudicated in accordance with the Amended Order Setting Deadlines Regarding Objections to PD Claims" [PD CMO ¶I.A. at 2 ("**Track A**")].

---

[1]Capitalized terms are defined in the Plan [DI26368-1 (February 21, 2011) at 11-50 ("**Plan Definitions**")] and in AMH's underlying Motion to Alter or Amend [DI31812 (March 5, 2014) ("**Motion**")] and Reply [DI32503 (February 4, 2015) ("**Reply**")].

[2]The referenced PD CMO is the Plan Confirmation version. Grace later filed an Amended Order, which is identical in all material respects to the Plan version [DI 31657-24 (January 28, 2014), Ex. 25 ("**Updated PD CMO**")]. Because Grace has never asked the Court to enter the Updated PD CMO, AMH will reference the Plan PD CMO. Citation to page numbers are to those pages on the docket (at the top of the page).

- **Other Claims**. Other Claims, filed by Claimants ("**Other Claimants**") after the Effective Date, must be adjudicated in accordance with an entirely different procedure proposed for the first time by Grace in the Plan after it admitted that it would face substantial PD Claims post-confirmation [PD CMO ¶II. at 2-6 ("**Track B**")].[3]

AMH filed an individual proof of claim for its hospital building ("**Hospital Claim**") and two Class Claims (collectively "**AMH's Claims**") [See DI 19987 (November 10, 2008)] [A-2]. The Plan specifically classifies AMH's Claims as Bar Date Claims [DI 26368-22 (February 21, 2011), Ex. 21 at 2, 6].

AMH's Claims are the only Bar Date Claims which have not been settled or expunged and which must be adjudicated in accordance with Track A. Grace objected to all Bar Date Claims [DI 9315 (September 1, 2005)] and prosecuted all of its objections, except for its objections to AMH's Claims. Grace's decision to keep AMH's Class Claims alive in the Plan would seem to be a calculated act to delay any appellate review of the certification issue.[4]

---

[3]The Order providing for the adjudication of Track A Claims was originally entered several years before the Plan was filed following briefing and argument by Grace and the PD Committee [See DI 13406 (October 13, 2006)]. In contrast to Track A, neither the PD Committee nor any asbestos PD lawyer was involved in drafting Track B. What AMH knows about the treatment of Track B Claims is based on reading the PD CMO.

[4]If Grace had prosecuted its objections to AMH's Hospital Claim, an Order allowing or expunging the Claim would have permitted AMH to appeal the Certification Order. If Grace had consented to an interlocutory appeal, the certification issue would have been resolved years ago. If Grace had not persuaded Judge Fitzgerald to designate AMH's Class Claims as inactive rather than expunging them (as Judge Fitzgerald said she should have done when she denied certification), AMH could have appealed the expungement order [DI 19891, 10/20/08 Tr. 19; DI 21257 (April 13, 2009)]. Finally, if Grace had tried to extinguish AMH's Class Claims in its Plan, AMH could have challenged that decision in its confirmation appeal.

AMH argues below that Track A is superior to Track B.  In doing so, AMH, as a Track A Claimant, emphasizes that it could not, it did not, and it does not object to or otherwise criticize the treatment of Track B Claims.  AMH simply believes that it has a fairer and more efficient way – **under the Plan** – to resolve PD Claims.

AMH emphasizes "**under the Plan**" because this Court asked AMH at the recent hearing how it could look beyond the Confirmation Order, which has been upheld on appeal [DI 32552, 4/15/15 Tr. 6-7].  AMH does not ask this Court to do that.  AMH embraces the Plan, lock, stock, and barrel.  The Plan authorizes two separate and distinct procedures.  Track A is superior.[5]

## II.  <u>STATEMENT OF CASE</u>

Before Grace proposed its Plan, before the District Court reversed Judge Fitzgerald's accrual standard, and before the Third Circuit overruled *Frenville*, Judge Fitzgerald denied AMH's original Motion to Certify on three grounds.  *In re W.R. Grace & Co.*, 389 B.R. 373 (Bankr. D. Del. 2008) ("*Certification Order*").  First, Judge Fitzgerald found that there was a lack of numerosity because any class must be limited to those who file individual Claims.  *Id*. at 374-375, 376-377 ("In this case, the property damage claim creditor universe is known").  Second, Judge Fitzgerald

---

[5]If the Court certifies the class, the Class Notice will provide Other Claimants an opportunity to opt-out and proceed under Track B.  Consequently, no Track B Claimant who wants to proceed individually will be deprived of its rights under the Plan.  In effect, the Claimants get to vote on whether Track A or Track B is superior.  Under Rule 23, if there are an excessive number of opt-outs, Grace can move to de-certify.

found that the claim objection procedure for the resolution of PD Claims (what is now Track A), as **then** proposed by Grace, was superior to the adjudication of PD Claims as a part of a class action. *Id*. at 379.  Third, Judge Fitzgerald found that certification would needlessly prolong the case.  *Id*. at 380.  In what may be dictum, Judge Fitzgerald also observed in a footnote that at an omnibus hearing on February 25, 2002, "this Court directed that before any Class Proofs of Claim were filed a Motion to Certify a Class had to be filed." *Id*. at 375-376, n. 5; see also 377, n. 10.

This matter is currently before the Court on AMH's Motion to Alter or Amend the *Certification Order*.  The Motion asserts that the Plan "presents an entirely new landscape on which to consider AMH's request and the means to employ the tools that certification of AMH's proposed class provides the Court" [Motion at 3].

### III.  <u>SUMMARY OF ARGUMENT</u>

This Court (Judge Walrath) has twice recognized that, "The Supreme Court has expressed the approval of class actions, noting that '[c]lass actions serve as an important function in our system of civil justice.'  The Third Circuit has held that class actions should be looked upon favorably." *In re United Companies Financial Corp*., 276 B.R. 368, 372 (Bankr. D. Del. 2002) ("*United Companies*") (citations omitted); *In re Kaiser Group International, Inc.*, 278 B.R. 58, 64 (Bankr. D. Del. 2002) ("*Kaiser Group*") (citations omitted).

"The vast majority of courts conclude that class proofs of claim are permissible

in a bankruptcy proceeding." *United Companies,* 276 B.R. at 371; *Kaiser Group*, 278

B.R. at 62.  The recognized procedure is for a claimant to file a class proof of claim,

and, after the debtor creates a contested proceeding by filing an objection, the

claimant responds by moving for class certification.  *United Companies,* 276 B.R. at

371; *Kaiser Group*, 278 B.R. at 61-62.  **"If the class claim is certified, then the**

**claims of all of the members of the class are incorporated in the proof of claim**

**that was timely filed.  This is inherent in class actions**."  *Kaiser Group*, 278 B.R.

at 63 (emphasis added).

Under the Plan, two methods are authorized for the resolution of PD Claims.

The fundamental question before the Court is whether adjudication of PD Claims as

a part of AMH's class pursuant to Track A is "superior to other available methods

[Track B] for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).

"Superior" is not synonymous with "only."  AMH does not argue that the

adjudication of an individual case pursuant to Track B does not provide relief for an

Other Claimant, nor does it seek to prohibit an Other Claimant from proceeding in

that manner if it chooses to opt out of the class.  That choice is presented in every

class action, albeit that the class adjudication provided for under Track A is far more

streamlined than the trial of a PD lawsuit, and the bifurcated adjudication provided

for each individual Claimant under Track B is significantly more complicated than a

single products liability action.

At the beginning of this bankruptcy, Grace told the Court that in the absence of summary judgment, "**Grace will seek adjudication of these claims on a consolidated basis through a bench trial**" [DI 6 at 62 (emphasis added)].  Judge Walrath noted in finding superiority in *United Companies* that "we view the filing of a class claim as similar procedurally to the Debtors' use of omnibus objections which is a common practice in this Court." *United Companies,* 276 B.R. at 376.  That is the exact procedure the Plan provides for the adjudication of AMH's Class Claims.

Similarly, in certifying the ZAI class, Judge Fitzgerald explained that class treatment was superior to individual litigation in the bankruptcy court:

> The Court determines that the class action is a superior method for fairly and efficiently adjudicating this controversy. In this regard, the Court finds that Class members do not have a strong interest in individually controlling prosecution of their claims. Indeed, it would be cost prohibitive for the vast majority of Class members to defend their claims in the bankruptcy court and otherwise navigate a complicated objection process. Individual adjudication of these claims would present this court with severe management difficulties and involve unacceptable redundancies, while class treatment offers significant judicial efficiencies.

[DI 20535 (January 16, 2009) at 2-3 ("***ZAI Certification Order***")].  Grace advised Judge Fitzgerald that it "absolutely supports this motion [to certify] and we would request the Court to enter the order" making this finding [A-3].

As shown below, when the choice is between hundreds or thousands of bifurcated trials in this Court and District Courts around the nation, over an unlimited number of years, with a myriad of procedural questions, individual discovery disputes,

and multiple appeals, versus one claim objection proceeding in this Court, it is manifest that AMH's class will more fairly and efficiently resolve the PD controversy. Simply stated, AMH is the Plan's best friend.

Numerosity means that AMH must show that its putative class is so numerous that joinder of all members is impracticable. FRCP 23(a)(1). Grace not only admitted numerosity in response to AMH's original class action Complaint in South Carolina [A-4], but it is judicially estopped from contesting numerosity because in order to get the substantial benefits of a 524(g) channeling injunction, and to receive the $1.2 billion Sealed Air Settlement, it proved to the ultimate satisfaction of the Third Circuit that it faced a substantial number of PD Claims.[6]

Even if Grace could pursue a numerosity objection, it is unclear what the basis of Grace's challenge would be now that the Plan has made clear that – contrary to Judge Fitzgerald's basic reason for denying certification – the universe of PD Claimants is not limited to those who timely filed individual proofs of claim before the Bar Date. Perhaps Grace will withdraw this objection.

In any event, if Grace persists in challenging numerosity, and it is allowed to do so, AMH already identified thousands of Claims from the limited data set it

---

[6]Although it is unnecessary to reach this additional ground, for the same reasons outlined below regarding Grace's "Maytag Defense," Grace is also equitably estopped from contesting numerosity because for over forty years it has represented to building owners and regulators that its products do not injure (contaminate) buildings, and beginning more than thirty years ago, it has invested millions of dollars persuading building owners to leave its products in place. *Infra* at 19-20, 27, 61-62.

acquired in pre-bankruptcy discovery [A-2; A-5].  In contrast to these numbers, Judge

Walrath certified classes with 291 and 47 members.  *United Companies,* 276 B.R. at

373; *Kaiser Group,* 278 B.R. at 64.

In response to Judge Fitzgerald's observation that AMH should have filed a

motion to certify before filing its Class Claims, AMH will show that Judge Fitzgerald

never issued such a directive, nor is there any authorized procedure for filing a Motion

to Certify before a class proof of claim is filed.  Moreover, Grace never raised this

point in opposition to certification or in its objections to AMH's Claims.

Although Judge Fitzgerald did not rule that AMH needed permission to file a

class claim, because Grace previously made that argument, AMH will show a number

of stand alone reasons why this was not required.  AMH will begin with the fact that

after Judge Fitzgerald made this comment, it was Grace – citing visiting Judge

Newsome's ruling in the *Armstrong* bankruptcy – who convinced Judge Fitzgerald

that the law permits anyone to file a class claim.  Thereafter, the proposed prohibition

on class claims was withdrawn from the notice (**"Bar Notice"**) in the  March 2003

Bar Date Order ("**Bar Order**").  As Judge Fitzgerald ruled in a similar situation,

Grace also waived this ground by not including it in its objections to AMH's Claims.

