# EXHIBIT A

NO. _01- 769_

| | | |
|---|---|---|
| SAMSON INVESTMENT COMPANY<br>and SAMSON HYDROCARBONS<br>COMPANY, | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| VS. | § § | D-95th |
| W.R. GRACE & CO. – CONN.<br>and GRACE ENERGY CORPORATION | § § § | _____ JUDICIAL DISTRICT |
| DEFENDANTS. | § § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Samson Investment Company ("Samson") and Samson Hydrocarbons Company ("Hydrocarbons") (together "Plaintiffs") file this Original Petition complaining of W.R. Grace & Company – Conn. ("WRGrace") and Grace Energy Corporation ("Grace Energy") (together "Defendants") and would respectfully show the Court as follows:

### I.

### DISCOVERY PLAN

Plaintiffs intend to conduct discovery under Level 3 as set forth in Rule 190.4 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

1.    Plaintiff Samson Investment Company ("Samson") is a Nevada corporation with its principal place of business in Tulsa, Oklahoma.

2.    Plaintiff Samson Hydrocarbons Company ("Hydrocarbons") is a Delaware corporation with its principal place of business in Tulsa, Oklahoma.

EXHIBIT
A

3.     Defendant W.R. Grace & Company – Conn. ("WRGrace") is a Connecticut corporation with its principal place of business in Boca Raton, Florida.  WRGrace may be served with process by serving its registered agent in Texas, Prentice Hall, 800 Brazos, Austin, Texas 78701.

4.     Defendant Grace Energy Company ("Grace Energy") is a Delaware corporation with its principal office in Dallas, Dallas County, Texas.  Grace Energy may be served with process by serving its registered agent in Texas, Prentice Hall, 800 Brazos, Austin, Texas 78701.

### III.

### VENUE

5.     Venue is proper in Dallas County, Texas, pursuant to Section 15.002(a)(1) and Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code because the principal office in Texas of Defendant Grace Energy is located within Dallas County, Texas.  Venue is also proper in Dallas County pursuant to Section 15.005 of the Texas Civil Practice and Remedies Code because Plaintiffs have established proper venue against Defendant Grace Energy in this County and thus, the Court also has venue of Defendant WRGrace for all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.

### IV.

### FACTUAL BACKGROUND

6.     On December 31, 1992, Samson and Grace Energy entered into a written contract, called the "GPC Stock Purchase Agreement" (hereinafter the "Stock Purchase Agreement"), pursuant to which Samson was to purchase from Grace Energy all of the issued and outstanding capital stock of a corporation named Grace Petroleum Corporation ("Grace Petroleum"), which was a subsidiary of Grace Energy.  Grace Energy, in turn, is a subsidiary of WRGrace, and

WRGrace made certain representations and warranties to Samson in the Stock Purchase Agreement. The transaction described by the Stock Purchase Agreement closed January 21, 1993.

7.    In 1993, the use of the name "Grace Petroleum Corporation" was discontinued with the said name ultimately changed to "Samson Hydrocarbons Company." Hydrocarbons became a wholly-owned subsidiary of Samson.

8.    After closing of the Stock Purchase Agreement and in accordance with the indemnification provisions contained therein, Samson submitted to Grace Energy for indemnity and defense certain claims asserted by third parties against Grace Petroleum or Hydrocarbons, which remained WRGrace's and Grace Energy's responsibility under the Stock Purchase Agreement. In order to ultimately resolve the status of those claims, the parties entered into two separate settlement agreements, one dated March 31, 1994, and the Second Settlement Agreement, dated November 30, 1998, in which, for the most part, WRGrace and Grace Energy accepted responsibility for the claims.

9.    Nevertheless, WRGrace and Grace Energy now have begun to reverse their earlier assumption of responsibility for at least one environmental claim originally made against Grace Petroleum, both arising from alleged events that occurred, if at all, long before Samson purchased Grace Petroleum's stock, and from properties that Grace Petroleum did not even own when Samson purchased its stock. Indeed, in spite of the contractual commitments of WRGrace and Grace Energy assuring Samson that they would indemnify and hold Samson and Hydrocarbons harmless from these claims, their lawyers have actually sought behind the scenes to convince federal authorities that responsibility for these claims is actually Samson's.

