## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
|  | ) Case No. 01-01139 (KJC) |
| W. R. GRACE & CO., *et al.* | ) (Jointly Administered) |
|  | ) **Hearing Date: TBD** |
| Reorganized Debtors. | ) **Re:  Docket Nos. 31812, 32233, 32503, 32560,** |
|  | ) **32571, 32607, 32624** |
|  | ) |
|  | ) |

## W. R. GRACE'S RESPONSE IN OPPOSITION TO
## ANDERSON MEMORIAL HOSPITAL'S MOTION TO
## ALTER OR AMEND ORDER DENYING CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................... 1

THE KEY TERMS AND CONFIRMATION OF GRACE'S PLAN ........................... 5

I.  PLAN TERMS GOVERNING POST-EMERGENCE ADJUDICATION
    OF ASBESTOS PD CLAIMS ............................................................... 5

II. THE PLAN'S TREATMENT OF ASBESTOS PD CLAIMS WAS
    CONFIRMED, AND AFFIRMED ON APPEAL, OVER AMH'S
    OBJECTIONS ................................................................................. 7

FACTS AND PROCEDURAL HISTORY ..................................................... 9

I.  AMH'S PRE-PETITION SOUTH CAROLINA LAWSUIT ............................ 9

II. AMH'S CLAIMS IN GRACE'S BANKRUPTCY ...................................... 10

III. THE EXTENSIVE PROCEEDINGS THAT CULMINATED IN THE
     BANKRUPTCY COURT'S 2008 CLASS CERTIFICATION DENIAL ............. 11

IV. BECAUSE THE COURTS DENIED AMH'S EFFORTS TO TAKE AN
    INTERLOCUTORY APPEAL, AMH'S APPEAL REMAINS ALIVE ............... 12

    A.  The District Court Denied AMH's Motion for Leave to Appeal ......... 12

    B.  The Third Circuit Dismissed AMH's Interlocutory Appeal ............... 13

V.  AMH'S INSTANT MOTION ............................................................. 14

    A.  The Motion and Initial Hearing in April 2015 ............................... 14

    B.  AMH's Most Recent Brief ........................................................ 16

ARGUMENT .................................................................................... 16

I.  RULE 23 PROHIBITS ALTERING OR AMENDING A CLASS
    CERTIFICATION ORDER WHERE, AS HERE, FINAL JUDGMENT
    HAS BEEN ENTERED .................................................................... 16

II. THE PLAN'S MANDATORY, BINDING PROVISIONS REQUIRE
    AMH TO LITIGATE ITS INDIVIDUAL CLAIM FIRST, AND ONLY
    THEN PROCEED WITH APPEALS OF ITS CLASS CLAIMS ...................... 19

III. AMH DOES NOT EVEN ATTEMPT TO SATISFY THE STANDARD
     FOR A MOTION TO RECONSIDER .................................................... 21

i

**Page**

IV.    ALTHOUGH THE MERITS OF CLASS CERTIFICATION ARE NOT PROPERLY BEFORE THIS COURT, ALL OF AMH'S ARGUMENTS ON THE MERITS FAIL ....................................................................................... 22

    A.    AMH Has Not Even Attempted to Satisfy Several Required Rule 23 Showings ..................................................................................................... 23

    B.    AMH'S Numerosity Arguments Fail .................................................................. 27

        1.    Certification of a Class of Asbestos Claimants Whose Injuries Have Not Yet Manifested Would Violate Due Process ........................... 27

        2.    Grace's Expert Witnesses Did Not Concede Numerosity ....................... 29

        3.    Grace's Positions Have Been Fully Consistent ....................................... 31

        4.    AMH's Expunged Claims and Grace's Product Shipments Do Not Prove Numerosity ................................................................................... 32

        5.    Grace Contested Numerosity in the South Carolina Case ....................... 34

        6.    *State of California* Does Not Establish Numerosity ............................... 35

        7.    AMH's Cases Are Distinguishable ......................................................... 36

    C.    AMH'S Superiority Arguments Fail .................................................................. 37

        1.    The Plan Answers AMH's So-Called "Fundamental Question" .............. 37

        2.    In Any Event, AMH's Arguments About the Supposed Inferiority of Section II of the PD CMO Fail ........................................................... 38

        3.    Grace's Possible Claim-Specific Arguments Do Not Support Certification ........................................................................................... 42

        4.    *Grossman's* and *Wright* Do Not Support Certification ........................... 42

        5.    AMH's Cases Are Distinguishable ......................................................... 43

V.    AMH'S REMAINING ARGUMENTS FAIL ................................................................ 45

    A.    The ZAI Settlement Class Has No Bearing on AMH's Motion ........................... 45

    B.    AMH Violated the Bankruptcy Court's February 2002 Order Requiring Leave of Court for Filing Class POC's ................................................ 46

CONCLUSION ................................................................................................................ 48

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................................................25, 28, 33

*Anderson v. Dep't of Pub. Welfare,*
  1 F. Supp. 2d 456 (E.D. Pa. 1998) ..................................................................................36

*Barner v. City of Harvey,*
  2000 WL 1369636 (N.D. Ill. Sept. 15, 2000) ..................................................................21

*In re BGI, Inc.,*
  476 B.R. 812 (S.D.N.Y. 2012), *aff'd*, 772 F.3d 102 (2d Cir. 2014) ........................................18

*Brambles USA, Inc. v. Blocker,*
  735 F. Supp. 1239 (D. Del. 1990).....................................................................................21

*Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.,*
  63 F.3d 1227 (3d Cir. 1995)........................................................................................32, 37

*Camesi v. Univ. of Pittsburgh Med. Ctr.,*
  729 F.3d 239 (3d Cir. 2013)..............................................................................................20

*In re Century Glove, Inc.,*
  Nos. Civ. A. 90-400 & 90-401, 1993 WL 239489 (D. Del. Feb. 10, 1993) ...........................24

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.,*
  795 F.3d 380 (3d Cir. 2015)........................................................................................26, 44

*Commerce Bank v. Mountain View Vill.,*
  5 F.3d 34 (3d Cir. 1993)...................................................................................................13

*Deposit Guar. Nat'l Bank v. Roper,*
  445 U.S. 326 (1980)..........................................................................................................20

*Dewey v. Volkswagen AG,*
  681 F.3d 170 (3d Cir. 2012)..............................................................................................26

*Eastern Minerals & Chems. Co. v. Mahan,*
  225 F.3d 330 (3d Cir. 2000)..............................................................................................17

*In re Ephedra Prods. Liab. Litig.,*
  329 B.R. 1 (S.D.N.Y. 2005)..............................................................................................47

**Page(s)**

*In re First Interregional Equity Corp.,*
   227 B.R. 358 (Bankr. D.N.J. 1998) ...........................................................12, 13

*In re Genesis Health Ventures, Inc.,*
   362 B.R. 657 (D. Del. 2007)...........................................................................18

*In re Grossman's, Inc.,*
   607 F.3d 114 (3d Cir. 2010).......................................................24, 26, 35, 42

*Gutierrez v. Johnson & Johnson,*
   523 F.3d 187 (3d Cir. 2008)..........................................................................20

*Hayes v. Wal-Mart Stores, Inc.,*
   725 F.3d 349 (3d Cir. 2013)..........................................................................37

*In re Kaiser Group Int'l, Inc.,*
   278 B.R. 58 (Bankr. D. Del. 2002) ..........................................................36, 37

*Karr v. Castle,*
   768 F. Supp. 1087 (D. Del. 1991)..................................................................21

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.,*
   309 F.R.D. 195 (E.D. Pa. 2015)....................................................................37

*Macfarlan v. Ivy Hill SNF, LLC,*
   675 F.3d 266 (3d Cir. 2012)..........................................................................32

*Marcus v. BMW of N. Am.,*
   687 F.3d 583 (3d Cir. 2012)..........................................................................37

*Max's Seafood Cafe v. Quinteros,*
   176 F.3d 669 (3d Cir. 1999)...........................................................4, 16, 21, 27

*Meachem v. Wing,*
   227 F.R.D. 232 (S.D.N.Y. 2005) ...................................................................28

*Miller-Turner v. Reich,*
   1996 WL 18834 (E.D. Pa. Jan. 17, 1996) .......................................................5

*Mission Towers v. W. R. Grace,*
   2007 WL 4333817 (D. Del. Dec. 6, 2007).....................................................40

*In re Montgomery Ward Holding Corp.,*
   306 B.R. 489 (D. Del. 2004)..........................................................................19

*MRI Broadway Rental, Inc. v. U.S. Mineral Prods. Co.,*
   704 N.E.2d 550 (N.Y. 1998)..........................................................................36

iv

**Page(s)**

*In re Musicland Holding Corp.*,
   362 B.R. 644 (S.D.N.Y. 2007)............................................................................................18

*Panetta v. SAP America, Inc.*,
   2006 WL 2711747 (E.D. Pa. Sept. 20, 2006), *aff'd*, 294 F. App'x 715
   (3d Cir. 2008)............................................................................................................21

*Pella Corp. v. Saltzman*,
   606 F.3d 391 (7th Cir. 2010) .................................................................................24, 25

*Peschke Map Techs., LLC v. J.J. Gumberg Co.*,
   40 F. Supp. 3d 393 (D. Del. 2014).............................................................................18

*Pittas v. Hartford Life Ins. Co.*,
   513 F.Supp.2d 493 (W.D. Pa. 2007)............................................................................5

*In re Planet Hollywood Int'l*,
   274 B.R. 391 (Bankr. D. Del. 2001) .........................................................................20

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000).....................................................................................24

*In re Sacred Heart Hosp. of Norristown*,
   177 B.R. 16 (Bankr. E.D. Pa. 1995) .........................................................................33

*Saltzman v. Pella*,
   257 F.R.D. 471 (N.D. Ill. 2009)................................................................................25

*Shahin v. PNC Bank, N.A.*,
   2015 WL 167180 (D. Del. Jan. 13, 2015)...................................................................21

*In re Standard Metals Corp.*,
   817 F.2d 625 (10th Cir. 1987) ..................................................................................33

*State of California v. W. R. Grace*,
   418 B.R. 511 (D. Del. 2009)................................................................................35, 36

*In re Szostek*,
   886 F.2d 1405 (3d Cir. 1989).....................................................................................19

*Trizec Props., Inc. v. U.S. Mineral Prods. Co.*,
   974 F.2d 602 (5th Cir. 1992) ....................................................................................36

*U.S. Bank Nat'l Ass'n v. JGKM Assocs. LLC*,
   2015 WL 1474448 (E.D. Pa. Mar. 31, 2015)..............................................................41

v

**Page(s)**

*In re United Cos. Fin. Corp.*,
  276 B.R. 368 (Bankr. D. Del. 2002) ...........................................................................36, 43

*In re United Cos. Fin. Corp.*,
  277 B.R. 596 (Bankr. D. Del. 2002) ...................................................................................44

*In re USN Commc'ns, Inc.*,
  280 B.R. 573 (Bankr. D. Del. 2002) ...................................................................................17

*In re W. R. Grace*,
  366 B.R. 302 (Bankr. D. Del. 2007), *aff'd*, 2007 WL 4333817 (D. Del. Dec. 6,
  2007), and *aff'd*, 316 F. App'x 134, 2009 WL 648651 (3d Cir. Mar. 11, 2009)....................10

*In re W. R. Grace*,
  446 B.R. 96 (Bankr. D. Del. 2011) .............................................................8, 29, 37, 45

*In re W. R. Grace*,
  729 F.3d 332 (3d Cir. 2013)...................................................................... *passim*

*In re W. R. Grace*,
  2008 WL 4234339 (D. Del. Sept. 4, 2008),
  *reconsid. denied*, 398 B.R. 368 (D. Del. 2008) .......................................................12

*In re W. R. Grace*,
  355 B.R. 462 (Bankr. D. Del. 2006) ...................................................................................45

*In re W. R. Grace*,
  389 B.R. 373 (Bankr. D. Del. 2008) .......................................................... *passim*

*In re W. R. Grace*,
  398 B.R. 368 (D. Del. 2008).........................................................................12, 13

*In re W. R. Grace*,
  475 B.R. 34 (D. Del. 2012)..................................................................8, 17, 37, 45

*In re W. R. Grace*,
  476 B.R. 114 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) ..............................24, 26, 42

*In re W. R. Grace*,
  Order Granting Motion to Dismiss Appeal, Case No. 08-4829
  (3d Cir. Dec. 14, 2009) ...................................................................................13, 14

*Warren Consol. Schools v. W. R. Grace*,
  518 N.W.2d 508 (Mich. Ct. App. 1994) ...........................................................................36

**Page(s)**

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.,*
678 F.3d 409 (6th Cir. 2012), *vacated and remanded, Whirlpool Corp. v.
Glazer,* 133 S. Ct. 1722 (2013) .......................................................................24, 25

*Wilkerson v. Bowen,*
828 F.2d 117 (3d Cir. 1987)...........................................................................20

*Wright v. Owens Corning,*
679 F.3d 101 (3d Cir. 2012).........................................................24, 26, 42, 43

**Statutes**

11 U.S.C. § 105 ....................................................................................................18

11 U.S.C. § 524(g)(2)(B)(ii)(I)........................................................................29, 32

11 U.S.C. § 524(g)(2)(B)(ii)(II).................................................................29, 30, 32

11 U.S.C. § 524(g)(2)(B)(ii)(V)..........................................................................7, 8

11 U.S.C. § 1123(a)(4).........................................................................................7, 8

11 U.S.C. § 1127(b) ...............................................................................................20

11 U.S.C. § 1141(a) ..........................................................................................17, 19

28 U.S.C. § 158(a)(3)..............................................................................................13

28 U.S.C. § 1331 .....................................................................................................39

28 U.S.C. § 1334(b) ................................................................................................39

28 U.S.C. § 2071, *et seq.*........................................................................................33

28 U.S.C. § 2072(b)................................................................................................33

**Rules**

Fed. R. Bankr. P. 7023(c)(1)(C) ...........................................................3, 16, 17, 18

Fed. R. Civ. P. 23(a) ..............................................................................................12

Fed. R. Civ. P. 23(a)(1)...............................................................................23, 30, 36

Fed. R. Civ. P. 23(a)(2)...................................................................................4, 23, 25

Fed. R. Civ. P. 23(a)(3)........................................................................................4, 23

**Page(s)**

Fed. R. Civ. P. 23(a)(4).............................................................................................4, 23

Fed. R. Civ. P. 23(b)(2)...................................................................................................25

Fed. R. Civ. P. 23(b)(3)........................................................................................4, 23, 25

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................. *passim*

**Other Authorities**

NORTON CREDITORS' RIGHTS HANDBOOK §18:1 (June 2014) ......................................................17

3 WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:11 (5th ed. 2015)............................36

7 WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:34 (5th ed. 2015) ...........................21

DOCS_DE:204527.1 91100/001

## SUMMARY OF ARGUMENT

For more than 20 years, Anderson Memorial Hospital ("AMH") and its counsel Speights & Runyan have sought to pursue class action claims against W. R. Grace & Co. ("Grace") on behalf of large putative classes of building owners with alleged asbestos property damage. AMH's class certification efforts have been unsuccessful to date, including this Court's 2008 order denying certification of a statewide South Carolina class and a worldwide class, and the rejections by the District Court and the Third Circuit Court of Appeals of AMH's efforts to bring an interlocutory appeal of that order.

