# Exhibit 2

| | |
|---|---|
| IN THE STATE OF SOUTH CAROLINA )<br>)<br>COUNTY OF HAMPTON ) | IN THE COURT OF COMMON PLEAS |
| )<br>ANDERSON MEMORIAL HOSPITAL, )<br>on behalf of itself and others )<br>similarly situated )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>W.R. GRACE & COMPANY; W.R. )<br>GRACE & COMPANY-CONNECTICUT; )<br>UNITED STATES GYPSUM COMPANY; )<br>UNITED STATES MINERAL PRODUCTS )<br>COMPANY; DANA CORPORATION; )<br>KEENE CORPORATION; ASBESTOS )<br>PRODUCT MANUFACTURING )<br>CORPORATION; ASBESTOSPRAY )<br>CORPORATION; H & A )<br>CONSTRUCTION CORPORATION, )<br>formerly SPRAYCRAFT, )<br>)<br>Defendants. )<br>_____) | Case No. 92-CP-25-279<br><br>SUMMONS<br><br>JURY TRIAL DEMANDED<br><br>FILED<br>Case # 92-CP-25-279<br>Filed 12-23 19 92<br>at 9:00 o'clock<br>Helen B. Youmans<br>Clerk of Court for<br>Hampton County, South Carolina |

TO THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action of which a copy is herewith served upon you, and to serve a copy of your Answer on the subscriber at his office, Post Office Box 307, Hampton, South Carolina, 29924, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff will apply to the Court for relief demanded in the Complaint.

                                            SPEIGHTS & RUNYAN
                                            304 Lee Avenue
                                            Post Office Box 685
                                            Hampton, South Carolina 29924
                                            (803) 943-4444

                                            By:_____
                                            ATTORNEYS FOR THE PLAINTIFF

Hampton, South Carolina
December 23, 1992



```
IN THE STATE OF SOUTH CAROLINA  )
                                )   IN THE COURT OF COMMON PLEAS
COUNTY OF HAMPTON               )


                                )
ANDERSON MEMORIAL HOSPITAL,     )       Case No. _____
on behalf of itself and others  )
similarly situated              )
                                )       CLASS ACTION COMPLAINT
          Plaintiff,            )
                                )       JURY TRIAL DEMANDED
     v.                         )
                                )
W.R. GRACE & COMPANY; W.R.      )
GRACE & COMPANY-CONNECTICUT;    )
UNITED STATES GYPSUM COMPANY;   )
UNITED STATES MINERAL PRODUCTS  )
COMPANY; DANA CORPORATION;      )
KEENE CORPORATION; ASBESTOS     )
PRODUCT MANUFACTURING           )
CORPORATION; ASBESTOSPRAY       )
CORPORATION; H & A              )
CONSTRUCTION CORPORATION,       )
formerly SPRAYCRAFT,            )
                                )
          Defendants.           )
_____)
```

Plaintiff alleges the following:

1. Plaintiff, Anderson Memorial Hospital, brings this action on behalf of itself, and all others similarly situated, as a class action under Rule 23 of the South Carolina Rules of Civil Procedure.

2. The above-named defendants (and/or their predecessors in interest) are all corporations, companies or other business entities which have been and/or are now engaged in the business of manufacturing, selling and/or distributing friable asbestos-containing material for use in buildings; all references to "asbestos products", "products" or "asbestos materials" contained herein refer to friable spray or trowel applied asbestos-containing

building materials.

3. Subject to the exceptions listed in paragraphs 4 and 11, the class of plaintiffs consists of all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains asbestos material manufactured, sold and/or distributed by the above-named defendants; these buildings have suffered or will suffer asbestos contamination caused by the release of asbestos fibers from products manufactured, sold and/or distributed by the defendants.

4. The class does not include: a) any public and private elementary and secondary school as defined in the class action In re: Asbestos School Litigation, 104 F.R.D. 422 (E.D.Pa.1984), aff'd in part and vacated in part, 789 F.2d 996 (3rd Cir. 1986), cert. denied, 479 U.S. 852, 915 (1986); b) any public and private college or university as defined in the class action Central Wesleyan College v. W. R. Grace & Co., CA No. 2:87-1860-8 (D.S.C.); c) any commercial building leased in any part to the United States government on or after May 30, 1986, as defined in the class action Prince George Center, Inc. v. United States Gypsum Co., C.A.No. 5388 (Philadelphia Common Pleas Court); or d) any building owned by the federal or a state government.

