## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 01-01139 (KJC) |
| W.R. GRACE & CO., et al., | ) | Jointly Administered |
| | ) | |
| Reorganized Debtors. | ) | **Re: Docket Nos. 18821, 31812** |
| _____ | ) | **32624, 32650** |

### ANDERSON MEMORIAL HOSPITAL'S REPLY TO GRACE'S RESPONSE IN OPPOSITION TO AMH'S MOTION TO ALTER OR AMEND ORDER DENYING CLASS CERTIFICATION

Pending before this Court is AMH's "Brief in Support of Motion for Class Certification" [DI32624 ("**Brief**")].[1]  AMH files this Reply ("**Reply**") to Grace's "Response in Opposition to AMH's Motion to Alter or Amend Order Denying Class Certification" [DI32650 ("**Response**")].

### INTRODUCTION

On November 23, 2015, the Court-appointed Property Damage Future Claimants' Representative ("**PDFCR**"), retired Judge Alexander M. Sanders, Jr., filed a Brief in support of AMH's Brief [DI32638 ("**PDFCR's Brief**")].  Not only does the PDFCR's Brief add great weight in support of class certification – but for the efforts of Judge Sanders, Grace would not have obtained confirmation of a 524(g) Plan – but it eliminates any perceived ambiguity about AMH's proposed Class Definition.

---

[1] Capitalized terms are defined in the Brief [Brief at 8, n. 1].  AMH uses the defined term "AMH" both within and outside of quoted material.

## PROPOSED CLASS DEFINITION

AMH seeks certification of an opt-out class consisting of the owners of buildings which now or formerly contained any Grace product with commercial asbestos or contaminated vermiculite, excepting ZAI Claims.  Excluded from AMH's Class Definition are building owners and their authorized representatives who filed individual Proofs of Claim before the PD Bar Date; building owners who have settled and released their Claims against Grace; and any building owned by the federal or a state government.

## SUMMARY OF ARGUMENT

Grace's attempt to erect procedural barriers to AMH's Motion is misguided. The Confirmation Order is not a final adjudication on the merits of class certification or of AMH's Class Claims, and accordingly cannot operate as a "final judgment" which precludes reconsideration of class certification under Rule 23(c)(1). And the PDCMO – which has never even been entered by this Court – does not, by its express terms, apply to prohibit further proceedings on the AMH Class Claims, as to which no appeal was pending as of the Effective Date, nor is the Court prohibited from modifying the PDCMO since it was first proposed more than seven years ago, to the extent necessary, to address the many changed circumstances since then.

Grace's attempt to counter AMH's Rule 23 arguments are misguided as well. As to superiority, Grace's argument that the Third Circuit ruled that the Plan provides

substantially equal treatment for Track A and Track B Claimants [Response at 13] is a strawman. That is not the issue. Under Rule 23(b)(3), the question is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Grace offers no argument to refute that class treatment is superior for individual Claimants, be they Track A or Track B.

Similarly, Grace offers no evidence to refute numerosity, which simply means that there are at least 40 building owners with unsettled PD Claims for damages sustained as a result of Grace's asbestos products. Grace cannot seriously suggest that numerosity is lacking after convincing the Third Circuit that it could face thousands of PD Claims.

Grace's effort to re-introduce other Rule 23 requirements after Judge Fitzgerald ruled is built on a house of cards. Grace argues that under Track B (Section II), there is an absence of commonality, typicality, adequacy, and predominance when the PDCMO explicitly provides that AMH's Class Claims are Track A Claims, and Track A already provides for the trial of common issues.

AMH recognizes the tension that existed between bankruptcy and Rule 23 before *American Reserve* was decided. As discussed in that landmark opinion, bankruptcy courts traditionally marshal the assets of a debtor and distribute those assets at a discounted amount among known creditors. *American Reserve* teaches that all creditors – including members of a class – are entitled to participate. While that

concept understandably might be counter-intuitive for the bankruptcy bar, in this case, where the Court approved a 100% Plan for PD Claimants, there is no reason to even pause in implementing the provisions of Rule 23, just as would be done if the bankruptcy had never occurred.

## STATEMENT OF CASE

Pursuant to Fed.R.Civ.P. 23 and Fed.R.Bankr.P. 7023 ("**Rule 23**"), AMH filed a Motion for Class Certification in which it argued all of the elements of Rule 23 were met [DI10014 ("**Motion to Certify**")]. Before Grace filed its Plan, Judge Fitzgerald denied the Motion to Certify on numerosity and superiority [DI18821]. Judge Fitzgerald did not find an absence of commonality, typicality, adequacy, or predominance.

Shortly after the Effective Date, AMH filed a "Motion to Alter or Amend Order Denying Motion for Class Certification and for Entry of Scheduling Order and Granting Related Relief" [DI31812 ("**Motion**")]. AMH set forth in great detail all of the changes that had taken place since entry of the Certification Order [*Id*. at 16-32].

Grace filed a response under a caption identical to that on its present Response [DI32233 ("**2014 Response**")]. Grace made three arguments: AMH should litigate its individual claim and then appeal the full dispute; AMH's class cannot satisfy Rule 23; and AMH's Motion fails to satisfy the standard for a Motion to Reconsider [*Id*. at 7-11, 29-31].

