# **EXHIBIT B**

**2/22/16 Plum Creek Responses
to Grace Information Requests**

PLUM CREEK RESPONSES TO GRACE INFORMATION REQUESTS

(PER CLASS 7A ASBESTOS PD CASE MANAGEMENT ORDER SECTION II.B.1)

1.    **In 2002 and 2003, did Plum Creek Timber Co., Inc. ("Plum Creek") have an address in Libby at 126 Pipe Creek Road, Libby , MT 59923? If your answer is anything but an unequivocal "yes," state (a) whether (and when) Plum Creek ever used that address, and (b) what other address(es) Plum Creek used as an office or mailing address in Libby, MT, in 2002 and 2003.**

ANSWER 1:

Yes. In 2002 and 2003, Plum Creek (the "**Company**") had an address in Libby at 126 Pipe Creek Road, Libby, MT 59923.

2.    **Please confirm that Plum Creek, officed locally at 126 Pipe Creek Road, Libby, MT 59923, was a member of the Kootenai River Network from June 1, 2002 to May 31, 2003, as stated in Appendix 4 to the attached Kootenai River Network Annual Report for 2002-03.**

ANSWER 2:

Plum Creek acknowledges that it was a member of the Kootenai River Network ("**KRN**") from June 1, 2002 to May 31, 2003.

3.    **State all other dates when Plum Creek was a member of the Kootenai River Network.**

ANSWER 3:

Plum Creek believes that it participated in KRN from 1994 through until the present.

4.    **Please provide all documents relating to the Kootenai River Network that mention timberland or asbestos in or near Libby, MT.**

ANSWER 4:

Plum Creek has 4 files in its possession which may be responsive to this Request. Copies are attached to these Responses with the bates number prefix PCTC_00001 *et seq*.

The Company's production is limited for at least three reasons. First, many potentially responsive documents, if they exist at all, were generated more than a decade ago. Accordingly, Plum Creek may not have retained potentially responsive documents pursuant to its internal document retention policies.

Second, the Company understands there to be minimal connection between the mission of KRN, on the one hand, and Libby or asbestos, on the other hand.  KRN primarily deals with issues relating to regional water systems.

Third, KRN is an independent, not-for-profit corporate entity. Accordingly, potentially responsive documents, if they exist at all, would be within KRN's custody.

5.   **Please provide the agreement reached in approximately 2002 or early 2003 between the United States Environmental Protection Agency ("EPA") and Plum Creek relating to sampling for asbestos—including, specifically, sampling of asbestos in the bark of trees and in surface soil—on or near Plum Creek property located in or near the former W.R. Grace & Co. ("Grace") vermiculite mine site or in or near Libby, MT generally (including the "Property," referred to herein by the definition in your October 7, 2015 letter). Also, please provide all documents relating to this agreement or its implementation. And identify the names or all Plum Creek employees, agents, or representatives who discussed, considered or participated in the negotiation, implementation or monitoring of this agreement.**

ANSWER 5:

Plum Creek objects to this document request on the basis that it is vague and ambiguous. The Company specifically is uncertain whether 2002 and 2003 is the accurate time period for the document(s) referenced, including the alleged agreement. In any event, the Company does not have documents in its possession responsive to this request.

To the extent Plum Creek understands the request concerning the alleged agreement, the Company admits that at some point generally around the indicated time period, the EPA came to the Company to request that Plum Creek fund sampling research. The Company declined to fund such research for the Government, but offered to grant the EPA access to its Property in the event that the Government was later able to secure funding itself. Some time later, the EPA apparently secured such funding, and Plum Creek permitted the Government to access its Property and gather samples. The research results were released in approximately 2010.

To the extent that Plum Creek understands this request, the Company believes that Art Vail, Tom Ray, Maggie Browning, and Jerry Wolcott, and perhaps others may have been involved in any "negotiation, implementation or monitoring" of or with the EPA concerning the alleged "agreement" referenced in the Request.

