## EXHIBIT N

**2/18/03 Emails between Jerry Wolcott of Plum Creek and Jim Christiansen of EPA (PTCT 517-520)**

| | |
|---|---|
| From: | Jerry Wolcott |
| To: | Christiansen.Jim@epamail.epa.gov |
| Date: | 2/18/03 9:11AM |
| Subject: | Re: potential logging in vicinity of vermiculite mine |

Jim
Thank you for your suggestions. Dave is on vacation but I will copy this reply to our folks and we will begin developing a plan of action.

Mitch
We will likely need your help with this as we decide what to do.

>>> <Christiansen.Jim@epamail.epa.gov> 02/18/03 09:00AM >>>
Hi folks. In late 2002, I promised some guidance from EPA on this issue. Please pass this to whomever you need to in your organizations. I will be on vacation through March 2, but will be back in Libby the week of March 10 if not the week of March 3, and would be glad to discuss this then.

Krystal - please place this in the TAG notebook and let know Sandy know it is there.

Introduction

The U.S. Forest Service (USFS) and Plum Creek, Inc. recently proposed logging in areas near the former vermiculite mine in Libby, MT. U.S. EPA (EPA), pursuant to our investigation and cleanup of the Libby Superfund Site and in cooperation with the USFS, have limited access to the mine site, Rainy Creek Road, and the surrounding areas due to high levels of Libby Asbestos (LA) at the mine site and along the Rainy Creek corridor. The areas being considered for logging are not part of the disturbed area of the mine, nor are they contiguous to Rainy Creek Road, but are in the general area and may have been subject to aerial deposition of contaminants from the mine and milling operations in the past. In late 2002, both organizations approached EPA to determine if such logging might be considered feasible and safe from a human health perspective, or if there were recommended sampling strategies and analytical methods for determining if the areas were contaminated. EPA indicated that it while it was not feasible to conduct the sampling ourselves in the short-term, we would provide some general guidance for USFS and Plum Creek to conduct sampling in the spring should you choose to do so. This memo provides our general guidance and recommendations. We will work with USFS or Plum Creek to develop detailed sampling plans if requested, and hope to begin our own investigation of the mine area in 2004 - contingent on funding. Due to the potential of worker exposure, we recommend both organizations consider health hazard evaluations, through either an internal USFS program or in conjunction with or through NIOSH. Mike Gressel of NIOSH assisted with design of the EPA's Libby Phase 2 exposure-based sampling program and would be a great source of information and assistance along these lines.

Potential Contamination in Logging Areas

It is known that significant aerial release of LA occurred at the former

mine and mill. At peak production, hundreds of pounds per day of asbestos were released into the air and were transported away from the point of origin. Even after reclamation of the mine site, high levels of LA are still present on the soil surface and are subject to entrainment by wind. However, little is known about where contamination may have been deposited in the past (e.g. the areal extent) or how that contamination may have been affected once deposited (e.g. by runoff). Under a worst case scenario, high levels of LA may have been deposited under a very wide area (including the areas in question) and still remain today. Such contamination could be present in soil, in vegetative debris on the soil surface, on surfaces of vegetation and trees, and even incorporated into vegetation and timber (e.g. bark). Under a best case scenario, very little LA was deposited away from the point of release or was greatly dispersed, and any that was deposited has been transported away by runoff. Given the established toxicity of Libby asbestos and the lack of any sampling data for the areas in question, it is prudent to assume the former, and to ensure that all potential reservoirs of contamination in the areas are investigated thoroughly.

General Sampling Approaches

Appropriate personal protective equipment is required for sampling until exposure/contamination levels are determined.

1. Analysis of bulk materials. Samples of soil (0-1" and 1-3" horizons), vegetative debris, and timber (surface barks) would be collected in multiple locations and aspects within the proposed areas. Spacing of samples should be sufficient to give confidence that the samples are representative of the area. Aspects and slopes most likely to receive aerial deposition should be targeted. Visual inspection for vermiculite or Libby asbestos should also be performed. Such sampling can occur at anytime, but visual inspection can only occur absent snow cover, and collection of soil samples is extremely difficult with snow cover or under freezing conditionsl.

