# EXHIBIT 1

{D0280253.1 }

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (KJC) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |

ANNUAL REPORT AND ACCOUNT
OF THE WRG ASBESTOS PI TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2015

Lewis R. Sifford, Harry Huge, and Dean M. Trafelet, the Trustees of the WRG Asbestos

PI Trust (the "Trust"), created pursuant to the First Amended Joint Plan of Reorganization Under

Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of

Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the

Official Committee of Equity Security Holders as Modified Through December 23, 2010, (the

"Plan"), submit this Annual Report, Financial Statements, and Claims Summary for the fiscal

year ending December 31, 2015.

I.      INTRODUCTION

        The purpose of this Annual Report is to fulfill the reporting requirements of the WRG

Asbestos PI Trust Agreement (the "Trust Agreement") and to report to the Court on the actions

taken by the Trustees on behalf of the Trust during the period January 1, 2015 to December 31,

2015 (the "Reporting Period").

        Section 2.2(c) of the Trust Agreement provides:

        The Trustees shall timely account to the Bankruptcy Court as follows:

> (i)     The Trustees shall cause to be prepared and filed with the
> Bankruptcy Court, as soon as available, and in any event
> within one hundred and twenty (120) days following the
> end of each fiscal year, an annual report (the "**Annual
> Report**") containing financial statements of the PI Trust

{C0486932.1 }

(including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustees shall provide a copy of such Annual Report to the TAC[1] and the Futures Representative when such reports are filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC and the Futures Representatives when such report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, TAC, and FCR in the accounts filed with the Bankruptcy Court and a description of any modification or amendments to the Trust Agreement or Trust Distribution Procedures (the "TDP"). See Sections 4.5(c), 5.6, 6.5, and 7.3.

II.    BACKGROUND

On April 2, 2001, W. R. Grace & Co. and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.  On January 31, 2011, the Court entered an order in these cases confirming the Plan and on February 15, 2011, the

---

[1] Trust Advisory Committee.

Bankruptcy Court entered and order clarifying the prior order. On June 11, 2012, the United States District Court for the District of Delaware affirmed the Bankruptcy Court's confirmation order. Certain parties appealed the judgment of the District Court to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The Third Circuit affirmed the judgment of the District Court in each such appeal except for one and the period for petitioning the Supreme Court of the United States for *certiorari* review for such affirmed appeals expired with no such petition being made. The Third Circuit dismissed the final remaining appeal with prejudice on February 3, 2014, pursuant to a stipulated dismissal agreement between the parties. On February 3, 2014 (the "Effective Date"), the Plan became effective and the Trustees began to manage the affairs of the Trust.

On or after the Effective Date, the Trust was funded as provided for in Section 7.2.2 of the Plan. The purpose of the Trust is to assume the liabilities of the Debtors, their predecessors and successors in interest, for all Asbestos PI Claims, as defined in the Plan, and to use the assets and income of the Trust to pay both present and future asbestos claimants in accordance with the Trust Agreement and the Trust Distribution Procedures in such a way that holders of Asbestos PI Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims. See Trust Agreement, Section 1.2.

III.    TRUST ADMINISTRATION

A.    Trustees

Lewis R. Sifford, Harry Huge, and Dean M. Trafelet served as the Trustees of the Trust during the Reporting Period. Lewis R. Sifford served as the Managing Trustee during the Reporting Period.

During the Reporting Period, the Trustees held formal meetings in accordance with the requirements of the Trust Agreement.  These meetings were designated as "regular meetings" under the Trust's By-laws.  Each meeting was in person and was attended by representatives of the TAC and the FCR.  In addition to these formal meetings, the Trustees held regularly scheduled weekly teleconferences, met individually with Trust advisors, held executive session and special purpose meetings, and devoted considerable time to Trust matters outside of scheduled meetings.   Activities included monitoring and exercising oversight over the investment of Trust assets and the processing of claims pursuant to the Trust Distribution Procedures, and communicating with claimants regarding operations of the Trust and the processing of claims.

B.      Trust Officers

Analysis Research Planning Consulting ("ARPC") served as the Trust's Executive Director during the Reporting Period.

C.      Trust Advisory Committee

Russell W. Budd, John D. Cooney, Joseph F. Rice, Perry Weitz and Steven Kazan[2] served as Members of the Trust Advisory Committee (the "TAC Members") during the Reporting Period.

D.      Futures Representative

Roger Frankel served as the Futures Representative (the "FCR") during the Reporting Period.

---

[2] Effective as of May 13, 2014, the Trust Agreement was amended with the consent of the TAC and FCR to increase the number of TAC Members to five (5).  Steven Kazan became the fifth TAC Member.

{C0486932.1 }

E.    Claims Processing

During the Reporting Period, the Delaware Claims Processing Facility began to process the Trust's claims.  The terms of the Trust's ownership interest in the Delaware Claims Processing Facility are detailed in the Audited Financial Statements[3].

F.    Investment Management

Cambridge Associates LLC of Boston, Massachusetts continues to serve as the Trust's investment advisor.  Cambridge Associates represents other asbestos settlement trusts and has significant experience advising such trusts on investment management.  Cambridge Associates advises the Trustees on asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the Trust's portfolio.  The Trust's invested assets are allocated in compliance with the Trust's investment guidelines.  The Trust's investments are invested in fixed income, equity, and hedge fund investments recommended by Cambridge Associates after consideration of the currently forecasted timing of the liquidity needs of the Trust to pay claims and expenses, diversification, the Trust's status as a federal tax paying "qualified settlement fund," and such other factors as Cambridge Associates considers relevant to forming its recommendation.  The asset allocation at the end of the reporting period is approximately as follows:  86% of the Trust's invested assets are committed to fixed income; 10% of the Trust's invested assets are committed to equities; 4% of the Trust's invested assets are committed to hedge fund managers.

The Trust continues to retain:  Independent Franchise Partners, Kiltearn, Northern Trust, and Select Equity as equity managers; Breckinridge Capital, Deutsche Bank, Eaton Vance and First Principles Capital Management and Income Research & Management as municipal bond

---

[3] Audited Financial Statements at Note 4.

managers. The Trust also continues to retain the following managers in the hedge fund program: BlueMountain, DL Partners, Och-Ziff, Governors Lane, GSO, Hitchwood, Sachem Head, Force, Luxor, Sheffield and Three Bays. The hedge fund program invests in well diversified arbitrage strategies and secondarily in long/short equity strategies. Broadly speaking, the hedge fund program is intended to generate, over a full market cycle, close to equity-like returns with lower volatility and lower correlation to the rest of the Trust's portfolio. The other expected benefits of the hedge fund program are diversification (e.g., access to specialized strategies not otherwise available in the other equity or fixed income investments), superior performance (versus long-only equities) in down equity markets, and access to some of the most talented investment managers. At Cambridge Associates' recommendation, the Trust has retained hedge fund managers who use no or minimal leverage, who employ trading strategies that are understandable to the Trustees, and who provide appropriate portfolio transparency to Cambridge Associates and to the Trust.

