# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (KJC) |
| Reorganized Debtors. | |

### DECLARATION OF TOM RAY

I, Tom Ray, hereby declare and testify under penalty of perjury as follows:

1.     I am the Montana Resources Team Leader for the Weyerhaeuser Company ("**Weyerhaeuser**"), which acquired Plum Creek Timber Company, Inc. ("**Plum Creek**") and its assets in a merger early in 2016.

2.     Prior to Weyerhaeuser's acquisition of Plum Creek, I was employed by Plum Creek as Vice President of NW Resources and Manufacturing, and in connection with that employment, I oversaw all of Plum Creek's timber activities in Montana.

3.     My knowledge in support of this Declaration is personal and based on my executive supervision for Plum Creek relating to its holdings around Libby, Montana.

4.     Plum Creek was the largest private landowner around Libby, Montana.

5.     Plum Creek owned approximately 30,000 acres generally in the vicinity of Libby. This includes 1,611 acres which includes land within one mile of the contour of the former vermiculite mine facility as well as land that is outside the one mile radius but which can be accessed only by roads that cross within 1 mile of the former vermiculite mine (the "**Property**").

6.      Plum Creek acquired some of the Property from a predecessor entity when Plum Creek was incorporated in 1989, and acquired the balance of the Property in 1993.

7.      The Property is currently a commercial forest.

8.      The only access route to Plum Creek's Property was through a Forest Service Road called "Rainy Creek Road." Rainy Creek Road also provided access to the W.R. Grace vermiculite mine.

9.      In approximately 2001, the Environmental Protection Agency ("**EPA**") completely closed public access to Rainy Creek Road. At that time, even a guard station was established on the road, though subsequently it was taken down. Nonetheless, the Road has never been reopened to the public.

10.      Upon information and belief, the EPA closed the Road because the EPA chose to use it to transport contaminated soils and materials to the mine where hazardous materials could be stored. My understanding is that a closure would minimize the chance of possible accidents or secondary contamination between the transportation of hazardous material and the public, including Plum Creek. The closure, however, of Rainy Creek Road did not put Plum Creek on notice that its Property adjacent to or accessible from the Road was contaminated by Libby amphibole asbestos.

11.      Soon after Rainy Creek Road's closure, Plum Creek ceased conducting timber harvesting operations on its Property (as well as in other lands it owned, extending up to 30,662 acres around Libby) for two reasons. First, without access using Rainy Creek Road, logging became cost-prohibitive. Second, neither the EPA nor the Forest Service, nor the state of Montana could assure Plum Creek that logging in the area was safe for human health.

12.     Unless and until Plum Creek received assurances from state or federal authorities that asbestos contamination did not impact logging, Plum Creek adopted a precautionary approach, and voluntarily chose not to conduct any logging operations on 30,662 acres near the Libby vermiculite mine ("**Precautionary Zone**").  Because timber is a non-perishable asset, and this land constituted a small fraction of the million-plus acres Plum Creek had under management in Montana at the time, Plum Creek was able to successfully manage around the deferred harvest. Plum Creek did not adopt the Precautionary Zone because of knowledge of Libby amphibole asbestos contamination.

13.     Over time, Plum Creek gradually began reducing the geographical reach of the Precautionary Zone.  Ultimately, the 1,611 acres (constituting the Property) determined by the EPA in December 2014 to be contaminated to the extent they were hazardous to human health, represented 5.3% of the maximum historical acreage subject to the Precautionary Zone.

14.     Similarly, the fact that portions of the Property were located within an EPA Superfund site did not put Plum Creek on notice that its Property was contaminated by Libby amphibole asbestos, because the borders of the site were generalized and not specific, and Plum Creek's land was likely included because of its proximity to Rainy Creek Road.

15.     In or about 2004 or 2005, the EPA requested that Plum Creek contribute funds for scientific bark testing. In response, I explored options for Plum Creek. A forester in our Libby office relayed to me over the phone, with other details, an estimated price of $100,000 to conduct such bark testing on Plum Creek's land holdings around Libby. In its business judgment, Plum Creek opted not to fund such testing to determine whether a third party's (here, Grace's) contamination was hazardous or not. Instead, Plum Creek agreed to grant access to the EPA to conduct that future testing, once and if it received funding to proceed from some other source. In

its Motion, Grace claims that Plum Creek spent $100,000 to undertake subsequent testing. *Id.* at 13 (citing PTCT_00410). The handwritten note which is referenced here is my handwriting, but I can confirm that Grace's assumption is false. This was information relayed to me by my forester in Libby, but contrary to Grace's assertions, it does not reflect an actual project undertaken by Plum Creek.

17.     Plum Creek did not know that contamination of Plum Creek's trees had occurred to the extent that it was hazardous to human health until the end of 2014.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.


DATED: June 3, 2016
Columbia Falls, MT

Tom Ray
Montana Resources Team Leader
Weyerhaeuser Company
Federal Way, WA  98063-9777