## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KJC) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | **Hearing Date:** July 21, 2016, at 2:30 p.m. |
| | ) | **Objection Deadline:** July 15, 2016 |

**MOTION TO APPROVE THE STIPULATION AND SETTLEMENT AGREEMENT RESOLVING CLAIMS FILED BY SGH ENTERPRISES, INC.**

### INTRODUCTION

The Reorganized Debtors are filing this motion (the "Motion") to request the Court enter an order substantially in the form attached hereto as Exhibit A (the "Approval Order"): (i) approving the *Stipulation and Settlement Agreement Resolving Claims Filed by SGH Enterprises, Inc.*, a true and correct copy of which attached as Exhibit I to the Approval Order (the "Stipulation"), resolving nine claims filed by SGH Enterprises, Inc. ("SGH") in the above-captioned chapter 11 cases by Allowing Claim no. 18551 in part and disallowing and expunging the remaining eight claims; and (ii) dismissing the Reorganized Debtors' *Thirty-Eighth Omnibus Objection to Claims filed by SGH Enterprises, Inc. (Substantive and Non- Substantive Objection)* [Docket No. 32600] (the "Objection") and the *Declaration of Richard C. Finke in Support of the Thirty-Eighth Omnibus Objection to Claims filed by SGH Enterprises, Inc. (Substantive and Non-Substantive Objection)* [Docket No. 32601] (the "Finke Declaration," collectively with the Objection, the "Claims Objection") and SGH's *Response to Thirty-Eighth Omnibus Objection to Claims (Substantive and Non-Substantive Objection)* [Docket no. 32633] (the "SGH Response") as moot; and (iii) withdrawing as moot the Court's *Scheduling Order re Thirty-Eighth Omnibus*

---

[1]    The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

*Objection to Claims Filed by SGH Enterprises, Inc. (Substantive and Non-Substantive Objection)* [Docket no. 32665] (the "Scheduling Order"), its *Amended Scheduling Order re Thirty-Eighth Omnibus Objection to Claims Filed by SGH Enterprises, Inc. (Substantive and Non-Substantive Objection)* [Docket no. 32689] (the "Amended Scheduling Order"), its *Second Amended Scheduling Order re Thirty-Eighth Omnibus Objection to Claims Filed by SGH Enterprises, Inc. (Substantive and Non-Substantive Objection)* [Docket no. 32701] (the "Second Amended Scheduling Order") and its *Third Amended Scheduling Order re Thirty-Eighth Omnibus Objection to Claims Filed by SGH Enterprises, Inc. (Substantive and Non-Substantive Objection)* [Docket no. 32712] (the "Third Amended Scheduling Order").[2]

In support of this Motion, the Reorganized Debtors respectfully state as follows:

## JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[3] This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for this Motion are section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

---

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Stipulation or the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (the "Plan").

[3]    The Reorganized Debtors and SGH confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

<u>**BACKGROUND**</u>

I.   **PROCEDURAL POSTURE OF THE SGH CLAIMS**

    A.   **The Chapter 11 Cases and the SGH Claims**

      3.      On April 2, 2001, W. R. Grace & Co., Grace-Conn., GEC and certain of their affiliates began the above-captioned chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").   Grace, Grace-Conn. and GEC were among the Debtors.   The general bar date for prepetition unsecured claims was March 31, 2003 (the "<u>Claims Bar Date</u>"), as provided for in this Court's *Order as to All Non-Asbestos Claims. Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms and (III) Approving Notice Program*, dated April 22, 2002 [Docket no. 1963] (the "<u>Bar Date Order</u>").

