**Exhibit B**

Sacripanti Declaration

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Case No. 01-01139 (KJC) |
| W.R. GRACE & CO., *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

## DECLARATION OF PETER JOHN SACRIPANTI IN SUPPORT OF THE MOTION OF HONEYWELL INTERNATIONAL INC. FOR ACCESS TO RULE 2019 EXHIBITS

I, Peter John Sacripanti, submit this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 and declare as follows:

1.    I am a partner with the law firm of McDermott Will & Emery LLP, which maintains offices throughout the United States and elsewhere, including an office at 340 Madison Avenue, New York, New York, 10173. I am a member in good standing with the bars of the State of New York, the State of New Jersey, and the District of Columbia.

2.    I submit this declaration in support of the *Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits* (the "Motion")[1] filed concurrently herewith.

3.    Honeywell is a diversified technology and manufacturing company. Through its friction materials business unit, Honeywell has historically been a global supplier of automotive brake friction materials and aftermarket brake products. These "Bendix" products, as they are called, are the subject of numerous lawsuits in the tort system commenced by plaintiffs who allege they were exposed to asbestos from Bendix friction products (the "Bendix Litigation").

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

4.      In addition to Honeywell's role as a defendant in the asbestos tort system, Honeywell is obligated to fund practically all obligations of the NARCO Trust pursuant to the Trust Agreement.

5.      Specifically, subject to certain limitations and exceptions, Honeywell is obligated, *in perpetuity*, to fund (i) all distributions made by the NARCO Trust on account of asbestos injury claims, up to certain capped amounts (in excess of $100 million) each year, and (ii) all of the NARCO Trust's expenses.

6.      I have represented Honeywell as counsel in various capacities for more than ten years, and I oversee and am responsible for both the Bendix Litigation and matters relating to the NARCO Trust.

7.      Honeywell has significant and legitimate concerns about fraudulent claims filed against Honeywell in the tort system and against the NARCO Trust.

8.      Honeywell intends to review and analyze all aspects of the NARCO Trust's operations, including, without limitation, its claims processing procedures and the claims submitted to the NARCO Trust under the individual review and expedited review processes. The valuable information contained in the 2019 Exhibits will help to ensure that the purpose of the NARCO Trust, which is to promptly pay holders of "valid" claims, is fulfilled, and that Honeywell appropriately compensates asbestos plaintiffs in the tort system, to the extent such plaintiffs have valid claims.

9.      In addition, Honeywell intends to produce the 2019 Exhibits to the NARCO Trust to be used in connection with the NARCO Trust's own review of claims that it receives from asbestos claimants.  Payment of invalid or fraudulent claims violates the NARCO Trust's mandate and operates to the detriment of not only Honeywell—by forcing Honeywell to

contribute money for invalid claims submitted to the NARCO Trust—but also the holders of valid claims, whose payments will necessarily be delayed (without interest) because of certain distribution caps imposed on the NARCO Trust. Honeywell, therefore, has a very real and timely need to access the 2019 Exhibits and use them in furtherance of its efforts to ferret out invalid or fraudulent asbestos claims.

10.     Given the large number of interested parties in these chapter 11 cases, Honeywell retained a third party vendor to prepare notice mailing lists that include all parties entitled to receive notice in these chapter 11 cases, including all law firms that filed 2019 Exhibits.

11.     Attached hereto as **Exhibit 1** is the *Amendatory Order Requiring Filing of Statements Pursuant to Fed.R.Bankr.P. 2019* [Docket No. 6275].

12.     Attached hereto as **Exhibit 2** is the First Amended North American Refractories Company Asbestos Personal Injury Settlement Trust Agreement.

13.     Attached hereto as **Exhibit 3** is the First Amended North American Refractories Company Asbestos Personal Injury Settlement Trust Distribution Procedures.

I declare under penalty of perjury under the laws of the United States and the State of

New York that the foregoing is true and correct.


Dated:  June 30, 2016
        New York, New York

                                    /s/ Peter John Sacripanti
                                    Peter John Sacripanti

**Exhibit 1**

2019 Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT DELAWARE

| In Re | Bankruptcy No. |
|---|---|
| Owens Corning, | 00-3837-JKF |
| W.R. Grace & Co. | 01-1139-JKF |
| USG Corporation | 01-2094-JKF |
| United States Mineral Products Company | 01-2471-JKF |
| Kaiser Aluminum Corporation | 02-10429-JKF |
| The Flintkote Company | 04-11300-JKF |
| Flintkote Mines Limited | 04-12440 |
| Debtor(s) | Chapter 11 |

## AMENDATORY ORDER REQUIRING FILING OF STATEMENTS PURSUANT TO FED.R.BANKR.P. 2019

**AND NOW**, this **27th** day of **August, 2004**, it is **ORDERED** that the Order entered on August 25, 2004, is amended and replaced in full as follows:

On or before **October 25, 2004,** counsel representing more than one creditor or equity security holder shall electronically file and serve the statement required by Fed.R.Bankr.P. 2019 without exhibits. The docket entry of the statement that is filed shall state that Exhibits (as defined below) have not been scanned into the docket but are available from the Clerk through Parcels, Inc., 1-800-343-1742. The docket entry shall be in substantially the following format:

> Verified Statement Pursuant to Fed.R.Bankr.P. 2019 filed by [INSERT FILING PARTY'S NAME]. Exhibits have not been scanned and are available from the Clerk through Parcels, Inc., 1-800-343-1742.

It is **FURTHER ORDERED** that exhibits required to be filed and listed below shall **not**

be electronically filed but shall be submitted to the Clerk on compact disk ("CD"). Two sets of

CDs shall be submitted and shall be identified on their faces as "Set 1" and "Set 2" and shall note

the name, address, and telephone number of the attorney and firm submitting the disks. The CDs

shall contain electronic folders, one for each claimant, and claimants shall be listed in

alphabetical order. Each folder shall be denominated **Surname_FirstName**. Within the folder

the following exhibits shall be included, in the order listed:

- a table of contents listing each claimant by last name then first name and for each claimant Exhibit A and Exhibit B, subparts 1 through 7 as described below; if information required to be submitted as Exhibit A or Exhibit B items 1 through 7 does not exist for a particular claimant, the table of contents shall so state.

- Exhibit A shall consist of copies of any powers of attorney or other agreement or instrument whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders.

- Exhibit B shall consist of all of the following:

(1) the name and address of creditor or equity security holder;

(2) the last four digits of the Social Security Number of any such creditor or equity security holder;

(3) the nature and amount of the claim or interest and the time of acquisition thereof **or** an allegation that the claim or interest was acquired more than one year prepetition;

(4) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; **and**

(5) with reference to the time of the employment of the entity, the organization or formation of the committee, or the appearance in the case of any indenture trustee,

- the amounts of claims or interests owned by the entity, the committee members or the indenture trustee
- the times acquired
- the amounts paid therefor, and
- any sales or other disposition thereof

(6)  a description of how counsel became involved with the claimant.

(7)  a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors or equity security holders.

It is **FURTHER ORDERED** that each filing attorney shall submit, in addition to the CD(s) containing claimant folders, **a Master Index**, also in compact disk format, that lists all claimants represented by the filing attorney in alphabetical order.   The CD containing the Master Index shall note on its face that it is the "Master Index" and shall list the name, address, and telephone number of the attorney and firm submitting it.

It is **FURTHER ORDERED** that the obligation set forth above is a continuing obligation and, therefore, supplemental statements setting forth any material change in the facts contained in the statement shall be submitted, in CD format, 30 days after the end of each 60 day period.  The initial supplemental filing date shall be **February 1, 2005**, covering the period from the date the first 2019 statement is filed through December 31, 2004.  Contemporaneous with the submission of any supplemental CD, the filing attorney shall electronically file a Notice of Submission of Supplement to Rule 2019 Statement.

It is **FURTHER ORDERED** that when the case is closed, the Clerk shall archive the CDs with the case file.

It is **FURTHER ORDERED** that counsel for Debtor(s) shall serve a copy of this order on the Service List, on all counsel who have entered, or in the future enter, an appearance or have

requested, or in the future request, notices in the case, and the U.S. Trustee, and on any

supplemental service lists used to notify attorneys for claimants with asbestos personal or

property damage injuries..

*Judith K. Fitzgerald*

Judith K. Fitzgerald
United States Bankruptcy Judge

**Exhibit 2**

Trust Agreement

**FIRST AMENDED NORTH AMERICAN REFRACTORIES COMPANY**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST AGREEMENT**

This First Amended North American Refractories Company Asbestos Personal Injury Settlement Trust Agreement (the "**NARCO Asbestos Trust Agreement**") is entered into by and among Honeywell International Inc. ("**Honeywell**"), and Ken M. Kawaichi, Richard B. Schiro and Mark M. Gleason ("**Trustees**"), **Wilmington Trust, National Association, as Delaware resident trustee (the "Delaware Trustee**"), the **NARCO Trust Advisory Committee ("NARCO Asbestos TAC**"), and the **Bankruptcy Court-appointed NARCO Asbestos Future Claimants Representative ("NARCO Asbestos Future Claimants Representative**" and collectively with **Honeywell, the Trustees, the Delaware Trustee, and the NARCO Asbestos TAC the "Parties**"), pursuant to the Third Amended Plan of Reorganization of North American Refractories Company, et al., dated December 28, 2005 (the "**Plan**").

WHEREAS, North American Refractories Company ("**NARCO**") and its affiliated debtors (collectively, the "**Debtors**") have reorganized under the provisions of Chapter 11 of the Bankruptcy Code in cases pending in the United States Bankruptcy Court for the Western District of Pennsylvania known as *In re North American Refractories Company, et al.*, Jointly Administered as Case No. 02-20198 (the "**Chapter 11 Cases**"); and

WHEREAS, at the time of the entry of the order for relief in the Chapter 11 Cases, each of NARCO and Honeywell had been named as defendants in personal injury and wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing NARCO Product Line products; and

WHEREAS, by order entered on November 13, 2007, the Plan, filed by the Debtors, in coordination with Honeywell, the Bankruptcy Court-appointed committee composed of the representatives of the NARCO Asbestos claimants ("**NARCO Asbestos Claimants' Committee**") and the **NARCO Asbestos Future Claimants Representative**, was confirmed by the Bankruptcy Court ("**Confirmation Order**"); and

WHEREAS, on July 25, 2008, the United States District Court for the Western District of Pennsylvania entered an order affirming the Confirmation Order and the NARCO Channeling Injunction; and

WHEREAS, the Plan provides, *inter alia*, for the creation of the North American Refractories Asbestos Personal Injury Settlement Trust (the "**NARCO Asbestos Trust**"); and

WHEREAS, pursuant to the Plan, the NARCO Asbestos Trust is to be funded in part by an initial cash contribution by Honeywell and by the obligation of Honeywell to make future payments; and

WHEREAS, pursuant to the Plan, the NARCO Asbestos Trust is to effectively own all of the equity of Reorganized NARCO, by owning no less than 79% of the equity of Post-Effective ANH Refractories Company ("**ANH**"); and

WHEREAS, pursuant to the Plan, the NARCO Asbestos Trust is to use the NARCO Asbestos Trust Assets and income to pay all valid NARCO Asbestos Trust Claims and NARCO Asbestos Demands ("**NARCO Asbestos Trust Claims**") pursuant to the NARCO Asbestos TDP; and

WHEREAS, the Plan provides, among other things, for the complete settlement and satisfaction of all liabilities and obligations of the Debtors and Honeywell for all NARCO Asbestos Trust Claims, and

WHEREAS, pursuant to the Plan, the NARCO Asbestos Trust is intended to qualify as a "Qualified Settlement Fund" within the meaning of Section 1.468B-I of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code; and

WHEREAS, the Bankruptcy Court has determined that the NARCO Asbestos Trust and the Plan satisfy all the prerequisites for the issuance of a supplemental injunction pursuant to Section 524(g) of the Bankruptcy Code, which NARCO Channeling Injunction has been issued in connection with the Confirmation Order, which is now a Final Order;

NOW, THEREFORE, the Parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS

All capitalized terms used herein and not otherwise defined in a provision of this NARCO Asbestos Trust Agreement or in the North American Refractories Company Asbestos Personal Injury Settlement Trust Distribution Procedures attached to the Plan as Exhibit NARCO B (the "**NARCO Asbestos TDP**"), shall have the meanings assigned to them in the Plan and/or the Bankruptcy Code, which definitions are incorporated herein.

## ARTICLE II

## AGREEMENT OF TRUST

2.1.    Creation and Name. Pursuant to the North American Refractories Company Asbestos Personal Injury Settlement Trust Agreement, dated as of April 30, 2013, NARCO, ANH, and Honeywell (collectively, the "**Settlors**") created the NARCO Asbestos Trust as provided for and referred to in the Plan. The Trustees of the NARCO Asbestos Trust may transact the business and affairs of the NARCO Asbestos Trust in the name, "North American Refractories Company Asbestos Personal Injury Settlement Trust" or "NARCO Asbestos Trust." It is the intention of the Parties hereto that the trust be a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. §3801 et seq. (the "**Act**"). The Trustees and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto.

2.2.    Purpose. The purpose of the NARCO Asbestos Trust is to assume, subject to Section 2.3(d) hereof, any and all liabilities of Honeywell, any Honeywell Affiliate, the Debtors,

2

their successors or predecessors in interest or their affiliates, with respect to any and all NARCO Asbestos Trust Claims, both presently accrued or prospectively accruing; to use the NARCO Asbestos Trust Assets and income to promptly pay holders of valid NARCO Asbestos Trust Claims in such a way that holders of similar NARCO Asbestos Trust Claims are paid in substantially the same manner; and to otherwise comply in all respects with the requirements of a trust set forth in Section 524(g)(2)(B)(i) of the Bankruptcy Code. This purpose shall be fulfilled through the provisions of this NARCO Asbestos Trust Agreement, the Trust Bylaws and in accordance with the NARCO Asbestos TDP.

2.3.    Funding of the NARCO Asbestos Trust.

(a)    Creation of Trust Expense Fund and Claims Funds.  On the Effective Date, the Trustees shall create a Trust Expense Fund and two claims funds, the Annual Contribution Claims Fund described in Section 2.3(c)(i)(A) below and the Pre-Established Claims Fund described in Section 2.3(c)(i)(B) below. The Trust Expense Fund shall be used to pay all Trust Expenses of the NARCO Asbestos Trust in accordance with the terms and conditions of this NARCO Asbestos Trust Agreement. The Annual Contribution Claims Fund shall be used to pay valid NARCO Asbestos Trust Claims (other than Pre-Established Claims) that have been liquidated pursuant to all relevant provisions of the NARCO Asbestos TDP and placed in the NARCO Asbestos Trust's Annual Contribution Claims Fund Payment Queue established by Section 4.1(c) of the NARCO Asbestos TDP. The Pre-Established Claims Fund shall be used to pay, to the extent not previously paid, valid NARCO Asbestos Trust Claims that have been established, liquidated and placed in the NARCO Asbestos Trust's Pre-Established Claims Fund Payment Queue pursuant to Section 4.2(a) of the NARCO Asbestos TDP.

(b)    Funding of the Trust Expense Fund.  On the Effective Date, Honeywell shall transfer to the NARCO Asbestos Trust the sum of $6,261,465.00 dollars, which is an amount estimated to be sufficient to pay all Trust Expenses until December 31, 2013. Thereafter, no later than the 15th day of the month preceding each calendar quarter, Honeywell shall deposit into the Trust Expense Fund twenty-five percent (25%) (or such other percentage as Honeywell and the NARCO Asbestos Trust may agree) of the Final Administrative Budget, as defined and determined in accordance with Section 3.4 hereof, for payment of Trust Expenses for the upcoming quarter.

(c)    Funding of the Claims Funds.

(i)    In General.  Subject to other provisions of this Section 2.3(c), as soon as reasonably practicable following the end of each calendar quarter, the NARCO Asbestos Trust shall give Honeywell written notice of the claimants' names, social security numbers and the individual values relating to all NARCO Asbestos Trust Claims, as well as the total number and total value thereof, that were liquidated and entered into the Annual Contribution Claims Fund Payment Queue during the prior quarter for payment from the Annual Contribution Claims Fund. The NARCO Asbestos Trust shall also give Honeywell written notice of the claimants' names, social security numbers, and individual values relating to all Pre-Established Claims that were approved for payment from the Pre-Established

3

Claims Fund and entered into the Pre-Established Claims Fund Payment Queue during the prior quarter for payment from the Pre-Established Claims Fund. Any disputes between the NARCO Asbestos Trust and Honeywell as to whether a NARCO Asbestos Trust Claim is a Pre-Established Claim and/or over the liquidated amount of a Pre-Established Claim shall be resolved pursuant to the dispute resolution procedures set forth in Section 8.14 below.

The NARCO Asbestos Trust shall also identify any amounts received by the NARCO Asbestos Trust during that quarter from any of its holdings. Honeywell shall, within thirty (30) days of its receipt of the information identified in this and in the preceding paragraph, transfer to each of the two Claims Funds an amount of cash equal to the amount of claims approved for payment from the respective Claims Fund, minus any amounts received by the NARCO Asbestos Trust during that quarter from any of its holdings, subject to the remaining provisions of this Section 2.3(c).

(A) The Annual Contribution Claims Fund .

(I)  Caps on Honeywell's Obligation to Contribute to the Fund. Pursuant to the Plan and this NARCO Asbestos Trust Agreement, Honeywell's obligation to make quarterly contributions to the NARCO Asbestos Trust's Annual Contribution Claims Fund is subject to the annual Caps set forth below ("**Caps**"). Except as provided in Section 2.3(c)(i)(A)(II) hereof, the amount Honeywell contributes to the Annual Contribution Claims Fund to pay NARCO Asbestos Trust Claims other than Pre-Established Claims shall not exceed such Caps  for each year beginning with the year in which the Effective Date occurs:

| | |
|---|---|
| 2006 | $100,000,000 |
| 2007 | $125,000,000 |
| 2008 | $150,000,000 |
| 2009 | $150,000,000 |
| 2010 | $150,000,000 |
| 2011 | $150,000,000 |
| 2012 | $150,000,000 |
| 2013 | $150,000,000 |
| 2014 | $140,000,000 |
| 2015 | $140,000,000 |
| 2016 | $140,000,000 |
| 2017 | $140,000,000 |
| 2018 | $140,000,000 |
| 2019 | $145,000,000 |
| 2020 | $145,000,000 |
| 2021 | $145,000,000 |

In 2022 and thereafter, Honeywell's contribution during the course of any one year to the Annual Contribution Claims Fund shall not exceed $145,000,000.

In determining the amount of Honeywell's funding obligation for any single year (up to the annual Cap for that year), the Trustees shall hold any and all income derived from the New Debtor Common Stock, and any proceeds received by the Trustees from the sale of the New Debtor Common Stock, pursuant to Section 2.3(c)(ii)(B) or Section 8.3(b), hereof, for the payment of NARCO Asbestos Trust Claims other than Pre-Established Claims. So long as there are funds available to the NARCO Asbestos Trust in any given quarter from such New Debtor Common Stock income and/or sale proceeds, or from any source other than Honeywell, Honeywell's quarterly funding obligations under this Section 2.3(c)(i) shall be reduced dollar for dollar by the amount of funds from sources other than Honeywell. However, on a calendar year basis, Honeywell shall nevertheless be obligated to fund payment of NARCO Asbestos Trust Claims up to the annual Cap set forth in this Section 2.3(c)(i)(A) to the extent that the total aggregate amount of NARCO Asbestos Trust Claims placed in the Annual Contribution Fund Payment Queue for the calendar year in question exceeds the amount received that year by the NARCO Asbestos Trust from sources other than Honeywell.

(II)    Carryover of Honeywell's 2006 Annual Contribution. If the NARCO Asbestos Trust does not liquidate NARCO Asbestos Trust Claims payable from the Annual Contribution Fund in sufficient value in its fiscal year beginning in calendar year 2006 to expend the $100,000,000 Cap for that year, then the unused balance of that $100,000,000 shall be available to the Trust's Annual Contribution Claims Fund during the NARCO Asbestos Trust's immediately subsequent fiscal year or years to liquidate claims that are subject to the foregoing Caps.

The NARCO Asbestos Trust shall account for this carryover availability on a first-in/first-out basis and the unused balance of the $100,000,000 shall be exhausted before funds attributable to any subsequent year's Cap shall become available to the NARCO Asbestos Trust. The $100,000,000 carryover from 2006 shall be available for carryover to subsequent years even if the Effective Date occurs on or after January 1, 2007; however, this carryover provision applies only to the unused balance of the funding limit provided for the NARCO Asbestos Trust's fiscal year beginning in 2006. The unused balance from any subsequent year after 2006 shall not carryover and shall not be available in any other of the NARCO Asbestos Trust's fiscal years.

(B)    The Pre-Established Claims Fund. There shall be no Caps on Honeywell's obligations to contribute to the Pre-Established Claims Fund all such amounts as are necessary to pay all NARCO Asbestos Trust Claims in the Pre-Established Claims Fund Payment Queue as provided in Section 2.3(c)(i) above.

(ii)    New Debtor Common Stock.

(A)    Contribution of the New Debtor Common Stock. In addition, as part of the Confirmation Order, as of the Effective Date, seventy-nine percent (79%) of the equity of Post-Effective ANH shall be transferred to the NARCO Asbestos Trust, being the New Debtor Common Stock contributed to the NARCO Asbestos Trust, to be held by the Trust to pay NARCO Asbestos Trust Claims liquidated in accordance with the NARCO Asbestos TDP.

(B)    Sale of New Debtor Common Stock. Notwithstanding anything to the contrary contained herein, following the occurrence of two (2) consecutive calendar years of a decline in the aggregate value of Annual Contribution Claims filed with the NARCO Asbestos Trust as determined under the NARCO Asbestos TDP by twenty percent (20%) from the prior calendar year, the Trustees shall use their best efforts to cause a sale of the New Debtor Common Stock held by the NARCO Asbestos Trust for the purpose of paying NARCO Asbestos Trust Claims payable from the Annual Contribution Claims Fund. Nothing in this provision shall be interpreted to limit or impair the Trustees' ability or discretion to sell New Debtor Common Stock held by the NARCO Asbestos Trust at any earlier time.

(d)    Termination of Honeywell Funding Obligations. In the event that the federal government enacts legislation that would have the effect of requiring or permitting Honeywell to contribute to a governmentally created or authorized fund for the compensation of asbestos personal injury claimants, including some or all of the holders of NARCO Asbestos Trust Claims, then as of the enactment of such legislation, Honeywell shall have the right to terminate its obligations to make any future payments to the Trust, except that Honeywell shall remain obligated to fund:

(i)    Any unpaid balance of the Final Administrative Budget for the calendar year within which Honeywell's notice of termination is given;

(ii)    Any unavoidable Trust Expense incurred by the NARCO Asbestos Trust during the year following the date on which Honeywell's notice of termination becomes effective, to the extent such Trust Expenses, in the aggregate, exceed the NARCO Asbestos Trust Assets;

(iii)    Any as yet unpaid balance for NARCO Asbestos Trust Claims approved and entered into either the Annual Contribution Claims Fund Payment Queue and/or the Pre-Established Claims Fund Payment Queue as of the effective date of Honeywell's notice of termination to the Trustees, subject to the annual Caps set forth herein, to the extent such Caps may be otherwise applicable; and

(iv)    Any Pre-Established Claims that are the subject of a settlement agreement between a claimant and Honeywell entered into after the Petition Date but before the Effective Date that fixes the amount the NARCO Asbestos Trust is obligated to pay the claimant, provided that the claimant has submitted to the NARCO

Asbestos Trust prior to the effective date of Honeywell's termination notice all documentation required to qualify the claim to be placed in the Pre-Established Claims Fund Payment Queue, regardless of whether Honeywell has finally approved the claim for payment by the effective date of the termination notice. For purposes of clarification, if the documentation submitted by the effective date of Honeywell's termination notice is sufficient to qualify the claim for payment of the amount fixed in the settlement agreement between the claimant and Honeywell, the claim will be treated as having been placed in the Pre-Established Claims Fund Payment Queue before that effective date even though Honeywell actually approves the payment after the effective date of the notice.

Accordingly, any Pre-Established Claims that are the subject of a settlement agreement between a claimant and Honeywell entered into after the Petition Date but before the Effective Date that does not fix the amount the NARCO Asbestos Trust is obligated to pay the claimant but rather requires the claim to be liquidated by the NARCO Asbestos Trust pursuant to all relevant provisions of the NARCO Asbestos TDP, and that have not been liquidated by the NARCO Asbestos Trust as of the effective date of Honeywell's termination notice, shall not be placed in the Pre-Established Claims Fund Payment Queue even if the claimant has already submitted all the documentation required to liquidate the claim as of the effective date of the notice.

To the extent that Honeywell exercises its right to terminate, in their entirety, its obligations to make future payments to the NARCO Asbestos Trust, as set forth above, Honeywell shall provide written notice to the Trustees of its intent to exercise such right, which shall state that date, occurring after the date the notice is provided, upon which Honeywell's exercise shall be effective. Immediately upon the effective date of Honeywell's notice of termination, the Trust's assumption of liabilities of Honeywell, any Honeywell Affiliate, their predecessors in interest or their affiliates with respect to NARCO Asbestos Trust Claims shall cease and the NARCO Channeling Injunction in favor of Honeywell shall be vacated and shall be of no further force or effect with respect to any claims other than NARCO Asbestos Trust Claims that have already been paid by the NARCO Asbestos Trust, or that have already been approved for payment and placed into either the Annual Contribution Claims Fund Payment Queue or the Pre-Established Claims Fund Payment Queue, or that are eligible to be treated as though they had been placed into the Pre-Established Claims Fund Payment Queue pursuant to the provisions of the above paragraph.

2.4.    Acceptance of Assets and Assumption of Liabilities.

(a)    In furtherance of the purposes of the NARCO Asbestos Trust, the Trustees, on behalf of the NARCO Asbestos Trust, hereby expressly accept the transfer and assignment to the NARCO Asbestos Trust of the NARCO Asbestos Trust Assets.

(b)    In furtherance of the purposes of the NARCO Asbestos Trust, and subject to Sections 2.3(d) and 5.4 hereof, the NARCO Asbestos Trust expressly assumes all liability for all NARCO Asbestos Trust Claims, now accrued or as prospectively accruing, as provided for in Section 4.1 of the Plan. The NARCO Asbestos Trust shall have all

defenses, cross-claims, offsets, and recoupments regarding NARCO Asbestos Trust Claims that the Debtors, Honeywell or any Honeywell Affiliate has or would have had under applicable law, and as consistent with the NARCO Asbestos TDP.

(c)     No provision herein or in the NARCO Asbestos TDP shall be construed to mandate distributions on any claims or other actions that would contravene the NARCO Asbestos Trust's compliance with the requirements of a qualified settlement fund within the meaning of Section 1.468B, *et seq.*, of the Internal Revenue Code.

(d)     Nothing in this section or any other section of this NARCO Asbestos Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the NARCO Channeling Injunction issued in connection with the Plan or the NARCO Asbestos Trust's assumption of all liability with respect to NARCO Asbestos Trust Claims.

## ARTICLE III

## POWERS AND TRUST ADMINISTRATION

3.1.   Powers.

(a)     The Trustees are and shall act as fiduciaries to the NARCO Asbestos Trust in accordance with the provisions of this NARCO Asbestos Trust Agreement and the Plan. The Trustees shall, at all times, administer the NARCO Asbestos Trust Assets in accordance with the purposes set forth in Section 2.2 above. Subject to the limitations set forth in this NARCO Asbestos Trust Agreement, the Trustees shall have the power to take any and all actions that, in the judgment of the Trustees, are necessary or proper to fulfill the purposes of the NARCO Asbestos Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Delaware or such other state as may be the Trust's state of domicile.

(b)     Except as otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred herein.

(c)     Without limiting the generality of Section 3.1 (a) above, the Trustees shall have the power to:

(i) receive and hold the NARCO Asbestos Trust Assets, vote the New Debtor Common Stock, and exercise all rights with respect to, and sell any securities issued by any Reorganized Debtor that are included in the NARCO Asbestos Trust Assets, subject to the provisions of the ANH Refractories Company Shareholder Agreement;

(ii) invest the monies held from time to time by the NARCO Asbestos Trust;

(iii) sell, transfer or exchange any or all of the NARCO Asbestos Trust Assets at such prices and upon such terms as they may consider proper, consistent with the other terms of this NARCO Asbestos Trust Agreement;

(iv) enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the NARCO Asbestos Trust to operate;

(v) pay liabilities and expenses of the NARCO Asbestos Trust;

(vi) change the state of domicile of the NARCO Asbestos Trust;

(vii) establish such funds, reserves and accounts within the NARCO Asbestos Trust estate, as deemed by the Trustees to be useful in carrying out the purposes of the NARCO Asbestos Trust;

(viii) sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding;

(ix) adopt and subsequently amend the "Trust Bylaws";

(x) appoint such officers and hire such employees and engage such legal, financial, accounting, investment, audit, forecasting and other consultants, advisors, alternative dispute resolution panelists, and agents as the business of the NARCO Asbestos Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of this NARCO Asbestos Trust;

(xi) pay employees, legal, financial, accounting, investment, audit, forecasting and other consultants, advisors and agents reasonable compensation, including without limitation, compensation at rates approved by the Trustees for services rendered prior to the execution hereof;

(xii) compensate the Trustees, the Delaware Trustee, the NARCO Asbestos TAC members, and the NARCO Asbestos Future Claimants Representative as provided below and their employees, legal, financial, accounting, investment audit, forecasting and other advisors, consultants, and agents, and reimburse such persons all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, including without limitation, costs and expenses incurred prior to the execution hereof;

(xiii) execute and deliver such deeds, leases and other instruments as the Trustees consider proper in administering the NARCO Asbestos Trust;

(xiv) enter into such other arrangements with third parties as are deemed by the Trustees to be useful in carrying out the purposes of the NARCO Asbestos Trust,

9

provided such arrangements do not conflict with any other provision of this NARCO Asbestos Trust Agreement;

(xv) in accordance with Section 5.6, indemnify and hold harmless (and purchase insurance indemnifying) (A) the Trustees, (B) the NARCO Asbestos TAC members, (C) the NARCO Asbestos Future Claimants Representative, and (D) each of their officers, employees, agents, advisors and representatives of the NARCO Asbestos Trust to the fullest extent that a corporation or trust organized under the law of the NARCO Asbestos Trust's domicile is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors and representatives;

(xvi) indemnify (and purchase insurance indemnifying) the Additional Indemnitees as defined in Section 5.6 hereof;

(xvii) delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the NARCO Asbestos Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Section 5.4;

(xviii) consult with Reorganized NARCO or Post-Effective ANH at such times and with respect to such issues relating to the purpose, conduct, and affairs of the NARCO Asbestos Trust as the Trustees consider desirable;

(xix) consult with Honeywell, the NARCO Asbestos TAC, and/or the NARCO Asbestos Future Claimants Representative at such times and with respect to such issues relating to the purpose, conduct, and affairs of the NARCO Asbestos Trust as required by this NARCO Asbestos Trust Agreement or the NARCO Asbestos TDP, or as the Trustees consider desirable;

(xx) make, pursue (by litigation or otherwise), collect, compromise or settle any claim, right, action or cause of action included in the NARCO Asbestos Trust Assets or which may otherwise hereafter accrue in favor of the NARCO Asbestos Trust; and

(xxi) indemnify Reorganized NARCO or any purchaser of Reorganized NARCO for liability finally imposed on either arising from NARCO Asbestos Trust Claims.

(xxii) take the action provided for in Section 5.12 hereof, including the indemnification provided for therein.

3.2. <u>General Administration</u>.

(a)    The Trustees shall act in accordance with this NARCO Asbestos Trust Agreement, the Trust Bylaws and the NARCO Asbestos Trust TDP. To the extent not

inconsistent with the terms of this NARCO Asbestos Trust Agreement, the Trust Bylaws and the NARCO Asbestos TDP govern the affairs of the NARCO Asbestos Trust.

(b)    The Trustees shall timely file such income tax and other returns and statements and comply with all withholding obligations, as required under the applicable provisions of the Internal Revenue Code and of any applicable state law and the regulations promulgated thereunder.

(c)    The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each calendar year a cash flow projection covering such calendar year and the next two succeeding calendar years. The cash flow projection shall include a determination of the Maximum Annual Payment pursuant to Section 2.4 of the NARCO Asbestos TDP, and the amounts payable to Category A and Category B Claims pursuant to the Claims Payment Ratio provisions of Section 2.5 of the NARCO Asbestos TDP. The Trustees shall provide a copy of the cash flow projection to the NARCO Asbestos TAC, Honeywell, and the NARCO Asbestos Future Claimants Representative.

(d)    The Trustees shall consult with Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative on (i) the general administration of the NARCO Asbestos Trust, (ii) the general implementation and administration of the NARCO Asbestos TDP and (iii) on such other matters as may be required under this NARCO Asbestos Trust Agreement and the NARCO Asbestos TDP. The Trustees shall be required to obtain the consent of Honeywell, a majority of the members of the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative in order:

(i) to amend the NARCO Asbestos TDP in any respect; or

(ii) to acquire an interest in, merge with, contract with or participate in any claims resolution facility that was not specifically created under this NARCO Asbestos Trust Agreement or the NARCO Asbestos TDP; or

(iii) to amend any provision of Article 6 herein; or

(iv) to terminate the NARCO Asbestos Trust pursuant to Section 8.3(a)(iii) herein; or

(v) to obligate the NARCO Asbestos Trust to indemnify Reorganized NARCO or any purchaser of NARCO for liability arising from NARCO Asbestos Trust Claims; or

(vi) to approve the appointment of any successor Trustee under Section 5.3 hereof.

Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative shall not unreasonably withhold any consent required hereunder, and if Honeywell, the NARCO Asbestos TAC or the NARCO Asbestos Future Claimants Representative shall withhold any consent required hereunder, at the

election of any of them or the Trustees, the dispute shall be resolved in and by the Bankruptcy Court, except that no such action which would increase the amount of funding required from Honeywell under Section 2.3 above may be taken without Honeywell's consent, which it may withhold in its sole and absolute discretion.

(e)     The Trustees shall be required to obtain the consent of the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative in order to implement or reconsider the Payment Percentage provided for in Section 2.5 of the NARCO Asbestos TDP.

(f)     Honeywell shall have the right, at its discretion, to assume, control, defend, and settle any and all litigation to which the NARCO Asbestos Trust is a party, except where the NARCO Asbestos Trust and Honeywell are adverse parties in such action.

(g)     The Trustees shall meet with the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative and/or Honeywell as necessary to carry out the purposes of the Trust, such meetings to be held no less frequently than quarterly at the discretion of the Trustees or as requested by any of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative or Honeywell.

(h)     Periodically, but not less often than once a year, the Trustees shall make available to NARCO Asbestos Trust Claimants and other interested parties a data summary setting forth the number of claims by disease levels that have been resolved by Expedited Review, by Individual Review, by arbitration, and through litigation, indicating the average liquidated amounts at which such claims were resolved.

3.3.    Annual Report.

(a)     The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the NARCO Asbestos Trust (including, without limitation, a balance sheet of the NARCO Asbestos Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles or, at the option of the Trustees on advice of the independent certified public accountants, special-purpose basis of accounting. The special-purpose basis of accounting is used in order to communicate the amount of equity available to fund current and future claimants, and is not intended to be a presentation in conformity with accounting principles generally accepted in the United States of America. The Trustees shall provide a copy of the Annual Report to Honeywell, the NARCO Asbestos Future Claimants Representative, the NARCO Asbestos TAC and Post-Effective ANH when such reports are filed with the Bankruptcy Court.

(b)      Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to Honeywell, the NARCO Asbestos Future Claimants Representative, the NARCO Asbestos TAC and Post-Effective ANH when such report is filed.

(c)      All materials required to be filed with the Bankruptcy Court by this Section 3.3 shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

3.4.    Trust Expense Fund Budget. By October 1 of each calendar year, the Trustees shall submit to Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative a proposed budget (the **"Proposed Budget"**) for the succeeding calendar year. Such Proposed Budget shall set forth in reasonable detail the proposed Trust Expenses for the NARCO Asbestos Trust for the succeeding calendar year. Each of Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative shall have thirty (30) days within which to provide the Trustees with any responses (the **"Responses"**) to the Proposed Budget, such Responses to be in writing and to be given in accordance with the notice provisions of this NARCO Asbestos Trust Agreement. If the Trustees receive Responses to the Proposed Budget, such Responses shall be circulated to all Parties (the term Parties for the purposes of this Section 3.4 excludes the Delaware Trustee), and all Parties shall endeavor in good faith to resolve any concerns or differences on or before November 15. If the Parties are unable to resolve such differences by November 15, the matter shall be submitted to the Bankruptcy Court for determination. The Final Administrative Budget, as determined by agreement or by order of the Bankruptcy Court, shall be the amount funded by Honeywell pursuant to Section 2.3(b) hereof. Periodically during the calendar year, but not less than every six (6) months, the Trustees shall report to Honeywell any variances of actual Trust Expenses from the Final Administrative Budget for that calendar year and may request an adjustment to the Final Administrative Budget. Honeywell shall respond to any request for an adjustment to the Final Administrative Budget within thirty (30) days. In the event the adjustment results in an increase to the budget, Honeywell shall, absent objection, fund the adjustment as mutually agreed. Should Honeywell not consent to the request, the dispute shall be resolved pursuant to Section 8.14 hereof. The Trustees and Honeywell shall adopt joint operating procedures to implement the budget and Trust Expense funding process provided in this NARCO Asbestos Trust Agreement.

3.5.    Claims Administration.

(a)      General Principles. The Trustees shall implement the NARCO Asbestos TDP. The NARCO Asbestos Trust shall pay holders of valid NARCO Asbestos Trust Claims in accordance with the provisions of the NARCO Asbestos TDP as promptly as funds become available. In their administration of the NARCO Asbestos TDP, the Trustees shall favor settlement over arbitration, arbitration over resort to the tort system, and fair resolution and compensation of claims in all cases, in a manner as inexpensive and efficient as reasonably possible, in accordance with the NARCO Asbestos TDP.

13

(b)    NARCO Asbestos Trust Claims.  The Trustees shall administer the processing and payment of NARCO Asbestos Trust Claims in accordance with the NARCO Asbestos TDP, a copy of which is attached to the Plan as Exhibit NARCO B, as the same may be amended from time to time, in accordance with the provisions hereof and thereof.

3.6.    Medicare Reporting.  The Trustees shall operate the Trust in a manner that complies with applicable federal and state law, including but not limited to the applicable requirements of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA").  The Trustees shall take all reasonable steps to cooperate with any other Party to the extent necessary for said Party to fulfill its legal obligations under MMSEA arising out of the operations of the Trust.

## ARTICLE IV

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

4.1.    Accounts.  The Trustees may, from time to time, create such accounts and reserves within the NARCO Asbestos Trust estate as they may deem necessary, prudent or useful in order to provide for the payment of expenses and valid NARCO Asbestos Trust Claims. Further, with respect to any such account or reserve, the Trustees may restrict the use of monies therein.

4.2.    Investments.  Investment of monies held in the NARCO Asbestos Trust shall be administered in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

(a)    The NARCO Asbestos Trust may acquire and hold any stock or securities issued by Reorganized NARCO and/or Post-Effective ANH and included in the NARCO Asbestos Trust Assets, without regard to any of the limitations set forth in the other parts of this Article 4.  However, the NARCO Asbestos Trust shall not acquire any stock or securities issued by Reorganized NARCO and/or Post-Effective ANH if such acquisition would result in the NARCO Asbestos Trust becoming potentially liable for any non-asbestos-related debts or other claims against Reorganized NARCO and/or Post-Effective ANH, including any pension liabilities of either entity. All dividends and income realized by the NARCO Asbestos Trust from the acquisition or holding of stock or securities issued by Reorganized NARCO or Post-Effective ANH, including the proceeds of any sale of such stock or securities, shall be utilized and applied by the NARCO Asbestos Trust to the payment of NARCO Asbestos Trust Claims approved in accordance with the NARCO Asbestos TDP.

(b)    Except with respect to entities owned and controlled by the NARCO Asbestos Trust for purposes of carrying out provisions of this NARCO Asbestos Trust Agreement, the NARCO Asbestos Trust shall not acquire or hold any equity securities issued by any entity or business enterprise unless such equity is in the form of securities that are traded on a national securities exchange or major international securities exchange or over the National Association of Securities Dealers Automated Quotation System.

14

(c)    The NARCO Asbestos Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, they are adequately collateralized.

4.3.    Source of Payments. All NARCO Asbestos Trust expenses, payments and all liabilities with respect to NARCO Asbestos Trust Claims shall be payable solely out of the NARCO Asbestos Trust estate, which shall be funded solely in accordance with Section 2.3 of this NARCO Asbestos Trust Agreement. The Reorganized Debtors, Honeywell, any of their respective subsidiaries, any successor in interest, any of the present or former directors, officers, employees or agents of the Reorganized Debtors, the Debtors, Honeywell, or any of their respective subsidiaries, the Trustees, the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and any of their officers, agents, advisors or employees shall not be liable for the payment of any NARCO Asbestos Trust expense or NARCO Asbestos Trust Claim or any other liability of the NARCO Asbestos Trust, except as provided in this NARCO Asbestos Trust Agreement.

# ARTICLE V

## TRUSTEES

5.1.    Number. In addition to the Delaware Trustee appointed pursuant to Section 5.12 hereof, there shall be three (3) initial Trustees. The initial Trustees shall be those persons named on the signature page hereof.

5.2.    Term of Service.

(a)    Each initial Trustee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b), (iii) his or her removal pursuant to Section 5.2(c), or (iv) the termination of the NARCO Asbestos Trust pursuant to Section 8.3, at which time the term shall terminate automatically.

(b)    Any Trustee may resign at any time by written notice to each of the remaining Trustees, Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than 90 days after the date such notice is given, where practicable.

(c)    Any Trustee may be removed in the event that such Trustee becomes unable to discharge his or her duties hereunder due to accident or physical or mental deterioration, or for other good cause. Good cause shall be deemed to include, without limitation, a breach of such Trustee's duties hereunder, any failure to comply with Section 5.9, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustees hereunder, or repeated non-attendance at scheduled meetings. Such removal shall require either (i) the unanimous decision of the other Trustees or (ii) an order from the Bankruptcy Court upon the petition for removal for good cause by a Trustee, Honeywell, the NARCO Asbestos TAC or the NARCO Asbestos Future Claimants Representative. Such removal shall take effect at such time as the other Trustees shall determine or as ordered by the Bankruptcy Court.

5.3.   Appointment of Successor Trustee.

(a)   In the event of a vacancy in the position of a Trustee, whether by death, resignation or removal, the remaining Trustees shall consult with the NARCO Asbestos TAC, Honeywell, and the NARCO Asbestos Future Claimants Representative concerning the appointment of a successor Trustee. The vacancy shall be filled by the unanimous vote of the remaining Trustees, with the consent of Honeywell, the NARCO Asbestos Future Claimants Representative, and a majority of the NARCO Asbestos TAC. In the event that the remaining Trustees cannot agree on a successor Trustee, or Honeywell, the NARCO Asbestos Future Claimants Representative or a majority of the NARCO Asbestos TAC do not consent to the appointment, the Bankruptcy Court shall select the successor Trustee.

(b)   Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.

5.4.   Liability of Trustees, Officers and Employees. No Trustee, officer, or employee of the NARCO Asbestos Trust, nor any individual identified as an Additional Indemnitee in Section 5.6(a) below, shall be liable to the NARCO Asbestos Trust, to any person holding a NARCO Asbestos Trust Claim, or to any other Person except for such Trustee's, officer's or employee's own breach of trust committed in bad faith or for willful misappropriation. No Trustee, officer, or employee of the NARCO Asbestos Trust shall be liable for any act or omission of any other officer, agent, or employee of the NARCO Asbestos Trust, unless the Trustee, officer, or employee acted with bad faith or willful misconduct in the selection or retention of such officer, agent, or employee.

5.5.   Compensation and Expenses of Trustees.

(a)   Each of the Trustees shall receive compensation from the NARCO Asbestos Trust for his or her services as Trustee in the amount of $65,000 per annum, plus $550 per hour spent in the performance of the Trustees' duties under this NARCO Asbestos Trust Agreement. The per annum compensation and the hourly compensation payable to the Trustees hereunder shall be increased annually by the Trustees proportionately with any increase in the All Items Consumer Price Index for all-Urban Consumers (CPI-U) for the corresponding annual period. Any increase in excess of that amount may be made with the consent of Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Claimants Representative or with the approval of the Bankruptcy Court. The per annum compensation shall be paid on the Effective Date and annually thereafter. The Delaware Trustee shall be paid compensation pursuant to a separate fee agreement.

(b)   The NARCO Asbestos Trust will promptly reimburse the Trustees for all reasonable out-of-pocket costs and expenses incurred by the Trustees or the Delaware Trustee in connection with the performance of their duties hereunder.

16

(c)    The NARCO Asbestos Trust shall include a description of the amounts paid under this Article 5 in the accounts to be filed with the Bankruptcy Court and provided to the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell pursuant to Section 3.3.

5.6.    <u>Indemnification of Trustees and Others.</u>

(a)    The NARCO Asbestos Trust shall indemnify and defend the Trustees, the NARCO Asbestos Trust's officers, agents, advisors or employees, to the fullest extent that a corporation or trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend its directors, trustees, officers, employees, agents or advisors against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder. Notwithstanding the foregoing, the Trustees shall not be indemnified or defended in any way for any liability, expense, claim, damage or loss for which they are liable under Section 5.4. Additionally, each member of the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative (collectively, **"Additional Indemnitees"**) who was or is a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding of any kind, by reason of any act or omission of such Additional Indemnitees with respect to (i) the liquidation of any NARCO Asbestos  Trust Claims, (ii) the administration of the NARCO Asbestos Trust, or (iii)  the implementation of the NARCO Asbestos TDP, shall be indemnified and defended by the NARCO Asbestos Trust against expenses, costs and fees (including attorneys' fees), judgments, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by each Additional Indemnitee in connection with or resulting from such action, suit, or proceeding, if he or she acted in good faith and in a manner such Additional Indemnitee reasonably believed to be in, or not opposed to, the best interests of the holders of NARCO Asbestos Trust Claims.

(b)    Reasonable expenses, costs and fees (including attorneys' fees) incurred by or on behalf of a Trustee or Additional Indemnitee in connection with any action, suit, or proceeding, from which they are indemnified by the NARCO Asbestos Trust pursuant to this Section 5.6, may be paid by the NARCO Asbestos Trust in advance of the final disposition thereof upon receipt of an undertaking by or on behalf of such Trustee or Additional Indemnitee to repay such amount if it shall be determined ultimately that such Trustee or Additional Indemnitee is not entitled to be indemnified by the NARCO Asbestos Trust.

(c)    Any indemnification under Section 5.6(a) of this NARCO Asbestos Trust Agreement shall be made by the NARCO Asbestos Trust upon a determination that indemnification of such person is proper in the circumstances. Such determination shall be made by a majority vote of the Trustees who were not parties to such action, suit, or proceeding, if two such Trustees were not parties; otherwise the determination will be made by legal counsel to the NARCO Asbestos Trust.

(d)    The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, officer, employee, agent or representative of the NARCO Asbestos Trust or an Additional Indemnitee against

17

liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, officer, employee, agent, representative, or Additional Indemnitee, subject to and in accordance with the budget requirements of Section 3.3. Honeywell agrees that any deductible or retention under an insurance policy purchased hereunder is a Trust Expense of the NARCO Asbestos Trust under Section 3.4.

5.7.   Trustees' Lien.  The Trustees shall have a prior lien upon the NARCO Asbestos Trust corpus to secure the payment of any amounts payable to them pursuant to Sections 5.5 and 5.6.  In lieu of a Trustees' lien, Honeywell agrees that any amounts payable to the Trustees pursuant to Sections 5.5 and 5.6 shall be a Trust Expense of the NARCO Asbestos Trust.

5.8.   Trustees' Employment of Experts.  The Trustees may, but shall not be required to, consult with counsel, accountants, appraisers and other parties deemed by the Trustees to be qualified as experts on the matters submitted to them (regardless of whether any such party is affiliated with any of the Trustees in any manner, except as otherwise expressly provided in this NARCO Asbestos Trust Agreement), and the written opinion of any such parties on any matters submitted to them by the Trustees shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of any such party.

5.9.   Trustees' Independence.  No Trustee shall, during the term of his or her service, hold a financial interest in Honeywell, Reorganized NARCO, or Post-Effective ANH, or act as an officer or director of, or attorney for, Honeywell, Reorganized NARCO, or Post-Effective ANH, or as an attorney or advisor for any person who holds a NARCO Asbestos Trust Claim.  For avoidance of doubt, this Section 5.9 shall not be applicable to the Delaware Trustee.

5.10.  Trustees' Service as Officers or Consultants to the Trust.  The Trustees may, but are not required to, select any Trustee to serve as an officer or manager of the Trust or as a consultant to the Trust. In the event any Trustee serves the Trust in such a capacity, the Trust shall compensate the Trustee in an amount determined by the Trustees. Compensation for a Trustee's service as an officer or manager of the Trust or as a consultant to the Trust shall be in addition to compensation paid pursuant to Section 5.5.

5.11.  Bond.  The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.12.  Delaware Trustee.

(a)   To the extent Delaware law requires Delaware statutory trusts to have at least one resident trustee who is a Delaware resident, if an individual, or has it principal place of business in Delaware, there shall at all times be a Delaware Trustee.  The Delaware Trustee shall be a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind the entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 5.12, it

18

shall resign immediately in the manner and with the effect hereinafter specified in Section 5.12(f) below. For the avoidance of doubt, the Delaware Trustee shall only have the rights and obligations expressly provided by reference to the Delaware Trustee hereunder. In accepting and performing hereunder, the Delaware Trustee acts not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this NARCO Asbestos Trust Agreement or any other NARCO Asbestos Trust related document or agreement shall look only to the NARCO Asbestos Trust's property for payment or satisfaction thereof.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustees set forth herein. The Delaware Trustee shall be one of the trustees of the NARCO Asbestos Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking actions required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the NARCO Asbestos Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. The Delaware Trustee shall have no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity.

(c)     The Delaware Trustee shall not be personally liable under any circumstances, except for its own bad faith or willful misconduct. As to any fact or matter, the Delaware Trustee may for all purposes hereof rely on a certificate or instruction, signed by one of the Trustees, as to such fact or matter, and the Delaware Trustee shall not be liable for any action taken or omitted to be taken by it in good faith in reliance thereon. The Delaware Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, request, consent, order or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. In the event that the Delaware Trustee is unsure of the course of action to be taken by it hereunder, the Delaware Trustee may request instructions from the Trustees and to the extent the Delaware Trustee follows such instructions in good faith it shall not be liable to any person. In the event that no instructions are provided within the time requested by the Delaware Trustee, it shall have no duty or liability for its failure to take any action or for any action it takes in good faith.

(d)     The Trustees, on behalf of the Trust, shall at all times maintain trustee insurance, errors and omissions insurance, or similar insurance coverage naming the Delaware Trustees as a named insured, with aggregate coverage limitations of no less than $25,000,000.

(e)     Any amounts owing to the Delaware Trustee hereunder shall be a Trust Expense.

(f)     The Delaware Trustee shall serve until removed by the Trustees or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustees in accordance with the terms of Section 5.12(g) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice (or in the

circumstances of 5.12(a) above upon immediate notice) to the Trustees; provided that, any resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustees in accordance with Section 5.12(g) below. If the Trustees do not act within the 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(g)    Upon the resignation or removal of the Delaware Trustee, the Trustees shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustees, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this NARCO Asbestos Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this NARCO Asbestos Trust Agreement.

(h)    Any person into which the Delaware Trustee may be merged or with which it may be consolidated, or any person resulting from any merger or consolidation to which the Delaware Trustee shall be a party, or any person which succeeds to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor Delaware Trustee under this NARCO Asbestos Trust Agreement without the execution, delivery or filing of any paper or instrument or further act to be done on the part of the parties hereto, except as may be required by the Act.

## ARTICLE VI

## TRUSTEES' ADVISORY COMMITTEE

6.1.    Formation; Duties. A Trustees' Advisory Committee (the **"NARCO Asbestos TAC"**) shall be formed. As provided herein, the Trustees shall consult with the NARCO Asbestos TAC, Honeywell, and the NARCO Asbestos Future Claimants Representative regarding the implementation and administration of the NARCO Asbestos TDP. The members of the NARCO Asbestos TAC shall serve in a fiduciary capacity representing all holders of present NARCO Asbestos Trust Claims. The Trustees may consult with the NARCO Asbestos TAC on any matter affecting the NARCO Asbestos Trust, and certain actions by the Trustees are subject to the prior consent of the NARCO Asbestos TAC as provided in Section 8.1(b) hereof and in the NARCO Asbestos TDP. The NARCO Asbestos TAC shall endeavor to act in the best interests of the holders of all NARCO Asbestos Trust Claims.

6.2.   Number; Chairperson.

(a)    There shall be five members of the NARCO Asbestos TAC. The initial members of the NARCO Asbestos TAC shall be the individuals identified as such on the signature page of this Trust Agreement.  The NARCO Asbestos TAC shall act in all cases by majority vote.

(b)    There shall be a Chairperson of the NARCO Asbestos TAC. The Chairperson shall act as the NARCO Asbestos TAC's liaison, he or she shall coordinate and schedule meetings of the NARCO Asbestos TAC, and he or she shall handle all administrative matters that come before the NARCO Asbestos TAC.  The Chairperson shall be selected by a majority vote of the NARCO Asbestos TAC.

6.3.   Term of Office.

(a)    The five initial members of the NARCO Asbestos TAC shall serve the staggered three-, four-, or five-year terms shown on the signatures pages hereof. Thereafter, each term of service shall be five years. A member of the NARCO Asbestos TAC shall serve until the earlier of (i) the end of his or her term; (ii) his or her death; (iii) his or her resignation pursuant to Section 6.3(b) below; (iv) his or her removal pursuant to Section 6.3(c) below; or (v) the termination of the NARCO Asbestos Trust pursuant to Section 8.3 below.

(b)    Any member of the NARCO Asbestos TAC may resign at any time by written notice to each of the remaining members specifying the date when such resignation shall take place. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    Any member of the NARCO Asbestos TAC may be removed in the event such member becomes unable to discharge his or her duties hereunder due to accident, or physical or mental deterioration, or for other good cause. Good cause shall be deemed to include, without limitation, a breach of the member's duties hereunder, a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, or repeated non-attendance at scheduled meetings.   Such removal shall require an order from the Bankruptcy Court upon petition for removal by the remaining members of the NARCO Asbestos TAC or by the NARCO Asbestos Trustees.

6.4.   Appointment of Successor.

(a)    In the event of a vacancy caused by the resignation or death of a NARCO Asbestos TAC member, his or her successor shall be pre-selected by the resigning or deceased NARCO Asbestos TAC member, or by his or her law firm in the event that such member has not pre-selected a successor.  If neither the member nor the law firm exercised the right to make such a selection, the successor shall be chosen by a majority vote of the remaining NARCO Asbestos TAC members.  If a majority of the remaining members cannot agree, the Bankruptcy Court shall appoint the successor.  In the event of a vacancy caused by the removal of a NARCO Asbestos TAC member, the remaining

21

members of the NARCO Asbestos TAC, by majority vote, shall name the successor. If the majority of the remaining members of the NARCO Asbestos TAC cannot reach agreement, the Bankruptcy Court shall appoint the successor.

(b)     Each successor NARCO Asbestos TAC member shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.3(b), (iii) his or her removal pursuant to Section 6.3(c), (iv) termination of the NARCO Asbestos Trust, (v) the end of a full term of five (5) years if his or her predecessor member completed his or her term; or (vi) the end of the remainder of the term of the member whom he or she replaced if said predecessor member did not complete said term. Members of the NARCO Asbestos TAC shall be eligible to serve successive terms.

6.5     NARCO Asbestos TAC's Employment of Professionals.

(a) The NARCO Asbestos TAC may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties it deems to be qualified as experts on matters submitted to the NARCO Asbestos TAC (the "**NARCO Asbestos TAC Professionals**"). The NARCO Asbestos TAC and the NARCO Asbestos TAC Professionals shall at all times have complete access to the NARCO Asbestos Trust's officers, employees and agents, as well as to the experts retained by the NARCO Asbestos Trust, and to all information generated by them or otherwise available to the Trustees. In the absence of gross negligence, the written opinion of or information provided by any NARCO Asbestos TAC Professional retained by the NARCO Asbestos TAC shall be full and complete authorization and protection in support of any action taken or not taken by the NARCO Asbestos TAC in good faith and in accordance with the written opinion of or information provided by the NARCO Asbestos TAC Professional. Compensation and reimbursement to the NARCO Asbestos TAC Professional employed by the NARCO Asbestos TAC pursuant to this Section 6.5(a) shall be considered Trust Expenses of the NARCO Asbestos Trust compensable only from the Trust Expense Fund as part of the Final Administrative Budget proposed and approved in accordance with Section 3.3.

(b)     The NARCO Asbestos Trust shall promptly reimburse, or may pay directly by agreement, the NARCO Asbestos TAC for all reasonable fees and costs associated with the NARCO Asbestos TAC's employment of legal counsel in connection with the NARCO Asbestos TAC's performance of its duties hereunder. The Trust shall also promptly reimburse, or pay directly by agreement, the NARCO Asbestos TAC for all reasonable fees and costs associated with the employment of any other NARCO Asbestos TAC Professional in connection with the NARCO Asbestos TAC's performance of their duties hereunder; provided, however, that (i) the NARCO Asbestos TAC has first submitted to the NARCO Asbestos Trust a written request for such reimbursement setting forth the reasons (A) why the NARCO Asbestos TAC desires to employ the NARCO Asbestos TAC Professional, and (B) why the NARCO Asbestos TAC cannot rely on the experts retained by the NARCO Asbestos Trust to meet the need of the NARCO Asbestos TAC for such expertise or advice, and (ii) the NARCO Asbestos Trust has approved the NARCO Asbestos TAC's request for reimbursement in writing. If the NARCO Asbestos Trust agrees to pay for the NARCO Asbestos TAC Professional, such

reimbursement shall be treated as a Trust Expense. If the NARCO Asbestos Trust declines to pay for the NARCO Asbestos TAC Professional, it must set forth its reasons in writing. If the NARCO Asbestos TAC still desires to employ the NARCO Asbestos TAC Professional at the expense of the NARCO Asbestos Trust, the NARCO Asbestos TAC and/or the Trustees shall resolve their dispute pursuant to Section 8.14 below.

6.6    Compensation and Expenses of NARCO Asbestos TAC Members. To reduce the Trust Expenses of the NARCO Asbestos Trust, only three members of the NARCO Asbestos TAC shall receive compensation from the NARCO Asbestos Trust at the rate of $550 per hour for attendance at NARCO Trust related meetings or other conduct of NARCO Asbestos Trust business. It shall be the responsibility of the full NARCO Asbestos TAC membership to allocate in their sole discretion this compensation among themselves. However, all members of the NARCO Asbestos TAC shall be reimbursed promptly for all reasonable out-of-pocket expenses incurred by the NARCO Asbestos TAC members in connection with the performance of their duties hereunder. Such NARCO Asbestos TAC compensation, reimbursement or direct payment shall be deemed a Trust Expense. The hourly rate of compensation hereunder shall be increased annually by the Trustees proportionately with any increase in the All Items Consumer Price Index for all-Urban Consumers (CPI-U) for the corresponding annual period. The NARCO Asbestos Trust shall include a description of the amounts paid under this Article 6 in the accounts to be filed with the Bankruptcy Court and provided to the Trustees, the NARCO Asbestos Future Claimants Representative, and Honeywell pursuant to Section 3.3.

## ARTICLE VII

## FUTURE CLAIMANTS REPRESENTATIVE

7.1    Duties. The initial NARCO Asbestos Future Claimants Representative shall be Lawrence Fitzpatrick, Esquire. He shall serve in a fiduciary capacity, representing the interests of the holders of NARCO Asbestos Trust Claims yet to accrue for the purpose of protecting the rights of such persons. The Trustees must consult with the NARCO Asbestos Future Claimants Representative on matters identified in Section 3.1(c) above and on certain other matters provided herein, and must obtain the consent of the NARCO Asbestos Future Claimants Representative on matters identified in Section 3.2(d) above and on certain other matters provided herein. Where provided in the NARCO Asbestos TDP, certain other actions by the Trustees are also subject to the consent of the NARCO Asbestos Future Claimants Representative.

7.2    Term of Office.

(a)    The NARCO Asbestos Future Claimants Representative shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 7.2(b) below, (iii) his or her removal pursuant to Section 7.2(c) below, or (iv) the termination of the NARCO Asbestos Trust.

(b)    The NARCO Asbestos Future Claimants Representative may resign at any time by written notice to the Trustees, Honeywell, and the NARCO Asbestos TAC. Such

notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The NARCO Asbestos Future Claimants Representative may be removed by the Bankruptcy Court on a petition for removal by the NARCO Asbestos Trustees or on motion for removal, but after notice and hearing, in the event he or she becomes unable to discharge his or her duties hereunder due to accident, or physical or mental deterioration, or for other good cause. Good cause shall be deemed to include, without limitation, a breach of the NARCO Asbestos Future Claimants Representative's duties hereunder, a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, or repeated non-attendance at scheduled meetings.

7.3     <u>Appointment of Successor</u>. A vacancy caused by death or resignation shall be filled with an individual nominated prior to the effective date of the resignation or the death by the resigning or deceased NARCO Asbestos Future Claimants Representative. A vacancy caused by the removal of the NARCO Asbestos Future Claimants Representative shall be filled with an individual nominated by the Trustees in consultation with the NARCO Asbestos TAC and Honeywell, subject to the approval of the Bankruptcy Court. In the event a majority of the Trustees cannot agree, or a nominee has not been pre-selected, the successor shall be chosen by the Bankruptcy Court.

7.4     <u>NARCO Asbestos Future Claimants Representative's Employment of Professionals</u>.

(a)     The NARCO Asbestos Future Claimants Representative shall receive compensation from the NARCO Asbestos Trust. The NARCO Asbestos Future Claimants Representative may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, and financial and investment advisors, and such other parties deemed by the NARCO Asbestos Future Claimants Representative to be qualified as experts on matters submitted to the NARCO Asbestos Future Claimants Representative (the **"FCR Professionals"**). The NARCO Asbestos Future Claimants Representative and the FCR Professionals shall at all times have complete access to the NARCO Asbestos Trust's officers, employees and agents, as well as to the experts retained by the NARCO Asbestos Trust, and shall also have complete access to all information generated by them or otherwise available to the Trustees. In the absence of gross negligence, the written opinion of or information provided by any FCR Professional deemed by the NARCO Asbestos Future Claimants Representative to be qualified as an expert on the particular matter submitted to the NARCO Asbestos Future Claimants Representative shall be full and complete authorization and protection in support of any action taken or not taken by the NARCO Asbestos Future Claimants Representative in good faith and in accordance with the written opinion of or information provided by the FCR Professional.

(b)     The Trust shall promptly reimburse, or may pay directly by agreement, the NARCO Asbestos Future Claimants Representative for all reasonable fees and costs associated with the NARCO Asbestos Future Claimants Representative's employment of legal counsel pursuant to this provision in connection with the NARCO Asbestos Future Claimants Representative's performance of his or her duties hereunder. The Trust shall

also promptly reimburse, or pay directly by agreement, the NARCO Asbestos Future Claimants Representative for all reasonable fees and costs associated with the NARCO Asbestos Future Claimants Representative's employment of any other FCR Professional pursuant to this provision in connection with the NARCO Asbestos Future Claimants Representative's performance of his or her duties hereunder; provided, however, that (i) the NARCO Asbestos Future Claimants Representative has first submitted to the Trust a written request for such reimbursement setting forth the reasons (A) why the NARCO Asbestos Future Claimants Representative desires to employ the FCR Professional, and (B) why the NARCO Asbestos Future Claimants Representative cannot rely on the experts retained by the Trust to meet the need of the NARCO Asbestos Future Claimants Representative for such expertise or advice, and (ii) the Trust has approved the NARCO Asbestos Future Claimants Representative's request for reimbursement in writing. If the Trust agrees to pay for the FCR Professional, such reimbursement shall be treated as a Trust Expense. If the Trust declines to pay for the FCR Professional, it must set forth its reasons in writing. If the NARCO Asbestos Future Claimants Representative still desires to employ the FCR Professional at Trust expense, the NARCO Asbestos Future Claimants Representative and/or the Trustees shall resolve their dispute pursuant to Section 8.14 below.

7.5    <u>Compensation and Expenses of the NARCO Asbestos Future Claimants Representative</u>. The NARCO Asbestos Future Claimants Representative shall receive compensation from the NARCO Asbestos Trust at the rate of $550 per hour. The NARCO Asbestos Trust will promptly reimburse the NARCO Asbestos Future Claimants Representative for all reasonable out-of-pocket costs and expenses incurred by the NARCO Asbestos Future Claimants Representative in connection with the performance of his or her duties hereunder. Such reimbursement or direct payment shall be deemed a NARCO Asbestos Trust Administrative expense. The hourly rate of compensation hereunder shall be increased annually by the Trustees proportionately with any increase in the All Items Consumer Price Index for all-Urban Consumers (CPI-U) for the corresponding annual period. The NARCO Asbestos Trust shall include a description of the amounts paid under this Section 7.5 in the accounts to be filed with the Bankruptcy Court and provided to the Trustees, the NARCO Asbestos TAC, and Honeywell pursuant to Section 3.3.

## ARTICLE VIII

## GENERAL PROVISIONS

8.1    <u>Procedure for Consulting With or Obtaining Consent of Honeywell, the NARCO Asbestos TAC and/or the NARCO Asbestos Future Claimants Representative</u>.

(a)    <u>Consultation Process</u>.

(i) In the event the Trustees are required to consult with Honeywell, the NARCO Asbestos TAC, and/or the NARCO Asbestos Future Claimants Representative pursuant to this NARCO Asbestos Trust Agreement, the NARCO Asbestos TDP

or on other matters, the Trustees shall provide Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative with such reasonable access to the experts retained by the Trustees as Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative may reasonably request during the time that the Trustees are considering such matters, and shall also provide to Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustees.

(ii) The Trustees shall take into consideration the time required for Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative, if desirable to those Parties, to engage and consult with their own experts as to such matters.

(b)     Consent Process.

(i) In the event the Trustees are required to obtain the consent of Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative pursuant to this NARCO Asbestos Trust Agreement, the NARCO Asbestos TDP, or otherwise, the Trustees shall provide Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative with a written notice stating that their consent is being sought pursuant to the Trustees' proposal, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take such action. The Trustees shall provide to Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.   The Trustees shall also provide to Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative such reasonable access to the experts retained by the Trustees as Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative may reasonably request during the time that the Trustees are considering such action, and shall also provide to Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustees.

(ii) Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative must each consider in good faith and in a timely fashion any request for its consent by the Trustees, and must in any event, advise the Trustees in writing of its consent or its objection to the proposed action within sixty (60) days of receiving the original request for consent from the Trustees.

This sixty (60) day period may be extended with the consent of the Trustees. This sixty (60) day period may be reduced or waived in writing by Honeywell, the NARCO Asbestos TAC or the NARCO Asbestos Future Claimants Representative. Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative may not withhold consent unreasonably. If Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative decides to withhold its consent, it must explain in detail in writing its objections to the proposed action. If Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative does not advise the Trustees in writing of consent or objections to the action within sixty (60) days of receiving notice regarding such request, or such other time as provided hereunder, the consent of Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative to the proposed actions shall be deemed to have been affirmatively granted.

(iii) If, after following the procedures specified in this Section 8.1(b), Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative continues to object to the proposed action and to withhold consent to the proposed action, the Trustees and/or Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative shall resolve their dispute pursuant to Section 8.14. However, the burden of proof with respect to the validity of the objection of Honeywell, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative shall be on the objecting party.

8.2     Irrevocability. The NARCO Asbestos Trust is irrevocable, but is subject to amendment as provided in Section 8.4.

8.3     Termination.

(a)     The NARCO Asbestos Trust shall automatically terminate on the date (the "**Termination Date**") ninety (90) days after the first occurrence of any of the following events:

(i) the Trustees in their sole discretion decide to terminate the NARCO Asbestos Trust because (A) they deem it unlikely that new NARCO Asbestos Trust Claims will be filed against the NARCO Asbestos Trust and (B) all NARCO Asbestos Trust Claims duly filed with the NARCO Asbestos Trust have been liquidated and satisfied and twelve consecutive months have elapsed during which no new valid NARCO Asbestos Trust Claim has been filed with the NARCO Asbestos Trust;

(ii) if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the NARCO Asbestos Trust in a manner consistent with this NARCO Asbestos Trust Agreement and the NARCO

Asbestos TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes final;

(iii)    if in the judgment of two/thirds of the Trustees, with the consent of Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative (which consent shall not be unreasonably withheld), the continued administration of the NARCO Asbestos Trust is uneconomical or inimical to the best interests of the persons holding NARCO Asbestos Trust Claims, and the termination of the NARCO Asbestos Trust will not expose or subject Reorganized NARCO, any other Reorganized Debtor, Honeywell or any Honeywell Affiliate, or any of their successors in interest to any increased or undue risk of having any NARCO Asbestos Trust Claims asserted against it or them or will not in any way jeopardize the validity or enforceability of the NARCO Channeling Injunction; or

(iv) 21 years less 90 days pass after the death of the last survivor of all the descendants of Joseph P. Kennedy, Sr. of Massachusetts living on the date hereof.

(b)    During the ninety (90) day period after the occurrence of an event provided for in Section 8.3(a), but prior to the Termination Date, any New Debtor Common Stock, remaining within the NARCO Asbestos Trust Assets, shall be sold and liquidated by the Trustees. The proceeds of any such sale of stock or securities shall be applied to the payment of NARCO Asbestos Trust Claims, as appropriate.

(c)    On the Termination Date, after payment of all the NARCO Asbestos Trust's liabilities has been provided for, all monies remaining in the NARCO Asbestos Trust estate shall be transferred to Honeywell, if such transfer does not jeopardize the NARCO Asbestos Trust's status as a qualified settlement trust under the Internal Revenue Code, or, if such status would be jeopardized, to charitable organization(s) exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the tax-exempt organization(s) shall be related to treatment of, research in the cure of, or relief of individuals suffering from asbestos-caused disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to Reorganized NARCO within the meaning of Section 468(d)(3) of the Internal Revenue Code.

8.4    Amendments. The Trustees, after consultation with Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative, and subject to the consent of Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative, may modify or amend this NARCO Asbestos Trust Agreement and the Trust Bylaws. The Trustees, after consultation with Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative, and subject to the consent of Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative, may modify or amend the NARCO Asbestos TDP; provided, however, that no amendment to the NARCO Asbestos TDP shall be inconsistent with the limitations on amendments provided therein, and, in particular, the

provisions limiting amendment of the Clams Payment Ratio set forth in Section 2.4 of the NARCO Asbestos TDP or the Payment Percentage provisions of Section 2.5 of the NARCO Asbestos TDP. Any modification or amendment made pursuant to this Article 8 must be done in writing, and must be described in the Annual Report to be filed by the NARCO Asbestos Trust with the Bankruptcy Court pursuant to Section 3.3. No amendment to this NARCO Asbestos Trust Agreement, the NARCO Asbestos TDP, or the Trust Bylaws may be made that will in any manner increase the amount of Honeywell's funding obligation to the NARCO Asbestos Trust (either to the Trust Expense Fund, the Annual Contribution Claims Fund, or the Pre-Established Claims Fund) without Honeywell's consent, which Honeywell may withhold in its sole and exclusive discretion. Notwithstanding anything contained in this NARCO Asbestos Trust Agreement to the contrary, neither this NARCO Asbestos Trust Agreement, the NARCO Asbestos Trust Bylaws, the NARCO Asbestos TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify the applicability of Section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the injunction entered thereunder, or the NARCO Asbestos Trust's qualified settlement fund status under Section 468B of the Internal Revenue Code. No consent from the Settlors, other than Honeywell, shall be required to modify or amend this NARCO Asbestos Trust Agreement or any document annexed to it. Any modification or amendment made pursuant to this Section 8.4 must be done in writing. Notwithstanding anything contained herein to the contrary, neither this NARCO Asbestos Trust Agreement nor the NARCO Asbestos TDP shall be modified or amended in any way that would jeopardize the efficacy or enforceability of the NARCO Channeling Injunction.

8.5    Meetings.

(a)    Honeywell, the NARCO Asbestos Future Claimants Representative and the NARCO Asbestos TAC shall have the right to attend all meetings of the Trustees. Attendance may be in person, by telephone, or by video. Honeywell, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative shall be provided five (5) days' advance notice in writing whenever meetings are scheduled to be held. The number of meetings of the Trustees per year and the procedure for setting the time, place and manner of conducting the meetings shall be set pursuant to the NARCO Asbestos Trust Bylaws.

(b)    Notwithstanding the foregoing, the Trustees shall have the right to meet in executive session.

(c)    Notwithstanding the foregoing, the Trustees shall have the right to meet with any person as the Trustees deem necessary to fulfill their duties, in executive session or otherwise.

(d)    The Delaware Trustee shall not be required nor permitted to attend meetings relating to the NARCO Asbestos Trust.

29

8.6  <u>Severability</u>. If any provision in this NARCO Asbestos Trust Agreement is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this NARCO Asbestos Trust Agreement.

8.7  <u>Notices</u>.

(a) Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative; in each case as provided on such person's claim form submitted to the NARCO Asbestos Trust with respect to his or her NARCO Asbestos Trust Claim, or by such other means, including electronic notice, as may be agreed between the NARCO Asbestos Trust and the NARCO Asbestos Trust Claimant or, where applicable, such person's legal representative.

(b) Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered at the addresses designated below, or sent by electronic mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address or addresses as may hereafter be furnished by any of Reorganized NARCO, Post-Effective ANH, Honeywell, the Trustees, the NARCO Asbestos TAC, or the NARCO Asbestos Future Claimants Representative to the others in compliance with the terms hereof.

To the NARCO Asbestos Trust
or the Trustees:

        Hon. Ken M. Kawaichi (Ret.)
        14 Mesa Avenue
        Piedmont, California 94611
        Facsimile: (510) 601-9254
        Email: kkawaichi@sbcglobal.net

        Richard B. Schiro
        3710 Rawlins Street, Suite 1350
        Dallas, Texas 75219
        Facsimile: (214) 521-3838
        Email: rbschiro@schirolaw.com

        Mark M. Gleason
        Gleason & Associates
        One Gateway Center, Suite 525
        420 Fort Duquesne Blvd.
        Pittsburgh, PA 15222-1402
        Facsimile: (412) 391-1790
        Email: mgleason@gleason-cpa.com

Sander L. Esserman
Steven A. Felsenthal
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Facsimile: (214) 969-4999
Email: Esserman@sbep-law.com
Email: Felsenthal@sbep-law.com

To the NARCO Asbestos TAC:    Joseph F. Rice
John Baden
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29465
Facsimile: (843) 216-9290
Email: jrice@motleyrice.com
Email: jbaden@motleyrice.com

Perry Weitz
Lisa Nathanson Busch
Weitz & Luxenberg, PC
700 Broadway
New York, New York 10003
Facsimile: (212) 344-5461
Email: pweitz@weitzlux.com
Email: lbusch@weitzlux.com

Steven Kazan
Kazan, McClain, Satterley, Lyons, Greenwood & Oberman, A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, California 94607
Facsimile: (510) 835-4913
Email: skazan@kazanlaw.com

Steven T. Baron
Baron & Budd. P.C.
3102 Oak Lawn, Suite 1100
Dallas, Texas 75219
Facsimile: (214) 824-8100
Email: sbaron@baronbudd.com

Bruce Mattock
Goldberg, Persky & White, P.C.
1030 Fifth Avenue, 3rd Floor
Pittsburgh, Pennsylvania 15219
Facsimile: (412) 471-8308
Email: bmattock@gpwlaw.com

Elihu Inselbuch
Caplin & Drysdale, Chartered
600 Lexington Avenue, 21st Floor
New York, New York 10022
Facsimile: (212) 379-6001
Email: ei@capdale.com

Peter Van N. Lockwood
Ann C. McMillan
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005
Facsimile: (202) 429-3301
Email: pvnl@capdale.com
Email: acm@capdale.com

To Reorganized
NARCO and
Post-Effective ANH:

North American Refractories Company
Attention: General Counsel
Cherrington Corporate Center
400 Fairway Drive
Moon Township, PA 15108
Facsimile: (412) 375-6957
Email: mschalk@anhrefractories.com

Michael T. Wolf
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Facsimile: (312) 527-0484
Email: mwolf@jenner.com

To Honeywell:

Honeywell International Inc.
101 Columbia Road
Morristown, New Jersey 07962
Attention: Katherine L. Adams, Senior Vice President and
General Counsel
Facsimile: (973) 455-4217
Email: kate.adams@honeywell.com

32

and

Craig H. Zimmerman
Ellen Tenenbaum
McDermott, Will & Emery
340 Madison Avenue
New York, New York 10173-1922
Facsimile: (202)756-8087
Email: czimmerman@mwe.com
etenenbaum@mwe.com

To NARCO Asbestos Future Claimants Representative:

Lawrence Fitzpatrick
100 American Metro Blvd.
Suite 108
Hamilton, New Jersey 08619
Facsimile: (609) 620-1466
Email: lfitzpatrick@theccr.com

James L. Patton, Jr.
Edwin J. Harron
Sharon M. Zieg
Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Facsimile: (302) 571-1253
Email: jpatton@ycst.com
Email: eharron@ycst.com
Email: Szieg@ycst.com

All such notices and communications shall be effective when delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission or by electronic delivery confirmation.

8.8     Counterparts. This NARCO Asbestos Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. Delivery of a counterpart hereof by facsimile transmission or by e-mail transmission of an Adobe portable document format file (also known as a "PDF" file) shall be effective as delivery of a manually executed counterpart hereof.

8.9     Successors and Assigns. The provisions of this NARCO Asbestos Trust Agreement shall be binding upon and inure to the benefit of Honeywell, the Debtors, the Reorganized

Debtors, the NARCO Asbestos Trust, and the Trustees and their respective successors and assigns, except that neither Honeywell nor the Debtors, nor the Reorganized Debtors, nor the NARCO Asbestos Trust, nor any Trustee may assign or otherwise transfer any of its, or his or her rights or obligations under this NARCO Asbestos Trust Agreement except, in the case of the NARCO Asbestos Trust and the Trustees, as contemplated by Section 3.1.

8.10    Limitation on Claim Interests for Securities Laws Purposes. NARCO Asbestos Trust Claims, and any interests therein, (a) shall not be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest; provided, however, that the foregoing shall not apply to the holder of an Indirect Asbestos Trust Claim that is subrogated to an NARCO Asbestos Trust Claim as a result of its satisfaction of such NARCO Asbestos Trust Claim.

8.11    Entire Agreement; No Waiver. The entire agreement of the Parties relating to the subject matter of this NARCO Asbestos Trust Agreement is contained herein and in the documents referred to herein, and this NARCO Asbestos Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

8.12    Headings. The headings used in this NARCO Asbestos Trust Agreement are inserted for convenience only and neither constitute a portion of this NARCO Asbestos Trust Agreement nor in any manner affect the construction of the provisions of this NARCO Asbestos Trust Agreement.

8.13    Governing Law. This NARCO Asbestos Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware.

8.14    Dispute Resolution. Any disputes that arise under this NARCO Asbestos Trust Agreement or under the NARCO Asbestos TDP among the Parties hereto, other than the Delaware Trustee, shall be resolved by submission of the matter to an alternative dispute resolution ("ADR") process mutually agreeable to the Parties involved. Any Party to the ADR process dissatisfied with the decision of the arbitrator(s) may apply to the Bankruptcy Court for a judicial determination of the matter. Any review conducted by the Bankruptcy Court shall be de novo. In either case, if the dispute arose pursuant to the consent provision set forth in Section 8.1(b) above, the burden of proof shall be on the Party or Parties who withheld consent to show that the objection was valid. If the dispute is not resolved by the ADR process within thirty (30) days after submission, the Parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court. Notwithstanding anything else herein contained, to the extent any provision of

this NARCO Asbestos Trust Agreement is inconsistent with any provision of the Plan or the NARCO Asbestos TDP, the Plan or the NARCO Asbestos TDP shall control.

8.15   Enforcement and Administration.   The Parties acknowledge the Bankruptcy Court's continuing exclusive jurisdiction to interpret and enforce the terms of the NARCO Asbestos TDP, this NARCO Asbestos Trust Agreement and the annexes hereto, pursuant to Article 11 of the Plan.

8.16   Effectiveness.   The NARCO Asbestos Trust shall not come into existence until the Certificate of Trust has been filed with the Delaware Secretary of State.  The Parties' duties and obligations under this NARCO Asbestos Trust Agreement shall not become binding and effective until the Effective Date of the Plan, provided the Plan includes an injunction in favor of Honeywell entered pursuant to Section 524(g) of the Bankruptcy Code that channels all asbestos-related personal injury claims arising out of the NARCO Product Line to the NARCO Asbestos Trust.

*[Signatures to follow.]*

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

HONEYWELL INTERNATIONAL INC.

BY:

Name: Katherine L. Adams
Title: Senior Vice President and General Counsel

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

TRUSTEES:

_____
Ken M. Kawaichi

_____
Richard B. Schiro

_____
Mark M. Gleason

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

TRUST ADVISORY COMMITTEE:

_____
Joseph F. Rice
Four-Year Term

_____
Perry Weitz
Three-Year Term

_____
Steven Kazan
Four-Year Term

_____
Steven T. Baron
Five-Year Term

_____
Bruce E. Mattock
Five-Year Term

38

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

TRUST ADVISORY COMMITTEE:

_____
Joseph F. Rice
Four-Year Term

_____
Perry Weitz
Three-Year Term

_____
Steven Kazan
Four-Year Term

_____
Steven T. Baron
Five-Year Term

_____
Bruce E. Mattock
Five-Year Term

38

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

TRUST ADVISORY COMMITTEE:

_____
Joseph F. Rice
Four-Year Term


_____
Perry Weitz
Three-Year Term

_____
Steven Kazan
Four-Year Term


_____
Steven T. Baron
Five-Year Term


_____
Bruce E. Mattock
Five-Year Term

38

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

TRUST ADVISORY COMMITTEE:

_____
Joseph F. Rice
Four-Year Term

_____
Perry Weitz
Three-Year Term

_____
Steven Kazan
Four-Year Term

_____
Steven T. Baron
Five-Year Term

_____
Bruce E. Mattock
Five-Year Term

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

TRUST ADVISORY COMMITTEE:

_____

Joseph F. Rice
Four-Year Term

_____

Perry Weitz
Three-Year Term

_____

Steven Kazan
Four-Year Term

_____

Steven T. Baron
Five-Year Term

_____

Bruce E. Mattock
Five-Year Term

38

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

FUTURE CLAIMANTS REPRESENTATIVE:

_Lawrence Fitzpatrick_
Lawrence Fitzpatrick

IN WITNESS WHEREOF, the Parties have executed this NARCO Asbestos Trust Agreement this 30th day of April, 2013.

DELAWARE TRUSTEE:
Wilmington Trust, National Association

BY: _____

Name: _____
          David B. Young

Title: _____
          Vice President

40

**Exhibit 3**

NARCO TDP

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | ) | Jointly Administered at |
| | ) | Case No. 02-20198 |
| | ) | |
| NORTH AMERICAN REFRACTORIES | ) | Chapter 11 |
| COMPANY, *et al.,* | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |

**FIRST AMENDED NORTH AMERICAN REFRACTORIES COMPANY
ASBESTOS PERSONAL INJURY SETTLEMENT
TRUST DISTRIBUTION PROCEDURES**

# TABLE OF CONTENTS

Page

SECTION I — Introduction ............................................................................. 1

   1.1   Purpose .................................................................................... 1
   1.2   Effective Date ........................................................................... 2

SECTION II — Overview ............................................................................... 2

   2.1   NARCO Asbestos Trust Goals .................................................. 2
   2.2   NARCO Asbestos Trust Claim Liquidation Procedures ............. 3
   2.3   The Maximum Annual Payment ................................................ 4
   2.4   NARCO Asbestos Trust Claims Payment Ratio ......................... 4
   2.5   Payment Percentage .................................................................. 6
       (a)   Implementation and Determination of a
            Payment Percentage .................................................... 6
       (b)   Applicability of the Payment Percentage ...................... 8
   2.6   Indirect Asbestos Trust Claims ................................................ 8
   2.7   Payment of NARCO Asbestos Trust Claims .............................. 9

SECTION III — TDP Administration .............................................................. 9

   3.1   Trustees' Advisory Committee and NARCO Asbestos Future Claimants
       Representative ......................................................................... 9
   3.2   Consent and Consultation Procedures ....................................... 10

SECTION IV — Resolution of NARCO Asbestos Trust Claims ....................... 10

   4.1   Ordering, Processing, and Payment of Claims ........................... 10
       (a)   Ordering of Claims ...................................................... 10
            (1)   Establishment of the Processing Queues ............... 10
            (2)   Effect of Statutes of Limitations and Repose ........ 12
       (b)   Processing of Claims ................................................... 13
       (c)   Payment of Claims ...................................................... 13
   4.2   Resolution of Pre-Established Claims ........................................ 15
       (a)   Processing and Payment .............................................. 15
       (b)   Marshalling of Security ............................................... 18
   4.3   Resolution of Unliquidated NARCO Asbestos Trust Claims ....... 18
       (a)   Expedited Review Process ............................................ 20
            (1)   In General .......................................................... 20
            (2)   Claims Processing Under Expedited Review ......... 20
            (3)   Disease Levels, Scheduled Values and
                Medical/Exposure Criteria .................................. 21
       (b)   Individual Review Process ........................................... 25
            (1)   Individual Review Process Application .................. 25

|  |  |  | (2) | Valuation Factors to Be Considered in Individual Review | 28 |
|  |  |  | (3) | Average Values and Maximum Values | 29 |
|  |  |  | (4) | Claims Processing Under Individual Review | 30 |
|  | 4.4 | Categorizing Claims as Extraordinary and/or Exigent |  |  | 30 |
|  |  | (a) | Extraordinary Claims |  | 30 |
|  |  | (b) | Exigent Claims |  | 31 |
|  |  |  | (1) | Exigent Health Claims | 32 |
|  |  |  | (2) | Exigent Hardship Claims | 32 |
|  | 4.5 | Secondary Exposure Claims |  |  | 32 |
|  | 4.6 | Indirect NARCO Asbestos Trust Claims |  |  | 33 |
|  | 4.7 | Evidentiary Requirements |  |  | 36 |
|  |  | (a) | Medical Evidence |  | 36 |
|  |  |  | (1) | In General | 36 |
|  |  |  |  | (A) Disease Levels I-III | 36 |
|  |  |  |  | (B) Disease Levels IV-VII | 37 |
|  |  |  |  | (C) Exception to the Exception for Certain Pre-Petition Claims | 37 |
|  |  |  | (2) | Credibility of Medical Evidence | 38 |
|  |  | (b) | Exposure Evidence |  | 39 |
|  |  |  | (1) | In General | 39 |
|  |  |  | (2) | Significant Occupational Exposure | 40 |
|  |  |  | (3) | Exposure Evidence | 40 |
|  | 4.8 | Claims Audit Program |  |  | 41 |
|  |  | (a) | The NARCO Asbestos Trust Claims Audit Program |  | 41 |
|  |  | (b) | Honeywell Audit Rights |  | 42 |
|  | 4.9 | Second Disease Claims |  |  | 43 |
|  | 4.10 | Arbitration |  |  | 43 |
|  |  | (a) | Establishment of Arbitration Procedures |  | 43 |
|  |  | (b) | Claims Eligible for Arbitration |  | 44 |
|  |  | (c) | Claims Arbitration |  | 45 |
|  |  | (d) | Limitations on and Payment of Arbitration Awards |  | 45 |
|  | 4.11 | Litigation |  |  | 45 |
| SECTION V — Claims Materials |  |  |  |  | 46 |
|  | 5.1 | Claims Materials |  |  | 46 |
|  | 5.2 | Content of Claims Materials |  |  | 46 |
|  | 5.3 | Withdrawal or Deferral of Claims |  |  | 47 |
|  | 5.4 | Filing Requirements and Fees |  |  | 48 |
| SECTION VI — General Guidelines for Liquidating and Paying Claims |  |  |  |  | 48 |
|  | 6.1 | Showing Required |  |  | 48 |
|  | 6.2 | Costs Considered |  |  | 48 |
|  | 6.3 | Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity |  |  | 49 |
|  | 6.4 | Punitive Damages |  |  | 50 |

6.5    Interest ........................................................................................................    50

6.6    Suits in the Tort System ..............................................................................    51

6.7    Payment of Judgments for Money Damages ...............................................    52

6.8    Releases ........................................................................................................    52

6.9    Third-Party Services   ....................................................................................    53

6.10    NARCO Asbestos Trust Disclosure of Information .....................................    53

SECTION VII  — Miscellaneous      ......................................................................    53

7.1    Amendments ................................................................................................    53

7.2    Adjustment to Average and Maximum Values ............................................    54

7.3    Severability    ................................................................................................    54

7.4    Governing Law ............................................................................................    54

**FIRST AMENDED NORTH AMERICAN REFRACTORIES COMPANY**

**ASBESTOS PERSONAL INJURY SETTLEMENT
TRUST DISTRIBUTION PROCEDURES**

The North American Refractories Company Asbestos Personal Injury Settlement Trust Distribution Procedures (for ease of reference hereinafter the "**NARCO Asbestos TDP**") contained herein provide for resolving all NARCO Asbestos Trust Claims and NARCO Asbestos Demands caused, in whole or in part, by exposure to asbestos-containing products manufactured, sold or distributed by North American Refractories Company ("**NARCO**") or its predecessors, for which NARCO and/or Honeywell International Inc. ("**Honeywell**") and their predecessors, successors, and assigns have legal liability (hereinafter for all purposes of this NARCO Asbestos TDP defined as "**NARCO Asbestos Trust Claims**"), as provided in and required by the North American Refractories Company Third Amended Plan of Reorganization ("**Plan**"), dated December 28 , 2005, as supplemented, and North American Refractories Company Asbestos Personal Injury Settlement Trust Agreement (for ease of reference hereinafter the "**NARCO Asbestos Trust Agreement**").  The Plan and NARCO Asbestos Trust Agreement establish the North American Refractories Company Asbestos Personal Injury Settlement Trust ("**NARCO Asbestos Trust**").  The Trustees of the NARCO Asbestos Trust ("**Trustees**") shall implement and administer this NARCO Asbestos TDP in accordance with the NARCO Asbestos Trust Agreement.   Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the NARCO Asbestos Trust Agreement.

## SECTION I

### Introduction

**1.1** **Purpose.**  This NARCO Asbestos TDP has been adopted pursuant to the NARCO Asbestos Trust Agreement.  It is designed to provide fair and equitable treatment in

substantially the same manner for all NARCO Asbestos Trust Claims that presently exist or may arise in the future.

      **1.2**    **Effective Date.**  This NARCO Asbestos TDP shall not be effective until the NARCO Asbestos Trust Agreement becomes effective, pursuant to Section 8.16 of the NARCO Asbestos Trust Agreement and the "**Effective Date**," for purposes of this TDP, shall be the date the NARCO Asbestos Trust Agreement becomes effective.

**SECTION II**

**Overview**

      **2.1**    **NARCO Asbestos Trust Goals.**  The goal of the NARCO Asbestos Trust is to treat all claimants equitably and in accordance with the requirements of Section 524(g) of the Bankruptcy Code.  This NARCO Asbestos TDP furthers that goal by setting forth procedures for processing and paying claims generally on an impartial, first-in-first-out basis, with the intention of paying all claimants over time based on historical values for substantially similar claims in the tort system.  To this end, this NARCO Asbestos TDP establishes a schedule of seven asbestos-related diseases ("**Disease Levels**"), six of which have presumptive medical and exposure requirements ("**Medical/Exposure Criteria**"). NARCO Asbestos Trust Claims involving Disease Levels I – IV and VI – VII have specific liquidated values ("**Scheduled Values**"), and those involving Disease Levels III - VII, have anticipated average values ("**Average Values**") and caps on their liquidated values ("**Maximum Values**").  The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values, and Maximum Values, which are set forth in Section 4.3 below, have all been selected and derived with the intention of achieving a fair allocation of the NARCO Asbestos Trust funds as among claimants suffering from different diseases that is congruent with the settlement history of claims against NARCO.

- 2 -

**2.2    NARCO Asbestos Trust Claim Liquidation Procedures.**  All claimants holding a NARCO Asbestos Trust Claim must file the claim with the NARCO Asbestos Trust in accordance with the proof of claim provisions of Section 5.1 as provided below.  NARCO Asbestos Trust Claims that are not Pre-Established Claims shall be placed in the Annual Contribution Claims Fund Processing Queue to be established pursuant to Section 4.1(a) below.  Pre-Established Claims shall be placed in the Pre-Established Claims Fund Processing Queue to be established pursuant to Section 4.2(a) below.

The NARCO Asbestos Trust shall liquidate all NARCO Asbestos Trust Claims involving Disease Levels I – IV, VI and VII at the applicable Scheduled Value for those claimants who opt for the Expedited Review Process described in Section 4.3(a) below and who can meet the presumptive Medical/Exposure Criteria set forth in that provision.

Alternatively, a claimant may opt to establish a liquidated value for his or her claim involving Disease Level III – VII that is greater than the applicable Scheduled Value by electing the NARCO Asbestos Trust's Individual Review Process described in Section 4.3(b) below.  The NARCO Asbestos Trust may determine that the liquidated value of a claim that undergoes the Individual Review Process is less than or greater than its Scheduled Value, based on the individual claimant's ability to satisfy the presumptive Medical/Exposure Criteria.  The liquidated value of a claim that undergoes the Individual Review Process shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 4.3(b)(3) below; provided, however, if the claim qualifies as an Extraordinary Claim as defined in Section 4.4(a) below, its liquidated value cannot exceed the maximum extraordinary value specified in that provision for such claims. Disease Level V (Lung Cancer 2) Claims and all Foreign Claims as defined in

Section 4.3(b)(1) below may be liquidated only pursuant to the NARCO Asbestos Trust's

Individual Review Process.

All unresolved disputes over a claimant's medical condition, exposure history, the

liquidated value of the claim, or whether the claim is a Pre-Established Claim, shall be subject to

binding or non-binding arbitration, at the election of the claimant, under procedures that are

provided  in Section 4.10 below and Attachment A hereto.  Disputes that are not resolved after

non-binding arbitration may enter the tort system as provided in Sections 4.11 and 6.6 below.

However, if and when a claimant obtains a judgment in the tort system, the judgment will be

payable (subject to the Maximum Annual Payment, Claims Payment Ratio and the Payment

Percentage, if applicable, provisions set forth below) only as provided in Section 6.7 below.

**2.3**   **The Maximum Annual Payment.**  In each year, the NARCO Asbestos

Trust shall determine and pay out a total of no more than an amount equal to or less than the sum

of (i) the proceeds from any sale of any asset held by the NARCO Asbestos Trust and (ii) the

contribution owed by Honeywell to the NARCO Asbestos Trust for this purpose in that year as

established by the Plan and Section 2.3(c)(i)of the NARCO Asbestos Trust Agreement,

("**Maximum Annual Payment**") to resolve NARCO Asbestos Trust Claims. As provided for in

Section 4.2(a) below, Pre-Established Claims shall not be subject to the Maximum Annual

Payment, which claims shall be paid from funds separately provided for by the Plan and the

NARCO Asbestos Trust Agreement.

**2.4**   **NARCO Asbestos Trust Claims Payment Ratio.**  Based upon the claims

settlement history of NARCO and Honeywell and the analysis of present and future claims, a

Claims Payment Ratio has been determined which, as of the Effective Date (as defined in

Section 1.2 above), has been set at 60% for Category A claims, which consist of NARCO

Asbestos Trust Claims involving severe asbestosis and malignancies (Disease Levels III – VII) that were unliquidated as of the Petition Date, and at 40% for Category B claims, which are NARCO Asbestos Trust Claims involving other asbestos-related nonmalignant disease (Disease Levels I and II) that were similarly unliquidated as of the Petition Date.  The Claims Payment Ratio shall not apply to any Pre-Established Claims.  In each year, based upon the Maximum Annual Payment, 60% of that amount will be available to pay liquidated Category A claims and 40% will be available to pay liquidated Category B claims that have been liquidated since the Effective Date.

In the event there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds within the particular Category shall be paid to the maximum extent to claimants in the particular Category based on their place in the Annual Contribution Claims Fund Payment Queue described in Section 4.1(a) below based upon the date of claim liquidation.  Claims for which there are insufficient funds will be carried to the next year where they will be placed at the head of that payment queue.

The 60%/40% Claims Payment Ratio and its rollover provision shall apply to all NARCO Asbestos Voting Claims (as defined in the Plan) and shall not be amended until the fifth anniversary of the Effective Date.  Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendment to avoid a manifest injustice.  The accumulation, rollover, and subsequent delay of claims resulting from the application of the Claims Payment Ratio, shall not, in and of itself, constitute such circumstances.  Nor may an increase in the number of Category B claims beyond those predicted or expected be considered as a factor in deciding whether to reduce the percentage allocated to Category A claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustees should also consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of the foreseeability of the reasons why there would be any need to make an amendment.  No amendment to the Claims Payment Ratio may be made without the consent of the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative pursuant to the consent process set forth in Section 8.1(b) of the NARCO Asbestos Trust Agreement.

### 2.5    Payment Percentage.

**2.5(a). Implementation and Determination of a Payment Percentage**. The NARCO Asbestos Trust shall periodically estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds will be available to treat all present and future NARCO Asbestos Trust Claims in a substantially similar manner.  To the extent necessary to reasonably assure that the NARCO Asbestos Trust will be in a financial position to pay holders of present and future NARCO Asbestos Trust Claims in substantially the same manner, the Trustees, with the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative and Honeywell, may develop and institute a process for reducing the payment of the liquidated value of NARCO Asbestos Trust Claims, whereby a claimant will receive a pro-rata share of the liquidated value of its NARCO Asbestos Trust Claim (the "**Payment Percentage**") after such liquidated value of his or her claim is determined pursuant to the NARCO Asbestos Trust's Expedited Review process or the NARCO Asbestos Trust's Individual Review Process, arbitration, or litigation in the tort system.  In no event shall the Payment Percentage apply to Pre-Established Claims.

To the extent a Payment Percentage is applied by the NARCO Asbestos Trust to NARCO Asbestos Trust Claims, no less frequently than once every three years, commencing with the first day of January occurring after the Plan is consummated, the Trustees shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage, if necessary, with the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative and Honeywell.

The Trustees shall also reconsider the then-applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, or Honeywell.  The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future NARCO Asbestos Trust Claims, the value of the assets available to the NARCO Asbestos Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of NARCO Asbestos Trust Claims.  When making these determinations the Trustees shall exercise common sense and flexibly evaluate all relevant factors.  The Payment Percentage applicable to Category A or Category B claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of NARCO Asbestos Trust Claims shall receive the same Payment Percentage, but the payment may be deferred as needed.

**2.5(b)  Applicability of the Payment Percentage**.  To the extent the NARCO Asbestos Trust implements a Payment Percentage, no holder of a NARCO Asbestos Trust Claim other than a Pre-Established Claim shall receive a payment for a NARCO Asbestos

Trust Claim that exceeds the Payment Percentage times the liquidated value of the claim.  Except as otherwise provided in Section 4.1(c) below, for all NARCO Asbestos Trust Claims involving deceased or incompetent claimants for which approval of the NARCO Asbestos Trust's offer by a court or probate process is required, no holder of any other NARCO Asbestos Trust Claim other than a Pre-Established Claim shall receive a payment that exceeds the liquidated value of the claim times the Payment Percentage in effect at the time of payment.

If a redetermination of the Payment Percentage for the NARCO Asbestos Trust has been proposed in writing by the Trustees to the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative and Honeywell, but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage.  However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount.  Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

2.6    **Indirect Asbestos Trust Claims**.  As set forth in Section 4.6 below, any NARCO Asbestos Trust Claim that is an Indirect Asbestos Trust Claim that is payable from the NARCO Asbestos Trust shall be subject to the same processing, liquidation and payment provisions under this NARCO Asbestos TDP that the claim would have been subject to if it had been brought by the original claimant against the NARCO Asbestos Trust.

2.7    **Payment of NARCO Asbestos Trust Claims.**  Upon final liquidation, all NARCO Asbestos Trust Claims except Pre-Established Claims shall be placed in the Annual Contribution Claims Fund Payment Queue to be established by the NARCO Asbestos Trust

pursuant to Section 4.1(c) below and Section 2.3(c)(i)(A) of the NARCO Asbestos Trust

Agreement, and all Pre-Established Claims shall be placed in a separate Pre-Established Claims

Fund Payment Queue to be established by the NARCO Asbestos Trust pursuant to Section 4.2(a)

below and Section 2.3(c)(i)(B) of the NARCO Asbestos Trust Agreement.  NARCO Asbestos

Trust Claims in each such payment queue shall then be paid solely from either the Annual

Contribution Claims Fund or the Pre-Established Claims Fund as provided in Section 2.3(c)(i) of

the NARCO Asbestos Trust Agreement.

## SECTION III

### NARCO Asbestos TDP Administration

**3.1     Trustees' Advisory Committee and NARCO Asbestos Future
Claimants Representative.**  Pursuant to the Plan and the NARCO Asbestos Trust Agreement,

this NARCO Asbestos TDP will be administered by the Trustees in consultation with (1) a five-

member Trustees Advisory Committee ("**NARCO Asbestos TAC**") that represents the interests

of holders of present NARCO Asbestos Trust Claims, (2) a NARCO Asbestos Future Claimants

Representative ("**NARCO Asbestos Future Claimants Representative**") who represents the

interests of holders of NARCO Asbestos Trust Claims that will be asserted in the future, and (3)

the trust's principal funder, Honeywell.  The Trustees shall obtain the consent of the NARCO

Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell as

provided in the NARCO Asbestos Trust Agreement and before seeking to amend these

Procedures pursuant to Section 7.1 below.  The Trustees shall also consult with the NARCO

Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell on such

matters as are provided below and in the NARCO Asbestos Trust Agreement.  The initial

members of the NARCO Asbestos TAC and the initial NARCO Asbestos Future Claimants Representative are identified in the NARCO Asbestos Trust Agreement.

      **3.2**    **Consent and Consultation Procedures.**  In those circumstances in which consultation or consent is required, the Trustees will provide written notice to the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell of the specific amendment or other action that is proposed.  The Trustees will not implement such amendment nor take such action unless and until the parties have engaged in the Consultation Process described in Section 8.1(a) , or the Consent Process described in Section 8.1(b) of the NARCO Asbestos Trust Agreement, respectively.

## SECTION IV

### Resolution of NARCO Asbestos Trust Claims

**4.1**    **Ordering, Processing, and Payment of Claims.**

    **4.1(a)  Ordering of Claims.**

        **4.1(a)(1)   Establishment of the Processing Queues.**  The NARCO Asbestos Trust will order all unliquidated NARCO Asbestos Trust Claims that are not Pre-Established Claims for processing purposes on a first-in, first out basis except as otherwise provided herein (the "**Annual Contribution Claims Fund Processing Queue**"). The NARCO Asbestos Trust shall also establish a separate processing queue for Pre-Established Claims (the "**Pre-Established Claims Fund Processing Queue**") and shall place all such Pre-Established Claims in such queue pursuant to the provisions of Section 4.2(a) below.  For each claim submitted, the NARCO Asbestos Trust shall determine whether the claim is or is not a Pre-Established Claim by reviewing the claims data required to be supplied by Honeywell and/or

NARCO pursuant to Section 4.2(a) below, as well as any information required to be supplied by the holder of the claim hereunder.

For all NARCO Asbestos Trust Claims other than Pre-Established Claims filed on or before the date six (6) months after the NARCO Asbestos Trust first makes available the proof of claim form and other claims materials required for purposes of filing NARCO Asbestos Trust Claims (such six-month date being referred to herein as the "**Initial Claims Filing Date**"), a claimant's position in the Annual Contribution Claims Fund Processing Queue shall be determined as of the earlier of (i) the date after the Petition Date, but before the date the NARCO Asbestos Trust first makes available its claims filing materials, that the claim was filed in the tort system against another defendant; (ii) the date the claimant filed a proof of claim in the Chapter 11 Cases;  and (iii) the date the claimant or his or her authorized agent filed a ballot in the Chapter 11 Cases for the purpose of voting on the Plan in accordance with the voting procedures adopted by the Court.  Following the Initial Claims Filing Date, the claimant's position in the Annual Contribution Claims Fund Processing Queue shall be determined by the date the claim was filed with the NARCO Asbestos Trust.  If any claims are filed on the same date, the claimant's position in the Annual Contribution Claims Fund Processing Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease.  If any unliquidated NARCO Asbestos Trust Claims are both diagnosed and filed on the same dates, the position of those claims in the Annual Contribution Claims Fund Processing Queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants. Eligibility of NARCO Asbestos Trust Claims to be placed in the Pre-Established Claims Fund Processing Queue shall be determined pursuant to Section 4.2(a) below.

**4.1(a)(2)    Effect of Statutes of Limitations and Repose.**  All
unliquidated NARCO Asbestos Trust Claims, including Pre-Established Claims subject to
settlement agreements entered into between Honeywell and claimants after the Petition Date but
prior to the Effective Date that permit the claimant to liquidate the claim pursuant to all relevant
provisions of this NARCO Asbestos TDP, must meet either: (i) for claims first filed in the tort
system against NARCO or Honeywell prior to the Petition Date, the applicable federal, state, and
foreign statute of limitations and repose that was in effect at the time of the filing of the claim in
the tort system; or, (ii) for claims not filed against NARCO or Honeywell in the tort system prior
to the Petition Date, the applicable federal, state and foreign statute of limitations and repose that
is in effect at the time of the filing with the NARCO Asbestos Trust.  However, the running of
the applicable statute of limitations shall be tolled for purposes of these statutes as of the earliest
of (A) the actual filing of the claim against NARCO or Honeywell prior to the Petition Date,
whether in the tort system or by submission of the claim to NARCO or Honeywell pursuant to an
administrative settlement agreement; (B) the filing of the claim after the Petition Date but prior
to the Initial Claims Filing Date against another defendant in the tort system; (C) the filing of the
requisite proof of claim in the Chapter 11 Cases; (D) the filing of a ballot in the Chapter 11
Cases for voting purposes; or (E) the filing of a proof of claim with the requisite supporting
documentation with the NARCO Asbestos Trust after the Initial Claims Filing Date.  If a
NARCO Asbestos Trust Claim meets any of the tolling provisions described in the preceding
sentence and was not barred by the applicable statute of limitations as of the date of the tolling,
the NARCO Asbestos Trust Claim will be treated as timely filed regardless of the date that it is
actually filed with the NARCO Asbestos Trust. Any claims that were first diagnosed after the
Petition Date, irrespective of any relevant statute of limitations, may be filed with the NARCO

Asbestos Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later.

**4.1(b)  Processing of Claims.**  As a general practice, the NARCO Asbestos Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the Annual Contribution Claims Fund Processing Queue or the Pre-Established Claims Fund Processing Queue in the near future.  To the extent that a delay of more than six (6) months exists between the date a claimant's proof of claim and supporting documentation are initially submitted to the NARCO Asbestos Trust and the date the NARCO Asbestos Trust anticipates reaching the claim in the Annual Contribution Claims Fund Processing Queue or Pre-Established Claims Fund Processing Queue, the NARCO Asbestos Trust shall provide the claimant with an opportunity to supplement or update his or her proof of claim form and supporting documentation to include information that was not previously available to the claimant at the time the proof of claim was originally filed.

Claims that were not filed against NARCO or Honeywell in the tort system or actually submitted to NARCO or Honeywell pursuant to an administrative settlement agreement prior to the Petition Date, or against another defendant in the tort system prior to the Plan Filing Date, shall not be processed until after the Initial Claims Filing Date.

**4.1(c)  Payment of Claims.**  NARCO Asbestos Trust Claims other than Pre-Established Claims that have been liquidated by the Expedited Review Process as provided in Section 4.3(a) below, by the Individual Review Process as provided in Section 4.3(b) below, by arbitration as provided in Section 4.10 below, or in the tort system provided in Section 4.11 below, shall be placed in a payment queue (the "**Annual Contribution Claims Fund Payment Queue**") to be created by the NARCO Asbestos Trust based on the date their liquidation became

- 13 -

final, and shall be paid from the Annual Contribution Claims Fund  described in Section 2.3(c)(i)(A) of the NARCO Asbestos Trust Agreement. All such payments shall also be subject to the Maximum Annual Payment, the Claims Payment Ratio and any applicable Payment Percentage, except as otherwise provided herein. Pre-Established Claims shall be liquidated pursuant to Section 4.2(a) below, placed in a separate payment queue (the "**Pre-Established Claims Fund Payment Queue**") to be established pursuant to Section 4.2(a), and paid from the Pre-Established Claims Fund as provided in Section 2.3(c)(i)(B) of the NARCO Asbestos Trust Agreement.

In a case in which the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the offer by the claimant's representative, any offer made by the NARCO Asbestos Trust on the claim shall remain open so long as proceedings before that court or in the probate process remain pending, provided that the NARCO Asbestos Trust has been furnished with evidence that the settlement offer has been submitted to such court or in the probate process for approval.  If the offer is approved by the court or through the probate process and accepted by the claimant's representative, the NARCO Asbestos Trust shall pay the claim in the amount so offered multiplied by the Payment Percentage, if applicable, in effect at the time the offer was first made.  For purposes of placement in the Annual Contribution Claims Fund Payment Queue or the Pre-Established Claims Fund Payment Queue, the date of final liquidation shall be the date the claimant's representative accepts the offer approved by the court or probate process.

If any claims are liquidated on the same date, the claimant's position in the appropriate payment queue shall be determined by the date of the diagnosis of the claimant's

asbestos-related disease.  If any claims are liquidated on the same date and the respective

claimant's diseases were diagnosed on the same date, the position of those claims in the

appropriate payment queue shall be determined by the dates of the claimants' birth, with older

claimants given priority over younger claimants.

### 4.2    Resolution of Pre-Established Claims.

**4.2(a)  Processing and Payment.**  As soon as practicable after the

Effective Date, the NARCO Asbestos Trust shall pay all NARCO Asbestos Trust Claims that are

subject to (i) a binding settlement agreement, entered into with NARCO prior to the Petition

Date for the particular claim, that was judicially enforceable by the claimant, (ii) a binding

settlement agreement entered into with Honeywell after the Petition Date but prior to the

Effective Date of the NARCO Asbestos Trust if the settlement agreement in question provides

that the NARCO Asbestos Trust shall be responsible for satisfying any/or all of the unpaid

portion thereof,[1] or (iii) by a judgment that became final and non-appealable prior to the Petition

Date (collectively "**Pre-Established Claims**").

Pre-Established Claims shall also include all NARCO Asbestos Trust Claims that

were filed and served on NARCO or Honeywell as a defendant in the tort system prior to the

Petition Date of January 4, 2002, based upon allegations that the claimant's alleged asbestos-

related injury arose, in whole or in part, from exposure to a NARCO asbestos-containing

product.

---

[1]      To avoid confusion, "Pre-Established Claims" include all claims subject to such settlement agreements with Honeywell, regardless of whether (i) the settlement agreement itself fixes or liquidates a specific  amount the claimant is to receive from the NARCO Asbestos Trust, or (ii) the settlement agreement entitles the claimant to file a NARCO Asbestos Trust Claim to be liquidated by the NARCO Asbestos Trust in accordance with all relevant provisions of this TDP. So long as a claim is subject to a binding settlement agreement, entered into with Honeywell after the Petition Date but prior to the Effective Date, that claim is a Pre-Established Claim.

Pre-Established Claims shall be processed in accordance with their order in the Pre-Established Claims Fund Processing Queue based on the date the NARCO Asbestos Trust receives either: (i) in the case of claims liquidated pursuant to a settlement agreement between the claimant and Honeywell after the Petition Date but before the Effective Date, such documentation, if any, as may be required under the terms of the Agreement; or, (ii) in the case of all other Pre-Established Claims, a completed proof of claim form with all required documentation for the particular claim; provided, however, the amounts payable with respect to any Pre-Established Claim shall not be subject to nor taken into account in consideration of the Maximum Annual Payment, the Claims Payment Ratio, or the Payment Percentage, if any.

In the case of claims liquidated pursuant to settlement agreements between claimants and Honeywell after the Petition Date but before the Effective Date that provide that the NARCO Asbestos Trust shall be responsible for satisfying the unpaid portion thereof, Honeywell shall facilitate the processing of such claims by providing the NARCO Asbestos Trust with the name of each claimant covered by each such agreement, his or her Social Security number, the name and address of the claimant's law firm, and the nature of the claimant's alleged asbestos-related disease. Honeywell shall also advise the NARCO Asbestos Trust as to whether the settlement agreement fixes a specific amount that the NARCO Asbestos Trust is obligated to pay the claimant or whether the claim must be liquidated by the NARCO Asbestos Trust pursuant to all relevant provisions of this NARCO Asbestos TDP.  NARCO and/or Honeywell shall also provide the NARCO Asbestos Trust with comparable information concerning any binding settlement agreements it entered into with claimants holding NARCO Asbestos Trust Claims prior to the Petition Date, as well as any NARCO Asbestos Trust Claims that were filed and served on it, or tried to final judgment, prior to the Petition Date.

The NARCO Asbestos Trust shall in turn provide Honeywell with all documentation submitted for each Pre-Established Claim identified by the Trust pursuant to Section 4.1(a)(1) above, following which Honeywell shall screen the claim and, within forty-five (45) days of receipt of the documentation, advise the NARCO Asbestos Trust whether the claim qualifies for payment in an amount fixed in a settlement agreement with it or NARCO, or in a final judgment against NARCO, and thus should be placed immediately in the Pre-Established Claims Fund Payment Queue, or whether the claim is unliquidated, and thus should be processed and liquidated in accordance with all relevant provisions of this NARCO Asbestos TDP, including Section 4.3 below, and if qualified for payment, placed in the Pre-Established Claims Fund Payment Queue; provided, however, that if the information provided to the NARCO Asbestos Trust by Honeywell pursuant to the provisions of the prior paragraph establishes that a claim should be immediately placed in the Pre-Established Claims Fund Payment Queue, such claim shall not require any further review by Honeywell and shall be placed immediately in the Pre-Established Claims Fund Payment Queue.  In any event, all NARCO Asbestos Trust Claims in the Pre-Established Claims Fund Payment Queue shall be paid solely from the Pre-Established Claims Fund provided by Honeywell pursuant to Section 2.3(c)(i)(B) of the NARCO Asbestos Trust Agreement.

Any dispute between a claimant and the NARCO Asbestos Trust and/or Honeywell as to whether a claim is a Pre-Established Claim and/or the amount of its liquidated value shall be resolved by binding or non-binding arbitration pursuant to Section 4.10 below. Any such dispute not resolved by non-binding arbitration may be resolved in the tort system as provided in Sections 4.11 and 6.6 below. Any dispute between the Trust and Honeywell over whether a claim is a Pre-Established Claim and/or the amount of its liquidated value shall be

subject to the dispute resolution procedures set forth in Section 8.14 of the NARCO Asbestos Trust Agreement.

If any Pre-Established Claims are filed with the NARCO Asbestos Trust on the same date, the claimant's position in the Pre-Established Claims Fund Processing Queue shall be determined by the date the claim was established by a final judgment, or by a settlement agreement with NARCO or Honeywell, or by its filing and service on Honeywell or NARCO in the tort system prior to the Petition Date.  If any such claims were filed or established on the same date, the position of those claims in the Pre-Established Claims Fund Processing Queue shall be determined by the date of claimant's first diagnosis of an asbestos-related disease, with priority given to the earlier diagnosis.  If any such claims were diagnosed and filed or established on the same date, the position of those claims in the Pre-Established Claims Fund Processing Queue shall be determined by the claimants' date of birth, with priority given to older claimants over younger claimants.

**4.2(b)  Marshalling of Security.**  Holders of Pre-Established Claims that are secured by letters of credit, appeal bonds, or other security or sureties shall first exhaust their rights against any applicable security or surety before making a claim against the NARCO Asbestos Trust.  Only in the event that such security or surety is insufficient to pay the Pre-Established Claim in full shall the deficiency be processed and paid as a Pre-Established Claim.

**4.3      Resolution of Unliquidated NARCO Asbestos Trust Claims.**

Claimants seeking resolution of unliquidated NARCO Asbestos Trust Claims, including any Pre-Established Claim that is required by the terms of the relevant settlement agreement between the claimant and Honeywell to be liquidated by the NARCO Asbestos Trust in accordance with the provisions of this NARCO Asbestos TDP, must first file a proof of claim form, together with the

required supporting documentation, in accordance with the provisions of Sections 5.1 and 5.2 below.  Within six months after the establishment of the NARCO Asbestos Trust, in consultation with Honeywell, the NARCO Asbestos TAC, and the NARCO Asbestos Future Claimants Representative, the NARCO Asbestos Trust shall adopt internal operating procedures for the purposes of implementing the Plan, the NARCO Asbestos Trust Agreement, and this NARCO Asbestos TDP, which shall include internal deadlines for processing all unliquidated NARCO Asbestos Trust Claims.  It is anticipated that such procedures shall contemplate that the NARCO Asbestos Trust will provide each claimant with a response within six (6) to nine (9) months of receiving a complete proof of claim submission.

The proof of claim form shall require the claimant to assert his or her NARCO Asbestos Trust Claim for the highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the Disease Level alleged on the proof of claim form, all claims filed with the NARCO Asbestos Trust shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, with all lower Disease Levels for which the claim then qualifies or may qualify in the future subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claim shall be placed in the relevant processing queue in accordance with the ordering criteria described in Sections 4.1(a) and 4.2(a) above, and shall be liquidated under the NARCO Asbestos Trust's Expedited Review Process described in Section 4.3(a) below, the NARCO Asbestos Trust's Individual Review Process described in Section 4.3(b) below, arbitration described in Section 4.10 below, or litigation as described in Section 6.6 below.

**4.3(a)  Expedited Review Process.**

**4.3(a)(1)  In General.**  The NARCO Asbestos Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating all claims that can easily be verified by the NARCO Asbestos Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level**.**  Expedited Review thus provides claimants with a substantially less burdensome process for pursuing NARCO Asbestos Trust Claims than does the Individual Review Process described in Section 4.3(b) below.  Expedited Review is also intended to provide qualifying claimants a fixed and certain claims payment.  Thus, claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be paid the applicable Scheduled Value for such Disease Level set forth in Section 4.3(a)(3) below.  However, all claims liquidated by Expedited Review shall be subject to the Maximum Annual Payment, the Claims Payment Ratio and the Payment Percentage, if any.  Notwithstanding anything contained herein, Lung Cancer 2 (Disease Level V), Secondary Exposure, Exigent, Extraordinary and Foreign Claims, as defined below, may only be liquidated pursuant to the Individual Review Process described in Section 4.3(b) below.

**4.3(a)(2)    Claims Processing Under Expedited Review.**  All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the proof of claim form adopted by the NARCO Asbestos Trust.  As an eligible proof of claim form is reached in the relevant  processing queue, the NARCO Asbestos Trust shall: (1) determine whether the claim described therein meets the Medical/Exposure Criteria for one of the six Disease Levels eligible for Expedited Review, and, if it does, determine its Scheduled Value; and (2) advise the claimant of its determination.  If the NARCO Asbestos Trust determines that a

claimant should be offered the Scheduled Value, the NARCO Asbestos Trust shall tender to the

claimant an offer of payment of the determined Scheduled Value, together with a form of release

approved by the NARCO Asbestos Trust.  If the claimant accepts the offer of payment and

returns the release properly executed, the claim shall be placed in the relevant payment queue,

following which the Trust shall disburse payment subject to the limitations of the Maximum

Annual Payment, Claims Payment Ratio and the Payment Percentage, if applicable.

### 4.3(a)(3)   Disease Levels, Scheduled Values, and

**Medical/Exposure Criteria.**  The seven Disease Levels covered by this NARCO Asbestos TDP,

together with the Medical/Exposure Criteria for each and the Scheduled Values for the six

Disease Levels eligible for Expedited Review are set forth below.  Because claimants seeking

recovery from the NARCO Asbestos Trust who fall within Disease Level V may not undergo

Expedited Review and must undergo Individual Review, no Scheduled Value is provided.

| **Disease Level** | **Scheduled Value** | **Medical/Exposure Criteria** |
| --- | --- | --- |
| Mesothelioma (Level VII) | $75,000 | (1) Diagnosis[2] of mesothelioma; and (2) the requisite[3] evidence of exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors. |
| Lung Cancer 1 (Level VI) | $18,000 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos Related Nonmalignant Disease[4], |

---

[2]    The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 4.7 below.

[3]    "**Requisite evidence of exposure**" means evidence which satisfies all of the criteria of Section 4.7(b) below.

[4]    Evidence of "**Bilateral Asbestos-Related Nonmalignant Disease**" for purposes of meeting the criteria for establishing Disease Levels I, II, IV and VI, means either (i) a chest X-ray read by a NIOSH certified B reader of 1/0 or higher on the ILO scale or (ii) (x) a chest X-ray read by a NIOSH certified B reader, (y) a CT scan read by a qualified physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification.  Solely for claims filed against NARCO,

(2) the requisite evidence of occupational exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors, (3) Significant Occupational Exposure to asbestos,[5] and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question.

Lung Cancer 2 (Level V)    None

(1) Diagnosis of a primary lung cancer; (2) the requisite evidence of occupational exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question.

Lung Cancer 2 (Level V) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer (Level VI) claims.  All claims in this Disease Level will be individually evaluated.  The estimated likely average of the individual evaluation awards for this category is $15,000, with such awards capped at  $50,000, unless the claim qualifies for Extraordinary Claim treatment (discussed in Section 4.4(a) below).

---

Honeywell, or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a qualified physician, or (ii) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II,  IV, and VI.  Pathological evidence of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol.106, No. 11, App. 3 (October 8, 1982).

[5]    "**Significant Occupational Exposure**" is defined in Section 4.7(b)(2) below.

Level V claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is also a Smoker.[6]  In any event, no presumption of validity will be available for any claims in this category.

| Other Cancer (Level IV) | $9,000 | |

(1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) the requisite evidence of occupational exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors, (3) Significant Occupational Exposure, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question.

| Severe Asbestosis (Level III) | $18,000 | |

(1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (a) TLC less than 65%, or (b) FVC less than 65% plus FEV1/FVC ratio greater than

---

[6]        There is no distinction between Non-Smokers and Smokers for either Lung Cancer 1 (Level VI) or Lung Cancer 2 (Level V), although a claimant who meets the more stringent requirements of Lung Cancer 1 (Level VI) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the NARCO Asbestos Trust.  In such a case, it is anticipated that the liquidated value of the claim might well exceed the Scheduled Values for Lung Cancer 1 (Level VI) shown above.  "**Non-Smoker**" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

65%, (2) the requisite evidence of occupational exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question.

Asbestosis/Pleural
Disease (Level II)          $ 7,500          (1)(a) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (b) TLC less than 80%, or FVC less than 80% plus FEV1/FVC ratio greater than or equal to 65%, and (2) the requisite evidence of occupational exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question.

Other Asbestos Disease
(Level I)                   $ 1,200          (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, (2) the requisite evidence of occupational exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors, and (3) five years cumulative occupational exposure to asbestos.

**4.3(b)  Individual Review Process.**

**4.3(b)(1)   Individual Review Process Application.**  The NARCO Asbestos Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of a NARCO Asbestos Trust Claim, which meets the presumptive Medical/Exposure Criteria for Disease Levels III –VII where the claimant has extenuating circumstances that he or she believes warrant a liquidated value above the applicable Scheduled Value.

Claims that do not meet the presumptive Medical Criteria for a Disease Level set forth above, but that do involve a significant asbestos-related medical condition, may also undergo Individual Review upon submission by the claimant of a physician's report describing the claimant's medical condition in detail, together with such other supporting evidence, such as findings of experts, that establishes the existence of the medical condition. For example, a significant medical condition would include any asbestos-related medical condition which caused or contributed to the death of the claimant and/or for which surgery has been or will be required, as well as an asbestos-related medical condition such as significant pleural encasement or Cor Pulmonale.  Such claimants must still submit requisite evidence of exposure.

Any dispute between a claimant and the NARCO Asbestos Trust as to the existence and/or significance of the claimant's asbestos-related medical condition shall be subject to arbitration pursuant to Section 4.10 below, which process may include further review of the claim by an independent panel of medical experts, and litigation in the tort system pursuant to Section 4.11 below. In the event that the claimant establishes a significant asbestos-related medical condition pursuant to this provision, the claimant shall be paid the Scheduled Value for the most comparable Disease Level set forth above.  The NARCO Asbestos Trust may

offer up to the Maximum Value for the most comparable Disease Level under Section 4.4(a) to such claimants who qualify under Section 4.4(a) for treatment as Extraordinary Claims.

The Individual Review Process is intended to result in payments equal to the full liquidated value for each qualifying claim; however, the liquidated value of any NARCO Asbestos Trust Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review.  Moreover, the liquidated value for a claim involving Disease Levels III – VII shall not exceed the applicable Maximum Value for the relevant Disease Level set forth in Section 4.3(b)(3) below, unless the claim meets the requirements of an Extraordinary Claim described in Section 4.4(a) below, in which case its liquidated value cannot exceed the applicable maximum extraordinary value set forth in that provision for such claims.  Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants who undergo the Individual Review Process will necessarily be paid the liquidated value of their NARCO Asbestos Trust Claims later than would have been the case had the claimant elected or been eligible for the Expedited Review Process.

In reviewing Foreign Claims, the NARCO Asbestos Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in Section 4.3(b)(2) below.  The NARCO Asbestos Trust shall determine the liquidated value of Foreign Claims based on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in Section 4.3(b)(2) below.  Because NARCO Asbestos Trust Claims of individuals exposed in Canada who were resident in Canada when such claims were filed were routinely litigated and resolved in the courts of the United States, and because the resolution history of these claims has been included

in developing the Expedited Review Process, such claims will not be considered Foreign Claims hereunder and will be eligible for liquidation under the Expedited Review Process.[7]

A "**Foreign Claim**," therefore, is a NARCO Asbestos Trust Claim with respect to which the claimant's exposure to an asbestos-containing product for which NARCO has legal responsibility occurred outside of the United States and its Territories and Possessions, and outside of the Provinces and Territories of Canada.

For purposes of the Individual Review Process for Foreign Claims, the Trustees, with the consent of the NARCO Asbestos TAC, Honeywell and the NARCO Asbestos Future Claimants Representative, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to all Foreign Claims channeled to the NARCO Asbestos Trust; provided however, that such criteria, standards or requirements shall not effectuate substantive changes to the claims eligibility requirements under this NARCO Asbestos TDP, but rather shall be made only for the purpose of adapting those requirements to the particular licensing provisions and/or medical customs or practices of the foreign country in question.

At such time as the NARCO Asbestos Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction, the Trustees, with the consent of the NARCO Asbestos TAC, Honeywell, and the NARCO Asbestos Future Claimants Representative, may also establish a separate valuation matrix for any such claims based on that data.

The medical/exposure evidence relating to Foreign Claims shall be processed and reviewed, and the liquidated value of such claims shall be determined, only

---

[7]     Foreign claims may only be considered through the Individual Review Process.

pursuant to the Individual Review Process.  Foreign Claims liquidated through Individual

Review shall not be considered by the Trustees in determining the Trust's adherence to Average

Values.

**4.3(b)(2)    Valuation Factors to be Considered in Individual**

**Review.**  The NARCO Asbestos Trust shall liquidate the value of each Individual Review claim

based on factors that affect the severity of damages and values within the tort system including,

but not limited to (i) the degree to which the characteristics of a claim differ from the

presumptive Medical/Exposure Criteria for the Disease Level in question; provided, however,

that all claimants, including those that choose the Individual Review Process, must provide

requisite  evidence of occupational exposure to a specific asbestos-containing product

manufactured, sold or distributed by NARCO or its predecessors; (ii) factors such as the

claimant's age, disability, employment status, disruption of household, family or recreational

activities, dependencies, special damages, and pain and suffering; (iii) evidence that the

claimant's damages were (or were not) caused by asbestos exposure, including exposure to

asbestos-containing products manufactured or distributed by NARCO or its predecessors (for

example, alternative causes, type of medical evidence, and type of documentation of injuries);

(iv) the industry of exposure and other factors discussed in Section 4.7(b) below, including

whether NARCO's business records demonstrate the presence of a specific NARCO asbestos-

containing product at the claimant's jobsite;  and (v) settlements and verdicts and the claimant's

and other law firms' experience in the Claimant's Jurisdiction (as defined below) for similarly

situated claims only.

For these purposes, the "**Claimant's Jurisdiction**" is the jurisdiction in

which the claimant's complaint specifically naming NARCO and/or Honeywell was pending (if

at all) against NARCO or Honeywell in the tort system prior to the Petition Date.  If the claim was not pending against NARCO and/or Honeywell as a named party in the tort system prior to the Petition Date, the Claimant's Jurisdiction is either (i) the jurisdiction in which the claimant was allegedly exposed to a NARCO asbestos-containing product, or (ii) the jurisdiction in which the claimant resides at the time the claim is filed with the NARCO Asbestos Trust.  The NARCO Asbestos Trust shall also take the quality and persuasiveness of the claimant's exposure evidence into account in reaching any liquidated value for each claim liquidated through the Individual Review Process.

With respect to the Claimant's Jurisdiction, in the event a personal representative or authorized agent makes a claim under the NARCO Asbestos TDP for wrongful death arising under the Alabama Wrongful Death Statute with respect to which the Claimant's Jurisdiction as defined above could only be the State of Alabama, the Claimant's Jurisdiction for such claim shall be the Commonwealth of Pennsylvania, and such claimant's damages shall be evaluated by the NARCO Asbestos Trust pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles.  The choice of law provision in Section 7.4 herein applicable to any claim with respect to which, but for this choice of law provision, the applicable law of the Claimant's Jurisdiction pursuant to this Section 4.3(b)(2) is determined to be the Alabama Wrongful Death Statute, shall only govern the rights between the NARCO Asbestos Trust and the claimant.

**4.3(b)(3)   Average Values and Maximum Values.**  The Average Values and Maximum Values for all claims involving Disease Levels III-VII that are not Extraordinary Claims as defined in Section 4.4(a) below are the following:

| Scheduled Disease | Scheduled Values | Average Value[8] | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VII) | $75,000 | $200,000 | $1,000,000 |
| Lung Cancer 1 (Level VI) | $18,000 | $50,000 | $200,000 |
| Lung Cancer 2 (Level V) | None | $15,000 | $50,000 |
| Other Cancer (Level IV) | $ 9,000 | $25,000 | $100,000 |
| Severe Asbestosis (Level III) | $18,000 | $50,000 | $100,000 |
| Asbestosis/Pleural Disease (Level II) | $ 7,500 | None | None |
| Other Asbestosis Disease Disease (Level I) | $ 1,200 | None | None |

**4.3(b)(4)   Claims Processing Under Individual Review**.  At the conclusion of the Individual Review Process, the NARCO Asbestos Trust shall: (1) determine the liquidated value, if any, of the claim; and (2) advise the claimant of its determination.  If the NARCO Asbestos Trust establishes a liquidated value, it shall tender to the claimant an offer of payment of the aforementioned determined value, together with a form of release approved by the NARCO Asbestos Trust.  If the claimant accepts the offer of payment and returns the release properly executed, the claim shall be placed in the appropriate payment queue, following which the NARCO Asbestos Trust shall disburse payment subject to the limitations of the Maximum Annual Payment, Claims Payment Ratio and applicable Payment Percentage, if any.

**4.4    Categorizing Claims as Extraordinary and/or Exigent.**

**4.4(a)  Extraordinary Claims.**  "**Extraordinary Claim**" means a NARCO Asbestos Trust Claim that otherwise satisfies the Medical/Exposure Criteria for Disease

---

[8] The Trustees, in evaluating these NARCO Asbestos Trust Claims, shall use their best efforts such that the amounts offered through Individual Review for each Disease Level shall annually arithmetically average the "Average Value" per claim set forth herein. However, in making the determination of whether the amounts offered for claims processed through Individual Review arithmetically average such "Average Value," the NARCO Asbestos Trust shall exclude from its computations any amounts that were at or below the Scheduled Value for the relevant Disease Levels of such claims, but shall include all amounts awarded to claimants pursuant to the arbitration procedures described in Section 4.10 below.

Levels III- VII, and that is held by a claimant whose exposure to asbestos (i) occurred primarily as a result of working in a manufacturing facility of NARCO or its predecessors during a period in which NARCO was manufacturing asbestos containing products at that facility, provided that the claim is a tort claim that is not otherwise barred pursuant to a statutory workers' compensation program, or (ii) was at least 75% the result of exposure to a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors and there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to a maximum extraordinary value of three (3) times the applicable Maximum Value for claims qualifying for Disease Levels III – VII. An Extraordinary Claim, following its liquidation, shall be placed in the appropriate payment queue ahead of all other liquidated claims payable except Exigent Claims, as defined in Section 4.4 below, subject to the Maximum Annual Payment, Claims Payment Ratio, and Payment Percentage, if any described above.

    **4.4(b)  Exigent Claims.**  At any time the NARCO Asbestos Trust may liquidate and pay certain NARCO Asbestos Trust Claims that qualify as Exigent Health and Hardship Claims, as defined below (collectively, "**Exigent Claims**"). Such claims shall be considered separately under the Individual Review Process no matter what the order of processing otherwise would have been under this NARCO Asbestos TDP, subject to the application of the Claims Payment Ratio set forth in Section 2.4. An Exigent Claim, following its liquidation, shall be placed at the head of the appropriate payment queue for purposes of payment, subject to the Maximum Annual Payment, the Claims Payment Ratio and the applicable Payment Percentage, if any, described above.

**4.4(b)(1)** **Exigent Health Claims.** A claim qualifies as an Exigent Health Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level III) or an asbestos-related malignancy (Disease Levels IV-VII), and the claimant provides a declaration or affidavit made under penalty of perjury by a physician who has examined the claimant within one hundred twenty (120) days of the date of declaration or affidavit in which the physician states (a) that there is substantial medical doubt that the claimant will survive beyond six months from the date of the declaration or affidavit, and (b) that the claimant's terminal condition is caused by the relevant asbestos-related disease.

**4.4(b)(2)** **Exigent Hardship Claims.** A NARCO Asbestos Trust Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level III) or an asbestos-related malignancy (Disease Levels IV-VII), and the NARCO Asbestos Trust, in its sole discretion, determines (a) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (b) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**4.5** **Secondary Exposure Claims.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant shall seek Individual Review of his or her claim pursuant to Section 4.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this NARCO Asbestos TDP that would have been applicable had that person filed a direct claim against the NARCO Asbestos Trust. In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the seven Disease Levels described in Section 4.3(a)(3) above, that his or her asbestos-related

disease was caused by exposure through the occupationally exposed person to asbestos containing product produced by NARCO or its predecessors, and that his or her exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to NARCO product. The proof of claim form to be adopted by the NARCO Asbestos Trust shall contain an additional section for such Secondary Exposure Claims. All other liquidation and payment rights and limitations under this NARCO Asbestos TDP shall be applicable to such claims.

      **4.6**    **Indirect NARCO Asbestos Trust Claims.**  Indirect NARCO Asbestos Trust Claims, (i.e., Indirect Asbestos Trust Claims asserted against the NARCO Asbestos Trust) shall be treated as presumptively valid and paid by the NARCO Asbestos Trust, subject to the Maximum Annual Payment, Claims Payment Ratio, and the applicable Payment Percentage, if any, if (a) such claim satisfied the requirements of the Bar Date established by the Bankruptcy Court for NARCO claims, if applicable, and is not otherwise disallowed by Section 502(e) or subordinated by Section 509(c) of the Code, and (b) the holder of such claim (the "**Indirect Asbestos Trust Claimant**") establishes to the satisfaction of the Trustees that (i) the Indirect Asbestos Trust Claimant has paid in full the liability and obligations of the NARCO Asbestos Trust to the individual to whom the NARCO Asbestos Trust would otherwise have had a liability or obligation under this NARCO Asbestos TDP (the "**Direct Claimant**"), (ii) the Direct Claimant and the Indirect Claimant have forever and fully released the NARCO Asbestos Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law.  In no event shall any Indirect Asbestos Trust Claimant have any rights against the NARCO Asbestos Trust superior to the rights of the related Direct Claimant against the NARCO Asbestos Trust, including any rights with respect to the

timing, amount or manner of payment.  In addition, no Indirect NARCO Asbestos Trust Claim may be liquidated or paid in an amount that exceeds what the Indirect Asbestos Trust Claimant has actually paid the Direct Claimant.

To establish a presumptively valid Indirect NARCO Asbestos Trust Claim, the Indirect Asbestos Trust Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Asbestos Trust Claimant by settlement (with an appropriate full release in favor of the NARCO Asbestos Trust) or a Final Order (as defined in the Plan) provided that such claim is valid under the applicable state law.  In any case where the Indirect Asbestos Trust Claimant has paid the claim of a Direct Claimant against the NARCO Asbestos Trust under applicable law by way of a settlement, the Indirect Asbestos Trust Claimant shall obtain for the benefit of the NARCO Asbestos Trust a release in form and substance satisfactory to the Trustees.

If an Indirect Asbestos Trust Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Asbestos Trust Claimant provide the NARCO Asbestos Trust with a full release of the Direct Claimant's claim, the Indirect Asbestos Trust Claimant may request that the NARCO Asbestos Trust review the Indirect NARCO Asbestos Trust Claim under its Individual Review Process to determine whether the Indirect Asbestos Trust Claimant can establish under applicable state law that the Indirect Asbestos Trust Claimant has paid a liability or obligation that the NARCO Asbestos Trust would otherwise have to the Direct Claimant under this NARCO Asbestos TDP. If the Indirect Asbestos Trust Claimant can show that it has paid such a liability or obligation, the NARCO Asbestos Trust shall reimburse the Indirect Asbestos Trust Claimant the amount of the liability or obligation so satisfied, times the then applicable Payment Percentage, if any.  However, in no event shall such

reimbursement to the Indirect Asbestos Trust Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled under this NARCO Asbestos TDP. Further, the liquidated value of any Indirect NARCO Asbestos Trust Claim paid by the NARCO Asbestos Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any NARCO Asbestos Trust Claim that might be subsequently asserted by the Direct Claimant against the NARCO Asbestos Trust.

The NARCO Asbestos Trust shall also process, liquidate and pay Indirect NARCO Asbestos Trust Claims that have been specifically channeled to the NARCO Asbestos Trust pursuant to express provisions of the Plan. In such a case, the NARCO Asbestos Trust shall consider the particular contract or other legal basis upon which the claim has been asserted, as well as whether the claim has been channeled to the NARCO Asbestos Trust under the terms of the Plan. If the NARCO Asbestos Trust determines that the claim is valid, the NARCO Asbestos Trust shall pay the Indirect Asbestos Trust Claimant the full liquidated value of the claim, multiplied by the applicable Payment Percentage, if any.  All payments of Indirect NARCO Asbestos Trust Claims shall be subject to the Maximum Annual Payment and the Claims Payment Ratio.

Any dispute between the NARCO Asbestos Trust and an Indirect Asbestos Trust Claimant over whether the Indirect Asbestos Trust Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR procedures provided in Section 4.10 below. If such dispute is not resolved by said ADR procedures, the Indirect Asbestos Trust Claimant may litigate the dispute in the tort system pursuant to Sections 4.11 and 6.6 below.

The Trustees may develop and approve a separate proof of claim form for Indirect NARCO Asbestos Trust Claims. Indirect NARCO Asbestos Trust Claims that have not been

disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be

processed in accordance with procedures to be developed and implemented by the Trustees

consistent with the provisions of this Section 4.6, which procedures (a) shall determine the

validity, allowability and enforceability of such claims; and (b) shall otherwise provide the same

liquidation and payment procedures and rights to the holders of such claims as the NARCO

Asbestos Trust would have afforded the holders of the underlying valid NARCO Asbestos Trust

Claims. Nothing in this NARCO Asbestos TDP is intended to preclude a trust to which asbestos-

related liabilities are channeled from asserting an Indirect NARCO Asbestos Trust Claim against

the NARCO Asbestos Trust subject to the requirements set forth herein.

### 4.7 Evidentiary Requirements.

#### 4.7(a)  Medical Evidence.

**4.7(a)(1)   In General.**  All diagnoses of a Disease Level shall be

accompanied by either (i) a statement by the physician providing the diagnosis that at least 10

years have elapsed between the date of first exposure to asbestos or asbestos-containing products

and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year

latency period.  A finding by a physician that a claimant's disease is "consistent with" or

"compatible with" asbestosis will not alone be treated by the NARCO Asbestos Trust as a

diagnosis.

**4.7(a)(1)(A)   Disease Levels I-III.**  Except for claims

filed against NARCO or Honeywell and claims filed against other defendants in the tort system

prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease

Levels I-III) shall be based in the case of a claimant who was living at the time the claim was

filed, upon a physical examination of the claimant by the physician providing the diagnosis of

the asbestos-related disease.  In addition, all living claimants must provide (i) for Disease Levels I-II, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above); (ii) for Disease Level III, an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (iii) for Disease Levels II and III, pulmonary function testing.

In the case of a claimant who was deceased at the time the claim was filed, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I-III) shall be based on (i) either (a) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; (b) pathological evidence of the non-malignant asbestos-related disease; or (c) in the case of Disease Levels I-II, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above) and for Disease Level III, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (ii) for either Disease Level II or III, pulmonary function testing.[9]

**4.7(a)(1)(B)    Disease Levels IV-VII.**  All diagnoses of an asbestos-related malignancy (Disease Levels IV – VII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified pathologist.

**4.7(a)(1)(C)    Exception to the Exception for Certain Pre-Petition Claims.**  If the holder of a NARCO Asbestos Trust Claim that was filed against NARCO or Honeywell, or any other defendant in the tort system prior to the Petition Date, has not provided the NARCO Asbestos Trust with a diagnosis of the asbestos-related disease by a physician who conducted a physical examination of the holder as described in Sections

---

[9]    All diagnoses of Asbestos/Pleural Disease (Disease Level I) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VII) shall be presumed to be based on findings that the disease involves a malignancy.  However, the NARCO Asbestos Trust may rebut such presumptions.

4.7(a)(1)(A) and 4.7(a)(1)(B) above, but the holder has available such a diagnosis by an examining physician engaged by the holder, or if the holder has filed such a diagnosis with another asbestos-related personal injury settlement trust that requires such evidence, the holder shall provide such diagnosis to the NARCO Asbestos Trust notwithstanding the exceptions in Sections 4.7(a)(1)(A) and 4.7(a)(1)(B).

**4.7(a)(2)  Credibility of Medical Evidence.**  Before making any payment to a claimant, the NARCO Asbestos Trust must have reasonable confidence that the medical evidence provided in support of the claim is competent medical evidence of an asbestos-related injury that is credible and consistent with recognized medical standards. The NARCO Asbestos Trust may require the submission of x-rays, and may require the submission of detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence.  The NARCO Asbestos Trust may also require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedure to assure that such evidence is reliable.

Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial; (ii) that is consistent with evidence submitted to NARCO or Honeywell to settle similar disease cases prior to the Petition Date; or (iii) that is a diagnosis by a physician shown to have been previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge using the same methodology and standard is presumptively reliable, although the NARCO Asbestos Trust may seek to rebut the presumption.  Claimants who otherwise meet the requirements of this NARCO Asbestos TDP for payment of a NARCO Asbestos Trust Claim shall be evaluated without regard to the results of any litigation between the claimants and any other defendant in the tort system.

Any relevant evidence submitted in a proceeding in the tort system (exclusive of findings of fact, a verdict or judgment), may be introduced by the claimant or the NARCO Asbestos Trust in any Individual Review Process conducted pursuant to Section 4.3(b) or any Extraordinary Claim proceeding conducted pursuant to Section 4.4(a).

### 4.7(b)   Exposure Evidence

**4.7(b)(1)        In General.**  As set forth in Section 4.3(a)(3) above, to qualify for any Disease Level, the claimant must submit requisite evidence of exposure to a specific asbestos-containing product manufactured, sold or distributed by NARCO or its predecessors, which includes demonstrating both the presence of such products at a particular site at a particular time and the claimant's occupational exposure to that product.  (If the claim is for secondary exposure, the claimant must demonstrate the occupational exposure of the person, such as a family member, through whom the claimant was exposed.)

Claims based on conspiracy theories that involve no exposure to an asbestos-containing product produced by NARCO or its predecessors are not compensable under this NARCO Asbestos TDP.  In order to demonstrate that a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors was present at a site, a claimant must either: a) submit competent evidence that he or she worked at a site on the Worksite List, attached as Attachment B, during the identified period of time[10]; or, b) submit credible evidence

---

[10] The **"Worksite List"** attached to this TDP is composed of sites that were either (1) included on the draft of the Worksite List acceptable to Honeywell as of February 23, 2005; or (2) locations at which both plaintiffs alleged, before the Petition Date in the tort system, that NARCO asbestos-containing product was present, and as to which NARCO, prior to the Petition Date, settled claims based upon the allegations of exposure at that location.  The Worksite List acceptable to Honeywell as of February 23, 2005 sets forth the applicable date range for each site. The date range associated with each other site on the Worksite List is the earliest date of alleged NARCO exposure at a given site which NARCO settled pre-petition. The last date associated with each site is either the latest date of alleged NARCO exposure at that site which NARCO settled pre-petition plus ninety (90) days, or October  31, 1980. The "Worksite List" may be modified by the agreement of the NARCO Asbestos Trust Trustees, the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell, consistent with the consent provisions of the NARCO Asbestos Trust Agreement, including Section 3.2(e).

(the foundation of which is established), that a specific asbestos-containing product manufactured or distributed by NARCO or its predecessors was present at a worksite at which the claimant was employed.  In order to demonstrate exposure to the NARCO asbestos-containing product at the relevant site, a claimant must submit competent evidence that he or she worked on a regular basis with the NARCO asbestos containing product or worked on a regular basis in close proximity to workers engaged in the activities set forth in Section 4.7(b)(2)(a) through (c).

**4.7(b)(2)** **Significant Occupational Exposure.** "**Significant Occupational Exposure**" means employment for a cumulative period of at least five years prior to December 1986 in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) installed, altered, repaired, removed, or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) or (c).  There is presumptive Significant Occupational Exposure, provided the durational requirements set forth in the preceding sentence are met, for furnace construction and repair-related occupations in the iron, steel, aluminum, and glass manufacturing and electric power production industries.

**4.7(b)(3)** **Exposure Evidence.**  The NARCO Asbestos Trust may consider as evidence an affidavit of the claimant, an affidavit of one or more Co-workers[11]

---

[11] As used herein, "**Co-worker**" shall mean one or more individuals who provide competent sworn testimony (i) that the claimant worked with or around other refractory products and (ii) that asbestos-containing products manufactured or distributed by NARCO were present at the worksite during the relevant period.  A Co-worker's affidavit must provide evidence sufficient to show that the Co-worker meets this definition.

or the affidavit of a family member in the case of a deceased claimant, depositions, sworn

interrogatory answers, invoices, construction or similar records, or other competent evidence.

The NARCO Asbestos Trust can also require submission of other or additional evidence of

exposure when it deems such to be necessary.  In evaluating exposure evidence, the NARCO

Asbestos Trust shall take into account any precedent set as a result of arbitration under Section

4.10 below, as well as the following factors:

(A)    Industry/Occupation:  NARCO had a specialized product line,

manufacturing and distributing refractory products, for use in high heat applications.  Because of

the specialized nature and use of NARCO asbestos-containing product, the NARCO Asbestos

Trust shall consider that there is a limited universe of occupations in a similarly limited range of

industries in which claimants are likely to have been either directly or indirectly exposed to

NARCO or its predecessors' asbestos-containing refractory products.

(B)    Type of Industrial Exposure:  The NARCO Asbestos Trust shall consider

the lesser exposure to a NARCO asbestos-containing product of claimants with mixed industrial

exposures.  A claimant will have a "mixed industrial exposure" where he or she worked for some

period of time in an industry where refractory products were typically used and in an occupation

where direct or indirect exposure to such products was likely, and also worked for some period

of time in an industry where exposure to non-refractory asbestos-containing products was likely.

**4.8    Claims Audit Program.**

**4.8(a)  The NARCO Asbestos Trust Claims Audit Program.**  The

NARCO Asbestos Trust, with the consent of the NARCO Asbestos TAC, the NARCO Asbestos

Future Claimants Representative, and Honeywell, may develop methods for auditing the

reliability of medical evidence, including additional reading of X-rays and verification of

pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products manufactured, sold or distributed by NARCO or its predecessors.  The NARCO Asbestos Trust may also conduct random or other audits to verify medical and exposure information submitted in connection with this NARCO Asbestos TDP.  In the event that NARCO Asbestos Trust concludes that an individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the NARCO Asbestos Trust, the NARCO Asbestos Trust may decline to accept additional evidence from such provider.  Further, in the event an audit reveals any instance of fraud or submission of fraudulent information, the NARCO Asbestos Trust may penalize any claimant or claimant's attorney by disallowing the NARCO Asbestos Trust Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' NARCO Asbestos Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking sanctions from the Bankruptcy Court.

        **4.8(b)  Honeywell Audit Rights.**  Honeywell shall, at its sole discretion and expense, be entitled to audit and review all aspects of the NARCO Asbestos Trust, including but not limited to its operations, claims processing procedures, and results.  The NARCO Asbestos Trust shall provide to Honeywell, at Honeywell's sole discretion and expense, such information and documentation as Honeywell requests.  The NARCO Asbestos Trust shall cooperate with Honeywell in connection with any Honeywell audit, including but not limited to providing Honeywell reasonable access to the NARCO Asbestos Trust's personnel for

interviews and reasonable direct access to any computer hardware, software, or data used or maintained by the NARCO Asbestos Trust.  Honeywell may – and shall be entitled to as part of its audit rights – make recommendations to the NARCO Asbestos Trust, the NARCO Asbestos TAC and the NARCO Asbestos Future Claimants Representative concerning the NARCO Asbestos Trust, including but not limited to the NARCO Asbestos Trust's claims processing operations.  Any disputes between the NARCO Asbestos Trust, the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative and/or Honeywell arising pursuant to recommendations Honeywell makes shall be subject to the dispute resolution procedures set forth in Section 8.14 of the NARCO Asbestos Trust Agreement.

　　　　**4.9**　　**Second Disease Claims.**  The holder of a claim involving a non-malignant asbestos-related disease (Disease Levels I – III) may file a new claim for a malignant disease (Disease Levels IV – VII) that is diagnosed subsequent to resolution of the claimant's initial claim.  Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related disease shall not be reduced by the amount paid for the non-malignant asbestos-related disease.  The holder of a claim involving a non-malignant asbestos-related disease that qualified and was paid as Disease Level I may file a new claim for compensation as Disease Level II or III, if the claimant's medical circumstances have changed since payment of the first claim such that he or she qualifies under Disease Level II or III.  Any additional payments to which these claimants may be entitled shall be reduced by the amount already paid to the claimant by the NARCO Asbestos Trust.

　　　　**4.10**　　**Arbitration.**

　　　　　　**4.10(a)**　　**Establishment of Arbitration Procedures.**  The NARCO Asbestos Trust, with the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell, shall institute binding and non-binding arbitration

procedures for resolving disputes concerning whether the NARCO Asbestos Trust's denial of a claim was proper, and/or whether the claimant's medical condition or exposure history for any claim involving Disease Levels I – VII meet the requirements of this NARCO Asbestos TDP. Binding and non-binding arbitration shall also be available for resolving disputes over (i) the liquidated value of a claim involving Disease Levels III – VII, and (ii) whether a claim is a Pre-Established Claim pursuant to Section 4.2 above, and, if so, the amount of its liquidated value. Unless otherwise specified by this NARCO Asbestos TDP, preponderance of the evidence shall be the applicable evidentiary standard for all arbitrations under this NARCO Asbestos TDP.

In all claims arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Sections 4.3(a)(3) and 4.7 above.  In the case of an arbitration involving the liquidated value of a claim involving Disease Levels III – VII, the arbitrator shall consider the same valuation factors that are set forth in Sections 4.3(b)(2) and 4.7 above.  With respect to all claims eligible for arbitration, the claimant, but not the NARCO Asbestos Trust, may elect either non-binding or binding arbitration; however, the procedures to be followed for either type of arbitration are  those adopted as set forth in Attachment A hereto. These procedures may be modified by the NARCO Asbestos Trust with the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell.

**4.10(b)   Claims Eligible for Arbitration.**  In order to be eligible for arbitration, the claimant must first complete the Individual Review Process with respect to the disputed issue.  Individual Review will be treated as completed for these purposes when the claim has been reviewed by the NARCO Asbestos Trust, the NARCO Asbestos Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the NARCO Asbestos Trust of the rejection in writing.  Individual

Review shall also be treated as completed if the claim has gone through Individual Review and the NARCO Asbestos Trust has rejected the claim.

          **4.10(c)    Claims Arbitration**.  The claims of one or more claimants may not be aggregated for purposes of arbitration and each individual claimant's arbitration shall be treated for all purposes as a separate action.  Moreover, to the extent the arbitrator's award is equal to or less than the amount initially offered to the claimant by the NARCO Asbestos Trust, the amount to be paid to the claimant by the NARCO Asbestos Trust shall be reduced by the costs incurred by the NARCO Asbestos Trust in connection with the arbitration.

          **4.10(d)    Limitations on and Payment of Arbitration Awards.**  In the case of a non-Extraordinary Claim involving Disease Level I or II, the arbitrator shall not return an award in excess of the Scheduled Value for that Disease Level as set forth in Section 4.3(b)(3).  In the case of a non-Extraordinary Claim involving Disease Levels III -VII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as provided for by Section 4.3(b)(3) above, and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the maximum extraordinary value for such a claim as provided for by Section 4.4(a) above.  A claimant who submits to arbitration and who accepts the arbitral award will receive payments in the same manner as one who accepts the Trust's original valuation of the claim.

          **4.11    Litigation.**  Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to enter the tort system pursuant to Section 6.6 below.  However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the NARCO Asbestos Trust's available cash only as provided in Section 6.7 below.

## SECTION V

### Claims Materials

**5.1** **Claims Materials.**  The NARCO Asbestos Trust shall prepare suitable and efficient claims materials ("**Claims Materials**") for all NARCO Asbestos Trust Claims, including Pre-Established Claims that are required to submit a proof of claim form pursuant to Section 4.2(a) hereof, and shall provide such Claims Materials upon a written request for such materials to the NARCO Asbestos Trust.  The proof of claim form to be submitted to the NARCO Asbestos Trust shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing.  The proof of claim forms shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.  In developing its claim filing procedures, the NARCO Asbestos Trust shall evaluate whether it can provide claimants with the opportunity to utilize currently available technology, including filing claims and supporting documentation through web-based systems, the internet and/or electronic media.  The proof of claim forms may be changed and the foregoing alternative procedures for electronic claims submission may be adopted by the NARCO Asbestos Trust with the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell.

**5.2** **Content of Claims Materials.**  The Claims Materials shall include a copy of this NARCO Asbestos TDP, such instructions as the Trustees shall approve, and a proof of claim form.  If feasible, the forms used by the NARCO Asbestos Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations.  The NARCO Asbestos Trust may also obtain information concerning a claimant or his or her claims from any other asbestos claims resolution organization, including

from electronic databases maintained by said organizations.  However, the NARCO Asbestos

Trust shall advise the claimant of its intention to gather information concerning the claimant

from such other organization and may do so in the absence of a timely written objection from the

claimant.  The claimant may elect, but will not be required, to provide the NARCO Asbestos

Trust with evidence of recovery from other asbestos claims resolution organizations. If requested

by the claimant, if capable of doing so efficiently and if procedures to this effect have been

adopted by the NARCO Asbestos Trust pursuant to Section 5.1, above, the NARCO Asbestos

Trust shall accept information provided electronically.

        **5.3**      **Withdrawal or Deferral of Claims.**  A claimant can withdraw a NARCO

Asbestos Trust Claim at any time upon written notice to the NARCO Asbestos Trust and file

another claim subsequently without affecting the status of the claim for statute of limitations and

repose purposes, but any such claim filed after withdrawal shall be given a place in the

appropriate processing queue based upon the date of such subsequent filing.  Except for claims

held by representatives of deceased or incompetent claimants as set forth in Section 4.1(c) above,

a claim will be deemed to have been withdrawn if the claimant neither accepts, rejects, nor

initiates arbitration within six (6) months of the NARCO Asbestos Trust's offer of payment or

rejection of the claim.  Upon written request and good cause, the NARCO Asbestos Trust may,

in its sole discretion, extend this period for an additional six (6) months.

        A claimant may also request that the processing of his or her NARCO Asbestos

Trust Claim be deferred for a period not to exceed three (3) years without affecting the status of

the claim for statute of limitations purposes, in which case the claimant shall also retain his or

her original place in the appropriate processing queue, if feasible.  During the period of such

deferral, interest on such claimant's NARCO Asbestos Trust Claim, as provided in Section 6.5 hereunder, shall not accrue and payment thereof shall be deemed waived by the claimant.

**5.4    Filing Requirements and Fees.**  The Trustees shall have the discretion to determine, with the consent of the NARCO Asbestos TAC, Honeywell and the NARCO Asbestos Future Claimants Representative, (a) whether a claimant must have previously filed the claim in the tort system to be eligible to file the claim with the NARCO Asbestos Trust and (b) whether a filing fee should be required for any NARCO Asbestos Trust claims.

## SECTION VI

### General Guidelines for Liquidating and Paying Claims

**6.1    Showing Required.**  To establish a valid NARCO Asbestos Trust Claim, a claimant must meet the requirements set forth in this NARCO Asbestos TDP.  The NARCO Asbestos Trust may require the submission of X-rays, CT scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the NARCO Asbestos Trust Claim, and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.  All deadlines established herein shall be extended by a period commensurate with the time which elapses between the NARCO Asbestos Trust's request for additional information and the date the information or evidence is submitted by the claimant.

**6.2    Costs Considered.**  Notwithstanding any provisions of this NARCO Asbestos TDP to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid NARCO Asbestos Trust Claims so that the payment of valid NARCO Asbestos Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical or exposure evidence supporting a NARCO Asbestos

Trust Claim.  The Trustees shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the NARCO Asbestos Trust so that valid NARCO Asbestos Trust Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any claim against the NARCO Asbestos Trust whatever the costs, or to decline to accept medical or exposure evidence from sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program described in Section 4.8 above or otherwise.

6.3    **Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.**  Consistent with the provisions hereof and subject to the Annual Contribution Claims Fund Processing and Payment Queues discussed above, as well as the Maximum Annual Payment, Payment Percentage, and Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as possible to liquidate valid NARCO Asbestos Trust Claims, and shall make payments to holders of such claims in accordance with this NARCO Asbestos TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the NARCO Asbestos Trust's decisions about payments must be based on estimates that cannot be done precisely, payments may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the NARCO Asbestos Trust, the established allocation of funds to NARCO Asbestos Trust Claims in Categories A and B, and the practical limitations imposed by the inability to predict the future

with precision. In the event that the NARCO Asbestos Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell, suspend the normal order of payment and may temporarily limit or suspend payments altogether.

   **6.4**  **Punitive Damages.** Except as provided below for claims asserted under the Alabama Wrongful Death Statute, in determining the value of any liquidated or unliquidated NARCO Asbestos Trust Claim, punitive or exemplary damages, i.e., damages other than compensatory damages, shall not be considered or allowed, notwithstanding their availability in the tort system. Similarly, no punitive or exemplary damages will be payable with respect to any claim litigated against the NARCO Asbestos Trust in the tort system pursuant to Sections 4.11 above and 6.6 below. The only damages that may be awarded pursuant to this NARCO Asbestos TDP to Alabama Claimants who are deceased and whose personal representatives pursue their claims only under the Alabama Wrongful Death Statute shall be compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to Pennsylvania's choice of law principles. The choice of law provision in Section 7.4 herein applicable to any Claim with respect to which, but for this choice of law provision, the applicable law of the Claimant's Jurisdiction pursuant to Section 4.3(b)(2) is determined to be the Alabama Wrongful Death Statute, shall only govern the rights between the NARCO Asbestos Trust and the claimant including, but not limited to, suits in the tort system pursuant to Section 6.6.

   **6.5**  **Interest.** The NARCO Asbestos Trust shall pay interest on all NARCO Asbestos Trust Claims where a determination of a claim's liquidated value has been delayed for reasons unrelated to the adequacy of the claimant's claim submission or a deferral by the

claimant under Section 5.3 above, as follows:  (i) for claims qualifying for Disease Level VII, interest shall begin to accrue on the date two (2) years following the claimant's filing of the claim with the NARCO Asbestos Trust; and (ii) for claims qualifying for all other Disease Levels, interest shall begin to accrue on the date five (5) years following the claimant's filing of the claim with the NARCO Asbestos Trust.  Interest shall be simple and shall accrue at the one-year U.S. Treasury Bill rate in effect on January 1 of the year in which the interest begins to accrue on the claim, said rate to be adjusted each January 1 to correspond to the one-year U.S. Treasury Bill rate.

   **6.6** **Suits in the Tort System.**  If the holder of a disputed claim disagrees with the NARCO Asbestos Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, or if there is a dispute between the holder and the NARCO Asbestos Trust over whether a claim is a Pre-Established Claim, and if the holder has completed non-binding arbitration of the claim as provided in Section 4.10 above, the holder may file a lawsuit in the Claimant's Jurisdiction as defined in Section 4.3(b)(2) above.  Any such lawsuit must be filed by the claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit.  All defenses (including, with respect to the NARCO Asbestos Trust, all defenses which could have been asserted by NARCO, Honeywell or their respective predecessors), shall be available to both sides at trial; however, the NARCO Asbestos Trust may waive any defense and/or concede any issue of fact or law.  If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the Proof of Claim was filed, the case will be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

**6.7    Payment of Judgments for Money Damages.** If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the Annual Contribution Claims Fund Payment Queue or the Pre-Established Claims Fund Payment Queue, as the case may be, based on the date on which the judgment became a final, non-appealable judgment. Thereafter, the claimant shall receive from the NARCO Asbestos Trust (subject to the Payment Percentage, the Maximum Annual Payment and the Claims Payment Ratio provisions set forth above for all NARCO Asbestos Trust Claims other than Pre-Established Claims) a payment of the judgment that does not exceed the lesser of the judgment amount or double the amount of an affirmative award by the arbitrator in the proceedings pursuant to Section 4.10 relating to that claim. If the claimant's judgment exceeds the amount of the arbitral award, then the NARCO Asbestos Trust shall be additionally obligated to pay the claimant his or her statutory costs incurred in obtaining the judgment. Under no circumstances shall interest be paid pursuant to Section 6.5 or interest be paid under otherwise applicable state law on any judgments obtained in the tort system.

**6.8    Releases.** The Trustees shall determine the form and substance of the releases to be provided to the NARCO Asbestos Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the NARCO Asbestos Trust. As a condition to making any payment to a claimant, the NARCO Asbestos Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release. The consent of the NARCO Asbestos TAC, Honeywell and the NARCO Asbestos Future Claimants Representative shall be required prior to the Trustees (i) adopting a

form of release and (ii) modifying any form of release that has previously been approved by the NARCO Asbestos TAC, Honeywell and the NARCO Asbestos Future Claimants Representative.

6.9　**Third-Party Services.**　Nothing in this NARCO Asbestos TDP shall preclude the NARCO Asbestos Trust from contracting with another asbestos claims resolution organization to provide services to the NARCO Asbestos Trust so long as decisions about the categorization and liquidated value of NARCO Asbestos Trust Claims are based on the relevant provisions of this NARCO Asbestos TDP, including the Diseases Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

6.10　**NARCO Asbestos Trust Disclosure of Information.**　Periodically, but not less often than once a year, the NARCO Asbestos Trust shall make available to claimants and other interested parties, the number of claims by Disease Levels that have been resolved by Expedited or Individual Review and by arbitration as well as by trial indicating the amounts of the awards and the averages of the awards by jurisdiction.

## SECTION VII

### Miscellaneous

7.1　**Amendments.**　Except as otherwise provided herein, the Trustees may amend, modify, delete, or add to any provisions of this NARCO Asbestos TDP (including, without limitation, amendments to conform this NARCO Asbestos TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants Representative, and Honeywell pursuant to the Consent Process set forth in Section 8.1(b) of the NARCO Asbestos Trust Agreement.

       **7.2**      **Adjustment to Average and Maximum Values.**  The Average and

Maximum Values set forth in Section 4.3(b)(3) for NARCO Asbestos Trust Claims involving

Disease Levels III - VII, above shall remain unchanged until three (3) years after the Effective

Date.  In the third year and at three year intervals thereafter, the NARCO Asbestos Trust, in

consultation with the NARCO Asbestos TAC, the NARCO Asbestos Future Claimants

Representative, and Honeywell, shall adjust any or each of the Average and Maximum Values,

and to account for inflation or deflation, as reflected by the Consumer Price Index.

       **7.3**      **Severability.**  Should any provision contained in this NARCO Asbestos

TDP be determined to be unenforceable, such determination shall in no way limit or affect the

enforceability and operative effect of any and all other provisions of this NARCO Asbestos TDP.

       **7.4**      **Governing Law.**  Except for purposes of determining the liquidated value

of any NARCO Asbestos Trust Claim, administration of this NARCO Asbestos TDP shall be

governed by, and construed in accordance with, the laws of the State of Delaware.  The law

governing the liquidation of NARCO Asbestos Trust Claims shall be the law of the Claimant's

Jurisdiction as described in Section 4.3(b)(2) above in effect at the time the claim is filed.

**ATTACHMENT A**

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR NARCO**

**ASBESTOS TRUST CLAIMS**

By agreement of the Trustees of the NARCO Asbestos Trust, the NARCO Trust
Advisory Committee, the NARCO Asbestos Future Claimants Representative and Honeywell
International Inc., procedures for binding and non-binding arbitration under Section 4.10 of the
NARCO Asbestos TDP will be adopted with the consent of the above named entities following
the Effective Date.  Upon adoption, the procedures will become Attachment A of the NARCO
Asbestos TDP and published by the NARCO Asbestos Trust.

**ATTACHMENT B**

**NARCO WORKSITE LIST**

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1967 | 3/31/1972 | 3M CHEMICAL PLANT | 1400 STATE DOCKS  RD. | | DECATUR | AL | Baron & Budd | |
| 11/4/1965 | 10/31/1980 | A&P TEA CO. | | | BROCKPORT | NY | | √ |
| 1/1/1963 | 3/31/1981 | ABEX RAILROAD EQUIPMENT MANUFACTURING PLANT | 2300 S FREEWAY (81004) | | PUEBLO | CO | Silber Pearlman | |
| 1/1/1964 | 3/31/1966 | ACBO ALUMINUM AND BRASS PLANT | 5235 GRIGGS ROAD | | HOUSTON | TX | Hissey | |
| 1/1/1972 | 3/31/1977 | ADDSCO | 660 Dunlap Drive  (36602) | | MOBILE | AL | Baron & Budd | |
| 1/1/1956 | 3/31/1964 | AG CHEMICAL PLANT | 602 COPPER ROAD | | FREEPORT | TX | Hissey | |
| 7/22/1969 | 10/31/1980 | AINSBROOKE KNITTING | | | WARSAW | NY | | √ |
| 1/1/1971 | 3/31/1981 | AITKEN PLANT | 4920 AIRLINE DRIVE (77022) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1975 | 3/31/1979 | ALABAMA DRY DOCKS | 250 North Water Street (36602) | | MOBILE | AL | Baron & Budd | |
| 1/1/1963 | 3/31/1976 | ALABAMA STATE DOCKS | State Docks Boulevard  (36602) | | MOBILE | AL | Baron & Budd | |
| 1/14/1966 | 10/31/1980 | ALAN WOOD STEEL CO. | | | CONSHOHOCKEN | PA | | √ |
| 1/1/1963 | 3/31/1976 | ALCOA | 2048 B S. Broad Street  (36615) | | MOBILE | AL | Baron & Budd | |
| 1/1/1961 | 3/31/1963 | ALCOA ALUMINUM PLANT | STATE HWY. 35 | | POINT COMFORT | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1976 | ALCOA ALUMINUM PLANT | FM 1786 OFF RTE. 79 | | ROCKDALE | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1977 | ALCOA ALUMINUM PLANT | 1333 HIGHWAY 270 (72105) | | JONES MILL | AR | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ALCOA ALUMINUM PLANT | 4701 ALCOA ROAD (72011) | | BAUXITE | AR | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ALCOA ALUMINUM PLANT | US HIGHWAY 35 (77978) | | POINT COMFORT | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ALCOA ALUMINUM PLANT | FM 1786 OFF RTE. 79 (76567) | | ROCKDALE | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ALCOA ALUMINUM PLANT/REFINERY | MARKET ROAD 1786 | | ROCKDALE | TX | Hissey, Silber Pearlman | |
| 10/22/1973 | 10/31/1980 | ALDRICH CO. | | | WYOMING | IL | | √ |
| 1/1/1961 | 3/31/1962 | Allegheny Ludlum | | | Brackenridge | PA | Goldberg Persky | |
| 3/10/1971 | 10/31/1980 | ALLEN REFRACTORIES CO. | 3320 WINCHESTER SOUTH RD. | | CANAL WINCHESTER | OH | | |
| 4/2/1970 | 10/31/1980 | ALLEN REFRACTORIES CO. | 1186 BONHAM AVE. | GROGAN YARD | COLUMBUS | OH | | |
| 1/1/1963 | 10/31/1980 | ALLIED CHEMICAL CORP. | INDUSTRIAL CHEMICAL DIV. NORTH WORKS | 12875 SCENIC HWY. | BATON ROUGE | LA | Baron & Budd | |
| 12/2/1966 | 10/31/1980 | ALLIED CHEMICAL CORP. | SEMET SOLVAY DIV. | 6995 W. JEFFERSON AVE. | DETROIT | MI | | |
| 2/24/1967 | 10/31/1980 | ALLIED CHEMICAL CORP. | SEMET SOLVAY DIV. | | IRONTON | OH | | |
| 7/15/1969 | 10/31/1980 | ALLIED CHEMICAL CORP. | WILPUTTE COKE OVEN DIV. | | GARY | IN | | |
| 5/12/1966 | 10/31/1980 | ALLIED CHEMICAL CORP. | SEMET SOLVAY DIV. | P.O. BOX 111 | ASHLAND | KY | | |
| 3/15/1967 | 10/31/1980 | ALLIED CHEMICAL CORP. | WILPUTTE COKE OVEN DIV. | ALABAMA BY-PRODUCTS CORP. TARRANT PLANT | BIRMINGHAM | AL | | |
| 1/1/1965 | 3/31/1978 | ALLIED CHEMICAL PLANT | 5525 Highway 3115, Carville,LA 70721 | | GEISMAR | LA | Baron & Budd | |
| 1/1/1962 | 3/31/1981 | ALLIED CHEMICAL PLANT | 2404 BAYOU ROAD (70085) | | ST, BERNARD | LA | Baron & Budd | |
| 1/1/1960 | 3/31/1961 | ALLIED/SIGNAL OIL REFINERY | FM 1006 | | ORANGE | TX | Hissey | |
| 8/10/1970 | 10/31/1980 | ALPHA PORTLAND CEMENT CO. | | | IRONTON | OH | | √ |
| 1/1/1964 | 4/1/1978 | ALTON BOX BOARD | 200 WEST 3RD ST. (62002) | | ALTON | IL | Wise & Julian | |
| 10/2/1973 | 10/31/1980 | ALUMINUM SMELTING | 5463 DUNHAN RD. | | MAPLE HEIGHTS | OH | | |
| 1/1/1963 | 3/31/1976 | AMERICAN CAN PAPER MILL | 7530 Highway 114  (36916) | | PENNINGTON | AL | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | AMERICAN CAN PLANT | 8501 EAST FREEWAY (77059) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1961 | 3/31/1981 | AMERICAN CYANAMID CHEMICAL PLANT | 600 N JONES (76106) | | FORT WORTH | TX | Silber Pearlman | |
| 11/4/1976 | 10/31/1980 | AMERICAN ELECTRIC POWER SERVICE PLANT | NO ADDRESS | | | | | √ |
| 8/31/1972 | 10/31/1980 | AMERICAN ELECTRONICS LAB | RICHARDSON RD. | | COLMAR | PA | | |
| 12/9/1969 | 10/31/1980 | AMERICAN FIRE BRICK CO. | 880 ADDISON AVE. | | CLEVELAND | OH | | |
| 1/21/1972 | 10/31/1980 | AMERICAN NATIONAL RUBBER CO. | MAIN & HIGH ST. | | CEREDO | WV | | |
| 7/15/1971 | 10/31/1980 | AMERICAN SAINT GORBIAN CORP. | FACTORY #6 | | KINGSPORT | TN | | |
| 12/10/1965 | 10/31/1980 | AMERICAN SHIPBUILDING CORP. | BOILER ROOM | | LORAIN | OH | | |
| 1/1/1969 | 3/31/1970 | AMERICAN STEEL | 1700 WALNUT ST. | | GRANITE CITY | IL | Baron & Budd | |
| 9/27/1983 | 10/31/1980 | AMERICAN STEEL & WIRE | WAUKEGAN WORKS | | WAUKEGAN | IL | | |
| 5/30/1978 | 10/31/1980 | AMERICAN TEMPERED | 1116 NORTH KICKAPOO | | SHAWNEE | OK | | |
| 11/24/1970 | 10/31/1980 | AMERICAN THERMOGEN CO. | 200 ESSEX ST. | | WHITMAN | MA | | |
| 2/21/1974 | 10/31/1980 | AMERICAN WELDING & MANUFACTURING CO. | DIETZ RD. N.E | | WARREN | OH | | |

Final List of Sites That Received
NARCO Asbestos-Containing Products

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 4/13/1965 | 10/31/1980 | AMERICAN ZINC OXIDE | SUBSIDIARY OF AMERICAN ZINC, LEAD & SMELTING CO. | WINDSOR AVE., C.A.& C. TRACKS | COLUMBUS | OH | | |
| 1/1/1967 | 3/31/1976 | AMOCO  CHEMICAL PLANT | 1401 FINLEY ISLAND RD. | | DECATUR | AL | Baron & Budd | |
| 7/23/1971 | 10/31/1980 | AMOCO CHEMICAL CORP. | JOLIET PLANT | | JOLIET | IL | | |
| 1/1/1956 | 3/31/1981 | AMOCO CHEMICAL SHIPS/PLANT | 2800 FM 519 EAST | | TEXAS CITY | TX | Hissey, Silber Pearlman | |
| 1/1/1966 | 3/31/1981 | AMOCO GAS PRODUCTION PLANT | HIGHWAY 35 & FM 524 | | OLD OCEAN | TX | Silber Pearlman | |
| 1/1/1974 | 3/31/1978 | AMOCO OIL REFINERY | FM 2004 | | ALVIN | TX | Hissey | |
| 1/1/1956 | 3/31/1980 | AMOCO OIL REFINERY | 2401 FIFTH AVENUE SOUTH (77590) | | TEXAS CITY | TX | Silber Pearlman, Baron & Budd | |
| 1/1/1962 | 4/1/1977 | AMOCO-STANDARD OIL | ROUTE 111 (62095) | | WOOD RIVER | IL | Wise & Julian | √ |
| 1/1/1967 | 3/31/1981 | ANCHOR HOCKING GAS PLANT | 4402 FIDELITY STREET (77029) | | HOUSTON | TX | Silber Pearlman | |
| 6/19/1973 | 10/31/1980 | ANDERSON MILLWRIGHT SERVICE, INC. | 870 ADDISON RD. | | CLEVELAND | OH | | |
| 1/1/1965 | 3/31/1971 | ANNISTON ARMY DEPOT | 7 Frankford Ave. (36201) | | ANNISTON | AL | Baron & Budd | |
| 3/6/1970 | 10/31/1980 | APPALACHIAN POWER CO. | MITCHELL PLANT | CONSTRUCTION DEPT. | CRESAP | WV | | |
| 3/6/1970 | 10/31/1980 | APPALACHIAN POWER CO. | JOHN E. AMOS PLANT | | SCARY | WV | | |
| 1/1/1969 | 3/31/1981 | ARCO OIL REFINERY | 10801 CHOATE ROAD (77507) | | PASADENA | TX | Silber Pearlman | |
| 1/1/1959 | 3/31/1981 | ARCO POLYMERS PLANT | HIGHWAY 366 | | GROVES | TX | Hissey | |
| 6/20/1975 | 10/31/1980 | ARISTOCRAFT, INC. | 10549 READING RD. | | CINCINNATI | OH | | |
| 9/24/1970 | 10/31/1980 | ARK, INC. | GARLAND COUNTY INDUSTRIAL PARK | | HOT SPRINGS | AR | | |
| 9/4/1975 | 10/31/1980 | ARKANSAS ALUMINUM ALLOYS | | | HOT SPRINGS | AR | | √ |
| 1/30/1970 | 10/31/1980 | ARKANSAS CHEMICALS, INC. | RT. 6, BOX 98 | | EL DORADO | AR | | |
| 11/26/1971 | 10/31/1980 | ARKANSAS CHEMICALS, INC. | HIGHWAY 15 NEWELL | | EL DORADO | AR | | |
| 1/1/1961 | 3/31/1962 | Armco Steel | | | Ashland | KY | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1978 | ARMCO STEEL | 2355 9th Avenue  (77002) | | HOUSTON | TX | Baron & Budd | |
| 1/1/1956 | 10/31/1980 | ARMCO STEEL CORP. | HOUSTON WORKS, MASONRY DEPT. | 13100 INDUSTRIAL ROAD | HOUSTON | TX | Baron & Budd, Hissey, Silber Pearlman | |
| 8/23/1971 | 10/31/1980 | ARMCO STEEL CORP. | COKE PLANT | HAMILTON PLANT | HAMILTON | OH | | |
| 3/2/1976 | 10/31/1980 | ARMCO STEEL CORP. | KANSAS CITY WORKS | 7000 ROBERTS RD. | KANSAS CITY | MO | | |
| 9/17/1976 | 10/31/1980 | ARMCO STEEL CORP. | BUTLER WORKS | MELT SHOP MASONRY, DOOR 1-R-6 | BUTLER | PA | | |
| 10/26/1970 | 10/31/1980 | ARMCO STEEL CORP. | BRICK SHED DOOR #313 | MIDDLETOWN WORKS | MIDDLETOWN | OH | | |
| 11/10/1970 | 10/31/1980 | ARMCO STEEL CORP. | BRICK SHED BLDG. 142 | ASHLAND WORKS | ASHLAND | KY | | |
| 1/1/1964 | 3/31/1976 | ARMCO STEEL MILL | 2355 9th Avenue  (77002) | | HOUSTON | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | ARMCO STEEL MILL | 2300 S HIGHWAY 97 (74063) | | SAND SPRINGS | OK | Silber Pearlman | |
| 1/1/1964 | 3/31/1965 | ARUNDALE PLASTICS PLANT | 5444 PARK DRIVE (63110) | | ST. LOUIS | MO | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ASARCO COPPER & METALS REFINERY/PLANT/SMELTING PLANT | SMELTER | 7901 N. HWY. 136 | AMARILLO | TX | Baron & Budd, Silber Pearlman | |
| 1/1/1966 | 3/31/1978 | ASARCO COPPER SMELTER | (PO BOX 1111) | | ELPASO | TX | Baron & Budd | √ |
| 1/1/1956 | 3/31/1981 | ASARCO PLANT | FRITCH HIGHWAY (79101) | | AMARILLO | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ASARCO SMELTING PLANT | 2301 W PAISANO DRIVE (79922) | | EL PASO | TX | Silber Pearlman | |
| 1/1/1964 | 3/31/1975 | ASARCO SMELTING PLANT | 9200 MARKET STREET ROAD | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1964 | 3/31/1981 | ASARCO SMELTING PLANT | PO BOX 4767 (78407) | | CORPUS CHRISTI | TX | Silber Pearlman | |
| 1/1/1968 | 3/31/1978 | ASARCO ZINC REFINERY/ECYCLE TEXAS HYDROMETALLURGICAL | 5500 Up River Road,  PO BOX 4767 (78407) | | CORPUS CHRISTI | TX | Baron & Budd | |
| 1/20/1971 | 10/31/1980 | ASG INDUSTRIES, INC. | | | GREENLAND | TN | | √ |
| 11/20/1963 | 10/31/1980 | ASHLAND OIL & REFINING CO. | RIVER RD. | | TONAWANDA | NY | | |
| 11/2/1970 | 10/31/1980 | ASHLAND OIL & REFINING CO. | PLANT NO. 2 | | CATLETTSBURG | KY | | |
| 10/26/1971 | 10/31/1980 | ASHLAND OIL,.INC. | #1 REFINERY | | CATLETTSBURG | KY | | √ |
| 7/13/1966 | 10/31/1980 | ASSOCIATED ELECTRIC CORP. | | | THOMAS HILL | MO | | √ |
| 1/16/1969 | 10/31/1980 | ASSOCIATED ELECTRIC CORP. | | | BINKLEY | MO | | √ |
| 1/1/1963 | 3/31/1966 | ASTRODOME | 8400 KIRBY DR. | | HOUSTON | TX | Baron & Budd | |
| 9/7/1961 | 10/31/1980 | ATLANTIC CITY ELECTRIC | MISSOURI AVE. & THOROFARE | | ATLANTIC CITY | NJ | | |
| 5/31/1974 | 10/31/1980 | ATLANTIC RICHFIELD CO. | 3500 INDIANAPOLIS BLVD. | | EAST CHICAGO | IN | | |
| 5/15/1973 | 10/31/1980 | ATLANTIC STEEL CO. | MILL STOREROOM | 1365 MECASLIN ST. NW | ATLANTA | GA | | |
| 1/1/1982 | 3/31/1981 | AUSTIN POWER PLANT | 4812 EAST 7TH STREET | | AUSTIN | TX | Hissey | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 9/21/1971 | 10/31/1980 | AVCO SPENCER DIV. | FOOT OF PARK ST. | | WILLIAMSPORT | PA | | |
| 1/1/1963 | 3/31/1965 | AVONDALE SHIPYARD | 5100 River Rd, Avondale, (70094) | | NEW ORLEANS | LA | Baron & Budd | |
| 1/1/1963 | 3/31/1976 | AVONDALE TEXTILE MILL | 900 Avondale Ave., | | SYLACAUGA | AL | Baron & Budd | |
| 1/1/1969 | 3/31/1970 | B.F. GOODRICH PLANT | 1215 MAIN STREET | | PORT NECHES | TX | Hissey | |
| 1/1/1961 | 3/31/1962 | Babcock & Wilcox | | | Beaver | PA | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1964 | Babcock & Wilcox | | | Koppel | PA | Goldberg Persky | √ |
| 7/3/1975 | 10/31/1980 | BABCOCK & WILCOX CO. | 15701 HERON AVE. | | LA MIRADA | CA | | |
| 1/1/1961 | 3/31/1962 | Babcock & Wilcox East Works | | | Beaver Falls | PA | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | Babcock & Wilcox Main Plant | | | Beaver Falls | PA | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1964 | Babcock & Wilcox Wallace Run Plant | | | Beaver | PA | Goldberg Persky | √ |
| 7/19/1968 | 10/31/1980 | BALDWIN-LIMA-HAMILTON CORP | STANDARD STEEL WORKS DIV. | STEAM PLANT #7 | BURNHAM | PA | | |
| 1/1/1963 | 3/31/1976 | BARRY STEAM PLANT | Hwy 43 Bucks (36512) | | BUCKS | AL | Baron & Budd | |
| 1/1/1961 | 3/31/1966 | BASELL POLYOLEFINS PLANT | 331 ANN ST. | | SULPHUR | LA | Baron & Budd | |
| 1/14/1971 | 10/31/1980 | BASIC SCIENCE BUILDING | UNIVERSITY OF IOWA | | IOWA CITY | IA | | |
| 10/29/1975 | 10/31/1980 | BATCHALDER CO., INC. | OFF SWAMP ROAD | | BOTSFORD | CT | | |
| 4/21/1977 | 10/31/1980 | BATCHELDER-BLASIUS, INC. | | | EAST STARTEX | SC | | √ |
| 6/15/1971 | 10/31/1980 | BAY STATE FIRE BRICK CO. | P.O. BOX 2572 | | SPRINGFIELD | MA | | |
| 9/11/1970 | 10/31/1980 | BAY STATE FIRE BRICK CO. | THEIR SIDING | | SPRINGFIELD | MA | | |
| 9/11/1970 | 10/31/1980 | BAY STATE FIRE BRICK CO. | 149 WASON AVE. | | SPRINGFIELD | MA | | |
| 1/1/1963 | 3/31/1981 | BAYLOR HOSPITAL/BAYLOR UNIVERSITY MEDICAL CENTER | 3500 GASTON AVE. (75246) | | DALLAS | TX | Baron & Budd, Silber Pearlman | |
| 2/18/1965 | 10/31/1980 | BEARDEN LUMBER | | | BEARDEN | AR | | √ |
| 12/16/1969 | 10/31/1980 | BECKWITH MACHINERY | ROUTE 22 | | MURRAYSVILLE | PA | | |
| 6/13/1973 | 10/31/1980 | BEECH AIRCRAFT CORP. | 9709 E. CENTRAL AVE. | | WICHITA | KS | | |
| 7/18/1967 | 10/31/1980 | BEHM CO. | 6TH & CHESTNUT | | OSAWATOMIE | KS | | |
| 1/1/1963 | 3/31/1976 | BENDERS SHIPYARD | 265 S. WATERS ST. | | MOBILE | AL | Baron & Budd | |
| 1/1/1956 | 3/31/1972 | BETHLEHEM SHIPYARD/STEEL MILL | 850 NORTH PINE | | BEAUMONT | TX | Hissey | |
| 1/1/1956 | 3/31/1978 | BETHLEHEM STEEL CORP. | 5111 NORTH PONT ROAD (21219) | | BALTIMORE | MD | Hissey | |
| 10/12/1964 | 10/31/1980 | BETHLEHEM STEEL CORP. | | | JOHNSTOWN | PA | Goldberg Persky | √ |
| 10/2/1964 | 10/31/1980 | BETHLEHEM STEEL CORP. | MECH. DEPT., TRUCK STOP 242 | | JOHNSTOWN | PA | | |
| 10/10/1966 | 10/31/1980 | BETHLEHEM STEEL CORP. | BRICK DEPT. | WEST END YARD | STEELTON | PA | | |
| 1/23/1968 | 10/31/1980 | BETHLEHEM STEEL CORP. | BRICKLAYER DEPT. | SAUCON DIV. | BETHLEHEM | PA | | |
| 2/5/1968 | 10/31/1980 | BETHLEHEM STEEL CORP. | EAST GATE | | BURNS HARBOR | IN | | |
| 12/9/1968 | 10/31/1980 | BETHLEHEM STEEL CORP. | | | LACKAWANNA | NY | | √ |
| 6/19/1978 | 10/31/1980 | BETHLEHEM STEEL CORP. | | | BURNS HARBOR | IN | | √ |
| 12/10/1973 | 10/31/1980 | BETHLEHEM STEEL CORP. | COKE OVENS MECH. TRUCKS STA. 153 | | LACKAWANNA | NY | | |
| 1/1/1956 | 3/31/1981 | BIG THREE INIUSTRIES PLANT | 11400 BAY AREA BOULEVARD | | PASADENA | TX | Hissey | |
| 3/20/1975 | 10/31/1980 | BLACK & VEATCH | CITY OF VERO BEACH | FLORIDA EAST COAST RAILROAD | VERO BEACH | FL | | |
| 4/29/1976 | 10/31/1980 | BOARD OF WATER & LIGHT | 312 N. GRAND | CENTRAL MAINTENANCE | LANSING | MI | | |
| 1/1/1972 | 3/31/1977 | BOISE SOUTHERN/BOISE CASCADE | 4200 U.S. HWY 190 W | | DERIDDER | LA | Baron & Budd | |
| 1/1/1961 | 3/31/1981 | BORDER STEEL MILL | IH 10 & VINTON ROAD (79821) | | VINTON | TX | Silber Pearlman | |
| 1/1/1965 | 3/31/1975 | BORDER STILL ROLLINGS MILLS | I-10 & Vinton Road (79835) | | EL PASO | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1976 | BOWATER PAPER MILL | 5020 HWY. 11 SOUTH | | CALHOUN | TN | Baron & Budd | |
| 1/25/1978 | 10/31/1980 | BRANDT EQUIPMENT & SUPPLY CO. | 2800 N. NICHOLS ST. | | FORT WORTH | TX | | |
| 12/14/1970 | 10/31/1980 | BREMAN'S EXPRESS PITTSBURGH TERMINAL | 51st. AND BUTLER | | PITTSBURGH | PA | | |
| 2/5/1976 | 10/31/1980 | BRINKS REFRACTORIES, INC. | 1804 9TH ST. | | KENNER | LA | | |
| 2/23/1972 | 10/31/1980 | BRINKS REFRACTORIES, INC. | KENNER HOUSE TRACK | | KENNER | LA | | |
| 6/29/1973 | 10/31/1980 | BRISTOL LABS | THOMPSON RD. | BOILER ROOM | EAST SYRACUSE | NY | | |
| 2/10/1970 | 10/31/1980 | BROCKWAY GLASS CO., INC. | PLANT #13 | | MONTGOMERY | AL | | |
| 3/6/1970 | 10/31/1980 | BROCKWAY GLASS CO., INC. | PLANT #11 | | WASHINGTON | PA | | |
| 6/11/1970 | 10/31/1980 | BROCKWAY GLASS CO., INC. | PLANT #4 | | LAPEL | IN | | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1963 | 3/31/1976 | BROOKLEY AIR FORCE BASE | 1891 9th Street  (36615) | | MOBILE | AL | Baron & Budd | |
| 1/1/1965 | 3/31/1981 | BROWN & ROOT SHIPYARD | OFF WASHINGTON AVENUE | | HOUSTON | TX | Hissey | √ |
| 1/1/1956 | 3/31/1980 | BROWN & ROOT SHIPYARD | FM 563 (77514) | | ANAHUAC | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | BROWN OIL TOOLS MANUFACTURING PLANT | 6023 NAVIGATION ROAD (77011) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1963 | BROWN SHIPYARD | 4100 CLINTON DRIVE (77020) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1968 | 3/31/1978 | BROWNS FERRY NUCLEAR PLANT | 10833 Shaw Road. (35611) | | ATHENS | AL | Baron & Budd | |
| 7/10/1974 | 10/31/1980 | BUCYRUS ERIE CO. | CLEANING ROOM | | S. MILWAUKEE | WI | | |
| 10/1/1964 | 10/31/1980 | BUICK MOTOR DIV. | GENERAL MOTORS CORP. | BLDG. #86, ATTN: STOCK | FLINT | MI | | |
| 11/2/1976 | 10/31/1980 | BUILDERS SUPPLY CO. | 504 S. MAIN ST. | | WILKES-BARRE | PA | | |
| 1/1/1963 | 3/31/1981 | BURTON SHIPYARD | PROCTOR & MAIN STREET | | PORT ARTHUR | TX | Hissey | |
| 12/15/1970 | 10/31/1980 | BWANA INDUSTRIES, INC. | | | SPRINGFIELD | MA | | √ |
| 1/15/1971 | 10/31/1980 | BWANA INDUSTRIES, INC. | 149 WASON AVE. | | SPRINGFIELD | MA | | |
| 2/15/1971 | 10/31/1980 | BWANA INDUSTRIES, INC. | P.O. BOX 2572 | | SPRINGFIELD | MA | | |
| 12/15/1970 | 10/31/1980 | BWANA INDUSTRIES, INC. | P.O. BOX 2572 | | SPRINGFIELD | MA | | |
| 6/22/1972 | 10/31/1980 | C.F. BRAUN | UNIROYAL CHEMICAL SULFUR RECOVERY UNIT | | GEISMAR | LA | | |
| 5/31/1973 | 10/31/1980 | C.F.&I. STEEL CORP. | | | PUEBLO | CO | | √ |
| 1/1/1964 | 3/31/1981 | CALAVERAS POWER PLANT | CALAVERAS LAKE | | SAN ANTONIO | TX | Hissey | |
| 6/1/1961 | 10/31/1980 | CALCINATOR CORP. | 28TH ST. & WATER ST. | | BAY CITY | MI | | |
| 1/1/1965 | 3/31/1981 | CAMERON IRON WORKS FOUNDRY | 13013 NORTHWEST HWY. | | HOUSTON | TX | Baron & Budd, Silber Pearlman | |
| 1/1/1965 | 3/31/1966 | Campbell, Wyant & Cannon Foundry | | | Muskegon | MI | Goldberg Persky | √ |
| 8/30/1965 | 10/31/1980 | CAPTINA OPERATING | KAMMER PLANT | | CRESAP | WV | | |
| 1/1/1961 | 3/31/1971 | CARBON BLACK PLANT | 9455 FM 1559 Rd (79007) | | BORGER | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | CARBON BLACK PLANT | 9300 NEEDLEPOINT ROAD (77521) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1978 | CARWIN-UPJOHN-DOW CHEMICAL PLANT (POLYURETHANE) | 550 BATTLEGROUND RD. | | LA PORTE | TX | Baron & Budd | |
| 3/27/1967 | 10/31/1980 | CASTLE-HANSON CORP. | 860 MAPLE ST. | | ROCHESTER | NY | | |
| 1/1/1956 | 3/31/1978 | CELANESE CHEMICAL PLANT | Hwy 77 South , PO BOX 428 (78343) | | BISHOP | TX | Baron & Budd, Hissey | |
| 1/1/1956 | 3/31/1981 | CELANESE CHEMICAL PLANT | 9502 BAYPORT ROAD | | PASADENA | TX | Hissey, Silber Pearlman | |
| 1/1/1967 | 3/31/1981 | CELANESE CHEMICAL PLANT | FM 3057 | | BAY CITY | TX | Silber Pearlman | |
| 4/9/1968 | 10/31/1980 | CENTRAL ILLINOIS PUBLIC SERVICE CO. | | | COFFEEN | IL | | √ |
| 1/16/1967 | 10/31/1980 | CENTRAL MISSOURI STATE TEACHERS COLLEGE | SCIENCE BLDG. | | WARRENSBURG | MO | | |
| 4/21/1977 | 10/31/1980 | CER-MET, INC. | JUNCTION OF HIGHWAY 49 & 29 | | CHARLOTTE | NC | | |
| 1/1/1956 | 3/31/1981 | CF&I STEEL MILL | 2100 S FREEWAY (81004) | | PUEBLO | CO | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | CHAMPION (SIMPSON-SOUTHLAND) PAPER MILL | STATE HWY. 225 | | PASADENA | TX | Silber Pearlman, Baron & Budd | |
| 1/1/1965 | 3/31/1978 | CHAMPION PAPER MILL | 175 Main Street (28716) | | CANTON | NC | Baron & Budd | |
| 1/1/1967 | 3/31/1974 | CHAMPION PAPER MILL | State Route 150 (35618) (PO BOX 189) | | COURTLAND | AL | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | CHAMPION PAPER MILL | STATE HIGHWAY 225 (77501) | | PASADENA | TX | Silber Pearlman | |
| 1/1/1966 | 3/31/1970 | CHAMPLIN/CITIES SERVICES REFINERY | 1801 Nueces Bay (78469) | | CORPUS CHRISTI | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1976 | CHAMPLIN-CITGO OIL REFINERY | 2501 E Willow Rd (PO BOX 552) (73701) | | ENID | OK | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | CHARTER OIL REFINERY | 3010 BRIARPARK (77042) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1976 | CHEMSTRAND/MONSANTO CHEMICAL PLANT | COURTLAND HWY. OFF HWY. 20 | | DECATUR | GA | Baron & Budd | √ |
| 1/1/1965 | 3/31/1970 | CHEMSTRAND/MONSANTO CHEMICAL PLANT | 3000 CHEMSTRAND RD. | | CANTONMENT | FL | Baron & Budd | |
| 8/20/1971 | 10/31/1980 | CHEROKEE SUPPLY | 500 E. FIRST AVE. | | ROME | GA | | |
| 5/26/1966 | 10/31/1980 | CHEVROLET | GENERAL MOTORS CORP. | BAY CITY PLANT, 100 FITZGERALD ST. | BAY CITY | MI | | |
| 6/25/1963 | 10/31/1980 | CHEVROLET | GENERAL MOTORS CORP. | 1535 N. MADISON AVE. | BAY CITY | MI | | |
| 1/1/1964 | 3/31/1976 | CHEVROLET PLANT | 3900 Motors Industrial Way  (30360) | | ATLANTA | GA | Baron & Budd | |
| 1/1/1956 | 10/31/1980 | CHEVRON OIL REFINERY | 9138 SE FOSTER ROAD | | PORTLAND | OR | Silber Pearlman | |
| 1/1/1969 | 3/31/1978 | CHEVRON REFINERY | 6501 TROWBRIDGE (79905) | | EL PASO | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | CHEVRON USA REFINERY | 2001 SOUTH GULFWAY DRIVE | | PORT ARTHUR | TX | Hissey | |
| 10/10/1969 | 10/31/1980 | CHIZ BROS CO. | 4510 MAIN ST. | | MUNHALL | PA | | |
| 1/14/1971 | 10/31/1980 | CHRISTY FIREBRICK CO. | 3144 N. BROADWAY | | ST. LOUIS | MO | | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1963 | 3/31/1978 | CIBA-GEIGY CHEMICAL PLANT | OFF HWY 43 | | MCINTOSH | AL | Baron & Budd | |
| 1/1/1969 | 3/31/1978 | CIELO VISTA MALL | 8401 GATEWAY BLVD. WEST | | EL PASO | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1976 | CIT-CON CITY SERVICES | HWY. 108 | | LAKE CHARLES | LA | Baron & Budd | √ |
| 1/1/1963 | 3/31/1976 | CITIES SERVICES/TENNESSEE COPPER | 304 Ocoee Street (37317) | | COPPERHILL | TN | Baron & Budd | |
| 1/1/1956 | 10/31/1980 | CITY DOCKS | 111 EAST LOOP NORTH (77029) | | HOUSTON | TX | Silber Pearlman | |
| 6/11/1965 | 10/31/1980 | CITY OF CLEVELAND | E. 53RD ST. & S. MARGINAL RD. | | CLEVELAND | OH | | |
| 10/1/1970 | 10/31/1980 | CITY OF LAKE WORTH | POWER PLANT EXPANSION UNIT S - 4 | | LAKE WORTH | FL | | |
| 3/11/1970 | 10/31/1980 | CLEVELAND ELECTRIC ILLUMINATING CO. | 2133 LAKE ROAD EAST | | ASHTABULA | OH | | |
| 1/1/1964 | 3/31/1965 | CLYDE IRON WORKS | 29TH AVENUE & MICHIGAN STREET | | DULUTH | MN | Hissey | |
| 1/1/1961 | 3/31/1978 | COASTAL REFINERY | 5438 Union St (78407) | | CORPUS CHRISTI | TX | Baron & Budd | |
| 7/31/1963 | 10/31/1980 | COCKER SAW CO. | | | BURT | NY | | √ |
| 1/1/1961 | 3/31/1977 | COLBERT STEAM PLANT | 900 Colbert Steam Road  (35674) | | SHEFFIELD | AL | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Colonial Steel | | | Monaca | PA | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1976 | COLUMBIA NITROGEN PLANT | COLUMBIA NITROGEN RD. | | AUGUSTA | GA | Baron & Budd | √ |
| 1/1/1956 | 3/31/1957 | COLUMBIA SOUTHERN CHEMICAL PLANT | 1300 COLUMBIA SOUTHERN ROAD | | LAKE CHARLES | LA | Hissey | |
| 1/9/1970 | 10/31/1980 | COLUMBUS & SOUTHERN OHIO ELECTRIC CO. | 7855 S. HIGH ST. | PICWAY STATION | LOCKBURNE | OH | | |
| 1/9/1970 | 10/31/1980 | COLUMBUS & SOUTHERN OHIO ELECTRIC CO. | CONESVILLE STATION RFD # 1 | | CONESVILLE | OH | | |
| 1/1/1963 | 3/31/1968 | COMBUSTION ENGINEERING | 911 WEST MAIN ST. | | CHATTANOOGA | TN | Baron & Budd | |
| 7/14/1975 | 10/31/1980 | COMMONWEALTH EDISON | POWERTON PLANT | | PEKIN | IL | | |
| 1/1/1963 | 3/31/1973 | CONNOR STEEL MILL | 101 50th St S  (35212) | | BIRMINGHAM | AL | Baron & Budd | |
| 1/1/1963 | 3/31/1964 | Connors Steel | | | Huntington | WV | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1978 | CONOCO REFINERY (LAKE CHARLES) | 2200 OLD SPANISH TRAIL | | WESTLAKE | LA | Baron & Budd | |
| 1/1/1972 | 3/31/1981 | CONSOLIDATED ALUMINUM PLANT | 825 LOWER BROWNSVILLE ROAD (62060) | | MADISON | IL | Silber Pearlman | |
| 12/8/1975 | 10/31/1980 | CONTINENTAL CAN | HIGHWAY 56S | | AUGUSTA | GA | | √ |
| 1/1/1956 | 3/31/1981 | CONTINENTAL CAN PLANT | 5900 CANAL STREET | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1969 | 3/31/1971 | CONTINENTAL CAN PLANT | 77 WEST JACKSON BLVD (60604) | | CHICAGO | IL | Silber Pearlman | |
| 2/16/1970 | 10/31/1980 | COPLAY CEMENT MANUFACTURING | NAZARETH PLANT | | NAZARETH | PA | | |
| 12/3/1973 | 10/31/1980 | COS COB POWER | | | COS COB | CT | | √ |
| 1/1/1973 | 3/31/1977 | COSEN-FINA OIL REFINERY | I-20 & Refinery Rd. (79721) | | BIG SPRINGS | TX | Baron & Budd | |
| 4/17/1973 | 10/31/1980 | CRICHTON CORP., THE | 6771 W. NATIONAL AVE. | | MILWAUKEE | WI | | |
| 1/1/1956 | 3/31/1981 | CROWN CENTRAL OIL REFINERY | 111 RED BLUFF ROAD (77506) | | PASADENA | TX | Silber Pearlman | |
| 1/1/1961 | 3/31/1962 | Crucible Steel | | | Midland | PA | Goldberg Persky | |
| 5/11/1979 | 10/31/1980 | CULP SMELTING & REFINING CO. | ROUTE 1 | | STEELE | AL | | √ |
| 10/14/1970 | 10/31/1980 | D&E  TOOL COMPANY, INC. | 1608 VIRGINIA AVE. W. | | HUNTINGTON | WV | | √ |
| 4/26/1972 | 10/31/1980 | DANA CORP. | WEISER BLDG. | PARISH FRAME DIV. | READING | PA | | |
| 1/1/1961 | 3/31/1975 | DAY & ZIMMERMAN AMMUNITION PLANT | HWY 82 WEST (77581) | | TEXARKANA | TX | Silber Pearlman | |
| 5/22/1972 | 10/31/1980 | DAYTON MALLEABLE IRON | 2520 S. THIRD ST. | | IRONTON | OH | | |
| 11/16/1970 | 10/31/1980 | DEEPSEA VENTURES | | | GLOUSTER  POINT | VA | | √ |
| 10/29/1970 | 10/31/1980 | DEEPWATER OPERATING CO. | DEEPWATER GENERATING STATION | | PENNS GROVE | NJ | | √ |
| 1/1/1961 | 3/31/1962 | Defoe Shipyard/Fisher Body Plant | | | Bay City | MI | | √ |
| 1/1/1963 | 3/31/1968 | DELTA TANK FABRICATING SHOP | 5185 Adams Avenue (70806) | | BATON ROUGE | LA | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Detroit Edison St. Clair Power Plant | | | St. Clair | MI | Goldberg Persky | √ |
| 1/1/1956 | 3/31/1981 | DIAMOND ALKALI CHEMICAL PLANT | 9403 FM 1960 ROAD W | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | DIAMOND SHAMROCK CHEMICAL PLANT | 9403 FM 1960 ROAD W | | HOUSTON | TX | Silber Pearlman, Baron & Budd | |
| 1/15/1969 | 10/31/1980 | DIERK FOREST, INC. | | | HOT SPRINGS | AR | | √ |
| 6/3/1969 | 10/31/1980 | DIERK FOREST, INC. | | | DIERK | AR | | √ |
| 1/1/1966 | 3/31/1973 | DIMAOND SHAMROCK/BIG DIAMOND/OXVINYLS | 2400 Miller Cut Off Rd (77571) | | LA PORTE | TX | Baron & Budd | |
| 1/1/1977 | 3/31/1978 | DIXIE CHEMICAL PLANT | 10701 BAY AREA ROAD | | PASADENA | TX | Hissey | |
| 1/20/1972 | 10/31/1980 | DOLONITE BRICK CORP. OF AMERICA | 225 N. EMIGS MILL RD. | | YORK | PA | | |
| 4/21/1972 | 10/31/1980 | DONALD CARROLL METALS, INC. | 201 N. DIVISION ST. | | BENSENVILLE | IL | | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 12/16/1971 | 10/31/1980 | DORR-OLIVER INC. | | | STAMFORD | CT | | √ |
| 1/1/1963 | 3/31/1976 | DOW BADISCHE | 440 Masters Blvd (29626) | | ANDERSON | SC | Baron & Budd | |
| 1/1/1964 | 3/31/1981 | DOW BADISCHE CHEMICAL PLANT | 2301 NORTH BRAZOSPORT BLVD (77541) | | FREEPORT | TX | Silber Pearlman | |
| 3/12/1969 | 10/31/1980 | DOW CHEMCIAL CO. | BUILDING 500 - DOOR F | | MIDLAND | MI | | |
| 1/1/1965 | 3/31/1978 | DOW CHEMCIAL PLANT | 21255 LOUISIANA HWY. | | PLAQUEMINE | LA | Baron & Budd | |
| 1/1/1961 | 3/31/1978 | DOW CHEMICAL | HWY. 288 | | FREEPORT | TX | Baron & Budd | √ |
| 1/1/1956 | 3/31/1981 | DOW CHEMICAL PLANT | 2301 NORTH BRAZOSPORT BLVD (77541) | | FREEPORT | TX | Silber Pearlman, Baron & Budd | |
| 5/27/1970 | 10/31/1980 | DUHE & BOURGEOIS SUGAR CO. | P.O. BOX 648 | | JEANERETTE | LA | | |
| 1/1/1961 | 3/31/1978 | DUPONT CHEMICAL PLANT | 2625 OLD BLOMMINGTON RD. | | VICTORIA | TX | Baron & Budd | |
| 1/1/1969 | 3/31/1978 | DUPONT CHEMICAL PLANT | 12501 STRANG ROAD | | LA PORTE | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1972 | DUPONT CHEMICAL PLANT | 2739 FM 1006 (77630), PO Box 1089 (77631) | | ORANGE | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1972 | DUPONT CHEMICAL PLANT | Highway 347 (77705) | | BEAUMONT | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | DUPONT CHEMICAL PLANT | PO BOX 2626 (77902) | | VICTORIA | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | DUPONT CHEMICAL PLANT | 12501 STRANG ROAD (77572) | | LA PORTE | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1981 | DUPONT CHEMICAL PLANT | 6350 N TWIN CITIES HIGHWAY (77704) | | BEAUMONT | TX | Silber Pearlman | |
| 1/1/1972 | 3/31/1974 | DUVAL SULFUR PLANT | | | GALVESTON | TX | Hissey | √ |
| 1/1/1961 | 3/31/1978 | DX/SUNRAY REFINERY | 907 South Detroit Avenue  (74120) | | TULSA | OK | Baron & Budd | |
| 11/7/1972 | 10/31/1980 | E. KEELER CO. | 238 WEST ST. | | WILLIAMSPORT | PA | | |
| 1/1/1961 | 3/31/1962 | E.I. DuPont | | | Belle | WV | Goldberg Persky | √ |
| 1/1/1956 | 3/31/1981 | E.I. DUPONT CHEMICAL PLANT | FM 1006 | | ORANGE | TX | Hissey | |
| 1/1/1974 | 3/31/1977 | E.I. DUPONT CHEMICAL PLANT | 12501 STRANG ROAD | | PASADENA | TX | Hissey | |
| 9/16/1970 | 10/31/1980 | E.I. DUPONT DENEMOURS & CO. | | | BELLE | WV | | √ |
| 9/11/1964 | 10/31/1980 | E.J. KORVETTE DEPT. STORE | RT. 66, LINDBURGH BLVD. | SUNSET HILLS SITE | ST. LOUIS | MO | | |
| 10/6/1964 | 10/31/1980 | E.J. KORVETTE DEPT. STORE | FLORISSANT RD. & EVANS AVE. | COOL VALLEY | ST. LOUIS | MO | | |
| 2/20/1970 | 10/31/1980 | E.S. FOX & CO. | 2ND FRANKLIN ST. | | READING | PA | | |
| 7/12/1974 | 10/31/1980 | E.S. FOX DIV., NORTHEASTERN LUMBER CO. | P.O. BOX 161 | | READING | PA | | |
| 2/25/1976 | 10/31/1980 | E.S. FOX DIV., NORTHEASTERN LUMBER CO. | 2201 N. 11TH ST. | | READING | PA | | |
| 1/1/1956 | 3/31/1974 | EAGLE PICHER MANUFACTURING PLANT | 601 EAST BOLLINGER (74437) | | HENRYETTA | OK | Silber Pearlman | |
| 7/27/1970 | 10/31/1980 | EASTERN BRIDGE SUPPLY CO., INC. | THEIR SIDING | | WORCESTER | MA | | |
| 1/1/1969 | 3/31/1981 | EASTMAN KODAK PLANT | HIGHWAY 149 SOUTH | | LONGVIEW | TX | Hissey | |
| 1/1/1956 | 3/31/1979 | EL PASO ELECTRIC BUILDING | 100 N STANTON ST (79901) | | EL PASO | TX | Silber Pearlman | |
| 1/1/1962 | 3/31/1964 | ELMENDORF AIR FORCE BASE | 8111 Craw Avenue Unit 3000  (99506) | | ELMENDORF AFB | AK | Baron & Budd | |
| 7/8/1970 | 10/31/1980 | EMIX MFG. CO. | R.D.I. | | MINERAL WELLS | WV | | |
| 1/1/1963 | 3/31/1976 | EMORY UNIVERSITY | 201 DOWMAN DR. | | ATLANTA | GA | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Empire Detroit Steel | | | Mansfield | OH | Goldberg Persky | √ |
| 1/1/1965 | 3/31/1981 | ENRON GAS PLANT | 4403 LA PORTE ROAD (77501) | | PASADENA | TX | Silber Pearlman | |
| 3/2/1966 | 10/31/1980 | ERIE FORGE & STEEL CORP. | PLANT #2 | 1341 W. 16TH ST. | ERIE | PA | | |
| 1/1/1966 | 3/31/1978 | ETHYL CHEMICAL PLANT | 4999 SCENIC HWY. | | BATON ROUGE | LA | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | ETHYL CHEMICAL PLANT | 1000 NORTH SOUTH AVENUE (77501) | | PASADENA | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1976 | ETHYL-ABEMARLE-BRITISH PETROLEUM (BP)/ AMERICAN OIL COMPANY AMOCO CHEMICAL PLANT | 1313 West Pasadena Freeway (77506)(PO BOX 2016) | | PASADENA | TX | Baron & Budd | |
| 1/10/1972 | 10/31/1980 | EXCELSIOR BRICK CO. | 1220 N. MCDONOUGH ST. | | MONTGOMERY | AL | | |
| 1/1/1966 | 3/31/1981 | EXXON CHEMICAL PLANT | 5000 BAYWAY DRIVE (77522) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1972 | 3/31/1981 | EXXON GAS PROCESSING PLANT | 29003 MORTON ROAD (77493) | | KATY | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | EXXON OIL REFINERY | PO BOX 3950 (77522) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | EXXON REFINERY | 2800 DECKER ST. | | BAYTOWN | TX | Baron & Budd, Silber Pearlman | |
| 1/5/1967 | 10/31/1980 | FARRELL CHEEK STEEL CO. | | | SANDUSKY | OH | | √ |
| 3/16/1965 | 10/31/1980 | FEDERAL COMPRESS & WAREHOUSE | | | TALLULAH | LA | | √ |
| 8/16/1966 | 10/31/1980 | FEDERAL RESERVE BANK | | | KANSAS CITY | MO | | √ |
| 3/6/1978 | 10/31/1980 | FEDERAL-MOGUL CORP. | MALDEN INDUSTRIAL PARK | MALDEN PLANT | MALDEN | MO | | |
| 1/1/1969 | 3/31/1981 | FH MALONEY PIPE FABRICATING SHOP | 13609 INDUSTRIAL ROAD (77701) | | HOUSTON | TX | Silber Pearlman | |

Final List of Sites That Received
NARCO Asbestos-Containing Products

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 7/14/1971 | 10/31/1980 | FIDELITY COAL & SUPPLY CO. | 335 E. HIGH ST. | | LIME | OH | | |
| 1/1/1956 | 3/31/1971 | FINA OIL & CHEMICAL PLANT | OFF HIGHWAY 366 | | PORT ARTHUR | TX | Hissey | √ |
| 1/1/1962 | 3/31/1963 | FINA OIL & CHEMICAL PLANT | 12212 PORT ROAD | | PASADENA | TX | Hissey | |
| 1/1/1972 | 3/31/1977 | FINA OIL REFINERY | I-20 & Refinery Rd., (79721) | | BIG SPRINGS | TX | Baron & Budd | |
| 1/1/1973 | 3/31/1978 | FIRESTONE TIRE AND RUBBER PLANT | Hwy 108 South, P.O. Box 1361 (70601) | | LAKE CHARLES | LA | Baron & Budd | |
| 1/1/1962 | 3/31/1963 | FIRESTONE TIRE AND RUBBER PLANT | FM 1006 | | ORANGE | TX | Hissey | |
| 1/1/1967 | 3/31/1981 | FIRESTONE TIRE PLANT | 150 S Cities Service Hwy (70663) | | SULPHUR | LA | Baron & Budd | |
| 1/1/1961 | 3/31/1978 | FIRST NATIONAL BANK BLDG. | 701 MAGNOLIA AVE. | | FT. WORTH | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1978 | FLINT HILLS REFINERY/KOCH/SUNTIDE OIL REFINERY | 2825 Suntide Road  (78410) | | CORPUS CHRISTI | TX | Baron & Budd | |
| 9/14/1976 | 10/31/1980 | FLORIDA POWER & LIGHT CO. | FT. MYERS PLANT | | FT MYERS | FL | | √ |
| 4/24/1978 | 10/31/1980 | FLORIDA POWER & LIGHT CO. | MARTIN PLANT SITE | ROUTE 710, 7 MILES NORTH OF | INDIANTOWN | FL | | |
| 8/18/1972 | 10/31/1980 | FLOWER COAL & SUPPLY CO. | W. 52ND STREET | | ASHTABULA | OH | | |
| 1/1/1963 | 3/31/1976 | FORD ENGINE CASTING PLANT | 2019 Ford Way  (35660) | | SHEFFIELD | AL | Baron & Budd | |
| 1/1/1966 | 3/31/1975 | FORD MOTOR PLANT | 340 HENRY FORD II AVENUE (HAPEVILLE) | | ATLANTA | GA | Baron & Budd | |
| 1/1/1976 | 10/31/1980 | FORD ROUGE/ROUGE STEEL MILL | | | DEARBORN | MI | Goldberg Persky | √ |
| 1/1/1966 | 3/31/1973 | FORT BLISS ARMY BASE | Fort Bliss Army Base (79916) | | EL PASO | TX | Baron & Budd | |
| 1/1/1964 | 3/31/1976 | FORT GORDON | 30905 | | AUGUSTA | GA | Baron & Budd | √ |
| 1/1/1956 | 3/31/1978 | FORT SAM HOUSTON ARMY BASE | 2420 Fort Sam Houston  (78234) | | SAN ANTONIO | TX | Baron & Budd | |
| 11/20/1970 | 10/31/1980 | FOSTER WHEELER CORPORATION | | | LIVINGSTON | NJ | | √ |
| 1/1/1972 | 3/31/1975 | FOUR CORNERS POWER PLANT | Hwy 64 (87416) | | FARMINGTON | NM | Baron & Budd | |
| 4/28/1971 | 10/31/1980 | FOURCO GLASS | HARDING GLASS DIV. | | FORT SMITH | AR | | |
| 4/21/1968 | 10/31/1980 | FRANCIS M. DIX CO. | | | MENA | AR | | √ |
| 7/26/1972 | 10/31/1980 | FRANKLIN ALUMINUM CO. | BEVIS RD. | | FRANKLIN | GA | | |
| 1/1/1966 | 3/31/1971 | FRED MEYER STORES | 6911 SE Foster Rd (97206) | | PORTLAND | OR | Baron & Budd | |
| 5/23/1969 | 10/31/1980 | FRICTION PRODUCTS CO. | 920 LAKE RD. | | MEDINA | OH | | |
| 4/8/1963 | 10/31/1980 | FRYMAN-KUCH CO. | MIAMI UNIVERSITY | BOILER HOUSE | NEW OXFORD | OH | | |
| 9/16/1971 | 10/31/1980 | GALLO GLASS CO. | OREGON DRIVE | | MODESTO | CA | | |
| 1/1/1956 | 3/31/1981 | GALVESTON COUNTY  MEMORIAL HOSPITAL | FM 1764 HWY 3 (77591) | | TEXAS CITY | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | GALVESTON DOCKS | WHARF ROAD | | GALVESTON | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | GALVESTON DOCKS/SHIPBUILDING | 6000 HARBORSIDE DRIVE | | GALVESTON | TX | Silber Pearlman, Hissey | |
| 1/1/1961 | 3/31/1978 | GARDNER PAPER MILLS | 407 Charles Street (45042) | | MIDDLETON | OH | Baron & Budd | |
| 1/19/1968 | 10/31/1980 | GEDNEY ELECTRIC CO. | | | TERRYVILLE | CT | | √ |
| 1/1/1963 | 3/31/1976 | GENERAL DYNAMICS PLANT | GRANTS LANE | | FT. WORTH | TX | Baron & Budd | √ |
| 6/20/1975 | 10/31/1980 | GENERAL ELECTRIC CO. | BUILDING 20E | 3522 MAIN AVE. | ERIE | PA | | |
| 1/1/1956 | 3/31/1981 | GENERAL FOODS PLANT | 3900 HARRISBURG BLVD (77003) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1961 | 3/31/1962 | General Motors Cadillac Plant | | | Detriot | MI | Goldberg Persky | √ |
| 1/1/1965 | 3/31/1966 | General Motors Chevrolet Plant | | | Bay City | MI | Goldberg Persky | √ |
| 9/12/1967 | 10/31/1980 | GENERAL MOTORS CORP. | 1001 E. DELAVAN AVE. | | BUFFALO | NY | | |
| 3/22/1974 | 10/31/1980 | GENERAL MOTORS CORP. | CHEVROLET MOTORS SAGINAW GREY IRON CASTING PLANT | 1629 NORTH WASHINGTON | SAGINAW | MI | | |
| 1/1/1965 | 3/31/1966 | General Motors Grey Iron Foundry | | | Saginaw | MI | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | General Motors Saginaw Steering Gear Plants | | | Saginaw | MI | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | General Motors Tech Center | | | Warren | MI | Goldberg Persky | √ |
| 1/1/1956 | 3/31/1978 | GENERAL PORTLAND CEMENT PLANT | 2800 POST OAK BLVD (77251) | | HOUSTON | TX | Silber Pearlman | |
| 3/19/1973 | 10/31/1980 | GENERAL SUPPLY CO. | 1 BRIDGE ST. | | COPLAY | PA | | |
| 1/29/1965 | 10/31/1980 | GENERAL WILLIAM J. DONOVAN STATE OFFICE BUILDING | 125 MAIN STREET | | BUFFALO | NY | | |
| 4/23/1964 | 10/31/1980 | GENERAL WILLIAM J. DONOVAN STATE OFFICE BUILDING | 125 MAIN STREET | | BUFFALO | NY | | |
| 10/4/1974 | 10/31/1980 | GEORGE M. HUFF | 686 AVE. E. | | BAYONNE | NJ | | |

Final List of Sites That Received
NARCO Asbestos-Containing Products

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 4/3/1974 | 10/31/1980 | GEORGE P. REINTJES CO. | | ALL INVOICES NOTE THE FOLLOWING: FOR SHIPMENT TO J&L (PITTSBURGH WORKS), U.S. STEEL (HOMESTEAD WORKS), AND/OR E.D.S. (MARSFIELD WORKS) | KANSAS CITY | MO | | √ |
| 1/1/1976 | 3/31/1981 | GEORGIA CRAFT PAPERMILL | 238 Mays Bridge Rd SW (30165) | | ROME | GA | Baron & Budd | |
| 1/1/1969 | 3/31/1970 | Georgia Pacific Paper Mill (f/k/a Kalamazoo Paper Company Mill) | | | Kalamazoo | MI | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1976 | GEORGIA PACIFIC PAPER MILL (GREAT SOUTHERN PAPER PMILL) | Hwy 273 W (39832) | | CEDAR SPRINGS | GA | Baron & Budd | |
| 5/8/1975 | 10/31/1980 | GETTY OIL CO. | WAREHOUSE RECEIVING | | DELAWARE CITY | DE | | |
| 6/17/1976 | 10/31/1980 | GILMAN PAPER CO. | | | ST MARYS | GA | | |
| 12/20/1974 | 10/31/1980 | GLASROCK PRODUCTS, INC. | | | CALHOUN | GA | | |
| 2/27/1975 | 10/31/1980 | GLASS CONTAINERS | ROUTE 101 | | DAYVILLE | CT | | √ |
| 9/16/1971 | 10/31/1980 | GLENSHAW GLASS CO. | | | ORANGEBURG | NY | | √ |
| 11/25/1963 | 10/31/1980 | GLENVALE PRODUCTS | HOOVER BALL & BEARING CO. | P.O. BOX 631 | MALVERN | AR | | |
| 1/1/1956 | 3/31/1974 | GOODYEAR TIRE & RUBBER PLANT | 13441 BAY AREA BLVD (77507) | | PASADENA | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | GOODYEAR TIRE & RUBBER PLANT | 2000 GOODYEAR DRIVE (77017) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1968 | 3/31/1981 | GOODYEAR TIRE & RUBBER PLANT | 1-10 SMITH ROAD (77720) | | BEAUMONT | TX | Silber Pearlman | |
| 1/25/1977 | 10/31/1980 | GRANITE CITY STEEL CO. | CENTRAL STOREROOM | | GRANITE CITY | IL | | √ |
| 9/15/1972 | 10/31/1980 | GRANITE CITY STEEL CO. | STEEL WORKS STOREROOM | | GRANITE CITY | IL | | √ |
| 1/1/1956 | 3/31/1957 | GREAT LAKES CARBON BLACK PLANT | HIGHWAY 82 | | PORT ARTHUR | TX | Hissey | √ |
| 8/31/1966 | 10/31/1980 | GREAT LAKES CARBON CORP. | MISSOURI COKE & CHEMICAL DIV. | 526 E. CATALAN ST. | ST. LOUIS | MO | | |
| 4/18/1968 | 10/31/1980 | GREAT LAKES STEEL | | | ECORSE | MI | | √ |
| 1/1/1961 | 3/31/1962 | Great Lakes Steel Zug Island | | | Detriot | MI | Goldberg Persky | √ |
| 3/2/1971 | 10/31/1980 | GREAT SOUTHERN SUPPLY CO. | ATSF INDUSTRIAL DISTRICT TEAM TRACK | | HOUSTON | TX | | |
| 1/1/1966 | 3/31/1976 | GREEN COUNTY STEAM PLANT | HWY 43 & COUNTY RD. 18 | | GREENE | AL | Baron & Budd | |
| 1/1/1974 | 3/31/1975 | Grey Iron - General Motors Saginaw Foundry | | | Saginaw | MI | Goldberg Persky | √ |
| 12/20/1971 | 10/31/1980 | GULF CHEMICAL & METALLURGICAL CORP. | 1100 S. SECOND ST. | | IRONTON | OH | | |
| 1/1/1963 | 3/31/1981 | GULF CHEMICAL PLANT | 5000 BAYWAY DRIVE (77522) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1961 | 3/31/1981 | GULF COAST MARINE WAYS SHIPYARD | OCEAN DRIVE & BEASLEY AVE (78336) | | ARANSAS PASS | TX | Silber Pearlman | |
| 1/1/1967 | 3/31/1978 | GULF OIL CORPORATION | 1801 Gulfway Drive (77640) | | PORT ARTHUR | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1971 | GULF OIL REFINERY | OFF HIGHWAY 82 | | PORT ARTHUR | TX | Hissey | |
| 1/1/1956 | 3/31/1979 | GULF OIL REFINERY | 1801 GULFWAY DRIVE (77640) | | PORT ARTHUR | TX | Silber Pearlman | |
| 1/1/1968 | 3/31/1970 | GULF PORT SHIPYARD | HOUSTON AVENUE | | PORT ARTHUR | TX | Hissey | |
| 1/1/1957 | 3/31/1981 | GULF STATES INDUSTRIAL PLANT | HWY 59 AT SCOTT ROAD (77471) | | ROSENBURG | TX | Silber Pearlman | |
| 1/1/1968 | 3/31/1976 | GULF STATES PAPER MILL | 28270 HWY. 80 | | WEST DEMOPOLIS | AL | Baron & Budd | |
| 1/1/1957 | 3/31/1978 | GULF STATES UTILITIES | HIGHWAY 87 | | BRIDGE CITY | TX | Hissey | |
| 1/1/1961 | 3/31/1978 | GULF-CHEVRON-STANDARD OIL REFINERY & CHEMICAL PLANT | 1801 Gulfway Drive (77640) | | PORT ARTHUR | TX | Baron & Budd | |
| 1/1/1965 | 3/31/1967 | GULFPORT SHIPYARD | LAKE SHORE DRIVE | | PORT ARTHUR | TX | Baron & Budd | |
| 7/30/1965 | 10/31/1980 | H.G. TOLER & SONS LUMBER CO. | | | LEOLA | AR | | √ |
| 7/16/1968 | 10/31/1980 | H.K. PORTER CO., INC. | CONNORS STEEL DIV. | 15TH ST. ENTRANCE | HUNTINGTON | WV | | |
| 2/26/1976 | 10/31/1980 | H.L. BARBRERA FORWARDING CO. | MAIN ST. @ S.P. TRACKS | | EAGLE PASS | TX | | |
| 3/30/1971 | 10/31/1980 | H.R. CURRY CO. | 1023 MAIN ST. | | SHARPSBURG | PA | | |
| 9/3/1975 | 10/31/1980 | HANNA MINING CO., THE | BUTLER TACONITE | 200 COOLEY | NASHWAUK | MN | | |
| 11/13/1964 | 10/31/1980 | HANNA-ZEBRISKI & DARON | 6425 TIREMAN | | DETROIT | MI | | |
| 1/1/1956 | 3/31/1981 | HARNISCHFEGER PLANT | 4400 W NATIONAL | | MILWAUKEE | WI | Silber Pearlman | |
| 6/12/1974 | 10/31/1980 | HARNISHSEGER CORP. | HEAT TREATMENT DEPT. | 4400 W. NATIONAL | MILWAUKEE | WI | | |
| 7/28/1965 | 10/31/1980 | HARPUR COLLEGE | | | VESTAL | NY | | √ |
| 7/22/1971 | 10/31/1980 | HARRISON POWER STATION | UNIT # 1, # 2, # 3 | | HAYWOOD | WV | | |
| 1/1/1963 | 3/31/1976 | HENRY GRADY HOSPITAL | 107 HIRSH HILL | | ATLANTA | GA | Baron & Budd | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 12/27/1971 | 10/31/1980 | HERCULES, INC. | HIGHWAY 421 NORTH | ATTN: PLANT STOREROOM | WILMINGTON | NC | | |
| 1/14/1966 | 10/31/1980 | HERMAN WILSON LUMBER | BOILER ROOM | | LEOLA | AR | | |
| 1/1/1956 | 3/31/1977 | HERMANN HOSPITAL | 6411 FANNIN | | HOUSTON | TX | Baron & Budd | |
| 8/9/1971 | 10/31/1980 | HILLSBORO GLASS CO. | | | HILLSBORO | IL | | √ |
| 1/1/1961 | 3/31/1978 | HOECHST CELANESE CHEMICAL PLANT | Highway 77 South(78343) | | BISHOP | TX | Baron & Budd | |
| 8/14/1969 | 10/31/1980 | HOOSIER CITY MOTEL | 741 STRUM AVE. & U.S. 30 EAST | | NEW HAVEN | IN | | |
| 9/17/1974 | 10/31/1980 | HOSTETTER SUPPLY CO. | 40-60 HOLE'S MILL RD. | | YORK | PA | | |
| 10/15/1970 | 10/31/1980 | HOT SPRINGS ALUMINUM PROCESSORS, INC. | SHADY GROVE RD. | | HOT SPRINGS | AR | | |
| 3/1/1971 | 10/31/1980 | HOT SPRINGS ALUMINUM PROCESSORS, INC. | P.O. BOX 1120 | | HOT SPRINGS | AR | | |
| 9/3/1970 | 10/31/1980 | HOT SPRINGS SHEET METAL CO. | 1122 MALVERN RD. | | HOT SPRINGS | AR | | |
| 1/1/1956 | 3/31/1981 | HOUSTON DOCKS | 111 EAST LOOP NORTH (77029) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1965 | 3/31/1981 | HOUSTON SHIPYARD | HOUSTON SHIP CHANNEL | | HOUSTON | TX | Hissey | |
| 1/1/1956 | 3/31/1981 | HOWMET ALUMINUM PLANT | 1200 EAST WASHINGTON (75087) | | ROCKWALL | TX | Silber Pearlman | |
| 1/11/1972 | 10/31/1980 | HOWMET CORP. | MANHEIM PIKE | | LANCASTER | PA | | |
| 1/1/1956 | 3/31/1981 | HUGHES TOOL PLANT | 2001 RANKIN RD. (77073) | | HOUSTON | TX | Baron & Budd, Silber Pearlman | |
| 1/1/1961 | 3/31/1978 | HUGHES-CHRISTENSEN-BAKER OILFIELDS TOOL PLANT | 2001 RANKIN RD. | | HOUSTON | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | HUMBLE OIL REFINERY | 2800 DECKER DRIVE (77522) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | HUMBLE OIL REFINERY | 4500 BAYWAY DRIVE (77522) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1964 | 3/31/1965 | HUMBLE/EXXON/ENJAY/RHODIA PLASTICS & RUBBER PLANT | 4500 Bayway Drive (77522) | | BAYTOWN | TX | Baron & Budd | |
| 6/4/1973 | 10/31/1980 | HUNT WESSON FOODS, INC. | EAGLE ST. & GROVE ST. | | BRIDGETON | NJ | | |
| 6/6/1975 | 10/31/1980 | HUNTER CORP. | 3027 INDIANAPOLIS BLVD. | | WHITING | IN | | |
| 1/1/1963 | 3/31/1964 | HUNTERS POINT NAVAL SHIPYARD | Crisp Road  (94124) | | SAN FRANCISCO | CA | Baron & Budd | |
| 1/1/1956 | 3/31/1977 | HYATT REGENCY HOTEL | 1200 Lousiana St 77002 | | HOUSTON | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | HYDRIL OILFIELD EQUIPMENT & PIPE FABRICATING PLANT | 2800 DECKER DRIVE (77522) | | BAYTOWN | TX | Silber Pearlman | |
| 1/1/1960 | 3/31/1962 | HYDRO CARBON PROSUCTS | HIGHWAY 82 | | PORT ARTHUR | TX | Hissey | |
| 1/1/1970 | 3/31/1981 | IBM BUILDING JOB SITE | 11501 BURNET ROAD (78758) | | AUSTIN | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | ICI AMERICAS CHEMICAL PLANT | 333 MARSHALL STREET (75670) | | MARSHALL | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1964 | IDECO PLANT | 1795 LAUREL | | BEAUMONT | TX | Hissey | |
| 3/22/1971 | 10/31/1980 | INCINO REFRACTORIES CO. | 13929 EUCLID AVE. | | EAST CLEVELAND | OH | | |
| 1/1/1961 | 3/31/1962 | INCO Alloys | | | Huntington | WV | Goldberg Persky | √ |
| 6/8/1972 | 10/31/1980 | INDEPENDENT LINEN CO. | | | LITTLE ROCK | AR | | √ |
| 6/28/1967 | 10/31/1980 | INDIANA & MICHIGAN ELECTRIC | TANNERS CREEK GENERAL PLANT | | LAWRENCEBURG | IN | | |
| 3/20/1964 | 10/31/1980 | INDIANA SOLIDERS HOME POWER HOUSE | | | LAFAYETTE | IN | | √ |
| 2/6/1976 | 10/31/1980 | INDIANA-KENTUCKY ELECTRIC | CLIFTY CREEK STATION | P.O.BOX 97 | MADISON | IN | | |
| 4/23/1976 | 10/31/1980 | INDUSTRIAL GUNNITE, INC. | COMMERCIAL SITE | | LULING | TX | | √ |
| 1/1/1963 | 3/31/1978 | INGALLS SHIPYARD | 1000 Access Rd. (39568) | | PASCAGOULA | MS | Baron & Budd | |
| 1/1/1965 | 3/31/1981 | INGERSOLL-RAND FABRICATING SHOP | 2210 MCALLISTER ROAD (77092) | | HOUSTON | TX | Silber Pearlman | |
| 9/11/1973 | 10/31/1980 | INLAND STEEL CO. | PLANT #2, #3 OPEN HEARTH | | EAST CHICAGO | IN | | |
| 8/16/1971 | 10/31/1980 | INLAND STEEL CO. | HAMMOND WHSE or NO ADDRESS | | EAST CHICAGO | IN | | √ |
| 3/23/1973 | 10/31/1980 | INSULATION & REFRACTORIES SERVICES, INC. | 7859 HIGHWAY #70 | | MEMPHIS | TN | | |
| 5/29/1974 | 10/31/1980 | INSULATION & REFRACTORIES SERVICES, INC. | P.O. BOX 28691 | | MEMPHIS | TN | | |
| 6/24/1976 | 10/31/1980 | INSULATION & REFRACTORIES SERVICES, INC. | 1041 GALLOWAY | | MEMPHIS | TN | | |
| 12/8/1966 | 10/31/1980 | INTERNATIONAL BUSINESS MACHINES CORP. | ATTN: H. HOPKINS | | ENDICOTT | NY | | √ |
| 6/14/1977 | 10/31/1980 | INTERNATIONAL HARVESTER | 1401 PERKINS AVE. | | WAUKESHA | WI | | |
| 4/4/1967 | 10/31/1980 | INTERNATIONAL HARVESTER CORP. | TORRENCE AVE. 112TH ST. GATE | | CHICAGO | IL | | |
| 10/14/1970 | 10/31/1980 | INTERNATIONAL NICKEL CO., THE | | | HUNTINGTON | WV | | √ |
| 6/11/1974 | 10/31/1980 | INTERNATIONAL PAPER CO. | LAKE SHORE RD. | | TICONDEROGA | NY | | |
| 6/3/1975 | 10/31/1980 | INTERNATIONAL PAPER CO. | SOUTHERN KRAFT DIV. | P.O.BOX 835 | SPRINGHILL | LA | | |
| 6/11/1975 | 10/31/1980 | INTERNATIONAL PAPER CO. | SOUTHERN KRAFT DIV. | | GEORGETOWN | SC | | |
| 5/7/1976 | 10/31/1980 | INTERNATIONAL PAPER CO. | LOUISIANA MILL STORE ROOM | 705 COLLIER ST. | BASTROP | LA | | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 6/18/1976 | 10/31/1980 | INTERNATIONAL PAPER CO. | TICONDERGA MILL #10 | | TICONDEROGA | NY | | |
| 8/26/1976 | 10/31/1980 | INTERNATIONAL PAPER CO. | | | JAY | ME | | √ |
| 5/7/1975 | 10/31/1980 | INTERNATIONAL PAPER CO. | | | BASTROP | LA | | √ |
| 5/23/1975 | 10/31/1980 | INTERNATIONAL PAPER CO. | P.O. BOX 7069; P.O. BOX 73349 | | PINE BLUFF | AR | | |
| 7/18/1975 | 10/31/1980 | INTERNATIONAL PAPER CO. | P.O. BOX 311 | | NATCHEZ | MS | | |
| 1/1/1963 | 3/31/1978 | INTERNATIONAL PAPER MILL | 900 PAPER MILL RD. | | MOBILE | AL | Baron & Budd | |
| 4/2/1971 | 10/31/1980 | IOLA POWER HOUSE | E. HENRIETTA RD. | | ROCHESTER | NY | | |
| 5/16/1974 | 10/31/1980 | IOWA PUBLIC SERVICE CO. | NEAL STATION, UNIT # 3, # 4 | EBASCO SERVICES, INC. | SERGEANT BLUFF | IA | | |
| 6/11/1959 | 10/31/1980 | IRON CITY INDUSTRIAL CLEANING CORP. | 6640 FRANKSTOWN AVE. | | PITTSBURGH | PA | | |
| 11/4/1968 | 10/31/1980 | IRONTON METROPOLITAN HOUSING AUTHORITY | N. FIFTH ST. | | IRONTON | OH | | |
| 12/16/1971 | 10/31/1980 | ISLAND CREEK COAL CO. | PEVLER #1 MINE | | INEZ | KY | | |
| 1/1/1961 | 3/31/1962 | J&L Steel | | | Aliquippa | PA | Goldberg Persky | √ |
| 11/20/1959 | 10/31/1980 | J.A. KOHLHEPP SONS | 650 DU BOIS ST. | | DU BOIS | PA | | |
| 2/22/1977 | 10/31/1980 | J.F. HARRISON, INC. | 5050 N. PORT WASHINGTON RD. | P.O. BOX 3711 A | MILWAUKEE | WI | | |
| 1/28/1965 | 10/31/1980 | JIM JACKSON, CONTRACTOR | 1601 REDSAMEN PARK RD. | | LITTLE ROCK | AR | | |
| 1/1/1956 | 3/31/1981 | JM HUBER CARBON BLACK PLANT | 9300 NEEDLEPOINT ROAD (77521) | | BAYTOWN | TX | Silber Pearlman | |
| 6/3/1969 | 10/31/1980 | JOHN GRAVES MEMORIAL HOSPITAL | | | GEORGETOWN | KY | | √ |
| 4/27/1970 | 10/31/1980 | JOHN J. MORONEY & CO. | 2537 W. LEMOYNE ST. | | MELROSE PARK | IL | | |
| 6/29/1971 | 10/31/1980 | JOHN WHITSETT CO. | 6864 SUMMER AVE. | | MEMPHIS | TN | | |
| 1/1/1963 | 3/31/1976 | JOHNS-MANVILLE PIPE PLANT | West Hwy 75 (75026) | | DENISON | TX | Baron & Budd | |
| 7/30/1974 | 10/31/1980 | JONES & LAUGHLIN STEEL | PITTSBURGH WORKS, FOUNDRY BRICK SHED | 2900 CARSON ST. | PITTSURGH | PA | | |
| 12/11/1962 | 10/31/1980 | JOSEPH TOYE CO. | 315 BANK ST. | | BRIDGETON | NJ | | |
| 1/1/1956 | 3/31/1981 | KAISER ALUMINUM PLANT | 4111 S 74TH EAST AVENUE (74145) | | TULSA | OK | Silber Pearlman | |
| 11/4/1971 | 10/31/1980 | KAISER STEEL CORP. | MASONRY DEPT. | | KAISER | CA | | √ |
| 5/19/1965 | 10/31/1980 | KEIL CHARCOAL CO., INC. | RETORT PLANT | | DOLGEVILLE | NY | | |
| 1/1/1956 | 10/31/1980 | KELLY AIR FORCE BASE | Building 2000 Kelly Air Force Base Rd.  (78201) | | SAN ANTONIO | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1981 | KELLY SPRINGFIELD PLANT | 13701 STATE HIGHWAY 31 WEST | | TYLER | TX | Hissey, Baron & Budd | |
| 1/1/1973 | 3/31/1977 | KELSO SHIPYARD | 6200 HARBORSIDE DRIVE | | GALVESTON | TX | Hissey | |
| 4/23/1964 | 10/31/1980 | KENCROFT MALLEABLE CO., INC. | KENCROFT WAREHOUSE DIV. | 373 HERTEL AV. | BUFFALO | NY | | |
| 4/6/1972 | 10/31/1980 | KENTUCKY POWER COMPANY | BIG SANDY PLANT, UNIT #2 | OPERATING DEPT. | LOUISA | KY | | |
| 1/5/1976 | 10/31/1980 | KERR GLASS MFG CORP. | TANK #1 | | DUNKIRK | IN | | |
| 6/14/1971 | 10/31/1980 | KESSELI & MORSE CO. | 242 CANTERBURY ST. | | WORCESTER | MA | | |
| 2/28/1972 | 10/31/1980 | KESSELI & MORSE CO. | YARD 2 SIDING | | WORCESTER | MA | | |
| 1/1/1967 | 3/31/1976 | KEYSTONE STEEL & WIRE | 7000 S. ADAM ST. (61641 | | PEORIA | IL | Wise & Julian | |
| 6/5/1970 | 10/31/1980 | KIBBE'S SPECIALTY CONTRACTORS | 359 E. SOUTHERN AVE. | | S. WILLIAMSPORT | PA | | |
| 1/1/1967 | 3/31/1970 | KILGORE CERAMICS | US HIGHWAY 259 | | KILGORE | TX | Hissey | |
| 1/1/1956 | 3/31/1981 | KIRBY LUMBER MILL | 715 FM 92 (77656) | | SILSBEE | TX | Silber Pearlman | |
| 3/18/1964 | 10/31/1980 | KRANTZ EXPRESS & WAREHOUSE | THEIR SIDING, 31 FRANKLIN ST. | | EAST HARTFORD | CT | | |
| 7/2/1974 | 10/31/1980 | L.S. CARTAGE CO. | 6540 N. INDUSTRIAL RD. | | MILWAUKEE | WI | | |
| 1/1/1961 | 3/31/1971 | LA GLORIA GAS PLANT | 1702 E. Commerce (75710) | | TYLER | TX | Baron & Budd | |
| 1/1/1966 | 10/31/1980 | LACKLAND AIR FORCE BASE | 1050 Lackland Afb  (78236) | | SAN ANTONIO | TX | Baron & Budd | |
| 1/1/1960 | 3/31/1980 | LACLEDE STEEL | 5 CUT (62084) | | ALTON | IL | Wise & Julian | |
| 7/12/1971 | 10/31/1980 | LATROBE STEEL | | | LATROBE | PA | | √ |
| 1/1/1966 | 10/31/1980 | LeTOURNEAU PLANT | 2401 SOUTH HIGH ST. | | LONGVIEW | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1972 | LEVINGSTON SHIPBUILDING CO. | 91 West Front Street  (77630) | | ORANGE | TX | Baron & Budd | |
| 8/13/1959 | 10/31/1980 | LEWISTOWN SMELTING & REFINING CO. | | | LEWISTOWN | PA | | √ |
| 1/23/1969 | 10/31/1980 | LIBERTY SCHOOL | | | WEIRTON | WV | | √ |
| 8/10/1973 | 10/31/1980 | LINDELL DROP FORGE | SOUTH LOGAN BLVD. & NYC RR | | LANSING | MI | | |
| 2/5/1963 | 10/31/1980 | LION OIL | EL DORADO REFINERY | | EL DORADO | AR | | |
| 1/9/1962 | 10/31/1980 | LOCHER BRICK | | | GLASGOW | VA | | √ |

Final List of Sites That Received
NARCO Asbestos-Containing Products

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1967 | 3/31/1969 | LOCKHEED SHIPYARD | 2929 16th Ave West Harbor Island (98144) | | SEATTLE | WA | Baron & Budd | |
| 1/1/1961 | 3/31/1978 | LONE STAR STEEL | 1 SOUTH HWY. 259 | | LONE STAR | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | LONE STAR STEEL MILL | 124 COUNTY ROAD 2303 | | LONE STAR | TX | Hissey | |
| 6/17/1975 | 10/31/1980 | LOUISVILLE FIRE BRICK WORKS | LOUISVILLE INDUSTRIAL CT. | 7665 NATIONAL TURNPIKE | LOUISVILLE | KY | | |
| 1/1/1975 | 3/31/1976 | LOWRY STEEL MILL | | | TEXAS CITY | TX | Hissey | √ |
| 1/1/1961 | 3/31/1976 | LTV a/k/a CHANCE VOUGHT AIRGRAFT MANUFACTORING PLANT | 1601 WEST MARSHALL DR. | | GRAND PRAIRIE | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | LTV Steel (fka J&L / Republic) - Hazelwood | | | PITTSBURGH | PA | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | LTV Steel (fka J&L Steel / Republic Steel) | | | YOUNGSTOWN | OH | Goldberg Persky | √ |
| 1/1/1965 | 3/31/1966 | LTV Steel (fka J&L Steel / Republic Steel) | | | Canton | OH | Goldberg Persky | √ |
| 1/1/1965 | 3/31/1966 | LTV Steel (fka J&L Steel / Republic Steel) | | | MASSILLON | OH | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | LTV Steel (fka J&L Steel) | | | Aliquippa | PA | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | LTV Steel (fka J&L Steel) - South Side Plant | | | PITTSBURGH | PA | Goldberg Persky | √ |
| 8/24/1977 | 10/31/1980 | LUBBOCK POWER & LIGHT SYSTEM | HOLLY AVE. STATION | | LUBBOCK | TX | | |
| 1/1/1957 | 3/31/1981 | LUFKIN FOUNDRY/INDUSTRY & MACHINE COMPANY | 610 SOUTH RAGUET ST. (75904) | | LUFKIN | TX | Silber Pearlman, Baron & Budd | |
| 1/1/1956 | 3/31/1981 | LUFKIN INDUSTRIES PLANT | 407 KILN STREET (75904) | | LUFKIN | TX | Silber Pearlman | |
| 2/13/1959 | 10/31/1980 | LUMMUS CO. | | | NEW YORK | NY | | |
| 7/18/1967 | 10/31/1980 | LUMMUS CO. | | | NEWARK | NJ | | √ |
| 1/7/1970 | 10/31/1980 | M.J. KELLY CO. | 234 WYTHE AVE. | | BROOKLYN | NY | | √ |
| 10/15/1971 | 10/31/1980 | MACKEY REFRACTORY SALES & SERVICE | 206 ROSS PLACE | P.O. BOX 724 | WESTFIELD | NJ | | |
| 12/3/1971 | 10/31/1980 | MACKEY REFRACTORY SALES & SERVICE | 463 E. FIRST AVE. | | ROSELLE | NJ | | |
| 1/1/1963 | 3/31/1972 | MAGNOLIA-SOCONY-MOBILE- BRITISH (BP) OIL REFINERY & CHEMICAL PLANT | 11432 US Highway 90, (77713) | | BEAUMONT | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Malleable Iron - General Motors Saginaw Foundry | | | Saginaw | MI | Goldberg Persky | √ |
| 2/4/1969 | 10/31/1980 | MANCHESTER & HUDSON CO. | THEIR SIDING | | CRANSTON | RI | | |
| 1/1/1968 | 3/31/1978 | MARATHON LE TOURNEAU | 2400 McArthur Drive  (75602) | | LONGVIEW | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1981 | MARATHON LE TOURNEAU STEEL MILL | 2401 SOUTH HIGH ST. | | LONGVIEW | TX | Hissey | |
| 1/1/1964 | 3/31/1981 | MARATHON MORCO PLANT | FT OF 10 STREET (77590) | | TEXAS CITY | TX | Silber Pearlman | |
| 1/1/1965 | 3/31/1981 | MARATHON MORCO PLANT | 4401 PARK AVE (77539) | | DICKINSON | TX | Silber Pearlman | |
| 1/1/1961 | 3/31/1962 | Marathon Oil Company | | | Detriot | MI | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1981 | MARATHON OIL REFINERY | BOX 227 (77456) | | MARKHAM | TX | Silber Pearlman | |
| 3/7/1972 | 10/31/1980 | MARATHON WAREHOUSE | 8233 WEST WARREN | | DEARBORN | MI | | |
| 5/3/1971 | 10/31/1980 | MARTHENS CO., THE | 204 38TH ST. | | MOLINE | IL | | |
| 1/1/1968 | 3/31/1972 | MARTINAC BOATBLDG. SHIPYARD | 401 E. 15TH | | TACOMA | WA | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | MAXWELL HOUSE COFFEE PLANT | 3900 HARRISBURG BLVD (77003) | | HOUSTON | TX | Silber Pearlman, Baron & Budd | |
| 1/1/1969 | 3/31/1970 | MAY ALUMINUM PLANT | 902 GLADYS STREET (77437) | | EL CAMPO | TX | Silber Pearlman | |
| 3/8/1976 | 10/31/1980 | MCDONALD REFRACTORIES INC. | | | NORTH SCITUATE | RI | | √ |
| 1/1/1966 | 3/31/1978 | MCGUIRE NUCLEAR PLANT | 12700 Hagers Ferry Road  (28078) | | HUNTERSVILLE | NC | Baron & Budd | |
| 11/12/1963 | 10/31/1980 | MCLOUTH STEEL CORP. | | | TRENTON | MI | | √ |
| 5/24/1966 | 10/31/1980 | MCLOUTH STEEL CORP. | OXYGEN PROCESS DEPT. | | TRENTON | MI | | |
| 1/1/1967 | 3/31/1969 | MCMILLIAN PAPER MILL | 36737 AL Highway 10 (36769) | | PINE HILL | AL | Baron & Budd | |
| 1/17/1972 | 10/31/1980 | MCSWEENEY'S MILL & MINE SERVICE | SOLIDA RD. | | SOUTH POINT | OH | | |
| 2/7/1973 | 10/31/1980 | MESTA MACHINE CO. | | | HOMESTEAD | PA | | √ |
| 1/1/1956 | 3/31/1977 | METHODIST HOSPITAL | 6501 Fannin St. (77030) | | HOUSTON | TX | Baron & Budd | |
| 10/7/1963 | 10/31/1980 | MET-L-AID, INC. | 3478 HENDRICKS | | DETROIT | MI | | |
| 6/15/1964 | 10/31/1980 | MICHIGAN STATE UNIVERSITY | | | EAST LANSING | MI | | √ |
| 5/16/1977 | 10/31/1980 | MIDLAND ROSS CORP. | SURFACE COMB. DIV. | | TOLEDO | OH | | |
| 9/9/1960 | 10/31/1980 | MILAN BOX CO. | | | MILAN | TN | | √ |
| 9/21/1965 | 10/31/1980 | MILSTEAD BOILER & ENGINE CO. | 205 FLORIDA AVE. | | LYNCHBURG | VA | | |
| 11/25/1966 | 10/31/1980 | MILTON MANUFACTURING | SUBSIDIARY OF CECO CORP. | | MILTON | PA | | |
| 2/21/1973 | 10/31/1980 | MISSOURI METAL SHAPING CO. | 9970 PAGE BLVD. | | ST. LOUIS | MO | | |
| 5/7/1974 | 10/31/1980 | MISSOURI PUBLIC SERVICE | | | SIBLEY | MO | | √ |

Final List of Sites That Received
NARCO Asbestos-Containing Products

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1956 | 3/31/1957 | MOBIL CHEMICAL PLANT | HIGHWAY 90 | | BEAUMONT | TX | Hissey | |
| 4/26/1963 | 10/31/1980 | MOBIL OIL CO. | 503 ELK ST. | | BUFFALO | NY | | |
| 12/3/1963 | 10/31/1980 | MOBIL OIL CO. | BUFFALO REFINERY | 503 ELK ST., GATE #7 | BUFFALO | NY | | |
| 1/1/1957 | 3/31/1981 | MOBIL OIL REFINERY | 1795 BURT (77707) | | BEAUMONT | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1965 | MOBILE SHIP REPAIR | 1920 BAY BRIDGE ROAD CUT | | MOBILE | AL | Baron & Budd | |
| 4/5/1966 | 10/31/1980 | MONONGAHELA POWER | D.F. SUMMERS | WILLOW ISLAND POWER STATION | WILLOW ISLAND | WV | | |
| 1/1/1965 | 3/31/1978 | MONSANTA/SOLUTIA CHEMICAL PLANT | FM 2917 (77577) | | ALVIN | TX | Baron & Budd | |
| 3/23/1962 | 10/31/1980 | MONSANTO CHEMICAL CO. | BUILDING #17 RECEIVING DEPT. | | EVERETT | MA | | |
| 6/21/1977 | 10/31/1980 | MONSANTO CHEMICAL CO. | | | LULING | LA | | √ |
| 1/1/1956 | 3/31/1981 | MONSANTO CHEMICAL PLANT | FM RD 2917 (77512) | | ALVIN | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | MONSANTO CHEMICAL PLANT | | | TEXAS CITY | TX | Silber Pearlman | √ |
| 3/8/1971 | 10/31/1980 | MOORE DROP FORGING | PLANT NO. 1, BIRNIE AVE. | | SPRINGFIELD | MA | | |
| 5/27/1976 | 10/31/1980 | MORGAN CONSTRUCTION CO. | NO ADDRESS | | | | | √ |
| 1/1/1961 | 3/31/1978 | MOTOROLA PLANT | 6501 WILLIAM CANNON DR. W. (78735) | | AUSTIN | TX | Baron & Budd | |
| 5/10/1976 | 10/31/1980 | N.J. MATTSON CO. | | | CHICAGO | IL | | √ |
| 1/1/1966 | 3/31/1976 | NABISCO COOKIE PLANT | 1400 Murphy Avenue Southwest  (30310) | | ATLANTA | GA | Baron & Budd | |
| 1/1/1961 | 3/31/1981 | NALCO CHEMICAL PLANT | 7701 HIGHWAY 90A (77487) | | SUGARLAND | TX | Silber Pearlman | |
| 1/1/1967 | 3/31/1969 | NALCO CHEMICAL PLANT | 2322 CR 229 (77541) | | FREEPORT | TX | Silber Pearlman | |
| 1/1/1962 | 3/31/1981 | NASA SPACE CENTER | 2101 NASA PARKWAY (77058) | | HOUSTON | TX | Baron & Budd, Silber Pearlman | |
| 1/1/1968 | 3/31/1972 | NASSCO SHIPYARD | 2798 Harbor Drive (92113) | | SAN DIEGO | CA | Baron & Budd | |
| 10/15/1962 | 10/31/1980 | NATIONAL FORGE CO. | | | IRVINETON | PA | | √ |
| 1/1/1963 | 3/31/1976 | NATIONAL GYPSUM PLANT | Interstate 10 East (36630) | | MOBILE | AL | Baron & Budd | |
| 1/23/1969 | 10/31/1980 | NATIONAL INCINERATOR CORP. | | | WEIRTON | WV | | |
| 1/1/1956 | 3/31/1981 | NATIONAL TANK FABRICATING SHOP | 10910 E 55TH PLACE (74146) | | TULSA | OK | Silber Pearlman | |
| 11/22/1972 | 10/31/1980 | NATIONAL ZINC CO. | SMELTER DIV. | | BARTLESVILLE | OK | | |
| 3/5/1975 | 10/31/1980 | NEVADA POWER CO. | REID GARDNER UNIT #3 | | MOAPA | NV | | |
| 10/1/1963 | 10/31/1980 | NEW BEDFORD DEFENSE PRODUCTS | KING ST. | | NEW BEDFORD | MA | | |
| 1/1/1964 | 3/31/1976 | NEW ORLEANS SHIPYARD | 8400 RIVER RD. | | WAGGAMAN | LA | Baron & Budd | |
| 1/1/1961 | 3/31/1967 | NEWPORT NEWS SHIPYARD | 39TH & WARWICK BLVD. | | NEWPORT NEWS | VA | Baron & Budd | |
| 6/9/1978 | 10/31/1980 | NEWTON FALLS PAPER CO. | | | NEWTON FALLS | NY | | √ |
| 5/9/1977 | 10/31/1980 | NIAGARA MOHAWK POWER CORP. | 161 WEST SCHUYLER ST. | | OSWEGO | NY | | |
| 10/23/1973 | 10/31/1980 | NIAGARA POWER CO. | | | OSWEGO | NY | | √ |
| 1/1/1956 | 3/31/1981 | NIBCO FOUNDRY | 723 S FREDONIA STREET (75961) | | NACADOCHES | TX | Hissey, Silber Pearlman | |
| 3/31/1971 | 10/31/1980 | NICHOLS ENGINEERING & RESEARCH CORP. | | | NEW ORLEANS & ALGIERS | LA | | √ |
| 1/4/1977 | 10/31/1980 | NICHOLS ENGINEERING & RESEARCH CORP. | | | INDIANAPOLIS | IN | | √ |
| 9/27/1962 | 10/31/1980 | NOAH M. SIMMONS CO. | 5341 ENGLISH AVE. | | INDIANAPOLIS | IN | | |
| 10/26/1973 | 10/31/1980 | NOCK FIREBRICK CO., THE | 1243 E. 55TH ST. | | CLEVELAND | OH | | |
| 7/24/1968 | 10/31/1980 | NORTH AMERICAN ROCKWELL CORP. | SPRING DIVISION | FURNACE STREET | NEW CASTLE | PA | | |
| 3/23/1978 | 10/31/1980 | NORTHERN INDIANA PUBLIC SERVICE CO. | ROLLIN M. SCHAHFER GENERATING STATION | STATE RD. 49 @ COUNTY RS. 1400N | WHEATFIELD | IN | | |
| 10/28/1965 | 10/31/1980 | NORTHWESTERN STEEL & WIRE CO. | PLANT #2 | | STERLING | IL | | |
| 1/1/1956 | 3/31/1981 | NUECES BAY POWER PLANT | 539 S CARANCAHUA (78401) | | CORPUS CHRISTI | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | OCCIDENTAL CHEMICAL PLANT | 1000 TIDAL ROAD (77536) | | DEER PARK | TX | Silber Pearlman | |
| 12/12/1966 | 10/31/1980 | OHIO EDISON CO. | TORONTO PLANT | | TORONTO | OH | | |
| 10/20/1965 | 10/31/1980 | OHIO EDISON CO. | 147 BELMONT AVE. | NILES PLANT | NILES | OH | | |
| 12/1/1961 | 10/31/1980 | OHIO EDISON CO. | W.H. SAMMIS PLANT | | STRATTON | OH | | |
| 6/30/1966 | 10/31/1980 | OHIO POWER CO. | MUSKINGUM RIVER STATION | | BEVERLY | OH | | |
| 6/22/1965 | 10/31/1980 | OHIO POWER CO. | KAMMER PLANT | | CRESAP | WV | | |
| 10/25/1971 | 10/31/1980 | OHIO POWER CO. | MITCHELL PLANT | | CRESAP | WV | | |
| 3/27/1969 | 10/31/1980 | OHIO POWER CO. | | | PHILO | OH | | √ |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 11/21/1974 | 10/31/1980 | OHIO VALLEY ELECTRIC | KYGER CREEK PLANT | GALLIA COUNTY | CHESHIRE | OH | | |
| 1/1/1961 | 3/31/1972 | OLIN CHEMICAL PLANT | 960 S 1-10 (70602) | | LAKE CHARLES | LA | Silber Pearlman | |
| 1/1/1961 | 3/31/1962 | Olin Matheson/Ormet/Conalco | | | Hannibal | OH | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1978 | OLIN MATHIESON | 900A INTERSTATE 10 WEST | | LAKE CHARLES | LA | Baron & Budd | |
| 8/10/1972 | 10/31/1980 | OLIN MATHISON CHEMICAL | ACID PLANT | | LITTLE ROCK | AR | | |
| 3/22/1975 | 10/31/1980 | OLINKRAFT INC. | WEST MONROE MILL | | WEST MONROE | LA | | |
| 11/18/1975 | 10/31/1980 | OLIVER REFRACTORY, INC. | 821 POPLAR ST. | | ST. ALBANS | WV | | |
| 2/15/1965 | 10/31/1980 | OLIVETTE-UNDERWOOD CORP. | 531 CAPITAL AVE. | | HARTFORD | CT | | |
| 7/10/1969 | 10/31/1980 | OLSON-LAWYER LUMBER CO. | | | MEDFORD | OR | | √ |
| 6/22/1966 | 10/31/1980 | O'MAC CO. | 145 W. OGDEN ST. | | CAPRON | IL | | |
| 1/1/1965 | 3/31/1976 | OMNI SPORTS ARENA | 100 TECHWOOD DR., NW | | ANTLANTA | GA | Baron & Budd | |
| 1/1/1965 | 1/29/1981 | ONE MAIN PLACE | 2050 NORTH STEMMONS FWY. | | DALLAS | TX | Baron & Budd | |
| 5/28/1964 | 10/31/1980 | ONEIDA COUNTY BOILER WORKS | 611 MORTIMER ST. | | UTICA | NY | | |
| 4/20/1965 | 10/31/1980 | ORANGE & ROCKLAND UTILITIES | BOILER #1 LOVETT STATION | | TOMKINS COVE | NY | | |
| 1/1/1965 | 3/31/1976 | OREGON STEEL FOUNDRY | 9040 North Burgard Way (97203) | | PORTLAND | OR | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Ormet | | | Hannibal | OH | Goldberg Persky | √ |
| 12/28/1965 | 10/31/1980 | OWENS ILLINOIS FIBERGLASS CORP. | | | WAXAHACHIE | TX | | √ |
| 9/26/1975 | 10/31/1980 | OWENSBORO MUNICIPAL UTILITIES | 4301 HARPENSBURG RD. | | OWENSBORO | KY | | |
| 4/15/1965 | 10/31/1980 | OWENS-CORNING FIBERGLASS CORP. | | | AIKEN | SC | | √ |
| 8/23/1961 | 10/31/1980 | OWENS-ILLINOIS INC. | | | BIG ISLAND | VA | | √ |
| 1/1/1956 | 3/31/1957 | PACIFIC NORTHWEST PIPE LINE | RANGELY COMPRESSOR STATION | | RANGELY | CO | Hissey | |
| 1/1/1956 | 3/31/1957 | PAN AMERICAN OIL REFINERY | 2401 FIFTH AVENUE SOUTH | | TEXAS CITY | TX | Hissey | |
| 1/1/1963 | 3/31/1978 | PANTEX REFINERY | FM 2373 RD. & HWY. 60 EAST | | AMARILLO | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1976 | PARKLAND HOSPITAL | 5201 HARRY HINES BLVD. | | DALLAS | TX | Baron & Budd | |
| 9/30/1966 | 10/31/1980 | PENNSYLVANIA ELECTRIC | SAXTON POWER PLANT | | SAXTON | PA | | |
| 11/29/1961 | 10/31/1980 | PENNSYLVANIA ELECTRIC | ATTN: F.E. WOOD | POWER HOUSE | SEWARD | PA | | |
| 5/9/1975 | 10/31/1980 | PENNSYLVANIA ELECTRIC CO. | HOMER CITY POWER PLANT | | HOMER CITY | PA | | |
| 12/3/1970 | 10/31/1980 | PENNSYLVANIA POWER & LIGHT | MONTOUR STEAM ELECTRIC STATION | UNIT # 2 EBASCO SERVICES, INC. AGENT | STRAWBERRY RIDGE | PA | | |
| 1/31/1973 | 10/31/1980 | PENNSYLVANIA POWER & LIGHT | | | SUNBURY | PA | | √ |
| 6/17/1970 | 10/31/1980 | PENNSYLVANIA POWER & LIGHT | MONTOUR STEAM ELECTRIC STATION | UNIT # 1 EBASCO SERVICES, INC. AGENT | WASHINGTONVILLE | PA | | |
| 10/18/1977 | 10/31/1980 | PENNSYLVANIA POWER CO. | CONSTRUCTION DEPT., FIELD OFFICE | BRUCE MANSFIELD PLANT, UNIT #3 | SHIPPINGPORT | PA | | |
| 1/1/1956 | 3/31/1957 | PENNSYLVANIA SHIPYARD | 850 NORTH PINE | | BEAUMONT | TX | Hissey | |
| 6/2/1972 | 10/31/1980 | PERMANENT CASTINGS | | | HOT SPRINGS | AR | | √ |
| 3/26/1970 | 10/31/1980 | PETER COOPER INDUSTRIES | | | TONAWANDA | NY | | √ |
| 1/1/1956 | 3/31/1981 | PETRO-TEX CHEMICAL PLANT | 8600 PARK PLACE BLVD (77017) | | HOUSTON | TX | Silber Pearlman, Baron & Budd | |
| 8/19/1965 | 10/31/1980 | PFAUDLER CO., THE | 1000 WEST AVE. | #11 FURNACE | ROCHESTER | NY | | |
| 5/26/1965 | 10/31/1980 | PFAULDER PERMUTIT CORP. | 1000 WEST AVE. | | ROCHESTER | NY | | |
| 6/15/1972 | 10/31/1980 | PFIZER INC. | | | GIBSONBURG | OH | | √ |
| 1/1/1958 | 3/31/1981 | PHELPS DODGE COPPER REFINERY & ROD MILL | 6999 N LOOP DRIVE (79915) | | EL PASO | TX | Silber Pearlman, Baron & Budd | |
| 11/10/1967 | 10/31/1980 | PHILADELPHIA ELECTRIC CO. | DELAWARE & LEWIS ST. | | PHILADELPHIA | PA | | |
| 1/1/1959 | 3/31/1981 | PHILIP CAREY MANUFACTURING PLANT | 1400 N POAST OAK ROAD (77055) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | PHILIPS 66 OIL REFINERY | 1000 N FARM ROAD (77463) | | OLD OCEAN | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1976 | PHILLIPS "66" OIL REFINERY | 200 Jefferson Rd (77506) | | PASADENA | TX | Baron & Budd | |
| 1/1/1980 | 3/31/1981 | PHILLIPS 66 REFINERY | HIGHWAY 524 | | SWEENY | TX | Hissey | |
| 1/1/1956 | 3/31/1981 | PHILLIPS CHEMICAL PLANT | 1400 JEFFERSON ROAD (77501) | | PASADENA | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1978 | PHILLIPS OIL REFINERY | 300 W 6th St (79007) | | BORGER | TX | Baron & Budd | |
| 6/12/1972 | 10/31/1980 | PHILLIPS PETROLEUM CO. | DRAWER H | ATTN: A.R. MCKNIGHT | SNACKOVER | AR | | |
| 1/1/1956 | 10/31/1980 | PHILLIPS REFINERY | 1400 JEFFERSON ROAD (77501) | | PASADENA | TX | Silber Pearlman | |
| 12/2/1969 | 10/31/1980 | PIERCE GLASS CO., THE | | | PORT ALLEGANY | PA | | √ |

Final List of Sites That Received
NARCO Asbestos-Containing Products

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1970 | 3/31/1977 | PITTSBURGH PLATE AND GLASS AKA P.P.G. CHEMICAL PLANT | 1300 PPG Drive  (70602) | | LAKE CHARLES | LA | Baron & Budd | |
| 7/25/1977 | 10/31/1980 | PLEASANTS POWER STATION | UNIT #1 | | WILLOW ISLAND | WV | | |
| 9/28/1976 | 10/31/1980 | PONCA CITY POWER STATION | STEAM UNIT #2, MUNICIPAL SERVICE CENTER | 1400 UNION ST. | PONCA CITY | OK | | |
| 1/1/1964 | 3/31/1967 | PONTIAC REFINERY | 3400 Lawrence Dr. (78408) | | CORPUS CHRISTI | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | PORT HOUSTON IRON WORKS SHIPYARD | 111 EAST LOOP NORTH (77252) | | HOUSTON | TX | Silber Pearlman | |
| 6/9/1976 | 10/31/1980 | PORTER-HAYDEN | P.O. BOX 476 | | EDISON | NJ | | |
| 11/18/1976 | 10/31/1980 | POTLATCH CORP. | PLANT SITE | NEAR CYPRESS BEND | DESHA COUNTY | AR | | |
| 4/3/1970 | 10/31/1980 | PPG INDUSTRIES | WORKS #11 | | MT VERNON | OH | | |
| 5/14/1975 | 10/31/1980 | PPG INDUSTRIES | INDUSTRIAL CHEMICAL DIV. | P.O. BOX 31 | BARBERTON | OH | | |
| 9/27/1972 | 10/31/1980 | PRATT & WHITNEY, ANDREW WILGOOSE LABORATORY | KENT RD. (ANDREW WILGOOSE LABORATORY) | 400 MAIN ST., GATE 41, DOCK WALSH, DEPT. 10 (PRATT & WHITNEY) | EAST HARTFORD | CT | | |
| 1/1/1967 | 3/31/1980 | PROLER STEEL PLANT | 7501 WALLISVILLE (77020) | | HOUSTON | TX | Silber Pearlman | |
| 4/5/1976 | 10/31/1980 | PUBLIC SERVICE ELECTRIC & GAS CO. | HUDSON GENERATING STATION 536702 | DUFFIELD & VAN KEUREN AVE. | JERSEY CITY | NJ | | |
| 12/26/1973 | 10/31/1980 | PUBLIC SERVICE OF INDIANA, INC. | GIBSON GENERATING STATION, UNIT #2 | | PRINCETON | IN | | |
| 1/15/1974 | 10/31/1980 | PUBLIC SERVICE OF INDIANA, INC. | GIBSON GENERATING STATION, UNIT #2 | | MOUNT CARMEL | IL | | |
| 3/13/1975 | 10/31/1980 | PUBLIC SERVICE OF INDIANA, INC. | GIBSON GENERATING STATION, UNIT #1 | 2 MILES SOUTH OF STATE RD. #64 & 8 MILES WEST OF PRINCETON | PRINCETON | IN | | |
| 1/1/1966 | 3/31/1973 | PUGET SOUND NAVAL SHIPYARD | 1400 FARRAGUT AVENUE | | BREMERTON | WA | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | PURE OIL REFINERY | FM HIGHWAY 366 | N-SIDE NEAR SH 347 | NEDERLAND | TX | Hissey, Silber Pearlman | |
| 1/1/1962 | 3/31/1981 | QUALITY ELECTRIC STEEL CASTING PLANT | | | HOUSTON | TX | Silber Pearlman | |
| 1/22/1970 | 10/31/1980 | R.C.A. CORP. | | | CIRCLEVILLE | OH | | √ |
| 1/1/1965 | 3/31/1968 | RAMSEY STEEL COMPANY | 4137 Rosa Ave. (79923) | | EL PASO | TX | Baron & Budd | √ |
| 1/1/1956 | 3/31/1978 | RANDOLPH AIR FORCE BASE | 1 Washington Circle Randolph AFB  (78150) | | SAN ANTONIO | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1976 | RAYONIER PAPER MILL | 4470 Savannah Hwy., (31545) | | JESSUP | GA | Baron & Budd | |
| 1/1/1961 | 3/31/1976 | RED RIVER ARMY DEPOT | HWY. 82 WEST | | TEXARKANA | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1978 | RED STONE ARSENAL | 3305 Redstone Army  (35808) | | HUNTSVILLE | AL | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | REED TOOL PLANT | 1525 BLALOCK ROAD (77080) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1969 | 3/31/1970 | REED-NAKER-CAMBO OILFIELD TOOLS PLANT (ROLLER BIT) | 7030 ARDMORE | | HOUSTON | TX | Baron & Budd | |
| 2/12/1970 | 10/31/1980 | REFRACTORY HANDLING | 308 ANTOINE ST. | | WYANDOTTE | MI | | |
| 12/7/1959 | 10/31/1980 | REFRACTORY SERVICE | 4431 BAINBRIDGE BLVD. | | NORFOLK | VA | | |
| 8/25/1969 | 10/31/1980 | REPUBLIC GLASS CORP. | | | SAN FRANCISCO | CA | | √ |
| 1/1/1956 | 3/31/1957 | REPUBLIC OIL REFINERY | 1320 LOOP 197 SOUTH | | TEXAS CITY | TX | Hissey | |
| 5/18/1965 | 3/31/1966 | REPUBLIC STEEL | MASON DEPT. | STEEL WORKS | MASSILLON | OH | Goldberg Persky | |
| 4/26/1965 | 10/31/1980 | REPUBLIC STEEL | MASON DEPT. | 1175 S. PARK AVE. | BUFFALO | NY | | |
| 7/24/1968 | 10/31/1980 | REPUBLIC STEEL | COKE PLANT OVEN DEPT. | GATE #3 | WARREN | OH | | |
| 4/28/1964 | 10/31/1980 | REPUBLIC STEEL CORP. | 3175 INDEPENDENCE ROAD | OPEN HEARTH DEPT. | CLEVELAND | OH | | |
| 4/15/1965 | 10/31/1980 | REPUBLIC STEEL CORP. | | | CANTON | OH | | √ |
| 1/1/1961 | 3/31/1962 | Republic Steel/LTV Steel | | | YOUNGSTOWN | OH | Goldberg Persky | √ |
| 10/14/1963 | 10/31/1980 | RESCO PRODUCTS, INC. | COOK CO. WAREHOUSE | | MALVERN | AR | | |
| 10/28/1974 | 10/31/1980 | RESERVE MINING CO. | NORSHORE JUNCTION | | SILVER BAY | MN | | |
| 9/4/1964 | 10/31/1980 | REX CLAY PRODUCTS CO. | 1109 DECKER W. RD. | | WALLED LAKE | MI | | |
| 5/29/1963 | 10/31/1980 | REYNOLDS & DRAPER LUMBER | JUNCTION CITY HIGHWAY | | EL DORADO | AR | | |
| 1/1/1966 | 3/31/1978 | REYNOLDS ALUMINUM PLANT | 5100 NORTHEAST SUNDIAL RD. | | TROUTDALE | OR | Baron & Budd | |
| 1/1/1956 | 3/31/1979 | REYNOLDS ALUMINUM PLANT | 3501 W VAN BUREN (85009) | | PHOENIX | AR | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | REYNOLDS ALUMINUM PLANT | HWY 67 | | GUM SPRINGS | AR | Silber Pearlman | |
| 1/1/1965 | 3/31/1981 | REYNOLDS ALUMINUM PLANT | 3201 S REYNOLDS ROAD (72011) | | BAUXITE | AR | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | REYNOLDS METALS ALUMINUM PLANT | 3201 S REYNOLDS ROAD (72011) | | BAUXITE | AR | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | REYNOLDS METALS ALUMINUM PLANT | 3501 W VAN BUREN (85009) | | PHOENIX | AZ | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | REYNOLDS METALS ALUMINUM PLANT | HWY 67 | | GUM SPRINGS | AR | Silber Pearlman | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1956 | 3/31/1981 | REYNOLDS METALS ALUMINUM PLANT | 500 E REYNOLDS (71923) | | ARKADELPHIA | AR | Silber Pearlman | |
| 1/1/1962 | 3/31/1981 | REYNOLDS METALS ALUMINUM PLANT | FRONT & LLOYD STREET (10913) | | CHESTER | PA | Silber Pearlman | |
| 5/11/1967 | 10/31/1980 | REYNOLDS METALS CO. | SOUTH GRASSE RIVER RD. | | MASSENA | NY | | |
| 6/29/1970 | 10/31/1980 | REYNOLDS METALS CO. | SHEFFIELD WAREHOUSE | TRACK 1-10 | SHEFFIELD | AL | | |
| 3/24/1966 | 10/31/1980 | REYNOLDS METALS CO. | ALLOYS SPECIAL CONSTRUCTION | ALLOYS PLANT | LISTERHILL | AL | | |
| 1/1/1961 | 3/31/1978 | REYNOLDS METALS CO. (SHERWIN PLANT) | HWY. 361 | | GREGORY | TX | Baron & Budd | √ |
| 1/1/1961 | 3/31/1978 | REYNOLDS METALS- SAN PATRICIO PLANT | State Highway 35 at Route 351  (78359) | | GREGORY | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | RHEEM MANUFACTUIRING PLANT | 1025 LOCKWOOD | | HOUSTON | TX | Silber Pearlman | |
| 7/7/1971 | 10/31/1980 | RICHARDSON LUMBER & CONSTRUCTION | 22 CHARLES ST. | | SHINNSTON | WV | | |
| 1/1/1963 | 3/31/1977 | RICHMOND FOUNDRY | 126 COLLINS ROAD (77469) | | RICHMOND | TX | Silber Pearlman | |
| 5/19/1976 | 10/31/1980 | RIMCOR, INC. | | | BASTROP | LA | | √ |
| 1/1/1958 | 3/31/1981 | RIO GRANDE POWER PLANT | 100 N STANTON ST (79901) | | EL PASO | TX | Silber Pearlman | |
| 1/2/1962 | 10/31/1980 | ROANOKE WEBSTER BRICK COMPANY | | | WEBSTER | VA | | √ |
| 8/31/1971 | 10/31/1980 | ROCHESTER GAS & ELECTRIC | MILL STREET BEE BEE STATION | | ROCHESTER | NY | | |
| 1/1/1957 | 3/31/1981 | ROCK WOOL MANUFACTURING PLANT | 600 OLD SMELTER ROAD (81003) | | PUEBLO | CO | Silber Pearlman | |
| 12/5/1960 | 10/31/1980 | ROCKWELL STANDARD | SPRING DIV. | FURNACE STREET | NEW CASTLE | PA | | |
| 1/1/1974 | 3/31/1981 | ROHM & HAAS CHEMICAL PLANT | 6600 LA PORTE HIGHWAY | | DEER PARK | TX | Hissey | |
| 1/1/1956 | 3/31/1968 | ROHM & HAAS CHEMICAL PLANT | 6600 LA PORTE HIGHWAY (77536) | | DEER PARK | TX | Silber Pearlman | |
| 4/9/1973 | 10/31/1980 | ROHM & HAAS CO. PROJECT | CAMPGROUND RD. | | LOUISVILLE | KY | | |
| 9/24/1975 | 10/31/1980 | ROHNER GEHRIG CO. | C/O SPANISH LINE, SHED 292 | FOR VESSEL VALVANUZ | PORT NEWARK | NJ | | |
| 5/21/1976 | 10/31/1980 | ROSE FUEL & MATERIALS, INC. | 513 E. MADISON ST. | | SOUTH BEND | IN | | |
| 7/25/1972 | 10/31/1980 | RUSSELL ALUMINUM CORP. | KEY FIELD | | MERIDIAN | MS | | |
| 6/11/1971 | 10/31/1980 | S. MARGOLIS & CO. | EIGHTH & WASHINGTON AVE. | | PHILADELPHIA | PA | | |
| 1/1/1970 | 3/31/1976 | SAM GIDEON STEAM POWER PLANT | 257 POWER PLANT ROAD | | BASTROP | TX | Hissey | |
| 1/1/1963 | 3/31/1974 | SAMFORD UNIVERSITY | 800 LAKE SHORE DR. | | BIRMINGHAM | AL | Baron & Budd | |
| 7/29/1966 | 10/31/1980 | SAMUEL GREENFIELD CO. | 31 STONE ST. | | BUFFALO | NY | | |
| 10/12/1976 | 10/31/1980 | SANDY CREEK CORP. | 621 SNIVELY AVE. | | ELOISE | FL | | |
| 11/3/1965 | 10/31/1980 | SANITARY MILK CO. | | | CURWENSVILLE | PA | | √ |
| 1/1/1956 | 3/31/1974 | SANTA FE RAILROAD FACILITY | 100 WOODARD AVENUE SOUTHEAST (87102) | | ALBERQUE | NM | Silber Pearlman | |
| 1/1/1963 | 3/31/1976 | SCOTT PAPER MILL | Bay Bridge Road (36602) | | MOBILE | AL | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Sharon Steel | | | Sharon | PA | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1964 | Sharon Steel | | | Farrell | PA | Goldberg Persky | √ |
| 1/1/1962 | 3/31/1969 | SHARPSTOWN MALL | 7500 Bellaire Blvd (77036) | | HOUSTON | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | SHEFFIELD STEEL MILL | 13100 INDUSTRIAL ROAD (77015) | | HOUSTON | TX | Silber Pearlman | |
| 4/5/1967 | 10/31/1980 | SHELL CHEMICAL CO. | | | BELPRE | OH | | √ |
| 1/1/1956 | 3/31/1970 | SHELL CHEMICAL PLANT | 5900 HWY. 225 (77536) | | DEER PARK | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1976 | SHELL OIL & CHEMICAL REFINERY | 5900 HWY. 225 | | DEER PARK | TX | Baron & Budd, Silber Pearlman | |
| 6/15/1970 | 10/31/1980 | SHELL OIL CO. | MARTINEZ REFINERY | | MARTINEZ | CA | | |
| 1/1/1960 | 3/31/1980 | SHELL OIL COMPANY | 915 S. CENTRAL (62095) | | ROXANA | IL | Wise & Julian | |
| 1/1/1956 | 3/31/1981 | SHELL OIL REFINERY & CHEMICAL PLANT | 5900 HWY. 225 (77536) | | DEER PARK | TX | Baron & Budd, Hissey, Silber Pearlman | |
| 1/1/1963 | 3/31/1966 | SHEPPARD AIR FORCE BASE | 596 Sheppard Afb  (76311) | | SHEPPARD AFB | TX | Baron & Budd | |
| 1/1/1963 | 3/31/1969 | SINCLAIR ATLANTIC-RICHFIELD (ARCO) OIL REFINERY | 1313 West Pasadena Freeway  (77506) | | PASADENA | TX | Baron & Budd | |
| 1/1/1962 | 3/31/1973 | SINCLAIR OIL REFINERY | 12000 LAWNDALE | | HOUSTON | TX | Hissey | |
| 1/1/1956 | 3/31/1964 | SINCLAIR-COPPERS CHEMICAL PLANT | GREENSPORT INDUSTRIAL PARK (77015) | | HOUSTON | TX | Silber Pearlman | |
| 6/30/1971 | 10/31/1980 | SITKIN METAL TRADING, INC. | MAITLAND | | LEWISTOWN | PA | | |
| 7/11/1961 | 10/31/1980 | SKANDIA CO. | 708 SEVENTH ST. | | ROCKFORD | IL | | |
| 10/5/1965 | 10/31/1980 | SOHIO CHEMICAL | CORNER OF FT. AMANDA RD. & ADGATE RD. | | LIMA | OH | | |
| 5/7/1963 | 10/31/1980 | SOUTHERN OHIO FABRICATORS, INC. | 10333 WAYNE ST. | | CINCINNATI | OH | | |
| 1/1/1961 | 3/31/1978 | SOUTHERN PACIFIC RAILROAD | 1800 Billy Casper Drive  El Paso, TX 79936 | | EL PASO | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | SOUTHERN PACIFIC RAILROAD FACILITY | 700 SAN FRANSISCO STREET (79901) | | EL PASO | TX | Silber Pearlman, Baron & Budd | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1956 | 3/31/1981 | SOUTHERN PACIFIC ROUNDHOUSE | 808 TRAVIS | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | SOUTHLAND/INTERNATIONAL/CHAMPION PAPERMILL | 2915 ATKINSON DRIVE (75901) | | LUFKIN | TX | Silber Pearlman, Baron & Budd | |
| 1/1/1965 | 3/31/1981 | SOUTHWEST CHEMICAL & PLASTICS PLANT | 9402 STRANGE ROAD (77536) | | DEER PARK | TX | Silber Pearlman | |
| 1/1/1971 | 3/31/1978 | SOUTHWESTERN BELL BLDGS. | 3303 WESLAYAN | | HOUSTON | TX | Baron & Budd | |
| 1/1/1958 | 3/31/1981 | SOUTHWESTERN PORTLAND CEMENT PLANT | 2825 W PAISANO DRIVE (79922) | | EL PASO | TX | Silber Pearlman | |
| 3/4/1975 | 10/31/1980 | SPARTAN ALUMINUM PRODUCTS, INC. | CO: 13670 | | SPARTA | IL | | |
| 8/12/1966 | 10/31/1980 | SPECIALTY SAND & REFRACTORIES | 2727 LUDELL ST. | JAMESTOWN SPUR | FORT WORTH | TX | | |
| 2/12/1976 | 10/31/1980 | SQUARE BUTTE ELECTRIC | | | CENTER | ND | | √ |
| 10/28/1969 | 10/31/1980 | SQUARE D. CO. | 4500 LEE RD. | | CLEVELAND | OH | | |
| 1/1/1956 | 3/31/1977 | ST. LUKE'S HOSPITAL | 6720 Bertner Ave. (77030) | | HOUSTON | TX | Baron & Budd | |
| 1/1/1963 | 10/31/1976 | ST. REGIS a/k/a CHAMPION a/k/a INTERNATIONAL PAPER MILL | 375 MUSCOGEE RD. | | CANTONMENT | FL | Baron & Budd | |
| 8/2/1967 | 10/31/1980 | STACKPOLE CARBON CO. | | | ST MARY'S | PA | | √ |
| 5/27/1969 | 10/31/1980 | STANDARD FIRE BRICK CONSTRUCTION CO. | 51 THOMAS ST. | | EAST HARTFORD | CT | | |
| 1/1/1956 | 3/31/1957 | STANDARD IRON WORKS | BOX 3 | | KILGORE | TX | Hissey | |
| 10/20/1965 | 10/31/1980 | STANDARD LIME & REFRACTORIES CO. | | | WOODVILLE | OH | | √ |
| 9/24/1968 | 10/31/1980 | STANDARD STEEL | BALDWIN - LIMA - HAMILTON;  DIV. OF TITANIUM METALS CORP. OF AMERICA | | BURNHAM | PA | | |
| 3/2/1966 | 10/31/1980 | STAR CITY GLASS | | | COVENTRY | RI | | √ |
| 1/1/1962 | 3/31/1975 | STAUFFER CHEMICAL PLANT (COLD CREEK) | U.S. HWY. 43 | | BUCKS | AL | Baron & Budd | √ |
| 1/1/1964 | 3/31/1967 | STERLING FAUCET | BOX 798 | | MORGANTOWN | WV | Hissey | |
| 1/1/1956 | 3/31/1974 | STERLING FAUCET FOUNDRY | 1520 E. LAUREL STREET (75701) | | TYLER | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1978 | STORE CONTAINER CORPORATION | 32224 Hwy 31 (36427) (PO BOX 709) | | BREWTON | AL | Baron & Budd | |
| 6/27/1975 | 10/31/1980 | SUCREST CORP. | 112 BEARD ST. | | BROOKLYN | NY | | |
| 4/8/1965 | 10/31/1980 | SUMMERHAY'S REFRACTORY SUPPLIES, INC. | 620 CLINTON AVE. | | ROCHESTER | NY | | |
| 1/1/1956 | 3/31/1981 | SUN OIL REFINERY | 2300 N TWIN CITY HWY (77627) | | NEDERLAND | TX | Silber Pearlman | |
| 1/1/1958 | 3/31/1981 | SUNTIDE OIL REFINERY | SUNTIDE ROAD (78409) | | CORPUS CHRISTI | TX | Silber Pearlman | |
| 3/24/1970 | 10/31/1980 | SUPERIOR COMBUSTION, INC. | 801 BROAD ST. | | EMMAUS | PA | | |
| 11/16/1976 | 10/31/1980 | SURFACE COMBUSTION | 2375 DORR ST. | | TOLEDO | OH | | |
| 1/1/1968 | 3/31/1976 | SWAN ISLAND SHIPYARD | 4855 N LAGOON AVE (97217) | | PORTLAND | OR | Silber Pearlman | |
| 12/22/1970 | 10/31/1980 | SYRACUSE UNIVERSITY STEAM STATION | 500 TAYLOR ST. | | SYRACUSE | NY | | |
| 1/26/1968 | 10/31/1980 | TAMPA ELECTRIC | GANNON STATION | PORT SUTTON | TAMPA | FL | | |
| 10/4/1972 | 10/31/1980 | TAMPER | 2401 EDMUND RD. | | W. COLUMBIA | SC | | |
| 1/1/1967 | 3/31/1981 | TEMPLE ISLAND FIBERBOARD PLANT | 303 S TEMPLE DRIVE (75941) | | DIBOLL | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1979 | TENN TEX ALLOY & CHEMICAL PLANT | 13501 INDUSTRIAL ROAD (77015) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1974 | 3/31/1978 | TENNECO OIL REFINERY | 4403 LAPORTE ROAD | | PASADENA | TX | Hissey | |
| 1/1/1966 | 3/31/1968 | TENNESSEE VALLEY AUTHORITY | Blackburn Rd. (35611) | | ATHENS | AL | Baron & Budd | |
| 12/6/1972 | 10/31/1980 | TENNESSEE VALLEY AUTHORITY | | | CHATTANOOGA | TN | | √ |
| 8/8/1967 | 10/31/1980 | TENNESSEE VALLEY AUTHORITY PARADISE STEAM PLANT | | | DRAKESBORO | KY | | |
| 1/1/1961 | 3/31/1981 | TESCO FOUNDRY | 11330 BRITTMOORE PARK DRIVE (77041) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | TEXACO OIL REFINERY | SAVANNAH AVENUE | | PORT ARTHUR | TX | Hissey | |
| 1/1/1956 | 3/31/1981 | TEXACO OIL REFINERY | 2100 HOUSTON AVE (77641) | | PORT ARTHUR | TX | Silber Pearlman | |
| 5/23/1968 | 10/31/1980 | TEXACO, INC. | C/O SUPERVISOR OF STORES | | PORT ARTHUR | TX | | |
| 1/1/1958 | 3/31/1981 | TEXAS ALUMINUM PLANT | 1200 EAST WASHINGTON (75087) | | ROCKWALL | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | TEXAS CITY OIL REFINERY | 35 MILES SOUTHEAST OF HOUSTON | | TEXAS CITY | TX | Baron & Budd, Silber Pearlman | |
| 1/1/1966 | 3/31/1981 | TEXAS CITY REFINERY | 1505 Loop 197 S (77590) | | TEXAS CITY | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | TEXAS ELECTRIC STEEL CASTING PLANT | 617 BAER STREET (77020) | | HOUSTON | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1978 | TEXAS FOUNDRIES | 1611 NORTH RAGUET STREET | | LUFKIN | TX | Hissey, Baron & Budd | |
| 1/1/1956 | 3/31/1981 | TEXAS FOUNDY | 1611 NORTH RAGUET STREET (75093) | | LUFKIN | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | TEXAS GULF SULPHUR PLANT | 206 VAT ROAD (77420) | | NEW GULF | TX | Silber Pearlman | |
| 1/1/1966 | 3/31/1969 | TEXAS INSTRUMENTS | 8390 LYNDON B JOHNSON FREEWAY | | DALLAS | TX | Hissey | |
| 1/1/1956 | 3/31/1981 | TEXAS OIL REFINERY | SAVANNAH AVENUE | | PORT ARTHUR | TX | Hissey | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 1/1/1963 | 3/31/1971 | TEXAS-EASTMAN CHEMICAL PLANT | 300 KODAK BLVD. | | LONGVIEW | TX | Baron & Budd | |
| 10/29/1975 | 10/31/1980 | THILMANY PULP & PAPER CO. | | | KAUKAUNA | WI | | √ |
| 1/1/1956 | 3/31/1981 | THIOKOL CHEMICAL PLANT | HWY. 134 & SPUR 449 | | KARNACK | TX | Silber Pearlman, Baron & Budd | |
| 9/4/1975 | 10/31/1980 | THRU-PUT | 30 E. AIRLINE HWY. | | KENNER | LA | | |
| 9/18/1974 | 10/31/1980 | THRU-PUT | 501 SHORT ST. | | KENNER | LA | | |
| 1/1/1956 | 3/31/1957 | TIN SMELTER | FM519 & SH146 | | TEXAS CITY | TX | Hissey | |
| 12/3/1959 | 10/31/1980 | TITAN METAL MANUFACTURING CO. | | | BELLEFONTE | PA | | √ |
| 1/1/1966 | 3/31/1981 | TITANIUM METALS PLANT | 8000 W. LAKE MEAD (89015) | | HENDERSON | NV | Silber Pearlman | |
| 1/1/1963 | 3/31/1975 | TODD "HOUSTON" SHIPYARD | 2616 South Loop West  (77054) | | HOUSTON | TX | Baron & Budd | |
| 1/1/1956 | 10/31/1980 | TODD SHIPYARD | 123 25th Street (77550) | | GALVESTON | TX | Silber Pearlman, Baron & Budd, Hissey | |
| 1/1/1957 | 3/31/1960 | TRINITY VALLEY IRON & STEEL | 3400 BRYCE AVENUE | | FORT WORTH | TX | Hissey | |
| 1/1/1971 | 3/31/1972 | TURKEY POINT POWER PLANT | 9700 SOUTHWEST 344 STREET | | HOMESTEAD | FL | Hissey | |
| 1/1/1963 | 3/31/1976 | TVA FERTILIZER CHEMICAL PLANT | 700 West 20th Street (35660) | | SHEFFIELD | AL | Baron & Budd | |
| 1/1/1956 | 3/31/1981 | TWA OVERHAUL BASE | 9200 NW 112 STREET (64153) | | KANSAS CITY | MO | Silber Pearlman | |
| 1/1/1961 | 3/31/1981 | TYLER PIPE | 11721 US HIGHWAY 69 (75706), PO Box 202 (75710) | | TYLER | TX | Hissey, Baron & Budd | |
| 8/18/1972 | 10/31/1980 | TYLER-DAWSON SUPPLY CO. | 6310 EAST 15TH ST. | | TULSA | OK | | |
| 9/13/1972 | 10/31/1980 | U. S. STEEL CORP. | | | GARY | IN | | √ |
| 1/1/1969 | 3/31/1978 | U.S NAVAL SHIP REPAIR | 662 Taft Street Subic Bay Phillipines | | SUBIC BAY | PH | Baron & Budd | |
| 1/1/1965 | 3/31/1976 | U.S STEEL MILL | 3300 1st Ave North (35222) | | Birmingham (Ensley) | AL | Baron & Budd | |
| | | U.S. MILITARY ACADEMY | | | WEST POINT | NY | | √ |
| 1/1/1963 | 3/31/1976 | U.S. NAVAL AIR STATION | 190 RADFORD BLVD. | | PENSACOLA | FL | Baron & Budd | |
| 1/1/1963 | 3/31/1968 | U.S. PIPE | 3300 1st Ave N (35222) | | BIRMINGHAM | AL | Baron & Budd | |
| 1/1/1969 | 3/31/1976 | U.S. STEEL - CONCORD COAL MINE | Route 23 10 Miles West  (35020) | | CONCORD | AL | Baron & Budd | |
| 1/1/1963 | 10/31/1980 | U.S. STEEL CORP. | FAIRFIELD STEEL WORKS 5700 Valley Rd. (35064) | (PO BOX 559, FAIRFIELD, AL, 35064) | FAIRFIELD | AL | Baron & Budd | |
| 1/1/1964 | 10/31/1980 | U.S. STEEL CORP. | CLAIRTON WORKS | | CLAIRTON | PA | Goldberg Persky | |
| 1/1/1956 | 10/31/1980 | U.S. STEEL CORP. | EDGAR THOMSON WORKS | OPEN HEARTH WORKS | BRADDOCK | PA | Goldberg Persky | |
| 1/1/1961 | 10/31/1980 | U.S. STEEL CORP. | HOMESTEAD DISTRICT WORKS | | HOMESTEAD | PA | Goldberg Persky | |
| 1/1/1961 | 10/31/1980 | U.S. STEEL CORP. | HOMESTEAD DISTRICT WORKS | | HOMESTEAD | PA | Goldberg Persky | |
| 10/29/1965 | 10/31/1980 | U.S. STEEL CORP. | RESEARCH CENTER | | MONROEVILLE | PA | | |
| 3/30/1965 | 10/31/1980 | U.S. STEEL CORP. | SOUTH WORKS | 3426 E. 89TH ST. | CHICAGO | IL | | |
| 4/12/1966 | 10/31/1980 | U.S. STEEL CORP. | LORAIN WORKS | | LORAIN | OH | | |
| 4/22/1974 | 10/31/1980 | U.S. STEEL CORP. | | | GARY | IN | | √ |
| 1/1/1973 | 10/31/1980 | U.S. STEEL CORP. | FAIRLESS WORKS | | FAIRLESS | PA | | |
| 1/1/1965 | 3/31/1976 | U.S. STEEL MILL | 3300 1st Ave N  (35222) | | BIRMINGHAM | AL | Baron & Budd | |
| 1/1/1972 | 3/31/1974 | U.S. STEEL MILL | FM 1045 | | BAYTOWN | TX | Hissey | |
| 1/1/1966 | 3/31/1979 | U.S. STEEL MILL | PLANT IS CURRENTLY CLOSED | | ORANGE | TX | Silber Pearlman | |
| 1/1/1966 | 3/31/1981 | U.S.I. CHEMICAL PLANT | 1515 MILLER CUT-OFF ROAD (77571) | | LAPORTE | TX | Silber Pearlman | |
| 1/1/1963 | 3/31/1976 | UNION BAG PAPER MILL | S - W Lathrop Ave (31401) | | SAVANNAH | GA | Baron & Budd | |
| 1/1/1963 | 3/31/1977 | UNION CAMP PAPER MILL | 100 JENSON RD. | | PRATTVILLE | AL | Baron & Budd | |
| 1/1/1967 | 3/31/1968 | Union Carbide | | | Charleston | WV | Goldberg Persky | |
| 1/1/1977 | 3/31/1978 | Union Carbide & Carbon Institute | | | SOUTH CHARLESTON | WV | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1981 | UNION CARBIDE CHEMICAL PLANT | 2 Mls. EAST OF FM 511 ON HWY 48 | | BROWNSVILLE | TX | Baron & Budd, Hissey, Silber Pearlman | √ |
| 1/1/1956 | 3/31/1981 | UNION CARBIDE CHEMICAL PLANT | 3301 FIFTH AVENUE SOUTH (77590) | | TEXAS CITY | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | UNION CARBIDE CHEMICAL PLANT | HWY 185 NORTH (77983) | | SEADRIFT | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | UNION CARBIDE CHEMICAL PLANT | 280 LOOP 197 SOUTH | | TEXAS CITY | TX | Silber Pearlman, Baron & Budd | |
| 1/1/1967 | 10/31/1980 | UNION CARBIDE CORP./CHEMICAL PLANT | 4285 MALVERN ROAD (71901) | | HOT SPRINGS | AR | Silber Pearlman | |
| 11/19/1963 | 10/31/1980 | UNION CARBIDE OLEFIN CO. | | | SOUTH CHARLESTON | WV | | √ |
| 1/1/1966 | 3/31/1975 | UNION CARBIDE/DOW SEADRIFT OLEFINS PLANT | Hwy 185 North  (77983) | | NORTH SEADRIFT | TX | Baron & Budd | |
| 10/10/1973 | 10/31/1980 | UNION ELECTRIC CO. | CAHOKIA PLANT #1, MONSANTO AVE. | | SAUGET | IL | | |
| 1/5/1977 | 10/31/1980 | UNION ELECTRIC CO. | SIOUX PLANT | | St. CHARLES | MO | | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 11/12/1974 | 10/31/1980 | UNION ELECTRIC CO. | SIOUX PLANT | HIGHWAY 94 | WEST ACTON | MO | | |
| 4/25/1968 | 10/31/1980 | UNITED FRUIT TRADING CORP. | PIER #3, NORTH RIVER | | NEW YORK | NY | | |
| 8/18/1961 | 10/31/1980 | UNITED STATES AIR FORCE | BASE PROCUREMENT SERVICE STORE | AFB 2508 | MINOT AFB | ND | | |
| 1/31/1977 | 10/31/1980 | UNIVERSAL METALS | TANKER SHIP CAPETAN MICHALIS | PIER 5, BUSH TERMINAL | BROOKLYN | NY | | |
| 1/1/1971 | 3/31/1974 | UNIVERSITY OF OREGON | 1217 University of Oregon (97403-1217) | | EUGENE | OR | Baron & Budd | |
| 1/1/1971 | 3/31/1981 | UPJOHN CHEMICAL PLANT | 550 BATTLEGROUND ROAD (77572) | | LAPORTE | TX | Silber Pearlman | |
| 1/1/1962 | 3/31/1976 | UP-JOHN CHEMICAL PLANT | HIGHWAY 134 & MILLER CUT OFF | | DEER PARK | TX | Hissey | |
| 1/1/1961 | 3/31/1962 | US Steel | | | Duquesne | PA | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | US Steel Irvin Works | | | West Mifflin | PA | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | US Steel National Tube | | | MxKeesport | PA | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1981 | US STEEL/GLINDALE STEEL MILL | 4554 E Greenwood St, (77520) | | BAYTOWN | TX | Baron & Budd, Hissey | |
| 1/1/1966 | 3/31/1967 | V. H. BRAUNIG POWER PLANT | 15290 STREICH RD. | | SAN ANTONIO | TX | Baron & Budd | |
| 1/1/1957 | 3/31/1974 | VECTOR CABLE MANUFACTURING PLANT | 555-T INDUSTRIAL BLVD (77470) | | SUGARLAND | TX | Silber Pearlman | |
| 1/1/1956 | 3/31/1981 | VICTORIA POWER PLANT | 1205 S BOTTOM STREET (77901) | | VICTORIA | TX | Silber Pearlman | |
| 1/13/1978 | 10/31/1980 | W.C. NORCROSS CO. | 401 W. FIRST ST. | | BOSTON | MA | | |
| 8/27/1968 | 10/31/1980 | W.C. NORCROSS CO. | YARD 3 PLATFORM | | BOSTON | MA | | |
| 12/6/1972 | 10/31/1980 | W.W. GRAINGER | 5959 HOWARD | | NILES | IL | | |
| 4/2/1974 | 10/31/1980 | WALLACE-MURRAY CORP. | SIMONDS ABRASIVE DIV. | CO: 9090, 1015 S. COLLEGE AVE. | SALEM | IL | | |
| 1/1/1980 | 3/31/1981 | WATERFORD III POWER PLANT | ST. CHARLES PARISH | | TAFT | LA | Hissey | |
| 1/21/1970 | 10/31/1980 | WATKINS SALT CO. | | | WATKINS GLEN | NY | | √ |
| 1/6/1970 | 10/31/1980 | WAY & BRINKS REFRACTORIES | LA BARRE RD. TEAM TRACK | | NEW ORLEANS | LA | | |
| 12/17/1970 | 10/31/1980 | WAY & BRINKS REFRACTORIES | WILLIAMS BLVD. TEAM TRACK | | KENNER | LA | | |
| 7/22/1976 | 10/31/1980 | WEAN UNITED | NO ADDRESS | | | | | √ |
| 11/8/1968 | 10/31/1980 | WEIR-COVE MOVING & STORAGE | | | WEIRTON | WV | | √ |
| 1/1/1961 | 10/31/1980 | WEIRTON STEEL CO. (fka National Steel/ aka ISGI) | #8 OPEN HEARTH FURNACE | VIA GATE #1 | WEIRTON | WV | Goldberg Persky | |
| 11/15/1967 | 10/31/1980 | WENCZEL TILE CO. | P.O. BOX 5308 | KLAG AVE., ATTN: FRED NEHREN | TRENTON | NJ | | |
| 1/13/1969 | 10/31/1980 | WEST PENN POWER CO. | ATTN: W.R. BIGLEY | | SPRINGDALE | PA | | |
| 1/1/1970 | 3/31/1971 | WESTERN ELECTRIC CO. | 387 COLLIER LANE | | ATLANTA | GA | Baron & Budd | |
| 1/22/1975 | 10/31/1980 | WESTERN ELECTRIC CO. | GATE #34, CICERO AVE. & 29TH ST. | | CICERO | IL | | |
| 1/1/1963 | 3/31/1972 | WESTERN FOUNDRY | NE Tatlor LP 323 E & Hwy 271 (75701) | | TYLER | TX | Baron & Budd | |
| 1/1/1956 | 3/31/1974 | WESTERN FOUNDRY | 3303 NORTH INDUSTRIAL AVENUE | | TYLER | TX | Hissey, Baron & Budd | |
| 6/13/1974 | 10/31/1980 | WESTERN KRAFT CO. | | | CAMPTI | LA | | √ |
| 1/1/1961 | 3/31/1962 | Westinghouse Bettis Atomic | | | West Mifflin | PA | Goldberg Persky | √ |
| 1/21/1971 | 10/31/1980 | WESTINGHOUSE ELECTRIC CORP. | THIRD ST. | | DERRY | PA | | |
| 6/1/1971 | 10/31/1980 | WESTINGHOUSE ELECTRIC CORP. | | | EAST PITTSBURGH | PA | | √ |
| 1/9/1969 | 10/31/1980 | WEWOKA BRICK & TILE CO. | | | WEWOKA | OK | | √ |
| 7/7/1970 | 10/31/1980 | WEYERHAUSER CO. | DIERK DIVISION | | MOUNTAIN PINE | AR | | |
| 4/25/1977 | 10/31/1980 | WEYERHAUSER CORP. | | | PLYMOUTH | NC | | √ |
| 5/18/1970 | 10/31/1980 | WHEELABRATOR CORP. | WHEELABRATOR DIV. | PLANT #2 | MISHAWAKA | IN | | |
| 1/1/1961 | 3/31/1962 | Wheeling Pitt | | | Allenport/Monessen | PA | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | Wheeling Pitt | | | Steubenville | OH | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | Wheeling Pitt Steel | | | Wheeling | WV | Goldberg Persky | √ |
| 1/1/1963 | 3/31/1964 | Wheeling Pitt Steel | | | Martins Ferry | OH | Goldberg Persky | √ |
| 1/1/1961 | 3/31/1962 | Wheeling Pitt Steel | | | Monessen | PA | Goldberg Persky | √ |
| 1/1/1965 | 10/31/1980 | WHEELING PITTSBURGH STEEL CORP. | STEUBENVILLE PLANT SOUTH DIV. | YARD & MASONRY DEPT (D.J. ELLIS) | MINGO JUNCTION | OH | Goldberg Persky | |
| 10/6/1967 | 10/31/1980 | WHITEHAVEN MEMORIAL PARK | 210 MARSH RD. | | PITTSFORD | NY | | |
| 1/1/1961 | 3/31/1978 | WILLIAMETTE SHIPYARD | SWAN ISLAND | | PORTLAND | OR | Baron & Budd | √ |
| 2/18/1963 | 10/31/1980 | WILLIAMSGROVE CLAY PRODUCTS | | | BIGLER | PA | | √ |
| 1/1/1965 | 3/31/1978 | WILLOW GLEN POWER PLANT | 2605 HWY. 75 | | ST. GABRIEL | LA | Baron & Budd | |

**Final List of Sites That Received**
**NARCO Asbestos-Containing Products**

| Start Date | End Date | Site | Address | Address 2 | City | ST | FIRM | Need Address |
|---|---|---|---|---|---|---|---|---|
| 12/18/1970 | 10/31/1980 | WILSON LUMBER | | | LEOLA | AR | | √ |
| 7/12/1966 | 10/31/1980 | WINDSOR BUILDING SUPPLIES CO. | RT. 7 NORTH RD. | | POUGHKEEPSIE | NY | | |
| 2/9/1971 | 10/31/1980 | WINDSOR BUILDING SUPPLIES CO. | ROUTE 32 | | VAILS GATE | NY | | |
| 2/25/1966 | 10/31/1980 | WINNEN INCINERATOR CO. | 932 BROADWAY AVE. | | BEDFORD | OH | | |
| 1/1/1966 | 3/31/1981 | WKM FOUNDRY | 126 COLLINS ROAD (77469) | | RICHMOND | TX | Silber Pearlman | |
| 1/1/1965 | 3/31/1978 | WORLD TRADE CENTER | 1201 Main Street, Suite 903  (75202) | | DALLAS | TX | Baron & Budd | |
| 1/1/1961 | 3/31/1962 | Youngstown Sheet & Tube | | | YOUNGSTOWN | OH | Goldberg Persky | √ |
| 12/1/1971 | 10/31/1980 | YOUNGSTOWN SHEET & TUBE | NO STREET ADDRESS | | EAST CHICAGO | IN | | |
| 2/3/1971 | 10/31/1980 | YOUNGSTOWN SHEET & TUBE | MASONRY DEPT. | CAMPBELL WORKS | YOUNGSTOWN | OH | | |
| 2/11/1972 | 10/31/1980 | YOUNGSTOWN SHEET & TUBE | | BRIER HILL WORKS | YOUNGSTOWN | OH | | √ |
| 10/1/1970 | 10/31/1980 | ZEDMARK, INC. | MCFANN RD. | | VALENCIA | PA | | |
| | | | | | | | | |