**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors. | Case No. 01–01139 (KJC)<br><br>Chapter 11<br><br>Jointly Administered |

**JOINDER OF FORD MOTOR COMPANY TO MOTION OF**
**HONEYWELL INTERNATIONAL INC. FOR ACCESS TO RULE 2019 EXHIBITS**

  Ford Motor Company ("Ford"), by and through its undersigned counsel, hereby files this Joinder to the *Motion of Honeywell International Inc.* ("Honeywell") *for Access to Rule 2019 Exhibits* (the "Honeywell Motion").[1] By this Joinder, Ford moves this Court to grant Ford the same relief requested in the Honeywell Motion. In support of its Joinder, Ford respectfully states as follows:

  1. Ford Motor Company is an automobile manufacturer with its principal place of business in Dearborn, Michigan. Established in 1903, Ford manufactures millions of automobiles for personal and commercial use annually.

  2. Although medical and epidemiological research conducted over the past three decades has consistently found no increased risk of asbestos-related disease among professional auto mechanics, Ford has nonetheless found itself named as a defendant in asbestos cases where plaintiffs claimed to have worked with or around chrysotile-containing brake pads.

  3. Like Honeywell and other defendants in asbestos cases, Ford has significant and legitimate concerns about fraudulent claims filed against Ford in the tort system as a result of the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Honeywell Motion.

lack of disclosure by asbestos claimants regarding the claims they have asserted or intend to assert against debtors and/or asbestos trusts.

4. For example, on January 2014 in the bankruptcy case of Garlock Sealing Technologies, LLC ("Garlock"), the United States Bankruptcy Court for the Western District of North Carolina entered an estimation order rejecting the $1.3 billion estimate based on historical settlement values asserted by the asbestos personal injury claimant committee and future claims representative and instead held that Garlock's estimated liability for present and future mesothelioma claims is only $125 million. *See In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014). The estimated liability was so dramatically reduced after the bankruptcy court found that the amount of money Garlock had historically paid out in the tort system through verdicts and settlements was not a reliable basis for estimating present and future mesothelioma liability because:

> [T]he last ten years of its participation in the tort system was infected by the manipulation of exposure evidence by plaintiffs and their lawyers. That tactic, though not uniform, had a profound impact on a number of Garlock's trials and many of its settlements such that the amounts recovered were inflated.

*Id.* at 82; *id.* at 86–87 (holding that this practice of withholding exposure evidence was "significant" and "sufficiently widespread" such that Garlock's settlement and verdict history "does not reflect its true liability for mesothelioma"); *id.* at 94 (holding that prior settlement and verdict amounts were "infect[ed] fatally" by the practice of withholding evidence). The bankruptcy court explicitly found that this was a result of "the effort by some plaintiffs and their lawyers to withhold evidence of exposure to other asbestos products and to delay filings claims against bankrupt defendants' asbestos trusts until after obtaining recoveries from Garlock (and *other viable defendants*)," and that this practice amounted to a pattern in asbestos litigation. *Id.* at 83–84 (emphasis added); *see also id.* at 87 ("[W]hile it is not suppression of evidence for a

17362927v.1

plaintiff to be unable to identify exposures, it *is* suppression of evidence for a plaintiff to be unable to identify exposure in the tort case, but then later (and in some cases previously) to be able to identify it in [t]rust claims." (emphasis in original)).

5.    The bankruptcy court found that this "startling" pattern of "widespread" and "demonstrable misrepresentation" by asbestos plaintiffs is supported by, among other things, evidence obtained by Garlock after the bankruptcy court allowed it to pursue full discovery for a selection of 15 individual asbestos creditors and more limited discovery for a larger selection of 205 individual asbestos creditors.  *See id.* at 85–86 ("[T]he fact that *each and every one of them* [i.e., the 15 lead cases] contains such demonstrable misrepresentation is surprising and persuasive.  More important is the fact that the pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results.  Garlock identified 205 additional cases where the plaintiff's discovery responses conflicted with one of the [t]rust claim processing facilities or balloting in bankruptcy cases[.]") (emphasis in original).

6.    Before the public release of the Garlock estimation trial record in May 2015, this pattern of withholding evidence was undetectable because asbestos claims made against bankrupt asbestos companies and their subsequent asbestos trusts generally were not available to tort defendants, and any efforts to obtain them have been vigorously opposed by asbestos plaintiffs and their lawyers.

7.    One source of information regarding asbestos claims made against bankrupt asbestos companies are statements and exhibits filed pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure, which is a mandatory disclosure rule designed to "provide a routine method of advising the court and all parties in interest of the actual economic interest of all

persons participating in the proceedings." *In re Wash. Mut., Inc.*, 419 B.R. 271, 278 (Bankr. D. Del. 2009) (discussing an SEC report that lead to the adoption of a predecessor version of Rule 2019); *Baron & Budd P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 165 (D.N.J. 2005) (stating that Rule 2019 is "a 'disclosure provision' designed to ensure that lawyers involved in the Chapter 11 reorganization process adhere to certain ethical standards and approach all reorganization related matters openly and subject to the scrutiny of the court."); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) ("The purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process[.]"). By its express terms, Rule 2019 applies to "every entity that represents multiple creditors" and under certain circumstances requires such entity to file a statement disclosing the identities of the creditors they represent. *See* Fed. R. Bankr. P. 2019. Under the Bankruptcy Code, a "creditor" means a person or entity with a pre-petition claim against the debtor, even if contingent or unliquidated—the definition of "creditor" is not restricted to those who have already filed, or intend to file, or have a good faith belief that after further investigation and confirmation of a particular proposed chapter 11 plan they may be entitled to file, claims in the bankruptcy case or against an asbestos trust. Therefore, and particularly in light of attorneys' obligations under Fed. R. Bankr. P. 9011 (the bankruptcy analogue of Fed. R. Civ. P. 11), Rule 2019 statements therefore necessarily constitute representations that the persons listed therein are creditors. In the case of asbestos creditors, this is tantamount to an allegation or admission of exposure to the debtor's alleged asbestos-containing products.

8. Significantly for purposes of the Honeywell Motion, the evidence relied upon by the Bankruptcy Court in the Garlock proceeding specifically included, among other things, statements and exhibits filed in other bankruptcy cases pursuant to Rule 2019.

17362927v.1

9. Thus, Ford—in its capacity as a member of the public—hereby joins Honeywell's request for access to the 2019 Exhibits in connection with Ford's investigation into the pattern of widespread misrepresentations by asbestos plaintiffs and their lawyers disclosed for the first time in the Garlock proceeding.

10. Notice of this Joinder has been provided to the same parties served with the Honeywell Motion.

11. An affidavit of service of the Joinder shall be separately filed on the docket upon completion of service.

## **CONCLUSION**

For the reasons set forth above and in the Honeywell Motion, and for such other reasons as may be set forth at any hearing on the Honeywell Motion, Ford respectfully requests that this Court enter an order, in a form substantially similar to the proposed order attached to the Honeywell Motion as Exhibit A, granting Ford and other members of the public immediate access to all 2019 Exhibits filed in this chapter 11 case, and granting such other relief the Court deems just and proper.

[*Remainder of page left blank.*]

17362927v.1

| | |
|---|---|
| Dated: July 6, 2016<br>Wilmington, Delaware | FORD MOTOR COMPANY<br><br>Respectfully submitted by:<br><br>/s/ *James S. Yoder*<br>James S. Yoder, Esquire. (DE 2643)<br>WHITE AND WILLIAMS LLP<br>824 Market Street, Suite 902<br>P.O. Box 709<br>Wilmington, Delaware 19899–0709<br>Telephone: 302.467.4524<br>Facsimile: 302.467.4554<br>Email: yoderj@whiteandwilliams.com<br><br>*Counsel to Ford Motor Company* |