**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| IN RE: | |
|---|---|
| ACandS, Inc. | Case No. 02-12687 (Rel. Dkt. No. 3751) |
| Armstrong World Industries, Inc. | Case No. 00-4471 (Rel. Dkt. No. 10813) |
| Combustion Engineering, Inc. | Case No. 03-10495 (Rel. Dkt. No. 3502) |
| The Flintkote Company | Case No. 04-11300 (Rel. Dkt. No. 9338) |
| Kaiser Aluminum Corp. | Case No. 02-10429 (Rel. Dkt. No. 10351) |
| Owens Corning | Case No. 00-3837 (Rel. Dkt. No. 21106) |
| US Mineral Products Company | Case No. 01-2471 (Rel. Dkt. No. 4094) |
| USG Corp. | Case No. 01-2094 (Rel. Dkt. No. 12711) |
| W.R. Grace & Co. | Case No. 01-1139 (Rel. Dkt. No. 32718) |
| Debtors. | |

**OBJECTION OF THE NORTH AMERICAN REFRACTORIES COMPANY ASBESTOS PERSONAL INJURY SETTLEMENT TRUST ADVISORY COMMITTEE TO HONEYWELL'S MOTION FOR ACCESS TO RULE 2019 EXHIBITS**

**A.M. SACCULLO LEGAL, LLC**

Anthony M. Saccullo (No. 4141)
Thomas H. Kovach (No. 3964)
27 Crimson King Drive
Bear, Delaware 19701
Telephone: (302) 836-8877
Facsimile: (302) 836-8787
ams@saccullolegal.com
kovach@saccullolegal.com

**CAPLIN & DRYSDALE, CHARTERED**

Ann C. McMillan
Kevin C. Maclay
Todd E. Phillips
One Thomas Circle, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 862-5000

Elihu Inselbuch
600 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 379-6000

*Co-Counsel for the North American*
*Refractories Company Asbestos Personal*
*Injury Settlement Trust Advisory Committee*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 2

BACKGROUND ......................................................................................................................... 4

ARGUMENT ............................................................................................................................. 11

I.    THE MOVANTS' IMPROPER PURPOSE PRECLUDES THEM FROM ACCESS
      TO THE RULE 2019 EXHIBITS ................................................................................... 11

   A.   Courts May Deny Access to Documents to Prevent Them from Being Used for
        Improper Purposes .................................................................................................... 11

   B.   The Movants Acknowledge Their Purpose in Seeking the Rule 2019 Exhibits,
        and That Purpose Is Improper .................................................................................. 12

        1.   Honeywell and Ford Reveal Their Purpose to Use 2019 Exhibits to Accuse
             Plaintiffs of Fraud ............................................................................................. 12

        2.   Rule 2019 Statements Are Useless for the Movants' Stated Purpose .............. 13

        3.   The Movants' Improper Purpose Precludes the Relief Sought .......................... 16

II.   SECTION 107 DOES NOT SUPPORT HONEYWELL'S ATTEMPT TO ACCESS
      THE RULE 2019 EXHIBITS ......................................................................................... 17

   A.   The Rule 2019 Exhibits Are Protected From Disclosure Under Section 107(c) and its
        Common-Law Predecessor as Presenting an Undue Risk of Identity Theft and Other
        Unlawful Injury ........................................................................................................ 17

   B.   The Rule 2019 Exhibits Are Protected From Disclosure Under Section 107(b)(1) as
        Confidential Commercial Information ........................................................................ 24

III.  HONEYWELL IGNORES THE STRINGENT RESTRICTIONS PREVIOUSLY
      IMPOSED BY THIS COURT AND THE DISTRICT COURT IN GRANTING
      LIMITED ACCESS ........................................................................................................ 26

CONCLUSION ......................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 50-Off Stores, Inc.*,
    213 B.R. 646 (Bankr. W.D. Tex. 1997) .......................................................................... *passim*

*In re ACandS, Inc.*,
    462 B.R. 88 (Bankr. D. Del. 2011), *rev'd, In re Motions for Access of Garlock*
    *Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013) ......................................................... *passim*

*In re Am. Bus. Fin. Servs., Inc.*,
    No. 05-10203, 2008 WL 3906894 (Bankr. D. Del. Aug. 20, 2008) ........................................16

*In re Barney's, Inc.*,
    201 B.R. 703 (Bankr. S.D.N.Y. 1996) ....................................................................................24

*In re Bennett Funding Grp., Inc.*,
    226 B.R. 331 (Bankr. N.D.N.Y. 1998) ...................................................................................18

*In re Borders Grp., Inc.*,
    462 B.R. 42 (Bankr. S.D.N.Y. 2011) ......................................................................................24

*In re Cendant Corp.*,
    260 F.3d 183 (3d Cir. 2001) ...................................................................................................11

*Damn I'm Good Inc. v. Sakowitz, Inc.*,
    514 F. Supp. 1357 (S.D.N.Y. 1981) .......................................................................................21

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
    No. CIV.A. 08-4168 MLC, 2015 WL 1138400 (D.N.J. Mar. 11, 2015) ...............................19

*Everett v. Nort*,
    547 F. App'x 117 (3d Cir. 2013) ............................................................................................23

*In re Frontier Grp., LLC*,
    256 B.R. 771 (Bankr. E.D. Tenn. 2000) .................................................................................25

*Fulmore v. United Parcel Serv., Inc.*,
    Nos. 7:11-CV-18-F, 7:11-CV-91-F, 2012 WL 6016731 (E.D.N.C. Dec. 3,
    2012) .......................................................................................................................................23

*In re Georgetown Steel Co.*,
    306 B.R. 542 (Bankr. D.S.C. 2004) ..................................................................................18, 24

*Glass Dimensions, Inc. v. State St. Corp.*,
  No. CIV.A. 10-10588-FDS, 2013 WL 6280085 (D. Mass. Dec. 3, 2013) ............................19

*In re JMS Auto. Rebuilders, Inc.*,
  No. 01-05600 DDP, 2002 WL 32817517 (C.D. Cal. Jan. 15, 2002) ......................................25

*In re Joyce*,
  399 B.R. 382 (Bankr. D. Del. 2009) ...................................................................................18

*In re Kaiser Aluminum Corp.*,
  327 B.R. 554 (D. Del. 2005) ........................................................................................... *passim*

*Leap Systems, Inc. v. Moneytrax, Inc.*,
  638 F.3d 216 (3d Cir. 2011) ........................................................................................11, 19

*Littlejohn v. BIC Corp.*,
  851 F.2d 673 (3d Cir. 1988) ...............................................................................................11

*In re Motions for Access of Garlock Sealing Techs. LLC*,
  488 B.R. 281 (D. Del. 2013) ........................................................................................... *passim*

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. (1978) ......................................................................................................12, 16

*In re Nortel Networks Inc.*,
  No. 09-10138 KG, 2011 WL 1661524 (Bankr. D. Del. May 2, 2011) ...................................25

*In re Orion Pictures Corp.*,
  21 F.3d (2d Cir. 1994) ........................................................................................12, 18, 24

*In re Peregrine Sys., Inc.*,
  311 B.R. 679 (D. Del. 2004) ...............................................................................................18

*In re Pittsburgh Corning Corp.*,
  260 F. App'x 463 (3d Cir. 2008) ..........................................................................................6

*In re Pittsburgh Corning Corp.*,
  No. 04-1814, 2005 WL 6128987 (W.D. Pa. Sept. 27, 2005), *aff'd, In re
  Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008) ......................................... *passim*

*In re Premier Int'l Holdings*,
  423 B.R. 58 (Bankr. D. Del. 2010) ...............................................................................14, 16

*In re Rivera*,
  524 B.R. 438 (Bankr. D.P.R. 2015) .....................................................................................12

*Robbins v. Tripp*,
  510 B.R. 61 (E.D. Va. 2014) ...............................................................................................18

*Starks v. Meisner*,
No. 14-CV-844-JDP, 2016 WL 1259434 (W.D. Wis. Mar. 30, 2016) ...................................19

*In re Transbrasil S.A. Linhas Aereas*,
No. 11-19484-BKC-AJC, 2014 WL 1655990 (Bankr. S.D. Fla. Apr. 25, 2014) ...................25

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*,
510 U.S. 487 (1994) ...........................................................................................................20

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ...........................................................................................................20

*United States v. Smith*,
776 F.2d 1104 (3d Cir. 1985) .............................................................................................19

*In re Visteon Corp.*,
No. 09-11786, 2010 Bankr. LEXIS 5461 (Bankr. D. Del. Apr. 9, 2010) ..............................25

**Docketed Cases**

*In re ACandS, Inc.*,
No. 02-12687 (Bankr. D. Del.) ......................................................................................1, 14

*In re Am. Capital Equip., LLC*,
No. 01-23987 (Bankr. W.D. Pa.) ........................................................................................21

*In re Armstrong World Indus., Inc.*,
No. 00-4471 (Bankr. D. Del.) ...............................................................................................1

*In re Burns & Roe Enters., Inc.*,
No. 00-41610 (Bankr. D.N.J.) .............................................................................................21

*In re CFB Liquidating Corp.*,
No. 01-45483 (Bankr. N.D. Cal.) ........................................................................................21

*In re Combustion Eng'g, Inc.*,
No. 03-10495 (Bankr. D. Del.) .........................................................................................1, 2

*In re Federal-Mogul Glob. Inc.*,
No. 01-10578 (Bankr. D. Del.) ...........................................................................................22

*In re The Flintkote Co.*,
No. 04-11300 (Bankr. D. Del.) .....................................................................................1, 2, 6

*In re G-I Holdings, Inc.*,
No. 01-30135 (Bankr. D.N.J.) .............................................................................................20

*In re Garlock Sealing Techs. LLC*,
No. 10-31607 (Bankr. W.D.N.C.) .......................................................................................10

*In re Kaiser Aluminum Corp.*,
  No. 02-10429 (Bankr. D. Del.) ........................................................................... *passim*

*In re Mid-Valley, Inc.*,
  No. 03-35592 (Bankr. W.D. Pa.) ..........................................................................21

*In re Mid-Valley, Inc.*,
  No. 11-1439 (W.D. Pa.) ..........................................................................................8

*In re Motions for Access of Garlock Sealing Techs. LLC*,
  No. 11-1130 (D. Del.) ..................................................................................... *passim*

*In re N. Am. Refractories Co.*,
  No. 02-21626-TPA (Bankr. W.D. Pa.) ...................................................................1

*In re N. Am. Refractories Co.*,
  No. 11-1452 (W.D. Pa.) ..........................................................................................8

*In re Owens Corning*,
  No. 00-3837 (Bankr. D. Del.) ...........................................................................1, 2

*In re Pittsburgh Corning Corp.*,
  No. 00-22876 (Bankr. W.D. Pa.) ..................................................................... *passim*

*In re Pittsburgh Corning Corp.*,
  No. 11-01406 (W.D. Pa.) ........................................................................................8

*In re Quigley Co.*,
  No. 04-15739 (Bankr. S.D.N.Y.) .........................................................................21

*In re U.S. Mineral Prods. Co.*,
  No. 01-2471 (Bankr. D. Del.) ...........................................................................1, 2

*In re USG Corp.*,
  No. 01-2094 (Bankr. D. Del.) ...........................................................................1, 2

*In re W.R. Grace & Co.*,
  No. 01-1139 (Bankr. D. Del.) ...........................................................................1, 2

## Statutes

11 U.S.C. § 107 ................................................................................................ *passim*

11 U.S.C. § 107(a) ....................................................................................................17

11 U.S.C. § 107(b) ........................................................................................24, 25, 26

11 U.S.C. § 107(c) ........................................................................................17, 22, 23

11 U.S.C. § 107(c)(1).................................................................................................................22

11 U.S.C. § 107(c)(2).................................................................................................................22

18 U.S.C. § 1028(d).................................................................................................................22

**Other Authorities**

Fed. R. Bankr. P. 2019......................................................................................... *passim*

The North American Refractories Company Asbestos Personal Injury Settlement Trust Advisory Committee (the "**NARCO TAC**")[1] hereby opposes the Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits (the "**Motion**")[2] filed in nine Delaware bankruptcies[3] and the related Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits (the "**Ford Joinder**").[4]  In support of this Objection, the NARCO TAC respectfully represents as follows:

---

[1]     The members of the NARCO TAC "serve in a fiduciary capacity representing all holders of present NARCO Asbestos Trust Claims."   First Amended North American Refractories Company Asbestos Personal Injury Settlement Trust Agreement at 20, Ex. B to Third Amended Plan of Reorganization for North American Refractories Company Dated December 28, 2005, *In re N. Am. Refractories Co.*, No. 02-21626-TPA (Bankr. W.D. Pa. Jan. 27, 2006) (D.I. 3981).

[2]     Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. June 30, 2016) (D.I. 3751); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Armstrong World Indus., Inc.*, No. 00-04471 (Bankr. D. Del. June 30, 2016) (D.I. 10813); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Combustion Eng'g, Inc.*, No. 03-10495 (Bankr. D. Del. June 30, 2016) (D.I. 3502); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re The Flintkote Co.*, No. 04-11300 (Bankr. D. Del. June 30, 2016) (D.I. 9338); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. June 30, 2016) (D.I. 10351); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. June 30, 2016) (D.I. 21106), Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re U.S. Mineral Prods. Co*., No. 01-02471 (Bankr. D. Del. June 30, 2016) (D.I. 4094); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re USG Corp*., No. 01-02094 (Bankr. D. Del. June 30, 2016) (D.I. 12711); Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re W.R. Grace & Co.*, No. 01-01139 (Bankr. D. Del. June 30, 2016) (D.I. 32718).

[3]     The nine bankruptcies are *In re ACandS, Inc.*, No. 02-12687, *In re Armstrong World Indus., Inc*., No. 00-4471, *In re Combustion Eng'g, Inc.*, No. 03-10495, *In re The Flintkote Co.*, No. 04-11300, *In re Kaiser Aluminum Corp.*, No. 02-10429, *In re Owens Corning*, No. 00-3837, *In re U.S. Mineral Prods. Co.*, No. 01-2471, *In re USG Corp*., No. 01-2094, and *In re W.R. Grace & Co.*, No. 01-1139 (collectively, the "**Nine Cases**").   With the exception of *W.R. Grace* and *Flintkote*, all have been closed.   In addition, it is not clear that all potentially affected individuals in the Nine Cases have been notified of the Motion.

[4]     Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re ACandS, Inc*., No. 02-12687 (Bankr. D. Del. July 5, 2016) (D.I. 3756); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Armstrong World Indus., Inc.*, No. 00-04471 (Bankr. D. Del. July 6, 2016),

## PRELIMINARY STATEMENT

1.    Honeywell International Inc. is a major asbestos defendant whose activities and asbestos-containing products have caused injuries and death to many victims over the course of many years.  Honeywell made over $800 million in asbestos-related liability payments during the last three years alone, and has had substantial punitive damages awarded against it.  Nevertheless, rather than taking responsibility for the harms it caused, Honeywell has adopted the strategy of accusing asbestos victims and their counsel of fraud.  Ford Motor Company, likewise a major asbestos defendant, having paid out millions of dollars over the years to asbestos victims and their families, has also pursued a litigation strategy focused on accusing plaintiffs of wrongdoing.  In this connection, Honeywell and Ford are pursuing documents— documents that could be sought in discovery subject to court oversight in those other underlying proceedings if they were actually relevant—through mechanisms that seek to evade court review and restrictions.

2.    Specifically, Honeywell and Ford here seek to use Federal Rule of Bankruptcy Procedure 2019 to engage in fishing-expedition discovery premised on their speculative allegations of widespread fraud.  They seek access to personally identifying data and sensitive

---

(D.I. 10818); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Combustion Eng'g, Inc.*, No. 03-10495 (Bankr. D. Del. July 6, 2016) (D.I. 3507); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re The Flintkote Co.*, No. 04-11300 (Bankr. D. Del. July 6, 2016) (D.I. 9339); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. July 6, 2016) (D.I. 10356); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. July 6, 2016) (D.I. 21112); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re U.S. Mineral Prods. Co.*, No. 01-02471 (Bankr. D. Del. July 6, 2016) (D.I. 4099); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re USG Corp.*, No. 01-02094 (Bankr. D. Del July 6, 2016), (D.I. 12716); Joinder of Ford Motor Company to Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, *In re W.R. Grace & Co.*, No. 01-01139 (Bankr. D. Del. July 6, 2016) (D.I. 32724).

medical information about thousands and thousands of the sick, elderly, and vulnerable victims of asbestos, while at the same time seeking to open up that information to unfettered access by others.  This is not only an improper attempt to shortcut the discovery protections applicable in state and federal asbestos litigation, it is also an attempt to overrule the thoughtful and considered process implemented by this Court, and approved by the District Court and the Third Circuit, to limit access to such materials.

3.      Seeking to misuse the Rule 2019 Exhibits to assert dubious fraud claims in a multitude of other actions is not a proper purpose.  On that ground alone, this Motion should be rejected in its entirety.

4.      This Court and the District Court made clear that the Rule 2019 Exhibits in the Nine Cases are worthy of protection.[5]  The District Court restricted the use of the Rule 2019 Exhibits, and this Court likewise did so upon remand.[6]  The District Court likewise required that the Rule 2019 Exhibits be covered by a protective order to be issued by another court.[7]  Honeywell ignores all of these restrictions as if they were never imposed.

5.      Despite movants' lofty public access rhetoric, the decision to restrict access to Rule 2019 Exhibits is well within this Court's discretion.  *See, e.g.*, *In re 50-Off Stores, Inc.*, 213 B.R. 646, 659 (Bankr. W.D. Tex. 1997) (following Supreme Court's guidance that "bar[ring] access to judicial records is . . . best left to the sound discretion of the trial court") (internal

---

[5]      *See In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013); Order Implementing Opinion and Order Reversing Bankruptcy Court Orders and Granting Garlock Sealing Technologies LLC Access to 2019 Exhibits, *In re Motions for Access of Garlock Sealing Techs. LLC*, No. 11-1130 (D. Del. Mar. 14, 2013) (D.I. 67) ("**Implementing Order**"); Order Establishing the Protocol for Production of 2019 Exhibits, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Apr. 9, 2013) (D.I. 9299) ("**Protocol Order**").

[6]      *In re Motions for Access*, 488 B.R. 281; Protocol Order.

[7]      *Id.* at 302; Implementing Order.

quotations and citations omitted); *In re Motions for Access*, 488 B.R. at 302 (restricting

Garlock's access to the Rule 2019 Exhibits to be used solely for the purpose of its estimation

proceeding and not for any other purposes, such as underlying state court tort actions).  This

Court should exercise its discretion and deny the Motion.

## BACKGROUND

6.      Understanding the context of this dispute requires us to look back more than a

decade.  Under the version of Bankruptcy Rule 2019 in effect in the 2000s, when a 2019

statement was required of certain entities representing creditors or equity security holders, the

Rule instructed that it should contain certain identifying information about those creditors and

equity holders (*e.g.*, name and address, nature and amount of claim or interest, etc.).  Fed. R.

Bankr. P. 2019 (amended 2011).[8]  Compliance with this rule in mass tort cases presented

significant logistical challenges, given the large client rosters of many law firms.  In a mass tort

bankruptcy, a single law firm may represent hundreds of individual claimants.

7.      In 2004 and 2005, Judge Judith K. Fitzgerald, the bankruptcy judge assigned to

nearly all of the asbestos bankruptcies filed within the Third Circuit, including the Nine Cases,

attempted to standardize the Rule 2019 disclosures in mass tort bankruptcies when she entered a

series of orders in various Delaware and Pennsylvania asbestos bankruptcies.  The orders (the

"**2019 Orders**") required that all law firms that appeared for multiple claimants file statements

on the Bankruptcy Court's public, electronic docket and submit to the Clerk of the Bankruptcy

---

[8]      Rule 2019 was revised effective December 2011, so that law firms no longer had to submit Rule 2019 materials for asbestos claimants absent a firm's appearing in court to take a position on behalf of such claimants.

Court compact disks containing substantial additional information (the "**2019 Exhibits**" or "**Rule 2019 Exhibits**").[9]

8.      The Rule 2019 Exhibits submitted in response to the 2019 Orders include, but are not necessarily limited to: (1) the names and addresses of the clients of the submitting attorney; (2) exemplars or actual copies of the relevant retention agreements; (3) identification of disease; (4) claim amounts if liquidated; (5) sometimes full or partial social security numbers; (6) sometimes medical records, with information including full or partial social security numbers, family histories (including causes of death of family members), results of physical examinations, chest x-rays, and lung function tests, and other similarly sensitive medical information; and (7) sometimes other records that the submitted law firm maintained in connection with or commingled with the required information.

9.      Clearly, those firms' Rule 2019 disclosures may involve large amounts of data about sick, elderly, and vulnerable tort victims and their families.  And so Judge Fitzgerald required the Rule 2019 Exhibits be kept off the Bankruptcy Court's docket and made available to third parties only upon further court order on a motion by the party seeking access.

10.      The procedure implemented by Judge Fitzgerald in her 2019 Orders was reviewed and approved by higher courts within the Third Circuit.  *See In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D. Del. 2005); *In re Pittsburgh Corning Corp.*, No. 04-1814, 2005 WL 6128987, at

---

[9]      *See, e.g.*, Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 26, 2004) (D.I. 3527); Amendatory Order Requiring Filing of Statement Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Aug. 27, 2004) (D.I. 3530); Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Oct. 22, 2004) (D.I. 3667); Supplement to Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. June 17, 2005) (D.I. 4347).  Similar or identical orders were entered in all of the Nine Cases.  The *Pittsburgh Corning* docket information is provided for ease of reference.

*10 (W.D. Pa. Sept. 27, 2005), *aff'd*, *In re Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008).

11.    After the 2019 Orders were entered, certain insurers contended that the 2019 orders implemented in the *Kaiser* and *Flintkote* bankruptcies were entered in error, attacking, *inter alia¸* that information submitted was unavailable on the public docket, except upon motion and order. *Kaiser*, 327 B.R. at 557. Although the District Court determined the insurers did not have standing to challenge the 2019 orders at issue, it found "[i]n the alternative, even if the Court concludes that Appellants have standing to challenge the Revised Rule 2019 Orders, the Court concludes that the Bankruptcy Court did not err in . . . restricting access to the Rule 2019 information." *Id.* at 559. The District Court believed that "the Revised 2019 Orders issued by Judge Fitzgerald . . . comport with the requirements of Rule 2019, while taking into consideration the complexities of mass tort litigation." *Id.* In concluding that Judge Fitzgerald's 2019 orders were not entered in error, the Court noted that "the Bankruptcy Court is regulating access to the information because of privacy concerns" and "Judge Fitzgerald's Rule 2019 Orders strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused." *Id.* at 560.

12.    Insurers similarly appealed the 2019 order entered in the *Pittsburgh Corning* bankruptcy by Judge Fitzgerald; that appeal was also dismissed for lack of standing. *Pittsburgh Corning*, 2005 WL 6128987, at *10. The Third Circuit affirmed that decision. *In re Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008) (stating, *inter alia*, that it "f[ou]nd no error in the District Court's resolution of Appellants' access challenge").

13.    For the next few years, no person or entity sought the 2019 Exhibits or, on information and belief, used them for any purpose in any context.

14.    Litigation over access to the 2019 Exhibits in these cases arose again in 2009, when an asbestos defendant, Garlock Sealing Technologies, LLC ("**Garlock**"), filed an expedited motion for access in the *Pittsburgh Corning* bankruptcy, related to its objections to confirmation of the *Pittsburgh Corning* bankruptcy plan.  That motion for access was denied in early 2010.[10]  A year later, Garlock, then a debtor in an asbestos bankruptcy pending in the Western District of North Carolina, No. 10-31607 (Bankr. W.D.N.C.), filed a new series of motions seeking access to the 2019 Exhibits submitted in each of the Nine Cases as well as in three Pennsylvania cases (all before Judge Fitzgerald at the time).[11]  Certain asbestos claimants' committees along with plaintiffs' law firms filed objections, as did certain debtors.  Garlock subsequently filed amended motions.  Judge Fitzgerald denied the motions.[12]

15.    In her opinion, Judge Fitzgerald explained the context of the Rule 2019 Orders she had entered:

> In the context of bankruptcy asbestos personal injury cases, when a 2019 is filed, a lawyer typically has a number of clients who have been, or assert that they have been, exposed to asbestos and who often may have sustained those exposures in multiple contexts.  For example, an employee of one company may have worked with products of multiple asbestos manufacturers, producers, or distributors or may have worked for more than one asbestos company.  In addition, individuals will often seek legal advice notwithstanding the absence of disease or symptoms, simply because of the possibility of exposure and because the latency period for certain asbestos diseases can be decades.  Thus, notwithstanding the use of the word "creditor" in Rule 2019, individuals seeking legal counsel with respect to asbestos exposure may or may not have current claims and may or may not ever qualify as a claimant under § 524(g).

---

[10]    Order Denying Expedited Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Mar. 25, 2010) (D.I. 7579).

[11]    *See, e.g.*, Motion of Garlock Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in This Court and for Related Relief, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 10, 2011) (D.I. 8096).

[12]    *See In re ACandS, Inc.*, 462 B.R. 88 (Bankr. D. Del. 2011), *rev'd*, *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013).

Nonetheless, they are represented by an attorney who is required to file a 2019 statement listing all those he represents who are or may be claimants, even if the claims are never allowable or allowed.

Statements under 2019 are *attorney* statements of authority to represent multiple clients as listed thereon.  They are not claims and are not affirmative statements by the clients themselves.[13]

16.     On appeal to the District Court for the District of Delaware, Judge Stark reversed on a narrow ground, concluding, *inter alia*, that "access should be provided" but only "subject to certain limitations."[14]  Those restrictions included: (1) Garlock being provided access to the 2019 Exhibits "**solely** for the purpose of using them in connection with the estimation proceedings in its own bankruptcy case"; (2) "Garlock may not publicly disclose information contained in the 2019 Exhibits except in an aggregate format that does not identify any individual"; (3) "before there is **any** disclosure of the information Garlock divines from the 2019 Exhibits, Garlock must first propose to the North Carolina Bankruptcy Court an appropriate form of protective order for that Court to consider"; and (4) "Garlock shall not be granted access to . . . retention agreements."[15]

---

[13]     *Id.* at 96.  *See also id.* at 93 n.6 ("We note that the mere inclusion of a client on a 2019 in an asbestos case does not necessarily mean that the client filed or will file a claim or that any claim will be allowed once presented to the trust."); *id.* at 94 ("2019 statements are representations by counsel to a court as to who their clients are.  The statements are not claims.").

[14]     *In re Motions for Access*, 488 B.R. 281, 286.

[15]     *Id.* at 302 (emphasis added).  The District Court for the Western District of Pennsylvania, which had stayed the three parallel Pennsylvania appeals pending the resolution of the Delaware appeals, entered an order with similarly stringent restrictions to that of the Delaware District Court.  *See* Order of Court Resolving Appeals, *In re Pittsburgh Corning Corp.*, No. 11-01406 (W.D. Pa. Mar. 19, 2013) (D.I. 33); Order of Court Resolving Appeals, *In re Mid-Valley, Inc.*, No. 11-1439 (W.D. Pa. Mar. 19, 2013) (D.I. 25); Order of Court Resolving Appeals, *In re N. Am. Refractories Co.*, No. 11-1452 (W.D. Pa. Mar. 19, 2013) (D.I. 30).

17.    The District Court subsequently entered an implementing order.[16]  That order, noted the following:

- "To the extent Retention Agreements are inadvertently provided to Garlock, Garlock shall not review such Retention Agreements, shall promptly destroy such Retention Agreements, and shall not provide them to any other person or entity or use them for any purpose whatsoever."

- "This Order authorizes Garlock to use such 2019 Exhibits **solely** in connection with the estimation proceedings in Garlock's chapter 11 bankruptcy cases . . . and neither the 2019 Exhibits nor the information contained therein may be used for any other purposes."

- "Garlock shall not disclose publicly the information contained in any 2019 Exhibit except in an aggregate format that does not identify any individual represented person."

- "Recognizing that Garlock has requested the North Carolina Bankruptcy Court to enter a proposed protective order pursuant to the Protective Order Motion, public disclosure of the information in any 2019 Exhibit shall be subject to the terms of a protective order entered by the North Carolina Bankruptcy Court that is consistent with this Court's Opinion and Order and the terms of this Order."[17]

18.    Following entry of the orders by the Delaware and Pennsylvania courts, and consistent with Judge Stark's decision, on remand Judge Fitzgerald established a protocol for the production of 2019 Exhibits.[18]  The protocol made clear that (1) "Garlock may not access retention agreements, exemplars or their equivalents"; (2) "Garlock may not use the 2019 Exhibits or their contents for any purpose other than the Liability Estimation in the NCWB Proceedings"; and (3) "Garlock may not disclose the identity of any individual listed in any of the 2019 Exhibits."[19]  The protocol also included the designation of a special master to undertake

---

[16]    Implementing Order.

[17]    *Id.* at ¶¶ 1-4 (emphasis added).

[18]    Protocol Order.

[19]    *Id.* at 4-5.

the production and related instructions for the special master, which included, *inter alia*, "review[ing] the file [to go to Garlock] to ensure that the document does not list more than the last four digits of an individual's social security number" and provided instructions on redacting.[20]

19.    The protocol stated that "[t]he NCWB Protective Order[21] identifies restrictions on the Receiving Estimation Parties' use of the 2019 Exhibit Production.  The restrictions imposed by this Protocol shall be construed as complementary to the restrictions imposed by the NCWB Protective Order.  Where there is a perceived conflict between the restrictions and/or limitations imposed by the NCWB Protective Order and this Protocol, the more restrictive and/or limiting provision shall govern."[22]

20.    In addition, the protocol provided that "[p]rior to providing any copy of the 2019 Exhibit to a Receiving Estimation Party or any other person or entity authorized by NCWB, Garlock shall obtain and file in each of the above-captioned cases, an affidavit setting forth that the recipient understands and agrees to be bound by the NCWB Protective Order and this Protocol, including the **return and destruction** requirements . . . ."[23]  And that within 30 days after final confirmation or substantial consummation of the Garlock plan of reorganization, whichever is earlier, Garlock and each authorized recipient authorized to receive copies must file a sworn affidavit in each of the cases attesting that the recipient and its employees, agents, experts and any other person or related entity (1) "[u]sed the 2019 Exhibits **solely** for the purpose

---

[20]    *Id.* at 7-8.

[21]    Order Governing Use and Confidentiality of Certain Exhibits to Rule 2019 Statements from Other Bankruptcy Cases, *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Mar. 28, 2013) (D.I. 2807).

[22]    Protocol Order at 9.

[23]    *Id.* (emphasis added).

of the NCWB Proceeding"; (2) "[d]id not **share or distribute** any of the 2019 Exhibits (in whole

or in part) **with any person or entity** other than what was expressly authorized by an Order of

the NCWB, DEB, or PAWB"; (3) "[**d**]**id not and will not publicly disclose the identity of any**

**individual** . . . other than what was . . . authorized"; and (4) "[r]etrieved, collected and

permanently destroyed all copies of the 2019 Exhibit Production, including any and all subparts

or subsets, regardless of whether any or all of the 2019 Exhibit data was merged with any other

data."[24]

21.   The various orders pertaining to Garlock's limited access to the Rule 2019

Exhibits all remain in effect.

### ARGUMENT

**I.   THE MOVANTS' IMPROPER PURPOSE PRECLUDES THEM FROM ACCESS TO THE RULE 2019 EXHIBITS**

A.   Courts May Deny Access to Documents to Prevent Them from Being Used for Improper Purposes

22.   Courts within the Third Circuit have been clear that "access has been denied

where court files might have become a vehicle for improper purposes."  *In re Cendant Corp.*,

260 F.3d 183, 194 (3d Cir. 2001) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. at 589

(1978)); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (same);[25] *Leap Systems, Inc.*

*v. Moneytrax, Inc.*, 638 F.3d 216, 221 (3d Cir. 2011) (affirming district court's denial of motion

to unseal and further establishing that "improper purpose" is an appropriate basis for denying

---

[24]    *Id.* at 10 (emphasis added).

[25]    Honeywell relies on *Cendant*, 260 F.3d at 192-94, as setting forth a framework for its
motion to obtain the Rule 2019 Exhibits.  Notably, however, *Cendant* was not a case regarding
Rule 2019 submissions, and did not involve the various factors at play in asbestos bankruptcies
that were incorporated in the controlling Rule 2019 Orders.  To the contrary, *Cendant* was a class
action case that expressly held "because of the importance of selection of lead counsel to class
action plaintiffs" that "the test for overriding the right of access should be applied in this case
with particular strictness." *Id.* at 194.

access).  This is true in bankruptcy matters as well.  *See, e.g.*, *In re Orion Pictures Corp.*, 21 F.3d at 27 (2d Cir. 1994) ("[i]n limited circumstances, courts must deny access to judicial documents—generally where open inspection may be used as a vehicle for improper purposes.") (citations omitted); *In re Rivera*, 524 B.R. 438, 442 (Bankr. D.P.R. 2015) (explaining that § 107 "codifies the public's common law right to inspect and copy judicial records" but that the right "is not absolute" and can be overcome "if access is sought for an improper purpose").

23.     Indeed, the Delaware District Court relied on that very principle in the appeal of the Rule 2019 orders in the *Kaiser* case.  "Although Section 107(a) evidences a strong desire by Congress to preserve the public's right to access judicial records, that right is not absolute. Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose."  *Kaiser*, 327 B.R. at 554, citing *Orion*, 21 F.3d at 24, and *Nixon*, 435 U.S. at 597-98 n.8.  *Cf. Pittsburgh Corning*, 2005 WL 6128987, at *10.

24.     Finally, the Supreme Court itself has recognized that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."  *Nixon*, 435 U.S. at 598.[26]

**B.**     <u>The Movants Acknowledge Their Purpose in Seeking the Rule 2019 Exhibits, and That Purpose Is Improper</u>

      *1.     Honeywell and Ford Reveal Their Purpose to Use 2019 Exhibits to Accuse Plaintiffs of Fraud*

25.     Honeywell claims it "has significant and legitimate concerns about fraudulent claims filed against Honeywell in the tort system and against the NARCO Trust."  Motion at 4.

---

[26]     The *Nixon* court also emphasized that "[t]he few cases that have recognized such a right [of access] do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Nixon*, 435 U.S. at 599.

Honeywell thus supposedly "intends to produce the 2019 Exhibits to the NARCO Trust to be used in connection with the NARCO Trust's own review of claims that it receives from asbestos claimants." *Id.* at 5. Honeywell never, however, asserts that the NARCO Trust has requested such documents. Presumably, if the NARCO Trust had any use for such documents, it would require them as part of a claims submission. The NARCO Trust does not.

26.     Honeywell also asserts that the Rule 2019 Exhibits will be used in the tort system to ensure that "Honeywell appropriately compensates asbestos plaintiffs in the tort system, to the extent such plaintiffs have valid claims." *Id.* at 4-5. But that is itself a misuse of those Rule 2019 Exhibits and intentionally misconstrues the Rule 2019 Orders that prompted their submission.

27.     Ford likewise has stated its purpose is to use Rule 2019 Exhibits to accuse its litigation adversaries of fraud. Ford asserts that it "has significant and legitimate concerns about fraudulent claims filed against Ford in the tort system as a result of the lack of disclosure by asbestos claimants regarding the claims they have asserted or intend to assert against debtors and/or asbestos trusts" and "joins Honeywell's request for access to the 2019 Exhibits in connection with Ford's investigation into the pattern of widespread misrepresentations by asbestos plaintiffs and their lawyers disclosed for the first time in the Garlock proceeding." Ford Joinder at 1-2, 5.

### 2.     *Rule 2019 Statements Are Useless for the Movants' Stated Purpose*

28.     Rule 2019 statements cannot serve the purpose Honeywell and Ford have in mind. As this Court is well aware, Rule 2019 statements are not claims. Rule 2019 statements do not entitle anyone to the recovery of funds from a bankruptcy estate—or indeed any source

whatsoever.  And they are not discovery.  *See, e.g.*, *Kaiser*, 327 B.R. at 559.  Rather, they are administrative in nature.[27]  Any attempt to transform them into something more is illegitimate.

29.     In its Joinder, Ford suggests that a Rule 2019 statement is "tantamount to an allegation or admission of exposure to the debtor's alleged asbestos-containing products" because "Rule 2019 statements . . . necessarily constitute representations that the persons listed therein are creditors."  Ford Joinder at 4.  This is wishful thinking.  The orders pursuant to which attorneys filed these Rule 2019 statements say nothing about exposures to asbestos containing products, nor do they require any information about asbestos exposures to be provided whatsoever.  *See, e.g.*, Order Requiring Filing of Statement Pursuant to Fed. R. Bankr. P. 2019, *In re ACandS, Inc.*, No. 02-12687 (Bankr. D. Del. Aug. 25, 2004) (D.I. 1461).  "Extrapolating" specific factual admissions about exposures to asbestos products from a Rule 2019 statement is impossible.  As this Court has recognized,

> [N]otwithstanding the use of the word "creditor" in Rule 2019, individuals seeking legal counsel with respect to asbestos exposure may or may not have current claims and may or may not ever qualify as a claimant under § 524(g).  Nonetheless, they are represented by an attorney who is required to file a 2019 statement listing all those he represents who are or may be claimants, even if the claims are never allowable or allowed.

*In re ACandS*, 462 B.R. at 96.[28]  Even Ford admits in its paper that "the definition of 'creditor' is not restricted to those who have already filed, or intend to file, or have a good faith belief that

---

[27]     Even at the time the statements sought here were filed, Rule 2019 was an anachronism.  Originally designed to regulate "protective committees," those entities no longer existed.  *In re Premier Int'l Holdings*, 423 B.R. 58, 73 (Bankr. D. Del. 2010).  Indeed, five years ago, Rule 2019 was updated, making clear that it applied only to "groups, committees, and entities" "tak[ing] a position before the court," and not to passive representatives.  Fed. R. Bankr. P. 2019 advisory committee's note to 2011 amendment.  For most asbestos plaintiffs' firms, this effectively ended any obligation to file Rule 2019 statements in the first place.

[28]     Similarly, Judge Fitzgerald stated in an earlier hearing that "the fact that somebody has listed an individual as a client on a 2019 statement is not evidence that they are going to submit a

after further investigation and confirmation of a particular proposed chapter 11 plan they may be entitled to file, claims in the bankruptcy case or against an asbestos trust." Ford Joinder at 4. Logically, if being a creditor does not reveal whether a claimant has a basis for filing an asbestos claim, it is impossible for a Rule 2019 statement identifying a claimant as a creditor to be an admission of exposure to a particular asbestos product.

30.     And even if one were to falsely assume that everyone listed on a Rule 2019 statement is a creditor with a fully-formed basis for a claim, that basis does not necessarily involve exposure to a debtor's asbestos-containing products.   An individual with an asbestos-related disease may have, for example, a premises claim or a conspiracy claim.   Nevertheless, they would still be included on a Rule 2019 Exhibit.

31.     In this light, it should be no surprise that Rule 2019 statements are not useful in asbestos litigation.   As Honeywell and Ford point out, some Rule 2019 statements from a few asbestos bankruptcies in other jurisdictions without the Rule 2019 Orders in place have been available for some time.   But neither Honeywell nor Ford cite to any trial or appellate court handling an actual asbestos personal injury or wrongful death case finding a Rule 2019 statement to be an admission of exposure, or indeed useful in any way.[29]   This fact is damning to their supposed purpose and demonstrates a powerful countervailing concern against compelling disclosure.   Moreover, if Honeywell were to attempt to mislead state courts into thinking that Rule 2019 statements are evidence of exposure, that would be an improper purpose.

---

claim against the trust in the future." Hr'g Tr. at 44, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 13, 2010) (D.I. 7422).

[29]     Ford states that the bankruptcy court in *In re Garlock Sealing Techs.* relied on Rule 2019 filings.   Ford Joinder at 4.   That is incorrect.   Rule 2019 statements are not referenced in the January 2014 decision cited by Honeywell and Ford.

### 3.    The Movants' Improper Purpose Precludes the Relief Sought

32.    This Court can and should consider Honeywell and Ford's improper purpose in determining the access question.  Judge Fitzgerald specifically noted the inappropriateness of using requests for Rule 2019 Exhibits to support tort system claims of fraud, stating "[t]hat is wholesale fishing."  Hr'g Tr. at 51, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 13, 2010).  Similarly, Judge Stark's order likewise precluded such use.  *See In re Motions for Access*, 488 B.R. at 302.

33.    In *In re Premier International Holdings*, 423 B.R. 58 (Bankr. D. Del. 2010), the bankruptcy court, in denying a motion to compel performance of Rule 2019 obligations, observed: "the Official Committee, by filing its motion, is clearly engaged in a litigation tactic to apply pressure on it[s] current adversary, the Informal Committee of SFO Noteholders, as well as attempting to make an 'end run' around a previous ruling denying the Official Committee's request for discovery seeking virtually the same information." 423 B.R. at 75.

34.    Similarly, in *In re 50-Off Stores*, 213 B.R. 646, a bankruptcy court recognized the importance of the movants' "improper purpose" and refused to modify a sealing order where movants sought to access materials relating to the retention of the debtor's special counsel.  *Id.* at 647.  The court found that "[u]nder the facts of this particular case, this Court believes that a litigant's seeking to obtain information from a retention hearing involving the litigant's opposing counsel is an 'improper purpose' within the meaning of that term as used in *Nixon*, so that access should be denied."  *Id.* at 659-60.  The same rationale applies here.  *See also In re Am. Bus. Fin. Servs., Inc.*, No. 05-10203, 2008 WL 3906894, at *5 (Bankr. D. Del. Aug. 20, 2008) ("The Stipulated Protective Order allows the Trustee to use all of the confidential documents in defending himself in this adversary proceeding.  His efforts to use them in any other manner is not a legitimate purpose and therefore militates against disclosure.").

35.    The Motion clearly seeks information for use in other cases as an end run around properly limited discovery and the documents cannot serve the Movants' stated purpose: the attempt is illegitimate.  Such fishing expeditions, and the substantial waste of judicial resources they entail, are not a proper purpose.

## II.    SECTION 107 DOES NOT SUPPORT HONEYWELL'S ATTEMPT TO ACCESS THE RULE 2019 EXHIBITS

36.    Honeywell also asserts that it has a "specific statutory right of access to the 2019 exhibits" citing Section 107 of the Bankruptcy Code.  Motion at 10.  As an initial matter, it is not clear that Section 107 applies at all.  Section 107 applies to papers "filed in a case" and on "the dockets of a bankruptcy court."  11 U.S.C. § 107(a).  Under the 2019 Orders, the Rule 2019 Exhibits that Honeywell seeks were submitted to the clerk but were *not* filed on the public docket.  To the contrary, the 2019 Orders made such information "submitted pursuant to the . . . 2019 Orders unavailable on the public docket, except upon motion by a party and order of the Bankruptcy Court."  *Kaiser*, 327 B.R. at 557.

37.    In any event, Sections 107(b) and (c) protect the Rule 2019 Exhibits from disclosure, as explained below.

   A.    <u>The Rule 2019 Exhibits Are Protected From Disclosure Under Section 107(c) and its Common-Law Predecessor as Presenting an Undue Risk of Identity Theft and Other Unlawful Injury</u>

38.    By their nature, some materials submitted to the bankruptcy court may require special handling: "While the exception ought, as the cases indicate, be sparingly applied, the very existence of the exception demonstrates Congress' anticipation that the administration of bankruptcy cases might, by their very nature, require special intervention to protect some kinds of information from dissemination to the world."  *In re 50-Off Stores*, 213 B.R. at 654.  Section 107 codifies the common law regarding public access to judicial records, including the principle

that the public's right of access is not absolute.  *In re Joyce*, 399 B.R. 382, 386 & n.2 (Bankr. D. Del. 2009); *see also In re Georgetown Steel Co.*, 306 B.R. 542, 546 (Bankr. D.S.C. 2004) ("the Bankruptcy Code recognizes . . . that the public right to access is not absolute."); *Robbins v. Tripp*, 510 B.R. 61, 65-68 (E.D. Va. 2014) (explaining that § 107 "is best seen as furthering the common law spirit of providing reasonable public access to court business" and analyzing limitations on the right of access under both common law and § 107).[30]

39.    The Court must balance the common law presumption of access against the factors militating against access in Section 107 cases.  *In re Peregrine Sys., Inc.*, 311 B.R. 679, 689 (D. Del. 2004).  *See also Pittsburgh Corning*, 2005 WL 6128987, at *10 (Western Pennsylvania District Court ruling that, in response to a request for the Rule 2019 Exhibits, the Bankruptcy Court was free to hold that "countervailing concerns justify the continued protection of the information"); *Orion*, 21 F.3d at 26-27.  If the information does not represent trade secrets or confidential research, development or commercial information, then whether to permit access to the information is a matter left to the Court's discretion, and it requires the Court to examine the relevant facts and circumstances and then to balance the interests of the party opposing disclosure with that of the public.  *In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998).

40.    Privacy interests are among the potentially countervailing factors weighing against public access.  *Peregrine*, 311 B.R. at 690 ("The bankruptcy court was appropriately concerned with the privacy interests of third parties who were not before the court, and it is well

---

[30]    Honeywell notes in a footnote that "[t]he First Amendment is another legal basis in support of the right to access public records, and may provide even more robust protection." Motion at 14 n.6.  It also asserts that the Third Circuit "has not yet defined the scope of the First Amendment protection of access to civil proceedings." *Id.*  Beyond this passing mention, it has not supported any claim for access under the First Amendment.

established that a court has the power and discretion to strike a document in order to protect legitimate interests."). Given the history of the Rule 2019 Orders, privacy interests are certainly at stake here. *See Kaiser*, 327 B.R. at 560 (affirming Judge Fitzgerald's 2019 Orders where "the Bankruptcy Court is regulating access to the information because of privacy concerns related to the electronic case filing system," and holding that "Judge Fitzgerald's Rule 2019 Orders strike the appropriate balance").

41.     Indeed, courts have long recognized that protecting against the public disclosure of private information is a legitimate reason for regulating access to judicial records. *See, e.g.*, *LEAP Systems*, 638 F.3d at 222 (holding that a significant "privacy interest" in maintaining the confidentiality of a settlement agreement outweighed any public right of access to the agreement); *United States v. Smith*, 776 F.2d 1104, 1111-12 (3d Cir. 1985) (holding that an individual's privacy or reputational interests defeated a media organization's constitutional right of access as well as the public's common law right of access to charging documents in a criminal proceeding). As the Delaware District Court found in *Kaiser*, in designing a process whereby members of the public could file a motion to request access to the 2019 Exhibits, the Bankruptcy Court "str[uck] the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused." *Kaiser*, 327 B.R. at 560.[31]

---

[31]     Courts routinely deny motions to unseal where the privacy interests of third parties are at stake and where the potential for private harms outweighs the general right of public access. *See*, *e.g.*, *Glass Dimensions, Inc. v. State St. Corp.*, No. CIV.A. 10-10588-FDS, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (denying motion to unseal documents where party had a "legitimate and significant interest in protecting the sensitive business information" contained in documents filed under seal and the "privacy interests of third parties" were at stake); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. CIV.A. 08-4168 MLC, 2015 WL 1138400, at *3-4 (D.N.J. Mar. 11, 2015) (affirming magistrate judge's denial of motion to unseal case documents where it was found that the private harms, including the possibility of nonparty disclosures, outweighed the presumption of public access); *Starks v. Meisner*, No. 14-CV-844-JDP, 2016 WL 1259434, at *2

42. Honeywell disingenuously asserts that "in more than one third of all bankruptcy cases in which counsel to asbestos personal injury claimants filed statements and exhibits pursuant to Bankruptcy Rule 2019, such statements and exhibits are now, and have always been, publicly available." Motion at 11. Honeywell then cites to a number of supposed "examples." *Id.*

43. First, the only relevant Rule 2019 Exhibits are those at issue in the Nine Cases. As Judge Fitzgerald noted when faced with this argument, "[w]e cannot speak to why 2019s in cases in other courts are or are not on the public docket but note that what occurred in those cases has no applicability here." *In re ACandS*, 462 B.R. at 100 n.18.

44. More importantly, Honeywell is wrong. Many of the bankruptcy courts cited by Honeywell allowed the Rule 2019 Exhibits to be kept off the public docket, and did so expressly or in practice:[32]

- Some orders expressly permit filing 2019 statements under seal only to be lifted for good cause. *See Final Order Authorizing the Filing of Exhibits and Attachments to Rule 2019 Statements Under Seal, In re G-I Holdings, Inc.*, No. 01-30135 (Bankr. D.N.J. Feb. 24, 2009) (D.I. 8919);

---

(W.D. Wis. Mar. 30, 2016) (denying motion to unseal sentencing documents that may contain "intimate information about victims and other non-parties").

[32] Even if the information in the Rule 2019 Exhibits were available in the records of other courts in other proceedings, "there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 (1989) (holding that third party request for contents of law enforcement records could reasonably be expected to invade privacy). "An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994) (finding that disclosure of employees' home addresses to union prohibited by Privacy Act). Similarly, the fact that some of the information for some of the underlying asbestos victims might be available in some other courts does not undercut their privacy interests here.

- Some required 2019 statements to be kept off the public electronic docket. *See* Amended Order Requiring Compliance with Rule 2019 of the Federal Rules of Bankruptcy Procedure, *In re CFB Liquidating Corp.*, No. 01-45483 (Bankr. N.D. Cal. May 6, 2011) (D.I. 375);

- Other 2019 orders were entered in unusual situations, such as in response to a motion by an objector to a prepack bankruptcy, complaining about non-compliance with 2019. *See* Order Requiring Entities Representing One Or More Creditors To File Verified Statement Pursuant To Fed. R. Bankr. P. 2019(a), *In re Mid-Valley, Inc.*, No. 03-35592 (Bankr. W.D. Pa. Apr. 21, 2004) (D.I. 1089). Even in that situation, key portions of 2019 statements were held from the electronic docket. *See, e.g.*, D.I. 1275 (docket reflecting that "Exhibits are not scanned and are available in hard copy for review and copying at the Office of the Clerk or Campbell & Levine, LLC at 412-261-0310.") and D.I. 1362 (docket reflecting that "Exhibits are not scanned and are kept in paper copy.").[33]

45.    Moreover, in yet other asbestos bankruptcies cited by Honeywell,[34] the courts did not formally enter Rule 2019 orders at all, leaving it up to the law firms themselves to determine appropriate compliance with the Rule. In such situations, certain firms submitted the Rule 2019 Exhibits off the docket. *See*, *e.g.*, Verified Statement of the Lanier Law Firm, P.C. Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure, *In re Quigley Co.*, No. 04-15739 (Bankr. S.D.N.Y. May 2, 2006) (D.I. 755) ("All the relevant information identifying the Creditors and the nature of their claim are contained in exhibits which have not been filed, but have been provided in CD format to the Clerk of the court."); Verified Statement of Scott O.

---

[33]    Honeywell also references the *Porter-Hayden* and *Garlock* bankruptcies in the Fourth Circuit, citing consent orders granting Honeywell access to Rule 2019 Exhibits in those cases. Motion at 11. Of course, those cases are irrelevant as (1) they do not concern Judge Fitzgerald's 2019 Orders; and (2) consent orders have no precedential effect. *See Damn I'm Good Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357, 1362 n.18 (S.D.N.Y. 1981) (stating that "order was issued by consent and thus has no precedential value").

[34]    In the *American Capital Equipment* (No. 01-23987 (Bankr. W.D. Pa.)) bankruptcy, cited by Honeywell, only three Rule 2019 Statements appear to have been filed, and it is unclear whether and to what extent such information was submitted off the docket. That case was ultimately converted to a Chapter 7 liquidation, to which Rule 2019 does not apply. Similarly, in *In re Burns & Roe Enters., Inc.*, No. 00-41610 (Bankr. D.N.J.), also cited by Honeywell, it appears that only one 2019 Statement was filed by an asbestos plaintiffs' firm.

Nelson, Maples & Lomax, P.A., Under Bankruptcy Rule 2019, *In re Federal-Mogul Glob. Inc.*, No. 01-10578 (Bankr. D. Del. Mar. 20, 2007) (D.I. 582593335) (noting "CDs being provided to the Court").

46.    Section 107(c) of the Bankruptcy Code recognizes the court's supervisory power and provides that a bankruptcy court "may protect an individual, with respect to [certain] types of information to the extent the court finds that disclosure . . . would create undue risk of identity theft or other unlawful injury to the individual or the individual's property."  Those types of information include "means of identification (as defined in [18 U.S.C. § 1028(d)])," 11 U.S.C. § 107(c)(1), which include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," 18 U.S.C. § 1028(d).  The Rule 2019 Exhibits include precisely such information:  clients' names, addresses, and in some instances full social security numbers.

47.    Section 107(c)(2) provides that bankruptcy courts also "may protect" any "[o]ther information" in a paper that contains any "means of identification."  The Rule 2019 Exhibits state each listed person's asbestos-related disease alongside that person's personal identifying information.  Such medical information is also protectable under section 107(c)(2).  *See In re ACandS*, 462 B.R. at 97 ("[A] claim held by an asbestos personal injury victim is highly intimate in nature").

48.    In addition, the Rule 2019 Exhibits sometimes include medical records containing not only full or partial social security numbers, but also such things as family histories (including causes of death of family members), results of physical examinations, chest x-rays, and lung function tests, and other similarly sensitive medical information.  This too is highly sensitive and personal information, and deserving of full protection from access or dissemination.  *See*, *e.g.*,

*Fulmore v. United Parcel Serv., Inc.*, Nos. 7:11-CV-18-F, 7:11-CV-91-F, 2012 WL 6016731, at

*1 (E.D.N.C. Dec. 3, 2012) (finding the common law right of access overcome because "plaintiff

has demonstrated that the documents in question contain personal and confidential information,

including information relating to his medical records and medical condition, information which

is of utmost importance to him but not generally available to the public or bearing importance to

any public matters").

49.     The Third Circuit has recently expounded on the important privacy interests in

medical information.   "We have recognized the important privacy interest in one's medical

records.  The right to privacy is a consideration in the balancing process that courts conduct in

deciding whether to file a document under seal.  In light of the District Court's treatment of the

medical records and because in this instance, the right to privacy outweighs the public's right of

access to materials filed in litigation, we grant ACHS' motion for leave to file Everett's medical

records under seal."  *See Everett v. Nort*, 547 F. App'x 117, 122 n.9 (3d Cir. 2013) (citations

omitted).

50.     Importantly, section 107(c) requires a court to determine whether "disclosure . . .

would create undue risk of identity theft or other unlawful injury."  This requires a balancing test

to determine whether the value of providing access overcomes the risk of "identity theft or other

unlawful injury."  Here, the information in the Rule 2019 Exhibits is of no legitimate value to the

public, but public release of personally identifying information and medical information and

records certainly carries with it the threat of identity theft or other unlawful injury, such as

tortious invasion of privacy or tortious harassment. *See supra* ¶¶ 48-49.

B.    The Rule 2019 Exhibits Are Protected From Disclosure Under Section 107(b)(1) as Confidential Commercial Information

51.    Section 107 provides for several exceptions to the public right of access, and § 107(b)(1) mandates the protection of certain types of information, including "confidential commercial information."    It provides that upon the "request of a party in interest, the bankruptcy court **shall**, and on the bankruptcy court's own motion, the bankruptcy court may . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information."    (emphasis added).    Determinations as to whether information falls within the ambit of Section 107(b)(1) are made on a case by case basis.    "The court determines whether the subject documents fall within the provisions of § 107(b) and the appropriate protective remedy if they do."    *In re Barney's, Inc.*, 201 B.R. 703, 707 (Bankr. S.D.N.Y. 1996).

52.    Confidential commercial information has been defined as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations" of the entity seeking the order, *Orion*, 21 F.3d at 27 (citations omitted), and information that, if disclosed, would "have a 'chilling effect on [the entity's business] . . . ultimately affecting the viability of [the entity].'"    *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (citation omitted).

53.    The Rule 2019 Exhibits contain confidential commercial information.    This includes the identity of the submitting law firms' clients, their addresses, and information regarding their potential claims, which are protectable under Section 107(b)(1).    *See, e.g.*, *Georgetown Steel Co.*, 306 B.R. at 548 (protecting the identification of key employees and the specific amounts proposed to be paid to retain them as employees of the debtor under Section 107(b)(1)); *Borders*, 462 B.R. at 48 (protecting the identities of key employees, vendors and certain confidential financial information of the parties to a purchase agreement under Section

- 24 -

107(b)(1)); *In re Frontier Grp., LLC*, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000) (importance of physician list to the debtor's business was sufficient grounds for the list to constitute confidential commercial information entitled to protection under Section 107(b)(1)).

54.     Also important are the contents of the exemplars, or even actual copies, of the submitting law firms' retention agreements[35] and the confidential terms therein. *See* Rule 2019 Orders.  Such confidential contractual terms can clearly constitute confidential commercial information. *See, e.g.*, *In re Nortel Networks Inc.*, No. 09-10138 KG, 2011 WL 1661524, at *1-3 (Bankr. D. Del. May 2, 2011) (sealing entire "Side Agreement" related to "Stalking Horse" asset sale agreement under Section 107(b)(1)); *In re Visteon Corp.*, No. 09-11786, 2010 Bankr. LEXIS 5461, at *1-3 (Bankr. D. Del. Apr. 9, 2010) (sealing purchase agreement under Section 107(b)(1)).  Indeed, Judge Stark cited Section 107(b)(1) in confirming that Garlock would not be provided access to retention agreements. *See In re Motions for Access*, 488 B.R. at 302 n.19.

55.     The Rule 2019 Exhibits also contain information that could properly be characterized as work product, such as the pre-litigation or preliminary determinations that the listed individuals might be considering a claim against the debtor, as well as confidential commercial information, which some courts have likewise fairly held to be within Section 107(b).  *See In re 50-Off Stores*, 213 B.R. at 655-56 (work product falls within 107(b)(1) protection); *In re JMS Auto. Rebuilders, Inc.*, No. 01-05600 DDP, 2002 WL 32817517, at *3 (C.D. Cal. Jan. 15, 2002) (affirming bankruptcy court decision where "bankruptcy court, therefore, ordered the materials sealed as confidential research and work product pursuant to § 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure"); *In re Transbrasil S.A.*

---

[35]     Honeywell disclaims any desire to receive retention agreements, but those documents are interspersed among the thousands of Rule 2019 Exhibits.

*Linhas Aereas*, No. 11-19484-BKC-AJC, 2014 WL 1655990, at *1 (Bankr. S.D. Fla. Apr. 25,

2014) (same).  Such information is fully protectable under Section 107(b) here as well.

## III.    HONEYWELL IGNORES THE STRINGENT RESTRICTIONS PREVIOUSLY IMPOSED BY THIS COURT AND THE DISTRICT COURT IN GRANTING LIMITED ACCESS

56.    Honeywell disingenuously states in its Motion that the District Court "has already

held that the 2019 Exhibits in th[ese] chapter 11 case[s] are subject to a presumptive right of

access and that no party had rebutted this presumption." Motion at 11 (citing *In re Motions for

Access*, 488 B.R. at 298).   Honeywell then cites *consent orders* from *other courts* for the

proposition that it should be given unrestricted access to those Exhibits.  *See supra* note 33.  In

so doing, Honeywell ignores the fact that the limited access granted by District Court Judge

Stark and implemented by this Court as to these **same** documents in these **same** cases, was

subject to significant restrictions.  The District Court stated that the Rule 2019 Exhibits implicate

"privacy interests of the individuals identified" therein, and thus provided access to them only

"subject to certain limitations, limitations that are intended to substantially reduce any threat to

privacy interests."  *In re Motions for Access*, 488 B.R. at 301.

57.    Specifically, and as described more fully above, *see supra* ¶¶ 16-17, Garlock

could only use the documents or their information in the context of the aggregate estimation

proceedings in its own bankruptcy, could not publicly disclose the documents or the information

therein unless "in an aggregate format that does not identify any individual represented person,"

could not receive or possess any retention agreements found in the 2019 Exhibits, and could only

receive the documents after the court overseeing its bankruptcy entered a protective order that

would further limit the use and transfer of the documents.[36]  Garlock also could not "share or

---

[36]    *See* Implementing Order at 1-4.

distribute any of the 2019 Exhibits (in whole or in part) with any person or entity other than what was expressly authorized by an Order of the NCWB, DEB, or PAWB."[37]

58.    And this conclusion by the District Court and this Court was well supported. Even where the presumption of a public right of access is not rebutted, a court may still "strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused."  *Kaiser*, 327 B.R. at 559-60 (approving court control over who may access Rule 2019 Exhibits and how they may be used by keeping them off of the public docket and allowing access only after motion and order).

59.    Further, Honeywell's argument presents this Court with a false dichotomy: either a public right of access to these documents exists and everyone must be given unrestricted access or such a right does not exist and no one gets access.  That is not the law.

60.    Courts have discretion not only in whether certain information in court documents should remain protected, but also to what extent and how.  *See, e.g.*, *In re Motions for Access*, 488 B.R. at 302 (imposing limitations on access and use).  Here, as previously recognized by this Court, the District Court, and the Third Circuit, restricting access is comfortably within this Court's discretion.

---

[37]    Protocol Order at 10.

## CONCLUSION

For the foregoing reasons, the NARCO TAC respectfully requests that the Motion be denied.

Dated: July 26, 2016                    Respectfully submitted,

                                        **A.M. SACCULLO LEGAL, LLC**

                                        */s/ Thomas H. Kovach*
                                        Anthony M. Saccullo (No. 4141)
                                        Thomas H. Kovach (No. 3964)
                                        27 Crimson King Drive
                                        Bear, Delaware 19701
                                        Telephone: (302) 836-8877
                                        Facsimile: (302) 836-8787
                                        ams@saccullolegal.com
                                        kovach@saccullolegal.com

                                                -and-

                                        **CAPLIN & DRYSDALE, CHARTERED**
                                        Elihu Inselbuch
                                        600 Lexington Avenue, 21st Floor
                                        New York, NY  10022
                                        Telephone:  (212) 379-6000
                                        Facsimile:  (212) 379-6001
                                        E-mail: einselbuch@capdale.com

                                        **CAPLIN & DRYSDALE, CHARTERED**
                                        Ann C. McMillan, Esq.
                                        Kevin C. Maclay, Esq.
                                        Todd E. Phillips, Esq.
                                        One Thomas Circle, NW
                                        Suite 1100
                                        Washington, DC  20005
                                        Telephone:  (202) 862-5000
                                        Facsimile:  (202) 429-3301
                                        E-mail: amcmillan@capdale.com;
                                        kmaclay@capdale.com;
                                        tphillips@capdale.com

                                        *Co-Counsel for the North American*
                                        *Refractories Company Asbestos Personal*
                                        *Injury Settlement Trust Advisory Committee*