**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-1139 (KG) |
| | ) | |
| Reorganized Debtors. | ) | **Re: D.I. No. 32673** |

## OPINION RE MOTION OF THE REORGANIZED DEBTORS TO ENFORCE DISCHARGE & INJUNCTION OF PLUM CREEK TIMBER CO.'S CLAIM

*Co-Counsel for Reorganized Debtors*

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

KIRKLAND & ELLIS L.L.P.
John Donley, Esquire
Lisa Esayian, Esquire
Ryan Matthew Hehner, Esquire
Bryan Vincent Uelk, Esquire
300 North LaSalle
Chicago, IL  60654

THE LAW OFFICES OF ROGER HIGGINS
Roger J. Higgins, Esquire
111 East Wacker Drive, Suite 2800
Chicago, IL  60601

*Counsel for Plum Creek Timber Co.*

POLSINELLI PC
Shanti M. Katona, Esquire
Jarrett Vine, Esquire
222 Delaware Avenue, Suite 1101
Wilmington, DE  19801

## INTRODUCTION

W.R. Grace & Co. and its affiliated reorganized debtors (collectively, "Grace" or the "Debtors") confirmed and consummated a Plan of Reorganization (the "Plan") (D.I. 26368) on January 31, 2011 (D.I. 26155), effective on February 3, 2014 (D.I. 31700). The Plan provides for a general discharge, a specific discharge of asbestos property damage liabilities and for a related discharge injunction. The Debtors have moved (the "Motion") to enforce the discharge and injunction provisions of the Plan against the claim of Plum Creek Timber Co. ("Plum Creek").

Federal Rule of Bankruptcy Procedure 3003(c)(3) requires proofs of claim to be filed prior to a bar date established by the bankruptcy court. After this bar date, a claimant cannot participate in the reorganization unless they establish sufficient grounds for the failure timely to file a proof of claim. *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

The notice Grace provided (the "Bar Date Notice") stated "any creditor having a claim against the Debtors, no matter how remote or contingent, must file a proof of claim before the Bar Date." D.I. 1926-3, ¶ 9. The Bar Date Notice further defined asbestos property damage claims ("Asbestos PD Claims") very broadly and inclusively as:

> Claims **as of the time immediately preceding the Bar Date** that relate, for example to the cost of removal, diminution of property value or economic loss caused by asbestos in products manufactured by the Debtors or from vermiculite mined, milled, or processed by the Debtors. More specifically, Asbestos Property Damage Claims are those claims against, or any debt, obligation or liability of, one of more of the Debtors, whether in the nature

1

of or sounding in tort, contract, warrant or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, property damage, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by asbestos in products or materials, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors or from vermiculite mined, milled, or processed by the Debtors arising or allegedly arising, directly, or indirectly , from acts or omission of one of more of the Debtors, including, but not limited to, all claims, debtors, obligations or liabilities for compensatory and punitive damages.

D.I. 1926-3 (emphasis original).

The Court approved and entered the Bar Date Notice and Bar Date Order on April 22, 2002.  These covered all pre-Petition claims relating to asbestos property damage, as well as non-asbestos claims and medical monitoring claims.  D.I. 1960 and 1961.

The Bar Date Notice clearly informed recipients that they were responsible for filing a proof of claim even if the claim was remote and contingent.  The Bar Date Notice provided that:

1.    WHO MUST FILE A PROOF OF CLAIM.

You MUST file a Proof of Claim if you have a **CLAIM** against the Debtors including but not limited to any **pre-petition** Non- Asbestos Claim or any **present** Asbestos Property Damage Claim . . .

* * *

**Therefore, any creditor having a claim against the Debtors, no matter how remote or contingent, must file a proof of claim before the Bar Date.**

(Capitalization and bold in original).

2

The Notice also described the consequences for not filing a proof of claim:

9.     EFFECT OF NOT FILING A CLAIM.

ANY HOLDER OF A . . .   ASBESTOS PROPERTY DAMAGE CLAIM  . . .
WHO FAILS TO FILE A PROOF OF CLAIM ON OR BEFORE THE BAR
DATE FOR ANY  CLAIMS SUCH CLAIMANT HOLDS AGAINST ANY
OF THE DEBTORS . . . **SHALL BE FOREVER BARRED, ESTOPPED AND
ENJOINED** FROM ASSERTING ANY SUCH CLAIMS . . .

1926-2, p. 3, ¶¶ 1 and 9.  (Capitalization and bold in original.).

Thus, the definition of Asbestos PD Claims was broad and the consequences of not

filing a proof of claim severe.  The definition included claims for the cost of removing

asbestos containing material as well as indirect claims for economic loss and loss in

property value.  D.I. No. 1926-2.  The Court will grant the Motion to enforce the discharge

and injunction of Plum Creek's claim as explained in this Opinion.

JURISDICTION

The Court has jurisdiction over this matter and the judicial authority to issue a

final order pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to

28 U.S.C. 157(b).

FACTS

Plum Creek is one of the largest private landowners in the United States,

managing more than 6 million acres in 19 states.[1]  From 1963 until 1990, Grace owned and

operated a mine in Libby, Montana.[2]  There, miners extracted vermiculite, a natural,

---

[1] Letter, dated 10/7/15, from Ben Ellison to Deborah D. Williamson.
[2] *Id.*, at 2.

3

lightweight mineral which is fire-resistant and serves as a good insulation product.[3]
Vermiculite is non-asbestos but there was also a deposit of asbestos at the mine.[4]  The
vermiculite from Libby was contaminated with asbestos and when processed the
vermiculite generated asbestos infected airborne dust.[5]

The Libby asbestos matters were highly publicized, both nationally and locally,
since the early 2000s.  Libby was the subject among others of a PBS documentary and
reports by NBC's Dateline, CBS's 48 hours, and ABC's 20/20.  When Grace filed for
bankruptcy, there was heavy publicizing, including a number of Libby – related lawsuits.
One of the lawsuits was a class action which included Plum Creek in the class.[6]  The
lawsuit was for environmental contamination and loss of property rights arising from
Grace's vermiculite mining.  The suit sought remediation and damages.

Beginning in 1999, the Environmental Protection Agency ("EPA") sampled air and
dust around Libby and investigated asbestos levels.[7]  The testing was publicized and
thoroughly covered by local and national news.[8]  In March 2001, the EPA filed a lawsuit
in the Montana federal district court seeking recovery of costs incurred in response to
asbestos issues relating to Grace.[9]  On April 2, 2001, the Debtors filed voluntary Chapter

---

[3] *In re W.R. Grace*, 475 B.R. 34 (D. Del. 2012).

[4] *Id.*

[5] *Id.*

[6] *Tennison v. W.R. Grace & Co.*, Case No. CV-00-035-M.

[7] 67 Fed. Reg. 65315 (Oct. 24, 2002).

[8] Objection of Plum Creek Timber Co. to the Reorganized Debtors' Motion to Enforce
Discharge and Injunction of Plum Creek Timber Co.'s Claim (the "Objection") ¶¶ 5-6.

[9] Objection ¶3;

11 petitions and continued to operate as debtors in possession.  On April 22, 2002, the

Court entered an Order setting March 31, 2003, as the bar date (the "Bar Date") in Grace's

Chapter 11 case.  D.I. 1963.

Acting cautiously, the Debtors mailed the Bar Date Notice to every occupant of a

property in Libby.[10]  Grace mailed the Bar Date Notice to Plum Creek's address in Libby,

Montana on June 27, 2002, "Current Occupant, 126 Pipe Creek Road, Libby, MT 59923."

Plum Creek has admitted that its physical and mailing address was the foregoing[11].  Thus,

Plum Creek received the Bar Date Notice by mail nine months before the Bar Date.

In the midst of the EPA activity on its timberland, Plum Creek adopted a

"precautionary approach" to its commercial activities in potentially affected areas in

Libby.[12]  The precautionary zone included more than 30,000 acres of trees where timber

was not to be harvested.  On October 24, 2002, the EPA listed Libby on its National

Priorities List, making it a Superfund site.[13]  A Superfund site is any land in the United

States that has been contaminated by hazardous waste and identified by the EPA as a

candidate for cleanup because it poses a risk to human health and/or the environment.[14]

The EPA then closed Rainy Creek Road, a Forest Service access road to Plum Creek's

---

[10] Declaration of Service of Craig A. Zink, dated June 21, 2002.
[11] Plum Creek Responses, 2/22/16, at 1.
[12] Declaration of Tom Ray, Exhibit A, D.I. 32697 ("Ray Declaration") ¶ 12.
[13] 67 Fed. Reg. 8336 (Feb. 26, 2002).
[14] *Id.*

property.  The closure prevented Plum Creek from reaching its timber.[15]  While the cost to Plum Creek of this testing and lack of access to its timberland is in dispute, both parties acknowledge that the basis of the testing was concerns about asbestos levels in Libby, Montana.[16]  The testing was also common knowledge as both local and national news outlets covered the EPA's testing as well as public concerns regarding asbestos levels.[17]

Plum Creek also assessed the affect of the asbestos exposure.  Plum Creek produced the "Grace Risk Assessment," a series of documents that included mapping and sampling[18].  The "Grace Risk Assessment" took place by November 2002.

In late 2002, Plum Creek approached the EPA to determine whether it was dangerous to human health to continue logging in the area or if there were recommended sampling strategies.[19]  In the course of these communications, Jim Christiansen at the EPA, sent an email on February 18, 2003 (more than one month before the Bar Date) to Jerry Wolcott of Plum Creek stating that Plum Creek should assume a "worst case scenario" and that "contamination could be present in soil, in vegetative debris on the soil surface, on surfaces of vegetation and trees, and even incorporated into vegetation and timber (e.g. bark)."[20]  The email then established a sampling procedure for bark.[21]

---

[15] Plum Creek 2/22/16 Responses, ¶ 7.
[16] *Id.*
[17] Newspaper articles gathered in Exhibit L to the Motion.
[18] 2002, 2003 & 2004 Plum Creek's "Grace Risk Assessment," Motion, Exhibit M.
[19] 2002, 2003 & 2004 Plum Creek's "Grace Risk Assessment," Motion, Exhibit M.
[20] Motion, Exhibit N.  (2/18/03 emails)
[21] *Id.*

While sampling had yet to be conducted, Wolcott acknowledged the possibility that "[t]he worst scenario would be detection of large amounts of [vermiculite], which would likely preclude any logging."[22]

Further, on March 7, 2003, a few weeks before the Bar Date, Western News published an article reporting that "The Environmental Protection Agency is providing the U.S. Forest Service and Plum Creek Timber Co. with guidance on how to determine if it's safe to log timber stands near the former W.R. Grace vermiculite mine."[23]  The article further reported that a beetle – killed tree harvest did not take place because there was uncertainty about risk from asbestos.[24]

On March 28, 2003, the EPA filed a timely proof of claim.  The claim asserted environmental contamination at the Superfund site in Libby, along with others.[25]  The claim asserted that Grace was liable under an administrative order issued pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and a judicial consent decree.[26]

Between 2004 and 2005, the EPA requested that Plum Creek contribute funds for testing.[27]  How much Plum Creek spent is disputed by the parties: Grace claims it was

---

[22] *Id.*

[23] Motion, Exhibit L (2002–2003 Newspaper Articles from Plum Creek's files).

[24] *Id.*

[25] Motion of Plum Creek Timberlands, L.P. to Allow Late Filing of Proofs of Claim (the "2010 Motion").  D.I. 25040, ¶ 11.

[26] *Id.*

[27] Ray Declaration ¶ 15.

$100,000, Plum Creek acknowledges this was the amount a forester had estimated for the testing, but claims that using its business judgment, it declined to fund such testing.[28]

On September 7, 2007 the EPA, Grace and Kootenai Development Company ("Kootenai") entered into an "Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study" (the "Settlement Order") with respect to the Libby Superfund site.[29]   Under the Settlement Order, both Grace and Kootenai were jointly and severally liable for remedial action and payment of response costs at the site.[30]   Plum Creek was not party to the Settlement Order or to the negotiations.[31]

On May 6, 2010 a draft report prepared by EPA (the "EPA Draft Report") raised the issue of whether Plum Creek's timberlands were unsafe to log because of the presence of asbestos (of the vermiculite variety) released into the atmosphere by one or more of the Debtors' mining operations near Libby, Montana.[32]   The EPA Draft Report concluded that there was a need to undertake various types of testing, sampling and analysis in OU3 (the label for the affected area).[33]   Plum Creek owns approximately 5,000-6,000 acres of

---

[28] *Id.*, Motion, 13 (citing to a handwritten note containing general calculations regarding testing).
[29] 2010 Motion ¶ 12.
[30] *Id.*, Exhibit D, 7-8.
[31] 2010 Motion, ¶ 12.
[32] Objection, Exhibit C, Section 1.2, at 2-3.
[33] Objection, ¶ 16 (citing Exhibit C, Section 2.1).

timberland within OU3.[34]  The report acknowledged that there were areas very likely to

be of concern to human health.[35]  Plum Creek learned of the EPA Draft Report on or about

May 21, 2010 and subsequently retained bankruptcy counsel.[36]

On June 7, 2010, Plum Creek Timber Company, Inc., filed proofs of claim with Rust

Consulting against Kootenai and Grace.  Plum Creek then determined that it should file

the claim and submitted an amended proof of claim on June 30, 2010.[37]  No confirmation

order had yet been entered with respect to Debtors' Plan.[38]  Grace and Plum Creek agreed

that Plum Creek would withdraw the motion without prejudice pursuant to the Tolling

Agreement Order (discussed below).

On August 3, 2010, the Court entered an Order Approving Tolling Agreement

Regarding Plum Creek's Motion to Allow Late Filing of Proofs of Claim (the "Tolling

Agreement Order").  D.I. 25154.  Plum Creek's initial motion to allow late proofs of claim

was then withdrawn without prejudice.  Pursuant to the Tolling Agreement Order, all

related matters were tolled until the effective date of the Plan "at which point Plum Creek

could re-file the Motion in the Bankruptcy Court or seek other appropriate relief."  The

Tolling Agreement Order specifically states that the passage of time from June 7, 2010

---

[34] 2010 Motion ¶16.

[35] *Id.*, ¶ 15-16.

[36] *Id.*, ¶ 17.

[37] *Id.*, Exhibit D, Exhibits 1-2.

[38] *Id.*, ¶ 22.

until the time that Plum Creek's claims are resolved shall have no effect and shall not be used to the detriment of Plum Creek.

<u>ANALYSIS</u>

The Motion sets forth two bases on which the Court should grant Plum Creek leave to file its proof of claim after the Bar Date. Plum Creek argues that it did not receive notice to satisfy due process because there was not scientific certainty as to whether vermiculite could be absorbed into tree bark in its timberlands. Alternatively, Plum Creek argues that its failure to file a timely claim is the result of excusable neglect.

There are certain legal truths about notice. First, a known creditor must receive actual notice, but an unknown creditor is entitled to notice by publication. *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009). A "known" creditor is known or reasonably ascertainable; and an "unknown" creditor has conjectural or future interests and its identity does not come to the knowledge of the debtors. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 458, 485 U.S. 478, 490 (1988); and *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950).

As previously mentioned, the Asbestos PD Claims include claims that relate to "diminution of property value, environmental damage, economic loss and property damage" which resulted from asbestos products or from vermiculite which Debtors mined, milled or processed. Plan § 1.1(19). The Case Management Order in the Plan addresses Asbestos PD Claims and provides the procedure for a claimant to bring a post-effective date claim. First, the claimant files a proof of claim addressing factors that relate

to discharge.  The claimant must then provide information.  If Grace believes the claim was discharged, it must file a motion to enforce the discharge.  If the Court then finds the claim was not discharged, the claimant may prosecute the claim against the PD Trust post-effective date claim.  If the Court finds the claim was not discharged, the claimant may prosecute the claim against the PD Trust.

Notice to Plum Creek

Plum Creek argues that it was not until the end of 2014 that it had knowledge that the contamination of its trees had occurred and that the contamination was hazardous to human health.  The Court finds that Plum Creek received sufficient notice to satisfy due process concerns as well as the requirements in the Bankruptcy Rules.

Plum Creek received actual notice.  However, in arguing alternatively that Plum Creek was only entitled to publication notice, Grace correctly relies on a District Court case considering the same issue of notice required to an unknown creditor.  In *PacifiCorp*, the District Court rejected attempts by current and former owners of a former Grace vermiculite processing site in Salt Lake City to file late claims less than two years after the Bar Date.  *See PacifiCorp and Vancott Bagley Cornwall & McCarthy v. W.R. Grace,* 2006 WL 2375371 (D. Del. Aug. 16, 2006).  The District Court found that the Debtors had no obligation to look beyond their books and records to determine the existence of creditors.  *Id.* at *9 (citing *Chemetron*, 72 F.3d 341 (3d Cir. 1995)).

Further, in addition to publication notice Plum Creek had *actual notice* of its claims. As stated, the Debtors mailed the Bar Date Notice to every occupant of a property in Libby.  There is a presumption that an item properly addressed and mailed is timely received.  *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002).  Plum Creek has not disputed its receipt of this notice.

Plum Creek focuses its argument on the claim that it had no notice that it was even possible that asbestos could be incorporated into tree bark, implying that the scientific understanding of asbestos had not progressed far enough before the Bar Date.  Yet, an email from Jim Christiansen at the EPA, sent on February 18, 2003 to Jerry Wolcott of Plum Creek clearly stated the risk of contamination was a serious risk.  The email then goes on to establish a sampling procedure for bark.  While sampling had yet to be conducted, Wolcott acknowledged the possibility that "[t]he worst scenario would be detection of large amounts of [vermiculite], which would likely preclude any logging."[39] The e-mail together with the Bar Date Notice provided Plum Creek with the incentive it needed to file a proof of claim by the Bar Date.  Plum Creek and others learned from the Bar Date Notice that claims relating to vermiculite were to be filed or lost.  Given the EPA actions, combined with the Bar Date Notice, Plum Creek knew to submit a proof of claim and did not in a timely fashion.

---

[39] Motion, Exhibit N.

Scientific certainty is not the standard to determine whether a party had a claim. Both parties agree that the decision in *Grossman's* should govern this case.[40] *Jeld-Wen, Inc., f/k/a Grossman's Inc. v. VanBrunt* (*In re Grossman's*), 607 F.3d 114 (3d Cir. 2010).  Under *Grossman's* Plum Creek had a claim before the Bar Date.  *Grossman's* held that a "'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code."  *Id.* at 125.  "In determining whether an asbestos claim has been discharged, the court may wish to consider, inter alia, the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)."  *Id.* at 127.  All of the foregoing weigh against Plum Creek and its claim.

Plum Creek knew well before the Bar Date that there was a real, or at least a truly potential, problem with its timber and asbestos.  The EPA had made the issue abundantly

---

[40] The Future Asbestos-Related Property Damage Claimants and Holders of Demands argue that whether Plum Creek had a "claim" is governed by the now superseded *Avellino v. M. Frenville Co.* (*In re M. Frenville Co.*), 744 F.2d 332 (3d Cir. 1984) as the Bar Date occurred before the *Grossman's* decision.  *Frenville* had held that a bankruptcy claim arises when the right of payment accrues.  The Court does not find this reasoning persuasive.  Further, Plum Creek's claim would have met the state law definition of a claim at the time, thus even satisfying *Frenville*.

clear to Plum Creek.  Grace provided Plum Creek with both actual notice and publication notice of the Bar Date.  It does not matter whether Plum Creek was a known or unknown creditor since Grace provided both actual notice and abundant and wide-spread publication notice of the Bar Date.

Plum Creek was told prior to the Bar Date that there was the possibility that asbestos had been incorporated into the bark of the trees and that it was possible that due to such exposure future logging would be precluded.  Importantly, Plum Creek does not dispute this, it simply argues that there was no scientific certainty that the property was contaminated or to what extent.  Plum Creek's insistence that scientific certainty has relevance as a standard in this matter is squarely inconsistent with the language of *Grossman's* and the Bar Date Notice.

## Excusable Neglect

Plum Creek argues for but cannot satisfy the requirements for excusable neglect. Determination of whether neglect is "excusable," warranting allowance of late filing of a claim, calls upon the Court's equitable power and requires taking into account all relevant circumstances surrounding a party's omission.  The Court must consider the totality of the circumstances.  *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F. 3d 315, 320-21 (3d Cir. 2001).  These circumstances include danger of prejudice to debtor, length of delay and its potential impact on judicial proceedings, reason for delay, including whether it was within reasonable control of movant, and whether the movant acted in

good faith. *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380[41] (1993);

*see also Chemetron Corp. v. Jones*, 72 F.3d at 349 ("courts are to take into account all relevant

circumstances surrounding a party's failure to file").

Plum Creek lacks a legitimate reason for its delay in filing a claim and that is fatal

to its attempt to assert excusable neglect.  It is true that all factors must be considered and

no one factor trumps the others.  *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir.

2005).  Yet, addressing fault in the delay is crucial in determining whether neglect was

excusable as the Supreme Court held in *Pioneer.*

Here, it is not clear why Plum Creek did not file a timely claim.  The Bar Date

Notice clearly stated that creditors with claims "no matter how remote or contingent"

were required to file proofs of claim in order to preserve the claim.  D.I. No. 1926-3.

Further, ignorance of one's own claim does not constitute excusable neglect.  *Jones v.*

*Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).  Yet, Plum Creek cannot credibly plead

ignorance as it established the precautionary zone before the Bar Date, causing Plum

Creek at least some loss from lacking access to its timber.[42]  Further, in the 2003 email

---

[41]   *Pioneer* held that "in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable.  507 U.S. at 397.  Here, the action or inaction of Plum Creek's attorneys is not implicated.

[42] Plum Creek, in its oral argument, disputed that that there was any real economic damage before it filed its proof of claim.  The Court finds this point immaterial to its analysis regarding whether Plum Creek received sufficient notice or having received notice can refer to its inaction as excusable neglect.

from Jim Christiansen of the EPA, he clearly stated that it would be prudent to assume that asbestos had been incorporated into the timber bark.

Similar to this case, the claimants in *PacifiCorp* received scientific confirmation of Grace asbestos contamination of their property after the Bar Date. *PacifiCorp, 200*6 WL at 13-14 (holding that ignorance that one has a claim does not give grounds for excusable neglect). Although *PacifiCorp* was not yet governing law at the time Plum Creek should have filed its claim, its reasoning is still instructive here. *PacifiCorp* received notice from the EPA in 2004 that its property in Utah was likely contaminated. Despite this notice, PacifiCorp delayed in filing its proof of claim until 2005. The *PacifiCorp* court considered findings by the Bankruptcy Court that (1) contamination generally was known in the community in the early 1980's, and (2) that some residents publicly expressed concern about the health effects of these toxins in press accounts and at public meetings as evidence that PacifiCorp had a basis for a claim earlier. *Id*. (citing *Chemetron*, 212 F.3d at 205). The District Court disallowed the late filed claim. This is the very same kind of public concern and news coverage that persisted in Libby for almost a decade prior to the Bar Date.

The delay by Plum Creek in filing its proof of claim was unjustified. However, in analyzing the totality of the circumstances behind the late filing, it becomes readily apparent that there are other factors which convince the Court that Plum Creek's neglect was not excusable.

(1)     Danger of Prejudice to the Debtor

Bankruptcy courts consider the following factors: (1) the size of the claim compared with the estate, (2) the impact on the administration of the case, (3) whether the plan was confirmed with knowledge of the claim's existence, (4) the disruptive effect upon the plan and (5) whether allowing the claim would open the floodgates. *In re O'Brien, Envt'l Energy Inc.*, 188 F. 3d 116, 127 (3d Cir. 1999). It is entirely possible that allowing Plum Creek to file a late claim would open the floodgates to other claims. Grace's Plan and funding the 524(g) trust were premised on Plum Creek's claim not being permitted after the effective date.

(2) Length of Delay

Plum Creek waited for more than seven years after the Bar Date to file its claim. The seven years are far more than other courts have allowed. See, e.g., *In re DPH Holdings Corp.*, 434 B.R. 77, 84 (S.D.N.Y. 2010) (three year delay significant); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (fifteen month delay substantial); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 616 (Bankr. D. Del. 2006) (one year delay substantial). A seven year delay is simply too long.

(3) Reason for Delay

The Court previously discussed and refuted Plum Creek's argument that it did not have scientific proof of its claim. Plum Creek had the facts from the EPA of the likelihood of asbestos contamination but failed to file a proof of claim. Debtors also gave notice that

17

anyone with a claim, however remote or contingent, was required to file a proof of claim.

Furthermore, to the extent Plum Creek claims ignorance of its claim, '[i]gnorance of one's

own claim does not constitute excusable neglect." *Chemetron*, 212 F.3d at 205.  Plum

Creek's reason for delay is just not valid.

(4) Good Faith

Plum Creek is not acting in good faith in seeking leave to file very late a claim for

reasons that are not justified by the facts.

CONCLUSION

For the reasons set forth above, the Court finds that the effected published notice,

as well as actual notice, satisfied the requirements of due process with respect to Plum

Creek.  Further, its failure to file timely proofs of claim in the Grace bankruptcy was not

the result of excusable neglect.  Accordingly, the Court will grant the Motion.  Grace is

directed to submit a form of Order on notice to Plum Creek.


Dated:  December 28, 2016

KEVIN GROSS, U.S.B.J.