IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) **Hearing Date: TBD** |
| | ) **Objection Deadline: March 22, 2017 at 4:00 p.m.** |

## MOTION TO STRIKE THE SHARPE AND CONLEY DECLARATIONS

The above-captioned reorganized debtors (the "Reorganized Debtors") file this motion (the "Motion to Strike") for entry of an order in the form attached hereto as Exhibit A (the "Order"), striking the objected-to portions of the *Declaration of Christopher John Sharpe in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment*, filed on January 27, 2017 [Docket no. 32828] (the "Sharpe Declaration"), and striking the objected-to portions of *Declaration of Thomas Wesley Conley in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment*, filed on January 27, 2017 [Docket no. 32827] (the "Conley Declaration") for the reasons set forth in this Motion.[2]

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Omnibus Memorandum in: (A) Reply in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant To Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway; (B) Response to*

In support of this Motion, the Reorganized Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[3] This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Motion are Fed. R. Bankr. P. 9017 and the Federal Rules of Evidence.

## ARGUMENT

3. The Reorganized Debtors object to the following specific parts of the Sharpe Declaration:

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| Sharpe Declaration ¶ 3:<br><br>During my employment with Norfolk Southern, I worked the rail route that serviced the W.R. Grace & Co. ("Grace") facility in Natka, South Carolina (the "Grace Facility"). | (1) Grace objects to Mr. Sharpe's use of the word "Facility." "Facility" is a defined term in the various agreements between Grace and Norfolk Southern at issue in this dispute. The declarant fails to lay a proper foundation that he is personally familiar with the Grace and Norfolk Southern agreements, and the meaning of the term "facility" as used in those agreements. *See* Fed. R. Evid. Rule 602; *Bell v. Lackawanna Cnty.*, 892 F. Supp. 2d 647, 661-62 (M.D. Pa. 2012) ("Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that '[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.' The Third Circuit has interpreted the rule to require an affiant to state facts, rather than opinions and conclusions. 'Statements of belief, no matter how sincere, are properly subject to a motion to strike because they do not meet the personal knowledge requirement.'") (citations omitted); *Bender v. Norfolk S. Ry.*, 994 F. Supp. 2d 593, 601-02 (M.D. Pa. 2014) ("The declaration must contain facts demonstrating a basis for the affiant's claim that his statements are based on his personal knowledge. *See Maldonado v. Ramirez*, 757 |

---

*Cross-Motion for Summary Judgment Allowing Claim No. 7021; and (C) Support of an Order Finding the FELA Action Trial Record Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* (the "Omnibus Memorandum"), filed contemporaneously herewith.

[3] The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| | F.2d 48, 50-51 (3d Cir. 1985)("The affidavit must be made 'personal knowledge,' must set forth 'such facts as would be admissible in evidence' and must 'show affirmatively that the affiant is competent to testify to the matters stated therein.' Declarations that are essentially conclusory and lacking in specific facts have no probative value.") (Citations omitted). |
| Sharpe Declaration ¶ 4:<br><br>Grace primarily used the Grace Facility to load kaolin into railcars for shipment to other destinations. Kaolin is a white clay substance that becomes extremely slippery when wet, almost like grease. I myself have slipped on wet kaolin a number of times throughout my career with Norfolk Southern, and I recall countless times where other Norfolk Southern employees slipped on kaolin. | (2) Grace objects to Mr. Sharpe's use of the word "Facility" in paragraph 4. "Facility" is a defined term in the various agreements between Grace and Norfolk Southern at issue in this dispute. The declarant fails to lay a proper foundation that he is personally familiar with the Grace and Norfolk Southern agreements, and the meaning of the term "facility" as used in those agreements. *Id.*<br><br>(3) Grace further objects to Mr. Sharpe's comments in paragraph 4 that he slipped on kaolin as being improperly conclusory. He fails to state facts regarding those incidents including where and when they took place and what he was doing at the time he allegedly fell. *See Bender* 994 F. Supp. 2d at 602.<br><br>(4) Finally Grace objects to Mr. Sharpe's testimony about other Norfolk Southern employees slipping because he fails to state facts demonstrating personal knowledge of such falls, and to the extent his knowledge is based on statements of others, it is improper hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender*, 994 F. Supp. 2d at 602. |
| Sharpe Declaration ¶ 5:<br><br>At the Grace Facility, Grace would load railcars in a covered shed using a loading spout that poured the kaolin powder into covered hopper cars. Grace routinely overfilled the railcars, causing kaolin powder to cover them. Often, the layer of kaolin powder covering the railcar would be at least several inches thick, if not more. No one at Grace supervised the loading of the hopper cars, which generally led to their overfilling. | (5) Grace objects generally that Mr. Sharpe's testimony in paragraph 5 fails to state facts demonstrating that his testimony is based on personal knowledge. Fed. R. Evid. 602; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(6) Grace objects to Mr. Sharpe's testimony in paragraph 5 that Grace "routinely overfilled" railcars, because it is a conclusory statement both lacking facts in support of the conclusion and lacking facts showing it is based on Mr. Sharpe's personal knowledge. To the extent Mr. Sharpe makes this statement based on what others have told him, it is improper hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(7) Grace objects to Mr. Sharpe's testimony in paragraph 5 about the kaolin on railcars being "several inches thick, if not more," because it fails to set out facts demonstrating the basis for his claim. In particular Mr. Sharpe fails to indicate how he measured the amount of kaolin and whether he measured the kaolin before or after the cars were cleaned. Further to the extent this testimony is based on what others told him, it is impermissible hearsay.   Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(8) Grace objects to Mr. Sharpe's testimony in paragraph 5 stating:<br><br>"No one at Grace supervised the loading of the hopper cars, which generally led to their overfilling."<br><br>The remark is conclusory and lacks any supporting facts. Further the remark is not supported by any facts showing the statement is based on Mr. Sharpe's personal knowledge. Finally to the extent that the remark is based on what others told Mr. Sharpe, it is inadmissible hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602 |
| Sharpe Declaration ¶ 6:<br><br>Norfolk Southern personnel routinely | (9) Grace objects to Mr. Sharpe's statement in paragraph 6 that to the extent Norfolk Southern personnel complained about "working conditions" of the railcars that statement is hearsay as to the actual condition of any railcar or the |

| Passage | Grounds For Objection |
|---|---|
| complained about the unsafe working conditions created by the presence of the clay on the railcars. Personally, I never complained about the condition of the railcars because I was just a brakeman at the time but I was aware of the efforts that others had made to try to correct the situation. Nevertheless, it was widely known that Grace was the worst of our kaolin customers at overfilling railcars. | source of any railcar. Fed. R. Evid. 802.<br><br>(10) Grace objects to Mr. Sharpe's statement in paragraph 6 that he was "just a brakeman" but that he:<br><br>"was aware of the efforts that others had made to try to correct the situation."<br><br>The statement is conclusory, lacks facts to describe what took place, and finally the "fact" that Sharpe himself never complained because he was a "brakeman" shows that Sharpe is not competent to testify regarding the complaint process. Further, to the extent that Sharpe's statement is offered to show that a problem existed or a situation needed correction, the statement is hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(11) Grace objects to Mr. Sharpe's statement in paragraph 6 that:<br><br>"it was widely known that Grace was the worst of our kaolin customers at overfilling railcars"<br><br>The statement is conclusory, lacks supporting facts, and lacks facts showing that it is based on Sharpe's personal knowledge. Futher, to the extent that Norfolk Southern seeks to use that statement to prove the actual condition of the Grace kaolin operation, the statement is hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. |
| Sharpe Declaration ¶ 7:<br><br>On January 23, 1998, I reported for duty along with train conductor, Lester Kirkland and Locomotive Engineer J.B. McFarland. It was raining that day, and the rain continued throughout the entire shift. After picking up kaolin-filled railcars from the Grace Facility, we had to switch the railcars. Because of the rain, the kaolin that was covering the railcars was even more slick than usual, requiring us to be even more careful than usual. I was working the switch while Mr. Kirkland worked the brake. Because the quick release mechanism did not work, Mr. Kirkland climbed up on a railcar to loosen the brake by hand. In the process of working the brake, Mr. Kirkland slipped on the wet kaolin and fell to the ground (the "January 23 Accident"). I did not personally witness the January 23 Accident, but Mr. Kirkland did inform me shortly thereafter that he had fallen and he showed me the marks and discoloring on his back and he | (12) Grace objects to Mr. Sharpe's testimony describing the accident:<br><br>"Because the quick release mechanism did not work, Mr. Kirkland climbed up on a railcar to loosen the brake by hand. In the process of working the brake, Mr. Kirkland slipped on the wet kaolin and fell to the ground (the "January 23 Accident")"<br><br>Mr. Sharpe admits he is not competent to testify to that statement and that anything he purports to know is based on inadmissible hearsay, because he testified in the next line:<br><br>"I did not personally witness the January 23 Accident, but Mr. Kirkland did inform me shortly thereafter …"<br><br>All the facts testified to by Sharpe must be excluded under Fed. R. Evid. Rules 602 and 802. See also *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(13) Grace objects to Mr. Sharpe's testimony in paragraph 7 stating:<br><br>"he showed me the marks and discoloring on his back and he described to me the pain the he was feeling in his hand and back."<br><br>Mr. Sharpe fails to state facts showing he is personally competent to evaluate the marks and discoloring to know what they mean or to when they first occurred. Further Grace objects to this testimony to the extent Norfolk Southern purports to offer it to prove Mr. Kirkland's injuries because it is improper hearsay. Mr. Kirkland's words to Mr. Sharpe may be offered only to show what Sharpe recalls hearing but not to prove the truth of Kirkland's injuries. Fed. R. Evid. Rules 602 and 802. See also *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. |

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| described to me the pain that he was feeling in his hand and back. At the end of the shift he called the supervisors, who conducted an investigation into the accident. | |
| Sharpe Declaration ¶ 8:<br><br>On January 26, 1998, I reported for duty, along with train conductor, Mr. Kirkland, and Locomotive Engineer Thomas Conley. Despite his accident a few days earlier, Mr. Kirkland appeared to be and indicated that he was ready for work. As usual, we proceeded to the Grace Facility to pick up the kaolin-filled railcars. It was raining that morning, so the kaolin caked on the railcars continued to be extremely slippery. After picking up the railcars from the Grace Facility, I personally witnessed Mr. Kirkland once again slip and fall and injure his back on kaolin residue that had accumulated on the railcars (the "January 26 Accident"). As usual, Grace had dangerously overfilled the railcar on which Mr. Kirkland slipped. Following the January 26 Accident, I had to help Mr. Kirkland off the railcar due to his injuries. Shortly thereafter, Mr. Kirkland phoned his wife and asked her to bring a camera to the scene of the accident. When Mrs. Kirkland arrived, she took photographs of the railcar to show the accumulation of kaolin on it. | (14) Grace objects to Mr. Sharpe's statement "and injure his back" because Mr. Sharpe fails to state facts how he could or did personally detect a back injury in Mr. Kirkland. Further to the extent that Mr. Sharpe's recollection is based on statements made by Kirkland to Sharpe, any testimony used to prove a back injury is hearsay. Fed. R. Evid. Rules 602 and 802. See also *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(15) Grace objects to Mr. Sharpe's statement "once again slip and fall" because the statement is conclusory and lacks facts proving personal knowledge. In paragraph 7, Sharpe testified he did not personally witness Kirkland's alleged January 23 fall. Thus there is no foundation to say "once again …" Likewise, the words "slip and fall" are conclusory and Sharpe fails to state facts indicating what those mean. For example, does "fall" mean "hit the ground"? Likely not, because later in this paragraph Mr. Sharpe indicates he help Kirkland dismount the railcar. Fed. R. Evid. 602. See also *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(16) Grace objects to Mr. Sharpe's statement:<br><br>    "kaolin residue that had accumulated on the railcars"<br><br>Mr. Sharpe fails to state facts showing he has personal knowledge about the kaolin residue including facts indicating how long the residue had been on the car, which kaolin mill along the rail line (there were others besides Grace) was responsible for the residue on this particular car, and whether Grace had any connection whatsoever to that residue. Thus, this testimony is improperly conclusory and lacks foundation. Fed. R. Evid. 602. See also *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(17) Grace objects to Mr. Sharpe's statement in paragraph 8 that:<br><br>    "As usual, Grace had dangerously overfilled the railcar on which Mr. Kirkland slipped"<br><br>Mr. Sharpe fails to state facts showing personal knowledge and the statement is improperly conclusory. Fed. R. Evid. 602. See also *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. |

    4.    The Reorganized Debtors object to the following specific parts of the Conley Declaration:

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| Conley Declaration ¶ 4:<br><br>Grace primarily used the Grace | (1) Grace objects to Mr. Conley's use of the word "Facility" in paragraph 4. "Facility" is a defined term in the various agreements between Grace and Norfolk Southern at issue in this dispute. The declarant fails to lay a proper |

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| Facility to load kaolin into railcars for shipment to other destinations. Kaolin is a white clay substance that becomes extremely slippery when wet. Indeed, rain makes the kaolin grease-like, which required rail workers to exercise extreme care when moving across the wet clay. I myself have slipped on wet kaolin a number of times throughout my career with Norfolk Southern. | foundation that he is personally familiar with the Grace and Norfolk Southern agreements, and the meaning of the term "facility" as used in those agreements. See Fed. R. Evid. Rule 602; *Bell v. Lackawanna Cnty.*, 892 F. Supp. 2d 647, 661-62 (M.D. Pa. 2012) ("Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that '[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.' The Third Circuit has interpreted the rule to require an affiant to state facts, rather than opinions and conclusions. 'Statements of belief, no matter how sincere, are properly subject to a motion to strike because they do not meet the personal knowledge requirement.'")(citations omitted); *Bender v. Norfolk S. Ry.*, 994 F. Supp. 2d 593, 601-02 (M.D. Pa. 2014) ("The declaration must contain facts demonstrating a basis for the affiant's claim that his statements are based on his personal knowledge. See *Maldonado v. Ramirez*, 757 F.2d 48, 50-51 (3d Cir. 1985)("The affidavit must be made 'personal knowledge,' must set forth 'such facts as would be admissible in evidence' and must 'show affirmatively that the affiant is competent to testify to the matters stated therein.' Declarations that are essentially conclusory and lacking in specific facts have no probative value.") (citations omitted) Without stating facts demonstrating personal knowledge of the term "Facility" as used in the Agreements, this statement is improperly conclusory and misleading. *Id.* |
| Conley Declaration ¶ 6:<br><br>At the Grace Facility, Grace would load railcars with Kaolin at two locations, depending on the grade of clay being loaded. Kaolin is usually shipped as a powder, as crushed clay or in a liquid slurry. The first location was out in the open, but it was only used when exposure to weather was not an issue. The second location was under a covered shed, and Grace used it for most of its loading needs, especially on rainy days. Both locations relied on a spout to load the kaolin into the railcars. | (2) Grace objects to Mr. Conley's use of the word "Facility" in paragraph 6. "Facility" is a defined term in the various agreements between Grace and Norfolk Southern at issue in this dispute. The declarant fails to lay a proper foundation that he is personally familiar with the Grace and Norfolk Southern agreements, and the meaning of the term "facility" as used in those agreements. *Id.* Further, Without stating facts demonstrating personal knowledge of the term "Facility" as used in the Agreements, this statement is improperly conclusory and misleading. *Id.*<br><br>(3) Grace objects to the entirety of Mr. Conley's statements in paragraph 6 because he fails to state facts sufficient to demonstrate personal familiarity sufficient to testify to any of the conclusory statements made in the paragraph. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. |
| Conley Declaration ¶ 8:<br><br>In filling the railcars, Grace routinely overfilled them, causing kaolin powder to cover the top and sides of the railcar. The powder also accumulated on crossover platforms, ladders and footholds. Basically, once the railcar was filled to capacity any excess kaolin would spill over and cover the entire railcar. Often, the layer of kaolin powder covering the rail car would be several inches thick, if not more. | (4) Grace objects to Mr. Conley's testimony in paragraph 8 that Grace "routinely overfilled" railcars because it is a conclusory statement both lacking facts in support of the conclusion and lacking facts showing it is based on Mr. Conley's personal knowledge. To the extent Mr. Conley makes this statement based on what others have told him, it is improper hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(5) Grace objects to Mr. Conley's testimony in paragraph 8 about the kaolin on railcars being "several inches thick, if not more" because it fails to set out facts demonstrating the basis for his claim. In particular Mr. Conley fails to indicate how he measured the amount of kaolin and whether he measured the kaolin before or after the cars were cleaned. Further to the extent this testimony is based on what others told him, it is impermissible hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. |

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| Conley Declaration ¶ 9:<br><br>Norfolk Southern personnel routinely complained about the unsafe working conditions created by the presence of the clay on the railcars. Sometimes, Grace personnel would respond to these complaints by blowing off the excess kaolin with an air hose, but other times, they would refuse to do anything to remedy the problem. Either way, the Grace Facility had developed a reputation among Norfolk Southern personnel for habitually overfilling the railcars and creating some of the most unsafe working conditions along the entire line. | (6) Grace objects to Mr. Conley's statement in paragraph 9 that to the extent Norfolk Southern personnel complained about "working conditions" of the railcars, that statement is hearsay as to the actual condition of any railcar or the source of any railcar. Fed. R. Evid. 802.<br><br>(7) Grace objects to Mr. Conley's statement in paragraph 6 that:<br><br>"sometimes, Grace personnel would respond to these complains by blowing off the excess kaolin with an air hose, but other times they would refuse to do anything to remedy the problem."<br><br>The statement is conclusory, lacks facts to describe what took place or when, facts to show what constitutes excess kaolin, and lacks facts to show Conley has personal knowledge. Further, to the extent that Conley's statement is offered to show that a problem existed or a situation needed correction, the statement is hearsay because it is based on things said by Norfolk Southern personal generally. Such statements cannot be used to prove the truth about how Grace loaded kaolin or about the condition of any specific railcar. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602.<br><br>(8) Grace objects to Mr. Conley's statement in paragraph 9 that:<br><br>"the Grace Facility had developed a reputation among Norfolk Southern personnel for habitually overfilling the railcars and creating some of the most unsafe working conditions along the entire line,"<br><br>because the statement is conclusory, lacks supporting facts, and lacks facts showing that it is based on Conley's personal knowledge. Further, to the extent that Norfolk Southern seeks to use that statement to prove the actual condition of the Grace kaolin operation, the statement is hearsay. Fed. R. Evid. 602; Fed. R. Evid. 802; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. |
| Conley Declaration ¶ 10:<br><br>On January 26, 1998, I reported for duty, along with train conductor, Lester Kirkland, and trainman, C.J. Sharpe. As usual, we proceeded to the Grace Facility to pick up the kaolin-filled railcars. It was raining that day, so the clay residue was wet and even more slippery than usual. After picking up the railcars from the Grace Facility, Mr. Kirkland was required to apply the brakes so that we could switch the railcars. Mr. Kirkland informed me shortly thereafter that he had injured his back after slipping on the kaolin residue that had accumulated on the railcars. I saw that the railcar was dangerously overfilled. Following the accident, Mr. Kirkland phoned his wife and asked her to bring a camera to the scene of the accident. Once she arrived, Mrs. Kirkland took | (12) Grace objects to Mr. Conley's statement:<br><br>"Mr. Kirkland informed me shortly thereafter that he had injured his back after slipping on the kaolin residue that had accumulated on the railcars."<br><br>That statement is hearsay as to the truth of whether: (a) Kirkland slipped; (b) Kirkland injured his back; (c) the cause of the slip was Kaolin; and (d) the kaolin was fresh from the Grace Plant or connected to Grace in any way. Fed. R. Evid. 802.<br><br>(10) Grace objects to Mr. Conley's statement in paragraph 10:<br><br>"I saw that the railcar was dangerously overfilled."<br><br>That statement is entirely conclusory. Mr. Conley states no facts that he has personal knowledge sufficient to support that claim or a claim that a car is or is not properly filled. He also states no facts such as that he witnessed the car being filled, he broke the seals on the car to determine the level to which it was filled, or he personally climbed on top of the car to determine whether the car was filled at all. Fed. R. Evid. 602; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. Any purported knowledge he has about the car is likely based on the statements of others and is thus inadmissible hearsay. Fed. R. Evid. 802.<br><br>(11) Grace objects to Mr. Conley's statement in paragraph 10:<br><br>"Once she arrived, Mrs. Kirkland took photographs of the railcar to show the accumulation of kaolin on it." |

| PASSAGE | GROUNDS FOR OBJECTION |
|---|---|
| photographs of the railcar to show the accumulation of kaolin on it. | Mr. Conley fails to state facts showing he had personal knowledge regarding whether Mrs. Kirkland actually took pictures and had film loaded in her camera, or what was her actual purpose for taking pictures. Thus any statements about the photographs are improperly conclusory. Fed. R. Evid. 602; *Bell*, 892 F. Supp. 2d at 662; *Bender* 994 F. Supp. 2d at 602. Any purported knowledge he has about the photographs is likely based on the statements of others and is thus inadmissible hearsay. Fed. R. Evid. 802. |

## NO PREVIOUS MOTION

5. No previous motion for the relief sought herein has been made to this or any other court.

## NOTICE

6. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) counsel for Norfolk Southern. In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached hereto as <u>Exhibit A</u>: (i) striking the objected-to portions of the Sharpe and Conley Declarations; and (ii) granting such other relief as may be appropriate.

Dated: March 8, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors