IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KG) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | Re: Docket Nos.: 929575 and 32825 |
| | ) | |

**OMNIBUS MEMORANDUM IN SUPPORT OF GRANTING THE REORGANIZED DEBTORS' SUMMARY JUDGMENT MOTION, DENYING NORFOLK SOUTHERN'S CROSS-MOTION AND DISALLOWING NORFOLK SOUTHERN'S INDEMNIFICATION CLAIM**

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

DOCS_DE:212625.1 91100/001

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) ............................................................. 5

*Federal Pacific Electric v. Carolina Production Enterprises*, 378 S.E.2d 56, 57 (S.C. Ct. App. 1989) .................................................................................................................................. 5, 6

*Gloucester Holding Corp. v. U.S. Tape & Sticky Prods.*, LLC, 832 A.2d 116, 129 (Del. Ch. 2003) ........................................................................................................................................ 6

*Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 160, (2007) ..................................................................... 3

**Rules**

Fed. R. Bankr. P. 7056 .................................................................................................................. 5

Fed. R. Civ. P. 56(e) ..................................................................................................................... 5

**OMNIBUS MEMORANDUM**

1. The Reorganized Debtors are filing the above-captioned memorandum (the "Omnibus Memorandum") to provide a roadmap to the welter of issues raised by Norfolk Southern's January 27 filings—none of which changes the unalterable conclusion that Norfolk Southern has still failed to carry its burden of proof.[2] This Court should therefore grant the relief sought by the Reorganized Debtors in their Summary Judgment Motion, deny Norfolk Southern's Cross-Motion in all respects, and disallow Norfolk Southern's Claim in all respects except the allowance of the uncontested amount of $6,922.35.

---

[2] Norfolk Southern's January 27 filings comprise its *Cross-Motion for Summary Judgment Allowing Claim No. 7021*, filed on January 27, 2017 [Docket no. 32825] (the "Cross-Motion") and its *Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim no. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment*, filed January 27, 2017 [Docket no. 32826] (Norfolk Southern's "Brief").

Norfolk Southern filed three declarations in support of its Brief:

The "Conley Declaration" is the *Declaration of Thomas Wesley Conley in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment*, filed on January 27, 2017 [Docket no. 32827].

The "Sharpe Declaration" is the *Declaration of Christopher John Sharpe in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment*, filed on January 27, 2017 [Docket no. 32828]; and

The "McNeill Declaration" is the *Declaration of R. Stephen McNeill in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance And Partial Disallowance of Claim No. 7021 And (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment*, filed on January 27, 2017 [Docket no. 32829].

Capitalized terms shall have the meanings ascribed to them in, as the case may be, the *Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway Company*, filed on October 13, 2016 [Docket no. 929575] (the "Summary Judgment Motion") and the Reorganized Debtors' *Proposed Findings of Uncontested Facts in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance Of Claim No. 7021, Filed by Norfolk Southern Railway*, filed October 13, 2016 [Docket no. 929575-4] (the "Proposed Findings of Uncontested Facts").

2.    The sole issue in dispute is whether the Reorganized Debtors must indemnify Norfolk Southern for a settlement and certain other costs totaling $1,561,664.66, pursuant to one or more of four Agreements between Norfolk Southern and Grace—each of which Norfolk Southern drafted.[3] Norfolk Southern's indemnity claim arises from a FELA action in Georgia state court against Norfolk Southern (the "FELA Action") concerning two accidents suffered by a Norfolk Southern employee, Lester Kirkland, on January 23 and 26, 1998, respectively, when on each occasion he injured himself while attempting to set a broken railcar handbrake. Grace was never a party to the FELA Action, nor did Norfolk Southern ever even try to join Grace to that action.

3.    As discussed in this Omnibus Memorandum, the essential facts of this matter, which conclusively establish as a matter of law that the Agreements' indemnities do not apply to Norfolk Southern's indemnity claim, are undisputed. Moreover, the facts that Norfolk Southern asserts are in dispute need not be resolved for this Court to grant Grace's Summary Judgment Motion, deny Norfolk Southern's Cros-Motion and disallow Norfolk Southern's indemnity claim. Indeed, Norfolk Southern has admitted as much in every one of its pleadings in this

---

[3]    Norfolk Southern and Grace are party to four "Agreements":

The agreement between Southern and Grace, dated as of December 15, 1980, regarding Norfolk Southern's lease of a railroad right-of-way at the Grace Facility (the "Right-of-Way Agreement," Exhibit A to the Norfolk Southern POC);

The agreement between Southern and Grace, dated as of December 15, 1980, regarding Norfolk Southern's operation of railroad right-of-way for 1,678 feet of "industrial track" located at the Grace Facility (the "Operating Agreement," Exhibit B to the Norfolk Southern POC);

The supplemental agreement between Southern and Grace, dated November 7, 1983, regarding the operation of an additional 477 feet of additional industrial track. (the "1983 Supplemental Agreement," Exhibit C to the Norfolk Southern POC); and

The supplemental agreement between Southern and Grace, dated October 3, 1990, by which Southern permitted Grace to construct an overhead loading structure with a spout (the "Specialty Product Loading Chute") (the "1990 Supplemental Agreement," Exhibit D to the Norfolk Southern POC).

matter, from its original proof of claim, to its response to the Reorganized Debtors' objection to Norfolk Southern's claim, and in its January 27 filings. Thus, Norfolk Southern cannot dispute that, at the time of each accident, the railcar on which Mr. Kirkland injured himself was under Norfolk Southern's full dominion and control—and that, as discussed below, its own employee's admissions directly exculpate Grace from any and all liability for Mr. Kirkland's accidents and resulting injuries.

4.  The railcars (which were loaded with kaolin, a soft white clay) had in each case been consigned to Norfolk Southern hours before the respective accident. Norfolk Southern had inspected the railcars at issue and adjudged them each "safe to run," pursuant to its own rules and procedures. At the time of each accident, the railcar on which Mr. Kirkland injured himself was attached to a Norfolk Southern-owned and –controlled train, while that train was stopped at a Norfolk Southern-owned and –controlled facility, in each case miles from the Grace Plant. Moreover, Mr. Kirkland's direct supervisor, Trainmaster Chapman, testified at the FELA Action trial that he believed that Mr. Kirkland's accidents (and resulting injuries) were not caused by slipping on kaolin residue that may have been present on the exteriors of the railcars at issue. Norfolk Southern also cannot dispute that the FELA Action jury found it negligent under the Federal Employee Liability Act, 45 U.S.C. § 51, et seq. ("FELA"). (McNeill Declaration Exhibit T (Judgment finding Norfolk Southern liable to Mr. Kirkland) (the "FELA Action Judgment").) *Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 160, (2007) (discussing causation standard for railroad negligence under FELA).

5.  It is in this context that, in 2003, Norfolk Southern filed its proof of claim. In 2008, the Reorganized Debtors objected to Norfolk Southern's Claim on the basis that the claim was not within the scope of the Agreements' indemnity provisions and Norfolk Southern had not

adduced sufficient evidence to substantiate its indemnity claim.[4]  In its 2008 Response to the Reorganized Debtors' initial objection, Norfolk Southern attached highly selective (and *inadmissible*—as against Grace) portions of the FELA Action trial record to support its indemnity claim.[5]

6.  In October 2016, the Reorganized Debtors filed their Summary Judgment Motion for the reason that, notwithstanding Norfolk Southern's use of such highly selective, and *inadmissible*, trial record extracts, Norfolk Southern had nonetheless failed to carry its burden of proving up the Norfolk Southern Claim, both in its proof of claim and in its Response to the Reorganized Debtors' Objection.  The Reorganized Debtors also asserted that the FELA Action trial record should be deemed to be not admissible for purposes of Norfolk Southern carrying its burden of proof, but available for use by the Reorganized Debtors to defeat Norfolk Southern's indemnity claim.

7.  On January 27, 2017, Norfolk Southern filed its own Cross-Motion for summary judgment and Brief in support, and also responded to the Reorganized Debtors' Summary Judgment Motion.

8.  At this stage of the briefing, it is clear that:

- Norfolk Southern does not dispute any of the facts establishing that as a matter of law the Agreements' indemnities do not contractually obligate Grace to indemnify Norfolk Southern for injuries suffered by a Norfolk Southern employee on a Norfolk Southern railcar under Norfolk Southern's full dominion and control at a Norfolk Southern-owned and controlled facility;

- Even if Grace had such an indemnity obligation, Norfolk Southern has failed to adduce sufficient evidence (admissible or otherwise) that Grace's conduct in any way

---

[4]  The Reorganized Debtors' "Objection" is the *Debtors' Objection to the Proof of Claim Filed by Norfolk Southern Railway Company* [Docket no. 22553].

[5]  Norfolk Southern's "Response" is the *Preliminary Response of Norfolk Southern Railway to Debtors' Objection to the Proof of Claim filed by Norfolk Southern Railway* [Docket no. 22975].

caused Mr. Kirkland's accidents—and its own admissions conclusively exculpate Grace from any liability in this matter; and

- In addition to Norfolk Southern's admissions, Grace has adduced sufficient additional evidence to make it clear (independently of Norfolk Southern's admissions) that, if Grace had such an indemnity obligation, Norfolk Southern was negligent and Grace did nothing wrong.

9. The Reorganized Debtors submit that this Court need only address the first issue to resolve this contested matter by disallowing Norfolk Southern's indemnity claim. That said, the Court may also resolve this contested matter by finding that Norfolk Southern has failed to carry its burden of proof as to causation, and has instead entirely exculpated Grace by its admissions at the FELA Action trial—without having to rely on any evidence adduced by the Reorganized Debtors at all. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) (citing Advisory Committee Note on 1963 Amendment Fed. R. Civ. P. 56(e), which is applicable to this matter pursuant to Fed. R. Bankr. P. 7056). Nonetheless, the Reorganized Debtors have adduced their evidence out of an abundance of caution in the event that the Court were to determine that there are material facts in dispute that would require a trial to fully resolve.

10. As to the first issue, applicable South Carolina law is clear, and this Court may summarily disallow Norfolk Southern's indemnity claim. The indemnities set forth in Agreements must be strictly construed against Norfolk Southern, because it is seeking indemnity for its own, undisputable negligence pursuant to Agreements that it drafted. *Federal Pacific Electric v. Carolina Production Enterprises*, 378 S.E.2d 56, 57 (S.C. Ct. App. 1989) (indemnities strictly construed against indemnitee seeking indemnity for its own negligence); *Williams v. Teran, Inc.*, 221 S.E. 2d 526, 529 (S.C. 1976) (internal citation omitted) ("where the contract is susceptible of more than one interpretation, a doubt shall be resolved against the party whose business it was to speak without ambiguity"). In other words, to be enforceable, an indemnity such as those found in the Agreements must clearly and unequivocally express the

intent that one party indemnify the other for the damages for which the indemnity is sought. *Federal Pacific Electric*, 378 S.E.2d at 57.

11. The Agreements are indeed clear and unequivocal—but not in a way that supports Norfolk Southern's indemnity claim. The Agreements instead clearly and unequivocally ***do not*** contractually obligate Grace to indemnify Norfolk Southern for injuries to Norfolk Southern employees, when—as in this contested matter—Norfolk Southern had full dominion and control over, and full responsibility for its employee, the railcars at issue, and the places where the accidents occurred. *Montgomery v. JYD Int'l, Inc.*, 534 So. 2d 592, 595 (Ala. 1988) ("The more control the indemnitee retains over the area, the less reasonable it is for the indemnitor to bear the responsibility for injuries that occur in that area"); *see also* 41 AM. JUR. 2D INDEMNITY § 13 (same). What's more, and contrary to Norfolk Southern's argument, the Agreements cannot as a matter of law be construed to imply what they do not unequivocally express—which means that all of Norfolk Southern's arguments to the contrary must fail—no matter the evidence, admissible or otherwise, that it attempts to adduce. *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods.*, LLC, 832 A.2d 116, 129 (Del. Ch. 2003) ("courts should not enlarge the right to indemnification by implication"); *Federal Pacific Electric*, 378 S.E.2d at 57.

12. Despite the clear-cut and inexorable application of well-established South Carolina law to the undisputed material facts of this contested matter, Norfolk Southern's Cross-Motion and its Brief raise three distinct, but interrelated issues, which are addressed in the memoranda attached to this Omnibus Memorandum and in the *Motion to Strike the Sharpe and Conley Declarations*, filed contemporaneously herewith (the "Motion to Strike"):

- *Reply in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway*, attached hereto as Exhibit A (the "Reply Memorandum");

- *Response to Norfolk Southern's Cross-Motion for Summary Judgment Allowing Claim No. 7021*, attached hereto as Exhibit B (the ("Cross-Motion Response Memorandum"); and

- *Memorandum in Support of the Court's Entry of an Order Finding the FELA Action Trial Record Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim*, attached hereto as Exhibit C (the "Inadmissible Hearsay Memorandum").

The Reorganized Debtors have also concomitantly filed their *Motion to Strike the Sharpe And Conley Declarations* (the "Motion to Strike"), which requests the Court strike substantial portions of the Sharpe and Conley Declarations for foundational, hearsay and other evidentiary problems raised therein.

### *Norfolk Southern's Argument Regarding Whether the Summary Judgment Motion Fails as a Matter of Law*

13. Norfolk Southern argues that the Court should deny the Reorganized Debtors' Summary Judgment Motion, because there are genuine disputes over material facts, particularly as to Grace's alleged negligence. To support its contention, Norfolk Southern filed three declarations: the McNeill Declaration, the Conley Declaration and the Sharpe Declaration. Norfolk Southern is wrong, as addressed in the Reply Memorandum, Inadmissible Hearsay Memorandum and the Motion to Strike. There are more than sufficient undisputed facts for this Court to disallow Norfolk Southern's indemnity claim, thereby rendering Norfolk Southern's arguments as to Grace's alleged negligence entirely irrelevant.

14. As discussed above, none of the Agreements' indemnities clearly and unequivocally require Grace to indemnify Norfolk Southern on those undisputed facts. The Court thus need not look further to resolve this matter in Grace's favor.

15. This Court may also disallow Norfolk Southern's indemnity claim because it has adduced no evidence, admissible or otherwise, to show that allegedly negligent acts by Grace caused Mr. Kirkland's injuries. Indeed, the actions of Norfolk Southern's management on the

morning of January 26, 1998, establish that Grace did nothing wrong in loading those railcars. On that day, Trainmaster Chapman, who was Mr. Kirkland's direct supervisor, directed Mr. Kirkland to take consignment of several railcars, including the one on which he slipped several hours later, demonstrating conclusively that Norfolk Southern had determined that the railcars were "safe to run." This decision by Norfolk Southern management fully exculpates Grace, and provides a second, independent basis on which this Court may disallow Norfolk Southern's indemnity claim.

16. What's more, Mr. Chapman later testified at the FELA Action trial that it was Norfolk Southern's position that Mr. Kirkland's accidents were not caused by his slipping on kaolin. This admission provides yet another basis for disallowing Norfolk Southern's indemnity claim.

17. The FELA Action trial record and the Conley and Sharpe Declarations do not change that calculus, even if they were fully admissible—which they are not. They do not provide any independent basis for Norfolk Southern to argue that Agreements' indemnities encompass more than what they clearly and unequivocally state. In any case, as discussed in the Inadmissible Hearsay Memorandum, the FELA Action trial record is inadmissible hearsay. Second, as set forth in the Motion to Strike, much of what is set forth in the Conley and Sharpe Declarations is equally inadmissible, whether as hearsay, for lack of foundation or otherwise. Therefore, there are no material facts in dispute to prevent this Court from granting the Summary Judgment Motion and disallowing Norfolk Southern's indemnity claim on one or both of the grounds discussed above.

*Norfolk Southern's Cross-Motion Must Be Denied*

18. Norfolk Southern simultaneously argues that there are no material facts in dispute as to its Cross-Motion, and asks the Court to allow its indemnity claim. As discussed in the

Cross-Motion Response Memorandum, Norfolk Southern is wrong, as a matter of logic, the law and the facts of this contested matter.

19.  First and foremost, the Agreements' indemnities simply do not apply on the undisputed facts of the matter, as discussed above and in the Reply Memorandum. The Court need go no further to deny Norfolk Southern's Cross-Motion as a matter of law.

20.  But even if the Court were to go further, and find that the Agreements' indemnities could encompass Norfolk Southern's indemnity claim, Norfolk Southern's Cross-Motion must still fail. Norfolk Southern cannot rely on the admissibility of the FELA Action trial record, and the very parts of the Conley and Sharpe Declarations upon which it relies are themselves inadmissible. But even if those documents were admissible, Norfolk Southern has failed to adduce sufficient evidence that Grace's conduct in any way caused Mr. Kirkland's accidents.

21.  Indeed, the FELA Action established only that Norfolk Southern was negligent and failed to provide Mr. Kirkland a safe workplace. There are absolutely no findings as to Grace on any issue, whatsoever. The Conley and Sharpe Declarations do not establish that, as to either the January 23 or January 26 railcar, Grace did anything that would have caused Mr. Kirkland to injure himself.

22.  Finally, as discussed above, Norfolk Southern's own management conclusively established that Grace did nothing wrong as to the January 26 railcar, and Norfolk Southern did not seek summary judgment as to Mr. Kirkland's January 23 accident. And, as also discussed above, Mr. Chapman testified at the FELA Action trial that slipping on kaolin residue that may have been present on the railcar exteriors did not cause Mr. Kirkland's accidents. Norfolk Southern's Cross-Motion must fail in the face of these admissions.

23.     But even if the Court were to take all that Norfolk Southern has argued and proffered at face value—which it should not—Norfolk Southern's Cross-Motion must still fail. That is because the Reorganized Debtors have adduced declarations by two current, long-term employees who knew of Mr. Kirkland, were at the Grace Plant in 1998, and who are available to testify as to the exemplary safety record at the Grace Plant:

- *The Declaration of David Drumming, Jr., in Support of the Reorganized Debtors' Omnibus Memorandum in: (A) Reply In Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed By Norfolk Southern Railway; (B) Response to Cross-Motion for Summary Judgment Allowing Claim No. 7021; and (C) Support of an Order Finding the FELA Action Trial Record Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim*, dated March 6, 2017, and attached hereto as <u>Exhibit D</u> (the "<u>Drumming Declaration</u>"); and

- *The Declaration of Carl Silas in Support of the Reorganized Debtors' Omnibus Memorandum in: (A) Reply In Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed By Norfolk Southern Railway; (B) Response to Cross-Motion for Summary Judgment Allowing Claim No. 7021; and (C) Support of an Order Finding the FELA Action Trial Record Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim*, dated March 6, 2017, and attached hereto as <u>Exhibit E</u> (the "<u>Silas Declaration</u>").

24.     These declarations establish that the Grace Plant has an exemplary safety record. They also establish that Grace employees went above and beyond in cleaning railcars—which directly contradicts the statements made in the Conley and Sharpe Declarations, and which also confirms the import of Mr. Chapman's testimony at the FELA Action trial that kaolin residue that may have been present on the railcar exteriors did not cause Mr. Kirkland's accidents and resulting injuries. Finally, the declarations establish that Grace did nothing wrong in January 1998, when Mr. Kirkland injured himself on Norfolk Southern-owned and –controlled railcars when those railcars were located at Norfolk Southern-owned and –controlled facilities. Thus, if this Court were to determine that the Agreements do encompass Norfolk Southern's indemnity

claim on its face, the Drumming and Silas Declarations at the very least present genuine issues of material fact that would require a trial.

***The FELA Trial Record Is Inadmissible Hearsay***

25. Acknowledging that it otherwise lacks sufficient evidence to support its indemnity claim, in section II of its Brief, Norfolk Southern contends that Mr. Kirkland's testimony from the FELA Action trial record should be admitted as evidence in this contested matter, both in support of its Cross-Motion and its response to the Reorganized Debtors' Summary Judgment Motion. As discussed in the Inadmissible Hearsay Memorandum, which responds to that section of the Brief, Norfolk Southern is wrong. The Reorganized Debtors are therefore requesting that this Court enter an order, substantially in the form attached to the Inadmissible Hearsay Memorandum as Exhibit A (the "Inadmissible Hearsay Order"), barring Norfolk Southern from using in this contested matter Mr. Kirkland's trial testimony in his Georgia State Court FELA Action against Norfolk Southern.

26. As addressed in the Inadmissible Hearsay Memorandum, the FELA Action trial record is inadmissible for the purpose of Norfolk Southern carrying its burden of proof, because Grace was not a party to the FELA Action. As Norfolk Southern has conceded, however, Grace may introduce portions of the FELA Action trial record to establish that Grace is not liable to Norfolk Southern for its indemnity claim.

27. Finally, it should be noted that, as discussed above, even if the FELA Action trial record were found to be admissible in support of Norfolk Southern's case-in-chief, there is nothing in the FELA Action, whether in Mr. Kirkland's testimony or otherwise, that implicates the Agreements' indemnities or in any way establishes that Grace's actions (or inactions, as the case may be) had anything to do with Mr. Kirkland's accidents. Indeed, the FELA Action trial record contains admissions by Norfolk Southern that directly exculpate Grace from any and all

liability for the accidents. Thus, if this Court were to decide to not disallow Norfolk Southern's indemnity claim and it were to admit the FELA Action trial record, there would be a great number of material facts in dispute, particularly in view of the Drumming and Silas Declarations.

### CONCLUSION

28. In light of the undisputed facts of this matter, and Norfolk Southern's failure to adduce any evidence to contradict the fact that the Agreements simply do not contractually obligate Grace to indemnify Norfolk Southern for injuries suffered by its employee at a time when Norfolk Southern had full dominion and control over, and full responsibility for, its employee, the railcars at issue and the places where he was injured, the Reorganized Debtors submit that this Court should enter an order:

- Granting the Reorganized Debtors' Summary Judgment Motion;
- Denying Norfolk Southern's Cross-Motion;
- Allowing the Norfolk Southern Claim in the undisputed amount of $6,922.35; and
- Disallowing the Norfolk Southern Claim in all other respects.

29. Further the Court should enter the Inadmissible Hearsay Order, barring Norfolk Southern from using in this contested matter the testimony of Mr. Kirkland from the trial in the FELA Action.

30. Finally, the Reorganized Debtors note that, pursuant to the indemnification provisions set forth in the Right-of-Way Agreement and Operating Agreement, Norfolk Southern may itself be liable to the Reorganized Debtors for the entirely unnecessary costs that they have incurred in defending this claim:

> Each of the parties hereto, for the liability imposed upon such party by this agreement, shall indemnify and hold entirely harmless the other party hereto.

(Operating Agreement at ¶ 5(f); Right-of-Way Agreement at ¶ 10(e).)

31. The Reorganized Debtors therefore reserve the right to institute future proceedings to recover any and all such amounts from Norfolk Southern.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors respectfully seek the entry of: (A) the Inadmissible Hearsay Order; and (B) the order in substantially the form attached to the Summary Judgment Motion as <u>Exhibit A</u>: (i) Granting the relief sought in the Summary Judgment Motion: (a) Allowing the Norfolk Southern Claim in the amount of $6,922.35, and (b) disallowing the Norfolk Southern Claim in all other respects; (ii) denying Norfolk Southern' Cross-Motion; and (iii) granting such other relief as may be appropriate.

Dated: March 8, 2017

THE LAW OFFICES OF ROGER HIGGINS
Southern, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors