<u>Exhibit C</u>

**Reorganized Debtors' Inadmissible Hearsay Memorandum**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF THE COURT'S ENTRY OF AN ORDER FINDING THAT THE FELA ACTION TRIAL RECORD IS INADMISSIBLE FOR THE PURPOSE OF NORFOLK SOUTHERN ESTABLISHING ITS INDEMNIFICATION CLAIM**

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors

---

[1]  The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ i

Introduction ..................................................................................................................... 1

I.    Fed. R. Evid. 804(b)(1) Will Not Permit Norfolk Southern to Use Either the FELA Action Trial Record or Mr. Kirkland's Testimony .......................................................................... 4

    A.    The Entire FELA Action Trial Record Does Not Qualify for the Fed. R. Evid. 804(b)(1) "Predecessor-in-Interest" Exception .................................................................................... 4

    B.    Fed. R. Evid. 804(b)(1) Provides Only a Limited Exception To The Hearsay Rule ....... 5

    C.    Grace Shares No Common Interests With Norfolk Southern; Therefore Norfolk Southern Cannot Be Grace's Predecessor-In-Interest Under 804(b)(1) .................................... 8

II.    The FELA Action Judgment Does Not Bind Grace—Nor Does It Provide a Basis for Admitting Mr. Kirkland's Testimony-—Because Grace Was Not Vouched Into The FELA Action ................................................................................................................................ 14

    A.    Voucher Cannot Bind Grace—Even if It Were Successful .......................................... 15

    B.    Norfolk Southern Failed to "Vouch" Grace into the FELA Action ............................. 17

    C.    "Voucher" Did Not Impose Any Duty to Defend Norfolk Southern ............................ 19

Conclusion ..................................................................................................................... 20

Exhibit I - Form of Order ..........................................................................................

**TABLE OF AUTHORITIES**

**Cases**

*Brown v. Felsen,*
   442 U.S. 127, 139 n. 10 (1979).................................................................. 16, 17

*City of Atlanta v. St. Paul Fire & Marine Ins.,*
   498 S.E.2d 782, 784 (Ga. Ct. App. 1998).............................................. 22

*Corner Pocket, Inc. v. Travelers Indem. Co.,*
   Civil Action No. 12-288, 2014 U.S. Dist. LEXIS 21327  at *6 (W.D. Pa. Feb. 20, 2014) ........ 4

*Creamer v. Gen. Teamsters Local Union,* 3
   26, 560 F. Supp. 495, 499 (D. Del. 1983)............................................... 6

*Government of the Canal Zone v. Pinto,*
   590 F.2d 1344, 1353-55 (5th Cir. 1979) ............................................... 7

*Haas v. 3M Co.,*
   613 Fed. App'x 191, 196 (3d Cir. 2015)............................................ 5, 7

*Hous. Cas. Co. v. St. Paul Fire & Marine Ins. Co.,*
   No. 3:09-926-CMC, 2010 U.S. Dist. LEXIS 34314 at *15-17 and *23-25
   (D.S.C. Apr. 7, 2010).......................................................................... 21

*Humble Oil & Ref. Co. v. Phila. Ship Maint. Co.,*
   444 F. 2d 727 (3d Cir. 1971)............................................................... 19

*In re Rudd,*
   104 B.R. 8 (Bankr. N.D. Ind. 1987).............................................. 18, 21

*Kreckel v. Walbridge Aldinger Co.,*
   721 N.W.2d 508, 512-13 (Wis. Ct. App. 2006)................................... 20

*Lloyd v. A, Export Lines, Inc.,*
   580 F. 2d 1179, 1185-86 (3d Cir. 1978) ................................................ 6

*Manchester Farms, Inc. v. Supremas, Inc.,*
   165 F. Supp. 3d 1366, 1371 (M.D. Ga. 2016) ..................................... 20

*Master Blaster, Inc. v. Dammann,*
   781 N.W.2d 19, 26 (Minn. Ct. App. 2010).................................... 15, 19

*Merisant Co. v. McNeil Nutritionals, LLC,*
   242 F.R.D. 303, 308 n.3 (E.D. Pa. 2007).............................................. 5

*Norfolk S. Ry. v. Sorrell*,
     549 U.S. 158, 160, (2007) ............................................................................ 1

*Peloro v. United States*,
     488 F.3d 163, 174-75 (3d Cir. 2007) ......................................................... 3

*Rucker v. Shalala*,
     894 F. Supp.,1209, 1215 (S.D. Ind. 1995) ......................................... 16, 17

*State Farm Fire & Cas. Co. v. Weaver*,
     585 F. Supp. 2d 722, 726 (D.S.C. 2008) .................................................. 21

*Trustees of Univ. of Pa.*,
     815 F. 2d 890, 905 (3d Cir. 1987) ............................................................. 2

*United States v. Feldman*,
     761 F.2d 380, 385 (7th Cir. 1985) ............................................................. 7

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
     505 F. Supp. 1190, 1252 (E Dist. Penn. 1980) .............................. 6, 7, 10

## Statutes

49 U.S.C. § 20302 ......................................................................................... 10

Ga. Code Ann. § 9-11-18 .............................................................................. 19

## Rules

Fed. R. Evid. 801 ........................................................................................... 2

Fed. R. Evid. 802 ........................................................................................... 2

Fed. R. Evid. 804 ................................................................................. passim

<u>**INTRODUCTION**</u>

Norfolk Southern's indemnity claim against Grace arises from a Georgia state court action (the "<u>FELA Action</u>") concerning two accidents involving a Norfolk Southern employee, Lester Kirkland, on January 23 and 26, 1998. In those accidents, Mr. Kirkland injured himself in a Norfolk Southern rail yard while attempting to release the defective handbrake on a Norfolk Southern railcar.[1] The issues in the FELA Action were whether Norfolk Southern provided an unsafe workplace for Mr. Kirkland and whether the defective handbrakes caused Mr. Kirkland's injuries. The FELA Action jury found that Norfolk Southern was negligent, and therefore liable to Mr. Kirkland. (Complaint at ¶¶ 5-6; McNeill Declaration Exhibit T (the "<u>FELA Action Judgment</u>").) *Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 160, (2007) (discussing causation standard for railroad negligence under FELA).

The sole issue in dispute in this contested matter is whether the Reorganized Debtors are contractually obligated to indemnify Norfolk Southern for the settlement amount in the FELA Action and certain other costs totaling $1,561,664.66 in the FELA Action, pursuant to one or more of four Agreements between Norfolk Southern and Grace.[2] Grace's potential liability—or

---

[1]    Capitalized terms not defined in this Inadmissible Hearsay Memorandum shall have the meaning ascribed to them in the *Omnibus Memorandum in: (A) Reply in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway; (B) Response to Cross-Motion for Summary Judgment Allowing Claim No. 7021; and (C) Support of an Order Finding the FELA Action Trial Record Is Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* (the "<u>Omnibus Memorandum</u>"), to which this Inadmissible Hearsay Memorandum is attached as <u>Exhibit C</u>.

[2]    Norfolk Southern and Grace are party to four "<u>Agreements</u>":

The agreement between Southern and Grace, dated as of December 15, 1980, regarding Norfolk Southern's lease of a railroad right-of-way at the Grace Plant (the "<u>Right-of-Way Agreement</u>," Exhibit A to the Norfolk Southern POC);

The agreement between Southern and Grace, dated as of December 15, 1980, regarding Norfolk Southern's operation of railroad right-of-way for 1,678 feet of "industrial track" located at the Grace Plant (the "<u>Operating Agreement</u>," Exhibit B to the Norfolk Southern POC);

lack thereof—turns on a number of issues, including whether Norfolk Southern has adduced sufficient evidence to support its claim.

Acknowledging that it otherwise lacks sufficient evidence to support its indemnity claim, in section II of its Brief, Norfolk Southern contends that Mr. Kirkland's testimony from the FELA Action trial record should be admitted as evidence in this contested matter, both in support of its Cross-Motion and its response to the Reorganized Debtors' Summary Judgment Motion. This Memorandum responds to section II of Norfolk Southern's Brief. Norfolk Southern is barred by law from introducing Mr. Kirkland's FELA Action testimony here, because such testimony would be inadmissible hearsay. Fed. R. Evid. 801; Fed. R. Evid. 802.

Norfolk Southern attempts to end-run this bar by arguing that the testimony from the FELA Action is admissible under Fed. R. Evid. 804(b)(1), because Mr. Kirkland is unavailable to testify, Mr. Kirkland's testimony was given under oath in an adversary proceeding in the FELA Action, and Grace's interest in cross-examining Mr. Kirkland was protected because Norfolk Southern was Grace's predecessor-in-interest in the FELA Action.[3] Norfolk Southern

---

The supplemental agreement between Southern and Grace, dated November 7, 1983, regarding the operation of an additional 477 feet of additional industrial track. (the "1983 Supplemental Agreement," Exhibit C to the Norfolk Southern POC); and

The supplemental agreement between Southern and Grace, dated October 3, 1990, by which Southern permitted Grace to construct an overhead loading structure with a spout (the "Specialty Product Loading Chute") (the "1990 Supplemental Agreement," Exhibit D to the Norfolk Southern POC).

[3]   The heading in Norfolk Southern's brief on this point suggests the entire trial record is admissible. That is wrong. The FELA Action trial record is, in its entirety, inadmissible against Grace in this contested matter for any purpose, including allegations of negligence or findings of liability by the jury. *Trustees of Univ. of Pa.*, 815 F. 2d 890, 905 (3d Cir. 1987) ("[J]udicial findings are inadmissible against a party not present in the prior litigation"). Norfolk Southern has effectively conceded that the FELA Action trial record is not admissible in its entirety by not citing to a single case opposing that well-established proposition. Each exhibit and all testimony must be considered piece by piece as to admissibility.

Norfolk Southern has likewise conceded that the FELA Action Judgment and other relevant elements of the trial record are admissible for the purpose of the Reorganized Debtors establishing Norfolk Southern's negligence and other issues relevant to the disallowance of Norfolk Southern's indemnification claim. *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) (explaining the "modern" theory of defensive collateral estoppel).

could not be more wrong.  Norfolk Southern was not Grace's predecessor-in-interest in the FELA Action, because Grace and Norfolk Southern had no "community of interests."  Indeed, Norfolk Southern and Grace were as adverse to each other at the time of the FELA Action as they are today in this contested matter.  Thus, Norfolk Southern could not have been Grace's predecessor-in-interest, and Mr. Kirkland's FELA Action testimony cannot be admitted under Fed. R. Evid. 804(b)(1) to help satisfy Norfolk Southern's burden of proof.

Norfolk Southern also contends that it "vouched" Grace into the FELA Action, thereby barring Grace from re-litigating issues from the FELA Action in this contested matter.  Norfolk Southern also appears to contend that the doctrine of voucher provides a basis for admitting Mr. Kirkland's testimony (although the Brief is vague on this point).  Norfolk Southern is wrong on both counts.  First, the doctrine of voucher is not available to Norfolk Southern because Norfolk Southern never attempted to join Grace as a party to the FELA Action.  Second, even if the voucher doctrine were available, Norfolk Southern's effort to vouch Grace into the FELA Action was untimely.

For these reasons, the Reorganized Debtors submit that this Court should enter an order in the form attached hereto as Exhibit I (the "Order") barring Norfolk Southern from introducing the FELA Action trial record, in particular Mr. Kirkland's testimony, as evidence against Grace for purposes of carrying Norfolk Southern's burden of proof against the Reorganized Debtors as to Norfolk Southern's indemnity claim.[4]

---

[4]    Norfolk Southern has not denied that Grace may use the entire FELA Action record against Norfolk Southern in this action for any purpose.  This point is not in dispute.  Plainly exhibits that are business records or self-authenticating government records like Mr. Kirkland's death certificate may be admitted through the ordinary process under the Federal Rules of Evidence.

3

### BACKGROUND

1.      Norfolk Southern has stated that Exhibit X to the McNeill Declaration is the trial record for the FELA Action. Solely for purposes of seeking this Court's order barring Norfolk Southern from introducing Mr. Kirkland's testimony in the FELA Action trial record against Grace, the Reorganized Debtors do not contest that assertion. But Grace reserves the right to contest the authenticity and admissibility of any particular exhibit in the trial record, and to contest the admissibility of any portion of the testimony in the trial record.

### ARGUMENT

I.     **Fed. R. Evid. 804(b)(1) Will Not Permit Norfolk Southern to Use Either the FELA Action Trial Record or Mr. Kirkland's Testimony**

    A.     **The Entire FELA Action Trial Record Does Not Qualify for the Fed. R. Evid. 804(b)(1) "Predecessor-in-Interest" Exception**

2.      Norfolk Southern has argued in its Brief that the entire FELA Action trial record is admissible in this contested matter. That claim is plainly too broad. Each individual witness's testimony from the FELA Action must be evaluated independently to see if it survives a hearsay objection. Fed. R. Evid. 804. Mr. Kirkland apparently passed away in 2009.[5] Norfolk Southern contends in its Brief that Mr. Kirkland's FELA Action testimony may be used here under the hearsay exception found in Fed. R. Evid. 804(b)(1), contending that Norfolk Southern was Grace's predecessor-in-interest. Norfolk Southern is wrong. Grace and Norfolk Southern were and are directly adverse on crucial factual and legal issues pertinent to Norfolk Southern's claim

---

[5]     Of course, the only evidence Norfolk Southern produced to document Mr. Kirkland's death was a newspaper obituary in Exhibit W to the McNeill Declaration, which of course is inadmissible hearsay for this purpose. *Corner Pocket, Inc. v. Travelers Indem. Co.*, Civil Action No. 12-288, 2014 U.S. Dist. LEXIS 21327 at *6 (W.D. Pa. Feb. 20, 2014) ("[G]enerally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted ...") (citing *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 308 n.3 (E.D. Pa. 2007)). Thus, no record evidence supports Norfolk Southern's contention that Mr. Kirkland is, in fact, unavailable to testify.

for indemnity, and thus were adverse for purposes of deposing or cross-examining Mr. Kirkland.

Therefore, Fed. R. Evid. 804(b)(1) does not support Norfolk Southern's admission of Mr.

Kirkland's testimony in this contested matter.

**B.      Fed. R. Evid. 804(b)(1) Provides Only a Limited Exception To The Hearsay Rule**

3.      Fed. R. Evid. 804(b)(1) admits former testimony as an exception to the hearsay

rule when the testimony:

> (A) was given as a witness at a trial, hearing, or lawful deposition,
> whether given during the current proceeding or a different one; and
> (B) is now offered against a party who had—or, in a civil case,
> whose predecessor in interest had—an opportunity and similar
> motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).

4.      Norfolk Southern seeks to offer Mr. Kirkland's testimony from the FELA Action

in this matter, suggesting that the FELA Action testimony qualifies as admissible sworn

testimony under Fed. R. Evid. 804(b)(1). Norfolk Southern further contends it was an adequate

"predecessor-in-interest" for Grace in the FELA Action as required by Rule 804(b)(1). Norfolk

Southern is wrong.

5.      The Third Circuit has held that one party is the "predecessor-in-interest" under

Rule 804(b)(1) of a second, unrelated party when there is "sufficient community of interest

shared" between the parties. *Lloyd v. A, Export Lines, Inc.*, 580 F. 2d 1179, 1185-86 (3d Cir.

1978). A sufficient community of interest arises when the two parties have similar (but not

necessarily identical) motives. *Haas v. 3M Co.*, 613 Fed. App'x 191, 196 (3d Cir. 2015).

6.      An Eastern District of Pennsylvania court fleshed out the Third Circuit's *Lloyd*

holding by identifying a number of factors to consider when evaluating whether a potential

candidate party in fact had a similar motive to develop testimony:

> Such circumstances or factors which might influence motive to
> develop testimony include (1) the type of proceeding in which the
> testimony is given, (2) trial strategy, (3) the potential penalties or
> financial stakes, and (4) the number of issues and parties. Thus in
> determining whether a party or his predecessor in interest had the
> opportunity and similar motive to develop the testimony, the court
> must evaluate, in terms of both the prior and the present
> proceedings (1) the similarity of issues, (2) the purpose for which
> the testimony is offered, and (3) the context or circumstances in
> which the testimony is given.

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1252 (E Dist. Penn.

1980); *see also Creamer v. Gen. Teamsters Local Union*, 326, 560 F. Supp. 495, 499 (D. Del.

1983) (finding testimony inadmissible under 804(b)(1) because parties "did not share the same

motive in cross-examination [and] was not its predecessor in interest"); *United States v.

Feldman*, 761 F.2d 380, 385 (7th Cir. 1985) (citing *Zenith Corp*, 505 F. Supp. 1190, with

approval).

7.      The *Zenith* court held in applying the *Lloyd* rule that "it is highly significant that

the 'previous party' in Lloyd was a government investigator, presumably impartial, who had no

role in the subsequent legal action." *Zenith Radio*, 505 F. Supp. at 1254 (citing *Lloyd.*, 580 F. 2d

at 1185-86). The *Zenith* court further held that, "[e]ntirely different considerations come into

play when prior testimony is offered against one co-defendant on the basis of prior examination

of the witness on behalf of a different co-defendant, ***when the two have potentially conflicting

interests and litigation strategies*.**" *Id.* at 1255 (emphasis added).

8.      Other courts have used similar factors in determining whether prior testimony is

admissible under Rule 804(b)(1)'s predecessor-in-interest exception. The *Zenith* court also

looked to the Fifth Circuit, for example. *Id.* (citing *Government of the Canal Zone v. Pinto*, 590

F.2d 1344, 1353-55 (5th Cir. 1979)). In *Pinto*, the Fifth Circuit refused to admit testimony from

a preliminary hearing against a defendant who had not been represented at the hearing. 590 F.2d

at 1353-55. The *Zenith* court explained the Fifth Circuit's holding: "[T]he reliability of preliminary hearing testimony is not assured by the mere fact of cross-examination but only by cross-examination designed to illuminate the accuracy of the statement as it concerns the particular defendant." *Zenith Radio*, 505 F. Supp at 1255 (citation omitted.)

9.    The Third Circuit's analysis in *Haas*, cited by Norfolk Southern in its Brief to support its contention that Norfolk Southern is Grace's predecessor-in-interest, is also quite instructive on the issue of "similar motive." There the Court stated that, "[t]he similar-motive requirement assures that 'the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do'." *Haas*, 613 Fed. App'x at 196. In *Haas,* the defendant, General Electric, unsuccessfully argued that earlier deposition testimony was not admissible. The *Haas* court found that the former testimony was admissible only ***because GE had been involved in the decision to permit counsel for a co-defendant (Boeing) to be the lead questioner during the deposition***. What's more, GE's counsel ***actually participated in the deposition*** and had been afforded "the opportunity to object or interfere if it was deemed necessary." *Id.* The *Haas* court further found that Boeing's counsel "was able to successfully elicit … [certain] information … that provided the basis for GE's summary judgment motion." Boeing thereafter avoided liability on an entirely different basis, without "showing some hostility to GE's interests." *Id.*

10.    Thus, Courts have found that parties have common interests ***only when***: (i) the candidate successor's counsel had been present, and the parties were litigating on the same side of the issue with similar objectives; ***or when*** (ii) cross-examination sought to be admitted against a successor in subsequent litigation had been conducted by a neutral party. *Zenith Radio*, 505 F. Supp at 1254 (citing *Lloyd.*, 580 F. 2d at 1185-86).

**C.    Grace Shares No Common Interests With Norfolk Southern; Therefore Norfolk Southern Cannot Be Grace's Predecessor-In-Interest Under 804(b)(1)**

11.    Norfolk Southern and Grace never shared any "community of interest" regarding the FELA Action because, as discussed more fully below: (i) they have never been on the same side of any issues, whether involving the FELA Action or this contested matter; (ii) Grace's counsel was not present when Norfolk Southern deposed Mr. Kirkland prior to trial; indeed, that deposition took place even before Norfolk Southern informed Grace about the existence of the FELA Action); and (iii) Norfolk Southern was not a neutral party when it cross-examined Mr. Kirkland at the FELA Action trial. *Id.* (citing *Lloyd*, 580 F. 2d at 1185-86).

**1.    *Norfolk Southern and Grace's Interests Are Adverse As To The Indemnity Agreements.***

12.    The Operating Agreement and the Right-of-Way Agreement both contain indemnities requiring Grace, if it was negligent and Norfolk Southern was not found negligent, to indemnify Norfolk Southern for 100% of damages arising from liability within the scope of the indemnification. Grace could also be liable for "violations … of the terms of this agreement or by the negligence of … [Grace] concurring with the negligence of a third party." Grace and Norfolk Southern would each be 50% liable if personal injury was caused by their "joint and concurring negligence." Norfolk Southern would bear all such liability if it alone were negligent. (Right-of-Way Agreement at ¶ 10; Operating Agreement Exhibit A at ¶ 5.) The Operating Agreement and Right-of-Way Agreement also contain substantially identical indemnities involving the "Facility," wherein under certain circumstances Grace could become contractually liable to indemnify Norfolk Southern. (Right-of-Way Agreement at ¶ 20; Operating Agreement Exhibit A at ¶ 16.)

8

13.     The 1983 Supplemental Agreement contained no indemnification provision. The 1990 Supplemental Agreement contains a single indemnity provision that, if applicable, requires Grace to "indemnify and hold harmless" Norfolk Southern for "any and all loss, injury or damage" arising from the use of a structure known as the "Specialty Product Loading Chute" at the Grace Plant, regardless of whether Norfolk Southern was negligent. (1990 Supplemental Agreement at ¶ 5.) Thus, if the Specialty Product Loading Chute was used to load a railcar and an accident occurred that fell within the scope of the indemnity, Grace would be potentially obligated to indemnify Norfolk Southern.

14.     Norfolk Southern's various pleadings in these chapter 11 cases disclose that its motives, first in deposing, and then in cross-examining, Mr. Kirkland in the FELA Action, were antithetical to Grace's interests. Indeed, Norfolk Southern sought at seemingly every turn to:

- Absolve itself of all liability and put that liability on Grace for the operating condition of the railcars. (Complaint at ¶¶ 5-6.);

- Establish that Grace used the Specialty Product Loading Chute to load the January 23 and January 26 railcars, so as to inculpate the 1990 Supplemental Agreement indemnity and make Grace 100% liable; and

- Establish that Grace was negligent in some way so as to inculpate the Operating Agreement and Right-of-Way Agreement and thereby make Grace liable for Mr. Kirkland's injuries, notwithstanding Norfolk Southern's own negligence.

15.     None of these motives aligns with Grace's motives, which are to:

- Establish that the Agreements' indemnities cannot apply in the circumstances of the two alleged accidents, which were the result of Mr. Kirkland's attempt to release defective handbrakes on railcars consigned to, and owned and controlled by, Norfolk Southern, when the accidents occurred at Norfolk Southern-owned and –controlled facilities. (Complaint at ¶¶ 5-6.); and

- In the alternative, show that:

  - Norfolk Southern has not proven that any action by Grace, negligent or otherwise, caused Mr. Kirkland's injuries. (Reply Memorandum at § III.); or

  - Grace was not negligent in any of its actions at the Grace Plant. (*Id*.); or

- Norfolk Southern had failed to take proper actions and precautions in transporting a product whose nature and characteristics were well known to Norfolk Southern.

16.    Norfolk Southern's cross-examination of Mr. Kirkland could not have—and did not—protect Grace's interests. *Zenith Radio*, 505 F. Supp at 1255 (reliability insured "only by cross-examination designed to illuminate the accuracy of the statement as it concerns the particular defendant"). Therefore, as a matter of law, Norfolk Southern was not Grace's predecessor-in-interest under Fed. R. Evid. 804(b)(1).

### 2.    *Norfolk Southern's Adverse Interests Are Manifest on the Face of Mr. Kirkland's FELA Action Complaint*

17.    Mr. Kirkland's FELA Action Complaint confirms the mismatch between Norfolk Southern's motives and those of Grace. (Complaint, *passim*.) The Complaint named only Norfolk Southern as a defendant. It never named Grace as a defendant, and never even referred to Grace by name in any capacity. The Complaint specifically alleges five Counts against Norfolk Southern. None of them implicate Grace:

- *Count One* alleges generally that Norfolk Southern was negligent in maintaining its railroad cars and in its work practices. (*Id.*)

- *Count Two* alleges Norfolk Southern failed to provide Mr. Kirkland a safe place to work. (*Id.*)

- *Count Three* alleges Norfolk Southern violated the Handbrake Act, 49 U.S.C. § 20302, by failing to provide a working handbrake on the railcar where Mr. Kirkland injured himself. (*Id.*)

- *Count Four* again alleges Norfolk Southern's negligence. (*Id.*)

- *Count Five*, like Count Two, alleges Norfolk Southern failed to provide a safe place to work. (*Id.*)

Because Norfolk Southern's duty under FELA is non-delegable, *see Lauria v. AMTRAK*, Civil Action no. 95-1561, 1997 U.S. Dist. LEXIS 1810 at *4 (E.D. Pa. Feb. 19, 1997) ("Under FELA, a railroad has a non-delegable duty to provide its employees with a reasonably safe place to

work."), Norfolk Southern's efforts to elicit testimony from Mr. Kirkland about Grace's conduct could only be intended to make a record that could later be used to bring Mr. Kirkland's injuries within the scope of the Grace indemnities. That testimony had no bearing whatsoever on the issue before the FELA Action court: whether Norfolk Southern was negligently liable to Mr. Kirkland. (Tr. IV:154:12-22.)

> **3.** **Norfolk Southern's Exclusion of Grace From the FELA Action Demonstrates That Norfolk Southern's and Grace's Interests Were Directly Adverse**

18.    It is clear from the various documents attached to the McNeill Declaration that Norfolk Southern intentionally created a record with Mr. Kirkland before it ever formally notified Grace about Mr. Kirkland's accidents and the existence of the FELA Action. Mr. Kirkland's accidents occurred in late January 1998. Mr. Kirkland filed suit on July 8, 1998. (Complaint.) It was not until September 15, 1999, that Norfolk Southern's Counsel, Benjamin Garland, first contacted Grace about the Mr. Kirkland's Complaint and the FELA Action—a full eighteen months after the incidents occurred, and more than fourteen months after Mr. Kirkland filed his Complaint. (B. Garland letter, dated Sep. 15, 1999, McNeill Declaration Exhibit I (the "9/15/99 Garland Letter").) Moreover, Norfolk Southern waited until after it had deposed Mr. Kirkland before it contacted Grace. Indeed, Garland's letter states that Mr. Kirkland testified at deposition that "the cars he was working on were loaded with kaolin by Grace employees …" and that "[Grace] did not blow off the cars or otherwise clean them as they are supposed to do and that the presence of the excess kaolin overspill caused him to slip." (*Id.*) Norfolk Southern's sole avowed purpose in the letter was to assert that this deposition testimony elicited by Norfolk Southern—without any notice whatsoever to Grace—formed the basis of Grace's alleged indemnification obligation to Norfolk Southern. (*Id.*) Garland's letter plainly admits that Norfolk Southern's examination of Mr. Kirkland was adverse to Grace. Finally, the letter

11

seeks Grace's admission of liability and demands that Grace assume the defense of the FELA Action. Thus, Norfolk Southern's conduct demonstrates that Norfolk Southern and Grace had no commonality of interest. Their interests were—and remain—directly adverse.

> **4.**    ***Norfolk Southern's Cross-Examination of Mr. Kirkland in the FELA Action Was Adverse to Grace***

19.    The FELA Action trial record further confirms the mismatch between Norfolk Southern's motives and those of Grace. Norfolk Southern cross-examined Mr. Kirkland with the sole purpose of implicating Grace. For example, Norfolk Southern sought to show that Grace refused to clean the rail cars:

> Q [by Garland]  You testified sometimes you would complain to him [Wood, a Grace employee] before you pulled the cars off and he would send a fellow back and let him blow it some more; is that right?
>
> A [by Mr. Kirkland]  Yes, sir.
>
> Q  But then you are saying now sometimes you would complain and he wouldn't do that?
>
> A  Yes, sir.  Sometimes I would complain and he wouldn't the cars off.
>
> Q  Did he give you any reason?
>
> A  No, sir.

(Tr. II:24:14-23.)  In another example, Norfolk Southern sought to show that Grace ran an unsafe kaolin mining and processing plant:

> Q [Garland]  Have you had occasion when new people come to work that job to tell them anything about the kaolin, and if so, what do you tell them?
>
> A [Mr. Kirkland]  I tell the new people that come, you know, we are having a lot of trouble with the Grace plant, and it's real dangerous.  And I tell them to be -- you know, be careful, and I try to let them stay up at the switch.  And I have more experience, so I go down there and try to mess with it.

DOCS_DE:212636.1 91100/001

(Tr: II:18:3-10.)  Most crucially, Norfolk Southern attempted to get Mr. Kirkland to testify that

the January 26, 1998 incident actually happened at the Grace Plant:

> Q  Was that -- when you made that little slip, was that there at
> Grace and Company or was that at Warren?
>
> A  No, sir.  It was back at Aiken -- at Aiken Depot.
>
> Q  But you didn't testify yesterday that you didn't have to get up,
> you were able to just couple them and take off; do you remember
> that testimony yesterday?
>
> A  Yes, sir.  I remembered it as the three cars on Friday.
>
> Q  But it's different you say on Monday?
>
> A  Yes, sir, because there was -- like a bunch of loads on Friday,
> and I don't remember getting up on the cars on Friday.  I may have,
> but they might have been in the middle of the cut.
>
> Q  So when you were talking to us yesterday about just being able
> to couple it up and not having to get on it until you got down the
> road, you were just talking about Friday; is that what you are
> telling us, or do you remember which day it was?
>
> A  I know I had to get on the cars on Monday because they were
> shipping like all of the loads, so I had to get on those loads.  They
> had loaded all weekend, and they were out of empties and we took
> them more empties.  On Fridays they have a lot of cars out there,
> and I may or may not have had to get on those cars.  I don't
> remember -- we try not to get on them if we don't have to.
>
> Q  So you are really not sure whether you got on them or not; is
> that what you are telling us now?
>
> A  Well, I'm pretty sure I didn't get on them because the way I
> worked the plant.  I try to keep them set up next to my empties,
> and I don't get on them unless I have to.
>
> Q  And you can't really remember one way or the other now; is
> that correct?
>
> A  No, I really can't.

(Tr. II:27:13-28:20.)

13

20.    None of the above-cited cross-examination questions had any bearing whatsoever on Norfolk Southern's FELA liability.  They served solely to implicate Grace as a predicate to Norfolk Southern's asserting an indemnification claim against Grace.  It would appear that Norfolk Southern's trial strategy was not to escape its own liability to Mr. Kirkland, but to implicate the Agreements' various indemnities.  Norfolk Southern therefore could not have been Grace's "predecessor-in-interest."[6]  When viewed together, the structure of the indemnities, Norfolk Southern's tactics at trial and its September 15, 1999 indemnification demand all demonstrate that Norfolk Southern's interests in the FELA Action were directly adverse to Grace's interests.  Thus, Mr. Kirkland's FELA Action testimony is not admissible under Fed. R. Evid. 804(b)(1).

**II.    The FELA Action Judgment Does Not Bind Grace—Nor Does It Provide a Basis for Admitting Mr. Kirkland's Testimony——Because Grace Was Not Vouched Into The FELA Action**

21.    Norfolk Southern contends that it "vouched" Grace into the FELA Action, thereby precluding Grace from litigating in this contested matter apparently most, if not all, of the issues surrounding its indemnity claim.  Norfolk Southern is wrong.

22.    Voucher is a common-law doctrine that "comes from the ancient practice of bringing a warrantor into an action by 'writ of voucher'." *Master Blaster, Inc. v. Dammann*, 781 N.W.2d 19, 26 (Minn. Ct. App. 2010).  Nowadays, modern third-party practice has supplanted

---

[6]    By contrast, if Grace had been present at trial, it would have cross-examined Mr. Kirkland to make clear that: (i) both incidents involving Mr. Kirkland involved a failure of the railcar handbrakes; (ii) the January 23, 1998 incident did not involve a Grace railcar; (iii) Norfolk Southern assumed full responsibility for railcars when it took consignment of railcars from its customers (including but not limited to Grace); (iv) that Mr. Kirkland failed to use a broom to sweep the railcars of Kaolin powder even though he was aware a broom would reduce the risk to himself and that he had asked Grace to use a broom so he wouldn't have to; (v) Mr. Kirkland was aware of the risk posed by wet kaolin and that Grace warned him and Norfolk Southern of that risk; (vi) both incidents occurred after Norfolk Southern took consignment of the railcars, and that the railcars were part of Norfolk Southern-owned and –controlled trains parked at Norfolk Southern-owned and –controlled facilities; and (vii) Mr. Kirkland had been prescribed pain medications after the January 23 incident and how those medications affected his fitness for work on January 26.

14

"voucher." *Id.* Indeed, the very cases to which Norfolk Southern has cited, including *Master Blaster*, require a party seeking to "vouch" a third party into an action to have first attempted to join that party using modern third-party practice. *Id.* As discussed below, Norfolk Southern never tried to join Grace to the FELA Action—which in railroad sidetrack agreement indemnity cases, happens as a matter of course. *See, e.g., Welch v. Kan. City S. Ry. Co.*, 940 F. Supp. 2d 402 (W.D. La. 2013) (putative indemnitee joined putative indemnitor as third-party defendant).

23.    Moreover, even if that were not a fatal blow to its "voucher" argument, Norfolk Southern failed to perfect its "voucher" because it did not even notify Grace of the FELA Action until more than fourteen months after that litigation commenced. Worse, Norfolk Southern waited until after it had deposed Mr. Kirkland before notifying Grace of the FELA Action. Finally, as discussed in the next section, even if Norfolk Southern had successfully "vouched" Grace into the FELA Action, it would not preclude any issues from being litigated in this contested matter—except for the issue of Norfolk Southern's negligence, which the FELA Action clearly decided.

### A.    Voucher Cannot Bind Grace—Even if It Were Successful

24.    Norfolk Southern contends that it and Grace were in privity with one another as to the FELA Action because it "vouched" Grace into the FELA Action, and that "[p]arties that are brought into privity with one another are *precluded from re-litigating issues that have already been adjudicated with relation to each other.*" (NS Brief at pp. 19-20 (emphasis added).) Even assuming *arguendo* that Norfolk Southern had successfully "vouched" Grace into the FELA Action, which Norfolk Southern did not (as discussed below), Norfolk Southern is wrong to assert that such "voucher" has resolved any issues between them, except one: The FELA Action jury found that Norfolk Southern was negligent and failed to provide Mr. Kirkland with a safe workplace. (FELA Action Judgment.)

15

25.     The FELA Action judge's instructions to the jury make that point clear:

> So the first issue for you to decide is whether the Defendant or any of its employees, other than the Plaintiff, was negligent, and if so, whether such negligence was the legal cause of any damage sustained by the Plaintiff. Under FELA, it was the continuing duty of the defendant railroad to use reasonable care, under the circumstances, in furnishing the Plaintiff with a reasonably safe place in which to work and to use reasonable care, under the circumstances, to maintain and keep such place of work in a reasonably safe condition.

(Tr. IV:154:12-22.)

26.     Therefore, it is clear that Norfolk Southern was negligent, and it may not re-litigate that issue in this contested matter. *Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979) ('collateral estoppel [i.e. issue preclusion] treats as final only those questions ***actually and necessarily*** decided in a prior suit") (emphasis added); *see also Rucker v. Shalala*, 894 F. Supp. 1209, 1215 (S.D. Ind. 1995) ("Issue preclusion involves a second action that is a different cause of action from the previous suit, but precludes re-litigation of issues fully adjudicated in the prior suit").

27.     Norfolk Southern, on the other hand, seems to believe the FELA Action resolved all disputes regarding the Indemnity Agreements between Norfolk Southern and Grace.  Norfolk Southern supports that contention by citing to *In re Rudd*, 104 B.R. 8 (Bankr. N.D. Ind. 1987). But *Rudd* does not support Norfolk Southern's contention.  At most, *Rudd* stands for the proposition that, had Grace actually been "vouched" into the FELA Action (which it was not), Grace would not have been able to re-litigate in this contested matter those ***issues*** actually litigated in the FELA Action.  (Brief at p. 20-23.).

28.     As discussed above, the only issue decided in the FELA Action was Norfolk Southern's negligence. The FELA Action judge's instructions to the jury confirm the point, because they dealt with issues such as Mr. Kirkland's contributory negligence to his injuries, the

parties' efforts (or lack thereof) to mitigate  Mr. Kirkland's damages, and on how the jury may calculate damages.   (Tr. IV:154 *et seq*.)   The instructions  mentioned  nothing  about  the Agreements or about Grace.  Therefore, Norfolk Southern's argument that its failed attempt to "vouch" Grace into the FELA Action has any preclusive effect as to the issue before this Court— whether Grace has a contractual indemnity obligation to Norfolk Southern—must fail. *Brown*, 442 U.S. at 139 n. 10; *Rucker*, 894 F. Supp. at 1215.

### B.    Norfolk Southern Failed to "Vouch" Grace into the FELA Action

29.    As discussed above, even if Norfolk Southern had successfully "vouched" Grace into the FELA Action, it would have had no practical effect, as the only issue decided in that action was Norfolk Southern's own negligence, and Norfolk Southern is bound by the FELA Action jury's findings either way.  But Norfolk Southern was not successful in "vouching" Grace into the FELA Action, both because its notice was untimely and prejudicial to Grace, and because Norfolk Southern failed to first join Grace to the FELA Action.

### *1.    Norfolk Southern's Voucher Notice Was Untimely and That Late Notice Prejudiced Grace*

30.    The undisputed facts show that Norfolk Southern failed to provide Grace with proper notice of the FELA action.  Norfolk Southern's Brief buries the rule about proper notice in footnote 17.  There Norfolk Southern cites *Humble Oil & Ref. Co. v. Phila. Ship Maint. Co.*, 444 F. 2d 727 (3d Cir. 1971), for the proposition that proper notice to an indemnitor include "(1) contains 'full and fair information' concerning the pending action ... (3) contains an offer to surrender control of the action to the indemnitor at least to that portion of the claims for which the indemnitee seek ultimately to hold the indemnitor liable; (4) be given so shortly after the institution of suit as to permit complete control of pretrial proceedings by the indemnitor." *Id.* Norfolk Southern plainly failed to meet that standard.

17

31.     Mr. Kirkland filed his Complaint in July 1998. Norfolk Southern first provided notice of the FELA Action to Grace fourteen months later, on September 15, 1999. (9/15/99 Garland Letter.) What's more, Norfolk Southern waited to send that letter until after Norfolk Southern had deposed Mr. Kirkland and elicited testimony that Grace caused Mr. Kirkland's injuries. Finally, Norfolk Southern's correspondence failed to provide Grace with a copy of Norfolk Southern's answer and affirmative defenses. (*Id.*)

32.     Norfolk Southern's demand for indemnity failed to meet the 3rd Circuit's requirements for timely voucher, because: (1) it did not include all of the information about Norfolk Southern's defense; (2) Norfolk Southern had locked in Mr. Kirkland's testimony on issues affecting the indemnity before it provided notice, thus giving Grace no control on those issues for which Norfolk Southern sought to hold Grace liable and blocking Grace from asserting its own defenses; and (3) the demand came 14 months after the complaint was filed and after the parties had exchanged discovery. Plainly, Norfolk Southern's actions prevented Grace from obtaining in Mr. Kirkland's FELA action a full and fair defense on the Norfolk Southern indemnity claim. *See, e.g. Kreckel v. Walbridge Aldinger Co.*, 721 N.W.2d 508, 512-13 (Wis. Ct. App. 2006) (finding twenty-six month delay and notice after commencement of discovery untimely).

### 2.     *Norfolk Southern Failed to Perfect Its "Voucher" Because It Failed to Join Grace to the FELA Action*

33.     Norfolk Southern cites the *Master Blaster* case to support its "voucher" argument. (Brief at 22-23.) The *Master Blaster* court noted that modern third-party pleading practice has supplanted common-law "vouching" under the applicable federal and state rules of civil procedure. *Master Blaster*, 781 N.W. 2d at 27. Indeed, in *Master Blaster*, the court found that

18

vouching in that case was appropriate only because joinder had failed on personal jurisdiction grounds. 781 N.W. 2d at 23-24.

34.     Here, it is undisputed that Norfolk Southern never tried to join Grace to the FELA Action. Yet, applicable Georgia law would have permitted Norfolk Southern to join an indemnity claim against Grace to the FELA Action. *See* Ga. Code Ann. § 9-11-18. We do not need to litigate whether the Georgia court would have had personal jurisdiction over Grace, because personal jurisdiction always can be waived. *See Manchester Farms, Inc. v. Supremas, Inc.*, 165 F. Supp. 3d 1366, 1371 (M.D. Ga. 2016) ("A defendant may waive personal jurisdiction"). Norfolk Southern's failure to attempt to join Grace to the FELA Action thus defeats its attempt to now argue that it "vouched" Grace into the FELA Action.

**C.     "Voucher" Did Not Impose Any Duty to Defend Norfolk Southern**

35.     Norfolk Southern contends that its attempt to "vouch" Grace in the FELA Action—by sending a few letters to Grace—somehow imposed on Grace a common law "duty to defend" Norfolk Southern in the FELA Action. That is wrong as a matter of law. A common law "duty to defend," which is what Norfolk Southern is alleging, is determined by the face of the Complaint. There was nothing in Mr. Kirkland's Complaint that implicated Grace or created for Grace a "duty to defend" Norfolk Southern in the FELA Action.

36.     In South Carolina, the rule in insurance cases, which provides a fair analog for this matter because Grace as a contractual indemnitor has less of a duty at law than the duty imposed on an insurance company, is that the face of the complaint and other facts known to the insurer decide the scope of the insurer's duty to defend. *Hous. Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:09-926-CMC, 2010 U.S. Dist. LEXIS 34314 at *15-17 and *23-25 (D.S.C. Apr. 7, 2010); *State Farm Fire & Cas. Co. v. Weaver*, 585 F. Supp. 2d 722, 726 (D.S.C. 2008) ("Pursuant to South Carolina law, an insurer's duty to defend is determined by the

19

allegations of the underlying complaint"). Further the duty to defend is distinct from the duty to indemnify. *Weaver* at 585 F. Supp. 2d 726. The rule is the same under Georgia law. *See City of Atlanta v. St. Paul Fire & Marine Ins.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) (holding that you look to the face of the complaint to find a duty to defend and "where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit")

37.     Norfolk Southern contends that Grace's duty to defend arises—which Norfolk Southern then improperly uses to bootstrap  Mr. Kirkland's testimony into this action—when "the facts actually or constructively known to the indemnitor at the time of the defense of the action is proffered to it demonstrate that liability will eventually fall on the indemnitor." (Brief at 27 citing *Humble Oil*, 444 F. 2d at 734).[7]  Norfolk Southern is wrong.  Grace's duty to defend is determined by the face of the Complaint (there being no other relevant facts), and the Complaint does not state any theory of liability implicating Grace.  (Complaint, *passim*.)  As discussed above, the claims alleged in Mr. Kirkland's Complaint speak to Norfolk Southern's bad conduct. There is no theory alleged in the Complaint that would be covered by any of the Indemnity Agreements.  Thus, Grace had no duty to defend Norfolk Southern in the FELA Action.

### CONCLUSION

38.     For the foregoing reasons, this Court should enter an order barring Norfolk Southern from using Mr. Kirkland's FELA Action testimony against Grace in this contested matter, and finding that Grace is not bound by any judgment of the Georgia State trial court in Mr. Kirkland's FELA Action against Norfolk Southern.

---

[7]     Norfolk Southern cites to no authority and makes no actual argument how a "duty to defend" makes testimony or evidence from one action admissible as an exception to the hearsay rules in another action.

WHEREFORE, the Reorganized Debtors respectfully seek the entry of an order substantially in the form attached to the Motion as <u>Exhibit A</u>, (i) Excluding Mr. Kirkland's FELA Action testimony as inadmissible hearsay; (ii) Finding that Norfolk Southern did not "vouch" Grace into the FELA Action; (iii) Finding that the FELA Action determined that Norfolk Southern was negligent, and precluding Norfolk Southern from re-litigating that issue in this contested matter; and (iv) granting such other relief as may be appropriate.

Dated: March 8, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

<u>/s/ James E. O'Neill</u>
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors

## EXHIBIT I

**Form of Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KG) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | **Re docket no. _____** |
| | ) | **Hearing Agenda item no. _____** |
| | ) | |

## ORDER BARRING NORFOLK SOUTHERN FROM USING MR. KIRKLAND'S
## GEORGIA STATE TRIAL TESTIMONY IN THIS CONTESTED MATTER

Upon consideration of the *Memorandum in Support of The Court's Entry of an Order Finding That the FELA Action Trial Record Is Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* (the "Memorandum") it appearing that the relief requested is in the best interests of the Reorganized Debtors, their estates, their creditors and other parties-in-interest; the Court having jurisdiction to consider the Memorandum and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; consideration of the Memorandum and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and that this Court may enter an order consistent with Article III of the United States Constitution; venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Memorandum having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:[2]

---

[1]    The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co. Conn. ("Grace-Conn.").

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

1.      The relief sought in the Memorandum is granted in its entirety.

2.      The testimony of Mr. Lester Kirkland from the Georgia State Court trial of Mr. Kirkland's FELA Action against Norfolk Southern is found to be inadmissible hearsay and Norfolk Southern may not introduce Mr. Kirkland's testimony to adduce evidence or to support any contention in the resolution of Claim no. 7021.

3.      This Court finds that Norfolk Southern did not "vouch" the Reorganized Debtor into Mr. Kirkland's FELA Action against Norfolk Southern, and thus the verdict in the FELA Action has no claim or issue preclusive effects on the Reorganized Debtor in the resolution of Claim no. 7021.

4.      This Court finds that the only issue of consequence for this Contested Matter that was resolved in Mr. Kirkland's FELA Action against Norfolk Southern was that Norfolk Southern's negligence caused Mr. Kirkland's injuries.  Norfolk Southern is precluded from relitigating that issue in the resolution of Claim no. 7021.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order and the resolution of Claim no. 7021.

DOCS_DE:212636.1 91100/001

7.      This Order shall be effective and enforceable immediately upon entry and its provisions

shall be self-executing and shall not be stayed under Fed. R. Bankr. P. 7062, Fed. R.

Bankr. P. 9014 or otherwise.

Dated: _____, 2017

_____

Honorable Kevin Gross
United States Bankruptcy Judge

3