## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KG) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | **Hearing Date: May 3, 2017 at 11:00 a.m.** |
| | ) | **Objection Deadline: April 14, 2017 at 4:00 p.m.** |

## MOTION FOR AN ORDER BARRING THE KIRKLAND TESTIMONY IN FELA ACTION AS HEARSAY EVIDENCE

The above-captioned reorganized debtors (the "Reorganized Debtors") file this motion (the "Motion") for entry of an order substantially in the form attached hereto as Exhibit A (the "Order") barring Norfolk Southern Railway ("Norfolk Southern") from using as evidence in this contested matter the testimony of Lester Kirkland in a prepetition Georgia state court action (the "FELA Action").[2] Norfolk Southern was the sole named defendant in the FELA Action, and never attempted to join any Grace entity as a third party to that action. Mr. Kirkland's testimony is therefore inadmissible hearsay for the purpose of proving the truth of any claims asserted by Norfolk Southern against Grace in regard to the indemnity portion of claim no. 7021 (Norfolk Southern's "Claim"). *Trustees of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 905 (3d Cir. Pa. 1987) ("Admission of prior testimony [against a non-party] through a court transcript, merely because the testimony was observed and recorded pursuant to duty imposed by law, would emasculate large portions of the hearsay rule." (citing Fed. R. Evid. 803(8)); *see also* Fed. R.

---

[1]  The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2]  Capitalized terms not defined herein shall have the meaning ascribed to them in the *Omnibus Memorandum in: (A) Reply in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant To Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway; (B) Response to Cross-Motion for Summary Judgment Allowing Claim No. 7021; and (C) Support of an Order Finding the FELA Action Trial Record Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* [Docket no. 32828], dated March 8, 2017 (the "Omnibus Memorandum").

Evid. 804(b)(1) (requiring party against which former testimony is being offered to have had the opportunity at the time to examine the witness whose former testimony is being proffered and the witness must be unavailable for examination in the instant proceeding).   This Motion formalizes the request for relief set forth in the Inadmissible Hearsay Memorandum filed on March 8, 2017, by the Reorganized Debtors in response to Norfolk Southern's January 27, 2017 filings.[3]

The Reorganized Debtors have separated this issue from their Summary Judgment Motion and Norfolk Southern's Cross-Motion in an effort to simplify the Court's task of reviewing and resolving the parties' competing summary judgment motions.   The Reorganized

---

[3]  The "Inadmissible Hearsay Memorandum," captioned *Memorandum in Support of The Court's Entry of an Order Finding That the FELA Action Trial Record Is Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* [Docket no 32828-3], is Exhibit C to the Omnibus Memorandum.

The transcripts at issue are Exhibit X to the the *Declaration of R. Stephen McNeill in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance And Partial Disallowance of Claim No. 7021 And (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed on January 27, 2017 [Docket no. 32829], which was filed in support of Norfolk Southern's *Cross-Motion for Summary Judgment Allowing Claim No. 7021,* filed on (January 27, 2017 [Docket no. 32825] (the "Cross-Motion") and its *Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim no. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed January 27, 2017 [Docket no. 32826] (Norfolk Southern's "Brief").

The Cross-Motion, the Brief, the McNeill Declarations and the Conley and Sharpe Declarations (defined below) are Norfolk Southern's "January 27 filings."   The Conley and Sharpe declarations are not at issue in this motion:

The "Conley Declaration" is the *Declaration of Thomas Wesley Conley in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed on January 27, 2017 [Docket no. 32827]; and

The "Sharpe Declaration" is the *Declaration of Christopher John Sharpe in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed on January 27, 2017 [Docket no. 32828].

The Conley and Sharpe Declarations are, however, the subject of the Reorganized Debtors' *Motion to Strike the Sharpe and Conley Declarations,* filed on March 8, 2017 [Docket no. 32837].

Debtors respectfully submit that deciding the preliminary evidentiary question of whether Norfolk Southern may use Mr. Kirkland's FELA Action testimony will provide the parties guidance in resolving the Norfolk Southern Claim, and may ultimately aid the Court in deciding Grace's Summary Judgment Motion and Norfolk Southern's Cross-Motion.

This contested matter is about whether the Reorganized Debtors are contractually obligated to indemnify Norfolk Southern for the settlement amount in the FELA Action and certain other costs totaling $1,561,664.66 in the FELA Action, pursuant to one or more of four Agreements between Norfolk Southern and Grace.[4]   Grace's potential liability—or lack thereof—turns on a number of issues, including whether Norfolk Southern has adduced sufficient evidence to support its claim that Grace caused Mr. Kirkland's injuries.  Norfolk Southern has consistently sought to adduce Mr. Kirkland's FELA Action testimony as the single most important component of its evidentiary burden—despite its patent inadmissibility.

In the FELA Action, Mr. Kirkland, a former Norfolk Southern employee, sued Norfolk Southern for damages arising from two accidents that he suffered, on January 23 and 26, 1998, respectively. In each of those accidents, Mr. Kirkland injured himself at a Norfolk Southern

---

[4]   Norfolk Southern and Grace are party to four "Agreements":

The agreement between Southern and Grace, dated as of December 15, 1980, regarding Norfolk Southern's lease of a railroad right-of-way at the Grace Plant (the "Right-of-Way Agreement," Exhibit A to the Norfolk Southern POC);

The agreement between Southern and Grace, dated as of December 15, 1980, regarding Norfolk Southern's operation of railroad right-of-way for 1,678 feet of "industrial track" located at the Grace Plant (the "Operating Agreement," Exhibit B to the Norfolk Southern POC);

The supplemental agreement between Southern and Grace, dated November 7, 1983, regarding the operation of an additional 477 feet of additional industrial track.  (the "1983 Supplemental Agreement," Exhibit C to the Norfolk Southern POC); and

The supplemental agreement between Southern and Grace, dated October 3, 1990, by which Southern permitted Grace to construct an overhead loading structure with a spout (the "Specialty Product Loading Chute") (the "1990 Supplemental Agreement," Exhibit D to the Norfolk Southern POC).

railyard while attempting to release the defective handbrake on a Norfolk Southern railcar consigned to, and under the complete dominion and control of, Norfolk Southern. The issues in the FELA Action were whether Norfolk Southern provided an unsafe workplace for Mr. Kirkland and whether the defective handbrakes caused Mr. Kirkland's injuries. The FELA Action jury found that Norfolk Southern was negligent, and therefore liable to Mr. Kirkland. (Complaint at ¶¶ 5-6; McNeill Declaration Exhibit T (the "FELA Action Judgment").) *Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 160, (2007) (discussing causation standard for railroad negligence under FELA). Mr. Kirkland passed away in October 2009.[5]

In 2008, after Norfolk Southern failed to respond to the then-Debtors' offer to mediate Norfolk Southern's Claim, the then-Debtors objected to the Claim on two bases, the first of which was that the claim was not within the scope of the Agreements' indemnity provisions.[6] The Debtors also asserted that Norfolk Southern had not adduced sufficient evidence to substantiate its indemnity claim. In its 2008 Response, Norfolk Southern relied exclusively on highly selected parts of the FELA Action trial record—primarily Mr. Kirkland's testimony—to support its indemnity claim.

---

[5]   In its January 27 filings, Norfolk Southern admitted that Mr. Kirkland was unavailable to testify in this contested matter because he passed away in October 2009. The only evidence Norfolk Southern produced to document Mr. Kirkland's death was a newspaper obituary, identified as Exhibit W to the McNeill Declaration, which of course is inadmissible hearsay for this purpose. *Corner Pocket, Inc. v. Travelers Indem. Co.*, Civil Action No. 12-288, 2014 U.S. Dist. LEXIS 21327 at *6 (W.D. Pa. Feb. 20, 2014)("[G]enerally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted …") (citing *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 308 n.3 (E.D. Pa. 2007)). Thus, no record evidence supports Norfolk Southern's contention that Mr. Kirkland is, in fact, unavailable to testify. The Reorganized Debtors, however, will, solely for the purposes of this Motion agree to stipulate that Mr. Kirkland has indeed passed away.

[6]   On November 8, 2007, two years before Mr. Kirkland passed away, Grace's in-house counsel sent a letter to in-house counsel for Norfolk Southern, following up on discussions with Norfolk Southern about submitting Norfolk Southern's Claim to the claims mediation process that was approved by this Court as part of the above-captioned chapter 11 cases. *See Order Pursuant to Sections 105(a), 362, 363, 502 and 503 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 Establishing an Alternative Dispute Resolution Program and to Permit the Debtors to Liquidate Certain Prepetition Claims*, entered November 8, 2004 [Docket no. 6853]. (See S. B. Whittier letter, dated November 8, 2007, attached hereto as Exhibit B.) To Grace's knowledge, Norfolk Southern never responded to that offer.

In October 2016, after several further unsuccessful attempts to settle Norfolk Southern's indemnity claim, the Reorganized Debtors filed their Summary Judgment Motion. The Summary Judgment Motion seeks this Court's order disallowing Norfolk Southern's indemnity claim because, among other reasons, the FELA Action trial record (and, in particular, Mr. Kirkland's testimony) is inadmissible for purposes of proving the truth of the Norfolk Southern Claim. Neither Grace nor any affiliated entity was party to the FELA Action, and there is no other basis in the Federal Rules of Evidence to admit Mr. Kirkland's testimony as a means by which Norfolk Southern can carry its burden of proof.

In its January 27 filings, Norfolk Southern revealed for the first time that Mr. Kirkland—whom the Reorganized Debtors have never deposed or cross-examined—had passed away, and was thus unavailable to testify in this contested matter. Norfolk Southern then argued that Mr. Kirkland's FELA Action testimony was admissible in this contested matter for purposes of its carrying its burden of proof on two different bases.[7] First, Norfolk Southern asserted that it was Grace's predecessor-in-interest in the FELA Action. It also asserted that the doctrine of voucher binds Grace to the outcome of the FELA Action.

As discussed in this Motion, Norfolk Southern is wrong on both counts. Norfolk Southern is not Grace's predecessor-in-interest, because the two parties are directly adverse to each other in almost every respect—and have been so ever since Norfolk Southern belatedly

---

[7]    The heading in Norfolk Southern's brief on this point suggests the entire trial record is admissible. That is wrong. The FELA Action trial record is, in its entirety, inadmissible against Grace in this contested matter for any purpose, including allegations of negligence or findings of liability by the jury. *Trustees of Univ. of Pa.*, 815 F. 2d at 905 ("[J]udicial findings are inadmissible against a party not present in the prior litigation"). Norfolk Southern has effectively conceded that the FELA Action trial record is not admissible in its entirety by not citing to a single case opposing that well-established proposition. Each exhibit and all testimony must be considered piece by piece as to admissibility.

Norfolk Southern has likewise conceded that the FELA Action Judgment and other relevant elements of the trial record are admissible for the purpose of the Reorganized Debtors establishing Norfolk Southern's negligence and other issues relevant to the disallowance of Norfolk Southern's indemnification claim. *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) (explaining the "modern" theory of defensive collateral estoppel).

informed Grace of the existence of the FELA Action.[8]  Therefore Fed. R. Evid. 804(b)(1) does

not provide a basis for admitting Mr. Kirkland's FELA Action testimony.  The doctrine of

voucher likewise provides Norfolk Southern no succor.  Not only is the doctrine inapplicable

directly due to Norfolk Southern's failure to join Grace to the FELA Action, but the only issue

which could bind the parties is the FELA Action jury's finding that Norfolk Southern acted

negligently in both of Mr. Kirkland's accidents—a finding that the Reorganized Debtors do not

contest.

The Reorganized Debtors therefore request that this Court should enter the Order

substantially in the form attached hereto, barring Norfolk Southern from introducing the FELA

Action trial record, in particular Mr. Kirkland's testimony, as evidence against Grace for

purposes of carrying Norfolk Southern's burden of proof against the Reorganized Debtors as to

Norfolk Southern's indemnity claim.

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the

District of Delaware*, dated February 29, 2012.[9]  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

---

[8]    As discussed below in ¶ 20, and as discussed in the Inadmissible Hearsay Memorandum, Norfolk Southern did
not inform Grace of either the accidents or the resulting FELA Action until September 1999, 21 months after
the accidents and more than 14 months after Mr. Kirkland filed his Complaint.  Indeed, Norfolk Southern
waited to notify Grace until after it had deposed Mr. Kirkland—thereby admitting that its interests in the FELA
Action were directly adverse to Grace's interests at that time.

[9]    The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final
order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent
consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III
of the United States Constitution.

2.    The predicates for this Motion are Fed. R. Bankr. P. 9017 and the Federal Rules of Evidence.

**BACKGROUND**

3.    Norfolk Southern has stated that Exhibit X to the McNeill Declaration is the trial record for the FELA Action. Solely for purposes of seeking this Court's order barring Norfolk Southern from introducing Mr. Kirkland's testimony in the FELA Action trial record against Grace, the Reorganized Debtors do not contest that assertion. But Grace reserves the right to contest the authenticity and admissibility of any particular exhibit in the trial record, and to contest the admissibility of any portion of the testimony in the trial record.

**ARGUMENT**

I.    **FED. R. EVID. 804(B)(1) WILL NOT PERMIT NORFOLK SOUTHERN TO USE EITHER THE FELA ACTION TRIAL RECORD OR MR. KIRKLAND'S TESTIMONY**

    A.    **The Entire FELA Action Trial Record Does Not Qualify for the Fed. R. Evid. 804(b)(1) "Predecessor-in-Interest" Exception**

4.    Norfolk Southern has argued in its Brief that the entire FELA Action trial record is admissible in this contested matter. That claim is plainly too broad. Each individual witness's testimony from the FELA Action must be evaluated independently to see if it survives a hearsay objection. Fed. R. Evid. 804. Mr. Kirkland passed away in 2009.[10] Norfolk Southern contends in its January 27 brief that Mr. Kirkland's FELA Action testimony may be used here under the hearsay exception found in Fed. R. Evid. 804(b)(1), contending that Norfolk Southern was Grace's predecessor-in-interest. (Brief at pp. 17-24.) Norfolk Southern is wrong. Grace and Norfolk Southern were and are directly adverse on crucial factual and legal issues pertinent to Norfolk Southern's indemnity claim, and thus were adverse for purposes of deposing or cross-

---

[10]    As mentioned above, Grace will stipulate to the fact that Mr. Kirkland died in October 2009 for the purposes of this Motion.

examining Mr. Kirkland.   Therefore, Fed. R. Evid. 804(b)(1) does not support Norfolk

Southern's admission of Mr. Kirkland's testimony in this contested matter.

    **B.**    **Fed. R. Evid. 804(b)(1) Provides Only a Limited Exception To The Hearsay Rule**

    5.    Fed. R. Evid. 804(b)(1) admits former testimony as an exception to the hearsay

rule when the testimony:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).

    6.    Norfolk Southern seeks to offer Mr. Kirkland's testimony from the FELA Action

in this matter, suggesting that the FELA Action testimony qualifies as admissible sworn

testimony under Fed. R. Evid. 804(b)(1).  Norfolk Southern further contends it was an adequate

"predecessor-in-interest" for Grace in the FELA Action as required by Rule 804(b)(1).  Norfolk

Southern is wrong.

    7.    The Third Circuit has held that one party is the "predecessor-in-interest" under

Rule 804(b)(1) of a second, unrelated party when there is "sufficient community of interest

shared" between the parties.  *Lloyd v. A, Export Lines, Inc.*, 580 F. 2d 1179, 1185-86 (3d Cir.

1978).  A sufficient community of interest arises when the two parties have similar (but not

necessarily identical) motives.  *Haas v. 3M Co.*, 613 Fed. App'x 191, 196 (3d Cir. 2015).

    8.    An Eastern District of Pennsylvania court fleshed out the Third Circuit's *Lloyd*

holding by identifying a number of factors to consider when evaluating whether a potential

candidate party in fact had a similar motive to develop testimony:

> Such circumstances or factors which might influence motive to develop testimony include (1) the type of proceeding in which the

> testimony is given, (2) trial strategy, (3) the potential penalties or
> financial stakes, and (4) the number of issues and parties. Thus in
> determining whether a party or his predecessor in interest had the
> opportunity and similar motive to develop the testimony, the court
> must evaluate, in terms of both the prior and the present
> proceedings (1) the similarity of issues, (2) the purpose for which
> the testimony is offered, and (3) the context or circumstances in
> which the testimony is given.

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1252 (E Dist. Penn. 1980); *see also Creamer v. Gen. Teamsters Local Union*, 326, 560 F. Supp. 495, 499 (D. Del. 1983) (finding testimony inadmissible under 804(b)(1) because parties "did not share the same motive in cross-examination [and] was not its predecessor in interest"); *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir. 1985) (citing *Zenith Corp*, 505 F. Supp. 1190, with approval).

9.      The *Zenith* court held in applying the *Lloyd* rule that "it is highly significant that the 'previous party' in Lloyd was a government investigator, presumably impartial, who had no role in the subsequent legal action." *Zenith Radio*, 505 F. Supp. at 1254 (citing *Lloyd.*, 580 F. 2d at 1185-86). The *Zenith* court further held that, "[e]ntirely different considerations come into play when prior testimony is offered against one co-defendant on the basis of prior examination of the witness on behalf of a different co-defendant, ***when the two have potentially conflicting interests and litigation strategies.*" *Id.* at 1255 (emphasis added).

10.     Other courts have used similar factors in determining whether prior testimony is admissible under Rule 804(b)(1)'s predecessor-in-interest exception. The *Zenith* court also looked to the Fifth Circuit, for example. *Id.* (citing *Government of the Canal Zone v. Pinto*, 590 F.2d 1344, 1353-55 (5th Cir. 1979)). In *Pinto*, the Fifth Circuit refused to admit testimony from a preliminary hearing against a defendant who had not been represented at the hearing. 590 F.2d at 1353-55. The *Zenith* court explained the Fifth Circuit's holding: "[T]he reliability of

preliminary hearing testimony is not assured by the mere fact of cross-examination but only by cross-examination designed to illuminate the accuracy of the statement as it concerns the particular defendant." *Zenith Radio*, 505 F. Supp at 1255 (citation omitted.)

11.   The Third Circuit's analysis in *Haas*, cited by Norfolk Southern in its Brief to support its contention that Norfolk Southern is Grace's predecessor-in-interest, is also quite instructive on the issue of "similar motive." There the Court stated that, "[t]he similar-motive requirement assures that 'the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do'." *Haas*, 613 Fed. App'x at 196. In *Haas*, the defendant, General Electric, unsuccessfully argued that earlier deposition testimony was not admissible. The *Haas* court found that the former testimony was admissible only ***because GE had been involved in the decision to permit counsel for a co-defendant (Boeing) to be the lead questioner during the deposition***. What's more, GE's counsel ***actually participated in the deposition*** and had been afforded "the opportunity to object or interfere if it was deemed necessary." *Id.* The *Haas* court further found that Boeing's counsel "was able to successfully elicit ... [certain] information ... that provided the basis for GE's summary judgment motion." Boeing thereafter avoided liability on an entirely different basis, without "showing some hostility to GE's interests." *Id.*

12.   Thus, Courts have found that parties have common interests ***only when***: (i) the candidate successor's counsel had been present, and the parties were litigating on the same side of the issue with similar objectives; ***or when*** (ii) cross-examination sought to be admitted against a successor in subsequent litigation had been conducted by a neutral party. *Zenith Radio*, 505 F. Supp at 1254 (citing *Lloyd.*, 580 F. 2d at 1185-86).

**C.      Grace Shares No Common Interests With Norfolk Southern; Therefore Norfolk Southern Cannot Be Grace's Predecessor-In-Interest Under 804(b)(1)**

13.     Norfolk Southern and Grace have never shared any "community of interest" regarding the FELA Action because, as discussed more fully below: (i) they have never been on the same side of any issues, whether involving the FELA Action or this contested matter; (ii) Grace's counsel was not present when Norfolk Southern deposed Mr. Kirkland prior to trial; indeed, that deposition took place even before Norfolk Southern informed Grace about the existence of the FELA Action; and (iii) Norfolk Southern was not a neutral party when it cross-examined Mr. Kirkland at the FELA Action trial. *Id.* (citing *Lloyd*, 580 F. 2d at 1185-86).

> **1.      *Norfolk Southern and Grace's Interests Are Adverse As To The Indemnity Agreements.***

14.     The Operating Agreement and the Right-of-Way Agreement both contain indemnities requiring Grace, if it was negligent and Norfolk Southern was not found negligent, to indemnify Norfolk Southern for 100% of damages arising from liability within the scope of the indemnification. Grace could also be liable for "violations ... of the terms of this agreement or by the negligence of ... [Grace] concurring with the negligence of a third party." Grace and Norfolk Southern would each be 50% liable if personal injury was caused by their "joint and concurring negligence." Norfolk Southern would bear all such liability if it alone were negligent. (Right-of-Way Agreement at ¶ 10; Operating Agreement Exhibit A at ¶ 5.) The Operating Agreement and Right-of-Way Agreement also contain substantially identical indemnities involving the "Facility," wherein under certain circumstances Grace could become contractually liable to indemnify Norfolk Southern. (Right-of-Way Agreement at ¶ 20; Operating Agreement Exhibit A at ¶ 16.)

15.    The 1983 Supplemental Agreement contained no indemnification provision.  The

1990 Supplemental Agreement contains a single indemnity provision that, if applicable, requires

Grace to "indemnify and hold harmless" Norfolk Southern for "any and all loss, injury or

damage" arising from the use of a structure known as the "Specialty Product Loading Chute" at

the Grace Plant, regardless of whether Norfolk Southern was negligent.  (1990 Supplemental

Agreement at ¶ 5.)  Thus, if the Specialty Product Loading Chute was used to load a railcar and

an accident occurred that fell within the scope of the indemnity, Grace would be potentially

obligated to indemnify Norfolk Southern.

16.    Norfolk Southern's various pleadings in these chapter 11 cases disclose that its

motives, first in deposing, and then in cross-examining, Mr. Kirkland in the FELA Action, were

antithetical to Grace's interests.  Indeed, Norfolk Southern sought at seemingly every turn in that

litigation to:

- Absolve itself of all liability and put that liability on Grace for the operating condition of the railcars.  (Complaint at ¶¶ 5-6.);

- Establish that Grace used the Specialty Product Loading Chute to load the January 23 and January 26 railcars, so as to inculpate the 1990 Supplemental Agreement indemnity and make Grace 100% liable; and

- Establish that Grace was negligent in some way so as to inculpate the Operating Agreement and Right-of-Way Agreement and thereby make Grace liable for Mr. Kirkland's injuries, notwithstanding Norfolk Southern's own negligence.

17.    None of these motives aligns with Grace's motives, which are to:

- Establish that the Agreements' indemnities cannot apply in the circumstances of the two alleged accidents, which were the result of Mr. Kirkland's attempt to release defective handbrakes on railcars consigned to, and owned and completely controlled by, Norfolk Southern, when the accidents occurred at Norfolk Southern-owned and – controlled facilities.  (Complaint at ¶¶ 5-6.); and

- In the alternative, show that:

  - Norfolk Southern has not proven that any action by Grace, negligent or otherwise, caused Mr. Kirkland's injuries.  (Reply Memorandum at § III.); or

- Grace was not negligent in any of its actions at the Grace Plant. (*Id.*);

- Norfolk Southern failed to establish any causal link between Grace's actions at the Grace Plant and Mr. Kirkland's accidents; or

- Norfolk Southern had failed to take proper actions and precautions in transporting a product whose nature and characteristics were well known to Norfolk Southern.

18.    Norfolk Southern's cross-examination of Mr. Kirkland thus could not have—and indeed did not—protect Grace's interests. *Zenith Radio*, 505 F. Supp at 1255 (reliability insured "only by cross-examination designed to illuminate the accuracy of the statement as it concerns the particular defendant"). Therefore, as a matter of law, Norfolk Southern was not Grace's predecessor-in-interest under Fed. R. Evid. 804(b)(1).

### 2.    *Norfolk Southern's Adverse Interests Are Manifest on the Face of Mr. Kirkland's FELA Action Complaint*

19.    Mr. Kirkland's FELA Action Complaint confirms the mismatch between Norfolk Southern's motives and those of Grace. (Complaint, *passim.*)  The Complaint named only Norfolk Southern as a defendant. It never named Grace as a defendant, and never even referred to Grace by name in any capacity.  The Complaint specifically alleges five Counts against Norfolk Southern.  None of them implicate Grace:

- *Count One* alleges generally that Norfolk Southern was negligent in maintaining its railroad cars and in its work practices. (*Id.*)

- *Count Two* alleges Norfolk Southern failed to provide Mr. Kirkland a safe place to work. (*Id.*)

- *Count Three* alleges Norfolk Southern violated the Handbrake Act, 49 U.S.C. § 20302, by failing to provide a working handbrake on the railcar where Mr. Kirkland injured himself. (*Id.*)

- *Count Four* again alleges Norfolk Southern's negligence. (*Id.*)

- *Count Five*, like Count Two, alleges Norfolk Southern failed to provide a safe place to work. (*Id.*)

Because Norfolk Southern's duty under FELA is non-delegable, *see Lauria v. AMTRAK*, Civil Action no. 95-1561, 1997 U.S. Dist. LEXIS 1810 at *4 (E.D. Pa. Feb. 19, 1997) ("Under FELA, a railroad has a non-delegable duty to provide its employees with a reasonably safe place to work."), Norfolk Southern's efforts to elicit testimony from Mr. Kirkland about Grace's conduct could only be intended to make a record that could later be used to bring Mr. Kirkland's injuries within the scope of the Grace indemnities. That testimony had no bearing whatsoever on the issue before the FELA Action court: whether Norfolk Southern was negligently liable to Mr. Kirkland. (Tr. IV:154:12-22.)

### 3.   *Norfolk Southern's Exclusion of Grace From the FELA Action Demonstrates That Norfolk Southern's and Grace's Interests Were Directly Adverse*

20.   It is clear from the various documents attached to the McNeill Declaration that Norfolk Southern intentionally created a record with Mr. Kirkland before it ever formally notified Grace about Mr. Kirkland's accidents and the existence of the FELA Action. Mr. Kirkland's accidents occurred in late January 1998. Mr. Kirkland filed suit on July 8, 1998. (Complaint.) It was not until September 15, 1999, that Norfolk Southern's Counsel, Benjamin Garland, first contacted Grace about the Mr. Kirkland's Complaint and the FELA Action—a full eighteen months after the incidents occurred, and more than fourteen months after Mr. Kirkland filed his Complaint. (B. Garland letter, dated Sep. 15, 1999, McNeill Declaration Exhibit I (the "9/15/99 Garland Letter").) Moreover, Norfolk Southern waited until after it had deposed Mr. Kirkland before it contacted Grace. Indeed, the 9/15/99 Garland Letter states that Mr. Kirkland testified at deposition that "the cars he was working on were loaded with kaolin by Grace employees ..." and that "[Grace] did not blow off the cars or otherwise clean them as they are supposed to do and that the presence of the excess kaolin overspill caused him to slip." (*Id.*) Norfolk Southern's sole avowed purpose in the letter was to assert that this deposition testimony

elicited by Norfolk Southern—without any notice whatsoever to Grace—formed the basis of

Grace's alleged indemnification obligation to Norfolk Southern. (*Id.*) the 9/15/99 Garland Letter

plainly admits that Norfolk Southern's examination of Mr. Kirkland was adverse to Grace.

Finally, the letter seeks Grace's admission of liability and demands that Grace assume the

defense of the FELA Action.  Thus, Norfolk Southern's conduct demonstrates that Norfolk

Southern and Grace had no commonality of interest.  Their interests were—and remain—directly

adverse.

> ### 4.    *Norfolk Southern's Cross-Examination of Mr. Kirkland in the FELA Action Was Adverse to Grace*

21.    The FELA Action trial record further confirms the mismatch between Norfolk

Southern's motives and those of Grace.  Norfolk Southern cross-examined Mr. Kirkland with the

sole purpose of implicating Grace.  For example, Norfolk Southern sought to show that Grace

refused to clean the rail cars:

> Q [by Garland]  You testified sometimes you would complain to
> him [Wood, a Grace employee] before you pulled the cars off and
> he would send a fellow back and let him blow it some more; is that
> right?
> A [by Mr. Kirkland]  Yes, sir.
> Q  But then you are saying now sometimes you would complain
> and he wouldn't do that?
> A  Yes, sir.  Sometimes I would complain and he wouldn't the cars
> off.
> Q  Did he give you any reason?
> A  No, sir.

(Tr. II:24:14-23.)  In another example, Norfolk Southern sought to show that Grace ran an unsafe

kaolin mining and processing plant:

> Q [Garland]  Have you had occasion when new people come to
> work that job to tell them anything about the kaolin, and if so, what
> do you tell them?
> A [Mr. Kirkland]  I tell the new people that come, you know, we
> are having a lot of trouble with the Grace plant, and it's real
> dangerous.  And I tell them to be -- you know, be careful, and I try

to let them stay up at the switch. And I have more experience, so I
go down there and try to mess with it.

(Tr: II:18:3-10.)  Most crucially, Norfolk Southern attempted to get Mr. Kirkland to testify that

the January 26, 1998 incident actually happened at the Grace Plant:

> Q  Was that -- when you made that little slip, was that there at
> Grace and Company or was that at Warren?
> A  No, sir.  It was back at Aiken -- at Aiken Depot.
> Q  But you didn't testify yesterday that you didn't have to get up,
> you were able to just couple them and take off; do you remember
> that testimony yesterday?
> A  Yes, sir.  I remembered it as the three cars on Friday.
> Q  But it's different you say on Monday?
> A  Yes, sir, because there was -- like a bunch of loads on Friday,
> and I don't remember getting up on the cars on Friday. I may have,
> but they might have been in the middle of the cut.
> Q  So when you were talking to us yesterday about just being able
> to couple it up and not having to get on it until you got down the
> road, you were just talking about Friday; is that what you are
> telling us, or do you remember which day it was?
> A  I know I had to get on the cars on Monday because they were
> shipping like all of the loads, so I had to get on those loads.  They
> had loaded all weekend, and they were out of empties and we took
> them more empties.  On Fridays they have a lot of cars out there,
> and I may or may not have had to get on those cars.  I don't
> remember -- we try not to get on them if we don't have to.
> Q  So you are really not sure whether you got on them or not; is
> that what you are telling us now?
> A  Well, I'm pretty sure I didn't get on them because the way I
> worked the plant.  I try to keep them set up next to my empties,
> and I don't get on them unless I have to.
> Q  And you can't really remember one way or the other now; is
> that correct?
> A  No, I really can't.

(Tr. II:27:13-28:20.)

22.    None of the above-cited cross-examination questions had any bearing whatsoever

on Norfolk Southern's FELA liability.  They served solely to implicate Grace as a predicate to

Norfolk Southern's asserting an indemnification claim against Grace.  It would appear that

Norfolk Southern's trial strategy was not to escape its own liability to Mr. Kirkland, but to

implicate the Agreements' various indemnities. Norfolk Southern therefore could not have been Grace's "predecessor-in-interest."[11]   When viewed together, the structure of the indemnities, Norfolk Southern's tactics at trial and its September 15, 1999 indemnification demand all demonstrate that Norfolk Southern's interests in the FELA Action were directly adverse to Grace's interests. Thus, Mr. Kirkland's FELA Action testimony is not admissible under Fed. R. Evid. 804(b)(1).

## II.   THE FELA ACTION JUDGMENT DOES NOT BIND GRACE—NOR DOES IT PROVIDE A BASIS FOR ADMITTING MR. KIRKLAND'S TESTIMONY—BECAUSE GRACE WAS NOT VOUCHED INTO THE FELA ACTION

23.   Norfolk Southern contends that it "vouched" Grace into the FELA Action, thereby precluding Grace from litigating in this contested matter most, if not all, of the issues surrounding its indemnity claim. Norfolk Southern is wrong.

24.   Voucher is a common-law doctrine that "comes from the ancient practice of bringing a warrantor into an action by 'writ of voucher'." *Master Blaster, Inc. v. Dammann*, 781 N.W.2d 19, 26 (Minn. Ct. App. 2010). Nowadays, modern third-party practice has supplanted "voucher." *Id*. Indeed, the very cases to which Norfolk Southern has cited, including *Master Blaster*, require a party seeking to "vouch" a third party into an action to have first attempted to join that party using modern third-party practice. *Id*. As discussed below, Norfolk Southern never tried to join Grace to the FELA Action—which in railroad sidetrack agreement indemnity

---

[11]   By contrast, if Grace had been present at trial, it would have cross-examined Mr. Kirkland to, among other things, make clear that: (i) both incidents involving Mr. Kirkland involved a failure of the railcar handbrakes; (ii) the January 23, 1998 incident did not involve a Grace railcar; (iii) Norfolk Southern assumed full responsibility for railcars when it took consignment of railcars from its customers (including but not limited to Grace); (iv) that Mr. Kirkland failed to use a broom to sweep the railcars of Kaolin powder even though he was aware a broom would reduce the risk to himself and that he had asked Grace to use a broom so he wouldn't have to; (v) Mr. Kirkland was aware of the risk posed by wet kaolin and that Grace warned him and Norfolk Southern of that risk; (vi) both incidents occurred after Norfolk Southern took consignment of the railcars, and that the railcars were part of Norfolk Southern-owned and –controlled trains parked at Norfolk Southern-owned and –controlled facilities; and (vii) Mr. Kirkland had been prescribed pain medications after the January 23 incident and how those medications affected his fitness for work on January 26.

cases, happens as a matter of course. *See, e.g., Welch v. Kan. City S. Ry. Co.*, 940 F. Supp. 2d 402 (W.D. La. 2013) (putative indemnitee joined putative indemnitor as third-party defendant).

25.    Moreover, even if that were not a fatal blow to its "voucher" argument, Norfolk Southern failed to perfect its "voucher" because it did not even notify Grace of the FELA Action until more than fourteen months after that litigation commenced. Worse, Norfolk Southern waited until after it had deposed Mr. Kirkland before notifying Grace of the FELA Action. Finally, as discussed in the next section, even if Norfolk Southern had successfully "vouched" Grace into the FELA Action, it would not preclude any issues from being litigated in this contested matter—except for the issue of Norfolk Southern's negligence, which the FELA Action clearly decided.

### A.    Voucher Cannot Bind Grace—Even if It Were Successful

26.    Norfolk Southern contends that it and Grace were in privity with one another as to the FELA Action because it "vouched" Grace into the FELA Action, and that "[p]arties that are brought into privity with one another are *precluded from re-litigating issues that have already been adjudicated with relation to each other.*" (NS Brief at pp. 19-20 (emphasis added).) Even assuming *arguendo* that Norfolk Southern had successfully "vouched" Grace into the FELA Action, which Norfolk Southern did not (as discussed below), Norfolk Southern is wrong to assert that such "voucher" has resolved any issues between them, except one: The FELA Action jury found that Norfolk Southern was negligent and failed to provide Mr. Kirkland with a safe workplace. (FELA Action Judgment.)

27.    The FELA Action judge's instructions to the jury make that point clear:

> So the first issue for you to decide is whether the Defendant or any of its employees, other than the Plaintiff, was negligent, and if so, whether such negligence was the legal cause of any damage sustained by the Plaintiff. Under FELA, it was the continuing duty of the defendant railroad to use reasonable care, under the

> circumstances, in furnishing the Plaintiff with a reasonably safe place in which to work and to use reasonable care, under the circumstances, to maintain and keep such place of work in a reasonably safe condition.

(Tr. IV:154:12-22.)

28.     Therefore, it is clear that Norfolk Southern was negligent, and it may not re-litigate that issue in this contested matter. *Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979) ('collateral estoppel [i.e. issue preclusion] treats as final only those questions *actually and necessarily* decided in a prior suit") (emphasis added); *see also Rucker v. Shalala*, 894 F. Supp. 1209, 1215 (S.D. Ind. 1995) ("Issue preclusion involves a second action that is a different cause of action from the previous suit, but precludes re-litigation of issues fully adjudicated in the prior suit").

29.     Norfolk Southern, on the other hand, seems to believe the FELA Action resolved all disputes regarding the Indemnity Agreements between Norfolk Southern and Grace. Norfolk Southern supports that contention by citing to *In re Rudd*, 104 B.R. 8 (Bankr. N.D. Ind. 1987). But *Rudd* does not support Norfolk Southern's contention. At most, *Rudd* stands for the proposition that, had Grace actually been "vouched" into the FELA Action (which it was not), Grace would not have been able to re-litigate in this contested matter those *issues* actually litigated in the FELA Action. (Brief at p. 20-23.).

30.     As discussed above, the only issue decided in the FELA Action was Norfolk Southern's negligence. The FELA Action judge's instructions to the jury confirm the point, because they dealt with issues such as Mr. Kirkland's contributory negligence to his injuries, the parties' efforts (or lack thereof) to mitigate Mr. Kirkland's damages, and on how the jury may calculate damages. (Tr. IV:154 *et seq.*) The instructions mentioned nothing about the Agreements or about Grace. Therefore, Norfolk Southern's argument that its failed attempt to

"vouch" Grace into the FELA Action has any preclusive effect as to the issue before this Court—whether Grace has a contractual indemnity obligation to Norfolk Southern—must fail. *Brown*, 442 U.S. at 139 n. 10; *Rucker*, 894 F. Supp. at 1215.

**B.    Norfolk Southern Failed to "Vouch" Grace into the FELA Action**

31.    As discussed above, even if Norfolk Southern had successfully "vouched" Grace into the FELA Action, it would have had no practical effect, as the only issue decided in that action was Norfolk Southern's own negligence, and Norfolk Southern is bound by the FELA Action jury's findings either way. But Norfolk Southern was not successful in "vouching" Grace into the FELA Action, both because its notice was untimely and prejudicial to Grace, and because Norfolk Southern failed to first join Grace to the FELA Action.

*1.    Norfolk Southern's Voucher Notice Was Untimely and That Late Notice Prejudiced Grace*

32.    The undisputed facts show that Norfolk Southern failed to provide Grace with proper notice of the FELA action. Norfolk Southern's Brief buries the rule about proper notice in footnote 17. There Norfolk Southern cites *Humble Oil & Ref. Co. v. Phila. Ship Maint. Co.*, 444 F. 2d 727 (3d Cir. 1971), for the proposition that proper notice to an indemnitor include "(1) contains 'full and fair information' concerning the pending action … (3) contains an offer to surrender control of the action to the indemnitor at least to that portion of the claims for which the indemnitee seek ultimately to hold the indemnitor liable; (4) be given so shortly after the institution of suit as to permit complete control of pretrial proceedings by the indemnitor." *Id.* Norfolk Southern plainly failed to meet that standard.

33.    Mr. Kirkland filed his Complaint in July 1998. Norfolk Southern first provided notice of the FELA Action to Grace fourteen months later, on September 15, 1999. (9/15/99 Garland Letter.) What's more, Norfolk Southern waited to send that letter until after Norfolk

Southern had deposed Mr. Kirkland and elicited testimony that Grace caused Mr. Kirkland's injuries. Finally, Norfolk Southern's correspondence failed to provide Grace with a copy of Norfolk Southern's answer and affirmative defenses. (*Id.*)

34.    Norfolk Southern's demand for indemnity failed to meet the 3rd Circuit's requirements for timely voucher, because: (1) it did not include all of the information about Norfolk Southern's defense; (2) Norfolk Southern had locked in  Mr. Kirkland's testimony on issues affecting the indemnity before it provided notice, thus giving Grace no control on those issues for which Norfolk Southern sought to hold Grace liable and blocking Grace from asserting its own defenses; and (3) the demand came 14 months after the complaint was filed and after the parties had exchanged discovery. Plainly, Norfolk Southern's actions prevented Grace from obtaining in Mr. Kirkland's FELA action a full and fair defense on the Norfolk Southern indemnity claim. *See, e.g. Kreckel v. Walbridge Aldinger Co.*, 721 N.W.2d 508, 512-13 (Wis. Ct. App. 2006) (finding twenty-six month delay and notice after commencement of discovery untimely).

### 2.    *Norfolk Southern Failed to Perfect Its "Voucher" Because It Failed to Join Grace to the FELA Action*

35.    Norfolk Southern cites the *Master Blaster* case to support its "voucher" argument. (Brief at 22-23.) The *Master Blaster* court noted that modern third-party pleading practice has supplanted common-law "vouching" under the applicable federal and state rules of civil procedure. *Master Blaster*, 781 N.W. 2d at 27. Indeed, in *Master Blaster*, the court found that vouching in that case was appropriate only because joinder had failed on personal jurisdiction grounds. 781 N.W. 2d at 23-24.

36.    Here, it is undisputed that Norfolk Southern never tried to join Grace to the FELA Action. Yet, applicable Georgia law would have permitted Norfolk Southern to join an

indemnity claim against Grace to the FELA Action. *See* Ga. Code Ann. § 9-11-18. We do not need to litigate whether the Georgia court would have had personal jurisdiction over Grace, because personal jurisdiction always can be waived. *See Manchester Farms, Inc. v. Supremas, Inc.*, 165 F. Supp. 3d 1366, 1371 (M.D. Ga. 2016) ("A defendant may waive personal jurisdiction"). Norfolk Southern's failure to attempt to join Grace to the FELA Action thus defeats its attempt to now argue that it "vouched" Grace into the FELA Action.

### C.   "Voucher" Did Not Impose Any Duty to Defend Norfolk Southern

37.    Norfolk Southern contends that its attempt to "vouch" Grace in the FELA Action—by sending a few letters to Grace—somehow imposed on Grace a common law "duty to defend" Norfolk Southern in the FELA Action. That is wrong as a matter of law. A common law "duty to defend," which is what Norfolk Southern is alleging, is determined by the face of the Complaint. There was nothing in Mr. Kirkland's Complaint that implicated Grace or created for Grace a "duty to defend" Norfolk Southern in the FELA Action.

38.    In South Carolina, the rule in insurance cases, which provides a fair analog for this matter because Grace as a contractual indemnitor has less of a duty at law than the duty imposed on an insurance company, is that the face of the complaint and other facts known to the insurer decide the scope of the insurer's duty to defend. *Hous. Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:09-926-CMC, 2010 U.S. Dist. LEXIS 34314 at *15-17 and *23-25 (D.S.C. Apr. 7, 2010); *State Farm Fire & Cas. Co. v. Weaver*, 585 F. Supp. 2d 722, 726 (D.S.C. 2008) ("Pursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint"). Further the duty to defend is distinct from the duty to indemnify. *Weaver* at 585 F. Supp. 2d 726. The rule is the same under Georgia law. *See City of Atlanta v. St. Paul Fire & Marine Ins.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) (holding that you look to the face of the complaint to find a duty to defend and "where the complaint filed

against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit")

39.     Norfolk Southern contends that Grace's duty to defend arises—which Norfolk Southern then improperly uses to bootstrap Mr. Kirkland's testimony into this action—when "the facts actually or constructively known to the indemnitor at the time of the defense of the action is proffered to it demonstrate that liability will eventually fall on the indemnitor." (Brief at 27 citing *Humble Oil*, 444 F. 2d at 734).[12]  Norfolk Southern is wrong.  Grace's duty to defend is determined by the face of the Complaint (there being no other relevant facts), and the Complaint does not state any theory of liability implicating Grace.  (Complaint, *passim*.)  As discussed above, the claims alleged in Mr. Kirkland's Complaint speak to Norfolk Southern's bad conduct.  There is no theory alleged in the Complaint that would be covered by any of the Indemnity Agreements.  Thus, Grace had no duty to defend Norfolk Southern in the FELA Action.

## CONCLUSION

40.     For the foregoing reasons, this Court should enter an order barring Norfolk Southern from using Mr. Kirkland's FELA Action testimony against Grace in this contested matter, and finding that Grace is not bound by any judgment of the Georgia State trial court in Mr. Kirkland's FELA Action against Norfolk Southern.

## NO PREVIOUS MOTION

41.     No previous motion for the relief sought herein has been made to this or any other court.  This Motion does, however, formalize the relief initially requested in the Inadmissible Hearsay Memorandum, filed on March 8, 2017.

---

[12]    Norfolk Southern cites to no authority and makes no actual argument how a "duty to defend" makes testimony or evidence from one action admissible as an exception to the hearsay rules in another action.

## NOTICE

42.     Notice of this Motion has been given to:  (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) counsel for Norfolk Southern.  In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially

the form attached hereto as Exhibit A: (i) barring the introduction of Mr. Kirkland's testimony in

the FELA Action by Norfolk Southern as evidence to prove the truth of any claims asserted by

Norfolk Southern against Grace in regard to the resolution of the Norfolk Southern Claim; and

(ii) granting such other relief as may be appropriate.

Dated: March 31, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors