## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) **Hearing Date: May 3, 2017, at 11:00 a.m. ET** |
| | ) **Objection Deadline: April 23, 2017** |
| | ) |

## OBJECTION TO CLAIM NO. 603 FILED BY JIM WRIGHT (SUBSTANTIVE)

On November 1, 2001, Jimmie E. Wright ("Mr. Wright") filed a proof of claim (the

"Proof of Claim") asserting a general unsecured claim of $651,678 for certain retirement and

other benefits in addition to those that he had been receiving since he retired in March 1996

(Claim no. 603, being the "Claim").[2] Attached to the Proof of Claim was a *Complaint at Law*

(the "Complaint"), filed on February 25, 1999, commencing a matter in the United States District

Court for the Northern District of Illinois (the "District Court") captioned, *Wright v. W. R. Grace*

*& Co.-Conn., et al.*, Case no. 1:99-cv-01255 (Mr. Wright's "Civil Case").[3] Mr. Wright asserts

no other basis for his Claim than his Complaint. As discussed below, this Court should disallow

---

[1]   The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2]   The Proof of Claim is attached as <u>Exhibit A</u> to the Reorganized Debtors' *Proposed Findings of Uncontested Fact in Support of the Reorganized Debtors' Objection to Claim Filed by Jim Wright (Substantive)*, (the "Proposed Findings of Uncontested Facts"), which was filed contemporaneously herewith and which is incorporated into this Objection by reference.

   Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the (i) Proposed Findings of Uncontested Facts; (ii) *Declaration of Richard C. Finke in Support of the Reorganized Debtors' Objection to Claim Filed by Jim Wright (Substantive)* (the "Finke Declaration"), filed contemporaneously herewith and incorporated into this Objection by reference or the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (the "Plan").

[3]   A copy of the docket for Mr. Wright's Civil Case (the "Civil Case Docket") is attached to the Proposed Findings of Uncontested Facts as <u>Exhibit O</u>.

---

Mr. Wright's Claim in its entirety, because each of the five counts in Mr. Wright's Complaint lacks merit—a state of affairs to which Mr. Wright has himself admitted at least in part by having voluntarily dismissed three of those counts in the Civil Case prior to the chapter 11 cases' Petition Date.

On March 31, 1996, Mr. Wright retired at the age of 58, after having worked at Grace-Conn. for approximately 30 years. After a few years of retirement, Mr. Wright became dissatisfied with his pension benefits and filed his Civil Case, seeking additional retirement benefits and related damages. Mr. Wright conceded in his Complaint that Grace-Conn. paid as they came due all retirement benefit payments to which he was entitled at the time he retired. To support his bid for additional retirement benefits, Mr. Wright asserts—without adducing any supporting evidence (as there is none)—that he was entitled under a variety of theories to receive those additional benefits because at the time he retired (at age 58) he was contractually entitled to continue working until at least the age of 62.

Mr. Wright's contentions, as the Complaint articulates them, are all without any legal or factual merit:

- Count I – Age Discrimination in Employment Act of 1967, 90 P.L. 202, 81 STAT. 602 (codified at 29 U.S.C. § 621 et seq.) ("ADEA") – Mr. Wright dismissed this count in his Civil Case under the threat of sanction, because he had admitted that he failed to timely file a complaint with either the Equal Employment Opportunity Commission ("EEOC") or the Illinois Human Rights Commission ("IHRC"). (J. Gotshall letter, dated February 8, 2000 (the "2/8/00 Gotshall Letter"), Proposed Findings of Uncontested Facts Exhibit M); *Defendant's First Set of Interrogatories* and *Defendant's Request for Admission* (the "RFA"), telecopy, dated November 22, 1999, Proposed Findings of Uncontested Facts Exhibit K; *Plaintiff's Response to Defendant's Request for Admission* (the "RFA Response"), Proposed Findings of Uncontested Facts Exhibit L.) *See Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994) (internal citation omitted) ("The ADEA requires potential plaintiffs to file a complaint with the EEOC within 300 days of the alleged discriminatory practice");

- Count II – Breach of oral contract – This count fails under the Illinois Statute of Frauds (740 ILCS 80/1), because any purported oral agreement between Mr. Wright and Grace-Conn. to continue his employment for the nearly four-year period between the date of the alleged agreement and his 62nd birthday could not have been completed within one year. *Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d 279, 283 (7th Cir. 1999) (quoting 740 ILCS 80/1);

- Count III – Breach of written contract – This count fails for two reasons. First, the Employee Retirement Income Security Act of 1974, P.L. 406, 88 STAT. 829 (codified at 29 U.S.C. § 1051 et seq.) ("ERISA") governs both retirement plans, and this count is grounded in state law and not based on ERISA. Therefore, ERISA preempts Mr. Wright's state-law cause of action for breach of contract, because it relies upon the Grace retirement-plan manuals to constitute a written offer of employment. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-66 (1987). Second, the Complaint fails to allege the existence of a valid written contract of employment between Mr. Wright and Grace-Conn. Mr. Wright alleges that manuals documenting two Grace retirement plans attached to the Complaint contained an offer of continued employment with Grace-Conn. But those manuals cannot as a matter of law be construed as constituting a promise of employment.[4] Moreover, the manuals contained clear disclaimers precluding any possibility of a "clear promise" of an offer of continued employment. *Thomas v. Maryville Acad.*, 375 F. Supp. 2d 687, 689 (N.D. Ill. 2005) ("a conspicuous disclaimer can negate any contractual obligations"); *Finnance v. Pentel of America, Ltd.*, 43 F. Supp. 2d 891, 900 (N.D. Ill. 1999); *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071, 1079 (N.D. Ill. 2016) (isolated examples of binding requirements "does not create contractual obligations when all of the other relevant policies and rules use permissive language");

- Count IV – Promissory estoppel – The Civil Case Docket states that Mr. Wright voluntarily dismissed this count, which means that Mr. Wright has admitted that this count has no merit. Fed. R. Evid. 801(d)(2); *Eagle Indus. Truck Mfg. v. Cont'l Airlines*, 125 B.R. 415, 417 (Bankr. D. Del. 1991) (internal citation omitted). Moreover, he cannot state a claim for promissory estoppel, because there is no written contract and "promissory estoppel does not bar the application of the Statute of Frauds." *McInerney v. Charter Golf*, 680 N.E.2d 1347, 1352 (1997) (internal citations omitted). Finally, ERISA preempts this state-law cause of action to the extent that it relies upon the Grace retirement-plan manuals to constitute a written offer of employment. *Metro. Life*, 481 U.S. at 64-66; and

---

[4]  The Complaint has attached to it extracts of two retirement-plan manuals: (i) Exhibit A, entitled "W. R. Grace & Co. Retirement Plan for Salaried Employees" (the document being the "Grace Retirement Plan Manual" and the plan being the "Grace Retirement Plan"); and (ii) Exhibit B, entitled "The W. R. Grace & Co. Supplemental Retirement Plan," dated March 1993 (the document being the "Grace SERP Manual" and the plan being the "Grace SERP," which together with the Grace Retirement Plan are the "Retirement Plans"). (Proposed Findings of Uncontested Facts ¶ 7; Complaint.)

- Count V – Negligent misrepresentation – This count fails for two reasons. First, Mr Wright dismissed this Civil Case count in the last responsive pleading he filed in the Civil Case, thereby admitting that the count lacks merit. Fed. R. Evid. 801(d)(2); *Cont'l Airlines*, 125 B.R. at 417. Second, Mr. Wright cannot as a matter of Illinois law bring a negligent misrepresentation claim against Grace-Conn., because it is not "in the business of supplying information for the guidance of others in their business transactions." *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998).

In support of this Objection, the Reorganized Debtors respectfully state as follows:

## JURISDICTION

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware*, dated February 29, 2012.[5] This is a core proceeding pursuant to 28 U.S.C.

§ 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The predicates for this Claim Objection are section 502 of the Bankruptcy Code,

Fed. R. Bankr. P. 3001, 3007 and 7055 and Del. Bankr. L.R. 3007-1 and 7055-1.

## BACKGROUND

3.    This section summarizes the Proposed Findings of Uncontested Facts, which

contains the background facts and exhibits supporting this Objection.

## I.    THE CHAPTER 11 CASES AND MR. WRIGHT'S CLAIM

4.    On April 2, 2001, Grace and its affiliates commenced their chapter 11 cases (the

"Petition Date"). On November 1, 2001, Mr. Wright filed his Proof of Claim, to which was

attached a copy of the Complaint which Mr. Wright filed on February 25, 1999, thereby

commencing his Civil Case. The Proof of Claim asserts Mr. Wright's general unsecured Claim

in the amount of $651,678. (Proposed Findings of Uncontested Facts ¶ 1.)

---

[5]    The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Claim Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      On August 26, 2008, the then-Debtors filed their *Amended Debtors' Twenty-Fifth Omnibus Objection to Claims (Substantive)* [Docket no. 19378] (the "25th Omnibus Objection").[6] The 25th Omnibus Objection objected to Mr. Wright's Claim on the basis of "no liability." At a hearing on September 29, 2008, counsel for the Debtors announced that, as to Mr. Wright's Claim, the 25th Objection was being continued to another hearing scheduled for October 20, 2008. (Transcript of Record, 7:7-8:13, September 28, 2008.) The 25th Omnibus Objection was continued thereafter, and Mr. Wright did not file a response to the 25th Omnibus Objection. (Proposed Findings of Uncontested Facts ¶ 2.)

6.      On February 3, 2014, the Reorganized Debtors consummated the Plan and emerged from chapter 11. Since then, sixty of the sixty-two cases have been closed. Only the cases of Grace and Grace-Conn. remain open. (Proposed Findings of Uncontested Facts ¶ 3.)

## II.    MR. WRIGHT'S EMPLOYMENT AT GRACE-CONN.

### A.    Mr. Wright's Employment

7.      Mr. Wright was born on June 18, 1937. (Complaint at ¶ 1.) He commenced his employment with Grace-Conn. in 1965 or 1966. (Exit Interview, Proposed Findings of Fact Exhibit B (states that employment commenced on July 19, 1965); "personal severance plan," dated January 5, 1996 ("Personal Severance Plan"), Proposed Findings of Uncontested Facts Exhibit C (states that employment commenced on May 10, 1966); Complaint at ¶ 6 (states that employment commenced on January 1, 1965); Proposed Findings of Uncontested Facts ¶ 4.)

---

[6]    The 25th Omnibus Objection superseded and replaced the *Debtors' Twenty-Fifth Omnibus Objection to Claims (Substantive)* [Docket no. 19369], which was filed on the same date.

8.    On March 16, 1990, Mr. Wright was promoted to the position of Regional Manager for Region 350.  ("Cryovac Announces" Bulletin, dated March 16, 1990, Proposed Findings of Uncontested Facts Exhibit D; Proposed Findings of Uncontested Facts ¶ 5.)

9.    Mr. Wright's employment with Grace-Conn. terminated on March 31, 1996. (Complaint at ¶ 9.) As of that date, he had credited service of 29 years and 11 months. (Personal Severance Plan.)  He collected severance pay in monthly installments beginning on April 1, 1996.  Those payments terminated on July 15, 1997.  (Personal Severance Plan; Cryovac Personnel Action Form, dated March 31, 1996, Proposed Findings of Uncontested Facts Exhibit E.)  Mr. Wright has continued to receive all retirement benefits to which he was entitled as of his Retirement Date as such benefits have come due.  (Complaint, *passim*; Personal Severance Plan; Proposed Findings of Uncontested Facts ¶ 6.)

**B.    The Grace Retirement Plans**

10.    Mr. Wright's Complaint has attached to it two documents, one of which, labeled "Exhibit A," is entitled "W. R. Grace & Co. Retirement Plan for Salaried Employees" (the document being the "Grace Retirement Plan Manual" and the plan being the "Grace Retirement Plan").  The Complaint states that Exhibit B is a document entitled "The W. R. Grace & Co. Supplemental Retirement Plan," dated March 1993 (the document being the "Grace SERP Manual" and the plan being the "Grace SERP").  Proposed Findings of Uncontested Facts ¶ 7.)

**III.    MR. WRIGHT'S CIVIL CASE**

11.    On February 25, 1999, Mr. Wright commenced his Civil Case by filing his Complaint. (Civil Case Docket; Complaint.)  The Complaint named both Grace-Conn. and an entity styled as "Cryovac Division W. R. Grace & Co.-Conn. n/k/a Sealed Air Corp" (referred to hereinafter as "Sealed Air").  Sealed Air was later dismissed from the Civil Case.  (Proposed Findings of Uncontested Facts ¶ 11.)

12.    In his Complaint, Mr. Wright alleged five counts on which Grace-Conn. could be held liable:

- Count I – Age discrimination pursuant to ADEA;

- Count II – Breach of oral contract – a state law claim;

- Count III – Breach of written contract – a state law claim;

- Count IV – Promissory estoppel – a state law claim; and

- Count V – Negligent misrepresentations – a state law claim.

(Complaint, *passim*.)

13.    On June 25, 1999, Grace-Conn. filed a motion and supporting memorandum in Wright's Civil Case to dismiss Wright's Complaint. (*Defendant W. R. Grace & Co.-Conn.'s Motion to Dismiss Counts II-V of Plaintiff's Complaint*, dated June 25, 1999, Civil Case Docket no. 13 (the "Motion to Dismiss"), Proposed Findings of Uncontested Facts Exhibit H.) On September 1, 1999, Mr. Wright filed a response to the Motion to Dismiss. (*Response to Motion to Dismiss*, dated September 1, 1999, Civil Docket no. 23, Proposed Findings of Uncontested Facts Exhibit I.) On September 17, 1999, Grace-Conn. filed a reply. (*Reply Memorandum in Support of Motion to Dismiss Counts II-V of Plaintiff's Complaint*, Civil Docket no. 24, Proposed Findings of Uncontested Facts Exhibit J.) The Motion to Dismiss briefed each of the issues addressed in this Objection, and Grace-Conn.'s Reply responded to arguments raised by Mr. Wright's Response.

14.    On November 22, 1999, counsel for Grace-Conn. served its RFA on counsel for Mr. Wright. (Proposed Findings of Uncontested Facts ¶ 14; Proposed Findings of Uncontested Facts Exhibit K.) On December 8, 1999, Mr. Wright served his RFA Response. (Proposed Findings of Uncontested Facts ¶ 14; RFA Response, Proposed Findings of Uncontested Facts Exhibit L.)

15.    On February 8, 2000, counsel for Grace-Conn. sent the 2/8/00 Gotshall Letter to counsel for Mr. Wright advising counsel that Grace-Conn. intended to "file a motion for summary judgment on Count I of Plaintiff's Complaint alleging age discrimination under" ADEA.  The letter further advised counsel that Grace-Conn. would "seek sanctions against both you and your client, as appropriate, if you continue to pursue Count I.  As required by Rule 11, I have enclosed a copy of the motion we will file in 21 days if that Count is not voluntarily dismissed."  (Proposed Findings of Uncontested Facts ¶ 15; 2/8/00 Gotshall Letter, Proposed Findings of Fact <u>Exhibit M</u>.)  On February 24, 2000, counsel for Grace-Conn. sent a letter to counsel for Mr. Wright confirming that Mr. Wright had agreed to dismiss Count I of the Complaint.  (Proposed Findings of Uncontested Facts ¶ 15; J. Gotshall letter, dated February 24, 2000, Proposed Findings of Uncontested Facts <u>Exhibit N</u>.)

16.    In March 2000, and then again in May 2000, the District Court indicated on the record that it intended to issue a ruling on Grace-Conn.'s Motion to Dismiss.  (Proposed Findings of Uncontested Facts ¶ 17; Civil Case Docket no. 26.)  But the District Court did not issue any such ruling prior to the Petition Date.  (Proposed Findings of Uncontested Facts ¶ 17; Civil Case Docket, *passim*.)

## THE OBJECTION

### I.    THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE RECORD IN MR. WRIGHT'S CIVIL CASE

17.    This Court, in adjudicating Mr. Wright's Claim, may take judicial notice of the existence of his Civil Case.  It is axiomatic that a court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) [] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); FED. R. BANKR. P.

9017 ("The Federal Rules of Evidence … apply in cases under the Code").

18.    A court "must take judicial notice if a party requests it and the court is supplied

with the necessary information." *Id.* at 201(c); *see also Pension Benefit Guar. Corp. v. White

Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (finding that "a court may consider an

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff 's claims are based on the document. Otherwise, a plaintiff with a legally deficient

claim could survive a motion to dismiss simply by failing to attach a dispositive document on

which it relied"); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *In

re Landsource Cmtys.*, 485 B.R. 310, 315 (Bankr. D. Del. 2012) (citing *Nantucket Investors II v.

Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 205 (3d Cir. 1995)) (a court may take

judicial notice of an adjudicative fact under Fed. R. Evid. 201 that is not subject to reasonable

dispute "as long as it is not unfair to a party to do so and does not undermine the trial court's fact

finding authority").  The Third Circuit has held that the kind of information necessary for this

Court to take judicial notice of the Civil Case Docket includes sufficient information regarding

the identity of those cases so that the Court may access the docket itself.  *See, e.g., Maritime

Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); *Indian Palms

Assocs.*, 61 F.3d at 206 (3d Cir. 1995) (citing *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 n.2

(10th Cir. 1990)) (upholding bankruptcy court's taking judicial notice of omissions in debtor's

previously filed statement of affairs and schedule of assets as evidence that debtor had made a

false oath).  None of the underlying filings listed on the Civil Case Docket is available on ECF.

The Reorganized Debtors have therefore provided a declaration describing how they obtained the

various filings from that docket, copies of which have been attached to the Proposed Findings of Uncontested Facts. (Finke Declaration, *passim*.)

19.     For the foregoing reasons, the Reorganized Debtors respectfully request the Court take judicial notice of the filings set forth in Mr. Wright's Civil Case Docket.

## II.   ILLINOIS LAW APPLIES TO MR. WRIGHT'S SUBSTANTIVE CLAIMS

20.     Bankruptcy Code section 502(b)(1) provides in relevant part that a claim may be disallowed when "such claim is unenforceable against the debtor, and unenforceable against property of the debtor, ***under any agreement or applicable law*** for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (emphasis added); *see also In re Smith*, 66 B.R. 58, 59 (Bankr. D. Md. 1986); *Desert Palace, Inc. v. Hionas (In re Hionas)*, 361 B.R. 269, 271 (Bankr. S.D. Fla. 2006). Here, the Court should apply Illinois law to its state law-based claims, because Mr. Wright was employed by Grace in Illinois. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314 (1987) (applying Illinois law to issue of whether an employee handbook constituted an employment contract). ADEA claims are governed by applicable federal law, except to the extent that Illinois law applies to the requirement, discussed below, that an employee bring an ADEA age discrimination claim within 300 days. 29 U.S.C. § 626(d); *Hamilton v. Komatsu Dresser Indus.*, Inc., 964 F.2d 600, 603 (7th Cir. 1992) (internal citation omitted).

## III.   COUNT I – THE ADEA CLAIM – IS BARRED AS A MATTER OF LAW, BECAUSE MR. WRIGHT DID NOT FILE A COMPLAINT WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR THE ILLINOIS HUMAN RIGHTS COMMISSION

21.     In Illinois, an employee may bring an age discrimination action under the ADEA only if the employee files a complaint with the EEOC or the IHRC within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d); *Hamilton*, 964 F.2d at 603 (internal

citation omitted); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004).

Mr. Wright has admitted in his RFA Response that he never filed such a complaint:

> Plaintiff admits that he did not file a charge of discrimination with the Human Rights Commission; plaintiff further states that he attempted to file a charge of discrimination with the Equal Employment Opportunity Commission, but that the EEOC would not accept his charge for filing because of timeliness.

(Proposed Findings of Uncontested Facts ¶ 14; RFA Response.)

22.     In March 2000, Mr. Wright voluntarily dismissed Count I (ADEA) in his Civil Case.  (Proposed Findings of Uncontested Facts ¶ 17; Civil Case Docket no. 26.)  Mr. Wright did so in the wake of his counsel having received the 2/8/00 Gotshall Letter, which advised that Grace-Conn. intended to "file a motion for summary judgment on Count 1 of Plaintiff's Complaint alleging age discrimination" under ADEA.  The letter further stated that Grace-Conn. would seek sanctions against both Mr. Wright and his counsel if count 1 were not dismissed.

(Proposed Findings of Uncontested Facts ¶ 15; Gotshall 2/8/00 Letter.)

23.     Mr. Wright's Claim as to the ADEA count must therefore be disallowed.

## IV.   COUNT II – ENFORCEMENT OF AN ORAL CONTRACT – IS BARRED AS A MATTER OF ILLINOIS LAW

### A.   Statute of Frauds Bars Enforcement of Employment Contract With Four-Year Period

24.     The Illinois statute of frauds states in relevant part:

> That No action shall be brought … upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 Ill. Comp. Stat. Ann. 80/1 (2016) (the Illinois "Statute of Frauds").

25.     In other words, an oral agreement that cannot be performed within one year is unenforceable as a matter of law. *Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d 279, 283 (7th Cir. 1999); *Hammond Grp. v. Spalding & Evenflo Cos.*, 69 F.3d 845, 849 (7th Cir. 1995) (internal citations omitted) (Contract capable of being completed within one year not per se barred by statute of frauds). As the Illinois Supreme Court stated:

> The period of one year, although arbitrary, recognizes that with the passage of time evidence becomes stale and memories fade. The statute proceeds from the legislature's sound conclusion that while the technical elements of a contract may exist, certain contracts should not be enforced absent a writing. It functions more as an evidentiary safeguard than as a substantive rule of contract. As such, the statute exists to protect not just the parties to a contract, but also-perhaps more importantly-to protect the fact finder from charlatans, perjurers and the problems of proof accompanying oral contracts.

*McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1351 (1997). The Illinois Supreme Court further held that:

> A "lifetime" employment contract is, in essence, a permanent employment contract. ***Inherently, it anticipates a relationship of long duration-certainly longer than one year***. In the context of an employment-for-life contract, we believe that the better view is to treat the contract as one "not to be performed within the space of one year from the making thereof." ***To hold otherwise would eviscerate the policy underlying the statute of frauds*** and would invite confusion, uncertainty and outright fraud. Accordingly, we hold that ***a writing is required for the fair enforcement of lifetime employment contracts***.

*Id.* at 1351-52 (emphasis added).

26.     In his Complaint, Mr. Wright alleges that in September 1995 when he was age 58, two of his superiors "agreed" that he could work until age 62 and retire under the "normal retirement plan." (Complaint ¶ 13.) Such an oral contract—if it in fact existed—is physically impossible to perform because one cannot perform a four-year long oral agreement within one year—unlike a lifetime employment contract, which as the Illinois Supreme Court noted is at

least potentially capable of being performed within a year (if the employee is very unlucky), and

which is nonetheless unenforceable under the Illinois Statute of Frauds. *Id.* So, too, therefore, is

Mr. Wright's alleged oral employment contract unenforceable. *See Prodromos v. Howard Sav.*

*Bank,* 692 N.E.2d 707, 711 (1998) (three-year employment contract barred by Illinois statute of

frauds); *Uncommon USA, Inc. v. Wing Enters.*, 2003 U.S. Dist. LEXIS 14249, at *4-5 (N.D. Ill.

Aug. 14, 2003) (internal citations omitted) (an oral distribution "agreement between Uncommon

and Wing existed for five years," and was therefore unenforceable under the Statute of Frauds);

*Robinson v. BDO Seidman, LLP*, 854 N.E.2d 767, 772 (2006) ("an employment contract for as

long as the employee desires is, in essence, a permanent contract" and thus unenforceable if it is

not in writing); *compare Dugas-Filippi v. JP Morgan Chase, N.A.*, 66 F. Supp. 3d 1079, 1089

(N.D. Ill. 2014) ("contract did not anticipate a relationship of duration beyond one year," and

was therefore not barred by the Statute of Frauds).

**B.    Partial Performance Does Not Bar Application of Statute of Frauds**

27.    In his Response in the Civil Case, Mr. Wright asserted that partial performance

bars application of the Statute of Frauds to his alleged oral four-year employment contract.

(Response at pp. 4-5.)  Mr. Wright asserted that the contract was partially performed because he

continued to work from September 1995 until March 31, 1996, when he retired, and was paid for

his work.  While it is uncontested that Mr. Wright remained employed by Grace-Conn. until

March 1996, he is wrong as a matter of law that this affects the applicability of the Illinois

Statute of Frauds. The Illinois Supreme Court held in *McInerney* that:

> A party's partial performance generally does not bar application of
> the statute of frauds, unless it would otherwise be "impossible or
> impractical to place the parties in status quo or restore or
> compensate" the performing party for the value of his
> performance. ... This so-called exception resembles the doctrines
> of restitution, estoppel and fraud, and exists to avoid a "virtual
> fraud" from being perpetrated on the performing party. ... ***In any***

> *event, our plaintiff has been fully compensated for the work that*
> *he performed. Accordingly, part performance—on these facts—*
> *will not take the case out of the statute of frauds.*

*McInerney*, 680 N.E.2d at 1352 (internal citations omitted); *see also Mapes v. Kalva Corp.*, 386
N.E.2d 148, 152 (1979).

28.    In his Response, Mr. Wright makes much of the *Mapes* case supporting his partial
performance argument by stating that at the time of Grace-Conn.'s motion to dismiss and Mr.
Wright's Response, Mr. Wright had already reached the age 62, thus rendering it "impossible to
return him to the status quo," and arguing that "it would [thus] be a virtual fraud" upon Mr.
Wright for Grace-Conn. to use the Illinois Statute of Frauds as an affirmative defense.
(Response at p. 4.)  Mr. Wright's reliance on *Mapes* is misplaced, both in light of the Illinois
Supreme Court's 1997 ruling (18 years after *Mapes*), and in light of the actual facts and holding
of *Mapes*.

29.    In that case, plaintiff and defendant met in October 1972, and defendant offered
plaintiff a job for fiscal 1973 (November 1, 1972, to October 31, 1973) at an agreed-upon salary
and bonus.  Plaintiff further testified that the agreement also provided for a salary increase for
fiscal year 1974 (November 1, 1973, to October 31, 1974).  386 N.E.2d at 150.  Plaintiff was
terminated in January 1974, and was paid through the date on which he was dismissed.  *Id.* at
150.  The Illinois appellate court identified two issues for appeal, one of which was whether the
Statute of Frauds rendered the alleged employment contract unenforceable.  *Id.* at 151.

30.    The court first determined that the alleged employment agreement for fiscal years
1973 and 1974 were ***two separate contracts***, "each with its own terms." *Id.*  It then held that the
1973 contract was no longer executory, because both parties' performance had been completed.
Plaintiff had discharged his duties and defendant had paid him (although less than what plaintiff
testified had been agreed to).  *Id.*  The court then held that ***complete*** performance of the 1973

oral contract barred application of the Statute of Frauds. *Id.* at 153. The court thereupon found that plaintiff was entitled to damages for the unpaid portion of the bonus for fiscal year 1973.

31.     The outcome as to the partially performed 1974 oral contract was entirely different. The court held that partial performance by plaintiff of the alleged employment agreement (by working until January 1974) for which he was paid did not bar application of the Statute of Frauds. *Id.* at 152. The Statute of Frauds thus barred plaintiff's recovery for defendant's breach of the purported 1974 oral contract—because it could not have been fully performed within one year of it having been agreed to in October 1972. *Id.*

32.     Here, Mr. Wright alleges a fact pattern analogous to the 1974 contract in *Mapes*, which the court found to violate the Illinois Statute of Frauds. Specifically, Mr. Wright is contending that he had ***a single oral contract*** for employment through age 62, which he alleges he entered into with Grace-Conn. in September 1995, when he was allegedly reassured that he could work until his 62nd birthday (then nearly four years in the future). (Complaint at ¶ 13.) Mr. Wright then worked—and was paid for his work—from September 1995 until March 31, 1996, when he retired. Assuming that the alleged oral contract actually existed, that exchange of consideration constitutes partial performance, as the supposed term of the contract did not end until June 1999, more than three years later. *Id.* As the *Mapes* court held, such partial performance, for which Mr. Wright was paid in full, does not bar application of the Statute of Frauds in a matter where only damages are sought—which is entirely consistent with the Illinois Supreme Court's holding in *McInerney* nearly two decades later. *Id.*; *McInerney*, 680 N.E.2d at 1352; *see also Fischer*, 195 F.3d at 283 (internal citation omitted) ("the partial performance exception is not applicable to a normal employment contract such as the one here"). Therefore, the Statute of Frauds bars any recovery for Mr. Wright for his alleged four-year oral contract that

was to have terminated on or about his birthday in 1999. *Mapes*, 386 N.E.2d at 153; *Fischer*,

195 F.3d at 283; *McInerney*, 680 N.E.2d at 1352.

> **C.     Mr. Wright Did Not Allege Any Misrepresentation**

33.     Finally, Mr. Wright has argued in his Response that the Statute of Frauds does not

apply to bar the alleged oral contract, because he has alleged that "material misrepresentations

and fraud occurred when" he and Grace-Conn. entered into the alleged oral contract. (Response

at 5-6.) Mr. Wright is wrong as a matter of both fact and law.

34.     In his Civil Case Complaint and Response, Mr. Wright states that the following

statements were allegedly made to him:

> 1) That Plaintiff's job was going to be eliminated;
> 2) That there were no other assignments available for plaintiff;
> 3) That the company was unable to give him any credited service
> for the four years he did not work; that they would never give such
> credit in the future to any employee; and
> 5) That the present value of the severance money plaintiff was
> receiving would fully compensate him for all of his losses. (See
> plaintiffs complaint, Count V)

(Response at p. 6; Complaint at ¶ 22 (on p. 6-7) (numbering as it appears in the Response).) Mr.

Wright alleges that each of these statements was made in the February/March 1996 timeframe,

shortly before he retired, to explain why his employment was being terminated. (Complaint at ¶

18.) In his Complaint (but not in his Response), Mr. Wright also alleges that "[p]rior to February

1996, Plaintiff was reassured ... that he could work until the age of 62." (Complaint at ¶ 14.)

For reasons discussed below, Mr. Wright cannot rely on any of these statements to bar

application of the Statute of Frauds to the alleged oral contract.

35.     In *Sinclair v. Sullivan Chevrolet Co.*, 202 N.E.2d 516 (1964), (upon which Mr.

Wright relies for his argument) the Illinois Supreme Court held that the doctrine of equitable

estoppel may bar application of the Statute of Frauds to an alleged oral contract ***only if***:

- The defendant makes statements to the plaintiff ***at the time of entry*** into the alleged oral contract; and

- The statements amount to a misrepresentation or concealment of material fact ***about an existing or past event***.

*Sinclair v. Sullivan Chevrolet Co.*, 202 N.E.2d 516, 518 (Ill. 1964) (internal citations omitted);

*James R.D. v. Maria Z. (In re Scarlett Z.-D.)*, 28 N.E.3d 776, 785 (Ill. 2015) (citing *Sinclair v.*

*Sullivan Chevrolet*, 202 N.E.2d at 518) (same).

36.     Based on the allegations made in his own words in his own pleadings, Mr. Wright's argument fails as a matter of fact and law.  First, the Response and the Complaint state that the alleged statements set forth in the Response occurred in February or March 1996—many months after the alleged September 1995 entry into the oral contract.   Moreover, they were clearly made in the context of Mr. Wright's then-impending retirement.  In other words, these statements had nothing to do with entry into the alleged oral contract, and are thus completely irrelevant to Mr. Wright's invocation of the doctrine of estoppel.

37.     Mr. Wright alleges that the final statement, "that he could work until the age of 62," was made "[p]rior to February 1996."  (Complaint at ¶ 14.)  He does not allege that the statement was made at the time the alleged oral contract was entered into.  Therefore, he cannot rely on this statement either.

38.     But even if the "work until the age of 62" statement had been made to him in September 1995, Mr. Wright could not as a matter of law use it to invoke the doctrine of equitable estoppel, because the statement (as alleged) is clearly a promise or prognostication about a future event, and does not refer to an existing or past event.  *Sinclair v. Sullivan Chevrolet*, 202 N.E.2d at 518.  Each of the remaining statements set forth in the Response is also a promise or prognostication about a potential future event.  (Response at p. 6; Complaint at ¶ 22 (on p. 6-7) (numbering as it appears in the Response).)  Thus, even if those statements had been

made in September 1995, Mr. Wright could not use them to invoke the doctrine of equitable

estoppel to bar application of the Statute of Frauds to the alleged oral contract. *Sinclair v.*

*Sullivan Chevrolet*, 202 N.E.2d at 518.

39.    To put it bluntly, Mr. Wright's argument fails as a matter of fact (he doesn't

allege that any statements were made to induce entry into the alleged oral contract) and as a

matter of law (any such statements must be made contemporaneously about existing or past

events). This Court should thus disallow Mr. Wright's Claim to the extent that it relies upon the

enforcement of any alleged oral contract between him and Grace-Conn. concerning post-March

31, 1996 employment.

**V.    COUNT III – BREACH OF CONTRACT - FAILS AS A MATTER OF LAW, BECAUSE ERISA PREEMPTS THE COUNT, AND THERE IS NO WRITTEN EMPLOYMENT CONTRACT**

40.    Count III of Mr. Wright's Complaint alleges a breach of written contract based

upon a theory that the Grace Retirement Plan and the Grace SERP together constitute a written

promise by Grace-Conn. to employ Mr. Wright until his sixty-fifth birthday. (Complaint at ¶¶

22-33.) This Court should disallow Mr. Wright's Claim as to a purported breach of written

contract on either of two bases. First, ERISA preempts Mr. Wright's state-law claim, because

ERISA governs both of the plans upon which he relies. *Collins v. Ralston Purina Co.*, 147 F.3d

592, 595 (7th Cir. 1998) ("ERISA … preempts a state law claim if the claim requires the court to

interpret or apply the terms of an employee benefit plan"). Second, even if Count III were not

preempted by ERISA, the Grace Retirement Plan and the Grace SERP did not—either separately

or together—constitute a written employment contract or offer to employ Mr. Wright until his

sixty-fifth birthday. *See, e.g., Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996)

(Employee handbook had to be read as a coherent whole, and "language of the Handbook …

contains no promise of continuing employment," despite employee's argument that there was an implicit promise to the contrary).

A.    **ERISA Preempts Counts III, Because It Governs Both Plans**

41.    Count 3 of Mr. Wright's Civil Complaint requires interpretation of the scope of both Retirement Plans under state law.  But ERISA governs both plans, and the count does not state an ERISA-based cause of action.  29 U.S.C. § 1003 ("this title shall apply to any employee benefit plan"); 29 U.S.C. § 1002(36) (defining excess benefit plans); *see, also*, *Hampers*, 202 F.3d at 46 n.3 (finding that the NMC SERP—and by remove, the Grace SERP—is an excess benefit plan); *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) ("a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits").  (Grace Retirement Manual at pp. 33-34; Motion to Dismiss at p. 8.)  ERISA preempts state common law claims if they "fall within the scope of Section 502(a)(1)(B)," which permits retirement plan participants to bring a civil action to "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  11 U.S.C. § 1132(a)(1)(B); 29 U.S.C. § 1144; *Hampers*, 202 F.3d at 48-49; *Cortez v. Michael Reese Health Plan*, 980 F. Supp. 277, 278 (N.D. Ill. 1997) (citing *Metro. Life*, 481 U.S. at 64-66); *Coughlin v. Health Care Serv. Corp.*, 244 F. Supp. 2d 883, 888 (N.D. Ill. 2002) (internal citation omitted) ("Where the complaint or petition requires a contract interpretation, the cause of action is completely preempted").  Therefore, ERISA preempts Count III.

42.    In his Response to Grace-Conn.'s Motion to Dismiss, Mr. Wright argued that:

> Plaintiff[']s breach of contract and promissory estoppel claims only tangentially relate to the plaintiff[']s pension plan because his state law claims involve a consideration of the defendant's

employee benefit plan in calculating damages. However, this
incidental connection to the plan is not in conflict with the
purposes of ERISA since it does not threaten federal uniformity
and thus, ERISA should not preempt plaintiff[']s state law claims.

(Response at p. 15.)

43.    Mr. Wright's contention is both factually and legally inaccurate.    Indeed, as

Grace-Conn. pointed out in its Reply to Mr. Wright's Response:

While ERISA may not preempt a state law claim which only
indirectly affects an employee benefit plan, this narrow exception
does not apply to the case at hand. In the present case, *Plaintiff
seeks to convert Grace's retirement plans into a guaranteed
contract of employment for all Grace employees until age 65, an
enormous expansion of Grace's obligations under its retirement
plans*. To determine if such a contract or promise is contained in
the plan, *this Court must analyze and interpret the plan
language*. Such an analysis cannot be said to "tangentially" impact
the retirement plan.

(Reply at pp. 11-12 (emphasis added).)   *Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995)

("complete preemption is required where a state law claim cannot be resolved without an

interpretation of the contract governed by federal law"); *Penny/Ohlmann/Nieman, Inc. v. Miami

Valley Pension Corp.*, 399 F.3d 692, 700 (6th Cir. 2005) (internal citation omitted) ("a state-law

cause of action to enforce the terms of the contract necessarily conflicts with Congress's

"carefully crafted and detailed enforcement scheme""); *Anglin v. Sears, Roebuck & Co.*, Case No.

93 C 3438, 1993 U.S. Dist. LEXIS 15104, at *7 (N.D. Ill. 1993) (internal citations omitted)

("Preemption applies to a state cause of action under common law such as breach of contract or

estoppel as well as to the statutory cause of action").   The Reply cites to *Tolle v. Carroll Touch,

Inc.*, 977 F.2d 1129, 1136 (7th Cir. 1992), in which plaintiff asserted state-law breach of contract

and wrongful discharge claims based upon an ERISA-governed plan.   The Seventh Circuit found

that plaintiff's (Tolle):

> breach-of-contract claim relies exclusively on the terms of Tolle's employee benefit plans as the basis for breach. Considering ERISA governs these employee benefit plans and considering our prior conclusion that this Count states a claim for relief under Section 502(a)(1)(B) of ERISA, it is clear that this claim for relief is directed to and relies on such plans. Therefore, ERISA preempts this claim.

*Id.*, at 1136. (Reply at p. 12.) As Grace-Conn.'s Reply further states, "[t]he cases cited by Plaintiff are inapposite and do not involve claims which require interpretation of plan documents or the imposition of greater obligations under the plan." (Reply at 12.)

44.    Therefore, Count III is preempted by ERISA, and the Claim may be disallowed as to Count III for that reason alone.

### B.    Mr. Wright Did Not Have a Written Contract

45.    In Count III, Mr. Wright alleges that the:

> promises contained in the Grace Retirement Manuals have become part of the offer of employment to Plaintiff, and Plaintiff accepted the unilateral offer contained in the Retirement Manuals by continuing his employment with Defendant after receiving the Grace Retirement Manuals.

(Complaint at ¶ 26.) Mr. Wright's allegation fails both as a matter of fact and well-established law, because, as Grace-Conn.'s Motion to Dismiss states, "[n]o reasonable reading of the Retirement Plans ... suggests that they formed a contract obligating Grace to retain Plaintiff (and indeed, all other employees covered by the Plans) until he attained age 65." (Motion to Dismiss at p. 3.)

46.    Under Illinois law, "an employment relationship without a fixed duration is terminable at will by either party." *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317 (Ill. 1987). This "general 'employment-at-will rule' ... [is] a rule of construction, mandating only a presumption that a hiring without a fixed term is at will, a presumption which can be overcome by demonstrating that the parties contracted otherwise." *Id.* at 318. Thus:

> An employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed.

*Id.* "If any one of these elements is absent, no express contract has been formed, and the relationship is merely one of 'employment-at-will'." *Boulay v. Impell Corp.*, 939 F.2d 480, 482 (7th Cir. 1991) (quoting *Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 872 (7th Cir. 1989) (citing *Duldulao*, 505 N.E.2d at 317)). In particular, the *Duldulao* handbook contained a provision stating that:

> [A]t the end of 90 calendar days from employment the employee becomes a permanent employee and termination contemplated by the hospital cannot occur without proper notice and investigation. … In addition, [the Illinois Supreme Court found that] permanent employees are never dismissed without prior written admonitions and/or an investigation that has been properly documented and three warning notices within a twelve-month period are required before an employee is dismissed, except in the case of immediate dismissal.

*Perman v. Arcventures, Inc.*, 554 N.E.2d 982, 987 (1990) (citing *Duldulao*, 505 N.E.2d at 316).

47.    Here, neither the Grace Retirement Plan Manual nor the Grace SERP Manual is an employee handbook. The manuals instead document their respective ERISA-governed benefit plans. 29 U.S.C. § 1003; *see, also, Hampers v. W. R. Grace & Co.*, 202 F.3d 44 (1st Cir. 2000). (Grace Retirement Manual at pp. 33-34; Motion to Dismiss at p. 8.) Unlike the employee handbooks that various Illinois courts have found to contain a "clear promise" of employment that changes the "at-will" employment presumption, the two plans and their manuals do not

contain any language concerning disciplinary procedures, nor do they contain any other language that could be construed as altering the "at-will" employment relationship. Indeed, the two manuals are replete with:

> [N]umerous provisions explaining the calculation of benefits *if the employment ends before the employee reaches age 65.* For example, *the Plans provide a method by which to calculate retirement benefits if employment ends prior to age 62* (Retirement Plan for Salaried Employees, p. 10, Supplemental Plan, p. 6). Additionally, *the Plans explicitly provide for the forfeiture of benefits if employment ends prior to vesting.*"

(Motion to Dismiss at p. 4 (emphasis added).) It is in the face of such explicit language that Mr. Wright is effectively arguing that Grace-Conn. is constrained from terminating any employee covered by the Retirement Plans before that employee reaches his or her sixty-fifth birthday. (*Id.*) To reach such a conclusion would not only violate the traditional principles of contract interpretation—which *Duldulao* requires must be met—but it would also require a reading that directly contravenes the "plain and ordinary meaning" of the two manuals. *Duldulao*, 505 N.E.2d at 318 (applying "traditional principles" of contract interpretation); *Doyle v. Holy Cross Hosp.*, 1708 N.E.2d 1140, 1144-45 (Ill. 1999) (affirming requirement that "'traditional principles' of contract law" be applied in determining whether an employee handbook constitutes an employment contract altering the presumptive "at-will" employment relationship); *Selch v. Columbia Mgmt.*, 977 N.E.2d 287, 294 (Ill. App. Ct. (1st) 2012) (internal citations omitted) ("In order to understand the intent of a contract, the court must consider the document in its entirety and give the language, contained therein, its plain and ordinary meaning ... Moreover, under Illinois law, the contract must be construed as a whole, by viewing each component in light of the others").

48.      Indeed, no reasonable person could have concluded that any of the language in the Grace Retirement Plan and Grace SERP manuals constituted a "clear promise." First, the

manuals are replete with conditional language (e.g., "*if the employment ends before the employee reaches age 65*"), which by itself is sufficient to negate any argument of a "clear promise" to Mr. Wright of continued employment until age 65. (Motion to Dismiss at p. 4 (emphasis added).) *Boulay*, 939 F.2d at 482-83 (collecting cases where conditional language was insufficient to constitute a "clear promise"). Second, the two Retirement Plans explicitly provide for an employee to forfeit his or her rights if employment were to terminate prior to vesting. Finally, the very nature of Mr. Wright's contention—that the two plans confer a contractual right to him (and by remove, to every participant in the two plans) to continue working at Grace-Conn. until the age of sixty-five—is patently unreasonable on its face. Indeed, if Mr. Wright were correct, it would enormously expand Grace-Conn.'s—and Grace's Grace's—obligations under the plans in view of the fact that the two Retirement Plans are general plans with many, many participants.

49.    What's more, as the Motion to Dismiss states:

> The Plans contain explicit disclaimers vesting absolute power with the Company to terminate or change the Plans—language diametrically opposed to the formation of a contract. For example, the Plans state:
>
> • "Although the Company expects to continue the plan for future periods, through the actions of its Board of Directors (or its designee) it reserves the right to change, suspend, or end the plan at any time. If the plan should end, the money in the trust fund may be used for the benefit of participants and beneficiaries." (See Retirement Plan for Salaried Employees at page 31.)
>
> • "The supplemental plan may be terminated by Grace at any time for any or all employees. Grace may also change any plan feature at any time." (See Supplemental Plan at page 8.)

(Motion to Dismiss at p. 4.)

50.    When such disclaimers are present in a handbook or other document issued when the employee is already employed, then that handbook or other document generally cannot be

used to establish an employer's "clear promise" of continued employment. *Boulay*, 939 F.2d at 483 (a clear disclaimer "negates an employee's contractual expectations") (citing *Doe v. First Nat'l Bank*, 865 F.2d 864, 873 (7th Cir. 1989)); *Campbell v. Nw. Mem. Home Health Care/Servs.*, Case No. 97 C 7693, 1998 U.S. Dist. LEXIS 7083, at *15 (N.D. Ill. Apr. 29, 1998) (citations omitted) ("conspicuous disclaimers will stand in the face of purportedly contractual language that is, in fact, equivocal"); *Condon v. Am. Tel. & Tel. Co.*, 569 N.E.2d 518, 521 (1991) (internal citation omitted) ("Since *Duldulao*, this court has found the presence of disclaimers in an employee handbook or manual negates contract formation under *Duldulao*"); *Anders v. Mobil Chemical Co.*, 559 N.E.2d 1119 (Ill. App. Ct. 1990), appeal denied, 564 N.E.2d 834, 135 Ill. 553, Ill. Dec. 379 (1990) (court refused to hold employee manual to be a contract where a disclaimer appeared in the front of the manual, even though the manual provided for general disciplinary procedures and listed specific acts of punishable misconduct); *Bennett v. Evanston Hosp.*, 540 N.E.2d 979 (Ill. App. Ct. 1989) (employee handbook, which included a statement that handbook was "not intended to create a contract of employment," did not alter employee's at-will status). Moreover, as discussed in Grace-Conn.'s Reply in the Civil Case, the disclaimers in the manuals are more than sufficiently conspicuous to preclude contract formation. (Reply at p. 8.) The Grace Retirement Plan's disclaimer on page 31 is designated under a boldface type heading, "**The Plan's Future**." As also discussed in the Reply:

> This section is immediately preceded by a provision entitled, "**Rights to Benefits**," certainly an important section which a reasonable person in Plaintiff's position would have noticed. The disclaimer language in the Supplemental Retirement Plan is likewise set off under a boldface heading. Further, that section is preceded by a provision entitled "**Vesting**," which would also be a key provision that a reasonable employee in Plaintiffs position would have noticed and read.

(Reply at p. 8.) *See also Campbell*, 1998 U.S. Dist. LEXIS 7083, at *19 ("a reasonable reading of the documents suggests that the disclaimers are sufficiently conspicuous to be operative"); *Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 900 (N.D. Ill. 1999).

51.    In *Finnane*, for example, the court found the disclaimer language sufficiently conspicuous to preclude contract formation, even though the language was contained in the middle of a paragraph, it was not entitled "Disclaimer," and it was not printed in boldface or other distinguishing typeface. *Id.* at 900. By comparison, the language in the Grace Retirement Plan and the Grace SERP manuals is far more conspicuous, as described above. Indeed, it is quite analogous to that found in the *Tatom* case, where the Seventh Circuit found a disclaimer sufficient to preclude contract formation, where the:

> [D]isclaimer was by no means hidden: it came at the end of a short booklet, was set forth in the same typeface as the rest of the booklet following the word "Notice" in bold letters (a heading and typeface that alerted the reader to its significance), and the language of the disclaimer was unambiguous.

*Tatom v. Ameritech Corp.*, 305 F.3d 737, 744 (7th Cir. 2002) (internal citation omitted). Therefore, any argument by Mr. Wright that the disclaimers did not preclude contract formation must fail.

52.    Thus, both the language of the Grace Retirement Plan and the Grace SERP manuals, which both clearly contemplate potential termination of employment prior to the age 65 (as well as prior to vesting, which could occur years or decades before even early retirement age (55) is reached)—which by itself is more than sufficient to gut Mr. Wright's argument—and the disclaimers lead inexorably to only one conclusion: the Plans and their respective manuals do not present a "clear promise" in writing that obviates the "at-will" employment relationship.

53.     In conclusion, to the extent that Count III was not preempted by ERISA, it fails as a matter of law, and Mr. Wright's bankruptcy claim should be disallowed to the extent it relies on Count III.

## VI.     COUNT IV – PROMISSORY ESTOPPEL – FAILS AS A MATTER OF LAW, BECAUSE MR. WRIGHT HAS NOT STATED A CLAIM FOR PROMISSORY ESTOPPEL

54.     In Count IV of his Complaint, Mr. Wright alleges that "[w]ritten promises were made to Plaintiff, and promises were made to Plaintiff through certain words and conduct on the part of the Defendants to the effect that the Plaintiff could opt for the normal retirement plan and work until the age of 62." (Complaint at ¶ 31.) On March 17, 2000, the District Court entered a minute order stating that Mr. Wright had voluntarily dismissed Count IV along with Count I (ADEA). (Civil Case Docket no. 26.) This dismissal constitutes an admission by Mr. Wright that he believes Count IV to be without merit. Fed. R. Evid. 801(d)(2); *Eagle Indus. Truck Mfg. v. Cont'l Airlines*, 125 B.R. 415, 417 (Bankr. D. Del. 1991) (citing *Fidelity & Deposit Co. of Md. v. Hudson United Bank*, 653 F.2d 766, 766, 777 (3d Cir. 1981)) ("In this Circuit, a statement made by a party in connection with other litigation that is adverse to or inconsistent with its position in a pending proceeding is admissible as an evidentiary admission in the pending suit"); *Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir. 1986) (citing *Contractor Utility Sales v. Certain-Teed Products Corp.*, 638 F.2d 1061, 1084 (7th Cir. 1981)) ("Pleadings in a prior case may be used as evidentiary admissions"); *Rosenberg v. Curry Chevrolet Sales & Serv.*, Case No. 97-7955, 1998 U.S. App. LEXIS 15258, at *2 (2d Cir. 1998) (internal citation omitted) ("The law is clear that pleadings constitute admissions under Rule 801(d)(2) 'and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party'."). Mr. Wright has not established any other basis for his promissory estoppel claim. Therefore, this Court should disallow Mr. Wright's Claim as to Count IV without further inquiry.

55.    Count IV of Mr. Wright's Complaint also fails as a matter of well-established Illinois law for the same reasons that Counts II and III fail. And that is because, under Illinois law, "promissory estoppel is not a doctrine designed to give a party … a second bite at the apple in the event that it fails to prove a breach of contract." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (internal citations omitted). Indeed, "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking." *Id.* (internal citations omitted). It is in this context that the Illinois Supreme Court delineated a four-part test to determine whether a promissory estoppel claim may succeed: "[A] plaintiff … [must] prove that '(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment'." *Id.* (internal citations omitted).

56.    As a threshold matter, Mr. Wright's promissory estoppel contention fails because there is no unambiguous promise in writing; neither the Grace Retirement Plan, the Grace SERP nor their respective manuals form a basis for any such promise, and there is no other writing on which Mr. Wright may rely to establish the alleged promise. *See* § V. (Motion to Dismiss at pp. 5-6, citing *Moore v. Illinois Bell Telephone Co.*, 508 N.E.2d 519 (Ill. App. Ct. 1987).) The lack of a writing—without more—defeats Count IV, because "promissory estoppel does not bar the application of the Statute of Frauds." *McInerney*, 680 N.E.2d at 1352 (internal citations omitted); *see also* § IV. (Motion to Dismiss at pp. 5-6.)

57.    The situation presented in *Martino v. MCI Communs. Servs.*, Case No. 08 C 4811, 2008 U.S. Dist. LEXIS 95155 (N.D. Ill. Nov. 20, 2008), is instructional. In that case, the court found that a compensation plan with appropriate disclaimers did not constitute an offer to the

plaintiff, Martino.  *Id.* at *20.  Martino's promissory estoppel argument failed for the same reason:  the plan did not make an unambiguous promise, and oral statements made by lower-level managers were similarly ambiguous, because they constituted predictions, opinions and prophecies—and thus did not rise to the level of a promise.  *Id.* at *23-*24.  Here, as discussed above, the two Retirement Plans do not constitute an unambiguous offer of continued employment, and oral statements like those in the *Martino* case and those purportedly made to Mr. Wright in September 1995 are barred by the Statute of Frauds from forming a contract lasting more than a year.  *Id.*; *McInerney*, 680 N.E.2d at 1352.

58.    The *Martino* case also illustrates why Grace-Conn. could not have expected or foreseen that Mr. Wright would believe that he had an explicit promise to stay employed at Grace-Conn. until either his 62nd or 65th birthday (the Complaint asserts a promise of employment until age 62, and the "normal" retirement age under the Grace Retirement Plan and Grace SERP is age 65).  (Complaint at ¶ 32.)  In *Martino*, the court found that the employer could not have foreseen that employees would rely upon interpretations of the compensation plan by lower-level managers, who did not have the authority to make such interpretations.  *Id.* at *25. The parallels with Mr. Wright's contentions here are striking.  As discussed above in § V, there is nothing in the Grace Retirement Plan and Grace SERP manuals that could give rise to any expectation on Grace-Conn.'s part, that based on those documents, that participants in those plans had any expectation of a promise of employment until age 65.

59.    Mr. Wright's Count IV, promissory estoppel, therefore must fail as a matter of well-established Illinois law.

## VII.   COUNT V – NEGLIGENT MISREPRESENTATION – FAILS AS A MATTER OF LAW, BECAUSE MR. WRIGHT CANNOT STATE A CAUSE OF ACTION

60.    Count V of Mr. Wright's Complaint alleges negligent misrepresentation.  This last count fails as a matter of law.  First and foremost, in his Response, Mr. Wright stated that "Plaintiff voluntarily dismisses Count V based on negligent misrepresentation."  (Response at p. 13.)  Mr. Wright has therefore admitted that Count V is without merit.  Fed. R. Evid. 801(d)(2); *see also Cont'l Airlines*, 125 B.R. at 417.[7]

61.    Second, even if Mr. Wright had not dismissed Count V, he still could not prevail. The Illinois Supreme Court has held that, even to state a cause of action for negligent misrepresentation, Mr. Wright's Complaint "must first allege facts establishing a duty owed by the defendant to communicate accurate information." *Brogan v. Mitchell Int'l*, 692 N.E.2d 276, 278 (Ill. 1998) (internal citations omitted).  This, Mr. Wright has failed to do—and indeed cannot do—because neither of the two narrow circumstances in which a defendant would have the duty to communicate accurate information apply to this matter. *Id.*

62.    First, Mr. Wright has not alleged a physical injury arising from any statement made by Grace-Conn. *Id.* (internal citation omitted) ("Physical harm is defined as encompassing personal injury or property damage, not emotional injury").  Second, he has not adduced any evidence that any of the Reorganized Debtors are "in the business of supplying information for the guidance of others in their business transactions." *Id.*  In other words, Mr. Wright has failed to carry his burden of proof that he is entitled to state a cause of action for negligent

---

[7]    In his Response, Mr. Wright requested leave from the District Court to amend his Complaint to include a count arising from fraudulent misrepresentation. The Civil Case Docket indicates that no such amendment was made, and Mr. Wright's proof of claim does not mention fraudulent misrepresentation. Therefore, the Reorganized Debtors believe that he has not made a claim for fraudulent misrepresentation. To the extent that Mr. Wright attempts in the future to assert such a claim, the Reorganized Debtors will address the issue if and when it arises.

misrepresentation. *See, e.g.*, *In re Hartman*, 2009 Bankr. LEXIS 3823, *9-10, (Bankr. D.N.J.

Nov. 20, 2009); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

63.     What's more, Mr. Wright cannot ever adduce any facts to establish that any

Reorganized Debtor had a duty to communicate accurate information, and that is because none

of the Reorganized Debtors are "in the business of supplying information for the guidance of

others in their business transactions." *Brogan*, 692 N.E.2d at 278.

> The Illinois Supreme Court's test for determining whether a
> defendant "is in the business of supplying information for the
> guidance of others in their business transactions" is whether the
> end product of the relationship between plaintiff is a tangible
> object (i.e., a product) which could be readily described in a
> contract or whether it is intangible.

*M W Mfrs. v. Friedman Corp.*, Case No. 97 C 8319, 1998 U.S. Dist. LEXIS 11309, at *12 (N.D.

Ill. 1998) (citing *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201

(Ill. 1997)).

64.     Under this test, an employer is not in the business of disseminating accurate

information to their employees unless it has assumed that duty. *See, e.g.*, *Dougherty v. Akzo

Nobel Salt, Inc.*, 47 F. Supp. 2d 989, 992 (N.D. Ill. 1999). In *Akzo*, the former employee asserted

that "Akzo management told employees that it would attempt to keep employees updated" on a

transaction whereby Akzo was being sold to a third party.   The court found that such a

"statement … [did] not establish Akzo assumed the duty to communicate accurate information."

*Id.* at 992-93. So, too, here. Mr. Wright in his Complaint has not alleged that Grace-Conn. made

any statements whereby it indicated an intent to assume such a duty.   Therefore, Count V

(negligent misrepresentation) must fail.

## VIII.   CONCLUSION

65.     Each of Mr. Wright's five counts in his Complaint fail as a matter of Illinois law. In addition, ERISA preempts Counts II – IV, and Mr. Wright's voluntary dismissal of Counts I, IV and V are prima facie evidentiary admissions that those three counts lack merit.  Therefore, this Court should disallow Mr. Wright's Claim in its entirety.

### RELIEF REQUESTED

66.     The Reorganized Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A, disallowing Mr. Wright's Claim.

### PROCEDURES FOR RESPONDING TO THE CLAIM OBJECTION

67.     To contest this Claim Objection, Claimant must file and serve a written response (a "Response") so that it is received no later than 4:00 p.m. ET, on April 23, 2017 (the "Response Deadline").  The Response must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") at the following address:

> 824 Market Street
> Wilmington, Delaware 19801

68.     The Response must also be served upon the following co-counsel to the Reorganized Debtors on or before the Response Deadline:

> THE LAW OFFICES OF ROGER HIGGINS, LLC
> Roger J. Higgins
> 1 North Bishop Street
> Suite 14
> Chicago, IL 60607-1823
>
> PACHULSKI STANG ZIEHL & JONES LLP
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill (Bar No. 4042)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE  19899-8705

69.     The Response must contain, at a minimum, the following:

a.    A caption setting forth the name of the Court, the name of the Reorganized Debtors, the case number, and the title of the Claim Objection to which the Response is directed;

b.    The name of the Claimant, its claim number, and a description of the basis for the amount of the claim;

c.    The specific factual basis and supporting legal argument upon which the party will rely in opposing the Claim Objection;

d.    Any supporting documentation, to the extent it was not included with the proof of claim previously filed with the Clerk or Claims Agent, upon which the party will rely to support the basis for and amounts asserted in the proof of claim;

e.    The name, address, telephone number, and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Reorganized Debtors should communicate with respect to the claim or the objection thereto, and who possesses authority to reconcile, settle, or otherwise resolve the objection to the Disputed Claim on behalf of the Claimant.

70.    If Claimant fails to file and serve a timely Response, the Reorganized Debtors may present to the Court an appropriate order disallowing and expunging Claimant's claim without further notice to the Claimant or a hearing.

### REPLY TO RESPONSE

71.    The Reorganized Debtors reserve the right to, at their option, file and serve one or more replies to Claimant's Response, if any.

### SEPARATE CONTESTED MATTER

72.    If Claimant files a Response to this Objection, and the Claimant and the Reorganized Debtors are unable to resolve that Response, the claim and this Claim Objection shall constitute a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.

### RESERVATION OF RIGHTS

73.    The Reorganized Debtors hereby reserve the right to object in the future to the Claim. The Reorganized Debtors further reserve the right to amend, modify, and/or supplement

this Objection, including, without limitation, to object to amended claims and newly-filed claims. Separate notice and hearing will be scheduled for any such objection.

## NO PREVIOUS OBJECTION

74.    Other than the *Amended Debtors' Twenty-Fifth Omnibus Objection to Claims (Substantive)* [Docket no. 19378] (the "25th Omnibus Objection"),[8] which objected to Mr. Wright's Claim on the basis of "no liability," no previous objection to the Claim has been filed, nor has any other motion for the relief sought herein been made to this or any other court.

## NOTICE

75.    Notice of this Claim Objection has been given to:  (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) counsel for Mr. Wright.  In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

---

[8]    The 25th Omnibus Objection superseded and replaced the *Debtors' Twenty-Fifth Omnibus Objection to Claims (Substantive)* [Docket no. 19369], which was filed on the same date.  As discussed in the Proposed Findings of Uncontested Facts, the 25th Omnibus Objection was continued as to Mr. Wright's Claim, and Mr. Wright never filed a response to the objection.

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached hereto as Exhibit A: (i) disallowing Mr. Wright's Claim; and (ii) granting such other relief as may be appropriate.

Dated:  April 3, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) **Hearing Date: May 3, 2017, at 11:00 a.m. ET** |
| | ) **Objection Deadline: April 21, 2017** |
| | ) |

## DECLARATION OF RICHARD C. FINKE IN SUPPORT OF THE REORGANIZED DEBTORS' OBJECTION TO CLAIM No. 603 FILED BY JIM WRIGHT (SUBSTANTIVE)

| | |
|---|---|
| COUNTY OF HOWARD | ) |
| | ) ss. |
| STATE OF MARYLAND | ) |

      Richard C. Finke, after being duly sworn according to law, deposes and says:

      1.     I am over the age of 18 and competent to testify. I am Vice President and Associate General Counsel of W. R. Grace & Co., one of the reorganized debtors (collectively, "Grace" or the "Reorganized Debtors") in the above-captioned cases. All facts set forth in this Declaration are based on my personal knowledge, on information supplied to me by employees of and/or professionals retained by the Reorganized Debtors in these chapter 11 cases, and on my experience and knowledge of Grace's businesses. If called upon to testify, I could and would testify competently to the facts and opinions contained herein. This declaration is filed in support of the Reorganized Debtors' *Objection to Claim No. 603 Filed by Jim Wright (Substantive)* (the "Objection") and the *Proposed Findings of Uncontested Facts in Support of the Reorganized Debtors' Objection to Claim No. 603 Filed by Jim Wright (Substantive)* (the "Proposed Findings of Uncontested Facts"), both of which are filed concomitantly herewith.[2]

---

[1]    The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Objection or the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.*

Based upon a thorough review of their available books and records, the Reorganized Debtors have concluded that they have no liability as to any of the claims discussed herein and in the Objection.

2.      The civil docket in Mr. Wright's Civil Case, captioned, *Wright v. W. R. Grace & Co.-Conn., et al.*, Case no. 1:99-cv-01255 (Mr. Wright's "Civil Case"), is attached to the Proposed Findings of Uncontested Facts as Exhibit A (the "Civil Case Docket").

3.      None of the filings listed in the Civil Case Docket are available on the Electronic Case Filing System of the United States District Court for the Northern District of Illinois (the "Civil Case District Court"). In September 2016, Counsel for the Reorganized Debtors obtained copies of each of the filings in the above-described dockets from the Clerk of Court for the Civil Cases District Court. Those filings attached as exhibits to the Proposed Findings of Uncontested Facts are true and correct copies of the relevant filings obtained from the Clerks of Court as described above.

**[remainder of page left intentionally blank]**

---

*R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (as it may be amended or supplemented, the "Plan").

5.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.

_Richard C. Finke_
Richard C. Finke
Vice President and Associate General Counsel
W. R. Grace & Co.


SWORN AND SUBSCRIBED before me,
this 3ᵗʰ day of April 2017

_Diane F. Bozowy_
Notary Public

My Commission Expires:    09/18/2020


DIANE Z. BOROWY
Notary Public-Maryland
Howard County
My Commission Expires
September 18, 2020