# EXHIBIT I

**Wright's Response to Motion to Dismiss**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JIM WRIGHT,

          Plaintiff,

v.

W.R. GRACE & CO.,

          Defendant.

No. 99C1255

Judge Manning

FILED SEP -1 1999
Judge Blanche M. Manning
United States District Court

DOCKETED
SEP 07 1999

## NOTICE OF FILING

To:    Julie L. Gottshall
        Katten, Muchin & Zavis
        525 West Monroe Street, Suite 1600
        Chicago, IL 60661-3693
        FAX: 312-902-1061

PLEASE TAKE NOTICE that on August 30, 1999, the undersigned caused to be mailed for filing, PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS, with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, a copy of which is attached hereto and served upon you.

                                        SIKORA & WRIGHT, LTD.

                                        By: _Amy C. Wright_
                                              AMY C. WRIGHT

Sikora & Wright
207 North Main Street, Suite 202
Crystal Lake, IL 60014
815-455-1095

## PROOF OF SERVICE

The Undersigned hereby certifies that she caused a true and correct copy of the foregoing Notice, together with its attachments to be served upon the above named party by faxing the same by 5:00 p.m. on August 30, 1999.

                                                                _Amy C. Wright_

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JIM WRIGHT,

    Plaintiff,

v.

W.R. GRACE & CO.,

    Defendant.

No. 99C1255

Judge Manning

*FILED SEP -1 1999 Judge Blanche M. Manning United States District Court*

*DOCKETED SEP 07 1999*

## RESPONSE TO MOTION TO DISMISS

NOW COMES Plaintiff, JIM WRIGHT, by and through his attorneys, SIKORA & WRIGHT, LTD., and in response to Defendant, W.R. GRACE & CO.'s Motion to Dismiss hereby states as follows:

Plaintiff has filed a multi-count complaint against his employer, W.R. Grace & Co, as a result of being forced to take an early retirement. Plaintiff has filed a Federal Age Discrimination Count, and he has also filed several state claims against the defendant, including Breach of Oral Contract; Breach of Written Contract; Promissory Estoppel; and Negligent Misrepresentations. Defendant moves to dismiss all of plaintiff's state law claims Pursuant to FRCP 12 (b)(6). Plaintiff argues that he has stated a valid cause of action upon which relief could be granted under each count.

It is well established that when ruling on a motion to dismiss, the court must take as true all well-pled facts contained in the plaintiff's complaint, and the facts must be liberally construed and viewed in a light most favorable to the plaintiff. Payne v. Mill Race Inn, 105 Ill.Dec.324,

327, 504 N.E.2d 193 (2nd Dist. 1987). Moreover, a motion to dismiss should be granted only when no set of facts can be proved under the pleadings which will entitle plaintiff to relief. Payne at 328 Under this standard, plaintiff has very clearly set forth a valid cause of action for breach of an oral employment agreement, breach of written employment agreement, and promissory estoppel.

## I. PLAINTIFF HAS ALLEGED AN ENFORCEABLE ORAL EMPLOYMENT CONTRACT.

Under Count II of his complaint, plaintiff has brought a claim for breach of oral contract against his employer, W.R. Grace &Co. Plaintiff has alleged that on or about September of 1995, plaintiff and defendant entered into an oral agreement wherein it was agreed that plaintiff would work until the age of 62, or until 1999, and retire under the normal retirement plan. Plaintiff made this agreement with the Vice President and the Executive Vice President of Cryovac Packaging. On or about February and March of 1996, plaintiff was told that his job was being eliminated and that there were no other job assignments for him in the company and that he would have to take the early retirement program. Plaintiff objected to taking the early retirement, and requested another assignment, but was told he had no choice. Plaintiff now claims that defendant breached its oral agreement with him by forcing him to retire in 1996, instead of 1999 as originally agreed to. (See Plaintiff's Complaint, Count II)

Defendant argues that plaintiff's claim should be dismissed because it violates the statute of frauds, 740 ILCS 80/1 because the oral contract was to be performed in four years, and could not be performed within one year as required by the statute of frauds.

The statute of frauds is not a proper defense in a motion to dismiss because it does not

attack the sufficiency of the pleadings. The statute of frauds is an affirmative defense and thus is not properly raised in a motion to dismiss. Payne v. Mill Race Inn, 105 Ill.Dec. 324, 504 N.E.2d 193 (2nd Dist. 1987). Moreover, the statute of frauds is waived as a defense if it is not properly pled. Mapes. v. Kalva Corp., 24 Ill.Dec. 944, 386 N.E.2d 148 (2nd Dist. 1979).

Defendant relies upon McInerney v. Charter Golf, Inc., 223 Ill.Dec. 911, 680 N.E.2d 1347 (1997) in support of its argument that the statute of frauds bars the four year oral agreement between the plaintiff and the defendant. However, defendant's reliance upon McInerney is misplaced. As defendant points out in it's memorandum, the court in McInerney specifically held that a **lifetime** employment contract must be in writing in order for it to be enforced. Id at 491. McInerney is completely inapplicable to the present case because the present case involves an oral contract of exactly four years. The ruling in McInerney is very narrow and it explicitly applies only to **lifetime** employment contracts. Since the present case involve a four year oral agreement, McInerney does not apply.

The court in Nolan v. American Library Association, Inc., 1998 WL 173304 (N.D.Ill.), explicitly limited the ruling in McInerney. In Nolan, the court found that the ruling in McInerney applies only to contractual employment claims which allege a specific agreement for **lifetime** employment. Id at 3. The Nolan court further held that McInerney does not state that employment contracts without specific duration terms are lifetime contracts. Id. The court found that since the plaintiff in Nolan did not allege a lifetime employment contract, McInerney does not apply and thus, the statute of frauds does not bar the plaintiff's breach of contract claim. Id.

Similarly, in the present case, plaintiff does not allege a lifetime employment contract, but instead alleges that in 1995 a contract with specific duration terms, namely a four year contract

3

was entered into, when plaintiff and defendant agreed that plaintiff would work until 1999, the age of 62, and retire under the normal retirement plan. Thus, McInerney does not apply, and the statute of frauds does not bar plaintiff's breach of contract claim.

In addition, the statute of frauds does not apply to the present oral agreement because there has been partial performance on the part of plaintiff. The courts in Illinois have carved out a well recognized exception to the statute of frauds defense, known as the doctrine of partial performance. The courts refuse to apply the statute of frauds to bar enforcement of an oral employment contract where there has been part performance by one party in reliance on the promise of the other party. Mapes v. Kalva Corp., 24 Ill.Dec.944, 386 N.E.2d 148 (1979); Johnson v. George J. Ball, Inc., 187 Ill. Dec. 634, 617 N.E.2d 1355 (2nd Dist. 1993). In the present case, the oral contract created between plaintiff and defendant is enforceable because plaintiff performed his end of the contract by continuing to work after the oral agreement was made and foregoing other job opportunities.

In Mapes, the Illinois Supreme Court held that part performance will avoid application of the statute of frauds when the performance is such that it is impossible or impractical to return the performing party to the pre-performance status quo, or to compensate him for what he has parted with, or for the value of his performance. Mapes at 152. In such a case, allowing the defendant to deny the bargain would be a virtual fraud upon the performing party. Id. Likewise, in the present case, plaintiff performed his end in that he continued his employment with Grace with the understanding that he could take a normal retirement. Now that plaintiff is 62 years old, it would be impossible to return him to the status quo, and thus, it would be a virtual fraud upon plaintiff to allow the defendant to deny the agreement by using the statute of frauds as a shield.

Similarly, in <u>Johnson</u>, the court found that the statute of frauds did not bar the enforcement of an oral employment contract, where there was partial performance on the part of the employee. <u>Johnson</u> at 639. Thus, the court said that the statute of frauds would not bar enforcement of the oral employment contract where there has been part performance by one party in reliance on the promise of the other. Id. Furthermore, in <u>Carl A. Haas Auto.Imports, Inc. v. Lola Cars, Ltd.</u>, 933 F.Supp. 1381, at 1388 (1996), the court found that under Illinois law governing the "part performance doctrine", where a party will be left out in the cold in terms of an available remedy for its reliance, the court should remove the bar of the statute of frauds to permit proof and enforcement of the contract.

Likewise, in the present case, the statute of frauds should not be available as a defense to Grace where there was sufficient performance by plaintiff in reliance on the agreement. It would be impractical, and in fact impossible to return plaintiff to the status quo. Plaintiff is now too old to apply for similar work. Thus, plaintiff would be left out in the cold in terms of an available remedy for his reliance on defendant's promises if this court were to allow defendant to hide behind the statute of frauds and bar plaintiff's contract claim.

Finally, the court has held that where fraud or material misrepresentations have occurred, the defendant may not assert a statute of frauds defense. <u>Sinclair v. Sullivan Chevrolet Co</u>, 31 Ill.2d 507, 202 N.E.2d 516 (1964). The court in <u>Johnson</u> also held that allegations of fraud estop a party from relying on the statute of frauds. In <u>Johnson</u>, the plaintiff alleged that the defendant misrepresented the nature of the position it was offering plaintiff, and the court found that this type of fraudulent conduct negates the application of the statute of frauds as well. Id at 639. In the present case, plaintiff has alleged that material misrepresentations and fraud has occurred,

5

which negates application of the statute of frauds. Plaintiff specifically alleges that defendant induced the plaintiff to continue his employment with defendant by promising plaintiff that he could work until the age of 62, and take "the normal retirement package." Moreover, plaintiff alleges that defendant made the following material misrepresentations to plaintiff:

1) That Plaintiff's job was going to be eliminated;
2) That there were no other assignments available for plaintiff;
3) That the company was unable to give him any credited service for the four years he did not work; that they would never give such credit in the future to any employee; and
5) That the present value of the severance money plaintiff was receiving would "fully" compensate him for all of his losses. (See plaintiff's complaint, Count V )

In the present case, fraud or material misrepresentations have been alleged, and thus, the defendant may not assert a statute of frauds defense. Sinclair v. Sullivan Chevrolet Co, 31 Ill.2d 507, 202 N.E.2d 516 (1964). The above outlined material misrepresentations negates the application of the statute of frauds and thus plaintiff's employment contract is enforceable.

## II. PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR BREACH OF WRITTEN CONTRACT.

Plaintiff asserts that his employment at will status changed after he received the Grace Retirement Manual which contained various promises regarding retirement and pension benefits. In the case cited by defendant, Duldulao v. St. Mary of Nazareth Hospital Center, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), the court found that certain statements contained in an employee handbook or manual have the effect of modifying an employee's at will status. In the present case, plaintiff has alleged that a written agreement was formed between defendant and plaintiff based upon certain promises made in the Grace Retirement Manual, and Supplemental Retirement Plan which state that the timing of retirement is a decision only the employee can

6

make. The "W.R.Grace & Co. Retirement Plan for Salaried Employees" states in part: "When is the best time to retire? It's a decision only you may make." The manual goes on to state that the employee has a choice between normal and early retirement. The Grace Retirement Manuals were disseminated to plaintiff at company wide meetings and plaintiff was told to read the manuals. Plaintiff has alleged that the statements contained in the Grace Retirement Manuals have become part of the offer of employment which plaintiff accepted when he continued to work for defendant.

The courts have consistently held that an employee accepts a unilateral offer by either taking up or continuing employment after receiving a handbook that contains a promise upon which a reasonable person would rely. Hicks v. Methodist Medical Center, 593 N.E.2d 119, 170 Ill.Dec. 577, 579 (3rd Dist.1992) The courts have further held that an enforceable contract is created if: 1) the language of the employer's policy statement contains a promise clear enough that the employee would reasonably believe that an offer has been made; 2) the statement is disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and 3) the employee accepts the offer by commencing or continuing work after learning of the policy statement. Hicks at 614; Duldulao at 318.

In Hicks, the court found that plaintiff could have reasonably believed that statements contained in an employee handbook constituted promises clear and certain enough to become part of an offer of employment. Id at 614 The court noted by contrast the language in Lee v. Canuteson, 573 N.E.2d 318, 157 Ill.Dec. 900 (1991), that "it is the sincere intent of [the employer] to be fair and reasonable with all employees at all times" was found to be too vague to constitute an offer. Id. Finally, in Hicks, the employee complied with the final requirement under

7

Duldulao, by either commencing work or continuing work after learning of the policy statement. Id at 614. Thus, the court in Hicks found that an enforceable contract existed. Id.

The defendant argues that the statements contained in the Grace Retirement Manuals concerning the timing of retirement are too vague and ambiguous to constitute an enforceable promise. However, plaintiff would assert that the statements contained in the retirement manual are clear and unequivocal in that the Retirement Manuals explicitly state that the decision as to when to retire is the employee's alone. However, under standard contract rules, when the language of a contract is ambiguous, it must be construed against, and not in favor of the drafter. Mitchell v. Jewel Food Stores, 154 Ill.Dec. 606, 568 N.E.2d 827 (1990); Duldulao v. Saint Mary of Nazareth Hosp. Center, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). Thus, the language of the Grace Retirement manual must be interpreted in favor of the plaintiff and against the drafter, here the defendant.

Regardless, the courts have held that a promise to pay benefits as set forth in a group benefit plan booklet is a clear promise which has become part of the offer of employment. DeFosse v. Cherry Electrical Products Corp., 109 Ill.Dec. 520, 510 N.E.2d 141 (2nd Dist. 1987). The present case involves a Group Retirement Manual which talks about the rights of employees with regard to the vesting of their pension benefits, and the timing of retirement with regard to tapping into those benefits. Clearly, the promise to pay pension benefits after the employee alone chooses the age of his retirement, as outlined in the Grace Retirement Manual, is an unambiguous promise which has become part of the plaintiff's offer of employment. The language contained in the Retirement Manuals contains a promise clear enough that an employee would reasonably believe that an offer has been made to the employee to choose the age of their

8

retirement. The manual very clearly states that it is the employee's decision alone as to whether they want the "early retirement package" or "normal retirement package". Furthermore, Mr. Wright's continued employment with defendant after he received the Retirement Manual was indication of his acceptance of the offer contained in the manual. In fact, as stated in his complaint, Mr. Wright told several of his superiors that he wanted the "normal retirement package" and explicitly declined the "early retirement package." Defendants are bound by the promises contained in their retirement manual, and the express language contained therein creates an implied written contract between defendant and Mr. Wright.

Defendant next argues that any promises contained in their Retirement Manuals are negated by certain disclaimer language contained at the end of the Manual. Plaintiff would argue that the manual contains absolutely no disclaimer language.

Defendant points to the following language contained on page 31 of the manual:

"The Plan's Future
Although the Company expects to continue the plan for future periods, through the actions of its Board of Directors (or its designee) it reserves the right to change, suspend, or end the plan at any time. If the plan should end, the money in the trust fund may be used only for the benefit of participants and beneficiaries."

Plaintiff would argue that this section of the plan contains no disclaimer language whatsoever. This language refers to the Board's right to suspend the retirement pension plan. It does not refer to the timing of retirement.

Even if this court were to find that the language found under "The Plan's Future" to be disclaimer language, it is still insufficient to negate the promises contained in the manual because the disclaimer is inconspicuous and hidden under a section entitled "The Plan's Future". This language is not conspicuously set out separate and apart, but is hidden within the text and

9

the language is not unequivocal. The court in <u>Long v. Tazewell/Pekin Consol.Communication Center</u>, 158 Ill.Dec. 798, 574 N.E.2d 1191 (3rd Dist. 1991), held that disclaimers in employee manuals are insufficient where they are not distinctly set out separate and apart, are hidden within the text and where the language is not unequivocal. Similarly, the court in <u>Hicks</u> held that in order to negate any promises made in contract provisions, a disclaimer must be conspicuous. <u>Hicks</u> at 121; <u>Nettles v. Techplan (D.S.C. 1988), 704 F.Supp.95</u>. The court in <u>Hicks</u> held that disclaimers contained in the employee handbook were insufficient to negate promises made in its provisions where they were not conspicuous, but were located on the next to last page of the manual, and they were not entitled "disclaimer," and were not highlighted, printed in capital letters, or in any way prominently displayed. Id at 121. Furthermore, the disclaimer was not entitled "disclaimer" but was located under a section marked "Revisions." Id. The court in both <u>Hicks</u> and <u>Long</u> held that the disclaimer at issue was not conspicuous, and thus did not negate the promises contained in the employee handbook which created a contract between the employer and employee.

Similarly, in the present case, the language contained in the Grace Retirement Manual under the section entitled "The Plan's Future" is insufficient to negate the promises contained in the manual because this language is not conspicuous; is not distinctly set out separate and apart, but is in effect, hidden within the text on page 31, is not entitled "disclaimer" and is not highlighted, printed in capital letters, or in any way prominently displayed, and moreover appears very close to the end of the document. Finally, the language of the disclaimer is not direct and unequivocal and does not disclaim the statements made at the beginning of the manual.

Defendant relies upon <u>Davis v. Times Mirror Magazines, Inc.</u>, 231 Ill.Dec.826, 697

10

N.E.2d 380 (1st Dist.1998), for the proposition that disclaiming language in the retirement manual precludes the formation of an employment contract. However, Davis is different from the present case in that the disclaiming language in Davis involved a provision which explicitly stated that any employment was at will. By contrast, in the present case, there is no language anywhere stating that all employments are at will. Moreover, Davis involved a claim of retaliatory discharge which is entirely different from the facts present case which involves an employee who was forced to take an early retirement.

Defendant further relies upon Moore v. Illinois Bell Telephone Co., 108 Ill.Dec. 358, 508 N.E.2d 519 (2nd Dist. 1987), and Condon v. American Telephone & Telegraph Co, 155 Ill.Dec. 337, 508 N.E.2d 519 (1991) for the proposition that disclaimer language negates promises contained in an employee manual or handbook. However, in both of those cases, the employer included language expressly stating that the document "is not a contract." By contrast, the Retirement Manual in the present case contains no such express, explicit disclaimer of a contractual obligation by defendant.

Finally, the court has very clearly held that writings in an employment manual prevents the application of the statute of frauds as a defense. Koch v. Illinois Power Co., 124 Ill.Dec. 461, 529 N.E.2d 281 (3rd Dist. 1988). Thus, the defendants should not be allowed to assert a statute of frauds defense to plaintiff's claim for breach of written contract.

In conclusion, the precise and unequivocal language of the retirement manuals grants plaintiff the right to choose the timing of his retirement alone. Since there are no valid disclaimers contained in the manual, and the statute of frauds is not an applicable defense to this claim, plaintiff has alleged a sufficient cause of action for breach of implied contract.

11

### III. PLAINTIFF HAS ALLEGED A VALID CAUSE OF ACTION FOR PROMISSORY ESTOPPEL

Under Illinois law, in order to withstand a motion to dismiss a claim based upon promissory estoppel, the promisee must sufficiently allege an unambiguous promise by the promisor upon which the promisee would reasonably and foreseeably rely and upon which the promisee actually relied, with such reliance resulting in damages. Straka v. Francis, 867 F.Supp.767 (1994); Genin, Trudeau & Co., Ltd. v. Integra Development Intern., 845 F.Supp.611 (1994).

In order to invoke the doctrine of promissory estoppel, the promisee's reliance on the promise must be reasonable and justifiable. Genin at 616 In the present case, plaintiff's reliance on promises made by his superiors that he could take a normal retirement and work four more years, is reasonable and justifiable. Moreover, under Illinois law, a plaintiff may recover on a theory of promissory estoppel despite the absence of a contract. Genin at 616. Promissory estoppel can be invoked in contract and noncontract settings. Straka v. Francis, 867 F.Supp. 767 (1994) The promise may be inferred from words and conduct, and in employment situations, the alleged promise need not be for any fixed duration. Id at 777.

The crux of defendant's argument is that plaintiff did not justifiably rely upon defendant's promises. However, the court in Genin found that where the parties do not have equal knowledge, or where there are other peculiar circumstances inducing the injured party to rely solely on the representation of the other, a person will be found to have justifiably relied upon the other's representations. Genin at 619. Plaintiff relied upon defendant's assurances that he could work until the age of 62, and take the normal retirement plan. Here, the parties do not have equal

12

knowledge, and it was justifiable for the plaintiff to rely upon the assurances of the Vice President and Executive Vice President of Cryovac Packaging when they told the plaintiff he could take the normal retirement plan. Plaintiff relied on these promises to his detriment because he refrained from taking other employment; moreover, because he and his wife did not plan financially on retiring until 1999.

## IV. PLAINTIFF VOLUNTARILY DISMISSES COUNT V BASED ON NEGLIGENT MISREPRESENTATIONS AND MOVES FOR LEAVE TO AMEND THIS COUNT TO STATE A CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATIONS.

## V. PLAINTIFF'S STATE LAW CLAIMS ARE NOT PREEMPTED BY ERISA

Defendant argues that all of plaintiff's state law claims are preempted by ERISA, 29 U.S.C. § 502(a)(1)(B), since part of plaintiff's damages involve calculating lost pension benefits. However, the court has held that "when a State law only tangentially impacts upon an ERISA plan...federal law does not preempt State law." Golen v. Chamberlain Manufacturing Corp., 93 Ill.Dec. 677, 487 N.E.2d 121 at 125 (1st Dist. 1985). In Golen, the court held that ERISA preemption did not apply where the action "only indirectly affected defendant's employee benefit plan in a way not in conflict with the purposes ERISA was designed to achieve." Id

In Golen, a former employee claimed that his employer was liable for breach of an employment contract for pension credits. The court found that the employee's claims for pension credits based upon his claim for breach of an employment contract only tangentially or incidentally involved a pension plan, and thus, the employee's claim was not preempted by ERISA. Id at 125. The court further held that the employee's claim does not concern the substance of the pension plan, nor does it concern the regulation of a pension plan. Id. Although

13

the trial court's award of damages requires consideration of the terms of the plan, the court held that the pension plan is only tangentially or incidentally involved. Thus, the <u>Golen</u> court found that the employee's claim was not governed by ERISA.

Likewise, in the present case, plaintiff also claims that his employer is liable for breach of an employment contract. Plaintiff claims that part of his damages involves four years of pension credits. Like <u>Golen</u>, this court would have to consider the terms of the pension plan in determining damages, but the plaintiff's claim does involve the substance or regulation of the pension plan. The pension plan is equally tangentially and incidentally involved in the present case as it was in <u>Golen</u>. Thus, plaintiff's state law claims based upon breach of contract and promissory estoppel are not preempted by ERISA simply because plaintiff requests pension credits as part of his damages.

The courts have held that some State laws have too remote or peripheral an effect on an employee plan as to justify preemption. <u>Construction & General Laborer's District v. McHugh Construction Co.</u>, 172 Ill.Dec.740, 596 N.E. 2d 19, at 22 (1992). The United States Supreme Court has acknowledged that "Some State actions may affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that he law 'relates to' the plan." <u>Shaw v. Delta Air Lines</u>, 463 U.S. 85, 100, 103 S.Ct. 2890 at 2891 n.21 (1983).

In <u>Kelleher v. Hood</u>, 179 Ill.Dec. 4, 605 N.E.2d 1018 (1992), the court held that certain State law restrictions on subrogation are not preempted by ERISA. The court reasoned that State law governing the denial of a subrogation lien failed to have a negative impact on federal uniformity, and thus was not preempted by ERISA. Id. Moreover, in <u>Scholtens v. Schneider</u>, 210 Ill.Dec. 580, 653 N.E.2d 775 (1st Dist.1995), the court held that application of the common fund

14

doctrine to reduce the ERISA administrator's subrogation lien on a beneficiary's tort settlement was not preempted by ERISA because the common fund doctrine only tangentially or remotely impacted upon the ERISA plan and it did not threaten federal uniformity.

Similarly, in the present case, plaintiff's breach of contract and promissory estoppel claims only tangentially relate to the plaintiff's pension plan because his state law claims involve a consideration of the defendant's employee benefit plan in calculating damages. However, this incidental connection to the plan is not in conflict with the purposes of ERISA since it does not threaten federal uniformity and thus, ERISA should not preempt plaintiff's state law claims.

WHEREFORE, Plaintiff requests this Honorable Court deny Defendant's Motion to Dismiss, and for such further equitable relief as this court deems is appropriate.

Respectfully Submitted,

SIKORA & WRIGHT, LTD.

BY: *Amy C. Wright*
    AMY C. WRIGHT

AMY C. WRIGHT
SIKORA & WRIGHT, LTD.
207 North Main Street, Suite 202
Crystal Lake, IL 60014
815-455-1095

15