## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (KG) |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | **Hearing Date:  May 22, 2017, at 11:00 a.m. ET** |
| | ) | **Objection Deadline:  April 27, 2017** |

## MOTION FOR ENTRY OF AN ORDER ENFORCING PLAN AND CONFIRMATION ORDER AGAINST INTERNAL REVENUE SERVICE

The above-captioned reorganized debtors (the "Reorganized Debtors") are filing this motion (the "Motion") seeking entry of an order in the form attached hereto as Exhibit A (the "Order") enforcing the Plan and Confirmation Order provisions setting the interest rate payable on tax deficiencies at 4.19%, and directing the Internal Revenue Service ("IRS") to: (i) recalculate the deficiency interest owed by Grace with respect to a 1998 income tax deficiency at the Plan rate of 4.19% during the period from the Petition Date (April 2, 2001) through the date of payment by Grace (March 15, 2009), which results in total deficiency interest of $3,434,608, rather than $4,980,800 as determined by the IRS; (ii) recalculate the amount of the refund owed to Grace as of September 12, 2014 with respect to the 1998 income tax deficiency, which results in a refund due in the amount of $3,654,459, rather than $2,027,545 as determined by the IRS (for a difference of $1,626,914); and (iii) issue a refund to the Reorganized Debtors for the additional $1,626,914 refund owed to Grace as of September 12, 2014, plus statutory overpayment interest accrued on such amount from September 12, 2014, through the date of payment by the IRS.[2]

---

[1]  The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2]  Capitalized terms not defined herein shall have the meaning ascribed to them in the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee*

In support of this Motion, the Reorganized Debtors respectfully state as follows:

<b>JURISDICTION</b>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware*, dated February 29, 2012.[3]  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for this Motion are Bankruptcy Code sections 505 and 1142, the

Plan and the Confirmation Order.

<b>BACKGROUND</b>

**I.      THE PLAN AND THE CHAPTER 11 CASES**

3.      The above-captioned chapter 11 cases commenced on April 2, 2001 (the "Petition

Date").

4.      The Plan provides for the payment of interest by the Reorganized Debtors at a

Plan rate of 4.19% on allowed claims.  Plan Art. 2.1.2 (priority tax claims); Plan Art. 3.1.1

(priority claims); Plan Art. 3.1.2 (secured claims); Plan Art. 3.1.9 (general unsecured claims).

---

*of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official*
*Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (the
"Plan") and this Court's *Recommended Findings of Fact, Conclusions of Law and Order Regarding*
*Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010*, dated
January 31, 2011 [Docket No. 26155], and *Order Clarifying Memorandum Opinion and Order Confirming*
*Joint Plan as Amended Through December 23, 2010*, dated February 15, 2011 [Docket No. 26289] (together,
the "Confirmation Order").

[3]      The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final
order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent
consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III
of the United States Constitution.

5.    On January 31, 2011, the Court confirmed the Plan.  On February 3, 2014, the

Reorganized Debtors substantially consummated the transactions contemplated by the Plan and

emerged from chapter 11.[4]

## II.    RESOLUTION OF THE IRS CLAIMS CULMINATES IN PAYMENT OF ALLOWED PRIORITY TAX CLAIMS AND TAX REFUND TO GRACE

6.    At all relevant times, Grace was the parent company of its U.S. federal

consolidated group, and in that capacity, was responsible for filing the U.S. federal income tax

return on behalf of the consolidated group.

7.    As set forth in the *Reorganized Debtors' Objection to the Remaining Claims of

the Internal Revenue Service (Substantive)*, filed on April 22, 2014 [Docket no. 32036] (the

"2014 Claim Objection"), the IRS filed a large number of claims in the chapter 11 cases prior to

the prepetition claims bar date.  The Debtors objected, and in 2007, the Debtors and the IRS

stipulated and agreed that four IRS claims remained.  On October 17, 2011, the Reorganized

Debtors filed a motion (the "Subsidiary Merger Motion") to consolidate a number of Debtor

entities.  On November 21, 2011, the Court entered its order granting the relief sought in the

Subsidiary Merger Motion [Docket no. 28007] (the "Subsidiary Merger Order"), which resulted

in the IRS having one remaining claim, Claim no. 830.

---

[4]    *Notice of Occurrence of the Effective Date of The First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace and Co., et al, the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010*, dated February 13, 2014 [Docket no. 31732].

On March 19, 2014, the Court entered its *Final Decree (A) Closing Certain of The Chapter 11 Cases, (B) Removing Certain of The Chapter 11 Cases From The Joint Administration Order, and (C) Waiving the Requirement That the Reorganized Debtors File a Final Report For the Merged Subsidiaries* [Docket no. 31880], which closed the cases of 45 of the Reorganized Debtors (the "Merged Subsidiaries Case Closing Order").  On October 14, 2014, the Court entered its *Final Decree: (A) Closing Certain of the Chapter 11 Cases; (B) Removing Such Cases From the Joint Administration Order; and (C) Waiving The Requirement to File a Final Report For Such Cases* [Docket no. 32429-1], closing a further 15 cases.

Grace and Grace-Conn. are the only remaining open cases.

8.    As discussed in more detail in the 2014 Claim Objection, on December 7, 2012, the IRS filed two new proofs of claim, which were Claim nos. 18553 and 18554.    The Reorganized Debtors' books and records reflected the remaining IRS claims as follows:

| Amount | Pre-Subsidiary Merger Claim No. | Current Surviving Claim | Contested by the Reorganized Debtors |
|---|---|---|---|
| $138,121 | 809 | 18553-A | No |
| $14,535 | 828 | 18553-B | No |
| $11,356,687 | 830 | 18553 | Yes |
| $196,112 | 2235 | 18554 | No |

9.    As discussed in the 2014 Claims Objection, subsequent to the Effective Date, the Reorganized Debtors allowed: (i) Claim no. 18554, in the amount of $196,112; (ii) Claim no. 18553-A, in the amount of $138,121; and (iii) Claim no. 18553-B, in the amount of $14,535.  On April 18, 2014, pursuant to Plan Art. 2.1.2, the Reorganized Debtors paid each of these claims in full, with interest at the Plan rate of 4.19%, compounded annually from the Petition Date through the date of payment, as provided for in the Plan.

10.    On April 22, 2014, the Reorganized Debtors filed their 2014 Claims Objection, which requested the Court enter an order:

- As to Claim no. 18553, granting the Reorganized Debtors' substantive objection to the $11,356,687 claim asserted against Grace-Conn.;

- Disallowing and expunging Claim no. 830 pursuant to Del. Bankr. L.R. 3007-1(d)(iii), because Claim 18553 amended and superseded it; and

- Allowing no other claims by the IRS for any tax year ending prior to the Petition Date.

11.    On September 12, 2014, the IRS issued a refund check to Grace in the amount of $2,027,545 with respect to Grace's 1998 taxable year.  The Reorganized Debtors thereafter

withdrew their 2014 Claim Objection [Docket no. 32529], and the IRS withdrew Claim no.

18553. *See* Letter dated March 16, 2015, attached hereto as <u>Exhibit B</u>.

### III.    THE IRS USED THE INCORRECT INTEREST RATE TO CALCULATE THE REFUND

12.    At Grace's request, the IRS provided an account transcript ("<u>IRS Transcript</u>") to

Grace showing the calculation of the amount of the refund paid with respect to Grace's 1998

taxable year. A copy of the IRS Transcript is attached as <u>Exhibit C</u>.

13.    The top half of the IRS Transcript shows the principal balance of the 1998 tax

deficiency.    As indicated, several tax overpayments were applied against the outstanding

principal balance, ultimately resulting in a net overpayment of $6,918,806, before taking into

account any interest.    These overpayments were attributable to (i) carrybacks of net operating

losses ("<u>NOLs</u>") to the 1998 taxable year from later taxable years and (ii) various refundable tax

and credit amounts from later taxable years.

14.    The bottom half of the IRS Transcript shows the running balance of the 1998 tax

deficiency, including both deficiency interest and overpayment interest.

15.    Outside of bankruptcy, the IRS is entitled under Section 6601(a) of the Internal

Revenue Code of 1986, as amended (the "<u>Tax Code</u>"), to charge interest on any income tax

deficiency at the underpayment rate specified in Tax Code § 6621.[5]    Likewise, the IRS is

required under Tax Code § 6611(a) to pay interest on any income tax overpayment at the

overpayment rate specified in Tax Code § 6621.[6]   Outside of bankruptcy, the overpayment rate

---

[5]    The underpayment rate specified in Tax Code § 6621 is generally the Federal short-term rate plus 3 percentage points; for certain large corporate underpayments (generally those in excess of $100,000), the underpayment rate increases by an additional 2 percentage points following the issuance of a proposed deficiency notice.

[6]    The overpayment rate specified in Tax Code § 6621 is the Federal short-term rate plus 3 percentage points (2 percentage points in the case of a corporation); for an overpayment of tax by a corporation that exceeds $10,000, the overpayment rate is the Federal short-term rate plus 0.5 percentage points.

that the IRS pays to large corporate taxpayers such as Grace is substantially lower (at least 2.5 percentage points) than the underpayment rate that such taxpayers must pay to the IRS.

16.     As shown on the last page of the IRS Transcript, in calculating the refund due to Grace with respect to its 1998 taxable year, the IRS assessed and collected $4,980,800 of deficiency interest and paid $89,539 of overpayment interest.  The IRS used its standard interest rates under Tax Code § 6621 in determining these amounts.  Thus, the net refund paid to Grace on September 12, 2014 was $2,027,545 (*i.e.*, $6,918,806 principal balance, *less* $4,980,800 of deficiency interest, *plus* $89,539 of overpayment interest).

17.     The sole issue in dispute is the amount of deficiency interest owed by Grace for the period from the Petition Date (April 2, 2001) through the date of payment by Grace (March 15, 2009) (the "Post-Petition Period").[7]

18.     The IRS calculated the amount of deficiency interest during the Post-Petition Period by applying the underpayment rate provided for by Tax Code § 6621.

19.     As discussed in more detail below, the amount of deficiency interest during the Post-Petition Period should have instead been calculated by using the 4.19% interest rate provided for by the Plan.

20.     Attached as Exhibit D is a schedule that shows the calculation of the refund owed to Grace using the 4.19% Plan interest rate during the Post-Petition Period.

21.     If the IRS had properly used the 4.19% interest rate to calculate the deficiency interest during the Post-Petition Period, the amount of the refund owed to Grace as of September

---

[7]    As shown at the bottom of the first page of the IRS Transcript, as of March 15, 2009, an income tax overpayment of $11,491,201 was applied against the outstanding 1998 tax deficiency, resulting in a net overpayment owed to Grace in the amount of $1,543,125 (per the IRS calculation) as of that date.  Thus, the 1998 income tax deficiency was fully satisfied by Grace on March 15, 2009.  As of that date, Grace became entitled to overpayment interest under Tax Code § 6611(a) on any net overpayment owed to Grace.

12, 2014 would have been $3,654,459, instead of $2,027,545 as determined by the IRS. *See* Exhibit D. Thus, as of September 12, 2014, the IRS owed Grace an additional refund in the amount of $1,626,914.

22.    On several occasions after the IRS issued the $2,027,545 refund check to Grace, the Reorganized Debtors requested that the IRS recalculate the deficiency interest during the Post-Petition Period using the Plan rate of 4.19% and issue a refund to Grace for the additional amount owed.

23.    On August 18, 2016, the IRS Team Manager on Grace's account sent an email (copy attached as Exhibit E) to Grace representatives stating that the position of the "bankruptcy specialist in Philadelphia" was as follows:

> I reviewed the issue with my manager and it is our position that the liability was paid outside the realm of the chapter 11 plan by the NOL carryback and credits from other modules. No payments were ever received for this debt under their confirmed chapter 11 plan. Since the liability was paid from the NOL and not from any plan funding we feel the normal carryback interest calculation was correct.

24.    After further discussions between Grace representatives and the IRS, the IRS Team Manager sent an email on January 23, 2017 (copy attached as Exhibit F) stating the "response from the people in the interest department" was as follows:

> I received a response from our counsel stating that we believe the correct amount of interest was charged and that no further refund is due the taxpayer.

25.    The IRS has not provided any further explanation for its refusal to recalculate the deficiency interest using the 4.19% interest rate required by the Plan.

### RELIEF REQUESTED

26.    The Reorganized Debtors request that the Court enter the Order enforcing the Plan and Confirmation Order provisions setting the interest rate payable on tax deficiencies at

4.19%, and directing the IRS to (i) recalculate the deficiency interest owed by Grace with respect to the 1998 income tax deficiency at the Plan rate of 4.19% during the Post-Petition Period, which results in total deficiency interest of $3,434,608, rather than $4,980,800 as determined by the IRS; (ii) recalculate the amount of the refund owed to Grace as of September 12, 2014 with respect to the 1998 income tax deficiency, which results in a refund due in the amount of $3,654,459, rather than $2,027,545 as determined by the IRS (for a difference of $1,626,914); and (iii) issue a refund to the Reorganized Debtors for the additional $1,626,914 refund owed to Grace as of September 12, 2014, plus overpayment interest accrued at the overpayment rate specified in Tax Code § 6621 on such amount from September 12, 2014, through the date of payment by the IRS.

### ANALYSIS

27.    The sole issue in dispute is the amount of deficiency interest owed by Grace during the Post-Petition Period with respect to the 1998 tax deficiency. The IRS calculated the deficiency interest using the underpayment rate provided for by Tax Code § 6621. The Reorganized Debtors assert that the Plan and Confirmation Order set the deficiency interest rate at 4.19%.[8] The Court has jurisdiction to resolve this issue. 11 U.S.C. §§ 505, 1142; Plan Art. 10; Confirmation Order § IX.

28.    The Plan provides that the interest rate applicable to holders of Priority Tax Claims, other Priority Claims, Secured Claims and General Unsecured Claims is 4.19%, compounded annually. *See* Plan Arts. 2.12, 3.1.1, 3.1.2 & 3.1.9.

---

[8]    Bankruptcy Code section 511, which eliminated the Bankruptcy Court's discretion to determine the interest rate on tax claims and instead provided that the interest rate shall be determined under applicable non-bankruptcy law, was added by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). It does not apply to these chapter 11 cases, as it applies solely to bankruptcy cases commenced on or after October 17, 2005. 11 U.S.C. § 511.

29.     The IRS position appears to be that because the 1998 tax deficiency was offset against the refunds attributable to the NOL carrybacks and other refundable taxes and credits, rather than paid in cash directly by Grace, the 1998 tax deficiency was paid "outside the realm" of the Plan, and thus the interest payable with respect to the deficiency is not governed by the Plan. That position frankly makes no sense.

30.     There is no dispute that Grace owed the IRS money for the 1998 tax deficiency and that the IRS owed Grace money for the NOL carrybacks and other refundable taxes and credits. It makes absolutely no difference whether (i) Grace pays the money it owes to the IRS and the IRS pays the money it owes to Grace or (ii) whether the two obligations are first offset against each other, and the IRS then pays the net amount it owes to Grace. As an economic matter, the two scenarios are the same and should produce the same result under the Plan. Indeed, if Grace had known the position the IRS was going to take, Grace would have simply written a check to the IRS and asked the IRS to write a check to Grace, rather than offsetting the two amounts against each other to arrive at the net amount owed to Grace.

31.     Under the Plan, the IRS is allowed to charge interest during the Post-Petition Period at a rate of 4.19%, compounded annually.

32.     If the IRS had properly used the 4.19% Plan interest rate to calculate the deficiency interest during the Post-Petition Period, the amount of the deficiency interest computed through March 15, 2009 (the date that Grace fully satisfied the 1998 tax deficiency) would have been $3,434,608, instead of $4,980,800 as determined by the IRS. *See* Exhibit D. Thus, as of March 15, 2009, Grace would have had an overpayment of $3,089,317, instead of $1,543,125 as determined by the IRS.

33.     Tax Code § 6611(a) provides that "[i]nterest shall be allowed and paid upon any overpayment of any internal revenue tax at the overpayment rate established under section 6621." Thus, as of March 15, 2009, Grace was entitled to overpayment interest at the overpayment rate specified in Tax Code § 6621 on the $3,089,317 overpayment owed to Grace, computed through the date of payment by the IRS.

34.     The amount of overpayment interest owed to Grace as of September 12, 2014 was actually $170,260, instead of $89,539 as determined by the IRS. *See* Exhibit D.

35.     The amount of the refund owed to Grace as of September 12, 2014 was actually $3,654,459, instead of $2,027,545 as determined by the IRS (for a difference of $1,626,914). *See* Exhibit D.

36.     Thus, as of September 12, 2014, the IRS owed Grace an additional refund in the amount of $1,626,914. The Reorganized Debtors are entitled to be paid that amount, plus overpayment interest on such amount at the overpayment rate specified in Tax Code § 6621, calculated from September 12, 2014, through the date of payment by the IRS.[9]

### NO PREVIOUS MOTION

37.     No previous motion for the relief sought herein has been made to this or any other court.

### NOTICE

38.     Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust

---

[9]   The total refund owed to Grace as of March 31, 2017 was $1,664,321. Overpayment interest continues to accrue until the IRS pays the refund.

(7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) the Department of Treasury—Internal Revenue Service.    In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially

the form attached hereto as Exhibit A: (i) setting forth the relief requested in the Order; and

(ii) granting such other relief as may be appropriate.

Dated:  April 12, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Phone: 302.652.4100
Fax: 302.652.4400

Co-Counsel for the Reorganized Debtors

DOCS_DE:213099.1 91100/001