## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) **Hearing Date: 11:00 a.m., ET, May 3, 2017** |
| | ) **Re: Docket Nos.: 32845 and 32851** |

### REPLY ON GRACE'S MOTION FOR AN ORDER BARRING THE KIRKLAND TESTIMONY IN FELA ACTION AS HEARSAY EVIDENCE

The above-captioned reorganized debtors (the "Reorganized Debtors") file this reply (the "Reply") in support of their *Motion For An Order Barring the Kirkland Testimony in FELA Action As Hearsay Evidence*, filed on March 31, 2017 [Docket no. 32845] (the "Inadmissible Hearsay Motion"), which responds to the applicable portion of *Norfolk Southern's Reply Brief (I) in Support of Norfolk Southern's Cross-Motion for Summary Judgment and (II) In Response to the Reorganized Debtors' Motion to Strike the Sharpe and Conley Declarations*, filed on April 11, 2017 [Docket no. 32851] (Norfolk Southern's "Reply Brief"), which raised several new, hitherto unbriefed issues regarding the (in)admissibility of Mr. Kirkland's FELA Action trial testimony, and to *Norfolk Southern Railway Company's Objection to Motion for an Order Barring the Kirkland Testimony in FELA Action As Hearsay Evidence* filed on April 14, 2017 [Docket no. 32857] (Norfolk Southern's "Objection to Inadmissible Hearsay Motion").[2]

---

[1]   The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2]   Capitalized terms not defined herein shall have the meaning ascribed to them, as the case may be, the Inadmissible Hearsay Motion or the *Omnibus Memorandum in: (A) Reply in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant To Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway; (B) Response to Cross-Motion for Summary Judgment Allowing Claim No. 7021; and (C) Support of an Order Finding the FELA Action Trial Record Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* [Docket no. 32828], dated March 8, 2017 (the "Omnibus Memorandum").

Norfolk Southern states in its Objection to Inadmissible Hearsay Motion that Norfolk

Southern incorporates its Reply Brief as to its substantive arguments on the (in)admissibility of

Mr. Kirkland's testimony.[3]   Norfolk Southern's Reply Brief and its Objection to Inadmissible

Hearsay Motion both break new ground by contending that Mr. Kirkland's testimony should be

admitted under the residual hearsay exception found in Fed. R. Evid. 807(a).   Norfolk Southern

breaks still further new ground by contending that Grace cannot be adverse to Norfolk Southern

for purposes of Fed. R. Evid. 804(b)(1) or re-litigate the issue of Norfolk Southern's negligence,

---

[3]   As set forth in the Inadmissible Hearsay Motion, that motion formalized the request for relief set forth in the Inadmissible Hearsay Memorandum filed on March 8, 2017, by the Reorganized Debtors in response to Norfolk Southern's January 27, 2017 filings, which is captioned the *Memorandum in Support of The Court's Entry of an Order Finding That the FELA Action Trial Record Is Inadmissible for the Purpose of Norfolk Southern Establishing Its Indemnification Claim* [Docket no 32828-3] (the "Inadmissible Hearsay Memorandum"), and which is attached as Exhibit C to the Omnibus Memorandum.

The transcripts at issue are Exhibit X to the *Declaration of R. Stephen McNeill in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance And Partial Disallowance of Claim No. 7021 And (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed on January 27, 2017 [Docket no. 32829], which was filed in support of Norfolk Southern's *Cross-Motion for Summary Judgment Allowing Claim No. 7021,* filed on January 27, 2017 [Docket no. 32825] (the "Cross-Motion") and its *Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim no. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed January 27, 2017 [Docket no. 32826] (Norfolk Southern's "Brief").

The Cross-Motion, the Brief, the McNeill Declarations and the Conley and Sharpe Declarations (defined below) are Norfolk Southern's "January 27 filings."   The Conley and Sharpe declarations are not at issue in this motion:

The "Conley Declaration" is the *Declaration of Thomas Wesley Conley in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed on January 27, 2017 [Docket no. 32827]; and

The "Sharpe Declaration" is the *Declaration of Christopher John Sharpe in Support of Norfolk Southern Railway Company's (I) Answering Brief in Opposition to Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Allowance and Partial Disallowance of Claim No. 7021 and (II) Opening Brief in Support of Norfolk Southern's Cross-Motion for Summary Judgment,* filed on January 27, 2017 [Docket no. 32828].

The Conley and Sharpe Declarations are, however, the subject of the Reorganized Debtors' *Motion to Strike the Sharpe and Conley Declarations,* filed on March 8, 2017 [Docket no. 32837].

because Mr. Kirkland's Safety Appliance Act ("SAA") claim regarding defective railcar brakes was defeated on summary judgment in the FELA Action.[4]  Norfolk Southern's Reply Brief was the first time in the long course of briefing Norfolk Southern's indemnity claim that the Reorganized Debtors were apprised of the existence of the SAA Summary Judgment.

That said, neither argument by Norfolk Southern has any legal or factual merit.  Norfolk Southern's residual hearsay argument fails as a matter of black-letter law, which bars analyzing the admissibility of evidence under the residual exception if that evidence has been found inadmissible under some other exception to the hearsay rule.  Moreover, Norfolk Southern's actions in failing to proffer other potentially probative evidence and failing to preserve witness testimony, as well as its incremental disclosure of evidence solely within its control, completely vitiates any other argument that Mr. Kirkland's testimony is admissible under Rule 807.

Second, the SAA Summary Judgment further confirms the fact that Norfolk Southern's interests in the FELA Action were directly adverse to Grace's—simply put, it appears from Norfolk Southern's Reply Brief that Mr. Kirkland simply failed to prosecute his SAA claim, and that is why Norfolk Southern was granted summary judgment.  In other words, Mr. Kirkland's SAA claim was never litigated in the FELA Action.  Had Norfolk Southern done the right thing and joined Grace to the FELA Action, one of the very first course of action that Grace would have taken would have been to vigorously analyze and presumably prosecute Mr. Kirkland's SAA claim.  Indeed, had the FELA Action jury found that Norfolk Southern was liable to Mr. Kirkland under the SAA, that by itself would have been more than sufficient to put paid to Norfolk Southern's indemnity claim against Grace.

---

[4]    The *Order Granting Defendant's Motion for Partial Summary Judgment as to Count III of Plaintiff's Complaint*, attached to Norfolk Southern's Reply Brief as Exhibit B is referred to herein as the "SAA Summary Judgment." (Norfolk Southern's Reply Brief at p. 15, n.15.)

Finally, in its Objection to Inadmissible Hearsay Motion, Norfolk Southern argues that this Court should not hear the Reorganized Debtors' Inadmissible Hearsay Motion because it is "a duplicative … [pleading that attempts] to run roughshod over this Court's procedures." (Reply Brief at ¶ 1.)  Nothing could be further from the truth.  The Reorganized Debtors recognized during the course of the briefing that the issue of whether Mr. Kirkland's FELA Action testimony is (in)admissible is a gating issue that, once decided, should provide guidance to both the Court and the parties, thus aiding in bringing a swift end to this contested matter.

<u>REPLY</u>

I.    MR. KIRKLAND'S TESTIMONY IS INADMISSIBLE UNDER FED. R. EVID. 804(B)(1)

1.    In its Reply Brief, Norfolk Southern repeats its contention that Mr. Kirkland's testimony is admissible under Fed. R. Evid. 804(b)(1), because Norfolk Southern stood in Grace's shoes at the FELA trial and that "the only way for Norfolk Southern to avoid liability in the Georgia Litigation would be to establish that Mr. Kirkland was himself negligent." (NS Reply Brief at 25.) That is wrong.  Grace's litigation posture would have been radically different from, and directly adverse to Norfolk Southern's position had it been a party to the FELA Action.  Indeed, Grace would have contended that:

- Kaolin from the Grace Plant had nothing to do with Kirkland's accidents, Norfolk Southern and Kirkland knew of the risks from kaolin and failed to take proper measure to be safe, and that Norfolk Southern was independently negligent for a variety of reasons;

- Norfolk Southern was liable for defective brakes on its railcars on Kirkland's SAA Claim; and

- As a matter of Georgia statute, *see* O.C.G.A. § 13-8-2, the strict liability "Facility" indemnities in the various agreements were against public policy and therefore unenforceable as a matter of Georgia law—which meant that the cause of Mr.

Kirkland's injuries would have thus been irrelevant as to whether Grace owed Norfolk Southern an indemnity.[5]

For these reasons, Norfolk Southern simply did not—and could not have—stood in Grace's shoes as to any of those defenses, and therefore was not Grace's predecessor-in-interest for purposes of Rule 804(b)(1).

2.    Norfolk Southern's own arguments in its Reply Brief confirm the point.  Indeed, Norfolk Southern contends in its Reply Brief that its own negligence in providing defective railcar brakes or for deeming the railcars safe to attach to the consist is irrelevant to the arguments about the indemnity.  Yet that argument proves that Grace and Norfolk Southern were indeed directly adverse—because Grace would have argued precisely the opposite at the FELA Action trial—and indeed Grace has consistently made that argument in its briefing in support of its Summary Judgment Motion.

3.    Norfolk Southern further contends that "the defective handbrake was eliminated on summary judgment," and thus cannot be relevant.  (Reply Brief at 18, n.18.)[6]  Norfolk Southern is wrong.[7]  Indeed, the actual text of FELA Action Court's SAA Summary Judgment

---

[5]    Grace would also have arguments that the indemnity provisions did not apply on their face to Mr. Kirkland's allegations.

[6]    Norfolk Southern's disclosure in its Reply that the trial court in the FELA action entered summary judgment for Norfolk Southern on the Safety Appliance Act claim suggests that in January 1998 Norfolk Southern destroyed evidence of defective brakes on the railcars involved in Mr. Kirkland's accidents by placing those cars back in service without affording Grace any opportunity to inspect the railcars.  Grace will be bringing a separate motion to dismiss Norfolk Southern's claim on the grounds of spoliation because to date, Norfolk Southern has never offered up the cars at issue for inspection.

[7]    What's more, Norfolk Southern states in that very same footnote that "[t]he Debtors have the entire Trial Record at their disposal."  That is plainly wrong.  The first time that Grace saw Exhibit B to Norfolk Southern's Reply Brief was on April 11, 2017, when Norfolk Southern filed the pleading.  Grace has none of any of the following FELA Action documents, pleadings and transcripts:

- Discovery (whether documentary or deposition or otherwise);

- Motion practice, including motions in limine or motions regarding jury instructions;

order directly contradicts Norfolk Southern's argument: "Plaintiff has not responded to Defendant's Motion ..." (Norfolk Southern's Reply Brief, Ex. __ at 1.)  In other words, the issue of whether the handbrakes on the January 23 and January 26 railcars were defective was never tried in the FELA Action, because Mr. Kirkland abandoned his SAA claim and never responded to Norfolk Southern's summary judgment motion.

4.      To be clear, the issue of whether the handbrakes were defective confirms the fact that Grace and Norfolk Southern were, *ab initio*, directly and fundamentally adverse to one another.  Grace would aggressively have litigated Mr. Kirkland's SAA claim had it been a party to the FELA Action.  Indeed, at minimum, Grace would have conducted extensive discovery on the SAA claim.  It likely would also have retained an expert and submitted an expert declaration in opposition to Norfolk Southern's SAA summary judgment motion.  In addition, Grace would likely have extensively cross-examined Mr. Kirkland about the defective brakes on the railcars with the intent of eliciting from Mr. Kirkland admissions that the brakes were defective.  Finally, Grace would have—after conducting appropriate discovery—deposed and cross-examined one or more Norfolk Southern employees, including Mr. Chapman, with the intent of eliciting similar admissions regarding the railcar handbrakes.

5.      Grace would very likely have taken some or all of these actions, because a finding in the FELA Action that the brakes were defective would have fully relieved Grace of any indemnification liability.  Thus, it is apparent from footnote 18 in Norfolk Southern's Reply

---

- Summary Judgment briefing; or the

- Post-trial briefing.

Finally, Grace is confident in stating Norfolk Southern does not have the entire record from the Kirkland FELA trial because Norfolk Southern admitted that fact to Grace back in 2012 (cite email to R. Higgins re pictures).

Brief that Norfolk Southern's entire defense against Mr. Kirkland was designed to inculpate Grace as indemnitor under the Agreements. There is thus no aspect whatsoever of the FELA Action in which Norfolk Southern's interests were even remotely aligned with Grace's interests. Therefore, Mr. Kirkland's testimony is not admissible in this contested matter as a Rule 804(b)(1) exception to the hearsay rule.

## II.    KIRKLAND'S TESTIMONY FROM THE FELA TRIAL IS INADMISSIBLE UNDER THE RESIDUAL EXCEPTION

6.    In its Reply Brief, Norfolk Southern contends *for the very first time* that Mr. Kirkland's FELA Action trial testimony is admissible here under Fed. R. Evid. 807(a), which is the residual hearsay exception. Norfolk Southern is wrong.

7.    *First*, it is a matter of black-letter law that the admissibility of evidence should not be analyzed under the Rule 807 residual exception when the evidence is clearly inadmissible under some other exception to the hearsay rule. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1263 (E.D. Pa. 1980) (holding: "the residual exceptions cannot be invoked when there is a specific exception which sets forth conditions governing the admissibility of a clearly defined category of hearsay evidence") Norfolk Southern has argued— albeit unsuccessfully—that it is Grace's predecessor-in-interest under Rule 804(b)(1). Norfolk Southern therefore cannot now avail itself of the residual hearsay exception. *Id.*

8.    *Second*, even if Norfolk Southern could avail itself of the residual exception, that exception cannot apply as a matter of law, because Norfolk Southern failed to seek other probative testimony regarding the cause of Mr. Kirkland's accidents. *Id.* at 1264 ("in order to satisfy the requirement of the residual hearsay exceptions, the proponent of the hearsay evidence must attempt to procure the testimony, not only of the declarant, but also of other witnesses who have knowledge of the subject matter of the hearsay evidence"). Here, Norfolk Southern plainly

could have submitted in support of its summary judgment motion a declaration from an expert on

causation of railroad injuries who could have relied on Mr. Kirkland's testimony in forming an

opinion on whether the kaolin from the Grace plant contributed to Mr. Kirkland's accidents. *See,

e.g., Ditton v. BNSF Ry. Co.*, No. CV 12-6932 JGB (JCGx), 2013 U.S. Dist. LEXIS 71993 at *12

(C.D. Cal. May 21, 2013) (admitting at summary judgment certain expert reports regarding

railcar handbrake and railroad negligence issues) (citations omitted); *see also, e.g., De Mars v.

Equitable Life Assurance Soc.*, 610 F.2d 55, 61 (1st Cir. 1979) (denying admission of evidence

under residual hearsay exception finding, because "[p]laintiff offered no evidence or explanation

as to why another expert was not obtained … Since Dr. Rattigan's opinion was based solely on

his examination of the decedent's medical and hospital records, the death certificate and the

report of the postmortem examination any other physician could have been obtained to render an

opinion on fairly short notice"). Further, the fact that Mr. Kirkland's testimony itself is

inadmissible hearsay does not matter because an expert may rely on otherwise inadmissible

evidence when forming his or her expert opinions as part of its original proof of claim or even

during the course of the extensive summary judgment briefing in recent months. Fed. R. Evid.

703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in

forming an opinion on the subject, they need not be admissible for the opinion to be admitted.")

Thus, barring admission of Mr. Kirkland's FELA Action trial testimony would not in any way

limit Norfolk Southern's ability to have introduced probative evidence on the cause of Mr.

Kirkland's injuries. The fact is, Norfolk Southern simply chose not—or was unable—to present

prior to now any expert testimony on the cause of Mr. Kirkland's injuries.[8]

---

[8]    As demonstrated by the Conley and Sharpe Declarations, Norfolk Southern was well aware prior to making its
       January 27 filings that its evidentiary proffer was far from complete. Therefore, Norfolk Southern cannot argue

9.     ***Third***, the doctrine of acquiescence bars Norfolk Southern from seeking admission of Mr. Kirkland's testimony under the residual exception. That is because "[t]he doctrine of acquiescence effectively works an estoppel: where a plaintiff has remained silent with knowledge of her rights, and the defendant has knowledge of the plaintiff's silence and relies on that silence to the defendant's detriment, the plaintiff will be estopped from seeking protection of those rights." *Lehman Bros. Holdings v. Spanish Broad. Sys.*, No. 8321-VCG, 2014 Del. Ch. LEXIS 28 at *29 (Ch. Feb. 25, 2014). To prevail on a defense of acquiescence, the defendant must prove that "(1) the plaintiff remained silent (2) with knowledge of her rights (3) and with the knowledge or expectation that the defendant would likely rely on her silence, (4) the defendant knew of the plaintiff's silence, and (5) the defendant in fact relied to her detriment on the plaintiff's silence." *Id.* at * 34. Acquiescence "focuses on the defendant's knowledge of and reliance on the plaintiff's behavior (or lack thereof)." *Id.* at *29.

10.     Mr. Kirkland died on October 22, 2009. (Norfolk Southern's Reply Brief Exhibit C (copy of death certificate).) In June 2007, more than two years before Mr. Kirkland passed away, Grace first sought to engage Norfolk Southern in mediation. (Inadmissible Hearsay Motion Exhibit B (S. Whittier letter, dated November 8, 2007)); Norfolk Southern's Objection to Inadmissible Hearsay Motion Exhibit B (S. Brown-Edwards letter, dated January 17, 2008).) Those efforts failed. On July 20, 2009, while Mr. Kirkland was still alive, Grace filed its objection to Norfolk Southern's claim no. 7021, the subject of the present contested matter.[9] The

---

now that it has been constrained in any way at any point in the claim objection process from proffering expert testimony on the cause of Mr. Kirkland's injuries.

[9]     *See Objection to the Proof of Claim Filed by Norfolk Southern Railway Company*, filed July 20, 2009[Docket no. 22553] (the "Objection," a copy of which is attached to the *Proposed Findings of Uncontested Facts in Support of The Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No.7021, filed By Norfolk Southern Railway* [Docket no. 929575-4] as Exhibit B).

failure of the parties to mediate, coupled with the July 2009 filing of Grace's objection, put

Norfolk Southern on notice well before Mr. Kirkland passed away that it would potentially need

witnesses—including Mr. Kirkland—to prosecute its claim.[10]    Presumably, Norfolk Southern

would have contacted Mr. Kirkland in 2007 to notify him he would be needed as a witness in

support of Norfolk Southern's claim against Grace.    What's more, as Norfolk Southern had sole

control over knowledge of how and where to contact its own witnesses, Grace has relied on

Norfolk Southern to do just that.

11.    Yet, in the event precisely the opposite has happened.    Indeed, over the years,

Norfolk Southern and Grace have had numerous conversations about evidence.    In 2012, for

example, Grace and Norfolk Southern exchanged multiple communications about evidentiary

issues. (R. Higgins 2012-13 E-Mail Correspondence, attached hereto as Exhibit A.) Not once did

Norfolk Southern' counsel mention to counsel for Grace that Mr. Kirkland had passed away in

2009.    In 2015, Grace sought to work out an agreed stipulation of facts with Norfolk Southern.

(R. Higgins 2015 E-Mail Correspondence, attached hereto as Exhibit B.)    Once again, counsel

for Norfolk Southern did not inform counsel for Grace of Mr. Kirkland's death.    It was not until

January 27, 2017, nearly a decade after Grace had first attempted to mediate Norfolk Southern's

indemnity claim and nearly eight years after Mr. Kirkland had passed away, that Norfolk

---

[10]    This is not the only instance in which Norfolk Southern has failed to perpetuate testimony of potentially important witnesses.  For example, in the wake of their March 8 filings, in which the Reorganized Debtors identified admissions by Trainmaster Chapman that entirely exculpate the Reorganized Debtors of any and all possibility of liability, the Reorganized Debtors have repeatedly requested Norfolk Southern ascertain Mr. Chapman's availability to testify and to confirm that he is in good health.  As of the date of this filing (April 24, 2017), Norfolk Southern has repeatedly refused to do so.

Southern finally informed Grace of Mr. Kirkland's death—and then only in the context of its Summary Judgment Response.[11]

12.    At any time after Grace first raised the possibility of mediation, thereby putting Norfolk Southern on notice that Grace was not going to simply allow its claim, Norfolk Southern could have relied on a Fed. R. Civ. P. 27 proceeding (or the bankruptcy equivalent under Fed. R. Bankr. P. 7027) to preserve Mr. Kirkland's testimony for this action when it should have learned of Mr. Kirkland's illness—which Norfolk Southern did not do.  Grace again relied on Norfolk Southern to preserve its witnesses testimony. *See also, e.g.*, 10-7027 COLLIER ON BANKRUPTCY ¶ 7027.07 (16th 2017) ("given nationwide service of process pursuant to Bankruptcy Rule 7004, an action to perpetuate testimony, rather than a petition pursuant to Civil Rule 27(a), would appear to be an attractive alternative in an appropriate case").

13.    Thus, the doctrine of acquiescence bars Norfolk Southern from profiting from its failure to preserve Mr. Kirkland's testimony for this action.  Norfolk Southern cannot use Mr. Kirkland's testimony from the FELA action—where Grace had no opportunity to cross examine Mr. Kirkland regarding the defective brakes on the Norfolk Southern railcars—because admitting Mr. Kirkland's FELA testimony would reward Norfolk Southern for its negligent or intentional failure to adequately secure testimony from Mr. Kirkland in this action and it would reward Norfolk Southern for its silence regarding Mr. Kirkland dating back to 2008.

---

[11]    Counsel for Norfolk Southern in telephone conferences following the Reorganized Debtors' October 2016 filing of their Summary Judgment Motion did advert to the possibility that Mr. Kirkland had passed away, but Grace did not receive confirmation of that fact until reading about it in Norfolk Southern's January 27 filings.  Indeed, Norfolk Southern did not attach a copy of Mr. Kirkland's death certificate to any of its filings until it was included as an exhibit to Norfolk Southern's Reply Brief, filed on April 11.

III.    **NORFOLK SOUTHERN FAILED TO "VOUCH" GRACE INTO THE FELA ACTION—
BECAUSE NORFOLK SOUTHERN NEVER TRIED TO JOIN GRACE TO THE FELA ACTION**

14.    *First*, Norfolk Southern continues to misapply applicable Third Circuit law on

voucher.  The Third Circuit would not apply voucher in the present case to vouch Grace into the

FELA Action, because a party first must attempt to join or implead a party to an action before

relying on the voucher doctrine.  The court in *Humble Oil & Ref. Co. v. Phila. Ship Maint. Co.*,

444 F.2d 727, 734-35 (3d Cir. 1971), the Third Circuit case cited with approval by Norfolk

Southern, found voucher to be inapplicable in that case where the duty to defend was ambiguous

at the inception of the litigation.  The court held: "Accordingly, even assuming the vitality of the

Oregon rule, we are not persuaded that at the time of the tender of defense the facts demonstrated

'that liability [would] eventually fall upon the indemnitor,' thereby placing him under a duty to

defend." *Id* at 735.  The *Humble Oil* court expressed strong reservations regarding the actual use

of the voucher rule on the facts presented in that case (which are similar in many ways to this

matter):

> We perceive extreme difficulty in its practical application. The rule
> calls for an exquisite ability to predict, at a pretrial stage, the
> eventual outcome of the indemnity action. For the rule to apply,
> the prospective indemnitor must be in actual or constructive
> possession of facts which unerringly point to liability. If nothing
> else, even a cursory perusal of the cases discussed herein will
> indicate that the duty to indemnify is an evanescent and often
> desultory doctrine which has divided courts hearing these actions
> at every level of the federal bench.

*Id.* at 734.

15.    Further the *Humble Oil* court expressly rejected the use of voucher unless the

indemnity guarantees at issue in the indemnity claim were identical to those liability obligations

at issue for the indemnitee in the underlying trial: "the res judicata principle cannot be applied

unless the warranty by the voucher to the original complainant and that granted by the vouchee

are identical." *Id.* at 735. The *Humble Oil* court concluding by holding that the indemnitor (the stevedore):

> had nothing but the ... [the indemnitee's] tender on which to conclude that it was dutybound to assume the defense. Indeed, the ... [the indemnitee's] failure to implead the ... [indemnitor] after it refused to defend the original action could only serve to obfuscate any obligation owed by the [indemnitor].

*Id.* at 736.

16.    The situation in this contested matter (and in the FELA Action, itself) is essentially identical to the *Humble Oil* case. Indeed, Norfolk Southern's obligation under FELA and under the SAA to Mr. Kirkland are clearly far broader than any contractual indemnity obligation that Grace may have to Norfolk Southern under the Agreements.   Moreover, as Grace has argued in its October 2016 Summary Judgment Memorandum, there was nothing on the face of Mr. Kirkland's Complaint to implicate either Grace or the Agreements' indemnity provisions. Thus, aside from Norfolk Southern's demand itself, there was nothing upon which Grace could be led to believe that it was somehow dutybound to assume the FELA Action defense.  Finally, just as in the *Humble Oil* case, Norfolk Southern, the indemnitee, failed to join Grace, the putative indemnitor, to the original action (which, here, is the FELA Action). *Id.*, at 735 (finding that "the most expeditious procedure would be impleader, since both actions would then be simultaneously heard") (citing 3 MOORE'S FEDERAL PRACTICE, § 14.02[1], at 432); *see also Farrell Lines v. Nalfleet, Bull & Roberts*, 94 Civ. 1951 (LMM), 1995 U.S. Dist. LEXIS 1091 at *3 (S.D.N.Y. Jan. 31, 1995) ("The Second Circuit, while recognizing that vouching-in remains a valid practice under certain circumstances,' has declared it to be a superfluous procedure where impleader is available.' The Court observed that 'impleader is of course superior to vouching because it forces the indemnitor to participate as a party and thus avoids delay that may result

when an indemnitor declines to be vouched into an action.' Most scholars agree with the Second Circuit in this regard") (internal citations omitted).

17.    As has been well established in prior pleadings—and by Norfolk Southern's own admissions—Norfolk Southern made no effort to join or implead Grace to the FELA Action. Norfolk Southern also makes no showing, nor can it, that it could not have served process on Grace in the FELA Action. Nor does Norfolk Southern make any showing, nor can it, that it could not obtain personal jurisdiction over Grace in the FELA action (because of course Grace could have waived personal jurisdiction—a proposition that Norfolk Southern never tested). Thus, under *Humble Oil*, and directly contrary to Norfolk Southern's proposition (Norfolk Southern's Reply Brief at pp. 22-23), Norfolk Southern cannot avail itself of the doctrine of voucher. *Id.*, at 735 n. 15 ("Professor Moore would restrict the use of the vouching-in process to those cases in which process on the indemnitor cannot be obtained") (citing 3 MOORE'S FEDERAL PRACTICE § 14.02[1], at 432, n. 5).[12]

18.    Second, and as discussed in considerable detail in the Reorganized Debtors' Inadmissible Hearsay Motion, Norfolk Southern's effort to vouch Grace into the Kirkland FELA Action was untimely. Norfolk Southern again seems not to have read the case law they cite in support of their position. *United N.Y. Sandy Hook Pilots Assoc. v. Rodermond Indus.*, Inc., 394 F.2d 65, 73 (3d Cir. 1968), the case cited by Norfolk Southern to establish the rule for vouching a party into the case held that vouching failed in that case because vouching would not give the indemnitor a fair opportunity to control the litigation. The *United N.Y.* court found that voucher

---

[12]   Grace also contends that Norfolk Southern had no intent to "vouch" Grace into the FELA action with any of the correspondence from its FELA counsel. That correspondence never mentions voucher. For Norfolk Southern to contend voucher,   because voucher is not mentioned at all in the correspondence, Norfolk Southern must waive privilege and make its Georgia counsel available for deposition on the voucher issue. Norfolk Southern also much produce email and other correspondence with Georgia counsel indicating that Norfolk Southern sought to vouch Grace into the Georgia FELA action.

was untimely in that action, because "[the indemnitors] were given no opportunity to protect their interests or minimize their potential liability prior to or during the first New York trial." *Id.*

19.    Here, Norfolk Southern first provided Grace notice of Kirkland's FELA action some twenty months after Mr. Kirkland's accidents and some fourteen months after Mr. Kirkland filed his Complaint.    Norfolk Southern provided Grace notice only after Norfolk Southern had locked in Mr. Kirkland's testimony regarding Grace in a deposition at which Grace had no opportunity to appear.    Further, on information and belief, Grace submits that Norfolk Southern provided notice to Grace of Kirkland's FELA Complaint only after written discovery in the FELA Action had been exchanged.    Moreover, Norfolk Southern failed to preserve crucial evidence regarding the condition of the railcar handbrakes involved in Mr. Kirkland's accidents. Because the condition of the handbrakes on the railcars was at issue for both Mr. Kirkland's January 23 and January 26, 1998 accidents, notice to Grace of the accidents would have been timely on January 23 and January 26 only, at the point in time before Norfolk Southern had put the railcars back in service or otherwise moved them.    Any later notice, once the railcars had been moved, would have been too late, because potentially exculpatory evidence required by Grace would have been destroyed.    The best record evidence on that point—because there has been no discovery in this matter—is seen in the FELA Action Court's entry of summary judgment in favor of Norfolk Southern on Mr. Kirkland's SAA claim—where Mr. Kirkland failed even to respond to Norfolk Southern's summary judgment motion.    Plainly, Grace had no opportunity to control any aspect of the FELA Action.    Most importantly, Grace had no opportunity to control those aspects of the litigation that would have exculpated it.

20.    Third, Norfolk Southern plainly failed to join Grace to the FELA Action because Grace and Norfolk Southern were directly adverse to one another.    Such adversity renders efforts

to vouch an indemnitor into an action ineffective. *See, e.g., Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F. Supp. 919, 924 (N.D. Ill. 1986) (Finding that vouching transactions must be at arms length, "There are some situations in which a judgment cannot be used against a vouchee. For example, the judgment does not bind the vouchee if it was obtained through a settlement." (citations omitted)); *see also SCAC Transp. (USA), Inc. v. S.S. "Danaos"*, 845 F.2d 1157, 1162 (2d Cir. 1988) ("In determining the preclusive effect of an ignored vouching-in notice, therefore, a court adjudicating a separate action for indemnification must look to whether impleader was possible in the prior action. If impleader was not available, the court should then scrutinize whether the indemnitee adequately represented the indemnitor's interests in the prior action")[13]; *Farrell Lines v. Nalfleet, Bull & Roberts*, 94 Civ. 1951 (LMM), 1995 U.S. Dist. LEXIS 1091 at *5, *12 (S.D.N.Y. Jan. 31, 1995) (finding voucher ineffective because "[the matter] was resolved by settlement, there are no resolved issues meriting preclusive effect in the current action." And because the vouchee "was amenable to jurisdiction [on impleader] in the underlying state action") Further, the *Blommer Chocolate* court stressed, "A judgment against the voucher does not automatically make the vouchee liable over for the judgment the voucher owes. That question remains to be litigated in their own suit, and the vouchee can assert there any defenses he has against the voucher." 635 F. Supp. at 923-24. Had Grace been joined to the FELA action, Grace would have defended itself by blaming either Norfolk Southern or Mr. Kirkland (or both) for Mr. Kirkland's injuries.  Moreover, Grace likely would have funded and fully litigated Mr. Kirkland's SAA claim (which Grace potentially could have pleaded as an affirmative defense in the FELA Action, so that it could take control of the claim from Mr.

---

[13]    In addition to liberal joinder rules, Georgia recognizes impleader, and the practice is governed by OCGA § 9-11-14.

Kirkland).  In addition, Grace likely would have contented that Georgia law bars the strict

liability provisions in the Grace/Norfolk Southern indemnity agreements.  *See* O.C.G.A. § 13-8-2

(making void as against public policy "[a] covenant, promise, agreement, or understanding in or

in connection with or collateral to a contract or agreement relative to the construction, alteration,

repair, or maintenance of a building structure, appurtenances, and appliances, including moving,

demolition, and excavating connected therewith, purporting to require that one party to such

contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the

contract or other named indemnitee, including its, his, or her officers, agents, or employees,

against liability or claims for damages, losses, or expenses, including attorney fees, arising out of

bodily injury to persons, death, or damage to property caused by or resulting from the sole

negligence of the indemnitee, or its, his, or her officers, agents, or employees, is against public

policy and void and unenforceable.")  By not joining Grace to Kirkland's FELA action, Norfolk

Southern avoided giving Grace the opportunity to litigate those defenses.

21.     For all of these reasons and as discussed in the Inadmissible Hearsay Motion and

the Inadmissible Hearsay Memorandum, there is no support whatsoever for Norfolk Southern's

use of the voucher doctrine in its bid to admit Mr. Kirkland's testimony for purposes of Norfolk

Southern carrying its burden of proof.

**IV.     EVIDENCE FROM THE FELA ACTION IS ADMISSIBLE AGAINST NORFOLK SOUTHERN EITHER AS A PARTY ADMISSION OR UNDER RULE 804(B)(1)—BECAUSE NORFOLK SOUTHERN WAS ITSELF ABLE TO CROSS-EXAMINE WITNESSES IN THE FELA ACTION**

22.     Norfolk Southern contends in its Reply that the trial record from the FELA Action

is either admissible for both parties or for neither party on collateral estoppel principles.  That

contention not only is wrong as a matter of law, but it also misstates the issue.  The basic rules of

evidence teach that each individual piece of evidence—be it a document, artifact, or testimony—

offered into evidence in this matter is considered for authenticity and admissibility in this matter

on an individual basis regardless of where the party obtained the evidence. *See, e.g.*, Fed R.

Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose—but

not against another party or for another purpose—the court, on timely request, must restrict the

evidence to its proper scope and instruct the jury accordingly"); *see also, Zenith Radio Corp. v.

Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1136-42 (E.D. Pa. 1980) (explaining rationale

for considering admissibility of evidence on summary judgment).

23.    Thus here, for example, Mr. Chapman testified at Kirkland's FELA Action trial in

his capacity as a Norfolk Southern employee—and presumably as Norfolk Southern's corporate

representative. That trial testimony is admissible in this contest matter against Norfolk Southern

as a party admission, and it is therefore not considered hearsay for that purpose. Fed. R. Evid.

801(d)(2); *see, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 501 (D. Del.

2005) (finding as being admissible "statements in the notes made by . . . employees or agents of

Chrysler Corporation and Defendants [which] constitute non-hearsay party admissions of

Defendants.) But Norfolk Southern cannot offer Mr. Chapman's FELA Action trial testimony

against Grace, however, because Norfolk Southern would be using Mr. Chapman's statement to

prove the truth of the matter asserted: Mr. Chapman was a Norfolk Southern employee when he

made the statements, and Mr. Chapman made the statements at a prior proceeding to which

Grace was not a party. He did not make the statements in this contested matter. *See* Fed. R.

Evid. 801(c). This analysis is made regardless of any collateral estoppel issues regarding the

ultimate verdict. Indeed, collateral estoppel operates as a bar to the use of evidence, not as an

exception to the Federal Rules of Evidence. *See, e.g., United States v. Shenberg*, 89 F.3d 1461,

1480 (11th Cir. 1996) ("the doctrine of collateral estoppel does not preclude the government

from introducing relevant and probative evidence that is otherwise admissible under the Federal Rules of Evidence").

24.     Likewise, Mr. Kirkland testified at the FELA Action trial and was cross-examined by Norfolk Southern.   Under Fed. R. Evid. 804(b)(1), Mr. Kirkland's testimony is admissible against Norfolk Southern because they cross-examined him, but Mr. Kirkland's testimony is not admissible against Grace because Grace did not cross-exmaine Mr. Kirkland.   *Id.*

25.     In any case, the trial record from the FELA trial is not considered as a whole, but each individual piece of evidence that was used in the FELA trial must be given due consideration under the Federal Rules of Evidence for admission in this matter.   Fed. R. Evid. 104 To date, Norfolk Southern has not objected on evidentiary grouds to a single piece of evidence offered in this matter by Grace.

## CONCLUSION

26.     Norfolk Southern has expended considerable time arguing that the Court should not hear the Inadmissible Hearsay Motion outside the context of the parties' competing summary judgment motions because in Norfolk Southern's view there are many material facts in dispute. Norfolk Southern is wrong.

27.     If this Court were to decide whether Mr. Kirkland's FELA Action trial testimony is (in)admissible for purposes of Norfolk Southern carrying its burden of proof, the issue of whether there are material facts in dispute would be mooted.   Without Mr. Kirkland's testimony, virtually every issue that Norfolk Southern points to as a disputed material fact becomes irrelevant, and the ultimate issue would be laid bare for the Court and the parties to see:  None of the indemnity provisions in the four Agreements between the parties applies on the undisputed facts of this contested matter as a matter of law, and even if those indemnity provisions could

apply, Norfolk Southern has failed to carry its burden of proof in establishing that one or more of the indemnities does apply.

28.     The Reorganized Debtors therefore respectfully request this Court take into account the various pleadings of both the Reorganized Debtors and Norfolk Southern regarding the (in)admissibility of Mr. Kirkland's testimony, and reach the conclusion that Mr. Kirkland's FELA Action testimony is indeed inadmissible for the purpose of Norfolk Southern carrying its burden of proof.  The relevant pleadings will be in the May 3 hearing binder and listed on the agenda for the May 3 hearing.

**[remainder of page left intentionally blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached to the Inadmissible Hearsay Motion as Exhibit A: (i) barring the introduction of Mr. Kirkland's testimony in the FELA Action by Norfolk Southern as evidence to prove the truth of any claims asserted by Norfolk Southern against Grace in regard to the resolution of the Norfolk Southern Claim; and (ii) granting such other relief as may be appropriate.

Dated: April 24, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE  19899-8705 (Courier 19801
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors