IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 01-bk-01139 |
| | ) | Chapter 11 |
| W.R. GRACE & CO., et al., | ) | Judge Kevin Gross |
| | ) | |
| Debtors. | ) | Objection Deadline: 5/11/17 @ 4 PM |
| _____ | ) | Hearing Date: 5/22/17 @ 11 AM |

**UNITED STATES' OPPOSITION TO DEBTORS' MOTION TO ENFORCE**

The debtors' motion should be denied. The Internal Revenue Service properly calculated the amount of an income tax refund owed to debtor W.R. Grace & Co.-Conn ("Grace-Conn") for tax year 1998. The debtors disagree and contend that the IRS erroneously calculated the interest owed on Grace-Conn's original income tax liability for that year. Specially, they assert that the IRS should have used the interest rate provided by their plan of reorganization (the "Plan") for satisfying allowed claims against the debtors. The IRS had instead used the interest rate provided by the Internal Revenue Code for tax underpayments. The debtors' position is completely unfounded, however, due to their misreading of their own plan of reorganization and their failure to understand the fundamental differences between the doctrines of recoupment and setoff.

THE DEBTORS' LEGAL AND FACTUAL ALLEGATIONS

The present dispute concerns the proper amount of the refund owed by the IRS to Grace-Conn for its 1998 income tax year. Though Grace-Conn had a $5,852,658 income tax liability for that period as of the petition date, it sought to eliminate that liability through the carryback of net operating losses and refund credits from later tax years. The IRS agreed that a refund was due for 1998 based on the carrybacks and refund credits. But, the amount of the refund was

reduced by approximately $5 million on account of interest that accrued between the filing deadline for tax year 1998 (March 15, 1999) and the filing deadline for the year in which the NOLs arose (March 15, 2009).  In calculating the amount of this interest, the IRS used the rate provided for by 26 U.S.C. § 6621(a)(2) and (c), which is the statutorily provided rate on tax deficiencies.  26 U.S.C. § 6601(a).

The debtors do not dispute that interest accrued on the deficiency during this period and that it could be applied to reduce the amount of the refund owed to them.  Their only complaint is that they believe the IRS should have applied the 4.19% interest rate provided in the Plan for the payment of allowed priority tax claims.  The Plan permits the debtors to satisfy allowed priority tax claims by paying the allowed amount of the claim:

> in equal quarterly Cash payments commencing on the Initial Tax Distribution Date and, thereafter, on each Quarterly Tax Distribution Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at 4.19% per annum, over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim, or upon such other terms (including such other rate of interest) determined by the Bankruptcy Court, which will provide the Holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim….

(Plan, § 2.1.2).  "Priority Tax Claim" is defined as "a Claim that is of a kind specified in Bankruptcy Code §§ 502(i) or 507(a)(8)."  (Plan, § 1.1(179)).  The Plan assigns to the term "Claim" the definition provided for it in the Bankruptcy Code, 11 U.S.C. § 101(5).  The debtors contend that this 4.19% interest rate applicable to allowed priority tax claims is the rate the IRS should have used when calculating the interest.  Because this rate is lower than the statutory rate during the relevant time, they argue that the refund amount should be higher.

## ARGUMENT

The debtors' position is fundamentally flawed, and the motion should be denied.  First, based on its own plain language, § 2.1.2 of the Plan, which sets forth how allowed priority tax

claims may be treated, is wholly inapplicable to the interest owed on the 1998 tax liability because no IRS claim for that tax period was ever allowed.  Second, due to the fundamental differences between the doctrines of setoff and recoupment under both tax and bankruptcy law, any treatment the Plan provided for claims by creditors would have no relevance to the type of reduction of a refund that occurred here.  The reduction resulted from an exercise of the United States' right of recoupment, and recoupment, unlike a setoff, is not a claim for bankruptcy purposes.

      The debtors' motion is based solely on § 2.1.2 of the Plan, and this section has no relevance to the appropriate amount of interest that should be deducted from the refund.  It describes how the debtors may treat "Allowed Priority Tax Claims."  In 2014, the debtors objected to the IRS's proof of claim for 1998 on the ground that no liability was owed due to NOLs and other refunds.  (Dkt. No. 32036).  In response, the IRS withdrew the proof of claim (Dkt. No. 32854-3), and the debtors withdrew their claim objection.  (Dkt. No. 32529).  Because no final order was entered allowing the proof of claim, any claim relating to Grace-Conn's 1998 tax liability is not an "Allowed Priority Tax Claim" within the meaning of § 2.1.2.  The section thus is of no relevance in determining the appropriate rate for the interest on the 1998 liability, and so the Court must look to another source of law.

      Beyond the issue of allowance, the Plan's proposed treatment of claims could never have any bearing on the interest charged against the refund, because that interest is not a claim for bankruptcy purposes.  The debtors' assumption that it is a claim stems from their failure to appreciate the distinction between two similar but fundamentally distinct legal concepts–setoff and recoupment.  "Setoff allows adjustments of mutual debts arising out of separate transactions between the parties.  Recoupment, on the other hand, involves a netting out of debt arising from

3

a single transaction." *SAIF Corp v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995). *Accord Long Term Disability Plan of Hoffman–La Roche, Inc. (In re Hiler)*, 99 B.R. 238, 241-242 (Bankr. D.N.J. 1989) ("Essentially, the distinction between the two doctrines is whether the claim arises out of the same or different transactions. Thus, where a claim arises from the same transaction, the proper characterization of the action is recoupment" (citations omitted)). "There is no element … of an independent offset but merely an arrival at a just and proper liability on the main issue." *In re American Cent. Airlines, Inc.*, 60 B.R. 587, 590 (Bankr. N.D. Iowa 1986). "In effect, the application of recoupment goes to the equity of the claim. It provides for the adjudication of the just apportionment of liability relative to a dispute regarding a singular transaction." *Hiler*, 99 B.R. at 243. The right to recoup is limited to the amount of the debtor's claim against the creditor, and no additional claim in excess of that amount can be sought by the creditor under the doctrine. *Id.* (citing *American Cent. Airlines*, 60 B.R. at 590). And so crucially for this case, "the right of recoupment is a defense and not a claim in the bankruptcy context." *Folger Adams Security, Inc. v. DeMatteis/MacGrego JV*, 209 F.3d 252, 260 (3d Cir. 2000) (citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)). *Accord Harmon*, 188 B.R. at 425 ("'Because of its unique nature as a limited equitable defense the right of recoupment does not constitute a claim within the meaning of 11 U.S.C. § 101(5)…'" (quoting *Brown v. General Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993)).

The United States may assert both setoff and recoupment rights when confronted with a claim for a refund. Under 26 U.S.C. § 6402, the IRS may setoff any overpayment of tax against any other liability owed by the same taxpayer. Thus, if a taxpayer has an income tax overpayment for one tax year and an income tax underpayment for another tax year, the IRS can setoff the underpayment against the overpayment. It need only pay over a refund if the

overpayment and associated interest exceeds the underpayment for the other tax period and all associated interest and penalties.  This netting of overpayments against underpayments pursuant to this provision is generally considered a setoff within the meaning of the Bankruptcy Code.  *See In re Chateaugay Corp.*, 94 F.3d 772, 781 (2d Cir. 1996).  Consistent with the definition of setoff given above–which focuses on whether the claims arise from different transactions–this right of setoff generally involves situations where the mutual liabilities arise from different tax periods.

Even where this setoff right may be unavailable (*e.g.*, due to the expiration of the statute of limitations to assess a liability against the taxpayer), the United States retains an independent right of recoupment when faced with a claim for a refund.  "'[T]he ultimate question presented for decision, upon a claim for a refund, is whether the taxpayer has *overpaid his tax* [and t]his involves a redeterminaton of the entire tax liability.'" *Pacific Gas and Elec. Co. v. U.S.*, 417 F.3d 1375, 1379 (Fed. Cir. 2005) (quoting *Lewis v. Reynolds*, 48 F.2d 515, 516 (10th Cir. 1931), *aff'd*, 284 U.S. 281 (1932)) (emphasis in original).  "Accordingly, where the taxpayer has filed a claim for a tax refund, the IRS may offset against the refund claim a tax deficiency for the same tax year that previously had not been assessed...."[1] *Pacific Gas*, 417 F.3d at 1380.  It may also recoup any additions to tax, such as penalties and interest.  *See Bachner v. C.I.R.*, 109 T.C. 125, 131 (1997), *aff'd*, 172 F.3d 859 (3d Cir. 1998); *Fisher v. United States*, 80 F.3d 1576, 1580-1581 (Fed. Cir. 1997) (permitting the recoupment of unassessed deficiency interest for the same year as the claimed overpayment).  Consistent with the common law definition of recoupment, as

---

[1] Though the Federal Circuit used the word "offset" in this decision and referred to the relevant doctrine as "the defense of 'lack of overpayment'" instead of recoupment, the court was describing the procedure referred to in this brief as recoupment and which its predecessor and the Third Circuit have referred to as recoupment.  *See, e.g.*, *Dysart v. U.S.*, 169 Ct.Cl. 276, 283 (1965) and *Philadelphia & Reading Corp. v. U.S.*, 944 F.2d 1063, 1075-1076 (3d Cir. 1991).

applied in bankruptcy, this right of recoupment against a refund only applies when the amount to be recouped arises from the same tax year as the refund request. *Philadelphia & Reading Corp. v. U.S.*, 944 F.2d 1063, 1075-1076 (3d Cir. 1991).

In this case, the IRS exercised its right of recoupment, not its right of setoff as alleged by the debtors. (Debtors' Br., ¶ 30). The IRS did not setoff a liability for one tax year against a refund for another year. Instead, in response to the debtors' refund request for tax year 1998, the IRS only determined the true amount of Grace-Conn's overpayment for that year. Doing so required consideration of all components of its previous tax liability for that period, including the interest that accrued between when the original tax liability arose and the subsequent satisfaction of that liability through the application of net operating losses and other credits.[2] The interest is an integral part of the underlying tax liability; it is not a separate liability. *See* 26 U.S.C. § 6601(e)(1); *Fisher*, 80 F.3d at 1580 ("'The Code's design for such interest is to assimilate it to the tax itself…. For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax.'" (quoting *Alexander Proudfoot Co. v. United States*, 197 F.2d 1379, 1382 (Ct.Cl. 1972)).

The reduction of the requested refund by the amount of interest that had accrued since March 15, 1999 on the $5,852,658 tax liability therefore was not a netting of mutual claims as asserted by the debtors. It was instead the exercise of the United States' right to determine the true amount of the singular claim of the debtors against the IRS for 1998 and to pay over only

---

[2] Specifically, the IRS granted a credit of $11,491,201 attributable to the carryback of NOLs from tax year 2008 plus $1,280,263.22 for refunds from tax years 2001-2011, which were then reduced by the remaining $5,852,658 tax deficiency for 1998 and the $4,980,800.05 in interest that had accrued on that deficiency. The end result was a determination that Grace-Conn had an overpayment of $1,938,006.17. A refund was then issued for $2,027,545.76, representing this overpayment and $89,538.59 in overpayment interest.

what was owed after deducting previously-assessed interest on the original tax liability. *See Pacific Gas*, 417 F.3d at 1382-1383 ("A tax deficiency, tax penalty, and deficiency interest, the quantities permitted to offset the taxpayer's claimed refund in *Lewis v. Reynolds* and its progeny, are all components of a taxpayer's liability. Therefore, these components are taken into account in determining whether an overpayment exists and permitting them to offset a claimed tax refund is logical.").

Because what occurred related solely to tax year 1998 and thus was a recoupment and not a setoff, there is no merit to the debtors' motion. At its core, it assumes that the debtors had a claim against the IRS for a refund and the IRS had an entirely distinct and unrelated affirmative claim under the Bankruptcy Code for interest. But no such separate IRS claim existed. In processing the debtors' affirmative claim for a refund for 1998, the United States redetermined *its liability to the debtors* for 1998 and, in doing so, exercised its right to recoup interest that had been part of that liability in connection with the NOL carryback. And as the Third Circuit has held, these recoupment rights do not constitute a "claim" within the meaning of the Bankruptcy Code. *Lee v. Schweiker*, 739 F.2d at 875. Since the Plan uses the Code's definition of "claim," the IRS's right to recoup the interest also cannot be a claim subject to § 2.1.2 of the Plan.

Thus, the plan's provision for interest on "Allowed Priority Tax Claims" has no applicability here. No claim was ever allowed for tax year 1998, and the reduction of the debtors' claim against the IRS through the recoupment of interest did not constitute a "claim" as defined by the Plan and the Code. The statutory rate thus was the only appropriate rate to use, because claims between debtors and creditors are to be determined by the underlying substantive law unless the Bankruptcy Code provides otherwise. *Cf. Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 20 (2000). The applicable substantive law for determining federal income tax liabilities

and related refunds is the Internal Revenue Code and the case law applying it. The refund amount, which was reduced by the interest that accrued at the statutory rate, thus was entirely correct.

WHEREFORE THE UNITED STATES OF AMERICA respectfully requests that the debtors' motion be denied.

DATE: May 11, 2017

Respectfully submitted,

DAVID HUBBERT
Acting Assistant Attorney General

/s/ Ward W. Benson
WARD W. BENSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-9642
Fax: (202) 514-6866
Email: wardlow.w.benson@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that the foregoing OPPOSITION was filed with the clerk of the court on May 11, 2017, using the CM/ECF system, which will send notification of such filing to all parties appearing in said system.

/s/ Ward W. Benson
WARD W. BENSON