IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al.,[1] ) | Case No. 01-01139 (KG) |
| ) | (Jointly Administered) |
| Reorganized Debtors. ) | |
| ) | **Related Docket Nos.: 32854 & 32877** |
| ) | |

## REPLY TO UNITED STATES' OPPOSITION TO DEBTORS' MOTION TO ENFORCE

The above-captioned reorganized debtors (the "Reorganized Debtors") file this Reply to the United States' Opposition to Debtors' Motion to Enforce (the "Response"), which was filed in response to the Reorganized Debtors' Motion for Entry of an Order Enforcing Plan and Confirmation Order Against Internal Revenue Service (the "Motion"). As discussed herein, the arguments made by the Government in the Response are without merit, and the Motion should be granted in its entirety.[2]

I. **THE GOVERNMENT'S ARGUMENTS ARE WITHOUT MERIT**

1. The issue in this case is straightforward: whether, as the Reorganized Debtors contend, the 4.19% interest rate provided for in the Plan applies to determine the amount of interest accrued during the post-petition period on a 1998 tax deficiency owed by Grace or, as the Government contends, the (higher) interest rate provided for in the Internal Revenue Code

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Motion, the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (the "Plan") or this Court's *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010*, dated January 31, 2011 [Docket No. 26155], and *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010*, dated February 15, 2011 [Docket No. 26289] (together, the "Confirmation Order").

("IRC") applies. The Government has attempted to shoehorn its claim for interest into a claim for "recoupment" in order to avoid application of the 4.19% interest rate in the Plan. The Government's attempt fails.

2. The facts are not in dispute. As stated in the Response, "the IRS granted a credit of $11,491,201 attributable to the carryback of NOLs from tax year 2008 plus $1,280,263.22 for refunds from tax years 2001-2011, which were then reduced by the remaining $5,852,658 tax deficiency for 1998 and the $4,980,800.05 in interest that had accrued on that deficiency. The end result was that Grace-Conn had an overpayment of $1,938,006.17. A refund was then issued for $2,027,545.76, representing this overpayment and $89,538.59 in overpayment interest." Response at 6 n.2. In calculating the $4,980,800 of interest that had accrued on the 1998 tax deficiency, the IRS used the statutory underpayment rate, which was generally higher than the 4.19% interest rate specified in the Plan. *Id.* at 2. Had the IRS used the 4.19% interest rate, the amount of interest would have been $3,434,608, instead of $4,980,800 as determined by the IRS, thus increasing the amount of the refund owed to Grace. Motion ¶ 32.

3. The Government's position is that Section 2.1.2 of the Plan, which provides for a 4.19% interest rate on Allowed Priority Tax Claims, is irrelevant because the interest that accrued on the 1998 tax deficiency is not a "claim" for bankruptcy purposes. The Government contends that the accrued interest is not a "claim" because the IRS exercised its right of "recoupment" when it reduced the amount of Grace's refund by the amount of interest due; and, according to the Government, "the right of recoupment is a defense and not a claim in the bankruptcy context." Response at 4 (internal quotations omitted).

4. As the Government notes, the Plan assigns to the term "Claim" the definition provided in the Bankruptcy Code, 11 U.S.C. § 101(5). That section generally defines "claim" as

2

a "right to payment." As discussed below, the 1998 tax deficiency, including accrued interest, constitutes a "Claim" under the Plan because the IRS had a "right to payment" of such amount, independent of whether Grace filed any refund claims. The IRS's right to payment was *not* limited to reducing (or recouping) the amount of the refund owed to Grace; accordingly, when the IRS offset Grace's refund by the amount of the 1998 tax deficiency and accrued interest, it was not simply exercising its right of recoupment, under either the tax or bankruptcy definition of that term.

5. For tax purposes, there are generally two equitable principles that apply when a taxpayer requests a refund from the IRS: setoffs and equitable recoupment. "A *setoff* allows issues that are time-barred by the expiration of the period of limitations to be raised by the government ... where they arise from the same type of tax for the same taxpayer for the same taxable period presented by the refund suit." Kafka & Cavanagh: *Litigation of Federal Civil Tax Controversies* ¶ 16.03 (2d Ed. 1997 & Supp. 2017-1); *see also, e.g., Dysart v. United States*, 169 Ct. Cl. 276, 282 (1965) (discussing the difference between setoff and recoupment). The "seminal case allowing time-barred setoffs to be raised in a tax refund action is *Lewis v. Reynolds*."[3] Kafka & Cavanagh, ¶ 16.03(1)(a).

6. The doctrine of equitable recoupment, on the other hand, "allows a refund tribunal to consider time-barred issues arising from the same transaction that is placed in issue by a taxpayer's refund suit, even when such issues do not involve the same taxable period or same type of tax." *Id.* ¶ 16.03; *see also, e.g., Dysart*, 169 Ct. Cl. at 281-82. In general, "'[A] claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or

---

[3] As the Government notes, the "setoff" doctrine described above has also variously been referred to as the defense of "lack of overpayment," "offset" and "recoupment." Response at 5 n.1. The equitable doctrine of setoff should not be confused with the IRS's statutory right of setoff under IRC § 6402, which generally allows netting of (timely) overpayments against (timely) underpayments.

3

taxable event under two inconsistent theories.'" *In re Pransky*, 318 F.3d 536, 544 (3d Cir. 2003) (quoting *United States v. Dalm*, 494 U.S. 596, 605 n.5 (1990)). Congress largely codified the doctrine of equitable recoupment when it enacted the "mitigation" provisions in IRC §§ 1311-1315. *See Dysart*, 169 Ct. Cl. at 281-82.

7. While the doctrines of "setoff" and "equitable recoupment" apply in different circumstances, "[t]he two principles have a similar effect, i.e., permitting issues barred by the relevant period of limitations to be raised defensively." Kafka & Cavanagh, ¶ 16.03.

8. The Government cites a number of tax cases in its Response to support its argument that it exercised its right of recoupment in this case when it offset the amount of accrued interest on the 1998 tax deficiency against the refund owed to Grace. Response at 5-6. In all of those cases, the IRS argued that the taxpayer's refund should be offset by taxes, penalties and/or interest that were time-barred, *i.e.*, that could not be assessed because the statute of limitations had run.[4] Importantly, in those cases, the IRS's only recourse was to reduce the amount of the refund otherwise owed to the taxpayer; it was not allowed to actually assess and collect the time-barred amounts from the taxpayer. As the Supreme Court stated in *Lewis v. Reynolds*, "While no assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax." 284 U.S. 281, 283 (1932) (internal quotations omitted).

9. Unlike in the cases cited by the Government, in this case, the assessment by the IRS was *not* barred by the expiration of the statute of limitations. Instead, the IRS timely

---

[4] *See Pac. Gas & Elec. Co. v. U.S.*, 417 F.3d 1375 (Fed. Cir. 2005) (offset of erroneous interest paid to taxpayer, where IRS suit to recover such interest was time-barred); *Lewis v. Reynolds*, 284 U.S. 281 (1932) (offset of time-barred tax against refund); *Bachner v. Comm'r*, 109 T.C. 125 (1997), *aff'd*, 172 F.3d 859 (3d Cir. 1998) (offset of time-barred tax and penalties against refund); *Fisher v. United States*, 80 F.3d 1576 (Fed. Cir. 1996) (offset of time-barred deficiency interest against refund); *Dysart v. United States*, 169 Ct. Cl. 276 (1965) (offset of time-barred tax against refund); *Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063 (3d Cir. 1991) (offset of time-barred tax against refund).

assessed the 1998 income tax deficiency and related interest.[5] Accordingly, the IRS was *not* limited to merely recouping the tax and interest from the refund otherwise owed to Grace. If Grace had not filed a refund claim, the IRS still would have been entitled to payment of the entire 1998 tax deficiency and related interest from Grace. Similarly, if the refund claim filed by Grace had not been sufficient to fully satisfy the 1998 tax deficiency and related interest, the IRS would have been entitled to payment of the excess amount from Grace.[6]

10. In this respect, it is abundantly clear that the IRS had a "claim" (as both the Plan and Bankruptcy Code define that term) against Grace for the amount of the 1998 tax deficiency and related interest, as it had an independent "right to payment" of such amount, which was an enforceable obligation of Grace. *See* Plan § 1.1.75 (defining "Claim" as "a claim (as defined in Bankruptcy Code § 101(5)) against a Debtor including any right to: (i) payment from any of the Debtors"); *see also, e.g., Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 260 (3d Cir. 2000) (noting "the Bankruptcy Code's definition of claim is broad" and stating that it requires "an enforceable obligation of the debtor to pay the claimant").

11. Indeed, the IRS filed a proof of claim asserting its entitlement to be paid the 1998 tax deficiency and accrued interest -- thereby establishing that it had a bankruptcy claim against the then-Debtors. *See* Motion ¶ 8 (claim no. 18553); Fed. R. Bankr. P. 3001(a) ("A proof of

---

[5] In November 2009, at the conclusion of the IRS's audit of Grace's 1998 tax return, Grace signed Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overpayment, agreeing to the assessment of the $5,852,658 of additional tax for 1998. Shortly thereafter, in December 2009, the IRS issued a "Notice of Tax Due on Federal Tax Return" for such amount, plus interest accrued at the statutory interest rate. Copies of the Form 870 and Notice are attached as <u>Exhibit A</u> hereto. In March 2012, Grace filed its refund claim to carry back its 2008 NOL to 1998. In December 2012, after Grace had filed its refund claim, the IRS filed Claim No. 18553 in the amount of $11,356,686.82 to document the December 2009 assessment of tax and interest for 1998.

[6] The cases cited by the Government rely primarily on the setoff theory discussed in the *Lewis v. Reynolds* line of cases. Regardless, however, of whether the Government is arguing for setoff or equitable recoupment (as those terms are used for tax purposes), the result is the same: those theories simply do not apply here, where the IRS timely assessed the underlying tax deficiency and interest.

5

claim is a written statement setting forth a creditor's claim"); Bankruptcy Code § 101(5) (defining the meaning of "claim"); Plan § 1.1.75 (definition of "Claim" tracks Bankruptcy Code definition). That claim was a Plan Claim. *See* Plan § 1.1.171 (defining Plan Claim to include Priority Tax Claims (Plan § 1.1.179), which are Plan § 1.1.75 Claims); Plan § 1.1.6 (definition of "Allowed," which shows that Allowed Plan Claims are a subset of the larger set of Plan Claims); Plan § 1.1.102 (definition of "Disallowed," which means that Disallowed Claims are Plan Claims). And, of course, the Plan governs the treatment of all such Plan Claims -- whether they were Allowed or Disallowed or otherwise. *See, e.g.*, Plan § 1.1.6; Plan § 1.1.102; Plan § 2.1.2 (provision for payment of Priority Tax Claims).

12. The Reorganized Debtors do not contest that, absent the refund, the IRS would have had an Allowed Priority Tax Claim in the principal amount of $5,852,658. Under the Plan, absent the refund, that Allowed Priority Tax Claim would have been paid in due course its principal amount plus interest at the rate of 4.19% compounded annually from the Petition Date to the date of payment. The fact that the IRS chose to offset its clear and unambiguous right to payment of its Priority Tax Claim (including Plan interest) against the Reorganized Debtors' refund claim cannot change the fact that the IRS had a claim, and that claim was a Plan Claim, subject to the Plan's treatment of such Plan Claims, including but not limited to the payment of Plan interest.

13. The same result is reached under the bankruptcy cases addressing the doctrine of equitable recoupment to which the Government cites in its Response. As the Government notes, those cases generally hold that "'the right of recoupment is a defense and not a claim in the bankruptcy context.'" Response at 4 (quoting *Folger Adams Security*, 209 F.3d at 260). What the Government fails to explain, however, is that the reason those cases hold that recoupment is a

defense and not a claim is because the claimant's sole remedy was to reduce the amount otherwise owed by the claimant to the debtor -- a fact pattern not at issue in this case, where the IRS had a Priority Tax Claim and the then-Debtors had a separate right to a refund that, after the appropriate rate of interest had been applied to the Priority Tax Claim (4.19% Plan interest) could be offset. The offset did not arise until after the interest had been determined.

14. For example, in *Folger Adams Security*, the Third Circuit stated that the claimant -- in asserting its right of recoupment -- was "not seeking to recover money on an enforceable obligation of Folger [which had purchased the assets of three bankrupt companies in a Section 363 "free and clear" sale], but rather, is asserting only defenses to claims by Folger." 209 F.3d at 260. The court therefore held that the claimant's recoupment defense did not rise to the level of a "claim" under the Bankruptcy Code, since a "claim requires an enforceable obligation of the debtor to pay the claimant." *Id.*

15. Similarly, in *In re Harmon*, another case cited by the Government, the court stated that "[b]ecause recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge." *SAIF Corp. v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) (citing *Brown v. General Motors Corp.*, 152 B.R. 935 (W.D. Wis. 1993)).

16. Likewise, in *In re American Central Airlines*, another of the Government's cases, the court explained that "recoupment goes to the justice of plaintiff's claim and no affirmative judgment for any excess over the claim of plaintiff can be awarded thereon." *Am. Cent. Airlines, Inc. v. Dep't of Transp. (In re Am. Cent. Airlines, Inc.)*, 60 B.R. 587, 590 (Bankr. N.D. Iowa 1986).

DOCS_DE:213880.1 91100/001

17. Finally, in *In re Hiler*, the court noted that the "function" of recoupment is to "reduce the amount demanded, but only to extent of the plaintiff's claim"; accordingly, "allowing recoupment will not affect the property of the estate other than the subject claim." *Long Term Disability Plan of Hoffman-LaRoche, Inc. v. Hiler (In re Hiler)*, 99 B.R. 238, 243 (Bankr. D. N.J. 1989).

18. Unlike in these cases, as explained above, the IRS here had an independent, enforceable right in the form of a Priority Tax Claim (which is subject to the Plan's provisions, including the rate of interest payable thereon) to receive payment of the entire amount of the 1998 tax deficiency and related interest and was not limited to reducing (or recouping) such amount from the refund otherwise owed to Grace. It is readily apparent that the IRS's "right to payment" (which as discussed was a Priority Tax Claim) went far beyond a mere right of recoupment.[7] Thus, the Government's contention that the IRS exercised its right of recoupment, which did not rise to the level of a "claim," is without merit.

19. As discussed above, because the IRS had an independent "right to payment" of the 1998 tax deficiency and related interest, which was an enforceable obligation of Grace, the IRS had an allowable "Claim" against the estate. Thus, the IRS -- like all creditors -- is subject to the terms of the Plan that provide for a 4.19% interest rate on all allowed claims. Any other conclusion would result in a windfall to the IRS in direct violation of the Plan.

## II. RELIEF REQUESTED

20. For the reasons discussed herein and in the Motion, the Reorganized Debtors request that the Court enter the Order enforcing the Plan and Confirmation Order provisions

---

[7] The Third Circuit, in a bankruptcy context, has cautioned that the doctrine of equitable recoupment, "as a non-statutory, equitable exception to the automatic stay, should be narrowly construed." *University Medical Ctr. v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992).

setting the interest rate payable on tax deficiencies at 4.19%, and directing the IRS to (i) recalculate the deficiency interest owed by Grace with respect to the 1998 income tax deficiency at the Plan rate of 4.19% during the post-petition period, which results in total deficiency interest of $3,434,608, rather than $4,980,800 as determined by the IRS; (ii) recalculate the amount of the refund owed to Grace as of September 12, 2014 with respect to the 1998 income tax deficiency, which results in a refund due in the amount of $3,654,459, rather than $2,027,545 as determined by the IRS (for a difference of $1,626,914); and (iii) issue a refund to the Reorganized Debtors for the additional $1,626,914 refund owed to Grace as of September 12, 2014, plus overpayment interest accrued at the overpayment rate specified in Tax Code § 6621 on such amount from September 12, 2014, through the date of payment by the IRS.

### NOTICE

21. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (ix) the Department of Treasury—Internal Revenue Service; (x) the United States Attorney for the District of Delaware; and (xi) The Attorney General of the United States, 950 Pennsylvania Ave N.W., Washington D.C. In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

**[remainder of page intentionally left blank]**

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached as Exhibit A to the Motion: (i) setting forth the relief requested in the Order; and (ii) granting such other relief as may be appropriate.

Dated: June 14, 2017

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors