IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) Hearing Date: August 24, 2017, at 11:00 a.m. |
| | ) Objection Deadline: August 7, 2017 at 4:00 p.m. |

**THIRTY-NINTH OMNIBUS OBJECTION TO CLAIMS FILED BY DAVID AND MICHELLE ARCHER (SUBSTANTIVE)**

On November 1, 2001, David and Michelle Archer each filed a single proof of claim in the above-captioned chapter 11 cases, which together assert damages claims of more than $3.4 million for alleged employment discrimination.[2] Mr. Archer's claim (Claim no. 602) was for $1,541,849.60, and Mrs. Archer's claim (Claim no. 604) was for $1,910,000.00 (collectively, the Archers' "Grace Bankruptcy Claims").[3] The Reorganized Debtors respectfully request the Court enter an order substantially in the form attached hereto as Exhibit A, disallowing the Archers' respective Grace Bankruptcy Claims on one or both of two different bases: (i) The Archers' Grace Bankruptcy Claims do not identify any basis on which Grace itself (or any other Grace entity) is liable to the Archers; and/or (ii) Judicial estoppel, because the Archers engaged in intentional misconduct by, among other things, (a) failing to properly disclose the filing of their Grace Bankruptcy Claims (which together sought in excess of $3.4 million) in their own

---

[1] The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

[2] Capitalized terms not defined in this objection (the "Objection") shall have the meaning ascribed to them in, as the case may be: (i) the *Declaration of Richard C. Finke in Support of the Reorganized Debtors' Thirty-Ninth Omnibus Objection to Claims Filed by David and Michelle Archer (Substantive)* (the "Finke Declaration"), filed contemporaneously herewith as Exhibit B and incorporated into this Objection by reference; or (ii) the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket no. 26368] (the "Plan").

[3] The Archers' Grace Bankruptcy Claims are attached to Finke Declaration as Exhibits 1 and 2, respectively.

personal bankruptcy cases (which they were required to do as a matter of law); and (b) failing to reconcile the difference between the more than $3.4 million claimed in their respective Grace Bankruptcy Claims and the *de minimis* value ($16,048) the Archers placed on the same claims in their 2003 bankruptcy proceeding (in which they eventually received "*no-asset/no-distribution*" chapter 7 discharges) when they disclosed their two civil cases (respectively, "Mr. Archer's Texas Case" and "Mrs. Archer's Texas Case," together, the "Texas Cases"), which each claimant filed separately in the United States District Court for the Northern District of Texas (the "Texas Cases District Court") against a non-Grace entity, Cryovac, Inc. ("Cryovac").[4] To compound matters, the Archers engaged in still other, significant and quite intentional misconduct during the late 1990's and early 2000's, including but not limited to their having failed to file income tax returns for at least six years prior to 2003. Mrs. Archer also apparently committed workers' compensation benefit fraud under Texas law by knowingly received workers' compensation benefits based upon her Cryovac employment while she was also working as a real estate agent, and having done so without having informed either Cryovac or the Texas Workers Compensation Commission of that material fact.

---

[4] The Reorganized Debtors also note that the Court may also disallow the Archers' Grace Bankruptcy Claims because neither they nor the causes of action in their concomitant Texas Cases (as defined in ¶ 4 herein) have any substantive merit. The Reorganized Debtors are prepared to brief these issues if necessary.

In addition, if this Court were to find that the Archers' Grace Bankruptcy Claims were indeed allowable, the Reorganized Debtors respectfully submit that, because her Texas Case is the sole basis for her Grace Bankruptcy Claim, Mrs. Archer would be entitled to a maximum of $16,048, because that is the amount she assigned to her Texas Case interest as part of her section 522(d) personal exemption. Mr. Archer would be entitled to $0. His Texas Case forms the sole basis of his Grace Bankruptcy Claim, but he did not seek to exempt his interest in his Texas Case under section 522. *Schwab v. Reilly*, 560 U.S. 770, 791 (2010). Mr. Archer retained no interest in his Texas Case claim under section 522. Therefore, if the Court were to determine that he had an allowable Grace Bankruptcy Claim, the maximum Allowed Amount of that claim would be $0. *Id.*

Finally, the Reorganized Debtors note that the Archers have themselves rendered judgment on their respective claims' lack of substantive merit by failing to have attempted at any time in the 13 years since they obtained their chapter 7 discharge in July 2004 to reopen the Texas Cases. Such failure also means that the Archers have effectively abandoned their Texas Cases against Cryovac. *See, e.g.*, Fed. R. Civ. P. 41(b) (involuntary dismissal for failure to prosecute).

The factual record in this matter is voluminous, comprising docketed items in the Archers' two Texas Cases and their five personal bankruptcy cases, with some documents reaching more than 100 pages in length. In the interest of judicial economy, the Reorganized Debtors have not yet filed their proposed findings of uncontested facts, which contains more than 100 separate exhibits. They are prepared to do so if the Archers respond to this Objection. The Reorganized Debtors are also prepared to file a memorandum in support of this Objection that more fully analyzes the bases on which this Court should disallow the Archers' Grace Bankruptcy Claims.

In support of this Objection, the Reorganized Debtors respectfully state as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[5] This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The predicates for this Claims Objection are section 502 of the Bankruptcy Code, Fed. R. Bankr. P. 3001, 3007 and 7055 and Del. Bankr. L.R. 3007-1 and 7055-1.

### FACTUAL PREDICATE

3. The Finke Declaration is incorporated herein by reference and contains the factual predicate supporting this Objection. Capitalized references in this Objection to supporting documents have the meaning ascribed to these documents in the Finke Declaration.

---

[5] The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Claims Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## THE OBJECTION

I. INTRODUCTION

4. The Court should enter the Order substantially in the form attached hereto as Exhibit A, disallowing the Archers' Grace Bankruptcy Claims in their entirety on one or both of two separate bases. First, the Archers' Grace Bankruptcy Claims are based upon the two Texas Cases in which Grace is neither named a defendant nor even mentioned in the complaints attached to the Archers' respective Grace Bankruptcy Claims—which means that neither of the Archers has carried their burden of proof that any Reorganized Debtor is liable to them. Second, the Archers intentionally engaged in misconduct in their own personal bankruptcy cases by, among other things, never having disclosed their Grace Bankruptcy Claims in any of their own personal bankruptcy cases, and thus are judicially stopped from recovering here on those Claims. The Archers engaged in still further, related intentional misconduct by claiming only a de minimis valuation ($16,048 for Mrs. Archer and "unknown" for Mr. Archer) for their Texas Cases claims in their Fourth Bankruptcy Case, in which they received their *"no-asset/no-distribution"* chapter 7 discharge with the more than $3.4 million aggregate amount claimed in their two Grace Bankruptcy Claims. Finally, not once in all the different chapter 13 plans they filed (and which in two instances actually confirmed) did they ever contemplate using either their Texas Cases or their Grace Bankruptcy Claims to pay their creditors.

II. THE ARCHERS BOTH FAILED TO CARRY THEIR RESPECTIVE BURDENS OF PROOF

5. The Grace Bankruptcy Claims, which the Archers filed in November 2001, are each based entirely upon the respective Texas Cases, which were filed, in the case of Mr. Archer, solely against Cryovac, an entity unrelated to any Reorganized Debtor, and in the case of Mrs. Archer, against Cryovac and Sealed Air (an affiliate of Cryovac unrelated to the Reorganized Debtors). Just as significantly, neither Archer has named any Reorganized Debtor as a defendant

in either of the Texas Cases. Therefore the Reorganized Debtors are not the proper parties against which the Archers should be asserting their claims.

6. Indeed, although Mr. Archer (represented in his Texas Case by John E. Wall) initially named Grace as a defendant in his Texas Case, he shortly thereafter admitted on the record—years prior to the Petition Date—that Grace was not the "correct" defendant. Mr. Archer then dismissed Grace from his Texas Case. In so doing, Mr. Archer admitted that Grace is not liable to him. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 502 n.6 (3d Cir. 2014) (internal citation omitted) ("A fact asserted in a pleading, which is both unequivocal and which would normally require evidentiary proof, constitutes a judicial admission").

7. It is quite significant that Mrs. Archer, who was also represented by Mr. Wall in her Texas Case, never named Grace as a defendant in that litigation, nor has she proffered any other evidence of Grace's liability to her. The affiliated entities, Cryovac and Sealed Air, are the only named defendants. It was well established at the very beginning of these chapter 11 cases that, on the Petition Date, Cryovac and Grace had been two separate entities since the March 1998 Cryovac Transaction described in the Reorganized Debtors' Chapter 11 Plan.[6] *Affidavit of David B. Siegel, Sr. V. Pres. & General Counsel/W.R. Grace & Co. In Support of First Day Motions*, dated April 2, 2001 [Docket no. 7], at ¶ 8; Chapter 11 Plan (defining the terms, "Cryovac" and "Sealed Air"); *see, also, e.g., In re W.R. Grace & Co.*, 446 B.R. 96, 108 (Bankr. D. Del. 2011) (discussing the doctrine of law of the case in the context of Grace's claims noticing program). Thus, Mrs. Archer's reference to "debtor/defendant" in her Response to the

---

[6] In any case, the Archers already knew of the Cryovac Transaction in 1998, three years before the Grace bankruptcy cases commenced, when they filed their motion for leave to file an amended complaint dropping "the two parties named as Defendants in Mr. Archer's Original Complaint, and add the correct party as a Defendant." (Finke Declaration at ¶ 12; *Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint* dated May 22, 1998, Mr. Archer's Texas Case Docket no. 6.)

Reorganized Debtors' Fifth Omnibus Objection is a transparently erroneous attempt to equate Grace and Cryovac, and should be disregarded as such.

8.  The Archers have therefore both failed to establish any liability to them on the part of any Reorganized Debtor. In other words, the Archers have both failed to carry their respective burdens of proof. This Court therefore may disallow the Archers' respective claims on this basis alone. *See, e.g., In re Allegheny Int'l*, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (internal citations omitted).

### III. THE COURT SHOULD DISALLOW THE ARCHERS' GRACE BANKRUPTCY CLAIMS DUE TO THEIR INTENTIONAL MISCONDUCT DURING THEIR TEXAS CASES AND THEIR PERSONAL BANKRUPTCY CASES

9.  The Court may also disallow the Archers' respective claims on an entirely separate basis—judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citations omitted) (The purpose of judicial estoppel is to "'protect the integrity of the judicial process' ... by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment'."); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314 (3d Cir. 2003) (When a debtor fails to comply with his or her duty to disclose a prepetition cause of action during the pendency of his or her bankruptcy and then later attempts to prosecute such a cause of action, courts in the Third Circuit will judicially estop that debtor from doing so). Both Mr. and Mrs. Archer engaged in intentional misconduct during the Texas Cases and during their own, personal bankruptcy cases by (among other actions) failing to: (i) obey the Texas Cases District Court's order to retain their Texas Cases trial counsel in their personal bankruptcy case; (ii) disclose the existence of the then-ongoing Texas Cases in their 2000 personal bankruptcy case commenced in 2000—despite having the same counsel who represented them in an earlier bankruptcy case in which they did disclose the Texas Cases; and (iii) disclose the existence and value of their Grace Bankruptcy Claims on their schedules and

statements during the course of three subsequent personal bankruptcy proceedings filed in 2003. Moreover, when the Archers did disclose the existence of the Texas Cases for purposes of receiving their "*no-asset/no distribution*" personal bankruptcy discharge, they took the position that the claims asserted in the Texas Cases had no (or little) value, directly contradicting the amounts listed in the Grace Bankruptcy Claims.[7] Such misconduct—without more—is more than sufficient grounds for this Court to disallow the Archers' Grace Bankruptcy Claims under the doctrine of judicial estoppel. *See, e.g., Love v. Tyson Foods, Inc.*, 677 F.3d 258, 263 (5th Cir. 2012) (affirming dismissal of suit based on judicial estoppel where chapter 13 debtor failed to include EEOC claim in bankruptcy schedules); *In re Residential Capital, LLC*, 2014 Lexis 342; 2014 WL 301974 (Bankr. S.D.N.Y. 2014), *aff'd*, 519 B.R. 606 (S.D.N.Y. 2014) ($100 million claim in Residential Capital bankruptcy was disallowed as a matter of judicial estoppel where claimant had not listed the cause of action in her prior chapter 13 case).

10. A review of the facts as they unfolded reveals the intentional nature of the the Archers' misconduct. On March 23, 1998, Mr. Archer commenced his Texas Case. On August 24, 1998, the Archers filed joint petitions, commencing a joint chapter 13 case, captioned *In re Archer*, Case no. 98-70895-rcm13 (Bankr. N.D. Tex. August 24, 1998) (the Archers' "First Bankruptcy Case"). The statement of financial affairs ("SOFA") filed in the Archers' First Bankruptcy Case disclosed Mr. Archer's Texas Case without asserting any value.[8] But Mr. Archer did not disclose his First Bankruptcy Case to the Texas Cases District Court. Moreover,

---

[7] In the 2003 bankruptcy proceeding culminating in their receiving a "*no-asset/no-distribution*" chapter 7 discharge in July 2004, the Archers estimated the value of Mrs. Archer's claim to be $16,048 and the value of Mr. Archer's claim as "unknown." By contrast, Mr. Archer's Grace Bankruptcy Claim is asserted in the amount of $1,541,849.60 and Ms. Archer's Grace Bankruptcy Claim is asserted in the amount of $1,910,000.00.

[8] The Archers' Schedule B did not list Mr. Archer's Texas Case, and Schedule C did not seek to exempt any interest in Mr. Archer's Texas Case.

the Archers never amended their First Bankruptcy Case's SOFA and schedules to reflect Mrs. Archer's Texas Case after she commenced that case in the Texas Cases District Court in January 14, 1999. Mrs. Archer also did not disclose her First Bankruptcy Case to the Texas Cases District Court. Indeed, the respective Texas Cases dockets do not mention the Archers' First Bankruptcy Case until June 11, 1999, more than sixteen months later, in an order wherein the District Court ordered the Archers to retain their Texas Cases trial counsel (Mr. Wall) in their First Bankruptcy Case pursuant to Bankruptcy Code section 327(e).

11.     On June 23, 2000, the Archers' First Bankruptcy Case was dismissed due to the Archers having materially defaulted on their chapter 13 plan payments. On August 28, 2000, the Archers' First Bankruptcy Case was closed—some three weeks after the Archers had already commenced, on August 7, 2000, a second joint chapter 13 case, captioned *In re Archer*, Case no. 00-70647-hdh13 (Bankr. N.D. Tex. August 7, 2000) (the Archers' "Second Bankruptcy Case"). The Second Bankruptcy Case's SOFA and schedules did not disclose either of the Archers' Texas Cases—even though they were represented by the same counsel as in their First Bankruptcy Case. Moreover, the Archers did not disclose the commencement of their Second Bankruptcy Case to the Texas Cases District Court, nor did they make any effort to retain their Texas Cases trial counsel, Mr. Wall, pursuant to section 327(e) in their Second Bankruptcy Case—thereby knowingly violating the Texas Cases District Court's June 11, 1999 order to ensure that Mr. Wall (or any other trial counsel) was so retained.

12.     In January 2001, just weeks before trial was scheduled to begin in the Archers' Texas Cases, Cryovac filed a motion, requesting that the court continue the Texas Cases because of the prejudicial effect of the Archers' Second Bankruptcy Case. Cryovac's motion was based in part on the Archers' above-described misconduct. The District Court promptly suspended

proceedings in the Texas Cases pending the outcome of the Archers' Second Bankruptcy Case, and in August 2001 administratively closed the Texas Cases.

13. On November 1, 2001, the Archers filed their Grace Bankruptcy Claims, claiming more than $3.4 million in total (Mr. Archer claimed $1,541,849.60, and Mrs. Archer claimed $1,910,000.00). Both claims were based solely on their respective Texas Cases. But the Archers did not seek to amend their Second Bankruptcy Case's SOFA and schedules to reflect their Grace Bankruptcy Claims. In November 2002, the Archers' Second Bankruptcy Case was dismissed on multiple grounds, including a failure to make required chapter 13 plan payments. The Archers made no move to reopen the Texas Cases nor to inform the Texas Cases District Court of their then-pending Grace Bankruptcy Claims.[9]

14. In 2003, the Archers filed three more, separate chapter 13 cases, in which they engaged in systematic obfuscation and other intentional misconduct, including never disclosing the existence and value of their Grace Bankruptcy Claims. Moreover, in two of those cases the Archers failed to voluntarily disclose their Texas Case claims, and in none of their five separate personal bankruptcy proceedings did the Archers ever propose to use potential proceeds from either their Texas Cases or their Grace Bankruptcy Claims to repay their creditors. Finally, in the 2003 bankruptcy proceeding culminating in their receiving a *"no-asset/no-distribution"* chapter 7 discharge in July 2004, the Archers estimated the value of Mrs. Archer's claim to be $16,048 and the value of Mr. Archer's claim as "unknown"—thereby directly contradicting the value they assigned to their Grace Bankruptcy Claims in November 2001.

---

[9] In fact, the Archers never again tried to open their Texas Cases, not even in the thirteen years since they received their July 2004 *"no-asset/no-distribution"* chapter 7 discharge—thereby effectively abandoning their Texas Cases. *See* n. 4.

15. Finally, the Archers committed other acts of intentional misconduct. First, the trustee in the Archers' Fifth Bankruptcy Case—which was filed while their Fourth Bankruptcy Case was still pending (a fact not disclosed in the fifth case)—determined that the Archers had apparently not filed tax returns over a six-year period. Second, the workers' compensation file of the Texas Workers Compensation Commission included a copy of an advertisement from the August 13, 1998 edition of the *Iowa Park Leader*, a local newspaper published in Iowa Park, Texas, in which Michelle Archer was the real estate agent representing the seller of certain residential property (and not having informed either Cryovac or the Texas Workers Compensation Commission of that fact)—this at a time when Mrs. Archer was still receiving workers' compensation benefits based upon her Cryovac employment.

16. As discussed above, such intentional misconduct is more than sufficient for this Court to disallow the Archers' Grace Bankruptcy Claims as a matter of judicial estoppel. Indeed, the Archers' cagy and opportunistic—and intentional—behavior is the very epitome of the type of "fast and loose" conduct that the doctrine of judicial estoppel is designed to foreclose. *Krystal v. GMC*, 337 F.3d at 321.

17. Moreover, since receiving their "*no-asset/no-distribution*" chapter 7 discharge in July 2004, the Archers have never sought to reopen their Texas Cases, despite there being no legal impediment to their doing so. Such a failure to prosecute those cases means that the Archers have effectively abandoned their Texas Cases claims. The Court should also conclude that such abandonment of their Texas Cases claims constitutes yet a further admission by the Archers that their claims (Texas Cases and Grace Bankruptcy Claims alike) are without any substantive merit. *See, e.g.*, Fed. R. Civ. P. 41. Such an admission, along with their failure to provide any evidence that Grace was the proper party against which to assert their Bankruptcy

Claims and their well-documented and incontrovertible misconduct in the Texas Cases and in their five separate bankruptcy cases, together present multiple grounds upon which this Court should disallow the Archers' Grace Bankruptcy Claims in their entirety.

18. Based upon the foregoing, as documented in the Finke Declaration, the Court should disallow the Archers' Grace Bankruptcy Claims in their entirety.

### **RELIEF REQUESTED**

19. The Reorganized Debtors respectfully request that the Court enter the Order attached hereto as Exhibit A, disallowing the Archers' Grace Bankruptcy Claims based upon the following proposed findings of fact and conclusions of law:

- *Proposed Findings of Fact*:

  - Mr. Archer admitted in his Texas Case that Grace-Conn. was not the proper defendant, thereby failing to carry his burden of proof in this contested matter that he has a claim against the Reorganized Debtors. (Finke Declaration ¶¶ 3-4, 6-8; Mr. Archer's Grace Bankruptcy Claim; Mr. Archer's Response.);

  - Mrs. Archer never named any Grace entity as a defendant in her Texas Case, and thus she has never articulated any basis for Grace's liability in this contested matter. (Finke Declaration ¶¶ 5-8; Mrs. Archer's Grace Bankruptcy Claim; Mrs. Archer's Response.);

  - The Archers intentionally failed to disclose their Grace Bankruptcy Claims in any of the three joint, personal bankruptcy cases they filed after November 2, 2001 (the Third, Fourth and Fifth Bankruptcy Cases), and intentionally failed to amend their schedules and statements in their Second Bankruptcy Case to disclose their Grace Bankruptcy Claims. (Finke Declaration ¶¶ 28, 30, 31, 33; Second Bankruptcy Case Docket; Third Bankruptcy Case Docket; Fourth Bankruptcy Case Docket; Fifth Bankruptcy Case Docket.);

  - The Archers intentionally failed to disclose the existence of their Texas Cases in their Second Bankruptcy Case when they filed their initial Schedules A-J and Statement of Financial Affairs, and only later amended their *Schedule B (Personal Property)* and their *Statement of Financial Affairs* to disclose the Texas Cases after the Texas Cases District Court entered an order continuing the Texas Cases indefinitely due to the Archers' failure disclose to that court their Second Bankruptcy Case and their concomitant failure to disclose the existence of the Texas Cases in the Second Bankruptcy Case. (Finke Declaration ¶ 28; Second Bankruptcy Case Docket.);

- The Archers intentionally failed to disclose the existence of their Texas Cases in each of their Third and Fifth Bankruptcy Cases. (Finke Declaration ¶¶ 30, 33; Third Bankruptcy Case Docket; Fifth Bankruptcy Case Docket.);

- The Archers intentionally did not disclose the value they asserted for their respective Grace Bankruptcy Claims (collectively exceeding $3.4 million) in any of their Second, Third, Fourth or Fifth Bankruptcy Cases. (Finke Declaration ¶¶ 28, 30, 31, 33; Second Bankruptcy Case Docket; Third Bankruptcy Case Docket; Fourth Bankruptcy Case Docket; Fifth Bankruptcy Case Docket.);

- The Archers intentionally did not take their contingent claims in the Texas Cases or their Grace Bankruptcy Claims into account in any proposed or confirmed chapter 13 plan in any of their five joint, personal bankruptcy cases, each of which was filed after Mr. Archer commenced his Texas Case. (Finke Declaration ¶¶ 17, 21, 30, 31, 33; First Bankruptcy Case Docket; Second Bankruptcy Case Docket; Third Bankruptcy Case Docket; Fourth Bankruptcy Case Docket; Fifth Bankruptcy Case Docket.);

- In their Fourth Bankruptcy Case, which culminated in the Archers receiving a "*no-asset/no-distribution*" chapter 7 discharge in July 2004, the Archers estimated the value of Mrs. Archer's claim to be $16,048 and the value of Mr. Archer's claim as "unknown"—the Archers never reconciled this de minimis valuation with the more than $3.4 million claimed in their two Grace Bankruptcy Claims. (Finke Declaration at ¶ 31; Fourth Bankruptcy Case Docket nos. 6-7 (Schedule B, Schedule C, and Statement of Financial Affairs).);

- The Archers' Fourth Bankruptcy Case chapter 7 trustee was on notice of the existence of the Texas Cases. (Finke Declaration at ¶¶ 35-37; Fourth Bankruptcy Case Docket nos. 6-7 (Schedule B, Schedule C, and Statement of Financial Affairs).);

- The Archers did not file tax returns for at least a six-year period prior to 2003. (Finke Declaration at ¶ 34; Fifth Bankruptcy Case Docket no. 8 (motion to dismiss specifically referred to the Archers' failure to file tax returns as a basis for dismissal with prejudice); Fifth Bankruptcy Case Docket no. 13 (Fifth Bankruptcy Case dismissed with prejudice).); and

- Mrs. Archer was employed as a real estate agent while she was receiving workers compensation benefits, a material fact that she did not disclose to the Texas Workers Compensation Commission. (Finke Declaration at ¶ 13, n. 6; (Copy of Extract from p. 13, Iowa Park Leader, dated August 13, 1998 (establishing that Mrs. Archer was employed by an entity other than Cryovac while receiving workers' compensation benefits from her employment at Cryovac).); and

- ***Proposed Conclusions of Law***:

- Mr. Archer failed to assert a basis for any liability on the part of any Grace entity, thereby failing to carry his burden of proof;

- Mrs. Archer failed to assert a basis for any liability on the part of any Grace entity, thereby failing to carry her burden of proof;

- The Archers are judicially estopped from prosecuting their Grace Bankruptcy Claims due to their intentional misconduct during the Texas Cases and their five, joint, personal bankruptcy cases in intentionally failing to fulfill their duty to fully disclose their financial condition in their five, joint, personal bankruptcy cases; and

- Claims nos. 602 and 604 are disallowed in their entirety.

### PROCEDURES FOR RESPONDING TO THE CLAIMS OBJECTION

20. To contest any of the objections set forth in this Claims Objection, Claimants must file and serve a written response to this Claims Objection (a "Response") so that it is received no later than 4:00 p.m. ET, on August 7, 2017 (the "Response Deadline"). The Response (or each Response, if more than one is filed) must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") at the following address:

> 824 Market Street
> Wilmington, Delaware 19801

21. Each such Response must also be served upon the following co-counsel to the Reorganized Debtors on or before the Response Deadline:

> THE LAW OFFICES OF ROGER HIGGINS, LLC
> Roger J. Higgins
> 1 North Bishop Street
> Suite 14
> Chicago, IL 60607-1823
>
> PACHULSKI STANG ZIEHL & JONES LLP
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill (Bar No. 4042)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705

22.     Every Response to this Claims Objection must contain, at a minimum, the following:

a.  A caption setting forth the name of the Court, the name of the Reorganized Debtors, the case number, and the title of the Claims Objection to which the Response is directed;

b.  The name of the Claimant, its claim number, and a description of the basis for the amount of the claim;

c.  The specific factual basis and supporting legal argument upon which the party will rely in opposing the Claims Objection;

d.  Any supporting documentation, to the extent it was not included with the proof of claim previously filed with the Clerk or Claims Agent, upon which the party will rely to support the basis for and amounts asserted in the proof of claim;

e.  The name, address, telephone number, and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Reorganized Debtors should communicate with respect to the claim or the objection thereto, and who possesses authority to reconcile, settle, or otherwise resolve the objection to the Disputed Claim on behalf of the Claimant.

23.     If a Claimant fails to file and serve a timely Response (or Responses), the Reorganized Debtors may present to the Court an appropriate order disallowing and expunging that Claimant's claim or claims without further notice to the Claimant or a hearing.

### REPLY TO RESPONSE

24.     The Reorganized Debtors reserve the right to, at their option, file and serve one or more replies to Claimants' Responses, if any.

### SEPARATE CONTESTED MATTER

25.     If a Claimant files a Response to this Objection, and the Claimant and the Reorganized Debtors are unable to resolve that Response, the corresponding claim and the objection by the Reorganized Debtors thereto asserted in this Claims Objection shall constitute a separate contested matter as contemplated by Fed. R. Bankr. P. 9014. Any order entered by the

Court regarding an objection asserted in the Claims Objection shall be deemed a separate order with respect to each such claim.

## RESERVATION OF RIGHTS

26. The Reorganized Debtors hereby reserve the right to object in the future to any of the Claims. The Reorganized Debtors further reserve the right to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims. Separate notice and hearing will be scheduled for any such objection.

## NO PREVIOUS OBJECTION

27. Other than the Fifth Omnibus Objection (as discussed in the Finke Declaration), no previous objection to these Claims has been filed, nor has any other motion for the relief sought herein been made to this or any other court.

## NOTICE

28. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (ix) Mr. and Mrs. Archer;[10] (x) Shawn K. Brown, chapter 7 trustee in Case no. 03-70335; (xi) the United States Trustee for Region Six, Dallas Texas; (xii) Monte J. White, Monte J. White & Associates, P.C.; (xiii) Holly B. Guelich, The Law Office of Holly B. Guelich; and (xiv) John E. Wall, Jr., The Law Office of

---

[10] Mr. and Mrs. Archer were served a copy of this Objection at each address available on the dockets of their Texas Cases and their personal bankruptcy cases in addition to the address shown on their respective Grace Bankruptcy Claims and their respective Responses to the Reorganized Debtors' Fifth Omnibus Objection.

John E. Wall, Jr. In light of the nature of the relief requested, the Reorganized Debtors submit that no further notice is required.

WHEREFORE, the Reorganized Debtors request the Court enter the Order in substantially the form attached hereto as <u>Exhibit A</u>: (i) disallowing the Archers' Grace Bankruptcy Claims; and (ii) granting such other relief as may be appropriate.

Dated: July 17, 2017

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
David E. Grassmick
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
Phone: (312) 666-0431

and

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley, P.C.
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Phone: (302) 652-4100
Fax: (302) 652-4400

Co-Counsel for the Reorganized Debtors