1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                          :

5                                    :    Chapter 11

6    W.R. GRACE & COULD., et al.,  :    Case No. 01-01139 (KG)

7         Reorganized Debtors.      :

8    _____:

9

10

11

12                              United States Bankruptcy Court

13                              824 North Market Street

14                              Wilmington, Delaware

15                              October 13, 2017

16                              11:01 AM - 11:31 AM

17

18

19

20

21    B E F O R E :

22    HON KEVIN GROSS

23    U.S. BANKRUPTCY JUDGE

24

25    ECR OPERATOR:  GINGER MACE

1   HEARING re Debtors' Objection to the Proof of Claim Filed By

2   Norfolk Southern Railway [Docket No. 22553; filed July 20,

3   2009]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2    THE LAW OFFICES OF ROGER HIGGINS, LLC

3         Attorney for the Reorganized Debtor

4

5    BY: ROGER HIGGINS, ESQ.

6

7    PACHULSKI STAANG ZIEHL & JONES, LLP

8         Attorney for the Reorganized Debtors

9

10   BY: JAMES O'NEIL, ESQ.

11

12   POTTER ANDERSON & CORROON, LLP

13        Attorney for Norfolk Southern Railway Company

14

15   BY: DAVID BALDWIN, ESQ.

16        D. RYAN SLAUGH, ESQ.

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2              CLERK:  Please rise.
 3              THE COURT:  Good morning, everyone.  Thank you.
 4    You may be seated.
 5              MR. BALDWIN:  Good morning, Your Honor.
 6              THE COURT:  It's good to see everyone.
 7              MR. O'NEIL:  Good morning, Your Honor.
 8              THE COURT:  And it's good to see you, Mr. O'Neil.
 9              MR. O'NEIL:  Good to see you again, Your Honor.
10              THE COURT:  Yes.
11              MR. O'NEIL:  Your Honor, we are here today on a
12    scheduling conference with respect to the Norfolk Southern
13    claim.
14              THE COURT:  Yes.
15              MR. O'NEIL:  Your Honor is by now familiar with
16    the essence of the dispute.
17              THE COURT:  Yes.
18              MR. O'NEIL:  The parties are going to move
19    forward, each side having withdrawn their motion.
20              THE COURT:  Withdrawn, yes.  What was -- I
21    shouldn't ask what was behind it, but is there anything that
22    you wanted to tell me about that?
23              MR. O'NEIL:  No.
24              THE COURT:  Okay.  I accept your answer, Mr.
25    O'Neil, completely.
```

1          MR. O'NEIL:  We're moving on, as they say.

2          THE COURT:  Yes.

3          MR. O'NEIL:  Your Honor, we have been working on a

4     scheduling order with Norfolk Southern.

5          THE COURT:  Right.

6          MR. O'NEIL:  And we have made some progress.  We -

7     - we actually also just used the last few minutes in one of

8     your conference rooms and made some more progress.

9          THE COURT:  Do you need more time to do that, to

10    talk?

11         MR. O'NEIL:  I don't think so.

12         MR. BALDWIN:  No, I don't think so.  I think we're

13    --

14         THE COURT:  Okay.

15         MR. O'NEIL:  I think we've narrowed the issues.

16         THE COURT:  Okay.

17         MR. O'NEIL:  And I think now we need your help.

18         THE COURT:  Okay.  Good.

19         MR. O'NEIL:  And so there are a couple of issues

20    that we're -- that are unresolved, and we just wanted to go

21    through them with Your Honor to get Your Honor's input.

22         THE COURT:  That would be fine, Mr. O'Neil,

23    certainly.

24         MR. O'NEIL:  All right.  And I don't know -- Mr. -

25    - Mr. Baldwin, would you like to go first?

1          MR. BALDWIN:  Oh, I'd love to.

2          MR. O'NEIL:  Okay.

3          MR. BALDWIN:  Thank you.

4          THE COURT:  Mr. Baldwin, good to see you again.

5          MR. BALDWIN:  Good to see you, Your Honor.

6          THE COURT:  Yes.

7          MR. BALDWIN:  And I will tell you that we withdrew

8   ours because they withdrew theirs.

9          THE COURT:  Okay.

10          MR. BALDWIN:  And they -- they asked us to, so --

11          THE COURT:  All right.

12          MR. BALDWIN:  -- I don't understand it either but

13   -- we're down to a couple of issues.  The one issue is

14   mediation.  Norfolk Southern suggests that the schedule not

15   be delayed, but that there be mediation upfront to avoid

16   expense of going through the schedule so that if we can get

17   that done sooner rather than later, so we would -- we would

18   -- our suggestion is for a mediator on or before -- selected

19   on or before November 3, with a pretty short mediation time.

20          The -- Grace's suggestion is to have the mediator

21   after -- on or before July 16th, 2018, after -- in other

22   words, after most of the discovery and everything's

23   completed.

24          THE COURT:  Help me again with that, Mr. Baldwin,

25   that the mediation would occur by July?

1          MR. BALDWIN:  Of 2018.

2          THE COURT:  Okay.

3          MR. BALDWIN:  Our -- basically, we want it

4    upfront.  They want it after the discovery's done.  Do you

5    want to say anything?

6          THE COURT:  Oh, I see.  I see.  I'm sorry.  I --

7    for some reason, I thought based upon the motions for

8    summary judgment, discovery was finished, but that is not

9    the case.

10          MR. BALDWIN:  No.  The motions jumped the gun on

11    discovery as far as --

12          THE COURT:  Okay.

13          MR. BALDWIN:  -- we were concerned.

14          THE COURT:  Okay.  All right.

15          MR. BALDWIN:  There hadn't been any discovery --

16          THE COURT:  Good.

17          MR. BALDWIN:  -- except informal sharing of the

18    lower court record and so forth.

19          THE COURT:  Okay.  And so Grace wants mediation

20    after discovery, and you want the mediation before

21    discovery.

22          MR. BALDWIN:  Yeah.  And there's really nothing

23    I've -- I think -- I think I need to describe about that.

24    Do -- do you want to say anything about that?

25          MR. HIGGINS:  Sure.

1            THE COURT:  Mr. Higgins, welcome back.

2            MR. HIGGINS:  Thank you, Your Honor.

3            I suppose I'm going to walk back Mr. O'Neil's

4      emphatic no to suggest that there is sort of a context here,

5      which is Grace sought in the early round of summary judgment

6      to try and put this thing away quickly.

7            THE COURT:  Yes.

8            MR. HIGGINS:  Not necessarily quietly but

9      certainly quickly.  And for various reasons that didn't

10     quite work out, and so here we are.  And what's become

11     abundantly clear is that Norfolk Southern as the Plaintiff,

12     as the Claimant, has the burden of proof.  They got the

13     burden of production.  They got the final burden of

14     persuasion.

15           And interesting, because of the nature of the

16     incidents, they got most all the information.  The accidents

17     happened, the alleged accidents happened, on Norfolk

18     Southern owed railcars attached to Norfolk Southern trains,

19     consists, at Norfolk Southern facilities, none of which

20     Grace has any information about.

21           And as sort of one example that really brings out

22     sort of the lack of -- Grace's lack of information about

23     this -- this -- these incidents and that is when you look at

24     the settlement agreement between Norfolk Southern and Mr.

25     Kirkland --

1              THE COURT:  Yes.

2              MR. HIGGINS:  -- it mentions Conrail and CSX.

3     Now, we haven't a clue why Conrail and CSX are mentioned.

4     Did they settle with Norfolk Southern?  We don't know.  But

5     that could be very material in mediation.  Similarly, J.M.

6     Huber was listed as the entity that loaded the car, the

7     railcar, at the first -- on the first incident.  What was

8     their role in this, guys?  Did they settle with Norfolk

9     Southern?  Again, we don't know.

10             And I use that -- those as examples because, you

11    know, until we know the answers to those questions and a

12    whole bunch of other questions, I don't see how there can be

13    meaningful mediation here.

14             And Grace, you know, in these Chapter 11 cases --

15    and god knows they've gone on long enough, and I had a

16    little more hair and a lot less gray hair when they started

17    -- is that Grace has gone through scores and scores of

18    mediations and in -- you know, both asbestos and non-

19    asbestos, and in the course of doing that, you know, it

20    became down to the point of, you know, let there be no

21    mediation before it's time.

22             There has to be the requisite information.  I'm

23    going to use that term advisedly, not, you know, the

24    colloquial term.  There's got to be enough information

25    available to both the parties to be able to fairly value

1    what the settlement, a settlement should be, and it's -- at

2    this point, given where I believe Norfolk Southern's coming

3    from and where I certainly know where my client's coming

4    from, we ain't there yet.

5              And so any mediation now is not likely to be

6    terribly productive.  That same mediation later, when

7    there's been some discovery and both parties have shown

8    their cards and they're on the table, could be very

9    fruitful.  Thank you.

10             THE COURT:  All right, Mr. Higgins.  And, you

11   know, mediation, it's really -- it's a very fine point when

12   to take -- when it should take place because I -- and I

13   understand the parties' positions.  On the one hand, to

14   spend a lot of money in discovery before the mediation might

15   be unnecessary.  And -- and, yet, to mediate without

16   discovery also means that the parties don't have necessarily

17   sort of equal information upon which to -- to settle the

18   case.

19             So, Mr. Baldwin, your position is you'd like to go

20   to mediation first and then discovery.

21             MR. BALDWIN:  Yes, Your Honor, and we don't -- we

22   think that would be the cheapest.

23             And with respect to the couple of items of

24   information that -- that were mentioned by Mr. Higgins,

25   they've never asked us about any of these points, and the

1    case has been going on for over 10 years.  I forget, you

2    know -- I think Judge Silverstein first was handling the

3    case and then --

4              THE COURT:  My goodness.

5              MR. BALDWIN:  -- Terry Brown-Edwards was handling

6    the case.  I mean, it's been -- it's been around for a long

7    time, and they've never asked us, you know, what about these

8    other parties that are mentioned in the -- in the settlement

9    document.

10             I don't know why because if that's what they need

11   to know in order to mediate, we would tell them.  I don't

12   know the answer to that, but they're full of surprises, so

13   whatever -- I'd like to start putting our cards on the

14   table, but whatever the Court feels is appropriate.

15             THE COURT:  Well, let me ask Mr. Higgins this

16   question.  Why not try mediation with someone, and if -- if

17   it's -- if you strike, if lightning strikes and you settle

18   the case, fine.  And if you don't, then you say, "Let us

19   come back when we've gotten more discovery."

20             MR. HIGGINS:  Your Honor, I -- I think that -- I

21   mean, that is certainly a way to go.  I will say -- I do

22   want to address a point that --

23             THE COURT:  Yes.

24             MR. HIGGINS:  -- Mr. Baldwin made, which is, you

25   know, gee, Grace never asked any of this -- this before.

```
 1    But that's to completely ignore the legal posture of this

 2    case, which I think Your Honor is more than well acquainted

 3    with, which is there was a trial in Georgia State Court in

 4    1999 --

 5              THE COURT:  Yes.

 6              MR. HIGGINS:  -- and 2000.  And Norfolk Southern

 7    had the perfect opportunity at that point to in-plea Grace

 8    and chose not to, and it's, you know, a little bit of tough

 9    luck that, you know, Grace's bankruptcy, you know,

10    intervened, and they filed a proof of claim.

11              I mean, this case has been around for -- has been

12    around for a long time.  Norfolk Southern could have moved

13    this along.  This was one where I believe that this is the

14    only one of about 12,000 non-asbestos claims where we're

15    even talking about going to trial.

16              THE COURT:  Okay.

17              MR. HIGGINS:  Okay.  This is about the last one

18    there is.  There's only three or four more claims, and, you

19    know, with a little luck, you'll never have to deal with

20    them.  And so this is the one that got left to the -- at the

21    bottom of the bucket.

22              So now we are looking at -- and, again, you know,

23    we wanted to cut this short early and just, you know, for

24    various reasons that wasn't going to quite happen, and we

25    didn't want to burden the Court with that.
```

1          But now is time for the parties to put their cards

2    on the table, and that's what we're asking to have happen.

3    Now, if you want to swap the baby, I would have to talk to

4    my client about that, but, you know, I think at the end of

5    the day, it would be more productive for the mediator for --

6    for -- and for both the parties if all the cards were on the

7    table in terms of the information available, and that way

8    everybody could have a very clear eye as to where this

9    thing's going to settle.  Thank you.

10          THE COURT:  Well, here's what I think.  I think

11   you can get to mediation fairly quickly, and there ought to

12   be a way to share some information that you -- that you

13   need, I think, Mr. Higgins, sort of initial information that

14   you need quickly.  You know, what these parties meant in the

15   settlement agreement, why they're in the settlement

16   agreement, was there a settlement with them, and the amount

17   of the settlements.  If -- if that won't be provided on a

18   voluntary basis, then there doesn't -- then it doesn't make

19   sense to go to mediation.  I -- I understand what you're

20   saying.

21          But I think that's information that could be

22   gathered quickly, could be provided by Norfolk Southern.

23   You could get to mediation -- this is the middle of October,

24   let's say.  I bet you could be in mediation by early

25   December at the latest for a day, and then you'll know

1    whether settlement discussions will work.

2              MR. HIGGINS:  Your Honor, perhaps I -- I -- and I

3    -- and I appreciate what you're suggesting here, and I think

4    that might very well work.  What I would ask is that, you

5    know, we -- you know, we have the -- the rules -- or with

6    requests for admission and interrogatories and all the rest

7    of that, and those have their own process.

8              THE COURT:  Yes.

9              MR. HIGGINS:  And -- and I would seek --

10             THE COURT:  As a formal process.

11             MR. HIGGINS:  As a formal -- exactly, Your Honor.

12   As a formal process, and what I would suggest is, you know,

13   if we could come up with a list of questions, and I'm not

14   even sure which ones we would ask at this point, so I would

15   want to go back and think about it for a spell, but if we

16   could ask a list of questions like that, I think we might be

17   able to make some progress, and I think by way of example

18   how we could be flexible is we've invited Norfolk Southern

19   down, and I think November 14th is the date that we've

20   invited Norfolk Southern to visit the Grace plant under the

21   auspices of Rule 408 --

22             THE COURT:  Yes.

23             MR. HIGGINS:  -- you know, settlement in -- in an

24   attempt to, from our perspective, put some cards on -- as

25   many cards on the table as we can at that point that are

1    appropriate, and so if -- if Norfolk Southern can do

2    something similar and ask -- and answer some of the

3    questions that we've got, I think maybe we could -- maybe we

4    could do something like that.

5              And one of the thoughts that we've got is perhaps

6    the mediation take place down there.  The mediator gets to

7    see what this place look like.  We'd invite Your Honor down,

8    but, you know, you're a busy man and those things don't

9    often work, but that might be something worthwhile to

10   consider.

11             THE COURT:  Mr. Baldwin, is that something that

12   you would consider?

13             MR. BALDWIN:  Yeah.  Yes, Your Honor.  And I think

14   you'd probably enjoy getting -- going down to Aiken, South

15   Carolina.  I'm --

16             THE COURT:  I wish I could.

17             MR. BALDWIN:  You know, I'm -- it's November 14th.

18   I'm not sure what the local accommodations are for any of

19   us, but --

20             THE COURT:  They'll find a place.  They'll find a

21   place to put you up I'm sure.

22             MR. BALDWIN:  Maybe in a caboose, but the -- you

23   know, the devil's in the details.  If -- if they give us a

24   reasonably tight kind of list about like the settlements and

25   so forth, I -- I don't see why that couldn't be done

1   quickly.

2          You know, we're going to have a -- there's a

3   bigger storm brewing where there's some threat of

4   relitigating the underlying case, and, well, I've said we're

5   not doing that without the court telling us to do that.

6   We're going to concede the -- that -- that the court in

7   Georgia found us guilty and under whatever standard.  I

8   forget if it's a negligence or a FELA standard.  But

9   whatever they -- what --

10          THE COURT:  Yeah.

11          MR. BALDWIN:  -- we're not contesting that, and so

12   we don't think they need to relitigate whether we were

13   negligent or not because that's already been found by the

14   court.

15          But if they want to talk to us about how come

16   these other names are in the settlement, I don't know that,

17   but we'll -- we'll find out.  That -- that could be easily

18   done, and so the devil's going to be in the details.  If the

19   list is too big, the process will fail.

20          THE COURT:  Well, let's do this then.  I would

21   suggest that -- that Grace submit a list of questions to

22   Norfolk Southern.  If Norfolk Southern thinks that list is

23   too long, obviously, you'll talk about -- you'll talk to

24   Grace about it, but if at that point, you -- you're not in

25   agreement, you -- you can get me on the telephone or you can

1    come back here, and we can work through it.  And then

2    perhaps you can mediate November 14th if you can agree upon

3    a mediator to -- to go down to South Carolina to the Grace

4    facility.  And it may save a lot of time and a lot of money

5    to try to mediate it early.  And if it doesn't, then you'll

6    go through discovery and we'll have -- we'll have perhaps

7    another mediation later or not.  We'll see about that.

8            But -- but I sort of agree with Norfolk Southern

9    that it may make sense to have the mediation early on with a

10   little more information provided to Grace.

11           MR. HIGGINS:  I think, Your Honor, under these

12   circumstances, Grace would be perfectly happy to do the

13   mediation.

14           THE COURT:  Okay.  All right.  All right.  So that

15   -- that resolved that issue.

16           Tell me what else we have, Mr. Baldwin.

17           MR. BALDWIN:  We've resolved most of the other

18   issues.  The -- we have proposed an hour limit on

19   depositions just to, you know, indirectly -- a 40-hour limit

20   to indirectly limit the scope of deposition discovery, and

21   they're not agreeable to that.

22           We haven't done our initial disclosures yet on

23   either side, and they're -- they're baked in to come 20 days

24   after this, but I'm thinking we would probably just be

25   suggesting about -- we had the two affiants who we used in

1    the brief, and so they're probably going to be no more than

2    three or four witnesses from Norfolk Southern, especially if

3    -- if we can take care of the questions they have about the

4    settlement information and so on, so we -- you know, we

5    don't propose to relitigate everything, but we -- we do

6    think there needs to be a limit so that the discovery

7    expense remains proportional, and proportionality is all the

8    rage now.

9              THE COURT:  Yes.  And, of course, the federal

10   rules provide for one day of deposition, right.

11             MR. BALDWIN:  Well, they provide for a seven-hour

12   day.

13             THE COURT:  Right.

14             MR. BALDWIN:  Yes.  So, you know, in -- in effect,

15   this would be a six -- about a six --

16             THE COURT:  Are you talking about 40 hours per

17   side?

18             MR. BALDWIN:  Yes, Your Honor.

19             THE COURT:  Oh, okay.  Okay.  Mr. Higgins, tell me

20   -- tell me if that's -- why that may not be enough time.

21             MR. HIGGINS:  Well, Your Honor, the answer is we

22   don't know.

23             THE COURT:  Okay.

24             MR. HIGGINS:  And -- and the reason for it is we

25   haven't done the Rule 26 disclosures.

1          THE COURT:  Right.

2          MR. HIGGINS:  So we don't quite know who they're

3    going to proffer as their witnesses.  We don't know who

4    their 30(b)(6) witness is.  We don't know whether they're

5    going to use experts, if any.

6          THE COURT:  Right.

7          MR. HIGGINS:  I mean, that's -- that right there,

8    you know, and if there's two or three or four or five fact

9    witnesses that come up that -- that turn out to be key, I

10   mean, we just don't know at this point.  And, look, we're --

11   we're -- we're more than willing -- you know, obviously,

12   there's the seven-hour rule per witness, so, you know, if

13   there's more than five to six witnesses -- you know, we just

14   don't know the answer to that question, but we could easily

15   see where there could be, not that we would want to take

16   that many depositions.

17         THE COURT:  No, I'm sure.

18         MR. HIGGINS:  I mean, if it's only -- if it's only

19   two, and they tell us, gee, we got the two guys and there's

20   no expert and perhaps there's one more we want to take a

21   deposition from, then, of course, it's not a problem.  But

22   if it turns out differently, and we just don't know.  I

23   mean, that's the only point is if we'd done the Rule 26

24   disclosures, I think we could have a meaningful discussion

25   about this, but we haven't yet.  So, you know --

1          THE COURT:  I understand where you are.  Mr. -- is

2     it --

3          MR. BALDWIN:  It's normal, Your Honor, that nobody

4     knows the scope of the case at the beginning.

5          THE COURT:  Right.

6          MR. BALDWIN:  But all the judges in this district

7     set a limit, and parties come back to -- so that the

8     discovery doesn't go crazy, and the parties come back to

9     them.  I would think that this would be --

10          THE COURT:  And if it doesn't work, they can --

11     you can come back and ask for more.

12          MR. BALDWIN:  Yes.  And if -- and this would be --

13     I would say that we didn't intend this to cover experts.

14     Nobody really knows if they're going to have an expert, but

15     I would say that experts with be excluded from this.

16          THE COURT:  I think that -- does it say "fact

17     witnesses?"

18          MR. BALDWIN:  It doesn't, but we will make it say

19     "fact witnesses," Your Honor.

20          THE COURT:  All right.  Let's do that.  Let's do

21     that.  And if it turns out that there -- that the case is

22     far more complicated than you thought.  You need more --

23     more depositions, you certainly can approach me and ask me

24     for more -- for more time.

25          MR. O'NEIL:  Your Honor, we will certainly do

1    that.  Our concern just was -- and it's not -- these

2    limitations don't appear in every order that gets entered --

3                THE COURT:  No, that's right.  They don't.

4                MR. O'NEIL:  But our concern was just not knowing,

5    we didn't want to kind of, you know, hamstring ourselves,

6    and as Mr. Higgins said, if it's one or two witnesses, we're

7    going to be -- we'll be well below the -- the 40.  That's

8    not going to be a problem.

9                THE COURT:  That's right.

10               MR. O'NEIL:  But, you know, if Your Honor will

11   allow us certainly to reserve the right to come back and ask

12   for more if needed, we just don't want to be hamstrung by

13   somebody, you know, with a stopwatch saying, "Okay.  Your

14   time is up, and you can't -- "

15               THE COURT:  That's right.

16               MR. O'NEIL:  " -- you can't depose our 15

17   witnesses."  Actually, but if there was -- I mean, if that

18   was the case, I'm sure the Court would give us relief

19   anyway.

20               THE COURT:  And I understand you're at somewhat of

21   a disadvantage at thank you moment because --

22               MR. O'NEIL:  Yeah, we just don't know.

23               THE COURT:  -- you don't have --

24               MR. O'NEIL:  And so that was the only -- that was

25   the only objection on this point.

1              THE COURT:  All right.  So we'll make it 40 hours

2     for fact witnesses without prejudice to the parties

3     returning to the Court for more time.  How about that?  If

4     we add that language?

5              MR. BALDWIN:  Yes.  And we're equally

6     disadvantaged, Your Honor, so it's --

7              THE COURT:  That's right.

8              MR. BALDWIN:  -- you know, we're -- if -- if we're

9     in that same boat, we might be coming back too.

10             THE COURT:  That's right.  Exactly, Mr. Baldwin.

11             MR. BALDWIN:  The -- I think there's only one more

12    issue and that we haven't resolved, and it kind of goes to

13    Mr. Higgins' allusions to burden of proof and so on.  The --

14    the standard of -- in most of the scheduling orders that I

15    do that are usually in the district court because thankfully

16    we don't have that many in the bankruptcy court.

17             THE COURT:  I'm sure you're glad.

18             MR. BALDWIN:  Yes.  It usually says -- we're

19    talking about the expert reports, so --

20             THE COURT:  Okay.

21             MR. BALDWIN:  -- what we are proposing is the

22    standard language that says, "Whoever has the burden files -

23    - on an issue files the first expert report," and everything

24    goes from there.  They would prefer to say, "Grace --

25    Norfolk Southern has the burden so it goes first."  But we

1    don't know what all the issues are going to turn out to be,

2    so we're not willing to stipulate in this document that we

3    have the burden of proof on every issue.  You know, there

4    could be some contract interpretation or some other issues

5    where we don't have the burden of proof.

6              THE COURT:  Right.

7              MR. BALDWIN:  And it may be that just with respect

8    to the proof of claim, you know, that's one issue, but there

9    could be other issues, so we propose to just use the

10   standard sequence that says, "The party having the initial

11   burden of proof shall make its initial disclosure, you know,

12   on or before March 30, 2018."  And then everything would --

13   would key from there about responsive -- responsive experts

14   and rebuttal experts, and we're not willing to agree that we

15   have the burden on all issues right now because we don't

16   know what all issues are.

17             THE COURT:  All right.  Mr. O'Neil.

18             MR. O'NEIL:  Yes, Your Honor.  So our thought

19   process was this.  Norfolk Southern filed a proof of claim.

20             THE COURT:  Right.

21             MR. O'NEIL:  Grace filed an objection to a proof

22   of claim.

23             THE COURT:  Right.

24             MR. O'NEIL:  Now Norfolk Southern has not

25   substantiate that claim.

1           THE COURT:  Exactly.  They have the burden.

2           MR. O'NEIL:  They have the burden.  So that was

3    what we had in our mind when we proposed this language with

4    them going first, and we also thought seeing the -- seeing

5    the counter language which was proposed that it doesn't --

6    to not set it out does not promote clarity but promotes

7    confusion and sets up arguments for later on as to, you

8    know, who shot John and who goes first and who doesn't go

9    first.

10          We thought it was relatively clear and precise

11   just to say Norfolk Southern -- to set the schedule the way

12   that we had proposed where Norfolk Southern would produce

13   its expert report first.  We would then respond.  And the --

14   Norfolk Southern proposal, we just think adds to confusion,

15   and people will have disputes about who has the burden on

16   which particular issue, and so we were -- we were hoping to

17   just make it clear and concise and say right in the order

18   who was going to do what at what point in time, and that was

19   -- that was our proposal.

20          MR. BALDWIN:  A couple points, Your Honor.  Their

21   proposal also threw in an extra rebuttal expert for them,

22   and I don't expect there to be any dispute because if

23   someone has the burden and they don't put in an expert,

24   they're going to be doing that at their peril.  So this is a

25   standard process, and maybe on the proof of claim itself,

1    their burden is clear, but with respect to a lot of

2    subsidiary issues in the case, maybe it's not.

3         And if we foolishly don't put on an expert on an

4    issue where we have the burden and we want an expert, we're

5    -- we're going to be stuck, and everyone's the be

6    incentivized to -- to put an expert report in where they

7    think they might have the burden.  That's the way it always

8    works in the -- in the district court in the more complex

9    cases like this is becoming to be.

10        THE COURT:  Yes, it is.  Yes, Mr. O'Neil?

11        MR. O'NEIL:  Just -- Your Honor, just one point.

12   I mean, each -- the -- the proposal did include the

13   opportunity to reply -- for each side to do a reply, so we

14   weren't --

15        THE COURT:  That would only be if you filed first,

16   right, that you would have the opportunity to reply.

17   Otherwise --

18        MR. O'NEIL:  Well, each -- if each side' going to

19   do an expert, each side would have the opportunity I think

20   to reply.  That was our -- that was our idea.

21        THE COURT:  In other words, if they put -- if they

22   have the burden of proof and they put in there for the first

23   expert witness report, and then you put in a reply, a

24   response to that expert report, and then they have the right

25   to reply, is that what you're --

 1            MR. O'NEIL:  Well, each side -- we were assuming -

 2    - and maybe I'm getting a little confused, but we were

 3    assuming that each side would have an expert, so each side

 4    would produce an expert report if they chose to, and then

 5    each side would get a chance to file a reply or rebuttal

 6    report.

 7            MR. BALDWIN:  Well, they're giving themselves an

 8    extra bite at the apple here, Your Honor.  It's usually

 9    opening, answering, reply.

10            THE COURT:  Right.

11            MR. BALDWIN:  And they -- you know --

12            THE COURT:  They want opening, answering, reply,

13    rebuttal.

14            MR. BALDWIN:  Yeah, they want -- yeah, they want

15    to get an extra -- an extra bite, but we don't think it's

16    appropriate, and we think it should be the usual way it's

17    done.

18            THE COURT:  I think -- I think it has to be the

19    normal way.  You know, it's hard -- it's hard for the Court

20    to foresee what, as Mr. Baldwin refers to them as -- what

21    the subsidiary issues may be on -- and I would -- look, I

22    would hope the parties would discuss this and come to some

23    agreement on expert reports, and obviously, you'll be

24    identifying your experts before they file their reports, so

25    you'll have an opportunity to talk.

1           And if there are no subsidiary issues, then I

2    think it's very clear that Norfolk Southern has the primary

3    burden of proof.

4           MR. BALDWIN:  Agreed, Your Honor.

5           THE COURT:  But if there's a subsidiary issue,

6    which I can't really foresee at the moment, I mean, you

7    can't either, I recognize, then if it's -- if -- if it's

8    Grace that has the burden of proof, they should have to put

9    in the first report it seems to me.  So I think if we leave

10   it the way Norfolk Southern has -- has penned it, I think

11   we'll be -- I think we'll be all right.

12          MR. BALDWIN:  And, Your Honor, I believe -- I

13   think that's all the -- I think that's all the issues, and I

14   don't want you to think that there were no disputes at all,

15   but we've --

16          THE COURT:  I'm sure there were many disputes.

17          MR. BALDWIN:  -- we've worked them out last night

18   and yesterday and the last couple weeks and this morning,

19   and so the mere prospect of having to come before you --

20          THE COURT:  Oh, my goodness.  It's frightening.

21   Isn't it?  It's just frightening.  Yes.

22          MR. O'NEIL:  So one moment, may I -- if I may?

23          THE COURT:  Yeah, yes, Mr. O'Neil, take your time.

24          MR. O'NEIL:  So --

25          THE COURT:  You can step out for a moment if you

1    prefer.  Whichever you prefer.

2            MR. O'NEIL:  Thank you, Your Honor.  So I think --

3            THE COURT:  And is there a space in there for a

4    trial date or not yet?

5            MR. O'NEIL:  There is.

6            THE COURT:  There is space for a trial date?

7            MR. BALDWIN:  There is a space, Your Honor, and

8    it's blank.

9            THE COURT:  Do you -- do you want me to fill that

10   in now and give you a date, and if -- if so, what are we

11   talking about do you think realistically?  We're talking

12   about next September?

13           MR. BALDWIN:  You know, we're going to be

14   submitting a revised order.  How about if we -- if we count

15   up these dates and see when we think this can all be done,

16   and then we'll -- we'll put in a date in pencil for Your

17   Honor, and then you can tell us what there --

18           THE COURT:  Or you can call Ms. (indiscernible).

19           MR. O'NEIL:  That's what I thought perhaps.  We'll

20   talk about a potential date --

21           THE COURT:  Yeah.

22           MR. O'NEIL:  -- and then if the -- if it is

23   September that everybody says is the right date, I'll just

24   advise Ms. (indiscernible) that the parties have said

25   September if Your Honor is available and --

1          THE COURT:  And we'll give you a date.

2          MR. O'NEIL:  Right.

3          THE COURT:  And if you have -- if you have a

4    serious dispute on the issue, we'll have a telephone

5    conference and talk it over.  All right.

6          MR. O'NEIL:  Okay.

7          MR. BALDWIN:  Okay.  I think this -- this is all

8    very helpful, Your Honor.  I think this is going to get us

9    rolling along the right track.

10          THE COURT:  Well, I think that's right.  I think

11    you probably do need a little bit of formality here, and --

12    and it may payoff and hopefully, the mediation will be

13    successful.  And I think it can be if you give Grace enough

14    information that they can feel that they're -- they're

15    mediating with a -- you know, with a full deck, so to speak.

16    I think it would be helpful.

17          MR. BALDWIN:  Okay.  Thank you, Your Honor.

18          MR. O'NEIL:  Okay.  Thank you, Your Honor, we

19    appreciate your help.

20          THE COURT:  All right.  So you'll be submitting

21    the order to me in the near future.

22          MR. BALDWIN:  Yes.

23          MR. O'NEIL:  We will, yes.

24          THE COURT:  All right.  Okay.  Thank you,

25    everyone.

1            MR. HIGGINS:  Thank you, Your Honor.

2            MR. BALDWIN:  Thank you, Your Honor.

3            MR. O'NEIL:  Thank you, Your Honor.

4            THE COURT:  We'll stand in recess and I wish you

5     all a good day and good travel, Mr. Higgins.

6

7                          * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya                    Digitally signed by Sonya Ledanski
                              Hyde
                              DN: cn=Sonya Ledanski Hyde, o, ou,
     Ledanski Hyde            email=digital1@veritext.com, c=US
7                             Date: 2017.10.19 16:52:10 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 19, 2017