Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In re:                    :    Chapter 11

5    W.R. GRACE & CO., et al.,    :    Case No. 01-01139 (KG)

6           Reorganized Debtors.    :

7    _____:

8

9

10                              United States Bankruptcy Court

11                              824 North Market Street

12                              Wilmington, Delaware

13                              September 19, 2017

14                              11:01 a.m. - 12:17 p.m.

15

16

17

18

19

20

21    B E F O R E :

22    HON KEVIN GROSS

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   UNKNOWN

1    HEARING re Motion For Entry of an Order Enforcing Plan and

2    Confirmation Order Against Internal Revenue Service [Filed:

3    4/12/17] (Docket No. 32854).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    DEPARTMENT OF JUSTICE

4         Attorney for USA/IRS

5

6    BY:  WARD W. BENSON

7

8    PACHULSKI STANG ZIEHL & JONES LLP

9         Attorneys for Blackstone Group

10

11   BY:  JAMES E. O'NEILL

12

13   THE LAW OFFICES OF ROGER HIGGINS LLC

14         Attorneys for the Debtor

15

16   BY:  ROGER J. HIGGINS

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  Please rise.

3              THE COURT:  Good morning, everyone.  You may be

4      seated.  Thank you.  We're here, of course, in the W.R.

5      Grace matter in a matter involving the Internal Revenue

6      Service.

7              MR. O'NEILL:  Yes, Your Honor.  Good morning.

8              THE COURT:  Good morning, Mr. Higgins -- not Mr.

9      Higgins, I'm sorry -- Mr. O'Neill.

10             MR. O'NEILL:  That's all right.  You got that on

11     the right side at least.

12             THE COURT:  Yes.

13             MR. O'NEILL:  That's good.

14             THE COURT:  And I thank you all for understanding

15     my problem yesterday with being here and allowing this to

16     reschedule.

17             MR. O'NEILL:  Your Honor, we don't view that as a

18     problem.

19             THE COURT:  All right.

20             MR. O'NEILL:  And congratulations.

21             THE COURT:  Thank you.

22             MR. O'NEILL:  We're very happy to hear your news

23     and glad everybody is happy and healthy.

24             THE COURT:  Yes.  Thank you, sir.

25             MR. O'NEILL:  James O'Neill appearing on behalf of

1    the reorganized debtors from Pachulski Stang Ziehl & Jones.

2    With me at counsel table is my co-counsel in this matter,

3    Roger Higgins.

4              THE COURT:  Yes.

5              MR. O'NEILL:  And, Your Honor, the Court knows our

6    client, Richard Finke, who is with us in the Courtroom

7    today.

8              THE COURT:  Mr. Finke, good morning.

9              MR. O'NEILL:  General counsel of Grace.  Your

10   Honor, I'm going to turn the podium over to Mr. Higgins

11   who's going to present our argument.  Mr. Benson is here for

12   the Department of Justice today.

13             THE COURT:  All right.  Is it not Mr. Benson who

14   should go first, or does that not matter, Mr. Benson?

15             MR. BENSON:  I'm happy to and, in fact, would like

16   to.  It is their motion.

17             MR. O'NEILL:  It's our motion.

18             THE COURT:  It's your motion, okay.  All right.

19             MR. O'NEILL:  So shall we?

20             THE COURT:  Yes.

21             MR. O'NEILL:  We'll start out?

22             THE COURT:  Yes, you start out.

23             MR. O'NEILL:  Okay, thank you.

24             THE COURT:  I just wasn't sure burden of proof-

25   wise who has the burden of proof on this claim issue.  But I

1    guess it's really a legal argument at this point.

2              MR. O'NEILL:  It is a legal argument, Your Honor.

3              THE COURT:  Yeah.  Yes, thank you.  Mr. Higgins,

4    good to see you again.

5              MR. HIGGINS:  Well, thank you, Your Honor.  Roger

6    Higgins for the reorganized debtors.  In fact, that -- you

7    really sort of stole the first line, which really is, this

8    is a legal argument.

9              THE COURT:  Yes.

10             MR. HIGGINS:  You know, unless counsel sees

11   differently.  I don't think there are any undisputed facts

12   here, although I think it may take a couple of minutes to

13   sort of get one's head around them.  But when looked at,

14   they're relatively simple and straightforward.

15             This all arises out of the tax year 1998, and a 10

16   or 11 year, I think it was, examination by the IRS that did

17   not conclude until of 2009.  A claim that was first -- a

18   claim that was first filed in 2002 for $311 million by the

19   IRS; subsequently amended to 11 million and some odd

20   hundreds of thousands of dollars in 2012.  The reorganized

21   debtors came out of bankruptcy, went effective in February

22   of 2014, and there were four IRS claims left among many

23   others.

24             THE COURT:  Yes.

25             MR. HIGGINS:  Three of which were paid at 4.19

1    percent.  They were allowed; there was no controversy over

2    them.  And the 11 million and change claim was objected to

3    by the reorganized debtors in April of 2014.

4            At issue there was the tax amount, the -- and the

5    allow -- what should be the allowed amount of the claim be.

6    And one of the components of that proof of claim, that

7    claim, was the post-petition interest, which the IRS had

8    claimed at the statutory rate.  In the -- ultimately, the

9    claim was resolved between the IRS and the reorganized

10   debtors, settlement -- settled in compromise.  And the form

11   of that settlement and compromise came through in the form

12   of a withdrawal of the objection by the reorganized debtors

13   and a withdrawal of the claim by the IRS.

14           Suffice it to say, there was no settlement

15   agreement, quite frankly because the IRS didn't want to

16   enter into a settlement agreement, and so we did this rather

17   convoluted settlement and compromise.  And that settlement

18   and compromise gave the reorganized debtors the ability to

19   allow claims or have them disallowed or compromise them

20   pursuant to Section 5.1 of the plan without having the need

21   for a final order.

22           So in April of 2014, and, indeed in September of

23   2014 when the IRS finally sent its refund to Grace, the

24   decision was taken by Grace to essentially call a stop to

25   this claim, agree to the tax amount from 1998, which was

1    $5.5 million, a little over 5.5 million -- $5.8 million --

2    excuse me -- and a certain amount of prepetition interest,

3    which led to a total of about $6.72 million as of the

4    petition date.

5                THE COURT:  Yes.

6                MR. HIGGINS:  So there was clearly a claim

7    existing at the time of the objection and of the -- and of

8    this settlement and compromise.

9                What the IRS has argued -- and the issue today

10   here is not what interest was paid after March 15th of '09

11   when the claim was, the sort of the as-of date, the notional

12   date on which the claim was satisfied, not the amount of

13   interest that the IRS was paying on the refund amount post-

14   3/15/09.  But instead, the sole issue is what's the post-

15   petition interest amount to be paid on that claim from April

16   2nd of '01 to March 15th of '09.  And what the IRS has

17   argued is that there was recoupment.

18                THE COURT:  Yes.

19                MR. HIGGINS:  And that there was no claim for

20   interest.  And what the -- what Grace is arguing, the

21   reorganized debtors are arguing, quite simply is, of course

22   there was a claim.

23                We don't think that recoupment describes what

24   happened here.  We think that that theory is wrong on the

25   merits.  And what happened was that there was a claim for

1    $6.7 million, plus interest from April 2nd of '01 through

2    March 15th of '09, at which point because that was when the

3    final one of the NOLs arose -- there was a number of NOLs --

4    net operating losses.  Excuse me, Your Honor.

5              THE COURT:  Yes.  No, I know, yes.

6              MR. HIGGINS:  Net operating losses that arose in

7    '01, '02, each year up through '07.

8              THE COURT:  Yes.

9              MR. HIGGINS:  And then you had the big one for

10   '08, which arose as of March 15th of 2009, which is why that

11   dates critical because that's the date the return was due

12   and the date on which the NOL came into existence, and the

13   tax credit that result from that, which the IRS agrees to.

14   I don't think there's any disagreement on the amount of the

15   tax credit or anything along those lines.  It's just simply

16   now what was the interest rate in --

17             THE COURT:  Well, that's right.  And they're

18   arguing statutory interest applies.

19             MR. HIGGINS:  And they're arguing statutory

20   interest. And they're arguing that, well, the post-petition

21   claim wasn't the claim because we recouped it.  But, you

22   know, our view is, well, there was a claim.  Because in

23   order for recoupment to happen, there has to be two

24   antecedent claims.  There has to be a claim by, in this

25   case, the reorganized debtors for the tax credit that arose

1    as of the -- of March 15th of '09.  And, quite frankly,

2    because of the tax credits that arose in all of the other

3    tax years because of the respective NOLs.  So that's on one

4    side.

5            And on the other side, you've got the IRS's claim,

6    Claim 18553A I think was the ultimate name it was called.

7    And that was for the tax that arose as of March 15th of 1999

8    for tax year '98, the prepetition interest at the statutory

9    rate from 3/15/99 through April 2nd of '01, plus the

10   interest on this claim.

11           Now, there's a couple of reasons why recoupment

12   really doesn't apply here.  Number one --

13           THE COURT:  Well, let me ask you this question --

14           MR. HIGGINS:  Sure.

15           THE COURT:  -- if I may.  And I'll ask the same

16   question of Mr. Benson from the IRS.  But setoff, that's a

17   claim.  I think everyone agrees if there's setoff.

18           MR. HIGGINS:  That's right, Your Honor.  I agree

19   with that.

20           THE COURT:  And they say recoupment is not a

21   claim.  And in setoff, generally speaking, parties are

22   dealing with multiple years; and in recoupment, they're

23   dealing with one year.  And isn't this a multiyear matter?

24   I mean, we have NOLs from 2008; we have refunds for 2001 to

25   2011; we have a deficiency claim for 1998.  Aren't all of

1    these things --

2            MR. HIGGINS:  We agree, Your Honor.  That's -- I

3    just hadn't gotten there yet.  But the answer to that,

4    simply put, is yes, absolutely.  You've got NOLs from '01 to

5    '08.  You know, it's funny, I've got my two very well marked

6    up copies of Exhibits C and D, which kind of lay this out if

7    you, you know, fix your mind to it.  And, you know, I was

8    looking at it as much from the focus on -- you know, it's

9    amazing the amount of agreement that's here and the

10   agreement on what the claim was and to isolate this idea

11   behind -- the idea of what's in controversy here, which is

12   the interest rate.  So that's, I think, one major reason why

13   equitable recoupment doesn't apply.

14           The other is that equitable recoupment is an

15   affirmative defense.  And so affirmative defenses, I think,

16   insofar as the IRS says that, you know, affirmative defenses

17   aren't claims.  But we're not talking about the affirmative

18   defense; we're talking about what the claims were before you

19   could apply the affirmative defense.  And the affirmative

20   defense never comes into play because the IRS and the

21   reorganized debtors agreed on what the tax amounts should

22   be.

23           Now, admittedly, because of the -- I don't wish to

24   cast aspersions, but the way in which things happen -- very

25   often happen with the government, the refund check appears

1    out of the middle of nowhere in September of 2014.  And

2    discussions were then taken, well, how do we wrap this claim

3    up, and there were discussions that were ongoing about what

4    the interest rate was.  And so, you know, the decision was

5    taken to focus on the claim, allow the claim in that amount,

6    and work with the IRS on the appropriate interest rate, in

7    which ultimately led to us appearing before you today.

8              THE COURT:  Yes.

9              MR. HIGGINS:  I think -- so I think those are the

10   major points that I wanted to cover, Your Honor, is that,

11   you know, there were claims, the interest was a claim, the

12   plan is the sole source of interest in this -- for this

13   claim.  Remember, this is a priority claim, it's an

14   unsecured claim.  So thus, absent the plan when you look at

15   Section 1015, the definition of claim of unmatured interest,

16   and Section 502(b)(2) and its treatment, the generic

17   treatment for unmatured interest claims -- they're, you

18   know, disallowed.  That you come back to, sort of, the one

19   thing, as Curly said, is it's the interest rate here and the

20   interest rate that's set forth in the plan.

21             THE COURT:  Do you know what the IRS interest rate

22   was?

23             MR. HIGGINS:   Your Honor, I believe --

24             THE COURT:  I'll ask Mr. Benson when he appears.

25             MR. HIGGINS:  Yeah.  I think as a general matter,

1    it was -- during that period, it was far higher than 4.19

2    percent.

3              THE COURT:  I assume that, yes.

4              MR. HIGGINS:  And of course, you know, the

5    financial crisis of '08.  And then since then, the last 10

6    years really or nine years, 4.19 percent has looked to be a

7    very attractive rate.

8              THE COURT:  Absolutely.

9              MR. HIGGINS:  And, Your Honor, that's really --

10   that's really it.  This comes back to this is a claim,

11   claims are treated under the plan, and recoupment, we never

12   get to the issue of recoupment.

13             THE COURT:  Okay.  Thank you, Mr. Higgins.  I

14   appreciate that argument.  Mr. Benson, good morning.

15             MR. BENSON:  Good morning, Your Honor.

16             THE COURT:  How are you?

17             MR. BENSON:  Very well.

18             THE COURT:  Good.

19             MR. BENSON:  Your Honor, I'd like to first, if I

20   may address an issue that sort of got glossed over that's in

21   the briefing.  There's much discussion of whether the

22   interest was a claim.

23             THE COURT:  Yes.

24             MR. BENSON:  But in order for the plan provision

25   that we're all talking about to apply, it's not just that we

1  have a claim, we must have an allowed claim.  And I pointed

2  out in my brief that because there was no final order, there

3  was no allowed claim.  There was an objection, we withdrew

4  our claim -- our proof of claim -- debtor withdrew their

5  objection.

6           THE COURT:  Right.

7           MR. BENSON:  And so as far as I'm concerned, there

8  is no allowed claim.  I would direct Your Honor to, in the

9  definitions section, it appears in Definition 6(b).  Mr.

10  Higgins referenced an issue -- let's see -- whether

11  something is resolved by the debtors and the claimant

12  pursuant to Section 5.1 in the plan.  I haven't read the

13  plan since we initially -- or that section since we

14  initially briefed it.  But my recollection was that dealt

15  with asbestos claims or some other type of claim that was

16  not relevant to the present dispute.

17           So it was my reading of the plan and everything

18  that -- all of the other sections it referred to, that we're

19  just not dealing with an allowed claim.  And so if Your

20  Honor adopts that view, then all of these issues of is it a

21  setoff, is this recoupment, what is this is all really

22  irrelevant.

23           Moving on to the issue of setoff versus

24  recoupment.  First, I'd like to clarify another thing that I

25  don't think was necessarily clear from the briefing.  There

1    are really three doctrines at issue: there's what we refer

2    to as setoff, what is traditionally referred to as setoff

3    and that's the (indiscernible) case, which is pursuant to

4    other common law setoff rights or Section 6402 of the

5    Internal Revenue Code.  When you have an overpayment from

6    one year and an underpayment from another year, the IRS can

7    net those.

8              THE COURT:  Yes.

9              MR. BENSON:  And that is what is always referred

10   to as setoff.  That's, you know, I'm in this Court and other

11   Courts frequently dealing with issues of setoff.  And,

12   generally, how it comes up is you have prepetition -- the

13   issue is are the underpayments and overpayments on the same

14   side of the petition date or are they note, and then that

15   gets into is 553 available.

16             There is what has been known as equitable

17   recoupment, which is, as the debtors point out, is now

18   embodied in a certain portion of the Internal Revenue Code

19   in the 1300s, I believe.  And that deals with same tax

20   payer, usually different years, and it's the same

21   transaction.  And by transaction, you're actually talking

22   about some kind of business transaction.  And, you know, in

23   one year -- recipient of funds in one year treats it as a

24   gift and another year treats it as a loan being made.

25             And notwithstanding statute of limitations or any

1    other issues, the IRS can -- basically, a Court can say as a

2    matter of consistency, we're going to -- you have to take a

3    consistent position.  And to the extent it's necessary to

4    move money around, we'll do that.  That is definitely not at

5    issue here.

6              The third doctrine is sometimes known as

7    recoupment.  In the -- I'm not sure how to pronounce it --

8    (indiscernible) case --

9              THE COURT:  Yes.

10             MR. BENSON:  -- that we cite, there is much

11   discussion of offset, but it's dealing with that doctrine.

12   And at a certain point, I think it I cite it in a footnote,

13   it's on Page 283, this concept that I'm getting that, which

14   is normally known as the defense of lack of overpayment from

15   Lewis B. Reynolds is referred -- the case is referred to as

16   the tap root of this branch of recoupment.  So I think --

17   and that's talking about what happened here.

18             And so I think part of the problem is Courts

19   traditionally have not been entirely consistent in the use

20   of the terms setoff, offset, and recoupment, largely because

21   it doesn't matter in any way as much as it does in this

22   Court because you don't have the issue of 553 versus not

23   553.  In those contexts, everybody understands what's going

24   on.

25             So what we have here is the defense of lack of

1    overpayment.  And it goes --

2           THE COURT:  That's not in the brief anywhere, is

3    it, that term?

4           MR. BENSON:  It's in my brief.

5           THE COURT:  It is?  Okay.

6           MR. BENSON:  I believe this -- on Page 5 of my

7    brief in the footnote, I say: The Federal Circuit used the

8    word offset in this decision, which I believe refers to

9    (indiscernible) -- no, Pacific Gas & Electric -- and used

10   the word offset in its decision and referred to the relevant

11   doctrine as defense of lack of overpayment instead of

12   recoupment.  And then I note that other Courts have used

13   that term, that recoupment, for defense of lack of

14   overpayment.  But I do reference that in the brief; perhaps,

15   that should have been in the body, not a footnote.

16          But, yeah, so what we're dealing with here is the

17   defense of lack of overpayment, which in a bankruptcy

18   context is the equivalent of recoupment.  Because it is a

19   defense, we're not saying we have a claim.  We're just

20   saying you say we owe you money; we believe, based on

21   everything that happened in that tax year, we don't owe you

22   as much.  And so there is no claim to bring because, in

23   fact, we -- they owe -- or we owe them money and that's

24   undisputed; they don't owe us anything.

25          THE COURT:  How do you get anything from a

1    bankrupt without a claim being filed?

2           MR. BENSON:  Well, we didn't get anything.

3           THE COURT:  Because you --

4           MR. BENSON:  Because we said --

5           THE COURT:  -- you did the arithmetic basically.

6           MR. BENSON:  Yeah.  And this gets to a very

7    important point, Your Honor.  You said -- asked Mr. Higgins,

8    doesn't this involve different tax years.  And the answer is

9    in a sense, yes; but in the crucial material sense, no.

10          This is not overpayment versus underpayment.  This

11   is not underpayment in '98, overpayment in 2008, because an

12   overpayment is you paid too much tax.

13          THE COURT:  Right.

14          MR. BENSON:  If you have a taxpayer who pays no

15   tax and incurs numerous net operating losses, which is often

16   the case in debtors in this Court, there can't be an

17   overpayment because they didn't pay anything.

18          What's going on is effectively NOL's tax

19   attributes that arise in 2008 are carried back and factored

20   into the liability in 1998.  So it's functionally no

21   different than if the NOLs arose in 1998, which based on

22   what Your Honor was suggesting, that would unquestionably be

23   the same tax year.

24          When you're dealing with carry forwards/carry

25   backs, it's the same concept.  We're only talking about the

1    liability between the parties for 1998.  It's just they're

2    able to kick tax attributes from one year and factor them

3    into the liability for 1998.  But it is definitely note the

4    case that we're dealing with a Bankruptcy Code 553 or a IRC

5    Code -- IRC 6402 situation, where it's we owe them money for

6    one year, they owe us money for another year.  I would

7    actually assume that there was no overpayment in 2008

8    because, generally, debtors in bankruptcy don't, except in

9    the year of a 363 sale, generally don't have any taxable

10   income.

11            I just want to address a couple more points.  The

12   debtors note that in the cases I cite, all of those involved

13   unassessed interest.  And that's not the case here; the

14   interest was assessed.  I don't think that's in any way

15   material here because the reason all these cases deal with

16   unassessed interest is that's the only way it comes up in

17   refund litigation.  If you have assessed interest or

18   assessable interest, we would just suss it.  There'd be no

19   issue.

20            So the only way this gets litigated is you're

21   dealing with situations where the IRS -- the statute of

22   limitations to assess interest or whatever else has lapsed.

23   The IRS engages -- asserts lack of overpayment based on

24   whatever liabilities there are.  The taxpayer jumps up and

25   down and says you can't do that, statute of limitations.

1    And we say, no, it's recoupment, it's not offset, defense of

2    lack of overpayment, and the Courts say that's fine.  That's

3    just because it would never come up in some other context.

4              But I don't think the distinction matters here.

5    The point is we're dealing with interest that was owed

6    initially, but then the NOLs were carried back.  The NOLs

7    are sufficient to generate a refund that exceeds the amount

8    of the interest.  And so, we have no right to payment, which

9    would be necessary to have a claim.  We unquestionably owed

10   them money.

11             Finally, I think it was --

12             THE COURT:  What was the interest rate, if you

13   know?

14             MR. BENSON:  It's would have -- it's based on, I

15   forget if it's the Fed funds rate, or there's a baseline

16   rate plus 3 percent.

17             THE COURT:  Okay.

18             MR. BENSON:  And so, that was much higher in 1998.

19   Then it went to effectively zero in 2007-2007.  It recently

20   went up to 4.  So I guess, you know, it fluctuated is the

21   answer.  I was not particularly focused on interest rates in

22   1998 when I was, I think, still in junior high, so I can't

23   exactly -- I can't opine on that.

24             THE COURT:  All right.

25             MR. BENSON:  Last of all, there was a mention in

1    the opening brief by the debtors that effectively, they

2    could have paid and then sought a refund.  And then when

3    they paid us the initial amount sought, it would

4    unquestionably be 4.19 percent because they were paying us a

5    claim under the plan, and then gotten the refund and then

6    that would allow them to pay 4.19 percent.  And so Your

7    Honor should let them basically undo what they did and do

8    what they say they could have done, which would have been

9    more profitable for them.

10          That couldn't have happened here, I don't think,

11   because of the deadline, basically, statute of limitations

12   to utilize the NOL carryback.  And if I'm not mistaken, the

13   NOLs here can only be carried back 10 years.  And so that

14   would be 10 years from whenever -- or 10 years from three

15   years from the return being due, which I believe would have

16   lapsed in presumably March 15th or September 15th of 2012,

17   if I'm not mistaken on that.  And so --

18          THE COURT:  Doesn't bankruptcy stay that from

19   running?

20          MR. BENSON:  No, Your Honor.  I don't see how it

21   would.  I don't have a provision to cite for you for why it

22   wouldn't.  But from my experience, debtors always -- my

23   understanding was that that is not the case, especially

24   because in a sense it's not a statute.  It's just an

25   administrative rule on when you can bring things.  And then

1    is it 106 that deals tolling, but that's only for 60 days,

2    if I remember correctly?  Sorry, Your Honor, I didn't --

3              THE COURT:  Okay.

4              MR. BENSON:  I wasn't prepared for that question,

5    so I don't know.  But in my experience, no one has ever

6    argued that.  And since it would be frequently advantageous

7    for people to argue that, I'm assuming it's -- nobody has

8    come up with an argument that would support that position.

9              So effectively, it couldn't have happened.  They

10   could not have done this maneuver where they would pay our

11   claim that 4.19 percent and then get a refund because of how

12   long it took to have the plan confirmed and go effective.

13   And so, hypothetically, yes, that would have been a better

14   thing for them to do; but, based on the actual facts of this

15   case, that was not possible.

16             So effectively debtors made the decision, we're

17   going to file our refund request before the plan goes

18   effective.  You know, for all anyone knew, the plan was

19   never going to be confirmed or go effective.

20             And so, from our view, they did what they seemed

21   the best at the time.  And it really seems odd and sort of

22   inequitable for them to say, based on the plan being

23   confirmed after we did this, retroactively, the interest

24   rate is reduced, because that is effectively the argument, I

25   believe.  It couldn't have been 4.19 percent at the time the

1    refund was requested because the plan hadn't gone effective.

2    They're basically saying, based on subsequent events, the

3    plan going effective, please undo the statutory interest

4    rate and now apply the rate under the plan.

5              So I think that's all the points I came to discuss

6    if Your Honor has any questions for me.

7              THE COURT:  I'm still kind of -- Mr. Benson, I'm

8    still a little bit wrapped up with the fact that we're

9    dealing with so many different years here.  In other words,

10   when you -- the calculations in the briefs involve the NOLs,

11   to which you add the refunds from 2001 to 2011.  And you

12   subtract the 1998 tax deficiency, and you subtract interest,

13   and then you add over -- add in overpayment interest.  So

14   you're dealing with different years in this sort of model

15   that the IRS is using.  That's what throws me off a little

16   bit.

17             MR. BENSON:  Okay.  And the key distinction --

18             THE COURT:  Yes.

19             MR. BENSON:  -- between 6402/553 offsets and what

20   I've called recoupment, what the Courts have also called

21   defense of lack of overpayment, is that it's crucially if --

22   the crucial distinction is you're not dealing with

23   affirmative claims on both sides.  It's not that they owed

24   us for '98 and we owed them anything for 2008.  It's their

25   tax attributes that they are moving around, but there is no

Page 24

1  overpayment on their end for any of these other tax years.

2  And so, this is what corporate taxpayers are allowed to do;

3  they're allowed to move things around.  Individual taxpayers

4  can do that to a more limited extent.

5        And if Your Honor takes a look at all the cases I

6  cited, you know, I won't go into all of them, but you're

7  generally dealing with attributes from different years.

8        THE COURT:  Okay.

9        MR. BENSON:  And that's always -- often the

10 context where we are allowed -- you can litigate -- we, the

11 IRS, can litigate issues that normally would be barred by

12 statute of limitations regarding, you know, when is -- when

13 did the tax attributes arise.  We can litigate those issues,

14 even if administratively or statutorily we couldn't

15 independently, because we're not effectively dealing with

16 those years.  We're dealing with the year at issue for which

17 a refund is sought.  And those tax attributes are being

18 brought into that year and are treated as now those years'

19 tax attributes, and they're trying to use those tax

20 attributes to lower the taxable income as they would if, you

21 know, as anyone would do.

22        You know, if Your Honor makes charitable donations

23 in a year, you take those against your income for that year.

24 It's no different than -- well, I guess the better example

25 would be if Your Honor sells some stock this year, doesn't

1   have enough taxable income to use, and you carry them

2   forward up to 2000, I think.

3           But the point is, you can your capital losses for

4   this year, bring them to the next year.  They are treated

5   for tax purposes exactly as if they arose in that year.

6   They are, effectively, now for that year.  And were we to

7   challenge those things, that would be a recoupment issue

8   because it's not that -- what would it be -- that you have a

9   -- it's not an issue of overpayment versus underpayment.

10  It's just an issue of, you've moved things around from

11  different years and we're now litigating the year at issue.

12          THE COURT:  But here's the thing.  The refunds

13  from 2001 to 2011, those are not a tax attribute, are they?

14          MR. BENSON:  I'm sorry, Your Honor.

15          THE COURT:  The refunds owed W.R. Grant for the

16  years 2001 to 2011, which is part of this calculation, those

17  are not tax attributes.  I understand what you're saying

18  about the NOLs, that the NOLs are tax attributes.

19          MR. BENSON:  Yeah.  I don't think that's at issue,

20  is it?  I thought the issue was '98 interest, and there was

21  no issue about refunds.  It was just about carrybacks.

22          THE COURT:  Well, I have it in the formula that

23  was being used that the parties added back the refunds from

24  2001 to 2011, and that's part of how you arrive at the

25  ultimate number that's owed.

1           MR. BENSON:  Is that right?

2           THE COURT:  Or that you owe -- or that you owe, I

3    guess.

4           MR. BENSON:  Yeah.

5           MR. HIGGINS:  Your Honor, I'm sorry.  I'm just

6    looking at Exhibit C, which is, you know, for us bankruptcy

7    lawyers, it's a (indiscernible).  I mean, there were a

8    series of generated overpayments applied in '01, '02, up

9    through '09.

10          THE COURT:  Yes.

11          MR. HIGGINS:  Which is when this ends.  I mean, so

12   they came from whatever that is, eight tax years if I've got

13   it right.

14          THE COURT:  Yes.

15          MR. HIGGINS:  Now, your question comes back, and I

16   -- it is, you know, what are those.  And I think that that's

17   really the fundamental part, you know, what's fundamentally

18   at issue here.  And I don't want to take away from counsel

19   as counsel's still talking here, but I think that, you know,

20   that that's the -- that comes down to that's the issue.

21          MR. BENSON:  Your Honor, I thought the only issue

22   was NOLs from '98.  I know there were some refunds for other

23   years.  I thought they were relatively immaterial given the

24   amount of money.  Even if that --

25          THE COURT:  I think the NOLs are for 1998.

1             MR. BENSON:  The 2000 into '98, the massive NOLs.

2             MR. HIGGINS:  It was, so there was approximately

3     $885,000 give or take of tax credits generated '01 through

4     '08 for a variety of reasons.  I would have to go back and

5     supply you with the detail that Grace's tax lawyers have

6     informed me of.  The '08, which is, you know, that's the --

7             THE COURT:  Hold on one second, Mr. Higgins.  Is

8     it all right?  Could it be that microphone?  Let's try it

9     again.

10            MR. HIGGINS:  How about I come over here, Your

11    Honor?

12            THE COURT:  All right, okay.

13            MR. HIGGINS:  So just operating from memory her,

14    Your Honor.  So we had 2001 to 2007, there were

15    approximately -- and this is not in the briefing, this is

16    what I subsequently gleaned as we were preparing for today -

17    - is that '01 to '07 timeframe, there were a series of

18    overpayments generated by a number of different tax

19    attributes coming out of the those years.  Whether they were

20    NOLs or whatever they were, they generated tax credits of

21    approximately $885,000.

22            The tax credit from 2008 was, of course, many,

23    many times that size -- $9 or $10 million.  I don't have the

24    number right in front of me.  And so, you know, what comes

25    to the point here is that the IRS has taken the position

1   that this should be dealt with as if bankruptcy never

2   happened, and as if the plan were never confirmed in the

3   first place, and as if the Bankruptcy Code doesn't have

4   specific treatments or unmatured post-petition interest and

5   the payment of that.

6           So, anyway, so that's my --

7           THE COURT:  You'll have a chance.

8           MR. HIGGINS:  And I apologize, Your Honor.

9           MR. BENSON:  Your Honor, so I only have the record

10  from '98, which doesn't allow me to -- two things could have

11  happened.  Administratively, an offset, a true offset, under

12  6402 could have happened where, let's say, there's an

13  overpayment in 2001 that then gets brought back and netted

14  against the underpayment for '98.  That's possible that

15  could go into the calculation.

16          I vaguely recall, but I would need to check this,

17  that some of the refunds were issued sort of out of those

18  tax years, if that makes sense.  The way the IRS does it is

19  that you have a running account for every single tax year.

20          THE COURT:  Yes, yes.

21          MR. BENSON:  And, you know, I see here from the

22  transcript, you have what they refer to as credits

23  transferred in from various tax years.  I don't know if --

24          THE COURT:  Are you looking at Exhibit C?

25          MR. BENSON:  No, no, no.  I'm looking at something

1    I have myself, which I don't think I can admit.  It's not

2    properly redacted.  Well, moving forward, I think given the

3    confusion, this may necessitate further briefing.  I think

4    maybe both would be able to agree on that.  And just looking

5    at it, you know, with these complex corporate debtors,

6    taxpayers, things go in and out all the time.  So, you know,

7    I'm looking at a 1.1 million credit that comes in and then

8    goes out.  I think this is something that would need to be

9    determined.

10            If the refunds are being basically spit out of the

11   tax years as they go along, then that's of no relevance.

12            THE COURT:  Right.

13            MR. BENSON:  So if, you know, it's the -- you

14   know, again, Your Honor, you can do carrybacks from one --

15   or carry forwards from one year to another.  If you have

16   another refund from a third year, if that's not being fixed

17   in the calculation, then that's just another tax year refund

18   going out.  And I don't know if the check that went out was

19   just combining everything, or if, in fact, there are

20   multiple checks that went out on the same day that are being

21   included in that number.

22            But to the extent you're dealing with what the

23   first scenario of -- I guess the second scenario that I

24   described as the true setoff of overpayment for 2007, it

25   goes back into the calculation for '98 and gigantic NOL

1    from, I think, it's 2008.

2            THE COURT:  Yes.

3            MR. BENSON:  Which looking here, I think I'm

4    looking at is 11.5 million.  There was an $11.5 million

5    reduction in tax, which is probably just tens of millions of

6    NOLs.  That would be recoupment, and that dwarfs the other

7    credits that are coming in.  So this is going to be painful

8    for, I guess, myself and Mr. Higgins to have to calculate

9    this.

10           But I think to the extent there was a 6402 offset

11   and that is a claim, which we dispute because there's still

12   no allowed claim which is what matters.  But to the extent

13   there was an allowed claim that got carried back, one would

14   need to effectively net the interest -- or one would need to

15   calculate the interest based on the refunds that come back.

16   And that could conceivably be 4.19 percent, and then the

17   interest on the NOL portion would be the statutory rate.

18           I'm sure Mr. Higgins and I are both equally not

19   looking forward to having to make that calculation if that's

20   the case.  Though, again, that's two contingencies: that's

21   the refund overpayment credits were actually factored into

22   '98, as opposed to just going out as things went along; and

23   two, that we're dealing with a claim and particularly an

24   allowed claim. And, again, Your Honor, I'd say if you, you

25   know, look at the definition of allowed.

1          THE COURT:  Yes, and you're saying it wasn't an

2     allowed claim.

3          MR. BENSON:  Right.  It was, let's see, you know,

4     it's allowed if there's no objection within the --

5          THE COURT:  And there was no objection here.

6          MR. BENSON:  And there was an objection, but then

7     there's no objection, so that doesn't apply because there

8     was an objection.  As to which an objection to allowance was

9     unopposed within the time provided and such objection has

10    been overruled, which doesn't apply here.  Resolved by

11    agreement and the claimant, which is approved by final order

12    of the Bankruptcy Court; there was no final order of the

13    Bankruptcy Court.  Resolved by agreement of the reorganized

14    debtor and the claimant pursuant to 5.1; I don't have the

15    full plan in front of me, but I believe when I reviewed it

16    that did not apply.

17         I think it applies to certain kinds of asbestos

18    claims.  Determined by final order in the Chapter 11 cases;

19    not applicable.  And then as to which such claim is listed

20    as an undisputed claim in Exhibit -- or listed on the

21    undisputed claims exhibit, which has been filed pursuant to

22    5.1, which was not our case.

23         So whatever Your Honor thinks ultimately would

24    decide on these rather nuanced tax issues, I think it's just

25    -- it's not an allowed claim.  And if it's not an allowed

1    claim, the interest rate in that provision does not apply,

2    and so we don't need to get to what could be a very painful

3    series of calculations on interest.

4              THE COURT:  All right.  All right.  Thank you, Mr.

5    Benson.  Mr. Higgins.

6              MR. HIGGINS:  Your Honor, so to go back to Section

7    5.1 of the plan.

8              THE COURT:  Yes.

9              MR. HIGGINS:  I think this is -- we got to start

10   here, to be blunt.  It says, and this at the top of Page 68:

11   After the effective date, all objections that are filed and

12   prosecuted by the reorganized debtors as provided herein may

13   be (I) compromised and settled in accordance with the

14   business judgment of the reorganized debtors without

15   approval of the Bankruptcy Court.  And that's what happened

16   here.

17             THE COURT:  Okay.

18             MR. HIGGINS:  The reorganized debtors filed an

19   objection in April of 2014.  The IRS responded.  There was a

20   refund issued.  And this is the point I was driving at

21   earlier when I said that the IRS did not want to enter into

22   a settlement agreement.  The form of the settlement

23   agreement was the withdrawal of the objection and the

24   withdrawal of the claim.  To be quite frank, Your Honor, if

25   the reorganized debtors hadn't compromised and settled that

1    claim, there is no way on God's green earth that they would

2    have withdrawn that objection.  And so, that's the

3    compromise and settlement.

4            There is no question that the two parties agree on

5    the amount of the tax for 1998.  There is no question that

6    there is agreement on the amount of prepetition interest

7    under Section 6402, I think, or whatever it is -- the

8    section for dealing with prepetition, your normal statutory

9    interest from the accrual date through the petition date.

10   There is absolutely no controversy over that.  That's what

11   was compromised and settled.  What is at issue here is the

12   amount of interest that is calculate post-petition on that

13   claim that was an allowed claim.

14           Now, to short circuit the government's arguments,

15   I'm not sure that we I don't think we need to do any further

16   briefing.  In the government's opposition, it says the facts

17   are not in dispute as stated in the response -- I'm sorry,

18   yeah -- as stated in the response.  The IRS granted a credit

19   -- this is a tax credit -- of $11,491,000 so on and forth,

20   attributable to the carryback of NOLs.

21           And as Your Honor has already observed, there were

22   approximately $885,000 of other tax credits that were

23   generated by other tax years.  The tax credits are merely

24   the currency with which this allowed claim were paid.

25   Otherwise, Section 502(b)(2) and its disallowance of

1    unmatured interest would have no moment here.  You know, I

2    think that were we not in bankruptcy, we wouldn't have a

3    quarrel with what counsel was saying, but we are in

4    bankruptcy.

5          We are operating within the confines of a

6    confirmed plan of reorganization that was confirmed in

7    January of 2011.  So in -- between 2011 and 2014, believe it

8    or not, that was the length of time that that plan was --

9    the confirmation order was under appeal, and those appeals

10   only terminated in late 2013, give or take, that led

11   ultimately to Grace exiting in February of '14.  So, you

12   know, it really doesn't matter from within that construct

13   now.

14         Counsel made the argument that there was two

15   different kinds of setoff, and it's governed by Section --

16   for our purposes in bankruptcy by one section, Section 553.

17   I think we all agree that doesn't apply because we got

18   prepetition and we got post-petition, so that's off the

19   table.  Then you got equitable recoupment, which, quite

20   frankly, we think is what the IRS is arguing.

21         And then they've got defense of lack of

22   overpayment.  You know, this is a line of cases that go back

23   to Lewis D. Reynolds back in the 1920s and '30s, as I

24   recall.  And, you know, it's still -- it's, for our purposes

25   here today, is a difference without a distinction in terms

1    of equitable recoupment because it's still an affirmative

2    defense.  It's an affirmative defense to a claim that was

3    there, and so the -- that was existing as of the petition

4    date.

5             And if those tax credits were generated in the

6    post-petition years paid that claim as of March 15th of '09.

7    Now, could Grace have written a check in March 15th of '09?

8    Well, the answer is actually yes.  Because, although Judge

9    Fitzgerald was presiding at that point, there was a massive

10   EPA settlement where Grace wrote a check for a quarter of a

11   billion dollars right then and there.

12            And Grace could have done that, but, you know,

13   that wasn't the time to do it because the parts -- you know,

14   the parts hadn't stopped moving on the 10 years of the IRS

15   looking at the 1998.  Then, of course, that goes to the

16   joint committee on taxation, a process that takes years and

17   years and years.  That was an evolution that didn't end

18   until 2014, late 2014, when the IRS ultimately issued its

19   refund.  That claim was allowed and that claim was paid.

20   And that claim was paid with tax credits.

21            That's really -- that's what I have.  Thank you,

22   Your Honor.

23            THE COURT:  All right.  Thank you.

24            MR. BENSON:  Your Honor, if I could just take a

25   look at taking the platform here.

1              THE COURT:  Of course.

2              MR. BENSON:  Your Honor, just --

3              THE COURT:  Yes.

4              MR. BENSON:  -- attempting to speed read this.

5              THE COURT:  Take your time.  Would you would a 5

6    or 10-minute break, Mr. Benson?  I certainly give that to

7    you.

8              MR. BENSON:  Sure.

9              THE COURT:  And you can read it quietly and a

10   little more leisurely.

11             MR. BENSON:  I think the immediate issue here,

12   Your Honor, is the provision section Mr. Higgins cited is

13   after the effected date, all objections that are filed may

14   be compromised.  And I believe this was compromised before

15   the effective date.

16             MR. HIGGINS:  No.  Your Honor, just to recite, if

17   I could, recite the dates.  Effective date, February 3,

18   2014; claims fee, three other IRS claims that I mentioned at

19   the beginning --

20             THE COURT:  Yes.

21             MR. HIGGINS:  They were paid approximately April

22   18th.  The checks were cashed approximately April 23rd.

23             THE COURT:  And those were paid on claims that

24   were actually filed.

25             MR. HIGGINS:  Those were paid on claims at 4.19

1    percent.

2              THE COURT:  Yes.

3              MR. HIGGINS:  So there's no argument the 4.19

4    percent was being paid on priority tax claims.  The

5    objection was filed on April 22nd of 2014, so approximately

6    seven, eight weeks after the -- well, 10 weeks I guess it

7    was -- after the effective date.

8              THE COURT:  Okay.

9              MR. BENSON:  Your Honor, if I could have five

10   minutes to just take a look at this.

11             THE COURT:  You certain -- yes, you may.

12             MR. BENSON:  Okay.

13             THE COURT:  Let's take a little recess and take

14   your time reading it.  I'll give you 10 minutes.

15             MR. BENSON:  All right.  Thank you, Your Honor.

16             THE COURT:  All right?  Yes, thank you.

17             [RECESS]

18             CLERK:  Please rise.

19             THE COURT:  Thank you.  You may be seated.  All

20   right.  Did you have anything to add, Mr. Benson, to the

21   situation?

22             MR. BENSON:  Two things, Your Honor.  First, I

23   mean, if you read it, the reflection of all judgments that

24   are filed and prosecuted by the reorganized debtors may be

25   compromised and settled.  I think there's a question of

1    whether this was really prosecuted.  Unfortunately, this is

2    before -- well, slightly after I got to the DOJ that all

3    this happened.  So I can't, you know, testify to whether

4    there was really a compromise versus, you know, or to agree

5    to which we just withdrew.

6              More importantly, though, Your Honor, and I think

7    this will probably require additional briefing.

8              THE COURT:  Well, I don't think that you would --

9    the IRS would have withdrawn a claim if there hadn't been a

10   compromise of that claim.

11             MR. BENSON:  It does happen, Your Honor.

12   Depending on how, if there's no dispute that we're not owed

13   money, we often will just with withdraw.  You know, it's not

14   in our nature to continue to fight just to try to get some

15   kind of settlement.  So it -- I think it's a -- it happens

16   all the time.  That if someone, if there's an objection

17   filed (indiscernible), we don't know this.  It happens all

18   the time that the IRS say do you actually agree with that

19   and we'll say, you know, yes, and then the claim gets

20   withdrawn.

21             So I don't know if that's considered a settlement.

22   I don't really think that.  If we're just told a claim

23   should not have been filed, we withdraw.  It's really only

24   when there is a dispute about the amount of money, and we

25   make a concession on the amount of money where we don't

1    necessarily agree that that's the amount, but we, for reason

2    of litigation hazards if there's concern, that would be a

3    settlement.  There would be an exchange of documents,

4    exchange of letters, formal settlement agreement.  But,

5    again, if it's just we have all of these NOSs which we've

6    already carried back to withdraw your claim, we just do.

7            As to the more substantive issue, Your Honor, and

8    this will require, in order for me to say confidentially I

9    think Mr. Higgins to confidently disagree if he wants to.  I

10   think -- I'm just trying to work very rapidly on the

11   calculator on my phone, but I think it's quite likely that

12   most, if not all, of the abatement of tax that led to the

13   refund was the result of the NOLs.  And essentially, this --

14   because I'm trying to look at this very long transcript --

15   the handling of the abatement based upon the NOLs was

16   roughly equivalent to the original tax recorded by the

17   debtor.

18           With the views that what quite likely could have

19   happened, it happened, is there's this $12 million liability

20   on the books adjusted for some certain things.  The debtor

21   carries back this huge amount of NOLs sufficient to wipe out

22   that entire liability.  The actual overpayments from other

23   years come back in, and then the refund goes out based on

24   the overpayments.

25           So in terms of the interest, the refund -- the

1    overpayment refunds are really irrelevant.  It's totally a

2    separate thing.  I mean, when you're dealing with these huge

3    taxpayers with very complicated taxes, you get 10-year

4    examinations because every year everything changes, and so

5    you have things moving around by modules.  And just looking

6    here that did happen that credits came in, credits left.  So

7    I want to do the math with more time and a better

8    calculator.

9            But I think it's quite possible that we have

10   recoupment as to the original liability, and then the refund

11   that went out was mostly attributable to those overpayments

12   from other years.  And so, when this gets calculated, the --

13   there's the issue -- so NOLs come back, that tax goes away,

14   the underpayment interest gets calculated.  That gets netted

15   against the credits that have been brought in based on

16   overpayments, and then what goes out is the difference.

17           So we come down to the very same -- the initial

18   issue is who's right about 4.19 versus statutory rate.  The

19   credits just add on top of that, if that makes sense.

20           THE COURT:  Okay.

21           MR. BENSON:  Again, though, I'd want to be able to

22   make the calculation a little more calmly, and I think that

23   can be resolved with some pretty quick supplemental

24   briefing.

25           THE COURT:  Mr. Higgins, your position on that?

1          MR. HIGGINS:  Well, Your Honor, I don't think we

2     need any supplemental briefing on this.  I'm going to point

3     to the government's opposition on Page 6, the first full

4     paragraph.  It says: In this case, the IRS exercised its

5     right of recoupment, not its right of setoff.  And we've

6     already talked about why recoupment doesn't apply here.

7          Note two, which is, it says: The IRS only

8     determined the true amount that Grace's overpayment for that

9     year, so on and so forth.  And note two at the bottom of

10    that page explains what the IRS did, or at least my

11    understanding of what the IRS did.  And I'm assuming that

12    this is correct, is that: Specifically, the IRS granted a

13    credit of $11,491,000 some odd dollars.

14          So this goes back to my original point, Your

15    Honor.  This was an allowed claim.  Remember, there was an

16    objection.  There was a claim filed for $311 million; that

17    was amended by an $11.9 million claim, okay.  Comprised

18    three elements -- tax for '98, prepetition interest, and

19    post-petition interest at the statutory rate.  Okay.  Grace

20    objected to the amount of that claim.

21          THE COURT:  Yes.

22          MR. HIGGINS:  Okay?

23          THE COURT:  No question.

24          MR. HIGGINS:  That's all that Grace did.  We

25    objected to the amount of that claim because we said that

1    wasn't right.  The IRS responded.  And then there was an

2    agreement in that Grace then withdrew its objection.

3              THE COURT:  Right.

4              MR. HIGGINS:  And then a month later, the IRS

5    withdrew its claim.  And I will tell you, as I was the

6    counsel, that was a very unusual feeling to withdraw an

7    objection and wait around for the claim to be withdrawn.

8              THE COURT:  I would agree.

9              MR. HIGGINS:  And that, Your Honor --

10             THE COURT:  Without a written agreement, is that

11   right?

12             MR. HIGGINS:  Yes, Your Honor.  For better or for

13   worse, without a written agreement.

14             THE COURT:  Right.

15             MR. HIGGINS:  And, you know, because the IRS

16   didn't want to enter into a written agreement.  That's the

17   settlement and compromise.  Otherwise, would have litigated

18   it, you know, and we'd have gone to town on it.  But it

19   wasn't necessary because the parties agreed on what the tax

20   was and what the prepetition interest was.

21             THE COURT:  But that brings into play Section --

22             MR. HIGGINS:  5.1 of the plan.

23             THE COURT:  -- 5.1 of the plan.

24             MR. HIGGINS:  Top of Page 68, settlement, you

25   know, compromise and settled, Your Honor.  And that's why

1    we've got an allowed claim, and that's why the 4.19 percent

2    interest -- that's the only thing we're talking about here

3    is what's the rate of interest from April 2nd of '01 to

4    March 15th of '09.  It's 4.19 percent, and I don't think we

5    need any further briefing for Your Honor to arrive at a

6    decision on that point.

7              THE COURT:  All right.

8              MR. HIGGINS:  Thank you.  Mr. Benson, yes, sir.

9              MR. BENSON:  Looking at the footnote that Mr.

10   Higgins just referenced.

11             THE COURT:  Yes.

12             MR. BENSON:  When he said granted a credit, it's

13   better to say abatement of tax.  The key is that NOLs -- and

14   this is on Page 6 of my brief, Footnote 2 -- a credit of

15   $11,491,201, attributable to the carryback of NOLs.  So

16   putting aside what he wanted to say a credit normally means,

17   that was used somewhat colloquially.  But the key is it's an

18   abatement of tax based on the reduction of NOLs, plus $1.2

19   million for refunds for tax years 2001 through '11, which

20   were then reduced by the remaining 5.8 million tax

21   deficiency and $5 million in interest.  So then there was

22   the $1.9 million overpayment, and that then generates this

23   $2 million overpayment with overpayment interest that goes

24   into the refund.

25             The key, though, if I'm reading this correctly, is

1    that part of the refund amount was attributable to the

2    carryback.  So I think my theory was correct that the NOL

3    comes in, it wipes out the tax liability.  It wipes out the

4    accrued interest under our theory of the amount of interest,

5    which would be statutory rate.  There's some left over, plus

6    all the refunds; that goes out.

7              And so, this issue of the claim that there was

8    offset because there were refunds is not correct.  Because

9    it just -- the order of analysis is NOLs from 2008 go to

10   '98; that is part of the '98 year.  Even though they

11   original elsewhere, they added to that year.  That is our

12   defense of lack of overpayment.  There still is an

13   overpayment, but that's what we're making the recoupment

14   argument that we had interest that accrued on that amount.

15   You have these other refunds.

16             The check that goes out is based on the

17   finalization of '98, based on the NOLs coming back, the

18   interest calculation.  And then all the refunds that you've

19   accrued but haven't sent out because we've been doing this

20   10-year examination and you don't want to send money out and

21   then have to ask for it to come back.

22             THE COURT:  Right.

23             MR. BENSON:  So I think that I remain correct that

24   these other refunds are a totally ancillary issue.  They

25   don't go into the fundamental issue we're arguing about,

1    which is what interest rate applies.

2              THE COURT:  Okay, all right.  What further

3    briefing would you give me?

4              MR. BENSON:  It's more an issue of wanting to make

5    sure what I just said is actually correct.  I suppose that

6    could be resolved in a quick letter within a week.  I'm not

7    talking about, you know, some massive attempt at a sort of

8    reply.  I just want to -- you know, Your Honor really

9    focused in on this issue of the refunds.

10             THE COURT:  That's right.

11             MR. BENSON:  And I just want to make sure that I'm

12   telling Your Honor the correct thing when I say that those

13   refund -- or pardon me -- refunds for other years don't

14   factor into the tax issue we're talking about, which is NOL

15   carryback to '98 and then what interest -- what is the

16   appropriate underpayment interest for that tax year.  And

17   that could be resolved very quickly.

18             THE COURT:  All right.  Well, if somebody wants to

19   supplement their brief, I'm going to allow that.

20             MR. BENSON:  Okay.

21             THE COURT:  A letter to me, which you'll docket,

22   no more than three pages.  Is that sufficient?

23             MR. BENSON:  Sure.

24             THE COURT:  And then I'll give you a week to

25   reply, Mr. Higgins, if you'd like.

1            MR. HIGGINS:  Thank you, Your Honor.

2            THE COURT:  And you can tell me that I don't need

3    to reply, I've made my argument, and that will be fine.

4            MR. HIGGINS:  I suspect we'll have something to

5    say, Your Honor.

6            THE COURT:  All right, okay.  I've got a lot of

7    numbers swimming around in my head, and I thought I had it

8    figured out, but maybe not.  So we'll see where we go on the

9    basis of your letter.  All right?

10           MR. BENSON:  All right.

11           THE COURT:  Anything further, folks?

12           MR. HIGGINS:  Not from us, Your Honor.

13           THE COURT:  All right.  Well, thank you for a good

14   argument.  And with that, we'll stand in recess.

15

16                        * * * * *

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya                    Digitally signed by Sonya Ledanski
                              Hyde
6    Ledanski Hyde            DN: cn=Sonya Ledanski Hyde,
                              o=Veritext, ou,
                              email=digital@veritext.com, c=US
7                             Date: 2017.09.22 16:12:22 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 22, 2017

| & | |
|---|---|
| **&** | 1:5 3:8 5:1 17:9 |

**0**

**01** 8:16 9:1,7 10:9
11:4 26:8 27:3,17
43:3
**01-01139** 1:5
**02** 9:7 26:8
**07** 9:7 27:17
**08** 9:10 11:5 13:5
27:4,6
**09** 8:10,16 9:2
10:1 26:9 35:6,7
43:4

**1**

**1.1** 29:7
**1.2** 43:18
**1.9** 43:22
**10** 6:15 13:5 21:13
21:14,14 27:23
35:14 36:6 37:6
37:14 40:3 44:20
**1015** 12:15
**106** 22:1
**11** 1:4 6:16,19 7:2
31:18 43:19
**11,491,000** 33:19
41:13
**11,491,201** 43:15
**11.5** 30:4,4
**11.9** 41:17
**11501** 47:23
**11:01** 1:14
**12** 39:19
**12:17** 1:14
**1300s** 15:19
**14** 34:11
**15th** 8:10,16 9:2
9:10 10:1,7 21:16
21:16 35:6,7 43:4
**18553a** 10:6

**18th** 36:22
**19** 1:13
**1920s** 34:23
**1998** 6:15 7:25
10:25 18:20,21
19:1,3 20:18,22
23:12 26:25 33:5
35:15
**1999** 10:7

**2**

**2** 12:16 33:25
43:14,23
**2000** 25:2 27:1
**2001** 10:24 23:11
25:13,16,24 27:14
28:13 43:19
**2002** 6:18
**2007** 27:14 29:24
**2007-2007** 20:19
**2008** 10:24 18:11
18:19 19:7 23:24
27:22 30:1 44:9
**2009** 6:17 9:10
**2011** 10:25 23:11
25:13,16,24 34:7
34:7
**2012** 6:20 21:16
**2013** 34:10
**2014** 6:22 7:3,22
7:23 12:1 32:19
34:7 35:18,18
36:18 37:5
**2017** 1:13 47:25
**22** 47:25
**22nd** 37:5
**23rd** 36:22
**283** 16:13
**2nd** 8:16 9:1 10:9
43:3

**3**

**3** 20:16 36:17
**3/15/09** 8:14

**3/15/99** 10:9
**300** 47:22
**30s** 34:23
**311** 6:18 41:16
**32854** 2:3
**330** 47:21
**363** 19:9

**4**

**4** 20:20
**4.19** 6:25 13:1,6
21:4,6 22:11,25
30:16 36:25 37:3
40:18 43:1,4
**4/12/17** 2:3

**5**

**5** 17:6 36:5 43:21
**5.1** 7:20 14:12
31:14,22 32:7
42:22,23
**5.5** 8:1,1
**5.8** 8:1 43:20
**502** 12:16 33:25
**553** 15:15 16:22
16:23 19:4 34:16

**6**

**6** 14:9 41:3 43:14
**6.7** 9:1
**6.72** 8:3
**60** 22:1
**6402** 15:4 19:5
28:12 30:10 33:7
**6402/553** 23:19
**68** 32:10 42:24

**8**

**824** 1:11
**885,000** 27:3,21
33:22

**9**

**9** 27:23
**98** 10:8 18:11
23:24 25:20 26:22

27:1 28:10,14
29:25 30:22 41:18
44:10,10,17 45:15

**a**

**a.m.** 1:14
**abatement** 39:12
39:15 43:13,18
**ability** 7:18
**able** 19:2 29:4
40:21
**absent** 12:14
**absolutely** 11:4
13:8 33:10
**account** 28:19
**accrual** 33:9
**accrued** 44:4,14
44:19
**accurate** 47:4
**actual** 22:14
39:22
**add** 23:11,13,13
37:20 40:19
**added** 25:23
44:11
**additional** 38:7
**address** 13:20
19:11
**adjusted** 39:20
**administrative**
21:25
**administratively**
24:14 28:11
**admit** 29:1
**admittedly** 11:23
**adopts** 14:20
**advantageous**
22:6
**affirmative** 11:15
11:15,16,17,19,19
23:23 35:1,2
**agree** 7:25 10:18
11:2 29:4 33:4
34:17 38:4,18

39:1 42:8
**agreed** 11:21
  42:19
**agreement** 7:15
  7:16 11:9,10
  31:11,13 32:22,23
  33:6 39:4 42:2,10
  42:13,16
**agrees** 9:13 10:17
**al** 1:5
**allow** 7:5,19 12:5
  21:6 28:10 45:19
**allowance** 31:8
**allowed** 7:1,5 14:1
  14:3,8,19 24:2,3
  24:10 30:12,13,24
  30:25 31:2,4,25
  31:25 33:13,24
  35:19 41:15 43:1
**allowing** 4:15
**amazing** 11:9
**amended** 6:19
  41:17
**amount** 7:4,5,25
  8:2,12,13,15 9:14
  11:9 12:5 20:7
  21:3 26:24 33:5,6
  33:12 38:24,25
  39:1,21 41:8,20
  41:25 44:1,4,14
**amounts** 11:21
**analysis** 44:9
**ancillary** 44:24
**answer** 11:3 18:8
  20:21 35:8
**antecedent** 9:24
**anyway** 28:6
**apologize** 28:8
**appeal** 34:9
**appeals** 34:9
**appearing** 4:25
  12:7

**appears** 11:25
  12:24 14:9
**applicable** 31:19
**applied** 26:8
**applies** 9:18 31:17
  45:1
**apply** 10:12 11:13
  11:19 13:25 23:4
  31:7,10,16 32:1
  34:17 41:6
**appreciate** 13:14
**appropriate** 12:6
  45:16
**approval** 32:15
**approved** 31:11
**approximately**
  27:2,15,21 33:22
  36:21,22 37:5
**april** 7:3,22 8:15
  9:1 10:9 32:19
  36:21,22 37:5
  43:3
**argue** 22:7
**argued** 8:9,17
  22:6
**arguing** 8:20,21
  9:18,19,20 34:20
  44:25
**argument** 5:11
  6:1,2,8 13:14 22:8
  22:24 34:14 37:3
  44:14 46:3,14
**arguments** 33:14
**arises** 6:15
**arithmetic** 18:5
**arose** 9:3,6,10,25
  10:2,7 18:21 25:5
**arrive** 25:24 43:5
**asbestos** 14:15
  31:17
**aside** 43:16
**asked** 18:7

**aspersions** 11:24
**asserts** 19:23
**assess** 19:22
**assessable** 19:18
**assessed** 19:14,17
**assume** 13:3 19:7
**assuming** 22:7
  41:11
**attempt** 45:7
**attempting** 36:4
**attorney** 3:4
**attorneys** 3:9,14
**attractive** 13:7
**attributable**
  33:20 40:11 43:15
  44:1
**attribute** 25:13
**attributes** 18:19
  19:2 23:25 24:7
  24:13,17,19,20
  25:17,18 27:19
**available** 15:15

**b**

**b** 1:21 12:16 14:9
  16:15 33:25
**back** 12:18 13:10
  18:19 20:6 21:13
  25:23 26:15 27:4
  28:13 29:25 30:13
  30:15 32:6 34:22
  34:23 39:6,21,23
  40:13 41:14 44:17
  44:21
**backs** 18:25
**bankrupt** 18:1
**bankruptcy** 1:1
  1:10,23 6:21
  17:17 19:4,8
  21:18 26:6 28:1,3
  31:12,13 32:15
  34:2,4,16
**barred** 24:11

**based** 17:20 18:21
  19:23 20:14 22:14
  22:22 23:2 30:15
  39:15,23 40:15
  43:18 44:16,17
**baseline** 20:15
**basically** 16:1
  18:5 21:7,11 23:2
  29:10
**basis** 46:9
**beginning** 36:19
**behalf** 4:25
**believe** 12:23
  15:19 17:6,8,20
  21:15 22:25 31:15
  34:7 36:14
**benson** 3:6 5:11
  5:13,14,15 10:16
  12:24 13:14,15,17
  13:19,24 14:7
  15:9 16:10 17:4,6
  18:2,4,6,14 20:14
  20:18,25 21:20
  22:4 23:7,17,19
  24:9 25:14,19
  26:1,4,21 27:1
  28:9,21,25 29:13
  30:3 31:3,6 32:5
  35:24 36:2,4,6,8
  36:11 37:9,12,15
  37:20,22 38:11
  40:21 43:8,9,12
  44:23 45:4,11,20
  45:23 46:10
**best** 22:21
**better** 22:13 24:24
  40:7 42:12 43:13
**big** 9:9
**billion** 35:11
**bit** 23:8,16
**blackstone** 3:9
**blunt** 32:10

[body - continue]

**body** 17:15
**books** 39:20
**bottom** 41:9
**branch** 16:16
**break** 36:6
**brief** 14:2 17:2,4,7
  17:14 21:1 43:14
  45:19
**briefed** 14:14
**briefing** 13:21
  14:25 27:15 29:3
  33:16 38:7 40:24
  41:2 43:5 45:3
**briefs** 23:10
**bring** 17:22 21:25
  25:4
**brings** 42:21
**brought** 24:18
  28:13 40:15
**burden** 5:24,25
**business** 15:22
  32:14

**c**

**c** 3:1 4:1 11:6 26:6
  28:24 47:1,1
**calculate** 30:8,15
  33:12
**calculated** 40:12
  40:14
**calculation** 25:16
  28:15 29:17,25
  30:19 40:22 44:18
**calculations** 23:10
  32:3
**calculator** 39:11
  40:8
**call** 7:24
**called** 10:6 23:20
  23:20
**calmly** 40:22
**capital** 25:3
**carried** 18:19
  20:6 21:13 30:13

39:6
**carries** 39:21
**carry** 18:24,24
  25:1 29:15
**carryback** 21:12
  33:20 43:15 44:2
  45:15
**carrybacks** 25:21
  29:14
**case** 1:5 9:25 15:3
  16:8,15 18:16
  19:4,13 21:23
  22:15 30:20 31:22
  41:4
**cases** 19:12,15
  24:5 31:18 34:22
**cashed** 36:22
**cast** 11:24
**certain** 8:2 15:18
  16:12 31:17 37:11
  39:20
**certainly** 36:6
**certified** 47:3
**challenge** 25:7
**chance** 28:7
**change** 7:2
**changes** 40:4
**chapter** 1:4 31:18
**charitable** 24:22
**check** 11:25 28:16
  29:18 35:7,10
  44:16
**checks** 29:20
  36:22
**circuit** 17:7 33:14
**cite** 16:10,12
  19:12 21:21
**cited** 24:6 36:12
**claim** 5:25 6:17,18
  7:2,5,6,7,9,13,25
  8:6,11,12,15,19
  8:22,25 9:21,21
  9:22,24 10:5,6,10

10:17,21,25 11:10
  12:2,5,5,11,13,13
  12:14,15 13:10,22
  14:1,1,3,4,4,8,15
  14:19 17:19,22
  18:1 20:9 21:5
  22:11 30:11,12,13
  30:23,24 31:2,19
  31:20,25 32:1,24
  33:1,13,13,24
  35:2,6,19,19,20
  38:9,10,19,22
  39:6 41:15,16,17
  41:20,25 42:5,7
  43:1 44:7
**claimant** 14:11
  31:11,14
**claimed** 7:8
**claims** 6:22 7:19
  9:24 11:17,18
  12:11,17 13:11
  14:15 23:23 31:18
  31:21 36:18,18,23
  36:25 37:4
**clarify** 14:24
**clear** 14:25
**clearly** 8:6
**clerk** 4:2 37:18
**client** 5:6
**code** 15:5,18 19:4
  19:5 28:3
**colloquially** 43:17
**combining** 29:19
**come** 12:18 20:3
  22:8 27:10 30:15
  39:23 40:13,17
  44:21
**comes** 11:20
  13:10 15:12 19:16
  26:15,20 27:24
  29:7 44:3
**coming** 27:19
  30:7 44:17

**committee** 35:16
**common** 15:4
**complex** 29:5
**complicated** 40:3
**components** 7:6
**comprised** 41:17
**compromise** 7:10
  7:11,17,18,19 8:8
  33:3 38:4,10
  42:17,25
**compromised**
  32:13,25 33:11
  36:14,14 37:25
**conceivably** 30:16
**concept** 16:13
  18:25
**concern** 39:2
**concerned** 14:7
**concession** 38:25
**conclude** 6:17
**confidentially**
  39:8
**confidently** 39:9
**confines** 34:5
**confirmation** 2:2
  34:9
**confirmed** 22:12
  22:19,23 28:2
  34:6,6
**confusion** 29:3
**congratulations**
  4:20
**considered** 38:21
**consistency** 16:2
**consistent** 16:3,19
**construct** 34:12
**context** 17:18
  20:3 24:10
**contexts** 16:23
**contingencies**
  30:20
**continue** 38:14

**controversy** 7:1
  11:11 33:10
**convoluted** 7:17
**copies** 11:6
**corporate** 24:2
  29:5
**correct** 41:12 44:2
  44:8,23 45:5,12
**correctly** 22:2
  43:25
**counsel** 5:2,2,9
  6:10 26:18 34:3
  34:14 42:6
**counsel's** 26:19
**country** 47:21
**couple** 6:12 10:11
  19:11
**course** 4:4 8:21
  13:4 27:22 35:15
  36:1
**court** 1:1,10 4:3,8
  4:12,14,19,21,24
  5:4,5,8,13,18,20
  5:22,24 6:3,9,24
  8:5,18 9:5,8,17
  10:13,15,20 12:8
  12:21,24 13:3,8
  13:13,16,18,23
  14:6 15:8,10 16:1
  16:9,22 17:2,5,25
  18:3,5,13,16
  20:12,17,24 21:18
  22:3 23:7,18 24:8
  25:12,15,22 26:2
  26:10,14,25 27:7
  27:12 28:7,20,24
  29:12 30:2 31:1,5
  31:12,13 32:4,8
  32:15,17 35:23
  36:1,3,5,9,20,23
  37:2,8,11,13,16
  37:19 38:8 40:20
  40:25 41:21,23

42:3,8,10,14,21
  42:23 43:7,11
  44:22 45:2,10,18
  45:21,24 46:2,6
  46:11,13
**courtroom** 5:6
**courts** 15:11
  16:18 17:12 20:2
  23:20
**cover** 12:10
**credit** 9:13,15,25
  27:22 29:7 33:18
  33:19 41:13 43:12
  43:14,16
**credits** 10:2 27:3
  27:20 28:22 30:7
  30:21 33:22,23
  35:5,20 40:6,6,15
  40:19
**crisis** 13:5
**critical** 9:11
**crucial** 18:9 23:22
**crucially** 23:21
**curly** 12:19
**currency** 33:24

**d**

**d** 4:1 11:6 34:23
**date** 8:4,11,12
  9:11,12 15:14
  32:11 33:9,9 35:4
  36:13,15,17 37:7
  47:25
**dates** 9:11 36:17
**day** 29:20
**days** 22:1
**deadline** 21:11
**deal** 19:15
**dealing** 10:22,23
  14:19 15:11 16:11
  17:16 18:24 19:4
  19:21 20:5 23:9
  23:14,22 24:7,15
  24:16 29:22 30:23

33:8 40:2
**deals** 15:19 22:1
**dealt** 14:14 28:1
**debtor** 3:14 14:4
  31:14 39:17,20
**debtors** 1:6 5:1
  6:6,21 7:3,10,12
  7:18 8:21 9:25
  11:21 14:11 15:17
  18:16 19:8,12
  21:1,22 22:16
  29:5 32:12,14,18
  32:25 37:24
**decide** 31:24
**decision** 7:24 12:4
  17:8,10 22:16
  43:6
**defense** 11:15,18
  11:19,20 16:14,25
  17:11,13,17,19
  20:1 23:21 34:21
  35:2,2 44:12
**defenses** 11:15,16
**deficiency** 10:25
  23:12 43:21
**definitely** 16:4
  19:3
**definition** 12:15
  14:9 30:25
**definitions** 14:9
**delaware** 1:2,12
**department** 3:3
  5:12
**depending** 38:12
**described** 29:24
**describes** 8:23
**detail** 27:5
**determined** 29:9
  31:18 41:8
**difference** 34:25
  40:16
**different** 15:20
  18:8,21 23:9,14

24:7,24 25:11
  27:18 34:15
**differently** 6:11
**direct** 14:8
**disagree** 39:9
**disagreement**
  9:14
**disallowance**
  33:25
**disallowed** 7:19
  12:18
**discuss** 23:5
**discussion** 13:21
  16:11
**discussions** 12:2,3
**dispute** 14:16
  30:11 33:17 38:12
  38:24
**distinction** 20:4
  23:17,22 34:25
**district** 1:2
**docket** 2:3 45:21
**doctrine** 16:6,11
  17:11
**doctrines** 15:1
**documents** 39:3
**doing** 44:19
**doj** 38:2
**dollars** 6:20 35:11
  41:13
**donations** 24:22
**driving** 32:20
**due** 9:11 21:15
**dwarfs** 30:6

**e**

**e** 1:21,21 3:1,1,11
  4:1,1 47:1
**earlier** 32:21
**earth** 33:1
**ecro** 1:25
**effected** 36:13
**effective** 6:21
  22:12,18,19 23:1

23:3 32:11 36:15
36:17 37:7
**effectively** 18:18
20:19 21:1 22:9
22:16,24 24:15
25:6 30:14
**eight** 26:12 37:6
**electric** 17:9
**elements** 41:18
**embodied** 15:18
**ends** 26:11
**enforcing** 2:1
**engages** 19:23
**enter** 7:16 32:21
42:16
**entire** 39:22
**entirely** 16:19
**entry** 2:1
**epa** 35:10
**equally** 30:18
**equitable** 11:13
11:14 15:16 34:19
35:1
**equivalent** 17:18
39:16
**especially** 21:23
**essentially** 7:24
39:13
**et** 1:5
**events** 23:2
**everybody** 4:23
16:23
**evolution** 35:17
**exactly** 20:23 25:5
**examination** 6:16
44:20
**examinations**
40:4
**example** 24:24
**exceeds** 20:7
**exchange** 39:3,4
**excuse** 8:2 9:4

**exercised** 41:4
**exhibit** 26:6 28:24
31:20,21
**exhibits** 11:6
**existence** 9:12
**existing** 8:7 35:3
**exiting** 34:11
**experience** 21:22
22:5
**explains** 41:10
**extent** 16:3 24:4
29:22 30:10,12

**f**

**f** 1:21 47:1
**fact** 5:15 6:6
17:23 23:8 29:19
**factor** 19:2 45:14
**factored** 18:19
30:21
**facts** 6:11 22:14
33:16
**far** 13:1 14:7
**february** 6:21
34:11 36:17
**fed** 20:15
**federal** 17:7
**fee** 36:18
**feeling** 42:6
**fight** 38:14
**figured** 46:8
**file** 22:17
**filed** 2:2 6:18 18:1
31:21 32:11,18
36:13,24 37:5,24
38:17,23 41:16
**final** 7:21 9:3 14:2
31:11,12,18
**finalization** 44:17
**finally** 7:23 20:11
**financial** 13:5
**fine** 20:2 46:3
**finke** 5:6,8

**first** 5:14 6:7,17
6:18 13:19 14:24
28:3 29:23 37:22
41:3
**fitzgerald** 35:9
**five** 37:9
**fix** 11:7
**fixed** 29:16
**fluctuated** 20:20
**focus** 11:8 12:5
**focused** 20:21
45:9
**folks** 46:11
**footnote** 16:12
17:7,15 43:9,14
**foregoing** 47:3
**forget** 20:15
**form** 7:10,11
32:22
**formal** 39:4
**formula** 25:22
**forth** 12:20 33:19
41:9
**forward** 25:2 29:2
30:19
**forwards** 18:24
29:15
**four** 6:22
**frank** 32:24
**frankly** 7:15 10:1
34:20
**frequently** 15:11
22:6
**front** 27:24 31:15
**full** 31:15 41:3
**functionally**
18:20
**fundamental**
26:17 44:25
**fundamentally**
26:17
**funds** 15:23 20:15

**funny** 11:5
**further** 29:3
33:15 43:5 45:2
46:11

**g**

**g** 4:1
**gas** 17:9
**general** 5:9 12:25
**generally** 10:21
15:12 19:8,9 24:7
**generate** 20:7
**generated** 26:8
27:3,18,20 33:23
35:5
**generates** 43:22
**generic** 12:16
**getting** 16:13
**gift** 15:24
**gigantic** 29:25
**give** 27:3 34:10
36:6 37:14 45:3
45:24
**given** 26:23 29:2
**glad** 4:23
**gleaned** 27:16
**glossed** 13:20
**go** 5:14 22:12,19
24:6 27:4 28:15
29:6,11 32:6
34:22 44:9,25
46:8
**god's** 33:1
**goes** 17:1 22:17
29:8,25 35:15
39:23 40:13,16
41:14 43:23 44:6
44:16
**going** 5:10,11
16:2,23 18:18
22:17,19 23:3
29:18 30:7,22
41:2 45:19

**good**  4:3,7,8,13
  5:8 6:4 13:14,15
  13:18 46:13
**gotten**  11:3 21:5
**governed**  34:15
**government**  11:25
**government's**
  33:14,16 41:3
**grace**  1:5 4:5 5:9
  7:23,24 8:20
  34:11 35:7,10,12
  41:19,24 42:2
**grace's**  27:5 41:8
**grant**  25:15
**granted**  33:18
  41:12 43:12
**green**  33:1
**gross**  1:22
**group**  3:9
**guess**  6:1 20:20
  24:24 26:3 29:23
  30:8 37:6

**h**

**handling**  39:15
**happen**  9:23
  11:24,25 38:11
  40:6
**happened**  8:24,25
  16:17 17:21 21:10
  22:9 28:2,11,12
  32:15 38:3 39:19
  39:19
**happens**  38:15,17
**happy**  4:22,23
  5:15
**hazards**  39:2
**head**  6:13 46:7
**healthy**  4:23
**hear**  4:22
**hearing**  2:1
**higgins**  3:13,16
  4:8,9 5:3,10 6:3,5
  6:6,10,25 8:6,19

9:6,9,19 10:14,18
  11:2 12:9,23,25
  13:4,9,13 14:10
  18:7 26:5,11,15
  27:2,7,10,13 28:8
  30:8,18 32:5,6,9
  32:18 36:12,16,21
  36:25 37:3 39:9
  40:25 41:1,22,24
  42:4,9,12,15,22
  42:24 43:8,10
  45:25 46:1,4,12
**high**  20:22
**higher**  13:1 20:18
**hold**  27:7
**hon**  1:22
**honor**  4:7,17 5:5
  5:10 6:2,5 9:4
  10:18 11:2 12:10
  12:23 13:9,15,19
  14:8,20 18:7,22
  21:7,20 22:2 23:6
  24:5,22,25 25:14
  26:5,21 27:11,14
  28:8,9 29:14
  30:24 31:23 32:6
  32:24 33:21 35:22
  35:24 36:2,12,16
  37:9,15,22 38:6
  38:11 39:7 41:1
  41:15 42:9,12,25
  43:5 45:8,12 46:1
  46:5,12
**huge**  39:21 40:2
**hundreds**  6:20
**hyde**  2:25 47:3,8
**hypothetically**
  22:13

**i**

**idea**  11:10,11
**immaterial**  26:23
**immediate**  36:11

**important**  18:7
**importantly**  38:6
**included**  29:21
**income**  19:10
  24:20,23 25:1
**incurs**  18:15
**independently**
  24:15
**indiscernible**  15:3
  16:8 17:9 26:7
  38:17
**individual**  24:3
**inequitable**  22:22
**informed**  27:6
**initial**  21:3 40:17
**initially**  14:13,14
  20:6
**insofar**  11:16
**interest**  7:7 8:2,10
  8:13,15,20 9:1,16
  9:18,20 10:8,10
  11:12 12:4,6,11
  12:12,15,17,19,20
  12:21 13:22 19:13
  19:14,16,17,18,22
  20:5,8,12,21
  22:23 23:3,12,13
  25:20 28:4 30:14
  30:15,17 32:1,3
  33:6,9,12 34:1
  39:25 40:14 41:18
  41:19 42:20 43:2
  43:3,21,23 44:4,4
  44:14,18 45:1,15
  45:16
**internal**  2:2 4:5
  15:5,18
**involve**  18:8 23:10
**involved**  19:12
**involving**  4:5
**irc**  19:4,5
**irrelevant**  14:22
  40:1

**irs**  3:4 6:16,19,22
  7:7,9,13,15,23 8:9
  8:13,16 9:13
  10:16 11:16,20
  12:6,21 15:6 16:1
  19:21,23 23:15
  24:11 27:25 28:18
  32:19,21 33:18
  34:20 35:14,18
  36:18 38:9,18
  41:4,7,10,11,12
  42:1,4,15
**irs's**  10:5
**isolate**  11:10
**issue**  5:25 7:4 8:9
  8:14 13:12,20
  14:10,23 15:1,13
  16:5,22 19:19
  24:16 25:7,9,10
  25:11,19,20,21
  26:18,20,21 33:11
  36:11 39:7 40:13
  40:18 44:7,24,25
  45:4,9,14
**issued**  28:17
  32:20 35:18
**issues**  14:20 15:11
  16:1 24:11,13
  31:24

**j**

**j**  3:16
**james**  3:11 4:25
**january**  34:7
**joint**  35:16
**jones**  3:8 5:1
**judge**  1:23 35:8
**judgment**  32:14
**judgments**  37:23
**jumps**  19:24
**junior**  20:22
**justice**  3:3 5:12

| k | | | |
|---|---|---|---|
| **kevin** 1:22 | **left** 6:22 40:6 44:5 | **lower** 24:20 | **mistaken** 21:12 |
| **key** 23:17 43:13 | **legal** 6:1,2,8 47:20 | **m** | 21:17 |
| 43:17,25 | **leisurely** 36:10 | | **model** 23:14 |
| **kg** 1:5 | **length** 34:8 | **major** 11:12 | **modules** 40:5 |
| **kick** 19:2 | **letter** 45:6,21 46:9 | 12:10 | **moment** 34:1 |
| **kind** 11:6 15:22 | **letters** 39:4 | **making** 44:13 | **money** 16:4 17:20 |
| 23:7 38:15 | **lewis** 16:15 34:23 | **maneuver** 22:10 | 17:23 19:5,6 |
| **kinds** 31:17 34:15 | **liabilities** 19:24 | **march** 8:10,16 9:2 | 20:10 26:24 38:13 |
| **knew** 22:18 | **liability** 18:20 | 9:10 10:1,7 21:16 | 38:24,25 44:20 |
| **know** 6:10 9:5,22 | 19:1,3 39:19,22 | 35:6,7 43:4 | **month** 42:4 |
| 11:5,7,7,8,16 12:4 | 40:10 44:3 | **marked** 11:5 | **morning** 4:3,7,8 |
| 12:11,18,21 13:4 | **limitations** 15:25 | **market** 1:11 | 5:8 13:14,15 |
| 15:10,22 20:13,20 | 19:22,25 21:11 | **massive** 27:1 35:9 | **motion** 2:1 5:16 |
| 22:5,18 24:6,12 | 24:12 | 45:7 | 5:17,18 |
| 24:21,22 26:6,16 | **limited** 24:4 | **material** 18:9 | **move** 16:4 24:3 |
| 26:17,19,22 27:6 | **line** 6:7 34:22 | 19:15 | **moved** 25:10 |
| 27:24 28:21,23 | **lines** 9:15 | **math** 40:7 | **moving** 14:23 |
| 29:5,6,13,14,18 | **listed** 31:19,20 | **matter** 4:5,5 5:2 | 23:25 29:2 35:14 |
| 30:25 31:3 34:1 | **litigate** 24:10,11 | 5:14 10:23 12:25 | 40:5 |
| 34:12,22,24 35:12 | 24:13 | 16:2,21 34:12 | **multiple** 10:22 |
| 35:13 38:3,4,13 | **litigated** 19:20 | **matters** 20:4 | 29:20 |
| 38:17,19,21 42:15 | 42:17 | 30:12 | **multiyear** 10:23 |
| 42:18,25 45:7,8 | **litigating** 25:11 | **mean** 10:24 26:7 | **n** |
| **known** 15:16 16:6 | **litigation** 19:17 | 26:11 37:23 40:2 | |
| 16:14 | 39:2 | **means** 43:16 | **n** 3:1 4:1 47:1 |
| **knows** 5:5 | **little** 8:1 23:8,15 | **memory** 27:13 | **name** 10:6 |
| **l** | 36:10 37:13 40:22 | **mention** 20:25 | **nature** 38:14 |
| | **llc** 3:13 | **mentioned** 36:18 | **necessarily** 14:25 |
| **lack** 16:14,25 | **llp** 3:8 | **merely** 33:23 | 39:1 |
| 17:11,13,17 19:23 | **loan** 15:24 | **merits** 8:25 | **necessary** 16:3 |
| 20:2 23:21 34:21 | **long** 22:12 39:14 | **microphone** 27:8 | 20:9 42:19 |
| 44:12 | **look** 12:14 24:5 | **middle** 12:1 | **necessitate** 29:3 |
| **lapsed** 19:22 | 30:25 35:25 37:10 | **million** 6:18,19 | **need** 7:20 28:16 |
| 21:16 | 39:14 | 7:2 8:1,1,1,3 9:1 | 29:8 30:14,14 |
| **largely** 16:20 | **looked** 6:13 13:6 | 27:23 29:7 30:4,4 | 32:2 33:15 41:2 |
| **late** 34:10 35:18 | **looking** 11:8 26:6 | 39:19 41:16,17 | 43:5 46:2 |
| **law** 3:13 15:4 | 28:24,25 29:4,7 | 43:19,20,21,22,23 | **net** 9:4,6 15:7 |
| **lawyers** 26:7 27:5 | 30:3,4,19 35:15 | **millions** 30:5 | 18:15 30:14 |
| **lay** 11:6 | 40:5 43:9 | **mind** 11:7 | **netted** 28:13 |
| **led** 8:3 12:7 34:10 | **losses** 9:4,6 18:15 | **mineola** 47:23 | 40:14 |
| 39:12 | 25:3 | **minute** 36:6 | **never** 11:20 13:11 |
| **ledanski** 2:25 47:3 | **lot** 46:6 | **minutes** 6:12 | 20:3 22:19 28:1,2 |
| 47:8 | | 37:10,14 | **news** 4:22 |

nine  13:6
nol  9:12 21:12
  29:25 30:17 44:2
  45:14
nol's  18:18
nols  9:3,3 10:3,24
  11:4 18:21 20:6,6
  21:13 23:10 25:18
  25:18 26:22,25
  27:1,20 30:6
  33:20 39:13,15,21
  40:13 43:13,15,18
  44:9,17
normal  33:8
normally  16:14
  24:11 43:16
north  1:11
noss  39:5
note  15:14 17:12
  19:3,12 41:7,9
notional  8:11
notwithstanding
  15:25
nuanced  31:24
number  9:3 10:12
  25:25 27:18,24
  29:21
numbers  46:7
numerous  18:15
ny  47:23

o

o  1:21 4:1 47:1
o'neill  3:11 4:7,9
  4:10,13,17,20,22
  4:25,25 5:5,9,17
  5:19,21,23 6:2
objected  7:2
  41:20,25
objection  7:12 8:7
  14:3,5 31:4,5,6,7
  31:8,8,9 32:19,23
  33:2 37:5 38:16
  41:16 42:2,7

objections  32:11
  36:13
observed  33:21
odd  6:19 22:21
  41:13
offices  3:13
offset  16:11,20
  17:8,10 20:1
  28:11,11 30:10
  44:8
offsets  23:19
okay  5:18,23
  13:13 17:5 20:17
  22:3 23:17 24:8
  27:12 32:17 37:8
  37:12 40:20 41:17
  41:19,22 45:2,20
  46:6
old  47:21
one's  6:13
ongoing  12:3
opening  21:1
operating  9:4,6
  18:15 27:13 34:5
operator  1:25
opine  20:23
opposed  30:22
opposition  33:16
  41:3
order  2:1,2 7:21
  9:23 13:24 14:2
  31:11,12,18 34:9
  39:8 44:9
original  39:16
  40:10 41:14 44:11
overpayment
  15:5 16:14 17:1
  17:11,14,17 18:10
  18:11,12,17 19:7
  19:23 20:2 23:13
  23:21 24:1 25:9
  28:13 29:24 30:21
  34:22 40:1 41:8

43:22,23,23 44:12
  44:13
overpayments
  15:13 26:8 27:18
  39:22,24 40:11,16
overruled  31:10
owe  17:20,21,23
  17:23,24 19:5,6
  26:2,2
owed  20:5,9 23:23
  23:24 25:15,25
  38:12

p

p  3:1,1 4:1
p.m.  1:14
pachulski  3:8 5:1
pacific  17:9
page  16:13 17:6
  32:10 41:3,10
  42:24 43:14
pages  45:22
paid  6:25 8:10,15
  18:12 21:2,3
  33:24 35:6,19,20
  36:21,23,25 37:4
painful  30:7 32:2
paragraph  41:4
pardon  45:13
part  16:18 25:16
  25:24 26:17 44:1
  44:10
particularly
  20:21 30:23
parties  10:21 19:1
  25:23 33:4 42:19
parts  35:13,14
pay  18:17 21:6
  22:10
payer  15:20
paying  8:13 21:4
payment  20:8
  28:5

pays  18:14
people  22:7
percent  7:1 13:2,6
  20:16 21:4,6
  22:11,25 30:16
  37:1,4 43:1,4
period  13:1
petition  7:7 8:4,15
  9:20 15:14 28:4
  33:9,12 34:18
  35:3,6 41:19
phone  39:11
place  28:3
plan  2:1 7:20
  12:12,14,20 13:11
  13:24 14:12,13,17
  21:5 22:12,17,18
  22:22 23:1,3,4
  28:2 31:15 32:7
  34:6,8 42:22,23
platform  35:25
play  11:20 42:21
please  4:2 23:3
  37:18
plus  9:1 10:9
  20:16 43:18 44:5
podium  5:10
point  6:1 9:2
  15:17 16:12 18:7
  20:5 25:3 27:25
  32:20 35:9 41:2
  41:14 43:6
pointed  14:1
points  12:10
  19:11 23:5
portion  15:18
  30:17
position  16:3 22:8
  27:25 40:25
possible  22:15
  28:14 40:9
post  7:7 8:13,14
  9:20 28:4 33:12

34:18 35:6 41:19
**prepared** 22:4
**preparing** 27:16
**prepetition** 8:2
10:8 15:12 33:6,8
34:18 41:18 42:20
**present** 5:11
14:16
**presiding** 35:9
**presumably** 21:16
**pretty** 40:23
**priority** 12:13
37:4
**probably** 30:5
38:7
**problem** 4:15,18
16:18
**proceedings** 47:4
**process** 35:16
**profitable** 21:9
**pronounce** 16:7
**proof** 5:24,25 7:6
14:4
**properly** 29:2
**prosecuted** 32:12
37:24 38:1
**provided** 31:9
32:12
**provision** 13:24
21:21 32:1 36:12
**purposes** 25:5
34:16,24
**pursuant** 7:20
14:12 15:3 31:14
31:21
**put** 11:4
**putting** 43:16

**q**

**quarrel** 34:3
**quarter** 35:10
**question** 10:13,16
22:4 26:15 33:4,5
37:25 41:23

**questions** 23:6
**quick** 40:23 45:6
**quickly** 45:17
**quietly** 36:9
**quite** 7:15 8:21
10:1 32:24 34:19
39:11,18 40:9

**r**

**r** 1:21 3:1 4:1 47:1
**rapidly** 39:10
**rate** 7:8 9:16 10:9
11:12 12:4,6,19
12:20,21 13:7
20:12,15,16 22:24
23:4,4 30:17 32:1
40:18 41:19 43:3
44:5 45:1
**rates** 20:21
**read** 14:12 36:4,9
37:23
**reading** 14:17
37:14 43:25
**really** 6:1,7,7
10:12 13:6,9,10
14:21 15:1 22:21
26:17 34:12 35:21
38:1,4,22,23 40:1
45:8
**reason** 11:12
19:15 39:1
**reasons** 10:11
27:4
**recall** 28:16 34:24
**recess** 37:13,17
46:14
**recipient** 15:23
**recite** 36:16,17
**recollection** 14:14
**record** 28:9 47:4
**recorded** 39:16
**recouped** 9:21
**recoupment** 8:17
8:23 9:23 10:11

10:20,22 11:13,14
13:11,12 14:21,24
15:17 16:7,16,20
17:12,13,18 20:1
23:20 25:7 30:6
34:19 35:1 40:10
41:5,6 44:13
**redacted** 29:2
**reduced** 22:24
43:20
**reduction** 30:5
43:18
**refer** 15:1 28:22
**reference** 17:14
**referenced** 14:10
43:10
**referred** 14:18
15:2,9 16:15,15
17:10
**refers** 17:8
**reflection** 37:23
**refund** 7:23 8:13
11:25 19:17 20:7
21:2,5 22:11,17
23:1 24:17 29:16
29:17 30:21 32:20
35:19 39:13,23,25
40:10 43:24 44:1
45:13
**refunds** 10:24
23:11 25:12,15,21
25:23 26:22 28:17
29:10 30:15 40:1
43:19 44:6,8,15
44:18,24 45:9,13
**regarding** 24:12
**relatively** 6:14
26:23
**relevance** 29:11
**relevant** 14:16
17:10
**remain** 44:23

**remaining** 43:20
**remember** 12:13
22:2 41:15
**reorganization**
34:6
**reorganized** 1:6
5:1 6:6,20 7:3,9
7:12,18 8:21 9:25
11:21 31:13 32:12
32:14,18,25 37:24
**reply** 45:8,25 46:3
**request** 22:17
**requested** 23:1
**require** 38:7 39:8
**reschedule** 4:16
**resolved** 7:9 14:11
31:10,13 40:23
45:6,17
**respective** 10:3
**responded** 32:19
42:1
**response** 33:17,18
**result** 9:13 39:13
**retroactively**
22:23
**return** 9:11 21:15
**revenue** 2:2 4:5
15:5,18
**reviewed** 31:15
**reynolds** 16:15
34:23
**richard** 5:6
**right** 4:10,11,19
5:13,18 9:17
10:18 14:6 18:13
20:8,24 26:1,13
27:8,12,24 29:12
31:3 32:4,4 35:11
35:23 37:15,16,20
40:18 41:5,5 42:1
42:3,11,14 43:7
44:22 45:2,10,18
46:9,10,13

rights  15:4
rise  4:2 37:18
road  47:21
roger  3:13,16 5:3
  6:5
root  16:16
roughly  39:16
rule  21:25
running  21:19
  28:19

**s**

s  3:1 4:1
sale  19:9
satisfied  8:12
saying  17:19,20
  23:2 25:17 31:1
  34:3
says  11:16 19:25
  32:10 33:16 41:4
  41:7
scenario  29:23,23
seated  4:4 37:19
second  27:7 29:23
section  7:20 12:15
  12:16 14:9,12,13
  15:4 32:6 33:7,8
  33:25 34:15,16,16
  36:12 42:21
sections  14:18
see  6:4 14:10
  21:20 28:21 31:3
  46:8
sees  6:10
sells  24:25
send  44:20
sense  18:9,9 21:24
  28:18 40:19
sent  7:23 44:19
separate  40:2
september  1:13
  7:22 12:1 21:16
  47:25

series  26:8 27:17
  32:3
service  2:2 4:6
set  12:20
setoff  10:16,17,21
  14:21,23 15:2,2,4
  15:10,11 16:20
  29:24 34:15 41:5
settled  7:10 32:13
  32:25 33:11 37:25
  42:25
settlement  7:10
  7:11,14,16,17,17
  8:8 32:22,22 33:3
  35:10 38:15,21
  39:3,4 42:17,24
seven  37:6
short  33:14
side  4:11 10:4,5
  15:14
sides  23:23
simple  6:14
simply  8:21 9:15
  11:4
single  28:19
sir  4:24 43:8
situation  19:5
  37:21
situations  19:21
size  27:23
slightly  38:2
sole  8:14 12:12
solutions  47:20
somebody  45:18
somewhat  43:17
sonya  2:25 47:3,8
sorry  4:9 22:2
  25:14 26:5 33:17
sort  6:7,13 8:11
  12:18 13:20 22:21
  23:14 28:17 45:7
sought  21:2,3
  24:17

source  12:12
speaking  10:21
specific  28:4
specifically  41:12
speed  36:4
spit  29:10
stand  46:14
stang  3:8 5:1
start  5:21,22 32:9
stated  33:17,18
states  1:1,10
statute  15:25
  19:21,25 21:11,24
  24:12
statutorily  24:14
statutory  7:8 9:18
  9:19 10:8 23:3
  30:17 33:8 40:18
  41:19 44:5
stay  21:18
stock  24:25
stole  6:7
stop  7:24
stopped  35:14
straightforward
  6:14
street  1:11
subsequent  23:2
subsequently  6:19
  27:16
substantive  39:7
subtract  23:12,12
suffice  7:14
sufficient  20:7
  39:21 45:22
suggesting  18:22
suite  47:22
supplement  45:19
supplemental
  40:23 41:2
supply  27:5
support  22:8

suppose  45:5
sure  5:24 10:14
  16:7 30:18 33:15
  36:8 45:5,11,23
suspect  46:4
suss  19:18
swimming  46:7

**t**

t  47:1,1
table  5:2 34:19
take  6:12 16:2
  24:23 26:18 27:3
  34:10 35:24 36:5
  37:10,13,13
taken  7:24 12:2,5
  27:25
takes  24:5 35:16
talked  41:6
talking  11:17,18
  13:25 15:21 16:17
  18:25 26:19 43:2
  45:7,14
tap  16:16
tax  6:15 7:4,25
  9:13,15,25 10:2,3
  10:7,8 11:21
  15:19 17:21 18:8
  18:12,15,18,23
  19:2 23:12,25
  24:1,13,17,19,19
  25:5,13,17,18
  26:12 27:3,5,18
  27:20,22 28:18,19
  28:23 29:11,17
  30:5 31:24 33:5
  33:19,22,23,23
  35:5,20 37:4
  39:12,16 40:13
  41:18 42:19 43:13
  43:18,19,20 44:3
  45:14,16
taxable  19:9
  24:20 25:1

taxation   35:16
taxes   40:3
taxpayer   18:14
  19:24
taxpayers   24:2,3
  29:6 40:3
tell   42:5 46:2
telling   45:12
tens   30:5
term   17:3,13
terminated   34:10
terms   16:20 34:25
  39:25
testify   38:3
thank   4:4,14,21
  4:24 5:23 6:3,5
  13:13 32:4 35:21
  35:23 37:15,16,19
  43:8 46:1,13
theory   8:24 44:2,4
thing   12:19 14:24
  22:14 25:12 40:2
  43:2 45:12
things   11:1,24
  21:25 24:3 25:7
  25:10 28:10 29:6
  30:22 37:22 39:20
  40:5
think   6:11,12,16
  8:23,24 9:14 10:6
  10:17 11:12,15
  12:9,9,25 14:25
  16:12,16,18 19:14
  20:4,11,22 21:10
  23:5 25:2,19
  26:16,19,25 29:1
  29:2,3,8 30:1,3,10
  31:17,24 32:9
  33:7,15 34:2,17
  34:20 36:11 37:25
  38:6,8,15,22 39:9
  39:10,11 40:9,22
  41:1 43:4 44:2,23

thinks   31:23
third   16:6 29:16
thought   25:20
  26:21,23 46:7
thousands   6:20
three   6:25 15:1
  21:14 36:18 41:18
  45:22
throws   23:15
time   8:7 22:21,25
  29:6 31:9 34:8
  35:13 36:5 37:14
  38:16,18 40:7
timeframe   27:17
times   27:23
today   5:7,12 8:9
  12:7 27:16 34:25
told   38:22
tolling   22:1
top   32:10 40:19
  42:24
total   8:3
totally   40:1 44:24
town   42:18
traditionally   15:2
  16:19
transaction   15:21
  15:21,22
transcribed   2:25
transcript   28:22
  39:14 47:4
transferred   28:23
treated   13:11
  24:18 25:4
treatment   12:16
  12:17
treatments   28:4
treats   15:23,24
true   28:11 29:24
  41:8 47:4
try   27:8 38:14
trying   24:19
  39:10,14

turn   5:10
two   9:23 11:5
  28:10 30:20,23
  33:4 34:14 37:22
  41:7,9
type   14:15

## u

u.s.   1:23
ultimate   10:6
  25:25
ultimately   7:8
  12:7 31:23 34:11
  35:18
unassessed   19:13
  19:16
underpayment
  15:6 18:10,11
  25:9 28:14 40:14
  45:16
underpayments
  15:13
understand   25:17
understanding
  4:14 21:23 41:11
understands
  16:23
undisputed   6:11
  17:24 31:20,21
undo   21:7 23:3
unfortunately
  38:1
united   1:1,10
unknown   1:25
unmatured   12:15
  12:17 28:4 34:1
unopposed   31:9
unquestionably
  18:22 20:9 21:4
unsecured   12:14
unusual   42:6
usa   3:4
use   16:19 24:19
  25:1

usually   15:20
utilize   21:12

## v

vaguely   28:16
variety   27:4
various   28:23
veritext   47:20
versus   14:23
  16:22 18:10 25:9
  38:4 40:18
view   4:17 9:22
  14:20 22:20
views   39:18

## w

w   3:6
w.r.   1:5 4:4 25:15
wait   42:7
want   7:15 19:11
  26:18 32:21 40:7
  40:21 42:16 44:20
  45:8,11
wanted   12:10
  43:16
wanting   45:4
wants   39:9 45:18
ward   3:6
way   11:24 16:21
  19:14,16,20 28:18
  33:1
we've   39:5 41:5
  43:1 44:19
week   45:6,24
weeks   37:6,6
went   6:21 20:19
  20:20 29:18,20
  30:22 40:11
wilmington   1:12
wipe   39:21
wipes   44:3,3
wise   5:25
wish   11:23
withdraw   38:13
  38:23 39:6 42:6

| | z |
|---|---|
| **withdrawal** 7:12 7:13 32:23,24 | **zero** 20:19 |
| **withdrawn** 33:2 38:9,20 42:7 | **ziehl** 3:8 5:1 |
| **withdrew** 14:3,4 38:5 42:2,5 | |
| **word** 17:8,10 | |
| **words** 23:9 | |
| **work** 12:6 39:10 | |
| **worse** 42:13 | |
| **wrap** 12:2 | |
| **wrapped** 23:8 | |
| **written** 35:7 42:10,13,16 | |
| **wrong** 8:24 | |
| **wrote** 35:10 | |

**y**

**yeah** 6:3 12:25 17:16 18:6 25:19 26:4 33:18

**year** 6:15,16 9:7 10:8,23 15:6,6,23 15:23,24 17:21 18:23 19:2,6,6,9 24:16,18,23,23,25 25:4,4,5,6,11 28:19 29:15,16,17 40:3,4 41:9 44:10 44:11,20 45:16

**years** 10:3,22 13:6 13:6 15:20 18:8 21:13,14,14,15 23:9,14 24:1,7,16 24:18 25:11,16 26:12,23 27:19 28:18,23 29:11 33:23 35:6,14,16 35:17,17 39:23 40:12 43:19 45:13

**yesterday** 4:15