UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| W.R. Grace & Co., et. al., | ) | Case No.: 01-1139 (KG) |
| | ) | (Jointly Administered) |
| | ) | **Objection Deadline: February 14, 2018 @ 4:00 p.m.** |
| Reorganized Debtors. | ) | **Hearing Date: February 21, 2018 @ 2:00 p.m.** |

**MARYLAND CASUALTY COMPANY'S
MOTION TO ENFORCE THE PERMANENT
CHANNELING INJUNCTION AND FOR SANCTIONS**

Maryland Casualty Company ("MCC"), n/k/a Zurich American Insurance Company, successor by merger to MCC as of December 31, 2015,[1] through its undersigned counsel, hereby moves this Court for entry of an order, the proposed form of which is attached hereto, pursuant to 11 U.S.C. §§ 105(a) and 524(g), 28 U.S.C. § 1334(b), enforcing the permanent channeling injunction set forth in the Debtors' First Amended Plan of Reorganization [D.I. 26368-1] (the "Plan") in the above-captioned cases, which took effect on February 3, 2014. In support of this Motion, MCC respectfully represents as follows:

**Introduction**

1.      On or about February 25, 2014, Rose Roberts ("Plaintiff Roberts"), as Personal Representative of the Estate of James W. Roberts, deceased, filed suit in Montana's Eighth Judicial District, Cascade County, against several defendants, including MCC. *See Complaint and Demand for Jury Trial*, attached hereto as "Exhibit A." The *Roberts* Complaint alleged that James W. Roberts was injured due to asbestos exposure relating to W.R. Grace & Co.'s mining operations in Libby, Montana ("Grace Mine").

2.      On October 21, 2014, former employees of W.R. Grace & Co. ("Grace") at the Grace Mine, Ralph Hutt ("Hutt") and Carl Osborn ("Osborn"), filed an *Adversary Complaint*

---

[1] For clarity and conformity with this case's extensive history, this Motion refers to movant as "MCC."

("Adversary Complaint") with this Court seeking a declaratory judgment that certain proposed state court claims against MCC were not barred by the "Asbestos PI Channeling Injunction" created by the Plan and implemented by this Court in its Plan Confirmation Order.[2] The filing of the Adversary Complaint initiated adversary proceeding no. 14-50867-KJC ("Hutt Adversary Proceeding"). On October 17, 2016, United States Bankruptcy Judge Kevin J. Carey issued an Opinion [Adv. Proc. D.I. 35][3] ("Opinion") and Order [Adv. Proc. D.I. 36] ("Order") stating that the Plan's Asbestos PI Channeling Injunction enjoins asbestos personal injury claims against MCC but for a very narrow subset of claims by former employees who worked at the Grace Mine when MCC policies[4] were in effect.

3. Montana has a three-year service of process requirement and MCC was not served with the *Roberts* Complaint until February 2017. *See Acknowledgment and Waiver of Service of a Summons*, attached hereto as "Exhibit B." The parties jointly agreed to toll the time to file a responsive pleading. On May 17, 2017, Plaintiff Roberts filed an Amended Complaint,[5] also stating claims against MCC. *See First Am. Complaint and Demand for Jury Trial*, attached hereto as "Exhibit C." The parties' renewed their tolling agreement with respect to the Amended Complaint.

4. Since serving MCC with the *Roberts* Complaint, Plaintiff Robert's counsel have served MCC with over 50 similar actions filed in the Montana state district courts on behalf of

---

[2] *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010*, dated January 31, 2011 [Docket No. 26155], and *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010*, dated February 15, 2011 [Docket No. 26289].

[3] *Hutt, et al. v. Maryland Casualty Company*, 2016 LEXIS 3754 (Bankr. D. Del. Oct. 17, 2016).

[4] MCC was Grace's primary general liability and workers' compensation insurer from 1962 to 1973. In 1991, after numerous asbestos-related lawsuits were filed against Grace, MCC entered into a settlement agreement ("Settlement Agreement") with Grace to settle various coverage demands under its primary general liability insurance policies. Although the settlement covered claims for coverage under these policies, pursuant to the Settlement Agreement, Grace "agreed to indemnify MCC for **all** future asbestos-related claims." *In re W.R. Grace & Co.*, 475 B.R. 34, 101 (D. Del. 2012) (emphasis added).

[5] This Motion refers to the *Roberts* Complaint and Amended Complaint collectively as the "*Roberts* Action."

over 280 plaintiffs. As with the *Roberts* Action, the parties agreed to toll the time for responsive pleading in those cases.

5. On November 28, 2017, the Montana Supreme Court, having identified at least 540 pending asbestos cases pending against various defendants including MCC in the Montana state district courts, issued an Order activating the Asbestos Claims Court, pursuant to §§ 3-20-101 through -105, MCA, and appointing an Asbestos Claims Judge, Montana District Court Judge Amy Eddy. *See Order Establishing the Asbestos Claims Court and Consolidating Cases*, In Re Asbestos Litigation, Consolidated Cases, Cause No. AC-17-0694 (Mont. Nov. 28, 2017), attached hereto as "Exhibit D." The Montana Supreme Court's Order consolidated the 540 cases it identified as having been filed—including the *Roberts* Action and other actions filed against MCC in Montana—for pre-trial purposes, and directed counsel for the parties in any of the listed cases to file a notice of appearance in the Asbestos Claims Court.

6. On January 9, 2018, Asbestos Claims Judge Amy Eddy issued an Order setting an Initial Conference on January 31, 2018. *See Order Setting Initial Conference*, In Re Asbestos litigation, Consolidated Cases, Cause No. AC-17-0694 (Asbestos Claims Court, Jan. 9, 2018), attached hereto as "Exhibit E." Judge Eddy's Order also set an agenda for the Initial Conference, which contemplates a discovery plan facilitating the first "priority" asbestos case going to trial in September of 2018. The Montana Supreme Court's establishment of the Asbestos Claims Court and Judge Eddy's Order setting an Initial Conference in the Asbestos Claims Court necessitate the filing of the instant motion, which is now ripe for review.

7. James W. Roberts was not an employee at the Grace Mine. Upon information and belief, neither were most of the 280+ plaintiffs who have claims against MCC pending in Montana.

8. Judge Carey's Opinion held that the type of claims asserted by Plaintiff Roberts, and all other claims filed in Montana against MCC by plaintiffs who never worked at the Grace Mine,[6] are clearly enjoined by the Asbestos PI Channeling Injunction. Nevertheless, Plaintiff Roberts and her counsel, who filed the Adversary Complaint that precipitated Judge Carey's Opinion and Order, continue to pursue the *Roberts* Action. Plaintiff's Counsel[7] additionally continue to file and pursue hundreds of Similar Claims on behalf of individuals who never worked at the Grace Mine. The *Roberts* Action and Similar Claims are nothing more than an attempt to circumvent Judge Carey's Opinion and Order. In filing the Adversary Complaint for declaratory relief and initializing the Hutt Adversary Proceeding, Plaintiff's Counsel clearly understood and recognized that authorization by this Court was necessary in order to bring any state court claim against MCC, an Asbestos Protected Party (as defined in the Plan) under the Asbestos PI Channeling Injunction. Plaintiff's Counsel did not appeal Judge Carey's decision in the Hutt Adversary Proceeding and they have ignored the Opinion and Order by continuing to file and prosecute the *Roberts* Action and Similar Claims.

9. Plaintiff's Counsel are fully aware of the significance of the distinction between those plaintiffs who worked at the Grace Mine and those did not. In the Hutt Adversary Proceeding, declaratory relief was specifically sought on the basis of Hutt's and Osborn's roles as former Grace Mine employees, and the limited declaratory relief granted was tailored to that role. In addition to the hundreds of impermissible claims filed on behalf of plaintiffs who never worked at the Grace Mine, the complaints that Plaintiff's Counsel have served on MCC also include a number of claims that specifically reference certain plaintiffs' entitlement to workers'

---

[6] For ease of reference, this Motion refers to the hundreds of claims filed against MCC on behalf of plaintiffs who never worked at the Grace Mine as "Similar Claims" to the *Roberts* Action.
[7] "Plaintiff's Counsel" refers to the signatories to the *Roberts* Action, the Hutt and Osborn state court complaint, and the Adversary Complaint.

compensation benefits, seemingly in compliance with the distinction confirmed in Judge Carey's Opinion and Order. Nevertheless, Plaintiff's Counsel continue to file claims against MCC without regard to whether the claimants ever worked at the Grace Mine.

10. Because the continued prosecution of the *Roberts* Action and Similar Claims against MCC clearly violates the Asbestos PI Channeling Injunction and completely disregards Judge Carey's Opinion and Order, MCC asks this Court for relief. Specifically, MCC asks this Court to (1) enforce the Asbestos PI Channeling Injunction, as clarified by the Opinion and Order, as necessary to require Plaintiff Roberts and Similar Claimants to dismiss the *Roberts* Action and all Similar Claims against MCC with prejudice and prohibit Plaintiff Roberts and Similar Claimants from pursuing, advancing, or initiating any claims against MCC; and (2) hold Plaintiff's Counsel in civil contempt and assess appropriate sanctions for their willful violation of the Asbestos PI Channeling Injunction and Judge Carey's Opinion and Order.

### Jurisdiction, Venue and Predicates for Relief

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b), 1334(b), 11 §§ U.S.C. § 524(g), 1141(d), and 1142. It is well-settled that bankruptcy courts have the inherent authority to enforce their own orders.[8] *See, e.g., In re Continental Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999), *aff'd,* 279 F.3d 226 (3d Cir. 2002). Section 105 of the Bankruptcy Code provides that a bankruptcy court is authorized to issue any order, process or judgment necessary to carry out the provisions of the Bankruptcy Code, and "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (quotations omitted). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[8] The Plan itself also provides that the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising in or related to the Chapter 11 Cases or the Plan, or to enforce the Plan and injunctions provided therein. Plan § 10.4.

12. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 524(g) of the Bankruptcy Code.

### Background

### W.R. Grace Bankruptcy

13. From 1963 to 1990, Grace owned and operated the Grace Mine, which was located approximately seven miles north of Libby, Montana. *In re W.R. Grace & Co.*, 475 B.R. 34, 64 (D. Del. 2012), *aff'd*, 729 F.3d 311 (3d Cir. 2013). The mine yielded ore used to create zonolite, which generated high volumes of asbestos dust, allegedly causing injury to mine workers, their families, and other members of the community. *Id.* at 64-65. Persons alleging injuries from exposure to asbestos in Libby filed suit against Grace beginning in the 1970s. *Id.* at 65. By 2001, Grace was involved in over 65,000 personal injury lawsuits arising from the alleged exposure to the asbestos dust generated by the Grace Mine. *Id.*

14. MCC was Grace's primary general liability insurer and workers' compensation carrier from 1962 to 1973. MCC was one of Grace's excess liability carriers from 1969 to 1975. MCC's relationship with Grace arose solely by its provision of these insurance coverages to Grace.

15. Grace (f/k/a Grace Specialty Chemicals, Inc.) and 63 related entities (collectively, "Debtors") commenced Chapter 11 bankruptcy proceedings on April 2, 2001, in the U.S. Bankruptcy Court for the District of Delaware. The Debtors' bankruptcy cases were jointly administered at Case No. 01-01139.

16. On January 31, 2011, the Court entered the Plan Confirmation Order and issued a memorandum opinion regarding objections to confirmation of the Plan. *In re W.R. Grace & Co.*, 446 B.R. 96 (Bankr. D. Del. 2011).. The District Court affirmed the Plan on January 30, 2012

and issued an amended opinion on June 11, 2012. *See In re W.R. Grace & Co.*, 468 B.R. 81, *amended and superseded by* 475 B.R. 34 (D. Del. 2012). The Third Circuit affirmed the District Court's rulings regarding the confirmation of the Plan.[9]

17. Under the Plan, Grace established an Asbestos PI Trust funded by settlements with MCC, other insurers, and Grace's own contributions. Plan §§ 1.1 ¶ 43, 7.2; *Notice of Submission of Blacklines of Exhibits 5 and 6 to Joint Plan of Reorganization* [D.I. No. 26369-1]. The Plan further included an Asbestos PI Channeling Injunction that enjoins an entity from taking any action against an Asbestos Protected Party with respect to any Asbestos PI Claim to the extent authorized by 11 U.S.C. § 524(g)[10]. Plan §§ 1.1 ¶ 33; 8.2. Simply put, "The Plan's channeling injunction limits all holders of Asbestos PI Claims to recovery from the Asbestos PI Trust after the Plan's Effective Date, and enjoins those claim holders from pursuing recovery from the Debtors and any other Asbestos Protected Party." Opinion at *6, p. 3. Under the terms of the Plan, the Asbestos PI Trust is an Asbestos PI claim holder's sole source of recovery. Plan § 8.2.1.

18. The Plan defines an "Asbestos PI Claim" as a bodily injury claim against a Debtor or Asbestos Protected Party arising out of exposure to asbestos dust generated by the Grace Mine. *See id.* at § 1.1 ¶ 34.

19. Under the Plan, "Asbestos Protected Parties," includes those insurers with whom Grace settled and contributed to the asbestos trust, referred to as "Settled Asbestos Insurance

---

[9] *In re W.R. Grace & Co.*, 729 F.3d 311 (3d Cir. 2013); *W.R. Grace & Co. v. Garlock Sealing Techs., LLC*, 532 Fed. App'x 264 (3d Cir. 2013); *W.R. Grace & Co. v. Chakarian*, 591 F.3d 164 (3d Cir. 2009).
[10] 11 U.S.C. § 524(g) provides in part that "a court that enters an order confirming a plan of reorganization under chapter 11 may issue . . . an injunction . . . to supplement the injunctive effect of a discharge under this section." If certain requirements are met, "the injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization . . . is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products . . . ." 11 U.S.C. § 524(g)(2)(B).

Companies." *In re W.R. Grace & Co.*, 475 B.R. at 96; Plan § 1.1 ¶¶ 51, 209. MCC is expressly designated as a Settled Asbestos Insurance Company (and hence, is an Asbestos Protected Party), "meaning that [it] was entitled to injunctive relief under § 524(g)." *In re W.R. Grace & Co.*, 475 B.R. at 101.

20. The Plan went into effect on February 3, 2014. *See* Opinion at *5, p. 2.

<u>Hutt & Osborn Adversary Proceeding</u>

21. On October 21, 2014, Hutt and Osborn, former Grace employees, filed the Adversary Complaint seeking a declaratory judgment that certain proposed state court claims against MCC were not barred by the Asbestos PI Channeling Injunction. Hutt and Osborn alleged that their asbestos disease resulted from their work at the Grace Mine, and set forth claims premised on MCC's position as a workers' compensation and occupational disease insurer for Grace employees. *See* Adversary Complaint [Adv. Proc. D.I. 1].

22. Hutt and Osborn attached to the Adversary Complaint their not-yet-filed state court complaint, which set forth their specific causes of action against MCC: (1) Negligence in Provision of Industrial Hygiene Services; and (2) Bad Faith Treatment of Workers with Rights to Occupational Disease Benefits (Breach of Fiduciary Duty, Deceit, Bad Faith Negligent Misrepresentation and Constructive Fraud, Malice). *See* Adversary Complaint, Exhibit A [Adv. Proc. D.I. No. 1-1]. As in the Adversary Complaint, Hutt's and Osborn's proposed state court claims were specifically and deliberately framed around Hutt and Osborn's roles as former Grace Mine workers and employees. *See id.*, ¶¶ 9-32 (negligence), ¶¶ 33-62 (bad faith).

23. The Adversary Complaint, as compared to the state court complaint, contained six counts which reflect three separate arguments alleging that the Asbestos PI Channeling Injunction did not bar each of their two state court claims: (1) Section 524(g) limits the Asbestos

PI Channeling Injunction so that it does not apply to the Negligence Claim ("Count I"); (2) the Asbestos PI Channeling Injunction does not include the Negligence Claim to the extent that it arises under workers' compensation policies that were not listed on Exhibit 5 to the Plan ("Count II"); (3) the Negligence Claim arises under workers' compensation policies that are specifically excluded from the Asbestos PI Channeling Injunction; (4) the Asbestos PI Channeling Injunction does not include the Bad Faith Claim to the extent that it arises under workers' compensation policies that were not listed on Exhibit 5 to the Plan ("Count IV"); (5) the Bad Faith Claim arises under workers' compensation policies that are specifically excluded from the Asbestos PI Channeling Injunction ("Count V"); and (6) Section 524(g) limits the Asbestos PI Channeling Injunction so that it does not apply to the Bad Faith Claim ("Count VI"). *See* Adversary Complaint.

24. Specifically, Count II of the Adversary Complaint was limited to claims by former employees at the Grace Mine:

> If, nevertheless, this Court were to rule that the Negligence Claim seeks to hold MCC liable for the conduct of, claims against, or demands on Grace and that such alleged liability for the Negligence Claim arises by reason of MCC's provision of insurance to Grace, as those terms are used in Bankruptcy Code section 524(g)(4)(A)(ii), such provision of insurance must mean solely issuance of the Workers Comp Policies, since inter alia the CGL Policies by their terms exclude coverage for Grace workers such as the Plaintiffs.

Adversary Complaint, at 8 (emphasis omitted).

25. Count IV of the Adversary Complaint was also specifically limited to claims by former employees at the Grace Mine:

> The Bad Faith Claim is based upon MCC's alleged breach of duties in its capacity as issuer of the Workers Comp Policies, namely, MCC's obligation as issuer of the Workers Comp Policies to abide by the duties imposed as a matter of law on insurers of workers' compensation benefits, including the duty to act in good faith in the handling of workers' claims for benefits, and including the duty to disclose to the Plaintiffs facts known to MCC but not to the Plaintiffs

indicating that the Plaintiffs had or may in the future have a right to receive from MCC benefits under the workers' compensation system established by the Montana Statute.

See Adversary Complaint, at 12.

26. Hutt and Osborn moved for summary judgment on all Counts of their Adversary Complaint, which MCC opposed. *See*, *Plaintiffs' Motion For Summary Judgment* [Adv. Proc. D.I. 14] ("Motion for Summary Judgment"). Judge Carey's Opinion and Order denied in part and granted in part the Motion for Summary Judgment. *See*, Order. The Order denied judgment on Counts I, III, V, and VI of the Adversary Complaint, and granted judgment on Counts II and IV of the Adversary Complaint. *Id.*

27. In rejecting Hutt's and Osborn's arguments concerning the Negligence and Bad Faith Claims asserted in Counts I and VI, the Court found that the Asbestos PI Channeling Injunction enjoined those claims:

> Accordingly, I reject the Plaintiffs' argument (asserted in Count I and Count VI of the Adversary Complaint) that Bankruptcy Code § 524(g)(4)(A)(ii) limits the reach of the Asbestos PI Channeling Injunction and prevents the injunction from enjoining the Plaintiffs' Claims. The Plaintiffs' Claims seek to hold MCC indirectly liable for the conduct of, claims against or demands on the Debtors. Also, MCC's provision of insurance to the Debtors is legally relevant to (or, at the very least, a close nexus to) the Plaintiffs' Claims. Because MCC's liability could affect the *res* of the Debtors' estate, determining that § 524(g)(4)(A)(ii) protects an insurer from claims, such as the Negligence Claim and the Bad Faith Claim, is not beyond the jurisdiction of this Court.

Opinion at *38-39, pp. 20-21.

28. The Court's reasoning was premised on two conclusions regarding Hutt's and Osborn's claims: (1) the claims sought to hold MCC indirectly liable for the debtors' conduct; and (2) the claims' theories of liability relied on MCC's provision of insurance to Grace. *Id.* at *22-23, 25, 39.

29. Next, the Court denied Hutt's and Osborn's Motion with respect to Counts III and V of the Adversary Complaint:

> The Plaintiffs are not asserting workers' compensation claims for statutory benefits. The channeling injunction's exception for workers' compensation claims is not applicable to the Plaintiffs' Claims. I reject the Plaintiffs' argument (asserted in Count III and Count V of the Adversary Complaint) that the workers' compensation claim exception to the channeling injunction allows the Plaintiffs' Claims to be filed in state court.

Opinion at *40-41, p. 21.

30. In granting Hutt's and Osborn's Motion for Summary Judgment on Counts II and IV of the Adversary Complaint, the Court responded to Hutt's and Osborn's arguments regarding MCC's relationship to them in their roles as former Grace employees, in that it permitted the filing of a very narrow set of claims against MCC by *former employees* at the Grace Mine:

> Therefore, the channeling injunction does not protect a Settled Asbestos Insurance Company from claims arising out of insurance policies that are not listed on Exhibit 5 to the Plan. The Plaintiffs contend that, ***as employees, the Negligence Claim and the Bad Faith Claim must arise under MCC's worker's compensation policies***. ***To the extent that the Plaintiffs can demonstrate that the Plaintiffs' Claims arise out of or are based upon MCC's workers' compensation policies***, the claims are not barred by the Asbestos PI Channeling Injunction and may be filed in state court. I will grant the relief requested in Count II and Count IV of the Adversary Complaint.

Opinion at *44, p. 23 (emphasis added).

31. In sum, the Court concluded that Hutt's and Osborn's claims were appropriately channeled into the Asbestos PI Trust except to the limited extent that Hutt and Osborn, *as former Grace Mine employees*, could demonstrate that the Claims arose out of MCC's worker's compensation policies. The Court so held because MCC's worker's compensation policies were not included in Exhibit 5 to the Plan. To the extent the Claims arose out of MCC's CGL policies, the claims were properly channeled into the Asbestos PI Trust. Those claims did not survive.

11

32. Hutt and Osborn did not appeal Judge Carey's Order; thus, it is a Final Order of this Court.[11] Further, although Judge Carey granted Hutt and Osborn limited permission "as employees" to file their proposed claims against MCC in state court, *Hutt* is not one of the 50+ state court actions with which MCC has been served.

### The *Roberts* Action

33. Separately, on or about February 25, 2014, Plaintiff Roberts filed suit in Montana's Eighth Judicial District, Cascade County, against MCC, Robinson Insulation Company, and Does A-Z.[12] *See* Ex. A. On February 20, 2017, counsel for MCC executed an Acknowledgment and Waiver of Service of Summons form. *See* Ex. B. On May 17, 2017, Plaintiff Roberts filed an Amended Complaint against MCC, Robinson Insulation Company and Does A-Z. *See* Ex. C.

34. On November 28, 2017, the Montana Supreme Court issued an Order activating the Asbestos Claims Court, pursuant to §§ 3-20-101 through -105, MCA. *See* Ex. D. The Montana Supreme Court's Order consolidated 540 asbestos personal injury cases it identified—including the *Roberts* Action and Similar Claims—into a single case for pre-trial purposes, and directed counsel for the parties in any of the listed cases to file a notice of appearance in the Asbestos Claims Court.

---

[11] However, Judge Carey issued a related Order regarding the scope of the Asbestos PI Channeling Injunction on the same date in a separate adversary proceeding. *Cont'l Cas. Co. v. Carr (In re W.R. Grace & Co.)*, 2016 Bankr. LEXIS 3753, *16-18 (Bankr. D. Del. Oct. 17, 2016). The Libby asbestos claimants, represented by the same Montana law firm that represented Hutt and Osborn, *did* appeal from that Order, and the appeal is currently pending before the Third Circuit. *In re W.R. Grace & Co.*, 2016 Bankr. LEXIS 3753, *appeal docketed*, No. 17-1208 (Third Cir. Mar. 15, 2017). Notably, the Libby claimants' brief repeatedly acknowledges that workers' compensation coverage provides benefits to *workers*. *See* Brief for Appellants at 13, n.40, *In re W.R. Grace & Co.*, appeal docketed, No. 17-1208 (Third Cir. Mar. 15, 2017) (suggesting WC policies cover *workplace* safety); 21-22 n.68 (explaining the Plan preserves WC claims for the benefit of claim holders; namely, workers); 23-25 (arguing WC insurer has a host of obligations owed *to workers*); 26 (noting that WC regulatory scheme's purpose is to compensate *employees* for workplace injuries); and 27 (referring to "panoply of *workers'* rights").

[12] The *Roberts* Action and the Similar Claims were also filed by the same Montana law firm that represented Hutt and Osborn in the Adversary Proceeding.

35. On January 9, 2018, Asbestos Claims Judge Amy Eddy, issued an Order setting an Initial Conference on January 31, 2018 to address pretrial and discovery proceedings in the consolidated cases. *See* Ex. E. Judge Eddy's Order contemplates the first "priority" case or flight of cases going to trial in September of 2018.

36. James W. Roberts ***was not an employee at the Grace Mine***. Rather, Plaintiff Roberts alleged that James W. Roberts "was exposed to asbestos dust and fibers from Grace's operations during Plaintiff's residence in the Libby area from 1931 to 1998." Ex. A, ¶ 11. The actions against MCC on behalf of plaintiffs who never worked at the Grace Mine make similar allegations.

37. The Amended *Roberts* Complaint alleges that:

> [James W. Roberts] was a Grace and Zonolite railroad or logger/lumbermill worker, contractor, homeowner or member/resident of the community of Libby, Montana, and/or the child or spouse of said person, and as such was distinctly exposed to asbestos in unique exposure events and in a wide variety of temporally separated, geographically distinct, and highly differentiated routs and circumstances.

Ex. C, ¶ 9. The Similar Claims filed against MCC on behalf of plaintiffs who never worked at the Grace Mine contain similarly ambiguous and evasive language.

38. The Amended *Roberts* Complaint alleges two claims against MCC: Negligence; and Wrongful Death.[13] *See generally id.* Both claims are specifically excluded by Judge Carey's Opinion and Order.

**<u>Relief Requested</u>**

39. The recent activation of the Asbestos Claims Court and the Order from the Asbestos Claims Judge setting an Initial Conference have rendered this motion ripe for review.

---

[13] Plaintiff Roberts did not assert a claim against MCC alleging bad faith treatment of workers' with rights to occupational disease benefits, as James W. Roberts was not a Grace Mine employee and therefore had no such rights by virtue of MCC's provision of workers' compensation coverage to Grace.

The Asbestos Claims Court and Initial Conference have set in motion hundreds of state court claims filed against MCC that are properly channeled into the Asbestos PI Trust by virtue of the Plan's Asbestos PI Channeling Injunction and Judge Carey's Opinion and Order.

40. By this Motion, MCC requests that, pursuant to 11 U.S.C. § 105(a)[14] and Federal Rule of Bankruptcy Procedure 9020,[15] the Court enter an Order directing Plaintiff Roberts and Similar Claimants to dismiss the *Roberts* Action and the Similar Claims against MCC with prejudice and enjoining them from pursuing any claims against MCC.

41. Additionally, MCC asks this Court to hold Plaintiff's Counsel in civil contempt and assess appropriate sanctions against them for their intentional violations of the Asbestos PI Channeling Injunction and Judge Carey's Opinion and Order.

**Basis for Relief Requested**

Enforcement of the Permanent Channeling Injunction

42. The Court's Opinion and Order clearly limit the availability of claims against MCC to claims that (1) arise out of specific workers' compensation policies, and (2) are brought by former Grace workers. Unlike Hutt and Osborn, James W. Roberts and Similar Claimants never worked at the Grace Mine. Therefore, Plaintiff Roberts' claims and any Similar Claims against MCC do not fall into the narrow *Hutt* exception, and the Plan's Asbestos PI Channeling Injunction properly channels them into the Asbestos PI Trust.

43. The instant Motion is necessary in order to obtain relief from Plaintiff Roberts' and Similar Claimants' state court actions. In *Pace v. Am. Int'l Group, Inc.*, 2010 U.S. Dist. LEXIS 303816 (N.D. Ill. 2010), an asbestos claimant had previously obtained a settlement

---

[14] Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

[15] Rule 9020 provides that a motion for an order of contempt made by a party in interest shall be governed by Rule 9014, which governs contested matters. Fed. R. Bankr. P. 9020.

agreement from a company responsible for his asbestos injuries and the company's insurer. Four days before payment of the settlement amount became due, the company filed for reorganization under Chapter 11. *Id.* at *5. The Chapter 11 proceeding resulted in a joint reorganization plan which included an asbestos trust to pay for the company's asbestos-related injury claims and a channeling injunction to funnel those claims exclusively into the trust. *Id.* at *6. After the plan became effective, the asbestos claimant filed and pursued a state court action to enforce the settlement agreement. In response, the company's insurer moved in federal district court to enforce the channeling injunction and enjoin the asbestos claimant from further pursuing the state court action. *Id.* at *12. The district court referred the matter to the bankruptcy court that presided over the bankruptcy and issued the injunction in question. The bankruptcy court granted summary judgment in favor of the insurer, and held that the channeling injunction prevented the asbestos claimant from pursuing his claims against the insurer in state court. *Id.*

44. On appeal, the Northern District of Illinois affirmed. *Id.* at *20-22. The district court explained: "As reflected by both its language and its purpose, § 524(g) contemplates wide-reaching channeling injunctions that protect non-debtor insurers . . ., who contribute to a debtor's asbestos personal injury trust, from asbestos-related claims by third parties." *Id.* at *17-18. Next, the court examined the language of the particular channeling injunction and determined that it was sufficiently broad to encompass the asbestos claimant's claim. *Id.* at *19-25. Accordingly, the bankruptcy court was correct in enjoining the plaintiff's state court action.

45. Similarly, here, MCC seeks this Court's relief in enforcing the previously defined parameters of the Asbestos PI Channeling Injunction. The Plan's expansive language encompasses Plaintiff Roberts' claims and Similar Claims filed on behalf of plaintiffs who never worked at the Grace Mine, and could not avail themselves of workers' compensation policies.

Specifically, to the extent that Plaintiff and Similar Claimants have any Asbestos PI Claims against MCC—an Asbestos Protected Party—those claims are channeled into the Asbestos PI Trust by the Asbestos PI Channeling Injunction. As the Plan contemplates, to the extent that Plaintiff and Similar Claimants have any Asbestos PI Claims, the Asbestos PI Trust is their sole remedy. The limited exception identified by Judge Carey's Opinion for specific claims brought by former Grace employees with rights under specific workers' compensation policies clearly does not apply to Plaintiff Roberts' claims or any Similar Claims brought on behalf of plaintiffs who never worked at the Grace Mine. Plaintiff's Counsel have acknowledged the limited exception contained in Judge Carey's Opinion only to the extent they have filed claims on behalf of former Grace Mine employees—a small fraction of the total claims filed and served to date—specifically referencing those employees' rights to workers' compensation benefits. The volume and indiscriminant content of the claims Plaintiff's Counsel have filed and served upon MCC to date patently ignores the Plan, the Asbestos PI Channeling Injunction, and Judge Carey's Opinion.

46. For the forgoing reasons, the Asbestos PI Channeling Injunction, which prohibits Plaintiff Roberts and Similar Claimants from pursuing, advancing, or initiating their claims against MCC, must be enforced.

Contempt and Sanctions

47. Additionally, MCC asks this Court to hold Plaintiff's Counsel in civil contempt and to impose appropriate sanctions for their conduct in willfully violating the Asbestos PI Channeling Injunction and this Court's October 17, 2016 Order. It is beyond dispute that Plaintiff's Counsel was aware of the limitations on filing an Asbestos PI Claim against MCC—an Asbestos Protected Party—because Plaintiff's Counsel sought to clarify those limitations in

*Hutt*. Nevertheless, after Plaintiff's Counsel received a ruling in *Hutt*, one that required immediate dismissal of Plaintiff Roberts' impermissible non-worker claims against MCC and all Similar Claims, Plaintiff's Counsel continued to prosecute and serve the *Roberts* Complaint and Amended Complaint on MCC. Additionally, Plaintiff's Counsel continued to file and serve hundreds of Similar Claims barred by the Asbestos PI Channeling Injunction and Judge Carey's Opinion, thereby violating the Order that they procured by initiating the Hutt and Osborn declaratory judgment action.[16] As Plaintiff's Counsels' intentional actions are an attempt to circumvent the Asbestos PI Channeling Injunction and a willful violation of the Court's October 17, 2016 Order, it is necessary and appropriate to find Plaintiff's Counsel in civil contempt and assess sanctions against them.

48.   Section 105 provides bankruptcy courts with broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory, or equitable common law, principles. The purpose of section 105(a) is to "assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01[1] at 105-6 (15th rev. ed. 2006). This Court has the power to conduct civil contempt proceedings and issue orders in accordance with those proceedings pursuant to section 105(a) of the Bankruptcy Code. *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997); *see also Joubert v. ABN AMRO Mortg. Grp. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005) (discussing the contempt power under section 105(a)).

---

[16] This is not the first time Plaintiff's Counsel have consciously violated this Court's clear directives in this proceeding. After this Court issued a temporary restraining order and preliminary injunction enjoining Libby plaintiffs from filing and prosecuting asbestos-related tort claims against Grace during the pendency of Grace's bankruptcy, Plaintiff's Counsel nevertheless attempted to advance claims against Grace and MCC in state court. As a result, this Court found Plaintiff's Counsel in contempt of court and imposed sanctions. *See Order Regarding Plaintiffs' Motion to Find Counsel for Gerard in Contempt of Court, In re W.R. Grace & Co., et al.*, 01-01139, Adversary No. A-01-771 (Bankr. D. Del. May 24, 2004), [Adv. Proc. D.I. 204].

17

49. Civil contempt requires proof that (1) a valid order of the court exists; (2) the alleged contemnor had actual knowledge of the order; and (3) the contemnor disobeyed the order. *In re Continental Airlines, Inc.*, 236 B.R. 318, 330 (Bankr. D. Del. 1999) (assessing sanctions for violation of discharge injunction). With respect to the second element, a willful violation in the context of a violation of a stay does not require a specific intent to violate the automatic stay or bad faith. *See Lansdale Family Restaurants, Inc. v. Weis Food Serv. (In re Lansdale Family Restaurants, Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992) ("[A] creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h)."). It is sufficient that the creditor knew of the automatic stay and that the creditor's actions were intentional. *Id.*; *Cuffee v. Atl. Bus. & Comty. Dev. Corp. (In re Atl. Bus. & Comty. Dev. Corp.)*, 901 F.2d 325, 329 (3rd Cir. 1990); *compare In re Univ. Med. Ctr.*, 973 F.2d 1065, 1088 (3d Cir. 1992) (violation of stay was not willful because HHS secretary had legal support for position that his actions did not violate automatic stay).

50. The elements necessary for civil contempt are plainly satisfied here: (1) the Asbestos PI Channeling Injunction and the Court's Order constitute valid court orders; (2) Plaintiff's Counsel, who participated in an action challenging the Plan that resulted in the Opinion, were clearly aware of these orders; and (3) for the reasons explained in the foregoing analysis, the maintenance and continued prosecution[17] of the *Roberts* Action and Similar Claims violates the orders.

51. Further, because Plaintiff's Counsel lack any legal justification for maintaining the *Roberts* Action and all Similar Claims in contravention of the Plan's permanent channeling

---

[17] Although the original *Roberts* Complaint was filed in 2014 before the Court issued the Opinion, Plaintiff Roberts and Plaintiff's Counsel failed to withdraw or amend the Complaint to dismiss Plaintiff's claims against MCC, after the Court issued the Opinion and still elected to serve it on MCC in willful violation of the Opinion. Moreover, the Amended *Roberts* Complaint was filed in May 2017.

injunction and its parameters, their conduct warrants sanctions. *See Mariner Post-Acute Network, et al. v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network)*, 329 B.R. 481, 488 (Bankr. D. Del. 2005) (contempt sanction for willful violation of a discharge injunction required assessment of whether there was any legitimate basis for violation); *NL, Indus. v. Judson (In re Mid-Valley, Inc.),* 2014 Bankr. LEXIS 1818 (Bankr. W.D. Penn. 2014) (denying motion for sanctions for violation of asbestos channeling injunction because plaintiff had support for her position that suit did not violate injunction); *In re Chiles Power Supply Co., Inc.*, 264 B.R. 533 (Bankr. W.D. Mo. 2001) (declining motion to impose sanctions without prejudice because defendants mistakenly proceeded against debtor in foreign litigation in violation of channeling injunction). The facts at hand stand in contrast to the above-cited cases in that Plaintiff's Counsel lack any legitimate legal basis for bringing the state court complaint in willful violation of the permanent injunction.

52. "Sanctions for civil contempt serve two purposes: (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the disobedience." *In re Baker*, 390 B.R. 524, 531 (Bankr. D. Del. 2008) (assessing sanctions for discharge injunction). An award of sanctions is appropriate in this case,[18] as it would coerce Plaintiff's Counsel to maintain compliance with the Plan, the Asbestos PI Channeling Injunction, and Judge Carey's Opinion and Order; and compensate MCC for the losses incurred in defending against the *Roberts* Action and the dozens of Similar Claims and pursuing this Motion. Accordingly, MCC asks this Court to assess sanctions against Plaintiff's Counsel.

---

[18] MCC defers to the judgment of the Court with respect to the type and severity of sanctions imposed; however, it is suggested that appropriate sanctions in this case could include an order stating that failure to dismiss pending actions or future filing of claims against MCC in violation of the Plan and this Court's Orders will result in monetary sanctions.

**No Prior Request**

53. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, Maryland Casualty Company respectfully requests that the Court (a) enter an order substantially in the form annexed hereto, granting the relief requested herein, and (b) grant to Maryland Casualty Company such other and further relief as the Court may deem proper.

Dated: January 29, 2018

Respectfully submitted,

CONNOLLY GALLAGHER LLP

**/s/ Jeffrey C. Wisler**
Jeffrey C. Wisler (No. 2795)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 757-7300

**ECKERT SEAMANS CHERIN  & MELLOTT, LLC**
Edward J. Longosz, II
Mark A. Johnston
Kennedy C. Ramos
1717 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
(202) 659-6600 Telephone
(202) 659-6699 Facsimile
elongosz@eckertseamans.com
mjohnston@eckertseamans.com
kramos@eckertseamans.com
*Attorneys for Maryland Casualty Company,* n/k/a Zurich American Insurance Company, successor by merger to Maryland Casualty Company

#05367638