UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>W.R. GRACE & CO., *et al.*,<br><br>Debtors.<br><br>———————————————<br><br>BARBARA HUNT, Personal<br>Representative for the Estate of Robert<br>J. Hunt, deceased and SUE C. O'NEILL,<br><br>v.         Plaintiffs,<br><br>MARYLAND CASUALTY COMPANY,<br><br>Defendant. | CHAPTER 11<br>CASE NO. 01-01139(KG)<br>(Jointly Administered)<br><br><br><br>ADVERSARY PROCEEDING<br>NO. 18- |

**ADVERSARY COMPLAINT**

**INTRODUCTION**

The Plaintiffs are individuals with diagnosed asbestos disease resulting from exposures to asbestos generated by the operations at the worksites of W.R. Grace mine, mill and downtown facilities in Libby, Montana (the "Libby Facilities"), owned and operated by W.R. Grace & Co. and its debtor-affiliates (collectively "Grace"). The Plaintiffs bring this adversary proceeding, pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure, to obtain a declaratory judgment that their claims against defendant Maryland Casualty Company ("MCC"), as set forth in their actual and draft state and federal court complaints annexed hereto as <u>Exhibit A</u> (the "MCC Wrongdoing Complaints"), are not barred by the channeling injunction for asbestos personal injury claims contained in Grace's confirmed chapter 11 plan.

These claims (the "MCC Wrongdoing Claims"), which are based upon MCC's alleged breach of its own legal duties and not upon any breach or liability of Grace, consist of:

1

9150359v1

    Claims that MCC was negligent in designing and implementing an inadequate industrial hygiene program for the Libby Facilities, its negligent failure to conduct proper inspections, sampling and/or testing at the Libby Facilities, and its negligent failure to warn of the danger of asbestos exposure to those within the foreseeable zone of risk (collectively the "Negligence Claims");

    Claims alleging MCC's intentional actions to conceal the asbestos hazard of exposures to asbestos generated by the operations at the worksites of W.R. Grace mine, mill and downtown facilities in Libby, Montana from the public including plaintiffs and the plaintiff's decedent, in order to avoid the presentation of and liability for workers' compensation claims covered by MCC (collectively the "Intentional Concealment Claims").

    and

    MCC's actions to conceal the asbestos hazard, suppress disclosure of the asbestos hazard, and avoid providing warnings of the asbestos hazard with actual knowledge of ongoing injury to, and intent to continue injury to Grace workers, and the resulting liability to all persons injured by reason of such knowing and intentional conduct, including the concealed, suppressed, and withheld warning through the legal doctrine of transferred intent (collectively the "Transferred Intent Claims").

The Plaintiffs are not asking this Court for judgment on the MCC Wrongdoing Claims, or for a determination that the MCC Wrongdoing Complaint states legally sufficient claims against MCC under applicable non-bankruptcy law, or for any determination whatsoever of the validity of any of the MCC Wrongdoing Claims. The Plaintiffs seek only this Court's declaration that the Plaintiffs' pursuit of the MCC Wrongdoing Claims against MCC will not violate the channeling injunction for asbestos personal injury claims that is now in effect under Grace's confirmed chapter 11 plan [Doc. No. 26368][1] (the "Chapter 11 Plan").

## JURISDICTION, VENUE AND STANDING

1.     This proceeding arises under, and/or is related to a case arising under, title 11 of the United States Code. Therefore, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a).

---

[1] In this Complaint, "Doc. No." references are to the docket in Grace's chapter 11 case, No. 01- 01139 (KG), pending in this Court.

9150359v1

2. This proceeding arises in a bankruptcy case that is pending in the District of Delaware, and therefore, venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

3. Plaintiff Barbara Hunt is the Personal Representative for the Estate of Robert J. Hunt, deceased. Plaintiff Robert Hunt was employed by Tide Bay, Inc. and Fichbach and Moore Defendants on construction projects at Grace's Libby Facilities from 1970 to 1971, during which time MCC was the workers' compensation insurer for Grace. Robert Hunt worked alongside Grace workers at the Grace Libby Facilities, was exposed to the same dangerous levels of asbestos dust as the Grace workers and encountered and relied upon the same absence of workplace warnings as did Grace workers. Since Robert Hunt's work at the Grace Libby Facilities was done for his employer who contracted with Grace, his workers' compensation coverage was not provided by Grace's workers' compensation insurer.

4. Plaintiff Sue O'Neill lived in the homes contaminated by asbestos carried home on the clothes of workers at Grace's Libby Facilities, including during the years 1963 through 1968 during which time MCC was the workers' compensation insurer for Grace. Due to MCC's acts and failures to control the workplace hazard or to control the workers' take-home exposure, and due to the absence of warnings and suppression of disclosure of the asbestos hazard to either Sue O'Neill or to Grace workers (including those with whom she lived), she was exposed to dangerous and deadly levels of asbestos carried into the home by Grace workers, to which home contamination she and those workers were equally exposed.

## ALLEGATIONS COMMON TO ALL COUNTS

5. Beginning upon Grace's acquisition of the Libby Facilities in 1963 through at least June 30, 1973, MCC undertook, under Plan 2 of the Montana Occupational Disease Act, 92-1334 R.C.M. (the "Montana Statute"), workers' compensation and occupational disease insurance for Grace employees under Policies R-00590, R-00591, R-00592, *et seq*. (the "Workers Comp

9150359v1

3

Policies"). By the terms of the Montana Statute and the Workers Comp Policies, MCC rather than Grace became statutorily liable to pay all disability and medical benefit claims of the type later defined in the Chapter 11 Plan as Workers' Compensation Claims.

6. During the period of the Plaintiffs' or Plaintiff's decedent's work at Grace's Libby Facilities, the acts and omissions of MCC giving rise to the MCC Wrongdoing Claims are alleged to have occurred.

7. On April 2, 2001, Grace filed voluntary petitions under Chapter 11 of the Bankruptcy Code (the "Petition Date").

8. On the Petition Date, Grace filed a complaint in the Chapter 11 case seeking to enjoin asbestos-related claims against Grace's non-debtor affiliates and insurers, which initiated Adversary Proceeding No. 01-00771 (the "Preliminary Injunction Proceeding").

9. From the Petition Date through February 3, 2014, the Plaintiffs were barred by stays and injunctions issued in the Preliminary Injunction Proceeding from commencing or conducting litigation against MCC for the MCC Wrongdoing Claims.

10. On February 3, 2014, the Effective Date occurred under the Chapter 11 Plan, which this Court had confirmed by orders entered January 31, 2011 and February 15, 2011 [Doc. Nos. 26155 and 26289], such orders having been affirmed by the District Court and the Court of Appeals.

11. On the Effective Date, the Asbestos PI Channeling Injunction set forth in Section 8.2.1 of the Chapter 11 Plan took effect.[2]

12. By its terms, the Asbestos PI Channeling Injunction enjoins certain asbestos-related claims against Asbestos Protected Parties, as defined by Section 1.1(51) of the Chapter 11 Plan.

---

[2] For the Court's convenience, a copy of the pages of the Plan that contain provisions thereof cited in this Complaint is annexed hereto as Exhibit B.

4

9150359v1

13. Included in the definition of Asbestos Protected Parties are Settled Asbestos Insurance Companies, as defined in Section 1.1(209) of the Chapter 11 Plan.

14. MCC is not an Asbestos Protected Party except insofar as it meets the definition of a Settled Asbestos Insurance Company.

15. Although MCC meets the definition of a Settled Asbestos Insurance Company in respect of claims against Grace for which MCC assumed derivative liability pursuant to comprehensive general liability policies that MCC issued to Grace (the "CGL Policies"), MCC does not meet the definition of a Settled Asbestos Insurance Company in respect of any of the Grace Wrongdoing Claims (on each of the three alternative bases set forth below in Counts I, II and III respectively).

### COUNT I
**(Declaratory Judgment that the Channeling Injunction Does Not Enjoin the MCC Wrongdoing Claims Because that Injunction is Constrained by the Conditions In 11 U.S.C. § 524(G)(4)(A)(ii))**

16. The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 15 as though fully set forth herein.

17. The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

18. Section 1.1(209) of the Chapter 11 Plan specifies that a Settled Asbestos Insurance Company has such status "to the fullest extent, but only to the extent, provided by [Bankruptcy Code] section 524(g) in respect of any claim that arises by reason of one of the activities enumerated in [Bankruptcy Code] section 524(g)(4)(A)(ii)."

19. Bankruptcy Code section 524(g), which is incorporated by reference in the Asbestos PI Channeling Injunction as set forth above, provides in pertinent part that a channeling injunction may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly

5

liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arise by reason of [one of four enumerated activities]. 11 U.S.C. § 524(g)(4)(A)(ii).

20. Upon information and belief, MCC does not claim to have engaged in any of the four activities enumerated in Bankruptcy Code section 524(g)(4)(A)(ii) except for "provision of insurance to the debtor or a related party" (id. § 524(g)(4)(A)(ii)(III)).

21. In sum, as it pertains to this declaratory judgment action, the Asbestos PI Channeling Injunction bars "any action directed against [MCC in which MCC] is alleged to be directly or indirectly *liable for the conduct of, claims against, or demands on [Grace]* to the extent that such alleged liability of [MCC] *arises by reason of . . . [MCC]'s provision of insurance to [Grace]*."[3]

22. The Plaintiffs do not allege in the MCC Wrongdoing Claims that MCC is *liable for the conduct of, claims against, or demands on the debtor [Grace]*, within the meaning of Bankruptcy Code section 524(g)(4)(A)(ii). Instead, the Plaintiffs allege in the MCC Wrongdoing Claims that MCC is liable for its own wrongful "*conduct*" (acts and omissions), and that, MCC's own wrongful actions (including a deliberated suppression of a disclosure of the workplace hazard, the concealment of the workplace hazard and the withholding of a workplace warning, as well as negligence in respect to workplace safety, including inadequate industrial hygiene program, MCC's failure to conduct proper inspections, sampling and/or testing, and MCC's failure to warn of the danger of asbestos exposure) caused Plaintiff's and Plaintiff's decedent's asbestos exposures and resulting injury.

23. The MCC Wrongdoing Claims do not allege that Grace is liable for the injuries complained of. The MCC Wrongdoing Claims do not allege that MCC is "*directly or indirectly*

---

[3] Bankruptcy Code section 524(g)(4)(A)(ii) (italics added).

9150359v1

*liable for*" any of (a) Grace's "*conduct*," (b) "*claims against*" the debtor [Grace], or (c) "*demands on*" the debtor [Grace], as those terms and phrases are used in Bankruptcy Code section 524(g)(4)(A)(ii). Rather, the allegations in MCC Wrongdoing Claims claim that MCC's "conduct" (not Grace's) forms the basis for "claims" directly against MCC (not Grace), and that MCC is directly responsible for its own "liability" (not Grace's) for its own wrongdoing.

24. The "conduct" for which the "claims against" and "demands on" MCC are based in the MCC Wrongdoing Claims include the actions and failures of MCC with respect to MCC's undertakings to provide professional industrial hygiene services as a workplace safety inspector and designer of workplace safety and warning program at the Libby Facilities, its knowledge derived in the course of its handling of workers' compensation claims from exposures at the Libby Facilities, and the furtherance of its motive and purpose to avoid liability for workers' compensation claims including the following specific allegations in the Plaintiffs' MCC Wrongdoing Complaints:

- "Maryland Casualty provided professional industrial hygiene services to address the safety of the mine and mill work site through what were represented to be competent Safety Engineers and professional from the Engineering Division and the Medical Division of Maryland Casualty, under the supervision of industrial hygienist L.E. Park."

- "As part of it industrial hygiene services, Maryland Casualty's Engineering Division and Medical Division undertook to 'engineer the risk,' and undertook to design a 'program for control and prevention' of asbestos dust and disease for the benefit of workers, their families and the community that would address dust control and personal protection from asbestos dust."

- "Maryland Casualty was negligent in its design of the industrial hygiene program, and in failing to disclose and disseminate, to the worker and individuals at risk, the

nature and degree of the asbestos hazard Maryland Casualty had acquired and analyzed by its industrial hygiene professionals."

- "Maryland Casualty was negligent: … (b) in failing to include measures to warn workers, their families, and the community of the hazard of asbestos exposure; (c) in failing to include sufficient measures and standards for dust control through housekeeping, ventilation and exhaust air cleaning."

25. The Plaintiffs' MCC Wrongdoing Complaints further allege that by reason of MCC's knowing and intentional conduct toward the workers, MCC is liable (i.e. through the doctrine of transferred intent) to others who were harmed, whether or not such harm was foreseeable, and whether or not MCC otherwise owed a duty to such others:

- "Maryland Casualty acted with knowledge and intention that workers at W.R. Grace were being harmed by the workplace and take-home exposure to asbestos and by the absence of warning and disclosure of the hazards of those exposure, such that Maryland Casualty is <u>liable to all</u> who were injured by exposure to asbestos from the Grace operations and/or by the concealed nature of the hazard."

26. The Plaintiffs' MCC Wrongdoing Complaints further allege that MCC concealed the asbestos hazard and suppressed warnings with the deliberated goal that the asbestos hazard problem would not come to the attention of the "general public," and with the express purpose of avoiding its liability for what MCC anticipated would be "a good many" asbestos-related occupational disease claims:

- "Maryland Casualty's knowledge of, and motive with respect to, the impact of the suppressed facts on occupational disease claims included a November 25, 1967 letter to Maryland Casualty from the attorney it retained to defend the MODA claim of Zonolite worker Lilas D. Welch."

9150359v1

- "The suppression and nondisclosure of the asbestos hazard and reports and information relating thereto was motivated by Maryland Casualty's realization that it had 'a severe problem, and that [it] might expect a good many [MODA] claims involving asbestosis.'"

- "Maryland Casualty deliberately suppressed warnings and sought to avoid disclosure of the asbestos hazard from the Libby Operations of W.R. Grace because it did not want 'to expose the entire situation to the Industrial Accident Board [and] the general public' and deliberately strategized to suppress inspection reports 'to keep them out of the hands of the Industrial Accident Board, and through it, the general public.'" (emphasis added).

27. MCC's alleged liability for the MCC Wrongdoing Claims does not arise *by reason of MCC's provision of insurance to Grace*, within the meaning of Bankruptcy Code section 524(g)(4)(A)(ii). MCC is liable for the MCC Wrongdoing Claims (if proven) regardless of whether MCC provided insurance to Grace. Since provision of insurance by MCC is not a legal element of the MCC Wrongdoing Claims, Plaintiffs' state law causes of action do not fall within the permissible extent of an injunction under Bankruptcy Code section 524(g)(4)(A)(ii).

28. The MCC Wrongdoing Claims do not allege that Grace is liable for the injuries complained of, or that MCC is liable for any liability of Grace.

29. MCC takes the position that the Plaintiffs are in violation of the Asbestos PI Channeling Injunction by filing Complaints asserting the MCC Wrongdoing Claims.

30. Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the MCC Wrongdoing Claims against MCC.

**COUNT II**
**(Declaratory Judgment that the Channeling Injunction Does Not Enjoin the MCC Wrongdoing Claims Because MCC Is Not a Settled Asbestos Insurance Company With Respect to its Workers' Compensation Policies.)**

31. The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

32. The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

33. Section 1.1(209) of the Chapter 11 Plan provides that a Settled Asbestos Insurance Company such as MCC has such status "only with respect to, and only to the extent of, any Asbestos Insurance Policy (or portion thereof) identified . . . in Exhibit 5 in the Exhibit Book (as the same may be amended from time to time, including after the Effective Date) . . . ."

34. A true and correct copy of Exhibit 5 in the Exhibit Book, as on file with this Court as of the Effective Date, is annexed to this Complaint as Exhibit C [Docket No. 31657-3 filed January 28, 2014] (the "Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection").

35. None of the Workers Comp Policies is listed in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection.

36. The Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection has not been amended since the Effective Date.

37. Because the Workers Comp Policies are not listed in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection, claims against MCC in its capacity as issuer of the Workers Comp Policies are not barred by the Asbestos PI Channeling Injunction.

38. Nevertheless, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the MCC Wrongdoing Claims.

10

39. Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the MCC Wrongdoing Claims against MCC.

**COUNT III**
**(Declaratory Judgment that the Channeling Injunction Does Not Enjoin the MCC Wrongdoing Claims to the Extent the Claims Pertain to Coverage for Workers' Compensation Claims)**

40. The Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

41. The Asbestos PI Channeling Injunction bars any particular claim against MCC only to the extent that MCC is a Settled Asbestos Insurance Company in respect of such claim.

42. Section 1.1(209) of the Chapter 11 Plan provides that a Settled Asbestos Insurance Company such as MCC has such status "only with respect to, and only to the extent of, any Asbestos Insurance Policy . . . ."

43. Section 1.1(13) of the Chapter 11 Plan provides that "an Asbestos Insurance Policy shall not include any rights or obligations under any insurance policy or settlement agreement to which any of the Debtors are a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Workers' Compensation Claims."

44. Section 1.1(230) of the Chapter 11 Plan defines a Workers' Compensation Claim as, in pertinent part, "any Claim . . . for [workers' compensation] benefits under a state-mandated system, which a past, present, or future employee of the Debtors or their predecessors is receiving, or may in the future have the right to receive . . .."

45. In sum, the Chapter 11 Plan excludes from the Asbestos PI Channeling Injunction "rights or obligations . . . that pertain solely to coverage . . . for . . . benefits under a state-mandated workers' compensation system."

46.     The Plaintiffs' MCC Wrongdoing Complaints allege that MCC concealed the asbestos hazard and suppressed warnings with the deliberated goal that the asbestos hazard problem would not come to the attention of the "general public," and with the express purpose of avoiding its liability for what MCC anticipated would be "a good many" asbestos-related occupational disease claims that were covered by MCC's Workers' Compensation Policies.

47.     The occupational disease claims which MCC sought to avoid were claims under Workers Comp Policies and were claims that pertain solely to coverage for benefits under state-mandated workers' compensation systems, including the system mandated by the Montana Statute.

48.     The rights and obligations that pertain solely to coverage for workers' compensation claims include the duties to report injuries and act with candor and in good faith toward Montana's Industrial Accident Board and workers' compensation claimants. The MCC Wrongdoing Claims allege that breached these duties with the express intent and purpose to suppress disclosure of severe asbestos problem at the Libby Facilities to the Industrial Accident Board, workers with compensation claims and the general public:

> "Maryland Casualty deliberately suppressed warnings and sought to avoid disclosure of the asbestos hazard from the Libby Operations of W.R. Grace because it did not want 'to expose the entire situation to the Industrial Accident Board [and] the general public' and deliberately strategized to suppress inspection reports 'to keep them out of the hands of the Industrial Accident Board, and through it, the general public.'"

49.     MCC is not a Settled Asbestos Insurance Company in regard to rights or obligations that pertain to coverage under MCC's Workers Comp Policies.

50.     If the MCC Wrongdoing Claims do not "pertain to" MCC's insurance coverage for workers' compensation claims, the MCC Wrongdoing Claims cannot arise "by reason of" MCC's provision of insurance (within the meaning of 11 U.S.C. § 524(g)(4)(A)(ii)).

51.     While the Asbestos PI Channeling Injunction by its terms excludes claims enforcing rights or obligations that "pertain to" the coverages of the excluded Workers Comp Policies, MCC takes the position that the Plaintiffs will be in violation of the Asbestos PI Channeling Injunction by filing a complaint asserting the MCC Wrongdoing Claims.

52.     Because of the existence of an actual controversy between the Plaintiffs and MCC, a declaration of rights is both necessary and appropriate to establish that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from bringing the Negligence Claim against MCC.

[REMAINDER OF PAGE LEFT INTENTIONALLLY BLANK]

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment:

a) pursuant to Counts I, II and III, declaring that the Asbestos PI Channeling Injunction does not enjoin the Plaintiffs from commencing and conducting litigation against MCC on the MCC Wrongdoing Claims, nor from collecting such judgment as may be entered against MCC on the MCC Wrongdoing Claims;

b) granting the Plaintiffs such other and further relief as the Court deems just and proper, provided that such relief shall not include the right to commence or conduct litigation against MCC for conduct of, claims against, or demands on Grace, including MCC's derivative liability under the CGL Policies.

> Respectfully submitted,
>
> BARBARA HUNT
> SUE C. O'NEILL
>
> By their attorneys,
>
> */s/ Michael Busenkell*
> Michael Busenkell (DE 3933)
> GELLERT SCALI BUSENKELL & BROWN LLC
> 1201 N. Orange Street,
> Suite 300
> Wilmington, Delaware 19801
> Telephone: 302-425-5800
> Facsimile: 302-425-5814
> Email: mbusenkell@gsbblaw.com
>
> Daniel C. Cohn, Esq.
> Taruna Garg, Esq.
> MURTHA CULLINA LLP
> 99 High Street
> Boston, MA 02110
> Telephone: 617-457-4000
> Facsimile: 617-482-3868
> Email: dcohn@murthalaw.com

Dated: April 17, 2018

9150359v1