IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (KG)<br>(Jointly Administered) |
| Reorganized Debtors | Related to Docket No. 32999 |

**OPPOSITION AND CROSS-MOTION TO STAY AND/OR DISMISS
MARYLAND CASUALTY COMPANY'S MOTION TO ENFORCE INJUNCTION**

Rose Roberts hereby opposes Maryland Casualty Company's Motion to Enforce the Permanent Channeling Injunction and For Sanctions (Dkt No. 32999) (the "Enforcement Motion"), and further moves this Court to stay and/or dismiss without prejudice the Enforcement Motion.

**INTRODUCTION**

The Enforcement Motion appears to be directed at hundreds of unnamed individuals besides Ms. Roberts, without having been served on any of them (or even on Ms. Roberts). Though requested to do so, Maryland Casualty Company (herein "MCC") has declined to name the individuals against whom it seeks relief. McGarvey, Heberling, Sullivan & Lacey, P.C., ("Montana Counsel")[1] appear with this Opposition and Cross-Motion on behalf of Ms. Roberts, and those individuals represented by Montana Counsel who are hereinafter properly made parties to this proceeding. (All such individuals that this Court determines to be the object of the

---

[1] Murtha Cullina LLP is associated with Montana Counsel for the purpose of representing their clients in this chapter 11 case.

Enforcement Motion are referred to herein as "Respondents.") Relief under the Enforcement Motion should not be considered until its procedural deficiencies are rectified.

More broadly, this Court should stay briefing, argument and decision on the Enforcement Motion because the core issues raised therein are pending before the United States Court of Appeals for the Third Circuit, in an appeal that has been fully briefed – including an *amicus* brief submitted by MCC – and argued. It would be a senseless waste of resources for the parties to undertake the expense and for this Court to expend the effort to generate a decision that, even if it were to prove totally prescient as to how the Court of Appeals will rule on issues of first impression, would within days or weeks be superseded by that court's actual decision.

A further procedural aspect of this situation is that, contemporaneously herewith, two Montanans with claims against MCC have filed a declaratory judgment action to provide a procedurally appropriate means for this Court to address the core issues (the "Declaratory Judgment Action").[2] When the current or a future iteration of the Enforcement Motion, which might take the form of a declaratory judgment complaint properly served on the parties against whom relief is sought,[3] is scheduled for adjudication, the Respondents request that it be consolidated with the Declaratory Judgment Action.

In summary, the Enforcement Motion and the Declaratory Judgment Action address whether the channeling injunction as to personal injury claims contained in the confirmed plan in this case (the "Grace Plan") bars the assertion against MCC of Montana state law claims (a) arising from MCC's own misconduct, (b) that are not payable from insurance that MCC issued to Grace and (c) if pertaining to insurance at all, pertain to MCC's workers' compensation

---

[2] A copy of the complaint filed in the Declaratory Judgment Action is attached hereto as Exhibit 1.

[3] The point is not to put MCC to unwarranted effort or expense (Montana Counsel will accept service on behalf of their clients if MCC's counsel so requests) but rather to require MCC to provide notice of and to the individuals against whom MCC seeks relief, and to seek such relief through an appropriate proceeding.

insurance policies which are excluded from the injunction in the Grace Plan. The purpose of the Respondents' proposed approach to the Enforcement Motion and the Declaratory Judgment Action is to assist this Court's determination of the scope of the channeling injunction in the Grace Plan in an orderly adjudicative process which includes (a) notice as to who may participate and who will be bound, (b) the prior benefit of the decision that the Third Circuit is about to render, and (c) judicial consideration of the allegations in the Declaratory Judgment Action.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

W.R. Grace & Co. and certain of its affiliates ("Grace") commenced a chapter 11 case in this Court in 2001. The Grace Plan was confirmed in 2010 and took effect on February 3, 2014. The Grace Plan included a channeling injunction that barred certain asbestos-related claims against certain non-debtor parties, subject to the statutory limitations of 11 U.S.C. § 524(g)(4)(A)(ii) (the "Grace Channeling Injunction").

Two adversary proceedings decided by Judge Carey addressed the question of whether the Grace Channeling Injunction shielded certain Grace insurers from state law claims arising from their own misconduct.[4] The first proceeding was filed against MCC in October 2014 by Ralph Hutt and Carl Orsborn, two former Grace workers with asbestos disease resulting from exposure to asbestos during their employment at Grace (the "MCC Action"). A second action was commenced in June 2015 by Continental Casualty Company and Transportation Insurance Company (together, "CNA") against 27 injured claimants who had filed complaints in the courts of Montana against CNA alleging negligence for asbestos-related injuries (the "CNA Action").

---

[4] *Hutt v. Maryland Cas. Co. (In re W.R. Grace & Co.)*, No. 15-50766 (KJC), 2016 WL 6137275 (Bankr. D. Del. Oct. 17, 2016) and *Continental Cas. Co. v. Carr, et al. (In re W.R. Grace & Co.)*, No. 14-50867 (KJC), 2016 WL 6068092 (Bankr. D. Del. Oct. 17, 2016).

3

All of the injured claimants were represented by Montana Counsel in their underlying state court actions.

The Montana state court complaints at issue in the MCC Action and the CNA Action seek to hold each insurer liable for its own actions or omissions at Grace's operations in and near the town of Libby, Montana (the "Grace Facility") with respect to the insurers' undertakings of professional inspections and industrial hygiene. Specifically, MCC and CNA designed and implemented inadequate industrial hygiene programs, failed to fulfill their inspection duties, failed to engineer proper controls to contain the dust hazard, and, most importantly, suppressed disclosure and failed to warn of the danger of asbestos exposure.  For convenience, these types of state-law claims will be referred to herein as "Montana Claims" and the holders of such claims, whether or not they have filed suit, will be referred to as Montana Claimants.  However, there are potentially significant distinctions among Montana Claims and Montana Claimants.  Montana Claims against MCC, but not against CNA, include allegations of bad faith based on documents obtained from Grace revealing that MCC withheld and actively sought to suppress information known to it about the asbestos hazards at the Grace Facility.[5]  Some Montana Claimants were employed at Grace, some are spouses or family members exposed to asbestos brought into the house by a Grace worker in his dust-laden clothes, and some are residents of the Libby area who, due to absence of warning and suppression of reports, were exposed unwittingly to the hidden hazard of the asbestos that filled the town and the valley wherein it is situated.[6]

---

[5] Annexed hereto as Exhibit 2 is the November 25, 1967 letter (also an exhibit to a Montana complaint attached to the Declaratory Judgment Action) to MCC from its attorney urging MCC that the asbestos hazard problem should not come to the attention of the "general public," for the express purpose of avoiding liability for what MCC anticipated would be "a good many" asbestos-related occupational disease claims. As to CNA, however, Montana Counsel have not yet obtained sufficient discovery to know whether such allegations can be made.  In addition, among the various Montana Claimants there are factual differences that MCC apparently asserts have legal significance.

[6] There are additional distinctions among Montana Claimants – not important for purposes of the Enforcement Motion or the Declaratory Judgment Action – based on dates of exposure to asbestos.  MCC's alleged misconduct

The MCC Action and the CNA Action presented similar issues of law – whether the Grace Channeling Injunction barred the Montana Claims at issue in those cases. Judge Carey procedurally consolidated the cases for oral argument. On October 17, 2016, he issued decisions in both cases. The decision in the MCC Action permitted injured employees to proceed with their claims against MCC because the exhibit to the Grace Plan specifying policies covered by the Grace Channeling Injunction did not include the workers' compensation policies that the two Montana Claimants alleged gave rise to duties MCC breached. MCC did not appeal. The decision in the CNA Action granted summary judgment for CNA, holding that the Montana Claims against CNA were within the scope of the Grace Channeling Injunction. The claimants in the CNA Action appealed. The Third Circuit granted the parties' joint request for a direct appeal pursuant to 28 U.S.C § 158(d)(2). MCC filed a brief as *amicus curiae* on CNA's behalf. Oral argument took place in March before Judges Ambro, McKee and Restrepo. A decision remains pending.

**Summary of Arguments Presented on Appeal**

In the pending Third Circuit appeal, Montana Claimants advanced four principal arguments to show why their Montana Claims against CNA were not covered by the Grace Channeling Injunction. Each of these arguments, summarized below, also applies to the Montana Claims against MCC. For the Court's convenience, copies of briefs filed by the parties to the appeal, the *amicus brief* filed by MCC, and a transcript of the oral argument, are each attached hereto as Exhibit 3.

---

took place during the period of 1963-1973, when it served as Grace's workers' compensation insurer, while CNA's alleged misconduct occurred during the period of 1973-1996, when CNA supplied workers' compensation insurance to Grace. Only those Montana Claimants exposed to asbestos during (or generated during) these respective periods assert claims against MCC, CNA or both. A Montana Claimant who left Libby in 1972, for example, would have a claim against MCC but not CNA.

5

The specific arguments advanced by the Montana Claimants reflect a broader point about the statutory scheme. Channeling injunctions are designed to promote settlements between insurers and debtors whereby the insurer writes a check for its remaining liability under the insurance policy (or a compromise thereof, if disputed) and is protected by injunction from any further liability for insured claims. To achieve this goal does not require enjoining claims against insurers for their own misconduct. Whether or not protected from such claims, insurers have the same incentive to settle their policy liability with the debtor. The Montana Claims belong to the Montana Claimants, not the debtor. If the Grace Channeling Injunction released MCC from the Montana Claims, MCC got that release for free. During the chapter 11 case, Grace did not receive a dime from MCC, which had settled its policy liability years earlier. In future cases, permitting debtors to settle claims of individual victims of an insurer's wrongdoing would create windfalls for insurers. A debtor will settle for less than the victims because its incentives are different. For the debtor, the alternative to settling the claims is not (as would be usual between settling litigants) pursuing a litigation recovery. Rather, the alternative is to get nothing because the claims will revert to the actual injured plaintiffs. No rational statutory scheme would put in place a system of perverse incentives conferring a windfall on the wrongdoing insurer and imposing an unjust expropriation on victims of insurer misconduct.

A) *The Montana Claims Are Outside of the Scope of a Permissible Injunction under Section 524(g)(4)(A)(ii)(III) of the Bankruptcy Code Because They Are Not Derivative of Grace's Liability and Do Not Arise by Reason of the Provision of Insurance.*

Channeling injunctions granted in asbestos cases must fit within the statutory framework of 11 U.S.C § 524 (g)(4)(A)(ii). The Grace Plan was confirmed on the basis of this limitation.[7]

---

[7] "Grace's channeling injunction incorporates the statutory requirements of § 524(g)." *In re W.R. Grace & Co.*, 475 B.R. 34, 95 (D. Del. 2012).

The statute sets forth two requirements for claims against non-debtors to be shielded by the injunction, each of which must be met.  First, the alleged liablity of the non-debtor must be "for the conduct of, claims against, or demands on the debtor."  11 U.S.C. § 524(g)(4)(A)(ii).  The express language of the statute thus only covers claims against non-debtors *derivative* of Grace's liability, and conversely excludes claims independent of Grace's liability.  Second, claims against a non-debtor must arise "by reason of" of one of four relationships between the debtor and non-debtor enumerated in subsections (I) - (IV) of 11 U.S.C. § 524(g)(4)(A)(ii).  The only statutory relationship applicable to MCC[8] is the "provision of insurance to the debtor or a related party." 11 U.S.C. § 524(g)(4)(A)(ii)(III).  The Montana Claimants assert that their claims satisfy neither prerequisite to be covered by the Grace Channeling Injunction.

The Montana Claims flunk the first prerequisite because MCC's alleged liablity is not premised upon "the conduct of, claims against, or demands on [Grace]."  Instead, the state-court complaints allege that MCC breached independent duties it owed to the Montana Claimants under Montana law arising from MCC's acts or omissions in the design and implementation of an inadequate industrial hygiene program, its failure to fulfill inspection duties, and failure to warn the Montana Claimants of the danger of asbestos exposure based upon its undertaking of services.  The Third Circuit is not being asked to determine the validity of the Montana Claims under Montana law (as the Second Circuit observed in one of its *Johns-Manville* decisions, that function rests with the state courts[9]) but simply whether such claims, if valid, are outside the scope of the Grace Channeling Injunction.[10]

---

[8] MCC is used rather than CNA (although CNA is the party and MCC an *amicus curiae* in the pending appeal) because Montana Claims against CNA are the issue before the Court in this proceeding.

[9] *In re Johns-Manville Corp.*, 517 F.3d 52, 64 n.21 (2d Cir. 2008), *rev'd on other grounds*, 557 U.S. 137 (2009)

[10] Nevertheless, the appellate briefs address the basis of the Montana Claims under Montana law.  Montana recognizes a duty to warn third parties – independent of the role or responsibility of the creator/owner of the hazard – where a defendant's relationship with the third party creates a reliance and expectation that the defendant

Second, MCC's liability in negligence and bad faith does not "arise by reason of" its provision of insurance to Grace. In construing whether a claim against a non-debtor arises "by reason of" one of the four statutory relationships in section 524(g)(4)(A)(ii), the Second Circuit has held that the term "by reason of" requires that the non-debtor's alleged liability arise as a legal, not merely a factual, consequence of one of the Statutory Relationships. *In re Quigley*, 676 F.3d 45, 60 (2d Cir. 2012). In the context of claims against insurers, this interpretation would shield an insurer from claims based on its contractual liability for claims against the debtor, including direct and indirect attempts to collect Grace's insurance. It would not, however, protect an insurer from claims of tortious conduct for which the terms of the insurance contract are not a required legal element. Because MCC's insurance relationship with Grace is not a legal element of the Montana Claims, despite MCC's factual premise that it would not have performed such functions but for serving as Grace's insurer, the Montana Claims do not seek to hold MCC liable "by reason of" its provision of insurance to Grace and do not satisfy the second prerequisite 11 U.S.C. § 524(g)(4)(A)(ii).

> *B) The Montana Claims Are Excluded from the Grace Channeling Injunction by its Terms.*

The Montana Claims allege that MCC sent industrial hygienists and medical personnel to the Grace Facility, yet failed to implement an adequate dust-control system and failed to warn of the asbestos hazard engulfing workers, their family members, and the community. If deemed to

---

will disclose and warn of hidden hazards. *Piedalue v. Clinton Elementary School Dist. No. 32*, 692 P.2d 20, 23 (Mont. 1984) (emphasis added). The key is foreseeable risk of harm. Montana caselaw also holds that a person who undertakes to provide services has a duty, to those who will foreseeably rely on those services, to use due care in performing them. *See, e.g., Hawthorne v. Kober Const. Co., Inc.*, 640 P.2d 467, 470 (Mont. 1982). Thus, under Montana law MCC owed separate and distinct duties to individuals who foreseeably relied upon the services it provided to Grace, such as spouses and members of the community exposed to the toxic asbestos dust that shrouded Grace employees. Such duties had nothing to do with any liability of Grace, or MCC's relationship with Grace.

arise by reason of the provision of insurance at all, the Montana Claims arose from the workers' compensation insurance that MCC provided to Grace, which was expressly excluded by the terms of the Grace Channeling Injunction.  The Grace Channeling Injunction excludes claims arising from MCC workers' compensation coverage in two ways.

First, MCC's workers' compensation policies are not included in the Plan exhibit that lists the settled asbestos insurance policies covered by the Grace Channeling Injunction.  (This was the ground upon which the Bankruptcy Court permitted the claims asserted in the MCC Action to proceed.)  The Grace Channeling Injunction protects Asbestos Protected Parties.  The only insurers within the definition of Asbestos Protected Parties are Settled Asbestos Insurance Companies.  The Grace Plan provides that a Settled Asbestos Insurance Company is afforded protection by the Grace Channeling Injunction "only with respect to, and only to the extent of, any Asbestos Insurance Policy (or any portion thereof) identified" in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection.  This schedule, constituting Exhibit 5 to the Grace Plan, does not list any MCC workers' compensation policies.  As the Bankruptcy Court correctly concluded (and MCC did not appeal), claims arising under MCC's workers' compensation policies not listed on Exhibit 5 of the Grace Plan were not enjoined.

Second, the Grace Plan categorically excluded from the Grace Channeling Injunction all rights and obligations concerning workers' compensation coverage.  As just noted, a Settled Asbestos Insurance Company is afforded protection by the Grace Channeling Injunction "only with respect to, and only to the extent of, any Asbestos Insurance Policy . . . ."  Of course, the particular policy must be listed in Plan Exhibit 5 as just discussed, but in addition, the term Asbestos Insurance Policy "shall not include any rights or obligations under any insurance policy or settlement agreement to which any of the Debtors are a party to the extent . . . that such rights

or obligations pertain solely to coverage for Workers' Compensation Claims." Thus, the Grace Plan preserves all rights and obligations relating to workers' compensation coverage from the Grace Channeling Injunction.

> *C) Considerations of Federalism Require Construing Section 524(g)(4)(A)(ii)(III) to Avoid Preempting States' Police Powers in Respect of their Workers' Compensation Systems.*

Claims against a workers' compensation insurer, such as the Montana Claims against CNA, cannot be barred by operation of a federal statute without impermissibly interfering with the States' police power in regard to matters of health and safety. Even were the Grace Plan to be construed as otherwise barring the Montana Claims, the "long-standing presumption against preemption" by bankruptcy law of State police power requires construing section 524(g)(4) not to override State law permitting such claims. *In re Fed.-Mogul Global, Inc.*, 684 F.3d 355, 381 (3d Cir. 2012)

## ARGUMENT

### I. The Enforcement Motion Should Be Stayed Pending the Third Circuit's Decision.

A court's ability to stay a pending action is incidental to its inherent power to control the disposition of the cases on its docket with economy of time and effort for itself, counsel, and litigants. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Federal courts have broad discretionary power to stay proceedings. *Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976).

"Courts generally weigh a number of factors in determining whether to grant a stay including (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the

case; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotations and citations omitted). "Where a stay is sought pending resolution of purportedly related litigation, as here, courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action." *Id.* at 446. "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel,* 544 F.2d at 1215; *see also Mastec Renewable Constr. Co. Inc. v. Mercer County Improvement Auth.*, No. CV151897FLWLHG, 2017 WL 6493141, at *3 (D.N.J. December 19, 2017) (granting stay pending outcome of appeal in related litigation).

The Third Circuit has before it the legal issues governing this Court's determination of whether claims against CNA, similar to the Montana Claims against MCC, violate the Grace Channeling Injunction. The only step remaining in the appeal is the issuance of a decision. If the Third Circuit determines that the claims against CNA are not barred by the Grace Channeling Injunction, its decision would overrule some or all of the portions of Judge Carey's decision in the MCC Action (the "Earlier Decision") on which MCC relies for the Enforcement Motion. Even if the Third Circuit rules in favor of CNA, its decision is likely to be instructive for this Court on the applicable principles of law. Principles of judicial economy strongly weigh in favor of granting a stay of the Enforcement Action until the Third Circuit issues its decision.

There will be no harm to MCC from the brief delay while this Court and the parties await the Court of Appeals decision. The status quo – which MCC does not challenge in the Enforcement Motion – is that, per the Earlier Decision, Mr. Hutt, Mr. Orsborn and other Montana Claimants who are former Grace workers may proceed with their Montana Claims against MCC. Although the only Montana Claimants before the Court in the MCC Action were

former Grace workers, MCC interprets the rationale of the Earlier Decision as indicating that Montana Claims by non-workers are barred. The Respondents disagree. Regardless of which perspective is correct, the Respondents respectfully submit that given the actual procedural posture of the proceedings in the Montana Asbestos Court where almost all filed Montana Claims are pending, the bare fact that actions by non-workers are pending for purpose of preserving the statute of limitations[11] entails no incremental burden to MCC. MCC has served notice in the Montana Asbestos Court (as well as in the one case in which a party opted out of the Montana Asbestos Court) that the Montana Claims of non-workers are the subject of MCC's motion before this Court and should be stayed. In both proceedings, Montana Counsel has responded with a concurrence that such a stay is appropriate to preserve for this Court the opportunity to resolve the scope of the channeling injunctions before the cases are pursued, and to eliminate any burden or expense on MCC pending such resolution.

## II. The Enforcement Motion Should Be Denied Because It is Procedurally and Substantively Deficient.

MCC seeks two categories of relief in the Enforcement Action. It requests that the Court "(1) enforce the Asbestos PI Channeling Injunction, as clarified by the [Earlier Decision], as necessary to require Plaintiff Roberts and Similar Claimants to dismiss the Roberts Action and all Similar Claims against MCC with prejudice and prohibit Plaintiff Roberts and Similar Claimants from pursuing, advancing, or initiating any claims against MCC; and (2) hold Plaintiff's Counsel in civil contempt and assess appropriate sanctions for their willful violation of the Asbestos PI Channeling Injunction and [the Earlier Decision]." Enforcement Motion at 5.

---

[11] Even the filing of actions to preserve statute of limitations would have been avoided if MCC had not rejected Montana Counsel's offer to forebear filing upon MCC's agreement that the limitation period would be tolled. That tolling procedure has been successfully employed for the claims against CNA while the appeal is pending before the Third Circuit.

Contempt motions are governed by Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which provides: "Rule 9014 governs a motion for order of contempt made by the United States or a party in interest." Fed. R. Bankr. P. 9020. Bankruptcy Rule 9014, governing contested matters, provides in subsection (b) that a motion brought thereunder "shall be served in the manner provided for service of a summons and complaint by Rule 7004 and within the time determined under Rule 9006(d)." Fed. R. Bank. P. 9014(b). MCC has not even attempted to proceed in this manner,[12] apparently based on the erroneous premise that the applicability of the Grace Channeling Injunction to Ms. Roberts and all other non-worker Montana Claimants has already been adjudicated and all that remains to be done is to require dismissal of these lawsuits and punish the lawyers who have contemptuously failed to do this already. MCC is wrong in three respects.

First, the only two parties to the MCC Action are Mr. Hutt and Mr. Orsborn. They prevailed against MCC and are now free to pursue their Montana Claims against MCC. Longstanding principles of *res judicata* make clear that only the parties are bound by a proceeding, even if subsequent proceedings between different parties involve the same claims or legal issues. *S. Cent. Bell Tel. Co. v. Alabama, 526 U.S. 160*, 167–68 (1999). MCC is wrong to cast the Earlier Decision as binding upon all Montana Claimants.

Second, the Enforcement Motion involves different legal issues from the Earlier Decision because, as MCC interprets Judge Carey's decision, the plaintiffs prevailed on a basis solely applicable to former Grace workers. The rationale of the Earlier Decision is, according to MCC, fatal to the assertion by non-worker Montana Claimants that their claims may proceed despite the

---

[12] MCC has not attempted to serve those against whom it seeks relief. The point is not to put MCC to extra expense – Montana Counsel would accept service on behalf of their clients – but to establish on the record who MCC is proceeding against. Insofar as the relief sought by MCC is in the nature of a declaratory judgment, MCC should properly proceed by adversary proceeding.

13

Grace Channeling Injunction. This did not matter to the plaintiffs, whose incentive was to win on any basis, whether on the narrow grounds Judge Carey accepted or the broader grounds he rejected. As the prevailing parties, the plaintiffs had no incentive to appeal, nor, indeed, could they. *Deposit Guar. Nat. Bank, Jackson, Miss. v. Rober*, 445 U.S. 326, 333 (1980) ("A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it.") No Montana Claimant had the opportunity to appeal from the Earlier Decision. It is not a mere technicality that principles of *res judicata* render the Earlier Decision not binding on the Respondents. If non-worker Montana Claimants had been parties to the MCC Action, they would have appealed from the decision, and it would now be before the Third Circuit – most likely consolidated with the pending appeal concerning claims against CNA.

Third, there is no doubt that the Montana Claimants and Montana Counsel are proceeding in good faith. Whether a channeling injunction under section 524(g)(4) may bar claims against an insurer for its own tortious conduct is an issue of first impression in this Circuit. The Montana Claimants' position is supported by caselaw in the Second Circuit,[13] although MCC considers those decisions distinguishable, and so did Judge Carey in the Earlier Decision. Until the applicability of the Grace Channeling Injunction to their claims is finally adjudicated, Montana Claimants must file complaints within the period of the applicable statute of limitations, which begins to run when an individual is diagnosed with asbestos disease. Montana Claimants have waited until near the end of the limitations period to bring suit, and have delayed serving MCC for an additional period permitted by applicable rules. MCC has rejected requests by Montana Counsel to enter into a tolling agreement so that Montana Claimants could delay suing

---

[13] *In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012); *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008).

MCC while the applicability of the Grace Channeling Injunction is being litigated. Montana Claimants with standing to do so have appealed Judge Carey's decision in the CNA Action to the Third Circuit in order to obtain clarification, at the earliest possible date, of the issues governing whether the Grace Channeling Injunction bars the Montana Claims. In sum, until such clarification has been received through a decision of the Third Circuit that has become final, it would be premature and unfair for this Court to consider requiring dismissal of Montana Claims against MCC. For the same reasons, sanctions against Montana Counsel are completely unwarranted. *In re Safety-Kleen*, 331 B.R. 605 (Bankr. D. Del. 2005) (denying motion for contempt for violations of injunctive provisions of sale order because order was subject to reasonable differing interpretations).

WHEREFORE, the Respondents respectfully request that the Court (a) stay the Enforcement Motion pending decision by the Third Circuit in the pending appeal versus CNA; (b) require MCC to identify those against whom it seeks relief, and seek it by commencing an adversary proceeding, (c) dismiss the Enforcement Motion with prejudice insofar as it seeks sanctions for alleged violations of the Grace Channeling Injunction; (d) when it comes time to proceed with the Enforcement Motion or a different iteration thereof, consolidate that proceeding with the Declaratory Judgment Action; and (e) grant such other and further relief on this Opposition and Cross-Motion as the Court may deem proper.

[SIGNATURE PAGE TO FOLLOW]

                              Respectfully submitted,

                              ROSE ROBERTS (AND OTHER RESPONDENTS)

                              By their attorneys,

                              */s/ Michael Busenkell*
                              Michael Busenkell, Esq. (DE 3933)
                              GELLERT SCALI BUSENKELL & BROWN LLC
                              1201 N. Orange Street, Suite 300
                              Wilmington, Delaware 19801
                              Telephone:   (302) 425-5800
                              Facsimile:    (302) 425-5814

                              Daniel C. Cohn, Esq.
                              Taruna Garg, Esq.
                              MURTHA CULLINA LLP
                              99 High Street
                              Boston, MA 02110
                              Telephone:   (617) 457-4000
                              Facsimile:    (617) 482-3868

                              Roger Sullivan, Esq.
                              Allan M. McGarvey, Esq.
                              John F. Lacey, Esq.
                              MCGARVEY, HEBERLING, SULLIVAN & LACEY, P.C.
                              345 First Avenue East
                              Kalispell, MT 59901

Dated: April 17, 2018          Telephone:   (406) 752-5566