# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | Case No.: 01-1139 (KG) |
| W.R. Grace & Co., et. al., | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: 04/25/18 @ 10:00 a.m.** |
| Reorganized Debtors. | ) | **Re: D.I. Nos.: 32999, 33021** |

### MARYLAND CASUALTY COMPANY'S REPLY IN SUPPORT OF MOTION TO ENFORCE THE PERMANENT CHANNELING INJUNCTION AND FOR SANCTIONS

Maryland Casualty Company ("MCC") hereby replies to Rose Roberts' ("Plaintiff Roberts") Opposition to *Maryland Casualty Company's Motion to Enforce the Permanent Channeling Injunction and for Sanctions*, [D.I. 32999] ("Enforcement Motion"), and opposes Plaintiff Roberts' "cross-motion" for a stay and/or dismissal.

### Introduction

1.     Plaintiff Roberts devotes the majority[1] of her Opposition and Cross-Motion ("Roberts Opposition") to misplaced and inaccurate procedural arguments in an effort to distract this Court from the substance of MCC's Enforcement Motion and the relief requested therein. Plaintiff Roberts raised only tangential issues not relevant to the Enforcement Motion, and attached 400 pages of exhibits in an attempt to convince this Court that the Enforcement Motion is complex. It is not: This Court's Order ("Confirmation Order") confirming W.R. Grace's Chapter 11 Bankruptcy Plan[2] ("Plan") and Judge Kevin J. Carey's Opinion [Adv. Proc. D.I. 35] ("Opinion")[3]

---

[1] Only the final three pages of the Roberts Opposition directly address the merits of MCC's Enforcement Motion.

[2] *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010*, dated January 31, 2011 [Docket No. 26155], and *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010*, dated February 15, 2011 [Docket No. 26289]; [affirmed by the District Court and Third Circuit Court of Appeals].

[3] *Hutt, et al. v. Maryland Casualty Company*, 2016 LEXIS 3754 (Bankr. D. Del. Oct. 17, 2016).

and Order [Adv. Proc. D.I. 36] ("Order") are valid, <u>final</u>, and binding court Orders (collectively, "Final Orders"). The Plan and Confirmation Order, as defined by Judge Carey's Opinion and Order, hold that asbestos-related personal injury claims against MCC are channeled into the Asbestos PI Trust by the Asbestos PI Channeling Injunction, *except to the limited extent* that plaintiffs who are former W.R. Grace ("Grace") workers can state claims against MCC arising out of specific workers' compensation policies that are not listed on Exhibit 5 to the Plan. Plaintiff Roberts, Similar Claimants[4], and Montana Counsel's actions in continuing to file and prosecute claims against MCC on behalf of non-workers, plainly violate the Final Orders. Further, Montana Counsel's violations have been knowingly made. The continued violation of the Final Orders has caused and continues to cause MCC to expend substantial and unnecessary time and expense.

2.      The "procedural deficiencies" that Plaintiff Roberts discusses at length as a basis for delaying and/or withholding the relief requested in the Enforcement Motion are fictions. Staying the instant Motion would be inappropriate, first and foremost, because the outcome of the Third Circuit appeal in *Cont'l Cas. Co. v. Carr (In re W.R. Grace & Co.)*, 17-1208 (3rd Cir. Argued Mar. 6, 2018) (hereinafter, "CNA Appeal") will not and cannot overrule the Final Orders and will not impact the resolution of the Enforcement Motion. Further, the Enforcement Motion is appropriately brought in the form of a motion, rather than an adversary proceeding, because it seeks to enforce an injunction that is already in place. Additionally, the Enforcement Motion complies with due process in that it adequately defines the individuals against whom enforcement is sought, and Montana Counsel was properly served.

3.      Plaintiff Roberts' and Montana Counsel continue this march towards attempting to convince the Court that somewhere, there is relief; notwithstanding, attempt after attempt has

---

[4] This Reply refers to the hundreds of Libby Plaintiffs who never worked at the Grace Mine, but have nevertheless filed claims against MCC, as "Similar Claimants," and their claims as "Similar Claims."

defined the universe of claimants that are allowed to proceed with claims. Montana Counsel were denied the Roberts claims, never appealed the denial, and continue to file claims and motions to circumvent the Court's legal process. MCC seeks an end to the continued disrespect by the Libby Plaintiffs to the Court's process and decisions.

4.     Plaintiff Roberts fails to address and has not refuted the violations cited in the Enforcement Motion. In fact, Plaintiff Roberts has failed to deny, or otherwise directly address, the allegation that the non-worker claims against MCC are permanently enjoined by the Plan's Asbestos PI Channeling Injunction and the Final Orders. The Roberts Opposition substantially fails to address the Final Orders, their implications, or the substantive violations that MCC has identified in the Enforcement Motion. Rather, Plaintiff Roberts presses forward with an array of procedural distractions, while continuing to violate the Court's Final Orders. Accordingly, this Court should grant the relief sought in the Enforcement Motion, deny Plaintiff Roberts' cross-motion for a stay, and end the pursuit by Montana Counsel of the many improperly filed claims.

## Plaintiff Roberts' Cross-Motion Should Be Denied

5.     As an initial matter, Plaintiff Roberts has failed to demonstrate that the CNA Appeal could moot or otherwise substantially impact the Enforcement Motion. Further, Plaintiff Roberts, Similar Claimants, and Montana Counsel have, by their own admission, delayed adjudication of their claims. *See* Roberts Opposition at 14-15. As such, request for a stay to further permit the passage of time is clearly a tactical move. Plaintiff Roberts, Similar Claimants, and Montana Counsel have been aware of the worker/non-worker distinction since Judge Carey issued his *Hutt* Opinion and Order in 2016, and they have been aware of the exact form of the Enforcement Motion since its filing in January of this year. Delayed action on the Enforcement Motion robs MCC of the finality achieved by the Plan and this Court's Final Orders. It also

imposes hardship because MCC must continue tracking, cataloguing, and defending an unknown universe of claims brought in violation of the Asbestos PI Channeling Injunction and the Final Orders.

6.    Plaintiff Roberts has altogether failed to articulate how the CNA Appeal's outcome will affect or simplify litigation of the Enforcement Motion.[5]    The core of the Enforcement Motion—the distinction and significance of individual Libby Plaintiffs' status as former workers or non-workers—is not a factor in the CNA Appeal.    Further, no outcome in the CNA Appeal would serve to excuse or retroactively justify conduct that violated a separate, final order that was not appealed.

7.    Plaintiff Roberts' position and strategy are clear: Libby Plaintiffs and Montana Counsel may repeatedly challenge the scope of the Asbestos PI Channeling Injunction under 11 U.S.C. § 524(g), so long as each challenge is captioned under a different Libby plaintiff's name. This is both disingenuous and incorrect.    Further, this Court has already ruled upon the Plan and entered the Final Orders, and Montana counsel's serial efforts to sidestep those Final Orders unnecessarily burdens both the Court and MCC.

8.    It appears that Montana Counsel representss approximately 1,657 individual Libby Plaintiffs with claims against multiple defendants, including ostensibly MCC, of which only 268 appear to be former Grace workers.[6]    Plaintiff Roberts cannot, on the one hand, decry a "senseless waste" of judicial resources in proceeding with the Enforcement Motion during the pendency of the CNA Appeal, and on the other hand, claim that the 1,657 Libby Plaintiffs represented by the

---

[5] The only discussion in Plaintiff Roberts' response is: "If the Third Circuit determines that the claims against CNA are not barred by the Grace Channeling Injunction, its decision would overrule some or all of the portions of Judge Carey's decision in the MCC Action . . . on which MCC relies for the Enforcement Motion."  Roberts Opposition at 11.  This statement is in error.  The Enforcement Motion relies only on *Hutt*, which is final.

[6] These figures are derived from Montana Counsel's Master Claims List, discussed *infra* n. 14.

same Montana Counsel each have an individual right to reargue points of law that this Court has already conclusively ruled on. *Compare* Roberts Opposition at 2 ("It would be a senseless waste of resources . . .") *with id.* at 13 ("First, the only two parties to the MCC Action are Mr. Hutt and Mr. Orsborn [sic]. . . .  MCC is wrong to cast the Earlier Decision as binding upon all Montana Claimants.").

9.     Montana Counsel's newly-filed adversary proceeding,[7] brought under the names of individual Libby Plaintiffs Barbara Hunt, as Personal Representative for the Estate of Robert J. Hunt, deceased, and Sue C. O'Neil ("*Hunt* and *O'Neil* Adversary Complaint"), *see* Exhibit 1 to the Roberts Opposition, is an example of the gross redundancy such a procedure would entail.  The *Hunt* and *O'Neil* Adversary Complaint raises the exact same counts[8] that were raised in the *Hutt* Adversary Complaint[9] [Adv. Proc. No. 14-50867, D.I. 1], and ruled on in the Final Orders.[10]

---

[7] Adversary Proceeding No. 18-50402, initiated April 17, 2018.

[8] Notably, however, over the course of the years since litigation of the *Hutt* Adversary Proceeding, the Libby Plaintiffs' state court complaints in the *Hunt* and *O'Neil* Adversary Proceeding are <u>already filed</u>, as opposed to "proposed." Exhibit 1-A to Roberts Opposition.  In addition, Libby Plaintiffs raise the same Adversary Counts in order to bring two new, cleverly pleaded state tort claims: "Intentional Concealment" and "Transferred Intent."  Exhibit 1 to Roberts Opposition at 2.  This appears to be a disingenuous filing to the Court.

[9] *Compare Hutt* Adversary Complaint [Adv. Proc. No. 14-50867, D.I. 1] (Counts I and VI – Section 524(g) excludes the negligence and bad faith claims from any channeling injunction, Counts II and IV – If the claims arise from the provision of insurance, then they must arise from workers compensation policies, which the Chapter 11 Plan excludes from the Asbestos PI Channeling Injunction by not listing such policies in the Schedule of Settled Asbestos Insurance Companies Entitled to 524(g) Protection, & Counts III and V – If the claims arise from the provision of insurance, then they must arise from the workers compensation policies, and the Asbestos PI Channeling Injunction excludes coverage for benefits under a state-mandated workers' compensation system), *with* Exhibit 1 to Roberts Opposition (Count I – The channeling injunction does not enjoin the MCC wrongdoing claims because that injunction is constrained by the conditions in 11 U.S.C. § 524(g)(4)(A)(ii), Count II – The channeling injunction does not enjoin the MCC wrongdoing claims because MCC is not a settled asbestos insurance company with respect to its workers' compensation policies, & Count III – The channeling injunction does not enjoin the MCC wrongdoing claims to the extent the claims pertain to coverage for workers' compensation claims).

[10] Trial in the matter of *Hunt v. Fischbach & Moore, et al.*, BDV-02-0924, Montana Eighth Judicial District Court, Cascade County, in which MCC is a defendant, is currently set for February 5, 2019.  MCC has filed a Notice in the state court identifying the Enforcement Motion.  Oddly, Montana Counsel's recent adversary proceeding was initiated in part on behalf of the same Libby Plaintiff, Robert J. Hunt, through Personal Representative Barbara Hunt.  *See* Exhibit 1 to Roberts Opposition.

## MCC's Enforcement Motion is Procedurally Correct

10.     Plaintiff Roberts and Montana Counsel are incorrect in their assertion that MCC improperly requests relief by motion as opposed to an adversary proceeding.   MCC seeks enforcement of an existing injunction, as opposed to new injunctive relief.  *See In re Kalikow*, 602 F.3d 82, 93 (2nd Cir. 2010) (enforcement of a pre-existing injunction may be brought through a motion rather than an adversary proceeding); *In re WorldCorp, Inc.*, 252 B.R. 890 (Bankr. D. Del. 2000) ("Thus, we conclude that an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained.").

11.     The form of the Enforcement Motion is not merely one permissible means of seeking the requested relief; it is the only proper mechanism for doing so.[11]  "An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief."  *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011) (contempt proceedings for a violation of § 524 must be initiated by motion in the bankruptcy case and not by adversary proceedings) (relying on *In re Kalikow*, 602 F.3d at 93); *see also Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 968 (11th Cir. 2012) (party seeking to enforce an injunction cannot obtain a successive injunction).

12.     Plaintiff Roberts' contention, that the failure to serve and join every individual Libby Plaintiff renders the Enforcement Motion procedurally deficient, is similarly flawed.  In a contested matter, due process requires only that "reasonable notice" be given to the party against

---

[11] "In the event an injunction is obtained and an adverse party fails to comply with its terms, the party who obtained the injunction can move under Fed. R. Bankr. P. 9020 to have the adverse party held in contempt of court. It is not necessary, or even proper, to seek to enforce an injunction by obtaining an additional injunction ordering compliance with an existing injunction. Such an act has been said to be superfluous. Relief for violation of the injunction should generally be sought before the court that issued the injunction." § 7:40.60, *Enforcing an injunction order, 2 Bankruptcy Litigation*.

whom relief is sought.  *Kalikow*, 602 F.3d at 92; Fed. R. Bank. P. 9014(a).[12]  Reasonable notice

does not require that a motion specifically name the parties to the matter.[13]  *Id.*  In *Kalikow*, the

Second Circuit considered whether an enforcement motion against two individuals satisfied due

process/notice considerations.  The enforcement motion sought an order against "Evergence, and

its directors, officers, controlling persons, and agents, including the law firm of Dreier LLP," and

further stated that it was directed to unidentified parties who did not want to be identified, but were

using Evergence (a defunct corporation) as a front to pursue their improper ends.  *Id.* at 92.  The

Second Circuit concluded that the enforcement motion was sufficiently descriptive to notify the

particular individuals that relief was being sought against them.  Alternatively, the Second Circuit

noted that, while the individuals argued that they were not properly served, their lawyers, who

were engaged for purposes of the conduct at issue, continued to represent them for purposes of the

enforcement motion, and represented the individuals in other litigation, were properly served.  The

Second Circuit noted that proper service on the individuals' counsel constituted proper service on

the individuals, as the law firm was impliedly authorized to accept service.[14]

---

[12] Fed. R. Bankr. P. 9014(a) provides that "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise."

[13] If Plaintiff Roberts was correct in her contention that the only mechanism for this Court to afford a final and conclusive ruling on the scope of the Asbestos PI Channeling Injunction applicable to the universe of Libby Plaintiffs would be to initiate an adversary proceeding or separate adversary proceedings with respect to each individual's claims or join each individual plaintiff, then the only Libby Plaintiffs with current authorization from this Court to proceed to any extent against MCC would be Ralph Hutt and Carl Osborn.  Applying Plaintiff Roberts' reasoning, even other former Grace workers would have to initiate or be the subject of individual adversary proceedings in order to conclusively determine whether their state law claims are permissible under the scope of the Asbestos PI Channeling Injunction.  This procedure has not been followed by the Libby Plaintiffs or Montana Counsel.

[14] The Second Circuit went on to overrule the bankruptcy court's imposition of sanctions on the individuals, as it determined that they were not bound by the prior injunction because they were not holders of pre-confirmation claims discharged in bankruptcy.  *Id.* at 94-95.

13.     Here, the Enforcement Motion sufficiently describes the unnamed individuals against whom relief is sought: Plaintiff Roberts and other "Similarly Situated Claimants," defined as Libby Plaintiffs who never worked at the Grace mine but who have filed asbestos-related personal injury claims against MCC in Montana.  *See, e.g.*, Enforcement Motion at 4, ¶ 8, n. 6. Further, the individuals against whom relief is sought are all represented by the same Montana Counsel in their state court claims against MCC in Montana, and Montana Counsel were properly served with the Enforcement Motion.  Additionally, at the time of MCC's filing of the Enforcement Motion, the identities of the Libby Plaintiffs who are similarly situated to Plaintiff Roberts were known only to Montana Counsel, and the extent of this information is still exclusively within Montana Counsel's knowledge and control.[15]  Under these circumstances, the Enforcement Motion has reasonably notified the individual plaintiffs against whom enforcement is sought.

14.     More importantly, the Asbestos PI Channeling Injunction, which the Confirmation Order implemented and the Enforcement Motion seeks to enforce, suffers from no due process defects.  That injunction is universally enforceable and need not be "re-noticed" to anyone, and Plaintiff Roberts and Montana Counsel do not allege to the contrary.

15.     Alternatively, this Court may wish to limit enforcement to Plaintiff Roberts and Montana Counsel.  The Enforcement Motion identifies Plaintiff Roberts as a non-worker whose continued filing and prosecution of claims against MCC stands in violation of the Plan and this Court's Orders.  Even if the Court were to so limit its enforcement, the message would be clear:

---

[15] Through litigation in the Asbestos Claims Court, as of this month, MCC possess Montana Counsel's "Master Claims List," which identifies all of the Libby Plaintiffs represented by Montana Counsel in the Montana courts, and purports to identify which Libby Plaintiffs worked at the Grace Mine.  Because that list contains the Libby Plaintiffs' confidential information, MCC declines to include it as an exhibit to this Reply; however, it constitutes the extent of the information available to MCC concerning which of the claims filed against MCC in Montana are in violation of the Asbestos PI Channeling Injunction.  It may, nevertheless, be incomplete for purposes of the Enforcement Motion, as it only reflects claims filed in Montana, whereas all similar, derivative, asbestos-related personal injury claims, wherever filed, are in violation of the Asbestos PI Channeling Injunction.

the Final Orders will be enforced against all Libby Claimants represented by the same Montana Counsel who have controlled litigation on behalf of Libby claimants since the inception of the bankruptcy.

## The Enforcement Motion Should Be Granted

16.    The Enforcement Motion plainly explains the content of the Final Orders, the violations of those Final Orders, and the relief requested.  In summary, Judge Carey's Opinion and Order held that the types of claims asserted against MCC by Plaintiff Roberts and Similar Claimants, all of whom are non-workers, are enjoined by the Asbestos PI Channeling Injunction. Plaintiff Roberts, Similar Claimants, and Montana Counsel violated those rulings by continuing to file and pursue claims against MCC in the Montana state courts.  Claims filed against MCC on behalf of non-workers are properly channeled by the Asbestos PI Channeling Injunction.

17.    In her Opposition, Plaintiff Roberts does not expressly challenge the content or enforceability of the Final Orders or deny the violations identified.  Rather than address the merits of the Enforcement Motion, Plaintiff Roberts goes to great lengths to rehash arguments made by Libby Plaintiffs before this Court in *Hutt*, and to extensively summarize arguments made by Libby Plaintiffs in the CNA Appeal as if they are now being made against MCC.  *See* Roberts Opposition at 7, n.8.  Plaintiff Roberts even attempts to revive and apply arguments about the scope of the Asbestos PI Channeling Injunction that have never been made against MCC.   This is inexplicable.

18.    In summarizing, recasting, and reformulating old arguments, Plaintiff Roberts ignores the fact that this Court has already ruled on the scope of the Asbestos PI Channeling Injunction as it applies to MCC.  *See Hutt*, 2016 LEXIS 3754 (Bankr. D. Del. Oct. 17, 2016). Judge Carey already confirmed that the Asbestos PI Channeling Injunction is valid under 11 U.S.C. § 524(g). *Id.*  at *18- 39.  Plaintiff Roberts and Similar Claimants cannot continue to argue that

their claims against MCC (1) do not allege that MCC is liable for the conduct of, claims against, or demands on Grace; (2) do not arise by reason of MCC's provision of insurance to Grace; or (3) are categorically excluded from the Asbestos PI Channeling Injunction.[16]   These issues have already been decided, and those decisions are final.

19.    The nature of the Roberts Opposition and this case's 17-year history clearly demonstrate the need for the relief requested in the Enforcement Motion.  Libby Plaintiffs, through Montana Counsel, continue their refusal to accept and abide by adverse rulings from this Court. Instead, they take second, third, and fourth bites at the same apple by re-casting the same claims and arguments in an effort to sidestep the Court's prior rulings as convenient.  When this Court rejects their claims or arguments, the Libby Plaintiffs re-plead the same claims and arguments with different words in an effort to avoid the ruling.  For instance, Montana Counsel initiated the *Hutt* proceeding on behalf of two individuals, Ralph Hutt and Carl Osborn, in an attempt to obtain this Court's permission for all Libby Plaintiffs to proceed with claims against MCC.  Having received only an extremely limited exception in the *Hutt* proceeding, premised on Hutt and Osborn's status as former Grace workers,[17] Montana Counsel now claim that the ruling can only apply to Hutt and Osborn specifically.  As such, they have filed a new Adversary Proceeding seeking yet another ruling from this Court on behalf of two different Libby Plaintiffs, raising virtually identical arguments as to the permissibility of the Asbestos PI Channeling Injunction as were raised in *Hutt*. This contemptuous approach to litigation of these cases needs to end, and MCC is seeking an order to admonish Montana Counsel to stop filing and prosecuting cases that are enjoined.

---

[16] Accordingly, the *Hunt* and *O'Neil* Adversary Proceeding is superfluous and a waste of judicial resources.

[17] To be sure, Hutt and Osborn succeeded only on the narrowest grounds in their adversary complaint.  The *Hutt* adversary complaint was crafted in an attempt to invalidate Asbestos PI Channeling Injunction as applied to MCC altogether.  Plaintiff Roberts' assertion that they were unable to appeal is accordingly suspect and untrue.  Plaintiffs' representation that they received all of the relief that was requested in *Hutt* completely contradicts their insinuation that the outcome of the CNA Appeal will affect adjudication of the Enforcement Motion.

## Conclusion

WHEREFORE, MCC respectfully requests that this Court (a) enter the relief requested in the Enforcement Motion; and (b) grant MCC such other and further relief as the Court may deem proper.


Date:  April 23, 2018                     Respectfully submitted,

                                          CONNOLLY GALLAGHER LLP

                                          /s/ Jeffrey C. Wisler
                                          Jeffrey C. Wisler (No. 2795)
                                          The Brandywine Building
                                          1000 West Street, Suite 1400
                                          Wilmington, DE 19801
                                          Telephone:  (302) 757-7300

                                          **ECKERT SEAMANS CHERIN**
                                          **     & MELLOTT, LLC**
                                          Edward J. Longosz, II
                                          Mark A. Johnston
                                          Kennedy C. Ramos
                                          1717 Pennsylvania Avenue, NW
                                          12th Floor
                                          Washington, DC 20006
                                          (202) 659-6600 Telephone
                                          (202) 659-6699 Facsimile
                                          elongosz@eckertseamans.com
                                          mjohnston@eckertseamans.com
                                          kramos@eckertseamans.com

                                          *Attorneys for Maryland Casualty Company,*
                                          n/k/a Zurich American Insurance Company,
                                          successor by merger to Maryland Casualty
                                          Company

#05385885

11