

Eckert Seamans Cherin & Mellott, LLC  TEL: 202 659 6600
1717 Pennsylvania Avenue, N.W.         FAX: 202 659 6699
12th Floor
Washington, D.C. 20006

Edward J. Longosz, II
(202) 659-6619
elongosz@eckertseamans.com

**VIA ECF FILING**

September 7, 2018

Hon. Kevin Gross
824 North Market Street
6th Floor
Wilmington, DE 19801

    **RE:** *In re W.R. Grace & Co., et al.*, Reorganized Debtors, Case No. 01-1139 (KG), Maryland Casualty Company, n/k/a Zurich American Insurance Company, Movant v. Rose Roberts, Personal Representative of the Estate of James W. Roberts, Deceased, Cross-Movant.  (D.I. 32999, 33021, 33027, 33049).

Dear Judge Gross,

    This Court has requested the parties' input regarding any effect of the Third Circuit's Opinion on Maryland Casualty Company's *Motion to Enforce the Permanent Channeling Injunction and for Sanctions* [D.I. 32999] ("Enforcement Motion"). In short, the Opinion has no effect on the analysis of the limited matters presented by the Enforcement Motion, as is explained below.

    **I.**    **The Enforcement Motion**

    As this Court is aware, on January 29, 2018, Maryland Casualty Company ("MCC") filed an Enforcement Motion seeking to enforce the Asbestos PI Channeling Injunction ("the Injunction") and Judge Carey's Opinion and Order dated October 17, 2016 ("the *Hutt* Opinion and Order") in the adversary proceeding brought by former W.R. Grace employees Ralph Hutt and Carl Osborn. The *Hutt* Opinion stated, in relevant part:

> The Plaintiffs [Hutt and Osborn] contend that, **as employees,** the Negligence Claim and the Bad Faith Claim must arise under MCC's workers' compensation policies. **To the extent that the Plaintiffs can demonstrate that the Plaintiffs' Claims arise out of or are based on MCC's workers' compensation policies,** the claims are not barred by the Asbestos PI Channeling Injunction and may be filed in state court.

*Hutt, et al. v. Maryland Casualty Company*, Adv. Proc. No. 14-50867, 2016 LEXIS 3754, at *44 (Bankr. D. Del. Oct. 17, 2016) (emphasis added).  Thus, the combined effect of the Injunction and the *Hutt* Opinion and Order is to permanently bar Montana Claimants from asserting asbestos-related personal injury claims against MCC except to the limited extent a claim is

brought on behalf of a former W.R. Grace employee, and arises out of MCC's specific workers' compensation policies.

The Enforcement Motion seeks to enforce the Injunction against Rose Roberts, as Personal Representative for the Estate of James W. Roberts, deceased ("Plaintiff Roberts"), and similarly situated Montana claimants who never worked for W.R. Grace, but who nevertheless have filed asbestos-related state court claims against MCC in violation of the Injunction and the *Hutt* Opinion and Order (together, "the Final Orders"). The Enforcement Motion also asks this Court to sanction counsel for Montana claimants for filing numerous state court actions on behalf Plaintiff Roberts and other similarly situated Montana claimants, in violation of those Final Orders.

On April 17, 2018, Plaintiff Roberts filed a Cross-Motion to Stay and/or Dismiss the Enforcement Motion [D.I. 33021], and on April 23, 2018, MCC filed its Reply [D.I. 33027]. This Court heard argument on April 30, 2018 [D.I. 33037]. On June 8, 2018, this Court withheld ruling on MCC's Enforcement Motion, pending the Third Circuit Court of Appeal's issuance of an opinion in *Continental Cas. v. Carr (In re W.R. Grace & Co.)*, 2016 WL 6068092 (Bankr. D. Del. Oct. 17, 2016), No. 17-1208 (3d Cir.) [D.I. 33042]. The Third Circuit rendered its Opinion on August 14, 2018. *Cont'l Cas. v. Carr (In re W.R. Grace & Co.)*, No. 17-1208, 2018 WL 3849356, at *1 (3d Cir. Aug 14, 2018) ("the Opinion"). For the reasons set forth below, the Opinion does not impact this proceeding and MCC's Enforcement Motion should be granted.

## II.     The Third Circuit Opinion

As MCC predicted, the Third Circuit's Opinion did not operate to modify or overrule the Final Orders. Nor did it discuss, assess, or even mention the worker/non-worker distinction announced in the *Hutt* Opinion and Order. There is nothing in the Third Circuit Opinion that authorizes or justifies counsel's repeated and continued violations of the Final Orders. The worker/non-worker distinction at the core of the Enforcement Motion was simply not a factor in the case appealed to the Third Circuit, and as such, the resulting Third Circuit Opinion had no impact on the analysis necessary for resolving the Enforcement Motion.

To be sure, the Third Circuit Opinion addressed three questions on appeal: (1) whether the Injunction, by its terms, excluded CNA's workers' compensation policies (a) because the policies were not specifically identified in the CNA Settlement Agreement, or (b) by virtue of the Injunction's categorical exclusion of rights or obligations pertaining solely to workers' compensation benefits; (2) whether the Injunction permissibly barred the Montana claims against CNA under 11 U.S.C. § 524(g), including whether (a) the claims alleged derivative liability against CNA for the conduct of, claims against, or demands on W.R. Grace ("derivative liability requirement"), and (b) the alleged liability arose by reason of CNA's provision of insurance to Grace ("statutory relationship requirement"); and (3) whether the Bankruptcy Court had jurisdiction to enjoin the Montana Claims. *Id.* at *13, 16-17, 23. The Third Circuit affirmed the Bankruptcy Court's holdings with respect to the first and third issues, and it vacated and remanded the second issue to the Bankruptcy Court with instruction.

With respect to the first issue, the Third Circuit concluded that the CNA Settlement Agreement included a catch-all for "known and unknown" policies, which included CNA's

workers' compensation policies, even though those policies were not specifically identified.[1]  *Id.* at *14-15.  In addition, the Injunction's categorical carve-out excludes "rights or obligations that pertain solely to workers' compensation benefits."  *Id.* at *15.  Provisions of the policies that pertained to *both* workers' compensation and employers' liability coverage did not "pertain solely" to workers' compensation.  Thus, such provisions were not excluded from the Injunction.  The policy provisions that were relevant to the Montana claims—those that gave CNA the right, but not the obligation, to inspect Libby's facilities for industrial hygiene purposes—applied to both types of coverage.  Accordingly, the claims were barred by the terms of the Injunction.  *Id.*  This analysis may provide some favorable guidance and limitations against the plaintiffs with respect to the specific types of claims that may proceed based on workers' compensation policies, but it is not relevant to the Enforcement Motion.  If anything, the Third Circuit Opinion materially restricts the types of worker claims that can be brought.

Next, the Third Circuit vacated and remanded the Bankruptcy Court's ruling regarding the second issue on appeal, or the application of § 524(g).  *Id.* at * 16-22.  With regard to the derivative liability analysis, the Third Circuit stated that "[t]he proper inquiry is to review the law applicable to the claims begin raised against the third party (and when necessary to interpret state law) to determine whether the third-party's liability is wholly separate from the debtor's liability or instead depends on it."  *Id.* at *21.  Regarding the statutory relationship requirement, the Third Circuit agreed with the Bankruptcy Court "that CNA's provision of insurance must be a 'legally relevant factor' to its alleged liability."  *Id.* at 22.  It nevertheless noted that on remand, the Bankruptcy Court "should review the applicable law to determine the relationship's legal relevance to the third-party's alleged liability."  *Id.* at *23.  The Third Circuit's § 524(g) analysis does not implicate the worker/non-worker distinction at the heart of MCC's Enforcement Motion.

Finally, the Third Circuit affirmed the Bankruptcy Court's conclusion that jurisdiction existed to enforce the Injunction.  *Id.* at *22-23.  Specifically, the Bankruptcy Court applied the correct jurisdictional inquiry, which is whether the claims affect the assets of the bankruptcy estate, and correctly concluded that jurisdiction existed due to the indemnification provision in Grace and CNA's Settlement Agreement.  Again, the Third Circuit's analysis does not impact or provide any additional guidance for resolving the discrete issues raised in the Enforcement Motion.

In sum, the Third Circuit's Opinion does not affect the matters pending before this Court regarding MCC's Enforcement Motion.  While the Third Circuit's Opinion directed further ruling from this Court regarding the application of § 524(g), analysis of that section is neither necessary nor appropriate for resolution of the Enforcement Motion.  The Enforcement Motion

---

[1] The worker/non-worker distinction present in the *Hutt* Opinion and relating to MCC was not an issue in the CNA case before the Bankruptcy Court.  The Bankruptcy Court concluded that the CNA workers' compensation policies were included in the Injunction, and the Third Circuit has now affirmed that finding.  In the *Hutt* Opinion however, the Bankruptcy Court concluded that MCC's workers' compensation policies were *not* included in the Injunction, and because they were not included, limited claims could proceed in state court to the extent that they were brought by former W.R. Grace employees, and they arose out of those unlisted MCC workers' compensation policies.  *Hutt*, 2016 LEXIS 3754, at *44.

simply asks this Court to enforce the Injunction against the numerous non-worker Montana Claimants whose claims were filed and prosecuted in violation of this Court's Final Orders. Those Final Orders were not before the Third Circuit, they were not separately appealed, and they remain in effect.

The Court should note that Plaintiffs have chosen not to substantively address the violations of the Injunction identified in the Enforcement Motion. Instead, they continue to urge this Court to delay ruling on the Enforcement Motion based on vague assertions about the issues before the Third Circuit. Plaintiffs have never articulated nor committed to how the Third Circuit's ruling would affect the Enforcement Motion, and now, with the benefit of the Third Circuit Opinion, it is clear there was no effect. No developments in this case or in the CNA appeal on remand will change the violations of the Injunction, as these violations have already occurred.

Further, because § 524(g) is not implicated or addressed in the Enforcement Motion, any analysis of that provision as it relates to MCC is neither properly before the Court in the context of the Enforcement Motion, nor is it adequately briefed. Should this Court nevertheless determine that resolution of the Enforcement Motion requires an analysis of § 524(g) or any application of the Third Circuit's Opinion regarding that section, then MCC would request an opportunity to fully brief its position on the matter.

### III. Conclusion

For the reasons discussed above, resolution of the Enforcement Motion is not dependent on § 524(g), or on the Third Circuit's Opinion instructions regarding § 524(g). However, should this Court consider a § 524(g) analysis necessary, MCC requests an opportunity to substantively address § 524(g) in an appropriate forum.

Respectfully submitted,

*/s/ Edward J. Longosz, II*

Edward J. Longosz, II

Cc: All counsel of record