

**GELLERT**
**SCALI**
**BUSENKELL**
**& BROWN, LLC**

September 10, 2018

**Via CM/ECF**
The Honorable Kevin Gross, U.S. Bankruptcy Court
District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

    Re:    *In re: W.R. Grace & Co. et al.*, Chapter 11 Case No. 01-1139/Order entered August 16, 2018 [Doc. 33049]

Dear Judge Gross:

    As counsel to Rose Roberts, Personal Representative of the Estate of James W. Roberts, Deceased, we submit this letter in response to the Order referred to above. Please note that we are also acting for the plaintiffs in the Hunt Adversary Proceeding,[1] and for the other plaintiffs in pending Montana state court actions against Maryland Casualty Company ("MCC") against whom MCC's Motion to Enforce the Permanent Channeling Injunction and for Sanctions [Doc. 32999] (the "Enforcement Motion") is apparently directed. We refer to all of the foregoing as the "Montana Plaintiffs."

### THE MONTANA PLAINTIFFS

    Due to exposure to asbestos generated by W.R. Grace's operations in the vicinity of Libby, Montana (the "Libby Facility"), hundreds of people got sick from asbestos disease. Some are dying a horrible death, requiring every last ounce of effort to draw the next breath. Others have already died. The Montana Plaintiffs are among the victims of asbestos disease or the personal representatives of people who have died of asbestos disease. They include (1) Grace workers; (2) spouses or family members of Grace workers, who were exposed to the poisonous asbestos dust that clung to the worker's clothing; and (3) those who lived in the Libby area, and were exposed to the dust that blanketed the valley where Libby is located.

### CLAIMS AGAINST MCC

    The Montana Plaintiffs allege that, during the period from 1963 to 1973 when MCC was Grace's workers' compensation insurer, MCC provided professional industrial hygiene services at the Libby Facility, and in so doing, breached a legal duty to use reasonable care in providing such services and to warn of the asbestos hazard those who foreseeably could be injured by lack

---

[1] *Barbara Hunt, Personal Representative for the Estate of Robert J. Hunt, deceased, and Sue C. O'Neill v. Maryland Casualty Company*, Adv. No. 18-50402. The Hunt Adversary Proceeding seeks a declaratory judgment against MCC that the plaintiffs may proceed in state court with their state-law claims against MCC. Plaintiffs' decedent worked at the Grace mill as an independent contractor, not as a Grace employee – a distinction MCC regards as critical for the reasons described below.

1201 N. ORANGE STREET
SUITE 300
WILMINGTON, DELAWARE 19801
P: 302. 425. 5800 | F: 302. 425. 5814

WWW.GSBBLAW.COM

8 PENN CENTER
1628 JOHN F. KENNEDY BLVD, SUITE 1901
PHILADELPHIA, PENNSYLVANIA 19103
P: 215. 238. 0010 | F: 215. 238. 0016

of warning ("Negligence Claims"). The Montana Plaintiffs also claim, based on evidence,[2] that MCC withheld and actively sought to suppress information it knew about asbestos hazards at the Libby Facility, in order to minimize workers' compensation claims (the "Bad Faith Claim").

### RELATIONSHIP OF CLAIMS AGAINST MCC TO CLAIMS AGAINST CNA

Montana Plaintiffs allege Negligence Claims as to Continental Casualty Company and Transportation Insurance Company ("CNA") arising during the period of 1973 to 1996 when CNA was Grace's workers' compensation insurer. Although the time frames are different for MCC and CNA, the Negligence Claims have the same legal basis and, as will be discussed below, pose the same legal issues concerning whether they are barred by the Grace channeling injunction under the Third Circuit's recent decision. Montana Plaintiffs have not alleged a Bad Faith Claim against CNA.

### THE GRACE CHANNELING INJUNCTION AND THE PARTIES' DISPUTE

Grace's confirmed chapter 11 plan contains a channeling injunction protecting (among others) Settled Asbestos Insurance Companies (as defined in the plan) from being held liable for asbestos personal injury claims against Grace (the "Injunction"). Issued under authority of section 524(g)(4) of the Bankruptcy Code, the Injunction by its terms incorporates the permissible scope of injunctive relief under the statute. MCC and CNA assert that the Injunction bars the claims of the Montana Plaintiffs, the Montana Plaintiffs that it does not.

### THE BANKRUPTCY COURT'S DETERMINATION OF THE SCOPE OF THE INJUNCTION

After the effective date of Grace's plan, Ralph Hutt and Carl Orsborn (two of the Montana Plaintiffs) brought an adversary proceeding against MCC for a declaratory judgment that their claims against MCC were outside the scope of the Injunction (the "MCC Adversary Proceeding").[3] CNA later filed an adversary proceeding against certain Montana Plaintiffs seeking a declaratory judgment that their claims against CNA were barred by the Injunction (the "CNA Adversary Proceeding").[4]

The two adversary proceedings posed both common and separate issues. The common issue was whether the Negligence Claims against each insurer were of a type that may be enjoined under section 524(g)(4) of the Bankruptcy Code.[5] The separate issue was whether, under the plan exhibit and other documents as they related to each particular insurer, such insurer met the definition of a Settled Asbestos Insurance Company. In light of the common issues, this Court (per Judge Carey) considered the dispositive motions in each adversary proceeding at the same time, and issued its decision in each proceeding on the same day (the "MCC Decision" and the "CNA Decision" respectively).

On the common issue, the Court ruled that the Montana Plaintiffs' claims were within the scope of claims that could be enjoined under section 524(g)(4). On the separate issues, the Court went in a different direction as to each insurer. The Court ruled that CNA was a Settled

---

[2] *See, e.g.*, Exhibit 2 to Montana Plaintiffs' opposition to MCC Enforcement Motion [Doc. 33021].
[3] *Ralph Hutt and Carl Orsborn v. Maryland Casualty Company*, Adv. No. 14-50867. Mr. Orsborn's name is misspelled as "Osborn" in various pleadings.
[4] *Continental Casualty Co. et al. v. Jeremy B. Carr, et al.*, Adv. No. 15-50766.
[5] The Bad Faith Claim, although only against MCC, was subsumed in the briefing of this common issue.

Asbestos Insurance Company as to all insurance policies it issued to Grace. Concerning MCC, the Court ruled that MCC was not a Settled Asbestos Insurance Company as to the workers' compensation policies it issued to Grace. As a result, Mr. Hutt and Mr. Orsborn could proceed with their suits against MCC. MCC did not appeal the MCC Decision, and Mr. Hutt's lawsuit is scheduled to go to trial this coming February in Montana state court. The Montana Plaintiffs appealed the CNA Decision, and the Third Circuit accepted direct appeal.

### THE THIRD CIRCUIT'S DECISION

On appeal, the Montana Plaintiffs pursued both the separate issue and the common issue. MCC participated in briefing of the common issue. On the separate issue, the Third Circuit ruled against the Montana Plaintiffs, determining that CNA is a Settled Asbestos Insurance Company and thus protected by the Injunction – to the extent of its proper scope. On the common issue of whether the claims against CNA are within the permissible scope of a section 524(g)(4) injunction, the Third Circuit vacated this Court's decision and remanded for further proceedings. The Third Circuit ruled that this Court had applied an incorrect standard for each of the pertinent requirements under section 524(g)(4) for the claims against CNA to be covered by a channeling injunction. This Court had applied the same erroneous legal standard to the claims against MCC.

The Third Circuit explained that section 524(g)(4) contains two separate and distinct requirements, each of which must be met for a claim to be enjoined. First, the "derivative liability" requirement is that the claim must seek to hold the insurer[6] "directly or indirectly liable for the conduct of, claims against, or demands on the debtor." Second, the "statutory relationship" requirement is that the third party's "alleged liability . . . arises by reason of" one of the four relationships specified in the statute, in this case, "provision of insurance to the debtor."

Concerning the derivative liability requirement, the Third Circuit rejected this Court's determination that the claims against the insurers were derivative, and could therefore be enjoined, solely because Grace's asbestos caused the injury. "The involvement of the debtor's asbestos is relevant, but not dispositive," wrote the Court. "The proper inquiry is . . . whether the third-party's liability is wholly separate from the debtor's liability or instead depends on it." Specifically, the Third Circuit held that the derivative analysis requires a determination of whether <u>state law</u> recognizes a duty independent of the debtors' conduct or liability.

Concerning the statutory relationship requirement, the Third Circuit accepted this Court's determination that the insurer's "provision of insurance to Grace must be a 'legally relevant factor' to its alleged liability." But whereas this Court found the provision of insurance to be legally relevant because "the basis for the alleged undertakings of CNA (i.e., providing industrial hygiene services or inspections of Grace facilities) arise [sic] wholly out of the insurance relationship," the Third Circuit ruled that this Court "should examine the elements necessary to make the Montana [Plaintiffs'] Claims under the applicable law (here, state law), and determine whether CNA's provision of insurance to Grace is relevant legally to those elements."

### THE THIRD CIRCUIT'S INSTRUCTIONS ON REMAND

---

[6] The statute and the decision speak of third parties in general, not just insurers, but for convenience this letter will just refer to insurers.

The Third Circuit has remanded to this Court to decide (a) which state's law governs the claims against CNA, and (b) under applicable state law, (i) are the claims against CNA derivative (that is, do they depend on the debtor's liability as opposed to being wholly separate from such liability), and (ii) is CNA's provision of insurance to Grace a "legally relevant factor" to the elements required for the liability alleged?

### EFFECT OF THE THIRD CIRCUIT'S DECISION ON CLAIMS AGAINST MCC

The Third Circuit's decision against CNA means that this Court's MCC Decision applied an incorrect standard to determine whether the claims of Messrs. Hutt and Orsborn against MCC are within the scope of section 524(g)(4). However, no party appealed the MCC Decision, and MCC has not disputed that the Hutt and Orsborn claims may proceed in Montana state court. MCC interprets the other branch of the MCC Decision – namely, that MCC is not a Settled Asbestos Insurance Company as to the workers' compensation policies it issued to Grace – to permit claims against MCC by former Grace workers such as Messrs. Hutt and Orsborn but not by family or community members.

As for Montana Plaintiffs who were not parties to the MCC Adversary Proceeding, no court has determined whether the Injunction bars their claims against MCC. MCC, however, requests in its Enforcement Motion that the MCC Decision should be "enforced" even against non-parties. MCC's position confuses law of the case (a decision, once final, is generally binding on the parties) with precedent (when new parties present a legal issue that the court, or a superior court, has already decided in a precedential decision, the court will generally follow the earlier decision). Precedent, of course, is to be followed only to the extent it has not been overruled. The portion of the MCC Decision addressing the scope of section 524(g)(4) has effectively been overruled by the Third Circuit's decision.

### PROPOSED NEXT STEPS

The Court's first step should be, if MCC wishes to pursue its position that the portion of the MCC Decision addressing the scope of section 524(g)(4) is binding on anyone other than Messrs. Hutt and Orsborn, for the parties to brief that issue. From a procedural perspective, this should take place through a motion by MCC to dismiss the Hunt Adversary Proceeding, together with an opposition by the plaintiffs and a cross-motion for relief under FED. R. CIV. P. 60(b).[7]

Assuming that, one way or another, the Court concludes that non-parties are not bound by the scope-of-524(g)(4) portion of the MCC Decision, then the scope-of-524(g)(4) issue will be the same as to MCC and CNA, and this Court's task will be to determine that issue in accordance with the Third Circuit's decision.[8]

---

[7] *See, e.g., Harris v. Martin*, 834 F.2d 361, 365 (3d Cir. 1987) (party suffering from adverse judgment may secure relief "from the prospective aspects of that judgment in the event it turns out to rest on an erroneous view of the law").

[8] Apart from the CNA/MCC common issue, Montana Plaintiffs may be permitted to proceed against MCC based on the MCC Decision, as described in the final paragraph of this letter.

As it did in the earlier adversary proceedings, the Court should consider the common issue in tandem (whether or not formal consolidation is ordered[9]) as to the two insurers. The gating issue is which state's law governs the Montana Plaintiffs' claims. While the Montana Plaintiffs expect that MCC and CNA will agree that the law of Montana applies, the insurers should brief their position, and the Montana Plaintiffs should have an opportunity to respond.

Once the choice of law issue has been determined, this Court will need to (1) identify the legal elements of the causes of action under the applicable state law, and (2) determine, under the standards enunciated in the Third Circuit decision, whether the required elements of the state law causes of action (a) cause the insurer's liability to be dependent on that of Grace, and (b) make the provision of insurance legally relevant to each claim.

Issue No. 1 is purely an issue of state law. Assuming that the law of Montana is held to be applicable, the Montana Plaintiffs respectfully submit that this Court should certify this issue to the Supreme Court of Montana. As the Montana Plaintiffs will explain in a certification motion, federal courts must certify questions of state law to the state supreme court when the alternative is to speculate about state law. A sparsely populated state, Montana has somewhat sparse precedents. But the Montana Supreme Court has established that tort liability extends to all persons foreseeably injured by professional negligence or breach of the duty to warn. Though the Court has not yet considered these principles in quite the present context, the Court has declared a practice to extend these principles of tort liability to new situations as warranted.

Issue No. 2 is an issue of federal law. Once the answers to the certified questions have been received, this Court – after briefing by the parties – should determine whether the Montana Plaintiffs' claims are within the permissible scope of a channeling injunction under section 524(g)(4) and are therefore within the scope of the Injunction.

The remaining issue, applicable only to MCC, may need to be determined. The MCC Decision, having found that MCC is not a Settled Asbestos Insurance Company as to its workers' compensation policies, concluded that: "To the extent that the Plaintiffs can demonstrate that the Plaintiffs' Claims arise out of or are based on MCC's workers' compensations policies, the claims are not barred by the Asbestos PI Channeling Injunction and may be filed in state court." MCC interprets this language to permit claims only by former Grace employees. The Montana Plaintiffs construe this language to permit claims by anyone foreseeably injured by MCC's bad faith or other breach of duty *qua* workers' compensation insurer. Unlike the scope-of-524(g)(4) issue, there is no federal issue; it is purely a matter of whether Montana law recognizes a cause of action by non-employees of the type just described. This Court should, on appropriate motion and briefing, certify this question to the Montana Supreme Court.

Very truly yours,

Michael Busenkell

Cc: All counsel of record

---

[9] Procedurally, CNA will of course be addressed in remand proceedings in the CNA Adversary Proceeding; MCC should be addressed in the Hunt Adversary Proceeding.