IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: W.R. GRACE & CO., *et al.*, | : | Chapter 7 |
| | : | |
| Reorganized Debtors. | : | Bankr. Case No. 01-01139-KG |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Appellants, | : | Civ. No. 17-1588-LPS |
| v. | : | |
| | : | |
| W.R. GRACE & CO., *et al.*, | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM**

Pending before the Court is an appeal (D.I. 1) by the United States ("Appellant") from the Bankruptcy Court's October 23, 2017 Memorandum Opinion (B.D.I. 32954) and Order (B.D.I. 32955), *In re W.R. Grace & Co.*, 2017 WL 4792187 (Bankr. D. Del. Oct. 23, 2017), which granted the above-captioned Debtors' (together, "Grace") Motion for Entry of an Order Enforcing Plan and Confirmation Order Against Internal Revenue Service (A298-309)[1] ("Motion to Enforce") and ordered the Internal Revenue Service ("IRS") to recalculate Grace's 1998 tax refund in accordance with the interest rate applicable under the Grace's confirmed plan. The merits of the appeal are fully briefed. (D.I. 10, 11, 15, 16, 17, 18) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons that follow, the Court will affirm the Order.

---

[1] The docket of the Chapter 11 cases, captioned *In re W.R. Grace & Co., et al.*, Case No. 01-01139 (KG) (Bankr. D. Del.), is cited herein as "B.D.I. __." The appendix filed in support of the Appellant's opening brief (D.I. 11) is cited as "A__." The appendix filed in support of Grace's Answering Brief (D.I. 16) is cited as "App. __."

I. **BACKGROUND**

The issue on appeal is whether the Bankruptcy Court correctly ruled that Grace's confirmed Chapter 11 plan takes priority in determining the rate of post-petition interest payable on the IRS's Allowed Priority Tax Claim and finding that it would be inappropriate to apply equitable recoupment to allow the IRS to recover post-petition interest at the higher, statutory rate.[2]

The underlying facts are undisputed. The above-captioned chapter 11 cases commenced on April 2, 2001 (the "Petition Date"). During the Chapter 11 cases, the IRS audited Grace's income tax return for the 1998 tax year. (App. 1, Form 870) In May 2002, the IRS filed a proof of claim ("POC") in the amount of $311,165,753.35 to document its claim. (App. 2, POC 830) POC 830 expressly states "[t]his claim is not subject to any setoff or counterclaim." (*Id.*) The IRS was served with notice of Plan confirmation and the objection deadline but did not object to Plan confirmation. The IRS took no action to preserve its alleged rights of recoupment or setoff prior to confirmation. In November 2009, as the confirmation trial was proceeding, the IRS determined that, as of March 15, 1999, Grace owed $5,852,658 in taxes for tax year 1998. (App. 1, Form 870; App. 3, IRS Transcript) The IRS assessed Grace for both the 1998 taxes and the statutory interest due on that amount through December 11, 2009, including both pre- and post-petition interest. These documents do not mention recoupment. On January 31, 2011, the Court

---

[2] In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act added new section 511, which eliminated the Bankruptcy Court's discretion to determine the proper interest rate on tax claims, instead providing that "the interest rate shall be the rate determined under applicable non-bankruptcy law." 11 U.S.C. § 511. Thus, the facts at issue here will not arise in bankruptcy cases commenced on or after October 17, 2005, the effective date of § 511. Because Grace's chapter 11 cases were commenced before the effective date of § 511, the Bankruptcy Court was required to resolve the parties' dispute regarding the applicable interest rate. But, for any bankruptcy cases commenced after the effective date of § 511, October 17, 2005, this type of dispute will not arise.

confirmed a plan of reorganization (B.D.I. 26368-1) (the "Plan"). In March 2012, Grace filed a refund claim to carry back certain net operating losses ("NOLs") to the 1998 tax year. On December 12, 2012, the IRS filed an amended proof of claim as to the 1998 tax year, in which the IRS asserted a claim for $11,356,686.82, comprising $5,852,658 in taxes and $5,504,028.82 in statutory interest ($868,407 attributable to prepetition interest, and the remainder attributable to the Post-Petition Period (defined below)). (App. 4, POC 18553) POC 18553 states that "[t]he United States has not identified a right of setoff or counterclaim," and that "[a]ll rights of setoff are preserved and will be asserted to the extent lawful." *Id.* POC 18553 does not mention recoupment.

On February 3, 2014, Grace substantially consummated the transactions contemplated by the Plan and emerged from chapter 11. (*See* B.D.I. 31732) On or about April 18, 2014, Grace paid three otherwise uncontested IRS Claims with Plan interest accruing at 4.19%. On April 22, 2014, Grace filed a claim objection on the basis that the IRS's Claims for the 1998 tax year (Claim Nos. 830 & 18553) had been satisfied in full by application of various tax credits and a tax refund generated by the NOLs, and setting forth Grace's position that post-petition interest should be computed at the Plan's 4.19% interest rate. The IRS granted Grace's request for refund for tax year 1998, based on the credits and NOLs, but it also reduced the refund to account for interest that had accrued on Grace's original liability for 1998. The IRS paid a refund to Grace in the amount of $2,027,545, which reflected the IRS's position that post-petition interest from the Petition Date through the date of Grace's payment on March 15, 2009[3] (the "Post-Petition Period") should be computed at the statutory rate provided for by the Internal

---

[3] Both parties agree that the IRS's 1998 tax year Claim was satisfied on March 15, 2009.

3

Revenue Code ("IRC"), as opposed to the 4.19% Plan interest rate. During the Post-Petition Period, the IRC floating interest rate ranged between 4% and 9%.[4]

The sole dispute in the Bankruptcy Court was the amount of deficiency interest owed by the Debtors for the Post-Petition Period. The amount in dispute is $1,626,914.[5] Had the IRS used the 4.19% Plan interest rate, the amount of interest would have been $3,434,608, instead of the $4,980,800 determined by the IRS.

After Grace and the IRS were unable to come to an agreement as to the correct interest rate, Grace filed the Motion to Enforce on April 17, 2017. The IRS objected and, for the first time, raised its affirmative defense of recoupment. (B.D.I. 32877, A310-18) The IRS argued that Section 2.1.2 of the Plan, which provides for the 4.19% interest rate on Allowed Priority Tax Claims, is irrelevant because the interest that accrued on the 1998 tax deficiency is not a "claim" for bankruptcy purposes. The IRS argued that it had exercised its right of recoupment when it reduced the amount of Grace's refund by the amount of interest due, insisting that "the right of recoupment is a defense and not a claim in the bankruptcy context." (*Id.*) Following briefing, the Bankruptcy Court heard oral argument on September 29, 2017. (A349-95 (9/29/17 Hr'g Tr.)) On October 23, 2017, after reviewing post-hearing submissions (A333-38), the Bankruptcy Court issued the Memorandum Opinion and Order. In the Memorandum Opinion, the Bankruptcy Court determined:

---

[4] Outside of bankruptcy, the IRS is entitled under IRC § 6601(a) to charge interest on any income tax deficiency at the rates specified in IRC § 6621 and is required under § 6611(a) to pay interest on any income tax overpayment. 26 U.S.C. §§ 6601, 6611, 6621.

[5] The difference at issue, in the amount of $1,626,914, results from the IRS's calculation of interest on the 1998 tax deficiency using the rates of interest in the IRC ($4,980,800), and the Reorganized Debtors' calculation using the Plan rate of interest of 4.19% ($3,434,608), plus a difference in overpayment interest (IRS—$89,538 versus Reorganized Debtors—$170,260).

> [I]n reality and effect, the Plan is the basis for the payment of post-petition interest. The IRS had an allowed Priority Tax Claim in the sum of $6,721,065, which is the 1998 tax of $5,852,658, plus statutory interest accrued through the filing of the bankruptcy petitions. The Plan then provides for the payment of interest at 4.19% on the Allowed Priority Tax Claim.

*W.R. Grace,* 2017 WL 4792187 at *2. The Bankruptcy Court determined that "[t]he Plan takes priority and it would be inappropriate for the Court to apply equitable recoupment under the circumstances." *Id.*

On November 2, 2017, the Appellant filed a timely notice of appeal.

## II. PARTIES' CONTENTIONS

Appellant argues that the Order must be reversed because the Bankruptcy Court failed to appreciate the difference between a "claim," as defined by the Bankruptcy Code and the Plan, and a recoupment right. The right of recoupment, Appellant argues, is an equitable doctrine long applied in the bankruptcy context, which involves "the netting out of debt arising from a single transaction," differing from a creditor's common law right to "setoff" a prepetition debt owed to a debtor against a prepetition "claim" against the debtor, a right expressly preserved by § 553 of the Bankruptcy Code. (*See* D.I. 10 at 16) (quoting *SAIF Corp v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995)) According to Appellant, it has an unfettered right to recoupment, regardless of the bankruptcy, and "[a]s long as this right of reduction is asserted as a defense and not as an independent claim for relief, it does not constitute a 'claim.'" (*Id.* at 17-18) (citing 5 COLLIER ON BANKRUPTCY 553.10)

Because the Bankruptcy Court questioned at oral argument how the single transaction test is met where, as here, the NOLs that generated the refund were incurred in years other than tax year 1998, Appellant's brief attempts to establish that the IRS did not setoff a liability for one tax year against a refund for another year but rather exercised a recoupment right. In response to Grace's refund request for tax year 1998, Appellant argues it merely redetermined the true

5

amount of Grace's overpayment for that year before paying out the refund. In doing so, Appellant argues that it exercised the right of recoupment known as the "defense of lack of overpayment" in tax law, which required consideration of all components of the tax liability for that period, including the interest that accrued between when the original tax liability arose and the satisfaction of that liability through the application of net operating losses and refunds. According to Appellant, this action is completely consistent with the concept of recoupment in bankruptcy law, adding that the Third Circuit has held that recoupment is a defense not a claim. (*See id.* at 17) (citing *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 260-61 (3d Cir. 2000)) Finally, because the Plan uses the Bankruptcy Code's definition of "claim," Appellant argues, its right to recoup the interest cannot be subject to the Plan's interest provision.

According to Grace, Appellant's position that its right to post-petition interest does not rise to the level of a "claim," and was therefore not subject to the Plan's treatment of post-petition interest on Allowed Priority Tax claims, is wrong, for reasons including the IRS's conduct in the Chapter 11 cases and the plain language of § 101(5) of the Bankruptcy Code. (*See* D.I. 15 at 1-2) Grace argues that the IRS documented its "claim" for post-petition interest on three separate occasions, and this claim included a post-petition interest component. (*See id.* at 2) Grace contends that legislative history confirms that unmatured, post-petition interest is a "right to payment" and, thus, a "claim" under the Bankruptcy Code. (*See id.* at 2-3) Grace further argues that the IRS failed to raise the recoupment argument prior to confirmation and, therefore, waived the defense. (*See id.* at 3, 14) Because § 1141(a) of the Bankruptcy Code and the terms of the Confirmation Order make the Plan the sole source of treatment of post-petition interest and all other Plan Claims, the IRS is left with no recoupment rights to exercise. (*Id.* at

6

18) Grace also argues that recoupment has no application here, as Third Circuit law requires narrow application in the bankruptcy context. (*See id.* at 20) Lastly, Grace contends that § 1141(d)(1) of the Bankruptcy Code discharges all prepetition claims, including the IRS's Allowed Priority Tax Claim, its claim for post-petition interest, and any and all equitable remedies, such as the affirmative defenses of setoff and recoupment. (*See id.* at 3-4; 24-30)

## III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). The Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

According to Appellant, the Bankruptcy Court's conclusion that the IRS had a claim is purely legal in nature. (D.I. 17 at 1-2) Grace counters that the issue of whether the Plan is the sole source of treatment for post-petition interest on the IRS's Allowed Priority Tax Claim "is a quintessential question of mixed fact and law. (D.I. 15 at 8-9) The Court agrees with Appellant: whether the IRS had a "claim" for post-petition interest is a legal question the Court reviews *de novo*.

Appellant argues that this Court should not review the Bankruptcy Court's interpretation

7

of the Plan and Confirmation Order with deference. The Third Circuit has stated: "We agree with the majority view that a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion. This deferential standard should not apply, of course, if the issue being reviewed presents only a question of law." *In re Shenango Grp., Inc.*, 501 F.3d 338, 346 (3d Cir. 2007) (internal citations omitted). Here, because the issue being reviewed presents only a question of law, it is subject to *de novo* review.

## IV.  DISCUSSION

The Court agrees with the Bankruptcy Court that the terms of the Plan control and Appellant's recoupment argument is not supported here. The Bankruptcy Court correctly applied the Plan's 4.19% interest rate.

### A.  The IRS Had a "Claim" Under the Plan and Bankruptcy Code

The 1998 tax deficiency, including accrued interest, constitutes a "Claim" under the Plan because the IRS had a "right to payment" of such amount independent of whether Grace filed any refund claims. The Plan defines "Claim" as provided by § 101(5) of the Bankruptcy Code. (B.D.I. 26368-1, A171) That section generally defines "claim" as a "right to payment" and includes "right[s] to payment" that are "unmatured" on the petition date. 11 U.S.C. § 101(5); *see also In re U.S. Lines*, 199 B.R. 476, 482 (Bankr. S.D.N.Y. 1996) ("The legislative history expressly lists postpetition interest as an unmatured claim for interest.") (citations omitted).

The IRS had a "claim" (as both the Plan and Bankruptcy Code define that term) against Grace for the amount of the 1998 tax deficiency and related interest, as the IRS had an independent "right to payment" of such amount, which was an enforceable obligation of Grace. Indeed, the IRS filed a proof of claim asserting its entitlement to be paid the 1998 tax deficiency and accrued interest – reflecting that it had a bankruptcy claim against Grace. (*See* POC 18553;

8

Fed. R. Bankr. P. 3001(a) ("A proof of claim is a written statement setting forth a creditor's claim"). That claim was a Plan Claim. (*See* Plan § 1.1.171 (defining Plan Claim to include Priority Tax Claims (Plan § 1.1.179)). The Plan governs the treatment of all such Plan Claims – whether they were Allowed or Disallowed or otherwise. (*See, e.g.,* Plan at §§ 1.1.6, 1.1.102, 2.1.2 (provisions for payment of Priority Tax Claims))

### B. Appellant's Recoupment Argument Is Unavailing

Based on its view that "the dispute turns on whether the IRS exercised a right of recoupment or a right of setoff" under bankruptcy law (D.I. 10 at 12), Appellant spends the majority of its briefing explaining how those concepts are treated in tax law and how those concepts are analogous to rights of recoupment and setoff in bankruptcy law. Appellant contends that, in reducing Grace's refund, the IRS was exercising a common law right of recoupment known as the "defense of lack of overpayment." (*Id.* at 20-21) Under that tax concept, the ultimate question in a claim for a refund is whether the taxpayer has overpaid, and this involves a determination of the entire tax liability. (*See id.* at 20) (citing *Pac. Gas and Elec. Co. v. U.S.*, 417 F.3d 1375, 1379 (Fed. Cir. 2005))

Unlike the IRS's common law and statutory setoff rights, the defense of lack of overpayment is only available where the deficiency relates to the same tax year as the refund request. In response to Grace's refund request for the tax year 1998, the IRS "exercised its right to redetermine the true amount of Grace's overpayment for that year before paying the refund," which "required consideration of all components of the tax liability for that period, including interest that accrued between when the original tax liability arose and the satisfaction of that liability through the application of net operating losses and refunds." (D.I. 10 at 24) This action, according to Appellant, "was completely consistent with the concept of recoupment in

9

bankruptcy law," and, "as the Third Circuit has held, recoupment rights do not constitute a 'claim' within the meaning of the Bankruptcy Code." (*Id.* at 24-26)

The Third Circuit has cautioned that recoupment, "as a non-statutory equitable exception to the automatic stay," should be "narrowly construed" in bankruptcy cases. *In re University Med. Ctr.*, 973 F.2d 1065, 1081 (3d Cir. 1992). Thus, the Third Circuit has applied a "more restrictive 'integrated transaction test'" in determining whether the same transaction" prerequisite for recoupment is satisfied. 5 COLLIER ON BANKRUPTCY ¶ 553.10 (16th ed. 2018) (quoting *University Med. Ctr.*, 973 F.3d at 1081). Under this test, if the amount of the relevant obligations to be recouped can be "independently determinable," recoupment may be denied. *Id.* (quoting *University Med. Ctr.*, 973 F.3d at 1081).

The Court agrees with Grace that Appellant's recoupment argument must be rejected. Unlike *Folger Adam* and other cases relied upon by Appellant, the IRS's right to payment in this case was not limited to reducing (or recouping) the amount of the refund owed to Grace; when the IRS reduced Grace's refund by the amount of the 1998 tax deficiency and accrued interest, it was not simply exercising its right of recoupment, under either the tax or bankruptcy definition of that term. Absent the refund, the IRS would have had an Allowed Priority Tax Claim in the principal amount of $5,852,658. Under the Plan, absent the refund, that Allowed Priority Tax Claim would have been paid in due course: its principal amount plus interest at the rate of 4.19% compounded annually from the Petition Date to the date of payment. The fact that the IRS chose to offset its clear and unambiguous right to payment of its Priority Tax Claim (including Plan interest) against Grace's refund claim cannot change the fact that the IRS had a claim – a claim

10

that was a Plan Claim, subject to the Plan, including but not limited to the payment of Plan interest. The cases cited by Appellant do not alter this conclusion.[6]

### C. The Plan Binds the IRS as a Creditor

The Plan binds the IRS as a creditor. (*See* Confirmation Order at ¶ I.E.1; 11 U.S.C. § 1141(a); *see also In re Montgomery Ward*, 306 B.R. 489, 494 (Bankr. D. Del. 2004); 8 COLLIER ON BANKRUPTCY ¶ 1141.02 (16th ed. 2018)) The Confirmation Order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation. *See Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997).

> [O]nce the reorganization plan is approved by the bankruptcy court, each claimant gets a "new" claim, based upon whatever treatment is accorded to it in the plan itself. Thereafter, each claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provision.

*In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1129.01 ("An affected creditor or interest holder will have only such rights postconfirmation as the drafted plan may give it."). The IRS did not object to the Confirmation Order and is bound by its terms.

---

[6] Appellant cites cases generally holding that "the right of recoupment is a defense and not a claim in the bankruptcy context." (*See* D.I. 10 at 17) Appellant relies heavily on *Folger Adam*, 209 F.3d at 260. *Folger Adam* differs greatly from this case, as it did not involve a failure to raise recoupment rights prior to plan confirmation (as here) nor did it involve a plan's exclusive treatment of an allowed claim or the attendant post-petition interest claim. Unlike that case, here the IRS here had an independent, enforceable right in the form of a Priority Tax Claim (which is subject to the Plan's provisions, including the rate of interest payable thereon) to receive payment of the entire amount of the 1998 tax deficiency and related interest and was not limited to reducing (or recouping) such amount from the refund otherwise owed to Grace.

11

The Confirmation Order substitutes a contractual right of payment on the terms of the Plan for what had been the IRS's post-petition statutory interest claim and for its 1998 Allowed Priority Tax Claim. The Plan provides:

> The rights afforded in the Plan and the treatment of all Claims, Plan Claims, and Demands shall be in exchange for and shall discharge all Claims, Plan Clams, and Demands of any nature whatsoever, ***including any interest accrued thereon from and after the Petition Date.***

Confirmation Order at VI.A.1 (emphasis added) The effect of Plan confirmation was to give the IRS a new right to payment for post-petition interest at 4.19%, compounded annually from the Petition Date through March 15, 2009, the date of the payment, as a substitute for its prepetition Claim for post-petition interest at the statutory rate. The Plan is the sole source of treatment of the IRS's Allowed Priority Tax Claim, including the rate of post-petition interest on that Claim. *See Montgomery Ward*, 306 B.R. at 494. As such, the Bankruptcy Court was acting consistently with Third Circuit precedent in holding that the "Plan takes priority" in determining the Allowed Amount of the post-petition interest claim and that the IRS may not avail itself of a recoupment defense.

The Court finds no error in the Bankruptcy Court's entry of the Order enforcing the Plan and requiring the IRS to recalculate the refund based on the 4.19% Plan interest rate.

## V. CONCLUSION

For the foregoing reasons, the Court will affirm the Order. An appropriate Order follows.

September 17, 2018  
Wilmington, Delaware

HON. LEONARD P. STARK  
UNITED STATES DISTRICT COURT