## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE W.R. GRACE & CO., *et al.*, | ) | Chapter 11 |
| | ) | Case No. 01-01139 |
| Debtors. | ) | Jointly Administered |
| | ) | |
| _____ | ) | **Related to Docket No. 32999** |
| | ) | |
| CONTINENTAL CASUALTY CO., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Proc. No. 15-50766 |
| | ) | |
| v. | ) | **Related to Docket Nos. 1, 8, 15, 60, 63, 64, 67, 68** |
| | ) | |
| JEREMY B. CARR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF ON REMAND OF MARYLAND CASUALTY COMPANY AND OPPOSITION TO MONTANA PLAINTIFFS' MOTION TO CERTIFY QUESTIONS OF LAW TO THE MONTANA SUPREME COURT

Dated: May 20, 2019

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Edward J. Longosz, II
Mark A. Johnston
Kennedy C. Ramos
1717 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
(202) 659-6600

**CONNOLLY GALLAGHER LLP**

Jeffrey C. Wisler (No. 2795)
1201 North Market Street
20th Floor
Wilmington, DE 19801
(302) 757-7300

*Attorneys for Maryland Casualty Company, n/k/a Zurich American Insurance Company, successor by merger to Maryland Casualty Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

SUMMARY OF THE ARGUMENT ............................................................................. 1

ARGUMENT ............................................................................................................... 1

   I.   **Montana Plaintiffs' Brief Contains a Number of Inaccuracies and Misrepresentations** ............................................................................................. 2

      A.   **MCC's Role is Limited** ................................................................................ 2

      B.   **The Montana State Court Proceedings are Not Relevant to the Remand** ............ 5

   II.   **Montana Plaintiffs' Misrepresent MCC's Enforcement Motion** ................................. 8

   III.  **Montana Plaintiffs' Motion to Certify is Unnecessary and Unwarranted** ................ 10

   **CONCLUSION** ......................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Hutt, et al. v. Maryland Casualty Company*, 2016 LEXIS 3754
  (Bankr. D. Del. Oct. 17, 2016)..................................................................................... 3

*In re Choudhuri*, 2014 WL 5861374 (B.A.P. 9th Cir. Nov. 12, 2014).......................... 7

*In re Kalikow*, 602 F.3d 82 (2d Cir. 2010)..................................................................... 9

*In re Nat'l Heritage Found., Inc.*, 478 B.R. 216 (Bankr. E.D. Va. 2012) ..................... 7

*In re W.R. Grace & Co.*, 900 F.3d 126 (3d Cir. 2018) ................................................... 8

*In re WorldCorp, Inc.*, 252 B.R. 890 (Bankr. D. Del. 2000) ......................................... 9

**Statutes**

11 U.S.C. § 524(g) .............................................................................................. *passim*

## SUMMARY OF THE ARGUMENT

Maryland Casualty Company's ("MCC") role in the instant remand proceedings is limited: MCC has an interest in the narrow remand issues to the extent they could potentially affect the Asbestos PI Channeling Injunction[1] as it relates to MCC, but MCC is not a party to the summary judgment motion before the Court, and there was no appeal from the related summary judgment order that did involve MCC.  As such, MCC adopts and incorporates the remand arguments made by Continental Casualty Company and Transportation Insurance Company (collectively, "CNA") in its Brief on Reply, filed contemporaneously herewith, to the extent applicable.

MCC's participation in these proceedings is primarily based on its pending *Motion to Enforce the Permanent Channeling Injunction and for Sanctions* [Case No. 01-1139, D.I. 32999] ("Enforcement Motion"), which does not require any further analysis or resolution of the remand issues, and replies for the purposes of correcting material factual and procedural misrepresentations made in *Montana Plaintiffs' Initial Brief on Remand and Addressing Issues Concerning Maryland Casualty Company* [Adv. Proc. D.I. 67] ("Montana Plaintiffs' Brief") regarding proceedings involving MCC.  MCC also responds and opposes *Montana Plaintiffs' Motion to Certify Questions of Law to the Montana Supreme Court* [Adv. Proc. D.I. 68] ("Montana Plaintiffs' Motion to Certify") because it is unnecessary, and because the Montana Supreme Court is currently addressing the proper legal standard for evaluating a Montana Plaintiff's negligence claim against a workers' compensation insurer.

---

[1] Created by *Debtor's First Amended Plan of Reorganization* [Case No. 01-01139, D.I. 2638-1].

1

## ARGUMENT

### I.  Montana Plaintiffs' Brief Contains a Number of Inaccuracies and Misrepresentations

Montana Plaintiffs' Brief makes a number of representations to this Court regarding proceedings in the Montana Asbestos Claims Court ("ACC") and the Montana Supreme Court involving MCC that are inaccurate, incomplete, and misleading.  Montana Plaintiffs' unnecessary efforts to distract this Court with misrepresentations about the Montana state court proceedings involving MCC are especially transparent considering MCC's narrowly defined role in the instant remand proceedings.

#### A.    MCC's Role is Limited

To be sure, MCC, though interested in the outcome of these proceedings, is not a party to the specific motion for summary judgment presently before the Court on remand, or to this Adversary Proceeding.  Specifically, MCC, like CNA, is a "Settled Asbestos Insurance Company" and an "Asbestos Protected Party" under the W.R. Grace ("Grace") Asbestos PI Channeling Injunction.  MCC was a party to a similar adversary proceeding regarding the scope of the Asbestos PI Channeling Injunction,[2] which is the basis for MCC's Enforcement Motion presently before the Court.[3]

In the *Hutt* Adversary Proceeding, Montana Plaintiffs Ralph Hutt and Carl Orsborn, who were former employees of Grace, sought a declaratory judgment that their state court claims for negligence and bad faith against MCC, which provided workers' compensation insurance to Grace during their employment, were not barred by the Asbestos PI Channeling Injunction.  The *Hutt* Adversary Complaint essentially raised three arguments that their state court claims were not

---

[2] *See, Opening Brief on Remand of Maryland Casualty Company* [Adv. Proc. D.I. 63] at 3-4 (discussing *Hutt* Adversary Proceeding).

[3] *Id.* at 4-5.

channeled: (1) 11 U.S.C. § 524(g) limited the Asbestos PI Channeling Injunction such that their claims could not be channeled; (2) the terms of the Asbestos PI Channeling Injunction did not include their state court claims, which arose out of workers' compensation policies that were listed on Exhibit 5 to the Plan; and (3) their state court claims were specifically excluded from the Asbestos PI Channeling Injunction because they arose from workers' compensation policies.

Judge Kevin J. Carey rejected Hutt and Orsborn's first and third arguments, which would have potentially afforded Hutt and Orsborn greater leeway in asserting their state court claims against MCC, and ostensibly CNA.  With respect to the second argument, Judge Carey held that, because MCC's workers' compensation policies were not listed on Exhibit 5 to the Plan, "[t]o the extent that the Plaintiffs can demonstrate that the Plaintiffs' Claims arise out of or are based upon MCC's workers' compensation policies, the claims are not barred by the Asbestos PI Channeling Injunction and may be filed in state court." *Hutt, et al. v. Maryland Casualty Company*, 2016 LEXIS 3754, *44 (Bankr. D. Del. Oct. 17, 2016); Adv. Proc. No. 14-50867, D.I. 35 ("*Hutt* Adversary Order").

In the *CNA v. Carr* Adversary Order issued on the same day, Judge Carey also rejected Montana Plaintiffs' argument that 11 U.S.C. § 524(g) limited the Asbestos PI Channeling Injunction such that it did not apply to Montana Plaintiffs' state court claims.[4]  Adv. Proc. No. 15-50766.   Judge Carey also concluded that CNA's workers' compensation policies were appropriately included in the Plan.  Thus, in contrast to Hutt's and Orsborn's claims arising out of or based on MCC's workers' compensation policies, Montana Plaintiffs' claims arising out of or based on CNA's workers' compensation policies were channeled.  The MCC and CNA Opinions

---

[4] That question is now before this Court on remand from the Third Circuit.

differed on this discrete issue only because MCC's workers' compensation policies were not included on Exhibit 5 to the Plan.

Montana Plaintiffs appealed the *CNA v. Carr* Adversary Order to the Third Circuit Court of Appeals, and the Third Circuit remanded the proceeding to this Court. Montana Plaintiffs did not appeal the *Hutt* Adversary Order, therefore rendering it a final and binding Order. While MCC is not a party to the specific *CNA v. Carr* summary judgment motion before this Court on remand, it is interested in the issue of whether the Asbestos PI Channeling Injunction may appropriately channel Montana Plaintiffs' claims consistent with 11 U.S.C. § 524(g).

As a result of the *Hutt* Adversary Proceeding, Hutt asserted a negligence theory[5] against MCC in Montana state court substantially similar to the theory Montana Plaintiffs have sought to advance against CNA and that is the subject of the instant remand. *See generally Hutt v. Maryland Casualty Company (In re Asbestos Litigation)* ("*Hutt v. MCC*"), AC 17-0694, Montana Asbestos Claims Court. The question of the correct legal standard by which to assess Hutt's negligence claim against MCC is now fully briefed and pending before the Montana Supreme Court.[6] *See generally Maryland Casualty Company v. Asbestos Claims Court, et al.*, Montana Supreme Court, OP 19-0051 ("*MCC v. ACC*").[7] The Montana state court proceedings involving MCC are relevant

---

[5] The theories that Hutt has attempted to advance in Montana state court exceed the scope of those permitted by the Order entered by this Court in the *Hutt* Adversary Proceeding [Adv. Proc. 14-50867, D.I. 36] ("*Hutt* Adversary Order") insofar as Hutt attempts to bring a negligence claim without regard to the express limitations set forth by this Court; however, the *Hutt* Adversary Order limited him to the extent that he could demonstrate that his claims "arise out of or are based upon MCC's workers' compensation policies." *Hutt*, 2016 Bankr. LEXIS 3754 at *44.
[6] *See* Opening Brief of Petitioner Maryland Casualty Company, OP 19-0051, *Maryland Casualty Company v. Asbestos Claims Court, et al.*, Montana Supreme Court (Mar. 21, 2019), attached hereto as "Exhibit A."
[7] The Montana Supreme Court's electronic docket is available at, https://supremecourtdocket.mt.gov/#!toCaseResults, OP 19-0051. A May 2, 2019 docket entry states "Event – Case Sent to Court."

to this remand proceeding only to the limited extent that the Montana Supreme Court will soon determine the proper framework by which to assess, to the extent such claim can be brought in the first instance, a Montana Plaintiff's negligence claim against a workers' compensation insurer.

### B.    The Montana State Court Proceedings are Not Relevant to the Remand

Notwithstanding MCC's limited role in these remand proceedings, Montana Plaintiffs' Brief is replete with purported citations and references to the Montana state court proceedings surrounding *Hutt v. MCC*.  While the instant remand proceedings are plainly limited to the facts in the record ***in this case***, the Montana Plaintiffs' attempt to populate the narrow issues before this Court with distorted, unsupported factual assertions and incomplete and incorrect characterizations of the state court proceedings fails because their state law claims are squarely and appropriately channeled by the Asbestos PI Channeling Injunction and 11 U.S.C. § 524(g).  Although discussion of the record in *Hutt v. MCC* goes off on a tangent, several of the Montana Plaintiffs' points relating to MCC and the Montana state court proceedings require correction and supplementation for completeness, and for the avoidance of doubt as to MCC's rejection of Montana Plaintiffs' factual presentation.  Much of the Montana Plaintiffs' presentation is not relevant to the remand question, but nevertheless needs to be addressed.

First, Montana Plaintiffs make several assertions about the ACC's summary judgment Order ("ACC Order") in *Hutt v. MCC* that simply cannot be reconciled with the ACC Order's plain text.  Contrary to Montana Plaintiffs' statement and citation, ***nowhere in the ACC Order*** does the ACC discuss, let alone make, any factual findings with respect to "recommendations for venting the asbestos rather than removing it with recognized 'baghouse' technology."  Montana Plaintiffs' Brief at 14.  In fact, neither "ventilation" nor "baghouse technology" are mentioned anywhere in the ACC Order.  The same is true for Montana Plaintiffs' discussion of an alleged

5

factual finding regarding so-called contributions to "workers' confidence."  *See* Montana Plaintiffs' Brief at 14.  This too represents Montana Plaintiffs' after-the-fact argument and editorializing; not the ACC's Order.  Montana Plaintiffs also attempt to give this Court the impression of a broader ACC holding.  The ACC's Order, which is now before the Montana Supreme Court on review, addressed a common law duty to warn, but it did not, as Montana Plaintiffs suggest, make any holdings or findings regarding allegations of "MCC's failure to exercise due care in its industrial hygiene activities."  *See* Montana Plaintiffs' Brief at 23.  Again, it bears repeating that this decision has nothing to do with the issues before this Court on remand.

Second, Montana Plaintiffs' reference to a bad faith claim against MCC,[8] is incomplete, misleading, and irrelevant.  Importantly, Montana Plaintiffs make no bad faith claim against CNA, and only their negligence claim is the subject of this Court's analysis on remand.  Moreover, while Montana Plaintiffs state that "MCC … asserts that the Bad Faith Claims are not valid under Montana law,"[9] they fail to mention until a footnote several pages later that the ACC agreed with MCC that Hutt's bad faith claim was invalid under Montana law.  *See* Montana Plaintiffs' Brief at 15 n. 42.  Specifically, the ACC rejected Hutt's bad faith claim against MCC as a matter of law because it ignored "long-standing precedent."[10]  Further, Montana Plaintiffs failed to disclose to this Court that while Hutt petitioned the Montana Supreme Court to address the legitimacy of his bad faith claim in conjunction with the supervisory control petition already before it, the Montana Supreme Court rejected Hutt's request.[11]  Again, this Court should disregard Montana Plaintiffs'

---

[8] Montana Plaintiff's Brief at 10.
[9] Montana Plaintiffs' Brief at 15 n. 27.
[10] *See* Order Re: Defendant Maryland Casualty Company's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment, *Hutt v. MCC*, AC-17-0694, Montana Asbestos Claims Court (Jan. 13, 2019) at 17-18, attached hereto as "Exhibit B."
[11] *See* Order, *Hutt v. Asbestos Claims Court, et al.*, Montana Supreme Court, OP 19-0146 (Mar. 20, 2019).

references to any bad faith allegations against MCC, as they are completely irrelevant to the instant proceedings, and have been consistently rejected by the Montana state courts.

Third, Montana Plaintiffs make several misrepresentations regarding their own claims. For instance, contrary to the assertion in their brief,[12] Montana Plaintiffs have not made *any* claims or arguments concerning the doctrine of transferred intent. In addition, while Montana Plaintiffs assert that Orsborn, a party to the *Hutt* Adversary Proceeding, proceeded with a state court action against MCC,[13] he has not served MCC with a state court complaint or otherwise proceeded with his claims against MCC in any respect to date.

Fourth and finally, all of Montana Plaintiffs' purported references to materials from *Hutt v. MCC*, including depositions and exhibits (Montana Plaintiffs' Brief at 16, 32 n.71; Declaration of John Lacey and supporting exhibits[14]), are inappropriate and incomplete. This Court's task on remand is limited to applying the Third Circuit's guidelines for assessing whether Montana Plaintiffs' claims against CNA ***as alleged*** may be appropriately channeled into the Asbestos PI

---

[12] Montana Plaintiffs' Brief at 10.

[13] Montana Plaintiffs' Brief at 13.

[14] The Declaration of John Lacey, Doc. 67-1, contains six "exhibits": two Montana state court orders, of which this Court may take judicial notice; and four inappropriate supplemental materials produced in discovery in Montana state court proceedings to which CNA is not a party. This Court did not reopen the record on remand and no party made such a request as the record is sufficient to answer the legal questions before this Court. *See In re Nat'l Heritage Foundation, Inc.*, 478 B.R. 216, 225 (Bankr. E.D. Va. 2012) (noting that in remand from Fourth Circuit, "The parties stipulated that the Court could, and should, make its findings of fact and conclusions of law based on the record as it stood at the conclusion of the confirmation hearing."); *In re Choudhuri*, 2014 WL 5861374, at *8 (B.A.P. 9th Cir. Nov. 12, 2014) ("[Pro se plaintiff] did not move to reopen the record or to enter the document into evidence. Although we treat pro se parties … with liberality, she must obey procedural rules."). Neither CNA nor MCC has had an opportunity to challenge or refute the material offered by Montana Plaintiffs. Further, Montana Plaintiffs should not be permitted to inject irrelevant collateral evidentiary issues into this remand proceeding. This Court should decline to consider all materials that were not before it at the time of the initial summary judgment motions to avoid confusion of the narrow issues before it on remand, and prejudice to CNA and MCC.

Channeling Injunction consistent with 11 U.S.C. § 524(g)(4).  *See In re W.R. Grace & Co.*, 900 F.3d 126, 130 (3d Cir. 2018).

## II.    Montana Plaintiffs' Misrepresent MCC's Enforcement Motion

The inaccuracies in Montana Plaintiffs' Brief extend to its description of MCC's Enforcement Motion.  MCC's Enforcement Motion asks this Court to enforce the terms of the Asbestos PI Channeling Injunction, as interpreted by the *Hutt* Adversary Order.  The Enforcement Motion addresses the Asbestos PI Channeling Injunction as it has been held by this Court to apply to MCC; it does not implicate the analysis or remand before this Court, or whether the channeling of Montana Plaintiffs' claims against CNA is consistent with 11 U.S.C. § 524(g).

Montana Plaintiffs' purported summary, Pl.'s Br. at 3, fails to properly and accurately state MCC's position that, because the Montana Plaintiffs' claims are properly channeled under 11 U.S.C. § 524(g), and remain so following application of the Third Circuit's guidelines on remand for the reasons stated in CNA's Briefs, this Court may address the Enforcement Motion.  This Court's enforcement of the Asbestos PI Channeling Injunction as it applies to MCC by virtue of the *Hutt* Adversary Order does not implicate the issues in the instant remand, which were not appealed by Hutt.  The fact that its precedential effect could conceivably be altered by subsequent developments does not render it unripe, or even unique.

Montana Plaintiffs next argue that the Enforcement Motion is not ripe in part due to their commitment on behalf of non-worker plaintiffs not to pursue claims against MCC unless they prevail in this proceeding or with respect to the issues addressed in the Enforcement Motion.  *See* Pl.'s Br. at 53.  Aside from being circular, this argument misses the point and ignores the collateral burdens associated with the service, administration, and pendency of hundreds of cases that should never have been filed for the reasons stated in the Enforcement Motion.  As each day passes, Montana Plaintiffs continue their sanctionable and contemptuous conduct.

Next, Montana Plaintiffs go to great lengths to split hairs about the procedural posturing of MCC's Enforcement Motion and the *Hunt* Adversary Proceeding,[15] but their concerns are a product of their own design.  Montana Plaintiffs were familiar with the proper procedure by which to assert their arguments regarding the scope of the Asbestos PI Channeling Injunction: former Grace employees Hutt and Orsborn initiated the *Hutt* Adversary Proceeding to seek a declaratory judgment that their claims were permissible in state court.  The Opinion issued by this Court in the *Hutt* Adversary Proceeding held that:

> The Plaintiffs contend that, ***as employees, the Negligence Claim and the Bad Faith Claim must arise under MCC's worker's compensation policies***. ***To the extent that the Plaintiffs can demonstrate that the Plaintiffs' Claims arise out of or are based upon MCC's workers' compensation policies***, the claims are not barred by the Asbestos PI Channeling Injunction and may be filed in state court. I will grant the relief requested in Count II and Count IV of the Adversary Complaint.

*Hutt*, 2016 LEXIS 3754 at *44 (emphasis added).

To the extent that Montana Plaintiffs contend that the Asbestos PI Channeling Injunction and *Hutt* Adversary Order did not foreclose non-worker plaintiffs from advancing claims against MCC,[16] they should have, consistent with the previously-executed procedure of initiating an adversary proceeding, sought this Court's guidance ***prior to*** filing and serving hundreds of claims on behalf of non-workers in violation of the Asbestos PI Channeling Injunction and the *Hutt* Adversary Order.  MCC's Enforcement Motion seeks to enforce and impose sanctions based on Montana Plaintiffs' violation of an **existing** injunction and is thus procedurally appropriate.  *See In re Kalikow*, 602 F.3d 82, 93 (2d Cir. 2010); *In re WorldCorp, Inc.*, 252 B.R. 890 (Bankr. D. Del. 2000).  The filing of the *Hunt* Adversary Proceeding in this Court (Adv. Proc. No. 18-50402),

---

[15] Montana Plaintiffs' Brief at 53-54.

[16] Montana Plaintiffs' contention that the *Hutt* Adversary Order could not apply to non-workers because neither Hutt nor Orbsorn was a non-worker fails because the broader arguments in the Complaint filed in the *Hutt* Adversary Proceeding, which were rejected by Judge Carey, would have applied, without regard to individual plaintiffs' status as workers or non-workers.

which essentially represents a new, after-the-fact adversary proceeding addressing the non-worker issues raised in MCC's Enforcement Motion, does not serve to cure Montana Plaintiffs' knowing violation of the existing Asbestos PI Channeling Injunction.

Finally, Montana Plaintiffs' contention that any of the issues involved in the MCC Enforcement Motion or the *Hunt* Adversary Proceeding require additional briefing is completely without merit. *See* Montana Plaintiffs' Brief at 54. The *Hutt* Adversary Order was clear that Hutt and Orsborn*, as former Grace employees*, were permitted to file their claims, *to the extent those claims arose out of MCC's specific workers' compensation policie*s. The relevant dispositive issues have been extensively and decisively briefed before this Court in MCC's Enforcement Motion, and they were re-briefed in the *Hunt* Adversary Proceeding. Though Montana Plaintiffs have never substantively addressed their violations of the Asbestos PI Channeling Injunction or the *Hutt* Adversary Order, they have had more than adequate opportunity to do so. Montana Plaintiffs' opportunities to address the Enforcement Motion have expired; they should not be afforded another forum to rework their arguments.

## III.    **Montana Plaintiffs' Motion to Certify is Unnecessary and Unwarranted**

CNA's Response to the Montana Plaintiffs' Motion to Certify Questions to the Montana Supreme Court ("CNA's Certification Response"), filed contemporaneously herewith, details the reasons why certification is inappropriate in this case. Even the Montana Plaintiffs appear to acknowledge that certification of questions to the Montana Supreme Court is not necessary. *See* Montana Plaintiffs' Brief at 56; Montana Plaintiffs' Motion to Certify at 3. Indeed, if they believed certification was necessary, Montana Plaintiffs could have presented the issue to this Court or the Third Circuit at a prior stage in these proceedings.

Nevertheless, Montana Plaintiffs are incorrect to assert that the pendency of the *MCC v. ACC* supervisory control proceeding would somehow expedite the Montana Supreme Court's opinion on any certification motion.  *See* Montana Plaintiffs' Brief at 2.  Montana Plaintiffs' presumption that the Montana Supreme Court would consolidate any hypothetical certification request with *MCC v. ACC* is simply speculation.  In fact, consolidation with the certification request seems particularly unlikely given that it would unnecessarily delay the Montana Supreme Court's opinion in the *MCC v. ACC* proceeding.  As previously stated, the *MCC v. ACC* proceeding in the Montana Supreme Court is fully briefed and pending resolution, while Montana Plaintiffs' Motion to Certify is still awaiting Montana Plaintiffs' reply, and this Court's ultimate ruling.

In addition, the pendency of the *MCC v. ACC* proceeding further demonstrates that certification is unnecessary.  The core question in that proceeding is the correct legal standard or framework for determining whether a workers' compensation insurer owes a duty to the employee of its insured.  Further, the question is presented organically in the context of a summary judgment proceeding involving a substantially similar negligence claim against a similarly situated defendant.  Should this Court determine that further clarification from the Montana Supreme Court is necessary, the context of the *MCC v. ACC* supervisory control proceeding presents a far superior scenario for determination of a legal question than Montana Plaintiffs' nearly inscrutable, abstract proposed certification questions.  In any event, the pending matter before the Montana Supreme Court is not necessarily case dispositive.

Finally, Montana Plaintiffs' proposed certification questions are slanted, difficult to discern, and of no utility to this Court.  Montana Plaintiffs ask this Court to certify the following questions to the Montana Supreme Court:

1. Where Company X, which provides insurance to Company Y, also undertakes the performance of industrial hygiene services in connection with industrial workplace hazards at Company Y's facilities, does Montana law recognize a duty of reasonable care by Company X, in the performance of such services, to persons who could foreseeably be injured as a result of lack of reasonable care in the performance of such services; and if so

(a) in a cause of action by a foreseeably injured person against Company X for lack of reasonable care in performing such services, is wrongdoing or liability of Company Y a required element of the cause of action, and

(b) is the status of Company X as an insurer of Company Y a required element of such cause of action?

2. Where Company X, which provides insurance to Company Y, also undertakes the performance of industrial hygiene services for the protection of employees who work at Company Y's facility, and identifies a hidden hazard such as dust containing dangerously high levels of asbestos fibers, does Montana law recognize a duty of Company X to give a warning to those persons who could foreseeably be injured by such hazard; and if so, (a) in a cause of action by a foreseeably injured person against Company X for breach of such duty to warn, is wrongdoing or liability of Company Y a required element of the cause of action, and (b) is the provision of insurance by Company X to Company Y, a required element of such cause of action?

Montana Plaintiffs' Motion to Certify at 7.

These questions are crafted in a way such that they inappropriately usurp this Court's task of applying the Third Circuit's remand directive. Specifically, Montana Plaintiffs' questions adopt and incorporate Montana Plaintiffs' incorrect and unsupported interpretation of the Third Circuit's Opinion. Application of the Third Circuit's Opinion on remand is exclusively within the province of this Court.

Montana Plaintiffs' proposed certification questions also incorrectly include and assume certain facts and legal determinations. As just one example, the questions describe "Company X" as providing insurance, but they do not specify workers' compensation insurance, which would effectively take away the Montana Supreme Court's ability to determine of its own right whether or not the fact of *workers' compensation insurance* was a legally significant fact.

12

Accordingly, this Court should deny Montana Plaintiffs' Motion to Certify.

## CONCLUSION

MCC joins in CNA's Reply on Remand in support of CNA's motion for summary judgment.  This Court should enter judgment on behalf of CNA on remand, and decline to certify any questions to the Montana Supreme Court.  In addition, this Court should disregard the portions of Montana Plaintiffs' Brief that unnecessarily and incorrectly describe proceedings involving MCC in the Montana state courts.  Finally, as the Asbestos PI Channeling Injunction comports with 11 U.S.C. § 524(g), MCC's Enforcement Motion is ripe for this Court's review.

Dated: May 20, 2019

Respectfully submitted,

**CONNOLLY GALLAGHER LLP**

*/s/ Jeffrey C. Wisler*
Jeffrey C. Wisler (No. 2795)
1201 North Market Street
20th Floor
Wilmington, DE 19801
Telephone: (302) 757-7300

**ECKERT SEAMANS CHERIN
 & MELLOTT, LLC**
Edward J. Longosz, II
Mark A. Johnston
Kennedy C. Ramos
1717 Pennsylvania Avenue, NW
12th Floor
Washington, DC 20006
(202) 659-6600 Telephone
(202) 659-6699 Facsimile
elongosz@eckertseamans.com
mjohnston@eckertseamans.com
kramos@eckertseamans.com

*Attorneys for Maryland Casualty Company*, n/k/a
Zurich American Insurance Company, successor by
merger to Maryland Casualty Company