IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (AMC) |
| | ) (Jointly Administered) |
| Reorganized Debtor. | ) |
| | ) Hearing Date: July 31, 2019, at 11:30 a.m. |
| | ) Objection Deadline: June 21, 2019, at 4:00 p.m. |
| | ) |

**THE REORGANIZED DEBTOR'S REQUEST FOR PARTIAL ALLOWANCE AND PARTIAL DISALLOWANCE OF THE CLAIM BY THE MONTANA DEPT. OF ENV. QUALITY ("MDEQ") FOR ENVIRONMENTAL REMEDIATION AT OPERABLE UNIT 3 OF THE LIBBY ASBESTOS SUPERFUND SITE (SUBSTANTIVE OBJECTION)**

<u>**REQUEST FOR PARTIAL ALLOWANCE & PARTIAL DISALLOWANCE OF MDEQ CLAIM NO. 18496-1**</u>

1.  In this pleading (the "Claim Partial Allowance & Objection"), Grace requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> (the "Order"), resolving the last non-asbestos, general unsecured claim (designated Claim no. 18496-1) remaining in the above-captioned chapter 11 case not yet subject to Grace's objection or otherwise resolved:[2] (i) Allowing a contingent Claim for the Montana Department of Environmental Quality ("MDEQ"), which would survive the closing of the above-captioned chapter 11 case, for certain potential future response costs that MDEQ might (though is unlikely to) incur in connection with

---

[1] W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") is the sole remaining "Reorganized Debtor," and Case no. 01-1139 is the sole remaining open chapter 11 case.

[2] There are three other non-asbestos, general unsecured claims that still remain unresolved. The Reorganized Debtor has filed an objection to those claims, resolution of which has been stayed pending resolution of certain litigation still ongoing in California state court.

Capitalized terms not otherwise defined in this Claim Partial Allowance & Objection shall have the meaning ascribed to them in the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (the "Plan").

a subarea of the Libby Asbestos Superfund Site in Libby, Montana (the "Site") known as Operable Unit 3 ("OU3"); and (ii) disallowing Claim no. 18496-1 in all other respects.

2. The potential future MDEQ response costs are based on two specific categories of costs described in Section 104(c)(3) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "Superfund"), 42 U.S.C. § 9604(c)(3), which provides in relevant part:

> The President shall not provide any remedial actions pursuant to this section unless the State in which the release occurs first enters into a contract or cooperative agreement with the President providing assurances deemed adequate by the President that (A) the State will assure all future maintenance of the removal and remedial actions provided for the expected life of such actions as determined by the President; ... and (C) the State will pay or assure payment of (i) 10 per centum of the costs of the remedial action, including all future maintenance ...

42 U.S.C. § 9604(c)(3).

3. This section establishes two conditions before the U.S. Environmental Protection Agency ("EPA") can implement a selected remedial action at a CERCLA site using federal Superfund money: (1) the State must agree to pay 10% of the remedial action costs (the "10% Cost Share"); and (2) the State must agree to pay 100% of the post-remedy operation and maintenance costs ("Post-Remedy O&M Costs"). The 10% Cost Share and the Post-Remedy O&M Costs at OU3 of the Site (together the "Potential MDEQ Future OU3 Response Costs") could arise only if: (i) EPA itself were to construct the selected OU3 remedial action using federal Superfund money; or (ii) if the Reorganized Debtor were unable to implement post-remedy operations and maintenance. As discussed below, the Reorganized Debtor does not anticipate that EPA will construct the selected OU3 remedial action using federal Superfund money. Moreover, the Reorganized Debtor anticipates that it will be able to implement post-remedy operations and maintenance at OU3.

4.  MDEQ originally filed its proof of claim (last amended in 2007 and designated as Claim no. 18496) in the amount of $55 million for the entire Site under CERCLA Section 107 (42 U.S.C. § 9607) and the Montana Comprehensive Environmental Cleanup and Responsibility Act ("CECRA"), Mont. Code Ann. § 75-10-715, for its 10% Cost Share and Post-Remedy O&M Costs. MDEQ also claimed approximately $10,022 in past response costs at the Site.

5.  On July 21, 2008, this Court entered an order (the "2008 Order") approving a stipulation (the "2008 MDEQ Settlement Agreement") entered into by the then-Debtors and MDEQ resolving MDEQ's Claim no. 18496 for the entire Site except for OU3.[3] The 2008 MDEQ Settlement Agreement "specifically reserved" ... "claims" ... "relating to OU-3." The then-Debtors designated this remaining OU3 claim as Claim no. 18496-1. Since that time, MDEQ has not amended Claim no. 18496-1.[4]

6.  In the years since, Grace and its affiliates have been cooperating, and are continuing to cooperate, with EPA in the performance of a "Remedial Investigation and Feasibility Study" (the "RI/FS") for OU3. The RI/FS provides the technical basis for EPA's future selection of a remedial action for OU3. Such cooperation has also included Grace's ongoing payment of certain costs to EPA, including the cost of funding that EPA provides to MDEQ for MDEQ's OU3-related work as a support agency for the Site pursuant to a cooperative agreement entered into by MDEQ and EPA in 2009. The Reorganized Debtor is not aware of MDEQ having incurred any

---

[3]  Exhibit C-1 to the declaration in support of this Claim Partial Allowance & Objection is a map of OU3, which includes the property in or around the former vermiculite mine property owned by the then-Debtors (excluding the former screening plant) and any area impacted by the release and subsequent migration of hazardous substances and/or pollutants or contaminants from the mine property. (The boundary in the Kootenai River remains unresolved.)

[4]  In compliance with Del. Bankr. L. R. 3007-1(e)(iii), the Reorganized Debtor has attached hereto as Exhibit B a copy of the proof of claim for Claim no. 18496, as it is the only documentation on file pertaining to MDEQ's remaining claim for OU3, which the then-Debtors designated as Claim no. 18496-1.

unreimbursed response costs for remediation of, or the RI/FS for, OU3 for which the Reorganized Debtor would be potentially liable pursuant to Claim no. 18496-1. Grace and its affiliates anticipate that they will continue to cooperate with EPA in connection with the development of the remedial design and remedial action after EPA selects a remedy.

7. MDEQ is thus unlikely to incur in the future any Potential MDEQ Future OU3 Response Costs. The Reorganized Debtor nonetheless recognizes that MDEQ has a contingent claim as to these Potential MDEQ Future OU3 Response Costs. The Reorganized Debtor is therefore willing for the Court to Allow a contingent Claim for these Potential MDEQ Future OU3 Response Costs that will survive the closing of this final chapter 11 case, which will fully protect MDEQ's contingent claim for any potential future 10% Cost Share and Post-Remedy O&M Costs at OU3.

8. MDEQ has made no other claim. Moreover, based upon a review of their books and records, neither Grace nor any of its affiliates owe any other amounts arising from or otherwise related to Claim no. 18496-1.

9. The Reorganized Debtor therefore respectfully requests the Court enter the Order Allowing MDEQ a contingent Claim (the "<u>MDEQ Surviving Claim</u>"), to survive the closing of the above-captioned chapter 11 case, for any future Potential MDEQ Future OU3 Response Costs, and disallowing MDEQ's OU3 Claim in all other respects.

### FACTUAL PREDICATE

10. The factual predicate in support of this request for the Court to enter the Order partially allowing and partially disallowing MDEQ's OU3 Claim no. 18496-1 is set forth in the *Declaration of Keith N. Cole in Support of the Reorganized Debtor's Request for Partial Allowance and Partial Disallowance of the Claim by the Montana Dept. of Env. Quality ("<u>MDEQ</u>") for Environmental Remediation at Operable Unit 3 of the Libby Asbestos Superfund*

*Site (Substantive Objection)* (the "Declaration"), which is attached hereto as Exhibit C. The Declaration is incorporated by reference as if fully set forth herein

### JURISDICTION

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2015*. The Court also has "retain[ed] jurisdiction to hear and determine all matters arising from or relating to the implementation of" the 2008 Order, dated July 21, 2008, which is captioned *Order Authorizing Stipulation Resolving Claims of Montana Department of Environmental Quality* [Docket no. 19110]. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

12. The predicates for this Claim Partial Allowance & Objection are section 502 of the Bankruptcy Code, Fed. R. Bankr. P. 3001, 3007, and 7055 and Del. Bankr. L.R. 3007-1 and 7055-1.

### RELIEF REQUESTED

13. The Reorganized Debtor requests the Court enter an order substantially in the form attached hereto as Exhibit A:

- Allowing MDEQ a single MDEQ Surviving Claim solely for contingent Future MDEQ OU3 Response Costs, which shall survive the closing of the last remaining chapter 11 case; *provided, however,* that the Reorganized Debtor shall retain all applicable defenses and counterclaims relating to or otherwise arising from the MDEQ Surviving Claim;

- Disallowing Claim no. 18496-1 in all other respects;

- Subjecting MDEQ to the discharge provisions of the Plan and Confirmation Order as to all claims other than the MDEQ Surviving Claim; and

- Retaining the Court's jurisdiction over the MDEQ Surviving Claim, Claim no. 18496-1, and all matters relating to those claims.

**PROCEDURES FOR RESPONDING TO THE CLAIM PARTIAL ALLOWANCE & OBJECTION**

14. To contest this Claim Partial Allowance & Objection, Claimant must file and serve a written response (a "Response") so that it is received no later than 4:00 p.m. ET, on June 21, 2019 (the "Response Deadline"). The Response must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") at the following address:

> 824 Market Street
> Wilmington, Delaware 19801

15. The Response must also be served upon the following co-counsel to the Reorganized Debtor on or before the Response Deadline:

> THE LAW OFFICES OF ROGER HIGGINS, LLC
> Roger J. Higgins
> 516 N. Ogden Ave.
> Suite 136
> Chicago, IL 60642
>
> PACHULSKI STANG ZIEHL & JONES LLP
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill (Bar No. 4042)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705

16. The Response must contain, at a minimum, the following:

a. A caption setting forth the name of the Court, the name of the Reorganized Debtor, the case number, and the title of the Claim Partial Allowance & Objection to which the Response is directed;

b. The name of the Claimant, its claim number, and a description of the basis for the amount of the claim;

c. The specific factual basis and supporting legal argument upon which the party will rely in opposing the Claim Partial Allowance & Objection;

d. Any supporting documentation, to the extent it was not included with the proof of claim previously filed with the Clerk or Claims Agent, upon which the party will rely to support the basis for and amounts asserted in the proof of claim;

e.  The name, address, telephone number, and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Reorganized Debtor should communicate with respect to the Disputed Claim or the Claim Partial Allowance & Objection, and who possesses authority from Claimant to reconcile, settle, or otherwise resolve the Claim Partial Allowance & Objection and the Disputed Claim.

17. If Claimant fails to file and serve a timely Response, the Reorganized Debtor may present to the Court an appropriate order disallowing and expunging Claimant's claim without further notice to the Claimant or a hearing.

### REPLY TO RESPONSE

18. The Reorganized Debtor reserves the right to, at their option, file and serve one or more replies to Claimant's Response, if any.

### SEPARATE CONTESTED MATTER

19. If Claimant files a Response to this Claim Partial Allowance & Objection, and the Claimant and the Reorganized Debtor are unable to resolve that Response, the claim and this Claim Partial Allowance & Objection shall constitute a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.

### RESERVATION OF RIGHTS

20. The Reorganized Debtor hereby reserves the right to object in the future to the Claim. The Reorganized Debtor further reserves the right to amend, modify, and/or supplement this Claim Partial Allowance & Objection, including, without limitation, to object to amended claims and newly-filed claims. Separate notice and hearing will be scheduled for any such objection.

### NO PREVIOUS OBJECTION

21. No previous objection to the Claim has been filed, nor has any other motion for the relief sought herein been made to this or any other court.

## NOTICE

22. Notice of this Claim Partial Allowance & Objection has been given to: (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (ix) counsel for Montana DEQ; (x) Montana Attorney General; and (xi) counsel for EPA. In light of the nature of the relief requested, the Reorganized Debtor submits that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtor requests the Court enter the Order in substantially the form attached hereto as Exhibit A: (i) Allowing the MDEQ Surviving Claim on the terms set forth in this Objection; (ii) Disallowing Claim no. 18496-1 in all other respects; (iii) Discharging all other MDEQ claims on the terms and conditions set forth in the Plan and Confirmation Order; (iv) Retaining the Court's jurisdiction over the MDEQ Surviving Claim, Claim no. 18496-1, and all matters relating thereto; and (v) granting such other relief as may be appropriate.

Dated: June 7, 2019

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
516 N. Ogden Ave.
Suite 136
Chicago, IL 60642
Telephone: (312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Reorganized Debtor