# Exhibit C-2

## First Amended Cross-Complaint

# SUMMONS
## *(CITATION JUDICIAL)*
### ON FIRST AMENDED CROSS COMPLAINT

982(a)(9)

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

HOME SAVINGS TERMITE CONTROL, INC.; W. F. MORRIS;
RIKK THOMPSON; W. R. GRACE & CO.; GRACE DAVISON;
ALBERT J. COSTELLO; JAMES R. HYDE;

Additional Parties Attachment Form is attached

**YOU ARE BEING SUED BY** ~~PLAINTIFF:~~ CROSS COMPLAINANTS
*(A Ud. le está demandando)*

Gary Smolker and Alice Smolker

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

| | |
|---|---|
| You have *30 CALENDAR DAYS* after this summons is served on you to file a typewritten response at this court. | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.* |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | *Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.* |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | *Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.* |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

CASE NUMBER: *(Número del Caso)*
**BC 173 952**

The name and address of the court is: *(El nombre y dirección de la corte es)*

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
111 North Hill Street, Los Angeles, CA 90012-3117

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

GARY S. SMOLKER, SBN 56117          Phone: (310) 574-9880
LAW OFFICES OF SMOLKER & GRAHAM
4720 Lincoln Blvd., Ste. 280
Marina Del Rey, CA 90292-6977

DATE: NOV 04 1997          JOHN A. CLARKE, CLERK          Clerk, by _____ H. HINAGA, Deputy
*(Fecha)*          *(Actuario)*          *(Delegado)*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Home Savings Termite Control, Inc.

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (individual)
☐ other:
4. ☒ by personal delivery on *(date)*: 11-7-97

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

*(See reverse for Proof of Service)*
**SUMMONS**

CCP 412.20

Nov 4 97

1. I served the
   a. ☐ summons ☐ complaint ☐ amended summons ☐ amended complaint
   ☐ completed and blank Case Questionnaires ☐ Other *(specify)*:

   b. on defendant *(name)*:

   c. by serving ☐ defendant ☐ other *(name and title or relationship to person served)*:

   d. ☐ by delivery ☐ at home ☐ at business
   (1) date:
   (2) time:
   (3) address:

   e. ☐ by mailing
   (1) date:
   (2) place:

2. Manner of service *(check proper box)*:
   a. ☐ **Personal service. By personally delivering copies. (CCP 415.10)**
   b. ☐ **Substituted service on corporation, unincorporated association (including partnership), or public entity. By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(a))**
   c. ☐ **Substituted service on natural person, minor, conservatee, or candidate. By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(b))** *(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)*
   d. ☐ Mail and acknowledgment service. By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP 415.30) *(Attach completed acknowledgment of receipt.)*
   e. ☐ Certified or registered mail service. By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP 415.40) *(Attach signed return receipt or other evidence of actual delivery to the person served.)*
   f. ☐ Other *(specify code section)*:
   ☐ additional page is attached.

3. The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412.30, 415.10, and 474):
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor) ☐ other:
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (individual)
   d. ☐ by personal delivery on *(date)*:

4. At the time of service I was at least 18 years of age and not a party to this action.

5. Fee for service: $

6. Person serving:
   a. ☐ California sheriff, marshal, or constable.
   b. ☐ Registered California process server.
   c. ☐ Employee or independent contractor of a registered California process server.
   d. ☐ Not a registered California process server.
   e. ☐ Exempt from registration under Bus. & Prof. Code 22350(b).

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
*(SIGNATURE)*

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

▶

_____
*(SIGNATURE)*

21(a9) Rev. January 1 1984]

# SUMMONS
## *(CITACION JUDICIAL)*
ON FIRST AMENDED CROSS COMPLAINT

982(a)(9)

**NOTICE TO ~~CROSS~~ DEFENDANT:** *(Aviso a Acusado)*

HOME SAVINGS TERMITE CONTROL, INC.; W. F. MORRIS;
RIKK THOMPSON; W. R. GRACE & CO.; GRACE DAVISON;
ALBERT J. COSTELLO; JAMES R. HYDE;

Additional Parties Attachment Form is attached

| FOR COURT USE ONLY |
| :---: |
| *(SOLO PARA USO DE LA CORTE)* |

**YOU ARE BEING SUED BY ~~PLAINTIFF:~~**   CROSS COMPLAINANTS
*(A Ud. le está demandando)*

Gary Smolker and Alice Smolker

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court. | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.* |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | *Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.* |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | *Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.* |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

**CASE NUMBER:** *(Número del Caso)*

BC 173 952

The name and address of the court is: *(El nombre y dirección de la corte es)*

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
111 North Hill Street, Los Angeles, CA  90012-3117

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

GARY S. SMOLKER, SBN 56117                 Phone:  (310) 574-9880
LAW OFFICES OF SMOLKER & GRAHAM
4720 Lincoln Blvd., Ste. 280
Marina Del Rey, CA  90292-6977

DATE: NOV 0 4 1997   JOHN A. CLARKE, CLERK   Clerk, by _____ H. HINAGA_____, Deputy
*(Fecha)*                                                    *(Actuario)*                                   *(Delegado)*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☑ on behalf of *(specify)*: Dean & Associates

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (individual)
       ☐ other:
4. ☐ by personal delivery on *(date)*:

(See reverse for Proof of Service)
**SUMMONS**

CCP 412 20

*(Use separate proof of service for each person served)*

1. I served the
   a. ☐ summons ☐ complaint ☐ amended summons ☐ amended complaint
      ☐ completed and blank Case Questionnaires ☐ Other *(specify)*:
   b. on defendant *(name)*:

   c. by serving ☐ defendant ☐ other *(name and title or relationship to person served)*:

   d. ☐ by delivery ☐ at home ☐ at business
      (1) date:
      (2) time:
      (3) address:

   e. ☐ by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box)*:
   a. ☐ **Personal service.** By personally delivering copies. (CCP 415.10)
   b. ☐ **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(a))
   c. ☐ **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(b)) *(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)*
   d. ☐ **Mail and acknowledgment service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP 415.30) *(Attach completed acknowledgment of receipt.)*
   e. ☐ **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP 415.40) *(Attach signed return receipt or other evidence of actual delivery to the person served.)*
   f. ☐ **Other** *(specify code section)*:
      ☐ additional page is attached.

3. The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412.30, 415.10, and 474):
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ on behalf of *(specify)*:
      under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)          ☐ other:
             ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
             ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (individual)
   d. ☐ by personal delivery on *(date)*:

4. At the time of service I was at least 18 years of age and not a party to this action.

5. Fee for service: $

6. Person serving:
   a. ☐ California sheriff, marshal, or constable.
   b. ☐ Registered California process server.
   c. ☐ Employee or independent contractor of a registered California process server.
   d. ☐ Not a registered California process server.
   e. ☐ Exempt from registration under Bus. & Prof. Code 22350(b).

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

Date:

▶ _____
(SIGNATURE)

▶ _____
(SIGNATURE)

982(a)(9) [Rev January 1 1984]

982(a)(9)(A)

| SHORT TITLE: | .SE NUMBER. |
|---|---|
| TIG INSURANCE v. SMOLKER | BC 173 952 |

## INSTRUCTIONS FOR USE

► This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
► If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [XX] Cross-Defendant

MATTHEW JOHN FREDERICKS; VIRGINIA K. CIPRIANO; JOSEPH A. BAILEY II; CAROL
D. KAY, TRUSTEE; CAROL D. KAY REVOCABLE 1989 TRUST; LANCE J. ROBBINS;
GERALD W. IVORY; ANGELA JORDAN VERDUN; PACIFIC VILLAS HOMEOWNERS' ASSO-
CIATION; TRUCK INSURANCE EXCHANGE; TRUCK UNDERWRITERS ASSOCIATION; FARMERS
GROUP, INC.; FARMERS INSURANCE GROUP OF COMPANIES; TIG INSURANCE COMPANY;
CUMMINS & WHITE, LLP; LARRY M. ARNOLD; LAURA N. MACPHERSON; COREGIS GROUP,
INC.; COREGIS INSURANCE COMPANY; JOSEPH FEDORUK; DEAN & ASSOCIATES; DENNIS
A. BABBITS; CALIFORNIA INSURANCE COMPANY; RELIANCE INSURANCE COMPANY;
FRONTIER PACIFIC INSURANCE COMPANY;                              and ROES
1-100, INCLUSIVE

Page __2__ of __2__

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Gary S. Smolker, SBN 56117
   Alice M. Graham, SBN 83046
2  Law Offices of Smolker & Graham
   4720 Lincoln Blvd., Suite 280
3  Marina Del Rey, CA 90292-6977
   Telephone: (310) 574-9880
4  Fax: (310) 574-9883

5  Attorneys for Defendants and Cross-complainants
   Gary Smolker and Alice Smolker

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  TIG INSURANCE COMPANY, a California          )   Case No. BC 173952
    Corporation,                                 )   (Honorable Peter D. Lichtman, Judge)
12                                               )
        Plaintiff,                               )
13                                               )   FIRST AMENDED CROSS-COMPLAINT
                                                 )   FOR DAMAGES FOR
14      vs.                                      )   1. Fraudulent Concealment;
                                                 )   2. Negligence and Violation of Statutory
15                                               )   Duties;
    GARY SMOLKER, an individual, and ALICE       )   3. Strict Liability
16  SMOLKER, an individual, and DOES 1-10,       )   4. Willful Misconduct
    inclusive,                                   )   5. Action for Abatement of A Dangerous
17                                               )   Condition
        Defendants.                              )   6.
18                                               )
                                                 )
19                                               )
                                                 )
20  ─────────────────────────────────────────── )
                                                 )
21                                               )
    GARY SMOLKER and ALICE SMOLKER,              )
22                                               )
        Cross-complainants,                      )
23                                               )
        vs.                                      )
24                                               )
                                                 )
25  HOME SAVINGS TERMITE CONTROL,                )
26  INC.; W.F. MORRIS; RIKK THOMPSON;            )
    W.R. GRACE & CO.; GRACE DAVISON;             )
27  ALBERT J. COSTELLO; JAMES R. HYDE;           )

28

                              -1-

MATTHEW JOHN FREDERICKS;
VIRGINIA K. CIPRIANO; JOSEPH A.
BAILEY II; CAROL D. KAY, TRUSTEE,
CAROL D. KAY REVOCABLE 1989 TRUST;
LANCE J. ROBBINS; GERALD W. IVORY;
ANGELA JORDAN VERDUN; PACIFIC
VILLAS HOMEOWNERS' ASSOCIATION;
TRUCK INSURANCE EXCHANGE; TRUCK
UNDERWRITERS ASSOCIATION;
FARMERS GROUP, INC.; FARMERS
INSURANCE GROUP OF COMPANIES; TIG
INSURANCE COMPANY; CUMMINS &
WHITE, LLP; LARRY M. ARNOLD; LAURA
N. MACPHERSON; COREGIS GROUP,
INC.; COREGIS INSURANCE COMPANY;
JOSEPH FEDORUK; DEAN &
ASSOCIATES; DENNIS A BABBITS;
CALIFORNIA INSURANCE COMPANY;
RELIANCE INSURANCE COMPANY;
FRONTIER PACIFIC INSURANCE
COMPANY; .
            and ROES 1-100, INCLUSIVE,

        Cross-defendants.



Cross-complainants GARY SMOLKER and ALICE SMOLKER allege:

<u>FIRST CAUSE OF ACTION</u>

(Against Cross-defendants HOME SAVINGS TERMITE CONTROL, INC.,

W.F. MORRIS, RIKK THOMPSON, W.R. GRACE & CO., GRACE DAVISON,

ALBERT J. COSTELLO, JAMES R. HYDE, JOSEPH FEDORUK,

and ROES 1-15 for Fraudulent Concealment)

1. Cross-complainants GARY SMOLKER and ALICE SMOLKER (hereinafter the

SMOLKERS) are, and at all times mentioned herein were, husband and wife residing at 15-63rd

Avenue, Playa del Rey, California (hereinafter the PREMISES) with their two minor daughters,

Judi and Leah Smolker.

-2-

2. The true names or capacities, whether individual, corporate, associate or otherwise, of defendants ROES 1 through 100, inclusive, and each of them, are unknown to cross-complainant, who therefore sue said cross-defendants by such fictitious names and ask leave to amend this Cross-Complaint to show said cross-defendants' true names and capacities when the same have been ascertained. Cross-complainants are informed and believe, and thereupon allege, that each of the cross-defendants designated herein as a ROES 1 through 80 inclusive is negligently or otherwise legally responsible in some manner for the events and happenings herein referred to and negligently or otherwise unlawfully caused injuries and damages to cross-complainants as herein alleged, and each of the cross-defendants designated herein as ROES 81 through 100 inclusive became an owner of a condominium unit at the PREMISES after July 2, 1997 and is an owner of a condominium unit thereat.

3. (a) Cross-defendant HOME SAVINGS TERMITE CONTROL, INC. (hereinafter HSTCI) is, and at all times herein mentioned was, a California corporation doing business in the County of Los Angeles, State of California, and is a licensed pest control operator who holds itself out as being a licensed general building contractor with special expertise in pesticide treatments of residential building structures utilizing a proprietary installation of a proprietary pest control system. At all times material herein HSTCI represented that all pesticides it used were registered with and approved by the US EPA and the State of California and that HSTCI used only the safest methods and chemicals available. HSTCI also represented that the chemicals and methods it used had no displeasing effect on humans, were perfectly safe and no threat to human health or comfort.

(b) These representations were in fact false. As part of its business, HSTCI illegally held for distribution and sale, illegally distributed, illegally sold, illegally processed, and illegally delivered a pesticide that was not registered with the Environmental Protection Agency or the California Department of Pesticide Regulation (hereinafter UNREGISTERED POISON) to the homeowners association which manages the PREMISES on or about October 11, 1996 and October 12, 1996. At or about the same time HSTCI gained entry to the PREMISES and to the

-3-

individual condominium unit thereat owned by GARY SMOLKER through fraud, deceit and false

pretenses and without GARY SMOLKER's consent. Thereafter HSTCI illegally and recklessly

treated the PREMISES with the UNREGISTERED POISON by illegally discharging the

UNREGISTERED POISON in GARY SMOLKER's condominium unit without GARY

SMOLKER's consent and injecting the UNREGISTERED POISON throughout the structure of

the PREMISES such that the entire structure of the PREMISES became contaminated with the

UNREGISTERED POISON and structural voids surrounding GARY SMOLKER's

condominium unit were filled with UNREGISTERED POISON. This is not the safest method for

eradicating termites residing in a residential structure.

(c) At or about the same time, HSTCI drilled holes in the concrete slab in the parking

structure where the SMOLKERS park their automobiles, and injected another pesticide, a nerve

gas type pesticide, through the concrete slab into the dirt below. This is not the safest method for

dealing with subterranean termites.

(d) If a person gets the UNREGISTERED POISON in their mouth it can burn their

esophagus, making it impossible to swallow solid food, and creating great pain and discomfort. If

one inhales the UNREGISTERED POISON it can penetrate into the lung, causing lung disease

and/or irritation of the respiratory track. If the UNREGISTERED POISON gets into a person's

mouth it can cause "dry mouth" -- which causes a lessening of the amount of saliva in the mouth,

which can result in tooth decay and penetration of various toxic substances into the body that are

normally destroyed when they come in contact with the saliva in a person's mouth. The drying

action of the UNREGISTERED POISON can cause irritation of the mucous membranes of the

nose and throat, irritation of the respiratory tract and irritation of the skin.

(e) In another housing complex, in which this UNREGISTERED POISON was applied by

HSTCI, shortly after it was applied in the PREMISES, one of the residents exposed to this

UNREGISTERED POISON had the mucous membrane lining of her entire esophagus (the tube

from mouth to stomach) burnt up by its exposure to this material. This caused that person to

-4-

1  have acid reflux, heart burn and to be in constant pain and agony while having other

2  complications.

3      (f) The pesticide applied by HSTCI in the garage area of the PREMISES where the

4  SMOLKERS park their automobiles is an organophosphates.  Organophosphates pesticides attack

5  the brain and nervous system, and are similar to nerve-gas.  They are the leading cause of human

6  poisoning and deaths from pesticides in the US and throughout the world.

7      (g) It was against federal and state law for HSTCI to apply the UNREGISTERED

8  POISON that was applied by HSTCI at the PREMISES.  HSTCI was cited, on or about

9  December 16, 1996, by the Department of Pesticide Regulation of the State of California through

10  the Los Angeles County Agricultural Commissioner for HSTCI's illegal use of this poison, and

11  ordered to cease and desist immediately HSTCI's use of this poison.

12      (h) The methods used by HSTCI in applying pesticides at the PREMISES were reckless

13  as well as illegal.  HSTCI did not use methods or equipment suitable to insure proper application

14  of pesticides.  If HSTCI has properly evaluated the property to be treated and the surrounding

15  properties to determine the likelihood of harm or damage to nontarget private property HSTCI

16  would not have applied HSTCI's UNREGISTERED POISON at the PREMISES because of the

17  reasonable possibility that application of pesticide would result in contamination of the bodies,

18  clothing, furniture, furnishings, carpets, blinds, etc. of persons not involved in the application

19  process, and the creation of a health hazard, preventing normal use of the property.

20      3. Cross-complainants are informed and believe, and based upon such information and

21  belief allege, that cross-defendant W.F. MORRIS (hereinafter MORRIS) is the general manager

22  and alter ego of HSTCI and is a resident of Los Angeles County, California.  HSTCI represents

23  itself, and at all times material herein HSTCI represented itself, as being a general building

24  contractor having 30 years of experience.  That representation is false.  HSTCI is not a licensed

25  contractor, but misrepresents that it is a licensed building contractor by using MORRIS's building

26  contractor's license number 245055 with MORRIS's permission.  When HSTCI and MORRIS

27  made these misrepresentations they knew they were false.  MORRIS and HSTCI made the above

28

1    representations with the intent to defraud and induce the SMOLKERS to act as set forth in
2    paragraph 20 hereof. At the time the SMOLKERS acted, as specified in paragraph 20 hereof, the
3    SMOLKERS did not know the above representations were false and believed they were true. The
4    SMOLKERS acted in justifiable reliance upon the truth of the representations. Cross-defendant
5    RIKK THOMPSON (hereinafter THOMPSON) at all times material herein worked for HSTCI as
6    a State Licensed Inspector, and participated in certain fraudulent misrepresentations and
7    concealment described in paragraph 20 hereof that occurred when HSTCI came back to the
8    SMOLKERS' residence in February 1997 to advise the SMOLKERS on how to deal with the
9    contamination of the SMOLKERS' living quarters.

10    4. Cross-defendant W.R. GRACE & CO. (hereinafter GRACE) is, and at all times
11    material herein was, a Delaware corporation which does business in California through its
12    subsidiary cross-defendant GRACE DAVISION (hereinafter GD). GD is, and at all times
13    material herein was, an unincorporated business unit of W.R. Grace & Co. - Conn. a corporation
14    existing under the laws of a state or states unknown to cross-complaint, which is a business unit
15    of GRACE and whose headquarters is in Baltimore, Maryland. GD manufactured, compounded,
16    illegally exported to California, illegally held for sale in California, illegally sold and distributed to
17    HSTCI the UNREGISTERED POISON illegally applied by HSTCI to the PREMISES.

18    5. Cross-defendant ALBERT J. COSTELLO (hereinafter COSTELLO) at all times
19    material herein was, Chairman, President and Chief Executive Officer of GRACE. Cross-
20    defendant JAMES R. HYDE (hereinafter HYDE) at all times material herein was the President of
21    GD and a Senior Vice President of GRACE. At all times material herein GRACE managed the
22    affairs of GD as part of GRACE being an integrated global operating company.

23    6. That certain property known as 15-63rd Ave., Playa del Rey, California is, and at all
24    times material herein was, a condominium project consisting of common area and six individual
25    condominium units, all as more particularly described, depicted and defined in that certain
26    condominium plan recorded on 3-3-77 as Instrument No. 77-219328 in the official records in the
27    office of the County Recorder of Los Angeles County, California (hereinafter CONDOMINIUM

28

-6-

1  PLAN). Cross-defendant PACIFIC VILLAS HOMEOWNERS' ASSOCIATION (hereinafter
2  HOA) is, and at all times material herein was, an unincorporated association which negligently
3  managed and maintained the common area of said condominium project. For several years prior
4  to the events alleged herein, HOA negligently maintained, managed and operated the common
5  area of said condominium project. In 1996 HOA negligently hired HSTCI, and thereafter
6  negligently monitored and negligently supervised HSTCI's illegal work at the PREMISES and in
7  GARY SMOLKER's condominium unit thereat, and thereafter negligently failed to fix the
8  damage done to the PREMISES and to GARY SMOLKER's condominium unit thereat by
9  HSTCI so as to minimize further losses and injuries to the PREMISES and/or to GARY
10 SMOLKER's condominium unit thereat, and/or to the SMOLKERS and their young daughters
11 and personal property. The membership of the HOA now consists of, and at all times material
12 herein consisted of, each of the individual owners of one of the six condominium units within said
13 condominium project. Cross-complainants are informed and believe and based thereon allege the
14 ownership of the individual condominium units is, and at all times material herein was as follows.

15     7. Cross-defendants MATTHEW JOHN FREDERICKS (hereinafter FREDERICKS) and
16 VIRGINIA K. CIPRIANO (hereinafter CIPRIANO) are now, and at all times material hereto
17 were co-owners of an undivided 1/6 interest in the common area and co-owners of Unit #1 in said
18 condominium project, as shown and defined on the CONDOMINIUM PLAN. FREDERICKS is,
19 and at all times material herein was, President of the HOA. FREDERICKS personally and
20 negligently monitored and supervised the illegal, recklessly negligent work performed by HSTCI
21 in connection with HSTCI's illegal use and application of an UNREGISTERED POISON at the
22 PREMISES and discharge of the UNREGISTERED POISON in GARY SMOLKER's
23 condominium unit, and the application of a nerve gas type pesticide in the garage area of the
24 PREMISES.

25     8. Cross-defendants GERALD W. IVORY (hereinafter IVORY) and ANGELA
26 JORDAN VERDUN (hereinafter VERDUN) are, and at all times material herein were, co-owners
27 of an undivided 1/6 interest in the common area and co-owners of Unit #2 as shown and defined

28

-7-

on the CONDOMINIUM PLAN   VERDUN was president of HOA before FREDERICKS.

During the time period VERDUN was president of HOA the roof and walls of the PREMISES

were allowed to leak due to inadequate care and maintenance.  VERDUN hired an unlicensed

plumber to do plumbing, which plumber did his work in a negligent manner, and ignored and

refused to have needed maintenance and repair work done on the PREMISES all to the

SMOLKERS damage as hereinafter specified.

9.  Cross-defendant JOSEPH A. BAILEY II (herein after BAILEY) is, and at all times

material herein was, the owner of an undivided 1/6 interest in the common area and owner of Unit

#3 as shown and defined on the CONDOMINIUM PLAN.

10.  Cross-complainant GARY SMOLKER is, and at all times material herein was, the

owner of an undivided 1/6 interest in the common area and owner of Unit #4 as shown and

defined on the CONDOMINIUM PLAN.  GARY SMOLKER was not provided with a Business

& Professions Code Section 8538 "Notice to Owner as to Work to be Done" by HSTCI or by the

HOA prior to HSTCI's application of pesticides to the PREMISES.  HSTCI gained entry to

GARY SMOLKER's Unit #4 to apply pesticides through fraud and deceit and under false

pretenses and thereupon discharged pesticides onto Unit #4 and onto the PREMISES without

GARY SMOLKER's consent.  Additionally, HSTCI gained access to and applied pesticides to

the garage area of the PREMISES in which the SMOLKERS park their automobiles under false

pretenses, through fraud and deceit, and without the consent of GARY SMOLKER.

11.  Cross-defendant LANCE J. ROBBINS (hereinafter ROBBINS) is, and at times

material herein was, the owner of an undivided 1/6 interest in the common area and owner of Unit

#5 as shown and defined on the CONDOMINIUM PLAN.

12.  (a) Cross-defendant CAROL D. KAY, TRUSTEE, CAROL D. KAY REVOCABLE

1989 TRUST (hereinafter KAY) is, and at all times material herein was, the owner of an

undivided 1/6 interest in the common area and the owner of Unit #6 as shown and defined on the

CONDOMINIUM PLAN.

(b) Cross-complainants are informed and believe and thereupon allege, that each of the cross-defendants designated herein as ROES 81 through 100, and each of them became an owner of a fee title interest in one or more of the individual condominium units at 15 - 63rd Ave., Playa del Rey, California after July 2, 1997 and is a necessary party for the court to give full relief with respect to abating the nuisance and dangerous condition created by HSTCI injecting poison into the wall voids of the structure and under the ground in the garage area at the PREMISES.

13. Cross-complainants are informed and believe, and based upon such information and belief allege: Cross-defendant TRUCK INSURANCE EXCHANGE (hereinafter TIE) is, and at all times material herein was, a California corporation, transacting business in California as a liability carrier. TIE is a member of Farmers Group, Inc. (FGI), and a member of the Farmers Insurance Group of Companies. Cross-defendant FGI is a Nevada corporation doing business in California. FGI is a management company, not an insurance company. Cross-defendant Truck Underwriters Association (TUA)i s a California corporation, 100% owned by FGI. TUA is a management company, not an insurance company. TUA is, and at all times material herein was, attorney-in-fact for TIE. TUA has a management agreement with TIE whereby TUA manages certain of the business affairs of TIE. Cross-defendant FARMERS INSURANCE GROUP OF COMPANIES (hereinafter FIG) is, and at al times herein mentioned was a business entity transacting business in California as a managing agent and manager of claims for TRUCK and administrator of an inter-company reinsurance agreement with TIE and other members of the Farmers Insurance Group of Companies. TIE participates in a number of involuntary pooling arrangements and cost allocation arrangements with other members of FIG.

14. Cross-defendant TIG INSURANCE COMPANY (hereinafter TIG) is, and at all times herein mentioned was, a California corporation transacting business in Los Angeles County, California. Cross-defendant CUMMINS & WHITE, LLP (hereinafter C&W) is, and at all times

mentioned herein was, a law firm doing business in Los Angeles County, California. Cross-defendant LARRY M. ARNOLD (hereinafter ARNOLD) and cross-defendant LAURA N. MACPHERSON (hereinafter MP) are, and at all times mentioned were, attorneys practicing law in Los Angeles County, California with C&W.

15. Cross-defendant COREGIS GROUP, INC. (hereinafter COREGIS) is a Delaware Corporation transacting business in California as a holding company which owns 100% of the stock of COREGIS INSURANCE COMPANY (CIC) and 100% of the stock of CALIFORNIA INSURANCE COMPANY (CAINCO). Cross-defendant CIC is, and at all times herein mentioned was a Indiana corporation transacting business in California as an insurance company. Cross-defendant CAINCO is, and at all times herein mentioned was, a California corporation transacting business in Los Angeles, California as an insurance company. Now, and at all times herein mentioned COREGIS managed the affairs of CIC. Now, and at all times herein mentioned COREGIS and CIC managed the affairs of CAINCO who did not have any employees. Cross-defendant JOSEPH FEDORUK (FEDORUK) is, and at all times material herein was, an industrial hygienist, headquartered in Orange County, California. FEDORUK was hired by COREGIS at or around the beginning of May 1996 to investigate the contamination introduced into the PREMISES resulting from HSTCI application of pesticides, particularly the contamination in GARY SMOLKER's condominium unit, and to report to the SMOLKERS the nature and extent of the contamination and what should be done to deal with it. RELIANCE INSURANCE COMPANY (hereinafter RELIANCE), and FRONTIER PACIFIC INSURANCE COMPANY (hereinafter FRONTIER) are, and at all times herein mentioned were, business entities transacting business in Los Angeles County, California as insurance companies.

16. At all times herein mentioned HSTCI, W.F. MORRIS, and ROES 1-10, and each of them were engaged in the pest control and general contracting business. As part of this business, defendants, and each of them, stored pesticides, distributed pesticides, delivered pesticides, and sold pest control services -- including termite inspection services, application of pesticides for the elimination and prevention of termite infestations, and the installation of a proprietary termite

1  control system invented by HSTCI. In an effort to obtain more business, in 1996 HSTCI and
2  ROES 1-4, and each of them made, a sale presentation to ALICE SMOLKER. At that time,
3  ALICE SMOLKER was the Treasurer of HOA. During this sales presentation HSTCI and ROES
4  1-4, and each of them, represented to ALICE SMOLKER [A] that HSTCI and its personnel were
5  experienced general contractors expert in pest control, in the methods for controlling termite
6  infestations, in the properties of pesticides and the proper and safe use of pesticides as well as the
7  health and safety hazards associated with pesticides. [B] The pesticides and methods of
8  application HSTCI used could cause no displeasing side effects on people or property; HSTCI
9  used only the safest methods and chemicals available to kill and to control termites; the
10  pesticide(s) HSTCI used in treating and preventing termite infestation were registered and
11  approved for use as pesticides by the California Department of Food and Agriculture and the
12  United States Environmental Protection Agency (hereinafter EPA) and were specifically designed
13  to eradicate existing termite infestations. HSTCI and ROES 1 through 4, and each of them, made
14  similar representations in sales pitches to various members of the HOA. When HSTCI and ROES
15  1 through 4 made these representations they knew these representations were not true or had no
16  reasonable grounds for believing each of these representations were true. These representations
17  were made with the intent for ALICE SMOLKER and members of the HOA to relie on them and
18  to convince ALICE SMOLKER and members of the HOA association that HSTCI should be
19  hired and allowed to treat the PREMISES with a pesticide application and treatment being sold by
20  HSTCI. The true facts were: (1) pesticides used by HSTCI were toxic and hazardous substances
21  which can and do have deleterious effects on humans; (2) HSTCI's method for controlling
22  termites was not the safest method available to control termites; (3) certain pesticides HSTCI
23  proposed be used to kill and control termites were not registered with or approved by the
24  California Department of Food and Agriculture, or the California Department of Pesticide
25  Regulation or the EPA; (4) the pesticide HSTCI advertised as being appropriate to eradicate
26  existing termite infestations is not effective or appropriate for eradicating existing termite
27  infestations. (5) It was illegal to possess or apply the pesticide HSTCI proposed be injected into
28

the walls of the structure at the PREMISES (TRUE FACTS). HSTCI was aware of the TRUE FACTS and intentionally suppressed the TRUE FACTS set forth above, numbered (1) through (5), with the intent to defraud ALICE SMOLKER and members of HOA by inducing the HOA to hire HSTCI to treat the PREMISES with pesticides, and to induce the occupants of the residences thereat to allow HSTCI personnel to gain entry to their residences. ALICE SMOLKER and the HOA were unaware of the falsity of the representations made by HSTCI and ROES 1 through 4, and each of them, and would not have acted as they did if they had known the TRUE FACTS which HSTCI concealed. If ALICE SMOLKER had known the TRUE FACTS she would not have allowed HSTCI to gain entry to her home and she would not have allowed HSTCI to apply the UNLICENSED POISON to the PREMISES. If GARY SMOLKER had known the TRUE FACTS he would not have allowed HSTCI to gain entry to his residence or to apply pesticide to the PREMISES. The concealment or suppression of each of the five facts listed above, caused the SMOLKERS to sustain the damages hereinafter alleged. ALICE SMOLKER's reliance on the misrepresentations described hereinabove caused the SMOLKERS to sustain the damages hereinafter alleged.

17. In reliance on false representations made by HSTCI, HOA hired HSTCI to do the pest control work HSTCI represented would be done on the PREMISES to eradicate termites at the PREMISES and to protect the PREMISES from future termite infestations. GARY SMOLKER was assessed $1,325.33 by HOA to pay his share of the total costs charged by HSTCI for this work, and paid the amount assessed to him to HOA. On or about October 11, 1996 and October 12, 1997, cross-defendants HSTCI and ROES 1 through 10, and each of them, gained entry to the PREMISES and to GARY SMOLKER's condominium by the fraudulent representations and concealment alleged above and illegally entered upon the PREMISES and GARY SMOLKER's condominium , without first obtaining GARY SMOLKER's consent to do so and without first informing GARY SMOLKER in clear understandable terms the work to be performed by HSTCI . ALICE SMOLKER allowed HSTCI and ROES 1 through 10 to gain entry to GARY SMOLKER's condominium because of ALICE SMOLKER's reliance on the false

-12-

representations given to her by HSTCI concerning the safety and legality of the pesticide treatment HSTCI was to carry out on the PREMISES. At said time cross-defendants HSTCI and ROES 1 through 10, and each of them, illegally, negligently and carelessly treated said PREMISES drilling holes through the walls in the interior of GARY SMOLKER's condominium unit and through the interior walls in other owners units, drilling holes in the ceiling of the common hallway of the PREMISES, injecting holes in the exterior walls of the PREMISES, injecting solid particles of toxic synthetic chemical substances suspended in a gaseous medium (hereinafter collectively and singularly referred to as "pesticides"), including, but not limited to, those pesticides listed on Exhibit "A" to this Cross-Complaint, under high pressure into the voids between the walls in the PREMISES, and not sealing all the injection holes in the walls and ceilings that HSTCI had drilled, including injection holes drilled in the interior walls of GARY SMOLKER's condominium and injection holes drilled through an exterior wall or walls. At and before the time HSTCI did this work, there were readily apparent holes, cracks and openings in interior walls in GARY SMOLKER's condominium through which it was obvious pesticide injected under high pressure into the wall voids would flow through the walls and wall voids back into the living space of GARY SMOLKER's condominium unit. Certain of the pesticides used by HSTCI were not registered and approved for use as a pesticide by the California Department of Food and Agriculture, the California Department of Pesticide Regulation or the EPA and as a result thereof upon the UNREGISTERED POISON filling-up the wall voids between the walls and floors and ceilings in the PREMISES caused the PREMISES to become contaminated with an UNREGISTERED POISON and the value of the PREMISES, and the value of each of the condominium units therein, to immediately become depreciated, and each condominium unit owner and the HOA to were caused to become potentially liable for any injury to a third party resulting from their ownership, or possession and/or use of the unregistered pesticide now residing in the wall voids of the PREMISES. On or about October 15, 1996 HSTCI sent HOA a bill in the amount of $7,2952.00 for work performed on or about Oct. 11 and 12, 1996, and a Notice of Work Completed and Not Completed which indicated that the work completed had

-13-

been done in conformance with the representations previously made by HSTCI.    In reliance on these additional false representations, HOA paid HSTCI's bill dated October 15, 1996 in full on October 21, 1996 by HOA's check number 1410 in the amount of $7,952.00.  The check was signed by ALICE SMOLKER.  At that time ALICE SMOLKER did not know that HSTCI had applied an UNREGISTERED POISON in the PREMISES or that the pesticide applied in the garage area was a nerve gas type insecticide or that HSTCI never should have applied its pesticide in the PREMISES in the fist place.  If ALICE SMOLKER had known of the falsity of the representations made by HSTCI or the TRUE FACTS or that HSTCI's workmanship was shoddy or that HSTCI had failed to exercise reasonable precautions to avoid contamination of the living quarters of her residence, she would not have signed that check or paid that bill.

18.  The pesticides used by cross-defendants, and each of them, in their treatment of the PREMISES were of a toxic and hazardous nature to humans, a health hazard, when used independently and/or in combination.  During their treatment of the PREMISES defendants, and each of them, illegally, negligently, recklessly, and carelessly failed to exercise reasonable precautions to avoid contamination of the SMOLKERS' living quarters with said pesticides, and said defendants, and each of them, illegally, negligently, recklessly and carelessly permitted said pesticides to enter the SMOLKERS' living quarters.  Upon entering the SMOLKERS' living quarters the pesticide contaminated the air, floors, walls, air-handling equipment, carpets upholstery, furniture, bedding, Judi and Leah's stuffed animals, and other objects located in the SMOLKERS' living area with pesticide, and made such objects become sources of continuing pesticide exposure.  The existence of pesticide in the SMOLKERS' living quarters and garage area has resulted in the SMOLKERS and their two young daughters, Judi and Leah, their dog, Caramel, and their house plants living in close proximity to the pesticide and being continuously exposed to the pesticide.  The existence of the pesticide in the SMOLKERS' living quarters damaged the SMOKERS' personal property, killed and injured house plants located thereat and made the furniture, carpets, etc. and made these items of personal property become a source of continuing contact by the inhabitants of the SMOLKER's living quarters with the pesticide in the

-14-

1    SMOLKERS' living quarters. All items of personal property contaminated with either the
2    UNREGISTERED POISON or the nerve-gas type pesticide need to be removed and replaced all
3    to the SMOLKERS' expense and loss in an amount to be proved at time of trial.

4        19. As a proximate result of being continuously exposed to the pesticide GARY
5    SMOLKER, JUDI SMOLKER, LEAH SMOLKER, and Caramel have been denied of their
6    peaceful possession, use and enjoyment of their home, have been made ill, have been injured and
7    hurt in their health, strength and activity, sustaining injury to their nervous system and person,
8    have suffered various physical injuries which have caused them great mental, physical and nervous
9    pain and suffering. As a proximate result of being continuously exposed to the pesticide ALICE
10   SMOLKER has been denied the peaceful possession, use and enjoyment of her home. Seeing the
11   physical injury, pain and suffering, endured by GARY SMOLKER, JUDI SMOLKER, LEAH
12   SMOLKER and Caramel has caused great mental and nervous pain and suffering and emotional
13   damage to ALICE SMOLKER. As a result of such injuries the SMOLKERS have suffered
14   general damages within the jurisdiction of this court in an amount to be proved at time of trial.

15       20. Commencing on or about Dec. 13, 1996, HSTCI began sending crews to fix and
16   clean-up GARY SMOLKER's condominium. Cross-defendants HSTCI, W.F. MORRIS, and
17   ROES 5 through 15, and each of them, came back to the SMOLKERS' home to do repair and
18   clean-up work after the GARY SMOLKER began to experience physical injuries and health
19   problems as a result of the pesticide contamination in the SMOLKERS' home. At that time
20   HSTCI and ROES 5 through 15, and each of them, represented they would "find" "patch" and
21   "seal" holes, cracks and openings in the structures surrounding the SMOLKERS' living area
22   through which the pesticide had entered the living area of the SMOLKERS' residence. They
23   opined that pesticide was entering the living areas of the SMOLKERS' residence through
24   openings that allowed the pesticide to be blown in from the wall voids into the living quarters of
25   the SMOLKERS' residence. They represented that they would clean up the pesticide dust
26   particles that had gotten onto the furniture, plants, carpets, and into the air of the condominium,
27   and that all their work would be performed in a professional workmanlike manner. In reliance on

28

-15-

these representations the SMOLKERS allowed the crews from HSTCI entry to their living

quarters. Clean-up and fix-it crews from HSTCI came back to the SMOLKERS' home on Dec.

12, 1996, Dec. 23, 1996, and on Jan. 17, 1997. The work they did was not done in a professional

and workmanlike manner. The work they did was sloppy and further damaged GARY

SMOLKER's condominium by creating unsightly caulk marks on the walls, ceilings and window

frames. The HSTCI "fix-it" crews did not patch and seal all holes, cracks and openings in the

walls and ceilings, or remove the pesticide particles from the upholstered furniture, bedding,

carpets, etc. The HSTCI "fix-up" crew members repeatedly represented to GARY SMOLKER

that the pesticide injected into the wall voids had no deleterious effect on humans, was not

destructive or harmful to humans and did not and could not cause injury to humans or impairment

of human health. The HSTCI crews abandoned their job before they completed their work. W.F.

MORRIS and RIKK THOMPSON came to inspect and to fix the pesticide problem at the

SMOLKERS' residence on Feb. 20, 1997 and Feb. 24, 1997, but did not do any clean-up or "fix-

it" work. At that time they falsely represented that the 3 micron particles of synthetic amorphous

silica injected into the wall voids surrounding the living quarters of the SMOLKERS' residence

and into the spaces between ceilings and floor above, were visible to the naked eye, and if they

couldn't be seen on carpet or furniture they were not there. They also falsely represented that

synthetic amorphous silica gel particles injected into the walls voids would have not effect on a

human who came in contact with it, got it on his or her skin, or inhaled it. In March 1997 GARY

SMOLKER contacted GRACE and GD about the silica gel that was injected into the walls of his

condominium by HSTCI and requested information on how to remove the silica gel from his

condominium. Thereafter a series of faxes and letters ensued between GARY SMOLKER on the

one hand, and GRACE, GD, COSTELLO and HYDE on the other hand. This correspondence

went on during March, April, May, and July 1997. During these communications GRACE, GD,

COSTELLO and HYDE gave imprecise, evasive and misleading answers to questions posed to

them concerning the dangers inherent in their product, and misrepresented and concealed the

health and safety features, regulatory approval status, and nature of the product they sold

1   (SYLOID 244) to HSTCI which HSTCI, in turn, applied in and contaminated GARY

2   SMOLKERS' condominium and the PREMISES with in connection with injecting this pesticide

3   into the wall voids of the PREMISES. In May, 1997, GARY SMOLKER was contacted by

4   FEDORUK. FEDORUK was hired by COREGIS to ascertain the extent of the pesticide

5   contamination and to advise the SMOLKERS and COREGIS how to handle the pesticide

6   contamination. GARY SMOLKER was led to believe that COREGIS was the insurer for HSTCI

7   and GARY SMOLKER is and was a third party beneficiary and intended insured under HSTCI's

8   liability insurance policy and under bonds issued to HSTCI and to MORRIS. GARY SMOLKER

9   had several conversations with FEDORUK from May through July 1997. FEDORUK was

10  apprised that GARY SMOLKER and the SMOLKERS' children were in physical agony from the

11  effect of the pesticides applied by HSTCI in the PREMISES and invited to inspect GARY

12  SMOLKER's condominium on several occasions, but refused to do so. FEDORUK promised to

13  advise GARY SMOLKER had to test for the amount of synthetic amorphous silica in the air in

14  GARY SMOLKER's condominium and to send GARY SMOLKER a copy of NIOSH Method

15  7501 for analyzing amorphous silica, but never did so. FEDORUK refused to give any advise on

16  how to deal with the pesticide contamination and refused to answer questions posed to

17  FEDORUK on how FEDORUK proposed to measure the extent of pesticide contamination in

18  GARY SMOLKER's condominium. FEDORUK did not warn the SMOLKERS of the dangers of

19  coming in contact with or the dangers of inhaling the synthetic amorphous silica gel injected into

20  the SMOLKERS' living quarters by HSTCI. FEDORUK dragged out his dealings with the

21  SMOLKERS and set the SMOLKERS up to be ambushed by COREGIS, CIC, CAINCO, TIE,

22  and HSTCI.

23       21. Cross-defendants HSTCI, W.F. MORRIS, RIKK THOMPSON, and ROES 1 through

24  15, and each of them, have known since HSTCI made its sale presentation to ALICE SMOLKER

25  and since HSTCI's application and use of pesticides at the PREMISES that prolonged exposure

26  or contact with the pesticides when used independently, or in combination would be dangerous to

27  their health. These cross-defendants knew or should have known it was dangerous to breathe or

28

-17-

to have the pesticides come in contact with mouth, nose, eyes, throat or skin. Yet at all times to and including the present, these cross-defendants and GRACE, GD, COSTELLO, HYDE and FEDORUK have concealed this knowledge from the SMOLKERS. Instead HSTCI, MORRIS, TIE, TUA, and FIG have advised the SMOLKERS and the HOA that it was safe to live in an environment that had been treated with the pesticide, and that the SMOLKERS' bodies and their children's bodies would have no adverse reactions to the pesticide in their home. Cross-defendants GRACE, GD, COSTELLO, and HYDE advised the SMOLKERS to rely on HSTCI's advice. FEDORUK acted as if there was no danger to inhale or coming in contact with the amorphous silica gel applied by HSTCI in the PREMISES during his dealings with the SMOLKERS. HSTCI, W.F. MORRIS, RIKK THOMPSON, and ROES 1 through 15, and each of them, have known since commencement of the use of the pesticide at the PREMISES the pesticide was not registered with or approved for use by the California Department of Food and Agriculture or the EPA and it was against the law to deliver or sell or to possess or to use the pesticide with which the PREMISES were treated. GRACE, GD, COSTELLO, HYDE and FEDORUK should have known HSTCI's use of the UNREGISTERED POISON in the PREMISES was illegal and a health danger when they communicated with the SMOLKERS. Yet at all times to and including the present HSTCI, W.F. MORRIS, RIKK THOMPSON, GRACE, GD, COSTELLO, HYDE, FEDORUK and ROES 1 through 15 concealed this knowledge from the SMOLKERS. At all times from when HSTCI, W.F. MORRIS, RIKK THOMPSON, GRACE, GD, COSTELLO, HYDE, FEDORUK, and ROES 1 thorough 15, and each of them, learned that the SMOLKERS were suffering from the ill health effects caused by coming in contact with the pesticide to the present, they failed to inform the SMOLKERS that the health problems the SMOLKERS and their children and dog were experiencing were caused by exposure to the pesticides, and failed to take any measures to cure or mitigate the damages and injuries and illness and adverse physical reactions to the pesticides being suffered by GARY SMOLKER, JUDI SMOLKER, and LEAH SMOLKER, or to provide any helpful information on how to handle the pesticides or how to remove the pesticides from the SMOLKERS' home. At no time

-18-

prior to December, 1996, were the SMOLKERS, or either of them, aware, or have knowledge or have reason to suspect injuries they had suffered were caused by the wrongdoing of cross-defendants HSTCI, W.F. MORRIS, RIKK THOMPSON, and ROES 1 through 15.

22. Each of the acts and omissions described hereinabove, were done falsely and fraudulently by HSTCI, MORRIS, THOMPSON, and ROES 1 through 15, with the intent to induce the HOA to hire HSTCI to treat the PREMISES for termites, to induce ALICE SMOLKER to allow HSTCI to have access to the PREMISES and to HSTCI's bill to HOA for treatment of the premises and to induce ALICE SMOLKER to allow HSTCI to have entry to GARY SMOLKER's condominium; and thereafter to cover-up the illegal activities of HSTCI, MORRIS, THOMPSON, and ROES 1 through 15. The acts and omissions of GRACE, GD, COSTELLO, HYDE and FEDORUK described hereinabove, were carried out as part of a scheme, plan and conspiracy to cover-up the danger of the pesticide applied by HSTCI at the PREMISES, to cover-up HSTCI's responsibility for the damages suffered by the SMOLKERS; to distract the SMOLKERS, and to make it difficult for the SMOLKERS to have time to prosecute a lawsuit against HSTCI and/or against the other cross-defendants named in this cross-complaint. The SMOLKERS were ignorant of the risks involved in HSTCI's application of pesticides in the PREMISES and in GARY SMOLKER's condominium thereat. The SMOLKERS would not have allowed HSTCI to treat the PREMISES with the pesticide, or allowed HSTCI to perform "repair" work and clean-up work in their home, or to give the SMOLKERS the run-around HSTCI, GRACE, GD, COSTELLO, HYDE and FEDORUK gave the SMOLKERS if the SMOLKERS had known the facts. The SMOLKERS asked HSTCI, MORRIS, GRACE, GD, COSTELLO, HYDE, TIE, FIG, HOA, COREGIS, CIC, CAINCO, and each of them, to remediate the PREMISES, to clean the carpets, drapes and furniture contaminated with pesticide, to remove all pesticide that entered the SMOLKERS' living quarters, and to remove and replace all personal property belonging to the SMOLKERS contaminated with the pesticide. Each of these cross-defendants refused to do so.

23. As a result of the acts and omissions of HSTCI, MORRIS, THOMPSON, GRACE, GD, COSTELLO, HYDE, FEDORUK and ROES 1 through 15, and each of them, as herein alleged, GARY SMOLKER's, JUDI SMOLKER's, and LEAH SMOLKER's illnesses, and injuries as above stated, were aggravated thereby further injuring GARY SMOLKER, JUDI SMOLKER, and LEAH SMOLKER, in their health, strength and activity, and causing further injury to their body and shock and injury to their nervous system, all of which injuries have caused and continue to cause the SMOLKERS, and each of them, great mental, physical and nervous pain and suffering and the SMOLKERS, and each of them, have been damaged in a sum within the jurisdiction of this court.

24. As a further proximate result of the acts and omissions of HSTCI, MORRIS, THOMPSON, GRACE, GD, COSTELLO, HYDE, FEDORUK and ROES 1 through 15, and each of them, alleged herein, the SMOLKERS have been required to spend money and incur obligations, and will continue to spend money and incur obligations, for medical services, dental services, X-rays, drugs and sundries reasonably required in the treatment and relief of the injuries herein alleged, and will be involved in litigation with their neighbors, their insurance carrier, HOA, etc., all to their damage in an amount to be proved at trial. As a further proximate result of the acts and omissions of HSTCI, MORRIS, THOMPSON, GRACE, GD, COSTELLO, HYDE and ROES 1 through 15, and each of them, alleged herein, the SMOLKERS have been required to spend money and incur obligations, and will continue to spend money and incur obligations, for replacement of contaminated personal property (i.e. bedding, furniture, etc.), for hauling away and disposal of contaminated property, for work done and to be done in an attempt to clean-up and remove pesticide contamination from the air in their living quarters, from their carpets, and other soft goods, etc., and will incur expenses and charges for repair and construction work and painting to repair the sloppy job "fix-up" "caulking work done by HSTCI's fix-up crews and will incur further expenses to fill and patch openings in walls and ceilings and to seal walls and ceilings in an attempt to minimize the amount of pesticide that can escape from the voids between the walls and ceilings of the PREMISES and thereafter enter into the SMOLKERS' living quarters.

As a result of the contamination of the PREMISES by HSTCI's pesticide it is necessary to, and when the Smolkers have enough money they will, remove interior walls of GARY SMOLKERS' condominium , vacuum out pesticide residing in the wall voids, and then replace the insulation and drywall and repaint same, remove and replace duct work and air-handling equipment contaminated with pesticide, all to the SMOLKERS' damage in a sum to be proved at trial. As a further and proximate result of the conduct of HSTCI, GRACE, and GD, herein alleged, the SMOLKERS were prevented from attending to their usual occupation and lost earnings and earnings capacity and are informed and believe and thereon allege that they will be prevented from attending to their usual occupation in the future and will thereby sustain future loss of earnings all to their damage in an amount to be proved at trial. As a further result of the conduct of cross-defendants and each of them, the SMOLKERS have been threatened by their neighbors, the SMOLKERS have been forced to become involved in controversies with other parties to this litigation and have been prevented them from attending to their usual occupation and have lost earnings and earning capacity as a direct result thereof. The SMOLKERS are informed and believe and thereupon allege that as a direct result of the conduct of cross-defendants and each of them, the SMOLKERS will continue to be involved in controversies with other parties to this litigation and will lose further earnings and earning capacity as a result thereof. As a direct result of the conduct of cross-defendants and each of them, the quality of the SMOLKERS life has been diminished, the SMOLKERS have lost the free and comfortable use of their personal property and their ability to enjoy the peaceful possession, use and enjoyment of their home, and the value of GARY SMOLKER's condominium has been depreciated and stigmatized, all to the SMOLKERS damage in a sum to be proved at time of trial.

24(a)  As additional damages against cross-defendants HSTCI, MORRIS, GRACE, and GD, and each of them, cross-complainants allege these cross-defendants and each of them were guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 in doing the acts described herein, and cross-complainants and each of them, should recover, in addition to actual

1   damages, damages to make an example of and to punish cross-defendants HSTCI, MORRIS,

2   GRACE and GD, and each of them.

3                                    SECOND CAUSE OF ACTION

4                    (Against HSTCI, MORRIS, ROES 1 through 15, and FEDORUK

5                       for Negligence and Violation of Statutory Duties)

6        25. The SMOLKERS reallege and incorporate herein by reference each and every

7   allegation contained in paragraphs 1 through 24, inclusive, as through fully set forth herein.

8        26. Under California law and pursuant to the terms of the HSTCI contract with HOA,

9   HSTCI was required to inspect the PREMISES and GARY SMOLKER's condominium before

10  applying any pesticides (1) to evaluate whether it would be safe to apply pesticides in the

11  PREMISES and in GARY SMOLKER's condominium unit, (2) to determine whether there is a

12  reasonable possibility of contamination of the bodies or clothing of persons not involved in the

13  application, (3) to determine if there is a reasonable possibility of contamination of nontarget

14  private property, and (4) to determine if there were any holes, cracks, crevices, or openings in

15  GARY SMOLKER's condominium unit through which the pesticide could enter into the living

16  quarters of GARY SMOLKER's condominium unit during or after the application of pesticide. If

17  HSTCI discovers that there are any walls, or ceilings or floors that have cracks or openings that

18  may allow the silica aerogel dust particles to enter a condominium unit from the wall voids of a

19  unit that is being serviced, HSTCI is to not apply its pesticide. HSTCI did not carry out the

20  inspection of GARY SMOLKER's condominium unit it was required to carry out before applying

21  pesticide in the PREMISES and before applying pesticide in GARY SMOLKER's condominium

22  unit, or if HSTCI carried out an inspection it carried out a grossly negligent and recklessly

23  negligent inspection. At the time HSTCI treated the PREMISES and at the time HSTCI treated

24  GARY SMOLKER's condominium there were holes, cracks and openings in walls, ceilings and

25  columns in GARY SMOLKER'S condominium unit that might allow the aerogel dust particles

26  being applied by HSTCI to the PREMISES and in GARY SMOLKER's condominium unit to

27  enter GARY SMOLKER's condominium unit from the wall voids of the units being serviced.

28

Under California law a pesticide applicator is required to protect persons, animals and property evaluating the property to be treated prior to and while applying a pesticide to determine the likelihood of harm or damage. No pesticide application is to be made or continued when there is a reasonable possibility of contamination of the bodies or clothing of persons not involved in the application process; there is a reasonable possibility of damage to nontarget private property; or there is a reasonable possibility of contamination of nontarget private property. No person is to directly discharge a pesticide onto a property without the consent of the owner or operator of the property. On or about October 11, 1996 and October 12, 1996, HSTCI and ROES 1 through 10, and each of them, entered upon the premises located at 15-63rd Ave., Playa del Rey, California, hereinbefore described, and said cross-defendants, and each of them, negligently and carelessly treated said property with toxic pesticides and chemicals, including, but not limited to those set forth in Exhibit "A" attached to this cross-complaint. Said cross-defendants, and each of them, negligently drilled holes in the interior walls and ceilings in GARY SMOLKER's condominium unit and in the exterior walls surrounding GARY SMOLKER's condominium unit, negligently injected an UNREGISTERED POISON into the wall voids surrounding GARY SMOLKERS' condominium unit through said holes, and directly discharged the UNREGISTERED POISON into and in the living quarters in GARY SMOLKER's condominium unit without GARY SMOLKER's consent, negligently failed to seal all of the holes that they had drilled in the walls and ceilings, and negligently and carelessly failed to take appropriate steps to assure that the pesticide could not and would not escape from the voids between the walls into which it was being injected. Said cross-defendants, and each of them, carelessly and negligently permitted said toxic pesticides and chemicals to enter the SMOLKERS' living quarters, thereby contaminating and damaging the air within said living quarters, the personal and real property within said living quarters, and the people living in said living quarters, and made the SMOLKERS' living quarters unhealthy to live in. Prior to doing this work HSTCI did not provide GARY SMOLKER with clear written notice of the work to be done or any notice of work to be done. Nobody provided GARY SMOLKER with notice of the work to be done by HSTCI. In doing the acts herein

-23-

described HSTCI and ROES 1 through 15 violated several statutes and laws regulating the sale, use, possession and application of pesticides, including but not limited to California Food and Agriculture Code Sections 12993, 12995, and 11737; California Business & Professions Code Sections 8538, 8553, 8638, 8641, 8642, 8643, 8648, and 8695; California Code of Administrative Regulations, Title 3 Division 6 Sections 6600, 6614, and 6616; California Penal Code Sections 374.8, and 594 (a); and the following federal laws: 7 U.S. Code Section 136a et seq., and 18 U.S. Code Section 1962. As a direct result of the negligent and unlawful conduct of HSTCI, MORRIS and ROES 1 through 15, and each of them, the SMOLKERS suffered earning loss, loss of earning capacity, loss of use of property, property damage, medical, dental and veterinary expenses, general damage, and interference with their relations with their neighbors, and to become embroiled in this litigation, all to the SMOLKERS' damage in an amount to be proved at trial which is within the jurisdiction of this court.

27. At all times herein mentioned, HSTCI, MORRIS and ROES 1 through 10, and each of them, carelessly and negligently released, dispensed, applied, and otherwise handled the toxic chemicals and pesticides in and about the PREMISES so as to create a dangerous, hazardous, unsafe and unhealthy condition in the SMOLKERS' living quarters and the garage area in which the SMOLKERS park their automobiles, while said toxic chemicals and pesticides were under the operation, management, and control of HSTCI, MORRIS and ROES 1 through 10, and each of them. Further the new holes drilled in the walls and ceilings of the structure surrounding GARY SMOLKER's condominium unit by HSTCI and the holes and cracks and openings in the walls and ceilings that have not been sealed and patched provided and still provide a path of entry for wind and the pesticide injected into the wall voids to enter into the SMOLKERS' living quarters. After the pesticide application, from time to time the pesticide in the wall voids has been, and can still be, blown into the SMOLKERS' living quarters. HSTCI and ROES 1 through 10, and each of them, knew of such dangerous condition and nevertheless failed to warn the SMOLKERS, or either of them, of said defective, dangerous, hazardous and unsafe condition, although HSTCI, MORRIS, and ROES 1 through 10, and each of them, knew, or in the exercise of ordinary care

1  should have known, said dangerous condition hereinabove described existed. Had FEDORUK
2  conducted the investigation he was hired to do and represented that he would do, FEDORUK
3  would have discovered the dangerous conditions described herein and apprised the SMOLKERS
4  how to deal with them and COREGIS or CIC and/or CAINCO would have paid to have these
5  problems fixed.

6      28. As a result of said negligent and otherwise unlawful conduct of HSTCI, MORRIS,
7  and ROES 1 through 10, and each of them, the SMOLKERS were required and did employ
8  physicians and surgeons and dentists to examine, treat and care for GARY SMOLKER, JUDI
9  SMOLKER and LEAH SMOLKER, and a veterinarian to examine, treat and care for Caramel,
10  and did incur medical, dental and veterinary expense and GARY SMOLKER has been hurt and
11  injured in his health, strength and activity, all of which injuries have caused GARY SMOLKER
12  great physical mental and nervous pain and suffering. As a result of such injuries, GARY
13  SMOLKER has suffered general damages in amount according to proof. As a result of seeing
14  GARY SMOLKER suffered injury to his health and body ALICE SMOLKER suffered emotional
15  distress which caused her to suffer mental and nervous pain and suffering. As a result of such
16  injuries ALICE SMOLKER has suffered general damages in an amount according to proof. As a
17  result of said negligent and otherwise unlawful conduct of HSTCI, MORRIS, and ROES 1
18  through 10, and each of them, the SMOLKERS further sustained property loss and property
19  damage to their personal and real property and lost earnings, and are informed and believe, and
20  based thereon, allege they will continue to incur medical, dental and veterinary expenses, real and
21  personal property losses and loss of earnings. The exact amount of such pecuniary losses,
22  medical expenses, dental expenses, veterinary expenses, has not been ascertained at this time. The
23  Smolkers will amend this cross-complaint to show such loss when ascertained or will offer proof
24  thereof at the time of trial. As a direct result of the negligence of FEDORUK the SMOLKERS
25  have had to live in their unhealthy premises from June 1997 until the premises are made free of the
26  pesticide, and have had to go through this litigation, all to the SMOLKERS damage in an amount
27  to be proved at trial.

28

THIRD CAUSE OF ACTION

(Against PACIFIC VILLAS HOMEOWNERS' ASSOCIATION
and ROES 16 through 25 for Negligence)

29. The SMOLKERS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 28, inclusive, as though fully set forth herein.

30. At all times herein mentioned, cross defendants PACIFIC VILLAS HOMEOWNERS' ASSOCIATION (hereinafter HOA) and ROES 16 through 25, and each of them, carelessly and negligently managed, operated, controlled, exercised control over, repaired, failed to repair, inspected, failed to inspect and otherwise carelessly and negligently supervised and monitored in all respects the common area of the PREMISES located at 15-63rd Ave., Playa del Rey, California, including but not limited to the three story frame, stucco and wood siding building structure and attached semi-subterranean garages located thereat and the surrounding property adjacent thereto, and allowed said property to be in a dangerous, defective, and unsafe condition, in that among other things, and without limitation, said cross-defendants knew or should have known that the roof and walls of the PREMISES were in need of repair to prevent damage from rain, wind, climatic temperature changes, pesticide injected into the wall voids by HSTCI and that there were holes, openings, and cracks in the interior walls of condominium unit #4 and that said holes, cracks and openings opened into the SMOLKERS' living quarters such that if pesticide particles were injected under pressure into the wall voids between the walls surrounding the SMOLKERS' living quarters or subjected to wind pressure or temperature differential while in said wall voids said particles would be blown into, or explode into the SMOLKERS' living quarters as particles suspended in a gaseous medium (a smoke) and be circulated in the SMOLKERS' living quarters as falling objects, and that a wind-storm or climatic temperature changes could cause disturbance of pesticide particles lodged in the voids between the interior and exterior walls surrounding the SMOLKERS' living quarters with the result that said pesticide particles would be blown into the SMOLKERS' living quarters; and said cross-defendants failed to take any steps to correct this dangerous condition or to warn the

-26-

1  SMOLKERS of the dangerous condition they were or would be exposed to as a result of
2  HSTCI's pesticide treatment. HOA failed to prevent the toxic pest control treatment which HOA
3  knew or should have known was occurring on said property from endangering the SMOLKERS
4  or contaminating the SMOLKERS' property and persons. HOA negligently allowed and
5  negligently caused the SMOKERS to be exposed to toxic pesticides, chemicals and smoke which
6  caused the SMOLKERS to suffer injuries, losses and damages hereinafter described.

7       31. On or about October 11, 1996 and October 12, 1996 the SMOLKERS had reason to
8  enter their living quarters at the PREMISES. While on said property on or about October 11,
9  1996 and October 12, 1996 and for months thereafter, as a result of the negligence of HOA and
10 ROES 16 through 25, and each of them, pesticide particles were emitted into the SMOLKERS'
11 living quarters, located at the PREMISES and got onto the SMOLKERS and their property, and
12 caused the SMOLKERS and their children and their property to be continuously exposed to toxic
13 pesticide particles, gases and smoke. Said exposure to toxic pesticide particles, gases and smoke
14 caused the SMOLKERS and the SMOLKERS' children to suffer injuries to their person and
15 property.

16      32. As a result of the injuries the SMOLKERS suffered due to said negligent conduct of
17 HOA and ROES 16 through 26, and each of them, the SMOLKERS were required and did
18 employ physicians and surgeons and dentists to examine, treat and care for GARY SMOLKER,
19 JUDI SMOLKER and LEAH SMOLKER, and a veterinarian to examine, treat and care for
20 Caramel, and did incur medical, dental and veterinary expense. GARY SMOLKER's teeth and
21 body were injured and he has been hurt and injured in his health, strength and activity, all of which
22 injuries have caused GARY SMOLKER to have great physical mental and nervous pain and
23 suffering. As a result of such injuries, GARY SMOLKER has suffered general damages in
24 amount according to proof. JUDI SMOLKER and LEAH SMOLKER were also injured in their
25 health strength and activity as a result of being exposed to and coming in contact with said
26 pesticide. As a result of seeing GARY SMOLKER, JUDI SMOLKER, and LEAH SMOLKER
27 suffer injury to their bodies, health, strength and activity, ALICE SMOLKER suffered emotional
2X

distress which caused her to suffer mental and nervous pain and suffering. As a result of such injuries ALICE SMOLKER has suffered general damages in an amount according to proof. As a result of said negligent and careless conduct of HOA and ROES 15 through 26, and each of them, the SMOLKERS also sustained property loss and property damage and loss of earnings. The SMOLKERS are informed and believe, and based thereon, allege they will continue to incur additional medical, dental and veterinary expenses, real and personal property losses and loss of earnings. The exact amount of such pecuniary losses, medical expenses, dental expenses, veterinary expenses, etc. has not been ascertained at this time. The Smolkers will amend this cross-complaint to show such loss when ascertained or will offer proof thereof at the time of trial.

33. The pesticide which resides between the walls in the PREMISES belongs to each individual condominium owner and is under the control of HOA. The escape of the pesticide from between the walls into the SMOLKERS' living quarters constitutes a trespass on the SMOLKERS' living quarters and a battery on the bodies of the SMOLKERS and their children. On or about April 8, 1997 the SMOLKERS made demand upon the HOA to get rid of the pesticide in the walls and wall voids and in their living quarters. Thereafter the SMOLKERS made repeated demands on the HOA to remove the pesticide for the walls, in between the wall voids and from GARY SMOLKER's condominium unit. HOA refused to remove the pesticide and continues to refuse to remove the pesticide. In September 1997 GARY SMOLKER made demand upon the other condominium owners to remove the pesticide applied by HSTCI removed from the entire building or to purchase his condominium. The owners rejected this demand.

## FOURTH CAUSE OF ACTION

(Against GRACE, GD, COSTELLO, HYDE, and ROES 26-35

for Negligence and Violation of Statutory Duties)

34. The SMOLKERS incorporate by reference as through fully set forth herein Paragraphs 1 through 33 with the same force and effect as though said paragraphs were set forth fully at this point.

-28-

35. GRACE, GD and ROES 26 through 35, and each of them, are, and at all times herein mentioned were, engaged in the business of manufacturing, compounding, designing, synthesizing, assembling, mixing, combining, dispensing, distributing, storing, exporting, selling and otherwise handling pesticides and other toxic chemicals, including but not limited to silica gel under the trade name SYLOID 244, hereinafter "said Product", and providing services relative to the marketing, storing, distributing, shipping, exporting, modifying, servicing, mixing, combining, packaging, dispensing, selling, applying and handling said Product, and further providing technical and marketing advisory services relative to the sale, mixing, use and handling of said Product so that said Product could be used in the general public.

35. At all times material hereto, the cross-defendants, and each of them, sued in this Cause of Action, knew, or in the exercise of reasonable care should have known, that said Product hereinafter described and the component parts thereof were of such a nature that if negligently manufactured, designed, distributed, packaged, labeled, inspected, handled, and instructed with respect to, and then used for, the purpose for which it was intended, said Product and the component parts thereof were likely to injure a person who came into contact with "said Product" as it was being used or who was within the zone of danger of "said Product."

36. On or about October 11, 1996, on or about October 12, 1996, and thereafter while said Product was being used by HSTCI, ROES 1 through 15, HOA, and each of them, said Product functioned in a manner so as to cause injury to the SMOLKERS as described herein. As a direct result of the negligent acts and omissions and illegal conduct of the cross-defendants and each of them sued in this Cause of Action the SMOLKERS suffered personal injuries, damage to their persons and property, earnings loss, loss of earning capacity, loss of use of their property, medical expenses, bad relations with their neighbors and emotional distress, all to the SMOLKERS loss in an amount to be proved at trial.

37. The cross-defendants, and each of them, sued in this Cause of Action, so negligently and illegally manufactured, designed, distributed, inspected, labeled, instructed and/or assisted in the assembly, marketing, sale, servicing, mixing, combining, synthesizing, dispensing, distributing,

-29-

1 | exporting, shipping and handling of said Product and the component parts thereof so that the
2 | same were defective, dangerous and unsafe for the use and purpose for which they were intended
3 | when used, handled and applied as recommended by cross-defendants, and each of them sued in
4 | this Cause of Action; in that there were inadequate, ineffective, and insufficient safeguards to
5 | prevent said Product from causing those injuries to the SMOLKERS and their children and their
6 | property which, in fact, occurred as a result of the said negligence of the cross-defendants and
7 | each of them, sued in this Cause of Action.

8 | 38. The defective, faulty, unsafe, hazardous, and dangerous character of said Product and
9 | its component parts rendered the same unsafe for the use intended, reasonably foreseeable, and
10 | recommended by cross-defendants, and each of them, sued in this Cause of Action, and such facts
11 | were know to the cross-defendants, and each of them, sued in the Cause of Action, or could have
12 | been discovered in the exercise of reasonable care by cross-defendants, and each of them, sued in
13 | this Cause of Action. Furthermore, said cross-defendants, and each of them, failed to warn the
14 | SMOLKERS of the defective, faulty, unsafe, hazardous, and dangerous character of said Product
15 | and failed to warn the SMOLKERS that exposure to or breathing in said Product could and
16 | would cause serious injuries. The distribution and sale of such product by GRACE and/or GD to
17 | HSTCI was done in violation of U.S. Code Section 136a and in violation of California Food and
18 | Agriculture Code Section 12993.

19 | ### FIFTH CAUSE OF ACTION

20 | (Against GRACE, GD, and ROES 26 through 35 for

21 | Strict Liability)

22 | 39. The SMOLKERS incorporate herein by reference as though fully set forth herein
23 | Paragraphs 1 through 38 with the same force and effect as though said paragraphs were set forth
24 | fully at this point.

25 | 40. At all times herein mentioned cross-defendants, and each of them, sued in this Cause
26 | of Action, manufactured, designed, distributed, mixed, combined, released, dispensed, inspected,
27 | failed to inspect, advertised, labeled, instructed, advised, handled and/or assisted in the assembly,

28 |

1   marketing, sale and servicing of said Product and the component parts thereof so that the same

2   could be purchased for use in the general public.

3       41. At all times mentioned herein, cross-defendants, and each of them, sued in this Cause

4   of Action, knew that said Product and its component pats were to be purchased and used without

5   inspection for defects by HOA, the SMOLKERS, and other members of the general public.

6       42. "Said Product" and its component parts hereinabove referenced, were unsafe for their

7   intended use or reasonably foreseeable uses and foreseeable misuses by reason of defects in their

8   design, manufacture, distribution, inspection, labeling, marketing, sale, servicing, and handling so

9   that said Product and its component parts could not be safely used when said Product left the

10   control of each cross-defendant sued in this Cause of Action.

11       43. The defective and dangerous character of said Product and its component parts made

12   said Product unsafe for the use and purpose for which said Product and its component parts were

13   intended when they were used and applied as recommended by the cross-defendants, and each of

14   them, sued in this Cause of Action or when used in a reasonably foreseeable manner.

15       44. "Said Product" and its component parts hereinabove referenced, were unsafe by

16   reason of defects in their design, manufacture, labels, warnings and distribution, as hereinabove

17   set forth in this Cause of Action. More specifically, and without limitation, said Product and its

18   component parts hereinabove referenced were unsafe because of defects in the combining, mixing,

19   refining, manufacturing, labeling, distribution and handling of the toxic chemicals which caused

20   said Product, on or about October 11, 1996 and thereafter to injure the SMOLKERS, the

21   SMOLKERS' their children, the SMOLKERS' dog, and the SMOLKERS' property. All of said

22   defects caused the SMOLKERS' injuries and damages, as hereinafter set forth.

23       45. At all times material hereto, said cross-defendants, and each, failed to warn the

24   SMOLKERS of the defective, faulty, unsafe, hazardous and dangerous character of said Product

25   and failed to warn the SMOLKERS that exposure to or coming in contact with or breathing in

26   said Product could and would cause serious injuries, or that the use or possession of said pesticide

27   unlawful.

28

46. The SMOLKERS were not aware of said Product's defects at any at time prior to the initial incidents which occurred on or about Oct. 11, 1996 and thereafter and which caused injuries to the SMOLKERS. Said Product failed to perform as safely as an ordinary user, such as the SMOLKERS, would expect, in that the SMOLKERS were using the product in a manner reasonably foreseeable by the cross-defendants sued in the Cause of Action and for the intended purpose for which the product was specifically supplied to HSTCI, which was the purpose the product was specifically supplied to the HOA, namely to prevent future termite infestations and to eradicate existing termite infestations. As a result of said defect in said Product and its component parts, on or about October 11, 1996, and continuously thereafter the SMOLKERS were caused to sustain those injuries set described herein.

47. As a proximate result of the defect and exposure of the SMOLKERS, the exposure of the SMOLKERS' children, and the exposure of the SMOLKERS' property to the product as hereinabove alleged and as a proximate result of the failure to warn the SMOLKERS of the dangers posed by the product or how to handle the product, as a proximate result of the illegal sale and distribution of the Product and the subsequent exposure of the SMOLKERS and the SMOLKERS' children and the SMOLKERS' property to the product, the SMOLKERS sustained injuries to their health, strength and activity, as well as mental pain and suffering, the SMOLKERS are informed and believe and based thereon allege that they have and will continue to sustain in the future injuries to their health, strength and activity, physical and mental pain and suffering, emotional distress, all to their general damage in a sum within the jurisdiction of this court.

48. As a further proximate result of the failure to warn and of the defect in the product as hereinabove alleged, and injuries sustained by the SMOLKERS, and each of them, and their children, herein alleged, the SMOLKERS were required to employ physicians, surgeons, dentists, and other health care personnel and incurred expenses therefore, and incurred additional incidental medical and dental expenses. The SMOLKERS also suffered damage to their property and loss of use of their property, and will continue to suffer loss of use of their property. The exact

amount of such damages is unknown at this time and the SMOLKERS will seek leave of court to amend this cross-complaint to insert the true amount when ascertained or will offer proof thereof at the time of trial.

49. As a further proximate result of the failure to warn and product defect, and the illegal sale and distribution of the product, as alleged, and injuries sustained by the SMOLKERS as herein alleged, the SMOLKERS were prevented from attending to their usual occupation and lost earnings and earning capacity as a result. The SMOLKERS are informed and believe, and thereon allege that they will thereby sustain future loss of earnings to their further damage in an amount not yet ascertained. The SMOLKERS will seek leave of court to amend this cross-complaint to insert the true amount thereof when ascertained or will offer proof of the amount at the time of trial.

## SIXTH CAUSE OF ACTION

(Against HSTCI, MORRIS, GRACE, GD, COSTELLO, HYDE and ROES 1 35 for Willful Misconduct)

50. The SMOLKERS incorporate herein by reference as though fully set forth herein Paragraphs 1 through 49, with the same force and effect as though said paragraphs were set forth fully at this point.

51. Prior to Oct. 11, 1996 GRACE and GD illegally sold and distributed to HSTCI an unregistered poison for use as a pesticide. On or about October 11, 1996 cross-defendants HSTCI, MORRIS and ROES 1 through 15, and each of them, willfully and in conscious disregard for the rights, property, health and safety of others, including the SMOLKERS, unlawfully sold and delivered an UNREGISTERED POISON to HOA (the unregistered poison purchased by HSTCI from GRACE and GD), and unlawfully applied said UNREGISTERED POISON in the PREMISES, and discharged said UNREGISTERED POISON in GARY SMOLKER's condominium unit without GARY SMOLKER's consent and without previously providing GARY SMOLKER with a "Written Notice to Owner of Work to Be Done" as required by California Business & Professions Code Section 8538. Said cross-defendants willfully and in

-33-

conscious disregard for the safety of others, including the SMOLKERS, the SMOLKERS' children and the SMOLKERS' dog, failed to ascertain whether it was safe to apply the pesticide in the PREMISES or in GARY SMOLKER's condominium, and failed to take appropriate measures to seal the walls and ceilings surround GARY SMOLKER's condominium unit #4, in which the SMOLKERS and two of their children and their dog were residing to assure that the pesticide particles injected through the walls surrounding GARY SMOLKER's condominium would not escape from the voids between the walls into the SMOLKERS' living quarters. As a result of said cross-defendants' willful misconduct, conscious disregard for the safety of others, and violation of laws regulating the use sale and possession of pesticides, toxic pesticide particles including but not limited to silica gel, were emitted into the SMOLKERS' living quarters, and stock-piled and stored in between the walls so that they would continue to enter the SMOLKERS' living quarters after Oct. 11, 1996, thereby causing the SMOLKERS, the SMOLKERS' children and their dog to be continuously exposed to said toxic particles and gases and to suffer injuries on and after Oct. 11, 1996

52. At all times herein mentioned , HSTCI, MORRIS, and ROES 1 through 15, and each of them, willfully and in conscious disregard of the safety of others, including the SMOLKERS and their children, released, dispensed, and otherwise handled toxic chemicals and pesticides in and about the PREMISES so as to create a dangerous, hazardous and unsafe condition in the SMOLKERS' living quarters while said toxic chemicals were under the operation, management, maintenance and control of cross-defendants, and each of them. Further HSTCI, MORRIS and ROES 1 through 15, and each of them, knew of said dangerous condition and nevertheless willfully and in conscious disregard for the safety of others, including the SMOLKERS and their children, failed to warn the SMOLKERS of said defective, dangerous, hazardous and unsafe condition, although cross-defendants knew that said toxic chemicals could and would cause great bodily injury due to exposure, contact with or inhalation of such toxic chemicals and therefore were aware of and foresaw the probability that severe bodily injury would occur to persons exposed to such toxic chemicals. Despite such actual knowledge and awareness, cross-

1  defendants, and each of them, acted in conscious disregard for the health, safety, comfort and

2  lives of members of the public, including the SMOLKERS and their children, by choosing to

3  ignore and did ignore the aforementioned dangers and took no precautions or took precautions

4  known to cross-defendants to be insufficient and inadequate, or to otherwise initiate any

5  safeguards to minimize, prevent or warn of the extreme danger of exposure to such toxic

6  chemicals. Further, cross-defendants, and each of them, had available to them the means to take

7  such precautions and such means were known to known to cross-and each of them. Despite such

8  knowledge and availability, cross defendants, and each of them, acted in conscious disregard for

9  the safety and lives of members of the public such as the SMOLKERS and their children who

10  would or could be exposed to such toxic chemicals and deliberately chose not to exercise the said

11  means available to them.

12      53.  Cross-defendants HSTCI and MORRIS obtained said silica from cross-defendants

13  GRACE and GD.  GRACE and GD, in violation of the law manufactured said silica gel used by

14  HSTCI, illegally exported said silica gel to California, and unlawfully sold said silica gel to HSTCI

15  for use as a pesticide, and at that time GRACE and GD knew the above described toxic chemical

16  was dangerous to human health, safety, comfort and life and said cross-defendants knew that said

17  toxic chemical could and would cause bodily injury due to exposure or inhalation or contact with

18  the skin or mucous membrane and therefore were aware of and foresaw the probability that severe

19  injury and discomfort would occur to persons exposed to such toxic chemical.  Despite such

20  actual knowledge and awareness, GRACE and GD, and each of them acted in conscious disregard

21  for the safety and lives of members of the public, including the SMOLKERS and their children, by

22  choosing to ignore the aforementioned dangers and laws which made it illegal to sell such

23  substance for use as a pesticide or to export it to California for use as a pesticide, and did ignore

24  such dangers and laws and took no precautions or took precautions known to GRACE and GD to

25  be insufficient and inadequate and said cross-defendants knowingly failed to initiate any adequate

26  safeguards to minimize, prevent or warn of the extreme danger of exposure to such toxic

27  chemical.  Further, GRACE and GD had available to them the means to take such precautions and

28

1   such means were know to GRACE and GD, and each of them. Despite such knowledge and
2   availability, GRACE and GD, and each of them, acted in conscious disregard for the safety and
3   lives of members of the general public such as the SMOLKERS and their children, who could or
4   could be exposed to such toxic chemicals and deliberately chose not to exercise the said means
5   available to them. During the time period Dec. 13, 1996 through September 1997, GARY
6   SMOLKER tried to obtain health and safety information concerning the pesticides applied by
7   HSTCI in the premises from HSTCI and MORRIS. HSTCI and MORRIS replied to GARY
8   SMOLKER's inquiries with evasive, deceptive, misleading, false and fraudulent replies and
9   evasion. During the time period from March 1997 through August 1997 GARY SMOLKER
10  attempted to obtain health and safety information from GRACE, GD, COSTELLO and HYDE on
11  the product HSTCI had purchased from GRACE and GD and then applied in the PREMISES.
12  GRACE, GD, COSTELLO, and HYDE's replies were imprecise, evasive, misleading, deceptive
13  and fraudulent.

14      54. As a result of the willful and malicious acts and omissions and fraudulent and illegal
15  conduct of cross-defendants, and each of them, as hereinabove described, the SMOLKERS and
16  each of them were injured and required to and did employ physicians and dentists to examine,
17  treat, and care for GARY SMOLKER, JUDI SMOLKER and LEAH SMOLKER, and did incur
18  medical and dental expense. As a further result of said willful, fraudulent and illegal acts and
19  omissions of cross-defendants and each of them, the SMOLKERS sustained property loss and
20  property damage to their personal and real property and suffered a loss of earnings and loss of
21  earning capacity. The SMOLKERS are informed and believe and thereupon allege that they will
22  continue to incur medical and dental expenses, will suffer further property losses and damages,
23  and loss of earnings, until the pesticide contamination problem is taken care of. The exact amount
24  of such pecuniary losses and medical and dental expenses has not been ascertained at this time.
25  The SMOLKERS will amend this cross-complaint to show such loss when ascertained or will
26  offer proof thereof at the time of trial.

27

28

54. The aforesaid acts of cross-defendants, and each of them, were willful and in conscious disregard of the aforesaid foreseeable consequences and therefore justify the awarding of exemplary and punitive damages in an amount in excess of the minimum jurisdictional limits of the above-entitled court as shall be determined at the time of trial.

SEVENTH CAUSE OF ACTION

(Action against HOA, FREDERICKS, CIPRIANO, BAILEY, KAY, ROBBINS,
IVORY, VERDUN, ROES 81 through 100, HSTCI, MORRIS, GRACE and GD
to Abate a Nuisance and A Dangerous Condition)

55. The SMOLKERS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 54 with the same force and effect as though said paragraphs were set forth fully at this point.

56. The UNLICENSED POISON which is in the wall voids of the PREMISES is a nuisance and constitutes a dangerous, illegal and hazardous condition in the PREMISES. Due to the presence of the UNREGISTERED POISON in the PREMISES, the PREMISES are a hazardous materials release site where a hazardous material has been released and threatens to be released into residential living units located thereat. The UNREGISTERED POISON is under the control of the HOA, but is owned, in common, by the owners of the condominium units located at the PREMISES. Said condominium units are shown and described on the CONDOMINIUM PLAN. In order to abate this nuisance and remedy this dangerous condition it will be necessary to enter each condominium unit located at the PREMISES and do construction work thereat.

57. It is necessary to abate this nuisance and remedy this dangerous condition in order to protect the people who visit and the people who live in the PREMISES.

EIGHTH CAUSE OF ACTION

(Against TIG for Breach of Contract)

58. The SMOLKERS incorporate herein by reference as though fully set forth herein Paragraphs 1 through 57 with the same force and effect as through said paragraphs were set forth fully at this point.

59. GARY SMOLKER has owned his condominium unit and lived at his condominium unit at 15-63rd Ave., Playa del Rey, CA. since 1978. The SMOLKERS have had Homeowners Insurance (policy number THO 2309 05 88), and a Personal Umbrella Policy (policy number U 3027 2661) and automobile insurance (policy number TRA 2308 70 78) with TIG and its predecessor company continuously since 1988. The Homeowners Insurance policy provides coverage to the SMOLKERS with respect to damage to personal property in the condominium, including payment for loss of use of the condominium, repair of the condominium necessary to mitigate damages to personal property, living expenses if it is necessary to move out of the condominium etc. The automobile insurance policy provides coverage for damage to the SMOLKERS' automobiles. Also, the SMOLKERS have an Earthquake Insurance policy (policy number EQ 33244477) with TIG which came into existence in 1995, prior to the inception of this policy earthquake coverage was provided by to the SMOLKERS by TIG under the homeowners insurance policy issued by TIG to the SMOLKERS.

60. While these policies were in full force and effect, the SMOLKERS sustained property damage covered under said policies, and their home (the insured condominium) was rendered unfit to live in. On March 14, 1997 the SMOLKERS submitted a written claim. Thereafter the SMOLKERS submitted further information to TIG.

61. The SMOLKERS, and each of them, have performed all conditions, terms, and covenants requred by each of said insurance policies to be performed by them unless otherwise excused or equitably relied therefrom as not being prejudicial to TIG.

62. The SMOLKERS requested that TIG clean or replace all contaminated personal property, repair the condominium so as to prevent additional damage from occuring to the SMOLKERS' personal property and the SMOLKERS and to pay for the SMOLKERS loss of use of their home, including moving costs and rental costs to live somewhere else while the condominium is made fit to live in.

63. In complete breach of its insurance policy TIG refused to pay any part of the SMOLKERS claim. The failure and refusal of TIG to pay for replacement or cleaning ofthe

SMOLKERS' personal property located in the condominium was a breach of the TIG policies. The refusal of TIG to pay for the SMOLKERS to live somewhere else was likewise a breach of the TIG policies. The failure and refusal of TIG to make repairs necessary to mitigate damages was also a breach of the TIG policies.

64. As a direct and proximate result of TIG's breach of the agreement, insurance policies, the SMOLKERS have suffered the following damages:

(a) damage to their health by living in the condominium;

(b) medical expenses due to additional damages to their health caused by continuing to live in the condominium, including reasonable value of time spent going to doctors and time spent taking children to doctors, and medical expense of medical care given to children;

(c) expenses of becoming embroiled in this litigation, including but not limited to loss of earnings, loss of earning capacity; loss of future earnings; loss of future earning capacity; reasonable value of time spent in connection with this dispute, including time spent dealing with other parties to this lawsuit;

(d) cost to replace all damaged goods, including cost to remove goods, cost to buy new goods, reasonable value of time spent in connection therewith;

(e) cost to clean the air in the condominium;

(f) cost to remove the pesticide dust from the wall voids and to do construction work ancilliary thereto, and to live somewhere else while construction work is being performed, and reasonable value of time spent finding people to do this work;

(g) benefits due under earthquake policy;

(h) benefits due under homeowners policy;

(i) benefits due under automobile policy;

(j) reasonable attorney fees;

all to the SMOLKERS damage in a sum to be proved at time of trial.

## NINTH CAUSE OF ACTION

(Against TIG for Breach of Duty of Good Faith and Fair Dealing)

-39-

1    65. The SMOLKERS reallege and incorporate herein by reference each and every
2  allegation contained in paragraphs 1 through 64 of this Cross-complaint.

3    66. TIG has failed to fulfill the representations of coverage in its policies. TIG has failed
4  to provide the SMOLKERS the coverage which they purchased and for which they paid insurance
5  premiums to TIG.

6    67. In breach of its covenant of good faith and fair dealing, TIG rejected the
7  SMOLKERS' claim in a knee jerk fashion without any on site investigation of the premises. After
8  the SMOLKERS complained of this treatment TIG conducted a perfunctory or shame on-site
9  investigation where facts indicating there was coverage were ignored by TIG. Evidence
10  availabale to TIG, which it did not seek to discover, shows the losses complained about by the
11  SMOLKERS were covered. Evidence given to TIG by the SMOLKERS was ignored by TIG.
12  TIG ignored the earthquake claim submitted to it, until after TIG had denied the SMOLKERS
13  claim. TIG told the SMOLKERS that it was denying the SMOLKERS claim based on its legal
14  interpretation of the word "smoke." TIG claimed that it had found a legal authority, Henri Food
15  Prod. Co. v. Home Ins. Co. that held that vapor is not smoke. The Henri case actuallly haeld that
16  vapor is smoke. After this was pointed out to TIG, TIG was unwilling to accept either the Henri
17  case definition of smoke or the dictionary's definition of smoke. TIG said if the pesticide fume
18  that invaded the SMOLKERS residence could be called "smoke" then the damage caused by the
19  residue of the dust on the SMOLKERS' property was covered, but that TIG would not accept
20  that solid particles suspended in a gaseous medium is a satisfactory definition of smoke. The
21  SMOLKERS claimed, among other things, that the pesticide contamination was damage caused
22  by smoke and malicious mischief. In early June 1996 TIG had an opinion letter sent to the
23  SMOLKERS that concluded there was no coverage without discussing the Henri case or the
24  illegality and unlawfulness of the conduct of HSTCI. Eventually, in early July, 1997, TIG
25  informed the SMOLKERS that TIG did not want any more information from the SMOLKERS.

26

27

28

1    68. The SMOLKERS are informed and believe and based thereon allege that TIG intends
2    to and will continue to deny and withhold benefits due to the SMOLKERS unless and until
3    compelled to pay such benefits by a final judgment of this court.

4    69. As a direct and proximate result of the conduct of TIG, the SMOLKERS have
5    sustained substantial compensable losses, including benefits withheld, and economic losses such as
6    loss of earnings and earning capacity, reduced value of their home, loss of the quiet and peaceful
7    use and enjoyment of their home, being forced to live in an unhealthy environment, physical injury
8    pain and damage, and severe mental and emotional damage, and attorney fees in amounts not yet
9    fully ascertainable but within the jurisdiction of this court in an amount to be proved at trial.

10    70. TIG's conduct described herein was done willfully with a conscious disregard of the
11    SMOLKERS' rights and with intent to vex, cause unjust hardship to, injure and to annoy the
12    SMOKLERS, such as to constitute oppression, fraud and malice under California Civil Code
13    Section 3294 and the SMOLKERS should recover in addition to actual damages, damages to
14    make an example of and to punish TIG.

15                                TENTH CAUSE OF ACTION

16                      (Against C&W, ARNOLD, and MP for Negligence, Fraud,

17                                Harrasment and Abuse of Process)

18    71. The SMOLKERS reallege and incorporate herein by reference each and every
19    allegation contained in paragraphs 1 through 70 of this Cross-complaint.

20    72. In or about May, 1997, C&W, ARNOLD, and MP, and each of them were hired to
21    investigate the SMOLKERS' claim for the SMOLKERS, to explain the provisions of the TIG
22    homeowners policy to the SMOLKERS, to determine whether a reasonable definition of the
23    undefined term "smoke" in the TIG homeowners policy was "solid particles suspended in a
24    gaseous medium" for purposes of interpreting that policy, and to determine if the illegal and
25    wrongful conduct of HSTCI could be reasonably interpreted to constituted "vandalism" or
26    "malicious mischief" under that policy, such terms not being defined in that policy.

27

28

                                        -41-

73. C&W, ARNOLD, and MP conducted a sham and phoney inadequate investigation of the SMOLKERS' claim, wrote a dishonest and fraudulent opinion letter to the SMOLKERS which fraudulently,dishonestly, inaccurately and incorrectly described the terms and provisions of the TIG homeowners policy as they relate to the SMOLKERS claim, inaccurately and incorrectly and fraudulently indicated that "solid particles suspended in a gaseous medium" is not a valid definistion of smoke, inaccurately and incorrectly and fraudulently indicated that HSTCI's conduct could not constitute malicious mischief or vandalism, ignored information submitted to them by the SMOLKERS, ignored information that was readily available if they had searched for it, and filed a false, concocted, sham declaratory relief action against the SMOLKERS concerning the meaning of the TIG homeowners insurance policy issued to the SMOLKERS for the independent benefit of C&W, ARNOLD and MP.

74. As a direct and proximate result of this negligent, and fraudulent conduct of C&W, ARNOLD, and MP, and each of them, and their abuse of process, the SMOLKERS have sustained substantial compensable losses including insurance benefits withheld from the SMOLKERS by TIG, and economic losses such as loss of earnings and earning capacity, reduced value of their home, loss of thequiet and peaceful use and enjoyment of their home, being forced to live in an unhealthy environment, physical injury pain and damage, and severe mental and emotional damage, and attorney fees in amounts not yet fully ascertainable but within the jurisdiction of this court in an amount to be proved at trial.

### ELEVENTH CAUSE OF ACTION

(Against TIE, CIC, CAINCO, RELIANCE and FRONTIER for Breach of Contract)

75. The SMOLKERS hereby refer to and incorporate by reference each and every allegation in paragraphs 1 through 74 of this Cross-complaint.

76. In 1996 and 1997 the SMOLKERS were, and still are, intended beneficiaries and third party beneficiaries under insurance policies issued by TIE, CIC, and CAINCO, and under bonds issued by RELIANCE and FRONTIER. The SMOLKERS, and each of them, have performed all conditions, terms, and covenants required by them under said liability policies and bonds unless

otherwise excused or equitably relieved therefore as not being prejudicial to the insurers sued in this cause of action.

77. In 1977 the SMOLKERS submitted claims to TIE, CIC, and CAINCO under their respective insurance policies, and to RELIANCE and FRONTEIR under their respective bonds for property damages (physical injury to tangible property and loss of use of property) and medical expenses and bodily injuries suffered as a direct and proximate result of the illegal, wrongful, dishonest, fraudulent and negligent conduct and malicious mischief and vandalism of HSTCI described herein. Under the TIE policy the SMOLKERS also submitted a claim for earthquake damage, and wind damage, as well as a claim for negligent management of the PREMISES

78. TIE, CIC, CAINCO, RELIANCE and FRONTIER each denied the SMOLKERS' claim submitted to them. The failure and refusal of TIE, CIC, CAINCO, RELIANCE and FRONTIER to accept the claim submitted to them individually was a breach of their insurance agreements, policies and bonds. As a direct and proximate result of this conduct the SMOLKERS have sustained substantial compensable losses, including but not limited to including benefits withheld, and economic losses such as loss of earnings and earning capacity, reduced value of their home, loss of the quiet and peaceful use and enjoyment of their home, being forced to live in an unhealthy environment, physical injury pain and damage, and severe mental and emotional damage, and attorney fees in amounts not yet fully ascertainable but within the jurisdiction of this court in an amount to be proved at trial.

80. The SMOLKERS are informed and believe and based thereon allege that TIE, CIC, CAINCO, RELIANCE and FRONTIER intend to and will continue to deny and withhold payments due to the SMOLKERS unless and until compelled to pay such benefits by a final judgment of this court.

TWELFTH CAUSE OF ACTION

(Against TIE, CIC, CAINCO, FRONTIER, and RELIANCE for

Bad Faith Breach of Insurance Contract)

81. The SMOLKERS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 80 of this Cross-complaint.

82. TIE, CIC, and CAINCO have failed to fullfill the representations of coverage in their policies. TIE, CIC, CAINCO, RELIANCE and FRONTIER have failed to provide the SMOLKERS the coverage they are entitled to as third party beneficiaries and intended beneficiaries. In breach of their covenant of good faith and fair dealing TIE, CIC, CAINCO, and RELIANCE did not honestly evaluate the SMOLKERS but instead conspired with COREGIS, and HSTCI to give the SMOLKERS a run-around. TIE, CIC, CAINCO, RELIANCE, and FRONTIER made less than a perfunctory investigation of the SMOLKERS claim, each of them failed and refused to come to the SMOLKERS' residence to see what the SMOLKERS were talking about, each chose sides and to be hostile to the SMOLKERS and set the SMOLKERS adrift to deal with and be involved in FEDORUK's sham and non-existant inspection of the SMOLKERS' home. TIE did not reply to the SMOLKERS many letters of inquiry, but instead without any substantiation told the SMOLKERS neighbors that the material injected into the PREMISES by HSTCI was safe, and TIE would work on getting the SMOLKERS' rugs cleaned and air handling equipment clean, but instead harrassed the SMOLKERS.

83. . As a direct and proximate result of this negligent, and fraudulent conduct of TIE, CIC, CAINCO, RELIANCE, and FRONTIER, and each of them, the SMOLKERS have sustained substantial compensable losses including insurance benefits withheld from the SMOLKERS by each of them, and economic losses such as loss of earnings and earning capacity, reduced value of their home, loss of thequiet and peaceful use and enjoyment of their home, being forced to live in an unhealthy environment, physical injury pain and damage, and severe mental and emotional damage, and attorney fees in amounts not yet fully ascertainable but within the jurisdiction of this court in an amount to be proved at trial.

## THIRTEENTH CAUSE OF ACTION

(Against TUA, FIG, FGI, COREGIS, DEAN & ASSOCIATES, DENNIS A. BABBITS for Fraud, Negligence and Interference )

84.  The SMOLKERS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 83.

85.  At all times herein mentioned cross-defendant DEAN & ASSOCIATES (DEAN) was a law firm doing business in Los Angeles County, and cross-defendant DENNIS A BABBITS was a lawyer working for said law firm.

86.  In early 1977 MORRIS told GARY SMOLKER to select an industrial hygenist to investigate the pesticide contamination in GARY SMOLKER's condominium and MORRIS and HSTCI would hire that person to do that investigation for GARY SMOLKER.  In response to this offer, GARY SMOLKER gave MORRIS and HSTCI the name phone number and address of Bud Offermann and his firm Indoor Environmental Engineering.  GARY SMOLKER had found Mr. Offerman and his firm after long hard research looking for an industrial hygenist to consult in connection with an indoor air pollution problem GARY SMOLKER had at his prior office. MORRIS and HSTCI did not hire Offerman and Indoor Environmental Engineering to work for GARY SMOLKER, instead MORRIS and HSTCI gave Offerman's name to COREGIS and DEAN, who, interferred with the SMOLKERS' relationship with Offerman and his firm to the extent that Offerman refused to speak to GARY SMOLKER.  This was done by COREGIS in concert with and for the benefit of TUA, FIG, FGI, CIC, CAINCO, and TIE.

86.  COREGIS, CIC, CAINCO, TUA, FIG, FGI, BABBITS, and DEAN worked with Offerman on this matter as adverse parties to the SMOLKERS' interests in this matter.

87.  As a result of the conduct of the cross-defendants sued in this cause of action conduct the SMOLKERS' relationship with Offerman and Indoor Environmental Engineering is ruined and the SMOLKERS have to find a new and different industrial hygenist to consult with on their other case, all to the SMOLKERS' damage and loss in an amount to be proved at trial.

88.  TUA's, FIG's, FGI's, DEAN's, and BABBITS' conduct described herein was done willfully with a conscious disregard of the SMOLKERS' rights, and with an intent to vex, harrass, cause undue hardship to, injure and annoy the SMOLKERS, sluch as to constitute oppression, fraud and malice under California Civil Code Section 3294 and the SMOLKERS should recover

in addition to actual damages, damages to make an example of and to punish TUA, FIG, COREGIS, DEAN and BABBITS.

WHEREFORE, the SMOLKERS, and each of them, pray for judgment as follows:

## AS TO THE FIRST, SIXTH, NINTH, TENTH,

## TWELFTH, AND THRITEETH CAUSES OF ACTION

1. For general damages and special damages according to proof in an amount in excess of the minimal jurisdictional limits of the above entitled-court.

2. For damages for past and future medical and related expenses according to proof at the time of trial.

3. For damages to personal property and to real property, for loss of use of property and loss of property, according to proof at the time of trial.

4. For loss of earnings and loss of earning capacity according to proof at the time of trial.

5. For exemplary and punitive damages in an amount the court deems just and reasonable.

## AS TO THE SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

6. For general damages and special damages according to proof in an amount in excess of the minimal jurisdictional limits of the above entitled-court.

7. For damages for past and future medical and related expenses according to proof at the time of trial.

8. For damages to personal property and to real property, for loss of use of property and loss of property, according to proof at the time of trial.

-46-

9. For loss of earnings and loss of earning capacity according to proof at the time of trial.

### AS TO THE SEVENTH CAUSE OF ACTION

10. For an order directing the owners of each condominium at the PREMISES, and each of them, and the HOA, to remove the UNLICENSED POISON from the structural voids in the PREMISES and to retreat the building structure and semi-subterranean garage at the PREMISES with a non-toxic method of termite control, and ordering each owner of a condominium located at the PREMISES to allow necessary construction and pest control work to be carried out in their condominium unit to accomplish these purposes.

11. For damages according to proof. If there is no insurance coverage under the TIE policy for remediation of the Premises then the owners of each individual condominum unit should be ordered to pay a pro rata share (one sixth of the total cost per condominium unit) for clean up of the PREMISES.

### ON ALL CAUSES OF ACTION

12. Prejudgment interest as allowed by law.

13. Costs of suit herein.

14. Such other and further relief which the court deems just and proper.


Law Offices of Smolker & Graham

by: _____

Gary S. Smolker

Attorneys for Cross-Complainants

-17-

EXHIBIT A

Trade Name                              Hazardous Ingredients

Syloid 244                              Synthetic Amorphous Silica Gel

N/A                                     Borate Solution

Dursban                                 Organophosphates

-48-

## DECLARATION OF SERVICE BY MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 4720 Lincoln Blvd., Suite 250, Marina del Rey, California 90292-6977.

On November 4, 1997, I served the foregoing document described as follows:

**FIRST AMENDED CROSS COMPLAINT**

on the interested parties in this action by placing a true original thereof enclosed in a sealed envelope(s), with postage thereon fully prepaid, and placing such envelope(s) in the United States mail at Los Angeles, California, addressed as follows:

Cummins & White LLP
Larry M. Arnold, Esq.
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA. 92660-0757

I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 4, 1997at Marina del Rey, California.

JANE NAGAISHI

DeclServ