## Exhibit C-10

**Smolker Costs Motion**

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


Court of Appeal Case No. B281406
(Related Appeals Pending in B286138, B287626, and B289828)

GARY SMOLKER

Cross-complainant and Appellant


vs.


W. R. GRACE & CO. et al.

Cross-defendants and Respondents


Appeal from the Superior Court of Los Angeles County,
Honorable Richard L. Fruin, Jr., Judge, Case No. BC173952


**NOTICE OF MOTION AND MOTION TO CONSOLIDATE APPEAL CASES FOR ORAL ARGUMENT AND FOR ORDER ORDERING ATTORNEY ROSEMARIE S. LEWIS, BORTON PETRINI LLP, BORTON PETRINI & CONRON LLP, KIRKLAND & ELLIS LLP, ATTORNEY ROGER J. HIGGINS, LAW OFFICES OF ROGER HIGGINS LLP, PACHULSKI STANG ZIEHL & JONES LLP, AND W.R. GRACE & C0. AND GRACE DAVIDSON TO PAY APPELLANT GARY SMOLKER $1,242,787.00 FOR DETRIMENT CAUSED TO APPELLANT BY THEIR UNETHICAL, UNLAWFUL AND ILLEGAL CONDUCT; MEMORANDUM; DECLARATION; PROPOSED ORDER**

Gary Smolker, State Bar No. 56117
16055 Ventura Blvd., Suite 525, Encino, CA. 91436
Telephone: 818-788-7290, Facsimile: 818-990-9888
gsmolker@aol.com
Attorney, in pro per, for Cross-complainant and Appellant

NOTICE OF MOTION AND MOTION TO CONSOLIDATE APPEAL CASES
FOR ORAL ARGUMENT AND FOR AN AWARD OF MONETARY
COMPENSATION IN THE AMOUNT OF $1,242,787.00 TO BE PAID TO
APPELLANT GARY SMOLKER BY ATTORNEY ROSEMARY S. LEWIS,
BORTON PETRINI LLP, BORTON PETRINI & CONRON LLP, KIRKLAND &
ELLIS LLP, ATTORNEY ROGER J. HIGGINS, LAW OFFICES OF ROGER
HIGGINS LLP, PACHULSKI STANG ZIEHL & JONESS LLP, AND W.R.
GRACE & CO., AND GRACE DAVISON FOR DETRIMENT CAUSED TO
APPELLANT GARY SMOLKER BY THEIR UNETHICAL, UNLAWFUL, AND
ILLEGAL CONDUCT

To This Honorable Court and All Parties of Record:

Pursuant to California Code of Civil Procedure § 1048, California Rules of
Court, Rule 3.350, California Code of Civil Procedure §128,  California Code of
Civil Procedure Section 1021.5, Business & Professions Code Sections, 6068(c),
6068(d) and 6128 (a), California Rules of Profession Conduct, Rule 3.1(a)(1), Rule
3.1(a)(2), Rule 3.2, Rule 3.3 (a)(1), Rule 3.3 (a)(2), Rule 3.4 (a), Rule 4.1 (a), Rule
4.1 (b), Rule 8.4 (a), Rule 8.4 (c), Rule 8.4 (d), Rule 8.5 (a), Rule 8.5 (b)(2),
Business & Professions Code Section 17200, Civil Code Section 4, Civil Code
Section 3281, Civil Code Section 3282, Civil Code Section 4, Food and
Agricultural Code sections 12995, 12993, Section 11737.5, 11792, 11891, 11896,
11897, 12811, 12854, 122881, 12972, 12973, 12991. 12995, 13101, 13102, 12980,
12991, 12993, 12996,  Appellant Gary Smolker (APPELLANT) moves this court
to consolidate pending appeal case number B281406, case number B286138, case
number B287626, and case number B289828 for oral argument and to award
monetary compensation in the amount of $600,000.00 to be paid to APPELLANT
by Attorney Rosemary S. Lewis, Attorney Roger J. Higgins, law firms Borton
Petrini LLP, Kirkland & Ellis LLP, Pachulski Stang Ziehl & Jones LLP and
Respondents W.R. Grace & Co. and Grace Davidson (GRACE).

The four appeal cases which Appellant requests be consolidated for the
purpose of being heard together at oral argument are appeals from judgments of
dismissal of APPELLANT'S action against each respondent and from cost awards
to respondents in Los Angeles Superior Court Case No. BC173952.

On April 6, 2018, this court, on its own initiative, issued an order stating appeal case number B281406, B286138, and B287626 will be considered together, at such time as briefing is complete in all cases.

On April 30, 2018, GRACE filed an application to shorten time for oral argument and for further relief from the April 6, 2018 order.

It it's application GRACE requested that the Court of Appeal hear each of the three pending appeals separately, and further that the appeal dismissing GRACE from Los Angeles Superior Court Case No. BC173952 be heard before the Court of Appeal held oral argument on any of the two other pending appeals.

On May 2, 2018, the Court of Appeal issued an order which states:

*"The court has read and considered respondents' April 30, 2018 application to shorten the time for oral argument and further relief from the April 6, 2018 order.*

*"IT IS HEREBY ORDERED that respondents' application is denied."*

On May 2, 2018, APPELLANT filed a Notice of Appeal from an amended judgment in favor of respondents Home Saving Termite Control, Inc. and W.F Morris (TERMITE CONTROL) filed on March 5, 2018 in Los Angeles Superior Court Case No. BC 173952.  That appeal is Court of Appeal Case No. B289828. See pages 330 through 338 of Volume 2 of Clerk's Transcript on Appeal in Court of Appeal Case No. B289828.

Appeal Case No. 287626 and Appeal Case No. 289828 are both appeals of Judgments of Dismissal of TERMITE CONTROL signed by Judge Fruin.

On November 17, 2017 Judge Fruin signed an order and a judgment dismissing TERMITE CONTROL (see pages 2915 and 298 and pages 3051 through 3066 of Clerk's Transcript on Appeal in Appeal Case B287626). APPELLANT filed a Notice of Appeal of the November 17, 2017 order and judgment dismissing TERMITE CONTROL on January 16, 2018 (see pages 3051 through 3066 of Clerk's Transcript on Appeal in Appeal Case B287626).

On March 5, 2018, while APPELLANT'S appeal of Judge Fruin's order and judgment was pending, Judge Fruin sua sponte, without a hearing, signed an Amended Judgment of Dismissal of TERMITE CONTROL (see pages 321 – 324

of Clerk's Transcript on Appeal for Appeal Case No. 289828). Appeal Case No. B289828 is APPELLANT'S appeal from Judge Fruin's March 5, 2018 amended judgment of dismissal of TERMITE CONTROL.

On August 22, 2019, APPELLANT'S attorney asked GRACE'S attorney Rosemary S. Lewis to stipulate on behalf of her clients, W.R. Grace & Co. and Grace Davidson, that oral argument on all four appeal cases (Court of Appeal Case Nos. B281406, B286138, B287626 and B289828) be heard concurrently at the same time. See Exhibit 72, page 1116, in Volume 2 of Exhibits Referred to in Motion to Consolidate Appeals for Oral Argument and Other Relief. From now on all references to Exhibits will be to Exhibits contained in either Volume 1 or Volume 2 of Exhibits Referred to In Motion to Consolidate Appeals for Oral Argument and Other Relief unless otherwise noted.

On August 23, 2019, GRACE'S attorney Rosemary S. Lewis replied: *"GRACE is not in agreement that oral argument in all 4 appeals be heard at the same time."* See Exhibit 77, pages 1132-1130.

APPELLANT'S attorney asked each attorney representing each respondent in each appeal case to agree to oral argument on all appeal cases being consolidated to be heard at the same time. See Exhibits 71 – 85. Each of respondents' attorneys refused to stipulate to have oral argument on all appeals heard at the same time except Mark Kincaid, attorney for TERITE CONTROL.

Mark Kincaid agreed that all four appeal cases could be consolidated for oral argument and heard at the same time. See Exhibit 73, page 1118.

Be advised, there is a "fly in the ointment" with respect to the ability to have finality in legal proceedings involving W.R. Grace & Co. and Grace Davidson in the Los Angeles Superior Court and in the California Court of Appeal:

- *"On April 2, 2001, cross-defendants and respondents W.R. Grace & Co. and Grace Davidson [GRACE] filed for Ch. 11 bankruptcy in the United States Bankruptcy Court for the district of Delaware, which imposed an automatic stay of proceedings in this litigation. "* See lines 23 through 25 on page 98 of Volume 1 of Clerk's Transcript on Appeal in Court of Appeal Case No. B281406.

- The GRACE bankruptcy proceedings have not concluded.

5

- The United States Bankruptcy Court has never given up jurisdiction over APPELLANT or over GRACE in this litigation. See ORDER of United States Bankruptcy Judge Honorable Kevin J. Carey, dated March 4, 2015 which appears on pages 344 and 345 of Volume 2 of Clerk's Transcript on Appeal in Appeal Case No. B281406.

- No action against GRACE in the Los Angeles Superior Court can be finally disposed of with certainty by a judgment in the Los Angeles Superior Court because the United States Bankruptcy Court has (reserved) jurisdiction to determine the final disposition of APPELLANT'S claim against GRACE. Perhaps no action against GRACE in the California Court of Appeal (for example an award of compensation to APPELLANT) can be disposed of with certainty. See ORDER of United States Bankruptcy Judge Honorable Kevin J. Carey, dated March 4, 2015 which appears on pages 344 and 345 of Volume 2 of Clerk's Transcript on Appeal in Appeal Case No. B281406.

- It is possible that if an order is made by the Court of Appeal ordering GRACE to pay monetary compensation in the amount of $600,000.00 to APPELLANT, or to pay monetary compensation in any amount to APPELLANT, the Court of Appeal's order may not be enforceable because for all practical purposes it appears that the United States Bankruptcy Court has reserved jurisdiction to approve or disapprove any amount GRACE owes or is ordered to pay APPELLANT. See ORDER of United States Bankruptcy Judge Honorable Kevin J. Carey, dated March 4, 2015 which appears on pages 344 and 345 of Volume 2 of Clerk's Transcript on Appeal in Appeal Case No. B281406.

- GRACE and its attorneys organized, concocted, initiated, and carried forward the proceedings in the Bankruptcy Court that resulted in United States Bankruptcy Court Judge Carey signing the March 4, 2015 ORDER. GRACE is the sole draftsperson of the March 4, 2015 ORDER signed by the Honorable Kevin J. Carey dated March 4, 2015. APPELLANT did not participate in the drafting of that ORDER. A copy of Judge Carey's March 4, 2015 ORDER appears

on pages 344 and 345 of Volume 2 of the Clerk's Transcript on
Appeal in Appeal Case No. B281406.

- GRACE orchestrated what took place in all the proceedings that led to
  Judge Carey signing that order.  See Declaration of Roger J. Higgins
  on pages 192 of Volume 1 through page 357 of Volume 2 of the
  Clerk's Transcript on Appeal in Appeal Case No. 281406.

- GRACE AND its bankruptcy attorneys KIRKLAND & ELLIS LLC,
  THE LAW OFFICES OF ROGER HIGGINS LLC, attorney Roger J.
  Higgins, PACHULSKI STANG ZIEHL & JONES LLP and W.R.
  Grace & Co.'s Vice President and Associate General Counsel Richard
  C. Fink obtained Judge Carey's signature on the March 4, 2015
  ORER by trickery, by misleading Judge Carey and APPELLANT by
  not disclosing the complete and true facts to either Judge Carey or to
  APPELLANT,  by misrepresenting the facts to Judge Carey and to
  APPELLANT in the proceedings which resulted in Judge Carey
  signing the March 4, 2015 ORDER.

- GRACE represented that the relief being sought by GRACE was to
  permit the California State Court Litigation to proceed to litigation.
  (CT 206): "RELIEF REQUESTED " "10. The Reorganized Debtors
  request that the Court enter the Order substantially in the form
  attached hereto as Exhibit B: (a) to the extent that Smolker responds
  to this Claims Objection, permitting the California State Court
  Litigation to proceed to judgment; or (ii) if Smolker does not respond
  to this Claims Objection, disallowing the Claims pursuant to
  Fed.R.Bank.P. 7055." EXHIBIT B (CT 2017) states: "2. [if a
  response from Plaintiffs is filed] The Injunction set forth in Plan §8.11
  is lifted, and the litigation captioned *TIG Insurance Company v. Gary
  Smolker, et al.,* Case No. BC 173952 (Los Angeles County Sup.
  Ct.)(Janavs, J.)(the "California Stated Court Litigation") may proceed
  to judgment."

- That is not what Judge Carey's March 4, 2015 ORDER states. To the
  contrary, Judge Carey's ORDER does not allow for the California

State Court litigation to proceed to a FINAL JUDGEMENT without further interference by the Bankruptcy Court.

- The only thing APPEALLANT agreed to is succinctly stated on Page 328 of CT for Appeal Case 281406: ***I agree to the lifting of the stay order so that the California State Court litigation may proceed.*** APPELLANT did not agree to the Bankruptcy Court retaining jurisdiction to determine all matters relating to the allowance or disallowance of APPELLANT'S claims against GRACE.

- See also "CLAIMANT GARY S. SMOLKER'S RESPONSE TO THE THIRTY-SEVENTH OMNIBUS OBJHECTION TO CERTAIN CLAIMS FILED REGARDING PREPETITION LITIGATION CAPTIONES TIG INSURANCE COMPANY V. GARY SMOLKER, ET. AL., CASE NO BC 173952 (LOS ANGELES COUNTY SUPERIOR COURT), DATED JANUARY 30, 2015 ("the 37th Omnibus Objection" which appears in the Clerk's Transcript for Appeal Case No. 281406 at pages 330 – 337, in which Gary Smolker states on page 331:

- *"In the 37th Omnibus Objection co-counsel for the Reorganized Debtors state they will ask the Court to enter an Order permitting the California State Court Litigation pending in the Los Angeles Superior Court, captioned* TIG Insurance Company v. Gary Smolker, et al., Los Angeles Superior Court Case No. BC 173952 *to proceed to judgment, if I respond to the 37th Omnibus Objection.*

- *"I too would like, and request, the Court to enter an Order permitting the California State Court Litigation, pending in the Los Angeles Superior Court, captioned* TIG Insurance Company v. Gary Smolker, et al. Los Angeles Superior Court Case No. BC 173952 *to proceed to judgment.*

- *"WHEREFORE, I, claimant Gary S. Smolker, request the Court to enter an order permitting the California State Court Litigation pending in the Los Angeles County Superior Court Case No. BC 173952 to proceed to judgment."*

- GRACE submitted the Declaration of Richard C. Finke, Vice President and Associate General Counsel of W.R. Grace & Co. in Support of GRACE'S 37th Omnibus Objection (CT 212 -214) in which Mr. Finke, in states: *Based upon a thorough review of their available books and records, the Reorganized Debtors have concluded they have not liability as to any of the claims discussed herein and in the Objection."* No mention is made by Mr. Finke that GRACE had illegal sold an unregistered pesticide product manufactured by GRACE to TERMITE CONTROL which TERMITE CONTROL had unlawfully applied in APPELLANT'S home for the purpose of eradicating termites.

- Mr. Finke's statement in support of GRACE'S application for the order signed by Judge Carey is a completely misleading statement made to Judge Carey by Mr. Finke on behalf of GRACE. At the time Mr. Finke made that statement GRACE and its California State Court litigation counsel – the Borton Petrini and Conron LLP law firm- had in their possession overwhelming evidence that GRACE is liable to APPELLANT for detriment caused to APPELLANT by GRACE's unlawful and illegal sale of its pesticide product SYLOID 244 to TERMITE CONTROL.  For example, since November 2000, GRACE and its attorneys have had in their possession the deposition testimony of  Greg Adams, California Structural Pest Control Board Specialist (Exhibit 65), deposition testimony Jeffrey Humphreys, Deputy Director, Consumer Protection Bureau, Department of Agricultural Commissioner Weights and Measures of the County of Los Angeles (Exhibit 67), deposition testimony of David Duncan, Active Chief of the Enforcement Branch of the Environmental Protection Agency of the State of California that GRACE illegally and unlawful sold its pesticide product SYLOID 244 to TERMITE CONTROL.  Exhibit numbers referred to Exhibits attached to Volumes 1 and 2 of Exhibits filed in support of this motion.

- In 2000, GRACE filed motions for summary judgment and summary adjudication against APPELLANT.  In which GRACE claimed it was not unlawful for GRACE to sell its pesticide product SYLOID 244 to TERMITE CONTROL. Said motions were heard and denied by Judge Fruin.  See additional discussion which follows under the heading "GRACE OBTAINED JUDGE CAREY'S MARCH 4, 2015 ORDER

UNETHICALLY, UNLAWFULLY, ILLEGALLY AND
FRAUDULENTLY."

- It is APPELLANT'S position that GRACE has purposely sought to
  mislead Judge Carey and Judge Fruin by false statements of law and
  fact, has purposefully asserted positions in the Bankruptcy Court
  proceedings and in the Superior Court proceedings without probable
  cause and for the purpose of harassing and maliciously injuring
  APPELLANT, and is using its *"permanent bankruptcy"* (which is has
  been ongoing for more than 18 years) as an unethical and illegal
  litigation defense scheme for no substantial purpose other than to
  delay and prolong the Los Angeles Court Case BC 173952 and to
  cause needlessly cause excessive expense.  It is also APPELLANT'S
  position that GRACE'S sole the purpose of obtaining Judge Carey's
  March 4, 2015 ORDER is to prevent the Los Angeles Superior and
  the California Court of Appeal from fully and finally disposing of Los
  Angeles Superior Court Case No. BC 173952, and to make the
  financial and emotional burden to APPELLANT to great that it would
  be impossible and impractical for APPELLANT to prosecute his
  claim.

- Judge Carey's March 4, 2015 makes bringing APPELLANT'S action
  against GRACE to trial impractical and futile.

## NAMED PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD

The parties in Appeal Case No. B281406 are W.R. Grace & Co. and Grace
Davidson (GRACE), respondents, and Gary Smolker, appellant (APPELLANT).
Rosemarie Lewis and Jeffrey Z. Liu of BORTON PETRINI, LLP and BORTON
PETRINI & CONRON LLP are GRACE'S attorneys. Gary Smolker, appellant is
in pro per.  All parties have appeared. All briefing is complete.

It is alleged in APPELLANT'S complaint in the underlying action Los
Angeles Superior Court Case No. BC 173952 that GRACE illegally sold its
pesticide product SYLOID 244 to TERMITE CONTROL.  TERMITE CONTROL,
illegally used GRACE'S product SYLOID 244 in APPELLANT'S home.  The
application of SYLOID 244 in APPELLANT'S home directly and proximately

caused APPELLANT to suffer detriment; but for GRACE'S illegal sale of SYLOID 244 APPELLANT would not have suffered the damages alleged in the underlying Los Angeles Superior Court, Los Angeles action, Superior Court Case No. BC 173952.

At the time GRACE'S attorneys applied to Judge Carey to sign the March 4, 2015 ORDER, GRACE'S attorneys had in their possession overwhelming evidence that it was illegal for GRACE to sell SYLOID 244 to TERMITE CONTROL.

Under California law there is strict liability for damages that result from unlawful conduct.

In its application to Judge Carey for such order GRACE and its attorneys did not inform Judge Carey that GRACE was strictly liable to APPELLANT for all damages resulting from GRACE'S unlawful conduct. To the contrary, GRACE'S attorneys affirmatively misrepresented to Judge Carey that GRACE had no liability to APPELLANT.

At the time Judge Fruin granted GRACE'S motion to dismiss, Judge Fruin was fully aware of GRACE'S unlawful conduct, unlawful sale of an unregistered pesticide SYLOID 244 to TERMITE CONTROL to be used by TERMITE CONTROL as a pesticide to kill termites. Judge Fruin had previously received Exhibits attached to Volumes 1 and 2 of Exhibits filed in support of this motion in connection with motions for summary judgment and summary adjudication brought by GRACE. After review of such evidence Judge Fruin denied GRACE'S motions for summary judgment and summary adjudication of issues.

The parties in Appeal Case No. B286138 are Truck Insurance Exchange (TRUCK), respondent, represented by Peter Schwartz and Steven R. Inouye of GORDON REESE SCULLY MANSUKHANI, LLP; Coregis Group, Inc., Coregis Insurance Company and California Insurance Company (COREGIS ENTITIES), respondents, represented by Robert D. Hoffman of CHARLSTON, REVICH & WOLLITZ LLP; Interinsurance Exchange of the Automobile Club of Southern California (AUTO CLUB), respondent, represented by Raul L. Martinez and Elise Klein of LEWIS BRISBOIS BISGAARD & SMITH LLP. Gary Smolker, appellant, is in pro per. All parties have appeared. APPELLANT'S REPLY BRIEF is due October 25, 2019.

All of these respondents (TRUCK, COREGIS ENTITIES, and AUTO CLUB) processed a claim by APPELLANT for med pay benefits under insurance policies in which APPELLANT is a third party intended beneficiary. Med pay benefits are supposed to be a conflict free zone, an insurance carrier is supposed to pay up to a maximum set amount of medical expenses incurred by a claimant regardless of the liability of the insured to the injured party seeking reimbursement of medical expenses.

It is alleged in the underlying complaint, that each insurance entity dealt with APPELLANT in an unfair way, did more than deny APPELLANT'S claim for med pay insurance benefits in bad faith and that each insurance entity's conduct was not prompted by an honest mistake, bad judgment or negligence but rather by conscious and deliberate acts which not only unfairly frustrated APPELLANT'S reasonable expectations but also resulted in APPELLANT being exposed unnecessarily to toxic substances in his home.

It is APPELLANT'S position that respondent insurance entities and their respective defense counsel acted unethically and unlawfully and abused the legal system and legal process with respect to their filing and their processing of their motions to dismiss. They did so for the purpose of covering up the dangerous properties of SYLOID 244 – which if known to the public would cause them inordinate liability for medical payments, and property damage by causing needless excessive expense to APPELLANT and to cause inordinate excessive delay in the hopes that APPELLANT would die before his action was tried in the Los Angeles Superior Court.

The parties in Appeal Case No. B287626 are respondents TERMITE CONTROL, represented by MARK L. KINCAID; COREGIS ENTITIES, represented by Robert D. Hoffman of CHARLSTON, REVICH & WOLLITZ LLP; AUTO CLUB, respondent represented by Raul L. Martinez and Elise Klein of LEWIS BRISBOIS BISGAARD & SMITH LLP. Gary Smolker, appellant, is in pro per. All parties have appeared. APPELLANT'S REPLY BRIEF is due October 25, 2019.

Appeal Case No. B287626 consists of APPELLANT'S appeal from Judge Fruin's grant of TERMITE CONTROL'S Motion to Dismiss and APPELLANT'S appeals from Judge Fruin's denial of APPELLANT'S motions to tax costs awarded to AUTO CLUB and COREGIS ENTITIES.

Judge Fruin was fully aware of TERMITE CONTROL'S illegal conduct, use of SYLOID 244, an unregistered pesticide, TERMITE CONTROL'S false and misleading claims regarding TERMITE CONTROL'S termite eradication services, TERMITE CONTROL'S misrepresentations of the qualities of the SYLOID 244 product TERMITE CONTROL used to exterminate termites, TERMITE CONTROL'S misrepresentation that SYLOID 244 was approved by the EPA when it was not, Judge Fruin was also aware of TERMITE CONTROL'S misrepresenting that SYLOID 244 was not a chemical, TERMITE CONTROL'S misrepresentation that SYLOID 244 is a non- toxic mineral, and TERMITE CONTROL'S disparagement of the services of other termite extermination providers by making a false comparison of other exterminators' service to its own termite extermination services. Judge Fruin was also aware that TERMITE CONTROL had previously been ordered to cease and desist representing that silica aerogel is not a chemical product when Judge Fruin granted each respondent's separate motion to dismiss.

The above described information had been presented to Judge Fruin in 2000, by APPELLANT in APPELLANT'S opposition to motions filed by TERMITE CONTROL for summary judgment and summary adjudication of issues.

TERMITE CONTROL'S motions for summary judgment and summary adjudication of issues were heard and denied by Judge Fruin.

The parties in Appeal Case No. B289828 are TERMITE CONTROL (respondents Home Saving Termite Control, Inc. and W.F. Morris), represented by MARK L. KINCAID and Gary Smolker, appellant, in pro per. All parties have appeared. APPELLANT'S OPENING BRIEF is due December 24, 2019. Attorney Kincaid has stipulated that all four appeal cases may be heard at the same time.

## NATURE OF APPEALS

The four appeal cases which Appellant requests be consolidated for the purpose of being heard together at oral argument are appeals from judgments of dismissal of Appellant's action against each respondent following Judge Fruin's grant of each respondent's separate motion to dismiss, also an appeal of an amendment of the Judgment of Dismissal of TERMITE CONTROL, and also appeals from cost awards made by Judge Fruin, over APPELLANT'S objection.

There is no legal basis or equitable basis or public policy basis for the dismissal of GRACE in Los Angeles Superior Court Case No. BC 173952 - the subject of Court of Appeal Case No. 286138.

There is no legal or equitable or public policy basis for the dismissal of any other respondent - the subject of Court of Appeal Case Numbers B286138, B287626 and B289626.

Judge Fruin's grant of GRACE's motion for dismissal was based on Judge Fruin's incorrect statement and analysis of the law with respect to the effect of Judge Carey's March 4, 2015 ORDER.

Judge Fruin incorrectly concluded that the filing of Judge Carey's March 4, 2015 ORDER started the time running in which APPELLANT is required to bring his action against GRACE to trial. In actuality, per California Code Civil Procedure section 583.340 (c) because Judge Carey's Order reserves jurisdiction to the Bankruptcy Court to allow or disallow APPELLANT'S claims against GRACE and any other party effected thereby, the filing of Judge Carey's March 4, 2015 tolled the period of time in which APPELLANT is required to bring his action to trial because it made bringing APPELLANT'S action to trial impractical and futile.

Additionally, on March 4, 2015, at the time Judge Carey signed his ORDER there was in place and in full force and effect a stay order issued by Judge Fruin on February 22, 2002 (CT 133). Judge Fruin's February 22, 2002 STAY ORDER states: *"The court orders that the matter is stayed pending the outcome of W.R. Grace's bankruptcy proceedings.*

At the time GRACE brought its motion to dismiss, APPELLANT was prohibited by Judge Fruin's February 22, 2002 stay order from bringing APPELLANT'S action against GRACE to trial.

Judge Fruin's February 22, 2002 STAY ORDER is not self-executing.

On December 20, 2016 there was a hearing on GRACE'S motion to dismiss.

At the December 20, 2016 hearing APPELLANT asked Judge Fruin to dissolve Judge Fruin's February 22, 2002 STAY ORDER.

14

Judge Fruin refused to do so. CT 287 lines 15-21; CT 396 lines 14-20, CT 396 lines 1-4. Reporter's transcript page 16 bottom of page and page 25 bottom of page lines 20 -17.

Judge Fruin said, ***"I'm not going to lift the stay which might have consequences to the parties, unless I get a motion, a service list, and I can make a ruling."*** CT 396 lines 1-4 and Reporters Transcript page 26 lines 1 and 2, and Reporter's Transcript page 26 lines 9-11 for Appeal Case No.281406.

Judge Fruin's grant of TRUCK'S motion for dismissal was also based on Judge Fruin's erroneous legal conclusion that Judge Carey's March 4, 2015 ORDER started the time running – when in fact Judge Carey's March 4, 2015 ORDER tolled the time APPELLANT had to bring his action against TRUCK to trial because it made it made bringing APPELLANT'S action against GRACE to trial impractical, and futile for APPELLANT to obtain a final judgment against GRACE in the State Court Action because the Bankruptcy Court reserved jurisdiction to approve or disapprove APPELLANT'S claims against GRACE.

At the time TRUCK brought its motion to dismiss APPELLANT was prohibited from bringing his action against TRUCK to trial by two stay orders issued by Judge Fruin: (1) Judge Fruin's February 22, 2002 Stay Order, and (2) Judge Fruin's Order for Bifurcation filed January 5, 2000 (CT 181- 184).

Judge Fruin's Order for Bifurcation prohibited APPELLANT from bringing has actions against TRUCK, COREGIS ENTITIES and AUTO CLUB to trial until after a final judgment was entered in APPELLANT'S action against GRACE and TERMITE CONTROL. At the time TRUCK, COREGIS ENTITIES and AUTO CLUB brought their separate motions to dismiss APPELLANT'S action against them, there had not yet been a judgment entered in the State Court action against GRACE or TERMITE CONTROL.

Judge Fruin's grant of the COREGIS ENTITIES' motion for dismissal was also based on Judge Fruin's erroneous legal conclusion that Judge Carey's March 4, 2015 ORDER started the time running in which APPELLANT must bring his action against the COREGIS ENTITIES to trial.

Judge Fruin's grant of the AUTO CLUB'S motion for dismissal was also based on Judge Fruin's erroneous legal conclusion that Judge Carey's March 4,

2015 ORDER started the time running in which APPELLANT must bring his action against the AUTO CLUB to trial.

Judge Fruin's grant of TERMITE CONTROL'S motion for dismissal was also based on Judge Fruin's erroneous legal conclusion that Judge Carey's March 4, 2015 ORDER started the time running in which APPELLANT must bring his action against the TERMITE CONTROL to trial.

All litigants are entitled to finality.

It is completely wrong headed to argue that Judge Carey's March 4, 2015 ORDER removes the California State Litigation, Los Angeles Superior Court Case BC 173952 from the jurisdiction of the Bankruptcy Court.

It is completely wrong headed to argue that Judge Carey's March 4, 2015 ORDER removes Los Angeles Superior Court Case No. BC 173952 from the Bankruptcy Court.

Judge Carey's March 4, 2015 ORDER makes it impossible for APPELLANT to obtain "finality" in the California court system.

## I. GRACE'S BANKRUPTCY ATTORNEYS OBTAINED JUDGE CAREY'S MARCH 4, 2015 ORDER BY UNETHICAL, UNLAWFUL, ILLEGAL AND FRAUDULENT CONDUCT.

Intentionally withholding relevant information from the court when presenting a motion to a court is unethical, a fraud on the court, an abuse of the judicial system. Filing meritless motions, engaging in delaying tactics, and causing needless expense is unethical. <u>Chambers v. Nasco, Inc.</u> 501 U.S. 32 (1971).

It is the duty of an attorney to maintain defenses only as appear to him or her legal and just, and to employ only those means as are consistent with truth, and never seek to mislead a judge or any judicial officer by an artifice or false statement of fact or law. Business and Professions Code sections 6068 (c) and (d).

Every attorney is guilty of a misdemeanor who is guilty of deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. Business and Professions Code section 6628 (a).

A lawyer shall not conduct a defense or assert a position in litigation without probable cause and for the purpose of harassing or maliciously injuring any person or present a defense in litigation that is not warranted under existing law, unless it can be supported by good faith. California Rules of Professional Conduct (CRPC), Rule  3.1 (a) (1) and (a) (2).

A lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless expense. CRPC, Rule 3.2.

A lawyer shall not make a false statement of law or fact to a tribunal or fail to correct a false statement of material fact or law previously made by the lawyers. A lawyer shall not fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.  CRPC, Rule 3.3 (a) (1) and 3.3 (a) (2).

In the course of representing a client a lawyer shall not knowing (a) make a false statement of material fact or law to a third person.  CRC, Rule 4.1.

It is professional misconduct for a lawyer to violate these rules, or the State Bar Act, knowingly assist, solicit, or induce another to do so, or do so through the acts of another.  CRPC, Rule 8.4 (a).

It is professional misconduct for a lawyer to engage in any conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation.

GRACE'S bankruptcy attorneys KIRKLAND & ELLIS, LLP, LAW OFFICES OF ROGER HIGGINS, LLP, ROGER J.  HIGGINS, and PACHULSKI STANG ZIEHL & JONES LLP application to Judge Carey which resulted in Judge Carey on March 4, 2015 signing the order they prepared for Judge Carey to sign involved dishonesty, fraud, deceit, or reckless or intentional misrepresentation.

They failed to inform Judge Carey that GRACE was guilty of unlawfully selling an unregistered pesticide to an exterminator (TERMITE CONTROL) for use as a pesticide to eradicate termites.

They failed to inform Judge Carey that GRACE had attempted to obtain a summary judgment in the Los Angeles Superior Court Case BC 173952 and failed to do so.

They failed to inform Judge Carey that GRACE had attempted to obtain a summary adjudication of issues in Los Angeles Superior Court Case No. BC 173952 and had failed to do so.

They failed to inform Judge Carey that it is uncontestable that GRACE's sale of SYLOID 244 to TERMITE CONTROL was an unlawful act.

They failed to inform Judge Carey that the ORDER they prepared for Judge Carey to sign was not the ORDER they had told APPELLANT they were going to ask Judge Carey to sign. They told APPELLANT that they were going to obtain an order which would allow APPELLANT remove APPELLANTS case from the Bankruptcy Court and allow APPELLANT to finish his case in the Los Angeles Superior Court. Instead they obtained an order signed by Judge Carey which keeps APPELLANT'S claims under the jurisdiction of the bankruptcy court, so that APPELLANT'S claims must still be approved or disapproved by the bankruptcy court.

They failed to inform Judge Carey that under California Civil Code section 3281, *"Every person who suffers detriment from the unlawful act or omission of another, may recover from the person at fault therefor in money, which is called damages."*

## II. GRACE'S CALIFORNIA STATE ATTORNEYS OBTAINED JUDGE FRUIN'S ORDER/JUDGMENT OF DISMISSAL OF APPELLANT'S ACTION AGAINST GRACE BY UNETHICAL, UNLAWFUL, ILLEGAL AND FRAUDULENT CONDUCT.

GRACE'S California State attorneys Rosemarie S. Lewis, Borton Petrini LLP did not timely serve GRACE'S moving papers on APPELLANT. APPELLANT'S attorney informed Judge Fruin that he had not been timely served with GRACE'S moving papers and did not have adequate time to respond. Judge Fruin ignored the fact that APPELLANT's attorney wasn't given adequate time to respond to GRACE'S moving papers and that GRACE had failed to timely serve GRACE'S moving paper's on APPELLANT'S attorney.

GRACE'S California State attorneys Rosemarie S. Lewis and Borton Petrini LLP did not inform Judge Fruin that GRACE obtained Judge Carey's March 4, 2015 ORDER by fraud.

Attorney Rosemarie S. Lewis and the Borton Petrini LLP law firm did not inform Judge Fruin that the order GRACE'S bankruptcy attorneys obtained from United States Bankruptcy Judge Carey was not the order GRACE's bankruptcy attorneys had told APPELLANT they were going to obtain.

Attorney Rosemarie S. Lewis and the Borton Petrini LLP law firm did not tell Judge Fruin that Judge Carey's March 4, 2015 ORDER was not the order APPELLANT had agreed to and that APPELANT was misled by GRACE'S bankruptcy attorneys about the type of order GRACE'S bankruptcy attorneys were applying for.

GRACE'S California attorneys did not inform Judge Fruin that under California Business and Professions Code section 17200 any "unlawful", "unfair" or "fraudulent business act or practice is deemed to be unfair competition. Section 17200 imposes strict liability. It is not necessary to show that the defendant intended to injure anyone. Virtually any law federal, state or local can serve as a predicate for a Section 17200 action. Section 17200 borrows violations of other laws and treats them as unlawful practices independently actionable under the Unfair Competition Act. The "unlawful business activity" which is proscribed by section 17200 includes anything that can properly be called a business practice and that at the same time is forbidden by law. An unfair business practice occurs when the practice offends established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. State Farm Fire & Casualty Company v. Superior Court 45 Cal. App.4[th] 1093.

GRACE'S California attorneys processing of GRACE'S motion to dismiss offends established public policy. GRACES'S California attorneys processing of GRACE's motion to dismiss was immoral, unethical, oppressive, and unscrupulous.

III. GRACE AND ITS ATTORNEYS HAVE ACTED IN BAD FAITH, VEXATIOUSLY, WANTOMLY, AND FOR OPPRESSIVE REASONS. THIS COURT HAS THE POWER TO AWARD MONETARY COMPENSATION TO APPELLANT FOR THE DETRIMENT CAUSED TO APPELLANT BY GRACE'S ATTORNEYS AND GRACE'S BAD FAITH, UNETHICAL, FRAUDULNT, OPPRESSIVE AND UNSCRUPULOUS CONDUCT.

Chambers v. Nasco, Inc. (1991) 501 U.S. 32 (1991)

Bauguess v. Paine (1978) 22 Cal. 3d 626.

19

Satterfield v. Garmine (1967) 65 Cal.2d 738.

The judiciary has a solemn obligation to do justice. For the judiciary, nothing can be more important than justice. The interests of justice are paramount in all legal proceedings. Supreme Court Justice Kennard's concurring and dissenting opinion in Moncharsh v. Heily & Blase (1992) 3 Cal.4[th] 1.

IV. THIS COURT SHOULD ORDER GRACE'S ATTORNEYS TO PAY APPELLANT MONETARY COMPENSATION IN THE AMOUNT OF $1,242,787 FOR THE DETRIMENT CAUSED TO APPELLANT IN ACKNOWLEGEMENT OF THE PUBLIC POLICY THAT WILL BE VINDICATED BY GRANTING THIS MOTION TO CONSOLIDATE APPEAL CASES FOR ORAL ARGUMENT AND OTHER RELIEF.

Between November 21, 2016 and October 21, 2019 APPELLANT spent 1775.4 hours responding to GRACE'S motion to dismiss APPELLANT'S action in Los Angeles Superior Court Case No. BC 173952 and other respondent's copycat motions to dismiss APPELLANT'S action against them in Los Angeles Superior Court Case No. BC 173952.

Under Code of Civil Procedure Section 1021.5 this Court is obligated to award monetary compensation to the successful litigant when important social policy is vindicated in litigation, especially in a case like this where the financial burden on APPELLANT is so great due to the actions of GRACE and its attorneys.

A significant benefit to the general public should be recognized simply from the effectuation of fundamental statutory policy that requires attorneys to act honestly and chemical pesticide manufactures to not sell pesticides that have not been registered with the Environmental Protection Agency of the State of California..

Satterfield v. Garmine (1967) 65 Cal.2d 738.

The judiciary has a solemn obligation to do justice. For the judiciary, nothing can be more important than justice. The interests of justice are paramount in all legal proceedings. Supreme Court Justice Kennard's concurring and dissenting opinion in Moncharsh v. Heily & Blase (1992) 3 Cal.4[th] 1.

IV. THIS COURT SHOULD ORDER GRACE'S ATTORNEYS TO PAY APPELLANT MONETARY COMPENSATION IN THE AMOUNT OF $1,242,787 FOR THE DETRIMENT CAUSED TO APPELLANT IN ACKNOWLEGEMENT OF THE PUBLIC POLICY THAT WILL BE VINDICATED BY GRANTING THIS MOTION TO CONSOLIDATE APPEAL CASES FOR ORAL ARGUMENT AND OTHER RELIEF.

Between November 21, 2016 and October 21, 2019 APPELLANT spent 1775.4 hours responding to GRACE'S motion to dismiss APPELLANT'S action in Los Angeles Superior Court Case No. BC 173952 and other respondent's copycat motions to dismiss APPELLANT'S action against them in Los Angeles Superior Court Case No. BC 173952.

Under Code of Civil Procedure Section 1021.5 this Court is obligated to award monetary compensation to the successful litigant when important social policy is vindicated in litigation, especially in a case like this where the financial burden on APPELLANT is so great due to the actions of GRACE and its attorneys.

A significant benefit to the general public should be recognized simply from the effectuation of fundamental statutory policy that requires attorneys to act honestly and chemical pesticide manufactures to not sell pesticides that have not been registered with the Environmental Protection Agency of the State of California.

V. ALLOWING GRACE'S MOTION TO DISMISSTO STAND IS AGAINST PUBLIC

GRACE willfully violated laws designed to protect the public causing horrific damages to be suffered.

The willful actions of dismissed parties GRACE, complained about in the underlying action and described in deposition testimony of Greg Adams, Jeffrey

Humphreys, and David Duncan, attached as Exhibits 65, 66, and 67 Volume 1 and Volume 2 of Exhibits filed in Support of this motion, are punishable as crimes.

*"In general, as between a person who has been enriched as a result of his or her violation of law, and a person intended to be protected by the law who is harmed by the violation, for the violator to retain the benefit would be unjust."* Cortez v. Purolator Air Filtration Products (2000) 23 Cal.4[th] 163, at 182.

The California legislature has found and declared that it is necessary and desirable to provide for the safe use of pesticides.  California Food & Agriculture Code section 12980.

The words "pesticide" and "economic poison" are used interchangeably in the California Food & Agriculture Code.

*"It is unlawful for any person to manufacture, deliver, or sell any economic poison or any substance of mixture of substances that is represented to be an economic poison...which is not registered according to this chapter."*  California Food & Agriculture Code section 12993.

Respondent GRACE manufactured a substance named SYLOID 244 for use as an economic poison (pesticide) but failed to register that pesticide as required by California Food and Agriculture Code section 12993.

GRACE failed to register its pesticide product SYLOID 244 with the Environmental Protection Agency as required by 7 U.S.C. §136 et seq.

The Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. §136 et seq.) provides for federal regulation of pesticide distribution, sale, and use.

All pesticides used, distributed, or sold in the United States must be registered (licensed) by the EPA.

GRACE illegally sold its unregistered pesticide product SYLOID 244 to TERMITE CONTROL for use as an economic potion (a pesticide) to eradicate termites.

GRACE knew that TERMITE CONTROL'S illegal application of SYLOID 244 in residential structures to eradicate termites would invade the airspace in occupied residential structures in which SYLOID 244 was "installed" by TERMITE CONTROL

TERMITE CONTROL illegally sold and applied the SYLOID 244 it had illegally purchased from GRACE in such a manner that SYLOID 244 invaded living areas in APPELLANT'S home. That was an illegal act, an act prohibited by California Food & Agriculture sections 12993 and 12991 (e).

*"It is unlawful for any person, by himself, or through another to use ...or dispose of any economic poison, except in compliance with rules and regulations of the director."* California Food & Agriculture section 12991 (e).

After applying SYLOID 244 in APPELLANT'S home, TERMITE CONTROL was cited three times for violation of laws designed to protect the public – once by the State of California Structural Pest Control Board, once by the Los Angeles County Agricultural Commissioner, and once by the State of California Department of Food and Agriculture Pesticide Enforcement Branch.

In each citation TERMITE CONTROL was ordered to cease and desist using the economic poison (pesticide) SYLOID 244. See Exhibits 16 and 17 attached to "Request for Judicial Notice" filed on December 17, 2018 in Court of Appeal Case No. B286138.

Those three government entities regulate the use of pesticides in California. Each one of them ordered TERMITE CONTROL to immediate stop using SYLOID 244 because those three governmental agencies knew TERMITE CONTROL'S use of SYLOID 244 to eradicate termites would cause irreparable harm and presented an immediate hazard to the public.

*"The agricultural commissioner, upon a finding that the use, handling, delivery or sale of in violation of any provision of this division, or any regulation issued pursuant to it, is taking place, or appears imminent, and if such activity is allowed to proceed will present an immediate hazard or cause irreparable damage, may issue an order to the persons responsible to cease and desist from further commission of such violation."* California Food & Agriculture code section 13102.

See also, California Food & Agriculture Code section 13101, which states:

*"The director upon a finding that the use, handling, delivery or sale of economic poison in violation of any provision of this division, or any regulation issued pursuant to it, is taking place, or appears imminent, and such activity if allowed to proceed will present an immediate hazard or cause irreparable damage, may issue an order to the person responsible for such activity to cease and desist from further commission of such violation.*

TERMITE CONTROL was repeatedly ordered to immediately cease and desist the use of SYLOID 244 pursuant to California Food and Agriculture Section 11896 as well as pursuant to California Food & Agriculture sections 13102 and 13101.

*California Food & Agriculture Code section 11896 authorizes a government official, upon a finding that the use, handling, delivery or sale of an economic poison [a pesticide] in violation of any provision of the code regulating the sale and use of pesticides [Division 6], or any regulation issued pursuant to it, is taking place, or appears imminent, and such activity if allowed to proceed will present an immediate hazard or cause irreparable damage, may issue an order to persons responsible for such activity to cease and desist from further commission of such violation.*

TERMITE CONTROL'S application of SYLOID 244 in APPELLANT'S home was a criminal act.

- *California Food & Agriculture Code section 11891 provides that any person who violates any provision of Division 6 regulating the sale, use and handling of a pesticide is guilty of a misdemeanor.*

- *California Food & Agriculture Code section 12996 provides that every person who violates any provision of this division relating to pesticides, or any regulation issued pursuant to a provision of this division relating to pesticides is guilty of a misdemeanor ..."*

<u>Ongoing Public Health Hazard Presented by TERMITE CONTROL'S Illegal Sales Tactics</u>

In its sales material, TERMITE CONTROL represents that SYLOID 244 is a non-toxic naturally occurring mineral. Those representations are false.

SYLOID 244 does not exist in nature.

It is manmade.

SYLOID 244 is the trade name of a synthetic chemical manufactured in a chemical plant by GRACE.  See Exhibit 1 (GRACE Material Safety Data Sheet for SYLOID 244), Exhibit 2 (GRACE Technical Note for SYLOID 244), Exhibit 3 (another GRACE Technical Note for SYLOID 244),  page 23 of Exhibit 4 (December 18, 2008 GRACE DAVISON Silica Products – Residual Solvents Statement), Exhibit 4 (another GRACE Technical Note for SYLOID 244) - on pages 2 through 25 of "Motion to Take Judicial Notice" filed on December 7, 2018 in Court of Appeal Case No. B286138.

**SYLOID 244 is a toxic air contaminant** whose pesticidal use is regulated by the Department of Pesticide Regulation.  California Health & Safety Code section 39655 (a).

All pesticides sold in California come with the following implied warranties:

"(a) That the economic poison corresponds to all claims and descriptions which the registrant has made in respect to it in print.
"(b) That the economic poison is reasonably fit for use for any purpose for which it is intended according to any printed statement of the registrant."
California Food & Agriculture Code section 12854.

California Food & Agricultural Code section 11791 makes it a crime for a pest control operator to make any false or fraudulent claim, or misrepresent the effect of the pesticide to be applied.

*"It is unlawful for any person that is subject to this division to do any of the following:*
*"(a) Make any false or fraudulent claim, or misrepresent the effects of material or method to be applied, apply any worthless or improper material, or otherwise engage in any unfair practices.*

As part of its sales presentation to the residents of the condominium complex where APPELLANT lived, TERMITE CONTROL handed out an information brochure in which TERMITE CONTROL represented that: (A)

SYLOID 244 (a silica aerogel) is a safe non-toxic natural mineral that appears naturally in nature. (B) That SYLOID 244 is not a chemical. (C) That it is safe to live in a residential structure in which SYLOID 244 was installed by use of TERMITE CONTROL's patented method of installing SYLOID 244. Each of these statements are false.

In TERMITE CONTROL'S sales brochure TERMITE CONTROL states:

*"After reviewing the test results, we knew that silica aerogel was the only product that would accomplish everything we set out to do:*
*"3 Being a **natural mineral,** it poses no significant health or environmental hazard."*

*"QUESTION:*
*"Is the product used in the patented HOME SAVING DEHYDRATION SYSTEM® highly toxic?"*

*"ANSWER:*
*"NO. Silica aerogel is an inorganic natural mineral with <u>ABSOLUTELY</u> no toxic chemicals."*

*"QUESTION:*
*"Should a property owner be concerned in having these products that last forever in their structure?"*

*"ANSWER:*
*"Absolutely not. The <u>non chemical</u> [sic] silica aerogel is introduced with pneumatic equipment that electrostatically charges dust particles that cause them to cling to wood member surfaces. Once in place and static charge subsists the porous wood holds the tiny (3 micron) dust particles firmly in place."*

*"QUESTION:*
*"What is the silica aerogel used in the HOME SAVING DEHYDRATION SYSTEM®?*

*"ANSWER:*
*"It is selected silica sand that is reduced to a 3 micron particle size, providing a highly absorbent desiccant dust."*

*"QUESTION:*

*"Is silica aerogel dust approved by the Environmental Protection Agency?*

*"ANSWER:*
*"Since its advent."*

*"QUESTION:*
*"Since silica aerogel is made of silica, will this system application pose any added significant danger of structure occupant developing silicosis?*

*"ANSWER:*
*"No. How and where the silica aerogel is installed in the structure, there is no danger of prolonged exposure inside the living space after installation is completed."*

*"QUESTION:*
*"Is silica aerogel highly toxic and unsafe?*

*"ANSWER:*
*"NO. It is a* **natural mineral** *not a chemical."*

Each of these answers is false.

Previously on March 16, 1993 TERMITE CONTROL was ordered by the Structural Pest Control Board of the State of California to desist using such false statements. See Exhibit 14 on pages 69 and 70 of "Second Motion to Take Judicial Notice" filed on December 19, 2018 in Court of Appeal Case No. B286138.

*"...inorganic silica aerogel [SYLOID 244] will remain in place permanently, killing any insect that comes in contact with it, indefinitely! On contact, the highly absorbent silica aerogel particles cling to insects [sic] waxy exoskeleton absorbing its body fluids, causing death by dehydration."*

The above statement is true. The very same properties of SYLOID 244 which enable it to kill insects on contact also enable it to cling to moist surfaces such as mucous membranes in the nose and throat and especially lung tissues in human beings.

The above quotes are taken directly from TERMITE CONTROL'S sales brochure.

A copy of TERMITE CONTOL's sales brochure was presented to the Court of Appeal and filed as Exhibit 10 on pages 42 through 55 in APPELLANT'S "Second Motion to Take Judicial Notice ..." - filed in  the Court of Appeal on December 19, 2018.

In 1996, TERMITE CONTROL'S information brochure was delivered by TERMITE CONTROL to residents of the condominium complex and to the homeowner association in charge of management of the common area of the condominium complex in which APPELLANT lived in order to convince APPELLANT and the homeowner association that it was safe to have their property treated with SYLOID 244.

Previously, on March 16, 1993, TERMITE CONTROL had been ordered by the Structural Pest Control Board of the State of California to cease and desist making the false advertising claims that silica aerogel in not a "chemical" product.

TERMITE CONTROL was advised by the Structural Pest Control Board that silica aerogel is a pesticide chemical and that is why it is required to be registered with the EPA and with the State of California's Department of Pesticide Regulation.

A copy of the letter referred to above from the Structural Pest Control Board to TERMITE CONTROL was filed by APPELLANT as Exhibit 14, on pages 69 and 70 of "Second Motion to Take Judicial Notice" filed on December 19, 2018 in Appeal Case No. 286138.

During the entire time TERMITE CONTROL was installing GRACE'S product SYLOID 244 in residential structures to exterminate termites GRACE knew that small particles of silica aerogel (SYLOID 244) are dangerously toxic.

As early as November 1979 it was public knowledge in the scientific community that inhaling extremely small particles of silica aerogel can cause immediate death.

SYLOID 244 is a synthetic silica particle.

In a publication published in connection with a 1979 conference on "Health Effects of Synthetic Silica Particles", sponsored by GRACE, is published the following description of the toxicity of small particles of silica:

*"Regarding Dr. Schepers's question regarding the action of extremely small silica particles causing the death of small animals, I can speak with some degree of certainty regarding the effect of extremely fine particles of different dusts when in contact with the lining of the air spaces. If say, 20 mg of coarse particles of whatever character, whether kaolin or silica, in suspension, is injected intratrachially into rats' lungs, the animals will survive. If, however, 20 mg of extremely fine particles less than 0.5 µm in diameter is injected, those animals will die before the syringe is withdrawn from the trachea, the death being due to a fulminating pulmonary edema. What happens is, apparently, that the extremely fine particles are capable of penetrating the alveolar lining and injuring the endothelium of the capillary so that the capillaries lose their semipermeability and become permeable."* Statement made by Dr. Paul Gross, who was the Director of Pathology Research, Industrial Health Foundation, Inc., Pittsburgh, Pa. 15232.

Above quote is an excerpt from ASTM Special Technical Publication STP732 published by the American Society for Testing and Materials in 1981, Library of Congress Catalog Card Number 80-69063, titled, "Health Effects of Synthetic Silica Particles" found on page 63, Exhibit 12, attached to "Second Motion to Take Judicial Notice" filed on December 19, 2018 in Appeal Case No. 286138. See also Exhibit 13, attached to the same motion.

ASTM Special Technical Publication STP732 is a report on the Symposium on Health Effects of Synthetic Silica Particulates held 5-6 November 1979 in Benalmadena-Costa (Torremolinos) Spain.

ASTM Committee E-34 on Occupational Health and Safety and the Industrial Health Foundation jointly sponsored the symposium. Paul Gross presided as symposium chairman; D.D. Dunnom served as symposium coordinator and edited that publication.

A complete copy of TERMITE CONTROL'S information book referred to above is attached as Exhibit 10, on pages 42 -- 55 of "Second Motion to Take Judicial Notice" filed on December 19, 2018 in Appeal Case No. 286138.

TERMITE CONTROL prepared and passed out a "Material Safety Data Sheet" (MSDS) for SYLOID 244, which was provided to APPELLANT after installation of SYLOID 244 in his home.

A copy of TERMITE CONTROL'S MSDS is attached as Exhibit 11 on pages 57-60 of "Second Motion to Take Judicial Notice" filed on December 19, 2018 in Appeal Case No. 286138.

In its MSDS (see Exhibit 11 on page 60 attached to "Second Motion to Take Judicial Notice filed on December 19, 2018) TERMITE CONTROL falsely represents [ under the heading 'REGULATORY STATUS"] that SYLOID 244 is approved by the EPA for use as a pesticide by providing an E.P.A. registration number. TERMITE CONTROL also falsely represented that SYLOID 244 was/is approved by the E.P.A. in its sales brochure. See page 52 of Exhibit 10 of "Second Motion to Take Judicial Notice" filed on December 19, 2018 in Appeal Case No. 286138.

SYLOID 244 was not approved by the federal EPA for use as a pesticide nor was it approved by the California governmental agencies that regulate use of pesticides in California.

The registration number provided by TERMITE CONTROL in its MSDS is the registration number of the plant that manufactures SYLOID 244.

It was a violation of a law designed to protect the public for TERMITE CONTROL to make these misrepresentations.

It is unlawful for any person, by himself, or through another, to do any of the following with respect to a pesticide:

"(a) Make any material or substantial misrepresentation.
"(b) Make any false promises of a character likely to influence, induce or deceive.
"(c) Engage in illegitimate business or dishonest dealing.
"(d) Cause to be published or distributed any false or misleading advertisement.
"(e) For any person to use, store, transport, handle, or dispose of any economic poison, or of any container which holds or has held such economic poison, except in compliance with rules and regulations of the director." Food & Agriculture section 12991.

Section 39655 (a) of the California Health & Safety Code defines TOXIC AIR CONTAMINANT as follows: *"(A) 'Toxic air contaminant" means an air pollutant which may cause or contribute to an increase in mortality or in serious illness, or which may pose a present or potential hazard to human health. ... A toxic air contaminant which is a pesticide shall be regulated in its pesticidal use by the Department of Pesticide Regulation pursuant to Article 1.5 (commencing with Section 14021) of Chapter 3 of Division 7 of the Food and Agricultural Code."*

SYLOID 244 is a toxic air contaminant. SYLOID 244 not a safe non-chemical natural mineral.

California Food & Agriculture Code sections 12841, 12842, and 12843.

In the underlying litigation (TIG CASE) APPELLANT alleges in his Fifth Amended Cross-Complaint that SYLOID 244 is a toxic substance which was illegally manufactured, illegally sold, and illegally applied in APPELLANT'S home where it contaminated APPELLANT'S home and personal property, made APPELLANT and APPELLANT'S wife and children sick, caused damage to their personal property, and caused APPELLANT to suffer financial losses, medical expenses, decontamination expenses, and physical and emotional damages.

In paragraph 72 on page 27 of APPELLANT'S Fifth Amended Cross-Complaint APPELLANT alleges that GRACE: *"...with knowledge of the dangerous properties of SYLOID 244...and its unfitness and danger to human occupants inhabiting an atmosphere containing SYLOID 244, and with knowledge that it was against the law to distribute, sell, offer for sale, hold for distribution, deliver, offer to deliver, release for delivery or manufacture SYLOID 244 for use as a pesticide, sold and delivered SYLOID 244 in the form of 3 micron particles of silica dust to HOME SAVINGS for use as a pesticide in the CONDOMINIUM COMPLEX; to be applied in the CONDOMINIUM COMPLEX by HOME SAVING via HOME SAVING'S 'proprietary pesticide sandblasting system.' Due to its inherent characteristics, no safe design of SYLOID 244 is possible for use of SYLOID 244 as a pesticide in HOME SAVING's 'proprietary sandblasting pest control process."*

In paragraph 73 on page 27 of APPELLANT'S Fifth Amended Cross-Complaint APPELLANT alleges, *"SYLOID 244 is an irritating toxic poisonous dusts capable of causing dermatitis, lung damage and dried out mucous membranes if it comes in contact with or is inhaled by human beings. At the time of GRACE's and GRACE DAVISON's sale and delivery of SYLOID 244 to HOME SAVING, SYLOID 244 was not registered for use as a pesticide with either the US EPA or with the State of California."*

In paragraph 74 on page 28 of APPELLANT'S Fifth Amended Cross-Complaint, APPELLANT alleges: *"It was against the law for GRACE DAVISON to manufacture, sell and deliver SYLOID 244 and against the law for GRACE to sell and deliver SYLOID 244 to HOME SAVING to use as a pesticide. It was against the law for HOME SAVING to apply SYLOID 244 in the CONDOMINIUM COMPLEX. California Food & Agriculture Section 12993; 7 US Code section 136(a). Business & professions Code sections 8538, 85553, 8638, 8642, 8648, 8695. California Code of Administrative Regulations Title 3 Division 6, sections 6600, 6614, 6616. Penal Code sections 374.8 and 594(a)"*

In paragraph 75 on page 28 of APPELLANT'S Fifth Amended Cross-complaint APPELLANT alleges, *"As a direct and proximate result of the acts and omissions of cross-defendants and each of them the SMOLKERS and each of them, involuntarily came in contact with SYLOID244, and were injured as a direct and proximate result thereof."*

A copy of APPELLANT'S Fifth Amended Complaint is in Volume 6 of the Clerk's Transcript of the Record on Appeal for Appeal Case No. B286138 on pages 1426 through 1495.

A copy of APPELLANT'S Fifth Amended Complaint is also in Volume 1 of the Clerk's Transcript of the Record on Appeal for Appeal Case No. B287626 on pages 91 through 160.

After installation of SYLOID 244 in APPELLANT'S condominium unit and in the wall voids in the walls surrounding APPELLANT'S condominium unit:

- APPELLANT'S young daughters Judi and Leah developed sleep disorders which made it impossible for them to wake up in the morning to go to school. They received medical treatment for their sleep disorder. The issue of whether this is an injury for which TERMITE CONTROL or GRACE or any other respondent should be

ordered to pay damages or reimburse medical expenses has not been tried as a result of the dismissals of APPELLANT'S action that are the subject of these appeal cases.

- APPELLANT'S wife Alice developed breast cancer and diverticulitis which caused her to be hospitalized for approximately one month and which necessitated that she suspend her treatment for cancer. The issue of whether these are an injury for which TERMITE CONTROL or GRACE or any other respondent should be ordered to pay damages or reimburse medical expenses has not been tried because of the dismissal of APPELLANT'S action against respondents.

- During the course of the underlying litigation, APPELLANT'S medical experts testified that APPELLANT suffered physically disabling maladies as a result of being exposed to SYLOID 244. APPELLANT was treated by a battery of physicians (including a skin doctor, an ear nose and throat doctor, an environmental health doctor and his primary care physician) - all of whom gave testimony to the effect that the medical injuries suffered by APPELLANT were caused by his exposure to SYLOID 244.

- APPELLANT was forced to watch his wife and children suffer from the injuries described above as respondents and each of them delayed resolution of the underlying case and succeeded in creating an **INFORMATION BAN** on the dangers presented to the public by the installation of SYLOID 244 in residential structures.

- Respondents filed demurrers and motions to strike APPELLANT'S original cross-complaint and amended cross-complaints which deprived APPELLANT of fair access to justice.

- Judge Janavs used respondents' demurrers and motions to strike as an excuse for creating an **INFORMATION BAN** on information regarding the danger to the public of SYLOID 244 installed in the wall voids of residential structures.

- Judge Janavs issued orders, as part of her rulings on respondents' demurrers and motions to strike, which limited the number of pages in APPELLANT'S amended cross-complaints.

- APPELLANT was forced to watch his wife and children suffer as APPELLLANT waited for APPELLANT'S trial of the underlying action against TERMITE CONTROL to commence.

- APPELLANT'S trial against TERMITE CONTROL did not go to completion because Trial Judge Fruin declared a mistrial while trial was in progress.

32

- Judge Fruin explained he was declaring and then declared a mistrial for the personal reason that continuing APPELLANT'S ongoing trial against TERMITE CONTROL would interfere with Judge Fruin's Christmas plans.
- After Judge Fruin came back from his Christmas holiday, on February 22, 2002, on his own initiative, Judge Fruin issued an order which imposed a stay on the entire litigation pending the outcome of cross-defendant W.R. Grace's bankruptcy proceedings.
- Judge Fruin's stay of the entire litigation pending the outcome of defendant GRACE'S bankruptcy proceedings tipped APPELLANT'S Los Angeles Superior Case No. BC 173952 into the abyss of never knowing when APPELLANT is allowed to bring APPELLANT'S case against respondents to trial.
- Judge Fruin's stay of the entire proceedings necessitated a drastic reordering of APPELLANT'S priorities.
- Judge Fruin's February 22, 2002 indefinite duration stay order deprived APPELLANT of access to justice.
- APPELLANT found his life literally obliterated by the presence of SYLOID 244 in his home and by the presence of SYLOID 244 on and in his and his family's personal belongings.
- APPELLANT'S working hours had been spent trying to find a way to decontaminate his home and personal property, to find a way to rid his home and personal property of SYLOID 244 contamination and to obtain funds to do what was needed to accomplish that goal.
- Trying to get rid of SYLOID 244 contamination worked its way into everything APPELLANT did in his life. Trying to get rid of SYLOID 244 swallowed APPELLANT'S life.
- As a result of Judge Fruin's indefinite stay on APPLELLANT'S entire action pending the outcome of W.R. Grace bankruptcy proceedings, APPELLANT was forced to SELL his condominium unit at a substantial loss.
- Whether the above described health problems, physical injuries, economic losses, and emotional damages were caused by exposure to SYLOID 244 was never tried because APPELLANT has not been able to have to APPELLANT'S constitutionally guaranteed day in court.

*"In general, as between a person who has been enriched as a result of his or her violation of law, and a person intended to be protected by the law who is harmed by the violation, for the violator to retain the benefit would be unjust."* <u>Cortez v. Purolator Air Filtration Products</u> (2000) 23 Cal.4th 163, at 182.


CONCLUSION

     For the reasons set forth above, good cause has been established for this Court to Grant APPELLANT'S motion to consolidate appeal cases for oral argument and application for monetary compensation in the amount of $1,242,787.00.


Dated: October 22, 2019         Respectively submitted,

_____

Gary Smolker, Appellant in pro per

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. THE JUDICIARIES SOLEMN OBLIGATION IS TO DO JUSTICE

If the Court of Appeal does not reverse the Judgment of Dismissal of GRACE which is erroneous on its face, this Court will not only be tolerating substantial injustice but becoming its active agent.

Every court has the power and the duty to "amend and control its process and orders so as to make them conform to law and justice." (Code Civil Proc. §128, subd. (a)(8). When they construe statutes, courts are enjoined to do so in a way that will promote justice. (E.g., Civ. Code §4; Code Civ. Proc. §§4 and 583.130).

Code of Civil Procedure § 583.130 states that, *"It is the policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action but that all parties shall cooperate in bringing the action to trial or other disposition...the policy favoring trial or other disposition of an action on the merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter."*

The evidence proving that GRACE unlawfully sold its pesticide product SYLOID 244 is firmly established in the deposition testimony of the State of California officials and employees in charge of regulating the sale and use of pesticides in the State of California.

GRACE will not suffer any prejudice from delay in prosecution of Los Angeles Superior Court Case No. BC 173952 because uncontestable evidence that GRACE illegally sold its pesticide product SYLOID 244has been permanently recorded by way of deposition testimony of State of California officials.

The delay in prosecution of Los Angeles Superior Court Case No. BC 173952 was caused by GRACE filing for Bankruptcy protection and then while in Bankruptcy by GRACE obtaining Judge Carey's March 4, 2015 ORDER which

makes it impractical for APPELLANT to bring Los Angeles Superior Court Case No. BC 173952 to conclusion in the Los Angeles Superior.

APPELLANT did not bring his action against GRACE to trial because APPELLANT was enjoined from doing so by Judge Fruin's February 22, 2002 STAY order.

Under such circumstances it would be a miscarriage of justice to fail to reverse Judge Fruin's judgment of dismissal of GRACE.

## II. GRACE HAS UNCLEARD HANDS

GRACE obtained Judge Carey's order by failing to inform Judge Carey of all relevant facts available to GRACE and by misleading Judge Carey.

GRACE'S sale of SYLOID 244 is unlawful, it is criminal.

## III. APPELLANT WAS ENJOINED FROM BRINGING HIS ACTION AGAINST GRACE TO TRIAL.

Pursuant to Judge Fruin's February 22, 2019 STAY ORDER APPELLANT was enjoined from bringing his action against GRACE to trial.

## CONCLUSION

The just thing to do under the circumstances is to order GRACE's attorneys and GRACE to pay APPELLANT compensation in the amount of $1,242,787.00 for the detriment GRACE causes APPELLANT to suffer as a result of GRACE brining its meritless motion for dismissal of APPELLANT'S action.

FOR all the foregoing reasons APPELLANT'S motion to consolidate appeal cases for oral argument should be granted and APPELANT'S application for monetary compensation should be granted.

Dated: October 22, 2019                    Respectively submitted,

Gary Smolker, appellant in pro per

36

## DECLARTATION OF GARY SMOLKER

I, Gary Smolker declare:

1. I am an attorney at law licensed to practice law in all the courts of the State of California.

2. I have been continuously engaged in the private practice of law since 1973.

3. My hourly billing rate is $700 per hour.

4. In the time period November 21, 2016 through October 21, 2019 I spent 1,775.4 hours of my time dealing with GRACE'S motion to dismiss and each of the other copycat motions to dismiss that followed.

5. Exhibits 62 through 65 contained in Volume 1 of Exhibits and Exhibits 66 through 69 in Volume 2 of Exhibits submitted herewith are exact copies of documents previously served on GRACE'S California State attorneys in Los Angeles Superior Court on or about November 6, 2000 in opposition to pending motions for summary judgment and summary adjudication filed in Los Angeles Superior Court Case No. BC 173952 by GRACE'S attorneys and/or TERMITE CONTROL'S attorneys scheduled to be heard on November 22, 2000.

6. Exhibits 73 through 90 of Exhibits contained in Volume 2 of Exhibits submitted herewith are exact copies of email correspondence I had with respondents' appellate attorneys in Court of Appeal Case Nos. B281406, B286138, B287626, and B289828 in the time period August 22, 2019 through October 14, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration is executed by Gary Smolker on October 22, 2019 at Encino, California.

_____

Gary Smolker

*TIG Insurance Company vs. Gary Smolker, etal.*

Court of Appeal Case Nos. B281406, B286138, B287626, B289828

COMBINED PROOF OF SERVICE FOR ALL PENDING APPEAL CASES

I am a resident of the State of California, over the age of eighteen years, and not a party to this action. My business address is 16055 Ventura Blvd., Suite 525, Encino, CA. 91436. On October 22, 2019, I served the following attached document:

NOTICE OF MOTION AND MOTION TO CONSOLIDATE APPEAL CASES FOR ORAL ARGUMENT AND FOR ORDER ORDERING ATTORNEY ROSEMARIE S. LEWIS, ETC.

__X__ VIA MAIL, by placing a true copy of the document(s) listed above in a sealed envelope with postage fully prepaid in United States mail in the State of California at Encino, California, addressed as set forth in the attached service list:

See attached list.

I am familiar with the Smolker Law Firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with the postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 22, 2019, at Encino, California.

LESLIE GONZALEZ

Combined Service List

TIG Insurance Co. V Gary Smolker, et. Al.
LASC Case No. BC173952
Appeal Case Nos. B281406, B286138, B287626, B289828

## SERVICE LIST
*Smolker v. W.R. Grace & Co., et al.*
Second Appellate District, Division Seven, Case No. B281406
Superior Court of Los Angeles County, Case No. BC173952

ROSEMARIE S. LEWIS (158891)
JEFFREY Z. LIU (276849)
BORTON PETRINI, LLP
626 Wilshire Boulevard, Suite 975
Los Angeles, CA 90017
(213) 624-2869
Rlewis@bortonpetrini.com
Jliu@bortonpetrini.com
*Attorney for Cross-Defendants and Respondents*
  *W.R. Grace & Co. And Grace Davidson*

*(Served via United States Postal Service)*

## SERVICE LIST

*Smolker v. Truck Insurance Exchange, et al.*
Second Appellate District, Division Seven, Case No. B286138
Los Angeles County Superior Court, Case No. BC173952

PETER SCHWARTZ #109859
STEVEN R. INOUYE #245024
GORDON & REES LLP
633 W. 5th Street 52nd Floor
Los Angeles, CA 90071
Pschwartz@gordonrees.com
Sinouye@grsm.com

*Attorney for Cross-Defendant and Respondent*
*Truck Insurance Exchange*

*(Served via Unites States Postal Service)*


ROBERT DANIEL HOFFMAN #123458
CHARLSTON, REVICH & WOLLITZ LLP
1925 Century Park East, Suite 320
Los Angeles, CA 90067
County: Los Angeles County
Rhoffman@crwllp.com

*Attorneys for Cross-Defendants and Respondents*
*Coregis Group, Inc., Coregis Insurance Co., and California Insurance Company*

*(Served via Unites States Postal Service)*

RAUL LUIS MARTINEZ #82465
ELISE DALE KLEIN #111712
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071
Martinez@lbbslaw.com
Klein@lbbslaw.com

*Attorneys for Cross-Defendant and Respondent*
*Interinsurance Exchange of the Automobile Club of So. Cal*

*(Served via Unites States Postal Service)*

SERVICE LIST

Mark Kincaid, Esq. SB#118640
26 Alhaja Way
Hot Springs Village,
Arkansas, 71909
Tel: 714-955-69955
Fax: 714-784-2546
Email: mkincaid@mkincaidlaw.com

Attorneys for Home Savings
Termite Control, Inc., Wayne
Morris

## GRACE BANKRUPTY ATTORNEY SERVICE LIST

KIRKLAN & ELLIS LLP
333 South Hope Street
29th Floor
Los Angeles, CA 90071
Telephone: (213) 680-8400

KIRKLAN & ELLIS LLP
Adam Paul, Esq.
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins, Esq.
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
Telephone: (312) 836-4047

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4003
Telephone:(310) 277-6910

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones, Esq.
919 North Market Street, 17th Floor
PO BOX 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

RECEIVED

OCT 24 2019

LOS ANGELES

1:19pm
Priority mail