## Eᴄʜɪʙɪᴛ A-1

**12/30/16 Grace Superior Court Reply**

1 | Rosemarie S. Lewis, Esq. SBN: 158891
Jeffrey Z. Liu, Esq. SBN: 276849
2 | BORTON PETRINI, LLP
626 Wilshire Boulevard, Suite 975
3 | Los Angeles, California 90017
Tel: (213) 624-2869
4 | Fax: (213) 489-3930
mtrostler@bortonpetrini.com

5 | Attorneys for Cross-Defendants
W.R. GRACE & COMPANY and Grace Davison
6

7

8

9

10

11

**FILED**

Superior Court of California
County of Los Angeles

DEC 30 2016

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Raul Sanchez

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| TIG INSURANCE COMPANY,<br>A California corporation,<br><br>        Plaintiff,<br><br>v.<br><br>GARY SMOLKER, an individual, and ALICE SMOLKER, an individual; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. BC173952<br><br>*Transferred to the Honorable Judge Richard Fruin*<br>*Department 15*<br><br>**W.R. GRACE & COMPANY AND GRACE DAVISON'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360; DECLARATION OF ROGER J. HIGGINS, ESQ. IN SUPPORT THEREOF; DECLARATION OF JEFFREY Z. LIU, ESQ. AND ROGER HIGGINS, ESQ. IN SUPPORT THEREOF;  REQUEST FOR MONETARY SANCTIONS IN THE AMOUNT OF $4896.00 AGAINST GARY SMOLKER AND/OR THE LAW OFFICES OF GARY S. SMOLKER** |
| GARY SMOLKER,<br><br>        Cross-Complainant,<br><br>v<br><br>HOME SAVINGS TERMITE CONTROL, INC., et al,,<br><br>        Cross-Defendants | **RESERVATION NO.: 161115174315**<br><br>Date:  January 17, 2017<br>Time: 8:30 A.M.<br>Place: Department 15 |

h:\0034 18\045
809\pleadings
re mtn to
dismiss\supple
mental briefing

1

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

# I. INTRODUCTION

Cross-Complainant GARY SMOLKER's ("Smolker") has made misrepresentations to this Court in his futile and ill-conceived oppositions to W.R. GRACE & COMPANY and Grace Davison's ("Grace") motion to dismiss ("Motion"). Despite his representations to this Court in both his written opposition and during oral argument (on December 20, 2016) against the granting of this Motion by stating that he had been caught unaware and was surprised by the lifting of Grace's bankruptcy stay, the evidence provided in this supplemental briefing clearly shows that Smolker was not only privy to the lifting of the bankruptcy stay, but had in fact been properly served with all pertinent documents from the bankruptcy court. Furthermore, the exhibits to this supplemental brief shall establish that Smolker had interacted with Grace's bankruptcy counsel on several occasions to discuss the stay both prior to, and after the relevant bankruptcy orders were issued and served upon all parties.

Finally, Smolker's eleventh hour contentions during oral argument regarding the existence of statutory authority that would allegedly obligate Grace to provide notice to this Court regarding the lifting of the stay are nothing more than mere puffery. Smolker's fruitless arguments shine a revealing light on his shameless efforts to confound the Court's, waste resources and time, and to delay the inevitable dismissal of this action. Grace's motion to dismiss should be granted and, as will be set forth more specifically below, and in the declaration of Jeffrey Z. Liu, Esq., monetary sanctions in the amount of $4896.00 should be imposed on Smolker for his actions.

## II. SUPPLEMENTAL FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2001, Grace filed for Ch. 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware, which imposed an automatic stay of proceedings in this litigation. On August 27, 2001, Smolker filed a claim in connection with Grace's bankruptcy assessing property damage to his condominium relating to termite extermination. Declaration of Roger J. Higgins, Esq. ("Higgins Decl.") at ¶2. This claim was based solely on Smolker's claims in this litigation. On January 30, 2015, Grace filed its Claim Objection, which was served by first class mail to Mr. Smolker at his current address. *Id.* A certificate of service regarding the claim objection was subsequently filed with the bankruptcy court. *See* Ex. C to Higgins Decl. On February 3, 2015, an amended notice of the claim

h:\0034181045
809\pleadings
re mtn to
dismiss\supple
mental briefing

2

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1  Objection was served by first class mail to Smolker at his current address. Higgins Decl. at ¶2, *see also*

2  Ex. D. to Higgins Decl.

3       On February 22, 2015, Smolker faxed a response to the Claim Objection to various

4  counsel for Grace. Higgins Decl. at ¶3, *see also* Ex. E. to Higgins Decl. This demonstrates that

5  Smolker's address was service was accurate and that Smolker did receive and review the Claim

6  Objection from Grace's bankruptcy counsel. Smolker followed this correspondence with a second faxed

7  response on February 25, 2015. *Id.*, *see also* Ex. F to Higgins Decl.

8       On March 3, 2015, Smolker contacted Roger Higgins ("Higgins"), Grace's bankruptcy

9  counsel, by phone to discuss the hearing on the Claim Objection scheduled for March 4, 2015. Higgins

10 Decl. at ¶4. Smolker and Higgins discussed the substance of the Claim Objection and the form of the

11 order to the Claim Objection to be submitted to the judge. Later that morning, Higgins sent Smolker an

12 e-mail correspondence containing the form of the order with the modifications that had been discussed

13 in their earlier phone correspondence. Higgins Decl. at ¶4, *see also* Ex. H to Higgins Decl. Smolker

14 responded to this e-mail and acknowledged receipt of the proposed order, memorialized the topics of

15 this phone conversation with Higgins in an e-mail sent later that day and indicated that he had "<u>no</u>

16 <u>objection to the Bankruptcy Court lifting the injunction which stayed prosecution of the State Court</u>

17 <u>action: *TIG Insurance Co. v. Gary Smolker, et al.* Case No. BC 173952 in Los Angeles Superior Court.</u>"

18 Ex. G. to Higgins Decl.

19      On March 4, 2015, the bankruptcy court entered its order lifting the injunction on this

20 matter. *See* Higgins Decl., Ex. I. On the same date, a copy of this order lifting the injunction was

21 served by first class mail to Smolker at his current address. *See* Higgins Decl., Ex. J. The caption on the

22 affidavit of service indicates that the document that was served was the:

23  [Signed] Thirty-Seventh Omnibus Objection to Certain Claims Filed Regarding

24  Prepetition Litigation Captioned, TIG Insurance Company v. Gary Smolker, et al., Case

25  No. BC173952 (Los Angeles County Sup. Ct.) (Janavs, J.)
     (Substantive Objection).

26

27 The docket for the bankruptcy court clarifies that the affidavit of service was for document 32518,

28

h:\003418\045
809\pleadings
re mtn to
dismiss\supple
mental briefing

3

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1 | which is the Order lifting the injunction on the instant litigation. *See* Higgins Decl., Ex. B at 10 (at entry

2 | no. 32518 and 32522). As such, Smolker was in receipt of the final order from the bankruptcy court

3 | notifying him that the injunction on the instant litigation was lifted.

4 | ### III. SUPPLEMENTAL ARGUMENT

5 | **A.    Smolker's Misrepresentations To The Court**

6 | During the December 20, 2016 hearing, Smolker made it a point to communicate to the

7 | court that Grace had lain in wait to "ambush [him]" with the information that the injunction on the

8 | litigation imposed by the bankruptcy court had been lifted. *See* Declaration of Jeffrey Liu ("Liu Decl."),

9 | Ex. 1 (Rough Transcript of December 20, 2016 hearing) at 12:9-16. However, as clearly demonstrated

10 | above, not only did Smolker receive notice and proper service of the order lifting the injunction but that

11 | he also had communicated with Grace's bankruptcy counsel Roger Higgins, Esq., via phone, fax, and e-

12 | mail the day before the bankruptcy court's order was filed.

13 | Furthermore, Smolker was provided the proposed order to lift the injunction by Mr.

14 | Higgins via e-mail before it was submitted to the bankruptcy court. Higgins Decl. at ¶4, *see also* Ex. H

15 | to Higgins Decl. In fact, Smolker responded to Mr. Higgins' e-mail, acknowledged receipt of the

16 | proposed order, memorialized the topics of this phone conversation with Higgins in an e-mail sent later

17 | that day and indicated that he had "no objection to the Bankruptcy Court lifting the injunction which

18 | stayed prosecution of the State Court action: *TIG Insurance Co. v. Gary Smolker, et al.* Case No. BC

19 | 173952 in Los Angeles Superior Court." Ex. G. to Higgins Decl. This is a complete contradiction to the

20 | claims raised by Smolker during the December 20, 2016 hearing on this motion. He wasn't ambushed

21 | regarding the lifting of the stay, he was fully and repeatedly informed of everything that was occurring

22 | with the bankruptcy court in relation to his claims for at least a day prior to the order being filed by the

23 | bankruptcy court. Smolker even provided input as to modifications to the draft order that was ultimately

24 | adopted by the bankruptcy court on March 4, 2015.

25 | **B.    Delaware Bankruptcy Court Service Requirements**

26 | On March 4, 2015, the Court entered its *Order Lifting Injunction in Prepetition Litigation*

27 | *Captioned, TIG Insurance Company v. Gary Smolker. et al., Case No. BC 173952 (Los Angeles County*

28 |

h:\0034180\045\n809\pleadings\nre mtn to\ndismiss\supple\nmental briefing

4

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1 │ *Sup. Ct.) (Janavs, J.) (Substantive Objection)* [Docket no. 32518]. ("Lift Injunction Order") *See* Higgins

2 │ Decl., Ex. I. This order was substantially identical to the form of order sent to Mr. Smolker on March 3,

3 │ 2015, via e-mail correspondence.

4 │ Regarding the service of orders entered by bankruptcy judges, Fed. R. Bankr. P. 9022

5 │ provides in relevant part:

6 │ **Judgment or order of bankruptcy judge**. Immediately on the entry of a
7 │ judgment or order the clerk shall serve a notice of entry in the manner
8 │ provided in Rule 5(b) Fed. R. Civ. P. on the contesting parties and on
   │ other entities as the court directs … Service of the notice shall be noted in
9 │ the docket. Lack of notice of the entry does not affect the time to appeal or
   │ relieve or authorize the court to relieve a party for failure to appeal within
10│ the time allowed, except as permitted in Rule 8002.

11│ Del. Bankr. L.R. 9022-1[1] provides:

12│ **Service of Judgment or Order**. Immediately upon the entry of a
13│ judgment or order, the Clerk shall serve a notice of the entry of the
   │ judgment or order on Delaware Counsel for the movant, via electronic
14│ means, as consented to by the movant. Registered CM/ECF users are
   │ deemed to have consented to service of the notice of the entry of orders or
15│ judgments via electronic means. If counsel for the movant is not a
   │ registered CM/ECF user, the Clerk shall serve a copy of the judgment or
16│ order on Delaware Counsel for the movant via first class mail. Counsel for
17│ the movant shall serve a copy of the judgment or order on all parties that
   │ contested the relief requested in the order and on other parties as the Court
18│ may direct and file a certificate of service to that effect within forty-eight
   │ (48) hours. For any pro se movant or sua sponte order, the Clerk's Office
19│ shall serve a copy of the judgment or order via first class mail on all
20│ parties affected thereby and file a certificate of service to that effect,
   │ unless otherwise directed by the Court.

21│ Furthermore only one copy of an order need be served on a party:

22│ **Service Copies**. Unless otherwise ordered by the Court, only one (1) copy
23│ of pleadings, motions and other papers need be served upon another party.

24│ Del. Bankr. L.R. 9013-3.

26│ [1] By function of Del. Bankr. L.R. 2001-1(f) & (g) and normal practice before bankruptcy courts in the District of
   │ Delaware, claims agents retained in large chapter 11 cases (with more than 200 creditors) perform the noticing function
27│ normally performed by the clerk of the court as to claims objections, including but not limited to the service of orders entered
   │ by bankruptcy judges. In the normal course of practice in large chapter 11 cases, debtors' counsel work hand-in-hand to
   │ provide service of documents, including orders, thereby relieving the Clerk's Office of that function.

28│ h:\003418\045
809\pleadings
re mtn to          5
dismiss\supple   ─────────────────────────────────────────────
mental briefing  W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1    On March 4, 2015, counsel for Grace served by first class mail a copy of the Lift
2  Injunction Order on Smolker at the address set forth above, as well as on the other claimants and on the
3  United States Trustee, the Los Angeles Superior Court and the California Court of Appeals for the 2nd
4  Appellate District at the addresses set forth above. *See* Higgins Decl., Ex. J. In compliance with Fed. R.
5  Bankr. P. 9022 and Del. Bankr. L.R. 9022-1, the affidavit of service was filed on the Bankruptcy Court
6  Docket. Bankruptcy Court Docket no. 32522. As such, Grace complied with all relevant Delaware
7  Bankruptcy Court service requirements, and Smolker was given proper notice and service of the Lift
8  Injunction Order on March 4, 2015.

9  **C.    State Notice Requirements**

10    During oral argument at the December 20, 2016 hearing for this motion, Smolker raised
11  California Rule of Court 3.650 as a possible statute under which Grace allegedly failed to meet its duty
12  to this Court. Under California Rule of Court Rule 3.650, any party "in the action who has knowledge
13  of the termination or modification of the stay must serve and file a notice of termination or modification
14  of stay" with the Court. CRC 3.650(d). Here, the facts and evidence clearly show that Smolker was
15  notified by the Bankruptcy Court on March 4, 2015 that the bankruptcy injunction staying the instant
16  matter had been lifted. *See* Higgins Decl., Exhibit B and J.

17    Despite having early notice regarding the form and content of the proposed order lifting
18  the injunction by bankruptcy counsel for Smolker, Roger Higgins, and subsequently being properly
19  notified and served the final order by the Bankruptcy Court, Smolker took no action to inform this Court
20  of the termination of stay until he filed his opposition on December 6, 2016. Smolker even admits in his
21  December 1, 2016 e-mail to Grace's counsel that he has "[i]n the past [he has] received voluminous
22  pleadings in the Grace bankruptcy," essentially admitting that he had received the Bankruptcy Court's
23  order and not taken any action on it. *See* Exhibit C to Reply to Motion to Dismiss. He further admitted
24  during the December 20, 2016 hearing that he "was not keeping in touch with the bankruptcy court" and
25  that he did not "keep track" of the status of the bankruptcy matter. Liu Decl., Ex. 1 at 11:3-5, 20-23.
26  Contrary to Smolker's contention, Grace was under no obligation to further notify him beyond the
27  minimum service requirements of the Delaware bankruptcy court. And even so, Grace still provided
28

h:\003418\045
809\pleadings
re mtn to
dismiss\supple
mental briefing

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1 | early notice of the form and content of what ultimately became the Lift Injunction Order and still

2 | Smolker failed to fulfill his obligations to prosecute the instant litigation after the stay was lifted.

3 | **D.    Smolker's Contentions Under California Code of Civil Procedure 1013(a) and 1019.5**

4 | During oral argument at the December 20, 2016 hearing on the instant motion, Smolker

5 | raised two specific California Code sections that he contends support his position regarding an alleged

6 | failure of service by Grace, California Code of Civil Procedure 1013(a) and 1019.5. California Code of

7 | Civil Procedure 1013(a) states in pertinent part:

8 |
9 | In case of service by mail, the notice or other paper shall be deposited in a post office, mailbox, subpost office, substation, or mail chute, or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage paid,
10 | addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service by
11 | mail; otherwise at that party's place of residence.

12 | This code section address only what constitutes proper service. However, this issue has been discussed

13 | thoroughly above. On March 4, 2015, a copy of the Lift Injunction Order was served by first class mail

14 | to Smolker at his current address. *See* Higgins Decl., Ex. J. Proper protocol for service was followed

15 | and Smolker had acknowledged receipt of bankruptcy court papers at this address approximately a

16 | month before. Higgins Decl. at ¶2, *see also* Ex. D. to Higgins Decl. Based on a review of the

17 | bankruptcy court docket, there was no change of address submitted by Smolker between February and

18 | March of 2015, and as such it is a safe assumption that his service information was accurate and up to

19 | date. Thus, any reliance on this CCP 1013(a) fails as proper service of the Lift Injunction Order was

20 | made upon him on March 4, 2015.

21 | California Code of Civil Procedure 1019.5 states in pertinent part:

22 |
23 | (a) When a motion is granted or denied, unless the court otherwise orders, notice of the court's decision or order shall be given by the prevailing party to all other parties or their
24 | attorneys, in the manner provided in this chapter, unless notice is waived by all parties in open court and is entered in the minutes.
25 | (b) When a motion is granted or denied on the court's own motion, notice of the court's order shall be given by the court in the manner provided in this chapter, unless notice is
26 | waived by all parties in open court and is entered in the minutes.

27 | This code section has no bearing on any arguments that either Smolker or Grace have raised in

28 |

h:\003418\045 809\pleadings re mtn to dismiss\supple mental briefing

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310. §583.360

1 connection with this Motion. The only motion practice that has occurred in at least the last five years in

2 the instant matter is the Motion currently before this court. Smolker has made no contention that this

3 Court has granted or denied any motions that require notice, or that there was any improper notice for

4 any motions that had been decided by this Court. As such, Smolker's reference to this code section has

5 no relevance to the issues of the instant motion and his reliance on this code section necessarily fails.

6 **E.    Smolker's Delay In Informing this Court Of the Bankruptcy Stay Does Not Fall Under the**

7 **"Impracticable" Exception of Section 583.340**

8                    Smolker's attempt in his opposition to shirk his responsibility to inform this Court

9 regarding the lifting of the bankruptcy stay does not fall under any of the exceptions to Code Civ. Proc.

10 § 583.310 as laid out in Code Civ. Proc. §583.340. Code Civ. Proc. § 583.340 specifically states:

11

12    In computing the time within which an action must be brought to trial pursuant to this
article, there shall be excluded the time during which any of the following conditions
13    existed:
(a) The jurisdiction of the court to try the action was suspended.
14    (b) Prosecution or trial of the action was stayed or enjoined.
(c) Bringing the action to trial, for any other reason, was impossible, impracticable, or
15    futile.

16 Smolker argues that under § 583.340(c), because Judge Fruin ordered proceedings in this matter stayed

17 on February 22, 2002 that it was "impossible and impractical." Opposition at 3:25-26. California case

18 law suggests otherwise. In *DeMota v. Superior Court* (1955) 130 Cal.App.2d 58, 62, it was held that

19 actions such as the delay in giving notices standing alone are insufficient to bring a matter within the

20 exceptions to the mandatory provisions of § 583.310. *See also Hayutin v. Rudnick* (1958) 158 Cal. App.

21 2d 593, 595.

22                    As such, Smolker's delay in providing this Court with notice regarding the lifting of the

23 bankruptcy stay does not bring this matter within the exception of § 583.340(c).

24 **F. Sanctions for Willful Misrepresentation**

25                    A basic tenet set forth in California law governing the conduct of lawyers is that frivolous

26 legal positions without merit are unacceptable. Under Business and Professions Code § 6068(c), a

27 lawyer has a duty to bring only "legal or just" claims or defenses. This tenet is further reinforced by

28

h:\003418\045
809\pleadings
re mtn to
dismiss\supple
mental briefing

8

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1  California Rule of Professional Conduct 3-200 which prohibits taking a legal position which the lawyer

2  knows or should know is (1) without probable cause and for the purpose of harassing or maliciously

3  injuring any person or (2) against the law (i.e. "frivolous").  Behavior that is in violation of this tenet

4  includes misrepresentation of facts or assertion of unsupported facts and warrants the imposition of

5  sanctions against the offending attorney.  *See* Cal. Ct. R. 2.30(b), *see also Bryan v. Bank of America*

6  (2001) 86 Cal. App. 4th 185, 194 (holding that "misrepresentation of 'specific facts' ... constitutes an

7  unreasonable infraction of ... the California Rules of Court"); *Pierotti v. Torian* (2000) 81 Cal. App. 4th

8  17, 31  (upholding sanctions imposed against attorneys who egregiously violated court rules by asserting

9  "unsupported facts").

10           Smolker asserted numerous times during oral argument on December 20, 2016 that he

11  had no notice of Lift Injunction Order that was entered by the Delaware bankruptcy court. Liu Decl.,

12  Ex. 1 at 12:9-16. He further stated that the Grace parties had "lain in wait" and "ambushed" him with the

13  motion to dismiss.  *Id.*  As demonstrated numerous times above, nothing could be further from the truth.

14  Smolker was given ample notice regarding the form and content of the proposed Lift Injunction Order

15  by Grace's bankruptcy attorney, Roger Higgins, Esq. *See* Higgins Decl. at ¶4, *see also* Ex. H and G to

16  Higgins Decl.  Smolker even provided input on the proposed order before it was entered by the

17  bankruptcy court.  The assertions and absurd arguments he has made to the Court to the contrary are

18  patently false and warrant sanctions.

19           No less than $4896.00 have been expended in costs and fees in the preparation of the

20  motion, reply brief, and the supplemental briefing that resulted only due to Smolker's misrepresentations

21  to this Court.  As such, Grace requests that sanctions in this amount be imposed upon Smolker.

22           Sanctions should be imposed as follows:

23    4.0 hours to prepare the Motion to Dismiss @ $195.00 per hour =          $780.00

24    Filing fee for Motion to Dismiss                         =    $60.00

25    Preparation of reply Brief – 2.8 hours @ $195.00 per hour      =    $546.00

26    Attendance at December 20, 2016 hearing @ $195.00 per hour
27        2 attorneys- 3 hours each 6hrs @ $195.00            =    $1170.00

28

h:\003418\045
809\pleadings
re mtn to
dismiss\supple
mental briefing

9

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

| | | |
|---|---|---|
| 4.0 hours for Supplemental briefing, research, secure declaration from out of state counsel, voluminous exhibits @ $195.00 per hour | = | $780.00 |
| Anticipated Reply brief – 2.0 hours @ $195.00 | = | $390.00 |
| Attendance at January 17, 2017 hearing @ $195.00 per hour 2 attorneys – anticipated 3 hours each - 6 hours | = | $1170.00 |
| TOTAL | | $4896.00 |

This amount does not include billable hours spent by moving Defendant's Bankruptcy Counsel, or in-house counsel to assist in the preparation of this pleading.

### III. CONCLUSION

For the foregoing reasons, Grace respectfully request that this Court grant its motion to dismiss for failure to prosecute. The five-year mandatory statutory deadline to bring this case to trial has expired. Accordingly, the court must dismiss this matter with prejudice. Furthermore, Grace requests that monetary sanctions be imposed on Gary Smolker and/or The law offices of Gary Smolker for his misrepresentations to the court, and the time incurred by moving defendant to seek this dismissal.

Dated:  December 30, 2016                         BORTON PETRINI, LLP


By_____
ROSEMARIE S. LEWIS, JEFFREY Z. LIU
Attorneys for Cross-Defendant W.R. GRACE
& COMPANY and Grace Davison.

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

DEC. OF
JILIU

## Declaration of Jeffrey Z. Liu

I, Jeffrey Z. Liu, declare as follows.

1.     I am admitted to practice law in the State of California. I am an attorney of record for Cross-Defendant W.R. GRACE & COMPANY and Grace Davison. I have personal knowledge of each and every fact stated in this declaration, except as to those facts as to which I am informed and believe, where I have indicated as such. If called to testify, I could testify competently thereto.

2.     Attached as Exhibit 1 to my declaration is a true and correct copy of the rough draft of the court reporter's transcript for the December 20, 2016 hearing on motion to dismiss.

3.     Our firm expended no less than four hours in attorney time in drafting and preparing the motion to dismiss. Our firm bills at a rate of $195.00 per attorney hour on this matter.

4.     Our firm expended no less than two point eight (2.8) hours in attorney time in drafting and preparing the reply to the motion to dismiss.

5.     Both Rosemarie Lewis and I attended the December 20, 2016 hearing on the motion to dismiss. We each billed for three hours of time for attendance of the hearing (including travel time).

6.     Our firm expended no less than four hours in attorney time for supplemental briefing, research, preparation of voluminous exhibits, and communication and securing a declaration from out of state counsel in preparing the supplemental brief for the motion to dismiss.

7.     While it has not occurred yet, our firm anticipates that it will spend at least two hours of attorney time in preparing the reply brief to supplemental briefing for the motion to dismiss.

8.     While it has not occurred yet, our firm further anticipates that it will expend approximately three hours apiece for the two attorneys that plan to attend the hearing on supplemental briefing currently scheduled for January 17, 2017.

9.     As is set forth in these moving papers, the total sought in the way of monetary sanctions is $4896.00.

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

1       I declare under penalty of perjury under the laws of the State of California that the

2  following is true and correct on this 30th day of December, 2016 at Los Angeles, California.

3

4           Jeffrey Z. Liu, Declarant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h:\003418\045809\pleadings re mtn to dismiss\supplemental briefing

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

**EXHIBIT 1**

Hearing - ROUGH JT

1

1

2

3

4       THE COURT:  GOOD MORNING, EVERYONE.  ALL RIGHT.

5       MS. LEWIS:  ROSEMARY LEWIS FOR MOVING PARTIES

6  GRACE DAVISON AND W.R. GRACE & COMPANY.

7       MR. LIU:  GOOD MORNING, YOUR HONOR.  JEFFREY LIU,

8  ALSO FOR W.R. GRACE & COMPANY AND GRACE DAVISON.

9       THE COURT:  ALL RIGHT.  AND?

10       MR. SMOLKER:  GOOD MORNING, YOUR HONOR.  GARY

11  SMOLKER FOR GARY SMOLKER, AND NOT FOR ALICE GRAHAM.

12       THE COURT:  NOT FOR ALICE WHO?

13       MR. SMOLKER:  GRAHAM.

14       THE COURT:  HOW DO YOU SPELL THAT LAST NAME?

15       MR. SMOLKER:  G-R-A-H-A-M, PREVIOUSLY KNOWN AS

16  ALICE GRAHAM SMOLKER.

17       THE COURT:  ALL RIGHT.  WELL, LET'S TALK JUST A

18  MOMENT ABOUT ALICE GRAHAM.  I'VE FORGOTTEN.  IS SHE AN

19  ATTORNEY?

20       MR. SMOLKER:  SHE IS.

21       THE COURT:  IS SHE REPRESENTING HERSELF IN THIS

22  MATTER?

23       MR. SMOLKER:  I BELIEVE SHE IS.

24       THE COURT:  HAS THERE BEEN A SUBSTITUTION OF

25  ATTORNEYS FILED?

26       MR. SMOLKER:  I DON'T KNOW.

27       MS. LEWIS:  EXCUSE ME, YOUR HONOR, IF I MAY.

28  MS GRAHAM DISMISSED W.R. GRACE AND THE GRACE DAVISON

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

EX 1

Hearing - ROUGH JT

1    ENTITIES BACK IN 2007, IN EXCHANGE FOR A WAIVER OF

2    COSTS, SO SHE'S NO LONGER A PARTY TO THIS ACTION.

3    THAT'S WHY SHE WASN'T MENTIONED IN OUR PLEADINGS.

4         THE COURT:  ALL RIGHT.  WELL, I DIDN'T KNOW THAT,

5    AND I ORDINARILY WOULDN'T KNOW SOMETHING LIKE THAT.

6         MS. LEWIS:  AND I APOLOGIZE.  IT WAS AN OVERSIGHT.

7    WE SHOULD HAVE CHARACTERIZED THAT SITUATION WHEN WE LAID

8    OUT WHO THE PARTIES WERE, SO I APOLOGIZE FOR THAT

9    CONFUSION.

10        THE COURT:  OKAY.  SO HAVE YOU --

11        MR. SMOLKER:  CAN I INTERRUPT FOR A SECOND?

12        THE COURT:  PLEASE.

13        MR. SMOLKER:  I WAS NEVER GIVEN NOTICE OF THAT.  I

14   NEVER SAW THE DISMISSAL OR ANYTHING LIKE THAT, SO I

15   DON'T KNOW IF A DISMISSAL HAS BEEN FILED OR HASN'T BEEN

16   FILED, BUT IT WOULD SEEM THAT IF WHAT SHE SAYS IS TRUE,

17   THAT HAPPENED WHILE BOTH YOUR STAY AND THE BANKRUPTCY

18   STAY WERE IN EFFECT, OR WHATEVER THAT MEANS.

19          BUT IT SEEMS LIKE WE REALLY HAVE TO DEAL

20   WITH TWO DIFFERENT STAY ORDERS HERE.  WE HAVE TO DEAL

21   WITH YOUR STAY ORDER IN FEBRUARY 22ND, 2002, AND THE

22   BANKRUPTCY STAY ORDER, WHICH, ACCORDING TO THEM, WAS

23   LIFTED IN 2013 OR 2014, WHICH WE WILL ALSO ADDRESS

24   LATER.

25          BUT IN ANY EVENT, 2007 IS DEFINITELY WITHIN

26   THE TIME PARAMETERS.  AND WHETHER SHE WAS SERVED OR NOT

27   IS JUST ANOTHER EXAMPLE OF THE PROCEDURAL MORASS THAT

28   THIS CASE PRESENTS, WHICH I WILL TALK TO AT LENGTH WHEN

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

1   WE GET TO THE MERITS OF THE MOTION.

2        THE COURT:  WELL, ALICE GRAHAM CAN ALWAYS DISMISS

3   HER CASE, NOTWITHSTANDING ANY STAY.  I DON'T KNOW

4   WHETHER SHE SERVED THAT DISMISSAL OR NOT, OR WHETHER YOU

5   SERVED IT, BUT, APPARENTLY, SHE'S OUT OF THIS CASE.

6        MS. LEWIS:  SHE IS.

7        THE COURT:  HAVE BOTH OF YOU RECEIVED A COPY OF

8   THE TENTATIVE RULING?

9        MS. LEWIS:  YES.

10       MR. LIU:  YES, YOUR HONOR.

11       THE COURT:  ALL RIGHT.  DOES ANYONE WISH TO ARGUE

12  AGAINST IT?

13       MR. SMOLKER:  YES.

14       THE COURT:  PLEASE PROCEED.  AND GO AHEAD AND SIT

15  DOWN IF YOU WISH.

16       MR. SMOLKER:  DO YOU MIND IF I STAND?

17       THE COURT:  YOU CAN STAND IF YOU WANT.

18       MR. SMOLKER:  OKAY.  THANK YOU.

19            IT'S VERY NICE TO SEE YOU AGAIN, AND IT'S

20  ALWAYS A PLEASURE TO READ YOUR RULINGS.  I APPRECIATE

21  TALKING TO YOU, AS I'M SURE YOU APPRECIATE LISTENING TO

22  ME.

23            HERE WOULD BE MY CRITIQUE OF YOUR TENTATIVE

24  RULING.  THIS IS MY CRITIQUE OF YOUR TENTATIVE RULING.

25  AND I'M GOING TO GO IN REVERSE ORDER.

26            FIRST, IN YOUR TENTATIVE RULING, YOU SAY

27  YOU'RE GOING TO GRANT THE MOTION AND SIGN THE ORDER THAT

28  GRACE FILED.  THAT IS COMPLETELY WRONG.  LET ME TELL YOU

         THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

Hearing - ROUGH JT

1   WHY.  JUST THAT PART OF YOUR ORDER IS WRONG, EVEN IF

2   EVERYTHING ELSE WAS RIGHT.

3          THE REASON THAT IS COMPLETELY WRONG IS THAT

4   ACCEPTING GRACE'S THEORY OF WHAT THE FACTS ARE AND YOUR

5   INTERPRETATION AND, MAYBE, FAMILIARITY WITH THE FACTS OR

6   NOT, GRACE CAN ONLY MOVE TO HAVE THE CASE DISMISSED

7   AGAINST GRACE AND GRACE DAVISON.  IT CANNOT MOVE TO HAVE

8   THE ENTIRE CASE DISMISSED AGAINST THE OTHER PARTIES.

9          THE ORDER SAYS --

10          THE COURT:  I AGREE WITH THAT.

11          MR. SMOLKER:  OKAY.

12          THE COURT:  AND I BELIEVE I SAID THAT IN MY

13   TENTATIVE, AN THE ORDER THAT THEY SUBMITTED IS A

14   DISMISSAL ONLY AS TO GRACE AND GRACE DIVISION.

15          MR. SMOLKER:  NO, THAT ISN'T WHAT THE ORDER SAYS.

16          THE COURT:  WELL, HOLD IT JUST A MOMENT.  WE

17   CAN'T -- WE HAVE TO PROCEED ON EACH ISSUE ONE BY ONE,

18   AND I HAVE THE ORDER HERE, AND ALTHOUGH THEY MISSPELLED

19   "DIVISION" REPEATEDLY AS "DAVISON."

20          MS. LEWIS:  NO, IT IS "DAVISON."  IT'S NOT

21   "DIVISON."

22          THE COURT:  OH, I THOUGHT IT WAS GRACE DIVISION.

23          MS. LEWIS:  NO, IT'S GRACE DAVISON.

24          THE COURT:  OKAY.  LET ME SEE WHAT THE ORDER SAYS.

25   IT SAYS:  FOR GOOD CAUSE APPEARING, THE COURT GRANTS

26   W.R. GRACE & CO. AND GRACE DAVISON'S MOTION TO DISMISS,

27   AND DISMISSES THIS CASE WITH PREJUDICE.

28          PROBABLY SHOULD SAY "AS TO THEM."

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                    5

Hearing - ROUGH JT

1      MR. SMOLKER:  YES, AT THE MINIMUM.

2      THE COURT:  WELL, I THINK THAT'S ASSUMED.

3      MR. SMOLKER:  I DON'T ASSUME ANYTHING.

4      THE COURT:  GOOD POINT.  ALL RIGHT.

5      MR. SMOLKER:  SO THAT WOULD BE MY FIRST STATEMENT

6  --

7      THE COURT:  OKAY.

8      MR. SMOLKER:  -- OR CORRECTION, FOR YOU TO THINK

9  ABOUT.

10          THE SECOND THING I WOULD BRING TO YOUR

11  ATTENTION THAT I DISAGREE WITH IS YOUR TENTATIVE ORDER

12  SAYS "BANKRUPTCY COURT ISSUES AND SERVES ITS ORDER

13  LIFTING THE AUTOMATIC STAY."

14          THE DOCUMENTS WHICH THEY SUBMITTED INDICATE

15  THAT THAT ISN'T THE CASE.  AND WHAT IN THE WORLD THE

16  DOCUMENTS THEY SUBMITTED ARE OR MEAN IS SOMETHING I'LL

17  GET INTO IN A MINUTE.

18          THE DOCUMENTS THEY SUBMIT SAY THAT SOME

19  ATTORNEY EMPLOYED BY THE FIRM OF PACHULSKI, STANG, AND

20  BLAH, BLAH, BLAH SERVED THIS ORDER.

21          SO WHATEVER THIS ORDER IS, WHICH WE DON'T

22  KNOW WHAT IT IS BECAUSE IT'S NOT ATTACHED TO THE PROOF

23  OF SERVICE --

24      THE COURT:  WELL, WAIT A MINUTE.  IT'S SIGNED, AND

25  IT IS ATTACHED.

26      MR. SMOLKER:  NO, IT'S NOT, NOT IN MY COPY.

27      THE COURT:  THE BANKRUPTCY JUDGE IS

28  KEVIN-SOMETHING.

   THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                6

1      MR. SMOLKER:  YES.  BUT THAT -- THAT IS NOT --
                    Page 5

Hearing - ROUGH JT

2          THE COURT:  YEAH, THAT'S KEVIN CAREY.  IT SAYS,

3     "ORDER LIFTING INJUNCTION IN PERPETUATION LITIGATION

4     CAPTION TIG VERSUS SMOLKER."  SO THAT'S THE ORDER.

5          MR. SMOLKER:  YEAH, BUT THAT WASN'T SIGNED BY

6     THE -- THAT WASN'T SERVED BY THE COURT, NUMBER ONE, AND

7     YOUR THING SAYS THE COURT SERVED IT.

8                  NUMBER TWO, THE PROOF OF SERVICE -- AND

9     THERE'S NOT A PROOF OF SERVICE ATTACHED TO THIS, SO WE

10    DON'T KNOW THAT THIS DOCUMENT THAT YOU HAVE IN FRONT OF

11    YOU WAS SERVED ON ANYONE.

12                  THE PROOF OF SERVICE, WHICH IS THEIR

13    EXHIBIT -- THEIR NEXT EXHIBIT.

14         THE COURT:  RIGHT.

15         MR. SMOLKER:  EXHIBIT B, IS SIGNED BY SOMEONE

16    WHO'S AN ATTORNEY, SAYING, "I AM SERVING," AND THEN THEY

17    GIVE THE NAME OF SOMETHING.  AND THE NAME THEY GIVE OF

18    THE SOMETHING THAT'S SERVED IS NOT AN ORDER LIFTING THE

19    STAY.

20                  IT'S SIGNED, "37TH OMNIBUS OBJECTION TO

21    CERTAIN CLAIMS FILED REGARDING," BLAH, BLAH, BLAH.

22                  IT DOESN'T SAY IT IS AN ORDER OF THE JUDGE

23    LIFTING THE STAY.

24                  NOW, GRACE FILED SOMETHING AFTER THE

25    BANKRUPTCY WAS FILED.  THESE ARE THE LITTLE POINTS THAT

26    I'M GLAD TO HELP YOU WITH, AND EVERYBODY ELSE.  I KNOW

27    THIS IS EXHAUSTING.  AND THERE ARE 64 VOLUMES OF COURT

28    FILES.

          THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                         7

1                  SO THE VERY CONCEPT THAT THIS HASN'T BEEN

Hearing - ROUGH JT

2  DILIGENTLY PURSUED WILL BE --

3      THE COURT:  HOLD ON JUST A MOMENT.  CAN I TURN TO

4  THE MOVING PARTY WITH RESPECT TO THIS SERVICE ISSUE?

5      MR. SMOLKER:  YEAH, OKAY.  I JUST -- I HAVE A

6  WHOLE LIST OF WHAT THEY DID WRONG, IF YOU'D LIKE ME TO

7  GIVE YOU EVERYTHING WRONG WITH THE SERVICE ISSUE.

8      THE COURT:  OKAY.  HOW LONG IS YOUR LIST?

9      MR. SMOLKER:  IT'S VERY LONG, BECAUSE THEY DID

10  EVERY SINGLE THING WRONG.  THE PROOF OF SERVICE

11  DOESN'T -- ISN'T SIGNED BY SOMEONE WHO SAYS THEY'RE AN

12  ATTORNEY ADMITTED TO PRACTICE LAW.  IT DOESN'T SAY WHERE

13  THEY RESIDE.  IT DOESN'T SAY IT WAS PUT IN A SEALED

14  ENVELOPE, POSTAGE PREPAID.  IT DOESN'T SAY WHAT IT IS.

15      THE COURT:  HOLD IT JUST A MOMENT.  WE'RE

16  FOLLOWING FEDERAL PROCEDURE RATHER THAN STATE PROCEDURE,

17  BUT LET ME JUST GET A LITTLE CLUE AS TO WHAT THE MOVING

18  PARTIES ARE GOING TO SAY ABOUT THE SERVICE ISSUE.

19      MR. SMOLKER:  THANK YOU.

20      MR. LIU:  YES, YOUR HONOR.  YOUR HONOR, IF YOU

21  NOTICE ON THE TOP -- EXCUSE ME.

22          IF YOU NOTICE ON THE TOP OF THE PAGE, YOUR

23  HONOR, THERE'S THE ECF.

24      THE COURT:  EXHIBIT A OR EXHIBIT B?

25      MR. LIU:  FOR BOTH OF THEM, YOUR HONOR.

26  .   THE COURT:  YEAH, I SEE CASE NUMBER SUCH-AND-SUCH,

27  DOCKET NUMBER SUCH-AND-SUCH.

28          IS THAT THE ECF?

       THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                    8

1      MR. LIU:  THAT'S THE ECF, YOUR HONOR.  AND I WOULD

2  SUBMIT TO THE COURT THAT WHEN THOSE DOCUMENTS ARE SERVED

Page 7

Hearing - ROUGH JT

3   UPON THE PARTIES AS TO A PARTICULAR ACTION, THEY'RE

4   SERVED ELECTRONICALLY BASED OFF THE ECF SYSTEM.

5        THE COURT:  ARE THEY ACTUALLY SERVED TO THE E-MAIL

6   OF THE PARTIES, OR ARE THEY SIMPLY PUT ON THE INTERNET

7   SITE SO THAT THE PARTIES CAN LOOK AT THE SITE

8   PERIODICALLY?

9        MR. LIU:  THEY'RE GIVEN NOTICE THAT A DOCUMENT HAS

10  BEEN FILED BY THE COURT, GENERALLY, AND THEY'RE GIVEN

11  ACCESS TO IT THROUGH THAT E-MAIL, YOUR HONOR.

12       MR. SMOLKER:  WELL, I CAN TELL YOU FOR SURE, I

13  DIDN'T GET ANY E-MAILS FROM ANYBODY ABOUT THIS.

14       MR. LIU:  AND, YOUR HONOR, I'LL SUBMIT TO THE

15  COURT THAT THEY ALSO MAILED EACH OF THE PLEADINGS THAT

16  WE'VE SUBMITTED AS EXHIBITS TO THE MOVING PAPERS.

17       THE COURT:  DO WE HAVE ANYONE TESTIFYING TO THAT?

18  FOR INSTANCE, DOES THIS PATRICIA CUNIF --

19  C-U-N-N-I-F-F -- EXCUSE ME, ONE N -- C-U-N-I-F-F --

20  TESTIFY TO THE MAILING OF THE NOTICE?

21       MR. LIU:  THERE'S NOTHING CURRENTLY ON RECORD,

22  YOUR HONOR.

23       THE COURT:  SHE SAID SHE CAUSED A COPY OF THE

24  FOLLOWING DOCUMENTS TO BE SERVED UPON THE ATTACHED

25  SERVICE LIST IN THE MANNER INDICATED.  FIRST NAME ON THE

26  SERVICE LIST -- WELL, MAYBE NOT THE FIRST NAME.  BUT,

27  CERTAINLY, GARY SMOLKER WAS ON THE LIST WHEN I LOOKED

28  THIS MORNING.

     THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                      9

1        MR. SMOLKER:  I AM ON THE LIST, BUT THIS DOCUMENT

2   DOESN'T SAY THAT WHAT THEY ARE SERVING IS THE ORDER

Hearing - ROUGH JT

3  LIFTING THE STAY.

4  THE COURT:  WHAT IT SAYS IS THE 37TH OMNIBUS

5  OBJECTION TO CERTAIN CLAIMS FILED REGARDING PRE-PETITION

6  LITIGATION, CAPTION TIG INSURANCE VERSUS GARY SMOLKER,

7  CASE NUMBER SUCH-AND-SUCH, WHICH IS THE LOS ANGELES CASE

8  NUMBER, MENTIONS JUDGE JANAVS, J-A-N-A-V-S, SUBSTANTIVE

9  OBJECTIONS.  SO I PRESUME IF I LOOKED AT THE 37TH

10  OMNIBUS OBJECTION, IT WOULD CONNECT IT UP.

11  MR. LIU:  AND, YOUR HONOR --

12  MR. SMOLKER:  WELL, UNFORTUNATELY, WE DON'T HAVE

13  THAT.  AND UNFORTUNATELY FOR THEM, THE LAW IS VERY CLEAR

14  ON WHAT THEY'RE SUPPOSED TO DO WHEN AN INJUNCTION IS

15  LIFTED, ESPECIALLY WHEN THEY'RE A PARTY THAT, IN THE

16  BEGINNING, FILED A NOTICE OF THE BANKRUPTCY STAY.

17  THE CODE SAYS THAT THE PARTY WHO FILES THE

18  NOTICE OF BANKRUPTCY STAY HAS TO FILE SOMETHING SAYING

19  THAT THAT BANKRUPTCY STAY HAS BEEN LIFTED.  THEY NEVER

20  DID IT.  IF YOU LOOK AT --

21  THE COURT:  COUNSEL, LET ME JUST FIND OUT WHAT THE

22  RESPONSE IS GOING TO BE.

23  MR. LIU:  YOUR HONOR, OUR RESPONSE IS TWOFOLD.  IF

24  WE LOOK AT EXHIBIT A ON THE VERY FIRST LINE OF THE

25  ORDER, IT SAYS:  UPON CONSIDERATION OF THE 37TH OMNIBUS

26  OBJECTION TO CERTAIN CLAIMS FILED REGARDING THE

27  PRE-PETITION LITIGATION CAPTION TIG INSURANCE COMPANY V.

28  GARY SMOLKER, ET AL.

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

10

1  AND THE ORDER FOLLOWS THAT.  THIS WAS THE

2  ORDER THAT WAS ASSOCIATED FOLLOWING THE FILING OF THE

3  37TH OMNIBUS.  AND IN ADDITION TO THAT, WE MENTIONED IN

4    OUR REPLY THAT DURING THE CORRESPONDENCE THAT WAS

5    EXCHANGED BETWEEN MR. SMOLKER AND OUR OFFICE FOLLOWING

6    THE FILING OF THE MOVING PAPER, MR. SMOLKER,

7    ESSENTIALLY, ADMITTED THAT HE DID RECEIVE FILINGS FROM

8    THE BANKRUPTCY COURT ON A REGULAR BASIS.

9         THE COURT:  ALL HE SAID WAS HE RECEIVED VOLUMINOUS

10    PAPERS FROM THE BANKRUPTCY COURT.

11         MR. LIU:  YES, YOUR HONOR.

12         THE COURT:  AND WHETHER THAT'S ON A REGULAR BASIS

13    OR NOT, I DON'T KNOW.

14         MR. LIU:  YES, YOUR HONOR.

15         MR. SMOLKER:  AND THAT IS NOT SAYING THAT THIS WAS

16    RECEIVED, AND THIS IS NOT EXCUSING THE CODE OF CIVIL

17    PROCEDURE'S REQUIREMENT THAT THE PERSON WHO FILED THE

18    NOTICE OF STAY IS REQUIRED TO FILE A NOTICE WHEN IT'S

19    LIFTED.

20              AND, ALSO, THE RULES --

21         THE COURT:  WELL, WAIT A MINUTE NOW.  MAYBE WHAT

22    WE SHOULD DO IS LET SUPPLEMENTAL BRIEFING BE PROVIDED ON

23    THIS POINT.  I'M ALSO CONCERNED, OF COURSE, THAT AS THE

24    CROSS-COMPLAINANT, I WOULD THINK THAT YOU'D BE IN TOUCH

25    WITH THE BANKRUPTCY COURT TO FIND OUT WHAT THEY'RE DOING

26    ON THE CASE.

27         MR. SMOLKER:  I HAVE YOUR ORDER OF THE 22ND,

28    TELLING ME THAT THIS IS STAYED IN ALL PROCEEDINGS.  AND

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

11

1    I WAS, ON THE BASIS OF YOU SAYING THAT, I'M NOT SUPPOSED

2    TO DO ANYTHING UNTIL YOU LIFTED IT.

3              I WAS NOT KEEPING IN TOUCH WITH THE

Hearing - ROUGH JT

4  BANKRUPTCY COURT, AND I CAN ONLY TELL YOU THAT IN TERMS

5  OF PRACTICALITY, THIS IS A GIGANTIC BANKRUPTCY.  AND I

6  DO NOT UNDERSTAND THE INS AND OUTS OF THIS, AND THERE'S

7  NOTHING THAT CLEARLY SAYS THAT THIS IS UP, IN WHAT WE

8  ARE OVER OR CHANGED.

9          AND WHAT WE HAVE HERE IS THE POLICY OF THIS

10  STATE TO TRY CASES ON THE MERITS.  WE HAVE SOMEONE WHO

11  DEFINITELY KNEW THE STAY WAS LIFTED.  THAT'S THESE

12  PEOPLE, THE GRACE PEOPLE.  AND THEN THEY LAY IN WAIT AND

13  AMBUSH ME AFTER THEY DON'T DO WHAT THEY'RE SUPPOSED TO

14  DO.  AND SO I AM SUPPOSED TO BE PENALIZED BECAUSE THEY

15  DIDN'T FOLLOW WHAT THEIR CLEAR OBLIGATIONS ARE, AND THEN

16  THEY'RE GOING TO SAY "GOT YOU."

17          THIS IS A PURE SIMPLE "GOT YOU" THING.

18  WHETHER THEY GOT ME OR NOT, THIS IS A PURE, SIMPLE "GOT

19  YOU" THING.

20          THEY HAD A DUTY TO TELL.  THEY KNEW IT.

21  THEY COULD HAVE TOLD IT IN A SIMPLE WAY, AND NOW "GOT

22  YOU."  I'M SUPPOSED TO LOOK AT THIS IMMENSE BANKRUPTCY

23  AND KEEP TRACK OF IT, AND THEN TELL YOU?  THAT ISN'T THE

24  WAY THE CODE IS SET UP.  THE WAY THE CODE IS SET UP IS

25  THEY'RE SUPPOSED TO TELL US.  THEY DON'T EVEN SERVE

26  NOTICE THE RIGHT WAY.

27          NOW, MAYBE FEDERAL --

28      THE COURT:  EXCUSE ME.  I DON'T REMEMBER THAT YOU

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                12

1  RAISED THE ISSUE THAT GRACE IS REQUIRED TO ADVISE WHEN

2  THE BANKRUPTCY IS TERMINATED.

3      MR. SMOLKER:  I THINK I DID IN MY PAPERS, YEAH.

4      THE COURT:  DID YOU CITE A CODE SECTION?

Hearing - ROUGH JT

5        MR. SMOLKER:  I -- I DON'T KNOW.  I THINK I JUST

6  SAID THEY DIDN'T PROPERLY SERVE IT, AND I GOT THEIR

7  LETTER FROM THEM ON DECEMBER 11TH.  SHE SAYS IN HER

8  LETTER, WHICH I ATTACHED, THAT SHE AGREES THAT I HAVEN'T

9  BEEN SERVED WITH PROPER NOTICE.

10       THE COURT:  WELL, THIS IS A HIGHLY TECHNICAL

11  MOTION.

12       MR. SMOLKER:  YES.

13       THE COURT:  I MEAN, IF YOU'RE ASSERTING THAT THE

14  PARTY IN BANKRUPTCY, PARTICULARLY IN A CHAPTER 11, IS

15  REQUIRED TO GIVE NOTICE TO ANY -- TO THE PARTIES IN ANY

16  LITIGATION THAT HAS BEEN STAYED BECAUSE OF THE

17  BANKRUPTCY, THEN THE BANKRUPTCY IS TERMINATED.

18       MR. SMOLKER:  IT'S NOT TERMINATED.  THAT'S ANOTHER

19  THING.  THIS BANKRUPTCY IS NOT TERMINATED.

20       THE COURT:  WELL, THAT THE AUTOMATIC STAY IS

21  LIFTED, THEN YOU'VE GOT A POINT.

22       MR. SMOLKER:  YES, THAT IS WHAT IT IS.

23       THE COURT:  I'D LIKE TO GET THE STATUTORY

24  AUTHORITY.

25       MR. SMOLKER:  I CAN TELL IT TO YOU, BECAUSE I HAVE

26  IT IN MY NOTES.

27       THE COURT:  CAN YOU GIVE ME THE AUTHORITY NOW?

28       MR. SMOLKER:  YES.

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                      13

1        THE COURT:  WHAT IS IT?

2        MR. SMOLKER:  OKAY.  LET ME LOOK AT MY NOTES.  I'M

3  A LITTLE BIT NERVOUS, AS YOU MIGHT IMAGINE.

4        THE COURT:  AND I --

Page 12

Hearing - ROUGH JT

5      MR. SMOLKER:  BUT, YES, I DO HAVE THE EXACT CODE

6  SECTIONS.

7      THE COURT:  AND I AM THINKING, MR. SMOLKER AND

8  DEFENSE COUNSEL, THAT I PROBABLY NEED TO PUT THIS ON

9  SECOND CALL, BECAUSE I GUESS THE ARGUMENT'S GOING TO GO

10  LONGER THAN I THOUGHT IT WAS.

11      MS. LEWIS:  THAT'S FINE, YOUR HONOR.

12      MR. SMOLKER:  WOULD YOU LIKE ME TO MENTION TWO

13  THINGS, OR SHOULD I WAIT FOR SECOND CALL?

14      THE COURT:  NO.  WHY DON'T YOU MENTION TWO THINGS

15  SO I CAN THINK ABOUT IT.

16      MR. SMOLKER:  OKAY.  ATTACHED TO MY EXHIBITS AND

17  MY CORRESPONDENCE WITH HER -- HER BEING MS. LEWIS -- IS

18  A LETTER DATED DECEMBER 1ST, 2016, IN WHICH SHE SAYS:

19  GRACE DOES NOT CLAIM IRRELEVANT BANKRUPTCY ORDERS HAVE

20  BEEN PROPERLY SERVED AND FILED WITH THE LOS ANGELES

21  SUPERIOR COURT.

22          THE EXACT QUOTE IS -- I ASKED -- SEE, I WAS

23  TRYING TO GET ALL THIS CLEAR SO I WOULD BE ABLE TO TELL

24  YOU WHAT REALLY HAPPENED.  I ASKED HER FOR THE

25  BANKRUPTCY ORDER SO I WOULD KNOW WHAT WE'RE TALKING

26  ABOUT.

27          SHE THEN WROTE BACK TO ME, "I HAVE NOT

28  STATED OR CLAIMED IN MY MOTION THAT RELEVANT BANKRUPTCY

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                    14

1  ORDERS HAVE BEEN SERVED ON YOU."

2          IT'S ON HER DECEMBER 11 --

3      THE COURT:  SERVED ON WHOM?

4      MR. SMOLKER:  FILED WITH THE LOS ANGELES -- SERVED

5  AND FILED WITH THE LOS ANGELES SUPERIOR COURT.

Hearing - ROUGH JT

6        THE COURT:  SEE, I DON'T -- I DON'T KNOW THAT A

7   SERVICE ON THE COURT IS REQUIRED, IN PART BECAUSE THE

8   COURT'S PASSIVE.  IN OTHER WORDS, SOMETHING'S FILED AND

9   PUT IN THE FILE, BUT I DON'T SEE IT.

10              IT'S THE PARTY -- PARTIES TO THE LITIGATION

11  THAT SHOULD BE THE ACTIVE PERSONS TO DO WHATEVER IS

12  REQUIRED TO GET THEIR CASE TO TRIAL.

13      MR. SMOLKER:  I DO NOT HAVE ANY COMMENT ON THAT,

14  PRO OR CON, AGREE OR DISAGREE.  I INTERPRETED HER LETTER

15  TO MEAN THAT SHE WAS NOT SAYING IT WAS PROPERLY SERVED

16  ON ME.

17              THERE IS A PROCEDURE FOR HOW TO DO THINGS,

18  AND THEY DID NOT FOLLOW THE PROCEDURE.  AND THE

19  PROCEDURE IN THIS CASE ACTUALLY MAKES A LOT OF SENSE,

20  BECAUSE THEN EVERYBODY WOULD KNOW WHAT'S GOING ON, AND I

21  HAVE THE CODE SECTIONS.

22      THE COURT:  WELL, IS THERE A STATUTE THAT REQUIRES

23  THE BANKRUPT PARTY, WHEN A STAY IS LIFTED, THAT HAS

24  STOPPED CERTAIN STATE AND FEDERAL LITIGATION, TO NOTIFY

25  THE PARTIES TO THAT LITIGATION THAT THE STAY IS LIFTED?

26      MR. SMOLKER:  I THINK THERE ARE TWO DIFFERENT CODE

27  SECTIONS.  ONE REQUIRES SOMEONE THAT HAS -- WHOEVER HAS

28  FILED THE NOTICE OF THE BANKRUPTCY STAY IS REQUIRED TO

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                              15

1   SERVE A NOTICE THAT THE BANKRUPTCY STAY IS NOT IN

2   EFFECT.

3              AND THEN THERE'S A SECOND CODE REQUIREMENT

4   THAT WHEN AN ORDER IS CHANGED OR MODIFIED, THE PARTY WHO

5   OBTAINED THE ORDER MUST SERVE A COPY OF THAT ORDER ON

Page 14

Hearing - ROUGH JT

6    PEOPLE.  AND THEN THERE'S ANOTHER CODE SECTION SAYING

7    WHAT THEY ARE.  AND THOSE ARE CCP SECTION 1013(A) AND

8    CCP 1019.5, AND CALIFORNIA RULE OF COURT 3.650, PAREN D,

9    CLOSED PAREN.

10          AND MY CONCLUSION, AFTER READING THOSE

11   VARIOUS CODES AND RULES THAT I READ TO YOU, IS THAT IT

12   WAS GRACE'S DUTY AND OBLIGATION, HAVING FIRST FILED A

13   NOTICE OF BANKRUPTCY STAY, TO FILE A DOCUMENT IN THE

14   COURT AND SERVE IT ON ME, THESE ATTORNEYS STANDING NEXT

15   TO ME, SAYING THAT BANKRUPTCY STAY IS NOT IN EFFECT, OR

16   WHATEVER THEY WANT TO SAY HOW IT IT'S DONE.

17          THEY DON'T CLAIM TO HAVE DONE THAT.  I

18   COULDN'T FIND THEM HAVING DONE IT WHEN I LOOKED AT THE

19   CASE SUMMARY, AND I DON'T REMEMBER EVER RECEIVING SUCH A

20   THING, BECAUSE THAT WOULD DEFINITELY BE -- THERE'S --

21          THE COURT:  CAN I -- WOULD YOU MIND IF I ASKED YOU

22   TO WAIT FOR SECOND CALL?

23          MR. SMOLKER:  I'D LOVE TO WAIT FOR SECOND CALL.

24   CAN I GO GET A GLASS OF WATER FIRST?

25          THE COURT:  NOT FIRST.  DURING THE WAIT.

26          MR. SMOLKER:  DURING THE WAIT?

27          THE COURT:  GO AND GET A CUP OF COFFEE.  AND SIT.

28          MS. LEWIS:  CAN I ADDRESS TWO ISSUES RAISED BY

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

16

1    MR. SMOLKER, OR WOULD YOU PREFER I WAIT?  ONE IS ABOUT

2    THE E-MAILS, WHICH IS MISLEADING.  I'M HAPPY TO SHOW THE

3    JUDGE THE STRING OF E-MAILS.

4          THE COURT:  I'M NOT WORRIED ABOUT THAT.  I'M MORE

5    WORRIED ABOUT WHETHER THERE'S SOME DUTY ON THE PART OF

6    GRACE TO NOTIFY ANYBODY.  AND, SECONDLY, WHETHER OR NOT

Page 15

Hearing - ROUGH JT

7    WE HAVE PROPER EVIDENCE OF A SERVICE OF THE LIFTING OF

8    THE AUTOMATIC STAY, WHICH APPARENTLY, IS BASED UPON THE

9    37TH OBJECTION TO THE BANKRUPTCY IN THIS MOTION.

10           IF WE DON'T, I THINK WE OUGHT TO GET IT,

11   BECAUSE THIS IS A HIGHLY TECHNICAL ISSUE, AND IT'S GOING

12   TO HAVE TO BE DECIDED ON A VERY TECHNICAL BASIS.

13       MS. LEWIS:  I'M HAPPY TO ADDRESS THAT WHEN WE COME

14   BACK.

15       MR. SMOLKER:  AND ON THE SAME MATTER OF

16   PRACTICALITY AND TECHNICALITY, I WOULD APPRECIATE IT,

17   WHATEVER YOUR FINAL DECISION IS, IF YOU WOULD LIFT YOUR

18   FEBRUARY 22ND ORDER STAYING ALL PROCEEDINGS SO THAT I

19   MAY MAKE A MOTION TO SET THE CASE FOR TRIAL.

20       THE COURT:  WELL, I THINK I NEED A MOTION FOR

21   THAT.  ALL I HAVE IS YOUR SUGGESTION.

22       MR. SMOLKER:  I WILL MAKE A MOTION.  I THOUGHT IN

23   PRACTICALITY, YOU WOULDN'T WANT TO --

24       THE COURT:  A PARTY IS GOING TO HAVE TO ASK ME TO

25   DO SOMETHING.

26       MR. SMOLKER:  YES.

27       THE COURT:  AND IT SHOULDN'T BE IN THE OPPOSITION

28   TO SOME OTHER MOTION.

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

17

1        MR. SMOLKER:  ALL RIGHT.

2        THE COURT:  NOW, AS YOU KNOW, THE ACTION WAS

3    STAYED BY THE FILING OF THE BANKRUPTCY OF GRACE

4    BEFORE -- SOME YEAR BEFORE I STAYED THE ACTION.  I

5    BELIEVE I RECEIVED SOME SORT OF INFORMATION THAT THE

6    BANKRUPTCY PROCEEDING WAS SO COMPREHENSIVE THAT WE

Hearing - ROUGH JT

7   REALLY COULDN'T PROCEED AS TO ANY PARTIES.  BUT I CAN'T

8   TELL BY LOOKING AT THE COMPUTER RECORD ABOUT THAT.

9        MR. SMOLKER:  I GAVE YOU A COPY OF YOUR

10   FEBRUARY 22ND ORDER.

11        THE COURT:  I THINK I GAVE IT BACK TO YOU.

12        MR. SMOLKER:  YES.  OKAY.

13        THE COURT:  ATTACHED TO THE TENTATIVE RULING.

14        MR. SMOLKER:  YES, YES.

15        THE COURT:  AND I DO REMEMBER THE TRIAL THAT WE

16   HAD.

17        MR. SMOLKER:  YES, AND IT WASN'T EXACTLY THE WAY

18   SHE DESCRIBED IT.  BUT IN ANY EVENT, IT WENT, AND I

19   THANK YOU VERY MUCH FOR DOING THAT.  AND AS LONG AS YOU

20   REMEMBERED IT, I UNDERSTAND YOU'RE ABOUT TO GO ON

21   VACATION AGAIN.  SOMEBODY OUTSIDE TOLD ME THAT.  SO IT

22   SEEMS LIKE WE KEEP ON COMING BEFORE YOU ON CRITICAL

23   ISSUE AS VACATION IS ABOUT TO BEGIN.

24        THE COURT:  YOU DID COME TO ME BEFORE CHRISTMAS,

25   15 YEARS APART.  I DON'T THINK YOU CAN BLAME ME FOR

26   TAKING SOME TIME OFF.

27        MR. SMOLKER:  I'M NOT BLAMING YOU FOR ANYTHING.  I

28   THINK IT'S AN OMEN.  I THINK WHOEVER'S ARRANGING THESE

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

18

1   THINGS WANTS YOU TO HAVE TIME TO SETTLE DOWN AFTER

2   HEARING US.

3        MS. LEWIS:  YOUR HONOR, WHAT TIME WOULD YOU LIKE

4   US TO RETURN?

5        THE COURT:  OH, PROBABLY 20 MINUTES.

6        MS. LEWIS:  OKAY.  PERFECT.

7

Page 17

Hearing - ROUGH JT

8              (THERE IS A BREAK IN THE

9                 PROCEEDINGS.)

10

11         THE COURT:  OKAY.  THIS IS TIG INSURANCE COMPANY

12   VERSUS SMOLKER AGAIN.  PLEASE BE SEATED, COUNSEL, IF YOU

13   WANT TO BE.

14              I THINK THAT DEFENSE COUNSEL WANTED TO MAKE

15   A POINT.  THAT IS MS. LEWIS, OR SHOULD WE PROCEED WITH

16   MR. SMOLKER?

17         MS. LEWIS:  ARE THERE ANY SPECIFIC QUESTIONS YOU'D

18   LIKE US TO ADDRESS?  I THINK I ADDRESSED, RIGHT BEFORE

19   WE BROKE, MY ISSUE WITH THE REPRESENTATION ON THE

20   E-MAILS.

21              I GUESS THE OTHER IS I THINK MR. LIU SET

22   FORTH THE PACER SYSTEM AND HOW IT WORKS ON PACER.

23              DOES THE COURT HAVE ANY QUESTIONS FOR US AT

24   THIS TIME?

25         THE COURT:  THIS MATTER MIGHT GO UP ON APPEAL,

26   WHICH IS FINE WITH ME.  I WOULD THINK THAT IF YOU NEED

27   TO SUPPLEMENT HOW SERVICE WAS MADE, IT PROBABLY SHOULD

28   BE DONE.

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                   19

1              I DON'T REGARD THIS AS A -- THIS IS A

2   SOMEWHAT DIFFERENT MOTION THAN MANY.  SINCE DISMISSAL

3   FROM THE FIVE-YEAR STATUTE IS MANDATORY ABSENT EXCUSE,

4   THEN I THINK WE OUGHT TO GET ALL THE INFORMATION WE NEED

5   TO REACH A MANDATORY DECISION.

6              HOWEVER, MR. SMOLKER HAS A NUMBER OF ISSUES

7   THAT HE'S GOING TO RAISE, IT APPEARS QUITE EFFECTIVELY,

Hearing - ROUGH JT

8  IN THE SENSE THAT YOU HAVE OVERLAPPING STAYS, FIRST

9  INITIATED BY THE BANKRUPTCY COURT AS TO GRACE -- W.R.

10  GRACE, AND THEN INITIATED BY ME, SO THAT -- SO THAT THE

11  ISSUES WOULD NOT BE SCATTERED, GIVEN THAT W.R. GRACE WAS

12  A PRINCIPAL AND A TARGET DEFENDANT ON THE

13  CROSS-COMPLAINT.

14      MS. LEWIS:  RIGHT.  AND WE THOUGHT DURING OUR

15  BREAK THAT WE COULD GET THAT RESOLVED FOR THE COURT, BUT

16  WE COULDN'T PULL UP THE DOCUMENTS WE NEEDED.  SO IF THE

17  COURT WILL ALLOW US A SHORT TIME FOR SOME SUPPLEMENTAL

18  BRIEFING, IT'S OUR BELIEF THAT WE CAN CLEAR THIS UP, AND

19  THE COURT WILL BE SATISFIED WITH THE INFORMATION WE WILL

20  PROVIDE.

21      THE COURT:  AND MR. SMOLKER HAS ALSO RAISED THE

22  ISSUE THAT -- OR HE'S CLAIMED THAT THE BANKRUPT PARTY,

23  UNDER CHAPTER 11 PARTICULARLY, WHICH IS A

24  REORGANIZATION, AS OPPOSED TO A LIQUIDATION, IS REQUIRED

25  TO GIVE NOTICE TO LITIGANTS WHOSE CLAIMS HAVE BEEN

26  STAYED DUE THE BANKRUPTCY, OF THE LIFTING OF THE STAY.

27          I'M NOT AWARE OF ANY REQUIREMENT, BUT MAYBE

28  SOMEONE SHOULD LOOK AT IT AND DETERMINE WHETHER THERE IS

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

20

1  SUCH A REQUIREMENT.

2      MS. LEWIS:  THAT'S FINE, BUT WE CAN ALSO ADVISE

3  THE COURT THAT MR. SMOLKER WAS GIVEN NOTICE OF THE

4  LIFTING OF THE STAY.  THOSE DOCUMENTS WERE SERVED ON ALL

5  THE PARTY TO THIS ACTION.  SO WE CAN PROVIDE THE COURT

6  WITH THAT INFORMATION AS WELL.

7      THE COURT:  WHO ACTUALLY SERVED THOSE DOCUMENTS?

8      MS. LEWIS:  THE BANKRUPTCY COUNSEL.  WELL, THE

Page 19

Hearing - ROUGH JT

9  BANKRUPTCY COURT FILED SOME OF THE DOCUMENTS.

10  BANKRUPTCY COUNSEL FILED SOME DOCUMENTS.  WE DID NOT

11  FILE THOSE DOCUMENTS.  THAT WASN'T WITHIN OUR

12  INFORMATION.  THEY WERE FILED INTO THE PACER SYSTEM.

13  AGAIN, THE ONES FILED BY THE COURT WERE FILED BY THE

14  COURT.  OTHERS FILED BY THE BANKRUPTCY COUNSEL WERE DONE

15  SO WITH THE PROPER IDENTIFICATION.

16      THE COURT:  SO WHAT YOU'RE TELLING ME IS THAT A

17  BANKRUPT PARTY IN A CHAPTER 11 IS NOT REQUIRED TO GIVE

18  NOTICE OF A LIFTING OF A STAY TO LITIGANTS?  SINCE THERE

19  ARE TENS OF THOUSANDS OF BANKRUPTCIES IN A GIVEN YEAR, I

20  WOULD THINK THAT THAT PROBABLY CAN BE ASCERTAINED BY

21  REFERENCE TO SOME RULES OR THE ABSENCE OF RULES.

22      MS. LEWIS:  YES.

23      THE COURT:  OKAY.  SO WHAT ELSE SHOULD WE DISCUSS,

24  MR. SMOLKER?

25      MR. SMOLKER:  THERE ARE SEVERAL MORE THINGS.  THE

26  EXHIBIT THAT THEY CALL EXHIBIT A DOESN'T HAVE A PROOF OF

27  SERVICE ATTACHED TO IT.  I HOPE I'VE MADE THAT VERY

28  CLEAR.

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

21

1          AND, ALSO, EXHIBIT A REFERS TO AN EXHIBIT 1

2  ATTACHED TO EXHIBIT A.  SO EXHIBIT A IS NOT EVEN A

3  COMPLETE COPY OF WHATEVER IT'S SUPPOSED TO BE.  SO IF BY

4  SOME PROCESS, YOU WANT TO THINK ABOUT SERVICE OF

5  SOMETHING, THIS IS -- YOU CAN TELL FROM THE DOCUMENT

6  ITSELF THAT THIS IS NOT A COMPLETE DOCUMENT.

7          I WOULD ALSO SAY THAT I'M NOT IGNORING THE

8  FACT THAT YOU ISSUED A STAY ORDER, AND THAT YOUR STAY

Hearing - ROUGH JT
9   ORDER HAS NOT BEEN LIFTED.

10          I'M OPERATING ON THE POSITION THAT YOUR

11   STAY ORDER IS STILL IN EFFECT, THAT THE PROPER PROCEDURE

12   FOR THEM WOULD HAVE BEEN TO FILE SOMETHING IN THIS COURT

13   SAYING THE BANKRUPTCY STAY HAS BEEN LIFTED TO A LIMITED

14   EXTENT BECAUSE IT HAS NOT FULLY BEEN LIFTED, ACCORDING

15   TO THE DOCUMENT THEY SAID.

16          YOU'LL HAVE TO READ THE DOCUMENT TO SEE HOW

17   CONFUSED -- AND WHAT THEY'RE ACTUALLY DOING.

18          AND THAT THEY DIDN'T DO THAT THING THAT

19   THEY'RE REQUIRED TO DO.  AND RULE 3.650 VERY CLEARLY

20   SAYS THAT THE PERSON WHO FILES A NOTICE OF STAY HAS TO

21   FILE A NOTICE THAT THE STAY HAS BEEN LIFTED.

22          THERE'S ALSO -- AND AS I HAVE MENTIONED,

23   THERE'S THE ISSUE OF WHAT IS THE EFFECT OF YOUR STAY,

24   WHICH I'M HONORING, AND THEN THERE'S ALSO THE ALICE

25   GRAHAM QUESTION.

26          IT'S EASY FOR YOU TO SAY THAT ANY PARTY CAN

27   FILE A REQUEST FOR DISMISSAL AT ANY TIME.  AND ON THE

28   SURFACE, THAT SOUNDS REASONABLE, BUT WHEN YOU LOOK INTO

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                22

1    THE NITTY-GRITTY OF IT, THAT ISN'T THE WAY IT WORKS IN

2    THIS CASE, BECAUSE MS. LEWIS TOLD US THAT A DEAL WAS

3    MADE BETWEEN ALICE GRAHAM AND MS. LEWIS, WHICH I WASN'T

4    A PARTY OF AND HAD NO NOTICE OF, NOR DID I HAVE NOTICE

5    THAT A DISMISSAL WAS FILED -- THAT A DISMISSAL WAS FILED

6    FOR A RELEASE OF COSTS OR WAIVER OF COSTS OR SOMETHING

7    LIKE THAT.

8          WELL, I HAVE AN INTEREST IN WHATEVER KIND

9    OF DEAL THEY ACTUALLY MADE, AND SO DOES THE BANKRUPTCY
                        Page 21

Hearing - ROUGH JT

10   COURT, AND SO DOES WHOEVER'S IN CHARGE OF THE BANKRUPTCY

11   AT ALL KINDS OF DIFFERENT LEVELS.

12        THE COURT:  HOLD ON JUST A MOMENT.

13        MR. SMOLKER:  YES.

14        THE COURT:  IS THERE AN AGREEMENT COVERING THE

15   DISMISSAL OF ALICE GRAHAM?

16        MS. LEWIS:  I'M SORRY.  THERE WAS A DISMISSAL

17   FILED, YES.

18        THE COURT:  DID YOU HAVE AN AGREEMENT WITH HER?

19        MS. LEWIS:  WE DID.  THAT WAS TO DISMISS.  IT WAS

20   AFTER THE --

21        THE COURT:  SEE, WHAT I'M THINKING IS BOTH

22   PLAINTIFF -- BOTH CROSS-COMPLAINANTS WOULD BE LIABLE FOR

23   COSTS.

24        MR. SMOLKER:  HEY.

25        THE COURT:  IF THE CROSS-DEFENDANTS PREVAILED.

26   AND I SUPPOSE YOU DON'T HAVE TO PURSUE COSTS, AND MAYBE

27   YOU WOULDN'T, REGARDLESS OF WHO THE REMAINING

28   CROSS-COMPLAINANT IS.

         THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                    23

1    BUT HOW WOULD YOU APPORTION COSTS BETWEEN

2    THE TWO DIFFERENT CROSS-COMPLAINANTS?

3         ON THE OTHER HAND, MAYBE YOU DON'T HAVE TO.

4    YOU'RE ENTITLED TO RECOVER YOUR COSTS FROM EITHER PARTY.

5    AND THE PARTY THAT PAYS CAN LOOK TO INDEMNIFICATION FROM

6    THE OTHER PARTY.

7         SO I'VE SORT OF ANSWERED MY OWN QUESTION IN

8    MY OWN MIND.

9         MS. LEWIS:  IT'S NO DIFFERENT THAN YOU HAVE TWO

Page 22

Hearing - ROUGH JT

10    ADVERSE PARTY, YOU SETTLE WITH ONE BEFORE TRIAL, YOU GO

11    TO TRIAL AGAINST THE OTHER, AND YOU SUBMIT YOUR CROSS

12    BILL AFTER YOU PREVAIL.

13             SO IT'S NO DIFFERENT, BUT I -- YOU KNOW, I

14    DON'T KNOW WHAT TO TELL THE COURT, OTHER THAN MS. GRAHAM

15    IS NO LONGER A PARTY TO THIS ACTION.  WE NEVER RAISED

16    HER CLAIMS.

17        THE COURT:  I DON'T THINK YOU HAVE TO TELL ME

18    ANYTHING MORE.

19        MR. SMOLKER:  I DO, THOUGH.

20        THE COURT:  OKAY.

21        MR. SMOLKER:  DOESN'T MATTER IF I'M AN EXPERT IN

22    THIS OR NOT, BECAUSE ALL THAT MATTERS IS HOW IT REALLY

23    WORKS.

24             AND THE WAY IT REALLY WORKS IS IF YOU HAVE

25    A CLAIM AGAINST TWO PEOPLE, AND IT'S JOINTLY AND

26    SEVERAL, IF YOU RELEASE YOUR CLAIM AGAINST ONE OF THEM,

27    IT'S A RELEASE AGAINST THE OTHER AUTOMATICALLY.  IF YOU

28    RESEARCH THE LAW, OR AT LEAST I RESEARCHED THE LAW ON

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

24

1    THIS, THAT'S WHAT I FOUND.  YOU MIGHT HAVE A DIFFERENT

2    CONCLUSION.

3             SO EXACTLY WHAT THEIR AGREEMENT SAYS IS OF

4    UTMOST IMPORTANCE IN TERMS OF A POTENTIAL THING GOING

5    FORWARD.  PLUS, IT HAS TO DO WITH THE ENTIRE BANKRUPTCY

6    AND THE MONEY AND BLAH, BLAH, BLAH.

7             IT SHOULD HAVE BEEN BROUGHT TO THE

8    BANKRUPTCY COURT FOR PERMISSION TO ENTER INTO IT.  I

9    ALSO SHOULD HAVE GOTTEN NOTICE BECAUSE I HAVE A

10    FINANCIAL INTEREST IN THE SETTLEMENT AGREEMENT, NOT ONLY

Page 23

Hearing - ROUGH JT

11    BECAUSE OF WHAT YOU THOUGHT ABOUT HOW WOULD YOU

12    APPORTION IT, AND THEN YOU SAID THEY HAVE A RIGHT TO GO

13    AFTER ONE INSTEAD OF EITHER ONE.

14·              IT DOESN'T WORK THAT WAY.  ONCE YOU MAKE A

15    SETTLEMENT, DEPENDING UPON WHAT YOUR SETTLEMENT SAYS,

16    YOU CAN WAIVE YOUR RIGHTS TO GO AGAINST THE OTHER

17    PERSON.

18              SO ALTHOUGH SHE MIGHT HAVE THE RIGHT TO

19    DISMISS, THEY DON'T HAVE THE RIGHT TO ENTER IN A SECRET

20    AGREEMENT IN THE MIDDLE OF A BANKRUPTCY WITHOUT GIVING

21    ME NOTICE.  SO I THINK -- I THINK THE ALICE GRAHAM STORY

22    IS STILL HERE, BUT THAT RAISES, THEN, THE ISSUE OF WAS

23    SHE SERVED WITH NOTICE.

24              BUT I GET DOWN TO THE FUNDAMENTAL THING

25    THAT EVEN IF YOU TAKE EVERYTHING THEY SAY AS TRUE, THIS

26    ISN'T NOTICE BECAUSE IT REFERS TO AN EXHIBIT 1, WHICH IS

27    AN INTEGRAL PART OF THIS THING, IN PARAGRAPH NUMBER 3,

28    AND IT'S NOT ATTACHED.  AND THEN PARAGRAPH --

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                        25

1     THE COURT:  I THINK WE'RE GOING TO GET FURTHER

2     BRIEFING ON THAT.

3         MR. SMOLKER:  YEAH.

4         THE COURT:  AND GIVEN THAT THE FIVE YEARS HAS

5     EXPIRED, UNLESS THERE'S AN EXCUSE, I DON'T THINK THERE'S

6     ANY PREJUDICE TO ANYBODY IF WE GET THESE FACTS RIGHT,

7     EVEN IF IT REQUIRES SUPPLEMENTAL BRIEFING.

8         MR. SMOLKER:  I'M ALL FOR GETTING THE FACTS RIGHT,

9     NO MATTER WHAT.

10        THE COURT:  SO IF WE GET SUPPLEMENTAL BRIEFING,

Hearing - ROUGH JT

11   YOU'LL HAVE A CHANCE TO RESPOND.  SHOULD WE WAIT UNTIL

12   WE GET THAT SUPPLEMENTAL BRIEFING AND YOU RESPOND BEFORE

13   WE PROCEED, OR DO YOU --

14        MR. SMOLKER:  WELL, I'M ASKING YOU ON YOUR OWN

15   MOTION TO LIFT YOUR STAY OF FEBRUARY 22ND SO WE WON'T

16   HAVE A CLOUD OVER OUR HEAD OF WHETHER OR NOT, AT LEAST

17   FROM THIS MOMENT FORWARD, IT'S LIFTED.  IT'S MY POSITION

18   THAT IT HASN'T BEEN LIFTED, AND, THEREFORE, THEY CANNOT

19   BRING THIS MOTION.

20        THE COURT:  I'M SORRY.  I'M NOT GOING TO DO THAT.

21        MR. SMOLKER:  ALL RIGHT.

22        THE COURT:  BECAUSE NO MOTION HAS BEEN MADE TO ME

23   TO LIFT IT.  I DON'T HAVE A SERVICE LIST.

24        MR. SMOLKER:  YES.

25        THE COURT:  I DON'T KNOW WHOSE --

26        MR. SMOLKER:  EXACTLY.

27        THE COURT:  I DON'T KNOW --

28        MR. SMOLKER:  I'M SORRY.


          THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT


                                                    26

1         THE COURT:  -- WHO'S REMAINING IN THIS ACTION.

2    I'M NOT GOING TO LIFT SOME STAY, WHICH MIGHT HAVE

3    CONSEQUENCES TO THE PARTIES, UNLESS I GET A MOTION AND A

4    SERVICE LIST, AND I CAN MAKE A RULING.  IN THIS

5    PARTICULAR CASE, AS YOU KNOW, THE AUTOMATIC STAY

6    OCCURRED BEFORE I ISSUED A STAY.  MY STAY WAS DERIVATIVE

7    OF THE AUTOMATIC STAY.

8              NO ONE GAVE ME ANY NOTICE THAT THE

9    AUTOMATIC STAY HAS BEEN LIFTED UNTIL I GOT THE

10   APPLICATION FROM GRACE TO DISMISS THE ACTION UNDER THE

11   FIVE-YEAR STATUTE.

Hearing - ROUGH JT

12            I NEED TO MAKE A DECISION ON THAT, WHICH I

13    SHALL DO, BUT I THINK I'D LIKE TO GET FURTHER BRIEFING

14    ON THE SERVICE ISSUES.

15          MR. SMOLKER:  ARE YOU ASKING ME IF I HAVE ANY

16    OBJECTION TO GETTING FURTHER BRIEFING.  I DON'T HAVE ANY

17    OBJECTION TO YOU GETTING FURTHER BRIEFING, IF THAT'S THE

18    QUESTION YOU'RE ASKING ME.

19          THE COURT:  GOOD.  IS THERE ANYTHING MORE THAT WE

20    NEED TO DISCUSS TODAY?

21          MR. SMOLKER:  I -- I THINK IN MY OWN WAY, I'VE

22    DISCUSSED EVERYTHING I WANT TO DISCUSS, OR I BROUGHT TO

23    YOUR ATTENTION EVERYTHING I WANTED TO BRING TO YOUR

24    ATTENTION.

25          THE COURT:  OKAY.  WE CAN EITHER SET A DATE, WHICH

26    MIGHT BE A PRUDENT THING TO DO, OR I CAN LET THE -- LET

27    GRACE SET A DATE BY FILING A BRIEF, GIVING ENOUGH TIME

28    FOR A RESPONSE, AND SPECIFYING THE DAY OF THE WEEK THAT

        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                        27

1    YOU WANT TO HAVE THE MATTER HEARD.

2             I DON'T HAVE A RESERVATION SYSTEM.  I HAVE

3    TO BE ON THE COURT RESERVATION SYSTEM, BUT I DON'T HAVE

4    A LIMITATION ON MOTIONS.

5          MR. SMOLKER:  I'M GOING TO BE IN SAN FRANCISCO ON

6    JANUARY 10TH, SO WHATEVER'S HAPPENING, I WOULD LIKE IT

7    NOT TO BE ON JANUARY 10TH.

8          THE COURT:  IT WILL NOT.

9          MR. SMOLKER:  AND I'M FLYING BACK JAPAN 11TH.

10          THE COURT:  OKAY.  IT WON'T BE ON THE 10TH OR

11    11TH.

Hearing - ROUGH JT

12          MR. LIU:  YOUR HONOR, IF I MAY MAKE A SUGGESTION.

13   WOULD IT BE PRUDENT TO HAVE SIMULTANEOUS BRIEFING IF WE

14   CAN SPECIFY THE ISSUE AT HAND?

15          THE COURT:  NO, BECAUSE YOU PROBABLY WON'T FRAME

16   THE ISSUE THE SAME WAY.  I WANT GRACE TO FRAME THE ISSUE

17   IN A WAY THAT SHOULD BE RESPONDED TO.  I GUESS

18   SIMULTANEOUS BRIEFS, THEY'RE LIKE SHIPS PASSING IN THE

19   NIGHT.

20          MS. LEWIS:  OKAY.  THAT'S TRUE.  HOW ABOUT

21   JANUARY 12TH?  IT'S A THURSDAY.

22          MR. SMOLKER:  IS THAT WHEN YOU FILE YOUR BRIEF?

23   OR WHAT'S HAPPENING ON THE 12TH.

24          MS. LEWIS:  YOU ASKED ME FOR A DATE FOR THE

25   HEARING.

26          THE COURT:  WHEN ARE YOU GOING TO FILE YOUR BRIEF?

27          MS. LEWIS:  IT WILL BE FILED THE 30TH,

28   DECEMBER 30TH.


        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT


                                                        28

 1          THE COURT:  DECEMBER 30TH IS FINE.  AND

 2   JANUARY 12TH FOR A HEARING?

 3          MR. SMOLKER:  I WOULD LIKE TO HAVE 10 DAYS TO

 4   RESPOND.

 5          THE COURT:  WELL, IT'S A SUPPLEMENTAL BRIEF.  YOU

 6   DON'T NORMALLY HAVE 10 DAYS, BUT I HAVE NO OBJECTION TO

 7   SETTING IT ON THE 19TH, IF THAT'S OKAY WITH YOU GUYS.

 8          MS. LEWIS:  YOUR HONOR, I AM IN PARTNERSHIP

 9   MEETINGS FROM AFTERNOON OF THE 18TH --

10          THE COURT:  YOU PICK A DATE.

11          MS. LEWIS:  OKAY.  I CAN DO THE 18TH OR THE 23RD.

12          THE COURT:  WHY DON'T WE DO THE 23RD?  OKAY.

Hearing - ROUGH JT

13          MR. SMOLKER:  LET ME JUST LOOK AT MY CALENDAR TO

14  MAKE SURE I DON'T HAVE ANY PROBLEMS.  I HAVE NO PROBLEM

15  WITH JANUARY 23RD.  IT'S A MONDAY; RIGHT?

16          THE COURT:  IT IS.

17          MR. SMOLKER:  ARE WE GOING TO BE HERE 8:30?

18          THE COURT:  YOU WILL.  I'LL BE PICKING A JURY

19  LATER THAT DAY, SO THAT MEANS I WON'T A LOT OF TIME TO

20  SPEND ON THIS.

21          MR. SMOLKER:  SHOULD WE DO IT ON ANOTHER DAY?

22          MS. LEWIS:  THAT'S FINE.

23          THE COURT:  WELL, WE COULD, BUT, YOU KNOW, I'M

24  PRETTY BUSY EVERY DAY.

25          MS. LEWIS:  THE 23RD IS FINE WITH US, YOUR HONOR.

26          THE COURT:  WE'RE AT THE POINT WHERE WE OUGHT TO

27  BE ABLE TO MAKE A DECISION ON THIS, RIGHT OR WRONG, SO

28  THAT EACH SIDE CAN PURSUE THEIR REMEDIES.

      THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

                                                        29

1           MS. LEWIS:  THANKS, YOUR HONOR.

2           MR. SMOLKER:  OKAY.  HERE'S WHAT I WROTE DOWN, AND

3   I WANT TO KNOW IF IT'S RIGHT.  GRACE WILL FILE BRIEF ON

4   DECEMBER 30TH AND SERVE ME ON DECEMBER 30TH SO I WILL

5   GET THEIR PAPERS ON DECEMBER 30TH.

6           THE COURT:  IT'S GOING TO BE BY MAIL, UNLESS YOU

7   AGREE TO HAVE IT --

8           MR. SMOLKER:  OKAY.  WELL, IF IT'S BY MAIL, I

9   WOULD LIKE 15 DAYS TO RESPOND.

10          THE COURT:  NO, NO.  TEN IS WHAT YOU WANTED.

11          MR. SMOLKER:  THAT'S BECAUSE I ASSUMED I WOULD GET

12  IT ON THE 30TH.

Hearing - ROUGH JT

13          THE COURT:  DO YOU HAVE E-MAIL?

14          MR. SMOLKER:  I DO.

15          THE COURT:  IS IT ON THE TOP OF YOUR PLEADING?

16          MR. SMOLKER:  THEY'VE BEEN CORRESPONDING WITH ME

17    BY E-MAIL, AND I'VE BEEN GETTING THEIR E-MAIL.

18          . THE COURT:  THAT'S TRUE.  THEY'LL SEND IT TO YOU

19    BY E-MAIL AND ALSO MAIL.

20          MS. LEWIS:  IF MR. SMOLKER WILL STIPULATE TO

21    RECEIVING IT BY E-MAIL, BECAUSE HE'S PREVIOUSLY TOLD US

22    HE WILL NOT ACCEPT --

23          MR. SMOLKER:  OH, I'M GOING TO GET IT BOTH WAYS,

24    BECAUSE I'M NOT GOOD AT COMPUTERS.  YOU WOULDN'T BELIEVE

25    ALL THE THINGS I MESS UP.  I APPRECIATE YOU SENDING IT

26    BY E-MAIL, AND I'LL TRY AND DOWNLOAD IT AND GET FILES

27    AND NOT ERASE IT BY ACCIDENT.  YOU CAN FILE IT BOTH

28    WAYS, BY MAIL AND E-MAIL.


            THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT


                                                    30

1           MS. LEWIS:  WOULD FAX BE SUFFICIENT?

2           MR. LIU:  WOULD FAX BE SUFFICIENT, YOUR HONOR?

3           THE COURT:  FAX WOULD BE FINE.

4           MR. SMOLKER:  FAX WOULD BE FINE, AND I'LL MAKE

5     SURE YOU HAVE THE RIGHT NUMBER.  AND I WILL RESPOND BY

6     WHEN?

7           THE COURT:  I GUESS YOU WILL --

8           MR. SMOLKER:  I WILL FILE IT BY THE 10TH?

9           THE COURT:  BY THE 10TH; RIGHT.

10          MR. SMOLKER:  AND THE HEARING WILL BE ON THE 23RD?

11          THE COURT:  THAT'S A LONG WAY AWAY.

12          MS. LEWIS:  IT IS.

13          THE COURT:  SHALL WE MAKE IT ON THE 16TH?

Hearing - ROUGH JT

14          MS. LEWIS:  SURE.

15          THE COURT:  IT SORT OF DEPENDS.

16          MR. SMOLKER:  THAT'S MARTIN LUTHER KING'S

17   BIRTHDAY.  I DON'T THINK THE COURT IS GOING TO BE OPEN.

18   IS THE COURT GOING TO BE OPEN ON MARTIN LUTHER KING'S

19   BIRTHDAY?

20          THE COURT:  NO.  THEN WE'LL DO IT ON THE 17.  AS A

21   MATTER OF FACT, I ONLY HAVE ONE TRIAL ON THE 17TH.

22          MS. LEWIS:  YOUR HONOR, WOULD WE HAVE THE

23   OPPORTUNITY TO REPLY?

24          THE COURT:  SURE.

25          MS. LEWIS:  SO IF WE GET THE REPLY ON THE 10TH,

26   WE'LL REPLY BY THE 13TH, THE FRIDAY?

27          THE COURT:  SURE.

28          MS. LEWIS:  THANK YOU.


        THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT


                                                    31

1           MR. SMOLKER:  AND SAME THING -- IT WILL BE SERVED

2    BY FAX AND MAIL?

3           THE COURT:  THIS WILL DO IT BY FAX; RIGHT?

4           MS. LEWIS:  YES, YOUR HONOR.

5           MR. LIU:  YES.

6           THE COURT:  OKAY.  SORRY, FOLKS.  SORRY YOU HAD TO

7    WAIT SO LONG.

8           MS. LEWIS:  THAT'S NOT A PROBLEM.

9           THE COURT:  TODAY'S NOT A TYPICAL DAY, BUT

10   NOTHING'S TYPICAL ANYMORE.

11          MR. SMOLKER:  YOUR HONOR, IT STARTED IN 1997.

12          THE COURT:  THIS CASE?

13          MR. SMOLKER:  YES.  THAT'S AN INDIRECT WAY OF

                        Page 30

Hearing - ROUGH JT

14   SAYING IT WASN'T A LONG WAIT.

15         MS. LEWIS:  HAVE A NICE HOLIDAY, YOUR HONOR.

16         MR. LIU:  THANK YOU VERY MUCH, YOUR HONOR.

17         MR. SMOLKER:  THANK YOU.

18

19

20

21

22

23

·24

25

26

27

28

THIS IS AN UNEDITED AND UNCERTIFIED ROUGH DRAFT

PROOF OF SERVICE (Code Civ. Proc., §§ 1013a, 2015.5)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

        I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 626 Wilshire Blvd., Suite 975, Los Angeles, California 90017; my email address is bgonzales@bortonpetrini.com; eloaiza@bortonpetrini.com.

        On **December 30, 2016,** I served the foregoing document described as **W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360; DECLARATION OF JEFFREY Z. LIU AND ROGER HIGGINS; AND [PROPOSED] ORDER THERETO** on the other parties in this action by placing the true copies thereof enclosed in sealed envelopes addressed as indicated in the attached service list.

        **BY PERSONAL DELIVERY BY ACE MESSENGER & ATTORNEY SERVICE, INC.:** I caused the aforementioned documents to be picked up from my office at the above referenced business address by an authorized courier or driver authorized by the courier service to receive documents for delivery to the person(s)/office(s) indicated above.

**XX**        **BY MAIL:** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

        **BY GOLDEN STATE OVERNIGHT COURIER SERVICE:** The aforementioned documents were picked up from my office at the above referenced business address by an authorized courier or driver authorized by the courier service to receive documents, in an envelope or package designated by the courier service with delivery fees provided for addressed to the person(s)/office(s) on whom it is to be served.

        **BY FAX:** I caused each document to be delivered by electronic facsimile to the offices listed above. The facsimile machine I used complied with California Rules of Court, Rule 2.003(3) and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2008(e).

        **BY EMAIL or ELECTRONIC TRANSMISSION:** I caused the aforementioned documents to be sent to the person or persons at the email address indicated above during normal business hours. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

        I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **December 30, 2016,** at Los Angeles, California.

Elva Loaiza

Type or Print Name                                    Signature

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360

SERVICE LIST

| | |
|---|---|
| Gary S. Smolker, Esq.<br>LAW OFFICES OF GARY S. SMOLKER<br>16055 Ventura Boulevard Suite 525<br>Encino, CA 91436-2609<br>(VIA U.S. MAIL & EMAIL) | PHONE:  (818) 788-7290<br>FAX: (818) 788-7503<br>**(Gary S. Smolker, In Pro Per)** |
| Sara Thorpe, Esq.<br>GORDON & REES<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111 | BUS: (415) 986-5900<br>FAX: (415) 986-8054<br>**(Truck Underwriters Association; Farmers Group, Inc; Farmers Insurance Group of Companies)** |
| Michael M. Pollak, Esq.<br>POLLAK, VIDA & FISHER<br>11150 W Olympic Blvd # 980<br>Los Angeles, CA 90064 | BUS: (310) 551-3400<br>FAX: (310) 551-1036<br>**(Allstate Insurance Co.)** |
| PRINDLE, DECKER & AMARO<br>310 Golden Shore, 4th Floor<br>P.O. Box 22711<br>Long Beach, CA 90801-5511 | BUS: (562) 436-3946<br>FAX: (562) 495-0564<br>**(Home Savings Termite Control; Wayne Morris)** |
| Jeffrey A. Charleston, Esq.<br>Robert D. Hoffman, Esq.<br>CHARLESTON, REVICH & CHAMBERLIN<br>1840 Century Park E # 300<br>Los Angeles, CA 90067 | BUS: (310) 551-7000<br>FAX: (310) 203-9321<br>**(Dennis A. Babbit; Coregis Group, Inc.; Coregis Insurance Co.; Dean & Associates; California Insurance Company)** |
| David L. Hughes, Esq.<br>Stacie Brandt, Esq.<br>BOOTH, MITCHEL & STRANGE LLP<br>701 South Parker Street Suite 6500<br>Orange, CA 928868 | BUS: (714) 480-8500<br>FAX: (714) 480-8533<br>**(Reliance Insurance Company)** |
| Richard B. Wolf, Esq.<br>LEWIS, D'AMATO, BRISBOIS & BISGAARD<br>633 West 5th Street Suite 4000<br>Los Angeles, CA 90071 | BUS: (213) 250-1800<br>FAX: (213) 250-7900<br>**(Inter-Insurance Exchange of Automobile Club)** |
| Michael A. K. Dan, Esq.<br>Professional Corporation<br>11301 W Olympic Blvd Suite 740<br>Los Angeles, CA 90064 | Phone Number: (310) 277-4857<br>Fax Number: (424) 832-7418 |

Rev. 12/12/16

h:\003418\045
809\pleadings
re mtn to
dismiss\supple
mental briefing

W.R. GRACE & COMPANY'S SUPPLEMENTAL BRIEFING TO MOTION TO DISMISS FOR FAILURE TO BRING
ACTION TO TRIAL WITHIN FIVE YEARS AS REQUIRED BY CODE OF CIVIL PROCEDURE §583.310, §583.360