<u>**E**XHIBIT **G**</u>

**Letter from Roger J. Higgins to Gary S. Smolker, dated January 22, 2021**

# THE LAW OFFICES OF ROGER HIGGINS, LLC

516 N. Ogden Ave.
Suite 136
Chicago, IL 60642

tel:  (312) 480-1984          rhiggins@rogerhigginslaw.com          Fax:  (312) 577-0737

January 22, 2021

**VIA E-MAIL – gsmolker@aol.com**

Gary S. Smolker
16055 Ventura Blvd., Suite 525
Encino, CA 91436

Dear Mr. Smolker:

As you are aware, I represent W. R. Grace & Co. ("Grace") as counsel in its chapter 11 case (*In re W. R. Grace & Co.*, Case no. 01-1139) in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). As you are also aware, a summary judgment motion is now pending in that case, which seeks disallowance of your claim, Claim no. 392.[1] Briefing is now complete, and oral argument is scheduled for 12:00 pm ET/9:00 am PT, February 1, 2021 (the "February 1st Hearing"). It is in this context that I am writing to you in response to *Gary S. Smolker's Request for Production of Documents from W.R. Grace & Co. ("Grace") Number One* (the "12/28 RFP"), which you sent to Mr. O'Neill and me via e-mail correspondence on December 28, 2020, with a return date of January 27, 2021. For your convenience, I have attached a copy of the 12/28 RFP to this letter.

On January 18, 2021, my co-counsel, James O'Neill, and I had a telephone conference with you concerning the 12/28 RFP. In that conference, we discussed with you the fact that you had failed to comply with the requirements set forth in Fed. R. Civ. P. 56(d), made applicable to the chapter 11 case pursuant to Fed. R. Bankr. P. 7056, prior to serving the 12/28 RFP. Moreover, to date you still have not complied with Fed. R. Civ. P. 56(d). Indeed, it is Grace's position that your *Motion and Supporting Delcaration* [sic] *of Gary S. Smolker ("Smolker") for Leave to File the Following Additional Pleadings and Exhibits In Oppostion* [sic] *to Grace's Pending Motion For Summary Judgement* [sic], filed on January 15, 2021 [Docket No. 33181] (the "Motion for Leave"), does not comply with the requirements set forth in Fed. R. Civ. P. 56(d). In view of your continued failure to comply with that rule, it is Grace's position that it should not comply with the request for production set forth in your December 28 RFP absent an order of the Bankruptcy Court directing Grace to do so.

That said and as we also discussed in our January 18 conference, Grace does seek a mutually agreeable solution to your 12/28 RFP that avoids further motion practice in a matter that has already generated more delay and motion practice than it should have. As a threshold matter that we discussed on January 18, Grace genuinely does not understand what documents in its possession you think would be material or otherwise relevant to the relief sought by the Summary Judgment Motion. To date, you have not identified any such documents.

---

[1]    On August 3, 2020, Grace filed its *Motion for Summary Judgment Pursuant To Fed. R. Bankr. P. 7056 for Disallowance of Claim No. 392, Filed by Gary S. Smolker, and Related Claims, Nos. 382 and 4070, Filed by Home Savings Termite Control, Inc., and Wayne Morris, Respectively* [Docket No. 33154] (the "Summary Judgment Motion").

## The Law Offices of Roger Higgins, LLC

What's more, the lateness of your request, which requests documents nearly a month after your December 30 deadline to file a response to Grace's Summary Judgment Motion, further compounds your failure to comply with Fed. R. Bankr. P. 56. Indeed, as matters now stand, it is Grace's view that even if it could produce documents responsive to your 12/28 RFP that were material to the relief sought in the Summary Judgment Motion, you would be unable to use any such documents in a way that complied with the requirements of Fed. R. Civ. P. 56.

That said, Mr. O'Neill and I stated to you in the January 18 conference that Grace desired to reach a compromise acceptable to both parties. We therefore proposed that the parties agree to an extension of the return date of the 12/28 RFP until such time after the Bankruptcy Court adjudicated the Motion for Leave. At that time, the Motion for Leave was scheduled for hearing on March 4, 2021. Grace therefore proposed that, prior to the end of any such extension, the parties would conduct a further "meet and confer" conference in light of the Court's disposition of that motion, preferably during the week of March 8. Grace left that proposal open to you.

You have not accepted that proposal. Indeed, you have stated to Mr. O'Neill and me that you wish Grace to file an objection to the 12/28 RFP prior to your consenting to any such extension. (You seem to have distinguished between Grace filing such an objection to the 12/28 RFP and its filing a motion for a protective order—a distinction that Grace believes is without a difference, as the relief sought in any such objection would indeed be a protective order.)

Grace nonetheless still desires to avoid further motion practice. Moreover, as you are aware, on January 20, 2021, the Bankruptcy Court *sua sponte* entered a *Scheduling Order* [Docket no. 33182], which stated that the Court would consider the Motion for Leave at the February 1st Hearing, and depending upon how the Court disposed of that motion would then proceed (or not) with the hearing on the Summary Judgment Motion. Grace therefore will not at the present time be filing any pleading seeking relief from the Bankruptcy Court vis-à-vis your 12/28 RFP.

Instead, this letter will serve as notice to you that Grace objects to your 12/28 RFP based upon your failure to comply with the requirements of Fed. R. Civ. P. 56. Grace will not provide any documents to you at the present time in response to the 12/28 RFP. That discovery request is improper under Fed. R. Bankr. P. 56(d). Moreover as discussed above, Grace genuinely does not understand what—if any—documents would be responsive to the 12/28 RFP and material to the matters at issue in the Summary Judgment Motion. Finally, in view of the Bankruptcy Court's intention to adjudicate the Motion to Leave at the February 1st Hearing, it is Grace's position that no further action should be taken on the 12/28 RFP until after that hearing.

## The Law Offices of Roger Higgins, LLC

Grace reserves all of its rights to make further objections to the 12/28 RFP and any other discovery served by you during the pendency of the Summary Judgment Motion, including but not limited to filing a pleading seeking relief from the Bankruptcy Court.  That said, Grace remains open to further discussions with you on the 12/28 RFP, and looks forward to reaching a mutually agreeable and proportionate solution to your improper and disproportionate discovery request after the February 1st Hearing.

Sincerely yours,

Roger J. Higgins

cc:     James E. O'Neill (via e-mail)
        Kelleen McGinnis Lonergan (via e-mail)
        Viktoriya M. Shpigelman (via e-mail)

Encl.:  12/28 RFP

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W In re: | ) | Chapter 11 |
| . R. Grace & Co, et al. | ) | Case No. 01-01139 (AMC) |
|    Reorganized Debtors. | ) | (Jointly Administered) |
| | )Hearing date: Feb 1, 2021 12pm EST |
| | )Deadline: January 27, 2021 |
| _____ | )Docket Nos. 33154 and 33163 |

## GARY S. SMOLKER'S REQUEST FOR PRODUCTION OF DOCUMENTS FROM W.R. GRACE & CO. ("GRACE") NUMBER ONE

**GARY S. SMOLKER ("SMOLKER) REQUESTS THAT W.R. GRACE & CO. ("GRACE") PRODUCE THE FOLLOWING DOCUMENTS ON OR BEFORE JANUARY 27, 2021 AT THE SMOLKER LAW FIRM FOR INSPECTION AND COPYING AND FILE THE FOLLOWING DOCUMENTS (THE SAME DOCUMENTS) IN THIS COURT ON OR BEFORE JANUARY 29, 2021 FOR USE IN THE HEARING ON GRACE'S MOTION FOR SUMMARY JUDGMENT SCHEDULED TO BE HEARD ON FEBRUARY 1, 2021 BY THE HONORABLE ASHELY M. CHAN, JUDGE PRESIDING**

## I. PRELIMINARY STATEMENT REGARDING THE PRODCUTION OF DOCUMENTS

The documents GRACE is requested to produce shall be produced on January 27, 2021 at the SMOLKER LAW FIRM at 10:00 a.m. (PST).

The SMOLKER LAW FIRM is located at 16055 Ventura Blvd., Suite 525, Encino, California, 91436.

GRACE may produce copies of documents at the SMOLKER LAW FIRM instead of permitting inspection of originals.

1

GRACE is requested to file with the United States Bankruptcy Court, for the District of Delaware, at the Office of the Clerk, located at 824 Market Street, Wilmington, Delaware 19801 on or before January 29, 2020 at 4:00 p.m. (EST) the documents GRACE is requested to produce,

## II. PRELIMINARY STATEMENT (INTRODUCTION)

On August 3, 2020 GRACE filed a 750 page *Motion for Summary Judgment for Disallowance of Claim No. 392 filed by Gary S. Smolker* ("MSJ") [Docket No. 33154) in which GRACE specified any objection thereto must be filed with the Court by August 17, 2020.

On August 17, 2020 Gary S. Smolker ("SMOLKER') filed his "Objections and Response to GRACE'S MSJ" dated August 15, 2020 ("OBJECTION") [Docket 3154] with the Court.

SMOLKER had to get his OBJECTION to Kinko's on a Saturday, August 15, 2020 in order for it to be filed on Monday, August 17, 2020 because Kinko's was not open on Sunday.

SMOLKER objected to the Court granting GRACE'S MSJ and SMOLKER objected to the provision in the attached proposed Order which states, *"and none of these claimants are entitled to any other Claim in the above-captioned chapter 11 case."*

The manufacture, sale, and use of pesticides are regulated by federal and state laws.

In the OBJECTION filed with the Bankruptcy Court on August 17, 2020, SMOLKER pointed out that Claim No 392 filed by SMOLKER in this bankruptcy case is a claim that arose from GRACE illegally manufacturing and illegally selling its product SYLOID 244 as a pesticide dust in violation of Federal Law regulating the manufacture, sale and use of pesticides nationally and in violation of California laws regulating the manufacture, sale, storage, delivery and use of pesticide products in California.

GRACE'S SYLOID 244 was sold and delivered to Home Saving Termite Control, Inc. (TERMITE) to use as a pesticide dust in SMOLKER'S condominium

unit. SYLOID 244, a pesticide dust, would be installed – via injection - by TERMITE in wall and ceiling voids to eradicate termites.

There is no safe way to use GRACE'S product SYLOID 244 as a pesticide dust injected into wall and ceiling voids in residential structures to eradicate TERMITES.

At the time GRACE sold SYLOID 244 to TERMITE for use as a pesticide in SMOLKER'S home, SYLOID 244 was not registered as a pesticide with the United States Environmental Protection Agency, or approved for use as a pesticide by the United States Environmental Protection Agency.

At the time GRAC E sold SYLOID 244 to TERMITE for use as a pesticide in SMOLKER'S home, SYLOID 244 was not registered as a pesticide with the State of California Department of Pesticide Regulation, or approved by the California Department of Pesticide Regulation for use as a pesticide.

TERMITE installed SYLOID 244 in SMOLKER'S home (a Condominium Unit) and in Common Areas surrounding SMOLKER'S condominium unit in an ultra-hazardous manner.

The way SYLOID 244 was installed in SMOLKER'S home it was foreseeable and inevitable that SMOLKER and all members of SMOLKER'S family living in SMOLKER'S Condominium Unit would come into unprotected contact with SYLOID 244 for more than four years.

The SYLOID 244 dust installed in the wall and ceiling voids of SMOLKER'S home by TERMITE continuously came out of the wall and ceiling voids into the living areas of SMOLKER'S home.

The SYLOID 244 that came out of the wall and ceiling voids into the habitable area of SMOLKER'S home repeatedly and continuously contaminated all persons and personal property in SMOLKER'S home for more than four years.

It was impossible to breathe air in SMOLKER'S home without inhaling SYLOID 244 in the air.

That experience brought pain and chaos into the life of SMOLKER and his family.

SMOLKER and the members of his family living in his condominium with him were overwhelmed with horror.

The conduct of GRACE and TERMITE put SMOLKER and his family in a horrible helpless situation.

The toxic experience of continuously coming into unprotected contact with SYLOID 244 in their home produced a psychic devastation.

That experience had a profound impact on SMOLKER'S and his children's capacity and ability to work.

The SMOLKER children had nightmares; they couldn't get a good night's sleep.

They could not get up in the morning.

Eventually, they could not get up in the morning to attend school regularly.

Neither one of SMOLKER'S two children living in SMOLKER's condominium unit after it was treated with SYLOID 244 was able to graduate from high school as a result of living in a pesticide contaminated home.

Living in a home contaminated with SYLOID 244 shattered their lives.

It was an overwhelming experience.

It wreaked havoc in their bodies and in their minds.

One does not have to be a combat soldier, or visit a refugee camp in Syria or the Congo to encounter trauma.  (Trauma, by definition, is unbearable and intolerable.)

All one has to do is live in a home whose air is contaminated with SYLOID 244.

It took tremendous energy for SMOLKER to keep functioning while experiencing the trauma of living in a home contaminated with SYLOID 244 and seeing the devastation it was having on his children and on his wife.

4

Survivors of trauma often fear that they are damaged to the core and beyond redemption. SMOLKER believes that he has been damaged to the core as a result of living with his two youngest children and his wife (their mother) in his condominium while his condominium was contaminated with SYOID 244.

It takes tremendous energy for SMOLKER to keep functioning while carrying the memory of his helplessness, his wife's helplessness, his children's helplessness and of the pain he and they suffered.

The horrific experience of living in his SYLOID 244 contaminated home has caused SMOLKER to become hopelessly stuck in the past.

SMOLKER cannot bridge the gap between his experience living in his SYLOID 244 contaminated home with his wife and his two youngest children and his current life.

To this day, SMOLKER is unable to make the past experience of living in his SYLOID 244 home into a story that happened a long time ago.

SMOLKER still has nightmares about it and flash backs.

And, SMOLKER currently has damaged lungs as a result of living in his SYLOID 244 contaminated home.

After installation of SYLOID 244 in his condominium SMOLKER could not breathe properly. When SMOLKER inhaled his nose burned, his lips dried out, his mouth and throat were constantly painfully dry. SMOLKER'S skin dried out and cracked.

Attached as Exhibit "C" to SMOLKER'S OBJECTION is a true and correct copy of a radiologist's report on a CT scan taken on May 1, 2019 of SMOLKER'S chest.

The reports on the May 1, 2019 CT scan state with regards to SMOLKER'S lungs: *"Mild chronic parenchymal scaring."*

*"Bilateral posterior lower lobes demonstrate mild subpleural scarring and bronchiectasis, most prominent toward the lung bases."*

Attached as Exhibit "D" to SMOLKER'S OBJECTION is a true and correct copy of a radiologist's report on a CT scan taken on July 23, 2020 of SMOLKER'S chest.

The reports on the July 23, 2020 CT scan state with regards to SMOLKER'S lungs state *"Bibasilar (both lower lobes) parenchymal stranding and bronchiolectasis, finding that are likely related to remote episode of inflammation. Old pulmonary granulomatous disease."*

*"On the supine exhalation view images reticular stranded opacities are identified in the basilar segments of the right and left lower lobes and there is overall generally decreased ventilation of the bilateral lobes on this acquisition. Many of the subpleural reticulations and strands are not conspicuous on the prone or inhalation images which indicates that this represents atelectasis"*

*"Punctate calcified granuloma in the left lower lobe."*

*"Mild bronchiectasis is seen in the basal segments of right and left lower lobes suggesting residue from remote inflammatory process."*

As a direct and proximate result of the illegal manufacture, illegal sale, and illegal delivery of SYLOID 244 to TERMITE for use as a pesticide by GRACE and as a direct and proximate result of the subsequent illegal installation of SYLOID 244 in SMOLKER'S condominium unit by TERMITE, SMOLKER suffered personal injuries, property damage and other losses and damages in an amount in excess of $3,500,000.00.

SMOLKER also points out in SMOLKER'S OBJECTION:

- SYLOID 244 consists of extremely fine particles of amorphous silica gel which can do horrible damage to any human being who comes into unprotected contact with it.
- At the time GRACE sold SYLOID 244 to TERMITE for use as a pesticide in SMOLKER'S home, GRACE knew unprotected human contact with amorphous silica gel dust particles would be harmful and could be deadly.

- GRACE knew that fine particles and large particles of amorphous silica dust inhaled in the air a person breathes get into that person's lungs and stay there.
- The smallest diameter of the human respiratory tract is more than 100 microns; the largest agglomerates of amorphous silica are only 1 to 5 microns in diameter.
- The SYLOID 244 TERMITE illegally installed in SMOLKER's home permeated the air in SMOLKER'S condominium unit, was inhaled when SMOLKER and members of his family inhaled the air in SMOLKER'S home, contaminated all personal property in SMOLKER'S home, and caused SMOLKER and his family and their personal property to continuously come into unprotected contact with SYLOID 244 for more than four years.
- As a direct and proximate result of SMOLKER and his family having unprotected contact with SYLOID 244, and as a direct and proximate result of having his home and all personal property in his home contaminated with SYLOID 244, SMOLKER suffered personal injury damages, property damages and other loses and damages in an amount in excess of $3,500,000.00 (three million dollars).

After receipt of the OBJECTION, The Court, Honorable Ashely M. Chan, United States Bankruptcy Judge presiding ordered GRACE'S attorneys Roger J. Higgins and James E. O'Neill to enter into an agreement (on behalf of GRACE) with SMOLKER granting SMOLKER more time to respond to GRACE'S MSJ.

SMOLKER made a good faith effort based on informational known to him at the time he was contacted by GRACE'S attorneys to reach an agreement as to how much more time SMOLKER should be granted to respond to GRACE'S MSJ. GRACE'S attorneys refused to grant the time to respond requested by SMOLKER.

GRACE'S attorneys used their refusal and failure to enter into an agreement granting SMOLKER a reasonable amount of additional time to respond to GRACE'S 750 page Motion for Summary Judgment, as an excuse to request Judge Chan to hold a hearing to determine how much additional time SMOLKER should be granted to file a further response to GRACE'S MSJ.

7

At GRACE'S attorney request a hearing was held before Judge Chan on September 17, 2020. At that hearing Judge Chan granted SMOLKER more time to file a further response to GRACE'S MSJ than SMOLKER had originally asked GRACE's attorneys to agree to. Judge Chan granted SMOLKER until December 16, 2020 to respond to GRACE'S MSJ.

Prior to the September 17, 2020 hearing, SMOLKER had been diagnosed as having high blood pressure. SMOLKER had had shortness of breath for at least several years. SMOLKER was having trouble sleeping for more two to four hours at a time.

SMOLKER had been diagnosed as having Sleep Apnea and had been diagnosed as having low saturated oxygen content in his blood on July 23, 2020 by Dr. Susan Sprau MD, MACP, FCCP, FAASM, ABIM Certified, Sleep Medicine,.

It was reported to SMOLKER on July 28, 2020 by Susan Sprau MD, MACP, FCCP, FAASM, ABIM Certified, Sleep Medicine, after review of a Sleep Breathing Test, conducted on July 19, 2020, that it was suspected that SMOLKER had a pathological breathing disorder.

SMOLKER'S primary care doctor had been advised SMOLKER to get a full pulmonary work up on July 29, 2019 because SMOLKER had shortness of breath and lack of stamina.

SMOLKER was unable to get a full pulmonary work-up until July 13, 2020 due to SMOLKER'S involvement in litigation in the California State court system arising out of GRACE's illegal sale of SYLOID 244 to TERMITE.

On July 13, 2020 SMOLKER had an initial consultation with pulmonologist Gerald M. Markovitz, MD.

SMOLKER has **not** been able to have a follow up consultation with Dr. Markovitz or to take further tests Dr. Markovitz has asked SMOLKER to take, because shorty after SMOLKER saw Dr. Markovitz on July 13 on or about August 3, 2020 GRACE filed a 750 page Motion for Summary Judgment which is now before this Court.

SMOLKER spent his time from July 13 through November 11, 2020 putting together Medical Information requested by Dr. Markovitz when he was not spending time responding to GRACE'S Motion for Summary Judgment or preparing for and attending the September 17 hearing before Judge Chan initiated by attorneys for GRACE.

At the hearing on September 17, 2020, Judge Chan specified a date (December 16, 2020) by which SMOLKER would file a further response to GRACE'S SJM and ordered that SMOLKER would be allowed to serve only GRACE'S attorneys Higgins and O'Neill by US Mail or by email at SMOLKER'S option instead of being required to serve the 17 law firms on the distribution list of persons served with GRACE'S MSJ.

GRACE'S attorneys Higgins and O'Neill were ordered to prepare a "SCHEDULING ORDER" reflecting the briefing schedule ordered by Judge Chan at the September 17, 2020 hearing and in that order to also specify the limitation of service of SMOLKER'S "Objection Part No. Two" ordered by Judge Chan – i.e., the order to be signed by Judge Chan would specify service of SMOLKER'S pleadings in this Bankruptcy Case were hence forth to be made by only by US Mail (or optionally by email) and only on attorneys Higgins and O'Neill.

A few hours after the September 17, 2020 hearing, a vein broke in SMOLKER'S left eye causing the surface of SMOKER'S left eye to become covered with blood.

SMOLKER went to his eye doctor to have his eye examined.

His blood pressure was measured at his eye doctor's office at 170/107 and pulse 87.

Shortly after the September 17, 2020 hearing before Judge Chan, GRACE'S attorneys Higgins and O'Neill sent a copy of the Order (Order #2) they wanted to submit to Judge Chan to SMOLKER for SMOLKER to review.

The Order (Order #2) Higgins and O'Neill sent to SMOLKER – via email - did not reflect the Order (Order #1) made by Judge Chan.

SMOLKER pointed out the deficiency/mistake/inaccuracy to Higgins and O'Neil by return email.

Attorneys Higgins and O'Neill prepared another ORDER [Order #3] they wished Judge Chan to sign and sent it to SMOLKER to review.

That Order [Order #3] did not reflect the Order (Order #1) made by Judge Chan.   SMOLKER pointed out the deficiency in the newest Order (Order #3) to Higgins and O'Neill by return email.

The fourth Order (Order #4) prepared by Higgins and O'Neill complied with the actual order (Order #1) made by Judge Chan at the September 17 hearing.

The fourth Order was submitted by GRACE'S Attorneys to Judge Chan.

Judge Chan signed the fourth order – which correctly and accurately reflected the ORDER (Order #1) Judge Chan had made on September 17, 2020.

Judge Chan signed the ORDER (Order #4) submitted to her by Higgins and O'Neill on October 1, 2020.

ORDER #4 correctly specified that on or before December 16, 2020, SMOLKER would file with the Court a response to GRACE'S MSJ.

At the time of the September 17, 2020 hearing SMOLKER was not familiar with the Bankruptcy Code (11 U.S.C.) or related provisions of the United States Code (Titles 18 and 28), Federal Rules of Evidence, Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, Local Rules of the Wilmington Delaware Branch of the United States Bankruptcy Court, Local Rules of the Eighth Circuit Federal District Court, or the American Bar Association's Model Rules of Professional Conduct.

At the time of the September 17, 2020 hearing:

SMOLKER was not aware of the provisions of Federal Rule of Civil Procedure Rule 56 (which specifies what is to be included in a Motion for Summary Judgment) nor was SMOLKER aware of the fact that GRACE's MSJ failed to meet the requirements of Rule 56 of the Federal Rules of Civil Procedure.

SMOLKER was not aware of Federal Rules of Evidence, Rule 201 (which governs taking judicial notice) or Rules 601 and 602 (which govern competency to testify) or Rule 901.2 (which governs prerequisite to admissibility the proffering party must present evidence of a document the party wishes to have admitted as evidence) or of Rules 1005 and 1006 (which governs use of summaries to prove content of voluminous writings), or of the Federal Rules of Evidence Against Hearsay, nor was SMOLKER aware that the majority of facts asserted in the Declaration of Rosemary S. Lewis in support of GRACE'S MSJ are not admissible as evidence.

Nor was SMOLKER aware of Federal Rule of Civil Procedure 56(c) (4) which states that a declaration or affidavit must be made on personal knowledge and show that the declarant is competent to testify on the matters stated.

Once SMOLKER realized that GRACE had not set forth all relevant facts in GRACE'S MSJ (that GRACE had purposefully failed to disclose facts which show there is no merit to GRACE'S MSJ) and that Rosemarie S. Lewis had not shown that she is competent to testify to the facts asserted in her declaration, SMOLKER asked GRACE'S attorneys to give him two more weeks to prepare his further response to GRACE'S 750 page for MSJ.

On December 14, 2020 SMOLKER, at 1:24 PM, sent an email to GRACE'S attorneys Higgins and O'Neil in which SMOLKER requested that GRACE  grant SMOLKER a 14 day extension of the due date by which SMOLKER is required to file his response to GRACE'S MSJ.

In his request SMOLKER stated:

 *"The present December 16 due date for my opposition to Grace's motion for summary judgment does not provide me with a reasonable amount of time to prepare my opposition to Grace's motion for summary judgment or to make a full presentation of my evidence and legal authorities in opposition to Grace's motion for summary judgment.*

*"The preparation of my opposition to Grace's motion for summary judgment requires me (a) to review voluminous writings, and documents presented by Grace as part of Grace's motion for summary judgment, (b) to prepare objections to evidence proffered by Grace, (c) to review the Federal Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, (d) to review Local Bankruptcy Rules of the United States*

*Bankruptcy Court, Delaware District (e) to review Federal Rules of Evidence, (f) to review parts of the United States Code, (g) to review the Rules of the United States District Court for the District of Delaware, (h) to of legal authorities cited by Grace, (i) to cope with Grace's failure to properly present Grace's Motion for Summary Judgment, and (j) prepare of my own opposition papers including my statement of the facts, statement of my disagreement with Grace's statements of the facts, my memorandum of points and authorities, my declaration and copies of referred to documents.*

*"During the time given to prepare my opposition I have been burdened by having damaged lungs, by necessary efforts required to cope with the pandemic and to obey various orders issued the by State of California, the County of Los Angles, and the City of Los Angeles related to Covid 19.*

*"Currently my opposition is due to be filed with the United States Bankruptcy Court in Wilmington Delaware on December 16, which means I have to deliver my papers to Federal Express by December 15 (tomorrow) in order to have them delivered to the Bankruptcy Court on Wednesday December 16 by 4:00 p.m."*

Mr. Higgins replied at 4:00 p.m.:

*"We are in receipt of your request for yet another extension to your deadline to file a response from December 16, 2020, to December 30, 2020.*

*"Any further delay is unacceptable delay is unacceptable to Grace.  Therefore, Grace does not consent to any such extension"*

Mr. Smolker sent a reply to GRACE'S refusal to grant a two week extension extending the deadline for SMOLKER to file his further opposition to GRACE'S Opposition from December 16 to December 30, 2020, by email to both Mr. Higgins and Mr. O'Neill at 5:43 p.m.

In his reply Mr. SMOLKER stated:

*"Mr. Higgins and Mr. O'Neill:*

*"Thank you for your prompt response to my request to extend the deadline for me to file my Opposition to Grace's Motion for Summary Judgment for 14 days, to my request for Grace to agree to extend the December 16 deadline to*

*file my opposition to a new deadline of December 30, 2020.*

*"Please read Judge Chan's "Judicial Practices and Procedures for Judge Ashely M. Chan."*

*"Please pay particular attention to Judge Chan's reference to "Code of Civility of the Pennsylvania Supreme Court" and to the "American Bar Association Guidelines for Litigation Counsel."*

*"Judge Chan subscribes to a specified level of courtroom decorum and conduct of counsel in matters pending before her.*

*"Judge Chan subscribes to the "Code of Civility" set forth in the "Pennsylvania Supreme Court Code of Civility" and Judge Chan subscribes to the "Code of Civility" set forth in the "American Bar Association's Guidelines for Litigation Counsel."*

*"Judge Chan and the United States District Court for the District of Delaware make it clear that the adversarial system is designed to be a truth finding process.*

*"The United States District Court for Delaware and Judge Chan consider it unprofessional misconduct for an attorney to engage in conduct that is prejudicial to the administration of justice.*

*"See United States District Court for the District of Delaware, Rule 83.6(b)(5)(d).*

*"Then review the American Bar Association's "Model Rules for Professional Conduct" Rule 8.4 (d).*

*"After you have familiarized yourself with those materials please get back to me.*

*"It is my hope that the both of you and your client W.R. Grace & Co. will agree to my reasonable request to extend the deadline for the filing of my opposition to W.R. Grace's pending "Motion for Summary Judgment" from December 16 to December 30, 2020.*

*"Very truly yours,*

*"Gary S. Smolker*
*Cell Phone: 1-310-749-9735*
*Office Phone: 1-818-788-7290"*

Later SMOLKER received an email from GRACE'S attorney Mr. O'Neill stating, *"We will reach out to the Court today to set up a call to discuss this request."*

On Tuesday morning (December 15, 2020) SMOLKER received an email from Judge Chan's Courtroom Deputy informing him that Judge Chan would like to have a brief telephone conference regarding the continuance request today, December 15, 2020 at 3:00 p.m.

Later that day (December 15, 2020), Mr. Smolker received an email from GRACE'S attorney Mr. Higgins that a telephonic hearing before Judge Chan to discuss SMOLKER'S request for an extension to file his opposition to December 30, 2020 would be held at 3:00 pm ET, which is 12:00 pm PT.

Mr. Smolker advised Judge Chan's Courtroom Deputy by email, with a copy of that email to GRACE'S attorneys Higgins and O'Neill, that he would email her

a copy of his correspondence with GRACE'S attorneys and that he was in a time bind:

*"By separate email I will send you and Grace's attorneys a copy of an email I sent to Grace's attorneys last night (December 14) which contains (1) my request for extension, (2) Grace's attorney's reply to my request for extension [Grace's response consists of a refusal to consent to an extension], and (3) my response to Grace's attorney's refusal to agree to the extension requested.*

## *"Federal Rules of Civil Procedure, Rule 56 (d)*

*"I am in a time bind.*

*"Due to Grace's refusal to grant the extension requested, I must finish writing my opposition to Grace's motion for summary judgment, and gather documents that will be exhibits, and photocopy all papers, then mail them to opposing counsel, and I must also deliver my Opposition Papers to Federal Express before 5:45 p.m. this evening.*

*"Federal Rules of Civil Procedure, Rule 56 (d) provides:*

*"**When Facts Are Unavailable to the Nonmovant.**  If a nonmovant by affidavit or declaration shows that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:*
*(1) defer considering the motion or deny it;*
*(2) allow time to obtain affidavits or declarations or to take discovery; or*
*(3) issue any appropriate order."*

At the 3:00 pm ET, 12:00 pm PT, telephonic hearing on SMOLKER'S request for a two week extension of the deadline to file his further opposition to GRACE'S MSJ, from December 16 to December, 30, 2020, Judge Chan extended the deadline for SMOLKER to file his further opposition to GRACE'S SJM from December 16, 2020 to December 30, 2020.

In order to insure expeditious conduct of the court's business and public confidence in the administration of justice and to allow for the preparation of an accurate, clear concise and complete submission of his opposition to GRACE'S

MSJ to assist the court come to the correct decision on GRACE'S pending 750 page SJM it is necessary for GRACE to produce the following documents at the Smolker Law Firm located at 16055 Ventura Blvd., Suite 525, Encino, California at 10:00 a.m. (PST) on January 27, 2021 and to file the same documents with the Office of the Clerk of United States Bankruptcy Court for the District of Delaware, located at 824 Market Street Wilmington, Delaware, on or before January 29, 2020 at 4:00 p.m. (EST).

## DOCUMENTS GRACE IS REQUESTED TO PRODUCE

1.  All records GRACE and Reorganized Debtors have in their possession, custody or control regarding the review of the available books and records of Reorganized Debtors upon which Richard C. Finke stated in his Declaration dated January 30, 2015, that he and the Reorganized Debtors concluded that the Reorganized Debtors have no liability as to any claim of Gary Smolker.  A copy of the Declaration of Richard C. Finke is attached as Exhibit "A" to the "Thirty-Seventh Omnibus Objection to Certain Claims Filed Regarding Prepetition Litigation Captioned <u>TIG INSURANCE COMPANY V. GARY SMOLKER, ET AL.,</u> CASE NO. BC 173952 (LOS ANGELES COUNTY SUP. CT.)(JANAVS, J.)(SUBSTANTIVE OBJECTION)."

2. All non-privileged records GRACE and Reorganized Debtors have in their possession, custody or control specifying and/or relating to the basis of SMOLKER'S claim, Claim No. 392.

3.  A copy of the Joint Defense Agreement between GRACE and Home Saving Termite Control, Inc. entered into shortly after SMOLKER filed his cross-complaint against GRACE and TERMITE in October, 1997.

4.  All correspondence between GRACE and TERMITE from October 1997 when the Joint Defense Agreement was entered into up to and including December 28, 2020 regarding SMOLKER in GRACE'S possession, custody, or control.

5.  All correspondence between GRACE and all other cross-defendants in the <u>TIG Insurance Company v. Gary Smolker, et. al,</u> Case No. BC 173952 filed in the Los Angeles Superior Court regarding SMOLKER'S action against them.

6.  A copy of the February 25, 2015 faxed response from Gary Smolker to GRACE'S Attorney Roger Higgins which Attorney Roger Higgins states in his Declaration dated December 27, 2016 was faxed to him by SMOLKER.

7.  All evidence GRACE has that SMOLKER approved the March 4, 2015 "ORDER LIFTING INJUNCTION IN PREPETITION LITIGATION CAPTIONED, <u>TIG INSURANCE COMPANY V. GARY SMOLKER, ET.AL.</u>, CASE NO. BC 173952 (LOS ANGELES COUNTY SUPERIOR COURT SUP. CT.) (JANAVS, J.)(SUBSTANTIVE OBJECTION)" signed by Honorable Kevin J. Carey, United States Bankruptcy Judge on March 4, 2015.

8.  All evidence GRACE has of what transpired/was discussed in the March 3, 2015 conversation between GRACE'S Attorney Roger J. Higgins and SMOLKER referred to in paragraph number 4 of the Declaration of Roger J. Higgins dated December 27, 2016 filed in the Los Angeles Superior Court in support of GRACE'S motion to dismiss SMOLKER'S action against GRACE

9.  All correspondence between GRACE'S attorneys in Los Angeles Superior Court Case No. BC 173952 regarding GRACE's motion for summary judgment against SMOLKER and GRACE'S motion for summary adjudication of issues filed by GRACE in Los Angeles Superior Court Case No. BC 173952.

10. All evidence GRACE has in its possession, custody or control that GRACE'S attorneys faxed the entire Roger J. Higgins and attachments thereto and "W.R. Grace & Company and Grace Davison's Supplemental Briefing to Motion to Dismiss for Failure to Bring Action to Trail within Five Years, Declaration of Roger J. Higgins, Esq. in Support Thereof; and Declaration of Jeffrey Z. Liu, Esq. in Support Thereof'"  to SMOLKER on or before December 30, 2016.

DATED: December 28, 2020    Gary S. Smolker, in Pro Per


_____

Gary Smolker
16055 Ventura Blvd., Suite 525
Encino, CA. 91436
Email: GSmolker@aol.com