**E<small>XHIBIT</small> A**

**12/13/00 Minute Order**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 12/13/00 | DEPT. 15 |
| HONORABLE RICHARD FRUIN JUDGE | R. ARCONTI DEPUTY CLERK |
| HONORABLE 1 JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| L. BUNDE, C/A Deputy Sheriff | G. LEVINE Reporter |

| 8:30 am | BC173952<br><br>TIG INSURANCE COMPANY<br>VS<br>GARY SMOLKER ET AL<br><br>170.6 - Rothschild 12-19-97<br>Recusal - Lichtman 11-26-97 | Plaintiff Counsel: BRIAN C. PORTER (X)<br>GARY E. YARDUMIAN (X)<br>BRADLEY L. TAYLOR (X)<br>Defendant Counsel: DAVID M. GREY (X)<br>ROBERTA L. MURAWSKI (X)<br><br>GARY SMOLKER (X) |

**NATURE OF PROCEEDINGS:**

MOTION OF CROSS-DEFENDANT AND CROSS-COMPLAINANT PACIFIC VILLAS HOMEOWNERS' ASSOCIATION, FOR SUMMARY JUDGMENT; ALTERNATIVELY, FOR SUMMARY ADJUDICATION;

The matter is called for hearing.

In keeping with the Court's orders of December 5 and 7, 2000, all pending discovery motions, including the motion to compel and motion in limine set this date, and the motion of Pacific Villas Homeowners Association for summary judgment are continued to December 22, 2000, at 8:30 a.m. in this department.

The Court has read and considered all declarations and exhibits filed in support of and in opposition to the remaining motions and has issued its tentative rulings this date. A copy of said tentative rulings shall be attached to this minute order for future reference.

The remaining motions for summary judgment are argued.

The motion of cross-defendant Rikk Thompson for summary judgment is granted, the Court finding no triable issue of fact.

Summary judgment is denied as to the motions of cross-defendants W.R. Grace & Company and Grace Davison, Home Saving Termite Control, and Morris.

Summary adjudication is granted in part on specific

Page 2 of 3    DEPT. 15

MINUTES ENTERED
12/13/00
COUNTY CLERK

000182

<mark>Case 01-01139-AMC    Doc 33209-1    Filed 02/26/21    Page 3 of 13</mark>
<mark>Case 01-01139-AMC    Doc 33177    Filed 01/04/21    Page 23 of 767</mark>

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 12/13/00 | DEPT. 15 |
| HONORABLE RICHARD FRUIN  JUDGE | R. ARCONTI  DEPUTY CLERK |
| HONORABLE 1  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| L. BUNDE, C/A  Deputy Sheriff | G. LEVINE  Reporter |

8:30 am  BC173952

TIG INSURANCE COMPANY
VS
GARY SMOLKER ET AL

170.6 - Rothschild 12-19-97
Recusal - Lichtman 11-26-97

Plaintiff Counsel: BRIAN C. PORTER (X)
GARY E. YARDUMIAN (X)
BRADLEY L. TAYLOR (X)

Defendant Counsel: DAVID M. GREY (X)
ROBERTA L. MURAWSKI (X)

GARY SMOLKER (X)

**NATURE OF PROCEEDINGS:**

causes of action in the motions of cross-defendants W.R. Grace & Company and Grace Davison, Home Saving Termite Control, and Morris as fully set forth in the tentative rulings attached hereto.

Further hearing on the motions of W.R. Grace & Company and Grace Davison, Home Saving Termite Control, and Morris as to the 13th, 14th and 15th causes of action is continued to December 20, 2000, at 8:30 a.m. in this department; no further briefing.

Further hearing on the same motions as to the eighth and ninth causes of action is continued to January 25, 2001, at 8:30 a.m. in this department. Moving parties are to submit supplemental briefs by January 5, 2001; supplemental opposition is to be submitted by January 19, 2001.

Each moving party is to serve and file notice of ruling. Within two days, moving parties are to submit formal orders for the Court's signature and filing on the claims so far dismissed.

Page 3 of 3    DEPT. 15

MINUTES ENTERED
12/13/00
COUNTY CLERK

000183

#1     TENTATIVE RULINGS

TIG INSURANCE COMPANY v. SMOLKER, et al, Case No. BC 173952

8:30 a.m., Wednesday, December 13, 2000

A. RULING ON MOTION OF CROSS-DEFENDANTS GRACE FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION ON CAUSES OF ACTION PLED IN THE SMOLKERS' FIFTH AMENDED CROSS-COMPLAINT;

B. RULING ON MOTION OF CROSS-DEFENDANTS TERMITE CONTROL AND MORRIS FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION ON CAUSES OF ACTION PLED IN THE SMOLKERS' FIFTH AMENDED CROSS-COMPLAINT:

This action arises from Termite Control's application of Syloid 244, a desiccant product containing amorphous silica gel manufactured by Grace, to the Smolkers' condominium under a contract with Pacific Villas Home Owners Association.

Cross-complainants Gary and Alice Smolker plead in their 5th Amended Cross-Complaint the following causes of action against the parties who are moving for summary judgment and/or summary adjudication:

| C/A # | CLAIM | DEFENDANTS |
|---|---|---|
| 8 | Strict Liability | Grace, Termite Control, Morris |
| 9 | Negligence Per Se (7 USC 136(a); F&A 12993, 12995) | Grace |
| 10 | Negligence, Negligence Per Se | Termite Control, Morris, Thompson |
| 13 | Nuisance | Grace, Termite Control, Morris |
| 14 | Trespass | Termite Control, Morris |
| 15 | Assault/Battery | Termite Control, Morris |
| 30 | Fraud | Grace, Termite Control, Morris |
| 31 | Interference | Grace, Termite Control, Morris |

Cross-defendants W.R. Grace & Company and Grace Davison ("Grace") have moved for summary adjudication as to the eighth and ninth causes of action contained in the cross-complaint on the ground that those state court claims are preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA). Cross-defendants Home Termite Control, Inc. ("Termite

00018

Control") and W.F.Morris separately move for summary judgment and/or summary adjudication on the same basis. Grace and Termite Control/Morris have also joined in each other's motion. Grace and Termite Control also argue that any violation of FIFRA does not create in the Smolkers, or any other injured party, a private right of action.

Neither Grace nor Termite Control/Morris pleaded preemption as an affirmative defense nor have sought to amend their answers to plead such affirmative defense. The court shall nonetheless shall decide their preemption arguments, see Kennan v. Dow Chemical 717 F.Supp.799 (M.D.Fla. 1989), but orders each defendants to file an amendment to their answer within 10 days if they wish to preserve their preemption defense.

On the preemption argument, the basic facts--as revealed in a declaration ordered by the court and filed last Friday--are:

1. Syloid 244, the active ingredient, is not and never was registered with the EPA or the California Department of Pesticide (Cal EPA); and

2. Dri-Die Insecticide, said to be chemically identical to Syloid 244, was registered with the EPA at the time Syloid 244 was applied to the Smolkers' residence, but not by Grace or Termite Control because Dri-Die is a product of an unrelated company.

The court's tentative rulings on the motions are:

The court denies summary judgment to Grace. The court grants to Grace summary adjudication on the Smolkers' 13th, 30th and 31st causes of action for, respectively, nuisance, fraud and interference. The court requires further briefing as to the 8th cause of action for strict liability. The premise of Grace's motion--that FIFRA preempts the cause of action--appears inapplicable, but, since Grace has now proffered its label on the product sold to Termite Control the parties should brief whether there is a triable issue as to Smolkers' strict liability claim against Grace. The court also requires further briefing as to the ninth cause of action. There are two questions that require further examination: is Grace in violation of FIFRA for not registering Syloid 244, and, if so, can the Smolkers maintain a private cause of action for their failure to do so. The same questions are presented with respect to the analog state provisions. The court at the hearing will set a briefing schedule for a later ruling on the 8th and 9th causes of action against Grace.

The court denies summary judgment as to Termite Control and Morris. The court grants summary adjudication as to the 30th and 31st claims for, respectively, fraud and interference; denies summary adjudication as to the 8th and 10th claims for, respectively, strict liability and negligence; and sets a separate hearing on December 20, 2000 at 8:30 a.m. for ruling on the 13th, 14th and 15th claims for, respectively, nuisance, trespass and assault and battery. (No further briefing is permitted on the 13th, 14th and 15th causes of action.)

EVIDENCE OFFERED BY THE PARTIES RELATING TO THE FEDERAL PREEMPTION ISSUE:

MPs have offered into evidence certain declarations and exhibits that the declarants have attached and authenticated. The court receives into evidence the following declarations and the exhibits identified and authenticated therein: the revised declaration of Dr. Karim S. Damji dated October 4, 2000 (the Damji decl.) and exhibits 1, 2 and 3; the declaration of Dr. Damji dated November 30, 2000 (the 2nd Damji decl) and exhibits A-H; the declaration of Brian Porter including Exh. G (same as Exh. G to 2nd Damji decl.); the declaration of Dr. Rudolf H. Scheffrahn dated September 8, 2000 (the Scheffrahn decl.) and Exhibits Q and S and the declaration of Dr. Scheffrahn dated October 19, 2000 (the 2nd Scheffrahn decl.).

The court on December 4, 2000 requested Grace to provide the declaration of a Grace employee to answer specific questions. Grace on December 8, 2000 filed the declaration of Julian Convey, Manager of Environmental Services for W.R. Grace & Co. and Grace Davison. The court receives into evidence the Convey declaration and its Exh. AA.

Termite Control and Morris have requested t33he court to take judicial notice of an FDA report identified as "Registration Eligibility Document Silicon Dioxide and Silica Gel, List D, Case 4081." The court has done so. The same document is Exh. C to the 2nd Kamji declaration.

The court receives the Morris declaration for its factual statements regarding the pesticide application to the Smolkers residence and the Termite Control corporate structure and practices, e.g. paras. 1-6, 8, 9, 11-14, 16, 18-20, 23-27, but not for its statements of opinion, e.g. paras. 7, 10, 15, 17, 21 and 22, because no foundation is provided as to Morris' credentials or for materials he relied upon to state such opinions.

The court has not taken into consideration Smolkers' objections to MPs' declarations because the objections were filed after briefing was closed (on Monday of this week).

The court has reviewed the declarations and the referenced exhibits offered by cross-complainants' Smolkers as follows: declaration of Peter J. Novak dated November 6, 2000, declaration of Dr. James S. Smith dated November 6, 2000 and declaration of Ray C. Woodcock dated November 5, 2000. The Smolkers have offered three volumes of exhibits (Exhs. 1-52) including depositions excerpts, public records, letters, etc. The court has read the two declarations of Alice Smolker dated November 6, 2000 and November 8, 2000 (the latter pertaining to the Cunningham deposition) and the declaration of Gary Smolker dated November 29, 2000 (referencing exhibits 39-52 in the Appendix Submitted in Opposition).

The court has not yet ruled on MPs' evidentiary objections against the Novak, Smith and Woodcock expert declarations and to Alice Smolker's declaration.

The court, from those declarations and exhibits, has constructed the following chronology to describe the status of registration of AGS products used as a termite insecticide, and specifically Syloid 244, with the federal Environmental Protection Agency (EPA) and the State of California Department of Pesticide Regulation (Cal EPA), as of the date—October 11, 1996—

3

00018$\varepsilon$

when Termite Control applied Syloid 244 (and Dursban TC) to the Smolkers' residence.

CHRONOLOGY RE REGISTRATION (FEDERAL AND CALIFORNIA) FOR AGS TERMITE INSECTICIDE AND SPECIFICALLY FOR SYLOID 244:

| | |
|---|---|
| 1996 | Products containing amorphous silica gel (ASG) are registered with the U.S. Department of Agriculture and approved as an insecticide and acaracide for use in residential buildings. Damji decl., para. 16; 2nd Damji decl., para. 7; EPA's R.E.D. Facts, p. 2; EPA's Reregistration Eligibility Report, p.6 (Sept. 1991). |
| 1972 & 1988 | FIFRA as enacted in 1972 requires registration. "In 1988, FIFRA was amended to accelerate the reregistration of products with active ingredients registered prior to November 1, 1984. The amended Act provides a schedule for the reregistration process to be completed in nine years." FDA's Reregistration Eligibility Report, Introduction (Sept. 1991). |
| app.1975 | FMC acquires the Dri-Die trade name from Grace. FMC thereafter (date unknown) transfers the Dri-Die trade name to American Fairfield Corporation. Convey decl., para. F. |
| 10/10/79 | Dri-Die Insecticide (containing 95% ASG as the active ingredient) is registered with EPA by Fairfield American Corporation. 2nd Damji decl., para. 8, attaching label approval as Exh. D. [Damji is incorrect in stating Dri-Die was a registered Grace trade name in 1991, 1992 and 1995. See 2nd Damji decl., paras. 9, 11 and 12. Grace transferred the trade name about 1975, according to Convey.] |
| 12/31/87 | Federal Registration for Dri-Die Insecticide 87 (held by Grace) is canceled. Exh. 26, see also Exh. 14. [Dri-Die continued its FDA registration by Fairfield American Corporation. Grace may have canceled the registration because it had transferred the trade name to FMC in about 1975.] |
| 1991 | EPA conducts a re-registration eligibility study, and concludes that the "currently registered uses of silicon dioxide and silicon gel will not result in unreasonable public health risks or effects to the environment. No further generic data are necessary." FDA Reregistration Eligibility Report, Executive Summary. |
| 3/7/91 | Dri-Die Insecticide is reregistered with the EPA, after label revisions, by Fairfield American Corporation. 2nd Damji decl., paras. 9 and 10, attaching approved labels as Exhs. E and F. |
| 7/1/92 | Fairfield American Corporation, a wholly owned subsidiary of Roussel Bio Corporation, merges into Roussel Bio Corporation (later Roussel UCLAF Corporation), which was later acquired by AgrEvo Environmental (now known as |

4

|  |  |
|---|---|
|  | Aventis Environmental Science). Porter decl., attaching EPA approval letter dated 12/11/92 as Exh. G; Convey decl., para. A. |
| 12/11/92 | FDA approves Roussel's assumption of registrations granted to Fairfield American Corporation for Dri-Die Insecticide. 2nd Damji decl., para. 11, attaching the EPA approval letter dated 12/11/92 as Exh. G. |
| 1992 | Grace apparently discontinues manufacturing the product that Fairfield American Corporation sold as Dri-Die. Convey decl., para. F. |
| 1990s | Dri-Die, Dri-Out and Drione are registered with the federal EPA for use as a pest control compound. Scheffrahn decl., para. 10. ASG is sold under the names Dri-Die and Syloid. FDA Reregistration Eligibility Report, p. 2. Dri-Die is chemically identical to Syloid 244, differing only in the percentage of inert ingredients. Damji decl., para. 5. Syloid 244 is the Grace trade name for ASG. Morris decl., para. 14. According to the EPA approved label, Exh. Q: Dri-Die consists of 95% ASG as the active ingredient, and 5% inert ingredient. Parties stipulate that ASG is an active ingredient. |
| 1977-'94 | Dri-Die Insecticide is registered by Agrevo Environmental Health in California under Food & Agri. Code section 12811. The registration number is 4816-240-AA. See, Dept. Of Pesticide Regulation [Cal EPA] Product Data Report for Dri-Die, Exh. 27. |
| 6/14/95- | Dri-Die Insecticide is registered by Agrevo Environmental Health in California as a dust-applied termite insecticide. The registration number is 4816-240-ZB. 2nd Damji decl, paras. 5 and 6, attaching the relevant data report as Exh. A. The registration continues until 12/31/96. |
| 8/6/96 | Patent granted to Morris for new process for application of AGS. Exh. 1. [A new process may require a new approval from Cal EPA. See section 12833.] |
| prior to 10/96 | Termite Control employee Corey Arentz makes oral representations and provides brochure to Alice Smolker. A. Smolker decl., para. 4 and 6. Before application, Morris provided a Fact Sheet and a 5 Year Guarantee to Home Owners Association. These documents are exhibits A, B and C to Morris declaration. |
| 10/11/96 | Pesticide including Syloid 244 using Morris-patented process applied at Smolkers' residence. (The high pressure technique--application of 125 psi through holes drilled in the walls--is not a use specified on the Dri-Die label, see Exhs. 10, 11 and 12.) The label on the containers of Syloid 244 sold by Grace into California (and presumably to Termite Control) advised that unprotected contact with the product would irritate skin, eyes and respiratory tract. Convey decl., attaching Exh. AA. |

5

000188

6/1/99    Dri-Out Insecticide registered by California EPA by Home Savings Termite Control. Exh. E; Morris decl., para. 20. Home Savings applied for the registration on 12/28/98. Exh. 12.

CONCLUSIONS FROM THE EVIDENCE:

1. **Federal Registration**: Grace's Syloid 244 has never been registered with the EPA. There is no FDA-approved label for Syloid 244.

2. Dri-Die Insecticide was registered with the EPA from and after 3/7/91 (and apparently from 10/10/79) as a dust-applied termite insecticide. The court is told that Dri-Die's chemical composition never changed. Convey decl., para. F. The court does not accept that representation because it is stated on information and belief (without stating a factual basis) and therefore lacks foundation. Syloid including Syloid 244 has the same chemical ingredients as Dri-Die. [Smolkers' experts do not dispute that Dri-Die was registered; their expert Novak asserts that Dri-Die's EPA approved label does not include the high pressure application employed by Termite Control. To the extent that Syloid 244 is the same as Dri-Out, it would appear that the warnings that Grace provided on its Syloid 244 label would confirm that the Dri-Die label does not contemplate the application technique used by Termite Control.]

2. **State Registration**: Dri-Die was registered (by Agrevo Environmental Health) with the California EPA at the time when Grace's product Syloid 244 was applied to Smolkers' residence. Syloid 244 was not state-registered.

3. Dri-Out was registered by Home Savings with the California EPA effective June 1, 1999. Schnabel and Duncan assert (in their depo. testimony) that a registration by another seller, or a registration by the applicator after the disputed application, does not comply with California registration scheme.

4. ASG is an active ingredient, so California Food & Agri Code section 12823 applies, that is, a change in the inert component does not require re-registration.

5. EPA registration means that the EPA approves the label, that the product may be sold for the uses specified on the label. New uses should be indicated on a new approved label. Novak decl., paras. QQ-RR. Compare Exh. 10 with Exh. 11, both Dri-Die labels.

AS TO GRACE'S MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION:

The Smolkers do not raise a triable issue of fact and accordingly summary adjudication should be granted in Grace's favor and against the Smolkers on their 13th cause of action for nuisance, on their 30th cause of action for fraud and on their 31st cause of action for interference. The Smolkers neither allege nor raise a factual basis for a claim of nuisance, fraud or interference

6

000189

against Grace.

As to Smolkers's strict liability and negligence claims against Grace, these facts are undisputed.

1. Grace manufactured the Syloid 244 product. Syloid 244 is functionally equivalent to Dri-Die Insecticide; Syloid 244 has the same active and inert ingredients as Dri-Die. [That Grace manufactured Syloid is alleged, see e.g. Fifth Cross-Complaint, para. 104, and admitted by the parties. See also, Morris decl. para. 14.]

2. Grace sold the Syloid 244 that was applied to the Smolkers house to Termite Control. [Morris decl., para. 9.]

3. Termite Control, not Grace, applied the Syloid 244 product to Smolkers's house. [Morris decl., paras. 5 and 7.]

4. The only representations that were given to the Smolkers about Syloid 244, before Termite Control's application, was given to them by Termite Control. [Morris decl, paras. 12 and 13; Alice Smolkers decl., para. 4.] The written representations that Termite Control provided to the Smolkers, before the application, are Exhibits A, B and C to the Morris declaration.

5. Grace made no representations to the Smolkers about the Syloid 244 product.[Alice Smolkers decl.]

6. Syloid 244 is not and never was registered with the EPA. The Dri-Die Insecticide label was registered with the EPA.

7. Syloid 244 is not and never was registered with the California EPA. The Dri-Die Insecticide was registered with the California EPA.

Grace's argument that such the strict liability claims are preempted by FIFRA doesn't succeed because Syloid 244 was not registered with the EPA and therefore FIFRA's section 136v(b) [prohibiting "any requirements" for a pesticide labeling which are "in addition to or different from" those imposed by the EPA] is not triggered. It is unclear to the court whether, as Grace and Termite Control argue, EPA registration of Syloid 244 was not FIFRA-required because a similar product (described a "chemically identical") named Dri-Die was EPA-registered. Under that argument at least these questions remain before the preemption argument can be decided: is Syloid 244 identical in performance to Dri-Die; if so, does that mean that Syloid 244 is exempted from obtaining EPA registration (and also state registration); and, assuming so, was the application of Syloid 244 (high pressure injection in wall spaces) within the approved uses specified on Dri-Die's label.

The court rejects Grace's argument that, if Grace was required to register Syloid 244 with

7

the EPA, Grace nonetheless is not liable on any failure to warn claim for failing to do so, under authority of Kennan v. Dow Chemical 717 F.Supp.799 (M.D.Fla. 1989). In Kennan chemical company defendants prevailed on motions for summary judgment on the ground that EPA registration preempted strict liability wrongful death claims, even though the decedent was exposed to the PCP product both before the time it was required to be registered and after that time. The passage that Grace relies upon however relates to the evidentiary showing that the EPA had approved the actual chemical product label. The passage has this context:

> "Plaintiff argues that the defendants have not established that the EPA approved their labels....Plaintiff specifically objects to the defendants introduction of the affidavits of individuals who do not have personal knowledge of whether or not the EPA approved of defendants' labels. [] The Court disagrees with plaintiff's implicit assumption that the preemption defense requires a showing that the EPA actually approved of defendants' labels. At most, such a showing would establish that the defendants violated federal regulations concerning labeling." (Id. at 809.)

The quoted portion indicates that the defendants in Kennan presented labels that their affiants said the EPA had approved, and the court rejected the plaintiff's objections that the affiants had not actually shown EPA approval. Because it was conceded that EPA registration was required, and labels supposedly approved by the EPA had been presented, proof of the specific action by the EPA was not necessary to the preemption argument.

Grace has not shown, and apparently cannot show, that label-based claims are preempted by EPA registration. Grace has not presented authority that if a product falls within the FIFRA scheme, state based claims are preempted even if the product has not been submitted for registration. Grace, however, has presented, without dispute, the label that was on the containers it sold to Termite Control. The court shall order briefing on the issue of whether Grace is subject to strict liability if the Smolkers' factual claim is limited, as it seems to be, to the assertion that the label is inadequate.

Grace's argument against Smolkers' negligence per se claim is that FIFRA and the analog state provisions (California Food & Agriculture sections 12811, 12993) do not provide a private right of action. The Smolkers in their negligence per se cause of action allege violations of FIFRA and state statutes but they also incorporate the failure to warn and negligent manufacturing allegations from the eighth cause of action. See, 5th Amended Cross-Complaint, ninth cause of action, paras. 103-04. Grace appears to not have complied with FIFRA in the sale of Syloid 244 to Termite Control, but there is no testimony or other evidence that compliance was required, and, if it was, it is unclear whether noncompliance would support a private right of action absent proof of actual negligence, i.e. proof sufficient to raise a triable issue on the eighth cause of action. The court will require further briefing on this issue.

**AS TO MOTION MOTIONS BY TERMITE CONTROL AND MORRIS FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION:**

8

000191

Termite Control's and Morris' brief violate the 20 page limit. CRC 3139(d). They also violate CRC 342(b)by failing to repeat verbatim in their Separate Statement the specific causes of action listed in the Notice.

Summary adjudication is granted against the 30th and 31st causes of action, as there are no facts that are pled to state causes of action for fraud or interference.

On the Smolkers' 8th and 10th causes of action, the court denies summary adjudication as there are issues of fact. As to these causes of action, the positions of Grace and Termite Control are very different. Grace provided the product to Termite Control with a label containing a health warning against its use in a manner that would expose person to breathing the product or making skin contact with the product. The Woodcock declaration states, in essence, that Termite's Control's method of application of the Syloid 244 product would or could cause aspiration or other contact with the desiccant.

The court, in light of Grace's label warning, cannot find that there is no triable issue as to whether unprotected contact with Syloid 244 caused human injury.

The preemption argument, as to the strict liability claim (the 8th cause of action) against Termite Control, is undermined if not entirely demolished. EPA registration is not the issue; if the product was registered, there is still the issue of whether the use that Termite Control made of the product is a use permitted by the EPA's approval of the label. How can Termite Control, or Grace for that matter, argue that the EPA has determined that Syloid 244, or a closely similar product, is safe for an application that arguably exposes homeowners to unprotected contact with the product when Grace's own label for Syloid 244 warns against unprotected exposure to Syloid 244? There are questions of fact as to whether Termite's Control method of application exposed the Smolkers to unprotected contact with the product; and, if so, whether the product caused or could cause injury.

As to the negligence and negligence per se claims (the 10th cause of action) against Termite Control, the Smolkers identify as statutory violations 7 U.S.C. 136(a), California Food & Agriculture sections 12993 and 12995 and, in their interrogatory responses though not in the 5th Amended Cross-Complaint, Bus. & Prof. Code sections 8538, 8516 and 8648. The issue of no private right of action is appropriately addressed only after it is determined whether Syloid 244 was required to be registered. This was not briefed because the assumption of the MPs' papers was that Syloid 244, or a chemically identical product, was registered by Grace under the name Dri-Die. The court will inquire whether Termite Control wishes to brief this issue.

A ruling on Termite Control's motion as to the 13th, 14th and 15th causes of action is deferred to December 20, 2000 because the court wants to consider the motion in isolation as to these claims against Termite Control.

Morris appears to have presented authorities that he is not personally liable for Termite

9

000192

Control's actions on an alter ego theory. So far as the court can determine, Morris presented no evidence to support his argument. His declaration doesn't say anything about Termite Control's maintenance of a separate corporate identity. Morris summary judgment motion therefore is denied.

A. RULING ON MOTION OF CROSS-DEFENDANT RIKK THOMPSON FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION ON CAUSES OF ACTION PLED IN THE SMOLKERS' FIFTH AMENDED CROSS-COMPLAINT:

The motion is granted. The court dismisses the 5th amended cross-complaint as to Rikk Thompson.

Thompson is charged only in the tenth cause of action, which alleges that certain persons were negligent in the application or in making pre-application representations concerning Syloid 244. Thompson was not involved in the application. His first contact with the Smolkers was four months after the application. The Smolkers assert that when he visited the premises in January, 1997 that Thompson made representations that Syloid 244 was visible to the naked eye and was safe. The first representations appears to be true, see Woodcock decl., and the second even if untrue occurred months after the application occurred and caused no injury to the Smolkers. The court receives into evidence the Thompson declaration.

\* \* \*

MPs are to serve notices of ruling. MPs are to provide within two days appropriate orders on the claims that are dismissed. This TR shall be attached to the minute order for future reference.

**COPY OF TR SENT VIA FAX TO MPs10 AND RP ON 12/11/00 A.M.**

10

000193