FILED

2021 MAR 29 AM 11: 56

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

March 26, 2021

VIA FEDERAL EXPRESS OVERNIGHT MAIL

Clerk's Office
United States Bankruptcy Court for District of Delaware
824 Market Street, 3rd Floor
Wilmington, Delaware 19801

In Re W.R. Grace & Co., Chapter 11 Bankruptcy Case No. 01-01139 (AMC)

Dear Clerk,

Attached are my "Notice of Appeal and Statement of Election", an "Affidavit of Service" and my appeal filing fee check in the amount of $298.00 payable to Clerk, United States Bankruptcy Court.

Also attached is an extra copy of the face sheet of my "Notice of Appeal, and an extra copy of the face sheet of my "Affidavit of Service" and a preaddressed postage prepaid envelope.

Please conform a copy of the face sheets showing date of filing and return the conformed face sheets to me in that attached envelope.

Also, please return a receipt for my payment of filing fee for appeal in the amount of $298.00.

Thank you.

Very truly yours,

Gary Smolker
Email: GSmolker@aol.com
Cell Phone: 1-310-749-9735
Office Phone: 1-818-788-7290

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| | ) | Case Number:  01-01139 (AMC) |
| W. R. GRACE & CO., | ) | |
| | ) | CREDITOR GARY S. SMOLKER'S NOTICE OF |
| | ) | APPEAL AND STATEMENT OF ELECTION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

In re                                    )        Chapter 11
                                         )
                                         )        Case Number:  01-01139 (AMC)
                                         )
W. R. GRACE & CO.,                       )        AFFIDAVIT OF SERVICE
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )
_____  )

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

FILED
2021 MAR 29 AM 11: 56
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| | ) | Case Number: 01-01139 (AMC) |
| W. R. GRACE & CO., | ) | |
| | ) | CREDITOR GARY S. SMOLKER'S NOTICE OF |
| | ) | APPEAL AND STATEMENT OF ELECTION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Official Form 417A (12/18)

*[Caption as in Form 416A, 416B, or 416D, as appropriate]*

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):
   Gary S. Smolker

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☐ Debtor
   ☑ Creditor
   ☐ Trustee
   ☐ Other (describe) _____

### Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: Order Granting Summary Judgment Disallowing Claim #392

2. State the date on which the judgment, order, or decree was entered: March 16, 2021

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: W.R. Grace & Co          Attorney: Roger Higgins, Esq.
                                              Law Offices of Roger Higgins, LLC
                                              516 North Ogden Avenue - Suite 136
                                              Chicago, Illinois 60642  T: 312-480-1984

2. Party: W.R. Grace & Co          Attorney: James O'Neill, Esq. & Laura Davis Jones, Esq.
                                              Pachulski Stang, Ziehl & Jones, LLP
                                              919 North Market Street - 17th Floor
                                              Wilmington, Delaware 19899  T 302-652-4100

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

*Gary S. Smolker*

Date: March 26, 2021

Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

Gary S. Smolker

16055 Ventura Boulevard - Suite 525

Encino, California 91436   T: 818-788-7290 Mobile: 310-749-9735

gsmolker@aol.com

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# ATTACHMENT

## March 16, 2021 ORDER (Docket #33217)
## being appealed from

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Case No. 01-01139-AMC** |
| | : | **(Jointly Administered)** |
| **W.R. Grace & Co., et al.,** | : | |
| | : | **Chapter 11** |
| | : | |
| **Reorganized Debtor** | : | |

### ORDER

AND NOW, this 16th day of March, 2021, for the reasons given in the accompanying opinion,[1] it is hereby ORDERED that:

1. The Summary Judgment Motion is granted in its entirety;

2. Claim 387, filed by Termite Control, Claim 392, filed by Gary Smolker, and Claim 4070, filed by Wayne Morris, are disallowed in all respects;

3. The Reorganized Debtor is authorized to take all actions that may be necessary, including but not limited to, directing Rust Consulting, Inc., their claims agent, to update the claims register to reflect the disallowance of Claims 387, 392, and 4070;

4. Notice of the Summary Judgment Motion as provided therein shall be deemed good and sufficient notice of such motion; AND

5. The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this order and the disallowance of the Claims.

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[1] All terms referenced herein are given the same meaning as in the accompany opinion unless otherwise noted.

**ATTACHMENT**

**OPINION (Docket #33216)**
**Accompanying March 16, 2021 ORDER (Docket #33217)**
**being appealed from**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | **Case No. 01-01139-AMC** |
|  | : | **(Jointly Administered)** |
| **W.R. Grace & Co., et al.,** | : |  |
|  | : | **Chapter 11** |
|  | : |  |
| **Reorganized Debtor** | : |  |

Ashely M. Chan, United States Bankruptcy Judge

### OPINION

### I.    INTRODUCTION

The reorganized debtor in this matter, W.R. Grace & Co. ("Grace"), objects to proofs of claim filed by Gary Smolker ("Mr. Smolker"), Home Saving Termite Control, Inc. ("Termite Control"), and Wayne Morris ("Mr. Morris"), the owner of Termite Control (collectively, "Claims"), which are based upon prepetition litigation in *TIG Insurance Company v. Gary Smolker, et al.,* Case No. BC 173952 (Los Angeles County Sup. Ct.) ("California State Court Litigation"). After the Bankruptcy Court entered an order lifting the permanent injunction in Grace's reorganization plan to permit the California State Court Litigation to proceed to judgment, Mr. Smolker's causes of action against Grace in that litigation were all dismissed with prejudice in January 2017 based on Mr. Smolker's failure to bring them to trial within five years. Similarly, Mr. Smolker's causes of action against Termite Control and Mr. Morris were all dismissed in November 2017 for failure to timely bring the causes of action to trial under California law.

Accordingly, Grace now moves for summary judgment on its objection to the Claims. Specifically, Grace objects to Mr. Smolker's claim on the basis that it is unenforceable under California law due to Grace's dismissal from the California State Court Litigation and the

1

prepetition expiration of the statutes of limitations on the causes of action against it in that litigation. Similarly, Grace objects to the indemnity claims filed by Termite Control and Mr. Morris on the basis that Mr. Smolker's claims against them in the California State Court Litigation are unenforceable due to the dismissal of those claims and prepetition expiration of the statutes of limitations on those claims.

Mr. Smolker, representing himself *pro se*, in addition to objecting to the disallowance of his claim, seeks additional time pursuant to Federal Rules of Civil Procedure 6 and 56(d) to file a supplemental response in opposition to Grace's summary judgment motion and to conduct discovery. Neither Termite Control nor Mr. Morris has responded to Grace's motion for summary judgment.

With regard to Mr. Smolker's extension request, in light of the multiple extensions Mr. Smolker has already received and his failure to demonstrate that his inability to file a complete response was attributable to excusable neglect, neither Federal Rule of Civil Procedure 6 nor its bankruptcy equivalent, Federal Rule of Bankruptcy Procedure 9006, entitles Mr. Smolker to more time to respond. Furthermore, Federal Rule of Civil Procedure 56(d) does not entitle Mr. Smolker to conduct discovery because he has failed to demonstrate how discovery would create a genuine issue of material fact.

With regard to Grace's summary judgment motion, there is no genuine dispute that the causes of action against Grace in the California State Court Litigation forming the basis for Mr. Smolker's claim in this bankruptcy were dismissed and that the statutes of limitations on those causes of action expired prepetition. Accordingly, Mr. Smolker's claim against Grace is unenforceable under applicable California law. Therefore, 11 U.S.C. § 502(b)(1) and § 558

require the disallowance of Mr. Smolker's claim and entitle Grace to judgment as a matter of law.

Similarly, there is no genuine dispute that Mr. Smolker's causes of action against Termite Control and Mr. Morris in the California State Court Litigation are unenforceable under California law due to their dismissal, the prepetition expiration of the statutes of limitations on most of those causes of action, and mootness of the others. As such, there is no basis for concluding that Grace would have any liability towards Termite Control and Mr. Morris stemming from the California State Court Litigation. Therefore, 11 U.S.C. § 502(b)(1) and § 558 require the disallowance of their claims as well, and Grace is entitled to judgment as a matter of law.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

By way of background, in 1996, Mr. Smolker owned a unit in a six-unit condominium complex ("Complex") located in Playa del Rey, California. Grace Ex. C-2 ¶¶ 1, 6 ("First Am. Cross Compl."); Smolker Jan. Decl. p. 1. On or around October 10 or 11, 1996, after being retained by the homeowners' association for the Complex, Pacific Villas Homeowners Association ("Pacific Villas"), Termite Control treated the common areas of the Complex for termite infestation using an amorphous silica gel known as "syloid 244" ("Syloid"), allegedly manufactured and sold to Termite Control by Grace. First Am. Cross Compl. ¶ 3(b); Grace Ex. C-4 ¶¶ 18, 19, 69, 93, 99, 101 ("Fifth Am. Cross Compl."); Smolker Jan. Decl. p. 2. Mr. Smolker alleges that in the process of treating the Complex for termite infestation, his individual unit was contaminated with Syloid. Fifth Am. Cross Compl. ¶ 74.

In December 1996, Termite Control allegedly sent crews back to the Complex to clean Mr. Smolker's unit "after [Mr. Smolker] began to experience physical injuries and health

3

problems as a result of the pesticide contamination in the Smolkers' home." First Am. Cross
Compl. ¶ 20. *See also* Fifth Am. Cross Compl. ¶ 78. Subsequently, in January and February
1997, Mr. Smolker continued to complain to Termite Control and Mr. Morris about Termite
Control introducing poisonous, toxic substances into the Smolkers' home, demanding that
Termite Control remedy the problem and provide him with information on potential health
effects from the pesticides applied in the Complex. Fifth Am. Cross Compl. ¶ 78.

> Mr. Smolker also alleges that in March 1997, he first
>
> notified Grace and Grace Davison that his home had been contaminated with Syloid 244,
> that Syloid 244 was in the walls [sic] cavities surrounding his home, that he was suffering
> adverse health effects from exposure to Syloid 244 and asked for information concerning
> the health effects and toxicological properties of Syloid 244, use restrictions on use of
> Syloid 244 as a pesticide, or otherwise, [and] whether the Smolkers were being exposed
> to danger under these circumstances.!. Fifth Am. Cross Compl. ¶ 79. *See also* First Am.
> Cross Compl. ¶ 20.

In March 1997, Mr. Smolker made a claim against TIG Insurance Company ("TIG") for
alleged damage to his unit associated with the October 1996 termite extermination. First Am.
Cross Compl. ¶ 60; Fifth Am. Cross Compl. ¶ 91. Thereafter, on July 2, 1997, TIG filed a
declaratory relief action in the Superior Court of California for the County of Los Angeles
("Superior Court") in connection with its denial of coverage for Mr. Smolker's claim concerning
his unit. Lewis Decl. ¶ 10; First Am. Cross Compl. ¶ 63; Grace Ex. C-1 ("Superior Court
Docket").

Subsequently, on October 10, 1997, Mr. Smolker filed a cross complaint against, in
relevant part, Grace, Termite Control, and Mr. Morris. Lewis Decl. ¶ 10; Grace Ex. C-14 ("2020
Cal. App. Op.") at *2; Superior Court Docket. On November 4, 1997, Mr. Smolker served on at
least some cross-defendants an amended cross complaint ("First Amended Cross Complaint").
*See generally* First Am. Cross Compl. In the First Amended Cross Complaint, Mr. Smolker

asserted causes of action against Grace for fraudulent concealment, negligence/violation of statutory duties, strict liability for a defective product, willful misconduct, and abatement of nuisance, alleging that Grace's conduct in failing to exercise reasonable care in manufacturing and selling Syloid, an unregistered, defective, and hazardous pesticide unsafe for intended and foreseeable uses, to Termite Control for use in the Complex's termite extermination in violation of state and federal law[1] and without warning of the defects injured Mr. Smolker's health, caused mental pain and suffering, damaged his property, resulted in Mr. Smolker incurring medical expenses and expenses to remove and replace contaminated property, and compromised his earnings and earning capacity. First Am. Cross Compl. ¶¶ 3, 4, 16, 17, 23, 24, 26, 28, 35, 36, 37, 38, 42, 44, 47, 49, 53, 54, 56.

Additionally, Mr. Smolker asserted causes of action against Termite Control and Mr. Morris for fraudulent concealment, negligence/violation of statutory duties, willful misconduct, and abatement of nuisance, alleging that Termite Control's illegal application of Syloid in an unsafe manner without exercising reasonable care violated various state and federal laws and contaminated Mr. Smolker's unit with Syloid without clear written notice or his consent, injuring his and his family's health, damaging their property, causing them mental pain and suffering, denying them peaceful use of their property, compromising their earnings and earning capacity, and causing them to incur medical expenses and expenses to remove and replace contaminated property. First Am. Cross Compl. ¶¶ 3, 4, 10, 16, 17, 18, 23, 24, 26, 28, 51, 52, 53, 54, 56. Furthermore, in connection with his claims against Termite Control and Mr. Morris, Mr. Smolker alleged that Termite Control wrongfully held itself out as a general building contractor,

---

[1] Specifically, California's Food & Agriculture Code § 12993 and 7 U.S.C. § 136(a).

misrepresented that Syloid was safe and approved by the Environmental Protection Agency, and abandoned its work to remedy the damage to his unit caused by Syloid. *Id.* at ¶¶ 3, 20.

On August 13, 1999, after several rounds of demurrers, Mr. Smolker filed his fifth amended cross complaint alleging thirty-one causes of action against almost thirty named parties, including causes of action for negligence, fraud, strict liability, abatement of nuisance, and interference against Grace ("Fifth Amended Cross Complaint"). Lewis Decl. ¶ 12. *See generally* Fifth Am. Cross Compl. In support of the strict liability cause of action, Mr. Smolker alleged that Grace manufactured and delivered unregistered Syloid, a toxic, defective product which is unsafe for intended or reasonably foreseeable uses, to Termite Control for use in the Complex's termite extermination without warning of the defects. Fifth Am. Cross Compl. ¶¶ 95, 96, 97, 98, 99, 100, 101. Mr. Smolker further alleged that as a result of Grace's distribution of Syloid to Termite Control, Mr. Smolker and his family sustained injuries to their property, their business, their earning capacity, and their health, as well as experienced mental pain and suffering, causing Mr. Smolker to seek "general and special damage" in connection with that cause of action. *Id.* at ¶102.

In connection with the cause of action for negligence, Mr. Smolker alleged that it was negligent per se for Grace to manufacture, sell, and deliver Syloid, an inherently unsafe product, to Termite Control for use as a pesticide in the Complex's termite extermination in violation of state and federal law,[2] and that Grace had failed to exercise reasonable care to prevent Mr. Smolker's unit from being contaminated with Syloid. Fifth Am. Cross Compl. ¶¶ 66, 104. Ultimately, Mr. Smolker sought the same damages in connection with his negligence claim against Grace as in connection with his strict liability claim against Grace. *Id.* at ¶¶ 103, 104.

---

[2] Specifically, sections 12993 and 12995 of California's Food and Agriculture Code and 7 U.S.C. § 136(a).

As for Termite Control and Mr. Morris, the Fifth Amended Cross Complaint included causes of action against both of them for strict liability, negligence, abatement of nuisance, trespass, fraud, interference, and assault and battery. Fifth Am. Cross Compl. p. 44, 49, 52, 53, 54, 68. In connection with the strict liability cause of action, Mr. Smolker alleged that Termite Control released Syloid into the Complex and his unit despite the fact that the product was not safe for any intended or reasonably foreseeable uses. *Id.* at ¶¶ 95, 97, 98, 99, 101. In connection with the negligence cause of action, Mr. Smolker alleged that it was negligent per se for (1) Termite Control to apply Syloid in the Complex and Mr. Smolker's unit without his consent or clear written notice, and without exercising reasonable care to prevent contamination of Mr. Smolker's individual unit; (2) for Termite Control to abandon remedying damage caused by Syloid in Mr. Smolker's unit; (3) for Termite Control to pose as a general contractor using Mr. Morris's license; and (4) for Mr. Morris to misrepresent that Syloid had been approved for use as a pesticide by the Environmental Protection Agency. *Id.* at ¶¶ 66, 67, 74, 106.

In connection with the abatement of nuisance cause of action, Mr. Smolker alleged that the continuing nuisance caused by Termite Control applying pesticides in the Complex posed a health hazard which needed to be abated. *Id.* at ¶ 112. In connection with the trespass and assault and battery causes of action, Mr. Smolker alleged that Termite Control and Mr. Morris caused toxic poisons to be deposited into his property and body without his consent. *Id.* at ¶¶ 114, 115. Ultimately, Mr. Smolker complained of essentially the same damages as those referenced in the First Amended Cross Complaint. *Compare* First Am. Cross Compl. ¶¶ 23, 24, 28, 54, 56 *to* Fifth Am. Cross Compl. ¶¶ 93, 94, 102, 105, 112.

On November 4, 1999, the Superior Court, in relevant part, dismissed the cause of action for interference with contract or economic relationship against Grace ("Demurrer Order"). Lewis

7

Decl. ¶ 12; Grace Ex. C-6 p. 16 ("Demurrer Order"). On December 13, 2000, the Superior Court

issued a ruling granting Grace's motion for summary adjudication on the causes of action for

nuisance, fraud, and interference. Smolker Jan. Resp. Ex. 2.[3] The same day, the Superior Court

issued a ruling granting Termite Control and Mr. Morris's motion for summary adjudication on

the causes of action for fraud and interference.[4] *Id.*

On April 2, 2001 ("Petition Date"), Grace filed a petition for relief under Chapter 11 of

the Bankruptcy Code in the District of Delaware ("Bankruptcy Court"). Case No. 01-01139 ECF

No. ("ECF") 1. On April 5, 2001, Grace filed a notice of the automatic bankruptcy stay in the

Superior Court. Superior Court Docket. On August 6, 2001, Termite Control filed proof of claim

number 387 ("Claim 387") wherein it described the basis of the claim as an "indemnity claim."

Thirty-Seventh Omnibus Claim Obj. Ex. E Proof of Claim 387. The proof of claim indicated that

notices should be sent to "Prindle, Decker & Amaro, 310 Golden Shore, 4th Floor, Long Beach,

California 90802." *Id.* An attached statement of reasons in support of Claim 387 explained that

Grace's potential liability to Termite Control arises from the California State Court Litigation

and that Termite Control and Mr. Morris "have the potential to file a cross complaint against

Debtor for indemnity to recover any monies [they] are forced to pay if a trier of fact [in the

California State Court Litigation] finds the Smolkers sustained personal injuries as a result of a

defective product manufactured and supplied by Debtor." *Id.*

On August 27, 2001, Mr. Smolker filed proof of claim number 392 ("Claim 392") in

which he identified the date the debt was incurred as October 11, 1996. Thirty-Seventh Omnibus

---

[3] This exhibit reflects the tentative ruling of the Superior Court. No party to this proceeding disputes the ruling became final.

[4] The Superior Court denied Termite Control and Mr. Morris's motion for summary adjudication for strict liability and negligence, and set a separate hearing for December 20, 2000 to rule on their motion with regard to nuisance, trespass, and assault and battery. Smolker Jan. Resp. Ex. 2. There is no evidence demonstrating that the Superior Court granted their motion with respect to nuisance, trespass, and assault and battery.

Claim Obj. Ex. D Proof of Claim No. 392. In the section of the proof of claim labeled "account or other number by which creditor identifies debtor," Mr. Smolker listed the caption and case number of the California State Court Litigation. *Id.* In the section of the proof of claim labeled "basis for claim," Mr. Smolker selected "personal injury/wrongful death" and "other" wherein he described "other" as "property damage." *Id.* Finally, he described the amount of the claim as "unliquidated claim in excess of $3,500,000." *Id.*

Meanwhile, in the California State Court Litigation, a trial on the cross complaints against Termite Control and Mr. Morris began on December 3, 2001 ("State Court Trial"). 2020 Cal. App. Op. at *4. On December 11, 2001, the Superior Court declared a mistrial. *Id.* Shortly thereafter, in January 2002, the Bankruptcy Court denied Mr. Smolker's motion for relief from the automatic stay to further proceed with the California State Court Litigation. Case No. 01-01139 ECF 893, 1633. Shortly thereafter, on February 22, 2002, the Superior Court ordered the California State Court Litigation stayed pending the outcome of Grace's bankruptcy proceedings. Smolker Jan. Resp. Ex. 3. Also, according to Mr. Smolker, in February 2002 he "permanently moved out of his condominium unit." Smolker Aug. Resp. p. 6.

On March 18, 2003, Mr. Morris filed his own proof of claim number 4070 ("Claim 4070") based upon an "indemnity claim." Thirty-Seventh Omnibus Claim Objection Ex. F Proof of Claim 4070. The proof of claim stated that notices should be sent to "Prindle, Decker & Amarro, c/o Gary E. Yardumian, 310 Golden Shore, 4th Floor, Long Beach, CA 90802." *Id.* In a declaration attached to the proof of claim, the attorney primarily responsible for handling the California State Court Litigation on behalf of Termite Control and Mr. Morris explained that the proof of claim was filed in connection with the California State Court Litigation to preserve Mr. Morris's right to indemnity. *Id.*

9

On February 3, 2014, Grace consummated its reorganization plan ("Plan"). Case No. 01-01139 ECF 31700. On January 30, 2015, Grace filed an omnibus objection to the Claims seeking the entry of an order permitting the California State Court Litigation to proceed to judgment ("Omnibus Objection").[5] *Id.* at ECF 32497. Neither Termite Control nor Mr. Morris responded to the Omnibus Objection. On February 27, 2015, Mr. Smolker filed his response stating that "I too [sic] would like, and request, the Court to enter an Order permitting the California State Court Litigation…to proceed to judgment." *Id.* at ECF 32510 Smolker Obj. Resp. p. 2. On March 4, 2015, the Bankruptcy Court entered an "Order Lifting Injunction in Prepetition Litigation Captioned, <u>TIG Insurance Company v. Gary Smolker et al.,</u> Case No. BC 173952 (Los Angeles County Sup. Ct.) (Janavs, J.) (Substantive Objection)" ("Lift Injunction Order") in order to permit the California State Court Litigation to proceed to judgment. Case No. 01-01139 ECF 32518.

In November 2016, Grace filed a motion with the Superior Court seeking dismissal of the causes of action against Grace in the California State Court Litigation based upon section 583.310 of the California Code of Civil Procedure for failing to bring the causes of action against Grace to trial within five years. 2020 Cal. App. Op. at *5; Lewis Decl. ¶ 17. On January 17, 2017, after determining that Mr. Smolker had been served with the Lift Injunction Order, the Superior Court dismissed Mr. Smolker's remaining Fifth Amended Cross Complaint causes of action against Grace with prejudice ("Grace Dismissal Order"). 2020 Cal. App. Op. at *5, 8 n.7; Grace Ex. C-7 ("Grace Dismissal Order"); Superior Court Docket. Mr. Smolker subsequently

---

[5] Footnote 4 of Grace's motion for summary judgment states "[c]opies of the proofs of claim are exhibits to the Claims Objection." Accordingly, the Court knew where on its own docket to locate copies of the Claims to evaluate Grace's motion for summary judgment. *See Davis v. Bank of America, N.A., (In re Davis)*, 597 B.R. 770, 773 Bankr. M.D. Pa. 2019) (Courts may take judicial notice of their own records and docket entries.).

appealed the Grace Dismissal Order. 2020 Cal. App. Op. at *5; Lewis Decl. ¶ 17; Grace Ex. C-9

("Grace Appellate Docket").

On April 6, 2017, Mr. Smolker filed a motion in the Superior Court to set a trial date for

the cross complaints against Termite Control and Mr. Morris. Lewis Decl. ¶ 18; 2020 Cal. App.

Op. at *5-6; Superior Court Docket. However, on November 17, 2017, the Superior Court

entered an order granting Termite Control and Mr. Morris's motion to dismiss Mr. Smolker's

causes of action against them based upon Cal. Code Civ. Pro. § 583.420(a)(3)(A) for Mr.

Smolker's failure to bring those causes of action to trial within two years after the mistrial was

declared ("Termite/Morris Dismissal Order"). Lewis Decl. ¶ 18; 2020 Cal. App. Op. at *6;

Superior Court Docket; Grace Ex. C-8 ("Termite/Morris Dismissal Order"). Mr. Smolker

appealed that order as well, and his appeal was consolidated with his appeal of the Grace

Dismissal Order. Lewis Decl. ¶ 18; 2020 Cal. App. Op. at *6; Grace Appellate Docket; Grace

Ex. C-12 ("Termite/Morris Appellate Docket").

On January 22, 2020, the California Appellate Court issued an opinion affirming the

Superior Court's dismissal of the causes of action against Grace, Termite Control, and Mr.

Morris in the California State Court Litigation ("Appellate Court Opinion").[6] 2020 Cal. App. Op.

---

[6] In its opinion, the California Appellate Court stated that in January 2002, the Bankruptcy Court had issued an order enjoining prosecution of the California State Court Litigation and, as a result, on February 22, 2002, the Superior Court ordered the California State Court Litigation stayed pending the outcome of Grace's bankruptcy proceedings. 2020 Cal. App. Op. at *4. In affirming the Superior Court's dismissal orders, the California Appellate Court rejected Mr. Smolker's contention that "while the bankruptcy court may have lifted its stay of the state court litigation in 2015, the 2002 state court order staying the litigation remained in effect and prevented him from prosecuting his cross-complaints." *Id.* at *7-8. Instead, the California Appellate Court concluded that:

> Smolker is estopped from arguing that the 2002 state court stay requires reversal of the judgments. The trial court's 2002 stay order was entered in response to the bankruptcy court's order staying the litigation. The bankruptcy court's 2015 order that the state court proceedings could resume, therefore, removed any external barrier to the litigation proceeding in the trial court. Once the federal stay was lifted, the trial court had the power to resume the litigation, and Smolker regained the ability to prosecute his cross-complaints: All he had to do was notify the trial court that the bankruptcy court had lifted its stay on the state court proceedings so that the trial court could lift its own stay. In fact, Smolker was required to do so... *Id.* at *8.

at *2. On March 3, 2020, Mr. Smolker filed a petition with the California Supreme Court for review of the California Appellate Court's opinion affirming the Grace Dismissal Order and Termite/Morris Dismissal Order. Lewis Declaration at ¶ 20; Grace Ex. C-15 ("Smolker S. Ct. Petition"); Grace Appellate Docket; Termite/Morris Appellate Docket; Grace Ex. C-16 ("Supreme Court Docket"). The California Supreme Court ultimately denied Mr. Smolker's petition for review. Lewis Declaration ¶ 22; Supreme Court Docket; Grace Appellate Docket; Termite/Morris Appellate Docket. On March 26, 2020, the clerk of the California Appellate Court issued a remittitur in connection with the appeal of the Appellate Court Opinion affirming the Termite/Morris Dismissal Order. Termite/Morris Appellate Docket. On May 4, 2020, the clerk of the California Appellate Court issued a remittitur certifying the finality of the Appellate Court Opinion affirming the Grace Dismissal Order. Lewis Declaration at ¶ 22; Grace Ex. C-17 ("Remittitur"); Grace Appellate Docket.

On August 3, 2020, Grace filed the instant motion for summary judgment ("Summary Judgment Motion") in connection with its Omnibus Objection to the Claims.[7] Case No. 01-01139 ECF 33154. The same day, counsel for Grace served the Summary Judgment Motion and notice of the August 17, 2020 response date on Mr. Smolker by email and United States First Class Mail. Case No. 01-01139 ECF 33154 Cert. of Service. Grace also served Termite Control and Mr. Morris (1) by United States First Class Mail and email to counsel for Termite Control and

---

[7] Mr. Smolker mentioned in an email to the Bankruptcy Court that Grace failed to file an amended claim objection, implying that Grace should have filed an amended claim objection instead of a motion for summary judgment on the Omnibus Objection. The Bankruptcy Court does not see what difference Grace filing an amended claim objection before filing its Summary Judgment Motion on the Omnibus Objection would have made. Mr. Smolker does not explain what information an amended claim objection would have given him that he did not get from the Summary Judgment Motion, which stated the exact factual and legal basis for seeking disallowance of Claim 392. It would elevate form over substance to deny Grace's Summary Judgment Motion simply to make Grace file an amended objection when the Summary Judgment Motion functions as a renewed claim objection. Courts may overlook procedural irregularities that do not implicate substantive rights of the parties. *See Morrison v. Office of the United States Tr. (In re Morrison)*, 375 BR. 179, 188 (Bankr. W.D. Pa. 2007); *In re Mancini*, No. 85-30168, 1986 WL 28905, at *4 (Bankr. S.D. N.Y. March 26, 1986).

Mr. Morris, "Mark Kincaid, Esq., Kincaid Law, 26 Alhaja Way, Hot Springs Village, AR 71909" and (2) by United States First Class Mail to counsel for Termite Control and Mr. Morris, "Prindle, Decker & Amaro, 310 Golden Shore, 4th Floor, P.O. Box 22711, Long Beach, CA 90801-5511." *Id.*

On August 18, 2020, Mr. Smolker's response was docketed with the Bankruptcy Court. Case No. 01-01139 ECF 33157. In his response, Mr. Smolker averred "I did not agree to receive service by email. I did not receive Grace's Motion for Summary Judgment by US Mail until a few days ago. I was not given enough time to respond." Smolker Aug. Resp. p. 9. Neither Termite Control nor Mr. Morris filed a response.

On September 2, 2020, the Bankruptcy Court scheduled a telephonic status conference for September 17, 2020 regarding Mr. Smolker's need for additional time to file a complete response to the Summary Judgment Motion. Case No. 01-01139 ECF 33159; Hrg. Tr. 4:7-14, Sept. 17, 2020 ("Sept. Tr."). At the status conference held on September 17, 2020, Mr. Smolker explained that he wanted until at least December 16, 2020 to file a more complete response to the Summary Judgment Motion due to the length of the Motion and his medical disabilities impacting his stamina and ability to concentrate. Sept. Hrg. 4:21-23, 5:8-23, 8:19-20. Accordingly, the Bankruptcy Court granted Mr. Smolker's request to supplement his response to the Summary Judgment Motion and, shortly thereafter, entered a scheduling order giving Mr. Smolker until December 16, 2020 to do so. *Id.* at 9:25-10:4; Case No. 01-01139 ECF 33161, 33163.

On December 15, 2020, the Bankruptcy Court held a telephonic status conference at Grace's request after Mr. Smolker asked Grace on the eve of the deadline for filing his supplemental response to consent to giving him an additional two weeks. Hrg. Tr. 5:9-10, 7:19-

24, 8:11-14, Dec. 15, 2020 ("Dec. Tr."). After Mr. Smolker explained that he needed additional

time due to the length of the Summary Judgment Motion, the complexity of the matter, his lack

of familiarity with federal law, and medical problems, the Bankruptcy Court granted Mr.

Smolker's request, giving him until December 30, 2020 to file his supplemental response. *Id.* at

9:21-10:16, 12:4-23, 13:7-21, 16:22-25; Case No. 01-01139 ECF 33173, 33175. In so doing, the

Court explicitly warned Mr. Smolker that this would be the last extension. Dec. Tr. 17:1-9.

On January 4, 2021, Mr. Smolker's supplemental response was docketed with the

Bankruptcy Court. Case No. 01-01139 ECF 33177, 33178. In the declaration included with that

response, Mr. Smolker represented that:

> I did not have enough time to file objections to the facts asserted by Grace or to make
> objections to the Declaration of Rosemary Lewis, or to write a memorandum of points
> and authorities, or to write a statement of uncontestable facts...If I am given more time to
> prepare and file those additional papers, I will clearly demonstrate that Grace's Motion
> for Summary Judgment should be denied. Smolker Jan. Resp. Decl. p. 6.

On January 8, 2021, the Bankruptcy Court held another telephonic status conference to

address Mr. Smolker's request for more time to further supplement his response. In light of the

Bankruptcy Court's warning at the previous status conference that there would be no more

extensions, the more than four months the Court had already given Mr. Smolker to respond, the

more than 700 pages filed in connection with his most recent response, and the Court's need to

balance both Mr. Smolker's and Grace's needs, the Court denied Mr. Smolker's request for more

time. Hrg. Tr. 11:24-12:20, 19:11-20:6, Jan. 8, 2021 ("Jan. Tr."). After the Bankruptcy Court

denied his request, Mr. Smolker expressed his intention to file a motion pursuant to Federal

Rules of Civil Procedure 6(b) and 56(d) for permission to file more papers and sought to

"reserve" February 1, 2021, the date of the hearing on the Summary Judgment Motion, as the

hearing date for the motion he intended to file. *Id.* at 22:25-23:10, 23:15-17. The Bankruptcy

14

Court explained that it could not give him a hearing date until his motion was filed. *Id.* at 23:18-21.

On January 15, 2021, Mr. Smolker filed a "Motion for Leave to File Additional Pleadings And Exhibits After the Time Has Expired" pursuant to Federal Rules of Civil Procedure 6 and 56(d) ("Motion for Leave"). Case No. 01-01139 ECF 33181. Because Mr. Smolker did not file a request for expedited consideration, the hearing was originally set for March 4, 2021. *Id.* Upon review of the Motion for Leave, it became apparent that this was the motion that Mr. Smolker had mentioned that he had wanted heard on February 1, 2021 in conjunction with the Summary Judgment Motion. Accordingly, the Bankruptcy Court rescheduled the hearing on the Motion for Leave to February 1, 2021, the day of the Summary Judgment Motion hearing. *See id.* at ECF 33182.

In his admittedly confusing Motion for Leave, Mr. Smolker appeared to argue that health issues impacting his stamina, as well as the covid-19 pandemic, prevented him from preparing a list of disputed facts, a memorandum of points and authorities, an objection to the declaration Grace submitted in support of the Summary Judgment Motion, and facts demonstrating the danger of Syloid. Mot. for Leave p. 3-4, 6-8, 10. He also attached exhibits from the State Court Trial of the human respiratory tract and particle size of air contaminants, as well as State Court Trial minute orders reflecting various witnesses who had testified on Mr. Smolker's behalf in December 2001. Mot. for Leave List of Exhibits. Finally, he requested that the Bankruptcy Court permit him to take discovery, without explaining what additional discovery he sought or how materials he sought in discovery would create a genuine factual dispute relevant to the Summary Judgment Motion. Mot. for Leave p. 8.

On February 1, 2021, the Bankruptcy Court held a telephonic hearing on the Motion for Leave and the Summary Judgment Motion.[8] Case No. 01-01139 ECF 33194, 33195. After denying Mr. Smolker's Motion for Leave, the Court heard argument on the Summary Judgment Motion. *See* Hrg. Tr. 11:12-13:11, Feb. 1, 2021 ("Feb. Tr."). In connection with an argument that Grace had made suggesting the Grace Dismissal Order alone might preclude Mr. Smolker from reasserting the California State Court Litigation causes of action against Grace, the Court invited Grace to submit supplemental briefing on the res judicata effect of the Grace Dismissal Order, as the Court agreed with Mr. Smolker that a dismissal for lack of prosecution was not on the merits for res judicata purposes. *Id.* at 22:1-24:3.

After the conclusion of the hearing, Mr. Smolker subsequently emailed the Bankruptcy Court expressing his intention to file a supplemental letter brief as well. *See* Case No. 01-01139 ECF 33201 Ex. 39. With the understanding that the letter brief would be confined to the issue the Bankrutpcy Court permitted Grace to submit supplemental briefing on, the Court informed Mr. Smolker that he was welcome to file a supplemental brief, but it was not necessary given the Court's agreement with him on the issue Grace was planning to brief. *Id.* at Ex. 40 ("Judge Chan essentially agrees with you on res judicata so it is unnecessary for you to submit briefing then but, if you feel compelled to, you may do so.").

On February 16, 2021, Grace filed its supplemental letter brief, wherein it clarified that the Grace Dismissal Order did not affect the underlying causes of action against Grace from the California State Court Litigation because they were not litigated, but the Grace Dismissal Order

---

[8] On the eve of the hearing on the Summary Judgment Motion, Mr. Smolker attempted to email a plethora of new arguments to this Court's courtroom deputy without obtaining this Court's permission in complete disregard for its decision at the January 8 status conference denying Mr. Smolker additional time to supplement his response to the Summary Judgment Motion. *See* Ex. 35 of Smolker Decl. on Ex. 18-41; Jan. Tr. 11:24-12:20, 19:11-20:6. As such, the Court did not consider any arguments which were made in that email, especially considering they were not part of the record in this case.

in combination with the prepetition expiration of the relevant statutes of limitations on those causes of action mandated disallowance of Mr. Smolker's claim.[9] Grace Supp. Br. p. 2. The same day, the Bankruptcy Court issued an order directing Grace to re-serve the Summary Judgment Motion on Termite Control and Mr. Morris in accordance with the exact addresses as they appear on their respective proofs of claim and to supplement the record regarding the causes of action which remained against Termite Control and Mr. Morris in the California State Court Litigation as of the Petition Date ("Service Order"). Case No. 01-01139 ECF 33198. The next day, Grace re-served the Summary Judgment Motion on Termite Control and Mr. Morris and re-noticed a new response date for them of March 3, 2021. Case No. 01-01139 ECF 33199.

On February 23, 2021, Mr. Smolker's supplemental brief, which raised many issues for the first time on the record, supporting declarations, and dozens of exhibits were docketed. Case No. 01-01139 ECF 33201, 33202, 33203. On February, 26, 2021, in accordance with the Court's Service Order, Grace supplemented the record regarding the causes of action which remained in the California State Court Litigation against Termite Control and Mr. Morris as of the Petition Date. *Id.* at ECF 33209. Neither Termite Control nor Mr. Morris ever filed a response.

## III.    DISCUSSION

Having considered the parties' arguments made in connection with the Summary Judgment Motion on the Omnibus Objection, it is now ripe for adjudication. However, the Bankruptcy Court will first elaborate on its holding that Mr. Smolker failed to demonstrate that he is entitled to more time to file a supplemental response or conduct additional discovery under

---

[9] Grace's supplemental letter brief also addressed certain issues beyond the scope of the res judicata issue. *See* Grace Supp. Br. p. 3-4. The Court is not considering arguments contained in the supplemental letter brief which did not relate to the res judicata issue.

the applicable federal rules. The Court will then render its holding in connection with Grace's Summary Judgment Motion.

In support of its Summary Judgment Motion, Grace argues that 11 U.S.C. §§ 502(b)(1) and 558 mandate the disallowance of the Claims, reasoning that there is no genuine dispute that they are unenforceable under California law because (1) Grace was dismissed with prejudice from the California State Court Litigation and the statutes of limitations expired prepetition on all underlying causes of action against Grace and (2) Grace can have no liability to Termite Control and Mr. Morris since Mr. Smolker's causes of action against them in the California State Court Litigation were dismissed and the applicable statutes of limitations expired prepetition. Mot. for Summ. J. p. 5-6.

The Bankruptcy Court concludes that the Claims must be disallowed pursuant to 11 U.S.C. §§ 502(b)(1) and 558. The undisputed dismissal of Grace from the California State Court Litigation combined with the prepetition expiration of the one and three year statutes of limitations for the causes of action in the California State Court Litigation remaining as of the Petition Date – personal injury and property damage claims based on negligence and strict liability – render Claim 392 unenforceable as a matter of California law. Similarly, the undisputed dismissal of Termite Control and Mr. Morris from the California State Court Litigation combined with the prepetition expiration of the one and three year statutes of limitations for the causes of action remaining against Termite Control and Mr. Morris in the California State Court Litigation – personal injury and property damage claims based on strict liability, negligence, trespass, and assault and battery – as well as the mootness of the nuisance claim, render Mr. Smolker's claims against them unenforceable as a matter of California law. Accordingly, because Grace could not face indemnity liability on the basis of the California State

18

Court Litigation, Claims 387 and 4070 must be disallowed. Accordingly, the Court sustains Grace's Omnibus Objection in full.

## A. Mr. Smolker Has Not Demonstrated His Entitlement to Conduct Discovery Pursuant to Federal Rule of Civil Procedure 56(d).

The Third Circuit Court of Appeals has held that courts must consider outstanding requests made under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)") prior to ruling on a pending summary judgment motion. *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015). Pursuant to Rule 56(d),[10]

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Courts tend to grant requests for discovery made pursuant to Rule 56(d) as a matter of course, especially when there are outstanding discovery requests or where relevant facts are under the control of the moving party. *In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945 F.3d 749, 761 (3d Cir. 2019); *Bledsoe*, 775 F.3d at 568. However, courts are justified in denying a Rule 56(d) request when the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law or when the Rule 56(d) declaration is inadequate. *Bledsoe*, 775 F.3d at 568. An adequate declaration specifies "what particular information that is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Id.* In fact, in all but the most exceptional cases, failure to comply with Rule 56(d) is fatal to a claim of insufficient discovery. *Hart v. City of Philadelphia*, 779 Fed. Appx. 121, 128 (3d Cir. 2019).

---

[10] Made applicable in bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7056 and 9014(c).

Mr. Smolker's declaration in support of his Rule 56(d) request for discovery is inadequate. Mr. Smolker failed to identify what additional discovery, information, or facts were needed, how, if disclosed, those facts would preclude summary judgment by creating a genuine issue of material fact, or why he was unable to request any discovery he felt necessary to his response in the over four additional months the Court had granted him to respond to Grace's Summary Judgment Motion.[11] Accordingly, the Court denies Mr. Smolker's request made pursuant to Rule 56(d) for discovery in this matter.

**B. Mr. Smolker Has Not Demonstrated Entitlement to Additional Time to Further Supplement His Responses to the Summary Judgment Motion Under Federal Rule of Bankruptcy Procedure 9006(b)(1).**

Although Mr. Smolker brought his Motion for Leave pursuant to Federal Rule of Civil Procedure 6, Federal Rule of Bankruptcy Procedure 9006 ("Rule 9006") "governs the time for acts to be done and proceedings to be had in cases under the Code and any litigation arising therein." Rule 9006 Advisory Comm. Notes. Rule 9006 is an adaptation of Federal Rule of Civil Procedure 6 and, accordingly, the Court will treat Mr. Smolker's Motion for Leave as being brought pursuant to Rule 9006. *Id.*

Rule 9006(b)(1) provides

when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion…on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

---

[11] Although Mr. Smolker had served discovery requests on Grace on December 28, 2020, the eve of the December 30 deadline for filing his supplemental response, prior to filing his Motion for Leave and without obtaining the Court's permission, he did not attach these requests as an exhibit to his Motion for Leave, or even reference them in the Motion itself. *See* Ex. 24 of Smolker Decl. on Ex. 18-41. In any event, none of the documents requested appear at all probative of the limited issues presented in the Summary Judgment Motion – whether the Grace Dismissal Order combined with the prepetition expiration of the statutes of limitations on the causes of action against Grace in the California State Court Litigation render Claim 392 unenforceable against Grace. *See id.* In fact, the discovery request does not explain how the documents requested would create a genuine issue of material fact with regard to the Summary Judgment Motion. *See id.*

The excusable neglect "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Larson v. Bayer (In re Bayer)*, 527 B.R. 202, 208 (Bankr. E.D. Pa. 2015) (citing *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Circumstances to be considered in making this determination include: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* (citing *Pioneer*, 507 U.S. at 395). Courts must consider and balance all four factors and no one factor is determinative. *Id.* at 208-09.

After weighing the aforementioned excusable neglect factors, the Court concludes Mr. Smolker has not satisfied his burden of establishing his failure to file a complete response by the December 30, 2020 deadline was the product of excusable neglect. Although his delay in seeking another extension after the December 30, 2020 deadline had expired was not significant and the Court has no reason to doubt Mr. Smolker's good faith in seeking another extension, the risk of prejudice to Grace from granting Mr. Smolker additional time, as well as his reasons for not filing a complete response by December 30, weigh against Mr. Smolker and outweigh the other factors. First, granting Mr. Smolker a third extension would further prejudice Grace as the multiple extensions Mr. Smolker already received from the Court delayed disposition of the Summary Judgment Motion by over four months. To make Grace wait even longer when Mr. Smolker has already had significantly longer to respond than the applicable local rules dictate is no longer acceptable. *See* Del. Bankr. L.R. 9006-1.

Furthermore, Mr. Smolker's reasons for needing more time are insufficient to justify another extension and do not support a finding that excusable neglect caused his failure to file a

21

timely, complete response. In his Motion for Leave, which, admittedly, is not a model of clarity, Mr. Smolker suggests that his age, health problems, and the covid-19 pandemic have interfered with his ability to file a complete, timely response to the Summary Judgment Motion. However, he does not explain how they so interfered, nor why the lengthy extensions he already received to accommodate his age and health issues were not sufficient. His health issues do not appear new, and he has not indicated that he has recently been hospitalized or incapacitated by these health issues. Furthermore, the Court takes judicial notice of the fact that the covid-19 pandemic has been ongoing since March 2020, long before Grace filed its Summary Judgment Motion. Despite the covid-19 pandemic, Mr. Smolker does not indicate that he was prevented from accessing his law office to retrieve files. Accordingly, it is not clear from the Motion for Leave how the covid-19 pandemic has prevented Mr. Smolker from filing a complete response.

Therefore, based on the foregoing consideration of the *Pioneer* factors, the Court cannot find that Mr. Smolker's neglect in filing a timely, complete response by the third deadline was excusable.

## C. Claim Objections and Summary Judgment

Grace moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") in connection with its Omnibus Objection based on 11 U.S.C. §§ 502(b)(1) and 558, arguing that there is no genuine dispute as to the material facts mandating disallowance of the Claims and, as such, Grace is entitled to summary judgment as a matter of law.

Section 502(b)(1) requires disallowance of a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The expiration of the statute of limitations on a claim is a common rationale for disallowing a claim under 11

U.S.C. § 502(b)(1). *In re George,* 606 B.R. 236, 240 (Bankr. E.D. Pa. 2019). This statutory

exception to the allowance of a claim is generally complemented by § 558, which provides that

"[t]he estate shall have the benefit of any defense available to the debtor as against any entity

other than the estate, including statutes of limitation, statutes of fraud, usury, and other personal

defenses." *In re Walnut Equip. Leasing Co.,* No. 97–19699DWS, 2000 WL 1692840, at *2

(Bankr. E.D. Pa. Nov. 1, 2000).

Ordinarily, courts employ a burden shifting framework to resolve claim objections. *In re*

*George,* 606 B.R. at 239. First, a claimant must allege facts sufficient to support the claim. *In re*

*Allegheny Intern., Inc.,* 954 F.2d 167, 173 (3d Cir. 1992). A properly filed proof of claim is

*prima facie* evidence of the validity and amount of the claim, even if an objection is filed. Fed.

R. Bankr. P. 3001(f); *In re Milbourne,* 557 B.R. 376, 388 (Bankr. E.D. Pa. 2016). Thus a *prima*

*facie* proof of claim which alleges facts sufficient to support a legal liability to the claimant

satisfies the claimant's initial obligation to go forward. *In re Milbourne,* 557 B.R. at 388; *Plains*

*Mktg., L.P. v. Bank of Am., N.A. (In re Semcrude, L.P.),* 443 B.R. 472, 478 (Bankr. D. Del. 2011)

(citing *In re Allegheny Intern., Inc.,* 954 F.2d at 173). Upon the filing of an objection to a

properly filed proof of claim, the burden of going forward shifts from the claimant to the

objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *In re*

*Milbourne,* 557 B.R. at 388. If a claim is facially valid, "the objector must bring forward

evidence that undercuts at least one necessary element of the claim." *In re George,* 606 B.R. at

239. If the objector successfully refutes the claimant's *prima facie* claim, the burden of proof

shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Milbourne,* 557 B.R. at 389. The ultimate burden of proof rests on the claimant asserting a

right to be paid from the bankruptcy estate. *In re George,* 606 B.R. at 239.

Rule 56(a), applicable to bankruptcy proceedings through Federal Rule of Bankruptcy

Procedure 7056,[12] provides a court shall grant summary judgment if the movant shows there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law. "A genuine issue of material fact is one in which sufficient evidence exists that would

permit a reasonable fact finder to return a verdict for the non-moving party." *Odom v.*

*Philadelphia Parking Auth. (In re Odom)*, 571 BR. 687, 692 (Bankr. E.D. Pa. 2017).

The movant bears the initial burden of showing there is no genuine issue of material fact.

*Kullman Indus. v. Interchange Bank (In re KI Liquidation, Inc.)*, Bankr. No. 05–60002 (KCF),

Adv. Proc. Nos. 06–1023 (KCF), 06–1026(KCF), Civil Action No. 08–611 (MLC), 2008 WL

5109369, at *3 (D. N.J. Dec. 1, 2008). Once the movant satisfactorily meets its initial burden, the

non-moving party must go beyond the pleadings and counter with evidence designating specific

facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 US. 317, 324

(1986); *DiSantis v. Morgan Props. Payroll Servs., Inc.*, Civ. Action No. 09-6153, 2010 WL

3606267, at *4 (ED. Pa. Sept. 16, 2010). In resolving a motion for summary judgment, the court

must draw all reasonable inferences in favor of the non-moving party. *In re Odom*, 571 BR. at

692. However, the existence of a mere scintilla of evidence in support of the non-movant's

position will be insufficient to defeat a motion for summary judgment. *In re KI Liquidation*,

2008 WL 5109369, at *4. There must be evidence on which the fact finder could reasonably find

for the non-movant. *Id.* If the evidence is merely colorable or not significantly probative,

summary judgment may be granted. *Id.*

---

[12] Federal Rule of Bankruptcy Procedure 9014(c) makes Federal Rule of Bankruptcy Procedure 7056 applicable to
contested matters. *See In re Tribune Media, Co.*, Case No. 08-13141 (KJC), 2016 Bankr. LEXIS 875, at *3 (Bankr.
D. Del. March 18, 2016).

**D. Because Claim 392 is Unenforceable Under California Law, Sections 502(b) and 558 of the Bankruptcy Code Require Its Disallowance.**

Claim 392 refers to the California State Court Litigation as the only basis for Mr. Smolker's personal injury and property damage claim against Grace, offering no other facts describing the claim at all, let alone any even suggesting another basis for Grace's potential liability to Mr. Smolker. Once the Grace Dismissal Order terminated the California State Court Litigation, no basis remained for Claim 392 unless Mr. Smolker could at least potentially still enforce the causes of action underlying the California State Court Litigation against Grace despite the Grace Dismissal Order. Based upon the record before the Bankruptcy Court,[13] Grace has met its burden of establishing that there is no genuine dispute that that is not the case since the statutes of limitations on the causes of action against Grace in the California State Court Litigation expired prepetition.

It is well established that the validity of a claim is determined by applicable non-bankruptcy law. *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del. 2006). Under section 312 of the California Code of Civil Procedure, "civil actions...can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless

---

[13]    Pursuant to Federal Rule of Bankruptcy Procedure 9017, the Federal Rules of Evidence apply in cases under the Bankruptcy Code. Under Federal Rule of Evidence 201, courts may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. Ev. 201(b)(2). Thus, a bankruptcy court may take judicial notice of its own docket entries, its own records, and contents of court records from other courts in related matters. *Southmark Prime Plus, L.P. v. Falzone,* 776 F. Supp. 888, 892 (D. Del. 1991) ("Pursuant to Rule 201(b)(2), the Court can take judicial notice of the contents of court records from another jurisdiction."); *Davis v. Bank of America, N.A., (In re Davis),* 597 B.R. 770, 773 Bankr. M.D. Pa. 2019); *Lingo v. Curcio (In re Lingo),* No. 99–3195 (PJW), 2001 WL 1819691, at *1 n.3 (Bankr. D. Del. Jan. 29, 2001). Accordingly, the Court takes judicial notice of the contents of its own records in this bankruptcy case as well those records filed in connection with the California State Court Litigation in the Superior Court, California Appellate Court, and California Supreme Court.

With regard to the unpublished Appellate Court Opinion, the Bankruptcy Court emphasizes it does not cite to the opinion for the truth of any assertions contained therein, and only references certain findings made by the California Appellate Court to the extent relevant under res judicata or collateral estoppel, as California Rule of Court 8.1115 permits, or to the extent a fact contained therein is undisputed by both parties.

where, in special cases, a different limitation is prescribed by statute." In California, the statute of limitations begins to run when a claim accrues. *Simpson v. Phillip Morris Inc.*, No. CV03-4717SVW(CWX), 2003 WL 23341207, at *2 (C.D. Cal. Nov. 6, 2003); *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). Accordingly, a plaintiff must commence an action on a claim within the limitations period after the cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005).

A claim generally accrues when the cause of action is complete with all its elements – wrongdoing, injury, and causation. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013); *Norgart,* 21 Cal. 4th at 397. Thus, statutes of limitations ordinarily run from the occurrence of the last element essential to the cause of action. *Aryeh,* 55 Cal. 4th at 1191; *April Enterprises, Inc. v. KTTV,* 147 Cal. App. 3d 805, 826 (Cal. Ct. App. 1983) ("in ordinary tort and contract actions, the statute of limitations…begins to run upon the occurrence of the last element essential to the cause of action."). "The common law last element accrual rule is the default, while exceptions to that rule apply precisely to the extent the preconditions for their application are met…" *Aryeh,* 55 Cal. 4th at 1196 (internal citations omitted).

An exception to the ordinary accrual rule is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers or has reason to discover the cause of action.[14]

---

[14] Other exceptions to the general accrual rule include equitable tolling, which may suspend or extend the statute of limitations when a plaintiff has chosen one among several available remedies; the doctrine of fraudulent concealment, which tolls the statute of limitations when a defendant, through deceptive conduct, has caused a claim to grow stale; the continuing violation doctrine, which aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them; and the continuous accrual doctrine, which provides that a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially barred as to older events but timely as to those within the applicable limitations period. *Aryeh,* 55 Cal. 4th at 1192. None of these appear relevant to the claim objection and Mr. Smolker has not argued otherwise. Also, Mr. Smolker has not argued in his many filings in connection with the Summary Judgment Motion that Grace should be equitably estopped from asserting that the statutes of limitations expired on his California State Court Litigation causes of action against Grace. Equitable estoppel prevents a party from asserting the statute of limitations as a defense to an untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. *Lantzy v.*

*Norgart,* 21 Cal. 4th at 397. A plaintiff "discovers" the cause of action when he at least suspects

or has reason to suspect that his "injury was caused by wrongdoing, that someone has done

something wrong to" him.[15] *Santangelo v. Bridgestone/Firestone, Inc. (In re*

*Bridgestone/Firestone, Inc.),* 287 F. Supp. 2d 929, 932 (S.D. Ind. 2003) (internal citation

omitted). *See also Norgart,* 21 Cal. 4th at 397-98. In other words, the discovery rule postpones

the accrual of a cause of action until the plaintiff at least suspects or has reason to suspect a

factual basis for a cause of action. *Norgart,* 21 Cal. 4th at 398. Thus the limitations period begins

to run when the circumstances are sufficient to raise a suspicion of wrongdoing. *Mills v. Forestex*

*Co.,* 108 Cal. App. 4th 625, 648 (Cal. Ct. App. 2003). It is not necessary that the plaintiff be

aware of all the specific facts necessary to establish the claim. *Norgart,* 21 Cal. 4th at 398;

*Santangelo,* 287 F. Supp. 2d at 932.

An individual ultimately has "reason to suspect" for accrual purposes when he has

"notice or information of circumstances to put a reasonable person on inquiry" regarding a cause

of action, or had the opportunity to obtain knowledge from sources open to his investigation.

*Fox,* 35 Cal. 4th at 808; *Norgart,* 21 Cal. 4th at 398 (internal citations omitted). Accordingly, the

discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the

cause of action. *Fox,* 35 Cal. 4th at 807-08. In most cases where the discovery rule has been

applied, the injury or act causing the injury had been difficult for the plaintiff to detect.[16] *April*

*Enterprises,* 147 Cal. App. 3d at 831.

---

*Centex Homes,* 31 Cal. 4th 363, 383 (2003). The record reflects no basis for concluding that this doctrine applies to Grace.

[15] The term "wrong" is used not in a technical sense, but rather, in accordance with its lay understanding. *Norgart,* 21 Cal. 4th at 397-98.

[16] While accrual of a cause of action for purposes of determining when a statute of limitations ran is generally a question of fact, where the evidence can support only one reasonable conclusion, it may be decided on summary judgment as a matter of law. *Moss v. Duncan,* 36 Cal. App. 5th 569, 574 (Cal. Ct. App. 2019); *Stella v. Asset Management Consultants, Inc.,* 8 Cal. App. 5th 181, 193 (Cal. Ct. App. 2017); *Mills,* 108 Cal. App. 4th at 640.

As of the Petition Date,[17] the only remaining causes of action against Grace in the California State Court Litigation were labeled strict liability and negligence.[18] The nature of the right sued on determines the applicability of the statute of limitations. *April Enterprises, Inc.,* 7 Cal. App. 3d at 828. The gravamen of these remaining claims is entirely consistent with the way Mr. Smolker labeled them in the Fifth Amended Cross Complaint. In connection with his "strict liability" and "negligence" claims against Grace, Mr. Smolker essentially complained that he suffered property damage and personal injuries as a result of Grace manufacturing and selling a defective, inherently unsafe product, Syloid, to Termite Control for use in the Complex's termite extermination without any warnings of the defects when the product was not safe for reasonable or intended uses. *See* Fifth Am. Cross Compl. ¶¶ 94-104. According to Mr. Smolker's allegations in connection with his "negligence" claim, this conduct was undertaken without exercising reasonable care to prevent contamination of Mr. Smolker's unit and violated certain state and federal laws, constituting negligence per se. *See id.* at ¶¶ 66, 103-104.

The elements of a strict products liability cause of action are a defect in the manufacture or design of a product or a failure to warn; causation; and injury. *Soule v. General Motors Corp.,* 8 Cal. 4th 548, 560 (1994) ("A manufacturer, distributor, or retailer is liable in tort if a defect in the manufacture or design of its product causes injury while the product is being used in a reasonably foreseeable way."); *Nelson v. Superior Court,* 144 Cal. App. 4th 689, 695 (Cal. Ct.

---

[17] Pursuant to 11 U.S.C. § 502(b), if an objection to claim is made, the court shall determine the amount of such claim as of the filing of the petition.

[18] The other counts against Grace – fraud, nuisance, and interference, had been disposed of on summary adjudication. Smolker Jan. Resp. Ex. 2. Under California law, a party may move for summary adjudication if a cause of action has no merit. *In re Rock & Republic Enters.,* Case No. 10-11728 (AJG), 2011 Bankr. LEXIS 2401, at *21-22 (Bankr. S.D. N.Y. June 20, 2011) (citing Cal. Code Civ. Proc. § 437c(f)). Motions for summary adjudication are only granted if the motion completely disposes of a cause of action, affirmative defense, claim for damages, or an issue of duty. *Id.* at *22 (citing Cal. Code Civ. Proc. § 437c(f)). Accordingly, by granting Grace's motion for summary adjudication as to the causes of action for fraud, nuisance, and interference, the Superior Court found they had no merit and disposed of them completely. As a result, by the Petition Date, these causes of action could not serve as the basis for Claim 392 since they were no longer pending in the California State Court Litigation.

App. 2007) ("The elements of a strict products liability cause of action are a defect in the manufacture or design of the product or a failure to warn, causation, and injury."). Mr. Smolker's allegations in connection with his cause of action labeled "strict liability" significantly mirror these elements. *See* Fifth Am. Cross Compl. ¶¶ 94-102.

As for negligence, the elements of a negligence claim under California law are the defendant had a legal duty to use due care, the defendant breached that duty, and the plaintiff was injured as a result of that breach. *United States v. Sequel Contrs., Inc.,* 402 F. Supp. 2d 1142, 1155 (C.D. Cal. 2005). However, negligence is also established as a matter of law when a defendant violated a statute, regulation, or ordinance, causing injury to the plaintiff which the statute, ordinance, or regulation was supposed to prevent, and the injured person was one of a class the statute, regulation or ordinance was meant to protect. *Johnson v. Honeywell Int'l Inc.,* 179 Cal. App. 4th 549, 555 (Cal. Ct. App. 2009); *Quiroz v. Seventh Ave. Center,* 140 Cal. App. 4th 1256, 1285 (Cal. Ct. App. 2006). Again, Mr. Smolker's allegations in connection with the negligence cause of action are reflective of these elements – Grace allegedly injured Mr. Smolker by (1) failing to exercise due care in manufacturing and selling Syloid for use in the Complex's termite extermination and (2) violating certain laws in the manufacturing and selling of Syloid, constituting negligence per se. *See* Fifth Am. Cross Compl. ¶¶ 66, 103-104. Accordingly, Mr. Smolker's claims against Grace in the California State Court Litigation are in the nature of strict liability and negligence for property damage and personal injuries allegedly caused by Grace's manufacturing and selling a defective product in violation of state and federal laws.

Under the former section 340(3) of the California Code of Civil Procedure, which applies to personal injury actions for negligence and strict products liability accruing before 2003, an

action for an injury caused by the wrongful act or neglect of another must be brought within one

year.[19] *See Fox,* 35 Cal. 4th at 808-09 ("Under the statute of limitations applicable to this case, a

plaintiff must bring a cause of action for products liability within one year of accrual."); *Howe v.*

*Pioneer Mfg. Co.,* 262 Cal. App. 2d 330, 339 (Cal. Ct. App. 1968) ("the one-year limitation of

subdivision 3 of section 340 of the Code of Civil Procedure is applicable to the claims for

damages for personal injuries...predicated on negligence..."). Under section 338(b)-(c) of the

California Code of Civil Procedure, actions for injury to real or personal property caused by

negligence or strict products liability must be brought within three years of their accrual.[20] *See*

---

[19] Although California's statute of limitations for personal injury actions was extended from one to two years pursuant to Cal. Code Civ. Proc. § 335.1, effective January 1, 2003, the two-year statute of limitations does not apply retroactively to claims that accrued prior to January 1, 2003. *Kamar v. Krolczyk,* No. 1:07-CV-0340 AWI TAG, 2008 WL 2880414, at *5 (E.D. Cal. July 22, 2008).

[20]     As mentioned *supra,* because the Bankruptcy Court permitted Grace to file a supplemental brief regarding whether the Grace Dismissal Order was res judicata as to the causes of action in the California State Court Litigation, Mr. Smolker was permitted to file a supplemental brief on the same limited issue. However, Mr. Smolker's brief far exceeded that scope. Instead, he used the supplemental brief to introduce many new arguments onto the record for the very first time and as an opportunity to file what was in effect, a third response to the Summary Judgment Motion in violation of this Court's denial of his request for additional time to do so. *See* Feb. Tr. 11:12-13:9; *supra* Pt. III(B). The purpose of the supplemental brief was not to raise new arguments unrelated to the res judicata issue. Accordingly, the Court is not considering any arguments contained in Mr. Smolker's supplemental post-hearing brief which do not relate to the limited res judicata issue.

     In any event, even if this Court had considered Mr. Smolker's arguments in his supplemental post-hearing brief, they would not help him. First, Mr. Smolker appears to suggest that because California's Code of Civil Procedure requires civil defendants to assert affirmative defenses, like the statute of limitations, in their answers to complaints in civil litigation, Grace's failure to assert the statute of limitations as a defense to Claim 392 in its Omnibus Objection renders that defense a nullity. Smolker Decl. on Ex. 18-41 ¶ 11. Mr. Smolker, however, ignores that the California State Court Litigation was still pending when the Omnibus Objection was first filed and Grace had not yet been dismissed. The expiration of the statutes of limitations on Mr. Smolker's causes of action against Grace in the California State Court Litigation only could have rendered Claim 392 unenforceable once Grace was dismissed from the action because, per Grace's argument, Mr. Smolker would be unable to refile those causes of action due to the expiration of the statutes of limitations. In any event, the California Code of Civil Procedure does not govern the procedural aspects of objecting to a proof of claim in bankruptcy. *See* Fed. R. Bankr. P. 3007.

     Next, Mr. Smolker argues that several other statutes of limitations apply to his claims against Grace. All except for the statute of limitations applicable to California's Unfair Competition Law, which was referenced for the first time on the record at the Summary Judgment Motion hearing, were mentioned for the very first time on the record in this post-hearing submission.

     First, Mr. Smolker mentions that "[p]roduct liability and negligence claims against the manufacturer of materials or products installed in a building which cause damage to the building are subject to yet another Statute of Limitations [sic]. California Code of Civil Procedure section 228(b)." Smolker Supp. Br. p. 3. However, California Code of Civil Procedure 228 relates to qualifications for jury selection and provides:

          [c]hallenges for general disqualification may be taken on one or both of the following grounds, and for no other: (a) A want of any of the qualifications prescribed by this code to render a person competent as a juror. (b) The existence of any incapacity which satisfies the court that the

challenged person is capable of performing the duties of a juror in the particular action without
prejudice to the substantial rights of the challenging party.

The only case Mr. Smolker cites in connection with Cal. Code of Civ. Proc. section 228(b) is, *County of Santa Clara
v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 317 (Cal. Ct. App. 2006), which mentions in passing that Cal. Code
Civ. Proc. § 338(b) applies to negligence and strict liability causes of action against a manufacturer for injuries
caused by defective products, including property damage. To the extent that Mr. Smolker meant to argue that Cal.
Code of Civ. Proc. § 338(b) applies to product liability and negligence claims against the manufacturer of materials
or products installed in a building which cause damage to that building, the Court agrees as discussed *supra*.
Otherwise, the Court has been unable to discern which law Mr. Smolker intended to cite.

Second, Mr. Smolker insists that the four year statute of limitations under section 17208 of the California
Business and Professions Code applies to his claims against Grace in the California State Court Litigation because
his action against Grace was based upon California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et
seq.* ("UCL"), despite the lack of *any* reference whatsoever to that law among the *thirty-one* causes of action he
specified against the various cross-defendants in his Fifth Amended Cross Complaint. Smolker Supp. Br. p. 3;
Smolker Decl. on Ex. 18-41 ¶ 14. The Bankruptcy Court finds this statute of limitations inapplicable to the claims
that were remaining against Grace in the California State Court Litigation as of the Petition Date and to Claim 392,
which is based upon the California State Court Litigation.

Pursuant to Cal. Bus. & Prof. Code § 17203

> [a]ny person who engages, has engaged, or proposes to engage in unfair competition may be
> enjoined in any court of competent jurisdiction. The court may make such orders or
> judgments...as may be necessary to prevent the use or employment by any person of any practice
> which constitutes unfair competition...or as may be necessary to restore to any person in interest
> any money or property...which may have been acquired by means of such unfair competition.

Section 17200 of the California Business and Professions Code defines unfair competition as including "any
unlawful, unfair, or fraudulent business act or practice..." The face of the Fifth Amended Cross Complaint gives no
indication that Mr. Smolker's claims against Grace were brought pursuant to the UCL. Mr. Smolker attempts to
argue that his claims against Grace were based on the UCL because he alleged that Grace had violated certain state
and federal laws by manufacturing, selling, and distributing Syloid. Smolker Decl. on Ex. 18-41 ¶ 14; Smolker
Supp. Br. p. 3. However, in reality, the "gravamen" of his allegations of illegal conduct against Grace were to take
advantage of negligence per se, an evidentiary presumption in an action for negligence which, as previously
discussed, provides that negligence is established as a matter of law when a defendant violated a statute, regulation,
or ordinance, causing an injury to the plaintiff. *Johnson*, 179 Cal. App. 4th at 555; *Quiroz*, 140 Cal.App.4th at 1285.
*See* Fifth Am. Cross Compl. ¶ 104 ("[i]t was a violation of state law (*Food & Agriculture* Section 12993) and
negligence per se for Grace...to manufacture or sell or deliver Syloid 244...or to possess Syloid 244 in California
for use as a pesticide (*Food & Agriculture* Section 12955). It was a violation of federal law (7 *US Code* Section
136(a)) and negligence per se for Grace...to distribute, sell, offer for sale, hold for distribution, hold for sale, hold
for shipment, ship, deliver for shipment, release for shipment, or to offer to deliver Syloid 244 to Home Saving
and/or Pacific Villas for use as a pesticide.").

Furthermore, it is telling that Mr. Smolker's allegations in connection with the strict liability and
negligence causes of action against Grace are inconsistent with the only relief available under the UCL -- injunctive
relief or restitution. Fifth Am. Cross Compl. ¶¶ 93-104, p. 69; *Cortez v. Purolator Air Filtration Products Co.*, 23
Cal. 4th 163; 173 (2000) ("Damages are not available under section 17203."); *Heller v. Norcal Mutual Ins. Co.*, 8
Cal. 4th 30, 45 (1994) ("As the Court of Appeal correctly noted, damages are not available for claims under the
Unfair Business Practices Act"); *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1398 (9th Cir. 1985) ("California law
does not recognize the recovery of damages by individuals for unfair business practices."); *United States v. Sequel
Contrs., Inc.*, 402 F. Supp. 2d 1142, 1156 (C.D. Cal. 2005) ("The remedies an individual may seek under the UCL
are limited to injunctive relief and restitution."); *Barnett v. Washington Mutual Bank, FA*, No. C 03–00753 CRB,
C03–3239, C03–1446, C03–2007, C03–2853, C03–3714, C03–0943, C03–3317, C03–4278, 2004 WL 2857283, at
*2 (N.D. Cal. Oct. 12, 2004) ("The remedies available under the UCL are contained in Section 17203 and are
'generally limited to injunctive relief and restitution.' 'Damages are not available under section 17203.'") (internal
citations omitted); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001).

Restitution under the UCL is limited to the return of property or funds in which the plaintiff has an
ownership interest. *Sequel Contrs., Inc.*, 402 F. Supp. 2d at 1156. Nowhere in the Fifth Amended Cross Complaint
does Mr. Smolker allege that Grace obtained money or property from him by violating state and federal laws.

Furthermore, nowhere in the Fifth Amended Cross Complaint does Mr. Smolker seek an injunction enjoining Grace from committing further violations of state and federal law.

In light of the foregoing, the Court cannot find that Mr. Smolker's claims against Grace in the California State Court Litigation were based upon the UCL for purposes of calculation of the statute of limitations. Furthermore, Claim 392 does not separately reference the UCL nor state any facts in support of a UCL claim against Grace. In the absence of any allegations in Claim 392 sufficient to support a legal liability based upon the UCL, it simply is not relevant to resolving the Summary Judgment Motion.

Next, Mr. Smolker speculates that the four year statute of limitations applicable to Cal. Civ. Code § 1794(a) in the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790 *et seq.*, "might" apply to his "claim against Grace" as "an action for breach of a manufacturer's warranties and obligations which accompany the sale of goods." Smolker Letter Br. p. 3.

Under Cal. Civ. Code § 1794(a), "any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for recovery of damages and other legal and equitable relief." Under Cal. Civ. Code § 1791(b), a "buyer" means any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail. Under Cal. Civ. Code § 1791(a), the term "consumer goods" means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables. Cal. Civ. Code § 1791(l) defines "retail seller" as any individual, partnership, corporation, association, or other legal relationship that engages in the business of selling or leasing consumer goods to retail buyers. "Retail" is defined by Black's Law Dictionary as the sale of goods or commodities to ultimate consumers as opposed to sale for further distribution or processing. *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 917 (Cal. Ct. App. 2015).

Non-retail sales of consumer goods, retail sales of non-consumer goods, and all non-retail commercial transactions are regulated by the Commercial Code and are not impacted by the Song-Beverly Act. *Id.* at 924. It is typically the plaintiff's burden to prove the Song-Beverly Act applies to his or her claims by demonstrating that the purchase at issue was one of "consumer goods"; that the purchaser was a "buyer" under the statute; and that the goods were purchased from a "retail seller" under the statute. *Id.* at 917.

The Song-Beverly Act does not contain its own statute of limitations. *Yi v. BMW of North America, LLC*, Case No. 2:17-cv-06467-SVW, 2018 WL 3359016, at *3 (C.D. Cal. May 24, 2018). Rather, section 2725 of the California Commercial Code provides a four-year limitations period for breach of warranty claims arising from the sale of goods. *Mills*, 108 Cal. App. 4th at 642. Pursuant to Cal. Comm. Code § 2725(1), an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. Section 2725(2) provides a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. Under this provision,

> [a] breach of warranty occurs when tender of delivery is made, except where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The Court finds this statute of limitations irrelevant to the Summary Judgment Motion. First, neither Mr. Smolker's Fifth Amended Cross Complaint nor Claim 392 mentions the Song-Beverly Act at all. Furthermore, neither the Fifth Amended Cross Complaint nor Claim 392 describes circumstances surrounding any breach of implied or express warranty Grace may have committed prior to the termite extermination in connection with the sale of Syloid. In fact, the term "warranty" is never actually mentioned in the seventy-three page Fifth Amended Cross Complaint or in Claim 392. Finally, it is not apparent from the Fifth Amended Cross Complaint or Claim 392 that Mr. Smolker qualifies as a buyer under the Song-Beverly Act, especially given that he alleges Grace sold Syloid to Termite Control, not Mr. Smolker, and that Termite Control contracted to provide a service to Pacific Villas, not Mr. Smolker in his individual capacity. Fifth Am. Cross Compl. ¶¶ 67, 72; First Am. Cross Compl. ¶ 17. *See Soares v. Lorono*, Case No. 12-cv-05979-WHO, 2014 U.S. Dist. LEXIS 24674, at *15-16 (N.D. Cal. Feb. 25, 2014) (dismissing individual plaintiff's Song-Beverly Act claim against manufacturer of roof shingles used in construction on a residence on the basis that the plaintiff's company rather than the individual plaintiff contracted with a roofing company to purchase the shingles). Based upon the foregoing, the statute of limitations for the Song-Beverly Act has no bearing on the validity of Claim 392.

Mr. Smolker also alleges the four year statute of limitations applicable to the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, "might" apply to his claim against Grace. The MMWA is a remedial statute designed to protect purchasers of consumer goods from deceptive warranty practices. *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 331 (D. N.J. 2014). Under 15 U.S.C. § 2310(d),

32

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 U.S.C. § 2301 *et seq.*], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state or in an appropriate United States district court. A "consumer" under the MMWA is defined as

a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract). 15 U.S.C. § 2301(3).

A consumer product refers to "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1).

The MMWA does not contain its own statute of limitations. *ACH Enters. 1 LLC v. Viking Yacht Co.*, 817 F. Supp. 2d 465, 472 (D. N.J. 2011). Courts look to the most analogous state law cause of action and use the corresponding statute of limitations. *ACH Enters. 1 LLC*, 817 F. Supp. 2d at 472. The four year statute of limitations under section 2725 of the California Commercial Code for breach of warranty, the same one applicable to the Song-Beverly Act, applies to the MMWA. *See Nguyen v. Nissan N. Am., Inc.*, Case No. 16-CV-05591-LHK, 2020 WL 5517261, at *6-7 (N.D. Cal. Sept. 13, 2020).

The Court does not find the statute of limitations under MMWA relevant to the Summary Judgment Motion on Claim 392. First, neither the Fifth Amended Cross Complaint nor Claim 392 references the MMWA. In fact, neither even mentions a warranty at all, express, implied, or otherwise. Additionally, it is impossible to conclude on the basis of Claim 392 or the Fifth Amended Cross Complaint that Mr. Smolker even qualifies as a consumer under the MMWA given that (1) he does not allege that he purchased a product – he alleges Termite Control purchased Syloid from Grace and Pacific Villas employed Termite Control to perform a service; (2) he does not allege that an ownership or lease interest in Syloid was transferred to him at any point; and (3) he does not allege he was entitled by the terms of any warranty or under state law to enforce terms of a warranty against Grace. Ultimately, there is no basis to conclude the California State Court Litigation was based upon an unmentioned MMWA claim, and Claim 392 offers no basis to conclude it was based upon the MMWA.

Even if Claim 392 was based on the MMWA, Mr. Smolker states in his supplemental brief "[o]rdinarily, a breach of the implied warranty of merchantability occurs at the time of sale and the statute of limitations runs from that date." Smolker Supp. Letter Br. p. 4. To the extent Mr. Smolker is arguing that his MMWA claim was based upon Grace's breach of an implied warranty of merchantability, he himself appears to admit that the statute of limitations runs from the date of sale. The only sales mentioned in the Fifth Amended Cross Complaint are the sale of Syloid to Termite Control, which necessarily had to have occurred prior to October 1996, and the sale of Termite Control's extermination services to Pacific Villas, which of course, had to have occurred prior to October 1996. Therefore, even if the statute of limitations for the MMWA did apply, by Mr. Smolker's own admission, the four year statute of limitations would have expired no later than October 2000, long before the petition date. Frankly, it is not at all clear from any of the materials on the record the basis for Mr. Smolker's purported MMWA claim, but to the extent it is based upon the implied warranty of merchantability, he essentially admits that the claim would have expired prepetition. To the extent his MMWA claim is not actually based on the implied warranty of merchantability, he has not clearly stated what provision Grace violated in connection with the MMWA.

Mr. Smolker also avers that a six year statute of limitations for recovering clean-up costs under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) "might" apply to his claim against Grace pursuant to 42 U.S.C. §§ 9607(a) and 9613(g)(2)(B). CERCLA, also known as the Superfund statute, was enacted to address serious environmental and health risks posed by industrial pollution, to promote the timely clean-up of hazardous waste sites, and to ensure the costs of clean-up efforts are borne by those responsible for the contamination. *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1345 (2020).

Section 107(a) of the CERCLA, codified at 42 U.S.C. § 9607(a), renders four broad classes of potentially responsible parties strictly liable for environmental contamination as follows:

[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

33

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
(D) the costs of any health assessment or health effects study carried out under section 104(i) [42 USCS § 9604(i)].
The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). *Trinity Indus. V. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 708-09 (W.D. Pa. 2014).

Pursuant to 42 U.S.C. § 9613(b), subject to certain exceptions not applicable to this case, "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act, without regard to the citizenship of the parties or amount in controversy." Under, 42 U.S.C. § 9613(g)(2)(B), civil actions for recovery of costs referred to in § 9607 must be commenced within six years after initiation of physical on-site construction of a remedial action. "Necessary costs of response" referenced in § 9607(1)-(4)(B) are those costs necessary to the containment and clean-up of hazardous releases. *Redland Soccer Club, Inc., v. Dep't of the Army of the United States,* 55 F.3d 827, 850 (3d Cir. 1995). A plaintiff who incurred no costs except for litigation expenses prior to the filing of a CERCLA action has incurred no "necessary costs of response" under § 9607(a). *Id.* (citing *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1476 (D. Colo. 1991)).

Ultimately, the Fifth Amended Cross Complaint in the California State Court Litigation, which does not reference CERCLA, could not have initiated an action under CERCLA because federal courts have exclusive original jurisdiction over all controversies arising under the Act. 42 U.S.C. § 9613(b); *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.,* 804 F. Supp. 2d 877, 883 (N.D. Ind. 2011) ("It is undisputed that a CERCLA claim cannot be brought in state court. State courts do not have competent jurisdiction over, or concurrent jurisdiction with, claims within the exclusive jurisdiction of the federal courts…") (internal citations omitted); *City of Ann Arbor v. Gelman Scis.,* CIVIL ACTION NO. 05-CV-73100-DT, 2006 U.S. Dist. LEXIS 115685, at *6 (E.D. Mich. March 10, 2006) ("federal courts have exclusive jurisdiction over CERCLA claims."); *Waterville Indus. V. Fin. Auth. Of Me.,* 758 A.2d 986, 991 (Me. 2000) ("Jurisdiction in CERCLA cases is vested exclusively in the federal courts. Accordingly, Waterville's only forum for its CERCLA claims was the federal district court."). Additionally, nowhere in Claim 392 did Mr. Smolker indicate that he had a CERCLA claim against Grace or state facts in support of one. Therefore, there is no indication that the statute of limitations on a CERCLA claim would apply to a claim objection based on Claim 392.

To be clear, the Court is not speculating upon the validity of the aforementioned claims. It is only saying that there is no basis to conclude that Claim 392 itself, which by all accounts is based solely upon the California State Court Litigation, is based upon the aforementioned claims for the reasons the Court discussed. Mr. Smolker's speculation that certain causes of action "might" apply to Claim 392 is not sufficient to defeat summary judgment, especially when facially, neither Claim 392 nor the Fifth Amended Cross Complaint in the California State Court Litigation, ever mentions any of these claims. *See Wells Fargo Bank, N.A. v. Homebanc Corp., (In re Homebanc Mortg. Corp.)*, Bankruptcy No. 07–11079 KJC, Adversary No. 07–51740 KJC, 2013 WL 211180, at *6 (Bankr. D. Del. Jan. 18, 2013) ("Once the moving party has carried its initial burden, the opposing party 'must do more than simply show there is some metaphysical doubt as to the material facts.' Summary judgment cannot be avoided by introducing only a 'mere scintilla of evidence,' or by relying on 'conclusory allegations, improbable inferences and unsupported speculation.' 'Brash conjecture coupled with earnest hope that something concrete will materialize is insufficient to block summary judgment.'"). As such, their statutes of limitations are not relevant to this Summary Judgment Motion regarding whether Claim 392 should be disallowed or not. Accordingly, that Grace did not anticipate claims which Mr. Smolker never previously mentioned and which appear nowhere in Claim 392 or the

*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.,* 114 Cal. App. 4th 1135, 1150 (Cal. Ct.

App. 2004). Products liability claims brought under either negligence or strict liability theories

are subject to delayed accrual under the discovery rule. *Fox,* 35 Cal. 4th at 809.

Assuming arguendo that the discovery rule applies to Mr. Smolker's negligence and strict

liability claims in the California State Court Litigation, his admissions in his First Amended

Cross Complaint in connection with the negligence and strict liability claims reflect that as of the

date he served it upon certain cross-defendants, November 4, 1997, he was aware of Grace's

alleged wrongdoing in failing to exercise reasonable care in manufacturing and distributing an

inherently dangerous product, Syloid, to Termite Control for use in the termite extermination of

the Complex without warning of the defects in violation of state and federal law, and that this

conduct was the alleged cause of extensive harm allegedly suffered by Mr. Smolker detailed in

the First Amended Cross Complaint, including injuries to his health, mental pain and suffering,

lost earnings and earning capacity, and damage to his real and personal property. *See* First Am.

Cross Compl. ¶¶ 3, 4, 16, 17, 23, 24, 26, 28, 35, 36, 37, 38, 42, 44, 47, 49, 53, 54. Thus, giving

Mr. Smolker the benefit of the discovery rule, his admissions in the First Amended Cross

Complaint reflect that there is no genuine dispute that the *absolute latest* he suspected that Grace

had committed actionable wrongdoing against him which caused him injury was by November 4,

California State Court Litigation is of no matter and has no bearing on whether Grace satisfied its burden of
demonstrating there is no genuine factual dispute regarding the enforceability of Claim 392.
　　It is also important to remember that as the claimant, Mr. Smolker generally bears the initial burden to
allege facts sufficient to support a legal liability based on any claims he has. He simply has not alleged facts in
Claim 392 sufficient to demonstrate that it is based on these new causes of action he mentioned for the first time on
the record in his supplemental brief.
　　Finally, Mr. Smolker mentions for the first time on the record in his supplemental brief a case from the
California Supreme Court, *Pooshs v. Philip Morris USA, Inc.,* 51 Cal. 4th 788 (2011), which held that when a later-
discovered latent disease is separate and distinct from an earlier-discovered disease, the earlier disease does not
trigger the statute of limitations for a lawsuit based on the later disease. *Pooshs,* 51 Cal.4th at 803. *See* Smolker Decl.
on Ex. 18-41 ¶ 15. Mr. Smolker appears to suggest that due to the discovery rule, statutes of limitations on claims he
may have against Grace based on a new injury he discovered in May 2019 have not expired and, in the absence of
the Plan's injunction, he could have filed a new lawsuit against Grace on the basis of this new injury. This is
completely irrelevant to the Summary Judgment Motion on Claim 392.

1997, the day he served it. Accordingly, the statute of limitations on his various claims, including for strict liability and negligence, would have accrued and started running on that date *at the very latest*. Therefore, the statute of limitations on his negligence and strict liability causes of action for personal injury would have expired on November 4, 1998, long before the Petition Date. The statute of limitations on his negligence and strict liability causes of action for property damage would have expired on November 4, 2000, also long before the Petition Date.

Once a case is dismissed for lack of prosecution, the expiration of the statute of limitations would bar a plaintiff from re-filing those same claims. *See In re Scotia Inn, Inc.,* Nos. 07-20027, 07-20029, 2009 WL 1076811, at *3 (Bankr. S.D. Tex. Feb. 20, 2009) ("the Lancelin Claim was dismissed by the California Superior Court over seven years ago. Although such dismissal was without prejudice, Mr. Lancelin did not re-assert or prosecute his claim against the Debtors until after the commencement of these cases by virtue of the filing of the Lancelin claim...the Lancelin Claim is now barred by all applicable statutes of limitations as a matter of law."); *Franklin Capital Corp. v. Wilson,* 148 Cal. App. 4th 187, 212 n.24 (Cal. Ct. App. 2007) ("Even a dismissal without prejudice might still adversely affect or 'prejudice' the client if the statute of limitations had run."); *Eaton Hydraulics Inc. v. Continental Casualty Co.,* 132 Cal. App. 4th 966, 974 n.6 (Cal. Ct. App. 2005) ("a dismissal 'without prejudice' necessarily means without prejudice to the refiling of a new action on the same allegations, so long as it is done within the period of the appropriate statute of limitations."); *Flynn v. Page,* 218 Cal. App. 3d 342, 347 (Cal. Ct. App. 1990) (statutes of limitations on causes of action dismissed pursuant to Cal. Code Civ. Proc. § 583.310 ordinarily could not be revived after expiration); *Stephan v. American Home Builders,* 98 Cal. Rptr. 354, 355 (Cal. Ct. App. 1971) ("the prior order of dismissal for failure to prosecute is neither res judicata nor a bar to the second action insofar as

36

the causes of action therein alleged are not barred by the statute of limitations…Generally, the practical effect of a judgment of dismissal for failure to prosecute…will be to bar further proceedings because the statute of limitations will have run on the cause of action.").

Ultimately, based upon the foregoing, Grace is entitled to judgment as a matter of law because there is no genuine factual dispute that due to the dismissal of Mr. Smolker's causes of action against Grace from the California State Court Litigation and the prepetition expiration of their statutes of limitations, Claim 392, which is based solely upon the California State Court Litigation, is unenforceable against Grace. Therefore, 11 U.S.C. §§ 502(b) and 558 mandate its disallowance.

### E. Because Claims 387 and 4070 Are Unenforceable Under California Law, Sections 502(b) and 558 of the Bankruptcy Code Require Their Disallowance.

Claims 387 and 4070 are based upon potential liability Termite Control and Mr. Morris could have faced as a result of the California State Court Litigation. Thus, once the causes of action against Termite Control and Mr. Morris were dismissed from that litigation, no basis remained for Claims 387 and 4070 unless, at the very least, Mr. Smolker could nevertheless potentially enforce the causes of action underlying that litigation against Termite Control and Mr. Morris. Based upon the record before the Court, Grace has met its burden of establishing that there is no genuine dispute that that is not the case since the statutes of limitations expired on those causes of action which have not otherwise been mooted.

The record reflects that as of the Petition Date, the only remaining causes of action against Termite Control and Mr. Morris were for personal injury and property damage in connection with strict liability, negligence, trespass, assault and battery, and abatement of nuisance. Smolker Jan. Resp. Ex. 2; Superior Court Docket.

37

Under the former section 340(3) of the California Code of Civil Procedure, which applies to personal injury actions accruing prior to 2003 based on causes of action such as negligence, strict products liability, and assault and battery, "an action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" must be brought within one year.[21] *See Fox*, 35 Cal. 4th at 808-09 ("Under the statute of limitations applicable to this case, a plaintiff must bring a cause of action for products liability within one year of accrual."); *Howe*, 262 Cal. App. 2d at 339 ("the one-year limitation of subdivision 3 of section 340 of the Code of Civil Procedure is applicable to the claims for damages for personal injuries…predicated on negligence…"); *Sonbergh v. MacQuarrie*, 112 Cal. App. 2d 771, 773 (Cal. Dist. Ct. App. 1952) (Cal. Code Civ. Proc. § 340(3) requires an action for assault, battery, or injury to one caused by the wrongful act or neglect of another to be commenced within one year.). Under section 338(b)-(c) of the California Code of Civil Procedure, actions for trespass upon or injury to real or personal property based on causes of action such as negligence, strict products liability, and trespass must be brought within three years of their accrual. *See Fireman's Fund*, 114 Cal. App. 4th at 1150.

Assuming arguendo that the discovery rule applies to the aforementioned causes of action, Mr. Smolker's admissions in the First Amended Cross Complaint reflect that he was aware as of the date he served it on certain cross defendants of all the material facts underlying his remaining causes of action against Termite Control and Mr. Morris. Namely, he was aware that Termite Control, owned by Mr. Morris, allegedly committed wrongdoing by (1) negligently and wrongfully applying an inherently unsafe pesticide, Syloid, in the Complex and Mr.

---

[21] Although California's statute of limitations for personal injury actions was extended from one to two years pursuant to Cal. Code Civ. Proc. 335.1, effective January 1, 2003, the two-year statute of limitations does not apply retroactively to claims that accrued prior to January 1, 2003. *Kamar v. Krolczyk*, No. 1:07-CV-0340 AWI TAG, 2008 WL 2880414, at *5 (E.D. Cal. July 22, 2008).

Smolker's unit, in violation of various state and federal laws without Mr. Smolker's consent and without exercising reasonable care; (2) by holding Termite Control out as a general contractor; (3) by misrepresenting the safety of Syloid and whether its use was approved by the Environmental Protection Agency; and (4) by abandoning remediation actions in Mr. Smolker's unit, causing various injuries to his health, property, earnings, and earning capacity. First Am. Cross Compl. ¶¶ 3, 4, 10, 16, 17, 18, 20, 23, 24, 26, 28, 51, 52, 53, 54, 56; Fifth Am. Cross Compl. ¶¶ 66, 67, 74, 95, 97, 98, 99, 101, 102, 105, 106, 112, 114, 115.

Thus, based on Mr. Smolker's admissions in the First Amended Cross Complaint, there is no genuine dispute that the absolute latest he suspected Termite Control and Mr. Morris had committed actionable wrong against him which caused injury was November 4, 1997, the day he served the First Amended Cross Complaint. Accordingly, the statute of limitations on his various claims would have started running on that date *at the very latest*. Based upon the foregoing, the statute of limitations on his negligence, strict liability, and assault and battery causes of action for personal injury would have expired on November 4, 1998. The statute of limitations for his negligence, strict liability, and trespass property damage claims would have expired on November 4, 2000, long before the Petition Date. As discussed *supra* in connection with Claim 392, once a case is dismissed for lack of prosecution, the expiration of the statute of limitations would bar a plaintiff from re-filing those same claims.

With regard to the claim for abatement of a continuing nuisance against Termite Control and Mr. Morris, under California law, "anything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." *Ghazaryan v. Shabazian*, No LA CV17-08245 JAK (SSx), 2018 U.S. Dist. LEXIS 226891, at *19 (C.D. Cal. Aug. 2, 2018) (citing

Cal. Civ. Code § 3479). The elements of an action for private nuisance are (1) the plaintiff must prove an interference with his use and enjoyment of his property; (2) invasion of the plaintiff's interest in the use and enjoyment of the land must be substantial; and (3) the interference with the protected interest must not only be substantial, but it must also be unreasonable. *Mendez v. Rancho Valencia Resort Partners, LLC*, 3 Cal. App. 5th 248, 262-63 (Cal. Ct. App. 2016).

If a nuisance may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance is abated. *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862, 869 (1985). The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as one caused by noise, vibration or foul odor. *Id.*

Mr. Smolker admits that he permanently moved out of his unit in February 2002. Smolker Aug. Resp. p. 6. Mr. Smolker's undisputed move out of the unit and away from the alleged nuisance years ago appears to have mooted this claim. Since no nuisance caused by Termite Control is interfering with his enjoyment of his property, he would have no basis upon which to refile this claim. There is no basis to conclude that he would have standing to attempt to abate a nuisance at a property where he no longer resides.

Therefore, based upon the foregoing, Grace is entitled to judgment as a matter of law because there is no genuine dispute that due to the dismissal of Mr. Smolker's causes of action against Termite Control and Mr. Morris from the California State Court Litigation, the prepetition expiration of various applicable statutes of limitations, and the mootness of the nuisance cause of action, Termite Control and Mr. Morris would have no basis for any claim against Grace related to this litigation. Accordingly, Claims 387 and 4070, which are based upon

the California State Court Litigation, are unenforceable against Grace. Therefore, §§ 502(b) and 558 of the Bankruptcy Code mandate their disallowance.

## IV.    CONCLUSION

Based upon the foregoing, the Court sustains Grace's Thirty-Seventh Omnibus Objection in its entirety.

Date: March 16, 2021

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

Case No. 01-01139 (AMC) (Jointly Administered)

I am a resident of the State of California, over the age of eighteen years, and not a party to this action. My business address is 16055 Ventura Blvd., Suite 525, Encino, CA 91436. On March 26, 2021, I served the following attached document:

**CREDITOR GARY S. SMOLKER'S NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE THE APPEAL HEARD BY THE UNITED STATES DISTRICT COURT WITH ATTACHED ORDER (FILED ON MARCH 16, 2021) APPEALED FROM AND ACCOMPANYING OPINION**

 **X** VIA MAIL, by placing a true copy of the documents listed above in a sealed envelope with postage fully prepaid in United States mail in the State of California, at Encino, California, addressed as set forth below:

Law Offices of Roger Higgins, LLC, Attention Roger Higgins, Esq., 516 North Ogden Ave., Suite 136, Chicago, Illinois 60642

Pachulski Stang Ziehl & Jones, LLP, Attention James E. O'Neill, Esq. and Laura Davis Jones, Esq., 919 North Market Street, 17th floor, Wilmington, Delaware, 19899-8705

**X** BY FEDERAL EXPRESS: ORGINAL SENT FOR FILING WITH THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE VIA FEDERAL EXPRESS OVERNIGHT MAIL

United State Bankruptcy Court for the District of Delaware
Office of the Clerk
824 Market Street
Wilmington, Delaware 19801

Executed on March 26, 2021at Encino, California.  I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Sabrina Jones