## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (AMC) |
| | ) (Jointly Administered) |
| Reorganized Debtor. | ) |
| | ) **Hearing Date: August, 26, 2021, at 10:00 a.m.** |
| | ) **Objection Deadline: July 27, 2021** |
| | ) |

**MOTION FOR AN ORDER: (I) ENFORCING AGAINST RUNE KRAFT THE PLAN AND CONFIRMATION CLAIM PRECLUSION BARS TO POST-BAR DATE ASSERTION OF ADMINISTRATIVE EXPENSE CLAIMS; AND (II) COMPELLING RUNE KRAFT TO DISMISS WITH PREJUDICE HIS COMPLAINT AGAINST THE REORGANIZED DEBTOR IN THE MATTER CAPTIONED <u>KRAFT V. CHEVRON CORP. ET AL.</u>, CASE NO. 2:21-CV-00575-DJH (THE "<u>ARIZONA-CHEVRON LITIGATION</u>")**

Rune Kraft has violated the discharge and injunctive provisions of the Plan and Confirmation Order, which preclude and forever bar claimants from asserting Administrative Expense Claims and other Plan Claims arising before the February 3, 2014 Effective Date, by naming Grace as a defendant in the complaint (the "<u>Complaint</u>") commencing the Arizona-Chevron Litigation.[2]  Mr. Kraft's Complaint seeks to recover, by its deceptive and incomplete description of a transaction alleged to have involved Grace in December 2006 (the "<u>Complaint's Asserted December 2006 Grace Transaction</u>"), a distribution of estate assets from a long-closed chapter 7 case (the "<u>Realia Chapter 7 Case</u>") that was made to the Reorganized Debtor in

---

[1]  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "<u>Grace</u>") is the sole remaining "<u>Reorganized Debtor</u>," and Case No. 01-1139 is the sole remaining open chapter 11 case (the "<u>Grace Chapter 11 Case</u>").  The Grace Chapter 11 Case and the 61 now-closed jointly administered chapter 11 cases are referred to herein as the "<u>Grace Chapter 11 Cases</u>."

[2]  Capitalized terms not defined herein shall have the meaning ascribed to them in, as the case may be, the Shpigelman Declaration (as defined in ¶ 3) or in the *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] (as it may be amended or supplemented, the "<u>Plan</u>").

December 2006 pursuant to a final and non-appealable order entered in that case (the "December 2006 Court-Ordered Distribution").   *Order Authorizing Trustee to Make Distribution of Net Proceeds from Sale of Estate Property*, entered on December 22, 2006 [Docket no. 148], *In re Realia*, Case No. 2:05-bk-15022-RTB (Bankr. D. Ariz. December 13, 2005) (the "December 2006 Estate Asset Distribution Order"), a copy of which is attached to the Shpigelman Declaration as Exhibit D.[3]

To be clear, Mr. Kraft's claims arising from the Complaint's Asserted December 2006 Transaction are unequivocally and knowingly frivolous.   The evidence adduced by the Reorganized Debtor and the Complaint itself establish that Mr. Kraft actually knew, or should have known, of the Realia Chapter 7 Case, and therefore knew, or should have known, of the December 2006 Estate Asset Distribution Order.   The Complaint and other evidence therefore establish that Mr. Kraft knew or should have known (based upon his duty to investigate) that, as of the date that he filed the Complaint, the Complaint's Asserted December 2006 Transaction and the December 2006 Court-Ordered Distribution were one and the same transaction.

Mr. Kraft's patently frivolous claims against Grace in his Complaint are consistent with his well-documented history of abusive litigation tactics over the past decade or more in several related state and federal court actions in California, Arizona, and New Mexico.   Moreover, those abusive litigation tactics have led many of those courts to impose sanctions and filing restrictions

---

[3]    The now-closed Realia Chapter 7 Case was filed as a chapter 11 case in the United States Bankruptcy Court for the District of Arizona (the "Arizona Bankruptcy Court").   The "Realia Chapter 7 Docket Items" comprise the docket in the Realia Chapter 7 Case (the "Realia Chapter 7 Docket"), *North American Serv. Holdings, Inc. v. Erick M. Black (In re Realia, Inc.)*, No. AZ-11-1334-JuPaD, 2012 Bankr. LEXIS 1083 (B.A.P. 9th Cir. 2012) (the "NASH-Realia Appeal"), the *Trustee's Amended Second Application for Authority to Make Distribution of Net Proceeds From Sale of Estate Property*, filed on November 22, 2006 [Docket no. 144], *In re Realia, Inc.*, Case No. 2:05-bk-15022-RTB (Bankr. D. Az. December 13, 2005) (the "Distribution Application"), and the December 2006 Estate Asset Distribution Order.   Each Realia Chapter 7 Docket Item is attached as an exhibit (A through D) to the Shpigelman Declaration.

on him.  Even worse, they have led at least two of those courts to designate him as a "vexatious litigant."[4]

It should thus come as no surprise that Mr. Kraft has ignored repeated requests in the past few weeks from counsel for the Reorganized Debtor to file a pleading in the Arizona-Chevron Litigation seeking entry of an order dismissing the Reorganized Debtor with prejudice as a defendant.  Indeed, despite his Complaint having utterly no merit as to the Reorganized Debtor, Mr. Kraft has repeatedly and duplicitously asserted in e-mail correspondence that the Plan and Confirmation Order discharge and claim preclusion and bar provisions do not apply to the Complaint, based upon his objectively false assertion that the Complaint's Asserted December 2006 Grace Transaction was fraudulent and violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 *et seq*. ("RICO").

Not only is Mr. Kraft categorically wrong as a matter of fact and law, he has imposed considerable costs on the Reorganized Debtor in responding to his Complaint.  Worse, he is now consuming the valuable time and attention of this Court in disposing of his unequivocally frivolous and abusive naming of the Reorganized Debtor as a defendant in the Arizona-Chevron Litigation.

The Reorganized Debtor therefore respectfully requests the Court enter an order in substantially the form attached hereto as Exhibit A (the "Order") finding that the December 2006 Court-Ordered Distribution is the same transaction as the Complaint's Asserted December 2006 Grace Transaction, finding that claims arising from or related to that transaction are barred by the Plan and Confirmation Order, and ordering Mr. Kraft to filing a pleading (a "Dismissal Pleading")

---

[4]    The Reorganized Debtor has contemporaneously herewith filed an "Appendix" in support of this Motion to Enforce.  The Appendix summarizes various relevant aspects of the multiple litigation matters in which Mr. Kraft has been involved as a party over the past decade or so, citing to certain opinions and orders drawn from those litigation matters, copies of which are attached to the Appendix as Exhibits A-T.  The *Appendix's* exhibits are referred to herein as the "Other Court Docket Items."

no later than seven (7) days from the date entry of this Order seeking an entry of an order by the Arizona District Court dismissing the Reorganized Debtor with prejudice from the Arizona-Chevron Litigation (the "<u>Dismissal Order</u>").

In support of this Motion, the Reorganized Debtor states:

<u>JURISDICTION</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.[5]  This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for this Motion are 11 U.S.C. §§ 105, 503, and 1141, Fed. R. Bankr. P. 3003, 3020, 9006, 9008, and 9014, and Del. Bankr. LR 3003-1, 9006-1, 9011-4, and 9013-1.

<u>FACTUAL PREDICATE</u>

## I.      THE SHPIGELMAN DECLARATION

3.      The *Declaration of Viktoriya M. Shpigelman in Support of the Reorganized Debtor's Motion for an Order: (I) Enforcing Against Rune Kraft the Plan and Confirmation Claim Preclusion Bars to Post-Bar Date Assertion of Administrative Expense Claims; and (II) Compelling Rune Kraft to Dismiss With Prejudice His Complaint Against the Reorganized Debtor in the Matter Captioned <u>Kraft v. Chevron Corp. et al.</u>, Case No. 2:21-cv-00575-DJH (the "<u>Arizona-Chevron Litigation</u>")*, filed contemporaneously herewith (the "<u>Shpigelman Declaration</u>"), is incorporated by reference as if fully set forth herein.

---

[5]      The Reorganized Debtors confirm their consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

II.    THE GRACE CHAPTER 11 CASES AND PLAN CONFIRMATION AND PLAN
       CONSUMMATION

4.    On April 2, 2001 (the "Petition Date"), Grace and 61 affiliated entities commenced the Grace Chapter 11 Cases.[6]  By an order dated April 22, 2002, Docket No. 1963 (the "Bar Date Order"), the Bankruptcy Court established a bar date of March 31, 2003, (the "Claims Bar Date") as the last date for filing proofs of claim for all prepetition non-asbestos Claims.  In accordance with the Bar Date Order, the Debtors published notice of the Claims Bar Date in a variety of newspapers, magazines, and other publications in the summer of 2002.  *Affidavit of Katherine Kinsella*, filed April 5, 2006 [Docket No. 12206].

5.    On February 27, 2009, the Debtors filed their Plan.  [Docket No. 20872].  In March and April 2009, the Debtors published extensive court-approved notice of the confirmation hearing, including the discharge and injunctive provisions of the Plan and the then-proposed form of Confirmation Order (the "Confirmation Hearing Notice").  *Affidavit of Publication*, filed June 3, 2009 [Docket No. 21974].

6.    In early 2011, this Court confirmed the Plan.  *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010*, dated January 31, 2011 [Docket No. 26155], and the *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010*, dated February 15, 2011 [Docket No. 26289] (together, the "Confirmation Order").  On February 3, 2014 (the "Effective Date"), the Plan was substantially consummated.  *See Notice of Occurrence of the Effective Date of the First Amended Joint Plan of*

---

[6]    Grace and its 61 affiliated entities referred to herein as the "Debtors" for all events occurring prior to the February 3, 2014 Effective Date (as that term is defined herein).

*Reorganization Under Chapter 11 of The Bankruptcy Code of W. R. Grace and Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010*, dated February 13, 2014 [Docket No. 31732] (the "Effective Date Notice"). The Effective Date Notice set an Administrative Claims Bar Date of May 5, 2014. The Confirmation Order is a final order. *See Notice of Satisfaction or Waiver of Conditions to Occurrence of Effective Date of Plan*, filed February 3, 2014 [Docket No. 31700].

7.      On February 21 and 24, 2014, pursuant to the Confirmation Order, the Effective Date Notice was published in several national publications. [Docket No. 31821]; [Docket No. 31819]; [Docket No. 31820].

### III.    MR. KRAFT AND THE ARIZONA-CHEVRON LITIGATION

#### A.      Filing and Service of Complaint

8.      On April 2, 2021, Mr. Kraft filed his Complaint, which named the Reorganized Debtor as a defendant, thereby commencing the Arizona-Chevron Litigation. Shpigelman Decl. Exh. F. The first page of the Complaint is stamped as follows:

> THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT. REFERENCE L.R. Civ. P. 5.4

Complaint. *See* L.R. Civ. P. 5.4, Shpigelman Decl. Exh. E.

9.      Complaint ¶ 2 describes Mr. Kraft as the sole plaintiff. Mr. Kraft uses the entity "Kraft Legal" in the address block of the Complaint. Kraft Legal maintains a website, https://kraft.legal/ (accessed by counsel for the Reorganized Debtor on June 25, 2021). The Kraft Legal website does not list any employees, whether attorneys or otherwise. *Id. passim*. Complaint

¶ 2 states in relevant part that "Realia, Inc., a Delaware corporation," and "North American Service Holdings, Inc., a Delaware corporation, … assigned their claims related to this matter to Kraft." *Id*. at ¶ 2 (the entities referred to therein being the "<u>Assignor Entities</u>").

10.     On May 24, 2021, Grace executed a waiver of service regarding the Complaint. *Waiver of Service*, Shpigelman Decl. <u>Exh. H</u>.  The waiver of service gave Grace 60 days from that date, or July 23, 2021, to respond to the Complaint.  In the communication executing the waiver of service, counsel for the Reorganized Debtor requested Mr. Kraft out of an abundance caution confirm that the Reorganized Debtor did indeed have until July 23, 2021, to "move, answer or otherwise respond to the Complaint," which Mr. Kraft did.  R. Roman e-mail correspondence and I. Aronson e-mail correspondence, dated May 24, 2021, Shpigelman Decl. <u>Exh. I</u>.

**B.     The Complaint's Allegations Against the Reorganized Debtor**

***1.     The Complaint Does Not Explain How the Claims of the Assignor Entities Arose***

11.     The Complaint asserts that the Assignor Entities assigned their claims to Mr. Kraft. Complaint at ¶ 2.  The Complaint does not state what those claims are, nor does it state how or when they arose as to the Reorganized Debtor.  Finally, the Complaint does not state when or how those claims were assigned to Mr. Kraft.  *Id. passim*.

***2.     The Complaint's Allegations Against the Reorganized Debtor***

12.     The Complaint is quite threadbare in its assertions regarding Grace:

> W.R. Grace & Company, a Connecticut company, is based in Columbia, Maryland. The Defendant has received property it had no lawful rights to receive from a case under title 11, which are offenses involving fraud connected with a case under title 11 and "specified unlawful activity" listed in section 18 U.S.C. § 1961(D).

Complaint at ¶ 8.  This is the Complaint's first reference to the Complaint's Asserted December 2006 Grace Transaction.  The paragraph is entirely bereft of any particularity as to why the

Reorganized Debtor had no "lawful rights" to receive "property … from a case under title 11." *Id.* There is no explanation, whether in Complaint ¶ 8 or elsewhere therein, that specifically identities the "case under title 11" from which Grace itself allegedly received a payment.[7]

13.    Complaint ¶ 8 does not proffer any factual allegations in support of the assertion that fraud occurred during the alleged payment transaction.  This unsupported fraud allegation appears to be the predicate for Complaint ¶ 8's assertion that the Complaint's Asserted December 2006 Grace Transaction involved a "specified unlawful activity' listed in section 18 U.S.C. § 1961(D)." *Id.*  There is no other particularized reference to what any such "specified unlawful activity" might be as to Grace and the Complaint's Asserted December 2006 Grace Transaction.

14.    The next allegation specifically naming Grace is similarly bereft of particularity. In Complaint § 5.1 ("Mail Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1341)"), "Predicate Act # 8" refers to the Complaint's Asserted December 2006 Grace Transaction in relevant part:

> Mail matter regarding Plaintiffs business or property containing funds obtained from defrauding Plaintiff of property sent and delivered via United States Postal Service from the 11 U.S.C. proceeding court in Phoenix to W.R. Grace in Columbia, MD

*Id.*  As with Complaint ¶ 8, the allegation does not explain the "11 U.S.C. proceeding court in Phoenix" referenced in "Predicate Act # 8" and elsewhere.  There is also no proffer of factual allegations describing how "funds [were] obtained from defrauding Plaintiff of property," nor is

---

[7]    As discussed more fully below in ¶¶ 26-29, there is a reference in Complaint ¶ 24 to a case number that matches the long-closed Realia Chapter 7 Case.  There is also evidence from Mr. Kraft's own Complaint and the Realia Chapter 7 Docket that Mr. Kraft was privy to the Realia Chapter 7 Case, and thus actually knew, or should have known, of the 2006 Court-Ordered Distribution apparently made pursuant to the December 2006 Estate Asset Distribution Order—and the fact that this distribution is the same transaction as the Complaint's Asserted December 2006 Grace Transaction.

there anything in the Complaint to indicate any knowledge, intent, or participation, let alone "willful participation" by the Reorganized Debtor in any fraudulent activity.

15.     The Complaint's next allegation about the Complaint's Asserted December 2006 Grace Transaction may be found in Complaint § 5.2 ("Money Laundering. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1956(a))"):

> W.R. Grace caused funds to be transferred from the 11 U.S.C. proceeding court in Phoenix to W.R. Grace in Maryland, intending to promote specified unlawful activity.

*Id.* at Predicate Act # 37.  Predicate Act # 38 states:

> A payment related to the fraud connected with a case under title 11 received from the 11 U.S.C. proceeding court in Phoenix was deposited by W.R. Grace in Maryland, intending to promote specified unlawful activity.

*Id*.  The references to "specified unlawful activity" are unsupported, as discussed above in reference to Complaint ¶ 8 and Predicate Act # 8.  The reference to "11 U.S.C. proceeding court in Phoenix" is also not explained, as discussed above in reference to Predicate Act # 8.

16.     The Complaint next refers to the Complaint's Asserted December 2006 Grace Transaction in "Predicate Act # 74":

> A payment related to the fraud connected with a case under title 11 received from the 11 U.S.C. proceeding court in Phoenix was deposited by W.R. Grace in Maryland, which was a monetary transaction in criminally derived property that is of a value greater than $10,000 and was derived from specified unlawful activity. The funds transacted were criminally derived, commingled or not.

*Id*. at § 5.3 ("Monetary Transactions in Property Derived from Specified Unlawful Activity. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1957(a))"), at p. 28.  As discussed above in reference to Complaint ¶ 8, there are no factual allegations to support the fraud assertion.  There is likewise nothing in the Complaint to substantiate the allegation that the monetary transaction involved "criminally derived property."  The "11 U.S.C. proceeding court in Phoenix" reference

in Predicate Act # 74 is as bereft of substantiation as earlier, albeit slightly differently worded

references to a "case under title 11."

17.    The Complaint thereafter refers to the Complaint's Asserted December 2006 Grace

Transaction in "Predicate Act # 93":

> A payment related to the fraud connected with a case under title 11
> received from the 11 U.S.C. proceeding court in Phoenix was
> deposited by W.R. Grace in Maryland knowingly executing a
> scheme to defraud a financial institution.

*Id*. at § 5.4 ("Bank Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1344(1))"), at p. 31.

The reference to "fraud" in "Predicate Act # 93" suffers from the same lack of particularity as

earlier allegations involving Grace.  "Predicate Act # 93" uses the term "knowingly" without

providing any support for the assertion.  There is nothing in the Complaint to support the allegation

that a financial institution was defrauded, whether knowingly or otherwise.

18.    The Complaint's final allegation about the Complaint's Asserted December 2006

Grace Transaction is "Predicate Act #107":

> A payment related to the fraud connected with a case under title 11
> received from the 11 U.S.C. proceeding court in Phoenix was
> deposited by W.R. Grace in Maryland, intending to obtain bank
> property and obtaining bank property.

*Id*. at § 5.5 ("Bank Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1344(2))"), at p. 33.

As with earlier assertions that the Complaint's Asserted December 2006 Grace Transaction

involved fraud, there is nothing in "Predicate Act #107" to support the fraud allegation in

"Predicate Act #107."  Finally, "Predicate Act #107" refers to "intending to obtain bank property

and obtaining bank property."  It is unclear what party allegedly performed those asserted acts.

Moreover, there are no factual assertions in the Complaint to support the term "intent."  The term

"bank property" is similarly bereft of factual allegations to support any degree of particularity.

Complaint at pp. 33-35 (references to "intending to obtain bank property").

### 3.    The Realia Chapter 7 Case

19.     As discussed above, the Complaint does not identify a particular court proceeding when it referred to a "title 11 proceeding" or a "case under title 11" in reference to the Complaint's Asserted December 2006 Grace Transaction.  The Complaint does, however, state in ¶ 24 that the California Board of Equalization "received payments it was not entitled to from a case under title 11, Case No. 2:05-bk-15022-RTB."  *Id*. at ¶ 24.  The Complaint does not further identify the court in which this matter was allegedly pending, nor does it furnish a caption for that case.  *Id*. *passim*.

20.     On information and belief, based in part on multiple references in the Complaint to a "11 U.S.C. proceeding court in Phoenix," the Complaint ¶ 24 case number, the judge's initials, and the Complaint's allegations as to Grace, the Complaint's references to a "title 11 proceeding" or a "case under title 11" correspond to the now-closed Realia Chapter 7 Case, which had been filed in the Arizona Bankruptcy Court.  *See* Realia Chapter 7 Docket, Shpigelman Decl. Exh. A.  The Realia Chapter 7 case commenced under chapter 11, but was subsequently converted to chapter 7 on December 13, 2005.  Realia Chapter 7 Docket.  The debtor entity in the Realia Chapter 7 Case has the same name as Realia, Inc. ("Realia"), one of the Assignor Entities listed in Complaint ¶ 2.

21.     There are several published opinions associated with the Realia Chapter 7 Case.  One such opinion, the NASH-Realia Appeal opinion (Shpigelman Decl. Exh. B), arose from an adversary proceeding filed in connection with the Realia Chapter 7 Case, captioned *Eric M. Black, LLC, v. North American Service Holdings, Inc.*, no. 2-10-ap-00962 (Bankr. D. Ariz. 2010) (the "NASH-Realia Adversary Proceeding").  The opinion provides considerable background describing the litigious nature of the Realia Chapter 7 Case.  The opinion also states that Mr. Kraft "was the link among the various entities involved in the appeal," and further states that there were "allegations in the record that … [Mr. Kraft] also had controlled Realia."  *Id.* at *4, n.5.  The

appellant in the NASH-Realia Appeal was North American Services Holdings, Inc. ("NASH"), which is also the name of one of the Assignor Entities listed in Complaint ¶ 2. The opinion states that Mr. Kraft controlled NASH. NASH-Realia Appeal opinion at *4, n.5.[8]

22.     On November 22, 2006, after certain property of the Realia Chapter 7 estate had been sold, the chapter 7 trustee filed an application to make distributions of estate assets to several creditors, including a distribution to Grace, which was identified as a "judgment creditor." Distribution Application, Shpigelman Decl. Exh. C.  On December 22, 2006, the Arizona Bankruptcy Court entered the December 2006 Estate Asset Distribution Order, which approved the December 2006 Court-Ordered Distribution to Grace in the "approximate amount of $27,579.60 plus $6.32 per diem."

### 4.     The Reorganized Debtor's Investigation of the December 2006 Court-Ordered Distribution

23.     The Reorganized Debtor is still undertaking an investigation of the December 2006 Court-Ordered Distribution, and it has yet to confirm that any receipt of monies was made in respect thereof.

### C.     Mr. Kraft Was Not a Creditor in the Grace Chapter 11 Cases

24.     Out of an abundance of caution, the Reorganized Debtor conducted a search of its books and records to determine whether Mr. Kraft, Kraft Legal, or any of the Assignor Entities might have had some role in the Grace Chapter 11 Case, whether as creditors, claimants, or otherwise. None of these parties are listed in the Grace Chapter 11 Case-related books and records, and none of them asserted any claim in the Grace Chapter 11 Cases.

---

[8]     The Reorganized Debtor is in the process of adducing the documentary evidence in the record of the NASH-Realia Adversary Proceeding and the designations of the record for the attendant appeal from that adversary proceeding in support of the findings made in the NASH-Realia Appeal opinion at *4, n.5.

**D.    Communication Between the Reorganized Debtor's Counsel and Plaintiff Prior to the Filing of This Motion**

25.    On June 25, 2021, counsel for the Reorganized Debtor sent a letter to Mr. Kraft, requesting Mr. Kraft file a "Dismissal Pleading" in the Arizona-Chevron Litigation, seeking entry of an order of the Arizona District Court dismissing the Reorganized Debtor with prejudice from the Arizona-Chevron Litigation.  Shpigelman Decl. Exh. J.  Later the same day, Mr. Kraft sent counsel e-mail correspondence stating in relevant part: "W.R. Grace & Co. obtained money by fraud and, therefore, not dischargeable in bankruptcy e.g. *In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995)."  R. Kraft e-mail correspondence dated June 25, 2021, Shpigelman Decl. Exhibit K.

26.    Counsel for the Reorganized Debtor responded to Mr. Kraft later the same day, reiterating to him that claims arising from the Complaint's Asserted December 2006 Grace Transaction were Administrative Expense Claims discharged by the Plan, and that Mr. Kraft was required by the Plan and Confirmation Order to file a Dismissal Pleading.  R. Higgins e-mail correspondence dated June 25, 2021, Shpigelman Decl. Exh. L.  Still later that afternoon, Mr. Kraft further responded, requesting a copy of the Confirmation Order and proof of service thereof, and further stating, "[t]his is a RICO action against W.R. Grace & Co. The holding in *Daily* is simple: 'money obtained by fraud is not dischargeable in bankruptcy'."  Mr. Kraft also offered to "interact with … [counsel for the Reorganized Debtor] about the specific facts and issues of law contained in the Complaint."  R. Kraft e-mail correspondence dated June 25, 2021, Shpigelman Decl. Exh. M.

27.    On June 28, 2021, counsel for the Reorganized Debtor responded to Mr. Kraft, supplying him with a copy of the Confirmation Order and pointing out publication notice.  R. Higgins e-mail correspondence dated June 28, 2021, Shpigelman Decl. Exh. N.  Taking Mr. Kraft up on his offer to "interact … about the specific facts … contained in the Complaint," counsel for

the Reorganized Debtor also requested Mr. Kraft send documents relevant to, and in support of, the Complaint's Asserted December 2006 Grace Transaction.  *Id*.

28.    On July 8, 2021, Mr. Kraft sent e-mail correspondence to counsel for the Reorganized Debtor, stating that his e-mail system had been inoperable since June 25, 2021, and asking that any e-mail correspondence be resent.  R. Kraft e-mail correspondence to R. Higgins, dated July 8, 2021, Shpigelman Decl. Exh. O.  Counsel for the Reorganized Debtor responded by attaching the e-mail correspondence originally sent on June 28, 2021.  R. Higgins e-mail correspondence to R. Kraft, dated July 8, 2021, Shpigelman Decl. Exh. P.  Counsel for the Reorganized Debtor once again urged Mr. Kraft to file a Dismissal Pleading.

29.    Mr. Kraft responded, stating that he still had not received the June 28 correspondence from counsel to the Reorganized Debtor.  R. Kraft e-mail correspondence to R. Higgins, dated July 8, 2021, Shpigelman Decl. Exh. Q.  That correspondence further stated:

> I suggest that we stipulate to extending the time for us to interact about the issues that concern you. If necessary, let's file a joint motion for clarification at the relevant court that issued the order.

*Id*.  Counsel for the Reorganized Debtor responded, giving Mr. Kraft until 4:00 pm ET, July 9, 2021, to inform counsel that he intended to file a Dismissal Pleading.  R. Higgins e-mail correspondence to R. Kraft, dated July 8, 2021, Shpigelman Decl. Exh. R.  That e-mail correspondence also reproduced in full the text from the June 28 e-mail correspondence and attached a copy of the Confirmation Order.  *Id*.  Counsel further explained in the correspondence that Mr. Kraft misunderstood the timing and effect of the Grace Chapter 11 Case and the Confirmation Order.

30.    To date, Mr. Kraft has not responded.

## RELIEF REQUESTED

31.    The Reorganized Debtor requests the Court enter the Order substantially in the form

attached hereto as <u>Exhibit A</u>:

- Finding that the December 2006 Court-Ordered Distribution is the same transaction as the Complaint's Asserted December 2006 Grace Transaction;

- Finding that Realia and Mr. Kraft did not have—and could not have had, as of the date on which the Complaint was filed, any cognizable claims arising from or related to the December 2006 Court-Ordered Distribution and the Complaint's Asserted December 2006 Grace Transaction;

- Finding that, to the extent that any such claims could have been or were cognizable, any and all claims which Realia, Mr. Kraft, or any other potential claimant may now have or once have had arising from or related to Grace's receipt of the December 2006 Court-Ordered Distribution and/or the Complaint's Asserted December 2006 Grace Transaction are Administrative Expense Claims, as that term is defined in the Plan;

- Finding that the Plan and Confirmation Order discharged any and all of Mr. Kraft's Administrative Expense Claims arising from or related to the December 2006 Court-Ordered Distribution and the Complaint's Asserted December 2006 Grace Transaction;

- Finding that the Plan and Confirmation Order preclude and bar Mr. Kraft from asserting in any forum whatsoever any and all of his Administrative Expense Claims arising from or relating to the Complaint's Asserted December 2006 Grace Transaction and the December 2006 Court-Ordered Distribution;

- Ordering Mr. Kraft to file a Dismissal Pleading no later than seven (7) days from the date of entry of this Order seeking entry of a Dismissal Order by the Arizona District Court dismissing the Reorganized Debtor with prejudice from the Arizona-Chevron Litigation;

- Requiring Mr. Kraft to file a notice with this Court with a copy of the Dismissal Order attached thereto within seven (7) days after the Arizona District Court enters that order; and

- Barring Mr. Kraft from taking any other action in the Arizona-Chevron Litigation involving or otherwise pertaining to the Reorganized Debtor except for filing the Dismissal Pleading and taking all actions necessary to obtain entry of the Dismissal Order.

## LEGAL ANALYSIS

32.    The evidence adduced in the Shpigelman Declaration, from this Court's docket,

and Mr. Kraft's own Complaint is overwhelming.  The 2006 Court-Ordered Distribution and the

Complaint's Asserted December 2006 Grace Transaction are one and the same.  Mr. Kraft

therefore cannot state a cognizable claim in his Complaint against the Reorganized Debtor.  Mr.

Kraft's claims arising from or otherwise relating to the 2006 Court-Ordered Distribution and the

Complaint's Asserted December 2006 Grace Transaction are Administrative Expense Claims.  The

Plan and Confirmation Order have discharged all such Administrative Expense Claims.  The Plan

and Confirmation Order also preclude and bar claimants such as Mr. Kraft from asserting any such

Administrative Expense Claims in any forum whatsoever, whether the Arizona District Court, this

Court, or otherwise.  The Reorganized Debtor therefore requests this Court enter the Order

substantially in the form attached hereto.

**I.      THE SHPIGELMAN DECLARATION EXHIBITS ARE ADMISSIBLE FOR THE STATED PURPOSE OF EACH SUCH EXHIBIT**

### A. The Shpigelman Declaration Exhibits

33.      The Shpigelman Declaration has attached to it several categories of items.  The first

category comprises Realia Chapter 7 Docket Items attached to the Shpigelman Declaration as Exh.

A-D.  The second category of items attached to the Shpigelman Declaration comprises items from

the docket in the Arizona-Chevron Litigation in the Arizona District Court (the "Arizona-Chevron

Docket Items"), which is the subject of this Motion.  Shpigelman Declaration Exh. E–G.  The

fourth category of items attached to the Shpigelman Declaration comprises copies of certain e-

mail correspondence between various counsel for the Reorganized Debtor and Mr. Kraft and his

assistant, Ingrid Aronson, regarding the Arizona-Chevron Litigation, the June 25, 2021 letter from

counsel for the Reorganized Debtor to Mr. Kraft, requesting that he promptly file a Dismissal

Pleading, and follow-on correspondence relating to the June 25, 2021 letter (collectively, the

"Relevant Correspondence").  Shpigelman Decl. Exh. H–R.[9]

---

[9]      The "Shpigelman Declaration Exhibits" comprise the Realia Chapter 7 Docket Items, the Arizona-Chevron Docket Items, and the Relevant Correspondence.

34.     As set forth in the Shpigelman Declaration, counsel for the Reorganized Debtor obtained the Shpigelman Declaration Exhibits (other than the Relevant Correspondence) from either the relevant court docket or from LEXIS on the dates indicated.  Copies of the Relevant Correspondence came from the law firm files of counsel for the Reorganized Debtor.  Counsel for the Reorganized Debtor provided copies of each Shpigelman Declaration Exhibit to Ms. Shpigelman, and she is personally familiar with them.  Ms. Shpigelman is available to testify at the scheduled hearing as to each Shpigelman Declaration Exhibit, as well as the other factual assertions propounded in her Declaration.

**B.  The Shpigelman Declaration Exhibits Have Been Properly Authenticated**

35.     Fed. R. Bankr. P. 9017 states in relevant part that the "Federal Rules of Evidence … apply in cases under the Code."  Fed. R. Bankr. P. 9017.  Fed. R. Evid. 901 states in relevant part:

> (a) **In General**. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> (b) **Examples**. The following are examples only—not a complete list—of evidence that satisfies the requirement:
>
> (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.

Fed. R. Evid. 901.

36.     The Shpigelman Declaration describes the source of each document attached thereto as an exhibit, Ms. Shpigelman's personal familiarity with each such document, and her availability to testify as to the foregoing, thereby satisfying the requirements of Fed. R. Evid. 901. *See*, *e.g.*, *Giuliano v. Ins. Co. of the State of Pa. (In re LTC Holdings, Inc.)*, 596 B.R. 797, 803-04

(Bankr. D. Del. 2019) (analyzing requirements needed for a declaration to support authentication of attached exhibits).

> **C.    The Court May Take Judicial Notice of the Shpigelman Declaration Exhibits for the Limited Purpose of Ruling on This Motion's Request to Enforce the Plan and Confirmation Order Discharge of Administrative Expense Claims and Barring Further Assertion Thereof**

37.    Fed. R. Evid. 201 provides in relevant part:

> (b) **Kinds of Facts That May Be Judicially Noticed**.  The court may judicially notice a fact that is not subject to reasonable dispute because it: … (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

> (c) **Taking Notice**. The court: …  (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

Fed. R. Evid. 201.

38.    The Court may, of course, take judicial notice of the docket in the Grace Chapter 11 Case.  *Lingo v. Curcio (In re Lingo)*, Case No. 99-3195 (PJW), 2001 Bankr. LEXIS 154, at *2 n.3 (Bankr. D. Del. Jan. 29, 2001) (internal citations omitted).  The Court may also take judicial notice of opinions and docket items from another jurisdiction.  Fed. R. Evid. 201(b)(2); *Southmark Prime Plus, Ltd. P'ship v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991) ("Pursuant to Rule 201(b)(2), the Court can take judicial notice of the contents of court records from another jurisdiction").  The Shpigelman Declaration therefore has attached to it copies of the Realia Chapter 7 Docket Items referenced in this Motion and in the Shpigelman Declaration.  Each of these Realia Chapter 7 Docket Items is a publicly available record, the source of which is set forth in the Shpigelman Declaration.

39.    The Court may likewise take judicial notice of the Relevant Correspondence pursuant to Fed. R. Evid. 201(b)(2).  *In re Landsource Cmtys. Development LLC*, 485 B.R. 310, 316 (Bankr. D. Del. 2013) (taking judicial notice of business records in a properly supported

declaration or affidavit).   The Shpigelman Declaration describes the nature of the Relevant Correspondence and the source of the copies thereof attached to the declaration, thereby satisfying the requirement of Fed. R. Evid. 201(b)(2) for the limited purpose of putting the Court on notice of the Reorganized Debtor's ultimately unsuccessful effort to persuade Mr. Kraft to file a Dismissal Pleading.  *Id*.  Fed. R. Evid. 201(c)(2) further provides in relevant part that this Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."

40.     The Reorganized Debtor therefore requests the Court take judicial notice of each of the aforementioned Shpigelman Declaration Exhibits.

### D. The Shpigelman Declaration Exhibits Are Admissible for the Limited Intended Purpose

41.     The Court may admit the Shpigelman Declaration Exhibits into evidence "for notice of the fact that they were entered."   *Lightsway Litig. Servs., LLC v. Wimar Tahoe Corp. (In re Tropicana Entm't, LLC)*, 613 B.R. 587, 595 (Bankr. D. Del. 2020) (citing *Michael v. Quaker Valley Sch. Dist.*, Civ. A. No. 2:16-cv-00473, 2019 U.S. Dist. LEXIS 50149, 2019 WL 1349556, at *2 n.4 (W.D. Pa. March 26, 2019) (statements offered in support of summary judgment were not hearsay because they were offered, not for the truth of what was stated, but to show that plaintiff had notice of them)).  The Reorganized Debtor is bringing the Relevant Correspondence to the Court's attention for the fact that they exist, so as to establish that the Reorganized Debtor attempted to persuade Mr. Kraft to file a Dismissal Pleading in the Arizona-Chevron Litigation without the Reorganized Debtor having to file this Motion.   The Reorganized Debtor further specifically requests that the Court take judicial notice of the December 2006 Estate Asset Distribution Order, the *res judicata* effect of which the Reorganized Debtor is requesting this Court enforce, among other requested relief.  Finally, the Court should take judicial notice of the Arizona-

Chevron Docket Items for purposes of determining that the fact Mr. Kraft named the Reorganized

Debtor in the Complaint, thereby violating the Plan and Confirmation Order claim preclusion and

bar provisions.

42.    To the extent that the Court finds that this is an insufficient basis on which to admit

the Shpigelman Declaration Exhibits, Fed. R. Evid. 104(b) states in relevant part:

> When the relevance of evidence depends on whether a fact exists,
> proof must be introduced sufficient to support a finding that the fact
> does exist. The court may admit the proposed evidence on the
> condition that the proof be introduced later.

43.    To the extent that the Court requires further proof of a particular fact set forth in

any of the Realia Chapter 7 Docket Items or the Relevant Correspondence, the Reorganized Debtor

can provide such proof.  In particular, as discussed *supra* in n. 8, the Reorganized Debtor is

adducing further documentary evidence from the dockets of the Realia Chapter 7 Case, the NASH-

Realia Adversary Proceeding, and the NASH-Realia Appeal in support of the findings contained

in the NASH-Realia Appeal opinion at *4, n.5.

44.    The Reorganized Debtor nonetheless submits that this Court may take judicial

notice now of the fact that Mr. Kraft was in control of NASH and that there were allegations in the

record of the NASH-Realia Appeal that Mr. Kraft controlled Realia.  NASH-Realia Appeal

opinion at *4, n.5; *see, e.g.*, *In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 203

(E.D. Pa. 2016) (quoting Fed. R. Evid. 104(b)) ("The Rules of Evidence are to be liberally

construed in favor of admissibility. To that end, the Court notes that it 'may admit the proposed

evidence on the condition that the proof be introduced later'.").

## II.    THE COURT MAY TAKE JUDICIAL NOTICE OF THE OTHER COURT DOCKET ITEMS

45.    The Appendix has attached to it 20 exhibits comprising various items from dockets

in the Inland Concrete Litigation, the Old Castle Litigation, the renewed litigation by Mr. Kraft

that resulted in the two Vexatious-Litigant Orders in the California District Court, the Hatch Litigation in the New Mexico District Court, and the Gainey Ranch Litigation in the Maricopa State Court, Arizona Appellate Court, and Arizona District Court (collectively, the "Other Court Docket Items"), which describe Mr. Kraft's "abusive history" as a litigant and his being deemed by at least two different courts as a "vexatious litigant."  Appendix Exh. A-T.  All of the Other Court Docket Items are publicly available, and the Appendix states the source of and date when counsel for the Reorganized Debtor obtained those items.

46.     The Reorganized Debtor is not seeking admission of any of the Other Court Docket Items for the truth of the matter asserted. Fed. R. Evid. 801(c)(2).  The Reorganized Debtor merely asks that the Court take judicial notice of the Other Court Docket Items and the extraordinary scope of litigation Mr. Kraft has been party to in the last decade or more, and to further bring to this Court's attention the fact that at least two different courts have deemed Mr. Kraft a "vexatious litigant."

III.     **REALIA HAD NO CLAIMS TO ASSIGN TO MR. KRAFT**

47.     Realia was a chapter 7 debtor.  Realia's prepetition property became property of the Realia bankruptcy estate when it commenced its chapter 11 case on August 16, 2005.  Realia Docket; 11 U.S.C. §§ 301, 541.  On December 13, 2005, the case converted to chapter 7.  Realia Chapter 7 Docket; 11 U.S.C. §§ 701, 1112.  In chapter 7, the debtor's estate is liquidated, and the proceeds distributed in satisfaction of claims and interests of various classes of creditors, the lowest in priority of whom is the debtor.  11 U.S.C. § 726(a)(6).  There is no record of any such section 726(a)(6) distribution to Realia.  Realia Chapter 7 Docket *passim*.

48.     Therefore, as of the date when the Realia Chapter 7 Case terminated, February 12, 2012, Realia did not have any property interest in any bankruptcy estate assets.  Thus, any rights Realia may once have had to the estate property distributed to the Reorganized Debtor pursuant to

the December 2006 Estate Asset Distribution Order have long since been terminated.  In particular, Realia retained no claims against the Reorganized Debtor relating to the December 2006 Court-Ordered Distribution or the underlying property that it could have assigned to Mr. Kraft prior to his filing of the Complaint.  Complaint at ¶ 2.

IV.     **MR. KRAFT MAY NOT COLLATERALLY ATTACK THE DECEMBER 2006 ESTATE ASSET DISTRIBUTION ORDER**

49.     The available evidence is overwhelming.  The Complaint's Asserted December 2006 Grace Transaction, which allegedly sounded in fraud and "specified unlawful activity," and the December 2006 Court-Ordered Distribution describe one and the same transaction.  December 2006 Estate Asset Distribution Order; Complaint at ¶ 2.  The Complaint and the other available evidence offer no support for any other finding.

50.     Moreover, Mr. Kraft cannot argue that he was unaware or not privy to the December 2006 Estate Asset Distribution Order.  He was intimately involved with, and apparently controlled NASH and was alleged to control Realia.  NASH-Realia Appeal, at *4, n.5.  Moreover, NASH filed numerous pleadings in the Realia Chapter 7 Case, one of which resulted in the Ninth Circuit BAP NASH-Realia Appeal opinion.  Mr. Kraft is therefore equally as bound by the December 2006 Estate Asset Distribution Order as NASH and Realia.  *Hostforweb Inc. v. Frank*, No. 20-CV-378-RGA-MPT, 2021 U.S. Dist. LEXIS 37171, at *29 n.107 (D. Del. Mar. 1, 2021) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979))) ("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties ***or their privies*** based on the same cause of action.") (emphasis added).

51.     Mr. Kraft's Complaint and the claims purporting to arise from, or are otherwise related to, the Complaint's Asserted December 2006 Grace Transaction are barred by the doctrines

of claim preclusion and *res judicata*, which apply to bankruptcy court decisions.  *Id.*; *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 336 (3d Cir. 2000) (citing *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 208 (3d Cir. 2000); *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 171 (3d Cir. 1993)).  To put it somewhat differently, as of the date the Complaint was filed, neither Realia nor Mr. Kraft had any cognizable claims arising from or related to the Complaint's Asserted December 2006 Transaction or the December 2006 Court-Ordered Distribution.  Therefore, Mr. Kraft is barred as a matter of law from asserting his Complaint claims against Grace in any forum, whether before the Arizona District Court, this Court, or elsewhere.

**V.    THE COURT SHOULD ENFORCE THE CONFIRMATION ORDER AND PLAN DISCHARGE OF ADMINISTRATIVE EXPENSE CLAIMS, WHICH PRECLUDE AND BAR MR. KRAFT FROM ASSERTING THE CLAIMS SET FORTH IN HIS COMPLAINT**

### A.  The Court Has the Power to Enforce Its Own Orders

52.    This Court has the inherent power to enforce the discharge and injunction provisions of its Confirmation Order and the Plan.  *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999), aff'd, 279 F.3d 226 (3d Cir. 2002); *Protarga, Inc. v. Webb (In re Protarga, Inc.)*, 329 B.R. 451, 479 (Bankr. D. Del. 2005) (section 105 "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders").[10]  The Plan and Confirmation Order contain substantially identical discharges of Administrative Expense Claims.  They also contain substantially identical bars to putative claimants asserting such Administrative Expense Claims against the Reorganized Debtor and its successors and assigns.  Plan Article 8.1.1; Plan Article

---

[10]    To the extent that Mr. Kraft asserts that mere enforcement of the Plan and Confirmation Order claim preclusion and bar provisions is a request for injunctive relief that requires commencement of an adversary proceeding, bankruptcy courts in this jurisdiction have held otherwise: "[W]e conclude that, on the basis of the plain language of Rule 7001(7), an adversary proceeding is not necessary where the relief sought is the enforcement of an injunction previously obtained, as in the case of enforcement of the discharge injunction."  *In re Cont'l Airlines, Inc.*, 236 B.R. at 327.

2.1.1(b)(2); Confirmation Order § VI.A.1.  The Confirmation Order is a final order.  (*Notice of Satisfaction or Waiver of Conditions to Occurrence of Effective Date of Plan*, filed February 3, 2014 [Docket no. 31700].)  This Court should therefore enforce the Confirmation Order and Plan claim preclusion and bar provisions against Mr. Kraft as to his Complaint.

## B. Claims Arising from the Complaint's Asserted December 2006 Grace Transaction and the December 2006 Court-Ordered Distribution Constitute Administrative Expense Claims Discharged by the Plan and Confirmation Order

53.    As discussed above, the Plan and Confirmation Order discharge all Plan Claims and preclude and bar putative claimants from asserting any such claims.  The Plan defines the term "Plan Claims" to include "Administrative Expense Claims."  Plan Art. 1.1.171.  Administrative Expense Claims include "(a) any actual and necessary costs and expenses of preserving the estates of the Debtors… [and]  (b) any actual and necessary costs and expenses of operating the businesses of the Debtors."  Plan Art. 1.1.4.

54.    As was discussed above, Realia had in the wake of the Realia Chapter 7 Case no claims to assign to Mr. Kraft.  Mr. Kraft therefore cannot have any cognizable claims against Grace arising from or related to the Complaint's Asserted December 2006 Grace Transaction and the December 2006 Court-Ordered Distribution, let alone any cognizable fraud and RICO claims of the type asserted in the Complaint.

55.    But even if Mr. Kraft could somehow assert a claim arising from the Complaint's Asserted December 2006 Grace Transaction and the December 2006 Court-Ordered Distribution, that hypothetical claim would be an Administrative Expense Claim, because "[a]ctual and necessary costs and expenses of preserving the estates of the Debtors" comprises a broad range of claims, including but not limited to post-petition tort and breach of contract claims, as well as intentional injuries and product liability claims." *Reading Co. v. Brown*, 391 U.S. 471, 485 (1968)

(post-petition tort claim against a debtor (for the negligence of the receiver) constituted an "actual and necessary" expense of the administration); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012) (internal citations omitted) (torts may constitute administrative claims under a variety of circumstances); *Caradon Doors and Windows, Inc. v. Eagle-Picher Indus., Inc.*, 447 F.3d 461 (6th Cir. 2006) (post-petition patent infringement claim was an administrative expense); *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 203 (1st Cir. 1985) (quoting *Yorke v. NLRB*, 709 F.2d 1138, 1143 (7th Cir. 1983) ("those injured during administration of estate by Trustee entitled to priority claim as administrative expense")); *In re Jamesway Corp.*, 202 B.R. 697, 702-03 (Bankr. S.D.N.Y. 1996) ("Post-petition tort claims are afforded administrative priority because they arise from the commissions or omissions of a debtor-in-possession or trustee during the case and are properly chargeable in full to the estate since tort victims have 'an insolvent business thrust upon [them] by operation of law'.").[11]  This Court should therefore enforce its Confirmation Order and require Mr. Kraft to promptly file a Dismissal Pleading seeking an order of the Arizona District Court dismissing Grace with prejudice from the Arizona-Chevron Litigation.  *Cont'l Airlines, Inc.*, 236 B.R. at 325-26.

---

[11]  Mr. Kraft cannot argue that the fraud and RICO claims arising from the Complaint's Asserted December 2006 Grace Transaction and the December 2006 Court-Ordered Distribution are not subject to the Plan and Confirmation Order discharge and claim preclusion and bar provisions.  First and foremost, he has failed to state that he has claims sounding in fraud or RICO, because the Complaint does not state such claims with sufficient particularity.  These claims are thus dismissible with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  *United States ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754, 760 n.17 (3d Cir. 2011) (Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Indus. Enters. of Am. v. Tabor Acad. (In re Pitt Penn Holding Co.)*, Nos. 09-11475 (BLS), 11-51879, 2011 Bankr. LEXIS 3554, at *12-13 (Bankr. D. Del. 2011) (describing court's inquiry into motions to dismiss that may be based in part on plaintiff's failure to state a claim with sufficient particularity).  Second, even if he did have any such cognizable claims, those claims—to the extent they exist—would nonetheless constitute Administrative Expense Claims.  *See* 4 COLLIER ON BANKRUPTCY ¶ 503.06 (16th 2021) (discussing the broad scope of "actual" and "necessary" under the *Reading* doctrine) (citing *Reading Co. v. Brown*, 391 U.S. at 485).

VI.      **MR. KRAFT WAS ON NOTICE OF THE EFFECTIVE DATE AND ADMINISTRATIVE EXPENSE CLAIMS BAR DATE, AS WELL AS OF THE MARCH 31, 2003 PREPETITION GENERAL UNSECURED CLAIMS BAR DATE**

      **A.      Mr. Kraft and the Assignor Entities Were Unknown Creditors During the Course of the Grace Chapter 11 Cases**

56.      It has long been axiomatic that a known creditor is "one whose identity is either known or 'reasonably ascertainable by the debtor'." *PacifiCorp v. W.R. Grace & Co. (In re W. R. Grace & Co., et al.)*, No. 05-764, 2006 U.S. Dist. LEXIS 57470, at *13 (D. Del. Aug. 16, 2006) (citing *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)).

> A creditor's identity is reasonably ascertainable if that creditor can be identified through reasonably diligent efforts. Reasonable diligence does not require impracticable and extended searches … in the name of due process. A debtor does not have a duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.

*Id.* (citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 346-47 (3d Cir. 1995) (internal citations and quotations omitted)).

57.      Here, Mr. Kraft and the Assignor Entities were unknown creditors, because they never asserted claims against the then-Debtors during the pendency of the Grace Chapter 11 Cases— or before the Petition Date, for that matter, nor did they otherwise manifest themselves as parties-in-interest in the Grace Chapter 11 Cases.  Thus, no search of the then-Debtors' books and records could have ever identified any of them as potential creditors.  *PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *13.  On these facts, they are classic unknown creditors.  *PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *36; *see also White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 450 B.R. 504, 512 (Bankr. D. Del. 2011) (known customers, without more, are not known creditors).

**B.      Publication Notice as to Unknown Creditors Was Sufficient as a Matter of Law**

58.      The District Court has already held that publication notice of the General Unsecured Claims bar date of March 31, 2003, was sufficient for due process.  *See PacifiCorp*, 2006 U.S. Dist. LEXIS 57470, at *12, *51; *see also In re W. R. Grace & Co.*, 389 B.R. 373, 379 (Bankr. D. Del. 2008) (citing *Mission Towers v. Grace*, 2007 U.S. Dist. LEXIS 89913, 2007 WL 4333817 (D. Del. 2007) (court found notice under the notice program sufficient)); *In re W.R. Grace & Co.*, 446 B.R. 96, 108 n.16 (Bankr. D. Del. 2011) ("validity of the notice program was the law of the case"); *In re W.R. Grace & Co.*, 563 B.R. 150, 157 (Bankr. D. Del. 2016).

59.      In its Confirmation Order, the Court took judicial notice of the publication notice of the Plan confirmation trial.  Confirmation Order at 2-3.  No party raised any objection to the adequacy of publication notice of the Plan confirmation trial, and all parties are bound by the terms of the Plan and the Confirmation Order.  Confirmation Order at ¶ 1; *Dorset v. Am. Home Mortg. Serv. (In re Dorset)*, Nos. 08-12339 (BLS), 11-53860 (BLS), 2012 Bankr. LEXIS 5137, at *6 (Bankr. D. Del. 2012) (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989) (confirmation order is "*res judicat*a as to all issues decided or which could have been decided at the hearing on confirmation").

60.      This Court has also specifically approved both the form of publication notice of the Administrative Expense Claims bar date of May 5, 2014, and the scope of publication necessary under the circumstances.  Confirmation Order § X.C.  No party objected to either the form or scope of the Effective Date publication notice as to any class of potential creditors.  Mr. Kraft is therefore constrained from now objecting to either the form or the scope of publication notice.  *Arizona v. California*, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Afr. v. City of*

*Phila. (In re Phila. Litig.)*, 158 F.3d 711, 718 (3d Cir. 1998) (internal citation omitted) ("The law of the case doctrine, however, acts to preclude review of only those legal issues that the court in a prior appeal actually decided, either expressly or by implication"); *Hartman v. Bank of N.Y. Mellon*, 650 F. App'x 89, 90 n.1 (3d Cir. 2016) (citing *In re Phila Litig*.).

61.    Based upon the foregoing, Mr. Kraft cannot argue that he did not receive adequate notice of the Plan, the Confirmation Order, and the Administrative Expense Claims Bar Date.

## NO PRIOR MOTION

62.    The Reorganized Debtor has not filed with this or any other court any prior motion seeking the relief sought herein.

## NOTICE

63.    Notice of this Motion has been given to:  (i) the Office of the United States Trustee; (ii) Counsel for the WRG Asbestos PI Trust; (iii) Counsel for the Asbestos PI Future Claimants Representative; (iv) Counsel for the Asbestos PD Future Claimants Representative; (v) Counsel for the WRG Asbestos PD Trust (7A); (vi) Counsel for the WRG Asbestos PD Trust (7B); (vii) Counsel for the CDN ZAI PD Claims Fund; (viii) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (ix) Rune Kraft.  In light of the nature of the relief requested, the Reorganized Debtor submits that no further notice is required.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtor respectfully seeks the entry of an order substantially in the form attached hereto as Exhibit A: (i) granting the Reorganized Debtor's motion for an order enforcing the Plan and Confirmation Order provisions discharging Administrative Expense Claims; (ii) ordering Mr. Kraft to file a Dismissal Pleading, which dismisses the Reorganized Debtor and its Reorganized Debtor affiliates with prejudice from the Arizona-Chevron Litigation within seven (7) days of the entry of the order; and (iii) granting such other relief as may be appropriate.

Dated:  July 13, 2021

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
516 N. Ogden Ave.
Suite 136
Chicago, IL 60642
Telephone: (312) 666-0431

And

PACHULSKI STANG ZIEHL & JONES LLP

/s/James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Reorganized Debtor

**[remainder of this page is intentionally left blank]**