**EXHIBIT D**

**December 2013 Old Castle Opinion**



Neutral
As of: June 27, 2021 8:02 PM Z

# *Kraft Ams., LP v. Oldcastle Precast, Inc.*

United States District Court for the Central District of California

December 18, 2013, Decided; December 18, 2013, Filed

LA CV12-03681 JAK (Ex)

**Reporter**
2013 U.S. Dist. LEXIS 202537 *

Kraft Americas, LP v. Oldcastle Precast, Inc.

**Prior History:** *Kraft Ams., LP v. Oldcastle Precast, Inc., 2012 U.S. Dist. LEXIS 68527 (C.D. Cal., May 16, 2012)*

## Core Terms

interrogatories, acquisition, discovery, confidentiality agreement, responses, trade secret, misappropriation, acquire, limitations period, confidential information, magistrate judge, precast, tolling, contends, answers, proprietary information, summary judgment motion, responded, concrete, attorney's fees, disclosure, email, substantial justification, third party, misappropriation of trade secrets, breach of contract claim, statute of limitations, cause of action, amount of fees, parties

## Case Summary

### Overview

HOLDINGS: [1]-In this misappropriation of trade secrets action, the manufacturer's propounded interrogatories were not improper because the 16 interrogatories upon which the Discovery Motion was based asked the partnership to state the facts on which it relied to support its claims as to breach of contract, misappropriation of trade secrets, and damages. These interrogatories went to the core of the issues in the litigation; [2]-The limitations period expired with respect to the partnership's trade secret claim on December 17, 2010 or, at the very latest, January 8, 2011. Both of these dates were several months before the partnership filed the King County Superior Court action.

### Outcome
Manufacturer's summary judgment motion granted. Partnership's motion for review denied.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Preclusion of Judgments > Res Judicata

### *HN1*[ ] Preclusion of Judgments, Res Judicata

Claim preclusion operates as a bar to the maintenance of a second suit between the same parties or parties in privity with them on the same cause of action.

Civil Procedure > Judicial Officers > Magistrates > Objections

Civil Procedure > Judgments > Relief From Judgments

### *HN2*[ ] Magistrates, Objections

*C.D. Cal. Civ. R. 72-2.1* requires that, a party objecting to a ruling of a Magistrate Judge as to a non-dispositive pretrial matter, file a Motion for Review and Reconsideration within 14 days of service of the written ruling by the Magistrate Judge. *C.D. Cal. Civ. R. 72-2.1*.

Civil Procedure > Judgments > Relief From Judgments

### *HN3*[ ] Judgments, Relief From Judgments

A district court has discretion to decline the consideration of a motion for review when the moving party did not arrange a timely, pre-filing conference. Thus, *C.D. Cal. Civ. R. 7-3* requires counsel for the moving party to confer with opposing counsel at least seven days prior to the filing of a motion for review. If there is no timely, pre-filing conference, a court has the discretion to deny the motion on this ground without considering its merits.

Civil Procedure > Judicial

Officers > Magistrates > Objections

Civil Procedure > Judicial Officers > Magistrates > Standards of Review

### HN4[ ] Magistrates, Objections

*Fed. R. Civ. P. 72(a)* governs the review of a non-dispositive ruling by a magistrate judge. It provides that the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law. *Fed. R. Civ. P. 72(a)*; *28 U.S.C.S. § 636(b)(1)(A)*. A district court has the power to affirm, modify, vacate, set aside or reverse the magistrate judge's order and may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings as may be just under the circumstances.

Civil Procedure > Judicial Officers > Magistrates > Standards of Review

### HN5[ ] Magistrates, Standards of Review

When considering findings of fact, a district court applies the clearly erroneous standard, which is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. Review under that standard allows great deference, and as long as the magistrate judge's account of the evidence is plausible in light of the evidence viewed in its entirety, the court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

Civil Procedure > Judicial Officers > Magistrates > Standards of Review

### HN6[ ] Magistrates, Standards of Review

Legal conclusions of a magistrate judge are subject to de novo review to determine whether they are contrary to law. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.

Civil Procedure > ... > Discovery > Methods of Discovery > Interrogatories

### HN7[ ] Methods of Discovery, Interrogatories

*Fed. R. Civ. P. 33* requires that the responding party must serve its answers and any objections within 30 days after being served with the interrogatories and any ground not stated in a timely objection to an interrogatory is waived unless the party's failure to object is excused by the court for good cause shown.

Civil Procedure > ... > Discovery > Methods of Discovery > Interrogatories

### HN8[ ] Methods of Discovery, Interrogatories

While all facts' contention interrogatories are sometimes permissible under the federal rules, the scope of such interrogatories is not limitless.

Civil Procedure > Judicial Officers > Magistrates

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

### HN9[ ] Judicial Officers, Magistrates

Generally a district court may decline to hear new arguments not raised before the magistrate judge.

Civil Procedure > ... > Discovery > Methods of Discovery > Interrogatories

### HN10[ ] Methods of Discovery, Interrogatories

Whether contention interrogatories are appropriate is appropriately addressed on a case-by-case and interrogatory-by-interrogatory basis.

Civil Procedure > ... > Discovery > Methods of Discovery > Interrogatories

### HN11[ ] Methods of Discovery, Interrogatories

A party who wants early answers to contention interrogatories must hand-craft a limited set of questions. In addition, such a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under *Fed. R. Civ. P. 11* or *Fed.*

*R. Civ. P. 56*.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

**HN12**[ ] **Discovery, Misconduct During Discovery**

*Fed. R. Civ. P. 37(b)(2)(C)* applies to a party's failure to comply with a court order, whereas *Fed. R. Civ. P. 37(a)(5)(A)* applies to a prevailing party on a motion to compel. Moreover, the plain language of *Fed. R. Civ. P. 37(a)(5)(A)* shows that attorney's fees must be awarded upon granting a motion to compel unless the motion was not brought in good faith, the opposing party's nondisclosure was substantially justified, or other circumstances make an award of expenses unjust.

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

**HN13**[ ] **Discovery, Misconduct During Discovery**

In the context of *Fed. R. Civ. P. 37(a)(5)(A)*, an award of expenses does not require a showing of willfulness or improper intent. Rather, the standard is whether there was substantial justification for the losing party's conduct. The burden is on the non-moving party to show substantial justification.

Civil Procedure > ... > Discovery > Misconduct During Discovery > Motions to Compel

**HN14**[ ] **Misconduct During Discovery, Motions to Compel**

*Fed. R. Civ. P. 37(a)(5)(A)* requires that the losing party on a motion to compel pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Once an explanation of the fee award is provided, it can be reviewed.

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Civil Procedure > Judgments > Summary Judgment > Supporting Materials

**HN15**[ ] **Summary Judgment, Entitlement as Matter of Law**

A motion for summary judgment will be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. If the moving party meets its initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*.

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

**HN16**[ ] **Summary Judgment, Evidentiary Considerations**

Only admissible evidence may be considered in deciding a motion for summary judgment. *Fed. R. Civ. P. 56(e)*. In considering a motion for summary judgment, a court is not to make any credibility determinations or weigh conflicting evidence. Further, all inferences are to be drawn in the light most favorable to the nonmoving party. However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment.

Governments > Legislation > Statute of Limitations > Time Limitations

**HN17**[ ] **Statute of Limitations, Time Limitations**

A plaintiff's breach of contract claim is subject to a four-year statute of limitations. *Cal. Civ. Proc. Code § 337*. The period begins upon the occurrence of the last element essential to the cause of action. In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action does not toll the statute.

Civil Procedure > ... > Summary Judgment > Supporting Materials > Affidavits

*HN18*[ ] **Supporting Materials, Affidavits**

The sham affidavit rule prohibits plaintiff from using the declaration to create a triable issue. A party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.

Governments > Legislation > Statute of Limitations > Time Limitations

*HN19*[ ] **Statute of Limitations, Time Limitations**

A claim for misappropriation of trade secrets is subject to a three year statute of limitations which begins to run when the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. *Cal. Civ. Code § 3426.6*.

Governments > Legislation > Statute of Limitations > Time Limitations

Trade Secrets Law > Misappropriation Actions

*HN20*[ ] **Statute of Limitations, Time Limitations**

*Cal. Civ. Code § 3426.6* expressly rejects a continuing tort theory for misappropriation of trade secrets for the purposes of limitations. *Section 3426.6* provides that a continuing misappropriation constitutes a single claim.

Governments > Legislation > Statute of Limitations > Tolling

*HN21*[ ] **Statute of Limitations, Tolling**

Equitable tolling under California law is a judicially created doctrine that operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly. In determining whether to apply equitable tolling, courts consider whether there was: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim. However, when a limitations period is equitably tolled, the limitations period begins to run again when the tolling event has concluded. When the tolling event is the filing of a suit raising the same or similar claims or the pursuit of alternative remedies for the same harm, the tolling event concludes at the end of the proceedings.

**Counsel:** [*1] Attorneys for Plaintiffs: Not Present.

Attorneys for Defendants: Not Present.

**Judges:** JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOHN A. KRONSTADT

## Opinion

**CIVIL MINUTES - GENERAL**

**Proceedings: (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR REVIEW RE ORDER ON MOTION TO COMPEL ANSWERS (Dkt. 106) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 130) JS-6**

### I. Introduction

Kraft Americas L.P. ("Plaintiff") brought this action against Oldcastle Precast, Inc. ("Defendant"), alleging that it breached a confidentiality agreement and misappropriated Plaintiff's trade secrets in connection with Defendant's acquisition of Inland Concrete Enterprises, Inc. ("Inland"). On November 5, 2013, Defendant brought a motion for summary judgment (the "Summary Judgment Motion") with respect to this claim. On August 30, 2013, Magistrate Judge Eick granted Defendant's Motion to Compel Supplemental Responses to Oldcastle's First Set of Interrogatories (the "Discovery Motion"). Judge Eick also awarded Defendant attorney's fees pursuant to *Fed. R. Civ. P. 37(a)(5)(A)*. Dkt. 93. Plaintiff filed a motion to review that ruling (the "Motion for Review")

Case 01-01139-AMC    Doc 33244-4    Filed 07/13/21    Page 6 of 18

Page 5 of 17
2013 U.S. Dist. LEXIS 202537, *1

pursuant to *Fed. R. Civ. P. 72(a)*; *28 U.S.C. § 636(b)(1)(A)*. Dkt. 106.

The Court conducted a hearing on these motions on December 9, 2013 and took them under submission. **[*2]** For the reasons stated in this Order, the Court DENIES the Motion for Review and GRANTS the Summary Judgment Motion.

## II. Factual Background

Defendant is a Washington-based manufacturer of precast concrete and polymer concrete products. Declaration of Ryan Salsig ("Salsig Decl.") ¶ 1, Exh. 1, FAC ¶ 5. Plaintiff is a Delaware limited partnership that is engaged in the business of analyzing markets and businesses. As part of its work it develops analyses with respect to how certain businesses can achieve greater market efficiencies, and identifies companies for potential acquisition. Declaration of Rune Kraft ("Kraft Decl.") ¶¶ 4-5. Rune Kraft ("Kraft") was, at all times relevant to this proceeding, Plaintiff's duly authorized representative in Plaintiff's dealings with Defendant. *Id.* ¶ 2.

Beginning in 1998 and continuing into 2007, Plaintiff analyzed the Southern California precast concrete market in an effort to identify companies that might be combined or acquired. *Id.* ¶ 5. Plaintiff's research and analysis included the review of trade publications, site visits to utility installations, and tracking of the construction and utility markets in Southern California. *Id.* ¶ 6. Through this **[*3]** research, Plaintiff asserts that it created a method by which it could identify acquisition targets in the precast market. *Id.* ¶ 7. Plaintiff identified certain indicia with respect to the desirability of a potential acquisition target. These included: the locations of service manufacturers relative to that of the subject company; transportation issues related to the location of the company's manufacturing facilities; the status and condition of utility installations nearby the subject company; forecasts for the prices of, and demand for, specific precast concrete products; and potential environmental issues at precast foundry sites. *Id.* ¶ 8.

Based on this analysis, by early 2007 Plaintiff identified two companies that it believed were attractive acquisition targets: Inland and Precon Products Inc. ("Precon"). Kraft. Decl. ¶¶ 5, 14. During the spring of 2007, Plaintiff approached each of these companies separately and began discussions with respect to whether each had a potential interest in being acquired by a third party. Salsig Decl., Exh. 1, FAC ¶¶ 6-7; *id.*, Exh. 2, Kraft Deposition ("Kraft Depo.") at 82:22-83:7; Kraft Decl. ¶¶ 14-15. Each company expressed an interest in being **[*4]** acquired by a third party. Kraft. Decl. ¶ 16. Plaintiff sought to have a third party acquire both Inland and Precon as part of the formation of a dominant precast group in the Southern California market. Salsig Decl., Exh. 1, FAC ¶ 9. However, no agreements were ever finalized between Plaintiff and Inland or Precon authorizing Plaintiff to render services to facilitate such a potential acquisition. Salsig Decl., Exh. 2, Kraft Depo. at 75:15-76:19 ("Q: did you have a market maker agreement with Precon? A: Nothing was every finalized with Precon."); Salsig Decl., Exh. 16, Default Judgment Order ("Plaintiff Inland Inc. never retained or engaged Defendants Kraft Americas, L.P. and/or Rune Kraft to provide any services to, or for, Inland Inc. in connection with the Oldcastle-Inland ESOP Transaction.").

On May 11, 2007, Plaintiff contacted Defendant to discuss its potential interest in acquiring Inland and Precon. At the same time, Plaintiff informed Defendant that Plaintiff had certain confidential information that would be of value in connection with the formation of a dominant precast concrete group in Southern California. Salsig Decl. ¶ 10; Kraft Decl. ¶ 17. Kraft states that David Steevens, **[*5]** who was Defendant's Vice President of Development, expressed "interest in hearing more about Kraft Americas' proposal." Kraft Decl. ¶ 18. As a condition of such discussions, Plaintiff required that Oldcastle enter a written confidentiality agreement. *Id.* The parties entered such an agreement on May 31, 2007 (the "May Confidentiality Agreement"). Salsig Decl., Exh. 3. That Agreement provided, in relevant part, that Plaintiff and Defendant would "discuss various transactions." *Id.* In connection with those discussions, the parties agreed that "that they will not disclose any Proprietary Information to third persons except their partners, outside accountants, attorneys and advisors, nor will they use said Proprietary Information *except as may otherwise be authorized in writing*." *Id.* (emphasis added). The May Confidentiality Agreement defines "Proprietary Information" as: [A]ll information, samples, data, technology and designs which are disclosed . . . except for information falling into the following categories:

> a. Information which at the time of disclosure is in the public domain,
>
> b. Information which, after disclosure, enters the public domain except where such entering is a result of **[*6]** a breach of this agreement,
> c. Information which, prior to disclosure hereunder, was already in the possession of Kraft and Oldcastle without any restriction on disclosure to others, as evidenced by the written records in the possession of Kraft and Oldcastle on the date of agreement, and
> d. Information which is obtained from a third party not under an obligation of confidentiality.

*Id.* There was no provision in the agreement requiring

Defendant to proceed with, or complete, an acquisition of Inland, Precast or both of them. Indeed, the Agreement does not expressly identify either of these potential targets, although it does provide that Plaintiff and Defendant would "discuss various transactions." *Id.* The Agreement did not contain an integration clause.

After the May Confidentiality Agreement was executed, Plaintiff began providing Defendant with information about Inland and Precon. This included information about how the two entities could be consolidated, methods for streamlining the businesses, organizational charts, information about the companies' management teams, an analysis of how product lines could be expanded through consolidation, and certain financial information. Kraft Decl. **[*7]** ¶¶ 9, 22, 27, 28; Exh. 2, 5, 6. On July 27, 2007, Defendant provided Plaintiff with two draft letters of intent (the "Letters") -- one with respect to the potential acquisition of Inland and the other with respect to the potential acquisition of Precon. Kraft Decl. ¶ 30, Exh. 7. In August 2007, Plaintiff prepared final versions of these Letters. One was then executed by Defendant and Precon; the other was executed by Defendant and Inland. Salsig Decl., Exh. 4, Kraft Depo. at 302:18-303:6; Salsig Decl., Exh. 6-8. Each of the Letters provided that Defendant "agreed to negotiate with respect to the terms for a sale of the stock" of Inland and Precon. *Id.* Each also provided that any offer for an acquisition made by Defendant would be subject to "the satisfactory outcome of legal, operational, and financial due diligence" and that "[b]oth parties will use good faith effort to consummate the transaction based on this Letter of Intent." *Id.*, Exh. 7-8.

In September 2007, Defendant presented to its parent company, CRH, a detailed proposal for its acquisition of Inland and Precon. Humphreys Decl., Exh. A at 21. Defendant, Plaintiff, Inland, and the trustee of Inland Concrete Enterprises, Inc. **[*8]** Employee Stock Ownership Plan (the "ESOP"), which owned 100% of Inland's stock, then signed a second confidentiality agreement (the "September Confidentiality Agreement"). Salsig Decl., Exh. 10. The September Confidentiality Agreement includes the same definition of "Proprietary Information" that is in the May Confidentiality Agreement with one exception: it added "Inland and ESOP" to paragraph "c." of the Agreement. *See id.*, Exh. 3, 10. The September Confidentiality Agreement also added the following language:

> Kraft and Oldcastle agree to protect such Proprietary Information and other confidential information from disclosure and agree that without the prior written consent of Inland, Kraft and Oldcastle will make absolutely no use of the Proprietary Information and other confidential information except in connection with, and as a part of, their due diligence review of Inland and ESOP in connection with the proposed sale of the stock of Inland.

*Id.*, Exh. 10.

On September 27, 2007, the board of CRH approved Defendant's acquisition of both Inland and Precon. Humphreys Decl., Exh. A at 20. However, at some point between that date and December 2007, Defendant decided to acquire Inland before **[*9]** proceeding with the possible acquisition of Precon. *Id.*, Exh. A at 10, Deposition of George F. Heusel ("Heusel Depo.") at 84:5-86:2. Defendant's acquisition of Inland (the "Acquisition") was completed on December 17, 2007. Humphreys Decl., Exh. A at 16-17, Heusel Depo. at 150:18-151:3; Salsig Decl., Exh. 11 ¶ 15. That same day, Plaintiff sent an invoice to Inland for $5 Million for the "services rendered" by Plaintiff in connection with the Acquisition. Salsig Decl., Exh. 11 ¶ 17, Exh. A.

> Defendant sought to acquire Precon after it acquired Inland. However, in April 2008, Defendant decided to suspend these negotiations. Humphreys Decl., Exh. A, Heusel Depo. at 157:14-20. On April 28, 2008, Kraft sent an email to Russ Hansen, Defendant's attorney, in which he noted that Plaintiff had issued a report on January 8, 2008 regarding the status of the "Precon-Inland" transaction. *Id.*, Exh. A at 49. Kraft's email stated that, "in this report we pointed out," among other things, that:
>
> Oldcastle decided that if it could by hook or by crook figure out a way to deceive Kraft Americas and Precon that it wanted to complete the Precon-Inland transaction, it might be able to enter into an agreement with only Inland at an unbelievable **[*10]** valuation.
> Oldcastle decided to buy the transaction's lower priced component (Inland) before the contract with Precon would settle. This action was done willfully. This action was done in bad faith. Oldcastle knew that this would damage the financial transaction that Kraft Americas had put together over a 10 year period and did it anyway. . .
> Kraft Americas expects Oldcastle to right this by paying for the value of the work done . .

*Id.* at 49-52. Hansen responded to this email by stating that "Oldcastle and Precon are not proceeding with a transaction at this time." *Id.*, Exh. A at 48-49.

In March 2010, Inland sued Plaintiff in the Central District of California for breach of fiduciary duty and a declaratory judgment that no fees or compensation were owed to either Kraft or Plaintiff. *See Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan, et al. v. Kraft Americas, LP, etc., et al.*, CV10-01776-VBF (Opx). Plaintiff, who was the

Case 01-01139-AMC    Doc 33244-4    Filed 07/13/21    Page 8 of 18

Page 7 of 17
2013 U.S. Dist. LEXIS 202537, *10

defendant in that action, filed a counterclaim seeking the recovery of compensation for the services it rendered in connection with the Acquisition. Declaration of Ryan S. Fife ("Fife Decl."), Exh. B. The matter was assigned to Judge Fairbank. She ultimately determined that Kraft and [*11] Plaintiff unlawfully acted as brokers during the Acquisition in violation of *Cal. Bus. & Prof. Code §§ 10131* and *10136*. That statute prohibits unlicensed persons from "bring[ing] or maintain[ing] any action . . . for the collection of compensation" for services provided as a broker. Salsig Decl. ¶ 1, Exh. 16. The counterclaims of Plaintiff and Kraft were ultimately dismissed after Plaintiff's counsel withdrew from the case and Plaintiff failed to obtain representation within the time period ordered by Judge Fairbank. Judge Fairbank also entered a default judgment against Plaintiff and Kraft in the amount of $3,000,000 in connection with Inland's claim against Plaintiff for breach of fiduciary duty. *Id.*[1]

### III. Procedural Background

On October 3, 2011, Plaintiff filed an action against Defendant in the King County Superior Court in Seattle, Washington. The complaint in that action advanced claims for breach of express and implied contract and misappropriation of trade secrets. *See* Fife Decl., Exh. A; Kraft Decl. ¶ 47. These are the same substantive claims that Plaintiff has brought in the present action. On December 7, 2011, the King County Superior Court granted Defendant's Motion for Change of Venue and dismissed the action [*12] without prejudice to its being re-filed in Los Angeles. Fife Decl., Exh. A. That court concluded that the matter should be litigated here based on the choice of forum clause in the September Confidentiality Agreement and the location of likely percipient witnesses. *Id.*

On April 27, 2012 Plaintiff filed this action. Plaintiff has brought claims of breach of contract and misappropriation of trade secrets. Dkt.1.[2] Defendant filed its Motion for Summary Judgment on November 5, 2013. Dkt. 130.

On March 8, 2013, Defendant served Plaintiff with its first set of interrogatories. *See* Mot. for Review, Dkt. 106-1 at 2. Interrogatories 5 through 7 asked Plaintiff to identify the facts that it claims support its allegation that Defendant breached the confidentiality agreement; Interrogatories 1, 9 through 12 asked Plaintiff to identify the information, compilation, analysis, and methods it claims are trade secrets; Interrogatories 15 and 16 asked Plaintiff to provide facts that support its contention that Defendant misappropriated its trade secrets; Interrogatories 14, 19, and 21 asked Plaintiff to provide a factual basis for its claims for damages, unjust enrichment, and irreparable injury. [*13] *See* Dkt. 90. Each of these 23 interrogatories was a contention interrogatory, *i.e.*, one that asked Plaintiff to "state all facts upon which you based" various allegations in the Complaint." Dkt.106; Dkt. 77-5, Exh. C at 16-17. Plaintiff served its initial responses to the Interrogatories in April 2013. Opp'n, Dkt. 128 at 6. There, Plaintiff objected to the interrogatories, claiming that many were overbroad or sought information solely in the possession of the Defendant. Plaintiff also reserved the right to supplement its responses. Dkt. 106-1 at 2-3.

Following a *Local Rule 37-1* meet and confer conference in June 2013, Plaintiff agreed to supplement "nearly every response." Dkt. 128 at 6, 17. In July 2013 Plaintiff served its supplemental responses, which Defendant found "facially insufficient, incomplete, and evasive." *Id.* On August 9, 2013, Defendant filed the Discovery Motion with Magistrate Judge Eick seeking an order that directed Plaintiff to supplement its responses to Interrogatories 1, 5-12, 14-19 and 21. Defendant also sought an award of attorney's fees pursuant to *Fed. R. Civ. P. 37(a)(5)(A)*. Dkt. 77. Magistrate Judge Eick heard the Discovery Motion on August 30, 2013.

The transcript of the August 30 hearing reflects that Judge Eick [*14] found Plaintiff's responses to the contested interrogatories to be deficient for several reasons. For example, Interrogatory No. 1 asked Plaintiff to identify all "information and sources not generally available to the public" that it reviewed in connection with its "comprehensive

---

[1] Defendant contends that Plaintiff's claims are barred by the prior proceeding before Judge Fairbank under the doctrine of claim preclusion. *HN1*[↑] Claim preclusion "operates as a bar to the maintenance of a second suit between the same parties or parties in privity with them on the same cause of action." **Branson v. Sun-Diamond Growers of California, 24 Cal. App. 4th 327, 340, 29 Cal. Rptr. 2d 314 (1994)**. Although there is privity between Inland and Defendant, the present action does not arise out of the same cause of action that was litigated before Judge Fairbank. The issues in the matter before Judge Fairbank concerned Kraft's duties to Inland and its claims against Inland in connection with the Inland Acquisition. These issues are distinct from both the obligations of Defendant and Plaintiff under the May Confidentiality Agreement, to which Inland was not a party, and the Defendant's alleged use of Plaintiff's trade secrets.

[2] On December 14, 2011, Plaintiff brought a separate action against Inland in the Riverside County Superior Court. *See* Kraft Decl. ¶ 47; Salsig Decl., Exh. 19. On December 13, 2012, the court there granted Inland's demurrer to the Second Amended Complaint without leave to amend, concluding that the action was barred by the doctrines of res judicata, collateral estoppel, and California's Compulsory Cross-Complaint Statute, *Cal. Civ. Proc. § 426.30(a)*. *Id.*

and detailed analysis of the southern California precast market." Dkt. 90 at 10. Plaintiff initially responded with a seven-page list of public sources of information. *Id.* at 10-17. In its supplemental response, Plaintiff stated it "compiled and created, from the sources of information identified in its prior Response, non-public information and sources not generally available to the public. . . . These compilations . . . included, without limitation, market analyses and forecasts; financial analyses and forecasts; the identities and specific information regarding certain precast companies, including Inland and Precon; real estate analyses and forecasts; product research, analysis, and forecasts; and business plans." *Id.* at 18.

At the hearing on the Discovery Motion, Judge Eick asked Plaintiff's counsel, "why was [the initial response] not a frivolous way of responding to Interrogatory No. 1?" Plaintiff's counsel responded that **[*15]** "[i]t may have been an improper response." Dkt. 128-2 at 22. With regard to Plaintiff's use of the phrases like "including but not limited to" in several responses, Judge Eick asked "[w]hen an interrogatory asks for 'all information,' isn't it, per se, improper to answer the interrogatory by saying 'including but not limited to' or 'inter alia' or something of that sort that implies that, although you're specifying certain information, there is other information that you're not specifying?" *Id.* at 23. And, in response to Plaintiff's statements in several interrogatory responses that "discovery is ongoing," Judge Eick stated "it does not matter whether you hope to discover additional information or not . . . . for purposes of answering your interrogatories. The propounding party is entitled to discovery of your current information, what you now know. . . . They are entitled to know the information within your current possession, custody, or control." *Id.*

Judge Eick also addressed several of Plaintiff's responses that applied Civil *Rule 33(d)*. Thus, Interrogatories 10-12 asked Plaintiff to "identify specifically and in detail" each "compilation," "method," or "analysis" that it contends is a trade secret **[*16]** disclosed by Plaintiff to Defendant. In both its initial and supplemental responses, Plaintiffs identified its entire production of 2039 documents, and then stated "discovery is continuing and the Plaintiff reserves the right to alter or amend its answer to this request." Dkt. 90 at 43. In its supplemental responses, Plaintiff identified 1600 of the previously identified 2039 documents. *Id.* At the hearing, Judge Eick addressed these responses:

> for such an interrogatory to be answered appropriately by reference to the documents, the leader [sic] of the documents—the propounding party, in particular— would have to be able to read those documents and understand from that reading the nature of the plaintiff's contentions, what plaintiff contends to be a trade secret compilation. It seems fairly evident to the Court that a mere reading of those documents by the defendant would not educate the defendant as to what precisely plaintiff contends would constitute plaintiff's trade secret compilations.

Dkt. 128-2 at 28. Judge Eick also discussed and found deficient Plaintiff's identical responses to Interrogatories 10-12: "While 10 asks for information concerning compilations, 11 asks for information **[*17]** concerning analyses, and 12 asks for information concerning method. Your responses and your contentions appear to be identical . . . Isn't there some difference between a "trade secret compilation," a "trade secret analysis," and a "trade secret method"? Dkt. 128-2 at 29.

Following the hearing, Judge Eick issued a written order granting Defendant's motion to compel further responses to all of the subject interrogatories except Interrogatory 6. Dkt. 93. The order directed Plaintiff to serve new "complete answers" without objection, "state facts rather than conclusions," and "state all facts within Plaintiff's possession . . . that [are] responsive to the interrogatory." *Id.* Further, the order stated that Plaintiff should not: (i) apply Civil *Rule 33(d)* in its answers; (ii) use language "implying that there may exist additional, unstated facts within Plaintiff's possession . . . that may be responsive to the interrogatory;" or (iii) include "any statement to the effect that 'discovery is continuing' or that the interrogatory 'seeks information that is likely solely within the possession of the Defendant." *Id.* Judge Eick awarded $19,263 in attorneys' fees to Defendant. *Id.*

## IV. Plaintiff's Motion [*18] for Review

### A. Timeliness of the Motion for Review

*HN2*[ ] *Local Rule 72-2.1* requires that, a party objecting to a ruling of a Magistrate Judge as to a non-dispositive pretrial matter, file a Motion for Review and Reconsideration within 14 days of service of the written ruling by the Magistrate Judge. *L.R. 72-2.1*. Magistrate Judge Eick issued his order to compel on August 30, 2013. Dkt. 93. The parties were served with the order through the electronic filing system on August 30, 2013. Dkt. 128 at 27. Plaintiff filed its Motion 14 days later, on September 13, 2013, but it was stricken pursuant to order G-106 because Plaintiff had not selected a proper hearing date. Dkt. 99, 101. The Motion was then re-filed on September 17, 2013. Dkt. 106. Because Plaintiff's Motion was untimely under *Local Rule 72-2.1*, it may be denied on this ground.

*HN3*[ ] A district court also has discretion to decline the

consideration of a motion for review when the moving party did not arrange a timely, pre-filing conference. Thus, *Local Rule 7-3* requires counsel for the moving party to confer with opposing counsel at least seven days prior to the filing of a motion for review. If there is no timely, pre-filing conference, a court has the discretion to deny the motion on this ground without **[*19]** considering its merits. *See, e.g., Singer v. Live Nation Worldwide, Inc., 2012 U.S. Dist. LEXIS 5196, 2012 WL 123146, *2 (C.D.Cal. Jan. 13, 2012)*. Plaintiff initially filed the Motion September 13, 2013. Under *Local Rule 7-3*, Plaintiff's counsel was to have arranged a pre-filing conference at least seven days earlier, *i.e.*, on or before September 6, 2013. The mandatory pre-filing conference took place three days late, on September 9, 2013, only four days before the Motion's initial filing, which made its filing improper. Dkt. 106 at 2. Notwithstanding these procedural defects, no prejudice to Defendant has been shown. Therefore, in the exercise of its discretion, the Court deems it proper to address the merits of the Motion for Review.

**B. Legal Standard**

*HN4*[ ] *Fed. R. Civ. P. 72(a)* governs the review of a non-dispositive ruling by a magistrate judge. It provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." *Fed. R. Civ. P. 72(a)*; *28 U.S.C. § 636(b)(1)(A)*. A district court "has the power to affirm, modify, vacate, set aside or reverse' the magistrate judge's order and 'may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings... as may be just under the circumstances." *Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010)* (quotations omitted).

*HN5*[ ] When **[*20]** considering findings of fact, a district court applies the "clearly erroneous" standard, which is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pensions Trust, 508 U.S. 602, 623, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993)* (internal quotations omitted). "Review under that standard allows 'great deference,' and as long as the magistrate judge's 'account of the evidence is plausible in light of the evidence viewed in its entirety, [the Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *United States v. Stone, 2013 U.S. Dist. LEXIS 158447, 2013 WL 5934346, at *2 (E.D. Cal. Nov. 5, 2013)* (quoting *Phoenix Engineering and Supply Inc. v. Universal Elec. Co., Inc., 104 F.3d 1137, 1141 (9th Cir. 1997))*.

*HN6*[ ] Legal conclusions of a magistrate judge are subject to de novo review to determine whether they are "contrary to law." *See Adolph Coors Co. v. Wallace, 570 F. Supp. 202, 205 (N.D. Cal. 1983)* ("Thus, while we may review magistral findings of fact, subject only to the 'clearly erroneous' standard, we may overturn any conclusions of law which contradict or ignore applicable precepts of law"); *Crispin, 717 F. Supp. 2d at 971* ("[T]he 'contrary to law' standard permits independent review of purely legal determinations by the magistrate judge.") (internal quotations omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Fajardo v. McGuinness, 2009 U.S. Dist. LEXIS 31205, 2009 WL 981699, at *1 (E.D. Cal. Apr. 13, 2009)*.

**C. Application**

1. Order to Compel **[*21]** Discovery

The Motion for Review does not raise specific challenges to the rulings made with respect to individual interrogatories. Instead, Plaintiff raises one general objection: Because each of the interrogatories at issue was a "contention interrogatory" propounded early in the discovery process, Defendant had no "absolute right" to an answer. Dkt. 106-1 at 5. In support of this position, Plaintiff relies on a 1985 decision authored by former Magistrate Judge Brazil, *In re Convergent Techs. Sec. Litig., 108 F.R.D. 328, 332 (N.D. Cal. 1985)*, in which he stated that

> there is substantial reason to believe that the *early* knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse. Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel. Moreover, at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently **[*22]** likely to be productive to justify the burden that responding can entail.

*Id. at 337-38*. The opinion went on to state that this would not "preclude entirely the *early* use of contention interrogatories, but [] place a burden of justification on a party who seeks answers to these kinds of questions before substantial documentary or testimonial discovery has been completed." *Id. at 338*. Plaintiff appears to be arguing that, under *Convergent*, Judge Eick's order requiring it to provide more

complete answers to contention interrogatories was contrary to law. Dkt. 106-1 at 5-6.

Plaintiff's argument fails for three reasons. *First*, in its response to the interrogatories, Plaintiff did not object that all those at issue in this Motion for Review were improper "contention interrogatories." Such an objection was required to preserve the claim. HN7[ ] Thus, Civil Rule 33 requires that the responding party must "serve its answers and any objections within 30 days after being served with the interrogatories" and "[a]ny ground not stated in a timely objection [to an interrogatory] is waived unless the party's failure to object is excused by the court for good cause shown"). Moreover, in the briefing and during the hearing on the Discovery [*23] Motion, Plaintiff did not raise the "contention interrogatory" objection other than in support of the claim that Interrogatories 5, 9, 17, and 19 were overbroad. HN8[ ] Dkt. 90 at 41, 75; Dkt. 90-2 at 27, 46 ("[w]hile 'all facts' contention interrogatories are sometimes permissible under the federal rules, the scope of such interrogatories is not limitless," citing ViaSat Inc. v. Space Systems/Loral, Inc., 2013 U.S. Dist. LEXIS 96622, 2013 WL 3467413, at *2-3 (S.D. Cal. July 10, 2013); Moses v. Halstead, 236 F.R.D. 667, 674 (D.C. Kan. July 28, 2006)). Nor did Plaintiff cite *Convergent*. HN9[ ] Generally "a district court may decline to hear new arguments not raised before the magistrate judge." Hernandez v. Virga, 2013 U.S. Dist. LEXIS 149022, 2013 WL 5670942 (S.D. Cal. Oct. 16, 2013); Greenhow v. Sec'y of Health & Human Servs., 863 F.2d 633, 638-639 (9th Cir. 1988), overruled on other grounds by United States v. Hardesty, 977 F.2d 1347 (9th Cir. 1992) ("Arguments raised for the first time on appeal have traditionally been held to be barred, absent exceptional circumstances or a convincing explanation for the failure to present them to the court below . . . The district court was well within its discretion in applying this rule to matters heard in the first instance by the magistrate."); United States v. Stone, 2013 U.S. Dist. LEXIS 158447, 2013 WL 5934346 (E.D. Cal. Nov. 5, 2013) (refusing to consider, in a motion for review of magistrate judge's discovery order, authority not presented to magistrate judge in motion to compel).

HN10[ ] *Second*, *Convergent* is not controlling authority. This Court does not find it persuasive as a rule of general application. Whether contention interrogatories are appropriate [*24] is appropriately addressed on a case-by-case and interrogatory-by-interrogatory basis. Other trial courts have followed this approach and not that of *Convergent*. *See* Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646 (C.D. Cal. 1997) (granting a motion to compel responses to contention interrogatories); National Academy of Recording Arts & Sciences v. On Point Events, L.P., 256 F.R.D. 678, 682 (C.D. Cal. 2009) (granting motion to compel response to contention interrogatory that asked ticket seller to identify its affirmative defenses and to state facts supporting them); United States ex rel. O'Connell v. Chapman University, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (granting motion to compel responses to contention interrogatories asking relator to explain the nature of the contentions she made in the complaint and their factual basis). In *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, the court expressly disagreed with *Convergent* explaining that it "prefers to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment." Cable & Computer Tech., Inc., 175 F.R.D. at 652.[3] The court went on to note that requiring answers to "factual" contention interrogatories is "consistent with Rule 11 of the Federal Rules of Civil Procedure, which requires that plaintiffs must have some factual basis for the allegations in their complaint. Id. at 652.

*Third*, Judge Eick's order is not contrary to law even if *Convergent* were applied. Magistrate Judge Brazil noted that the interrogatories at issue there "numbered more than 1,000 questions (counting subparts)" and that there was some force to the claim by the responding party that the interrogatories were propounded to harass and pressure plaintiff's counsel. 108 F.R.D. at 334-35. HN11[ ] Furthermore, *Convergent* did not create a per se rule. Rather,

> a party who wants *early* answers to contention interrogatories must hand-craft a limited set of questions. In addition, such a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56.

108 F.R.D. at 338-39.

Here, Defendant propounded 23 interrogatories. The 16 interrogatories upon which the Discovery Motion was based asked Plaintiff to state the facts on which it relied to support

---

[3] The court also noted that Judge Brazil, who authored *Convergent* [*25], had since modified his position. *Id.* (citing McCormick-Morgan, Inc. v. Teledyne Industries, Inc., 134 F.R.D. 275, 287 (N.D.Cal.1991) (appropriately framed and timed contention interrogatories rather than depositions in patent infringement action was most appropriate vehicle for establishing contentions of an alleged infringer).

its claims as to breach of contract, misappropriation of trade secrets, and damages. These interrogatories went to the core of the [*26] issues in the litigation. They were not improper.

2. Sanctions under Civil Rule 37

a) Entitlement to Fees

The order issued by Judge Eick does not state the subsection of Civil Rule 37 on which the fee award was based. However, the order provides that "Plaintiff's conduct necessitating the Motion lacked substantial justification, and there are no circumstances that would make such an award unjust." Dkt. 93. The language of Judge Eick's order parallels that of Civil Rule 37(a)(5)(A):

> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection *was substantially justified*; or
>
> (iii) *other circumstances make an award of expenses unjust*.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

Plaintiff argues that sanctions were not merited here because Plaintiff [*27] responded and objected to Defendant's contention interrogatories in good faith. Plaintiff first argues that Judge Eick's ruling was "inappropriate" and "unreasonable" because sanctions are generally awarded only after a party failed to comply with a court order. Dkt. 106-1 at 7. However, the cases on which Plaintiff relies do not support its position. HN12[↑] Thus, these decisions involve the review of sanctions awarded under Civil Rule 37(b)(2)(C). *See id.* (citing Keithley v. Homestore.com, Inc., 629 F. Supp. 2d 972, 977-78 (N.D. Cal. 2008) (reviewing an award of sanctions granted under Civil Rule 37(b)(2)(C) after a party failed to comply with a court order); Cummins v. Lotspeich, 2006 U.S. Dist. LEXIS 75197, 2006 WL 282429 (D. Nev. 2006) (same)).[4] Civil Rule 37(b)(2)(C) applies to a party's failure to comply with a court order, whereas Civil Rule 37(a)(5)(A) applies to a prevailing party on a motion to compel. Moreover, the plain language of Civil Rule 37(a)(5)(A) shows that attorney's fees "must" be awarded upon granting a motion to compel unless the motion was not brought in good faith, the opposing party's nondisclosure was substantially justified, or other circumstances make an award of expenses unjust. Judge Eick granted the motion to compel and determined that none of the conditions meriting relief under Civil Rule 37(a)(5)(A) were present. Thus, Judge Eick's ruling applied the appropriate statutory provision.

Judge Eick also [*28] correctly applied the law. Plaintiff argues that its responses were substantially justified because "there was a genuine dispute about the appropriateness of the Defendant's contention interrogatories" as "discovery had just begun, the Plaintiff had not received responses to its first sets of discovery requests, and the Defendant had requested all facts relating to the Plaintiff's claims before those facts had been fully developed through discovery." Dkt. 106-1 at 7. Plaintiff cites no cases that support this position. Moreover, Plaintiff's contention that it "made a good faith effort to respond" to Defendant's interrogatories is not controlling. HN13[↑] "An award of expenses does not require a showing of willfulness or improper intent. Rather, the standard is whether there was 'substantial justification' for the losing party's conduct." Celano v. Marriott Int'l, Inc., 2007 U.S. Dist. LEXIS 54707, 2007 WL 2070220, at *4 (N.D. Cal. July 13, 2007) (citing *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982)). The burden is on the non-moving party to show substantial justification. *Id.* Plaintiff has not met this burden here. Indeed, during the hearing on the Discovery Motion, Plaintiff recognized that several of its responses could have been deemed inadequate. Thus, when Judge Eick asked Plaintiff's counsel, "Why was that not a frivolous way of responding [*29] to Interrogatory No. 1?" Plaintiff's counsel responded, "It may have been an improper response." Dkt. 128-2 at 20. With regard to Interrogatory No. 8, Judge Eick asked "[y]our response identifies some third parties but doesn't say what specific confidential information was disclosed to each of the third parties. Isn't that an obvious deficiency ...?" Dkt. 128-2 at 30. Plaintiff's counsel responded, "Yes, Your Honor." *Id.*

There is also no showing that the ruling by Judge Eick was the result of factual findings that were clearly erroneous.

---

[4] The other two cases cited by Plaintiff for this proposition do not support its argument. *See* Grimsley v. Charles River Labs., 2010 U.S. Dist. LEXIS 93071, 2010 WL 3238950 (D. Nev. August 13, 2010);

---

Grimes v. City & Cnty of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991). Although each involved the review of an award of sanctions for failure to comply with a court order, in each, the magistrate judge had also ordered sanctions for failure to comply with Civil Rule 37(a)(1). The reviewing courts did not critique these required fee awards under Civil Rule 37(a).

Judge Eick did not elaborate on the factual basis for the award of fees. However, he determined that relief from payment was not merited because "Plaintiff's conduct necessitating the Motion lacked substantial justification, and there are no circumstances that would make such an award unjust." Dkt. 93. Plaintiff does not contend that Judge Eick failed to consider any facts in making this determination. Rather, Plaintiff simply makes conclusory claims that it acted in "good faith" in responding to the interrogatories. Thus, there is no showing that there has been any factual finding or predicate that was clearly erroneous in connection with the determination [*30] that Plaintiff was not "substantially justified" in proffering facially deficient responses to Defendant's interrogatories.

b) Amount of Fees Awarded

Judge Eick awarded $19,263 in attorney's fees to Defendants in connection with the Discovery Motion. Dkt. 93. In his written order, Judge Eick did not state the basis for this fee calculation. However, during the hearing he stated that Defendant asked for sanctions "in the amount of attorney's fees reasonably expended in connection with the motion." Opp., Exh. A, Dkt. 128-2 at 36.

The amount of fees Judge Eick awarded is consistent with the evidence presented by Defendant. *See* Salsig Decl., Dkt. 77-4. Thus, Defendant's counsel has declared under penalty of perjury that it spent 21.6 hours preparing for the discovery conference and holding the discovery conference, 15.5 hours drafting the joint stipulation and 28.2 hours for reviewing Plaintiff's supplemental responses and revising the joint stipulation. Salsig Decl., ¶¶ 23-24, Dkt. 77-4. Defendant's counsel also has declared that it billed at a rate of $295 per hour for the matter. *Id.* ¶ 24. Counsel also declared that the amount of fees being sought was reasonable given that Defendant "was [*31] required to engage in the meet and confer process with regard to nearly every Interrogatory" that it served on Plaintiff. *Id.* Finally, Defendant's counsel declared that it was not seeking fees for time to finalize and file the Joint Stipulation, preparation for or attendance at the hearing on the Discovery Motion, or for the work of a colleague work on the Discovery Motion. *Id.* Notwithstanding these statements, Defendant's counsel did not submit any authenticated time records in connection with the Discovery Motion.

*HN14*[↑] Civil *Rule 37(a)(5)(A)* requires that the losing party on a motion to compel pay the movant's "reasonable expenses" incurred in making the motion, including attorney's fees. Thus, a determination was required as to whether the fees Defendant incurred in connection with the Discovery Motion were reasonable. Because Judge Eick's order does not expressly state the basis for his conclusion as to the amount of fees, there is an insufficient basis on which analyze the amount of fees awarded. For this reason, a resubmission of this issue to Judge Eick is appropriate. *See 28 U.S.C. § 636(b)(1)*; *Sedlacek v. Morgan Whitney Trading Group, Inc., 795 F. Supp. 329, 332 (C.D. Cal. 1992)*. Once an explanation of the fee award is provided, it can be reviewed. *See Kukui Gardens Corp. v. Holco Capital Crp., Inc., 675 F. Supp. 2d 1016, 1023 (D. Haw. 2009)*("[t]he district court may receive further evidence [*32] or recommit the matter to the magistrate judge with instructions").

Thus, Plaintiff's Motion for Review is DENIED; however, the matter is resubmitted to Judge Eick for a clarification of the basis for the determination of the amount and reasonableness of the award of attorney's fees.

**V. Defendant's Summary Judgment Motion**

**A. Legal Standard**

*HN15*[↑] A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence [*33] of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*; *Fed. R. Civ. P. 56(e)*.

*HN16*[↑] Only admissible evidence may be considered in deciding a motion for summary judgment. *Fed. R. Civ. P. 56(e)*. In considering a motion for summary judgment, a court is not to make any credibility determinations or weigh conflicting evidence. Further, all inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987)*. However, conclusory,

speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)*.

## B. Application

1. Whether Plaintiff's Claims are Time-Barred

a) Breach of Contract Claim

HN17[↑] Plaintiff's breach of contract claim is subject to a four-year statute of limitations. *Cal. Civ. Proc. Code § 337*. The period begins upon the occurrence of the last element essential to the cause of action. *April Enterprises, Inc. v. KTTV, 147 Cal. App. 3d 805, 826, 195 Cal. Rptr. 421 (1983)* ("In ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action . . . does not toll **[*34]** the statute.").

Plaintiff claims that Defendant breached the May Confidentiality Agreement when, "[w]ithout first obtaining Kraft's prior written consent" Defendant "secretly and improperly misappropriate[ed] Kraft's confidential information . . . . by disclosing the Confidential Information to third parties, and by utilizing the Confidential Information to acquire Inland and then to operate Inland." FAC ¶ 14, Dkt. 7. Plaintiff further claims that its cause of action for breach includes Defendant's failure to acquire Precon, because "[b]y acquiring only Inland using Kraft's confidential information, Kraft was precluded from marketing the dominant precast group to others, or from leading the acquisition itself." *Id.* In its discovery responses, Plaintiff clarified that the "third parties" to which Defendant allegedly disclosed the proprietary information included Inland, Inland ESOP, Precast, and CRH and "certain presently-unknown buyer(s)." Salsig Decl., Exh. 14.

Defendant argues that all of the events that provide the basis for Plaintiff's breach of contract cause of action occurred on or before December 17, 2007, when Defendant's acquisition of Inland was completed. Mot. at 8. Thus, **[*35]** Defendant contends that the limitations period expired four years later, on December 17, 2011. Because Plaintiff did not commence this action until April 27, 2012, Defendant contends that it is time barred. Plaintiff responds that its breach of contract cause of action did not accrue until April 28, 2008, when it received the email from Defendant's counsel stating that Defendant would not pursue the acquisition of Precon. Because this would extend the limitations period to April 28, 2012, Plaintiff argues that this action was timely filed. Opp. at 11.

Whether summary judgment is proper turns on the following: Is there a genuine issue of material fact as to whether the parties had an agreement, whether express or implied, that Defendant would act in good faith to acquire both Inland and Precon. At the December 9, 2013 hearing, Plaintiff's counsel argued that there was such an agreement. Plaintiff must so contend because it concedes that, as of December 17, 2007 -- more than four years before it brought this action -- it knew that Defendant had used Plaintiff's confidential information in connection with the acquisition of Inland. Salsig Decl., Exh. 2, Kraft Depo. at 183:8-11, 194:3-20 (Q: Okay. **[*36]** So you've testified that . . . they've used your confidential information to acquire Inland, is that correct? A: Yes. With the explicit amplification that the acquisition of Inland rested on trade secrets, and the contract was entered into for the purpose of protecting the trade secrets."). Indeed, on December 17, 2007, Plaintiff sent an invoice for $5 Million to Inland for its claimed services to Inland that resulted in this acquisition, Salsig Decl., Exh. 11 ¶ 17, Exh. A, having previously drafted the Letter of Intent between Inland and Defendant with respect to this acquisition, Salsig Decl., Exh. 4, Kraft Depo. at 302:18-303:6; Salsig Decl., Exh. 6-8, and signed the September Confidentiality Agreement as to the underlying negotiations that resulted in the acquisition, Salsig Decl., Exh. 10. And, Plaintiff contends that Defendant violated the May Confidentiality Agreement, because Plaintiff did not provide written consent to Defendant with respect to its use of Plaintiff's confidential information in connection with the acquisition of Inland. Opp. at 18 ("Oldcastle was precluded by both [the May and September Confidentiality] Agreements from using Kraft's proprietary information unless it received **[*37]** written authorization, which it never received."). For these reasons, the limitations period started on December 17, 2007, unless there were an agreement between Plaintiff and Defendant pursuant to which Defendant was obligated to proceed to acquire Precon and under which Plaintiff permitted the use of its confidential information while that process was underway. If there were such an agreement, Plaintiff could assert that it did not know that the separate acquisition of Inland effected a breach of the May Confidentiality Agreement by Defendant as to the use of Plaintiff's confidential information.

Plaintiff's opposition to the Motion for Summary Judgment makes no mention of such an agreement. Nor has Plaintiff presented any concrete evidence as to such an agreement. *First*, no reference is made to the acquisition by Defendant of either Inland or Precon in the May Confidentiality Agreement. Rather, that states only that Plaintiff and Defendant planned to "discuss various transactions." Salsig Decl., Exh. 3.

*Second*, although the Agreement does not contain an integration clause, Plaintiff has not proffered any evidence to support its newly adopted claim that Defendant later agreed to acquire **[*38]** both companies. Kraft's declaration asserts that, as of December 6, 2007, Plaintiff "was operating under the belief that Oldcastle would acquire Precon" and implies that Oldcastle made statements to Plaintiff that it was attempting to acquire Precon. Kraft Decl. ¶¶ 35-36. However, no evidence about any such oral statements by Defendant is presented. Rather, the only evidence Plaintiff provides to support these claims is a June 30, 2007 email from Defendant's then-Vice President of Development, David Steevens, stating "we are very interested in moving forward with our talks with the goal of quickly reaching agreement and closing the acquisition of Precon and Inland." Kraft Decl., Exh. 4. This email does not create a genuine issue of material fact as to whether the parties had an agreement that Defendant would acquire both companies. Moreover, at the December 9, 2013 hearing, Plaintiff's counsel asserted that the agreement that was in place included a requirement that Defendant make a payment to Plaintiff upon the completion of the two acquisitions. Yet, there is no evidence to support this claim either in general or as to a specific amount that would be paid. Nor is there any evidence **[*39]** as to the terms on which Defendant was to agree to make each acquisition.

*Third*, as noted, upon the closing of the Inland transaction, Plaintiff immediately billed Inland for $5 Million, but sent no invoice to Defendant. Again, this evidence is inconsistent with Plaintiff's newly-adopted theory that Defendant was obligated to pay Plaintiff some fee in connection with the acquisition of Precon.[5]

*Fourth*, Plaintiff's Opposition reflects inconsistencies with regard to its theory of breach. Although, in its Opposition to the Motion for Summary Judgment, Plaintiff contends that its claim for breach of contract "has always included" Defendant's "failure to acquire Precon," *id.* at 12, Plaintiff later takes a contradictory position. When discussing the substance of the breach of contract claim, Plaintiff contends that "Oldcastle was precluded by both [the May and September Confidentiality] Agreements from using Kraft's proprietary information unless it received written authorization, which it never received." Opp. at 18. Thus, for purposes of the statute of limitations, Plaintiff argues that the confidentiality agreement was not breached until it became clear that Defendant would not acquire Precon, while for purposes **[*40]** of the substantive breach argument, Plaintiff contends that *any* use of the proprietary information by Defendant constituted a breach. These inconsistent positions provide further support for the conclusion that the breach occurred upon Defendant's acquisition of Inland, not at some later date after Defendant elected not to pursue the acquisition of Precon.

*Fifth*, even if Plaintiff had presented evidence to create a genuine issue of material fact as to whether Defendant agreed to acquire both companies, Plaintiff has not offered evidence sufficient to create a genuine issue of material fact as to its damages. For example, there is no evidence as to what amount Defendant was to pay Plaintiff upon the acquisition of Precon. And, although Plaintiff presented an invoice to Inland following its acquisition by Defendant, Plaintiff concedes that it had no agreement with Precon as to any fee that it would owe Plaintiff were it acquired by Defendant. Kraft, as Plaintiff's *Fed. R. Civ. P. 30(b)(6)* designee, stated in his deposition that no market maker agreement, brokerage agreement, or agreement of any type was finalized with Precon. Salsig Decl., Exh. 2, Kraft Depo. at 75:15-76:19. Nor is there any evidence that Plaintiff **[*41]** had an agreement with Defendant pursuant to which Defendant would pay Plaintiff some commission in connection with either potential acquisition. Plaintiff's interrogatory responses confirm that it claims damages not based on its inability to profit from a later acquisition of Precon, but as a result of the claimed diminution in the value of its trade secrets *once Inland had been acquired.* Thus, in response to Interrogatory 19, which asked Plaintiff to provide the basis for Plaintiff's breach of contract damages calculation, Plaintiff stated: "Oldcastle's acquisition of Inland effectively scuttled the Plaintiff's plan for the creation of a dominant precast group. At this point, because Inland is no longer a viable component of the group, the value of the Plaintiff's acquisitions list . . . has declined to the point where it has nearly no value." Salsig Decl., Exh. 14 at 90-91. This statement concedes that Plaintiff claims to have been damaged on December 17, 2007 when Defendant acquired Inland.

---

[5] Plaintiff attempts to extend the date the cause of action accrued through Kraft's declaration, in which he states "[i]n the months following April 2008, I continued to view the acquisition of Precon as still being on the table and expected that negotiations would resume." Kraft Decl. ¶ 43. However, given the lack of evidence of an agreement between the parties that Defendant would seek to acquire both Inland and Precon, Kraft's belief regarding the Precon acquisition is irrelevant to when Plaintiff's cause of action accrued. *HN18*[↑] Moreover, to the extent Kraft's declaration contradicts Plaintiff's prior admissions, the sham affidavit rule prohibits Plaintiff from using the declaration to create a triable issue. *Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262 (9th Cir. 1991)* ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). As noted above, Kraft has already deposed, and Plaintiff has already admitted in its interrogatory response, that Defendant's Acquisition of Inland constituted a breach of the agreement. It cannot now rely on Kraft's declaration in an attempt to create a triable issue of material fact as to when the breach occurred.

*Finally*, even if Plaintiff's argument were accepted, *i.e.*, that Defendant's failure to acquire Precon constituted a second breach of the May Confidentiality Agreement, the statute of limitations [*42] began to run upon the initial breach in the confidential relationship. Courts in similar instances have declined to accept a "continuing breach" theory to extend the limitations period for breach of a confidentiality agreement. *Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 644 (N.D. Cal. 1993)*; *Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 527 (N.D. Cal. 2000)*. These courts reason, that, because *Cal. Civ. Code § 3426.6* rejects a continuing tort theory for misappropriation of trade secrets, a continuing breach theory for a nondisclosure agreement should similarly be rejected. For example, in *Intermedics*, the court explained that:

> it would be "anomalous" to reject the continuing tort doctrine for purposes of Intermedics' claims of misappropriation of trade secrets or confidential information, but to accept an analogous "continuing breach" doctrine for purposes of the breach of contract claims that are based on the same alleged misappropriations. We emphasize again that California authorities, legislative and judicial, have insisted that the basis for liability under trade secret causes of action is breach of a confidential relationship. Faced with the issue pressed here by plaintiff, we believe that California courts would perceive no principled basis for treating differently, with respect to the statute of limitations, a confidential relationship [*43] that is implied by law and one that is created by a written instrument.

*822 F. Supp. at 646*. This Court agrees.

b) Trade Secret Claim

*HN19*[ ] A claim for misappropriation of trade secrets is subject to a three year statute of limitations which begins to run when "the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." *Cal. Civ. Code § 3426.6*.

Defendant contends that Plaintiff's misappropriation claim accrued on December 17, 2007. Mot. at 10-11. Thus, the limitations period expired three years later, on December 17, 2010. This was a year and a half before this action was filed. Plaintiff contends that it did not discover or have reason to discover the misappropriation of its trade secrets until "the Precon deal was completely off the table." Although Plaintiff does not tie this assertion to a specific date, it is presumably a reference to April 28, 2008, which is the date on which Kraft received an email from Defendant's counsel stating that it would no longer pursue the acquisition of Precon. Opp. at 16. However, immediately after making this argument, Plaintiff admits the following:

In written discovery, Kraft stated that Oldcastle's use of its confidential information in connection with Oldcastle's purchase [*44] of Inland likely constituted a misappropriation of the Plaintiff's trade secrets. It further stated that without this information the Defendant would not have acquired Inland at the time and in the manner in which it did.

Opp. at 16. Kraft made similar statements in his deposition. *See* Salsig Decl., Exh. 2, Kraft Depo. at 184:5-8 ("[T]he acquisition of Inland rested on trade secrets. . ."). These statements directly contradict Plaintiff's argument that it could not have discovered the misappropriation until months after the Acquisition. If, as Plaintiff contends, the Acquisition would not have occurred but for Defendant's use of the Proprietary Information, then Plaintiff knew or should have known of the misappropriation as of the Acquisition date. As explained in the prior discussion, the evidence demonstrates that Plaintiff knew of the Acquisition on December 17, 2007. Indeed, its December 17 Invoice to Inland expressly states: "The transaction is approved by the Boards of Directors of Inland Concrete Enterprises, Inc. and CRH plc . . . and is closed December 17, 2007." Salsig Decl., Exh. 11 at 73. Further, Plaintiff's own evidence contradicts its assertion that it was unaware of the misappropriation [*45] until April 28, 2008. An attachment to the Declaration of Jacob D.C. Humphreys in Support of Plaintiff's Opposition, is an email sent by Kraft to Defendant's counsel on April 28, 2008. Humphreys Decl., Exh. A at 49. The email states that Plaintiff had issued a report on "January 8, 2008," in which Plaintiff asserted that:

> Oldcastle's conduct has destroyed this historic opportunity that was meticulously put together by Kraft Americas over the last 10 years. Oldcastle knew that its conduct would destroy the financial transaction and elected to engage in the conduct anyway . . .
> Oldcastle knew that Kraft would prohibit any changes to existing agreements and understandings . . .
> Oldcastle decided that if it could by hook or by crook figure out a way to deceive Kraft Americas and Precon that it wanted to complete the Precon-Inland transaction, it might be able to enter into an agreement with only Inland at an unbelievable valuation.
>
> Oldcastle decided to buy the transaction's lower price component (Inland) before the contract with Precon would settle. This action was done willfully. This action was done in bad faith. Oldcastle knew that this would damage the financial transaction that Kraft [*46] Americas had put together over a 10 year period and did it anyway.

*Id.* at 49-52. This communication shows that, by January 8,

2008, Plaintiff knew of the claimed misappropriation of its claimed trade secret information. Thus, even with a generous view of the facts, the limitations period expired on January 8, 2011, which was more than a year before Plaintiff filed this action.

Plaintiff's contention that Defendant continued improperly to use Plaintiff's trade secrets to run Inland after the December 2007 Acquisition, does not have any effect on the limitations period. HN20[↑] As noted above, Cal. Civ. Code § 3426.6 expressly rejects a continuing tort theory for misappropriation of trade secrets for the purposes of the statute of limitations. Section 3426.6 provides that "a continuing misappropriation constitutes a single claim." The California Supreme Court, in interpreting this provision, concluded that "section 3426.6 is derived almost verbatim from section 6 of the Uniform Act ["UTSA"] as originally drafted." *Cadence Design Sys., Inc. v. Avant! Corp., 29 Cal. 4th 215, 222, 127 Cal. Rptr. 2d 169, 57 P.3d 647 (2002)*. Thus, the California Supreme Court looked to the UTSA and then concluded as follows:

> From our examination of the above statutes, a distinction between a "misappropriation" and a "claim" emerges. A *misappropriation* within the meaning of the UTSA occurs not [*47] only at the time of the initial acquisition of the trade secret by wrongful means, but also with each misuse or wrongful disclosure of the secret. But a *claim* for misappropriation of a trade secret arises for a given plaintiff against a given defendant *only once, at the time of the initial misappropriation*, subject to the discovery rule provided in section 3426.6. Each new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim.

*Id.* (emphasis added). Thus, under California law, the limitations period began to run as of the first misappropriation.

c) Equitable Tolling

Plaintiff contends that the statute of limitations was tolled when it filed the King County Superior Court action on December 17, 2011. HN21[↑] "Equitable tolling under California law is a judicially created doctrine that operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly." Hatfield v. Halifax PLC, 564 F.3d 1177, 1185 (9th Cir. 2009). In determining whether to apply equitable tolling, courts consider whether there was: "(1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in [*48] gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Id.* However, when a limitations period is equitably tolled, the limitations period begins to run again when the tolling event has concluded. *Lantzy v. Centex Homes, 31 Cal. 4th 363, 370-71, 2 Cal. Rptr. 3d 655, 73 P.3d 517 (2003)* ("[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred."). When the tolling event is the filing of a suit raising the same or similar claims or the pursuit of alternative remedies for the same harm, the tolling event concludes at the end of the proceedings. *See Addison v. State of California, 21 Cal.3d 313, 146 Cal. Rptr. 224, 578 P.2d 941 (1978)* (equitable tolling doctrine suspended six-month limitations period where suit was filed within six months in federal court and plaintiffs filed complaint in state court prior to dismissal of the federal suit in anticipation of an adverse ruling on a motion to dismiss); *Elkins v. Derby, 12 Cal.3d 410, 414-20, 115 Cal. Rptr. 641, 525 P.2d 81 (1974)* (limitations period was tolled [*49] from the date plaintiff "initiated his [worker's] compensation claim to . . . when the referee's decision became final").

Here, the equitable tolling doctrine, even if applicable, does not change the analysis as to the statute of limitations issues. The limitations period expired with respect to Plaintiff's trade secret claim on December 17, 2010 or, at the very latest, January 8, 2011. Both of these dates were several months before Plaintiff filed the King County Superior Court action. With respect to the breach of contract claim, Plaintiff filed its action in the King County Superior Court on October 3, 2011. Kraft Decl. ¶ 47. The King County court dismissed the action on December 7, 2011. Fife Decl., Exh. A. Assuming that equitable tolling applies, the limitations period would be extended by 64 days. That would, in turn, extend the deadline for the filing of the breach of contract claim to February 19, 2012. But, Plaintiff did not file this action until April 27, 2012. Dkt. 1. Thus, even if the tolling period were extended, Plaintiff's breach of contract claim would be time barred.[6]

---

[6] This conclusion is not altered by Kraft's assertion that Plaintiff's then-counsel did not notify Plaintiff of the dismissal of the King County action until January 27, 2012. *See* Kraft Decl. ¶ 47. Even if this delay were applied into the tolling period -- and there is no authority that a claimed attorney error is a basis for doing so -- the limitations period would have run on April 9, 2012. This is more than two weeks before this action was filed. Plaintiff states that it obtained new counsel in mid-March 2012. *Id.* Further, given Plaintiff's contention that this action was "nearly identical" to the King County action, Plaintiff's newly obtained counsel had sufficient

For the foregoing reasons, Defendant's Summary Judgment Motion is GRANTED. Plaintiff's claims **[*50]** are time barred.

### VI. Conclusion

For the foregoing reasons, Defendant's Summary Judgment Motion is GRANTED. Plaintiffs Motion for Review is DENIED; however, the issue as to the amount of fees that were appropriate is resubmitted to Judge Eick for a further statement as to the basis for the determination of the reasonableness of the amount of fees awarded. Defendant shall lodge a proposed judgment consistent with this Order by December 28, 2013. Plaintiff shall have seven days from the date the proposed judgment is lodged to file any objections.

**IT IS SO ORDERED**.

---

**End of Document**

---

time to file this action by no later than April 9, 2012. Thus, even "liberally applied," the equitable tolling rule would not rescue Plaintiff's claims. *Elkins, 12 Cal.3d at 418*.