<u>**EXHIBIT E**</u>

**First Vexatious-Litigant Order**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   **LA CV 15-00701-VBF**              Dated:       Thursday, March 24, 2016

Title:     ***Rune Kraft (an individual), Plaintiff[1] v. Old Castle Precast Inc. (a Washington
           corporation), Inland Concrete Enterprises Inc. ESOP, and John Doe, Defendants***

| | |
|---|---|
| PRESENT: | HONORABLE VALERIE BAKER FAIRBANK, SENIOR U.S. DISTRICT JUDGE |

N/A                                             N/A
Courtroom Deputy                                Court Reporter

ATTORNEYS PRESENT FOR PETITIONER        ATTORNEYS PRESENT FOR RESPONDENT

N/A                                             N/A

**PROCEEDINGS (IN CHAMBERS):        ORDER      Granting Defendants' Motion to Declare
                                               Plaintiff Rune Kraft to be a Vexatious Litigant
                                               and Imposing Pre-Filing Restrictions on Him;**

                                               **Denying Without Prejudice the Motion to
                                               Declare Non-Party KALP a Vexatious Litigant**

---

[1]     Kraft purported to file the original complaint on behalf of himself and Kraft Americas, L.P. ("KALP").
By Order issued July 20, 2015 (Doc 25), this Court dismissed KALP because a corporate entity may not appear
except through licensed counsel. *See* Doc 25 at 3 (citing, *inter alia*, *Rowland v. California Men's Colony*, 506
U.S. 194, 201-202, 113 S. Ct. 716 (1993)). The dismissal was without prejudice to KALP's right to retain
counsel and have counsel file a motion to reinstate. To date, however, no attorney has appeared for KALP.

        Accordingly, **KALP is not and has never been a proper party to this action, and the Court construes
the complaint to name Rune Kraft as the only plaintiff *ab initio*.** *Accord Chambers v. Amazon.com,
Inc.*, 2015 WL 4077046, n.1 (D.S.C. July 1, 2015) ("The Court has construed the Complaint to name Roland
Chambers, Jr., as the sole Plaintiff in this case. To the extent Plaintiff is attempting to represent Reliable
Brokering, he cannot do so.") (citations omitted), *aff'd*, – F. App'x –, 2015 WL 8944831 (4th Cir. Dec. 16, 2015).

MINUTES FORM 90                                 Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

Proceeding *pro se*, Rune Kraft filed the complaint against Old Castle Precast, Inc. ("Old Castle") and Inland Concrete Enterprises Inc. ESOP ("Inland") in early 2015.   The case was reassigned to the undersigned in June 2015 as related to *Inland Concrete Enterprises ESOP et al. v. Kraft Americas L.P. and Rune Kraft*, LA CV 10-01776-VBF.   Kraft filed a Motion for Change of Assigned Judge, which was construed as a motion to recuse/disqualify and randomly assigned to Judge Wilson, who denied it.[2]  On defendants' Fed. R. Civ. P. 12(b)(6) motion, the Court issued an Order dismissing the complaint with leave to amend.   Kraft timely filed the first amended complaint ("FAC") (Doc 33); defendants moved to dismiss the FAC (Doc 34), Kraft filed opposition, and defendants replied.   The Court will rule on the motion to dismiss by separate order shortly.

**The defendants have also filed a motion to declare plaintiff Rune Kraft and non-party KALP vexatious litigants** pursuant to the Court's inherent authority and C.D. Cal. Local Civil Rules 83-8.1 through 83-8.4 (Doc 10), accompanied by a Request for Judicial Notice (Doc 11).   Rune Kraft filed an opposition brief (Doc 16) and defendants filed a reply (Doc 21).   **For reasons that follow, the Court will grant the motion to declare plaintiff Rune Kraft to be a vexatious litigant and will impose pre-filing restrictions on him. However, the Court will decline to declare non-party KALP to be a vexatious litigant at this time.**

---

[2]

Judge Wilson's July 30, 2015 Order Denying Motion to Change Assigned Judge stated, "This motion copies the allegations set forth in an identical motion made in . . . 2:10-cv-1776-VBF-OP.  The Court denied that motion in an order dated July 28, 2015."  Doc 30 at 1.

In turn, Judge Wilson's July 28, 2015 Order Denying Motion to Disqualify in the 10-1776 case found that "Kraft's arguments do not reveal any impropriety cognizable on a motion to recuse" and further that "[n]othing about Judge Fairbank's memory or medical history bears on the appearance of impartiality."  10-1776 Doc 283 at 2.  In any event, Judge Wilson concluded that "the record contradicts Kraft's contentions."  Doc 283 at 2.

Although Kraft maintains that Judge Fairbank cannot remember basic facts or legal precepts, her rulings reflect a thorough understanding of the case and careful application of the law.  She issued reasoned, even-handed orders on several contested motions.  Sometimes *her rulings* favored Kraft; sometimes they went against him.  But they *always demonstrated facility with the facts of the case as well as the applicable law.  There is, in short, no evidence suggesting that Judge Fairbank cannot fairly and competently adjudicate the case before her.*

Doc 283 at 2-3 (internal citations omitted) (emphasis added).

MINUTES FORM 90                                                            Initials of Deputy Clerk   ___jmb_____
CIVIL - GEN

**HISTORY OF RELATED CASE, *Inland v. KALP & Rune Kraft*, LA CV 10-01776-VBF-OP**

Pleadings and Early Proceedings in the 10-1776 Case. The undersigned presided over a related case, *Inland Concrete Enterprises, Inc. ESOP, Nicholas L. Saakvitne (as Trustee of the Inland Concrete Enterprises, Inc. ESOP), and Inland Concrete Enterprises, Inc. (a California corporation) v. KALP (A limited partnership) and Rune Kraft (an individual)*, Number LA CV 10-01776-VBF. That case was a diversity action sounding in contract and fraud. In March 2010, Inland Concrete Enterprises Inc., and its Employee Stock Ownership Plan ("Inland ESOP"), and Nicholas L. Saakvitne as Trustee of the Plan (collectively "Inland" or plaintiffs) filed the complaint against Kraft Americas, L.P. ("KALP") and Rune Kraft (an individual) ("Kraft"), *see* LA CV 10-01776-VBF Document ("76 Doc") 1. Kraft and KALP jointly filed an answer and counterclaims through counsel in June 2010 (76 Doc 16). In July 2010 this Court issued Orders denying the Kraft/KALP motion to dismiss for lack of subject-matter jurisdiction (76 Doc 32) and finding that plaintiffs had established diversity (76 Doc 42). Also in July 2010 KALP alone filed an amended answer (76 Doc 43) which counterclaimed for breach of contract, account stated, quantum meruit, fraud, and promissory estoppel. Kraft filed a separate answer (76 Doc 47) in the name of "Rune Kraft, as Chairman of Defendant Kraft Americas, L.P., for himself only", asserting neither affirmative defenses nor counterclaims.

In August 2010, this Court issued an Order (76 Doc 61) granting plaintiffs' motion to dismiss KALP's *quantum meruit* counterclaim as barred by the two-year statute of limitations.

Plaintiffs filed motions to compel Kraft to respond to discovery requests (76 Docs 90-92), and the Magistrate issued an order on January 7, 2011 (76 Doc 106) granting one of the motions and denying the other without prejudice. On February 3, 2011, the Magistrate (76 Doc 134) granted plaintiffs' third motion to compel, this time directing Kraft to produce requested documents by March 4, 2011 and, finding that his failure to comply with Fed. R. Civ. P. 34 was substantially unjustified, directing him to pay a sanction of $6,142.50.

On December 6, 2010, this Court issued an Order (76 Doc 93) directing KALP to show cause why the court should not enter default against KALP and dismiss its counterclaim because it was no longer represented by counsel. On December 20, 2010, having received no filing from KALP, this Court issued an order directing entry of default against KALP, and the Clerk entered default against KALP (76 Docs 96-97).

MINUTES FORM 90                                        Initials of Deputy Clerk ___jmb___
CIVIL - GEN

In February 2011, this Court issued an Order (76 Doc 159) denying without prejudice the plaintiffs' application for default judgment against KALP.

In March 2011, this Court issued Orders (76 Docs 170 & 172) denying KALP's motion to vacate default, and granting in part plaintiffs' motion to sanction defendants for spoliation. **The Court found that Kraft had fabricated documents and willfully destroyed a computer hard drive which was a potential source of discovery material.** The Court explained the dispute regarding the authenticity of documents Kraft had filed:

### 3. Dispute Regarding Authenticity of Documents.

On May 28, 2010, Rune Kraft brought a motion to dismiss for lack of personal jurisdiction. Dkt. 13. In support of that motion, he swore in a declaration that attached several copies of proposed broker fee agreements and letters purportedly transmitting the proposed broker fee agreements. Kraft Decl. ¶¶ 21-26, Exs. B, C, D, E, F, [and] G.

Exhibit B to the Kraft Decl. purports to be a May 17, 2007 letter from Rune Kraft and Vicarea to Tom Lynch of Inland, Inc., which sets forth general details about the parties' dealings and attaches a May 13, 2007 proposed fee agreement including Vicarea as a party. Plaintiffs contend that Kraft never delivered the purported May 13, 2007 agreement to Lynch until December 12, 2007 and that Lynch had never seen this letter until this litigation. Lynch Decl. ¶ 22.

Exhibit C to the Kraft Decl. purports to be a May 31, 2007 letter from Kraft and Vicarea to Lynch, attaching a May 13, 2007 proposed fee agreement including Vicarea as a party. Plaintiffs contend that Kraft never delivered this letter to Lynch and that Lynch had never seen this letter until this litigation. Lynch Decl. ¶ 30.

Exhibit D to the Kraft Decl. purports to be an August 2, 2007 letter from Kraft and Vicarea to Lynch, attaching a July 31, 2007 proposed fee agreement including Vicarea as a party. Plaintiffs contend that Kraft never delivered this letter to Lynch and that Lynch had never seen the letter until this litigation. Lynch Decl. ¶¶ 35-36.

### 4. Discovery in This Action [Case No. LA CV 10-1776-VBF-OP]

Plaintiffs contend that they sought discovery in order to obtain meta-data evidence that the documents Rune Kraft attached to his declarations [purported May 2007 and August 2007 letters] were created after the Complaint was filed [in 2010].

Plaintiffs propounded an interrogatory asking Kraft to identify the computer use[d] to create Exhibits B, C, D, E, F, and G to the Kraft Decl. Salsig Decl. ¶ 7, Ex. D. In response, Kraft wrote: "The documents were prepared on a Gateway computer owned by Kraft Americas, L.P. The

MINUTES FORM 90                                         Initials of Deputy Clerk ____jmb_____
CIVIL - GEN

-4-

computer is no longer in use. It was destroyed and then disposed of as waste. [I]ts present location is unknown, but likely a landfill." Salsig Decl. ¶ 8, Ex. E.

Plaintiffs propounded a Rule 34 request seeking the native files and all electronically store[d] information relating to the documents attached to the Kraft Decl. Salsig Decl. ¶ 9, Ex. F (RFPs 15-26). In response, Kraft Americas, L.P. produced a CD containing Microsoft Word files corresponding to the [Kraft] declaration exhibits. Salsig Decl. ¶[¶] 1-4, Ex. A. Plaintiffs contend that the files, including the meta-data associated with the files, contain significant anomalies showing their lack of authenticity.

Plaintiffs propounded a second set of interrogatories requesting that Kraft state all facts related to the destruction of the Kraft's [sic] computer and requesting identification of each person who had knowledge of the destruction. Salsig Decl. ¶ 10, Ex. G. Kraft responded that the computer "was disposed of on February 21, 2008. The hard drive on the computer was bad. Kraft Americas, L.P. authorized the disposal of the computer. Justicia, Inc. destroyed the hard drive and disposed of the computer. Kraft Americas, L.P. had copies of all the files on the Gateway computer." Salsig Decl. ¶ 10, Ex. H. Kraft identified Dale Maloof as the only other person having knowledge of the destruction. *Id.*

In a second set of Rule 34 requests, Plaintiffs asked the Kraft defendants to produce all documents relating to the destruction of the Gateway computer and to produce for inspection any and all electronic media containing back-ups, copies, etc. of the data on the destroyed Gateway computer. Salsig Decl. ¶ 12, Ex. I. In response, Kraft produced three documents purporting to bolster Kraft's claims that the computer was destroyed due to its hard drive being "bad." Salsig Decl[.] ¶ 13, Ex. J. Included in these documents is a purported facsimile from "Justicia Asset Recovery" dated February 19, 2008. The body of the document reads:

> "Rune, We have completed our diagnostics of the computer to determine if the hard drive is bad. The findings are that the hard drive is bad. Since you already have copies of all of the files on CDs, I recommend that we destroy the hard drive and dispose of the computer as waste in the proper manner. Please let me kn ow if this is what you want me to do. Also confirm that you have copies of all of the files on CDs."

This document is purportedly signed by Dale Maloof of Justicia, Inc. Salsig Decl. ¶ 13, Ex. J. Plaintiffs contest the authenticity of the purported facsimile from Justicia, Inc.

76 Doc 170 at 7-9 (bracketed alterations added).

**By having the hard drive physically destroyed and disposed of, Kraft ensured that there was no way to recover any of data or meta-data from that drive.** *Contrast E.I. DuPont de Nemours & Co. v. Kolon Industries, Inc.*, 803 F. Supp.2d 469 (E.D. Va. 2011) (where company employees had intentionally and in bad faith deleted files and e-mails from company computers, the court ordered the company to pay attorney fees which adversary had incurred in bringing the spoliation-sanctions motion and agreed to give the jury an adverse-inference instruction, but declined to impose terminating sanctions because *inter alia* the company "implemented a widespread effort to preserve files" and "many deleted items were recoverable because of the preservation of Kolon's back-up tapes", with the recover of the deleted information "provid[ing] DuPont with much information to help prove its case and meet Kolon's defenses").

**The Court's March 9, 2011 Order Granting Spoliation Sanctions went on to find that Kraft and KALP willfully directed the destruction of the hard drive and fabricated the documents, with a "high" degree of fault.** The Court provided the following analysis regarding the hard-drive spoliation:

> **B. Analysis**
> Plaintiffs [Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan et al.] assert that, while it is unlikely that the Gateway computer was actually destroyed, it certainly was not destroyed because it had a "bad" hard drive as claimed by Defendants. Thus, Plaintiffs assert, now that Rune Kraft has taken the position that the computer was destroyed at his instruction, Defendants have breached their duty to preserve evidence and should be sanctioned. The Court agrees with Plaintiffs.
>
> \* \* \*
>
> **2. Duty to Preserve Evidence and Breach**
> The Court finds that Defendants [Kraft and KALP] had a duty to preserve the Gateway computer. Defendants had notice of a likely claim before they purportedly [according to Rune Kraft and KALP themselves] destroyed the Gateway computer. For example, the email sent by Kraft to Plaintiffs on December 11, 2007 clearly threatened litigation over the fees he claimed to be owed. *See* [("]Spoliation Saakvitne Decl.") ¶ 1, Ex. A. Kraft sent an additional email to Oldcastle on December 12, 2007, again threatening litigation. Salsig Decl. ¶ 6, Ex. C. On December 17, 2007, Kraft sent a letter to Plaintiffs demanding payment of $5,000,000. Kraft Decl. ¶ 17, Ex. A.
>
> [Kraft & KALP] also had notice that the data on their computer wold be relevant to the potential claim. First, Kraft would have known that the documents on [the] Gateway computer that he used would be relevant to his threatened claim for fees; he used the computer to generate his purported

MINUTES FORM 90                                    Initials of Deputy Clerk ___jmb___
CIVIL - GEN

-6-

proposed fee agreements.  Salsig Decl. ¶ 8, Ex. E.  In addition, Defendants had notice that the meta-data would be relevant.  Kraft was informed of Lynch's belief that before December 12, 2007, Lynch had never seen a purported fee agreement dated May 13, 2007. Supp. Saakvitne Decl. ¶ 50, Ex. 45.  The meta-data surrounding that document [purported 5/13/07 fee agreement] would be highly relevant to prove or disprove Defendants' claim as to its date of creation.

[Kraft and KALP] contend that they could not be expected to reasonably foresee Plaintiffs' actions, as Plaintiffs are the ones who initiated this lawsuit.  However, the fact that another party initiated the lawsuit does not exempt a party from its duty to preserve evidence once a potential claim is identified.  *See In re Napster*, 462 F. Supp.2d at 1078 (sanctioning a defendant who failed to preserve evidence).  As stated above, [Kraft and KALP] clearly had notice of a potential claim as shown by their own emails threatening litigation.

The Court also finds that [Kraft & KALP] breached their duty to preserve evidence when they purportedly ordered destruction of the computer in February, 2008.  *See* Salsig Decl. ¶ 10, Ex. H.

[Kraft and KALP] contend that because they backed up files pertaining to the Transaction on a CD, any destruction of the computer hard drive did not entail an intentional destruction of the evidence at hand.  This contention is unpersuasive.

As a preliminary matter, even if the hard drive were "bad," there was not sufficient justification to destroy it.  Kraft admitted that "you can extract information from a hard drive if it is not disposed of properly . . . to remove any possibility of any information on the hard drive getting out ever they recommend that you physically destroy the drive."  Salsig Decl[.] ¶ 19, Ex. M (Feb. 11, 2011 Kraft Depo. at 346:9-16).  If the hard drive had been preserved, Plaintiffs could have had forensic experts attempt to extract data from it.

In addition, Plaintiffs have provided sufficient evidence in support of their contentions that (1) Rune Kraft created documents attached to the Kraft Decl. that, if authentic, would provide some evidence that the name Vicarea was included in documents relating to the transaction as early as May 2007; (2) Plaintiffs were told that there were no issues regarding the destruction or preservation of evidence (*see* [Jt. R.] 26 Report (dkt. 11)); (3) when Plaintiffs sought to discover the computers on which the challenged documents [had been] created in order to prove that they were fabrications, Kraft contended that the computer was purportedly destroyed more than two years prior because the hard drive was "bad"; (4) Kraft then produced a set of documents attesting to the badness of the computer hard drive and evidencing destruction of the computer by a man who does not appear to be a computer expert.  All of this indicates that (5) the computer was not "bad," and that the computer, assuming it was destroyed as Kraft claims, was destroyed willfully.

For example, the Court finds that the purported facsimile from Justicia to Defendants regarding the destruction of the computer (Salsig Decl. Ex. J) was fabricated.  First, the statements that

MINUTES FORM 90                                        Initials of Deputy Clerk  ___jmb____
CIVIL - GEN

-7-

Justicia ran "diagnostics of the computer to determine if the hard drive is bad" and that its "findings are that the hard drive is bad," without any further explanation provided, do not read like the statements of a professional computer company diagnosing the problem with a hard drive.

Second, the document, while it contains a date stamp that appears to have been put on by a fax machine, does not include sending or receiving fax numbers in the header or footer.

Third, the document does not list the physical address, telephone number, fax number, email address, o any other contact information for either Justicia or Dale Maloof.

Fourth, although Kraft testified that he had no business or personal relations with either Justicia or Dale Maloof other than his destruction of the computer and a vague discussion of a business tracking cars (*see* Salsig Decl. ¶ 19, Ex. M (Kraft Feb. 11, 2011 Depo. 342:18 [through] 345:21)), Dale Maloof has been identified by the California Court of Appeals [as] a "corporate representative of the Kraft Companies" in an unrelated lawsuit involving Rune Kraft. *See Oliver v. Pac. Real Estate Holdings, Inc.*, 2008 WL 3198223 (Cal. App. 5th Aug. 8, 2008).

Fifth, Justicia, Inc. was dissolved in 2003, over five years before the purported facsimile; Justicia also lists Laverne Guthrie as its statutory agent, and Kraft testified that Laverne Guthrie is a director of Vicarea. *See* Salsig Decl. ¶ 20, Ex. N; Salsig Decl. ¶ 18, Ex. L (Jan. 26, 2011 Kraft Depo. 72:2-15). And sixth, [Kraft and KALP] do not provide sufficient explanation for these highly suspicious occurrences in the[ir] Opposition [to plaintiffs' motion for sanctions].

In sum, Plaintiffs have adequately demonstrated that [Kraft and KALP] had a duty to preserve the Gateway computer, and that the Gateway computer was wilfully destroyed at the instruction of [Kraft and KALP].

76 Doc 170 at 9 and 10-12 (¶ breaks added). **In that same March 2011 Order, the Court found that Kraft and KALP had a high degree of fault with regard to the destruction and fabrication of evidence:**

*The Court considers the degree of fault of [Rune Kraft and KALP], and determines that their degree of fault is high.* For reasons stated in the Spoliation Motion, [the notion that Kraft purportedly created and transmitted] Kraft Decl. Exs. B, C, D, E, F, and G at or near the times that appear on the face of the documents are [sic] highly questionable. *Plaintiffs present sufficient evidence that [Rune Kraft and KALP] intentionally destroyed the computer that may have shown the actual creation date of the disputed documents through forensic examination. [Rune Kraft and KALP] then attempted to support their contention that the hard drive on the computer was "bad" by producing a fabricated document* [the purported facsimile from "Justicia Asset Recovery" to Rune Kraft dated February 19, 2008].

MINUTES FORM 90                                        Initials of Deputy Clerk ___jmb_____
CIVIL - GEN

76 Doc 170 at 13 (emphasis added). **The Court's March 9, 2011 Order granting spoliation sanctions in 10-01776 further found that Kraft and KALP's spoliation had caused a high degree of prejudice to their adversaries, and that a sanction less severe than that requested by the plaintiffs would be inadequate**:

> The Court also considers the degree of prejudice suffered by Plaintiffs, and determines that the degree of prejudice suffered is high. Plaintiffs' ability to determine the creation date of the challenged documents by forensically examining the computer for evidence of altered meta-data was cut off by the destruction of the Gateway computer. In addition, Plaintiffs are precluded from discovering other documents favorable to their declaratory judgment and breach of fiduciary duty claims that may have been on the computer before it was destroyed.

> The Court also considers whether there is a lesser sanction that would avoid substantial unfairness to the opposing party and will serve to deter such conduct by others in the future. The Court determines that the sanction issued is not substantially unfair to the opposing parties [Rune Kraft and KALP] in light of their conduct, and that a lesser sanction (such as by granting [sic] part (a) of Plaintiffs' request but not part (b)) would not serve to deter evidence destruction by parties such as [Rune Kraft and KALP] in the future.

> The Court also considers the relationship between the destroyed evidence and the sanctions requested. The sanctions issued here are reasonably tailored to sanction parties [Rune Kraft and KALP] for destroying the evidence that could have shown whether the documents parties [Rune Kraft and KALP] rely on to prove the involvement of Vicarea early in the Transaction were indeed created at or near the dates that appear on the documents [the purported letters from Rune Kraft and Vicarea to Tom Lynch of Inland, Inc. dated May 17, 2007 and August May 31, 2007 and August 2, 2007, *see* Kraft Decl. Exhibits B, C, and D].

76 Doc 170 at 13.

**The Court also permitted defense counsel Greenberg of Berkes Crane to withdraw**, based in part on his representation that KALP owed $94,000 in fees as of July 2010 and had ignored requests for payment.

The Kraft defendants filed a motion to vacate the court's earlier rulings on the basis of alleged fraud on the court (76 Doc 181), which this Court denied by Order issued in April 2011 (76 Doc 198). The Court denied Kraft's ensuing motions for reconsideration, *see* 76 Docs 212 and 217.

MINUTES FORM 90                                    Initials of Deputy Clerk ___jmb___
CIVIL - GEN

In April 2011, plaintiffs moved for default judgment against KALP (76 Docs 190-194). KALP through counsel filed opposition (Doc 197) and plaintiffs replied (Doc 205). By Order issued April 25, 2011 (Doc 211), this Court denied default judgment against KALP without prejudice. Relying on Fed. R. Civ. P. 54(b)'s presumption against entry of final judgment as to fewer than all claims and parties, the Court stated, "in light of the interest in avoiding potentially conflicting outcomes, Plaintiff has not shown that default judgment against only [KALP] should be entered at this time when the action is continuing against . . . Kraft." 76 Doc 211 at 2.

In 10-01776, This Court adopted the Magistrate's Recommendation to Enter default Against Kraft Due to Spoliation of Evidence and Willful Bad-Faith Discovery Conduct. **On May 12, 2011, the Magistrate issued an R&R in 10-01776-VBF, recommending that the Court strike Kraft's answer and enter default judgment against him because he had "demonstrated willfulness and bad faith in failing to respond to the Court's discovery orders" and "his disobedient conduct [wa]s not beyond his control."** *See* 76 R&R at 6. Specifically, the Magistrate recounted Rune Kraft's discovery conduct:

> Here, Defendant [Rune Kraft] has failed to provide further responses to Plaintiffs' First Set of Interrogatories and failed to pay sanctions as ordered by the Court on January 7, 2011. Defendant has also failed to provide further responses to Plaintiffs' First Set of RFPs [Requests for Production] and failed to pay sanctions as ordered by the Court on February 3, 2011. (Dkt. No. 179 at 2, Salsig Decl. at 3-4, Ex. I.) Indeed, Defendant has unequivocally refused to comply.

> For instance, at his deposition, Defendant testified that "[a]nd I'm here to tell you, Judicial Officer P[a]rada, that none of the answers that I have given to the First Set of Interrogatories, none of the answers that I have given to the First Set For [sic] Requests for Production of Documents, none of the responses that I have given to the First Set of Requests for Admissions, will be changed." (Dkt. No. 179-1 at 2, Salsig Decl. Ex. A at 378-79).

> Defendant further testified that "[i]t does not matter, Judicial Officer Oswald P[a]rada, whether you issue a sanction in the amount of a trillion dollars, or if you issue a sanction of death by lethal injection, none of the answers will ever be changed from the first time, period." (*Id.* Ex. A at 379.)

> Finally, Defendant sent an ex parte letter and email directly to the Court stating that "[t]he United States District Court [for the] Central District of California is hereby informed that Rune Kraft will not be coerced by judicial officers to change any of his answers to discovery against his will."

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ___jmb____

-10-

(Dkt. No. 173; *see also* Dkt. No. 179-1 Ex. I ("Rune Kraft will under no circumstances change his answers to any discovery as a result of coercion.").

Based on the foregoing, the Court finds that Defendant [Rune Kraft] has demonstrated willfulness and bad faith in failing to respond to the Court's discovery orders and that his disobedient conduct is not outside of his control. Thus, drastic sanctions are warranted. *See Sigliano* [*v.* Mendoza], 642 F.2d [309,] 310 [(9th Cir. 1981)] (citing *Societe Int'l*, 357 U.S. at 212[, 78 S. Ct. 1087, 1096 (1958)]); *see also Fair Housing of Marin*, 285 F.3d at 905.

76 Doc 222 (May 12, 2011 R&R of the Hon. Oswald Parada, M.J.) at 5-6 (some paragraph breaks added).

Noting the undersigned Judge's prior determination that Kraft and KALP had also intentionally fabricated documents and intentionally destroyed a computer which was a source of discoverable information, the Magistrate recommended striking Kraft's answer and entering default (not yet default judgment) against him, *see id.* at 7-9. **The Magistrate correctly reasoned that lesser sanctions would be insufficient** because it was

clear that [Kraft] has no intention of complying with the Court's discovery orders. ([Doc 179-1] at 23.) Despite the imposition of less drastic sanctions monetary sanctions imposed on [Kraft], he has failed to pay those sanctions and has flatly refused to comply with the discovery orders. Based on Defendant's deposition testimony, his communications with the Court, and his previous misconduct involving the fabrication of . . . documents and the willful destruction of a computer, the potential source of discovery relevant to this action, the Court finds that less drastic sanctions have had no impact on Defendant. Thus, the final factor [of five set forth in *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991)] weighs in favor of terminating sanctions.

76 Doc 222 (May 12, 2011 R&R) at 8-9. The Magistrate also recommended requiring Kraft to pay $8,865 to plaintiffs for the attorneys fees they had incurred in moving for default judgment, *see* 76 Doc 222 at 9.

**Four days later, on May 16, 2011, all parties, including Rune Kraft and KALP through counsel, filed a joint notice stating that "neither Plaintiffs nor Defendants intend to file a written statement of Objections with points and authorities in support thereof or to otherwise object to the Report and Recommendations [sic, plural]."** 16 **Doc 224 at 2. Accordingly, and finding the R&R to contain no defect of law, fact, or logic, this Court issued an Order on May 18, 2011 adopting the R&R without objection.** As recommended, the Court sanctioned Rune Kraft by striking his answer and entering default against him

MINUTES FORM 90                                    Initials of Deputy Clerk ___jmb____
CIVIL - GEN

pursuant to Federal Rule of Civil Procedure 55(a).  *See* 76 Doc 226 at 1-2.  The Court vacated the pretrial conference and trial and directed plaintiffs to move for default *judgment* "as to all Defendants."  *Id.* at 2.

**JUNE 22, 2011 DEFAULT JUDGMENT AGAINST KRAFT AND KALP IN 10-01776.**  In May 2011, plaintiffs filed a motion for default *judgment* against Kraft and KALP in the amount of three million dollars (76 Docs 230-244).  After considering opposition and reply (76 Docs 245-246), the Court issued an Order on June 22, 2011 (76 Doc 247) granting plaintiffs' motion.

As a consequence of the Kraft parties' default, the Court took as true "the well-pleaded allegations of the complaint relating to liability . . . but not the allegations as to the amount of damages."  76 Doc 247 at 2 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)); *see also Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp.*, – F. Supp.3d –, 2016 WL 184393, *6 n.69 (D. Nev. Jan. 14, 2016) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

As to plaintiffs' first and second claims for declaratory relief in LA CV 10-01776, the Court concluded that plaintiffs were entitled to a declaration that Kraft and KALP were not entitled to any compensation from any plaintiff in connection with the December 17, 2007 sale by the Inland ESOP to Oldcastle of all of Inland ESOP's stock in Inland, Inc. ("the Transaction").  *See* 1776 Doc 247 at 2.  The Court reasoned that the Kraft parties' brief opposing default judgment did not contest plaintiffs' entitlement to judgment on the first and second claims, and that the "granting of default judgment is consistent with" the Court's March 9, 2011 Order Granting Plaintiffs' Motion for Spoliation Sanctions (Doc 170), the March 25, 2011 Order on plaintiffs' motion for summary judgment (Doc 185), and the May 18, 2011 Order adopting the R&R (Doc 226).  *See* 1776 Doc 247 at 3.

As to claim three, breach of fiduciary duty, the Court concluded that Inland ESOP and its Trustee were entitled to three million dollars in compensatory damages.  *See* 1776 Doc 247 at 2.  The Court held that Kraft and KALP had violated California's requirement that a broker adhere to "the same obligation of undivided service and loyalty that [the law] imposes on a trustee in favor of his beneficiary."  1776 Doc 247 at 3 (quoting *Ford v. Cournale*, 36 Cal. App.3d 172, 180, 111 Cal. Rptr. 334 (Cal. App. 1973)); *see also Kornievsky v. CBRE, Inc.*, Nos. G050319, G050320, and G050675, 2016 WL 520285, *12 (Cal. App. Feb. 9, 2016) ("[A] broker's

MINUTES FORM 90                                    Initials of Deputy Clerk  ___jmb____
CIVIL - GEN

fiduciary duty to his client requires the highest good faith and undivided service and loyalty.'") (quoting *Field v. Century 21 Klowden-Forness Realty*, 63 Cal. App.4th 18, 25, 73 Cal. Rptr.2d 784 (Cal. App. 1998)).

The Court first determined that plaintiffs had sufficiently shown that the Kraft parties had "functioned as brokers in the Transaction and represented to Inland ESOP that they were acting solely as its broker and were 'trying to get the highest and best value for Inland and its shareholders.'" 1776 Doc 247 at 4 (quoting Salsig Dec. Ex. D and Saakvitne Dec. ¶ 22). The Court further determined that the Kraft parties breached the fiduciary duty applicable to brokers by failing to provide the "fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." 1776 Doc 247 at 3 (citation omitted). The Court explained its findings regarding the Kraft parties' reach of their fiduciary duty to plaintiffs in relation to the transaction:

On July 26, 2007, Kraft and Oldcastle came to an agreement that Oldcastle would acquire Inland and Pre-con Products, Inc. ("Precon") for approximately $62 million. Plaintiffs present sufficient evidence that Oldcastle initially suggested allocating $27,607,000 for the purchase of the stock of Inland Inc., but that the Kraft Defendants told Oldcastle to reduce its $27,607,000 allocation by $3,000,000 so that the difference could be put into a "Reserve" for the benefit of the Kraft Defendants and one of their other clients. [citing, *inter alia*, Salsig Dec. Ex. A - Rune Kraft Dep.] *Kraft did not inform [Inland ESOP] Trustee Saakvitne of these facts and had Kraft done so, Saakvitne would not have agreed that the purchase price could be reduced by $3,000,000 for a "Reserve."* Saakvitne Decl. ¶ 13.

*Plaintiffs also present sufficient evidence that on July 27, 2007 Kraft received from Oldcastle a letter of intent offering a net purchase price* for Inland ESOP's shares of Inland Inc. of $25,440,000, which required only $3,000,000 cash in the company at closing.

*Kraft did not provide a copy of, or otherwise disclose to Inland, the Oldcastle-Inland LIO [Letter of Intent] or its content or the substance of the July negotiations.*

*Instead, Kraft created and presented his own letter of intent for the transaction, changing the material terms of the Oldcastle-Inland LOI by ( I ) reducing the net purchase price from $25,440,000 to $24,607,000; and (ii) increasing the amount of cash and liquid investment in the company required at closing from $3,000,000 to $4,890,000 in cash and $414,000 in other liquid investment for a total of $5,304,000.*

*These changes to the Oldcastle-Inland LOI . . . had the net effect of creating a deal that was $3,000,000 worse for Inland ESOP. Kraft made the changes for the purpose of removing $3,000,000 from the purchase price of Inland ESOP's stock and moving it to the "Reserve."*

MINUTES FORM 90                                                    Initials of Deputy Clerk ___jmb_____
CIVIL - GEN

1776 Doc 247 at 4 (emphasis added, other internal citations omitted, paragraph breaks added).  **The Court further found that the plaintiffs would not have entered into the transaction under the terms they did, if the Kraft parties had honored their fiduciary duty to provide full and honest disclosure to plaintiffs:**

> * * *  Had Kraft informed [Inland ESOP Trustee] Saakvitne that he [had] altered the Oldcastle-Inland LOI to the detriment of Inland ESOP for the purpose of establishing a $3,000,000 "Reserve" not solely for the benefit of Inland ESOP, Saakvitne would not have agreed that $3,000,000 or any other amount could be taken from the purchase price for Inland ESOP's stock for the financial benefit of Precon and Kraft Americas.  Saakvitne would have insisted that the Kraft Defendants present to him the actual Oldcastle-Inland LOI for his review and consideration.

1776 Doc 247 at 5 (record citations omitted).  **The Court then found that the plaintiffs relied to their detriment on the incomplete and inaccurate information provided to them by the Kraft parties:**

> On August 16, 2007 [Inland ESOP Trustee] Saakvitne signed the Kraft LOI, relying on Kraft's statements that Kraft was "working for Inland Concrete Enterprises, Inc. in this transaction trying to get the highest and best value for Inland and its shareholders."  Oldcastle signed the Kraft LOI on or about August 21, 2007.

> On October 23, 2007, Trustee Saakvitne negotiated the final deal terms art a meeting with Oldcastle *based on the information he had at the time.*  The $24,607,00 purchase price stated in the Kraft LOI was reduced by $400,000 representing Oldcastle's estimate of a tax liability, and by and [sic] additional $207,000 representing an adjustment to value of certain deeds of trust. On or about December 17, 2007, the Transaction closed for a purchase price of $24,000,000, subject to possible post-closing adjustments.

76 Doc 247 at 5 (citations omitted).  In short, the Court determined, "Plaintiffs would have achieved a $3,000,000 higher purchase price but for the wrongful acts of the Kraft Defendants . . . ."  76 Doc 247 at 6.  That was because, due to the actions and omissions of Kraft and KALP, "Plaintiffs . . . did not know of the $3,000,000 additional benefit they could have received from the Transaction," and "the benefit would have been achieved if Plaintiffs had been informed of Oldcastle's initial valuation and initial LOI."  76 Doc 247 at 6.

The Court declined, however, to award the punitive damages sought by the plaintiffs in 10-01776.  The Court did so because it found that plaintiffs had not presented sufficient evidence and argument as to the financial

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ___jmb___

-14-

condition of Rune Kraft and KALP at that time, which is one of the three factors which a court must consider in setting punitive damages under California law. *See* 76 Doc 247 at 7 (citations omitted).

   The Terms of the June 22, 2011 Default Judgment against Rune Kraft and KALP in 10-01776. **By separate document also issued on June 22, 2011, the Court entered default judgment against Rune Kraft and KALP jointly and severally, in the amount of three million dollars, pursuant to Federal Rule of Civil Procedure 55(b)(2).** *See* 76 Doc 248. On the first claim in 10-01776-VBF, asserted by Inland, Inc. alone, the Court declared that Inland, Inc., never hired the Kraft parties and never agreed orally or in writing to pay the Kraft parties; that the Kraft parties provided *no* services to plaintiff Inland, Inc., in connection with the Oldcastle-Inland ESOP stock transaction; and that Inland and was not liable to compensate the Kraft parties. *See* 1776 Doc 248 (Judgment) at 2 ¶¶ 2a-2c.

   The Court did find that Kraft and KALP rendered brokers services in connection with the Oldcastle-Inland ESOP transaction, *see* 76 Doc 248 (Judgment) at 2 ¶ d, but held that Kraft and KALP "acted unlawfully when it/he rendered broker's services" because neither Kraft nor KALP had a real-estate broker's license or a securities broker-dealer's license as required by California state statute at any time before, during, or after the transaction, *see* 76 Doc 248 at 2-3 ¶¶ 2d-2f. Consequently, the Court determined that "any express or implied agreement for such a fee [broker's fee] is void and both" KALP and Kraft "are barred from recovering a fee from Inland, Inc. in connection with the . . . Transaction", 76 Doc 248 at 3 ¶ 2f.

   The Court considered whether Kraft and KALP were entitled to compensation as "finders" but concluded they "did not render the limited services of a finder" under state law because their "actions extended far beyond simply introducing Oldcastle and Inland ESOP and included, among other things, 'running this transaction [KALP's and/or Rune Kraft's] way'" and "handl[ing] the negotiations between the parties", Doc 248 at 3 ¶ 2h.

   The Court also declared that any claims which KALP and Rune Kraft might have had against Inland, Inc., for compensation in connection with the transaction were barred by the two-year statute of limitations set forth in Cal. Code Civ. Pro. § 339 subdiv. 1; and were barred because both the Kraft parties "had multiple undisclosed conflicts of interest", breached their duties of undivided loyalty, and breached their fiduciary duties to Inland, Inc., by failing to disclose material facts to Inland, Inc. *See* 76 Doc 248 (Judgment) at 3-4 ¶¶ 2h-2i.

MINUTES FORM 90                                    Initials of Deputy Clerk ___jmb____
CIVIL - GEN

<u>On the second claim in 10-01776-VBF, asserted by Inland ESOP and its Trustee, the Court made similar declarations.</u> *See* 76 Doc 248 (Judgment) at 4-5 ¶¶ 3a-3g. Because the Court found Inland ESOP was an employee benefit plan and the Kraft parties were parties in interest as defined by ERISA, the Kraft parties' relationship to Inland ESOP and its Trustee were subject to ERISA's prohibited-transaction rules. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" and "welfare plan"); § 1002(3) (defining "employee benefit plan"); and § 1002(14) (defining a "party in interest, as to an employee benefit plan"). The subsection on Prohibited Transactions - Transactions Between Plan and Party in Interest provided, in pertinent part, as follows:

Except as provided in section 1108 of this title:

(1)  A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect –
 (A)  sale or exchange, or leasing, of any property between the plan and the party in interest;
 (B)  lending of money or other extension of credit between the plan and a party in interest;
 ©  furnishing of goods, services, or facilities between the plan and a party in interest;
 (D)  transfer to, or use by or for the benefit of a party in interest, of any assets in the plan;
 (E)  acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title

(2)  No fiduciary who has authority or discretion to control or manage the assets of the plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates § 1107(a) of this title.

29 U.S.C. § 1106(a).[3]  The Court necessarily determined that the transaction here did not qualify for any of the 29 U.S.C. § 1108 exemptions to the prohibited-transaction rule.  Applying these rules, the Court declared that "the $5 million fee demanded by" KALP was "not only beyond the realm of a reasonable fee in the industry, but" also "would reduce the proceeds of the sale to the Inland ESOP participants substantially below the fairness level determined by BCC."  That, the Court held, would render payment of the fee demanded by KALP/Kraft a void

---

[3]

The Court did not rely on the rest of ERISA's prohibited-transaction provisions:  29 U.S.C. § 1106(b) (Transactions Between Plan and Fiduciary); 29 U.S.C. § 1106 subsec. c (Transfer of Real or Personal Property to Plan by Party in Interest); and 29 U.S.C. § 1107 (Limitation With Respect to Acquisition and Holding of Employer Securities and Employer Real Property by Certain Plans).

MINUTES FORM 90           Initials of Deputy Clerk ___jmb_____
CIVIL - GEN

-16-

or voidable transaction subject to disgorgement. *See* 76 Doc 248 at 6-7 ¶ 3i (citing, *inter alia*, *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245, 120 S. Ct. 2180 (2000)).

    <u>Post-Judgment Proceedings in 10-01776.</u> On August 1, 2011, the plaintiffs filed a notice (76 Doc 255) accurately stating that under Local Civil Rule 7-9, the Kraft parties had to file any opposition to the attorney-fee motion by July 25, 2010, which had elapsed, and that the Kraft parties had not filed anything in relation to fees. On August 2, 2011, this Court issued an order (Doc 256) granting the plaintiffs' renewed motion for $552,623.00 in attorneys' fees and costs as unopposed. Kraft and KALP did not move pursuant to Fed. R. Civ. P. 59(e) for reconsideration of the June 22, 2011 default judgment or the August 2, 2011 fee award order.

    Neither Rune Kraft nor KALP ever filed a notice of appeal with the U.S. Court of Appeals for the Ninth Circuit in the 10-1776 case, nor did they move to extend or re-open the time for filing a notice of appeal.

    About three and a half years after the entry of judgment in related case 10-01776, Kraft filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). The Court has considered the opposition, Kraft's reply, and attached materials, and will rule on Kraft's motion for relief from judgment in 10-1776 shortly.

    <u>KRONSTADT DISMISSES KALP'S UNTIMELY CLAIMS IN 12-03681 & THE CIRCUIT AFFIRMS</u>

    In 2012, KALP alone filed an action in this district which was assigned to Judge Kronstadt. KALP claimed that Oldcastle Precast, Inc. ("Oldcastle"), a Washington-based manufacturer of precast concrete and polymer concrete products, had breached a confidentiality agreement and misappropriated KALP's trade secrets in connection with Oldcastle's acquisition of Inland. *See* LA CV 12-03681-JAK Doc 188 at 1. Oldcastle moved for summary judgment, and Judge Kronstadt issued an Order on December 18, 2013 determining that KALP's claims were time-barred and dismissing them with prejudice on that basis. *See* Doc 188 at 21. Judge Kronstadt entered final judgment against KALP in January 2014 (Doc 195), and KALP filed a notice of appeal (Doc 196).

    **By unpublished Order submitted February 9, 2016 and filed February 23, 2016, the Ninth Circuit affirmed Judge Kronstadt's grant of summary judgment to those defendants against KALP on the ground that KALP's claims were time-barred.** *See KALP v. Oldcastle Precast, Inc.*, No. 14-55105, – F. App'x –, 2016 WL 707060 (9th Cir. Feb. 23, 2016). The Circuit has yet to issue its Mandate. *See* Fed. R. Civ. P. 41(b) ("The

MINUTES FORM 90                               Initials of Deputy Clerk   <u>  jmb  </u>
CIVIL - GEN

court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. The court may shorten or extend the time."); *see also Desta v. Ashcroft*, 365 F.3d 741, 747 (9th Cir. 2004) ("Once the mandate issues, *typically 52 days after our decision*, . . . .") (italics added).

<u>ANALYSIS OF VEXATIOUS-LITIGANT MOTION AGAINST RUNE KRAFT HERE.</u>

**First, "[t]he All Writs Act, 28 U.S.C. § 1651(a), vests federal courts with the discretion to enjoin vexatious litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (citation to Second Circuit omitted). Title 28 U.S. Code section 1651 provides in its entirety as follows:**

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) an alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

In addition, Local Civil Rule ("LCivR") 83-8, Vexatious Litigants, provides further authority and guidance which is consistent with the Act. **Local Civil Rule 83-8.1, Policy, makes clear that it supplements, rather than supplants or detracts from, the Court's authority under the All Writs Act or other legal authority:**

It is the policy of the Court to discourage vexatious litigation and to provide persons who are subjected to vexatious litigation with security against the costs of defending against such litigation and appropriate orders to control such litigation. It is the intent of this rule to augment the inherent power of the Court to control vexatious litigation and nothing in this rule shall, be construed to limit the Court's inherent power in that regard.

**In turn, LCivR 83-8.2, entitled Orders for Security and Control, provides as follows:**

On its own motion or on motion of a party, after opportunity to be heard, the Court may, at any time, order a party to give security in such amount as the Court determines to be appropriate to secure the payment of any costs, sanctions or other amounts which may be awarded against a vexatious litigant, and may make such other orders as are appropriate to control the conduct of

MINUTES FORM 90                                        Initials of Deputy Clerk ___jmb___
CIVIL - GEN

-18-

a vexatious litigant. Such orders may include, without limitation, a directive to the Clerk not to accept further filings from the litigant without payment of normal filing fees and/or without written authorization from a judge of the Court or a Magistrate Judge, issued upon such showing of the evidence supporting the claim as the judge may require.

**If a judge in our district requires a vexatious litigant to post security pursuant to Local Civil Rule 83-8.2, however, the judge may not consider what amount is needed to deter further vexatious litigation. Rather,** the court must determine the amount of security by reference to the sanctions and other amounts which could reasonably be awarded against a vexatious litigant. As the Circuit explained in an appeal from our district,

> The district court did not abuse its discretion in ordering Aref to post a security bond after finding that he consumed unreasonable court and defendant resources by filing numerous prolix and unnecessary documents. * * *

> However, it appears that the district court applied the wrong standard in arriving at the $250,000 security amount – to deter Aref's vexatious litigation practices, rather than to 'secure the payment of any costs, sanctions or other amounts which may be awarded against a vexatious litigant." C.D. Cal. R. [sic] 83-8.2. We therefore remand for the limited purpose of the district court either explaining how it arrived at the $250,000 security amount or reducing the amount as appropriate.

*Aref v. Hickman*, 404 F. App'x 205, 206 (9th Cir. 2010). *See, e.g., In re Steven J. Stanwyck, Debtor*, 450 B.R. 181, 207 (C.D. Cal. Bankr. 2011) ("In light of the complexity of the purported claims made the basis of Stanwyck's Complaint, the number of defendants named by Stanwyck in the Complaint, the amount of the alleged damages, and the reasonable amount of attorneys fees and costs that may be incurred by each of the 37 named Defendants in defense of the litigation, the court finds that security . . . of $925,000 is appropriate.").

**Finally, the Circuit requires that four factors be proven before a plaintiff may be declared a vexatious litigant:** (1) plaintiff must be given adequate notice and opportunity to oppose a restrictive pre-filing order before it is entered; (2) the court must present an adequate record for review by listing the case filings that support its order; (3) the court must make substantive findings as to the frivolousness or harassing nature of the plaintiff's filings and/or other litigation conduct; and (4) the order must be narrowly tailored to remedy only plaintiff's particular abuses. *See Reiner v. Graiwer*, 2015 WL 9999191, *11 (C.D. Cal. Nov. 25, 2015) (citing *DeLong*, 912 F.2d at 1147-49), *R&R adopted*, 2016 WL 455418 (C.D. Cal. Feb. 4, 2016) (King, C.J.).

MINUTES FORM 90                                          Initials of Deputy Clerk ___jmb____
CIVIL - GEN

-19-

"**The Ninth Circuit has explained that while the first two** *DeLong* **requirements are procedural, the latter two are substantive**, and a 'separate set of considerations' may provide a 'helpful framework' in 'applying the two substantive factors.'" *Endsley v. State of California*, 2014 WL 5335857, *4 (C.D. Cal. Oct. 16, 2014) (Dale Fischer, J.) (quoting *Ringgold-Lockhart*, 761 F.3d 1057 (quoting *Molski*, 500 F.3d at 1058)), *appeal filed*, No. 14-56902 (9th Cir. Dec. 5, 2014).  These substantive considerations are:

> (1)  the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits;
>
> (2)  the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good[-]faith expectation of prevailing?
>
> (3)  whether the litigant is represented by counsel;
>
> (4)  whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5)  whether other sanctions would be adequate to protect the courts and other parties.

*Ringgold-Lockhart*, 761 F.3d 1057 (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).  According to the Ninth Circuit, "[t]he final consideration – whether other remedies 'would be adequate to protect the courts and other parties' [–] is particularly important."  *Ringgold-Lockhart*, 761 F.3d 1057.

The Court acknowledges that vexatious-litigant orders "are 'extraordinary remed[ies] that should be narrowly tailored and rarely used.'" *Doran v. Vicorp Restaurants, Inc.*, 407 F. Supp.2d 1115, 1117 (C.D. Cal. 2005) (Selna, J.) (quoting *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990) and citing *DeLong*, 912 F.2d at 1147); *see, e.g., Ringgold-Lockhart v. County of L.A.*, 761 F.3d 1057 (9th Cir. 2014) (holding that district court abused its discretion in declaring litigants to be vexatious and in imposing pre-filing injunction); *Clinton v. Green*, 2012 WL 262392, *10 (C.D. Cal. Jan. 19, 2012) (Parada, M.J.) ("[T]he Court's focus is on the number of suits that were frivolous or harassing in nature rather than on the number of suits that were simply adversely decided against Plaintiff.  An examination of the orders . . . reveals that only once was there a determination by the Court that the action was frivolous.  As a result, this Court finds that Plaintiff's filings have not been so

'numerous or abusive' or 'inordinate' to warrant a vexatious litigant order.") (quoting *DeLong*, 912 F.2d at 1147-48), *R&R adopted*, 2012 WL 261172 (C.D. Cal. Jan. 25, 2012) (Carter, J.).[4]

> **"This is because such an order" – imposing pre-filing restrictions – "restricts access to the courts – the litigant's 'final safeguard for vitally important constitutional rights.'"** *Giampa v. Duckworth*, 2012 WL 7832274 (D. Nev. Nov. 30, 2012) (quoting *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1523-26 (9th Cir. 1984)), *R&R adopted*, 2013 WL 1385649 (D. Nev. Apr. 2, 2013), *aff'd*, 586 F. App'x 284 (9th Cir. 2014), *cert. denied*, – U.S. –, 136 S. Ct. 809 (2016). Because the Supreme Court "traditionally has held that the Due Process Clauses protect civil litigants who seek civil recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances", *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S. Ct. 1148 (1982), "a court should enter a pre-filing order constraining a litigant's scope of actions in future cases only after a cautious review of the pertinent circumstances", *Molski*, 500 F.3d at 1057.

> **Nevertheless, "once a pattern of frivolous or harassing litigation has emerged, a district court 'need not wait until a vexatious litigant inundates each federal district court with meritless actions to condition access to that court upon a demonstration of good faith.'"** *Malcolm v. Bd. of Ed. of Honeoye Falls-Lima Central Sch. Dist.*, 737 F. Supp.2d 117, 120 (W.D.N.Y. 2010) (quoting *In re Martin-Trigona*, 737 F.2d 1234, 1262 (2d Cir. 1984)), *recon. denied*, 2010 WL 4238857 (W.D.N.Y. Oct. 27, 2010), *amended o.g.*, 757 F. Supp.2d 953 (W.D.N.Y. 2010).

> **This is particularly true where, as here, the litigant targeted by the vexatious-litigant motion has been found culpable of intentional fabrication and spoliation of evidence.** "Spoliation is a serious matter." *In re Keith O. Moses, Debtor*, 2016 WL 1050393, *18 (Bankr. E.D.N.Y. Mar. 15, 2016). **"'Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence . . . .** [W]hen critical documents" or other important evidence is fabricated or "go[es] missing, judges and litigants alike descend into a world of *ad hocery* [sic] and half measures – and our civil justice system suffers.'"

---

[4]

The vexatious-litigant motion rests, in small part, on the allegation that Kraft conducted himself inappropriately in *KALP v. Oldcastle*, LA CV 12-03681-JAK-E, by unjustifiably refusing to answer certain questions at deposition. *See* Doc 10-2 (Declaration of Defense Counsel Joseph C. Faucher) at pages 3-4 ¶¶ 7-8.

*United States v. Community Health Sys., Inc.*, 2012 WL 12294413, *3 (D.N.M. Aug. 31, 2012) (quoting *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 258 (Fed. Cl. 2007)) (first alteration in *Community Health*, second alteration added), *overruling objections and adopting R&R*, 2012 WL 5387069 (D.N.M. Oct. 3, 2012).  *Accord Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp.2d 598, 607 (S.D. Tex. 2010) ("Spoliation of evidence – particularly of electronically stored information – has assumed a level of importance in litigation that raises grave concerns.").

Because of Kraft's willful bad-faith spoliation and bad-faith discovery non-compliance, it cannot be said that the defendants seek to declare him vexatious merely because he could be considered litigious.  *See Bailey v. Suey*, 2014 WL 3897948, *4 (D. Nev. Aug. 11, 2014) (Hoffman, M.J.) (while plaintiff's prior lawsuits "may have been baseless or exaggerated", the instant complaint survived initial screening and "adequately alleged claims" under the Eighth or Fourteenth Amendment, so the court refused to declare plaintiff vexatious, as "'[a]n injunction cannot issue merely upon a showing of litigiousness.'") (quoting *May*, 906 F.2d at 470).

**As to the first *DeLong* factor, 912 F.2d at 1147-49,** the Court begins by noting that "it does not require an in-person hearing", and "[c]ourts in this circuit have held that a motion to declare a litigant vexatious does not require oral argument."  *Gavin v. City & Cty. of San Francisco*, 2016 WL 126937, *2 (N.D. Cal. Jan. 12, 2016) (citing, *inter alia*, *Reddy v. Medquist, Inc.*, 2012 WL 6020010, *3 with n.27 (N.D. Cal. Dec. 3, 2012) ("'[T]he opportunity to brief the issue fully satisfies due process requirements.'") (citing *Molski v. Evergreen Dynasty Corp.*, 500 F.2d 1047, 1058 (9th Cir. 2007)), *app. dis.*, No. 13-15006 (9th Cir. Feb. 28, 2013)).

With that in mind, the Court determines that Kraft and KALP had notice and an ample opportunity to be heard in opposition to the vexatious-litigant motion, and Kraft did file a document denominated as an opposition to the motion.  *See Rainer v. Graiwer*, 2015 WL 9999191, *11 (C.D. Cal. Nov. 25, 2015) ("Plaintiff filed written opposition, including a declaration and legal briefing.  This is sufficient to satisfy the first factor."), *R&R adopted*, 2016 WL 455418 (C.D. Cal. Feb. 4, 2016) (King, C.J.).  KALP simply chose not to avail itself of this opportunity, because it never retained counsel and thus could never file a brief in opposition.  Kraft did file a document apparently intended to serve as his opposition, but it was conclusory and of no use.  Kraft's brief made no attempt to counter the substantive points made in defendants' opening brief.  Nor did Kraft's opposition

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ____jmb____

-22-

purport to identify any specific defect in Judge Kronstadt's grant of summary judgment to Kraft's adversaries in related case LA CV 12-03681-JAK, or any other federal- or state-court rulings adverse to him in connection with the Inland Transaction.  **Kraft did not identify any specific defect of law, fact, or logic in:**

(1)    this Court's March 9, 2011 Order in related case LA CV 10-01776-VBF-OP (10-1776 Doc 170) granting in part the motion to sanction Kraft, which determined *inter alia* that he had willfully directed the destruction of a computer hard drive and fabricated documents, with a "high" degree of fault, knowing litigation was possible (having himself already threatened litigation in writing beforehand) in which information on that drive was relevant and potentially important;

(2)    the Magistrate Judge's May 12, 2011 R&R in that same related case LA CV 10-01776-VBF-OP (10-1776 Doc 222), recommending that the Court strike Rune Kraft's answer and enter default judgment against him because he had "demonstrated willfulness and bad faith in failing to respond to the Court's discovery orders" and "his disobedient conduct [wa]s not beyond his control", and this Court's May 18, 2011 Order Adopting that R&R without objection;

(3)    this Court's June 22, 2011 Order granting the motion for default judgment against Rune Kraft and KALP in that same related case, LA CV 10-01776-VBF-OP (10-1776 Doc 247), or the accompanying Judgment (10-1776 Doc 248).

**The second *DeLong* factor, 912 F.2d at 1147-49, the need to present an adequate record for review, is also satisfied.**  In addition to the above summary above of Kraft and KALP's conduct in LA CV 10-01776-VBF, defendants have accurately summarized Kraft and KALP's filings and conduct in the related cases below. Accordingly, the Court adopts defendants' characterization of Kraft's conduct as set forth in their opening brief:

–    the related federal case *Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan et al. v. Kraft Americas, L.P., and Rune Kraft,* LA CV 10-01776-VBF, a/k/a "the *Inland* action", which culminated in the issuance of a June 22, 2011 final default judgment against Rune Kraft and KALP as well as an award of attorney's fees against them, *not* followed by any appeal, *see* Doc 10-1 (Defendants' Opening Brief) at page 6 line 14 through page 16 line 3;

–    this case, *Rune Kraft (an individual), Plaintiff v. Old Castle Precast Inc. (a Washington corporation) and Inland Concrete Enterprises Inc. ESOP, Defendants,* LA CV 15-00701-VBF;

–    the action which KALP filed in King County Superior Court in Washington ("*Kraft 1*") on October 3, 2011, *KALP v. Oldcastle Precast, Inc.*, claiming breach of a confidentiality agreement

and misappropriation of trade secrets, which culminated in the state court's dismissal of the KALP complaint on December 7, 2011, *not* followed by appeal, *see* Doc 10-1 at p. 16 lines 4-15;[5]

–    the action KALP filed against Oldcastle, in King County Superior Court in the State of Washington ("*Kraft 2*") in early 2012, Case No. RIC1119768, shortly after the state court dismissed *Kraft 1*, asserting claims largely identical to the Kraft Parties' counterclaims in the *Inland* action before the undersigned, which culminated with the state court's issuance of a December 13, 2012 Order sustaining defendants' demurrer on the basis of res judicata and failure to state a claim, *not* followed by any appeal, *see* Doc 10-1 at p. 16 line 16 through p. 17 line 8;

–    the action KALP filed in our district on April 27, 2012, *KALP v. Oldcastle Precast, Inc.*, Case No. LA CV 12-03681-JAK ("*Kraft 3*"), again claiming Oldcastle breached a confidentiality agreement and misappropriated trade secrets in connection with the Inland / Oldcastle transaction, which culminated in Judge Kronstadt's December 18, 2013 summary judgment in favor of Oldcastle, and KALP's appeal, still pending as No. 14-55105, Doc 10-1 at p. 17 lines 9-18.

**As to the third *DeLong* factor, 912 F.2d at 1147-49, the Court determines that Kraft and KALP have engaged in a prolonged course of egregious and willful litigation misconduct, abusing the process of this Court and the Washington State courts, squandering the resources of opposing parties, and diverting the courts from other cases.** In addition to the destruction of evidence, fabrication of evidence, and discovery noncompliance discussed above from LA CV 10-01776-VBF, the Court notes that after the disposition of that 2010 action against Kraft and KALP here, the disposition of KALP's 2012 action here, and the disposition of the state-court actions brought by Kraft, he nonetheless filed this meritless and frivolous action. This Court dismissed Kraft's original complaint without prejudice for failing to state a claim on which relief could be granted, and the amended complaint is about to be dismissed *with* prejudice for offering no improvement.

In light of the four prior actions involving some of the same parties and issues, and the lack of arguable merit in the instant complaint, **the Court finds that the filing of the instant action was intended to harass these defendants and did harass, inconvenience, and harm them by wasting their time and financial**

---

[5]

Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the records and decisions in the Washington state-court cases involving Rune Kraft and one or more of these defendants. *See Bell v. Harrington*, 2010 WL 2135641, *1 (C.D. Cal. May 20, 2010) (Carney, J.) (taking judicial notice of seven prior habeas actions that the *pro se* petitioner had brought in federal court challenging same convictions and sentence).

MINUTES FORM 90                                                    Initials of Deputy Clerk   ___jmb____
CIVIL - GEN

resources. *See Walker v. Stanton*, 2008 WL 4401388, *11 (C.D. Cal. Sept. 2, 2008) (declaring Tate a vexatious litigant, court relied on principle that "[a] district court also should 'discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court'") (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988), *cited by DeLong*, 912 F.2d at 1148), *aff'd*, 360 F. App'x 833 (9th Cir. 2009).

      **The Court therefore finds that Kraft has abused the Court's process, that monetary sanction would not be an adequate remedy, and that Kraft would likely keep abusing this Court's process if the Court did not impose vexatious-litigant restrictions.** *See* LCivR 83-8.3, Findings ("Any order issued under L.R. 83-8.2 shall be based on a finding that the litigant to whom the order is issued has abused the Court's process and is likely to continue such abuse, unless protective measures are taken."); Doc 10-1 at 20 line 21 - 22 line 14.

      **As to the fourth *DeLong* factor, 912 F.2d at 1147-49, the order proposed by the defendants is narrowly tailored to closely fit the nature of Kraft's litigation misconduct,** Doc 10-1 at 22 line 15 through 23 line 6. Today's order does not necessarily prohibit Kraft from filing additional actions, or additional post-judgment motions in already concluded actions, against these defendants. He must merely provide security to protect defendants before he will be permitted to file. *See Kelmar v. Bank of America Corp.*, 599 F. App'x 806, 807-808 (9th Cir. 2015) ("The district court then properly issued a vexatious litigant order. That order is narrowly tailored, as it allows Kelmar to file further lawsuits over her home mortgage so long as she provides the court with security as to each defendant against whom she wishes to proceed. On this record, it cannot be said that the district court abused its discretion in declaring Kelmar to be a vexatious litigant."); *cf., e.g., Rainer v. Graiwer*, 2015 WL 9999191, *11 (C.D. Cal. Nov. 25, 2015) ("The Graiwer Defendants moved for a pre-filing order restraining Plaintiff from filing further 'complaints and pleadings related to civil rights and defamation claims stemming from his involvement in WCAB cases without first obtaining leave.' The Court agrees that this proposed language is sufficiently narrowly tailored, because it is limited to the subject matter of the disputes listed . . . above."), *R&R adopted*, 2016 WL 455418 (C.D. Cal. Feb. 4, 2016) (King, C.J.).

      "Other sanctions do not appear to be adequate to protect the Court and other defendants because [Rune Kraft] continues to bring meritless claims, including the instant action, against a variety of defendants in

MINUTES FORM 90                          Initials of Deputy Clerk    jmb   
CIVIL - GEN

pleadings . . . .  Thus, an order preventing plaintiff from initiating any future civil . . . actions against any defendant, without court permission, is appropriate."  *Endsley*, 2014 WL 5335857 at \*6 (Fischer, J.).

**Thus, the Court will declare Rune Kraft vexatious and impose pre-filing restrictions on him.**[6]

ABSENT ADDITIONAL AUTHORITY OR EVIDENCE, THE COURT DECLINES TO DECLARE NON-PARTY KALP TO BE A VEXATIOUS LITIGANT UNDER THESE CIRCUMSTANCES

**Defendants also ask the Court to declare KALP to be a vexatious litigant, but the Court will decline that request based on the briefs submitted thus far.  KALP is not a party to this action and, as the Court previously noted, KALP has never been a proper plaintiff in this action because, as a corporate entity, it cannot appear or file anything in court without representation by licensed counsel.**  *See* Doc 25 (Order issued July 20, 2015).  This is at least presumptively problematic for defendants' attempt to enjoin non-party KALP, because the general rule is that while "[a] federal court may issue an injunction if it has personal jurisdiction over the parties and subject-matter jurisdiction over the claim, it may not attempt to determine the rights of persons not before the Court."  *Zepeda v. United States INS*, 753 F.2d 719, 727 (9th Cir. 1985); *accord Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) ("[A] court may not enter an injunction against a person who has not been made a party to the case before it."); *see also Scott v. Donald*, 165 U.S. 107, 117, 17 S. Ct. 262 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit.").  Defendants have cited no authority, whether precedential or persuasive, for the

---

[6]

Our Local Civil Rule concludes with LCivR 83-8.4, Reference to State Statute, which states as follows:

Although nothing in this rule shall be construed to require that such a procedure be followed, the Court may, at its discretion, proceed by reference to the Vexatious Litigants statute of the State of California, Cal. Code Civ. Proc. §§ 391 - 391.8.

Kraft has not identified any authority *requiring* the Court to consult or use the California Vexatious Litigant Statute, and the Court has elected not to do so.  *Cf. Surabbhi v. Miller*, 2016 WL 233590, \*6 (S.D. Cal. Jan. 19, 2016) ("'Although district courts often look to state practice to determine whether it is appropriate to require plaintiff to post a security, there is no requirement for federal courts to do so.'") (quoting *Susilo v. Wells Fargo Bank, N.A.*, 2012 WL 5896577, \*1 (C.D. Cal. Nov. 19, 2012) (Christina Snyder, J.) and citing *Jefferson v. Stockholders Pub. Co.*, 194 F.2d 281, 282 (9th Cir. 1952)).

MINUTES FORM 90                  Initials of Deputy Clerk     jmb    
CIVIL - GEN

proposition that a federal court may designate an entity (KALP) to be a vexatious litigant where that entity has never been a party to the case in which the motion is filed and has not been subject to any order issued in said case, under circumstances sufficiently similar to the circumstances that obtain here.

**The Federal Rules of Civil Procedure do not provide direct guidance specifically** as to the permissibility of imposing vexatious-litigant restrictions on a person or entity that (1) has never been a proper party to the action in which the vexatious-litigant motion is filed, (2) has not allegedly disobeyed an order to which it was expressly subject, such as a discovery order, in said case, (3) has not allegedly helped a party to the case to disobey an order in the same case; and (4) has not allegedly prevented such a party from complying with an order in the same case. Fed. R. Civ. P. 71, Enforcing Relief for or Against a Nonparty, provides only as follows: "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a nonparty." As our Circuit has remarked in general terms, "'i[t] seems clear that Rule 71 was intended to insure that process be made available to enforce court orders against both parties and non-parties.'" *Westlake North Property Owners Ass'n v. City of Thousand Oaks*, 915 F.3d 1301, 1304 (9th Cir. 1990) (quoting *Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977)). But Rule 71 does not shed any more specific light on about when it is constitutional and otherwise lawful and appropriate to order relief against a nonparty or enforce an order against a nonparty, either generally or in the vexatious-litigant context.

Next, our District's Local Civil Rules do not contain any LCivR 71 corresponding to Fed. R. Civ. P. 71, nor do our other Local Civil Rules appear to address the question of when the court may order relief against a non-party. Nor does the only local civil rule addressing vexatious litigant designations, LCivR 83-8, offer guidance as to when the Court may declare a non-party to be a vexatious litigant.

"Th[e] common law" governing the application of injunctions against non-parties "has been codified in the Federal Rules, which provide[]", *inter alia*, "that a[n] . . . injunction is binding only on the parties, their agents and employees, and persons who are in active concert or participation" with them and who receive notice of the . . . injunction." *LifeScan Scotland, Ltd. v. Shasta Technologies, LLC*, 2013 WL 4604746, *5 (N.D. Cal. Aug. 28, 2013). Namely, the Court consults **Federal Rule of Civil Procedure 65(d), the Contents and Scope of Every Injunction and Restraining Order.** Rule 65(d)(2),entitled "Persons Bound", provides as follows:

MINUTES FORM 90                                          Initials of Deputy Clerk ___jmb____
CIVIL - GEN

-27-

The order binds only the following who receive actual notice of it by personal service or otherwise:  (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and ( C ) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

First, because KALP is not a party herein and has never properly been a party plaintiff herein, Rule 65(d)(2)*(A)* cannot be the source of authority for the Court to extend the vexatious-litigant declaration and the resultant injunction to KALP.  Second, Rule 65(d)(2)*(B)* cannot be the source of authority for the Court to extend the vexatious-litigant declaration and the resultant injunction to KALP because KALP is not an attorney, is not an employee or servant or agent of Rune Kraft, and obviously could not be an "officer" of Rune Kraft.

Third, defendants have not expressly argued that Rule 65(d)(2) subdivision C is a source of authority for the Court to extend the vexatious declaration and injunction to KALP. The defendants' briefs cite only Federal Rule of Civil Procedure, Rule 11.  *See* Doc 10-1 at 3 (Table of Authorities) and Defendants' Reply (Doc 21) at 1-3.  *Cf., e.g.,* applying Fed. R. Civ. P. 65(d)(2) subdivision C:  *Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp.2d 1079, 1093 (E.D. Cal. 2012) (Gregory Hollows, M.J.).

**According to the Supreme Court, the binding effect of an injunction on non-parties "depends on an appraisal of his relations and behavior and not upon mere construction of terms of the order."** *Regal Knitwear Co. v. NLRB*, **324 U.S. 9, 15, 65 S. Ct. 478 (1945).**

**Consistent with** *Regal Knitwear*, **this Court has located federal cases imposing vexatious-litigant restrictions against a non-party only where** the movant has shown that the non-party did something to disobey an order to which it was subject *in that case*, did something with the intent or effect of thwarting a party's compliance with orders issued *in the same case,* or did something with the intent or effect of helping a party to violate an order issued in the same case.  Generally, "[n]onparties", even those "who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction *if, with actual notice of the court's order, they actively aid and abet a party in violating that order*."  *Waffenschmidt v. Mackay*, 763 F.2d 711, 714 (5th Cir. 1985) (emphasis added); *see also Irwin v. Mascott*, 370 F.3d 924, 929-932 (9th Cir. 2004) (discussing the

MINUTES FORM 90                                                              Initials of Deputy Clerk    ___jmb____
CIVIL - GEN

rule that "a non-party can be bound by the litigation choices made by his virtual representative") (citing, *inter alia*, *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993) and *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998)). *Accord Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) ("[T]he only occasion when a person not a party may be punished, is when he has helped to bring about . . . an act of a party.").

"[A] non-party may properly be held in contempt", for example, "if he is given notice of the court's order and either abets [a party] in violating the order or is legally identified with him." *In re Intel Corp. Microprocessor Antitrust Litigation*, 562 F. Supp.2d 606 (D. Del. 2008) (non-party electronics company was subject to sanctions, under court's inherent power, for conduct during discovery dispute between class plaintiffs and the non-party, where the non-party acted in a willfully vexatious manner by taking frivolous and inconsistent positions, both before and after plaintiffs' filing of discovery motion, that were designed to delay resolution of the action and wasted judicial resources); *see also Bartos v. Pennsylvania*, 2010 WL 1816674, *4 (M.D. Pa. May 5, 2010) (awarding costs against non-party employees for giving false deposition testimony in the same case).

**Based on the briefs submitted on this motion, however, defendants have not demonstrated to the Court that KALP may permissibly be declared a vexatious litigant on a motion brought in this case, consistent with the aforementioned precedent or other applicable precedent.** *See, e.g., Thompson v. Alvarez*, 586 F. App'x 390, 390 (9th Cir. 2014) ("The district court did not abuse its discretion in denying Thompson's motion for preliminary injunction to transfer him into federal custody because the district court lacked authority to issue an injunction aimed at a non-party. Thompson did not demonstrate that the limited exception to this rule, which allows injunctions to bind non-parties who are 'in active concert or participation' with the parties, applied.") (citing Fed. R. Civ. P. 65(d)(2) subdivision C, and internally citing, *inter alia*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S. Ct. 1562 (1969) (concluding that it was error to impose an injunction on a non-party under the circumstances)); *Hill v. Oakley*, 2015 WL 727926, *2 (D. Nev. Jan. 29, 2015) ("While there is a limited exception to this rule [that a court may not attempt to determine the rights of persons not before the Court] for non-parties who are 'in active concert or participation' with the parties, Plaintiff does not demonstrate the applicability of this exception under the circumstances, and Rule 65 does not confer personal jurisdiction where it is otherwise lacking.") (citing Fed. R. Civ. P. 65(d)(2) subdivision C).

**Defendants would have to overcome authority that** "'[h]aving a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, *but does not justify granting injunctive relief against the non-party in its separate capacity*.'" *LifeScan Scotland, LLC*, 2013 WL 4604746 at *5 (quoting Federal Circuit's decision in *Additive Controls*, 96 F.3d at 1395-96); *but cf. Merial, Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1305 (Fed. Cir. 2012) (holding that a district court did not commit clear error in finding that a nonparty had acted in concert with an enjoined party, such that the nonparty could be held in contempt of the injunction, where the district court had heard "extensive testimony" regarding the interactions between the two and determined that the nonparty cooperated with and relied on the enjoined party to bring the infringing product to market when the nonparty knew that doing so would violate the injunction).

<u>ORDER</u>

The Court rules on **Document #10 as follows:**

Defendants' request to declare non-party Kraft Americas, L.P., a vexatious litigant is **DENIED without prejudice.**

Defendants' request to declare plaintiff Rune Kraft a vexatious litigant is **GRANTED**.

**THE COURT HEREBY ENJOINS RUNE KRAFT AS FOLLOWS:**

**Before Rune Kraft may file any new action, seek to re-open any concluded action, or seek relief from judgment in any action in this Court or in any other court against** Inland Concrete Enterprises Inc., the Inland Concrete Enterprises Inc. Employee Stock Ownership Plan, Nicholas Saakvitne as Trustee of the Inland Concrete Enterprises Inc. Employee Stock Ownership Plan, Oldcastle Precast Inc., and/or against any subsidiary or parent corporation, owner, officer, employee, agent, or attorney of any of the aforesaid parties, **Rune Kraft must first obtain advance written authorization from Judge** Fairbank or Judge Kronstadt,[7] "upon

---

[7]

*Cf. Westine v. Norwood* 2008 WL 4790672, *1 (C.D. Cal. Oct. 23, 2008) (Real, J.) ("permanently enjoining Petitioner from filing any new lawsuits in this Court without obtaining prior approval from United States District Judge Manuel Real or United States Magistrate . . . Johnson pursuant to Local Rule 83-8.2").

MINUTES FORM 90                                    Initials of Deputy Clerk ___jmb___
CIVIL - GEN

such showing of evidence supporting the claims [or motion] as the judge may require", *Bowen v. Vazquez*, 2009 WL 1158954, *2 (C.D. Cal. Apr. 24, 2009) (Florence-Marie Cooper, J.).

**Rune Kraft may file <u>one</u> motion for reconsideration or motion for relief from judgment in this Court in this case without obtaining advance written authorization to file said motion.[8]**

**Thereafter, before Rune Kraft may file any additional post-judgment motions in this Court in this case**, Rune Kraft must first obtain **advance** written authorization to file from Judge Fairbank. If Judge Fairbank is no longer serving then, Rune Kraft must seek written authorization from another Judge of this Court.[9]

**Rune Kraft may file <u>one</u> motion for reconsideration or motion for relief from judgment in this Court in U.S. District Court for the Central District of California Case Number LA CV 10-01776, *Inland Concrete Enterprises Inc. Employee Stock Ownership Plan & Nicholas L. Saakvitne as Trustee of the Inland Concrete Enterprises Inc. Employee Stock Ownership Plan & Inland Concrete Enterprises Inc., Plaintiffs/Counterclaim-Defendants v. Kraft Americas L.P. (Defendant/Counterclaimant), and Rune Kraft (Defendant)*, without obtaining advance written authorization to file said motion.**

**Thereafter, before Rune Kraft may file additional post-judgment motions in this Court in C.D. Cal. Case Number LA CV 10-01776-VBF**, Rune Kraft must first obtain **advance** written authorization from Judge Fairbank. If Judge Fairbank is no longer serving on the Court then, Rune Kraft must seek written authorization to file from another Judge of this Court.

---

[8]

*Cf. Espinosa v. Marshall*, 2007 WL 214439, *6 (E.D. Cal. Jan. 26, 2007) (Hollows, M.J.) (after granting in part the defendants' motion to impose vexatious-litigant restrictions on plaintiff, the court made an exception, stating, "Until and unless security is posted, and *with the exception of seeking reconsideration of this order with the district judge*, plaintiff shall not make further filings in this lawsuit,; defendants need not respond to any further filings, *with the exception of a motion to reconsider*, absent further order of the court.").

[9]

*See Burkley v. Jacquez*, 2011 WL 3652200, *5 (C.D. Cal. July 25, 2011) ("In order to enforce this prohibition, all future filings by Petitioner should be subject to pre-filing screening by a district judge or magistrate judge of this Court."), *R&R adopted*, 2011 WL 3664288 (C.D. Cal. Aug. 19, 2011) (Phillips, J.).

MINUTES FORM 90                          Initials of Deputy Clerk     jmb    
CIVIL - GEN

**Rune Kraft need not obtain advance written authorization to file <u>one</u> motion for relief from judgment in this Court in C.D. Cal. Case Number LA CV 12-03681-JAK,** *Kraft Americas L.P. v. Oldcastle Precast Inc.* This does not imply that any such motion would be timely or proper.

**Thereafter, before Rune Kraft may file any additional post-judgment motions in this Court in C.D. Cal. Case Number LA CV 12-03681-JAK,** he must obtain written authorization from Judge Kronstadt. If Judge Kronstadt is no longer serving on the Court, Rune Kraft must seek **advance** written authorization to file from another Judge of this Court.

When making any request to any court for leave to file as required by this Order, Rune Kraft **SHALL FILE** with that court contemporaneously a copy of this full Order.

Any Judge of this Court who rules on any such request for leave to file by Rune Kraft, shall require appropriate security consistent with C.D. Cal. LCivR 83-8.2 (Orders for Security & Control) and *Aref v. Hickman*, 404 F. App'x 205 (9th Cir. 2010).

These filing restrictions apply whether Rune Kraft attempts to file *pro se* or through counsel.

<u>"The Clerk of the Court shall not file any complaint or *in forma pauperis* application by [Rune Kraft] unless he has filed a Motion for Leave to File a Complaint and a judge of this court has granted leave for [him] to file the complaint. Any Motion for Leave to File a Complaint must include . . . a copy of this Order, and a copy of the proposed complaint."</u> *Gray v. People of State of California*, 2014 WL 1325312, *1 (C.D. Cal. Apr. 2, 2014) (Selna, J.); *see also Schneider v. Roberts*, 2014 WL 1891416, *1 (C.D. Cal. May 9, 2014) (King, C.J.) ("The Clerk of Court shall not accept any further removal filings from Defendant Melanie Roberts against Plaintiff that arise out of the Los Angeles County Superior Court unlawful detainer action . . . .").[10]

---

[10]

*Cf. also, e.g., Brown v. Hoops*, 2013 WL 5329484, *1 (C.D. Cal. Christina Snyder, J.) (adopting R&R of David Bristow, M.J., and directing Clerk of Court not to accept "any further motions and/or any further requests for affirmative relief in this action, as well as any civil rights complaints, or any in forma pauperis

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ____jmb____

Likewise, the Clerk of the Court shall not file any document from Rune Kraft in this case, or in C.D. Cal. case number LA CV 10-01776-VBF, or in C.D. Cal. Case number LA CV 12-03681-JAK, unless Rune Kraft has filed a Motion for Leave to File and a judge of this court has granted leave for him to file said document. Any Motion for Leave to File any document must include a copy of this order and a copy of the proposed filing.[11]

**Any motion for reconsideration pursuant to Fed. R. Civ. P. 59(e) must be filed within 28 calendar days of the date of this order.** *See United States v. Amsurg Corp.*, 2016 WL 304567, *3 (E.D. Cal. Jan. 26, 2016) (Troy Nunley, J.) ("'If a motion for reconsideration is filed within 28 days of an order on a motion . . . , the Court will treat the motion as a 59(e) motion.'") (quoting district-court decision which cited *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

The parties are advised, however, that motions for reconsideration may not merely repeat arguments that the movant made in briefs filed before the adverse ruling he seeks to reconsider.

---

applications by plaintiff in the Central District of California unless Plaintiff has filed a Motion for Leave to File and a Judge of this Court has granted leave for plaintiff to file the document.");

*Patterson v. Diaz*, 2012 WL 5470427, *1 n.2 (C.D. Cal. Oct. 22, 2012) ("District Judge [name] issued an Order declaring Petitioner a vexatious litigant and directing the Clerk of Court not to accept further filings from Petitioner without the payment of a filing fee and without prior written authorization from a District Judge or a Magistrate Judge."), *R&R adopted*, 2012 WL 5465835 (C.D. Cal .Nov. 8, 2012) (George H. King, C.J.).

[11]

If the Clerk's Office inadvertently files any complaint submitted by Rune Kraft without receiving from Rune Kraft proof that he has sought and obtain written authorization to file that complaint as required by this Order, the action thus initiated will be dismissed without prejudice. Likewise, if the Clerk's Office inadvertently files any document submitted by Rune Kraft in an existing action in this Court, the document will be stricken from the record. *See, e.g., Banks v. Merit System Protection Board*, Misc. Nos. 16-61, 16-79, and 16-80, 2016 WL 6893135, *1 (W.D. Pa. Feb. 22, 2016) (Joy Flowers Conti, C.J.) ("Because Banks – a vexatious litigant – did not seek or receive authorization from the court to file these documents, the court dismissed them without prejudice.") (citing order issued by judge in another case in same federal district).

In either case, the Court will consider imposing a monetary or other sanction on Rune Kraft for presenting a complaint or other document for filing without first obtaining authorization as set forth in this Order.

MINUTES FORM 90                                      Initials of Deputy Clerk ___jmb_____
CIVIL - GEN

This order may not be immediately appealable, but it will be appealable after the entry of final judgment in this case. *See generally Jallali v. National Board of Osteopathic Med. Examiners, Inc.*, 515 F. App'x 863, 867 (11th Cir. 2013) (stating that on appeal, a federal district court's ruling on a vexatious-litigant motion is reviewed for abuse of discretion).

IT IS SO ORDERED.

MINUTES FORM 90                                                  Initials of Deputy Clerk  ____jmb_____
CIVIL - GEN