**Eɢʜɪʙɪᴛ B**

Rune Kraft
  rk@kraft.legal
Kraft Legal | United States
108 West 13th Street
Wilmington, Delaware 19801
  302 408 1000

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Rune Kraft,
        Plaintiff,

vs.

Chevron Corporation, et al.,
        Defendants.

Case No. CV-21-00575-PHX-DJH

The Honorable Diane J. Humetewa

**MOTION FOR THE ARTICLE III COURT TO REVIEW THE ORDER ISSUED BY THE ARTICLE I COURT (DOC. 72)**

## Affidavit of Rune Kraft

I, Rune Kraft, based on personal knowledge, declare:

On August 26, 2021, at 10 a.m. EDT, I attended by teleconference a hearing at the United States Bankruptcy Court for the District of Delaware in Case No. 01-01139 (AMC) related to my claims against Defendant W.R. Grace & Co., a Connecticut corporation ("W.R. Grace"), in this action.

Judge Ashely M. Chan opened the hearing by asking me if I had anything for the court to consider. I responded yes, and provided the court with the following statement:

**Based on Article III of the Constitution, this court does not have the constitutional authority to meddle with my controversy with W.R. Grace.**

➢ I do not consent to the jurisdiction of this court.
➢ Again, I do not consent to the jurisdiction of this court.

W.R. Grace & Co. has come before this court and has asked it to enter final judgment in the claims that I have made against this Connecticut corporation in Case No. CV-21-00575-PHX-DJH at the Article III court - the United States District Court for the District of Arizona.

I have never submitted a proof of claim in this action. I have never been a creditor in this action. I have never taken part in any of the activities that have taken place at this **Article I court**.

I have brought an action against W.R. Grace & Co. based on making false representations in writing and committing actual fraud for the purpose of obtaining money and property, **at an Article III court**.

W.R. Grace & Co.'s instant use of this Article I court, were comprehensively addressed by the Supreme Court in *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982) and *Stern v. Marshall*, 564 U.S. 462 (2011), with the Supreme Court concluding:

> A bankruptcy judge may issue a final judgment in a proceeding only if the matter both "meets Congress' definition of a core proceeding *and* arises under or arises in title 11". Although we conclude that 28 U.S.C. §157(b)(2)(C) permits the Bankruptcy Court to enter final judgment, Article III of the Constitution does not.

**To make it easy for this Article I court, Congress already anticipated the conduct of W.R. Grace & Co. and issued the text found in 11 U.S.C. § 523(a)(2) and (4)**
This court cannot enforce an order against me that would preclude me from asserting claims against W.R. Grace based on money that W.R. Grace has obtained by fraud. 11 U.S.C. § 523(a)(2) and (4).

1

**Finally, if W.R. Grace & Co. wants to challenge my standing to use the Article III court to make W.R. Grace & Co. liable for having to pay damages, such challenges must be brought before the Article III court, not this Article I court.**

Case No. CV-21-00575-PHX-DJH is an action for: civil relief under 18 U.S.C. §§ 1961 *et seq.*, relief under the California Cartwright Act (Sections 16600 *et seq*. of the California Business & Professions Code; and relief under the California Unfair Practices Act (Section 17000 *et seq*. of the California Business & Professions Code).

Immediately following my statement, Judge Chan informed the attorneys of W.R. Grace that she did not need to hear from them. Nevertheless, James O'Neill replied that he did not have anything to say, and he then asked Roger Higgins if he had anything to say to which Mr. Higgins responded that he also did not have anything to say.

Again, neither Judge Chan nor any of the attorneys for W.R. Grace asked any follow up questions and/or indicated that they did not understand my statement to the court.

Then Judge Chan stated that she would issue an order shortly and concluded the hearing, at about 10.10 a.m.

Five hours later, at 2.59 p.m., the court issued the order attached hereto and shown in Doc. 72-1 ("Order"). Footnote 3 of the order shows:

At the hearing on the Enforcement Motion, Kraft did raise certain additional arguments regarding the Court's jurisdiction and authority to grant the relief requested in the Enforcement Motion for the first time which the Court found difficult to follow and which were not raised in his response. Because Kraft did not raise these arguments in his response and deprived Grace of the opportunity to respond in writing, the Court does not consider these new arguments made for the first time at the hearing. Even if the Court did consider Kraft's new arguments, as mentioned *supra*, the Court is satisfied that it has jurisdiction and the authority to enter an order enforcing its own injunctions and orders and to determine whether the RICO claims Kraft asserts against Grace in the Arizona Chevron Action have been discharged.

Prior to filing this motion, I sent an email to W.R. Grace's attorneys informing them that I would be filing a motion today for the Article III court to review the order issued by the Article I court yesterday. I then asked: "Maybe I missed it, but can you identify for me where, in any of your court filings, you asserted *Beard v. A.H. Robins Co.,* 828 F.2d 1029, 1032 (4th Cir. 1987) and the referenced text of Section 1141(d)(1), namely the foundational premise of the Delaware based Article I court that a corporation can commit fraud at an Article I court and discharge the liabilities from such conduct by using an Article I court?" W.R. Grace's attorneys were non-responsive.

2

MOTION FOR THE ARTICLE III COURT TO REVIEW THE ORDER ISSUED BY THE ARTICLE I COURT (DOC. 72)
Case No. CV-21-00575-PHX-DJH

I am competent to testify to the facts set forth in this declaration and declare under the penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct.

DATED this 27ᵗʰ day of August 2021.



_____
Rune Kraft

## A Title 11 Court Obtains Jurisdiction Over Persons One Way, By Filing a Proof of Claim Under Penalty of Perjury Seeking to Obtain Money from the Assets of a Debtor

The jurisdiction of a Title 11 court, which is an Article I court, flows from the assets it obtains control over through the filing for bankruptcy protection by a debtor. Anybody who has claims against the debtor then submits to the jurisdiction of the court by filing a proof of claim under penalty of perjury. The singular purpose of the Title 11 court is to administer all such claims in an orderly manner.

Plaintiff has never submitted a proof of claim at the Delaware Article I court and has thus never submitted to the jurisdiction of the court.

## The Title 11 Court Claims That Plaintiff Should Have Submitted a Claim, which is a Thoughtless Suggestion

The Order pronounces:

> As detailed *supra,* first, in summer 2002, Grace published notice of the bankruptcy and the Claims Bar Date in hundreds of national and local newspapers, magazines, and other publications. Later, publication notice of the confirmation hearings as well as of the discharge and injunctive provisions of Grace's Plan was made in several national newspapers, magazines, and periodicals in March and April 2009. Instructions for voting and objecting to the Plan were included in that notice.
>
> Order at 12

3

However, the Complaint states:

> 22. On April 6, 2017 Plaintiff received the BOE's response to a subpoena that he had caused to be issued in Tulare Court Case No. 217841 which related to an allegation that had been made by Alroy J. Oliver and Richard D. Oliver that they had been forced to pay the BOE about $ 100,000 in sales taxes that supposedly were owed by the taxpayer The Artesia Companies, Inc., for Account No. 097827995. Al and Richard Oliver also claimed that they had an agreement with Plaintiff and that in this agreement Plaintiff had indemnified them.

> 23. The BOE's response contained ledgers and checks. However, the records did not show any payments made by Al and Richard Oliver to the BOE, as they had alleged at the Tulare Court.

> 24. What the records did show was that the BOE had received payments it was not entitled to from a case under title 11, Case No. 2:05-bk- 15022-RTB, which are offenses involving fraud connected with a case under title 11 and "specified unlawful activity" listed in section 18 U.S.C. § 1961(D).

Doc. 1 at 9

Pursuant to *Agency Holding Corp. v Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987), a four-year limitations period applies to civil claims brought under the Racketeer Influenced and Corrupt Organizations Act. Pursuant to *Rotella v. Wood*, 528 U.S. 549 (2000) RICO's statute of limitations begins to run when the victim knew of its injury. The Complaint was filed on April 2, 2021, which is within 4 years of April 6, 2017.

Obviously Plaintiff could not "vote and object to the Plan" in 2002 and/or 2009 when he knew of his injury in 2017.

## The Premise of the Article I Court Perverts the Work of Congress

18 U.S. Code § 1961(1)(D) declares:

> As used in this chapter— (1) "racketeering activity" means (D) any offense involving fraud connected with a case under title 11.

18 U.S. Code § 1961(1)(D)

The Article I court's premise, if you are a corporation the text of 18 U.S. Code § 1961(1)(D) becomes meaningless if you initiate another case under title 11, perverts the work of Congress.

4

## The Article I Court Does Not Have the Constitutional Authority to Adjudicate Plaintiff's Claims Against W.R. Grace

The U.S. Constitution provides Article III courts the authority to adjudicate controversies. These issues were also comprehensively addressed by the Supreme Court in *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982) and *Stern v. Marshall*, 564 U.S. 462 (2011), with the Supreme Court establishing that a bankruptcy judge may issue a final judgment in a proceeding only if the matter both "meets Congress' definition of a core proceeding *and* arises under or arises in title 11", adding that although the Supreme Court had concluded that 28 U.S.C. §157(b)(2)(C) permitted the bankruptcy court to enter final judgment, Article III of the Constitution did not.

Nowhere in the Constitution does an Article I court receive the authority to adjudicate the claims Plaintiff has brought against W.R. Grace at this Article III court.


## Conclusion

The Court should either disregard the Order or order the Article I court to stop interfering with this action.


Respectfully submitted on this 27th day of August 2021.


_____

Plaintiff

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Case No. 01-01139-AMC** |
| | : | **(Jointly Administered)** |
| W.R. Grace & Co., et al., | : | |
| | : | **Chapter 11** |
| | : | |
| Reorganized Debtor | : | |

## ORDER

AND NOW this 26th day of August 2021, upon consideration of the reorganized debtor's "Motion for an Order: (I) Enforcing Against Rune Kraft the Plan and Confirmation Claim Preclusion Bars to Post-Bar Date Assertion of Administrative Expense Claims; and (II) Compelling Rune Kraft to Dismiss With Prejudice His Complaint Against the Reorganized Debtor in the Matter Captioned Kraft V. Chevron Corp. et al., Case No. 2:21- CV-00575-DJH (the "Arizona-Chevron Litigation")" ("Enforcement Motion"), Rune Kraft's response, and after notice and a hearing, the Court finds as follows:

1. On April 2, 2001, W.R. Grace & Co. ("Grace") and sixty-one affiliated entities commenced the Grace chapter 11 bankruptcy cases in the Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court" or "this Court").

2. On April 22, 2002, the Delaware Bankruptcy Court set a bar date of March 31, 2003 as the last date for filing proofs of claim for all prepetition non-asbestos claims ("Claims Bar Date"). Case No. 01-01139 ECF 1963. Grace published notice of the Claims Bar Date in hundreds of local and national newspapers, magazines, and other publications across the country throughout the summer of 2002. *Id.* at ECF 12206 Kinsella Aff.

3. Meanwhile, on August 16, 2005, Realia Inc. ("Realia") filed a voluntary chapter 11 petition under the Bankruptcy Code ("Realia Bankruptcy") in the Bankruptcy Court for

the District of Arizona ("Arizona Bankruptcy Court"). Case No. 01-01139 ECF 33243
Shpigelman Decl. Ex. A. On December 13, 2005, the Realia Bankruptcy was converted
to a case under chapter 7. *Id.*

4. In November 2006, the chapter 7 trustee in the Realia Bankruptcy filed an application
("Application") seeking authority to distribute net proceeds from the sale of real property
located at 1705 S. 19th Avenue, Lemoore, Kings County, California ("Lemoore
Property"). Shpigelman Decl. Ex. A, C. Based upon a judgment recorded January 8, 2005
in favor of Grace constituting a lien against net proceeds of the sale of the Lemoore
Property, the Application, in relevant part, sought, *inter alia*, to distribute payment to
Grace in the amount of $27,579.60 plus $6.32 per diem until paid in full. Shpigelman
Decl. Ex. C. In December 2006, the Arizona Bankruptcy Court granted the Application in
the absence of any objections to the Application ("Distribution Order"). Shpigelman
Decl. Ex. D.

5. Later, in the Grace chapter 11 proceedings, Grace filed its first amended joint plan of
reorganization on February 27, 2009 ("Plan"). Case No. 01-01139 ECF 20872. On March
23, 2009, Grace published court-approved notice of the confirmation hearings and
discharge and injunctive provisions of the Plan in the national editions of the Wall Street
Journal, New York Times, and USA Today. *Id.* at ECF 21974. Grace published the same
in Mealey's Litigation Report on April 1, 2009, Andrews' Asbestos Litigation Reporter
on April 4, 2009, Parade Magazine on April 12, 2009, USA Weekend Magazine on April
12, 2009, Newsweek on April 13, 2009, TV Guide Magazine on April 13, 2009 through
April 19, 2009, Sports Illustrated on April 20, 2009, and US News & World Report on
April 20, 2009. *Id.* The first phase of the confirmation hearing was scheduled to take

place June 22-25, 2009, and the second phase of the confirmation hearing was scheduled to take place September 8-11, 2009. *Id.*

6. In early 2011, Grace's Plan was confirmed and an order reflecting that was entered ("Confirmation Order"). *Id.* at ECF 26155, 26289. On February 3, 2014, the Plan was substantially consummated ("Effective Date"). *Id.* at ECF 31732, 31700. Accordingly, Grace published notice of the Plan's Effective Date and that May 5, 2014 was the last date for filing proofs of administrative expense claims ("Administrative Claims Bar Date") in the national edition of the Wall Street Journal on February 21, 2014, national edition of the New York Times on February 21, 2014, and national edition of USA Today on February 24, 2014. *Id.* at ECF 31821, 31819, 31820.

7. Article 1.1(4) of the Plan defines "administrative expense claim" as:

> any Claim constituting a cost or expense of administration in the Chapter 11 Cases, on or after the Petition Date but prior to the Effective Date, under Bankruptcy Code §§ 503(b), 507(a)(1), 507(b) or 1114(e)(2), including: (a) any actual and necessary costs and expenses of preserving the estates of the Debtors, (b) any actual and necessary costs and expenses of operating the businesses of the Debtors, (c) any indebtedness or obligation incurred or assumed by the Debtors (including any executory contracts of the Debtors assumed pursuant to Bankruptcy Code § 365 by order of the Bankruptcy Court or the Plan) in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services, and (d) any allowed compensation or reimbursement of expenses awarded or allowed under Bankruptcy Code §§ 330(a), 331 or 503, and (ii) any fees or charges assessed against the estates of the Debtors under 28 U.S.C. § 1930. *Id.* at ECF 26368.

Importantly, article 2.1.1(b)(2) of the Plan provides that:

> [u]nless a request for the payment of an Administrative Expense Claim previously was filed with the Court, all requests or applications for payment of Administrative Expense Claims other than Professionals' Fees described in Section 2.1.1(b)(1) ('**Other Administrative Expense Claims'**) must be filed with the Court and served on the Reorganized Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 90 days after the Effective Date (the '**Administrative Claims Bar Date'**). Any Holder of an Administrative Expense Claim that is required to file and serve a request for payment of such Administrative Expense Claim and

that does not file and serve such a request within the time established by this Section 2.1.1(b)(2) will be forever barred from asserting such Administrative Expense Claim against the Debtors, the Reorganized Debtors or their respective property and such Administrative Expense Claim will be deemed discharged as of the Effective Date. *Id.*

Finally, article 8.1.1 of the Plan provides:

> [t]he rights afforded in this Plan and the treatment of all Claims, Plan Claims, Demands and Equity Interests herein shall be in exchange for and shall discharge all Claims, Plan Claims, and Demands of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims, Plan Claims, and Demands against the Debtors and the Debtors in Possession shall be discharged. The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to this Plan. All Entities shall be precluded and forever barred from asserting against the Debtors and the Reorganized Debtors, or their assets, properties, or interests in property any other or further Claims, Plan Claims, or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan. *Id.*

8. On April 2, 2021, Rune Kraft ("Kraft"), as the sole plaintiff, filed a complaint ("Arizona Chevron Complaint") in the United States District Court for the District of Arizona ("District Court") for, *inter alia*, civil relief under 18 U.S.C. §§ 1961 *et seq*., ("RICO Statute") naming, *inter alia,* Grace as a defendant ("Arizona Chevron Action"). Shpigelman Decl. Ex. F Pt. 1. Kraft uses the entity "Kraft Legal" in the address block of the Complaint. *Id.*

9. Kraft states in the Arizona Chevron Complaint that several entities assigned him the claims involved in the Arizona Chevron Action ("Assignor Entities"), including Realia.[1]

---

[1] The other Assignor Entities are alleged to be Concreteworks, Inc., Artesia Holdings, Inc., Pacific Equipment Management Company, Inc., Pacific Real Estate Holdings, Inc., North American Service Holdings, Inc., and Kraft Americas Holdings, Inc. Shpigelman Decl. Ex. F ¶ 2.

*Id.* at ¶ 2. The Arizona Chevron Complaint does not detail *any* circumstances surrounding the alleged assignments.

10. Essentially, the Arizona Chevron Complaint alleges in the vaguest terms that Grace received property from a bankruptcy case in Phoenix, Arizona which it had no right to receive and, thereby, committed fraud in connection with a title 11 case, engaged in "specified unlawful activity" under 18 U.S.C. § 1961(D), and committed other violations of the RICO Statute by virtue of its alleged illegal receipt of property from the Arizona bankruptcy case, such as mail fraud, money laundering, and bank fraud ("Grace RICO Claims"). *Id.* at ¶¶ 8, 19, § 5.1 Predicate Act #8, § 5.2 Predicate Act # 37, Predicate Act # 38, § 5.3 Predicate Act # 74, § 5.4 Predicate Act 93, § 5.5 Predicate Act #107. The Complaint does not detail *any* circumstances surrounding the alleged unlawful transaction, such as what property Grace received, when Grace received it, which bankruptcy case was involved, or why Grace had no right to the property at issue. However, the Complaint does allege that another defendant in the Arizona Chevron Action received payments it was not entitled to receive from a case under title 11 with the case number 2:05-bk-15022-RTB, which corresponds to the Realia Bankruptcy. Shpigelman Decl. Ex. F ¶ 24, Ex. A.

11. On July 13, 2021, Grace filed in the Delaware Bankruptcy Court a "Motion for an Order: (I) Enforcing Against Rune Kraft the Plan and Confirmation Claim Preclusion Bars to Post-Bar Date Assertion of Administrative Expense Claims; And (II) Compelling Rune Kraft to Dismiss with Prejudice His Complaint Against the Reorganized Debtor in the Matter Captioned <u>Kraft v. Chevron Corp. Et Al.,</u> Case No. 2:21-CV-00575-DJH" ("Enforcement Motion"). Case No. 01-01139 ECF 33242 Enf. Mot.

12. Based upon the Arizona Chevron Complaint's reference to the Realia Bankruptcy case number, allegations that Grace received property from a bankruptcy case in Phoenix, and that Realia was one of the Assignor Entities, Grace believes that Kraft's allegations against Grace in the Arizona Chevron Action must relate to the Distribution Order from the Realia Bankruptcy. Enf. Mot. ¶¶ 19, 20, 22, 31.

13. Ultimately, in the Enforcement Motion, Grace seeks to have this Court find that the transaction complained of with respect to Grace in the Arizona Chevron Complaint is the Distribution Order from the Realia Bankruptcy, determine that claims related to the Distribution Order are administrative expense claims which are barred and were discharged by the Plan and Confirmation Order, and order Kraft to dismiss Grace with prejudice from the Arizona Chevron Action. Enf. Mot. p. 3-4. ¶ 31.

14. The basis of Kraft's alleged RICO claims against Grace is utterly unclear from the threadbare allegations against it in the incredibly confusing Arizona Chevron Complaint. While Kraft's assertions against Grace in the Arizona Chevron Complaint are nearly incomprehensible, the Complaint's references to the Realia Bankruptcy case number with regard to another defendant in the Arizona Chevron Complaint, to Grace receiving property from a bankruptcy case in Arizona, and to Realia being one of the Assignor Entities suggest that Kraft is basing his purported RICO claims against Grace on the Distribution Order from the Realia Bankruptcy from 2006. However, it is difficult to understand how a claim Realia had against Grace, which it may have assigned to Kraft, could be related to a claim *Grace* had against *Realia* in Realia's own bankruptcy. Further adding to the confusion is that neither Kraft, Kraft Legal, nor any of the Assignor Entities are listed in Grace's books and records from its chapter 11 cases as creditors, claimants,

6

or otherwise, and none asserted any claims in the Grace chapter 11 cases. Enf. Mot. ¶ 24. In fact, there has been no evidence presented that Grace ever owed money to Realia.

15. On July 16, 2021, Kraft filed a response in opposition to the Enforcement Motion, essentially insisting on his right to prosecute the Arizona Chevron Action against Grace based on his belief that any money obtained by fraud is not dischargeable in any bankruptcy and because he was never part of Grace's chapter 11 proceedings nor personally served any motions or orders in that matter.[2] Case No. 01-01139 ECF 33245 Kraft Aff. p. 2.

16. Ultimately, as mentioned *supra,* Grace seeks to have this Court enforce the Plan and Confirmation Order against Kraft's attempt to assert RICO claims against Grace in the Arizona Chevron Action. Generally, bankruptcy courts plainly have jurisdiction to enforce their own injunctions. *Citizens Against Corp. Crime, LLC v. Lennar Corp. (In re Landsource Cmtys. Dev., LLC),* 612 B.R. 484, 495 (D. Del. 2020); *In re Continental Airlines, Inc.,* 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders. In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia,* to enforce its confirmation order.").

---

[2] Kraft, who is an attorney, has not objected to Grace pursuing its requested relief in a contested matter instead of an adversary proceeding. Ordinarily, Federal Rule of Bankruptcy Procedure 7001(7) requires the commencement of an adversary proceeding if injunctive relief is sought. However, in this case, Grace is merely seeking to enforce an injunction already in place – that created by sections 1141 and 524 of the Bankruptcy Code and the express terms of the Confirmation Order and Plan. *See Solow v. Kalikow (In re Kalikow),* 602 F.3d 82, 93 (2d Cir. 2010); *In re Continental Airlines, Inc.,* 236 B.R. 318, 327 (Bankr. D. Del. 1999). Accordingly, an adversary proceeding is not necessary where the relief sought is the enforcement of an injunction previously obtained, as in the case of enforcement of the discharge injunction. *In re Kalikow,* 602 F.3d at 93; *In re Continental Airlines, Inc.,* 236 B.R. at 327. In any event, Kraft has waived any objection he may have to Grace's chosen procedural mechanism by failing to object to it. *See In re Dunning,* 269 B.R. 357, 368 (Bankr. N.D. Ohio 2001) ("the Bank raised no objection to proceeding on the Motion rather than on complaint, 'thereby waiving any procedural irregularity.'").

17. Kraft makes three arguments in opposition to the Enforcement Motion in his response.[3]

First, he argues that:

> I informed the [Grace] attorneys that they could resolve this matter very simply: identify any legal authority that is inconsistent with *In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995), which holds that money obtained by fraud is not dischargeable in an 11 U.S.C. proceeding. This Ninth Circuit standard is also consistent with 11 U.S.C. § 523(a)(2) and (4). The attorneys, since June 25, 2021, have never provided the requested legal authority. Kraft Aff. p. 2.

18. The case Kraft relies upon, *In re Daily,* is totally inapposite, as it involved an individual as opposed to a corporate debtor. *In re Daily,* 47 F.3d 365, 366 (9th Cir. 1995). Pursuant to 11 U.S.C. § 1141(d)(1), the confirmation of a plan discharges a corporate debtor from any debt that arose before the date of confirmation, subject to certain exceptions not applicable in this case. Under 11 U.S.C. § 1141(d)(2), a discharge in chapter 11 does not discharge a debtor *who is an individual* from any debt excepted from discharge under section 523 of the Bankruptcy Code [emphasis added]. Claims which may be nondischargeable under section 523 of the Bankruptcy Code in an individual chapter 11 case are, nevertheless, dischargeable in a corporate chapter 11 case, subject to certain exceptions not applicable here. *See Beard v. A.H. Robins Co.,* 828 F.2d 1029, 1032 (4th Cir. 1987) ("The present Bankruptcy Act retains the earlier distinction between the dischargeability of a 'willful and malicious' tort claim in an individual bankruptcy, and the dischargeability of a similar such claim in a corporate reorganization: in the individual bankruptcy, such a claim is not dischargeable, but under the corporate

---

[3] At the hearing on the Enforcement Motion, Kraft did raise certain additional arguments regarding the Court's jurisdiction and authority to grant the relief requested in the Enforcement Motion for the first time which the Court found difficult to follow and which were not raised in his response. Because Kraft did not raise these arguments in his response and deprived Grace of the opportunity to respond in writing, the Court does not consider these new arguments made for the first time at the hearing. Even if the Court did consider Kraft's new arguments, as mentioned *supra*, the Court is satisfied that it has jurisdiction and the authority to enter an order enforcing its own injunctions and orders and to determine whether the RICO claims Kraft asserts against Grace in the Arizona Chevron Action have been discharged.

reorganization provision of the Bankruptcy Act it is dischargeable. Such is the language of Section 1141(d)(1) and (2) of the Act.").

19. In his second argument, Kraft states that "[n]either I nor any assignor of claims to me has been served with any motions and/or orders related to this action. And neither I nor any assignor of claims to me has taken any part in this action prior to the instant motion." Kraft Aff. p. 2.

20. Inadequate notice of a bankruptcy case and bar dates precludes discharge of a creditor's claim in bankruptcy.[4] *Wright v. Owens Corning,* 679 F.3d 101, 107 (3d Cir. 2012); *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3d Cir. 1995) ("Inadequate notice is a defect which precludes discharge of a claim in bankruptcy."); *In re Weiand Auto. Indus.,* 612 B.R. 824, 848 (Bankr. D. Del. 2020) ("a confirmed plan of reorganization that discharges claims and enjoins attendant causes of action against the debtors pursuant to § 1141(d) is 'unenforceable against entities that did not receive adequate notice of the bankruptcy or an opportunity to contest confirmation.'"); *In re Temsco NC Inc.,* 537 B.R. 108, 120 (Bankr. P.R. 2015) ("If a creditor does not receive reasonable notice of a bankruptcy case and the particular bar dates, then its claim cannot be constitutionally discharged."); *Pettibone Corp. v. Payne,* 151 B.R. 166, 170 (Bankr. N.D. Ill. 1993) (a confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy and any applicable claims bar dates).

21. Creditors are entitled to notice reasonably calculated, under all the circumstances, to apprise them of the pendency of events in a bankruptcy which may affect their rights and an opportunity to present their objections. *Owens Corning,* 679 F.3d at 108; *Placid Oil*

---

[4] Similarly, a claimant who has not been given notice of the confirmation hearing cannot be deprived of rights through that hearing. *Pettibone Corp. v. Payne,* 151 B.R. 166, 170 (Bankr. N.D. Ill. 1993).

*Co. v. Williams (In re Placid Oil Co.),* 463 B.R. 803, 816 (Bankr. N.D. Tex. 2012). The notice must reasonably convey the required information, permit a reasonable time for a response, and must afford a reasonable time for those interested to make their appearance. *Chemetron Corp.,* 72 F.3d at 346; *In re Weiand Auto Indus.,* 612 B.R. at 848; *In re Placid Oil Co.,* 463 B.R. at 816. Whether adequate notice has been provided depends on the circumstances of a particular case. *Owens Corning,* 679 F.3d at 108.

22. That said, bankruptcy courts have distinguished the notice that must be given to known versus unknown creditors. *Chemetron Corp.,* 72 F.3d at 346; *In re Placid Oil Co.,* 463 B.R. at 816. Generally, for unknown claimants, notice of the bankruptcy and claims bar dates by publication in national newspapers is sufficient to satisfy the requirements of due process, particularly if it is supplemented by notice in local papers.[5] *Owens Corning,* 679 F.3d at 107-08; *Chemetron Corp.,* 72 F.3d at 348-49 ("Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business."); *In re Motors Liquidation Co.,* 585 B.R. 708, 724 (Bankr. S.D. N.Y. 2018).

23. An unknown creditor is a creditor whose identity or claim is not reasonably ascertainable or is merely conceivable, conjectural, or speculative and although could be discovered upon investigation, does not in the due course of business come to the knowledge of the debtor. *Chemetron Corp.,* 72 F.3d at 346; *In re Motors Liquidation Co.,* 585 B.R. at 724.

---

[5] In some instances, a future claims representative is appointed to act as a guardian for future unknown claims, like, for example, where a debtor knows that it is facing significant tort liability due to asbestos exposure, it may be reasonable for a debtor to appoint a future claims representative. *Placid Oil Co. v. Williams (In re Placid Oil Co.),* 463 B.R. 803, 817 (Bankr. N.D. Tex. 2012). Here, the Court has no reason to believe that Grace was facing significant civil RICO liability such that appointing a future claims representative for these types of claims would have been necessary.

A creditor is reasonably ascertainable if the debtor can uncover the identity of that creditor through reasonably diligent efforts. *Chemetron Corp.,* 72 F.3d at 346; *In re Motors Liquidation Co.,* 585 B.R. at 724. However, "reasonable diligence does not require 'impracticable and extended searches…in the name of due process.'" *Chemetron Corp.,* 72 F.3d at 346; *In re Weiand Auto. Indus.,* 612 B.R. at 848; *In re Motors Liquidation Co.,* 585 B.R. at 724. A debtor does not have "'a duty to search out every conceivable or possible creditor and urge that person or entity to make a claim against it.'" *Chemetron Corp.,* 72 F.3d at 346; *In re Weiand Auto. Indus.,* 612 B.R. at 848; *In re Motors Liquidation Co.,* 585 B.R. at 724. What is required is not a vast, open-ended investigation. *Chemetron Corp.,* 72 F.3d at 346; *In re Motors Liquidation Co.,* 585 B.R. at 724. Instead, "the requisite search…focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *Chemetron Corp.,* 72 F.3d at 347; *In re Weiand Auto. Indus.,* 612 B.R. at 848; *In re Motors Liquidation Co.,* 585 B.R. at 724.

24. Known creditors are defined as creditors that a debtor knew of, or should have known of, when serving notice of the bar date. *In re Motors Liquidation Co.,* 585 B.R. at 725. Among known creditors may be parties who have made a demand for payment against a debtor in one form or another before the compilation of a debtor's schedules. *Id*. Typically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim. *Id*. Ultimately, a known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it. *Id.*

11

25. Based on the circumstances, the Court cannot conclude that Kraft or the assignor of the Grace RICO Claims was a known creditor. In fact, Kraft himself never argues that he or the Assignor Entities were known creditors. A careful review of Grace's books and records did not reveal that either Kraft or any of the Assignor Entities had or may have had claims against Grace. There is no suggestion that either Kraft or any of the Assignor Entities ever made a previous demand for payment against Grace or engaged in previous communication with Grace concerning the existence of a RICO claim against it based upon Grace's receipt of proceeds from the Realia Bankruptcy. In fact, the Court can discern no circumstances on the basis of this record which would have alerted Grace to the existence of a RICO or any other claim stemming from its court-approved receipt of funds from the Realia Bankruptcy, particularly when no party objected to the Realia trustee's proposed distribution of funds from the sale of the Lemoore Property. Accordingly, Kraft or the Assignor Entities would have *at most* been unknown creditors.

26. In light of Kraft's status as, at most, an unknown creditor, publication notice of Grace's bankruptcy proceedings, confirmation hearings, and Administrative Claims Bar Date is sufficient to satisfy any due process concerns with respect to Kraft. As detailed *supra,* first, in summer 2002, Grace published notice of the bankruptcy and the Claims Bar Date in hundreds of national and local newspapers, magazines, and other publications. Later, publication notice of the confirmation hearings as well as of the discharge and injunctive provisions of Grace's Plan was made in several national newspapers, magazines, and periodicals in March and April 2009. Instructions for voting and objecting to the Plan were included in that notice. There has been no suggestion that this notice did not provide all required information or enough time for interested parties to make an appearance in

the confirmation proceedings. Finally, following the Plan's February 3, 2014
consummation, Grace published the Plan's Effective Date, the Administrative Claims Bar
Date of May 5, 2014, and basic instructions for filing an administrative claim in the
national editions of the Wall Street Journal, New York Times, and USA Today in late
February 2014. Again, there has been no suggestion that the notice did not include the
required information or provide sufficient time for any interested parties to act.
Accordingly, the foregoing notice was sufficient to satisfy Grace's obligations to
unknown creditors such as Kraft and the Assignor Entities. Therefore, lack of personal
notice of the Grace bankruptcy proceedings to Kraft or the Assignor Entities would not
have prevented discharge of Kraft's Grace RICO Claims under the Plan if under the
Plan's terms and the Bankruptcy Code they otherwise would be discharged.

27. In Kraft's third argument, Kraft argues that claim preclusion does not apply to the Grace
RICO Claims in the Arizona Chevron Action because the claims have never been
litigated against Grace. Kraft Aff. p. 4. He then argues that issue preclusion does not
apply because "[t]he litigation and related judgment entered in this action did not include
Kraft and/or any of his assignors." *Id.* at p. 5.

28. Kraft's arguments regarding res judicata are also inapposite and demonstrate a
misunderstanding of the effect of the discharge and injunctive provisions of Grace's Plan
and the discharge injunction under the Bankruptcy Code.[6] Under 11 U.S.C. §
1141(d)(1)(A), a confirmed plan discharges the debtor from any debt[7] that arose before

---

[6] Kraft's arguments regarding res judicata also reflect a misunderstanding of Grace's argument on res judicata made
in its Enforcement Motion and reply to Kraft's response. Grace argues that the res judicata effect of the *Distribution
Order* precludes Kraft from now collaterally attacking that order through the Arizona Chevron Action. Enf. Mot. ¶
49-51, ECF 33250 Reply ¶ 7.
[7] "Debt" is defined in the Bankruptcy Code as "liability on a claim" and a "claim" is defined broadly to include a
"right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,
matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5), (12). The

the date of such confirmation. Section 1141(d) is structured to capture administrative

expense claims. *In re Benjamin Coal Co.,* 978 F.2d 823, 827 (3d Cir. 1992) ("the

discharge of all existing claims, including administrative claims, upon confirmation of a

Chapter 11 plan is unambiguous both in the Bankruptcy Code and in BCC's own

reorganization plan…"); *Collins v. J&N Rest. Assocs.*, No. 3:15-cv-178(BKS), 2016 U.S.

Dist. LEXIS 39830, at *17 (N.D. N.Y. March 28, 2016); *In re UAL Corp.,* 398 B.R. 243,

247-48 (N.D. Ill. 2008) ("once United's Plan was confirmed, under the plain language of

§ 1141(d)(1)(A) and case law on point, United was discharged from all claims based on

conduct occurring prior to confirmation…"). Thus, based upon the plain language of §

1141(d), confirmation of a plan generally discharges the debtor from any debt that arose

before the date of such confirmation, including administrative expense claims. *In re*

*Benjamin Coal Co.,* 978 F.2d at 827 ("the discharge of all existing claims, including

administrative claims, upon confirmation of a Chapter 11 plan is unambiguous both in the

Bankruptcy Code and in BCC's own reorganization plan…"); *Wright v. Centennial*

*Healthcare Corp.,* 383 B.R. 355, 357 (D. D.C. 2008) ("As a general rule, post-

petition/pre-confirmation claims are discharged as part of bankruptcy reorganization");

*Collins v. J&N Rest. Assocs., Inc. (In re Mendolia)*, Case No. 12-60219, Adv. Pro. No.

14-80002, 2015 Bankr. LEXIS 327, at *22-23 (Bankr. N.D. N.Y. Feb. 3, 2015); *In re St.*

*James Mech., Inc.,* 434 B.R. 54, 56 (Bankr. E.D. N.Y. 2010) ("The only exception to the

discharge granted under section 1141(d)(1)(A) is where a creditor did not receive proper

notice of a debtor's case in a violation of the creditor's due process rights..."); *In re Shin,*

306 B.R. 397, 400 (Bankr. D. D.C. 2004) ("The discharge provisions of §

---

broad definition of claim includes of necessity post-petition obligations incurred by the trustee or debtor-in-
possession. *In re MacDonald,* 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991).

1141(d)(1)(A)…apply to such an administrative claim."). Furthermore, the plain language of Grace's confirmed Plan discharges any administrative expense claims arising pre-confirmation which were not filed by the Administrative Claims Bar Date. Case No. 01-01139 ECF 26368 Plan Article 2, 8. Ultimately, if an administrative expense claim is not timely filed, a discharge under the plan will bar collection of the claim. *In re Shin,* 306 B.R. at 400-01.

29. Both Grace's Plan and section 503(b)(1)(A) of the Bankruptcy Code address the allowance of administrative expenses and include as administrative expenses "the actual, necessary costs and expenses of preserving the estate…" Case No. 01-01139 ECF 26368 Plan Article 1.1(4). Ordinarily, for a claim to qualify as an administrative expense, it must arise from a post-petition transaction with the debtor-in-possession and be beneficial to the debtor-in-possession in the operation of the business. *In re Phila. Newspapers, LLC,* 690 F.3d 161, 172 (3d Cir. 2012). However, the Supreme Court in *Reading Co. v. Brown*, 391 U.S. 471 (1968) has held that "fairness may call for the allowance of post-petition tort claims as administrative expenses if those claims arise from actions related to the preservation of a debtor's estate despite having no discernable benefit to the estate."[8] *In re Phila. Newspapers, LLC,* 690 F.3d 161, 173 (3d Cir. 2012). Thus, claims resulting from injury caused by the continued operation of the business by the debtor-in-possession are classified as administrative expenses notwithstanding the lack of benefit to the estate. *Oil, Chem. & Atomic Workers v. Hanlin Group (In re Hanlin*

---

[8] Section 503(b) replaced § 64(a) of the Bankruptcy Act of 1898. *In re Sierra Pac. Broadcasters,* 185 B.R. 575, 578 n.8 (9th Cir. B.A.P. 1995). The two sections are virtually identical. *Id.* Section 64(a) provides that "to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 64(a) (repealed 1978).

*Group),* 176 B.R. 329, 333 (Bankr. D. N.J. 1995). Based on *Reading,* a variety of post-petition, pre-confirmation claims have been characterized or treated as administrative expenses under the Code's definition, including tort claims, trademark infringement claims, patent infringement claims, breach of contract claims, employment discrimination claims, and even fraud-based civil RICO claims. *See e.g., In re Phila. Newspapers, LLC,* 690 F.3d at 173; *In re Eagle-Picher Industries, Inc.*, 447 F.3d 461, 464 (6th Cir. 2006) (noting that courts have concluded tort, trademark infringement, patent infringement, and breach of contract claims have fallen within the Code's definition of administrative expenses); *Vega v. Rexene Corp.*, No. 94-50733, 1995 U.S. App. LEXIS 41300, at *4-5 (5th Cir. June 20, 1995) (classifying a post-petition, pre-confirmation employment discrimination claim brought under Title VII as an administrative expense claim in the nature of tort); *In re MacDonald,* 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991) (treating a claim for fraud and violations of the RICO statute as an administrative expense in the nature of a post-petition tort claim).

30. Based upon Kraft's reference to the Realia Bankruptcy case number in the Arizona Chevron Complaint, the Arizona Chevron Complaint's reference to Grace receiving property from a bankruptcy case in Arizona, and Realia being one of the Assignor Entities, it appears that Kraft is basing the Grace RICO Claims on the Distribution Order from the Realia Bankruptcy in 2006. Accordingly, to the extent Kraft has RICO claims stemming from circumstances surrounding the Distribution Order against Grace, they would have arisen post-petition and several years pre-confirmation. Kraft does not argue otherwise. Furthermore, they would be based upon an alleged injury committed by Grace as a debtor-in-possession from the continued operation of its business and thus would be

16

considered administrative expense claims. Neither Kraft nor the entity which assigned him the purported Grace RICO Claims filed an administrative claim by the Administrative Claims Bar Date. Kraft does not argue that he or the Assignor Entities did not know about the Grace RICO claims in time to file an administrative expense claim by the Administrative Claims Bar Date. Furthermore, this Court has determined that publication notice of the bankruptcy, confirmation hearings, Plan, and Administrative Claims Bar Date satisfied due process requirements with respect to Kraft and the Assignor Entities. Therefore, since notice was sufficient and neither he nor the Assignor Entities filed a timely administrative expense claim, under the plain language of section 1141(d) and the confirmed Plan and Confirmation Order, Kraft's RICO claims against Grace asserted in the Arizona Chevron Action based upon the Distribution Order have been discharged. *See e.g., Kresmery v. Service Am. Corp.,* 227 B.R. 10, 14 (D. Ct. 1998). Under the terms of the confirmed Plan and Confirmation Order, all administrative expense claims which had not been filed by the Administrative Claims Bar Date were permanently barred and holders of those claims were enjoined from asserting those claims against Grace. Plan Article 2.1.1(b)(2). Kraft's failure to seek to assert the Grace RICO Claims stemming from the Distribution Order as an administrative expense claim prior to the expiration of the Administrative Claims Bar Date prohibits him from pursuing them in the Arizona Chevron Action or any forum against Grace. *See Rexene Corp.*, 1995 U.S. App. LEXIS 41300, at *6-7. Traditional principles of res judicata as Kraft describes in his response to the Enforcement Motion are simply inapposite.

31. Based on the foregoing, it is hereby ORDERED:

a. Kraft must file a pleading no later than seven (7) days from the entry of this order seeking an entry of an order by the Arizona District Court dismissing Grace with prejudice from the Arizona-Chevron Action.

b. Kraft is barred from taking any other action in the Arizona Chevron Action involving or otherwise pertaining to Grace except for filing the pleading seeking Grace's dismissal from the Arizona Chevron Action and any other actions necessary to have Grace dismissed from the Arizona Chevron Action.

c. Within seven (7) days after entry of an order dismissing Grace from the Arizona Chevron Action ("Dismissal Order"), Kraft shall file a notice with this Court attaching a copy of the Dismissal Order.

d. The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this order and any motion for sanctions brought against Kraft.

e. This order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Fed. R. of Bankr. P. 7062, Fed. R. Bankr. P. 9014, or otherwise.

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

18