1  Rune Kraft
     rk@kraft.legal
2  Kraft Legal | United States
3  108 West 13th Street
   Wilmington, Delaware 19801
4    302 408 1000

5

6                    UNITED STATES DISTRICT COURT
7                     FOR THE DISTRICT OF ARIZONA
8

9  Rune Kraft,                          Case No. CV-21-00575-PHX-DJH
10         Plaintiff,
                                        The Honorable Diane J. Humetewa
11 vs.

12 Chevron Corporation, et al.,
                                        **PLAINTIFF'S MOTION TO
13         Defendants.                  ALTER OR AMEND THE
                                        JUDGMENT BASED ON RULE
14                                      59(e)**

15

# TABLE OF CONTENTS

1. INTRODUCTION ……………………………………………..……………..…  1
2. FACTS AND PROCEDURAL BACKGROUND ………..…………….....…..  1
   2.1 Status Quo Prior to the Conspiracy, Sham and Fraudulent Transactions ….  1
   2.2 The Conspiracy, Sham and Fraudulent Transactions …………………….  1
   2.3 The Lawsuit ……………………………………………………………...  2
3. LAW AND LEGAL BACKGROUND …………………...……………..…..  3
   3.1 District Courts May Not Contravene Federal Law …………….…………..  3
   3.2 Constitutional Standing…………………………………………………...  5
   3.3 Statutory Standing ……………………………………………………….  5
4. THE LEGAL STANDARD …………………….……………..……………....  6
5. ARGUMENT ……………..……………...……………………………………  6
   5.1 Federal Legislative Power Is Bestowed Exclusively To Congress…………  6
   5.2 Separation of Powers and Federalism ……………………………………  7
   5.3 Tenth Amendment…………………………………………………….…  8
   5.4 Contracts Clause…………………………………………………………  8
   5.5 Plaintiff Suffered Clear and Certain Prejudice…………………………...  9
      5.5.1 Rule 1…………………………….…………………………......  9
      5.5.2 Rule 12…………………………………………….…………......  11
      5.5.3 Veracity……………………………………………………….  11
      5.5.4 Reading of Complaint…...…………………………………….  12
      5.5.5 *Stare Decisis*…………....………………………………..  13
      5.5.6 Federal Rules of Evidence.……………………...……………  14
6. CONCLUSION ..................................................................................................  17

## 1. INTRODUCTION

This motion is based on FRCP 59(e) and asks the court to vacate or set aside the judgment in its entirety based on several substantive judicial errors. *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445 (1982). The judgment fails to account for dispositive factual matters and controlling decisions of law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *McDowell v. Calderon*, 197 F.3d 1253, 1255 & n.1 (9th Cir. 1999) (*en banc*) (*per curiam*).

There are 10 particular grounds for altering or amending the judgment: (1) Congress is vested with all legislative powers and the judgment lacks congressional authorization; (2) separation of powers and federalism as the court has exercised power that Congress does not possess under the Constitution and, therefore, cannot delegate to other branches of the federal government; (3) the Tenth Amendment; (4) the Contracts Clause; (5) Rule 1; (6) Rule 12; (7) not using and requiring veracity; (8) not administering the correct standard for challenges to the complaint; (9) not employing *stare decisis*; and (10) not enforcing Federal Rules of Evidence.

The adjudication of this action has been unconstitutional, prejudicial, and formed on clear error of law, serially, and the judgment must be vacated in its entirety.

## 2. FACT AND PROCEDURAL BACKGROUND

### 2.1 Status Quo Prior to the Conspiracy, Sham and Fraudulent Transactions

Plaintiff, and companies he operated, perfected a low-cost system for manufacturing concrete and delivering it to customers' construction sites. Plaintiff, using a combination of assets that he owned personally, and assets owned by the companies he operated, had manufacturing plants at 8 locations in California and had a business plan for expanding to 30 additional locations where he expected to quickly obtain a minimum 20% market share as the lowest cost producer in the region. Complaint ¶ 32.

### 2.2 The Conspiracy, Sham and Fraudulent Transactions

Cement is the binding agent in concrete and thus a necessary raw material in the manufacturing process. The California cement market is dominated by the multiple U.S. subsidiaries of three large families of affiliated companies headed by the parent company of Defendant Cemex, Cemex S.A.B. de C.V. ("Cemex"), a Mexican corporation, the parent company

of Defendant Lehigh Hanson, Heidelberg Cement AG, a German corporation, and Taiheiyo Cement Corporation, a Japanese corporation (together, the "cement cartel").

The members of the cement cartel have combined to unreasonably restrain trade in the sale of cement to concrete manufacturers that are unaffiliated with the cartel ("independent concrete producers"). Complaint ¶ 33.

Plaintiff believes that the defendants who committed wrongdoings in this judicial district, described in Section 4.3 of the Complaint, were lured by the cement cartel to take part in a conspiracy to keep plaintiff out of the concrete market in the relevant market (Doc. 1 ¶ 33). Therefore, the wrongful acts committed by the non-cement cartel members in this action are entangled with the Defendant Cemex's and Defendant Lehigh Hanson's operation of the cement cartel. Sections 4.1, 4.3, 5 and 6 of the Complaint.

### 2.3 The Lawsuit

On April 2, 2021, Kraft filed the underlying lawsuit against the defendants "and DOES" seeking civil relief under 18 U.S.C. §§ 1961 et seq., relief under the California Cartwright Act (Sections 16600 et seq. of the California Business & Professions Code) and relief under the California Unfair Practices Act (Section 17000 et seq. of the California Business & Professions Code) based on injuries to his business and property caused by ongoing fraudulent schemes.

At this time, several named defendants have not yet been served with the summons and complaint. Some defendants have filed motions to dismiss. Some defendants have failed to plead or otherwise defend as required by FRCP 12(a)(1).

The court has asserted that plaintiff cannot represent himself in this action because certain corporations have assigned their claims related to this matter to him.

Plaintiff asserts that his use of the court rests on the Constitution, a federal statute, and *stare decisis*. He can use this court to bring claims based on property and rights that he owns. As to the claims assigned to him, those claims are also property and rights he owns. Under the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor, he stands precisely in the shoes of the assignors. On December 10, 2021, the court dismissed the complaint because plaintiff prefers to prosecute the claims himself ("Order").

PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT BASED ON RULE 59(e)
Case No. CV-21-00575-PHX-DJH

## 3. LAW AND LEGAL BACKGROUND

### 3.1 District Courts May Not Contravene Federal Law

The Constitution and laws of the United States are "the supreme Law of the Land." U. S. Const., Art. VI, cl. 2. As to state legislation, such legislation may not contravene federal law. A federal district court in Arizona does not however, have a general right to review and veto state enactments in Delaware, e.g., see 1 Records of the Federal Convention of 1787, pp. 21, 164–168 (M. Farrand ed. 1911); 2 *id.,* at 27–29, 390–392.

The district court sharply departs from these basic principles. It suspends Delaware Code, Title 8 Corporations, which expressly proclaims that Delaware corporations have the requisite power to enter into the assignments with the plaintiff in this action. *See* Delaware Code, Title 8 Corporations, Chapter 1 General Corporation Law, Subchapter II Powers, § 122. Specific powers. 11, 12 and 13.

The express assignment agreements plaintiff has with Realia, Inc., Concreteworks, Inc., Artesia Holdings, Inc., Pacific Equipment Management Company, Inc., Pacific Real Estate Holdings, Inc., North American Service Holdings, Inc., and Kraft Americas Holdings, Inc., all Delaware corporations, are legally binding contracts that this court has no authority to disturb, and the attempt to do so contravenes federal law.

Next, as this is basically an antitrust and RICO action, can antitrust and RICO claims be assigned? In that regard, it is appropriate to initially analyze whether antitrust and RICO claims survive a plaintiff's death, governed by Fed. R. Civ. P. 25(a)(1), which provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." The answer depends on whether antitrust and RICO are considered more penal or remedial in nature. The statutory frameworks contain no express provision regarding survival or abatement of civil claims. In the absence of a specific statutory directive, federal common law governs the survival of a cause of action founded on federal law. *Zatuchni v. Sec'y of Health & Human Servs.*, 516 F.3d 1312, 1329 n.8 (Fed. Cir. 2008). The general rule is that an action for a penalty does not survive the death of the plaintiff. *Schreiber v. Sharpless (Ex parte Schreiber)*, 110 U.S. 76, 80 (1884); *Smith v. Dep't of Human Servs.*, 876 F.2d 832, 834-35 (10th Cir. 1989). To determine whether an action is penal, the court must consider: (1) whether the purpose of the action is to

redress individual wrongs or wrongs to the public; (2) whether recovery runs to the individual or the public; and (3) whether the authorized recovery is wholly disproportionate to the harm suffered. In 2003, the Supreme Court ruled in *PacifiCare Health Sys. Inc. v. Book*, 538 U.S. 401, 406 (2003) that antitrust actions (Clayton Act) and RICO actions (the Clayton Act, 15 U.S.C. 12-27, is the model for RICO), are "remedial in nature" because they provide a remedy for concrete financial loss to business or property. Taking note of that holding, antitrust and RICO claims survive the death of the plaintiff under the rationale that the damages, even though trebled, are primarily remedial in nature.

After survival it is proper to look at the issue of assignability of antitrust and RICO claims. Again, the statutes are silent. The Third Circuit has held that a RICO claim may be assigned if the assignment is express. *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106 (3d Cir. 1993); *see also Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (plaintiff bank directors brought RICO claims which had been assigned to them from the bank). In *Lerman*, the defendant corporation was held to have a valid assignment of the claims of a predecessor corporation. The court noted that the assignment was "unambiguous and all inclusive." *Lerman*, 10 F.3d at 112. The court relied on precedent holding certain Clayton Act claims assignable only by express terms. Because the Clayton Act provision "served as a model for the provision of the RICO statute authorizing private civil actions," the court adopted the rule of assignability applied in those cases. *Lerman*, 10 F.3d at 112. Most of the district courts that have addressed the issue have also concluded that RICO claims are assignable. *Resolution Trust Corp. v. S & K Chevrolet*, 868 F. Supp. 1047, 1054 (C.D. Ill. 1994); *Federal Ins. Co. v. Parello*, 767 F. Supp. 157, 163 (N.D. Ill. 1991); *Nicolls Pointing Coulson, Ltd. v. Transportation Underwriters of La., Inc.*, 777 F. Supp. 493, 494-96 (E.D. La. 1991); *Federal Ins. Co. v. Ayers*, 760 F. Supp. 1118, 1120 (E.D. Pa. 1990); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Secs. Litig.*, 636 F. Supp. 1138, 1152-56 (C.D. Cal. 1986). Further, the assignment of a RICO claim carries with it the assignor's rights, interests, and limitations in that claim to the assignee. *See Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000) (holding that a plaintiff who was precluded from bringing his own RICO claim was not precluded from bringing a RICO claim that had been assigned to him from another plaintiff who was not precluded).

### 3.2 Constitutional Standing

The two words "Cases" and "Controversies" in Article III, Section 2, Clause 1 confine "the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). "Standing is an essential and unchanging part of the case-or controversy requirement" and is therefore a prerequisite to our jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "gist of the question of standing" is whether the plaintiff has a sufficiently "personal stake in the outcome of the controversy" to ensure that the parties will be truly adverse and their legal presentations sharpened. *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) at 517. Also see *Baker v. Carr*, 369 U.S. 186, 204 (1962). To establish Article III standing, a plaintiff must demonstrate "that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Id.* (citing *Lujan*, 504 U.S. at 560-61). At this very preliminary stage of the litigation, the plaintiff may rely on the allegations in the complaint to meet this burden. Plaintiff easily meets this test. First, he alleges a concrete and actual injury. Second he alleges specifically how the injury is traceable to defendants' challenged actions. Finally, because the requested relief will redress the injury, the third element is also met. Plaintiff has alleged harms to proprietary interests traceable to the defendants acts and practices. The necessary connection can be drawn logically: defendants' challenged actions injured plaintiff's business and property. The court should have no difficulty concluding that the plaintiff's injuries would be redressed if the plaintiff could obtain the relief asked for. Plaintiff has constitutional standing.

### 3.3 Statutory Standing

Under RICO, "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court" for civil damages. 18 U.S.C. § 1964(c). Pursuant to the Cartwright Act "anyone who is injured in his or her business or property" can bring an action. California Bus. & Prof. Code § 16750(a). Similarly with the Unfair Practices Act, a private plaintiff may obtain treble damages and injunctive relief. California Bus. & Prof. Code §§ 17070, 17082. Thus, pursuant to all three statutory frameworks that plaintiff is applying in this action he has standing.

5

PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT BASED ON RULE 59(e)
Case No. CV-21-00575-PHX-DJH

## 4. THE LEGAL STANDARD

Rule 59(e) provides that "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FRCP 59(e).

A party can ask the court to vacate or set aside the judgment in its entirety, or request modification or correction of only some aspects of the judgment based on substantive judicial error. *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445 (1982) [1]

A party may seek post-judgment relief under FRCP 59(e) regardless of the stage of litigation at which the judgment was entered. *Arthur v. King*, 500 F.3d 1335, 1342 (11th Cir. 2007) (*per curiam*); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir. 1995); *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 400 (4th Cir. 1998); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *Rivera v. State Ins. Fund Corp.*, 488 F. Supp. 2d 72, 76-78 (D.P.R. 2007)); *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

FRCP 59(e) serves the interest of judicial economy by forestalling the burden, time, and expense of an unnecessary appeal. *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008); *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

The district court's power to alter or amend a judgment includes the power to vacate or set aside the judgment, so long as the moving party demonstrates that the judgment rests on a substantive error or mistake. *Ortiz v. Gaston Cty. Dyeing Mach. Co.*, 277 F.3d 594, 597 n.1 (1st Cir. 2002).

## 5. ARGUMENT

### 5.1 Federal Legislative Power Is Bestowed Exclusively To Congress

Pursuant to Article I, Section 1 of the United States Constitution, Congress is vested with all legislative powers. "Congress is not permitted to abdicate or to transfer to others the essential

---

[1] Rule 59(e) was added to the Federal Rules of Civil Procedure in 1946. Its draftsmen had a clear and narrow aim. According to the accompanying Advisory Committee Report, the Rule was adopted to "mak[e] clear that the district court possesses the power" to rectify its own mistakes in the period immediately following the entry of judgment. Notes of Advisory Committee on 1946 Amendment to Rules, 28 U.S.C. p. 491; 5 F.R.D. 433, 476 (1946). *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445 (1982) at Footnote 11.

legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529–30 (1935). The judicial branch can only exercise its own discrete powers reserved by Article III of the United States Constitution and such power that Congress clearly authorizes through statutory command. Accordingly, we must look at the statute. 28 U.S.C. § 1654 declares that "in all the courts of the United States, the parties may plead and conduct their own cases personally or by counsel". In this action plaintiff is pleading and conducting his own case personally. The court has arrogated to itself unconstitutional and unconstrained rulemaking authority without a statutory directive and its adjudication is unsupported by an explicit statutory directive within federal law. Thus, the court's actions lack the requisite congressional direction. Congress did not articulate clear or sufficient instructions in 28 U.S.C. § 1654 directing the judicial branch to implement this public policy scheme contrarily.

The Order's reliance on the precatory statement of purpose in the assignments from the Delaware corporations to plaintiff is not a clear directive, and the court cannot rely on it to impose an intrusive and sweeping counsel mandate. Further, any broad and intrusive counsel mandate cannot be sustained without clear and meaningful legislative guidance, especially given the important separation-of-powers and federalism concerns implicated. The counsel mandate is unconstitutional because Congress did not articulate a clear principle by legislative act that directs the Judicial to take sweeping action that infringes on state and individual rights. Here, the Order cuts deeply into the state's sphere of power without articulating the underlying reasons or providing a justification beyond a superficial, unsupported, and pretextual reference to efficiency and economy in federal contracts. Without *explicit* congressional authorization, the Order cannot survive constitutional scrutiny.

### 5.2 Separation of Powers and Federalism

Pursuant to Article I, Section 1 of the United States Constitution, Congress is vested with all legislative powers, but Congress must act pursuant to the enumerated powers granted to it by Article I. Pursuant to Article I, Section 8 of the United States Constitution, Congress has authority "to make all Laws which shall be necessary and proper for carrying into Execution" its general powers ("the Necessary and Proper Clause"). The Necessary and Proper Clause does not "license the exercise of any 'great substantive and independent power[s]' beyond those specifically

enumerated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 559 (2012) (citation omitted). Pursuant to the Tenth Amendment of the United States Constitution, "the powers not delegated by the Constitution to the United States, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Nothing in the Constitution authorizes the judicial branch to void contracts between corporations and individuals because contract law is left to the states under the Tenth Amendment. It is not a "proper" exercise of Congress's authority because the exercise falls outside the scope of an Article I enumerated power. The court, through the Order, has exercised power that Congress does not possess under the Constitution and, therefore, cannot delegate to other branches of the federal government. If Congress intended contracts between corporations and individuals to be void as the court claims, the exercise exceeds Congress's authority, and thus the Order must be disqualified.

### 5.3 Tenth Amendment

Pursuant to the Tenth Amendment of the United States Constitution, "the powers not delegated by the Constitution to the United States, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The court, through the Order, has exercised power far beyond what was delegated to the federal government by Constitutional mandate or congressional action. Neither Article III of the U.S. Constitution nor any act of Congress authorizes the judicial branch to void contracts between corporations and individuals because contract law is left to the states under the Tenth Amendment. The Tenth Amendment explicitly preserves the "residuary and inviolable sovereignty," of the states. *Printz v. United States*, 521 U.S. 898, 918–19 (1997) (quoting The Federalist No. 39, at 245 (J. Madison)). By interfering with the traditional balance of power between the states and the federal government and by acting pursuant to ultra vires federal action, the court violated this "inviolable sovereignty," and thus, the Tenth Amendment. Therefore, the Order was adopted pursuant to an unconstitutional exercise of authority by the court and must be invalidated.

### 5.4 The Contracts Clause

Pursuant to Article I, Section 10 of the United States Constitution, "No State shall . . pass . . . any law impairing the obligation of contracts." Thus, contracts are to be treated as volitional,

binding agreements - commercial certainties on which we can rely on the hopes that they provide equal considerations for every citizen to follow. Notably, while this provision is a direct prohibition on the enactment of state laws that have a retroactive effect to impair the obligations and rights arising under contracts entered into prior to the enactment of such state laws, no mention is made of the federal government. Consequently, Congress may pass any laws impairing the obligation of contracts, provided, however, that it shall not thereby take property without due process of law in violation of the Fifth Amendment. The Fifth Amendment is then, the only apparent limitation on the power of Congress to enact laws impairing the obligation of contracts. Neither the State of Delaware nor Congress has passed any laws providing the court with the authority to impair the contracts plaintiff has with the Delaware corporations. Accordingly, the Order is contrary to law.

### 5.5 Plaintiff Suffered Clear and Certain Prejudice

Article III, Section 2, Clause 1 of the United States Constitution gives the Judicial power arising under "this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority". The Order seeks to overtake an area of traditional state authority. Such action challenges traditional notions of federalism, as discussed above. "The independent power of the States [] serves as a check on the power of the Federal Government: by denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power." *NFIB*, 567 U.S. at 536 (quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)). This is especially true, since "a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). And the Order is unlawful because it does not arise under "this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority", serially.

#### 5.5.1 Rule 1

On July 1, 2021, plaintiff asked for a 30-day extension to serve the summons and complaint on all the defendants due to the pandemic. He requested that the court grant the motion based

PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT BASED ON RULE 59(e)
Case No. CV-21-00575-PHX-DJH

FRCP 4(m), which declares: "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

It was absurd for the court to discern that plaintiff did not show good cause when he acted to minimize personal interactions in the service of the summons and complaint on the California based defendants. Plaintiff's conduct was consistent with public policy generally throughout the United States, and it was specifically consistent with the public policy in California, that had an even stricter pandemic policy than the federal requirements. To further illustrate that the conduct of the court was in bad faith, while plaintiff requested a 30-day extension to finish the service of process, the action was delayed from August 13th to December 10th in the pursuit to find true facts and a valid legal basis to prohibit plaintiff from making court filings. As shown herein, the court never could, even having spent 119 days on it, and elected to defraud plaintiff of his constitutional and federal statutory rights. The court chose to be dishonest with plaintiff. To find cover, the court schemed with the defendants' attorneys. For example, whilst the court ordered that "Plaintiff shall not file any filings while this matter is stayed, other than as ordered herein" (Doc. 60 at 2), the defendants were allowed to continue to make court filings. Docs. 62, 63, 65, 66, 71, 72, 74, 75, 76, 77, 78, 79, 80, 81, 85, 86, 87 and 88. The court even solicited the defendants' attorneys to come up with some valid legal basis to forbid plaintiff from making court filings, after the court had tried for 63 days to come up with something, Doc. 89, which they also were incapable of as they callously entered into the records of the court lies, after lies, after lies, Doc. 93, as shown in Doc. 94. The court chose fraud over due process.

As the Supreme Court has stated: "[t]he Federal Rules of Civil Procedure are to be construed to secure the just, speedy, and inexpensive determination of every action," See *Bankers Trust Co v Mallis*, 435 US 381, 386–87 (1978), quoting FRCP 1. See also *Nelson v Adams USA, Inc*, 529 US 460, 465 (2000). The court had an obligation to work with plaintiff who in good faith and diligently tried to balance his civic pandemic duties with Federal Rules of Civil Procedure. Construing, administering, and employing the rules in this manner guaranty a wrongful, slow, and expensive determination of this action. Such conduct by the district court is not discretionary demonstrating that the final judgement is dead wrong.

10
PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT BASED ON RULE 59(e)
Case No. CV-21-00575-PHX-DJH

### 5.5.2 Rule 12

Rule 12(a)(1) provides a timeline for pleading or otherwise defending after the service of summons. Some of the defendants failed to plead or otherwise defend. Thus, plaintiff was entitled to have the clerk enter defaults pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Plaintiff could then have moved for entry of default judgments in accordance with the provisions of Rule 55(b)(2). The district court abused its discretion when it did not implement Rule 12.

### 5.5.3 Veracity

The Constitution states only one command twice. Both the Fifth Amendment and the Fourteenth Amendment (collectively "Due Process Clause"), using the same 11 words, declare that no one shall be "deprived of life, liberty or property without due process of law."

These 11 words have as their central promise an assurance that this federal court must operate within the law and provide fair procedures.

Here the district court lied about the Complaint, followed by applying law to the lie in its pursuit of prohibiting plaintiff from making court filings to remedy injuries to his business and property. Docs. 60 and 89. Then see Doc. 61 at 5, Doc. 84 at 7 and 8, and Doc. 90 at 2. As evidenced by the district court's conduct leading up to (Docs. 16 and 17), during the writing (Doc. 60), and after the attack on plaintiff's rights (Doc. 95), it exhibited a single-minded devotion to obstruct justice through deceptions, obfuscations, lies and false statements an official proceeding that, on August 1, 2021, was designed to move forward with all the defendants, opening with discovery and ending in a jury trial.

And even worse, when the district court solicited the defendants' attorneys for help (Doc. 89) and they responded by producing more lies about case law citations - the judge's, the defendants', and plaintiff's - rather than admonish the defendants' attorneys, the district court rewarded them.

Pursuant to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)), *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), *American Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932), *Philip Morris U.S.A. v. Williams*, 549 U.S. 346 (2007), *Fiore v. White*, 531 U.S. 225

(2001), *Thompson v. Louisville*, 362 U.S. 199, 206 (1961), *Garner v. Louisiana*, 368 U.S. 157 (1961), *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959), *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) and *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) judges must be honest, truthful, and faithful to the laws. Misconduct of this magnitude, committed with such zeal, disprove any conditions of the Article III judge being qualified to hold her office that would reasonably assure the safety of the community or by which the Article III judge could be trusted to abide.

Pointing to the Due Process Clause and controlling decisions, *stare decisis*, the complaint, which contains all the legally admissible evidence at this stage of the litigation, shows that on the plaintiff's side in this action, since the inception of the case, there has always been only one party, an individual. Portraying the complaint to show anything other than that deprives plaintiff of due process of law. Lying about case law authorities, methodically and constantly over a span of 119 days, even including, encouraging, and rewarding plaintiff's opponents when they falsely cited and described the court's, their own and plaintiff's case law citations, reveal malice. Such conduct by the district court is not discretionary demonstrating that the final judgement is dead wrong.

### 5.5.4 Reading of Complaint.

The district court not only did not accept as true the plain words of the Complaint, but it also lied about the plain words of the Complaint, as detailed above.

*Stare decisis* prevents the district court from imposing arbitrary obstacles to attempts by injured persons to file claims asserting antitrust and RICO violations. At this time, the court must accept as true all factual allegations in the Complaint and draw all reasonable inferences from those allegations, construing the Complaint in the light most favorable to plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

But that is not what the court did.

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). And "RICO is to be read broadly" and " 'liberally construed to effectuate its remedial purposes,' " *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 497–498 (1985) (quoting Pub. L. 91–452, § 904(a), 84 Stat. 947).

If more details are needed about the assignments, plaintiff can cure that by amending the Complaint. FRCP 15(a); *see also Golden Hour Data Sys. v. Health Servs. Integration,* No. C 06-7477 SI, 2008 U.S. Dist. LEXIS 75495, *2 (N.D. Cal. July 1, 2008) (granting leave to amend holding that "under Federal Rule of Civil Procedure 15, leave to amend shall be freely given when justice so requires."); *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) ("We have stated that this policy is to be applied with extreme liberality").

The district court abused its discretion when it did not administer the correct standard for challenging the Complaint. Such conduct by the judge is not discretionary demonstrating that the final judgement is dead wrong.

### 5.5.5 *Stare Decisis*

*Stare decisis* is about stability in the law and according to the Supreme Court it "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015)

To the point, the Supreme Court has noted that "[i]n the federal courts, the right of self-representation has been protected by statute since the beginnings of our Nation. Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the First Congress and signed by President Washington one day before the Sixth Amendment was proposed, provided that 'in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 813 (1975).

The U.S. Judiciary Act, the Code of Conduct for United States Judges, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence and the Federal Rules of Appellate Procedure address the rights of the self-represented litigant in several places. And the issue of the legal rights of assignors and assignees, have been addressed by the Supreme Court several times, unambiguously. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 765–66 (2000) is based on the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 465–67 (1962) is about an individual, Lou Poller, who was the plaintiff derived from being and assignee of the Midwest Broadcasting Company. The Supreme Court expressed

no concerns with this premise. The case affirms the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. In *Automatic Radio Mfg. Co. v. Hazeltine Rsch., Inc.*, 339 U.S. 827, 829–30, (1950), *overruled in part by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), Hazeltine Research, Inc., an Illinois corporation, was an assignee of Hazeltine Corporation, a Delaware corporation. In the role of being an assignee, Hazeltine Research, Inc. sued, the assignee became the plaintiff. The case affirms the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. In *Hubbard v. Tod*, 171 U.S. 474, 494 (1898), the Union Loan & Trust Company, an Iowa corporation, which engaged in carrying on a loan and trust business, made a general assignment of all its property and assets to E. H. Hubbard, of Sioux City, Iowa. As an assignee of the corporation, E.H. Hubbard filed claims against the members of the banking firm of J. Kennedy Tod & Co., of New York. "Any assignee, as aforesaid, shall have as full power and authority to dispose of all estate, real and personal, assigned, as the debtor had at the time of the assignment, and to sue for and recover, in the name of such assignee, everything belonging or appertaining to said estate, and generally do whatsoever the debtor might have done in the premises." The Supreme Court expressed no concerns with this premise. The case affirms the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. In *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 528–29 (1995), an assignee, an insurer with subrogated rights, sued a vessel owner. The Supreme Court expressed no concerns with this premise. The case affirms the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. In *Musick, Peeler & Garrett v. Emps. Ins. of Wausau*, 508 U.S. 286, 288 (1993), an assignee, an insurer with subrogated rights, sued certain attorneys and accountant. The Supreme Court expressed no concerns with this premise. The case affirms the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor.

### 5.5.6 Federal Rules of Evidence

To date, this action has been adjudicated based on what is outside the four corners of the complaint, namely other lawsuits that plaintiff is currently litigating. Both the defendants and the court have cited other cases and sought to have those cases determine the outcome of this action. Just common sense would dictate that this would be a gross miscarriage of justice.

1     **First**, it is perverse to adjudicate the complaint based on what is not in the complaint, and it obviously violates *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), commonly referred to as ***Twiqbal***.

    **Second**, those other controversies are ongoing because the plaintiff in this action, who is a party in those other actions, **disputes the facts** that have made their way into public records. *Lee v. City of Los Angeles* (9th Cir.2001) 250 F.3d 668, 689 ("But the court did more than take judicial notice of *undisputed* matters of public record. The court took judicial notice of *disputed* facts stated in public records.")

    **Third**, **Fed. R. Evid. 201** "governs judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "Legislative facts" are "those which have relevance to legal reasoning," such as "the formulation of a legal principle or ruling by a judge or court." Fed. R. Evid. 201 (note to subdivision (a) for 1972 proposed rules); *see* Fed. R. Evid. 201(a). Fed. R. Evid. 201 does not provide for judicial notice of legal principles or reasoning. Nor does Fed. R. Evid. 201 allow for judicial notice of how defendants believe public records should be interpreted. Thus, while a court may take judicial notice of the existence of documents, the court cannot take judicial notice of the defendants' "opinion of how a matter of public record should be interpreted." *United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964 (E.D. Cal. 2004).

    **Fourth**, the defendants have sought to take judicial notice of the contents of proceedings held in other courts for the sole purpose of attempting to smear plaintiff's good name. The defendants, and the court, have cited these documents as if they somehow constitute admissible evidence before this court. In the Ninth Circuit, it is well established that "[a]s a general rule, **a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it**." *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *accord, Wyatt v. Terhune*, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003). Defendants and the court have sought an end-run around the rules of evidence. But Rule 201 is not a loophole in the proper evidentiary procedure. The contents of the incomplete contents of proceedings cited by defendants and the court are not "adjudicative facts" properly subject to judicial notice under any circumstance.

**Fifth**, defendants and the court cite to the contents of these incomplete contents in an effort to rebut the plaintiff's properly submitted facts, contained in the complaint. Instead of citing to the complaint to examine the facts, defendants, and the court attempt to introduce documents at other courts regarding separate and distinct law, with separate and distinct defendants. Defendants' and the court's sole purpose in attempting to introduce these incomplete contents is to cite them for the truth of the allegations asserted therein – **black letter hearsay**. Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible absent an applicable exception. Fed. R. Evid., R. 801. No possible exception to the hearsay rule applies in the instant case.

**Sixth**, assuming factual findings had taken place in other courts: "**Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice**." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n. 14 (9th Cir. 2005). "While the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents (the underlying arguments made by the parties, disputed facts, and conclusions of applicable facts or law) are not." *Southern Cal. Edison*, 300 F.Supp. 2d at 974.

**Seventh**, under **Federal Rule of Evidence 401**, evidence is deemed relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Accordingly, "only facts having rational probative value are admissible," *i.e.*, only where it is "[e]vidence which has any tendency in reason to prove any material fact[.]" *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973). The requirement of materiality is unqualified—the proposed evidence must go to "a matter properly provable in the case" and must be "of consequence in the determination of the action." Fed. R. Evid. 401 advisory committee's notes to 1972 Proposed Rules. The purported court records are not probative of any fact of consequence in determining this action and it is therefore both inappropriate and unnecessary for the defendants and the court to notice them.

**Eighth**, those other cases fall afoul of **Federal Rule of Evidence 403** on the grounds of undue prejudice. *See, e.g., Keyes v. Coley*, No. 09-1297, 2011 U.S. Dist. LEXIS 59625, *8-9 (E.D.

Cal. June 2, 2011); *Cooper v. Redding*, No. 8:15CV441, 2017 U.S. Dist. LEXIS 10942, *2 (D. Neb. Jan. 26, 2017). Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See, e.g.,Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC,* 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015); *United States v. Shields,* 2016 U.S. App. LEXIS, at *4 (9th Cir. Dec. 21, 2016) (quoting *United States v. Joetzki,* 952 F.2d 1090, 1094 (9th Cir. 1991)); *see also United States v. Henrikson,* 2015 U.S. Dist. LEXIS 170829, *9-11 (E.D. Wash. Dec. 22, 2015) (citing *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013)) There can be no question that the defendants' and the court's freewheeling labeling of plaintiff as "vexatious" understandably provoke the kind of strong emotions that can overwhelm rational assessment of the actual law and facts at issue. That danger is particularly pronounced given the existing atmosphere of prejudice against individuals, who, like plaintiff, is not a member of the local communities. Under the law, the calamity of the term "vexatious" could not in any way justify stealing plaintiff's property and injuring his business, but the facts proffered by defendants raise an unacceptable risk of just such a response. They thus fail the test of relevance established by the Rule of Evidence under Ninth Circuit law. *See, e.g., United States v. Gonzalez-Flores,* 418 F.3d 1093, 1098-99 (9th Cir. 2005) (evidence presenting even a "modest likelihood of unfair prejudice" is "high enough to outweigh the . . . probative value" of marginally relevant evidence); *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."). Accordingly, these facts are not properly the subject of judicial notice.

The district court abused its discretion when it did not enforce Federal Rules of Evidence.

**6. CONCLUSION**

The adjudication of this action has been unconstitutional, prejudicial, and formed on clear error of law, serially, and the judgment must be vacated in its entirety.

17

PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT BASED ON RULE 59(e)
Case No. CV-21-00575-PHX-DJH

Respectfully submitted on this 21st day of December 2021.

_____

Plaintiff