example, since an accelerated recovery time is a benefit, it would need to be factored into a determination of cost-effectiveness.

**Results of Response Actions:** This criterion would consider the results or anticipated results of CERCLA response actions underway or planned in OU3 after selection of the final remedy by EPA. Evaluation of this criterion requires assessment of response actions at an adequate level of detail in order to make projections as to their effects on natural resources and services. For restoration alternatives within OU3, this criterion will include consideration of:

- What may be necessary in the way of restoration of resources and services in light of the ongoing and planned response actions.
- The degree of consistency between a restoration action and the response action(s).

**Adverse Environmental Impacts:** This criterion weighs whether, and to what degree, a restoration action will result in adverse human or physical environmental impacts. Specifically, NRDP will evaluate significant adverse impacts that could arise from the restoration action, short term or long term, direct or indirect, including those that involve resources that are not the focus of the project. To do so, the dynamics of a restoration action and how that action will interact with the environment must be understood.

**Recovery Period and Potential for Natural Recovery:** This criterion evaluates the merits of a restoration action in light of whether the resource is able to recover naturally (i.e., without human intervention) and, if a resource can recover naturally, how long that will take. Given that the final response action at OU3 has not been determined, the NRDP will consider the recovery period following response actions to evaluate potential restoration projects in OU3. (The term "recovery period" refers to a return to "baseline," as both of those terms are defined in 43 C.F.R. 11.14.)

**Human Health and Safety:** This criterion evaluates the potential for a restoration action to have adverse effects on human health and safety. Such a review will be undertaken not only to judge a particular action but also to determine if protective measures should be added to the restoration action to ensure safety.

**Federal, State, and Tribal Policies, Rules and Laws:** This criterion considers the degree to which a restoration action is consistent with applicable policies of the State of Montana and applicable policies of the federal government and Tribes (to the extent the State is aware of those policies and believes them to be applicable and meritorious). In addition, a restoration action must be implemented in compliance with applicable laws and rules.

**Policy Criteria**
In addition to the above legal criteria, NRDP applies the following policy criteria when considering prospective restoration projects.

> **Normal Government Function:** This criterion evaluates whether a restoration action involves activities for which a governmental agency would normally be responsible or that would receive funding in the normal course of events and would be implemented if

recovered natural resource damages were not available. Settlement funds may be used to augment funds available to government agencies, if such cost sharing would result in the implementation of a restoration action that would not otherwise occur through normal government function. Based strictly on this criterion, a project involving activities that would fall within normal government responsibilities may be ranked lower than a restoration action that does not fall within this category.

**Price:** NRDP will evaluate whether the land, easements, water rights, or other property interests proposed to be acquired are being offered for sale at or below fair market value. Consideration of this criterion will likely require NRDP to conduct its own appraisal of the property. If the appraisal process for an acquisition was not subject to initial State review and approval, NRDP will, at a minimum, conduct a review appraisal and may conduct a full appraisal.

**Location:** Restoration actions are generally geographically restricted. In this case, the State has agreed to prioritize restoration actions within Lincoln County (in which OU3 is located), subject to NRDP's required administrative decision-making process.

**Environmental Review**
An environmental review of the implementation of the restoration plan is also required to evaluate impacts of proposed State action on the physical and human environment pursuant to the requirements of the Montana Environmental Policy Act, §§ 75-1-101, MCA, *et seq.* (MEPA). As part of its analysis of impacts to human health and safety, NRDP will determine if protective measures should be added to the restoration plan alternatives to ensure safety.

**Public Comment**
Upon a full evaluation of the information collected through the above process and an evaluation of the above criteria, including a comparative analysis, NRDP will identify a preferred alternative and put the draft restoration plan out for public comment. NRDP will consider all public comment before making a recommendation to the Governor for the final restoration plan. 42 U.S.C. § 9611 and § 75-10-713, MCA.

## IV.    RESOURCES

Baig, M.N. 1992. Natural revegetation of coal mine spoils in the Rocky Mountains of Alberta and its significance for species selection in land restoration. *Mountain Res. Develop.* 12(3):285-300.

Dumroese, R.K., N. Balloffet, J.W. Crockett, J. A. Stanturf, and L.E. Nave. 2019. A national approach to leverage the benefits of tree planting on public lands. *New Forests*, 50(1), 1–9.

MWH. 2016. Remedial investigation report, operable unit 3 study area: Libby asbestos superfund site, Libby, Montana. Final report - Revision 1. Prepared for W.R. Grace &

Co.-Conn and U.S. Environmental Protection Agency, Region 8, Denver, CO. MWH Americas, Inc., Denver, CO. November. 1,934 pp.

NRDP (State of Montana Natural Resource Damage Program). 2019. East Helena ASARCO Smelter Final Restoration Plan and Environmental Assessment Checklist.

Sheoran, V., A.S. Sheoran, and P. Poonia. 2010. Soil reclamation of abandoned mine land by revegetation: A review. *Int. J. Soil Sed. Water.* 3(2):Article 13.

USDA. 1996. Riparian areas environmental uniqueness, function, and values. RCA Issue Brief #11. Available at: https://www.nrcs.usda.gov/wps/portal/nrcs/detail/national/technical/?cid=nrcs143_01419 9. U.S. Department of Agriculture, Natural Resources Conservation Service. August.

USDA. 2000. Alexander Forest health project environmental assessment, Kootenai National Forest - Libby Ranger District, Lincoln County, Montana. U.S. Department of Agriculture Forest Service, Libby, MT. May. 151 pp.

USEPA. 2013. Baseline ecological risk assessment for non-asbestos contaminants. Operable unit 3, Libby asbestos superfund site, Libby, Montana. Final. Prepared for U.S. Environmental Protection Agency, Region 8, Denver, CO. CDM Federal Programs Corporation, Denver, CO, and SRC, Inc., Denver, CO. April.

USEPA. 2014. Site-wide baseline ecological risk assessment, Libby asbestos superfund site, Libby, Montana. Prepared for U.S. Environmental Protection Agency, Region 8. SRC, Inc., and CDM Federal Programs Corporation. December.

Wohl, E., S.N. Lane, and A.C. Wilcox. 2015. The science and practice of river restoration. *Water Resources Research*, 51(8), 5974–5997.

W. R. Grace & Co. et al. 2019. Chapter 11, Case No. 01-01139 (AMC) (Jointly administered). Exhibit C. Declaration of Keith N. Cole in reorganized debtor's request for partial allowance and partial disallowance of the claim by the Montana Dept. of Env. Quality ("MDEQ") for environmental remediation at Operable Unit 3 of the Libby asbestos Superfund site prepetition claim (substantive objection). U.S. Bankruptcy Court for the District of Delaware. August 26. 100 pp.

Yochum, S. 2018. Guidance for Stream Restoration. 112.

Exhibit F – State Wiring Instructions

Date:   August 17, 2022

Re: Wiring instructions to send wires to the State of Montana:

| | |
|---|---|
| Bank Name: | US Bank, NA |
| Bank ABA # (routing): | 092900383 |
| Bank Swift (SIC) Code: | USBKUS44IMT |
| Bank Address: | 302 N. Last Chance Gulch<br>Helena, MT  59601 |
| Account Name: | State of Montana |
| Account Number: | 156041200221 |
| Federal ID Number: | 81-0302402 |
| State's Dunn #: | 096489542 |
| Third Party Information: | Business Unit of Receiving Agency (41100), Name of Receiving Agency (DOJ-NRDP), Name of Sender (W.R. Grace), Other information pertinent to the Receiving Agency. (Libby Asbestos Superfund Site OU3 NRD Settlement Agreement). |

NOTE:  The OBI field is an informational field available on a fed wire.  There are generally 75 to 100 spaces available.

NOTE:  Please utilize these wiring instructions only when a wire is necessary because the payment is time sensitive, or for a large amount of money.

Exhibit G – MDEQ 2008 Order and MDEQ 2008 Stipulation

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Re: Docket No. 18931 & 19086 |
| | ) | July 21, 2008 Agenda # 5 |

## ORDER AUTHORIZING STIPULATION RESOLVING CLAIMS OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY

Upon consideration of the *Motion of Debtors for an Order Approving Stipulation With the Montana Department of Environmental Quality* (the "Motion"); and due and proper notice of the Motion having been given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors,[2] their estates and creditors, it is hereby

ORDERED that the Motion is granted; and it is further

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or the Stipulation.

1

DOCS_DE:138118.1

ORDERED that the Debtors are authorized to enter into the Stipulation; and it is further

ORDERED that the Debtors are authorized to perform their respective obligations under the Stipulation; and it is further

ORDERED that (i) MDEQ Proof of Claim No. 18496 shall be allowed as a general unsecured pre-petition claims in the amount of $5,167,000 and the remaining portion of Claim No. 18496 shall be resolved as provided in the Stipulation; and (ii) MDEQ Claim No. 15296 shall be disallowed and expunged; and it is further

ORDERED that the Debtors are authorized to take whatever other actions may be necessary to consummate the transactions contemplated by the Stipulation; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order; and it is further

ORDERED that this Order is effective immediately upon its entry.

Dated: July 21, 2008

*Judith K. Fitzgerald*

Honorable Judith K. Fitzgerald
U. S. Bankruptcy Judge

DOCS_DE:138118.1

## EXHIBIT A

STIPULATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                          )
                                                )
W. R. GRACE & CO., *et al.*[1]                  )          Chapter 11
                                                )
              Debtors.                          )          Case No. 01-01139 (JKF)
                                                )          (Jointly Administered)

STIPULATION RESOLVING CLAIMS OF
MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY

This Stipulation is entered into this __20__th day of May 2008, between the above-
captioned debtors (collectively, the "Debtors") and the State of Montana Department of
Environmental Quality ("MDEQ").

WHEREAS, on April 2, 2001 the Debtors commenced their respective reorganization
cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace &
Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc.
(f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex
Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five
Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a
Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester
New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace
H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn
International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated,
Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace
Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square
Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc.
(f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe
Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA,
Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc.,
Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West
Coal Company, H-G Coal Company.

K&E 12792947.1

WHEREAS, on April 22, 2002 this Court issued its Bar Date Order which established March 31, 2003 as the Bar Date for the filing of certain pre-petition (a) non-asbestos, (b) asbestos property damage, and (c) medical monitoring claims.

WHEREAS, MDEQ timely filed Proof of Claim No. 6100 against the Debtors with respect to the Libby Asbestos Site (or "Libby Site," as defined in Paragraph 1.a. herein) in Libby, MT.

WHEREAS, on May 20, 2003 MDEQ filed three virtually identical amended Proofs of Claim against the Debtors with respect to the Libby Site, described as follows:

| Claim No. | Amount | Priority | Basis |
|-----------|--------|----------|-------|
| 15296 | $8,510,022.16 | Unsecured, Non-Priority | Clean-Up Costs |
| 15297 | $8,510,022.16 | Unsecured, Non-Priority | Clean-Up Costs |
| 15298 | $8,510,022.16 | Unsecured, Non-Priority | Clean-Up Costs |

WHEREAS, pursuant to an Order entered on May 24, 2004 [Docket No. 5646] this Court expunged Proof of Claim No. 6100 as duplicated and superseded by Proofs of Claim Nos. 15296, 15297, and 15298.

WHEREAS, pursuant to an Order entered on April 17, 2007 [Docket No. 15218] this Court approved a stipulation between Debtors and MDEQ resolving certain claims. Specifically, claim numbers 15297 and 15298 were disallowed and expunged and claim number 15296 remained in the claims register as outlined in the stipulation attached to the order as Exhibit 1. The terms of the order and stipulation [Docket No. 15218] are incorporated herein.

WHEREAS, on November 14, 2007 MDEQ filed an amended Proof of Claim ("MDEQ's Claim") against the Debtors with respect to the Libby Site, described as follows:

2

| Claim No. | Amount | Priority | Basis |
|-----------|--------|----------|-------|
| 18496 | $55,010,022.16 | Unsecured, Non-Priority | Clean-Up Costs |

WHEREAS, the United States on behalf of the Environmental Protection Agency ("EPA") and Debtors have proposed a settlement of EPA's claims at the Site that would, among other things, allocate $11 million and the earnings on that amount towards operation and maintenance expenses at the Site, which covers some of the costs set forth in MDEQ's Proof of Claim.

WHEREAS, on January 13, 2005 the Debtors filed an Amended Joint Plan of Reorganization under which allowed general unsecured claims shall be paid in full, 85% in cash and 15% in stock of the Reorganized Debtors (the "Proposed Plan");

WHEREAS, the Debtors and MDEQ have agreed to settle MDEQ's Claim, with the exception of Operable Unit 3 as described below, on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the terms and conditions contained herein, the Debtors and MDEQ hereby stipulate and agree as follows:

1.    Whenever the terms listed below are used in this Stipulation, the following definitions shall apply:

a.    "Libby Asbestos Site" or "Libby Site" shall mean the Zonolite Mine and all areas (including any structure, soil, air, water, sediment, or receptor) in and near Lincoln County, Montana, that have been contaminated by natural or human caused migration of hazardous substances and/or pollutants or contaminants from the Zonolite Mine. For purposes of this Stipulation, the Libby Site shall not include Operable Unit 3.

b.    "Operable Unit 3" shall mean property in or around the Zonolite Mine owned by W. R. Grace or Grace-owned subsidiaries (excluding Operable Unit 2) and any area (including any structure, soil, air, water, sediment or receptor) impacted by the release and/or release and subsequent migration of hazardous substances and/or pollutants or contaminants from such property, including, but not limited to, the mine property, the

3

Kootenai River and the sediments therein, Rainey Creek, Rainey Creek Road, and areas in which tree bark is contaminated with such hazardous substances and/or pollutants or contaminants.

c.      "CECRA" shall mean the Montana Comprehensive Environmental Cleanup and Responsibility Act, §§ 75-10-701 et seq., MCA.

d.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 USC § 9601 et seq.

2.  MDEQ's Claim, Claim Number 18496, shall be allowed as an unsecured, pre-petition, non-priority claim against the chapter 11 estates of the Debtors in the amount of $5,167,000.  Except as to claims relating to Operable Unit 3, which are specifically reserved herein, the remaining portions of MDEQ's Claim are resolved.  Claims reserved for Operable Unit 3 include, without limitation, any liability of Debtors for injunctive relief, administrative order enforcement, cost recovery, and liability for damages for injury to, destruction of, or loss of natural resources under CERCLA or CECRA.  MDEQ's Claim No. 15296 shall hereby be disallowed and expunged.

3.  MDEQ shall not be entitled to pre-petition or post-petition interest on MDEQ's Claim allowed herein with respect to any period prior to the effective date of a confirmed chapter 11 plan or plans with respect to the Debtors (the "Plan").  MDEQ's Claim shall be paid in the same manner as all other similarly situated general unsecured claims pursuant to the "Plan" except with respect to the payment of interest as described herein.

4.  Upon approval of this Stipulation by the Bankruptcy Court, the Debtors shall direct their Claims Agent, Rust Consulting, Inc. ("Claims Agent"), to mark the Claims Register to reflect that Claim No. 18496 shall be allowed as outlined herein.

5.  MDEQ will place and maintain any distributions received by MDEQ on account of its allowed claim set forth in Paragraph 2 in a State special revenue fund, as provided for in § 17-2-

4

102(1)(b)(i), MCA, to be known as the "Libby Asbestos Site State Cost Account." MDEQ shall use the funds in this account, together with all interest and earnings thereon, only for the State's CERCLA cost share requirements, including operation and maintenance expenses, or other costs related to asbestos at the Site.

6.   MDEQ agrees that it is forever barred, estopped, and enjoined from asserting any additional pre-petition or post-petition claims against the Debtors for past, present and future costs of investigation, remediation, monitoring, and maintenance at the Libby Site (except for Operable Unit 3) under the Montana Comprehensive Environmental Cleanup and Responsibility Act, §§ 75-10-701 et seq., MCA, (CECRA) and the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 USC § 9601 et seq. (CERCLA).

7.   MDEQ and the State of Montana reserve, and this Stipulation is without prejudice to, all rights, claims, and causes of action they have or may in the future have against Debtors with respect to all matters not expressly included in the foregoing Paragraph 6.

8.   Debtors release and agree not to assert any claims or causes of action against the State of Montana, including any of its departments, agencies, instrumentalities, contractors or employees, with respect to the Libby Site, including but not limited to any claims for reimbursement, contribution, cost recovery or damages under CECRA, CERCLA, or any other provision of law. This release does not cover and Debtors expressly reserve all claims relating to Operable Unit 3.

9.   In the event that this Stipulation becomes null and void for any reason, then the preceding Paragraphs shall not apply, and MDEQ's Claim shall be deemed fully reinstated, subject, however, to Debtor's defenses, counterclaims and offsets, if any, and credits for payments MDEQ has received, if any. Neither this Stipulation nor its nullification pursuant to its

5

terms shall create a right that does not presently exist for MDEQ or any other party to file additional claims with respect to these matters, nor waive any defense that the Debtors may have against such claims.

10.. The Debtors shall take whatever additional action, if any, is necessary to insure that MDEQ's Claim No. 18496 is allowed as outlined herein.

11. This Stipulation shall be subject to a thirty (30) day public comment period, which may take place concurrent with the judicial approval process described herein. MDEQ reserves the right to withdraw or withhold its consent to this Stipulation if the public comments received disclose facts or considerations that indicate that this Stipulation is inappropriate, improper, or inadequate. At the conclusion of the public comment period, the State will provide the Court with copies of any public comments and its responses thereto.

12. Entry into this Stipulation is contingent upon the Settlement Agreement between the United States, on behalf of the Environmental Protection Agency and other federal agencies, and Grace regarding the Libby Asbestos Site ("Libby Settlement Agreement")(which is attached as Exhibit A. to Docket No. 18271 filed on March 12, 2008) being approved by the Bankruptcy Court and Grace complying with the payment obligations under the Libby Settlement Agreement. This Stipulation shall be null and void if the Bankruptcy Court does not approve the Libby Settlement Agreement or if Grace does not pay to the United States the sum specified in the Libby Settlement Agreement.

13. Notwithstanding the foregoing, this Stipulation and the Debtors' signature hereon shall not become effective and binding until the Bankruptcy Court has entered an Order approving it. The Debtors shall promptly seek approval of this Stipulation under Bankruptcy Rule 9019 or other applicable provisions of the Bankruptcy Code.

6

14. In the event this Stipulation does not become effective as outlined in Paragraphs 10, 11, and 12 above prior to December 31, 2008, this Stipulation shall be null and void unless otherwise mutually agreed by the parties.


Montana Department of Environmental
Quality

By: _____
 for Richard H. Opper
     Director

Date: ____May 20, 2008____


W. R. Grace & Co., *et al.*
("Debtors")

By: _____
     William M. Corcoran
     Vice-President
     Public and Regulatory Affairs

Date: ____5/22/08____


Approved for Legal Content:

By: _____
     William B. Kirley
     DEQ Counsel

Date: ____5-20-08____


7

Exhibit H – List of Other State Proofs of Claim and their Treatment in the Plan

**Exhibit H – List of Other State Proofs of Claim and their Treatment in the Plan**

Claim Numbers Compiled from *In Re: W.R. Grace & Co. et al.*, Case No. 01-01139-AMC, Doc 31847-1, page 1271, filed 3/12/2014, and Doc 31847-2, pages 846, 4584, and 4585, filed 03/12/2014.

| Claim # | Claimant Name | Claim Type | Claim Status |
|---|---|---|---|
| 6101 | State of Montana Risk Management & Tort Defense Div | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 18543 | State of Montana Risk Management & Tort Defense Div | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 18548 | State of Montana Risk Management & Tort Defense Div | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 6098 | State of Montana – Dept of Public Health & Human Svcs | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 6099 | State of Montana – Dept of Public Health & Human Svcs | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 18524 | State of Montana – Dept of Public Health & Human Svcs | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 18525 | State of Montana – Dept of Public Health & Human Svcs | Asbestos PI Claim | Channeled to and assumed by Asbestos PI Trust |
| 18567 | Montana Dept of Revenue | State Tax Claim | Allowed. Paid in 2014. Check cleared |
| Z14207 – Z14214 | Montana Department of Transportation | Asbestos PD Claim | Channeled to and assumed by the Asbestos PD Trust |
| Z17341- Z17349 | University of Montana | Asbestos PD Claim | Channeled to and assumed by the Asbestos PD Trust |

Asbestos PD Claims are US ZAI PD Claims (Class 7B ZAI) as the Plan defines that term

EXHIBIT I - FORM OF APPROVAL ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (AMC) |
| | ) | (Jointly Administered) |
| Reorganized Debtor. | ) | |
| | ) | Re docket no. _____ |
| | ) | Hearing Agenda item no. _____ |

### ORDER APPROVING SETTLEMENT AGREEMENT RESOLVING STATE OF MONTANA'S CLAIM FOR OPERATING UNIT 3 OF THE LIBBY ASBESTOS SUPERFUND SITE

Upon consideration of the Reorganized Debtor's Motion to Approve Settlement Agreement Resolving State of Montana's Claim for Operating Unit 3 of the Libby Asbestos Superfund Site (the "Motion"); it appearing that the relief requested is in the best interests of the Reorganized Debtor, its estates, its creditors, and other parties-in-interest; the State of Montana having had a sufficient period of time to conduct a 30-day public comment period, and having provided any public comments received and the responses to the Court; based upon information that the Reorganized Debtor and the State have provided, the Court having determined that the settlement is fair, adequate, reasonable, and consistent with the goals of the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. § 9601 *et seq.* and the Montana Comprehensive Environmental Cleanup and Responsibility Act, Montana Code Annotated ("MCA") § 75-10-701 *et seq.*; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated

---

[1]    W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") is the sole remaining Reorganized Debtor and Case No. 01-1139 is the sole remaining open chapter 11 case.

February 29, 2012; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and considering that this Court may enter an order consistent with Article III of the United States Constitution; venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:[2]

1.   The Motion is granted in its entirety.

2.   The *Settlement Agreement*, a true and correct copy of which is attached as the Exhibit to this Order (the "Settlement Agreement"), is approved in its entirety.

3.   The Reorganized Debtor is authorized to enter into, and take all actions contemplated in, the Settlement Agreement on the terms and conditions set forth therein.

4.   The *Reorganized Debtor's Request for Partial Allowance and Partial Disallowance of the Claim by the Montana Dept. of Env. Quality ("MDEQ") for Environmental Remediation at Operable Unit 3 of the Libby Asbestos Superfund Site (Substantive Objection)*, the State's *Response and Reservation of Rights of the State of Montana to the Reorganized Debtor's Request for Partial Allowance and Partial Disallowance of the Claim by the Montana Dept. of Env. Quality for Environmental Remediation at Operable Unit 3 of the Libby Asbestos Superfund Site (Substantive Objection)* [Docket No. 33102], and the Reorganized Debtor's *Reply in Support of the Reorganized Debtor's Claim Objection Requesting Partial Allowance and Partial Disallowance of MDEQ Prepetition Claim (Substantive Objection)* [Docket No. 33110] are dismissed as moot.

---

[2]   Capitalized terms not defined in this order shall have the meaning ascribed to them in the Settlement Agreement.

5.    The mediation scheduled in the *Stipulation and Agreed Order re Mediation of Contested Matter re Claim No. 18496-1* [Docket No. 33124], as supplemented by the *Joint Stipulation and Agreed Order Selecting Mediator in Contested Matter re Claim No. 18496-1* [Docket No. 33126], and as amended by the *Amendment to the Stipulation and Agreed Order re Mediation of Contested Matter re Claim No. 18496-1* [Docket No. 33144], has been completed.

6.    The Reorganized Debtor shall direct its claims agent Rust Consulting, Inc. to record: (i) the Allowed State Claim as an allowed, non-contingent, and liquidated claim on the terms and conditions set forth in the Settlement Agreement; and (ii) the State Claim (Claim No. 18496-1) as disallowed in all other respects and expunged.

7.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Fed. R. Bankr. P. 6004(a) and the local rules of the Court are satisfied by such notice.

8.    The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

9.    This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under, as the case may be, Fed. R. Bankr. P. 7062, Fed. R. Bankr. P. 6004(h), Fed. R. Bankr. P. 9014, or otherwise.

10.    In the event of any conflict between the terms of this Order, the Motion, or the Settlement

Agreement, the Settlement Agreement shall govern.

Dated: _____, 202__

_____

Honorable Ashely M. Chan
United States Bankruptcy Judge

<u>EXHIBIT TO ORDER</u>

Settlement Agreement