**EXHIBIT 1**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., *et al.*, | ) Case No. 01-01139 (KG) |
| | ) Jointly Administered |
| Reorganized Debtors. | ) |

## ANNUAL REPORT AND ACCOUNT
## OF THE WRG ASBESTOS PI TRUST
## FOR THE FISCAL YEAR ENDING DECEMBER 31, 2022

Lewis R. Sifford, Scott Miller, the Trustee of the WRG Asbestos PI Trust (the "Trust"),[1] created pursuant to the First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W. R. Grace & Co., et al.; the Official Committee of Asbestos Personal Injury Claimants; the Asbestos PI Future Claimants' Representative; and the Official Committee of Equity Security Holders as Modified Through December 23, 2010, (the "Plan"), submit this Annual Report, Financial Statements, and Claims Summary for the fiscal year ending December 31, 2022.

I.   INTRODUCTION

The purpose of this Annual Report is to fulfill the reporting requirements of the WRG Asbestos PI Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustees on behalf of the Trust during the period January 1, 2022 to December 31, 2022 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustees shall timely account to the Bankruptcy Court as follows:

    (i)    The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end

---

[1] Mr. Trafalet was also a Trustee during the Reporting Period. Mr. Trafalet's term expired on February 3, 2023 and he did not seek reappointment.

{C1158655.1 }

      of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustees shall provide a copy of such Annual Report to the TAC[2] and the Futures Representative when such reports are filed with the Bankruptcy Court.

   (ii)    Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the TAC and the Futures Representatives when such report is filed.

   (iii)   All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, the TAC, and the FCR in the accounts filed with the Bankruptcy Court and a description of any modification or amendments to the Trust Agreement or Trust Distribution Procedures (the "TDP"). See Sections 4.5(c), 5.6, 6.5, and 7.3.

II.     BACKGROUND

     On April 2, 2001, W. R. Grace & Co. and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions

---

[2] Trust Advisory Committee.

{C1158655.1 }

2

for relief under Chapter 11 of Title 11 of the United States Code. On January 31, 2011, the Court entered an Order in these cases confirming the Plan and on February 15, 2011, the Bankruptcy Court entered the Order clarifying the prior Order. On June 11, 2012, the United States District Court for the District of Delaware affirmed the Bankruptcy Court's confirmation Order. Certain parties appealed the judgment of the District Court to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The Third Circuit affirmed the judgment of the District Court in each such appeal except for one, and the period for petitioning the Supreme Court of the United States for *certiorari* review for such affirmed appeals expired with no such petition being made. The Third Circuit dismissed the final remaining appeal with prejudice on February 3, 2014, pursuant to a stipulated dismissal agreement between the parties. On February 3, 2014 (the "Effective Date"), the Plan became effective and the Trustees began to manage the affairs of the Trust.

On or after the Effective Date, the Trust was funded as provided for in Section 7.2.2 of the Plan. The purpose of the Trust is to assume the liabilities of the Debtors, their predecessors and successors in interest, for all Asbestos PI Claims, as defined in the Plan, and to use the assets and income of the Trust to pay both present and future asbestos claimants in accordance with the Trust Agreement and the Trust Distribution Procedures in such a way that holders of Asbestos PI Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims. See Trust Agreement, Section 1.2.

III. TRUST ADMINISTRATION

    A.    Trustees

During the Reporting Period, Lewis R. Sifford, Dean M. Trafelet, and Scott Miller served as Trustees of the Trust. Lewis R. Sifford served as the Managing Trustee during the Reporting Period.

During the Reporting Period, the Trustees held formal meetings in accordance with the requirements of the Trust Agreement. These meetings were designated as "regular meetings" under the Trust's By-laws. The meetings were attended by representatives of the TAC and the FCR. In addition to these formal meetings, the Trustees held regularly scheduled weekly teleconferences, met individually with Trust advisors virtually, held virtual executive session and special purpose meetings, and devoted considerable time to Trust matters outside of scheduled meetings. Activities included monitoring and exercising oversight over the investment of Trust assets and the processing of claims pursuant to the Trust Distribution Procedures, and communicating with claimants regarding operations of the Trust and the processing of claims.

    B.    Trust Advisory Committee

During the Reporting Period Russell W. Budd, John D. Cooney, John A. Baden IV, Perry Weitz, and Steven Kazan served as members of the Trust Advisory Committee (the "TAC Members").

    C.    Futures Representative

Roger Frankel served as the Futures Representative (the "FCR") during the Reporting Period.

D.  Claims Processing

During the Reporting Period, the Delaware Claims Processing Facility processed the Trust's claims. The terms of the Trust's ownership interest in the Delaware Claims Processing Facility are detailed in the Audited Financial Statements[3].

E.  Investment Management

Cambridge Associates LLC of Boston, Massachusetts continues to serve as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has significant experience advising such trusts on investment management. Cambridge Associates advises the Trustees on asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the Trust's portfolio. The Trust's invested assets are allocated in compliance with the Trust's investment guidelines. The Trust's investments are invested in fixed income, equity, and hedge fund investments recommended by Cambridge Associates after consideration of the currently forecasted timing of the liquidity needs of the Trust to pay claims and expenses, diversification, the Trust's status as a federal tax paying "qualified settlement fund," and such other factors as Cambridge Associates considers relevant to forming its recommendation. The asset allocation at the end of the reporting period is approximately as follows: 78.0% of the Trust's invested assets are committed to fixed income; 16.3% of the Trust's invested assets are committed to equities; 5.7% of the Trust's invested assets are committed to hedge fund managers.

The Trust continues to retain: Independent Franchise Partners, Kiltearn, Northern Trust, and Select Equity as equity managers; Breckinridge Capital, Deutsche Bank, Eaton Vance/Parametric, and Income Research & Management as municipal bond managers. The Trust

---

[3] Audited Financial Statements at Note 3.

{C1158655.1 }

also continues to retain the following managers in the hedge fund program: BlueMountain, DL Partners, Sculptor (formerly known as Och-Ziff), Governors Lane, GSO, Hitchwood, Sachem Head, and Luxor. The hedge fund program invests in well diversified arbitrage strategies and secondarily in long/short equity strategies. Broadly speaking, the hedge fund program is intended to generate, over a full market cycle, close to equity-like returns with lower volatility and lower correlation to the rest of the Trust's portfolio. The other expected benefits of the hedge fund program are diversification (e.g., access to specialized strategies not otherwise available in the other equity or fixed income investments), superior performance (versus long-only equities) in down equity markets, and access to some of the most talented investment managers. At Cambridge Associates' recommendation, the Trust has retained hedge fund managers who use no or minimal leverage, who employ trading strategies that are understandable to the Trustees, and who provide appropriate portfolio transparency to Cambridge Associates and to the Trust.

Northern Trust serves as Custodian for the Trust's separately managed investment accounts. The Trust utilizes custodian accounts, ACH transfer and zero-balance banking accounts to reduce its exposure to bank risk.

During the Reporting Period, the Trustees regularly met with Cambridge Associates for updates and reports on the Trust's investments.

F.  Insurance Coverage Litigation:

Upon the Effective Date, pursuant to the Plan, the Trust received the right to pursue certain unsettled insurance coverage and the rights to certain proceeds paid pursuant to Asbestos PI Insurance Settlement Agreements. The Trust retained the firm of Anderson Kill, P.C. as Special Insurance Counsel to the Trust. Prior to the Effective Date of the Plan of Reorganization, the Debtors and other Plan Proponents reached settlement agreements with many of the Debtors'

{C1158655.1 }

6

historical insurance companies that required the settling insurance companies to make cash payments to or for the benefit of the Trust. Certain of those agreements required the settling insurance companies to make payments into escrow accounts during the pendency of the bankruptcy case, and those escrow accounts were released to the Trust in the first quarter of 2014.

Certain other settlement agreements required the insurance companies to pay settlement proceeds to the Trust after the Plan's Effective Date in 2014, and the Trust received substantial payments from insurance companies in 2014. In addition, some of these settlement agreements require the settling insurance companies to make payments to the Trust on agreed-to payment schedules that extend beyond 2014 or to reimburse the Trust as claims. As a result, the Trust anticipates receiving additional payments through 2023 under these settlement agreements. Although the Plan Proponents settled with many of the Debtors' insurance companies prior to the Plan's Effective Date, they did not settle with all of the Debtors' insurance companies. Accordingly, in 2014, the Trust initiated settlement discussions with some solvent and insolvent domestic insurance companies (and state insurance guaranty associations) that had not settled with the Plan Proponents prior to the Plan's Effective Date.

In 2014, three insurance companies, Geico, Republic and Axa filed a declaratory judgment against the Trust seeking a declaration that they do not owe any or at most limited coverage to the Trust. As claims arguably had not yet reached the level of these excess insurance policies, the U.S. District Court for the Southern District of New York put their actions on a suspense docket until the issue of coverage with these excess insurance companies became ripe. The Trust settled its dispute with Axa on or about December 14, 2021 and all claims between the Trust and Axa were dismissed at that time. The Trust settled its dispute with Geico and Republic on September 26, 2022 and all claims between the Trust and Geico and Republic were dismissed at that time.

G. Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware serves as general counsel to the Trust. Anderson Kill, P.C. of New York, New York serves as Special Insurance Counsel to the Trust.

IV. ANNUAL REPORT AND ACCOUNTING

A. Summary of Claims:

The Trust began accepting and processing Unliquidated claims on August 25, 2014. As of December 31, 2022, the Trust had paid a total of 13,197 Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 385 malignancy claims and 12,812 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $29.70 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims. The malignant to non-malignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 1/33.28 and the malignant to non-malignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 1/1.45.

As of December 31, 2022, the Trust had received 599,515 Unliquidated PI Trust Claims and paid a total of 224,243 claims since the date of inception of the Trust. Of the claims paid, there were 49,685 malignancy claims and 174,558 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $2.09 billion to asbestos victims in settlement of their Unliquidated PI Trust Claims since the date of inception of the Trust. The malignant to non-malignant ratio of the Unliquidated PI Trust Claims paid in number was 1/3.5 and the malignant to non-malignant ratio of the Unliquidated Trust Claims in dollars paid was 5.28/1.

During the Reporting Period, the Trust paid a total of 96 Pre-Petition Liquidated PI Trust Claims. Of the claims paid, there were 5 malignancy claims and 91 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $0.111 million to asbestos victims in settlement of their Pre-Petition Liquidated PI Trust Claims. The malignant to non-malignant ratio of the Pre-Petition Liquidated PI Trust Claims paid in number was 1/18.2 and the malignant to non-malignant ratio of the Pre-Petition Liquidated Trust Claims in dollars paid was 1/4.

During the Reporting Period, the Trust received 23,474 Unliquidated PI Trust Claims. Out of the Trust's pending claims filed since inception, the Trust paid a total of 19,663 claims during the reporting period. Of the claims paid, there were 5,483 malignancy claims and 14,180 non-malignancy claims. After application of the payment percentage and applicable sequencing adjustment, the Trust paid approximately $215.92 million to asbestos victims in settlement of their Unliquidated PI Trust Claims. The malignant to non-malignant ratio of the Unliquidated PI Trust Claims paid in number was 1/2.5 and the malignant to non-malignant ratio of the Unliquidated Trust Claims in dollars paid was 5.85/1.

A summary of the claims processing procedures and policies may be found at the Trust website at www.wrgraceasbestostrust.com.

C.     Financial Information

The Trust's audited financial statements for the Reporting Period are attached hereto as Exhibit "A." The financial statements were audited by BDO USA, LLP.

Date: [April 27, 2023]            **CAMPBELL & LEVINE, LLC**

*/s/ Kathleen Campbell Davis*
Marla Rosoff Eskin (No. 2989)
Kathleen Campbell Davis (No. 4229)
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801
Telephone: 302-426-1900
Facsimile: 302-426-9947
meskin@camlev.com
kdavis@camlev.com

-and-

Douglas A. Campbell
Philip E. Milch
Shannon M. Clougherty
310 Grant Street, Suite 1700
Pittsburgh, PA 15219
Telephone: 412-261-0310
Facsimile: 412-261-5066

*Counsel to WRG Asbestos PI Trust*