# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (AMC) |
| | ) (Jointly Administered) |
| Reorganized Debtor. | ) |
| | ) |
| W. R. GRACE & CO., et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Proc. No. __-_____ |
| v. | ) |
| | ) |
| Andrew R. Vara, in his official capacity as the United States Trustee for Region 3; Tara Twomey, in her official capacity as the Director of the United States Trustee Program; and the United States Trustee Program, | ) |
| | ) |
| Defendants, | ) |

## COMPLAINT TO RECOVER FEES PAID TO
## THE UNITED STATES TRUSTEE PURSUANT TO 28 U.S.C. § 1930(A)(6)

W. R. Grace & Co. ("Grace" or the "Reorganized Debtor"), by and through his undersigned counsel and under the Plan, hereby files this adversary complaint (this "Complaint") against Andrew R. Vara, in his official capacity as the United States Trustee for Region 3 (the "Region 3 Trustee"), Tara Twomey, in her official capacity as the Director of the Executive Office for U.S.

---

[1] W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") is the sole remaining "Reorganized Debtor," and Case No. 01-1139 is the sole remaining open chapter 11 case.

The *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos Pl Future Claimants' Representative, and the Official Committee of Equity Security Holders as Modified Through December 23, 2010* [Docket No. 26368] is the "Plan." The *Recommended Findings of Fact, Conclusions of Law and Order Regarding Confirmation of First Amended Joint Plan of Reorganization as Modified Through December 23, 2010* [Docket No. 26155], dated January 31, 2011, and the *Order Clarifying Memorandum Opinion and Order Confirming Joint Plan as Amended Through December 23, 2010* [Docket No. 26289], dated February 15, 2011, together are the "Confirmation Order." Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

Trustees (EOUST) (the "Director"), and the United States Trustee Program (the "UST", which together with the Region 3 Trustee and the Director, are the "Defendants"), seeking (i) a declaration that the Reorganized Debtor is entitled to a refund of Total Excess Fees (as defined below) in the amount of $2,627,805.18 paid by the Reorganized Debtor and its affiliate, W. R. Grace & Co.-Conn. ("Grace-Conn.") pursuant to the amendment to 28 U.S.C § 1930(a)(6), which became effective on January 1, 2018 (the "2017 Amendment"), and (ii) an order directing the UST to refund the Total Excess Fees to the Reorganized Debtor. In support hereof, the Reorganized Debtor alleges as follows:

**NATURE OF THE ACTION**

1. By this action, the Reorganized Debtor seeks, pursuant to 11 U.S.C. §§ 105(a) and 1142(b), 28 U.S.C. § 2201, and Fed. R. Bankr. P. 2020 and 3020(d), a refund of: (a) the unconstitutional excess quarterly fees paid to the UST Program by the Reorganized Debtor (the "Grace Excess Fees") in the amount of $2,407,805.18 during the period commencing with the first quarter of 2018 ("Q1-2018") through the end of the first quarter of 2021 ("Q1-2021") for Grace (the "Excess Fee Period"), and (b) the excess quarterly fees paid to the UST Program by Grace-Conn. (the "Grace-Conn. Excess Fees") in the amount of $220,000.00 for the period of Q1-2018 through March 23, 2018, the date on which this Court entered its *Final Decree: (A) Closing the Grace-Conn. Chapter 11 Case; (B) Removing the Grace-Conn. Case from the Joint Administration Order; and (C) Waiving the Requirement to File a Final Report for the Grace-Conn. Case* (the "Grace-Conn. Final Decree").

2. The 2017 Amendment, which amended the Bankruptcy Judgeship Act, became effective January 1, 2018, thereby increasing the quarterly fees payable to the UST Program solely in districts that follow the UST Program (the "UST Program Districts"), not in districts that are within the Bankruptcy Administrator Program (the "BA Program Districts"), which follow their

own administrator programs. Pursuant to the 2017 Amendment, the Reorganized Debtor paid the UST Program $2,407,805.18 (the Total Grace Excess Fees) more than it otherwise would have prior to the 2017 Amendment. Likewise, Grace-Conn. paid the UST Program $220,000.00 (the Total Grace-Conn. Excess Fees) more than it otherwise would have prior to the 2017 Amendment.

3. In June 2022, the Supreme Court held in *Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022) ("<u>Siegel I</u>"), that the 2017 Amendment is unconstitutional because it did not increase fees equally in UST Program Districts and BA Districts, which remained at the lower, pre-2017 Amendment levels. Since then, courts have unanimously ruled that the UST is required to refund the increased fees paid by debtors as mandated by the 2017 Amendment. *See, e.g., USA Sales, Inc. v. Office of the United States Tr.*, 76 F.4th 1248, 2023 U.S. App. LEXIS 20794 (9th Cir. 2023); *United States Tr. Region 21 v. Bast Amron LLP (In re Mosaic Mgmt. Grp., Inc.)*, 71 F.4th 1341 (11th Cir. 2023); *Clinton Nurseries, Inc. v. Harrington (In re Clinton Nurseries, Inc.)*, 53 F.4th 15 (2d Cir. 2022), *pet. for cert. filed*, No. 23-47 (U.S. Aug. 15, 2023); *In re John Q. Hammons Fall 2006, LLC*, 15 F.4th 1011, 1019-21 (10th Cir. 2021), *vacated* 142 S. Ct. 2810 (2022), *and reinstated by* No. 20-3203, 2022 U.S. App. LEXIS 22859 (10th Cir. Aug. 15, 2022), *petition for cert. filed*, No. 22-1238 (U.S. June 23, 2023); *Ziehl v. Vara (In re TWC Liquidation Tr., LLC)*, Nos. 18-10601 (MFW), 22-50476, 2023 Bankr. LEXIS 2260 (Bankr. D. Del. Sep. 14, 2023); *Pitta v. Vara (In re VG Liquidation, Inc.)*, Nos. 18-11120 (JTD), 22-50416 (JTD), 2023 Bankr. LEXIS 1320 (Bankr. D. Del. May 18, 2023); *Siegel v. United States Tr. Program (In re Circuit City Stores, Inc.)*, Nos. 08-35653-KRH, 19-03091-KRH, 2022 Bankr. LEXIS 3544 (Bankr. E.D. Va. Dec. 15, 2022). As a result, the Reorganized Debtor is entitled to an immediate refund of the Total Excess Fees of $2,627,805.18.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §1409. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5. The Court retained jurisdiction over this adversary proceeding pursuant to the Plan and Confirmation Order. In relevant part, the Confirmation Order states at § IX that, "[p]ursuant to §§105(a), 524(a), 1141(d), and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter … arising under the Bankruptcy Code … [or] arising in or related to the Chapter 11 Cases or the Plan."

6. Pursuant to section 106 of title 11 of the United States Code (the "Bankruptcy Code"), each of the defendants has abrogated its sovereign immunity with respect to the claims asserted herein, and this Court has jurisdiction to "hear and determine any issue arising with respect to" such claims. 11 U.S.C. § 106(a)(2).

7. The Reorganized Debtor consents to entry of final orders or a final judgment by this Court in this adversary proceeding.

**THE PARTIES**

8. The Reorganized Debtor is the sole remaining reorganized debtor in the above-captioned Chapter 11 Cases, and pursuant to the Plan and Confirmation Orders has both the authority and responsibility for implementing the Plan's provisions, including but not limited to pursuing, prosecuting, and settling causes of action such as those asserted herein, making distributions to creditors, and making quarterly fee payments to the UST Program. Plan at § 11.4.2; Confirmation Order at § IX.

9. Defendant Andrew R. Vara is the Region 3 Trustee, and he is responsible for overseeing the operations of the UST Program in Region 3, which includes the District of Delaware.

10. Tara Twomey in her capacity as Director of the Executive Office for U.S. Trustees (EOUST) is the Director of the UST Program.

11. The UST Program is a component of the United States Department of Justice, an agency of the Executive Branch of the United States Government, and it is responsible for overseeing the administration of bankruptcy cases pursuant to 28 U.S.C. § 586. The UST Program, Region 3 Trustee, and the Director are the named Defendants in this Action.

### FACTUAL BACKGROUND

**A. The Chapter 11 Cases and Emergence from Chapter 11**

12. On April 2, 2001, Grace, Grace-Conn., and 60 domestic affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 Cases. The Chapter 11 Cases are jointly administered.

13. This Court confirmed the Plan, pursuant to which Grace and the other 61 reorganized debtors emerged from chapter 11 on February 2, 2014 (the "Effective Date").

14. Since the Effective Date, all of the Chapter 11 Cases have been closed except for Grace's. As of the date hereof, Grace intends to close the last remaining Chapter 11 Case upon conclusion of this Action.

**B. Effects of 2017 and 2020 Amendments on the Increased U.S. Trustee Quarterly Fee Schedule**

15. The UST Program is a component of the United States Department of Justice and is responsible for overseeing the administration of bankruptcy cases in the 88 UST Districts, among which is the District of Delaware. 28 U.S.C. § 1930(a)(6) requires chapter 11 debtors in

UST Districts to pay quarterly fees to the UST Program.  In particular, the statute provides that, among other fees, a "quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever comes first." 28 U.S.C. § 1930(a)(6)(A).  The quarterly fees are based on the total quarterly "disbursements" made by the applicable debtor in each quarter.  *Id*.

16.    The six BA Districts are located in Alabama and North Carolina, and are overseen by the Bankruptcy Administrator Program, which is part of the judicial branch and is overseen by the Administrative Office of the United States Courts.  *See Federal Courts Improvements Act of 2000*, Pub. L. No. 106-518 § 501, 114 Stat. 2410, 2421 (2000).  The Administrative Office of the United States Courts is supervised by the Judicial Conference of the United States (the "<u>Judicial Conference</u>").

17.    In Administrator Districts, 28 U.S.C. § 1930(a)(7) provided in relevant part that "the Judicial Conference of the United States ***may*** require the debtor in a case under chapter 11 of title 11 [11 USCS §§ 1101 et seq.] to pay fees equal to those imposed by paragraph (6) of this subsection.  *Id*. (emphasis added).  In 2001, the Judicial Conference issued a standing order that harmonized section 1930(a)(7) with section 1930(a)(6) by requiring the BA Districts to collect the same fees as UST Districts.  REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES 46 (Sept./Oct. 2001) found at https://www.uscourts.gov/sites/default/files/2001-09_0.pdf (accessed on Sept. 14, 2023).

18.    In October 2017, Congress enacted the 2017 Amendment, which increased the quarterly fees payable to the UST Program in chapter 11 cases. Under 28 U.S.C. § 1930(a)(6)(B), the 2017 Amendment increased the maximum fee per debtor by over 800% (from $30,000 to

6

$250,000).  *See Bankruptcy Judgeship Act of 2017*, Pub. L. No. 115-72, § 1004, 131 Stat. 1224, 1232 (October 26, 2017).  The quarterly fee increase became effective on January 1, 2018, in UST Districts only for all chapter 11 cases regardless of whether the case was commenced before or after the January 1, 2018 effective date.

19. In September 2018, the Judicial Conference required payment of higher fees for the BA Districts – but only for new debtors – on and after October 1, 2018.  *See* REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES 11-12 (Sept. 13, 2018), found at https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf (accessed Sept. 14, 2023).  This created two inconsistencies in quarterly fee payments by chapter 11 debtors with cases pending in UST Districts versus those with cases pending in BA districts: (1) for the first three quarters of 2018, all UST Program districts collected higher fees from all debtors and reorganized debtors, regardless of when they commenced their chapter 11 cases; and (2) once the BA Districts began collecting the higher fees only from debtors filing cases on and after October 1, 2018, there was a continuing disparity between debtors and reorganized debtors who filed cases prior to that date, as those in the BA District continued to pay the lower fees and those in UST Districts paid the higher fees.

20. The Supreme Court in *Siegel I* held these disparities to be unconstitutional.  *Siegel I*, 142 S.Ct. at 1782 n. 2; *see also TWC*, 2023 Bankr. LEXIS 2260, at *41-42 (explaining that the higher fees charged throughout the entire Excess Fee Period were ruled unconstitutional and the fee differential for that entire period was subject to refund).

21. There is no mechanism by which a debtor or reorganized debtor may contest the amount of quarterly fees prior to payment, because a failure to pay the fees required by the 2017 Amendment statutorily requires the UST to dismiss a chapter 11 case — even, as here, a chapter

7

11 case with a fully consummated chapter 11 plan of a reorganized debtor with an ongoing business — upon a failure to pay UST Program fees. 11 U.S.C. §§ 1112(b)(1) & (b)(4)(K); *see Atchison T. & S.F. Ry. Co. v. O'Connor*, 223 U.S. 280, 286 (1912) ("[T]he plaintiff could have had no certainty of ultimate success, and we are of opinion that it was not called upon to take the risk of having its contracts disputed and its business injured, and of finding the tax more or less nearly doubled in case it finally had to pay"), cited in *Pitta v. Vara*, 2023 Bankr. LEXIS 1320, at *16; *see also TWC*, 2023 Bankr. LEXIS 2260, at *39-40 (quoting *Siegel II*, 2022 Bankr. LEXIS 3544, at *11-*12). Therefore, the only viable course of action by Grace or Grace-Conn. was to do what they did in this instant matter — pay the quarterly fees as owed and then seek a refund by and through this Complaint. *Pitta v. Vara*, 2023 Bankr. LEXIS 1320, at *16-*17.

22. In late 2020, Congress enacted the *Bankruptcy Administration Improvement Act of 2020*, Pub. L. No. 116-325, 134 Stat. 5086 (the "2020 Amendment"), which in relevant part amended section 1930(a)(7) to read that "the Judicial Conference of the United States ***shall*** require the debtor", thereby eliminating the word "***may***." *Id*. at § 3(d)(2). The law became effective as of January 12, 2021, which had the effect of requiring all debtors in BA districts, regardless of when their cases were commenced, to pay the same quarterly fees to the UST Program as debtors in UST Districts, commencing with the second quarter of 2021. *Id*.[2]

### C. Supreme Court Decision in *Siegel v. Fitzgerald*, Declaring 2017 Amendment Increased Fees Unconstitutional

23. On June 6, 2022, the Supreme Court in *Siegel I* unanimously held that the 2017 Amendment was unconstitutional because it exempted debtors from the BA Districts from the 2018 quarterly fee increase and thereby violated the uniformity requirement of the Bankruptcy

---

[2] *See also Chapter 11 Quarterly Fees*, found at https://www.justice.gov/ust/chapter-11-quarterly-fees (accessed Sept. 14, 2023), a copy of which is attached hereto as Exhibit 1.

Clause at U.S. Const., Art. I, § 8, cl. 4. *See Siegel I*, 142 S. Ct. 1770 (2022). The Supreme Court did not determine a remedy, and instead remanded the case to the United States Court of Appeals for the Fourth Circuit (and other similar cases to the relevant circuit courts) for determination of the appropriate remedy. *Id*. at 1783.

24. Since then, the courts that have ruled on the issue of the appropriate remedy have unanimously held that the UST Program must refund overpaid quarterly fees for the relevant portion of the Excess Fee Period. *See supra* ¶ 3.

25. In appropriating funds for the UST Program, Congress made the amounts in the United States Trustee System Fund available for the payment of refunds to depositors such as the Reorganized Debtor and Grace-Conn. as follows:

> [N]otwithstanding any other provision of law, deposits to the United States Trustee System Fund and amounts herein appropriated shall be available in such amounts as may be necessary to pay refunds due depositors.

*Consolidated Appropriations Act*, 2019 Pub. L. No. 116-6, at 103-04 (2019).

26. Moreover, Chapter 3-9.6.2.4 of the *United States Trustee Program Policy and Practices Manual* (the "UST Manual") requires the UST Program to follow "[p]ayment refund procedures established by the [Executive Office of the United States Trustee] … in the event that overpayment of quarterly fees necessitates a refund." UST Manual at Ch. 3-9.6.2.4.

D. **Grace and Grace-Conn.'s Overpayment of Quarterly Fees**

27. For the reasons set forth above, the 2017 Amendment was held to be unconstitutional. Courts have unanimously held that a refund is the only permissible remedy. The Reorganized Debtor is therefore entitled to a refund of all Excess Fees paid during the Excess Fee Period.

28.  Exhibit 1 to this Complaint is a copy of the current and historical fee schedules published by the UST Program on its website, found at https://www.justice.gov/ust/chapter-11-quarterly-fees (accessed Sept. 14, 2023).

29.  Grace made payments during the Excess Fee Period in accordance with the revised fee schedule. The table below reflects: (a) Grace's quarterly disbursements, (b) Grace's payments owed and made for each quarter pursuant to the 2017 Amendment fee schedule, (c) the amount owed under the pre-2017 Amendment fee schedule, and (d) the difference in amount owed under the two schedules:[3]

| Quarter | Disbursements ($) | Amount Owed – Quarterly Report ($) | Quarterly Fee Actually Paid ($) | Amount Owed Under Prior Fee Schedule | Overpayment |
|---|---|---|---|---|---|
| Q1 - 2018 | 52,180,094.00 | 250,000.00 | 20,000.00 | $30,000.00 | <$10,000.00> |
| Q2 - 2018 | 20,656,343.00 | 206,563.43 | 480,000.00 | $20,000.00 | $460,000.00 |
| Q3 - 2018 | 10,750,804.00 | 107,508.04 | 250,000.00 | $13,000.00 | $237,000.00 |
| Q4 - 2018 | 19,830,808.00 | 198,308.08 | 12,380.00 | $20,000.00 | <$7,620.00> |
| Q1 - 2019 | 31,595,942.00 | 250,000.00 | 249,999.00 | $30,000.00 | $219,999.00 |
| Q2 - 2019 | 50,269,524.00 | 250,000.00 | 250,000.00 | $30,000.00 | $220,000.00 |
| Q3 - 2019 | 19,222,985.00 | 192,229.85 | 192,229.85 | $20,000.00 | $172,229.85 |
| Q4 - 2019 | 18,018,696.00 | 180,186.96 | 180,187.11 | $20,000.00 | $160,187.11 |
| Q1 - 2020 | 60,454,616.00 | 250,000.00 | 250,000.00 | $30,000.00 | $220,000.00 |
| Q2 - 2020 | 19,856,562.00 | 198,565.62 | 198,565.62 | $20,000.00 | $178,565.62 |
| Q3 - 2020 | 19,856,604.00 | 198,566.04 | 198,856.60 | $20,000.00 | $178,856.60 |
| Q4 - 2020 | 19,997,466.00 | 199,974.66 | 199,975.00 | $20,000.00 | $179,975.00 |
| Q1 - 2021 | 21,861,413.00 | 218,614.13 | 218,612.00 | $20,000.00 | $198,612.00 |
| **Total** | NA | $2,700,516.81 | $2,700,805.18 | $293,000.00 | $2,407,805.18 |

---

[3]  Copies of the quarterly reports are attached hereto as Exhibit 2. The quarterly reports for Q2-2018 and Q3-2018 are amended reports. Exhibit 3 contains the superseded quarterly reports for Q2-2018 and Q3-2018.

The Reorganized Debtors paid the Q1-2018 fees for Grace and Grace-Conn. based upon the invoice provided by the UST. The Reorganized Debtors then paid $700,000 for Q2-2018, again based upon the invoice provided by the UST, allocating $480,000 for Grace (for Q1 and Q2-2018) and $220,000 for Grace-Conn. for Q1-2018.

| Quarter | Disbursements ($) | Amount Owed – Quarterly Report ($) | Quarterly Fee Actually Paid ($) | Amount Owed Under Prior Fee Schedule | Overpayment |
|---|---|---|---|---|---|

30. The refund amount owed to Grace by the UST due to the overpayment of fees is $2,407,805.18 (the "Grace Excess Fees"), which is the sum of fees actually paid by Grace pursuant to the fee schedule mandated by the 2017 Amendment, less the amounts that should have been owed pursuant to the pre-2017 Amendment fee schedule.

31. Grace-Conn. made payments during the Excess Fee Period in accordance with the revised fee schedule. The table below reflects: (a) Grace-Conn.'s quarterly disbursements, (b) Grace Conn.'s payments owed and made for each quarter pursuant to the fee schedule, (c) the amount owed under the pre-2017 Amendment fee schedule, and (d) the difference in amount owed under the two schedules:

| Quarter | Disbursements ($) | Amount Owed – Quarterly Report ($) | Quarterly Fee Actually Paid ($) | Amount Owed Under Prior Fee Schedule | Overpayment |
|---|---|---|---|---|---|
| Q1 - 2018 | 1,102,145,353.00 | 250,000.00 | 30,000.00 | $30,000.00 | $0.00 |
| Supplemental Q1-2018 payment (through 3/23/2028) | -- | -- | 220,000.00 | -- | $220,000.00 |
| Total | NA | $250,000.00 | $250,000.00 | $30,000.00 | $220,000.00 |

32. The refund amount owed to Grace-Conn. by the UST due to the overpayment of fees is $220,000.00 (the "Grace-Conn. Excess Fees"), which is the sum of fees actually paid by Grace-Conn. pursuant to the fee schedule mandated by the 2017 Amendment, less the amounts that should have been owed pursuant to the pre-2017 Amendment fee schedule.

33. The sum of the Grace Excess Fees and the Grace-Conn. Excess Fees is $2,627,805.18 (the "Total Excess Fees").

11

COUNT 1

**For Judgment Requiring the Defendants to Refund Excess Fees**
**(28 U.S.C. § 2201; 11 U.S.C. §§ 105, 1142; Fed. R. Bankr. P. 2020, 3020)**

34. The Reorganized Debtor repeats and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth herein.

35. The Reorganized Debtor paid the Total Excess Fees of $2,627,805.18 in compliance with the Amendment, which was subsequently deemed unconstitutional. The Excess Fees exceeded the amount of quarterly fees that the UST Program was lawfully permitted to charge and that the Debtors and Liquidation Trustee were legally required to pay.

36. An actual, substantial, and justiciable controversy exists between the Defendants and the Reorganized Debtor as to whether the Reorganized Debtor is entitled to recover the Excess Fees.

37. Pursuant to 28 U.S.C. § 2201, this Court is empowered to "declare the rights and other legal relations of any interested party" in cases of actual controversy within its jurisdiction.

38. Pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

39. Pursuant to section 1142(b) of the Bankruptcy Code, this Court is empowered to "direct the debtor and any other necessary party to… perform any other act… that is necessary for the consummation of the Plan." The Plan specifically empowers the Reorganized Debtor to pursue causes of action such as those asserted herein. Plan at § 11.4.2; *see also* Confirmation Order at § IX.

40. A substantial controversy exists between the Defendants and the Reorganized Debtor of sufficient immediacy to warrant a prompt judicial determination of the respective rights

and duties of the parties. The Reorganized Debtor respectfully prays for a judgment declaring that the Reorganized Debtor is entitled to a refund of the Total Excess Fees and awarding it a refund of the Total Excess Fees in the amount of $2,627,805.18.

## COUNT 2

**The Collection of the Total Excess Fees Violates Equal Protection and Substantive Due Process Clauses, Which Mandates a Refund of the Total Excess Fees**

41. The Reorganized Debtor repeats and realleges the allegations contained in each preceding paragraph of this Complaint as though fully set forth herein. The Amendment, which has been held unconstitutional by the Supreme Court, which means that under relevant Supreme Court precedent, the Reorganized Debtor is entitled to a refund equal to the Total Excess Fees of $2,627,805.18. *See Bast Amron*, 71 F.4th 1341 (citing *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239 (1931) ("a state's unequal taxation of comparable and competing taxpayers violates the Equal Protection Clause, and holding that the taxpayer who was required to pay the higher, discriminatory tax is entitled to a refund") and other cases); *see also Id*., 71 F.4th at 1355 (Brasher, J., concurring) ("trustee has a due process right to a refund" and "a level-up refund remedy is our only option because there is no lawful way to implement a backward-looking level-down remedy").

42. Adherence to well-established constitutional principles of equal protection and substantive due process therefore compel the UST Program to refund the Total Excess Fees of $2,627,805.18. Based upon these well-established constitutional principles, the Reorganized Debtor is entitled to a judgment against the UST Program compelling the UST Program to refund to the Reorganized Debtor an amount equal to the Total Excess Fees paid by the Reorganized Debtor during the Excess Fees Period of the Q1-2018 through Q-1 2021, inclusive.

[remainder of this page is intentionally left blank]

**PRAYER FOR RELIEF**

WHEREFORE, the Reorganized Debtor respectfully prays for judgment against Defendants as follows:

a) For a declaration that the Reorganized Debtor is entitled on behalf of itself and Grace-Conn. to a refund of the Total Excess Fees of $2,627,805.18; and

b) For such other and further relief as the Court deems just and proper.

Dated:  September 25, 2023

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
516 N. Ogden Ave.
Suite 136
Chicago, IL 60642
Telephone: (312) 480-1984

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Reorganized Debtor

**[remainder of this page is intentionally left blank]**

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Copy of the fee schedules published by the UST Program on its website, found at https://www.justice.gov/ust/chapter-11-quarterly-fees (accessed Sept. 14, 2023) |
| Exhibit 2 | Copies of Reorganized Debtor's quarterly financial reports, commencing with Q1-2018, and ending with Q1-2021 (Exhibits 2-A through Exhibit 2-L, inclusive). |
| Exhibit 3 | Copies of Q2-2018 and Q3-2018 SUPERSEDED Post-Confirmation Quarterly Summary Reports [Docket nos. 33084 and 33071] |