**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ACANDS, INC.,<br><br>              Debtor. | Case No. 02-12687 (KG)<br><br>Chapter 11<br><br>**Re: Docket Nos. 3751 and 3762** |
| In re:<br><br>ARMSTRONG WORLD INDUSTRIES, INC., *et al.*,<br><br>              Debtors. | Case No. 00-04471 (KG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>**Re: Docket Nos. 10813 and 10824** |
| In re:<br><br>COMBUSTION ENGINEERING, INC.,<br><br>              Debtor. | Case No. 03-10495 (KG)<br><br>Chapter 11<br><br>**Re: Docket Nos. 3502 and 3513** |
| In re:<br><br>THE FLINTKOTE COMPANY, *et al.*,<br><br>              Debtors. | Case No. 04-11300 (KG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>**Re: Docket Nos. 9338 and 9346** |
| In re:<br><br>KAISER ALUMINUM CORPORATION, *et al.*,<br><br>              Debtors. | Case No. 02-10429 (KG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>**Re: Docket Nos. 10351 and 10362** |

| | |
|---|---|
| In re:<br><br>OWENS CORNING, *et al.*,<br><br>　　　　　Debtors. | Case No. 00-03837 (KG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>**Re: Docket Nos. 21106 and 21119** |
| In re:<br><br>UNITED STATES MINERAL PRODUCTS COMPANY,<br><br>　　　　　Debtor. | Case No. 01-02471 (KG)<br><br>Chapter 11<br><br>**Re: Docket Nos. 4094 and 4105** |
| In re:<br><br>USG CORPORATION, *et al.*,<br><br>　　　　　Debtors. | Case No. 01-02094 (KG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>**Re: Docket Nos. 12711 and 12722** |
| In re:<br><br>W.R. GRACE & CO., *et al.*,<br><br>　　　　　Debtors. | Case No. 01-01139 (KG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>**Re: Docket Nos. 32718 and 32737** |

**REPLY OF HONEYWELL INTERNATIONAL INC.
TO OBJECTION OF THE NORTH AMERICAN REFRACTORIES COMPANY
ASBESTOS PERSONAL INJURY SETTLEMENT TRUST ADVISORY COMMITTEE
TO HONEYWELL'S MOTION FOR ACCESS TO RULE 2019 EXHIBITS**

Honeywell International Inc. ("Honeywell"), by and through its undersigned counsel,

hereby submits this reply to the *Objection of the North American Refractories Company*

*Asbestos Personal Injury Settlement Trust Advisory Committee to Honeywell's Motion for*

54746655.1

*Access to Rule 2019 Exhibits* (the "Objection") filed in the above-captioned proceedings, and respectfully states as follows:[1]

## PRELIMINARY STATEMENT

1.      Each objection that the North American Refractories Company Asbestos Personal Injury Settlement Trust Advisory Committee (the "TAC") now raises in opposition to Honeywell's (and Ford's) request to access the 2019 Exhibits was addressed—and squarely rejected—by Judge Stark in his well-reasoned District Court opinion.  The TAC's objections must be rejected here too on the same facts and for the same reasons.

## ARGUMENT

**I.      The TAC's Arguments Regarding the Presumptive Right of Access Were Previously Rejected by the District Court**

2.      Honeywell, as a member of the public, has a well-settled common law *presumptive* right of access to the 2019 Exhibits.  *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1068-70 (3d Cir. 1984); *see also* 11 U.S.C. § 107.  "The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption [of access]."  *Publicker Indus., Inc.*, 733 F.2d at 1068-70 (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993)).

3.      Courts have held that in carrying this burden and "delineating the injury to be prevented, specificity is essential.  Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* (citations omitted).  Moreover, any order protecting a judicial record from disclosure *must articulate specific injuries* justifying denial of public access and make specific findings supported by evidence. *See id*.  The access right may be restricted

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits* filed in these chapter 11 cases on June 30, 2016 (the "Access Motion").

54746655.1

only to avoid "*clearly defined and serious injury* to the party seeking closure." *Id.* (emphasis added). Aside from its riff of unsupported and conclusory statements, the TAC has not articulated a single countervailing interest that outweighs Honeywell's common law right of access to the 2019 Exhibits.

      4.    The District Court has *already held* that the 2019 Exhibits in these chapter 11 cases are subject to a presumptive right of access and that no party had rebutted this presumption. *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281, 298 (Bankr. D. Del. 2013) (hereinafter, "*Motions for Access*") ("Here, the presumption of access has not been rebutted."); *see also Consent Order Granting Access to Rule 2019 Filings*, *In re Garlock Sealing Techs.*, No. 10-31607 (Bankr. W.D.N.C. Nov. 20, 2014) (hereinafter, "*Garlock*") [Docket No. 4235], attached hereto as Exhibit B; *Consent Order Granting Motion of Honeywell International Inc. for Access to Rule 2019 Exhibits, In re Porter-Hayden Co.*, No. 02-54152 (Bankr. D. Md. Oct. 1, 2015) (hereinafter, "*Porter Hayden*") [Docket No. 1277], attached hereto as Exhibit C.

      5.    The TAC apparently recognizes that Honeywell is entitled to access the 2019 Exhibits because it chose not to object or respond to, or even be heard on, the successful attempt by Garlock Sealing Technologies LLC ("Garlock") to access the 2019 Exhibits in these chapter 11 cases *or* Honeywell's successful attempts to access the 2019 Exhibits in *Garlock* and *Porter Hayden*.[2] Notably, each of the six law firms that are members of the TAC appeared in *Garlock*, and thus received ECF notifications of the prior motions seeking access. *See Garlock* [Docket Nos. 936 (Goldberg, Persky & White, P.C.); 64 (Motley Rice LLC); 38 (Baron & Budd, PC);

---

[2] Relatedly, the TAC also declined to be heard on appeal to the District Court regarding the access motion entered by the United States Bankruptcy Court for the Western District of North Carolina (the "Garlock Bankruptcy Court").

831 (Kazan, McClaim, Lyons, Greenwood & Harley, PLC); 77 (Weitz & Luxenberg, PC); 84 (Cooney & Conway)].

6.      Below is a summary of each argument made by the TAC and an explanation as to why each argument was previously rejected by the District Court in *Motions for Access*.

**A.      <u>TAC Claim:</u>**

> **"*But that is itself a misuse of those Rule 2019 Exhibits and intentionally misconstrues the Rule 2019 Orders that prompted their submission.*"**

7.      The TAC argues that Honeywell's intended use of the 2019 Exhibits is "improper" if such use is anything other than the purpose for which the 2019 Exhibits were filed. Objection ¶¶ 26, 32-35.  The District Court rejected this argument in *Motions for Access*.  488 B.R. at 298 ("While it is undoubtedly true that Rule 2019 is not intended for the purpose to which Garlock seeks to put it, this fact does not rebut the presumption of public access to judicial records.").

8.      As further support for its "improper purpose" argument, the TAC relies on several cases and a hearing transcript, all of which are readily distinguishable or lack precedential value. First, the TAC cites Judge Fitzgerald's statements from a hearing on motions filed by Garlock seeking access to the 2019 Exhibits in these chapter 11 cases.  Objection ¶ 32.  However, the TAC conveniently ignores that the Bankruptcy Court's views expressed at this hearing were later *rejected* by the District Court in *Motions for Access*.

9.      Second, the TAC cites *In re Premier International Holdings*, 423 B.R. 58 (Bankr. D. Del. 2010).  Objection ¶ 33.  The TAC correctly notes that the Bankruptcy Court in *Premier* believed that the Official Committee of Unsecured Creditors was "engaged in a litigation tactic to apply pressure on it[s] current adversary . . . ."  *Premier*, 423 B.R. at 75.  However, the Bankruptcy Court made this finding in the context of adjudicating whether an ad-hoc committee

5

of noteholders was even subject, in the first place, to the filing requirements under Bankruptcy Rule 2019—*not* whether a member of the public could seek access to filed statements.

10.     Also distinguishable is that the Bankruptcy Court in *Premier* made specific evidentiary findings to support its conclusion, none of which exist here.  For example, the Bankruptcy Court stated, "This conclusion is made self-evident by the fact that the Official Committee has not sought application of Rule 2019 to its current ally, the *Ad Hoc* Committee of SFI Noteholders."  *Id.* at 75.  The TAC does not, and cannot, provide this Court with any evidence that leads to the same conclusion for Honeywell.  Notably, Honeywell is seeking access to *all* 2019 Exhibits filed in these chapter 11 cases.  Unlike the Official Committee in *Premier*, Honeywell is not cherry picking certain 2019 Exhibits that may be more advantageous to it in the context of litigation.

11.     Third, the TAC cites *In re 50-Off Stores, Inc.*, 213 B.R. 646 (Bankr. W.D. Tex. 1997).  Objection ¶ 34.  As the TAC states, the Bankruptcy Court in *50-Off Stores* indicated that the litigant's attempt to access sealed materials was motivated by an "improper purpose."  *Id.* at 659.  However, this finding stemmed from the Bankruptcy Court's concern that the information sought to be unsealed was *subject to the attorney-client privilege and work product doctrine*. Permitting the litigant in *50-Off Stores* to access the information would, under the circumstances of that case, circumvent those privileges.  *Id.* ("It appears that what the Movants in reality seek here is a circumvention of those privileges, an effort to prove up a waiver by virtue of statements that might have been made in the retention hearing.").  None of the information contained in the 2019 Exhibits is subject to either the attorney-client privilege or the work product doctrine, *see*

*infra* ¶¶ 66-67, and no Court has ever held that privilege waiver concerns formed the basis for entry of the 2019 Orders.[3]

12.    Also distinguishable is that, unlike the information sought in *50-Off Stores*, the 2019 Exhibits were never "sealed."  *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005) (stating that "the Bankruptcy Court did not seal the Rule 2019 information"; instead, the 2019 Orders "maintain[ed] the public's right to access the Rule 2019 information . . . [but] permit[ted] access to that information by motion of the parties and order of the Court").

### B.    TAC Claim:

*"[I]t should be no surprise that Rule 2019 statements are not useful in asbestos litigation."*

13.    The TAC argues that Honeywell will not be able to use the 2019 Exhibits because the 2019 Exhibits do not prove, *inter alia*, that the individuals listed on the 2019 Exhibits filed claims against the relevant asbestos trust.  Objection ¶¶ 28-31.  Thus, the TAC argues again, Honeywell's purpose is "improper."

14.    First, the District Court in *Motions for Access* acknowledged that the parties disputed "the likely evidentiary value of the 2019 Exhibits."  488 B.R. at 299.  However, in rejecting the objecting parties' arguments, the District Court concluded nevertheless that "[a]dmissibility is not the standard by which the right of public access is measured."  *Id.*

15.    Second, it is not for the TAC, a body that represents interests directly adverse to Honeywell, to judge whether Honeywell can productively use the information contained in the 2019 Exhibits.  As the TAC acknowledges, Honeywell has been involved in the asbestos tort system for many years.  Objection ¶ 1.  Honeywell is no stranger to the types of evidence that

---

[3] At various times, litigants in *Garlock* and *Motions for Access* have argued that the *retention agreements* that were included as part of the 2019 Exhibits are subject to either the attorney-client privilege or the work product doctrine. However, Honeywell is not seeking access to the retention agreements, as is set forth in the proposed orders attached to the Access Motion.  *See also infra* ¶¶ 63-65.

may be useful in asbestos litigation.  The same goes for Honeywell's role with the NARCO Trust and its claims review process.

16.    Third, because one's intentions are irrelevant to its entitlement to access the 2019 Exhibits (but rather, the burden is on the TAC to demonstrate that an exception applies), Honeywell did not include in the Access Motion an exhaustive list of every possible way in which it might use the 2019 Exhibits.  *See* Access Motion ¶ 13 ("The foregoing facts are provided solely to aid this Court's understanding of Honeywell's involvement with the NARCO Trust and the asbestos tort system.  However, these facts are not a prerequisite for this Court to find that Honeywell is entitled to access the 2019 Exhibits . . . .").

17.    By way of example only, in addition to using the 2019 Exhibits in connection with "Bendix" litigation and the NARCO Trust, Honeywell may also seek to use the 2019 Exhibits in connection with lobbying efforts in support of the Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2016 (H.R. 1927; S. 357).  The Act, which passed the House on January 8, 2016, would, *inter alia*, require asbestos trusts in the United States to file quarterly reports about the payouts they make and who receives them, which would create uniform transparency among asbestos trusts in an effort to ferret out fraud.

18.    Suffice it to say, Honeywell has good reason to believe that the 2019 Exhibits can be used by Honeywell in a number of productive ways that will ultimately benefit all parties, including claimants with *valid* asbestos claims.  As the District Court in *Motions for Access* stated, "the sharing of information among litigants may help promote fairness and efficiency." 488 B.R. at 300.  "Also favoring access is that the issues involved here—going to liabilities arising from a mass tort—are important to the public."  *Id.* at 301.[4]

---

[4] Similarly, the Garlock Bankruptcy Court stated:

19.     Fourth, contrary to the TAC's assertion, the 2019 Exhibits contain useful information from the law firms that filed the 2019 Exhibits, beyond the identifying information for asbestos claimants.  For example, the Waters & Kraus law firm's 2019 Exhibit filed in *In re Kaiser Aluminum Corp.* states:

> I, Leslie MacLean, under penalty of perjury pursuant to the laws of the United States of America, declare as follows . . . .  I am involved in the Firm's representation of personal injury claimants and based upon a review of the business records of the Firm, I have personal knowledge of the facts set forth herein . . . .  As of the date of this statement, the Firm represents a number of personal injury claimants (the "Creditors" or individually, a "Creditor") who **have been injured by asbestos or asbestos-containing products mined, manufactured, marketed, distributed, sold, installed, and/or produced by the above referenced debtors and debtors-in-possession** (collectively, the "Debtors"). As a result of their injuries, **the Creditors hold claims** against, *inter alia*, one or more of the debtors or debtors-in-possession.

*Sixth Amended Verified Statement of Leslie MacLean of Waters and Kraus, LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019*, *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del.) [Docket No. 8805] (emphasis added).  These statements of exposure by the law firms that represent individuals who sue Honeywell or file claims against the NARCO Trust have obvious relevance to the merit and amount of such claims.  This information may also _lead_ to additional relevant discovery (*e.g.*, tort filings that reveal perhaps inconsistent factual allegations relating to exposure) pertaining to the individuals identified in the 2019 Exhibits.

20.     Indeed, the 2019 Exhibits were used by the Garlock Bankruptcy Court in connection with Garlock's estimation hearing.  "In 15 settled cases, the court permitted Garlock

---

But, most important, while it is not suppression of evidence for a plaintiff to be unable to identify exposures, it *is* suppression of evidence for a plaintiff to be unable to identify exposure in the tort case, but then later (and in some cases previously) to be able to identify it in Trust claims.
. . .
The withholding of exposure evidence by plaintiffs and their lawyers was significant and had the effect of unfairly inflating the recoveries against Garlock from 2000 through 2010.

*Garlock* [Docket No. 3296, p. 36-37].

to have full discovery.  Garlock demonstrated that exposure evidence was withheld in each and every one of them.  These were cases that Garlock had settled for large sums.  The discovery in this proceeding showed what had been withheld in the tort cases – on average plaintiffs disclosed only about 2 exposures to bankruptcy companies' products, but after settling with Garlock made claims against about 19 such companies' Trusts."  *Garlock* [Docket No. 3296, p. 31].

21.    Attached hereto as Exhibit A is the *Debtors' Summary of Evidence Regarding Certain RFA List 1.A Cases*, Trial Exhibit GST-8011 (the "Trial Exhibit"), which was submitted in connection with Garlock's estimation hearing.  The Trial Exhibit provides a detailed explanation of *how the information contained in the 2019 Exhibits was instrumental* in demonstrating that personal injury asbestos plaintiffs withheld exposure evidence in connection with litigation against Garlock in the tort system.

22.    For example, "Waters & Kraus placed Mr. Treggett on 2019 statements in eleven bankruptcy cases, beginning only two months after trial in December 2004, certifying that Mr. Treggett had been injured by asbestos-containing products made, distributed, or sold by the debtor companies.  Yet, during his tort case, Mr. Treggett identified *none* of the exposures underlying those certifications under penalty of perjury in the 2019 statements.  In all, the Trust claims, ballots, and 2019 statements evidence twenty-two exposures not identified in discovery."  Trial Exhibit, Pg. 5.

23.    In short, Honeywell has legitimate reasons for accessing the 2019 Exhibits.

C.    **TAC Claim:**

**"The Motion clearly seeks information for use in other cases as an end run around properly limited discovery and the documents cannot serve the Movants' stated purpose."**

24.    The TAC argues that the Access Motion constitutes an "end-run around properly limited discovery" and that the 2019 Exhibits "could be sought in discovery subject to court oversight in those underlying proceedings if they were actually relevant."  Objection ¶¶ 1-2, 33.

25.    The District Court rejected this same argument in *Motions for Access*.  488 B.R. at 298 ("But just because Garlock might have another mechanism for obtaining the information it seeks here does not . . . diminish Garlock's right to pursue access through the process it is pursuing in this Court.").

26.    As a general matter, a third party does nothing improper when it exercises a right of access for the purpose of using the documents in other litigation.  To the contrary, the Supreme Court has held that third-party litigants arguably possess a *greater* claim to access potentially relevant judicial records than general members of the public.  *Ex parte Uppercu*, 239 U.S. 435, 440 (1915) ("It does not matter whether they have been used in the original cause or not, or to whom they belong.  The right to evidence to be obtained from an existing object does not depend upon having an interest in it, or, in a case like this, upon having an interest in the original cause, or upon the object being admissible or inadmissible in the cause for which it was prepared, or upon the right or want of right of the public to examine the thing.  *The necessities of litigation and the requirements of justice found a new right of a wholly different kind.*") (emphasis added); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *Bank of Am. Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir. 1986) ("The applicability and importance of these interests are not lessened because they are asserted

by a private party to advance its own interests in pursuing its lawsuits against [the parties to the original lawsuit.]").

27.    Relatedly, the Third Circuit has recognized that sharing information among actual and potential future litigants is an interest that weighs *in favor* of disclosure. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484-85 (3d Cir. 1995) ("Federal courts should not provide a shield to potential claims by entering broad protective orders that prevent public disclosure of relevant information. *The sharing of information among current and potential litigants is furthered by open proceedings . . . .*") (emphasis added).

### D.    TAC Claim:

> ***"Honeywell ignores the fact that the limited access granted by District Court Judge Stark and implemented by this Court as to these same documents in these same cases, was subject to significant restrictions."***

28.    The TAC argues that Honeywell "ignores" the "stringent" and "significant" restrictions that were imposed on Garlock's access to the 2019 Exhibits. Objection ¶¶ 52-56. Namely, that the order in *Motions for Access* permitted Garlock access to the 2019 Exhibits "solely for the purpose of using them in connection with the estimation proceedings in its own bankruptcy case."[5]

29.    The TAC's argument misses the mark. The District Court's holding that "the 2019 Exhibits are judicial records that were filed with the Bankruptcy Court, [and] there is a presumptive right of public access to them" was not premised on any restrictions to Garlock's right of access. *Motions for Access*, 488 B.R. at 298. Rather, *after* concluding that Garlock was *entitled* to access, the District Court imposed certain procedural safeguards, the majority of which are already included in Honeywell's proposed order.

---

[5] The District Court imposed other restrictions, such as redaction of social security numbers, and these restrictions are included in Honeywell's proposed order.

30.    Importantly, Garlock *consented to* the restrictions on its access to the 2019

Exhibits.  During oral argument before the District Court in *Motions for Access*, Judge Stark

stated:

> There is a couple of references [sic], at least one in your reply brief and I think
> one of the appellees also, about whether the Court could or should impose any
> confidentiality limitations if you were to prevail in this appeal.
>
> I wasn't sure whether I should infer from the argument in your reply brief that
> Garlock would be open, as a condition of obtaining some access to some of these
> exhibits, to have *some type of restriction imposed on its use*. Is that something that
> Garlock is offering or not?

Transcript of Oral Argument at 91:18-22, *Motions for Access* (D. Del. June 12, 2012)
(emphasis added).

In response, counsel to Garlock consented to restrictions on its access, stating:

> Yes, *we did offer that below*, Your Honor. We think that once a Court finds that
> there is some serious injury that could be rendered, that doesn't end the question.
> The Court at that point can then tailor the disclosure to avoid that injury.
>
> Now, here, *we don't think there is an injury, but we did offer that we would keep
> the information confidential*.
>
> . . .
>
> So, yes, *Garlock is open to tailoring to address concerns by the other side*.

*Id.* at 91:23-92:4.

31.    Notably, Garlock was under significant time constraints in connection with its

estimation hearing and had limited time (and no real need) to litigate these issues.  Garlock's

only goal was to obtain access to the 2019 Exhibits for use in connection with its estimation

hearing.  Thus, Garlock was willing to agree to a number of restrictions so long as they would

not impede Garlock's sole purpose.  Honeywell is not under similar time constraints, nor does

Honeywell have a similarly narrow purpose for using the 2019 Exhibits.  *See supra* ¶¶ 16-18.

13

32.     The 2019 Exhibits should be made available to the public with appropriate redactions, but without restrictions on use, consistent with Honeywell's proposed order.  The TAC has not satisfied its burden of demonstrating that access to the 2019 Exhibits should be restricted, with respect to Honeywell or any other party, and thus the restrictions proposed by Honeywell are appropriate.  As the District Court in *Motions for Access* stated, "the sharing of information among litigants may help promote fairness and efficiency."  488 B.R. at 300.  "Also favoring access is that the issues involved here—going to liabilities arising from a mass tort—are important to the public."  *Id.* at 301.

33.     Also persuasive is that, as discussed above, the TAC apparently recognizes that Honeywell is entitled to access the 2019 Exhibits *without restrictions on use* because it chose not to object or respond to, or even be heard on, the successful attempt by Honeywell to access the 2019 Exhibits in *Garlock* and *Porter Hayden*.  *See supra* ¶ 6 (noting that each of the six law firms that comprise the TAC received notice of Honeywell's attempt to seek access to the 2019 Exhibits filed in *Garlock*).

34.     The order granting Honeywell access in *Garlock*, attached hereto as Exhibit B, provides:

> *Movants shall be free to use, transfer, or publish the Rule 2019 Filings <u>without restriction</u>*, notwithstanding any prior order of the Court, <u>provided</u> that: (1) the redactions ordered herein have been made and (2) such use, transfer, or publication is otherwise in accordance with applicable law, rules, and regulations.

*Garlock* [Docket No. 4235] (emphasis added).

Similarly, the order granting Honeywell access in *Porter Hayden*, attached hereto as Exhibit C, provides:

> Notwithstanding any prior order of this Court to the contrary, *Movants shall be free to use, transfer, or publish the 2019 Exhibits <u>without restriction</u>*, provided that: (1) the redactions ordered herein have been made, and (2) that such use,

transfer, or publication by Movants is otherwise in accordance with applicable law, rules and regulations.

*Porter Hayden* [Docket No. 1277] (emphasis added).

35.    Finally, case law is clear that where a presumptive right of access exists (as it does here), and none of the specifically enumerated exceptions under Bankruptcy Code section 107 are applicable (as is the case here),[6] courts are *not* permitted to engage in a balancing of the equities or limit the use or disclosure of the information.  *See Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Ore.)*, 661 F.3d 417, 430 (9th Cir. 2011); *In re Gitto Global Corp.*, 422 F.3d 1, 9-10 (1st Cir. 2005) ("Once the presumption of public access attaches under § 107(a), the next step in the inquiry is not to engage in a balancing of the equities, . . . but rather to determine whether the material at issue falls within a specific exception to the presumption—namely, into one of the § 107(b) categories.").

36.    In adopting these, and only these, exceptions, "Congress has articulated and codified those public policies that it believes override the public's general right to access court documents . . . [and] has balanced the harms for the bankruptcy courts.  Any other public policy concerns that may or may not arise in the context of a motion under § 107 [have] been determined by Congress to be less important than the public's right to access."  *In re Anthracite Capital, Inc.*, 492 B.R. 162,172 (Bankr. S.D.N.Y. 2013).

37.    As discussed below in Section II, Bankruptcy Code section 107 is applicable to the 2019 Exhibits, and the TAC has failed to demonstrate that any enumerated exception is applicable.  Thus, the Court is *not* permitted to limit the use or disclosure of the information contained in the 2019 Exhibits.

---

[6] Bankruptcy Code section 107 is discussed in more detail below in Section II.

38.     Neither Honeywell nor any other member of the public should be required to jump through the significant obstacles that the TAC and others are attempting to erect for the sole purpose of protecting not the interests of their supposed constituents, but their own selfish interest in keeping asbestos litigation fraud in the shadows.

## II.    The TAC Fails to Satisfy its Burden of Demonstrating That Any Exception to Bankruptcy Code Section 107 is Applicable

39.     The TAC has the burden of proving the existence of an exception to Bankruptcy Code section 107.  *See In re Roman Catholic Archbishop of Portland in Ore*, 661 F.3d at 432; *In re Anthracite Capital, Inc.*, 492 B.R. at 174.

40.     The TAC argues that the exceptions to the *mandatory* disclosure requirements under section 107 are applicable to the 2019 Exhibits.  Objection ¶¶ 34-37, 42-46.  Yet, the TAC fails to support its arguments with any evidence.  Notably absent from the Objection is any direct evidence, such as a declaration from individuals listed on any of the 2019 Exhibits.  This is unsurprising given that the TAC does not represent such individuals, let alone have any involvement in these chapter 11 cases.  The TAC did not even exist at the time the 2019 Exhibits were filed in these chapter 11 cases.[7]

41.     As a general matter, the 2019 Exhibits contain the names of creditors, which are never sealed in a bankruptcy case.  An asbestos claimant puts his or her alleged disease at issue by virtue of making a claim or participating in a bankruptcy case in the same way that an asbestos plaintiff in state court identifies the alleged disease in the first page of a complaint.  Judge Stark specifically recognized this reality in *Motions for Access*, stating that "the information about each individual in a 2019 Exhibit is the same type of information that would

---

[7] The 2019 Exhibits were filed in late 2004 and early 2005.  The TAC was established pursuant to the *Third Amended Plan of Reorganization of North American Refractories Company et al. Dated December 28, 2005*, which was confirmed by the Bankruptcy Court on November 13, 2007 and affirmed by the District Court on July 25, 2008.

have to be disclosed in asbestos-related litigation, such as in a complaint in a tort action." 488 B.R. at 301.

42. Also noteworthy is that the ballots submitted in connection with the plans of reorganization in these chapter 11 cases (with the exception of *In re Armstrong World Industries, Inc.*) were made public pursuant to an unsealing order entered by the Garlock Bankruptcy Court. *Garlock* [Docket No. 4195], *implementing Legal Newsline v. Garlock Sealing Techs. LLC*, Case No. 13-cv-00464-MOC (W.D.N.C. July 23, 2014) [Docket No. 90]. These ballots disclose each creditor's full name (including personal injury asbestos plaintiffs), last 4 digits of social security number, tabulated vote amount, and disease name—the same information included on the 2019 Exhibits. An example of the unsealed ballots that were compiled in an aggregated form is attached hereto as Exhibit D.

A.     **The 2019 Exhibits Are "Papers" "Filed in a Case"**

43. The TAC argues that the 2019 Exhibits are not "papers" "filed in a case" for purposes of Bankruptcy Code section 107, and therefore Honeywell cannot rely on section 107 in seeking access. Objection ¶ 32.

44. As a preliminary matter, Honeywell need not rely on section 107—it has a presumptive common law right of access to the 2019 Exhibits, as the District Court held in *Motions for Access*. *See supra* Section I.

45. In any event, the District Court in *Motions for Access* held (at least implicitly) that the 2019 Exhibits are "papers" "filed in a case" for purposes of section 107. 488 B.R. at 297. In referring to the 2019 Exhibits, the District Court stated that "[t]he filing of a document with a court 'clearly establishes' it is subject to the right of access." The District Court's footnote to the foregoing statement quotes the relevant language of section 107, thereby acknowledging that the

2019 Exhibits are subject to section 107.  488 B.R. at 297 n.14.  And as discussed below, *infra* ¶ 57, the District Court in *Motions for Access* explicitly cited section 107(b)(1) in holding that "Garlock is not being granted access to 'any trade secret,' 'confidential research,' 'development,' or 'commercial information.'"  *Motions for Access*, 488 B.R. at 302 n.19.  The District Court clearly believed that section 107 was applicable.

## B.    The 2019 Exhibits are Not Protected From Disclosure Under Bankruptcy Code Section 107(c)

46.    The TAC devotes nearly one-third of its Objection to arguing that the 2019 Exhibits are protected from disclosure under Bankruptcy Code section 107(c).  Objection ¶¶ 34-46.  Yet, the cases cited as support for the TAC's arguments are comprised almost exclusively of cases that do not contain a single reference to section 107.[8]

47.    Section 107(c) provides two exceptions to mandatory disclosure: (i) if disclosure of the information would create *undue risk of identity theft*, and (ii) if disclosure of the information would create *undue risk of other unlawful injury* to the individual or the individual's property.  As the TAC acknowledges, the exceptions in section 107(c) are to "be sparingly applied."  *In re 50-Off Stores*, 213 B.R. at 654.

48.    Although section 107 was enacted "to ensure that papers filed in a bankruptcy case are public records . . . the purpose of § 107(c), specifically, is to set forth a limited exception to the general rule that all records are public, allowing a court to limit public access of certain identification information *if it determines that cause exists and dissemination of the information would constitute an undue risk of identity theft*" or other injury.  *In re French*, 410 B.R. 295, 305

---

[8] *In re Peregrine Sys., Inc.*, 311 B.R. 679 (D. Del. 2004); *LEAP Systems v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011); *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985); *Glass Dimensions, Inc. v. State St. Corp.*, No. CIV.A. 10-10588-FDS, 2013 WL 6280085 (D. Mass. Dec. 3, 2013); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. CIV.A. 08-4168 MLC, 2015 WL 1138400 (D.N.J. Mar. 11, 2015); *Starks v. Meisner*, No. 14-CV-844-JDP, 2016 WL 1259434 (W.D. Wis Mar. 30, 2016); *Fulmore v. United Parcel Serv., Inc.*, Nos. 7:11-CV-18-F, 7:11-CV-91-F, 2012 WL 6016731 (E.D.N.C. Dec. 3, 2012); *Everett v. Nort*, 547 F. App'x 117 (3d Cir. 2013).

(Bankr. E.D. Tenn. 2009) (emphasis added).  The legislative history of section 107(c) further

"reinforces that the sole purpose [of] § 107(c) was to establish public access to court

documentation with very limited exceptions . . . ."  *Id.* at 306.

49.     Absent a finding of undue risk of harm, cause does not exist to restrict access, and

records must remain open to examination.  11 U.S.C. § 107(c); 2-107 Collier on Bankruptcy P

107.04 (15th 2015) ("[S]ection 107(c) requires a showing of cause.")

50.     In its Objection, the TAC fails to demonstrate that granting access to the 2019

Exhibits would create an undue risk of identity theft or any other unlawful injury to an individual

or individual's property.  Instead, the TAC states in conclusory fashion that "public release of

personally identifying information and medical information and records *certainly carries with it*

the threat of identity theft or other unlawful injury . . . ."  Objection ¶ 50 (emphasis added).

51.     A cursory review of cases that have addressed the section 107(c) exception

quickly reveals the deficiencies in the TAC's arguments.  That is, conclusory statements, without

more, cannot constitute "cause" for invoking the section 107(c) exception.  *See, e.g.*, *In re*

*Crawford*, 194 F.3d 954, 960 (9th Cir. 1999) (explaining that disclosure is not necessarily

causally related to identity theft as required under section 107(c) because that requires the two

additional elements of "(1) an identity thief and (2) a vulnerable account," and holding that "the

speculative possibility of identity theft is not enough to trump the importance of the

governmental interests behind[, *inter alia*,] § 107.").

52.     In *In re Khan*, the debtor appealed the bankruptcy court's denial of her application

to expunge her bankruptcy filing or, in the alternative, place the documents in her case under seal

pursuant to section 107(c).  BAP CC-13-1297-DPATA, 2013 WL 6645436, at *2 (B.A.P. 9th

Cir. Dec. 17, 2013).  Among the debtor's reasons for seeking this relief was a concern "about

possible identity theft [such] as her social security number and other personal information . . . ." *Id*. at *2.  In upholding the bankruptcy court's denial of the debtor's application, the Ninth Circuit B.A.P. held that "[n]one of [the debtor's] bankruptcy documents contained any identifying information that could create an undue risk of identity theft or other unlawful injury . . . ." *Id*. at *4.

53.     *Khan* showcases a proper application of section 107(c)(1) as it relates to the risk of identity theft.  Protection should not be granted simply upon a showing that some personal information will become public, as the TAC argues.  In *Khan*, there were myriad personal details in the debtor's bankruptcy petition, schedules, and related documents, all of which were publicly available.  Yet, the court held that "[t]he debtor failed to show that the bankruptcy filing contained identifying information that would place her at risk of identity theft, as she has claimed." *Id.* at *4.  In other words, the debtor failed to make any specific showing of undue risk of identity theft.  The same is true here with the TAC's argument—it has made no specific showing of *why* granting the relief requested by Honeywell would cause "undue risk."

54.     *In re Thomas* is also illustrative of the deficiencies in the TAC's argument.  No. 16-MP-2001, 2016 WL 386143 (Bankr. W.D.N.Y. Jan. 29, 2016).  There, a *pro se* prisoner filed involuntary bankruptcy petitions against several government officials, and the court found that the petitions were filed "solely to harass, injure, damage, or destroy the financial good standing and personal reputation of each of the intended Targets." *Id*. at *1.  After noting the standard set forth in section 107(c)(1), the court determined that "the *exceptional act* of rejecting the Petitioner's abusive Submissions and not making them publicly available is warranted, *given the harm that would likely be worked on the proposed involuntary debtors should the information (including their names) be made public . . . ." Id*. at *4 (emphasis added).  "Because the mere

20

docketing of the Petitioner's proposed Petitions on the Court's internet based case management system could *negatively affect the targeted involuntary debtors' financial credit standing or personal reputation*, under 11 U.S.C. § 107(c)," the court ordered that the submitted documents be sealed.  *Id.* at *3 (emphasis added).

55.     Again, in contrast, the TAC has not alleged any specific facts that support an argument of "undue risk" of identity theft or unlawful injury if the Access Motion is granted, and thus the TAC's arguments under section 107(c) must fail.[9]

### C.     The 2019 Exhibits are Not Protected Under Bankruptcy Code Section 107(b)(1)

56.     Bankruptcy Code section 107(b)(1) provides that "the bankruptcy court may . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . ."  The party seeking to protect information under this section "bears the burden of showing that the information is confidential."  *In re Borders Group, Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).  "In order for a document to be sealed, it must contain information *implicating the movant's business operations*."  *Id.* (emphasis added).

57.     The TAC argues in its Objection that the Rule 2019 Exhibits contain confidential information, and must therefore be protected under section 107(b)(1).  Objection ¶¶ 51-55.  However, the TAC again fails to explain *why* the information sought by Honeywell is confidential and deserving of protection.  The TAC does not cite a single case in which a court held that information of the type that Honeywell seeks is deserving of protection under section 107(b)(1).  And the District Court in *Motions for Access* previously held that the 2019 Exhibits

---

[9] The TAC does not appear to argue that granting Honeywell's Access Motion will result in "undue risk of unlawful injury to an individual or individual's property."  The closest the TAC comes to doing so is in stating that the information contained in the 2019 Exhibits is "highly sensitive and personal information, and deserving of full protection from access or dissemination."  Objection ¶ 48.  Of course, Honeywell rejects any argument that granting the Access Motion will result in "undue risk of unlawful injury to an individual or individual's property."

are not protected under section 107(b)(1).  488 B.R. at 302 n.19 (citing section 107(b)(1) in

holding that "Garlock is not being granted access to 'any trade secret,' 'confidential research,'

'development,' or 'commercial information.'").

58.     The cases cited by the TAC in support of its argument that the identity, addresses,

and asbestos claim information contained in the 2019 Exhibits constitutes confidential

commercial information, and is therefore deserving of protection under section 107(b)(1), are

distinguishable on their facts.  None of these cases present interests remotely similar to those that

the TAC purportedly seeks to protect.

59.     For example, in *In re Georgetown Steel Co., LLC*, the court afforded section

107(b)(1) protection where the disclosure of individual employee names and salaries would have

jeopardized the debtor's ongoing business, and potentially threatened the employees' physical

safety.  306 B.R. 542, 548 (Bankr. D.S.C. 2004).  Specifically, the court found that publication of

the employees' information would place the debtor "at a further competitive disadvantage in

retaining Key Employees" needed to continue the debtor's operations and sell its assets.  *Id.*  The

court also found that disclosing employees' identities would expose those employees to a "real

threat" of retaliation by former employees of the debtor.  *Id.*

60.     In *Borders*, the court granted section 107(b)(1) protection to information

contained in a share purchase agreement related to vendors, employees, and financial data of an

entity purchasing the debtor's assets.  *Borders*, 462 B.R. at 48.  The purchaser sought protection

of this information to protect its future interest in the acquired company.  *Id*. at 45.  The court

found that protection was warranted because the information sought to be redacted from the

purchase agreement included "confidential and commercially sensitive business information" of

both the purchaser and the target, which would "'give an unfair advantage to competitors by

22

revealing certain financial information of [the target] and the Purchaser and the terms and conditions of the proprietary, sensitive and confidential commercial agreement.'" *Id*. at 45.

61.     And in *In re Frontier Group, L.L.C.*, the court used section 107(b)(1) to protect a list of the debtor's contract counterparties, finding that releasing the list would give the debtor's competitors an unfair advantage. 256 B.R. 771 (E.D. Tenn. 2000). Specifically, the court found that the debtor's business (a physician employment agency) would have been harmed by disclosure of the list, which contained names of physicians who contracted with the debtor. Also important to the court's finding was that the list constituted the debtor's primary asset, and its disclosure would have allowed the debtor's competitors to "recruit those physicians away from the Debtor." *Id.* at 773.

62.     In each of *Frontier Group*, *Borders*, and *Georgetown Steel*, the party seeking to restrict access under section 107(c) presented the court with concrete facts that supported its arguments. This stands in stark contrast to the conclusory statements made by the TAC. And even if this Court attempted to fill in the arguments missing from the TAC's Objection, it would be unable to do so—unlike the information at issue in *Frontier Group*, *Borders*, and *Georgetown Steel*, the information contained in the 2019 Exhibits presents no threat to the TAC's business operations (to the extent the TAC even has business operations). *Borders*, 462 B.R. at 46 (Bankr. S.D.N.Y. 2011) ("In order for a document to be sealed, it must contain information *implicating the movant's business operations*.") (emphasis added).

63.     The TAC argues further that the 2019 Exhibits include "the submitting law firms' retention agreements and the confidential terms therein," and complains that this information is "interspersed among thousands of Rule 2019 Exhibits," implying that it would difficult and costly to redact. Objection ¶ 54 n.35.

64.     As a preliminary matter, Honeywell has unequivocally stated that it is not seeking

disclosure of the retention agreements.  The TAC acknowledges as much in its Objection, stating

that "Honeywell disclaims any desire to receive retention agreements."  *Id.*

65.     Furthermore, the 2019 Exhibits sought by Honeywell were previously prepared in

redacted form, excluding the retention agreements (the "Redacted 2019 Exhibits"), by Karl

Schieneman, as the Special Master appointed by this Court in these chapter 11 cases.  *See, e.g.*,

*Order Establishing the Protocol for Production of 2019 Exhibits*, *In re W.R. Grace & Co.*, Case

No. 01-01139 (Bankr. D. Del.) [Docket No. 30490].  Upon information and belief, the Clerk of

the United States Bankruptcy Court for the Western District of North Carolina retained copies of

the Redacted 2019 Exhibits on compact discs.  Thus, no additional work is necessary, and there

is no risk regarding disclosure of the retention agreements that are supposedly "interspersed

among thousands of Rule 2019 Exhibits."

66.     The TAC also claims that the Rule 2019 Exhibits "contain information that *could*

properly be characterized as work product, such as pre-litigation or preliminary determinations

that the listed individuals might be considering a claim against the debtor, as well as confidential

commercial information."  Objection ¶ 55 (emphasis added).  The TAC concludes that "some

courts have . . . fairly held [this information] to be within Section 107(b)."  Objection ¶ 55.  Once

again, the TAC resorts to making a conclusory statement lacking in specificity and legal support,

and therefore this argument, too, must fail.

67.     In any event, as discussed above, the 2019 Exhibits contain the names of

creditors, which are never sealed in a bankruptcy case.  An asbestos claimant puts his or her

alleged disease at issue by virtue of making a claim or participating in a bankruptcy case in the

same way that an asbestos plaintiff in state court identifies the alleged disease in the first page of

24

a complaint. The District Court in *Motions for Access* specifically recognized this reality, stating that "the information about each individual in a 2019 Exhibit is the same type of information that would have to be disclosed in asbestos-related litigation, such as in a complaint in a tort action." 488 B.R. at 301. To hold that the information contained in the 2019 Exhibits constitutes work product would be tantamount to holding that the most basic information necessary to plead in a complaint is work product—certainly an untenable outcome.

## III.    The TAC's Remaining Arguments Lack Merit as Well

68.    Although not relevant to whether Honeywell is entitled to the relief it seeks, two additional "arguments" made by the TAC warrant a brief response.

### A.    TAC Claim:

*"Presumably, if the NARCO Trust had any use for [the 2019 Exhibits], it would require them as part of a claims submission."*

69.    The TAC argues that because the NARCO Trust has not requested the 2019 Exhibits, the NARCO Trust has no use for the 2019 Exhibits. Objection ¶ 25. First, as described above and in the Access Motion, Honeywell intends to use the 2019 Exhibits for a number of purposes other than in connection with the NARCO Trust. Access Motion ¶¶ 12-13; *see supra* ¶ 16-18.

70.    Second, even if the NARCO Trust does not find the 2019 Exhibits useful, Honeywell may still use them in connection with its rights to audit the NARCO Trust and in making recommendations to the NARCO Trust pursuant to section 4.8(b) of the NARCO TDP. *See* Access Motion ¶ 8.

71.    Third, due to the composition of the NARCO Trust, the NARCO FCR, and the TAC, there is an inherent problem of the fox watching the henhouse. Unlike other asbestos trusts created under Bankruptcy Code section 524(g) where there is a limited *res* that is devalued

with every claim paid, the NARCO Trust gets funded in perpetuity by Honeywell.  In other words, the NARCO Trust, despite its fiduciary obligations, has no incentive to minimize or otherwise control the amount of distributions made from the NARCO Trust.

72.     These issues have been brought to the forefront of litigation between Honeywell and the NARCO Trust, the details of which do not bear reciting here.  In short, Honeywell has identified and challenged a number of actions (and inactions) by the NARCO Trust, many of which relate to whether the NARCO Trust is fulfilling its mandate of paying only "valid" claims.

## B.     TAC Claim:

> *"The procedure implemented by Judge Fitzgerald in her 2019 Orders was reviewed and approved by higher courts within the Third Circuit."*
>
> *"After the 2019 Orders were entered, certain insurers contended that the 2019 orders implemented in the Kaiser and Flintkote bankruptcies were entered in error, attacking, inter alia, that information submitted was unavailable on the public docket, except upon motion and order."*

73.     The TAC asserts that the 2019 Orders were reviewed and approved by "higher courts within the Third Circuit," specifically citing *In re Pittsburgh Corning Corp.*, No. 04-1814, 2005 WL 6128987, at *10 (W.D. Pa. Sept. 27, 2005); *In re Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008); and *In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D. Del. 2005).[10] Objection ¶¶ 10-11.

74.     Although the 2019 Orders were appealed, the TAC's statement is misleading. The decisions cited by the TAC held that certain insurance companies challenging entry of the 2019 Orders were required to follow the *specific procedures* for seeking access to the 2019 Exhibits, as established by the 2019 Orders (as opposed to *appealing* the entry of the 2019 Orders).  Because the insurers did not attempt to follow those *specific procedures* (but instead

---

[10] The TAC also references *In re Flintkote Co*.  However, the appeal in *Kaiser* and *Flintkote* were addressed in a single District Court opinion.

*appealed* the entry of the 2019 Orders), the insurers were *not* actually denied access to the 2019

Exhibits, and therefore they lacked standing to raise an access claim.[11]

75.     Of course, this was explicitly recognized by the District Court in *Motions for Access*, which rejected the parties' attempt to oppose access based on these cases.  488 B.R. at 296 (stating that "the District Court [in *Pittsburgh Corning and Kaiser*] dismissed the[] appeal for lack of standing or, in the alternative, lack of ripeness.  Moreover as the district court explained, . . . '[t]he bankruptcy court did not resolve issues relating to the right of access; rather it created a procedure to determine those issues at another time if a motion is filed seeking public access.").

76.     In short, *Pittsburgh Corning* and *Kaiser* have no bearing on the Access Motion. This is even truer today in light of the opinion in *Motions for Access*.

---

[11] As the District Court for the Western District of Pennsylvania explained in *Pittsburgh Corning*:

> The bankruptcy court in this case made clear that it was important to have the statements filed and that the issue of access would be addressed if and when a party files a proper motion. *The parties rather than appealing should have filed a motion* and permitted the bankruptcy court to develop a record with respect to whether section 107 of the Bankruptcy Code and the First Amendment and common law rights of public access mandate a right of public access or whether countervailing concerns justify the continued protection of the information. *If a motion is filed and briefed, the bankruptcy court, after notice and hearing, may well conclude that information initially protected by the 2019 Order should be filed of record for public access*. It is appropriate for the bankruptcy court to resolve this issue before this court considers the matter.

2005 U.S. Dist. LEXIS 46017 at *31-32, *aff'd* 260 Fed. Appx. 463, 465 (3d Cir. 2008) (emphasis added) (affirming because insurers "had not yet sought access or been denied access to the Rule 2019 submissions" and therefore had no ripe access claim).

## IV.    The TAC Misrepresents Certain Facts

77.    Also irrelevant to whether Honeywell is entitled to the relief it seeks are certain factual inaccuracies in the Objection, two of which warrant a brief response.

### A.    TAC Claim:

*"Honeywell has adopted a strategy of accusing asbestos victims and their counsel of fraud."*

78.    The TAC alleges that Honeywell has adopted "a strategy of accusing asbestos victims and their counsel of fraud" and "[s]eeking to misuse the Rule 2019 Exhibits to assert dubious fraud claims . . . ."  Objection ¶¶ 1, 3.  In doing so, the TAC ignores reports from the United States Congress, Federal Courts, and other sources that have recognized the rampant fraud that exists in the asbestos tort and trust systems.  *See generally* Access Motion ¶ 9.

### B.    TAC Claim:

*"The Rule 2019 Exhibits submitted in response to the 2019 Orders include, but are not necessarily limited to: . . . (6) sometimes medical records, with information including full or partial social security numbers, family histories (including causes of death of family members), results of physical examinations, chest x-rays, and lung function tests, and other similarly sensitive medical information . . . ."*

79.    The TAC alleges that the 2019 Exhibits contain medical records with family histories, results of physical examinations, chest x-rays, and lung function tests.  Objection ¶¶ 8, 44.  Honeywell has obtained and reviewed hundreds of 2019 Exhibits and has not seen a single instance of the foregoing information included in a 2019 Exhibit.  *See also Motions for Access*, 488 B.R. at 289 ("These 2019 Statements identified the name and address of the filing law firm but *did not include substantive disclosures . . . .*") (emphasis added).

## CONCLUSION

For the foregoing reasons, Honeywell respectfully requests that this Court overrule the

Objection and enter the Proposed Order and grant such other relief the Court deems just and

proper.

Dated:  September 13, 2016
      Wilmington, Delaware

                    POLSINELLI PC

                    */s/ Justin K. Edelson*
                    Justin Edelson (Del. Bar No. 5002)
                    222 Delaware Avenue, Suite 1101
                    Wilmington, Delaware 19801
                    Telephone: (302) 252-0920
                    Facsimile: (302) 252-0921

                      -AND-

                    MCDERMOTT WILL & EMERY LLP
                    Peter John Sacripanti *(admitted pro hac vice)*
                    John J. Calandra *(admitted pro hac vice)*
                    Darren Azman *(admitted pro hac vice)*
                    340 Madison Avenue
                    New York, New York 10173-1922
                    Telephone: (212) 547-5400
                    Facsimile: (212) 547-5444

                    *Attorneys for Honeywell International Inc.*