# EXHIBIT A

STATE OF SOUTH CAROLINA)
                       ) IN THE COURT OF COMMON PLEAS
COUNTY OF HAMPTON      )


ANDERSON MEMORIAL HOSPITAL,)
                           )
        PLAINTIFF,         )
                           )    TRANSCRIPT OF RECORD
        v.                 )
                           )      92-CP-25-279
W. R. GRACE & CO., et al., )
                           )
        DEFENDANTS.        )


                    MARCH 9, 2001
                    SPARTANBURG, SOUTH CAROLINA


B E F O R E:

    THE HONORABLE JOHN C. HAYES, III, JUDGE


A P P E A R A N C E S:

        DANIEL A. SPEIGHTS, ESQUIRE
        ALAN RUNYAN, ESQUIRE
        MARION FAIREY, ESQUIRE
        ATTORNEYS FOR THE PLAINTIFF

        DONALD A. COCKRILL, ESQUIRE
        P. KEVIN CASTEL, ESQUIRE
        ATTORNEYS FOR THE DEFENDANT



                    CAROLYN K. MITCHELL
                    CIRCUIT COURT REPORTER

1

<u>I N D E X</u>

2

3    Motions   --   Page 4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>E X H I B I T S</u>

| NO. | DESCRIPTION | I.D. | EV. |
|-----|-------------|------|-----|
| P-1 | Financial report | | 40 |

1     THE COURT:  This is, of course, a Hampton County matter,

2 an asbestos case assigned me by the Chief Justice, Anderson

3 Memorial Hospital versus W.R. Grace.  I believe it was two

4 weeks ago today I issued a conditional order regarding the

5 matter of class certification.  That issue is before me.

6     And I think I have received the briefs of all

7 parties at this time.  They are somewhat voluminous.  And,

8 very candidly -- I think it's over 200 pages of briefs -- it's

9 going to take me a while to read through that.  And you can

10 imagine -- well, y'all prepared them.  So you know that in 200

11 pages of briefs there are probably 200 cases or so mentioned.

12 And there are quite a few exhibits.  And also there's two days

13 of hearings.

14     But two weeks ago, in an ex parte fashion -- there

15 is no question about that -- I was approached by counsel for

16 plaintiffs concerned about information emanating through the

17 press, as I understand it, regarding defendant W.R. Grace and

18 certain legal action Grace was intending to take.

19     I issued a conditional class certification, giving

20 the defendant the right to contest that, for lack of a better

21 word.  That was timely done.  That was followed up -- and I

22 believe it was two weeks ago today.

23     But in any event, that was timely followed up by

24 counsel for W.R. Grace.  That was followed up by me by a

25 letter setting a hearing, actually, for Tuesday of this week;

4

1  but we deferred it to this date, which is Friday, the tenth --

2  or, the ninth.

3        The effect of the letter was that the Court

4  understood the matter -- the order was issued under exigent

5  circumstances and did not intend to relieve the burden of the

6  plaintiff of substantiating its right to such conditional

7  order at a hearing such as this, where W.R. Grace had a right

8  to confront that issue and defend against it.

9        So that's really where we are.

10        I do not have the entire file here.  It's a

11  voluminous file.  And we are in Spartanburg and the file is in

12  Rock Hill -- York, actually.  But I'm ready to proceed.

13        I take it, since counsel for W.R. Grace is present,

14  that the announcement of pending bankruptcy has not, in fact,

15  occurred; or else I would have simply gotten a phone call

16  saying there is an automatic stay.

17      MR. COCKRILL:  That's correct.

18      THE COURT:  Okay.

19      MR. COCKRILL:  When I got in the car there was nothing.

20      THE COURT:  Okay.

21        So I'm going to turn the matter over, first, to

22  counsel for plaintiff, just for an opening statement, and then

23  counsel for defendant to -- really just to kind of go over

24  what I have encapsulated and see if you want to make any

25  opening remarks, and then hear arguments, first as to whether

1  or not this order should remain in effect or whether or not I

2  should set it aside and wait and resolve the whole matter

3  after I have consumed all that has been sent to me.

4          I will address, up front, one concern that W.R.

5  Grace had; and that's what I call the inertia factor.   I

6  assure you -- assure everyone that I have not even come close

7  to making a decision in this because -- a final decision,

8  because I have not had a chance to digest, again, the quite

9  voluminous matter, nor have I reviewed the transcript.   So

10 there are still issues out there.

11         And the fact that the Court has taken the action it

12 has at this point, I, in my mind and personally find that to

13 have no precedential value as to what I'll ultimately find and

14 can tell you, each side, that, to the extent it is humanly

15 possible, I feel that it would have absolutely no influence on

16 me, again, having been issued only in what I considered

17 exigent circumstances.

18         One final comment before I -- and then I'll shut up

19 and let y'all talk.  And this is somewhat addressed in the

20 briefs, although counsel for plaintiff in theirs indicate that

21 they are willing to accept that burden if it exists.

22         I have no idea -- I know very little about

23 bankruptcy law.  I know a little bit about preferences.   I

24 know a little bit about secured and unsecured debts.  I can't

25 even remember whether it's Chapter 7 or Chapter 13 you need to

1    do which in which.  But I have no idea that whatever order

2    this Court issues at any point in this litigation will have

3    any influence or any effect in the bankruptcy level.  So -- I

4    don't have to really address that.  But that is an

5    observation.

6           Mr. Speights.

7    MR. SPEIGHTS:  Your Honor, we understand completely

8    everything you've said; and we're ready to argue.  I think you

9    wanted to know, first, if we have any preliminary comments.

10   We have no preliminary comments.  We are ready to proceed.

11   THE COURT:  Okay.

12          Mr. Cockrill.

13   MR. COCKRILL:  I agree.  But maybe I need to ask a

14   question to clarify something.

15          Your letter to the plaintiffs said we're going to

16   have a hearing; you need to provide further support.  And

17   that's my understanding.

18   THE COURT:  Well---

19   MR. COCKRILL:  That we are here today, based on the

20   express language in that letter, to justify the ex parte order

21   that was entered.

22   THE COURT:  Well, in effect, we're in a little odd arena.

23   And it's my fault, partially, that we're here.  But it's

24   exigencies that put us here, too.

25          When I said further support, I -- that does not

7

1   necessarily mean -- this was done with the -- on a Friday

2   morning with the representation that there was some urgency.

3   And after reviewing what I was presented and understanding

4   that there would be an opportunity for defense to set that

5   aside at an early time, I felt that I should make sure that

6   the burden is on the plaintiff to substantiate what I have

7   done.

8          And that doesn't mean they have to do it with new

9   stuff.  And I'm not asking -- I'm not going to put a

10  requirement on them that we start from scratch, because

11  they've already presented me with some material.

12         But you, in your brief, raise several matters that

13  were not at issue before me.  And that is the efficacy of the

14  order on its face, since it was granted ex parte, whether it

15  fell within either the rule, Rule 23, I think, dealing with

16  class actions---

17         MR. COCKRILL:  Right.

18         THE COURT:  ---or any other rule.  So that's an issue

19  that wasn't even before me.  I haven't even addressed that.  I

20  issued it, feeling that I had the authority to issue it.  But

21  I may not have.  And if I didn't, then I think I need to be

22  told that.  In fact, you've already told me that.

23         MR. COCKRILL:  I have told you that.

24         THE COURT:  And they need to support that.  So that's --

25  it's sort of -- I hate to not be real clear.  But I guess

8

1    we're sort of starting on a new slate to -- for them to

2    support what I have done and give you the right to tell me why

3    what I have done is not correct.

4        MR. COCKRILL:  I understand.

5            Just one other preliminary matter.  I'm a little at

6    a disadvantage.  I'm not sure what happened in the ex parte

7    hearing.  And, perhaps...

8        THE COURT:  I can tell you very little.  I received -- if

9    I say anything that is wrong, please correct me, somebody on

10   behalf of the plaintiff.

11           But on Friday morning, I think it was, I received a

12   call that, based on news reports -- or, actually, I think the

13   way it was initially couched was, We don't -- We're sort of in

14   a situation; we don't know how to proceed.  We think we may be

15   entitled to an ex parte order.

16           And I said, Well, I can't answer that over the

17   phone.  If you want to come here and make a showing, if it's

18   something I can entertain, I'll do it.  If it's something I

19   don't think I ought to touch, I will tell you right off the

20   bat.

21       MR. COCKRILL:  This is a call from the plaintiff's

22   attorney?

23       THE COURT:  Right.

24           And when they later arrived, I reviewed the

25   material, made some alterations to an order they had proposed

9

1   and then entered the order, again, based on what appeared to

2   me at the time to indicate that a possible bankruptcy filing

3   may be imminent.

4           And I did that, not -- to go back, not even knowing

5   that what I was doing would have any effect whatsoever.  The

6   bankruptcy court could very well, and may likely -- I don't

7   know -- just throw that in the trash anyway.  It may have been

8   a futile gesture on my part.

9           But this occurred over -- in that context.  And it

10  also happened to occur on the day before I was leaving on

11  vacation.  So some of the exigencies were my own, I guess.

12  And, rather than say, Well, let's wait and take this up on

13  Monday and give everybody notice, I -- that was sort of my

14  predicament.

15          And so -- or, a predicament that existed because of

16  my scheduling.

17          The showing that was made, I think, is of record

18  regarding the need for the relief and -- or, the reason they

19  thought they needed the relief.  Again, I don't know if I've

20  given them any relief.  I may not have.  I may have just

21  wasted paper in what I've signed.

22          But does that kind of bring you up to date as to...

23      MR. COCKRILL:  Yes, sir.

24      THE COURT:  All right.

25          Is that a fair representation, Mr. Speights?

10

1          MR. SPEIGHTS:  Yes, sir.

2          THE COURT:  Okay.  All right.

3               Do you want to proceed, then?

4          MR. SPEIGHTS:  Thank you, Your Honor.

5               Your Honor, I believe there are two fundamental

6     issues that are before the Court today, two issues that are

7     decisional, one of which I do not expect you to reach,

8     especially after you've already advised us a few minutes ago

9     that you are still dealing with the second issue.

10               But the first issue is, is it appropriate to

11     conditionally certify a class action as to W.R. Grace.

12               We recognize that there is a clean slate today.  We

13     don't argue to you that because you signed an order two weeks

14     ago that, therefore, we are in some superior position arguing

15     before you today.  We believe we will show you that Your Honor

16     should continue or issue a new conditional certification as to

17     W.R. Grace.

18               The only other issue that's actually pending before

19     the Court is the question on the merits, should you certify

20     the class action as to all defendants, an issue you,

21     obviously, are not going to decide today.  But I mention it

22     because there is some relation between the two.

23               I am also going to briefly discuss, and very

24     briefly, the appropriateness of the ex parte conditional order

25     you signed a couple of weeks ago.  I'm going to discuss it,

1  although I don't think it really has anything to do with the

2  reason we are here today.  It's an academic question of

3  whether the Court could enter an ex parte order two weeks ago.

4  And it's a question Your Honor has addressed in a letter to

5  me.  And I'm happy to address it because I think our request

6  and Your Honor's ruling was entirely appropriate two weeks

7  ago.  But because we have a clean slate today, it's an

8  academic question and not a question that's going to be -- to

9  influence where we go today.

10        Your Honor, I would suggest that the issues to be

11  considered today, the issue itself of whether to have a

12  conditional certification and the various sub-issues under

13  that, be considered in light of what I call four realities.

14        The first reality is, this Court is in the unusual

15  position for someone considering relief such as we've asked,

16  in the unusual position of having the benefit of a full

17  factual record.  The record, the factual record in this

18  matter, is closed.  And it was closed back in early September

19  of last year.

20        The normal situation, when somebody wants

21  conditional relief -- I will a couple of times today refer to

22  Family Court, which I did many years ago -- is for somebody to

23  call a Family judge at midnight and say, We need ex parte

24  conditional relief because the spouse of my client is about to

25  head to Georgia.  Please grant us the relief based upon some

1    verified petition.

2         Well, Your Honor is today, and was two weeks ago, in

3    a vastly superior position to that because you heard the

4    evidence for two days, you heard many arguments in this

5    matter, and you have a full factual record.

6         The second reality I'd like to address the Court's

7    attention to is the reality that W.R. Grace controls its own

8    destiny.  If it does not file for bankruptcy, then it cannot

9    possibly show any prejudice.

10        Indeed, Grace could even tell the Court -- but I do

11   not believe that it will do so, given the consequences of a

12   representation to the Court.  But Grace could even tell the

13   Court or represent to the Court that it will not file

14   bankruptcy or will not file bankruptcy unless it gives

15   reasonable notice to the Court.  And Grace, thus far, in its

16   briefs, has refused to do that.

17        So whatever tough situation we have here today, I

18   would suggest to Your Honor, is in the hands of W.R. Grace.

19   It decides its own destiny.

20        The third issue, or third reality I would mention,

21   Your Honor, is that all issues go away when Your Honor decides

22   the merits.  The question of whether it was appropriate to

23   grant conditional relief today, the question of whether it was

24   appropriate to grant it two weeks ago, the question of whether

25   there should or should not have been an ex parte order, all

1    evaporate by the very terms of the conditional order.  Once

2    you decide the merits, either way, all of these issues

3    evaporate without prejudice to anybody.

4          And, lastly, Your Honor, and without in any way

5    being presumptuous by saying this, I would suggest to Your

6    Honor that there need not be any delay after Your Honor

7    decides the merits, decides the merits in your own mind.

8    Because at the moment Your Honor turns to your law clerk and

9    says something to the effect, Let's start working on an order

10   in this matter, I've made up my mind, all Your Honor has to do

11   is to issue a form order.

12         And I just filled out two, just by way of example,

13   from Ms. Nettles' office down in Hampton.  And Your Honor

14   could enter a form order, "Plaintiff's motion for class

15   certification is granted on the merits.  A further memorandum

16   supporting this order will follow" or "Plaintiff's motion for

17   class certification is denied on the merits.  A further

18   memorandum supporting this order will follow."  And then all

19   issues will evaporate.

20         And I have no idea how Your Honor is going to rule,

21   obviously, because Your Honor has told us you don't know yet.

22   And I have no idea of the time schedule.

23         Everybody seems to be worried about time and the

24   delay.  We're worried that something's going to happen in

25   bankruptcy court; they've expressed some worries about it.

14

1   And I just wanted to make the point that I don't think we're

2   looking at an extraordinary long road before we can have these

3   issues decided.

4           Now.  That's my realities, the four realities.

5           Now.  Is conditional certification appropriate?

6           Well, first of all, what is the law?  The law in

7   this state is Rule 23.  And the law clearly and unambiguously

8   states that the Court may at any time impose such terms as

9   shall fairly and adequately protect the interests of the

10  persons on whose behalf the action is brought or defended.

11          Clearly, the Court has the power to grant

12  conditional relief under Rule 23.

13          And I ask the question, What could Anderson have

14  done?  If Anderson had waited and picked up a newspaper one

15  day, one Saturday morning, and it said that W.R. Grace has

16  filed Chapter 11 in some far away state, then certainly some

17  defendants who have castigated plaintiff's counsel as being

18  inadequate and not representing the class and castigating

19  Anderson itself for not being interested in the class, would

20  be screaming and hollering that Anderson didn't fairly take

21  some steps to try to protect the class.

22          And I'll -- hopefully, I'll convince you why these

23  steps are necessary to protect the class.  But we would be

24  criticized severely for not taking the very step we took when

25  we approached Your Honor for some conditional relief.

1    I can see right now Professor Ayer (phonetic), their

2    bankruptcy expert, testifying, once Grace is gone, on behalf

3    of one of the other defendants, saying, Well, Mr. Speights,

4    you should have tried to get some extraordinary relief.

5    The question is not whether Your Honor has the

6    power.  And, really, the question is not whether Anderson

7    should or should not have come before Your Honor and asked for

8    this relief.  I would suggest that Anderson itself once again

9    has demonstrated that it's an adequate class representative by

10   asking for the relief.

11   Anderson will not be prejudiced.  Anderson Memorial

12   Hospital will not be prejudiced if there's a bankruptcy.  It

13   has a pre-existing filed case; it will not be prejudiced.

14   It's the class which it represents that will be prejudiced.

15   And that the issue before Your Honor is not whether Anderson

16   acted properly or whether Your Honor has the power but whether

17   Your Honor should exercise your discretion and grant

18   conditional relief, or continue the order granting conditional

19   relief, by conditionally certifying the class.

20   Now, what does the record show in support of that

21   request for conditional relief?  First of all, there is

22   overwhelming evidence that Grace is headed to bankruptcy.  Can

23   I guarantee 100 percent that Grace will declare bankruptcy?

24   Of course not, Your Honor.  I don't have a hidden microphone

25   in the boardroom of W.R. Grace.  But what we do know is as

16

1  follows.

2          First of all, we don't live in a vacuum,  We know

3  and Your Honor knows, as being the state-wide jurist over

4  asbestos cases, of the history of asbestos litigation.   In

5  1982 I filed the first asbestos building case in South

6  Carolina on behalf of Richland County School District 2.   And

7  the defendants were W.R. Grace, U.S. Gypsum, National Gypsum,

8  John Manville, Celatex, and Owens/Corning.

9          And only two are left out of that group.   All the

10  others have filed bankruptcy.   And one of those two, U.S.

11  Gypsum's parent, filed a pre-packaged bankruptcy.   Grace is

12  the only one of those I originally sued in 1982 that has not

13  been touched by the bankruptcy court.   That doesn't mean that

14  they necessarily are going to bankruptcy.   But that's the lens

15  that I look through when I look at the evidence that we do

16  have.

17          The second thing, Your Honor, is the financial

18  information that we presented to Your Honor.   And if you want

19  to cross-examine me on that, I'm going to quickly have

20  Mr. Fairey answer those questions when you start dealing with

21  stock prices and all of that sort of thing.

22          But clearly, with the information we have provided

23  to you, we have shown a rapid decline in the price per share

24  of W.R. Grace, a very disturbing rapid decline, where W.R.

25  Grace is in no way the same company we were dealing with when

1   we filed this motion to certify several years ago.

2            In addition, Your Honor, we have what I believe is

3   an unprecedented announcement.  It's not just a press report,

4   Your Honor.  But it is W.R. Grace itself announcing that it is

5   seriously looking at bankruptcy as an alternative.

6            You know, it's kind of an intuitive thing that a

7   large, New York Stock Exchange company would declare to all

8   the investors and people in the financial community that it's

9   thinking about bankruptcy.  Usually it's done in the middle of

10  the night, such as Johns Mammo (phonetic) did.  We were in

11  depositions in Chicago and all of a sudden the Mammo lawyers

12  walk out.

13           But W.R. Grace itself has taken that extraordinary

14  step and announced to the world.  So it's not just a press

15  report.  It's an admission by them that they are seriously

16  considering it.  And, given their financial record, they -- it

17  seems to be almost beyond dispute that they are headed that

18  way sooner if not later.

19           What does W.R. Grace say in response to that

20  showing?  I believe W.R. Grace -- and I politely say so; we

21  don't need any more mean talk during this case.  But I believe

22  that they are guilty of a little bit of sophistry in their

23  brief when they suggest to you that they made a whole lot of

24  money last year so how could anybody suggest that, despite

25  what their officers say, they are seriously considering

18

1   bankruptcy.

2           Your Honor, we showed in our responsive brief the

3   figure that their net loss for last year was something like

4   $14 million.  And my young lawyer, Mr. Fairey, got on the

5   Internet and found out even more recent information where W.R.

6   Grace -- and I will hand this to the court reporter as an

7   exhibit, I guess, to be added at some point -- which suggests

8   their actual losses for last year were $89.7 million, at the

9   end of the first paragraph.  So that the financial condition

10  of W.R. Grace, as bad as it was when I saw you a couple of

11  weeks ago, is even worse than we thought.  So bankruptcy does

12  loom.

13          But most importantly, Your Honor, in support of our

14  position that bankruptcy appears to be imminent, is W.R.

15  Grace's brief itself.  Again, Grace has not filed any piece of

16  paper with Your Honor saying, We're not going into bankruptcy,

17  or, We are not planning bankruptcy, or, We won't file

18  bankruptcy before May or June or August or some other time.

19  It's made no representation whatsoever to Your Honor.  And I

20  think that speaks volumes.

21          So given the financial history, given Grace's own

22  representations, at its highest levels, to the press, and

23  given its recent financial picture and the absence of any

24  representation or assurance to Anderson or this Court, I

25  believe it's obvious that we've built a solid record that

19

1   there is a real danger of bankruptcy here.

2        Now.  That's only step one.  Step two is, why does

3   that matter to Anderson?  And I would suggest to Your Honor

4   that the record likewise shows that Anderson will suffer

5   severe and irreparable prejudice if bankruptcy precedes

6   certification, if there is -- you know, the best of all worlds

7   for Anderson, obviously, is the final order.  Because Grace

8   will argue that the conditional order is not as good down in

9   bankruptcy court as the final order.  But the worst of all

10  worlds for Anderson is that if W.R. Grace files bankruptcy

11  without any conditional certification whatsoever.

12       Now, why will Anderson be prejudiced, and severely

13  prejudiced?

14       Your Honor, we filed this motion three years ago to

15  certify the case.  There have been multiple briefings and

16  multiple hearings, an evidentiary hearing.  The resolution,

17  most recently, has been delayed -- and I'm not offering any

18  criticism of this because Grace asked and got permission to

19  file a brief after a transcript.  And we know, in South

20  Carolina, all transcripts, with great respect to Ms. Mitchell,

21  are usually delayed because our court reporters are all

22  overworked.  So that a hearing that started in September, the

23  transcript was not available until this year.  And so we've

24  all been sort of running in place a little bit.  But we've had

25  all of the proceedings for a certification decision in this

1    case.

2            Now.   What happens to Anderson if Grace files for

3    bankruptcy without any conditional order?  Well, if there is

4    no order, then the Courts have recognized, most recently in

5    Celatex -- and, Your Honor, this is the record in this case.

6    We talked about Celatex for hours in those two days before you

7    back in York County.   Professor Ayer, the defendant's expert,

8    and our experts addressed some of the predicaments Anderson

9    had in Celatex because we were not a class action.   So I'm not

10   just speaking lawyer-talk before you.   I'm speaking from a

11   record before you.

12           If we are not certified by Your Honor, Grace will

13   certainly take the position, as did the creditors in Celatex

14   in the Celatex bankruptcy, that we cannot be a class action in

15   that bankruptcy.   And if we are not a class action in that

16   bankruptcy, we are far inferior to other plaintiffs.

17           First of all, there will be what's called a bar

18   order.   I never imagined, Your Honor, that I'd be talking

19   about bankruptcy law, ten years ago.   But, unfortunately, I've

20   had to become acquainted with it because some of the other

21   defendants have taken me there.

22           But there will be a bar order in which the

23   bankruptcy court will say, Everybody who has a property damage

24   claim must file its claim in this court within so many months

25   or it will be forever barred from making a claim against W.R.

21

Grace.  And the bankruptcy court will provide for some notice, typically notice through newspapers and television ads, to tell people, If you have a claim against W.R. Grace, file a notice with the bankruptcy court on some form that will be created in that bankruptcy.

Well, if Anderson is a certified class, then, typically, as was done in Celatex -- and the record will reflect that -- Anderson's lawyers will file one claim form for the Anderson class; and the entire class of South Carolina building owners will be protected in that bankruptcy court. Their claims will not be automatically barred.

That does not strip Grace, or whoever is the real party in interest down at the bankruptcy court from contesting the legitimacy of the claims.  I'm right now involved in Celatex in showing people didn't miss the statute of limitations or that there's no statute of repo's involved in some other states, etcetera, etcetera.

But it means that you are a player in the bankruptcy court because you complied with the bar.  If there is no class action, then, you know, if there's asbestos in the Sumter Methodist Church, which I believe there is, it will be incumbent upon somebody from the congregation from the Sumter Baptist Church to read, you know, the newspaper and say, Hey, there's a bankruptcy; Hey, we might have asbestos; Hey, it might be W.R. Grace's; Hey, we need to file that; and, By the

22

1   way, I'm not a lawyer, I'm engaged in church business, and I

2   don't know all about this.

3   　　　　　And I will not be the lawyer, according to most

4   people, or many people, for this amorphous group of people

5   because there's no class certified as to W.R. Grace.

6   　　　　　So if there is no class, we -- many of the building

7   owners may be barred from even seeking recovery against Grace

8   in bankruptcy court.

9   　　　　　Even those who get their claim filed may lose some

10  rights.  And I don't want to drag this out too long, but Your

11  Honor expressed reservations about it; that's why.

12  　　　　　There are some claimants who have certain status --

13  a certain status in the court, in the bankruptcy court, such

14  as a pre-existing claimant, a claimant which had an active

15  lawsuit against the debtor, Grace, before the bankruptcy.

16  Anderson would be in that class.

17  　　　　　It's in a super status.  It's the best of all

18  worlds.  It has filed a lawsuit against Grace before the

19  bankruptcy.  But the class which it wants to represent would

20  not have that status as a pre-existing claimant and could not

21  get as much money or would have to go through more hoops to

22  ever get any money in the bankruptcy court.

23  　　　　　Your Honor, those who are class actions in the

24  bankruptcy court have many more voting rights.  And that's

25  reflected in the record of the September hearing.  For

1    example, class actions in the bankruptcy court had 20,000

2    votes as opposed to some church, a Methodist Church in Sumter,

3    South Carolina, trying to have a say-so in what goes on.   And

4    Anderson would have that block number of votes if it is a

5    certified class action, in my opinion.

6         In other words, if there is no class action, the

7    debtor or all the competing creditors -- I found out this in

8    the last -- I guess since 1985.  You have asbestos bodily

9    injury claimants, asbestos property damage claimants; you have

10   those who are called trades, banks and all other financial

11   institutions, all of them in bankruptcy court arguing about

12   who gets what share of this pot of money or these assets that

13   are lying on the floor of a bankruptcy court.

14         And if Anderson's putative class, if those absent

15   members are just there individually, whoever takes charge of

16   that bankruptcy, whether it's a big bank or Grace or Ron

17   Motley and Joe Wright representing the B.I. (phonetic) people,

18   whoever does it can start to try to clip off all these

19   individual claimants one by one, by sending them notices and

20   saying, Appear in bankruptcy court and we will decide whether

21   your claim is valid or not, rather than having -- be part of a

22   team that is what you are when you are a certified class

23   action.

24         So to say that there's no prejudice to -- again, not

25   to Anderson but to the absent class members, is just a --

24

closing one's eyes to reality.  There is a huge amount of prejudice.

Your Honor, the alternative for Anderson if Your Honor does not maintain its conditional certification or if Your Honor ultimately decides not to certify it is that we could move to ask the bankruptcy court to certify a class action within the bankruptcy court.  Professor Ayer testified about that at the September hearing.

That would be a huge uphill struggle, to try to get a bankruptcy court, not a court of general jurisdiction like you are, Your Honor, but a limited jurisdictional court, to try to entertain a class action proceeding with thousands and thousands of claimants there participating in it.

But if the bankruptcy court -- and I have no idea where they're going to file; they have several options.  If a bankruptcy judge says, Well, I'll entertain your motion, Mr. Speights, and we decide to file it, especially if Your Honor has withdrawn the conditional certification, we start all over again.  There I go, creating evidence -- not creating evidence but gathering the evidence, talking to the witnesses, cross-examining their witnesses, to prove what we did before you in September.

You know, I've got to contact Judge Sanders and Tom Pope, Professor Freeman, get all the team ready to go to some bankruptcy court because they undoubtedly are going to start

1  all over and attack my adequacy and my client's adequacy and

2  numerosity and all these other issues in the bankruptcy court.

3          And if we have no prior determination of that issue,

4  we are going to spend all the time and all the money and we

5  are going to take all the aggravation. And it's going to be

6  in a public forum down in some bankruptcy court moved from

7  Hampton County; and we're going to start all over again.

8          And why, why, why, which I'm going to get to in a

9  few minutes, having asked Your Honor to decide it -- Grace

10 wanted Your Honor to deal with the certification issue -- why,

11 why do we now, on the eve of having an order from Your Honor

12 that could go in our favor or against us, in Grace's favor or

13 against it, why do we want to force Anderson, after all it's

14 gone through, to have to start all over in a bankruptcy court.

15 Not to mention, Your Honor, it might be years away before

16 that's ever heard.

17          So I believe that the record is clear that there's a

18 severe threat of bankruptcy and there's a clear danger of

19 irreparable harm to the South Carolina building owners that

20 Anderson wants to represent.

21          So then we get to the last issue that I think is

22 relevant to whether the conditional order should be continued,

23 and that is, does it harm W.R. Grace.

24          I believe, clearly, we've shown harm to us. And I

25 frankly -- and I've read their brief; maybe I haven't read it

26

enough -- do not understand what Grace believes the harm is to
it in having this Court conditionally certify the class.

If Your Honor ultimately rules -- if they don't go
to bankruptcy, no harm.  If they go to bankruptcy and Your
Honor rules against the other defendants, that there should be
a class, U.S. Mineral, TNN, and U.S. Gypsum, if Your Honor
certifies a class as to the other defendants, then they have
had their full day in court before Your Honor.  They have
produced all of their record.

And why -- W.R. Grace's only complaint then is,
Well, Judge Hayes decided it rather than some bankruptcy judge
deciding it.  And I don't think that's harm.  That's, in
effect, sort of a judge-shopping idea, that we don't want
Judge Hayes to decide it, we want a bankruptcy judge to decide
it.

You've had the full record.  And, Your Honor, if you
deny class certification for U.S. Mineral and TNN and U.S.
Gypsum, if you said, Mr. Speights, Mr. Runyan, Mr. Fairey,
Mr. Hill, thank you for your presentation but you have not
persuaded me to certify a State class action, good luck to
you, the next day Grace is down in bankruptcy court and
saying, Your Honor, we have Judge Hayes' finding against the
other defendants, no class; his conditional order should be
vacated.  No class, according to Judge Hayes.  And we would be
hard-pressed to convince a bankruptcy court to certify a class

27

1   now against Grace when Your Honor's heard the complete trial

2   with Grace and all the other defendants there.

3          So I don't know what their argument is, that there

4   is any prejudice involved.  I can understand the knee-jerk

5   reaction of, you know, We don't like it, it's a conditional

6   certification before we get to the final order.

7          Your Honor has already assured W.R. Grace and

8   assured the plaintiff that you have not reached a final

9   decision and this order will in no way affect your

10  consideration of the merits of this case.

11         Your Honor, the other point I make -- I started to

12  predict something Grace would say; but I'll wait.  I might

13  take two minutes in reply if they say it.

14         The only other point I want to address right now,

15  Your Honor, is your ex parte relief.  I want to assure Your

16  Honor that we did not appear before you lightly and ask you to

17  issue an ex parte order.  Mr. Runyan, Mr. Hill, Mr. Fairey,

18  and Ms. Stenmayer (phonetic), who is not here today, and I, we

19  met and talked and re-talked and researched and argued and

20  debated.  Because it's a rather -- you know, it's an unusual

21  thing, at least outside of the Family Court area, to approach

22  the Court and ask for an ex parte order.

23         But we determined, and I believe Your Honor

24  certainly agreed with us when you issue the order, that Your

25  Honor had the authority to issue an ex parte order.  That's

1   clearly, despite -- the briefs are more detailed on this

2   point.  But, clearly, the South Carolina rules recognize ex

3   parte orders; clearly, the South Carolina Supreme Court has

4   recognized ex parte orders; and there are limited

5   circumstances where they can and should be granted, that you

6   have the authority to do it.

7           And, given our fiduciary responsibilities to the

8   class, we felt it was incumbent upon us to ask Your Honor to

9   enter that order in an ex parte way, without prejudice to

10  Grace -- and it is without prejudice to Grace because of the

11  risk that, in our view, at any moment Grace could declare

12  bankruptcy.

13          Facing that financial record, facing what we know

14  just happened to Armstrong and Owens/Corning Fiberglass,

15  facing that announcement by W.R. Grace, we would have been

16  derelict to our client if we didn't ask Your Honor for that.

17  Because the worst thing in the world would have been to file

18  some motion and Your Honor -- we didn't know you were going on

19  vacation, but Your Honor would go on vacation and it may have

20  been ten days, two weeks before you hear it; and all of a

21  sudden we pick up the newspaper and W.R. Grace is in Chapter

22  11 and everything we've done in trying to represent the class

23  in the past three years, not to mention the last ten years,

24  goes down the tube.

25          So I believe, Your Honor, that we have ample

29

1    justification for going to Your Honor and asking for ex parte

2    relief.  And I think it was entirely appropriate that you

3    issue it.

4            Your Honor, I've got some other comments; but I

5    think I'll sit down and let the other side go unless you have

6    some questions.

7        MR. COCKRILL:  Good afternoon.

8        THE COURT:  Good afternoon.

9        MR. COCKRILL:  The issue is not whether Grace may or may

10   not file for bankruptcy.  That may happen.

11           The issue is not whether Grace announced it was

12   considering that.  That did happen.

13           The issue is not whether Anderson would be better

14   off with conditional certification as opposed to no

15   certification whatsoever.  They may or may not, but that's

16   irrelevant.

17           And what we said in our brief is true and it remains

18   unaddressed.  And that is that filing bankruptcy is a neutral

19   act, it is a lawful act.  Congress recognizes that the

20   bankruptcy laws provide some good things.  They protect

21   creditors.  But it is a lawful thing to do.

22           And we say in our brief can the plaintiff point to

23   any authority in any jurisdiction authorizing the Court to

24   conditionally certify a class for the purpose of improving a

25   litigant's posture in a future bankruptcy.  And they don't do

1    it.  Because there is no such authority.

2         And they point to Rule 23(D)(2) that has some

3    general language about the Court being able to issue such

4    orders as may ensure that people are treated fairly, or

5    something like that.  It's general language.

6         That's certainly -- the South Carolina Legislature,

7    by putting that language in, does not authorize the Court to

8    issue an order penalizing a party, a litigant, or taking

9    adverse action against a litigant for exercising a legal

10   right.

11        And what Mr. -- the example Mr. Speights gave about

12   exigent circumstances where you call the Family Court judge, I

13   agree with him; or you call the judge and say, They're getting

14   ready to knock down my house.  But what you're complaining of,

15   Dad taking the kid to Georgia, knocking down my house, is an

16   illegal act or it's an act that's going to interfere with a

17   legal right that the party seeking the relief has.  It's

18   actionable.  It's in the nature of a TRO.

19        None of that has anything to do with exercising a

20   legal right that's not actionable.  And so whether Grace is

21   going to file bankruptcy -- I don't know whether they will or

22   not.  They very well might.  That has nothing to do with this.

23        What we're concerned about is issuing an order under

24   the guise of Rule 23(D)(2) that's just totally unauthorized.

25   They haven't pointed to a single case.  All they point to is

31

1    some general language.

2    Now, Mr. Speights -- I'm going to take him at his

3    word.  I'm going to assume he's correct when he says Anderson

4    is going to be prejudiced if they -- if Grace files bankruptcy

5    and there's no conditional certification.  And he mentioned

6    this thing called the bar order.  And that says, Hey, if

7    you've got a claim against Grace, get it in by this date or

8    you're out of luck.

9    And if there's no class certification, gee, all

10    these individual -- or, the few individual building owners

11    that may be in South Carolina, if they don't get it in,

12    they're out of luck, whereas if Anderson can file that class

13    claim then Anderson will file it and everybody's covered.

14    Let's assume that's true.  From Grace's standpoint,

15    Grace would rather Anderson not be a certified class.  Because

16    Grace, in bankruptcy, would like to see those other building

17    owners' claims fail.  Grace doesn't want to pay them part of

18    the pot.  So that's where the harm to Grace is, under his own

19    analogy.

20    But let's assume he's right and that Grace would

21    benefit by Anderson not being a class.  Let's assume that's

22    correct.  Then the next thing, I come in to you, Judge, and I

23    say -- ex parte, or with them here -- how about conditionally

24    -- issue a conditional order, before you've had a chance to

25    fully consider it on the merits, denying class certification

32

1   because we might file bankruptcy and it'll be to our advantage

2   for this class certification to have been denied.

3           There's no substantive difference.  And, of course,

4   if you did that -- you wouldn't do that, and you shouldn't do

5   that.  But there's no difference in me asking for you to

6   conditionally rule that the class is not to be certified as to

7   conditionally rule that it is.  Both would be orders based on

8   the exercise of a legal principle.

9           So.  You know, we can talk all day about the stock

10  price, the economic condition, what may happen in bankruptcy.

11  It all comes down -- I did a lot of reading on TRO cases.  And

12  there is not a single case that I know of in this state or

13  anywhere else where you can prohibit someone or tell -- or you

14  issue an order that adversely affects someone because they're

15  going to exercise a legal right.  And filing for bankruptcy is

16  exactly that.

17          And the way this argument is turned is, Oh, Grace

18  hasn't told us they won't file.  They're absolutely right.  I

19  haven't told them that.  And it doesn't matter.  That's

20  irrelevant.  Or, Grace -- Grace will only be harmed if they

21  file for bankruptcy.  If they don't file for bankruptcy, this

22  conditional order is of no effect.  That's the old, "The

23  defendant holds the keys to the jail."  That's completely

24  irrelevant.

25          What he's saying is, Well, Grace can avoid being

33

1   harmed by this by forbearing or -- or not exercising a legal

2   right.  And the Court shouldn't put a party in the position of

3   having to forgo a legal right in order to avoid some type of

4   penalty.  That's just -- that's just not authorized.

5          And, you know, Mr. Speights talks about I'm not sure

6   the Court has the power.  Because I don't know what the word

7   power means.  You can, obviously, put me in jail right now.

8   You have the power to do that; but it wouldn't be appropriate.

9   Perhaps for Mr. Castel it would be; he's from New York.  But

10  for me it wouldn't.

11         But I don't think what the Court did -- and I

12  understand that's -- I don't think that's authorized under the

13  law.  I can find absolutely zero authority.  And that's why we

14  were very explicit in the brief.  Give me a case.  Give me a

15  case.  Don't point to the general language under Rule 23 that

16  says the Court can issue such orders as justice may require.

17  Tell me where a judge has done that in order to give some

18  litigant a leg up, based on an order that's issued after --

19  you know, on less than a complete record.

20         Now, Mr. Speights is right about something.  In some

21  of these drive-by jurisdictional or drive-by class

22  certification rulings, the Court didn't have the advantage

23  that this Court has.  But there is a record in this court.

24  We've briefed it.  We had a two-day hearing.  But the Court --

25  you very candidly acknowledged you're not ready to rule on the

1    merits; you're nowhere near there.  You haven't read the
2    briefs, you haven't the transcripts.
3           So to the extent that Mr. Speights is trying to
4    imply that any ruling you get conditionally is somewhat based
5    on the merits, I don't think that's correct.  And I didn't
6    understand the Court to be saying that its ruling was in any
7    way premised upon the merits.  It was simply a ruling that was
8    issued by the Court based upon the Court's belief that the
9    necessary exigent circumstances existed.
10          But we do -- we want any decision, we want it to
11   come on a full record, after the Court's had ample opportunity
12   to duly consider that full record.  And if the Court issues a
13   conditional order, that's -- we're not getting that.  We're
14   getting, again, an order that's being issued solely to place
15   someone, a party, in a better position in a bankruptcy.
16          And that assumes -- that assumes that Mr. Speights
17   is correct when he says that Anderson would be in a better
18   position if they're certified.  He mentioned that classes have
19   more voting rights.
20          But the specific testimony at the hearing in
21   September from Mr. Speights was that Anderson, as an
22   uncertified class, has the same voting rights as the certified
23   classes, such as the schools' case.  And, in fact, if you go
24   back and look at that testimony, it didn't look like Anderson
25   was disadvantaged by not being a class in the Celatex

1   bankruptcy.

2          But whether they are or aren't really isn't the

3   issue, Judge.  The issue is whether there is any authority to

4   do this.  And it all goes back to the fact that bankruptcy is

5   a neutral act and it's a lawful act.  And a party shouldn't be

6   penalized or injured in any way from performing that.  And

7   there's no authority for a court to step in unless someone's

8   legal rights are being interfered with in a way that would be

9   actionable later on down the road.

10          Thank you.

11   MR. SPEIGHTS:  Well, Your Honor, I don't know of any

12   better legal authority than the rule.  The rule is now being

13   triggered because Grace is taking the unprecedented action of

14   announcing it is headed to bankruptcy.

15          But even without the rule, Your Honor -- we keep

16   talking family law today.  I think I'm the only one in my firm

17   that's ever done any family law.  And I hope my twenty-year

18   hiatus from it has not made me forget all of it.

19          But even in family law, if we had a -- if we had a

20   man in Georgia and a woman in South Carolina and we were

21   litigating the custody of that child here, Mr. Cockrill has

22   said there's no authority involved when the man goes to

23   Georgia, after the matter has been heard here and the Court is

24   waiting on the -- everybody's waiting on the Court's decision,

25   go over to Georgia and get an order from the Georgia court

36

1   giving him custody.

2          And Courts all the time issue orders in this case to

3   protect their own jurisdiction and to protect what's before

4   them, to keep -- not to give up an advantage -- and this is

5   the main point I want to get to -- but to allow us to maintain

6   our position after being before Your Honor for ten years and

7   after having heard this matter over three years, culminating

8   in the hearing.  We are not here to improve our position, Your

9   Honor.

10         Let me see if I can just cut through it all and

11  summarize it in a minute.  What's really going on here is

12  this:  three years, seven briefs, evidentiary hearing, and

13  everything else later, we were on the edge of having the

14  decision on the merits on this case.

15         If Grace goes out and files bankruptcy and Your

16  Honor doesn't have an order, after Grace has done everything

17  it can to fight this issue before Your Honor for all these

18  years, it's going to look at all these other defendants and

19  say, Bye-bye, bye-bye, other defendants; bye-bye,

20  Mr. Speights, Mr. Runyan.  We're gone and you can't do

21  anything; we're now in bankruptcy court.

22         They are improving their position if we were going

23  to get an order to certify.  And that is our concern, that

24  after all this time, if we are before Your Honor and if Your

25  Honor decides that we should be a class action against the

1   other defendants, W.R. Grace would go down to bankruptcy court

2   and say, Doesn't matter; we were out of there before Judge

3   Hayes' ruling.

4         But let me tell you why their argument is vacuous,

5   why it has no merit whatsoever.  Because if Your Honor rules

6   not in our favor but against us in this court, after they have

7   gone to bankruptcy, if Your Honor issued an order to

8   Mr. Miller and Mr. Dowd (phonetic) and Mr. Outz and said, No

9   class action, do you know what they're going to do?

10         They're going to go down to bankruptcy court.  And

11   if we try to get a class action, they're going say, Here is

12   Judge Hayes' order denying a class in the case after we left;

13   and, Bankruptcy Court, you cannot certify a class because

14   Judge Hayes has already fully considered these issues.  As a

15   matter of law, collateral estoppel, whatever, you cannot

16   certify a class action in bankruptcy court because Judge Hayes

17   has considered it.

18         So they want the best of both worlds.  They want to

19   be able to use an order they like, in the bankruptcy court;

20   and they want to be in a position of being completely free

21   from an order they do not like, in the bankruptcy court.  And

22   that's the Anderson prejudice and that's why they're trying to

23   enhance their position and Anderson is just simply trying to

24   maintain its position until Your Honor fairly considers the

25   matter on the merits.

1              Thank you.

2          MR. COCKRILL:  Very briefly.

3              I'm not a family lawyer.  That has nothing to do

4      with what we're here for.  Mr. Speights says they're not here

5      to improve their position.  I'm reading from the emergency

6      petition for a rule to show cause.  And it says that

7      bankruptcy courts treat previously certified class claims much

8      more favorably than other claims.  And, absent prior

9      certification, a bankruptcy court may view the Anderson, South

10     Carolina class as individual claimants on par with the

11     multitude of individual claimants from across the country.

12             That sounds to me like Anderson is here to improve

13     their position from individual claimant to a class claimant

14     which, Mr. Speights says, in his affidavit, in his experience

15     certified class claimants going into bankruptcy get more

16     favorable treatment.

17             And secondly, Mr. Speights strings out this

18     hypothetical about if you don't grant the conditional order,

19     Grace goes into bankruptcy, that if you deny class

20     certification against the remaining defendants, then what's

21     Grace going to do?  They're going to jump up in bankruptcy

22     court when Anderson tries to have it certified in bankruptcy

23     court and waive Judge Hayes' ruling.  I just say that's pure

24     speculation.  No one knows what's going to happen.

25             But it does show something important.  It shows that

                                 39

1    Anderson is asking the Court to issue extraordinary relief

2    based on nothing more than speculation and what-ifs and these

3    speculative scenarios.  And I submit to the Court you need a

4    lot more to do it than that.

5            Thank you.

6        THE COURT:  All right.  I'm going to continue the order

7    in effect right now so I can mull over this.

8            Unfortunately, the timing of all this is not the

9    best for the parties or for the Court because I'm supposed to

10   start a death penalty case on Monday.  But -- and that'll take

11   at least ten days.

12           But I will, in my spare time, work on this.  Because

13   I don't want there to be a -- I want to, the best I can,

14   whatever the ruling is, whichever party prevails, it be not

15   like a pocket veto, that I just didn't get around to doing it

16   at the time.  So I will work on it as promptly as I can.

17       MR. SPEIGHTS:  Thank you, Your Honor.

18       MR. COCKRILL:  Thank you, Your Honor.  Appreciate your

19   time.

20       THE COURT:  See y'all later.

21           (Financial report received into evidence and marked

22           as Plaintiff's Exhibit No. 1.)

23           ***END OF REQUESTED TRANSCRIPT OF RECORD***

24

25

STATE OF SOUTH CAROLINA )
                        )          CERTIFICATE
COUNTY OF SPARTANBURG    )


I, the undersigned, Carolyn K. Mitchell, Official Court Reporter for the Seventh Judicial Circuit of the State of South Carolina, do hereby certify that the foregoing is a true, accurate, and complete transcript of record of all the proceedings had and evidence introduced in the trial of the captioned case, relative to appeal, in the Common Pleas Court for Spartanburg County, South Carolina, on the 9th day of March, 2001.

I do further certify that I am neither of kin, counsel, nor interest to any party hereto.


April 6, 2001

CAROLYN K. MITCHELL
CIRCUIT COURT REPORTER