## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W. R. GRACE & CO., et al.,[1] | ) Case No. 01-01139 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) **Hearing Date:** November 30, 2016, at 11:00 a.m. |
| | ) **Objection Deadline:** November 4, 2016 at 4:00 p.m. |
| | ) |

## MEMORANDUM IN SUPPORT OF THE REORGANIZED DEBTORS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. BANKR. P. 7056 FOR PARTIAL DISALLOWANCE OF CLAIM NO. 7021, FILED BY NORFOLK SOUTHERN RAILWAY

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors

---

[1]    The Reorganized Debtors comprise W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc., or "Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn.").

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ 1

Introduction ................................................................................................................... 1

Background ..................................................................................................................... 6

    I.    The Right-of-Way and Related Agreements.................................................... 6

    II.    Mr. Kirkland's Accidents ............................................................................... 7

        A.    The January 23 Accident ...................................................................... 7

        B.    The Norfolk Southern January 23 Accident Reports............................. 9

        C.    The January 26 Accident ...................................................................... 9

    III.    The Georgia State Court Action.................................................................... 10

    IV.    Current Procedural Posture ......................................................................... 11

Argument ...................................................................................................................... 12

    I.    Disallowance of the Indemnification Claim Is Ripe for Summary Judgment ................... 12

    II.    Norfolk Southern Has Failed to Carry Its Burden of Proof ......................... 13

    III.    Norfolk Southern Cannot Use the Georgia State Court Action Trial Record to Carry Its Burden of Proof............................................................................................................ 17

    IV.    Grace May Cite to the Georgia State Court Action Under the Doctrine of Defensive Collateral Estoppel....................................................................................................... 18

Conclusion .................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Atlantic Coast Line R.R. Co. v. Whetstone*, 243 S.C. 61, 82 (S.C. 1963) ..................................... 17
*Carter v. Atlanta & St. Andrews Bay R. Co.,* 338 U.S. 430 (1949) ............................................... 18
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .................................................................. 12
*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) ....................................... 4, 14, 15, 17
*In re Hartman*, 2009 Bankr. LEXIS 3823, *9-10, 2009 WL 4043096 (Bankr. D.N.J. Nov. 20, 2009) ............................................................................................................................. 17
*In re Landsource Cmtys. Dev. LLC*, 485 B.R. 310, 316 (Bankr. D. Del. 2013) .......................... 16
*J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996) ............................................................................................................................. 13
*Jordan v. Greentree Consumer Disc. Co. (In re Jordan)*, 403 B.R. 339, 352 (Bankr. W.D. Pa. 2009) ......................................................................................................................... 4, 19
*Lampe v. Lampe*, 665 F.3d 506, 514 (3d Cir. 2011) .................................................................. 14
*Maher v. Del. & Hudson Ry. Co.*, 215 Fed. Appx. 169, 171 (3d Cir. Pa. 2007) ......................... 17
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) .................. 13
*Norfolk & Western Ry. v. Ayers*, 538 U.S. 135, 141 (U.S. 2003) ............................................... 18
*Norfolk Southern Ry. v. Sorrell*, 549 U.S. 158, 176 (U.S. 2007) ................................................ 18
*Peloro v. United States*, 488 F.3d 163, 175 (3d Cri. 2007) ................................................... 4, 19
*Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 506-507 (U.S. 1957) .............................................. 18
*Sarko v. Penn-Del Directory Co.,* 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd* 189 F.3d 464 (3d Cir. 1999) ....................................................................................... 13
*Shenker v. Baltimore & O. R. Co.*, 374 U.S. 1, 7 (U.S. 1963) .................................................... 17
*Trustees of University of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890, 905 (3d Cir. Pa. 1987) ...................................................................................................................... 3, 4, 15, 16, 18
*Wahoski v. Am. & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123 (Bankr. D. Del. 2009) ....... 13
*Wells Fargo Bank, N.A. v. HomeBanc Corp. (In re Homebanc Mortg. Corp.)*, 2012 Bankr. LEXIS 6021, 2013 WL 211180, at 25 (Bankr. D. Del. 2012) ................................................. 13
*Wong Wing Foo v. McGrath*, 196 F.2d 120 (9th Cir. 1952) ........................................................ 3

**Rules**

Fed. R. Bankr. P. 7056 ................................................................................................... 1, 13, 14
Fed. R. Civ. P. 56(c) ............................................................................................................... 13
Fed. R. Evid. 104(b) ............................................................................................................... 16
Fed. R. Evid. 401 ................................................................................................................... 18
Fed. R. Evid. 801(d)(2) ............................................................................................................ 5
Fed. R. Evid. 803(6) ........................................................................................................... 5, 16
Fed. R. Evid. 804(b)(1)(A)-(B) .................................................................................................. 4
Fed. R. Evid. 901(a) ........................................................................................................... 5, 16

**INTRODUCTION**

On March 27, 2003, Norfolk Southern Railway Company ("Norfolk Southern") filed a proof of claim (the "Norfolk Southern POC," the claim being the "Norfolk Southern Claim"), a copy of which is attached as Exhibit A to the Reorganized Debtors' *Proposed Findings of Uncontested Facts in Support of the Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance Of Claim No. 7021, Filed by Norfolk Southern Railway* (the "Proposed Findings of Uncontested Facts").[1]  The Norfolk Southern POC sought, among other things, contractual indemnification for a $1.5 million settlement (the "Settlement"), plus related attorneys' fees, etc., arising from a matter brought by Lester F. Kirkland against Norfolk Southern in Georgia state court (the "Georgia State Court Action").  The complaint that commenced the Georgia State Court Action (the "Kirkland Complaint") is attached as Exhibit E to the Norfolk Southern POC.

The Kirkland Complaint states that Mr. Kirkland suffered injuries in two separate accidents.  (Proposed Findings of Uncontested Facts at ¶¶ 37-52; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶¶ 5-6.)[2]  It further states that Mr. Kirkland was a Norfolk Southern employee at the time of the accidents, acting within "the line and scope of his employment."  (Proposed Findings of Uncontested Facts at ¶ 36; Proposed Findings of

---

[1]    The Proposed Findings of Uncontested Facts are attached as Exhibit I to *The Reorganized Debtors' Motion for Summary Judgment Pursuant to Fed. R. Bankr. P. 7056 for Partial Disallowance of Claim No. 7021, Filed by Norfolk Southern Railway*, which was filed contemporaneously herewith.  The Proposed Findings of Uncontested Facts are hereby incorporated by reference.  The Reorganized Debtors reserve the right to file one or more additional motions for summary judgment on other issues as necessary.

The Norfolk Southern POC also documented claims for unpaid freight service charges in the amount of $20,415.52 and environmental clean-up services and truck scale fees totaling $2,102.  The Reorganized Debtors have conceded that $6,922.35 arising from certain unpaid freight charges and the environmental clean-up services and truck scale fees should be Allowed.  Norfolk Southern has conceded that the remaining $15,595.17 of the asserted freight charges were paid.  The sole remaining issue is the indemnification claim.

[2]    The Georgia State Court Action was captioned *Lester F. Kirkland, Jr., v. Norfolk Southern Railway Co.*, C. A. No. 45273.

Uncontested Facts Exhibit A, Kirkland Complaint, at ¶ 3.)    The accidents occurred on consecutive workdays (Friday, January 23, and Monday, January 26, 1998).  (Proposed Findings of Uncontested Facts at ¶ 37-52; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶¶ 5-6.)  Each accident occurred on a rail car that at the time of the respective accident was consigned to Norfolk Southern and attached to a train owned and controlled by Norfolk Southern, while that train was stopped at a facility that was also owned and controlled by Norfolk Southern.  (Proposed Findings of Fact at ¶¶ 37, 40-41, 48-51; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶¶ 5-6.)

Neither accident occurred on or otherwise involved any property owned or controlled by Grace-Conn. or any other Reorganized Debtor.  Indeed, the Kirkland Complaint is entirely silent as to any involvement whatsoever by Grace-Conn. or any other Reorganized Debtor in either accident, and it did not name any of those entities as parties in the Georgia State Court Action. (Proposed Findings of Uncontested Facts at ¶¶ 24; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint *passim*.)    These allegations remain entirely uncontested by Norfolk Southern.  (Proposed Findings of Uncontested Facts Exhibit A, Norfolk Southern POC *passim*; Proposed Findings of Uncontested Facts at ¶ 4; Proposed Findings of Uncontested Facts Exhibit C, *Preliminary Response of Norfolk Southern Railway to Debtors' Objection to the Proof of Claim Filed by Norfolk Southern Railway* [Docket no. 22975], the "Norfolk Southern Response.")

Notwithstanding these uncontested facts, the Norfolk Southern POC asserts that Norfolk Southern is contractually entitled to indemnification from Grace-Conn. pursuant to one or more of four separate agreements between the two parties governing rail operations at Grace-Conn.'s plant in Natka, South Carolina.  Copies of these agreements were attached to the Norfolk

Southern POC as Exhibits A-D.  (Proposed Findings of Uncontested Facts at ¶ 2; Proposed Findings of Uncontested Facts Exhibit A, Norfolk Southern POC at Exhibits A-D.)

In 2008, the Reorganized Debtors objected to the indemnification claim.  (Proposed Findings of Uncontested Facts at ¶ 3; Proposed Findings of Uncontested Facts Exhibit B, *Debtors' Objection to the Proof of Claim Filed by Norfolk Southern Railway Company* [Docket no. 22553], the "Objection.")  The Objection systematically catalogued the deficiencies in the Norfolk Southern POC, including but not limited to the fact that there is nothing in the POC that specifically identifies the particular contractual basis for the indemnification claim.  (Proposed Findings of Uncontested Facts at ¶ 3; Proposed Findings of Uncontested Facts Exhibit B, Objection *passim*.)

Norfolk Southern responded to the Objection.  (Proposed Findings of Uncontested Facts at ¶ 4; Proposed Findings of Uncontested Facts Exhibit C, Norfolk Southern Response.)  To bolster Norfolk Southern's indemnification claim, its Response used highly selective extracts from what it asserted was the trial record in the Georgia State Court Action.  (Proposed Findings of Uncontested Facts Exhibit C, Norfolk Southern Response *passim*.)  As discussed in this Memorandum, the Georgia State Court Action trial record is inadmissible for this purpose, because Grace-Conn. was not a party to that proceeding.  Fed. R. Evid. 803(8), Fed. R. Evid. 803(8) Advisory Committee note, citing with approval, *Wong Wing Foo v. McGrath*, 196 F.2d 120, 123 (9th Cir. 1952) (a prior proceeding's transcript is not admissible to prove the truth of matters asserted by a witness quoted therein); *Trustees of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 905 (3d Cir. Pa. 1987) ("Admission of prior testimony [against a non-party] through a court transcript, merely because the testimony was observed and recorded pursuant to duty imposed by law, would emasculate large portions of the hearsay rule." (citing Fed. R. Evid.

803(8)); *see also* Fed. R. Evid. 804(b)(1) (requiring party against which former testimony is being offered to have had the opportunity at the time to examine the witness whose former testimony is being proffered and the witness must be unavailable for examination in the instant proceeding).

In conjunction with certain, subsequent settlement negotiations, Norfolk Southern provided informal discovery to the Reorganized Debtors in the form of what it stated was the entire trial record for the Georgia State Court Action—which of course Norfolk Southern cannot use to carry its burden of proof. *See, e.g.*, Fed. R. Evid. 803(8); Fed. R. Evid. 804(b)(1); *Trustees of Univ. of Pa.*, 815 F.2d at 905. Norfolk Southern has not provided the Reorganized Debtors with any other support for its indemnification claim.

As matters now stand, Norfolk Southern has failed to carry its burden of proof as to its indemnification claim because it has failed to adduce *any* relevant, admissible evidence to support that claim, whether in its POC, its Response or otherwise. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence") (internal citation omitted). Norfolk Southern's indemnification claim is further gutted by admissions that it made in the Georgia State Court Action trial record—admissions which are admissible against Norfolk Southern under the modern doctrine of non-mutual issue preclusion. *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). Other admissions by Norfolk Southern, found in the Norfolk Southern POC, the Norfolk Southern Response and Norfolk Southern's own business records, confirm that Norfolk Southern's indemnification claim is without merit. *See, e.g., Jordan v. Greentree*

*Consumer Disc. Co. (In re Jordan)*, 403 B.R. 339, 352 (Bankr. W.D. Pa. 2009) (representations in a proof of claim are judicial admissions) (internal citations omitted). In particular:

- Norfolk Southern's own business records and admissions in the POC and Response establish that Grace had no involvement in the January 23 accident:

  - Norfolk Southern produced in the Georgia State Court Action trial record two accident reports on the January 23 accident (copies of which are attached to the Proposed Findings of Uncontested Facts as Exhibit D and Exhibit E, respectively; collectively, the "Norfolk Southern January 23 Accident Reports"),[3] both of which state that Mr. Kirkland fell from a rail car shipped from J.M. Huber, another kaolin producer unrelated to any Grace entity; and

  - The January 23 accident occurred while the rail car at issue was consigned to Norfolk Southern's control and attached to a Norfolk Southern-owned and –controlled train, as that train was stopped on Norfolk Southern track at a siding that was likewise Norfolk Southern-owned and –controlled;

- Norfolk Southern likewise has not established that it is entitled to an indemnification claim for the January 26 accident:

  - The Kirkland Complaint states that the January 26 accident also occurred on a rail car consigned to Norfolk Southern's control, when that rail car was attached to a Norfolk Southern-owned and –controlled train on Norfolk Southern track, stopped at a facility (the "Aiken Depot") that was likewise Norfolk Southern-owned and –controlled;

  - Norfolk Southern attempted in the Norfolk Southern Response to trigger the indemnification provision in a 1990 agreement governing the use of a retractable spout to be used by Grace-Conn. to fill its rail cars with a product called kaolin. However:

    - The documents attached to the Norfolk Southern Response to support this allegation are: (i) not authenticated; and (ii) inadmissible as evidence in support of the Norfolk Southern Claim as they were culled from the Georgia State Court Action, a matter to which none of the Reorganized Debtors was a party; and

    - Even if those documents were admissible, there is nothing in them establishing that Grace-Conn. actually used the retractable spout at issue to fill the rail car

---

[3]  For purposes of this Memorandum and the Reorganized Debtors' motion for summary judgment, the Norfolk Southern January 23 Accident Reports are properly authenticated by virtue of Norfolk Southern having produced them to the Reorganized Debtors. Fed. R. Evid. 901(a) (evidence must be authenticated or identified "by evidence sufficient to support a finding that the matter in question is what its proponent claims"). These reports are also not hearsay. Fed. R. Evid. 801(d)(2) (opposing party's statements made by an employee "within the scope of … [the employment] relationship" are not hearsay); Fed. R. Evid. 803(6) (Records of Regularly Conducted Activity).

from which Mr. Kirkland fell on January 26 (or, for that matter, the January 23 rail car), which means that the 1990 agreement cannot form the basis for Norfolk Southern's indemnification claim; and

- Nothing in either the Norfolk Southern POC or Response specifically implicates any other agreement in the January 23 or January 26 accidents.

In view of Norfolk Southern's failure to adduce any admissible evidence in either its POC or its Response to support its indemnification claim, the Norfolk Southern Claim should be disallowed as to the indemnification claim and the paid freight charges, and should be Allowed only in the amount of $6,922.35.

**BACKGROUND**

## I.    The Right-of-Way and Related Agreements

1.    Grace-Conn. and Norfolk Southern are party to four agreements (copies of which are attached to the Norfolk Southern POC):  (i) an agreement dated December 15, 1980, by which Norfolk Southern's predecessor permitted Grace to maintain and use certain structures on the right-of-way (the "Right-of-Way Agreement") adjacent to a Grace kaolin mining operation (the "Grace Plant") in Natka, South Carolina;[4] (ii) an agreement also dated December 15, 1980, whereby Norfolk Southern's predecessor agreed to assume control of and operate certain railroad track on the right-of-way (the "Grace-Leased Track") leading to and from the Grace Plant (the "Operating Agreement"); (iii) an agreement dated November 7, 1983, by which Norfolk Southern's predecessor agreed to operate an additional 477 feet of track as part of the Grace-Leased Track (the "1983 Supplemental Agreement"); and (iv) an agreement dated October 3, 1990 (the "1990 Supplemental Agreement"), by which Norfolk Southern's predecessor permitted Grace to construct an overhead loading structure with a retractable spout for loading rail cars

---

[4]    Kaolin is soft white clay that is an essential ingredient in the manufacture of china and porcelain and is widely used in the making of paper, rubber, paint, and many other products. *See* Ciullo, Peter A. (1996), *Industrial Minerals and Their Uses: a Handbook and Formulary*. (Westwood, N.J.: Noyes Publ. 1996) at pp. 41-43, 449, 467, ISBN 978-0-8155-1408-4 (Accessed at googlebooks.com on October 12, 2016).

with kaolin (the "Retractable Spout"). The agreements are standard form agreements drafted by Norfolk Southern which, among other things, contain certain indemnification provisions. (Proposed Findings of Uncontested Facts at ¶¶ 2, 10, 13, 15 & 18; Proposed Findings of Uncontested Facts Exhibit A, Norfolk Southern POC at Exhibits A-D.)

2.      Pursuant to the Operating Agreement, Norfolk Southern delivered empty rail cars to the Grace Plant and hauled away rail cars loaded with kaolin.  (Proposed Findings of Uncontested Facts at ¶ 28; Proposed Findings of Uncontested Facts Exhibit A, Operating Agreement at ¶ 8; Proposed Findings of Uncontested Facts Exhibit B, Objection, *passim*; Proposed Findings of Uncontested Facts Exhibit C, Norfolk Southern Response, *passim*.) Norfolk Southern also performed the same service for other kaolin producers along the same rail line, including J. M. Huber.  (Proposed Findings of Uncontested Facts at ¶ 29; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.)

## II.    Mr. Kirkland's Accidents

3.      Mr. Kirkland is a former Norfolk Southern employee who was a conductor on trains servicing the Grace Plant and J. M. Huber. (Proposed Findings of Uncontested Facts at ¶¶ 36-37; Exhibit A, Kirkland Complaint at ¶¶ 3, 5; Exhibits D and E, Norfolk Southern January 23 Accident Reports.)

### A.    The January 23 Accident

4.      On January 23, 1998, Mr. Kirkland was conductor on a Norfolk Southern-owned, -controlled and -operated train transporting twenty-eight rail cars from Norfolk Southern's Aiken Depot, located near Aiken, South Carolina, to its siding at Warrenville, South Carolina. (Proposed Findings of Uncontested Facts at ¶ 37; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 5; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23, 1998 Accident Reports.)   At Norfolk Southern's Warrenville

siding, the rail cars were switched in "classification order" for "through train pick-up." (Proposed Findings of Uncontested Facts at ¶ 38, Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23, 1998 Accident Reports.) The track at the Warrenville siding was owned and controlled by Norfolk Southern. (Proposed Findings of Uncontested Facts at ¶ 39, Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 5; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.) The rail cars in the train at the Warrenville siding were consigned to, and under the control of, Norfolk Southern at the time of the January 23 accident. (Proposed Findings of Uncontested Facts at ¶ 40; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 5; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.) At least one of those rail cars, identified in the Norfolk Southern January 23 Accident Reports as rail car SOU 99418, was shipped on January 23, 1998, from J.M. Huber, a kaolin-producing entity unrelated to any of the Reorganized Debtors, and consigned to and under the control of Norfolk Southern. (Proposed Findings of Uncontested Facts at ¶ 41; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.)

5.    As part of the rail car switching evolution, Mr. Kirkland was required to release the handbrake to rail car SOU 99418. (Proposed Findings of Uncontested Facts at ¶ 42; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.) Mr. Kirkland stated that, at approximately 1:40 p.m., he mounted rail car SOU 99418 to release the actual handbrake, because the quick release did not work. (Proposed Findings of Uncontested Facts at ¶ 43; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 5; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk

Southern January 23 Accident Reports.)  Mr. Kirkland stated that his hands slipped on the handbrake as he attempted to release it, and he fell to the ground, injuring his back and right hand.  (Proposed Findings of Uncontested Facts at ¶ 44; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 5; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.)  No one witnessed Mr. Kirkland fall.  (Proposed Findings of Uncontested Facts at ¶ 45; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.)  The Norfolk Southern January 23, 1998 Accident Reports state that at the time he fell Mr. Kirkland was wearing: (i) wet leather gloves; and (ii) steel-toed boots manufactured by Wolverine, which had "worn-out" and "slick" soles. (Proposed Findings of Uncontested Facts at ¶ 46; Exhibits D and E, Norfolk Southern January 23 Accident Reports.)

### B.    The Norfolk Southern January 23 Accident Reports

6.    Norfolk Southern created a report, dated January 23, 1998, for a "non-reportable injury" to Mr. Kirkland.  (Proposed Findings of Uncontested Facts at ¶ 20, Proposed Findings of Uncontested Facts Exhibit D, "Initial Norfolk Southern January 23, 1998 Accident Report.")  On January 29, 1998, Norfolk Southern created an update to the Initial Norfolk Southern January 23, 1998 Accident Report.  (Proposed Findings of Uncontested Facts at ¶ 21; Proposed Findings of Uncontested Facts Exhibit E, "Update to Initial Norfolk Southern January 23, 1998 Accident Report.")

### C.    The January 26 Accident

7.    At 7:00 a.m., Monday, January 26, 1998, Mr. Kirkland reported to the Aiken Depot for work, whereupon he stated to Trainmaster Chapman, his supervisor, that his back "felt better" and that "he thought that he would be okay."  (Proposed Findings of Uncontested Facts at ¶ 47; Proposed Findings of Uncontested Facts Exhibit E, Update to January 23 Accident Report.)

The Kirkland Complaint states that, on January 26, 1998, Mr. Kirkland "was again attempting to apply a handbrake on a rail car located at the Aiken Depot." (Proposed Findings of Uncontested Facts at ¶ 48; Exhibit A, Kirkland Complaint at ¶ 6.)  The rail car was consigned to, and under the control of, Norfolk Southern at the time of the accident.  (Proposed Findings of Uncontested Facts at ¶ 49; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 6.) The Aiken Depot is a Norfolk Southern-owned and –controlled facility.  (Proposed Findings of Uncontested Facts at ¶ 50; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 6; Proposed Findings of Uncontested Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.)   The Kirkland Complaint states that Mr. Kirkland slipped and aggravated the injuries he suffered in his January 23 accident.   (Proposed Findings of Uncontested Facts at ¶ 51; Proposed Findings of Uncontested Facts Exhibit A, Kirkland Complaint at ¶ 6.)

8.    The Update to the Initial Norfolk Southern January 23, 1998 Accident Report, which is dated January 29, 1998, relates events from January 26-28, 1998, but it does not mention whether Mr. Kirkland slipped or had any other accident on January 26, 1998.  (Proposed Findings of Uncontested Facts at ¶ 52; Proposed Findings of Uncontested Facts Exhibit E, Update to Initial Norfolk Southern January 23 Accident Report.)

## III.    The Georgia State Court Action

9.    On July 3, 1998, Mr. Kirkland filed the Kirkland Complaint, thereby commencing the Georgia State Court Action.  (Proposed Findings of Uncontested Facts at ¶ 23; Proposed Findings of Uncontested Facts Exhibit A, Norfolk Southern POC at Addendum; Kirkland Compliant.)  Neither Grace-Conn. nor any other Grace affiliate was named in the Kirkland Complaint or was otherwise party to the Georgia State Court Action.  (Proposed Findings of Uncontested Facts at ¶ 24; Proposed Findings of Uncontested Facts Exhibit A, Kirkland

Complaint *passim*; Proposed Findings of Uncontested Facts Exhibit C, Norfolk Southern Response *passim*.) On March 21, 2001, Judgment was entered on the Jury Verdict in favor of the Plaintiff in the amount of $1,924,500. (Proposed Findings of Uncontested Facts at ¶ 25; Proposed Findings of Uncontested Facts Exhibit A, Judgment attached to Norfolk Southern POC as Exhibit F.)

10.    On July 6, 2001, a document captioned *Plaintiff's Satisfaction of Judgment and Dismissal of Action* was entered onto the docket of the Georgia State Court Action. (Proposed Findings of Uncontested Facts at ¶ 26; Proposed Findings of Uncontested Facts Exhibit A, *Plaintiff's Satisfaction of Judgment and Dismissal of Action*, attached as Exhibit G to the Norfolk Southern POC.) The Addendum to the Norfolk Southern POC states that the settlement amount (the "Settlement") was $1,500,000. (Proposed Findings of Uncontested Facts at ¶ 27; Proposed Findings of Uncontested Facts Exhibit A, Addendum at 2.)

## IV.    Current Procedural Posture

11.    On April 2, 2001, Grace, Grace-Conn. and sixty affiliates commenced the above-captioned chapter 11 cases. (Proposed Findings of Uncontested Facts at ¶ 1.) On March 27, 2003, Norfolk Southern filed the Norfolk Southern POC, which asserted: (i) a contractual right to indemnification from the Debtors under one or more of the Right-of-Way Agreement, Operating Agreement; 1983 Supplemental Agreement; 1990 Supplemental Agreement for the Settlement and related attorneys' fees, etc., arising from the Georgia State Court Action; (ii) unpaid freight service charges in the amount of $20,415.52; and (iii) environmental clean-up services and truck scale fees totaling $2,102. (Proposed Findings of Uncontested Facts at ¶ 2; Proposed Findings of Uncontested Facts Exhibit A, Norfolk Southern POC.)

12.    On July 20, 2009, the Debtors filed their Objection, objecting to all but $6,922.35 arising from certain unpaid freight charges and the environmental clean-up services and truck

scale fees. (Proposed Findings of Uncontested Facts at ¶ 3; Proposed Findings of Uncontested Facts Exhibit B, Objection.) On or about August 26, 2009, Norfolk Southern filed the Norfolk Southern Response. (Proposed Findings of Uncontested Facts at ¶ 4; Proposed Findings of Uncontested Facts Exhibit C, Norfolk Southern Response.) The Norfolk Southern Response conceded its claim for all freight and other charges except for the $6,922.35 conceded by the Reorganized Debtors in the Objection. (Proposed Findings of Uncontested Facts Exhibit C, Norfolk Southern Response at n. 2.)

13.    In 2012, as part of settlement negotiations between the parties, Norfolk Southern furnished the Reorganized Debtors with what it stated was the complete trial record in the Georgia State Court Action. The Norfolk Southern January 23 Accident Reports—which were prepared by Norfolk Southern employees—are located at pp. 304-06 and pp. 309-13, respectively, of volume IV of the trial record furnished by Norfolk Southern. (Proposed Findings of Uncontested Facts at ¶ 53; Exhibits D and E, Norfolk Southern January 23 Accident Reports.)

<u>**ARGUMENT**</u>

**The Court Should Disallow Norfolk Southern's Indemnification Claim**

**I.    Disallowance of the Indemnification Claim Is Ripe for Summary Judgment**

14.    Summary judgment is appropriate when the moving party identifies those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (applicable to this matter pursuant to Fed. R. Bankr. P. 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Wells Fargo Bank, N.A. v. HomeBanc Corp. (In re Homebanc Mortg. Corp.)*, No. 07-11079 (KJC), 2012 Bankr. LEXIS 6021, at *25 (Bankr. D. Del. 2012); *Wahoski v. Am. &*

*Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123 (Bankr. D. Del. 2009). Once the moving party has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Homebanc Mortg. Corp.*, Bankr. LEXIS 6021, at 25, citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party also cannot avoid summary judgment by introducing only "a mere scintilla of evidence." *Homebanc Mortg. Corp.*, Bankr. LEXIS 6021, at 25, citing *Sarko v. Penn-Del Directory Co.*, 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd* 189 F.3d 464 (3d Cir. 1999). Moreover, the non-moving party cannot rely upon "conclusory allegations, improbable inferences and unsupported speculation." *Homebanc Mortg. Corp.*, Bankr. LEXIS 6021, at 25, citing *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996).

15.     Here, as discussed above, there is no genuine issue as to any material fact as set forth in the Proposed Findings of Uncontested Fact, which leads to the conclusion that Norfolk Southern has failed to carry its burden of proof as to its indemnification claim because its POC and Response do not contain any relevant, admissible evidence in support thereof. Therefore, except as to the allowance of Norfolk Southern's Claim in the amount $6,922.35 for certain unpaid freight and other charges, that Claim should be disallowed.

## II.     Norfolk Southern Has Failed to Carry Its Burden of Proof

16.     The Third Circuit has held that, once the debtor produces sufficient evidence to negate a filed claim, the burden of proof shifts back to the claimant to prove its claim by a preponderance of the admissible evidence:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce

evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*Allegheny Int'l., Inc.*, 954 F.2d at 173-74 (citations omitted); *see also Lampe v. Lampe*, 665 F.3d 506, 514 (3d Cir. 2011).

17.    Norfolk Southern has failed to carry its burden of proof as to the indemnification claim.    As a threshold matter, the Norfolk Southern POC does not contain any admissible evidence supporting the asserted indemnification claim.    The four agreements by themselves merely establish that Norfolk Southern and Grace-Conn. had a contractual relationship, pursuant to which each party owed the other a duty to indemnify under certain limited circumstances.    By themselves, they are insufficient to carry Norfolk Southern's burden of proof.

18.    The *Addendum to Proof of Claim Filed by Norfolk Southern Railway Company* (the "Addendum") does not contain any statements concerning the January 23 and January 26 accidents.    The Kirkland Complaint, which is Exhibit B to the Norfolk Southern Proof of Claim, is, as discussed below, inadmissible to establish that any of the indemnification provisions in the four agreements were implicated.    *Trustees of Univ. of Pa.*, 815 F.2d at 905.    But even it were admissible, there is nothing therein to support Norfolk Southern's indemnification claim. Indeed, neither Grace-Conn. nor any affiliate is named as a party, and, moreover, none of them is ever mentioned in the Kirkland Complaint.    (Proposed Findings of Fact at ¶¶ 23-24; Proposed Findings of Facts Exhibit A, Norfolk Southern POC *passim*.)    What's more, the Kirkland Complaint makes it clear that the two accidents both occurred on rail cars consigned to Norfolk Southern, while those cars were attached to Norfolk Southern-owned and controlled trains on

Norfolk Southern track at Norfolk Southern-owned and controlled facilities.  (Proposed Findings of Fact at ¶¶ 38-52; Proposed Findings of Facts Exhibit A, Kirkland Complaint at ¶¶ 5-6.)

19.    The Reorganized Debtors' Objection correctly points out each of these manifold weaknesses, thus negating whatever *prima facie* validity the Norfolk Southern POC may have had and thereby shifting the burden of proof back to Norfolk Southern as to the indemnification claim.  *Allegheny Int'l.*, 954 F.2d at 173-74.  The Norfolk Southern Response failed to carry this burden, because the allegations in its Response concerning indemnification are—as with its POC—entirely unsupported by any admissible evidence whatsoever.  As discussed above, the agreements attached thereto merely evidence a contractual relationship.  They do not, by themselves, establish that the Settlement is indemnifiable.

20.    As to the remaining exhibits to the Norfolk Southern Response, and as more fully discussed below, they are all inadmissible for purposes of Norfolk Southern carrying its burden of proof because they were culled from the trial record of the Georgia State Court Action trial record, and none of the Reorganized Debtors was party to that proceeding.  *Trustees of Univ. of Pa.*, 815 F.2d at 905.  Additionally, Norfolk Southern has done nothing to authenticate any of these exhibits, which means that they simply are not even evidence.  Fed. R. Evid. 901(a); Fed. R. Evid. 104(b); *In re Landsource Cmtys. Dev. LLC*, 485 B.R. 310, 316 (Bankr. D. Del. 2013).  Finally, the central tenet of the Norfolk Southern Response—which is that Grace-Conn. is liable under the 1990 Supplemental Agreement's indemnification because of the use of the Retractable Spout—falls apart even if the various exhibits were admissible because those exhibits do not establish whether Grace-Conn. used the Retractable Spout to fill either rail car at issue.  Thus even when everything in the Norfolk Southern Response is taken at face value, Norfolk Southern

has adduced insufficient evidence to establish that any of the indemnification provisions in the four agreements at issue render Grace-Conn. liable for indemnification of the Settlement.

21.    The two Norfolk Southern January 23 Accident Reports actually rebut Norfolk Southern's contentions. Norfolk Southern by all indications created these reports, which means that they are Norfolk Southern business records, and thus admissible in this matter. Fed. R. Evid. 803(6) ("Records of a Regularly Conducted Activity"). Norfolk Southern furnished the reports to the Reorganized Debtors as part of the Georgia State Court Action trial record. The reports both state unequivocally that the rail car from which Mr. Kirkland fell on January 23 had shipped from J.M. Huber—and not from the Grace Plant. (Proposed Findings of Fact at ¶¶ 41-42; Proposed Findings of Facts Exhibits D and E, Norfolk Southern January 23 Accident Reports.)  In other words, Norfolk Southern's own business records establish that the Reorganized Debtors are simply not liable for the January 23 accident.

22.    When taken in toto, the Norfolk Southern POC and Norfolk Southern Response not only fail to carry Norfolk Southern's burden of proof, but they contain more than sufficient evidence for a fact-finder to conclude that Norfolk Southern, itself, was solely responsible for the two accidents. *Allegheny Int'l., Inc.*, 954 F.2d at 173-74 (citations omitted); *see also*, *e.g.*, *In re Hartman*, 2009 Bankr. LEXIS 3823, *9-10, (Bankr. D.N.J. Nov. 20, 2009) (the creditor's "submission [in response to a claim objection] still does not adequately address the Debtors' primary contention that nothing in the Proof of Claim can be taken at face value … the Court finds that … [the creditor] has not sustained its burden of proof"). The contested portion of the Norfolk Southern Claim should therefore be disallowed.

**III.    Norfolk Southern Cannot Use the Georgia State Court Action Trial Record to Carry Its Burden of Proof**

23.    Every aspect of the Georgia State Court Action is inadmissible for purpose of Norfolk Southern carrying its burden of proof against Grace as to the indemnification claim. First, the judicial findings contained therein are completely irrelevant to establishing whether Grace is contractually obligated to indemnify Norfolk Southern for the accidents, and thus are inadmissible under the Federal Rules of Evidence. It thus follows that Norfolk Southern may not use any aspect of the Georgia State Court Action, whether judicial findings, prior testimony or exhibits, to carry its burden of proof as to its Claim, because none of the Reorganized Debtors was a party to that proceeding.

24.    The Federal Employee Liability Act conferred a non-delegable duty on Norfolk Southern to provide a safe workplace for Mr. Kirkland. Federal Employers' Liability Act, 45 U.S.C.S. § 51 et seq.; *Shenker v. Baltimore & O. R. Co.*, 374 U.S. 1, 7 (U.S. 1963); *Atlantic Coast Line R.R. Co. v. Whetstone*, 243 S.C. 61, 82 (S.C. 1963); *Maher v. Del. & Hudson Ry. Co.*, 215 Fed. Appx. 169, 171, 2007 U.S. App. LEXIS 2639, *4-5 (3d Cir. 2007). This non-delegable duty of Norfolk Southern to Mr. Kirkland meant that the jury had only to consider Norfolk Southern's negligence as a proximate cause of Mr. Kirkland's alleged injuries. *Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 506-507 (U.S. 1957) ("Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death"); *Norfolk Southern Ry. v. Sorrell*, 549 U.S. 158, 176 (U.S. 2007), (employer liable under FELA "only if 'the jury determines that the defendant's breach is a 'contributory proximate cause' of injury'" (quoting *Carter v. Atlanta & St. Andrews Bay R. Co.,* 338 U.S. 430 (1949)); *Norfolk & Western Ry. v. Ayers*, 538 U.S. 135, 141 (U.S. 2003) ("FELA's express

terms, reinforced by consistent judicial applications of the Act, allow a worker to recover his entire damages from a railroad whose negligence jointly caused an injury").

25.    In other words, whether Grace-Conn. was negligent and obligated to indemnify Norfolk Southern under any of the parties' agreements was simply not at issue in the Georgia State Court Action.  Thus, any use by Norfolk Southern of the Georgia State Court Action trial record to carry its burden of proof as to its Claim would unfairly prejudice the Reorganized Debtors.  Fed. R. Evid. 401 et seq.; *Trustees of Univ. of Pa.*, 815 F.2d at 905 ("[J]udicial findings are inadmissible against a party not present in the prior litigation").  It follows then, that the Georgia State Court Action trial record is inadmissible hearsay as against the Reorganized Debtors, and Norfolk Southern cannot use that trial record in support of the Norfolk Southern POC because none of the Reorganized Debtors was a party to the Georgia State Court Action. *See* Norfolk Southern Response at p. 6; *Trustees of Univ. of Pa.*, 815 F.2d at 905 (same).

## IV.    Grace May Cite to the Georgia State Court Action Under the Doctrine of Defensive Collateral Estoppel

26.    Unlike Norfolk Southern's improper attempt to use the Georgia State Court Action trial record to carry its burden of proof as to its indemnification claim, the Reorganized Debtors may use any aspect of that trial record against Norfolk Southern:

> Under the modern doctrine of non-mutual issue preclusion, ... a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary ... For defensive collateral estoppel—a form of non-mutual issue preclusion--to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action.

*Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007) (internal citations omitted).

27.    A review of that trial record perfectly illustrates Norfolk Southern's profound failure to establish a factual record supporting its assertion that Grace is contractually obligated

to indemnify it for damages awarded in the Georgia State Court Action. As discussed above, both accidents took place on trains owned and controlled by Norfolk Southern at facilities that were also owned and controlled by Norfolk Southern that were each several miles from any facility owned by the Reorganized Debtors. Moreover, the Norfolk Southern January 23 Accident Reports state that the rail car from which Mr. Kirkland fell on January 23 was shipped from J. M. Huber, and not from the Grace Plant. In other words, Norfolk Southern's own statements establish that Grace cannot be liable to Norfolk Southern for the first accident. Indeed, those same accident reports, when viewed together with Mr. Kirkland's uncontested statements set forth in the Kirkland Complaint, lead to one conclusion about Mr. Kirkland's second accident—Norfolk Southern sent an injured employee back to work on the morning of January 26, 1998, when it shouldn't have, and just a few hours later, Mr. Kirkland exacerbated those existing injuries by once more falling from a rail car. Therefore, because Norfolk Southern was justifiably found negligent and liable to Mr. Kirkland for his injuries, Norfolk Southern's indemnification claim must fail.

## CONCLUSION

The Reorganized Debtors respectfully submit that the Norfolk Southern Claim must be disallowed (other than as to the uncontested portion relating to unpaid freight and other charges). Norfolk Southern has failed to carry its burden of proof to establish any factual basis whatsoever that Grace is, or could be construed as being, contractually obligated to indemnify Norfolk Southern on account of the purported January 23 and January 26, 1998 accidents.

**[remainder of this page is intentionally left blank]**

WHEREFORE, the Reorganized Debtors respectfully seek the entry of an order substantially in the form attached to the Motion as Exhibit A, pursuant to Fed. R. Bankr. P. 7056: (i) granting the Reorganized Debtors' motion for summary judgment and disallowing the Norfolk Southern Claim as to all matters other than the uncontested portion of the claim for unpaid freight and other charges; (ii) adopting the Proposed Findings of Uncontested Fact; and (iii) granting such other relief as may be appropriate.

Dated: October 13, 2016

KIRKLAND & ELLIS LLP
Adam C. Paul
John Donley
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

and

THE LAW OFFICES OF ROGER HIGGINS, LLC
Roger J. Higgins
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Reorganized Debtors