EXHIBIT B

THE OPINION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Owens Corning | ) | Case No. 00-3837 (KG) (D.I. 21106) |
| Armstrong World Industries, Inc. | ) | Case No. 00-4471 (KG) (D.I. 10813) |
| W.R. Grace & Co. | ) | Case No. 01-1139 (KG) (D.I. 32718) |
| USG Corp. | ) | Case No. 01-2094 (KG) (D.I. 12711) |
| US Minerals Products Company | ) | Case No. 01-2471 (KG) (D.I. 4094) |
| Kaiser Aluminum Corp. | ) | Case No. 02-10429(KG) (D.I. 10351) |
| ACandS, Inc. | ) | Case No. 02-12687 (KG) (D.I. 3751) |
| Combustion Engineering, Inc. | ) | Case No. 03-10495 (KG) (D.I. 3502) |
| The Flinkote Company | ) | Case No. 04-11300 (KG) (D.I. 9338) |
| | ) | |
| Debtors. | ) | |

OPINION RE MOTION OF HONEYWELL INTERNATIONAL, INC.
FOR ACCESS TO RULE 2019 EXHIBITS

Honeywell International, Inc. has moved for an order (the "Motion") authorizing

"any entity ... including Honeywell... [to] access, inspect, copy and receive copies of ...

any and all of the 2019 Exhibits filed with the Court in compliance with the 2019 Order

or Bankruptcy Rule 2019." D.I. 32718-1 ¶2. Honeywell, joined by Ford Motor Company

("Ford"), seeks access to statements and exhibits which asbestos claimants submitted in

the captioned cases pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"). The North American Refractories Company Asbestos Personal

Injury Settlement Trust Advisory Committee ("NARCO TAC"), joined by others[1], has

objected to the Motion.

Honeywell's and Ford's argument in favor of access rests on Bankruptcy Code

Section 107 which provides in pertinent part:

> Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
>
> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.
>
> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

---

[1] The NARCO TAC is a committee of lawyers, which represents all holders of asbestos claims in the NARCO case pending before the Bankruptcy Court for the Western District of Pennsylvania. The parties that have joined the objection are: The ACandS, Inc. Asbestos Settlement Trust Advisory Committee ("TAC"), Armstrong World Industries, Inc. Asbestos Personal Injury TAC, The Flinkote Company Asbestos Personal Injury TAC, Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury TAC, Owens Corning/Fibreboard Asbestos Personal Injury TAC, United States Gypsum Asbestos Personal Injury TAC, United States Mineral Products Company Asbestos Personal Injury TAC, and WRG Asbestos Personal Injury TAC [D.I. 32739]; Motley Rice LLC [D.I. 32740]; Future Claimants' Representative for The Flinkote Asbestos Trust [D.I. 32741]; Simmons Hanly Conroy LLC [D.I. 32742]; NARCO Future Claimant's Representative for the North American Refractories Company Asbestos Personal Injury TAC [D.I. 32743]; Waters Kraus & Paul [D.I. 32744]; Lipsitz & Ponterio, LLC [D.I. 32745]; Ashcraft & Gerel, LLP [D.I. 3770]; and Armstrong World Industries, Inc. [D.I. 10834].

(A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

(B) Other information contained in a paper described in subparagraph (A).

The Court will grant Honeywell and Ford limited access as explained in this Opinion.

## JURISDICTION AND VENUE

The Court has jurisdiction over the Motion based upon its inherent authority to interpret and, if necessary, modify its own orders. 28 U.S.C. §§ 157 and 1334. In addition, the Court's jurisdiction exists because the matters which the Motion raises relate to the Court's administration responsibilities.   The Motion raises issues which relate to Bankruptcy Rule 2019 and the Court's 2019 Order, and Bankruptcy Code Section 107 and is therefore a "core" matter.  Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

The Court previously ruled that the NARCO TAC has standing to object to the Motion on the basis that it is a party in interest under Section 1109 of the Bankruptcy Code. *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011). Courts have construed Section 1109(b) broadly to permit parties "affected by a chapter 11 proceeding to appear and be heard." *Id.* at 210 (holding that the list of potential parties in Section 1109 is not exclusive).  The NARCO TAC is clearly a party in interest.  It was appointed by a bankruptcy court to represent the interests of asbestos claimants, as part of the confirmation of the NARCO bankruptcy.  *See also In re Amatex Corp.*, 755 F.2d 1034, 1042

3

(3d Cir. 1985) (applying the "broad, flexible definition" of *parties in interest* enunciated in case law).

## FACTS

The nine captioned cases are, of course, bankruptcy cases which resulted from the entities' asbestos related liabilities.    Honeywell is a diversified technology and manufacturing company which has been a global supplier of automotive brake friction materials and aftermarket brake products.    The "Bendix" products are the subject of numerous lawsuits alleging asbestos exposure from Bendix products.    Honeywell is also obligated to fund all distributions which the NARCO Trust[2] makes up to capped amounts (which exceed $100 million) and all of the NARCO Trust's expenses.    Declaration of Peter John Sacripanti in Support of the Motion, ¶¶ 3-5.    Honeywell's purpose in seeking access to the Rule 2019 Exhibits (defined below) is to investigate fraudulent claims and produce the Rule 2019 Exhibits to the NARCO Trust for its own review of claims, and for lobbying activities.    Sacripanti Declaration, ¶¶ 7-9.    Honeywell cites several sources to support its view that fraudulent claims have been filed against Honeywell and the NARCO Trust.

Ford is an automobile manufacturing company, and has been named as a defendant in asbestos cases by plaintiffs claiming to have worked with or around

---

[2]    The NARCO Trust was created in the North American Refractories Company bankruptcy case as the Personal Injury Settlement Trust.

chrysotile containing brake pads. Ford joins with Honeywell in seeking access to the Rule 2019 Exhibits.

Honeywell seeks an order allowing it access to the statements and exhibits (the "Rule 2019 Exhibits") submitted pursuant to the orders entered by the Bankruptcy Court (the "Rule 2019 Orders") which standardized disclosures required by Bankruptcy Rule 2019 throughout the mass tort bankruptcies filed in the Third Circuit. Honeywell, joined by Ford, seeks access to these documents under the public right to access of the Bankruptcy Code Section 107 and the common law.

Bankruptcy Rule 2019 requires an entity (other than a court appointed committee) to file a verified statement which includes: (1) the name and address of the creditor, and (2) the nature and amount of the claim or interest and the time of acquisition unless it is alleged to have been acquired more than one year prior to the filing of the petition. The Bankruptcy Court entered several orders, i.e., the Rule 2019 Orders, which informed parties how to comply with Bankruptcy Rule 2019 in the context of the asbestos cases. The Bankruptcy Court required lawyers representing multiple claimants to file statements which the Bankruptcy Court electronically filed and docketed. The statements identified the names and addresses of the law firms, but did not include substantive information. However, the Rule 2019 Orders also required that the asbestos claimants' lawyers provide exhibits to the Rule 2019 statements to the Clerk of the

Bankruptcy Court. Unlike the limited information provided in the statements, the Rule 2019 Exhibits were not to be filed electronically or docketed.

The Rule 2019 Exhibits include the following: (1) the names and addresses of the clients of the submitting attorney; (2) exemplars or actual copies of the relevant retention agreements; (3) identification of disease; (4) claim amounts if liquidated; (5) sometimes full or partial social security numbers; (6) sometimes medical records, with information including full or partial social security numbers; family histories (including causes of death of family members), results of physical examinations, chest x-rays, and lung function tests, and other similarly sensitive medical information; and (7) sometimes other records that the law firm maintained in connection with or commingled with the required information. The asbestos claimants' lawyers submitted the Rule 2019 Exhibits to the Clerk of the Bankruptcy Court on compact disks.

Honeywell intends to produce the Rule 2019 Exhibits to the NARCO Trust to be used in connection with the NARCO Trust's own review of claims that it receives from asbestos claimants, and as part of its review of all of the NARCO Trust's operations. Motion, ¶¶ 9-10. Both Honeywell and Ford made it clear that they also intend to use the Rule 2019 Exhibits for lobbying purposes. Neither movant provided the Court with more details as to these lobbying efforts, such as a time frame or the recipients. In fact, the order Honeywell presented with the Motion would permit access by "any entity," and not just Honeywell or Ford.

6

## DISCUSSION

In the Motion, Honeywell requests access to the Rule 2019 Exhibits for the following purpose:

> 9.    Honeywell intends to review and analyze all aspects of the NARCO Trust's operations, including, without limitation, its claims processing procedures and the claims submitted to the NARCO Trust under the individual review and expedited review processes. The valuable information contained in the 2019 Exhibits will help to ensure that the purpose of the NARCO Trust, which is to promptly pay holders of "valid" claims, is fulfilled, and that Honeywell appropriately compensates asbestos plaintiffs in the tort system, to the extent such plaintiffs have valid claims.
>
> 10.    In addition, Honeywell intends to produce the 2019 Exhibits to the NARCO Trust to be used in connection with the NARCO Trust's own review of claims that it receives from asbestos claimants. Payment of invalid or fraudulent claims violates the NARCO Trust's mandate and operates to the detriment of not only Honeywell—by forcing Honeywell to contribute money for invalid claims submitted to the NARCO Trust—but also the holders of valid claims, whose payments will necessarily be delayed (without interest) because of certain distribution caps imposed on the NARCO Trust. Honeywell, therefore, has a very real and timely need to access the 2019 Exhibits and use them in furtherance of its efforts to ferret out invalid or fraudulent asbestos claims.

See the Motion, ¶¶ 9 and 10.

However, at oral argument on the Motion both Honeywell and Ford made it abundantly clear that it was their position that Bankruptcy Code Section 107 granted them presumptive and unlimited access to the Rule 2019 Exhibits. Thus, the purpose of the Motion and Ford's joinder was not simply to investigate fraudulent claims. There may really be no scope to the purpose for access and, indeed, the order accompanying the Motion makes it clear that Honeywell and Ford do not believe that a proper purpose

7

must be stated. The order provides for "any entity" to have access. Honeywell and Ford also spoke at oral argument about using the Rule 2019 Exhibits for lobbying purposes. They did not, however, provide any specifics of what the lobbying efforts would entail.

Honeywell and Ford are correct that in other and different cases, Bankruptcy Code Section 107 provides unlimited public access to papers filed in a bankruptcy case. Section 107 says just that and courts have interpreted Section 107 in just that way. *See, e.g., In re Gitto Global Corp.*, 422 F. 3d 1, 7 (1st Cir. 2005); *In re Blake*, 452 B.R. 1, 8 (Bankr. D. Mass. 2011).

There are, however, limits to access to the Rule 2019 Exhibits and the District Court has set the limits which Honeywell and Ford would have the Court ignore but which bind the Court. In *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013), the District Court reversed the Bankruptcy Court, finding that the Rule 2019 Exhibits are judicial records, *id.* at 297, and "there is a presumptive right of public access to them." *Id.* at 298. The District Court further held that "the presumption of access has not been rebutted." *Id.* The District Court found that "Garlock's intended use of such information at an estimation proceeding in its own bankruptcy is a proper purpose." *Id.* at 300. Having found a proper purpose, the District Court did not deem it necessary to decide if Garlock's other stated purposes, i.e., pursuit of an action, lobbying and legislative reform efforts, were necessary. The District Court held that the balancing of the factors for and against access is a matter of discretion. The District Court took into

account the fact that the asbestos claimants, even if they did not submit claims, retained attorneys and that the information in the Rule 2019 Exhibits is similar to that which would appear in a complaint in asbestos litigation. *Id.* at 301. The District Court also acknowledged that the "privacy interests of the individuals identified in the Rule 2019 Exhibits weigh against disclosure," but found that the strict limits the court imposed as well as the potential efficiency that would benefit the Garlock bankruptcy proceedings outweighed this concern. *Id.* at 300-01.

The District Court was ultimately persuaded in favor of access by the fact that restrictions would be placed on access to the Rule 2019 Exhibits. Thus, the District Court exercised its discretion to grant access solely for use in Garlock's estimation proceedings.

The District Court alternatively held that access could be granted on the basis that the Rule 2019 Orders operated as confidentiality orders, and the motion for access operated as a motion to modify. *Garlock Sealing*, 488 B.R. at 299. Following this reasoning, the decision analyzed the purpose of Garlock's request for access using the factors and balancing test described in *Pansy v. Borough of Stroudsburg*. 23 F.3d 772, 786 (3d Cir. 1994) (remanding newspaper's motion to modify a confidentiality order on the basis that the lower court did not properly balance the competing public and privacy interests).

Under the standard laid out in *Pansy*, "[t]he party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties

to the order, to determine whether good cause still exists for the order." *Garlock Sealing,* 488 B.R. at 300 (quoting *Pansy,* 23 F.3d at 790).

Using this analysis, the District Court found that there was good cause to modify the Rule 2019 Orders because Garlock sought access in connection with the estimation proceedings in its own bankruptcy case. *Id.* at 300 (allowing use of the Rule 2019 Exhibits for use in proceedings to determining aggregate liability for asbestos claims). The District Court noted that this purpose was consistent with the public policy of sharing information among litigants to promote fairness and efficiency. The District Court stated:

> [H]aving considered the *Pansy* factors, and affording them each the weight appropriate under the circumstances presented here, the Court concludes that...Garlock has demonstrated good cause for modification of the 2019 Orders to the extent necessary to provide Garlock access to the exhibits subject to restrictions....

*Id.* at 301. The District Court made clear that this grant of access was "subject to certain limitations, limitations that are intended to substantially reduce any threat to privacy interests." *Id.*

If the District Court had ended its opinion with the ruling in favor of Garlock, Honeywell and Ford would be correct and would be entitled to the unfettered access to and the use of the Rule 2019 Exhibits. But, the District Court's opinion did not stop with granting Garlock access. Importantly, the District Court found "it appropriate to impose certain limitations on Garlock's access to and use of the 2019 Exhibits .... Garlock is to be provided access to the 2019 Exhibits solely for the purpose of using them in connection

with the estimation proceedings in its own bankruptcy case. Garlock may not publicly disclose information contained in the 2019 Exhibits except in an aggregate format that does not identify any individual." *Id.* at 302.[3]  The District Court also entered an implementing order which provided, in part, that:

> 2. This Order authorizes Garlock to use such 2019 Exhibits solely in connection with the estimation proceedings in Garlock's chapter 11 bankruptcy cases . . . and neither the 2019 Exhibits nor the information contained therein may be used for any other purpose.

> 3. Garlock shall not disclose publicly the information contained in any 2019 Exhibit except in an aggregate format that does not identify any individual represented person.

Order Implementing Opinion and Order Reversing Bankruptcy Court Orders and Granting Garlock Sealing Technologies LLC Access to 2019 Exhibits, dated March 14, 2013 (District Court D.I. 67).

Thereafter, and on the heels of the District Court's ruling, the Bankruptcy Court established a protocol for production of the Rule 2019 Exhibits.[4]  The protocol calls for a referee or "special master" to review documents before they are produced to the accessing party. In the case of Garlock, the special master was tasked with inspecting each file identified by the third party vendor as responsive to the order "to determine whether it is a document to which Garlock has been granted access." Protocol Order ¶

---

[3] The District Court also observed that Garlock was not seeking retention agreements between the lawyers and potential clients. The same is true for Honeywell and Ford.

[4] Order Establishing the Protocol for Production of 2019 Exhibits, *In re W.R. Grace & Co.,* Case No. 01-01139 (Bankr. D. Del. April. 9, 2013) (D.I. 30490) ("Protocol Order").

11

33. D.I. 30490.  Garlock was permitted to inspect and copy the Rule 2019 Exhibits, yet it

could only use them in connection with the estimation proceedings in its own bankruptcy

case.

Garlock was instructed not to share any copies of the contents of the production,

and the Protocol Order included instructions to destroy materials after the court-

approved purpose was carried out.  *Id.* at ¶ 44(d).  The Protocol Order also provided that

within 30 days after the final confirmation of Garlock's chapter 11 plan, Garlock was

required to file with the Bankruptcy Court a sworn affidavit by its counsel providing that:

(a) the Rule 2019 Exhibits were used solely for the purpose of the bankruptcy proceeding;

(b) the Rule 2019 Exhibits were not shared (in whole or in part) with any person or entity

other than those expressly authorized by court order; (c) the identity of any individual

would not be publicly disclosed absent court order, and (d) all copies of the Rule 2019

Exhibits were retrieved, collected and permanently destroyed.  Protocol Order ¶ 44.  The

Bankruptcy Court's instructions were consistent with the District Court's ruling which

provided that Garlock was to use the Rule 2019 Exhibits solely in the estimation

proceeding.

As noted, Honeywell wants access to the Rule 2019 Exhibits, as well as to retain

the information indefinitely, to "ferret out invalid or fraudulent asbestos claims".

Motion, ¶ 10.  What came across in oral argument is that an important purpose for both

Honeywell and Ford in seeking the Rule 2019 Exhibits is to aid in their lobbying efforts.

Both Honeywell and Ford neglected to give more specific information than this, such as

with whom it would share the information, a time frame for use of the information, and

how the Rule 2019 Exhibits would be useful.

The Court is satisfied that the presumption of public access applies to the Rule

2019 Exhibits because they are judicial records.[5] *See Garlock Sealing*, 488 B.R. at 297,

*Pittsburgh Corning*, 2005 WL 6128987, at *9. Notwithstanding the presumption, a court

retains the authority to seal documents "when justice so requires." *See Garlock Sealing*,

488 B.R. at 299-300 (citing *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216 (3d Cir. 2011))

(affirming the district court's order sealing portions of transcript memorializing terms of

settlement agreements). The nature of the information contained in the Rule 2019

Exhibits, while not enough to automatically rebut the presumption, does call for judicial

discretion in considering a grant of access. *See Garlock Sealing*, 488 B.R. at 299 (granting

limited access to the Rule 2019 Exhibits solely for use in estimation proceedings).

The Court is very much guided by District Court's ruling in *Garlock Sealing*. Yet,

it is difficult to properly exercise its discretion in order to follow the course outlined by

the District Court. Honeywell and Ford have not provided enough information

regarding the proposed use of the Rule 2019 Exhibits. The Court takes notice of the fact

---

[5] Honeywell and Ford also argue that they have a common law right of access to the Rule
2019 Exhibits. They cite, among other cases, *Publicker Indus., Inc. v. Cohen*, 733 F. 2d 1059, 1068-70
(3d Cir. 1984); and *In re Cendant Corp.*, 266 F. 3d 183, 192 (3d Cir 2001). However, the District
Court has already established that the Rule 2019 Exhibits are the kind entitled to protection (*id.* at
194) and therefore the common law does not affect the Court's ruling.

13

that the District Court did not provide for Garlock's similarly vague proposed use of the records for "lobbying." *Id.* at 300 (declining to authorize Garlock's other stated purpose of a RICO action against asbestos plaintiffs' counsel, as well as lobbying and legislative reform efforts were proper purposes). Honeywell argues that the information in the Rule 2019 Exhibits is the same that would appear in a complaint in state court tort litigation for asbestos exposure. This argument was not dispositive in *Garlock Sealing*, and it similarly falls short here. *Garlock Sealing*, 488 B.R. 301.

A threshold consideration is whether the movants have stated a proper purpose. *See Garlock Sealing*, 488 B.R. at 299. Under *Pansy*, in order to modify a protective order, the moving party "must come forward with a reason to modify the order." *Id.* at 300. At this point, "the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order."

Honeywell and Ford both seek limitless access from this Court for use outside judicial proceedings. There is no precedent for this. In the Third Circuit, access to court records has been denied where court files could potentially become a vehicle for improper purposes. *In re Cendant Corp.*, 260 F.3d at 194, *Leap System v. Moneytrax, Inc.*, 638 F.3d 216, 221 (3d Cir. 2011). The Court could not find any Third Circuit case law holding or otherwise considering whether lobbying is a proper purpose under Rule 2019.

14

Accordingly, the Court will limit Honeywell's and Ford's use of the Rule 2019 Exhibits. They may not be used for "lobbying efforts." Honeywell and Ford may use the Rule 2019 Exhibits to investigate fraud in the claims process and may share the information with the NARCO Trust in an aggregate format. In other words, Honeywell and Ford may not share the identity of individuals by name or other identifying means with the NARCO Trust. Honeywell and Ford are granted three months to complete their work and must comply with the Protocol Order which requires the destruction of the Rule 2019 Exhibits at the conclusion of the work. Honeywell's and Ford's efforts will be at their expense. In addition, the Court will appoint a party to oversee the production of the Rule 2019 Exhibits. Given Honeywell's opposition to the appointment of the person who the NARCO TAC suggested, the parties are directed to confer and submit a name or names to the Court. Honeywell and Ford will bear the cost of the person who the Court names.

An Order accompanies this Opinion.

Dated: November 8, 2016

KEVIN GROSS, U.S.B.J.

15