# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into by and between WRG Asbestos PI Trust (the "Trust"), on the one hand, and Government Employees Insurance Company ("GEICO") and Republic Insurance Company now known as Starr Indemnity & Liability Company ("Republic"), on the other hand. The Trust, GEICO and Republic are referred to herein collectively as the "Parties" and individually as a "Party").

### Recitals

**WHEREAS**, GEICO sold the following three insurance policies to W.R. Grace & Co. ("Grace"), which provide, or are alleged to provide, excess liability insurance coverage to Grace (collectively the "GEICO Policies"):

| **Policy Number** | **Policy Period** |
|---|---|
| GXU30031 | 06/30/1981 - 06/30/1982 |
| GXU30152 | 06/30/1982 - 06/30/1983 |
| GXU30267 | 06/30/1983 - 06/30/1984 |

**WHEREAS**, Republic sold the following two insurance policies to W.R. Grace & Co. ("Grace"), which provide, or are alleged to provide, excess liability insurance coverage to Grace (collectively, the "Republic Policies"):

| **Policy Number** | **Policy Period** |
|---|---|
| CDE0749 | 06/30/1983 - 06/30/1984 |
| CDE0750 | 06/30/1983 - 06/30/1984 |

**WHEREAS**, claims have been asserted against Grace alleging bodily injury/death and property damage due to exposure to asbestos and asbestos-containing materials (the "Asbestos Claims");

**WHEREAS**, on or about April 2, 2001, Grace and certain other debtors (the "Debtors") filed reorganization cases pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 01-01139, et seq. (Collectively, the "Bankruptcy Case");

**WHEREAS**, on or about February 27, 2009, the Debtors filed in the Bankruptcy Case a First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of W.R. Grace & Co., et al., the Official Committee of Asbestos Personal Injury Claimants, the Asbestos PI Future Claimants' Representative, and the Official Committee of Equity Security Holders Dated February 27, 2009 (the "Plan");

**WHEREAS**, annexed as Exhibit 6 to the Exhibit Book, which was filed with and incorporated into the Plan, is an Asbestos Insurance Transfer Agreement (the "Transfer Agreement");

**WHEREAS**, the GEICO Policies and the Republic Policies are listed on Schedule 1 to the Transfer Agreement identifying them as insurance policies that are subject to the Transfer Agreement;

**WHEREAS**, the Plan was approved by the United States Bankruptcy Court on or about January 30, 2012, which was affirmed by the United States District Court on or about June 11, 2012 and further affirmed by the United States Court of Appeals for the Third Circuit on or about September 4, 2013, and became effective on or about February 3, 2014;

**WHEREAS**, pursuant to the Plan and the Transfer Agreement, all of Grace's rights and obligations under the GEICO Policies and the Republic Policies were assigned to the Trust;

**WHEREAS**, the Trust has assumed Grace's liability for Asbestos PI Claims, as defined by the Plan, and has paid and continues to process and pay Asbestos PI Claims;

2

**WHEREAS**, the Trust has asserted rights to the proceeds of the GEICO Policies and the Republic Policies with respect to the Asbestos PI Claims;

**WHEREAS**, a dispute has arisen between the Trust, on the one hand, and GEICO and Republic, on the other hand, with respect to the Parties' respective rights and obligations under the GEICO Policies and the Republic Policies, which is the subject of an action styled *Government Employees Insurance Company ("GEICO") and Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company) v. WRG Asbestos PI Trust*, No. 650497/2014, pending in the Supreme Court of the State of New York, New York County (the "Coverage Action");

**WHEREAS**, the Parties desire to resolve any and all disputes between them with regard to insurance coverage under the GEICO Policies and the Republic Policies.

## Agreement

**NOW, THEREFORE**, in consideration of mutual promises and other undertakings set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties mutually agree as follows:

1. **Recitals.** The Recitals set forth above are incorporated into and made part of this Agreement.

2. **Execution in Counterparts and Effective Date.** To facilitate execution, this Agreement may be executed in one or more counterparts. The Agreement will become effective when at least one counterpart has been executed by each Party and delivered to the other Party (the "Effective Date"). Such counterparts may be exchanged among the Parties (or their representatives) by facsimile or e-mail. Executed copies of this Agreement will be given the same effect as the original.

3

3. **The Settlement Payment.** Within 30 calendar days of the Effective Date, GEICO and Republic collectively will pay the total sum of Thirty-One Million Six Hundred Thousand Dollars ($31,600,000) to the Trust (the "Settlement Payment"). The Settlement Payment shall be net and shall be without deduction or application of any loss adjustments or any retro-premiums. The Parties agree that the Settlement Payment fully and properly exhausts all limits of liability, including without limitation all per-occurrence and aggregate limits, of the GEICO Policies and the Republic Policies, except for any remaining limits asserted to be available to pay claims under coverage that was not granted to the Trust under the Plan or Transfer Agreement, if any.

4. **Releases.**

    A. **Release of GEICO from the Trust.** Except for the promises and obligations set forth in this Agreement, and upon payment of the entire Settlement Payment, the Trust, for itself and as successor-in-interest to Grace's rights under the GEICO Policies, and on behalf of its trustees, officers, directors, partners, representatives, stockholders, servants, heirs, executors, employees, agents, administrators, attorneys, subsidiaries, predecessors, and their successors and assigns, irrevocably and unconditionally releases and discharges GEICO and its respective officers, directors, employees, administrators, agents, attorneys, subsidiaries, predecessors, successors, and assigns (including any trustee or other statutory successor), from any and all actions, causes of action, liabilities, adjustments, obligations, offsets, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, premiums, losses, salvage, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and/or demands, including but not limited to claims alleging bad faith, breach of an implied warranty of good faith and fair dealing and unfair claims

4

practices, a failure to act in connection with the investigation, handling, adjustment, litigation or settlement of the asbestos bodily injury claims under or with respect to the policies, whether under statute or common law, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the GEICO Policies, in law, admiralty, or equity, except for claims arising solely under such coverage, if any, that was not granted to the Trust, under the Plan or Transfer Agreement, which the Trust, or its subsidiaries, predecessors, successors, and assigns, ever had, now have, or hereafter may have against GEICO or its respective officers, directors, employees, agents, administrators, attorneys, subsidiaries, predecessors, successors, and assigns, whether known or unknown, suspected or unsuspected, fixed or contingent, in law, admiralty or equity, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the GEICO Policies, except for claims arising solely under such coverage, if any, that was not granted to the Trust under the Plan or Transfer Agreement.

**B.     Release of Republic from the Trust.** Except for the promises and obligations set forth in this Agreement, and upon payment of the entire Settlement Payment, the Trust, for itself and as successor-in-interest to Grace's rights under the Republic Policies, and on behalf of its trustees, officers, directors, partners, representatives, stockholders, servants, heirs, executors, employees, agents, administrators, attorneys, subsidiaries, predecessors, and their successors and assigns, irrevocably and unconditionally releases and discharges Republic and its respective officers, directors, employees, administrators, agents, attorneys, subsidiaries, predecessors, successors, and assigns (including any trustee or other statutory successor), from any and all actions, causes of action, liabilities, adjustments, obligations, offsets, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, premiums, losses, salvage, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and/or demands, including but not limited to claims alleging bad faith, breach of an implied warranty of good faith and fair dealing and unfair claims practices, a failure to act in connection with the investigation, handling, adjustment, litigation or settlement of the asbestos bodily injury claims under or with respect to the policies, whether under statute or common law, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the Republic Policies, in law, admiralty, or equity, except for claims arising solely under such coverage, if any, that was not granted to the Trust under the Plan or Transfer Agreement, which the Trust, or its subsidiaries, predecessors, successors, and assigns, ever had, now have, or hereafter may have against Republic or its respective officers, directors, employees, agents, administrators, attorneys, subsidiaries, predecessors, successors, and assigns, all whether known or unknown, suspected or unsuspected, fixed or contingent, in law, admiralty or equity, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the Republic Policies, except for claims arising solely under such coverage, if any that was not granted to the Trust under the Plan or Transfer Agreement.

    **C.** **Release of the Trust from GEICO.** Except for the promises and obligations set forth in this Agreement, and upon payment of the entire Settlement Payment, GEICO, and their officers, directors, partners, representatives, stockholders, servants, heirs, executors, employees, agents, administrators, attorneys, subsidiaries, predecessors, and their successors and assigns, irrevocably and unconditionally releases and discharges the Trust, for itself and as successor-in-interest to Grace's rights under the GEICO Policies, and each of its trustees, officers, directors, employees, agents, administrators, attorneys, subsidiaries,

6

predecessors, successors, and assigns, from any and all actions, causes of action, liabilities, adjustments, obligations, offsets, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, premiums, losses, salvage, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and/or demands, including but not limited to claims alleging bad faith, breach of an implied warranty of good faith and fair dealing and unfair claims practices, whether under statute or common law, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the GEICO Policies, in law, admiralty, or equity, except for claims arising solely under such coverage, if any, that was not granted to the Trust under the Plan or Transfer Agreement which GEICO or its subsidiaries, predecessors, successors, and assigns, ever had, now have, or hereafter may have against the Trust or its trustees, officers, directors, employees, agents, attorneys, subsidiaries, predecessors, successors, and assigns, all whether known or unknown, suspected or unsuspected, fixed or contingent, in law, admiralty or equity, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the GEICO Policies, except for claims arising solely under such coverage, if any, that was not granted to the Trust under the Plan or Transfer Agreement.

        **D.** **Release of the Trust from Republic.** Except for the promises and obligations set forth in this Agreement, and upon payment of the entire Settlement Payment, Republic, and their officers, directors, partners, representatives, stockholders, servants, heirs, executors, employees, agents, administrators, attorneys, subsidiaries, predecessors, and their successors and assigns, irrevocably and unconditionally releases and discharges the Trust, for itself and as successor-in-interest to Grace's rights under the Republic Policies, and each of its trustees, officers, directors, employees, agents, administrators, attorneys, subsidiaries,

7

predecessors, successors, and assigns, from any and all actions, causes of action, liabilities, adjustments, obligations, offsets, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, premiums, losses, salvage, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and/or demands, including but not limited to claims alleging bad faith, breach of an implied warranty of good faith and fair dealing and unfair claims practices, whether under statute or common law, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the Republic Policies, in law, admiralty, or equity, except for claims arising solely under such coverage, if any, that was not granted to the Trust under the Plan or Transfer Agreement, which Republic or its subsidiaries, predecessors, successors, and assigns, ever had, now have, or hereafter may have against the Trust or its trustees, officers, directors, employees, agents, attorneys, subsidiaries, predecessors, successors, and assigns, all whether known or unknown, suspected or unsuspected, fixed or contingent, in law, admiralty or equity, arising from or related to insurance coverage and/or other obligations under, based on or arising out of the Republic Policies, except for claims arising solely under such coverage, if any, that was not granted to the Trust under the Plan or Transfer Agreement.

    **E.**  The Parties acknowledge: (i) that they may have sustained damages, expenses and losses in connection with the subject matter of the foregoing releases that presently are unknown or unsuspected, and that such damages, expenses and losses, if any, may give rise to additional damages, expenses and losses in the future that are not now anticipated by them; and (ii) that this Agreement and the foregoing releases have been negotiated and agreed to despite the existence of any such unknown or unsuspected damages, expenses and losses. The Parties, being fully advised, therefore, expressly and intentionally waive any and all rights they

8

may have under any statute, code or ordinance limiting or restricting general releases of unknown claims. This waiver is an essential and material term of this Agreement and without such waiver the Agreement would not have been entered into.

   **F.**  **Dismissal of Coverage Action.** Within seven (7) days of the receipt of the entire Settlement Payment by the Trust, the Parties will file papers in the Coverage Action requesting that all claims in the Coverage Action asserted by each Party to the Agreement against the other be dismissed with prejudice without fees or costs awarded to any Party. Each Party agrees that it will not bring or commence any further action against any other Party for any causes of action, claims, agreements, costs, damages, demands, rights or obligations released in this Agreement, except for enforcement of this Agreement.

  **5.**  **Protected Parties.** The Parties shall take the steps necessary to add each of GEICO and Republic as a "Settled Asbestos Insurance Company" and thereby an "Asbestos Protected Party" under the Plan.

  **6.**  **Representations and Warranties.**

   **A.**  Each of the Parties represents and warrants that it has not sold, assigned, pledged, transferred or otherwise conveyed any interest in the matters that are the subject of the releases in Paragraph 4 above.

   **B.**  Each of the Parties represents and warrants that it is authorized to enter into this Agreement.

   **C.**  Each of the Parties represents and warrants that the execution and delivery of this Agreement and the consummation of this transaction will not conflict with or result in any violation or default under any provision of its articles of incorporation, trust agreement, charter, by-laws or partnership or operating agreement, or of any statute, law, rule or regulation

9

applicable to it; and that no further consent, approval, order, authorization or filing with any governmental or regulatory authority is required in connection with the execution and delivery of this Agreement or the consummation of the transactions described in this Agreement.

   **D.** Each signatory of this Agreement represents and warrants that he or she has the general and specific authority to enter into and execute this Agreement.

  7. **No Admissions.**

   **A.** The Parties acknowledge and agree that neither the entry into this Agreement nor any action taken pursuant to its terms will constitute or be construed as an admission by any Party of: (i) any wrongdoing whatsoever; (ii) liability for any claim asserted in the Asbestos Claims, or based on, arising out of or in any way related to the facts or circumstances underlying or alleged in the Asbestos Claims or regarding insurance coverage for the Asbestos Claims; or (iii) coverage or lack of coverage under the GEICO Policies or the Republic Policies for the Asbestos Claims, or for any cause of action, claim, demand, suit, governmental or regulatory investigation or proceeding based on, arising out of or in any way related to the facts or circumstances underlying or alleged in the Asbestos Claims. This Agreement, each of its provisions, any prior drafts thereof, any negotiations, proceedings or any prior or subsequent agreements relating to it or the Parties' settlement, and any matter arising in connection with such negotiations, proceedings or agreements, will not be offered or received in evidence or referred to or relied on by any Party in any action or proceeding. Nothing in this Agreement, however, will affect the ability of any Party to offer, refer to or rely on any evidence in any action or proceeding brought to enforce the terms of this Agreement.

   **B.** Notwithstanding any other provision of this Agreement, it is GEICO's position that there is no coverage for Workers' Compensation Claims under the GEICO Policies, and

10

nothing in this Agreement shall constitute or be construed as an admission by GEICO that the GEICO Policies provide coverage for Workers' Compensation Claims, or that such claims have reached or ever could reach any of the GEICO Policies in any event.

C. Notwithstanding any other provision of this Agreement, it is Republic's position that there is no coverage for Workers' Compensation Claims under the Republic Policies, and nothing in this Agreement shall constitute or be construed as an admission by Republic that the Republic Policies provide coverage for Workers' Compensation Claims, or that such claims have reached or ever could reach any of the Republic Policies in any event.

8. **Mutual Release of Settling Carriers.** The Trust agrees to use reasonable commercial efforts to cause any settlement agreement relating to the Asbestos Claims with any other insurance company to include a waiver by that other insurance company of any claim, including contribution, apportionment, indemnification, subrogation, equitable subrogation, allocation, or recoupment, against GEICO or Republic regarding the Asbestos Claims. GEICO and Republic agree to waive, relinquish and release any claim, including contribution, apportionment, indemnification, subrogation, equitable subrogation, allocation, or recoupment, as to the Asbestos Claims against any other insurance company which executes a settlement with the Trust that includes a provision that is materially the same as this paragraph.

9. **Binding Effect.** This Agreement will be binding on, and will inure to the benefit of, each Party, its successors and assigns, as well as any other corporation, partnership, trust or entity into which either Party may merge, consolidate or reorganize (collectively, the "Parties' Successors").

11

**10. No Third Party Rights.** This Agreement is entered into solely for the benefit of the Parties and is not intended to, and does not give or create any rights to or in any person or entity other than the Parties and the Parties' Successors.

**11. Construction of Agreement.** The language used in this Agreement is language chosen, or ratified and approved, by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party. The Parties acknowledge and agree that this Agreement has been prepared equally and jointly by the Parties and will not be construed against any Party as the drafter.

**12. Headings.** The headings used in this Agreement are for convenience only, are not part of this Agreement and will not alter or determine any rights or obligations under this Agreement.

**13. Further Assurances.** Each Party agrees to execute and deliver such other documents and instruments and to take any further action as may be reasonably necessary to carry out fully the purpose and intent of this Agreement.

**14. Integration.** This Agreement constitutes the entire agreement between the Parties with respect to the matters addressed herein and supersedes all prior oral or written agreements with respect to these matters. This Agreement may not be modified, altered or discharged except by an instrument in writing, signed by the Party against whom enforcement of the amendment, alteration or modification is sought.

**15. Severance.** If any provisions of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably effect the intent

of the parties hereto. Notwithstanding the foregoing, if the payment obligation set out in Section 3 above or the releases set forth in Section 4 above are held unenforceable or invalid by a court of competent jurisdiction, then it shall be the intent of the parties that such invalidity or unenforceability shall be cause for rescission of this entire Agreement at either Party's election.

16. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its choice of law rules.

[Signatures are on the next page.]

IN WITNESS WHEREOF, each of the undersigned Parties has caused this Agreement to be duly executed on its behalf.

**WRG ASBESTOS PI TRUST**

Dated: 9/5/2022    By: _____

Name: Lewis R. Sifford

Its: Managing Trustee

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**

Dated: 9/6/22    By: _____

Name: Thomas M. Ryan

Its: Authorized Representative

**REPUBLIC INSURANCE COMPANY NOW KNOWN AS STARR INDEMNITY & LIABILITY COMPANY**

Dated: 9/6/22    By: _____

Name: Thomas M. Ryan

Its: Authorized Representative

14