Finally, at the recent discovery hearing, Grace rhetorically asked "where's the

evidence he submitted of any claims since we've gone effective?" ("**Maytag**

**Defense**") [DI 32552, 4/15/15 Tr. 32].  Because Grace immediately acknowledged

that the merits of class certification were not before the Court at that time, AMH will follow traditional briefing protocols rather than assuming what Grace will argue on the merits in its Response.  Nevertheless, because of the emphasis Grace placed on this point at the hearing, AMH will outline some of the arguments it is prepared to make to show that the fact that other claims have not been filed since the Effective Date is no impediment whatsoever to class certification.

In summary, AMH will show that, under the Plan, all of Judge Fitzgerald's grounds for denying certification have flipped in favor of certification: there are unknown PD Claims; there will be substantial PD Claims; AMH's class will be adjudicated in a claim objection process while individual PD Claimants will have to individually adjudicate their Claims in two Courts; and AMH's class will greatly accelerate the resolution of Grace's PD liabilities.  Class certification is simply the best way to effectuate the Plan in a fair and efficient way.

## IV.  <u>STATEMENT OF FACTS</u>

All the facts that are necessary to the resolution of AMH's Motion are found in the Plan.  To the extent that AMH offers alternative arguments, it will include any additional pertinent facts in its discussion.

## V.  <u>ARGUMENT</u>

There is no greater precedent for the certification of AMH's class than *In Re School Asbestos Litigation*, 789 F.2d 996 (3d Cir. 1986) ("***School Asbestos***").  In that

action, Grace consented to a nationwide class action on behalf of all public and private schools.  Grace represented to the District Court that:

- Case-by-case adjudication of these far-reaching issues is inefficient and potentially unfair.  Fortunately, the legal system is not helpless.  The Federal Rules of Civil Procedure have provided for the resolution of certain appropriate matters in a single, nationwide forum.  *Id*. at 2.

- Most importantly, these cases involve novel legal and factual questions concerning whether the presence of these asbestos-containing materials creates an unreasonable hazard to the health of school building occupants.  This is the fundamental issue of disagreement between class members and defendants.  It is a principal basis on which defendants deny that they have a duty to remove the asbestos-containing products from class members' school buildings.  Resolution of this one issue will significantly advance the termination of this litigation.  *Id*. at 3.

- The policies of judicial economy and orderly judicial administration weigh strongly in favor of certification.  *Id*. at 4.

- We submit that there are important issues that are common to the claims of all class members or to the defenses related to these claims.  Indeed, we believe that class-wide resolution of these issues will obviate the necessity for hundreds of individual suits.  *Id*. at 7.

[A-6].

The Fourth Circuit and numerous other courts have followed *School Asbestos* in certifying asbestos PD class actions.[7]  Grace settled all of these class actions.

_____

[7]*Central Wesleyan College v. W. R. Grace & Co.*, 143 F.R.D. 628, 632-633 (D.S.C. 1992), affd, 6 F.3d 177 (4th Cir. 1993) ("***Central Wesleyan***"); see also *National Gypsum Co. v. Kirbvville Independent School District*, 770 S.W.2d 621, 624 (Tex.App. 1989); *Dayton Independent School District, et al. v. U.S. Mineral Products Co., et al.*, 1989 WL 237732 (E.D.Tex., Feb. 14, 1989); *Prince George Center, Inc. v. U. S. Gypsum, et al.*, No. 5388 (Pa.Ct.Com.Pls. April 16, 1992); *Detroit Board of Education v. The Celotex Com.*, Case No. 84-429634 (Cir.Ct., Wayne County, MI, Sep. 6, 1985).

Thousands of claims – accrued and unaccrued – were fairly and efficiently resolved without the necessity to litigate thousands of individual lawsuits.

Additionally, shortly after Grace filed its Petition, the South Carolina Court (Judge John C. Hayes, III) – who, pursuant to an appointment by the Chief Judge of the South Carolina Supreme Court, had presided over the case for years – certified a class action as to all other Defendants [A-7].  The record before Judge Hayes, which was closed before Grace filed its Petition, was made almost entirely by Grace, and consisted of multiple and extensive briefs and submissions and the transcript of a two day certification hearing where Grace's counsel served as lead counsel (and which was attended by Grace's Vice-President and General Counsel) [A-8].

Unlike all of these class actions, there are, at most, only two Rule 23 issues left to be decided in this case: superiority and numerosity.  There are stronger grounds supporting these two requirements than Grace urged in *School Asbestos* (or in the *ZAI Certification Order*).

## A.    AMH'S CLASS IS SUPERIOR TO OTHER AVAILABLE METHODS FOR FAIRLY AND EFFICIENTLY ADJUDICATING PD CLAIMS

From the standpoint of this Court (and other Courts that will be involved in the adjudication of Track B Claims), and from the standpoint of the vast majority of PD Claimants, a careful analysis of the PD CMO demonstrates that adjudication of PD Claims as a part of AMH's class in accordance with Track A is superior to individual litigation of each and every Other Claim in accordance with Track B.

1.      **Track A Claims**

Pursuant to Track A, this Court will adjudicate Grace's Objections to AMH's

Hospital Claim on two grounds:  lack of hazard and damages [PD CMO ¶I.A. at 2,

Ex. ¶A. at 9-10].  Although the time limits are still blank in the PD CMO, Grace

convinced Judge Fitzgerald to enter the original PD CMO providing that Grace's

hazard objections to 656 Bar Date Claims would be consolidated and litigated in less

than eight months [DI 13406 at 2; DI 13306-2 (Ex. B) at 4-5].

This Court will adjudicate Grace's hazard objection in one bench trial.  The

results of the trial will be binding on AMH, individually and as the representative of

all members of the class.  Grace and AMH not only conducted factual discovery

before the bankruptcy, but Grace and AMH's counsel have litigated the hazard issue

for thirty years. (*City of Greenville* was filed on June 21, 1985).

This Court will then determine class damages, which is not only something that

is done every day in class actions, but is particularly straightforward in a non-jury

asbestos PD case.[8]  Other Claims (Track B Claims) will be limited to those which are

---

[8]By way of example, the Court could adjudicate the total amount of class damages
based upon documents and expert testimony.  Grace would then exit the stage, and the
Court, in supervising the class, would appoint an administrator to divide the "pot" based
upon Court-approved procedures. Alternatively, the Court could avoid the first step
altogether by just appointing an administrator to process Claims pursuant to Court-
approved procedures similar to those adopted in asbestos bankruptcies.  See, e.g. *Celotex
v. City of New York*, 437 F.3d 1320 (11th Cir. 2007).  In contrast to a bench trial in this
Court, just the adjudication of damages in a jury trial can present difficult questions and
result in multiple trials.  See, e.g. *New Hampshire- Vermont Health Services v. U.S.
Mineral Products Corp.*, 10 F.3d 805 (1st Cir. 1993).

not within the definition of AMH's class, including opt-outs.

If this Court grants class certification, there will be no Bar Date issues.  As a matter of law, all members of the Class will have timely filed their Claims as a part of AMH's Class Claims.  *Kaiser Group,* 278 B.R. at 63.  Providing an opportunity for Claimants who did not pursue individual Claims is a strong reason for class certification.  *United Companies*, 276 B.R. at 376 ["there is no better method to adjudicate the claims aside from the class action" because, *inter alia*, "most members of the proposed class are unaware of their rights."].

While Judge Fitzgerald's certification ruling may have been based on some perceived tension between the class process and the Bar Date, there is in fact no such tension.  A bar date requires all claims – including class claims – to be filed by a certain date.  Once such a claim is filed, a class claim is addressed under the standards set forth in Rule 23, as this Court did in *United Companies* and *Kaiser Group*, regardless of whether each class member has filed an individual proof of claim. See, e.g., *United Companies*, 276 B.R. at 376 ("it is probable that most members of the proposed class are unaware of their rights under West Virginia law; thus, it is unlikely that individuals will file separate claims to protect their rights"); *Kaiser Group*, 278 B.R. at 63-64 (rejecting argument that recognizing a class would give claimants who did not file proofs of claim "an extension of the time within which to file a claim" because when a class is certified, "all the members of the class are incorporated in the

proof of claim that was timely filed," of which the debtors had notice before the bar date).  It is the same way the law treats the statute of limitations in a class context.

If the Court does not certify AMH's class, the results of the hazard adjudication will be binding solely on AMH (absent reversal of the certification ruling on appeal).  In that event, other than AMH's individual Hospital Claim, all PD Claims will be Other PD Claims and adjudicated one-by-one pursuant to Track B.

### 2.    Track B Claims

Under Track B, a building owner who wants to adjudicate an Other PD Claim against Grace must file a Proof of Claim ("**POC**") with the PD Trust [PD CMO ¶II.A. at 3].  In contrast to a Track A Claimant (AMH) adjudicating its Claim in this Court on two issues, an Other Claimant's filing of a POC triggers an adjudication of all issues, not only including hazard and damages, but also, for example, liability and statute of limitations.  Before the Other Claim can be Allowed, the Other Claimant must prevail  in separate adjudications in this Court and a United States District Court with jurisdiction, which will take many years.

### a.    Bankruptcy Court

### i.    *Proof of Claim*

At the outset, the PD CMO requires the Other Claimant to provide a large amount of information for each building [PD CMO ¶II.A.1 at 3-5].  There is no such thing as a POC Claim Form or a POC Notice.  Unlike the ZAI Trust, which was

allocated $3.5 million to educate ZAI Claimants about their rights, the PD Trust does not have a website or any program to educate Other Claimants on the process of filing a POC [DI 26368-35 (February 21, 2011) at 11].[9]

The PD CMO provides that the PD Trust's claims processing agent shall promptly provide the POC to Grace [PD CMO ¶ II.A.2. at 6].  To AMH's knowledge, there is no claims processing agent.  There is no requirement for the PD Trust to inform the Other Claimant when this is done.  Within forty-five days of receipt of the POC from the PD Trust, "Grace will request any additional information it believes is necessary to evaluate whether to file an Asbestos PD Claim Discharge Motion" ("**Discharge Motion**") [PD CMO ¶ II.B.1 at 6].

It is not clear if the "additional information" that "Grace will request" is confined to those items listed in the PD CMO.  For example, can Grace ask the Other Claimant to produce documents showing that the subject building has (or had) a Grace product ("**Product Identification**" or "**PID**")?  The fact that typical PID documentation (e.g. invoices, constituent analysis, etc.) is not listed in Track B suggests that PID might not be an issue before this Court.  However, it seems likely that Grace will argue that the Other Claimant's obligation to produce documents

---

[9] Grace told the Court at the recent discovery hearing that: "The PD trust is – I mean, there's a telephone sitting there on a desk that has not rung eight hours a day, five days a week for 15 months.  The poor guy sitting there like a Maytag repair man at the PD trust hasn't gotten any claims" [DI 32552, 4/15/15 Tr. 32].  In fact, the PD Trustee is a lawyer with a law office in Texas.  There is no PD Facility because, unlike the PI and ZAI Trusts, the Grace PD Trust does not process PD Claims.

relating to certain activities affecting "any asbestos-containing product(s) manufactured or distributed by any of the Debtors (hereafter 'Asbestos-Containing Products') in the property" will include PID [PD CMO ¶II.A.(D) at 3-4].

Forty-five days after receiving Grace's request, the Claimant "shall provide to Grace the requested information, **subject to all applicable objections, privileges or exemptions from discovery**" [PD CMO ¶II.B.2 at 6 (emphasis added)]. At that point, one or more discovery disputes will likely arise, requiring briefing by the parties. This Court will then have to conduct one or more discovery hearings, requiring Claimant's counsel to associate local counsel and appear in Delaware.

Under Track B, the process in this Court only begins with the Claimant's disclosure of the initial information.

### ii.    *Discharge Motion*

Not later than forty-five days after receipt of such information from the Claimant (presumably after the resolution of any discovery disputes), "Grace, on behalf of the Asbestos PD Trust, shall file" the Discharge Motion "seeking to enjoin or otherwise terminate the prosecution of such claim on the ground that the claim is barred by the discharge granted to Grace pursuant to confirmation of the Plan and the March 2003 Bar Date" [PD CMO at ¶II.B.3 at 6].

"In its sole discretion, Grace shall be authorized to prosecute" the Discharge Motion "on behalf of the Asbestos PD Trust" [PD CMO ¶II.B.4 at 6]. Obviously the

PD Trustee is not the PD Claimant's fiduciary.  Given that Grace objected to each and

every timely filed Bar Date Claim, there is no basis to assume that Grace will not file

a Discharge Motion with respect to every Other Claim.  Indeed, there is nothing to

lose and everything to gain for Grace because, at a minimum, it will obtain discovery

for use in the litigation if the Motion is denied.

The PD CMO is unclear on what this Court must decide and what standard

applies.  The parties to each Discharge Motion may have differing interpretations over

which issues govern.  Again, by way of example only, is PID an issue in this Court?

If so, who has the burden of proof – the claimant, because a plaintiff must prove PID

at trial, or Grace, because a defendant must show that a lawsuit is barred?  In either

event, both fact and expert testimony is usually offered to prove or disprove PID.  If

PID is an issue, and the Court denies the Discharge Motion, does that mean that the

PID finding is determinative on the merits and binding on the next Court, or is this

Court just required to decide if the Claimant has made a *prima facie* case.[10]

### iii.    *Accrual*

Although it is unclear what specific questions the Court must resolve in

connection with the Discharge Motion, the language of the PD CMO and common

sense suggest that this Court must address the issue of accrual: did the product at issue

---

[10]During the bankruptcy, Judge Fitzgerald ruled that on Grace's Motion to Strike
Claims based on a lack of PID, all that the Claimant had to do was make a *prima facie*
showing [DI 11707, 1/26/06 Tr. 74].

cause injury before the Bar Date?  At the time of the Bar Order, the definition of a Claim was limited to those which had accrued under applicable state law.  *Matter of M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984).  Injury is defined in an asbestos PD case as contamination.  *State of California v. W.R. Grace & Co.,* 418 B.R. 511 (D.Del. 2009) ("***State of California***").  If Grace cannot show that the subject building was injured (contaminated) before the Bar Date, there was no Claim to bar.

Accrual is actually the relevant inquiry on three distinct issues facing an Other Claimant.  In reverse order of probable consideration, these accrual issues are as follows:

- **Hazard**.  Has the building been injured (contaminated)?

- **Statute of Limitation**.  When did the Claimant know, or should it have known, that its building had been injured (contaminated)?

- **Discharge**.  Was the building injured (contaminated) before the Bar Date?

By definition, all Claims have or will accrue.  See *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 982 (4th Cir. 1987) [labeling Grace's argument denying the inevitability of removal as "specious" in light of the federal "NESHAPS Regulations" requiring separate (and costly) asbestos removal to prevent major asbestos contamination during renovation or demolition activities.[11]  The question is

---

[11]The Fourth Circuit later affirmed that the requirement of a building owner to comply with NESHAPS is a common issue supporting certification of a nationwide asbestos PD class action. *Central Wesleyan,* 6 F.3d at 177.

not whether but when Claims accrue.

Not for the first time, Grace will make schizophrenic arguments on when a particular Claim accrues depending on which of these issues is being heard.  In the adjudication of AMH's  Track A Hospital Claim, where hazard is the only one of these three issues to be decided, Grace may argue that its product has not injured (contaminated) one building, AMH's Hospital.  In a Track B adjudication, Grace will first argue in this Court that the POC should be discharged because its product caused injury before the Bar Date.  If it loses that argument, Grace will then argue in the District Court that the Claim is time-barred because the building owner knew or should have known its product caused injury so many years before it filed its lawsuit.  If Grace loses that argument, it will then come full circle and argue its hazard defense on the ground that its product does not cause injury.  Grace previously has been called out by one Circuit Court for taking such inconsistent positions.[12]

If accrual is the issue (or at least an issue) on Grace's Motion to Discharge, an Other Claimant may ask this Court as a threshold matter to find that Grace is legally prohibited from arguing that the Claim accrued before the Bar Date.  For almost 50 years, Grace has argued  (and  convinced many building owners, architects, and

_____

[12]*MDU Resources Group v. W. R. Grace and Company-Conn*., 14 F.3d 1274, 1279, n. 9 (8th Cir. 1994) ["Grace argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos Monokote. The arguments are inconsistent: if *MDU* has suffered no injury from the Monokote, then it has no cause of action – until an injury is suffered, the statute of limitations cannot begin to run."].

regulators) that its in-place products do not injure (contaminate) buildings.  See, e.g.

*In re: School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1987); *Clayton Center*

*Associates v. W.R. Grace & Co.*, 861 S.W.2d 686, 692 (E.D.Mo.App. 1993).

Grace specifically represented to this Court at the outset of the bankruptcy that,

"MK-3 was applied wet and its cementitious nature bound and encapsulated the

asbestos," and that "a wet-sprayed, cementitious product like MK-3 incorporated into

buildings does not pose an asbestos hazard" [DI 6 (April 2, 2001) at 10, 61].  Grace

later emphasized this point in its Motion seeking a Bar Date when it told the Court

that its wet-sprayed, cementitious products "bound and encapsulated the asbestos" [DI

586 (June 27, 2001) at 6-7)].  As noted herein, Grace's position in the ZAI Litigation

was that ZAI – the same product as Masonry Fill – does not injure.

Throughout the bankruptcy, Grace never backed off of this position.  As noted

above,  Grace filed a lack of hazard objection to every PD Claim.  Years later, Grace

told the Third Circuit that Other Claims, "while expected, would be subject to many

defenses, including the Plan's discharge provisions, a statute of limitations defense

**and a defense that Grace's in-place products do not pose a health hazard**" [A-9

at 53 (emphasis added)].  Saying that in-place products do not pose a health hazard

is tantamount to saying that in-place products do not injure.

The District Court accepted Grace's argument that, "Where a plaintiff **admits**

the existence of contamination outside the limitations period, dismissal may be

warranted," even if, in fact, that is not true. *State of California v. W.R. Grace & Co.,* 418 B.R. 511, 525 (D.Del. 2009) (emphasis added). Will Grace – which **denies** the existence of contamination from its in-place products – likewise be legally precluded (as suggested by the Eighth Circuit) from contending that contamination occurred before the Bar Date? An Other Claimant can certainly argue in good faith that its obligation to file a Claim before the Bar Date was tolled under recognized legal and equitable principles.

If accrual is an issue to be decided in the Discharge Motion, and Grace is not bound by its previous denials, the Court must proceed to determine if the Claim, in fact, accrued before the Bar Date. The District Court held that in considering Grace's objections to PD Claims, "the party seeking dismissal on a statute of limitations defense bears the burden of proving contamination outside the limitations period." *State of California v. W.R. Grace & Co.,* 418 B.R. 511, 525 (D.Del. 2009). Does Grace similarly have "the burden of proving contamination" occurred before the Bar Date?

Alternatively, is this Court's inquiry under a Track B discharge procedure limited to determining if there is an issue of fact as to whether and when accrual occurred, which should be decided later by a jury in the District Court? Stated differently, does the PD CMO require this Court to finally decide the accrual issue for all purposes or is the Court being asked to rule on what is, in effect, a Motion for

Summary Judgment?

The PD CMO provides that the Motion to Discharge "shall be heard under appropriate governing federal laws, rules and Bankrupcy Rules" [PD CMO ¶II.B.4 at 6]. Thus, once Grace files a Discharge Motion, the parties will be entitled to serve written discovery and take depositions. The issue of accrual – when did the injury (contamination) occur – typically requires the testimony of both fact and expert witnesses (including industrial hygienists, microscopists, and epidemiologists). See e.g. *Tioga Public School District No. 15 v. United States Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993). Obviously nationwide discovery not only can be expensive and time consuming, but may present additional discovery disputes.

### iv.    ZAI Experience

AMH is not being "chicken little" when it suggests that this process to determine accrual alone could be an ordeal. First, Grace specifically told the Third Circuit that "post-Effective Date PD demands plainly will be filed, and, equally plainly, **discharge issues will be vigorously contested**" [A-9 at 60 (emphasis added)]. Second, while it is perfectly appropriate to consider the "worst case scenario" if certification is denied, there is already a perfect analog in this bankrupcy making it plain what this Court could face each time an Other Claimant files a POC.

In 2002, Judge Fitzgerald decided that before issuing a ZAI Bar Date – which might lead homeowners to disturb the material – she wanted to determine the limited

question of "what science demonstrates with regard to whether ZAI creates an unreasonable risk of harm" [DI 2855 (October 21, 2002)].  Grace created a contested proceeding by objecting to four ZAI Claims represented by the same counsel.  See *In re W.R. Grace & Co.*, 355 B.R. 462, 465, n. 10 (2006) ("**ZAI Science Opinion**").

Grace and the four ZAI Claimants then proceeded to litigate this narrow issue ("**ZAI Litigation**").  At the beginning of the litigation, Judge Fitzgerald granted Grace's objection to the discovery of of Masonry Fill test results and emphatically ruled that Masonry Fill was not before her [DI 2779, 9/23/02 Tr. 57-59].  Consequently, the later *ZAI Science Opinion* is not only interlocutory, but it does not apply to Masonry Fill.

Although litigated by ZAI Claimants' private counsel – the PD Committee was not involved – because of the modest amount sought by the four Claimants, Judge Fitzgerald directed the estate to pay all fees and expenses [DI 2162, 5/20/02 Tr. 67].  Judge Fitzgerald told everyone that the results of this proceeding would not be binding on any other ZAI Claimant [DI 1912, 3/18/02 Tr. 73-74, 80].

Over four years later, after scientific testing, nationwide discovery, numerous motions, multiple hearings, and voluminous briefs, Judge Fitzgerald issued the *ZAI Science Opinion*.  Judge Fitzgerald concluded  that as to certain causes of action, the four ZAI Claimants had not met their burden to show that in-place ZAI is "more likely than not **to cause an injury**."  *Id*. at 473 (emphasis added).  The record before

Judge Fitzgerald on this one issue involving four ZAI Claimants consisted of more than one hundred and thirty (130) docket entries, and the summary judgment filings alone consisted of more than 4000 pages.[13]

ZAI Claimants' counsel alone invested more than 15,000 hours representing these four ZAI Claimants up to the entry of the non-final *ZAI Science Opinion* (the District Court denied an interlocutory appeal) [A-10].  The ZAI Litigation cost the estate approximately $6 million dollars in fees and costs [DI 6232 (August 20, 2004)].  Importantly, unlike a new counsel for an Other Claimant, lead ZAI counsel, Edward J. Westbrook, did not have to reinvent the wheel because he was already one of the most experienced asbestos PD lawyers in the nation.  See, e.g. *State Farm v. W.R. Grace & Co.*, 24 F.3d 955 (7th Cir. 1994), *aff'g* 834 F.Supp. 1052 (C.D. Ill. 1993).

Because the *ZAI Science Opinion* was not binding on any other ZAI Claimant, if the Plan had treated ZAI Claims the same as it does Other Claims, this Court would have faced the same never ending series of trials to decide this issue over and over again.  Grace avoided that quagmire by consenting to the certification of a ZAI class

---

[13]The parties took extensive factual discovery, including massive productions of Grace documents, depositions of Grace's former employees in four states (Massachusetts, California, South Carolina, and Florida) and fact witnesses in nine states (Massachusetts, District of Columbia, Idaho, New York, South Carolina, Virginia, Vermont, Washington, and Minnesota). The parties retained twelve experts located in seven states (Pennsylvania, California, Florida, Georgia, Tennessee, Washington, and Wisconsin) and exchanged voluminous expert materials and reports.  The parties then took expert depositions all over the country.  Both sides also conducted scientific experiments, and Judge Fitzgerald suggested that the ZAI Claimants needed to sponsor an epidemiological study (which would have cost millions of dollars).  *ZAI Science Opinion*, 355 B.R. 493.

and the settlement of all ZAI Claims, including those who did not file individual ZAI Claims before the ZAI Bar Date.  Judge Fitzgerald approved the settlement, granted class certification, and confirmed the Plan incorporating this treatment.

The foregoing discussion of the ZAI Litigation is reported solely to show what this Court and the parties could face in litigating **just the accrual issue** through a summary judgment motion.  If accrual is an issue, the journey which led to the *ZAI Science Opinion* is the same journey that must be undertaken by each and every Other Claimant who files a POC.  If, as AMH suspects, Grace will argue that there are other grounds to bar the Claim, including PID, each proceeding will be more extensive and more expensive.  In addition, unlike the ZAI litigation where Judge Fitzgerald approved all fees and costs, there will be no similar restraint on Grace, which has "sole discretion" to litigate the post-Confirmation litigation.

Absent summary judgment, this Court will conduct an evidentiary hearing on the question of whether or not the Other Claim is barred.  If the past is prologue, the parties will file a number of motions, disclosures, exhibit lists, and depositions, as well as extensive Trial Briefs.[14]  Thereafter, Counsel – this time accompanied by lay and expert witnesses – will return to Delaware for trial.  Given the number of witnesses in the ZAI Litigation, the hearing could last for days, if not for weeks.

_____

[14]Again, this is not some theoretical prediction.  Grace filed 17 Motions *in Limine* in the last individual case AMH's counsel filed against Grace.  *W.R. Grace & Co.-Conn. v. State of North Dakota, et.al.*, C/A No. 94-C-2079 (South Central District, Burleigh County, North Dakota) [A-11].

###### v.    *Other Issues*

Even if Grace can and does show that the injury accrued before the Bar Date, that does not end this Court's involvement. The Claimant may still assert that it is entitled to go forward on a host of grounds. While AMH is not a Track B Claimant, four arguments quickly come to mind.

First, when did the Claimant know or when should it have known that its building had been injured (contaminated)? The PD CMO itself suggests that the inquiry is focused on what the Claimant knew, as opposed to whether or not Grace's product had injured (contaminated) the building.[15] An Other Claimant can certainly argue that this should also be the standard for determining whether or not it was obligated to file a Claim before the Bar Date.

Second, should Grace be able to convince the Court that the Claim is barred as a matter of law under one cause of action (e.g. negligence or strict liability), the Claim may be alive and well under other counts. For example, the Wisconsin Supreme Court upheld a verdict against Grace in nuisance for the "continuing harm" caused by its Monokote fireproofing. *Northridge Company v. W.R. Grace & Co.*, 205 Wis.2d 267, 556 N.W.2d 345 1996). In nuisance, the Claim essentially accrues every day until the offending material is abated. Other states have recognized that a

---

[15]For example, the PD CMO requires the Claimant to disclose such information as when it first knew of the Grace bankruptcy, what publications it read, and when it first knew that the product had asbestos [PD CMO at ¶II.A.1 at 3-6].

tortfeasor has a continuing duty to warn. Restatement (Third) of Torts: Prod. Liab. §10 (1998). From the 1920's until today, Grace has never warned anyone.

Third, the foregoing discussion presupposes that the fundamental issue is accrual, i.e. whether or not a Grace product injured (contaminated) the building before the Bar Date. But what if Grace does not concede that accrual is the fundamental issue on a Motion to Discharge? Prior to filing its Plan, Grace promoted its contradictory arguments that its in-place products do not release asbestos fibers while investing millions of dollars trying to prove that the statute of limitations had run on all PD Claims because of the general knowledge of the hazards of asbestos. See e.g. *In re: School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1987); *T.H.S. Northstar v. W.R. Grace and Co.*, 860 F.Supp. 640, 646 (D.Minn. 1994), aff'd in part and reversed in part, 66 F.3d 173 (8th Cir. 1995).[16] Despite the District Court's subsequent decision in *State of California*, is Grace really going to accept the burden of proving that one of its in-place products released dangerous asbestos fibers before the Bar Date? Grace's response to AMH's challenge to the Plan suggests otherwise.

Fourth, AMH asked the District Circuit to reverse findings by Judge Fitzgerald that the Plan was feasible. In response, Grace told the District Court that, "The notice of the Bar Date was extensive and was intended to reach both known and unknown claimants" [A-12 at 268]. Grace then added by way of a footnote that, "The language

---

[16]Grace paid one expert witness $4,005,782.66 to testify as to the statute of limitations [DI 15155 (April 11, 2007)].

of the Summary Bar Notice was extremely broad, and did not draw distinctions based on whether claims had 'accrued' under various legal tests." *Id*. at n. 729.

Grace continued this theme in the Third Circuit in response to AMH's feasibility challenge.  In direct contradiction of Judge Fitzgerald's finding in the *Certification Order* that, "In this case, the property damage claim creditor universe is known," Grace again argued that, "The notice of the Bar Date was extensive and was intended to reach both known and unknown claimants" [A-9 at 57].  To this sentence, Grace also added a footnote that, "AMH's multiple rounds of argument on claim accrual issues demonstrate that no matter what the state of the law is, post-Effective Date PD demands plainly will be filed, and, equally plainly, discharge issues will be vigorously contested." *Id.* at 60.[17]

The reality is that while Grace, in order to get a 524(g) injunction, reversed course and asserted that there would be substantial PD Claims post-confirmation, to AMH's knowledge, Grace has never repudiated its argument that the Bar Date applies to all PD Claims, accrued and unaccrued alike.  If Grace does assert in a Discharge Motion that unaccrued Claims were barred in 2003, that will open up an entirely different set of issues to be resolved by this Court.  At a minimum, this Court will

_____

[17]Regardless of Grace's position, adjudication of Track A Claims is superior to the adjudication of Track B Claims.  However, AMH challenges Grace to forthrightly address the narrow issue of whether the Claim of a building owner whose product had not caused injury (contaminated) before the Bar Date is barred so that the parties can have an honest debate over superiority without any confusion over what a Track B Claimant faces.

have to address the due process limitations on barring claims as defined by *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012) and *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114 (3d Cir. 2010).   The larger question is if all Claims are barred, how did Grace obtain a valid 524(g) injunction?

During the Confirmation proceedings, the Third Circuit issued its opinion in *Grossman's,* which overruled *Frenville*, and while the Confirmation Order was on appeal, the Third Circuit issued its opinion in *Owens Corning,* which held that the claims of parties who received notice of the bankruptcy at a time that *Frenville* was governing law, and whose claims had not yet "accrued," cannot be discharged and must be afforded a "re-do." *Owens Corning* at 679 F.3d at 108.   Because AMH is not a Track B Claimant, it will not delve into this morass, which has consumed bankruptcy practitioners in this Circuit since *Frenville* was decided over thirty years ago.   If the Court certifies AMH's class, the Court will not have an *Owens Corning* problem because again, by definition, all members of the Class are Bar Date Claimants.   *Kaiser Group*, 278 B.R. at 63 ["If the class claim is certified, then the claims of all of the members of the class are incorporated in the proof of claim that was timely filed.  This is inherent in class actions."].

### vi.      Late Claims

Lastly, even if this Court grants the Discharge Motion, the subject Claimant has a right to seek to file a late Claim.  What if, for example, a homeowner did not

know that it had Masonry Fill between the walls until demolition activities after the

Bar Date Notice?  Even if the homeowner knew it had Masonry Fill, there is no basis

to conclude that any homeowner  had actual notice of the Bar Date Notice.  In fact,

Grace told Judge Fitzgerald from the outset that it wanted "to constrain the universe,"

and that its products were applied in public buildings and office buildings,**"non-

residences"** [DI 1793, 2/25/02 Tr. 69-70 (emphasis added)].  Thereafter, Grace did

not even list Masonry Fill as a product in the Bar Date Notice [DI 1926 (April 12,

2002; DI 1960 (April 22, 2002)].[18]

Under a Plan which provides that all Allowed PD Claims are entitled to 100¢

on the dollar, and that ZAI Claimants can prosecute ZAI Claims even if they did not

file a Claim before the ZAI Bar Date, what is the argument against permitting late

filed claims on behalf of building owners who simply did not know about the Bar

Date?  Grace may argue that the Plan trumps FRBP 9006 allowing late filed claims,

but the Plan does not say that.

Importantly, all that a building owner seeks in filing a late Claim is to allow

the Claim as of the Bar Date, which means that it will be adjudicated by this Court

under Track A.  Class certification obviates the necessity for this Court to adjudicate

late Claims one at a time.  Judge Walrath's recognition of the benefits of a class in

---

[18]The Bar Notice did not list Masonry Fill, but it listed textures, which were also applied in homes.  Unlike the ZAI Notice, Judge Fitzgerald declined to publicize the traditional Bar Date Notice by television (presumably based on Grace's representations that its non-ZAI products were not applied in  residences) [DI 2057, 4/22/02 Tr.89-94].

similar circumstances is instructive:

> Here, the Claimants allege that there is no better method to adjudicate the claims aside from a class action. We agree. First, it is probable that most members of the proposed class are unaware of their rights under West Virginia law; thus, it is unlikely that individuals will file separate claims to protect their rights. Second, the amount of damages to be recovered by each class member is relatively small, especially in light of the likely recovery for creditors under the confirmed bankruptcy plan, thereby rendering prosecution of an individual claim cost-prohibitive.

*United Companies,* 276 B.R. at 376.

### vii.    Appeals

If this Court finds that the Claim did not accrue before the 2003 Bar Date, or that Grace is bound by its inconsistent representations, the Discharge Petition must be denied because the building owner had no Claim to file.  *Matter of M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984).  While that decision on its face would appear to be interlocutory in nature, the PD CMO refers to a finding that the Claim is not barred by the discharge as a "final order" [PD CMO ¶II.C.1. at 7].  Thus, Grace will argue that it has the right to appeal this Court's Order, which it will assuredly do in most if not all cases.  Consequently, before ever proceeding to the Other Claimant's home venue, Grace can tie up the Claimant in this Court, the District Court for the District of Delaware, and the Third Circuit for two or more years.

### b.    District Court

Track B provides that if Grace does not file a Discharge Petition, or this Court enters a final order finding that the PD Claim is not discharged, "or otherwise permits

the claim to go forward" (whatever that means), the Claimant "shall be permitted to prosecute such claim against the Asbestos PD Trust in, **but only in**, the United States District Court for the District of Delaware or such other United States District Court that has jurisdiction over the action commenced with respect to such claim" [PD CMO at ¶II.C.1 at 7 (emphasis added)].

### i.    *Jurisdiction*

The PD CMO does not deal with the question of how a United States District Court has jurisdiction to litigate all Claims.  For example, how can a District Court try a Claim where the amount in controversy is less than $75,000 (as certainly would be the case with most Masonry Fill Claims and many Claims for the abatement of ceiling textures in residential and non-residential).[19]  What happens when there is no diversity of citizenship (and is the real party in interest the PD Trust or Grace)?  Should a PD Claimant invest the time and money seeking a ticket from this Court to litigate its Claim in a Court with no jurisdiction?

Absent certification of AMH's Class, such a Claimant has no remedy under Track B.  Certification can solve this significant problem.

--------

[19]In the post-confirmation administration of AMH's bankruptcy settlement with one of Grace's co-defendants (USG), the Administrator allowed Claims for 67 South Carolina homeowners for the removal of Surface Treatment applied to ceilings.  The average per cost per home to remove the material was $16,747.39 (all were under $75,000) [A-5 at Ex. B].  In addition, the average cost of removing ceiling material from five South Carolina churches was $103.189.73 (two were under $75,000).  [A-5 at Ex. C].  As noted in the Motion, Judge Fitzgerald recognized AMH's certification in the USG Bankruptcy.  *In re USG Corp.*, Case No. 01 2094 JKF, AMHA700966-1003.

### ii.    *Limitation on Claims*

Other Claimants who survive the Discharge Motion and meet the jurisdictional requirements for proceeding in a District Court can file an asbestos cost recovery lawsuit for the injured (contaminated) building.  Some Claimants may own multiple buildings with a Grace product.  Under Track B, however, as to each building, the Other Claimant must wait for injury (contamination) to occur – perhaps in connection with renovation or demolition activities – and file an additional POC and defend another Motion to Discharge in this Court.  Only a class representative can litigate on behalf of building owners whose Claims have not yet accrued.  See *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012).

### iii.    *Trial Issues*

In contrast to a limited objection proceeding that a Track A Claimant (AMH) faces,  Track B does not limit the issues that Grace can insist upon being tried.  It is ironic that AMH's counsel, who has spent many years developing the liability case against Grace, will not have to try liability, but the Other Claimants' counsel will have to start that herculean process from scratch.  Morever, given the lessons of "serial litigation" – cases involving same product –  Grace will make that process as difficult as possible to discourage other lawsuits.  In contrast, AMH's counsel – who almost thirty years ago obtained an actual and punitive damage verdict against Grace in *City*

*of Greenville* – already had invested more than 12,000 hours representing the class before the bankruptcy (and has more than doubled that amount in the ensuing fifteen years) [DI 31812-6].

Ultimately, after nationwide discovery (and the inevitable discovery disputes), the retention and depositions of expert witnesses, and the filing, briefing, and arguing of motions, including motions for summary judgment, the parties will go to trial. AMH's counsel has tried five cases to verdict on behalf of private building owners, and the average length of a trial is four weeks. Whoever loses will in all likelihood appeal the verdict.

Unlike Track A, Track B does not provide closure for this Court or the District Court with respect to Other PD Claims. The PD CMO specifically provides that the one and only provision of the Federal Rules which could provide closure under Track A is inapplicable: "Class action claims shall not be permitted" under Track B [PD CMO ¶II.A.4. at 6]. Absent certification of AMH's Class, the Plan precludes a judgment or settlement of all (or most) PD Claims in one proceeding, in one Court, or even in one lifetime.[20]

---

[20]Not only did Judge Fitzgerald correctly rule in the ZAI Litigation that the results of a trial on behalf of an individual Claimant (as opposed to a class representative) could not bind any other Claimant, but in one of the first private building owner cases, Grace successfully opposed the plaintiff's effort to invoke collateral estoppel. *Liberty Life Insurance Company v. W.R. Grace & Co.,* C/A No. 87-3147-17 (D.S.C. January 12, 1990) [A-13]. Thus, when it comes to the resolution of asbestos PD Claims against Grace, the choice is between individual lawsuits or AMH's class action.

### c.      Claimants' Perspective

Understanding the burden that the Plan imposes upon this Court and the District Courts in the adjudication of Track B Claims is an important consideration in determining whether or not certification of AMH's Class provides a superior means of resolving this liability once and for all.  Respectfully, the more fundamental consideration under the case law is whether – **under the Plan** – Track A or Track B provides a superior method for PD Claimants.

In order to weigh the advantages of certification, it is appropriate to consider the individual litigation of Other Claims from the perspective of Other Claimants.  For purposes of illustration only, it is instructive to consider several real world situations, based upon the post-confirmation administration of AMH's Claims against USG.

Suppose a building owner paid an amount to remove fireproofing that normally would justify consideration of an individual lawsuit in a local venue.  The building may be located next door in New Jersey or as far away as Alaska or Hawaii (or in another country).  If the Claimant is interested in pursuing cost recovery, his first step will be to consult with a lawyer.

Counsel must identify the manufacturer of the product.  Sometimes PID information is in the files of the building owner or specifying architect, but more often than not such information cannot be found.  The PD Trust does not have Grace's sales records (including Grace's computerized list of buildings where its products were

applied).  Counsel can investigate other alternatives  and may be able to find out that there are two independent laboratories who can perform a sophisticated (and costly) analysis of bulk samples of the material by electron microscopy and determine if the material matches one of the manufacturer's formulas that plaintiffs' counsel have provided them over the years.  If the Claimant participates in the class, however, AMH's counsel not only has many thousands of sales records (and depositions of many applicators), but it also has a history of proving PID as part of a claims administration process.

If counsel determines that Grace Monokote was applied in his client's building, the next step will be to research Grace.  A quick Google search will reveal that there are two websites for ZAI Claimants – set up by ZAI Class Counsel and the ZAI Trustee – which provide explicit instructions for a ZAI Claimant to prosecute a ZAI Claim.[21]  However, there is no program for Other Claimants and nothing on the internet outlining what a PD Claimant can do (if anything).  AMH's counsel would set up a similar website and provide such information if its class is certified.

Counsel should be able to find out about the Grace Bankruptcy and eventually locate the Plan and the PD CMO.  At that point, counsel will need to advise his client whether or not to file a POC.  Counsel will struggle with all the unresolved questions

---

[21]See www.zonoliteatticinsulation.com; www.zaitrust.com.  The websites also provide a toll free number, a fax number, an email address, and directions to Facebook.

set forth above (and probably more).

Even if counsel advises his client that he has a good shot in defeating Grace's Motion To Discharge, there is no reason for the client to pay money for counsel to seek and obtain permission to pursue a lawsuit if at the end of the day there are serious impediments to the success of that lawsuit unconnected to the POC process. Therefore, before filing a POC, counsel should also conduct a full investigation of all the legal and liability issues that his client will face in the applicable jurisdiction.

One or both of these proceedings will require the retention of expert witnesses. Among other issues, counsel will need to deal with the so-called hazard issue, which will require consultation with one or more technical and medical experts about whether or not the building has suffered an injury (contamination). Counsel will also need to assess what discovery must be undertaken to prove what Grace knew and when it knew it. The Plan eliminates punitive damages, but not the need to examine Grace's historical knowledge and conduct, at least for some causes of action (e.g. negligence) and other issues (e.g. accrual).

Building owners have been enjoined from suing Grace since April 2, 2001. It is highly unlikely that the Other Claimant's counsel will know about the positions taken by Grace in the bankrupcy and the underlying litigation. For example, in the four year fight over the question of whether ZAI causes injury, the parties battled over how to measure contamination – Grace promoted air sampling and ZAI Claimants

promoted dust sampling. *ZAI Science Opinion*, 355 B.R. 486. They could not even agree on how to prepare and analyze the samples. *Id.* This is just one of a myriad of issues facing counsel and this Court.

Suppose a building owner is a church which paid $103,189.73 to remove acoustical plaster applied to a vaulted ceiling in the sanctuary and ceilings throughout [A-5, Ex. C (average abatement cost)]. The Claimant may also retain counsel to make the same evaluation. Counsel will go through the same process. Given the size of the Claim, he might well discourage his client from filing and litigating a POC in Delaware in order to get permission to try a case in the District Court for a maximum net recovery of significantly less than $100,000.

Suppose another building owner is a homeowner who paid $16,747.39 to remove texture applied to ceilings throughout his residence [A-5, Ex. B]. Normally that would be a case brought in the state court where the residence is located. For this size claim, even if the client elects to spend the money required to conduct PID, and it turns out to be a Grace product, there is little chance that the Claimant will find counsel to represent him in a Delaware Court to seek permission to try the case in a local District Court, especially if he cannot figure out how the District Court would have jurisdiction over such a lawsuit.

Lastly, suppose another homeowner paid $3,000 to remove loose fill insulation from the walls of his low-cost concrete block residence (there is no precedent for the

administration of Masonry Fill claims because no other defendant made that product).

He probably would not even know the material was there and, because Grace has

never warned anyone, and he would have no way of knowing the insulation contained

asbestos until he started demolition activities.  At that point, a knowledgeable and

conscientious contractor might advise him to test the material for asbestos.

If a test of the material confirms asbestos, the analyst might report that the

material is a vermiculite product and point the finger at Grace.  But for the

bankruptcy, the homeowner would potentially be able to retain counsel to prosecute

such a case in a small claims court where he lives.  It is a near certainty that this

Claimant will be unable to find counsel to represent him and ask this Court to permit

him to bring a lawsuit in a District Court without jurisdiction.

If the homeowner with the loose filled insulation were to proceed on his own,

he could go to the internet, where he would likely be able to connect the vermiculite

with Grace.  He may discover that Grace declared bankruptcy in 2001.  However, it

is highly unlikely that a layman will be able to determine that he has the right to file

a Claim and be paid 100¢ on the dollar if successful.  At the same time, a ZAI

Claimant with the identical product can file a Claim with the ZAI Trust and be paid

a discounted sum without having to hire a lawyer or run through a gauntlet and then

try the case before a jury.  If its class is certified, Class Counsel will provide such

assistance, as it has done in other class actions, including setting up a website and

providing, among other things, a toll free call center.

AMH is not a Track B Claimant, and it does not suggest that it has touched upon all issues that will arise.  Grace will have a full opportunity in its Response to argue that Track B is superior to Track A.  Whatever the Track B process entails, however, it must be repeated for each building.  *State of California v. W.R. Grace & Co.,* 418 B.R. 511 (D.Del. 2009).  Unlike a class, the Court's findings in one proceeding are not binding on another Claimant, even where two buildings are owned by the same person or entity and are located in the same jurisdiction.  AMH and its counsel are ready, willing, and able to adjudicate the objection process on behalf of all Claimants within the class.

### d.    Postscript

Several weeks ago, while AMH was finalizing this Brief, the Third Circuit affirmed the certification of a class action in *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*, __ F.3d __, 2015 WL 4547042 (3rd Cir. July 29, 2015) ("***Community Bank***").  The original class action in that case was filed on February 26, 2003.  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 284-285 (3rd Cir. 2005).

One of the issues that the Third Circuit considered was superiority.  The Court reiterated that the superiority requirement requires a court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative

available methods of adjudication." *Id*. at 22 (citation and internal quotation marks omitted). One factor which the Third Circuit noted was the "difficult, if not insurmountable issues that class members would need to overcome in filing individual lawsuits almost a decade after [class members] first received notice that this case had been prosecuted and settled for them." *Id*. (internal quotations omitted).

In the present case, class members were prohibited from pursuing individual actions for eleven years while Grace was in bankruptcy. Just as in *Community Bank*, to require individual claimants to start more than a decade later (and more time than that for those class members whose claims have not accrued) would present the same difficult problems in adjudicating Claims pursuant to Track B. On the other hand, AMH and Grace completed discovery before Grace filed its Petition.

## B.   AMH'S CLASS IS SO NUMEROUS THAT JOINDER OF ALL MEMBERS IS IMPRACTICABLE

Now that the Plan eliminates the basis of Judge Fitzgerald's numerosity ruling – advocated by Grace before it filed its Plan[22] – it is not clear whether Grace will persist in arguing that AMH cannot show numerosity. If it does, it is manifest for a

---

[22]Grace told Judge Fitzgerald that, "Numerosity of claimants is not an issue because Your Honor has said in court specifically ruled that we now know how many claimants there are because we had a bar date and we had people show up. In Your Honor's words, quote, 'The universe of claimants are those people who filed a proof of claim'" [DI 14465, 1/23/07 Tr. 128]. The Plan, however, makes clear that the universe of PD Claims is not circumscribed by the Bar Date, but rather that Grace anticipates that potentially thousands of claims may be pursued post-confirmation, which presumably will not be categorically disallowed or there would no need for the creation of the PD Trust and the PD CMO procedures to deal with them.

host of reasons that AMH's putative class is so numerous that joinder of all members is impracticable.  FRCP 23(a)(1).

## 1. Grace's Admission

Grace is bound by its Answer admitting numerosity in South Carolina in response to AMH's class complaint [A-4].

## 2. AMH's Evidence

AMH identified more than 3000 Claims in its Class Claims from the limited data set it had acquired in pre-bankruptcy discovery [DI 19987 (November 8, 2008)]. In addition, a summary of Grace's sales records for just 30 months of Grace's 60 year history of sales shows 8,774,882 shipments of Grace's Surface Treatment and 8,065,310 shipments of Grace's Masonry Fill.[23]  [A-5, Ex. A].  In contrast to these numbers, Judge Walrath certified classes with 291 and 47 members.  *United Companies*, 276 B.R. at 373; *Kaiser Group,* 278 B.B. at 64.[24]

Even though the record clearly shows a sufficient number, AMH emphasizes that it fully expects to identify more Claimants as a part of the Court approved

---

[23]The Surface Treatment total includes 3,938,184 shipments of Grace's Vermiculite Monokote fireproofing without the addition of commercial asbestos (then MK-4 and MK-5, and later MK-6).  At the recent hearing before the Court, AMH requested Grace to address whether it contends that these products are barred by the Bar Order [DI 32552, 4/17/15 Tr. 21-22].

[24]The Environmental Protection Agency ("**EPA**") estimated that there were 700,000 commercial buildings with the type of products Grace manufactured.   A National Survey of Asbestos-Containing Friable Materials, (EPA 560/5-84-006), United States Environmental Protection Agency, Toxic Substances (October 1984).

process.  Unlike a bar date notice, which is designed to meet minimum due process,[25]

Class Counsel's *modus operandi* is to locate all of the Claimants within the definition

of the Class.  That will begin with a determination of all those claims which have

accrued in the ensuing thirteen years since the Bar Notice.  Class Counsel will start

with the establishment and electronic dissemination of a website similar to what ZAI

Class Counsel have done.

###    3.    Grace's Evidence

Standing in direct contradiction to one another are Judge Fitzgerald's

certification finding that because of the Bar Date, the PD damage claim creditor

universe is known, and the Third Circuit's finding that AMH failed to refute Grace's

proof that although the amount and timing of demands could not be determined,

"**substantial claims will be made**."  *In Re W.R. Grace & Co.*, 729 F.3d 332, 340 (3rd

Cir. 2013) (emphasis added).  The Third Circuit's finding was based upon the 2009

reports and testimony of Dr. Denise Martin regarding Grace's fireproofing and

acoustical plaster products [DI 21033, DI 22628, DI 23619 at 217-227].  Dr. Martin

did not even consider Masonry Fill Claims or any Claims arising out of products

placed in residences [A-14].

Perhaps more striking in light of Grace's prior position on numerosity is what

it represented in opposing AMH's feasibility arguments.  In describing what it would

---

[25]At the initial Bar Date hearing, Grace explained that it was trying "to constrain
the universe" [DI 1793, 2/25/02 Tr. 54, 71].

face in a Chapter 7 proceeding, Grace unequivocally told the District Court that:

> For traditional asbestos property damage claims, the situation in chapter 7 would be worse. **The trustee would be facing thousands of property damage claims**, but would not have the tools or time to litigate property damage claims and would not be able to contest the claimants' demands. Based on a ratio to personal injury claims, Ms. Zilly estimated property damage claims, for purposes of her "liquidation analysis," at approximately $1 billion in a hypothetical chapter 7; there was no contrary evidence in the record.

[A-12 at 117 (emphasis added)].

### 4.    Judicial Estoppel

If Grace pursues its numerosity challenge, it must deal with the plain and undisputed fact that Anderson has shown more than 3,000 job sites and thousands of shipments of its products [A-2, A-5]. Grace's more basic problem is that it cannot now take positions that contradict its successful arguments in support of Plan Confirmation. To do so would trigger doctrines categorized by Wright & Miller as "the preclusion of inconsistent positions." 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4477. Those include judicial estoppel and equitable estoppel.

In order to get the substantial benefits of a 524(g) channeling injunction, and to receive the $1.2 billion Sealed Air Settlement, Grace proved to the satisfaction of Judge Fitzgerald, the District Court, and the Third Circuit that it faced substantial PD Claims. 11 U.S.C. § 524(g)(2)(B)(ii)(I). Grace met its burden by establishing that substantial PD Claims will be made above and beyond those which were already

accounted for in the Claims filed before the Bar Date. In its efforts to avoid the most efficient method of executing its Plan, Grace cannot now be heard to contest the existence of the very Claims that it successfully asserted required the injunction and allowed it to recover the $1.2 billion Sealed Air Settlement.

It is well established that "[a] plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate." *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). The Third Circuit has been consistent that a contradiction like is found in this case violates the integrity of the Court process and the fundamental concepts of fairness embraced by the Court. "The basic principle of judicial estoppel ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003).

The Third Circuit has specifically held that inconsistent positions are not allowed in obtaining an injunction and then reversing course. In *Murray v.*

*Silberstein*, 882 F.2d 61, 66 (3d Cir. 1989) a party successfully argued that an injunction should apply due to that party's assessment of potential damages available; the Third Circuit would not allow that same party to then assert facts in contradiction to the application of the injunction.  Just like Grace, the Court underscored the need to prevent inconsistent positions because Murray had received a benefit from his earlier position ("This case is particularly appropriate for applying an estoppel because Murray benefitted from his original position.").

When AMH challenged the channeling injunction for PD Claimants, Judge Buckwalter ruled that "[t]here remains a significant chance that future property damage claims will be asserted against Grace by property damage claimants. Numerous expert witnesses testified to this fact before the Bankruptcy Court." *In re W.R. Grace & Co.*, 475 B.R. 34, 101 (D. Del. 2012), *aff'd* (July 24, 2013), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) and *aff'd*, 532 F. App'x 264 (3d Cir. 2013) and *aff'd*, 729 F.3d 311 (3d Cir. 2013) and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).  To now contradict the adjudicated fact that there are substantial claims is barred by the doctrine of issue preclusion.

The doctrine of issue preclusion derives from the simple principle that "later courts should honor the first actual decision of a matter that has been actually litigated."  18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4416; see *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59

L.Ed.2d 210 (1979).   As stated by the Third Circuit in *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) the prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated;  (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."   *Burlington*, see also *In re Graham*, 973 F.2d 1089, 1097 (3d Cir.1992).

Here the issue of whether substantial PD Claimants exist was the same examination made by this Court, the issue was actually litigated, and affirmed by the Third Circuit as a final judgment.   The holding was essential to the prior judgment because without the holding, the scope of the 524(g) injunction would have not withstood scrutiny.

The importance of Judge Fitzgerald's confirmation finding was emphasized by Grace on appeal as follow:

> Section 524(g) thus affirms what Chapter 11 reorganization is supposed to be about – allowing an otherwise viable business to quantify, consolidate, and manage its debt so that it can satisfy its creditors to the maximum extent feasible, but without threatening its continued existence and the thousands of jobs that it provides.

[A-12 at 46 (internal quotations omitted)].

It is harder to imagine a stronger case for preclusion than Grace's successful arguments in favor of Confirmation.   Grace simply cannot have it both ways.

Page 47 of  64

## C.    AMH WAS NOT REQUIRED TO FILE A MOTION TO CERTIFY BEFORE FILING ITS CLASS CLAIMS

In the *Certification Order*, Judge Fitzgerald recognized the general rule that "the motion to certify could not be filed until Debtors objected to the claim." *Certification Order*, 389 B.R. 377, n. 10, citing *In re: Charter Co.*, 876 F.2d 866, 874 (11th Cir.1989).  However, Judge Fitzgerald went on to find that AMH's compliance with *In re: Charter* was "devoid of merit" because, "At a hearing in February of 2002 this court directed that before any class proofs of claim were filed a motion to certify a class had to be filed."  *Certification Order*, 389 B.R. 375-376 at n. 5.

As more fully set forth in AMH's response below to Grace's "no permission" argument, there are, respectfully, at least seven reasons why Judge Fitzgerald was in error when she added this comment in a footnote to her *Certification Order*:

- Judge Fitzgerald never said that at the February 2002 hearing.

- Grace has never argued that Judge Fitzgerald said that at the February 2002 hearing.

- Grace has never argued that AMH had to file a motion to certify a class before filing a class proof of claim.

- Grace told Judge Fitzgerald that certification should be put off until after all individual and class claims had been filed.

- Judge Fitzgerald agreed that certification should be put off until after all individual and class claims had been filed.

- Neither the Bar Order nor the Bar Notice included such a requirement.

- Grace is precluded from asserting that AMH was required to file its

certification motion before filing its Class Claims because it did not raise that ground it its objections to AMH's Claims.

- There is no authorized procedure which permitted, much less required, AMH to file a motion to certify (as opposed to instituting an adversary proceeding) before submitting itself to the jurisdiction of the bankruptcy court by filing its Class Claims.

**D.    AMH WILL SHOW THAT IT WAS NOT REQUIRED TO OBTAIN PERMISSION TO FILE ITS CLASS CLAIMS IF ARGUED BY GRACE IN ITS RESPONSE**

Grace did not argue that AMH had to file a motion to certify before filing its Class Claims; Grace did argue in opposing certification that Judge Fitzgerald declared at this February 2002 hearing that she expected a building owner **to seek permission** to file a class proof of claim [DI 11245 (December 2, 2005) at 19]. Because Judge Fitzgerald did not accept this argument in the *Certification* Order – the Order which AMH seeks to alter or amend – perhaps Grace will not repeat this argument in its response to the instant Motion. Nevertheless, because of the emphasis Grace previously placed on this argument, AMH will outline the basic law governing the filing of class claims and the somewhat convoluted history of this issue to assist the Court if Grace should decide to pursue this argument in its Response.

**1.    The Law**

There are two recognized procedures for pursuing a class action in bankruptcy: the filing of an adversary proceeding; and the filing of a class proof of claim in response to a bar order. Compare, e.g. *In re American Reserve Corp.*, 840 F.2d 487

Page 49 of 64

(7th Cir.1988); *In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989)]. In the Grace

Bankruptcy, five months before Judge Fitzgerald entered the Bar Order, the ZAI

Claimants filed an adversary proceeding seeking to have Judge Fitzgerald certify a

ZAI class action [DI 1 (Nov. 16, 2001), Adv. 01-8810].  Grace never asserted that the

ZAI Claimants needed permission to institute such an action.  Several years later, the

ZAI Claimants voluntarily withdrew the adversary while they were involved in the

ZAI Litigation [DI 13 (Jan. 28, 2014), DI 14 (Jan. 29, 2014), Adv. 01-8810].

A Claimant is not required to obtain permission to file a class claim.  See, e.g.

*In re: Charter Co.*, 876 F.2d 866 (11th Cir. 1989); *United Companies*, 276 B.R. 368,

372 (Bankr. D. Del. 2002); *Kaiser Group*, 278 B.R. 58, 64 (Bankr. D. Del. 2002). The

proper procedure for a class representative to follow is to file a class claim, and at

such time as the debtor creates a contested proceeding by filing an objection, the

claimant must then seek certification.  *Id.*

Judge Fitzgerald recognized this procedure in the *Certification Order*, but she

said that she had the authority to set forth a process to address the issue in a timely

manner. *Certification Order*, 389 B.R. 377, n. 10.  This Court does not have to reach

that legal issue because, at Grace's urging, Judge Fitzgerald changed her mind and

decided that a building owner did not need permission to file a class claim.

**2.    <u>The History</u>**

Judge Fitzgerald conducted her first omnibus hearing in this bankrupcy on

January 29, 2002, at which time the question of class claims came up.  Grace told Judge Fitzgerald that if the Court followed *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988), the process is to file class proofs of claim in response to a bar date and take up class certification after there is a contested matter ("Even American Reserve didn't say that you can take up class certification before you had the proofs of claim on file.") [DI 1650, 1/29/02 Tr. 27, 36].  Additionally, Grace told the Court that, "I don't even know if that it requires the permission of the court to file a class proof of claim." *Id*. at 64.

Judge Fitzgerald directed Grace to file its proposal for dealing with PD claims as a separate document, and on February 12, 2002, Grace filed its Revised Motion for a Case Management Order providing for the disposition of all PD claims [DI 1665 (February 12, 2002)].  As a foundation to its proposed resolution of PD claims, Grace sought to establish a bar date for all PD Claims (traditional and ZAI).  Importantly, after listing the class actions which had been filed before the bankruptcy, Grace's proposed notice explicitly provided that class claims would not be permitted:

**7. CLASS ACTION PROOFS OF CLAIM**

**If you are a member of any of the classes which hold Claims against the Debtors, including but not limited to the classes referred to in the Class Actions outlined above, you <u>must</u> file an INDIVIDUAL proof of claim before the applicable Bar Date if you intend to assert a claim. Please take notice that class proofs of claim will <u>not</u> be allowed and you may not rely on any such class proof of claim. Unless you file an <u>individual</u> proof of claim before the applicable Bar Date, you will be forever barred from asserting a claim against the Debtors**.

[DI 1665-1 at 7 (emphasis in original)].[26]

Three days later, Grace filed its "Brief Regarding Bar Date and Class Notice" [DI 1677]. Consistent with its statements at the January hearing, Grace argued that "class certification can and should be dealt with down the road, after the claims have come in." *Id*. at 1. Grace argued that if the Court should follow *American Reserve*, "a bar date would still need to be set and a class proof of claim filed." *Id*. at 4. Grace did not argue at the time that court permission was required in order to file a class proof of claim. Neither did Grace then, nor at any other time, argue that a class representative should file a certification motion before filing a class proof of claim.

On February 25, 2002, the Court conducted its first bar date hearing [DI 1793, 2/25/02 Tr.]. When the issue of class claims arose, Judge Fitzgerald stated that "it seems to me that the process that Judge Gambardella followed" in *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998) "makes good sense" and is a "very efficient process." *Id*. at 97-98. Judge Fitzgerald added that, "I have a call in to her to ask her how it actually worked, because at the moment I don't know that" [*Id*.].

Judge Gambardella did not require a claimant to obtain permission to file a

---

[26]In addition to the purely ZAI class actions, Grace listed two class actions that included traditional products: *Anderson Memorial Hospital, et al.* v. *W. R. Grace & Co.*, Case No. 92-CP-25-279 (Ct of Common Pleas, Hampton Co. S.C.) ("*Anderson*"); *County of Orange, State of Texas, et al. v. National Gypsum Co. et al.*, Case No. 890803-C (260th Judicial Dist., Orange Co, Texas) (*Orange County*) [*Id*.].

class claim or to file a certification motion before filing a class claim.  Nevertheless, it was during this hearing that Judge Fitzgerald suggested that permission was needed to file a class claim.  **Importantly, at the request of the PD Committee, Judge Fitzgerald told Grace that it should include this requirement in its Bar Date Notice** [DI 1793,  2/25/02  Tr. 107-108 (emphasis added)].

Grace disagreed with Judge Fitzgerald on the need to obtain permission and argued that a motion to certify should not be considered until after the expiration of the bar date [DI 1793,  2/25/02 Tr. 103-105]. Grace urged Judge Fitzgerald to follow Judge Gambardella's approach:

> MR. BERNICK:  We want to do that.  The question that I'm really raising today is this.  Which is take up the class proof of claim.  I think that actually the way that it was done in her case is pretty much what I'm going to say.  She set the bar date.  All of the claims came in.  All of the claims -- individual claims as well as the class proof of claims came in.  And she then took up the question -- and this is what we propose, I believe, in our papers, and what I'll reiterate here today -- we propose that after the bar date passes and you have the individual claims as well as having the proposed class proof of claim, you then take up the question of whether to allow the individual -- allow the class proof of claims be used as the claim form in the case.
>
> And the advantage of that is that you will have a piece of information that's very critical, which is how many individuals have actually come out and said, "I want to be there."  So you'll know what truly numerosity is.  And you will have information with respect to those individuals that will be very central to the question of whether you can even certify the class under Rule 23.

[*Id*. at 104-105].

Two weeks later, ZAI's class counsel wrote Judge Fitzgerald a letter and included a courtesy copy of ZAI's Motion for Class Proofs of Claim [A-15].  Grace

immediately wrote Judge Fitzgerald a letter strongly objecting to this procedure (the same procedure which Grace later said AMH should follow) [DI 1797 (March 13, 2002)] [A-16].  Grace told Judge Fitzgerald that ZAI's action "dramatically deviates both from the path currently being followed by the Court and from the case law."  Grace then stated:

> Rule 23 is not even applicable until claims are filed and objected to.  In re American Reserve, 840 F.2d at 488.  Nor can the court properly determine the factual predicates for applying Rule 23 absent precisely the type of information that will result from the submission of claims, i.e., number of real claimants, factual similarity, etc.  And finally, the discretionary analysis that Chapter 11 courts (uniquely) must conduct in considering requests for certification likewise requires ascertainment of the size and nature of the real claimant population, as well as the impact of certification or progress of the chapter 11 case. Id. at 494.

> For these reasons, Grace strongly objects to the ZAI claimants efforts to backdoor class certification and requests that the matter be taken up after the claims have come in and with a full opportunity for Grace to conduct any necessary discovery and to brief the matter.

Id.  Grace also noted that this procedure was being followed by Judge Newsome in the Armstrong case.  Id.

At the second bar date hearing on March 18, 2002, Judge Fitzgerald suggested that "it may make more sense" if the parties could "agree to a process to have a class proof of claim filed on behalf of all Zonolite plaintiffs," and then "litigate the common issues" [DI 1912, 3/18/02 Tr. 56].  When Grace responded that such a process could not work unless "you certify the class," Judge Fitzgerald agreed and said "I'm assuming for the moment that we're passed those issues in discussing this"

[*Id*. at 57-58].  Grace, faced with the prospect of all ZAI Claimants being united in a certified class action, responded that the consequences of such a decision would "create an enormous economic dynamic to the case" [*Id*. at 58].

Grace then made a proposal that led to the ZAI Litigation – to try a few "test" claims with the understanding that "you can't say that it's res judicata" [*Id*. at 73-74)]. Judge Fitzgerald agreed with the understanding that the "outcome would not be binding on those entities who have not yet filed proofs of claim" [*Id*. at 80].

At that point, there followed an exchange which confirmed that court permission was not required to file a class proof of claim.  Mr. Lockwood (counsel for the PI Committee) – citing what Judge Newsome did in *Armstrong* (the same bankrupcy Grace had cited to Judge Fitzgerald in its March 13, 2012 letter quoted above) – told Judge Fitzgerald that, "I don't think you need permission to file a proof of claim."  *Id*. at 89.  Grace agreed that the proper process was that, "They're going to file a class proof of claim, the debtor will object to it, they move for certification and approval of litigating or processing or allowing or disallowing the class proof of claim on a class basis."  Judge Fitzgerald concurred, stating "**If you simply would prefer that somebody file the class proof of claim and then the issues come up, I think it's okay**."  *Id*. at 103-113 (emphasis added).  AMH's counsel (Mr. Speights) was present at that hearing.

Judge Fitzgerald's approval of this process was ratified at a subsequent hearing

to approve Grace's revised bar date notice and related forms, wherein it was again acknowledged that no permission was required to file a class proof of claim [DI 2057, 4/22/02 Tr. 54-55, 70]. The final Bar Date Notice omitted language originally proposed by Grace (quoted above) prohibiting class proofs of claim, and omitted language that PD claimants could not rely on a class proof of claim [DI 1926 (April 12, 2002; DI 1960 (April 22, 2002)]. ZAI later withdrew its Motion [DI 1912, 3/18/02 Tr. 106-108].

After the issuance of the Bar Date Order, no Claimant sought permission to file class claim. Four members of PD Committee later filed class claims: Mr. Speights (*Anderson*), Mr. Dies (*Orange County*); Mr. Scott (*Barbanti*) and Mr. Westbrook (*Central Wesleyan, Barbanti and Busch*) [A-17]. Three of the lawyers (Messrs. Speights, Dies, and Scott) attended the February hearing. Messrs. Speights, Dies, and Westbrook (and their law firms) had tried over 90% of the asbestos PD cases before the bankruptcy. If Grace raises this objection, it should at least explain why all of these lawyers got it wrong.

While Judge Fitzgerald certainly was of the view at the first bar date hearing that permission was required to file a Class Claim, she changed her mind at Grace's urging. There is no written Order requiring court permission in advance of filing a class claim. While everything a Court says during a hearing is important, not every thing a Court says constitutes a ruling. That is the reason that Judge Fitzgerald's

rulings are reflected in written orders, including the Bar Date Order entered in this case following these three hearings on the matter before Judge Fitzgerald at the February 12, 2002 hearing.

### 3.    <u>Failure to Object</u>

Although Grace objected to AMH's Class Claims, it did not object on the ground that AMH needed permission to file them.  If Grace pursues this argument, AMH will show that, in accordance with Judge Fitzgerald's prior ruling in an indistinguishable matter, Grace waived its right to assert this ground.

At Grace's request, Judge Fitzgerald modified the local rules and permitted Grace to file all of its objections to PD Claims  at one time.  [See DI 15697 (May 18, 2007; DI 15701 (May 18, 2007)].  Thereafter, Grace represented on numerous occasions that it had done so [*Id.*].

Two months before the certification hearing, Grace sought leave to amend its objections to a group of Canadian Claims (represented by AMH's counsel) and add additional objections [DI 15625 (May 8, 2007)].  The PD Committee and the Canadian Claimants opposed this request [DI 15697 (May 18, 2007; DI 15701 (May 18, 2007)].  Following extensive arguments, Judge Fitzgerald told Grace that:

> [I]n terms of amending these to add additional objections to claims, I mean, the debtor chose this format. it's been a long, hard fought battle, and I think the debtor has to live with the format that it chose.

[DI 15988, 5/30/07 Tr. 64].  Subsequently, Judge Fitzgerald entered a written order

[DI 16169 (June 27, 2007)].

### 4.    Certification Opposition

After Grace created a contested proceeding by objecting to AMH's Claims, AMH timely filed its Motion for Class Certification [DI 10014 (October 21, 2005)]. See *In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989). Grace then filed its opposition in which it asserted that AMH's Class Claims "were in direct violation of this court's earlier **declaration** setting forth its **expectations** with respect to such claims" [DI 11245 (December 2, 2005) (emphasis added)]. Grace based its argument solely on what Judge Fitzgerald said at the February 2002 hearing. Grace never cited any legal authority for the proposition that AMH needed permission to file its Class Claims, nor did Grace assert any prejudice because AMH followed the recognized procedure. Most importantly, Grace never informed Judge Fitzgerald that at its request, the Court changed its mind on this point before approving the Bar Notice.

Several weeks after Grace filed its opposition, Grace tried to make its argument that AMH had failed to obtain permission to file its Class Claims as Judge Fitzgerald orally suggested at the February 2002 hearing. In response, Judge Fitzgerald told Grace that whether or not AMH needed permission from the Court, "At this point, frankly, is irrelevant. Whether it meets the standards for class certification is what I'm concerned about" [DI 11707, 1/26/06 Tr. 74]. Thereafter, the parties largely focused their energies on the numerosity issue.

AMH's Motion to Certify was heard on July 5, 2007. In anticipation of that hearing, Grace tried to leverage its position by objecting to Central Wesleyan's Class Claim on the ground that it did not get permission to file a class claim [DI 14693 (February 27, 2007)].[27] Grace argued that:

> The Central Wesleyan Claim is an invalidly filed class claim. In order to file a class proof of claim, a claimant must first move the bankrupcy court to recognize the class. See Transcript of Record at 107, 22 - 108, 3, In re W.R. Grace, Case No. 01-01139 (February 25, 2005) (Bankr. D. Del.). Westbrook never moved to allow a class proof of claim prior to the Bar Date and, because the Bar Date has passed, Westbrook cannot now move to have a class claim allowed. Therefore, the Debtors seek entry of an order disallowing and expunging the Central Wesleyan Claim.

[*Id.* At 7].

Central Wesleyan filed a response in which it suggested this was much ado about nothing [DI 14860 (March 14, 2007)]. Central Wesleyan explained that it filed its Claim to protect its pre-bankrupcy settlement with Grace, which included a coupon component which Grace had continued to honor pursuant to the prior approval of Judge Fitzgerald [*Id.*]. Central Wesleyan asked the Court to allow its Class Claim:

> Since Grace does not dispute it has this obligation, the remedy is not to strike the Central Wesleyan claim, but to allow it and require Grace to continue doing what it says it is going to do anyway. The colleges cannot imagine why Grace would spend time and effort objecting to a claim that Grace recognizes is legitimate.

---

[27]Grace also objected to the Claim filed by the Plaintiffs in *School Asbestos*. Grace told Judge Fitzgerald that class counsel in that action "did not file any kind of a response" and "confirmed that they have no objection because those claims have been paid and the coupons have expired" in the ensuing four years since the class claim was filed [DI 15117 (April 9, 2007) at 95].

[*Id.* at 3].[28]

Judge Fitzgerald conducted a hearing during which Grace asked that the Court, *inter alia*, to "disallow the claim as an untimely filed claim" [DI 15117, 4/02/07 Tr. 97]. Judge Fitzgerald told the parties that, I think it makes sense that the claim be allowed" [*Id.* at 101]. Judge Fitzgerald later entered a written Order allowing the Claim as set forth therein [DI 15528 (May 7, 2007)].[29]

Subsequently, after the ZAI Bar Date was established, ZAI class counsel filed a Class Proof of Claim without getting permission to file it. Grace later consented to the ZAI class certification based on a class proof of claim for which no permission to file was ever sought or granted. Judge Fitzgerald later certified a US ZAI Class on behalf of Mr. Barbanti, who did not get permission to file class claims [DI 20535 (January 16, 2009)].

**5.    Summary**

It cannot be emphasized strongly enough that Grace obtained exactly what it wanted in connection with the filing of Class Claims. Grace was not only terrified of having the class certification issue decided early on, but it wanted any consideration

---

[28]Presumably Mr. Westbrook could not imagine because he was unaware of the importance of the issue to Grace in the AMH matter then being hotly contested.

[29]In its final certification brief filed several months later, however, Grace again asserted that AMH's Class Claims violated "this Court's earlier directives that claimants must seek leave of court before filing any Class Claims" [DI 1793, 2/25/02 Tr. 107-108] [*Id.* at 17].

of a Motion to Certify to be delayed until after the claims came in so that it could argue numerosity.  Grace controlled when that would occur because Grace alone could determine when it wanted to create a contested proceeding by filing its objections.

**E.    AMH WILL SHOW THAT THE MAYTAG DEFENSE IS WITHOUT ANY MERIT IF ARGUED BY GRACE IN ITS RESPONSE**

It is difficult to pigeonhole Grace's "Maytag Defense" because it is not recognized as a defense to anything dealing with class action jurisprudence. Moreover, if it had some relevancy – it does not – it is not clear whether Grace was suggesting it as a defense to numerosity or superiority or both or neither  (perhaps it was just a smoke screen).  In any event, because Grace argued this point at the recent discovery hearing, AMH will outline the arguments it is prepared to make if Grace pursues this argument in its response. Specifically, AMH will show the following:

- The Maytag Defense is inconsistent with Rule 23.

- The Maytag Defense is inconsistent with what Grace told the Third Circuit in order to obtain a 524(g) injunction and the $1.2 billion from the Sealed Air settlement.

- The Maytag Defense is inconsistent with Grace's representations to this Court when it obtained the Bar Order that its products do not injure (contaminate) – i.e. Claims do not accrue – before building demolition.

- The Maytag Defense is inconsistent with Grace's representations to Judge Fitzgerald that there was no reason to publicize its Bar Date by television (like it later did with respect to the ZAI Bar Order) because its traditional products are not found in residences.

- The Maytag Defense is inconsistent with Grace's decision not to list all its Vermiculite Products (e.g. Masonry Fill) in its Bar Notice.

- The Maytag Defense is inconsistent with Grace's position in the ZAI Litigation, in which it convinced Judge Fitzgerald that ZAI (Masonry Fill's identical twin) does not injure (contaminate) – i.e. Claims do not accrue – before building demolition. *ZAI Science Opinion,* 355 B.R. 462.

- The Maytag Defense is inconsistent with Grace's Motion to appoint the PD FCR to represent Claimants whose Claims had not accrued before the Bar Date (but have since and will continue to accrue and become present Claimants).

- The Maytag Defense is inconsistent with Grace's multi-million dollar campaign over the past thirty years, through its judicially determined alter-ego, the Safe Buildings Alliance ("**SBA**") to convince building owners to leave its products in place.  See *In re: School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1987).

- The Maytag Defense is inconsistent with Grace's defense of prematurity set forth in its defense of the first asbestos PD lawsuit to go to trial against Grace [A-18].

- The Maytag Defense is inconsistent with Grace's representations to building owners and regulators for more than fifty years that its products do not injure (contaminate) – i.e. Claims do not accrue – before building demolition. *Clayton Center Associates v. W.R. Grace & Co.*, 861 S.W.2d 686, 692 (E.D.Mo.App. 1993).

- For the foregoing reasons, Grace is also judicially and equitably estopped from  asserting the Maytag Defense.

- There is no evidence that any of these building owners know they have accrued Claims against Grace.

- There is no evidence that any of these building owners know that they have  a right to file Claims with the PD Trust or how they would to go about doing so.

- Contrary to Grace's suggestion at the recent hearing, there is no PD facility.  There has been no effort to publicize the right of a PD Claimant to file a PD Claim.  There is no PD Trust website.

- If the Court denies class certification, AMH's counsel will file far more Claims that necessary to support numerosity, including many on the list attached to its Class Claims, as well as those retained by it after the Bar Date.  Compare *United Companies* , 276 B.R. at 373 (291 members); *Kaiser Group*, 278 B.R. at 64 (47 members).

The Maytag Defense is a non-issue which AMH hopes that Grace, upon reflection, will not pursue in its Response.

## VI. <u>CONCLUSION</u>

As a matter of fact and as a matter of law, AMH's putative class is so numerous that joinder of all members is impracticable.  Track A provides a much better way – a superior way – of dealing with PD Claims.  When it comes to PD Claims, AMH is not only the Plan's best friend, but the best friend of this Court, an untold number of District Courts and Appellate Courts, and the overwhelming majority of PD Claimants.  It also provides Grace with the only mechanism to resolve its PD liabilities once and for all.  AMH respectfully requests this Court to grant its Motion to Alter or Amend and certify its class action as set forth herein.

DATED: September 8, 2015       /s/ Theodore J. Tacconelli_____
                               Theodore J. Tacconelli (No. 2678)
                               Ferry Joseph P.A.
                               824 Market Street, Suite 1000
                               Wilmington, DE 19801
                               Telephone 302-575-1555/Fax 302-575-1714
                               Email:  ttacconelli@ferryjoseph.com
                               *Local Counsel for Anderson Memorial Hospital*

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East; Post Office Box 685
Hampton, SC 29924
Telephone 803-943-4444/Fax 803- 943-4599
Email:  dspeights@speightsrunyan.com
*Counsel for Anderson Memorial Hospital*

David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone 305-372-1800/Fax 305-372-3508
Email:  dlr@kttlaw.com
*Counsel for Anderson Memorial Hospital*