10.     The claims at issue arise from the Canadian County Site in Oklahoma and the Casmalia Site in California.

## OKLAHOMA – THE CANADIAN COUNTY SITE

11.     In December 2000, Samson received notice that residents of Canadian County, Oklahoma had filed suit against FPC Disposal, Inc., operators of a waste disposal facility located in Canadian County, Oklahoma (the "Canadian County Site") and against a number of alleged producers and transporters of waste materials received by such site. Included in said list of generators is Samson Hydrocarbons Company, successor by merger to Grace Petroleum Corporation. The lawsuit, Jackie Eugene Ellison, et al. vs. FPC Disposal, Inc., et al., Case No. CJ-99-1519-01 pending in the District Court of Canadian County, State of Oklahoma (the "Ellison lawsuit") alleges that the operation of the Canadian County Site has caused pollution and contamination to the surface and subsurface soil and water on plaintiffs' lands, and have created a condition dangerous to the health and safety of plaintiffs and plaintiffs' families, employees, friends, livestock and wildlife.

12.     When Samson and Grace Energy entered into the Stock Purchase Agreement, Grace Petroleum owned an interest in the Union City No. 1-27 well. Neither WRGrace nor Grace Energy advised Samson of any potential environmental liabilities or claims relating to this well, despite numerous representations and warranties in the Stock Purchase Agreement that WRGrace had disclosed all material liabilities, specifically including environmental liabilities, known to it or its subsidiaries' officers are reflected in its records. WRGrace and Grace Energy also represented and warranted that no known or knowable undisputed material claims or potential claims existed against Grace Petroleum at the end of 1992. W.R. Grace and Grace

Energy agreed to indemnify Samson and Hydrocarbons, and hold them harmless from any environmental claims.

13.     Records indicate that prior to 1993 Grace Petroleum Corporation generated certain material through the drilling and operation of the Union City No. 1-27 well, which materials were transported to the Canadian County Site.

14.     Pursuant to the indemnification provisions of the Stock Purchase Agreement, Samson tendered the Ellison lawsuit to WRGrace for defense and indemnification on January 3, 2001. By letter dated January 29, 2001, WRGrace, through its attorneys, Holme, Roberts & Owen, notified Samson that W.R. Grace had taken the position that the Ellison lawsuit did not fall within the scope of the indemnity provisions of the GPC Stock Purchase Agreement.

## CALIFORNIA – THE CASMALIA SITE

15.     WRGrace has also violated its duties and breached its obligations to Samson and Hydrocarbons with respect to claims arising from an allegedly contaminated site known as the "Casmalia Disposal Site," located in Santa Barbara County, California ("Casmalia").

16.     On or about February 7, 2000, the EPA notified WRGrace that WRGrace or its former subsidiary, Grace Petroleum, was a generator of allegedly hazardous waste materials disposed of at Casmalia sometime between 1974 and 1989, years before Samson had any involvement with Grace Petroleum. Under the federal Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the EPA notified WRGrace that it was a "Potentially Responsible Party" liable for clean-up costs associated with Casmalia. According to the EPA, Casmalia operated as a hazardous substance treatment, storage, and disposal facility between 1973 and 1989. The EPA began efforts to respond to the environmental conditions at Casmalia sometime in 1991.

17.     After receiving the EPA's notice, WRGrace undertook an aggressive defense of the claims asserted by the EPA. In fact, WRGrace's lawyers organized other similarly situated Potentially Responsible Parties named by the EPA, which became known as the "Tier II Group," and assumed leadership of that group's defense. Neither Samson nor Hydrocarbons was a member of the Tier II Group. Under the leadership of WRGrace's lawyers, the Tier II Group engaged in several meetings and settlement negotiations with the EPA.

18.     After WRGrace had already undertaken to defend against the EPA's claims at Casmalia, WRGrace, on or about March 31, 2000, demanded that Samson and Hydrocarbons assume responsibility for potential clean-up costs associated with the Casmalia Site, asserting that Hydrocarbons was actually liable for the obligations of Grace Petroleum and its related subsidiaries, which allegedly generated some of the alleged waste disposed of at Casmalia.

19.     In response to WRGrace's demand, Samson timely tendered to WRGrace and Grace Energy a claim for indemnity and defense under the terms of the Stock Purchase Agreement. Samson denied that either Samson or any of its subsidiaries assumed any potential liability for costs relating to clean up of the alleged hazardous materials at the Casmalia.

20.     When Samson entered into the Stock Purchase Agreement in 1992, Grace Petroleum owned no property whatsoever in the State of California. Moreover, neither WRGrace nor Grace Energy advised Samson of any properties, potential environmental liabilities or claims in the State of California, despite numerous representations and warranties in the Agreement that WRGrace had disclosed all material liabilities, specifically including environmental liabilities, known to it or its subsidiaries' officers or reflected in its records. (See, e.g. Stock Purchase Agreement ¶¶ 6.05, 6.09, 6.11, 11.01, 11.08). WRGrace and Grace Energy also represented and warranted that no known or knowable undisputed material claims or

potential claims existed against Grace Petroleum at the end of 1992. WRGrace and Grace Energy agreed to indemnify Samson and Hydrocarbons, and hold them harmless from any environmental claims (Stock Purchase Agreement ¶ 13.03).

21.    WRGrace did not dispute Samson and Hydrocarbon's position that WRGrace was responsible for the Casmalia Site. In fact, on information and belief, WRGrace actually operated the fields that disposed of the allegedly hazardous materials at Casmalia. WRGrace continued with the defense, as was it obligation under the Agreement and Samson's tender.

22.    Clearly, WRGrace knew, and by its conduct acknowledged, that it was responsible for any defense of a potential liability arising from Grace Petroleum's alleged use of Casmalia (which was discontinued years before the sale to Samson in 1993). WRGrace assumed an active role in response to EPA's notice letters regarding Casmalia. WRGrace entered into tolling agreements, assumed responsibility for organizing and coordinating activities of other Potentially Responsible Parties, organized and attended meetings and engaged in settlement negotiations with the EPA and others, all without notice to, or the involvement of, Samson or Hydrocarbons. Indeed, WRGrace's counsel actually made a substantial settlement offer to the EPA on behalf of WRGrace and the other Tier II Potentially Responsible Parties. Throughout this period, WRGrace never once suggested that it was actually trying to convince the EPA that liability for Casmalia belonged to Hydrocarbons, and perhaps even Samson, and that it intended simply to walk away from the defense it had assumed and structured.

23.    On July 11, 2000, nearly six months after WRGrace had assumed its lead role in defending the Casmalia dispute, counsel for WRGrace notified the EPA and the U.S. Department of Justice ("DOJ") (collectively "EPA/DOJ") that Hydrocarbons was the successor-in-interest to Grace Petroleum and fraudulently asserted that Samson had assumed Grace Petroleum's liability

at the Casmalia. Nevertheless, WRGrace continued to take the lead role on behalf of the Tier II Group in defending the EPA's claims at Casmalia.

24.    In early September 2000, the EPA/DOJ notified WRGrace, Samson, and Hydrocarbons that EPA/DOJ would not take any action with respect to Samson and Hydrocarbons concerning Casmalia. WRGrace was still the lead Potentially Responsible Party for the Tier II Group and was at the helm of negotiating a resolution with, and defending the claims asserted by, the EPA.

25.    WRGrace continued to act as the lead Potentially Responsible Party for the Tier II Group, and Samson and Hydrocarbons continued to rely on WRGrace's unilateral actions related to this matter. In mid-November, 2000, WRGrace abruptly and unilaterally withdrew from further involvement in the Casmalia matter. WRGrace withdrew from its lead role and from the Tier II Group on the eve of that group's tendering of a substantial settlement offer to the EPA, leaving the Tier II Group rudderless and unable to move forward, and the EPA poised to halt settlement discussions entirely. Given the many months of steering the defense, WRGrace's unprincipled withdrawal (including the timing of the withdrawal) is extremely prejudicial to Samson and Hydrocarbons.

26.    In conclusion, Samson and Hydrocarbons deny that they either assumed or have any responsibility to defend Grace Petroleum's environmental liabilities, if any, or that they are in any way liable for hazardous materials that Grace Petroleum allegedly sent to the Casmalia Site years before the date of the Stock Purchase Agreement. Rather, in the Stock Purchase Agreement, WRGrace and Grace Energy agreed to defend and indemnify Samson and Hydrocarbons (formerly named "Grace Petroleum") from and against a wide range of claims arising from events that occurred before Samson purchased Grace Petroleum's stock.

27.     Samson and Hydrocarbons have rejected and continue to reject the allegations made by WRGrace and Grace Energy concerning their alleged liability for potential clean-up costs associated with the Casmalia Site in California.

28.     Samson and Hydrocarbons file this action in order to obtain declaratory relief, damages, and a decree of specific performance or other appropriate equitable relief, and to place before the this Honorable Court the determination of what corporation or corporations are responsible for defending against or otherwise responding to all potential liability asserted against Samson and Hydrocarbons at the Casmalia Site in California.

## V.

### DECLARATORY RELIEF

29.     The allegations of paragraphs 1 – 28 are incorporated by reference as if fully set forth herein.

30.     WRGrace's allegations to the EPA concerning alleged liability of Samson and Hydrocarbons are incorrect.  Neither Samson nor Hydrocarbons is a responsible party liable for clean up costs relating to the alleged hazardous materials purportedly generated and disposed of years ago by Grace Petroleum.  Samson and Hyrocarbons have no obligation to indemnify WRGrace or Grace Energy for any potential liabilities created by the long-ago activities of Grace Petroleum at the Canadian County or Casmalia Sites.

31.     If, however, it is determined that Hydrocarbons or Samson is responsible for the potential clean up costs relating to the alleged hazardous substances, wastes and/or materials purportedly generated and disposed of by Grace Petroleum or its subsidiaries, then WRGrace and Grace Energy must indemnify Hydrocarbons or Samson for such liability under the Stock Purchase Agreement.

32.    In Section 13.03(a)(iii) of the Stock Purchase Agreement, WRGrace and Grace Energy agreed to indemnify and hold harmless Samson and Hydrocarbons (formerly named "Grace Petroleum") and all former Grace Petroleum subsidiaries "from and against any Damages caused by or arising out of" . . . "the environmental condition of any oil, gas and mineral leases and any other properties, . . . ." Section 13.03(e) states: "Seller's [Grace Energy's] and Grace's [WRGrace's] obligation to indemnify Purchaser under Section 13.03(a)(iii) . . . shall continue without limitation of time." Under Section 13.03(a)(iii) of the Stock Purchase Agreement, "properties" is not a defined term and is much broader in scope than the "Properties" transferred under the Agreement. It includes the environmental condition of any properties, whether real or personal, owned or disposed of by Grace Petroleum, including waste properties, hazardous or otherwise, generated or disposed of at the Canadian County and Casmalia Sites. It also includes any properties where Grace Petroleum may have disposed of hazardous wastes, substances or materials, including the Canadian County and Casmalia Sites.    In the alternative, if it is determined that this provision is ambiguous, then the Court should consider parol evidence and the surrounding facts and circumstance in determining the meaning of the Stock Purchase Agreement.

33.    Consequently, even if Samson or Hydrocarbons is determined to be a responsible party for the potential clean-up costs relating to the alleged hazardous substance purportedly generated and disposed of by Grace Petroleum and/or its subsidiaries (which it denies), WRGrace and Grace Energy must indemnify Samson or Hydrocarbons for this liability as to the Canadian County Site, Casmalia, and any other similar sites.

34.    Alternatively, Samson and Hydrocarbons seek a declaration that WRGrace and Grace Energy, by their past conduct, have waived any right they may have had to deny their

obligation to defend the claims at the Canadian County Site and Casmalia or to decline to discharge those liabilities, if any. In addition, Samson and Hydrocarbons seek a declaration that WRGrace and Grace Energy, by their past conduct, have ratified the Agreement.

35.     Samson and Hydrocarbons seek a declaratory judgment from this Court that WRGrace and Grace Energy are the responsible parties for the potential liability for clean up or other response costs relating to the alleged hazardous materials purportedly generated and disposed of by Grace Petroleum or its subsidiaries at the Canadian County Site and Casmalia, together with defense costs incurred by Samson relating to these matters. Alternatively, Samson and Hydrocarbons seek a declaration that WRGrace and Grace Energy have already assumed the defense and liability related to such alleged generation and disposal activities at Canadian County and Casmalia and that they are estopped from repudiating that assumption. Samson and Hydrocarbons further seek a declaration that WRGrace and Grace Energy ratified the Agreement by their past conduct. Samson and Hydrocarbons also seek a declaratory judgment that declares and adjudicates their rights and legal relationships under the Stock Purchase Agreement with respect to the EPA's claims described herein. Samson and Hydrocarbons plead the Stock Purchase Agreement in its entirety, incorporating it herein by reference.

## VI.

### BREACH OF CONTRACT: The Agreement

36.     The allegations of paragraphs 1 – 35 are incorporated by reference as if fully set forth herein.

37.     WRGrace and Grace Energy have breached, or anticipatorily breached, the Stock Purchase Agreement by failing to act in accordance with the representations, warranties and indemnities contained in the Agreement. All conditions precedent to recovery have occurred.

Samson and Hydrocarbons are entitled to recover their damages as a result of the breach, including their costs, attorneys' fees and any appropriate equitable relief, including specific performance.

## VII.

### BREACH OF CONTRACT: The Second Settlement Agreement

38.    The allegations of paragraphs 1 – 37 are incorporated by reference as if fully set forth herein.

39.    WRGrace and Grace Energy have breached, or anticipatorily breached, the Second Settlement Agreement by failing to act in accordance with their obligations contained in the Second Settlement Agreement. All conditions precedent to recovery have occurred. Samson and Hydrocarbons are entitled to recover their damages as a result of the breach, including their costs, attorneys' fees and any appropriate equitable relief, including specific performance.

## VIII.

### PROMISSORY ESTOPPEL

40.    The allegations of paragraphs 1 – 39 are incorporated by reference as if fully set forth herein.

41.    Samson and Hydrocarbons are further entitled to relief against WRGrace and Grace Energy under the doctrine of promissory estoppel. Based upon their actions and course of conduct relating to the Canadian County Site and Casmalia, WRGrace and Grace Energy are estopped to disclaim or abandon their responsibility for defending against the EPA, responding to the issues at the County County and Casmalia Sites, including any work that may be required by the EPA or other governmental entity at or related to those sites. In addition, WR Grace and Grace Energy are further estopped from attempting to seek a transfer of responsibility to

Hydrocarbons or Samson.  The actions and course of conduct of WRGrace and Grace Energy constitute promise, separate from and in addition to the warranties, representations and indemnities contained in the Stock Purchase Agreement, upon which it was foreseeable that Plaintiffs would rely and upon which Plaintiffs substantially and justifiably relied to their detriment.  Plaintiffs would further show that injustice can be avoided only if the promises are enforced and WRGrace and Grace Energy are required to follow through and perform their undertakings with respect to the Canadian County and Casmalia Sites.   Samson and Hydrocarbons are also entitled to recover their damages, including costs, attorneys' fees and any appropriate equitable relief including specific performance.

## IX.

## NEGLIGENT MISREPRESENTATION

42.    The allegations of paragraphs 1 – 41 are incorporated by reference as if fully set forth herein.

43.    In the alternative, WRGrace and Grace Energy made representations and affirmations of fact in connection with a transaction in which they had a pecuniary interest, their sale of the stock of Grace Petroleum pursuant to the Stock Purchase Agreement. In making these inaccurate or incomplete representations, WRGrace and Grace Energy did not exercise reasonable care or competence in communicating information to Samson.

44.    Despite its diligence, Samson only just discovered that WRGrace and Grace Energy supplied false or incomplete information pertaining to Grace Petroleum's disposal of wastes and potential liability.

45.     Samson justifiably relied upon such negligent misrepresentations, resulting in a potential significant pecuniary loss, for which Samson is entitled to recovery from WRGrace and Grace Energy.

## X.

## FRAUD AND FRAUDULENT INDUCEMENT

46.     The allegations of paragraphs 1 – 45 are incorporated by reference as if fully set forth herein.

47.     Upon information and belief, at the time they entered into the Agreement WRGrace and Grace Energy knew or had access to records and other information from which it was knowable that Grace Petroleum had disposed of hazardous waste at the Casmalia and Canadian County Sites. These facts were known or knowable (from records or otherwise) by WRGrace, Grace Energy or their subsidiaries, officers and employees. WRGrace and Grace Energy were in a superior position to have such knowledge because the assets which produced the hazardous waste at issue were not assets of Grace Petroleum at the time the Grace Petroleum stock was conveyed to Samson pursuant to the Agreement. Therefore, Samson had no reason or opportunity to obtain information concerning waste generating assets not owned and operated by Grace Petroleum at the time of the sale.

48.     WRGrace and Grace Energy, therefore, fraudulently induced Samson into the Agreement by concealment of information that was known or knowable to WRGrace and Grace Energy but not by Samson. WRGrace and Grace Energy also committed fraud on Samson. WRGrace and Grace Energy made intentional material representations and affirmations that were false, failed to disclose material facts, made partial disclosures of material facts and/or concealed material and knowable facts that conveyed a false impression. WRGrace and Grace

Energy either knew their representations were false, incomplete or misleading, or, in the alternative, made the representations and affirmations recklessly as positive assertions without knowledge of their truth. WRGrace and Grace Energy intended Samson to act on the basis of the representations, affirmations, failure to disclose, partial disclosures and concealments. Samson justifiably relied to its detriment causing it injury.

49.    Samson just recently discovered the facts on which these allegations are based. Despite its diligence, Samson could not have discovered these facts prior to the events occurring in 2000.

50.    Samson is entitled to actual damages and punitive damages in connection with these matters.

## XI.

## ATTORNEY FEES

51.    The allegations of paragraphs 1 – 50 are incorporated by reference as if fully set forth herein.

52.    Defendants' allegations and actions concerning the Plaintiffs alleged assumption of liability for the potential clean up costs associated with the Canadian County and Casmalia Sites have required Samson and Hydrocarbons to retain the undersigned attorneys to initiate and prosecute this action. Samson and Hydrocarbons are entitled to recover their reasonable and necessary attorneys' fees and expenses incurred in prosecuting this lawsuit.

53.    Accordingly, pursuant to the Texas Civil Practice and Remedies Code, Sections 37.009 and 38.001, Samson and Hydrocarbons pray for an award of their reasonable attorneys' fees and costs incurred in connection with this action. All conditions precedent to recovery have

occurred, and it would be equitable and just for Samson and Hydrocarbons to recover their reasonable attorneys' fees.

## XII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, plaintiffs Samson Investment Company and Samson Hydrocarbons Company pray that defendants W.R. Grace & Company – Conn. and Grace Energy Company be cited to appear and answer herein, and that upon final hearing, plaintiffs be granted the relief prayed for above, including costs of defense incurred by Samson with regard to Casmalia and the Canadian County Sites, reasonable attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 37.009 and § 38.001, pre- and post-judgment interest, punitive damages, and costs of court, and all other relief, general or special, at law or in equity, to which they are justly entitled.

Respectfully submitted,

LOCKE LIDDELL & SAPP LLP

Michael V. Powell
  Texas Bar No. 16204400
Elizabeth E. Mack
  Texas Bar No. 12761050
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
214-740-8000 (Telephone)
214-740-8800 (Telecopier)

**ATTORNEYS FOR PLAINTIFFS**
**SAMSON INVESTMENT COMPANY**
**AND SAMSON HYDROCARBONS**
**COMPANY**