However, AMH's appeal of this Court's 2008 class certification ruling remains alive, pursuant to specific, mandatory and binding provisions in Grace's confirmed and consummated Plan of Reorganization regarding the treatment of AMH's putative class claims. Those provisions expressly preserve AMH's appeal, while requiring AMH to follow a defined procedure for how and when that appeal will be heard. Specifically, AMH must first litigate its individual property-damage claim to conclusion in this Court, and *only then* may AMH reactivate its appeal of the 2008 order denying class certification. If that appeal is successful, the Plan provides that AMH's class claims would then be remanded to this Court for litigation pursuant to the Plan's Case Management Order for Class 7A Asbestos PD Claims (Ex. 1 hereto, Plan Ex. 25, Dkt. 31657-24, the "PD CMO").[1] That potential remand litigation is the very same litigation that AMH's pending Motion to Alter or Amend and supporting Brief[2] seek to jumpstart

---

[1]    AMH attached an earlier version of the PD CMO as Exhibit A-1 to its Brief. For completeness, Grace attaches as Ex. 1 hereto the final, operative version that was filed with this Court on January 28, 2014 (Dkt. 31657-24), shortly before the Effective Date. In any event, the provisions discussed by AMH and Grace, and all provisions relevant to AMH's Motion, are the same.

[2]    On March 5, 2014, AMH filed its Motion to Alter or Amend Order Denying Motion for Class Certification and for Entry of Scheduling Order and Granting Related Relief. (Dkt. 31812) (the "Motion" or "Motion to Alter or Amend"). On May 29, 2014, Grace filed its Opposition to AMH's Motion. (Dkt. 32233) On February 4, 2015,

in this Court *now* – in clear violation of the confirmed Plan and its mandatory procedures for appealing and litigating AMH's putative class claims.

The assertions in AMH's brief that AMH "is the Plan's best friend" and is embracing the Plan "lock, stock and barrel" (AMH Br. at 7, 3) are less than credible. In fact, AMH vigorously opposed the Plan and the PD CMO before this Court and in Plan confirmation appeals before the District Court and the Third Circuit, making many of the same arguments raised in the instant Motion. But AMH lost at every level. In 2011, this Court confirmed the Plan, which constitutes a final judgment on all matters contained in the Plan – including the PD CMO's specific and mandatory provisions governing how and when AMH's appeal of the class certification denial must be adjudicated. The District Court and Third Circuit affirmed confirmation in 2012 and 2013, respectively, and in early 2014 the Plan went effective and Grace exited from bankruptcy.

Undeterred by its failure to defeat the Plan, AMH now seeks to evade the Plan's express requirement that AMH first fully litigate its individual claim before it can pursue its class claims, whether on appeal or through the type of motion AMH has filed here. It is critical to note that *AMH itself* has the power to start the ball rolling on having its class appeals heard, by initiating the resolution of its individual property-damage claim in this Court. Yet, in the two years since Grace's emergence, AMH has not taken a single step to start litigating its individual claim, notwithstanding AMH's assertion that that claim could be adjudicated quickly and efficiently in a bench trial in this Court. (AMH Br. at 12) Instead, AMH brazenly urges this Court to enter an order that would circumvent the Plan and allow AMH to litigate its *class* claims in this Court

---

AMH filed its Reply. (Dkt. 32503) This Court held oral argument on April 15, 2015 (Dkt. 32552) and entered an Order on May 5, 2015, denying AMH's discovery requests and directing the parties to confer and submit a proposed scheduling order regarding briefs on the issue of class certification. (Dkt. 32560) On June 8, 2015, the Court entered the parties' proposed scheduling order. (Dkt. 32571) On September 8, 2015, AMH filed its current Brief in Support of Motion for Class Certification. (Dkt. 32624) ("AMH Brief" or "AMH Br.").

now, flouting the Plan's mandate that the class claims "*shall* remain inactive" unless and until (1) AMH's individual claim is fully litigated, (2) appeals of this Court's denial of class certification run their course, and (3) AMH prevails on those appeals, whereupon the class claims would be remanded to this Court pursuant to the Plan's PD CMO.  (Ex. 1, PD CMO § I.B) (emphasis added).  AMH further seeks to undermine the Plan's mandatory sequence and procedures for adjudicating AMH's individual and class claims by prematurely litigating the class claims in some sort of truncated, summary proceeding of AMH's own design, in which the job of this Court, or an appointed administrator, would be simply to "divide the 'pot.'"  (AMH Br. at 12 n.8)  Thus, AMH's pleading is more than just a "Motion To Alter or Amend Order Denying Motion for Class Certification" under Federal Rule of Civil Procedure 23(c)(1)(C); it is a direct assault on Grace's confirmed Plan and an improper invitation to rewrite the Plan terms governing how AMH's class claims must be litigated.

AMH's Motion should be denied for at least four reasons.  *First*, Grace's confirmed Plan constitutes a final judgment that mandates the procedure and timing for appeals of that order, and Federal Rule of Civil Procedure 23(c)(1)(C) and Federal Rule of Bankruptcy Procedure 7023(c)(1)(C) prohibit alteration or amendment of a class certification order after final judgment has been entered.  *Second*, the relief AMH seeks is squarely contrary to the terms of the confirmed Plan, which are binding on AMH.  The Plan requires that AMH's putative class claims (1) "shall remain inactive" until AMH's individual claim is fully litigated and (2) shall not return to this Court unless and until AMH obtains an appellate reversal of the class certification denial.  *Third*, AMH has not even attempted to make the predicate showing required for a motion to alter, amend or reconsider, which is to identify new law or new evidence

3

sufficient to justify reconsideration, or clear error of law or fact constituting "manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

*Fourth*, although the merits of class certification are not properly before this Court at this juncture, AMH's arguments fail to satisfy any of Rule 23's requirements. With regard to numerosity, AMH has not demonstrated that there is a single class member with a viable claim today (other than itself), and even admits that "[t]here is no evidence that any" building owners even "know they have accrued Claims against Grace" or "a right to file Claims." (AMH Br. at 62) With regard to superiority, AMH argues that the Plan provides unequal treatment for pre-Bar Date claims relative to post-Bar Date claims, ignoring that the Third Circuit rejected all unequal-treatment arguments, including AMH's, during Plan appeals.[3] AMH's Motion and Brief are devoid of any discussion, much less a showing, regarding four other Rule 23 factors necessary for class certification: commonality, predominance, typicality, and whether AMH fairly and adequately represents the putative classes. *See* Fed. R. Civ. P. 23(a)(2), 23(b)(3), 23(a)(3) and 23(a)(4). Of course, AMH's showings on these and the other Rule 23 factors were found insufficient in the extensive class certification proceedings previously conducted by this Court, which culminated in the May 29, 2008 order denying class certification "with prejudice." *In re W. R. Grace*, 389 B.R. 373, 380 (Bankr. D. Del. 2008). There is no basis for reversing, or even revisiting, that order. The Motion should be denied.

---

[3]    Moreover, AMH's current unequal-treatment argument lacks credibility because, as discussed in Argument Section IV.C.1 at p. 38 below, it flip-flops the unequal-treatment argument that AMH previously argued in its Plan objections and appeals.

## THE KEY TERMS AND CONFIRMATION OF GRACE'S PLAN

I.    **PLAN TERMS GOVERNING POST-EMERGENCE ADJUDICATION OF ASBESTOS PD CLAIMS**

The Grace Plan divides Class 7A Asbestos PD Claims into two mutually exclusive categories, each of which has its own timing, venue and procedures for litigating such claims against the Asbestos PD Trust following Grace's emergence from bankruptcy. The two categories are set forth, respectively, in Sections I and II of the PD CMO. (Ex. 1) Which category any given claim fits into is determined primarily by whether it was filed before or after the Asbestos PD Bar Date.

Confusingly, AMH's Brief misidentifies these categories as "Track A" and "Track B" claims, instead of the correct Plan terms: ***Section I*** and ***Section II*** claims, which correspond to those respective sections of the PD CMO. Worse, AMH misleads this Court by selectively quoting incomplete snippets from these Plan provisions and omitting the full text and controlling language. (*See, e.g.*, AMH Br. at 1-3)[4] The actual Plan provisions make clear that AMH's putative class claims (as well as its individual claim) fall within Section I. They further provide that AMH's appeals of class certification denial must be stayed until AMH's individual claim has first been litigated to conclusion in this Court, at which point AMH's class appeals must run to completion, and then – only if those appeals are successful – the putative class claims would be remanded to this Court for further proceedings. The specific Plan provisions are as follows:

**Section I claims (filed before the Asbestos PD Bar Date):** Claims filed by the 2003 Bar Date that were not resolved before the effective date must be litigated in this Court. (Ex. 1, PD CMO §§ I.A. and I.B.) The Plan expressly states that Section I Asbestos PD Claims include

---

[4]    Attaching the PD CMO as an exhibit to its Brief is not an excuse for AMH to selectively quote its provisions in a misleading manner. *See Pittas v. Hartford Life Ins. Co.*, 513 F. Supp. 2d 493, 500 (W.D. Pa. 2007) (criticizing plaintiff for selectively quoting exhibit); *Miller-Turner v. Reich*, 1996 WL 18834, *5 (E.D. Pa. Jan. 17, 1996) (criticizing plaintiff for misquoting and drawing unfounded inferences from exhibit).

both AMH's individual claim (POC No. 011008) and its two putative class claims, the statewide

claim for South Carolina commercial buildings (POC No. 09914), and the worldwide claim for

buildings throughout the U.S. and Canada (POC No. 09911).  (Ex. 1, PD CMO § I.B.2.)[5]  The

Plan mandates that AMH's two putative class claims "shall remain inactive" unless and until

AMH litigates its individual claim to "a final, appealable order" in this Court, at which point

AMH's appeals of this Court's 2008 denial of class certification "shall proceed to completion."

(*Id.* §§ I.B.2. and I.B.1.)  Then, if those appeals are "successful, resulting in reversal of the

Bankruptcy Court order[ ] . . . denying class certification," AMH's class claims "shall be

remanded" to this Court and litigated in "proceedings[s] consistent with this CMO for Class 7A

Asbestos PD Claims and the Amended Order and the exhibits thereto."  (*Id.* § I.B.3.)  The

allowed amount of any Asbestos PD Claim that is successfully litigated to judgment in this

Court, including the class claims, shall be paid in full, in cash, by the Asbestos PD Trust (which

is funded by the reorganized debtor).  (*Id.* § II.C.4.)

   **Section II claims (filed after the Asbestos PD Bar Date):**  The Plan makes clear that

Section II is a distinct category that expressly ***excludes*** AMH's individual and class claims, both

of which fall in Section I.  (*Id.* §§ I.A. and I.B.3.)  "For the avoidance of doubt," the Plan states,

"Section II of this PD CMO does not apply to such proceedings" – *i.e.*, the remand to this Court

of any AMH class claims following a successful appeal of class certification.  (*Id.* § I.B.3.)

Thus, Section II of the PD CMO (or "Track B" as AMH mistakenly calls it) can never be

applicable to AMH's individual claim or its putative class claims, so the alleged superiority or

inferiority of Section II's treatment of PD Claims as compared to Section I is utterly academic

---

[5]   POC No. 09911 invokes the term "worldwide" at Part 3, Section A.1 (Ex. A-2(A) to AMH's Brief).

and irrelevant.  Section II applies only to Class 7A Asbestos PD Claims filed *after* the Bar Date.[6]

Section II sets forth a multi-step process for adjudicating such claims, after which the Asbestos

PD Trust shall pay any allowed claims in full.  (*Id.* at §§ II.C.1. & II.C.4.)  First, the claimant

must submit its late Proof of Claim to the Asbestos PD Trust, along with 17 pieces of

information relating to notice, the validity of the Bar Date, and whether and when asbestos was

present and/or removed from the property.  Then, Grace may bring a discharge motion in this

Court if Grace believes the claim is time-barred.  (*Id.* §§ II.A. and II.B.)  If this Court finds that

the claim was not discharged, the claimant may prosecute the claim against the PD Trust in the

U.S. District Court for the District of Delaware or any other District Court with jurisdiction,

including potentially through a jury trial.  (*Id.* § II.C.1.)  If the claim is litigated successfully, it

will be paid in full, in cash, by the Asbestos PD Trust.  (*Id.* § II.C.4.)

## II.    THE PLAN'S TREATMENT OF ASBESTOS PD CLAIMS WAS CONFIRMED, AND AFFIRMED ON APPEAL, OVER AMH'S OBJECTIONS

AMH and other creditors objected to the Plan and appealed its confirmation to the

District Court and Third Circuit, contending among other things that the PD CMO fails to

provide equal treatment between Section I PD Claims and Section II PD Claims, purportedly in

violation of sections 524(g)(2)(B)(ii)(V) and 1123(a)(4) of the Bankruptcy Code.[7]  But the

evidence showed that both categories of claims are treated substantially equally under the Plan,

because, among other reasons, both Section I and Section II claims are adjudicated in a federal

---

[6]    Only one such claim has been asserted since Grace's February 2014 emergence, brought by a Montana logging company that is not a member of either putative AMH class, as its claim relates to trees, not buildings.  This lone claim was filed with the Asbestos PD Trust in October 2015 and is currently being evaluated.  *See* Argument Section IV.B.2.b., p. 31 below (discussing absence of claims filed with Asbestos PD Trust).

[7]    *See, e.g.*, 12/8/09 AMH Post-Trial Br. on Its Objections to Confirmation at Section I ("The Plan Does Not Provide Equality of Treatment"), pp. 51-55, and Section II ("The Plan Treats Creditors in the Same Class Disparately"), p. 55 (Dkt. 23972); 4/25/11 AMH Initial Appellate Br. (Dist. Ct. Case No. 11-199, Dist. Ct. Dkt. No. 22) at pp. 43-48 (same); 6/6/2013 AMH Initial Br. on Appeal (3d Cir. Case Nos. 12-3143, 12-2923, pp. 43-48 ("The Plan Does Not Provide Equality of Treatment.").

court, under the Federal Rules of Bankruptcy and Civil Procedure, and will be paid 100 percent

of their allowed value. (*See* Ex. 1, PD CMO §§ I and II; Plan § 3.1.7(b))  For example, former

Judge Alexander Sanders, the fiduciary appointed by the Bankruptcy Court to represent the

interests of future property-damage claimants whose claims will be adjudicated under Section II,

testified that the Plan "treats future holders of Traditional PD claims or demands [*i.e.*, Section II

Claims] . . . fairly and equitably and on terms substantially similar to the current Traditional PD

Claims [*i.e.*, Section I Claims] . . . by providing mechanisms by which all valid current and

future claims shall be treated and paid on substantially similar terms." (Dkt. 23236, ¶ 26)

This Court rejected AMH and other creditors' equality-of-treatment arguments when it

entered its final judgment confirming the Plan and the PD CMO. *In re W. R. Grace,* 446 B.R. 96

(Bankr. D. Del. 2011).  As this Court found, the Plan satisfies the equality-of-treatment tests of

both section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code (requiring reasonable assurance that the

PD Trust will value and pay similar present and future claims in substantially the same manner)

and section 1123(a)(4) of the Code (requiring a plan to "provide the same treatment for each

claim or interest" in a class).  446 B.R. at 108-110.  The District Court and the Third Circuit

affirmed, specifically rejecting AMH's equality-of-treatment appeals. *In re W. R. Grace,*

475 B.R. 34, 139-41 (D. Del. 2012); 729 F.3d 332, 344, 346, 350 (3d Cir. 2013) (rejecting

AMH's appeals based on section 524(g), equality of treatment, good faith, and feasibility).

In February 2014, Grace emerged, the Asbestos PD and Asbestos PI Trusts received their

initial funding, and approximately $1 billion in allowed claims were paid.  (Dkts. 31700, 31732,

32079)  This included payment of $150.8 million for all Asbestos PD Claims that had been

8

resolved and allowed by the effective date. (*See* Appellees' Initial Br., Case No. 11-199, Dist.

Ct. Dkt. No. 86 at 20 n.27)[8]

## FACTS AND PROCEDURAL HISTORY

As shown in the Argument section below, AMH's Motion should be denied because the

Plan is a final judgment regarding a binding procedure for resolution of AMH's class claims, and

AMH therefore cannot, and has not even attempted to, satisfy Federal Rule of Civil Procedure

23(c)(1)(C) or the standards for a motion to reconsider. Thus, a discussion of the procedural

history should not even be necessary. However, since AMH addressed the procedural

background in detail, Grace will discuss relevant parts of this history to provide context.

## I.    AMH'S PRE-PETITION SOUTH CAROLINA LAWSUIT

In 1992, AMH's counsel Speights & Runyan filed *Anderson Memorial Hospital v.*

*W. R. Grace, et al.*, in South Carolina state court, seeking certification of a nationwide class of

private building owners with alleged asbestos property damage. (Ex. 2, Original Cmplt.) After

the state court struck the claims of out-of-state residents (Ex. 3, 8/12/94 Order),[9] Speights &

Runyan amended its complaint, seeking to certify a much smaller class consisting just of

South Carolina building owners:

> all persons, corporations, partnerships, unincorporated associations or other
> entities which own in whole or in part any building in South Carolina which
> contains asbestos-containing surfacing materials; these buildings have suffered or
> will suffer asbestos contamination caused by the release of asbestos fibers from
> asbestos-containing surfacing materials manufactured, sold and/or distributed by
> defendants or for which Defendants are otherwise liable. (Ex. 4, 1996 AMH
> South Carolina Second Am. Cmplt. ¶ 3)

---

[8]    *Citing* PD Claims settlement approval orders, Dkt. Nos. 16103-04, 16369, 16689, 17184-86, 17193-211, 17433-41, 17642, 19754, 19755, 19672, 19752, 20080, 22240, 23561, 23582-91, 23597, 24017, 24577-78, 24580-82, 24670-75.

[9]    The state court held that "based upon the clear mandate of the door closing statute, this court cannot assert jurisdiction over the claims of non-resident potential class members under Rule 23, . . . whose claims do not arise in South Carolina or whose property at issue is not situated within this state." *Id.* at 3.

Substantial discovery took place on AMH's individual claim and on class issues during the years the state-court action was pending – indeed, as AMH points out, its counsel and Grace "have litigated the hazard issue for thirty years" (AMH Br. at 12) – but no class was certified against Grace by the South Carolina state court prior to Grace's 2001 petition date, nor was one certified subsequently, due to the automatic stay. (Grace 5/29/14 Resp., Dkt. 32233 at 3-4)

## II.    AMH'S CLAIMS IN GRACE'S BANKRUPTCY

On or before the March 2003 Bar Date, AMH filed approximately 3,000 Asbestos PD proofs of claim. The vast bulk were later withdrawn or expunged, primarily because AMH lacked the legal authority to file POC's on behalf of building owners that its counsel did not represent (Dkt. 32233 at 7-8 and n.4, *citing* Dkts. 11025, 11080; *In re W. R. Grace*, 366 B.R. 302 (Bankr. D. Del. 2007), *aff'd*, 2007 WL 4333817 (D. Del. Dec. 6, 2007), and *aff'd*, 316 F. App'x 134, 2009 WL 648651 (3d Cir. Mar. 11, 2009)), and because no Grace product was identified for the buildings named in the POCs. (Dkt. 10961) By 2007, approximately 2,300 claims had either been withdrawn by Speights & Runyan or expunged by this Court, and most of the remainder had been settled or otherwise resolved. Only 158 non-South Carolina PD Claims were pending at the time of Judge Fitzgerald's certification decision. Most of those remaining PD Claims were later resolved before confirmation in 2009.[10]  (Dkt. 32233 at 8) Judge Fitzgerald relied on the paucity of putative PD Claims as a principal basis for finding that numerosity had not been shown and, consequently, denying class certification. 389 B.R. at 375-76.

Three remaining AMH claims are germane to the instant Motion: AMH's individual proof of claim, relating to its hospital building in Anderson, South Carolina (POC No. 011008),

---

[10]    For example, Speights & Runyan agreed with Grace to settle 119 Asbestos PD Claims, all of which were members of the putative AMH class, for a total of $29.4 million. (*See* settlement approval orders, Dkts. 19672, 19752, 19754-55, 20080-81, 23561, 23582-91, 23593, 23595, 23597, 24577-78, 24580-82, 24670-24675). These claims were paid in full on February 11, 2014, shortly after Grace's emergence.

Case 01-01139-AMC    Doc 32650    Filed 01/13/16    Page 20 of 58

and AMH's two putative class claims: (1) the statewide claim for commercial buildings in

South Carolina that allegedly sustained property damage due to Grace asbestos-containing

products (No. 09914), and (2) the worldwide claim, for such buildings across the U.S. and

Canada (No. 09911).

## III.    THE EXTENSIVE PROCEEDINGS THAT CULMINATED IN THE BANKRUPTCY COURT'S 2008 CLASS CERTIFICATION DENIAL

On October 21, 2005, AMH filed its Motion for Class Certification. (Dkt. 10014) AMH

broadened its class definition to include non-South Carolina claimants:

> Anderson seeks to certify an opt-out class action on behalf of itself and the class
> of other property owners whose buildings were, are or will be contaminated with
> asbestos fibers released from asbestos-containing surfacing materials for which
> the Debtors are legally responsible including, but not limited to, those claims
> identified in Exhibit A. The class would explicitly exclude any building for
> which a property damage claim is currently pending in this bankruptcy not listed
> on Exhibit A. (*Id.* at 2)[11]

For two and a half years, the motion was actively litigated by the parties and overseen by

the Court, with extensive discovery, motion practice, oral argument and an evidentiary hearing

on July 5, 2007. (For details, *see* Dkt. 32233 at 9-10.) On May 29, 2008, the Bankruptcy Court

issued an opinion denying AMH class certification "with prejudice." 389 B.R. at 380. The

Bankruptcy Court held that AMH failed to show numerosity since, out of the several thousand

individual PD claims filed at the Bar Date, only one South Carolina claim (AMH itself) and 158

other PD claims remained as of that time. The dearth of claims was "a result [of] [Speights &

Runyan's] withdrawal of claims, this court's expungement of other claims, S&R's lack of

authority to file claims on behalf of certain claimants, and the definition of 'class' provided by

Anderson Memorial which excluded schools, colleges, certain governmental buildings and

claimants represented by counsel." *Id.* at 375-76 & n.6.

---

[11]    Exhibit A was a list of the 3,000 proofs of claim filed by Speights & Runyan in Grace's chapter 11 proceedings.

11

DOCS_DE:204527.1 91100/001

The Court expressed particular concern that certifying a class of individual claims that had not been filed at the Bar Date would "operate to negate the bar date," give certain claimants "the opportunity to file late claims despite the bar date and without having to establish excusable neglect," and "nullify the notice program which entailed substantial effort and expense." *Id.* at 379-80. As an independent basis for denying certification, the Court also found that the putative class did not meet Rule 23(b)'s predominance and superiority requirements, because a class action format "is not conducive to resolution of issues such as whether a Grace product is in place in any claimant's building or whether a specific state's statute of limitations has run" and therefore "is not a superior method of resolving the claims objections in this case." *Id.* at 379.

## IV.   BECAUSE THE COURTS DENIED AMH'S EFFORTS TO TAKE AN INTERLOCUTORY APPEAL, AMH'S APPEAL REMAINS ALIVE

### A.   The District Court Denied AMH's Motion for Leave to Appeal

The District Court rejected AMH's request for leave to appeal the order denying class certification, noting that the Bankruptcy Court's "denial of class certification was neither imprudent nor erroneous," its decision on numerosity "was sound," and "certifying this class would effectively render the bar date useless and adversely affect claimants who filed timely proofs of claim." *In re W. R. Grace*, 2008 WL 4234339, *2 (D. Del. Sept. 4, 2008), *recons. denied*, 398 B.R. 368 (D. Del. 2008).

The District Court distinguished the main bankruptcy court certification decision relied on by AMH then and now, *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998), noting that that court "engaged in an intensely fact specific analysis examining the Rule 23(a) factors" that were lacking for AMH's class but present in that case, where claimants were victims of an elaborate Ponzi scheme. *In re W. R. Grace*, 398 B.R. 368, 378-80 (D. Del. 2008); *see Interregional*, 227 B.R. at 368 (commonality existed because each class member's

12

claim arose from interest in a municipal lease and each class member was victim of an alleged

fraudulent Ponzi scheme).  Based on these facts, the District Court here found that the putative

class in *Interregional* "was precisely defined and the causal chain was clear.  The present case

lacks such clarity.  Grace's ACM [asbestos-containing material] was sold to thousands of

customers over a period of decades.  Many of those building have since changed hands."  398

B.R. at 381.

### B.    The Third Circuit Dismissed AMH's Interlocutory Appeal

AMH sought leave to appeal to the Third Circuit.  Grace moved to dismiss the appeal

because the Bankruptcy Court's order denying certification was interlocutory, and the Third

Circuit therefore lacked jurisdiction over the District Court's discretionary denial of leave to

appeal that order.  The Third Circuit agreed on both points and dismissed AMH's appeal for lack

of jurisdiction.  Noting that a lower court's denial of class certification under Rule 23 is not a

final appealable decision, the Court stated:

> Because the Bankruptcy Court's order was interlocutory, the District Court's
> decision whether to exercise jurisdiction to review the order denying class
> certification was discretionary.  *See* 28 U.S.C. § 158(a)(3) (district court shall
> have jurisdiction to hear appeals "with leave of court, from other interlocutory
> orders and decrees" of the Bankruptcy Court).  This Court cannot review that
> discretionary decision.  *See Commerce Bank v. Mountain View Vill.*, 5 F.3d 34, 36
> (3d Cir. 1993) (although this Court has jurisdiction over final orders of the district
> court in appeals from final orders of bankruptcy judge, it does not have
> jurisdiction "over a district court's discretionary review of a bankruptcy judge's
> interlocutory order[]." ) (citations omitted).

*In re W. R. Grace,* Order Granting Motion to Dismiss Appeal, Case No. 08-4829 (3d Cir. Dec.

14, 2009).  In light of the District Court's denial of the request for an interlocutory appeal and the

Third Circuit's refusal to review that decision, AMH remains able to appeal the denial of class

certification after adjudication of its individual claim.

After the Third Circuit's 2009 ruling, AMH took no steps to seek a ruling on its

individual claim, or to seek permission pursuant to Rule 23 to alter or amend the Bankruptcy

Court's denial of class certification, until March 2014.

## V.    AMH'S INSTANT MOTION

### A.    The Motion and Initial Hearing in April 2015

On March 5, 2014, AMH filed the pending "Motion to Alter or Amend Order Denying

Motion for Class Certification and for Entry of Scheduling Order and Granting Related Relief."

(Dkt. 31812)  Although the Motion ranged far afield in its discussion, the only relief requested

by AMH was narrow:  to enter a scheduling order for re-opening discovery, "followed by

certification briefing and oral argument."  (*Id.* at 1, 33)

On April 17, 2015, this Court heard oral argument on AMH's Motion to Alter or Amend.

At the outset, this Court recognized that Grace's confirmed Plan and the final judgment

embodied in the confirmation order present a major hurdle – indeed, an insurmountable one, in

Grace's view – for AMH's Motion:

> The Court: "I'd like you to first address a hurdle that seems to me it's virtually
> impossible for you to overcome with respect to the relief that you've requested
> and that is, there's a confirmation order which confirmed a plan, which has been
> upheld on appeal, and which various courts have discussed many of the issues you
> raise yet again today, why and how – maybe how's the better question, can I look
> beyond that?"

4/15/15 Hrg. Tr. at 7 (Dkt. 32552).

As the exchange below shows, AMH's counsel avoided answering the question of

whether the Plan constitutes a final judgment.  But counsel nevertheless was forced to concede

that the Plan directly addresses AMH's putative classes and its appeal of the denial of class

certification, and that "we have to go to trial probably first" on AMH's individual claim:

14

Mr. Speights: "We don't ask you to look beyond that, Your Honor, we embrace the plan. We think the plan is the strongest thing in the entire record supporting class certification of this matter."

The Court: "But doesn't it make you – the plan treatment of [Class 7A] claimants clear and are you not obligated to follow that process? Are you not – and does not the plan require that process to move forward?"

Mr. Speights: "Your Honor, the plan, first of all, recognizes that Anderson Memorial Hospital has a right to appeal the denial of certification. So the plan recognizes that there may be a class action on behalf of Anderson Memorial Hospital. So that's number one."

The Court: "But you don't think confirmation of the plan constitutes a final judgment on that issue I take it?"

Mr. Speights: "Well, the plan itself recognizes that Anderson still has its rights to appeal the confirmation. There's a problem that we have to go to trial probably first."

*Id.*

On May 5, 2015, this Court ruled on AMH's Motion. (Dkt. 32560) Regarding discovery, this Court "conclude[d] that, even in light of any limitations, AMH previously had sufficient opportunity to conduct discovery on numerosity related to its putative class and that further opportunity is unwarranted." *Id.* at 2. This Court then ordered that: (1) "AMH's request to conduct limited discovery related to numerosity is DENIED"; and (2) "the parties are directed to confer and submit a proposed scheduling order regarding the filing of briefs on the issue of class certification." *Id.*

As the language of this Order makes clear, this Court did *not* rule that grounds for re-opening (without first appealing) the 2008 class certification order have been established, and did *not* grant leave to re-open class certification in contravention of Section I.B. of the PD CMO. This Court merely (1) denied discovery, and (2) stated in general language that the parties are to submit a scheduling order for "the filing of briefs on the issue of class certification." *Id.* Of course, the first, necessary predicate for such briefing is that AMH must show grounds – material

new law or facts – sufficient to satisfy the Third Circuit's well-established test for reconsidering

or amending an order, as set forth in *Max's Seafood*. *See* 176 F.3d at 677.  In its May 5, 2015

Order, this Court made no such findings, and nothing in the Court's directive to propose a

schedule "regarding the filing of briefs on the issue of class certification" dispensed with AMH's

burden to make the *Max's Seafood* showing **before** it is appropriate to contemplate the merits of

class certification.

> **B.    AMH's Most Recent Brief**

In its September 8, 2015 brief in support of its 2014 Motion, AMH acknowledges, as it

must, that "[t]his matter is currently before the Court on AMH's Motion to Alter or Amend the

*Certification Order*." (AMH Br. at 4) (italics in original)  But then, in what can only be

described as a glaring omission, AMH bypasses the significant showing required under

established Third Circuit precedent as to why it is even entitled to pursue a "motion to alter or

amend" and leaps to arguments concerning the merits of certification.  Regarding the merits,

AMH's Brief assumes, with no explanation, that only numerosity and superiority are at issue or

must be demonstrated.  (*Id.* at 11) ("Unlike all of these class actions, there are, at most, only two

Rule 23 issues left to be decided in this case: superiority and numerosity.")  Its brief therefore

focuses almost exclusively on these two points in complete disregard of the prerequisites for

altering or amending an existing order and of the numerous Rule 23 considerations that apply to

all putative class claims.

## ARGUMENT

**I.    RULE 23 PROHIBITS ALTERING OR AMENDING A CLASS CERTIFICATION
ORDER WHERE, AS HERE, FINAL JUDGMENT HAS BEEN ENTERED**

AMH's reliance on Federal Rules of Civil Procedure 23(c)(1)(C) and Bankruptcy

Procedure 7023(c)(1)(C) as the basis for reconsidering and amending the Court's 2008 class

certification order is misplaced.  Those rules state that "[a]n order that grants or denies class certification may be altered or amended *before final judgment*."  Fed. R. Civ. P. 23(c)(1)(C); Fed. R. Bankr. P. 7023(c)(1)(C) (emphasis added).  In a chapter 11 bankruptcy, confirmation of a plan of reorganization constitutes a "final judgment" on the merits with respect to the issues addressed in the plan.  *See, e.g., Eastern Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 336, n.11 (3d Cir. 2000).  When the plan is confirmed, its terms become binding on debtor and creditor alike.  11 U.S.C. § 1141(a).  *See also* NORTON CREDITORS' RIGHTS HANDBOOK §18:1 (June 2014) ("The plan of reorganization constitutes a contract of sort between a debtor and its creditors by the terms of which the debtor's obligations to its creditors that existed prior to the commencement of the Chapter 11 case are extinguished in consideration for that which the creditors receive under the plan."); *In re USN Commc'ns, Inc.,* 280 B.R. 573, 592 (Bankr. D. Del. 2002) ("[A] confirmed plan acts as a binding contract on all the parties thereto.").

As this Court correctly stated at the April 2015 hearing on AMH's Motion, this Court's 2011 order confirming the Grace Plan, which has long since been upheld on appeal, is a "final judgment." (4/15/15 Hrg. Tr. at 7, Dkt. 32552)  This is underscored by the District Court's 2012 opinion affirming the Plan, which made clear that it was addressing AMH's and other creditors' "appeals of *final judgments* of the United States Bankruptcy Court . . . related to the United States Bankruptcy Code Chapter 11 reorganization of [Grace]." 475 B.R. 34 at 63 (emphasis added); *see also id.* at 74 n.27.  The specific issues contested in AMH's Motion – the treatment, timing, and procedures for adjudicating AMH's putative class claims and appealing this Court's class certification denial – are expressly addressed, in detail, by the Grace Plan.  Section I.B. of the Plan's PD CMO specifically addresses AMH's two putative class claims, mandates that they "shall remain inactive" until AMH's individual claim is litigated in this Court to final judgment,

17

requires that appeals of the order denying class certification "shall proceed to completion" and –

if those appeals succeed – provides for remand of the class claims to this Court for adjudication

pursuant to Section I of the PD CMO. (Ex. 1, PD CMO §§ I.B.1. and I.B.2.)  AMH cannot

dispute that the Plan directly and integrally addresses the adjudication and appeals of its putative

class claims, and that confirmation of the Plan constitutes a final judgment as to those issues

(among others).

      The rationale under Rule 23(c)(1)(C) for allowing a court to alter or amend its own class

certification order *prior to* entry of judgment is the uncontroversial, common-sense notion that a

court enjoys discretion to manage its own docket and interpret its own orders while the case or

relevant matter remains pending before it.  *See Peschke Map Techs., LLC v. J.J. Gumberg Co.*,

40 F. Supp. 3d 393, 395-96 (D. Del. 2014) (court has "inherent power to conserve judicial

resources by controlling its own docket") (internal quotation and citation omitted); *In re Genesis*

*Health Ventures, Inc.*, 362 B.R. 657, 659 (D. Del. 2007) (bankruptcy court has inherent authority

to control its docket under Section 105 of the Code).

      Thus, the Court's 2008 order on class certification initially may have been amenable to

being revisited (assuming that AMH could have made the necessary showings of material new

law or facts, or manifest injustice).  However, once the Plan was confirmed – *i.e.*, final judgment

was entered – AMH's ability to seek alteration or amendment of the 2008 class certification

order under Rules 23(c)(1)(C) and 7023(c)(1)(C) was extinguished.  Not surprisingly, AMH has

not cited, and Grace has not found, any case where a Bankruptcy or District Court re-visited a

class certification order under Rule 23 *after* plan confirmation.[12]

---

[12]    Bankruptcy courts also consistently reject requests for class certification made for the first time after plan
confirmation. *See, e.g., In re BGI, Inc.*, 476 B.R. 812, 825-27 (S.D.N.Y. 2012) (denying post-confirmation
motion for certification of class of holders of unredeemed gift cards who had received constructive notice but
failed to file bar date claims), *aff'd*, 772 F.3d 102 (2d Cir. 2014); *In re Musicland Holding Corp.*, 362 B.R. 644,

Were the rule otherwise, a bankruptcy court could be continually subjected to motions for reconsideration of class certification rulings that have already been disposed of via plan consummation and must thereafter be addressed, if at all, by the appellate courts. The goal of finality in bankruptcy cases would be thwarted.

## II.    THE PLAN'S MANDATORY, BINDING PROVISIONS REQUIRE AMH TO LITIGATE ITS INDIVIDUAL CLAIM FIRST, AND ONLY THEN PROCEED WITH APPEALS OF ITS CLASS CLAIMS

Finality is further bolstered here by the principle of *res judicata* and the rule that a confirmed plan of reorganization is a contract between the debtor and its creditors, and is therefore binding on and enforceable against Grace's creditors, including AMH. *See* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor. . . and any creditor. . . whether or not the claim or interest of such creditor. . . is impaired under the plan and whether or not such creditor. . . has accepted the plan."); *see also In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989) ("[A] confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation."); *In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 495 (D. Del. 2004) ("[T]he plan becomes a legally binding agreement" when approved).

The Plan is both clear and mandatory as to how, when and where AMH must pursue its putative class claims and its request for reversal of the class certification denial. AMH must first litigate its individual claim in the Bankruptcy Court, with the appeals of its rejected class claims remaining inactive until this Court has entered a final appealable order on AMH's individual claim. (Ex. 1, PD CMO §§ I.A. and I.B.; *see* discussion at pp. 5-7 above) Grace's confirmed and consummated Plan, including the PD CMO, is a final and non-appealable judgment that *requires* that AMH litigate its individual claim before this Court and then, whatever the ruling,

---

656 (S.D.N.Y. 2007) (denying post-confirmation certification motion which would "seriously delay the administration of the case").

appeal the entire dispute – both its individual claim and the denial of class certification – to the District Court and, if necessary, the Third Circuit.

This mandatory sequence under the Plan is consistent with Third Circuit precedents in which both class claims and individual claims of the class representative are appealed together. *See generally Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 198 (3d Cir. 2008) (class action plaintiff may appeal denial of class certification once a final judgment has been entered); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244-45 (3d Cir. 2013) (prior interlocutory orders such as class certification decisions merge with, and may be reviewed on appeal from, final judgment). Moreover, the viability of AMH's class appeals is unaffected by whether AMH wins, loses or settles its individual claim. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 340 (1980) (putative class representative retains an individual interest in appealing the denial of class certification even after judgment entered in his favor on his individual claim); *Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987) (individual class reps whose Social Security benefits were satisfied still had standing to pursue pending class certification motion).

Finally, in seeking to re-litigate class certification through a procedure contrary to the Plan, AMH is in effect seeking to rewrite or re-appeal the Plan. It is simply too late for this, especially where, as here, the Plan has not only been confirmed but substantially consummated almost two years ago.[13] The confirmed and consummated Plan cannot be amended by a creditor such as AMH. *In re Planet Hollywood Int'l*, 274 B.R. 391, 400 (Bankr. D. Del. 2001) (creditor lacked standing to modify plan).

---

[13] After confirmation, a plan may only be modified prior to substantial consummation and even then only by the plan's proponents. 11 U.S.C. § 1127(b); *see also* Plan § 4.1.1 (only Grace Plan Proponents may modify Plan).

## III.    AMH DOES NOT EVEN ATTEMPT TO SATISFY THE STANDARD FOR A MOTION TO RECONSIDER

AMH's Motion is pled as a "Motion to Alter or Amend" under Rule 23(c)(1)(C), or alternatively a motion for reconsideration.  (Dkt. 31812, 3/5/14 Motion at 1)  To succeed under controlling Third Circuit precedent, such a motion must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [originally ruled]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood*, 176 F.3d at 677.  "Motions for reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the court." *Shahin v. PNC Bank, N.A.*, 2015 WL 167180, *1 (D. Del. Jan. 13, 2015), *citing Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991) and *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990); *see also Panetta v. SAP America, Inc.*, 2006 WL 2711747, *3 (E.D. Pa. Sept. 20, 2006), *aff'd*, 294 F. App'x 715 (3d Cir. 2008) (denying motion to reconsider class certification denial because "the court [had previously] considered what [movant] is now classifying as new evidence"); *see also* 7 WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:34 (5th ed. 2015) (noting that the conditions for reconsideration of a decision on class certification are "difficult to satisfy" and "courts generally look on motions to reconsider with disfavor.")[14]

AMH's Brief does not even attempt to argue that these requirements are met.  Its March 5, 2014, Motion attempted, but failed, to show new facts or law.  As Grace's May 29, 2014 Response (Dkt. 32233) established, none of the three "legal issues" that AMH claimed it "never

---

[14]    Moreover, "the transfer of a case to a new judge does not open the door for a party to twice bite the apple." *Barner v. City of Harvey*, 2000 WL 1369636, *2 (N.D. Ill. Sept. 15, 2000) (declining to reconsider previous judge's certification decision).

DOCS_DE:204527.1 91100/001

had an opportunity to address" or the nine purported "developments" that purportedly arose

subsequent to the 2008 certification denial merited re-opening that decision.

This Court's May 5, 2015, Order Denying AMH's Discovery Request clearly did not

grant AMH's Motion to Reconsider, nor did it dispense with AMH's obligation to meet its

burden of showing material new facts and/or law sufficient to justify reconsideration. The order

simply said, generally, that the parties are to "confer and submit a proposed scheduling order on

the issue of class certification." (Order at 2, Dkt. 32560) In the context of AMH's claims, "the

issue of class certification" necessarily includes, as a threshold matter, a showing by the movant

of new facts and law sufficient to satisfy the standard for reconsideration. This requirement is

especially important where, as here, class certification was fully and thoroughly litigated before

Judge Fitzgerald, including several years of discovery, an all-day certification hearing, and a

thorough opinion (*see* 5/29/14 Grace Resp. at 9-11), and where 7 1/2 years passed since the

original ruling with no effort by AMH to seek reconsideration – even as the various events

occurred that AMH's Motion suggested justify reconsideration – until March 2014.

## IV.    ALTHOUGH THE MERITS OF CLASS CERTIFICATION ARE NOT PROPERLY BEFORE THIS COURT, ALL OF AMH'S ARGUMENTS ON THE MERITS FAIL

Grace is reluctant to burden the Court with responsive briefing on the merits of class

certification, which AMH has failed to show is even properly before the Court at this stage.

Nevertheless, out of an abundance of caution, and because most of AMH's 64-page Brief

discusses the merits, Grace sets forth in sections A, B and C below how AMH has completely

failed to make any of the required showings for class certification.

22

## A.    AMH Has Not Even Attempted to Satisfy Several Required Rule 23 Showings

AMH seeks certification of a class under Rule 23(b)(3) (AMH Br. at 5), which requires at least six showings by the class proponent:

- Numerosity: *i.e.*, "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

- Commonality: *i.e.*, "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

- Typicality: *i.e.*, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

- Adequacy of representation: *i.e.*, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

- Predominance: *i.e.*, assuming "commonality" has been shown, "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

- Superiority: *i.e.* (again, assuming commonality), "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

AMH devotes most of its brief to just two of these predicate showings:  numerosity (which is discussed in Section IV.B below) and superiority (discussed in Section IV.C below). AMH does not even ***attempt*** to discuss or provide evidence to support the other requirements: commonality, predominance, typicality, and adequacy of representation.

Even if AMH had attempted to prove up these basic certification requirements, it could not. ***First***, as to commonality, the PD CMO itself is irrefutable evidence that there are no questions of law and fact common to the class.  Each putative class member must demonstrate why the confirmed Plan does not discharge its claim, an issue that is substantially determined by the 17 highly individualized factual requirements set forth in Section II.A.1. of the PD CMO. Among other things, the CMO requires information on the timing of installation of Grace's

23

product, when the claimant first learned of the presence of asbestos-containing material, whether

the claimant made any effort to remove the material, when the claimant first learned of Grace's

bankruptcy, and the claimant's damages – all of which are necessarily individualized.  (Ex. 1,

§ II.A.1.)  Different claimants are subject to different state laws on issues such as statutes of

limitation.  And, each class member must also prove its own damages.

*Second*, with regard to the typicality requirement, AMH's claims are not typical of the

rest of the putative class, as the District Court has already determined.  In seeking relief from the

confirmation order, AMH argued that the Plan's treatment of unknown PD Claims was

inequitable in light of *In re Grossman's, Inc.*, 607 F.3d 114 (3d Cir. 2010) and *Wright v. Owens*

*Corning*, 679 F.3d 101 (3d Cir. 2012).  Rejecting this argument, the District Court and the Third

Circuit found that:

> AMH is a known claimant in this litigation that has already filed its proofs of
> claims against the Debtor.  As such, it cannot presently contend that *Wright*
> somehow affects its rights here such that relief from this Court's prior
> Memorandum Opinion would be necessary.  To the extent that AMH is
> attempting to assert the due process rights of other unknown claimants under
> *Wright*, it lacks the standing to do so.  *See In re PWS Holding Corp.*, 228 F.3d
> 224, 248 (3d Cir. 2000) ("Generally, litigants in federal court are barred from
> asserting the constitutional rights of others."); *In re Century Glove, Inc.*, Nos. Civ.
> A. 90-400 & 90-401, 1993 WL 239489, at *2 (D. Del. Feb. 10, 1993).

*In re W. R. Grace*, 476 B.R. 114, 123 (D. Del. 2012), *aff'd*, 729 F.3d 332, 340 (3d Cir. 2013).

The same principles apply to AMH's attempt to represent claimants that may file future PD

claims.  Unlike AMH, those claimants would not have filed Bar Date claims, and will face

entirely distinct legal and factual issues.

AMH cites two opinions, *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010), and

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 420 (6th Cir.

2012), *vacated and remanded*, *Whirlpool Corp. v. Glazer*, 133 S. Ct. 1722 (2013), for the

proposition that "[o]nly a class representative can litigate on behalf of building owners whose

24

Claims have not yet accrued." (AMH Br. at 33)  Astonishingly, AMH does not even

acknowledge that the United States Supreme Court vacated and remanded the Sixth Circuit's

*Whirlpool* opinion, which therefore has no precedential value.  Nor does *Pella* help AMH on

typicality.  In that case, the District Court certified the following classes: "(1) "a Rule 23(b)(2)

declaratory judgment class for all class members whose windows have not manifested the

alleged defect and whose windows have some wood rot but have not yet been replaced; and (2) a

Rule 23(b)(3) statutory consumer fraud class consisting of [members of six state state subclasses]

whose windows have exhibited wood rot and who have replaced the affected windows."

*Saltzman v. Pella*, 257 F.R.D. 471, 475 (N.D. Ill. 2009).  Of course, AMH does not seek and has

never sought a Rule 23(b)(2) declaratory judgment class.  As to the 23(b)(3) class, addressing the

concern that many of the putative class members have no present claims, the District Court in

*Pella* found that "[i]n this case, the six statutory consumer fraud subclasses will consist only of

plaintiffs with manifest defects."  *Id.* at 478-79.  Thus, the *Pella* court did not certify a 23(b)(3)

class that included unaccrued, unmanifested claims; to the contrary, the court recognized that

such a class could ***not*** be certified.  *Pella* thus does not support AMH's assertion that a class

representative can litigate on behalf of unaccrued claims, let alone that ***only*** a class

representative is able to do so.

　　***Third***, as to predominance, the purpose of requiring common questions of law or fact to

predominate is to ensure that the class is sufficiently cohesive to warrant adjudication by

representation.  Moreover, the predominance analysis under Rule 23(b)(3) is "far more

demanding" than the commonality test under Rule 23(a)(2).  *Amchem Products, Inc. v. Windsor*,

521 U.S. 591, 623-24 (1997).  Here, not only has AMH elected to wholly ignore this

25

requirement, it could not possibly meet the requirement even if it were attempt to do so in reply (which it should not be permitted to do).

*Fourth* and finally, as to the requirement of fair and adequate representation, for the reasons discussed above, AMH cannot represent the interests of unknown claimants who did not file claims at any time before the Bar Date or before the Plan's discharge provisions became a final judgment.[15]  AMH, a known claimant which filed its claim at the Bar Date, cannot contend that *Grossman's* or *Wright* somehow affects its rights. *In re W. R. Grace*, 476 B.R. at 123.  Nor can AMH represent known claimants who timely filed at the Bar Date but whose claims were disallowed and expunged or resolved.  Yet, the proposed class AMH seeks to represent includes not only "present Claims which accrued before the Bar Date" but also "present Claims which have accrued since the Bar Date" and "unaccrued Claims which will become present Claims when they accrue at some point in the future."  (Motion at 4-5; 2/4/15 AMH Reply at 4-6)

The interests of AMH and other known claimants who timely filed claims conflict with the interests of claimants who (1) knew of their claims before the Bar Date but did not file; (2) assert that their claims have accrued between the Bar Date and now; and (3) assert that their claims have not yet accrued.  The Bar Date benefits AMH, whose claim was timely filed and does not face discharge issues, but is a major obstacle for putative claimants in the other categories who did not file by the Bar Date and thus must contend with the Plan's discharge provisions.  *See In re Cmty. Bank*, 795 F.3d at 393, quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 184 (3d Cir. 2012) (fundamental intra-class conflict exists, for example, "when some class members 'have been harmed by the same conduct that benefitted other members of the class.'")

---

[15] "The adequacy requirement primarily examines two matters:  the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 392 (3d Cir. 2015).  Grace has previously made it clear that it does not challenge Speights & Runyan's ability to serve as class counsel.

**B.    AMH'S Numerosity Arguments Fail**

AMH supports its contention that there are vast numbers of unasserted PD Claims
waiting in the wings with a random series of arguments, ranging from wild-eyed speculation
about "future" claimants, to re-hashing arguments it has already repeatedly lost about Grace's
experts' testimony, to misstating the record in the South Carolina litigation. While consideration
of AMH's numerosity arguments should not be necessary at all in light of the Plan's binding
provisions and AMH's lack of showing of the *Max's Seafood* elements, Grace will nevertheless
respond to AMH's grab-bag of numerosity arguments here.

> 1.    Certification of a Class of Asbestos Claimants Whose Injuries Have Not
> Yet Manifested Would Violate Due Process

AMH's 2005 Motion for Class Certification described its class as including "property
owners whose buildings were, are or ***will be*** contaminated with asbestos fibers released from
asbestos-containing surfacing materials for which the Debtors are legally responsible."
(10/21/05 Motion at 2 (Dkt. 10014)) (emphasis added). Now, apparently recognizing that a class
of future claims cannot be certified, AMH attempts to characterize ***all*** of its putative class claims
as "present" claims, regardless of when they might be asserted:

> AMH seeks the certification of an opt-out class consisting of the owners of
> buildings which now or formerly contained any Grace product with commercial
> asbestos or contaminated vermiculite, ***with present claims***, excepting claims for
> Zonolite Attic Insulation ("ZAI"). Excluded from AMH's Class Definition are
> building owners and their authorized representatives who filed individual Proofs
> of Claim before the PD Bar Date; building owners who have settled and released
> their claims against Grace; and any building owned by the federal or a state
> government.

Motion at 4-5 (emphasis added). But AMH underscores that the so-called "present" claims in
the putative class include "those claims which accrued before the PD Bar Date ('Accrued
Claims') and those claims which had not accrued at that time ('Gap Claims')," although "AMH
does not seek to represent the holders of Future Demands ('Future Claimants')." *Id.* at 5.

27

In further elaboration of this "amorphous" class definition (*see Amchem*, 521 U.S. at

591), in its Reply in Support of its Motion, AMH asserted:

- "The private building owners which AMH seeks to represent have or will have
  present PD Claims:  present Claims which accrued before the Bar Date; present
  Claims which have accrued since the Bar Date; and unaccrued Claims which will
  become present Claims when they accrue at some point in the future."

  and

- "AMH pointed out in its Motion and reiterates here that it does not seek to represent
  'the holders of Future Demands' (commonly but incorrectly referred to as 'Future
  Claimants').  However, all PD Demands will inevitably accrue.  [citations omitted]
  Once PD Demands accrue, they automatically leave the PD FCR's cocoon and
  become present Claims.  At that point, the PD FCR will not represent these present
  Claimants in their asbestos lawsuits any more than the PI FCR represents former PI
  Demand Holders in the prosecution of their present Asbestos PI Claims."

(2/4/15 AMH Reply at 4-5, Dkt. 32503)

AMH's attempts to circumvent due process problems by describing its class as including

"unaccrued Claims which will become present Claims when they accrue at some point in the

future" are untenable.  In the seminal case of *Amchem Products v. Windsor*, with respect to a

putative class of asbestos claimants whose injuries have not yet manifested, the Supreme Court

recognized "the gravity of the question of whether class action notice sufficient under the

Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous."

521 U.S. at 595; *see also Meachem v. Wing*, 227 F.R.D. 232, 235-37 (S.D.N.Y. 2005) (denying

certification of a class of claimants not presently eligible for public assistance but who might

become eligible in the future, because of due process concerns).  For AMH's putative classes, the

due process problem remains, whether these claims are characterized as future claims or as

currently unaccrued claims which will become present claims at some point in the future.

28

2.    Grace's Expert Witnesses Did Not Concede Numerosity

a.    Dr. Martin Did Not Quantify the Number of Future Asbestos PD
Claims

AMH asserts that numerosity is established by the Third Circuit's finding that

"substantial claims will be made," which was based on the 2009 confirmation hearing testimony

of Grace's expert witness, economist Dr. Denise Martin.  (AMH Br. at 43, *citing* 729 F.3d at 340

and Dkts. 21033, 22628, and 23619)  In fact, Dr. Martin provided no estimate whatsoever about

the probable or likely number of future PD claims or demands.  To satisfy the statutory

requirement of 11 U.S.C. § 524(g)(2)(B)(ii)(I) & (II) – which requires the debtor to show (I) that

it will be subject to substantial future asbestos demands, but also (II) that the amount, number

and timing of such future demands are indeterminate – Dr. Martin opined that it is probable that

future asbestos PD demands in fact would be asserted against Grace.  446 B.R. at 96, 144;

10/13/09 Conf. Hrg. Tr. at 217-225 (Dkt. 23619).  But Dr. Martin did not opine whether such

claims would be meritorious.  (*Id.* at 225)  Nor did she quantify or estimate the number or value

of such future claims – just that they *would* be asserted.  (*Id.* at 223-24)  Critically, Dr. Martin

also testified that the number of future claims would be *indeterminate*.  (*Id.*)

AMH's brief on this point is misleading (AMH Br. at 44) because it discusses just the

first prong of the relevant Bankruptcy Code requirement – section 524(g)(2)(B)(ii)(I) – while

omitting the equally critical second prong – section 524(g)(2)(B)(ii)(II).  The first prong requires

a debtor with asbestos-related liabilities merely to make the general, non-quantified showing that

it is "likely to be subject to substantial future demands for payment" for asbestos claims.

11 U.S.C. § 524(g)(2)(B)(ii)(I).  But the second prong actually requires a showing that "the

actual amounts, numbers, and timing of such future demands *cannot be determined*," thereby

authorizing section 524(g) relief only where the debtor is unable to determine in advance the

29

timing and amount of future claims. 11 U.S.C. § 524(g)(2)(B)(ii)(II) (emphasis added); *see also* Martin testimony (Dkt. 23619 at 218, noting the two prongs). In the portion of her testimony relating to this second prong – which AMH omitted – Dr. Martin explained that forecasting the number of future PD claims involves great uncertainty, given that "[w]e don't know with certainty the amount of the product [] sold, how much product was used per building, the number of buildings that would have been affected, [and] how many of those buildings have subsequently had the product removed." (*Id.* at 223) Thus, Dr. Martin's testimony does not in any way prove that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

b. Ms. Zilly Did Not Concede or Address Numerosity

AMH also argues that, for numerosity purposes, Grace is bound by the confirmation hearing testimony of its expert on the "best interests of creditors," investment banker Pam Zilly, that there will be thousands of future PD claimants. (AMH Br. at 43-44) AMH's misstates Ms. Zilly's testimony. What she actually testified – consistent with Dr. Martin – is that the number of future PD claims is "unknown." (10/13/09 Tr. at 46, Dkt. 23619) The reference to "thousands" is from a Grace brief discussing Ms. Zilly's liquidation analysis, in which she explained that creditors, including asbestos property damage claimants, would fare worse in a chapter 7 liquidation than they would under Grace's plan. (AMH Br. at 44, *citing* AMH Ex. A-12 at 117 (Grace 5/25/11 Br., Dist. Ct. Dkt. No. 86, at 117) In such a hypothetical chapter 7, Zilly testified, the ***creditors*** would file what ***they*** would contend were valid property-damage claims (not what Grace would contend were valid claims). (10/13/09 Tr. at 46, Dkt. 23619) Moreover, given the short time constraints inherent in a chapter 7 liquidation, Zilly testified that the trustee would not have sufficient time to contest and litigate the validity of a large volume of claims filed on a crash basis. *Id.* at 45-46. In short, her testimony was limited to analysis of

30

what might occur in a hypothetical situation that is not applicable to – indeed, is starkly in contrast to – the actual framework established by Grace's Plan for asserting, evaluating and paying PD Claims in an orderly, non-liquidation process. [16]

In contrast to this testimony from more than six years ago about a hypothetical situation that never materialized, we now have nearly two years of experience since emergence to measure the ***actual*** number of Asbestos PD Claims that have been filed.  There has been only one to date, submitted to the PD Trust in October 2015 by an owner of timberlands alleging damage to trees (not buildings).  AMH takes issue with what it calls the "Maytag Defense" (AMH Br. at 8-9, 61-63), but it is both appropriate and accurate for Grace to point out that, in the two years since emergence, no PD Claims have yet been filed by members of AMH's putative classes.

The most AMH can say on this point is that it "fully expects" to file Asbestos PD Claims at some indefinite point in the future.  (*Id.* at 42-43)  Lacking any specifics as to who, where or how many, AMH's aspirational statement is, at best, hopelessly vague.  At worst, it should be viewed with suspicion, given AMH's history of filing thousands of claims on behalf of "buildings" (or in some cases, merely street addresses) whose owners AMH had no authority to represent.  (*See* Facts and Procedural History, p. 10 above).

3.    Grace's Positions Have Been Fully Consistent

AMH incorrectly argues that Grace is barred by "judicial estoppel" from contesting that it will face substantial PD Claims.  (AMH Br. at 44-45)  "Judicial estoppel is a 'judge-made

---

[16]    In the same brief discussed above, Grace noted that Zilly estimated Asbestos PD Claims at approximately $1 billion in a hypothetical chapter 7.  (AMH Br. at 44, *citing* AMH Ex. A-12 at 117)  Again, this testimony has no bearing on the orderly disposition of post-effective date claims under the confirmed Plan.  Among other things, as Zilly testified, "[i]n the chapter 11 there were settlements reached after extensive litigation with respect to property damage claims as well as personal injury claims.  You cannot assume the same settlements and the same benefits [in a chapter 7]." (10/13/09 Tr. at 28-29)  The $1 billion figure was simply an assumption, based on an earlier proposal by the Asbestos PI and Asbestos PD Committees during Grace's Chapter 11, that any PD Claims in chapter 7 liquidation mode would be 15% of Asbestos PI Claims, for which actual total dollar value estimates existed.  (*Id.* at 26-29, 47).

doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [the litigant] has previously asserted in the same or in a previous proceeding.'" *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 270 (3d Cir. 2012) (inner citation omitted). The testimony of Grace's experts that there would be an indeterminate number of future PD claims cannot be twisted into a concession that there *are* a definite and large number of actual claimants within AMH's putative class. There was and is no inconsistency.

Moreover, AMH incorrectly argues that Grace took inconsistent positions before Judge Fitzgerald at the hearings on class certification and confirmation – supposedly arguing first that there were only 158 remaining PD claims, and thus no numerosity, and then arguing at confirmation that there will be massive numbers of claims. The positions taken at the respective hearings were both accurate and consistent: the record as of the July 2007 class certification hearing showed that there were 158 remaining active Bar Date PD Claims, and the record at confirmation showed that there will be substantial, but an indeterminate number of, future PD claims or demands. Judge Fitzgerald was smart enough to have caught any inconsistent assertions at the time – if in fact there was any inconsistency, but there was none.[17]

 4.   AMH's Expunged Claims and Grace's Product Shipments Do Not Prove Numerosity

According to AMH, there are thousands of claims, hundreds of thousands of buildings, and millions of shipments of Grace product, which somehow prove numerosity. (AMH Br. at 7, 42 and nn. 23, 24) But the thousands of claims cited were mostly invalid, and were largely

---

[17]   AMH also argues that equitable estoppel, or issue preclusion, bars Grace from disputing numerosity. (AMH Br. at 47) As AMH acknowledges, issue preclusion requires: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." (*Id.*, quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995)). Here again, the issues of whether (1) there are actual meritorious PD Claims in sufficient numbers to support a class under Rule 23 and (2) whether a substantial but indeterminate number of future PD Claims (many of which may lack merit) are likely to be asserted in the future for purposes of 11 U.S.C. § 524(g)(2)(B)(ii)(I) & (II), are not the same.

expunged, disallowed or withdrawn. (*See* Facts and Procedural History, p. 10 above). Thus, AMH's assertion that it "identified more than 3000 Claims in its Class Claims from the limited data set it had acquired in pre-bankruptcy discovery" (AMH Br. at 42) is specious, given that thousands of these claims were dismissed for lack of product identification or because they were based on nothing more than unsubstantiated conspiracy allegations. (Dkt. 10961)

Moreover, the Rules Enabling Act, 28 U.S.C. § 2071, *et seq.*, precludes the use of class certification to resuscitate claims that were filed with no authority and no support or that have been dismissed or withdrawn based on statutes of limitations, statutes of repose or lack of product identification. *See In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir. 1987) ("Class action procedures can be employed in a bankruptcy proceeding only to consolidate claims that have already been properly filed."); *see also In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 24 (Bankr. E.D. Pa. 1995) (refusing to certify class of claimants who had not filed claims at bar date because "it would be unwarranted, unfair, and possibly violate the due process rights of other creditors of the Debtor"); *Amchem*, 521 U.S. at 613 ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b).").

AMH's allegations of 700,000 buildings and eight million shipments (AMH Br. at 42 and nn. 23, 24) also do not prove numerosity. Even if this massive volume of asbestos-containing products was shipped and installed in so many buildings, the fact that no claims have been asserted in almost 13 years since the Bar Date proves why AMH's speculation about "claims that have accrued since the bar date" and "unaccrued claims that will become present claims in the future" should be rejected.

5.    Grace Contested Numerosity in the South Carolina Case

Selectively paraphrasing one of Grace's earliest South Carolina pleadings, AMH asserts

that Grace admitted numerosity in its 1993 answer to AMH's First Amended South Carolina

Complaint.  (AMH Br. at 7, 42)  To the contrary, Grace contested and litigated AMH's assertion

of numerosity in the South Carolina case, based on an extensive record developed in discovery,

briefing, and a two-day evidentiary hearing in September 2000.  Although the automatic stay was

in place in Grace's bankruptcy by the time Judge Hayes issued his June 29, 2001, ruling

conditionally certifying a class as to other defendants, and thus the ruling did not apply to Grace,

his order acknowledged the opposition to numerosity that had been urged by Grace and the other

defendants; specifically, that there were only 14 potential class members, not 1,652 as claimed

by AMH.  (Ex. 6 to AMH Motion, 7/5/01 Order at 7).  Grace contested the issue of numerosity

throughout the litigation, as shown by the operative South Carolina pleadings – which AMH

selectively omitted – including AMH's 1996 Second Amended Complaint (Ex. 4 hereto at ¶3)

and Grace's 1997 Answer (Ex. 5 hereto at ¶11), which expressly denied numerosity.  *See also*

10/23/00 Certain Defendants' Post-Hearing Br. in Opposition to Class Certification, at pp. 5-34)

(Ex. 6 hereto).  On this record, contrary to AMH's contention, Grace cannot be, and was not,

bound by its initial Answer to AMH's first complaint.[18]

---

[18]    Even if AMH had a legitimate basis (which it does not) for suggesting that Grace admitted numerosity in 1993, the time to have raised that argument was at the 2007 class certification hearing.  AMH's argument on this point, which raises no new information that it could not have raised in 2007, is untimely now.  Moreover, the full text of Grace's Answer reflects that only thing Grace "admitted" was that "the class that *the named plaintiff purports to define* is sufficiently numerous that joinder of all proposed members is impracticable" (emphasis added); AMH fails to acknowledge that in that same pleading, Grace *denied* "that the purported class may be maintained under Rule 23."  (Ex. A-4 to AMH Br., Grace 1/27/93 Answer ¶12).

6.   *State of California* Does Not Establish Numerosity

For at least two reasons, the District Court's opinion in *State of California v. W. R. Grace,* 418 B.R. 511 (D. Del. 2009), does not establish that a large number of putative claimants may have claims against Grace that do not even yet exist.  (AMH Br. at 18)

**First**, the holding of *State of California* – that "actual contamination" is required for injury under California law, meaning that under that state's law, a claim accrues when the claimant knew, or should have known, of the contamination, 418 B.R. at 523 – must be viewed in light of the Third Circuit's later opinion in *Grossman's,* which held that asbestos claims accrue based on pre-petition exposure or conduct, not based on state law accrual principles.  607 F.3d 114.  Thus, it is questionable whether a California state law requirement of "actual contamination" has continued relevance for the process of determining whether specific Grace PD Claims accrued before Plan confirmation and are discharged.

**Second**, even if a state law requirement of actual contamination is still relevant, the *State of California* opinion held merely that "actual contamination" is required for injury and for claim accrual under California law, not the laws of all states.  In reaching this conclusion, the District Court first held that it "must use the choice of law provisions of Delaware, the forum state, to determine the applicable state law."  418 B.R. at 517.  After concluding that Delaware's borrowing statute fails to clearly delineate which law applies, *id.* at 517-18, the court turned to Delaware's general choice-of-law rules, which apply the "most significant relationship" test.  *Id.* at 518-19.  As to the buildings owned by the State of California, (1) they were located in California, so California was the place of alleged injury; (2) the actual installation of asbestos-containing materials occurred in California, and (3) the State necessarily is a resident of California and the parties' relationship was centered in California.  *Id.* at 519.

35

Were this Court or the District Court to apply the same choice-of-law analysis to buildings located in other states, the result would be that the laws of such other states would apply to determine whether "actual contamination" is necessary for an asbestos property damage claim to have accrued.  On this issue, California is in the minority:  In a majority of states, "actual contamination" is *not* required for claim accrual.[19]  Thus, the *State of California* decision has limited applicability and did not create a large pool of putative claimants whose claims have not yet accrued.

7.    AMH's Cases Are Distinguishable

AMH asserts that, because Judge Walrath has stated that class proofs of claim are permissible in bankruptcies and has certified classes of 291 and 47 claimants, numerosity here is therefore established.   (AMH Br. at 4-5, 7-8, discussing *In re United Cos. Fin. Corp.*, 276 B.R. 368, 372 (Bankr. D. Del. 2002) and *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 64 (Bankr. D. Del. 2002)).  Setting aside that AMH has provided evidence of *no* actual members of its putative class, in both *United Companies* and *Kaiser*, the court made clear that while certification is available in a bankruptcy case, determining whether class treatment is appropriate in a particular case is firmly within the bankruptcy court's discretion, and the burden is on the movant to establish each element required by Rule 23.  *See United Cos.*, 276 B.R. at 372; *Kaiser*, 278 B.R. at 62, 64.[20]  As mere speculation or mere numbers do not prove numerosity, *United Companies*

---

[19]    *See, e.g., MRI Broadway Rental, Inc. v. U.S. Mineral Prods. Co.*, 704 N.E.2d 550, 553-54 (N.Y. 1998) (New York law:  claim accrues when ACM installed in building); *Trizec Props., Inc. v. U.S. Mineral Prods. Co.*, 974 F.2d 602, 606-08 (5th Cir. 1992) (Louisiana law:  claim accrues when claimant knew or should have known of presence of ACM in building); *Warren Consol. Sch. v. W. R. Grace*, 518 N.W.2d 508, 510 (Mich. Ct. App. 1994) (Michigan law:  same).

[20]    While "numerosity" is the term generally used to identify this requirement, this requirement might be more appropriately termed "impracticability."  *See Anderson v. Dep't of Pub. Welfare*, 1 F. Supp. 2d 456, 461 (E.D. Pa. 1998); 3 WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:11 (5th ed. 2015) (discussing impracticability under Rule 23(a)(1)).

36

and *Kaiser* do not help AMH. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir.

2013), *citing Marcus v. BMW of N. Am.*, 687 F.3d 583, 596 (3d Cir. 2012) ("Mere speculation as

to the number of class members – even if such speculation is 'a bet worth making' – cannot

support a finding of numerosity."); *see also King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,

309 F.R.D. 195, 203 (E.D. Pa. 2015) (whether joinder of all of the putative class members would

be impracticable "depends on the circumstances surrounding the case and not merely on the

number of class members.") (inner quotation and citation omitted).

    C.    **AMH'S Superiority Arguments Fail**

        1.    <u>The Plan Answers AMH's So-Called "Fundamental Question"</u>

    AMH argues that "the fundamental question" is whether litigating its putative class

claims on a classwide basis under so-called "Track A" (AMH's incorrect term for Section I of

the PD CMO) is superior to litigating individual property-damage claims under so-called

"Track B" (AMH's similarly incorrect term for Section II of the PD CMO).  (AMH Br. at 5, 11,

35, and *passim*)  This argument is completely moot because the Bankruptcy and District Courts

and the Third Circuit have ***already ruled*** that the procedures and remedies available under

Sections I and II of the PD CMO provide substantially equal treatment to their respective

claimants, notwithstanding that they involve different procedures, venue provisions and

sequencing of litigation.  446 B.R. at 107-08; 475 B.R. at 139-40; 729 F.3d at 344-46.  These

rulings rejected the unequal-treatment arguments made by AMH during Plan confirmation

proceedings and on appeal. *See* 4/25/11 AMH Appellate Br. (Dist. Ct. Case No. 11-199, Dist.

Ct. Dkt. No. 22) at 43-48; 12/10/12 AMH Appellate Br. (3d Cir. Case Nos. 12-3143, 12-2923) at

46.  These rulings are *res judicata* as to the Plan's treatment of Asbestos PD Claimants and are

binding on AMH and its putative class members. *See Burlington,* 63 F.3d at 1231-32 (same

issue was actually litigated in prior action, determined by a final and valid judgment, and essential to judgment).

The unequal-treatment argument that AMH makes in its current Brief fails for another reason: it is utterly lacking in credibility because it flip-flops the unequal-treatment arguments AMH made in its Plan objections and appeals. In its Plan confirmation challenges, AMH argued that the Plan violates the Bankruptcy Code's requirement of equal treatment because Section I of the PD CMO, which applies to AMH's individual claim, is *inferior* to Section II because Section I requires AMH to litigate via a bench trial in this Court, in contrast to Section II claimants who may litigate via a jury trial in the U.S. District Court of their choice. (*See* 12/10/12 AMH 3d Cir. Br. at 46; 6/28/11 Dist. Ct. Conf. Hrg. Tr. at 33, 34 (AMH argument that under the Plan, "future PD claims, Judge Sanders' constituency, get to litigate their claims in a District Court of their choosing, which includes their ability to go to a trial by jury"; in contrast, AMH's claim is "[d]eprived both of the opportunity to litigate in its chosen forum and the opportunity to have a trial by jury there.")) The Third Circuit rejected AMH's unequal-treatment argument and found that "the Plan treats AMH sufficiently equally to other members of the same class to meet the requirements of §§ 524(g) and 1123(a)(4)." 729 F.3d at 346. Now, when AMH wants to argue, for the purpose of class certification, that Section I of the PD CMO is *superior* to Section II, AMH flip-flops and argues that Section II treatment of PD Claims is much worse for the claimants than Section I. (AMH Br. at 11, 39-40) This cynical about-face by AMH is totally lacking in credibility and must be rejected.

2.  <u>In Any Event, AMH's Arguments About the Supposed Inferiority of Section II of the PD CMO Fail</u>

AMH sets forth a litany of complaints about why litigation of PD claims under Section II of the PD CMO is supposedly inferior to Section I. (AMH Br. at 11-14, 26, 29, 31-32, 35) As a

threshold matter, AMH fails to explain how it has standing to complain about this litany of supposed deficiencies on behalf of other PD Claimants (1) who are strangers to AMH, (2) whose claims are merely hypothetical at this point, and may never be asserted, and (3) whose interests were fully represented in the Plan confirmation proceedings by the Asbestos PD Future Claimants' Representative, retired Judge Alexander Sanders, who enthusiastically supported the Plan, including in particular the treatment of his constituency under Section II of the PD CMO. As Judge Sanders testified, the Plan "treats future holders of Traditional PD claims or demands [*i.e.*, Section II Claims]. . . fairly and equitably and on terms substantially similar to the current Traditional PD Claims [*i.e.*, Section I Claims] . . . by providing mechanisms by which all valid current and future claims shall be treated and paid on substantially similar terms." (Dkt. 23236, ¶26)[21] Nevertheless, Grace will respond briefly to certain of AMH's long list of complaints about Section II of the PD CMO, to illustrate the flaws in AMH's argument.

*First*, AMH absurdly asserts that jurisdiction is questionable for Section II (or what AMH refers to as "Track B"). (AMH Br. at 32-33) Federal question jurisdiction clearly lies here under 28 U.S.C. § 1334(b) (district court original and exclusive jurisdiction of all chapter 11 cases) and 28 U.S.C. § 1331 (district court original jurisdiction for federal questions). The $75,000 amount in controversy and the citizenship of the parties for diversity cases are irrelevant.

---

[21] The November 23, 2015 Brief of the Property Damage Future Claimants' Representative (Dkt. 32638) in support of AMH's Motion provides no basis for undermining the confirmed Plan's PD procedures. At confirmation, the PD FCR, Judge Sanders, strongly supported the Plan's treatment of PD claims. (*Id.* at 1) The substantially equal treatment of current and future PD Claimants was critical to the PD FCR's opinion that the Plan is fair: "Pursuant to the Class 7A CMO, future Traditional Asbestos PD Claims which are not subject to the Traditional PD Claims Bar Date will be resolved through lawsuits that may be commenced in this Federal District Court or any other Federal District Court that has jurisdiction. The Asbestos PD Trust is required to pay all allowed or settled future Traditional Asbestos PD Claims in full. Accordingly, future holders of Asbestos PD Claims will receive payment by the Asbestos PD Trust of 100% of their allowed claim, the same treatment as received by current claimants." (Dkt. 23236, ¶19). The PD FCR's current brief provides no different analysis.

*Second*, AMH says there will be hundreds or thousands of bifurcated trials "around the nation," making individual litigation under Section II of the PD CMO inferior to class litigation, (AMH Br. at 6), and that "[c]lass certification obviates the necessity for this Court to adjudicate late claims one at a time." (*Id.* at 30) These propositions are both speculative and wrong. Courts try individual cases all the time, and bankruptcy courts in particular try innumerable claim allowance matters. If it was too burdensome, the issue could have and should have been addressed during negotiation of the PD CMO or during Plan confirmation. Contrary to AMH's suggestion in footnote 3 of its brief that Section II had no input from the PD Committee, the Committee (of which AMH counsel Dan Speights was a member) negotiated numerous enhancements to the PD CMO. While AMH asserted a great many objections to confirmation, it never objected to individualized litigation under Section II of the PD CMO and it is too late to introduce this objection now.

In any event, the supposed flood of individual claims inundating the Court has not materialized, although AMH comes close to threatening that it will unleash volumes of claims if this Court doesn't rule its way. (AMH Br. at 63) ("If the Court denies class certification, AMH's counsel will file far more claims that [sic] necessary to support numerosity, including many on the list attached to its Class Claims, as well as those retained by it after the Bar Date.") But as discussed in Argument Section IV.B.4 above, AMH cannot simply resuscitate claims that were withdrawn because they were filed with no authority and no support or that have been dismissed or withdrawn based on statutes of limitations, statutes of repose or lack of product identification. *See also In re W. R. Grace*, 389 B.R. at 380 (noting that "certifying a class could result in the inclusion of claims that [Speights & Runyan] has been adjudicated to have had no authority to file," citing *Mission Towers v. W. R. Grace*, 2007 WL 4333817 (D. Del. Dec. 6, 2007)).

Moreover, if indeed AMH's counsel Speights & Runyan is aware of meritorious, unfiled PD

Claims, there is no rational reason why such claims have not yet been filed with the Asbestos PD

Trust. The extremely high hurdles that such claims would face with respect to excusable neglect,

statutes of limitations and discharge issues simply continue to increase with the passage of time.

*Third*, AMH speculatively predicts that under Section II.C.1. of the PD CMO, Grace will

improperly "tie up" PD claimants "for two or more years" with delay-oriented appeals of any

decisions on discharge issued against Grace by this Court. (AMH Br. at 31)  Setting aside that it

is improper for AMH to ascribe bad motives to Grace, the Plan does not permit such delay

tactics.  Once this Court has entered "a final order" denying a Grace discharge motion, the

Asbestos PD claimant then "*shall* be permitted to prosecute such claim against the Asbestos PD

Trust" in the U.S. District Court for the District of Delaware or any other District Court with

jurisdiction. (Ex. 1, PD CMO § II.C.1.) (emphasis added).

*Fourth*, in asserting that a jury trial is superior, AMH incorrectly suggests that damages

and evidence are presented in a fundamentally different, streamlined way in bench trials than

they are in jury trials. (AMH Br. at 12 n.8)  AMH makes the unsupported statement that the

determination of class damages "is particularly straightforward in a non-jury asbestos PD case,"

and that damages adjudications are much more difficult in a jury trial than in a bench trial. (*Id.*)

In either a bench or jury trial, a damages adjudication requires a trial, with fact witnesses,

experts, evidence, and cross examination, and the Federal Rules of Evidence and Civil Procedure

would apply. *See, e.g., U.S. Bank Nat'l Ass'n v. JGKM Assocs. LLC*, 2015 WL 1474448, *3

(E.D. Pa. Mar. 31, 2015) (burden of proof is same in bench trial as in jury trial).  The only

difference between bench and jury trials in this context is that, in a bench trial, the trier of fact is

a judge and sidebars are unnecessary.  Nor does AMH provide any support for its proposed

truncated procedure, in which rather than the countless mini-trials that would be needed for each

class member to establish damages, "the Court could adjudicate the total amount of class

damages based upon documents and expert testimony" and then an "administrator" would

"divide the 'pot.'"  (AMH Br. at n.8)  AMH's unsubstantiated musings as to how class-wide

damages could be determined should be ignored.

        3.      <u>Grace's Possible Claim-Specific Arguments Do Not Support Certification</u>

AMH predicts that Grace will make arguments first in favor of discharge due to pre-Bar

Date injury, and then will turn to statute of limitations arguments, and then if all else fails, to its

no-hazard defense (AMH Br. at 19), and that Grace should be held to task (in advance) for these

"schizophrenic arguments." (*Id.*)  AMH even goes so far as to suggest that Grace may be

estopped from arguing discharge because it represented for 50 years that asbestos-containing

materials do not cause injury. (*Id.* at 19-20)  All of this is rank speculation, which should be

accorded no weight, especially since no claims have yet been asserted and there is no history of

post-effective date adjudications.  But, in any event, these types of arguments are not

inconsistent: on statutes of limitations, parties commonly argue both that (a) a plaintiff's claim is

invalid but (b) plaintiff was on notice that it had a claim.

        4.      *Grossman's* and *Wright* <u>Do Not Support Certification</u>

AMH asserts that under *Wright*, 679 F.3d at 108, claims that had not yet "accrued" as of

the March 2003 Bar Date "cannot be discharged and must be afforded a 're-do.'"  (AMH Br. at

29)  Of course, as discussed in Argument Section IV.A above, the District Court and Third

Circuit have already held that AMH is precluded from asserting this argument in favor of class

certification.  *In re W. R. Grace*, 476 B.R. at 123 ("To the extent that AMH is attempting to

assert the due process rights of other unknown claimants under *Wright*, it lacks the standing to do

so"); *In re W. R. Grace*, 729 F.3d at 340.  On the merits, the Third Circuit has also addressed this

42

argument, noting on AMH's appeal that *Grossman*'s did not involve a § 524(g) plan, 729 F.3d at

341, and noting in *Wright* that, in cases where a future claims representative is appointed, such

individuals "are appointed, in part, to address the broader issue of whether discharging unknown

future claims comports with due process . . . [W]e leave open whether, when such a

representative provides persons with unknown future claims an opportunity to participate in the

bankruptcy case through that representation, they are afforded due process through otherwise

adequate notice to the future claims representative." 679 F.3d at 108 n.7.  And, Grace's PD

CMO specifically addresses this issue, providing 17 questions designed to, in large part,

determine what a claimant knew and when.

In short, AMH's conception of a massive "re-do" is not correct.  Instead, the specific

facts of whatever individual claims may be asserted, to be ascertained through the PD CMO, will

be determinative of discharge issues.

     5.    <u>AMH's Cases Are Distinguishable</u>

AMH relies on *In re United Cos.,* 276 B.R. 368, for the broad proposition that class

certification is superior because it "obviates the necessity for this Court to adjudicate late Claims

one at a time." (AMH Br. at 30)  However, Judge Walrath's conclusion that the claims could be

adjudicated collectively was based on her findings about the common issues present in that case

that are not present here:  "At least one common issue is extant (whether the printed forms that

the brokers used complied with applicable legal requirements)." 276 B.R. at 373-74.  Moreover,

291 claimants "were solicited by an unregistered mortgage broker, paid a mortgage broker fee,

and signed a loan agreement with the Debtors," *id.* at 371, presenting a situation far different

from putative future Grace Asbestos PD Claims, where the highly individualized issues

surrounding, *inter alia*, discharge and damages present no basis for a unified determination of a

single common issue.

Instructively, in the same bankruptcy proceeding, Judge Walrath also denied certification of a class of home repair borrowers, where there were certain common questions but the determination of how much financing each class member originally requested would require individualized examination of home improvement work orders, as well as any contemporaneous oral or written communications about requested loan amounts, such that individual factual and legal issues would predominate and class treatment would not be superior. *In re United Cos. Fin. Corp.*, 277 B.R. 596, 605-07 (Bankr. D. Del. 2002). Judge Walrath found that, in such circumstances:

> Although the numerosity requirement has been met, an adjudication of the claims of 1,503 class members in one proceeding creates insurmountable manageability issues. We would need to schedule countless mini-trials to determine whether there is liability under [the Equal Credit Opportunity Act] with respect to each class member. This would provide no advantage over simply dealing with the claims in the ordinary course of claims litigation.

*Id.* at 607.

AMH also relies on *In re Community Bank*, where the Third Circuit found that class treatment was superior because of the difficult issues that class members would need to overcome in filing individual lawsuits a decade after class members first received notice that the case had been prosecuted and settled for them. (AMH Br. at 40-41, *citing* 795 F.3d at 409)  But in *Community Bank*, the Third Circuit agreed that a class was superior specifically because a settlement class (which was eventually rejected in intermediate appeals) had been approved more than a decade earlier, and individual claimants had been told "that this case had been prosecuted and settled for them." 795 F.3d at 409 (internal quotation and citation omitted). Here, no AMH class has ever been certified as to Grace, either before or after Grace's chapter 11 filings, and thus no Grace Asbestos PD claimants have ever been told that their claims against Grace were

44

resolved. The key factor which led the Third Circuit to endorse the *Community Bank* class is thus entirely absent here.

## V.   AMH'S REMAINING ARGUMENTS FAIL

AMH argues two additional points, both of which are factually flawed, and neither of which is relevant to the issue of whether class certification should be re-opened and granted.

### A.   The ZAI Settlement Class Has No Bearing on AMH's Motion

Zonolite Attic Insulation ("ZAI") was a loose-fill insulation product made by Grace primarily for use in home attics. The uses of ZAI and the alleged liability issues associated with it were sufficiently different from traditional Asbestos PD claims (which, like AMH's claim, typically claimed removal costs and reduced property values from Grace asbestos-containing products installed in commercial, government or school buildings) that ZAI claims were separately classified under the Plan in Class 7B, whereas traditional Asbestos PD Claims were placed in Class 7A. Bellwether ZAI claims were the subject of a special science trial in which Judge Fitzgerald found that ZAI posed "no unreasonable risk of harm." *In re W. R. Grace*, 355 B.R. 462, 493-94 (Bankr. D. Del. 2006). After the trial, a ZAI settlement class was certified (1/16/09 Order, Dkt. 20535), and procedures and amounts for paying Class 7B ZAI claims under the Plan were proposed and approved. (Plan § 3.1.8, Dkt. 26368; *see also* 446 B.R. at 110 (Bankruptcy Court confirmation order, noting that the U.S. ZAI claimants are in Class 7B, "which voted to accept the Joint Plan" and that "all creditors in this class will receive the same treatment.")) The separate treatment of ZAI PD Claims, as compared to Class 7A traditional Asbestos PD Claims, was actively litigated during Plan confirmation and approved by the courts. *Id.*; *see also* 475 B.R. at 139.

AMH's Brief recites a grab-bag of complaints about ZAI attic-fill claims, including (1) the unfairness of classifying ZAI claims separately from Class 7A traditional Asbestos PD

45

claims (AMH Br. at 19-20, 23); (2) that litigation of the ZAI claims illustrates the extensive and expensive nature of asbestos litigation (*id.* at 23-25); (3) that it was unfair in AMH's view for this Court to certify a settlement class for ZAI when it denied class certification for liability purposes for traditional Asbestos PD Claims (*id.* at 24-25); and so on. (*Id.* at 6, 14-15, 30, 34, 36, 39, 43, 50, 54-56, 60, 61, 62) These, and AMH's various other complaints relating to ZAI, are all Plan objections and/or objections to the 2009 ZAI class settlement, and are way too late to raise now. They are also irrelevant to, and provide no basis for, re-opening the denial of class certification for AMH's putative Class 7A classes.

### B.    AMH Violated the Bankruptcy Court's February 2002 Order Requiring Leave of Court for Filing Class POC's

The February 2002 hearing transcript makes clear that Judge Fitzgerald ordered AMH to file a motion seeking leave to file class Proofs of Claim before filing any such POC's, and that AMH's counsel Dan Speights was present at the hearing. (2/25/02 Tr. at 3, 97, 104, 107-08 and 110, Dkt. 1793; *see* Grace 5/29/14 Resp. at 6-7, Dkt. 32233) Indeed, Judge Fitzgerald ordered AMH to seek leave of court first, before filing class POC's, at five points during that hearing. *Id.* Any doubt was removed in her 2008 written order denying class certification, which confirmed that she had so ordered AMH at the February 2002 hearing. 389 B.R. at 377 n.10.

AMH's series of flimsy arguments as to why it did not violate Judge Fitzgerald's order all fall flat. *First*, AMH suggests that there was no order, only an "observ[ation] in a footnote" that "may be dictum." (AMH Br. at 4). As the 2002 transcript and 2008 order cited above show, AMH is wrong. *Next*, AMH quibbles that the order has less weight because it was unwritten (*id.* at 56), but cites no authority for its novel proposition that a party is free to disregard a judge's oral order issued in open court and recorded in the transcript. *Third*, AMH invokes the general rule that a creditor need not always seek advance court permission before filing a class proof of

46

claim. (*Id.* at 48) But AMH fails to mention that Judge Fitzgerald acknowledged this general rule, yet still ordered AMH to seek advance permission to file a class POC in *this* case because a court has authority to manage its own docket. *See* 389 B.R. at 377 n.10 ("The court is clearly able to set forth a process by which to adjudicate disputed issues and did so in this case.")[22] *Fourth*, AMH insists that certain other lawyers present in Judge Fitzgerald's courtroom likewise filed class proofs of claim without leave of court (AMH Br. at 59-60), but the fact that others may have also violated the court order is of course no excuse. *Finally*, AMH tries to blame Grace, claiming that Grace changed its mind and conceded at a February 25, 2002 hearing that advance permission was unnecessary. (*Id.* at 52-53, 55) But at that hearing, Grace merely took the position that a motion for class certification should be filed after a class proof of claim is received and after a bar date, when all the claims have come in. (2/25/02 Tr. at 109, Dkt. 1793)[23]

Most important, the dispute about whether AMH needed leave of court or violated the court's February 25, 2002 order "at this point, frankly, is irrelevant," just as Judge Fitzgerald said ten years ago. (*See* AMH Br. at 58, quoting 1/26/06 Tr. at 74, Dkt. 11707) She was right.

---

[22] Judge Fitzgerald rejected as "wholly devoid of merit" AMH's argument that it could not have filed the motion to certify until 2005, after Grace had objected to its class claims. *Id.* ("Even if Grace had not filed an objection to [the] claim, this court, in controlling its docket and attempting to orchestrate an orderly process, ordered such a motion to be filed if anyone intended to file a class proof of claim.") She is certainly not alone in rejecting the argument that an objection to a class proof of claim is a prerequisite to a certification motion. *See, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 6-7 (S.D.N.Y. 2005) (Judge Rakoff) ("The Court disagrees with *Charter's* view that an objection was necessary in order to have a 'contested matter' triggering the court's discretion under Rule 9014 . . . [T]he Notes of the Advisory Committee to the 1983 amendment to Rule 9014 explain: 'Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. . . . Objection to the class proofs of claim was not a necessary prerequisite to a motion for class certification.")

[23] AMH's contention that it was excused from following the February 25, 2002 court order because Grace did not assert an objection premised on that order in its 2005 objection to AMH's POCs also fails; Grace timely asserted AMH's violation of the February 2002 court order in its written opposition to AMH's 2005 class certification motion. (12/2/05 Debtors' Opp. to Mot. for Class Cert., Dkt. 11245 at 4, 7-8, 18-19).

## CONCLUSION

Rule 23 precludes AMH from re-opening class certification where, as here, the Plan has been confirmed, constituting a final judgment. Under the confirmed Plan, AMH must try its individual claim and then appeal its individual and class claims together. Ignoring these mandates, AMH brazenly asks this Court to ignore or rewrite the Plan and proceed with class certification and class litigation in this Court now. The Federal Rules of Civil and Bankruptcy Procedure, the express terms of the confirmed Plan, and principles of finality and the orderly administration of justice prohibit the requested relief. AMH's Motion should be denied.

Dated: January 13, 2016

KIRKLAND & ELLIS LLP
John Donley, P.C.
Lisa G. Esayian
Adam C. Paul
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

And

PACHULSKI  STANG  ZIEHL  &  JONES LLP

_James E O Neill_

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:      (302) 652-4400

*Co-Counsel for the Reorganized Debtors*

48

DOCS_DE:204527.1 91100/001

**Exhibits to W. R. Grace's Response in Opposition to
Anderson Memorial Hospital's
Motion to Alter or Amend Order Denying Class Certification**

| Exhibit | Date | Description |
|---------|------|-------------|
| 1 | January 28, 2014 | Exhibit 25 to Grace's Confirmed Plan, Class 7A Case Management Order ("PD CMO") |
| 2 | December 23, 1992 | Original AMH South Carolina state court complaint |
| 3 | August 12, 1994 | South Carolina state court door-closing ruling |
| 4 | September 5, 1996 | AMH South Carolina Second Amended Complaint |
| 5 | May 8, 1997 | Grace Answer to AMH Second Amended Complaint |
| 6 | October 23, 2000 | Certain Defendants' Post-Hearing Brief in Opposition to Class Certification |