## STATEMENT OF JURISDICTION

5. Plaintiff is a resident of South Carolina and owns buildings located in South Carolina; plaintiff's injuries complained of below occurred or will occur in whole or in part in the State of South Carolina.

2

6. Defendants used the ports of South Carolina or the roads and other means of transportation in the State of South Carolina to transport their products into the State of South Carolina where they sold and/or distributed their products to South Carolina residents or entities for use in buildings located in South Carolina.

7. Defendants are all subject to the jurisdiction of this court in that the defendants transacted business in this state, committed tortious acts in whole or in part in this state, and/or produced, manufactured or distributed goods with the reasonable expectation that those goods would be used in this state and the goods were used in this state.

8. Defendants have caused or will cause, and all class members have suffered or will suffer, property damage as a result of the acts or omissions of these defendants.

9. The amount in controversy exceeds one hundred ($100.00) dollars for each member of the class, and some class members have suffered and will suffer less than fifty-thousand dollars ($50,000.00) in damages.

CLASS ACTION ALLEGATIONS

10. Subject to the exceptions listed in paragraphs 4 and 11, the class of plaintiffs consists of all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains asbestos products manufactured, sold and/or distributed by the above-named defendants.

11. The class does not include: a) any public and private, elementary and secondary schools as defined in the class action In re: Asbestos School Litigation, 104 F.R.D. 422 (E.D.Pa.1984), aff'd in part and vacated in part, 789 F.2d 996 (3rd Cir.1986), cert. denied, 479 U.S. 852, 915 (1986); b) any public and private colleges and universities as defined in the class action Central Wesleyan College v. W. R. Grace & Co., CA No. 2:87-1860-8 (D.S.C.); c) any commercial buildings leased in any part to the United States government on or after May 30, 1986, as defined in the class action Prince George Center, Inc. v. United States Gypsum Co., C.A.No. 5388 (Philadelphia Common Pleas Court); or d) any building owned by the federal or a state government.

12. The class is sufficiently numerous that joinder of all members is impracticable.

13. Plaintiff will fairly and adequately protect the interests of the class. The interests of the class representative are coincident with, and not antagonistic to, those of the remainder of the class and plaintiff is represented by experienced and able counsel who have previously litigated class actions and similar types of cases.

14. There are questions of law and fact common to the class. Common questions of law include the liability of defendants for manufacturing, producing, selling and/or distributing asbestos materials for use in buildings. Common questions of fact include the available scientific and technical knowledge when the asbestos products were manufactured and sold; defendants' knowledge or

reason to know of the health hazards of asbestos and asbestos products; defendants' failure to warn class members of such hazards; the need for inspection and testing of friable asbestos in the class members' buildings; and the resultant damages incurred by members of the class.

15. Plaintiff's claims are typical of the class members' claims and derive from a common nucleus of operative facts in that defendants' asbestos products were installed in plaintiff's and class members' buildings. These buildings have suffered or will suffer property damage caused by the release of asbestos fibers from defendants' products.

16. Upon information and belief, the named plaintiff not only represents a large number of class members whose property is contaminated, but also, due to the defendants' failure to adequately warn of the potential dangers of asbestos products, plaintiff represents an even larger number of class members who have yet to discover that their property has been contaminated by asbestos fibers. For these reasons, a class action is especially appropriate to promote judicial efficiency and to protect class members interests and rights.

17. Each class member has been or will be similarly injured by these defendants' acts and omissions in manufacturing, selling and/or supplying asbestos products.

18. Class treatment is a superior method for the fair and efficient adjudication of the issues in dispute because it permits a large number of injured parties, joinder of whom is

impracticable, to prosecute their common claims in a single forum simultaneously. In addition, it does not infringe upon the rights of those building owners who wish to litigate their claims separately. The class action provides an efficient method whereby the relative rights of the class members and defendants can be fairly managed.

## SUBSTANTIVE ALLEGATIONS

19. Defendants manufactured, processed, sold, marketed and/or placed into the stream of commerce asbestos products knowing that they would be used primarily for fireproofing, insulation, acoustical and decorative purposes in buildings.

20. Asbestos is a known human carcinogen. Deterioration of asbestos products causes the release of asbestos fibers into the air. Some such products in class members' buildings have already deteriorated to such a point as to make immediate removal of such products necessary. All asbestos products will eventually deteriorate to such a point if not earlier removed. In addition, any disturbance of asbestos products (such as by contact by building users or maintenance workers, renovation or remodeling, vandalism, vibration and water damage) also causes a release of fibers. Once released, asbestos fibers are extremely durable and their size and shape permit them to remain airborne for long periods of time.

21. Asbestos contamination in class members' buildings has resulted or will result in property damage in that the class members' buildings have been or will be contaminated in whole or in

part by the release of asbestos fibers.

22. The contamination of class members' buildings with asbestos has damaged or will damage property. As a result of defendants' asbestos products, each class member faces an enormous and inevitable asbestos removal bill. In addition, to control the asbestos until removal, class members must test, monitor and manage defendants' asbestos products.

23. Defendants sought to suppress, conceal and obscure data on the relationship between asbestos exposure and disease as early as the 1930's.

24. Defendants suppressed, discouraged and retarded research and publication concerning the relationship between asbestos and various diseases and actively concealed and misrepresented such relationship.

25. Defendants, through their participation in asbestos industry associations, their funding and control of the Saranac asbestos dust studies during the 1930's, their control over trade publications, and through other agreements, understandings, and joint undertakings, cooperated and assisted each other in the suppression and active concealment and misrepresentation of the relationship between asbestos and disease as early as the 1930's.

26. Defendants were aware, or should have been aware, of certain studies and data linking asbestos with disease and were aware of the acts of suppression, concealment and misrepresentation of the relationship established thereby being perpetrated for their economic benefit, but nevertheless continued to produce,

7

manufacture, distribute and/or sell asbestos products without any warnings as to potential health hazards or property damage presented by their products.

27. Defendants and those entering the asbestos industry subsequent to the consummation of agreements, understandings and concert of action among the other industry members, adhered to an industry-wide practice of refusing to provide necessary warnings as to the health hazards or property damage presented by exposure to asbestos and asbestos products, and the resulting costs to repair such property damage.

28. Because effective control of asbestos contamination is possible only after the asbestos is identified, the named plaintiff and other class members have had to, or will have to, incur the costs of inspection, analysis, containment, removal and replacement of defendants' asbestos products and other property contaminated with asbestos fibers. Class members have spent and will spend at a minimum hundreds of millions of dollars on asbestos abatement activities and other remedial action to eliminate the asbestos contamination caused by asbestos-containing products in their buildings.

29. Class members will be compelled to abate defendants' asbestos products from their buildings as a result of asbestos contamination. Further, class members will have to dispose of much contaminated property including furnishings, drapes and curtains which cannot be adequately cleaned.

30. Class members must test for and manage asbestos

8

materials (and incur substantially increased costs) for those building areas where friable asbestos cannot be immediately removed.

31. All friable asbestos material must be eventually removed from the class members' buildings separately and at great expense. Each removal project carries with it the additional expense of loss of use of those buildings for the duration of the removal projects.

### COUNT I: NEGLIGENCE

32. Plaintiff hereby incorporates by reference Paragraphs 1-31, inclusive, as if fully set forth herein.

33. At all times material hereto, defendants knew or should have known that friable asbestos-containing products, in their ordinary and foreseeable uses, would be used for fireproofing, insulation, acoustical and decorative purposes in buildings.

34. At all times material hereto, defendants manufactured, processed, distributed and/or sold asbestos products which defendants knew, or through the exercise of reasonable care, should have known were defective and would damage class members' property.

35. Defendants failed to warn, or adequately or sufficiently warn, either directly or indirectly, the foreseeable users of the hazards and costs associated with these materials or of the property contamination they could cause after installation.

36. Defendants failed to test or adequately test the

asbestos and/or friable asbestos containing products or use alternate non-asbestos products in their place.

37. Defendants failed to represent accurately to class members, either directly or indirectly, that asbestos as used in the defendants' asbestos products can pose a health hazard and/or contaminate property, whereby class members were induced to purchase and utilize such products.

38. Defendants failed to remove or recommend the removal of friable asbestos-containing products from the market; to undertake the responsibility to test for, and remove and replace, asbestos materials in buildings when they knew or should have known that the presence of such asbestos material in a readily-releasable form would contaminate buildings.

39. Activities engaged in by the defendants have harmed or will harm the class members and were pursuant to a common plan, concert of action and concerted course of conduct.

40. Defendants engaged in malicious conduct by, either intentionally or with a reckless indifference to the interest of others, using asbestos in their products; by failing to provide warnings to the foreseeable users of their products of the hazards associated with asbestos fibers; by failing to test or adequately test asbestos and friable asbestos-containing products; by failing to manufacture, produce or market products which would be safe for intended and foreseeable uses; and/or by failing to manufacture, produce or market substitute products which would be effective yet safe for intended uses.

41. As a result of the acts and omissions of defendants described herein, the class members were or will be directly and materially harmed and injured.

### COUNT II: BREACH OF IMPLIED WARRANTIES

42. Plaintiff hereby incorporates by reference Paragraphs 1-41. inclusive as if fully set forth herein.

43. Defendants failed to represent accurately to class members, either directly or indirectly, that asbestos and friable asbestos-containing products are dangerous to persons and property and would require enormous expenditures to control and ultimately remove.

44. Defendants impliedly warranted through the sale, advertising, and/or marketing of their products, that asbestos and asbestos materials were fit for their normal and foreseeable uses, including fireproofing, insulation, acoustical and decorative purposes in buildings.

45. Class members, as foreseeable and intended users of defendants' products, relied upon defendants' representations, skill, expertise and judgment in assuming that asbestos and asbestos-containing materials would not only perform their basic functions as warranted, but were safe, would not cause the class members to suffer property damage, and would not require enormous sums to maintain and eventually remove. Defendants have consistently refused to assist in any asbestos abatement despite numerous requests from building owners. Plaintiff, like the other plaintiffs before them, again demands responsive action.

11

46. Defendants intended that their asbestos products be used for fireproofing, insulation, acoustical and decorative purposes in buildings.

47. Defendants breached these implied warranties in that asbestos products as manufactured, distributed and/or sold by defendants are poisonous, carcinogenic, deleterious, and highly harmful, and can and do contaminate buildings and other property therein by releasing asbestos fibers, and inevitably require enormous expenditures to maintain and dispose.

48. Activities engaged in by defendants were pursuant to a common plan, concert of action and concerted course of conduct.

49. As a direct and proximate result of defendants' breach of implied warranties of good and merchantable quality and fitness for a particular purpose and for their intended use, and the presence of the dangerous asbestos products in the building resulting therefrom, the class members were or will be directly and materially harmed and injured.

### COUNT III: CONCERT OF ACTION

50. Plaintiff hereby incorporates by reference Paragraphs 1-49, inclusive, as fully set forth herein.

51. Defendants acted pursuant to a common plan, concert of action and a concerted course of conduct with respect to the activities referred to in paragraph 1-49, which activities were performed for the benefit of the defendants as members of the asbestos industry.

52. Each defendant know or had reason to know that the

conduct of some or all of the other defendants subjected class members to injury, constituting numerous breaches of legal duties, and gave substantial assistance or encouragement to such defendants by cooperating with, assisting in, and furthering the activities referred to in paragraphs 1-49, and by adhering to an industry-wide practice of refusing to provide adequate warnings and refusing to adequately test.

53. Each defendant gave substantial assistance to some or all of the other defendants and each defendant's own conduct, separately considered, subjected class members to injury, constituting numerous breaches of legal duties.

54. As a result of the defendants' acts described herein, class members have suffered or will suffer substantial and material harm.

<u>COUNT IV: CIVIL CONSPIRACY</u>

55. Plaintiff hereby incorporates by reference Paragraphs 1-54, inclusive, as if fully set forth herein.

56. Defendants reached an agreement or tacit understanding to do the aforesaid acts with the unlawful intent to market asbestos products by suppressing knowledge about the dangers of asbestos, and by marketing without adequate testing and without adequate warnings.

57. The aforesaid acts, and similar acts, were committed in furtherance of this conspiracy to market asbestos and friable asbestos-containing products in an unlawful manner.

58. Defendants' combination provided defendants with

13

additional power to inflict injury, harm and damages; such power would not have otherwise existed absent such combination.

59. As a result of the defendants' actions described herein, class members have suffered or will suffer substantial and material harm.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands a jury trial and prays that:

A. The Court certify a voluntary class under Rule 23 of the South Carolina Rules of Civil Procedure.

B. Plaintiff and other class members recover the general and special compensatory damages determined to have been sustained by each of them respectively, including, but not limited to, reimbursement of the costs of inspection, analysis, containment, removal and replacement of the defendants' asbestos products, and that judgment therefore be entered therein against the defendants in an amount to be determined;

C. Plaintiff and other class members recover punitive damages from defendants in an amount to be determined;

D. Plaintiff and other class members recover the costs of this suit, including any expert witness fees, together with reasonable attorneys' fees; and,

E. The Court grant such other, further or different relief as may be deemed just and proper.

Respectfully submitted,

SPEIGHTS & RUNYAN
304 Lee Avenue
Post Office Box 685
Hampton, South Carolina 29924
(803) 943-4444

By: _____
ATTORNEYS FOR THE PLAINTIFF

Hampton, South Carolina

December 23, 1992

15