AMH filed a reply in support of its Motion [DI32503 ("**2015 Reply**")].  AMH again discussed the numerous developments which had occurred since the Certification Order [*Id*. at 7-11, 29-32] and specifically argued that "Grace is wrong in asserting that AMH's Motion raises nothing new and thus fails to satisfy the standard for a Motion to Reconsider" [*Id*. at 29].

Following argument, this Court directed the parties to brief class certification [DI32571].  Despite this Court's directive, Grace argues that the merits of class certification are not properly before this Court [Response].

## ARGUMENT

### I.    Rule 23 Does Not Prohibit Alteration Or Amendment Of A Class Certification Order After Confirmation Of A Plan Of Reorganization

Grace's primary procedural argument against reconsideration of class certification is its contention that "Rule 23 prohibits altering or amending a class certification order where, as here, final judgment has been entered" [Response at 16]. The "final judgment" on which Grace relies, however, is not a final judgment on Rule 23 class certification or on the Class Claims.  Rather, the "final judgment" referred to by Grace is the Confirmation Order [Response at 17].

It is generally true that a class certification order cannot be modified post-judgment. But when Rule 23(c)(1) says that "An Order that grants or denies class certification may be altered or amended before final judgment," the "final judgment" referred to is the final judgment in the underlying lawsuit brought by a putative class

representative for the final adjudication of the underlying claim. Clearly, no such final judgment has been entered on the AMH Class Claims. Quite to the contrary, Grace has systemically attempted to avoid the entry of such a final judgment, which would have triggered AMH's ability to pursue its appeal of the denial of class certification whenever such judgment had been entered.

It is also generally true that a confirmation order constitutes a "final judgment." But it is categorically false that the Confirmation Order here constituted a final judgment on class certification under Rule 23 or on AMH's Class Claims. For a judgment to have res judicata effect, there must be "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). The Third Circuit has also made clear that the scope of res judicata in the plan confirmation context must be applied carefully and "properly tailored to unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case." *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir. 2000). Accordingly, even where a party's participation in the bankruptcy case is "undoubtedly active and aggressive," the confirmation order will not have claim preclusion effect unless the underlying factual underpinnings, theory of the case and relief sought in a claim are sufficiently close to a claim "actually litigated in the bankruptcy." *Id*.

Here, the Plan does not purport to address or dispose of *the merits* of AMH's Class Claims, and accordingly does not constitute a final judgment on AMH's Class Claims. At most, the PDCMO attached to the Plan (which has never been entered) addresses matters of scheduling and sequencing.

Indeed, Grace was conscientious about avoiding any suggestion that the Confirmation Order would constitute a final order on AMH's Class Claims for at least two reasons. First, Grace did not want to invite argument that AMH's Class Claims were impaired by the Plan (which would have raised confirmation issues that would be inapplicable if AMH's Class Claims were unimpaired). Second, if the Confirmation Order constituted a final judgment on class certification, then AMH's class certification appeal would have been ripe when the Confirmation Order was entered back in 2009.[2]

Grace repeatedly took steps to assure that the Plan would *not* constitute any kind of final judgment on class certification, specifically to support its argument that there was no final order on class certification amenable to appeal.

On September 19, 2008 when Grace filed its Plan and Plan Exhibits, it listed the AMH Class Claims as active [DI19580, Ex. 21]. Beginning on October 20, 2008,

---

[2]There is an obvious internal inconsistency between Grace's position that the Confirmation Order constitutes a final judgment under Rule 23 that precludes reconsideration of class certification, and Grace's position that AMH's appeal of class certification is "still alive." As discussed further herein, Grace, in seeking dismissal of the appeal in the Third Circuit, disavowed any notion that confirmation would operate as a final judgment with respect to class certification.

AMH sought a final order from Judge Fitzgerald on Grace's objection to AMH's class claims so that there would be a definitive final order from which it could appeal the denial of class certification [DI19987]. Grace, on the other hand, sought entry of an order that the AMH Class Claims be "inactive and held in suspense" [DI20111]. Grace's obvious purpose was to evade appellate review of the denial of class certification.

On December 19, 2008 – while both the resolution of the objections to AMH's Class Claims were under advisement before Judge Fitzgerald, and AMH's appeal of the denial of class certification was filed with the Third Circuit – Grace filed the first iteration of the PDCMO [DI20304-14]. The document provided that, "Class Action Claims shall not be permitted" [*Id*. at ¶II.A.3. at 15]. It also provided that "AMH class claims shall remain inactive unless and until there is a final, appealable order with respect to AMH's individual claim" [*Id*.].

On December 30, 2008, the Third Circuit Clerk directed the parties to address the court's authority to hear the appeal. In response, AMH expressed its concern that Grace would take the position that confirmation of its Plan would preclude subsequent appellate review of class certification and the subsequent assertion of Class Claims, referring to the language in the PDCMO [Case No. 08-4829, Doc. 00314699932 at 33]. Grace, in response, filed a motion to dismiss the appeal, arguing that an order granting or denying class certification is interlocutory and hence not appealable as of right [Case No. 08-4829, Doc. 0031469912 at 1, 3]. When AMH reiterated its

concerns, in response to the motion to dismiss the appeal [Case No. 08-4829, Doc. 00315534273 at 1-3], Grace reassured the Third Circuit that the PDCMO was not a final order, and had nothing to do with the Court's jurisdiction over the class certification appeal:

> [F]or reasons that are unclear, the filing attaches a *proposed* case management order in the bankruptcy case. The proposed order remains subject to negotiation among the various parties and likely will be amended several times before it is entered by the bankruptcy court. In any event, this proposed order simply has nothing to do with this Court's lack of jurisdiction over this appeal.

[Case No. 08-4829, Doc. 00315657978 at 2 (emphasis in original)].

In the next month, Grace filed further amendments to the proposed PDCMO at least twice [DI20874-24, ¶II.A.5 at 5; DI20877, ¶II.A.5], and continued to tweak the language, ultimately providing:

> Class actions claims shall not be permitted. For the avoidance of doubt, the foregoing prohibition against the filing of class actions claims shall not (i) be asserted by Grace as a basis for dismissal of any appeals by Anderson Memorial Hospital of the denial of class certification, (ii) be construed to require the dismissal of, or require any particular ruling with respect to class certification in, any subsequent proceedings on remand, if any, from any such pending appeals, and (iii) be construed in a manner which conflicts with any mandates issued by the Third Circuit Court of Appeals in any such pending appeals.

[DI23177-2, ¶II.A.4. at 25; see also DI25881-14, ¶II.A.4. at 6]. Clearly these amendments were made to address AMH's argument that the potential entry of the confirmation order and proposed PDCMO entitled AMH to appeal class certification.

On December 14, 2009, the Third Circuit agreed with Grace and dismissed

AMH's appeal, noting that the lower court's denial of class certification under Rule 23 was not a final appealable decision. *In re W.R. Grace*, Order Granting Motion to Dismiss Appeal, Case No. 08-4829 (3d Cir. Dec. 14, 2009). The Confirmation Order was entered January 31, 2011. *In re W.R. Grace & Co.*, 446 B.R. 96 (Bankr. D. Del. 2011), *aff'd*, 729 F.3d 332 (3d Cir. 2013). The Plan was implemented on the Effective Date of February 13, 2014 [DI31732].

Having reassured the Third Circuit that confirmation of the Plan and the attached PDCMO "has nothing to do" with that court's jurisdiction over the appeal of class certification, and having obtained the dismissal of that appeal as interlocutory, Grace now takes the exact opposite position: that the entry of the confirmation order constitutes a "final judgment" as to Rule 23 class certification. Grace is fundamentally wrong on the merits of that assertion. But regardless, Grace is judicially estopped from contending that the Confirmation Order constitutes a final judgment with respect to Rule 23 class certification of AMH's Class Claims, having taken the exact opposite position when it successfully sought to dismiss AMH's appeal of the denial of class certification. *Scarano v. Central R. Co. of N.J.*, 203 F.2 510, 513 (3d Cir. 1953); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003).

Moreover, Grace's suggestion that this court is prohibited from revisiting a class certification order under Rule 23 after plan confirmation, and that bankruptcy

courts "consistently" reject motions for class certification made post-confirmation (Grace Brief at 18) is entirely off the mark. Bankruptcy courts can, and have, considered class certification post-confirmation. *See, e.g., In re F-Squared Inv. Mgmt. LLC*, 2016 WL 1127741 (Bankr. D. Del. Mar. 18, 2016) (post-confirmation, stay lifted to permit putative class plaintiffs to pursue as-yet uncertified class action claims in District Court); *In re Connaught Group, Ltd.*, 491 B.R. 88, 99 (Bankr. S.D.N.Y. 2013) (Bankruptcy Court granted motion to certify class of WARN Act creditors filed post-confirmation, where parties in interest "were aware of class claim and the intent to press it").

There has been no final judgment on AMH's Class Claims, and the Confirmation Order does not preclude certification of a class or reconsideration of Judge Fitzgerald's earlier, non-final order denying class certification.

## II.   The Plan Does Not Require AMH To Litigate Its Individual Claim Before Seeking Reconsideration Of Class Certification

The next procedural objection Grace asserts is that reconsideration of the non-final class certification order is prohibited by the PDCMO, unless and until there has been a final adjudication of AMH's individual claim. This argument is also mistaken. By the express terms of the PDCMO – which, it should be noted, has never in fact been entered by the Court[3] – there is no applicable provision which does what

---

[3]AMH has no idea why Grace has not sought entry of the PDCMO in the two years since the Plan become effective. At such time as Grace asks the Court to adopt the Order, AMH and others will have an opportunity to object and comment.

Grace claims. Moreover, to the extent the scheduling and sequencing set forth in the proposed PDCMO ought to be modified in light of changed circumstances in the nearly eight years since it was initially proposed, there is nothing which restricts this Court's authority to do so.

The provisions of the proposed PDCMO relied upon by Grace appear in Section I.B.1-3 of the document. However, the applicability of those provisions is defined and limited by the first sentence of Section I.B., which reads:

> With respect to any and all Class 7A Asbestos PD Claims which were filed as of the March 2003 Bar Date and which either (i) have been disallowed and/or expunged by the Bankruptcy Court and for which the Holders of such Asbestos PD Claims have filed appeals, which appeals are pending as of the Effective Date; or (ii) as to which class certification has been denied and an appeal from such denial of class certification is pending as of the Effective Date:

[PDCMO, pp. 1-2]. The AMH Class Claims were filed as of the March 2003 Bar Date. But they had not been disallowed and/or expunged by the Bankruptcy Court, and so they do not come within the scope of subsection (i) of Section I.B. Class Certification had been denied as to the AMH Class Claims, but AMH's appeal was dismissed by the Third Circuit Court of Appeals on December 14, 2009. Since that date, there has been no pending appeal from the denial of class certification of the AMH Class Claims. The Effective Date did not occur until February 2014, more than four years later. Thus, there was no appeal from the denial of class certification pending as of the Effective Date, and so the AMH Class Claims do not fall within subsection (ii) of Section I.B. either. ***Accordingly, under the express terms of the***

***PDCMO, the provisions of subsections 1-3 of Section I.B. relied upon by Grace are not applicable to the AMH Class Claims because the AMH Class Claims, by definition, do not fall within Section I.B.***

There is a certain logic to the words chosen. While an appeal is pending, the Bankruptcy Court may well be divested of jurisdiction to entertain further proceedings on a class claim. But when such an appeal is dismissed, the Bankruptcy Court's jurisdiction over the underlying claims is restored. In any event, the PDCMO by its express terms does not compel the AMH Class Claims to await determination of the AMH Individual Claim before seeking reconsideration of class certification.

This is just one example of how much circumstances have changed since the PDCMO was first proposed in late 2008. Since that time, the class certification appeal was dismissed by the Third Circuit. The Third Circuit changed the definition of a PD Claim for purposes of bankruptcy. The District Court reversed Judge Fitzgerald on the correct accrual standard. Judge Fitzgerald appointed the first PDFCR in the history of asbestos bankruptcies. The PDFCR appointed by Judge Fitzgerald now supports the recognition of the AMH Class. Finally, and most importantly, Grace proposed, and Judge Fitzgerald, the District Court, and the Third Circuit upheld, a 100% Plan which is entirely different than what Judge Fitzgerald predicted in her Certification Order, upon finding that there was a substantial likelihood that the Debtors would be subject to future PD demands which justified the creation of an 11 U.S.C. § 524(g)

trust to address such claims.

Grace proposes that the parties should go through pretrial proceedings, try a lawsuit with witnesses from all over the country, and then pursue appeals to the District Court and the Third Circuit on the AMH Individual Claim, before AMH could pursue an appeal of the Certification Order entered nearly eight years ago. Ultimately, Grace would have AMH ask the Third Court to render judgment on Judge Fitzgerald's findings and conclusions based upon factual and legal issues which no longer exist. Even if Judge Fitzgerald was right at the time – a point AMH does not concede – that does not mean the Third Circuit could not remand this case under Rule 23 to consider whether certification would be appropriate now (as AMH has requested). Conversely, if Judge Fitzgerald was wrong at the time, certification still would not automatically be appropriate today based on these changed circumstances.

Grace effectively argues that notwithstanding all of these changed circumstances, the PDCMO is carved in stone and not susceptible to any modification whatsoever. That is surely not the case. To start with, the PDCMO has never even been entered by the Court. Even if it had been entered, it is not a final judgment on the merits of any matter. It is a case management order, addressing issues of scheduling and sequencing. Such orders are consistently viewed as interlocutory and non-final. The attachment of this one to the Plan as an exhibit does not change the nature of the order itself. Indeed, just last week, this Court entered an order modifying

the deadlines set forth in the PDCMO, without any consideration of whether such action constituted an impermissible plan modification [DI32669].

Moreover, there is nothing in the Plan itself which prohibits such modifications. The definition of the "Plan Documents" in the Plan includes reference to each such document "as each may be amended, supplemented, or otherwise modified from time to time in accordance with its terms." [DI26368-1 at 33]. The only limitation on post-Effective Date modification is in Section 4.12 of the Plan, which provides that such modifications may not conflict with the Sealed Air Settlement Agreement or the Fresenius Settlement Agreement. [*Id*. at 57]. The Plan expressly reserves and preserves the Court's jurisdiction "to consider and approve any modifications of this Plan or Plan Documents, remedy any defect or omission, or reconcile any inconsistency in any order of the Court" [*Id*. at 119]. There is nothing in the PDCMO itself which would purport to limit the Court's inherent authority to modify its own order – and indeed, the Plan specifically preserves the Court's authority to exercise its own jurisdiction.

To accept Grace's argument would be to conclude that Judge Fitzgerald, in confirming the Plan, intended for the PDCMO to implicitly abolish Rule 23(c)(3) permitting alteration or amendment of a ruling on class certification before final judgment, without ever expressly saying so. Did Judge Fitzgerald really intend to deprive herself, or any other judge responsible for this case, of the court's authority

under Rule 23(c)(3) to reconsider class certification? There is no reason to reach such a conclusion.  Rather, the only thing the PDCMO provides is that while an appeal of class certification is pending, the AMH Class Claims are inactive (as Grace sought) rather than expunged (as AMH sought).

Grace provides no reason why resolving the issue of class certification under these changed circumstances now – rather than years from now after pointless trial and appellate proceedings – would threaten or impair the function or operation of the Plan in any way. The Plan has gone effective, the Trusts have been funded, and Grace, in support of the feasibility of its Plan, provided expert testimony and persuaded the Court that the reorganized debtors could sustain as much as $1.6 billion in liability on future PD Claims [DI26154 at 71, fn. 81]. The only reason Grace objects is because its mission is to do everything possible to delay a resolution of the issue of class certification.

There is nothing which prevents this Court from addressing matters of sequencing, scheduling and timing of matters over which it has jurisdiction. And it defies logic to ask three courts, the parties, and members of the putative class, to waste several years of time arguing about an order that has nothing to do with present realities. The issue of class certification should be considered on the merits in light of all the changes that have occurred since the Certification Order was entered.

### III.    AMH Has Demonstrated The Basis Of A Motion To Alter Or Amend

Grace argues that "AMH has not even attempted to make the predicate showing required for a motion to alter, amend or reconsider, which is to identify new law or new evidence sufficient to justify reconsideration, or clear error of law or fact constituting 'manifest injustice'" [Response at 3-4]. As set forth above, AMH fully briefed this issue in its Motion to Alter or Amend [DI31812 at 16-32]. Grace previously raised this precise issue in its 2014 Response [DI32233 at 20-36 ("AMH's Motion raises nothing new and thus fails to satisfy the standard for a Motion to Reconsider")]. AMH again addressed this issue in its 2014 Reply [DI32503 at 29-32]. Following briefing and oral argument, this Court directed the parties to brief the certification issue.

## IV.    AMH's Class Satisfies All Rule 23 Requirements

### A.    Numerosity

#### 1.    Grace Admitted Numerosity

AMH asserted in its Brief that, "Grace is bound by its Answer admitting numerosity in South Carolina in response to AMH's class complaint" [Brief at 42]. Grace tells this Court that AMH is "misstating the record in the South Carolina litigation" [Response at 27]. It is Grace that is playing fast and loose with the Court.

Grace admitted numerosity in response to AMH's worldwide Complaint, but denied there were sufficient buildings in South Carolina to support numerosity for a statewide class action (which AMH sharply disputes).

AMH's Class Claims here include both the Worldwide Claim and the South Carolina Claim.  Grace is bound by its Answer.

## 2.    There Is Overwhelming Evidence Showing Numerosity

In "An Overview of Federal Class Actions: Past, Present and Future," Federal Judicial Center Education & Training Series, (2d Ed. 1977) at 22, Professor Arthur Miller stated the following guideline as distilled from an exhaustive review of the cases on the Rule 23 numerosity requirement:

> "If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, discussed below, become relevant."

The question before the Court is whether there are a sufficient number of individuals who meet the class definition.  The question is **not** whether those building owners will ultimately establish their claims.  Nor, for purposes of numerosity, is the question how many of those building owners would file lawsuits if the Court does not file a class.  When it comes to numerosity – as opposed to other factors – all that is before the Court is a mathematical question: are there more than forty individuals who meet the class definition?

Grace obtained a 524(g) injunction based upon its representation that there will be a substantial number of claims.  For purposes of numerosity, it only matters that there are a sufficient number of class members.  Whether there are forty, as suggested by Professor Miller, or 47, as found by Judge Walrath to be sufficient, or thousands,

as Grace told the Third Circuit and as the data indicates, numerosity is met.

### 3.      Grace's Maytag Defense Is A Classic Red Herring

As discussed below, when analyzing superiority, the Third Circuit has pointed out that one of the criteria in Rule 23(b)(3)(A) is "the class members' interest in individually controlling the prosecution or defense of separate actions."  The Third Circuit has recognized that a paucity of individual lawsuits actually *supports* class certification: "[t]he record before us reflects a small number of individual suits against defendants… indicating a lack of interest in individual prosecution." *In re Cmty. Bank of N. Virginia* citing *In re Prudential*, 148 F.3d at 316.  Grace's Maytag Defense would mislead this Court into believing that the dearth of other suits indicates that a class is not necessary when the exact opposite is the legal reality.

### 4.      There Is No Due Process Problem

Grace continues to urge this Court to rule that those class members who have not yet realized damages can not be a part of AMH's proposed class.  At the outset, it is important to note, unlike the personal injury Plaintiffs in *Amchem,* who may or may not develop injury after exposure, every member of AMH's class has received defective asbestos product and will eventually suffer damages in the cost of removal. As explained by AMH in its original Motion to Certify:

> As has been repeatedly noted by circuit courts around the country, asbestos property damage cases involve far fewer individualized issues that personal injury classes. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir. 1996)(citing *School Asbestos* "as much more manageable than a personal

injury case would have been because, in essence, the effect of asbestos in different buildings is the same and the effect of asbestos in different people is not."); *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996); *Georgine v. Amchem*, 83 F.3d 610, n. 13 (3d Cir.), *aff'd sub nom.*, *Amchem v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 1381 L.Ed.2d 689 (1997).

[DI10014 at 13].

In a case concerning defective plumbing fittings with nowhere near the same certainty of damage, the Eighth Circuit approved a class that included both class members who had already realized damages ("wet plaintiffs") and those who had not yet suffered damages ("dry plaintiffs"). *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011). Citing cases from three other Circuits, the Eighth Circuit ruled that the "dry plaintiffs" should also be included in the class because although the "dry plaintiffs" had not yet realized damages, the presence of the defective product in their property gave the "dry plaintiffs" cognizable claims. Furthermore, the Third Circuit and Supreme Court have ruled that substantial risk of injury may support standing. *Neale*, infra.

What Grace really urges is an evaluation of standing at class certification for the absent class members, a position directly contradicted by the Third Circuit less than a year ago:

> We now squarely hold that unnamed, putative class members need not establish Article III standing. Instead, the "cases or controversies" requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class. This rule is compelled by *In re Prudential* and buttressed by a historical review of representative actions.

*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015).

There is no dispute that AMH filed Class Claims and has standing to assert the rights of the class.  The Plan specifically provides for AMH's class.  Class Claimants who have damages which have not yet accrued are in a stronger legal position than "dry plaintiffs."

Grace also argues that certification of a class of claimants whose injuries have not yet manifested would violate due process.  Presumably, Grace's concerns will be assuaged by AMH's class definition set forth above, which, now that the PDFCR has voiced its support for the class, will make this nothing more than a standard property damage class which can contain both accrued and unaccrued claimants.

AMH provided specific detail in its previous brief explaining the demands of trying the common issues and the incredible burden of meeting those demands.  Citing earlier cases, the Seventh Circuit stated in *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) that there are times when class certification is "a sensible and legally permissible alternative to remitting all the buyers to individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs."

## 5.    <u>Grace's Expert Testimony</u>

Grace admits that it told Judge Fitzgerald at the confirmation hearing "that there will be substantial, but an indeterminate number of, future PD claims or

demands" [Response at 32].  If Grace had told Judge Fitzgerald, the District Court, or the Third Circuit that there were less than 40 buildings with its products, it would never have obtained the 524(g) injunction that it desperately wanted.  Grace simply cannot walk away from representations previously made to obtain a 524(g) injunction.

### 6.    **Grace's Records**

Grace likewise misrepresents the 3,000 building owners listed in AMH's Class Claims.  According to Grace, AMH's assertion "is specious, given that thousands of these claims were dismissed for lack of product identification or because they were based on nothing more than unsubstantiated conspiracy allegations. (Dkt. 10961)" [Response at 33].  Grace's representation is false.  While there is some overlap, the building owners listed in AMH's Class Claims are not the same as those who filed individual claims.  None of these buildings were owned by the California colleges. Finally, despite Grace's argument to the contrary, Judge Fitzgerald recognized that even those Claimants who were dismissed for lack of authority could participate in the class [DI11025 at 87].

### 7.    **State of California**

AMH argued that the issue of accrual is important to show what Track B Claimants will face if they do not have the opportunity to participate in AMH's Track A Class.  Grace responded that:

> California is in the minority: In a majority of states, 'actual contamination' is **not** required for claim accrua1. Thus, the *State of California* decision has

> limited applicability and did not create a large pool of putative claimants whose claims have not yet accrued.

[Response at 36 (footnote omitted)(emphasis in original)].  In fact, Judge Buckwalter

held exactly the opposition:

> The majority of other jurisdictions to reach the issue of accrual in asbestos cases have determined that injury occurs upon contamination of the asbestos materials and not upon discovery of the mere presence of asbestos in a building.

*Id.* at 418 B.R. 531.

### 8.    AMH's Cases

Grace cites *In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir. 1987).

AMH pointed out that beginning with *American Reserve*, six Courts of Appeal have

rejected *Standard* [Motion at 4, 30].

### B.    Superiority

### 1.    The Fundamental Question

Under Rule 23(b)(3), the fundamental superiority question is whether "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Notwithstanding this clear and unambiguous standard, Grace argues

that AMH's superiority argument "is completely moot" because the Third Circuit

ruled that the Plan provides substantially equal treatment for Track A and Track B

Claimants [Response at 37].  That is not the issue before the Court.

In confirming the Plan, the issues were whether, under 11 U.S.C.

§524(g)(2)(B)(ii)(V), the PD Trust provided "reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner;" and whether, under 11 U.S.C. §1123(a)(4), the Plan provided "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."  Neither of those determinations had anything to do with whether determination of claims through a class proceeding, versus other options, was superior.

The superiority question is not whether Track A or Track B is superior for the litigation of Individual Claims.  The sole superiority issue is whether a class affords a superior remedy to individual Claimants who want to proceed under Track A or Track B.

At Grace's urging, the same PDCMO upon which it bases its present argument, provides that AMH's Class Claims are alive.  While AMH, as an individual claimant preferred litigating before a jury in South Carolina (where its case had been pending since 1992), that question is totally irrelevant to the present question.[4]

Judge Sanders has advised the Court as to this current issue: the class action

---

[4]Contrary to Grace's statement, for over twenty years, AMH has consistently taken the position that class treatment is superior.  Having said that, there is nothing wrong about a party arguing a position and then accepting the Court's contrary ruling. That is entirely different from Grace disavowing an argument that it won.  That is the essence of judicial estoppel.

remedy provided by AMH's Class Claims in Track A is superior to requiring all individual Track B Plaintiffs to litigate individual cases.  Grace, which relied upon Judge Sanders' views to obtain approval for its 524(g) treatment of PD Claims, offers no reason to discount Judge Sanders' opinion on the issue currently before the Court.

Although there are a number of factors when considering superiority, the guiding question for the Court on superiority is a simple one:  Is a class action the most fair and efficient method available to handle the common aspects of the litigation?  Stated another way, and more particular to this case, should this Court determine whether Grace's asbestos-containing building product was defective in a single trial before this Court; or should this Court allow these common issues to be litigated, time after time, in this and other Courts?

That question has been answered.  Grace has recognized the merits of a single hazard proceeding and required as much in the Plan.  Grace has recognized the superiority of a class proceeding in ZAI, which presents more difficult issues for certification than the class proposed by AMH.  The plain fact is that the class is not only superior but is the only method through which many claimants could ever be provided a forum for relief.  This cannot be ignored and was a point noted by the PDFCR in his support of a class.

In response to and in lieu of addressing the superiority criteria recognized in the Rule and by the Third Circuit, Grace argues that the Third Circuit has deemed

both tracks acceptable, a fact uncontested and immaterial to class certification.  The question is whether a single proceeding, conducted by counsel who understands the rigors of an asbestos PD trial better than anyone in the country, is superior to years of litigating the same issues individually, imposing the often prohibitive costs and demands on each individual claimant, particularly where the gauntlet of Track B issues will be irrelevant if a class is certified.

The Third Circuit has explained that in balancing the merits of class certification against alternative methods, Rule 23(b)(3) "instructs that the matters pertinent to this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

*In re Community Bank of Northern Virginia*, 418 F.3d 277, 309 (3d Cir. 2005).

Every single factor enunciated by the rule and restated by the Third Circuit exhibits the superiority of class treatment and the propriety of employment of the AMH class.   Both (A) the interest of individual members in controlling the prosecution of the action and (B) the extent and nature of any litigation already commenced clearly exhibit the superiority of the class that AMH proposes.  When analyzing the superiority criteria, the Third Circuit stated "[t]he record before us reflects a small number of individual suits against defendants… indicating a lack of

interest in individual prosecution." *Id.* Contrary to Grace's Maytag Defense, a small amount of lawsuits (or claims) weighs **in favor of** certification.

Grace certainly cannot contest (C), the desire to concentrate the claims in a single forum. Grace presented sworn testimony and argument to this Court and the Third Circuit that there are significant future liabilities and these liabilities should be subject to a 524(g) channeling injunction.

Additionally, as noted by the PDFCR, because of the application of the Plan to certain claimants, there will be many who, after meeting threshold criteria, will find themselves with no forum available. The Plan permits Claimants to try their cases with any District Court with jurisdiction. However, many if not most of these claimants have actions based upon state laws of product liability and less than $75,000.00 in controversy. The mere existence of the Grace bankruptcy does not, as Grace suggests, transform these lawsuits into federal question lawsuits.

As for (D), Courts often assess whether the class is ultimately ascertainable – are there objective criteria which can be employed to identify who is a member of the class at the time when class members come forward. This seems obvious in this proposed class. Each class member can produce invoices and/or asbestos containing product to be sampled and tested to establish membership once a claim process is established.

This is not hypothetical or hopeful. Class counsel and other Courts have

readily managed national asbestos property damage class actions in many instances.
This Court, its designees, and counsel can manage this class action in the same
manner.

### 2.    Litany Of Reasons

Grace also argues that, "AMH sets forth a litany of complaints about why
litigation of PD claims under Section II of the PDCMO is supposedly inferior to
Section I" [Response at 38].  That is not what AMH did.  AMH listed a number of
reasons why adjudication of a class action pursuant to Track A is superior to the
litigation of individual litigation pursuant to Track B (or Track A).  AMH will not
repeat all of those reasons here because Grace fails to demonstrate why Anderson's
description of the obstacles an individual claimant faces pursuant to Track B is in any
way overstated.

### 3.    Grace's Other Points

AMH will stand on its Brief regarding Grace's dismissal of AMH's arguments
outlining the inconsistent positions that Grace will inevitably take against Track B
Claimants who proceed individually.  The important point now driven home by Judge
Sanders' support is that these issues can be avoided altogether by the certification of
AMH's Class. At that point, all PD Claimants, less opt-outs, will be Track A
Claimants, who will have timely filed Claims prior to the 2003 Bar Date, and who are
protected from Grace's statute of limitations challenges at least as far back as

December 23, 1992. *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974). The Court will be faced with just one trial on the limited common issues set forth in the PDCMO. Except for opt-outs, if there are any, the Court will not need to conduct individual trials on the issue of whether the Claimant can proceed to the District Court.

Grace asserts that, "While AMH asserted a great many objections to confirmation, it never objected to individualized litigation under Section II of the PDCMO and it is too late to introduce this objection now" [Response at 40]. There was no reason for AMH to object to individualized litigation because its right to pursue its Class Claims was preserved under the Plan.

In response to AMH's representation that its counsel will file more claims to support numerosity, Grace argues that "AMH cannot simply resuscitate claims that were withdrawn because they were filed with no authority and no support or that have been dismissed or withdrawn based on statutes of limitations, statutes of repose or lack of product identification" [Response at 40]. But Judge Fitzgerald recognized that those Claimants she dismissed without authority could participate in the class, and it is axiomatic that if AMH did not have authority to file an individual claim, then whatever happened to that claim cannot be *res judicata* against the Claimant.

AMH agrees with Grace that, "In either a bench or jury trial, a damages adjudication requires a trial, with fact witnesses, experts, evidence, and cross

examination, and the Federal Rules of Evidence and Civil Procedure would apply" [Response at 41].  The question is whether that's going to be done one time or multiple times.  Plaintiff can do that on a class wide basis in one trial.

Grace argues that the District Court held that AMH lacked standing to assert the due process rights of other unknown claimants [Response at 42].  Grace is conflating AMH's standing, as an individual claimant in connection with confirmation, with AMH's standing here as a putative class representative in connection with AMH's Class Claims. As an individual claimant, the courts found that AMH lacked standing to raise confirmation issues on behalf of other parties. Neither the District Court nor the Third Circuit addressed, much less ruled, that AMH, as a putative class claimant, lacked standing to seek certification of a class that included unknown claimants with unaccrued claims.  In this proceeding, AMH is asking this Court to appoint it as the Class Representative.

### C.    AMH Has Shown All Other Prerequisites For Class Certification

Grace complains that, "AMH does not even **attempt** to discuss" the Rule 23 requirements of commonality, typicality, adequacy, and predominance [*Id.* at 23 (emphasis in original)].  In fact, AMH briefed all of these requirements when it sought class certification [DI10014].  AMH cited a series of asbestos PD class action certifications where the Courts have followed all the Rule 23 requirements in upholding class certifications against Grace, including the Third Circuit and the

Fourth Circuit, which certified nationwide class actions [*Id.*].

Judge Fitzgerald did not question commonality, typicality, adequacy, or predominance in the Certification Order which AMH seeks to have altered or amended. Consequently, AMH did not address these requirements in its Motion or Brief. Because of the word restrictions on this Reply, AMH would respectfully crave reference to its 2005 Brief on these issues [DI10014].

Ignoring the fact that the Court previously ruled that the only impediments to certification were numerosity and superiority, Grace asks this Court to revisit commonality and predominance, typicality, and adequacy. While AMH has dealt with each of these elements individually, a review of Grace's arguments reveals a simple fact which dispatches with all of Grace's arguments concerning these requirements. Grace bases its opposition to certification on conditions which only exist if there is no certification.

Grace challenges commonality (and cursorily challenges predominance) by alluding to 17 individualized factors that Track II claimants must establish. However, no members of the class will be subject to this inquiry. Once certified, the claimants will be included in the class claim which falls under Track I. The Plan already calls for a common trial under Track I. Going further, allowing the class claim would place this proceeding in line with how Grace consented to proceed with the same product, ZAI in this bankruptcy, and how other courts, recognizing the existence of

commonality and a predominance of common issues in asbestos property cases, have proceeded in multiple nationwide property asbestos class actions.

Grace's challenge to typicality and adequacy are really two sides of the same coin. Grace asserts that because AMH's class claim was filed prior to the bar date, and there are those who have not yet filed who would be in the class, that Grace cannot adequately represent those who did not file a claim before the bar date and there is a conflict. It bases its argument on the fact that a timely filed claim has no need to deal with the *Wright-Grossman* dilemma which was previously recognized by the District Court.

Once again, Grace argues the exact opposite of reality. A class representative could falter if it stands in a weak legal position, not if it has a particularly strong claim to advance the interests of the class. As Judge Posner explained in *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir.1999):

> "if when class certification is sought it is already apparent ... that the class representative's claim is extremely weak, this is an independent reason to doubt the adequacy of his representation.... One whose own claim is a loser from the start knows that he has nothing to gain from the victory of the class, and so he has little incentive to assist or cooperate in the litigation."

If the Court certifies this action, the Court negates the need to deal with this issue because all members of the class are included in the timely filed class claim. Class treatment is not only proper given the terms of the Plan, it is an incredibly clean and simple solution to a difficult problem.

Finally, in its Brief and as noted above, AMH has demonstrated that Courts continue to advocate smart use of this powerful Rule 23 tool.[5]  Only days ago, the United States Supreme Court held that Rule 23 includes all unnamed members of the class who meet the class definition and holding that "[w]hen "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, 2016 WL 1092414, (U.S. Mar. 22, 2016).

## <u>CONCLUSION</u>

AMH respectfully submits that this Court should certify the class.

---

[5]Grace alludes to an incomplete history of *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, stating that the Supreme Court vacated and remanded, and accordingly the decision is of no precedential value.  However, the Supreme Court merely directed the Sixth Circuit to consider if the *Comcast* decision had any impact upon the Sixth Circuit's decision in support of certification.  Grace also asserts that differing proof of damages (in its standard claim procedure identical to that of ZAI to which it consented to class certification) among the class members is fatal to certification.  Since *Comcast*, defendants across the country have attempted the same arguments, and these arguments have been specifically rejected by the Fifth Circuit (*In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014)); the Sixth Circuit (*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 860-61 (6th Cir. 2013) *cert. denied*, 13-431, 2014 WL 684065 (U.S. Feb. 24, 2014)); the Seventh Circuit (*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) *cert. denied*, 13-430, 2014 WL 684064 (U.S. Feb. 24, 2014)); and the Ninth Circuit (*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, (9th Cir. 2013)).  Additionally the Second Circuit (*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)) and the Fourth Circuit (*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 119 (4th Cir. 2013)) have disregarded the same arguments although not addressing them specifically.

DATED: April 11, 2016

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
Ferry Joseph P.A.
824 Market Street, Suite 1000
Wilmington, DE 19801
Telephone 302-575-1555/Fax 302-575-1714
Email:  ttacconelli@ferryjoseph.com
*Local Counsel for Anderson Memorial Hospital*

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East; Post Office Box 685
Hampton, SC 29924
Telephone 803-943-4444/Fax 803- 943-4599
Email:  dspeights@speightsrunyan.com
*Counsel for Anderson Memorial Hospital*

David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone 305-372-1800/Fax 305-372-3508
Email:  dlr@kttlaw.com
*Counsel for Anderson Memorial Hospital*