Furthermore, any potentially responsive documents were generated more than a decade ago. Accordingly, Plum Creek may not have retained such documents pursuant to its internal document retention policies.

To the extent documents potentially responsive to this document request exist, Plum Creek recommends the Debtor seek them from the EPA directly. The Company is willing to reasonably extend any deadlines applicable to the Debtor so that the Debtor may gain access to all relevant information as it considers the timeliness of Debtor's proof of claim.

**6.**    **What was the exact date when (a) the above agreement was first discussed by Plum Creek with EPA, (b) the agreement was entered into, and (c) any activity or work relating to the agreement begin?**

ANSWER 6:

> Plum Creek objects to this information request on the basis that it is vague and ambiguous. Debtor's inability to provide specifics concerning any alleged agreement makes it difficult for Plum Creek to respond. To the extent the Company understands the alleged agreement to which Debtor refers, the responsive information of which Plum Creek is aware is set forth already *supra* in Answer No. 5.

**7.**    **When did Plum Creek first obtain any information or knowledge relating to any damages or potential damages, including lost economic value of any nature relating to Plum Creek's Property?**

ANSWER 7:

> Plum Creek objects to the broad and imprecise nature of this request, as it is ambiguous what "any information or knowledge relating to any ... potential damages" means. This phrase is reasonably subject to multiple and conflicting interpretations. Moreover, the information request does not expressly reference the causal source of "potential damages" to Plum Creek Property. The Company's response here assumes Debtor is referring to Libby Amphibole contamination.

> Subject to the foregoing and incorporating the substance of its October 7, 2015 letter, Plum Creek states that it first had generalized knowledge of potential damage caused by  Libby Amphibole contamination (not on its Property), when the EPA closed a Forest Service access road to its Property, Rainy Creek Road, such that the Company could no longer reach its timberland.

> Upon information and belief, Rainy Creek Road was not closed because the area around the road (Plum Creek Property) was contaminated, but rather the EPA was using the road to transport the removal of hazardous material from the mine, and wanted to limit exposure to third parties. Plum Creek is uncertain as to the precise date of the road closure, however, it may have been in 2001.

> With the closure of Rainy Creek Road, Plum Creek had a generalized understanding of  Libby Amphibole contamination in the area, but the Company did not know its geographical scope or the extent of hazard. Accordingly, the Company adopted a precautionary approach, and did not conduct commercial forestry activities on certain portions of its land in the area. The demarcation of this precautionary zone has changed over time, as the EPA has gradually disseminated more specific information to land owners about the geographic scope and the level of hazard posed by the potential Libby Amphibole contamination.

Plum Creek only had knowledge of actual contamination of trees on its Property in 2010, when EPA reports indicated this. Nonetheless, the EPA took until December 2014 to establish whether the detected levels of  Libby Amphibole contamination on Plum Creek's Property were hazardous or not.

8.      **Please describe and provide information, knowledge, and all documents relating to any asbestos-related damages or potential damages, including lost economic value of any nature, relating to Plum Creek's Property:**

(a) **Prior to March 31, 2003 Bar Date**

(b) **Prior to Plum Creek's July 2, 2010 Motion to Allow Late Filing**

(c) **At any other time.**

ANSWER 8:

Plum Creek objects to this multi-part information and document request as overbroad, vague, and burdensome. The Company further objects to this request as duplicative of the information sought by the prior request.

The only potentially responsive documents which Plum Creek has to this request are internal accounting documents which calculate the amount of the Company's proof of claim and mapping documents showing the scope of the precautionary zone at various points in time. Otherwise, Plum Creek has no other responsive documents. Copies of responsive documents will be produced with the bates number prefix PCTC_00001 *et seq*. on a rolling basis.

The Company's production is limited for the two final reasons set forth at the end of Plum Creek's Answer No. 5.[1]

9.      **State when and how Plum Creek first learned that any land it owned in or near Libby, MT, was located within an EPA Superfund site, and provide all documents relating to the EPA Superfund site.**

ANSWER 9:

Plum Creek objects to this information request based on the fact that there are no precise boundary demarcations for the EPA Superfund site. For example, the Final Federal Register

---

[1] That is: any potentially responsive documents were generated more than a decade ago. Accordingly, Plum Creek may not have retained such documents pursuant to its internal document retention policies.

To the extent documents potentially responsive to this document request exist, Plum Creek recommends the Debtor seek them from the EPA directly. The Company is willing to reasonably extend any deadlines applicable to the Debtor so that the Debtor may gain access to all relevant information as it considers the timeliness of Debtor's proof of claim.

notice for designating Libby, MT as a EPA Superfund Site, dated October 24, 2002, specifically provides that "*The [National Priorities List] does not describe releases in precise geographical terms; it would be neither feasible nor consistent with the limited purpose of the NPL (to identify releases that are priorities for further evaluation), for it to do so. … The precise nature and extent of the site are typically not known at the time of listing. Also, the site name is merely used to help identify the geographic location of the contamination.*"[2]

Subject to the forgoing and incorporating its response stated already in its October 7, 2015 letter, Plum Creek believes that within approximately a year of the formal Libby EPA Superfund designation, the Company would have been aware that some of its land may have been within the EPA Superfund site. Plum Creek believes that the EPA may have provided the Company with a map indicating such information.

Nonetheless, the Company does not have a copy of the map within its possession. Nor does Plum Creek have any documents responsive to this document request for the two reasons set forth at the end of Plum Creek's Answer No. 5.

**10.    Please identify the date and nature of all communications involving Plum Creek and the EPA regarding the Property, or other property in or near Libby, MT, that relate in any way to asbestos, actual or potential economic loss or damages, or asbestos on or in trees or tree bark; identify the names of all Plum Creek employees or representatives participating in these communications; and provide all documents relating to these communications.**

ANSWER 10:

Plum Creek objects to this multi-part information and document request as overbroad, vague, and burdensome. It is unreasonable to request the date and nature of all communications between more than a dozen people, extending back more than a decade. The Company further objects to this request as duplicative of the information sought by prior or subsequent requests.

Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter. Subject to the forgoing, the names of all Plum Creek employees or representatives participating in relevant communications would include Tom Ray, Art Vail, Jerry Wolcott, Bill Frings, Joel Nelson, Wayne Maahs, Marvin Richeal, Jerry Aiken, Mark Astin, David Freidman, Jamie Brevner, Maggie Browning, and Mitchell Leu.

The Company has no unique responsive documents to produce for the two reasons set forth at the end of Plum Creek's Answer No. 5.

**11.    Please identify the date and nature of every meeting or public presentation attended by Plum Creek or any Plum Creek representative relating in any way to asbestos on or near the Property, or in or near Libby, MT generally, and the name(s) of the representative(s) attending these meetings. Please provide all documents relating to such meeting(s) or presentation(s).**

---

[2] https://www.gpo.gov/fdsys/pkg/FR-2002-10-24/pdf/02-27127.pdf.

ANSWER 11:

Plum Creek objects to this multi-part information and document request as overbroad, vague, and burdensome. It is unreasonable to request the date and nature of "*every meeting or public presentation attended by Plum Creek … relating in any way to asbestos … near Libby, MT generally*" extending back more than a decade. Plum Creek states that there were more than 100 such "meetings or public presentations" in Libby.

Subject to the forgoing, the Company states that it or its representatives attended perhaps a dozen meetings or public presentations, primarily in the early part as opposed to the later part of last decade. The EPA typically organized the meetings which Plum Creek attended. The Plum Creek personnel who attended the meetings were Jerry Wolcott, Marvin Richeal, and perhaps Mitchell Leu, Joel Nelson, and Bill Frings.

The Company has no responsive documents to produce for the two reasons set forth at the end of Plum Creek's Answer No. 5.

**12.     Please describe and provide all other information, knowledge and documents relating to asbestos present or allegedly present on the land, trees or tree bark in Plum Creek's Property in or near Libby, MT.**

ANSWER 12:

The Company objects to this request as duplicative of the information sought by prior or subsequent requests. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter.

Subject to the forgoing, the Company states that its understanding as to the presence of asbestos in the land, trees or tree bark on its Property in or near Libby, MT was based almost entirely on EPA research and reports.

Until the EPA issued reports in 2010, Plum Creek had no information that its trees or its property were contaminated with Libby Amphibole, or whether, if contaminated, the source was from naturally occurring conditions in the Libby, MT area or from activities associated with the Grace facility. Even after the EPA began to discuss their belief that wind patterns were likely key to the disbursal of Libby Amphibole from the Grace mine, and it was unclear for many years, how far and in which precise direction prevailing wind patterns may have carried Libby Amphibole contamination. Even after the 2010 report was issued, the Company remained uncertain as to whether the levels of contamination discovered were hazardous or not, because the EPA did not develop standards as to acceptable levels of Libby Amphibole exposure, and as of this date has issued only a draft report in this regard.

When the EPA issued its draft report in 2014, Plum Creek finally understood that the bark on trees on at least a portion of its Property were contaminated to the extent that conducting commercial forestry activities in those areas might create a hazard to human health.

Other than the forgoing, Plum Creek's only knowledge of possible contamination of trees in the vicinity of its Property was in the late 2000s, when Plum Creek obtained some information that the Montana Department of Natural Resources and Conservation had revoked a timber sale on State land in the Libby region, due to concerns over asbestos contamination.

The Company has no responsive documents to produce for the two reasons set forth at the end of Plum Creek's Answer No. 5.

**13.    Please describe and provide all other information, knowledge and documents relating to asbestos present or allegedly present on land, trees, or the tree bark in the Libby Superfund Site.**

ANSWER 13:

The Company objects to this request as duplicative of the information and documents sought by prior or subsequent requests. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, document production attached thereto, as well as its October 7, 2015 letter.

Subject to the forgoing, the Company has no additional responsive information or documents to provide.

**14.    Please describe all information and knowledge Plum Creek obtained at any time relating to the *In re W.R. Grace & Co.* Chapter 11 proceeding (Case No. 01-01139) (the "*Grace Chapter 11*") including how and when you acquired such knowledge, and provide all documents relating to the Grace Chapter 11.**

ANSWER 14:

Plum Creek objects to this information and document request as overbroad. The Company further objects that the request seeks documents more reasonably accessible to Debtor than to the Company.

Furthermore, Plum Creek has no responsive documents which are not subject to attorney-client privilege or the work product doctrine. Moreover, any non-privileged potentially responsive documents would have been generated more than a decade ago. Accordingly, Plum Creek may not have retained them pursuant to its internal document retention policies.

Subject to the forgoing, Plum Creek states that it has historically had operations in Libby, MT, and when the owner of the Grace mine in Libby, MT, filed bankruptcy in 2001, the filing was generally known throughout the region, including to employees of Plum Creek. What was not

known at that time was whether Grace had caused damage to Plum Creek's Property. Only thirteen years later, in 2014, did the EPA release information that put Plum Creek on notice that its land within one mile of the Grace mine was contaminated and that conducting commercial forestry activities on that land might create a hazard to human health.

15.     **In particular, provide all documents relating to the Bar Date for Asbestos PD Claims and identify when Plum Creek first obtained these documents.**

ANSWER 15:

Plum Creek has no non-publically-available documents relating to the Bar Date for Asbestos PD Claims. Accordingly, the Company cannot identify if it ever received these documents.

16.     **Please identify the date and nature of all oral or written communications involving Plum Creek and Grace (or its former subsidiary, Remedium Group, Inc.) relating to asbestos, the effect if any of asbestos on trees or tree bark, and any actual or potential property damage or economic loss relating to Plum Creek's Property and other property in or near Libby, MT. Identify the names of all persons participating in these communications, and provide copies of all documents related to these communications.**

ANSWER 16:

Plum Creek objects to the broad and imprecise nature of this request, as it is ambiguous as to the alleged communications Grace apparently believes occurred with Plum Creek. If Grace can provide further specificity as to the communications it is referring to, the Company will supplement its responses here as applicable.

Subject to the forgoing, Plum Creek is aware that Jerry Wolcott met with attorneys representing Grace in Libby, MT in approximately 2009. Mr. Wolcott has only a general recollection of a series of meetings which occurred over two days, during which he explained how bark was separated from timber in sawmills, including the Evergreen Sawmill.

Plum Creek has no other information or responsive documents to this request. Nonetheless, the Company has requested such information from Grace in its requests dated February 7, 2016.

17.     **Your October 7, 2015 letter declined to answer sections II.A.1 (I), (J), (K) and (L) of the PD CMO because you believe they ask inapplicable questions relating to "asbestos-containing product(s)" and "interior repair and renovations." However, we ask that you answer these questions with regard to *any* type of asbestos, asbestos-containing material or asbestos-containing product, whether interior *or exterior*, including any asbestos that was or is present on trees or in tree bark on the Property.**

ANSWER 17:

The Company objects to this request as duplicative of the information sought by prior or subsequent requests. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter.

Subject to the forgoing, the Company states in response to section II.A.1 (I)[3] that Plum Creek discovered there was asbestos in the bark of trees on its Property in 2010 when the EPA informed it of this fact. Because the Company's understanding of this comes from the EPA, it has no independent documents potentially responsive to this request. To the extent documents responsive to this document request exist, Plum Creek recommends the Debtor seek them from EPA directly.

Second, the Company states in response to section II.A.1 (J)[4] that Debtor's reformulation of the request, "*When did [Plum Creek] first learned that the Asbestos-Containing Product for which the claim is being made contained asbestos*" is nonsensical. This request seems to be asking, when did the Company understand that Libby Amphibole was a form of asbestos. If Grace can provide further specificity as to the meaning of this request, the Company will supplement its response here as applicable.

Third, the Company states in response to section II.A.1 (K)[5] that it has not attempted to remove, contain, or abate  Libby Amphibole contamination to trees on the Property.

Fourth, the Company states in response to section II.A.1 (L)[6] that no third party has made an attempt to remove, contain, or abate  Libby Amphibole contamination to trees on the Property.

---

[3] "*When the Class 7A Claimant first learned of the presence of Asbestos-Containing Product(s) in the property for which the Class 7A Claimant is making this claim. Provide copies of all documents relating or referring to the presence of such asbestos or such Asbestos-Containing Product(s). If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who -has possession of the document. If a summary of documents is provided rather than the documents themselves, the Class 7A Claimant is required to consent to the production and release of those documents to Grace upon Grace's further request*."

[4] "*When the Class 7A Clamant first learned that the Asbestos-Containing Product for which the claim is being made contained asbestos.*"

[5] "*Whether the Class 7A Claimant or someone else on its behalf made any effort to remove, contain and/or abate the Asbestos-Containing Product(s) in the property for which the Class 7A Claimant is making this claim. If yes, provide copies of all documents relating or referring to such efforts. If the documents are too voluminous to attach, attach a summary of the documents indicating the name of each document, date of each document, a brief description of the document, the location of the document, and who has possession of the document. If a summary of documents is provided rather than the documents themselves, the Class 7A Claimant is required to consent to the production and release of those documents to Grace upon Grace's further request*."

[6] "*If the Class 7A Claimant or someone on his, her, or its behalf has not made any effort to remove, contain and/or abate the Asbestos-Containing Product(s) in the property for which the Class 7A Claimant is making a claim, whether anyone else made such an effort and, if so, when.*"

18.  **Were there any sales, or potential sales, of timber owned by Plum Creek on the Property that were affected by actual or potential asbestos-related issues? If so, please describe in detail, including the date of such actual (or thwarted) sales, and provide all related documents.**

ANSWER 18:

The Company objects to this request as duplicative of the information sought by prior or subsequent requests. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter.

Subject to the forgoing, Plum Creek states that following the closure of Rainy Creek Road, the Company established a precautionary zone for its harvest units around Libby, MT, and did not conduct commercial forestry activities within that zone. This precautionary zone is reflected in the various maps that will be produced with the bates number prefix PCTC_00001 *et seq*. on a rolling basis.

19.  **Did Plum Creek ever stop cutting timber on land in or near Libby, MT, including the Property, because of Plum Creek's concerns about the impact of asbestos from the former Grace vermiculite mine on the timber? If so, when and how were such concerns first formed by Plum Creek, and when the cutting stop?**

ANSWER 19:

The Company objects to this request as duplicative of the information and documents sought by prior or subsequent requests. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter.

Subject to the forgoing, the Company has no additional responsive information to provide.

20.  **Did Jerry Wolcott tell one or more persons, at least two years before the July 2, 2010 Motion to Allow Late Filing, that Plum Creek had stopped cutting timber on land in or near Libby, MT, including the Property because of Plum Creek's concerns about the impact of asbestos from the former Grace vermiculite mine on the timber?**

ANSWER 20:

Plum Creek objects to this information request on the basis that it is vague and ambiguous. Debtor's inability to provide specifics concerning Mr. Wolcott' statements makes it difficult for Plum Creek to respond. The Company further objects to this request as duplicative of the information sought by prior or subsequent requests. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter.

Subject to the forgoing, Plum Creek qualifiedly answers the request in the affirmative. Mr. Wolcott may have communicated to persons at least two years prior to July 2, 2010, that out of

an abundance of caution due to the unknown scope and risk of Libby Amphibole contamination, Plum Creek was voluntarily applying a precautionary zone for its Property, where it was not actively conducting commercial forestry activities.

As the EPA provided more information about the scope and risk of harm, Plum Creek has lessened and shrunk the demarcation of the precautionary zone.

**21.    If yes, describe when and to whom Jerry Wolcott made this statement, and provide all related documents.**

ANSWER 21:

The Company objects to this request as duplicative of the information sought by the prior request. Plum Creek hereby incorporates by reference its prior and subsequent request responses herein, as well as its October 7, 2015 letter. The Company also objects to requests to provide documents "related" to something which itself is not entirely clear.

Subject to the forgoing, based on an interview with Mr. Wolcott in late 2015, Plum Creek believes Wolcott communicated these statements at various times to other employees at Plum Creek, including the following: Tom Ray, Art Vail, Bill Frings, Joel Nelson, Wayne Maahs, Marvin Richeal, Jerry Aiken, Mark Astin, David Freidman, Jaime Brevner, Maggie Browning, and Mitchell Leu.  Mr. Wolcott does not believe he would have made such statements to persons not working at Plum Creek, although it is possible.

Plum Creek has no documents responsive to this request.  Any potentially responsive documents were generated more than seven years ago. Accordingly, such documents would have been disposed of pursuant to its internal document retention policies.

**22.    If your answer to Question 20 above is "no" or anything other than an unqualified "yes," please state whether Mr. Wolcott is currently employed by Plum Creek, and provide his current (or last known) address.**

ANSWER 22:

Plum Creek's answer to Question 20 above was a qualified "yes."

Mr. Wolcott is retired from employment for the Company.

Mr. Wolcott lives at present in the Philippines.

Because Debtor presumably seeks information concerning Mr. Wolcott's current address to interview its former employee, and elicit information to be used to bind Plum Creek, the Company insists that any effort to interview or follow up with Mr. Wolcott be conducted exclusively through Plum Creek's counsel.

**23.    Has Plum Creek Timber Co., Inc. done business by any other name(s) from 1989 to present? If "yes," please provide all such names, the dates used, and their address(es).**

ANSWER 23:

No.