2. Exposure-Based Sampling. Individuals would be fitted with personal air samplers and asked to perform representative activities at various locations in the proposed areas. Stationary air monitors could also be set up in the area. Such activities might include minor disturbances such as walking in the area to more representative activities such as actual cutting of trees, debarking, and heavy disturbance of surface soils and debris. Such sampling should not occur during wet or frozen conditions.

Given the potentially high levels of other large particulate sources that might be present during exposure-based sampling - especially during activities such as cutting and sawing, and the inherent problems with the associated asbestos analysis on heavily loaded filters, you may wish to consider employing some Thoracic sampling. Recent research on Thoracic sampling of fibres by groups such as the Institute of Occupational Medicine (http://www.nomoredust.org.uk/thoracic.pdf) have indicated this may be a viable means of dealing with the coarse particulate materials. While there haven't been a lot of field

evaluations of these and they do operate at a fixed flow rate, their use might be worth exploring in a project of this nature.

3. Both, either in parallel or in series, is preferable to produce the most robust data. Overall, it may be worthwhile to conduct a small scale "pilot" study in the "worst case" area(s), and work outwards as necessary. Such an effort could probably be done relatively quickly and cheaply. This would enable collection of the airborne samples during the anticipated activities (minimal disturbance, tree felling, cutting, bucking, trimming and clearing, and bark removal, etc.), as well as bulk samples from the sources and locations of interest. A two step effort may take additional time over the long haul, but may ultimately lead to lower costs and better data rather than attempting a single effort over a larger area.

General Analytical Approaches

USFS or Plum Creek may utilize EPA's contract labs that are known to be proficient in the methods described below and are experienced with detection of Libby asbestos.

Bulk Samples

There are a variety of analytical methods available for asbestos analysis in bulk materials. Given the lack of risk based standards and toxicological data for Libby asbestos, the general goal of bulk asbestos analysis should be to ensure that detection limits are low and that even very low levels of fibers are detected. Also, it is assumed that any contamination in the areas in question was deposited aerially, in fine particulate form, as opposed to being deposited manually in bulk material. Thus, methods suitable for detection of individual fibers (generally electron microscopy) are important.

For soil samples, we recommend splitting all samples and archiving one half of the sample volume for future analysis. For analysis, EPA recommends the "Superfund Method for the Determination of Releasable Asbestos in Soils and Bulk Materials (1995)", which involves tumbling the sample in a chamber, extracting and filtering the air from the chamber, examining the filter under a transmission electron microscope (TEM). This method is particularly suited for detection of low levels of aerially deposited asbestos. There are other TEM based methods which may be suitable also, including EPA Bulk Method 600, which is a water sedimentation based method.

For samples of organic materials, we recommend the samples be prepped and analyzed by the U.S. Geological Survey (USGS) team in Denver, CO. Because of the unique nature of this medium and heterogeneity from sample to sample, each sample will require special prep (e.g. ashing) and may be analyzed with several analytical techniques (e.g. SEM) to ensure no fibers are present. The goal of such sampling would not be to quantify asbestos but simply to determine presence/absence.

Air Samples

For air samples, we recommend analysis by transmission electron microscopy using ISO 10312.

Interpreting Results

Given the high degree of disturbance and dust generation by logging and milling operations, the results of any sampling should be interpreted conservatively. At this point, given what we have learned about Libby Asbestos, we do not generally consider the OHSA PEL to be protective, though it is still an important regulatory standard. However, EPA has not published a baseline risk assessment or record of decision for the Libby Site which may define "safe" levels of Libby LA for various exposure scenarios. We also do not have any specific information on logging related exposures. The best scenario, and one that is certainly possible, is that very few or no fibers are present. In this case, logging could probably proceed. The worst scenario would be detection of large amounts of LA, which would likely preclude any logging. Absent clear indicators of high or no contamination, the decision whether to log - or what engineering controls may be necessary - will be that of USFS or Plum Creek. We would recommend not performing logging or at the very least employing strong health and safety precautions (appropriate PPE, decon, engineering controls) until more information is available.

Other Considerations

? Safety/sampling of ingress/egress routes.
? Feasibility of using Rainy Creek Road (road not suitable for logging trucks, decon requirements, PPE requirements)


CC:         Art Vail; fvotapka@fs.fed.us; Jerry Wolcott; Mitchell Leu; Randy Avery; Susanna Duke

PTCT_00520