Northern Trust serves as Custodian for the Trust's separately managed investment accounts. The Trust utilizes custodian accounts, ACH transfer and zero-balance banking accounts to reduce its exposure to bank risk.

During the Reporting Period, the Trustees regularly met with Cambridge Associates for updates and reports on the Trust's investments.

G.    Insurance Coverage Litigation

Upon the Effective Date, pursuant to the Plan, the Trust received the right to pursue certain unsettled insurance coverage and the rights to certain proceeds paid pursuant to Asbestos PI Insurance Settlement Agreements. The Trust retained the firm of Anderson Kill, P.C. as Special Insurance Counsel to the Trust. Prior to the Effective Date of the Plan of

{C0486932.1}    6

Reorganization, the Debtors and other Plan Proponents reached settlement agreements with many of the Debtor's historical insurance companies that required the settling insurance companies to make cash payments to or for the benefit of the Trust. Certain of those agreements required the settling insurance companies to make payments into escrow accounts during the pendency of the bankruptcy case, and those escrow accounts were released to the Trust in the first quarter of 2014. Certain other settlement agreements required the insurance companies to pay settlement proceeds to the Trust after the Plan's Effective Date in 2014, and the Trust received substantial payments from insurance companies in 2014. In addition, some of these settlement agreements require the settling insurance companies to make payments to the Trust on agreed-to payment schedules that extend beyond 2014 or to reimburse the Trust as the Trust pays claims. As a result, the Trust anticipates receiving additional payments through 2020 under these settlement agreements. Although the Plan Proponents settled with many of the Debtors' insurance companies prior to the Plan's Effective Date, they did not settle with all of the Debtors' insurance companies. Accordingly, in 2014, the Trust initiated settlement discussions with some solvent and insolvent domestic insurance companies (and state insurance guaranty associations) that had not settled with the Plan Proponents prior to the Plan's Effective Date. In 2014, three insurance companies, Geico, Republic and Axa filed a declaratory judgment against the Trust seeking a declaration that they do not owe any or at most limited coverage to the Trust. As claims have not yet reached the level of these excess insurance policies, the U.S. District Court for the Southern District of New York put their action on a suspense docket until the issue of coverage with these excess insurance companies becomes ripe.

H.    Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware serves as general counsel to the Trust.  Kaplan, Strangis & Kaplan, P.A. of Minneapolis, Minnesota and Keating Muething Klekamp, PLL of Cincinnati, Ohio serve as Special Securities Counsel and Anderson Kill, P.C. of New York, New York serves as Special Insurance Counsel to the Trust.

IV.    ANNUAL REPORT AND ACCOUNTING

The Trust began accepting and processing Unliquidated claims on August 25, 2014.

As of December 31, 2015, the Trust had paid a total of 11,836 Pre-Petition Liquidated PI Trust Claims.  Of the claims paid, there were 295 malignancy claims and 11,541 non-malignancy claims.  After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $21.3 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims.  The malignant to nonmalignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 1/39 and the malignant to nonmalignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 2/3.

As of December 31, 2015, the Trust had received 293,745 Unliquidated PI Trust Claims and paid a total of 50,531 claims since the date of inception of the Trust.  Of the claims paid, there were 9,400 malignancy claims and 41,131 non-malignancy claims.  After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $356.1 million to asbestos victims in settlement of their Unliquidated PI Trust Claims since the date of inception of the Trust.  The malignant to nonmalignant ratio of the Unliquidated PI Trust Claims paid in number was 2/9 and the malignant to nonmalignant ratio of the Unliquidated Trust Claims in dollars paid was 5.4/1.

During the reporting period, the Trust paid a total of 3,698 Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 116 malignancy claims and 3,582 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $8.5 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims. The malignant to nonmalignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 1/31 and the malignant to nonmalignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 1.6/1.

During the reporting period, the Trust received 67,889 Unliquidated PI Trust Claims and paid a total of 47,379 claims. Of the claims paid, there were 9,065 malignancy claims and 38,314 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $344.5 million to asbestos victims in settlement of their Unliquidated PI Trust Claims. The malignant to nonmalignant ratio of the Unliquidated PI Trust Claims paid in number was 1/4 and the malignant to nonmalignant ratio of the Unliquidated Trust Claims in dollars paid was 5.6/1.

A summary of the claims processing procedures and policies may be found at the Trust website at www.wrgraceasbestostrust.com.

B.    Financial Information

The Trust's audited financial statements for the Reporting Period are attached hereto as

Exhibit "A."  The financial statements were audited by BDO USA, LLP.


Date: <u>April 29, 2016</u>                    CAMPBELL & LEVINE, LLC


<u>/s/ Mark T. Hurford</u>
Marla Rosoff Eskin (No. 2989)
Mark T. Hurford (No. 3299)
Kathleen Campbell Davis (No. 4229)
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801
Tel. 302.426.1900
Fax 302.426.9947
mhurford@camlev.com

-and-

Douglas A. Campbell
Stanley E. Levine
Philip E. Milch
1700 Grant Building
Pittsburgh, PA 15219
Tel. 412.261.0310
Fax 412.261.5066

*Counsel to WRG Asbestos PI Trust*

# EXHIBIT A

{D0280253.1 }

# WRG Asbestos PI Trust

## Audited Special-Purpose Financial Statements with Supplementary Information

Year Ended December 31, 2015 and Period From February 3, 2014 (Inception) Through December 31, 2014

The report accompanying these financial statements was issued by BDO USA, LLP, a Delaware limited liability partnership and the U.S. member of BDO International Limited, a UK company limited by guarantee.



# WRG Asbestos PI Trust

Audited Special-Purpose Financial Statements with Supplementary
Information
Year Ended December 31, 2015 and Period from February 3, 2014 (Inception) Through
December 31, 2014

# WRG Asbestos PI Trust

## Contents

| | |
|---|---|
| **Independent Auditor's Report** | 1-2 |
| **Special – Purpose Financial Statements** | |
| Special-Purpose Statements of Assets, Liabilities, and Net Assets Available for the Payment of Claims | 3 |
| Special-Purpose Statements of Changes in Net Assets Available for the Payment of Claims | 4 |
| Special-Purpose Statements of Cash Flows | 5 |
| Notes to the Special-Purpose Financial Statements | 6-18 |
| **Supplementary Information** | |
| Independent Auditor's Report on Supplementary Information | 19 |
| Supplementary Schedule of Operating Expenses | 20 |



Tel:  703-893-0600
Fax:  703-893-2766
www.bdo.com

8401 Greensboro Drive
Suite 800
McLean, VA 22102

**Independent Auditor's Report**

Trustees
WRG Asbestos PI Trust
Wilmington, Delaware

We have audited the accompanying special-purpose financial statements of the WRG Asbestos PI Trust (the Trust) (a statutory Trust created under the laws of the State of Delaware), which comprise the special-purpose statements of assets, liabilities, and net assets available for the payment of claims as of December 31, 2015 and 2014, and the related special-purpose statements of changes in net assets available for the payment of claims and the special-purpose statements of cash flows for the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014, and the related notes to the special-purpose financial statements.

*Management's Responsibility for the Special-Purpose Financial Statements*

Management is responsible for the preparation and fair presentation of these special-purpose financial statements in accordance with the basis of accounting described in Note 2 to the special-purpose financial statements.  Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of special-purpose financial statements that are free from material misstatement, whether due to fraud or error.

*Auditor's Responsibility*

Our responsibility is to express an opinion on these special-purpose financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the special-purpose financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the special-purpose financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the special-purpose financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the special-purpose financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the special-purpose financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

*Opinion*

In our opinion, the special-purpose financial statements referred to above present fairly, in all material respects, the assets and liabilities of WRG Asbestos PI Trust as of December 31, 2015 and 2014, and the additions, deductions and cash flows for the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014, in accordance with the basis of accounting described in Note 2 to the special-purpose financial statements.

*Basis of Accounting*

We draw attention to Note 2 of the special-purpose financial statements, which describes the basis of accounting.  As described in Note 2, these special-purpose financial statements were prepared on a special-purpose basis of accounting which is a basis of accounting other than accounting principles generally accepted in the United States of America.  Our opinion is not modified with respect to this matter.  The special-purpose basis of accounting has been used in order to communicate the amount of net assets presently available to fund current and future claims.

*Restriction of Use*

Our report is intended solely for the information and use of the management of the Trust, the Trustees, the Future Claimants' Representative, the Trust Advisory Committee, the beneficiaries of the Trust, and the United States Bankruptcy Court for the District of Delaware and is not intended to be and should not be used by anyone other than these specified parties. This restriction is not intended to limit the distribution of this report which, upon filing with the United States Bankruptcy Court for the District of Delaware, is a matter of public record.

*BDO USA, LLP*

McLean, Virginia
April 25, 2016

2

## Special-Purpose Financial Statements

# WRG Asbestos PI Trust

### Special-Purpose Statements of Assets, Liabilities, and Net Assets Available for the Payment of Claims

| December 31, | 2015 | 2014 |
|---|---|---|
| **Assets** | | |
| Cash and cash equivalents | $     107,597,321 | $     796,106,509 |
| Investments, at fair value | | |
| Bonds | 2,538,270,179 | 1,737,513,176 |
| Equity securities | 198,652,246 | 694,658,147 |
| International equity funds | 96,644,423 | 87,815,826 |
| Hedge funds | 134,683,281 | 73,630,978 |
| Interest receivable | 27,993,664 | 15,057,129 |
| **Total assets** | 3,103,841,114 | 3,404,781,765 |
| **Liabilities** | | |
| Accrued expenses and accounts payable | 1,099,005 | 2,231,395 |
| Settled but unpaid claims | 8,409,094 | 2,946,611 |
| Federal taxes payable | - | 19,600,000 |
| **Total liabilities** | 9,508,099 | 24,778,006 |
| **Net assets available for the payment of claims** | $     3,094,333,015 | $   3,380,003,759 |

*See accompanying notes to the special-purpose financial statements.*

## WRG Asbestos PI Trust

### Special-Purpose Statements of Changes in Net Assets Available for the Payment of Claims

| Year/Period Ended December 31, | 2015 | 2014 |
|---|---:|---:|
| **Additions** | | |
| Initial funding | $ - | $ 3,120,378,746 |
| Insurance recoveries | 41,424,909 | 224,025,659 |
| Interest and dividend income | 49,215,955 | 20,607,103 |
| Net appreciation in fair value of investment securities | 10,085,031 | 91,672,342 |
| Net depreciation in fair value of international equity funds | (1,171,403) | (184,174) |
| Net (depreciation) appreciation in fair value of hedge funds | (7,947,697) | 1,630,978 |
| **Total additions** | 91,606,795 | 3,458,130,654 |
| **Deductions** | | |
| Federal income tax expense | 2,135,472 | 30,110,000 |
| Personal injury claims expense | 359,533,804 | 27,404,261 |
| Operating expenses | 10,002,602 | 16,467,780 |
| Claims processing expenses | 5,605,661 | 4,144,854 |
| **Total deductions** | 377,277,539 | 78,126,895 |
| (Decrease) increase in net assets available for the payment of claims | (285,670,744) | 3,380,003,759 |
| **Net assets available for the payment of claims** | | |
| Beginning of the year/period | 3,380,003,759 | - |
| End of the year/period | $ 3,094,333,015 | $ 3,380,003,759 |

*See accompanying notes to the special-purpose financial statements.*

# WRG Asbestos PI Trust

## Special-Purpose Statements of Cash Flows

| Year/Period Ended December 31, | 2015 | 2014 |
|---|---|---|
| **Cash flows from operating activities:** | | |
| (Decrease) increase in net assets available for the payment of claims | $ (285,670,744) | $ 3,380,003,759 |
| Adjustments to reconcile (decrease) increase in net assets available for the payment of claims to net cash (used in) provided by operating activities: | | |
| Trust funding received in stocks and warrants | - | (1,041,520,000) |
| Net appreciation in fair value of investment securities | (10,085,031) | (91,672,342) |
| Net depreciation in fair value of international equity funds | 1,171,403 | 184,174 |
| Net depreciation (appreciation) in fair value of hedge funds | 7,947,697 | (1,630,978) |
| Amortization of premiums on bonds, net | 42,488,365 | 3,916,392 |
| Changes in operating assets and liabilities | | |
| Interest receivable | (12,936,535) | (15,057,129) |
| Accrued expenses and accounts payable | (1,132,390) | 2,231,395 |
| Settled but unpaid claims | 5,462,483 | 2,946,611 |
| Federal taxes payable | (19,600,000) | 19,600,000 |
| Total adjustments | 13,315,992 | (1,121,001,877) |
| **Net cash (used in) provided by operating activities** | (272,354,752) | 2,259,001,882 |
| **Cash flows from investing activities:** | | |
| Sales and maturities of bonds | 732,564,305 | 311,316,381 |
| Purchases of bonds | (1,554,639,420) | (2,054,476,683) |
| Sales of equity securities | 540,111,571 | 659,921,424 |
| Purchases of equity securities | (55,190,892) | (219,656,495) |
| Distributions from investments in international equity funds | - | 355,734 |
| Purchases of investments in international equity funds | (10,000,000) | (88,355,734) |
| Purchases of investments in hedge funds | (69,000,000) | (72,000,000) |
| **Net cash used in investing activities** | (416,154,436) | (1,462,895,373) |
| Net (decrease) increase in cash and cash equivalents | (688,509,188) | 796,106,509 |
| Cash and cash equivalents at the beginning of the year/period | 796,106,509 | - |
| **Cash and cash equivalents at the end of the year/period** | $ 107,597,321 | $ 796,106,509 |

*See accompanying notes to the special-purposes financial statements.*

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

### 1. Description of the Trust

On April 2, 2001, W.R. Grace & Co. (WRG) and 61 of its United States subsidiaries and affiliates including  W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica Caribe Land Development Corporation, Hanover Square Corporation, Romeo International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace NH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company (collectively, the Debtors) voluntarily filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the Bankruptcy Court).   On January 31, 2011, the Bankruptcy Court entered an order (the Confirmation Order) confirming the modified joint plan of reorganization (the Confirmed Plan) proposed and filed by the Debtors and supported by the Asbestos Personal Injury Committee, the Legal Representative representing the interests of future asbestos bodily injury claimants, and the Creditors Committee.  On January 30, 2012, the United States District Court for the District of Delaware adopted, issued and affirmed the Confirmation Order.  The Confirmation Order has become final and cannot be appealed.  The Confirmed Plan became effective on February 3, 2014 (the Effective Date or the Effective Date of the Plan of Reorganization).

The essential elements of the Confirmed Plan include, among other things: the creation of the WRG Asbestos PI Trust (the Trust) to assume all liabilities and obligations for all Asbestos PI Claims (as defined in the Confirmed Plan) (Asbestos PI Trust Claims) and to use the Trust assets and income to pay the holders of all Asbestos PI Trust Claims in accordance with the Trust Agreement and the Trust Distribution Procedures (TDP) in such a way that such holders of Asbestos PI Trust Claims are treated fairly, equitably and reasonably in light of the limited assets available to satisfy such claims, and to otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code.

The Trustees are responsible for supervising and administering the Trust and the use of the Trust's assets and income to pay the holders of all Asbestos PI Trust Claims in accordance with the terms of and the purposes set forth in the Trust Agreement and the TDP.

## WRG Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

**2.  Summary of Significant Accounting Policies**

*Basis of presentation*

The Trust's financial statements are prepared using special-purpose accounting methods adopted by the Trust, which differ from accounting principles generally accepted in the United States of America (GAAP).  The special-purpose accounting methods were adopted in order to communicate to the beneficiaries of the Trust the net assets available for the payment of claims and the related operating expenses of the Trust.  Since the accompanying special-purpose financial statements are not based upon GAAP, the accounting treatment by other parties for these same transactions may differ as to timing and amount.  The special-purpose accounting methods include the following:

- Assets are generally recorded when they are received by the Trust and are available for the payment of asbestos claims.

- Future fixed liabilities under contractual obligations and other agreements entered into by the Trust are recorded as deductions from net assets available for the payment of claims in the same period that such contractual obligations or agreements are signed.  Under GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement.

- The full amounts of claims are expensed in the period in which the confirmed claims are settled.  A settled claim is a claim that has been allowed by the Trust and accepted by the claimant, with an approved release.  Under GAAP, a liability would be recorded for an estimate of the amount to be paid for claims that have been incurred but not yet reported, and for those claims that have been submitted but not yet approved for payment by the Trust.

- Payments for services to be received over an extended period in the future are expensed as paid because these amounts are no longer available for the payment of claims.  Under GAAP, an asset would be recorded and amortized over the period in which the related benefits are received.

- Payments for property and equipment are expensed as incurred.  Under GAAP, payments for property and equipment are capitalized and depreciated over the useful lives of the assets.  To date, the Trust has incurred no expense related to purchases of property and equipment.

- Income tax expense is estimated and recorded as incurred in the period in which certain income and expense items affect current federal income taxes payable.  Under GAAP, the provision for income taxes is recorded based upon income reported for financial statement purposes, and federal and state income taxes both currently payable and changes in deferred taxes due to differences between financial reporting and tax bases of assets and liabilities.  Under GAAP, deferred taxes include a provision for taxes attributable to changes in unrealized gains and losses on investments.

- Asbestos insurance recoveries are not recorded until the funds are received from the insurance carriers.  These recoveries come from various insurance settlements, which were obtained by WRG and related entities including Debtors and other affiliates and assigned to the Trust.  The insurance policies cover, among other things, products and general liability claims.  Future recoveries under such settlements have been assigned to the Trust pursuant to the

## WRG Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

Confirmed Plan.  Under GAAP, asbestos insurance recoveries are recorded upon settlement and assurance of collectability.

• Under GAAP, for financial statement disclosure purposes all investments would be categorized based on the priority of inputs used to measure fair value. Under GAAP, inputs used in measuring fair value are categorized into three levels.  Level 1 includes inputs that are based upon quoted prices for identical instruments traded in active markets.  Level 2 includes inputs that are based upon quoted prices for similar instruments in active markets, quoted prices for identical or similar investments in markets that are not active, or models based on valuation techniques for which all significant assumptions are observable in the market or can be corroborated by observable market data for substantially the full term of the investment.  Level 3 includes inputs that are generally unobservable and typically reflect management's estimates of assumptions that market participants would use in pricing the asset or liability.  The fair values are therefore determined using model-based techniques that include option pricing models, discounted cash flow models, and similar techniques.  The accompanying special-purpose financial statements do not categorize all investments into these levels.

### Use of estimates

The preparation of financial statements in conformity with the special-purpose accounting methods described above requires the Trust to make estimates and assumptions that affect the reported amounts of certain assets and liabilities and the disclosures of contingent assets and liabilities at the date of the special-purpose financial statements, as well as the reported amounts of additions and deductions to the net assets available for the payment of claims during the reporting period.  Actual results could differ from those estimates and such differences could have a material effect on the net assets available for the payment of claims.

### Cash equivalents

The Trust considers all highly liquid instruments with original maturities of three months or less to be cash equivalents.

### Investments

Investment securities are stated at fair market value.  Fair market value for investment securities, other than hedge funds, are based on quoted market prices for identical or similar instruments traded in active markets as of the date of the special-purpose financial statements.  The fair market value for hedge funds is based on the Trust's proportionate share of each funds' net assets, as reported as of the date of the special-purpose financial statements. The net appreciation or depreciation in fair market value of investments in the accompanying special-purpose statements of changes in net assets available for the payment of claims consists of realized gains or losses on sales of investments and the changes in unrealized gains or losses on investments held.  Investment income is recognized when earned.  All interest and dividend income, net of investment expenses, are included in interest and dividend income in the accompanying special-purpose statements of changes in net assets available for the payment of claims.  Gains and losses on sales of investment securities are determined using the average cost method.

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

*Accrued expenses and accounts payable*

Accrued expenses and accounts payable consist of accruals and outstanding invoices associated with managing and operating the Trust.

*Operating expenses*

Operating expenses of the Trust are paid from the net assets available for the payment of claims when invoices are received.

*Claims processing expenses*

Claims processing expenses are paid from net assets available for the payment of claims when invoices are received.

*Income taxes*

The Trust is classified as a Qualified Settlement Fund pursuant to the Internal Revenue Code and Regulations thereunder (the Code).  As a result, the Trust is subject to federal income taxation based on modified gross income, as defined by the Code.  In the opinion of the Trustees and advisors, the Trust is not subject to state income taxes and, therefore, the special-purpose financial statements do not include any provision or liability for state income taxes.

Income tax expense is estimated and includes amounts payable or receivable under current federal income taxes.

The Trust records income tax expense (or benefit) associated with amounts payable (or receivable) under current federal income taxes, and does not record a provision for (or benefit from) deferred taxes.  Accordingly, there is no provision for deferred taxes associated with changes in cumulative unrealized gains and losses on investments (see Note 5).  The income taxes associated with gains on investments will be recorded in the Trust's special-purpose financial statements when the net gains are realized (i.e. the securities are sold) and the taxes become currently payable.

*Risks and uncertainties*

The Trust's assets that are exposed to credit risk consist primarily of cash and cash equivalents and investments in equity securities, municipal bonds, and hedge funds.  Cash and cash equivalents are maintained at financial institutions and, at times, balances may exceed federally insured limits.  The Trust has never experienced any losses related to these balances. Amounts on deposit in excess of federally insured limits at December 31, 2015 approximate $107 million.

The Trust invests in a professionally managed portfolio that contains common shares of publicly traded companies, U.S. and Canadian government obligations, money market funds, and hedge funds.  Such investments are exposed to various risks such as interest rate, market, and credit risks.  Due to the level of risk associated with certain investments securities, it is at least reasonably possible that changes in the values of investment securities will occur in the near term and that such changes could materially affect the Trust's account balance and the amounts reported in the special-purpose statements of assets, liabilities and net assets available for the payment of claims.

## WRG Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

3. **Funding Under Joint Plan of Reorganization**

In accordance with the Confirmed Plan entered by the Bankruptcy Court on February 3, 2014, the Trust was funded with the Asbestos Trust Assets (as defined in the Confirmed Plan) as follows:

(a) On the Effective Date, WRG transferred to the Trust $250,000,000 plus $56,166,017 in interest earned thereon from January 1, 2009 through the Effective Date. Additionally, on the Effective Date, WRG also transferred an additional $145,742,824 to the Trust which was an amount equal to the Asbestos Property Damage Initial Payment (as defined in the Confirmed Plan).

(b) On the Effective Date, WRG assigned all Asbestos Insurance Rights (as defined in the Confirmed Plan) to the Trust and, in accordance with the Asbestos Insurance Transfer Agreement (as defined in the Confirmed Plan), transferred $105,796,961 to the Trust, representing asbestos insurance settlement proceeds that had been held in escrow for the benefit of the Trust.

(c) On the Effective Date, Fresenius Medical Care Holdings, Inc. transferred $42,128,587 to the Trust.

(d) On the Effective Date, Cryovac, Inc. transferred to the Trust $856,824,355 in cash and 18,000,000 shares of the common stock, $.10 par value, of Sealed Air Corporation (Sealed Air Common Stock). The Sealed Air Common Stock had a fair market value of $551,520,000 on the Effective Date.

(e) On the Effective Date, WRG granted the Trust warrants (Warrants) to acquire 10,000,000 shares of the common stock, $.01 par value, of WRG (WRG Common Stock) at an exercise price of $17.00 per share, expiring one year from the Effective Date, subject to the terms of a Warrant Agreement (Warrant Agreement) executed between WRG and the Trust dated as of the Effective Date. The terms of the Warrant Agreement and the Warrants were subject to and modified by a letter agreement (Warrant Implementation Agreement), dated October 25, 2012, among WRG, the Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative and the Official Committee of Equity Securities Holders, which was approved by the Bankruptcy Court on December 11, 2012. The Warrant Implementation Agreement provided that WRG would purchase from the Trust and the Trust would sell to WRG the Warrants on the earlier of the date the Trust delivered written notice to WRG of its election to require WRG to purchase the Warrants and the expiration date of the Warrants. The Warrant Implementation Agreement provided that WRG would repurchase the Warrants from the Trust for a price equal to the average of the daily closing prices of WRG Common Stock during the period commencing one day after the Effective Date and ending on the earlier of (A) the day prior to the date on which the Trust elected to sell the Warrants back to WRG and (B) the expiration date of the Warrants, multiplied by 10 million (the number of shares of WRG Common Stock issuable under the Warrants), less $170 million (the aggregate exercise price of the Warrants), provided that if the average of the daily closing prices was less than $54.50 per share, then the repurchase price would be $375 million, and if the average daily closing prices exceeded $66.00 per share, then the repurchase price would be $490 million. Additional information related to the Trust's sale of the Warrants to WRG subsequent to year end is provided in Note 7.

## WRG Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

(f) On the Effective Date, the Trust, WRG and W.R. Grace & Co.-Conn., a subsidiary of WRG (WRG-Conn), entered into an Asbestos Deferred Payment Agreement (Deferred Payment Agreement) that required WRG-Conn to make deferred payments to the Trust over a 15-year period, consisting of five annual payments of $110,000,000 commencing on January 2, 2019 and ten annual payments of $100,000,000 commencing on January 2, 2024.  WRG-Conn's obligation to make payments to the Trust under the Deferred Payment Agreement was guaranteed by WRG pursuant to the W. R. Grace & Co. Guarantee Agreement (PI), dated February 3, 2014 (Guarantee), and secured by WRG's obligation to issue 77,372,257 shares of Common Stock to the Trust in the event of default, as provided by the Share Issuance Agreement (Share Issuance Agreement), dated February 3, 2014, by and among WRG, the Trust and the WRG Asbestos PD Trust, a Delaware statutory trust. Additional information related to the settlement of the Deferred Payment Agreement is provided in Note 8.

(g) In relation to the Asbestos Insurance Rights, the Trust entered into a settlement agreement with the Scotts Company LLC (Scotts) whereby the Trust was required to pay Scotts a total of $1,800,000 to release and discharge Scotts and its past and present affiliates from any and all claims which the Debtors have, had, or claims to have against any or all of the Scotts Released Parties.  This settlement is treated as a reduction of the initial funding as reported on the special-purpose statements of changes in net assets available for the payment of claims during the period from February 3, 2014 (inception) through December 31, 2014.

(h) In relation to the Asbestos Insurance Rights, the Trust entered into a settlement agreement with BNSF Railway Company, The Great Northern Railway Company, Burlington Northern Railroad Company, Burlington Northern, Inc. and the Burlington Northern & Santa Fe Railway Company (collectively, BNSF) whereby the Trust was required to pay BNSP a total of $8,000,000 to release and discharge each of the Debtors and the Trust from any and all present and future claims, demands, obligations, and liabilities of any nature whatsoever.  The settlement is treated as a reduction of the initial funding as reported on the special-purpose statements of changes in net assets available for the payment of claims during the period from February 3, 2014 (inception) through December 31, 2014.

## 4. Related Parties

On February 28, 2014, the Trust became a member in the Delaware Claims Processing Facility (DCPF), a limited liability company, under an agreement with five other Qualified Settlement Funds.  The purpose of the DCPF is to operate a claims processing facility.  At inception, the Trust contributed $100 in capital to this entity.   Effective February 28, 2014, this entity began processing all of the Trust's Asbestos Claims.

The Trust paid expenses related to the operation of this entity of $5,605,661 and $4,144,854 for the year ended December 31, 2015 and for the period from February 3, 2014 (inception) to December 31, 2014, respectively. Expenses charged to the Trust related to the operation of this entity include start-up costs, direct labor expense, other direct expenses, and an allocation of common costs.

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

### 5. Investment Securities

Investments in bonds and equity securities consist of the following at December 31:

| | 2015 | | | |
|---|---|---|---|---|
| *Description* | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Value |
| Bonds | $  2,520,863,874 | $  28,374,529 | $  (10,968,224) | $  2,538,270,179 |
| Equity securities | 190,870,787 | 20,430,013 | (12,648,554) | 198,652,246 |
| | $  2,711,734,661 | $  48,804,542 | $  (23,616,778) | $  2,736,922,425 |

| | 2014 | | | |
|---|---|---|---|---|
| *Description* | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Value |
| Bonds | $  1,739,234,058 | $  6,402,513 | $  (8,123,395) | $  1,737,513,176 |
| Equity securities | 688,615,860 | 14,346,724 | (8,304,437) | 694,658,147 |
| | $  2,427,849,918 | $  20,749,237 | $  (16,427,832) | $  2,432,171,323 |

Net appreciation in the fair value of investment securities of amounts $10,085,031 and $91,672,342 for the year ended December 31, 2015 and for the period from February 3, 2014 (inception) to December 31, 2014, respectively, consists of the net change in unrealized gains (losses) and net realized gains from investment sales.

### Net unrealized gains and losses

The net change in unrealized gains from market appreciation (depreciation) is comprised of the following investments securities for the year ended December 31, 2015 and for the period from February 3, 2014 (inception) to December 31, 2014:

| | 2015 | 2014 |
|---|---|---|
| Bonds | $  19,127,187 | $  (1,720,882) |
| Equity securities | 1,739,172 | 6,042,287 |
| | $  20,866,359 | $  4,321,405 |

## WRG Asbestos PI Trust

### Notes to the Special-Purpose Financial Statements

*Realized gains and losses*

Net realized gains (losses) from investment sales consist of the following for the year ended December 31, 2015 and for the period from February 3, 2014 (inception) to December 31, 2014:

|  | 2015 | 2014 |
|---|---|---|
| Bonds | $    2,043,066 | $        (9,852) |
| Equity securities | (12,824,394) | 87,360,789 |
|  | $ (10,781,328) | $ 87,350,937 |

*Summary of changes in investments in international equity funds*

The table below sets forth a summary of changes in the fair value of the Trust's investment in international equity funds for the year ended December 31, 2015 and for the period from February 3, 2014 (inception) to December 31, 2014:

|  | 2015 | 2014 |
|---|---|---|
| Balance, beginning of year | $   87,815,826 | $             - |
| Purchases | 10,000,000 | 88,355,734 |
| Liquidations / Distributions | - | (355,734) |
| Net change in fair value | (1,171,403) | (184,174) |
| Balance, end of year | $   96,644,423 | $ 87,815,826 |

*Summary of changes in investments in hedge funds*

The table below sets forth a summary of changes in the fair value of the Trust's investments in hedge funds for the year ended December 31, 2015 and for the period from February 3, 2014 (inception) to December 31, 2014:

|  | 2015 | 2014 |
|---|---|---|
| Balance, beginning of year | $   73,630,978 | $             - |
| Purchases | 69,000,000 | 72,000,000 |
| Net change in fair value | (7,947,697) | 1,630,978 |
| Balance, end of year | $ 134,683,281 | $ 73,630,978 |

13

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

*Hedge fund categories*

The major categories of the Trust's hedge fund investments, including general information related to each category, are as follows:

| | Fair Value | | Redemption Frequency (if Currently Eligible) | First/Next Redemption | Notice Period (days) | Gate |
|---|---|---|---|---|---|---|
| | 2015 | 2014 | | | | |
| **(a)** | | | | | | |
| Multi-strategy fund | $ 21,677,922 | $17,067,676 | Not eligible | September 30, 2016 | 45 | 0% |
| Multi-strategy fund | 16,212,569 | 12,275,232 | Annually | December 31, 2015 | 44 | 25% |
| Multi-strategy fund | 10,036,372 | 7,504,964 | Not eligible | September 30, 2016 | 90 | 0% |
| Multi-strategy fund | 14,452,101 | - | Not eligible | September 30, 2016 | 67 | 0% |
| | $ 62,378,964 | $36,847,872 | | | | |
| **(b)** | | | | | | |
| Long/short fund | 16,855,786 | 12,062,197 | Quarterly | December 31, 2016 | 65 | 0% |
| Long/short fund | 11,321,202 | 7,467,809 | Semi Annually | June 30, 2016 | 90 | 20% |
| Long/short fund | 8,957,284 | 4,472,557 | Not eligible | December 31, 2016 | 60 | 0% |
| Long/short fund | 9,890,763 | 4,392,349 | Quarterly | March 31, 2016 | 65 | 0% |
| Long/short fund | 8,208,159 | 4,201,679 | Not eligible | June 30, 2017 | 45 | 0% |
| Long/short fund | 8,696,537 | 4,186,515 | Annually | June 1, 2016 | 65 | 25% |
| Long/short fund | 8,374,586 | - | Not eligible | June 30, 2018 | 75 | 0% |
| | 72,304,317 | 36,783,106 | | | | |
| | $ 134,683,281 | $73,630,978 | | | | |

(a)      Hedge funds within this category use a variety of strategies to diversify risks and reduce volatility.  These strategies include seeking capital appreciation through event-driven investments that seek to exploit situations in which announced or anticipated events create inefficiencies in the pricing of securities, investing in securities of issuers experiencing financial distress, investing in event-driven and risk arbitrage securities, and purchasing long and selling short in publicly-traded securities and loans.  Other strategies of funds in this category include investing in U.S. and non-U.S companies' debt and equity securities, investing in event-driven situations involving litigation, regulatory or legislative changes, and global investments focused on investments with capital structure changes, spin-offs, recapitalizations, liquidations, and reorganization among other events.  The fair value of the hedge fund investments in this category was estimated based on the Trust's proportionate share of each fund's net assets, as reported on the respective funds' financial statements for the years ended, December 31, 2015 and 2014.

(b)      Hedge funds in this category employ long and short trading strategies in various markets.  More specifically, these long/short strategies include preservation and growth of capital over the long-term through investments in U.S. and international public equities of consumer related companies, and equities and equity-related securities of companies in the Western European markets.  The fair value of the hedge fund investments in this category was estimated based on the Trust's proportionate share of each fund's net assets, as reported on the respective funds' financial statements for the years ended, December 31, 2015 and 2014.

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

### 6. Disposition of Sealed Air Common Stock

The Trust received 18,000,000 shares of Sealed Air Common Stock on the Effective Date under the terms of the Confirmed Plan.

On June 6, 2014, the Trust agreed to sell 5,000,000 shares of Sealed Air Common Stock in a registered block trade to Credit Suisse Securities (USA) LLC at $33.06 per share after soliciting bids for the shares from five investment banks, and Sealed Air Corporation agreed to repurchase 3,932,244 shares of Sealed Air Common Stock from the Trust, also at $33.06 per share.  On June 13, 2014, the Trust received aggregate proceeds of $295,300,000 from the sale of 8,932,244 shares of Sealed Air Common Stock in the two transactions.

On November 10, 2014, the Trust agreed to sell its remaining 9,067,756 shares of Sealed Air Common Stock in an unregistered block trade pursuant to Rule 144 of the U.S. Securities and Exchange Commission to Credit Suisse Securities (USA) LLC at $38.12 per share after soliciting bids for the shares from four investment banks.  The transaction closed on November 14, 2014 and the Trust received $345,662,859 in proceeds from the sale.

### 7. Disposition of W.R. Grace & Co. Warrants

The Trust received Warrants to purchase 10,000,000 shares of WRG Common Stock at an exercise price of $17.00 per share on the Effective Date, subject to the terms and conditions of the Warrant Agreement and the Warrant Implementation Agreement.  The terms of the Warrants, the Warrant Agreement and the Warrant Implementation Agreement are described in Note 3.

On February 2, 2015, the Trust delivered notice to WRG pursuant to the Warrant Implementation Agreement of its election to compel WRG to purchase the Warrants from the Trust. On February 3, 2015, an assignment of the Warrants by the Trust to WRG was effected through the Warrant Agent and the Trust received payment from WRG of $490,000,000 in full satisfaction of WRG's obligations to pay the purchase price under the Warrant Implementation Agreement.

The value of the Warrants reported on the Statement of Assets, Liabilities, and Net Assets Available for the Payment of Claims for the period from February 3, 2014 (Inception) through December 31, 2014 is equal to the purchase price for the Warrants under the Warrant Implementation Agreement, which approximates the fair market value of the Warrants at December 31, 2014 after taking into consideration the terms of the Warrant Implementation Agreement and the trading price of WRG Common Stock on December 31, 2014.

### 8. Settlement of Deferred Payment Agreement

On the Effective Date, the Trust, WRG and WRG-Conn entered into the Deferred Payment Agreement, which required WRG-Conn to make deferred payments to the Trust over a 15-year period, consisting of five annual payments of $110,000,000 commencing on January 2, 2019 and ten annual payments of $100,000,000 commencing on January 2, 2024.  The terms of the Deferred Payment Agreement, the Guarantee and the Share Issuance Agreement are described in Note 3.

On August 1, 2014, the Trust, WRG and WRG-Conn entered into an Obligation Termination Agreement (Termination Agreement) pursuant to which all of the obligations of WRG and WRG-Conn under the Deferred Payment Agreement, the Guarantee and, as to the Trust, the Share Issuance Agreement, were to be terminated upon, among other things, the cash payment of

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

$632,000,000 by WRG-Conn to the Trust. On September 18, 2014, the transactions described in the Termination Agreement closed and the Trust received $632,000,000 in satisfaction of WRG-Conn's obligation to make payments to the Trust under the Deferred Payment Agreement.

### 9. Income Taxes

During the year ended December 31, 2015 the Trust paid income taxes totaling approximately $21,600,000. During the period from February 3, 2014 (inception) through December 31, 2014 the Trust paid income taxes totaling approximately $10,510,000. As of December 31, 2015, the Trust has a net operating loss carryforward and a net capital loss carryforward totaling approximately $21,000,000 and $10,800,000, respectively, available to offset future taxable income/gains.

As disclosed in Note 2 to the special-purpose financial statements, the Trust does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with net operating loss carry forwards, net capital loss carryforwards, or cumulative unrealized gains and losses on investments.

### 10. Insurance Recoveries

During the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014, the Trust received insurance recoveries from insurers in the amount of $41,424,909 and $224,025,659, respectively. Under the terms of settlement agreements with certain insurance companies, the Trust may be entitled to future insurances recoveries. In accordance with the Trust's accounting policies, such insurance recoveries are recorded as an addition to net assets available for the payment of claims when the funds are received from the insurance companies.

### 11. Contingent Liabilities

The Plan Documents (as defined in the Confirmed Plan) subject the Trust to certain reimbursement and indemnification obligations that may result in future claims against the Trust. The probability of such claims cannot be reasonably determined. Accordingly, no associated liability has been recorded in the accompanying special-purpose financial statements. Such claims, if any, are not expected to be material. The Trust has obtained insurance for purposes of supporting its obligation to indemnify the Trustees.

### 12. Liability for Asbestos Claims

The settled but unpaid claims liability at December 31, 2015 and 2014 consists of personal injury claims that were settled and approved for payment by the Trust, but were unpaid as of December 31, 2015 and 2014, respectively. These amounts have been included in settled but unpaid claims in the accompanying special-purpose statements of assets, liabilities and net assets available for the payment of claims and in personal injury claims settled expense in the accompanying special-purpose statements of changes in net assets available for the payment of claims for the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014.

The ultimate number of Asbestos PI Trust Claims to be filed and the liability for all such claims are uncertain at this time. The net assets available for the payment of claims at December 31, 2015 represents funding available for all Asbestos Personal Injury Trust Claims for which no fixed

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

liability has yet been established. The net assets available for the payment of claims at December 31, 2015 may or may not be sufficient to meet all future obligations of the Trust.

### 13. Trust Liability Insurance

The Trust purchased liability insurance requiring premiums of $580,459 and $601,028 during the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014, respectively. The current policy term is from February 3, 2016 to February 3, 2017. The Trust's accounting policy is to expense in the current period any amounts that will not be available to pay future Asbestos PI Trust Claims or expenses of the Trust.  Accordingly, $580,459 and $601,028 was recorded as a deduction in net assets available for the payment of claims during the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014, respectively.

### 14. Trustees, Trust Advisory Committee, and Future Claimants Representative

Fees and expenses of the Trustees, trustees' advisory committee, and future claimants' representative for the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014 were as follows:

| | 2015 | | | |
|---|---|---|---|---|
| | Fees | Retainer | Expenses | Total |
| Trustees | $ 491,771 | $ 180,000 | $ 52,013 | $ 723,784 |
| Future Claimants' Representative | 103,580 | - | 1,928 | 105,508 |
| Future Claimants' Representative Counsel | 112,088 | - | 1,363 | 113,451 |
| Trust Advisory Committee | 7,000 | - | 4,005 | 11,005 |
| Trust Advisory Committee Counsel | 113,051 | - | 5,034 | 118,085 |
| Delaware Claims Processing Facility Board of Managers | 36,625 | - | - | 36,625 |
| | $ 864,115 | $ 180,000 | $ 64,343 | $ 1,108,458 |

| | 2014 | | | |
|---|---|---|---|---|
| | Fees | Retainer | Expenses | Total |
| Trustees | $ 758,583 | $ 165,000 | $ 58,335 | $ 981,918 |
| Future Claimants' Representative | 276,410 | - | 141,529 | 417,939 |
| Future Claimants' Representative Counsel | 300,451 | - | 5,130 | 305,581 |
| Trust Advisory Committee | - | - | 500 | 500 |
| Trust Advisory Committee Counsel | 290,865 | - | 6,714 | 297,579 |
| Delaware Claims Processing Facility Board of Managers | 26,500 | - | - | 26,500 |
| | $ 1,652,809 | $ 165,000 | $ 212,208 | $ 2,030,017 |

# WRG Asbestos PI Trust

## Notes to the Special-Purpose Financial Statements

The above amounts are included in operating expenses in the special-purpose statements of changes in net assets available for the payment of claims for the year ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014.

## 15. Subsequent Events

The Trust has evaluated its December 31, 2015 special-purpose financial statements for subsequent events through April 25, 2016 the date the special-purpose financial statements were available to be issued. The Trust is not aware of any subsequent events which would require recognition or disclosure in the special-purpose financial statements.

# WRG Asbestos PI Trust

## Supplementary Information

For the Year Ended December 31, 2015 and the period from February 3, 2014 (inception) through December 31, 2014



Tel:  703-893-0600
Fax:  703-893-2766
www.bdo.com

8401 Greensboro Drive
Suite 800
McLean, VA 22102

**Independent Auditor's Report on Supplementary Information**

Trustees
WRG Asbestos PI Trust
Wilmington, Delaware

Our audit of the special-purpose financial statements included in the preceding section of this report was conducted for the purpose of forming an opinion on those special-purpose statements as a whole.  The supplementary information presented in the following section of this report is presented for purposes of additional analysis and is not a required part of the special-purpose financial statements.  Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the special-purpose financial statements.  The information has been subjected to the auditing procedures applied in the audit of the special-purpose financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the special-purpose financial statements or to the special-purpose financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America.  In our opinion, the information is fairly stated in all material respects in relation to the special-purpose financial statements as a whole.

*BDO USA, LLP*

April 25, 2016

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

# WR Grace Asbestos PI Trust

## Supplementary Schedule of Operating Expenses

| Year/Period ended December 31, | 2015 | 2014 |
|---|---|---|
| Investment advisory and management fees | $ 4,125,069 | $ 7,460,637 |
| Professional fees | 1,335,886 | 3,186,157 |
| Legal fees | 1,812,491 | 2,943,372 |
| Trustee fees, retainer, and expenses | 723,784 | 981,918 |
| Trust liability insurance | 580,459 | 601,028 |
| Future claimants' representative fees and expenses | 105,508 | 417,939 |
| Future claimants' representative counsel fees and expenses | 113,451 | 305,581 |
| TAC counsel fees and expenses | 118,085 | 297,579 |
| Accounting fees | 952,980 | 139,575 |
| Administrative fees | 66,963 | 94,261 |
| Delaware Claims Processing Facility Board of Managers | 36,625 | 26,500 |
| Miscellaneous operating expenses | 20,296 | 12,733 |
| TAC fees and expenses | 11,005 | 500 |
| **Total operating expenses** | $ 10,002,602 | $ 16,467,780 |