      4.      Beginning in March 2003, SGH filed a number of proofs of claim (the "<u>SGH Proofs of Claim</u>"):

| CLAIM NO. | DATE FILED | ORIGINAL DEBTOR | AMOUNT |
|---|---|---|---|
| 13946 | 3/31/03 | GEC | $7,958,774.60 |
| 13947 | 3/31/03 | Grace-Conn. | $7,958,774.60 |
| 18518 | 4/10/09 | Grace-Conn. | $9,289,309.10 |
| 18520 | 5/1/09 | Grace-Conn. | $9,289,309.10 |
| 18521 | 5/1/09 | GEC | $9,289,309.10 |
| 18526 | 8/7/09 | Grace-Conn. | $92,717,705.03 |
| 18527 | 8/7/09 | GEC | $92,717,705.03 |
| 18551 | 7/31/12 | Grace-Conn. | $94,232,954.99 |
| 18552 | 7/31/12 | GEC | $94,232,954.99 |

    B.   **Grace's Emergence From Bankruptcy**

      5.      On January 31, 2011, the Bankruptcy Court entered its *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of*

*Reorganization as Modified Through December 23, 2010* [Docket No. 26155], and on February 15, 2011, the Bankruptcy Court entered its *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010* [Docket No. 26289] (collectively, the "Confirmation Order"). On February 3, 2014, the Reorganized Debtors substantially consummated the transactions contemplated by the Plan and emerged from chapter 11, as set forth in the Reorganized Debtors' *Notice of Occurrence of the Effective Date of the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace and Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders As Modified Through December 23, 2010*, dated February 13, 2014 [Docket no. 31732].

6.      On March 19, 2014, the Bankruptcy Court entered its *Final Decree (A) Closing Certain of The Chapter 11 Cases, (B) Removing Certain of The Chapter 11 Cases From The Joint Administration Order, and (C) Waiving the Requirement That the Reorganized Debtors File a Final Report For the Merged Subsidiaries* [Docket no. 31880], which closed the cases of 45 of the Reorganized Debtors (the "Merged Subsidiaries Case Closing Order"). On October 14, 2014, the Bankruptcy Court entered its *Final Decree: (A) Closing Certain of the Chapter 11 Cases; (B) Removing Such Cases From the Joint Administration Order; and (C) Waiving The Requirement to File a Final Report For Such Cases* [Docket no. 32429-1] (the "Second Case Closing Order"), closing a further 15 cases, including that of GEC. Only the Grace and Grace-Conn. chapter 11 cases remain open. The Merged Subsidiaries Case Closing Order and the Second Case Closing Order provided that all open and unresolved claims against the Reorganized Debtors (including but not limited to the SGH Claims) remained unaffected by the closing of the Reorganized Debtors' chapter 11 cases except for those of Grace and Grace-Conn.

C.    **The Claims Objection, SGH Response and Scheduling Order**

7.    On August 18, 2015, the Reorganized Debtors filed their Claims Objection.  On October 19, 2015, SGH filed its SGH Response.

8.    On March 15, 2016, the Bankruptcy Court entered its Scheduling Order, which provided, *inter alia*, that the parties were to file their respective pre-discovery summary judgment motions no later than May 31, 2016.  On May 24, 2016, the Bankruptcy Court entered its Amended Scheduling Order, extending the deadline to file such summary judgment motions until June 15, 2016.  On June 13, 2016, the Bankruptcy Court entered its Second Amended Scheduling Order, extending the deadline to file such summary judgment motions until June 29, 2016.

9.    On June 27, 2016, the Court entered its Third Amended Scheduling Order, extending the deadline to file such summary judgment motions until August 11, 2016, which is three weeks after the date (July 21, 2016) on which the Court is scheduled to hear this Motion.

II.    **THE 1992 SALE OF GPC STOCK BY GEC TO SAMSON INVESTMENT AND SUBSEQUENT DEALINGS BETWEEN GRACE AND SAMSON**

A.    **The 1992 Sale of GPC Stock by GEC to Samson Investment**

10.    As discussed above, SGH filed nine claims for indemnification for various environmental issues, totaling approximately $94,232,954.99, based upon certain indemnification provisions set forth in that certain *Agreement for the Purchase and Sale of the Stock of Grace Petroleum Corporation* (the "1992 Stock Purchase Agreement"), dated as of December 30, 1992, by and between Grace Energy Corporation ("GEC," referred to therein as "Seller") and Samson Investment Company ("Samson Investment," referred to therein as "Purchaser").  The 1992 Stock Purchase Agreement documents a transaction in which, on the "Closing Date" of January 21, 1993, GEC sold the stock (the "GPC Stock Sale Transaction") of

a subsidiary, Grace Petroleum Corporation ("GPC"), to Samson Investment (whereby GPC—renamed as described below—became a subsidiary of Samson Investment). *See* E. Mack letter to DOJ and EPA dated 8-21-2000, attached to the Finke Declaration as Exhibit 7 (the "Mack 8/21/2000 Letter"). The consideration was $125 million, subject to series of purchase price adjustments. 1992 Stock Purchase Agreement at Art. 2. GPC was an oil production company with significant oil-producing properties and related facilities located in several states (although not in California). *See* Mack 8/21/00 Letter; 1992 Stock Purchase Agreement, *passim*.

11.    The 1992 Stock Purchase Agreement provided in relevant part in section 13.03(a) that Grace-Conn. and GEC would indemnify and hold Samson Investment (as Purchaser) and "the Corporations" (which comprised GPC and certain of its subsidiaries) harmless for "Damages" arising from the environmental condition of certain categories of properties, as well as for certain "Third Party Claims" that arose prior to the Closing Date. 1992 Stock Purchase Agreement at § 13.03(a).

12.    Subsequent to the Closing Date, GPC's name was changed, first to Samson Natural Gas Company, then to SNG Production Company, then to Samson Hydrocarbons Company ("SHC"). In July 2009, Samson Hydrocarbons Company's name was changed to SGH Enterprises, Inc.[4] *See* Stipulation; Del. Sec'y of State Certification, dated July 23, 2009, attached to the Finke Declaration as Exhibit 9.

**B.    The 1994 and 1998 Settlement and Release Agreements**

13.    Effective as of March 31, 1994, GEC and Samson Investment entered into the Settlement and Release Agreement, which settled price adjustment issues not relevant to the

---

[4]    Despite the name-change in July 2009, Claim nos. 18526 and 18527 were nonetheless filed on August 7, 2009, identifying the claimant as "Samson Hydrocarbons Company." On July 31, 2012, Claims nos. 18551 and 18552 were filed with the claimant identified as SGH.

Stipulation or the SGH Claims.  The Settlement and Release Agreement also settled various indemnity claims made by Samson Investment.  *See* Stipulation; Settlement and Release Agreement dated March 31, 1994, attached as <u>Exhibit 2</u> to the Finke Declaration.

14.     Effective as of November 30, 1998, GEC and Samson Investment entered into the Second Settlement and Release Agreement.  *See* Stipulation; Second Settlement and Release Agreement, attached as <u>Exhibit 3</u> to the Finke Declaration.  The Second Settlement and Release Agreement provided for Grace to make a $1.8 million settlement payment in settlement of additional claims for indemnification made by Samson Investment against Grace after the date of the Settlement and Release Agreement.  *See* Second Settlement and Release Agreement.

## III.    THE SGH CLAIMS

### A.     Settlement of the Otis Pipeline Claim

15.     $77,071,785.32 of the $94,232,954.99 indemnification claim asserted by the SGH Claims was attributable to the "Otis Pipeline" matter.  In early 2012, Samson Investments and SGH and the then-Debtors resolved that matter pursuant to a Private Parties Settlement Agreement between, *inter alia*, Samson Investment, SGH and GEC, Grace and Grace-Conn.  *See* Stipulation; Private Parties Settlement Agreement, attached as <u>Exhibit B</u> to the Debtors' *Motion for Entry of an Order Approving Settlement*, filed on February 13, 2012 [Docket no. 28523] (the "<u>Otis Pipeline Motion</u>").  The Otis Pipeline Motion requested the Bankruptcy Court enter an order approving, *inter alia*, the Private Parties Settlement Agreement, as well as to authorize a payment of $7,440,000 on the Plan's Effective Date in satisfaction of SGH's Otis Pipeline claim, the right to which payment SGH transferred to the United States.  On March 15, 2012, the Bankruptcy Court entered its *Order Approving Compromise and Settlement* [Docket 28668] (the "<u>Otis Pipeline Order</u>"), approving the Private Parties Settlement Agreement and authorizing the payment.  *See* Stipulation.

### B.    SGH's Remaining Claims

16.    The total remaining amount of the SGH Claim is $17,161,169.67, plus certain contingent and unliquidated claims, comprising several separate indemnification claims.

#### 1.    *The Fort Peck/GPC East Poplar Working Interest Indemnification Issue*

17.    Claimant has asserted a claim for approximately $9,245,960.64 allegedly caused by a well in the East Poplar Unit (the "Fort Peck Claim"), located in Roosevelt County, MT, in which GPC owned a working interest from approximately 1978 to 1986, when the working interest was sold.  The claim is based upon several emergency administrative orders and consent decrees filed by the EPA over the years, and on certain "60-day notices" issued by the City of Poplar.  Objection at ¶ 9.  SGH has satisfied all of its obligations under the administrative orders and consent decrees.  SGH Response at ¶¶ 26-27.

18.    Approximately $2,045,960.64 of SGH's Fort Peck indemnification is for out-of-pocket expenses.  The remaining $7,200,000 claimed is contingent and unliquidated.  SGH Claim No. 18551.

19.    In their Claims Objection, the Reorganized Debtors objected to the out-of-pocket expenses to the extent that they were insufficiently supported by documentation.  They objected to the contingent and unliquidated portion of the Fort Peck Claim on the basis that, as of the date of the Claims Objection, SGH had no remaining obligations arising from the East Poplar Unit. Objection at ¶ 35.

#### 2.    *The Casmalia Site Claim and Joint Defense Agreement*

20.    On or about February 7, 2000, the EPA pursuant to its authority under the *Comprehensive Environmental Response, Compensation and Liability Act of 1980*, as amended, 42 U.S.C. §§ 9601 et seq. ("CERCLA") and the  Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. ("RCRA") named Grace "or an affiliated entity" as a potentially

responsible party ("PRP") in the alleged disposal of waste at a third-party-owned commercial waste disposal site (the "Casmalia Site"). *See* SGH Claim 18551; Objection at ¶¶ 23-26; *See General Notice Letter and Tolling Agreement, Casmalia Disposal Site, Santa Barbara County, CA*, at 2 (enclosed with the K. W. Lund letter to C. P. Tholen, dated March 31, 2000 (the "Lund Letter"), which is attached to the Finke Declaration as Exhibit 4.   Grace asserted to Samson Investment and SGH that Grace was not liable for indemnification of costs relating to the Casmalia Site and that SGH was so liable. *See* Lund Letter.  Samson Investment and SGH in turn asserted that Grace and GEC were liable. *See* SGH Claim 18851; Objection at ¶¶ 23-26; Mack 8/21/00 Letter. In an attempt to resolve or at least suspend their disputes with each other, effective as of January 31, 2001, Grace and GEC entered into a *Payment of Settlement, Joint Defense, and Confidentiality Agreement* (attached to the Finke Declaration as Exhibit 8) with Samson Investment and SGH. Objection at ¶ 26.  In 2003, subsequent to the commencement of the above-captioned chapter 11 cases, the District Court for the Central District of California entered a consent decree resolving the EPA's claims against SGH and others regarding the Casmalia Site (the "Casmalia Consent Decree").   The Casmalia Consent Decree provided in relevant part that SGH make a $6,067,323 settlement payment to EPA for remediation at the Casmalia Site, which SGH has asserted that it did.  SGH Response at ¶ 21.

21.     SGH has also asserted an additional, approximately $1.1 million for legal expenses and a contingent claim.  SGH Claim No. 18551.

22.     As discussed in the SGH Claims Objection, the Reorganized Debtors have asserted that SGH's claim for costs relating to the Casmalia Site is not indemnifiable under any of the 1992 Stock Purchase Agreement's surviving indemnification provisions.  Objection at ¶ 39.

### 3.    *The Ellison Claim*

23.    Claimant asserted in the SGH Claims that the Reorganized Debtors are liable for $182,509.38 in attorneys' fees and a settlement payment of $25,000 relating to certain litigation captioned, *Ellison v. FPC Disposal, Inc.*, Case No. CV-99-151-1 (OK. Dist. Ct., Canadian County) (the "Ellison Litigation"). SGH Claim 18551. As discussed in the SGH Claims Objection, the Reorganized Debtors have asserted that SGH's claim for costs relating to the Ellison Litigation is not indemnifiable under any of the 1992 Stock Purchase Agreement's surviving indemnification provisions. Objection at ¶¶ 41-43.

### 4.    *Youpee Litigation*

24.    The Youpee Litigation (as that term is defined in the SGH Claim) was also allegedly caused by East Poplar Unit well. The litigation was settled for $210,000. SGH asserted an additional approximately $128,026 for legal and other out-of-pocket expenses. SGH Claim 18551. The Reorganized Debtors did not object to SGH's right to indemnification, but instead objected to the lack of sufficient documentation and other proof substantiating that indemnification claim. Objection at ¶¶ 36-37.

### 5.    *Cushing Field Litigation*

25.    SGH asserted a claim for litigation expenses in the amount of $180,995.34, relating to litigation involving certain oil and gas development rights that GPC held from 1979 through 1985 at the Cushing Field in Creek County, Oklahoma. SGH Claim 18551. The Reorganized Debtors objected in the Claims Objection based upon a lack of sufficient documentation substantiating that indemnification claim, as well as on other, similar bases. Objection at ¶ 40.

### 6.    *Placerita Litigation*

26.    SGH asserted a claim for indemnification for a $25,000 payment in settlement of, and $14,125.51 in attorneys' fees and costs relating to, certain litigation captioned, *Petro Resources, Inc., v. N.Y. Hillside, Inc., et al.,* Case no. BC 222456 (Cal. Sup. Ct.).  SGH Claim 18551.  The Reorganized Debtors did not object to SGH's right to indemnification, but instead objected in the Claims Objection only based upon a lack of sufficient documentation substantiating that indemnification claim, as well as on other, similar bases.  Objection at ¶¶ 44-48.

## IV.    THE SETTLEMENT

27.    On June 22, 2016, SGH and the Reorganized Debtors executed the Stipulation, a true and correct copy of which is attached as Exhibit 1 to the form of Approval Order.

28.    Of the nine SGH Claims, one claim, Claim no. 18551 (the "SGH Allowed Claim"), is to be Allowed as an Allowed General Unsecured Claim in the Allowed Amount of $3,450,000 (the "Settlement Amount"), which Settlement Amount will include any and all interest due under the Plan.  Notwithstanding the terms of the Plan, no further interest will accrue on the Settlement Amount.  Claim nos. 13946, 13947, 18518, 18520, 18521, 18526, 18527 and 18552 shall be disallowed and expunged for all purposes (the "Disallowed Claims").  SGH is to have no other Allowed Claims in the above-captioned chapter 11 cases.  The Stipulation also provides certain disclosures, admissions and stipulations of fact, including but not limited to SGH's admission and representation that "[a]s of the Petition Date, none of the 1992 Stock Purchase Agreement, the Settlement and Release Agreement and the Second Settlement and Release Agreement were executory contracts as that term is used in Bankruptcy Code section 365."  Stipulation at ¶ 5.b.  Nothing in the Stipulation is to be construed to affect the continuing rights and obligations of SGH, the Reorganized Debtors or any of the other Private Parties under

the Private Parties Settlement Agreement, any other aspect of the relief granted by the Court in the Otis Pipeline Order, or any aspect of the related consent decree entered by the United States District Court for the District of Massachusetts.

### RELIEF REQUESTED

29.     The Reorganized Debtors respectfully request the Court enter the Approval Order: (i) approving the Stipulation; (ii) Allowing Claim no. 18551 on the terms and conditions set forth in the Stipulation; (iii) disallowing the remaining SGH Claims; (iv) dismissing the Claims Objection and the SGH Response as moot; (v) withdrawing as moot the Court's Scheduling Order, Amended Scheduling Order and Second Amended Scheduling Order; and (vi) granting such other relief as may be appropriate.

### ANALYSIS

30.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "(t)he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Fed. R. Bankr. P. 9019(a) provides in pertinent part that "(o)n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

31.     Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Nortel Networks, Inc.*, 522 B.R. 491, 509 (Bankr. D. Del. 2014). Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. *Martin*, 91 F.3d at 393; *Nortel*, 522 B.R. at 509.

32.     Before approving a settlement under Fed. R. Bankr. P. 9019(a), however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Martin*, 91 F.3d at 394; *In re Tribune Co.*, 464 B.R. 126, 158 (Bankr. D. Del. 2011) ("[T]he decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate") (internal citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393; *Tribune Co.*, 464 B.R. at 158.

33.     The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *see also In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006); *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012); *Tribune Co.*, 464 B.R. at 158.

34.     It is also well-settled that a court need not conduct a "mini-trial" on the merits in analyzing a settlement or compromise under the *Martin* factors, but "rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Grace*, 475 B.R. at 78 (internal quotation marks and citations omitted). Indeed, "in evaluating the fairness of a settlement, the court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement falls within a reasonable range of litigation possibilities." *Tribune Co.*, 464 B.R. at 158 (internal quotation marks and citations omitted); *see also Grace*, 475 B.R. at 78.

35.    The Stipulation settles the SGH Claim which comprises $17,161,169.67 in principal plus more than $10 million of Plan interest (which as of the date hereof, totals more than $27 million), for $3,450,000 (including all Plan interest). The Stipulation also contains relevant releases, representations and admissions that will benefit the Reorganized Debtors going forward. The Reorganized Debtors have therefore determined in their business judgment that the Settlement Amount is as favorable an outcome that they could achieve without extensive, complex, lengthy and likely expensive litigation. The Stipulation thus well more than satisfies the *Martin* factors. *Martin*, 91 F.3d at 393; *see also Tribune Co.*, 464 B.R. at 158 (internal quotation marks and citations omitted); *Grace*, 475 B.R. at 78.

36.    In view of the substantial benefits derived from the Stipulation, the Reorganized Debtors respectfully submit that the Court should enter the Approval Order substantially in the form attached hereto, approving the Stipulation, and allowing Claim no. 18551 in the amount of $3,450,000, inclusive of principal and Plan interest, with no further interest being payable under the Plan.

## NO PREVIOUS MOTION

37.    No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

38.    Notice of this Motion has been given to:  (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service

and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) SGH.  In light of the

nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, The Reorganized Debtors respectfully request the Court enter the Approval Order substantially in the form attached to this Motion as <u>Exhibit A</u>: (i) approving the Stipulation; (ii) Allowing Claim no. 18551 in the Allowed Amount of $3,450,000 (including principal and all Plan interest) on the terms and conditions set forth in the Stipulation; (iii) disallowing the remaining SGH Claims; (iv) dismissing the Claims Objection and the SGH Response as moot; (v) withdrawing as moot the Court's Scheduling Order, Amended Scheduling Order and Second Amended Scheduling Order; and (vi) granting such other relief as may be appropriate..

Dated: June 29, 2016

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors